**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) Docket No. | |
| | ) | |

<u>**MOTION TO COMPEL ASBESTOS PERSONAL INJURY CLAIMANTS
REPRESENTED BY HARTLEY & O'BRIEN, PLLC, PROVOST UMPHREY LLP,
AND THE LAW OFFICES OF PETER G. ANGELOS, P.C. TO RESPOND TO THE
W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE**</u>

In response to the W.R. Grace Asbestos Personal Injury Questionnaire ("Questionnaire"), the clients represented by Hartley & O'Brien, PLLC, Provost Umphrey L.L.P., and the Law Offices of Peter G. Angelos, P.C. (collectively, the "Hartley/Provost/Angelos Claimants") have objected to providing information in response to certain questions posed in the Questionnaire.[1]  Because the objections are unfounded, Grace hereby moves to compel the Hartley/Provost/Angelos Claimants to provide all the information requested in the Questionnaire.[2]

<u>**ARGUMENT**</u>

The Court approved the Questionnaire after extensive briefing, argument, and consideration, and already has ruled that general relevance objections are unfounded and

---

[1]    The clients represented by Hartley & O'Brien who have returned Questionnaires are identified in Exhibit A (attached).  The clients represented by Provost Umphrey who have returned Questionnaires are identified in Exhibit B (attached).  The clients represented by Peter Angelos who have returned Questionnaires are identified in Exhibit C (attached).

[2]    Grace moves only to compel responses to questions in which the Hartley/Provost/Angelos Claimants have objected in lieu of providing responsive information.  As the Court is aware, pursuant to this Court's Order Concerning Debtors' Motion to Compel, Claimants have until November 13, 2006 to supplement their Questionnaire responses.  Grace reserves its right to raise any and all objections to the sufficiency of the Hartley/Provost/Angelos Claimants' responses until the supplementation of their Questionnaire responses is complete.

should not be maintained.   Additionally, the Court has addressed the general burden objections related to providing the information requested in the Questionnaire by permitting response by way of attachment and by providing an additional year to provide the requested information.   Accordingly, all general relevance and burden objections raised by the Hartley & O'Brien Claimants should be overruled on their face.  *See* Memorandum of Points and Authorities Concerning Background of the Questionnaire Approval Process and Objections Previously Addressed by the Court ("Background Memorandum") (attached as Exhibit D).[3]

In connection with all other objections raised by the Hartley/Provost/Angelos Claimants, it is fundamental, under both Federal Rule of Civil Procedure 26 and Federal Rule of Bankruptcy Procedure 7026, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1); Fed. R. Bankr. P. 7026.  Accordingly, under a motion to compel, the initial burden is on the moving party to demonstrate that the discovery sought is relevant.   Once the relevance showing has been satisfied,  the "party resisting discovery" bears the burden of  making a specific showing as to why the information sought does not have to be provided.  *See Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) (citations omitted).  Because the

---

[3]    The Provost Umphreys Claimants do not appear to have refused to answer any questions in the Questionnaire on the basis of relevance or burden.

The Angelos Claimants refuse to respond to Question 7 in Part II, relating to medical treatment received for the alleged asbestos exposure, on the ground of relevance.

The Hartley & O'Brien Claimants left blank and refused to answer Part 1, Section A, Question 3 relating to the race of the Claimant, multiple subparts of Part II, relating to the medical basis for the Claimant's diagnosis, multiple subparts of Part III, relating to the Claimant's direct exposure to Grace asbestos products.  Part IV, relating to the Claimant's indirect exposure to Grace asbestos-containing products, Questions 4, 5 & 7 in Part VII, Section A, relating to the asbestos- and silica-related litigation brought by the Claimants, all questions in Part VII, Section B relating to non-litigation asbestos and silica claims brought by the Claimants.  Part VII relating to claims by dependants, and Part IX relating to supporting documentation.  A stamp in the cover of each Hartley & O'Brien Claimant's Questionnaire states that the Claimant is "reserv[ing] ALL objections for any blank response."  (emphasis original).  For the reasons discussed in the Background Memorandum, this is plainly insufficient.

