**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Docket No. |
| | ) | |

## MOTION TO COMPEL ASBESTOS PERSONAL INJURY CLAIMANTS REPRESENTED BY COONEY & CONWAY TO RESPOND TO THE W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

In response to the W.R. Grace Asbestos Personal Injury Questionnaire ("Questionnaire"), the clients represented by Cooney & Conway (collectively, the "Cooney & Conway Claimants") have objected to providing information in response to certain questions posed in the Questionnaire.[1]  Because the objections are unfounded, Grace hereby moves to compel the Cooney & Conway Claimants to provide all the information requested in the Questionnaire.[2]

## ARGUMENT

The Court approved the Questionnaire after extensive briefing, argument, and consideration, and already has ruled that general relevance objections are unfounded and should not be maintained.  Additionally, the Court has addressed the general burden objections related to providing the information requested in the Questionnaire by permitting

---

[1]    The clients represented by Cooney & Conway and who have returned Questionnaires are identified in Exhibit A (attached).

[2]    Grace moves only to compel response to questions to which the Cooney & Conway Claimants have objected in lieu of providing responsive information.  As the Court is aware, pursuant to this Court's Order Concerning Debtors' Motion to Compel, Claimants have until Nov. 13, 2006 to supplement their Questionnaire responses.  Grace reserves its right to raise any and all objections to the sufficiency of the Cooney & Conway Claimants' responses until the supplementation of their Questionnaire responses is complete.

response by way of attachment, and by allowing an additional year to provide the requested information.  Accordingly, all general relevance and burden objections raised by the Cooney & Conway Claimants should be overruled on their face.  *See* Memorandum of Points and Authorities Concerning Background of the Questionnaire Approval Process and Objections Previously Addressed by the Court ("Background Memorandum") (attached as Exhibit B.)[3]

In connection with all other objections raised by the Cooney & Conway Claimants, it is fundamental, under both Federal Rule of Civil Procedure 26 and Federal Rule of Bankruptcy Procedure 7026, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1); Fed. R. Bankr. P. 7026.  Accordingly, under a motion to compel, the initial burden is on the moving party to demonstrate that the discovery sought is relevant.  Once the relevance showing has been satisfied, the "party resisting discovery" bears the burden of making a specific showing as to why the information sought does not have to be provided.  *See Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) (citations omitted).  Because the Court already has ruled that all the questions in the Questionnaire are relevant, *see* Order Concerning Debtors' Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire (Docket No. 13393) (Oct. 12, 2006) at ¶ 1, the burden rests with the firms raising the objections and resisting the discovery to demonstrate why their objections should be sustained.

The Cooney & Conway Claimants refused to answer several questions based on their various objections.  These questions relate to:  (1)  the Claimants' non-Grace asbestos

---

[3]    The Cooney & Conway Claimants refused to answer Part V, Questions 4, 5, and 6 in Part VII, Section A and Questions 5, 6, and 7 in Part VII, Section B on the grounds that the questions are "not relevant to the subject matter of the estimation."  For the reasons discussed in the Background Memorandum, these objections should be overruled.

exposures (Part V); and (2) the Claimants' asbestos- and silica-related litigation and claims (Part VII).  However, none of Cooney & Conway Claimants' objections are justified for the following reasons:

- First, the Cooney & Conway Claimants refused to answer Part V, relating to non-Grace asbestos exposures, Questions 4, 5, and 6 in Part VII, Section A, relating to asbestos- and silica-related litigation brought by the Claimants, and Questions 5, 6, and 7 in Part VII, Section B, relating to the Claimants' non-litigation asbestos- and silica-related claims, on state law relevance grounds, including the admissibility of exposure evidence at trial under Illinois law.  That objection is unfounded as the Court has already ruled that these questions are relevant to the estimation and, further, the admissibility of the evidence at trial is not at issue at this time.

- Second, the Cooney & Conway Claimants refused to answer questions in Part II, relating to the diagnosis and treatment of the disease or condition being alleged, on the grounds that the questions seek information from experts that is non-discoverable and is subject to the consulting expert privilege.  This objection must fail as the Cooney & Conway Claimants have not met their burden of establishing the consulting expert privilege applies to the information sought by the Questionnaire.  Further, exceptional circumstances exist that would require the production of such documents.

- Third, the Cooney & Conway Claimants refused to answer questions in Part II, relating to the medical bases for the Claimants' diagnoses with the alleged conditions, Question 6 in Part VII, Section A, relating to asbestos- and silica-related litigation brought by the Claimants, and Questions 5 and 6 in Part VII, Section B, relating to the Claimants' non-litigation asbestos and silica claims, on privilege grounds.  The Cooney & Conway Claimants' objection is unfounded as the questions posed in the Questionnaire seek only facts and not privileged information.  Further, the Cooney & Conway Claimants have failed to provide any objective information that would allow the Court to determine whether any valid privilege applies.

- Fourth, the Cooney & Conway Claimants refused to answer Question 6 in Part VII, Section A, and Questions 5 and 6 in Part VII, Section B, relating to the Claimants' non-litigation asbestos and silica claims, on grounds of confidentiality. This objection must too fail, as confidentiality agreements do not immunize facts concerning a settlement from discovery.

## I.    THE COONEY & CONWAY CLAIMANTS' STATE LAW RELEVANCE OBJECTIONS ARE UNFOUNDED.

The Cooney & Conway Claimants maintain objections to the following section of the Questionnaire based on Illinois state law:

| Question | Text of Question | Text of Objection |
| --- | --- | --- |
| Part V | Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. | Claimant further objects to Part 5 to the extent that it requires Claimant to provide any information regarding Claimant's exposure to other manufacturer's asbestos products as evidence of such exposures are not relevant or admissible under Illinois law. *Lipke v. Celotex*, 153 Ill. App. 3d 498, 505, 505 N.E.2d 1213, 1220, 1221 (1st Dist. 1987) . . . ; *Nolan v. Weil-McLain*, 2006 Ill. App. LEXIS 558; *Kochan v. Owens Corning*, 610 N.E. 683 (1993); *Spain v. Owens Corning*, 304 Ill. App. 3d 356, 710 N.E.2d 528; 237 Ill. Dec. 898 (1999); *Tragarz v. Keene*, 980 F.2d 411 (7th Cir. 1992). Liability for asbestos injuries in Illinois is joint and several. 735 ILCS 2-1118 (2004). Claimant's lawsuit is filed in Illinois, and Illinois law controls the relevance and admissibility of evidence, particularly as here, where such exposure evidence has no relevance to the estimation hearing. |

*See, e.g.*, Questionnaire of E. C. at WR GRACE PIQ 06779-0021 (emphasis in original); Questionnaire of S. A. at WR GRACE PIQ 56800-0022 (emphasis original) (collectively, attached as Exhibit C).[4]

First, this objection must fail because the Court already has determined repeatedly that the information sought by Grace through the Questionnaire is relevant to the estimation for purposes of discovery. As stated by the Court in the MTC Order:

---

[4]    These exemplars are representative of the Questionnaires submitted by the Cooney & Conway Claimants. Grace will make the Questionnaires of any Claimants listed on Exhibit A, available to the Court at the Court's request.

> [A]s a general matter, the questions contained in the Questionnaire are relevant for purposes of Grace's discovery relating to the estimation of Grace's asbestos personal injury liability and the Court expects the claimants and/or their lawyers to answer the questions in the Questionnaire completely and accurately …. [T]here may be specific individual questions that for reasons particular to an individual's circumstances or claim, a question contained in the Questionnaire is not relevant to his or her claim or is unduly burdensome or invades a privilege, and he or she may separately raise his or her specific objections pursuant to the mechanism established below in ¶ 6.

MTC Order at ¶ 1.  No such special circumstances are presented here.

Second, this objection is without merit because it improperly purports to apply Illinois procedural law to this estimation proceeding.  The estimation process is governed by the bankruptcy procedural rules, which require courts to apply both the federal rules of civil procedure and evidence.  Fed. R. Bankr. P. 9017; *see also In re USG Corp.*, 290 B.R. 223, 227 (Bankr. D. Del. 2003).

Third, even under Illinois law, the question of whether documents or information are discoverable is separate from whether those documents or information will later be admissible at trial.  Relying on *Lipke v. Celotex Corp.*, 153 Ill. App. 3d 498, 505, (1st Dist. 1987), the Cooney & Conway Claimants refused to provide information regarding their non-Grace exposure on the grounds that such information may be inadmissible at trial under Illinois law.  This very argument, relying on *Lipke*, was specifically rejected by the Illinois Appellate Court more than a decade ago.  In *Skonberg v. Owens-Corning Fiberglas Corp.*, 215 Ill. App. 3d 735, (1st Dist. 1991), the Court held:

> Plaintiff contends that *Lipke* stands for the proposition that a plaintiff's exposure to other asbestos products is irrelevant, and as such is not *discoverable*.  What the case actually espouses is that evidence of a plaintiff's exposure to other asbestos products is irrelevant and therefore *inadmissible*.  *Lipke* does not discuss the discoverability of a form containing evidence of other exposures.

*Skonberg*, 215 Ill. App. 3d at 744-45, (emphasis original); *see also id.* (finding that the "trial court in the instant case also confused admissibility and discoverability" and that denying discovery of other exposures on the basis that such information may not later be admissible "was therefore incorrect"); *see also Spain v. Owens Corning Fiberglass Corp.*, 304 Ill. App. 3d 356, 365 (4th Dist. 1999) (noting that evidence of other exposures may be admissible in asbestos litigation in some instances). The remaining cases cited by the Cooney & Conway Claimants similarly discuss the *admissibility* of such evidence under Illinois law, rather than the *discoverability* of such information, and are, therefore, equally irrelevant to the instant motion to compel. The Cooney & Conway Claimants have not offered any particularized basis for finding that the questions relating to non-Grace exposure are irrelevant as to them, and they should be compelled to provide this information.

## II.    THE COONEY & CONWAY CLAIMANTS HAVE IMPROPERLY ASSERTED CLAIMS OF "CONSULTING EXPERT" PRIVILEGE.

The Cooney & Conway Claimants have asserted objections based on the "consulting expert" privilege of Federal Rule 26(b)(4)(B) with respect to the following portions of the Questionnaire:

| Question | Text of Question | Text of Objection |
|---|---|---|
| Instruction C | Asbestos Related Condition(s) … If you have been diagnosed with multiple conditions and/or if you have received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. | Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. |

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Instruction C | Supporting Documents for Diagnosis: This Questionnaire must be accompanied by any and all documents, you or your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis. | Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. |
| Instruction C | X-rays and B-reads: Please attach all x-ray readings or reports. | Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. |
| Instruction C | Pulmonary Function Tests: Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based. | Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. |
| Instruction J | As indicated the instructions to Parts II and III, this Questionnaire must be accompanied by copies … of any and all documents you, your counsel, or your doctors have or subsequently obtain that … support or conflict with your diagnosis. | Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. |
| Part II and all subparts | Asbestosis-Related Conditions | Claimant objects to Part II of the Questionnaire in its entirety on the ground that it exceeds the scope of discovery in that it seeks information . . . from experts that is non-discoverable and is subject to the consulting expert . . . privilege[]. |

*See, e.g.*, Questionnaire of E. C. at WR GRACE PIQ 56779-0005 – 56779-0018.

    **A.**    **The Cooney & Conway Claimants Have Not Demonstrated A Valid Consultant Relationship.**

As the parties claiming a privilege, the burden is on the Cooney & Conway Claimants to prove that the consulting expert privilege applies and prevents the discovery of otherwise relevant materials.  *See In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 187 (D.N.J. 2003) ("[T]he party asserting the privilege bears the burden of establishing those facts that are the essential elements of the privileged relationship.").  Indeed, "a party who alleges privilege as a reason for not complying with a [discovery request] has the burden of proof to assert ***specific facts*** relating to specific documents [or communications] and cannot rely on conclusory statements." *Mass. Sch. of Law v. Am. Bar Assoc.*, 914 F. Supp. 1172, 1178 (E.D. Pa. 1996) (emphasis added).  The Cooney & Conway Claimants' privilege claim is utterly devoid of any facts, let alone specific facts that would be sufficient to justify their claims.

The Cooney & Conway Claimants claim that any doctor who performed any test, other than the doctors named expressly in the Questionnaire are so called "consulting experts."  However, the Cooney & Conway Claimants have not demonstrated that a consulting relationship existed at the time that the tests were performed.  Namely, the Cooney & Conway Claimants have not shown facts that would allow the Court to conclude that such a relationship existed, such as:  "(1) the manner in which the consultation was initiated; (2) the nature, type and extent of information or material provided to, or determined by, the expert in connection with his review; (3) the duration and intensity of the consultative relationship; and (4) the terms of the consultation, if any (e.g. payment, confidentiality of test data or opinions, etc.)." *Ager v. Jane C. Stormont Hosp. and Training Sch. for Nurses*, 622 F.2d 496, 501 (10th Cir. 1980).  The Cooney & Conway Claimants have not provided any of

these critical facts.  Absent this showing, claims of consulting expert privilege cannot be sustained.  *See Mass. Sch. of Law*, 914 F. Supp. at 1178.

Additionally, the names of the consulting experts, firms or diagnostic screening companies that performed tests on the claimants on behalf of the firms are not privileged or shielded from disclosure under any scenario, even if the firms can establish that such a confidential relationship existed with such entities.  *See Sea Colony, Inc. v. Continental Ins. Co.*, 63 F.R.D. 113 (D. Del. 1974) (holding that the identity of non-testifying experts is not protected from discovery); *Butler v. Harrah's Marina Hotel Casino*, 1987 WL 16691 (E.D. Pa. Sept. 8, 1987) ("This Court believes that the proper interpretation of Rule 26 allows for the discovery of identities of experts who are not expected to testify as witnesses.").

> **B.    Even If A Consulting Expert Privilege Exists, The "Exceptional Circumstances" Exception Requires Disclosure Of The Tests That Support Or Conflict With The Claimants' Diagnoses.**

"Exceptional circumstances" require disclosure of the medical information and tests being withheld.  Fed. R. Civ. P. 26(b)(4)(B); *Ager*, 622 F.2d at 504; *see also Hoover v. U.S. Dep't. of the Interior*, 611 F.2d 1132, 1140-42 (5th Cir. 1980); *Perry v. United States*, 1997 WL 53136, at *2 (N.D. Tex. Feb. 4, 1997).   Exceptional circumstances to overcome any consultant's privilege exist: (1) where it is impracticable for the other party to obtain the information from other sources,  *see Ager*, 622 F.2d at 503 n.8; *Dixon v. Cappellini*, 88 F.R.D. 1, 3 (M.D. Pa. 1980); (2) where one party's experts cannot duplicate a test or an observation by a consulting expert, *see Ager*, 622 F.2d at 503 n.8; or (3) where a party may "shop" around for a favorable expert opinion, *see Coates v. AC & S, Inc.*, 133 F.R.D. 109, 110 (E.D. La. 1990).  All three circumstances are present in this case.

> **1.    It is impracticable to obtain these test results from another party and the tests cannot be duplicated.**

Exceptional circumstances are present because it is impracticable for Grace to obtain the information from other sources, and Grace's experts cannot acquire the same information known by the consulting expert by performing their own x-ray readings, diagnostic tests, or pulmonary function tests.  *See Ager*, 622 F.2d at 503 n.8; *Adams,* 132 F.R.D. at 442. Asbestosis is a progressive disease.  A person with asbestosis should experience a worsening of his or her condition over time.  The x-ray reports, diagnostic tests, and pulmonary function tests prepared by these alleged consultants are the only evidence of the claimant's physical condition at the time the test was performed.  Even if Grace's experts could re-perform the tests, which they cannot, this would not be sufficient because the tests may be many years old and a significant change of circumstances likely has occurred during the intervening period of time.  That is precisely why, regardless of any purported privilege claim, medical reports are routinely ordered disclosed based on exceptional circumstances.  *See Braun v. Lorillard Inc.*, 84 F.3d 230, 236 (7th Cir. 1996), cert. denied, 519 U.S. 992 (1996) (negative test results obtained by plaintiff's experts were discoverable because exceptional circumstances were found when lung tissue was destroyed by the plaintiff's expert testing, test results could not be obtained by other means and the cause of plaintiff's lung disease was in issue); *Delcastor, Inc. v. Vail Assocs., Inc.*, 108 F.R.D. 405, 409 (D. Colo. 1985) (defense expert's report was discoverable because exceptional circumstances were found where mudslide terrain eroded after the expert's examination); *Dixon*, 88 F.R.D. at 3 (reports made by psychologist and psychiatrist consulted by plaintiff immediately after alleged "de-programming" were discoverable because exceptional circumstances were found where information as to plaintiff's mental state at that specific time could not otherwise be obtained by defendants and plaintiff's mental state immediately following "de-programming" was in issue).

Moreover, these tests may be the only source of potentially exculpatory evidence. Any test that tends to show that a Claimant may have tested negative for the presence of asbestosis or another asbestos-related disease or that the Claimant is not impaired as the result of any asbestos-related disease is critically important to Grace's experts' evaluation of the pre-petition litigation claims. Such evidence cannot be shielded from discovery by the consultant privilege, particularly where, as here, it is impossible for Grace to obtain the potentially exculpatory evidence from any other source or in any other manner. This Court specifically addressed this issue when first determining the scope of the medical information that would be required in the Questionnaire. At that time, the Court recognized the importance of the provision of exculpatory medical information. *See* Tr. of Hr'g at 233 (Jul. 19, 2005) ("[The Court]: Well, I know this. I know that if there's an x-ray that doesn't support the diagnosis, because it's negative, and it should be positive, [then] that relates to the diagnosis."). The Cooney & Conway Claimants' attempts to hide this information should be rejected summarily. This is the very information Grace has been seeking from the inception of this Bankruptcy. If exculpatory medical evidence exists about any of these Firms' Claimants, it must be produced as ordered by this Court, and sanctions should be imposed if it is withheld.

### 2. The Potential "Shopping" of Experts Is An Exceptional Circumstance.

Exceptional circumstances are also present where there is reason to believe that a Claimant or firm may be "shopping" around for an expert. *Coates v. AC & S, Inc.*, is on point. There, in a lawsuit alleging personal injury due to asbestos exposure, the District Court for the Eastern District of Louisiana held that "shopping" of tissue samples for a

favorable expert opinion that a plaintiff's death resulted from mesothelioma constituted an exceptional circumstance under Rule 26(b)(4)(B).  *See Coates*, 133 F.R.D. at 110.

The *Coates* Court ordered that the plaintiff was entitled to either depose or obtain copies of reports of experts to whom the tissue samples were taken.  *See id.* at 110-11.  The Court stated that it was "still of the opinion that 'shopping' continues to take place and that such 'shopping' is sufficient to fall within the Rule's exceptional circumstances exception." *Id*. at 110.  The Court also noted that it was impracticable for the plaintiff to obtain this information by other means.  *See id.* at 111.  There is reason to believe such "shopping" is taking place in asbestos cases.  *See*, *e.g.*, David Egilman, Letter to the Editor, *Asbestos Screenings*, 42 Am. J. of Indus. Med. 163 (2002).  Other asbestos bankruptcy cases have found that a few accommodating "over-reading" B-readers are responsible for a large percentage of  previously paid claims.  Judge Fullam of the District  of Delaware noted that "[c]ertain pro-plaintiff B-readers were so biased that their readings were simply unreliable." *Owens Corning v. Credit Suisse First Boston*, Memorandum and Order, Case No. 04-00905, Docket No. 106, at 6 (Mar. 31, 2005).  Others have concluded that a substantial portion of asbestos litigation is supported by "specious medical evidence" including "evidence generated by the entrepreneurial medical screening enterprises and B-readers — specially certified X-ray readers — that the enterprises or plaintiff lawyers select, who often conform their findings and reports to the expectations of the plaintiff lawyers who retain them." Lester Brickman, *On the Theory Class's Theories of Asbestos Litigation: The Disconnect Between Scholarship and Reality*, 31 Pepp. L. Rev. 33, 41 (2003).

Further, David Austern, general counsel for the Manville Trust and the Future Claimants' Representative in ***this case***, stated:  "'Part of the problem was sort of an amazing

elasticity — which is about as calm a word as I can think of — on the part of claimants'
lawyers to find doctors who will say that somebody suffers from minimal asbestos disease.'"
Christine Biederman, *et al*., *Toxic Justice*, Dallas Observer, Aug. 13, 1998.  The disclosure of
the B-readings, x-ray reports, and other diagnostic tests by these so-called "consulting
experts" are the only source of information that would conclusively determine that such
doctor shopping occurred.

III.    **THE COONEY & CONWAY CLAIMANTS HAVE IMPROPERLY
        ASSERTED CLAIMS OF PRIVILEGE.**

        The Cooney & Conway Claimants have asserted objections based on the attorney-
client privilege and attorney work product doctrine with respect to the following portions of
the Questionnaire:

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Part II and all subparts | Asbestosis-Related Conditions. | Claimant objects to Part II of the Questionnaire in its entirety on the ground that it exceeds the scope of discovery in that it seeks . . . information that is privileged, and information . . . that is non-discoverable and is subject to the . . . work product privilege[]. . . . Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of any privileged communication between Claimant, and/or a representative of Claimant, and any attorney for Claimant, and/or a representative of any attorney for Claimant.  In addition, pursuant to Federal Rule of Civil Procedure 26(b)(3), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of the work product of any attorney for Claimant, including but not limited to the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of Claimant. |

| Question | Text of Question | Text of Objection |
|---|---|---|
| Part VII, Section A, Question 6 | Was a settlement agreement reached in this lawsuit? If yes and the settlement was reached on or after April 2, 2001, please indicate the following: a. Settlement amount for each defendant. b. Applicable defendants. c. Disease or condition alleged. d. Disease or condition settled (if different than disease or condition alleged). | Claimant objects to Part VII, Subsection a, question 6 and each of its subparts regarding settlements reached in the lawsuit as it . . . requests privileged . . . information. |
| Part VII, Section B, Question 5 | Was claim [Claimant has asserted regarding asbestos and/or silica] settled? | Claimant objects to Part VII, Subsection b, questions 5 and 6 regarding settlements with an asbestos trust as it . . . requests privileged . . . information. |
| Part VII, Section B, Question 6 | Please indicate settlement amount [for each asbestos- or silica-related claim brought by the claimant]. | Claimant objects to Part VII, Subsection b, questions 5 and 6 regarding settlements with an asbestos trust as it . . . requests privileged . . . information. |

*See, e.g.*, Questionnaire of E. C. at WR GRACE PIQ 56779-0009 – 56779-0018 and WR GRACE PIQ 56779-0023.

The Cooney & Conway Claimants do not specify whether they are asserting a claim of attorney-client privilege or a claim of work product. Regardless of which grounds the Cooney & Conway Claimants intend to assert, neither claim is well-founded. First, the questions at issue only seek facts and do not invade on *any* privilege at all. Second, the Cooney & Conway Claimants have provided no information by which the Court could assess the validity of those privilege claims.

A.     **Neither The Attorney-Client Privilege Nor The Work Product Doctrine Apply.**

It is undisputed that the attorney-client privilege "extends only to *communications and not to facts*." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (emphasis original); *Synalloy Corp. v. Gray*, 142 F.R.D. 266, 268 (D. Del. 1992).  Likewise, work product protection protects documents or opinions created in anticipation of litigation. *See Leonen v. Johns-Manville*, 135 F.R.D. 94, 96 (D.N.J. 1990) (holding that the work product doctrine "while protective of an attorney's opinions, does not protect the ***facts*** that underlie the opinions" and "[a] party may obtain such facts through the adversarial process ***by asking questions*** in the appropriate areas") (emphasis added).  Thus, questions seeking factual information as opposed to communications between the Claimant and his or her attorney or documents prepared by the attorney in anticipation of litigation do not fall within the doctrine and must be answered.  *See Upjohn*, 449 U.S. at 395; *Leonen*, 135 F.R.D. at 96.

That the questions to which the Cooney & Conway Claimants assert their privilege objections are purely factual in nature is clear:

- Part II seeks information regarding the Claimant's diagnosis and testing of an asbestos-related condition.

- Part II further asks for information regarding the general purpose of the Claimant's retention of counsel, including whether counsel was retained in order to receive the services performed by the doctor in question, whether the doctor in question was referred by counsel, and whether the Claimant is aware of any relationship between the doctor in question and legal counsel.  *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001) (permitting inquiry "into the general nature of legal services"); *In re Grand Jury Procedures*, 722 F.2d 303, 308 (6th Cir. 1983) (holding that mere fact of and scope of representation is not privileged).

- Part VII, Subsection A, Question 6 asks simply for the "[s]ettlement amount for each defendant" with whom the claimant settled in his or her asbestos and/or silica litigation.

15

- Part VII, Subsection B, Question 5 asks the Claimant whether any claim that has been asserted regarding asbestos and/or silica has been settled.

- Part VII, Subsection B, Question 6 asks the Claimant to "[p]lease indicate [the] settlement amount" for each claim asserted against an asbestos or silica trust."

It is clear that these questions seek purely factual information that in no way implicates either communications between the Claimant and his or her counsel or the attorney's mental impression.

   **B.     The Cooney & Conway Claimants Have Not Met Their Burden To Demonstrate That Either The Attorney Client Privilege Or Work Product Doctrine Prevents The Disclosure Of The Information.**

Under established Third Circuit law, the burden of proving that either the attorney-client privilege or work product doctrine applies and prevents the discovery of otherwise relevant information falls on the party asserting the privilege.  *See In re Gabapentin Patent Litig.*, 214 F.R.D. at 187 ("The party asserting the privilege bears the burden of establishing those facts that are the essential elements of the privileged relationship.").  Indeed, "a party who alleges privilege as a reason for not complying with a [discovery request] has the burden of proof to assert **specific facts** relating to specific documents [or communications] and cannot rely on conclusory statements."  *Mass. Sch. of Law v. Am. Bar Assoc.*, 914 F. Supp. at 1178 (emphasis added).  The Cooney & Conway Claimants' privilege claim is utterly devoid of any facts, let alone specific facts that would be sufficient to justify their claims.  Indeed, the entirety of the Cooney & Conway Claimants' claim of privilege is contained in the conclusory statement that the objected-to questions seek "privileged information."  This is not enough.  *See id.* at 1178 ("The purpose of the rule is to provide a party whose discovery is constrained by a claim of privilege with information sufficient to evaluate the claim and to resist it.  The party claiming the privilege cannot decide the limits of his entitlement.").

16

**IV.   THE EXISTENCE OF CONFIDENTIALITY AGREEMENTS DOES NOT EXCUSE THE COONEY & CONWAY CLAIMANTS' OBLIGATION TO PRODUCE INFORMATION REGARDING SETTLEMENTS.**

The Cooney & Conway Claimants lodge a confidentiality objection to the following questions:

| Question | Text of Question | Text of Objection |
|---|---|---|
| Part VII, Section A, Question 6 | Was a settlement agreement reached in this lawsuit?  If yes and the settlement was reached on or after April 2, 2001, please indicate the following:  a.  Settlement amount for each defendant.  b.  Applicable defendants.  c.  Disease or condition alleged.  d.  Disease or condition settled (if different than disease or condition alleged). | Claimant objects to Part VII, Subsection a, question 6 and each of its subparts regarding settlements reached in the lawsuit as it . . . requests . . . .  .  .  .  or  confidential information . . . . Further, for a majority of defendants, any settlement agreements are subject to a confidentiality agreement. |
| Part VII, Section B, Question 5 | Was claim [Claimant has asserted regarding asbestos and/or silica] settled? | Claimant objects to Part VII, Subsection b, questions 5 and 6 regarding settlements with an asbestos trust as it . . . requests . . . or confidential information. |
| Part VII, Section B, Question 6 | Please indicate settlement amount [for each asbestos- or silica-related claim brought by the claimant]. | Claimant objects to Part VII, Subsection b, questions 5 and 6 regarding settlements with an asbestos trust as it . . . requests . . . or confidential information. |

*See, e.g.*, Questionnaire of E. C. at WR GRACE PIQ 56779-0023.

This objection must fail for two reasons.  First, the Cooney & Conway Claimants fail to make sufficiently specific allegations regarding these purported confidentiality agreements to allow the Court to determine whether any such privilege from discovery would apply. Second, even if the Cooney & Conway Claimants' factual allegations were sufficient, which

they are not, the mere existence of a confidentiality agreement does not prevent the disclosure of the terms of a settlement agreement in litigation.

> **A.     The Cooney & Conway Claimants Allegations Are Insufficient to Support a Claim of Confidentiality.**

The Cooney & Conway Claimants, as the parties seeking to resist the requested discovery, "must state with specificity the objection and how it relates to the particular request being opposed." *Harding v. Dana Transport Inc.* 914 F. Supp. 1084, 1102 (D.N.J. 1996) ("Broad-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request."). Instead, the Cooney & Conway Claimants make cursory, equivocal allegations of some unspecified confidentiality interest.

In their response to Part VII, Section A, Question 6, for example, which asks for the amount of settlements reached with defendants in asbestos- or silica-related litigation, the Cooney & Conway Claimants state, "for a ***majority*** of defendants, ***any*** settlement agreements are subject to a confidentiality agreement." *See, e.g.*, Questionnaire of E. C. at WR GRACE PIQ 56779-0023 (emphasis added). This conclusory assertion of confidentiality is devoid of several key details that would be necessary for the Court to assess the propriety of any confidentiality claim. First, by stating "for a majority of the defendants," the Cooney & Conway Claimants' objections render it impossible to determine the scope of the potential objection. Does the claimed confidentiality agreement apply to all settlements entered into between a particular Claimant, some, or none? Second, not all confidentiality agreements are equivalent in scope. There is no way to determine whether, under the "confidentiality agreement" generically cited by the Cooney & Conway Claimants, the disclosure of all information is purportedly prohibited or whether only the disclosure of certain information is

allegedly barred.  Moreover, confidentiality provisions frequently have express exceptions that permit the disclosure of the confidential material upon a court order.  Without specific statements as to  the terms of the purported confidentiality agreements, the Court cannot possibly ascertain the alleged propriety of the objection.  *See* Tr. of Hr'g at 282-83 (Jul. 19, 2005) ("[The Court]: I don't know what the scope of those agreements are.").

The Cooney & Conway Claimants' confidentiality objection to Part VII, Subsection B, Questions 5 and 6 is even more vague.  There, the Cooney & Conway Claimants simply object on the grounds that the question requests "confidential information" without providing any basis as to either the nature of the confidential information or the source of the purported bar on disclosure.  At a minimum, the Claimants must provide proof of the existence of a confidentiality agreement, the identity of the parties subject to the confidentiality agreements, and the scope of the confidentiality agreement, so it can be litigated.

> **B.    As A Matter Of Law, Grace Is Entitled To Information Regarding The Amounts Of The Cooney & Conway Claimants' Settlements And Trust Claims.**

Regardless of the sufficiency of their factual allegations, the Cooney & Conway Claimants' allegation that the mere existence of a confidentiality provision bars discovery of the amounts of various litigation and trust settlements is without legal merit.  The law does not bar the discovery of settlement agreements, or the information contained within such agreements.  Settlement-related information and agreements may be discovered if it is relevant to the "subject matter involved in the pending action … [or it] appears reasonably calculated to lead to the discovery of admissible evidence."  *Griffin v. Mashariki*, 1997 WL 756914 at *1 (S.D.N.Y. Dec. 8, 1997) (collecting cases).

Accordingly, courts have found that "litigants cannot shield a settlement agreement from discovery ***merely because it contains a confidentiality provision***."  *Cleveland Constr.,*

*Inc. v. Whitehouse Hotel, Ltd. P'ship*, 2004 WL 385052 at *1 (E.D. La. Feb. 25, 2004) (*quoting ABF Capital Mgmt. v. Askin Capital*, 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000)) (emphasis added).  This Court agreed with this very point when this issue arose in connection with its consideration of the Questionnaire during the July 2005 omnibus hearing. The PI Committee, acting on behalf of the interests of the Personal Injury Claimants (including the Cooney & Conway claimants) objected to questions regarding the amounts of settlements with various defendants on the grounds that such settlements contain confidentiality agreements.  Tr. of Hr'g at 282-83 (Jul. 19, 2005).  Over the PI Committee's objection, the Court ordered that the claimants "identify the defendants with whom [the Claimants] settled, the amount, and for what disease," and stated that a defendant "can come in and contest it if [a Claimant] violates their agreements." *Id.*

To the extent that the Court believes that such information needs protection from disclosure outside the Bankruptcy proceedings, the proper course is not to deny Grace access to the information, but to issue a protective order that restricts the use of the information obtained in response to these questions to the estimation proceedings.  As the Third Circuit made clear:  "The [C]ourt, in its discretion, is authorized by this subsection to fashion a set of limitations that ***allows as much relevant material to be discovered as possible***, while preventing unnecessary intrusions into the legitimate interests -- including … confidentiality interests -- that might be harmed by the release of the material sought." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) (emphasis added).

## CONCLUSION

For the foregoing reasons, Debtors respectfully request that the Court overrule the objections lodged by the Cooney & Conway Claimants in lieu of providing answers to the

questions posed in the Questionnaire and require that Claimants provide the required information on or before January 12, 2007.

Wilmington, Delaware
Dated:  November 9, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

KIRKLAND & ELLIS LLP
Barbara M. Harding
David Mendelson
Brian T. Stansbury
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:    (202) 879-5000
Facsimile:      (202) 879-5200

*and*

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

21