# Exhibit C



WR GRACE PIQ 56778-0001

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire



10315607039244

RE:

**REDACTED**

Cooney & Conway
120 North LaSalle Street, 30th Floor
Chicago IL 60602

REC'D JUL 1 2 2006

000303039244


WR GRACE PIQ 58779-0002

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

WR GRACE PIQ 56779-0003

[THIS PAGE INTENTIONALLY LEFT BLANK.]



WR GRACE PIQ 56779-0004

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO., et al.,** | ) | **Case No. 01-01139 (JKF)** |
| | ) | **Jointly Administered** |
| **Debtors.** | ) | |

# W. R. Grace
## Asbestos Personal Injury
## Questionnaire

YOU HAVE RECEIVED THIS QUESTIONNAIRE BECAUSE GRACE BELIEVES THAT YOU HAD SUED ONE OR MORE OF THE DEBTORS LISTED IN APPENDIX A ATTACHED TO THIS QUESTIONNAIRE BEFORE GRACE FILED FOR BANKRUPTCY ON APRIL 2, 2001 FOR AN ASBESTOS-RELATED PERSONAL INJURY OR WRONGFUL DEATH CLAIM, AND THAT CLAIM WAS NOT FULLY RESOLVED.

IF YOU HAVE SUCH A CLAIM, YOU MUST COMPLETE AND SUBMIT THIS QUESTIONNAIRE BY JANUARY 12, 2006 TO RUST CONSULTING, INC., THE CLAIMS PROCESSING AGENT, AT ONE OF THE FOLLOWING ADDRESSES:

IF SENT BY FEDERAL EXPRESS, UNITED PARCEL

IF SENT BY U.S. MAIL SERVICE, OR A SIMILAR HAND DELIVERY SERVICE

| | |
|---|---|
| RUST CONSULTING, INC. | RUST CONSULTING, INC. |
| CLAIMS PROCESSING AGENT | CLAIMS PROCESSING AGENT |
| RE: W.R. GRACE & CO. BANKRUPTCY | RE: W.R. GRACE & CO. BANKRUPTCY |
| P.O. BOX 1620 | 201 S. LYNDALE AVE. |
| FARIBAULT, MN  55021 | FARIBAULT, MN  55021 |

A QUESTIONNAIRE (AND ANY AMENDMENTS OR ADDITIONAL DOCUMENTS IN SUPPORT OF THE QUESTIONNAIRE) WILL NOT BE CONSIDERED UNLESS RECEIVED BY RUST CONSULTING, INC. BY JANUARY 12, 2006.

THIS QUESTIONNAIRE IS AN OFFICIAL DOCUMENT APPROVED BY THE COURT IN CONNECTION WITH ESTIMATING GRACE'S ASBESTOS-RELATED PERSONAL INJURY AND WRONGFUL DEATH CLAIMS AS A WHOLE. THE QUESTIONNAIRE IS BEING USED BY W. R. GRACE AS A MEANS TO SEEK INFORMATION ABOUT YOUR ASBESTOS CLAIM. BY TIMELY RETURNING THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE, GRACE, THE OFFICIAL COMMITTEES, AND THE FUTURE CLAIMANTS REPRESENTATIVE WILL SEEK TO PRIORITIZE THE PROCESSING OF YOUR CLAIM UNDER ANY TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION.

THE COURT HAS ORDERED THAT, AS PART OF THE DISCOVERY PROCESS, ALL HOLDERS OF PRE-PETITION ASBESTOS PERSONAL INJURY CLAIMS MUST COMPLETE AND RETURN THIS QUESTIONNAIRE. THUS, FAILURE TO TIMELY RETURN THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE MAY RESULT IN SANCTIONS AND/OR OTHER RELIEF AVAILABLE UNDER APPLICABLE FEDERAL RULES.

BECAUSE YOUR CLAIM WILL BE EVALUATED IN ACCORDANCE WITH THE TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION, COMPLETION OF THIS QUESTIONNAIRE DOES NOT MEAN THAT YOUR CLAIM WILL EITHER BE ALLOWED OR PAID. TO THE EXTENT YOU ATTACH TO THIS QUESTIONNAIRE DOCUMENTS ALSO NEEDED BY THE TRUST TO PROCESS YOUR CLAIM, SUCH DOCUMENTS WILL BE PROVIDED TO THE TRUST AND YOU WILL NOT NEED TO RESUBMIT THEM.

WR GRACE PIQ 66779-0005

## INSTRUCTIONS

### A. GENERAL

1. This Questionnaire refers to any lawsuit that you filed before April 2, 2001 for an "asbestos-related personal injury or wrongful death claim." This term is intended to cover any lawsuit alleging any claim for personal injuries or damages that relates to: (a) exposure to any products or materials containing asbestos that were manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present affiliates, or any of the predecessors of any of the Debtors or any of their respective past or present affiliates), or (b) exposure to vermiculite mined, milled or processed by the Debtors (or any of their respective past or present affiliates, any of the predecessors of any of the Debtors or any of their predecessors' respective past or present affiliates). It includes claims in the nature of sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law or equity, or admiralty for, relating to, or arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal injuries or other damages caused, or allegedly caused, directly or indirectly, and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors. It includes all such claims, debts, obligations or liabilities for compensatory damages such as loss of consortium, personal or bodily injury (whether physical, emotional or otherwise), wrongful death, survivorship, proximate, consequential, general, special, and punitive damages.

2. Your Questionnaire will be deemed filed only when it has been received by Rust Consulting Inc., the Claims Processing Agent, via U.S. Mail, Federal Express, United Parcel Service or a similar hand delivery service. A Questionnaire that is submitted by facsimile, telecopy or other electronic transmission will not be accepted and will not be deemed filed.

    Do not send any Questionnaire to the Debtors, counsel for the Debtors, the Future Claimants Representative, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Asbestos Property Damage Claimants, the Official Committee of Equity Security Holders, or such Committees' counsel. Questionnaires that are filed with or sent to anyone other than Rust Consulting, Inc. will be deemed not to have been submitted, and such Questionnaires will not be considered.

3. Your completed Questionnaire must (i) be written in English, and (ii) attach relevant supporting materials as instructed further below.

4. All holders of claims described on page i (and as described in further detail in Instruction A (1) above) are required to file this Questionnaire by Jan. 12, 2006. Your Questionnaire will be used in connection with the estimation hearing to be conducted by the Court pursuant to the Estimation Procedures Order (a copy of which is attached as Appendix B).

5. Any subsequent amendment to the Questionnaire will not be considered for any purpose unless received by Jan. 12, 2006.

### B. PART I – Identity of Injured Person and Legal Counsel

Respond to all applicable questions. If you are represented by a lawyer, then in Part I (b), please provide your lawyer's name and the name, telephone number and address of his/her firm. If you are represented by a lawyer, he/she must assist in the completion of this Questionnaire. Also, if you would prefer that the Debtors send any additional materials only to your lawyer, instead of sending such materials to you, then check the box indicating this in Part I (b).

All references to "you" or the like in Parts I through X shall mean the injured person. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete this Questionnaire.

### C. PART II – Asbestos-Related Condition(s)

Please indicate all asbestos-related medical conditions for which you have been diagnosed. To complete questions related to injuries, medical diagnoses, and/or conditions, please use the following categories of customarily diagnosed conditions:

| |
|---|
| • Mesothelioma |
| • Asbestos-Related Lung Cancer |
| • Other Cancer (colon, laryngeal, esophageal, pharyngeal, or stomach) |
| • Clinically Severe Asbestosis |
| • Asbestosis |
| • Other Asbestos Disease |

If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

**Supporting Documents for Diagnosis:** This Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis.

**X-rays and B-reads:** Please attach all x-ray readings and reports. You may, but are not required to, attach chest x-rays. The court, however, has ruled that Grace may seek access to chest x-rays upon request.

**Pulmonary Function Tests:** Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based.

ii

WR GRACE PIQ 68779-0006

| D. | **PART III – Direct Exposure to Grace Asbestos-Containing Products** |
|---|---|

In Part III, please provide the requested information for the job and site at which you were exposed to Grace asbestos-containing products. Indicate the dates of exposure to each Grace asbestos-containing product. If your exposure was a result of your employment, use the list of occupation and industry codes below to indicate your occupation and the industry in which you worked at each site. If you allege exposure to Grace asbestos-containing products at multiple sites, the Court has ordered that you must complete a separate Part III for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

Attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease.

### Occupation Codes

| | |
|---|---|
| 01. Air conditioning and heating installer/maintenance | 31. Iron worker |
| 02. Asbestos miner | 32. Joiner |
| 03. Asbestos plant worker/asbestos manufacturing worker | 33. Laborer |
| 04. Asbestos removal/abatement | 34. Longshoreman |
| 05. Asbestos sprayer/spray gun mechanic | 35. Machinist/machine operator |
| 06. Assembly line/factory/plant worker | 36. Millwright/mill worker |
| 07. Auto mechanic/bodywork/brake repairman | 37. Mixer/bagger |
| 08. Boilermaker | 38. Non-asbestos miner |
| 09. Boiler repairman | 39. Non-occupational/residential |
| 10. Boiler worker/cleaner/inspector/engineer/installer | 40. Painter |
| 11. Building maintenance/building superintendent | 41. Pipefitter |
| 12. Brake manufacturer/installer | 42. Plasterer |
| 13. Brick mason/layer/hod carrier | 43. Plumber - install/repair |
| 14. Burner operator | 44. Power plant operator |
| 15. Carpenter/woodworker/cabinetmaker | 45. Professional (e.g., accountant, architect, physician) |
| 16. Chipper | 46. Railroad worker/carman/brakeman/machinist/conductor |
| 17. Clerical/office worker | 47. Refinery worker |
| 18. Construction - general | 48. Remover/installer of gaskets |
| 19. Custodian/janitor in office/residential building | 49. Rigger/stevedore/seaman |
| 20. Custodian/janitor in plant/manufacturing facility | 50. Rubber/tire worker |
| 21. Electrician/inspector/worker | 51. Sandblaster |
| 22. Engineer | 52. Sheet metal worker/sheet metal mechanic |
| 23. Firefighter | 53. Shipfitter/shipwright/ship builder |
| 24. Fireman | 54. Shipyard worker (md. repair, maintenance) |
| 25. Flooring installer/tile installer/tile mechanic | 55. Steamfitter |
| 26. Foundry worker | 56. Steelworker |
| 27. Furnace worker/repairman/installer | 57. Warehouse worker |
| 28. Glass worker | 58. Welder/blacksmith |
| 29. Heavy equipment operator (includes truck, forklift, & crane) | 59. Other |
| 30. Insulator | |



WR GRACE PIQ 56778-0007

| Industry Codes | |
|---|---|
| 001.  Asbestos abatement/removal | 109.  Petrochemical |
| 002.  Aerospace/aviation | 110.  Railroad |
| 100.  Asbestos mining | 111.  Shipyard-construction/repair |
| 101.  Automotive | 112.  Textile |
| 102.  Chemical | 113.  Tire/rubber |
| 103.  Construction trades | 114.  U.S. Navy |
| 104.  Iron/steel | 115.  Utilities |
| 105.  Longshore | 116.  Grace asbestos manufacture or milling |
| 106.  Maritime | 117.  Non-Grace asbestos manufacture or milling |
| 107.  Military (other than U.S. Navy) | 118.  Other |
| 108.  Non-asbestos products manufacturing | |

WR GRACE PIQ 66778-0008

**E.     PART IV -- Indirect Exposure to Grace Asbestos-Containing Products**

In Part IV, please provide the information requested for any injury alleged to have been caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person.  If you allege exposure through contact/proximity with multiple injured persons, please complete a separate Part IV for each injured person.  For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.

**F.     PART V -- Exposure to Non-Grace Asbestos-Containing Products**

In Part V, please provide the requested information for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products.  If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate Part V for each party.  If exposure was in connection with your employment, use the list of occupation and industry codes in Part III to indicate your occupation and the industry in which you worked.  For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

**G.     PART VI -- Employment History**

In Part VI, please provide the information requested for each industrial job you have held, other than jobs already listed in Parts III or V.  Use the list of occupation and industry codes in the instructions to Part III to indicate your occupation and the industry in which you worked for each job.  Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**H.     PART VII -- Litigation and Claims Regarding Asbestos and/or Silica**

In Part VII, please describe any lawsuits and/or claims that were filed by you or on your behalf regarding asbestos or silica.

**I.     PART VIII -- Claims by Dependents or Related Persons**

Part VIII is to be completed only by dependents or related persons (such as spouse or child) of an injured person who sued the Debtors before April 2, 2001 for an asbestos-related personal injury or wrongful death claim against Grace not involving physical injury to him-/herself on account of his/her own exposure.  One example of such a claim would be a claim for loss of consortium.  If you are asserting such a claim, complete the entire Questionnaire, providing all information and documentation regarding the injured person.

**J.     PART IX -- Supporting Documentation**

In Part IX, please mark the boxes next to each type of document that you are submitting with this Questionnaire.  As indicated in the instructions to Parts II and III, this Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that (a) support or conflict with your diagnosis and/or (b) establish exposure to Grace asbestos-containing products as having a substantial causal role in the development of the medical diagnoses, and/or conditions claimed.  Original documents provided to Grace will be returned within a reasonable time after its professionals and experts have reviewed the documents.

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such cost.

**K.  PART X -- Attestation that Information is True, Accurate and Complete**

By signing Part X, you, the injured person, are attesting and swearing, under penalty of perjury, that, to the best of your knowledge, all of the information in this Questionnaire is true, accurate and complete. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete and sign Part X on behalf of the injured person.

The legal representative of the injured person must complete and sign Part X where indicated.

WR GRACE PIQ 56779-0009

**PART I  IDENTITY OF INJURED PERSON AND LEGAL COUNSEL**

■ **GENERAL INFORMATION**     **REDACTED**

1.   **Name of Claimant:** _____     2.   **Gender:**   X   Male     Female
     First  MI  Last

3.   **Race (for purposes of evaluating Pulmonary Function Test results):** See Objection  ☐ White/Caucasian

                    **REDACTED**                                                    ☐ African American

                                                                                    ☐ Other

4.   **Last Four Digits of Social Security Number:**          5.   **Birth Date:**

6.   **Mailing Address:**
     Address  City  State/Province  Zip/Postal Code

7.   **Daytime Telephone Number:** ........................................................................

■ **LAWYER'S NAME AND FIRM**

1.   **Name of Lawyer:** <u>Kathy Byrne</u>

2.   **Name of Law Firm With Which Lawyer is Affiliated:** <u>Cooney and Conway</u>

3.   **Mailing Address of Firm:** <u>120 N. LaSalle, Chicago, Illinois 60602</u>
                    Address          City          State/Province     Zip/Postal Code

4.   **Law Firm's Telephone Number or Lawyer's Direct Line:** (312) 236- 6166

     ☒ Check this box if you would like the Debtors to send subsequent material relating to your claim
       to your lawyer, in lieu of sending such materials to you.

■ **CAUSE OF DEATH (IF APPLICABLE)**

1.   Is the injured person living or deceased?   ........................................   Living   X   Deceased

     If deceased, date of death:   ........................................   <u>04/21/98</u>

2.   If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and
     complete the following:

     Primary Cause of Death (as stated in the Death Certificate):   Metastatic Carcinoma of Esophagus

     Contributing Cause of Death (as stated in the Death Certificate):

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the
instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received
diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II
for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the
initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1.   Please check the box next to the condition being alleged:
     ☐ Asbestos-Related Lung Cancer          ☐ Mesothelioma
     ☐ Asbestosis                            ☒ Other Cancer (cancer not related to lung cancer or mesothelioma)
     ☐ Other Asbestos Disease                ☐ Clinically Severe Asbestosis

     a.   **Mesothelioma:** If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the
          following (check all that apply):
          ☐ diagnosis from a pathologist certified by the American Board of Pathology
          ☐ diagnosis from a second pathologist certified by the American Board of Pathology
          ☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial
            causal role in the development of the condition
          ☐ other (please specify):

1



**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE PIQ 56779-0010

b. **Asbestos-Related Lung Cancer:** If alleging Asbestos-Related Lung Cancer, were you diagnosed with primary lung cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐ other (please specify):

c. **Other Cancer:**

(i) If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐ colon    ☐ pharyngeal    ☒ esophageal    ☐ laryngeal    ☐ stomach cancer

☐ other, please specify:

(ii) Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☒ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☒ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☐ other (please specify):

2

WR GRACE PIQ 56779-0011

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

d. **Clinically Severe Asbestosis:** If alleging Clinically Severe Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating total lung capacity less than 65% predicted

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

e. **Asbestosis:** If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

3



WR GRACE PIQ 55779-0012

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

f.  **Other Asbestos Disease:**  If alleging any asbestos-related injuries, medical diagnoses, and/or conditions other than those above, was your diagnosis based on the following (check all that apply):

☐  diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐  diagnosis determined by pathology

☐  a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐  a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐  a chest x-ray reading  other than those described above

☐  a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐  a pulmonary function test other than that discussed above

☐  a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☐  a CT Scan or similar testing

☐  a diagnosis other than those above

☐  other (please specify):_____

[REMAINDER OF PAGE INTENTIONALLY BLANK]

4

PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

WR GRACE PIQ 56779-0013

**2.    Information Regarding Diagnosis**

Date of Diagnosis:                                              01/30/1996

Diagnosing Doctor's Name:          Charles Winans, M.D.

Diagnosing Doctor's Specialty:          Gastroenterology

Diagnosing Doctor's Mailing Address:     University of Chicago Hospital, 5841 S. Maryland Ave.,
                                         Chicago, IL 60637
                                         Address, City, State Zip

Diagnosing Doctor's Daytime Telephone Number:          (312)702-6137

With respect to your relationship to the diagnosing doctor, check all applicable boxes:

Was the diagnosing doctor your personal physician? _____ ☒ Yes ☐ No

Was the diagnosing doctor paid for the diagnostic services that he/she performed? _____ ☒ Yes ☐ No

*If yes, please indicate who paid for the services performed*:   Self/Insurance

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor? .......... ☐ Yes ☒ No

Was the diagnosing doctor referred to you by counsel? ................................................................. ☐ Yes ☒ No

Are you aware of any relationship between the diagnosing doctor and your legal counsel? ...................... ☐ Yes ☒ No

*If yes, please explain:* _____

_____

Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the

time of the diagnosis? _____ ☐ Yes ☒ No

Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of

the diagnosis? _____ ☒ Yes ☐ No

Was the diagnosing doctor provided with your complete occupational, medical and smoking history

prior to diagnosis? _____ ☒ Yes ☐ No

Did the diagnosing doctor perform a physical examination? ————————————— ☒ Yes ☐ No

Do you currently use tobacco products? ————————————————————— ☐ Yes ☒ No

Have you ever used tobacco products? ☐ Yes ☒ No

*If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco
products and the dates and frequency with which such products were used:*

| | | | |
|---|---|---|---|
| Cigarettes | Packs Per Day (half pack = .5) | Start Year | End Year |
| Cigars | Cigars Per Day | Start Year | End Year |
| If Other Tobacco Products, please specify (e.g., chewing tobacco): | | | |
| | Amount Per Day | Start Year | End Year |

Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")? ——————— ☐ Yes ☒ No

*If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:*

**3.**   Information Regarding Chest X-Ray

Please check the box next to the applicable location where your chest x-ray was taken (check one):

WR GRACE PIQ 59779-0014

☐ Mobile laboratory ☐ Job site ☐ Union Hall ☒ Doctor office ☒ Hospital ☐ Other: _____

Address where chest x-ray taken:    University of Chicago Hospital, 5841 S. Maryland Ave., Chicago, IL 60637
Address, City, State/Province Zip/Postal Code

5

**WR GRACE PIQ 66778-0015**

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

4. **Information Regarding Chest X-Ray Reading**
   **Date of Reading:** 01/14/1998                                    **ILO score:** 1/0

   **Name of Reader:** Alvin Schonfeld, D.O.

   **Reader's Daytime Telephone Number:** ............................................................... (773)472-2810

   **Reader's Mailing Address:** 438 W. St. James Place, Chicago, IL 60614
                                                  Address, City, State Zip
   **With respect to your relationship to the reader, check all applicable boxes:**

   Was the reader paid for the services that he/she performed ................................................ ☒ Yes ☐ No

   *If yes, please indicate who paid for the services performed:* **Self/insurance**

   Did you retain counsel in order to receive any of the services performed by the reader? .......................... ☐ Yes ☒ No

   Was the reader referred to you by counsel? ......................................................... ☐ Yes ☒ No

   Are you aware of any relationship between the reader and your legal counsel? .......................... ☐ Yes ☒ No
   *If yes, please explain:* _____

   **Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?**
   _____ ☒ Yes ☐ No

   *If the reader is not a certified B-reader, please describe the reader's occupation, specialty, and the method through which the reading was made:* _____

5. **Information Regarding Pulmonary Function Test:** _____ **Date of Test:** _____

   **List your height in feet and inches when test given:** _____ _____ ft  inches
   **List your weight in pounds when test given:** _____ _____ lbs

   **Total Lung Capacity (TLC):** _____ _____ % of predicted

   **Forced Vital Capacity (FVC):** _____ _____ % of predicted

   **FEV1/FVC Ratio:** _____ _____ % of predicted

   **Name of Doctor Performing Test (If applicable):**

   **Doctor's Specialty:**

   **Name of Clinician Performing Test (if applicable):**

   **Testing Doctor or Clinician's Mailing Address:**
                                          Address, City, State Zip

   **Testing Doctor or Clinician's Daytime Telephone Number:**

   **Name of Doctor Interpreting Test:**

   **Doctor's Specialty: :**

   **Interpreting Doctor's Mailing Address:**
                                          Address, City, State Zip
   **Interpreting Doctor's Daytime Telephone Number:**



**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE PIQ 58779-0016

**With respect to your relationship to the doctor or clinician who performed the pulmonary function test check all applicable boxes:**

If the test was performed by a doctor, was the doctor your personal physician? ........................................ ☐ Yes ☐ No

Was the testing doctor and/or clinician paid for the services that he/she performed? ............................... ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician? . ☐ Yes ☐ No

Was the testing doctor or clinician referred to you by counsel? ................................................. ☐ Yes ☐ No

Are you aware of any relationship between either the doctor or clinician and your legal counsel? ............ ☐ Yes ☐ No

*If yes, please explain:* _____

**Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test?** ................................................................. ☐ Yes ☐ No

**With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:**

Was the doctor your personal physician? ........................................................... ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? ......................................... ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? ........................... ☐ Yes ☐ No

Was the doctor referred to you by counsel? ....................................................... ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? ......................... ☐ Yes ☐ No

*If yes, please explain* _____

**Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed?** ........................... ☐ Yes ☐ No

6. **Information Regarding Pathology Reports:**

Date of Pathology Report: ................................................................... 1/30/1996

Findings:   esophagus – invasive moderately differentiated squamous cell carcinoma

Name of Doctor Issuing Report:   M. Lisa Yaremko, M.D._____

Doctor's Specialty:  Pathology_____

Doctor's Mailing Address: University of Chicago Hospitals, 5841 S. Maryland Ave._____

                                   Address

Chicago _____ IL_____ 60637
City                                      State/Province             Zip/Postal Code

Doctor's Daytime Telephone Number: .................................................... (312) 702-6327

With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:

Was the doctor your personal physician? ......................................... ☒ Yes ☐ No

Was the doctor paid for the services that he/she performed? ........................... ☒ Yes ☐ No

*If yes, please indicate who paid for the services performed*:   Self/Insurance_____

Did you retain counsel in order to receive any of the services performed by the doctor? ........................ ☐ Yes ☒ No

Was the doctor referred to you by counsel? ...................................... ☐ Yes ☒ No

Are you aware of any relationship between the doctor and your legal counsel? ...................... ☐ Yes ☒ No

*If yes, please explain:* _____

WR GRACE  PIQ  58779-0017

Was the doctor certified as a pathologist by the American Board of Pathology at the time of the d⋮

............................................................................................................................................ ☒ Yes ☐ No

7

WR GRACE PIQ 56779-0018

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

7. With respect to the condition alleged, have you received medical treatment from a doctor for the condition?

...................................................................................................................................................... ☒ Yes ☐ No

*If yes, please complete the following:*

Name of Treating Doctor: Philip Hoffman, M.D.

Treating Doctor's Specialty: Oncologist

Treating Doctor's Mailing Address: University of Chicago Hospital, 5841 S. Maryland Ave., Chicago, IL 60637

Address, City, State Zip

Treating Doctor's Daytime Telephone number: (312)702-6327

Was the doctor paid for the services that he/she performed? ................................................................. ☒ Yes ☐ No

*If yes, please indicate who paid for the services performed:* .... Self/Insurance_____

Did you retain counsel in order to receive any of the services performed by the doctor? ................... ☐ Yes ☒ No

[REMAINDER OF PAGE INTENTIONALLY BLANK]

WR GRACE PIQ 55779-0019

## PART III: DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Grace asbestos-containing products

(b) A worker who personally removed or cut Grace asbestos-containing products

(c) A worker who personally installed Grace asbestos-containing products

(d) A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(e) A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f) If other, please specify.

Site of Exposure:

Site Name: **See answers to Consolidated Interrogatories**

Location:

Site Type: ☐ Residence  ☐ Business     Site Owner:

Employer During Exposure: **See Social Security Print-out** Unions of which you were a member during your employment:

| Grace Asbestos-Containing Product(s) | Basis for Identification of Each Grace Product | Dates and Terms of Exposure (hours/day/mnth/year) | Occupation Code If Code 99, specify | Industry Code If Code 99, specify | Nature of Exposure Was exposure due to your being in or around a Grace product was being installed, mixed, removed, or cut? If so, please indicate which product(s) and circumstances. |
|---|---|---|---|---|---|
| Job 1 Description: | | | | | |
| Job 2 Description: | | | | | |
| Job 3 Description: | | | | | |
| Job 4 Description: | | | | | |
| Job 5 Description: | | | | | |
| Job 6 Description: | | | | | |

9

**PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS**

WR GRACE PIQ 58779-0020

1.  Are you asserting an injury caused by exposure to Grace asbestos-containing products through contact/proximity

    with another injured person? ............................................................................... ☐ Yes ☒ No
    *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to Grace asbestos-containing products. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.*

2.  Please indicate the following information regarding the other injured person:
    Name of Other Injured Person: _____  Gender: ☐ Male ☐ Female
    Last Four Digits of Social Security Number: __ __ __ __         Birth Date: __ __ / __ __ / __ __

3.  What is your Relationship to Other Injured Person: ................................................. ☐ Spouse ☐ Child ☐ Other

4.  Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:
    _____

5.  Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products:
    From: __ __ / __ __ / __ __ __ __    To: __ __ / __ __ / __ __ __ __

6.  Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:
    _____

7.  Has the Other Injured Person filed a lawsuit related to his/her exposure? ........................................... ☐ Yes ☐ No
    *If yes, please provide caption, case number, file date, and court name for the lawsuit:*
    Caption: _____
    Case Number: _____    File Date: __ __ / __ __ / __ __ __ __
    Court Name: _____

8.  Nature of Your Own Exposure to Grace Asbestos-Containing Product:
    _____

9.  Dates of Your Own Exposure to Grace Asbestos-Containing Product:
    From: __ __ / __ __ / __ __ __ __    To: __ __ / __ __ / __ __ __ __

10. Your Basis for Identification of Asbestos-Containing Product as Grace Product:
    _____

[REMAINDER OF PAGE INTENTIONALLY BLANK]

10

WR GRACE PIQ 56779-0021

## PART V: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products
(b) A worker who personally removed or cut Non-Grace asbestos-containing products
(c) A worker who personally installed Non-Grace asbestos-containing products

(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(f) If other, please specify.

| | Product(s) | Dates and Frequency of Exposure (hours/day, days/year) | Occupation Code (If Code 199, specify) | Industry Code (If Code 118, specify) | Was exposure due to working in or around areas where product was being installed, mixed, removed, or cut? If yes please indicate below whether (d) or (e) above | Nature of Exposure |
|---|---|---|---|---|---|---|
| **Site of Exposure 1**<br>Site Name: ___<br>Address: ___<br>City and State: ___<br>Site Owner: ___ | Job 1 Description: See Objection<br>Job 2 Description: See Objection<br>Job 3 Description: See Objection | | | | | |
| **Site of Exposure 2**<br>Site Name: ___<br>Address: ___<br>City and State: ___<br>Site Owner: ___ | Job 1 Description: See Objection<br>Job 2 Description: See Objection<br>Job 3 Description: See Objection | | | | | |
| **Site of Exposure 3**<br>Site Name: ___<br>Address: ___<br>City and State: ___<br>Site Owner: ___ | Job 1 Description: See Objection<br>Job 2 Description: See Objection<br>Job 3 Description: See Objection | | | | | |

11

WR GRACE PIQ 68779-0022

## PART VI: EMPLOYMENT HISTORY

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial work experience up to and including your current employment. For each job, include your employer, location of employment, and dates of employment. Only include jobs at which you worked for at least one month. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

Occupation Code: _____ If Code 59, specify: __**See answers to Part III and Objection**____

Industry Code: _____ If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __    End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
           Address

City                          State/Province                  Zip/Postal Code

Occupation Code: _____ If Code 59, specify: _____

Industry Code: _____ If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __    End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
           Address

City                          State/Province                  Zip/Postal Code

Occupation Code: _____ If Code 59, specify: _____

Industry Code: _____ If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __    End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
           Address

City                          State/Province                  Zip/Postal Code

Occupation Code: _____ If Code 59, specify: _____

Industry Code: _____ If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __    End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
           Address

City                          State/Province                  Zip/Postal Code



WR GRACE PIQ 66779-0023

**PART VII: LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA**

**LITIGATION**

1. Have you ever been a plaintiff in a lawsuit regarding asbestos or silica? ☒ Yes ☐ No
   *If yes, please complete the rest of this Part VII(a) for each lawsuit.  For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2. Please provide the caption. case number. file date. and court name for the lawsuit you filed:
   Caption:                                                                            Deceased
   v. Rapid American Corporation, Individually and as Successor-in-Interest to the Philip Carey Manufacturing Corporation, et al.
   **Case Number:** 98 L 00962                              File Date: 01/26/1998
   Court Name: Circuit Court of Cook County, Illinois

3. Was Grace a defendant in the lawsuit? ....................................................................... ☒ Yes ☐ No

4. Was the lawsuit dismissed against any defendant?                **See Objection** ☐ Yes ☐ No
   *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

   _____
   _____

5. Has a judgment or verdict been entered?                          **See Objection** ☐ Yes ☐ No
   *If yes, please indicate verdict amount for each defendant(s):* _____

6. Was a settlement agreement reached in this lawsuit?              **See Objection** ☐ Yes ☐ No
   *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*
   a. Settlement amount for each defendant: _____
   b. Applicable defendants: _____
   c. Disease or condition alleged: _____
   d. Disease or condition settled (if different than disease or condition alleged): _____

7. Were you deposed in this lawsuit? .................................................................... ☐ Yes ☒ No
   *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.*

**CLAIMS**

1. Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? .................................................................... ☒ Yes ☐ No
   *If yes, please complete the rest of this Part VII(b).  If no, please skip to Part VIII.*

2. Date the claim was submitted: 08/31/98

3. Person or entity against whom the claim was submitted: Various Bankruptcy Defendants

4. Description of claim: **Bankruptcy**

5. Was claim settled?                                               **See Objection** ☐ Yes ☐ No

6. Please indicate settlement amount:                               $  See Objection

7. Was the claim dismissed or otherwise disallowed or not honored?  **See Objection** ☐ Yes ☐ No
   *If yes, provide the basis for dismissal of the claim:* _____

REDACTED

WR GRACE PIQ 56779-0024

**PART VIII: CLAIMS BY DEPENDENTS OR RELATED PERSONS**

## REDACTED

**Name of Dependent or Related Person:** _____   **Gender:** ☐ Male  ☒ Female

**Last Four Digits of Social Security Number:** _____   **Birth Date:** _____

**Financially Dependent:** ........................................................................................................ ☒ Yes  ◉ No

**Relationship to Injured Party:** ☒ Spouse  ◉ Child  ◉ Other If other, please specify _____

**Mailing Address:** 8250 S. Houston Ave. .................................................................................
Address
Chicago, IL 60617
City  State/Province  Zip/Postal Code

**Daytime Telephone number:** ............................................................................... (773) 374-1874

**PART IX: SUPPORTING DOCUMENTATION**

Please use the checklists below to indicate which documents you are submitting with this form.

**Copies:**

☒ Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☒ Pathology reports
☐ Supporting documentation of exposure to Grace asbestos-containing products
☐ Supporting documentation of other asbestos exposure

☐ X-rays
☒ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Depositions from lawsuits indicated in Part VII of this Questionnaire
☒ Death Certification

**Originals:**

☐ Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☐ Pathology reports
☐ Supporting documentation of exposure to Grace asbestos-containing products

☐ Supporting documentation of other asbestos exposure
☐ X-rays
☐ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Death Certification

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation. Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:

_____

WR GRACE PIQ 66779-0025

**PART X. ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE**

The information provided in this Questionnaire must be accurate and truthful. This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim. The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both. 18 U.S.C. §§ 152 & 3571.

**TO BE COMPLETED BY THE INJURED PERSON.**

I swear, <u>under penalty of perjury</u>, that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate and complete.

Signature:      **REDACTED**          Date: 12 / 12 / 2005

Please Print Name:

**TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.**

I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete.

Signature: _Kathy Byrne_         Date: 2 / 27 / 2006

Please Print Name: _Kathy Byrne_

WR GRACE PIQ 56779-0026

SA-1826           ITEMIZED STATEMENT OF EARNINGS          JOB:
VERSION 1984.002 * * *      FOR SSN                    * *

### REDACTED

FROM:   SOCIAL SECURITY ADMINISTRATION
        OFFICE OF CENTRAL RECORDS OPERATIONS
        BALTIMORE, MARYLAND  21235-0000

COONEY AND CONWAY                    NUMBER HOLDER NAME:

120 N LASALLE                                    REDACTED

30TH FLOOR
CHICAGO                 IL  60602

PERIOD REQUESTED    JANUARY 1950  THRU  DECEMBER 1980

YEAR  JAN - MARCH  APRIL - JUNE  JULY - SEPT   OCT - DEC      TOTAL

EMPLOYER NUMBER:  36-1262880
INLAND STEEL COMPANY
30 W MONROE ST
CHICAGO     IL 606032401

| YEAR | JAN - MARCH | APRIL - JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|------|-------------|--------------|-------------|-----------|---|-------|
| 1950 |             | 186.47       | 344.54      |           | $ | 531.01 |
| 1952 | 481.16      | 360.26       | 573.22      | 836.74    | $ | 2,251.38 |
| 1953 | 800.29      | 833.86       | 876.25      | 709.60    | $ | 3,220.00 |
| 1954 | 895.58      | 706.50       | 805.13      | 801.79    | $ | 3,209.00 |
| 1955 | 991.94      | 881.75       | 1,015.27    | 755.80    | $ | 3,644.76 |
| 1956 | 893.64      | 1,007.88     | 488.84      | 1,092.80  | $ | 3,483.16 |
| 1957 | 957.37      | 1,136.15     | 1,218.12    | 888.36    | $ | 4,200.00 |
| 1958 | 931.20      | 567.45       | 1,213.98    | 1,093.84  | $ | 3,806.47 |
| 1959 | 1,323.72    | 1,213.13     | 427.44      | 494.54    | $ | 3,458.83 |
| 1960 | 1,394.48    | 1,224.76     | 345.03      |           | $ | 2,964.27 |
| 1961 | 1,175.67    | 1,127.91     | 1,264.11    | 1,081.04  | $ | 4,648.73 |
| 1962 | 1,471.42    | 1,225.26     | 1,243.35    | 859.97    | $ | 4,800.00 |
| 1963 | 1,154.77    | 1,230.10     | 1,589.64    | 825.49    | $ | 4,800.00 |
| 1964 | 1,478.71    | 1,791.99     | 1,516.54    | 12.76     | $ | 4,800.00 |
| 1965 | 1,555.14    | 1,805.68     | 1,439.18    |           | $ | 4,800.00 |
| 1966 | 1,522.70    | 1,846.64     | 1,600.50    | 1,630.16  | $ | 6,600.00 |
| 1967 | 1,483.97    | 1,854.76     | 1,560.22    | 1,701.05  | $ | 6,600.00 |
| 1968 | 1,419.44    | 2,126.29     | 1,724.23    | 1,576.54  | $ | 6,846.50 |
| 1969 | 1,950.16    | 1,788.92     | 2,194.29    | 1,809.46  | $ | 7,742.83 |
| 1970 | 2,008.65    | 1,862.64     | 2,144.96    | 1,783.75  | $ | 7,800.00 |
| 1971 | 2,147.81    | 2,035.85     | 1,868.43    | 1,747.91  | $ | 7,800.00 |



SA-1826          ITEMIZED STATEMENT OF EARNINGS        JOB:
VERSION 1984,002 * * *        FOR SSN

**REDACTED**

| YEAR | JAN - MARCH | APRIL - JUNE | JULY - SEPT. | OCT - DEC | | TOTAL |
|------|-------------|--------------|--------------|-----------|---|-------|
| 1972 | 2,564.46 | 2,150.73 | 2,565.71 | 1,719.10 | $ | 9,000.00 |
| 1973 | 2,532.14 | 2,434.03 | 3,003.89 | 2,829.94 | $ | 10,800.00 |
| 1974 | 2,675.35 | 2,933.21 | 3,321.71 | 4,179.37 | $ | 13,109.64 |
| 1975 | 3,645.03 | 3,939.32 | 3,474.97 | 3,040.68 | $ | 14,100.00 |
| 1976 | 3,845.29 | 4,534.83 | 3,802.13 | 3,117.75 | $ | 15,300.00 |
| 1977 | 4,366.42 | 4,844.29 | 4,444.14 | 2,845.15 | $ | 16,500.00 |
| 1978 | - | - | - | - | $ | 17,700.00 |
| 1979 | - | - | - | - | $ | 22,262.76 |
| 1980 | - | - | - | - | $ | 25,900.00 |

EMPLOYER NUMBER:  25-0393417
AMERICAN BRIDGE DIVISION
UNITED STATES STEEL CO
525 WILLIA    PA 000000000

| 1952 | 9.52 | | | | $ | 9.52 |

EMPLOYER NUMBER:  36-1688970
W C RITCHIE AND COMPANY
8801 S BALTIMORE AVENUE
CHICAGO     IL 606170000

| 1952 | 9.02 | | | | $ | 9.02 |

EMPLOYER NUMBER:  36-2188398
GATEWAY INDUSTRIES INC
17512 CARRIAGEWAY DR
HAZEL CREST    IL 604290000

| 1959 | | | | 241.74 | $ | 241.74 |

THERE ARE NO OTHER EARNINGS RECORDED UNDER THIS SOCIAL SECURITY
NUMBER FOR THE PERIOD(S) REQUESTED.

EARNINGS FOR THE YEARS AFTER 1996 MAY NOT BE SHOWN, OR ONLY
PARTIALLY SHOWN, BECAUSE THEY MAY NOT YET BE ON OUR RECORDS.

                    PAGE 002 END

WR GRACE PIQ 58779-0028

MDM/dls                                             Firm I.D. No. 90200

STATE OF ILLINOIS      )
                       )     SS
COUNTY OF C O O K      )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

REDACTED                    )
                            )
                            )
        Plaintiff,          )
                            )
    vs.                     )     NO: 98 L 00962
                            )
                            )
AC&S, INC., et al.,         )     IN RE: ASBESTOS LITIGATION
                            )
        Defendants.         )

FILED-7
98 DEC 18 AM 10:52
CIRCUIT COURT OF COOK
COUNTY ILLINOIS
LAW DIVISION
AURELIA PUCINSKI CLERK

PLAINTIFF'S ANSWERS TO DEFENDANTS'
CONSOLIDATED INTERROGATORIES

NOW COMES the Plaintiff,                  , Special Administrator of the

Estate of                          by her attorneys, COONEY AND CONWAY, and in

answer to Interrogatories propounded by the Defendants, states as follows:

    1.    State your full name, your present address, date and place of birth, Social Security
number and military serial number, if any.

ANSWER:

            REDACTED

        DOD: April 21, 1998

        MSN:

    2.    State the name and date of marriage of each spouse or former spouse and list the
names, current addresses, ages and occupations of all children whether adopted or natural, and



WR GRACE PIQ 56779-0029

the names, current address and occupations of all persons dependent upon you for support within the last five years.

**REDACTED**

ANSWER:
                    Date of Marriage:      June 28, 1953

                    Children

                                          , son

**REDACTED**                son


                              ,daughter


                    **REDACTED**


3.      State the specific nature of the personal injuries and/or disease which you allege to have sustained as a result of the exposure complained of.

ANSWER:      Esophageal Cancer.


4.      State the date on which you first suspected that the injuries and/or disease described in Interrogatory No. 3 was in any way related to being exposed to asbestos and state the reasons for your suspicions.

ANSWER:      It was not discovered that Plaintiff's decedent's injuries were related to his asbestos exposure until he was told of his Esophageal Cancer on January 30, 1996.


5.      State the date on which the injuries and/or disease described in Interrogatory No. 3 were first diagnosed and communicated to you and state further the name and address of the physician, specialist, clinic, hospital, sanitarium or similar institution which first diagnosed said injuries and/or disease.  State the manner in which the diagnosis was communicated to you,

2



WR GRACE PIQ 66778-0030

whether it was written or oral, and if written please attach a copy of that communication to your answers to these interrogatories.

ANSWER:    Plaintiff's decedent was told of his Esophageal Cancer on January 30, 1996 by M. Lisa Yaremko, M.D. of University of Chicago Hospitals.


6.    State the names and current or last known addresses of all physicians, specialists, clinics, hospitals and sanitariums which examined you or rendered service or treatment to you for the injuries and/or disease you allege to have sustained as the result of the exposure complained of, and state further the date or inclusive dates on which each of them rendered you service or treatment and the amounts of their respective bills.

ANSWER:    Charles Winans, M.D.
           Wendy Recant, M.D. (Pathology)
           M. Lisa Yaremko, M.D. (Pathology)
           Mark Ferguson, M.D. (Thoracic Surgeon)
           Dr. Hoffman
           University of Chicago Hospitals
           5841 South Maryland Ave.
           Chicago, IL  60637

| DOS: | 02/22/96 to 03/02/96 | $ 53,006.62 |
|---|---|---|
| DOS: | 03/26/97 to 03/29/97 | $  9,524.50 |
| DOS: | 02/26/97 to 03/22/97 | $ 76,698.72 |
| DOS: | 02/17/97 to 02/22/97 | $ 13,315.42 |
| DOS: | 07/15/96 to 07/19/96 | $ 10,542.68 |
| DOS: | 03/03/96 to 03/23/96 | $114,426.42 |
| DOS: | 01/29/96 to 10/29/97 | $ 54,222.80 |

           Lester Davis, M.D.
           2315 E. 93rd St.
           Chicago, IL  60617


           Alvin B. Schonfeld, M.D.
           0654 Stone Creek Dr. #27
           P.O. Box 6998
           Avon, CO  81620-6998


7.    After being informed that you were suffering from an injury and/or disease caused by asbestos, did you continue to engage in any activity or occupation in which you encountered subsequent exposure to asbestos, and if so state the nature and description of such activity or



WR GRACE PIQ 58779-0031

occupation, and further state whether your continued participation in such activity or occupation in which you encountered subsequent exposure to asbestos, and if so state the nature and description of such activity or occupation was contrary to medical or professional advice, stating the date on which such advice was given and the identity of the person or entity giving such advice.

ANSWER:    No.

8.    State the name and current or last known addresses of all physicians, specialists, clinics, hospitals and sanitariums which have examined you or have rendered service or treatment to you from the date identified in Interrogatory No. 5 up to and including the present date, and state further the date or inclusive dates on which each of them referred you service or treatment and the amounts of their respective bills.

ANSWER:    Please see answer to No. 6 above.

9.    State the name and current or last know addresses of all physicians, specialists, clinics, hospitals, sanitariums or any other medical personnel or institutions which have examined you or rendered services or treatment to you from the time you began working in the insulation trade up to and including the present date, and further state the date or inclusive dates of such examination, services or treatment and the reasons you sought such medical attention.

ANSWER:    Please see answer to No. 6 above.

10.    State the name and current or last known address of any physician, hospital, clinic sanitarium, or other medical personnel who has ever treated you for pulmonary, cardio-vascular of gastro-intestinal complaints.

ANSWER:    Please see answer to No. 6 above.

11.    State the names and current or last known addresses of any and all consulting physicians, technicians, radiologists, clinics, pathologists, laboratories, hospitals, sanitariums, or other medical personnel or institutions which have rendered services to you, examined you, treated you, reviewed your medical records, or have otherwise consulted regarding your complaints relating to the injuries and/or disease which you allege in connection with this action.

ANSWER:    Please see answer to No. 6 above.

12.    From which of the above medical personnel and/or institutions do you or your attorney have written reports?

4



WR GRACE PIQ 66779-0032

ANSWER:    Please see answer to No. 6 above.

13.    State the following information separately for each and every set of X-rays you have ever had taken of your chest or gastro-intestinal tract:

(a)    the name and address of the office, hospital, clinic, sanitarium, laboratory or other institution where the X-rays were taken;

(b)    the reason such X-rays were taken;

(c)    the date(s) on which said X-rays were taken;

(d)    the information reported to you as being the X-ray interpretation, findings or diagnosis;

(e)    the date said interpretation, findings or diagnosis was reported;

(f)    the identity of the person(s) who took the X-ray and the person(s) who made the interpretation, finding or diagnosis;

(g)    the identity of the person(s) who reported said finding, interpretation of diagnosis.

ANSWER:    Plaintiff's decedent had x-rays taken in connection with his treatment.

14.    State any and all other damages not stated in answers to the above interrogatories which you are claiming as a result of the injuries and/or diseases alleged in the complaint.

ANSWER:    Medical expenses as well as those referred to in the Plaintiff's Complaint at Law.

15.    State whether you have filed any actions under the Workmen's Compensation or Occupational Disease Act of the State of Illinois and, if so, state the date of filing, the name and number of the cause, the respondent, the name and address of the company insuring the respondent, the claim petition, and the disposition of any such claim.

ANSWER:    None.

16.    State whether you have ever filed a lawsuit for personal injury, and if so, state the title, the court number, and the reason for each lawsuit, and the disposition of each lawsuit.

ANSWER:    Please see answer to No. 15 above.

5



WR GRACE PIQ 66779-0033

17.    State the inclusive dates, if any, during which you were a smoker of tobacco and state further the types of tobacco smoked and the amount consumed daily, and whether you customarily inhaled.

ANSWER:    None.

18.    Identify in chronological order every employer for whom you have ever worked for the last 40 years. State separately for each employer:

(a)    the employer's name and address;

(b)    the nature of the employer's business;

(c)    the beginning and ending dates of your employment including all periods of employment for that employer;

(d)    your position and job responsibilities;

(e)    your rate of pay.

ANSWER:    Please see Plaintiff's decedent's attached social security printout.

19.    For each of the employers identified in Interrogatory No. 18, identify each and every job site at which you claim to have worked with or around asbestos-containing products.

ANSWER:    Please see answer to No. 21 below.

20.    For each of the job sites identified in Interrogatory No. 19, state the following:

(a)    the location of the job;

(b)    the length of time you worked at that job site;

(c)    your superior or foreman on that job and his last known address;

(d)    your co-workers on that job and their current or last known address.

ANSWER:    Please see answer to No. 21 below.

21.    For each of the job sites identified in Interrogatory No. 19, state the following:



WR GRACE PIQ 66779-6034

(a)    the types of asbestos-containing products to which you were exposed;

(b)    the brand or trade name of the asbestos-containing products to which you were exposed;

(c)    the manufacturers, suppliers and distributor of each asbestos-containing product to which you were exposed;

(d)    the number of times you were exposed to each product.

ANSWER:    Jobsite:    Inland Steel, East Chicago, Indiana
                              1950 to 1980

Products:

| | |
|---|---|
| Hy-Temp Cement | AC&S, Inc. |
| 85% Mag Cement | AC&S, Inc. |
| Asbestos PC & Block | AC&S, Inc. |
| Hy-Temp Cement | Armstrong World |
| 85% Mag Cement | Armstrong World |
| Asbestos PC & Block | Armstrong World |
| Metal-On | A&M Insulation |
| Aquapatch Cement | A&M Insulation |
| Superex 1900 | A&M Insulation |
| Superex Cement | A&M Insulation |
| Superex-M | A&M Insulation |
| Thermobestos PC, Block & Cement | A&M Insulation |
| 7M-13 Cement | A&M Insulation |
| #352, 450, 460 Cements | A&M Insulation |
| #50 Asbestos Weatherproofing Felt | A&M Insulation |
| 7M Cement | A&M Insulation |
| Blue Mud Cement | A&M Insulation |
| 85% Mag Block & Cement | A&M Insulation |
| Fibrous Adhesive | A&M Insulation |
| Insulkote | A&M Insulation |
| Insulkote SG, ET & ST | A&M Insulation |
| Insulseal | A&M Insulation |
| Laptite Cement | A&M Insulation |
| Black Mastic | Flintkote Corp. |
| Roofing Paper | Flintkote Corp. |
| Thermalkote | Flintkote Corp. |
| Calsilite Block | GAF/Ruberoid |
| Mastic | GAF/Ruberoid |
| Roofing Paper | GAF/Ruberoid |
| Unibestos PC | Luse-Stevenson |

7



WR GRACE PIQ 56779-0096

| | |
|---|---|
| MW-One Cement | Luse-Stevenson |
| MW-50 Cement | Luse-Stevenson |
| Gold Bond Sprayolite | National Gypsum |
| #110 Insulating Cement | Owens-Corning |
| Kaylo PC & Block | Owens-Corning |
| Kaylo 10 PC & Block | Owens-Corning |
| Kaylo 20 PC & Block | Owens-Corning |
| Type II Mastic | Owens-Corning |
| Kaylo PC & Block | Owens-Illinois |
| #110 Insulating Cement | Paul J. Krez |
| Kaylo PC & Block | Paul J. Krez |
| Kaylo 10 PC & Block | Paul J. Krez |
| Kaylo 20 PC & Block | Paul J. Krez |
| Type II Mastic | Paul J. Krez |
| Unibestos PC | Pittsburgh Corning |
| Aircell | Rapid American |
| Careytemp PC & Block | Rapid American |
| MW-One Cement | Rapid American |
| MW-50 Cement | Rapid American |
| K-Fac Block | United States Gypsum |
| Asbestos Plasters | United States Gypsum |
| Zonolite Mono-Kote Fireproofing | W.R. Grace |
| Super 40 | W.R. Grace |
| Zonolite Monokote | W.R. Grace |
| Zonolite Plaster | W.R. Grace |

Coworkers: Felix Acevedo Address Unknown; Chuck Buckley Address Unknown; Larry Burns 6864 West 176th Street, Tinley Park, Illinois; T. Buttons Address Unknown; J. Carmody Address Unknown; Ray Carmody, deceased; Larry Carpenter 6425 27th Street, Berwyn, Illinois; James Clinnin, deceased; John Conley Address Unknown; Jocko Conlin, deceased; Pack Courtney, deceased; Tom Delacy 6015 West 83rd Street, Burbank, Illinois; Joe Dombrowski 10060 South Prospect, Chicago, Illinois; Dick Doody Address Unknown; Don Fulton 9145 South Springfield, Evergreen Park, Illinois; Tom Galivan 5947 West Ohio, Chicago, Illinois; Henry Ghormley 7604 Catalpa, Hammond, Indiana; Ron Giertych 4150 Downers Drive, Downers Grove, Illinois; Larry Gratz Address Unknown; Ralph Grenz 4321 North Winchester Avenue, Chicago, Illinois; John Griffin Address Unknown; Bud Harvey Address Unknown; Bill Henning Address Unknown; Robert Houlihan, deceased; Edward Jacobsen, deceased; A.J. Jeffries Address Unknown; Joe Kennan Address Unknown; Dick Kolbus 5805 South Normandy, Chicago, Illinois; Dan Lovell 3461 170th Street, Lansing, Illinois; Terry Lynch 3613 177th Place, Lansing, Illinois; Charlie Lynch 57 West 144th Street, Riverdale, Illinois; Bill Lynch 8970 Main, Hometown, Illinois; Richard Mabbot Address Unknown; Jim McAndrews 17748 South 65th Avenue, Tinley Park, Illinois; George McCafferty 1442 Kings Road, Carpentersville, Illinois; Charles McCarthy 15730 Maryland Avenue, Dolton, Illinois; Gene McCartin Address Unknown;



WR GRACE PIQ 66778-0036

Gene McKenna Address Unknown; Ken McManus 3700 West 77th Place, Chicago, Illinois; John McNichols 10147 West 151st Street, Orland Park, Illinois; Walt Moran Address Unknown; Buzz Morgan Address Unknown; Carl Morris, Jr. Address Unknown; Don Murdoch 45 Sauk Trail, Park Forest, Illinois; Carmen Murello Address Unknown; Ed Nesvick 114 Wells, Park Forest, Illinois; John O'Heir 17511 Wentworth, Lansing, Illinois; Jim O'Toole Address Unknown; Lou Perone; Joe Quirk, deceased; Art Riordan Address Unknown; Tim Roche 862 South Hawthorne Avenue, Elmhurst, Illinois; Jack Ryan 8513 Riverside, Brookfield, Illinois; John Scanlon Address Unknown; Connie Shine 8815 South Honore, Chicago, Illinois; Bob Simonsen 7715 North Oketo, Niles, Illinois; William Smulders 22051 Central Park, Park Forest, Illinois; Rich Staack 17704 South Highland, Tinley Park, Illinois; John Stack 15300 Tree Top Drive, Orland Park, Illinois; Herbert Stanley Address Unknown; Bob Stevenson Address Unknown; Jim Stewart 18689 South 82nd Court, Palos Hills, Illinois; Thomas Sweeney; Bob Thomas 2245 West 23rd Street, Chicago, Illinois; Joe Ursich, deceased; Hub Warner 1059 North Leamington, Chicago, Illinois; Tom Warren Address Unknown; Jack Winter; Eso Zagorac Address Unknown. Investigation continues; Investigation continues.

22.    For each product identified in Interrogatory No. 21, identify the following:

(a)    your co-workers with knowledge that the product was on the particular job site;

(b)    your co-workers with knowledge that you actually worked with the particular product.

ANSWER:    Please see answer to No. 21 above.

23.    For each of the job sites identified in Interrogatory No. 19, identify the following:

(a)    the name and address of any companies, other than your employer, working with asbestos-containing materials at that job site;

(b)    all trades from which workers were present at that job site.

ANSWER:    Please see answer to No. 21 above.

24.    List any protective or safety devices used or worn by you in the handling of products allegedly manufactured by the defendants and state further the date used, the job sites where used, the nature of the device, the manufacturer or supplier of the device, and how you used each device in your trade or profession.

ANSWER:    None during the time when using asbestos.

9



WR GRACE PIQ 58779-0037

25.    State whether you were ever a member of any union and, If so, for each union please state:

(a)    the name and local number of the union;

(b)    the union hall from which you worked;

(c)    the date you joined the union;

(d)    your sponsor in the union;

(e)    if you ever ran for or held office in the union;

(f)    if you ever filed a grievance with any union.

ANSWER:    Plaintiff's decedent was a member of the United Steelworkers' Union Local No. 1010 located in East Chicago.  He received his union card in 1950.

26.    Did your labor unions or employer advise you to follow certain safety procedures designed to protect you from contracting asbestos related diseases and, if so, state which unions or employers rendered such advice, the dates on which such advice was given, and describe any written information or literature discussing asbestos related diseases which was provided you by any such union or employer.

ANSWER:    Not when Plaintiff's decedent was installing asbestos containing products.

27.    State the names and current or last known addresses of all persons who ever told you or whom you ever heard state that asbestos fibers or asbestos products could be hazardous to your health.

ANSWER:    Plaintiff's decedent's doctors and various media reports.

28.    State the name, address, telephone number and professional background of each and every person who may be called by the Plaintiff's decedent to testify to establish a casual relationship between the injuries alleged and the defendants' products.  State the facts and opinions to which each will testify and identify the documents of which each relies.

ANSWER:    Plaintiff has not yet chosen expert witnesses at this time, but reserves the right to do so at a later date.

10


WR GRACE PIQ 56779-0038

29.    State the name, address, telephone number and professional background of each and every person who may be called by the Plaintiff's decedent to testify to establish that the defendants' products were defective or unreasonably dangerous. State the facts and opinions to which each will testify and identify the documents on which each relies.

ANSWER:    Please see answer to No. 28 above.

30.    With regard to the individuals, if any, named in the previous three interrogatories, state whether or not said individuals have rendered a written report of any kind to the Plaintiff's decedents or their attorneys and, if so, state the subject matter contained in said report, the substance of fact an opinions to which the expert is expected to testify, if called, and state a summary of the grounds for each opinion.

ANSWER:    Please see answer to No. 28 above.

31.    State whether you or your attorneys or agents know of the existence of any statements, signed or unsigned, oral, written or court reported, from or by any person including any party hereto, which has or claims to have knowledge concerning the matter alleged in the complaint, or who was or claims to have been a witness to any part of the exposure alleged by you. If so, please state:

(a)    whether the statement was written, oral, recorded, reported, reported by shorthand, or otherwise preserved;

(b)    the full name and current or last known address of the person or persons, or entity, which took the statements and the date such statement was made;

(c)    the full name and current or last known address of each person, firm or entity which has possession of the statement or copies thereof.

ANSWER:    None.

32.    State the name and current or last known address of each and every person who was interviewed by or last known address of each and every person who was interviewed by or on behalf of you, your attorneys or agents with respect to the allegations contained in the complaint, stating for each person:

(a)    the name and current or last known address of the person interviewed, the full name and address of the person's employer at the time of the interview, and the name and current or last known address of the interviewer, as well as the dates of all interviews;

11



WR GRACE PIQ 56779-0039

(b)    whether any notes, records, jottings, memoranda, tape recordings, or statements were ever made of any interviews with that person, and if so, the name and current or last known address of each and every person in custody or control of same.

ANSWER:    None.

33.    List or describe each and every object or document, such as directories, catalogs, shipping slips, W-2 forms, tax records, diaries, calendars, invoices, packing slips, materials, publications or lists from whatever source which you used, or your attorneys or agents used, in compiling the names of the defendants in this cause.

ANSWER:    Objection; based on Attorney Work Product Doctrine.

34.    Do you have any of the following in your possession, or in the possession of your attorneys or agents?

(a)    samples of asbestos materials;

(b)    packaging from asbestos materials;

(c)    photographs of your places of employment or products used at your places of employment;

(d)    photographs of asbestos products or asbestos packaging.

ANSWER:    a.    No; Investigation continues.

b.    No; Investigation continues.

c.    No. Investigation continues.

d.    None other than those generally used in Cook County asbestos litigation.

35.    If, as the result of the alleged illness or illnesses, injury or injuries you claim to have sustained a loss of wages, earnings, income, or profit, state:

(a)    all the dates on which you were unable to work due to the illness or illnesses, injury or injuries;

(b)    the name and address of your employer at the time you learned of the illness, injury or disease of which you complain;

12



WR GRACE PIQ 55779-0040

(c)    the name and address of each person who recommended that you not work during such period;

(d)    the name of any potential employer who refused you work because of any illness or illnesses, injury or injuries allegedly sustained as a result of the exposure;

(e)    the date or inclusive dates on which you sought work but were unable to work for reasons not related to the illnesses or injuries allegedly sustained as a result of the exposure complained of.

ANSWER:    No.

36.    If loss of wages, earnings, income or profit is claimed, state:

(a)    the total amount of claimed loss and the manner or method of computing same;

(b)    provide a complete, itemized computation of such claimed loss;

(c)    the nature and potential source of the lost wages, earnings, income or profit, and the date of the claimed deprivation thereof.

ANSWER:    Please see Answer to No. 35 above.

37.    State and list all monetary expenses, other than physician and hospital bills, and any and all other items of damages, which you claim to be a result of the illnesses or injuries you allegedly sustained as a result of the exposure complained of.

ANSWER:    Please refer to Plaintiff's decedent's Complaint at Law.

**REDACTED**

13



STATE OF ILLINOIS )
        ) SS.
COUNTY OF C O O K )

**REDACTED**

       , being first duly Sworn on Oath deposes and states that she has read the foregoing Answers to Interrogatories by herself subscribed, and that they are true and correct to the best of the information knowledge and belief.

**REDACTED**

SUBSCRIBED and SWORN to
before me this ___23___ day
of ____Oct____, 1998.

~~Belinda Mack~~

NOTARY PUBLIC

> **"OFFICIAL SEAL"**
> **BELINDA MACK**
> Notary Public, State of Illinois
> My Commission Expires June 8, 1999

14



WR GRACE PIQ 68778-0042

SSA-1826            ITEMIZED STATEMENT OF EARNINGS        JOB:
VERSION 1984.002 * * *      FOR SSN              * * *

**REDACTED**

FROM:  SOCIAL SECURITY ADMINISTRATION
       OFFICE OF CENTRAL RECORDS OPERATIONS
       BALTIMORE, MARYLAND  21235-0000

COONEY AND CONWAY                NUMBER HOLDER NAME:

120 N LASALLE                    **REDACTED**

30TH FLOOR
CHICAGO              IL  60602

PERIOD REQUESTED    JANUARY 1950  THRU  DECEMBER 1980

YEAR  JAN - MARCH  APRIL -JUNE  JULY - SEPT    OCT - DEC       TOTAL

EMPLOYER NUMBER:  36-1262880
INLAND STEEL COMPANY
30 W MONROE ST
CHICAGO    IL 606032401

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|------|-------------|-------------|-------------|-----------|---|-------|
| 1950 |             | 186.47      | 344.54      |           | $ | 531.01 |
| 1952 | 481.16      | 360.26      | 573.22      | 836.74    | $ | 2,251.38 |
| 1953 | 800.29      | 833.86      | 876.25      | 709.60    | $ | 3,220.00 |
| 1954 | 895.58      | 706.50      | 805.13      | 801.79    | $ | 3,209.00 |
| 1955 | 991.94      | 881.75      | 1,015.27    | 755.80    | $ | 3,644.76 |
| 1956 | 893.64      | 1,007.88    | 488.84      | 1,092.80  | $ | 3,483.16 |
| 1957 | 957.37      | 1,136.15    | 1,218.12    | 888.36    | $ | 4,200.00 |
| 1958 | 931.20      | 567.45      | 1,213.98    | 1,093.84  | $ | 3,806.47 |
| 1959 | 1,323.72    | 1,213.13    | 427.44      | 494.54    | $ | 3,458.83 |
| 1960 | 1,394.48    | 1,224.76    | 345.03      |           | $ | 2,964.27 |
| 1961 | 1,175.67    | 1,127.91    | 1,264.11    | 1,081.04  | $ | 4,648.73 |
| 1962 | 1,471.42    | 1,225.26    | 1,243.35    | 859.97    | $ | 4,800.00 |
| 1963 | 1,154.77    | 1,230.10    | 1,589.64    | 825.49    | $ | 4,800.00 |
| 1964 | 1,478.71    | 1,791.99    | 1,516.54    | 12.76     | $ | 4,800.00 |
| 1965 | 1,555.14    | 1,805.68    | 1,439.18    |           | $ | 4,800.00 |
| 1966 | 1,522.70    | 1,846.64    | 1,600.50    | 1,630.16  | $ | 6,600.00 |
| 1967 | 1,483.97    | 1,854.76    | 1,560.22    | 1,701.05  | $ | 6,600.00 |
| 1968 | 1,419.44    | 2,126.29    | 1,724.23    | 1,576.54  | $ | 6,846.50 |
| 1969 | 1,950.16    | 1,788.92    | 2,194.29    | 1,809.46  | $ | 7,742.83 |
| 1970 | 2,008.65    | 1,862.64    | 2,144.96    | 1,783.75  | $ | 7,800.00 |
| 1971 | 2,147.81    | 2,035.85    | 1,868.43    | 1,747.91  | $ | 7,800.00 |

PAGE 001



WR GRACE PIQ 56779-0043

SA-1826        ITEMIZED STATEMENT OF EARNINGS        JOB:
VERSION 1984.002 * * *      FOR SSN

**REDACTED**

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|------|-------------|-------------|-------------|-----------|---|-------|
| 1972 | 2,564.46 | 2,150.73 | 2,565.71 | 1,719.10 | $ | 9,000.00 |
| 1973 | 2,532.14 | 2,434.03 | 3,003.89 | 2,829.94 | $ | 10,800.00 |
| 1974 | 2,675.35 | 2,933.21 | 3,321.71 | 4,179.37 | $ | 13,109.64 |
| 1975 | 3,645.03 | 3,939.32 | 3,474.97 | 3,040.68 | $ | 14,100.00 |
| 1976 | 3,845.29 | 4,534.83 | 3,802.13 | 3,117.75 | $ | 15,300.00 |
| 1977 | 4,366.42 | 4,844.29 | 4,444.14 | 2,845.15 | $ | 16,500.00 |
| 1978 | - | - | - | - | $ | 17,700.00 |
| 1979 | - | - | - | - | $ | 22,262.76 |
| 1980 | - | - | - | - | $ | 25,900.00 |

EMPLOYER NUMBER:  25-0393417
AMERICAN BRIDGE DIVISION
UNITED STATES STEEL CO
525 WILLIA    PA 000000000

| 1952 | 9.52 | | | | $ | 9.52 |
|------|------|---|---|---|---|------|

EMPLOYER NUMBER:  36-1688970
W C RITCHIE AND COMPANY
8801 S BALTIMORE AVENUE
CHICAGO    IL 606170000

| 1952 | 9.02 | | | | $ | 9.02 |
|------|------|---|---|---|---|------|

EMPLOYER NUMBER:  36-2188398
GATEWAY INDUSTRIES INC
17512 CARRIAGEWAY DR
HAZEL CREST    IL 604290000

| 1959 | | | 241.74 | | $ | 241.74 |
|------|---|---|--------|---|---|--------|

THERE ARE NO OTHER EARNINGS RECORDED UNDER THIS SOCIAL SECURITY
NUMBER FOR THE PERIOD(S) REQUESTED.

EARNINGS FOR THE YEARS AFTER 1996 MAY NOT BE SHOWN, OR ONLY
PARTIALLY SHOWN, BECAUSE THEY MAY NOT YET BE ON OUR RECORDS.

PAGE 002 END

THE UNIVERSITY OF CHICAGO HOSPITALS
LABORATORY OF SURGICAL PATHOLOGY

WR GRACE PIQ G6778-0044

**REDACTED**

CHICAGO, ILLINOIS 60637
TELEPHONE: 312-702-6327
FAX: 312-702-9903

| CLINIC OR FLOOR | DATE |
|---|---|
| RR | 01/30/96 |

ATTENDING PHYSICIAN
WINANS, CHARLES S.          M253, BX400    PATH. NO.        96-01491 S

HISTORY:

   The patient is a 65 year old male who was found to have a mass in the middle
esophagus on barium swallow and now presents for EGD.  Endoscopy shows a
2 mm mass with a central depression/ulceration and moderate diffuse
gastritis.  Multiple biopsies were taken to rule out squamous carcinoma of
the esophagus and H. pylori infection.

GROSS:

   Received are two containers each labelled with the patient's name and unit
number.
   The first container is designated "antrum". It contains one piece of
biopsy tissue measuring 4 mm in maximum dimension. The entire specimen is
submitted in cassette A.
   The second container is designated "esophagus". It contains eight pieces
of biopsy tissue measuring 2 to 4 mm in maximum dimension. The entire
specimen is submitted in cassettes B-E.


   /ds

_____

                              DIAGNOSIS:

Endoscopic biopsies:
   "Antrum":
         -Erosive antral gastritis with intestinal metaplasia.
   "Esophagus":
         -Invasive moderately differentiated squamous cell carcinoma.

   /ms

_____

COMMENT:
   Steiner stain result will be issued as an addendum.

   Carcinoma is present in 5 of the 8 biopsy pieces in the specimen from the
esophagus.

   Dr. Hart has reviewed the material and concurs.

02/02/96.

ICD CODES:
42.24
807.03
150.9

THE UNIVERSITY OF CHICAGO HOSPITALS

## LABORATORY OF SURGICAL PATHOLOGY

**REDACTED**

Sex: Male    Race:

WR GRACE PIQ 55779-0045

TELEPHONE: 312-702-6327
FAX: 312-702-9903

| CLINIC OR FLOOR | DATE |
|---|---|
| RR | 01/30/96 |

| ATTENDING PHYSICIAN WINANS, CHARLES S. | M253, BX400 | PATH. NO. | 96-01491 S |
|---|---|---|---|

Shan Ching Ying, M.D.

M. Lisa Yaremko M.D.

THE UNIVERSITY OF CHICAGO HOSPITALS

/R GRACE PIQ 58778-0048

**REDACTED**

| CLINIC OR FLOOR | DATE |
|---|---|
| RR | 01/30/96 |

ATTENDING PHYSICIAN:
WINANS CHARLES S.          M253, BX400   PATH. NO.          96-01491 S

********SEE "COMMENT" SECTION FOR ADDENDUM REPORT********

HISTORY:
    The patient is a 65 year old male who was found to have a mass in the middle esophagus on barium swallow and now presents for EGD. Endoscopy shows a 2 mm mass with a central depression/ulceration and moderate diffuse gastritis.  Multiple biopsies were taken to rule out squamous carcinoma of the esophagus and H. pylori infection.

GROSS:
    Received are two containers each labelled with the patient's name and unit number.
    The first container is designated "antrum". It contains one piece of biopsy tissue measuring 4 mm in maximum dimension. The entire specimen is submitted in cassette A.
    The second container is designated "esophagus". It contains eight pieces of biopsy tissue measuring 2 to 4 mm in maximum dimension. The entire specimen is submitted in cassettes B-E.

    /ds

                            DIAGNOSIS:
Endoscopic biopsies:
    "Antrum":
        -Erosive antral gastritis with intestinal metaplasia.
    "Esophagus":
        -Invasive moderately differentiated squamous cell carcinoma.

    /ms

COMMENT:
    Steiner stain result will be issued as an addendum.
    Carcinoma is present in 5 of the 8 biopsy pieces in the specimen from the esophagus. Dr. Hart has reviewed the material and concurs.

                    ******ADDENDUM REPORT*******

    Steiner stain is negative for H. pylori microorganisms with appropriate control.

02/02/96

ICD CODES:

FORM 40.08-310-4B

THE UNIVERSITY OF CHICAGO HOSPITALS
LABORATORY OF SURGICAL PATHOLOGY

**REDACTED**

WR GRACE PIQ 58779-0047

Sex: Male    Race:

CHICAGO, ILLINOIS 60637
TELEPHONE: 312-702-6327
FAX: 312-702-9903

| CLINIC OR FLOOR | DATE |
|---|---|
| RR | 01/30/96 |

| ATTENDING PHYSICIAN | | |
|---|---|---|
| WINANS, CHARLES S. | M253, BX400 | PATH. NO.    96-01491 S |

42.24
807.03
150.9

Shan Ching Ying, M.D.                    M. Lisa Yaremko M.D.

FORM 40.08-310-48

CHART-1

THE UNIVERSITY OF CHICAGO HOSPITALS

## LABORATORY OF SURGICAL PATHOLOGY

CHICAGO, ILLINOIS 60637

TELEPHONE: 312-702-6327

FAX: 312-702-9903

Sex: Male        Race:

WR GRACE PIQ 58779-0048

| CLINIC OR FLOOR | DATE |
|---|---|
| D4IC D404-01 | 02/23/96 |

ATTENDING PHYSICIAN
FERGUSON, MARK K.        P217        PATH. NO.        96-02808 S.

SEE ALSO:
96-03267S        96-01491S

HISTORY:
The patient is a 55-year-old male with esophageal squamous cell carcinoma. He now undergoes esophagectomy.

GROSS:
Received are four containers labelled with the patient's name and unit number.

The first container, further designated "RLL biopsy" contains a 0.2 cm in diameter dark brown tissue specimen which is submitted in toto for frozen section (F1) and read as "small fragment of bronchi, no evidence of tumor" by Dr. Yaremko.

The second container, further designated "proximal margin" contains a 0.4 cm long and 1.8 cm in diameter portion of the esophagus with multiple staples at one end. The margin without staples is submitted for frozen as requested (F2) and read as "No evidence of tumor" by Dr. Montag.

The third container, further designated "proximal esophagus definitive margin" contains a 0.4 cm long and 1.4 cm in diameter segment of esophagus, submitted in toto in cassette A.

The fourth container is further designated "esophagus and stomach". It contains a 18 cm in length and 4 cm in circumference segment of esophagus with a 2 to 7 cm width of proximal stomach cuff attached. Grossly there is a 2 cm in diameter exophytic white firm tumor mass, 5 cm from the proximal margin and 12 cm from the gastro-esophageal junction. Cut section reveals the tumor to be involving the full thickness of the esophageal wall, extending close to the serosal surface which is inked in blue. Attached are yellow fatty paragastric and paraesophageal fatty tissues from which multiple lymph nodes are identified, ranging from 0.3 to 1 cm in diameter. Representative sections of this specimen are submitted as follows:

| | |
|---|---|
| B-E: | One node per cassette, paraesophageal nodes in the vicinity of tumor (less than 3 cm from tumor). |
| G: | Many Paraesophageal nodes near the tumor (less than 3 cm from tumor) |
| H&J: | Paraesophageal nodes greater than 3 cm from the tumor |
| K-M: | Paragastric lymph nodes |
| N | 1 cm from proximal margin, grossly unremarkable |
| P | 3 cm from proximal margin, grossly unremarkable mucosa |
| Q-Y | Tumor entirely embedded from proximal to distal |
| Z | 13 cm from proximal margin, grossly unremarkable |
| AA | Gastro-esophageal junction |

FORM 40.08-310-48

CHART-1

THE UNIVERSITY OF CHICAGO HOSPITALS

## LABORATORY OF SURGICAL PATHOLOGY

CHICAGO, ILLINOIS 60637
TELEPHONE: 312-702-6327
FAX: 312-702-9903

**REDACTED**

Sex: Male     Race: ~~REDACTED~~

WR GRACE PIQ 56779-0049

| CLINIC OR FLOOR | DATE |
|---|---|
| D4IC D404~01 | 02/23/96 |

ATTENDING PHYSICIAN
FERGUSON, MARK K.          P217     PATH. NO.     96-02808 S

BB&CC   Distal gastric margin

/mkc

/mkc

### DIAGNOSIS:

Biopsy, "RLL": Tissue bits from bronchial wall, no evidence of tumor.
Resection, "Proximal margin": squamous esophageal mucosa, no evidence of
tumor. "Definitive proximal margin": squamous esophageal mucosa, no
evidence of tumor.

"Esophagus and stomach":
- Well differentiated squamous carcinoma (2 cm) with invasion into
  outer muscular coat. See comment.
- Distal margin of resection, free of tumor
- One of ten paraesophageal lymph nodes positive for metastatic
  carcinoma (1/10)
- Thirteen perigastric lymph nodes, NEOT (0/13)

/mkc

COMMENT:
Tumor extends to within 1 mm. of the inked serosal resection margin.

/mkc

03/04/96.

ICD CODES:
33.27
42.42
807.03
150.9

Gloria Ma, M.D.          Judy Lyzak, M.D.          Wendy M. Recant, M.D.

FORM 40.08-310-48


WR GRACE PIQ 66779-0060

THE UNIVERSITY OF CHICAGO

SECTION OF GASTROENTEROLOGY

5841 S. MARYLAND AVENUE • CHICAGO • ILLINOIS 60637

MC 2105        PHONE: 312/702-6137        FAX: 312/702-9399

Charles S. Winans, M.D.
The Sara and Harold Lincoln Thompson Professor

January 29, 1996



Lester H. Davis, MD
2315 East 93rd Street
Chicago IL  60617

RE:                                **REDACTED**
UCHC:  221-66-68

Dear Lester:

　　　　Thanks so much for your kindness in referring Mr. a 65-year-old retired steel worker, who came to see me along with his concerned wife at your recommendation on January 29, 1996.  Mr. Castellano explained that some non-specific left upper anterior chest pain had led him to see you. After a multi-stage exercise stress test was negative for heart disease, you obtained a barium swallow, which has been reported as showing a plaque-like lesion in the mid-esophagus.  The radiologist strongly recommended endoscopic examination.  I certain agree, and that examination will actually be done tomorrow.  I am writing now to let you know my initial thoughts.

　　　　..., who has smoked only an occasional cigar and who has never been a heavy, abusive drinker of alcohol, began to have an intermittent discomfort in the left lateral upper chest some time after Christmas.  It did not happen daily, but it has continued.  He experiences it every few days.  It lasts for an hour or more.  It is burning, like "heartburn".  It does not appear to be related to eating or exertion.  Maalox provides equivocal amelioration.  He has not had dysphagia, anorexia or weight loss.  In the course of his work in the steel mills, he has had many exposure to gasses, dust and fumes.  He has had a chest film, which apparently shows some sort of occupationally-related lung disease; he has had these periodically and there has apparently been no progression.  He denies shortness of breath on exertion.

　　　　In the past, Mr.                had a malignant polyp of his colon resected in 1993.  When excision by polypectomy did not appear to be complete, he underwent segmental resection, although I am no sure what segment was resected.  There has been no change in his bowel habits and he has had periodic, yearly colonoscopies without discovery of further abnormality.

**REDACTED**

REDACTED


WR GRACE PIQ 66779-0061

**REDACTED**

RE:
.UCHC:   221-66-68

has a remarkable family history of cancer. One sister and one niece died of ovarian cancer. Three nieces have had breast cancer. A brother suffers from prostate cancer. An aunt died of some sort of intra-abdominal carcinoma and another niece has been treated for carcinoma of the uterine cervix. Still another niece has had brain tumors, which sound benign in nature.

Otherwise,                        has been healthy, except for hypertension, which has been recognized for many years and treated for the past 25 years. He currently takes hydrochlorothiazide, Vasotec, Procardia XL and Slo-K for the management of hypertension. He also takes Ecotrin - 325 mg/day and has done so for years, probably for prophylaxis against heart attack and stroke.

**REDACTED**

I performed a rather limited examination on He weighed 138 1/2 pounds, adequate for his 5'2" frame. He had no fever. His pulse was 68/minute and regular, his respiratory rate 18/minute and his blood pressure 132/77. He was alert, and in no distress, but was appropriately concerned with the Xray report. I found no pertinent abnormalities. Specifically, there were no lymph nodes in the neck. There was no jaundice. The lungs were clear. Cardiac tones were normal. The abdomen was without enlarged organs or palpable masses.

Subsequently, I reviewed the Xray films, copies of which you were kind enough to send along with the patient, with our senior gastrointestinal radiologist. He agrees that there is definitely a lesion present and, although it is not possible to be certain without endoscopy, suspects it may represent a squamous cell carcinoma; we will make that determination at endoscopy tomorrow. I, of course, will be in touch as soon as I have an answer for you. In the meantime, I have asked for              to have some blood counts and blood clotting tests, as well as a chest film. I also started him on Prevacid in a dose of 30 mg/day, taken in the morning. I thought that, if his chest discomfort was due to acid irritating an ulcerated lesion of some sort, it made sense to try to give him some relief while we are working this out.

Again, my thanks to you for referring this nice patient.

Sincerely,

Charles S. Winans, M.D.

CSW/A15

copy:            **REDACTED**

REDACTED



Send out signature page to the client.
Create data fil (JEO has list)
Print out list of jobsites from Complaint
List of filing dates for Manville Claims
Determine if any of these cases were trial set - use Medical disclosure (Lucie)
Deps - ask KB if we need to list.
Copy scanned diagnosing records
Copy scanned death certificate   (search out those that are not scanned)
Copy scanned social security printout (search out those that are not scanned)
Copy scanned Consolidated interrogatories.  (search out those that are not scanned)



WR GRACE PIQ 68779-0063

# MEDICAL CERTIFICATE OF DEATH

CITY OF CHICAGO
DEPARTMENT OF PUBLIC HEALTH

STATE OF ILLINOIS
COUNTY OF COOK
CITY OF CHICAGO

APR 23 1998

I, SHEILA LYNE, RSM, LOCAL REGISTRAR OF VITAL STATISTICS OF THE CITY OF CHICAGO, DO HEREBY CERTIFY THAT I AM THE KEEPER OF THE RECORDS OF BIRTHS, STILLBIRTHS AND DEATHS FOR THE CITY OF CHICAGO BY VIRTUE OF THE LAWS OF THE STATE OF ILLINOIS AND THE ORDINANCES OF THE CITY OF CHICAGO; THAT THE ACCOMPANYING CERTIFICATE ON THIS SHEET IS A TRUE COPY OF A RECORD KEPT BY ME IN PURSUANCE OF SAID LAWS AND ORDINANCES.

LOCAL REGISTRAR

THIS CERTIFIED COPY VALID WHEN MULTICOLOR SIGNATURE SEAL IS AFFIXED.

REGISTERED NUMBER: 606733

DECEASED-NAME: REDACTED

1. DATE OF DEATH (MONTH, DAY, YEAR): APRIL 21, 1998
2. SEX: MALE
3. DATE OF BIRTH: 
4. COUNTY OF DEATH: COOK
5. CITY, TOWN, TWP. OR ROAD DISTRICT NUMBER: 17
6a. HOSPITAL OR OTHER INSTITUTION - NAME: HOSPICE
6b. IF HOSP. OR INST. INDICATE D.O.A., OP/EMER. RM, INPATIENT (SPECIFY): YES
7. BIRTHPLACE (CITY AND STATE OR FOREIGN COUNTRY): COOK
8a. AGE - LAST BIRTHDAY (YRS): 67
9. MARRIED, NEVER MARRIED, WIDOWED, DIVORCED (SPECIFY): MARRIED
11a. USUAL OCCUPATION: STEEL WORKER
11b. KIND OF BUSINESS OR INDUSTRY: INDUSTRY
12. EDUCATION: 12
14a. RESIDENCE - STATE: WHITE
14b. COUNTY: COOK
10. SOCIAL SECURITY NUMBER: REDACTED
13a. RESIDENCE (STREET AND NUMBER): 
RACE (WHITE, BLACK, AMERICAN INDIAN, ETC.): WHITE
13c. IS DECEDENT OF HISPANIC ORIGIN: NO

15. IMMEDIATE CAUSE: METASTATIC CARCINOMA OF ESOPHAGUS
DUE TO, OR AS A CONSEQUENCE OF

16. WAS CASE REFERRED TO MEDICAL EXAMINER/CORONER: NO

AUTOPSY: NO

2 YEARS

20a. DATE OF OPERATION, IF ANY: APRIL 15, 1998

22a. SIGNATURE
22b. DATE SIGNED: APRIL 22, 1998
22c. NAME AND ADDRESS OF CERTIFIER: PHILIP C. HOFFMAN, MD   5841 SOUTH MARYLAND   CHICAGO, ILLINOIS 60637
22d. ILLINOIS LICENSE NUMBER: 036-054578

23. BURIAL, CREMATION, REMOVAL (SPECIFY): BURIAL
24a. CEMETERY OR CREMATORY - NAME: HOLY CROSS CEMETERY
24b. LOCATION: CALUMET CITY, ILLINOIS
25a. FUNERAL HOME: RUZICH FUNERAL HOME   9725 SOUTH COMMERCIAL   CHICAGO, ILLINOIS 60617
25b. FUNERAL DIRECTOR'S LICENSE NUMBER: 034-012287

HOUR OF DEATH: 7:45 P.M.

DATE: APRIL 25, 1998

APR 23 1998

0654 STONE CREEK DR. # 27
P.O. BOX 6998
AVON, CO 81620-6998

**REDACTED**



WR GRACE PIQ 56779-0054

WORKER'S Social Security Number          TYPE OF READING          IDENTIFICATION

---

**1A. DATE OF X-RAY**

| MONTH | DAY | YR |
|---|---|---|
| 06 | 04 | 93 |

**1B. FILM QUALITY**

1  2  3  4    If Not Grade 1 Give Reason: *slight*

**1C. IS FILM COMPLETELY NEGATIVE?**

YES ☐   NO ☒  Proceed to Section 2

---

**2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**

YES ☒  COMPLETE 2B and 2C   NO ☐  PROCEED TO SECTION 3

**2B. SMALL OPACITIES**

a. SHAPE/SIZE

| PRIMARY | SECONDARY |
|---|---|
| p  **q**  r | p  **q** ☒  r |
| s  t  u | s  t  u |

b. ZONES

| R | L |
|---|---|
| ☒ | ☒ |
| ☒ | ☒ |

c. PROFUSION

| 0/- | 0/0 | 0/1 |
| 1/0 | ☒1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/4 |

**2C. LARGE OPACITIES**

SIZE ☒ A B C

PROCEED TO SECTION 3

---

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**

YES ☒  COMPLETE 3B, 3C and 3D   NO ☐  PROCEED TO SECTION 4

**3B. PLEURAL THICKENING**

a. DIAPHRAGM (plaque)
SITE   O  **R**  L

b. COSTOPHRENIC ANGLE
SITE   O  R ☒

**3C. PLEURAL THICKENING ... Chest Wall**

a. CIRCUMSCRIBED (plaque)

| | SITE ☒ R | SITE ☒ L |
|---|---|---|
| IN PROFILE i. WIDTH | O A B C | O A B C |
| ii. EXTENT | O 1 2 3 | O 1 2 3 |
| FACE ON iii. EXTENT | O 1 2 3 | O 1 2 3 |

b. DIFFUSE

| | SITE O ☒ | SITE O ☒ |
|---|---|---|
| IN PROFILE i. WIDTH | O ☒ B C | O ☒ B C |
| ii. EXTENT | O ☒ 2 3 | O ☒ 2 3 |
| FACE ON iii. EXTENT | ☒ 1 2 3 | ☒ 1 2 3 |

**3D. PLEURAL CALCIFICATION**

| | SITE ☒ R | EXTENT | | SITE ☒ L | EXTENT |
|---|---|---|---|---|---|
| a. DIAPHRAGM | | O 1 2 3 | a. DIAPHRAGM | | O 1 2 3 |
| b. WALL | | O 1 2 3 | b. WALL | | O 1 2 3 |
| c. OTHER SITES | | O 1 2 3 | c. OTHER SITES | | O 1 2 3 |

PROCEED TO SECTION 4

---

**4A. ANY OTHER ABNORMALITIES?**

YES ☒  COMPLETE 4B and 4C   NO ☐  PROCEED TO SECTION 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

ax  bu  ca  cg  cn  co  cp  cv  di  ef  ☒em  es  fr  hi  ho  id  ih  kl  pi  px  rp  tb

Report items which may be of present clinical significance in this section.

☒ OD  (SPECIFY od.)

Date Personal Physician notified?

| MONTH | DAY | YR. |
|---|---|---|
| | | |

**4C. OTHER COMMENTS**  GREENFIELD FILTER , MULT.
LLQ SURGICAL CLIPS
Scoliosis

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C   YES ☐ NO ☐   PROCEED TO SECTION 5

---

**5. FILM READER'S INITIALS**   A J S

PHYSICIANS SOCIAL SECURITY NUMBER   2 7 1 4 4 5 5 2 5

DATE OF READING

| MONTH | DAY | YR |
|---|---|---|
| 01 | 14 | 98 |



WR GRACE  PIQ  56779-0066

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | } | Chapter 11 |
| | } | |
| W.R. GRACE & CO., et al | } | Case No. 01-1139(JKF) |
| | } | (Jointly Administered) |
| Debtors. | } | |

## CLAIMANT'S OBJECTIONS AND RESPONSES TO THE
## W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

Claimant , by and through his/her counsel, Cooney and Conway, submits the following objections and responses to the "W.R. Grace Asbestos Personal Injury Questionnaire" ("Questionnaire"). In order to maintain the integrity of the formatting on Debtor's Questionnaire, Claimant has set out all of his/her general and specific objections in the following separate sections of this response and hereby incorporates each of these objections into Claimant's Questionnaire responses by reference therein.

## CLAIMANT'S GENERAL OBJECTIONS TO THE W.R. GRACE ASBESTOS
## PERSONAL INJURY QUESTIONNAIRE

Claimant hereby files these objections in response to the Questionnaire propounded by W.R. Grace.

Claimant objects to the Questionnaire and its Instructions to the extent that they impose discovery obligations beyond those of the Federal Rules of Bankruptcy Procedure and/or the rules of civil procedure in Illinois, which is the state where Claimant filed an asbestos personal injury lawsuit.  Claimant will respond to the discovery Questionnaire in accordance with those rules.



WR GRACE PIQ 56779-0066

Claimant objects to the Instructions as they make document requests that are overly broad, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Claimant contends that the burden and expense of responding to Debtor's Questionnaire in the format requested by Debtor outweighs its likely benefit.

Claimant objects to the Questionnaire and its Instructions to the extent that they seek information or identification of documents that are attorney work product, subject to the attorney-client or consulting expert privileges, or are otherwise not discoverable under the Federal Rules of Bankruptcy Procedure or the Illinois rules of civil procedure. Claimant further objects to the Questionnaire and its Instructions to the extent it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. Inadvertent disclosure of any such information or documents shall not constitute waiver of any privilege.

By providing responses to the Questionnaire, the claimant does not concede that the information provided is discoverable, relevant, or admissible. All responses are provided subject to the objections set forth herein. Each claimant reserves the right to challenge further discovery into the subject matter of the Questionnaire.

Claimant objects to any request in the Questionnaire that seeks any information that is not in the Claimant's control, custody, or possession; is already in the control, custody or possession of the Debtor; or is obtainable with equal or greater facility by the Debtor. The answers to the majority of the questions in Debtor's Questionnaire may be derived or ascertained from interrogatory responses and documents produced in connection with Claimant's asbestos personal injury lawsuit to which Debtor was a party prior to filing for bankruptcy ("Claimant's Asbestos Lawsuit"). Because the burden of deriving or ascertaining the answer is substantially the same for Debtor as for Claimant, Claimant has specified in Claimant's Questionnaire response the document from which the answer may be derived as permitted by Rule 33(d) of the Federal Rules of Civil Procedure as incorporated by Rule 7033 of the Federal Rules of Bankruptcy Procedure. Where appropriate, Claimant has attached the relevant document(s).



WR GRACE PIQ 66779-0067

In response to this Questionnaire, Claimant objects to the extent that the questions are vague, ambiguous and premature. Moreover, Claimant objects to this Questionnaire to the extent that the scope and content of the information sought is unreasonably cumulative and duplicative.

Claimant objects to this Questionnaire to the extent it requires Claimant to compile documents or information from sources not presently available to Claimants, including documents created or compiled by third parties. Claimant objects to the Questionnaire to the extent it purports to require Claimant to gather and summarize information contained in voluminous papers that are already matters of public record.

Claimant objects to this Questionnaire to the extent that the questions and their discreet sub-parts exceed twenty-five (25) in number.

By submitting this response to the Questionnaire, Claimant does not intend to, and hereby does not, submit to the jurisdiction of the United States District Court for the District of Delaware, to the United States Bankruptcy Court for the District of Delaware, or to any other court. Claimant reserves (I) all objections to jurisdiction and/or venue, (ii) all protections afforded under Federal Rule of Civil Procedure 45 and Federal Bankruptcy Rule of Procedure 9016, and (iii) the right to jury trial afforded under 28 U.S.C. § 157(b)(5).



WR GRACE PIQ 56778-0058

## CLAIMANT'S SPECIFIC OBJECTIONS TO THE W.R. GRACE

## ASBESTOS PERSONAL INJURY QUESTIONNAIRE

**INSTRUCTIONS**

1.      Claimant objects to Instruction A.1 to the extent that it purports to include claims under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement or indemnity on the ground that it is overly broad and requests information that is not relevant to the subject matter of the estimation proceeding.

2.      Claimant objects to Instruction C in its entirety and Instruction J regarding medical supporting documentation on the ground that it is vague, ambiguous and exceeds the scope of discovery in that it seeks information and documents from experts that is not discoverable and is subject to the work product and consulting expert privileges. Claimant further objects to the portion of the instruction requiring claimant to "complete a separate Part II for each initial diagnosis and any previous or subsequent diagnosis or diagnostic tests that change or conflict with the initial diagnosis", on the ground that the burden outweighs its likely benefit. Claimant further objects to the instruction to attach **all** x-ray readings and reports and **all** pulmonary function test ("PFT") results on the ground that it is overly broad and ambiguous. Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. Without limiting the foregoing, Claimant



WR GRACE PIQ 58778-0059

objects to the following provisions of the Discovery Questionnaire as violative of Fed. R. Civ. P.

26(b)(4)(B):

(a). Claimant objects to Section C of the Instructions to the extent that it requests the

completion of Part II of the Discovery Questionnaire "if you received diagnoses and

diagnostic tests relating to the same condition by multiple doctors."

(b) Claimant objects to Section C of the Instructions to the extent that it requests the

production of "any and all documents" that "support or conflict with your diagnosis."

©) Claimant objects to Section C of the Instructions to the extent that it requests the

production of "all x-ray readings and reports."

(d). Claimant objects to Section C of the Instructions to the extent that it requests the

production of "all pulmonary function test results, including the raw data and all

spirometric tracings, on which the results are based."

(e). Claimant objects to Section J of the Instructions to the extent that it requests the

production of "any and all documents" that "support or conflict with your diagnosis."

(f). Claimant objects to Part II of the Discovery Questionnaire to the extent that it

requests disclosure of "diagnoses and diagnostic tests" by "multiple doctors"

concerning "previous or subsequent diagnoses or diagnostic tests that change or