WR GRACE PIQ 58778-0060

conflict with the original diagnoses."

Subject to the foregoing, Claimant will attach any x-rays reports, B-reads, pulmonary function tests or pathology reports considered by Claimant's medical expert, if any, in forming his/her opinion in connection with Claimant's Asbestos Lawsuit.

3.    Claimant objects to Instruction D to the extent that it requests Claimant to "attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease" on the ground that it is ambiguous and exceeds the scope of discovery in that it requests documents that are subject to the work product privilege.  Further, Claimant has been barred by the Bankruptcy Code Section 362 stay from pursuing discovery against Debtors.

## PART I:  IDENTITY OF INJURED PERSONS AND LEGAL COUNSEL

### Subsection (a)(7) – Daytime Telephone Number of client

Claimant objects to this inquiry on the ground that it is neither relevant nor likely to lead to the discovery of admissible evidence.  Claimant is represented by counsel, as reflected herein, and may only be contacted through counsel.

## PART II:  ASBESTOS-RELATED CONDITION(S)



WR GRACE PIQ 56779-0061

1.    **General Objections.** Claimant objects to Part II of the Questionnaire in its entirety on the

ground that it exceeds the scope of discovery in that it seeks information not relevant to the

estimation proceeding, information that is privileged, and information from experts that is non-

discoverable and is subject to the consulting expert and work product privileges. Additionally, the

information sought is more easily derived from the Claimant's discoverable medical records, which

are attached to the Questionnaire. Claimant further objects on the ground that the information

requested by this question and its sub-parts is equally available to the Debtor in that it may be

derived from Claimant's discoverable medical reports attached to the Questionnaire. Claimant

further objects to the Discovery Questionnaire to the extent that it seeks disclosure of any privileged

communication between Claimant, and/or a representative of Claimant, and any attorney for

Claimant, and/or a representative of any attorney for Claimant. In addition, pursuant to Federal Rule

of Civil Procedure 26(b)(3), Claimant objects to the Discovery Questionnaire to the extent that it

seeks disclosure of the work product of any attorney for Claimant, including but not limited to the

mental impressions, conclusions, opinions or legal theories of any attorney or other representative

of Claimant.

2.    **Subsection 1(a)-(f) - Condition Being Alleged.** Claimant objects to this question and each

of its subparts (a-f) on the ground that it exceeds the scope of discovery in that it seeks information

not relevant to the estimation proceeding, and information from experts that is non-discoverable and

is subject to the consulting expert and work product privileges. Claimant further objects on the

ground that the information requested by this question and its sub-parts is equally available to the

Debtor in that it may be derived from the claimant's discoverable medical reports attached to the

Questionnaire. Subject to and without waiving the foregoing, please see Claimant's Questionnaire



WR GRACE PIQ 68779-0062

responses and the documents attached hereto.


3.     **Subsection 2 - Information Regarding Diagnosis.**


a.     Claimant objects to Part II, Subsection 2 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, seeks information from experts that is non-discoverable, and seeks information that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Claimant further objects to this question to the extent that it purports to require Claimant to gather and summarize information already contained in documents provided with Claimant's Questionnaire answers, and is, therefore, obtainable with equal or greater facility by the Debtors. Claimant's diagnosis of an asbestos-related condition may be based on one or more diagnostic test(s), pathology report(s) or physical examination(s). Therefore, asking Claimant to state a "date of diagnosis" is vague and ambiguous. Subject to and without waiving the foregoing, in response to Part II, Subsection 2, Claimant has provided the date of the medical report prepared by Claimant's treating physician regarding Claimant's asbestos-related disease as needed to establish the elements of Claimant's claim under state law and has answered the questions regarding such doctor, if such information was readily available. Claimant has attached to this Questionnaire a copy of such physician's report along with any available x-ray readings, pulmonary function test reports ("PFT") and/or pathology reports considered by Claimant's doctor in forming his/her opinion in connection with Claimant's Asbestos Lawsuit. In addition to specifying and attaching a copy of the records from which the answer to Part II, subsection 2 may be derived or ascertained and without waiving



WR GRACE PIQ 58778-0063

Claimant's right to do so pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Claimant has set out in the Questionnaire response the information that is contained in the medical reports and that was readily available to Claimant's attorney.

Claimant further objects to the following questions in Part II, Subsection 2 regarding Claimant's relationship to the diagnosing doctor on the ground that these questions are violative of the attorney-client communication and/or attorney work product privileges, leading, harassing and seek information that is not relevant to the proceeding.  Claimant has additional, specific objections for the questions noted below.

**With respect to your relationship to the diagnosing doctor, check all applicable boxes:**

Was the diagnosing doctor your personal physicians?     ☐     Yes

☐     No

**Further, Claimants specifically objects to this question on the ground that it is vague and ambiguous.**

Was the diagnosing doctor paid for the diagnostic services that he/she performed?

☐     Yes   ☐     No

If yes, please indicate who paid for the services performed:

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor?   ☐ Yes   ☐No

**Further, Claimants specifically objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work products privileges is**



WR GRACE  PIQ  66779-0064

misleading and biased and cannot be fairly or completely answered with a "yes" or "no".

Was the diagnosing doctor referred to you by counsel?        ◻        Yes        ◻

      No

**Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privilege.**

Are you aware of any relationship between the diagnosing doctor and your legal counsel?

    ◻        Yes        ◻        No

**Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges.**

*If yes, please explain:*

_____

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

4.        **Subsection 3 - Information Regarding Chest X-Ray (Location of X-Ray)**

Claimant objects to Part II, Subsection 3 on the ground that it is harassing, and exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, seeks information from experts that is non-discoverable, and seeks information that is subject to the consulting expert and work product privileges. Claimant further objects to this question on the ground that it is vague and ambiguous in that Claimant



WR GRACE PIQ 58779-0065

may have had multiple chest x-rays taken that do not change or conflict with Claimant's initial diagnosis of an asbestos-related condition and it would be duplicative, unduly burdensome and harassing to require Claimant to complete a separate Part II for each chest x-ray.

Subject to and without waiving the foregoing, please refer to Claimant's deposition, if available, and any medical records attached hereto.

5.    **Subsection 4 – Information Regarding Chest X-Ray Reading (Results of X-Ray)**

a.    Claimant objects to Part II, Subsection 4 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, information from experts is non-discoverable, and information that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Additionally, Claimant objects to this question on the ground that it is duplicative of other questions herein, and thus is unduly burdensome. Claimant objects to this question on the ground that it is vague and ambiguous in that Claimant may have had multiple chest x-rays taken that do not change or conflict with Claimant's initial diagnosis of an asbestos-related condition and it would be duplicative, unduly burdensome and harassing to require Claimant to complete a separate Part II for each chest x-ray. Subject to and without waiving the foregoing, in response to Part II, subsection 4, Claimant has provided information regarding Claimant's certified B-reader report considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit. Claimant has set out



WR GRACE PIQ 68779-0066

in the Questionnaire response the information relating to Claimant's certified B-reader report.

b.     Claimant objects to Part II, subsection 4 of the Discovery Questionnaire as violative of the attorney-client communication and/or attorney work product privileges to the extent that it asks: "if Claimant retained counsel in order to receive any of the services performed by the diagnosing doctor;" if "the diagnosing doctor was referred to you by counsel"; and if Claimant is "aware of any relationship between the diagnosing doctor and your legal counsel". Claimant further objects to the following questions in Part II, Subsection 4 regarding Claimant's relationship to the reader on the ground that these questions are leading, harassing, vague and seek information that is not relevant to the proceeding. Claimant has additional, specific objections for the questions noted below.

**With respect to your relationship to the reader, check all applicable boxes:**

Was the reader paid for the diagnostic services that he/she performed?     ☐

     Yes   ☐     No

*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the reader?

    ☐     Yes   ☐     No

**Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communications and/or attorney work product privileges, is misleading and biased and cannot be fairly or completely answered with a "yes" or "no."**

Was the reader referred to you by counsel?   ☐     Yes   ☐     No



WR GRACE PIQ 66779-0067

**Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges.**

Are you aware of any relationship between the reader and your legal counsel?

☐   Yes   ☐   No

**Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges.**

*If yes, please explain:*

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

6.   **Subsection 5 - Information Regarding Pulmonary Function Test**

a.      Claimant objects to Part II, Subsection 5 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, that is non-discoverable, and that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Additionally, Claimant objects to this question to the extent that it purports to require Claimant to gather and summarize information contained in documents already provided herewith, and is thus obtainable with equal or greater facility by the Debtor. Subject to and without waiving the foregoing, in response to Part II, Subsection 5, Claimant has provided information regarding Claimant's pulmonary function test ("PFT") considered by Claimant's



WR GRACE PIQ 56779-0068

medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit. Claimant has set out in the Questionnaire response the information relating to Claimant's PFT report that was readily available to Claimant's counsel in electronic form.


    b.    Claimant objects to Part II, subsection 5 of the Discovery Questionnaire as violative of the attorney-client communication and/or attorney work product privileges to the extent that it asks: "if Claimant retained counsel in order to receive any of the services performed by the diagnosing doctor;" if "the diagnosing doctor was referred to you by counsel"; and if Claimant is "aware of any relationship between the diagnosing doctor and your legal counsel". Claimant further objects to the following questions in Part II, Subsection 5 regarding Claimant's relationship to the doctor or clinician who performed the pulmonary function test on the ground that these questions are leading, harassing and seek information that is not relevant to the proceeding. Claimant has additional, specific objections for the questions noted below.

---

**With respect to your relationship to the doctor or clinician who performed the pulmonary function test, check all applicable boxes:**

If the test was performed by a doctor, was the doctor your personal physician?

    ☐ Yes ☐   No

**Further, Claimant specifically objects to this question on the ground that it is vague and ambiguous.**

Was the testing doctor and/or clinician paid for the diagnostic services that he/she performed? ☐ Yes ☐    No

    *If yes, please indicate who paid for the services performed:*


WR GRACE PIQ 55779-0069

Did you retain counsel in order to receive any of the services performed by the testing doctor.

or clinician? ☐ Yes ☐      No

**Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communications and/or attorney work product privileges, is misleading and biased and cannot be fairly or completely answered with a "yes" or "no."**

Was the testing doctor or clinician referred to you by counsel?      ☐Yes ☐ No

**Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges.**

Are you aware of any relationship between either the doctor or clinician and your legal

counsel? ☐ Yes ☐      No

**Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges.**

*If yes, please explain:*

_____

c.    Claimant objects to the following questions in Part II, Subsection 5 regarding Claimant's relationship to the doctor interpreting the results of the pulmonary function test on the ground that these questions are violative of the attorney-client communication and/or attorney work product privileges, leading, harassing and seek information that is not relevant to the proceeding. Claimant has additional, specific objections for the questions noted below.

_____



WR GRACE PIQ 56779-0070

**With respect to your relationship to the doctor interpreting the results of the pulmonary function test, check all applicable boxes:**

Was the doctor your personal physician?        ☐    Yes    ☐    No

**Further, Claimant specifically objects to this question on the ground that it is vague and ambiguous.**

Was the doctor paid for the services that he/she performed?                    ☐

    Yes    ☐    No

*If yes, please indicate who paid for the services performed:*


Did you retain counsel in order to receive any of the services performed by the doctor?

        ☐    Yes    ☐    No

**Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communications and/or attorney work product privileges, is misleading and biased and cannot be fairly or completely answered with a "yes" or "no."**

Was the doctor referred to you by counsel?    ☐    Yes    ☐    No

**Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges.**

Are you aware of any relationship between either the doctor or clinician and your legal counsel?    ☐    Yes    ☐    No

**Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges.**

    *If yes, please explain:*



WR GRACE PIQ 68779-0071

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

**7.     Subsection 6 – Information Regarding Pathology Reports**

a.     Claimant objects to Part II, Subsection 6 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, that is non-discoverable, and that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Claimant further objects to this question to the extent that it purports to require Claimant to gather and summarize information contained in documents already provided herewith, and is thus obtainable with equal or greater facility by the Debtor. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

b.     Claimant objects to Part II, subsection 6 of the Discovery Questionnaire as violative of the attorney-client communication and/or attorney work product privileges to the extent that it asks: "if Claimant retained counsel in order to receive any of the services performed by the diagnosing doctor;" if "the diagnosing doctor was referred to you by counsel"; and if Claimant is "aware of any relationship between the diagnosing doctor and your legal counsel". Claimant further objects to the following questions in Part II, Subsection 4 regarding Claimant's relationship to the doctor issuing the pathology report on the ground that these questions are leading, harassing and seek information



WR GRACE PIQ 56779-0072

that is not relevant to the proceeding. Claimant has additional, specific objections for the questions

noted below.

---

**With respect to your relationship to the doctor issuing the pathology report, check all**

**applicable boxes:**

Was the doctor your personal physician?             ☐      Yes    ☐      No

Further, Claimant specifically objects to this question on the ground that it is vague

and ambiguous.

Was the doctor paid for the services that he/she performed?                     ☐

Yes      ☐      No

*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the doctor?

☐      Yes    ☐      No

Further, Claimant specifically objects to this question on the ground that it is violative

of the attorney-client communications and/or attorney work product privileges, is

misleading and biased and cannot be fairly or completely answered with a "yes" or

"no."

Was the doctor referred to you by counsel?    ☐      Yes    ☐      No

Further, Claimant objects to this question on the ground that it is violative of the

attorney-client communication and/or attorney work product privileges.

WR GRACE PIQ 58779-0073

Are you aware of any relationship between either the doctor or clinician and your legal

counsel?    ☐  Yes        ☐  No

*If yes, please explain:*

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses

and documents attached hereto.

8.    **Subsection 7 – Medical Treatment From Doctor for Condition Alleged**

Claimant objects to this question on the ground that it exceeds the scope of discovery in that it

seeks information that is not relevant to the subject matter of the estimation proceeding, that is non-

discoverable, and that is subject to expert, work product and attorney-client privileges.  Claimant

further objects to this question as it is harassing.  Additionally, Claimant objects to Part II, subsection

7 of the Discovery Questionnaire to the extent that it asks if Claimant "retained counsel in order to

receive any of the services performed by the diagnosing doctor."

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and

documents attached thereto.

**PART III:  DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS**



WR GRACE PIQ 56779-0074

Claimant objects to Part III in its entirety on the ground that it is onerous, unduly burdensome and harassing in that it would require a great amount of time, labor and expense to create a chart of exposure to Debtor's products in the format requested by Debtor. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Subject to and without waiving the foregoing objections, the information responsive to this request may be derived from the documents attached to Claimant's Questionnaire, including, where available, Claimant's Answers to Interrogatories filed in connection with Claimant's Asbestos Lawsuit (referred to in Questionnaire response as "answers to consolidated interrogatories").

## PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

1.    Claimant objects to Part IV, question 1 to the extent that it is vague and ambiguous with regard to the use of the terms "contact/proximity" and "injured person". Claimant further objects to this question on the ground that it implicitly asserts unproven conclusions as established facts. Specifically, Claimant may have been injured by exposure to Grace products as a result of contact or proximity to another person, but not necessarily an "injured" person. To the best of Claimant's ability, Claimant understands the question to ask whether Claimant's injury is caused solely by contact/proximity with another person. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

2.    Claimant objects to Part IV, question 2 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other **Injured** Person". Specifically, there may not be an


WR GRACE PIQ 68778-0076

"Other **Injured** Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

3.      Claimant objects to Part IV, question 3 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an "Other **Injured** Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

4.      Claimant objects to Part IV, question 4 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an "Other **Injured** Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this



WR GRACE PIQ 56779-0078

Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

5.      Claimant objects to Part IV, question 5 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an "Other **Injured** Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Claimant also objects to this question on the ground that Claimant may not know the specific day, month, and year of another person's exposure and therefore cannot answer the question. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

6.      Claimant objects to Part IV, question 6 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an "Other **Injured** Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope



of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.


7.    Claimant objects to Part IV, question 7 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an "Other **Injured** Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.


8.    Claimant objects to Part IV, question 8 to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Claimant further objects to the use of the term "Nature" in that it is vague and ambiguous. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.


9.    Claimant objects to Part IV, question 9 to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Claimant further objects to the use of the term "Nature" in that it is vague and



WR GRACE  PIQ  58779-0078

ambiguous. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

10.    Claimant objects to Part IV, question 10 to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Additionally, Claimant objects to this question on the ground that Claimant may not recall the exact day, month, and year his or her exposure began or ended, and, in that regard, this question is unduly burdensome. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

## PART V: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

Claimant objects to Part V as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Claimant objects to this interrogatory on the ground that it is unduly burdensome, onerous and harassing in that it would require great amount of time, labor and expense to create a chart of exposure in the format requested by Debtor and then to create a separate chart for each party against which Claimant has filed an asbestos lawsuit or claim. Claimant further objects to Part V to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor.

Claimant further objects to Part 5  to the extent that it requires Claimant to provide any information regarding Claimant's exposure to other manufacturer's asbestos products as evidence of  such exposures are not relevant or admissible under Illinois law. *Lipke v. Celotex,*    153



WR GRACE PIQ 56779-0079

Ill.App.3d 498, 505 N.E.2d 1213, 1220, 1221 (1st Dist. 1987), app. dismissed, 536 N.E.2d 327

(1990), *Nolan v. Weil-McLain*, 2006 Ill. App. LEXIS 558; *Kochan v. Owens* Corning, 610 N.E.

683 (1993),  *Spain v. Owens Corning*,  304 Ill. App. 3d 356, 710 N.E.2d 528;  237 Ill. Dec. 898

(1999),   *Tragarz v. Keene*  980 F. 2d 411 (7th cir. 1992). Liability for asbestos injuries in

Illinois is joint and several.  735 ILCS 2-1118 (2004).  Claimant's lawsuit is filed in Illinois, and

Illinois law controls the relevance and admissibility of evidence, particularly as here, where such

exposure evidence has no relevance to the estimation hearing.


## PART VI:  EMPLOYMENT HISTORY


   Claimant objects to Part VI on the ground that it is unduly burdensome and harassing and it would

require a great amount of time, labor and expense to complete this section of the Questionnaire in

the format requested by Debtors.  Claimant further objects to this question   because it requires

Claimant to compile or summarize information from Claimant's Social Security records that is

obtainable with equal or greater facility by the Debtor.  Claimant further objects to providing

information, including but not limited to, the occupation and industry codes for employers or job

sites where Claimant has not alleged any asbestos exposure as it exceeds the scope of permissible

discovery in that it is not relevant to the subject matter of the estimation proceeding, and is harassing

to Claimant.


   Subject to and without waiving the foregoing objections, the information responsive to this

request may be derived from the documents attached to Claimant's Questionnaire, including, where



WR GRACE PIQ 56779-0080

available, Claimant's Itemized Statement of Earnings prepared by the Social Security Administration, Plaintiff's Answers to Interrogatories, and Claimant's deposition, if available.

## PART VII:  LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA

### Subsection a. - Litigation

1.      Claimant objects to Part VII, Subsection a, question 1 as it is overly broad in that it is not limited to *asbestos- related personal injury* lawsuits; and further, it is not limited to the lawsuit in which Debtor was sued.  Claimant responds to this entire Subsection a (questions 1 through 7) as if the question were so limited.  Claimant further objects to this subpart to the extent that it requires Claimant to summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire.  Responding to Part VII, Subsection a in the format in Debtor's Questionnaire is harassing and unduly burdensome.  Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.  Claimant's counsel does not represent Claimant in a lawsuit regarding silica.

2.      Claimant objects to Part VII, Subsection a, question 2, to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Claimant further objects to this subpart as it is overly broad in that it is not limited to *asbestos- related personal injury* lawsuits.  Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.



WR GRACE PIQ 56779-0081

3.      Claimant objects to Part VII, Subsection a, question 3 on the ground that it is harassing in that Grace knows equally as well as Claimant whether or not it was named as a defendant in Claimant's lawsuit, if any.  Claimant objects to this subpart as it is overly broad in that it is not limited to *asbestos- related personal injury* lawsuits. Further, Claimant objects to this subpart on the ground that it exceeds the permissible scope of discovery in that it seeks information that is not relevant to the estimation proceeding.  Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

4.      Claimant objects to Part VII, Subsection a, question 4 on the ground that it seeks information that is neither relevant nor necessary to the estimation proceeding.  Whether a particular defendant has been dismissed has no bearing on Debtor's several share of the liability.  Additionally, Claimant objects on the ground that it is unduly burdensome to provide the basis for dismissal for each of the dismissed defendants, if any.  Claimant further objects to this subpart as it is overly broad in that it is not limited to *asbestos- related personal injury* lawsuits.  Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

5.      Claimant objects to Part VII, Subsection a, question 5 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant or necessary to the estimation proceeding.  The existence and amount of any verdict or judgment against any defendant other than Debtor has no bearing on Debtor's several share of the liability.  Claimant objects to this subpart as it is overly broad in that it is not limited to *asbestos- related personal injury* lawsuits.  Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.



WR GRACE PIQ 58779-0082

6.     Claimant objects to Part VII, Subsection a, question 6 and each of its subparts regarding settlements reached in the lawsuit as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding and requests privileged or confidential information.  Specifically, the terms of the settlement agreements, if any, including the settlement amounts, if any, are irrelevant to an aggregate estimate of Debtor's liability. Claimant further objects to this subpart as it is overly broad to the extent that it seeks information beyond *asbestos- related personal injury* lawsuits.  Settlements with other defendants are irrelevant to Debtor's joint and several share of the liability, and Debtor would get a set-off or credit for such settlements only for the cases that were tried all the way to judgment, which clearly will not happen in the context of the present proceeding. Further, for a majority of defendants, any settlement agreements are subject to a confidentiality agreement.

Claimant specifically objects to providing the "disease or condition alleged" and the "the disease or condition settled" (Part VII.a.6©) and (d)) on the ground that it is ambiguous and harassing. Claimant filed a lawsuit alleging Claimant suffered injuries proximately caused by Claimant's exposure to asbestos-containing products designed, manufactured and sold by the Defendants named in the lawsuit, and any settlements were related to those allegations.  Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses.

7.     Claimant objects to Part VII, Subsection a, question 7 on the ground that it is overly broad and unduly burdensome.  Further, Claimant's deposition testimony is duplicative of information already provided herein.    Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.



WR GRACE PIQ 56779-0083

**Subsection b – Claims**

1.      Claimant objects to Part VII, Subsection b, question 1 as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding and requests privileged or confidential information.  Claimant further objects that responding to Part VII, Subsection b in the format in Debtors' Questionnaire is harassing and unduly burdensome. Additionally, Claimant objects on the ground that this question is overly broad in that it is not limited to *asbestos-related personal injury* claims. Claimant responds to this entire subsection b (questions 1 through 7) as if the questions were so limited.

2.      Claimant objects to Part VII, Subsection b, questions 2 and 3 on the ground that it seeks information that is neither relevant nor necessary to the estimation proceeding.  The date and entity against whom a claim was submitted has no bearing on Debtor's joint and several share of the liability.  Additionally, Claimant objects on the ground that this question is overly broad in that it is not limited to *asbestos- related personal injury* claims.

3.      Claimant objects to Part VII, Subsection b, questions 5 and 6 regarding settlements with an asbestos trust as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding and requests privileged or confidential information.  The settlement amounts are not relevant to an <u>aggregate</u> estimate of Debtor's liability or to Debtor's joint and several share of the liability.  Additionally, Claimant objects on the ground that this question is overly broad in that it is not limited to *asbestos- related personal injury* claims.

4.      Claimant objects to Part VII, Subsection b, question 7 on the ground that it seeks information that is neither relevant nor necessary to the estimation proceeding.  Whether a particular defendant



WR GRACE PIQ 66779-0084

has been dismissed has no bearing on Debtor's joint and several share of the liability. Additionally, Claimant objects on the ground that it is unduly burdensome to provide the basis for dismissal for each of the dismissed defendants, if any, and it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits.

## PART VIII: CLAIMS BY DEPENDENTS OR RELATED PERSONS

Claimant objects to Part VIII on the ground that information regarding dependents or related persons who sued the Debtors before April 2, 2001 is equally available to Debtors. Subject to and without waiving the foregoing, Claimant has provided information regarding Claimant's spouse where available. Please see attached interrogatory responses and Debtors' own records for information regarding dependents.


WR GRACE PIQ 58779-0085

## QUESTIONNAIRE RESPONSES

Claimant hereby incorporates by reference all of the foregoing general and specific objections into Claimant's Questionnaire responses and has provided the following responses subject to those objections. Because the burden of deriving or ascertaining the answer is substantially the same for Debtor as for Claimant, Claimant has specified in Claimant's Questionnaire response the document(s) from which the answer may be derived, including but not limited to Claimant's medical records, Claimant's Answers to Interrogatories filed in connection with Claimant's Asbestos Lawsuit (referred to in Questionnaire response as "answers to interrogatories"), Claimant's Itemized Statement of Earnings prepared by the Social Security Administration (referred to in Questionnaire responses as "Social Security Print Out") and Claimant's deposition.

Respectfully submitted,

Kathy Byrne
Cooney and Conway
120 N. LaSalle St., 30th Floor
Chicago, IL 60602
(312) 236-6166
(312) 236-3029 - Fax



LAW OFFICES

# COONEY & CONWAY

30TH FLOOR

120 NORTH LASALLE STREET

CHICAGO, ILLINOIS 60602

(312) 236-6166

FAX (312) 236-3029

MAINDESK@COONEYCONWAY.COM

ROBERT J. COONEY (1924-1995)
KEVIN J. CONWAY
ROBERT J. COONEY, JR.
JOHN D. COONEY
WILLIAM R. FAHEY

JAMES T. NEWMAN
TIMOTHY R. OCASEK
DANIEL T. STANTON
JAMES E. OCASEK
JAMES R. HOPKINSON
KATHY BYRNE
MICHAEL D. MULVIHILL
MICHAEL J. LUBECK
MICHAEL T. EGAN
LAWRENCE R. WEISLER
TIMOTHY G. MARTIN

July 11, 2006

Rust Consulting, Inc.
Claims Processing Agent
Re: W.R. Grace & Co. Bankruptcy
201 S. Lyndale Ave.
Faribault, MN 55021

RE: W.R. Grace Co. - Cooney and Conway Questionnaires

To Whom it May Concern:

Attached, please find a CD with completed questionnaires and supporting documents for the cases found on Exhibit 1. We have maintained original copies, which of course remain available to you at your request.

If you require any additional information, please do not hesitate to contact John Cooney, Bill Fahey or myself.

Very truly yours,

COONEY AND CONWAY

Kathy Byrne
KB/wca

WR GRACE PIQ 58779-0087

**FedEx** US Airbill
Express

45
52

**1 From** This portion can be removed for Recipient's records.

Date: 7/11/06

FedEx Tracking Number: 8558 7914 0916

Sender's Name: William Ayres

Company: CADNEY & CONWAY

Phone: 312 236-6166

Address: 120 N LA SALLE ST FL 30

City: CHICAGO   State: IL   ZIP: 60602

**2 Your Internal Billing Reference**: SB-0496   00-04945

**3 To**

Recipient's Name: Claims Processing Agent   Re: WR Grace etc. bankruptcy

Company: Rust Consulting Inc.

Address: 201 S Lyndale Ave

City: Faribault   State: MN   ZIP: 55021

8558 7914 0916

03292252272

**4a Express Package Service**  *Packages up to 150 lbs.*

- FedEx Priority Overnight
- FedEx Standard Overnight
- FedEx First Overnight
- FedEx 2Day
- FedEx Express Saver

**4b Express Freight Service**  *Packages over 150 lbs.*

- FedEx 1Day Freight
- FedEx 2Day Freight
- FedEx 3Day Freight

**5 Packaging**

- FedEx Envelope
- FedEx Pak
- FedEx Box
- FedEx Tube
- Other

**6 Special Handling**

- SATURDAY Delivery
- HOLD Weekday at FedEx Location
- HOLD Saturday at FedEx Location

Does this shipment contain dangerous goods?
- No
- Yes (Shipper's Declaration not required)
- Yes (As per attached Shipper's Declaration)
- Dry Ice   Dry Ice, 9, UN1845   ___ x ___ kg
- Cargo Aircraft Only

**7 Payment** *Bill to:*

- Sender
- Recipient
- Third Party
- Credit Card
- Cash/Check

Total Packages   Total Weight   Total Declared Value   Total Charges

**8 NEW Residential Delivery Signature Options**

- No Signature Required
- Direct Signature
- Indirect Signature

fedex.com 1.800.GoFedEx 1.800.463.3339

RECIPIENT: PEEL HERE

Invalid Image File: https://secureweb.rustconsulting.com/WRGracePIQWebRepository/testpage.aspx?Documentid=PIQ056779&ImageId=Thumbs.db
Absolute Filename: https://secureweb.rustconsulting.com/WRGracePIQWebRepository/testpage.aspx?Documentid=PIQ056779&ImageId=Thumbs.db
Relative Filename: https://secureweb.rustconsulting.com/WRGracePIQWebRepository/testpage.aspx?Documentid=PIQ056779&ImageId=Thumbs.db



WR GRACE PIQ 68800-0001

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

RECD JUL 1 2 2006

10315607020844
RE:
Cooney & Conway
120 North LaSalle Street, 30th Floor
Chicago IL 60602

**REDACTED**



000303020844



WR GRACE PIQ 56800-0002

# W. R. Grace
## Asbestos Personal Injury
## Questionnaire

WR GRACE PIQ 66800-0003

[THIS PAGE INTENTIONALLY LEFT BLANK.]


WR GRACE PIQ 56800-0004

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

YOU HAVE RECEIVED THIS QUESTIONNAIRE BECAUSE GRACE BELIEVES THAT YOU HAD SUED ONE OR MORE OF THE DEBTORS LISTED IN APPENDIX A ATTACHED TO THIS QUESTIONNAIRE BEFORE GRACE FILED FOR BANKRUPTCY ON APRIL 2, 2001 FOR AN ASBESTOS-RELATED PERSONAL INJURY OR WRONGFUL DEATH CLAIM, AND THAT CLAIM WAS NOT FULLY RESOLVED.

IF YOU HAVE SUCH A CLAIM, YOU MUST COMPLETE AND SUBMIT THIS QUESTIONNAIRE BY JANUARY 12, 2006 TO RUST CONSULTING, INC., THE CLAIMS PROCESSING AGENT, AT ONE OF THE FOLLOWING ADDRESSES:

| IF SENT BY U.S. MAIL | IF SENT BY FEDERAL EXPRESS, UNITED PARCEL SERVICE, OR A SIMILAR HAND DELIVERY SERVICE |
|---|---|
| RUST CONSULTING, INC. CLAIMS PROCESSING AGENT RE: W.R. GRACE & CO. BANKRUPTCY P.O. BOX 1620 FARIBAULT, MN 55021 | RUST CONSULTING, INC. CLAIMS PROCESSING AGENT RE: W.R. GRACE & CO. BANKRUPTCY 201 S. LYNDALE AVE. FARIBAULT, MN 55021 |

A QUESTIONNAIRE (AND ANY AMENDMENTS OR ADDITIONAL DOCUMENTS IN SUPPORT OF THE QUESTIONNAIRE) WILL NOT BE CONSIDERED UNLESS RECEIVED BY RUST CONSULTING, INC. BY JANUARY 12, 2006.

THIS QUESTIONNAIRE IS AN OFFICIAL DOCUMENT APPROVED BY THE COURT IN CONNECTION WITH ESTIMATING GRACE'S ASBESTOS-RELATED PERSONAL INJURY AND WRONGFUL DEATH CLAIMS AS A WHOLE. THE QUESTIONNAIRE IS BEING USED BY W. R. GRACE AS A MEANS TO SEEK INFORMATION ABOUT YOUR ASBESTOS CLAIM. BY TIMELY RETURNING THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE, GRACE, THE OFFICIAL COMMITTEES, AND THE FUTURE CLAIMANTS REPRESENTATIVE WILL SEEK TO PRIORITIZE THE PROCESSING OF YOUR CLAIM UNDER ANY TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION.

THE COURT HAS ORDERED THAT, AS PART OF THE DISCOVERY PROCESS, ALL HOLDERS OF PRE-PETITION ASBESTOS PERSONAL INJURY CLAIMS MUST COMPLETE AND RETURN THIS QUESTIONNAIRE. THUS, FAILURE TO TIMELY RETURN THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE MAY RESULT IN SANCTIONS AND/OR OTHER RELIEF AVAILABLE UNDER APPLICABLE FEDERAL RULES.

WR GRACE PIQ 66800-0006

BECAUSE YOUR CLAIM WILL BE EVALUATED IN ACCORDANCE WITH THE TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION, COMPLETION OF THIS QUESTIONNAIRE DOES <u>NOT</u> MEAN THAT YOUR CLAIM WILL EITHER BE ALLOWED OR PAID. TO THE EXTENT YOU ATTACH TO THIS QUESTIONNAIRE DOCUMENTS ALSO NEEDED BY THE TRUST TO PROCESS YOUR CLAIM, SUCH DOCUMENTS WILL BE PROVIDED TO THE TRUST AND YOU WILL NOT NEED TO RESUBMIT THEM.

i



WR GRACE PIQ 69880-0006

## INSTRUCTIONS

### A. GENERAL

1. This Questionnaire refers to any lawsuit that you filed before April 2, 2001 for an "asbestos-related personal injury or wrongful death claim." This term is intended to cover any lawsuit alleging any claim for personal injuries or damages that relates to: (a) exposure to any products or materials containing asbestos that were manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present affiliates, or any of the predecessors of any of the Debtors or any of their respective past or present affiliates), or (b) exposure to vermiculite mined, milled or processed by the Debtors (or any of their respective past or present affiliates, any of the predecessors of any of the Debtors or any of their predecessors' respective past or present affiliates). It includes claims in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law or equity, or admiralty for, relating to, or arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal injuries or other damages caused, or allegedly caused, directly or indirectly, and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors. It includes all such claims, debts, obligations or liabilities for compensatory damages such as loss of consortium, personal or bodily injury (whether physical, emotional or otherwise), wrongful death, survivorship, proximate, consequential, general, special, and punitive damages.

2. Your Questionnaire will be deemed filed only when it has been received by Rust Consulting Inc., the Claims Processing Agent, via U.S. Mail, Federal Express, United Parcel Service or a similar hand delivery service. A Questionnaire that is submitted by facsimile, telecopy or other electronic transmission will not be accepted and will not be deemed filed.

   Do not send any Questionnaire to the Debtors, counsel for the Debtors, the Future Claimants Representative, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Asbestos Property Damage Claimants, the Official Committee of Equity Security Holders, or such Committees' counsel. Questionnaires that are filed with or sent to anyone other than Rust Consulting, Inc. will be deemed not to have been submitted, and such Questionnaires will not be considered.

3. Your completed Questionnaire must (i) be written in English, and (ii) attach relevant supporting materials as instructed further below.

4. All holders of claims described on page i (and as described in further detail in Instruction A (1) above) are required to file this Questionnaire by Jan. 12, 2006. Your Questionnaire will be used in connection with the estimation hearing to be conducted by the Court pursuant to the Estimation Procedures Order (a copy of which is attached as Appendix B).

5. Any subsequent amendment to the Questionnaire will not be considered for any purpose unless received by Jan. 12, 2006.

### B. PART I -- Identity of Injured Person and Legal Counsel

Respond to all applicable questions. If you are represented by a lawyer, then in Part I (b), please provide your lawyer's name and the name, telephone number and address of his/her firm. If you are represented by a lawyer, he/she must assist in the completion of this Questionnaire. Also, if you would prefer that the Debtors send any additional materials only to your lawyer, instead of sending such materials to you, then check the box indicating this in Part I (b).

All references to "you" or the like in Parts I through X shall mean the injured person. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete this Questionnaire.

### C. PART II -- Asbestos-Related Condition(s)

Please indicate all asbestos-related medical conditions for which you have been diagnosed. To complete questions related to injuries, medical diagnoses, and/or conditions, please use the following categories of customarily diagnosed conditions:

- Mesothelioma
- Asbestos-Related Lung Cancer
- Other Cancer (colon, laryngeal, esophageal, pharyngeal, or stomach)
- Clinically Severe Asbestosis
- Asbestosis
- Other Asbestos Disease

If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

Supporting Documents for Diagnosis: This Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis.

WR GRACE PIQ 56800-0007

**X-rays and B-reads:**  Please attach all x-ray readings and reports.  You may, but are not required to, attach chest x-rays.  The court, however, has ruled that Grace may seek access to chest x-rays upon request.

**Pulmonary Function Tests:**  Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based.

ii

WR GRACE PIQ 56600-0006

**D.**        **PART III – Direct Exposure to Grace Asbestos-Containing Products**

In Part III, please provide the requested information for the job and site at which you were exposed to Grace asbestos-containing products. Indicate the dates of exposure to each Grace asbestos-containing product. If your exposure was a result of your employment, use the list of occupation and industry codes below to indicate your occupation and the industry in which you worked at each site. If you allege exposure to Grace asbestos-containing products at multiple sites, the Court has ordered that you must complete a separate Part III for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

Attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease.

## Occupation Codes

| | |
|---|---|
| 01. Air conditioning and heating installer/maintenance | 31. Iron worker |
| 02. Asbestos miner | 32. Joiner |
| 03. Asbestos plant worker/asbestos manufacturing worker | 33. Laborer |
| 04. Asbestos removal/abatement | 34. Longshoreman |
| 05. Asbestos sprayer/spray gun mechanic | 35. Machinist/machine operator |
| 06. Assembly line/factory/plant worker | 36. Millwright/mill worker |
| 07. Auto mechanic/bodywork/brake repairman | 37. Mixer/bagger |
| 08. Boilermaker | 38. Non-asbestos miner |
| 09. Boiler repairman | 39. Non-occupational/residential |
| 10. Boiler worker/cleaner/inspector/engineer/installer | 40. Painter |
| 11. Building maintenance/building superintendent | 41. Pipefitter |
| 12. Brake manufacturer/installer | 42. Plasterer |
| 13. Brick mason/layer/hod carrier | 43. Plumber – install/repair |
| 14. Burner operator | 44. Power plant operator |
| 15. Carpenter/woodworker/cabinetmaker | 45. Professional (e.g., accountant, architect, physician) |
| 16. Chipper | 46. Railroad worker/carman/brakeman/machinist/conductor |
| 17. Clerical/office worker | 47. Refinery worker |
| 18. Construction - general | 48. Remover/installer of gaskets |
| 19. Custodian/janitor in office/residential building | 49. Rigger/stevedore/seaman |
| 20. Custodian/janitor in plant/manufacturing facility | 50. Rubber/tire worker |
| 21. Electrician/inspector/worker | 51. Sandblaster |
| 22. Engineer | 52. Sheet metal worker/sheet metal mechanic |
| 23. Firefighter | 53. Shipfitter/shipwright/ship builder |
| 24. Fireman | 54. Shipyard worker (md. repair, maintenance) |
| 25. Flooring installer/tile installer/tile mechanic | 55. Steamfitter |
| 26. Foundry worker | 56. Steelworker |
| 27. Furnace worker/repairman/installer | 57. Warehouse worker |
| 28. Glass worker | 58. Welder/blacksmith |
| 29. Heavy equipment operator (includes truck, forklift, & crane) | 59. Other |
| 30. Insulator | |

WR GRACE PIQ 56800-0009

| Industry Codes | |
|---|---|
| 001.    Asbestos abatement/removal | 109.  Petrochemical |
| 002.    Aerospace/aviation | 110.  Railroad |
| 100.    Asbestos mining | 111.  Shipyard-construction/repair |
| 101.    Automotive | 112.  Textile |
| 102.    Chemical | 113.  Tire/rubber |
| 103.    Construction trades | 114.  U.S. Navy |
| 104.    Iron/steel | 115.  Utilities |
| 105.    Longshore | 116.  Grace asbestos manufacture or milling |
| 106.    Maritime | 117.  Non-Grace asbestos manufacture or milling |
| 107.    Military (other than U.S. Navy) | 118.  Other |
| 108.    Non-asbestos products manufacturing | |

WR GRACE PIQ 66600-0010

**E.    PART IV – Indirect Exposure to Grace Asbestos-Containing Products**

In Part IV, please provide the information requested for any injury alleged to have been caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person. If you allege exposure through contact/proximity with multiple injured persons, please complete a separate Part IV for each injured person. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.

**F.    PART V – Exposure to Non-Grace Asbestos-Containing Products**

In Part V, please provide the requested information for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate Part V for each party. If exposure was in connection with your employment, use the list of occupation and industry codes in Part III to indicate your occupation and the industry in which you worked. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

**G.    PART VI – Employment History**

In Part VI, please provide the information requested for each industrial job you have held, other than jobs already listed in Parts III or V. Use the list of occupation and industry codes in the instructions to Part III to indicate your occupation and the industry in which you worked for each job. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**H.    PART VII – Litigation and Claims Regarding Asbestos and/or Silica**

In Part VII, please describe any lawsuits and/or claims that were filed by you or on your behalf regarding asbestos or silica.

**I.    PART VIII – Claims by Dependents or Related Persons**

Part VIII is to be completed only by dependents or related persons (such as spouse or child) of an injured person who sued the Debtors before April 2, 2001 for an asbestos-related personal injury or wrongful death claim against Grace not involving physical injury to him-/herself on account of his/her own exposure. One example of such a claim would be a claim for loss of consortium. If you are asserting such a claim, complete the entire Questionnaire, providing all information and documentation regarding the injured person.

**J.    PART IX – Supporting Documentation**

In Part IX, please mark the boxes next to each type of document that you are submitting with this Questionnaire. As indicated in the instructions to Parts II and III, this Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that (a) support or conflict with your diagnosis and/or (b) establish exposure to Grace asbestos-containing products as having a substantial causal role in the development of the medical diagnoses, and/or conditions claimed. Original documents provided to Grace will be returned within a reasonable time after its professionals and experts have reviewed the documents.

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation. Please indicate the documents for which you are seeking reimbursement and attach a receipt for such cost.

**K.    PART X – Attestation that Information is True, Accurate and Complete**

By signing Part X, you, the injured person, are attesting and swearing, under penalty of perjury, that, to the best of your knowledge, all of the information in this Questionnaire is true, accurate and complete. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete and sign Part X on behalf of the injured person.

The legal representative of the injured person must complete and sign Part X where indicated.

WR GRACE PIQ 56800-0011

## PART I: IDENTITY OF INJURED PERSON AND LEGAL COUNSEL

### GENERAL INFORMATION

1. **Name of Claimant:**                                      **2. Gender:** X Male  Female

    First  MI  Last

3. **Race (for purposes of evaluating Pulmonary Function Test results):** See Objection ............ ☐ White/Caucasian

    **REDACTED**                                                  ☐ African American

                                                                ☐ Other

4. **Last Four Digits of Social Security Number:**            **5. Birth Date:**

6. **Mailing Address:**

    Address City State/Province Zip/Postal Code

7. **Daytime Telephone Number:** ·············································································

### LAWYER'S NAME AND FIRM

1. **Name of Lawyer:** <u>Kathy Byrne</u>

2. **Name of Law Firm With Which Lawyer is Affiliated:** <u>Cooney and Conway</u>

3. **Mailing Address of Firm:** <u>120 N. LaSalle, Chicago, Illinois 60602</u>

                    Address            City            State/Province    Zip/Postal Code

4. **Law Firm's Telephone Number or Lawyer's Direct Line:** <u>(312) 236- 6166</u>

    ☒ Check this box if you would like the Debtors to send subsequent material relating to your claim
    to your lawyer, in lieu of sending such materials to you.

### CAUSE OF DEATH (IF APPLICABLE)

1. **Is the injured person living or deceased?** .................................................. X Living    Deceased
   **If deceased, date of death:** .................................................................. __ __ / __ __ / __ __ __ __

2. If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete
   the following:
        Primary Cause of Death (as stated in the Death Certificate):
        Contributing Cause of Death (as stated in the Death Certificate):

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the
instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received
diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II
for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the
initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1. Please check the box next to the condition being alleged:

    ☐ Asbestos-Related Lung Cancer          ☐ Mesothelioma

    ☒ Asbestosis                            ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)

    ☐ Other Asbestos Disease                ☐ Clinically Severe Asbestosis

    a. **Mesothelioma:** If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the
       following (check all that apply):
        ☐ diagnosis from a pathologist certified by the American Board of Pathology
        ☐ diagnosis from a second pathologist certified by the American Board of Pathology
        ☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial
           causal role in the development of the condition
        ☐ other (please specify):_____

1



WR GRACE PIQ 58800-0012

## PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

b.   **Asbestos-Related Lung Cancer:**  If alleging Asbestos-Related Lung Cancer, were you diagnosed with primary lung cancer based on the following (check all that apply):

☐   findings by a pathologist certified by the American Board of Pathology

☐   evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐   evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐   evidence of asbestosis determined by pathology

☐   evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐   evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐   diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐   a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐   other (please specify):_____

c.   **Other Cancer:**

(i)   If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐   colon          ☐   pharyngeal          ☐   esophageal          ☐   laryngeal

☐   stomach cancer

☐   other, please specify: _____

(ii)   Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☐   findings by a pathologist certified by the American Board of Pathology

☐   evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐   evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐   evidence of asbestosis determined by pathology

☐   a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☐   other (please specify): _____

2

WR GRACE PIQ 56600-0013

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

d. **Clinically Severe Asbestosis:** If alleging Clinically Severe Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating total lung capacity less than 65% predicted

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

e. **Asbestosis:** If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

☒ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☒ a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☒ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

3


WR GRACE PIQ 56800-0014

PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

f.   **Other Asbestos Disease:**  If alleging any asbestos-related injuries, medical diagnoses, and/or conditions other than those above, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ diagnosis determined by pathology

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  other than those described above

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEVl/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a pulmonary function test other than that discussed above

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☐ a CT Scan or similar testing

☐ a diagnosis other than those above

☐ other (please specify): _____


[REMAINDER OF PAGE INTENTIONALLY BLANK]

4



WR GRACE PIQ 56800-0015

**PART II.  ASBESTOS-RELATED CONDITION(S) (Continued)**

2.  **Information Regarding Diagnosis**
    Date of Diagnosis: ............................................................................................................... 02/24/1989

**Diagnosing Doctor's Name:** Dr. Peter Orris

**Diagnosing Doctor's Specialty:** Pulmonologist - Occupational Medicine

**Diagnosing Doctor's Mailing Address:** California Avenue at 15th Street
                                             Address

Chicago, IL 60608

City                                                    State/Province                          Zip/Postal Code
Diagnosing Doctor's Daytime Telephone Number: ......................................................... (312)650-6621

With respect to your relationship to the diagnosing doctor, check all applicable boxes:

Was the diagnosing doctor your personal physician? ....................................................... ☐ Yes  ☒ No

Was the diagnosing doctor paid for the diagnostic services that he/she performed? ................... ☒ Yes  ☐ No

*If yes, please indicate who paid for the services performed*: Self/Insurance

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor? .......... ☐ Yes  ☒ No

Was the diagnosing doctor referred to you by counsel? ................................................... ☐ Yes  ☒ No

Are you aware of any relationship between the diagnosing doctor and your legal counsel? ....................... ☐ Yes  ☒ No

*If yes, please explain:* _____

_____

Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine
at the time of the diagnosis? _____ ☒ Yes  ☐ No

Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the
diagnosis? _____ ☐ Yes  ☒ No

Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to
diagnosis? _____ ☒ Yes  ☐ No

Did the diagnosing doctor perform a physical examination? ——————————— ☒ Yes  ☐ No

Do you currently use tobacco products? ———————————————————— ☐ Yes  ☒ No

Have you ever used tobacco products? ———————————————————— ☒ Yes  ☐ No

*If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco
products and the dates and frequency with which such products were used:*

☒ Cigarettes      Packs Per Day (half pack = .5) 2      Start Year 1949      End Year 1972

Cigars      Cigars Per Day    Start Year    End Year

☐ If Other Tobacco Products, please specify (e.g., chewing tobacco): _____

              Amount Per Day _____      Start Year __ __ __ __   End Year __ __ __ __

Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")? ................. ☐ Yes  ☒ No

WR GRACE PIQ 68800-0016

*If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:*

_____

3.  **Information Regarding Chest X-Ray**
    **Please check the box next to the applicable location where your chest x-ray was taken (check one):**

    ☐  Mobile laboratory   ☐ Job site   ☐ Union Hall   ☒ Doctor office   ☒ Hospital   ☐ Other: _____

    **Address where chest x-ray taken:** _____

    Address

    City                                          State/Province              Zip/Postal Code


WR GRACE PIQ 56800-0017

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

4. **Information Regarding Chest X-Ray Reading**
   Date of Reading: 02/13/1989                                    ILO score: 1/2

   **Name of Reader:** Dr. Sanford Rabushka

   Reader's Daytime Telephone Number: ................................................................ (312)878-8700

   Reader's Mailing Address:  4646 North Marine Drive

   Chicago, IL 60640 ..........................................................................................

                                     Address

   City                                             State/Province                 Zip/Postal Code

   With respect to your relationship to the reader, check all applicable boxes:

   Was the reader paid for the services that he/she performed ....................................... ☒ Yes ☐ No

   *If yes, please indicate who paid for the services performed*: **Self/insurance**

   Did you retain counsel in order to receive any of the services performed by the reader? .......................... ☐ Yes ☒ No

   Was the reader referred to you by counsel? ....................................................... ☐ Yes ☒ No

   Are you aware of any relationship between the reader and your legal counsel? ....................................... ☐ Yes ☒ No

   *If yes, please explain:* _____

   Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?

   _____ ☒ Yes ☐ No

   *If the reader is not a certified B-reader, please describe the reader's occupation, specialty, and the method through which the reading was made:* _____

5. **Information Regarding Pulmonary Function Test:** _____ Date of Test: __ __ / __ __ / __ __ __ __
   List your height in feet and inches when test given: _____ _____ ft _____ inches
   List your weight in pounds when test given: _____ _____ lbs
   Total Lung Capacity (TLC): _____ _____% of predicted
   Forced Vital Capacity (FVC): _____ _____% of predicted
   FEV1/FVC Ratio: _____ _____% of predicted
   Name of Doctor Performing Test (if applicable): _____
   Doctor's Specialty: _____
   Name of Clinician Performing Test (if applicable): _____
   Testing Doctor or Clinician's Mailing Address: _____

                                    Address, City, State/Province, Zip/Postal Code
   Testing Doctor or Clinician's Daytime Telephone Number: ................................. ( __ __ __ ) __ __ __ - __ __ __ __
   Name of Doctor Interpreting Test: _____
   Doctor's Specialty: _____
   Interpreting Doctor's Mailing Address: _____

   Interpreting Doctor's Daytime Telephone Number:
      ( __ __ __ ) __ __ __ - __ __ __ __



## PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

**With respect to your relationship to the doctor or clinician who performed the pulmonary function test check all applicable boxes:**

If the test was performed by a doctor, was the doctor your personal physician? ......................................... ☐ Yes   ☐ No

Was the testing doctor and/or clinician paid for the services that he/she performed? ................................... ☐ Yes   ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician? . ☐ Yes   ☐ No

Was the testing doctor or clinician referred to you by counsel? ................................................................ ☐ Yes   ☐ No

Are you aware of any relationship between either the doctor or clinician and your legal counsel? ............ ☐ Yes   ☐ No

*If yes, please explain:* _____

Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test? ........................................................................................... ☐ Yes   ☐ No

**With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:**

Was the doctor your personal physician? ................................................................................................ ☐ Yes   ☐ No

Was the doctor paid for the services that he/she performed? ................................................................ ☐ Yes   ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? ........................... ☐ Yes   ☐ No

Was the doctor referred to you by counsel? ........................................................................................... ☐ Yes   ☐ No

Are you aware of any relationship between the doctor and your legal counsel? ..................................... ☐ Yes   ☐ No

*If yes, please explain* _____

Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed? ............................ ☐ Yes   ☐ No

6. **Information Regarding Pathology Reports:**

Date of Pathology Report: ........................................................................... _ _ / _ _ / _ _ _ _

Findings: _____

Name of Doctor Issuing Report: _____

Doctor's Specialty: _____

Doctor's Mailing Address: _____
                     Address

| City | State/Province | Zip/Postal Code |
|------|----------------|-----------------|

Doctor's Daytime Telephone Number: ........................................................ ( _ _ _ ) _ _ _ - _ _ _ _

**With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:**

Was the doctor your personal physician? ................................................................................................ ☐ Yes   ☐ No

Was the doctor paid for the services that he/she performed? ................................................................ ☐ Yes   ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? ........................... ☐ Yes   ☐ No

Was the doctor referred to you by counsel? ........................................................................................... ☐ Yes   ☐ No

Are you aware of any relationship between the doctor and your legal counsel? ......................................... ☐ Yes   ☐ No

*If yes, please explain:* _____

Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?

................................................................................................................................................ ☐ Yes   ☐ No



WR GRACE PIQ 58800-0919

**PART II. ASBESTOS-RELATED CONDITION(S) (Continued)**

7.  With respect to the condition alleged, have you received medical treatment from a doctor for the condition?

    ........................................................................................................................................................ ☐ Yes ☒ No

    *If yes, please complete the following:*

    Name of Treating Doctor: _____

    Treating Doctor's Specialty: _____

    Treating Doctor's Mailing Address: _____
                                        Address

    _____
    City                                    State/Province                    Zip/Postal Code

    Treating Doctor's Daytime Telephone number: .......................................... ( _ _ _ ) _ _ _ - _ _ _ _

    Was the doctor paid for the services that he/she performed? ............................................................. ☐ Yes ☐ No

    *If yes, please indicate who paid for the services performed:* _____

    Did you retain counsel in order to receive any of the services performed by the doctor? ................... ☐ Yes ☐ No

[REMAINDER OF PAGE INTENTIONALLY BLANK]

8

WR GRACE PIQ  68800-0020

# PART III: DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a)  A worker who personally mixed Grace asbestos-containing products

(b)  A worker who personally removed or cut Grace asbestos-containing products

(c)  A worker who personally installed Grace asbestos-containing products

(d)  A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(e)  A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f)  If other, please specify.

Site of Exposure:
Site Name: _____
Location: _____
Site Type: ☐ Residence  ☐ Business    Site Owner: _____
Employer During Exposure: _____
Unions of which you were a member during your employment: _____



| | Product(s) | Basis for Identification of each Grace Product(s) | Dates and Frequency of Exposure (hours/days/years) | Occupation Code (From list in Part III) | Industry Code (From list in Part III) | Was exposure due to working in or around areas where product was being installed, mixed, removed, or cut? If yes, please indicate your relative proximity to such areas. | Nature of Exposure |
|---|---|---|---|---|---|---|---|
| Job 1 Description: | | | | | | | |
| Job 2 Description: | | | | | | | |
| Job 3 Description: | | | | | | | |
| Job 4 Description: | | | | | | | |
| Job 5 Description: | | | | | | | |
| Job 6 Description: | | | | | | | |

SEE OBJECTION (Part III)

PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

WR GRACE PIQ 56800-0021

1. Are you asserting an injury caused by exposure to Grace asbestos-containing products through contact/proximity
   with another injured person?.................................................................................☐ Yes ☐ No ☒ Unknown

   *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to
   Grace asbestos-containing products. For your convenience, additional copies of Part IV are attached as Appendix E to
   this Questionnaire.*

2. Please indicate the following information regarding the other injured person:
   Name of Other Injured Person: _____Gender: ☐ Male ☐ Female
   Last Four Digits of Social Security Number: __ __ __ __            Birth Date: __ __ / __ __ / __ __ __

3. What is your Relationship to Other Injured Person: ...............................☐ Spouse ☐ Child ☐ Other

4. Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:
   _____

5. Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products:
   From: __ __ / __ __ / __ __ __ __    To: __ __ / __ __ / __ __ __ __

6. Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:
   _____

7. Has the Other Injured Person filed a lawsuit related to his/her exposure? .........................☐ Yes ☐ No
   *If yes, please provide caption, case number, file date, and court name for the lawsuit:*
   Caption: _____
   Case Number: _____    File Date: __ __ / __ __ / __ __ __ __
   Court Name: _____

8. Nature of Your Own Exposure to Grace Asbestos-Containing Products:
   _____

9. Dates of Your Own Exposure to Grace Asbestos-Containing Products:
   From: __ __ / __ __ / __ __ __ __    To: __ __ / __ __ / __ __ __ __

10. Your Basis for Identification of Asbestos-Containing Product as Grace Product:

[REMAINDER OF PAGE INTENTIONALLY BLANK]

SEE OBJECTION
(Part IV)

10

WR GRACE PIQ 56800-0022

## PART IV - EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products
(b) A worker who personally removed or cut Non-Grace asbestos-containing products
(c) A worker who personally installed Non-Grace asbestos-containing products

(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(f) If other, please specify.

**SEE OBJECTION (Part IV)**

| | Product(s) | Dates and frequency of exposure (mm/dd/yy-mm/dd/yy) | Occupation Code [Code(s)] [specify] | Industry Code [Code(s)] [specify] | Was exposure due to: working in or around areas where product was being installed, mixed, removed or cut? If yes, please indicate your proximity to such areas | Nature of Exposure |
|---|---|---|---|---|---|---|
| **Site of Exposure 1** | Job 1 Description: | | | | | |
| Site Name: | Job 2 Description: | | | | | |
| Address: | | | | | | |
| City and State: | Job 3 Description: | | | | | |
| Site Owner: | | | | | | |
| **Site of Exposure 2** | Job 1 Description: | | | | | |
| Site Name: | Job 2 Description: | | | | | |
| Address: | | | | | | |
| City and State: | Job 3 Description: | | | | | |
| Site Owner: | | | | | | |
| **Site of Exposure 3** | Job 1 Description: | | | | | |
| Site Name: | Job 2 Description: | | | | | |
| Address: | | | | | | |
| City and State: | Job 3 Description: | | | | | |
| Site Owner: | | | | | | |

PART VI  EMPLOYMENT HISTORY

WR GRACE PIQ 50800-0023

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial work experience up to and including your current employment.  For each job, include your employer, location of employment, and dates of employment.  Only include jobs at which you worked for at least one month.  Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

Occupation Code: _____  If Code 59, specify: _____

Industry Code: _____  If Code 118, specify:_____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
              Address

_____
City                             State/Province           Zip/Postal Code

Occupation Code: _____  If Code 59, specify: _____

Industry Code: _____  If Code 118, specify:_____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
              Address

_____
City                             State/Province           Zip/Postal Code

Occupation Code: _____  If Code 59, specify: _____

Industry Code: _____  If Code 118, specify:_____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
              Address

_____
City                             State/Province           Zip/Postal Code

Occupation Code: _____  If Code 59, specify: _____

Industry Code: _____  If Code 118, specify:_____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
              Address

_____
City                             State/Province           Zip/Postal Code

SEE OBJECTION (Part VI)

12



WR GRACE PIQ 56800-0024

## PART VII: LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA

### LITIGATION

1.  Have you ever been a plaintiff in a lawsuit regarding asbestos or silica?  ☒ Yes ☐ No

    *If yes, please complete the rest of this Part VII(a) for each lawsuit.   For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2.  Please provide the caption, case number, file date, and court name for the lawsuit you filed:

    Caption:

    **Case Number:**      **REDACTED**      File Date:

    **Court Name:**

3.  Was Grace a defendant in the lawsuit? ........................................................................ ☒ Yes ☐ No

4.  Was the lawsuit dismissed against any defendant?    **See Objection**   ☐ Yes ☐ No
    *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

    _____

    _____

5.  Has a judgment or verdict been entered?    **See Objection**   ☐ Yes ☐ No
    *If yes, please indicate verdict amount for each defendant(s):* _____

6.  Was a settlement agreement reached in this lawsuit?    **See Objection**   ☐ Yes ☐ No
    *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

    a.  Settlement amount for each defendant: _____

    b.  Applicable defendants: _____

    c.  Disease or condition alleged: _____

    d.  Disease or condition settled (if different than disease or condition alleged): _____

7.  Were you deposed in this lawsuit? ................................................................................ ☐ Yes ☒ No
    *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.*

### CLAIMS

1.  Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? ........................................................ ☒ Yes ☐ No
    *If yes, please complete the rest of this Part VII(b).  If no, please skip to Part VIII.*

2.  Date the claim was submitted: 11/27/1990

3.  Person or entity against whom the claim was submitted: **Various Bankruptcy Defendants**

4.  Description of claim: **Bankruptcy**

5.  Was claim settled?    **See Objection**   ☐ Yes ☐ No

6.  Please indicate settlement amount:      $ **See Objection**

7.  Was the claim dismissed or otherwise disallowed or not honored?    **See Objection**   ☐ Yes ☐ No
    *If yes, provide the basis for dismissal of the claim:* _____

13



WR GRACE PIQ 56900-0025

**PART VIII: CLAIMS BY DEPENDENTS OR RELATED PERSONS**

Name of Dependent or Related Person: ........................................ Gender: ☐ Male ☒ Female

Last Four Digits of Social Security Number:                    Birth Date:

Financially Dependent: ...................................................................................... ☒ Yes ☐ No

Relationship to Injured Party: ☒ Spouse ⊙ Child ⊙ Other If other, please specify _____

Mailing Address:
Address                          ..........................................................................................................

City  State/Province  Zip/Postal Code

Daytime Telephone number: .................................................................................... 7088918812

REDACTED



WR GRACE PIQ 56800-0026

## PART IX: SUPPORTING DOCUMENTATION

Please use the checklists below to indicate which documents you are submitting with this form.

Copies:

- ☒ Medical records and/or report containing a diagnosis
- ☐ Lung function test results
- ☐ Lung function test interpretations
- ☐ Pathology reports
- ☒ Supporting documentation of exposure to Grace asbestos-containing products
- ☐ Supporting documentation of other asbestos exposure

- ☐ X-rays
- ☒ X-ray reports/interpretations
- ☐ CT scans
- ☐ CT scan reports/interpretations
- ☐ Depositions from lawsuits indicated in Part VII of this Questionnaire
- ☐ Death Certification

Originals:

- ☐ Medical records and/or report containing a diagnosis
- ☐ Lung function test results
- ☐ Lung function test interpretations
- ☐ Pathology reports
- ☐ Supporting documentation of exposure to Grace asbestos-containing products

- ☐ Supporting documentation of other asbestos exposure
- ☐ X-rays
- ☐ X-ray reports/interpretations
- ☐ CT scans
- ☐ CT scan reports/interpretations
- ☐ Death Certification

**Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:**

_____

WR GRACE PIQ 56800-0027

PART XI: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

The information provided in this Questionnaire must be accurate and truthful. This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim. The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both. 18 U.S.C. §§ 152 & 3571.

TO BE COMPLETED BY THE INJURED PERSON.

I swear, __under penalty of perjury__, that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate and complete.

Signature: _____    **REDACTED**    Date: _12-12-12005_

Please Print Name: _____

TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.

I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete.

Signature: _Kathy Byrne_    Date: _2/27/2006_

Please Print Name: _Kathy Byrne_

14



WR GRACE PIQ 68800-0028

IN THE CIRCUIT COURT OF COOK COUNTY
ASBESTOS REGISTRY CALENDAR

IN RE:                          )    CASE NO: 91 L _____
                                )
        ASBESTOS REGISTRY        )    REGISTRY NO.: _____

CLAIMANT REGISTRY FORM - PENDING CLAIM

1.  Registrant's Name:  Steven Asauskas
2.  Registrant's Former Case Number:  90 L 20349; Filed: 12/28/90
3.  Registrant's Current Address:
    14331 S. Bensley, Burnham, IL  60633
4.  Defendants named and served in original law suit:

KEENE CORPORATION, Individually and as Successor-In-Interest to the
BALDWIN-EHRET-HILL COMPANY and EHRET MAGNESIA MAGNESIA COMPANY, a New
York Corporation;  ARMSTRONG WORKD INDUSTRIES, INC., Formerly Known as
ARMSTRONG CORK COMPANY, a Pennsylvania Corporation;  DANA CORPORATION,
Individually and as Successor to SMITH & KANZLER COMPANY and VICTOR
GASKET COMPANY, a Virginia Corporation;  EAGLE-PICHER INDUSTRIES, INC.,
an Ohio Corporation;  THE FLINTKOTE COMPANY, a Massachusetts Corporation;
FIBREBOARD CORPORATION, a Delaware Corporation;  GAF CORPORATION, a
Delaware Corporation;  GARLOCK, INC., a New York Corporation;  H.K.
PORTER COMPANY, INC., Individually and as Successor to SOUTHERN TEXTILE
CORPORATION and SOUTHERN ASBESTOS COMPANY, a Delaware Corporation;
NATIONAL GYPSUM COMPANY, a Delaware Corporation;  OWENS-CORNING FIBERGLAS
CORPORATION, a Delaware Corporation;  OWENS-ILLINOIS, INC., an Ohio
Corporation;  PITTSBURGH CORNING CORPORATION, Individually and as
Successor to UNARCO INDUSTRIES, INC., A Pennsylvania Corporation;  UNITED
STATES GYPSUM COMPANY, A Delaware Corporation;  W.R. GRACE COMPANY, a
Connecticut Corporation.

5.  Registrant's Date of Birth:  9/21/30
6.  Registrant's Social Security Number:  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
7.  Registrant's Statement of Exposure:  Plaintiff was occupationally
    exposed to asbestos-containing materials during the years 1951 to
    Present in the course of his employment as a Sheet Metal Worker
    during which years he worked as a member of Local # 73 of the Sheet
    Metal Worker Union.
8.  Plaintiff's most recent chest x-ray dated 2/10/87, reveals:
    a.  Pleural plaques        NO
        Pleural Thickening  NO
    b.  Parenchymal abnormalities      YES
        Profusion rating  1/2
    c.  If profusion 1/0 or greater, list pulmonary function test
        results:  Test Date: 2/10/89
TLC:  DLCO:  FEV-1:93%  FVC:103%  FEV-1/FVC:91%


_____        _____
     DATE                       Registrant's/Attorneys Signature
COONEY AND CONWAY
77 W. Washington St.#805
Chicago, IL 60602
312/236-6166
Attorney ID No.:  90200

1



WR GRACE PIQ 68800-0029

IN THE
CIRCUIT COURT OF
COOK COUNTY

IN RE:                          *
                                *
        ASBESTOS CASES          *   Judge Dean M. Trafelet
                                *

### ORDER TO ESTABLISH REGISTRY FOR CERTAIN ASBESTOS MATTERS

This Court has conducted hearings, taken evidence on
the cause, development and consequences of latent diseases that
occur due to exposure to asbestos and heard the arguments of
counsel on the motion made by certain plaintiffs and certain
defendants for the establishment of a judicially supervised
Registry of certain types of claims. Based on the foregoing, the
Court makes the following findings of fact and conclusion of law
and enters its Order:

I.   **FINDINGS OF FACT**

     A.   There are several different types of diseases or
processes that have been associated with exposure to asbestos,
including certain types of malignancies and certain non-malignant
processes.

     Asbestos can be a cause of non-malignant physical
changes in the lung and in the pleura.

     Asbestosis is a disease of the lung, which can progress
with time from a non-impairing (or subclinical) stage to an
impairing (or clinically diagnosable) stage. The precise crite-
ria for the diagnosis of "asbestosis" is the subject of some
dispute among physicians who specialize in the diagnosis and
treatment of lung disorders. This Court has heard evidence on

912- 38 - 1705



WR GRACE PIQ 55880-0030

the subject. This Court has adopted those minimum criteria for the purposes of this Order.

Asbestos can cause non-malignant changes within the pleura called "pleural plaques" and "pleural thickening". Medical experts generally agree that pleural plaques and pleural thickening can be evidence of exposure to asbestos but, except in extremely rare cases, they do not cause impairment.

B.    The Court has the inherent power to control cases on its docket and to order the trial or disposition of these cases in a manner consistent with an economical allocation of judicial resources and with the parties' interests.  The volume of asbestos-related personal injury claims now pending in the Circuit Court of Cook County presents a serious threat of calendar congestion to the Court.  A substantial number of cases filed in this Court involve plaintiffs who claim significant asbestos exposure, but who are not now physically ill.  In some of these cases, there may be a progression of an asbestos-related condition resulting in disability to the plaintiff.  In others, the disease process will progress no further.

C.    The plaintiffs and their attorneys have filed many cases that involve no present impairment, because they reasonably believe that the statute of limitations will expire before their diseases progress to a stage that is impairing.

D.    Defendants have expended substantial sums in appearing, engaging in pre-trial discovery, and defending against such claims.  Many have had their available resources severely

2

9IL- 38- 1706.


WR GRACE PIQ 66800-0031

strained and believe that their resources can be better expended
if focused on those cases that involve claims of actual and
current conditions of impairment.

E. . This Court has reviewed the methods employed by
other court systems within these United States in their efforts
to resolve the tension in latent disease claims between the right
of a claimant to prosecute a claim at such time as he knew or
should have known that.he was injured by reason of the claimed.
tortious act or omission of another and the right of a defendant
to protection against stale claims.  The Court finds that a
Registry·under terms set forth herein below represents an appro-
priate balance between the respective rights of plaintiff and
defendant.

## II.  CONCLUSIONS OF LAW

A.    This Court has the inherent authority to manage
and control its docket in order to.achieve its constitutional
mandate to adjudicate claims in accord with the common and
statutory law and public policy of this State.

B.    Commensurate with its inherent authority to
establish and control its docket, this Court has the authority to
set certain claims or potential claims in a.deferred status until
such time that the claim is appropriate for judicial attention
and relief, and the use of such deferred Registry is proper when
a claim involves an asbestos-related condition that has not
progressed to a stage that the person has suffered actual impair-
ment.

3

912- 38- 1707