# Exhibit B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Docket No. |
| | ) | |

## NOTICE AND MEMORANDUM OF POINTS AND AUTHORITIES CONCERNING BACKGROUND OF QUESTIONNAIRE APPROVAL PROCESS AND OBJECTIONS PREVIOUSLY ADDRESSED BY THE COURT

In November of 2004 -- exactly two years ago -- W.R. Grace & Co. ("Grace") first moved this Court for an Order authorizing it to serve a Questionnaire seeking discovery of asbestos personal injury claimants. The purpose of the discovery was to gather information relevant, and in Grace's view, necessary, to a valid estimation of liability for these claims. Despite nearly universal agreement in the legal community that there has been rampant fraud and abuse in the "diagnosis" of asbestos-related disease in the context of litigation, the Official Committee of Asbestos Personal Injury Claimants ("PI Committee") and their constituents have resisted this discovery at every turn. They have adopted a unified response strategy to Grace's request for the Questionnaire and then to this Court's Orders regarding the Questionnaire: to oppose the provision of information necessary to evaluate the underlying claims, and when the Court finally orders that the information be provided -- to delay giving it for as long as possible.

As this Court is well aware, Grace has been diligent and dogged in its efforts to obtain the relevant information and in its refusal to surrender to concerted efforts by asbestos personal injury firms and the PI Committee to obstruct and delay the Questionnaire discovery process. The reason for Grace's determination has been and

1

remains clear -- Grace firmly holds that analysis of the data supporting the underlying

pre-petition claims will demonstrate that Grace's liability for such claims is orders of

magnitude lower than the estimations that undoubtedly will be put forward by the PI

Committee. Thus, despite the delays, the obstruction, and the difficulty associated with

obtaining the underlying information about the claims, Grace has not given up its efforts

to get it. Indeed, Grace has a duty to its constituents and the Court to obtain this

information.

Accordingly, Grace comes to this Court for a final Order overruling the *remaining*

objections to the Questionnaire. The Court already has ruled, and Grace *will not revisit*

the broad relevance and burden objections made to the Questionnaire:

- **Relevance:** The Court already has ruled that all questions are relevant and that absent a claimant-specific, particularized *showing* -- all questions in the Questionnaire must be answered. *See* Order Concerning Debtors' Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Personal Injury Questionnaire ("MTC Order") (Docket No. 13393) (Oct. 12, 2006) at ¶ 1.

- **Burden:** The Court already has listened to and considered the objections and concerns regarding burden. The Court required Grace to amend the original Questionnaire to address these concerns. The Court also recently adopted an attachment protocol to address these concerns, and the Claimants have now had *over* a year to comply with the Court's order which originally required the provision of the information in four months. At this point -- fourteen months after service of the Questionnaire -- a burden objection shows contempt for this Court and the fair, balanced, and orderly process it has attempted to establish for the Claimants and their law firms to provide the requested information. *See* MTC Order at ¶¶ 1-2.

As these general relevance and burden issues already have been addressed by the

Court, Grace will not reargue them in the current Motions to Compel. Instead, Grace will

file a series of Motions against select firms designed to address all the remaining

substantive objections lodged by the various law firms.[1]   Generally, what remains are objections that fall into the following broad categories:

- Attorney-client privilege/Attorney work product;

- Confidentiality;

- Doctor-patient privilege/HIPAA;

- Federal Rule of Evidence 408 or state law equivalents; and similar objections related to the ultimate admissibility of the evidence.

Pursuant to this Court's direction, and an agreement reached with a significant number of firms, these Motions will be heard at a specially-set hearing in Pittsburgh on December 5, 2006.  As part of the agreement, Grace agreed to provide additional time for supplementation of the Questionnaires.   Under the agreement, all firms have until January 12, 2007 to provide the supplemental information.   In exchange for this extension, the firms have promised to provide by that date all supplemental information required by the MTC Order (concerning relevance, attachments and signatures) *and* all orders or decisions resulting from this current round of Motions to Compel and the December 5, 2006 hearing on the Motions.  Thus, Grace hopes that this series of Motions will bring closure to the Questionnaire objection process, and that Grace will receive, by January 12, 2007, all the information requested in the Questionnaire and required by Order of this Court.

## I.    THE QUESTIONNAIRE APPROVAL PROCESS.

On August 29, 2005, this Court ordered that all holders of pre-petition asbestos

---

[1]      Because it would overwhelm the Court and be impractical, Grace has not moved to compel every firm maintaining objections to the Questionnaire.  Rather, Grace has moved to compel a number of firms whose objections are representative of the objections of all the firms.  Additionally, once all the motions are filed, Grace will send notice to all firms that the Motions to Compel have been filed, that this Court will hear argument on these motions on December 5, 2006, and that all interested parties are invited to attend the hearing and to be heard, either in person or telephonically.

personal injury litigation claims complete and return the W.R. Grace Asbestos Personal Injury Questionnaire. The purpose of the Questionnaire is to provide Grace and the other parties to the estimation with basic factual information about the pre-petition litigation claims so that the information can be used by the parties in the estimation of Grace's asbestos personal injury liabilities. The Court's approval of the Questionnaire followed nearly nine months of briefing, argument and consideration.

Grace first requested the Court's permission to serve some form of discovery questionnaire consistent with the streamlined estimation proceeding on November 13, 2004. *See* Debtors' Motion for Entry of an Order Seeking the Estimation of Asbestos Claims and Certain Related Relief at 4 (Docket No. 6899) (Nov. 13, 2004) (seeking approval for "claims questionnaires" which were designed to "enable the parties to develop a detailed 'snapshot' of the actual medical conditions and exposure histories of the claiming population as it existed on the Petition Date"). In that same pleading, Grace made known to both the Court and the parties to the estimation that its intention in proposing a questionnaire was so that the responses to the questions posed would be "compile[d] ... into a navigable database and [made] available to the Debtors' and various official committees' estimation experts, if any" for use in the estimation. *Id.* at 9.

At the January 21, 2005 omnibus hearing, the Court recognized that a questionnaire may be "an appropriate way to get discovery done." *See* Tr. of Hr'g at 117 (Jan. 21, 2005). It also recognized the potential burden of a questionnaire. *Id.* at 132 (noting that the Court would not permit the Questionnaire to "be 50 pages" long). To help alleviate concerns over the burden, the Court ordered the Future Claimants' Representative ("FCR") and the Debtors to "negotiate ... the form of the Debtors'

proposed proof of claim/questionnaire for asbestos personal injury pre-petition litigation claims[]." *See* Order Setting Briefing Schedule and Hearing Regarding Case Management Order and Proof of Claim/Questionnaire for the Estimation of Asbestos Personal Injury Liabilities (Docket No. 8324) (Apr. 24, 2005) (memorializing the Court's Jan. 19, 2005 oral rulings).

Pursuant to the Court's order, the parties engaged in extensive negotiations, but neither the PI Committee nor the FCR would agree to Grace's proposed questionnaire. Thus, on May 10, 2005, Grace moved that the Court approve the Questionnaire over the objection of the PI Committee and the FCR. *See* Memorandum of Points and Authorities in Support of W.R. Grace & Co.'s Motion to Approve PI CMO & Questionnaire ("Points of Authority") at Tab 4, 13 (Docket No. 8395) (May 10, 2005) (seeking Questionnaire that would allow Grace to obtain "discovery of the basis on which claims are asserted for use in [Grace's] proposed estimation approach"). In its opposition to Grace's motion, the PI Committee specifically objected to the Questionnaire proposed by Grace on the grounds, *inter alia*, that it sought "irrelevant information" and that the Questionnaire "would be extraordinarily expensive [for the Claimants' law firms] to implement." *See* Opposition of the Official Committee of Asbestos Personal Injury Claimants to Debtors' Motion to Approve PI CMO and Questionnaire at 61, 67 (Docket No. 8847) (Jun. 30, 2005); *see also* Tr. of Hr'g at 172 (Jul. 19, 2005) ("[Grace is] asking for an incredibly burdensome questionnaire.").

While the motion was pending, the parties continued to negotiate the scope of the Questionnaire. Certain disputes were narrowed, but the PI Committee and the FCR maintained their respective opposition to the Questionnaire. At the July 19, 2005

omnibus hearing, the Court affirmed that the Questionnaire was an appropriate vehicle for the Debtors to obtain the discovery it sought concerning the pre-petition litigation claims. *See* Tr. of Hr'g at 175 (Jul. 19, 2005) ("My bottom line position is I think a questionnaire, to the extent that the debtor or the other parties want to do discovery[,] is fine."). The Court voiced some concern that the Questionnaire, as presented by Grace, went "a little far" and suggested that the Court and the parties should "go through [the Questionnaire] line by line and figure out what's appropriate and what isn't." *Id.* at 176. The Court explained that one of the purposes for engaging in such an analysis was to stave off future objections from individual Claimants on relevance and burden grounds, stating:

> [B]ut *what they'll say,* Mr. Bernick, in answer to the question is *I object, it's not relevant, and it's burdensome,* and then *I'm going to be right here making rulings on it anyway*, so why don't we just do it and get it done?

Tr. of Hr'g at 176-77 (Jul. 19, 2005) (emphasis added).

After the line-by-line analysis was undertaken, Grace revised the Questionnaire to incorporate the Court's July 19th rulings. The parties then again conferred to continue negotiating the final language of the CMO and Questionnaire, conferring on two occasions. After these discussions concluded, four substantive areas of disagreement remained between the parties. *See* Debtors' Report to Court Pursuant to July 19, 2005 Rulings Regarding Personal Injury Claims and Estimation Proceedings (Docket No. 9263) (Aug. 26, 2005). These four issues were argued before the Court at the August 29, 2005 omnibus hearing. At that hearing, the Court approved the final Questionnaire as revised by Grace, with only minor changes. Notably, after the Questionnaire was approved by the Court, neither the PI Committee nor the FCR appealed the portion of the

Case Management Order for the Estimation of Asbestos Personal Injury Liabilities ("PI CMO") which "ordered that the Asbestos Personal Injury Questionnaire ... is approved" and "that all holders of Asbestos PI Pre-Petition Litigation Claims are required to complete and serve the Questionnaire." PI CMO at ¶¶ 1-2 (Docket No. 9301) (Aug. 29, 2005).

Grace served nearly 179,000 Questionnaires on the Claimants and their counsel on September 12, 2005. Pursuant to the PI CMO, the responses to the Questionnaire were to be completed and returned on or before January 12, 2006. PI CMO at ¶ 3(C). That deadline was subsequently extended three separate times by 60 days each time. *See* Order Modifying the Case Management Order for the Estimation of Asbestos Personal Injury Liabilities Regarding the Extension of Time for Claimants to Respond to Questionnaires and Designate Non-Expert Witnesses (Docket No. 11403) (Dec. 21, 2005); Order Modifying the Case Management Order for the Estimation of Asbestos Personal Injury Liabilities Regarding the Extension of Time for Claimants to Respond to Questionnaires (Docket No. 11885) (Feb. 21, 2006); Order Modifying the Case Management Order for the Estimation of Asbestos Personal Injury Liabilities Regarding the Extension of Time for Claimants to Respond to Questionnaires (Docket No. 12314) (Apr. 27, 2006). Thus, the Questionnaire was ultimately due to be completed and returned on July 12, 2006. Once returned, the responses to the Questionnaire were to be compiled by Rust Consulting, Inc. ("Rust"), the Debtors' claims processing agent, into a navigable database that would be made available to all parties for use in the estimation. *See* Amended Case Management Order for the Estimation of Asbestos Personal Injury Liabilities ("Amended PI CMO") at ¶ 2(B) (Docket No. 12151) (Mar. 27, 2006). At no

time has any law firm, acting on behalf of its Claimants, sought a protective order or other relief that would excuse the Claimants' obligation to provide responses to the Questionnaire. To date, approximately 60,000 Questionnaires have been returned.

## II.    OBJECTIONS TO THE QUESTIONNAIRE AND GRACE'S FIRST MOTION TO COMPEL.

### A.    The Returned Questionnaires Revealed A Concerted Effort To Avoid Providing Information.

As soon as Grace and Rust began to receive completed Questionnaires, it became apparent that there were a number of recurring deficiencies present in the responses to the Questionnaire. Notably, the three problems most frequently observed by Grace and Rust were:

- Objecting to the questions on pro forma grounds, by reference to a long list of general objections, including, *inter alia*, that the questions asked are "not relevant" or "unduly burdensome," instead of providing answers to the questions posed in the Questionnaire;

- Responding to the questions asked by means of: (1) designating thousands of pages of documents as supporting numerous Questionnaires without specifying which documents support which claims; (2) referring to documents in the public record; (3) attaching voluminous records to the Questionnaire; or (4) referring to documents located in various counsels' offices, rather than providing responses to the questions in the space provided in the Questionnaire; and

- Failure of either the Claimant or his or her counsel to sign the Questionnaire as required in Part X of the Questionnaire.

Grace first alerted the Court to these issues in its March Status Report. *See* W.R. Grace & Co.'s Status Report Regarding Completion of the W.R. Grace Asbestos Personal Injury Questionnaire (Docket No. 12093) (Mar. 20, 2006). These issues were discussed with the Court at the April 17, 2006 omnibus hearing in connection with the discussion of the extension of the exclusivity period. At that time, the Court found that, while objections to the Questionnaire need not be lodged by the Claimants until the

Questionnaires are submitted, "to the extent that an objection is to the question that's being asked, I don't expect either a mediator or [the Court] to have to go through that. *I've already decided that's an appropriate question to be asked*." Tr. of Hr'g at 27 (Apr. 17, 2006) (emphasis added); *see also id.* at 28 ("*I'm not going to hear objections to the question. I've already said if the debtor wants to ask those questions, the debtor can ask those questions.*") (emphasis added). The Court further stated that it "expect[ed] the people who are given the questionnaire are going to answer [it]." *Id.* at 26.

In an effort to expedite resolution of the deficiencies in the Questionnaire responses, Grace invited counsel for all Claimants to participate in a mediation session regarding their objections to the Questionnaire. *See* Ltr. from B. Harding to Counsel (Jun. 26, 2006) (attached as Exhibit 1). The response to Grace's invitation was minimal. Led by the PI Committee, who objected to the proposed mediation as premature and not sufficiently noticed, many Claimants' lawyers objected to appearing at any mediation for the same reasons.

Nevertheless, representatives of two plaintiffs' firms attended the July 6, 2006 mediation:  Robert Phillips of SimmonsCooper LLC and Richard Rescho of the Law Offices of Christopher E. Grell.  With respect to the parties to the estimation, certain committees participated as observers only:  Jeffrey Schneider attended on behalf of the Official Committee of Asbestos Property Damage Claimants, Gary Becker attended on behalf of the Equity Holders' Committee, and Debra Felder attended on behalf of the FCR.  The PI Committee attended the mediation neither in person nor telephonically.

At the mediation, the Claimants again complained that the mediation was premature and that there were no formal papers explaining the parties' relative positions.

They also argued that, regardless of Debtors' position that the Court had already addressed certain aspects of the Questionnaire, those decisions are not binding on them as they are not represented by the PI Committee or any other committee that participated in the Questionnaire-approval process.

After discussion with the mediator, and with the mediator's recommendation and consent, the parties agreed to brief for the Court the issues of: (1) whether it is improper to submit Questionnaires that are unsigned by either Claimants or their counsel; (2) whether it is improper to interpose generic objections to the form of the questions contained in the Questionnaire in lieu of providing substantive responses to the questions; and (3) whether it is improper to respond to the Questionnaire via attachment or reference other documents in lieu of providing responses in the form required by the Questionnaire. Accordingly, Grace filed a motion to compel on July 17, 2006, seeking that the Court find that:    (1) Claimants may not lodge generic objections in lieu of answering; (2) Claimants may not attach undifferentiated masses of documents to their Questionnaires in lieu of answering; and (3) Claimants and/or their counsel may not refuse to certify that the information contained in the Claimants' Questionnaire responses was "true, accurate, and complete." *See* Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire at 15 (Docket No. 12823) (Jul. 17, 2006).

### B.    The Order Concerning Grace's Motion To Compel.

The Motion to Compel was opposed by nearly forty firms. *See, e.g.,* Joint Response of Various Law Firms Representing Personal Injury Claimants in Opposition to Debtors' Motion to Compel (Docket No. 12960) (Aug. 14, 2006); Response of Grace Certain Cancer Claimants In Opposition to the W.R. Grace Motion to Compel (Docket

No. 12970) (Aug. 14, 2006). After extensive briefing, the Motion to Compel was considered by the Court over the course of two hearings, which took place on September 11, 2006 and September 25, 2006, respectively. At those hearings, the Court declined to rule that, as a general matter, Claimants could not lodge objections in lieu of answering the Questionnaire, but that the validity of such objections would need to be considered on an individual basis. *See* Tr. of Hr'g at 251-52 (Sept. 11, 2006). The Court did rule, however, that the questions posed in the Questionnaire were relevant, and may only be challenged if the Claimant could show specifically why a particular question was not relevant to the particular Claimant's claim. *See id.* at 251. During the September 25th hearing, the Court reaffirmed its ruling at the September 11, 2006 hearing that the questions contained in the Questionnaire are relevant and that objections to relevance may only be raised "as to any individual" on a question-by-question basis. Tr. of Hr'g at 179 (Sept. 25, 2006). These rulings were incorporated in the MTC Order which states that:

> [A]s a general matter, the questions contained in the Questionnaire are relevant for purposes of Grace's discovery relating to the estimation of Grace's asbestos personal injury liability and the Court expects the Claimants and/or their lawyers to answer the questions in the Questionnaire completely and accurately …. [T]here may be specific individual questions that for reasons particular to an individual's circumstances or claim, a question contained in the Questionnaire is not relevant to his or her claim or is unduly burdensome or invades a privilege, and he or she may separately raise his or her specific objections pursuant to the mechanism established below in ¶ 6.

MTC Order at ¶ 1.

Moreover, the Court attempted to balance Grace's concerns about the attachment issue with the firms' claims regarding burden if they could not answer via attachment. The Court ruled that while providing attachments that contain the response to various

questions was permissible, the Claimants must direct Grace to the portion of the attachment in which the response to the question was contained, or attach only those portions of a document that contain the information responsive to the question. Tr. of Hr'g at 253-54 (Sept. 11, 2006). The Court further ruled that where responses are provided via attachment, the attachments must be provided "in some recognizable legible format and numbered so that the debtor understands what page of [the attached] document is responsive to the question." Tr. of Hr'g at 179 (Sept. 25, 2006). These rulings balanced the Claimants' concerns regarding the burden imposed by the Questionnaire against Grace's need to collect the information expeditiously and in a format suitable for analysis in connection with the estimation. Again, these rulings were memorialized in the MTC Order which provided that:

> [I]f a response is made by way of an attachment, the attachment must have the answer to the question, must be in a recognizable, legible format that are either numbered (whether by Bates number or some other appropriate numbering system or method) or otherwise identified (such as behind an exhibit tab) and the response must reference clearly the specific page(s) of the attachment so that the Debtors understand which page(s) of the attachment provides the answer to a specific Question in the Questionnaire. Pages that do not contain the answer should not be referenced.

MTC Order at ¶ 2. Based upon the Court's Order, Claimants can only maintain burden objections as to "specific individual questions that *for reasons particular to an individual's circumstances or claim* … [are] unduly burdensome." *Id.* at ¶ 1 (emphasis added). However, in order to maintain the objections, the Claimant was required to "separately raise his or her *specific* objections."

The MTC Order also provided a mechanism by which the individual Claimants were to raise their specific objections. Specifically, the Claimants were required to

[A]ssert within 30 days of this Order regardless of any extension granted for actual supplementation whether or not any previously made and/or additional objections to the Questionnaire are being asserted to the part of the Questionnaire response that is being supplemented. Thus, for each question he or she plans to supplement, the claimant must indicate whether or not a previously lodged objection has been withdrawn or modified by the supplementation, within thirty days of the date of this Order. All objections to those portions of the Questionnaire that are not supplemented, or objections made by claimants who do not plan to supplement their prior responses, shall remain in force and continue as originally asserted.

MTC Order at ¶ 6.

## III.  THE PRESENT MOTIONS TO COMPEL, THE SCHEDULE FOR SUPPLEMENTATION, AND SANCTIONS FOR NON-COMPLIANCE.

Despite the Court's clear instructions that *general* burden and relevance objections should not be pursued, many firms continue to maintain such objections. Additionally, despite Grace's willingness to give all firms an additional 60 days to supplement their responses, most firms have retained nearly all their objections, appearing again to continue the objection and delay tactics that have now postponed provision of the relevant information for nearly a year. As discussed below, Grace will not re-litigate the general burden and relevance objections since the Court already has ruled on them. Rather, Grace will file a series of Motions to Compel addressing the remaining specific and substantive objections. Grace seeks an order regarding those objections and sanctions for any firm that does not comply with the Court's Orders relating to the Questionnaire by January 12, 2007.

### A.  The Negotiated Order Covering Supplementation.

At the Court's suggestion, Grace engaged in extensive negotiations with certain law firms represented by Stutzman, Bromberg, Esserman & Plifka (the "Stutzman Firms"), Montgomery McCracken Rhoads & Walker (the "MMWR Firms"), and with the

13

PI Committee concerning a schedule for supplementation and notice of remaining objections. As part of that negotiation, Grace, the Stutzman Firms and the MMWR Firms negotiated an omnibus schedule for the filing of these motions to compel and for supplementation of the firms' Questionnaire responses. *See* Certification of Counsel Regarding Order Concerning Schedule for Motions to Compel Regarding the W.R. Grace Asbestos Personal Injury Questionnaire and Schedule for Supplementation of Questionnaire Responses ("Scheduling Order") (Docket No. 13560) (Nov. 2, 2006). Grace agreed to give all firms until January 12, 2007 for supplementation, and the firms agreed to: (1) provide notice of remaining objections on or before November 10, 2006; and (2) provide all supplementation, including that resulting from any Orders entered after the December 5, 2006 hearing, by January 12, 2007. Numerous other firms have agreed to the terms of this Order.[2]

### B.    The Claimants' Response To The MTC Order and The Scheduling Order.

Grace has heard from a number of firms purporting to comply with the MTC Order and the Scheduling Order. However, instead of complying with the provisions of the MTC Order and the Court's instructions, most firms who originally refused to provide answers to the Questionnaire have maintained all objections (including those based on relevance and burden). *See, e.g.*, E-mail from T. Wilson to B. Harding re W.R. Grace Questionnaire Objections  (Nov. 3, 2006) (attached as Exhibit 2); E-mail from D. Jagolinzer to B. Harding re W.R. Grace Questionnaire Objections (Nov. 3, 2006) (attached as Exhibit 3).   However, even those firms who have withdrawn certain objections still maintain numerous objections, including general objections on the

---

[2]    Those firms include:  The Wartnick Law Firm, Kelley & Ferraro, Ferraro & Associates, Cohn

grounds of relevance and burden. *See, e.g.,* Ltr. from A. Rich to B. Harding (Nov. 3, 2006) (attached as Exhibit 4); Ltr. from N. Ramsey to B. Harding (Nov. 3, 2006) (attached as Exhibit 5).

**C.    Issues That Will Not Be Addressed In the Present Motions.**

As the Court already has ruled on the propriety of generalized relevance and burden objections, *see* MTC Order at ¶ 1, Grace will not specifically re-argue those issues, as stated above.  The Court has determined that the questions Grace has posed in the Questionnaire are relevant as to all Claimants absent a particular showing to the contrary.  Thus it would be a waste of the Court's resources and the resources of the Debtor's estate to re-argue this issue.  To the extent that a law firm has maintained blanket relevance objections on behalf of its clients, Grace moves to compel all answers to Questions objected to on this ground.

Similarly, the Court has ruled that Claimants are permitted to attach documents in lieu of providing narrative responses to minimize their burden, and thus has limited proper burden objections to those made on a showing based on *"reasons particular to an individual's circumstances or claim."*  MTC Order at ¶ 1 (emphasis added).  Thus, to the extent that a law firm has maintained blanket burden objections on behalf of its clients, Grace moves to compel all answers objected to on those grounds.    This includes objections on the grounds that information would entail "significant expense" or that the information is "equally available to Grace."  *See* MTC Order at ¶¶ 1-2; *see also Standard Chlorine of Del., Inc. v. Sinibaldi*, 821 F. Supp. 232, 262 (D. Del. 1992) (holding that that an allegation that a discovery request "will entail significant legal and accounting expenses to complete is not a proper basis for refusing to comply" with the request)

Whitesell & Goldberg, The Law Offices of Matthew Bergman, and Bergman & Fockt.

(citation omitted); *Puricelli v. Houston*, 2000 WL 298922, at *4 (E.D. Pa. Mar. 15, 2000) ("[T]he fact that a piece of evidence is equally obtainable by both parties does not relieve a party's obligation to make it available in discovery.").

Nor will Grace specifically address instances where the Claimants simply rest on a "general objection" or do not state any grounds for the objection. *See Am. Civil Liberties Union v. Gonzales*, 237 F.R.D. 120, 131 (E.D. Pa. 2006) (noting that Courts have interpreted Fed. R. Civ. P. 33(b)(4) to require that "specific objections must be tied to a particular interrogatory or a class thereof and, thus, general objections to an entire set of interrogatories are improper"); *Koreski v. Bleiweis*, 2004 WL 2203713, at *3 (E.D. Pa. Sept. 27, 2004) (refusing to "accept Plaintiffs' reliance on bald references to unspecified general objections" as "[n]either [defense counsel] nor the Court could be expected to guess which one/s applied to a specific response"). Such objections are plainly improper and Grace requests that the Court overrule the objections without further briefing or argument.

Finally, numerous firms have not provided information in response to certain questions (as opposed to objecting and not responding). To the extent that these firms do not provide that information by January 12, 2007, Grace reserves the right to move to compel and seek sanctions for this practice. *See* Tr. of Hr'g at 252 (Sept. 11, 2006).

    **D.**    **Remaining Issues That Grace Will Address In The Motions To Compel.**

Accordingly, and with these principles in mind, the Motions to Compel will address the following substantive issues:

- Attorney-client privilege/Attorney work product;

- Confidentiality;

16

- Doctor-patient privilege/HIPAA
- Federal Rule of Evidence 408 or state law equivalents; and similar objections related to the ultimate admissibility of the evidence.

For the reasons described in the individual Motions to Compel, with limited exceptions, these objections are baseless and the Court should reject them. In most cases, these objections were anticipated by the PI Committee, raised with the Court during the Questionnaire litigation, and finally, considered and rejected by this Court during the Questionnaire approval process.

### E.    Imposition of Sanctions for Failure to Comply by January 12, 2007.

Finally, so that these issues can be resolved conclusively and without further litigation, Grace moves for an Order, pursuant to the CMO and Questionnaire, imposing sanctions on any firm that does not comply with the Court's October 12, 2006 Order, and any Order emanating from the December 5, 2006 hearings, by January 12, 2007. Grace is entitled to the discovery sought in the Questionnaire. Firms have been given ample notice, time and opportunity to object and respond to the Questionnaire. Failure to provide the information required by this Court by the January 12, 2007 deadline -- nearly 18 months after the Questionnaire first was served on firms -- should result in a sanction sufficient to deter such non-compliance. Accordingly, Grace will seek to have an individual's claim disallowed or seek an adverse inference where a Claimant fails to provide the requested information by January 12, 2007.

Wilmington, Delaware                    Respectfully submitted,

Dated: November 9, 2006

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000


KIRKLAND & ELLIS LLP
Barbara M. Harding
David Mendelson
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*and*

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB, PC

_____

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession