# Exhibit C



# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

REDACTED



10315607074779
RE:
Lipsitz & Ponterio LLC
135 Delaware Avenue
Suite 506
Buffalo NY 14202-2401

REC'D JUN 1 9 2006



000142074779

**REDACTED**



## PART I: IDENTITY OF INJURED PERSON AND LEGAL COUNSEL

WR GRACE-PIQ 009827-002

### a. GENERAL INFORMATION

1. Name of Claimant: _____  _____    2. Gender: ☒ Male ☐ Female
   First            MI            Last

3. Race (for purposes of evaluating Pulmonary Function Test results): ...................... ☒ White/Caucasian
   ☐ African American
   ☐ Other

4. Last Four Digits of Social Security Number:                        Birth Date:

6. Mailing Address:
   Address            City            State/Province        Zip/Postal Code

7. Daytime Telephone Number: ....................................................................

### b. LAWYER'S NAME AND FIRM

1. Name of Lawyer:            John Ned Lipsitz_____

2. Name of Law Firm With Which Lawyer is Affiliated:        Lipsitz & Ponterio, LLC_____

3. Mailing Address of Firm: _135 Delaware Ave., Suite 210, Buffalo, NY 14202_____
   Address            City            State/Province        Zip/Postal Code

4. Law Firm's Telephone Number or Lawyer's Direct Line: ................................ (716) 849-0701

   ☒ Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in lieu of sending
   such materials to you.

### c. CAUSE OF DEATH (IF APPLICABLE)

1. Is the injured person living or deceased? .................................................... ☐ Living ☒ Deceased
   If deceased, date of death: ................................................................. 6/12/2000

2. If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete the following:
   Primary Cause of Death (as stated in the Death Certificate): Cardiopulmonary Arrest as a result of intestinal
   bleeding as a result of colonic carcinoma

   Contributing Cause of Death (as stated in the Death Certificate):        _____

## PART II: ASBESTOS-RELATED CONDITION(S)

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this
Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the
same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses
or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as
Appendix C to this Questionnaire.

1. Please check the box next to the condition being alleged:
   ☐ Asbestos-Related Lung Cancer            ☐ Mesothelioma
   ☐ Asbestosis                              ☒ Other Cancer (cancer not related to lung cancer or mesothelioma)
   ☐ Other Asbestos Disease                  ☐ Clinically Severe Asbestosis

   a. Mesothelioma: If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following (check all
      that apply):
      ☐ diagnosis from a pathologist certified by the American Board of Pathology
      ☐ diagnosis from a second pathologist certified by the American Board of Pathology
      ☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial causal role in
         the development of the condition
      ☐ other (please specify):_____

1



WR GRACE-PIQ 009827-003

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

b. **Asbestos-Related Lung Cancer:** If alleging Asbestos-Related Lung Cancer, were you diagnosed with primary lung cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐ other (please specify):_____

c. **Other Cancer:**

(i) If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☒ colon    ☐ pharyngeal    ☐ esophageal    ☐ laryngeal    ☐ stomach cancer

☐ other, please specify: _____

(ii) Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☒ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☒ other (please specify): <u>Death Certificate</u>

2



**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

d.  **Clinically Severe Asbestosis:** If alleging Clinically Severe Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating total lung capacity less than 65% predicted

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

e.  **Asbestosis:** If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a second B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

3



WR GRACE-PIQ 009827-005

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

f.   **Other Asbestos Disease:** If alleging any asbestos-related injuries, medical diagnoses, and/or conditions other than those above, was your diagnosis based on the following (check all that apply):

[X]   diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

[ ]   diagnosis determined by pathology

[ ]   a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

[ ]   a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

[ ]   a chest x-ray reading  other than those described above

[ ]   a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEVI/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

[ ]   a pulmonary function test other than that discussed above

[ ]   a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

[ ]   a CT Scan or similar testing

[ ]   a diagnosis other than those above

[ ]   other (please specify): _____

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

WR_GRACE-PIQ 009827-006

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

2. **Information Regarding Diagnosis**

   Date of Diagnosis:........................................................................................................ 8/1998

   Diagnosing Doctor's Name: _____ Jerry Marks, M.D

   Diagnosing Doctor's Specialty: _____ Colorectal Surgery

   Diagnosing Doctor's Mailing Address: _____ 227 North Broad Street, Suite 100
   Address

   Philadelphia _____ Pennsylvania _____ 19107 _____
   City                                    State/Province                Zip/Postal Code

   Diagnosing Doctor's Daytime Telephone Number:.................................................. (215)-923-5010

   With respect to your relationship to the diagnosing doctor, check all applicable boxes:

   Was the diagnosing doctor your personal physician? ........................................... ☐ Yes ☒ No

   Was the diagnosing doctor paid for the diagnostic services that he/she performed? .................... ☒ Yes ☐ No

   *If yes, please indicate who paid for the services performed*: _____ Claimant's insurance

   Did you retain counsel in order to receive any of the services performed by the diagnosing doctor? ........... ☐ Yes ☒ No

   Was the diagnosing doctor referred to you by counsel?.................................. ☐ Yes ☒ No

   Are you aware of any relationship between the diagnosing doctor and your legal counsel? ...................... ☐ Yes ☒ No

   *If yes, please explain:* _____

   _____

   Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the diagnosis?.................................................. ☐ Yes ☐ No

   Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?........................................................................... ☐ Yes ☐ No

   Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to diagnosis?.......................................................................... ☒ Yes ☐ No

   Did the diagnosing doctor perform a physical examination?.......................... ☒ Yes ☐ No

   Do you currently use tobacco products?.................................................. ☐ Yes ☒ No

   Have you ever used tobacco products?................................................... ☒ Yes ☐ No

   *If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco products and the dates and frequency with which such products were used:*

   ☒ Cigarettes    Packs Per Day (half pack = .5) _.2_   Start Year __ __ __ __  End Year ~~1976~~ *1998*

   ☐ Cigars    Cigars Per Day _____   Start Year __ __ __ __  End Year __ __ __ __

   ☐ If Other Tobacco Products, please specify (e.g., chewing tobacco): _____
       Amount Per Day _____   Start Year __ __ __ __  End Year __ __ __ __

   Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")?.................. ☐ Yes ☐ No

   *If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:*

   _____

3. **Information Regarding Chest X-Ray**

   Please check the box next to the applicable location where your chest x-ray was taken (check one):

   ☐ Mobile laboratory ☐ Job site ☐ Union Hall ☐ Doctor office ☐ Hospital ☐ Other: _____

   Address where chest x-ray taken: _____
   Address

   _____
   City                                    State/Province                Zip/Postal Code

WR GRACE-PIQ 009827-007

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

4.  **Information Regarding Chest X-Ray Reading**

Date of Reading: ___ / ___ / ___ ___ ___ ___          ILO score: _____

Name of Reader: _____

Reader's Daytime Telephone Number: .......................................... ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

Reader's Mailing Address: _____
                           Address

_____
City                              State/Province                    Zip/Postal Code

With respect to your relationship to the reader, check all applicable boxes:

Was the reader paid for the services that he/she performed .................................................☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the reader? ............................☐ Yes ☐ No

Was the reader referred to you by counsel?..........................................................☐ Yes ☐ No

Are you aware of any relationship between the reader and your legal counsel? ............................☐ Yes ☐ No

*If yes, please explain:* _____

Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?

.................................................................................................................☐ Yes ☐ No

*If the reader is not a certified B-reader, please describe the reader's occupation, specialty, and the method through which the reading was made:* _____

5.  **Information Regarding Pulmonary Function Test:** ............................Date of Test: ___ / ___ / ___ ___ ___ ___

List your height in feet and inches when test given: ............................................... _____ ft _____ inches

List your weight in pounds when test given: .................................................................. _____ lbs

Total Lung Capacity (TLC): ...................................................................._____% of predicted

Forced Vital Capacity (FVC): .................................................................._____% of predicted

FEV1/FVC Ratio: ...................................................................._____% of predicted

Name of Doctor Performing Test (if applicable): _____

Doctor's Specialty: _____

Name of Clinician Performing Test (if applicable): _____

Testing Doctor or Clinician's Mailing Address: _____
                                                Address

_____
City                              State/Province                    Zip/Postal Code

Testing Doctor or Clinician's Daytime Telephone Number: ......................... ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

Name of Doctor Interpreting Test: _____

Doctor's Specialty: _____

Interpreting Doctor's Mailing Address: _____
                                        Address

_____
City                              State/Province                    Zip/Postal Code

Interpreting Doctor's Daytime Telephone Number: ......................... ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

WR GRACE-PIQ 009827-008

With respect to your relationship to the doctor or clinician who performed the pulmonary function test check all applicable boxes:

If the test was performed by a doctor, was the doctor your personal physician? ................................... ☐ Yes ☐ No

Was the testing doctor and/or clinician paid for the services that he/she performed? ........................ ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician? .. ☐ Yes ☐ No

Was the testing doctor or clinician referred to you by counsel? ................................................ ☐ Yes ☐ No

Are you aware of any relationship between either the doctor or clinician and your legal counsel? ............ ☐ Yes ☐ No

*If yes, please explain:* _____

Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test? ........................................................... ☐ Yes ☐ No

With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:

Was the doctor your personal physician? ........................................................... ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? ........................................ ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? ...................... ☐ Yes ☐ No

Was the doctor referred to you by counsel? ........................................................... ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? .............................. ☐ Yes ☐ No

*If yes, please explain* _____

Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed? ............................ ☐ Yes ☐ No

6.  **Information Regarding Pathology Reports:**

Date of Pathology Report: ................................................................... 6/28/1999

Findings: _____ Adenocarcinoma of the rectum

Name of Doctor Issuing Report: _____ Medich, David, M.D.

Doctor's Specialty: _____ Pathology

Doctor's Mailing Address: __320 East North Avenue_____
Address

Pittsburgh                          PA                     15212
City                                State/Province         Zip/Postal Code

Doctor's Daytime Telephone Number: ................................................. (412)359-3526

With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:

Was the doctor your personal physician? ........................................................... ☐ Yes ☒ No

Was the doctor paid for the services that he/she performed? ........................................ ☒ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? ...................... ☐ Yes ☒ No

Was the doctor referred to you by counsel? ........................................................... ☐ Yes ☒ No

Are you aware of any relationship between the doctor and your legal counsel? .............................. ☐ Yes ☒ No

*If yes, please explain:* _____

Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?

................................................................................................. ☒ Yes ☐ No

7

WR GRACE-PIQ  009827-009

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

7. With respect to the condition alleged, have you received medical treatment from a doctor for the condition?

.................................................................................................................................... ☒ Yes ☐ No

*If yes, please complete the following:*

Name of Treating Doctor: _____ Medich, David, M.D.; See Question 6 for further details.

Treating Doctor's Specialty: _____

Treating Doctor's Mailing Address: _____

                       Address

| City | State/Province | Zip/Postal Code |
| --- | --- | --- |

Treating Doctor's Daytime Telephone number:............................................ ( __ __ __ ) __ __ __ - __ __ __ __

Was the doctor paid for the services that he/she performed?............................................... ☒ Yes ☐ No

*If yes, please indicate who paid for the services performed:*....... _____ Insurance.

Did you retain counsel in order to receive any of the services performed by the doctor? ..................... ☐ Yes ☒ No

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

## PART III: DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a)  A worker who personally mixed Grace asbestos-containing products

(b)  A worker who personally removed or cut Grace asbestos-containing products

(c)  A worker who personally installed Grace asbestos-containing products

(d)  A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(e)  A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f)  If other, please specify.

Site of Exposure:

Site Name: __Kodak Facility__          Location__1 Kodak Park__

Site Type: ☐ Residence  X Business          Site Owner:__Kodak__

Employer During Exposure: __Kodak__          Unions of which you were a member during your employment:

| Job / Description | Product Name: What was the name of the Grace Asbestos-Containing Product? | Basis for Identification: What is the Basis for Identifying the Product as a Grace Product? | Dates and Frequency: During What Dates and How Many hours/day did you Work with or Around this Product? | Occupation Code | Industry Code | Nature of Exposure |
|---|---|---|---|---|---|---|
| Job 1 Description: | Monokote, Zonolite | Kodak records, work history. | 1967-1971 | 41 | 108 | (b),(e) On knowledge and belief, claimant was in regular proximity to W. R. Grace fireproofing and had cause to disturb it while employed as a pipefitter at the kodak site. |
| Job 2 Description: | | | | | | |
| Job 3 Description: | | | | | | |
| Job 4 Description: | | | | | | |
| Job 5 Description: | | | | | | |

9

NR  GRACE-P1Q 009827-010

## PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCT

WR GRACE-PIQ 009827-011

1. Are you asserting an injury caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person?......................................................................................☐ Yes ☐ No

   *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to Grace asbestos-containing products. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.*

2. Please indicate the following information regarding the other injured person:

   Name of Other Injured Person: _____ Gender: ☐ Male ☐ Female

   Last Four Digits of Social Security Number: __ __ __ __    Birth Date: __ __ / __ __ / __ __ __ __

3. What is your Relationship to Other Injured Person: ........................☐ Spouse ☐ Child ☐ Other

4. Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:
   _____

5. Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products:
   From: __ __ / __ __ / __ __ __ __    To: __ __ / __ __ / __ __ __ __

6. Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:
   _____

7. Has the Other Injured Person filed a lawsuit related to his/her exposure?........................☐ Yes ☐ No
   *If yes, please provide caption, case number, file date, and court name for the lawsuit:*

   Caption: _____

   Case Number: _____    File Date: __ __ / __ __ / __ __ __ __

   Court Name: _____

8. Nature of Your Own Exposure to Grace Asbestos-Containing Product:
   _____

9. Dates of Your Own Exposure to Grace Asbestos-Containing Product:
   From: __ __ / __ __ / __ __ __ __    To: __ __ / __ __ / __ __ __ __

10. Your Basis for Identification of Asbestos-Containing Product as Grace Product:
    _____

[REMAINDER OF PAGE INTENTIONALLY BLANK]

WR GRACE-PIQ 009827-012

## PART V: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products
(b) A worker who personally removed or cut Non-Grace asbestos-containing products
(c) A worker who personally installed Non-Grace asbestos-containing products
(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(f) If other, please specify.

| Party Against which Lawsuit or Claim was Filed: | | Product(s) | Dates and Frequency of Exposure (hours/day/year) | Occupation Code (If Codes 119, please specify) | Industry Code (If Codes 119, please specify) | Was exposure due to working in or around areas where product was being installed, mixed, removed, cut or otherwise handled? (If Yes, please identify by letter. If No, identify by letter.) Nature of Exposure |
|---|---|---|---|---|---|---|
| **Site of Exposure 1** | Job 1 Description: | | | | | |
| Site Name: | | | | | | |
| Address: | Job 2 Description: | | | | | |
| City and State: | | | | | | |
| Site Owner: | Job 3 Description: | | | | | |
| **Site of Exposure 2** | Job 1 Description: | | | | | |
| Site Name: | | | | | | |
| Address: | Job 2 Description: | | | | | |
| City and State: | | | | | | |
| Site Owner: | Job 3 Description: | | | | | |
| **Site of Exposure 3** | Job 1 Description: | | | | | |
| Site Name: | | | | | | |
| Address: | Job 2 Description: | | | | | |
| City and State: | | | | | | |
| Site Owner: | Job 3 Description: | | | | | |

11



WR GRACE=PIQ 009827-013

## PART VI: EMPLOYMENT HISTORY

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial work experience up to and including your current employment. For each job, include your employer, location of employment, and dates of employment. Only include jobs at which you worked for at least one month. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

Occupation Code: _____    If Code 59, specify: ._____

Industry Code: _____    If Code 118, specify:_____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
        Address

_____
City                    State/Province        Zip/Postal Code

Occupation Code: _____    If Code 59, specify: ._____

Industry Code: _____    If Code 118, specify:_____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
        Address

_____
City                    State/Province        Zip/Postal Code

Occupation Code: _____    If Code 59, specify: ._____

Industry Code: _____    If Code 118, specify:_____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
        Address

_____
City                    State/Province        Zip/Postal Code

Occupation Code: _____    If Code 59, specify: ._____

Industry Code: _____    If Code 118, specify:_____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
        Address

_____
City                    State/Province        Zip/Postal Code

**PART VII: LITIGATION AND CLAIMS REGARDING ASBESTOS AND/O**

WR GRACE-PIQ   009827-014

### a.   LITIGATION

1.  Have you ever been a plaintiff in a lawsuit regarding asbestos or silica? ............................................... ☒ Yes ☐ No

    *If yes, please complete the rest of this Part VII(a) for each lawsuit.   For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2.  Please provide the caption, case number, file date, and court name for the lawsuit you filed:

    Caption: _____ See attached cover page of complaint

    Case Number: _____   File Date: __ __ / __ __ / __ __ __ __

    Court Name: _____

3.  Was Grace a defendant in the lawsuit? ......................................................................................... ☒ Yes ☐ No

4.  Was the lawsuit dismissed against any defendant? .......................................................................... ☐ Yes ☐ No

    *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

    _____

    _____

5.  Has a judgment or verdict been entered? ......................................................................................... ☐ Yes ☐ No

    *If yes, please indicate verdict amount for each defendant(s):* _____

6.  Was a settlement agreement reached in this lawsuit? ...................................................................... ☐ Yes ☐ No

    *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

    a.   Settlement amount for each defendant: _____

    b.   Applicable defendants: _____

    c.   Disease or condition alleged: _____

    d.   Disease or condition settled (if different than disease or condition alleged): _____

7.  Were you deposed in this lawsuit? ................................................................................................... ☐ Yes ☒ No

    *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.*

### b.   CLAIMS

1.  Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? .......................................................................... ☒ Yes ☐ No

    *If yes, please complete the rest of this Part VII(b).  If no, please skip to Part VIII.*

2.  Date the claim was submitted: ................................................................................ __ __ / __ __ / __ __ __ __

3.  Person or entity against whom the claim was submitted: _____

4.  Description of claim: _____

5.  Was claim settled? ........................................................................................................................... ☐ Yes ☐ No

6.  Please indicate settlement amount: _____

7.  Was the claim dismissed or otherwise disallowed or not honored? ............................................... ☐ Yes ☐ No

    *If yes, provide the basis for dismissal of the claim:* _____



WR GRACE-PIQ 009827-015

## PART VIII: CLAIMS BY DEPENDENTS OR RELATED PERSONS

Name of Dependent or Related Person: _____  Gender: ☐ Male ☐ Female

Last Four Digits of Social Security Number: __ __ __ __    Birth Date: __ __ / __ __ / __ __ __ __

Financially Dependent: .............................................................................☐ Yes ☐ No

Relationship to Injured Party: ☐ Spouse ☐ Child ☐ Other  If other, please specify _____

Mailing  Address: _____
                        Address

_____

City                                        State/Province                        Zip/Postal Code

Daytime Telephone number: ..................................  ( __ __ __ ) __ __ __ - __ __ __ __

## PART IX: SUPPORTING DOCUMENTATION

Please use the checklists below to indicate which documents you are submitting with this form.

**Copies:**
- ☐ Medical records and/or report containing a diagnosis
- ☐ Lung function test results
- ☐ Lung function test interpretations
- ☐ Pathology reports
- ☐ Supporting documentation of exposure to Grace asbestos-containing products
- ☐ Supporting documentation of other asbestos exposure

- ☐ X-rays
- ☐ X-ray reports/interpretations
- ☐ CT scans
- ☐ CT scan reports/interpretations
- ☐ Depositions from lawsuits indicated in Part VII of this Questionnaire
- ☐ Death Certification

**Originals:**
- ☐ Medical records and/or report containing a diagnosis
- ☐ Lung function test results
- ☐ Lung function test interpretations
- ☐ Pathology reports
- ☐ Supporting documentation of exposure to Grace asbestos-containing products

- ☐ Supporting documentation of other asbestos exposure
- ☐ X-rays
- ☐ X-ray reports/interpretations
- ☐ CT scans
- ☐ CT scan reports/interpretations
- ☐ Death Certification

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:

_____

_____

## PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

The information provided in this Questionnaire must be accurate and truthful.  This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim.  The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both.  18 U.S.C. §§ 152 & 3571.
**TO BE COMPLETED BY THE INJURED PERSON.**

I swear, **under penalty of perjury**, that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate and complete.

Signature: _____    Date: 0 3 / 0 4 / 2 0 0 6

Please Print Name:        **REDACTED**        _____

**TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.**

I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete.

Signature: _____    Date: __ __ / __ __ / __ __ __ __

Please Print Name: _____

14


WR:GRACE-P1Q 009827-016

SUPREME COURT OF THE STATE OF NEW YORK
SEVENTH JUDICIAL DISTRICT

In Re  Seventh Judicial District
      Asbestos Litigation

This Document Applies to:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE

CONSTANCE KIEFER, Personal Representative of the
Estate of RICHARD W. KIEFER, Deceased,
and Individually as the Surviving Spouse of
RICHARD W. KIEFER,

SAM KINEL and
ROBERTA KINEL, his spouse,

**REDACTED**
            and

JOHN MINTZ and
SHIRLEY MINTZ, his spouse,

CHARLES MURZIN and
CAROL MURZIN, his spouse,

FREDERICK H. RAYMER,

ELMER SONNEVILLE and
ISABELLE SONNEVILLE, his spouse,

                  Plaintiffs,

    vs.

A.P. GREEN INDUSTRIES, INC.,
A.W. CHESTERTON COMPANY,
ACANDS, INC.,
ALRAY CONSTRUCTION CORP., formerly known
 as HEBERT CONSTRUCTION CORP.,

---

SEVENTH JUDICIAL
DISTRICT
ASBESTOS LITIGATION

COMPLAINT

3485.00



WR GRACE-PIQ 009827-017

ARMSTRONG WORLD INDUSTRIES, INC.,
  successor in interest to ARMSTRONG
  CORK COMPANY,
BECHTEL CORPORATION,
CBS CORPORATION, successor in
  interest to WESTINGHOUSE ELECTRIC
  CORPORATION,
CERTAIN-TEED CORPORATION, formerly
  known as CERTAIN-TEED PRODUCTS CORPORATION,
CLEAVER-BROOKS COMPANY,
COMBUSTION ENGINEERING, INC.,
DB RILEY, INC., formerly
  known as RILEY STOKER CORPORATION,
DURABLA MANUFACTURING COMPANY,
ELMER W. DAVIS, INC.,
FIBREBOARD CORPORATION,
FLEXITALLIC, INC., formerly known as
  FLEXITALLIC GASKET COMPANY INC.,
FOSTER WHEELER CORPORATION,
FRONTIER INSULATION CONTRACTORS, INC., f/k/a
  FRONTIER INSULATION AND ASBESTOS, INC.,
GAF CORPORATION,
GARLOCK INC.,
GENERAL ELECTRIC COMPANY,
GENERAL REFRACTORIES COMPANY,
GEORGIA-PACIFIC CORPORATION,
HARBISON-WALKER REFRACTORIES COMPANY INC.,
INDUSTRIAL INSULATION SALES, INC.,
INSULATION DISTRIBUTORS, INC.,
J.H. FRANCE REFRACTORIES CO.,
J.W. ROBERTS, LIMITED,
JOHN CRANE INC.,
  formerly JOHN CRANE-HOUDAILLE INDUSTRIES,
KAISER ALUMINUM & CHEMICAL CORPORATION,
NGC SETTLEMENT TRUST (formerly known as
  ASBESTOS CLAIMS MANAGEMENT CORP.),
NORTH AMERICAN REFRACTORIES COMPANY,
OWENS CORNING,
OWENS-ILLINOIS, INC.,
PITTSBURGH CORNING CORPORATION, individually
  and as successor in interest to
  UNARCO INDUSTRIES, INC.,


WR GRACE-P1Q 009827-018

QUIGLEY COMPANY, INC.,
  a subsidiary of PFIZER, INC.,
RAPID-AMERICAN CORPORATION, a Delaware
  Corporation, individually and as successor in
  interest to PHILIP CAREY MANUFACTURING CO.,
  GLEN ALDEN CORPORATION, and former
  RAPID-AMERICAN CORPORATION, an Ohio
  Corporation,
R.E. HEBERT AND COMPANY, INC.,
RIC-WIL, INCORPORATED,
ROCHESTER INDUSTRIAL INSULATION, INC.,
THE FLINTKOTE COMPANY,
T & N PLC., individually
  and as successor in interest to
  (or alter ego of)
  KEASBEY & MATTISON COMPANY,
UNION CARBIDE CORPORATION,
UNITED STATES GYPSUM COMPANY,
UNITED STATES MINERAL PRODUCTS COMPANY,
  formerly known as UNITED STATES
  MINERAL WOOL COMPANY,
WEB SEAL INC.,
WM. SUMMERHAYS SONS CORPORATION,
W.R. GRACE & CO.-CONN.,
ZURN INDUSTRIES, INC., individually and as
  successor in interest to
  ERIE CITY IRON WORKERS CORPORATION,

                              Defendants.

---

    The plaintiffs, CONSTANCE KIEFER, Personal Representative of the Estate of

RICHARD W. KIEFER, Individually and as the surviving spouse of RICHARD W. KIEFER;

SAM KINEL and ROBERTA KINEL, his spouse                and

              ; JOHN MINTZ and SHIRLEY MINTZ, his spouse; CHARLES

MURZIN and CAROL MURZIN, his spouse; FREDERICK H. RAYMER; and ELMER

SONNEVILLE and ISABELLE SONNEVILLE, his spouse, by her attorneys, LIPSITZ &

REDACTED



OCCUPATIONAL HEALTH
SERVICES

MEMBER OF THE NEW YORK STATE
OCCUPATIONAL HEALTH NETWORK
A UNIVERSITY OF ROCHESTER
MEDICAL CENTER PROGRAM

980 WESTFALL ROAD • SUITE 2



WR GRACE-P10  009827-019

JAN 2 1 2000

New Patient Summary: 10/21/99

**REDACTED**

DOB:  **REDACTED**
SS # :
Employer: Xerox Corporation

. is a 53-year-old married pipe fitter with adenocarcinoma of the colon who presents for evaluation as to whether his colon cancer was caused by his occupational exposures.

HISTORY OF PRESENT ILLNESS:  He was generally in good health until August 1998, when he developed rectal bleeding that was subsequently biopsied and showed adenocarcinoma of the colon. He has since then developed metastatic disease to his liver, and is receiving chemotherapy treatment intra-arterially through an implanted pump.  He is followed at the University of Pittsburgh, and is getting alternate week therapy with FUDR and 5-FU.

He notes, most recently on the last scan of his liver, there was a 15 percent increase in size of the metastatic lesions.

OCCUPATIONAL HISTORY:  He was born in Germany and moved to Rochester at a young age. Before graduating from high school, he worked in a gas station and for a pump and tank company.  He finished high school at age 18, and went to work for Eastman Kodak Company.  He worked there for 1-1/2 years, first as a pipe fitter's helper and then as a B-mechanic, which is a form of a pipe fitter.  In 1966, he entered the United States Army and served for 23 months, first in Alabama and then in Germany as a missile launcher control repairman.  During those years, he is not aware of any asbestos exposure.  When he returned to Rochester in 1967, he went back to work for Eastman Kodak Company, again as a pipe fitter, until 1971.  He describes that he was exposed to asbestos from the beginning, at age 18 working as a pipe fitter.  He mixed asbestos powder and applied it to boilers and pipes.  Over his work history he used asbestos in many forms, including as a pipe fitter and also cutting through asbestos-containing materials.

In 1971, he went to work for Monroe Piping, again as a pipe fitter, where he worked with asbestos.  In 1973, he went to work for Xerox Corporation where he worked ever since.  In all, he worked as a pipe fitter for 26 years.  At Xerox he continued to work with asbestos covered pipes, applying and removing asbestos insulation.  He also worked on building projects where he drilled and sawed through transinte panel with power tools.  He noted in the 1980s, he began to be given protective equipment, such as negative pressure half mask respirators and covering bags for removing asbestos insulation.

He went on disability for his colon cancer in 1998, but has remained a Xerox employee.

Finger Lakes Occupational
Health Services

New Patient S 

**PAST MEDICAL HISTORY:**  His mother had diabetes and renal failure.  His father died of coronary disease.

As a young child at age one, he had serious burns to both arms and was hospitalized for one year.  After that, he was generally healthy.  He had no serious illnesses as a young man, and no serious workplace injuries other than one laceration requiring sutures.

He had no allergies and was on no medications.  In 1992, he had hematuria and was found to have a ureteral obstruction and urolithiasis, and had lithotripsy for kidney stones.  This resolved.  Then in August 1998, he had rectal bleeding leading to the diagnosis of his current colon cancer.

Currently he has onychomycosis (fungus of the nails) as a complication of his chemotherapy.

He notes his pulmonary function tests taken at Xerox were all well above average, and he has no current respiratory complaints.  However, he notes in 1994, he had a chest x-ray that showed pleural plaques.

**SOCIAL HISTORY:**  Social history is significant for cigarette smoking from ages 16 to 53.  While he was smoking, he smoked approximately one carton every two weeks, or approximately 20 packs, slightly more than one pack per day.  He did quit smoking for a period of approximately 1 to 1-1/2 years, so his history is slightly less than 37 pack years.

**PHYSICAL EXAMINATION:**  On physical examination today, his pulse is 72 and faint, respirations 16, blood pressure 130/70, weight 188 pounds, and height 5 feet 10 inches.

There is onychomycosis of the nails primarily of his left hand.  There are no enlarged lymph glands to palpation.  He has an ostomy bag and a palpable implantable pump.  Of note, he is scheduled to have a revision of his colostomy in January 2000.

On heart exam, he has normal S1, S2 without murmurs or gallops.  Chest exam is clear without crackles or wheezes.  There is no edema or clubbing of the extremities.

Spirometry today showed FVC is 130 percent of predicted and FEV-1 is 115 percent of predicted.

Review of chest x-ray by B-reader, Dr. Kennedy from IDE Radiology, no findings of asbestos-related pleural or intestitial disease.  A large nodule is again seen, presumed metastatic from colorectal primary.

**IMPRESSION:** _____ is a 53-year-old man with colon cancer, metastatic to the liver and lung, who is actively undergoing chemotherapy for his disease.

He has a significant history of asbestos exposure beginning at age 18 when he first went to work for Eastman Kodak Company.  Asbestos exposure also occurred during his employment as a pipe fitter for Xerox Corporation.  Both of these were clinically significant.

occupational exposure to asbestos in his work as a pipe fitter at Kodak, Xerox, and Monroe Piping significantly contributed to causation of his metastatic colorectal cancer.

REDACTED

Finger Lakes Occupational
Health Services

New Patient S

WR GRACE-PIQ 009827-021

REDACTED

Discussion:

Asbestos is a known human carcinogen, and according to the U.S. Department of Health and Human Services National Toxicology Program, gastrointestinal cancers were increased in groups occupationally exposed to asbestos. The World Health Organization International Agency on Research in Cancer has rated asbestos as a Class I human carcinogen, and also states that gastrointestinal cancers occurred at an increased incidence in groups occupationally exposed to asbestos.

At the time of dictating this report (11/15/99) I have requested information from Xerox and Kodak on the kind of asbestos (chrysotile, amphibole, both) to which           was exposed. Bonnie Way of the Xerox Health and Safety Department has, in response to this request, told me that Xerox does not have material safety data sheets for the asbestos materials           worked with at the time of his heaviest exposure. Based on my knowledge of commercially used asbestos, I believe he worked with both chrysotile and amphibole asbestos.

William Beckett, MD, MPH
Professor, Department of Environmental Medicine
    (Occupational Medicine Program)
Medical Director, Finger Lakes Occupational Health Services

c:

    Dennis Herron, Esq., 2180 Monroe Avenue, Rochester, NY 14618

WSB/ESI/PR

WR GRACE-PIQ 009827-022

**REDACTED**

MAY 18, 1999

**Chief Complaint:**   Lower rectal and liver metastases.

**History of Present Illness:** The patient presented with rectal bleeding in August, 1998. Subsequent colonoscopy revealed poorly-differentiated adenocarcinoma of rectum, 7 cm from the anal verge.   At that time, he was evaluated by Dr. Jerry Marks in Philadelphia, where it was noted that the patient had bilobar hepatic metastases.   At that time, he underwent radiation and chemotherapy which was performed during November and December of 1998.   A repeat CAT scan was obtained in January which revealed a response to the rectal tumor.   However, the disease in the liver was progressive and subsequently treated with 5-FU/Leucovorin without response and followed by CPT 11 with still progressive disease.   He comes at this time for treatment options.   There is no other evidence of disease.   Except for the side effects of the chemotherapy, the patient is relatively asymptomatic, moving his bowels, active and with a normal appetite.   He has lost 20 lbs but it has been attributed to his side effects from the CPT 11.

**Past Medical History:**

> Medications:  Imodium
> Vitamins
> Herbal supplements and teas

> Allergies: to sulfa (causes a rash)

> Prior Surgeries: 1992 with a ureteral repair, lithotripsy.

> Medical Illness: asbestosis diagnosed in the 60s, history of hepatitis.

**Review of Systems:** significant for gastrointestinal with diarrhea attributed to chemotherapy.

**Family History:** is positive for diabetes and coronary artery disease.

**Social History:** the patient quit smoking last year.   Prior to that, had a 45 pack year history of smoking.  The patient retired as a pipe fitter.   He has not drank alcohol since 1976.

**Physical Exam:** alert, oriented male in no apparent distress.   B/P 120/70, pulse 60, respirations 18, temperature 35.9.   He is 5'11" and weighs 204 lbs.

> **HEENT:** head was normocephalic.  Extraocular muscles intact.  The pupils were equal, round and reactive to light.  The conjunctivae and sclerae were clear.  Neck was supple without thyromegaly or adenopathy.  There were no carotid bruits.

WR GRACE-PIQ 009827-023

**REDACTED**

MAY 18, 1999

Lungs: were clear.

Cardiac: normal S1 and S2.  No murmurs, rubs or gallops.

Abdomen: well-healed right subcostal incision.   The liver was palpable approximately 4 cm below the epigastrium.   I was unable to palpate the right liver.   It is about 5 cm to percussion.   Normal bowel sounds without masses.   The rest of the physical exam was normal.

Extremities: were symmetrical.  Palpable pulses in both the upper and lower extremities.

Neurologic: was grossly intact.

Examination of the CAT scan revealed a bilobar hepatic metastases, the lesion is approximately 11 cm in diameter in left lobe.

Impression: Rectal cancer with bilobar hepatic metastases.

Plan:   The patient is a candidate for gene therapy.   The plan would be to proceed with laparotomy, resection of the primary disease and insertion of intra-arterial catheter for a regional chemotherapy.   Goals, risks and alterative therapies were assessed and discussed with the patient and his wife.   He was seen by Dr. Dave Medich for cancer.

Mark S. Roh, M.D.
Professor and Chairman
Department of Surgery

MSR/lk



# ALLEGHENY UNIVERSITY HOSPITALS
## ALLEGHENY GENERAL
Department of Pathology and Laboratory Medicine
Jan F. Silverman, M.D., Chairman
320 East North Avenue, Pittsburgh, PA 15212-4772
(412) 359-3526   FAX (412) 359-3860

**REDACTED**

## SURGICAL PATHOLOGY REPORT

```
PATIENT:                        SPECIMEN #: S99-8627
MR#:     1402238                Acct:      150001617003
DOB:                            Age/Sex:   52Y M
Ord. Phy: MEDICH,DAVID, M.D.    Location:  90802
Att. Phy: ROH, MARK M., M.D.    Received:  06/28/1999
```

Clinical History:

Specimen:

---

## DIAGNOSTIC IMPRESSION:

RECTUM AND SIGMOID, PARTIAL RESECTION (A):
* ADENOCARCINOMA OF THE COLON, MODERATELY TO POORLY DIFFERENTIATED
* TUMOR EXTENDS TO THE CAUTERIZED DEEP MARGIN OF RESECTION
* THREE OF TWENTY-FIVE (3/25) LYMPH NODES WITH METASTATIC CARCINOMA (SEE SYNOPSIS)

LIVER BIOPSY (B):
* METASTATIC POORLY DIFFERENTIATED CARCINOMA SIMILAR TO THAT SEEN IN THE COLONIC RESECTION

GALLBLADDER, CHOLECYSTECTOMY (C):
* GALLBLADDER WITH NO SPECIFIC PATHOLOGIC CHANGES

## SYNOPSIS

* Tumor type: Adenocarcinoma, NOS.

* Histologic grade
  (For adenocarcinoma/adenosquamous carcinoma): Moderately to poorly differentiated.

* Tumor location: Rectum.

* Tumor size: 3 x 2.5 x 1 cm.

* Local invasion:   Tumor invades into the subserosa (pT3).

* Vascular invasion:     Lymphovascular invasion is identified.

* Surgical margins: The proximal and distal surgical margins are free of tumor, however, the cauterized deep margin of resection shows tumor.

REDACTED

ALLEGHENY UNIVERSITY HOSPITALS
ALLEGHENY GENERAL

 WR GRACE-PIQ 009827-025

## REDACTED

PATIENT:                                    SPECIMEN #: S99-8627
MR#:     1402238

SYNOPSIS (CONTINUED)

- Distance from surgical margins (all tumors)
  and pectinate line (rectal tumors only):        0.6 cm rectal and 20 cm
                                                   proximal.

- Tumor perforation:     No gross tumor perforation identified.

- Gross configuration:     Plaque like.

- Lymph nodes:Three of six perirectal lymph nodes with metastatic
  carcinoma.  Ten pericolic lymph nodes negative for tumor.  Nine
  rectosigmoid lymph nodes negative for tumor.  Total lymph node count is
  3 of 25 lymph nodes with metastatic carcinoma.  There are metastases in
  one to three pericolic/perirectal lymph nodes (pN1).  There is distant
  metastasis to the liver (M1).

- Pre-existing polyp (at site of carcinoma): No evidence of pre-existing
  polyp at site of carcinoma.

- Non-neoplastic bowel: Unremarkable.

- TNM stage:  pT3, pN1, M1.

HGB/an

GROSS DESCRIPTION:

The specimen is submitted in three parts.  Part A, rectum and sigmoid colon,
consists of a segment of 24.5 cm in length portion of rectosigmoid colon
including anal canal.  The perirectal adipose tissue is 2 cm in thickness.
The serosal surface of the sigmoid colon is unremarkable.  There is a
fungating, ulcerated mass, 3 x 2.5 x 1 cm.  This mass is located at 0.6 cm
from the distal margin.  The mass occupies 30% of the circumference of the
rectum. The cut surface displays transmural tumor measuring up to 1 cm in
thickness.  No invasion in the perirectal adipose tissue is appreciated.  The
distal margin is grossly free of the lesion.  The proximal margin is free of
tumor.  The remaining rectosigmoid colon mucosa is unremarkable.  The lymph
nodes of the perirectal and pericolic are not enlarged.  The distal margin
section was submitted for frozen section labeled A1FS; A2 and A3, tumor; A4,
proximal margin section (inked black); A5 and A6, uninvolved colonic mucosa;
A7, four lymph nodes; A8, bisected lymph node; A9, three lymph nodes; A10,
four lymph nodes; A11, three lymph nodes; A12, one bisected node.  These lymph
nodes are found in the perirectal area; A13, four lymph nodes; A14, two lymph
nodes; A15, four lymph nodes found in the pericolic area; A16 and A17, lymph
node found in rectosigmoid artery.

ALLEGHENY UNIVERSITY HOSPITALS
ALLEGHENY GENERAL


WR_GRACE-PIQ 009827-026

## REDACTED

PATIENT:                                    SPECIMEN #: S99-8627
MR#:    1402238


GROSS DESCRIPTION (CONTINUED):

Part B, liver biopsy, consists of a 1.5 x 1 x 0.7 cm tan-white, solid,
homogeneous material.  The specimen is totally submitted in one cassette.
NOTE: The specimen is also submitted for gene therapy and tissue bank.

LV/an

Part C, gallbladder, consists of a 9 cm in length and 3.0 cm in diameter
unfixed, unopened gallbladder.  The serosal surface is tan-pink with multiple
adhesions.  The lumen contains red-brown, mucoid bile and no calculi.  The
mucosal surface is red-brown.  The wall measures 0.4 cm in greatest thickness.
Representative sections are submitted in one cassette.

COG/an


FROZEN SECTION DIAGNOSIS:
(Part A) Adenocarcinoma.  Rectal margin of resection is free of tumor.
(PRO/LV) (Called at 1:55 PM)


Linh H. Vi, M.D.
Resident


            Henry G. Brown, M.D.
                 Pathologist -
By the electronic signature affixed above, the attending physician
certifies that a pathologic examination of the described specimen(s)
was personally conducted, and the diagnosis(es) stated above was rendered. -
06/30/99 9:55

3

NEW YORK STATE
DEPARTMENT OF HEALTH

# CERTIFICATE OF DEATH

WR GRACE-PIQ 009827-027

REGISTER NUMBER
**003137**

*(handwritten top left)* 2700

REDACTED

| RESIDENCE | NCHS | 4C |
|---|---|---|

**1. NAME: FIRST** / MIDDLE / LAST

**2. SEX:** MALE ☒  FEMALE ☐

**3A. DATE OF DEATH:** MONTH 6  DAY 12  YEAR 2000

**3B. HOUR:** 5:24 P

**4A. PLACE OF DEATH:** (Check only one) HOSPITAL: DOA ☐ ER ☐ HOSPITAL OUTPATIENT ☐ HOSPITAL INPATIENT ☐ NURSING HOME ☐ PRIVATE RESIDENCE ☐ OTHER (Specify) ☐

**4B. IF FACILITY, DATE ADMITTED:** MONTH DAY YE

**4C. NAME OF FACILITY:** (If not facility give address) Park Ridge Hospital

**4D. LOCALITY:** (Check one and specify) CITY OF ☐ VILLAGE OF ☐ TOWN OF ☒ Greece

**4E. COUNTY OF DEATH:** Monroe

**4F. MEDICAL RECORD NO.** 856641

**4G. WAS DECEDENT TRANSFERRED FROM ANOTHER INSTITUTION?** (If yes, specify institution name, city or town, county and state) NO ☒ YES ☐

**5. DATE OF BIRTH:** MONTH DAY YEAR

**6. AGE:** 53 yrs.  IF UNDER 1 YEAR: months / days  IF UNDER 1 DAY: hours / minutes

**7A. CITY AND STATE OF BIRTH:** (Country if not U.S.A.) Germany

**7B. IF AGE UNDER 1 YEAR, NAME OF HOSPITAL OF BIRTH:**

**8. SERVED IN U.S. ARMED FORCES?** NO ☐ YES ☒ (Specify years) 1966-68

**9. RACE:** (Black, White, etc.) White

**10. HISPANIC ORIGIN?** (If yes, specify) NO

**11. DECEDENT'S EDUCATION** (Specify only highest grade completed) Elementary/Secondary (0-12) 12   College (1-4 or 5+)

**12. SOCIAL SECURITY NUMBER:**

**13. MARITAL STATUS:** NEVER MARRIED ☐  MARRIED OR SEPARATED ☒  WIDOWED ☐  DIVORCED ☐

**14. SURVIVING SPOUSE:** (If wife, provide maiden name)

**15A. USUAL OCCUPATION:** (Do not enter retired) Pipefitter

**15B. KIND OF BUSINESS OR INDUSTRY:** Office Machines Manufacturing

**15C. NAME AND LOCALITY OF COMPANY OR FIRM:** Xerox, Webster, NY

**16A. RESIDENCE, STATE:**

**16B. COUNTY:**

**16C. LOCALITY:** (Check one and specify) CITY OF ☒ VILLAGE OF ☐ TOWN OF ☐ Rochester

**16F. IF CITY OR VILLAGE, IS RESIDENCE WITHIN CITY OR VILLAGE LIMITS? YES ☐ NO IF NO, SPECIFY TOWN:**

**16D. STREET AND NUMBER OF RESIDENCE:**

**16E. ZIP CODE:**

**17. NAME OF FATHER:** FIRST / MI / LAST

**18. MAIDEN NAME OF MOTHER:** FIRST / MI / LAST

**19A. NAME OF INFORMANT:**

**19B. MAILING ADDRESS:** (Include zip code)

**20A. BURIAL, CREMATION, REMOVAL OR OTHER DISPOSITION:** (Specify) Burial  MONTH 6  DAY 15  YEAR 00

**20B. PLACE OF BURIAL, CREMATION, REMOVAL OR OTHER DISPOSITION:** Holy Sepulchre Cemetery

**20C. LOCATION:** (City or town and state) Rochester, NY

**21A. NAME AND ADDRESS OF FUNERAL HOME:** Michael R. Yackiw Funeral Home, 1650 Empire Blvd., Webster, NY 14580

**21B. REGISTRATION NUMBER:** 02122

**22A. NAME OF FUNERAL DIRECTOR:** Michael R. Yackiw

**22B. SIGNATURE OF FUNERAL DIRECTOR:** *Michael R. Yackiw*

**22C. REGISTRATION NUMBER:** 05559

**23A. SIGNATURE OF REGISTRAR:** *Patricia Plumeri*

**23B. DATE FILED:** MONTH 6  DAY 14  YEAR 00

**23C. BURIAL OR REMOVAL PERMIT ISSUED BY:** *Doris Oliver*

**23D. DATE ISSUED:** MONTH 6  DAY 14  YEAR 00

ITEMS 25-33 COMPLETED BY CERTIFYING PHYSICIAN    — OR —    ITEMS 25-33 COMPLETED BY CORONER OR MEDICAL EXAMINER

**25A. TO THE BEST OF MY KNOWLEDGE, DEATH OCCURRED AT THE TIME, DATE AND PLACE AND DUE TO THE CAUSES STATED.** SIGNATURE ▶  MONTH DAY YEAR  6 12 00

**25A. ON THE BASIS OF INVESTIGATION AND SUCH EXAMINATIONS, AS I FELT NECESSARY, IN MY OPINION DEATH OCCURRED AT THE TIME, DATE AND PLACE AND DUE TO THE CAUSE(S) STATED.** SIGNATURE AND TITLE ▶  CORONER ☐ CORONER'S PHYSICIAN ☐ MEDICAL EXAMINER ☐

**25B. THE PHYSICIAN ATTENDED THE DECEASED** FROM MONTH 6 DAY 12 YEAR 00 TO MONTH 6 DAY 12 YEAR 00

**25C. LAST SEEN ALIVE BY ATTENDANT:** MONTH 6 DAY 12 YEAR 00

**25B. PRONOUNCED DEAD** ON MONTH DAY YEAR

**25C. HOUR:**

**25D. DATE SIGNED:** MONTH DAY YEAR

**25D. ATTENDING PHYSICIAN LICENSE NUMBER:** 131983

**25E. SIGNATURE OF CORONER OR CORONER'S PHYSICIAN, IF OTHER THAN CERTIFIER:**

**25D. NAME OF ATTENDING PHYSICIAN:** TIMOTHY Quill

**26. NAME AND ADDRESS OF CERTIFIER WHO SIGNED 25A.** *T. Landone 1555 Long Pond Rd. Rochester NY 14626*

**27. MANNER OF DEATH:** NATURAL CAUSE ☒ 1  ACCIDENT ☐ 2  HOMICIDE ☐ 3  SUICIDE ☐ 4  UNDETERMINED CIRCUMSTANCES ☐ 5  PENDING INVESTIGATION ☐ 6

**28. WAS CASE REFERRED TO CORONER OR MEDICAL EXAMINER?** NO ☒ YES ☐

**29A. AUTOPSY?** YES ☐ REFUSED ☐

**29B. IF YES, WERE FINDINGS USED TO DETERMINE CAUSE OF DEATH?** YES ☐ NO ☐

CONFIDENTIAL    SEE INSTRUCTION SHEET FOR COMPLETING CAUSE OF DEATH    CONFIDENTIAL

**30. DEATH WAS CAUSED BY:** (ENTER ONLY ONE CAUSE PER LINE FOR (A), (B) AND (C).)

**APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH**

PART I. IMMEDIATE CAUSE (A) *cardio pulmonary Arrest*

DUE TO OR AS A CONSEQUENCE OF: (B) *gastrointestinal bleeding*

DUE TO OR AS A CONSEQUENCE OF: (C) *end stage colonic carcinoma with liver mets*

PART II. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RELATED TO CAUSE GIVEN IN PART I (A):

**31A. INJURY, DATE:** MONTH DAY YEAR

**31B. HOUR:**

**31B. LOCALITY:** (City or town and county and state)

**31C. DESCRIBE HOW INJURY OCCURRED:**

**31D. PLACE OF INJURY:**

**31E. INJURY AT WORK?** NO ☐ YES ☐

**32. WAS DECEDENT HOSPITALIZED IN LAST 2 MONTHS?** NO ☐ YES ☐

**33A. IF FEMALE, WAS DECEDENT PREGNANT IN LAST 6 MONTHS?** NO ☐ YES ☐

**33B. DATE OF DELIVERY:** MONTH DAY YEAR

DOH-1961 (1/95)

*(left margin handwritten)* NAME OF DECEDENT: *Krzysztof Horrod*   DATE OF DEATH: 6/12/00   TIME OF DEATH: 7:24 AM/PM

# LIPSITZ & PONTERIO, LLC

## ATTORNEYS AT LAW


WR GRACE-PIQ 009827-028

JOHN NED LIPSITZ
MICHAEL A. PONTERIO
JOHN P. COMERFORD*
NEIL J. MCKINNON**
KATHLEEN A. BURR
ANNE E. JOYNT

LICENSED WORKERS COMPENSATION REP:
JOHN M. PULLANO

* also admitted in Massachusetts
** also admitted in District of Columbia

NICHOLAS CHURCHILL
KATHERINE M. KULCZYCKI
JILL M. PLATT
SHERITA A. PRUITT

OF COUNSEL:
HENRY D. GARTNER
NAN L. HAYNES

135 DELAWARE AVENUE
SUITE 210
BUFFALO, NEW YORK 14202-2410
(716) 849-0701

FAX: (716) 849-0708
(NOT FOR SERVICE OF PROCESS)

WEB: www.lipsitzponterio.com
E-MAIL: lp@lipsitzponterio.com

June 14, 2006

Rust Consulting, Inc.
Claims Processing Agent
Re: W.R. Grace & Co. Bankruptcy
201 S. Lyndale Avenue
P.O. Box 1620
Faribault, MN 55021

To Whom It May Concern:

This office represents those claimants whose names are listed below in regard to their claims against W.R. Grace & Co or one of the debtors listed in Appendix A of the W.R. Grace Asbestos Personal Injury Questionnaire or both. We submit on behalf of our clients the enclosed W.R. Grace Asbestos Personal Injury Questionnaires, which we have answered based on the information contained in our files, which information we believe to be reasonably accurate.

Adamec, Sr Terry L
Arcarisi, Rudolph J
Ballard, Roger W*
Becker, Frank P
Burka, Robert J
Carey, Joseph A
Confer, James R
Coon, Carlton D
Davis, Allen M*
Durante, Salvatore
Figura, Henry*
Friedman, Richard
Gordon, Paul
Graham, Jr, David H
Harrington, Jr, Charles..
Hecht, Maynard J
Heiman, Douglas*
Huth, Dane*

REDACTED

Izzo, Caroline*

Kiefer, Richard W
Kinel, Sam
Kuhls, William*
Larmon, Francis H
McBride, William
McCabe, Charles J*
Murzin, Charles
O'Neil, Joseph R
Parnell, John
Pazda, Jr, Walter A
Petitt, Russell J
Piechowicz, Richard R
Plant, Robert*
Reele, Peter
Rice, Theodore
Ruhland, Russell



WR GRACE-PIQ 009827-029

June 14, 2006
Page 2

| | |
|---|---|
| Ryan, John* | Voorhees, Edwin E |
| Schroeder, William | Wossner, August F |
| Smalley, Kenneth W | |

Those claimants whose names are followed by an asterisk are individuals represented by this office for whom no W.R. Grace Asbestos Personal Injury Questionnaire was provided by Rust Consulting.    In an attempt to remedy this problem, we have prepared generic forms for these individuals because they do not have bar code identifiers. (We made a number of telephone calls to Rust Consulting and counsel for W.R. Grace & Co. in an attempt to procure additional W.R. Grace Asbestos Personal Injury Questionnaires, but without success.)

Should you have any questions, please do not hesitate to contact me.

Very truly yours,

LIPSITZ & PONTERIO, LLC

By: John Ned Lipsitz

JNL:aej



LIPSITZ & PONTERIO, LLC
135 DELAWARE AVENUE
SUITE 210
BUFFALO, NEW YORK 14202-2410

RUST CONSULTING, INC.
CLAIMS PROCESSING AGENT.
RE: W.R. GRACE & CO. BANKRUPTCY
201 S. LYNDALE AVENUE
P.O. BOX 1620
FARIBAULT, MN 55021

RECD JUN 19 2006

WR GRACE-PIQ 009827-030





# W. R. Grace
# Asbestos Personal Injury Questionnaire

WR_GRACE-PIQ 009822-001

10315607067235
RE:
Lipsitz & Ponterio LLC
135 Delaware Avenue
Suite 506
Buffalo NY 14202-2401

REC'D JUN 1 9 2006

REDACTED



000142067235

**PART I: IDENTITY OF INJURED PERSON AND LEGAL COUNSEL**

WR GRACE-PIQ 009822-002

**REDACTED**

## a. GENERAL INFORMATION

1. Name of Claimant: _____    __
          First              MI             Last
       2. Gender: x Male  ☐ Female

3. Race (for purposes of evaluating Pulmonary Function Test results): ...................................x White/Caucasian
                 ☐ African American
                 ☐ Other

4. Last Four Digits of Social Security Number:          5. Birth Date:

6. Mailing Address:

7. Daytime Telephone Number: .................................................................. ( N/A ) __ __ __ - __ __ __ __

## b. LAWYER'S NAME AND FIRM

1. Name of Lawyer: _John Ned Lipsitz_____

2. Name of Law Firm With Which Lawyer is Affiliated: _Lipsitz & Ponterio, LLC_____

3. Mailing Address of Firm: _135 Delaware Ave., Suite 210, Buffalo, NY 14202_____
             Address          City         State/Province      Zip/Postal Code

4. Law Firm's Telephone Number or Lawyer's Direct Line: ................................................(716) 849-0701

   X  Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in
       lieu of sending such materials to you.

## c. CAUSE OF DEATH (IF APPLICABLE)

1. Is the injured person living or deceased? ...........................................................☐ Living   x Deceased
   If deceased, date of death: ..............................................................................09 /25 / 1999

2. If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete
   the following:
       Primary Cause of Death (as stated in the Death Certificate): ____Mesothelioma of Lung_____
       Contributing Cause of Death (as stated in the Death Certificate): __Not Applicable_____

**PART II: ASBESTOS-RELATED CONDITION(S)**

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the
instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and
diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis
and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your
convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1. Please check the box next to the condition being alleged:
       ☐ Asbestos-Related Lung Cancer      x Mesothelioma
       ☐ Asbestosis                 ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)
       ☐ Other Asbestos Disease        ☐ Clinically Severe Asbestosis
       a. **Mesothelioma:** If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the
          following (check all that apply):
           ☐ diagnosis from a pathologist certified by the American Board of Pathology
           ☐ diagnosis from a second pathologist certified by the American Board of Pathology
           ☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial
             causal role in the development of the condition
           x  other (please specify):___diagnosis by pathologist_____

1



WR GRACE-PIQ 009822-003

## PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

**b.  Asbestos-Related Lung Cancer:**  If alleging Asbestos-Related Lung Cancer, were you diagnosed with primary lung cancer based on the following (check all that apply):

☐  findings by a pathologist certified by the American Board of Pathology

☐  evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐  evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐  evidence of asbestosis determined by pathology

☐  evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐  evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐  diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumonioses* (2000)

☐  a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐  other (please specify): _____

**c.  Other Cancer:**

(i)  If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐ colon    ☐ pharyngeal    ☐ esophageal    ☐ laryngeal    ☐ stomach cancer

☐ other, please specify: _____

(ii)  Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☐  findings by a pathologist certified by the American Board of Pathology

☐  evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐  evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐  evidence of asbestosis determined by pathology

☐  a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☐  other (please specify): _____

2

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE-PIQ 009822-004

d. **Clinically Severe Asbestosis:** If alleging Clinically Severe Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating total lung capacity less than 65% predicted

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

e. **Asbestosis:** If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

3

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE-PIQ 009822-005

f.    **Other Asbestos Disease:**  If alleging any asbestos-related injuries, medical diagnoses, and/or conditions other than those above, was your diagnosis based on the following (check all that apply):

☐  diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐  diagnosis determined by pathology

☐  a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐  a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a second B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐  a chest x-ray reading  other than those described above

☐  a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies*, demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐  a pulmonary function test other than that discussed above

☐  a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☐  a CT Scan or similar testing

☐  a diagnosis other than those above

☐  other (please specify): _____

[REMAINDER OF PAGE INTENTIONALLY BLANK]

4

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

WR_GRACE-PIQ 009822-006

2.  **Information Regarding Diagnosis**

Date of Diagnosis:..................................................................................................07 /28 /1999

Diagnosing Doctor's Name: . Suleyman C. Sarpel, M.D. Diagnosing Doctor's Specialty: Hematology-Oncology ___
Diagnosing Doctor's Mailing Address: 6932 Williams Road, Niagara Falls, New York 14304.

Diagnosing Doctor's Daytime Telephone Number:.......................................................... ( 716 )298 -4869

With respect to your relationship to the diagnosing doctor, check all applicable boxes:

Was the diagnosing doctor your personal physician? ..................................................................... ☐ Yes  x No

Was the diagnosing doctor paid for the diagnostic services that he/she performed? .................................... ☐ Yes  ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor? ............. ☐ Yes  x No

Was the diagnosing doctor referred to you by counsel?.................................................................. ☐ Yes  x No

<u>Claimant objects to this question because it does not appear reasonably calculated to lead to the
discovery of admissible evidence, and because, upon information and belief, it would effectively annoy,
embarrass, oppress, and unduly burden the claimant.</u>

Are you aware of any relationship between the diagnosing doctor and your legal counsel? ......................... ☐ Yes  x No

*If yes, please explain:* _____

<u>Claimant objects to this question because it does not appear reasonably calculated to lead to the
discovery of admissible evidence, and because, upon information and belief, it would effectively annoy,
embarrass, oppress, and unduly burden the claimant.</u>

Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine
at the time of the diagnosis? .................................................................................... ☐ Yes  ☐ No

Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the
diagnosis?.............................................................................................................. ☐ Yes  ☐ No

Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to
diagnosis?.............................................................................................................. ☐ Yes  ☐ No

Did the diagnosing doctor perform a physical examination?................................................................ ☐ Yes  ☐ No

Do you currently use tobacco products?.......................................................................................... ☐ Yes  x No

Have you ever used tobacco products? ....................................................................................... ☐ Yes  x No

*If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco
products and the dates and frequency with which such products were used:*

☐  Cigarettes  .  Packs Per Day (half pack = .5) _____  Start Year __ __ __ __  End Year __ __ __ __

☐  Cigars  Cigars Per Day _____  Start Year __ __ __ __  End Year __ __ __ __

☐  If Other Tobacco Products, please specify (e.g., chewing tobacco): _____

Amount Per Day _____  Start Year __ __ __ __  End Year . __ __ __ __

Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")?.................. ☐ Yes  ☐ No

*If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:*

_____

_____

3.  **Information Regarding Chest X-Ray**

Please check the box next to the applicable location where your chest x-ray was taken (check one):

☐  Mobile laboratory  ☐ Job site  ☐ Union Hall  ☐ Doctor office  x Hospital  ☐ Other: _____

Address where chest x-ray taken: Lewiston, NY 14092 _____

_____

5

WR GRACE-PIQ 009822-007

4.  **Information Regarding Chest X-Ray Reading**

Date of Reading: 07 /27 /1999                                     ILO score: _____

Name of Reader:  Peter Ferin, M.D._____

Reader's Daytime Telephone Number: ...................................................................( 716 )298 - 2277

Reader's Mailing Address:   Mount Saint Mary's Hospital, Lewiston, NY 14092 _____
                                                                    Address

_____
City                                                     State/Province                                 Zip/Postal Code

With respect to your relationship to the reader, check all applicable boxes:

Was the reader paid for the services that he/she performed ....................................................x Yes ☐ No

*If yes, please indicate who paid for the services performed*: Insurance _____

Did you retain counsel in order to receive any of the services performed by the reader? ...............☐ Yes  x No

Was the reader referred to you by counsel?.........................................................................☐ Yes  x No

Claimant objects to this question because it does not appear reasonably calculated to lead to the
discovery of admissible evidence, and because, upon information and belief, it would effectively annoy,
embarrass, oppress, and unduly burden the claimant.

Are you aware of any relationship between the reader and your legal counsel? ..............................☐ Yes  x No

*If yes, please explain:* _____

Claimant objects to this question because it does not appear reasonably calculated to lead to the
discovery of admissible evidence, and because, upon information and belief, it would effectively annoy,
embarrass, oppress, and unduly burden the claimant.

Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?
........................................................................................................................☐ Yes ☐ No

*If the reader is not a certified B-reader, please describe the reader's occupation,  specialty, and the method through
which the reading was made:* _____

5.  **Information Regarding Pulmonary Function Test:** ...........................Date of Test: __ __ / __ __ / __ __ __ __

List your height in feet and inches when test given: .............................................. _____ ft _____ inches

List your weight in pounds when test given: ............................................................... _____ lbs

Total Lung Capacity (TLC): ...................................................................._____% of predicted

Forced Vital Capacity (FVC): ................................................................._____% of predicted

FEV1/FVC Ratio: ..................................................................................._____% of predicted

Name of Doctor Performing Test (if applicable): _____

Doctor's Specialty: _____

Name of Clinician Performing Test (if applicable): _____

Testing Doctor or Clinician's Mailing Address: _____
                                                                                Address

_____
City                                                     State/Province                                 Zip/Postal Code

Testing Doctor or Clinician's Daytime Telephone Number: ........................ ( __ __ __ ) __ __ __ - __ __ __ __

Name of Doctor Interpreting Test: _____

**Doctor's Specialty:** _____

**Interpreting Doctor's Mailing Address:** _____

Address

_____

City                                    State/Province                    Zip/Postal Code

**Interpreting Doctor's Daytime Telephone Number:** .................................... ( __ __ __ ) __ __ __ - __ __ __ __

WR GRACE-PIQ 009822-008

## PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

WR GRACE-PIQ  009822-009

**With respect to your relationship to the doctor or clinician who performed the pulmonary function test check all applicable boxes:**

If the test was performed by a doctor, was the doctor your personal physician? ........................................ ☐ Yes ☐ No

Was the testing doctor and/or clinician paid for the services that he/she performed? ................................ ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician? .. ☐ Yes ☐ No

Was the testing doctor or clinician referred to you by counsel? ................................................ ☐ Yes ☐ No

<u>Claimant objects to this question because it does not appear reasonably calculated to lead to the discovery of admissible evidence, and because, upon information and belief, it would effectively annoy, embarrass, oppress, and unduly burden the claimant.</u>

Are you aware of any relationship between either the doctor or clinician and your legal counsel? ............. ☐ Yes ☐ No

*If yes, please explain:* _____

<u>Claimant objects to this question because it does not appear reasonably calculated to lead to the discovery of admissible evidence, and because, upon information and belief, it would effectively annoy, embarrass, oppress, and unduly burden the claimant.</u>

**Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test?** ........................................ ☐ Yes ☐ No

**With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:**

Was the doctor your personal physician? ........................................ ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? ........................................ ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? ........................... ☐ Yes ☐ No

Was the doctor referred to you by counsel? ........................................ ☐ Yes ☐ No

<u>Claimant objects to this question because it does not appear reasonably calculated to lead to the discovery of admissible evidence, and because, upon information and belief, it would effectively annoy, embarrass, oppress, and unduly burden the claimant.</u>

Are you aware of any relationship between the doctor and your legal counsel? ........................................ ☐ Yes ☐ No

*If yes, please explain* _____

<u>Claimant objects to this question because it does not appear reasonably calculated to lead to the discovery of admissible evidence, and because, upon information and belief, it would effectively annoy, embarrass, oppress, and unduly burden the claimant.</u>

**Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed?** ........................... ☐ Yes ☐ No

6. **Information Regarding Pathology Reports:**

Date of Pathology Report: ........................................................................................ 08 /24 / 2000

Findings: _____Malignant mesothelioma_____

Name of Doctor Issuing Report: _____John c. Maddox, M.D._____

Doctor's Specialty:  .  _____Pathology_____

Doctor's Mailing Address: __Riverside  Regional Medical Center, J. Clyde Morris Boulevard, Newport News, Virginia 23601.

Doctor's Daytime Telephone Number: ........................................................( 757 ) 594 - 2160

WR GRACE-PIQ 009822-010

**With respect to your relationship to the doctor issuing the pathology report, check all ap**

Was the doctor your personal physician? .................................................................................. ☐ Yes  x No

Was the doctor paid for the services that he/she performed? .......................................................... x Yes  ☐ No

*If yes, please indicate who paid for the services performed:*____Retained as expert_____

Did you retain counsel in order to receive any of the services performed by the doctor? ........................... ☐ Yes  ☐ No

Was the doctor referred to you by counsel? ................................................................................ ☐ Yes  ☐ No

<u>Claimant objects to this question because it does not appear reasonably calculated to lead to the discovery of admissible evidence, and because, upon information and belief, it would effectively annoy, embarrass, oppress, and unduly burden the claimant.</u>

Are you aware of any relationship between the doctor and your legal counsel? ........................................ ☐ Yes  ☐ No

*If yes, please explain:* _____

<u>Claimant objects to this question because it does not appear reasonably calculated to lead to the discovery of admissible evidence, and because, upon information and belief, it would effectively annoy, embarrass, oppress, and unduly burden the claimant.</u>

**Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?**

.................................................................................................................................... ☐ Yes  ☐ No

| PART II:  ASBESTOS-RELATED CONDITION(S) (Continued) |
| --- |

WR:GRACE-PIQ 009822-011

7. **With respect to the condition alleged, have you received medical treatment from a doctor for the condition?**
........................................................................................................................................................ x Yes ☐ No

*If yes, please complete the following:*

**Name of Treating Doctor:**    Dr. Lee Ruotsi,_____

**Treating Doctor's Specialty:** _____

**Treating Doctor's Mailing Address:**   Mount Saint Mary's Hospital of Niagara Falls, 5300 Military Road, Lewiston, New York 14092-1997.

**Treating Doctor's Daytime Telephone number:**......................................................................( 716 ) 297 - 4800

**Was the doctor paid for the services that he/she performed?** ............................................................... x Yes ☐ No

*If yes, please indicate who paid for the services performed:.*   __Insurance_____

**Did you retain counsel in order to receive any of the services performed by the doctor?** ......................☐ Yes  x No

[REMAINDER OF PAGE INTENTIONALLY BLANK]

## PART III: DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Grace asbestos-containing products

(b) A worker who personally removed or cut Grace asbestos-containing products

(c) A worker who personally installed Grace asbestos-containing products

(d) A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(e) A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f) If other, please specify.

**Site of Exposure:**

Site Name: _____    Location: _____

Site Type: ☐ Residence  X Business    Site Owner: _____

Employer During Exposure: Scrufari Construction Co.  Unions of which you were a member during your employment: _____

WR GRACE-PIQ 009822-012

| | Basis for Identification of Each Grace Product(s) | Product(s) | Dates and Frequency of Exposure (hours/day, days/year) | Occupation Code (if Code 390, specify) | Industry Code (if Code 490, specify) | Was exposure due to working in or around area where product was being installed, mixed, removed or cut? (If yes, please indicate your proximity to such areas) | Nature of Exposure |
|---|---|---|---|---|---|---|---|
| Job 1 Description: | Upon knowledge, Mr. ____ was exposed to W. R. Grace products, including Monokote and Zonolite, in the course of his his 14 year career as driver for a Western New York construction company. In the course of his work, he was in close proximity to numerous job sites where asbestos-based insulation and fireproofing was installed. | | 1966-1980 | 59 (Driver) | 102 | | (d) |
| Job 2 Description: | | | | | | | |
| Job 3 Description: | | | | | | | |
| Job 4 Description: | | | | | | | |
| Job 5 Description: | | | | | | | |
| Job 6 Description: | | | | | | | |

9

REDACTED

**PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUC**

WR GRACE-PIQ 009822-013

1. Are you asserting an injury caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person?................................................................................................ ☐ Yes ☐ No

   *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to Grace asbestos-containing products. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.*

2. Please indicate the following information regarding the other injured person:

   Name of Other Injured Person: _____ Gender: ☐ Male ☐ Female

   Last Four Digits of Social Security Number: __ __ __ __     Birth Date: __ __ / __ __ / __ __ __

3. What is your Relationship to Other Injured Person: ................................................ ☐ Spouse ☐ Child ☐ Other

4. Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:

   _____

5. Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products:

   From: __ __ / __ __ / __ __ __ __     To: __ __ / __ __ / __ __ __ __

6. Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:

   _____

7. Has the Other Injured Person filed a lawsuit related to his/her exposure?............................................ ☐ Yes ☐ No

   *If yes, please provide caption, case number, file date, and court name for the lawsuit:*

   Caption: _____

   Case Number: _____ File Date: __ __ / __ __ / __ __ __ __

   Court Name: _____

8. Nature of Your Own Exposure to Grace Asbestos-Containing Product:

   _____

9. Dates of Your Own Exposure to Grace Asbestos-Containing Product:

   From: __ __ / __ __ / __ __ __ __     To: __ __ / __ __ / __ __ __ __

10. Your Basis for Identification of Asbestos-Containing Product as Grace Product:

    _____

[REMAINDER OF PAGE INTENTIONALLY BLANK]

WR GRACE-PIQ   009822-014

## PART V: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS.

Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products
(b) A worker who personally removed or cut Non-Grace asbestos-containing products
(c) A worker who personally installed Non-Grace asbestos-containing products

(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(f) If other, please specify.

Claimant objects to all discovery sought by W.R. Grace with respect to any party against which claimant has filed a lawsuit or a claim alleging exposure to asbestos-containing products. Claimant objects because the request does not appear reasonably calculated to lead to the discovery of admissible evidence. Additionally, this request would unduly burden the claimant. Moreover, W.R. Grace improperly seeks to shift to the claimants the burden of proving its affirmative claims for contribution against other parties. Finally, the claimants further object that such requests for information are vague and overly broad.

| Party Against which Lawsuit or Claim was Filed: | | Product(s) | If Dates and Frequency (If Known) (Please Explain here, hours, days, & years) | Occupation Code (Under 59 specify) | Industry Code (Under 59 specify) | Nature of Exposure (Was exposure due to working in or around areas where product was being installed, mixed, removed, or cut? Please explain the nature of your exposure to these products here.) |
|---|---|---|---|---|---|---|
| | | | | | | |
| **Site of Exposure 1** | Job 1 Description: | | | | | |
| Site Name: | | | | | | |
| Address: | Job 2 Description: | | | | | |
| City and State: | | | | | | |
| Site Owner: | Job 3 Description: | | | | | |
| **Site of Exposure 2** | Job 1 Description: | | | | | |
| Site Name: | | | | | | |
| Address: | Job 2 Description: | | | | | |
| City and State: | | | | | | |
| Site Owner: | Job 3 Description: | | | | | |
| **Site of Exposure 3** | Job 1 Description: | | | | | |
| Site Name: | | | | | | |

11



WR GRACE-PIQ 009822-015

## PART VI: EMPLOYMENT HISTORY

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial work experience up to and including your current employment. For each job, include your employer, location of employment, and dates of employment. Only include jobs at which you worked for at least one month. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**Occupation Code:** __33___    If Code 59, specify: ....._____

**Industry Code:** ___102___    If Code 118, specify:_____

**Employer:**
_____Vanadium_____

**Beginning of Employment:** 1938    **End of Employment:** 06/ 1942

**Location:** _____
              Address
____Buffalo_____NY_____
City                                State/Province          Zip/Postal Code


**Occupation Code:** __33_____    If Code 59, specify:_____

**Industry Code:** _____102___    If Code 118, specify:_____

**Employer:** Carborundum_____

**Beginning of Employment:** 07/1942    **End of Employment:** 12/1946

**Location:** _____
              Address
____Buffalo_____NY_____
City                                State/Province          Zip/Postal Code


**Occupation Code:** ___33___    If Code 59, specify:_____

**Industry Code:** _____    If Code 118, specify:_____

**Employer:** _____

**Beginning of Employment:** 7/1942    **End of Employment:** 12/1946

**Location:** _____
              Address
____Buffalo_____NY_____
City                                State/Province          Zip/Postal Code


**Occupation Code:** _____33___    If Code 59, specify:_____

**Industry Code:** ____102___    If Code 118, specify:_____

**Employer:** _Hooker Chemical_____

**Beginning of Employment:** 1/1947    **End of Employment:** 6/1955

**Location:** _____
              Address
____Buffalo_____NY_____
City                                State/Province          Zip/Postal Code

12

## PART VII: LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OI



WR GRACE-PIQ 009822-016

### a. LITIGATION

1. Have you ever been a plaintiff in a lawsuit regarding asbestos or silica? ....................................... x Yes ☐ No

   *If yes, please complete the rest of this Part VII(a) for each lawsuit.   For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2. Please provide the caption, case number, file date, and court name for the lawsuit you filed: See attached cover pages of complaint.

   Caption:        File Date:

   Court Name: _____

3. Was Grace a defendant in the lawsuit? ...............................................................................X Yes ☐ No

4. Was the lawsuit dismissed against any defendant? ........................................................... ☐ Yes ☐ No

   *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

   <u>Claimant objects because the request does not seem reasonably calculated to lead to the discovery of admissible evidence, and would unduly burden the claimant.</u>

5. Has a judgment or verdict been entered? ........................................................................... ☐ Yes ☐ No

   *If yes, please indicate verdict amount for each defendant(s):* _____

6. Was a settlement agreement reached in this lawsuit? ...................................................... ☐ Yes ☐ No
   <u>Claimants object to providing further information in response to Part 7(a)(6), and object especially to the request for the amount of recovery by settlement with particular defendants.  Settlements are a matter of private contract law, and are generally entered into with mutual assurances of confidentiality. Moreover, the amount of a settlement under New York law, and particularly pursuant to the provisions of General Obligations Law § 15-108, is not relevant to these proceedings unless or until a verdict is entered and a judgment is molded.</u>

   *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*
   a. Settlement amount for each defendant: _____
   b. Applicable defendants: _____
   c. Disease or condition alleged: _____
   d. Disease or condition settled (if different than disease or condition alleged): _____

7. Were you deposed in this lawsuit? ................................................................................... ☐ Yes ☐ No

   *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.*

### b. CLAIMS

1. Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? ....................................................... ☐ Yes ☐ No

   *If yes, please complete the rest of this Part VII(b).  If no, please skip to Part VIII.*

2. Date the claim was submitted: ................................................................. __ __ / __ __ / __ __ __ __

3. Person or entity against whom the claim was submitted: _____

4. Description of claim: _____

5. Was claim settled? .......................................................................................................... ☐ Yes ☐ No

6. Please indicate settlement amount: .......... Under New York State Law, settlement figures are confidential.

7.  **Was the claim dismissed or otherwise disallowed or not honored?** ........................................................ ☐ Yes ☐ No

*If yes, provide the basis for dismissal of the claim:*_____

WR GRACE-PIQ 009822-017

WR GRACE-PIQ 009822-018

## PART VIII: CLAIMS BY DEPENDENTS OR RELATED PERSONS

Name of Dependent or Related Person: _____  Gender: ☐ Male ☐ Female

Last Four Digits of Social Security Number: __ __ __ __    Birth Date: __ __ / __ __ / __ __ __ __

Financially Dependent: ..........................................................................☐ Yes ☐ No

Relationship to Injured Party: ☐ Spouse ☐ Child ☐ Other  If other, please specify _____

Mailing Address: _____
                 Address

_____
City                          State/Province              Zip/Postal Code

Daytime Telephone number: .............................................. ( __ __ __ ) __ __ __ - __ __ __ __

## PART IX: SUPPORTING DOCUMENTATION

Please use the checklists below to indicate which documents you are submitting with this form.
**Copies:**

X Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☐ Pathology reports
☐ Supporting documentation of exposure to Grace asbestos-containing products
☐ Supporting documentation of other asbestos exposure

☐ X-rays
☐ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Depositions from lawsuits indicated in Part VII of this Questionnaire
☐ Death Certification

**Originals:**

☐ Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☐ Pathology reports
☐ Supporting documentation of exposure to Grace asbestos-containing products

☐ Supporting documentation of other asbestos exposure
☐ X-rays
☐ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Death Certification

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation. Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:

_____

## PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

The information provided in this Questionnaire must be accurate and truthful. This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim. The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both. 18 U.S.C. §§ 152 & 3571. **TO BE COMPLETED BY THE INJURED PERSON.**

I swear, **under penalty of perjury**, that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate and complete.

Signature: _____    Date: 3 / 3 / 06

Please Print Name:    **REDACTED**    _____

**TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.**

I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete.

Signature: _____    Date: __ __ / __ __ / __ __ __ __

Please Print Name: _____

14



WR GRACE-PIQ 009822-019

SUPREME COURT OF THE STATE OF NEW YORK
EIGHTH JUDICIAL DISTRICT

EIGHTH JUDICIAL DISTRICT
ASBESTOS LITIGATION

In Re   Eighth Judicial District
        Asbestos Litigation

This Document Applies to:

COMPLAINT

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NIAGARA

103735

ORIGINAL FILED

NOV 29 1999

WAYNE F. JAGOW
NIAGARA COUNTY CLERK
LOCKPORT, NEW YORK 14094

**REDACTED**

Plaintiff,

vs.

ACANDS, INC.,
ARMSTRONG WORLD INDUSTRIES, INC.,
  successor in interest to ARMSTRONG
  CORK COMPANY,
CBS CORPORATION, successor in
  interest to WESTINGHOUSE ELECTRIC
  CORPORATION,
COMBUSTION ENGINEERING, INC.,
FIBREBOARD CORPORATION,
FOSTER WHEELER CORPORATION,
FRONTIER INSULATION CONTRACTORS, INC., f/k/a
  FRONTIER INSULATION AND ASBESTOS, INC.,
GAF CORPORATION,
GENERAL ELECTRIC COMPANY,
INSULATION DISTRIBUTORS, INC.,
NGC SETTLEMENT TRUST (formerly known as
  ASBESTOS CLAIMS MANAGEMENT CORP.),
NIAGARA INSULATIONS, INC., f/k/a
  NIAGARA ASBESTOS CO., INC.,
OCCIDENTAL CHEMICAL CORPORATION,
OWENS CORNING,
OWENS-ILLINOIS, INC.,



WR GRACE-PIQ 009822-020

PITTSBURGH CORNING CORPORATION, individually
   and as successor in interest to
   UNARCO INDUSTRIES, INC.,
THE BABCOCK & WILCOX COMPANY,
THE CARBORUNDUM COMPANY,
T & N PLC., individually
   and as successor in interest to
   (or alter ego of)
   KEASBEY & MATTISON COMPANY,
UNION CARBIDE CORPORATION,
UNITED STATES GYPSUM COMPANY,
UNITED STATES MINERAL PRODUCTS COMPANY,
   formerly known as UNITED STATES
   MINERAL WOOL COMPANY,
W.R. GRACE & CO.-CONN.,

                    Defendants.

REDACTED

     The plaintiff,          Executrix of the Estate of      , Individually and as the surviving spouse of     , by her attorneys, LIPSITZ & PONTERIO, LLC, for her verified Complaint against each and every defendant alleges:

     1.     That at all times hereinafter mentioned, the plaintiff,     was and still is a citizen of the State of New York and a resident of the County of Niagara. That she is the surviving spouse of

     2.     If it is deemed that Article 16 of the CPLR applies to this action, the plaintiff asserts that this action falls within one or more of the exceptions set forth in CPLR 1602 including, but not limited to, the exception for cases where a person is held liable for causing the claimant's injury by having acted with reckless disregard for the safety of others (CPLR 1602(7)); the exception for cases involving any person held liable for causing claimant's injury by having unlawfully released into the environment a substance hazardous to public health, safety or the

-1826                    ITEMIZED STATEMENT OF EARNINGS
VERSION 1984.002 * * *        FOR SSN                    * *

**REDACTED**



FROM:   SOCIAL SECURITY ADMINISTRATION
        OFFICE OF CENTRAL RECORDS OPERATIONS
        BALTIMORE, MARYLAND  21235-0000

LIPSITZ AND PONTERIO LLC                NUMBER HOLDER NAME:

135 DELAWARE AVE                        **REDACTED**

SUITE 506
BUFFALO                     NY  14202-2410

PERIOD REQUESTED    JANUARY 1938  THRU  DECEMBER 1980

| YEAR | JAN - MARCH | APRIL - JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|--------------|-------------|-----------|-------|

EMPLOYER NUMBER:  13-1432150
VANADIUM CORP OF AMERICA
PAN AM BLDG 200 PARK AVE
NEW YORK NY 10017-0000

| YEAR | JAN - MARCH | APRIL - JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|--------------|-------------|-----------|-------|
| 1938 |             |              |             | 142.50 $  | 142.50 |
| 1939 |             | 233.88       |             | 291.40 $  | 525.28 |
| 1940 | 315.56      | 290.80       | 330.42      | 361.47 $  | 1,298.25 |
| 1941 | 305.22      | 403.23       | 428.72      | 509.84 $  | 1,647.01 |
| 1942 | 442.83      | 579.56       | 387.84      | $         | 1,410.23 |

EMPLOYER NUMBER:  16-0594485
POWER CITY ROOFING CO INC
1109 15TH STREET
BUFFALO  NY  00000-0000

| YEAR | JAN - MARCH | APRIL - JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|--------------|-------------|-----------|-------|
| 1939 |             |              | 82.50       | $         | 82.50 |

EMPLOYER NUMBER:  16-0629160
BRUNO A SCRUFARI & ASSOC INC
3925 HYDE PARK BLVD PO BOX 458
NIAGARA FALLS NY 14305-1701

| YEAR | JAN - MARCH | APRIL - JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|--------------|-------------|-----------|-------|
| 1942 |             |              | 355.51      | 629.66 $  | 985.17 |
| 1943 | 351.06      |              |             | $         | 351.06 |
| 1947 | 473.45      | 716.79       | 731.15      | 756.40 $  | 2,677.79 |

PAGE 001

```
  .826              ITEMIZED STATEMENT OF EARNINGS      NR GRACE-PIQ 009822-022
.ERSION 1984.002 * * *        FOR SSN                 * *
```

**REDACTED**

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|
| 1948 | 733.05 | 891.15 | 906.00 | 469.80 | $ 3,000.00 |
| 1949 | 744.40 | 944.59 | 913.28 | 397.73 | $ 3,000.00 |
| 1950 | 703.87 | 1,098.11 | 978.45 | 219.57 | $ 3,000.00 |
| 1951 | 1,070.77 | 1,191.57 | 1,080.57 | 257.09 | $ 3,600.00 |
| 1952 | 1,269.42 | 979.68 | 1,119.23 | 231.67 | $ 3,600.00 |
| 1953 | 1,180.23 | 1,220.50 | 1,184.84 | 14.43 | $ 3,600.00 |
| 1954 | 1,227.93 | 1,251.54 | 1,120.53 | | $ 3,600.00 |
| 1955 | 1,167.35 | 1,374.16 | 1,353.01 | 305.48 | $ 4,200.00 |
| 1956 | 1,451.22 | 1,543.87 | 1,204.91 | | $ 4,200.00 |
| 1957 | 1,476.98 | 1,442.76 | 1,280.26 | | $ 4,200.00 |
| 1958 | 1,568.41 | 1,568.12 | 1,063.47 | | $ 4,200.00 |
| 1959 | 1,652.92 | 1,747.81 | 1,399.27 | | $ 4,800.00 |
| 1960 | 2,074.28 | 2,137.41 | 588.31 | | $ 4,800.00 |
| 1961 | 1,925.64 | 1,848.63 | 1,025.73 | | $ 4,800.00 |
| 1962 | 2,009.52 | 2,014.72 | 775.76 | | $ 4,800.00 |
| 1963 | 1,958.71 | 2,010.29 | 831.00 | | $ 4,800.00 |
| 1964 | 2,074.95 | 2,159.37 | 565.68 | | $ 4,800.00 |
| 1965 | 2,073.49 | 2,220.30 | 506.21 | | $ 4,800.00 |
| 1966 | 2,291.13 | 2,325.23 | 1,983.64 | | $ 6,600.00 |
| 1967 | 2,207.68 | 2,368.64 | 2,023.68 | | $ 6,600.00 |
| 1968 | 2,267.06 | 2,598.59 | 2,934.35 | | $ 7,800.00 |
| 1969 | 2,603.98 | 2,467.07 | 2,728.95 | | $ 7,800.00 |
| 1970 | 2,874.81 | 2,444.23 | 2,480.96 | | $ 7,800.00 |
| 1971 | 3,755.97 | 4,044.03 | | | $ 7,800.00 |
| 1972 | 4,707.08 | 3,227.71 | 1,065.21 | | $ 9,000.00 |
| 1973 | 3,378.45 | 4,568.80 | 2,852.75 | | $ 10,800.00 |
| 1974 | 4,759.11 | 5,225.66 | 3,215.23 | | $ 13,200.00 |
| 1975 | 4,999.97 | 4,960.96 | 4,139.07 | | $ 14,100.00 |
| 1976 | 5,284.04 | 5,839.11 | 4,176.85 | | $ 15,300.00 |
| 1977 | 6,074.56 | 6,243.23 | 4,182.21 | | $ 16,500.00 |
| 1978 | - | - | - | - | $ 17,700.00 |
| 1979 | - | - | - | - | $ 22,900.00 |
| 1980 | - | - | - | - | $ 20,889.48 |

```
EMPLOYER NUMBER:  16-0374130
CARBORUNDUM CO
BUFFALO AVE BLDG 30 1
NIAGARA FALLS NY 14302-0000
```

| 1943 | 207.01 | 1,670.22 | | 686.28 | $ 2,563.51 |

PAGE 002



WR GRACE-PIQ 009822-023

```
   ·826              ITEMIZED STATEMENT OF EARNINGS
 ·ERSION 1984.002 * * *      FOR SSN                    *
```

### REDACTED

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|
| 1944 | 624.69 | 677.37 | 751.94 | | $ 2,054.00 |
| 1946 | 179.26 | 850.80 | 631.41 | 515.80 | $ 2,177.27 |
| 1947 | 189.19 | | | | $ 189.19 |

```
EMPLOYER NUMBER:  16-0727183
MARK DELIA PETER SCRUFARI ALFRED
TIRABASSI
D S T CO
2702 LASALLE AVE
NIAGARA FALLS NY 14301-0000
```

| 1949 | | 24.40 | 26.40 | 14.85 | $ 65.65 |

```
EMPLOYER NUMBER:  16-0810641
PARK PAVING CORP
3925 HYDE PARK BLVD PO BOX 458
NIAGARA FALLS NY 14305-1701
```

| 1957 | | 8.03 | | | $ 8.03 |
| 1958 | | | | 26.84 | $ 26.84 |
| 1959 | 5.65 | | 291.88 | | $ 297.53 |
| 1960 | | 18.14 | 4.84 | 54.02 | $ 77.00 |

```
EMPLOYER NUMBER:  16-0807364 A
BRUNO SCRUFARI
P O BOX 458
NIAGARA FALLS NY 14302-0000
```

| 1958 | - | - | - | - | $ 260.42 |

```
THERE ARE NO OTHER EARNINGS RECORDED UNDER THIS SOCIAL SECURITY
NUMBER FOR THE PERIOD(S) REQUESTED.

EARNINGS FOR THE YEARS AFTER  1997 MAY NOT BE SHOWN, OR ONLY
PARTIALLY SHOWN, BECAUSE THEY MAY NOT YET BE ON OUR RECORDS.
```

PAGE 003 END



WR GRACE-PIQ  009822-024

**Mount St. Mary's Hospital**

Laboratory at Niagara Falls

5300 Military Rd.
Lewiston, NY 14092
(716) 298-2207 / (716) 298-2097 FAX

JANICE E. ERRICK, M.D.,Ph.D.
Laboratory Director
INDIRA KARTHA, M.D.
Pathologist

## AUTOPSY REPORT
### Final Autopsy Report

NAME:    **REDACTED**

ACCESSION NO.:
MAU-99-000013

MICROSCOPIC:

Examination of multiple sections taken from the tumor show nearly total necrosis of the lung tumor.  Viable tumor is seen in the area of the mesenteric metastases.  This is shown to consist of a somewhat sarcomatoid pattern, with mitotic figures and pleomorphic nuclei with clumped chromatin and variably prominent nucleoli.  In some portions, the tumor cells have a more epithelioid appearance.  Sections from the liver show mild congestion, sections from the prostate gland show hyperplastic changes without evidence of malignancy.  Heart, spleen, and kidneys are unremarkable, except for congestion.  Similarly, the right lung shows evidence of congestion.

**REDACTED**

| Location: | MSM 6 | | Name: | |
|---|---|---|---|---|
| MEDICAL | | Printed: | Billing #: | M000004901096 |
| Admit Date: | 08/27/99 | February 17, 2000 at 9:27am | MRN: | M340514 |
| Discharge Date: | 09/25/99 | | | |



WR GRACE-PIQ 009822-025

**Mount St. Mary's Hospital**                                    Laboratory at Niagara Falls

5300 Military Rd.                                               JANICE E. ERRICK, M.D.,Ph.D.
Lewiston, NY 14092                                                      Laboratory Director
(716) 298-2207 / (716) 298-2097 FAX                            INDIRA KARTHA, M.D.
                                                                             Pathologist

## AUTOPSY REPORT
### Final Autopsy Report

NAME:    **REDACTED**                           ACCESSION NO.:
                                                        MAU-99-000013

There is mild to moderate atherosclerosis involving the descending aorta and iliac arteries.

RESPIRATORY SYSTEM:

The right lung weighs 550 grams and the left lung weigh 1500 grams. As noted above, the left lung consists nearly entirely of necrotic tumor that is soft and friable. On opening of the extrapulmonary airways, they are patent, with mucoid material, especially on the left side. The pleural surface of the right lung is smooth and speckled with black pigment. On sectioning, the parenchyma is pink and crepitant, and sections float when immersed in fixative. This is not so on the right side, where no normal lung tissue is identified.

GASTROINTESTINAL SYSTEM:

The esophageal mucosa is tan-white in color and smooth, without erosions or ulcerations. The stomach contains small amount of brown mucoid material, and its mucosal lining is normally folded. Examination of the small bowel shows multiple metastatic nodules involving the small bowel mesentery. The largest of these is about 6 cm. in diameter. This tumor is soft and semi-necrotic in appearance. Otherwise, the small bowel serosa is smooth and the mucosa is unremarkable. There is a moderate amount of brownish luminal contents. The colon is normal in size, and contains clumps of fecal material.

The liver weighs 1600 grams, and the external surface is smooth and brown-yellow in color. On cut section, the parenchyma is smooth and the lobular markings are visible. The gallbladder is slightly distended and the duct system is patent. There are no gallstones. The pancreas presents a normal position and elongated shape. Externally and on section it is tan, semi-firm, and finely lobular.

HEMATOPOIETIC SYSTEM:

The spleen weighs 450 grams. The capsule is smooth and slate grey. The trabeculae are prominent and the parenchyma is reddish-purple. The white pulp is inconspicuous. Lymph nodes from mediastinal and periaortic regions are not enlarged. As mentioned above, the small bowel mesentery contains enlarged lymph nodes that presumably contain metastatic tumor. The bone marrow is soft and red and abundant.

GENITOURINARY SYSTEM:

The kidneys weigh 180 grams on the right and 170 grams on the left. Both decapsulate easily leaving a smooth cortical surface. On section, the cortex is well delimited from the medulla and measures about 1 cm. in thickness. The pelves are normal in size and the ureters are patent. The urinary bladder is normal in size and the mucosa is smooth. The internal genitalia are normal for age and sex.

NECK ORGANS AND ENDOCRINE SYSTEM:

The thyroid gland is in the expected location and not enlarged. It shows the usual H-shape and is brown and homogeneous. The adrenal glands are normally placed, and there is soft tumor involving the right adrenal gland. Sectioning of the left adrenal gland shows a normal yellow-orange cortex. The prostate gland weighs about 80 grams and is enlarged. On sectioning, nodules are noted.

CENTRAL NERVOUS SYSTEM:

The brain was not examined.

**REDACTED**

| Location: | MSM 6 | | Name: | |
|---|---|---|---|---|
| MEDICAL | | | Billing #: | M000004901096 |
| Admit Date: | 08/27/99 | Printed: | MRN: | M340514 |
| Discharge Date: | 09/25/99 | February 17, 2000 at 9:27am | | |



WR_GRACE-P1Q 009822-026

**Mount St. Mary's Hospital**                                    Laboratory at Niagara Falls

5300 Military Rd.                                           JANICE E. ERRICK, M.D.,Ph.D.
Lewiston, NY 14092                                                  Laboratory Director
(716) 298-2207 / (716) 298-2097 FAX                              INDIRA KARTHA, M.D.
                                                                        Pathologist

## AUTOPSY REPORT
### Final Autopsy Report

| | | | |
|---|---|---|---|
| **ACCESSION NO.:** | MAU-99-000013 | **NAME:** | **REDACTED** |

| | | | |
|---|---|---|---|
| Date of Death: | 09/25/99 06:55 | **DOB:** | |
| Autopsy Date: | 01/04/00 | Sex: | M    Race: |
| Prosector: | JANICE ERRICK, PATHOLOGIST | MRN #: | M340514 |
| Admitting: | LEE RUOTSI | Billing #: | M000004901096 |
| Copies To: | NORMAN FIORICA | Location: | M6M    Room: 615 |

Autopsy was performed on 9/25/99 at 9:45 a.m.

CLINICAL HISTORY:

The patient was an 80 year old man with a history of worsening respiratory distress. He had a recent pleural biopsy at Niagara Falls Memorial Medical Center revealing mesothelioma. He had seen Dr. S. Sarpel for treatment of the cancer, and had begun chemotherapy on 8/25/99. He was admitted to Mt. St. Mary's Hospital on 8/27 with a large left pleural effusion, for which a chest tube was placed. The patient had an occupational exposure to asbestos. Other medical history includes hypertension, coronary artery disease and type II Diabetes Mellitus. The patient was admitted to Hospice on 9/1/99 and given supportive care and pain medication. He expired peacefully at 6:45 a.m. on 9/25/99. An autopsy was requested by his family.

EXTERNAL EXAMINATION:

The body is that of a thin but well developed elderly man measuring 68 inches in height and weighing about 150 pounds. The external configuration is symmetric, and the skin is thin and elastic. Rigor mortis is absent and livor mortis is observed over the dependent portions of the body. The head is normocephalic and contains thin grey hair. Facial features are normal in placement, and the pupils are isometric and about 5 mm. in diameter. The sclera are clear and the conjunctiva pale pink. The nose is in the midline and the septum is intact. The mouth is normal in size and shape, and there are several native teeth and one silver crown. The neck is thin and cylindrical and or normal length. There is a transdermal medical patch located on the upper right clavicle area. The chest is symmetrical and the nipples are well discerned. There is a soft nodule on the left upper chest, about 3 cm. in diameter. The axillae present no abnormal masses or enlarged lymph nodes. The upper abdomen, immediately caudal to the ribs, is somewhat concave. There is a 3.5 cm. well healed scar on the skin of the left lateral chest. The abdomen is soft and depressible. No abnormal masses are felt. The genitalia are normal for age and sex, and the anus is patent.

PRIMARY INCISION:

The usual Y-shaped incision is made and the subcutaneous tissue is well hydrated. The subcutaneous fat measures 2 cm. in the thorax and 3 cm. in the abdomen. The pleural cavity on the right side presents about 50 cc. of serous fluid. On the left side, the pleural cavity is doubly displaced by a large necrotic tumor that is adherent to the parietal surface of the rib anteriorly and posteriorly. No normal lung tissue is identified. The pericardial sac contains about 50 cc. of straw colored fluid. The abdominal cavity has no appreciable fluid.

CARDIOVASCULAR SYSTEM:

The heart weighs 360 grams, and the apex points to the left. The vessels of the neck present normal relations and are patent. The heart is sectioned according to the flow of blood, revealing a left ventricle of 1.5 cm. in thickness and a right ventricle of 0.6 cm. The tricuspid valve measures 11 cm. in circumference, the pulmonic valve 7 cm., the mitral valve 9 cm. and the aortic valve 8 cm. All valve leaflets are thin and pliable. Examination of the coronary vessels show minimal thickening of the wall and minimal atherosclerotic changes.

| | | | |
|---|---|---|---|
| Location: | MSM 6 | | Name: |
| MEDICAL | | Printed: | Billing #:    M000004001096 |
| Admit Date: | 08/27/99 | February 17, 2000 at 9:27am | MRN:    M340514 |
| Discharge Date: | 09/25/99 | | |

Page -1-



WR GRACE-PIQ 009822-027

**Mount St. Mary's Hospital**

Laboratory at Niagara Falls

5300 Military Rd.
Lewiston, NY 14092
(716) 298-2207 / (716) 298-2097 FAX

JANICE E. ERRICK, M.D.,Ph.D.
Laboratory Director
INDIRA KARTHA, M.D.
Pathologist

## AUTOPSY REPORT
### Final Autopsy Report

NAME:    **REDACTED**

ACCESSION NO.:
MAU-99-000013

## DIAGNOSIS:

1. S/P DIAGNOSIS OF MESOTHELIOMA, LEFT PLEURA, PERFORMED AT NFMMC.
2. MASSIVE NECROTIC TUMOR INVOLVING ENTIRE LEFT LUNG, ADHERENT TO PARIETAL PLEURA AND EXTENDING THROUGH CHEST WALL TO ANTERIOR SURFACE OF RIBS.
3. METASTATIC NECROTIC TUMOR INVOLVING RIGHT ADRENAL GLAND, SMALL BOWEL MESENTERY.
4. MILD TO MODERATE ATHEROSCLEROSIS, DESCENDING AORTA AND ILIAC ARTERIES.
5. PROSTATIC HYPERTROPHY.
6. MILD SPLENOMEGALY.
7. CONGESTION, RIGHT LUNG.

ELECTRONIC SIGNATURE

JANICE ERRICK, PATHOLOGIST

REDACTED

| | | | | | |
|---|---|---|---|---|---|
| Location: | MSM 6 | | | Name: | |
| MEDICAL | | Printed: | | Billing #: | M000004901096 |
| Admit Date: | 08/27/99 | February 17, 2000 at 9:27am | | MRN: | M340514 |
| Discharge Date: | 09/25/99 | | | | |

REDACTED

# MOUNT ST. MARY'S HOSPITAL - DEPARTMENT OF LA

WR GRACE-PIQ 009822-028

5300 Military Road, Lewiston, New York 14092  (716) 298-2207

JANICE E. ERRICK, M.D., Ph.D.                    INDIRA KARTHA, M.D.
Laboratory Director                              Pathologist

## SURGICAL PATHOLOGY REPORT

PATIENT:                                SPECIMEN #:  OS99-13
SOURCE ID #:                            DATE OBTAINED: 09/25/99
SOURCE:      AUTOPSY                    DATE RECEIVED: 09/25/99
DOB:         (Age: 80) M               ROOM NUMBER:   615-2

REFERRING PHYSICIAN: DR. L RUOTSI
                     DR. S SARPEL
                     DR. J. BERTOLINO
                     DR. M KOMIN
                     DR. R. CLARKE
                     DR. N. FIORICA

## **PRELIMINARY REPORT**

CLINICAL HISTORY:

{ None Specified }

SPECIMEN(S):

AUTOPSY

GROSS DESCRIPTION:

=================================================================
## PRELIMINARY DIAGNOSIS

1. S/P DIAGNOSIS OF MESOTHELIOMA, LEFT PLEURA, PERFORMED AT NFMMC.
2. MASSIVE NECROTIC TUMOR INVOLVING ENTIRE LEFT LUNG, ADHERENT TO
   PARIETAL PLEURA AND EXTENDING THRU CHEST WALL TO ANTERIOR
   SURFACE OF RIBS.
3. METASTATIC NECROTIC TUMOR INVOLVING RIGHT ADRENAL GLAND, SMALL
   BOWEL MESENTERY.
4. MILD TO MODERATE ATHEROSCLEROSIS, DESCENDING AORTA AND ILIAC
   ARTERIES.
5. PROSTATIC HYPERTROPHY.
6. MILD SPLENOMEGALY.
7. CONGESTION, RIGHT LUNG.

Janice Errick, MD

sly                          09/27/99
=================================================================

# MOUNT ST. MARY'S HOSPITAL - DEPARTMENT OF LABORATORY

5300 Military Road, Lewiston, New York 14092  (716) 298-2207

WR GRACE-PIQ  009822-029

JANICE E. ERRICK, M.D., Ph.D.          INDIRA KARTHA, M.D.
        Laboratory Director                          Pathologist

## SURGICAL PATHOLOGY REPORT

PATIENT:                                    SPECIMEN #:  OS99-13
SOURCE ID #:                                DATE OBTAINED:  09/25/99
SOURCE:  AUTOPSY                            DATE RECEIVED:  09/25/99
DOB:          (Age: 80) M                   ROOM NUMBER:    615-2

REFERRING PHYSICIAN:  DR. L RUOTSI
                      DR. S SARPEL
                      DR. J. BERTOLINO
                      DR. M KOMIN
                      DR. R. CLARKE
                      DR. N. FIORICA

REDACTED

## **PRELIMINARY REPORT**

CLINICAL HISTORY:

{ None Specified }

SPECIMEN(S):

AUTOPSY

GROSS DESCRIPTION:

=================================================================
## PRELIMINARY DIAGNOSIS

1. S/P DIAGNOSIS OF MESOTHELIOMA, LEFT PLEURA, PERFORMED AT NFMMC.
2. MASSIVE NECROTIC TUMOR INVOLVING ENTIRE LEFT LUNG, ADHERENT TO
     PARIETAL PLEURA AND EXTENDING THRU CHEST WALL TO ANTERIOR
     SURFACE OF RIBS.
3. METASTATIC NECROTIC TUMOR INVOLVING RIGHT ADRENAL GLAND, SMALL
     BOWEL MESENTERY.
4. MILD TO MODERATE ATHEROSCLEROSIS, DESCENDING AORTA AND ILIAC
     ARTERIES.
5. PROSTATIC HYPERTROPHY.
6. MILD SPLENOMEGALY.
7. CONGESTION, RIGHT LUNG.

JAN 3 1                     Janice Errick, MD

sly                        09/27/99
=================================================================

MOUNT ST. MARY'S HOSPITAL  -  INPATIENT INFORMATION  EXPIRED 9-25-99
5300 MILITARY ROAD, LEWISTON NY 14092

PT NAME:
ADDRESS:
CITY:
ZIP:
SEX:                        **REDACTED**
SSN:
MAIDEN NAME
PRIM LANG
DOB:
BIRTHPLACE:

PT NO:    4910139
PT TYPE:  H  HOSPICE          WR GRACE-PIQ 009822-030
ADMIT DATE:    08/30/99    14:30
ROOM/BED:  5032    RELIG:  CAT
CHURCH:    ST LEOS CATHOLIC
LAST HOSPITAL SERVICE (IP OR OP)
   IP ADM AND DISCH: UNAVAILABLE
   OP SERV DATE & TYPE: UNAVAILABLE
PRIOR HOSP DSCH DATE:
PRIOR HOSP LOCTN:
ADM SOURCE:  RA

====== PRIMARY EMERGENCY CONTACT ========         SECONDARY CONTACT INFORMATION ==

NAME: REELE
ADDRESS:
CITY/ STATE:       **REDACTED**
ZIP :
HOME PHONE:
WORK PHONE:              EXT
RELATION:

NAME:
ADDRESS:
CITY/ STATE:
ZIP:                       **REDACTED**
HOME PHONE:
WORK PHONE:
RELATION:

=====INSURANCE INFORMATION =================
PLAN 1:   MEDICARE A 1999 I/P        PLAN 2:   BC/BS WNY I/P
CERT NO:                 PREFIX:      CERT NO:                    PREFIX: YJB
POL NO:   127077588A                 POL NO:   127077588
GROUP NO:           PRIORITY: 2      GROUP NO: 29308          PRIORITY: 3
===========CLINICAL INFORMATION ===========
PROVISIONAL DIAG: DYSPNEA SECOND TO        ADMT PHYS:  RUOTSI, LEE C
                  MESOTHELIOMA ELECTROLYTE ATTN PHYS:  RUOTSI, LEE C
                  IMBALANCE                PCP PHYS:   RUOTSI, LEE C
MEDICAL PRECAUTIONS:
=========================================================ICD 9==
PRINCIPAL DIAGNOSIS (1) *Malignant Mesothelioma*    LOS: 26  DRG:

SECONDARY DIAGNOSIS: (2) *Dyspenia and respiratory*
*Failure due to #1*

(3) *Left pleural Effusion due to #1*


PRINCIPAL PROCEDURE:                                    | DATE

SECONDARY PROCEDURE:

ALLERGIES:                                 TRANSFUSIONS:
CONSULTS:

CONDITION ON DISCHARGE:                 DISCHARGE DATE: 9/25/99
___ WELL   ___ IMPROVED   ___ UNIMPROVED   ___ GUARDED   X EXPIRED   X AUTOPSY

DISCHARGE STATUS: __ HOME   PPS / SNF __ ICF   NON-PPS __ HHA   AMA __ HOSPICE HOME
__ HOSPICE MED FACILITY                       LOCATION   DEATH OR __ DEATH PO

PHYSICIAN SIGNATURE:                     DATE: 10/1/1999          1999



**MOUNT ST. MARY'S HOSPITAL OF NIAGARA FALLS**
5300 Military Road
Lewiston, New York 14092-1997
716-297-4800

HISTORY AND PHYSICAL

Name:                                     Chart #: 3405-14                    Dr: Jack G. Bertolino, M.D.
Adm: 08/27/1999

Location: 501-1

Chief complaint at the time of admission – history of weakness and increasing shortness of breath with a recent diagnosis of mesothelioma to the left lung.

History of present illness                is a pleasant 80 year old white male, unknown to me, a patient of Dr. Ruoti's who I am seeing in his absence.    He is a gentleman with a recent diagnosis of mesothelioma of the lung which is an occupationally related disease from many years of construction work.    He was recently seen by Dr. S. Sarpel and only this week started on chemotherapy.  He made one visit to the emergency room on 8/14, was seen at that time and sent home.  At that time a large mass was noted on chest x-ray with a minimal effusion.  At this time he presents to the emergency room and re-evaluation finds a large left pleural effusion now completely covering and opacifying the left lung mass.    He has increasing shortness of breath off oxygen and increasing weakness.  Was told to come to the emergency room by Dr. S. Sarpel.  No history of any chest pain, falls, disorientation or blackouts.

Past medical history relevant for hypertension, arteriosclerotic heart disease, history of Non-Insulin dependent diabetes for many years and now a new history lung Ca probably occupationally related.

Allergies only to Sulfa products.
Medications include Zestril 5 mg qday: Glucotrol 5 mg qday: Flomax qd.

Social history – nonsmoker, nondrinker.
Worked as a construction worker for many years which is where he probably picked up this particular ailment.  He maintains all his basic and instrumental activities of daily living to this point and lives at home.  He has good family support.

Review of systems – noncontributory.

PHYSICAL EXAMINATION:

Alert and oriented at time but he is a bit lethargic.  Initial blood pressure 98/35, pulse 135 respirations 28, temperature 99.4:  pulse ox on 2 litres is greater than 96%
HEENT – normocephalic, atraumatic cranium.
Pupils equal and react well to light and accommodate, anicteric sclerae noted.
Poor oral hydration is noted at present.
Neck supple with no bruits or adenopathy.
Chest – normal linear with very poor air exchange, he has limited exchange to the entire left lung field with some mild wheezing noted to the right field.

HISTORY & PHYSICAL

ORIGINAL

REDACTED

REDACTED

MOUNT ST. MARY'S HOSPITAL OF NIAGARA FALLS
HISTORY AND PHYSICAL - Page 2



WR GRACE-PIQ 009822-032

Name:                          Chart #: 3405-14            Dr: Jack G. Bertolino, M.D.
Adm: 08/27/1999

Location: 501-1

Heart – S1, S2 noted, no murmur or gallop is present at this time.
Abdomen is soft, nontender with no palpable mass or organomegaly.
Rectal and genitalia deferred at this time.
Extremities show some wasting, no cyanosis and just trace edema.
Neurologically he is grossly intact.

Diagnostic studies show his chest x-ray to show an increased left effusion with opacification obscuring the current tumor: serum sodium 126: potassium 4.7 low serum proteins are noted, his glucose is 162 initially, white count 25.6 with Hgb and Hct of 116 and 34.8 respectively.

IMPRESSION:        80 year old white male with an ongoing left pleural effusion secondary to advancing mesothelioma.

Plan – admission for supportive care and HEM/ONC input with Dr. S. Sarpel.

Case was discussed with the patient and the patient's son.

_____
Jack G. Bertolino, M.D.

JGB/kf
D: 08/27/1999
T: 08/27/1999  4:39 P

cc:    Jack G. Bertolino, M.D.

ORIGINAL                              HISTORY & PHYSICAL


WR GRACE-PIQ 009822-033

**Süleyman C. Sarpel, M.D.**
Hematology-Oncology

6932 Williams Road
Niagara Falls, New York 14304
(716) 298-4869

August 18, 1999

Lee C. Ruotsi, M.D.
5320 Military Road
Suite 104
Lewiston, New York 14092.

RE:

Dear Dr. Ruotsi:

I saw            today in my office for his mesothelioma.

As you know, this 80 year old white male presented to you with shortness of breath. The x-rays revealed the presence of left pleural effusion. The CT Scan confirmed the presence of loculated pleural effusion on the left side. Patient was seen by Dr. Anderson in July. He proceeded with chest tube drainage and thoracostomy. The thoracostomy revealed the presence of tumor involving the pleura. The biopsy revealed the presence of malignant mesothelioma. Dr. Anderson felt that he is not a surgical candidate. He kindly asked for me to see the patient. At the present, patient complains of fatigue, some pressure feeling on the left. Some tenderness on the chest wall. Otherwise, he is still quite active, able to do his own chores. He does have some cough and expectoration. He also notices that his voice is getting hoarse.

At the present, he is not on oxygen. He is able to sleep in his bed during the night. His appetite is poor. In May, his weight was around 187, now it came down to 167. Patient gives a significant past history for asbestos exposure. He was a truck driver and worked for Hooker and Dupont chemical factories.

MEDICATION: At the present, he is not on any pain medication, but he takes some cough medicine with Tylenol in it.

PAST MEDICAL HISTORY: Significant for diabetes, hypertension, benign prostate hypertrophy and gout.


WR GRACE-PIQ   009822-034

Page 2

**REDACTED**

NAME:

DATE:                        AUGUST 18, 1999

SURGICAL HISTORY: Positive for prostate biopsies and hydrocele removal.

SOCIAL HISTORY: Patient is married and lives with his wife.  He has five children and he is a retired truck driver.

FAMILY HISTORY: Mother died from colon cancer.  Sister died from pancreas cancer.  Apparently, she also has meningioma and diabetes. Another sister has diabetes.  Father died from myocardial infarction.

MEDICATION: He is on Flomax, Glucotrol, Zestril and Milk of Magnesium.

REVIEW OF SYSTEM: Denies any headaches.  He has small cataracts. Denies any hay fever.  Sulpha medications upset his stomach. Denies any mouth sores or difficulty swallowing.  He gets short of breath with exertion and he thinks his heartbeat is fast.  He denies any chest pain.  No heartburns or indigestion.  Bowel habits are slow, but denies seeing any blood in it and Milk of Magnesium is helping to move his bowels.  He has a history of benign prostate hypertrophy.  Recently, he started to have very frequent nocturia. He discussed this with Dr. Butsunturn and he started him on Flomax with good results.  Now, he wakes up three or four times per night. He notices that his ankles are puffy.  Denies any skin problems. No bleeding or excessive bruising.  Recently, he noticed that his right elbow is swollen.  It was painful, but it is getting better now.  He is getting cramps in his fingers, especially both thumbs, associated with some numbness

PHYSICAL EXAMINATION: Thin, but well developed white male.  Alert and oriented X 3.  He does have mild dyspnea.  Sclerae clear, conjunctivae normal.  Mouth mucosa and pharynx normal.  No neck or supraclavicular lymphadenopathy.  Lung examination revealed decreased breathing sounds on the left compared to the right. There is a mild left chest wall tenderness.  S1, S2 without S3, S4. Pulse 88 per minute.  Abdomen soft, non-tender.  No organomegaly or mass.  No axial or inguinal lymphadenopathy.  1+ right ankle edema.  There is effusion in the right elbow joint with some inflammation.  Deep tendon reflex is trace in lower extremities and 1+ in upper extremities.  Romberg is negative.  Heel and toe walkings are normal.



WR GRACE-PIQ 009822-035

Page 3

**REDACTED**

NAME:

DATE:                        AUGUST 18, 1999

LABORATORY DATA: CT Scan of the lung revealed a mass involving most of the left hemithorax.

IMPRESSION: Patient with malignant tumor of the pleura, most likely we are dealing with mesothelioma.  Obviously, primary lung cancer cannot be definitely ruled out.  I discussed these findings with patient and his family.  I explained the treatment options including experimental treatments and the standard treatments for his disease.  I suggest the patient either try Gemzar as a single agent or we can arrange hospice care without any treatment. Patient will call me with his decision.  We also discussed nutrition and I emphasized for him not to lose any further weight.

I thank you very much again for referring this patient to me and I will keep you informed regarding patient's progress.


Sincerely yours,

Süleyman C. Sarpel, M.D.

SCS/jd

cc: Timothy Anderson, M.D.



MR_GRACE-PIQ 009822-036

**RIVERSIDE**
*REGIONAL MEDICAL CENTER*
PHONE: (757) 594-2160 • FAX: (757) 594-2951
J. CLYDE MORRIS BOULEVARD
NEWPORT NEWS, VIRGINIA 23601

PATHOLOGY DEPARTMENT
PATHOLOGISTS
W.B. HELWIG, M.D.
J.F. LEGIER, M.D.
J.C. MADDOX, M.D.
C.M. CAPLAN, M.D.
D.M. SMITH, M.D.
C.F. GREELEY, M.D.

## SURGICAL PATHOLOGY CONSULTATION REPORT

Patient:
Med Rec #:  1000000845238
DOB/Age/Sex:            (Age: 81)M
Location:  LAB SPECIMENS

Specimen #:  **S00-7317**
Account #:  8452380235
Collected:  06/22/00
Received:  06/22/00
Reported:  08/24/00

Attendings
Copies to:  **LIPSITZ & PONTERIO, LLC**
**ATTN JOHN P COMERFORD**
**135 DELAWARE AVENUE, SUITE 506**
**BUFFALO, NY 14202-2410**
**(716) 849-0701**
**FAX (716) 849-0708**

**RECEIVED:**
1: SN99-3061 (13 SLIDES/3 BLOCKS)
2: ACN99-548 (1 SLIDE)

**CLINICAL DIAGNOSIS AND HISTORY:**
{See Above}

**MICROSCOPIC EXAMINATION:**
This 80 year old man was employed as a construction worker from 1938 until 1980, during which time he was exposed to various asbestos-containing materials, including spray products used on steel beams and asbestos thermal insulation.  He was a non-smoker, as were members of his immediate family.

In January 1997, multiple prostate biopsies (S97-417) reportedly showed atypical glandular changes, not quite diagnostic of malignancy.  A prostate biopsy in 1986 (3261-86 NFH) was also negative, reportedly. Medical records back to 1984 show no other dysplasias or malignancies.

In the summer of 1999 he presented with shortness of breath and was found to have a large left pleural effusion obscuring a large pleural mass. This was biopsied at Niagra Falls Hospital and diagnosed as malignant mesothelioma.  He was begun on chemotherapy the middle of August 1999. He was admitted to Mount St.Mary's Hospital on 8-27-99 because of a large left pleural effusion and dyspnea. His "proof of death" certificate dated 9-25-99 lists the causes of death as "invasive mesothelioma of lung" and "respiratory arrest".

Chest CT scan on 8-29-00 reportedly showed the left pleural tumor, loculated effusion, and several pulmonary metastases on the right side.

Review of a bronchial or sputum cytology (CN99-548) is non-diagnostic.

**REDACTED**                    Page 1                    Continued on Next Page



WR GRACE-PIQ 009822-037

 **RIVERSIDE**

*REGIONAL MEDICAL CENTER*

PHONE: (757) 594-2160 · FAX: (757) 594-2951
J. CLYDE MORRIS BOULEVARD
NEWPORT NEWS, VIRGINIA 23601

**PATHOLOGY DEPARTMENT**

PATHOLOGISTS
W.B. HELWIG, M.D.
J.F. LEGIER, M.D.
J.C. MADDOX, M.D.
C.M. CAPLAN, M.D.
D.M. SMITH, M.D.
C.F. GREELEY, M.D.

Patient:                  **REDACTED**                          Specimen #:  **S00-7317**

**MICROSCOPIC EXAMINATION (continued):**

Neither tumor cells nor asbestos bodies are detected.

Review of the biopsy slides (labelled SN99-3061 NFMMC and S99-6013
Mount St.Mary's Hospital) shows a malignant sarcomatoid neoplasm composed
of plump spindled cells with areas of bland necrosis and probable
subpleural invasion. The nuclei are long-oval or slightly wavy. There are
no glands or papillae.  There is no lung parenchyma, so direct estimation
of the pulmonary asbestos burden is impossible.

Review of the original immunoperoxidase stains shows:
            HBME:  many tumor cells, 2+ positive
     Cytokeratin:  many tumor cells, 2-3+ positive
             EMA:  all tumor cells, negative
         Ber-EP4:  all tumor cells, negative
           S-100:  few tumor cells, 1+ positive
           HMB45:  all tumor cells, negative

Additional new immunoperoxidase stains include:
     Keratin 5/6:  all tumor cells, negative (rare serosal cell +)
      Calretinin:  all tumor cells, negative
   CD34 (QBend10):  all tumor cells, negative (capillaries +)
(*Control sections stained appropriately.)

With a reasonable degree of medical certainty, these features indicate a
malignant mesothelioma, sarcomatoid type.  It is clearly not a prostate
carcinoma.

With a reasonable degree of medical certainty, based on the occupational
exposure history, asbestos caused this lethal malignant pleural
mesothelioma.

================================================================
**FINAL DIAGNOSIS:**

Pleura, left, biopsy:  Malignant mesothelioma, sarcomatoid type.

jcm/08/24/00                              John C. Maddox, M.D.

================================================================



**REDACTED**

At a Surrogate's Court, held in and for the County of
in the City of Lockport, New York, on the date set forth below.

WR GRACE-PIQ 009822-038

IN THE MATTER OF THE ESTATE OF

_____, Deceased

DATE OF WILL:____9-8-65____
DATE OF DEATH:____9-25-99____

FILE NO. _72582_
*LETTERS TESTAMENTARY*

**REDACTED**

THE PEOPLE OF THE STATE OF NEW YORK:

To All to Whom These Presents Shall Come or May Concern, Send Greeting:

Know ye, That at the County of Niagara on the date set forth below, before the Surrogate of the Niagara County Surrogate's Court, the aforesaid Last Will and Testament of the above named Decedent was proved, and is now approved and allowed by us.  The Decedent having been at or immediately prior to his/her death an inhabitant of Niagara County, and/or having assets located within the County of Niagara which are in need of administration, by reason whereof the proving and registering of said Will, and the granting administration of all and singular the goods, chattels and credits of the said Testator/rix and also the auditing, allowing and final discharging the account thereof, does belong unto us, now therefore, the administration of all and singular the goods, chattels and credits of the Decedent's Estate and the execution of any and all powers conferred by the Decedent's Will, are here granted unto___

_____, as Executor/rix , without bond, he/she having been first duly sworn to faithfully and honestly discharge the duties of such Executor/rix according to law.  As to any action brought to recover damages for negligently causing the death of said Decedent, these Letters are limited to the prosecution thereof and you, the Executor/rix, are hereby restrained from making any compromise of said action or enforcing any judgment recovered thereon until further Order of this Court.

IN TESTIMONY WHEREOF, We have caused the seal of

office of our said Surrogate to be hereunto affixed.

WITNESS the signature of the Surrogate

of our said County of Niagara.

HON.  PETER L. BRODERICK, SR., SURROGATE
HON.  JOHN F. BATT, ACTING SURROGATE

ENTERED:___5-24-2000___

RONALD A. SUTTON, ESQ., LL.M., CHIEF CLERK
MICHAEL C. VERUTO, ESQ., DEPUTY CHIEF CLERK

Ltr-test.frm 01/00

**NEW YORK STATE DEPARTMENT OF HEALTH**

**CERTIFICATE OF DEATH**

STATE FILE NUMBER

WR GRACE-PIQ  009822-039

RECORDED DISTRICT 3152

REGISTER NUMBER 294

RESIDENCE

1. NAME: FIRST / MIDDLE / LAST
2. SEX: MALE
3A. DATE OF DEATH: MONTH Sept DAY 25 YEAR 1999
3B. HOUR: 6:34p m

4A. PLACE OF DEATH: HOSPITAL INPATIENT
4B. IF HOSPITAL, DATE ADMITTED: Aug. 27, 1999 / Aug 27 99
4C. NAME OF FACILITY: Mt. St. Mary's Hospital
4D. LOCALITY: TOWN OF Lewiston
4E. COUNTY OF DEATH: Niagara
4F. MEDICAL RECORD NO. 340514
4G. WAS DECEDENT TRANSFERRED FROM ANOTHER INSTITUTION? NO

5. DATE OF BIRTH
6. AGE: 80 yrs. / N/A / N/A
7A. CITY AND STATE OF BIRTH: Niagara Falls, N.Y.
7B. N/A

8. SERVED IN U.S. ARMED FORCES? YES, WWII
9. RACE: white
10. HISPANIC ORIGIN? NO
11. DECEDENT'S EDUCATION: Elementary/Secondary 11

12. SOCIAL SECURITY NUMBER
13. MARITAL STATUS: MARRIED
14. SURVIVING SPOUSE

15A. USUAL OCCUPATION: Truck Driver
15B. KIND OF BUSINESS OR INDUSTRY: Construction
15C. NAME AND LOCALITY OF COMPANY OR FIRM: Scrufari Const., NiagaraFalls,NY

16A. RESIDENCE, STATE:
16C. LOCALITY: TOWN OF Niagara
16E. ZIP CODE: N/A
16D. STREET AND NUMBER OF RESIDENCE:

17. NAME OF FATHER
18. MAIDEN NAME OF MOTHER

19A. NAME OF INFORMANT:
19B. MAILING ADDRESS:

20A. BURIAL, CREMATION: entombment  MONTH Sept DAY 28 YR 99
20B. PLACE OF BURIAL: St. Joseph's Cemetery
20C. LOCATION: Niagara Falls, N.Y.
21A. NAME AND ADDRESS OF FUNERAL HOME: Otto Redanz Funeral Home, LaSalle Park Chapel, 2215 Military Rd., Niagara Falls, N.Y. 14304
21B. REGISTRATION NUMBER: 01560
22A. NAME OF FUNERAL DIRECTOR: Randall A. Cichocki
22C. REGISTRATION NUMBER: 05809

23A. SIGNATURE OF REGISTRAR: Donna Garfunkel
23B. DATE FILED: 9 8 99
24A. SIGNATURE: Donna Garfunkel
24B. DATE ISSUED: 9 27 99

ITEMS 25-33 COMPLETED BY CERTIFYING PHYSICIAN — OR — ITEMS 25-33 COMPLETED BY CORONER OR MEDICAL EXAMINER

25A. SIGNATURE: 9 25 99
25B. FROM 8 27 99 to 9 25 99  25C. 9 29 99
25D. NAME OF ATTENDING PHYSICIAN: Roots
25D. LICENSE NUMBER: 175439

26. NAME AND ADDRESS OF CERTIFIER: Lee Roots, 5320 Military Rd., Suite 104, Lewiston, NY 14092

27. MANNER OF DEATH: NATURAL CAUSE
28. AUTOPSY: YES
29A. AUTOPSY: NO

30. DEATH WAS CAUSED BY:
PART I IMMEDIATE CAUSE: (A) Mesothelioma of lung   Months
DUE TO OR AS A CONSEQUENCE OF: (B)
DUE TO OR AS A CONSEQUENCE OF: (C)
PART II OTHER SIGNIFICANT CONDITIONS:

DOH-1961 (1/95)    VS-60



**REDACTED**

At a Surrogate's Court, held in and for the County WR GRACE-PIQ 009822-040 lse
in the City of Lockport, New York, on the date set forth below.

IN THE MATTER OF THE ESTATE OF

_____, Deceased

FILE NO. 72582

LETTERS TESTAMENTARY

DATE OF WILL: ___9-8-65___
DATE OF DEATH: ___9-25-99___

THE PEOPLE OF THE STATE OF NEW YORK:

To All to Whom These Presents Shall Come or May Concern, Send Greeting:

Know ye, That at the County of Niagara on the date set forth below, before the Surrogate of the Niagara County Surrogate's Court, the aforesaid Last Will and Testament of the above named Decedent was proved, and is now approved and allowed by us. The Decedent having been at or immediately prior to his/her death an inhabitant of Niagara County, and/or having assets located within the County of Niagara which are in need of administration, by reason whereof the proving and registering of said Will, and the granting administration of all and singular the goods, chattels and credits of the said Testator/rix and also the auditing, allowing and final discharging the account thereof, does belong unto us, now therefore the administration of all and singular the goods, chattels and credits of the Decedent's Estate and the execution of any and all powers conferred by the Decedent's Will, are here granted un _____

_____, as Executor/rix , without bond, he/she having been first duly sworn to faithfully and honestly discharge the duties of such Executor/rix according to law. As to any action brought to recover damages for negligently causing the death of said Decedent, these Letters are limited to the prosecution thereof and you, the Executor/rix, are hereby restrained from making any compromise of such action or enforcing any judgment recovered thereon until further Order of this Court.

IN TESTIMONY WHEREOF, We have caused the seal of

office of our said Surrogate to be hereunto affixed.

WITNESS the signature of the Surrogate

of our said County of Niagara.

HON. PETER L. BRODERICK, SR., SURROGATE
HON. JOHN F. BATT, ACTING SURROGATE

ENTERED: ___5-24-2000___

RONALD A. SUTTON, ESQ., LL.M., CHIEF CLERK
MICHAEL C. VERUTO, ESQ., DEPUTY CHIEF CLERK

Ltr-test.frm 01/00

# LIPSITZ & PONTERIO, LLC

## ATTORNEYS AT LAW

JOHN NED LIPSITZ
MICHAEL A. PONTERIO
JOHN P. COMERFORD*
NEIL J. MCKINNON**
KATHLEEN A. BURR
ANNE E. JOYNT

LICENSED WORKERS COMPENSATION REP:
JOHN M. PULLANO

\* also admitted in Massachusetts
\*\* also admitted in District of Columbia

KATHERINE M. KULCZYCKI
JILL M. PLATT
SHERITA A. PRUITT

OF COUNSEL:
HENRY D. GARTNER
NAN L. HAYNES

135 DELAWARE AVENUE
SUITE 210
BUFFALO, NEW YORK 14202-2410
(716) 849-0701

FAX: (716) 849-0708
(NOT FOR SERVICE OF PROCESS)

WEB: www.lipsitzponterio.com
E-MAIL: lp@lipsitzponterio.com



June 14, 2006

Rust Consulting, Inc.
Claims Processing Agent
Re: W.R. Grace & Co. Bankruptcy
201 S. Lyndale Avenue
P.O. Box 1620
Faribault, MN 55021

To Whom It May Concern:

This office represents those claimants whose names are listed below in regard to their claims against W.R. Grace & Co or one of the debtors listed in Appendix A of the W.R. Grace Asbestos Personal Injury Questionnaire or both. We submit on behalf of our clients the enclosed W.R. Grace Asbestos Personal Injury Questionnaires, which we have answered based on the information contained in our files, which information we believe to be reasonably accurate.

Adamec, Sr Terry L
Arcarisi, Rudolph J
Ballard, Roger W*
Becker, Frank P
Burka, Robert J
Carey, Joseph A
Confer, James R
Coon, Carlton D
Davis, Allen M*
Durante, Salvatore
Figura, Henry*
Friedman, Richard
Gordon, Paul
Graham, Jr, David H
Harrington, Jr, Charles..
Hecht, Maynard J
Heiman, Douglas*
Huth, Dane*

Izzo, Caroline*
Jurzysta, Heinrich J
Kiefer, Richard W
Kinel, Sam
Kuhls, William*
Larmon, Francis H
McBride, William
McCabe, Charles J*
Murzin, Charles
O'Neil, Joseph R
Parnell, John
Pazda, Jr, Walter A
Petitt, Russell J
Piechowicz, Richard R
Plant, Robert*

Rice, Theodore
Ruhland, Russell

REDACTED



WR GRACE-PIQ 009822-042

June 14, 2006
Page 2

Ryan, John*                          Voorhees, Edwin E
Schroeder, William                   Wossner, August F
Smalley, Kenneth W

     Those claimants whose names are followed by an asterisk are individuals represented by this office for whom no W.R. Grace Asbestos Personal Injury Questionnaire was provided by Rust Consulting.   In an attempt to remedy this problem, we have prepared generic forms for these individuals because they do not have bar code identifiers.  (We made a number of telephone calls to Rust Consulting and counsel for W.R. Grace & Co. in an attempt to procure additional W.R. Grace Asbestos Personal Injury Questionnaires, but without success.)

     Should you have any questions, please do not hesitate to contact me.

     Very truly yours,

     LIPSITZ & PONTERIO, LLC

     By: John Ned Lipsitz

JNL:aej



WR GRACE-PIQ 009822-043

RECD JUN 19 2006

UNITED STATES POSTAGE
PB $ 22.30 0
JUN 16 06
MAILED FROM BUFFALO NY 14202

LIPSITZ & PONTERIO, LLC
135 DELAWARE AVENUE
SUITE 210
BUFFALO, NEW YORK 14202-2410

RUST CONSULTING, INC.
CLAIMS PROCESSING AGENT
RE: W.R. GRACE & CO. BANKRUPTCY
201 S. LYNDALE AVENUE
P.O. BOX 1620
FARIBAULT, MN 55021

ROC -> FX    SE    MSP
WGT: 0226   TOTAL: 01102
AR: MSP AT 20:50   ORG:ROC 14
LV: ROC AT 05:00   05/16/06

STP
P
550