# Exhibit D



WR GRACE PIQ 55638-0001

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

**REDACTED**



10315607066377

RE:
Thornton Early & Naumes
100 Summer Street, 30th Floor
Boston MA 02110

REC'D JUL 1 2 2006



000487066377



WR GRACE PIQ 55638-0002

**PART I: IDENTITY OF INJURED PERSON AND LEGAL COUNSEL**

**a. GENERAL INFORMATION**     **REDACTED**

REDACTED

1. Name of Claimant: _____
   First          MI          Last

2. Gender: ☒ Male  ☐ Female

3. Race (for purposes of evaluating Pulmonary Function Test results): ................... ☒ White/Caucasian
   ☐ African American
   ☐ Other

4. Last Four Digits of Social Security Number: _____      5. Birth Date: _____

6. Mailing Address: _____
   Address          City          State/Province          Zip/Postal Code

7. Daytime Telephone Number: ...............................................

**b. LAWYER'S NAME AND FIRM**

1. Name of Lawyer: _____Michael P. Thornton_____

2. Name of Law Firm With Which Lawyer is Affiliated: _____Thornton and Naumes, LLP_____

3. Mailing Address of Firm: 100 Summer St, 30th Floor   Boston          MA          02110
   Address          City          State/Province          Zip/Postal Code

4. Law Firm's Telephone Number or Lawyer's Direct Line: ........................ ( 617 ) 720 - 1333

   ☒ Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in lieu of sending such materials to you.

**c. CAUSE OF DEATH (IF APPLICABLE)**

1. Is the injured person living or deceased? ............................................... ☒ Living  ☐ Deceased
   If deceased, date of death: ........................................... ___ / ___ / ___

2. If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete the following:
   Primary Cause of Death (as stated in the Death Certificate): _____
   Contributing Cause of Death (as stated in the Death Certificate): _____

**PART II: ASBESTOS-RELATED CONDITION(S)**

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1. Please check the box next to the condition being alleged:
   ☐ Asbestos-Related Lung Cancer          ☐ Mesothelioma
   ☒ Asbestosis          ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)
   ☐ Other Asbestos Disease          ☐ Clinically Severe Asbestosis

   a. Mesothelioma: If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following (check all that apply):
      ☐ diagnosis from a pathologist certified by the American Board of Pathology
      ☐ diagnosis from a second pathologist certified by the American Board of Pathology
      ☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial causal role in the development of the condition
      ☐ other (please specify): _____

1

WR GRACE PIQ  55638-000S

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

b. **Asbestos-Related Lung Cancer:** If alleging Asbestos-Related Lung Cancer, were you diagnosed with primary lung cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐ other (please specify): _____

c. **Other Cancer:**

(i) If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐ colon    ☐ pharyngeal    ☐ esophageal    ☐ laryngeal    ☐ stomach cancer

☐ other, please specify: _____

(ii) Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☐ other (please specify): _____

2

WR GRACE  PIQ  55638-0004

**PART II    ASBESTOS RELATED CONDITIONS (Continued)**

**d. Clinically Severe Asbestosis:** If alleging Clinically Severe Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating total lung capacity less than 65% predicted

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

**e. Asbestosis:** If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

*See attached Exhibit A*

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs of Pneumoconioses* (2000)

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs of Pneumoconioses* (2000)

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

3



WR GRACE PIQ 55938-0006

**PART II: ASBESTOS RELATED CONDITION(S) (Continued)**

f.  **Other Asbestos Disease:**  If alleging any asbestos-related injuries, medical diagnoses, and/or conditions other than those above, was your diagnosis based on the following (check all that apply):

☐  diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐  diagnosis determined by pathology

☐  a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐  a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐  a chest x-ray reading  other than those described above

☐  a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEVI/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐  a pulmonary function test other than that discussed above

☐  a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☐  a CT Scan or similar testing

☐  a diagnosis other than those above

☐  other (please specify): _____

[REMAINDER OF PAGE INTENTIONALLY BLANK]



WR GRACE  PIQ  65638-0008

**PART II. ASBESTOS RELATED CONDITION(S) (Continued)**

2. **Information Regarding Diagnosis**

Date of Diagnosis: _See Attached EXHIBIT A_ .................................................. __ __ / __ __ / __ __ __ __

Diagnosing Doctor's Name: _See Attached EXHIBIT A_ _____

Diagnosing Doctor's Specialty: _See Attached EXHIBIT A_ _____

Diagnosing Doctor's Mailing Address: _See Attached EXHIBIT A_ _____

                                 Address

                   _See Attached EXHIBIT A_

City                                       State/Province            Zip/Postal Code

Diagnosing Doctor's Daytime Telephone Number: ................................................( **See Attached EXHIBIT A**)

With respect to your relationship to the diagnosing doctor, check all applicable boxes:

Was the diagnosing doctor your personal physician?        See OBJECTION 1 & 4 .......... ☐ Yes ☐ No

Was the diagnosing doctor paid for the diagnostic services that he/she performed? See OBJECTION 1 & 4 ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor? **See OBJECTION 1, 3, & 4** ☐ Yes ☐ No

Was the diagnosing doctor referred to you by counsel?    See OBJECTION 1 & 3 .................................... ☐ Yes ☐ No

Are you aware of any relationship between the diagnosing doctor and your legal counsel? See OBJECTION 1,3 & 4 ..... ☐ Yes ☐ No

*If yes, please explain:* _____

Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the diagnosis?        See OBJECTION 2 ................................... ☐ Yes ☐ No

Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?        See OBJECTION 2 ................................... ☐ Yes ☐ No

Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to diagnosis?        See OBJECTION 2 ................................... ☐ Yes ☐ No

Did the diagnosing doctor perform a physical examination?   See Attached EXHIBIT A ................... ☐ Yes ☐ No

Do you currently use tobacco products? ................................................................................... ☐ Yes ☒ No

Have you ever used tobacco products? ........................................................................ ☒ Yes ☐ No

*If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco products and the dates and frequency with which such products were used:*

☒ Cigarettes    Packs Per Day (half pack = .5) _1_   Start Year _1955_ End Year _1975_

☐ Cigars    Cigars Per Day _____      Start Year __ __ __ End Year __ __ __

☐ If Other Tobacco Products, please specify (e.g., chewing tobacco): _____

       Amount Per Day _____      Start Year __ __ __ End Year __ __ __

Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")? See Attached EXHIBIT A ☐ Yes ☐ No

*If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:* _____

3. **Information Regarding Chest X-Ray**    See OBJECTION 1

Please check the box next to the applicable location where your chest x-ray was taken (check one):

☐ Mobile laboratory ☐ Job site ☐ Union Hall ☐ Doctor office ☐ Hospital ☐ Other: _____

Address where chest x-ray taken: _____

                                Address

City                                        State/Province            Zip/Postal Code



WR GRACE PIQ 55638-0007

**PART III: ASBESTOS-RELATED CONDITION(S) (Continued)**

4. **Information Regarding Chest X-Ray Reading** *✶ See attached Exhibit A*

   Date of Reading: _____          ILO score: _____

   Name of Reader: _____

   Reader's Daytime Telephone Number.............................................(____) - ___ - ___ ___

   Reader's Mailing Address: _____
                                 Address

   _____
   City                      State/Province            Zip/Postal Code

   With respect to your relationship to the reader, check all applicable boxes:

   Was the reader paid for the services that he/she performed  <u>See OBJECTION 1 & 4</u> .............................☐ Yes ☐ No

   *If yes, please indicate who paid for the services performed:* _____

   Did you retain counsel in order to receive any of the services performed by the reader? <u>See OBJECTION 1,3 & 4</u>
                                                                    ☐ Yes ☐ No

   Was the reader referred to you by counsel? <u>See OBJECTION 1 & 3</u>.........................................☐ Yes ☐ No

   Are you aware of any relationship between the reader and your legal counsel? <u>See OBJECTION 1,3, & 4</u>☐ Yes ☐ No

   *If yes, please explain:* _____

   Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?
   <u>See OBJECTION 2</u> .........................................................................................☐ Yes ☐ No

   *If the reader is not a certified B-reader, please describe the reader's occupation, specialty, and the method through*
   *which the reading was made:* _____

5. **Information Regarding Pulmonary Function Test:** .............................. Date of Test: ____ / ____ / _____

   List your height in feet and inches when test given: ..............................._____ ft _____ inches

   List your weight in pounds when test given: ..............................................................................................._____ lbs

   Total Lung Capacity (TLC): ..........................................................._____% of predicted

   Forced Vital Capacity (FVC): ........................................................_____% of predicted

   FEV1/FVC Ratio: ..........................................................................._____% of predicted

   Name of Doctor Performing Test (if applicable): _____

   Doctor's Specialty: _____

   Name of Clinician Performing Test (if applicable): _____

   Testing Doctor or Clinician's Mailing Address: _____
                                           Address

   _____
   City                      State/Province            Zip/Postal Code

   Testing Doctor or Clinician's Daytime Telephone Number:........................( ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

   Name of Doctor Interpreting Test: _____

   Doctor's Specialty: _____

   Interpreting Doctor's Mailing Address: _____
                                   Address

   _____
   City                      State/Province            Zip/Postal Code

   Interpreting Doctor's Daytime Telephone Number: ...................................( ___ ___ ) ___ ___ ___ - ___ ___ ___ ___



WR GRACE PIQ 55638-0008

PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

With respect to your relationship to the doctor or clinician who performed the pulmonary function test check all applicable boxes:

If the test was performed by a doctor, was the doctor your personal physician? **See OBJECTION 1 & 4** ☐ Yes ☐ No

Was the testing doctor and/or clinician paid for the services that he/she performed? **See OBJECTION 1&4** ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician? **See OBJECTION 1, 3,4**

☐ Yes ☐ No

Was the testing doctor or clinician referred to you by counsel?   **See OBJECTION 1 & 3** ................ ☐ Yes ☐ No

Are you aware of any relationship between either the doctor or clinician and your legal counsel? ............ ☐ Yes ☐ No

*If yes, please explain.............*

_____ See OBJECTION 1, 3 & 4 _____

Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test? **See OBJECTION 2** ........................................ ☐ Yes ☐ No

With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:

Was the doctor your personal physician?   **See OBJECTION 1 & 4** ...................... ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? **See OBJECTION 1 & 4** ...................... ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? **See OBJECTION 1,3,4**
☐ Yes ☐ No

Was the doctor referred to you by counsel? **See OBJECTION 1, 3** ...................... ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? **See OBJECTION 1,3,4** ☐ Yes ☐ No

*If yes, please explain* _____

Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed? **See OBJECTION 2** ☐ Yes ☐ No

6.  **Information Regarding Pathology Reports:**

Date of Pathology Report:..................................................................... ___ ___ / ___ ___ / ___ ___ ___ ___

Findings:  _____

Name of Doctor Issuing Report: _____

Doctor's Specialty: _____

Doctor's Mailing Address: _____
                          Address

| City | State/Province | Zip/Postal Code |
|---|---|---|

Doctor's Daytime Telephone Number: ............................................... ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:

Was the doctor your personal physician?   **See OBJECTION 1 & 4** ...................... ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed?   **See OBJECTION 1 & 3** ...................... ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? **See OBJECTION 1,3,4**

☐ Yes ☐ No

Was the doctor referred to you by counsel? **See OBJECTION 1 & 3** ...................... ☐ Yes ☐ No

WR GRACE PIQ 55838-0009

Are you aware of any relationship between the doctor and your legal counsel? See OBJECTON 1, 3, 4..☐ Yes  ☐ No

*If yes, please explain:* _____

**Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?**

_____ See OBJECTION 2 ..............................................................................................☐ Yes  ☐ No



WR GRACE PIQ 55638-0010

## PART II - ASBESTOS-RELATED CONDITIONS (Continued)

7. With respect to the condition alleged, have you received medical treatment from a doctor for the condition?

    See Attached EXHIBIT A ........................................................................................ ☐ Yes ☐ No

    *If yes, please complete the following:*

    Name of Treating Doctor:    **See Attached EXHIBIT A**

    Treating Doctor's Specialty:    **See Attached EXHIBIT A**

    Treating Doctor's Mailing Address:    **See Attached EXHIBIT A**
    
    Address

    | City | State/Province | Zip/Postal Code |

    Treating Doctor's Daytime Telephone number: See Attached EXHIBIT A ( ___ ___ ) ___ ___ - ___ ___ ___ ___

    Was the doctor paid for the services that he/she performed?  See OBJECTION 1 & 4 .................. ☐ Yes ☐ No

    *If yes, please indicate who paid for the services performed:* _____

    Did you retain counsel in order to receive any of the services performed by the doctor? See OBJECTION 1, 3, & 4

    ☐ Yes ☐ No


[REMAINDER OF PAGE INTENTIONALLY BLANK]

8

WR GRACE PIQ 55838-0011

## PART III OF THE QUESTIONNAIRE (GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE)

### ***FOR ALL AVAILABLE ANSWERS, SEE ATTACHED EXHIBIT B***

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Grace asbestos-containing products
(b) A worker who personally removed or cut Grace asbestos-containing products
(c) A worker who personally installed Grace asbestos-containing products
(d) A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others
(f) If other, please specify.

Site of Exposure:

Site Name: _____

Site Type: ☐ Residence ☐ Business    Site Owner: _____    Location: _____

Employer During Exposure: _____    Unions of which you were a member during your employment: _____

| Job 1 Description: | | | | |
| Job 2 Description: | | | | |
| Job 3 Description: | | | | |
| Job 4 Description: | | | | |
| Job 5 Description: | | | | |
| Job 6 Description: | | | | |

9



WR GRACE PIQ  56636-0012

## PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS.

1. Are you asserting an injury caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person? .................................................................................. ☐ Yes ☒ No

   *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to Grace asbestos-containing products.  For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.*

2. Please indicate the following information regarding the other injured person:

   Name of Other Injured Person: _____    Gender: ☐ Male ☐ Female

   Last Four Digits of Social Security Number: __ __ __ __    Birth Date: __ __ / __ __ / __ __

3. What is your Relationship to Other Injured Person: ...............................☐ Spouse ☐ Child ☐ Other

4. Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:

   _____    _____

5. Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products: _____

   From: __ __ / __ __ / __ __ __ __    To: __ __ / __ __ / __ __ __ __

6. Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:

   _____    _____

7. Has the Other Injured Person filed a lawsuit related to his/her exposure? ............................☐ Yes ☐ No

   *If yes, please provide caption, case number, file date, and court name for the lawsuit:*

   Caption: _____

   Case Number: _____    File Date: _____

   Court Name: _____

8. Nature of Your Own Exposure to Grace Asbestos-Containing Product:

   _____

9. Dates of Your Own Exposure to Grace Asbestos-Containing Product:

   From: __ __ / __ __ / __ __ __ __    To: __ __ / __ __ / __ __ __ __

10. Your Basis for Identification of Asbestos-Containing Product as Grace Product:

    _____

[REMAINDER OF PAGE INTENTIONALLY BLANK]

Case 01-01139-AMC    Doc 13624-5    Filed 11/10/06    Page 14 of 74

**PART V: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS**

Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products
(b) A worker who personally removed or cut Non-Grace asbestos-containing products
(c) A worker who personally installed Non-Grace asbestos-containing products
(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(f) If other, please specify
\*\*\*FOR ALL AVAILABLE ANSWERS, SEE ATTACHMENT EXHIBIT B&D\*\*\*

Party Against Which Lawsuit or Claim was Filed: _____

| | | | | | |
|---|---|---|---|---|---|
| **Site of Exposure 1** | Job 1 Description: | | | | |
| Site Name: | | | | | |
| Address: | Job 2 Description: | | | | |
| City and State: | | | | | |
| Site Owner: | Job 3 Description: | | | | |
| **Site of Exposure 2** | Job 1 Description: | | | | |
| Site Name: | | | | | |
| Address: | Job 2 Description: | | | | |
| City and State: | | | | | |
| Site Owner: | Job 3 Description: | | | | |
| **Site of Exposure 3** | Job 1 Description: | | | | |
| Site Name: | | | | | |
| Address: | Job 2 Description: | | | | |
| City and State: | | | | | |
| Site Owner: | Job 3 Description: | | | | |

11

WR GRACE PIQ 55838-0013



WR GRACE PIQ 55638-0014

## PART VI. EMPLOYMENT HISTORY

### ***FOR ALL AVAILABLE ANSWERS, SEE ATTACHMENT D***

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial work experience up to and including your current employment. For each job, include your employer, location of employment, and dates of employment. Only include jobs at which you worked for at least one month. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

Occupation Code: _____  If Code 59, specify: ._____

Industry Code: _____  If Code 118, specify: _____

Employer: _____

Beginning of Employment: ___ / ___ / _____    End of Employment: ___ / ___ / _____

Location: _____
                Address

City _____  State/Province _____  Zip/Postal Code

---

Occupation Code: _____  If Code 59, specify: ._____

Industry Code: _____  If Code 118, specify: _____

Employer: _____

Beginning of Employment: ___ / ___ / _____    End of Employment: ___ / ___ / _____

Location: _____
                Address

City _____  State/Province _____  Zip/Postal Code

---

Occupation Code: _____  If Code 59, specify: ._____

Industry Code: _____  If Code 118, specify: _____

Employer: _____

Beginning of Employment: ___ / ___ / _____    End of Employment: ___ / ___ / _____

Location: _____
                Address

City _____  State/Province _____  Zip/Postal Code

---

Occupation Code: _____  If Code 59, specify: ._____

Industry Code: _____  If Code 118, specify: _____

Employer: _____

Beginning of Employment: ___ / ___ / _____    End of Employment: ___ / ___ / _____

Location: _____
                Address

City _____  State/Province _____  Zip/Postal Code

12


WR GRACE PIQ 66838-0015

**PART VII. LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA**

### a. LITIGATION

1.  Have you ever been a plaintiff in a lawsuit regarding asbestos or silica?........................ ☒ Yes ☐ No
    *If yes, please complete the rest of this Part VII(a) for each lawsuit.  For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2.  Please provide the caption, case number, file date, and court name for the lawsuit you filed:
    Caption:_____ See Attached Exhibit C _____
    Case Number:_____ **Inactive Asbestos Docket** _____ File Date: 0 3 / 2 4 / 2 0 0 3
    Court Name: Mass State Court - Middlesex County

3.  Was Grace a defendant in the lawsuit? ........................................................ ☒ Yes ☐ No

4.  Was the lawsuit dismissed against any defendant? **See OBJECTION 1 & 2** ....................... ☐ Yes ☐ No
    *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*
    _____
    _____

5.  Has a judgment or verdict been entered? **See OBJECTION 1 & 2** ................................ ☐ Yes ☐ No
    *If yes, please indicate verdict amount for each defendant(s):* _____

6.  Was a settlement agreement reached in this lawsuit? **See OBJECTION 1 & 3** ................. ☐ Yes ☐ No
    *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*
    a.  Settlement amount for each defendant: _____
    b.  Applicable defendants:_____
    c.  Disease or condition alleged: _____
    d.  Disease or condition settled (if different than disease or condition alleged):_____

7.  Were you deposed in this lawsuit? ................................................................ ☒ Yes ☐ No
    *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.*

### b. CLAIMS

1.  Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)?    **See OBJECTION 1 & 3** ........................ ☐ Yes ☐ No
    *If yes, please complete the rest of this Part VII(b). If no, please skip to Part VIII.*

2.  Date the claim was submitted:    **See OBJECTION 1 & 3** .......................... ___/___/_____

3.  Person or entity against whom the claim was submitted:    **See OBJECTION 1 & 3** _____

4.  Description of claim:  **See OBJECTION 1 & 3** _____

5.  Was claim settled?  **See OBJECTION 1 & 3** .................................................. ☐ Yes ☐ No

6.  Please indicate settlement amount:  **See OBJECTION 1 & 3** ................. $_____

7.  Was the claim dismissed or otherwise disallowed or not honored?  **See OBJECTION 1, 2, 3** ........... ☐ Yes ☐ No
    *If yes, provide the basis for dismissal of the claim:* _____

13



WR GRACE  PIQ  56638-0016

## PART VIII: CLAIMS BY DEPENDENTS OR RELATED PERSONS

Name of Dependent or Related Person: _____    Gender: ☐ Male ☒ Female

Last Four Digits of Social Security Number: __ __ __ __    Birth Date: __ __ __ __ __

Financially Dependent: ............................................................................................ ☒ Yes ☐ No

Relationship to Injured Party: ☒ Spouse ☐ Child ☐ Other If other, please specify _____

Mailing  Address:  _____    **REDACTED**    _____
                         Address

_____    _____    _____
City                              State/Province                    Zip/Postal Code

Daytime Telephone number: ....................................................

## PART IX:  SUPPORTING DOCUMENTATION

Please use the checklists below to indicate which documents you are submitting with this form.
### ***SEE ATTACHED EXHIBITS – ALL ATTACHMENTS ARE COPIES***

**Copies:**

☐ Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☐ Pathology reports
☐ Supporting documentation of exposure to Grace asbestos-containing products
☐ Supporting documentation of other asbestos exposure

☐ X-rays
☐ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Depositions from lawsuits indicated in Part VII of this Questionnaire
☐ Death Certification

**Originals:**

☐ Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☐ Pathology reports
☐ Supporting documentation of exposure to Grace asbestos-containing products

☐ Supporting documentation of other asbestos exposure
☐ X-rays
☐ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Death Certification

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:

## PART X:  ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

The information provided in this Questionnaire must be accurate and truthful.  This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim.  The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both.  18 U.S.C. §§ 152 & 3571.
**TO BE COMPLETED BY THE INJURED PERSON.**

I swear, <u>under penalty of perjury</u>, that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate and complete.

Signature: _____    **REDACTED**    _____    Date: _____

Please Print Name: _____    _____

**TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.**

I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete.

Signature: _____    Date:____ / ____ / ____ ____ ____

Please Print Name: _____



WR GRACE PIQ 65838-0017

# EXHIBIT  A

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WR GRACE PIQ 55838-0018

**RAY HARRON, M.D.**
DIPLOMATE AMERICAN BOARD OF RADIOLOGY
DIPLOMATE AMERICAN BOARD OF NUCLEAR MEDICINE

P.O. Box 400
Bridgeport, WV 26330

(304) 622-5900

August 16, 2001

Jeff Story
Thornton & Naumes, L.L.P.
Attorneys At Law
100 Summer Street
Boston, Massachusetts  02110

RE:
SSN:          **REDACTED**
DOB:

Dear Mr. Story:

At your request I have reviewed the occupational history, exposure, medical history as provided to me and a chest x-ray dated 08/27/99 on

His work history reveals an occupational exposure to various asbestos containing products while working for Monsanto Chemical Corporation, now Solutia, Springfield, MA in various capacities, including chemical operator, pipefitter and supervisor, since 1966. As a pipefitter from 1968 to 1978,          would rip off old asbestos insulation from pipes before repairing or removing them which created a great deal of dust which he inhaled.          still works as a supervisor at the Solutia Chemical Company, Springfield, MA. My B-reading of his chest x-ray reveals bilateral interstitial fibrosis consistent with asbestosis and bilateral pleural disease consistent with asbestos related disease. There is also an enlarged post-op heart for which he should see his doctor.

On the basis of the history of occupational exposure to asbestos and my B-reading of his chest x-ray, I feel within a reasonable degree of medical certainty, that          has asbestosis and asbestos related disease.

Since asbestos leads to an increased incidence of lung cancer, upper respiratory tract cancer, stomach cancer, colon cancer, upper GI tract cancer, lymphoma, pleural and peritoneal mesothelioma, kidney cancer, pancreatic cancer as well as other types of cancer, this person should be examined frequently by a physician for possible early detection and treatment of these cancers.

Sincerely,

*Ray H. Harron, M.D.*

Ray A. Harron, M.D.

RAH/kc

REDACTED



WR GRACE PIQ  55638-0019

**RAY HARRON, M.D.**
DIPLOMATE AMERICAN BOARD OF RADIOLOGY
DIPLOMATE AMERICAN BOARD OF NUCLEAR MEDICINE

P.O. BOX 400
BRIDGEPORT, WV 26330

## REDACTED

NAME_

ADDRESS_____

CITY & STATE_____

| UNIT NO. | PHYSICIAN | | AGE | PHONE NUMBER | BIRTHDATE | | DATE |
|---|---|---|---|---|---|---|---|
| | | | | | | | 07/03/01 |
| RESPONSIBLE PARTY | | S.S. # | | INSURANCE CO. | | | POLICY NO. |
| ADDRESS | STREET-ROUTE-BOX | | | TOWN-CITY-STATE | ZIP | CONTRACT OF | |
| PATIENT HISTORY | | | | | | | |

EXAMINATION

CHEST DATED 08/27/99:  There are primary s, secondary t sized opacities involving four
lower lung zones, profusion 1/1.  There is blunting of both costophrenic angles with
diffuse pleural reaction on the right face on extent 1, on the left width A extent 2.
There are blebs, ill-defined diaphragm and ill-defiend heart. There is an enlarged
post-op heart.


IMPRESSION:
1.  Bilateral interstitial fibrosis consistent with asbestosis.
2.  Bilateral pleural disease consistent with asbestos related disease.
3.  Enlarged post-op heart, see the doctor.



Ray A. Harron, M.D.
Diplomate of the American
Board of Radiology


RAH/kc


Form No. 102



REDACTED

*S51 -0503      BAYSTATE HEALTH SYSTEMS*
07/26/98 13:01   (QAIRLR 33)      PAGE 001
=============================================
                                 M   55

LAPENAS, DON MD

S5      S5420A   HH:              INPAT

=============================================

VERIFIED RADIOLOGY RESULTS
-PERMANENT CHART COPY-

RESIDENT READER: SEE RESULTS
READER: JAMES P. POLGA, M.D. 07/2
TRANSCRIPTIONIST: L2611486.MEB SYN JPP   SYNER RAD RESULT
DATE/TIME OF ORDER: 07/24/98 11:17
DX: ANGINA
ORDER:   CHEST (ROUTINE),, #:   16.01
REQUISITION NUMBER: I205-0219   PROCEDURE NUMBER: 01020

INDICATIONS: CHEST PAIN, ABN'L EXAM

        > > > >   P R O C E D U R E   R E S U L T S   < < < <

PHYSICIAN: MADER, TIMOTHY J MD        EXAM DATE:   07/24/98
PRIMARY:   LAPENAS, DON MD             INTERPRET:   07/24/98
                                      TRANSCRIBED:  07/26/98

CHEST, TWO VIEWS:

NO-PREVIOUS FILMS FOR COMPARISON.  BILATERAL PLEURAL PLAQUES.  LEFT
DIAPHRAGMATIC PLEURAL CALCIFICATION.  NO ACUTE LUNG INFILTRATE.  HEART
AND MEDIASTINUM NORMAL.

IMPRESSION:

FINDINGS CONSISTENT WITH PREVIOUS ASBESTOS EXPOSURE.  NO ACUTE CHEST
ABNORMALITY.

---------------------           JAMES P. POLGA, M.D.

L2611486.MEB                    VERIFIED RESULT

                                LAST PAGE
-*-



**REDACTED**

NAME:
MR#:            0210640
PROC. DATE:     07/29/98
PHYSICIAN:      John A. Rousou, M.D.
PAGE:           1

**Baystate Medical Center**
Springfield, Massachusetts 01199
*A Member of Baystate Health Systems*

---

## OPERATIVE REPORT

PREOPERATIVE DIAGNOSIS:          Unstable angina with severe three
                                 vessel coronary artery disease.

POSTOPERATIVE DIAGNOSIS:         Unstable angina with severe three
                                 vessel coronary artery disease.

OPERATION:                       TRIPLE CORONARY ARTERY BYPASS USING
                                 THE LEFT MAMMARY ARTERY FOR THE
                                 LEFT ANTERIOR DESCENDING, THE LEFT
                                 RADIAL FOR THE CIRCUMFLEX MARGINAL
                                 AND A SAPHENOUS VEIN GRAFT TO THE
                                 POSTERIOR DESCENDING CORONARY
                                 ARTERY DISTALLY.

ATTENDING SURGEON:               John A. Rousou, M.D.

ASSISTANT:                       Richard M. Engelman, M.D.

INDICATIONS FOR OPERATION:  This is a 55 year old male patient
with history of angina which became very unstable and he was
admitted to the hospital.  He did have a small injury, probably
from closure of his right coronary system.  He was catheterized
and found to have very diffuse and very severe three vessel
coronary artery disease.  He was therefore advised urgent
operation.

OPERATIVE FINDINGS:  Upon opening the chest the patient was found
to have significant diffuse bleeding and all of the wounds and
the incisions as well as the bone.  This was thought to be
secondary to low platelet count of 150,000 preoperatively as well
as history of receiving aspirin and Ticlid as antiplatelet
agents.  We therefore ordered Aprotinin to be used for better
hemostasis, especially at the end of the operation when we
anticipated significant bleeding.

The left radial was used for the circumflex marginal and had a
flow of 90 cc per minute.  The left mammary was mobilized and was
used to bypass the left anterior descending.  A saphenous vein
graft was used to bypass the posterior descending very distally
because of its diffuse proximally.  We avoided using the right
mammary artery or any other arterial grafts because of the
patient's asbestos exposure and the changes in his pleural space
which were seen on the x-ray as well as intraoperatively with


WR GRACE PIQ 65838-0022

**REDACTED**

NAME:
MR#:            0210640
PROC. DATE:    07/29/98
PHYSICIAN:     John A. Rousou, M.D.
PAGE:          2



**Baystate Medical Center**
Springfield, Massachusetts 01199
*A Member of Baystate Health System*

---

## OPERATIVE REPORT

thick, calcified white plaques in the pleural spaces.

The patient came off bypass without complication with excellent hemodynamic function. The hemostasis appeared to be satisfactory without administering platelets at that point. The pump time was 101 minutes and the clamp time on the aorta was 57 minutes.

PROCEDURE: After the patient was induced under general anesthesia the long saphenous vein segment was removed from the right leg and the incision was closed. The chest was entered through a mid sternotomy. The left mammary artery was mobilized. We noted multiple areas of white calcified plaques from previous asbestos exposure. We opened the pleura slightly, placed a chest tube and closed the pleura again using 5-0 Prolene. Heparin was then given. The aorta and right atrium were cannulated. The patient was put on bypass and the aorta was clamped. The heart was arrested and maintained using retrograde Cardiopulmonary through the coronary sinus for the rest of the operation.

The first bypass was done into the distal posterior descending in the distal third because of disease proximally which was very calcified. We used the longest graft available in this situation which was the saphenous vein graft. The next anastomosis was done using the left radial which had already been dissected and removed from the left arm closing the incision. The radial was used to bypass the circumflex marginal without difficulty. Finally the left anterior descending was grafted in its mid portion using the left mammary artery. The diagonals were visualized and were rather small and very calcified proximally. We therefore decided not to graft those vessels either.

At this point the aortic cross clamp was removed and then using a small partial clamp we anastomosed the saphenous vein anteriorly on the aorta and the left radial onto an opening onto the left side of the aorta. Revascularization was thus completed. Diltiazem was continuously given in an intravenous drip and the patient came off cardiopulmonary bypass without difficulty in sinus rhythm. The Heparin was reversed with Protamine. There appeared to be good hemostasis in the chest at this point and we stopped the Aprotinin before administration of the Protamine. We removed all of the cannulas. Two mediastinal drains were left anterior to the heart after measuring flows and placing ventricular wires only.


WR GRACE PIQ 55838-0023

**REDACTED**

NAME:
MR#:            0210640
PROC. DATE:     07/29/98
PHYSICIAN:      John A. Rousou, M.D.
PAGE:           3

**Baystate Medical Center**
Springfield, Massachusetts 01199
*A Member of Baystate Health Systems*

---

### OPERATIVE REPORT

The chest was closed routinely as well as the rest of the
incisions.

John A. Rousou, M.D.

JAR/477
DD:  07/29/98
DT:  08/06/98

cc:  John A. Rousou, M.D.



WR GRACE PIQ 55638-0024

REDACTED

CB02 -8105        BAYSTATE HEALTH SYSTEMS
06/07/99 11:35  (QAIRLR 33)      PAGE 001
=========================================
                                    M   56

LANDIS, JOHN N MD                        1TIME

BMA PULM        HH:
=========================================

VERIFIED CAT SCAN RESULTS
-PERMANENT CHART COPY-

RESIDENT READER: SEE RESULTS
READER: ARAM V FERESHETIAN, MD06/
TRANSCRIPTIONIST: U0413056.LAC SYN AVF  SYNER RAD RESULT
DATE/TIME OF ORDER: 06/01/99 14:41
DX:  EASE, COMPARE TO PRE
ORDER:  CHEST,NO CONTRAST #:  911.01
REQUISTION NUMBER: F152-0085  PROCEDURE NUMBER: 05920

INDICATIONS: OTHER--PLEURAL EFFUSION

        > > > >  P R O C E D U R E   R E S U L T S  < < < <

PHYSICIAN: LANDIS, JOHN N MD          EXAM DATE:  06/01/99
PRIMARY:   LAPENAS' DON               INTERPRET:  06/01/99
TRANSCRIBED:  06/04/99

COMPUTERIZED TOMOGRAPHY OF THE CHEST WITHOUT CONTRAST.

CLINICAL HISTORY:  PLEURAL EFFUSIONS.

A COMPUTERIZED TOMOGRAPHIC EXAMINATION OF THE CHEST WAS PERFORMED FROM
THE LEVEL OF THE THORACIC INLET TO THE LEVEL OF THE ADRENAL GLANDS BY
10MM. CONTIGUOUS SLICES WITHOUT INTRAVENOUS CONTRAST ADMINISTRATION.

COMPARISON FILMS ARE DATED MARCH 17, 1999.  AGAIN NOTED IS EVIDENCE OF A
MEDIAN STERNOTOMY WITH STERNAL WIRES IN PLACE FROM A PREVIOUS CABG.
AGAIN NOTED IS A TINY AMOUNT OF PERICARDIAL-MEDIASTINAL FLUID COLLECTION
PARTICULARLY THROUGHOUT POSTERIOR LATERAL AND TO THE LEFT OF THE MID
STERNOTOMY.

INCIDENTAL NOTE IS AGAIN MADE OF A SMALL LEFT SUPERIOR VENA CAVA.

THERE ARE MODERATELY LARGE BILATERAL PLEURAL EFFUSIONS WITH THE RIGHT
SIDED EFFUSION INCREASING IN SIZE COMPARED TO THE PRIOR EXAMINATION.
BIBASILAR PARENCHYMAL DISEASE AGAIN NOTED WITH PROGRESSION ESPECIALLY ON
THE RIGHT.   THERE ARE CALCIFIED PLEURAL PLAQUES BILATERALLY PARTICULARLY
AT THE BASES OVER THE DOMES OF THE DIAPHRAGM.

IMPRESSION:

MODERATELY LARGE BILATERAL PLEURAL EFFUSIONS WITH THE RIGHT INCREASING
IN SIZE COMPARED TO THE PRIOR EXAMINATION.

SMALL PERICARDIAL-ANTERIOR MEDIASTINAL FLUID COLLECTION.

                            CONTINUED



WR GRACE PIQ 65638-0026

REDACTED

06/07/99 11:35   (QAIRLR 33)      PAGE 002
=================================================
                                    M   56

LANDIS, JOHN N MD

BMA PULM        HH:                 1TIME         VERIFIED CAT SCAN RESULTS
=================================================    -PERMANENT CHART COPY-


   *RESIDENT READER: SEE RESULTS*
   *READER: ARAM V FERESHETIAN, MD06/*
   *TRANSCRIPTIONIST: U0413056.LAC SYN AVF  SYNER RAD RESULT*
   *DATE/TIME OF ORDER: 06/01/99 14:41*
   *DX:  EASE, COMPARE TO PRE*

BIBASILAR PARENCHYMAL DISEASE.

CALCIFIED PLEURAL PLAQUES NEAR THE HEMI DIAPHRAGMS BILATERALLY.

STATUS POST MEDIAN STERNOTOMY PROBABLY RELATED TO PRIOR CABG.

P2


----------------------              ARAM V FERESHETIAN, MD

U0413056.LAC                        VERIFIED RESULT

                                    LAST PAGE
-*-



WR GRACE PIQ 55688-0028

**REDACTED**

NAME:                                    DSP 6-9
MR#:             0210640
PROC. DATE:      06/08/1999
PHYSICIAN:       Kenneth M. Frankel, M.D.
PAGE:            1



## Baystate Medical Center
Springfield, Massachusetts 01199
*A Member of Baystate Health Systems*

---

## OPERATIVE REPORT

**PREOPERATIVE DIAGNOSIS:** Recurrent left pleural effusion starting after cardiac surgery and associated with asbestos exposure and pleural plaques on imaging, thus the differential diagnosis being Dressler's postpericardiotomy syndrome versus asbestos related disease either benign or malignant mesothelioma

**POSTOPERATIVE DIAGNOSIS:** Pleural plaques grossly compatible with asbestos exposure and showing benign fibrosis on frozen section

**OPERATIVE PROCEDURE:** Bronchoscopy and left video thoracoscopic partial parietal pleurectomy and talc poudrage pleural sclerosis

**SURGEON:** Kenneth M. Frankel, M.D.

**ASSISTANT:** Daniel S. Fusco, M.D.

**ANESTHESIA:** General

**PROCEDURE IN DETAIL:** With the patient in the supine position, general endotracheal anesthesia was smoothly induced utilizing a double-lumen tube for subsequent use of one-lung anesthesia. Bronchoscopy was performed by passing the pediatric diameter flexible fiberoptic bronchoscope down the bronchial catheter of the double-lumen tube into the left bronchial tree and through the tracheal lumen of the double-lumen tube into the right bronchial tree. This allowed a diagnostic bronchoscopy which showed no endobronchial disease. Under bronchoscopic control, the tube was appropriately positioned for subsequent use of one-lung anesthesia. The bronchoscope was removed. The anesthetic was uneventfully continued.

The patient was turned to the right lateral decubitus position, and the left chest was prepped and draped in the usual manner for a formal open thoracotomy if required. The procedure was done entirely by the minimally invasive video thoracoscopic technique.

The initial video thoracoscopic port was made in a manner similar to a tube thoracostomy with a small transverse skin incision, blunt dissection of the chest wall musculature with a Kelley clamp, blunt entrance into the pleural cavity with a Kelley clamp, and finger palpation confirmation of a free pleural space. This initial thoracoscopic port which was used for the TV imaging was subsequently used for tube thoracostomy at the time



REDACTED

**NAME:**
**MR#:**        0210640
**PROC. DATE:**  06/08/1999
**PHYSICIAN:**   Kenneth M. Frankel, M.D.
**PAGE:**        2

DSP 6-9

## Baystate Medical Center
Springfield, Massachusetts 01199
*A Member of Baystate Health Systems*

### OPERATIVE REPORT

of closure and was in approximately the midaxillary line seventh or eighth intercostal space.

The suction was introduced, draining 800 cc of a yellowish amber, slightly orange pleural effusion.  800 cc were drained, and the specimen was submitted for the usual bacteriologic, cytologic, and chemical studies.

An additional thoracoscopic port was made for the biopsy instrumentation in a manner similar to the initial one using the TV scope for intrapleural visualization.  The working port was located in the anterior axillary line approximately at the sixth intercostal space.

Initial video thoracoscopic evaluation of the pleural space showed pleural adhesions between the medial aspect of the upper lobe and the undersurface of the sternum and pericardium on the mediastinal side, probably secondary to his prior cardiac surgery.  There were no other pleural adhesions.  The pericardium was thickened as would be expected from prior cardiac surgery but did not appear inflamed.  The fissures were complete.  The visceral pleura and pulmonary parenchyma looked entirely unremarkable.

The parietal pleura was covered for about one-third of its surface with smooth, white fibrotic, partially calcified pleural plaques considered typical for asbestos exposure.  These were located more inferiorly than superiorly and spared most of the upper hemithorax and became quite dense and confluent down near the costophrenic angle.  They were a little bit worse posterolaterally than medially, and there were also similar type nodules on the diaphragm.  There were no areas that looked soft or granulation tissue appearance that would be suspicious for malignancy either mesothelioma or metastatic carcinomatosis. There was no evidence of any active inflammatory process with no edema or erythema of the parietal pleura in the areas in between these whitish plaques.

A sample of pleural plaque was removed and sent for frozen section.  This was reported as showing benign fibrosis with no evidence of malignant mesothelioma.

Multiple other pleural plaques were either totally excised or



**REDACTED**

NAME:                           DSP 6-9
MR#:            0210640
PROC. DATE:     06/08/1999
PHYSICIAN:      Kenneth M. Frankel, M.D.
PAGE:           3

# Baystate Medical Center
Springfield, Massachusetts 01199
*A Member of Baystate Health Systems*

## OPERATIVE REPORT

incisionally biopsied and submitted for permanent section.  In addition, the normal appearing parietal pleura in between the plaques was stripped to obtain samples for pathology of that.  In addition, one of the nodules on the diaphragm a little bit more exophytic rather than flat or plateau-like was excised, and this diaphragmatic nodule also was submitted for pathology.

Inspection confirmed hemostasis at all the biopsy sites and in the area of the parietal pleural stripping and denuded undersurface of chest wall.  To encourage pleurodesis and decrease the chances of further repeat pleural effusions, and insufflator was used to instill a 4 gram talc poudrage covering all exposed accessible parietal, visceral, and diaphragmatic surfaces with the talc.

A No. 28 multifenestrated Argyle chest tube was introduced through the lower thoracoscopic port and fixed in place with a suture of heavy silk.  The other thoracoscopic port was closed with interrupted sutures of 2-0 Vicryl for the muscles and the skin was closed with subcuticular 4-0 Monocryl reinforced by the application of Steri-Strips.  Marcaine was instilled into both sites.  The estimated blood loss was negligible.  The sponge and instrument counts were correct.  The patient tolerated the procedure well and awakened uneventfully from anesthesia and was transferred to the recovery room in satisfactory and stable condition.

Kenneth M. Frankel, M.D.

Job # 31488
KMF/338.
DD:  06/08/1999
DT:  06/09/1999

cc:  Kenneth M. Frankel, M.D.
CC:  Daniel S. Fusco, M.D.
     John N. Landis, M.D.
     Don J. Lapenas, M.D.


WR GRACE PIQ 55638-0029

# EXHIBIT  B

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]



WR GRACE PIQ 55838-0030

File No. 84.1245

### Affidavit of Henry A. Hevey

I, Henry A. Hevey, under oath depose and say:

1.   I currently reside at 73 Wymanlea Ave., Chicopee, MA 01020.

2.   I have personal knowledge of the facts hereinafter set forth.

3.   The Affidavit I am about to give concerns my work as a/an Pipefitter/Plumber and my exposure to asbestos-containing products manufactured by W.R. GRACE.

4.   I worked as a/an Pipefitter/Plumber from approximately 1949 to 1985 at various jobsites located throughout New England and other states.

5.   I recall using, or being present while, the following W.R. GRACE asbestos-containing products were in use:

| PRODUCTS | JOBSITES | YEARS |
|---|---|---|
| Zonolite Acoustical Plasto | Monsonto | 60-73 |
| Mono-Kote | Housesite CTC | 56-70 |
| | | |

6.   I was exposed to the asbestos-containing dust created by the use of the above-mentioned products.

7.   There may have been other occasions where I was exposed to asbestos and asbestos-containing products, but this is the only location(s) I recall today.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY.

DATE: Nov 14, 2005

_____
Henry A. Hevey



# EXHIBIT  C

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]


WR GRACE PIQ 55838-0032

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX:  ss.                    SUPERIOR COURT
                                  DEPARTMENT OF THE
                                  TRIAL COURT

-------------------------------------X

                Plaintiffs,        Civil Action
                                   No. 99-5359
v.

A.W. CHESTERTON COMPANY            COMPLAINT
CLIFTON ASSOCIATES, INC.
EASTERN REFRACTORIES COMPANY, INC.   PLAINTIFFS DEMAND
ARMSTRONG WORLD INDUSTRIES, INC.     A TRIAL BY JURY
GAF CORPORATION
OWENS-CORNING FIBERGLAS CORPORATION
PITTSBURGH-CORNING CORPORATION
RAPID-AMERICAN CORPORATION
GARLOCK, INC.
JOHN CRANE, INC.
W.R. GRACE AND COMPANY
RUTLAND FIRE CLAY COMPANY
ACandS, INC.
RIC-WIL, INC.
THE ASBESTOS CLAIMS MANAGEMENT CORPORATION f/k/a
  NATIONAL GYPSUM COMPANY AND THE NGC ASBESTOS
  DISEASE AND PROPERTY DAMAGE SETTLEMENT TRUST,

                Defendants.
-------------------------------------------------------X

     Now come the plaintiffs, by their attorneys, and

file the following complaint:

     1.  PARTY PLAINTIFFS

     Plaintiffs,

                    **REDACTED**

     2.  PARTY DEFENDANTS

     2A.  The defendant, A.W. Chesterton Company, is a

corporation incorporated under the laws of the

                              1


WR GRACE PIQ 55638-0033

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX:  ss.                          SUPERIOR COURT
                                         DEPARTMENT OF THE
                                         TRIAL COURT

-------------------------------X

**REDACTED**

                    Plaintiffs,          Civil Action
                                         No. 99-5359
        v.
                                         FIRST AMENDED
A.W. CHESTERTON COMPANY                     COMPLAINT
CLIFTON ASSOCIATES, INC.
EASTERN REFRACTORIES COMPANY, INC.       PLAINTIFFS DEMAND
ARMSTRONG WORLD INDUSTRIES, INC.         A TRIAL BY JURY
GAF CORPORATION
OWENS-CORNING FIBERGLAS CORPORATION
PITTSBURGH-CORNING CORPORATION
RAPID-AMERICAN CORPORATION
GARLOCK, INC.
JOHN CRANE, INC.
W.R. GRACE AND COMPANY
RUTLAND FIRE CLAY COMPANY
ACandS, INC.
RIC-WIL, INC.
THE ASBESTOS CLAIMS MANAGEMENT CORPORATION f/k/a
   NATIONAL GYPSUM COMPANY AND THE NGC ASBESTOS
   DISEASE AND PROPERTY DAMAGE SETTLEMENT TRUST
UNION CARBIDE CORPORATION
COMBUSTION ENGINEERING, INC.
DURABLA MANUFACTURING COMPANY
FOSTER WHEELER ENERGY CORPORATION
UNIROYAL, INC.
RILEY STOKER CORPORATION
WORTHINGTON PUMP COMPANY
INGERSOLL-RAND COMPANY,

                    Defendants.
-----------------------------------------------------X

     Now come the plaintiffs, by their attorneys, and

file the following complaint:

     1.  PARTY PLAINTIFFS

     Plaintiffs,

                         **REDACTED**

                              1

WR GRACE PIQ 55638-0034

PAGE   1

PLEADING FILE COMPLAINT
01/31/06

FILE#: 99.6019

**REDACTED**

CAPTION:

DOCKET NO: IAD        CRC: MAN        DATE FILED: 2003/03/24
CLAIM TYPE:

WR GRACE PIQ 55638-0036

PAGE    1

PLEADING FILE COMPLAINT
01/31/06

FILE#: 99.6019          REDACTED

CAPTION:

DOCKET NO: 995359    CRT: MAM    DATE FILED: 1999/11/03
CLAIM TYPE: PERSONAL INJURY

2002/05/28    XX    FIRST AMENDED COMPLAINT

2002/05/28    XX    FIRST AMENDED DISCLOSURE FORM ATTACHED THERETO AS EXHIBIT 1

2002/05/28    XX    PLAINTIFF'S MOTION TO AMEND COMPLAINT TO ADD DEFENDANTS ANDFOR LEAVE TO FILE FIRST AMENDED COMPLAINT, WITH PLAINTIFF'S

AC         ARMSTRONG/KEASBY MAT

ACS        A C AND S, INC.

CLIF       CLIFTON ASSOCIATES, INC. F/K/A JOHNSON ASBESTOS CORP.

GAR        GARLOCK INDUSTRIES

GFRB       GAF CORP/RUBBEROID

JCH        JOHN CRANE - HOUDAILLE

NG         ASBESTOS CLAIMS MANAGEMENT CORP. F/K/A NATIONAL GYPSUM CO.

OC         OWENS-CORNING

PC         PITTSBURGH CORNING

RA         RAPID AMERICAN CORPORATION

RI         RIC-WIL, INC.

RUT        RUTLAND FIRE CLAY

WG         W.R. GRACE AND COMPANY

CE    A    2002/05/28  COMBUSTION ENGINEERING INC./REFRACTORY AND INSULATION

DUR   A    2002/05/28  DURABLA

WR GRACE PIQ 55838-0038

FW    A    2002/05/28 FOSTER WHEELER CORP.

WR GRACE PIQ 55638-0037

PAGE   2

FILE#: 99.6019

PLEADING FILE COMPLAINT
01/31/06

REDACTED

CAPTION:

DOCKET NO: 995359    CRT: MBM    DATE FILED: 1999/11/03
CLAIM TYPE: PERSONAL INJURY

IRC   A   2002/05/28 INGERSOLL-RAND COMPANY
RS    A   2002/05/28 RILEY STOKER CORPORATION
UCC   A   2002/05/28 UNION CARBIDE CORPORATION
UR    A   2002/05/28 UNIROYAL
WORT  A   2002/05/28 STUDEBACKER-WORTHINGTON, INC.
ERCO  M   2003/01/31 EASTERN REFRACTORIES COMPANY
AWC   M   2003/05/21 A. W. CHESTERTON
DUR   M   2003/05/23 DURABLA
RS    M   2004/01/21 RILEY STOKER CORPORATION
UCC   M   2004/01/26 UNION CARBIDE CORPORATION



WR GRACE PIQ 55638-0038

# EXHIBIT  D

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WR GRACE PIQ 55638-0039

PAGE    1

CLIENT JOBSITE HISTORY - 1900 TO 2006
01/31/06

| SSN | FILE | FR | TO | | | LOCAL |
|-----|------|----|----|----|----|-------|
| --- | ---- | -- | -- | BEG | END | ----- |
| | | | | --- | --- | |

REDACTED

| | | | | | |
|--|--|--|--|--|--|
| MONSANTO CHEMICAL/SHAWNIGAN | 00418 | 99.6019 1966 1978 PLANT WORK-NON ASBESTOS | | | |
| | | SPRINGFIELD | MA 1966 1978 | | |

---

| MONSANTO CHEMICAL/SHAWNIGAN | 00418 | 1968 1978 PIPEFITTER,STEAMFITTER | | | |
| | | SPRINGFIELD | MA 1968 0 | | |

---

| MONSANTO CHEMICAL/SHAWNIGAN | 00418 | 1978 1999 FOREMAN/SUPERVISOR | | | |
| | | SPRINGFIELD | MA 1978 0 | | |

---

WR GRACE PIQ 65638-0040

**REDACTED**

TYPE OF READING | IDENTIFICATION

A | P

WORKER'S Social Security Number

**1A. DATE OF X-RAY** 03-27-99  
**1B. FILM QUALITY** 1 2 3 U/R  If Not Grade 1 Give Reason:  
**1C. IS FILM COMPLETELY NEGATIVE?** YES ☐ Proceed to Section 5   NO ☒ Proceed to Section 2

**2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?** YES ☒ COMPLETE 2B and 2C   NO ☐ PROCEED TO SECTION 3

**2B. SMALL OPACITIES**  
a. SHAPE/SIZE  
PRIMARY: p q r  s t u  
SECONDARY: p q r  s t u  
b. ZONES: R / L  
c. PROFUSION: 0/- 0/0 0/1  1/0 1/1 1/2  2/1 2/2 2/3  3/2 3/3 3/4

**2C. LARGE OPACITIES** SIZE: 0 A B C

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?** YES ☒ COMPLETE 3B, 3C and 3D   NO ☐ PROCEED TO SECTION 4

**3B. PLEURAL THICKENING**  
a. DIAPHRAGM (plaque) SITE: 0 R L  
b. COSTOPHRENIC ANGLE SITE: 0 R L

**3C. PLEURAL THICKENING...Chest Wall**  
a. CIRCUMSCRIBED (plaque)  
SITE IN PROFILE: R / L  
i.WIDTH: 0 A B C  
ii.EXTENT: 0 1 2 3  
FACE ON iii.EXTENT: 0 1 2 3  
b. DIFFUSE  
SITE IN PROFILE: 0 R / 0 L  
i.WIDTH: 0 A B C  
ii.EXTENT: 0 1 2 3  
FACE ON iii.EXTENT: 0 1 2 3

**3D. PLEURAL CALCIFICATION**  
SITE R  EXTENT  
a. DIAPHRAGM 0 1 2 3  
b. WALL 0 1 2 3  
c. OTHER SITES 0 1 2 3  
SITE L  EXTENT  
a. DIAPHRAGM 0 1 2 3  
b. WALL 0 1 2 3  
c. OTHER SITES 0 1 2 3

**4A. ANY OTHER ABNORMALITIES?** YES ☒ COMPLETE 4B and 4C   NO ☐ PROCEED TO SECTION 5  
**4B. OTHER SYMBOLS (OBLIGATORY)**  
o ax bu ca cn co cp cv di ef em es fr hi ho id ih kl pi px rp tb  
Report items which may be of present clinical significance in this section: OD  (Specify od.) enlarged fissp heart   Date Attorney Notified: 7   7   9  
**4C. OTHER COMMENTS**

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C. YES ☐ NO ☐ PROCEED TO SECTION 6

**5. FILM READER'S INITIALS** R A H  
Complete if social security number is not furnished.  
PHYSICIAN'S SOCIAL SECURITY NUMBER * 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  
DATE OF READING 7 3 07  
Harron, Ray A., M.D.  
901 West Main Street, Bridgeport, WV  26330


WR GRACE PIQ 55638-0041

## OBJECTIONS

### OBJECTION #1

Claimant objects to this question as not reasonably calculated to lead to the discovery of relevant and/or admissible evidence.

### OBJECTION #2

Claimant objects to this question because the information it seeks is equally available to the defendant.

### OBJECTION #3

Claimant objects to this question as it calls for information that is confidential in nature and subject to attorney/client privilege.

### OBJECTION #4

Claimant objects to this question as it calls for information that is confidential in nature and subject to doctor/patient privilege.

ATTORNEYS AT LAW

# Thornton & Naumes LLP

WR GRACE PIQ 55838-0042

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris (NY & MA)
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley (NY & MA)
Brad J. Mitchell
Kristen Marquis Fritz
Zoran Malesevic

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600    FAX# 617-720-2445
www.tenlaw.com

Of Counsel
Elizabeth M. Shost
Admitted in NY & PA only

July 11, 2006

Rust Consulting, Inc.
Claims Processing Agent
Re: W.R. Grace & Co. Bankruptcy
201 S. Lyndale Avenue
P.O. Box 1620
Faribault, MN  55021

Dear Sir/Madam:

Enclosed please find responses to the various WR Grace questionnaires we received in response to the Court's order.  Please note that, on behalf of our clients, we object, and reserve all rights, to this entire process.  Also, given that the material you sent did not include social security numbers, there is the possibility that some of the individuals are not the people you were looking for responses from.  Furthermore, we reserve the right to supplement these responses at a later time.

The following is attached:

At Tab 1:  A compact disk with the scanned questionnaires and corresponding bar code page;

At Tab 2: Questionnaires that have been filled out but no bar code exists;

At Tab 3:  Questionnaires being returned because the clients have been paid by WR Grace or we no longer represent them;

At Tab 4:  Returned questionnaires because they are duplicates;

At Tab 5:  Returned questionnaires because they lack sufficient information to determine if they are our clients.  If you provide social security numbers, we will fill



WR GRACE  PIQ  66638-0043

them out if they are our clients.  We therefore reserve the right to submit them post July 12, 2006.

Thank you.

Sincerely,

Garrett Bradley

GB:tc
Enclosures

WR GRACE PIQ 55838-0044

**FedEx** Express *US Airbill*

FedEx Tracking Number  **8565 5721 8792**

**1 From** This portion can be removed for Recipient records.

Date  7/11/06    FedEx Tracking Number  8565 5721 8792

Sender's Name  Garret Bradley    Phone  617 720-1333

Company  THORNTON & NAUMES LLP

Address  100 SUMMER ST FL 30

City  BOSTON    State  MA    ZIP  02110-2106

**2 Your Internal Billing Reference**  WR Grace  Tab 1 & 2

**3 To**
Recipient's Name  Claims Processing Agent    Re: WR Grace Bankruptcy

Company  Rust Consulting Inc.

Recipient's Address  201 S. Lyndale Ave
We cannot deliver to P.O. boxes or P.O. ZIP codes.

Address

City  Faribault    State  MN    ZIP  55021

0332225250

**4a Express Package Service**

☒ FedEx First Overnight
☐ FedEx Priority Overnight
☐ FedEx Standard Overnight

☐ FedEx 2Day
☐ FedEx Express Saver

**4b Express Freight Service**

☐ FedEx 1Day Freight
☐ FedEx 2Day Freight
☐ FedEx 3Day Freight

**5 Packaging**

☒ FedEx Envelope
☐ FedEx Pak
☐ FedEx Box
☐ FedEx Tube
☐ Other

Packages up to 150 lbs.
Packages over 150 lbs.

**6 Special Handling**

☒ No    ☐ Yes
☐ SATURDAY Delivery
☐ HOLD Weekday
☐ HOLD Saturday

☒ No    ☐ Yes

**7 Payment**  Bill to:

☒ Sender
☐ Recipient
☐ Third Party
☐ Credit Card
☐ Cash/Check

Total Packages    Total Weight    Total Declared Value

519

**8 NEW Residential Delivery Signature Options**

☒ No Signature Required
☐ Direct Signature
☐ Indirect Signature

8565 5721 8792

fedex.com 1800.GoFedEx 1800.463.3339



WR GRACE PIQ 55760-0001

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

10315607004162
RE:
Thornton Early & Naumes
100 Summer Street, 30th Floor
Boston MA 02110

REC'D JUL 1 2 2006

REDACTED



D00487004162

WR GRACE PIQ 55780-0002

REDACTED

## PART I: IDENTITY OF INJURED PERSON AND LEGAL COUNSEL

### a. GENERAL INFORMATION

1. **Name of Claimant:** _____    2. **Gender:** ☒ Male ☐ Female
   First                    MI                    Last

3. **Race** (for purposes of evaluating Pulmonary Function Test results): .................. ☐ White/Caucasian
   ☐ African American
   ☐ Other

4. **Last Four Digits of Social Security Number:** _____    5. **Birth Date:** _____

6. **Mailing Address:** _____
   Address            City            State/Province        Zip/Postal Code

7. **Daytime Telephone Number:** .................................    ....................

### b. LAWYER'S NAME AND FIRM

1. **Name of Lawyer:**    Michael P. Thornton

2. **Name of Law Firm With Which Lawyer is Affiliated:** _____ Thornton and Naumes, LLP

3. **Mailing Address of Firm:** 100 Summer St, 30th Floor    Boston        MA            02110
   Address            City        State/Province    Zip/Postal Code

4. **Law Firm's Telephone Number or Lawyer's Direct Line:** .................................... ( 617 ) 720 - 1333

   ☒ Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in lieu of sending such materials to you.

### c. CAUSE OF DEATH (IF APPLICABLE)

1. **Is the injured person living or deceased?** ................................................ ☒ Living ☐ Deceased
   If deceased, date of death: ....................................... __ __ / __ __ / __ __ __ __

2. If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete the following:
   Primary Cause of Death (as stated in the Death Certificate): _____
   Contributing Cause of Death (as stated in the Death Certificate): _____

## PART II: ASBESTOS-RELATED CONDITION(S)

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1. Please check the box next to the condition being alleged:
   ☐ Asbestos-Related Lung Cancer        ☐ Mesothelioma
   ☒ Asbestosis        ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)
   ☐ Other Asbestos Disease        ☐ Clinically Severe Asbestosis

   a. **Mesothelioma:** If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following (check all that apply):
      ☐ diagnosis from a pathologist certified by the American Board of Pathology
      ☐ diagnosis from a second pathologist certified by the American Board of Pathology
      ☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial causal role in the development of the condition
      ☐ other (please specify): _____

1



WR GRACE PIQ 66760-0003

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

b.  **Asbestos-Related Lung Cancer:**  If alleging Asbestos-Related Lung Cancer, were you diagnosed with primary lung cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐ other (please specify): _____

c.  **Other Cancer:**

(i) If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐ colon    ☐ pharyngeal    ☐ esophageal    ☐ laryngeal    ☐ stomach cancer

☐ other, please specify: _____

(ii) Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☐ other (please specify): _____

2

WR GRACE PIQ 55760-0004

## PART II. ASBESTOS-RELATED CONDITION(S) (Continued)

**d.   Clinically Severe Asbestosis:**  If alleging Clinically Severe Asbestosis, was your diagnosis based on the following (check all that apply):

☐   diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐   a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐   a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐   asbestosis determined by pathology

☐   a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating total lung capacity less than 65% predicted

☐   a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐   a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐   other (please specify): _____

**e.   Asbestosis:**  If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

*See attached Exhibit A.*

☐   diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐   a chest x-ray reading   conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐   a chest x-ray reading   conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐   asbestosis determined by pathology

☐   a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐   a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐   other (please specify): _____

WR GRACE PIQ 05760-0005

**PART II: ASBESTOS RELATED CONDITION(S) (Continued)**

f.   **Other Asbestos Disease:**  If alleging any asbestos-related injuries, medical diagnoses, and/or conditions other than those above, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ diagnosis determined by pathology

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  other than those described above

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEVI/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a pulmonary function test other than that discussed above

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☐ a CT Scan or similar testing

☐ a diagnosis other than those above

☐ other (please specify): _____

[REMAINDER OF PAGE INTENTIONALLY BLANK]



WR GRACE PIQ  55760-0006

**PART II  ASBESTOS-RELATED CONDITION(S) (Continued)**

2. **Information Regarding Diagnosis**

Date of Diagnosis:  See Attached EXHIBIT A ..................................... __ __ / __ __ / __ __ __ __

Diagnosing Doctor's Name:  See Attached EXHIBIT A _____

Diagnosing Doctor's Specialty:  See Attached EXHIBIT A _____

Diagnosing Doctor's Mailing Address: See Attached EXHIBIT A _____
_____   Address
_____ See Attached EXHIBIT A _____
City                                         State/Province                         Zip/Postal Code

Diagnosing Doctor's Daytime Telephone Number: .................................( See Attached EXHIBIT A )

With respect to your relationship to the diagnosing doctor, check all applicable boxes:

Was the diagnosing doctor your personal physician?          See OBJECTION 1 & 4 .......... ☐ Yes ☐ No

Was the diagnosing doctor paid for the diagnostic services that he/she performed? See OBJECTION 1 & 4 ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor? See OBJECTION 1, 3, & 4 ☐ Yes ☐ No

Was the diagnosing doctor referred to you by counsel?  See OBJECTION 1 & 3 ................... ☐ Yes ☐ No

Are you aware of any relationship between the diagnosing doctor and your legal counsel? See OBJECTION 1,3 & 4 ..... ☐ Yes ☐ No

*If yes, please explain:* _____

Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the diagnosis?          See OBJECTION 2 ................... ☐ Yes ☐ No

Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?          See OBJECTION 2 ................... ☐ Yes ☐ No

Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to diagnosis?          See OBJECTION 2 ...................................... ☐ Yes ☐ No

Did the diagnosing doctor perform a physical examination?  See Attached EXHIBIT A ................ ☐ Yes ☐ No

Do you currently use tobacco products? ................................................................... ☐ Yes ☒ No

Have you ever used tobacco products? ................................................................. ☒ Yes ☐ No

*If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco products and the dates and frequency with which such products were used:*

☒ Cigarettes      Packs Per Day (half pack = .5)  _/_  Start Year _1 9 3 7_ End Year _1 9 4 1_

☐ Cigars      Cigars Per Day _____      Start Year _____   End Year _____

☐ If Other Tobacco Products, please specify (e.g., chewing tobacco): _____
      Amount Per Day _____      Start Year __ __ __ __   End Year __ __ __ __

Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")?See Attached EXHIBIT A
                                                                                                    ☐ Yes ☐ No

*If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:*
_____

3. **Information Regarding Chest X-Ray**   See OBJECTION 1

Please check the box next to the applicable location where your chest x-ray was taken (check one):

☐ Mobile laboratory  ☐ Job site  ☐ Union Hall  ☐ Doctor office  ☐ Hospital  ☐ Other: _____

Address where chest x-ray taken: _____
_____   Address
_____
City                                         State/Province                         Zip/Postal Code



WR GRACE PIQ 66769-0007

**PART II: ASBESTOS-RELATED CONDITIONS (Continued)**

**4. Information Regarding Chest X-Ray Reading**

Date of Reading: _____    ILO score: _____

Name of Reader: _____

Reader's Daytime Telephone Number.............................................( __ __ ) - __ __ __ - __ __ __ __

Reader's Mailing Address: _____
    Address

_____
City                          State/Province                    Zip/Postal Code

With respect to your relationship to the reader, check all applicable boxes:

Was the reader paid for the services that he/she performed  See OBJECTION 1 & 4 ...............................□ Yes  □ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the reader? See OBJECTION 1,3 & 4
                                                                                    □ Yes  □ No

Was the reader referred to you by counsel?  See OBJECTION 1 & 3.........................................□ Yes  □ No

Are you aware of any relationship between the reader and your legal counsel? See OBJECTION 1,3, & 4 □ Yes  □ No

*If yes, please explain:* _____

Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?
    See OBJECTION 2 ................................................................................□ Yes  □ No

*If the reader is not a certified B-reader, please describe the reader's occupation, specialty, and the method through which the reading was made:* _____

**5. Information Regarding Pulmonary Function Test:** .............................Date of Test: ___ / ___ / _____

List your height in feet and inches when test given: ............................................._____ ft _____ inches

List your weight in pounds when test given: ............................................................_____ lbs

Total Lung Capacity (TLC): ..........................................................._____ % of predicted

Forced Vital Capacity (FVC): ........................................................._____ % of predicted

FEV1/FVC Ratio: ......................................................................_____ % of predicted

Name of Doctor Performing Test (if applicable): _____

Doctor's Specialty: _____

Name of Clinician Performing Test (if applicable): _____

Testing Doctor or Clinician's Mailing Address: _____
                            Address

_____
City                          State/Province                    Zip/Postal Code

Testing Doctor or Clinician's Daytime Telephone Number:.........................( __ __ __ ) __ __ __ - __ __ __ __

Name of Doctor Interpreting Test: _____

Doctor's Specialty: _____

Interpreting Doctor's Mailing Address: _____
                        Address

_____
City                          State/Province                    Zip/Postal Code

Interpreting Doctor's Daytime Telephone Number: .........................( __ __ __ ) __ __ __ - __ __ __ __



WR GRACE PIQ 66760-0008

**PART I. ASBESTOS RELATED CONDITION(S) (Continued)**

With respect to your relationship to the doctor or clinician who performed the pulmonary function test check all applicable boxes:

If the test was performed by a doctor, was the doctor your personal physician?  See **OBJECTION 1 & 4** ☐ Yes ☐ No

Was the testing doctor and/or clinician paid for the services that he/she performed? See **OBJECTION 1&4** ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:*. _____

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician? See **OBJECTION 1, 3, 4**

☐ Yes ☐ No

Was the testing doctor or clinician referred to you by counsel?    See **OBJECTION 1 & 3** ...................... ☐ Yes ☐ No

Are you aware of any relationship between either the doctor or clinician and your legal counsel? ............. ☐ Yes ☐ No

*If yes, please explain ... ... ... ...*

_____ See **OBJECTION 1, 3 & 4** _____

Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test?  See **OBJECTION 2** ........................................................ ☐ Yes ☐ No

With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:

Was the doctor your personal physician?      See **OBJECTION 1 & 4** ..................................................... ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? See **OBJECTION 1 & 4** ........................... ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? See **OBJECTION 1,3,4**

☐ Yes ☐ No

Was the doctor referred to you by counsel?  See **OBJECTION 1, 3** ...................................................... ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel?  See **OBJECTION 1,3,4** ☐ Yes ☐ No

*If yes, please explain* _____

Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed? See **OBJECTION 2** ☐ Yes ☐ No

6.  **Information Regarding Pathology Reports:**

Date of Pathology Report:.............................................................................. __ __ / __ __ / __ __ __ __

Findings:      _____

Name of Doctor Issuing Report: _____

Doctor's Specialty: _____

Doctor's Mailing Address: _____
          Address

| City | State/Province | Zip/Postal Code |
|------|----------------|-----------------|

Doctor's Daytime Telephone Number: ...................................................... ( __ __ __ ) __ __ __ - __ __ __ __

With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:

Was the doctor your personal physician?      See **OBJECTION 1 & 4** ..................................................... ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed?    See **OBJECTION 1 & 3** ...................... ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? See **OBJECTION 1,3,4**

☐ Yes ☐ No

Was the doctor referred to you by counsel?  See **OBJECTION 1 & 3** ...................................................... ☐ Yes ☐ No

WR GRACE  PIQ  55769-0009

Are you aware of any relationship between the doctor and your legal counsel? See OBJECTON 1, 3, 4..☐ Yes  ☐ No

*If yes, please explain:* _____

Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?

_____See OBJECTION 2.................................................................................................☐ Yes  ☐ No

7

WR GRACE PIQ 55760-0010

**PART II. ASBESTOS-RELATED CONDITIONS (Continued)**

7. With respect to the condition alleged, have you received medical treatment from a doctor for the condition?

   See Attached EXHIBIT A ...................................................................................................... ☐ Yes ☐ No

   *If yes, please complete the following:*

   Name of Treating Doctor: ___See Attached EXHIBIT A___

   Treating Doctor's Specialty: ___See Attached EXHIBIT A___

   Treating Doctor's Mailing Address: ___See Attached EXHIBIT A___
                                     Address

   | City | State/Province | Zip/Postal Code |
   |---|---|---|

   Treating Doctor's Daytime Telephone number: See Attached EXHIBIT A ( __ __ __ ) __ __ __ - __ __ __ __

   Was the doctor paid for the services that he/she performed?  See OBJECTION 1 & 4 ...................... ☐ Yes ☐ No

   *If yes, please indicate who paid for the services performed:* _____

   Did you retain counsel in order to receive any of the services performed by the doctor? See OBJECTION 1, 3, & 4

                                                ☐ Yes ☐ No

   [REMAINDER OF PAGE INTENTIONALLY BLANK]

WR GRACE PIQ 55760-0011

***FOR ALL AVAILABLE ANSWERS, SEE ATTACHED EXHIBIT B***

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Grace asbestos-containing products
(b) A worker who personally removed or cut Grace asbestos-containing products
(c) A worker who personally installed Grace asbestos-containing products
(d) A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others
(f) If other, please specify.

Site of Exposure:

Site Name: _____    Location: _____

Site Type: ☐ Residence ☐ Business    Site Owner: _____

Employer During Exposure: _____

Unions of which you were a member during your employment: _____

| Job 1 Description: | | | | | | |
|---|---|---|---|---|---|---|
| Job 2 Description: | | | | | | |
| Job 3 Description: | | | | | | |
| Job 4 Description: | | | | | | |
| Job 5 Description: | | | | | | |
| Job 6 Description: | | | | | | |

9

WR GRACE  PIQ  55760-0012

## PART IV. INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

1. Are you asserting an injury caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person? ......................................................................................... ☐ Yes ☒ No

   *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to Grace asbestos-containing products. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.*

2. Please indicate the following information regarding the other injured person:

   Name of Other Injured Person: _____ Gender: ☐ Male ☐ Female

   Last Four Digits of Social Security Number: __ __ __ __          Birth Date: __ __ / __ __ / __ __

3. What is your Relationship to Other Injured Person: ................................................☐ Spouse ☐ Child ☐ Other

4. Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:

   _____    _____

5. Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products: _____
   
   From: __ __ / __ __ / __ __ __ __    To: __ __ / __ __ / __ __ __ __

6. Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:

   _____

7. Has the Other Injured Person filed a lawsuit related to his/her exposure? ............................................☐ Yes ☐ No

   *If yes, please provide caption, case number, file date, and court name for the lawsuit:*

   Caption: _____

   Case Number: _____ File Date: _____

   Court Name: _____

8. Nature of Your Own Exposure to Grace Asbestos-Containing Product:

   _____

9. Dates of Your Own Exposure to Grace Asbestos-Containing Product:

   From: __ __ / __ __ / __ __ __ __    To: __ __ / __ __ / __ __ __ __

10. Your Basis for Identification of Asbestos-Containing Product as Grace Product:

   _____

[REMAINDER OF PAGE INTENTIONALLY BLANK]

10

WR GRACE PIQ 55760-0013

## PART IV: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked. In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products
(b) A worker who personally removed or cut Non-Grace asbestos-containing products
(c) A worker who personally installed Non-Grace asbestos-containing products

(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(f) If other, please specify

\*\*\***FOR ALL AVAILABLE ANSWERS, SEE ATTACHMENT EXHIBIT B&D**\*\*\*

| Party Against which Lawsuit or Claim was Filed: | | | | | | |
|---|---|---|---|---|---|---|
| **Site of Exposure 1** | Job 1 Description: | | | | | |
| Site Name:___ | | | | | | |
| Address:___ | Job 2 Description: | | | | | |
| City and State:___ | | | | | | |
| Site Owner:___ | Job 3 Description: | | | | | |
| **Site of Exposure 2** | Job 1 Description: | | | | | |
| Site Name:___ | | | | | | |
| Address:___ | Job 2 Description: | | | | | |
| City and State:___ | | | | | | |
| Site Owner:___ | Job 3 Description: | | | | | |
| **Site of Exposure 3** | Job 1 Description: | | | | | |
| Site Name:___ | | | | | | |
| Address:___ | Job 2 Description: | | | | | |
| City and State:___ | | | | | | |
| Site Owner:___ | Job 3 Description: | | | | | |

11



WR GRACE PIQ  55780-0014

**PART VI: EMPLOYMENT HISTORY**

### ***FOR ALL AVAILABLE ANSWERS, SEE ATTACHMENT D***

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial work experience up to and including your current employment. For each job, include your employer, location of employment, and dates of employment. Only include jobs at which you worked for at least one month. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

Occupation Code: _____  If Code 59, specify: . _____

Industry Code: _____  If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
          Address

_____

City                                      State/Province              Zip/Postal Code


Occupation Code: _____  If Code 59, specify: . _____

Industry Code: _____  If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
          Address

_____

City                                      State/Province              Zip/Postal Code


Occupation Code: _____  If Code 59, specify: . _____

Industry Code: _____  If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
          Address

_____

City                                      State/Province              Zip/Postal Code


Occupation Code: _____  If Code 59, specify: . _____

Industry Code: _____  If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
          Address

_____

City                                      State/Province              Zip/Postal Code

12



WR GRACE PIQ 55760-0016

**PART VII: LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA**

## LITIGATION

1. Have you ever been a plaintiff in a lawsuit regarding asbestos or silica?................................☒Yes ☐ No

   *If yes, please complete the rest of this Part VII(a) for each lawsuit. For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2. Please provide the caption, case number, file date, and court name for the lawsuit you filed:

   Caption: _____ See Attached Exhibit C _____

   Case Number: **REDACTED** _____ File Date: _____

   Court Name: _____

3. Was Grace a defendant in the lawsuit? ............................................................☒Yes ☐ No

4. Was the lawsuit dismissed against any defendant? See OBJECTION 1 & 2 .........☐Yes ☐ No

   *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

   _____
   _____

5. Has a judgment or verdict been entered? See OBJECTION 1 & 2 .....................☐Yes ☐ No

   *If yes, please indicate verdict amount for each defendant(s):* _____

6. Was a settlement agreement reached in this lawsuit? See OBJECTION 1 & 3.........☐Yes ☐ No

   *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

   a. Settlement amount for each defendant: _____
   b. Applicable defendants: _____
   c. Disease or condition alleged: _____
   d. Disease or condition settled (if different than disease or condition alleged): _____

7. Were you deposed in this lawsuit? ...................................................................☐Yes ☒ No

   *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.*

## CLAIMS

1. Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? See OBJECTION 1 & 3 ...............☐Yes ☐ No

   *If yes, please complete the rest of this Part VII(b). If no, please skip to Part VIII.*

2. Date the claim was submitted: See OBJECTION 1 & 3 ............................... ___ / ___ / ___ ___ ___

3. Person or entity against whom the claim was submitted: See OBJECTION 1 & 3 _____

4. Description of claim: See OBJECTION 1 & 3 _____

5. Was claim settled? See OBJECTION 1 & 3 ...........................................☐Yes ☐ No

6. Please indicate settlement amount: See OBJECTION 1 & 3 .......................$ _____

7. Was the claim dismissed or otherwise disallowed or not honored? See OBJECTION 1, 2, 3 ........☐Yes ☐ No

   *If yes, provide the basis for dismissal of the claim:* _____

13



WR GRACE PIQ 65760-0016

## PART VIII: CLAIMS BY DEPENDENTS OR RELATED PERSONS

Name of Dependent or Related Person: _____ Gender: ☐ Male ☐ Female

Last Four Digits of Social Security Number: __ __ __ __    Birth Date: __ __ / __ __ / __ __ __ __

Financially Dependent: ....................................................................................... ☒ Yes ☐ No

Relationship to Injured Party: ☐ Spouse ☐ Child ☐ Other If other, please specify _____

Mailing Address: _____
               Address

_____
City                             State/Province               Zip/Postal Code

Daytime Telephone number: ......................................................... ( __ __ __ ) __ __ __ - __ __ __ __

## PART IX: SUPPORTING DOCUMENTATION

Please use the checklists below to indicate which documents you are submitting with this form.
***SEE ATTACHED EXHIBITS – ALL ATTACHMENTS ARE COPIES***

**Copies:**

☐ Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☐ Pathology reports
☐ Supporting documentation of exposure to Grace asbestos-containing products
☐ Supporting documentation of other asbestos exposure

☐ X-rays
☐ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Depositions from lawsuits indicated in Part VII of this Questionnaire
☐ Death Certification

**Originals:**

☐ Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☐ Pathology reports
☐ Supporting documentation of exposure to Grace asbestos-containing products

☐ Supporting documentation of other asbestos exposure
☐ X-rays
☐ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Death Certification

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation. Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:

_____

## PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

The information provided in this Questionnaire must be accurate and truthful. This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim. The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both. 18 U.S.C. §§ 152 & 3571.
**TO BE COMPLETED BY THE INJURED PERSON.**

I swear, <u>under penalty of perjury</u>, that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate and complete.

Signature: _____    Date: __ __ / __ __ / __ __ __ __

Please Print Name: _____

**TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.**

I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete.

Signature: _____    Date: __ __ / __ __ / __ __ __ __

Please Print Name: _____



WR GRACE PIQ 55760-0017

# EXHIBIT A

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]



WR GRACE PIQ 55760-0018

CLIFFORD J. PRESTIA, M.D., P.C.
LIBERTY MEDICAL ARTS BUILDING
125 LIBERTY STREET
SPRINGFIELD, MASSACHUSETTS 01103
Telephone (413) 737-0950

November 28, 1988

Thornton & Early
200 Portland Street
Boston, Massachusetts 02114

RE:
DOB:        **REDACTED**

Dear Attorney Thornton,

This letter is prepared at the request of the above named patient and is in followup to prior communication dated January 31, 1986.

          was seen in followup evaluation on October 25, 1988. Please find enclosed a photocopy of my records concerning that reevaluation as well as a new B reading of his chest x-ray.

          has had no further known asbestos exposure since his last visit.   He continues in his nonsmoking status since age 26.

He has had a little bit of cough and dyspnea on exertion.  He has had some epigastric pain which has been diagnosed as an ulcer by Dr. Sheffield and has had more gastrointestinal complaints of late and is referred back to Dr. Sheffield for reevaluation of his GI tract.

His physical examination is normal and lungs are clear to auscultation and percussion.

His lab database shows essentially normal blood, serum and urine parameters.

His cardiogram and spirogram are normal.

His chest x-ray on B reading is unchanged from 1985 and shows bilateral hemidiaphragmatic plaques with Extent 1 calcification on the right and left lateral chest wall pleural plaque Width A, Extent 1 and left en face plaque Extent 1.

My impression continues to be that         has mild pulmonary pleural asbestosis. His prognosis is fair.  There is no evidence of other asbestos related disease.  His status requires periodic

REDACTED



WR GRACE PIQ 55760-0019

REDACTED

Page 2
November 28, 1988

reevaluation and future significant developments will be
communicated to you promptly at his request.

Sincerely,

Clifford J. Prestia, M.D.

CJP/jk


WR GRACE PIQ 65760-0020

# EXHIBIT   B

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]


WR GRACE PIQ 55760-0021

File No. 87.5078

### Affidavit of Charles H. Kinnear

I, Charles H. Kinnear, under oath depose and say:

1.    I currently reside at 601 10th St., Lake Wales, FL 33853.

2.    I have personal knowledge of the facts hereinafter set forth.

3.    The Affidavit I am about to give concerns my work as a/an Boiler/Furnace Worker and my exposure to asbestos-containing products manufactured by W.R. GRACE.

4.    I worked as a/an Boiler/Furnace Worker from approximately 1951 to 1987 at various jobsites located throughout New England and other states.

5.    I recall using, or being present while, the following W.R. GRACE asbestos-containing products were in use:

| PRODUCTS | JOBSITES | YEARS |
|---|---|---|
| ZONOLITE ACOUSTICAL PLASTIC | WEST FIELD TEATCHERS COL WEST FIELD, MASS. | 1968 |
| " " " | SPFLD. CITY HALL SPFLD, MASS. | 1970 |
| | | |

6.    I was exposed to the asbestos-containing dust created by the use of the above-mentioned products.

7.    There may have been other occasions where I was exposed to asbestos and asbestos-containing products, but this is the only location(s) I recall today.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY.

DATE: 1-15-05

_Charles H. Kinnear_
Charles H. Kinnear

WR GRACE PIQ 66760-0022

# EXHIBIT  C

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WR GRACE  PIQ  55760-0023

PAGE    1

PLEADING FILE COMPLAINT
01/31/06

FILE#: 86.2968      SSNO:

REDACTED

CAPTION:

DOCKET NO: IAD      CRT: MAF      DATE FILED: 1988/05/12
CLAIM TYPE:



WR GRACE PIQ 66760-0024

# EXHIBIT  D

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

PAGE    1

CLIENT JOBSITE HISTORY - 1900 TO 2006
01/31/06

REDACTED

| SSN | FILE | FR | TO | | LOCAL |
|-----|------|----|----|----|-------|
| | | | | BEG END | |
| | 86.2968 1970 | 0 | CARPENTER, TAPER | | 108 |
| ALTMAN CARPENTRY | 39390 ATLANTIC CITY | NJ | 1983 1984 | |
| ANDERSON CORP | 39391 ATLANTIC CITY | NJ | 1983 1984 | |
| FONTAIN BRO | 39392 SPRINGFIELD | MA | 1980 1981 | |
| RUEDAS CONSTRUCTION | 39395 | | 1970 1973 | |
| SITES IN SAN JUAN PUERTIO RI | 39393 SAN JUAN PUERTO RI | | 1963 1967 | |
| | | | 1967 1970 | |
| SPRINGFIELD CITY BLDG DPT | 11753 SPRINGFIELD | MA | 1978 1979 | |
| SPRINGFIELD CITY HALL | 05692 SPRINGFIELD | MA | 0 0 | |

WR GRACE PIQ 55760-0025



WR GRACE PIQ 66760-0026

## OBJECTIONS

OBJECTION #1

Claimant objects to this question as not reasonably calculated to lead to the discovery of relevant and/or admissible evidence.

OBJECTION #2

Claimant objects to this question because the information it seeks is equally available to the defendant.

OBJECTION #3

Claimant objects to this question as it calls for information that is confidential in nature and subject to attorney/client privilege.

OBJECTION #4

Claimant objects to this question as it calls for information that is confidential in nature and subject to doctor/patient privilege.



WR GRACE PIQ 65760-0027

ATTORNEYS AT LAW

# Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris (NY & MA)
Edwin L. Wallace
Robert M. Byrne, Jr.
David C. Strouss
Joseph R. Donohue (ME & MA)
Andrew S. Wainwright
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley (NY & MA)
Brad J. Mitchell
Kristen Marquis Fritz
Zoran Malesevic

100 Summer St. • 30th Floor • Boston, MA 02110 • 617-720-1333
Toll Free 800-431-4600    FAX# 617-720-2445
www.tenlaw.com

Of Counsel
Elizabeth M. Shost
Admitted in NY & PA only

July 11, 2006

Rust Consulting, Inc.
Claims Processing Agent
Re: W.R. Grace & Co. Bankruptcy
201 S. Lyndale Avenue
P.O. Box 1620
Faribault, MN 55021

Dear Sir/Madam:

Enclosed please find responses to the various WR Grace questionnaires we received in response to the Court's order.  Please note that, on behalf of our clients, we object, and reserve all rights, to this entire process.  Also, given that the material you sent did not include social security numbers, there is the possibility that some of the individuals are not the people you were looking for responses from.  Furthermore, we reserve the right to supplement these responses at a later time.

The following is attached:

At Tab 1:  A compact disk with the scanned questionnaires and corresponding bar code page;

At Tab 2: Questionnaires that have been filled out but no bar code exists;

At Tab 3:  Questionnaires being returned because the clients have been paid by WR Grace or we no longer represent them;

At Tab 4:  Returned questionnaires because they are duplicates;

At Tab 5:  Returned questionnaires because they lack sufficient information to determine if they are our clients.  If you provide social security numbers, we will fill



WR GRACE PIQ 65760-0028

them out if they are our clients.  We therefore reserve the right to submit them post July 12, 2006.

      Thank you.

                       Sincerely,

                       Garrett Bradley

GB:tc
Enclosures

WR GRACE PIQ 65760-0029

FedEx US Airbill Express

FedEx Tracking Number 8565 5721 8792

RECIPIENT PEEL HERE

RECIPIENT'S Copy

1 From This portion can be removed for Recipient's records.

Date 7/11/06

Sender's Name Garrett Bradley

FedEx Tracking Number 8565 5721 8792

Company THORNTON & NAUMES LLP

Phone 617 720-1333

Address 100 SUMMER ST FL 30

City BOSTON      State MA   ZIP 02110-2106

2 Your Internal Billing Reference WR Grace Tab 1 & 2

3 To
Recipient's Name Claims Process Ing Agent
Re: WR Grace Bankruptcy

Company Rust Consulting, Inc.

Recipient's Address 201 S. Lyndale Ave

Address

City Faribault      State MN   ZIP 55021

0332225250

8565 5721 8792

Total Charges 519

fedex.com 1.800.GoFedEx 1.800.463.3339