**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Docket No. |
| | ) | |

**MOTION TO COMPEL ASBESTOS PERSONAL INJURY CLAIMANTS
REPRESENTED BY JAMES F. HUMPHREYS & ASSOCIATES, L.C. TO RESPOND
TO THE W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE**

In response to the W.R. Grace Asbestos Personal Injury Questionnaire ("Questionnaire"), the clients represented by James F. Humphreys & Assocs., L.C. (collectively, the "Humphreys Claimants") have objected to providing information in response to certain questions posed in the Questionnaire.[1] Because the objections are unfounded, Grace hereby moves to compel the Humphreys Claimants to provide all the information requested in the Questionnaire.[2]

**ARGUMENT**

The Court approved the Questionnaire after extensive briefing, argument, and consideration, and has ruled that general relevance objections are unfounded and should not be maintained. Additionally, the Court has addressed the general burden objections related to providing the information requested in the Questionnaire by permitting response by way of attachment and by providing an additional year to provide the requested information.

---

[1] The clients represented by James F. Humphreys & Assocs. who have returned Questionnaires are identified in Exhibit A (attached).

[2] Grace moves only to compel responses to questions in which the Humphreys Claimants have objectd lieu of providing responsive information. As the Court is aware, pursuant to this Court's Order Concerning Debtors' Motion to Compel, Claimants have until November 13, 20006 to supplement their Questionnaire responses. Grace reserves its right to raise any and all objections to the sufficiency of the Humphreys Claimants' responses until the supplementation of their Questionnaire responses is complete.

Accordingly, all general relevance and burden objections raised by the Humphreys Claimants should be overruled on their face. *See* Memorandum of Points and Authorities Concerning Background of the Questionnaire Approval Process and Objections Previously Addressed by the Court ("Background Memorandum") (attached as Exhibit B).[3]

In connection with all other objections raised by the Humphreys Claimants, it is fundamental, under both Federal Rule of Civil Procedure 26 and Federal Rule of Bankruptcy Procedure 7026, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1); Fed. R. Bankr. P. 7026. Accordingly, under a motion to compel, the initial burden is on the moving party to demonstrate that the discovery sought is relevant. Once the relevance showing has been satisfied, the "party resisting discovery" bears the burden of making a specific showing as to why the information sought does not have to be provided. *See Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) (citations omitted). Because the Court already has ruled that all the questions in the Questionnaire are relevant, *see* Order Concerning Debtor's Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Personal Injury Questionnaire ("MTC Order") (Docket No. 13393) (Oct. 12, 2006) at ¶ 1, the burden rests with the firms raising the objections and resisting the discovery to demonstrate why their objections should be sustained.

The Humphreys Claimants refused to answer several questions based on their various objections. However, none of the Humphreys Claimants are justified for the following reasons:

- First, the Humphreys Claimants object to Part II, Section A, Questions 2, 4, and 7, relating to the relationship between Claimant, his or her doctors, and his or her counsel on the grounds that the information is protected from disclosure by the

---

[3] The Humphreys Claimants failed to respond to additional questions -- including Part I, Section A, Question 3, Part II, Question 7, Part IV, and Part VIII -- without stating any objection or basis for such failure. For the reasons discussed in the Background Memorandum, this is plainly insufficient.

attorney work product doctrine. This argument must fail as Grace does not seek the disclosure of any attorney mental impressions or work product.

- Second, the Humphreys Claimants object to Part II, Section A, Questions 2, 5, and 6 relating to whether the doctors involved were the Claimants' personal physicians on the grounds that the information is protected from disclosure under the Health Insurance Portability and Accountability Act of 1996 (HIPAA). This objection must fail as Grace is seeking information from the Claimants themselves rather than from their physicians and because HIPAA allows for the disclosure of medical records in litigation pursuant to a Court Order.

- Fourth, the Humphreys Claimants object to Part V, relating to the Claimant's non-Grace asbestos exposure on the mistaken belief that Grace has not produced its historical exposure records in response to discovery requests from the PI Committee.

- Sixth, the Humphreys Claimants object to Questions 4, 5, 6, and 7 in Part VII, Section A relating to asbestos- and silica-related litigation brought by the Claimants and all questions in Part VII, Section B, relating to non-litigation asbestos or silica claims on the grounds that the information sought is "subject to a confidentiality agreement between the parties." This objection must fail too, as confidentiality agreements do not immunize facts concerning a settlement from discovery.

**I.   THE HUMPHREYS CLAIMANTS HAVE IMPROPERLY ASSERTED CLAIMS OF ATTORNEY WORK PRODUCT.**

The Humphreys Claimants have asserted objections based on the attorney work product doctrine with respect to the following portions of the Questionnaire:

| Question | Text of Question | Text of Objection |
|---|---|---|
| Part II, Section A, Questions 2, 4, and 7 | Did you retain counsel in order to receive any of the services performed by the [] doctor? | Protected under work product doctrine. |
| Part II, Section A, Questions 2 and 4 | Was the [] doctor referred to you by counsel? | [T]his information is protected under work product doctrine. |
| Part II, Section A, Questions 2 and 4 | Are you aware of any relationship between the [] doctor and your legal counsel? If yes, please explain. | Plaintiff objects … on the grounds that this information is protected under the attorney work-product doctrine and not discoverable. |

3

*See, e.g.*, Questionnaire of M. N. at WR GRACE PIQ 006629-011 – 006629-014; Questionnaire of K. P. at WR GRACE PIQ 006620-011 – 006620-014, attached as Exhibit C.[4]

The Humphreys Claimants' claim of attorney work product privilege is not well-founded as the question at issue seeks only facts and does not invade *any* privilege at all.  Second, the Humphreys Claimants have provided no information by which the Court could assess the validity of those privilege claims.

      A.      **The Attorney Work Product Privilege Does Not Apply.**

It is undisputed that the attorney work product doctrine, "while protective of an attorney's opinions, does not protect the ***facts*** that underlie the opinions" and "[a] party may obtain such facts through the adversarial process ***by asking questions*** in the appropriate areas." *Leonen v. Johns-Manville*, 135 F.R.D. 94 (D.N.J. 1990) (emphasis added).  Thus, questions seeking factual information as opposed to documents prepared by the attorney in anticipation of litigation do not fall within the work product doctrine and must be answered.  *See id.*, 135 F.R.D. at 96.  The above questions clearly go to facts -- not opinions.  Indeed, much of the information requested by Grace relates to the general purpose of retaining counsel, a factual question that falls outside the scope of any privilege.  Courts have uniformly held that, barring unusual circumstances, "[i]nquiry into the general nature of the legal services provided by counsel does not necessitate an assertion of the privilege because the general nature of services is not protected." *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001) (citing *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999)); *see also In re Grand Jury Proceedings*, 722 F.2d 303, 308 (6th Cir. 1983) ("The mere 'fact of consultation including the component facts of … scope or object of

---

[4]    These exemplars are representative of the Questionnaire submitted on behalf of the Claimants named in Exhibit A.  Grace will make available to the Court the Questionnaire for any individual named in Exhibit A upon the Court's request.

employment is not privileged.'") (quoting McCormick, Evidence, § 90 (2d ed. 1972)) (collecting cases).

      **B.    The Humphreys Claimants Have Not Met Their Burden to Demonstrate that the Attorney Work Product Privilege Prevents the Disclosure of the Information.**

Under established Third Circuit law, the burden of proving that the work product doctrine applies and prevents the discovery of otherwise relevant information falls on the party asserting the privilege. *See In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 187 (D.N.J. 2003) ("The party asserting the privilege bears the burden of establishing those facts that are the essential elements of the privileged relationship."). Indeed, "a party who alleges privilege as a reason for not complying with a [discovery request] has the burden of proof to assert ***specific facts*** relating to specific documents [or communications] and cannot rely on conclusory statements." *Mass. Sch. of Law v. Am. Bar Assoc.*, 914 F. Supp. 1172, 1178 (E.D. Pa. 1996) (emphasis added). The Humphreys Claimants' privilege claim is utterly devoid of any facts, let alone specific facts that would be sufficient to justify their claims. Indeed, the entirety of the Humphreys Claimants' claim of privilege is contained in the conclusory statement that the objected-to questions may seek information "protected under work product doctrine." This is not enough as a matter of law. *See id.* at 1178 ("The purpose of the rule is to provide a party whose discovery is contained by a claim of privilege with information sufficient to evaluate the claim and to resist it. The party claiming the privilege cannot decide the limits of the entitlement.").

The questions at issue seek factual information regarding the purpose and scope of the retention of counsel and other information known to the Claimant independent from any attorney mental impressions or documents prepared in anticipation of litigation. The events in question, including the diagnosis of the Claimant with the disease or condition for which he or she seeks recovery, may well have occurred outside the attorney-client relationship. If so, then clearly no

protections arising out of the attorney-client relationship would be relevant. The Humphreys Claimants have not provided any information from which the Court may determine whether an attorney-client relationship existed when, for example, the Claimant was referred to a doctor and diagnosed with the asserted disease or condition. As a result, they have not provided any basis for finding that the attorney work product privilege would apply to these matters.

## II. HIPAA DOES NOT PRECLUDE THE CLAIMANTS FROM IDENTIFYING WHETHER THE DOCTORS ARE THEIR PERSONAL PHYSICIANS.

The Humphreys Claimants object to responding to the following questions on the grounds that such information is protected from disclosure by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"):

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Part II, Section A, Questions 2, 4, and 5 | Was the [] doctor your personal physician? | By virtue of any examination that was conducted, claimant contends that the physician who examined him became his 'personal physician.' Accordingly, any information in the possession, custody or control of said physician is confidential and protected under the *Health Insurance Portability and Accountability Act of 1996* (HIPPA) (sic), plaintiff objects to disclosure of this information. |

*See, e.g.*, Questionnaire of M. N. at WR GRACE PIQ 006629-011 – 006629-013.

The Humphreys Claimants' argument must fail because the information being sought -- whether the doctors in question were their personal physicians -- is neither confidential medical information, nor is it information being sought from the doctor without the consent of the Claimant. Moreover, asking whether a doctor is a Claimant's personal physician is not a request for confidential medical information regarding the Claimant; it is simply asking what is the Claimant's relationship to the doctor.

Further, even if HIPAA did apply to these questions, the Act allows for the disclosure of medical information for litigation purposes pursuant to a Court Order, especially where, as here, the Claimants' medical information is at the heart of the litigation. See 45 C.F.R. § 164.512(e)(1) ("A covered entity may disclose protected health information in the course of any judicial or administrative proceeding .… In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order."). By requiring the Claimants to answer the Questionnaire HIPAA's requirements are satisfied. *See Bayne v. Provost*, 359 F. Supp. 2d 234, 237 (N.D.N.Y. 2005). Health information that may eventually be used in litigation or court proceedings, should be made available during the discovery phase under HIPAA."); *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925-26 (7th Cir. 2004) ("All that [HIPAA] should be understood to do, therefore, is to create a procedure for obtaining authority to use medical records in litigation .… We do not think HIPAA is rightly understood as an Act of Congress that creates a privilege.").

Simply put, the Humphreys Claimants cannot bring claims based on alleged diseases and conditions without waiving any objection to the disclosure of medical records relating to the diagnosis, evaluation, or treatment of those diseases and conditions, much less while simultaneously refusing to respond to basic questions regarding the doctors they are relying on to establish their claims. Thus, the Humphreys Claimants cannot refuse to respond to reasonable questions regarding their relationships to the doctors identified in the Questionnaires by invoking the protections of HIPAA, and such objection is not well-founded.

### III. THE EXISTENCE OF CONFIDENTIALITY AGREEMENTS DOES NOT EXCUSE THE HUMPHREYS CLAIMANTS' OBLIGATION TO PRODUCE INFORMATION REGARDING SETTLEMENTS.

The Humphreys Claimants lodge a confidentiality objection to the following questions:

| Question | Text of Question | Text of Objection |
|---|---|---|
| Part VII, Section A, Question 4 | Please provide the basis for the dismissal of the lawsuit against each defendant [in each asbestos or silica-related lawsuit brought against the defendant]. | The information sought here … is subject to a confidentiality agreement between the parties. |
| Part VII, Section A, Question 5 | Has a judgment or verdict been entered? If yes, please indicate verdict amount for each defendant. | The information sought here … is subject to a confidentiality agreement between the parties. |
| Part VII, Section A, Question 6 | Was a settlement agreement reached in this lawsuit? If yes and the settlement was reached on or after April 2, 2001, please indicate the following: a. Settlement amount for each defendant. b. Applicable defendants. c. Disease or condition alleged. d. Disease or condition settled (if different than disease or condition alleged). | The information sought here … is subject to a confidentiality agreement between the parties. |
| Part VII, Section A, Question 7 | Were you deposed in this lawsuit? If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire. | The information sought here … is subject to a confidentiality agreement between the parties. |
| Part VII, Section B and all subparts | Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? | The information sought here … is subject to a confidentiality agreement between the parties. |

*See, e.g.*, Questionnaire of M. N. at WR GRACE PIQ 006629-019.

This claim must fail for two reasons. First, the Humphreys Claimants fail to make specific allegations regarding these purported confidentiality agreements to allow the Court to determine whether any such privilege would apply. Second, even if the Humphreys Claimants' factual allegations were sufficient, which they are not, the mere existence of a confidentiality agreement does not prevent the disclosure of the terms of a settlement agreement.

**A.     The Humphreys' Claimants Allegations Are Insufficient To Support A Claim Of Confidentiality.**

The Humphreys Claimants, as the parties seeking to resist the requested discovery, "must state with specificity the objection and how it relates to the particular request being opposed." *Harding v. Data Transport, Inc.* 914 F. Supp. 1084, 1102 (D.N.J. 1996) ("Broad-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request."). Instead, the Humphreys Claimants make cursory, equivocal allegations of some unspecified confidentiality interest.

In their response to Part VII, Section A, Question 6, for example, which asks whether a settlement agreement has been reached in asbestos- or silica-related litigation and, if so, the amount of that settlement, defendants involved in the settlement, and the disease or condition alleged and settled, the Humphreys Claimants state that they object on the grounds that the information sought is "subject to a confidentiality agreement between the parties." *See, e.g.*, Questionnaire of M. N. at WR GRACE PIQ 006629-019. This vague assertion of confidentiality is devoid of several key details that would be necessary for the Court to assess the propriety of any confidentiality claim. The Humphreys Claimants' omit the terms of the purported confidentiality agreements. Not all confidentiality agreements are equivalent in scope. There is no way to determine whether, under the "confidentiality agreement" generically cited by the Humphreys Claimants, the disclosure of all information is purportedly prohibited or whether only the disclosure of certain information is allegedly barred. Moreover, confidentiality provisions frequently have express exceptions that permit the disclosure of the confidential material upon a court order. Without specific allegations as to the terms of the purported confidentiality agreements, the Court cannot possibly ascertain the alleged propriety of the

9

objection. *See* Tr. of Hr'g at 282-83 (Jul. 19, 2005) ("[The Court]: I don't know what the scope of those agreements are."). At a minimum, the Claimants must provide proof of the existence of a confidentiality agreement, the identity of the parties subject to the confidentiality agreements, and the scope of the confidentiality agreement, so it can be litigated.

      **B.**    **As A Matter Of Law, Grace Is Entitled To Information Regarding The Amounts Of The Humphreys Claimants' Settlements And Trust Claims.**

Regardless of the sufficiency of their factual record, the Humphreys Claimants' position that the mere existence of a confidentiality provision bars discovery of the amounts of various litigation and trust settlements is without legal merit. The law does not bar the discovery of settlement information. Accordingly, courts have found that "litigants cannot shield a settlement agreement from discovery ***merely because it contains a confidentiality provision***." *Cleveland Constr., Inc. v. Whitehouse Hotel, Ltd. P'ship*, 2004 WL 385052, at *1 (E.D. La. Feb. 25, 2004) (*quoting ABF Capital Mgmt. v. Askin Capital*, 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000)) (emphasis added). This Court agreed with this very point when this issue arose in connection with its consideration of the Questionnaire during the July 2005 omnibus hearing. The PI Committee, acting on behalf of the interests of the Personal Injury Claimants (including the Humphreys Claimants) objected to questions regarding the amounts of settlements with various defendants on the grounds that such settlements contain confidentiality agreements. Tr. of Hr'g at 282-83 (Jul. 19, 2005). Over the PI Committee's objection, the Court ordered that the Claimants "identify the defendants with whom [the Claimants] settled, the amount, and for what disease," and stated that a defendant "can come in and contest it if [a Claimant] violates their agreements." *Id.*

To the extent that the Court believes that such information needs protection from disclosure outside the Bankruptcy proceedings, the proper course is not to deny Grace access to

the information, but to issue a protective order that restricts the use of the information obtained in response to these questions to the estimation proceedings. As the Third Circuit made clear, the "[C]ourt, in its discretion, is authorized by this subsection to fashion a set of limitations that ***allows as much relevant material to be discovered as possible***, while preventing unnecessary intrusions into the legitimate interests – including … confidentiality interests – that might be harmed by the release of the material sought." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) (emphasis added).

## CONCLUSION

For the foregoing reasons, Debtors respectfully request that the Court overrule the objections lodged by the Humphreys Claimants in lieu of providing answers to the questions posed in the Questionnaire and require that Claimants provide the required information on or before January 12, 2007.

Wilmington, Delaware
Dated: November 9, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

KIRKLAND & ELLIS LLP
Barbara M. Harding
David Mendelson
Brian T. Stansbury
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:     (202) 879-5000
Facsimile:      (202) 879-5200

*and*

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

*/s/ James E. O'Neill*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession