**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Docket No. |
| | ) | |

## MOTION TO COMPEL ASBESTOS PERSONAL INJURY CLAIMANTS REPRESENTED BY EDWARD O. MOODY, P.A., FOSTER & SEAR L.L.P., MOTLEY RICE LLC, AND WILLIAMS BAILEY LAW FIRM, LLP TO RESPOND TO THE W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

In response to the W.R. Grace Asbestos Personal Injury Questionnaire ("Questionnaire"), the clients represented by Edward O. Moody, P.A., the clients represented by Foster & Sear L.L.P., the clients represented by Motley Rice LLC, and the clients represented by Williams Bailey Law Firm, L.L.P. (collectively, the "Moody/Foster/Motley/Williams Claimants") have objected to providing information in response to certain questions posed in the Questionnaire.[1] Because the objections are unfounded, Grace hereby moves to compel the Moody/Foster/Motley/Williams Claimants to provide all the information requested in the Questionnaire.[2]

---

[1] The clients represented by Edward O. Moody and who have returned Questionnaires are identified in Exhibit A (attached). The clients represented by Foster & Sear and who have returned Questionnaires are identified in Exhibit B (attached). The clients represented by Motley Rice and who have returned Questionnaires are identified in Exhibit C (attached). The clients represented by Williams Bailey and who have returned Questionnaires are identified in Exhibit D (attached).

[2] Grace moves only to compel responses to questions to which the Moody/Foster/Motley/Williams Claimants have objected in lieu of providing responsive information. As the Court is aware, pursuant to this Court's Order concerning Debtors' Motion to Compel, Claimants have until November 13, 2006 to supplement their Questionnaire responses. Grace reserves its right to raise any and all objections to the sufficiency of the Moody/Foster/Motley/Williams Claimants' responses until the supplementation of their Questionnaire responses is complete.

## ARGUMENT

The Court approved the Questionnaire after extensive briefing, argument, and consideration, and already has ruled that general relevance objections are unfounded and should not be maintained. Additionally, the Court has addressed the general burden objections related to providing the information requested in the Questionnaire by permitting response by way of attachment and by providing an additional year to provide the requested information. Accordingly, all general relevance and burden objections raised by the Moody/Foster/Motley/Williams Claimants should be overruled on their face. *See* Memorandum of Points and Authorities Concerning Background of the Questionnaire Approval Process and Objections Previously Addressed by the Court ("Background Memorandum") (attached as Exhibit E).[3]

In connection with all other objections raised by the Moody/Foster/Motley/Williams Claimants, it is fundamental, under both Federal Rule of Civil Procedure 26 and Federal Rule of Bankruptcy Procedure 7026, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1); Fed. R. Bankr. P. 7026. Accordingly, under a motion to compel, the initial burden is on the moving party to demonstrate that the discovery sought is relevant. Once the relevance showing has been satisfied, the "party resisting discovery" bears the burden of making a specific showing as to why the information sought does not have to be provided. *See Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) (citations omitted). Because the Court already has ruled that all the questions in the Questionnaire are relevant, *see* Order

---

[3]    On general relevance grounds, the Moody Claimants also refused to answer Part II, Questions 3, 4, 5, and 6 in Part VII, Section A, and Questions 1, 2, 3, 5, and 6 in Part VII, Section B, the Foster & Sear Claimants refused to answer Question 6 in Part VII, Section A and Questions 1-7 in Part VII, Section B, and the Williams & Bailey Claimants refused to answer Part VII. Additionally, on burden grounds, the Moody Claimants refused to answer Part II, Section A of Part VII, Question 1 of Part VII, Section B, and Part VIII.

Concerning Debtors' Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Personal Injury Questionnaire ("MTC Order") (Docket No. 13393) (Oct. 12, 2006) at ¶ 1, the burden rests with the firms raising the objections and resisting the discovery to demonstrate why their objections should be sustained.

The Moody/Foster/Motley/Williams Claimants refused to answer several questions based on their various objections.    However, none of Moody/Foster/Motley/Williams Claimants are justified for the following reasons:

- First, the Moody/Foster/Motley/Williams Claimants refused to answer multiple subparts of Part II, relating to the medical basis for the Claimants' diagnoses, on the grounds that they seek "information from experts that is non-discoverable and is subject to the consulting expert" privilege.  This objection must fail as the Moody/Foster/Motley/Williams Claimants have not met their burden of establishing the consulting expert privilege applies to the information sought by the Questionnaire.  Further, exceptional circumstances exist that would require the production of such documents.

- Second, the Moody/Foster/Motley/Williams Claimants refused to answer multiple subparts of Part II, Questions 1, 2, 4, 5, 6, and 7 and Question 6 in Part VII, Section A, relating to asbestos- and silica-related litigation brought by the Claimants, on the basis that they seek to discover information protected by the attorney-client privilege and/or information protected by the attorney work product.  The Moody/Foster/Motley/Williams Claimants' objection is unfounded as the questions posed in the Questionnaire seek only facts and not privileged information.  Further, the Moody/Foster/Motley/Williams Claimants have failed to provide any objective information that would allow the Court to determine whether any valid privilege applies.

- Third, the Moody/Foster/Motley/Williams Claimants refuse to answer Question 6, Part VII, Section A, relating to asbestos- and silica-related litigation brought by the Claimants and multiple subparts of Part VII, Section B relating to Claimants' non-litigation asbestos and silica claims on the ground that it seeks disclosure of settlements reached with other defendants that are subject to binding confidentiality agreements.    This objection must too fail, as confidentiality agreements do not immunize facts concerning a settlement from discovery.

- Fourth, the Moody/Foster/Motley/Williams Claimants have limited their responses to Part VII to only those claims or litigation relating to personal-injury asbestos claims on the grounds that the questions, as written, are overbroad.  This objection must fail as the Court has previously found the questions to be appropriate and the Moody/Foster/Motley/Williams Claimants have not provided

any particularized grounds for refusing to provide information regarding silica-related claims and litigation.

I.     THE MOODY/FOSTER/MOTLEY/WILLIAMS CLAIMANTS HAVE IMPROPERLY ASSERTED CLAIMS OF "CONSULTING EXPERT" PRIVILEGE.

The Moody/Foster/Motley/Williams Claimants have asserted objections based on the "consulting expert" privilege of Federal Rule 26(b)(4)(B) with respect to the following portions of the Questionnaire:

| Question | Text of Question | Text of Objection |
|---|---|---|
| Instruction C | Asbestos Related Condition(s) … If you have been diagnosed with multiple conditions and/or if you have received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. | Pursuant to Federal Rule of Civil Procedures (26)(b)(4)(B), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. . . . Claimant [objects] to Section C of the Instructions to the extent that it requests the completion of Part II of the Discovery Questionnaire 'if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors.' . . . |
| Instruction C | Supporting Documents for Diagnosis: This Questionnaire must be accompanied by any and all documents, you or your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis. | Pursuant to Federal Rule of Civil Procedures (26)(b)(4)(B), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. . . . Claimant objects to Section C of the Instructions to the extent that it requests the production of 'any and all documents' that 'support or conflict with your diagnosis.' . . . |

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Instruction C | X-rays and B-reads: Please attach all x-ray readings or reports. | Pursuant to Federal Rule of Civil Procedures (26)(b)(4)(B), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. . . . Claimant objects to Section C of the Instructions to the extent that it requests the production of 'all x-ray readings and reports.' . . . |
| Instruction C | Pulmonary Function Tests: Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based. | Pursuant to Federal Rule of Civil Procedures (26)(b)(4)(B), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. . . . Claimant objects to Section C of the Instructions to the extent that it requests the production of 'all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based.' . . . |

| Question | Text of Question | Text of Objection |
|---|---|---|
| Instruction J | As indicated the instructions to Parts II and III, this Questionnaire must be accompanied by copies … of any and all documents you, your counsel, or your doctors have or subsequently obtain that … support or conflict with your diagnosis. | Pursuant to Federal Rule of Civil Procedures (26)(b)(4)(B), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. . . . Claimant objects to Section J of the Instructions to the extent that it requests the production of 'any and all documents' that 'support or conflict with your diagnosis.' |
| Part II, Question 1[4] | Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire…. If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following: . . . If alleging Asbestos-Related Lung Cancer, were you diagnosed with this lung cancer based on the following: . . . If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged: . . . Were you diagnosed with the above-indicated cancer based on the following: . . . If alleging Clinically Severe Asbestosis, was your diagnosis based on the following: . . . If alleging Asbestosis, was your diagnosis based on the following:. . . . | Claimant objects to this question and each of its subparts (a-f) on the ground that it exceeds the scope of discovery in that it seeks information not relevant to the estimation proceedings, and information from experts that is non-discoverable and is subject to the consulting expert and work product privileges. |

---

[4] This Objection is raised solely by the Moody Claimants.

| Question | Text of Question | Text of Objection |
|---|---|---|
| Part II and all subparts[5] | Asbestosis-Related Conditions | Pursuant to Federal Rule of Civil Procedure 26(b)(4)(B), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by an expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial.  Without limiting the foregoing, Claimant objects to the following provisions of the Discovery Questionnaire as violative of Fed. R. Civ. P. 26(b)(4)(B): Claimant objects to Part II of the Discovery Questionnaire to the extent that it requests disclosure of 'diagnoses and diagnostic tests' by 'multiple doctors' concerning 'previous or subsequent diagnoses or diagnostic tests that change or conflict with the original diagnoses.'  Claimant urges this objection with regard to all 'conditions' for which disclosure is requested. |

*See* Questionnaire of D. B. at WR GRACE PIQ 44027-0004 – 44027-0014; Questionnaire of

J. L. at WR GRACE PIQ 43987-0004 – 43987-0014 (submitted by Edward O. Moody, P.A.)

(collectively attached as Exhibit F); Questionnaire of D. C. at WR GRACE PIQ 017400-

0004 – 017400-0014; Questionnaire of W. D. at WR GRACE PIQ 017405-0004 – 017405-

0014 (submitted by Foster & Sear LLP) (collectively attached as Exhibit G); Questionnaire

of D. W. at WR GRACE PIQ 51670-0004 – 51670-0013; Questionnaire of C. H. at WR

GRACE PIQ 51618-0004 – 51618-0013 (submitted by Motley Rice LLC) (collectively

attached as Exhibit H); Questionnaire of J. A. at WR GRACE PIQ 60270-0030;

---

[5]    This objection is not raised by the Moody Claimants.

Questionnaire of R. J. at WR GRACE PIQ 60333-0026 (submitted by Williams Bailey) (collectively attached as Exhibit I).[6]

### A.  The Moody/Foster/Motley/Williams Claimants Have Not Demonstrated A Valid Consultant Relationship.

As the parties claiming a privilege, the burden is on the Moody/Foster/Motley/Williams Claimants to prove that the consulting expert privilege applies and prevents the discovery of otherwise relevant materials.  *See In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 187 (D.N.J. 2003) ("[T]he party asserting the privilege bears the burden of establishing those facts that are the essential elements of the privileged relationship.").  Indeed, "a party who alleges privilege as a reason for not complying with a [discovery request] has the burden of proof to assert ***specific facts*** relating to specific documents [or communications] and cannot rely on conclusory statements."  *Mass. Sch. of Law v. Am. Bar Assoc.*, 914 F. Supp. 1172, 1178 (E.D. Pa. 1996) (emphasis added).  The Moody/Foster/Motley/Williams Claimants' privilege claim is utterly devoid of any facts, let alone specific facts that would be sufficient to justify their claims.

The Moody/Foster/Motley/Williams Claimants assert that any doctor who performed any test, other than the doctors named expressly in the Questionnaire, are so called "consulting experts."  However, the Moody/Foster/Motley/Williams Claimants have not demonstrated that a consulting relationship existed at the time that the tests were performed.  Namely, the Moody/Foster/Motley/Williams Claimants have not shown facts that would allow the Court to conclude that such a relationship existed, such as:  "(1) the manner in which the consultation was initiated; (2) the nature, type and extent of information or

---

[6]  These exemplars are representative of the Questionnaires submitted on behalf of the Claimants named in Exhibits A-D.  Grace will make available to the Court the Questionnaire for any individual named in Exhibits A-D at the Court's request.

material provided to, or determined by, the expert in connection with his review; (3) the duration and intensity of the consultative relationship; and, (4) the terms of the consultation, if any (e.g. payment, confidentiality of test data or opinions, etc.)." *Ager v. Jane C. Stormont Hosp. and Training Sch. for Nurses*, 622 F.2d 496, 501 (10th Cir. 1980).    The Moody/Foster/Motley/Williams Claimants have not provided any of these critical facts. Absent this showing, claims of consulting expert privilege cannot be sustained. *See Mass. Sch. of Law*, 914 F. Supp. at 1178.

Additionally, the names of the consulting experts, firms or diagnostic screening companies that performed tests on the Claimants on behalf of the firms are not privileged or shielded from disclosure under any scenario, even if the firms can establish that such a confidential relationship existed with such persons or entities. *See Sea Colony, Inc. v. Continental Ins. Co.,* 63 F.R.D. 113, 114 (D. Del. 1974) (holding that the identity of non-testifying experts is not protected from discovery); *Butler v. Harrah's Marina Hotel Casino*, 1987 WL 16691, at *2 (E.D. Pa. Sept. 8, 1987) ("This Court believes that the proper interpretation of Rule 26 allows for the discovery of identities of experts who are not expected to testify as witnesses").

**B.      Even If A Consulting Expert Privilege Exists, The "Exceptional Circumstances" Exception Requires Disclosure Of The Tests That Support Or Conflict With The Claimants' Diagnoses.**

"Exceptional Circumstances" require disclosure of the medical information and tests being withheld.  Fed. R. Civ. P. 26(b)(4)(B); *Ager*, 622 F.2d at 504; *see also Hoover v. U.S. Dep't. of the Interior*, 611 F.2d 1132, 1140-42 (5th Cir. 1980); *Perry v. United States*, 1997 WL 53136, at *2 (N.D. Tex. Feb. 4, 1997).    Exceptional circumstances to overcome any consultant's privilege exist: (1) where it is impracticable for the other party to obtain the information from other sources, *see Ager*, 622 F.2d at 503 n.8; *Dixon v. Cappellini*, 88

F.R.D. 1, 3 (M.D. Pa. 1980); (2) where one party's experts cannot duplicate a test or an observation by a consulting expert, *see Ager*, 622 F.2d at 503 n.8; or (3) where a party may "shop" around for a favorable expert opinion, *see Coates v. AC & S, Inc.*, 133 F.R.D. 109, 110 (E.D. La. 1990).  All three circumstances are present in this case.

> **1.    It is impracticable to obtain these test results from another party and the tests cannot be duplicated.**

Exceptional circumstances are present because it is impracticable for Grace to obtain the information from other sources, and Grace's experts cannot acquire the same information known by the consulting expert by performing their own x-ray readings or pulmonary function tests.  *See Ager*, 622 F.2d at 503 n.8; *Adams,* 132 F.R.D. at 442.  Asbestosis is a progressive disease.  A person with asbestosis should experience a worsening of his or her condition over time.   The x-ray reports, diagnostic tests, and pulmonary function tests prepared by these alleged consultants are the only evidence of the claimant's physical condition at the time the test was performed.  Even if Grace's experts could re-perform the tests, which it cannot, this would not be sufficient because the tests may be many years old and a significant change of circumstances likely has occurred during the intervening period of time.   That is precisely why, regardless of of any purported confidential consultant privilege, medical reports are routinely ordered disclosed based on exceptional circumstances.  *See Braun v. Lorillard Inc.*, 84 F.3d 230, 236 (7th Cir. 1996), cert. denied, 519 U.S. 992 (1996) (negative test results obtained by plaintiff's experts were discoverable because exceptional circumstances were found when lung tissue was destroyed by the plaintiff's expert testing, test results could not be obtained by other means and the cause of plaintiff's lung disease was in issue); *Delcastor, Inc. v. Vail Assocs., Inc.*, 108 F.R.D. 405, 409 (D. Colo. 1985) (defense expert's report was discoverable because exceptional

circumstances were found where mudslide terrain eroded after the expert's examination); *Dixon*, 88 F.R.D. at 3 (reports made by psychologist and psychiatrist consulted by plaintiff immediately after alleged "de-programming" were discoverable because exceptional circumstances were found where information as to plaintiff's mental state at that specific time could not otherwise be obtained by defendants and plaintiff's mental state immediately following "de-programming" was in issue).

Moreover, these tests may be the only source of potentially exculpatory evidence. Any test that tends to show that a Claimant may have tested negative for the presence of asbestosis or another asbestos-related disease or that the Claimant is not impaired as the result of any asbestos-related disease is critically important to Grace's experts' evaluation of the pre-petition litigation claims.  Such evidence cannot be shielded from discovery by the consultant privilege, particularly where, as here, it is impossible for Grace to obtain the potentially exculpatory evidence from any other source or in any other manner. This Court specifically addressed this issue when first determining the scope of the medical information that would be required in the Questionnaire.  At that time, the Court recognized the importance of the provision of exculpatory medical information.  *See* Tr. of Hr'g at 233  (Jul. 19, 2005) ("[The Court]: Well, I know this.  I know that if there's an x-ray that doesn't support the diagnosis, because it's negative, and it should be positive, [then] that relates to the diagnosis.").   The Moody/Foster/Motley/Williams Claimants' attempts to hide this information should be rejected summarily.  This is the very information Grace has been seeking from the inception of this Bankruptcy.  If exculpatory medical evidence exists about any of these Firms' Claimants, it must be produced as ordered by this Court, and sanctions should be imposed if it is withheld.

### 2.    The Potential "Shopping" of Experts Is An Exceptional Circumstance.

Exceptional circumstances are also present where there is reason to believe that a Claimant or firm may have "shopped" around for an expert.

*Coates v. AC & S, Inc.*, is on point.  There, in a lawsuit alleging personal injury due to asbestos exposure, the District Court for the Eastern District of Louisiana held that "shopping" of tissue samples for a favorable expert opinion that a plaintiff's death resulted from mesothelioma constituted an exceptional circumstance under Rule 26(b)(4)(B).  *See Coates*, 133 F.R.D. at 110.  The Court ordered that the plaintiff was entitled to either depose or obtain copies of reports of experts to whom the tissue samples were taken.  *See id.* at 110-11.  The Court stated that it was "still of the opinion that 'shopping' continues to take place and that such 'shopping' is sufficient to fall within the Rule's exceptional circumstances exception."  *Id*. at 110.  The Court also noted that it was impracticable for the plaintiff to obtain this information by other means.  *See id.* at 111.

There is reason to believe such "shopping" is taking place in these asbestos cases.  *See*, *e.g.*, David Egilman, Letter to the Editor, *Asbestos Screenings*, 42 Am. J. of Indus. Med. 163 (2002).  Other asbestos bankruptcy cases have found that a few accommodating "over-reading" B-readers are responsible for a large percentage of  previously paid claims.  Judge Fullam of the District of Delaware noted that "[c]ertain pro-plaintiff B-readers were so biased that their readings were simply unreliable."  *Owens Corning v. Credit Suisse First Boston*, Memorandum and Order, Case No. 04-00905, Docket No. 106, at 6 (Mar. 31, 2005).  Others have concluded that a substantial portion of asbestos litigation is supported by "specious medical evidence" including "evidence generated by the entrepreneurial medical screening enterprises and B-readers — specially certified X-ray readers that the enterprises or

plaintiff lawyers select, who often conform their findings and reports to the expectations of the plaintiff lawyers who retain them."  Lester Brickman, *On the Theory Class's Theories of Asbestos Litigation: The Disconnect Between Scholarship and Reality*, 31 Pepp. L. Rev. 33, 41 (2003).

Further, David Austern, general counsel for the Manville Trust and the Future Claimants' Representative in ***this case***, stated:  "'Part of the problem was sort of an amazing elasticity — which is about as calm a word as I can think of — on the part of claimants' lawyers to find doctors who will say that somebody suffers from minimal asbestos disease.'" Christine Biederman, *et al*., *Toxic Justice*, Dallas Observer, Aug. 13, 1998.  The disclosure of the B-readings, x-ray reports, and other diagnostic tests by these so-called "consulting experts" are the only source of information that would conclusively determine that such doctor shopping occurred.

## II. THE MOODY/FOSTER/MOTLEY/WILLIAMS CLAIMANTS HAVE IMPROPERLY ASSERTED CLAIMS OF PRIVILEGE.

The Moody/Foster/Motley/Williams Claimants have asserted objections based on the attorney-client privilege and attorney work product with respect to the following portions of the Questionnaire:

13

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Part II, Question 1[7] | Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire…. If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following: . . . If alleging Asbestos-Related Lung Cancer, were you diagnosed with this lung cancer based on the following: . . . If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged: . . . Were you diagnosed with the above-indicated cancer based on the following: . . . If alleging Clinically Severe Asbestosis, was your diagnosis based on the following: . . . If alleging Asbestosis, was your diagnosis based on the following:. . . . | Claimant objects to this question and each of its subparts (a-f) on the ground that it exceeds the scope of discovery in that it seeks information not relevant to the estimation proceedings, and information from experts that is non-discoverable and is subject to the consulting expert and work product privileges. |

---

[7] This objection is asserted solely by the Moody Claimants.

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Part II, Questions 2, 4, 5, 6, and 7 | Did you retain counsel in order to receive any of the services performed by the [] doctor? | Moody Claimants:    Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work products privileges. . . .<br><br>Foster/Motley/Williams       Claimants: Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of any privileged communication between Claimant, and/or a representative of Claimant, and any attorney for Claimant, and/or representative of any attorney for Claimant.  In addition, pursuant to Federal Rule of Civil Procedure 26(b)(3), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of the work product of any attorney for Claimant, including but not limited to the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of Claimant. |

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Part II, Questions 2, 4, 5, and 6 | Was the [] doctor referred to you by counsel? | Moody Claimants:    Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work products privileges. . . .<br><br>Foster/Motley/Williams Claimants: Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of any privileged communication between Claimant, and/or a representative of Claimant, and any attorney for Claimant, and/or representative of any attorney for Claimant.  In addition, pursuant to Federal Rule of Civil Procedure 26(b)(3), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of the work product of any attorney for Claimant, including but not limited to the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of Claimant. |

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Part II, Questions 2, 4, 5, and 6 | Are you aware of any relationship between the [] doctor and your legal counsel? | Moody Claimants:  Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work products privileges. . . .<br><br>Foster/Motley/Williams Claimants:  Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of any privileged communication between Claimant, and/or a representative of Claimant, and any attorney for Claimant, and/or representative of any attorney for Claimant.  In addition, pursuant to Federal Rule of Civil Procedure 26(b)(3), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of the work product of any attorney for Claimant, including but not limited to the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of Claimant. |
| Part VII, Section A, Question 6[8] | Settlement amount for each defendant [settling asbestos or silica related litigation]. | Moody Claimants:  Claimant objects to Part VII, subsection a, question 6 and each of its subparts regarding settlements reached in the lawsuit as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceedings and requests privileged or confidential information . . . .<br><br>Foster & Sear Claimants:  See General Objections and further objection is made in that answer calls for attorney work-product. |

---

[8]    This objection is raised solely by the Moody Claimants and the Foster & Sear Claimants.

*See* Questionnaire of D. B. at  GRACE PIQ 44027-0011 – 44027-0014 and 44027-0019 (submitted by Edward O. Moody, P.A.); Questionnaire of W. D. at WR GRACE PIQ 017405-0011 – 017405-0013 and 017405-0019 (submitted by Foster & Sear LLP).

For most of these questions, the Moody/Foster/Motley/Williams Claimants do not specify whether they are asserting a claim of attorney-client privilege or a claim of work product.    Regardless of which claim of privilege the Moody/Foster/Motley/Williams Claimants intend to assert, neither claim is well-founded. First, the questions at issue only seek facts and do not invade on *any* privilege at all.    Second, the Moody/Foster/Motley/Williams Claimants have provided no information by which the Court could assess the validity of those privilege claims.

### A.    Neither The Attorney-Client Privilege Nor The Work Product Doctrine Apply.

It is undisputed that the attorney-client privilege "extends only to *communications and not to facts.*"    *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (empahasis original); *Synalloy Corp. v. Gray*, 142 F.R.D. 266, 268 (D. Del. 1992).    Likewise, work product protection protects documents or opinions created in anticipation of litigation.    *See Leonen v. Johns-Manville*, 135 F.R.D. 94, 96 (D.N.J. 1990) (holding that the work product doctrine "while protective of an attorney's opinions, does not protect the ***facts*** that underlie the opinions" and "[a] party may obtain such facts through the adversarial process ***by asking questions*** in the appropriate areas") (emphasis added).    Thus, questions seeking factual information as opposed to communications between the Claimant and his or her attorney or documents prepared by the attorney in anticipation of litigation do not fall within the privilege and must be answered.    *See Upjohn*, 449 U.S. at 395; *Leonen*, 135 F.R.D. at 96.

The questions to which the Moody/Foster/Motley/Williams Claimants assert their privilege objections are purely factual in nature:

- Part II, Question 1 seeks information regarding the basis for Claimants' allegations of asbestos-related diseases or conditions, including whether that claim is based on an x-ray, a pulmonary function test, diagnoses by medical specialists, a pathology report, or another basis.

- Part II, Questions 2, 4, 5, 6, and 7 ask for information regarding the general purpose of the Claimant's retention of counsel, including whether counsel was retained in order to receive the services performed by the doctor in question.

- Part II, Questions 2, 4, 5, and 6 further ask the Claimant whether the doctor in question was hired to perform the services as a result of being "referred to you by counsel."

- Finally, Part II, Questions 2, 4, 5, and 6 ask the Claimant whether he or she is "aware of any relationship between" the doctor in question "and your legal counsel."

- Part VII, Section A, Question 6 asks for the amount of any settlement agreement reached by a Claimant in other asbestos- or silica-related litigation.

These questions seek factual information regarding the purpose and scope of the retention of counsel and other information known to the Claimant independent from any communications between the claimant and his or her counsel.  Moreover, the events in question, including the diagnosis of the Claimant with the disease or condition for which he or she seeks recovery, may well have occurred outside the attorney-client relationship.  Thus, the Claimants may assert the attorney-client privilege as grounds for refusing to respond to these questions only after they have established the existence of an attorney-client relationship at the time of the relevant events.

**B.** **The Moody/Foster/Motley/Williams Claimants Have Not Met Their Burden to Demonstrate that Either the Attorney Client Privilege or Work Product Privilege Prevent the Disclosure of the Information.**

Under established Third Circuit law, the burden of proving that the attorney-client privilege or work product doctrines apply and prevent the discovery of otherwise relevant information falls is on the party asserting the privilege. *See In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 187 (D.N.J. 2003) ("The party asserting the privilege bears the burden of establishing those facts that are the essential elements of the privileged relationship."). Indeed, "a party who alleges privilege as a reason for not complying with a [discovery request] has the burden of proof to assert **specific facts** relating to specific documents [or communications] and cannot rely on conclusory statements." *Mass. Sch. of Law v. Am. Bar Assoc.*, 914 F. Supp. 1172, 1178 (E.D. Pa. 1996) (emphasis added). The Moody/Foster/Motley/Williams Claimants' privilege claim is utterly devoid of any facts, let alone specific facts that would be sufficient to justify their claims. Indeed, the entirety of the Moody/Foster/Motley/Williams Claimants' claim of privilege is contained in the conclusory statement that the objected-to questions may seek "privileged communications." This is not enough. *See id*. at 1178 ("The purpose of the rule is to provide a party whose discovery is constrained by a claim of privilege with information sufficient to evaluate the claim and to resist it. The party claiming the privilege cannot decide the limits of his entitlement.")

Moreover, much of the information requested by Grace relates to the general purpose of retaining counsel, a factual question that falls outside the scope of the attorney-client privilege. Courts have uniformly held that, barring unusual circumstances, "[i]nquiry into the general nature of the legal services provided by counsel does not necessitate an assertion of the privilege because the general nature of services is not protected." *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001) (citing *Nguyen v. Excel Corp.*, 197 F.3d 200,

206 (5th Cir. 1999)); *see also In re Grand Jury Proceedings*, 722 F.2d 303, 308 (6th Cir. 1983) ("The mere 'fact of consultation including the component facts of . . . scope or object of employment' is not privileged.") (quoting McCormick, Evidence, §90 (2d ed. 1972)) (collecting cases).  With regard to the amounts of any settlement agreements, clearly the amount of a settlement agreement is entirely separate from any privileged attorney-client communication or attorney mental impression.  Grace has not asked the Claimants to reveal the nature or substance of settlement negotiations, nor has Grace asked the Claimants to reveal the bases for their decisions to enter into these settlement agreements.  The Moody/Foster/Motley/Williams Claimants have offered no basis for finding that the purely factual question regarding the amount of a settlement agreement invades the attorney work product.

**III.    THE EXISTENCE OF CONFIDENTIALITY AGREEMENTS DOES NOT EXCUSE THE MOODY/FOSTER/MOTLEY/WILLIAMS CLAIMANTS' OBLIGATION TO PRODUCE INFORMATION REGARDING SETTLEMENTS.**

The Moody/Foster/Motley/Williams Claimants lodge a confidentiality objection to the following question:

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Part VII, Section A, Question 6 | Settlement amount for each defendant [settling asbestos or silica related litigation]. | Moody Claimants:    Claimant objects to Part VII, subsection a, question 6 and each of its subparts regarding settlements reached in the lawsuit as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceedings and requests privileged or confidential information . . . .    Further, for the majority of defendants, any settlement agreements are subject to a confidentiality agreement.<br><br>Foster & Sear Claimants and Motley Rice Claimants: Claimant further objects to Section a.6 . . . of Part VII of the Discovery Questionnaire to the extent that it seeks disclosure of settlements reached with other defendants that are subject to binding confidentiality agreements . . . . |
| Part VII, Section B and all subparts[9] | Asbestos- and Silica-Related Claims | Moody Claimants:    Claimant objects to Part VII, subsection b, question 1 [and question 6] as it exceeds the permissible scope of discovery in that it . .. requests . . . confidential information.<br><br>Foster & Sear Claimants: Claimant further objects to Section . . . b.1-7 of Part VII of the Discovery Questionnaire to the extent that it seeks disclosure of settlements reached with other defendants that are subject to binding confidentiality agreements . . . . |

*See, e.g.*, Questionnaire of D. B. at WR GRACE PIQ 44027-0019 (submitted by Edward O. Moody, P.A.); Questionnaire of W. D. at WR GRACE PIQ 017405-0019 (submitted by Foster & Sear LLP).

This claim must fail for two reasons.  First, the Moody/Foster/Motley/Williams Claimants fail to make sufficiently specific allegations regarding these purported confidentiality agreements to allow the Court to determine whether any such privilege from

---

[9]    The Moody Claimants assert this objection only with regard to Questions 1 and 6.  The Motley Rice Claimants and the Williams Bailey Claimants do not appear to object to Part VII, Section B on this basis.

discovery would apply.   Second, even if the Moody/Foster/Motley/Williams Claimants' factual allegations were sufficient, which they are not, the mere existence of a confidentiality agreement does not prevent the disclosure of the terms of a settlement agreement in litigation.

> **A.    The   Moody/Foster/Motley/Williams   Claimants   Allegations   Are Insufficient To Support A Claim Of Confidentiality.**

The Moody/Foster/Motley/Williams Claimants, as the parties seeking to resist the requested discovery, "must state with specificity the objection and how it relates to the particular request being opposed."  *See Harding v. Dana Transport, Inc.*, 914 F. Supp. 1084, 1102 (D.N.J. 1996) ("Broad-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request."). Instead, the Moody/Foster/Motley/Williams Claimants make cursory, equivocal allegations of some unspecified confidentiality interest.

In their response to Part VII, Section A, Question 6, for example, which asks for the amount of settlements reached with defendants in asbestos- or silica-related litigation, the Moody Claimants state, "for a ***majority*** of defendants, ***any*** settlement agreements are subject to a confidentiality agreement."  Questionnaire of D. B. at WR GRACE PIQ 44027-0019 (emphasis added).  The Foster/Motley/Williams Claimants assert their objections only "***to the extent that*** [the question] seeks disclosure of settlements reached with other defendants that are subject to binding confidentiality agreements."  *See, e.g.*, Questionnaire of W. D. at WR GRACE PIQ 017405-0019 (emphasis added).  These conclusory assertions of confidentiality are devoid of several key details that would be necessary for the Court to assess the propriety of any confidentiality claim.  First, by stating "for a majority of the defendants" or "to the

extent that" there is a binding confidentiality agreement, the Moody/Foster/Motley/Williams Claimants' objections render it impossible to determine the scope of the potential objection. Second, not all confidentiality agreements are equivalent in scope. There is no way to determine whether, under the "confidentiality agreement" generically cited by the Moody/Foster/Motley/Williams Claimants, the disclosure of all information is purportedly prohibited or whether only the disclosure of certain information is allegedly barred. Moreover, confidentiality provisions frequently have express exceptions that permit the disclosure of the confidential material upon a court order. Without specific statements as to the terms of the purported confidentiality agreements, the Court cannot possibly ascertain the alleged propriety of the objection. *See* Tr. of Hr'g at 282-83 (Jul. 19, 2005) ([The Court]: "I don't know what the scope of those agreements are."). At a minimum, the Claimants must provide proof of the existence of a confidentiality agreement, the identity of the parties subject to the confidentiality agreements, and the scope of the confidentiality agreement.

   **B.    As A Matter Of Law, Grace Is Entitled To Information Regarding The Amounts Of The Moody/Foster/Motley/Williams Claimants' Settlements And Trust Claims.**

   Regardless of the sufficiency of their factual allegations, the Moody/Foster/Motley/Williams Claimants' allegation that the mere existence of a confidentiality provision bars discovery of the amounts of various litigation settlements is without legal merit. The law does not bar the discovery of settlement agreements, or the information contained within such agreements. Settlement-related information and agreements may be discovered if it is relevant to the "subject matter involved in the pending action … [or it] appears reasonably calculated to lead to the discovery of admissible evidence." *Griffin v. Mashariki*, 1997 WL 756914, at *1 (S.D.N.Y. Dec. 8, 1997) (collecting cases).

Accordingly, courts have found that "litigants cannot shield a settlement agreement from discovery **merely because it contains a confidentiality provision**." *Cleveland Constr., Inc. v. Whitehouse Hotel, Ltd. P'ship*, 2004 WL 385052, at *1 (E.D. La. Feb. 25, 2004) (*quoting ABF Capital Mgmt. v. Askin Capital*, 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000)). This Court agreed with this very point when this issue arose in connection with its consideration of the Questionnaire during the July 2005 omnibus hearing. The PI Committee, acting on behalf of the interests of the Personal Injury Claimants (including the Moody/Foster/Motley/Williams claimants) objected to questions regarding the amounts of settlements with various defendants on the grounds that such settlements contain confidentiality agreements. Tr. of Hr'g at 282-83 (Jul. 19, 2005). Over the PI Committee's objection, the Court ordered that the claimants "identify the defendants with whom [the Claimants] settled, the amount, and for what disease," and stated that a defendant "can come in and contest it if [a Claimant] violates their agreements." *Id.*

To the extent that the Court believes that such information needs protection from disclosure outside the Bankruptcy proceedings, the proper course is not to deny Grace access to the information, but to issue a protective order that restricts the use of the information obtained in response to these questions to the estimation proceedings. As the Third Circuit made clear, "The [C]ourt, in its discretion, is authorized by this subsection to fashion a set of limitations that **allows as much relevant material to be discovered as possible**, while preventing unnecessary intrusions into the legitimate interests -- including … confidentiality interests -- that might be harmed by the release of the material sought."). *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).

## CONCLUSION

For the foregoing reasons, Debtors respectfully request that the Court overrule the objections lodged by the Moody/Foster/Motley/Williams Claimants in lieu of providing answers to the questions posed in the Questionnaire and require that Claimants provide the required information on or before January 12, 2007.

Wilmington, Delaware
Dated: November 9, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

KIRKLAND & ELLIS LLP
Barbara M. Harding
David Mendelson
Brian T. Stansbury
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:    (202) 879-5000
Facsimile:    (202) 879-5200

*and*

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

26