WR GRACE PIQ 44027-0045

fedex.com 1800.GoFedEx 1800.463.3339

# FedEx US Airbill Express

Tracking number **8566 3632 0311**

**1 From**

Date _____

Sender's Name _Edward Ordoci_ PA  Phone _561 441-9414_

Company _Edward Ordoci PA_

Address _14755 N. ___ Blvd Ste 2410_

City _LittleRock_  State _PA_  ZIP _18027_

**2 Your Internal Billing Reference** _WR Grace_

**3 To**

Recipient's Name _Richard Williams Processing Agent_

Company _Rust Consulting Inc_

Address _201 S Lyndale Ave_

City _____  State _MN_  ZIP _55021_

**4a Express Package Service**

- ☐ FedEx Priority Overnight
- ☑ FedEx Standard Overnight
- ☐ FedEx 2Day
- ☐ FedEx Express Saver

**4b Express Freight Service**

- ☑ FedEx 1Day Freight
- ☐ FedEx 2Day Freight
- ☐ FedEx 3Day Freight

**5 Packaging**

- ☐ FedEx Envelope
- ☐ FedEx Pak
- ☐ FedEx Box
- ☐ FedEx Tube
- ☑ Other

**6 Special Handling**

- ☐ SATURDAY Delivery
- ☐ HOLD Weekday
- ☐ HOLD Saturday

Does this shipment contain dangerous goods?
- ☒ No
- ☐ Yes

**7 Payment** Bill to:

- ☒ Sender
- ☐ Recipient
- ☐ Third Party
- ☐ Credit Card
- ☐ Cash/Check

Total Packages _____  Total Weight _____  Total Declared Value $_____ .00

**8 NEW Residential Delivery Signature Options**

- ☐ No Signature Required
- ☐ Direct Signature
- ☐ Indirect Signature

**520**

8566 3632 0311

fedex.com 1800.GoFedEx 1800.463.3339

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire



WR GRACE PIQ 43987-0001

WR GRACE PIQ 43987-0082

[THIS PAGE INTENTIONALLY LEFT BLANK.]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

WR GRACE PIQ 43997-0003

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

YOU HAVE RECEIVED THIS QUESTIONNAIRE BECAUSE GRACE BELIEVES THAT YOU HAD SUED ONE OR MORE OF THE DEBTORS LISTED IN APPENDIX A ATTACHED TO THIS QUESTIONNAIRE BEFORE GRACE FILED FOR BANKRUPTCY ON APRIL 2, 2001 FOR AN ASBESTOS-RELATED PERSONAL INJURY OR WRONGFUL DEATH CLAIM, AND THAT CLAIM WAS NOT FULLY RESOLVED.

IF YOU HAVE SUCH A CLAIM, YOU MUST COMPLETE AND SUBMIT THIS QUESTIONNAIRE BY JANUARY 12, 2006 TO RUST CONSULTING, INC., THE CLAIMS PROCESSING AGENT, AT ONE OF THE FOLLOWING ADDRESSES:

|  | IF SENT BY FEDERAL EXPRESS, UNITED PARCEL SERVICE, OR A SIMILAR HAND DELIVERY SERVICE |
|---|---|
| **IF SENT BY U.S. MAIL** | |
| RUST CONSULTING, INC. | RUST CONSULTING, INC. |
| CLAIMS PROCESSING AGENT | CLAIMS PROCESSING AGENT |
| RE: W.R. GRACE & CO. BANKRUPTCY | RE: W.R. GRACE & CO. BANKRUPTCY |
| P.O. BOX 1620 | 201 S. LYNDALE AVE. |
| FARIBAULT, MN 55021 | FARIBAULT, MN 55021 |

A QUESTIONNAIRE (AND ANY AMENDMENTS OR ADDITIONAL DOCUMENTS IN SUPPORT OF THE QUESTIONNAIRE) WILL NOT BE CONSIDERED UNLESS RECEIVED BY RUST CONSULTING, INC. BY JANUARY 12, 2006.

THIS QUESTIONNAIRE IS AN OFFICIAL DOCUMENT APPROVED BY THE COURT IN CONNECTION WITH ESTIMATING GRACE'S ASBESTOS-RELATED PERSONAL INJURY AND WRONGFUL DEATH CLAIMS AS A WHOLE. THE QUESTIONNAIRE IS BEING USED BY W. R. GRACE AS A MEANS TO SEEK INFORMATION ABOUT YOUR ASBESTOS CLAIM. BY TIMELY RETURNING THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE, GRACE, THE OFFICIAL COMMITTEES, AND THE FUTURE CLAIMANTS REPRESENTATIVE WILL SEEK TO PRIORITIZE THE PROCESSING OF YOUR CLAIM UNDER ANY TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION.

THE COURT HAS ORDERED THAT, AS PART OF THE DISCOVERY PROCESS, ALL HOLDERS OF PRE-PETITION ASBESTOS PERSONAL INJURY CLAIMS MUST COMPLETE AND RETURN THIS QUESTIONNAIRE. THUS, FAILURE TO TIMELY RETURN THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE MAY RESULT IN SANCTIONS AND/OR OTHER RELIEF AVAILABLE UNDER APPLICABLE FEDERAL RULES.

BECAUSE YOUR CLAIM WILL BE EVALUATED IN ACCORDANCE WITH THE TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION, COMPLETION OF THIS QUESTIONNAIRE DOES NOT MEAN THAT YOUR CLAIM WILL EITHER BE ALLOWED OR PAID. TO THE EXTENT YOU ATTACH TO THIS QUESTIONNAIRE DOCUMENTS ALSO NEEDED BY THE TRUST TO PROCESS YOUR CLAIM, SUCH DOCUMENTS WILL BE PROVIDED TO THE TRUST AND YOU WILL NOT NEED TO RESUBMIT THEM.

## INSTRUCTIONS



WR GRACE PIQ 43987-0004

### A. GENERAL

1. This Questionnaire refers to any lawsuit that you filed before April 2, 2001 for an "asbestos-related wrongful death claim." This term is intended to cover any lawsuit alleging any claim for personal injuries or that relates to: (a) exposure to any products or materials containing asbestos that were manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present affiliates, or any of the predecessors of any of the Debtors or any of their respective past or present affiliates), or (b) exposure to vermiculite mined, milled or processed by the Debtors (or any of their respective past or present affiliates, any of the predecessors of any of the Debtors or any of their predecessors' respective past or present affiliates). It includes claims in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law or equity, or admiralty for, relating to, or arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal injuries or other damages caused, or allegedly caused, directly or indirectly, and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors. It includes all such claims, debts, obligations or liabilities for compensatory damages such as loss of consortium, personal or bodily injury (whether physical, emotional or otherwise), wrongful death, survivorship, proximate, consequential, general, special, and punitive damages.

2. Your Questionnaire will be deemed filed only when it has been received by Rust Consulting Inc., the Claims Processing Agent, via U.S. Mail, Federal Express, United Parcel Service or a similar hand delivery service. A Questionnaire that is submitted by facsimile, telecopy or other electronic transmission will **not** be accepted and will **not** be deemed filed.

   Do **not** send any Questionnaire to the Debtors, counsel for the Debtors, the Future Claimants Representative, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Asbestos Property Damage Claimants, the Official Committee of Equity Security Holders, or such Committees' counsel. Questionnaires that are filed with or sent to anyone other than Rust Consulting, Inc. will be deemed not to have been submitted, and such Questionnaires will not be considered.

3. Your completed Questionnaire must (i) be written in English, and (ii) attach relevant supporting materials as instructed further below.

4. All holders of claims described on page i (and as described in further detail in Instruction A (1) above) are required to file this Questionnaire by Jan. 12, 2006. Your Questionnaire will be used in connection with the estimation hearing to be conducted by the Court pursuant to the Estimation Procedures Order (a copy of which is attached as Appendix B).

5. Any subsequent amendment to the Questionnaire will not be considered for any purpose unless received by Jan. 12, 2006.

### B. PART I -- Identity of Injured Person and Legal Counsel

Respond to all applicable questions. If you are represented by a lawyer, then in Part I (b), please provide your lawyer's name and the name, telephone number and address of his/her firm. If you are represented by a lawyer, he/she must assist in the completion of this Questionnaire. Also, if you would prefer that the Debtors send any additional materials only to your lawyer, instead of sending such materials to you, then check the box indicating this in Part I (b).

All references to "you" or the like in Parts I through X shall mean the injured person. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete this Questionnaire.

### C. PART II -- Asbestos-Related Condition(s)

Please indicate all asbestos-related medical conditions for which you have been diagnosed. To complete questions related to injuries, medical diagnoses, and/or conditions, please use the following categories of customarily diagnosed conditions:

- Mesothelioma
- Asbestos-Related Lung Cancer
- Other Cancer (colon, laryngeal, esophageal, pharyngeal, or stomach)
- Clinically Severe Asbestosis
- Asbestosis
- Other Asbestos Disease

If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

**Supporting Documents for Diagnosis:** This Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis.

**X-rays and B-reads:** Please attach all x-ray readings and reports. You may, but are not required to, attach chest x-rays. The court, however, has ruled that Grace may seek access to chest x-rays upon request.

**Pulmonary Function Tests:** Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based.

**D.  PART III – Direct Exposure to Grace Asbestos-Containing Products**

In Part III, please provide the requested information for the job and site at which you w̲
asbestos-containing products.  Indicate the dates of exposure to each Grace asbestos-containing pro̲ WR GRACE PIQ 43987-0005
was a result of your employment, use the list of occupation and industry codes below to indicate yo̲_____occupation and the
industry in which you worked at each site.  If you allege exposure to Grace asbestos-containing products at multiple sites, the
Court has ordered that you must complete a separate Part III for each site.  For your convenience, additional copies of Part III
are attached as Appendix D to this Questionnaire.

Attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial
causal role in the development of the disease.

<strong>Occupation Codes</strong>

01.  Air conditioning and heating installer/maintenance
02.  Asbestos miner
03.  Asbestos plant worker/asbestos manufacturing worker
04.  Asbestos removal/abatement
05.  Asbestos sprayer/spray gun mechanic
06.  Assembly line/factory/plant worker
07.  Auto mechanic/bodywork/brake repairman
08.  Boilermaker
09.  Boiler repairman
10.  Boiler worker/cleaner/inspector/engineer/installer
11.  Building maintenance/building superintendent
12.  Brake manufacturer/installer
13.  Brick mason/layer/hod carrier
14.  Burner operator
15.  Carpenter/woodworker/cabinetmaker
16.  Chipper
17.  Clerical/office worker
18.  Construction - general
19.  Custodian/janitor in office/residential building
20.  Custodian/janitor in plant/manufacturing facility
21.  Electrician/inspector/worker
22.  Engineer
23.  Firefighter
24.  Fireman
25.  Flooring installer/tile installer/tile mechanic
26.  Foundry worker
27.  Furnace worker/repairman/installer
28.  Glass worker
29.  Heavy equipment operator (includes truck, forklift, & crane)
30.  Insulator

31.  Iron worker
32.  Joiner
33.  Laborer
34.  Longshoreman
35.  Machinist/machine operator
36.  Millwright/mill worker
37.  Mixer/bagger
38.  Non-asbestos miner
39.  Non-occupational/residential
40.  Painter
41.  Pipefitter
42.  Plasterer
43.  Plumber - install/repair
44.  Power plant operator
45.  Professional (*e.g.*, accountant, architect, physician)
46.  Railroad worker/carman/brakeman/machinist/conductor
47.  Refinery worker
48.  Remover/installer of gaskets
49.  Rigger/stevedore/seaman
50.  Rubber/tire worker
51.  Sandblaster
52.  Sheet metal worker/sheet metal mechanic
53.  Shipfitter/shipwright/ship builder
54.  Shipyard worker (md. repair, maintenance)
55.  Steamfitter
56.  Steelworker
57.  Warehouse worker
58.  Welder/blacksmith
59.  Other

<strong>Industry Codes</strong>

001.  Asbestos abatement/removal
002.  Aerospace/aviation
100.  Asbestos mining
101.  Automotive
102.  Chemical
103.  Construction trades
104.  Iron/steel
105.  Longshore
106.  Maritime
107.  Military (other than U.S. Navy)
108.  Non-asbestos products manufacturing

109.  Petrochemical
110.  Railroad
111.  Shipyard-construction/repair
112.  Textile
113.  Tire/rubber
114.  U.S. Navy
115.  Utilities
116.  Grace asbestos manufacture or milling
117.  Non-Grace asbestos manufacture or milling
118.  Other

**E. PART IV – Indirect Exposure to Grace Asbestos-Containing Products**
In Part IV, please provide the information requested for any injury alleged to have been caused by e
asbestos-containing products through contact/proximity with another injured person. If you allege d
contact/proximity with multiple injured persons, please complete a separate Part IV for each injured person. For your
convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.

**F. PART V – Exposure to Non-Grace Asbestos-Containing Products**
In Part V, please provide the requested information for each party against which you have filed a lawsuit and/or claim
alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against
multiple parties, the Court has ordered that you must complete a separate Part V for each party. If exposure was in
connection with your employment, use the list of occupation and industry codes in Part III to indicate your occupation and
the industry in which you worked. For your convenience, additional copies of Part V are attached as Appendix F to this
Questionnaire.

**G. PART VI -- Employment History**
In Part VI, please provide the information requested for each industrial job you have held, other than jobs already listed in
Parts III or V. Use the list of occupation and industry codes in Part III to indicate your occupation and the
industry in which you worked for each job. Please use the copy of Part VI attached as Appendix G to this Questionnaire if
additional space is needed.

**H. PART VII -- Litigation and Claims Regarding Asbestos and/or Silica**
In Part VII, please describe any lawsuits and/or claims that were filed by you or on your behalf regarding asbestos or silica.

**I. PART VIII -- Claims by Dependents or Related Persons**
Part VIII is to be completed only by dependents or related persons (such as spouse or child) of an injured person who sued
the Debtors before April 2, 2001 for an asbestos-related personal injury or wrongful death claim against Grace not involving
physical injury to him-/herself on account of his/her own exposure. One example of such a claim would be a claim for loss
of consortium. If you are asserting such a claim, complete the entire Questionnaire, providing all information and
documentation regarding the injured person.

**J. PART IX -- Supporting Documentation**
In Part IX, please mark the boxes next to each type of document that you are submitting with this Questionnaire. As
indicated in the instructions to Parts II and III, this Questionnaire must be accompanied by copies, with access to originals
upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that (a) support or
conflict with your diagnosis and/or (b) establish exposure to Grace asbestos-containing products as having a substantial
causal role in the development of the medical diagnoses, and/or conditions claimed. Original documents provided to Grace
will be returned within a reasonable time after its professionals and experts have reviewed the documents.

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in
which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation. Please
indicate the documents for which you are seeking reimbursement and attach a receipt for such cost.

**K. PART X -- Attestation that Information is True, Accurate and Complete**
By signing Part X, you, the injured person, are attesting and swearing, under penalty of perjury, that, to the best of your
knowledge, all of the information in this Questionnaire is true, accurate and complete. If the injured person is deceased, then
the executor of the person's will (or similar estate representative) must complete and sign Part X on behalf of the injured
person.

The legal representative of the injured person must complete and sign Part X where indicated.

iv

## PART I:  IDENTITY OF INJURED PERSON AND LEGAL COUNSEL

WR GRACE PIQ 43987-0007

### a.   GENERAL INFORMATION

1.   Name of Claimant: _____   2. Gender: ☒ Male  ☐ Female

        First    MI    Last

3.   Race (for purposes of evaluating Pulmonary Function Test results):....................... ☐ White/Caucasian

                                                                              ☐ African American

                                                                              ☐ Other

4.   Last Four Digits of Social Security Number:        **REDACTED**        5.  Birth Date. ___

6.   Mailing Address: _____

            Address               City         State/Province   Zip/Postal Code

7.   Daytime Telephone Number: _____

### b.   LAWYER'S NAME AND FIRM

1.   Name of Lawyer:   Edward O. Moody

2.   Name of Law Firm With Which Lawyer is Affiliated:   Edward O. Moody, P.A.

3.   Mailing Address of Firm:   801 W. 4th Street    Little Rock    AR    72201

                              Address        City    State/Province   Zip/Postal Code

4.   Law Firm's Telephone Number or Lawyer's Direct Line: .... ( 5 0 1 ) 3 7 6 - 0 0 0 0

    ☐ Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in lieu of sending such materials to you.

### c.   CAUSE OF DEATH (IF APPLICABLE)

1.   Is the injured person living or deceased?................................................... Living ☐  Deceased ☒

    If deceased, date of death: ................................................................... 04/23/2005

2.   If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete the following:

    Primary Cause of Death (as stated in the Death Certificate):   Lung Cancer

    Contributing Cause of Death (as stated in the Death Certificate): _____

## PART II:  ASBESTOS-RELATED CONDITION(S)

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire.  If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis.  For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1.   Please check the box next to the condition being alleged:

    ☐ Asbestos-Related Lung Cancer    ☐ Mesothelioma

    ☒ Asbestosis    ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)

    ☐ Other Asbestos Disease    ☐ Clinically Severe Asbestosis

    a.   **Mesothelioma:**  If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following (check all that apply):

        ☐ diagnosis from a pathologist certified by the American Board of Pathology

        ☐ diagnosis from a second pathologist certified by the American Board of Pathology

        ☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial causal role in the development of the condition

        ☐ other (please specify): _____

REC'D JUL 1 2 2006

1

PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)

WR GRACE PIQ 43997-0008

b.  **Asbestos-Related Lung Cancer:**  If alleging Asbestos-Related Lung Cancer, were you diagnosed with lung cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐ other (please specify): _____

c.  **Other Cancer:**

(i)  If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐ colon    ☐ pharyngeal    ☐ esophageal    ☐ laryngeal    ☐ stomach cancer

☐ other, please specify: _____

(ii)  Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☐ other (please specify): _____

2

PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

WR GRACE PIQ 43987-0009

d. **Clinically Severe Asbestosis:** If alleging Clinically Severe Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating total lung capacity less than 65% predicted

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

e. **Asbestosis:** If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

3

**PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE PIQ 43987-0010

f.  **Other Asbestos Disease:**  If alleging any asbestos-related injuries, medical diagnoses, and/or conditi████████████ those above, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ diagnosis determined by pathology

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  other than those described above

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEVI/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a pulmonary function test other than that discussed above

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☐ a CT Scan or similar testing

☐ a diagnosis other than those above

☐ other (please specify): _____

[REMAINDER OF PAGE INTENTIONALLY BLANK]

4

PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)

WR GRACE PIQ 43987-0011

2.    **Information Regarding Diagnosis:** Subject to the foregoing objections, please refer to the responses by medical reports attached hereto

Date of Diagnosis: ....................................................................................................

Diagnosing Doctor's Name: See attached Medical Report _____

Diagnosing Doctor's Specialty: See attached Medical Report _____

Diagnosing Doctor's Mailing Address: See attached Medical Report _____
Address

_____

City                                        State/Province                Zip/Postal Code

Diagnosing Doctor's Daytime Telephone Number: ..........................( __ __ __ ) __ __ __ - __ __ __ __

With respect to your relationship to the diagnosing doctor, check all applicable boxes: Subject to the foregoing objections, please refer to the responses below.

Was the diagnosing doctor your personal physician? ......................................................☐ Yes    X No

Was the diagnosing doctor paid for the diagnostic services that he/she performed? ...........X Yes    ☐ No

*If yes, please indicate who paid for the services performed:* Claimant paid for the services through his/her counsel.

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor? Please refer to the forgoing objections...................................................................................................☐ Yes    ☐ No

Was the diagnosing doctor referred to you by counsel? Claimant objects to this question as being vague and ambiguous.  The doctor was retained by Claimant through Claimant's Counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit.  Please refer to the foregoing objections...........☐ Yes    ☐ No

Are you aware of any relationship between the diagnosing doctor and your legal counsel? ...........☐ Yes    ☐ No

*If yes, please explain:* _____

_____

Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of  the diagnosis?  See attached medical documentation, if applicable...............................☐ Yes    ☐ No

Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of  the diagnosis?  See attached medical documentation, if applicable...............................................☐ Yes    ☐ No

Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to diagnosis?  See attached medical documentation, if applicable................................................☐ Yes    ☐ No

Did the diagnosing doctor perform a physical examination?  See attached medical documentation, if applicable.

.............................................................................................................................☐ Yes    ☐ No

Do you currently use tobacco products?.................................................................................☐ Yes    ☐ No

Have you ever used tobacco products? ..................................................................................☐ Yes    ☐ No

If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco products and the dates and frequency with which such products were used:

☐   Cigarettes        Packs Per Day (half pack = .5)        Start Year __ __ __    End Year __ __ __ __

☐   Cigars            Cigars Per Day _____                Start Year __ __ __    End Year __ __ __ __

☐   If Other Tobacco Products, please specify (e.g., chewing tobacco): _____
Amount Per Day _____        Start Year _____        End Year _____

Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")? ................☐ Yes    ☐ No
See attached medical documentation, if applicable.

*If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:*
**See attached medical documentation, if applicable.**

3. **Information Regarding Chest X-Ray**  **Subject to the foregoing objections, please refer to attached available, and attached medical documentation.**

WR GRACE PIQ 43987-0012

Please check the box next to the applicable location where your chest x-ray was taken (check one):

☐ Mobile laboratory  ☐ Job site  ☐ Union Hall  ☐ Doctor office  ☐ Hospital  ☐ Other: _____

Address where chest x-ray taken: _____
Address

_____

4. **Information Regarding Chest X-Ray Reading**  **Subject to the foregoing objections, please refer to the responses below and the medical reports attached hereto.**

Date of Reading: _____                    ILO score: _____

Name of Reader: _____

Reader's Daytime Telephone Number:................................................... ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

Reader's Mailing Address: _____
Address

City          State/Province          Zip/Postal Code

With respect to your relationship to the reader, check all applicable boxes:

Was the reader paid for the services that he/she performed.......................................................X Yes  ☐ No

*If yes, please indicate who paid for the services performed:*  **Clamant paid for the services through his/her counsel.**

Did you retain counsel in order to receive any of the services performed by the reader? **Please refer to the foregoing objections.** ..............................................................................☐ Yes  ☐ No

Was the reader referred to you by counsel?  **Claimant objects to this question as being vague and ambiguous. The doctor was retained by Claimant through Claimant's Counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit.  Please refer to the forgoing objections.**....................................☐ Yes  ☐ No

Are you aware of any relationship between the reader and your legal counsel? **Claimant objects to this question as being vague and ambiguous.  The doctor was retained by Claimant through Claimant's Counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit.  Please refer to the forgoing objections.** ...☐ Yes  ☐ No

*If yes, please explain:* _____

Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?
.......................................................................................................................................X Yes  ☐ No

*If the reader is not a certified B-reader, please describe the reader's occupation,  specialty, and the method through which the reading was made:* _____

5. **Information Regarding Pulmonary Function Test: Subject to the forgoing objections, please refer to the responses below and the medical reports attached hereto.** ............................................**Date of Test:**

List your height in feet and inches when test given: ................................................................. _ ft inches

List your weight in pounds when test given: ......................................................................... lbs

Total Lung Capacity (TLC): ...................................................................................... % of predicted

Forced Vital Capacity (FVC):................................................................................... % of predicted

FEV1/FVC Ratio: .................................................................................................... % of predicted

Name of Doctor Performing Test (if applicable):  **See attached PFT, if applicable** _____

Doctor's Specialty:    **See attached PFT, if applicable** _____

Name of Clinician Performing Test (if applicable):    **See attached medical report.** _____

Testing Doctor or Clinician's Mailing Address:    **See attached PFT, if applicable** _____
Address

_____

5

City                                    State/Province                          Zip

Testing Doctor or Clinician's Daytime Telephone Number:..................... ( ___ ) ___ - ___

Name of Doctor Interpreting Test:    **See attached PFT, if applicable**

Doctor's Specialty:    **See attached PFT, if applicable**

Interpreting Doctor's Mailing Address:    **See    attached    PFT,    if    applicable.**

_____                          Address

_____

City                                    State/Province                          Zip/Postal Code

Interpreting Doctor's Daytime Telephone Number: ....................... ( ___ ) ___ - ___

**With respect to your relationship to the doctor or clinician who performed the pulmonary function test check all applicable boxes: Subject to the foregoing objections, please refer to the responses below and the medical reports attached hereto.**

If the test was performed by a doctor, was the doctor your personal physician?........................ ☐ Yes ☐ No

Was the testing doctor and/or clinician paid for the services that he/she performed? .............................. ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:*._____

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician? .. ☐ Yes ☐ No

Was the testing doctor or clinician referred to you by counsel? **Claimant objects to this question as being vague and ambiguous. The doctor was retained by Claimant through Claimant's Counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit. Please refer to foregoing objections.** ........................ ☐ Yes ☐ No

Are you aware of any relationship between either the doctor or clinician and your legal counsel? **Claimant objects to this question as being vague and ambiguous. The doctor was retained by Claimant through Claimant's Counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit. Please refer to foregoing objections.** ☐ Yes ☐ No

*If yes, please explain:*._____

**Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test?**........................................................................ ☐ Yes ☐ No

**With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:**

Was the doctor your personal physician?........................................................................ ☐ Yes  X No

Was the doctor paid for the services that he/she performed?................................................X Yes ☐ No

*If yes, please indicate who paid for the services performed:* ....**Claimant paid for the services through his/her counsel.**

Did you retain counsel in order to receive any of the services performed by the doctor? **objection**............ ☐ Yes ☐ No

Was the doctor referred to you by counsel? **Claimant objects to this question as being vague and ambiguous. The doctor was retained by Claimant through Claimant's Counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit. Please refer to foregoing objections.** ......................................... ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? **Claimant objects to this question as being vague and ambiguous. The doctor was retained by Claimant through Claimant's Counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit. Please refer to foregoing objections.** .................... ☐ Yes ☐ No

*If yes, please explain* _____

**Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed?**.............................. ☐ Yes ☐ No

WR GRACE PIQ 43987-0014

6.  **Information Regarding Pathology Reports:**  <u>Please refer to Part II, Question 2, and attached medical documentation.</u>

Date of Pathology Report: _____ __ / __ / __ __ __ __

Findings: _____

Name of Doctor Issuing Report: _____

Doctor's Specialty: _____

Doctor's Mailing Address: _____
　　　　　　　　　　　　　Address

_____
City                                        State/Province                        Zip/Postal Code

Doctor's Daytime Telephone Number: ........................................ ( __ __ __ ) __ __ __ - __ __ __ __

With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:

Was the doctor your personal physician?..................................................................☐ Yes  ☐ No

Was the doctor paid for the services that he/she performed?..........................................☐ Yes  ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? ...........☐ Yes  ☐ No

Was the doctor referred to you by counsel?  <u>Claimant objects to this question as being vague and ambiguous.  The doctor was retained by Claimant through Claimant's Counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit.  Please refer to foregoing objections.</u>......................................☐ Yes  ☐ No

Are you aware of any relationship between the doctor and your legal counsel?  <u>Claimant objects to this question as being vague and ambiguous.  The doctor was retained by Claimant through Claimant's Counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit.  Please refer to foregoing objections.</u>....................☐ Yes  ☐ No

*If yes, please explain:* _____

Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?
.............................................................................................................☐ Yes  ☐ No

7.  With respect to the condition alleged, have you received medical treatment from a doctor for the condition?
.............................................................................................................☐ Yes  ☐ No

*If yes, please complete the following:*

Name of Treating Doctor: _____

Treating Doctor's Specialty: _____

Treating Doctor's Mailing Address: _____
　　　　　　　　　　　　　　　　Address

_____
City                                        State/Province                        Zip/Postal Code

Treating Doctor's Daytime Telephone number: ............................... ( __ __ __ ) __ __ __ - __ __ __ __

Was the doctor paid for the services that he/she performed?..........................................☐ Yes  ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor?....................☐ Yes  ☐ No

[REMAINDER OF PAGE INTENTIONALLY BLANK]

8

## PART III: DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a)  A worker who personally mixed Grace asbestos-containing products

(b)  A worker who personally removed or cut Grace asbestos-containing products

(c)  A worker who personally installed Grace asbestos-containing products

(d)  A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(e)  A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f)  If other, please specify.

Site of Exposure: <u>Subject to the foregoing objections, please refer to the attached PEH, interrogatory responses, Statement of Earnings and/or depositions, if applicable and if available.</u>

Site Name: _____    Location: _____

Site Type: ☐ Residence  ☐ Business    Site Owner: _____

Employer During Exposure: _____    Unions of which you were a member during your employment: _____

| | Product(s) | Basis for Identification of Each Grace Product | Dates and Frequency of Exposure (hours/day/year) | Occupation Code* (If Code 550, specify) | Industry Code* (If Code 115, specify) | Was exposure due to working in or around areas where product was being installed, mixed, removed, or cut? (If yes, please indicate your proximity to such areas) | Nature of Exposure |
|---|---|---|---|---|---|---|---|
| Job 1 Description: | | | | | | | |
| Job 2 Description: | | | | | | | |
| Job 3 Description: | | | | | | | |
| Job 4 Description: | | | | | | | |
| Job 5 Description: | | | | | | | |
| Job 6 Description: | | | | | | | |

WR GRACE PIQ 43987-0015

9

## PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCT

WR GRACE PIQ 43987-0016

1. Are you asserting an injury caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person? Subject to the foregoing objections please refer to attached PEH, interrogatory responses and depositions, if applicable and if available. .................................................. ☐ Yes ☐ No

   *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to Grace asbestos-containing products. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.*

2. Please indicate the following information regarding the other injured person: Subject to the foregoing objections please refer to attached PEH, interrogatory responses and depositions, if applicable and if available.

   Name of Other Injured Person: _____ Gender: ☐ Male ☐ Female

   Last Four Digits of Social Security Number: __ __ __ __     Birth Date: __ __ / __ __ / __ __ __ __

3. What is your Relationship to Other Injured Person: Subject to the foregoing objections please refer to attached PEH, interrogatory responses and depositions, if applicable and if available. ........... ☐ Spouse ☐ Child ☐ Other

4. Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:

   _____

5. Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products: Subject to the foregoing objections please refer to attached PEH, interrogatory responses and depositions, if applicable and if available.
   From: __ __ / __ __ / __ __ __ __     To: __ __ / __ __ / __ __ __ __

6. Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:

   _____

7. Has the Other Injured Person filed a lawsuit related to his/her exposure? Subject to the foregoing objections please refer to attached PEH, interrogatory responses and depositions, if applicable and if available.
   .................................................................................................................................... ☐ Yes ☐ No

   *If yes, please provide caption, case number, file date, and court name for the lawsuit:*

   Caption: _____

   Case Number: _____ File Date: __ __ / __ __ / __ __ __ __

   Court Name: _____

8. Nature of Your Own Exposure to Grace Asbestos-Containing Product: Subject to the foregoing objections please refer to attached PEH, interrogatory responses and depositions, if applicable and if available.

   _____

   Dates of Your Own Exposure to Grace Asbestos-Containing Product: Subject to the foregoing objections please refer to attached PEH, interrogatory responses and depositions, if applicable and if available.
   From: __ __ / __ __ / __ __ __ __     To: __ __ / __ __ / __ __ __ __

   Your Basis for Identification of Asbestos-Containing Product as Grace Product: Subject to the foregoing objections please refer to attached PEH, interrogatory responses and depositions, if applicable and if available.

   _____

[REMAINDER OF PAGE INTENTIONALLY BLANK]

## PART V: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked. In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products
(b) A worker who personally removed or cut Non-Grace asbestos-containing products
(c) A worker who personally installed Non-Grace asbestos-containing products
(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(f) If other, please specify.

**Party Against which Lawsuit or Claim was Filed:**

See attached List of Parties Against Which Lawsuit or Claim was Filed.

| | | Product(s) | Dates and Frequency of Exposure (hours/day, days/year) | Occupation Code (If Code 50, specify) | Industry Code (If Code 115, specify) | Was exposure due to working in or around areas where product was being installed, mixed, removed or cut? If so, please indicate your regular proximity to such areas. | Nature of Exposure |
|---|---|---|---|---|---|---|---|
| **Site of Exposure 1** Site Name:___ Address:___ City and State:___ Site Owner:___ | Job 1 Description: | | | | | | |
| | Job 2 Description: | | | | | | |
| | Job 3 Description: | | | | | | |
| **Site of Exposure 2** Site Name:___ Address:___ City and State:___ Site Owner:___ | Job 1 Description: | | | | | | |
| | Job 2 Description: | | | | | | |
| | Job 3 Description: | | | | | | |
| **Site of Exposure 3** Site Name:___ Address:___ City and State:___ Site Owner:___ | Job 1 Description: | | | | | | |
| | Job 2 Description: | | | | | | |
| | Job 3 Description: | | | | | | |

WR GRACE PIQ 49987-0017

11

**PART VI: EMPLOYMENT HISTORY**



Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial work experience up to and including your current employment.  For each job, include your employer, location of employment, and dates of employment. Only include jobs at which you worked for at least one month.  Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.  <u>Subject to the foregoing objections, please refer to the attached Itemized Statement of Earnings, PEH and/or depositions, if applicable and if available.</u>

Occupation Code: _____  If Code 59, specify: _____

Industry Code: _____  If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __      End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
         Address

_____
City                      State/Province        Zip/Postal Code

Occupation Code: _____  If Code 59, specify: _____

Industry Code: _____  If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __      End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
         Address

_____
City                      State/Province        Zip/Postal Code

Occupation Code: _____  If Code 59, specify: _____

Industry Code: _____  If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __      End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
         Address

_____
City                      State/Province        Zip/Postal Code

Occupation Code: _____  If Code 59, specify: _____

Industry Code: _____  If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __      End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
         Address

_____
City                      State/Province        Zip/Postal Code

**PART VII: LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA**



WR GRACE PIQ 43987-0019

**a.**  **LITIGATION** Subject to the foregoing objections, please refer to Claimant's responses below. Claimant's responses are limited to the asbestos-related lawsuit where Debtor was sued.

1. Have you ever been a plaintiff in a lawsuit regarding asbestos or silica? ......................................X Yes ☐ No

   *If yes, please complete the rest of this Part VII(a) for each lawsuit.  For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2. Please provide the caption, case number, file date, and court name for the lawsuit you filed:

   Caption: _____               _____

   Case Number: _____        **REDACTED**               File Date: _____

   Court Name: _____

3. Was Grace a defendant in the lawsuit?........................................................................................X Yes ☐ No

4. Was the lawsuit dismissed against any defendant?  <u>Subject to the foregoing objections, see attached List of Parties, if applicable.</u> ...............................................................................☐ Yes ☐ No

   *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

   **Please refer to the forgoing objections.**

5. Has a judgment or verdict been entered?  <u>Subject to the foregoing objections, see attached List of Parties, if applicable.</u> .................................................................................☐ Yes ☐ No

   *If yes, please indicate verdict amount for each defendant(s):*

6. Was a settlement agreement reached in this lawsuit? <u>Subject to the foregoing objections, see attached List of Parties, if applicable.</u> ....................................................................☐ Yes ☐ No

   *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

   a. Settlement amount for each defendant: <u>Please refer to the forgoing objections.</u>

   b. Applicable defendants: <u>Subject to the foregoing objections, see attached List of Parties, if applicable.</u>

   c. Disease or condition alleged: <u>Subject to the foregoing objections, see attached List of Parties, if applicable.</u>

   d. Disease or condition settled (if different than disease or condition alleged): <u>Subject to the foregoing objections, see attached List of Parties, if applicable</u>

7. Were you deposed in this lawsuit?..............................................................................................☐ Yes ☐ No

   If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.

**b.**  **CLAIMS** Subject to the foregoing objections, please refer to Claimant's responses below. Claimant's responses are limited to asbestos-related personal injury claims.

1. Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)?.........................................................X Yes ☐ No

   *If yes, please complete the rest of this Part VII(b).  If no, please skip to Part VIII.*

2. Date the claim was submitted: <u>Subject to the foregoing objections, see attached List of Parties, if applicable.</u>
   ....................................................................................................................... __ __/__ __/__ __

3. Person or entity against whom the claim was submitted: <u>Subject to the foregoing objections, see attached List of Parties, if applicable.</u>

4. Description of claim:<u>Subject to the foregoing objections, see attached List of Parties, if applicable.</u>

5. Was claim settled? <u>Subject to the foregoing objections, see attached List of Parties, if applicable.</u>......☐ Yes ☐ No

13

6.  Please indicate settlement amount:  Please refer to the foregoing objections...............$ _____

7.  Was the claim dismissed or otherwise disallowed or not honored? <u>Subject to the foregoing objections, S</u>
<u>List of Parties, if applicable.</u>.................................................................................................. ☐ Yes ☐ No

*If yes, provide the basis for dismissal of the claim:* _____

**PART VIII:  CLAIMS BY DEPENDENTS OR RELATED PERSONS**

<u>Subject to the foregoing objections, please see below for information regarding spouse, if applicable and to attached</u>
<u>interrogatory responses of other dependents if applicable.</u>

Name of Dependent or Related Person: ......................................................Gender: ☐ Male ☐ Female

Last Four Digits of Social Security Number: __ __ __ __        Birth Date: __ __ / __ __ / __ __ __ __

Financially Dependent:.................................................................................................... ☐ Yes ☐ No

Relationship to Injured Party:  X Spouse ☐ Child ☐ Other . If other, please specify _____

Mailing Address: _____
                      Address

**REDACTED**

_____          _____          _____
City                              State/Province                    Zip/Postal Code

Daytime Telephone number: .....................................................................

**PART IX:  SUPPORTING DOCUMENTATION**

Please use the checklists below to indicate which documents you are submitting with this form.
<u>Copies:</u>

☐ Medical records and/or report containing a diagnosis        ☐ X-rays
☐ Lung function test results                                              ☐ X-ray reports/interpretations
☐ Lung function test interpretations                                  ☐ CT scans
☐ Pathology reports                                                       ☐ CT scan reports/interpretations
☐ Supporting documentation of exposure to Grace             ☒ Depositions from lawsuits indicated in Part VII
   asbestos-containing products                                          of this Questionnaire
☐ Supporting documentation of other asbestos exposure     ☐ Death Certification

<u>Originals:</u>

☐ Medical records and/or report containing a diagnosis        ☐ Supporting documentation of other asbestos exposure
☐ Lung function test results                                              ☐ X-rays
☐ Lung function test interpretations                                  ☐ X-ray reports/interpretations
☐ Pathology reports                                                       ☐ CT scans
☐ Supporting documentation of exposure to Grace             ☐ CT scan reports/interpretations
   asbestos-containing products                                       ☐ Death Certification

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in
which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please
indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:

_____

_____

**PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE**

The information provided in this Questionnaire must be accurate and truthful. This Questionnaire is an o
document that may be used as evidence in any legal proceeding regarding your Claim. The penalty for
fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both. 18 U.S.C. §§ 1
**TO BE COMPLETED BY THE INJURED PERSON.**

I swear, <u>under penalty of perjury</u>, that, to the best of my knowledge, all of the foregoing information contained in this
Questionnaire is true, accurate and complete.

Signature:

Please Print Name: _____          **REDACTED**          Date: 01 / 20 / 2006

**TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.**

I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and
complete.

Signature: _Edward O. Moody_          Date: <u>01/11/2006</u>

Please Print Name: **Edward O. Moody**

PART V: EXPOSURE TO NON-GRACE ASBESTOS CONTAINING PRODUCTS

WR GRACE PIQ 43987-0022

| CLIENT | SSAN | DEFENDANT | ACTIVITY | Disease Alleged | Disease Settled |
|---|---|---|---|---|---|
| REDACTED | | PROKO | SETTLED | Non-Malignant | Non-Malignant |
| | | OWENS-ILLINOIS | SETTLED | Non-Malignant | Non-Malignant |
| | | COMBUSTION ENGINEERING | SETTLED | Non-Malignant | Non-Malignant |
| | | KEENE | SETTLED | Non-Malignant | Non-Malignant |
| | | FIBREBOARD | SETTLED | Non-Malignant | Non-Malignant |
| | | GARLOCK | SETTLED | Non-Malignant | Non-Malignant |
| | | BONDEX | SETTLED | Non-Malignant | Non-Malignant |
| | | FLINTKOTE | SETTLED | Non-Malignant | Non-Malignant |
| | | BABCOCK & WILCOX | SETTLED | Non-Malignant | Non-Malignant |
| | | OWENS-CORNING | SETTLED | Non-Malignant | Non-Malignant |
| | | GEORGIA-PACIFIC | SETTLED | Non-Malignant | Non-Malignant |
| | | ALLIED MFG. | SETTLED | Non-Malignant | Non-Malignant |
| | | Armstrong World Industries, Inc. | SETTLED | Non-Malignant | Non-Malignant |
| | | Carey Canadian, Inc. | Unsettled | Non-Malignant | Non-Malignant |
| | | Eagle-Picher Industries, Inc. | Unsettled | Non-Malignant | Non-Malignant |
| | | Flexitallic Gasket Co., Inc. | SETTLED | Non-Malignant | Non-Malignant |
| | | GAF Corp. | SETTLED | Non-Malignant | Non-Malignant |
| | | National Gypsum Co. | SETTLED | Non-Malignant | Non-Malignant |
| | | The Celotex Corp. | Unsettled | Non-Malignant | Non-Malignant |
| | | Turner & Newall, PLC. | SETTLED | Non-Malignant | Non-Malignant |
| | | W.R. Grace & Co. | Unsettled | Non-Malignant | Non-Malignant |
| | | U.S. Gypsum | SETTLED | Non-Malignant | Non-Malignant |
| | | PITTSBURGH-CORNING | SETTLED | Non-Malignant | Non-Malignant |

## PART VII: LITIGATION CLAIMS REGARDING ASBESTOS AND/OR SILICA
### b. CLAIMS



WR GRACE PIQ 43987-0023

| CLIENT | SSAN | DEFENDANT | ACTIVITY |
|--------|------|-----------|----------|
| **REDACTED** | | CELOTEX | Unsettled |
| | | Eagle-Picher Industries, Inc. | Unsettled |



WR GRACE PIQ 43987-0024



**TRINITY MOTHER FRANCES**
H E A L T H   S Y S T E M
*www.tmfhs.org*

*Division of Pulmonology*

**Richard S. Kronenberg, MD**
*Diplomate, American Board of*
*Internal Medicine and Pulmonary Disease*

September 5, 2005

Ms. Sandra Bell
Edward O. Moody, P.A.
Attorneys at Law
PO Box 8709
Little Rock, Arkansas 72217

RE:
    SSN:    **REDACTED**

Dear Ms. Bell:

As requested in your letter to me of August 29, 2005, I reviewed the records you supplied
regarding your client           The records consisted of the following:

1. Your letter to me dated August 29, 2005.
2. A client summary sheet.
3. A letter from Dr. Ronald E. Gordon to Dr. Steven Dikman dated April 19, 1991.
4. Records of the Baptist Medical Center of Little Rock Arkansas covering the time span
   from January 1989 through March 1989. Unfortunately, the copy quality of these records
   is very poor.

The records indicate that        d had a significant occupational exposure to asbestos.
Specifically, he worked as a carpenter, sheetrock worker, painter, sandblaster and aircraft
mechanic from 1962 to 1982. This exposure is of sufficient magnitude and latency to account for
any of the asbestos related diseases. His cigarette smoking history cannot be determined from
the records I reviewed. In approximately January 1989      developed significant x-ray
abnormalities including a possible mass in his right upper lobe. He also developed a pleural
effusion. A lung biopsy was performed and showed considerable fibrosis. Pleural fluid was
obtained and contained malignant cells consistent with non-small cell lung cancer. Unfortunately,
as I indicated, many of the records from the Baptist Medical Center are unreadable because of
the poor copy quality. In April 1991, some of the lung tissue obtained from      was
analyzed for asbestos fiber burden by Dr. Ronald Gordon. Numerous asbestos fibers were
found.

Based on my review of the records you supplied, I conclude that       suffers from
asbestosis and an asbestos related lung cancer.

Thank you for the opportunity to review this material.

Sincerely yours,

Richard S. Kronenberg, M.D.

RSK:jr

520 E. Douglas Blvd.
Tyler, Texas 75702
Fax 903-510-8784

**Your Physicians. Your Hospital. Your CHOICE.**

903-510-8783

# STATE OF ARKANSAS

WR GRACE PIQ 43987-0025

ARKANSAS DEPARTMENT OF HEALTH
Division of Vital Records
CERTIFICATE OF DEATH

REDACTED

**2. SEX** Male

**3. DATE OF DEATH (Month, Day, Year)** APRIL 23, 2005

**AGE** 71

**DECEDENT**

**HOSPITAL** NO

**FACILITY NAME** BAPTIST HEALTH

**CITY, TOWN OR LOCATION OF DEATH** LITTLE ROCK

**COUNTY OF DEATH** PULASKI

**MARITAL STATUS** Never Married, Widowed, Divorced (Specify)

**SURVIVING SPOUSE**

**DECEDENT'S USUAL OCCUPATION** PAINT CONTRACTOR

**KIND OF BUSINESS/INDUSTRY** CONSTRUCTION

**RESIDENCE — STATE** 

**COUNTY**

**CITY, TOWN OR LOCATION**

**STREET AND NUMBER**

**ZIP CODE** NO.   71639

**RACE** WHITE

**INSIDE CITY LIMITS**

**DISPOSITION**

**20a. METHOD OF DISPOSITION** Burial

**20b. DATE OF DISPOSITION (Month, Day, Year)** APRIL 26, 2005

**20c. PLACE OF DISPOSITION** TYRO CEMETERY

**TYRO, ARKANSAS**

**21a. SIGNATURE OF EMBALMER** Willie Henson   **LICENSE NUMBER** #2146

**22. NAME AND ADDRESS OF FUNERAL HOME** GRIFFIN FUNERAL HOME
109 S. BRASFIELD, DUMAS, AR   **LICENSE NUMBER** #14

**CAUSE OF DEATH**

PART I.

**WAS AN AUTOPSY PERFORMED?** NO

**WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH?** NO

**MANNER OF DEATH** Natural

**CERTIFIER**

**SEAL**

I HEREBY CERTIFY THAT THE ABOVE IS A TRUE AND CORRECT COPY OF THE CERTIFICATE ON ...

Michael A. Adams
State Registrar

MAY 03 2005

0544138

WARNING: REPRODUCTION OF THIS DOCUMENT RENDERS IT VOID AND INVALID. DO NOT ACCEPT UNLESS EMBOSSED SEAL OF THE ARKANSAS DEPARTMENT OF HEALTH IS PRESENT. IT IS ILLEGAL TO ALTER OR COUNTERFEIT THIS DOCUMENT.

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER. THIS IS WATERMARKED PAPER. DO NOT ACCEPT WITHOUT FIRST HOLDING TO LIGHT TO VERIFY WATERMARK.

VR-112



WR GRACE PIQ 43887-0026

STATE OF ARKANSAS    )
                              ) ss.
COUNTY OF PULASKI    )

## AFFIDAVIT

Comes now Jennifer Peachey, Bankruptcy Department Manager for Edward O. Moody, P.A., after being duly sworn states on oath:

1.    The law office of Edward O. Moody, P.A. has represented over the years numerous of claimants with claims against W.R. Grace.

2.    All the clients represented by Edward O. Moody, P.A. are sick with some form of malignant or non-malignant disease that can be directly linked to the claimant's work history and exposure to asbestos containing products.

3.    The vast majority of these clients are elderly and of limited educational background. They are also very limited in their understanding of medical issues.

4.    Their clients are therefore unable to adequately answer the W.R. Grace Personal Injury Questionnaire with competence. They do not have the knowledge, experience, or information to summarize and compile the information requested in the Defendant's Questionnaire. This requires the information to be compiled almost entirely by the law firm through personal visits, telephone calls, file review, co-worker information, and employer records..

5.    Estate representatives and spouses who are overseeing the deceased claimant's matters usually do not have adequate knowledge of the working conditions of the claimant. They do not have the knowledge, experience, or information to summarize and compile the information requested in the Defendant's Questionnaire.

6.    The law office of Edward O. Moody, P.A. objects to the majority of questions in this questionnaire because the questions violate attorney-client privileges, seek


WR GRACE  PIQ  43987-0027

information that is not discoverable under the Federal Rules of Civil or Bankruptcy Procedure or the applicable rules of state Civil Procedure.   In addition the questionnaire is not a "pleading" as defined in state or federal Rules of Civil Procedure.

7.    The law office of Edward O. Moody, P.A. objects to the scope and content of the W.R. Grace Personal Injury Questionnaire as it is oppressive, cumulative, duplicative, burdensome, and not likely to lead to discoverable evidence.

8.    Experience has shown that it takes one staff person approximately eight (8) to ten (10) hours to complete each claim form including the research, copying, and completion of the claim form and exhibits.  Most claim forms from other bankrupt companies take only an hour including the research, copying, and completion of the claim form.

9.    The law office of Edward O. Moody, P.A. objects to spending the required amount of time, labor, and money needed in order to properly respond to the W.R. Grace Personal Injury Questionnaire without the knowledge of the potential value of the claim.

10.   The law office of Edward O. Moody, P.A. further objects to the W.R. Grace Personal Injury Questionnaire to the extent that it seeks disclosure of any privileged communication between the Claimant, and/or a representative of the claimant, and any attorney for the Claimant, and/or a representative for any attorney for the Claimant.

11.   The law office of Edward O. Moody, P.A. objects to the request for information and documents that is readily available to the Defendant, was previously given to the Defendant, or obtainable with equal or greater facility by the Defendant.

12.   The law firm of Edward O. Moody, P.A. objects to the Defendant's Interrogatories as they are not limited to the Claimant's asbestos-related personal injury lawsuit.

13.   The law firm of Edward O. Moody, P.A. objects to all questions concerning


WR GRACE PIQ 43987-0028

settlements with other defendants named in the law suit.   Settlements with other Defendants are irrelevant to the Debtor's share of the liability.   Furthermore, settlements with other Defendants are generally subject to a confidentiality agreement.

Jennifer Peachey
Bankruptcy Department Manager

## ACKNOWLEDGEMENT

STATE OF ARKANSAS      )
                       ) ss.
COUNTY OF PULASKI      )

Subscribed and sworn to me, _April Corley_____, this _7th___ day of _July_____, _2006_.

Notary Public

My Commission Expires:

_July 7, 2014___

S E A L

OFFICIAL SEAL
APRIL CORLEY
NOTARY PUBLIC - ARKANSAS
SALINE COUNTY
My Commission Expires JULY 7, 2014

**REDACTED**



REDACTED

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | } | Chapter 11 |
| | } | |
| W.R. GRACE & CO., et al | } | Case No. 01-1139 (JKF) |
| | } | (Jointly Administered) |
| Debtors. | } | |

### CLAIMANT'S OBJECTIONS AND RESPONSES TO THE
### W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

Claimant            , by and through his/her counsel, Edward O. Moody, P.A. submits the following objections and responses to the "W.R. Grace Asbestos Personal Injury Questionnaire" ("Questionnaire"). In order to maintain the integrity of the formatting on Debtor's Questionnaire, Claimant has set out all of his/her general and specific objections in the following separate sections of this response and hereby incorporates each of these objections into Claimant's Questionnaire responses by reference herein.

### CLAIMANT'S GENERAL OBJECTIONS TO THE W.R. GRACE ASBESTOS
### PERSONAL INJURY QUESTIONNAIRE

Claimant hereby files these objections in response to the Questionnaire propounded by W.R. Grace.

1.  Claimant objects to the Questionnaire and its Instructions to the extent that they impose discovery obligations beyond those of the Federal Rules of Bankruptcy Procedure and/or the rules of civil procedure in the state where Claimant filed an asbestos personal injury lawsuit. Claimant will respond to the discovery Questionnaire in accordance with those rules. Claimant objects to the Instructions as they make document requests that are overly broad, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Claimant contends that the burden and expense of responding to Debtor's Questionnaire in the format requested by Debtor outweighs its likely benefit.

2.  Claimant objects to the Questionnaire and its Instructions to the extent that they seek information or identification of documents that are attorney work product, subject to the attorney-client or consulting expert privileges, or are otherwise not discoverable under the Federal Rules of Bankruptcy Procedure or the rules of civil procedure in the state where Claimant filed an asbestos personal injury lawsuit. Claimant further objects to the Questionnaire and its Instructions to the extent it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as witness at trial. Inadvertent disclosure of any such information or documents shall not constitute waiver of any privilege.

3.  By providing responses to the Questionnaire, the claimant does not concede that the information provided is discoverable, relevant, or admissible. All responses are provided subject to the objections set forth herein. Each claimant reserves the right to challenge further discovery into subject matter of the Questionnaire.

**REDACTED**



WR GRACE PIQ 43987-0030

4.    Claimant objects to any request in the Questionnaire that seeks any information that is not in the Claimant's control, custody, or possession; is already in the control, custody, or possession of the Debtor; or is obtainable with equal or greater facility by the Debtor. The answers to the majority of the questions in the Debtor's Questionnaire may be derived or ascertained form interrogatory responses and was a party prior to filing for bankruptcy ("Claimant's Asbestos Lawsuit"). Because the burden of deriving or ascertaining the answer is substantially the same for Debtor as for Claimant, Claimant has specified in Claimant's Questionnaire response the document from which the answer may be derived as permitted by Rule 33(d) of the Federal Rules of Civil Procedure as incorporated by Rule 7033 of the Federal Rules of Bankruptcy Procedure.

5.    In response to this Questionnaire, Claimant objects to the extent that the questions are vague, ambiguous and premature. Moreover, Claimant objects to this Questionnaire to the extent that the scope and content of the information sought is unreasonably cumulative and duplicative.

6.    Claimant objects to this Questionnaire to the extent it requires Claimant to compile documents or information from sources not presently available to Claimants, including documents created or compiled by third parties. Claimant objects to Questionnaire to the extent it purports to require Claimant to gather and summarize information contained in voluminous papers that are already matters of public record.

7.    Claimant objects to this Questionnaire to the extent that the questions and their discreet sub-parts exceed twenty-five (25) in number.

8.    By submitting this response to the Questionnaire, Claimant does not intend to, and hereby does not, submit to the jurisdiction of the United States District Court for the District of Delaware, to the United States Bankruptcy Court for the District of Delaware, or to any other court. Claimant reserves (i) all objections to jurisdiction and/or venue, (ii) all protections afforded under Federal Rule of Civil Procedure 45 and Federal Bankruptcy Rule of Procedure 9016, and (iii) the right to jury trial afforded under 28 U.S.C. § 157 (b)(5).

**REDACTED**



WR GRACE PIQ 43987-0031

<u>CLAIMANT'S SPECIFIC OBJECTIONS TO THE W.R.GRACE
ASBESTOS PERSONAL INJRUY QUESTIONNAIRE</u>

INSTRUCTIONS

1.  Claimant objects to Instructions A.1 to the extents that it purports to include claims under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursements or indemnity on the ground that it is overly broad and requests information that is not relevant to the subject matter of the estimation proceeding.

2.  Claimant objects to Instruction C in its entirety and Instruction J regarding medical supporting documentation on the ground that it is vague, ambiguous and exceeds the scope of discovery in that it seeks information and documents from experts that is not discoverable and is subject to the work requiring claimant to "complete a separate Part II for each initial diagnosis and any previous or subsequent diagnosis or diagnostic tests that change or conflict with the initial diagnosis", on the ground that the burden outweighs its likely benefit. Claimant further objects to the instruction to attach **all** x-ray and readings and reports and **all** pulmonary function tests ("PFT") results on the ground that it is overly broad and ambiguous. Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness in trial. Without limiting the foregoing, Claimant objects to the following provisions of the Discovery Questionnaire as violative of Fed. R. Civ. P. 26(b)(4)(B):

> (a). Claimant objects to Section C of the Instructions to the extent that it requests the completion of Part II of the Discovery Questionnaire "if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors."

> (b). Claimant objects to Section C of the Instructions to the extents that it requests the production of "any and all documents" that "support or conflict with your diagnosis."

> I. Claimant objects to Section C of the Instructions to the extent that it requests the production of "all x-ray readings and reports."

> (d). Claimant objects to Section C of the Instructions to the extent that it requests the production of "all pulmonary function test results, including the raw data and all spirometric tracings, on which the results were based."

> (e). Claimant objects to Section J of the Instructions to the extent that it requests the production of "any and all documents" that "support or conflict with your diagnosis."

> (f). Claimant objects to Part II of the Discovery Questionnaire to the extent that it requests disclosure of "diagnoses and diagnostic tests" by "multiple doctors" concerning "previous or subsequent diagnoses or diagnostic tests that change or conflict with the original diagnoses." Claimant urges the objection with regard to all "conditions" for which disclosure is requested.

**REDACTED**



Subject to the forgoing, Claimant will attach any x-rays, B-reads, pulmonary function tests or pathology reports considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit.

3.  Claimant objects to Instruction D to the extent that it requests Claimant to "attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease" on the ground that is ambiguous and exceeds the scope of discovery in that it requests documents that are subject to the work product privilege. Further, Claimant has been barred by the Bankruptcy Code Section 362 stay from pursuing discovery against Debtor.

PART I:  IDENTITY OF INJURED PERSON AND LEGAL COUNSEL

Subsection (a)(7) – Daytime Telephone Number of client

Claimant objects to this inquiry on the ground that it is neither relevant nor likely to lead to the discovery of admissible evidence. Claimant is represented by counsel, as reflected herein, and may only be contacted through counsel.

PART II:  ASBESTOS-RELATED CONDITION(S)

1.  **General Objections.**  Claimant objects to Part II of the Questionnaire in its entirety on the ground that it exceeds the scope of discovery in that it seeks information not relevant to the estimation proceeding, information that is privileged, and information from experts that is non-discoverable and is subject to the consulting expert and work product privileges. Additionally, the information sought may be derived from the Claimant's discoverable medical records, which are attached to the Questionnaire. Claimant further objects on the ground that the information requested by this question and its sub-parts is equally available to the Debtor in that it may be derived from the Claimant's discoverable medical reports attached to Questionnaire. Claimant further objects to the Discovery Questionnaire to the extent that. it seeks disclosure of any privileged communication between Claimant, and/or a representative of Claimant, and any attorney for the Claimant, and/or a representative for any attorney for Claimant. In addition, pursuant to Federal Rule of Civil Procedure 26(b)(3), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of the work product of any attorney for Claimant, including but not limited to the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of Claimant.

2.  **Subsection 1 (a)-(f)-Condition Being Alleged.**  Claimant objects to this question and each of its subparts (a-f) on the ground that it exceeds the scope of discovery in that it seeks information not relevant to the estimation proceedings, and information from experts that is non-discoverable and is subject to the consulting expert and work product privileges. Claimant further objects on the ground that the information requested by this question and its sub-parts is equally available to the Debtor in that it may be derived from the claimant's discoverable medical reports attached to the Questionnaire.  Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

**REDACTED**



3.   **Subsection 2 – Information Regarding Diagnosis.**
   a.   Claimant objects to Part II, Subsection 2 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, seeks information from experts that is non-discoverable, and seeks information that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Claimant further objects to this question to the extent that it purports to require Claimant to gather and summarize information already contained in documents provided with Claimant's Questionnaire answers, and is, therefore, obtainable with equal or greater facility by the Debtors. Claimant's diagnosis of an asbestos-related condition may be based on one or more diagnostic test(s), pathology report(s) or physical examination(s). Therefore, asking Claimant to state a "date of diagnosis" is vague and ambiguous. Subject to and without waiving the foregoing, in response to Part II, Subsection 2, Claimant has provided the date of the medical report prepared by the medical doctor designated by Claimant in Claimant's Asbestos Lawsuit to provide expert medical opinions regarding Claimant's asbestos-related disease as needed to establish the elements of Claimant's claim under state law and has answered the questions regarding such doctor, if such information was readily available. Claimant has attaché to this Questionnaire a copy of such expert's report along with any available x-ray readings, pulmonary function test reports ("PFT") and/or pathology reports considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit. In addition to specifying and attaching a copy of the records from which the answer to Part II, subsection 2 may be derived or ascertained and without waiving Claimant's right to do so pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Claimant has set out in the Questionnaire response the information that is contained in the medical reports and that was readily available to Claimant's attorney in electronic format.
   b.   Claimant further objects to the following questions in Part II, Subsection 2 regarding Claimant's relationship to the diagnosing doctor on the ground that these questions are violative of the attorney-client communication and/or attorney work product privileges, leading, harassing and seek information that is not relative to the proceeding. Claimant has additional, specific objections for the questions noted below.

---

With respect to your relationship to the diagnosing doctor, check all applicable boxes:
Was the diagnosing doctor your personal physician?     Yes ☐   No ☐
Further, Claimants specifically objects to this question on the ground that it is vague and ambiguous.
Was the diagnosing doctor paid for the diagnostic services that he/she performed? ☐ Yes   ☐ No '
*If yes, please indicated who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor? ☐ Yes   ☐ No
Further, Claimants specifically objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work products privileges is misleading and biased and cannot be fairly or completely answered with "yes" or "no".
Was the diagnosing doctor referred to you by counsel?  ☐ Yes   ☐No
Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privilege.
Are you aware of any relationship between the diagnosing doctor and your legal counsel? ☐ Yes☐ No
Further, Claimant objects to this question on the grounds that it is violative of the attorney-client communication and/or attorney work product privileges.
*If yes, please explain:*

---

**REDACTED**



Subject to and without waiving the forgoing, please see Claimant's Questionnaire responses and documents attached hereto.

4.   **Subsection 3 – Information Regarding Chest X-Ray (Location of X-Ray)**

Claimant objects to Part II, Subsection 3 on the ground that it is harassing, and exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, seeks information from experts that is non-discoverable, and seeks information that is subject to the consulting expert and work product privileges. Claimant further objects to this question on the ground that it is vague and ambiguous in that Claimant may have had multiple chest x-rays taken that do not change or conflict with Claimant's initial diagnosis of an asbestos-related condition and it would be duplicative, unduly burdensome and harassing to required Claimant to complete a separate Part II for each chest x-ray.

Subject to and without waiving the foregoing, please refer to Claimant's deposition, if available, and any medical records attached hereto.

5.   **Subsection 4 – Information Regarding Chest X-Ray Reading (Results of X-Ray)**

a.   Claimant objects to Part II, Subsection 4 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, information from experts that is non-discoverable, and information that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Additionally, Claimant objects to this question on the ground that it is duplicative of other questions herein, and thus is unduly burdensome. Claimant objects to this question on the ground that it is vague and ambiguous in that Claimant may have multiple chest x-rays taken that do not change or conflict with Claimant's initial diagnosis of an asbestos-related condition and it would be duplicative, unduly burdensome and harassing to require Claimant to complete a separate Part II for each chest x-ray. Subject to and without waiving the foregoing, in response to Part II, subsection 4, Claimant has provided information regarding Claimant's certified B-reader report considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit. Claimant has set out in the Questionnaire response the information relating to Claimant's certified B-reader report that was readily available to Claimant's attorney in electronic form.

b.   Claimant objects to Part II, subsection 4 of the Discovery Questionnaire as violative of the attorney-client communication and/or attorney work product privileges to the extent that it asks: "if Claimant retained counsel in order to receive any of the services performed by the diagnosing doctor," if "the diagnosing doctor was referred to you by counsel"; and if Claimant is "aware of any relationship between the diagnosing doctor and your legal counsel". Claimant further objects to the following questions in Part II, Subsection 4 regarding Claimant's relationship to the reader on the ground that these questions are leading, harassing and seek information that is not relevant to the proceeding. Claimant has additional, specific objects for the questions noted below.

**REDACTED**



WR GRACE PIQ 43997-0035

With respect to your relationship to the reader, check all applicable boxes:
Was the reader paid for the diagnostic services that he/she performed? ☐ Yes ☐ No
*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the reader? ☐ Yes ☐ No
**Further, Claimant specifically objects to this question on the ground that it is volative of the attorney-client communications and/or attorney work privileges, is misleading and biased and cannot be fairly or completely answered with a "yes" or "no."**
Was the reader referred to you by counsel? ☐ Yes ☐ No
**Further, Claimant objects to this question on the ground that it is volative of the attorney-client communications and/or attorney work privileges.**
Are you aware of any relationship between the reader and your legal counsel? ☐ Yes ☐ No
**Further, Claimant objects to this question on the ground that it is volative of the attorney-client communications and/or attorney work privileges.**
*If yes, please explain:*

Subject to and without waiving the forgoing, please see Claimant's Questionnaire responses and documents attached here to.

6.    **Subsection 5 – Information Regarding Pulmonary Function Tests**

a.  Claimant objects to Part II, Subsection 5 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, that is non-discoverable, and that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Additionally, Claimant objects to this question to the extent that is purports to required Claimant to gather and summarize information contained in documents already provided herewith, and is thus obtainable with equal or greater facility by the Debtor. Subject to and without waiving the foregoing, in response to Part II, Subsection 5, Claimant has provided information regarding Claimant's pulmonary function tests ("PFT") considered by Claimant's medical expert in forming his/her opinion in connection with the Claimant's Asbestos Lawsuit. Claimant has set out in the Questionnaire response the information relating to Claimatn's PFT report that was readily available to Claimant's counsel in electronic form.

b.  Claimant objects to Part II, subsection 5 of the Discovery Questionnaire as violative of the attorney-client communication and/or attorney work product privilege to the extent that it asks: "if Claimant retained counsel in order to receive any of the services perfomed by the diagnosing doctor," if "the diagnosing doctor was referred to you by counsel"; and if Claimant is "aware of any relationship between the diagnosing doctor and your legal counsel". Claimant further objects to the following questions in Part II, Subsection 5 regarding Claimant's relationship to the doctor or clinician who performed the pulmonary function test on the ground that these questions are leading, harassing, and seek information that is not relevant to the proceedings. Claimant has additional, specific objections for the questions noted below.

With respect to your relationship to the doctor or clinician who performed the pulmonary function test, check all the applicable boxes:
If the test was performed by a doctor, was the doctor your personal physician? ☐ Yes ☐ No
**Further, Claimant specifically objects to this question on the ground that it is vague and ambiguous.**
Was the testing doctor and/or clinician paid for the diagnostic services that he/she performed? ☐ Yes ☐ No
    *If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician? ☐ Yes ☐ No

**REDACTED**

WR GRACE PIQ 43987-0098

Further, Claimant specifically objects to this question on ground that it is volative of the attorney-client communications and/or attorney work product privileges, is misleading and biased and cannot be fairly or completely answered with a "yes" or "no."

Was the testing doctor or clinician referred to you by counsel?  ☐ Yes ☐ No

Further, Claimant objects to this question on the ground that it is volative of the attorney-client communication and/or attorney work product privileges.

Are you aware of any relationship between either the doctor or clinician and your legal counsel?  ☐ Yes ☐ No

Further, Claimant objects to this question on the ground that it is volative of the attorney-client communication and/or attorney work product privileges.

*If yes, please explain:*

c. Claimant objects to the following questions in Part II, Subsection 5 regarding Claimant's relationship to the doctor interpreting the results of the pulmonary function test on the ground that these questions are violative of the attorney-client communication and/or attorney work product privileges, leading, harassing and seek information that is not relevant to the proceeding. Claimant has additional, specific objections for the questions noted below.

With respect to your relationship to the doctor interpreting the results of the pulmonary function test, check all applicable boxes:

Was the doctor your personal physician?  ☐ Yes ☐ No

Further, Claimant specifically objects to this question on the ground that it is vague and ambiguous.

Was the doctor paid for the services that he/she performed?  ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the doctor?  ☐ Yes ☐ No

Further, Claimant specifically objects to this question on the ground that it is volative of the attorney-client communications and/or attorney work product privileges, is misleading and biased and cannot be fairly or completely answered with a "yes" or "no."

Was the doctor referred to you by counsel?  ☐ Yes ☐ No

Further, Claimant objects to this question on the ground that it is volative of the attorney-client communication and/or attorney work product privileges.

Are you aware of any relationship between either the doctor or clinician and your legal counsel?  ☐ Yes ☐ No

Further, Claimant objects to this question on the ground that it is volative of the attorney-client communication and/or attorney work product privileges.

*If yes, please explain:*

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

7.    **Subsection 6 – Information Regarding Pathology Reports**

a. Claimant objects to Part II, Subsection 6 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, that is non-discoverable, and that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary in this proceeding and is harassing. Claimant further objects to this question to the extent that it purports to required Claimant to gather and summarize information contained in documents already provided herewith, and is thus obtainable with equal or greater facility by the Debtor. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

b. Claimant objects to Part II, Subsection 6 of the Discovery Questionnaire as violative of the attorney-client communication and/or attorney work product privileges to the extent that it asks: "if Claimant retained counsel in order to receive any of the services preformed by the diagnosing doctor," if "the diagnosing doctor was referred to you by counsel"; and if Claimant is "aware of any relationship between the diagnosing doctor and your legal

**REDACTED**



counsel". Claimant further objects to the following questions in Part II, Subsection 6 regarding Claimant's relationship to the doctor issuing the pathology report on the ground that these questions are leading, harassing and seek information that is not relevant to the proceeding. Claimant has additional, specific objections for the questions noted below.

---

With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:
Was the doctor your personal physician?  ☐ Yes   ☐ No
Further, Claimant specifically objects to this question on the ground that it is vague and ambiguous.

Was the doctor paid for these services that he/she performed?  ☐ Yes  .  ☐ No
*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the doctor?  ☐ Yes   ☐ No
Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communications and/or attorney work product privileges, is misleading and biased and cannot be fairly or completely answered with a "yes" or "no."
Was the doctor referred to you by counsel?  ☐ Yes   ☐ No
Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges.
Are you aware of any relationship between either the doctor or clinician and your legal counsel?  ☐ Yes  ☐ No
*If yes, please explain:*

---

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

8.    **Subsection 7 – Medical Treatment From Doctor for Condition Alleged**

Claimant objects to this question on the grounds that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, that is non-discoverable, and that is subject to this question is harassing. Additionally, Claimant objects to Part II, Subsection 7 of the Discovery Questionnaire to the extent that it asks if Claimant "retained counsel in order to receive any of the services performed by the diagnosing doctor."

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

## PART III:  DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

Claimant objects to Part III in its entirety on the ground that it is onerous, unduly burdensome and harassing in that it would require a great amount of time, labor and expense to create a chart of exposure to the Debtor's products in the format requested by Debtor. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Subject to and without waiving the foregoing objections, the information responsive to this request may be derived from the documents attached to Claimant's Questionnaire, including, where available, Plaintiff's Exposure History Sheet ("PEH"), and Claimant's Answers to Interrogatories filed in connection with Claimant's Asbestos Lawsuit (referred to in Questionnaire response as "interrogatory responses").

## PART IV:  INDIRECT EXPOSURE TO GRAE ASBESTOS-CONTAINING PRODUCTS

**REDACTED**



WR GRACE PIQ 43987-0038

1.  Claimant objects to Part IV, question 1 to the extent that it is vague and ambiguous with regard to the use of the terms "contact/proximity" and "injured person". Claimant further objects to this question on the ground that it implicitly asserts unproven conclusions as established facts. Specifically, Claimant may have been injured by exposure to Grace products as a result of contact or proximity to another person, but no necessarily an "injured" person. To the best of Claimant's ability, Claimant understands the question to ask whether Claimant's injury is caused solely by contact/proximity with another person. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

2.  Claimant objects to Part IV, question 2 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there my not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

3.  Claimant objects to Part IV, question 3 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there my not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

4.  Claimant objects to Part IV, question 4 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there my not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

5.  Claimant objects to Part IV, question 5 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there my not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Claimant also objects to this question on the ground that Claimant may not know the specific day, month, and year of another person's exposure and therefore cannot answer the question. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

**REDACTED**



WR GRACE PIQ 43987-0039

6.    Claimant objects to Part IV, question 6 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there my not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

7.    Claimant objects to Part IV, question 7 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there my not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

8.    Claimant objects to Part IV, question 8 to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Claimant further objects to the use of the term "Nature" in that it is vague and ambiguous. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

9.    Claimant objects to Part IV, question 9 to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Claimant further objects to the use of the term "Nature" in that it is vague and ambiguous. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

10.    Claimant objects to Part IV, question 10 to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Additionally, Claimant objects to this question on the ground that Claimant may not recall exact day, month, and year his or her exposure began or ended, and, in that regard, this question is unduly burdensome. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

## PART V: EXPOSURE TO NON-GRACE ASBESTOS-CONTAING PRODUCTS

Claimant objects to Part V as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Claimant objects to this interrogatory on the ground that it is unduly burdensome, onerous and harassing in that it would require great amount of time, labor and expense to create a chart of exposure in the format requested by the Debtor an then to create a separate chart for each party against which Claimant has filed an asbestos lawsuit or claim. Claimant further objects to Part V to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Subject to and without waiving the foregoing objections, the information responsive to this request may be derived from the documents attached to

**REDACTED**



Claimant's Questionnaire, including, where available, Plaintiff's Exposure History Sheet ("PEH"), and Claimant's Answers to Interrogatories filed in connection with Claimant's Asbestos Lawsuit ("interrogatory responses"). · In addition, Claimant has attached to the Questionnaire a List of Parties Against which a Lawsuit or Claim was Filed (List of Parties").

## PART VI: EMPLOYMENT HISTORY

Claimant objects to part VI on the ground that it is unduly burdensome and harassing and it would require a great amount of time, labor, and expense to complete this section of the Questionnaire in the format requested by the Debtors. Claimant further objects to this question because it requires Claimant to compile or summarize information from Claimant's Social Security records that is obtainable with equal or greater facility by the Debtor. Claimant further objects to providing information, including but not limited to, the occupation and industry codes for employers or jobsites where Claimant has not alleged any asbestos exposure as it exceeds the scope of permissible discovery in that it is not relevant to the subject matter of the estimation proceeding, and is harassing to Claimant.

Subject to and without waiving the foregoing objections, the information responsive to this request may be derived from the documents attached to Claimant's Questionnaire, including, where available, Claimant's Itemized Statement of Earnings prepared by the Social Security Administration, Plaintiff's Exposure History Sheet ("PEH"), and Claimant's deposition, if available.

## PART VII: LITIGATION AND CLAIMS REGARDING ASESTOS AND/OR SILICA

### Subsection a. — Litigation

1.    Claimant objects to part VII, Subsection a, question 1 as it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits; and further, it is not limited to the lawsuit in which the Debtor was sued. Claimant responds to this entire Subsection a (questions 1 through 7) as if the question were so limited. Claimant further objects to this subpart to the extent that is requires Claimant to summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Responding to Part VII, Subsection a in the format in Debtor's Questionnaire is harassing and unduly burdensome. Subject to and without waiving the forgoing, please see Claimant's Questionnaire responses and the documents attached hereto. Claimant's counsel does not represent Claimant in a lawsuit regarding silica.

2.    Claimant objects to Part VII, Subsection a, question 2, to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Claimant further objects to this subpart as it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

3.    Claimant objects to Part VII, Subsection a, question 3 on the ground that it is harassing in that Grace knows equally well as Claimant whether or not it was

**REDACTED**



named as a defendant in Claimant's lawsuit, if any. Claimant objects to this subpart as it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits. Further, Claimant objects to this subpart on the ground that it exceeds the permissible scope of discovery in that it seeks information that is not relevant to the estimation proceeding. · Subject to and without the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

4. Claimant objects to Part VII, Subsection a, question 4 on the ground that it seeks information that is neither relevant nor necessary to the estimation proceeding. Whether a particular defendant has been dismissed has no bearing on Debtor's several share of the liability. Additionally, Claimant objects on the ground that it is unduly burdensome to provide the basis for dismissal for each of the dismissed defendants, if any. Claimant further objects to this subpart as it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits. Subject to and without waiving the forgoing, please see Claimant's Questionnaire responses and the documents attached hereto.

5. Claimant objects to Part VII, Subsection a, question 5 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant or necessary to the estimation proceeding. The existence and amount of any verdict or judgment against any defendant other than Debtor has no bearing on Debtor's several share of the liability. Claimant objects to this subpart as it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits. Subject to and without waiving the forgoing, please see Claimant's Questionnaire responses and the documents attached hereto.

6. Claimant objects to Part VII, subsection a, question 6 and each of its subparts regarding settlements reached in the lawsuit as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceedings and requests privileged or confidential information. Specifically, the terms of the settlement agreements, if any, including the settlement amounts, if any are irrelevant to an aggregate estimate of Debtor's liability. Claimant further objects to this subpart as it is overly broad to the extent that it seeks information beyond *asbestos-related personal injury* lawsuits. Settlements with other defendants are irrelevant to Debtor's several share of the liability, and Debtor would get a set-off or credit for such settlements only for the cases that were tried all the way to judgment, which clearly will not happen in the context of the present proceeding. Further, for the majority of defendants, any settlement agreements are subject to a confidentiality agreement.

Claimant specifically objects to providing the "disease or condition alleged" and the "the disease or condition settled" (Part VII,a,6(c) and (d)) on the ground that it is ambiguous and harassing. Claimant filed a lawsuit alleging Claimant suffered injuries proximately caused by Claimant's exposure to asbestos-containing products designed, manufactured and sold be the Defendants name in the lawsuit, and any settlements were related to those allegations. Subject to and without waiving the forgoing, please see Claimant's Questionnaire responses and the List of Parties attached hereto. Claimant has provided information regarding the status

**REDACTED**



of his/her claim against the Defendants names in Claimant's Asbestos Lawsuit in the attached List of Parties.

7. Claimant objects to Part VII, Subsection a, question 7 on the ground that it is overly broad and unduly burdensome. Further, Claimant's deposition testimony is duplicative of information already provided herein. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached here to.

## Subsection b – Claims

1. Claimant objects to Part VII, Subsection b, question 1 as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding and requests privileged or confidential information. Claimant further objects that responding to Part VII, Subsection b in the format in Debtor's Questionnaire is harassing and unduly burdensome. Additionally, Claimant objects on the ground that this question is overly broad in that it is not limited to *asbestos-related personal injury* claims. Claimant responds to this entire subsection b (questions 1 through 7) as if the questions were so limited. Subject to and without waiving the foregoing, Claimant has provided information regarding the status of his asbestos claim against any asbestos trust in the attached List of Parties.

2. Claimant objects to Part VII, Subsection b, questions 2 and 3 on the ground that it seeks information that is neither relevant nor necessary to the estimation proceeding. The date and entity against whom a claim was submitted has no bearing on Debtor's several share liability. Additionally, Claimant objects on the ground that this question is overly broad in that it is not limited to *asbestos-related personal injury* claims. Subject to and without waiving the foregoing, please see the attached List of Parties.

3. Claimant objects to Part VII, Subsection b, questions 5 and 6 regarding settlements with an asbestos trust as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding and requests privileged or confidential information. The settlement amounts are not relevant to an <u>aggregate</u> estimate of Debtor's liability or to Debtor's several share of the liability. Additionally, Claimant objects on the ground that this question is overly broad in that it is not limited to *asbestos-related personal injury* claims. Subject to and without waiving the foregoing, Claimant has noted the settled claims on the attached List of Parties.

## PART VIII: CLAIMS BY DEPENDANTS OR RELATED PERSONS

Claimant objects to Part VIII on the ground that information regarding dependants or related persons who sued the Debtors before April 2, 2001 is equally available to Debtors. Subject to and without waiving the foregoing, Claimant has provided information regarding Claimant's spouse where available. Please see attached interrogatory responses and Debtor's own records for the information regarding dependants.

**REDACTED**



WR GRACE PIQ 43987-0043

## QUESTIONNIRE RESPONSES

Claimant hereby incorporates by reference all of the foregoing general and specific objections into Claimant's Questionnaire responses and has provided the following responses subject to those objections. Because the burden of deriving or ascertaining the answer is substantially the same for Debtor as for Claimant, claimant has specified in Claimant's Questionnaire response the document(s) from which the answer may be derived, including but not limited to Claimant's medical records, Plaintiff's Exposure History Sheet (referred to in Questionnaire response as "PEH"), Claimant's Answers to Interrogatories filed in connection with Claimant's Asbestos Lawsuit (referred to in Questionnaire response as "interrogatory responses"), Claimant's Itemized Statement of Earnings prepared by the Social Security Administration (referred to in Questionnaire responses as "Statement of Earnings") and Claimant's deposition. In addition, Claimant has compiled information responsive to the Questionnaire in the attached List of Parties Against which a Lawsuit or Claim Was Filed (referred to in the Questionnaire responses as "List of Parties").

**EDWARD O. MOODY, P.A.**
Attorneys at Law
Post Office Box 8709
Little Rock, Arkansas 72217

Edward O. Moody*
Lewis E. Ritchey

*Also Licensed in Texas

Telephone: (501) 614-9626
Facsimile: (501) 614-9889

Departments of
Settlement Release Processing
and
Bankrupt Defendant Claims

July 10, 2006

Rust Consulting Inc.
Claims Processing Agent
201 S. Lyndale Ave.
Faribault, MN 55021

Re:    W.R. Grace & Co. Bankruptcy

To Whom It May Concern:

Enclosed are the completed claim forms and medical documentation for the individuals list on the attached list. Please note that some of these claim forms you have previously received from our office. However, due to the original time constraints we were unable to have the clients sign the questionnaires. The questionnaires have now been signed by both Mr. Edward Moody and the claimant. Should you have any questions, please do not hesitate to contact me.

Sincerely,

*Jennifer Peachey*

Jennifer Peachey
Bankruptcy Department Manager

WR GRACE PIQ  43987-0045