# Exhibit I

# W. R. Grace
# Asbestos Personal Injury Questionnaire



WR GRACE PIQ 60270-0001



10315607025524
RE:
William Bailey Law Firm LLP
8441 Gulf Freeway
Suite 600
Houston TX 77017

**REDACTED**

REC'D JUL 1 2 2006

000770025524

WR GRACE PIQ 60270-0002

[THIS PAGE INTENTIONALLY LEFT BLANK.]



**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| | ) | |

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

YOU HAVE RECEIVED THIS QUESTIONNAIRE BECAUSE GRACE BELIEVES THAT YOU HAD SUED ONE OR MORE OF THE DEBTORS LISTED IN APPENDIX A ATTACHED TO THIS QUESTIONNAIRE BEFORE GRACE FILED FOR BANKRUPTCY ON APRIL 2, 2001 FOR AN ASBESTOS-RELATED PERSONAL INJURY OR WRONGFUL DEATH CLAIM, AND THAT CLAIM WAS NOT FULLY RESOLVED.

IF YOU HAVE SUCH A CLAIM, YOU MUST COMPLETE AND SUBMIT THIS QUESTIONNAIRE BY JANUARY 12, 2006 TO RUST CONSULTING, INC., THE CLAIMS PROCESSING AGENT, AT ONE OF THE FOLLOWING ADDRESSES:

<table>
<tr><td><b>IF SENT BY U.S. MAIL</b></td><td><b>IF SENT BY FEDERAL EXPRESS, UNITED PARCEL SERVICE, OR A SIMILAR HAND DELIVERY SERVICE</b></td></tr>
<tr><td>RUST CONSULTING, INC.<br>CLAIMS PROCESSING AGENT<br>RE: W.R. GRACE & CO. BANKRUPTCY<br>P.O. BOX 1620<br>FARIBAULT, MN 55021</td><td>RUST CONSULTING, INC.<br>CLAIMS PROCESSING AGENT<br>RE: W.R. GRACE & CO. BANKRUPTCY<br>201 S. LYNDALE AVE.<br>FARIBAULT, MN 55021</td></tr>
</table>

A QUESTIONNAIRE (AND ANY AMENDMENTS OR ADDITIONAL DOCUMENTS IN SUPPORT OF THE QUESTIONNAIRE) WILL <u>NOT</u> BE CONSIDERED UNLESS RECEIVED BY RUST CONSULTING, INC. BY JANUARY 12, 2006.

THIS QUESTIONNAIRE IS AN OFFICIAL DOCUMENT APPROVED BY THE COURT IN CONNECTION WITH ESTIMATING GRACE'S ASBESTOS-RELATED PERSONAL INJURY AND WRONGFUL DEATH CLAIMS AS A WHOLE. THE QUESTIONNAIRE IS BEING USED BY W. R. GRACE AS A MEANS TO SEEK INFORMATION ABOUT YOUR ASBESTOS CLAIM. BY TIMELY RETURNING THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE, GRACE, THE OFFICIAL COMMITTEES, AND THE FUTURE CLAIMANTS REPRESENTATIVE WILL SEEK TO PRIORITIZE THE PROCESSING OF YOUR CLAIM UNDER ANY TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION.

THE COURT HAS ORDERED THAT, AS PART OF THE DISCOVERY PROCESS, ALL HOLDERS OF PRE-PETITION ASBESTOS PERSONAL INJURY CLAIMS MUST COMPLETE AND RETURN THIS QUESTIONNAIRE. THUS, FAILURE TO TIMELY RETURN THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE MAY RESULT IN SANCTIONS AND/OR OTHER RELIEF AVAILABLE UNDER APPLICABLE FEDERAL RULES.

BECAUSE YOUR CLAIM WILL BE EVALUATED IN ACCORDANCE WITH THE TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION, COMPLETION OF THIS QUESTIONNAIRE DOES <u>NOT</u> MEAN THAT YOUR CLAIM WILL EITHER BE ALLOWED OR PAID. TO THE EXTENT YOU ATTACH TO THIS QUESTIONNAIRE DOCUMENTS ALSO NEEDED BY THE TRUST TO PROCESS YOUR CLAIM, SUCH DOCUMENTS WILL BE PROVIDED TO THE TRUST AND YOU WILL NOT NEED TO RESUBMIT THEM.

## INSTRUCTIONS



WR GRACE PIQ 60270-0004

### A. GENERAL

1. This Questionnaire refers to any lawsuit that you filed before April 2, 2001 for an "asbestos-related wrongful death claim." This term is intended to cover any lawsuit alleging any claim for personal that relates to: (a) exposure to any products or materials containing asbestos that were manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present affiliates, or any of the predecessors of any of the Debtors or any of their respective past or present affiliates), or (b) exposure to vermiculite mined, milled or processed by the Debtors (or any of their respective past or present affiliates, any of the predecessors of any of the Debtors or any of their predecessors' respective past or present affiliates). It includes claims in the nature of or sounding in tort; or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law or equity, or admiralty for, relating to, or arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal injuries or other damages caused, or allegedly caused, directly or indirectly, and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors. It includes all such claims, debts, obligations or liabilities for compensatory damages such as loss of consortium, personal or bodily injury (whether physical, emotional or otherwise), wrongful death, survivorship, proximate, consequential, general, special, and punitive damages.

2. Your Questionnaire will be deemed filed only when it has been received by Rust Consulting Inc., the Claims Processing Agent, via U.S. Mail, Federal Express, United Parcel Service or a similar hand delivery service. A Questionnaire that is submitted by facsimile, telecopy or other electronic transmission will **not** be accepted and will **not** be deemed filed.

   Do **not** send any Questionnaire to the Debtors, counsel for the Debtors, the Future Claimants Representative, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Asbestos Property Damage Claimants, the Official Committee of Equity Security Holders, or such Committees' counsel. Questionnaires that are filed with or sent to anyone other than Rust Consulting, Inc. will be deemed not to have been submitted, and such Questionnaires will not be considered.

3. Your completed Questionnaire must (i) be written in English, and (ii) attach relevant supporting materials as instructed further below.

4. All holders of claims described on page i (and as described in further detail in Instruction A (1) above) are required to file this Questionnaire by Jan. 12, 2006. Your Questionnaire will be used in connection with the estimation hearing to be conducted by the Court pursuant to the Estimation Procedures Order (a copy of which is attached as Appendix B).

5. Any subsequent amendment to the Questionnaire will not be considered for any purpose unless received by Jan. 12, 2006.

### B. PART I -- Identity of Injured Person and Legal Counsel

Respond to all applicable questions. If you are represented by a lawyer, then in Part I (b), please provide your lawyer's name and the name, telephone number and address of his/her firm. If you are represented by a lawyer, he/she must assist in the completion of this Questionnaire. Also, if you would prefer that the Debtors send any additional materials only to your lawyer, instead of sending such materials to you, then check the box indicating this in Part I (b).

All references to "you" or the like in Parts I through X shall mean the injured person. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete this Questionnaire.

### C. PART II -- Asbestos-Related Condition(s)

Please indicate all asbestos-related medical conditions for which you have been diagnosed. To complete questions related to injuries, medical diagnoses, and/or conditions, please use the following categories of customarily diagnosed conditions:

- Mesothelioma
- Asbestos-Related Lung Cancer
- Other Cancer (colon, laryngeal, esophageal, pharyngeal, or stomach)
- Clinically Severe Asbestosis
- Asbestosis
- Other Asbestos Disease

If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

**Supporting Documents for Diagnosis:** This Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis.

**X-rays and B-reads:** Please attach all x-ray readings and reports. You may, but are not required to, attach chest x-rays. The court, however, has ruled that Grace may seek access to chest x-rays upon request.

**Pulmonary Function Tests:** Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based.



WR GRACE PIQ 60270-0005

## D.  PART III – Direct Exposure to Grace Asbestos-Containing Products

In Part III, please provide the requested information for the job and site at which you were ex
asbestos-containing products.  Indicate the dates of exposure to each Grace asbestos-containing product.
was a result of your employment, use the list of occupation and industry codes below to indicate your occupation and the
industry in which you worked at each site.  If you allege exposure to Grace asbestos-containing products at multiple sites, the
Court has ordered that you must complete a separate Part III for each site.  For your convenience, additional copies of Part III
are attached as Appendix D to this Questionnaire.

Attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial
causal role in the development of the disease.

### Occupation Codes

01.  Air conditioning and heating installer/maintenance
02.  Asbestos miner
03.  Asbestos plant worker/asbestos manufacturing worker
04.  Asbestos removal/abatement
05.  Asbestos sprayer/spray gun mechanic
06.  Assembly line/factory/plant worker
07.  Auto mechanic/bodywork/brake repairman
08.  Boilermaker
09.  Boiler repairman
10.  Boiler worker/cleaner/inspector/engineer/installer
11.  Building maintenance/building superintendent
12.  Brake manufacturer/installer
13.  Brick mason/layer/hod carrier
14.  Burner operator
15.  Carpenter/woodworker/cabinetmaker
16.  Chipper
17.  Clerical/office worker
18.  Construction - general
19.  Custodian/janitor in office/residential building
20.  Custodian/janitor in plant/manufacturing facility
21.  Electrician/inspector/worker
22.  Engineer
23.  Firefighter
24.  Fireman
25.  Flooring installer/tile installer/tile mechanic
26.  Foundry worker
27.  Furnace worker/repairman/installer
28.  Glass worker
29.  Heavy equipment operator (includes truck, forklift, & crane)
30.  Insulator
31.  Iron worker
32.  Joiner
33.  Laborer
34.  Longshoreman
35.  Machinist/machine operator
36.  Millwright/mill worker
37.  Mixer/bagger
38.  Non-asbestos miner
39.  Non-occupational/residential
40.  Painter
41.  Pipefitter
42.  Plasterer
43.  Plumber - install/repair
44.  Power plant operator
45.  Professional (*e.g.*, accountant, architect, physician)
46.  Railroad worker/carman/brakeman/machinist/conductor
47.  Refinery worker
48.  Remover/installer of gaskets
49.  Rigger/stevedore/seaman
50.  Rubber/tire worker
51.  Sandblaster
52.  Sheet metal worker/sheet metal mechanic
53.  Shipfitter/shipwright/ship builder
54.  Shipyard worker (md. repair, maintenance)
55.  Steamfitter
56.  Steelworker
57.  Warehouse worker
58.  Welder/blacksmith
59.  Other

### Industry Codes

001.  Asbestos abatement/removal
002.  Aerospace/aviation
100.  Asbestos mining
101.  Automotive
102.  Chemical
103.  Construction trades
104.  Iron/steel
105.  Longshore
106.  Maritime
107.  Military (other than U.S. Navy)
108.  Non-asbestos products manufacturing
109.  Petrochemical
110.  Railroad
111.  Shipyard-construction/repair
112.  Textile
113.  Tire/rubber
114.  U.S. Navy
115.  Utilities
116.  Grace asbestos manufacture or milling
117.  Non-Grace asbestos manufacture or milling
118.  Other

**E.  PART IV -- Indirect Exposure to Grace Asbestos-Containing Products**
In Part IV, please provide the information requested for any injury alleged to have been caused
asbestos-containing products through contact/proximity with another injured person.  If you
contact/proximity with multiple injured persons, please complete a separate Part IV for each injured person.  For your
convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.

**F.  PART V -- Exposure to Non-Grace Asbestos-Containing Products**
In Part V, please provide the information requested for each party against which you have filed a lawsuit and/or claim
alleging exposure to asbestos-containing products other than Grace products.  If you filed such lawsuits and/or claims against
multiple parties, the Court has ordered that you must complete a separate Part V for each party.  If exposure was in
connection with your employment, use the list of occupation and industry codes in Part III to indicate your occupation and
the industry in which you worked.  For your convenience, additional copies of Part V are attached as Appendix F to this
Questionnaire.

**G.  PART VI -- Employment History**
In Part VI, please provide the information requested for each industrial job you have held, other than jobs already listed in
Parts III or V.  Use the list of occupation and industry codes in the instructions to Part III to indicate your occupation and the
industry in which you worked for each job.  Please use the copy of Part VI attached as Appendix G to this Questionnaire if
additional space is needed.

**H.  PART VII -- Litigation and Claims Regarding Asbestos and/or Silica**
In Part VII, please describe any lawsuits and/or claims that were filed by you or on your behalf regarding asbestos or silica.

**I.  PART VIII -- Claims by Dependents or Related Persons**
Part VIII is to be completed only by dependents or related persons (such as spouse or child) of an injured person who sued
the Debtors before April 2, 2001 for an asbestos-related personal injury or wrongful death claim against Grace not involving
physical injury to him-/herself on account of his/her own exposure.  One example of such a claim would be a claim for loss
of consortium.  If you are asserting such a claim, complete the entire Questionnaire, providing all information and
documentation regarding the injured person.

**J.  PART IX -- Supporting Documentation**
In Part IX, please mark the boxes next to each type of document that you are submitting with this Questionnaire.  As
indicated in the instructions to Parts II and III, this Questionnaire must be accompanied by copies, with access to originals
upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that (a) support or
conflict with your diagnosis and/or (b) establish exposure to Grace asbestos-containing products as having a substantial
causal role in the development of the medical diagnoses, and/or conditions claimed.  Original documents provided to Grace
will be returned within a reasonable time after its professionals and experts have reviewed the documents.

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in
which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please
indicate the documents for which you are seeking reimbursement and attach a receipt for such cost.

**K.  PART X -- Attestation that Information is True, Accurate and Complete**
By signing Part X, you, the injured person, are attesting and swearing, under penalty of perjury, that, to the best of your
knowledge, all of the information in this Questionnaire is true, accurate and complete.  If the injured person is deceased, then
the executor of the person's will (or similar estate representative) must complete and sign Part X on behalf of the injured
person.

The legal representative of the injured person must complete and sign Part X where indicated.

| PART I: IDENTITY OF INJURED PERSON AND LEGAL COUNSEL |
|---|

WR GRACE PIQ  60270-0007

### a. GENERAL INFORMATION

1. Name of Claimant: _____ 2. Gender: ☐ Male ☐ Female

         First             MI           Last

3. Race (for purposes of evaluating Pulmonary Function Test results):....................☐ White/Caucasian

                                               ☐ African American

                                               ☐ Other

4. Last Four Digits of Social Security Number: __ __ __ __     5. Birth Date: __ __ / __ __ / __ __ __ __

6. Mailing Address: _____

               Address           City          State/Province     Zip/Postal Code

7. Daytime Telephone Number:.........................................................( __ __ __ ) __ __ __ - __ __ __ __

### b. LAWYER'S NAME AND FIRM

1. Name of Lawyer: _____

2. Name of Law Firm With Which Lawyer is Affiliated: _____

3. Mailing Address of Firm: _____

               Address           City          State/Province     Zip/Postal Code

4. Law Firm's Telephone Number or Lawyer's Direct Line:............................( __ __ __ ) __ __ __ - __ __ __ __

    ☐ Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in lieu of sending such materials to you.

### c. CAUSE OF DEATH (IF APPLICABLE)

1. Is the injured person living or deceased?...........................................☐ Living   ☐ Deceased

    If deceased, date of death: ...............................................................__ __ / __ __ / __ __ __ __

2. If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete the following:

    Primary Cause of Death (as stated in the Death Certificate): _____

    Contributing Cause of Death (as stated in the Death Certificate): _____

| PART II: ASBESTOS-RELATED CONDITION(S) |
|---|

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1. Please check the box next to the condition being alleged:

    ☐ Asbestos-Related Lung Cancer        ☐ Mesothelioma

    ☐ Asbestosis                     ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)

    ☐ Other Asbestos Disease       ☐ Clinically Severe Asbestosis

    a. Mesothelioma: If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following (check all that apply):

        ☐ diagnosis from a pathologist certified by the American Board of Pathology

        ☐ diagnosis from a second pathologist certified by the American Board of Pathology

        ☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial causal role in the development of the condition

        ☐ other (please specify):_____

## PART II: ASBESTOS-RELATED CONDITION(S) (Continued)



WR GRACE PIQ 60270-0008

**b. Asbestos-Related Lung Cancer:** If alleging Asbestos-Related Lung Cancer, were you lung cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐ other (please specify): _____

**c. Other Cancer:**

(i) If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐ colon ☐ pharyngeal ☐ esophageal ☐ laryngeal ☐ stomach cancer

☐ other, please specify: _____

(ii) Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☐ other (please specify): _____

WR GRACE PIQ 60270-0009

## PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)

· d.  **Clinically Severe Asbestosis:**  If alleging Clinically Severe Asbestosis, was your diagnosis based (check all that apply):

☐  diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine.

☐  a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐  a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health .

☐  asbestosis determined by pathology

☐  a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating total lung capacity less than 65% predicted

☐  a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐  a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐  other (please specify): _____

e.  **Asbestosis:**  If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

☐  diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐  a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐  a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐  asbestosis determined by pathology

☐  a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐  a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐  other (please specify): _____

## PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

WR GRACE PIQ 60270-0010

**f.    Other Asbestos Disease:**  If alleging any asbestos-related injuries, medical diagnoses, and/or those above, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ diagnosis determined by pathology

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a second B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  other than those described above

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEVI/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a pulmonary function test other than that discussed above

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☐ a CT Scan or similar testing

☐ a diagnosis other than those above

☐ other (please specify): _____

[REMAINDER OF PAGE INTENTIONALLY BLANK]

4

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE PIQ 60270-0011

2. **Information Regarding Diagnosis**

Date of Diagnosis: ....................................................................... __ __ / __ __ / __ __ __ __

Diagnosing Doctor's Name: _____

Diagnosing Doctor's Specialty: _____

Diagnosing Doctor's Mailing Address: _____
Address

_____
City                                          State/Province                          Zip/Postal Code

Diagnosing Doctor's Daytime Telephone Number: ............................: ( __ __ __ ) __ __ __ - __ __ __ __

**With respect to your relationship to the diagnosing doctor, check all applicable boxes:**

Was the diagnosing doctor your personal physician?.................................................. ☐ Yes  ☐ No

Was the diagnosing doctor paid for the diagnostic services that he/she performed?.................. ☐ Yes  ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor?........... ☐ Yes  ☐ No

Was the diagnosing doctor referred to you by counsel?.................................................. ☐ Yes  ☐ No

Are you aware of any relationship between the diagnosing doctor and your legal counsel?.................. ☐ Yes  ☐ No

*If yes, please explain:* _____

_____

**Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the diagnosis?** ......................................................... ☐ Yes  ☐ No

**Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?** ......................................................... ☐ Yes  ☐ No

**Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to diagnosis?** ......................................................... ☐ Yes  ☐ No

**Did the diagnosing doctor perform a physical examination?** .................................. ☐ Yes  ☐ No

**Do you currently use tobacco products?** ......................................................... ☐ Yes  ☐ No

**Have you ever used tobacco products?** ......................................................... ☐ Yes  ☐ No

*If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco products and the dates and frequency with which such products were used:*

☐  **Cigarettes**      **Packs Per Day (half pack = .5)** _____   **Start Year** __ __ __ __   **End Year** __ __ __ __

☐  **Cigars**           **Cigars Per Day** _____                    **Start Year** __ __ __ __   **End Year** __ __ __ __

☐  **If Other Tobacco Products, please specify (e.g., chewing tobacco):** _____
         **Amount Per Day** _____                    **Start Year** __ __ __ __   **End Year** __ __ __ __

**Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")?** ................... ☐ Yes  ☐ No

*If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:*

_____

3. **Information Regarding Chest X-Ray**

**Please check the box next to the applicable location where your chest x-ray was taken (check one):**

☐  Mobile laboratory   ☐ Job site   ☐ Union Hall   ☐ Doctor office   ☐ Hospital   ☐ Other: _____

**Address where chest x-ray taken:** _____
Address

_____
City                                          State/Province                          Zip/Postal Code

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE PIQ 60270-0012

**4. Information Regarding Chest X-Ray Reading**

Date of Reading: __ __ / __ __ / __ __ __ __          ILO score: _____

Name of Reader: _____

Reader's Daytime Telephone Number:........................................ ( __ __ __ ) __ __ __ - __ __ __ __

Reader's Mailing Address: _____
                          Address

_____
City                                     State/Province                 Zip/Postal Code

With respect to your relationship to the reader, check all applicable boxes:

Was the reader paid for the services that he/she performed.............................................. ☐ Yes  ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the reader? ........................... ☐ Yes  ☐ No

Was the reader referred to you by counsel?........................................................................ ☐ Yes  ☐ No

Are you aware of any relationship between the reader and your legal counsel? ........................ ☐ Yes  ☐ No

*If yes, please explain:* _____

Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?

.................................................................................................................................... ☐ Yes  ☐ No

*If the reader is not a certified B-reader, please describe the reader's occupation, specialty, and the method through which the reading was made:* _____

**5. Information Regarding Pulmonary Function Test:** ..............................Date of Test: __ __ / __ __ / __ __ __ __

List your height in feet and inches when test given: ................................................_____ ft _____ inches

List your weight in pounds when test given: ..............................................................................._____ lbs

Total Lung Capacity (TLC):..............................................................................._____% of predicted

Forced Vital Capacity (FVC): ..........................................................................._____% of predicted

FEV1/FVC Ratio:.............................................................................................._____% of predicted

Name of Doctor Performing Test (if applicable): _____

Doctor's Specialty: _____

Name of Clinician Performing Test (if applicable): _____

Testing Doctor or Clinician's Mailing Address: _____
                                               Address

_____
City                                     State/Province                 Zip/Postal Code

Testing Doctor or Clinician's Daytime Telephone Number: ........................ ( __ __ __ ) __ __ __ - __ __ __ __

Name of Doctor Interpreting Test: _____

Doctor's Specialty: _____

Interpreting Doctor's Mailing Address: _____
                                       Address

_____
City                                     State/Province                 Zip/Postal Code

Interpreting Doctor's Daytime Telephone Number: ............................... ( __ __ __ ) __ __ __ - __ __ __ __

6

## PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)

WR GRACE PIQ 60270-0013

**With respect to your relationship to the doctor or clinician who performed the pulmonary func[...] applicable boxes:**

If the test was performed by a doctor, was the doctor your personal physician? ......................................... ☐ Yes ☐ No

Was the testing doctor and/or clinician paid for the services that he/she performed? ................................ ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:*. _____

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician?.. ☐ Yes ☐ No

Was the testing doctor or clinician referred to you by counsel? ........................................................... ☐ Yes ☐ No

Are you aware of any relationship between either the doctor or clinician and your legal counsel? ............. ☐ Yes ☐ No

*If yes, please explain:* _____

**Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test?** ........................................................................... ☐ Yes ☐ No

**With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:**

Was the doctor your personal physician? ................................................................................... ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? ............................................................. ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? ........................ ☐ Yes ☐ No

Was the doctor referred to you by counsel? ................................................................................. ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? ..................................... ☐ Yes ☐ No

*If yes, please explain* _____

**Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed?** ............................... ☐ Yes ☐ No

6.  **Information Regarding Pathology Reports:**

Date of Pathology Report: ........................................................... __ __ / __ __ / __ __ __ __

Findings:  _____

Name of Doctor Issuing Report: _____

Doctor's Specialty: _____

Doctor's Mailing Address: _____
                           Address

City                                    State/Province                        Zip/Postal Code

Doctor's Daytime Telephone Number: ........................................... ( __ __ __ ) __ __ __ - __ __ __ __

**With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:**

Was the doctor your personal physician? ................................................................................. ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? ........................................................... ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? ........................... ☐ Yes ☐ No

Was the doctor referred to you by counsel? ............................................................................... ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? ..................................... ☐ Yes ☐ No

*If yes, please explain:* _____

**Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?**

............................................................................................................................. ☐ Yes ☐ No

---

**PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE PIQ 60270-0014

7.  **With respect to the condition alleged, have you received medical treatment from a doctor for**
....................................................................................................................................................☐ Yes ☐ No

*If yes, please complete the following:*

**Name of Treating Doctor:** _____

**Treating Doctor's Specialty:** _____

**Treating Doctor's Mailing Address:** _____

                                 Address

_____

City                                   State/Province                  Zip/Postal Code

**Treating Doctor's Daytime Telephone number:** ........................................... ( __ __ __ ) __ __ __ - __ __ __ __

**Was the doctor paid for the services that he/she performed?** .................................................☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

**Did you retain counsel in order to receive any of the services performed by the doctor?** ...................☐ Yes ☐ No

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

## PART III: DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Grace asbestos-containing products

(b) A worker who personally removed or cut Grace asbestos-containing products

(c) A worker who personally installed Grace asbestos-containing products

(d) A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(e) A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f) If other, please specify.

**Site of Exposure:**

Site Name: _____    Location: _____

Site Type: ☐ Residence  ☐ Business    Site Owner: _____

Employer During Exposure: _____

Unions of which you were a member during your employment: _____

| | Product(s) | Basis for Identification of Each Grace Product | Dates and Frequency of Exposure (hours/day, days/year) | Occupation Code *If Code 59, specify.* | Industry Code *If Code 118, specify.* | Was exposure due to working in or around areas where product was being installed, mixed, removed, or cut? *If Yes, please indicate your regular proximity to such areas* | Nature of Exposure |
|---|---|---|---|---|---|---|---|
| Job 1 Description: | | | | | | | |
| Job 2 Description: | | | | | | | |
| Job 3 Description: | | | | | | | |
| Job 4 Description: | | | | | | | |
| Job 5 Description: | | | | | | | |
| Job 6 Description: | | | | | | | |

9

WR GRACE PIQ 60270-0015

## PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PR◌

WR GRACE PIQ 60270-0016

1. Are you asserting an injury caused by exposure to Grace asbestos-containing products throu◌◌◌◌◌◌ ◌◌◌◌◌◌ ◌◌◌◌◌◌◌ with another injured person? ................................................................................................................ ☐ Yes ☐ No

   *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to Grace asbestos-containing products. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.*

2. Please indicate the following information regarding the other injured person:

   Name of Other Injured Person: _____ Gender: ☐ Male ☐ Female

   Last Four Digits of Social Security Number: __ __ __ __        Birth Date: __ __ / __ __ / __ __

3. What is your Relationship to Other Injured Person: ................................... ☐ Spouse ☐ Child ☐ Other

4. Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:

   _____

5. Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products:

   From: __ __ / __ __ / __ __ __ __     To: __ __ / __ __ / __ __ __ __

6. Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:

   _____

7. Has the Other Injured Person filed a lawsuit related to his/her exposure? ........................ ☐ Yes ☐ No

   *If yes, please provide caption, case number, file date, and court name for the lawsuit:*

   Caption: _____

   Case Number: _____     File Date: __ __ / __ __ / __ __ __ __

   Court Name: _____

8. Nature of Your Own Exposure to Grace Asbestos-Containing Product:

   _____

9. Dates of Your Own Exposure to Grace Asbestos-Containing Product:

   From: __ __ / __ __ / __ __ __ __     To: __ __ / __ __ / __ __ __ __

10. Your Basis for Identification of Asbestos-Containing Product as Grace Product:

    _____


**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

## PART V: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products
(b) A worker who personally removed or cut Non-Grace asbestos-containing products
(c) A worker who personally installed Non-Grace asbestos-containing products

(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(f) If other, please specify.

WR GRACE PIQ 60270-0017

| Party Against which Lawsuit or Claim was Filed: | Product(s) | Dates and Frequency of Exposure (hours/day, days/year) | Occupation Code If Code 59, specify. | Industry Code If Code 118, specify. | Was exposure due to working in or around areas where product was being installed, mixed, removed, or cut? If Yes, please indicate your regular proximity to such areas | Nature of Exposure |
|---|---|---|---|---|---|---|
| **Site of Exposure 1** Site Name:___ Address:___ City and State:___ Site Owner:___ | Job 1 Description: | | | | | |
| | Job 2 Description: | | | | | |
| | Job 3 Description: | | | | | |
| **Site of Exposure 2** Site Name:___ Address:___ City and State:___ Site Owner:___ | Job 1 Description: | | | | | |
| | Job 2 Description: | | | | | |
| | Job 3 Description: | | | | | |
| **Site of Exposure 3** Site Name:___ Address:___ City and State:___ Site Owner:___ | Job 1 Description: | | | | | |
| | Job 2 Description: | | | | | |
| | Job 3 Description: | | | | | |

11

## PART VI: EMPLOYMENT HISTORY



WR GRACE PIQ 60270-0018

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial work, including your current employment. For each job, include your employer, location of employment, and dates of employment. Only include jobs at which you worked for at least one month. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**Occupation Code:** _____ If Code 59, specify: _____

**Industry Code:** _____ If Code 118, specify: _____

**Employer:** _____

**Beginning of Employment:** \_\_ \_\_ / \_\_ \_\_ / \_\_ \_\_ \_\_ \_\_    **End of Employment:** \_\_ \_\_ / \_\_ \_\_ / \_\_ \_\_ \_\_ \_\_

**Location:** _____
　　　　　　　Address

_____

City　　　　　　　　　　　　　　　　State/Province　　　　　　　　Zip/Postal Code

**Occupation Code:** _____ If Code 59, specify: _____

**Industry Code:** _____ If Code 118, specify: _____

**Employer:** _____

**Beginning of Employment:** \_\_ \_\_ / \_\_ \_\_ / \_\_ \_\_ \_\_ \_\_    **End of Employment:** \_\_ \_\_ / \_\_ \_\_ / \_\_ \_\_ \_\_ \_\_

**Location:** _____
　　　　　　　Address

_____

City　　　　　　　　　　　　　　　　State/Province　　　　　　　　Zip/Postal Code

**Occupation Code:** _____ If Code 59, specify: _____

**Industry Code:** _____ If Code 118, specify: _____

**Employer:** _____

**Beginning of Employment:** \_\_ \_\_ / \_\_ \_\_ / \_\_ \_\_ \_\_ \_\_    **End of Employment:** \_\_ \_\_ / \_\_ \_\_ / \_\_ \_\_ \_\_ \_\_

**Location:** _____
　　　　　　　Address

_____

City　　　　　　　　　　　　　　　　State/Province　　　　　　　　Zip/Postal Code

**Occupation Code:** _____ If Code 59, specify: _____

**Industry Code:** _____ If Code 118, specify: _____

**Employer:** _____

**Beginning of Employment:** \_\_ \_\_ / \_\_ \_\_ / \_\_ \_\_ \_\_ \_\_    **End of Employment:** \_\_ \_\_ / \_\_ \_\_ / \_\_ \_\_ \_\_ \_\_

**Location:** _____
　　　　　　　Address

_____

City　　　　　　　　　　　　　　　　State/Province　　　　　　　　Zip/Postal Code

## PART VII: LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SIL

WR GRACE PIQ 60270-0019

### a. LITIGATION

1. Have you ever been a plaintiff in a lawsuit regarding asbestos or silica?.................................... ☐ Yes ☐ No

   *If yes, please complete the rest of this Part VII(a) for each lawsuit.   For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2. Please provide the caption, case number, file date, and court name for the lawsuit you filed:

   Caption: _____

   Case Number: _____ File Date: __ __ / __ __ / __ __ __ __

   Court Name: _____

3. Was Grace a defendant in the lawsuit? ................................................................ ☐ Yes ☐ No

4. Was the lawsuit dismissed against any defendant? ...................................... ☐ Yes ☐ No

   *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

   _____

   _____

5. Has a judgment or verdict been entered?.................................................. ☐ Yes ☐ No

   *If yes, please indicate verdict amount for each defendant(s):* _____

6. Was a settlement agreement reached in this lawsuit? ................................ ☐ Yes ☐ No

   *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

   a. Settlement amount for each defendant: _____

   b. Applicable defendants: _____

   c. Disease or condition alleged: _____

   d. Disease or condition settled (if different than disease or condition alleged): _____

7. Were you deposed in this lawsuit? ............................................................ ☐ Yes ☐ No

   *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.*

### b. CLAIMS

1. Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? ...................................... ☐ Yes ☐ No

   *If yes, please complete the rest of this Part VII(b).  If no, please skip to Part VIII.*

2. Date the claim was submitted:................................................................ __ __ / __ __ / __ __ __ __

3. Person or entity against whom the claim was submitted: _____

4. Description of claim: _____

5. Was claim settled? ................................................................................ ☐ Yes ☐ No

6. Please indicate settlement amount: ............................................... $_____

7. Was the claim dismissed or otherwise disallowed or not honored? .......................... ☐ Yes ☐ No

   *If yes, provide the basis for dismissal of the claim:* _____

13

WR GRACE PIQ  60270-0020

## PART VIII:  CLAIMS BY DEPENDENTS OR RELATED PERSONS

Name of Dependent or Related Person: _____ Gender: ☐ Male ☐ Female

Last Four Digits of Social Security Number: __ __ __ __          Birth Date: __ __ / __ __ / __ __ __ __

Financially Dependent:..................................................................................................☐ Yes ☐ No

Relationship to Injured Party: ☐ Spouse ☐ Child ☐ Other  If other, please specify _____

Mailing  Address: _____
                  Address

_____
City                                State/Province                    Zip/Postal Code

Daytime Telephone number: ..................................................... ( __ __ __ ) __ __ __ - __ __ __ __

## PART IX:  SUPPORTING DOCUMENTATION

Please use the checklists below to indicate which documents you are submitting with this form.

**Copies:**

☐ Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☐ Pathology reports
☐ Supporting documentation of exposure to Grace asbestos-containing products
☐ Supporting documentation of other asbestos exposure

☐ X-rays
☐ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Depositions from lawsuits indicated in Part VII of this Questionnaire
☐ Death Certification

**Originals:**

☐ Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☐ Pathology reports
☐ Supporting documentation of exposure to Grace asbestos-containing products

☐ Supporting documentation of other asbestos exposure
☐ X-rays
☐ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Death Certification

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:

_____
_____

## PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

The information provided in this Questionnaire must be accurate and truthful.  This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim.  The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both.  18 U.S.C. §§ 152 & 3571.
**TO BE COMPLETED BY THE INJURED PERSON.**

I swear, **under penalty of perjury**, that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate and complete.

Signature: _____          Date: __ __ / __ __ / __ __ __ __

Please Print Name: _____

**TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.**

I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete.

Signature: _____          Date: __ __ / __ __ / __ __ __ __

Please Print Name: _____


WR GRACE PIQ 60270-0021

01/26/2005 22:33 FAX  2266724713        LawFirmOfAlwynHLuckey

74-A-352-WL

**Lewis J. Rubin, M.D.**
6404 Avenida Wilfredo
La Jolla, CA 92037
(858) 551 1283

October 28, 2004

Alwyn H. Luckey
P.O. Box 724
2016 Bienville Blvd.
Ocean Springs, MS 39564

Re:

**REDACTED**

Dear Mr. Luckey:

At your request I have reviewed the medical and occupational history records that your office provided regarding the above named individual. The records reflect that he worked as a machine helper, crane operator, millwright helper and laborer at Alabama Drydock from 1941 to 1944, and at US Steel from 1945 to 1981; that he had occupational exposure to asbestos, and that he had a bronchogenic carcinoma. He is reported to have had a 5-pack year smoking history.

Based on the data provided, it is my opinion that                developed this malignancy, at least in part, due to his occupational exposure to asbestos.

I would be happy to review any additional medical records that are made available and provide an addendum to this report, if requested.

Sincerely yours,

Lewis J. Rubin, M.D.

REDACTED



WR GRACE PIQ 80270-0022

04/05/2005 11:48 FAX   2288724719          LawFirmOfAlwynRLuckey

THE FRONT OF THIS DOCUMENT IS PINK - THE BACK OF THIS DOCUMENT IS BLUE AND HAS AN ARTIFICIAL WATERMARK - HOLD AT AN ANGLE TO VIEW

**This is a true and exact copy of the record on file with the Jefferson County Department of Health**

*Deborah McIntyre*
Signature of Local or Deputy Registrar

October 21, 2002
Date of Issue

REDACTED

# ALABAMA
## CERTIFICATE OF DEATH

State File Number **101**

| | |
|---|---|
| 1 DECEASED—NAME | 2 DATE OF DEATH September 10, 2002 | 3 COUNTY OF DEATH Jefferson |
| 4 CITY, TOWN, OR LOCATION OF DEATH AND ZIP CODE | 5 INSIDE CITY LIMITS Yes | 6 PLACE OF DEATH Black |
| 7 HOSPITAL | 8 OF HISPANIC ORIGIN No | 9 RACE Black | 10 SEX Male |
| 11 AGE 76 | 12 UNDER 1 YEAR | 13 UNDER 1 DAY | 14 MARITAL STATUS Divorced | 15 DECEASED'S SOCIAL SECURITY NUMBER |
| 16 EDUCATION Sixth | 17 MARITAL STATUS Divorced | | 18 SURVIVING SPOUSE | 19 EVER IN US ARMED FORCES NO |
| 19 STATE OF BIRTH | 20 RESIDENCE—STATE | 21 COUNTY | 22 CITY, TOWN, OR LOCATION AND ZIP CODE |
| 23 INSIDE CITY LIMITS | 24 STREET AND NUMBER | | 25 INFORMANT—Name and Address |
| 26 USUAL OCCUPATION U.S. Steel Mining | 27 KIND OF BUSINESS OR INDUSTRY Laborer Miner |
| 28 FATHER—NAME | | 29 MAIDEN NAME OF MOTHER |
| 30 DISPOSITION Burial | 31 DATE OF DISPOSITION Sept 14, 2002 | 32 CEMETERY OR CREMATORY—Name Elmwood | 33 LOCATION B'ham, AL |
| 34 FUNERAL HOME Roberts C.P. Chapel 1337 Bessemer Rd. B'ham AL 35208 | 35 SIGNATURE Carolyn Johnson | 36 DATE SIGNED Sept 24, 2002 |

| 37 Certifying Physician / Medical Examiner — Coroner | 38 DATE SIGNED 9/27/02 |
| Signature: *Ricky L. Fennel M.D.* | |
| 39 TIME AND DATE OF DEATH 1820 n 9/10/02 | 40 NAME AND TITLE OF PERSON WHO PRONOUNCED DEATH Ricky L. Fennel M.D. |
| Bartic Health Center Pleasing Care AL 35037 | 41 DATE PRONOUNCED 2:15pm |
| 43 REGISTRAR Signature *Sherry L. Moore* | October 18, 2002 |

**For State or County use only**

## MEDICAL CERTIFICATION

| 46 PART I | 47 APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH |
| IMMEDIATE CAUSE → Lung Cancer | |
| DUE TO (OR AS A CONSEQUENCE OF) Hypothyroid | |
| DUE TO (OR AS A CONSEQUENCE OF) Diabetes Type 2 | |

| 47 PART II | 48 WAS AN AUTOPSY PERFORMED |
| 50 MANNER OF DEATH Natural Causes | 51 ACCIDENT | 52 | 53 DATE OF INJURY | 54 HOUR OF INJURY |
| 55 INJURY AT WORK | 56 PLACE OF INJURY | 57 LOCATION OF INJURY |

This is a legal record and must be filed within five (5) days after death.

APR-02-2002  16:24        WILLIAME BAILEY LAW FIRM        713  713 643 62



WR GRACE PIQ 80270-0023

**REDACTED**

# ✝ BAPTIST
# PRINCETON

701 Princeton Avenue
Birmingham, Alabama 35211-1399

DEPARTMENT OF PATHOLOGY
Paul J. Biggs, M.D.
Arthur S. Ludwig, Jr., M.D.
Mary Louise Gierry-Force, M.D.
Gloria K. Hutcheson, M.D.
Henning F. Prentice, PhD.
Kim Parker, M.D.
O. Ralph Grone, M.D.
D. Scott Day, M.D.

Patient:

Med Rec #:  (1000)000312621
Patient #:  60559432
Age:  76 YRS B M  DOB:
Location:  3W  3122-A
PTYPE:  I

Accession #:  P-02-001696

Proc Date:  03/22/02

Report Date: 03/23/02

Req Physician:  HALL JR ,WILLIAM T.
Copy To:  HALL JR ,WILLIAM T.
LOTT III ,JAMES H

CUA# 010DGC1065

SURGICAL PATHOLOGY

TISSUE(S) SUBMITTED:
1.  Bx x 8 RUL.

CLINICAL HISTORY:
Pt with RLL mass r/o cancer.

GROSS DESCRIPTION:
The specimen is received in a single container of formalin labeled "bx x 8
RUL" and consists of multiple fragments of tan white to red soft irregular
tissue measuring in aggregate 0.5 x 0.1 x 0.1 cm. It is entirely submitted in
a single cassette.

JQ /VA

MICROSCOPIC EXAMINATION AND DIAGNOSIS:
(Lung, right upper lobe) - Non-small cell carcinoma favor squamous cell
type.

*Att: Steve. J. Kheikher*

*Att: Teresa Clark*

I attest to having personally
viewed the slide(s) and approve
the above interpretation.

03/23/02        Verified by: _____
DSD/ft

PATHOLOGY REPORT                    Page 1        End of Report

TOTAL P.02



WR GRACE PIQ 60270-0024

# LARRY M. MITCHELL, M.D.

### INTERNAL MEDICINE

BUFORD PLAZA, SUITE 1
3055 McFARLAND BOULEVARD
NORTH PORT, AL 35476

TELEPHONE (205)-339-9533

**DATE:**        October 25, 1994

**NAME:**
**ADDRESS:**

## REDACTED

**SSN:**
**DOB:**
**DATE OF EXPOSURE:**   1941 to 1981 intermittently

**CHIEF COMPLAINT:**   Dyspnea

**PRESENT ILLNESS:**     The patient relates a progressive onset of dyspnea over the past few years to a class 2* limitation.  (Dyspnea with fast walking on level ground or when walking up a hill;  patient can keep pace with persons of same age and body build on level ground but not on hills or stairs.)  This is associated with a cough and night sweats.  He has had some chest pain.  There is no history of pneumonia.  He quit smoking 3 years ago after a half pack a day 10 year history of cigarette smoking.

**OCCUPATIONAL EXPOSURE HISTORY:**     The man was a machine helper, crane operator, millwright helper and etc., he worked from 1941 to 1944 at Alabama Dry Dock and then from 1945 to 1981 at U.S. Steel. During his employment, he had occasion to be intermittently exposed to asbestos materials.

**PAST HISTORY:**   No history of diabetes, tuberculosis or cancer.  He has had no significant operations.  He is hypertensive.  He denies allergies.

**FAMILY HISTORY:**      No history of tuberculosis or lung disease.  Positive for hypertensive disease and diabetes.

**SOCIAL HISTORY:**   He is divorced.  He has 9 children.  He does not smoke or drink alcoholic beverages.

**REVIEW OF SYSTEMS:** There is no history of connective tissue disease, cancer chemotherapy, pulmonary toxic drugs or lung irradiation.



WR GRACE PIQ 60270-0026

**REDACTED**

Page Two

<u>PHYSICAL EXAMINATION</u>:

 <u>GENERAL</u>:  He is a well developed well nourished black man in no distress.
      He is 68" tall and weighs 143 lbs.

 <u>VITAL SIGNS</u>:  Blood Pressure -  142/88
        Pulse    -  70
        Respiration

 <u>HEAD</u>: .  Normochephalis.

 <u>NECK</u>:  Supple without masses.

 <u>CHEST</u>: He has a normal excursion.  Vocal fremitus is equal bilaterally.  Percussion note is within
   normal limits.  On auscultation the chest is clear.

 <u>EXTREMITIES</u>: No clubbing or cyanosis.

 <u>SKIN, NAILS & HAIR</u>:  Within normal limits.

<u>PULMONARY FUNCTION TESTS</u>:  Pulmonary function test done on 10/25/94 reveals a forced vital capacity
of 43% of predicted.  Total lung capacity is reduced to 67% of predicted.  The DLCO is calculated at 38% of
predicted.

<u>CHEST X-RAY</u>:  Please see attached radiographic report.

<u>IMPRESSION</u>:  Pulmonary asbestosis.

<u>DISCUSSION</u>:  The diagnosis "Pulmonary asbestosis" means that this individual is suffering from an
abnormality of the parenchymal lung tissue consistent with interstitial fibrosis as a result of exposure to asbestos
products.



**REDACTED**

Page Three

RECOMMENDATIONS:    1. Chest x-ray every six months.
                    2. Follow-up by local physician.



_____
Larry M. Mitchell, M.D.

*References

1)   Guides to the Evaluation of Permanent Impairment, ed. 2.  Chicago, American Medical Association, 1984,
by permission.



WR GRACE PIQ 60270-0027

Pulmonary Testing Services, Inc.
P.O. Box 2205
Pascagoula, Mississippi 39569
Pulmonary Function Report

**REDACTED**

Name:
Age:                68 Years
Sex/Race:           Male  / Black
Height:             68 in   173 cm
Weight:             143 lbs  65 kg

ID#:T5494
Room:Out/P   Date:25-OCT-94
Temp/Pres: 24 C / 760 mmHg
Physician:Larry Mitchell
Tested by:R Colgan C.R.T.T.

|  |  | PRED | PRE-RX BEST | PRE-RX %PRED | POST-RX BEST | POST-RX %PRED | %CHG |
|---|---|---|---|---|---|---|---|
| SPIROMETRY | (BTPS) |  |  |  |  |  |  |
| FVC | Liters | 4.26 | 1.83 # | 43* |  |  |  |
| FEV1 | Liters | 3.30 | 1.44 # | 44* |  |  |  |
| FEV1/FVC | % | 78 | 79 |  |  |  |  |
| FEF25-75% | L/Sec | 3.07 | 1.48 | 48* |  |  |  |
| IsoFEF25-75 | L/Sec | 3.07 | 1.48 | 48* |  |  |  |
| FEF75-85% | L/Sec |  | 0.36 |  |  |  |  |
| FEF50% | L/Sec |  | 1.98 |  |  |  |  |
| PEF | L/Sec |  | 1.99 |  |  |  |  |
| FET100% | Sec |  | 2.8 |  |  |  |  |
| I C | Liters | 4.26 | 1.75 # | 41* |  |  |  |
| P1. | L/Sec |  | 1.55 |  |  |  |  |
| FEF50/FIF50 | Unitless |  | 4.20 |  |  |  |  |
| Vol Extrap | Liters |  | 0.24 |  |  |  |  |
| E Code |  |  | 11111 |  |  |  |  |

|  |  | PRED | PRE-RX AVG | PRE-RX %PRED | POST-RX AVG | POST-RX %PRED | %CHG |
|---|---|---|---|---|---|---|---|
| LUNG VOLUMES | (BTPS) |  |  |  |  |  |  |
| VC | Liters | 4.26 | 1.95 # | 46* |  |  |  |
| TLC | Liters | 6.62 | 4.40 # | 67* |  |  |  |
| RV | Liters | 2.30 | 2.45 | 107 |  |  |  |
| RV/TLC | % | 35 | 56 # |  |  |  |  |
| FRC He | Liters | 3.47 | 2.50 | 72 |  |  |  |
| ERV | Liters |  | 0.05 |  |  |  |  |
| IC | Liters |  | 1.90 |  |  |  |  |

# = OUTSIDE 95% CONFIDENCE INTERVAL    * = OUTSIDE NORMAL RANGE



PAGE 2

## Pulmonary Function Report

Name:  **REDACTED**                           ID#:   **REDACTED**

|  |  | PRED | PRE-RX AVG | %PRED | POST-RX AVG | %PRED | %CHG |
|---|---|---|---|---|---|---|---|
| | DIFFUSION | | | | | | |
| DLCO | ml/Min/mmHg | 30.6 | 11.5 # | 38* | | | |
| DLCO/VA | 1/Min/mmHg | 4.77 | 3.17 # | 66* | | | |
| Krogh's K | 1/Min | | 2.73 | | | | |
| VA | Liters | | 3.63 | | | | |
| CO T.C. | Sec | | 21.9 | | | | |
| IVC | Liters | | 1.78 | | | | |
| FI He | % | | 10.0 | | | | |
| FE He | % | | 4.4 | | | | |
| FI CO | % | | 0.300 | | | | |
| FE CO | % | | 0.086 | | | | |
| BHT | Sec | | 9.40 | | | | |

# = OUTSIDE 95% CONFIDENCE INTERVAL   * = OUTSIDE NORMAL RANGE
CALIBRATION:    PRED: 3.30     ACTUAL: EXP 3.30    INSP 3.30
IPS-OL10-08 IPS-OH10-07  N-2103-4



WR GRACE PIQ 60270-0029

**Pulmonary Testing Services, Inc.**
P.O. Box 2205
Pascagoula, Mississippi 39569
Pulmonary Function Report

REDACTED                                         REDACTED

Name:.                          ID#:
Age:                68 Years    Room:Out/P    Date:25-OCT-94
Sex/Race:    Male    / Black    Temp/Pres: 24 C / 760 mmHg
Height:      68 in    173 cm    Physician:Larry Mitchell
Weight:     143 lbs    65 kg    Tested by:R Colgan C.R.T.T.



VOLUME/TIME                    ( Pre-Rx ____)



**REDACTED**

## Introduction

Pursuant to Federal Rule of Civil Procedure 26(b)(4)(B), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. Without limiting the foregoing, Claimant objects to the following provisions of the Discovery Questionnaire as violative of Fed. R. Civ. P. 26(b)(4)(B):

(1)     Claimant objects to Section C of the Instructions to the extent that it requests the completion of Part II of the Discovery Questionnaire "if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors."

(2)     Claimant objects to Section C of the Instructions to the extent that it requests the production of "any and all documents" that "support or conflict with your diagnosis."

(3)     Claimant objects to Section C of the Instructions to the extent that it requests the production of "all x-ray readings and reports."

(4)     Claimant objects to Section C of the Instructions to the extent that it requests the production of "all pulmonary function test results, including the raw data and all spirometric tracings, on which the results are based."

(5)     Claimant objects to Section J of the Instructions to the extent that it requests the production of "any and all documents" that "support or conflict with your diagnosis."

(6)     Claimant objects to Part II of the Discovery Questionnaire to the extent that it requests disclosure of "diagnoses and diagnostic tests" by "multiple doctors" concerning "previous or subsequent diagnoses or diagnostic tests that change or conflict with the original diagnoses." Claimant urges this objection with regard to all "conditions" for which disclosure is requested.

Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of any privileged communication between Claimant, and/or a representative of Claimant, and any attorney for Claimant, and/or a representative of any attorney for Claimant. In addition, pursuant to Federal Rule of Civil Procedure 26(b)(3), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of the work product of any attorney for Claimant, including but not limited to the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of Claimant. Specifically, and without limiting the foregoing, Claimant objects to the following provisions of the Discovery Questionnaire as violative of the attorney-client communication and/or attorney work product privileges:

(1)     Claimant objects to Part II of the Discovery Questionnaire to the extent that it asks if Claimant "retained counsel in order to receive any of the services performed by the diagnosing doctor."

(2)     Claimant objects to Part II of the Discovery Questionnaire to the extent that it asks if "the diagnosing doctor was referred to you by counsel."

(3)     Claimant objects to Part II of the Discovery Questionnaire to the extent that it asks if Claimant is "aware of any relationship between the diagnosing doctor and your legal counsel" unless Claimant's knowledge was obtained other than through communication with Claimant's legal counsel and/or his/her representative.

(4)     These objections are urged with regard to each instance that the above questions are asked in sections 2, 3, 4, 5, 6 and 7 of Part II of the Discovery Questionnaire.


WR GRACE PIQ 60270-0031

Claimant further objects to Part VII the Discovery Questionnaire to the extent that it seeks disclosure of information relating to litigation and claims regarding silica as irrelevant to the issues concerning Claimant's asbestos claim against W.R. Grace & Co. and/or its affiliated debtors.

.Claimant further objects to Section a.6 of Part VII of the Discovery Questionnaire to the extent that it seeks disclosure of settlements reached with other defendants that are subject to binding confidentiality agreements.

The Federal Rules provide that, where the answer to an interrogatory may be derived or ascertained from the records of the party upon whom the interrogatory has been served or from an examination, audit, or inspection of such records, including a compilation, abstract, or summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit, or inspect such records and to make copies, compilations, abstracts, or summaries. Fed. R. Civ. P. 33(d). Accordingly, Claimant hereby attaches via the enclosed CD-ROM disk, if available or applicable, the following types of documents in the possession, custody, or control of the Claimant and/or Williams Bailey Law Firm:

 (1) Interrogatory responses from state or federal court asbestos-related lawsuits;

 (2) Medical reports including, but not limited to, b-reads, linking reports, pathology reports, and other expert reports identifying or diagnosing an asbestos-related disease;

 (3) Social Security employment records;

 (4) Death certificate;

 (5) Claimant deposition;

 (6) Settlement report identifying those entities or parties from whom the Claimant has received funded settlements.

By submitting this response to the Discovery Questionnaire, Claimant does not intend to, and hereby does not, submit to the jurisdiction of the United States District Court for the District of Delaware, to the United States Bankruptcy Court for the District of Delaware, or to any other court. Claimant reserves (i) all objections to jurisdiction and/or venue, (ii) all protections afforded under Federal Rule of Civil Procedure 45 and Federal Bankruptcy Rule of Procedure 9016, and (iii) the right to jury trial afforded under 28 U.S.C. § 157(b)(5).

### PART I. IDENTITY OF INJURED PERSON AND LEGAL COUNSEL

A1. <u>Name of Claimant</u>: See above.

A2. <u>Gender</u>: To the extent provided, please refer to interrogatory responses, medical reports, death certificate, and/or Claimant deposition.

A3. <u>Race</u>: To the extent provided, please refer to interrogatory responses, medical reports, death certificate, and/or Claimant deposition.

A4. <u>Last Four Digits of Social Security Number</u>: See above.

A5. <u>Birth Date</u>: To the extent provided, please refer to interrogatory responses.

A6. <u>Mailing Address</u>: Where an interrogated party has already furnished information to the interrogating party, it is unreasonable to require the interrogated party to furnish the information again. *Richlin v. Sigma Design West, Ltd.*, 88 F.R.D. 634 (E.D. Cal. 1980). Claimant furnished this information in his/her 2019 Disclosure Statement and duplication of that endeavor is not warranted at this time.

A7. <u>Daytime Telephone Number</u>: To the extent provided, please refer to interrogatory responses.


WR GRACE PIQ 60270-0032

B1.   Name of Lawyer: John Eddie Williams, Steven J. Kherkher, Robert E. Shuttlesworth
B2.   Name of Law Firm with which Lawyer is Affiliated: Williams Baily Law Firm, L.L.P.
B3.   Mailing Address of Firm: 8441 Gulf Freeway, Ste. 600; Houston, Texas 77017
B4.   Law Firm's Telephone Number: (713) 230-2200
B4.5  Correspondence: Send all correspondence to law firm.
C1.   Living or Deceased: To the extent provided, please refer to death certificate.
C1.A. Date of Death: To the extent provided, please refer to death certificate.
C2.   Death Certificate Information: To the extent provided, please refer to death certificate.

### PART II. ASBESTOS-RELATED CONDITION

1.    Asbestos-Related Condition: Where an interrogated party has already furnished information to the interrogating party, it is unreasonable to require the interrogated party to furnish the information again. *Richlin v. Sigma Design West, Ltd.*, 88 F.R.D. 634 (E.D. Cal. 1980). Claimant identified in his/her 2019 Disclosure statement whether his/her asbestos-related condition was (1) a nonmalignant lung disease; (2) a malignant asbestos-related disease; or (3) mesothelioma. For further clarification of Claimant's asbestos-related condition and, to the extent provided, please refer to Claimant's answers to interrogatories, medical reports, and/or death certificate.

1.a.   Mesothelioma: Please refer to Claimant's response in Part II, No. 1.
1.b.   Asbestos-Related Lung Cancer: Please refer to Claimant's response in Part II, No. 1.
1.c.   Other Cancer: Please refer to Claimant's response in Part II, No. 1.
1.d.   Clinically Severe Asbestosis: Please refer to Claimant's response in Part II, No. 1.
1.e.   Asbestosis: Please refer to Claimant's response in Part II, No. 1.
1.f.   Other Asbestos Disease: Please refer to Claimant's response in Part II, No. 1.

2.    Information Regarding Diagnosis: For information relating to the diagnosing physician or b-reader, please refer to Claimant's medical report(s) or deposition to the extent provided. For additional information about the diagnosing physician or b-reader, please refer to Claimant's interrogatory responses to the extent provided. For information specifically related to the diagnosing physician or b-reader's credentials, Claimant waives any procedural block and grants the debtor the right to contact these identified diagnosing physicians or b-readers. Additional information as to the diagnosing physician or b-reader may be found by writing the American Medical Association or by visiting its website at http://www.ama-assn.org. Further, many states maintain databases on physicians licensed to practice within their jurisdiction.

        In most instances, the diagnosing physician or b-reader was not the Claimant's personal physician and was not paid directly by the Claimant at the time services were rendered.

        In most instances, the diagnosing physician inquired about the Claimant's smoking history. For a detailed description of Claimant's smoking history, please refer to Claimant's interrogatory responses, medical reports, deposition, or death certificate.

        Except as noted in Claimant's medical report, interrogatory responses, or death certificate, Claimant has not been diagnosed with chronic obstructive pulmonary disease.

3.    Information Regarding Chest X-Ray: For information relating to the chest x-ray, please refer to Claimant's medical report(s) or deposition to the extent provided.

4.    Information Regarding Chest X-Ray Reading: For information relating to the chest x-ray or the b-reader who read the x-ray, please refer to Claimant's medical report(s) or deposition to the extent provided. Further information about the b-reader who read the chest x-ray may be found by writing NIOSH / CDC or by visiting its website at http://www.cdc.gov/niosh/topics /chestradiography/breader-list.html. In most instances, the b-reader was not paid directly by the



WR GRACE PIQ 60270-0033

Claimant at the time services were rendered.

5.    Information Regarding Pulmonary Function Test: To the extent performed and reported, for information relating to the physician or technician, please refer to Claimant's medical report(s) or deposition to the extent provided. For additional information about the physician or technician, please refer to Claimant's interrogatory responses to the extent provided.    For information specifically related to the physician's or technician's credentials, Claimant waives any procedural block and grants the debtor the right to contact these identified physicians or technicians. Additional information as to the physician or technician may be found by writing the American Medical Association or by visiting its website at http://www.ama-assn.org. Further, many states maintain databases on physicians licensed to practice within their jurisdiction. The American Board of Internal Medicine maintains records on its physicians and its website can be found at http://www.abim.org.

In most instances, the physician or technician was not the Claimant's personal physician and was not paid directly by the Claimant at the time services were rendered.

6.    Information Regarding Pathology Reports: To the extent performed and reported, for information relating to the physician, please refer to Claimant's medical report(s) or deposition to the extent provided. For additional information about the physician, please refer to Claimant's interrogatory responses to the extent provided. For information specifically related to the physician's credentials, Claimant waives any procedural block and grants the debtor the right to contact these identified physicians.    Additional information as to the physician may be found by writing the American Medical Association or by visiting its website at http://www.ama-assn.org. Further, many states maintain databases on physicians licensed to practice within their jurisdiction. The American Board of Pathology maintains records on its physicians and its website can be found at http://www.abpath.org.

In most instances, the physician was not the Claimant's personal physician and was not paid directly by the Claimant at the time services were rendered.

7.    Medical Treatment: To the extent performed and reported, for information relating to the physician, please refer to Claimant's medical report(s) or deposition to the extent provided. For additional information about the physician, please refer to Claimant's interrogatory responses to the extent provided.

### PART III: DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

1.    Work History:  The debtor and premises' owners where Claimant worked possess much, if not all, of the information sought in this request.  Until such time that the debtor and premises' owners disclose the specific products and equipment, including but not limited to Heavy Equipment, pumps, vessels, boilers, turbines, furnaces, tractors, engines, mobile or affixed equipment containing or utilizing asbestos or asbestos-containing products or component parts used in or near the areas where the Claimant worked, as identified in Claimant's responses to interrogatories and/or deposition, the Claimant cannot fully articulate as to the extent of exposure to debtor's asbestos or asbestos-containing products. To the extent provided, Claimant identifies those asbestos-containing products, including the debtor's asbestos-containing products which he/she worked with or around during his/her working career.

For a specific description of Claimant's job duties, please refer to Claimant's interrogatory responses and/or deposition to the extent provided.  Debtor, to the extent required, may match up Claimant's job titles to its occupation and industry codes should it require this information.

### PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS


WR GRACE PIQ 60270-0054

1.  Secondary Exposure: In most instances, Claimant is not claiming secondary exposure. To the extent secondary exposure is alleged, for information relating to the primary exposure individual(s) , identification of products, nature of exposure, or lawsuit(s) filed, please refer to Claimants interrogatory responses, deposition, or medical reports to the extent provided.

2.  Information Regarding Secondary Exposure: Please refer to Claimant's response in Part IV, No. 1.

3.  Relationship: Please refer to Claimant's response in Part IV, No. 1.

4.  Nature of Exposure: Please refer to Claimant's response in Part IV, No. 1.

5.  Products: Please refer to Claimant's response in Part IV, No. 1.

6.  Identification: Please refer to Claimant's response in Part IV, No. 1.

7.  Lawsuit: Please refer to Claimant's response in Part IV, No. 1.

8.  Nature of Exposure: Please refer to Claimant's response in Part IV, No. 1.

9.  Dates of Exposure: Please refer to Claimant's response in Part IV, No. 1.

10.  Identification: Please refer to Claimant's response in Part IV, No. 1.

### PART V: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

1.  Work History: The non-debtor asbestos companies and premises' owners where Claimant worked possess much, if not all, of the information sought in this request. Until such time that the non-debtor asbestos companies and premises' owners disclose the specific products and equipment, including but not limited to heavy equipment, pumps, vessels, boilers, turbines, furnaces, tractors, engines, mobile or affixed equipment containing or utilizing asbestos or asbestos-containing products or component parts used in or near the areas where the Claimant worked, as identified in Claimant's responses to interrogatories and/or deposition, the Claimant cannot fully articulate as to the extent of exposure to non-debtor asbestos companies' asbestos or asbestos-containing products. To the extent provided, Claimant identifies those asbestos-containing products, including the debtor's asbestos-containing products which he/she worked with or around during his/her working career.

   For a specific description of Claimant's job duties, please refer to Claimant's interrogatory responses and/or deposition to the extent provided. Debtor, to the extent required, may match up Claimant's job titles to its occupation and industry codes should it require this information. .

   Claimant filed suit against various asbestos defendants for asbestos-related injuries in the lawsuits identified in Part VII. .

### PART VI: EMPLOYMENT HISTORY

1.  Work History: To the extent provided, please refer to interrogatory responses, medical reports, death certificate, and/or Claimant deposition. Debtor, to the extent required, may match up Claimant's job titles to its occupation and industry codes should it require this information.

### PART VII: LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA

A.1.  Plaintiff in Lawsuit: Yes

A.2.  Case Information: 96-21983;  In the 61ST Court of HARRIS County

A.3.  Grace as a Defendant: To the extent named and served and to the extent debtor answered the lawsuit or made an appearance, yes. Assuming the foregoing, Debtor is in possession of this information and may verify through its own records.

A.4.  Was the Lawsuit Dismissed Against Any Defendant: Yes. To the extent Debtor needs to know why a specific defendant was dismissed from a specific lawsuit it need look no further than its own history in asbestos litigation while it was a solvent defendant. Some defendants are dismissed for lack of jurisdiction; some defendants are dismissed because of insolvency and




WR GRACE PIQ 60270-0036

bankruptcy. Still others are dismissed after an equitable settlement is reached or because the defendant's defense to the claims is valid and cannot be overcome based upon the specific facts of the case. As no notes were kept regarding why a specific defendant was dismissed from Claimant's case, if any, this information cannot be ascertained without speculation. Notwithstanding, Claimant attaches a printout of those asbestos defendants in which a settlement was reached and funded.

A.5.    Has a judgment or verdict been entered: Claimant is unaware if a judgment or verdict has been entered.

A.6.    Was a settlement agreement reached in this lawsuit: Yes. To Claimant's knowledge, settlements are protected by a duly executed confidentiality agreement. Claimant cannot and will not violate any confidentiality agreements.    To further debtor understanding of Claimant's settlement, please refer to the attached settlement report.

A.7. Deposition: To the extent the deposition is attached, yes, Claimant was deposed. If in the event that a deposition is not attached, Claimant was not deposed.


B.1.    Claims against asbestos trusts: To the extent identified in Claimant's settlement report, Claimant has made claims against an asbestos trust.

B.2.    Date of Claim: Please refer to the information contained in Claimant's settlement report.

B.3.    Entity: Please refer to the information contained in Claimant's settlement report.

B.4.    Description of Claim: Claim was for asbestos-related injuries.

B.5.    Settled: Yes, to the extent identified in Claimant's settlement report.

B.6.    Settlement Amount: Please refer to the information contained in Claimant's settlement report. To Claimant's knowledge, settlements are protected by a duly executed confidentiality agreement. Claimant cannot and will not violate any confidentiality agreements.

B.7.    Claim Allowed: To the extent identified in Claimant's settlement report, the claim was allowed and funded.

### PART VIII: CLAIMS BY DEFENDANTS OR RELATED PERSONS

To the extent the Claimant is deceased as evidenced by the attached death certificate the following person(s) maintains Claimant's claim (if Claimant is not deceased, no information is provided):

Representative:
Representative's relationship to Claimant:
Representative's legal capacity:          Personal Representative
Representative's social security number:
Representative's mailing address:                    **REDACTED**

### PART IX: SUPPORTING DOCUMENTATION

Please see attached.

### PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

1.    Claimant Verification: The Claimant specific information requested in the *W.R. Grace Asbestos Personal Injury Questionnaire* that is within the knowledge of the Claimant is also contained in Claimant's interrogatory responses. Claimant's verification attests that the information contained therein was true and correct and, as such, that endeavor need not be duplicated here.

2.    Attorney Verification: To the best of my knowledge, the information contained in Claimant's response to the *W.R. Grace Asbestos Personal Injury Questionnaire* is true and accurate.


WR GRACE PIQ 60270-0038

_____     December 15, 2005
Attorney Signature                    Date

Printed Name:
John Eddie Williams, Jr.
Steven J. Kherkher
Robert E. Shuttlesworth

WR GRACE  PIQ  00270-0037

JULIE STRANGE
713-230-2200 242
WILLIAMS BAILEY LAW FIRM LLP
8441 GULF FREEWAY
HOUSTON  TX 77017

**37 LBS**        **6 OF 12**

SHIP TO:
    RUST CONSULTING, INC.
    RE: W.R. GRACE & COMPANY BANKRUPTCY
    201 LYNDALE AVE S
    **FARIBAULT  MN 55021-5799**



## MN 550 2-01



**UPS NEXT DAY AIR**        **1**

TRACKING #: 1Z 759 645 01 9885 0334



BILLING: P/P

WBClientIDMatterID (No Spaces or Dashes): WR Grace Bankruptcy Questionnaire

CS 8.5.19.0    WXFIE60 54.0A 04/2006

https://www.campusship.ups.com/cship/create?ActionOriginPair=print___PrinterPage&P...        7/11/2006

Invalid Image File: https://secureweb.rustconsulting.com/WRGracePIQWebRepository/testpage.aspx?Documentid=PIQ060270&ImageId=Thumbs.db
Absolute Filename: https://secureweb.rustconsulting.com/WRGracePIQWebRepository/testpage.aspx?Documentid=PIQ060270&ImageId=Thumbs.db
Relative Filename: https://secureweb.rustconsulting.com/WRGracePIQWebRepository/testpage.aspx?Documentid=PIQ060270&ImageId=Thumbs.db

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire





10315607012779
RE:
William Bailey Law Firm LLP
8441 Gulf Freeway
Suite 600
Houston TX 77017

**REDACTED**

REC'D JUL 1 2 2006

000770012779

WR GRACE PIQ 60333-0082

[THIS PAGE INTENTIONALLY LEFT BLANK.]



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                          )    Chapter 11
                                )
W. R. GRACE & CO., et al.,      )    Case No. 01-01139 (JKF)
                                )    Jointly Administered
        Debtors.                )
                                )

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

YOU HAVE RECEIVED THIS QUESTIONNAIRE BECAUSE GRACE BELIEVES THAT YOU HAD SUED ONE OR MORE OF THE DEBTORS LISTED IN APPENDIX A ATTACHED TO THIS QUESTIONNAIRE BEFORE GRACE FILED FOR BANKRUPTCY ON APRIL 2, 2001 FOR AN ASBESTOS-RELATED PERSONAL INJURY OR WRONGFUL DEATH CLAIM, AND THAT CLAIM WAS NOT FULLY RESOLVED.

IF YOU HAVE SUCH A CLAIM, YOU MUST COMPLETE AND SUBMIT THIS QUESTIONNAIRE BY JANUARY 12, 2006 TO RUST CONSULTING, INC., THE CLAIMS PROCESSING AGENT, AT ONE OF THE FOLLOWING ADDRESSES:

IF SENT BY U.S. MAIL

RUST CONSULTING, INC.
CLAIMS PROCESSING AGENT
RE: W.R. GRACE & CO. BANKRUPTCY
P.O. BOX 1620
FARIBAULT, MN 55021

IF SENT BY FEDERAL EXPRESS, UNITED PARCEL SERVICE, OR A SIMILAR HAND DELIVERY SERVICE

RUST CONSULTING, INC.
CLAIMS PROCESSING AGENT
RE: W.R. GRACE & CO. BANKRUPTCY
201 S. LYNDALE AVE.
FARIBAULT, MN 55021

A QUESTIONNAIRE (AND ANY AMENDMENTS OR ADDITIONAL DOCUMENTS IN SUPPORT OF THE QUESTIONNAIRE) WILL NOT BE CONSIDERED UNLESS RECEIVED BY RUST CONSULTING, INC. BY JANUARY 12, 2006.

THIS QUESTIONNAIRE IS AN OFFICIAL DOCUMENT APPROVED BY THE COURT IN CONNECTION WITH ESTIMATING GRACE'S ASBESTOS-RELATED PERSONAL INJURY AND WRONGFUL DEATH CLAIMS AS A WHOLE. THE QUESTIONNAIRE IS BEING USED BY W. R. GRACE AS A MEANS TO SEEK INFORMATION ABOUT YOUR ASBESTOS CLAIM. BY TIMELY RETURNING THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE, GRACE, THE OFFICIAL COMMITTEES, AND THE FUTURE CLAIMANTS REPRESENTATIVE WILL SEEK TO PRIORITIZE THE PROCESSING OF YOUR CLAIM UNDER ANY TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION.

THE COURT HAS ORDERED THAT, AS PART OF THE DISCOVERY PROCESS, ALL HOLDERS OF PRE-PETITION ASBESTOS PERSONAL INJURY CLAIMS MUST COMPLETE AND RETURN THIS QUESTIONNAIRE. THUS, FAILURE TO TIMELY RETURN THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE MAY RESULT IN SANCTIONS AND/OR OTHER RELIEF AVAILABLE UNDER APPLICABLE FEDERAL RULES.

BECAUSE YOUR CLAIM WILL BE EVALUATED IN ACCORDANCE WITH THE TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION, COMPLETION OF THIS QUESTIONNAIRE DOES NOT MEAN THAT YOUR CLAIM WILL EITHER BE ALLOWED OR PAID. TO THE EXTENT YOU ATTACH TO THIS QUESTIONNAIRE DOCUMENTS ALSO NEEDED BY THE TRUST TO PROCESS YOUR CLAIM, SUCH DOCUMENTS WILL BE PROVIDED TO THE TRUST AND YOU WILL NOT NEED TO RESUBMIT THEM.

## INSTRUCTIONS



WR GRACE PIQ 60333-0004

### A. GENERAL

1. This Questionnaire refers to any lawsuit that you filed before April 2, 2001 for an "asbestos-related wrongful death claim." This term is intended to cover any lawsuit alleging any claim for personal injuries or damages that relates to: (a) exposure to any products or materials containing asbestos that were manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present affiliates, or any of the predecessors of any of the Debtors or any of their respective past or present affiliates), or (b) exposure to vermiculite mined, milled or processed by the Debtors (or any of their respective past or present affiliates, any of the predecessors of any of the Debtors or any of their predecessors' respective past or present affiliates). It includes claims in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law or equity, or admiralty for, relating to, or arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal injuries or other damages caused, or allegedly caused, directly or indirectly, and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors. It includes all such claims, debts, obligations or liabilities for compensatory damages such as loss of consortium, personal or bodily injury (whether physical, emotional or otherwise), wrongful death, survivorship, proximate, consequential, general, special, and punitive damages.

2. Your Questionnaire will be deemed filed only when it has been received by Rust Consulting Inc., the Claims Processing Agent, via U.S. Mail, Federal Express, United Parcel Service or a similar hand delivery service. A Questionnaire that is submitted by facsimile, telecopy or other electronic transmission will not be accepted and will not be deemed filed.

   Do not send any Questionnaire to the Debtors, counsel for the Debtors, the Future Claimants Representative, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Asbestos Property Damage Claimants, the Official Committee of Equity Security Holders, or such Committees' counsel. Questionnaires that are filed with or sent to anyone other than Rust Consulting, Inc. will be deemed not to have been submitted, and such Questionnaires will not be considered.

3. Your completed Questionnaire must (i) be written in English, and (ii) attach relevant supporting materials as instructed further below.

4. All holders of claims described on page i (and as described in further detail in Instruction A (1) above) are required to file this Questionnaire by Jan. 12, 2006. Your Questionnaire will be used in connection with the estimation hearing to be conducted by the Court pursuant to the Estimation Procedures Order (a copy of which is attached as Appendix B).

5. Any subsequent amendment to the Questionnaire will not be considered for any purpose unless received by Jan. 12, 2006.

### B. PART I -- Identity of Injured Person and Legal Counsel

Respond to all applicable questions. If you are represented by a lawyer, then in Part I (b), please provide your lawyer's name and the name, telephone number and address of his/her firm. If you are represented by a lawyer, he/she must assist in the completion of this Questionnaire. Also, if you would prefer that the Debtors send any additional materials only to your lawyer, instead of sending such materials to you, then check the box indicating this in Part I (b).

All references to "you" or the like in Parts I through X shall mean the injured person. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete this Questionnaire.

### C. PART II -- Asbestos-Related Condition(s)

Please indicate all asbestos-related medical conditions for which you have been diagnosed. To complete questions related to injuries, medical diagnoses, and/or conditions, please use the following categories of customarily diagnosed conditions:

- Mesothelioma
- Asbestos-Related Lung Cancer
- Other Cancer (colon, laryngeal, esophageal, pharyngeal, or stomach)
- Clinically Severe Asbestosis
- Asbestosis
- Other Asbestos Disease

If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

**Supporting Documents for Diagnosis:** This Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis.

**X-rays and B-reads:** Please attach all x-ray readings and reports. You may, but are not required to, attach chest x-rays. The court, however, has ruled that Grace may seek access to chest x-rays upon request.

**Pulmonary Function Tests:** Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based.



### D. **PART III -- Direct Exposure to Grace Asbestos-Containing Products**

In Part III, please provide the requested information for the job and site at which you were exp[osed to] asbestos-containing products. Indicate the dates of exposure to each Grace asbestos-containing product. If [exposure] was a result of your employment, use the list of occupation and industry codes below to indicate your occupation and the industry in which you worked at each site. If you allege exposure to Grace asbestos-containing products at multiple sites, the Court has ordered that you must complete a separate Part III for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

Attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease.

### Occupation Codes

| | |
|---|---|
| 01. Air conditioning and heating installer/maintenance | 31. Iron worker |
| 02. Asbestos miner | 32. Joiner |
| 03. Asbestos plant worker/asbestos manufacturing worker | 33. Laborer |
| 04. Asbestos removal/abatement | 34. Longshoreman |
| 05. Asbestos sprayer/spray gun mechanic | 35. Machinist/machine operator |
| 06. Assembly line/factory/plant worker | 36. Millwright/mill worker |
| 07. Auto mechanic/bodywork/brake repairman | 37. Mixer/bagger |
| 08. Boilermaker | 38. Non-asbestos miner |
| 09. Boiler repairman | 39. Non-occupational/residential |
| 10. Boiler worker/cleaner/inspector/engineer/installer | 40. Painter |
| 11. Building maintenance/building superintendent | 41. Pipefitter |
| 12. Brake manufacturer/installer | 42. Plasterer |
| 13. Brick mason/layer/hod carrier | 43. Plumber - install/repair |
| 14. Burner operator | 44. Power plant operator |
| 15. Carpenter/woodworker/cabinetmaker | 45. Professional (*e.g.*, accountant, architect, physician) |
| 16. Chipper | 46. Railroad worker/carman/brakeman/machinist/conductor |
| 17. Clerical/office worker | 47. Refinery worker |
| 18. Construction - general | 48. Remover/installer of gaskets |
| 19. Custodian/janitor in office/residential building | 49. Rigger/stevedore/seaman |
| 20. Custodian/janitor in plant/manufacturing facility | 50. Rubber/tire worker |
| 21. Electrician/inspector/worker | 51. Sandblaster |
| 22. Engineer | 52. Sheet metal worker/sheet metal mechanic |
| 23. Firefighter | 53. Shipfitter/shipwright/ship builder |
| 24. Fireman | 54. Shipyard worker (md. repair, maintenance) |
| 25. Flooring installer/tile installer/tile mechanic | 55. Steamfitter |
| 26. Foundry worker | 56. Steelworker |
| 27. Furnace worker/repairman/installer | 57. Warehouse worker |
| 28. Glass worker | 58. Welder/blacksmith |
| 29. Heavy equipment operator (includes truck, forklift, & crane) | 59. Other |
| 30. Insulator | |

### Industry Codes

| | |
|---|---|
| 001. Asbestos abatement/removal | 109. Petrochemical |
| 002. Aerospace/aviation | 110. Railroad |
| 100. Asbestos mining | 111. Shipyard-construction/repair |
| 101. Automotive | 112. Textile |
| 102. Chemical | 113. Tire/rubber |
| 103. Construction trades | 114. U.S. Navy |
| 104. Iron/steel | 115. Utilities |
| 105. Longshore | 116. Grace asbestos manufacture or milling |
| 106. Maritime | 117. Non-Grace asbestos manufacture or milling |
| 107. Military (other than U.S. Navy) | 118. Other |
| 108. Non-asbestos products manufacturing | |

**E. PART IV – Indirect Exposure to Grace Asbestos-Containing Products**
In Part IV, please provide the information requested for any injury alleged to have been cause asbestos-containing products through contact/proximity with another injured person. If you contact/proximity with multiple injured persons, please complete a separate Part IV for each injured person. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.

**F. PART V — Exposure to Non-Grace Asbestos-Containing Products**
In Part V, please provide the requested information for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate Part V for each party. If exposure was in connection with your employment, use the list of occupation and industry codes in Part III to indicate your occupation and the industry in which you worked. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

**G. PART VI — Employment History**
In Part VI, please provide the information requested for each industrial job you have held, other than jobs already listed in Parts III or V. Use the list of occupation and industry codes in the instructions to Part III to indicate your occupation and the industry in which you worked for each job. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**H. PART VII — Litigation and Claims Regarding Asbestos and/or Silica**
In Part VII, please describe any lawsuits and/or claims that were filed by you or on your behalf regarding asbestos or silica.

**I. PART VIII -- Claims by Dependents or Related Persons**
Part VIII is to be completed only by dependents or related persons (such as spouse or child) of an injured person who sued the Debtors before April 2, 2001 for an asbestos-related personal injury or wrongful death claim against Grace not involving physical injury to him-/herself on account of his/her own exposure. One example of such a claim would be a claim for loss of consortium. If you are asserting such a claim, complete the entire Questionnaire, providing all information and documentation regarding the injured person.

**J. PART IX -- Supporting Documentation**
In Part IX, please mark the boxes next to each type of document that you are submitting with this Questionnaire. As indicated in the instructions to Parts II and III, this Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that (a) support or conflict with your diagnosis and/or (b) establish exposure to Grace asbestos-containing products as having a substantial causal role in the development of the medical diagnoses, and/or conditions claimed. Original documents provided to Grace will be returned within a reasonable time after its professionals and experts have reviewed the documents.

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation. Please indicate the documents for which you are seeking reimbursement and attach a receipt for such cost.

**K. PART X – Attestation that Information is True, Accurate and Complete**
By signing Part X, you, the injured person, are attesting and swearing, under penalty of perjury, that, to the best of your knowledge, all of the information in this Questionnaire is true, accurate and complete. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete and sign Part X on behalf of the injured person.

The legal representative of the injured person must complete and sign Part X where indicated.

| PART I:  IDENTITY OF INJURED PERSON AND LEGAL COUNSEL |
|---|

WR GRACE PIQ 60333-0007

**a.  GENERAL INFORMATION**

1.  Name of Claimant: _____  2. Gender: ☐ Male ☐ Female

                              First                   MI             Last

3.  Race (for purposes of evaluating Pulmonary Function Test results):................................... ☐ White/Caucasian

                                                                ☐ African American

                                                                ☐ Other

4. Last Four Digits of Social Security Number: ___ ___ ___ ___    5.  Birth Date: ___ ___ / ___ ___ / ___ ___ ___ ___

6. Mailing Address: _____

                       Address                   City            State/Province       Zip/Postal Code

7. Daytime Telephone Number:....................................................... ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

**b.  LAWYER'S NAME AND FIRM**

1.  Name of Lawyer: _____

2.  Name of Law Firm With Which Lawyer is Affiliated: _____

3.  Mailing Address of Firm: _____

                       Address                   City            State/Province       Zip/Postal Code

4.  Law Firm's Telephone Number or Lawyer's Direct Line:............................ ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

    ☐ Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in lieu of sending such materials to you.

**c.  CAUSE OF DEATH (IF APPLICABLE)**

1.  Is the injured person living or deceased?............................................................ ☐ Living  ☐ Deceased
    If deceased, date of death: _____ ___ ___ / ___ ___ / ___ ___ ___ ___

2.  If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete the following:

    Primary Cause of Death (as stated in the Death Certificate): _____

    Contributing Cause of Death (as stated in the Death Certificate): _____

| PART II: ASBESTOS-RELATED CONDITION(S) |
|---|

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire.  If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis.  For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1.  Please check the box next to the condition being alleged:

    ☐ Asbestos-Related Lung Cancer        ☐ Mesothelioma

    ☐ Asbestosis                        ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)

    ☐ Other Asbestos Disease        ☐ Clinically Severe Asbestosis

    a.  **Mesothelioma:**  If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following (check all that apply):

        ☐ diagnosis from a pathologist certified by the American Board of Pathology

        ☐ diagnosis from a second pathologist certified by the American Board of Pathology

        ☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial causal role in the development of the condition

        ☐ other (please specify): _____

1

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**



b. **Asbestos-Related Lung Cancer:** If alleging Asbestos-Related Lung Cancer, were you lung cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐ other (please specify):_____

c. **Other Cancer:**

(i) If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐ colon    ☐ pharyngeal    ☐ esophageal    ☐ laryngeal    ☐ stomach cancer

☐ other, please specify: _____

(ii) Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☐ other (please specify): _____

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE PIQ 60333-0009

d. **Clinically Severe Asbestosis:** If alleging Clinically Severe Asbestosis, was your diagnosis based (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating total lung capacity less than 65% predicted

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

e. **Asbestosis:** If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

3

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE PIQ 60333-0010

f. **Other Asbestos Disease:** If alleging any asbestos-related injuries, medical diagnoses, and/or ~~~~~~~~ those above, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ diagnosis determined by pathology

☐ a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumonioses* (2000)

☐ a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumonioses* (2000)

☐ a chest x-ray reading other than those described above

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies*, demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a pulmonary function test other than that discussed above

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☐ a CT Scan or similar testing

☐ a diagnosis other than those above

☐ other (please specify): _____

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

4

| PART II: ASBESTOS-RELATED CONDITION(S) (Continued) |
|---|

WR GRACE PIQ 60333-0011

**2.** **Information Regarding Diagnosis**

Date of Diagnosis: ............................................................................................ __ __ / __ __ / __ __ __ __

Diagnosing Doctor's Name: __

Diagnosing Doctor's Specialty: __

Diagnosing Doctor's Mailing Address: __
<br>Address

| City | State/Province | Zip/Postal Code |
|---|---|---|

Diagnosing Doctor's Daytime Telephone Number: .................................. ( __ __ __ ) __ __ __ - __ __ __ __

With respect to your relationship to the diagnosing doctor, check all applicable boxes:

Was the diagnosing doctor your personal physician?................................................................☐ Yes ☐ No

Was the diagnosing doctor paid for the diagnostic services that he/she performed?.................☐ Yes ☐ No

*If yes, please indicate who paid for the services performed*: __

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor?..........☐ Yes ☐ No

Was the diagnosing doctor referred to you by counsel?.........................................................☐ Yes ☐ No

Are you aware of any relationship between the diagnosing doctor and your legal counsel?......................☐ Yes ☐ No

*If yes, please explain:* __

Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the diagnosis? .........................................................................................☐ Yes ☐ No

Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis? ............................................................................................................................☐ Yes ☐ No

Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to diagnosis? ............................................................................................................................☐ Yes ☐ No

Did the diagnosing doctor perform a physical examination? .................................................☐ Yes ☐ No

Do you currently use tobacco products? ..............................................................................☐ Yes ☐ No

Have you ever used tobacco products?...................................................................................☐ Yes ☐ No

*If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco products and the dates and frequency with which such products were used:*

☐ Cigarettes      Packs Per Day (half pack = .5) _____      Start Year __ __ __ __ End Year __ __ __ __

☐ Cigars      Cigars Per Day _____      Start Year __ __ __ __ End Year __ __ __ __

☐ If Other Tobacco Products, please specify (e.g., chewing tobacco): __
<br>Amount Per Day _____      Start Year __ __ __ __ End Year __ __ __ __

Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")? ...............☐ Yes ☐ No

*If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:* __

**3.** **Information Regarding Chest X-Ray**

Please check the box next to the applicable location where your chest x-ray was taken (check one):

☐ Mobile laboratory  ☐ Job site  ☐ Union Hall  ☐ Doctor office  ☐ Hospital  ☐ Other: __

Address where chest x-ray taken: __
<br>Address

| City | State/Province | Zip/Postal Code |
|---|---|---|

5

| PART II:  ASBESTOS-RELATED CONDITION(S) (Continued) |
|---|

WR GRACE  PIQ  60333-0012

4.  **Information Regarding Chest X-Ray Reading**

Date of Reading: __ __ / __ __ / __ __ __ __        ILO score: _____

Name of Reader: _____

Reader's Daytime Telephone Number:..............................................( __ __ __ ) __ __ __ - __ __ __ __

Reader's Mailing Address: _____
                                         Address

_____
City                                         State/Province                        Zip/Postal Code

**With respect to your relationship to the reader, check all applicable boxes:**

Was the reader paid for the services that he/she performed.................................................☐ Yes  ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the reader? ...................☐ Yes  ☐ No

Was the reader referred to you by counsel?...........................................................................☐ Yes  ☐ No

Are you aware of any relationship between the reader and your legal counsel? ..........................☐ Yes  ☐ No

*If yes, please explain:* _____

**Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?**
.....................................................................................................................☐ Yes  ☐ No

*If the reader is not a certified B-reader, please describe the reader's occupation,  specialty, and the method through which the reading was made:* _____

5.  **Information Regarding Pulmonary Function Test:** .........................Date of Test:  __ __ / __ __ / __ __ __ __

List your height in feet and inches when test given: .............................._____ ft _____ inches

List your weight in pounds when test given: .............................................._____ lbs

Total Lung Capacity (TLC):................................................................._____% of predicted

Forced Vital Capacity (FVC): .............................................................._____% of predicted

FEV1/FVC Ratio: ............................................................................._____% of predicted

Name of Doctor Performing Test (if applicable): _____

Doctor's Specialty: _____

Name of Clinician Performing Test (if applicable): _____

Testing Doctor or Clinician's Mailing Address: _____
                                                                  Address

_____
City                                         State/Province                        Zip/Postal Code

Testing Doctor or Clinician's Daytime Telephone Number: .....................( __ __ __ ) __ __ __ - __ __ __ __

Name of Doctor Interpreting Test: _____

Doctor's Specialty: _____

Interpreting Doctor's Mailing Address: _____
                                                         Address

_____
City                                         State/Province                        Zip/Postal Code

Interpreting Doctor's Daytime Telephone Number: .........................( __ __ __ ) __ __ __ - __ __ __ __

6

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE PIQ 60333-0013

With respect to your relationship to the doctor or clinician who performed the pulmonary fun... applicable boxes:

If the test was performed by a doctor, was the doctor your personal physician? ........................... ☐ Yes ☐ No

Was the testing doctor and/or clinician paid for the services that he/she performed? ................... ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:*_____

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician?.. ☐ Yes ☐ No

Was the testing doctor or clinician referred to you by counsel? .................................................. ☐ Yes ☐ No

Are you aware of any relationship between either the doctor or clinician and your legal counsel? ............. ☐ Yes ☐ No

*If yes, please explain:*_____

**Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test?** ........................................................ ☐ Yes ☐ No

With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:

Was the doctor your personal physician? ........................................................................ ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? ................................................ ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? ........................... ☐ Yes ☐ No

Was the doctor referred to you by counsel? .................................................................. ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? ........................... ☐ Yes ☐ No

*If yes, please explain* _____

**Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed?** .............................. ☐ Yes ☐ No

6. **Information Regarding Pathology Reports:**

Date of Pathology Report: ..................................................... __ __ / __ __ / __ __ __ __

Findings: _____

Name of Doctor Issuing Report: _____

Doctor's Specialty: _____

Doctor's Mailing Address: _____
                       Address

| City | State/Province | Zip/Postal Code |
|------|----------------|-----------------|

Doctor's Daytime Telephone Number: ........................................... ( __ __ __ ) __ __ __ - __ __ __ __

With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:

Was the doctor your personal physician? ........................................................................ ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? ................................................ ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? ........................... ☐ Yes ☐ No

Was the doctor referred to you by counsel? .................................................................. ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? ........................... ☐ Yes ☐ No

*If yes, please explain:* _____

**Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?**
.......................................................................................................... ☐ Yes ☐ No

## PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

WR GRACE PIQ 60333-0014

7. With respect to the condition alleged, have you received medical treatment from a doctor for

.................................................................................................................................................... ☐ Yes ☐ No

*If yes, please complete the following:*

Name of Treating Doctor: _____

Treating Doctor's Specialty: _____

Treating Doctor's Mailing Address: _____
                                                              Address

_____

City                                            State/Province                        Zip/Postal Code

Treating Doctor's Daytime Telephone number: ...................................... ( __ __ __ ) __ __ __ - __ __ __ __

Was the doctor paid for the services that he/she performed? .................................... ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? ...................... ☐ Yes ☐ No


### [REMAINDER OF PAGE INTENTIONALLY BLANK]

8

WR GRACE PIQ 60333-0015

# PART III: DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Grace asbestos-containing products

(b) A worker who personally removed or cut Grace asbestos-containing products

(c) A worker who personally installed Grace asbestos-containing products

(d) A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(e) A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f) If other, please specify.

**Site of Exposure:**

Site Name: _____   Location: _____

Site Type: ☐ Residence  ☐ Business   Site Owner: _____

Employer During Exposure: _____

Unions of which you were a member during your employment: _____

| | Product(s) | Basis for Identification of Each Grace Product | Dates and Frequency of Exposure (hours/day, days/year) | Occupation Code If Code 59, specify. | Industry Code If Code 118, specify. | Was exposure due to working in or around areas where product was being installed, mixed, removed, or cut? If Yes, please indicate your regular proximity to such areas | Nature of Exposure |
|---|---|---|---|---|---|---|---|
| Job 1 Description: | | | | | | | |
| Job 2 Description: | | | | | | | |
| Job 3 Description: | | | | | | | |
| Job 4 Description: | | | | | | | |
| Job 5 Description: | | | | | | | |
| Job 6 Description: | | | | | | | |

9

## PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRO

WR GRACE PIQ 60333-0016

1. Are you asserting an injury caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person? ........................................................................................ ☐ Yes ☐ No

   *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to Grace asbestos-containing products. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.*

2. Please indicate the following information regarding the other injured person:

   Name of Other Injured Person: _____    Gender: ☐ Male ☐ Female

   Last Four Digits of Social Security Number: __ __ __ __    Birth Date: __ __ / __ __ / __ __

3. What is your Relationship to Other Injured Person: ................................................. ☐ Spouse ☐ Child ☐ Other

4. Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:

   _____

5. Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products:

   From: __ __ / __ __ / __ __ __ __    To: __ __ / __ __ / __ __ __ __

6. Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:

   _____

7. Has the Other Injured Person filed a lawsuit related to his/her exposure? ............................................ ☐ Yes ☐ No

   *If yes, please provide caption, case number, file date, and court name for the lawsuit:*

   Caption: _____

   Case Number: _____    File Date: __ __ / __ __ / __ __ __ __

   Court Name: _____

8. Nature of Your Own Exposure to Grace Asbestos-Containing Product:

   _____

9. Dates of Your Own Exposure to Grace Asbestos-Containing Product:

   From: __ __ / __ __ / __ __ __ __    To: __ __ / __ __ / __ __ __ __

10. Your Basis for Identification of Asbestos-Containing Product as Grace Product:

    _____

[REMAINDER OF PAGE INTENTIONALLY BLANK]

WR GRACE PIQ 60333-0017

## PART V: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products
(b) A worker who personally removed or cut Non-Grace asbestos-containing products
(c) A worker who personally installed Non-Grace asbestos-containing products

(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(f) If other, please specify.

| Party Against which Lawsuit or Claim was Filed: | Product(s) | Dates and Frequency of Exposure (hours/day, days/year) | Occupation Code If Code 59, specify. | Industry Code If Code 118, specify. | Was exposure due to working in or around areas where product was being installed, mixed, removed, or cut? If Yes, please indicate your regular proximity to such areas | Nature of Exposure |
|---|---|---|---|---|---|---|
| **Site of Exposure 1** Site Name:___ Address:___ City and State:___ Site Owner:___ | | | | | | |
| Job 1 Description:___ | | | | | | |
| Job 2 Description:___ | | | | | | |
| Job 3 Description:___ | | | | | | |
| **Site of Exposure 2** Site Name:___ Address:___ City and State:___ Site Owner:___ | | | | | | |
| Job 1 Description:___ | | | | | | |
| Job 2 Description:___ | | | | | | |
| Job 3 Description:___ | | | | | | |
| **Site of Exposure 3** Site Name:___ Address:___ City and State:___ Site Owner:___ | | | | | | |
| Job 1 Description:___ | | | | | | |
| Job 2 Description:___ | | | | | | |
| Job 3 Description:___ | | | | | | |

11

## PART VI: EMPLOYMENT HISTORY



WR GRACE PIQ 60333-0018

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial work including your current employment. For each job, include your employer, location of employment, and dates of employment. Only include jobs at which you worked for at least one month. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

Occupation Code: _____  If Code 59, specify: _____

Industry Code: _____  If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __       End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
        Address

_____

City                         State/Province        Zip/Postal Code

Occupation Code: _____  If Code 59, specify: _____

Industry Code: _____  If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __       End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
        Address

_____

City                         State/Province        Zip/Postal Code

Occupation Code: _____  If Code 59, specify: _____

Industry Code: _____  If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __       End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
        Address

_____

City                         State/Province        Zip/Postal Code

Occupation Code: _____  If Code 59, specify: _____

Industry Code: _____  If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __       End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
        Address

_____

City                         State/Province        Zip/Postal Code

**PART VII: LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SI**

WR GRACE PIQ 60333-0019

**a.    LITIGATION**

1.  Have you ever been a plaintiff in a lawsuit regarding asbestos or silica?.................................☐ Yes ☐ No

   *If yes, please complete the rest of this Part VII(a) for each lawsuit.   For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2.  Please provide the caption, case number, file date, and court name for the lawsuit you filed:

   Caption: _____

   Case Number: _____     File Date: __ __ / __ __ / __ __ __ __

   Court Name: _____

3.  Was Grace a defendant in the lawsuit? ...................................................................☐ Yes ☐ No

4.  Was the lawsuit dismissed against any defendant? ...................................................☐ Yes ☐ No

   *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

   _____

   _____

5.  Has a judgment or verdict been entered?...................................................................☐ Yes ☐ No

   *If yes, please indicate verdict amount for each defendant(s):* _____

6.  Was a settlement agreement reached in this lawsuit? ...............................................☐ Yes ☐ No

   *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

   a.   Settlement amount for each defendant: _____

   b.   Applicable defendants:_____

   c.   Disease or condition alleged: _____

   d.   Disease or condition settled (if different than disease or condition alleged):_____

7.  Were you deposed in this lawsuit? ...........................................................................☐ Yes ☐ No

   *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.*

**b.    CLAIMS**

1.  Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? ...................................................☐ Yes ☐ No

   *If yes, please complete the rest of this Part VII(b).  If no, please skip to Part VIII.*

2.  Date the claim was submitted:_____ __ __ / __ __ / __ __ __ __

3.  Person or entity against whom the claim was submitted:_____

4.  Description of claim:  _____

5.  Was claim settled? ...................................................................................................☐ Yes ☐ No

6.  Please indicate settlement amount: _____ $_____

7.  Was the claim dismissed or otherwise disallowed or not honored? ...........................☐ Yes ☐ No

   *If yes, provide the basis for dismissal of the claim:_____*

13

| PART VIII:  CLAIMS BY DEPENDENTS OR RELATED PERSONS | WR GRACE  PIQ  60333-0020 |
|---|---|

**Name of Dependent or Related Person:** _____ **Gender:** ☐ Male ☐ Female

**Last Four Digits of Social Security Number:** __ __ __ __  .    **Birth Date:** __ __ / __ __ / __ __ __ __

**Financially Dependent:**................................................................................☐ Yes ☐ No

**Relationship to Injured Party:** ☐ Spouse ☐ Child ☐ Other  If other, please specify _____

**Mailing Address:** _____
Address

_____

City                                    State/Province                        Zip/Postal Code

**Daytime Telephone number:** .......................................... ( __ __ __ ) __ __ __ - __ __ __ __

| PART IX:  SUPPORTING DOCUMENTATION |
|---|

Please use the checklists below to indicate which documents you are submitting with this form.
**Copies:**

☐ Medical records and/or report containing a diagnosis     ☐ X-rays
☐ Lung function test results     ☐ X-ray reports/interpretations
☐ Lung function test interpretations     ☐ CT scans
☐ Pathology reports     ☐ CT scan reports/interpretations
☐ Supporting documentation of exposure to Grace     ☐ Depositions from lawsuits indicated in Part VII
    asbestos-containing products        of this Questionnaire
☐ Supporting documentation of other asbestos exposure     ☐ Death Certification

**Originals:**

☐ Medical records and/or report containing a diagnosis     ☐ Supporting documentation of other asbestos exposure
☐ Lung function test results     ☐ X-rays
☐ Lung function test interpretations     ☐ X-ray reports/interpretations
☐ Pathology reports     ☐ CT scans
☐ Supporting documentation of exposure to Grace     ☐ CT scan reports/interpretations
    asbestos-containing products     ☐ Death Certification

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:

_____

_____

| PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE |
|---|

The information provided in this Questionnaire must be accurate and truthful.  This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim.  The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both.  18 U.S.C. §§ 152 & 3571.
**TO BE COMPLETED BY THE INJURED PERSON.**

I swear, **under penalty of perjury**, that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate and complete.

Signature: _____    Date: __ __ / __ __ / __ __ __ __

Please Print Name: _____

**TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.**

I swear. that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete.

Signature: _____    Date: __ __ / __ __ / __ __ __ __

Please Print Name: _____

14



WR GRACE PIQ 60333-0021

## LARRY M. MITCHELL, M.D.

### INTERNAL MEDICINE

2400 PATTERSON STREET
SUITE 311
NASHVILLE, TENNESSEE 37203

TELEPHONE (615) 342-5725

DATE:          July 17, 1993

NAME:
ADDRESS:

## REDACTED

SSN:
DOB:
DATE OF EXPOSURE:  1965 to 1966  1966 to 1968 ADDSCO

CHIEF COMPLAINT:  Dyspnea

PRESENT ILLNESS:      This patient relates a progressive onset of dyspnea over the past few years to a class 2* limitation.  (Dyspnea with fast walking on level ground or when walking up a hill; patient can keep pace with persons of same age and body build on level ground but not on hills or stairs.)  This is associated with a chronic intermittent nonproductive cough.  He has had some intermittent night sweats.  He denies chest pain.  There is a history of pneumonia in the remote past with no sequela.  He does not smoke cigarettes.

OCCUPATIONAL EXPOSURE HISTORY:      The man worked as a burner having worked for three years, 1965 to 1968 at ADDSCO, where he had occasion to be  intermittently exposed to asbestos materials without the benefit of face mask protection.

PAST HISTORY:  He is hypertensive on Lozal. Otherwise,  no serious illnesses. He denies allergies.

FAMILY HISTORY:  Non-contributory.

SOCIAL HISTORY:      He is married.  He has four children.  He does not smoke.  He occasionally drinks alcoholic beverages.

PHYSICAL EVALUATION:      He is a well developed, well nourished black male in no distress. He is  69" tall and weighs 222  lbs.

VITAL SIGNS: Blood Pressure   -   120/78
             Pulse            -   58
             Respiration      -   18


WR GRACE PIQ 60333-0022

REDACTED

Page Two

CHEST AND LUNG EXAMINATION:    He has a normal excursion. Percussion note is within normal limits. Vocal fremitus is equal bilaterally. On auscultation the chest is clear.

EXTREMITIES:    No clubbing, edema or cyanosis.

Pulmonary function test done on 7/17/93 reveals a forced vital capacity of 61% of predicted. His FEV1/FVC ratio is normal. Total lung capacity is reduced to 60% of predicted. The DLCO is calculated at 55% of predicted. These parameters being indicative of restrictive lung disease.

RADIOLOGICAL IMPRESSION:    Chest x-ray done on 7/17/93 reveals bilateral lateral thoracic wall pleural thickening. The costophrenic angles are sharp. There is an occasional irregular opacities noted in both lung fields. Minor fibrotic changes are noted both lower lung fields. The heart and great vessels appear to be normal.

IMPRESSION:    Pulmonary asbestosis.

RECOMMENDATIONS:    1.  Chest x-ray every six months.
                    2.  CT scanning for any suspicious chest lesions which may arise.

DISCUSSION:    The above findings have been discussed in detail with this patient and he understands the significance thereof. Follow-up examination is to be done by his local physician.

Larry M. Mitchell, M.D.

*References

1)    Guides to the Evaluation of Permanent Impairment, ed. 2. Chicago, American Medical Association, 1984, by permission.



WR GRACE PIQ  60333-0023

### ANSWERS TO INTERROGATORIES

1.    Please state:

   a.    Your full name and all other names by which you have been known (including nicknames);

   b.    Your date and place of birth;

   c.    Present home address and telephone number;

   d.    Please list in chronological order the resident addresses where you have resided since your eighteenth birthday and state the inclusive dates of your residence and each location;

   e.    Occupation and business address;

   f.    Social security number;

   g.    The license number and issuing authority of each automobile operator, chauffeur, or commercial license which you presently possess or which you possessed in the past; and with respect to each license please state (i) the date of issuance and (ii) date of expiration; and please state your automobile license number.

### ANSWER TO QUESTION 1:

A.

b.

C.

d.

**REDACTED**

e.

f.

g.



WR GRACE PIQ 60333-0024

ANSWERS TO INTERROGATORIES continued ...

(4) Alabama Dry Dock & Shipbuilding Co    1966-1968
Pinto Island   Scrap Metal    1968-1970

(c) uncertain

(d) $5.00 (?) hourly; Shift - 7:00 AM - 3:PM ; approx 180.°° wkly

(e) Burner

(f) Lay offs

(g) Yes — Restoration of Ships - Removing insulation; burning in the bottom of Ships.

(h) Products As follows on Attached Sheets, As near As I can Remember

PRODUCT  IDENTIFICATION

MANUFACTURERS,  SUPPLIERS AND PRODUCTS

PAGE 10

WR GRACE PIQ 60333-0025

STATE OF ALABAMA

COUNTY OF *Mobile*

**REDACTED**

BEFORE ME, the undersigned authority on this day personally appeared                    known to me the person whose name is subscribed below, and upon oath stated to me that he/she has read the foregoing Plaintiffs Answers to Interrogatories and the statements therein are true and correct to the best of his/her knowledge.

_____

SUBSCRIBED AND SWORN TO BEFORE ME THIS *22nd* day of *March*, 1995.

_____
Notary Public in and for the State of Alabama
NOTARY PUBLIC STATE OF ALABAMA AT LARGE.
MY COMMISSION EXPIRES: Sept. 8, 1997.
BONDED THRU NOTARY PUBLIC UNDERWRITERS.



WR GRACE PIQ 60333-0026

**REDACTED**

---

### Introduction

Pursuant to Federal Rule of Civil Procedure 26(b)(4)(B), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. Without limiting the foregoing, Claimant objects to the following provisions of the Discovery Questionnaire as violative of Fed. R. Civ. P. 26(b)(4)(B):

(1)     Claimant objects to Section C of the Instructions to the extent that it requests the completion of Part II of the Discovery Questionnaire "if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors."

(2)     Claimant objects to Section C of the Instructions to the extent that it requests the production of "any and all documents" that "support or conflict with your diagnosis."

(3)     Claimant objects to Section C of the Instructions to the extent that it requests the production of "all x-ray readings and reports."

(4)     Claimant objects to Section C of the Instructions to the extent that it requests the production of "all pulmonary function test results, including the raw data and all spirometric tracings, on which the results are based."

(5)     Claimant objects to Section J of the Instructions to the extent that it requests the production of "any and all documents" that "support or conflict with your diagnosis."

(6)     Claimant objects to Part II of the Discovery Questionnaire to the extent that it requests disclosure of "diagnoses and diagnostic tests" by "multiple doctors" concerning "previous or subsequent diagnoses or diagnostic tests that change or conflict with the original diagnoses." Claimant urges this objection with regard to all "conditions" for which disclosure is requested.

Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of any privileged communication between Claimant, and/or a representative of Claimant, and any attorney for Claimant, and/or a representative of any attorney for Claimant. In addition, pursuant to Federal Rule of Civil Procedure 26(b)(3), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of the work product of any attorney for Claimant, including but not limited to the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of Claimant. Specifically, and without limiting the foregoing, Claimant objects to the following provisions of the Discovery Questionnaire as violative of the attorney-client communication and/or attorney work product privileges:

(1)     Claimant objects to Part II of the Discovery Questionnaire to the extent that it asks if Claimant "retained counsel in order to receive any of the services performed by the diagnosing doctor."

(2)     Claimant objects to Part II of the Discovery Questionnaire to the extent that it asks if "the diagnosing doctor was referred to you by counsel."

(3)     Claimant objects to Part II of the Discovery Questionnaire to the extent that it asks if Claimant is "aware of any relationship between the diagnosing doctor and your legal counsel" unless Claimant's knowledge was obtained other than through communication with Claimant's legal counsel and/or his/her representative.

(4)     These objections are urged with regard to each instance that the above questions are asked in sections 2, 3, 4, 5, 6 and 7 of Part II of the Discovery Questionnaire.


WR GRACE PIQ 60333-0027

Claimant further objects to Part VII the Discovery Questionnaire to the extent that it seeks disclosure of information relating to litigation and claims regarding silica as irrelevant to the issues concerning Claimant's asbestos claim against W.R. Grace & Co. and/or its affiliated debtors.

Claimant further objects to Section a.6 of Part VII of the Discovery Questionnaire to the extent that it seeks disclosure of settlements reached with other defendants that are subject to binding confidentiality agreements.

The Federal Rules provide that, where the answer to an interrogatory may be derived or ascertained from the records of the party upon whom the interrogatory has been served or from an examination, audit, or inspection of such records, including a compilation, abstract, or summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit, or inspect such records and to make copies, compilations, abstracts, or summaries. Fed. R. Civ. P. 33(d). Accordingly, Claimant hereby attaches via the enclosed CD-ROM disk, if available or applicable, the following types of documents in the possession, custody, or control of the Claimant and/or Williams Bailey Law Firm:

(1)   Interrogatory responses from state or federal court asbestos-related lawsuits;

(2)   Medical reports including, but not limited to, b-reads, linking reports, pathology reports, and other expert reports identifying or diagnosing an asbestos-related disease;

(3)   Social Security employment records;

(4)   Death certificate;

(5)   Claimant deposition;

(6)   Settlement report identifying those entities or parties from whom the Claimant has received funded settlements.

By submitting this response to the Discovery Questionnaire, Claimant does not intend to, and hereby does not, submit to the jurisdiction of the United States District Court for the District of Delaware, to the United States Bankruptcy Court for the District of Delaware, or to any other court. Claimant reserves (i) all objections to jurisdiction and/or venue, (ii) all protections afforded under Federal Rule of Civil Procedure 45 and Federal Bankruptcy Rule of Procedure 9016, and (iii) the right to jury trial afforded under 28 U.S.C. § 157(b)(5).

### PART I. IDENTITY OF INJURED PERSON AND LEGAL COUNSEL

A1.   Name of Claimant: See above.

A2.   Gender: To the extent provided, please refer to interrogatory responses, medical reports, death certificate, and/or Claimant deposition.

A3.   Race: To the extent provided, please refer to interrogatory responses, medical reports, death certificate, and/or Claimant deposition.

A4.   Last Four Digits of Social Security Number: See above.

A5.   Birth Date: To the extent provided, please refer to interrogatory responses.

A6.   Mailing Address: Where an interrogated party has already furnished information to the interrogating party, it is unreasonable to require the interrogated party to furnish the information again. *Richlin v. Sigma Design West, Ltd.*, 88 F.R.D. 634 (E.D. Cal. 1980). Claimant furnished this information in his/her 2019 Disclosure Statement and duplication of that endeavor is not warranted at this time.

A7.   Daytime Telephone Number: To the extent provided, please refer to interrogatory responses.



WR GRACE PIQ 60333-0028

B1. <u>Name of Lawyer</u>: John Eddie Williams, Steven J. Kherkher, Robert E. Shuttlesworth

B2. <u>Name of Law Firm with which Lawyer is Affiliated</u>: Williams Baily Law Firm, L.L.P.

B3. <u>Mailing Address of Firm</u>: 8441 Gulf Freeway, Ste. 600; Houston, Texas 77017

B4. <u>Law Firm's Telephone Number</u>: (713) 230-2200

B4.5 <u>Correspondence</u>: Send all correspondence to law firm.

C1. <u>Living or Deceased</u>: To the extent provided, please refer to death certificate.

C1.A. <u>Date of Death</u>: To the extent provided, please refer to death certificate.

C2. <u>Death Certificate Information</u>: To the extent provided, please refer to death certificate.

PART II. ASBESTOS-RELATED CONDITION

1. <u>Asbestos-Related Condition</u>: Where an interrogated party has already furnished information to the interrogating party, it is unreasonable to require the interrogated party to furnish the information again. *Richlin v. Sigma Design West, Ltd.*, 88 F.R.D. 634 (E.D. Cal. 1980). Claimant identified in his/her 2019 Disclosure statement whether his/her asbestos-related condition was (1) a nonmalignant lung disease; (2) a malignant asbestos-related disease; or (3) mesothelioma. For further clarification of Claimant's asbestos-related condition and, to the extent provided, please refer to Claimant's answers to interrogatories, medical reports, and/or death certificate.

1.a. <u>Mesothelioma</u>: Please refer to Claimant's response in Part II, No. 1.

1.b. <u>Asbestos-Related Lung Cancer</u>: Please refer to Claimant's response in Part II, No. 1.

1.c. <u>Other Cancer</u>: Please refer to Claimant's response in Part II, No. 1.

1.d. <u>Clinically Severe Asbestosis</u>: Please refer to Claimant's response in Part II, No. 1.

1.e. <u>Asbestosis</u>: Please refer to Claimant's response in Part II, No. 1.

1.f. <u>Other Asbestos Disease</u>: Please refer to Claimant's response in Part II, No. 1.

2. <u>Information Regarding Diagnosis</u>: For information relating to the diagnosing physician or b-reader, please refer to Claimant's medical report(s) or deposition to the extent provided. For additional information about the diagnosing physician or b-reader, please refer to Claimant's interrogatory responses to the extent provided. For information specifically related to the diagnosing physician or b-reader's credentials, Claimant waives any procedural block and grants the debtor the right to contact these identified diagnosing physicians or b-readers. Additional information as to the diagnosing physician or b-reader may be found by writing the American Medical Association or by visiting its website at http://www.ama-assn.org. Further, many states maintain databases on physicians licensed to practice within their jurisdiction.

In most instances, the diagnosing physician or b-reader was not the Claimant's personal physician and was not paid directly by the Claimant at the time services were rendered.

In most instances, the diagnosing physician inquired about the Claimant's smoking history. For a detailed description of Claimant's smoking history, please refer to Claimant's interrogatory responses, medical reports, deposition, or death certificate.

Except as noted in Claimant's medical report, interrogatory responses, or death certificate, Claimant has not been diagnosed with chronic obstructive pulmonary disease.

3. <u>Information Regarding Chest X-Ray</u>: For information relating to the chest x-ray, please refer to Claimant's medical report(s) or deposition to the extent provided.

4. <u>Information Regarding Chest X-Ray Reading</u>: For information relating to the chest x-ray or the b-reader who read the x-ray, please refer to Claimant's medical report(s) or deposition to the extent provided. Further information about the b-reader who read the chest x-ray may be found by writing NIOSH / CDC or by visiting its website at http://www.cdc.gov/niosh/topics /chestradiography/breader-list.html. In most instances, the b-reader was not paid directly by the


WR GRACE PIQ 60333-0029

Claimant at the time services were rendered.

5.    Information Regarding Pulmonary Function Test: To the extent performed and reported, for information relating to the physician or technician, please refer to Claimant's medical report(s) or deposition to the extent provided. For additional information about the physician or technician, please refer to Claimant's interrogatory responses to the extent provided.  For information specifically related to the physician's or technician's credentials, Claimant waives any procedural block and grants the debtor the right to contact these identified physicians or technicians. Additional information as to the physician or technician may be found by writing the American Medical Association or by visiting its website at http://www.ama-assn.org.  Further, many states maintain databases on physicians licensed to practice within their jurisdiction.  The American Board of Internal Medicine maintains records on its physicians and its website can be found at http://www.abim.org.

In most instances, the physician or technician was not the Claimant's personal physician and was not paid directly by the Claimant at the time services were rendered.

6.    Information Regarding Pathology Reports: To the extent performed and reported, for information relating to the physician, please refer to Claimant's medical report(s) or deposition to the extent provided. For additional information about the physician, please refer to Claimant's interrogatory responses to the extent provided. For information specifically related to the physician's credentials, Claimant waives any procedural block and grants the debtor the right to contact these identified physicians.  Additional information as to the physician may be found by writing the American Medical Association or by visiting its website at http://www.ama-assn.org. Further, many states maintain databases on physicians licensed to practice within their jurisdiction. The American Board of Pathology maintains records on its physicians and its website can be found at http://www.abpath.org.

In most instances, the physician was not the Claimant's personal physician and was not paid directly by the Claimant at the time services were rendered.

7.    Medical Treatment: To the extent performed and reported, for information relating to the physician, please refer to Claimant's medical report(s) or deposition to the extent provided. For additional information about the physician, please refer to Claimant's interrogatory responses to the extent provided.

## PART III: DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

1.    Work History: The debtor and premises' owners where Claimant worked possess much, if not all, of the information sought in this request.  Until such time that the debtor and premises' owners disclose the specific products and equipment, including but not limited to Heavy Equipment, pumps, vessels, boilers, turbines, furnaces, tractors, engines, mobile or affixed equipment containing or utilizing asbestos or asbestos-containing products or component parts used in or near the areas where the Claimant worked, as identified in Claimant's responses to interrogatories and/or deposition, the Claimant cannot fully articulate as to the extent of exposure to debtor's asbestos or asbestos-containing products. To the extent provided, Claimant identifies those asbestos-containing products, including the debtor's asbestos-containing products which he/she worked with or around during his/her working career.

For a specific description of Claimant's job duties, please refer to Claimant's interrogatory responses and/or deposition to the extent provided. Debtor, to the extent required, may match up Claimant's job titles to its occupation and industry codes should it require this information.

## PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS



WR GRACE PIQ 60333-0030

1.   Secondary Exposure: In most instances, Claimant is not claiming secondary exposure.  To the extent secondary exposure is alleged, for information relating to the primary exposure individual(s) , identification of products, nature of exposure, or lawsuit(s) filed, please refer to Claimants interrogatory responses, deposition, or medical reports to the extent provided.

2.   Information Regarding Secondary Exposure: Please refer to Claimant's response in Part IV, No. 1.

3. .   Relationship: Please refer to Claimant's response in Part IV, No. 1.

4.   Nature of Exposure: Please refer to Claimant's response in Part IV, No. 1.

5.   Products: Please refer to Claimant's response in Part IV, No. 1.

6.   Identification: Please refer to Claimant's response in Part IV, No. 1.

7.   Lawsuit: Please refer to Claimant's response in Part IV, No. 1.

8.   Nature of Exposure: Please refer to Claimant's response in Part IV, No. 1.

9.   Dates of Exposure: Please refer to Claimant's response in Part IV, No. 1.     .

10.   Identification: Please refer to Claimant's response in Part IV, No. 1.

### PART V: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

1.   Work History:  The non-debtor asbestos companies and premises' owners where Claimant worked possess much, if not all, of the information sought in this request. Until such time that the non-debtor asbestos companies and premises' owners disclose the specific products and equipment, including but not limited to heavy equipment, pumps, vessels, boilers, turbines, furnaces, tractors, engines, mobile or affixed equipment containing or utilizing asbestos or asbestos-containing products or component parts used in or near the areas where the Claimant worked, as identified in Claimant's responses to interrogatories and/or deposition, the Claimant cannot fully articulate as to the extent of exposure to non-debtor asbestos companies' asbestos or asbestos-containing products. To the extent provided, Claimant identifies those asbestos-containing products, including the debtor's asbestos-containing products which he/she worked with or around during his/her working career.

For a specific description of Claimant's job duties, please refer to Claimant's interrogatory responses and/or deposition to the extent provided. Debtor, to the extent required, may match up Claimant's job titles to its occupation and industry codes should it require this information.

Claimant filed suit against various asbestos defendants for asbestos-related injuries in the lawsuits identified in Part VII.

### PART VI: EMPLOYMENT HISTORY

1.   Work History: To the extent provided, please refer to interrogatory responses, medical reports, death certificate, and/or Claimant deposition. Debtor, to the extent required, may match up Claimant's job titles to its occupation and industry codes should it require this information.

### PART VII: LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA

A.1.   Plaintiff in Lawsuit: Yes

A.2.   Case Information:  95-CV-0916;  In the 212TH Court of GALVESTON County

A.3.   Grace as a Defendant: To the extent named and served and to the extent debtor answered the lawsuit or made an appearance, yes.  Assuming the foregoing, Debtor is in possession of this information and may verify through its own records.

A.4.   Was the Lawsuit Dismissed Against Any Defendant: Yes.  To the extent Debtor needs to know why a specific defendant was dismissed from a specific lawsuit it need look no further than its own history in asbestos litigation while it was a solvent defendant.  Some defendants are dismissed for lack of jurisdiction; some defendants are dismissed because of insolvency and


WR GRACE PIQ 60333-0031

bankruptcy. Still others are dismissed after an equitable settlement is reached or because the defendant's defense to the claims is valid and cannot be overcome based upon the specific facts of the case. As no notes were kept regarding why a specific defendant was dismissed from Claimant's case, if any, this information cannot be ascertained without speculation. Notwithstanding, Claimant attaches a printout of those asbestos defendants in which a settlement was reached and funded.

A.5.    <u>Has a judgment or verdict been entered</u>: Claimant is unaware if a judgment or verdict has been entered.

A.6.    <u>Was a settlement agreement reached in this lawsuit</u>: Yes. To Claimant's knowledge, settlements are protected by a duly executed confidentiality agreement. Claimant cannot and will not violate any confidentiality agreements. To further debtor understanding of Claimant's settlement, please refer to the attached settlement report.

A.7.<u>Deposition</u>: To the extent the deposition is attached, yes, Claimant was deposed. If in the event that a deposition is not attached, Claimant was not deposed.


B.1.    <u>Claims against asbestos trusts</u>: To the extent identified in Claimant's settlement report, Claimant has made claims against an asbestos trust.

B.2.    <u>Date of Claim</u>: Please refer to the information contained in Claimant's settlement report.

B.3.    <u>Entity</u>: Please refer to the information contained in Claimant's settlement report.

B.4.    <u>Description of Claim</u>: Claim was for asbestos-related injuries.

B.5.    <u>Settled</u>: Yes, to the extent identified in Claimant's settlement report.

B.6.    <u>Settlement Amount</u>: Please refer to the information contained in Claimant's settlement report. To Claimant's knowledge, settlements are protected by a duly executed confidentiality agreement. Claimant cannot and will not violate any confidentiality agreements.

B.7.    <u>Claim Allowed</u>: To the extent identified in Claimant's settlement report, the claim was allowed and funded.

### PART VIII: CLAIMS BY DEFENDANTS OR RELATED PERSONS

To the extent the Claimant is deceased as evidenced by the attached death certificate the following person(s) maintains Claimant's claim (if Claimant is not deceased, no information is provided):

Representative:
Representative's relationship to Claimant:
Representative's legal capacity:
Representative's social security number:
Representative's mailing address:

### PART IX: SUPPORTING DOCUMENTATION

Please see attached.

### PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

1.    <u>Claimant Verification</u>: The Claimant specific information requested in the *W.R. Grace Asbestos Personal Injury Questionnaire* that is within the knowledge of the Claimant is also contained in Claimant's interrogatory responses. Claimant's verification attests that the information contained therein was true and correct and, as such, that endeavor need not be duplicated here.

2.    <u>Attorney Verification</u>: To the best of my knowledge, the information contained in Claimant's response to the *W.R. Grace Asbestos Personal Injury Questionnaire* is true and accurate.



WR GRACE PIQ 60333-0092

Attorney Signature

December 15, 2005
Date

<u>Printed Name</u>:
John Eddie Williams, Jr.
Steven J. Kherkher
Robert E. Shuttlesworth



WR GRACE  PIQ  80333-0033

JULIE STRANGE
713-230-2200 242
WILLIAMS BAILEY LAW FIRM LLP
8441 GULF FREEWAY
HOUSTON TX 77017

**37 LBS**    **10 OF 12**

SHIP TO:
RUST CONSULTING, INC.
RE: W.R. GRACE & COMPANY BANKRUPTCY
201 LYNDALE AVE S
**FARIBAULT  MN 55021-5799**



**MN 550 2-01**

**UPS NEXT DAY AIR**    **1**
TRACKING #: 1Z 759 645 01 9973 3978



BILLING: P/P

WBClientIDMatterID (No Spaces or Dashes): WR Grace Bankruptcy Question Entire

CS 8.5.19.0    WXFIE60 54.0A 04/2006

https://www.campusship.ups.com/cship/create/?ActionOriginPair=print____PrinterPage&P...

7/11/2006