IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Docket No. |
| | ) | |

**MOTION TO COMPEL ASBESTOS PERSONAL INJURY CLAIMANTS
REPRESENTED BY BARON & BUDD, P.C., LEBLANC & WADDELL, AND SILBER
PEARLMAN, LLP TO RESPOND TO THE W.R. GRACE ASBESTOS PERSONAL
INJURY QUESTIONNAIRE**

In response to the W.R. Grace Asbestos Personal Injury Questionnaire ("Questionnaire"), the clients represented by Baron & Budd P.C., LeBlanc & Waddell, and Silber Pearlman LLP, (collectively, the "Baron/LeBlanc/Silber Claimants") have objected to providing information in response to certain questions posed in the Questionnaire.[1] Because the objections are unfounded, Grace hereby moves to compel the Baron/LeBlanc/Silber Claimants to provide all the information requested in the Questionnaire.[2]

**ARGUMENT**

The Court approved the Questionnaire after extensive briefing, argument, and consideration, and already has ruled that general relevance objections are unfounded and should not be maintained. Additionally, the Court has addressed the general burden objections related

---

[1] The clients represented by Baron & Budd and who have returned Questionnaires are identified in Exhibit A (attached). The clients represented by LeBlanc & Waddell and who have returned Questionnaires are identified in Exhibit B (attached). The clients represented by Silber Pearlman and who have returned Questionnaires are identified in Exhibit C (attached).

[2] Grace moves only to compel responses to questions in which the Baron/LeBlanc/Silber Claimants have objectd lieu of providing responsive information. As the Court is aware, pursuant to this Court's Order Concerning Debtors' Motion to Compel, Claimants have until November 13, 2006 to supplement their Questionnaire responses. Grace reserves its right to raise any and all objections to the sufficiency of the Baron/LeBlanc/Silber Claimants' responses until the supplementation of their Questionnaire responses is complete.

to providing the information requested in the Questionnaire by permitting response by way of attachment and by providing an additional year to provide the requested information. Accordingly, all general relevance and burden objections raised by the Baron/LeBlanc/Silber Claimants should be overruled on their face. *See* Memorandum of Points and Authorities Concerning Background of the Questionnaire Approval Process and Objections Previously Addressed by the Court ("Background Memorandum"), attached as Exhibit D.[3]

In connection with all other objections raised by the Baron/LeBlanc/Silber Claimants, it is fundamental, under both Federal Rule of Civil Procedure 26 and Federal Rule of Bankruptcy Procedure 7026, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1); Fed. R. Bankr. P. 7026. Accordingly, under a motion to compel, the initial burden is on the moving party to demonstrate that the discovery sought is relevant. Once the relevance showing has been satisfied, the "party resisting discovery" bears the burden of making a specific showing as to why the information sought does not have to be provided. *See Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) (citations omitted). Because the Court already has ruled that all the questions in the Questionnaire are relevant, *see* Order Concerning Debtors' Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Personal Injury Questionnaire ("MTC Order") (Docket No. 13393) (Oct. 12, 2006) at ¶ 1, the burden rests with the firms raising the objections and resisting the discovery to demonstrate why their objections should be sustained.

The Baron/LeBlanc/Silber Claimants refused to answer several questions based on their various objections. These questions relate to the Claimants' medical diagnosis (Part II) and

---

[3] The Baron/LeBland/Silber Claimants refused to answer Questions 4, 5, and 6 in Part VII, Section A relating to asbestos- and silica-related litigation and Questions 6 and 7 in Part VII, Section B, relating to asbestos- and silica-related claims on general relevance grounds. Additionally, the Baron/LeBlanc/Silber Claimants refused to answer Question 4 in Part VII, Section A and, Question 7 in Part VII, Section B on burden grounds.

asbestos- and silica-related litigation and claims (Part VII of the Questionnaire). However, none of Baron/LeBlanc/Silber Claimants' objections are justified for the following reasons:

- First, the Baron/LeBlanc/Silber Claimants have withheld information in response to Part II, Questions 2-7, relating to the medical basis for the Claimant's asserted disease on the basis of a purported "consulting expert privilege" and have withheld documents on the same basis. This objection must fail as Baron & Budd has not met its burden of establishing that the consulting expert privilege applies to the information sought by the Questionnaire. Further, exceptional circumstances exist that would require the production of such documents.

- Second the Baron/LeBlanc/Silber Claimants refused to answer Question 6 in Part VII, Section A, and Question 6 in Part VII, Section B on grounds of confidentiality. This objection must fail, as confidentiality agreements do not immunize facts concerning a settlement from discovery.

## I. THE BARON/LEBLANC/SILBER CLAIMANTS HAVE IMPROPERLY ASSERTED CLAIMS OF "CONSULTING EXPERT" PRIVILEGE.

The Baron/LeBlanc/Silber Claimants have asserted objections based on the "consulting expert" privilege of Federal Rule 26(b)(4)(B) with respect to the following portions of the Questionnaire:

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Instruction C | **Asbestos-Related Condition(s):** Please indicate all asbestos-related medical conditions for which you have been diagnosed. To complete questions related to injuries, medical diagnoses, and/or conditions, please use the following categories of customarily diagnosed conditions: Mesothelioma; Asbestos-Related lung Cancer; Other Cancer (colon, laryngeal, esophageal, pharyngeal, or stomach); Clinically Severe Asbestosis; Asbestosis; Other Asbestos Disease. If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. | Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. |
| Instruction C | **Supporting Documents for Diagnosis:** This Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis. | Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. |

| Question | Text of Question | Text of Objection |
|---|---|---|
| Instruction C | **X-rays and B-reads: Please attach all x-ray readings and reports:** You may, but are not required to, attach chest x-rays. The court, however, has ruled that Grace may seek access to chest x-rays upon request. | Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. |
| Instruction C | **Pulmonary Function Tests:** Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based. | Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. |
| Instruction J | As indicated in the instructions to Parts II and III, this Questionnaire must be accompanied by copies with access to originals upon request of any and all documents you, your counsel, or your doctors have or subsequently obtain that (a) support or conflict with your diagnosis and/or (b) establish exposure to Grace asbestos-containing products as having a substantial causal role in the development of the medical diagnoses, and/or conditions claimed. Original documents provided to Grace will be returned within a reasonable time after its professionals and experts have reviewed the documents. | Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. |

| **Question** | **Text of Question** | **Text of Objection** |
| --- | --- | --- |
| Part II | Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. | Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. |

*See, e.g.*, Questionnaire of C. A. at WR GRACE PIQ 34952-0002 – 34952-0012; Questionnaire of E. A. at WR GRACE PIQ 35027-0002 – 35027-0002 – 35027-0012 (submitted by Baron & Budd) (attached at Exhibit E); Questionnaire of W. B. at WR GRACE PIQ 56389-0002 – 56389-0012; Questionnaire of W. C. at WR GRACE PIQ 56405-0002 – 56405-0012 (submitted by LeBlanc & Waddell) (attached at Exhibit F); Questionnaire of V. A. at WR GRACE PIQ 46902-0002 – 46902-0011; Questionnaire of P. A. at WR GRACE PIQ 46905-0002 – 46905-0012 (submitted by Silber Pearlman) (attached at Exhibit G).[4]

### A.   The Baron/LeBlanc/Silber Claimants Have Not Demonstrated A Valid Consultant Relationship.

As the parties claiming a privilege, the burden is on the Baron/LeBlanc/Silber Claimants to prove that the consulting expert privilege applies and prevents the discovery of otherwise relevant materials. *See In re Gabapentin Patent Litig.*, 214 F.R.D. 178 (D.N.J. 2003) ("[T]he party asserting the privilege bears the burden of establishing those facts that are the essential

---

[4] These exemplars are representative of the Questionnaires submitted on behalf of the Claimants named in Exhibits A-C. Grace will make available to the Court the Questionnaire for any individual named in Exhibits A-C upon the Court's request.

elements of the privileged relationship."). Indeed, "a party who alleges privilege as a reason for not complying with a [discovery request] has the burden of proof to assert ***specific facts*** relating to specific documents [or communications] and cannot rely on conclusory statements." *Mass. Sch. of Law v. Am. Bar Assoc.*, 914 F. Supp. 1172, 1178 (E.D. Pa. 1996) (emphasis added). The Baron/LeBlanc/Silber Claimants' privilege claim is utterly devoid of any facts, let alone specific facts that would be sufficient to justify their claims.

The Baron/LeBlanc/Silber Claimants assert that any doctor who performed any test, other than the doctors named expressly in the Questionnaire are so called "consulting experts." However, the Baron/LeBlanc/Silber Claimants have not demonstrated that a consulting relationship existed at the time that other tests were performed. Namely, the Baron/LeBlanc/Silber Claimants have not shown facts that would allow the Court to conclude that such a relationship existed, such as: "(1) the manner in which the consultation was initiated; (2) the nature, type and extent of information or material provided to, or determined by, the expert in connection with his review; (3) the duration and intensity of the consultative relationship; and (4) the terms of the consultation, if any (e.g. payment, confidentiality of test data or opinions, etc.)." *Ager v. Jane C. Stormont Hosp. and Training Sch. for Nurses*, 622 F.2d 496, 501 (10th Cir. 1980). The Baron/LeBlanc/Silber Claimants have not provided any of these critical facts. Absent this showing, claims of consulting expert privilege cannot be sustained. *See Mass. Sch. of Law* at 1178.

Additionally, the names of the consulting experts, firms or diagnostic screening companies that performed tests on the claimants on behalf of the firms are not privileged or shielded from disclosure under any scenario, even if the firms can establish that such a confidential relationship existed with such entities. *See Sea Colony, Inc. v. Continental Ins. Co.*,

7

63 F.R.D. 113, 117 (D. Del. 1974) (holding that the identity of non-testifying experts is not protected from discovery); *Butler v. Harrah's Marina Hotel Casino*, 1987 WL 16691, at *2 (E.D. Pa. Sept. 8, 1987) ("This Court believes that the proper interpretation of Rule 26 allows for the discovery of identities of experts who are not expected to testify as witnesses.").

      **B.    The "Exceptional Circumstances" Exception Requires Disclosure Of The Tests That Support Or Conflict With The Claimants' Diagnoses.**

Although the Baron/LeBlanc/Silber Claimants have not made the requisite showing that a confidential relationship existed, it is not necessary for the Court to require it because even if they could, it would not justify withholding of the requested medical information in this case. It is generally accepted that "exceptional circumstances" require disclosure of the type of medical information and tests being withheld. Fed. R. Civ. P. 26(b)(4)(B); *Ager*, 622 F.2d at 504; *see also Hoover v. U.S. Dep't. of the Interior*, 611 F.2d 1132, 1140-42 (5th Cir. 1980); *Perry v. United States*, 1997 WL 53136, at *2 (N.D. Tex. Feb. 4, 1997). Exceptional circumstances to overcome any consultant's privilege exist: (1) where it is impracticable for the other party to obtain the information from other sources, *see Ager*, 622 F.2d at 503 n.8; *Dixon v. Cappellini*, 88 F.R.D. 1, 3 (M.D. Pa. 1980); (2) where one party's experts cannot duplicate a test or an observation by a consulting expert, *see Ager*, 622 F.2d at 503 n.8, or (3) where a party may "shop" around for a favorable expert opinion, *see Coates v. AC & S, Inc.*, 133 F.R.D. 109, 110 (E.D. La. 1990). All three circumstances are present in this case and defeat the consultant privilege objection raised by the Baron/LeBlanc/Silber Claimants.

      **1.    It is impracticable to obtain these test results from another party and the tests cannot be duplicated.**

Exceptional circumstances are present because it is impracticable for Grace to obtain the information from other sources and Grace's experts cannot acquire the same information known by the consulting expert by performing their own x-ray readings or pulmonary function tests.

*See Ager*, 622 F.2d at 503 n.8; *Adams,* 132 F.R.D. at 442. Asbestosis is a progressive disease. A person with asbestosis should experience a worsening of his or her condition over time. The x-ray reports, diagnostic tests, and pulmonary function tests prepared by these alleged consultants are the only evidence of the claimant's physical condition at the time the test was performed. Even if Grace's experts could re-perform the tests, which they cannot, this would not be sufficient because the tests may be many years old and a significant change of circumstances likely has occurred during the intervening period of time. That is precisely why medical reports are routinely ordered disclosed based on exceptional circumstances. *See Braun v. Lorillard Inc.*, 84 F.3d 230, 236 (7th Cir.), cert. denied, 519 U.S. 992 (1996) (negative test results obtained by plaintiff's experts were discoverable because exceptional circumstances were found when lung tissue was destroyed by the plaintiff's expert testing, test results could not be obtained by other means and the cause of plaintiff's lung disease was in issue); *Delcastor, Inc. v. Vail Assocs., Inc.*, 108 F.R.D. 405, 409 (D. Colo. 1985) (defense expert's report was discoverable because exceptional circumstances were found where mudslide terrain eroded after the expert's examination); *Dixon*, 88 F.R.D. at 3 (reports made by psychologist and psychiatrist consulted by plaintiff immediately after alleged "de-programming" were discoverable because exceptional circumstances were found where information as to plaintiff's mental state at that specific time could not otherwise be obtained by defendants and plaintiff's mental state immediately following "de-programming" was in issue).

Moreover, these tests may be the only source of potentially exculpatory evidence. Any test that tends to show that a Claimant may have tested negative for the presence of asbestosis or another asbestos-related disease or that the Claimant is not impaired as the result of any asbestos-related disease is critically important to Grace's experts' evaluation of the pre-petition litigation

9

claims. Such evidence cannot be shielded from discovery by the consultant privilege, particularly where, as here, it is impossible for Grace to obtain the potentially exculpatory evidence from any other source or in any other manner. This Court specifically addressed this issue when first determining the scope of the medical information that would be required in the Questionnaire. At that time, the Court recognized the importance of the provision of exculpatory medical information. *See* Tr. of Hr'g at 233 (Jul. 19, 2005) ([The Court]: "Well, I know this. I know that if there's an x-ray that doesn't support the diagnosis, because it's negative, and it should be positive, [then] that relates to the diagnosis."). The Baron/LeBlanc/Silber Claimants' attempts to hide this information should be rejected summarily. This is the very information Grace has been seeking from the inception of this Bankruptcy. If exculpatory medical evidence exists about any of these Firms' Claimants, it must be produced as ordered by this Court, and sanctions should be imposed if it is withheld.

**2. The Potential "Shopping" of Experts Is an Exceptional Circumstance.**

Exceptional circumstances are also present because it has become clear that a high percentage of non-malignant asbestos claims are based on unreliable medical evidence. There is substantial evidence of the "shopping around" of Claimants to numerous doctors until a positive reading for asbestos-related disease is provided. Indeed, this practice is believed to be prevalent in asbestos cases.[5]

---

[5] *See*, *e.g.*, David Egilman, Letter to the Editor, *Asbestos Screenings*, 42 Am. J. of Indus. Med. 163 (2002). Other asbestos bankruptcy cases have found that a few accommodating "over-reading" B-readers are responsible for a large percentage of previously paid claims. Judge Fullam of the District of Delaware noted that "[c]ertain pro-plaintiff B-readers were so biased that their readings were simply unreliable." *Owens Corning v. Credit Suisse First Boston*, Memorandum and Order, Case No. 04-00905, Docket No. 106, at 6 (Mar. 31, 2005). Others have concluded that a substantial portion of asbestos litigation is supported by "specious medical evidence" including "evidence generated by the entrepreneurial medical screening enterprises and B-readers -- specially certified X-ray readers that the enterprises or plaintiff lawyers select, who often conform their findings and reports to the expectations of the plaintiff lawyers who retain them." Lester Brickman, *On the Theory Class's Theories of Asbestos Litigation: The Disconnect Between Scholarship and Reality*, 31 Pepp. L. Rev. 34, 35 (2004)**.**

*Coates v. AC & S, Inc.*, is on point. There, in a lawsuit alleging personal injury due to asbestos exposure, the District Court for the Eastern District of Louisiana held that "shopping" of tissue samples for a favorable expert opinion that a plaintiff's death resulted from mesothelioma constituted an exceptional circumstance under Rule 26(b)(4)(B). *See Coates*, 133 F.R.D. at 110. The Court ordered that the plaintiff was entitled to either depose or obtain copies of reports of experts to whom the tissue samples were taken. *See Id.* at 110-11. The Court stated that it was "still of the opinion that 'shopping' continues to take place and that such 'shopping' is sufficient to fall within the Rule's exceptional circumstances exception." *Id*. at 110. The Court noted that it was impracticable for the plaintiff to obtain this information by other means. *See Id.* at 111.

Further, with respect to this issue, David Austern, general counsel for the Manville Trust and the Future Claimants' Representative in this case, stated: "'Part of the problem was sort of an amazing elasticity -- which is about as calm a word as I can think of -- on the part of claimants' lawyers to find doctors who will say that somebody suffers from minimal asbestos disease.'" Christine Biederman, *et al*., *Toxic Justice*, Dallas Observer, Aug. 13, 1998. The disclosure of the B-readings, x-ray reports, and other diagnostic tests by these so-called "consulting experts" are the only source of information that would conclusively determine that such doctor shopping occurred. This type of doctor-shopping is at the heart of one of Grace's principle contentions in this case -- that the data supporting the underlying claims is unreliable. There simply is no justification for failure to provide it in response to the Questionnaire.

## II. THE EXISTENCE OF CONFIDENTIALITY AGREEMENTS DOES NOT EXCUSE THE BARON/LEBLANC/SILBER CLAIMANTS' OBLIGATION TO PRODUCE INFORMATION REGARDING SETTLEMENTS.

The Baron/LeBlanc/Silber Claimants lodge a confidentiality objection to the following questions:

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Part VII, Section A, Question 6 | Settlement amount for each defendant [with whom the claimant settled asbestos- or silica-related litigation]. | Claimant objects … [on the grounds that the question] requests … confidential information …. Further, for a majority of defendants any settlement agreements are subject to a confidentiality agreement. |
| Part VII, Section B, Question 6 | Please indicate the settlement amount [for each asbestos- or silica-related claim brought by the claimant]. | Claimant objects … [on the grounds that the question] requests … confidential information. |

*See, e.g.*, Questionnaire of G.A. at WR GRACE PIQ 34953-0036 and -0038.

This objection must fail for two reasons. First, the Baron/LeBlanc/Silber Claimants fail to make sufficiently specific allegations regarding these purported confidentiality agreements to allow the Court to determine whether any such privilege from discovery would apply. Second, even if the Baron/LeBlanc/Silber Claimants' factual allegations were sufficient, which they are not, the mere existence of a confidentiality agreement does not prevent the disclosure of the terms of a settlement agreement in litigation.

### A. The Baron/Leblanc/Silber Claimants' Allegations Are Insufficient To Support A Claim Of Confidentiality.

The Baron/LeBlanc/Silber Claimants, as the parties seeking to resist the requested discovery, "must state with specificity the objection and how it relates to the particular request being opposed." *See Harding v. Dana Transport, Inc.*, 914 F. Supp. 1084, 1102 (D.N.J. 1996) ("Broad-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request."). Instead, the Baron/LeBlanc/Silber Claimants make cursory, equivocal allegations of some unspecified confidentiality interest.

In their response to Part VII, Section A, Question 6, for example, which asks for the amount of settlements reached with defendants in asbestos- or silica-related litigation, the Baron/LeBlanc/Silber Claimants state, "for a *majority* of defendants, *any* settlement agreements are subject to a confidentiality agreement." *See, e.g.*, Questionnaire of G.A. at WR GRACE PIQ 34953-0036 (emphasis added). This conclusory assertion of confidentiality is devoid of several key details that would be necessary for the Court to assess the propriety of any confidentiality claim. First, by stating "for a majority of the defendants," the Baron/LeBlanc/Silber Claimants' objections render it impossible to determine the scope of the potential objection. Does the claimed confidentiality agreement apply to all settlements entered into between a particular Claimant, some, or none? Second, the allegation omits the terms of the purported confidentiality agreement. Not all confidentiality agreements are equivalent in scope. There is no way to determine whether, under the "confidentiality agreement" generically cited by the Baron/LeBlanc/Silber Claimants, the disclosure of all information is purportedly prohibited or whether only the disclosure of certain information is allegedly barred. Moreover, confidentiality provisions frequently have express exceptions that permit the disclosure of the confidential material upon a court order. Without specific allegations as to the terms of the purported confidentiality agreements, the Court cannot possibly ascertain the alleged propriety of the objection. *See* Tr. of Hr'g at 282-283 (Jul. 19, 2005) ([The Court]: "I don't know what the scope of those agreements are.").

The Baron/LeBlanc/Silber Claimants' confidentiality objection to Part VII, Subsection B, Question 6 is even more vague. There, the Baron/LeBlanc/Silber Claimants simply object on the grounds that the question requests "confidential information" without providing any basis as to either the nature of the confidential information or the source of the purported bar on disclosure.

13

At a minimum, the Claimants must provide proof of the existence of a confidentiality agreement, the identities of the parties subject to the confidentiality agreements, and the scope of the confidentiality agreement, so it can be litigated.

**B. As A Matter Of Law, Grace Is Entitled To Information Regarding The Amounts Of The Baron/Leblanc/Silber Claimants' Settlements And Trust Claims.**

Regardless of the sufficiency of their factual allegations, the Baron/LeBlanc/Silber Claimants' allegation that the mere existence of a confidentiality provision bars discovery of the amounts of various litigation and trust settlements is without legal merit. The law does not bar the discovery of settlement agreements, nor the information contained within such agreements. Settlement-related information and agreements may be discovered if they are relevant to the "subject matter involved in the pending action … [or such discovery] appears reasonably calculated to lead to the discovery of admissible evidence." *Griffin v. Mashariki*, 1997 WL 756914, at *1 (S.D.N.Y. Dec. 8, 1997) (collecting cases).

Accordingly, courts have found that "litigants cannot shield a settlement agreement from discovery ***merely because it contains a confidentiality provision***." *Cleveland Constr., Inc. v. Whitehouse Hotel, Ltd. P'ship*, 2004 WL 385052, at *1 (E.D. La. Feb. 25, 2004) (*quoting ABF Capital Mgmt. v. Askin Capital*, 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000)). This Court agreed with this very point when this issue arose in connection with its consideration of the Questionnaire during the July 2005 omnibus hearing. The PI Committee, acting on behalf of the interests of the Personal Injury Claimants (including the Baron/LeBlanc/Silber Claimants) objected to questions regarding the amounts of settlements with various defendants on the grounds that such settlements contain confidentiality agreements. Tr. of Hr'g at 282-83 (Jul. 19, 2005). Over the PI Committee's objection, the Court ordered that the claimants "identify the

14

defendants with whom [the Claimants] settled, the amount, and for what disease," and stated that a defendant "can come in and contest it if [a Claimant] violates their agreements." *Id.*

To the extent that the Court believes that such information needs protection from disclosure outside the Bankruptcy proceedings, the proper course is not to deny Grace access to the information, but to issue a protective order that restricts the use of the information obtained in response to these questions to the estimation proceedings. As the Third Circuit made clear, "The [C]ourt, in its discretion, is authorized by this subsection to fashion a set of limitations that ***allows as much relevant material to be discovered as possible***, while preventing unnecessary intrusions into the legitimate interests -- including … confidentiality interests -- that might be harmed by the release of the material sought." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) (emphasis added).

## CONCLUSION

For the foregoing reasons, Debtors respectfully request that the Court overrule the objections lodged by the Baron/LeBlanc/Silber Claimants and require that Claimants provide the required information by January 12, 2007.

Wilmington, Delaware
Dated: November 9, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

KIRKLAND & ELLIS LLP
Barbara M. Harding
David Mendelson
Brian T. Stansbury
Amanda C. Basta
655 Fifteenth Street, NW

Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*and*

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

*/s/ James E. O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession