**Exhibit G**



WR GRACE PIQ 46905-0001

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

YOU HAVE RECEIVED THIS QUESTIONNAIRE BECAUSE GRACE BELIEVES THAT YOU HAD SUED ONE OR MORE OF THE DEBTORS LISTED IN APPENDIX A ATTACHED TO THIS QUESTIONNAIRE BEFORE GRACE FILED FOR BANKRUPTCY ON APRIL 2, 2001 FOR AN ASBESTOS-RELATED PERSONAL INJURY OR WRONGFUL DEATH CLAIM, AND THAT CLAIM WAS NOT FULLY RESOLVED.

IF YOU HAVE SUCH A CLAIM, YOU MUST COMPLETE AND SUBMIT THIS QUESTIONNAIRE BY JANUARY 12, 2006 TO RUST CONSULTING, INC., THE CLAIMS PROCESSING AGENT, AT ONE OF THE FOLLOWING ADDRESSES:

| IF SENT BY U.S. MAIL | IF SENT BY FEDERAL EXPRESS, UNITED PARCEL SERVICE, OR A SIMILAR HAND DELIVERY SERVICE |
|---|---|
| RUST CONSULTING, INC. | RUST CONSULTING, INC. |
| CLAIMS PROCESSING AGENT | CLAIMS PROCESSING AGENT |
| RE: W.R. GRACE & CO. BANKRUPTCY | RE: W.R. GRACE & CO. BANKRUPTCY |
| P.O. BOX 1620 | 201 S. LYNDALE AVE. |
| FARIBAULT, MN 55021 | FARIBAULT, MN 55021 |

A QUESTIONNAIRE (AND ANY AMENDMENTS OR ADDITIONAL DOCUMENTS IN SUPPORT OF THE QUESTIONNAIRE) WILL NOT BE CONSIDERED UNLESS RECEIVED BY RUST CONSULTING, INC. BY JANUARY 12, 2006.

THIS QUESTIONNAIRE IS AN OFFICIAL DOCUMENT APPROVED BY THE COURT IN CONNECTION WITH ESTIMATING GRACE'S ASBESTOS-RELATED PERSONAL INJURY AND WRONGFUL DEATH CLAIMS AS A WHOLE. THE QUESTIONNAIRE IS BEING USED BY W. R. GRACE AS A MEANS TO SEEK INFORMATION ABOUT YOUR ASBESTOS CLAIM. BY TIMELY RETURNING THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE, GRACE, THE OFFICIAL COMMITTEES, AND THE FUTURE CLAIMANTS REPRESENTATIVE WILL SEEK TO PRIORITIZE THE PROCESSING OF YOUR CLAIM UNDER ANY TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION.

THE COURT HAS ORDERED THAT, AS PART OF THE DISCOVERY PROCESS, ALL HOLDERS OF PRE-PETITION ASBESTOS PERSONAL INJURY CLAIMS MUST COMPLETE AND RETURN THIS QUESTIONNAIRE. THUS, FAILURE TO TIMELY RETURN THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE MAY RESULT IN SANCTIONS AND/OR OTHER RELIEF AVAILABLE UNDER APPLICABLE FEDERAL RULES.

BECAUSE YOUR CLAIM WILL BE EVALUATED IN ACCORDANCE WITH THE TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION, COMPLETION OF THIS QUESTIONNAIRE DOES NOT MEAN THAT YOUR CLAIM WILL EITHER BE ALLOWED OR PAID. TO THE EXTENT YOU ATTACH TO THIS QUESTIONNAIRE DOCUMENTS ALSO NEEDED BY THE TRUST TO PROCESS YOUR CLAIM, SUCH DOCUMENTS WILL BE PROVIDED TO THE TRUST AND YOU WILL NOT NEED TO RESUBMIT THEM.

**REDACTED**

WR GRACE PIQ 48905-0002

## INSTRUCTIONS

### A.  GENERAL

1.  This Questionnaire refers to any lawsuit that you filed before April 2, 2001 for an "asbestos-related personal injury or wrongful death claim." This term is intended to cover any claim alleging any claim for personal injuries or damages that relates to: (a) exposure to any products or materials containing asbestos that were manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present affiliates, or any of the predecessors of any of the Debtors or any of their respective past or present affiliates), or (b) exposure to vermiculite mined, milled or processed by the Debtors (or any of their respective past or present affiliates, any of the predecessors of any of the Debtors or any of their predecessors' respective past or present affiliates). It includes claims in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law or equity, or admiralty for, relating to, or arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal injuries or other damages caused, or allegedly caused, directly or indirectly, and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors.  It includes all such claims, debts, obligations or liabilities for compensatory damages such as loss of consortium, personal or bodily injury (whether physical, emotional or otherwise), wrongful death, survivorship, proximate, consequential, general, special, and punitive damages.

2.  Your Questionnaire will be deemed filed only when it has been received by Rust Consulting Inc., the Claims Processing Agent, via U.S. Mail, Federal Express, United Parcel Service or similar hand delivery service.  A Questionnaire that is submitted by facsimile, telecopy or other electronic transmission will not be accepted and will not be deemed filed.

Do not send any Questionnaire to the Debtors, counsel for the Debtors, the Future Claimants Representative, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Asbestos Property Damage Claimants, the Official Committee of Equity Security Holders, or such Committees' counsel. Questionnaires that are filed with or sent to anyone other than Rust Consulting, Inc. will be deemed not to have been submitted, and such Questionnaires will not be considered.

3.  Your completed Questionnaire must (i) be written in English, and (ii) attach relevant supporting materials as instructed further below.

4.  All holders of claims described on page i (and as described in further detail in Instruction A (1) above) are required to file this Questionnaire by Jan. 12, 2006.  Your Questionnaire will be used in connection with the estimation hearing to be conducted by the Court pursuant to the Estimation Procedures Order (a copy of which is attached as Appendix B).

5.  Any subsequent amendment to the Questionnaire will not be considered for any purpose unless received by Jan. 12, 2006.

### B.  PART I -- Identity of Injured Person and Legal Counsel

Respond to all applicable questions. If you are represented by a lawyer, then in Part I (b), please provide your lawyer's name and the name, telephone number and address of his/her firm. If you are represented by a lawyer, he/she must assist in the completion of this Questionnaire. Also, if you would prefer that the Debtors send any additional materials only to your lawyer, instead of sending such materials to you, then check the box indicating this in Part I (b).

All references to "you" or the like in Parts I through X shall mean the injured person.  If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete this Questionnaire.

### C.  PART II -- Asbestos-Related Condition(s)

Please indicate all asbestos-related medical conditions for which you have been diagnosed. To complete questions related to injuries, medical diagnoses, and/or conditions, please use the following categories of customarily diagnosed conditions:

- Mesothelioma
- Asbestos-Related Lung Cancer
- Other Cancer (colon, laryngeal, esophageal, pharyngeal, or stomach)
- Clinically Severe Asbestosis
- Asbestosis
- Other Asbestos Disease

If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis.  For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

Supporting Documents for Diagnosis:  This Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis.

X-rays and B-reads:  Please attach all x-ray reading and reports. You may, but are not required to, attach chest x-rays.  The court, however, has ruled that Grace may seek access to chest x-rays upon request.

Pulmonary Function Tests:  Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based.

ii

**REDACTED**


WR GRACE PIQ 46906-0003

### D. PART III – Direct Exposure to Grace Asbestos-Containing Products

In Part III, please provide the requested information for the job and site at which you were exposed to Grace asbestos-containing products. Include the dates of exposure to each Grace asbestos-containing product. If your exposure was a result of your employment, use the list of occupation and industry codes below to indicate your occupation and the industry in which you worked at each site. If you allege exposure to Grace asbestos-containing products at multiple sites, the Court has ordered that you must complete a separate Part III for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

Attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease.

#### Occupational Codes

| | |
|---|---|
| 01.  Air conditioning and heating installer/maintenance | 31.  Iron worker |
| 02.  Asbestos miner | 32.  Joiner |
| 03.  Asbestos plant worker/asbestos manufacturing worker | 33.  Laborer |
| 04.  Asbestos removal/abatement | 34.  Longshoreman |
| 05.  Asbestos sprayer/spray gun mechanic | 35.  Machinist/machine operator |
| 06.  Assembly line/factory/plant worker | 36.  Millwright/mill worker |
| 07.  Auto mechanic/bodywork/brake repairman | 37.  Mixer/bagger |
| 08.  Boilermaker | 38.  Non-asbestos miner |
| 09.  Boiler repairman | 39.  Non-occupational/residential |
| 10.  Boiler worker/cleaner/inspector/engineer/installer | 40.  Painter |
| 11.  Building maintenance/building superintendent | 41.  Pipefitter |
| 12.  Brake manufacturer/installer | 42.  Plasterer |
| 13.  Brick mason/layer/hod carrier | 43.  Plumber - install/repair |
| 14.  Burner operator | 44.  Power plant operator |
| 15.  Carpenter/woodworker/cabinetmaker | 45.  Professional (e.g., accountant, architect, physician) |
| 16.  Chipper | 46.  Railroad worker/carman/brakeman/machinist/conductor |
| 17.  Clerical/office worker | 47.  Refinery worker |
| 18.  Construction - general | 48.  Remover/installer of gaskets |
| 19.  Custodian/janitor in office/residential building | 49.  Rigger/stevedore/seaman |
| 20.  Custodian/janitor in plant/manufacturing facility | 50.  Rubber/tire worker |
| 21.  Electrician/inspector/worker | 51.  Sandblaster |
| 22.  Engineer | 52.  Sheet metal worker/sheet metal mechanic |
| 23.  Firefighter | 53.  Shipfitter/shipwright/ship builder |
| 24.  Fireman | 54.  Shipyard worker (md. repair, maintenance) |
| 25.  Flooring installer/tile installer/tile mechanic | 55.  Steamfitter |
| 26.  Foundry worker | 56.  Steelworker |
| 27.  Furnace worker/repairman/installer | 57.  Warehouse worker |
| 28.  Glass worker | 58.  Welder/blacksmith |
| 29.  Heavy equipment operator (includes truck, forklift, & crane) | 59.      Other |
| 30.  Insulator | |

#### Industry Codes

| | |
|---|---|
| 001.  Asbestos abatement/removal | 109.  Petrochemical |
| 002.  Aerospace/aviation | 110.  Railroad |
| 100.  Asbestos mining | 111.  Shipyard-construction/repair |
| 101.  Automotive | 112.  Textile |
| 102.  Chemical | 113.  Tire/rubber |
| 103.  Construction trades | 114.  U.S. Navy |
| 104.  Iron/steel | 115.  Utilities |
| 105.  Longshore | 116.  Grace asbestos manufacture or milling |
| 106.  Maritime | 117.  Non-Grace asbestos manufacture or milling |
| 107.  Military (other than U.S. Navy) | 118.  Other |
| 108.  Non-asbestos products manufacturing | |

REDACTED

WR GRACE  PIQ  46905-0004

**E.  PART IV -- Indirect Exposure to Grace Asbestos-Containing Products**
In Part IV, please provide the information requested for any injury alleged to have been caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person.  If you allege exposure through contact/proximity with multiple injured persons, please complete a separate Part IV for each injured person.  For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.

**F.  PART V -- Exposure to Non-Grace Asbestos-Containing Products**
In Part V, please provide the requested information for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products.  If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate Part V for each party.  If exposure was in connection with your employment, use the list of occupation and industry codes in Part III to indicate your occupation and the industry in which you worked.  For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

**G.  PART VI -- Employment History**
In Part VI, please provide the information requested for each industrial job you have held, other than jobs already listed in Parts III or V.  Use the list of occupation and industry codes in the instructions to Part III to indicate your occupation and the industry in which you worked for each job.  Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**H.  PART VII -- Litigation and Claims Regarding Asbestos and/or Silica**
In Part VII, please describe any lawsuits and/or claims that were filed by you or on your behalf regarding asbestos or silica.

**I.  PART VIII -- Claims by Dependents or Related Persons**
Part VIII is to be completed only by dependents or related persons (such as spouse or child) of an injured person who sued the Debtors before April 2, 2001 for an asbestos-related personal injury or wrongful death claim against Grace not involving physical injury to him-/herself on account of his/her own exposure.  One example of such a claim would be a claim for loss of consortium.  If you are asserting such a claim, complete the entire Questionnaire, providing all information and documentation regarding the injured person.

**J.  PART IX -- Supporting Documentation**
In Part IX, please mark the boxes next to each type of document that you are submitting with this Questionnaire.  As indicated in the instructions to Parts II and III, this Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that (a) support or conflict with your diagnosis and/or (b) establish exposure to Grace asbestos-containing products as having a substantial causal role in the development of the medical diagnoses, and/or conditions claimed.  Original documents provided to Grace will be returned within a reasonable time after its professionals and experts have reviewed the documents.

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such cost.

**K.  PART X -- Attestation that Information is True, Accurate and Complete**
By signing Part X, you, the injured person, are attesting and swearing, under penalty of perjury, that, to the best of your knowledge, all of the information in this Questionnaire is true, accurate and complete.  If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete and sign Part X on behalf of the injured person.

The legal representative of the injured person must complete and sign Part X where indicated.

**REDACTED**

WR GRACE PIQ 46906-0005

## PART I: IDENTITY OF INJURED PERSON AND LEGAL COUNSEL

**a.** GENERAL INFORMATION                    **REDACTED**

1. Name of Claimant: _____     2. Gender: • Male ☐ Female

     First         MI        Last

3. Race (for purposes of evaluating Pulmonary Function Test results): ......... See Attached PFT, if applicable.  ☐ White/Caucasian
                                                          ☐ African American
                                                          ☐ Other

4. Last Four Digits of Social Security Number: _____     5. Birth Date: _____
6. Mailing Address: _____
        Address                City            State/Province     Zip/Postal Code

7. Daytime Telephone Number: ...................................................

**b.** LAWYER'S NAME AND FIRM

1. Name of Lawyer:   Michael J. Hanners
2. Name of Law Firm With Which Lawyer is Affiliated:   Silber Pearlman, LLP
3. Mailing Address of Firm:   2711 N. Haskell Ave, 5th FL - LB 32   Dallas      Texas      75204
                             Address                City        State/Province     Zip/Postal Code
4. Law Firm's Telephone Number or Lawyer's Direct Line: .....................   (214) 874-7000

   • • Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in lieu of sending such materials to you.

**c.** CAUSE OF DEATH (IF APPLICABLE)

1. Is the injured person living or deceased? ...........................................   ☐ Living   • • Deceased

   If deceased, date of death: .............................................   10/23/2003

2. If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete the following:

     Primary Cause of Death (as stated in the Death Certificate):   See attached death certificate

     Contributing Cause of Death (as stated in the Death Certificate):   See attached death certificate

## PART II: ASBESTOS RELATED CONDITIONS

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire. Subject to the foregoing objections, please refer to response below.

1. Please check the box next to the condition being alleged:

   ☐ Asbestos-Related Lung Cancer        ☐ Mesothelioma

   • • Asbestosis                ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)

   ☐ Other Asbestos Disease        ☐ Clinically Severe Asbestosis

   a. Mesothelioma: If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following (check all that apply):

      ☐ diagnosis from a pathologist certified by the American Board of Pathology

      ☐ diagnosis from a second pathologist certified by the American Board of Pathology

      ☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial casual role in the development of the condition

      ☐ other (please specify): _____

REC'D JUL 1 2 2006

PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

WR GRACE PIQ 46906-0006

b. **Asbestos-Related Lung Cancer:** If alleging Asbestos-Related Lung Cancer, were you diagnosed with primary lung cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

☐ diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐ other (please specify): _____

c. **Other Cancer:**

(i) If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐ colon     ☐ pharyngeal     ☐ esophageal     ☐ laryngeal     ☐ stomach cancer

☐ other, please specify: _____

(ii) Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☐ other (please specify): _____

PART II: ASBESTOS-RELATED CONDITION(S) (Continued)



WR GRACE PIQ  46905-0007

d.  **Clinically Severe Asbestosis:**  If alleging Clinically Severe Asbestosis, was your diagnosis based on the following (check all that apply):

☐  diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐  a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐  a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

☐  asbestosis determined by pathology

☐  a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing: Selection of Reference Values and Interpretive Strategies*, demonstrating total lung capacity less than 65% predicted

☐  a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing: Selection of Reference Values and Interpretive Strategies*, demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐  a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐  other (please specify): _____

e.  **Asbestosis:**  If alleging Asbestosis, was your diagnosis based on the following (check all that apply): Subject to the foregoing objections, one or more of the following may apply.  The answer may be derived from the attached medical documentation.

☐  diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐  a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following:  (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses (2000)*

☐  a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a second B-reader certified by the National Institute for Occupational Safety and Health, with one of the following:  (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses (2000)*

☐  asbestosis determined by pathology

☐  a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing: Selection of Reference Values and Interpretive Strategies*, demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐  a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐  other (please specify): _____

PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

WR GRACE PIQ 46905-0008

f.  **Other Asbestos Disease:** If alleging any asbestos-related injuries, medical diagnoses, and/or conditions other than those above, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ diagnosis determined by pathology

☐ a chest x-ray conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses (2000)*

☐ a chest x-ray conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a second B-reader certified by the National Institute for Occupational Safety and Health, with one of the following (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses (2000)*

☐ a chest x-ray reading other than those described above

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing: Selection of Reference Values and Interpretive Strategies*, demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a pulmonary function test other than that discussed above

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☐ A CT Scan or similar testing

☐ a diagnosis other than those above

☐ other (please specify): _____

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)

WR GRACE PIQ  48906-0009

2.  **Information Regarding Diagnosis**  Subject to the foregoing objections, please refer to claimant's responses below and the medical records attached hereto.

Date of Diagnosis: ..............................................

Diagnosing Doctor's Name:          Petroff, Peter

Diagnosing Doctor's Specialty:          PULMONOLOGIST

Diagnosing Doctor's Mailing Address:          Independent Medical Associates, P.A.
                                                                    Address

| San Antonio | TX | 78229 |
|---|---|---|
| City | State/Province | Zip/Postal Code |

Diagnosing Doctor's Daytime Telephone Number: ...................

**With respect to your relationship to the diagnosing doctor, check all applicable boxes:** Subject to the foregoing objections, please refer to responses below.

Was the diagnosing doctor your personal physician? ........................................... ☐ Yes  ☐ No

Was the diagnosing doctor paid for the diagnostic services that he/she performed? ................. ☐ Yes  ☐ No

*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor? ☐ Yes ☐ No

Was the diagnosing doctor referred to you by counsel? ........................................... ☐ Yes  ☐ No

Are you aware of any relationship between the diagnosing doctor and your legal counsel? ............. ☐ Yes  ☐ No

*If yes, please explain:* _____

Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the diagnosis? ........................................................ • • Yes  ☐ No

Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis? ....................................................................... ☐ Yes  ☐ No

Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to diagnosis? ............................................ See attached medical documentation, if applicable. ☐ Yes  ☐ No

Did the diagnosing doctor perform a physical examination?  See attached medical documentation, if applicable. ☐ Yes  ☐ No

Do you currently use tobacco products? ......... See attached interrogatory responses, if applicable. ☐ Yes  ☐ No

Have you ever used tobacco products? ......................... See attached interrogatory responses, if applicable. ☐ Yes  ☐ No

*If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco products and the dates and frequency with which such products were used:* See attached interrogatory responses, if applicable.

| | | | | | |
|---|---|---|---|---|---|
| ☐ Cigarettes | Packs Per Day (half pack = .5) | | See Attached Interrogatory Responses, if applicable | Start Year | End Year |
| ☐ Cigars | Cigars Per Day | _____ | | Start Year | End Year |
| ☐ If Other Tobacco Products, please specify (e.g., chewing tobacco): | | | | | |
| | Amount Per Day | _____ | | Start Year | End Year |

Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")? .............
See attached medical documentation, if applicable.                                                                ☐ Yes  ☐ No

*If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:*
     See attached medical documentation, if applicable. _____

3.  **Information Regarding Chest X-Ray**

Please check the box next to the applicable location where your chest x-ray was taken (check one):  Subject to the foregoing objections, please refer to attached deposition, if available, and attached medical documentation.

☐ Mobile laboratory  ☐ Job site  ☐ Union Hall  ☐ Doctor office  ☐ Hospital  ☐ Other: _____

Address where chest x-ray taken: _____
                                                    Address

| | | |
|---|---|---|
| City | State/Province | Zip/Postal Code |

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE PIQ 46805-0010

4.  **Information Regarding Chest X-Ray Reading**

Date of Reading: _____ ILO score: _____

Name of Reader:     See Attached PFT, if applicable

Reader's Daytime Telephone Number: ............................ _____

Reader's Mailing Address: _____
                                         Address

City                                        State/Province                        Zip/Postal Code

With respect to your relationship to the reader, check all applicable boxes:

Was the reader paid for the services that he/she performed ................................. ☐ Yes  ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the reader? ☐ Yes  ☐ No

Was the reader referred to you by counsel? .............................................. ☐ Yes  ☐ No

Are you aware of any relationship between the reader and your legal counsel? .......... ☐ Yes  ☐ No

*If yes, please explain:* _____

Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?
................................................................................................ ☐ Yes  ☐ No

*If the reader is not a certified B-reader, please describe the reader's occupation, specialty, and the method through which the reading was made:* _____

5.  **Information Regarding Pulmonary Function Test:  N/A**                Date of Test: _____

List your height in feet and inches when test given:  N/A          _____ ft _____ inches

List your weight in pounds when test given:  N/A                              _____ lbs

Total Lung Capacity (TLC): _____          _____ % of predicted

Forced Vital Capacity (FVC): _____        _____ % of predicted

FEV1/FVC Ratio: _____                          _____ % of predicted

Name of Doctor Performing Test (if applicable): _____

Doctor's Specialty: _____

Name of Clinician Performing Test (if applicable): _____

Testing Doctor or Clinician's Mailing Address: _____
                                                              Address

City                                        State/Province                        Zip/Postal Code

Testing Doctor or Clinician's Daytime Telephone Number: .............................. ( _____ ) _____ – _____

Name of Doctor Interpreting Test: _____

Doctor's Specialty: _____

Interpreting Doctor's Mailing Address: _____
                                                   Address

City                                        State/Province                        Zip/Postal Code

Interpreting Doctor's Daytime Telephone Number: ...................

WR GRACE PIQ 46906-0011

## PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

With respect to your relationship to the doctor or clinician who performed the pulmonary function test check all applicable boxes: N/A

If the test was performed by a doctor, was the doctor your personal physician? . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

Was the testing doctor and/or clinician paid for the services he/she performed? . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician? ☐ Yes ☐ No

Was the testing doctor or clinician referred to you by counsel? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

Are you aware of any relationship between either the doctor or clinician and your legal counsel? . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

*If yes, please explain:* _____

Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at
the time of the pulmonary function test? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:

Was the doctor your personal physician? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? . . . . . . . . . . . . . . . ☐ Yes ☐ No

Was the doctor referred to you by counsel? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

*If yes, please explain* _____

Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the
American Board of Internal Medicine at the time the test results were reviewed? . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

6.  **Information Regarding Pathology Reports:**

Date of Pathology Report: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Findings: _____

Name of Doctor Issuing Report: _____

Doctor's Specialty: _____

Doctor's Mailing Address: _____
                          Address

| City | State/Province | Zip/Postal Code |
|------|----------------|-----------------|

Doctor's Daytime Telephone Number: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:

Was the doctor your personal physician? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . N\A ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? . . . . . . . . . . . . . . . . . . . . . . . . . . . . N\A ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

Was the doctor referred to you by counsel? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

*If yes, please explain:* _____

Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis? . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

## PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

7.  **With respect to the condition alleged, have you received medical treatment from a doctor for the condition? Please refer to the foregoing
objections.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

*If yes, please complete the following:*

WR GRACE PIQ  46805-0012

Name of Treating Doctor: _____

Treating Doctor's Specialty: _____

Treating Doctor's Mailing Address: _____

Address _____

| City | State/Province | Zip/Postal Code |

Treating Doctor's Daytime Telephone Number: . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Was the doctor paid for the services that he/she performed? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     ☐  Yes     ☐  No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? . . . . . . . . . . . . . . . . . . . . . . .     ☐  Yes     ☐  No


[REMAINDER OF PAGE INTENTIONALLY BLANK]

WR GRACE PIQ 46905-0013

## PART III: DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Grace asbestos-containing products

(b) A worker who personally removed or cut Grace asbestos-containing products

(c) A worker who personally installed Grace asbestos-containing products

(d) A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(e) A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f) If other, please specify

Site of Exposure: Subject to the foregoing objections, please refer to the attached WHS, interrogatory responses, Statement of Earnings and/or depositions, if applicable.

Site Name: _____    Location: _____

Site Type: ☐ Residence   ☐ Business    Site Owner: _____

Employer During Exposure: _____

Unions of which you were a member during your employment: _____

| Product(s) | Basis for Identification of Each Grace Product | Dates and Duration of Exposure (hours/day, days/year) | Occupation Code (If Code 59, specify) | Industry Code (If Code 148, specify) | Was exposure due to working in or avoid area where product was being installed, mixed, removed or cut? (If Yes, please indicate both regular proximity to such areas) | Nature of Exposure |
|---|---|---|---|---|---|---|
| Job 1 Description: | | | | | | |
| Job 2 Description: | | | | | | |
| Job 3 Description: | | | | | | |
| Job 4 Description: | | | | | | |
| Job 5 Description: | | | | | | |
| Job 6 Description: | | | | | | |

WR GRACE PIQ 46905-0014

## PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

1. Are you asserting an injury caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person?  Subject to the foregoing objections, please refer to attached WHS, interrogatory responses and deposition, if applicable. ☐ Yes  ☐ No

   *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to Grace asbestos-containing products.  For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.*

2. Please indicate the following information regarding the other injured person:  Subject to the foregoing objections, please refer to the attached WHS, interrogatory responses and deposition, if applicable.

   Name of Other Injured Person: _____  Gender: ☐ Male  ☐ Female

   Last Four Digits of Social Security Number: ___ ___ ___ ___    Birth Date: _____/_____/_____

3. What is your Relationship to Other Injured Person: Subject to the foregoing objections, please  ☐ Spouse  ☐ Child  ☐ Other refer to attached WHS, interrogatory responses and deposition, if applicable.

4. Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:

   Subject to the foregoing objections, please refer to attached WHS, interrogatory responses and deposition, if applicable.

5. Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products:  Subject to the foregoing objections, please refer to attached WHS, interrogatory responses and deposition, if applicable.

   From: _____    To: _____

6. Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:

   Subject to the foregoing objections, please refer to attached WHS, interrogatory responses and deposition, if applicable.

7. Has the Other Injured Person filed a lawsuit related to his/her exposure?  Subject to the foregoing objections, please  ☐ Yes  ☐ No refer to attached WHS, interrogatory responses and deposition, if applicable. . . . . . . . . . . . . . . . . . . . . . .

   *If yes, please provide caption, case number, file date, and court name for the lawsuit:*

   Caption: _____

   Case Number: _____    File Date: _____

   Court Name: _____

8. Nature of Your Own Exposure to Grace Asbestos-Containing Product:

   Subject to the foregoing objections, please refer to attached WHS, interrogatory responses and deposition, if applicable.

9. Dates of Your Own Exposure to Grace Asbestos-Containing Product:  Subject to the foregoing objections, please refer to attached WHS, interrogatory responses and deposition, if applicable.

   From: _____/_____/_____    To: _____/_____/_____

10. Your Basis for Identification of Asbestos-Containing Product as Grace Product:

    Subject to the foregoing objections, please refer to attached WHS, interrogatory responses and deposition, if applicable.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

WR GRACE PIQ 46805-0015

## PART IV: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below, for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products

(b) A worker who personally removed or cut Non-Grace asbestos-containing products

(c) A worker who personally installed Non-Grace asbestos-containing products

(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others.

(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f) If other, please specify.

| Party Against which Lawsuit or Claim was Filed: See Attached List of Parties Against Which Lawsuit or Claim Was Filed. | | Product(s) | Dates and Frequency of Exposure Hours/day/ days/year | Occupation Code If Code 59 sixth) | Industry Code If Code 21 Specify | Was exposure site to working in or around areas where product was being installed, mixed, removed, or cut? If yes, please indicate the certain proximity to such areas. | Nature of Exposure |
|---|---|---|---|---|---|---|---|
| **Site of Exposure 1** | Job 1 Description: | | | | | | |
| Site Name: | | | | | | | |
| Address: | Job 2 Description: | | | | | | |
| City and State: | | | | | | | |
| Site Owner: | Job 3 Description: | | | | | | |
| **Site of Exposure 2** | Job 1 Description: | | | | | | |
| Site Name: | | | | | | | |
| Address: | Job 2 Description: | | | | | | |
| City and State: | | | | | | | |
| Site Owner: | Job 3 Description: | | | | | | |
| **Site of Exposure 3** | Job 1 Description: | | | | | | |
| Site Name: | | | | | | | |
| Address: | Job 2 Description: | | | | | | |
| City and State: | | | | | | | |
| Site Owner: | Job 3 Description: | | | | | | |

Subject to the foregoing objections for exposure information, see attached WHS, interrogatory responses, co-worker work history sheets and deposition, if applicable.

11

WR GRACE PIQ 46806-0016

## PART VI: EMPLOYMENT HISTORY

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial work experience up to and including your current employment. For each job, include your employer, location of employment, and dates of employment. Only include jobs at which you worked for at least one month. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed. Subject to the foregoing objections, please refer to attached Itemized Statement of Earnings, WHS and deposition, if applicable.

Occupation Code: _____ If Code 59, specify: _____

Industry Code: _____ If Code 118, specify: _____

Employer: _____

Beginning of Employment: ___/___/___ End of Employment: ___/___/___

Location: _____
       Address

City _____ State/Province _____ Zip/Postal Code

Occupation Code: _____ If Code 59, specify: _____

Industry Code: _____ If Code 118, specify: _____

Employer: _____

Beginning of Employment: ___/___/___ End of Employment: ___/___/___

Location: _____
       Address

City _____ State/Province _____ Zip/Postal Code

Occupation Code: _____ If Code 59, specify: _____

Industry Code: _____ If Code 118, specify: _____

Employer: _____

Beginning of Employment: ___/___/___ End of Employment: ___/___/___

Location: _____
       Address

City _____ State/Province _____ Zip/Postal Code

Occupation Code: _____ If Code 59, specify: _____

Industry Code: _____ If Code 118, specify: _____

Employer: _____

Beginning of Employment: ___/___/___ End of Employment: ___/___/___

Location: _____
       Address

City _____ State/Province _____ Zip/Postal Code

**PART VII: LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA**    WR GRACE PIQ 46806-0017

**a.** **LITIGATION** Subject to the foregoing objections, please refer to Claimant's responses below. Claimant's responses are limited to the asbestos-related lawsuit where Debtor was sued.

**1.** Have you ever been a plaintiff in a lawsuit regarding asbestos or silica? . . . . . . . . . . . . . . . . . . . . . . .    ☒ Yes   ☐ No

*If yes, please complete the rest of this Part VII(a) for each lawsuit. For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire.*

**2.** Please provide the caption, case number, file date, and court name for the lawsuit you filed:

Caption: _____

Case Number:    **REDACTED** _____    File Date: 06/28/1999 _____

Court Name: _____

**3.** Was Grace a defendant in the lawsuit? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    ☒ Yes   ☐ No

**4.** Was the lawsuit dismissed against any defendant? Subject to the foregoing objections, see attached List   ☐ Yes   ☐ No
of Parties, if applicable.

*If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

Please refer to foregoing objections. _____

**5.** Has a judgment or verdict been entered? Subject to the foregoing objections, see attached List of   ☐ Yes   ☐ No
Parties, if applicable.

*If yes, please indicate verdict amount for each defendant(s):*    Please refer to foregoing objections.

**6.** Was a settlement agreement reached in this lawsuit? Subject to the foregoing objections, please see   ☐ Yes   ☐ No
attached List of Parties, if applicable.

*If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

**a.** Settlement amount for each defendant:    Please refer to foregoing objections.

**b.** Applicable defendants:    Subject to the foregoing objections, please see attached List of Parties, if applicable.

**c.** Disease or condition alleged:    Subject to the foregoing objections, please see attached List of Parties, if applicable.

**d.** Disease or condition settled (if different than disease or condition alleged):    Subject to the foregoing objections, please see attached List of Parties, if applicable.

**7.** Were you deposed in this lawsuit? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    ☐ Yes   ☒ No

*If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.*

**b.** **CLAIMS** Subject to the foregoing objections, please refer to Claimant's responses below. Claimant's responses are limited to asbestos-related personal injury claims.

**1.** Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an
asbestos trust (other than a formal lawsuit in court)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    ☒ Yes   ☐ No

*If yes, please complete the rest of this Part VII(b). If no, please skip to Part VIII.*

**2.** Date the claim was submitted: Subject to the foregoing objections, please see   _____ / _____ / _____
attached List of Parties, if applicable.

**3.** Person or entity against whom the claim was submitted:    Subject to the foregoing objections, please see attached List of
Parties, if applicable.

**4.** Description of claim:    Subject to the foregoing objections, please see attached List of Parties, if applicable.

**5.** Was claim settled? Subject to the foregoing objections, please see attached List of Parties, if applicable.   ☐ Yes   ☐ No

**6.** Please indicate settlement amount: Please refer to foregoing objections. _____

**7.** Was the claim dismissed or otherwise disallowed or not honored? Subject to the foregoing objections,   ☐ Yes   ☐ No
please see attached List of Parties, if applicable.

*If yes, provide the basis for dismissal of the claim:*    Please refer to foregoing objections.

WR GRACE PIQ 46905-0018

## PART VIII: CLAIMS BY DEPENDANTS OR RELATED PERSONS

Subject to the foregoing objections, please see below for information regarding spouse, if applicable and to attached interrogatory responses regarding other dependents if applicable.

Name of Dependent or Related Person:    N/A                                    Gender:  ☐  Male  ☐  Female

Last Four Digits of Social Security Number:                        Birth Date:

Financially Dependent: ...........................................................................  ☐  Yes  ☐  No

Relationship to Injured Party:    ☐  Spouse    ☐  Child    ☐  Other    If other, please specify

Mailing Address:
            Address

City                                State/Province                            Zip/Postal Code

Daytime Telephone number: ...............................................

## PART IX: SUPPORTING DOCUMENTATION

Please use the checklists below to indicate which documents you are submitting with this form.

Copies:
- • • Medical records and/or report containing a diagnosis      ☐  X-rays
- ☐  Lung function test results                                 ☐  X-ray reports/interpretations
- ☐  Lung function test interpretations                         ☐  CT scans
- ☐  Pathology reports                                          ☐  CT scan reports/interpretations
- • • Supporting documentation of exposure to Grace             ☐  Depositions from lawsuits indicated in Part VII
       asbestos-containing products                                   of this Questionnaire
- • • Supporting documentation of other asbestos exposure       ☐  Death Certification

Originals:
- ☐  Medical records and/or report containing a diagnosis      ☐  Supporting documentation of other asbestos exposure
- ☐  Lung function test results                                ☐  X-rays
- ☐  Lung function test interpretations                        ☐  X-ray reports/interpretations
- ☐  Pathology reports                                         ☐  CT scans
- ☐  Supporting documentation of exposure to Grace             ☐  CT Scan reports/interpretations
       asbestos-containing products                            ☐  Death Certification

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:

## PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

The information provided in this Questionnaire must be accurate and truthful.  This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim.  The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both.  18 U.S.C. §§ 152 & 3571.
**TO BE COMPLETED BY THE INJURED PERSON.**

I swear, under penalty of perjury, that, to the best of my knowledge, all of the foregoing information contained in the Questionnaire is true, accurate and complete.

Signature:    DECEASED                                    Date:        /        /

Please Print Name:

**TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.**

I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete.

Signature:                                                Date:        /        /

Please Print Name:    Janice Hudson

WR GRACE   PIQ   46905-0019

## LIST OF PARTIES AGAINST WHICH A LAWSUIT OR CLAIM WAS FILED - PART VII-A-LITIGATION

Subject to the foregoing objections, please refer to the responses below for a list of each Party against which a lawsuit or claim was filed as requested in Part V of the Questionnaire and for information responsive to Part VII of the Questionnaire.



WR GRACE PIQ 46806-0020

| DATE CLAIM WAS SUBMITTED | ENTITY AGAINST WHOM CLAIM WAS SUBMITTED | DESCRIPTION OF CLAIM | CLAIM STATUS |
|---|---|---|---|
| 1/20/2000 | Celotex | ASBESTOS - PERSONAL INJURY | UNRESOLVED |
| 7/11/2001 | H. K. Porter | ASBESTOS - PERSONAL INJURY | SETTLED |
| 4/18/2001 | Johns-Manville | ASBESTOS - PERSONAL INJURY | SETTLED |
| 2/18/2002 | Rock Wool Manufacturing Company | ASBESTOS - PERSONAL INJURY | SETTLED |
| 10/10/1910 | UNR Asbestos Disease Claims Trust | ASBESTOS - PERSONAL INJURY | UNRESOLVED |

LIST OF PARTIES AGAINST WHICH A LAWSUIT OR CLAIM WAS FILED
PART VII B. CLAIM


WR GRACE PIQ 46805-0021

**ATTORNEY/CLIENT PRIVILEGED AND CONFIDENTIAL**

**PLEASE DO NOT REMOVE THIS PAGE**

**REDACTED**

**991127**

**Bankruptcy Processing**

**Questionnaire  (Executed)**

**W.R. GRACE AND CO.**


*-1-6-4-7-1-5-2-2-*



WR GRACE PIQ 46905-0022

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | } | Chapter 11 |
| | } | |
| W.R. GRACE & CO., et al | } | Case No. 01-1139(JKF) |
| | } | (Jointly Administered) |
| Debtors. | } | |

REDACTED

### CLAIMANT'S OBJECTIONS AND RESPONSES TO THE
### W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

 Claimant[1]     , by and through his counsel, Silber Pearlman, LLP, submits the following objections and responses to the "W.R. Grace Asbestos Personal Injury Questionnaire" ("Questionnaire"). In order to maintain the integrity of the formatting on Debtor's Questionnaire, Claimant has set out all of his/her general and specific objections in the following separate sections of this response and hereby incorporates each of these objections into Claimant's Questionnaire responses by reference herein.

### CLAIMANT'S GENERAL OBJECTIONS TO THE W.R. GRACE ASBESTOS
### PERSONAL INJURY QUESTIONNAIRE

 Claimant hereby files these objections in response to the Questionnaire propounded by W.R. Grace.

1. Claimant objects to the Questionnaire and its Instructions to the extent that they impose discovery obligations beyond those of the Federal Rules of Bankruptcy Procedure and/or the rules of civil procedure in the state where Claimant filed an asbestos personal injury lawsuit. Claimant will respond to the discovery Questionnaire in accordance with those rules. Claimant objects to the Instructions as they make document requests that are overly broad, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Claimant contends that the burden and expense of responding to Debtor's Questionnaire in the format requested by Debtor outweighs its likely benefit.

2. Claimant objects to the Questionnaire and its Instructions to the extent that they seek information or identification of documents that are attorney work product, subject to the attorney-client or consulting expert privileges, or are otherwise not discoverable under the Federal Rules of Bankruptcy Procedure or the rules of civil procedure in the state where Claimant filed an asbestos personal injury lawsuit. Claimant further objects to the Questionnaire and its Instructions to the extent it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. Inadvertent disclosure of any such information or documents shall not constitute waiver of any privilege.

---

[1] Throughout these Objections and Responses, the "Claimant" means the person identified in the Questionnaire Part I, Subsection a, whether living or deceased, who has or had an alleged asbestos-related disease and who filed an asbestos-related lawsuit either directly or through his/her Estate.



WR GRACE PIQ 46906-0023

3.      By providing responses to the Questionnaire, the claimant does not concede that the information provided is discoverable, relevant, or admissible.  All responses are provided subject to the objections set forth herein.  Each claimant reserves the right to challenge further discovery into the subject matter of the Questionnaire.

4.      Claimant objects to any request in the Questionnaire that seeks any information that is not in the Claimant's control, custody, or possession; is already in the control, custody or possession of the Debtor; or is obtainable with equal or greater facility by the Debtor.  The answers to the majority of the questions in Debtor's Questionnaire may be derived or ascertained from interrogatory responses and documents produced in connection with Claimant's asbestos personal injury lawsuit to which Debtor was a party prior to filing for bankruptcy ("Claimant's Asbestos Lawsuit").  Because the burden of deriving or ascertaining the answer is substantially the same for Debtor as for Claimant, Claimant has specified in Claimant's Questionnaire response the document from which the answer may be derived as permitted by Rule 33(d) of the Federal Rules of Civil Procedure as incorporated by Rule 7033 of the Federal Rules of Bankruptcy Procedure.

5.      In response to this Questionnaire, Claimant objects to the extent that the questions are vague, ambiguous and premature.  Moreover, Claimant objects to this Questionnaire to the extent that the scope and content of the information sought is unreasonably cumulative and duplicative.

6.      Claimant objects to this Questionnaire to the extent it requires Claimant to compile documents or information from sources not presently available to Claimants, including documents created or compiled by third parties.  Claimant objects to the Questionnaire to the extent it purports to require Claimant to gather and summarize information contained in voluminous papers that are already matters of public record.

7.      Claimant objects to this Questionnaire to the extent that the questions and their discreet sub-parts exceed twenty-five (25) in number.

8.      By submitting this response to the Questionnaire, Claimant does not intend to, and hereby does not, submit to the jurisdiction of the United States District Court for the District of Delaware, to the United States Bankruptcy Court for the District of Delaware, or to any other court.  Claimant reserves (i) all objections to jurisdiction and/or venue, (ii) all protections afforded under Federal Rule of Civil Procedure 45 and Federal Bankruptcy Rule of Procedure 9016, and (iii) the right to jury trial afforded under 28 U.S.C. § 157(b)(5).



WR GRACE PIQ 46906-0024

### CLAIMANT'S SPECIFIC OBJECTIONS TO THE W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

## INSTRUCTIONS

1.      Claimant objects to Instruction A.1 to the extent that it purports to include claims under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement or indemnity on the ground that it is overly broad and requests information that is not relevant to the subject matter of the estimation proceeding.

2.      Claimant objects to Instruction C in its entirety and Instruction J regarding medical supporting documentation on the ground that it is vague, ambiguous and exceeds the scope of discovery in that it seeks information and documents from experts that is not discoverable and is subject to the work product and consulting expert privileges. Claimant further objects to the portion of the instruction requiring claimant to "complete a separate Part II for each initial diagnosis and any previous or subsequent diagnosis or diagnostic tests that change or conflict with the initial diagnosis", on the ground that the burden outweighs its likely benefit. Claimant further objects to the instruction to attach all x-ray readings and reports and all pulmonary function test ("PFT") results on the ground that it is overly broad and ambiguous. Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. Without limiting the foregoing, Claimant objects to the following provisions of the Discovery Questionnaire as violative of Fed. R. Civ. P. 26(b)(4)(B):

        (a).    Claimant objects to Section C of the Instructions to the extent that it requests the completion of Part II of the Discovery Questionnaire "if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors."

        (b).    Claimant objects to Section C of the Instructions to the extent that it requests the production of "any and all documents" that "support or conflict with your diagnosis."

        (c).    Claimant objects to Section C of the Instructions to the extent that it requests the production of "all x-ray readings and reports."

        (d).    Claimant objects to Section C of the Instructions to the extent that it requests the production of "all pulmonary function test results, including the raw data and all spirometric tracings, on which the results are based."

        (e).    Claimant objects to Section J of the Instructions to the extent that it requests the production of "any and all documents" that "support or conflict with your diagnosis."

        (f).    Claimant objects to Part II of the Discovery Questionnaire to the extent that it requests disclosure of "diagnoses and diagnostic tests" by "multiple doctors" concerning "previous or subsequent diagnoses or diagnostic tests that change or conflict with the original diagnoses." Claimant urges this objection with regard to all "conditions" for which disclosure is requested.



WR GRACE PIQ 46996-0025

Subject to the foregoing, Claimant will attach any x-rays, B-reads, pulmonary function tests or pathology reports considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit.

3.    Claimant objects to Instruction D to the extent that it requests Claimant to "attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease" on the ground that it is ambiguous and exceeds the scope of discovery in that it requests documents that are subject to the work product privilege. Further, Claimant has been barred by the Bankruptcy Code Section 362 stay from pursuing discovery against Debtors.

## PART I: IDENTITY OF INJURED PERSONS AND LEGAL COUNSEL

### Subsection (a)(7) - Daytime Telephone Number of client

Claimant objects to this inquiry on the ground that it is neither relevant nor likely to lead to the discovery of admissible evidence. Claimant is represented by counsel, as reflected herein, and may only be contacted through counsel.

## PART II: ASBESTOS-RELATED CONDITION(S)

1.    **General Objections.** Claimant objects to Part II of the Questionnaire in its entirety on the ground that it exceeds the scope of discovery in that it seeks information not relevant to the estimation proceeding, information that is privileged, and information from experts that is non-discoverable and is subject to the consulting expert and work product privileges. Additionally, the information sought may be derived from the Claimant's discoverable medical records, which are attached to the Questionnaire. Claimant further objects on the ground that the information requested by this question and its sub-parts is equally available to the Debtor in that it may be derived from Claimant's discoverable medical reports attached to the Questionnaire. Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of any privileged communication between Claimant, and/or a representative of Claimant, and any attorney for Claimant, and/or a representative of any attorney for Claimant. In addition, pursuant to Federal Rule of Civil Procedure 26(b)(3), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of the work product of any attorney for Claimant, including but not limited to the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of Claimant.

2.    **Subsection 1(a)-(f) - Condition Being Alleged.** Claimant objects to this question and each of its subparts (a-f) on the ground that it exceeds the scope of discovery in that it seeks information not relevant to the estimation proceeding, and information from experts that is non-discoverable and is subject to the consulting expert and work product privileges. Claimant further objects on the ground that the information requested by this question and its sub-parts is equally available to the Debtor in that it may be derived from the claimant's discoverable medical reports attached to the Questionnaire. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.



WR GRACE PIQ  46905-0028

3.    **Subsection 2 - Information Regarding Diagnosis.**

    a.    Claimant objects to Part II, Subsection 2 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, seeks information from experts that is non-discoverable, and seeks information that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Claimant further objects to this question to the extent that it purports to require Claimant to gather and summarize information already contained in documents provided with Claimant's Questionnaire answers, and is, therefore, obtainable with equal or greater facility by the Debtors. Claimant's diagnosis of an asbestos-related condition may be based on one or more diagnostic test(s), pathology report(s) or physical examination(s). Therefore, asking Claimant to state a "date of diagnosis" is vague and ambiguous. Subject to and without waiving the foregoing, in response to Part II, Subsection 2, Claimant has provided the date of the medical report prepared by the medical doctor designated by Claimant in Claimant's Asbestos Lawsuit to provide expert medical opinions regarding Claimant's asbestos-related disease as needed to establish the elements of Claimant's claim under state law and has answered the questions regarding such doctor, if such information was readily available. Claimant has attached to this Questionnaire a copy of such expert's report along with any available x-ray readings, pulmonary function test reports ("PFT") and/or pathology reports considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit. In addition to specifying and attaching a copy of the records from which the answer to Part II, subsection 2 may be derived or ascertained and without waiving Claimant's right to do so pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Claimant has set out in the Questionnaire response the information that is contained in the medical reports and that was readily available to Claimant's attorney in electronic form.

    b.    Claimant further objects to the following questions in Part II, Subsection 2 regarding Claimant's relationship to the diagnosing doctor on the ground that these questions are violative of the attorney-client communication and/or attorney work product privileges, are harassing and seek information that is not relevant to the proceeding. Claimant has additional, specific objections for the questions noted below.



WR GRACE PIQ 46906-0027

With respect to your relationship to the diagnosing doctor, check all applicable boxes:

Was the diagnosing doctor your personal physician?  ☐ Yes  ☐ No

    **Further, Claimant specifically objects to this question on the ground that it is vague and ambiguous.**

Was the diagnosing doctor paid for the diagnostic services that he/she performed? ☐ Yes  ☐ No
*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor? ☐ Yes ☐ No

    **Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges, is misleading and cannot be fairly or completely answered with a "yes" or "no." Claimant retained counsel in order to determine whether he/she had an asbestos-related claim. As part of that analysis, Claimant's counsel referred Claimant to and/or forwarded a copy of Claimant's medical records to a medical doctor qualified to give opinions regarding asbestos-related disease.**

Was the diagnosing doctor referred to you by counsel?  ☐ Yes  ☐ No

    **Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges. Claimant objects to this question since "referred to you" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.**

Are you aware of any relationship between the diagnosing doctor and your legal counsel? ☐ Yes ☐ No

    **Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges. Claimant objects to this question since "relationship" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.**

*If yes, please explain:*

      Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

4.    **Subsection 3 - Information Regarding Chest X-Ray (Location of X-Ray)**

      Claimant objects to Part II, Subsection 3 on the ground that it is harassing, and exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, seeks information from experts that is non-discoverable, and seeks information that is subject to the consulting expert and work product privileges. Claimant further objects to this question on the ground that it is vague and ambiguous in that Claimant may have had multiple chest x-rays taken that do not change or conflict with Claimant's initial diagnosis of an asbestos-related condition and it would be duplicative, unduly burdensome and harassing to require Claimant to complete a separate Part II for each chest x-ray.

      Subject to and without waiving the foregoing, please refer to Claimant's deposition, if available, and any medical records attached hereto.



.WR GRACE PIQ 48906-0028

5.    **Subsection 4 - Information Regarding Chest X-Ray Reading (Results of X-Ray)**

a.    Claimant objects to Part II, Subsection 4 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, information from experts that is non-discoverable, and information that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Additionally, Claimant objects to this question on the ground that it is duplicative of other questions herein, and thus is unduly burdensome. Claimant objects to this question on the ground that it is vague and ambiguous in that Claimant may have had multiple chest x-rays taken that do not change or conflict with Claimant's initial diagnosis of an asbestos-related condition and it would be duplicative, unduly burdensome and harassing to require Claimant to complete a separate Part II for each chest x-ray. Subject to and without waiving the foregoing, in response to Part II, Subsection 4, Claimant has provided information regarding Claimant's certified B-reader report considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit. Claimant has set out in the Questionnaire response the information relating to Claimant's certified B-reader report that was readily available to Claimant's attorney in electronic form.

b.    · Claimant objects to Part II, Subsection 4 of the Discovery Questionnaire as violative of the attorney-client communication and/or attorney work product privileges to the extent that it asks: "if Claimant retained counsel in order to receive any of the services performed by the reader;" if "the reader was referred to you by counsel"; and if Claimant is "aware of any relationship between the reader and your legal counsel". Claimant further objects to the following questions in Part II, Subsection 4 regarding Claimant's relationship to the reader on the ground that these questions are harassing and seek information that is not relevant to the proceeding. Claimant has additional, specific objections for the questions noted below.

WR GRACE PIQ 46905-0029

| With respect to your relationship to the reader, check all applicable boxes: | | | | | |
|---|---|---|---|---|---|

With respect to your relationship to the reader, check all applicable boxes:
Was the reader paid for the diagnostic services that he/she performed?        ☐    Yes    ☐    No
*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the reader?    ☐    Yes    ☐    No
    **Further, Claimant specifically objects to this question on the ground that it is violative of the
    attorney-client communication and/or attorney work product privileges, is misleading and cannot
    be fairly or completely answered with a "yes" or "no." Claimant retained counsel in order to
    determine whether he/she had an asbestos-related claim. As part of that analysis, Claimant's
    counsel referred Claimant to and/or forwarded a copy of Claimant's x-ray to a medical doctor
    qualified to give opinions regarding asbestos-related disease.**
Was the reader referred to you by counsel?        ☐    Yes    ☐    No
    **Further, Claimant objects to this question on the ground that it is violative of the attorney-client
    communication and/or attorney work product privileges. Claimant objects to this question since
    "referred to you" is vague and ambiguous; therefore, the question cannot be answered with
    either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to
    provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the
    elements of Claimant's claim under state law.**
Are you aware of any relationship between the reader and your legal counsel?    ☐    Yes    ☐    No
    **Further, Claimant objects to this question on the ground that it is violative of the attorney-client
    communication and/or attorney work product privileges. Claimant objects to this question since
    "relationship" is vague and ambiguous; therefore, the question cannot be answered with either a
    "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide
    expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of
    Claimant's claim under state law.**
*If yes, please explain:*

       Subject to and without waiving the foregoing, please see Claimant's Questionnaire
responses and documents attached hereto.

6.    **Subsection 5 - Information Regarding Pulmonary Function Test**

    a.    Claimant objects to Part II, Subsection 5 on the ground that it exceeds the scope
of discovery in that it seeks information that is not relevant to the subject matter
of the estimation proceeding, that is non-discoverable, and that is subject to the
consulting expert, work product and attorney-client privileges. Claimant further
objects to this question as it is not reasonable and necessary to this proceeding
and is harassing. Additionally, Claimant objects to this question to the extent that
it purports to require Claimant to gather and summarize information contained in
documents already provided herewith, and is thus obtainable with equal or greater
facility by the Debtor. Subject to and without waiving the foregoing, in response
to Part II, Subsection 5, Claimant has provided information regarding Claimant's
pulmonary function test ("PFT") considered by Claimant's medical expert in
forming his/her opinion in connection with Claimant's Asbestos Lawsuit.
Claimant has set out in the Questionnaire response the information relating to
Claimant's PFT report that was readily available to Claimant's counsel in
electronic form.

    b.    Claimant objects to Part II, subsection 5 of the Discovery Questionnaire as
violative of the attorney-client communication and/or attorney work product
privileges to the extent that it asks: "if Claimant retained counsel in order to
receive any of the services performed by the testing doctor or clinician;" if "the
testing doctor or clinician was referred to you by counsel"; and if Claimant is
"aware of any relationship between the testing doctor or clinician and your legal