IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| W. R. Grace & Co., et al.[1], | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Re: Docket No. 13588 |
| | ) | |
| | ) | |

ANDERSON MEMORIAL HOSPITAL'S
MEMORANDUM IN OPPOSITION TO DEBTORS'
<u>MOTION FOR PROTECTIVE ORDER:  RULE 408, FRE ISSUE</u>

Anderson Memorial Hospital respectfully submits this memorandum of law regarding whether Rule 408, FRE serves to bar the deposition of the Debtors' designated representatives regarding:

1.    The Debtors' knowledge regarding the property damage claims and class action proceedings brought by Anderson Memorial Hospital though the law firm of Speights & Runyan.

2.    The Debtors' knowledge, if any, of what pre-petition efforts the Debtors made to settle or compromise the class action brought against it by Anderson Memorial Hospital through the law firm of Speights & Runyan and all communications regarding the settlement or compromise of that action.

---

[1] The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgracc, Inc., Coalgracc II, Ins., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B 11 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[Anderson Deposition Notice, December 12, 2006]. At the October 23, 2006 Omnibus hearing, the Debtors, for the first time, suggested that this discovery should be quashed pursuant to Rule 408, FRE. Although recognizing that this issue was being presented on the motion of the Debtors, this Court requested both sides to simultaneously submit legal briefs on whether Rule 408, FRE should prevent the *discovery* sought by Anderson. As this motion was the motion of the Debtors and Anderson has yet to see the Debtors' legal and factual position, Anderson reserves the right to file such further response as may be appropriate or necessary.

## Legal Argument

1. The Debtors' position that somehow the Federal Rules of Evidence governing evidentiary admissibility at trial mandate a limited scope of discovery belies a misunderstanding of the particular facts of this case and a misapplication of the law. The discovery sought by Anderson, relates not solely to the Debtors' conduct and statements during settlement negotiations, but also to the Debtors' knowledge and understanding of the factual predicates upon which the Debtors conduct and statements were based. The Debtors engaged in pre-petition settlement discussions with the Anderson Class acknowledging that, at the time, it was appropriate to settle the action as a class. Even counsel for the Debtors has acknowledged before this Court that if the class met all requirements as a class for settlement purposes, it necessarily met the requirements for a litigation class. *See, Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

2. Now seven years later, under advice of different counsel whose agenda is to undo prior state court orders and expel absent South Carolina class members after nine years

of pre-petition litigation, the Debtors have elected to challenge the propriety of treating the Anderson class as such. Through this discovery, Anderson seeks to discover and establish the facts which led the Debtors to originally concede that class treatment was appropriate. In other words, what did Grace know when negotiating with Anderson as a class, which it is now ignoring, hiding or whitewashing. The Debtors object to the discovery of the underlying facts claiming that an extrapolation of Rule 408 of the Federal Rules of Evidence by a 6th Circuit Court nullifies its duty of participation in discovery.

3. There are two foundational errors in the Debtors' position. First, the limiting Federal Rules of Evidence do not govern the broad scope of discovery. As the Court stated in *Hickman v. Taylor* 329 U.S. 495, 507, 67 S.Ct. 385, 392 (U.S. 1947)

> "We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession."

4. The Federal Rules of Evidence have an entirely different and almost diametrically opposite role than that of civil discovery as defined by FRCP 26. The evidentiary rules are a filter, designed to insure that only the most accurate information is presented to the Trier of fact. The scope of discovery is designed as a vacuum, so that not only relevant information can be discovered but also information that may lead to the discovery of relevant information. One prohibits information exchange, the other promotes information exchange. Courts have stated unequivocally that information regarding settlement negotiations which may not be admissible at trial is still discoverable so long as that information may lead to discovery of other admissible evidence. *Computer Associates*

*Intern., Inc. v. American Fundware, Inc.*, 831 F.Supp. 1516 (D.Colo.1993); *Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland*, 122 F.R.D. 447, (S.D.N.Y.1988).

5.  The propounded discovery would illuminate not only background facts[2] but would allow Anderson and the Court to better understand the alteration in the Debtors' state of mind. In *Hickman*, the Supreme Court weighed an asserted protection or privilege, versus discovery and ordered the material discoverable. In *Herbert v. Lando* 441 U.S. 153, 99 S.Ct. 1635, (U.S.N.Y.,1979), the Court was asked to prohibit the exchange of material concerning state of mind due to an asserted protection provided by the First Amendment. The Court stated:

> We are thus being asked to modify firmly established constitutional doctrine by placing beyond the plaintiff's reach a range of direct evidence relevant to proving knowing or reckless falsehood by the publisher of an alleged libel, elements that are critical to plaintiffs such as Herbert. The case for making this modification is by no means clear and convincing, and we decline to accept it.
> In the first place, it is plain enough that the suggested privilege for the editorial process would constitute a substantial interference with the ability of a defamation plaintiff to establish the ingredients of malice as required by *New York Times*. As respondents would have it, the defendant's reckless disregard of the truth, a critical element, could not be shown by direct evidence through inquiry into the thoughts, opinions, and conclusions of the publisher, but could be proved only by objective evidence from which the ultimate fact could be inferred. It may be that plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself, but the relevance of answers to such inquiries, which the District Court recognized and the Court of Appeals did not deny, can hardly be doubted. To erect an impenetrable barrier to the plaintiff's use of such evidence on his side of the case is a matter of some substance, particularly when defendants themselves are prone to assert their good-faith belief in the truth of their publications.

---

[2] There is an exception to the rule against admissibility of settlement negotiations where the evidence relates to admissions of fact as distinguished from hypothetical or provisional concessions conditioned upon the settlement's completion. *Hiram Ricker and Sons v. Students Intern. Meditation Soc.*, C.A.1 (Mass.) 1974, 501 F.2d 550.

*Herbert v. Lando*, 441 U.S. 153, 169-170, 99 S.Ct. 1635, 1645-1646 (U.S.N.Y.,1979).

6. Grace, at the time the original settlement discussions were occurring had evaluated this case as a class and was ready to concede that the South Carolina class members satisfied the numerosity, that there were common questions of law and fact, that Anderson's claims were typical of other class members, and that Anderson and its counsel were adequate. Anderson is entitled to discover factual predicate for these positions, not to prove the financial worth of the settlement, but to show that Grace understood all requirements for class certification were met. *See, Blue Circle Atlantic, Inc. v. Falcon Materials, Inc.*, 760 F.Supp. 516, (D.Md.1991), *affirmed*, 960 F.2d 145. (4th Cir.) (rule excluding evidence of compromise and offers to compromise did not apply to exclude evidence of cement seller's interoffice memoranda that were internal evaluations and apparently were not sent to cement purchasers, in suit arising out of cement purchase). Settlement offers are only inadmissible if offered to prove liability or damages. *Coakley & Williams Const., Inc. v. Structural Concrete Equipment, Inc.*, 973 F.2d 349, (C.A.4 (Md.) 1992).

7. More invasive discovery than is proposed by Anderson has been held to be in concert with FRE 408. As stated in the footnotes to FRE 408, [i]nquiry into the conduct of the negotiations which led to subclass settlement was consistent with the letter and spirit of this rule which expressly provides that it "does not require exclusion when evidence is offered for another purpose". *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106 (C.A.7 (Ill.) 1979), certiorari denied 100 S.Ct. 146, 444 U.S. 870, 62 L.Ed.2d 95. More importantly, many courts have held that impeachment is an appropriate "other purpose" preventing exclusion under Rule 408, FRE. *See, Reichenbach v. Smith,* 528 F.2d

1072 (5th Cir.1976); *Stainton v. Tarantino*, 637 F.Supp. 1051 (E.D.Pa.1986); *Commodity Futures Trading Com'n v. Rosenberg*, 85 F.Supp.2d 424 (D.N.J.2000).

8. Though the fascination with the Sixth Circuit opinion would lead one to believe that this is evolving law, this argument is neither novel nor accepted by the majority of Courts including the Supreme Court. Furthermore the second foundational flaw in the Debtors' position is exposed when one realizes that what this attempts to do, bathe discoverable facts in false immunity by employing them in settlement discussions, is in direct contravention with the plain language of the rule.[3] In addressing the argument made by the Debtors, Wright and Miller stated succinctly

> Neither the state codifiers nor the commentators have been much impressed with the immunity argument. All have found it quite simple to distinguish between the admissibility of statements made during compromise negotiations and the admissibility of other evidence offered to prove the facts that are the subject of these statements. It is well-established under most of the privileges for confidential communications that the privilege applies to the communication only, not to the underlying facts. Courts have had no difficulty deciding that one cannot immunize pre-existing documents by utilizing them as a medium of communication to an attorney, an analogy that seems apt under the privilege rationale for Rule 408. The most that can be said for the immunity argument is that it draws upon a false analogy to the constitutional exclusionary rule that bars not only illegally obtained evidence, but any evidence derived from such evidence, i. e., the so-called "fruit of the poisonous tree" doctrine.

23 Wright & Miller, *Federal Practice and Procedure*, § 5310.

---

[3] " This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Rule 408, FRE.

**Conclusion**

Rule 408, FRE does not create immunity from discovery of the conduct and statements of the Debtors and their representatives. Anderson is entitled to this discovery to develop the factual predicate upon which the Debtors' statements and conduct were based, as well as to create a record for impeachment of the Debtors and the factual assertions it has made regarding the Anderson Class Certification Motion. At the very least, this Court should permit the discovery to go forward so that it can make an admissibility determination under Rule 408, FRE when the evidence is offered.

DATED: November 10 2006

Christopher D. Loizides (#3968)
Michael J. Joyce (#4563)
Legal Arts Bldg.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728 (fax)
E-mail: loizides@loizides.com

- and -

Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed. ID No. 6101)
SPEIGHTS & RUNYAN
200 Jackson Avenue, East
P.O. Box 685
Hampton, SC 29924
Telephone:(803) 943-4444
Facsimile: (803) 943-4599

*Counsel for Anderson Memorial Hospital*