IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. 11365** |
| | ) | **Hearing Date: November 20, 2006** |
| | ) | **Agenda Item No. 7** |

## DEBTORS' SUPPLEMENTAL BRIEF RE FEDERAL RULE OF EVIDENCE 408 IN SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER AGAINST ANDERSON MEMORIAL'S REQUESTS FOR 30(B)(6) DEPOSITIONS AND DOCUMENTS

### INTRODUCTION

Speights' requests for documents and 30(b)(6) deposition testimony relating to the content of purported class settlement negotiations in the decade-old South Carolina *Anderson Memorial* litigation are improper and the requested discovery should not go forward. Speights' purpose for serving this discovery is transparent—he wants to obtain admissions from Grace's lawyers to support his pending motion for class certification. His strategy, in other words, is to turn statements that Grace allegedly made in the course of failed settlement negotiations against the company and use them to establish the Rule 23 requirements for class certification. Speights acknowledged as much at the October 23, 2006 hearing: "[I]f Grace agreed that there should be a settlement class, ipso facto Grace agreed that all the criteria for a litigation class were present. Period. End of story. And that's why I want to establish that through Grace's own witness and whatever documents it has." (10/23/2006 Hrg. Tr. at 29)

This litigation tactic is patently improper. To be sure, it is not provided for in Federal Rule of Civil Procedure 23 as a method of satisfying the requirements for class certification. Nor is it permitted under the Federal Rules of Evidence. Rules 408 and 403 preclude litigants from

using prior settlement negotiations to obtain an unfair advantage in litigation.  Were it otherwise, most parties would not even attempt to settle lawsuits for fear that statements made in settlement negotiations could be used against them if the negotiations broke down.  Those few parties intrepid enough to talk settlement would, if the negotiations failed, inevitably be subjected to discovery requests seeking internal documents and corporate representative deposition testimony relating to their lawyers' settlement evaluations and strategies, just as Grace is here.  And that would be absurd.

Permitting the requested discovery to go forward at this stage in the proceedings would accomplish nothing but delay.  The Court has squarely rejected the fundamental premise of Speights' motion seeking certification of a class of property damage claimants—that Grace's notice and bar date program somehow was inadequate.  The results of the notice and bar date program are now in.  Of the approximately 4,000 property damage claims filed in this bankruptcy, only 166 Speights U.S. claims (and 637 total claims) remain.  And with specific regard to *Anderson Memorial*, a mere ***three*** South Carolina claims remain.  The rest were expunged.  As the Court stated at the most recent hearing, "I'm not sure where we're going, because I just can't see where the numerosity issue is going to be satisfied, even if all the other elements of Rule 23 are met."  (10/23/2006 Hrg. Tr. at 69-70)

Not surprisingly, at the October hearing Speights himself could not articulate any connection between his requested discovery and Rule 23's requirements for class certification.  Nor could be explain how the requested discovery could lead to admissible evidence.  (*Id.* at 29 ("It may or may not lead to admissible -- to the production of evidence which will be admissible before Your Honor, but let me just go take the deposition and we'll get to the bottom of it."))  In these circumstances, the discovery should not be permitted to proceed.  *See Goodyear Tire &*

2

*Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003) ("Without a [settlement] privilege, parties would more often forgo negotiations for the relative formality of trial. Then, the entire negotiation process collapses upon itself, and the judicial efficiency it fosters is lost.").

## FACTUAL BACKGROUND

More than two years after the expiration of the bar date, on October 21, 2005, Speights & Runyan filed a motion for class certification on behalf of Anderson Memorial Hospital and all property owners everywhere "whose buildings contain or used to contain the asbestos-containing surfacing materials for which the Debtors are responsible." (Dkt. No. 10014 at 1)  Speights argued in the motion that class certification is appropriate because the Debtors failed to provide sufficient notice of the bar date to potential property damage claimants.  (*Id.* at 2)

On December 13, 2005, just days before the class certification motion was scheduled to be heard, Speights served five separate discovery requests on the Debtors.  The requests asked the Debtors to produce documents and designate 30(b)(6) witnesses to testify on several topics ostensibly related to class certification, including, among other things, the bar date notice program and the Debtors' knowledge of and pre-petition efforts to settle the *Anderson Memorial* class action filed in South Carolina. (Dkt. No. 11365)  Less than a week later, on December 19, the Debtors moved for a protective order on the ground that the requests sought information irrelevant to class certification.  (*Id.*)

Grace's motion for a protective order was put aside in order to address other issues in the bankruptcy.  At the January 26, 2006 hearing, however, the Court noted that there were not enough property damage claims to warrant class certification.  (1/26/2006 Hrg. Tr. at 75 (noting that "at this point there just aren't enough [property damage claims] that I can see that it requires

3

a class" and "I don't see how a class is going to advance the cause of the bankruptcy at this point in time")) And at the August 21, 2006 hearing, the Court confirmed that the bar date notice program (which it approved) was thorough. (8/21/2006 Hrg. Tr. at 274 ("I mean, I can't reopen issues that have been adjudicated for three years after a notice program and millions of dollars have gone out.")) The Court concluded that there is no need to certify a class of property damage claimants: "I do not see a need for a class proof of claim, Mr. Speights, because it appears to me at this point the notice program was appropriate, the bar date order has passed, the claimants who received the notice either actual or constructed [sic] had an obligation to timely file proofs of claim. They are filed of record." (*Id.* at 282)

The Court turned to Grace's motion for a protective order at the October 23, 2006 hearing. It stated that Speights' previously served December 2005 discovery requests were overly broad and did not seek information pertinent to class certification requirements, and therefore directed Speights to narrow his requests and serve new ones truly focused on class certification issues. (10/23/2006 Hrg. Tr. at 75-78) On October 30, 2006, Speights served extremely broad amended discovery requests which, among other things, again seek information relating to purported *Anderson Memorial* settlement negotiations. Specifically, Speights' amended 30(b)(6) deposition notice requests that Grace designate a corporate representative to testify regarding "[a]ny settlement discussions with Anderson or its counsel" (Ex. 1) and his amended request for documents seeks, among multiple broad categories, "[a]ll documents except pleadings served and filed which refer to or relate to any prepetition efforts the debtor made to settle or compromise Anderson's lawsuit" (Ex. 2). Speights wants to find out "[w]hat has Grace said about the certification issues behind the scenes" and use this against Grace to support his motion for class certification. (10/23/2006 Hrg. Tr. at 43)

4

## ARGUMENT

**I. TO PROMOTE SETTLEMENT OF DISPUTES, FEDERAL RULE OF EVIDENCE 408 BARS LITIGANTS FROM USING SETTLEMENT OFFERS AND STATEMENTS MADE IN SETTLEMENT NEGOTIATIONS TO OBTAIN AN UNFAIR ADVANTAGE IN LITIGATION.**

Federal Rule of Evidence 408 provides, in relevant part, that "[e]vidence of conduct or statements made in compromise negotiations" is inadmissible. *See* Fed. R. Evid. 408; *see also Young v. Vernon Allsteel Press Co.*, 539 F. Supp. 193, 196 (E.D. Pa. 1982) ("It is well established that statements made for purposes of settlement negotiations are inadmissible."). Both the United States Supreme Court and the Third Circuit Court of Appeals recognized long ago that allowing a party's settlement offer to be used against it in litigation would chill settlement negotiations and undermine the federal policy favoring settlement of disputes. *See West v. Smith*, 101 U.S. 263, 273 (1879) (noting that "[o]ffers of compromise to pay a sum of money by the way of compromise, as a general rule, are not admissible against the party making the offer"); *Outlook Hotel Co. v. St. John*, 287 F. 115, 117 (3d Cir. 1923) ("If every offer to buy peace could be used as evidence against him who presents it, then the policy of the law which favors the settlement of disputes would never be attained."). Rule 408, enacted in 1975, codified and indeed expanded the common-law rule in many jurisdictions and excludes from evidence "all statements made in the course of settlement negotiations." *See Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654 (4th Cir. 1988).

Rule 408 reflects important policy considerations. One justification for the rule is that settlement offers are irrelevant since they "may be motivated by a desire for peace rather than from any concession of weakness of position." Fed. R. Evid. 408 advisory committee's note. The "more consistently impressive ground" for excluding evidence of settlement negotiations, however, is that exclusion promotes "the public policy favoring the compromise and settlement

5

of disputes." *Id.* As the Third Circuit put it, "[t]he policy behind Rule 408 is to encourage

freedom of discussion with regard to compromise." *Affiliated Mfrs., Inc. v. Aluminum Co. of*

*Am.*, 56 F.3d 521, 526 (3d Cir. 1995); *see also Fiberglass Insulators*, 856 F.2d at 654 ("The

public policy of favoring and encouraging settlement makes necessary the inadmissibility of

settlement negotiations in order to foster frank discussions."); *Reichenbach v. Smith*, 528 F.2d

1072, 1074 (5th Cir. 1976) ("A primary reason for excluding evidence of a compromise is to

encourage non-litigious solutions to disputes."). The Court's Local Rules reflect this same

policy. *See* Del. Bankr. LR 9019-5(d)(i) (protecting information obtained in mediation from

disclosure).

## II.  FEDERAL RULE OF EVIDENCE 408 APPLIES HERE AND PRECLUDES SPEIGHTS FROM USING STATEMENTS THAT GRACE MADE IN PRIOR SETTLEMENT NEGOTIATIONS TO SUPPORT HIS MOTION FOR CLASS CERTIFICATION.

Rule 408 applies in this bankruptcy, *see* Fed. R. Bankr. P. 9017, and precludes Speights

from using statements that Grace purportedly made during *Anderson Memorial* settlement

negotiations against the company as a shortcut method of supporting his motion for class

certification. To effectuate the policy behind Rule 408 and encourage settlement of disputes,

courts consistently exclude from evidence settlement offers and statements made during

settlement negotiations. In *Ramada Development Company v. Rauch*, for example, the Fifth

Circuit held that the district court properly excluded settlement evidence offered to prove notice

of alleged construction defects because "notice could be effectively proved by means less in

conflict with the policy behind Rule 408." 644 F.2d 1097, 1107 (5th Cir. 1981). Likewise, in

*Trebor Sportswear Company, Inc. v. The Limited Stores, Inc.*, the Second Circuit upheld the

exclusion of settlement evidence offered to satisfy the statute of frauds in light of "the public

policy considerations which favor settlement negotiations and which underlie Rule 408." 865

6

F.2d 506, 510 (2d Cir. 1989). *See also McInnis v. A.M.F., Inc.*, 765 F.2d 240, 248-49 (1st Cir.

1985) (holding that a settlement release could not be offered to prove causation); *In re Home

Health Corp. of Am., Inc.*, 268 B.R. 74, 77 (Bankr. D. Del. 2001) (excluding from evidence

pleadings submitted in connection with mediation).

     Neither of the two "exceptions" to Rule 408 apply here. *First*, Grace is not claiming that

"otherwise discoverable" evidence should be excluded "merely because it is presented in the

course of compromise negotiations." *See* Fed. R. Evid. 408. The subject of Speights' requested

discovery is statements that Grace's lawyers made in the course of *Anderson Memorial*

settlement negotiations, not pre-existing facts originating outside of settlement negotiations.

*Second*, Speights cannot point to a legitimate purpose—such as "proving bias or prejudice of a

witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal

investigation or prosecution"—for introducing evidence of prior settlement negotiations. *Id.* In

any event, the "another purpose" exception is not intended to "allow settlement *communications*

into evidence," but rather is used "only to admit the occurrence of settlement talks or the

settlement agreement itself for 'another purpose.'" *Goodyear Tire & Rubber Co.*, 332 F.3d at

981 (emphasis in original).

     Needless to say, the "another purpose" exception is narrow and does not swallow the

general rule against admission of settlement evidence. *See Ramada Dev.*, 644 F.2d at 1107

(noting that the exception "was not intended to completely undercut the policy behind the rule");

*Cumana Invs. S.A. v. Fluor Corp.*, 593 F. Supp. 310, 313 n.5 (D. Del. 1984) (emphasizing that

"care should be taken that an indiscriminate and mechanistic application of this 'exception' to

Rule 408 does not result in undermining the rule's public policy objective"). Typically, the

exception is applied when bias cannot be established, or an issue cannot be resolved, without

disclosing the existence or terms of a settlement agreement. *See, e.g., John McShain, Inc. v. Cessna Aircraft Co.*, 563 F.2d 632, 635 (3d Cir. 1977) (admitting evidence of settlement agreement to show bias of witness whose company the settlement released from liability); *Westchester Specialty Ins. Servs., Inc. v. U.S. Fire Ins. Co.*, 119 F.3d 1505, 1512-13 (11th Cir. 1997) (admitting settlements to resolve dispute about the meaning of their terms). No such necessity exists here. Prior settlement negotiations are *not* the sole source of information for Speights to support his argument for class certification. That Speights wants to use prior settlement negotiations as a shortcut method of supporting his motion is not a sufficient reason to find them admissible.

## III. FEDERAL RULE OF EVIDENCE 403 INDEPENDENTLY PRECLUDES SPEIGHTS FROM USING STATEMENTS THAT GRACE MADE IN PRIOR SETTLEMENT NEGOTIATIONS TO SUPPORT HIS MOTION FOR CLASS CERTIFICATION.

Finally, while Rule 408 is the starting point for determining whether settlement evidence is admissible, it is not the last word on the issue. *See, e.g., Fiberglass Insulators*, 856 F.2d at 655 (noting that "the fact that offering an item of evidence is not in terms barred by Rule 408 does not make it otherwise admissible"). Federal Rule of Evidence 403 also applies in this bankruptcy, *see* Fed. R. Bankr. P. 9017, and presents another reason why Speights cannot use prior settlement negotiations to support his class certification motion: "It is well recognized, and rightly so, that the risks of prejudice and confusion entailed in receiving settlement evidence are such that often Rule 403 and the underlying policy of Rule 408 [to encourage settlement] require exclusion even when a permissible purpose can be discerned." *Stacey v. Bangor Punta Corp.*, 620 F. Supp. 636, 637 (D. Me. 1985). In *Cumana Investments*, the United States District Court for the District of Delaware set out a balancing test: "[T]he trial judge should weigh the need for such evidence against the potentiality of discouraging future settlement negotiations." 593 F. Supp. at 313. n.5; *see also Trebor Sportswear*, 865 F.2d at 510-11 (same). The presumption is in

DOCS_DE:122670.1

favor of exclusion. *See Equal Employment Opportunity Comm'n v. Gear Petroleum, Inc.*, 948 F.2d 1542, 1546 (10th Cir. 1991) ("[W]hen the issue is doubtful, the better practice is to exclude evidence of compromises or compromise offers.").

Because any statements that Grace made in prior settlement negotiations are inadmissible to support Speights' motion for class certification under the plain language of Rule 408, it is unnecessary to apply this balancing test here. In any event, the test supports exclusion. Speights does not need statements that Grace allegedly made in prior settlement negotiations to argue for class certification, and allowing Speights to capitalize on any such statements to obtain a litigation advantage in this bankruptcy would completely undermine the policy rationale behind Rule 408. Parties would be reluctant to engage in settlement negotiations for fear that their adversaries could later use their statements against them if the negotiations broke down. Indeed, the public policy considerations underlying Rule 408 are amplified in the class action context because class actions are so frequently concluded by settlement. *See* Manual Complex Litigation, Fourth, § 21.612 (noting that settlement classes "can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits"); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989) (noting that the "overwhelming majority" of class actions settle before trial).

## IV. SPEIGHTS' REQUESTED DISCOVERY SHOULD NOT GO FORWARD BECAUSE IT SEEKS INADMISSIBLE AND IRRELEVANT EVIDENCE AND IS NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.

The bottom line is that Rules 408 and 403 render statements that Grace made in the course of purported *Anderson Memorial* settlement negotiations inadmissible for purposes of supporting Speights' motion for class certification. Indeed, Grace's purported efforts to settle the South Carolina lawsuit are not even *relevant* to Rule 23's requirements for class certification,

9

especially at this stage in the bankruptcy, where (1) Grace implemented a multi-million-dollar notice and bar date program to bring all property damage claimants before the Court, (2) the Court approved the notice and bar date program and later concluded that the program was thorough, and (3) only 166 Speights U.S. claims (including only three South Carolina claims) remain. During the October 23, 2006 hearing, the Court stated that "the universe of claims is going to be the proofs of claim filed in the Court." (10/23/2006 Hrg. Tr. at 67) Prior *Anderson Memorial* settlement discussions have no bearing on whether the relatively small number of Speights claims remaining in this bankruptcy can satisfy the Rule 23 requirements for class certification.

In these circumstances, permitting the requested discovery to go forward would violate the "settlement privilege" that protects the content of settlement negotiations from discovery. *See Goodyear Tire & Rubber Co.*, 332 F.3d at 980 ("Without a privilege, parties would more often forgo negotiations for the relative formality of trial. Then, the entire negotiation process collapses upon itself, and the judicial efficiency it fosters is lost."). To be sure, the requested discovery is not in any event "reasonably calculated to lead to the discovery of admissible evidence." *See* Fed. R. Civ. P. 26(b)(1). Speights himself could not explain at the October hearing how his requested discovery could lead to admissible evidence. (10/23/2006 Hrg. Tr. at 29 ("It may or may not lead to admissible -- to the production of evidence which will be admissible before Your Honor, but let me just go take the deposition and we'll get to the bottom of it.")) The Court recognized this problem: "I think Mr. Bernick's correct that it can't be calculated to lead to admissible evidence because it's not admissible." (*Id.* at 38) The Court should grant Grace's motion for a protective order.

10

## CONCLUSION

For the foregoing reasons, Speights' requested discovery should not be permitted to go forward. The Court should grant Grace's motion for a protective order (Dkt. No. 11365). As the Court recognized: "[T]he fact that parties will do something to settle does not mean that they have the same position with respect to ongoing litigation. If it did we'd never settle anything." (10/23/2006 Hrg. Tr. at 29-30)

Dated: November 10, 2006

Respectfully Submitted:

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Lisa G. Esayian
Michael T. Dierkes
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL YOUNG
JONES & WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

DOCS_DE:122670.1