IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |

**Hearing Date: TBD**
**Related Docket No: 9315**

## DEBTORS' MOTION FOR AN ORDER PURSUANT TO F.R.B.P. 7056 DISALLOWING AND EXPUNGING SIX (6) TIME-BARRED ASBESTOS PROPERTY DAMAGE CLAIMS FILED BY PRUDENTIAL INSURANCE COMPANY OF AMERICA

During the September 2006 omnibus hearing, in sustaining the Debtors' objections to two

Asbestos PD Claims that were filed by Prudential Insurance Company of America ("Prudential")

on account of buildings located in Georgia, the Court determined that:

- For purposes of determining whether an Asbestos PD Claim is time-barred, Delaware choice of law rules require the Court to apply the shorter of (i) Delaware's limitations period or (ii) the limitations period of the state where the subject property is located (*See* Order Disallowing and Expunging as Time-Barred Two Asbestos PD Claims Filed by Prudential Insurance Company on Account of Buildings Located in Georgia, referred to herein as the "Order Disallowing Prudential Georgia Claims," Dkt. No. 13457);

- The District Court for New Jersey held in a 2001 opinion that Prudential should have known of any claims on account of asbestos-containing materials in its buildings at least as early as 1981. (9/25/06 Hrg. Tr. p. 53:18 - 54:3)

By this Motion, the Debtors seek application of these findings to Prudential's six

remaining Asbestos PD Claims that were filed in this Chapter 11 on account of buildings located

in Florida, Minnesota, New Jersey, and Texas (collectively, the "Prudential Claims," which are

identified at Exhibit A).

As noted above, Delaware's choice of law principles direct the Court to apply to each Prudential Claim the shorter of Delaware's limitations period or the limitations period of the state where the subject building is located. Because Delaware's applicable limitations period is four years, the relevant limitations periods for the Prudential Claims are as follows: (i) for the two Minnesota Prudential Claims, 10 years from the date of construction (1980 and 1981, respectively);1 (ii) for the Florida Prudential Claims and New Jersey Prudential Claim, 4 years from the date Prudential knew or should have known of its alleged injuries (no later than 1985); and (iii) for the Texas Prudential Claim, 2 years from the date Prudential knew or should have known of its alleged injuries (no later than 1983).

Given that Prudential should have known of its claims by at least by 1981, Prudential's claims for these buildings had already lapsed when Prudential filed its complaint in the New Jersey action on October 20, 1987. Prudential, however, did not file its claims here until March 2003, even longer after the statute of limitations had lapsed with respect to all of the Prudential Claims. Therefore, the Prudential Claims are proscribed as a matter of law, and the Debtors request an order pursuant to Federal Rule of Bankruptcy Procedure 7056 disallowing and expunging each of them.

### Facts and Background

1.      As demonstrated by the relevant pages from the claim forms attached as Exhibit B, Prudential filed the six Prudential Claims on March 27, 2003.

---

[1]  Minnesota's 10 year statute or repose barred the Minnesota Prudential Claims in 1980 and 1981, respectively. Minnesota's 2 year statute of limitations also serves to bar the claims at least in 1982 and 1983, respectively.

DOCS_DE:122895.1

2.      The Prudential Claims were all filed on account of buildings built either

before 1969 or between 1969 and 1973.  *See* Relevant Pages from the Prudential Claim forms,

attached as Exhibit C.  The Prudential Claims allege property damage due to the presence of

Monokote-3 ("MK-3"), which allegedly was installed at the time of original construction.  *See*

Relevant Pages from the Prudential Claim forms, attached as Exhibit D.  MK-3 is an asbestos-

added fire-proofing product that Grace sold in the United States until July 4, 1973, when Grace[2]

permanently ceased selling MK-3 in the U.S.  MK-3 was sprayed on steel structural-components

to prevent or delay collapse in the event of a fire.

3.      On October 20, 1987, Prudential brought suit in the District of New Jersey

under RICO and applicable state law for several buildings, including the six buildings at issue in

this Motion.  *See* relevant pages from Prudential Claims, attached as Exhibit E.  Prudential

sought damages stemming from the presence of, and alleged potential contamination from,

asbestos in its buildings.  *Prudential Ins. Co. of America v. U.S. Gypsum Co.*, 146 F.Supp.2d

643, 664 (D. N.J. 2001) ("Despite Prudential's assertion in its reply to Gypsum's motion that its

injury is only for contamination, Prudential's complaint explicitly seeks damages for potential as

well as actual contamination.").  In particular, Prudential's amended complaint pled that:

> Because of the contamination caused by the asbestos-containing materials in
> plaintiffs' buildings, plaintiffs have paid and will continue to pay substantial costs
> and fees relating to *abatement and buildings monitoring actions*, buildings survey
> and testing costs, tenant relocation costs, operations and maintenance program
> costs for asbestos-containing materials before their removal from buildings,
> substantial disruption to their business, substantial property damage to their

---

[2] For purposes of this Brief, the term "Grace" refers to W. R. Grace & Co. and/or its affiliated entities that are
Debtors in these Chapter 11 cases, either collectively or in their individual capacities, as appropriate.

property ... and other costs associated with the *contamination or potential contamination* of the buildings.

*Id; quoting* Prudential's Amended Complaint, ¶ 30 (emphasis added).

    4.    In 2001, the New Jersey District Court determined that Prudential's RICO claims were barred by RICO's four-year statute of limitations.[3] *See Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 146 F.Supp.2d 643 (D.N.J. 2001), *aff'd* 359 F.3d 226, 232 (3d Cir. 2004). The New Jersey District Court based its conclusion on a finding that Prudential, as "one of the largest property and casualty insurance underwriters in the world, and also one of the largest real estate investors in North America"[4] had the requisite knowledge to assert its claims at least as early as October 10, 1983 (the latest date that would preclude Prudential's RICO claims), and that Prudential should have known about its actual and potential injuries by May 1981. The District Court made the following findings with respect to Prudential's knowledge:

- "The EPA had issued the regulations requiring asbestos encapsulation during demolition a decade earlier, and one of Prudential's engineers had brought the regulations to

---

[3] At the same time, "having thus dismissed Prudential's only federal claim, the District Court declined to exercise supplemental jurisdiction and dismissed Prudential's remaining state law claims against [U.S.] Gypsum and USMP [U.S. Mineral Products Company] without prejudice." *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 146 F.Supp.2d 643 (D.N.J. 2001), *aff'd* 359 F.3d 226, 232 (3d Cir. 2004). The Third Circuit affirmed both the summary judgment on the RICO counts and the dismissal of the remainder of the case. *Id.* at 238. The District Court and Third Circuit decisions dismissing Prudential's New Jersey District Court action in its entirety have not yet been applied to Grace solely because Grace had filed for bankruptcy by the time the matter was decided and thus the action has been stayed as to Grace since early 2001. *See* 359 F.3d at 231-32 and n.2 (explaining that Grace was a party to the later summary judgment motions to dismiss on statute of limitations and substantive grounds that were ultimately granted, along with Gypsum and USMP, but that the action was stayed as to it under 11 U.S.C. § 362(a). As this Court correctly noted at the January 24, 2006 hearing on Prudential's claims, it can be assumed that the Prudential action will also be dismissed as to Grace. And, in any event, collateral estoppel precludes Prudential from arguing otherwise, given that Prudential was a party involved in the litigation before the New Jersey District Court and the Third Circuit. *See In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997).

[4] *Prudential*, 146 F.Supp.2d at 649, *citing* Prudential's Amended Complaint, para. 4.

Prudential's attention *by at least as early as 1981*." *Prudential*, 146 F.Supp.2d at 665 (emphasis added).

- "As Prudential acknowledges in its Amended Counterstatement and Response to Defendant's Rule 56.1 Statement, *Arcadius Zielinski, an architect in Prudential's Corporate Services & Buildings Department, was aware of these regulations [the EPA's 1973 and 1975 regulations concerning asbestos in buildings] and informed Prudential's executives of them at least as early as 1981*. Mr. Zielinski wrote memoranda in *May of 1981* to the Vice President of Prudential's Corporate Services and Buildings Department, in July of 1981 to the Vice President of Real Estate Operations in the Real Estate Investment Department, and in May of 1981 to the Vice President of Administrative Services of the North Central Home Office 'in order to monitor compliance with any applicable OSHA or EPA regulations.' According to Plaintiff's Amended Counterstatement, [Zielinski] wrote the memoranda by looking at the specifications on file in Newark to see whether 'asbestos was specified ... He summarized regulations that would have applied if Prudential had undertaken removal.'" *Id.* at 667 (emphasis added).

- "Even if all of the EPA's attention was not directed to the niche of the building industry occupied by Prudential, *a reasonably prudent building owner, and particularly one with investments as extensive as Prudential's, would have monitored the issue*. Moreover, Prudential's own tenants repeatedly voiced their concerns to Prudential about the hazards of asbestos. While the testers hired by Prudential reported that the asbestos was not an immediate hazard, they noted that asbestos required continual monitoring since it could become hazardous if it is disturbed or deteriorates." *Id.* at 666 (emphasis added).

- "[Prudential] does not demonstrate that such a dispute exists as to whether it *should have* known of its injuries prior to October 11, 1983. In light of the existing EPA regulations banning the continued use of asbestos in any building construction, the guidelines issued by the EPA governing demolition and renovation, and Prudential's own monitoring of its properties, *this court finds that Prudential should have known of its potential and actual injuries no later than 1981*. Moreover, Prudential has acknowledged that it is one of the largest property and casualty insurance underwriters in the world, and also one of the largest real estate investors in North America, (*See* Prudential's Amended Complaint, para. 4) and therefore its liabilities are multiplied by the large numbers of its holdings. Given such exposure, prudence dictates that Prudential should have remained informed of its legal responsibilities." *Id.* at 669 (emphasis added).

     5.     Prudential appealed the New Jersey court's decision to the Third Circuit.

In affirming, the Third Circuit noted that "Prudential also admits that some of its own employees

'had some awareness of asbestos as an issue in certain of Prudential's buildings during the late

1970s and early 1980s.'" *Prudential*, 359 F.3d at 236, quoting Appellants' Br. at 34. The Third

Circuit also noted that, by 1979, Prudential was on inquiry notice of its claims:

> Prudential was aware of the presence of ACMs in the IBM Building in
> Jacksonville, Florida as early as 1979, when tenant IBM requested Prudential's
> assistance in surveying the fireproofing material in the building. Based on its own
> testing, IBM informed Prudential in January 1980 that a sample of the
> fireproofing material contained six percent of Chrysotile asbestos. App. at 1055a.
> At Prudential's own request, IBM forwarded a copy of its asbestos and air sample
> analyses to Prudential in March 1980. These incidents and tenant complaints,
> combined with government information, should therefore have provided
> Prudential inquiry notice regarding the potential hazards of ACMs in its
> properties. (*Id.* at 235)

      6.     In March 2003, nearly two years after the District of New Jersey

dismissed the Prudential action and determined that Prudential actually knew of its claims before

October 10, 1983, and should have known of its claims at least as early as May 1981, Prudential

filed the Prudential Claims.

      7.     On September 1, 2005, in their *Fifteenth Omnibus Objection (Substantive)*

*to Asbestos Property Damage Claims* (Dkt. No. 9315), the Debtors objected to each Prudential

Claim on multiple bases, including that each claim was time-barred under the applicable statute

of limitations based upon the claimants' constructive and actual notice (Categories D-2 and D-4).

*Id.* at 32-36.

      8.     During hearings on January 24, 2006 and September 25, 2006, this Court

heard argument concerning the timeliness of two claims filed by Prudential on account of

properties located in Georgia, and on October 24, 2006, the Court applied Delaware's borrowing

statute to these claims and entered an order disallowing and expunging them. *See* Order

Disallowing Prudential Georgia Claims. In so doing, the Court stated that the New Jersey

court's 2001 order constituted a finding of when Prudential should have known of its claims.

6

9/25/06 Hrg. Tr. p. 53:18-54:3 3 ("This Court's interpretation is that Judge Ackerman did find

that Prudential had not constructive, but actual knowledge of the facts and circumstances that

given its -- I've forgotten what words he used.  But significant expertise in the real estate world

with millions of dollars of properties under its bailiwick, in essence, would have led it, as a

sophisticated building owner, to be on inquiry notice that far back ... In 1983 or earlier.").

### Relief Requested

9.    The Debtors request an order disallowing and expunging the Prudential

Claims, because these Claims were asserted against Grace in March 2003 -- at least 22 years

after Prudential knew or should have known of its claims.[5]

### Jurisdiction

10.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b).  *See In re U.S.*

*Abatement  Corp.*, 79 F.3d 393 (5th Cir. 1996).  Venue is proper before this Court pursuant to 28

U.S.C. §§1408 and 1409.

11.    The statutory predicates for the relief sought herein are Sections 105(a),

502, and 558 of chapter 11 of title 11 of the United States Code and Federal Rule of Bankruptcy

Procedure 7056.  These provisions grant this Court the authority to disallow and expunge the

Prudential Claims, should the Court determine that there are no issues of material fact and the

claims are deficient as a matter of law.  *See, e.g., In re Allegheny Health Educ.  & Research*

---

[5] In this Motion, the Debtors do not seek an adjudication of other objections to the Prudential Claims asserted in the
Fifteenth Omnibus Objection.  The Debtors reserve their right to prosecute their remaining objections to the
Prudential Claims at a later time, in the event that the Court does not grant this Motion in full.

7

*Found.*, No. 05-3841, 2006 WL 1440228 (3d Cir. 2006) (affirming bankruptcy court's order

granting summary judgment to debtor on a proof of claim and dismissing the subject claim); *In*

*re Genesis Health Ventures, Inc.*, 112 Fed.Appx. 140 (3d Cir. 2004) (affirming bankruptcy

court's finding that bankruptcy proof of claims failed to raise a genuine issue of material fact and

granting summary judgment to the debtors estimating the claim at zero).

### Legal Argument

I.    **Summary Judgment is Appropriate Because There is No Issue of Material Fact, and
      Grace is Entitled to Judgment as a Matter of Law.**

12.    Federal Rule of Civil Procedure 56[6] provides that summary judgment

"shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247

(1986).

13.    For purposes of the present Motion, Prudential's proof of claim forms

provide all of the salient facts. That is because the Court-approved Asbestos Property Damage

Proof of Claim Form directed claimants to provide all of the information required by the Form

(or a short description of why such information was unavailable). *See* General Instructions to

---

[6] Federal Rule of Bankruptcy Procedure 7056 provides that "Rule 56 F.R.Civ.P. applies in adversary proceedings."
Federal Rule of Bankruptcy Procedure 7056 applies here because (i) Fed.R.Bankr.P. 9014(c) states that F.R.B.P.
7056 is applicable in "contested matters"; and (ii) objecting to a proof of claim - as Grace did to the Prudential
Claims in the 15th Omnibus Objection - "creates a dispute which is a contested matter within the meaning of
Bankruptcy Rule 9014 ..." *In re Los Gatos Lodge, Inc.*, 278 F.3d 890, 894 (9th Cir. 2002).

DOCS_DE:122895.1

Asbestos Property Damage Proof of Claim Form (attached hereto as Exhibit F). All of the

Prudential Claim forms state that they were filed on account of buildings constructed during or

before 1973, when MK-3 was allegedly installed during construction.[7] All of the Prudential

Claim forms also state that the subject buildings were included in Prudential's New Jersey

action, where the New Jersey court has determined that Prudential should have known of its

claims at least as early as 1981 -- six and a half years before it filed the New Jersey action and

almost twenty-two years before filing their claims here. *See* Exhibit E.

14.    As set forth below, the applicable statutes of limitations began to run for

the Prudential Claims at the earlier of when Prudential knew or should have known of its alleged

injuries. Therefore, even viewed in the light most favorable to the Prudential Claimants, the

Prudential Claims were proscribed well before they were filed in this Chapter 11.

## II.    To Determine Whether the Prudential Claims are Barred, This Court Applies the Shorter of (i) Delaware's Applicable Statute of Limitations or (ii) the Statute of Limitations For the States Where the Subject Properties are Located.

15.    To determine the appropriate state's statute of limitations to apply to the

Prudential Claims, the Court must consider Delaware's choice of law rules, as this Court has

already determined in the context of determining that Prudential's Georgia asbestos PD claims

against the Debtors were time-barred. *See* Order Disallowing Prudential Georgia Claims. Those

---

[7] For purposes of this Motion, Prudential's statements are binding upon the respective Prudential Claimants. *In re Basin Res. Corp.*, 182 B.R. 489 (Bankr. N.D. Tex. 1995) (creditor's statement in proof of claim that oil and gas interests of debtor were securities was conclusively binding on creditor); *see also Larson v. Groos Bank*, 204 B.R. 500, 502 (W.D. Tex. 1996) ("factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them.").

9

rules direct the Court to apply the shorter of (i) Delaware's limitations period or (ii) the

limitations period of the state where the subject property is located. *See id.*

      16.    Delaware's "borrowing statute" codifies Delaware's approach to choice of

law issues relating to statutes of limitations. *See* 10 Del. C. § 8121 (2005). To prevent forum

shopping, this statute requires application of the limitations period of the state where the claim at

issue "arose" if it is shorter than Delaware's limitations period:

> Where a cause of action arises outside of this State, an action cannot be brought in
> a court of this State to enforce such cause of action after the expiration of
> *whichever is shorter, the time limited by the law of this State, or the time limited*
> *by the law of the state or country where the cause of action arose*, for bringing an
> action upon such cause of action. Where the cause of action originally accrued in
> favor of a person who at the time of such accrual was a resident of this State, the
> time limited by the law of this State shall apply.

10 Del. C. § 8121 (2005) (emphasis added).

      17.    For purposes of the borrowing statute, the Prudential Claims "arose" in

Florida, Minnesota, New Jersey, and Texas -- the states where the allegedly damaged properties

are located. *See* Order Disallowing Prudential Georgia Claims; *see also Pennzoil Prod. Co. v.*

*Colelli & Assoc.*, 149 F.3d 197, 202 (3d Cir. 1998) ("[S]ince Pennzoil claims to have suffered

damage to its refinery equipment in Pennsylvania, that is where—for jurisdictional purposes—

we must conclude the alleged injury occurred."); *Paoletto v. Beech Aircraft Co.*, 464 F.2d 976

(3d Cir. 1972).

      18.    Therefore, in considering the Prudential Claims, the Court applies the

shorter of Delaware's limitations period or the limitations period where the subject property is

located.

**III.    Prudential is Estopped From Arguing that It Should Have Known of the Prudential Claims Later than 1981.**

19.    The doctrine of collateral estoppel prohibits Prudential from arguing that it should have known of its claims any later than 1981.  Collateral estoppel prohibits a party from re-litigating an issue that was previously addressed in another matter.  *Parklane Hosiery Co v. Shore*, 439 U.S. 322, 329 (1979).  The Third Circuit has determined that collateral estoppel is appropriate when four factors are present:  "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from re-litigating the issue was fully represented in the prior action."  *Raytech v. White*, 54 F.3d 187, 190 (3d Cir. 1995), *citing United Industrial Workers v. Government of the Virgin Islands*, 987 F.2d 162, 169 (3d Cir. 1993).  Each of these factors is satisfied in the present instance:

- *First*, the issue addressed in the New Jersey action is identical to the issue here, namely, when Prudential should have known of its claims for the alleged presence of, and contamination from, Grace asbestos-containing products in Prudential buildings.  *Prudential Ins. Co. of America v. U.S. Gypsum Co.*, 146 F.Supp.2d 643, 664 (D. N.J. 2001) ("[d]espite Prudential's assertion in its reply to Gypsum's motion that its injury is only for contamination, Prudential's complaint explicitly seeks damages for potential as well as actual contamination.").  What's more, this exact issue was not merely litigated in the abstract in the New Jersey action -- it was litigated as to the *exact buildings and parties at issue here*.

- *Second*, Prudential actually and fully litigated the issue in the New Jersey action.  The New Jersey court's determination that Prudential should have known of its claims by at least 1981 was not the product of happenstance or merely mentioned in passing.  Instead, it was

11

the culmination of ten years of briefing and motions concerning Prudential's knowledge of its

claims, which began in 1991 when the defendants moved for summary judgment on the issue of,

"whether Prudential could provide evidence sufficient to *refute* the claim that it should have

known of its injuries." *Prudential Ins. Co. of America v. U.S. Gypsum Co.*, 359 F.3d 226, 232

(3d Cir. 2004). Further, the New Jersey decision was final because the New Jersey court

dismissed all of Prudential's claims and ended the New Jersey litigation. *Prudential*, 146

F.Supp.2d at 674 ("Having dismissed the plaintiff's federal claims and finding no extraordinary

circumstances, this court declines to exercise supplemental jurisdiction over the plaintiffs' state-

law claims."). If there was any lingering doubt whether the New Jersey Court's 2001 order was

final, Prudential appealed it to the Third Circuit, where it was wholly affirmed. *Prudential Ins.*

*Co. of America v. U.S. Gypsum Co.*, 359 F.3d 226, 232 (3d Cir. 2004).

• *Third*, the New Jersey court dismissed Prudential's RICO claims squarely because

Prudential knew or should have known of its alleged injuries. The New Jersey court could not

have been clearer when it stated: "this court finds that Prudential should have known of its

potential and actual injuries no later than 1981." *Prudential,* 146 F.Supp.2d at 669.

• *Finally,* Prudential, as the plaintiff in the New Jersey suit and the appellant in the

subsequent Third Circuit appeal, was "fully represented." Therefore, as a matter of law,

Prudential is charged with having the requisite knowledge to bring the Prudential Claims by

May 1981, and Prudential should be estopped from arguing otherwise.

20.    Collateral estoppel is warranted in the present instance -- and was not

appropriate when Prudential unsuccessfully sought application of collateral estoppel in its

defense of the Debtors' timeliness objections to Prudential's Georgia claims -- because unlike

the order upon which Prudential sought to rely, the New Jersey court's 2001 order is "final" as to

12

Prudential for purposes of collateral estoppel.  Specifically, Prudential sought application of a

1994 order from the New Jersey court that *had been superceded by the same 2001 order* that the

Debtors now seek to be enforced against Prudential.  Not only did the New Jersey court's 2001

about-face render its 1994 order inoperative, but it also vividly demonstrated that the 1994 order

was in no way final, and, therefore, was incapable of having collateral estoppel effect.  As noted

above, collateral estoppel is warranted here because the New Jersey court's 2001 order does not

suffer such defects.  Instead, it is final in all relevant respects: (i) it was appealable (and in fact

was unsuccessfully appealed by Prudential); and (ii) it dismissed all of Prudential's claims

against the non-stayed defendants, thereby ending the lawsuit as to those parties.

IV.     **Delaware's Borrowing Statute Selects Delaware's Limitations Period for
        Prudential's New Jersey Claim and Florida, Minnesota and Texas' Limitations
        Periods For Prudential's Claims on Account of Buildings in Those States.**

21.     The longest applicable limitations periods for Florida, Minnesota, New

Jersey, and Texas are as follows:

- **Fla. Stat. Ann. § 95.031(2)(b): four (4) year limitations period for breach of
  warranty.  (attached as Exhibit G)**

- **Minn. Stat. Ann. §541.051: ten (10) year statute of repose that begins running
  at the time of the building's "substantial completion;" and a two (2) year
  statute of limitations that begins running upon "discovery of the injury."
  (attached as Exhibit H)**

- **N.J. Stat. Ann. §2A:14-1: six (6) year limitations period for tortious injury to
  property.  (attached as Exhibit I)**

- **Tex. Civ. Prac. & Rem. Code Ann. §16.003 (Vernon 1986 & Supp. 1999): 2
  year statute of limitations for injury to property.  (attached as Exhibit J)**

With the exception of Minnesota's ten-year statute of repose, these jurisdictions have adopted a

discovery rule for claims covered under the aforementioned limitations statutes, so the applicable

limitations period began running when Prudential knew or should have known of its alleged

13

injuries. *See* Fla. Stat. Ann. §95.031(2)(b); Minn. Stat. Ann. §541.051; *Martinez v. Cooper Hospital - University Med. Ctr.,* 747 A.2d 266, 270 (N.J. 2000); *S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex. 1996).

22.     The two Prudential Minnesota buildings were built in 1970 and 1971, and the Grace asbestos-containing materials were allegedly installed at the time of construction. *See* Exhibit D.  Accordingly, under Minnesota's 10-year statute of repose, these claims were proscribed in 1980 and 1981, respectively.  And, even if Prudential were to successfully argue that the statute of repose does not apply (which it does), these claims would still have been proscribed in 1983 under Minnesota's 2-year statute of limitations, which began running in 1981 when Prudential should have known of its alleged injuries.

23.     Similarly, (i) under Texas law, the Texas Prudential Claims were proscribed in at least 1983, two years after Prudential should have known of its alleged injuries; (ii) under Florida law, the Florida Prudential Claim was proscribed in at least 1985, four years after Prudential should have known of its alleged injuries; and (iii) under New Jersey law, the New Jersey Prudential Claim was proscribed in at least 1987, six years after Prudential should have known of its alleged injuries.

24.     For comparison, Delaware's longest potential statute of limitations is four (4) years for breach of contract (Del. C. §2-725), which began running at the latest (assuming that the alleged defect is "inherently unknowable") when Prudential discovered or should have discovered the alleged defects. [8] *See Becker v. Hamada, Inc.,* 455 A.2d 353, 356 (Del. 1982)

[8] Delaware's statute of limitations for tort claims is shorter; it is only three years.  10 Del.C. §8106.

14

(holding that roof developer's suit against roof manufacturer was barred under Delaware's tort and breach of contract statutes of limitation because the alleged roof defect was "reasonably discoverable" before the limitations periods had lapsed.).  Accordingly, under Delaware's statute of limitations, the longest possible limitations period for the Prudential claims expired in 1985, four years after Prudential should have known of its alleged injuries.

25.     To prevent forum shopping, Delaware's borrowing statute selects (i) Delaware's shorter statute of limitations for the Prudential Claim filed on account of the building located in New Jersey (4 years, rather than 6 years); and (ii) Florida,[9] Minnesota, and Texas' shorter limitations periods for the buildings located in those states.

## V.   Each of the Prudential Claims is Proscribed Under the Applicable Limitations Period.

26.     As noted above, Prudential is bound by the New Jersey District Court and Third Circuit's determinations that Prudential should have known of the facts giving rise to its claims before *May 1981*.  In particular, based upon (i) Prudential's self-professed status as "one of the largest real estate investors in North America"[10] and (ii) an engineering report that was circulated in May 1981 to the Vice President of Prudential's Corporate Services and Buildings Department, in July 1981 to the Operations in the Real Estate Investment Department, and in May of 1981 to the Vice President of Administrative Services of the North Central Home Office

---

[9]  Florida's and Delaware's statute of limitations appear to be identical for purposes of the Florida Prudential Claim. Under Delaware's borrowing statute, the Court can apparently apply either the Florida or Delaware statute to the Florida Prudential Claims.  Under either scenario, the Florida Prudential Claim is proscribed.

[10]  *Prudential*, 146 F.Supp.2d at 649, *citing* Prudential's Amended Complaint, ¶ 4.

15

to "in order to monitor compliance with any applicable OSHA or EPA regulations,"[11] the New

Jersey District Court held, in dismissing Prudential's federal claims, that:

> [Prudential did] not demonstrate that such a dispute exists as to whether it *should
> have* known of its injuries prior to October 11, 1983. In light of the existing EPA
> regulations banning the continued use of asbestos in any building construction,
> the guidelines issued by the EPA governing demolition and renovation, and
> Prudential's own monitoring of its properties, *this court finds that Prudential
> should have known of its potential and actual injuries no later than 1981.*
> Moreover, Prudential has acknowledged that it is one of the largest property and
> casualty insurance underwriters in the world, and also one of the largest real estate
> investors in North America, and therefore its liabilities are multiplied by the large
> numbers of its holdings. Given such exposure, prudence dictates that Prudential
> should have remained informed of its legal responsibilities." *Prudential,* 146
> F.Supp. 2d. at 669 (internal citation omitted) (emphasis added).

27.    Prudential, however, did not bring the New Jersey action until October 11,

1987 -- almost six and a half years after the date that the New Jersey court determined that

Prudential should have learned of its claims. Further, Prudential did not file the Prudential

Claims with this Court until 22 years after it should have known of its claims. Accordingly, the

Prudential Claims are all proscribed under the applicable statute of limitations. Specifically, the

Prudential Claim filed on account of a New Jersey building is proscribed under Delaware's four-

year limitations period for breach of contract; the Florida Prudential Claim is proscribed under

Florida's four-year limitations period; the Minnesota Prudential Claims are proscribed under

Minnesota's ten-year statute of repose (and alternatively under Minnesota's two-year statute of

limitations); and the Texas Prudential Claim is proscribed under Texas' two-years limitations

period.

---

[11] *Prudential,* 146 F.Supp.2d at 665-667.

## Conclusion

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form of the proposed order attached hereto as Exhibit K, (i) finding that Delaware's applicable statute of limitation proscribes the Prudential Claims filed on account of the building located in New Jersey; (ii) finding that Florida, Minnesota, and Texas' applicable statutes of limitation proscribe the Prudential Claims filed on account of buildings located in Florida, Minnesota, and Texas, respectively; and (ii) disallowing and expunging with prejudice each of the Prudential Claims.

Dated: November 17, 2006

> KIRKLAND & ELLIS LLP
> David M. Bernick, P.C.
> Janet S. Baer
> Lisa G. Esayian
> Samuel L. Blatnick
> 200 East Randolph Drive
> Chicago, Illinois 60601
> (312) 861-2000
>
> and
>
> PACHULSKI STANG ZIEHL YOUNG JONES
> & WEINTRAUB LLP
>
> Laura Davis Jones (Bar No. 2436)
> James E. O'Neill (Bar No. 4042)
> 919 North Market Street, 17th Floor
> P.O. Box 8705
> Wilmington, DE 19899-8705 (Courier 19801)
> Telephone: (302) 652-4100
> Facsimile: (302) 652-4400
>
> Co-Counsel for the Debtors and Debtors in
> Possession

DOCS_DE:122895.1