# EXHIBIT F

Mckinney's Consolidated Laws of New York Annotated Currentness
  Civil Practice Law and Rules (Refs & Annos)
    Chapter Eight. Of the Consolidated Laws
      Article 2. Limitations of Time (Refs & Annos)

→ § 214. Actions to be commenced within three years: for non-payment of money collected on execution; for penalty created by statute; to recover chattel; for injury to property; for personal injury; for malpractice other than medical, dental or podiatric malpractice; to annul a marriage on the ground of fraud

The following actions must be commenced within three years:

1. an action against a sheriff, constable or other officer for the non-payment of money collected upon an execution;

2. an action to recover upon a liability, penalty or forfeiture created or imposed by statute except as provided in sections 213 and 215;

3. an action to recover a chattel or damages for the taking or detaining of a chattel;

4. an action to recover damages for an injury to property except as provided in section 214-c;

5. an action to recover damages for a personal injury except as provided in sections 214-b, 214-c and 215;

6. an action to recover damages for malpractice, other than medical, dental or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort; and

7. an action to annul a marriage on the ground of fraud; the time within which the action must be commenced shall be computed from the time the plaintiff discovered the facts constituting the fraud, but if the plaintiff is a person other than the spouse whose consent was obtained by fraud, the time within which the action must be commenced shall be computed from the time, if earlier, that that spouse discovered the facts constituting the fraud.

CREDIT(S)

(L.1962, c. 308; amended L.1963, c. 532, § 6; L.1975, c. 109, § 5; L.1981, c. 266, § 2; L.1985, c. 760, § 2; L.1986, c. 485, § 2; L.1986, c. 682, § 1; L.1996, c. 623, § 1.)

<LAWS 1962, CHAPTER 308>

HISTORICAL AND STATUTORY NOTES

2003 Main Volume

**L.1996, c. 623 legislation**

Subd. 6. L.1996, c. 623, § 1, eff. Sept. 4, 1996, added provision disregarding whether the underlying cause of action is based in contract or tort.

**Derivation**

C.P.A.1920, § § 48, amended L.1921, c. 199; L.1936, c. 558; L.1939, c. 359; L.1941, c. 329; L.1942, c. 851; 49, amended L.1936, c. 558; L.1938, c. 497; L.1955, c. 257; 50, amended L.1936, c. 327; L.1947, c. 593.

C.C.P.1876, § § 380; 382, amended L.1877, cc. 416, 422; L.1894, c. 307; 383, amended L.1877, c. 416; 384, amended L.1896, c. 335; L.1900, c. 117; 394, amended L.1877, c. 416; L.1897, c. 281.

C.P. (Field Code) 1848, § § 74, 89, 91, 92, 93, 109.

SUPPLEMENTARY PRACTICE COMMENTARIES

2006 Electronic Update

*by Vincent C. Alexander*

2005

**C214:6. Malpractice Actions.**

The Court of Appeals has held that the three-year period of CPLR 214(6) applies to any claim alleging negligent performance of the ordinary professional obligations owed by a nonmedical professional to his or her client, even when those obligations are expressly articulated in a written contract. *R.M. Kliment & Frances Halsband, Architects v. McKinsey & Co.*, 2004, 3 N.Y.3d 538, 788 N.Y.S.2d 648, 821 N.E.2d 952. The issue arose in the context of a breach-of-contract claim asserted against an architectural firm whose plans and specifications for a building failed to comply with local building codes. One of the paragraphs of the architect's contract specifically required such compliance. After remedying the deficiencies at its own expense, the owner sought damages within the six-year period for contract claims (CPLR 213(2)), but outside the three-year period of CPLR 214(6).

The Court cited the legislative history of the 1996 amendment to CPLR 214(6), which indicated an intent that the three-year period apply to a nonmedical professional's "failure to utilize reasonable care or where acts of omission or negligence are alleged." *Id.* at 541, 788 N.Y.S.2d at 650, 821 N.E.2d at 953. The Court thus ruled that the negligent performance of an ordinary professional obligation is to be treated as negligence for statute-of-limitations purposes, whether the obligation is implicit in the particular undertaking or expressly identified as a contractual term. The Court left open the possibility that the six-year period might apply to a professional's guarantee to produce a particular result or a promise to perform services above and beyond those that would usually be expected in projects of a given type. Here, however, the architect had a duty to use due care to comply with local building codes even without the written contract. The fact that this ordinary obligation was made manifest in the contract did not remove it from the realm of negligence. The Court concluded that "[a]llowing this claim to proceed would accomplish the precise result the Legislature sought to prevent--allowing what is essentially a malpractice claim to be couched in breach of contract terms in order to benefit from the six-year statute of limitations." *Id.* at 543, 788 N.Y.S.2d at 651, 788 N.E.2d at 954.

2003

C214:6. Malpractice Actions.

*Continuous Representation*

The 2001 Commentary to this section discusses the *Shumsky* case, in which the Court of Appeals applied the continuous representation toll with liberality in a legal malpractice action based on an attorney's failure to timely file a contract suit on behalf of his clients. The retainer agreement in that case was viewed as providing for ongoing representation with respect to prosecution of the client's claim, and such representation did not end until the clients learned, as a result of unreturned phone calls, that the attorney had "withdrawn," an event that occurred many months after the contract action should have been filed. The 2002 decision in *McCoy v. Feinman*, 99 N.Y.2d 295, 755 N.Y.S.2d 693, 785 N.E.2d 714, shows a more restrictive approach to the toll and demonstrates that its application is a highly fact-specific inquiry that is dependent on the nature of the malpractice--a substantive law issue-- and the objectively measured

continuous representation rule would be undermined if a client, in effect, were forced by statute-of-limitations considerations to sue an attorney who has withdrawn from a firm while the firm's representation continues. A pending lawsuit against the former attorney would have the effect of destroying the attorney-client relationship with the firm because of the firm's legal responsibility for the former attorney's negligence. Avoidance of such results is the very purpose of the continuous representation doctrine.

1999

C214:4. Action for Property Damage.

As in cases involving damages for personal injury (*see* 1993 Practice Commentary C214:5), the date of accrual for property damage claims is the date of injury. These rules have been particularly problematic in toxic exposure cases where discovery of the injury may occur months or years after the harm has occurred. The ameliorative discovery rule of CPLR 214-c does not address the basic question of when the underlying toxic injury is deemed to occur, and the discovery rule may not be applicable in all toxic exposure cases that cause property damages.

Such was the situation in *MRI Broadway Rental, Inc. v. United States Mineral Products Co.*, 1998, 92 N.Y.2d 421, 681 N.Y.S.2d 783, 704 N.E.2d 550. Material containing friable asbestos was installed in plaintiff's office building at the time of its construction in 1971. Plaintiff sued the manufacturer of the asbestos in 1990, claiming that the asbestos fibers had caused physical damage to the building necessitating expenditures for removal of the asbestos and renovation of the building. Plaintiff argued that the action was timely because the injury did not occur until sometime in 1987, within three years of the suit. No injury occurred, said the plaintiff, until the building became "contaminated," i.e., when the levels of friable asbestos exceeded then-existing safety standards.

The Court of Appeals rejected the argument, holding that the injury occurred, for purposes of the statute of limitations, upon the introduction of the toxic substance in the building. For practical and policy reasons, the Court adhered to the initial exposure rule as developed in personal injury cases. Accrual based on the date of initial exposure provides a bright line test that gives defendants a degree of certainty and predictability in risk assessment. The date of contamination, in contrast, cannot be ascertained with any certainty, even with expert testimony. Furthermore, reliance upon potentially fluctuating federal regulatory standards is at odds with the Court's preferred rule of certainty: "[W]hat is not an injury today may become an injury tomorrow based not upon an additional level of friable asbestos in the air, but based simply upon the promulgation of newer, more stringent government standards." 92 N.Y.2d at 428, 681 N.Y.S.2d at 786, 704 N.E.2d at 553.