IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO.,** *et al.*, | ) | **Case No. 01-1139 (JKF)** |
| | ) | **(Jointly Administered)** |
| **Debtors.** | ) | **Hearing Date:  December 5, 2006** |

### DEBTORS' NOTICE OF FAILURE TO REACH AGREEMENT AND REQUEST FOR ENTRY OF DEBTORS' PROPOSED PROTOCOL CONCERNING PRODUCTION OF CHEST X-RAYS OF ASBESTOS PERSONAL INJURY, PRE-PETITION CLAIMANTS WITH NON-MESOTHELIOMA, MALIGNANT CLAIMS

Grace respectfully notifies the Court that despite good faith negotiations, it has been unable to reach agreement with Claimants' counsel and the PI Committee regarding a protocol for claimants alleging an asbestos-related cancer other than mesothelioma (the "Claimants") to submit original chest x-rays upon which their claims are based to a centralized repository maintained by the Court's claims agent, Rust Consulting ("Rust").[1]  as a result, Grace hereby submits its proposed order outlining the appropriate protocol which Grace will request the Court enter at the hearing in these matters on December 5, 2006.

As a threshold matter, Grace seeks nothing more than what the Court already has ordered. The Court-approved Questionnaire provides that Grace can seek access to original x-rays:

> This Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis.

Questionnaire at ii; *see also id.* ("You may, but are not required to, attach chest x-rays. The court, however, has ruled that Grace may seek access to chest x-rays upon request."); Tr. of Hr'g

---

[1] Grace intends to use the same protocol for the provision of original x-rays for non-malignant claims. However, given the volume of those claims, Grace will be seeking a "sample" of those x-rays. Grace is awaiting Rust's inventory report of the Proof of Claims for the non-settled claims, filed on November 15, 2006, before requesting such a sample.

at 218 (Jul. 19, 2005). Pursuant to the Questionnaire's terms and this Court's rulings, original x-rays "will be returned within a reasonable period of time" after "professionals and experts have reviewed the documents." Questionnaire at iv.

Chest radiographs play an essential role in determining whether cancer is asbestos-attributable. *See* Weill Affidavit at ¶ 9, attached as Exhibit A.[2] Additionally, firms and claimants traditionally have relied upon this type of evidence to support their allegations that their cancers are attributable to asbestos. *See* Pittsburgh Corning Corp. Asbestos PI Settlement Trust Distribution Procedures (TDP), at 33, attached as Exhibit B; Armstrong World Indus., Inc. Asbestos PI Settlement TDP at 24-10, attached as Exhibit C; Babcock & Wilcox Co. Asbestos PI Settlement TDP at 23, attached as Exhibit D; DII Indus., LLC Asbestos PI TDP at Schedule 1, attached as Exhibit E; Combustion Engineering Asbestos PI TDP as modified through June 4, 2003 at 23, attached as Exhibit F. Thus, as part of its merit-based estimation, Grace seeks to have Claimants' x-rays reviewed by independent B-readers. Original x-rays are necessary for such a review as it is undisputed that the details needed to accurately read x-rays are lost when copied. *See* Henry Affidavit at ¶ 7, attached as Exhibit G. Thus, original x-rays are necessary to assess the presence of radiographic changes consistent with asbestos exposure. *See* Weill Affidavit at ¶ 6; Henry Affidavit at ¶ 6. Clinical chest physicians recognize the importance of having an original high quality chest radiograph as opposed to a copy. Accordingly, sending original x-rays to a medical professional for assessment is the norm in the medical community. Henry Affidavit at ¶ 9; Weill Affidavit at ¶ 7. The fact that original x-rays must be reviewed for

---

[2] Because radiographic changes can be attributable to various causes other than asbestos exposure, the presence of changes consistent with asbestos exposure does not demonstrate that the cancer is attributable to asbestos (i.e., it only indicates that asbestos can be one of various potential causes). However, the absence of radiographic changes consistent with asbestos exposure demonstrates that the cancer was not caused by asbestos exposure.

K&E 11483096.1

a meaningful analysis necessitates that such documents be produced to a centralized repository accessible to Grace and other parties participating in the estimation. In the past, Claimants have been required to produce original x-rays to substantiate their claims. *See* Tr. of Hr'g. at 36 (Oct. 6, 2005), *In re USG Corp.*, Case No. 01-2094 (D. Del.). ("I'm going to permit the x-rays to be produced. There are a lot of other things that are being requested there. I guess we need to go through each one of those. I think the x-rays are something that need to be produced."), attached as Exhibit H. There is no reason to excuse that requirement in this litigation where the reliability of x-ray evidence is a central issue and the very same doctors involved in the unreliable non-malignant claims appear also to be involved in the malignant claims. *See* W. R. Grace Asbestos Personal Injury Questionnaire of [name redacted] 002332-111, attached as Exhibit I.

For these reasons, Grace requests that all non-mesothelioma, malignant claimants provide all original x-rays that form the basis for or are relied upon as support for attributing a cancer diagnosis to asbestos exposure. Grace requests that the x-rays be sent to Rust Consulting by January 12, 2006. Experts will review the x-rays, and they will be returned to the claimants within three months.

I. **AFTER GOOD FAITH NEGOTIATIONS, GRACE AND CLAIMANTS' COUNSEL COULD NOT AGREE ON AN X-RAY PRODUCTION PROTOCOL**

On October 23, 2006, Grace's counsel wrote to counsel representing claimants alleging non-mesothelioma asbestos-related cancers. In these letters, Grace requested original chest x-rays upon which claimants base their allegations that their cancer is attributable to asbestos exposure. Grace explained that it would accept copies of x-rays in instances where the original was in the possession of the claimant's treating physician or was necessary for the treatment of the claimant's cancer. Oct. 23, 2006 Letter from B. Harding to Counsel for the PI Claimants at 1, attached as Exhibit J. Some law firms have complied with the request and sent original x-rays

3

to Rust. Many of the law firms that received this letter objected to producing original chest x-rays

In response to objections raised by various firms representing claimants, and at the Court's suggestion, Grace engaged in negotiation over an "x-ray protocol" to govern the production of the x-rays. Per the Court's instructions, a good faith effort was made during discussions among Grace; the PI Committee; Stutzman, Bromberg, Esserman & Plifka; and Montgomery, McCracken, Walker & Rhodes, LLP. Grace agreed to (1) pay the reasonable costs incurred in obtaining and transmitting the original x-rays, (2) keep original x-rays in a central repository with Rust Consulting, and (3) return the x-rays within a reasonable time. Despite these discussions, which were undertaken in good faith by the parties, agreement could not be reached. Although some Claimants already have sent their original x-rays to Rust, the primary objections to Grace's proposal seem to be centered around the provision of (1) original x-rays (2) to a central repository. The Firms' primary contentions are that that they will not provide original x-rays because (1) they are irreplaceable, (2) may be used for the treatment of claimants, and (3) may be needed in other ongoing litigation in which the claimants are engaged.

At the conclusion of the negotiation, when no agreement could be reached, Grace indicated that it would submit its proposed protocol to the Court for discussion at the December 5th hearing.

## II. THE PROPOSED PROTOCOL IS CONSISTENT WITH THE CLAIMANTS' DISCOVERY OBLIGATIONS AND THIS COURT'S PRIOR RULINGS.

Federal Rule of Civil Procedure 26, as incorporated by Federal Rule of Bankruptcy Procedure 7026, provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1); Fed. R. Bank. P. 7026. Here, the Court has already ruled that the requested original radiographs are

relevant. *See* Order Concerning Debtors' Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Personal Injury Questionnaire (Oct. 12, 2006) (Docket No. 13393). Indeed, the original x-ray's relevance is indisputable -- Grace requests original x-rays only to the extent Claimants rely on them to support an assertion that their cancer diagnosis is attributable to asbestos exposure. Thus, the issue before the Court is simply an issue of procedure -- what is the best and most efficient way to facilitate production and review of the original x-rays.

The Proposed Order addresses four aspects of how the x-rays will be produced. First, Claimants will be required to submit original x-rays as opposed to copies. Second, the x-rays will be kept in a central repository. Third, the x-rays will be retained at the central repository for a period of three months. Fourth, the x-rays will be reviewed independently by at least two and preferably 3 or more B-readers, who will be appointed by the Court or one of its agents, and paid out of the Estate.

### A. Producing Original X-rays Is Essential for Enabling Accurate X-ray Reads

It is critical that the Claimants produce original x-rays rather than copies. Copying x-rays is subjective, and there is no way for an evaluating doctor to determine whether the copy is representative of the original film. Henry Aff. At ¶ 6, 7. Even a well executed x-ray copy can either detract from or enhance the image in the original x-ray, adding an additional layer of uncertainty and potential variability to the x-ray evaluation. *Id.* at ¶ 8. Accordingly, in the clinical setting, radiologists and pulmonologists insist on reading original x-rays as opposed to copies. *Id.* at ¶ 9; Weill Aff. At ¶ 7. Doctors who read for workers' compensation regimes also routinely require the production of original x-rays. *See* Henry Aff. at ¶ 9 ("My colleagues and I, as members of the Virginia Commonwealth University Occupational Pulmonary Committee,

routinely reject evaluation of copy films for the Workers' Compensation Committee of the Commonwealth of Virginia, designating them as unreadable (U/R). This has been our policy for many years.").

Various courts have similarly required the production of original x-rays. *See In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563 (S.D. Tex 2005) (establishing repository of original x-rays); *see also Malone v. Med Inn Centers of America, LLC*, 2004 WL 1080155, at *3 (W.D.N.Y. Apr. 20, 2004) (ordering personal injury plaintiff to provide defendant "original radiographic films, x-rays and MRI films."). Recently, the court in *In re G-I Holdings* allowed the debtors to obtain original x-rays of asbestos claimants. *See* 2006 WL 2403531, at *23 (Bank. D.N.J. Aug. 11, 2006) ("As well, any discovery plan must address concerns regarding the handling of any original x-rays or other medical records.").

The Proposed Order does permit Claimants to submit copies of any x-rays that are in the possession of a treating physician. Grace's request for original x-rays has always provided that copies will suffice in those few cases where original x-rays are in the possession of the claimant's treating physician and being used to effect clinical care. *See* Letter from B. Harding to Counsel (Oct. 23, 2006) ("If an x-ray is in the possession of Claimant's treating physician, it is acceptable to provide copies of that x-ray.").

### B.   The X-rays Shall be Stored in a Central Repository

All x-rays sent to Rust shall be placed in a central repository to be administered by a medical professional designated by the Court. The Court appointed administrator will determine who the B-readers will be and will control their access to the repository. Grace anticipates that the protocols governing the repository will allow claimants' counsel and their professionals access to the original x-rays, and procedures can be established to provide access to additional

K&E 11483096.1

parties as needed. Moreover, Grace and the Claimants can work together to establish procedures for the immediate return of any specific x-ray should it be needed for actual clinical use or medical treatment.

### C. The X-rays Shall Remain in the Repository for Three Months

According to the Proposed Order, all x-rays shall be returned to the Claimants no later than April 12, 2007. Thus, the x-rays will be reviewed and returned to the Claimants well in advance of the June 13, 2007 trial date.

### D. Each X-ray Shall be Reviewed by At Least Three Independent B-Readers

The Proposed Order calls for each x-ray to be reviewed by three or more independent B-readers. The International Labour Organization (ILO) Guidelines state that an x-ray evaluated under the B-reading regime should be reviewed by at least two, but preferably three, independent B-readers. ILO Guidelines at 12. Requiring independent B-reads addresses the widespread concern regarding inter and intra reader variability. *See* Henry Expert Report at 31-2, attached as Exhibit K; Weill Expert Report at 53-4, attached as Exhibit L. To the extent that the independent x-ray panel identifies an x-ray as consistent with a pneumoconiosis, Grace shall not contest the validity of the panel's findings.

### E. The Appointment of an Expert to Administer the Review of the X-rays

Grace requests that the Court appoint an independent medical professional to oversee the custody and care of the x-rays, and the independent review of the x-rays. Within one week of entry of the proposed protocol, Grace proposes that each interested party provide recommendations to the Court for appointment of such an expert. The Court can then choose from among the recommendations of the parties, or independently select such an administrator.

7

If the Court is disinclined to appoint such an expert, Grace has contacted experts who are prepared to supervise the collection of the x-rays and conduct the evaluation.

## III.  CONCLUSION

Grace and the Claimants' counsel have negotiated in good faith but failed to agree on an x-ray protocol. As a result, the parties have agreed to address this issue at the December 5, 2006 hearing at which time Grace will request entry of the attached Proposed Order, which establishes the framework for an independent evaluation of original x-rays produced by claimants alleging an asbestos-related cancer other than mesothelioma, at the December 5th hearing.

Dated: Wilmington, Delaware
       November 17, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick
Salvatore Bianca
200 East Randolph Drive
Chicago, IL 60601
Telephone:  (312) 861-2000
Facsimile:  (312) 861-2200

KIRKLAND & ELLIS LLP
Barbara Harding
David Mendelson
Brian T. Stansbury
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:  (202) 879-5000
Facsimile:  (202) 879-5200

-and-

PACHULSKI STANG ZIEHL YOUNG
JONES & WEINTRAUB LLP

*/s/ James E. O'Neill*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:   (302) 652-4100
Facsimile:   (302) 652-4400

9