# Exhibit B

**Exhibit B to**
**Second Amended**
**Plan of Reorganization**

# PITTSBURGH CORNING CORPORATION

# ASBESTOS PERSONAL INJURY SETTLEMENT TRUST DISTRIBUTION PROCEDURES

**PITTSBURGH CORNING CORPORATION**

**ASBESTOS PERSONAL INJURY SETTLEMENT TRUST DISTRIBUTION PROCEDURES**

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| SECTION I — Introduction | | 2 |
| 1.1 | Purpose | 2 |
| 1.2 | Interpretation | 2 |
| SECTION II — Overview | | 2 |
| 2.1 | Asbestos PI Trust Goal | 2 |
| (a) | The PCC Fund | 3 |
| (b) | The PPG Fund | 4 |
| (c) | The Corning Fund | 5 |
| 2.2 | Claims Liquidation Procedures | 5 |
| (a) | In General | 5 |
| (b) | PCC Fund Claims | 6 |
| (c) | PPG Fund Claims | 9 |
| (d) | Corning Fund Claims | 9 |
| 2.3 | Application of the Payment Percentage for PCC Fund Claims | 11 |
| 2.4 | Asbestos PI Trust's Determination of the Maximum Annual Payment and Maximum Available Payment for PCC Fund Claims | 13 |
| 2.5 | Claims Payment Ratio for PCC Fund Claims | 14 |
| 2.6 | Indemnity and Contribution Claims | 16 |
| SECTION III — TDP Administration | | 17 |
| 3.1 | Asbestos PI Trust Advisory Committee and Future Claimants' Representative | 17 |
| 3.2 | Consent and Consultation Procedures | 17 |

SECTION IV — Payment Percentage; Periodic Estimates ............................... 18

4.1    Uncertainty of PCC's, the PPG Entities' and the
Corning Entities' Total Liabilities for PCC Fund Claims .............. 18
4.2    Computation of Payment Percentage ...................................... 18
4.3    Applicability of the Payment Percentage ............................... 21


SECTION V — Resolution of Asbestos PI Trust Claims ................................. 22

5.1    Ordering, Processing and Payment of Claims ........................... 22
    (a)       Ordering of All Asbestos PI Trust Claims ...................... 22
         (1)    Establishment of the FIFO Processing Queues ......... 22
         (2)    Effect of Statutes of Limitation and Repose.............. 23
    (b)       Processing of Claims ................................................... 25
    (c)       Payment of Claims ..................................................... 26
5.2    Resolution of Pre-Petition Liquidated Asbestos PI Trust Claims ...... 28
    (a)       Processing and Payment ............................................. 28
    (b)       Marshalling of Security ............................................. 30
5.3    Resolution of Unliquidated Asbestos PI Trust Claims ................. 30
    (a)       PCC Fund Claims and PPG Fund Claims ....................... 31
         (1)    Expedited Review Process for PCC Fund Claims ..... 31
             (A)    In General .......................................... 31
             (B)    PCC Fund Claims Processing Under
Expedited Review ............................... 32
             (C)    Disease Levels, Scheduled Values
and Medical/Exposure Criteria for
PCC Fund Claims  .............................. 33
         (2)    Individual Review Process for PCC Fund Claims
and PPG Fund Claims ...................................... 39
             (A)    In General .......................................... 39
             (B)    Valuation Factors to Be Considered
in Individual Review ............................... 42
             (C)    Processing and Payment Limitations for
Individual Review of PCC Fund Claims
Involving Disease Levels III and II .............. 43
                  (i)    Disease Level III PCC Fund
Claims ..................................... 43
                  (ii)    Disease Level II PCC Fund
Claims ..................................... 44
         (3)    Scheduled, Average and Maximum Values
for PCC Fund Claims ...................................... 44
    (b)       Corning Fund Claims ................................................ 45

5.4    Categorizing Claims as Extraordinary and/or Exigent ................. 47

|  |  | (a) | Extraordinary Claims ................................................ | 47 |
|  |  | (b) | Exigent Hardship Claims ........................................... | 48 |
|  | 5.5 | Secondary Exposure Claims.................................................. | | 48 |
|  | 5.6 | Indirect Asbestos Claims ..................................................... | | 49 |
|  | 5.7 | Evidentiary Requirements for PCC Fund Claims and | | |
|  |  | PPG Fund Claims ...................................................... | | 55 |
|  |  | (a) | Medical Evidence ................................................. | 52 |
|  |  |  | (1) In General ...................................................... | 52 |
|  |  |  | (A) Disease Levels I – IV ............................... | 52 |
|  |  |  | (B) Disease Levels V – VIII........................... | 53 |
|  |  |  | (C) Exception to the Exception | |
|  |  |  | for Certain Pre-Petition Claims ................. | 54 |
|  |  |  | (2) Credibility of Medical Evidence ......................... | 54 |
|  |  | (b) | Exposure Evidence.................................................... | 55 |
|  |  |  | (1) In General ...................................................... | 55 |
|  |  |  | (2) Significant Occupational Exposure ...................... | 57 |
|  |  |  | (3) Sufficiency of Evidence for PCC Fund Claims | |
|  |  |  | and PPG Fund Claims ..................................... | 57 |
|  | 5.8 | Claims Audit Program ....................................................... | | 58 |
|  | 5.9 | Second Disease (Malignancy) Claims .................................... | | 59 |
|  | 5.10 | Arbitration ...................................................................... | | 59 |
|  |  | (a) | Establishment of ADR Procedures for PCC Fund Claim | |
|  |  |  | and PPG Fund Claims ............................................. | 59 |
|  |  | (b) | Claims Eligible for Arbitration ................................... | 60 |
|  |  | (c) | Limitations on and Payment of Arbitration Awards ............. | 61 |
|  | 5.11 | Litigation of Asbestos PI Trust Claims .................................. | | 61 |
|  |  | (a) | Litigation of PCC Fund Claims and PPG | |
|  |  |  | Fund Claims......................................................... | 62 |
|  |  | (b) | Litigation of Corning Fund Claims ............................... | 62 |

SECTION VI — Claims Materials ................................................... 64

|  | 6.1 | Claims Materials ............................................................... | 64 |
|  | 6.2 | Content of Claims Materials ................................................. | 65 |
|  | 6.3 | Withdrawal or Deferral of Claims ......................................... | 65 |
|  | 6.4 | Filing Requirements and Fees .............................................. | 66 |

SECTION VII — General Guidelines for Liquidating and Paying Claims ............ 66

|  | 7.1 | Showing Required ............................................................. | 66 |
|  | 7.2 | Costs Considered .............................................................. | 67 |

7.3   Discretion to Vary the Order and Amounts of Payments
      in Event of Limited Liquidity ........................................................ 67
      7.4   Punitive Damages   ...................................................... 68
      7.5   Interest ..................................................................... 69
            (a)   Liquidated Pre-Petition Claims ................................. 69
            (b)   Unliquidated PCC Fund Claims and PPG
                  Fund Claims............................................................. 69
            (c)   Unliquidated Corning Fund Claims  ........................... 70
      7.6   Suits in the Tort System.................................................. 71
            (a)   PCC Fund Claims and PPG Fund Claims ....................... 71
            (b)   Corning Fund Claims ............................................... 71
      7.7   Payment of Money Judgments  ......................................... 72
            (a)   Judgments Relating to PCC Fund Claims and
                  PPG Fund Claims .................................................... 72
            (b)   Settlements and Judgments Relating to Corning
                  Fund Claims   ......................................................... 73
      7.8   Releases ..................................................................... 73
      7.9   Third-Party Services   ................................................... 74
      7.10  Asbestos PI Trust Disclosure of Information ........................... 74

SECTION VIII — Miscellaneous   ........................................................ 74

      8.1   Amendments   ............................................................ 74
      8.2   Severability   ............................................................ 75
      8.3   Governing Law   ......................................................... 75

**PITTSBURGH CORNING CORPORATION**

**ASBESTOS PI TRUST DISTRIBUTION PROCEDURES**

The Pittsburgh Corning Corporation Asbestos PI Trust Distribution Procedures ("TDP") contained herein provide for resolving all Asbestos PI Trust Claims (as defined in the Pittsburgh Corning Corporation Plan of Reorganization ("Plan") and hereinafter referred to for all purposes of this TDP as "Asbestos PI Trust Claims") for which Pittsburgh Corning Corporation ("PCC"), its shareholders, PPG Industries, Inc. ("PPG") and Corning Incorporated ("Corning"), Corhart Refractories Company, a former subsidiary and division of Corning and now a division of Saint Gobain Ceramics and Plastics, Inc. ("Corhart"), their successors and assigns, and the other Asbestos Protected Parties (as defined in the Plan) may have legal responsibility, as provided in and required by the Pittsburgh Corning Corporation Asbestos PI Trust Agreement ("Asbestos PI Trust Agreement").

The Plan and the Asbestos PI Trust Agreement establish the Pittsburgh Corning Corporation Asbestos PI Trust (hereinafter "Asbestos PI Trust"). The Trustees of the Asbestos PI Trust ("Trustees") shall implement and administer this TDP in accordance with the Asbestos PI Trust Agreement. Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Plan and the Asbestos PI Trust Agreement.

## SECTION I

### Introduction

**1.1    Purpose.**  This TDP has been adopted pursuant to the Asbestos PI Trust Agreement.  It is designed to provide fair, equitable, and substantially similar treatment for all Asbestos PI Trust Claims that may presently exist or may arise in the future.

**1.2    Interpretation.**  Nothing in this TDP shall be deemed to create a substantive right for any claimant.

## SECTION II

### Overview

**2.1    Asbestos PI Trust Goal.**  The goal of the Asbestos PI Trust is to treat all holders of Asbestos PI Trust Claims equitably and in accordance with the requirements of Section 524(g) and Section 105 of the Bankruptcy Code. To achieve that goal, the Asbestos PI Trust creates three separate funds, the PCC Fund, the PPG Fund and the Corning Fund (each an "Asbestos PI Trust Fund," and collectively the "Asbestos PI Trust Funds"), which are described in the Plan and below.  This TDP furthers that goal by setting forth procedures for processing and paying Asbestos PI Trust Claims from their respective Asbestos PI Trust Funds on an impartial, first-in-first-out ("FIFO") basis, with the intention of paying all claimants over time as equivalent a share as possible of the value of their claims based on historical values for substantially similar claims in the tort system.[1]

---

[1]    As used in this TDP, the phrase "in the tort system" shall include only claims asserted by way of litigation and/or pre-litigation settlements and not claims asserted against a trust established pursuant to section 524(g) and/or section 105 of the Bankruptcy Code or any other applicable law.

A claimant may assert an Asbestos PI Trust Claim against (i) the PCC Fund based on a PCC Fund Claim; (ii) the PPG Fund based on a PPG Fund Claim; and/or (iii) the Corning Fund based on Corning Fund Claim, all as defined in the Plan. To the extent that the PCC Fund, the PPG Fund and/or the Corning Fund have separate liabilities to a single claimant based on a separate Asbestos PI Trust Claim against one or more Asbestos PI Trust Funds ("Multiple Exposure Claims"), each such Asbestos PI Trust Fund shall pay the claimant the liquidated value of such Asbestos PI Trust Fund's several share of the liability, subject in the case of PCC Fund Claims to the applicable Payment Percentage, Maximum Annual Payment, Maximum Available Payment and Claims Payment Ratio (defined below).

2.1(a)    **The PCC Fund.** The assets of the PCC Fund shall consist primarily of stock and securities of PCC, PCE, PPG and Corning, cash, the rights to receive future payments pursuant to (i) any Pre-1981 PCC Settlement Agreements, (ii) the PPG Trust Funding Agreement, and (iii) the Corning Trust Funding Agreement, and the assignment of the PPG Non-Participating Policy Rights, the PPG Insolvent Insurer Rights, and the PPG Insurance Guaranty Fund Rights. All PCC Fund Claims shall be processed, liquidated and paid based on either the matrix values established for the Expedited Review Process set forth in Section 5.3(a)(1) below or a liquidated value to be established pursuant to the Individual Review Process set forth in Section 5.3(a)(2) below.

_____

Because the value of all of the assets expected to be contributed to the PCC Fund is estimated to be less than the value of all the PCC Fund Claims that are expected to be filed with the Asbestos PI Trust over its life, the holders of PCC Fund Claims shall receive only a pro rata portion of the liquidated value of their claims (a "Payment Percentage") that shall be established pursuant to Sections 2.3 and 4.2 below.

**2.1(b)    The PPG Fund.** The assets of the PPG Fund shall consist of a portion of the cash payments to be made by PPG to the Asbestos PI Trust pursuant to Section III.A of the PPG Trust Funding Agreement, as set forth in Section 3.1(b) of the Asbestos PI Trust Agreement. Because the settlement history with respect to PPG Fund Claims is insufficient to allow the Asbestos PI Trust to establish matrix values for those claims, all PPG Fund Claims shall initially be processed, liquidated and paid solely pursuant to the Individual Review Process set forth in Section 5.3(a)(2) below. However, the Asbestos PI Trust may establish such matrix values and extend the Expedited Review Process to PPG Fund Claims after it has had sufficient experience liquidating those claims under the Individual Review Process.

Unlike the PCC Fund, the assets to be contributed to the PPG Fund are anticipated to be sufficient to pay the full liquidated value of all PPG Fund Claims over time. Accordingly, no pro-rata Payment Percentage has been set for claims payable from the PPG Fund at this time. However, should this assumption prove incorrect, the Trustees, with the consent of the TAC and the Future Claimants' Representative, may adopt such a Payment Percentage for PPG Fund Claims at the appropriate time.

2.1(c)    **The Corning Fund.** The assets of the Corning Fund shall consist of cash, stock and rights to obtain indemnity payments and costs of defense pursuant to the Corning Insurance Proceeds Assignment Agreement. Holders of Corning Fund Claims shall liquidate those claims against the Asbestos PI Trust in the tort system as provided in Sections 5.3(b), 5.11(b) and 7.6(b) below, and it is anticipated that all final judgments against the Asbestos PI Trust relating to such claims shall be paid by or on behalf of the Asbestos PI Trust from the insurance proceeds available to the Corning Fund pursuant to Section 7.7(b) below. Pursuant to Section III of the Corning Trust Funding Agreement, a cash reserve has also been established to pay Corning Fund Claims.

Because it is anticipated that the insurance proceeds and cash reserve available to the Corning Fund will be sufficient to pay all Corning Fund Claims in full, no provision has been made at this time for a pro-rata Payment Percentage to apply to such claims. However, should this assumption prove incorrect, the Trustees, with the consent of the TAC and the Future Claimants' Representative, may adopt such a Payment Percentage for Corning Fund Claims at the appropriate time.

**2.2    Claims Liquidation Procedures.**

2.2(a)    **In General.** All claimants holding an Asbestos PI Trust Claim must file a claim with the Asbestos PI Trust in accordance with the proof of claim provisions of Section 6.1 as provided below, and all Multiple Exposure Claims must be filed by the claimant at the same time. Upon filing of the Asbestos PI Trust Claim or Claims, the claimant shall be placed in the FIFO Processing Queue for the corresponding Asbestos PI Trust Fund or Funds to be established by the Asbestos PI

5

Trust. The Asbestos PI Trust shall take all reasonable steps to resolve Asbestos PI Trust Claims as efficiently and expeditiously as possible at each stage of claims processing and arbitration.

To this end, the Asbestos PI Trust, in its sole discretion, may conduct settlement discussions with claimants' representatives with respect to more than one claim at a time, provided that each such PCC Fund Claim or PPG Fund Claim is individually evaluated pursuant to the valuation factors set forth in Section 5.3(a)(2)(B) below, and provided further that each claimant's position in the relevant FIFO Processing or Payment Queue is maintained. The Asbestos PI Trust shall also make every effort to resolve each year at least that number of PCC Fund Claims required to exhaust the Maximum Annual Payment and the Maximum Available Payment for Category A and Category B claims payable from the PCC Fund (as those terms are defined below).

**2.2(b)      PCC Fund Claims.** The Asbestos PI Trust shall liquidate all PCC Fund Claims except foreign claims that meet the presumptive Medical/Exposure Criteria of Disease Levels I – V, VII and VIII (set forth below in Section 5.3(a)**(1)(C)**) under the Expedited Review Process described in Section 5.3(a)(1) below.  PCC Fund Claims involving Disease Levels I – V, VII and VIII that do not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level may undergo the Asbestos PI Trust's Individual Review Process described in Section 5.3(a)(2) below.  In such a case, notwithstanding that the claim does not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level, the Asbestos PI Trust can offer the claimant an amount up to the Scheduled Value of that Disease

Level if the Asbestos PI Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system.

PCC Fund Claims involving Disease Levels II - VIII may in addition or alternatively seek to establish a liquidated value for the claim that is greater than its Scheduled Value by electing the Asbestos PI Trust's Individual Review Process. However, the liquidated value of a PCC Fund Claim that undergoes the Individual Review Process for valuation purposes may be determined to be less than its Scheduled Value, and in any event shall not exceed the Maximum Value for the relevant Disease Level set forth in Section 5.3(a)(3) below. However, if the claim qualifies as an Extraordinary Claim as defined in Section 5.4(a) below, its liquidated value cannot exceed the Maximum Value specified in that provision for such claims. PCC Fund Claims involving Disease Level VI (Lung Cancer 2) and all foreign claims shall be liquidated only pursuant to the Asbestos PI Trust's Individual Review Process.

Based upon the available settlement history of PCC, in light of applicable tort law, and current projections of present and future unliquidated PCC Fund Claims, the Scheduled Values and Maximum Values set forth in Section 5.3(a)(3) have been established for each of the Disease Levels that are eligible for Individual Review of their liquidated values, with the expectation that the combination of settlements at the Scheduled Values and those resulting from the Individual Review Process will result in the Average Values also set forth in that provision. In any event and except as provided below, all payments to a claimant from the PCC Fund shall be subject to the Payment Percentage, Maximum Annual Payment, Maximum Available Payment and

Claim Payment Ratio limitations (described below) that are in effect at the time of payment.

Claimants filing PCC Fund Claims shall be notified when the claim comes up in the FIFO Processing Queue. If the Expedited Review Process is selected for a claim, and the claim meets the presumptive Medical/Exposure Criteria set forth below, the claimant shall be paid the Scheduled Value for the relevant Disease Level. If the claimant seeks to process the claim against the PCC Fund under the Asbestos PI Trust's Individual Review Process, the claimant shall be paid the liquidated value of the claim or claims determined pursuant to that process.

All unresolved disputes over a claimant's medical condition, exposure history and/or the liquidated value of a PCC Fund Claim shall be subject to binding or non-binding arbitration as provided in Section 5.10 below, at the election of the claimant, under the ADR Procedures to be adopted by the Asbestos PI Trust. PCC Fund Claims that are the subject of a dispute with the Asbestos PI Trust that cannot be resolved by non-binding arbitration may enter the tort system as provided in Sections 5.11(a) and 7.6(a) below.  However, if and when a claimant obtains a judgment in the tort system, the judgment will be payable (subject to the Payment Percentage, Maximum Available Payment, and Claims Payment Ratio provisions set forth below) as provided in Section 7.7(a) below.

2.2(c)   **PPG Fund Claims.** Claimants filing PPG Fund Claims may only process their claims under the Asbestos PI Trust's Individual Review Process pursuant to Section 5.3(a)(2) below. The Asbestos PI Trust will individually review the claimants' medical and exposure evidence and will liquidate the value of those

8

claims using the valuation factors set forth in Section 5.3(a)(2)(B). Any dispute between the claimant and the Asbestos PI Trust over the claimant's medical condition or exposure shall be subject to the Asbestos PI Trust's ADR procedures set forth in Section 5.10. If non-binding arbitration does not resolve the dispute, the claimant may bring suit against the Asbestos PI Trust in the tort system pursuant to Sections 5.11(a) and 7.6(a) below, with any settlement or judgment of that suit payable under Section 7.7(a). As stated above, because it is anticipated that the PPG Fund will have sufficient assets to pay all PPG Fund Claims in full, payments of such claims shall not be initially subject to the Payment Percentage or other procedures and limitations that are applicable to PCC Fund Claims. However, should that assumption prove incorrect, the Asbestos PI Trust may adopt a Payment Percentage for the PPG Fund Claims and may also subject those PPG Fund Claims to the same procedures and limitations that apply to PCC Fund Claims.

 **2.2(d)  Corning Fund Claims.** All Corning Fund Claims payable from the Corning Fund shall be filed with the Asbestos PI Trust at the same time the claimant files any PCC Fund Claim and/or PPG Fund Claim on such proof of claim form as the Asbestos PI Trust shall require. The Asbestos PI Trust shall place the Corning Fund Claim in a separate FIFO Processing Queue, and shall promptly tender the claim to the insurer or insurers who have the responsibility for handling the claim for settlement or litigation in the tort system, unless the Asbestos PI Trust and the insurer or insurers have reached an agreement authorizing the Asbestos PI Trust to establish an administrative process for claims handling and resolution. The Asbestos

PI Trust may also, with the consent of the TAC and the Future Claimants'
Representative, establish an administrative process with Corning for handling and
defending Corning Fund Claims.

If the insurer or insurers deny liability for the Corning Fund Claim, the holder
of the claim may proceed in the relevant tort system to sue the Asbestos PI Trust in
the name of the Asbestos PI Trust only for the Corning Fund 's several share of the
liability pursuant to Sections 5.11(b) and 7.6(b) below. In such a case, it is anticipated
that the insurer or insurers shall either assume the defense of the claim or reimburse
the Asbestos PI Trust for its costs of defense. It is further anticipated that the insurer
or insurers will settle or pay judgments related to the Corning Fund Claims. In any
event, all final judgments for money damages relating to a Corning Fund  Claim that
are not paid by the insurer or insurers that have the responsibility for handling the
Claim shall be paid by the Corning Fund  pursuant to Section 7.7(b) below.

At such time as may be warranted, the Trustees, with the consent of the TAC
and the Future Claimants' Representative, may adopt procedures for processing,
liquidating and paying Corning Fund Claims from the cash reserve of the Corning
Fund. Because the insurance assets and cash reserve of the Corning Fund are
anticipated to be adequate to pay all such claims in full, no Payment Percentage has
been set for the Corning Fund. However, should that assumption prove incorrect, the
Asbestos PI Trust may adopt a Payment Percentage for the Corning Fund Claims at
the appropriate time.

### 2.3    Application of the Payment Percentage for PCC Fund Claims.

After the liquidated value of a PCC Fund Claim other than a claim involving Other

Asbestos Disease (Disease Level I – Cash Discount Payment), as defined in Section

5.3(a)(1)(C) below, is determined pursuant to the procedures set forth herein for

Expedited Review, Individual Review, arbitration, or litigation in the tort system, the

claimant will ultimately receive a pro-rata share of that value based on a Payment

Percentage described in Section 4.2 below. The Payment Percentage shall also apply

to Pre-Petition Liquidated Claims payable from the PCC Fund as provided in Section

5.2 below.

The Initial Payment Percentage for PCC Fund Claims has been set at 23.7

percent (23.7%), and shall apply to all Asbestos PI Trust Voting Claims accepted as

valid by the Asbestos PI Trust, unless adjusted by the Asbestos PI Trust with the

consent of the TAC and the Future Claimants' Representative pursuant to Section 4.2

below. The term "Asbestos PI Voting Trust Claims" includes  (i) Pre-Petition

Liquidated Claims payable from the PCC Fund as defined in Section 5.2(a) below; (ii)

PCC Fund Claims filed against any Asbestos Protected Party in the tort system or

actually submitted to an Asbestos Protected Party pursuant to an administrative

settlement agreement prior to the Petition Date; and (iii) PCC Fund Claims filed

against another defendant in the tort system prior to the date the Plan was filed with the

Bankruptcy Court (April 30, 2003 (the "Plan Filing Date")), provided, however, that

the holder of a PCC Fund Claim described in subsection (i), (ii) or (iii) above, or his or

her authorized agent, actually voted to accept or reject the Plan pursuant to the voting

procedures established by the Bankruptcy Court, and provided further that the claim

11

was subsequently filed with the Asbestos PI Trust pursuant to Section 6.1 below by the Initial Claims Filing Date as defined in Section 5.1(a) below.

The Initial Payment Percentage has been calculated on the assumption that the Average Values set forth in Section 5.3(a)(3) below will be achieved with respect to existing and projected future PCC Fund Claims involving Disease Levels II – VIII. The Payment Percentage for PCC Fund Claims may be adjusted upwards or downwards from time to time by the Asbestos PI Trust with the consent of the TAC and the Future Claimants' Representative to reflect then-current estimates of the Asbestos PI Trust's assets and its liabilities, as well as the then-estimated value of pending and future claims. However, any adjustment to the Initial Payment Percentage shall be made only pursuant to Section 4.2 below.

If the Payment Percentage is increased over time, claimants whose PCC Fund Claims were liquidated and paid in prior periods under the TDP will not receive additional payments, except as provided in Section 4.2 below relating to circumstances in which the Asbestos PI Trust has received a substantial recovery of insurance proceeds. Because there is uncertainty in the prediction of both the number and severity of future claims, and the amount of the Asbestos PI Trust's assets, no guarantee can be made of any Payment Percentage of a PCC Fund Claim.

**2.4    Asbestos PI Trust's Determination of the Maximum Annual Payment and Maximum Available Payment for PCC Fund Claims.** The Asbestos PI Trust shall estimate or model the amount of cash flow anticipated to be necessary over its entire life to ensure that funds will be available to treat all present and future PCC Fund claimants as similarly as possible. In each year, the Asbestos PI Trust will be

empowered to pay out all of the interest earned during the year, together with a portion of its principal, calculated so that the application of the assets of the PCC Fund over its life shall correspond with the needs created by the anticipated flow of claims (the "Maximum Annual Payment"), taking into account the Payment Percentage provisions set forth in Sections 2.3 above and 4.2 below. The Asbestos PI Trust's distributions to all claimants for that year shall not exceed the Maximum Annual Payment determined for that year.

In distributing the Maximum Annual Payment, the Asbestos PI Trust shall first allocate the amount in question to outstanding Pre-Petition Liquidated Claims payable from the PCC Fund and to previously liquidated PCC Fund Claims involving Disease Level I (Cash Discount Payment), in proportion to the aggregate value of each group of claims. The remaining portion of the Maximum Annual Payment (the "Maximum Available Payment"), if any, shall then be allocated and used to satisfy all other liquidated PCC Fund Claims, subject to the Claims Payment Ratio set forth in Section 2.5 below. In the event there are insufficient monies in any year to pay the total number of outstanding Pre-Petition Liquidated Claims and/or previously liquidated Disease Level I Claims from the PCC Fund, the available monies allocated to that group of claims shall be paid to the maximum extent to claimants in the particular group based on their place in their respective FIFO Payment Queue. PCC Fund Claims in either group for which there are insufficient amounts shall be carried over to the next year and placed at the head of their FIFO Payment Queue.

2.5    **Claims Payment Ratio for PCC Fund Claims.** Based upon PCC's claims settlement history and analysis of present and future claims, a Claims Payment

Ratio has been determined for PCC Fund Claims, which, as of the Effective Date, has been set at 60% for Category A claims, which consist of PCC Fund Claims involving severe asbestosis and malignancies (Disease Levels IV – VIII) that were unliquidated as of the Petition Date, and at 40% for Category B claims, which are PCC Fund Claims involving non-malignant Asbestosis or Pleural Disease (Disease Levels II and III) that were similarly unliquidated as of the Petition Date. However, the Claims Payment Ratio shall not apply to any Pre-Petition Liquidated Claims or to any claims for Other Asbestos Disease (Disease Level I - Cash Discount Payment).

In each year, after the determination of the Maximum Available Payment described in Section 2.4 above, 60% of that amount will be available to pay Category A claims and 40% will be available to pay Category B claims that have been liquidated since the Petition Date. In the event there are insufficient monies in any year to pay the liquidated claims within either or both of the Categories, the available monies allocated to the particular Category shall be paid to the maximum extent to claimants in that Category based on their place in the FIFO Payment Queue described in Section 5.1(c) below, which will be based upon the date of claim liquidation.

PCC Fund Claims for which there are insufficient monies allocated to the relevant Category shall be carried over to the next year where they will be placed at the head of the FIFO Payment Queue. If there are excess monies in either or both Categories, because there is an insufficient amount of liquidated claims to exhaust the respective Maximum Available Payment amount for that Category, then the excess monies for either or both Categories will be rolled over and remain dedicated to the respective Category to which they were originally allocated.

14

The 60%/40% Claims Payment Ratio and its rollover provision shall apply to all Asbestos PI Trust Voting Claims payable from the PCC Fund as defined in Section 2.3 above except Pre-Petition Liquidated Claims and claims involving Other Asbestos Disease (Disease Level I -Cash Discount Payment), and shall not be amended until the fifth anniversary of the Effective Date. Thereafter, both the Claims Payment Ratio and its rollover provision shall be continued absent circumstances, such as a significant change in law or medicine, necessitating amendment to avoid a manifest injustice. However, the accumulation, rollover and subsequent delay of claims resulting from the application of the Claims Payment Ratio, shall not, in and of itself, constitute such circumstances. Nor may an increase in the numbers of Category B PCC Fund Claims beyond those predicted or expected be considered as a factor in deciding whether to reduce the percentage allocated to Category A PCC Fund Claims.

In considering whether to make any amendments to the Claims Payment Ratio and/or its rollover provisions, the Trustees shall also consider the reasons for which the Claims Payment Ratio and its rollover provisions were adopted, the settlement history that gave rise to its calculation, and the foreseeability or lack of foreseeability of the reasons why there would be any need to make an amendment. In that regard, the Trustees should keep in mind the interplay between the Payment Percentage and the Claims Payment Ratio as it affects the net cash actually paid to PCC Fund claimants. In any event, no amendment to the Claims Payment Ratio may be made without the consent of the TAC and the Future Claimants' Representative pursuant to the consent process set forth in Sections 5.7(b) and 6.6(b) of the Asbestos PI Trust Agreement. However, the Trustees, with the consent of the TAC and the Future

Claimants' Representative, may offer the option of a reduced Payment Percentage to holders of PCC Fund Claims in either Category A or Category B in return for prompter payment (the "Reduced Payment Option").

**2.6** **Indemnity and Contribution Claims.** As set forth in Section 5.6 below, any Asbestos PI Trust Claim for indemnity, contribution or other reimbursement ("Indirect Asbestos Claims") that is payable from an Asbestos PI Trust Fund shall be subject to the same processing, liquidation, and payment provisions under this TDP that the claim would have been subject to if it had been brought by the original claimant against the Asbestos PI Trust Fund in question.

**SECTION III**

**TDP Administration**

**3.1** **Asbestos PI Trust Advisory Committee and Future Claimants' Representative.** Pursuant to the Plan and the Asbestos PI Trust Agreement, the Asbestos PI Trust and this TDP shall be administered by the Trustees in consultation with the Trust Advisory Committee ("TAC"), which represents the interests of holders of present Asbestos PI Trust Claims, and the Future Claimants' Representative, who represents the interests of holders of Asbestos PI Trust Claims that will be asserted in the future. The Trustees shall obtain the consent of the TAC and the Future Claimants' Representative on any amendments to these Procedures pursuant to Section 8.1 below, and on such other matters as are otherwise required below and in Section 2.2(f) of the Asbestos PI Trust Agreement. The Trustees shall also consult with the TAC and the Future Claimants' Representative on such matters as are provided below and in Section 2.2(e) of the Asbestos PI Trust Agreement. The initial members of the TAC and the

16

initial Future Claimants' Representative are identified in the Asbestos PI Trust Agreement.

**3.2    Consent and Consultation Procedures.**  In those circumstances in which consultation or consent is required, the Trustees will provide written notice to the TAC, the Future Claimants' Representative and, where applicable, Corning, of the specific amendment or other action that is proposed.  The Trustees will not implement such amendment nor take such action unless and until the parties have engaged in the Consultation Process described in Sections 5.7(a) and 6.6(a), or the Consent Process described in Sections 5.7(b) and 6.6(b) of the Asbestos PI Trust Agreement, respectively, or the alternative dispute resolution process described in Section 7.3 of the Asbestos PI Trust Agreement.

**SECTION IV**

**Payment Percentage; Periodic Estimates**

**4.1    Uncertainty of PCC's, the PPG Entities' and the Corning Entities' Total Liabilities for PCC Fund Claims.**  As discussed above, there is inherent uncertainty regarding the total asbestos-related tort liabilities of PCC, the PPG Entities and the Corning Entities for PCC Fund Claims, as well as the total value of the assets available to the Asbestos PI Trust to pay those claims.  Consequently, there is inherent uncertainty regarding the amounts that holders of PCC Fund Claims will receive.  To seek to ensure substantially equivalent treatment of all present and future PCC Fund Claims, the Trustees must determine from time to time the percentage of full liquidated value that holders of present and future PCC Fund Claims will be likely to receive, i.e, the "Payment Percentage" described in Section 2.3 above and Section 4.2 below.

17

**4.2** **Computation of Payment Percentage.** As provided in Section 2.3 above, the Initial Payment Percentage for PCC Fund Claims shall be **23.7** percent (**23.7**%), and shall apply to all Asbestos PI Trust Voting Claims payable from the PCC Fund as defined in Section 2.3 above, unless the Trustees, with the consent of the TAC and the Future Claimants' Representative, determine that the Initial Payment Percentage should be changed to assure that the Asbestos PI Trust will be in a financial position to pay holders of such Asbestos PI Trust Voting Claims as well as present and future PCC Fund Claims in substantially the same manner.

In making any such adjustment, the Trustees, the TAC and the Future Claimants' Representative shall take into account the fact that the holders of Asbestos PI Trust Voting Claims voted on the Plan relying on the findings of experts that the Initial Payment Percentage represented a reasonably reliable estimate of the Asbestos PI Trust's total assets and liabilities over its life based on the best information available at the time, and shall thus give due consideration to the expectations of Asbestos PI Trust Voting Claimants that the Initial Payment Percentage would be applied to their PCC Fund Claims.

Except with respect to Asbestos PI Trust Voting Claims to which the Initial Payment Percentage applies, the Payment Percentage shall be subject to change pursuant to the terms of this TDP and the Asbestos PI Trust Agreement if the Trustees determine that an adjustment is required. No less frequently than once every three years, commencing with the first day of January occurring after the Plan is consummated, the Trustees shall reconsider the then applicable Payment Percentage to assure that it is based on accurate, current information and may, after such

reconsideration, change the Payment Percentage if necessary with the consent of the TAC and the Future Claimants' Representative.

The Trustees shall also reconsider the then applicable Payment Percentage at shorter intervals if they deem such reconsideration to be appropriate or if requested to do so by the TAC or the Future Claimants' Representative. The Trustees must base their determination of the Payment Percentage on current estimates of the number, types, and values of present and future PCC Fund Claims, the value of the assets then available to the Asbestos PI Trust for their payment, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of funds to pay a comparable percentage of full value to all holders of PCC Fund Claims. When making these determinations, the Trustees shall exercise common sense and flexibly evaluate all relevant factors. The Payment Percentage applicable to Category A or Category B claims may not be reduced to alleviate delays in payments of claims in the other Category; both Categories of PCC Fund Claims shall receive the same Payment Percentage, but the payment may be deferred as needed, and a Reduced Payment Option may be instituted as described in Section 2.5 above.

The uncertainty surrounding the amount of the Asbestos PI Trust's future assets is due in significant part to the fact that the estimates of those assets do not take into account the possibility that the Asbestos PI Trust may receive substantial additional funds from successful recoveries of insurance proceeds that have been assigned to the PCC Fund with respect to which the coverage is presently in dispute or the solvency of the carrier is in doubt.

However, if the Asbestos PI Trust successfully resolves an insurance coverage dispute or otherwise receives a substantial recovery of insurance proceeds on behalf of the PCC Fund, the Asbestos PI Trust shall use those proceeds first to maintain the Payment Percentage then in effect. If the insurance recovery exceeds the amount estimated to be reasonably necessary to maintain the Payment Percentage then in effect, the Asbestos PI Trust, with the consent of the TAC and the Future Claimants' Representative, shall adjust the Payment Percentage upward to reflect the increase in available assets in the PCC Fund, and shall also make supplemental payments to claimants who previously liquidated their claims against the Asbestos PI Trust and received payments based on a lower Payment Percentage. The amount of any such supplemental payment shall be the liquidated value of the claim in question times the newly adjusted Payment Percentage, less all amounts previously paid the claimant with respect to the claim.

**4.3     Applicability of the Payment Percentage.**  No holder of an Asbestos PI Trust Voting Claim other than an Asbestos PI Trust Voting Claim for Other Asbestos Disease (Disease Level I - Cash Discount Payment) as defined in Section 5.3(a)(1)(C) below shall receive a payment for a PCC Fund Claim that exceeds the Initial Payment Percentage times the liquidated value of the claim. Except as otherwise provided in Section 5.1(c) below, for all PCC Fund Claims involving deceased or incompetent claimants for which approval of the Asbestos PI Trust's offer by a court or probate process is required, no holder of any other PCC Fund Claim other than an Asbestos PI Trust Claim for Other Asbestos Disease (Disease Level I - Cash Discount Payment) shall receive a payment that exceeds the liquidated value of the claim times

the Payment Percentage in effect at the time of payment. PCC Fund Claims involving Other Asbestos Disease (Disease Level I - Cash Discount Payment) shall not be subject to the Payment Percentage, but shall instead be paid the full amount of their Scheduled Value as set forth in Section 5.3(a)(1)(C) below.

If a redetermination of the Payment Percentage for the PCC Fund has been proposed in writing by the Trustees to the TAC and the Future Claimants' Representative but has not yet been adopted, the claimant shall receive the lower of the current Payment Percentage or the proposed Payment Percentage. However, if the proposed Payment Percentage was the lower amount but was not subsequently adopted, the claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount. Conversely, if the proposed Payment Percentage was the higher amount and was subsequently adopted, the claimant shall thereafter receive the difference between the lower current amount and the higher adopted amount.

**SECTION V**

**Resolution of Asbestos PI Trust Claims.**

**5.1    Ordering, Processing and Payment of Claims.**

**5.1(a)    Ordering of All Asbestos PI Trust Claims.**

**5.1(a)(1) Establishment of the FIFO Processing Queues.** The Asbestos PI Trust will order separately claims payable from the PCC Fund, the PPG Fund and the Corning Fund , respectively, that are sufficiently complete to be reviewed for processing purposes on a FIFO basis except as otherwise provided herein (the "FIFO Processing Queues").

For all claims filed on or before the date six months after the Effective Date (the "Initial Claims Filing Date"), a claimant's position in an Asbestos PI Trust Fund's FIFO Processing Queue shall be determined as of the earlier of (i) the date prior to the Petition Date (if any) that the specific PCC Fund Claim, PPG Fund Claim or Corning Fund Claim was filed in the tort system against or actually submitted pursuant to an administrative settlement to the relevant Asbestos Protected Party or Parties, (ii) the date before the Petition Date that a claim was filed against another defendant in the tort system if at the time the claim was subject to a tolling agreement with the relevant Asbestos Protected Party or Parties; (iii) the date after the Petition Date but before the Effective Date that the claim was filed against another defendant in the tort system; (iv) the date the claimant filed a proof of claim in PCC's Chapter 11 proceeding; (v) the date the claimant or his or her authorized agent filed a ballot in PCC's Chapter 11 proceeding for purposes of voting on the Plan in accordance with the voting procedures adopted by the Bankruptcy Court; or (vi) the date after the Effective Date but on or before the Initial Claims Filing Date that the claim was filed with the Asbestos PI Trust.

Following the Initial Claims Filing Date, the claimant's position in an Asbestos PI Trust Fund's FIFO Processing Queue shall be determined by the date the claim was filed with the Asbestos PI Trust. If any claims are filed on the same date, the claimant's position in a FIFO Processing Queue shall be determined by the date of the diagnosis of the claimant's asbestos-related disease.  If any claims are filed and diagnosed on the same date, the claimant's position in a FIFO Processing Queue shall

22

be determined by the date of the claimant's birth, with older claimants given priority

over younger claimants.

       **5.1(a)(2)    Effect of Statutes of Limitation and Repose.** To be

eligible for a place in any Asbestos PI Trust Fund's FIFO Processing Queue, (i) a PCC

Fund Claim, a PPG Fund Claim, or a Corning Fund Claim first filed in the tort system

against any Asbestos Protected Party prior to the Petition Date must not be barred by

the applicable federal, state and foreign statute of limitation and repose that was in

effect at the time of the filing of the claim in the tort system, and (ii) a PCC Fund

Claim, a PPG Fund Claim, or a Corning Fund Claim that was not filed against any

relevant Asbestos Protected Party in the tort system prior to the Petition Date must not

be barred by the applicable federal, state and foreign statute of limitation that was in

effect at the time of the filing with the Asbestos PI Trust.

       The running of the relevant statute of limitation shall be tolled, for PCC Fund

Claims and PPG Fund Claims, as of the earliest of (i) the actual filing of the claim

against PCC or any relevant PPG Entity prior to the Petition Date, whether in the tort

system or by submission of the claim to PCC or any relevant PPG Entity pursuant to an

administrative settlement agreement; (ii) a filing of the claim against another defendant

in the tort system prior to the Petition Date if the claim was tolled against PCC or any

relevant PPG Entity at the time by an agreement or otherwise; (iii) the filing of a claim

after the Petition Date but prior to the Effective Date against another defendant in the

tort system if filing a claim against the relevant Asbestos Protected Party was barred by

an order of the Bankruptcy Court enjoining such filing; (iv) the filing by the claimant

or his or her authorized agent of a proof of claim in PCC's Chapter 11 proceeding; (v)

the filing by the claimant of a ballot for voting purposes in this Chapter 11 proceeding; or (vi) the filing by the claimant of the required proof of claim form with the requisite supporting documentation with the Asbestos PI Trust after the Effective Date.

If a PCC Fund Claim or PPG Fund Claim meets any of the tolling provisions described in the preceding sentence and was not barred by the applicable federal, state or foreign statute of limitation at the time of the tolling event, it will be treated as timely filed if it is actually filed with the Asbestos PI Trust within three (3) years after the Effective Date. In addition, any PCC Fund Claim or PPG Fund Claim that was first diagnosed after the Petition Date, irrespective of the application of any relevant statute of limitation or repose, may be filed with the Asbestos PI Trust within three (3) years after the date of diagnosis, or within three (3) years after the Effective Date, whichever occurs later. However, the processing of any Asbestos PI Trust Claim by the Asbestos PI Trust may be deferred at the election of the claimant pursuant to Section 6.3 below.

5.1(b)  **Processing of Claims.** As a general practice, the Asbestos PI Trust will review its claims files on a regular basis and notify all claimants whose claims are likely to come up in an Asbestos PI Trust Fund's FIFO Processing Queue in the near future. However, claims that were not filed (i) against PCC, any PPG Entity, or any Corning Entity in the tort system or actually submitted to one of those entities pursuant to an administrative settlement agreement prior to the Petition Date, or (ii) against another defendant in the tort system prior to the Plan Filing Date, shall not be processed until after the Initial Claims Filing Date.

The proof of claim form shall require the claimant to assert his or her claim for the highest Disease Level for which the claim qualifies at the time of filing. Irrespective of the Disease Level alleged on the proof of claim form, all claims filed with the Asbestos PI Trust shall be deemed to be a claim for the highest Disease Level for which the claim qualifies at the time of filing, and all lower Disease Levels for which the claim may also qualify at the time of filing or in the future shall be subsumed into the higher Disease Level for both processing and payment purposes.

**5.1(c)  Payment of Claims.** PCC Fund Claims that have been liquidated by the Expedited Review Process as provided in Section 5.3(a)(1) below, as well as PCC Fund Claims and PPG Fund Claims liquidated by the Individual Review Process as provided in Section 5.3(a)(2) below, by arbitration as provided in Section 5.10 below, or by litigation in the tort system provided in Section 5.11 below, shall be paid in FIFO order from their respective Asbestos PI Trust Fund based on the date their liquidation became final (the "FIFO Payment Queue"), with all PCC Fund Claims subject to the applicable Payment Percentage, the Maximum Annual Payment, the Maximum Available Payment, and the Claims Payment Ratio. Pre-Petition Liquidated Claims payable from the PCC Fund (as defined in Section 5.2 below) shall be subject to the Maximum Annual Payment and Payment Percentage limitations, but not to the Maximum Available Payment and Claims Payment Ratio provisions set forth above.

Corning Fund Claims, which shall be liquidated in the tort system or through claims-handling agreements between the Asbestos PI Trust and the Corning Plan Insurers or paid from the Corning Fund's cash reserve, shall also be placed in a FIFO Payment Queue to be established for that fund based on the date of their liquidation.

25

The date of liquidation for such claims shall be the date of the final judgment or settlement with the Asbestos PI Trust or the Corning Plan Insurer(s).

Where the claimant is deceased or incompetent, and the settlement and payment of his or her PCC Fund Claim or PPG Fund Claim must be approved by a court of competent jurisdiction or through a probate process prior to acceptance of the claim by the claimant's representative, an offer made by the Asbestos PI Trust on the claim shall remain open so long as proceedings before that court or in the probate process remain pending, provided that the Asbestos PI Trust has been furnished with evidence that the settlement offer has been submitted to such court for approval. If the offer is ultimately approved by the court or through the probate process and accepted by the claimant's representative, the Asbestos PI Trust shall pay the claim in the amount so offered, multiplied in the case of a PCC Fund Claim by the Payment Percentage, if any, in effect at the time the offer was first made. The date of liquidation for all such PCC Fund Claims and PPG Fund Claims shall be the date the claimant first accepted the offer by the Asbestos PI Trust that was approved by the court or probate process.

If any PCC Fund Claims or PPG Fund Claims are liquidated on the same date, the claimant's position in the relevant Asbestos PI Trust Fund's FIFO Payment Queue shall be determined by the date of the diagnosis of the claimant's asbestos-related disease. If any such claims are liquidated on the same date and the respective claimants' asbestos-related diseases were diagnosed on the same date, the positions of those claimants in the relevant Asbestos PI Trust Fund's FIFO Payment Queue shall be determined by the Asbestos PI Trust based on the dates of the claimants' birth, with older claimants given priority over younger claimants.

**5.2      Resolution of Pre-Petition Liquidated Asbestos PI Trust Claims.**

     **5.2(a)      Processing and Payment.**  As soon as practicable after the Effective Date, the Asbestos PI Trust shall pay from the relevant Asbestos PI Trust Fund or out of any available insurance proceeds, upon submission by the claimant of the applicable Asbestos PI Trust proof of claim form, together with all documentation required thereunder, all Asbestos PI Trust Claims that were liquidated by (i) a binding settlement agreement for the particular claim entered into prior to the Petition Date that is judicially enforceable by the claimant, (ii) a jury verdict or non-final judgment in the tort system obtained prior to the Petition Date, or (iii) by a judgment that became final and non-appealable prior to the Petition Date (collectively "Pre-Petition Liquidated Claims").

     The liquidated value of a Pre-Petition Liquidated Claim shall be the unpaid portion of the amount agreed to in the binding settlement agreement, the unpaid portion of the amount awarded by the jury verdict or non-final judgment, or the unpaid portion of the amount of the final judgment, as the case may be, plus interest, if any, that has accrued on that amount in accordance with the express terms of a binding settlement agreement or under applicable state law for settlements or judgments as of the Petition Date; however, pursuant to Section 7.4 below, the liquidated value of a Pre-Petition Liquidated Claim shall not include any punitive or exemplary damages. In addition, the amounts payable from the PCC Fund with respect to a Pre-Petition Liquidated Claim shall not be subject to or taken into account in consideration of the Claims Payment

27

Ratio and the Maximum Available Payment limitations, but shall be subject to the Maximum Annual Payment and Payment Percentage provisions.

In the absence of a Final Order of the Bankruptcy Court determining whether a settlement agreement is binding and judicially enforceable, a dispute between the claimant and the Asbestos PI Trust over this issue shall be resolved pursuant to the same procedures in this TDP that are provided for resolving the validity and/or the liquidated value of an Asbestos PI Trust Claim (i.e., arbitration and litigation in the tort system as set forth in Sections 5.10 and 5.11(a) below).

Pre-Petition Liquidated Claims shall be processed and paid from the relevant Asbestos PI Trust Fund in accordance with their order in separate FIFO Processing and Payment Queues to be established by the Asbestos PI Trust for each Asbestos PI Trust Fund based on the date the Asbestos PI Trust received a completed proof of claim form with all required documentation for the particular claim. If any Pre-Petition Liquidated Claims payable from the same Asbestos PI Trust Fund are filed on the same date, the claimants' position in the FIFO Processing and Payment Queues for such fund shall be determined by the date on which the claim was liquidated. If any Pre-Petition Liquidated Claims payable from the same Asbestos PI Trust Fund are both filed and liquidated on the same dates, the positions of those claimants in the relevant Asbestos PI Trust Fund's FIFO Processing and Payment Queues shall be determined based on the dates of the claimants' birth, with older claimants given priority over younger claimants.

**5.2(b)    Marshalling of Security**. Holders of Pre-Petition Liquidated

Claims that are secured by letters of credit, appeal bonds, or other security or sureties

shall first exhaust their rights against any applicable security or surety before making a

claim against the Asbestos PI Trust.  Only in the event that such security or surety is

insufficient to pay the Pre-Petition Liquidated Claim in full shall the deficiency be

processed and paid as a Pre-Petition Liquidated Claim.

**5.3    Resolution of Unliquidated Asbestos PI Trust Claims**. Within six

months after the establishment of the Asbestos PI Trust, the Trustees, with the consent

of the TAC and the Future Claimants' Representative, shall adopt procedures for

reviewing and liquidating all unliquidated Asbestos PI Trust Claims under the terms of

this TDP, which shall also include deadlines for processing such claims.  Such

procedures shall require claimants seeking resolution of unliquidated Asbestos PI Trust

Claims, including Multiple Exposure Claims, first to file a proof of claim form,

together with the required supporting documentation, in accordance with the provisions

of Sections 6.1 and 6.2 below. It is anticipated that the Asbestos PI Trust shall provide

an initial response to the claimant within six months of receiving the proof of claim

form.

Upon filing of a valid proof of claim form with the required supporting

documentation, the claim shall be placed in the relevant Asbestos PI Trust Fund's or

Funds' FIFO Processing Queue in accordance with the ordering criteria described in

Section 5.1(a) above. The Asbestos PI Trust shall provide the claimant with six-months

notice of the date by which it expects to reach the claim in the FIFO Processing Queue,

following which the claimant shall promptly (i) advise the Asbestos PI Trust whether

the claim should be liquidated under the Asbestos PI Trust's Expedited Review Process

described in Section 5.3(a)(1) below or, in certain circumstances, under the Asbestos

PI Trust's Individual Review Process described in Section 5.3(a)(2) below; (ii) provide

the Asbestos PI Trust with any additional medical and/or exposure evidence that was

not provided with the original claim submission; and (iii) advise the Asbestos PI Trust

of any change in the claimant's Disease Level.  If a claimant fails to respond to the

Asbestos PI Trust's notice prior to the reaching of the claim in the FIFO Processing

Queue, the Asbestos PI Trust will process and liquidate the claim under the Expedited

Review Process based upon the medical/exposure evidence previously submitted by the

claimant, although the claimant shall retain the right to request Individual Review as

described in Section 5.3(a)(2) below.

### 5.3(a)  PCC Fund Claims and PPG Fund Claims

#### 5.3(a)(1)        Expedited Review Process for PCC Fund

Claims.

##### 5.3(a)(1)(A)      In General. The Asbestos PI Trust's

Expedited Review Process is designed primarily to provide an expeditious, efficient

and inexpensive method for liquidating all PCC Fund Claims (except those involving

Lung Cancer 2 - Disease Level VI and all foreign claims, which shall be liquidated

pursuant to the Individual Review process described below) where the claim can easily

be verified by the Asbestos PI Trust as meeting the presumptive Medical/Exposure

Criteria for the relevant Disease Level. Expedited Review thus provides claimants with

a substantially less burdensome process for pursuing PCC Fund Claims than does the

Individual Review Process described in Section 5.3(a)(2) below. Expedited Review is

also intended to provide qualifying claimants a fixed and certain claims payment.

Claimants holding PCC Fund Claims that cannot be liquidated by Expedited Review because they do not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level may elect the Asbestos PI Trust's Individual Review Process set forth in Section 5.3(a)(2) below. Claimants holding Multiple Exposure Claims that include a PCC Fund Claim may also elect Expedited Review for that claim.

### 5.3(a)(1)(B)  PCC Fund Claims Processing Under

**Expedited Review.**  As a proof of claim form is reached in the FIFO Processing Queue for the PCC Fund, the Asbestos PI Trust shall determine whether the claim described therein meets the Medical/Exposure Criteria for one of the seven Disease Levels eligible for Expedited Review, and shall advise the claimant of its determination.  If a Disease Level is determined, the Asbestos PI Trust shall tender to the claimant an offer of payment of the Scheduled Value for the relevant Disease Level multiplied by the applicable Payment Percentage, together with a form of release approved by the Asbestos PI Trust, with the consent of the TAC, the Future Claimants' Representative, PCC, PPG and Corning. If the claimant accepts the Scheduled Value and returns the release properly executed, the claim shall be placed in the FIFO Payment Queue for the PCC Fund, following which the Asbestos PI Trust shall disburse payment subject to the limitations of the Maximum Available Payment and Claims Payment Ratio, if any.

**5.3(a)(1)(C)    Disease Levels, Scheduled Values and Medical/Exposure Criteria for PCC Fund Claims.**  The eight Disease Levels for PCC Fund Claims, together with the Medical/Exposure Criteria for each and the Scheduled Values for the seven Disease Levels eligible for Expedited Review, are set forth below. These Disease Levels, Scheduled Values, and Medical/Exposure Criteria shall apply to all Asbestos PI Trust Voting Claims (except Pre-Petition Liquidated Claims) payable from the PCC Fund that were filed with the Asbestos PI Trust on or before the Initial Claims Filing Date provided in Section 5.1 above for which the claimant elects the Expedited Review Process.  Thereafter, for purposes of administering the Expedited Review Process and with the consent of the TAC and the Future Claimants' Representative, the Trustees may add to, change or eliminate the Disease Levels, Scheduled Values, or Medical/Exposure Criteria; develop subcategories of Disease Levels, Scheduled Values or Medical/Exposure Criteria; subject the PPG Fund Claims and/or the Corning Fund Claims to existing or new Disease Levels, Scheduled Values of Medical/Exposure Criteria; or determine that a novel or exceptional asbestos personal injury claim is compensable even though it does not meet the Medical/Exposure Criteria for any of the then current Disease Levels.

| Disease Level | Scheduled Value | Medical/Exposure Criteria |
|---|---|---|
| Mesothelioma (Level VIII) | $175,000 | (1) Diagnosis[2] of mesothelioma; and (2) credible evidence of exposure to Unibestos[3] during the period July 1, 1962-December 31, 1972, or to another asbestos-containing product manufactured, marketed, sold or distributed by PCC prior to December 31, 1982. |
| Lung Cancer 1 (Level VII) | $47,500 | (1) Diagnosis of a primary lung cancer plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease[4], (2) |

---

[2]    The requirements for a diagnosis of an asbestos-related disease that may be compensated under the provisions of this TDP are set forth in Section 5.7(a) below.

[3]    The term "exposure to Unibestos" means exposure to an asbestos-containing product manufactured, marketed, sold or distributed by PCC under the "Unibestos" or other label for which PCC, any PPG Entity or any Corning Entity has direct or indirect liability; however, the Asbestos PI Trust shall be free to contest whether a particular Unibestos product was in fact manufactured, marketed, sold or distributed by PCC.

[4]    Evidence of "Bilateral Asbestos-Related Nonmalignant Disease" for purposes of meeting the criteria for establishing Disease Levels I, II, III, V, and VII, means either (i) a chest X-ray read by a qualified B reader of 1/0 or higher on the ILO scale or (ii)(x) a chest X-ray read by a qualified B reader, (y) a CT scan read by a qualified physician, or (z) pathology, in each case showing either bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification. Solely for claims filed against PCC, any PPG Entity, any Corning Entity, or another asbestos defendant in the tort system prior to the Petition Date, if an ILO reading is not available, either (i) a chest X-ray or a CT scan read by a qualified physician, or (ii) pathology, in each case showing either bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification consistent with or compatible with a diagnosis of asbestos-related disease, shall be evidence of a Bilateral Asbestos-Related Nonmalignant Disease for purposes of meeting the presumptive medical requirements of Disease Levels I, II, III, V and VII. Pathological evidence of

33

| | | |
|---|---|---|
| | | six months occupational exposure to Unibestos during the period July 1, 1962-December 31, 1972, or to another asbestos-containing product manufactured, marketed, sold or distributed by PCC prior to December 31, 1982; (3) Significant Occupational Exposure to asbestos (as defined in Section 5.7(b)(2) below, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. |
| Lung Cancer 2 (Level VI) | None | (1) Diagnosis of a primary lung cancer; (2) occupational exposure to Unibestos during the period July 1, 1962-December 31, 1972, or to another asbestos-containing product manufactured, marketed, sold or distributed by PCC prior to December 31, 1982; and (3) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question.

Lung Cancer 2 (Level VI) claims are claims that do not meet the more stringent medical and/or exposure |

---

asbestosis may be based on the pathological grading system for asbestosis described in the Special Issue of the Archives of Pathology and Laboratory Medicine, "Asbestos-associated Diseases," Vol. 106, No. 11, App. 3 (October 8, 1982).

requirements of Lung Cancer (Level VII) claims. All claims in this Disease Level will be individually evaluated. The estimated likely average of the individual evaluation awards for this category is $20,000, with such awards capped at $50,000 unless the claim qualifies for Extraordinary Claim treatment (described in Section 5.4 below).

Level VI claims that show no evidence of either an underlying Bilateral Asbestos-Related Non-malignant Disease or Significant Occupational Exposure may be individually evaluated, although it is not expected that such claims will be treated as having any significant value, especially if the claimant is also a Smoker.[5] In any event, no presumption of validity will be available for any claims in this category.

---

[5]      There is no distinction between Non-Smokers and Smokers for either Lung Cancer (Level VII) or Lung Cancer (Level VI), although a claimant who meets the more stringent requirements of Lung Cancer (Level VII) (evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease plus Significant Occupational Exposure), and who is also a Non-Smoker, may wish to have his or her claim individually evaluated by the Asbestos PI Trust.  In such a case, absent circumstances that would otherwise reduce the value of the claim, it is anticipated that the liquidated value of the claim might well exceed the $47,500 Scheduled Value for Lung Cancer (Level VII) shown above. "Non-Smoker" means a claimant who either (a) never smoked or (b) has not smoked during any portion of the twelve (12) years immediately prior to the diagnosis of the lung cancer.