Court already has ruled that all the questions in the Questionnaire are relevant, *see* Order Concerning Debtor's Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Personal Injury Questionnaire ("MTC Order") (Docket No. 13393) (Oct. 12, 2006) at ¶ 1, the burden rests with the firms raising the objections and resisting the discovery to demonstrate why their objections should be sustained.

The Hartley/Provost/Angelos Claimants refused to answer several questions based on their various objections.  However, none of Hartley/Provost/Angelos Claimants' objections are justified for the following reasons:

- First, the Hartley/Provost/Angelos Claimants appear to withhold certain documents and information requested in Part II, relating to the medical bases of the Claimants' alleged diseases and the relationship between Claimants, their counsel, and the doctors responsible for their diagnoses, on the grounds of an alleged "consulting expert privilege." This objection must fail as the Hartley/Provost/Angelos Claimants have not met their burden of establishing the consulting expert privilege applies to the information sought by the Questionnaire. Further, exceptional circumstances exist that would require the production of such documents.

- Second, the Hartley/Provost/Angelos Claimants refused to answer Questions 3, 5, and 7 in Part II, relating to the medical bases for the Claimants' diagnoses, and multiple subparts of Part II, Questions 2, 4, and 6, relating to the relationship between the Claimants, their counsel, and the doctors responsible for their diagnoses, on the grounds that they seek to discover information protected by the attorney-client privilege and/or information protected by the attorney work product. The Hartley/Provost/Angelos Claimants' objection is unfounded as the questions posed in the Questionnaire seek only facts and not privileged information.  Further, the Hartley/Provost/Angelos Claimants have failed to provide any objective information that would allow the Court to determine whether any valid privilege applies.

- Third, the Hartley & O'Brien Claimants and the Angelos Claimants refuse to answer Question 6 in Part VII, Section A, relating to asbestos- and silica-related litigation brought by the Claimants, on the grounds that it seeks disclosure of settlements reached with other defendants that are subject to binding confidentiality agreements.  This objection must fail, as confidentiality agreements do not immunize facts concerning a settlement from discovery.

**I.    THE HARTLEY/PROVOST/ANGELOS CLAIMANTS HAVE IMPROPERLY ASSERTED CLAIMS OF "CONSULTING EXPERT" PRIVILEGE.**

The Hartley/Provost/Angelos Claimants have asserted objections based on the "consulting expert" privilege of Federal Rule 26(b)(4)(B) with respect to the following portions of the Questionnaire:

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Instruction C | Asbestos Related Condition(s) … If you have been diagnosed with multiple conditions and/or if you have received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. | Pursuant to Federal Rule of Civil Procedures (26)(b)(4)(B), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. . . . Claimant [objects] to Section C of the Instructions to the extent that it requests the completion of Part II of the Discovery Questionnaire 'if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors.'. . . |
| Instruction C | Supporting Documents for Diagnosis: This Questionnaire must be accompanied by any and all documents, you or your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis. | Pursuant to Federal Rule of Civil Procedures (26)(b)(4)(B), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. . . . Claimant objects to Section C of the Instructions to the extent that it requests the production of 'any and all documents' that 'support or conflict with your diagnosis.'. . . |

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Instruction C | X-rays and B-reads:  Please attach all x-ray readings or reports. | Pursuant to Federal Rule of Civil Procedures (26)(b)(4)(B), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. . . . Claimant objects to Section C of the Instructions to the extent that it requests the production of 'all x-ray readings and reports.' . . . |
| Instruction C | Pulmonary Function Tests: Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based. | Pursuant to Federal Rule of Civil Procedures (26)(b)(4)(B), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. . . . Claimant objects to Section C of the Instructions to the extent that it requests the production of 'all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based.' . . . |

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Instruction J | As indicated the instructions to Parts II and III, this Questionnaire must be accompanied by copies … of any and all documents you, your counsel, or your doctors have or subsequently obtain that … support or conflict with your diagnosis. | Pursuant to Federal Rule of Civil Procedures (26)(b)(4)(B), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. . . . Claimant objects to Section J of the Instructions to the extent that it requests the production of 'any and all documents' that 'support or conflict with your diagnosis.' |
| Part II | Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. | Pursuant to Federal Rule of Civil Procedures (26)(b)(4)(B), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. . . . Claimant objects to Part II of the Discovery Questionnaire to the extent that it requests disclosure of 'diagnoses and diagnostic tests' by 'multiple doctors' concerning 'previous or subsequent diagnoses or diagnostic tests that change or conflict with the original diagnoses.' Claimant urges this objection with regard to all 'condition(s)' for which disclosure is requested. |

*See e.g.,* Questionnaire of M. B. at WR GRACE PIQ 27781-0004 – 27781-0008 and WR

GRACE PIQ 27781-0007 – 27781-0014; Questionnaire of P. P. at WR GRACE PIQ 44944-

0004 – 44944-0006 and WR GRACE PIQ 44944-0007 – 44494-0014 (submitted by Hartley

O'Brien) (collectively, attached as Exhibit E); Questionnaire of C. G. at WR GRACE PIQ

007549-004-007549-0014; Questionnaire of J. S. at WR GRACE PIQ 007563-004-007563-

0014 (submitted by Provost Umphrey) (collectively attached as Exhibit F); Questionnaire of

J. M. at WR GRACE PIQ 39628-0001-39628-0008; Questionnaire of F. B. at WR GRACE

PIQ 39805-0001-39805-0008 (submitted by Peter G. Angelos) (collectively attached as

Exhibit G).[4].

### A.    Claimants Have Not Demonstrated A Valid Consultant Relationship.

As the parties claiming a privilege, the burden is on the Hartley/Provost/Angelos

Claimants to prove that the consulting expert privilege applies and prevents the discovery of

otherwise relevant materials.  *See In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 187

(D.N.J. 2003) ("[T]he party asserting the privilege bears the burden of establishing those

facts that are the essential elements of the privileged relationship.").  Indeed, "a party who

alleges privilege as a reason for not complying with a [discovery request] has the burden of

proof to assert **specific facts** relating to specific documents [or communications] and cannot

rely on conclusory statements."  *Mass. Sch. of Law v. Am. Bar Assoc.*, 914 F. Supp. 1172,

1178 (E.D. Pa. 1996) (emphasis added).  The Hartley/Provost/Angelos Claimants' consulting

expert privilege claim is utterly devoid of *any* facts, let alone specific facts, that would be

sufficient to justify their claims.  Particularly, the Hartley/Provost/Angelos Claimants have

not shown facts that would allow the Court to conclude that such a relationship existed, such

as:  "(1) the manner in which the consultation was initiated; (2) the nature, type and extent of

information or material provided to, or determined by, the expert in connection with his

---

[4]    These exemplars are representative of the Questionnaires is submitted by the Hartley/Provost/Angelos Claimants.  Grace will make the Questionnaire of any claimant listed in Exhibits A-C available at the Court's request.

review; (3) the duration and intensity of the consultative relationship; and, (4) the terms of the consultation, if any (*e.g.* payment, confidentiality of test data or opinions, etc.).” *Ager v. Jane C. Stormont Hosp. and Training Sch. for Nurses*, 622 F.2d 496, 501 (10th Cir. 1980). Rather than demonstrate the existence of a confidential consulting relationship for each Claimant and each doctor, the Hartley/Provost/Angelos Claimants state that “any” expert who performed any test, other than the doctors named expressly in the Questionnaire are so-called “consulting experts.”

> **B.    Even If A Consulting Expert Privilege Exists, The “Exceptional Circumstances” Exception Requires Disclosure Of The Tests That Support Or Conflict With The Claimants’ Diagnoses.**

“Exceptional Circumstances” require disclosure of the medical information and tests being withheld.  Exceptional circumstances sufficient to overcome any consultant privilege exist:  (1) where it is impracticable for the other party to obtain the information from other sources, *See Ager*, 622 F.2d at 503 n.8; *Dixon v. Cappellini*, 88 F.R.D. 1, 3 (M.D. Pa. 1980); (2) where one party’s experts cannot duplicate a test or an observation by a consulting expert, *see Ager*, 622 F.2d at 503 n.8, or (3) where a party may “shop” around for a favorable expert opinion, *see Coates v. AC & S, Inc.*; 133 F.R.D. 109, 110 (E.D. La. 1990).   All three circumstances are present in this case.

> **1.    It is impracticable to obtain these test results from another party and the tests cannot be duplicated.**

Exceptional circumstances are present because it is impracticable for Grace to obtain the information from other sources, and Grace’s experts cannot acquire the same information known by the consulting expert by performing their own x-ray readings or pulmonary function tests.  *See Ager*, 622 F.2d at 503 n.8; *Adams,* 132 F.R.D. at 442.  Asbestosis is a progressive disease.  A person with asbestosis should experience a worsening of his or her

condition over time. The x-ray reports, diagnostic tests, and pulmonary function tests prepared by these alleged consultants are the only evidence of the claimant's physical condition at the time the x-ray was read. Even if Grace's experts could re-perform the tests, this would not be sufficient because the tests may be many years old and a significant change of circumstances likely has occurred during the intervening period of time. That is why, regardless of any purported confidential consultation privilege, medical reports are often disclosed based on exceptional circumstances. *See Braun v. Lorillard Inc.*, 84 F.3d 230, 236 (7th Cir. 1996), *cert. denied*, 519 U.S. 992 (1996) (negative test results obtained by plaintiff's experts were discoverable because exceptional circumstances were found when lung tissue was destroyed by the plaintiff's expert testing, test results could not be obtained by other means and the cause of plaintiff's lung disease was in issue); *Delcastor, Inc. v. Vail Assocs., Inc.*, 108 F.R.D. 405, 409 (D. Colo. 1985) (defense expert's report was discoverable because exceptional circumstances were found where mudslide terrain eroded after the expert's examination); *Dixon*, 88 F.R.D. at 3 (reports made by psychologist and psychiatrist consulted by plaintiff immediately after alleged "de-programming" were discoverable because exceptional circumstances were found where information as to plaintiff's mental state at that specific time could not otherwise be obtained by defendants and plaintiff's mental state immediately following "de-programming" was in issue).

Moreover, these tests may be the only source of potentially exculpatory evidence. Any test that tends to show that a Claimant may have tested negative for the presence of asbestosis or another asbestos-related disease or that the Claimant is not impaired as the result of any asbestos-related disease is critically important to Grace's experts' evaluation of the pre-petition litigation claims. Such evidence cannot be shielded from discovery by the

consultant privilege, particularly where, as here, it is impossible for Grace to obtain the potentially exculpatory evidence from any other source or in any other manner. This Court specifically addressed this issue when first determining the scope of the medical information that would be required in the Questionnaire.  At that time, the Court recognized the importance of the provision of exculpatory medical information.  *See* Tr. of Hr'g at 233  (Jul. 19, 2005) ("[The Court]: Well, I know this.  I know that if there's an x-ray that doesn't support the diagnosis, because it's negative, and it should be positive, [then] that relates to the diagnosis.").  The Hartley/Provost/Angelos Claimants' attempts to hide this information should be rejected summarily.  This is the very information Grace has been seeking from the inception of this Bankruptcy.  If exculpatory medical evidence exists about any of these Firms' Claimants, it must be produced as ordered by this Court, and sanctions should be imposed if it is withheld.

  **2. The Potential "Shopping" of Experts Is an Exceptional Circumstance.**

  Exceptional circumstances are also present where there is a reason to believe that the "shopping" of experts may have occurred.  *Coates v. AC & S, Inc.* is on point.  There, in a lawsuit alleging personal injury due to asbestos exposure, the District Court for the Eastern District of Louisiana held that "shopping" of tissue samples for a favorable expert opinion that plaintiff's death resulted from mesothelioma constituted an exceptional circumstance under Rule 26(b)(4)(B).  *See Coates* 133 F.R.D. at 110.  The court ordered that the plaintiff was entitled to either depose or obtain copies of reports of experts to whom the tissue samples were taken.  *See Id.* at 110-11.  The Court stated that it was "still of the opinion that 'shopping' continues to take place and that such 'shopping' is sufficient to fall within the

Rule's exceptional circumstances exception." *Id.* at 110. The Court also noted that it was impracticable for the plaintiff to obtain this information by other means. *Id.* at 111.

There is reason to believe such "shopping" is taking place in asbestos cases. *See*, *e.g.*, David Egilman, Letter to the Editor, *Asbestos Screenings*, 42 Am. J. of Indus. Med. 163 (2002). Other asbestos bankruptcy cases have found that a few accommodating "over-reading" B-readers are responsible for a large percentage of previously paid claims. Judge Fullam of the District of Delaware noted that "[c]ertain pro-plaintiff B-readers were so biased that their readings were simply unreliable." *Owens Corning v. Credit Suisse First Boston*, Memorandum and Order, Case No. 04-00905, Docket No. 106, at 6 (Mar. 31, 2005). Still, others have concluded that a substantial portion of asbestos litigation is supported by "specious medical evidence" including "evidence generated by the entrepreneurial medical screening enterprises and B-readers- specially certified X-ray readers that the enterprises or plaintiff lawyers select, who often conform their findings and reports to the expectations of the plaintiff lawyers who retain them." Lester Brickman, *On the Theory Class's Theories of Asbestos Litigation: The Disconnect Between Scholarship and Reality*, 31 Pepp. L. Rev. 33, 41 (2003).

David Austern, general counsel for the Manville Trust and the Future Claimants' Representative in this case, stated: ("Part of the problem was sort of an amazing elasticity -- which is about as calm a word as I can think of -- on the part of claimants' lawyers to find doctors who will say that somebody suffers from minimal asbestos disease.") Christine Biederman, *et al.*, *Toxic Justice*, Dallas Observer, Aug. 13, 1998. The disclosure of the B-readings, x-ray reports, and other diagnostic tests by these so-called "consulting experts" are the only source of information that would conclusively determine that such doctor shopping

occurred.  Accordingly, these documents and this information should be produced over the

Claimants' consulting expert objections.

## II.      THE HARTLEY/PROVOST/ANGELOS CLAIMANTS HAVE IMPROPERLY ASSERTED CLAIMS OF PRIVILEGE.

The Hartley/Provost/Angelos Claimants have asserted objections based on the

attorney-client privilege and attorney work product with respect to the following portions of

the Questionnaire:

| Question | Text of Question | Text of Objection |
|---|---|---|
| Part II, Questions 2, 4, 5, 6, and 7 | Did you retain counsel in order to receive any of the services performed by the [] doctor? | Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of any privileged communications between Claimant, and/or a representative of Claimant, and any attorney for Claimant, and/or a representative of any attorney for Claimant. . . Claimant objects to Part II of the Discovery Questionnaire to the extent that it asks if Claimant 'retain[ed] counsel in order to receive any of the services performed by the [] doctor.' |
| Part II, Questions 2, 4, 5, and 6 | Was the [] doctor referred to you by counsel? | Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of any privileged communications between Claimant, and/or a representative of Claimant, and any attorney for Claimant, and/or a representative of any attorney for Claimant. . . Claimant objects to Part II of the Discovery Questionnaire to the extent that it asks if 'the [] doctor was referred to you by counsel.' |

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Part II, Questions 2, 4, 5, and 6 | Are you aware of any relationship between the [] doctor and your legal counsel? | Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of any privileged communications between Claimant, and/or a representative of Claimant, and any attorney for Claimant, and/or a representative of any attorney for Claimant. . . Claimant objects to Part II of the Discovery Questionnaire to the extent that it asks if Claimant is 'aware of any relationship between the [] doctor and your legal counsel' unless Claimant's knowledge was obtained other than through communication with Claimant's legal counsel and/or his/her representative. |

*See e.g.,* Questionnaire of M. B. at WR GRACE PIQ 27781-0011 – 27781-0014.

The Hartley/Provost/Angelos Claimants do not specify whether they are asserting a claim of attorney-client privilege or a claim of work product privilege.  Regardless of which privilege claim the Hartley/Provost/Angelos Claimants intend to assert, neither is well-founded. First, the questions at issue only seek facts and do not invade on *any* privilege at all. Second, the Hartley/Provost/Angelos Claimants have provided no information by which the Court could assess the validity of those privilege claims.

    **A.**    **Neither the Attorney-Client Privilege Nor the Work Product Doctrine Apply.**

It is undisputed that the attorney-client privilege "extends only to *communications* and not to facts."  *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (emphasis original); *Synalloy Corp. v. Gray*, 142 F.R.D. 266, 268 (D. Del. 1992).  Likewise, work product protection protects documents or opinions created in anticipation of litigation.  *See*

*Leonen v. Johns-Manville*, 135 F.R.D. 94, 96 (D.N.J. 1990) (holding that the work product doctrine "while protective of an attorney's opinions, does not protect the ***facts*** that underlie the opinions" and "[a] party may obtain such facts through the adversarial process ***by asking questions*** in the appropriate areas") (emphasis added).   Thus, questions seeking factual information as opposed to communications between the claimant and his or her attorney or documents prepared by the attorney in anticipation of litigation do not fall within the privilege and must be answered.  *See Upjohn*, 449 U.S. at 395; *Leonen*, 135 F.R.D. at 96.

The questions to which the Hartley/Provost/Angelos Claimants assert their privilege objections are purely factual in nature:

- Part II asks for information regarding the general purpose of the Claimant's retention of counsel, including whether counsel was retained in order to receive the services performed by the doctor in question.

- Part II further asks the Claimant whether the doctor in question was hired to perform the services as a result of being "referred to you by counsel."

- Finally, Part II asks the Claimant whether he or she is "aware of any relationship between" the doctor in question "and your legal counsel."

These questions seek factual information regarding the purpose and scope of the retention of counsel and other information known to the Claimant independent from any communications between the Claimant and his or her counsel.  *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001) (permitting inquiry "into the general nature of legal services"); *In re Grand Jury Procedures*, 722 F.2d 303, 308 (6th Cir. 1983) (holding that mere fact of and scope of representation is not privileged).  Moreover, the events in question, including the diagnosis of the Claimant with the disease or condition for which he or she seeks recovery, may well have occurred outside the attorney-client relationship.   Thus, the Claimants may assert the attorney-client privilege as grounds for refusing to respond to these questions only after they have established the existence of an attorney-client relationship at

the time of the relevant events.  *See e.g., Arcuri v. Trump Taj Mahal Assocs.,* 154 F.R.D. 97, 102 (D.N.J. 1994) (collecting cases).

      **B.**      **The Hartley/Provost/Angelos Claimants Have Not Met Their Burden To Demonstrate That Either The Attorney Client Privilege Or Work Product Privilege Prevent The Disclosure Of The Information.**

Under established Third Circuit law, the burden of proving that the attorney-client privilege or work product doctrines apply and prevent the discovery of otherwise relevant information falls on the party asserting the privilege.  *See In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 187 (D.N.J. 2003) ("The party asserting the privilege bears the burden of establishing those facts that are the essential elements of the privileged relationship."). Indeed, "a party who alleges privilege as a reason for not complying with a [discovery request] has the burden of proof to assert ***specific facts*** relating to specific documents [or communications] and cannot rely on conclusory statements." *Mass. Sch. of Law v. Am. Bar Assoc.*, 914 F. Supp. 1172, 1178 (E.D. Pa. 1996) (emphasis added).  The Hartley/Provost/Angelos Claimants' privilege claim is utterly devoid of any facts, let alone specific facts that would be sufficient to justify their claims.  Indeed, the entirety of the Hartley/Provost/Angelos Claimants' assertion of privilege is contained in the conclusory statement that the objected-to questions may seek "privileged communications."  This is not enough.  *See id*.  ("The purpose of the rule is to provide a party whose discovery is constrained by a claim of privilege with information sufficient to evaluate the claim and to resist it.  The party claiming the privilege cannot decide the limits of his entitlement.")

**III.    THE EXISTENCE OF CONFIDENTIALITY AGREEMENTS DOES NOT EXCUSE THE HARTLEY & O'BRIEN AND ANGELOS CLAIMANTS' OBLIGATION TO PRODUCE INFORMATION REGARDING SETTLEMENTS.**

The Hartley & O'Brien Claimants and the Angelos Claimants lodge a confidentiality objection to the following question:

| Question | Text of Question | Text of Objection |
|---|---|---|
| Part VII, Section A, Question 6[5] | Was a settlement agreement reached in this lawsuit?  If yes and the settlement was reached on or after April 2, 2001, please indicate the following:   a.    Settlement amount for each defendant.  b. Applicable defendants. c. Disease or condition alleged.  d.    Disease or condition settled (if different than disease or condition alleged). | Hartley & O'Brien Claimants:  Claimant further objects to Section a.6 of Part VII of the Discovery Questionnaire to the extent that it seeks disclosure of settlements reached with other defendants that are subject to binding confidentiality agreements.  Angelos Claimants:  Claimant objects to Part VII, Subsection a, question 6 in that for a majority of defendants, any settlement agreements are subject to a confidentiality agreement. |

*See e.g.,* Questionnaire of M. B. at WR GRACE PIQ 27781-0019.

This objection must fail for two reasons.  First, the Hartley & O'Brien and Angelos Claimants fail to make sufficiently-specific allegations regarding these purported confidentiality agreements to allow the Court to determine whether any such privilege from discovery would apply.  Second, even if the Hartley & O'Brien and Angelos Claimants' factual allegations were sufficient, which they are not, the mere existence of a confidentiality

---

[5]    The Provost Umphreys Claimants have not refused to answer Question 6 in Part VII, Section A on these grounds.

agreement does not prevent the disclosure of the terms of a settlement agreement in litigation.

### A.      The Hartley & O'Brien and Angelos Claimants' Allegations Are Insufficient To Support A Claim Of Confidentiality.

The Hartley & O'Brien and Angelos Claimants, as the parties seeking to resist the requested discovery, "must state with specificity the objection and how it relates to the particular request being opposed." *See Harding v. Dana Transport Inc.,* 914 F. Supp 1084, 1102 (D.N.J. 1996) ("Broad-based non-specific objections are almost impossible to assess on their merits and fall woefully short of burden that must be borne by a party making an objection to an interrogatory or document request.)   Instead, the Hartley & O'Brien and Angelos Claimants make cursory, equivocal allegations of some unspecified confidentiality interest.

In their response to Part VII, Section A, Question 6, which asks whether a settlement agreement has been reached in asbestos- or silica-related litigation and, if so, the amount of that settlement, defendants involved in the settlement, and the disease or condition alleged and settled, the Hartley & O'Brien Claimants state that they object "***to the extent that*** it seeks disclosure of settlements reached with other defendants that are subject to binding confidentiality agreements." *See, e.g.*, Questionnaire of M. B. at WR GRACE PIQ 27781-0019 (emphasis added).   Similarly, the Angelos Claimants object to this question on the grounds that, "for a ***majority*** of defendants, ***any*** settlement agreements are subject to a confidentiality agreement." *See, e.g.*, Questionnaire of J. A. at WR GRACE PIQ 39628-0031 (emphasis added).   These conclusory assertions of conditional confidentiality is devoid of several key details that would be necessary for the Court to assess the propriety of any confidentiality claim.  First, by stating that their objection applies only "to the extent that"

the settlements in question are subject to binding confidentiality agreements, the Hartley &

O'Brien and Angelos Claimants' objections render it impossible to determine the scope of

the potential objection.  Were there confidentiality agreements involved in each settlement

agreement for each plaintiff?  Second, not all confidentiality agreements are equivalent in

scope.  There is no way to determine whether, under the "confidentiality agreement"

generically cited by the Hartley & O'Brien and Angelos Claimants, the disclosure of all

information is purportedly prohibited or whether only the disclosure of certain information is

allegedly barred.  Moreover, confidentiality provisions frequently have express exceptions

that permit the disclosure of the confidential material upon a court order.  Without specific

statements as to the terms of the purported confidentiality agreements, the Court cannot

possibly ascertain the alleged propriety of the objection.  *See* Tr. of Hr'g at 282-83 (Jul. 19,

2005) ([The Court]: I don't know what the scope of those agreements are.").  At a minimum,

the Claimants must provide proof of the existence of a confidentiality agreement, the identity

of the parties subject to the confidentiality agreements, and the scope of the confidentiality

agreement.

> **B.      As A Matter Of Law, Grace Is Entitled To Information Regarding The Amounts Of The Hartley & O'Brien and Angelos Claimants' Settlements And Trust Claims.**

Regardless of the sufficiency of their factual allegations, the Hartley & O'Brien and

Angelos Claimants' allegation that the mere existence of a confidentiality provision bars

discovery of the amounts of various litigation and trust settlements is without legal merit.

The law does not bar on the discovery of settlement agreements, or the information contained

within such agreements.  Settlement-related information and agreements may be discovered

if they are relevant to the "subject matter involved in the pending action … [or they] appear[]

reasonably calculated to lead to the discovery of admissible evidence." *Griffin v. Mashariki*, 1997 WL 756914, at *1 (S.D.N.Y. Dec. 8, 1997) (collecting cases).

Accordingly, courts have found that "litigants cannot shield a settlement agreement from discovery ***merely because it contains a confidentiality provision***." *Cleveland Constr., Inc. v. Whitehouse Hotel, Ltd. P'ship.*, 2004 WL 385052, at *1 (E.D. La. Feb. 25, 2004) (*quoting ABF Capital Mgmt. v. Askin Capital*, 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000)). This Court agreed with this very point when this issue arose in connection with its consideration of the Questionnaire during the July 2005 omnibus hearing. The PI Committee, acting on behalf of the interests of the Personal Injury Claimants (including the Hartley & O'Brien and Angelos Claimants) objected to questions regarding the amounts of settlements with various defendants on the grounds that such settlements contain confidentiality agreements. Tr. of Hr'g at 282-83 (Jul. 19, 2005). Over the PI Committee's objection, the Court ordered that the claimants "identify the defendants with whom [the Claimants] settled, the amount, and for what disease," and stated that a defendant "can come in and contest it if [a Claimant] violates their agreements." *Id.*

To the extent that the Court believes that such information needs protection from disclosure outside the Bankruptcy proceedings, the proper course is not to deny Grace access to the information, but to issue a protective order that restricts the use of the information obtained in response to these questions to the estimation proceedings. As the Third Circuit made clear, "The [C]ourt, in its discretion, is authorized by this subsection to fashion a set of limitations that ***allows as much relevant material to be discovered as possible***, while preventing unnecessary intrusions into the legitimate interests -- including … confidentiality

interests -- that might be harmed by the release of the material sought." *See Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) (emphasis added).

<u>**CONCLUSION**</u>

For the foregoing reasons, Debtors respectfully request that the Court overrule the objections lodged by the Hartley/Provost/Angelos Claimants in lieu of providing answers to the questions posed in the Questionnaire and require that Claimants provide the required information on or before January 12, 2007.


Wilmington, Delaware
Dated:  November 9, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000


KIRKLAND & ELLIS LLP
Barbara M. Harding
David Mendelson
Brian T. Stansbury
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:    (202) 879-5000
Facsimile:    (202) 879-5200

*and*

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession