| | | |
|---|---|---|
| Other Cancer (Level V) | $27,500 | (1) Diagnosis of a primary colo-rectal, laryngeal, esophageal, pharyngeal, or stomach cancer, plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease, (2) six months occupational exposure to Unibestos during the period July 1, 1962 – December 31, 1972, or to another asbestos-containing product manufactured, marketed, sold or distributed by PCC prior to December 31, 1982; (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the other cancer in question. |
| Severe Asbestosis (Level IV) | $47,500 | (1) Diagnosis of asbestosis with ILO of 2/1 or greater, or asbestosis determined by pathological evidence of asbestosis, plus (a)TLC less than 65%, or (b) FVC less than 65% and FEV1/FVC ratio greater than 65%, (2) six months occupational exposure to Unibestos during the period July 31, 1962 – December 31, 1972, or to another asbestos-containing product manufactured, marketed, sold or distributed by PCC prior to December 31, 1982; (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation |

|  |  | establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
|---|---|---|
| Asbestosis/<br>Pleural Disease (Level III) | $11,750 | (1) Diagnosis of Bilateral Asbestos-Related Nonmalignant Disease, plus (a) TLC less than 80%, or (b) FVC less than 80% and FEV1/FVC ratio greater than or equal to 65%, and (2) six months occupational exposure to Unibestos during the period July 31, 1962 – December 31, 1972, or to another asbestos-containing product manufactured, marketed, sold or distributed by PCC prior to December 31, 1982; (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
| Asbestosis/<br>Pleural Disease (Level II) | $5,500 | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease, and (2) six months occupational exposure to Unibestos during July 31, 1962 – December 31, 1972, or to another asbestos-containing product manufactured, marketed, sold or distributed by PCC prior to |

|  |  | December 31, 1982; and (3) five years cumulative occupational exposure to asbestos. |
| Other Asbestos Disease (Level I - Cash Discount Payment) | $400 | (1) Diagnosis of a Bilateral Asbestos- Related Nonmalignant Disease or an asbestos-related malignancy (other than mesothelioma), and (2) exposure to Unibestos during the period July 31, 1962 – December 31, 1972, or to another asbestos containing-product manufactured, marketed, sold or distributed by PCC prior to December 31, 1982. |

**5.3(a)(2)    Individual Review Process for PCC Fund Claims and PPG Fund Claims.**

**5.3(a)(2)(A)  In General.** Holders of PCC Fund Claims may elect to have their claims individually reviewed for purposes of determining whether the claim would be compensable in the tort system even though they might not meet the presumptive Medical/Exposure Criteria for any of the Disease Levels set forth in Section 5.3(a)(1)(C) above. In such a case, the Asbestos PI Trust shall either deny the PCC Fund Claim, or, if the Asbestos PI Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system, the Asbestos PI Trust can offer the claimant a liquidated value amount up to the Scheduled Value for the closest relevant Disease Level, unless the claim qualifies as an Extraordinary Claim as defined in Section 5.4(a) below, in which case its liquidated value cannot exceed the Maximum Value for such a claim.

In addition or alternatively, a PCC Fund Claim may undergo the Individual Review Process for purposes of determining whether the liquidated value of the claim exceeds the Scheduled Value for the relevant Disease Level set forth in said provision. However, until such time as the Asbestos PI Trust has made an offer on a PCC Fund Claim pursuant to Individual Review, the claimant may change his or her Individual Review election and have the claim liquidated pursuant to the Asbestos PI Trust's Expedited Review Process. In the event of such a change in the processing election, the claimant shall nevertheless retain his or her place in the FIFO Processing Queue.

The liquidated value of all foreign PCC Fund Claims shall be established pursuant to the Asbestos PI Trust's Individual Review process. In reviewing such foreign claims, the Asbestos PI Trust shall take into account all relevant procedural and substantive legal rules to which the claims would be subject in the Claimant's Jurisdiction as defined in Section 5.3(a)(2)(B) below. The Asbestos PI Trust shall determine the liquidated value of foreign claims based on historical settlements and verdicts in the Claimant's Jurisdiction as well as the other valuation factors set forth in Section 5.3(a)(2)(B) below.

For purposes of the Individual Review process for foreign claims, the Trustees, with the consent of the TAC and the Future Claimants' Representative, may develop separate Medical/Exposure Criteria and standards, as well as separate requirements for physician and other professional qualifications, which shall be applicable to all foreign claims channeled to the Asbestos PI Trust; provided however, that such criteria, standards or requirements shall not effectuate substantive changes to the claims

eligibility requirements under this TDP, but rather shall be made only for the purpose of adapting those requirements to the particular licensing provisions and/or medical customs or practices of the foreign country in question.

At such time as the Asbestos PI Trust has sufficient historical settlement, verdict and other valuation data for claims from a particular foreign jurisdiction, the Trustees, with the consent of the TAC and the Future Claimants' Representative, may also establish a separate valuation matrix for such claims based on that data.

The medical/exposure evidence relating to PPG Fund Claims shall be processed and reviewed, and the liquidated value of such claims shall be determined, only pursuant to the Individual Review Process.

For both PCC Fund Claims and PPG Fund Claims, the Individual Review Process is intended to result in payments equal to the full liquidated value of the claim, multiplied by the applicable Payment Percentage in the case of PCC Fund Claims; however, the liquidated value of any PCC Fund Claim or PPG Fund Claim that undergoes Individual Review may be determined to be less than the Scheduled Value the claimant might otherwise have received under the Expedited Review Process.

Because the detailed examination and valuation process pursuant to Individual Review requires substantial time and effort, claimants holding PCC Fund Claims that undergo the Individual Review Process will ordinarily be paid the liquidated value of their claims later than would have been the case had the claimant elected the Expedited Review Process.

**5.3(a)(2)(B)    Valuation Factors to Be Considered in**

**Individual Review.** The Asbestos PI Trust shall liquidate the value of each PCC Fund

Claim and PPG Fund Claim that undergoes Individual Review based on the historic

liquidated values of other similarly situated claims in the tort system for the same

Disease Level. The Asbestos PI Trust will thus take into consideration all the factors

that affect the severity of damages and values within the tort system including, but not

limited to (i) the degree to which the characteristics of a claim differ from the

presumptive Medical/Exposure Criteria for the Disease Level in question; (ii) factors

such as the claimant's age, disability, employment status, disruption of household,

family or recreational activities, dependencies, special damages, and pain and

suffering; (iii) evidence that the claimant's damages were (or were not) caused by

asbestos exposure, including exposure to asbestos-containing products manufactured,

marketed, sold or distributed by the relevant PCC or PPG Entity prior to December

31, 1982 (for example, alternative causes, alternative sources of exposure, strength of

documentation of injuries, and, in the case of exposure to Unibestos, the extent of

PCC's or any PPG Entity's legal culpability if the exposure occurred after December

31, 1972 but before December 31, 1982); (iv) the industry of exposure; and (v)

settlements, verdicts, and the claimant's and other law firms' experience in the

Claimant's Jurisdiction for similarly situated claims.

For these purposes, the "Claimant's Jurisdiction" is the jurisdiction in which the

claim was filed (if at all) against PCC, any relevant PPG Entity, or any relevant

Corning Entity in the tort system prior to the Petition Date.  If the claim was not filed

41

against PCC, any relevant PPG Entity, or any relevant Corning Entity in the tort system prior to the Petition Date, the claimant may elect as the Claimant's Jurisdiction either (i) the jurisdiction in which the claimant resides at the time of diagnosis or when the claim is filed with the Asbestos PI Trust; or (ii) a jurisdiction in which the claimant was exposed to an asbestos-containing product manufactured, marketed, sold or distributed by PCC, any relevant PPG Entity, or any relevant Corning Entity.

**5.3(a)(2)(C)    Processing and Payment Limitations for Individual Review of PCC Fund Claims Involving Disease Levels III and II.** The Asbestos PI Trust shall administer Individual Review for Disease Levels III and II so that Individual Review does not reduce payments to claimants electing the Scheduled Value for PCC Fund Claims liquidated under Expedited Review. As one means of implementing this requirement, the following shall apply for Disease Levels III and II PCC Fund Claims:

**5.3(a)(2)(C)(i)    Disease Level III PCC Fund Claims.** No more than seven percent (7%) of Disease Level III PCC Fund Claims paid in any year shall be such claims allowed under Individual Review, and the total payments to such Disease Level III PCC Fund Claims allowed under Individual Review shall be no more than sixteen percent (16%) of payments to all Disease Level III PCC Fund claimants during any year.

**5.3(a)(2)(C)(ii)    Disease Level II PCC Fund Claims.** No more than eleven percent (11%) of Disease Level II PCC Fund Claims paid in any year

shall be such claims allowed under Individual Review, and the total payments to such Disease Level II PCC Fund Claims allowed under Individual Review shall be no more than twenty eight percent (28%) of payments to all Disease Level II PCC Fund claimants during any year.

**5.3(a)(3)  Scheduled, Average and Maximum Values for PCC Fund Claims.**  The Scheduled, Average and Maximum Values for PCC Fund Claims involving the Disease Levels compensable under this TDP are the following:

| Scheduled Disease | Scheduled Value | Average Value | Maximum Value |
|---|---|---|---|
| Mesothelioma (Level VIII) | $175,000 | $200,000 | $500,000 |
| Lung Cancer 1 (Level VII) | $ 47,500 | $ 50,000 | $100,000 |
| Lung Cancer 2 (Level VI) | None | $ 20,000 | $ 50,000 |
| Other Cancer (Level V) | $ 27,500 | $ 30,000 | $100,000 |
| Severe Asbestosis (Level IV) | $ 47,500 | $ 50,000 | $100,000 |
| Asbestos/Pleural Disease (Level III) | $ 11,750 | $ 12,500 | $ 22,500 |
| Asbestos/Pleural Disease (Level II) | $ 5,500 | $ 6,000 | $ 10,000 |
| Other Asbestos Disease (Cash Discount Payment) (Level I) | $    400 | None | None |

These Scheduled Values, Average Values and Maximum Values shall apply to all Asbestos PI Trust Voting Claims payable from the PCC Fund other than Pre-Petition Liquidated Claims filed with the Asbestos PI Trust on or before the Initial

Claims Filing Date as provided in Section 5.1 above.  Thereafter, the Asbestos PI

Trust, with the consent of the TAC and the Future Claimants' Representative pursuant

to Sections 5.7(b) and 6.6(b) of the Asbestos PI Trust Agreement, may change these

valuation amounts, add additional matrices or eliminate existing matrices, for good

cause and consistent with other restrictions on the amendment power set forth in

Section 8.1 below; or create new matrices for PPG Fund Claims and/or Corning Fund

Claims.

**5.3(b)**     **Corning Fund Claims.** Holders of Corning Fund Claims

shall file such claims with the Asbestos PI Trust at the same time the claimant files any

other Asbestos PI Trust Claim on such proof of claim form or forms as the Asbestos PI

Trust shall require. The Asbestos PI Trust shall place the claimant in its FIFO

Processing Queue, and shall promptly tender the Corning Fund Claim to the Corning

Plan Insurer or Insurers who have the responsibility for handling the claim for

settlement or litigation in the relevant tort system, unless the Asbestos PI Trust and the

such Insurer or Insurers have reached an agreement authorizing the Asbestos PI Trust

to establish an administrative process for claims handling and resolution.

For any Corning Fund Claims tendered to Corning Plan Insurer(s), including

Pre-Petition Liquidated Claims, for which the tender is accepted by such Insurer(s),

that Insurer(s) shall serve the function of the Trustees related to the determination of

the liquidated value of the claim. For all Corning Fund Claims for which tender is

accepted, the Corning Plan Insurer(s) will also undertake the defense of the claim if the

claimant chooses to exercise his or her rights to litigate the claim in the tort system pursuant to Sections 5.11(b) and 7.6(b) below.

Upon agreement between the Corning Plan Insurer(s) handling the tendered claim and the claimant on the liquidated value of a Corning Fund Claim that is covered by any available insurance coverage, such Insurer(s) shall pay to the claimant that liquidated value, subject to the terms of the relevant insurance policy. An insurer's payment of the claim's agreed liquidated value to the claimant shall satisfy all of such insurer's obligations under its policy or policies to the claimant.

For any Corning Fund Claims tendered to Corning Plan Insurer(s), including Pre-Petition Liquidated Claims, for which tender is not accepted by such Insurer(s), the Asbestos PI Trust shall process, resolve and/or pay said claim in accordance with such procedures as are adopted by the Asbestos PI Trust, with the consent of the TAC and the Future Claimants' Representative. However, the Asbestos PI Trust, with the consent of the TAC and the Future Claimants' Representative, may establish an administrative process with Corning for handling and defending Corning Fund Claims.

**5.4    Categorizing Claims as Extraordinary and/or Exigent**

**5.4(a)    Extraordinary Claims.** "Extraordinary Claim" means a PCC Fund Claim or PPG Fund Claim that is held by a claimant whose exposure to asbestos (i) in the case of a PCC Fund Claim only, occurred predominately as the result of working in a manufacturing facility of PCC during a period in which PCC was manufacturing asbestos-containing products at that facility, or (ii) in the case of both PCC Fund Claims and PPG Fund Claims, was at least 75% the result of exposure to an asbestos-containing product for which the PCC Fund or the PPG Fund has liability, and in any case there is little likelihood of a substantial recovery elsewhere. All such Extraordinary Claims shall be presented for Individual Review and, if valid, shall be entitled to an award of up to a Maximum Value of five (5) times the Scheduled Value for claims involving Disease Levels II – V, VII and VIII, and five (5) times the Average Value for claims involving Disease Level VI, multiplied in the case of PCC Fund Claims by the applicable Payment Percentage.

Any dispute as to Extraordinary Claim status shall be submitted to a special Extraordinary Claims Panel established by the Asbestos PI Trust with the consent of the TAC and the Future Claimants' Representative. All decisions of the Extraordinary Claims Panel shall be final and not subject to any further administrative or judicial review. An Extraordinary Claim, following its liquidation, shall be placed in the PCC Fund's or PPG Fund 's FIFO Payment Queue ahead of all other liquidated claims payable from that Asbestos PI Trust Fund except Pre-Petition Liquidated Claims, Disease Level I (Other Asbestos Disease) Claims and Exigent Hardship Claims, which in that order shall be first in said Queues, based on their date of liquidation.

46

**5.4(b)   Exigent Hardship Claims.** At any time the Asbestos PI Trust may liquidate and pay PCC Fund Claims and PPG Fund Claims that qualify as Exigent Hardship Claims, as defined below.  Such claims may be considered separately no matter what the order of processing otherwise would have been under this TDP.  An Exigent Hardship Claim, following its liquidation, shall be placed first in the FIFO Payment Queue for the respective Asbestos PI Trust Fund ahead of all other liquidated claims payable from the Asbestos PI Trust Fund, except Pre-Petition Liquidated Claims and Disease Level I (Other Asbestos Disease) Claims, and shall be subject to the Maximum Available Payment and Claims Payment Ratio described above. A PCC Fund Claim or PPG Fund Claim qualifies for payment as an Exigent Hardship Claim if the claim meets the relevant Medical/Exposure Criteria for Severe Asbestosis (Disease Level IV) or an asbestos-related malignancy (Disease Levels V-VIII), and the Asbestos PI Trust, in its sole discretion, determines (i) that the claimant needs financial assistance on an immediate basis based on the claimant's expenses and all sources of available income, and (ii) that there is a causal connection between the claimant's dire financial condition and the claimant's asbestos-related disease.

**5.5     Secondary Exposure Claims.** If a claimant alleges an asbestos-related disease resulting solely from exposure to an occupationally exposed person, such as a family member, the claimant may seek Individual Review of his or her PCC Fund Claim and/or PPG Fund Claim pursuant to Section 5.3(a)(2) above.  In such a case, the claimant must establish that the occupationally exposed person would have met the exposure requirements under this TDP that would have been applicable had that person filed a direct claim against the Asbestos PI Trust.  In addition, the claimant with

47

secondary exposure must establish that he or she is suffering from one of the eight

Disease Levels described in Section 5.3(a)(1)(C) above or an asbestos-related disease

that would otherwise be valid and compensable in the tort system, that his or her own

exposure to the occupationally exposed person occurred within the same time frame as

the occupationally exposed person was exposed to the asbestos-containing product in

question, and that such secondary exposure was a cause of the claimed disease. The

proof of claim form to be adopted by the Asbestos PI Trust shall contains an additional

section for Secondary Exposure Claims.  All other liquidation and payment rights and

limitations under this TDP shall be applicable to such claims.

> **5.6. Indirect Asbestos Claims.**  Indirect Asbestos Claims

asserted against the Asbestos PI Trust based upon theories of contribution or

indemnification under applicable law, shall be treated as presumptively valid and paid

by the Asbestos PI Trust subject to the applicable Payment Percentage if (a) such claim

satisfied the requirements of the Bar Date for such claims established by the

Bankruptcy Court, if applicable, and is not otherwise disallowed by Section 502(e) or

subordinated by Section 509(c) of the Code, and (b) the holder of such claim (the

"Indirect Claimant") establishes to the satisfaction of the Trustees that (i) the Indirect

Claimant has paid in full the liability and obligation of the Asbestos PI Trust to the

individual claimant to whom the Asbestos PI Trust would otherwise have had a liability

or obligation under these Procedures (the "Direct Claimant"), (ii) the Direct Claimant

and the Indirect Claimant have forever and fully released the Asbestos PI Trust from

all liability to the Direct Claimant, and (iii) the claim is not otherwise barred by a

statute of limitation or repose or by other applicable law. In no event shall any Indirect

Claimant have any rights against the Asbestos PI Trust superior to the rights of the related Direct Claimant against the Asbestos PI Trust, including any rights with respect to the timing, amount or manner of payment. In addition, no Indirect Claim may be liquidated and paid in an amount that exceeds what the Indirect Claimant has actually paid the related Direct Claimant.

To establish a presumptively valid Indirect Asbestos Claim, the Indirect Claimant's aggregate liability for the Direct Claimant's claim must also have been fixed, liquidated and paid fully by the Indirect Claimant by settlement (with an appropriate full release in favor of the Asbestos PI Trust) or a Final Order (as defined in the Plan) provided that such claim is valid under the applicable state law. In any case where the Indirect Claimant has paid the claim of a Direct Claimant against the Asbestos PI Trust under applicable law by way of a settlement, the Indirect Claimant shall obtain for the benefit of the Asbestos PI Trust a release in form and substance satisfactory to the Trustees.

If an Indirect Claimant cannot meet the presumptive requirements set forth above, including the requirement that the Indirect Claimant provide the Asbestos PI Trust with a full release of the Direct Claimant's claim, the Indirect Claimant may request that the Asbestos PI Trust review the Indirect Asbestos Claim under its Individual Review Process to determine whether the Indirect Claimant can establish under applicable state law that the Indirect Claimant has paid a liability or obligation that the Asbestos PI Trust would otherwise have to the Direct Claimant. If the Indirect Claimant can show that it has paid such a liability or obligation, the Asbestos PI Trust

shall reimburse the Indirect Claimant the amount of the liability or obligation so satisfied, times the then applicable Payment Percentage. However, in no event shall such reimbursement to the Indirect Claimant be greater than the amount to which the Direct Claimant would have otherwise been entitled. Further, the liquidated value of any Indirect Asbestos Claim paid by the Asbestos PI Trust to an Indirect Claimant shall be treated as an offset to or reduction of the full liquidated value of any Asbestos PI Trust Claim that might be subsequently asserted by the Direct Claimant against the Asbestos PI Trust.

Any dispute between the Asbestos PI Trust and an Indirect Claimant over whether the Indirect Claimant has a right to reimbursement for any amount paid to a Direct Claimant shall be subject to the ADR procedures provided in Section 5.10 below. If such dispute is not resolved by said ADR procedures, the Indirect Claimant may litigate the dispute in the tort system pursuant to Sections 5.11 above and 7.6 below.

The Trustees may develop and approve a separate proof of claim form for Indirect Asbestos Claims. Indirect Asbestos Claims that have not been disallowed, discharged, or otherwise resolved by prior order of the Bankruptcy Court shall be processed in accordance with procedures to be developed and implemented by the Trustees consistent with the provisions of this Section 5.6, which procedures (a) shall determine the validity, allowability and enforceability of such claims; and (b) shall otherwise provide the same liquidation and payment procedures and rights to the holders of such claims as the Asbestos PI Trust would have afforded the holders of the

underlying valid Asbestos PI Trust Claims. Nothing in this TDP is intended to preclude a trust to which asbestos-related liabilities are channeled from asserting an Indirect Asbestos Claim against the Asbestos PI Trust subject to the requirements set forth herein.

**5.7    Evidentiary Requirements for PCC Fund Claims and PPG Fund Claims.**

**5.7(a)    Medical Evidence.**

**5.7(a)(1)    In General.**  All diagnoses of a Disease Level for a PCC Fund Claim or PPG Fund Claim shall be accompanied by either (i) a statement by the physician providing the diagnosis that at least 10 years have elapsed between the date of first exposure to asbestos or asbestos-containing products and the diagnosis, or (ii) a history of the claimant's exposure sufficient to establish a 10-year latency period. A finding by a physician after the Petition Date that a claimant's disease is "consistent with" or "compatible with" asbestosis will not alone be treated by the Asbestos PI Trust as a diagnosis. [6]

**5.7(a)(1)(A).  Disease Levels I-IV.**  Except for claims filed against PCC, any PPG Entity, any Corning Entity or any other asbestos defendant in the tort system prior to the Petition Date, all diagnoses of a non-malignant asbestos-related disease (Disease Levels I-IV) shall be based in the case of a claimant

---

[6]    All diagnoses of Asbestos/Pleural Disease (Disease Levels II and III) not based on pathology shall be presumed to be based on findings of bilateral asbestosis or pleural disease, and all diagnoses of Mesothelioma (Disease Level VIII) shall be presumed to be based on findings that the disease involves a malignancy. However, the Asbestos PI Trust may rebut such presumptions.

who was living at the time the claim was filed, upon a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease. In addition, all living claimants must provide (i) for Disease Levels I-III, evidence of Bilateral Asbestos-Related Nonmalignant Disease (as defined in Footnote 4 above); (ii) for Disease Level IV, an ILO reading of 2/1 or greater or pathological evidence of asbestosis, and (iii) for Disease Levels III and IV, pulmonary function testing[7].

In the case of a claimant who was deceased at the time the claim was filed, all diagnoses of a non-malignant asbestos-related disease (Disease Levels I-IV) shall be based upon either (i) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease; or (ii) pathological evidence of the non-malignant asbestos-related disease; or (iii) in the case of Disease Levels I-III, evidence of Bilateral Asbestos-Related Nonmalignant Disease (as defined in Footnote 4 above), and for Disease Level IV, either an ILO reading of 2/1 or greater or pathological evidence of asbestosis; and (iv) for either Disease Level III or IV, pulmonary function testing.

**5.7(a)(1)(B).  Disease Levels V – VIII.**  All diagnoses of an asbestos-related malignancy (Disease Levels V – VIII) shall be based upon either (i) a physical examination of the claimant by the physician providing the

_____

[7]  "Pulmonary Function Testing" shall mean spirometry testing that is in material compliance with the quality criteria established by the American Thoracic Society ("ATS") and is performed on equipment which is in material compliance with ATS standards for technical quality and calibration.

diagnosis of the malignant asbestos-related disease, or (ii) on a diagnosis of such a malignant Disease Level by a board-certified pathologist.

### 5.7(a)(1)(C).  Exception to the Exception for Certain Pre-Petition Claims.

If the holder of an Asbestos PI Trust Claim that was filed against PCC, any PPG Entity or any Corning Entity, or any other defendant in the tort system prior to the Petition Date has not provided the Asbestos PI Trust with a diagnosis of the asbestos-related disease by a physician who conducted a physical examination of the holder as described in Section 5.7(a)(1)(A) above, but the holder has available such a diagnosis by an examining physician engaged by the holder, or if the holder has filed such a diagnosis with another asbestos-related personal injury settlement trust that requires such evidence, the holder shall provide such diagnosis to the Asbestos PI Trust notwithstanding the exception in Sections 5.7(a)(1)(A).

### 5.7(a)(2)    Credibility of Medical Evidence.

Before making any payment to a claimant, the Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards.  The Asbestos PI Trust may require the submission of X-rays, CT scans, detailed results of pulmonary function tests, laboratory tests, tissue samples, results of medical examination or reviews of other medical evidence, and shall require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods and procedure to assure that such evidence is reliable. Medical evidence (i) that is of a kind shown to have been received in evidence by a state or federal judge at trial, (ii) that is consistent with evidence

submitted to PCC, any PPG Entity or any Corning Entity to settle for payment similar disease cases prior to PCC's bankruptcy. A diagnosis by a physician shown to have previously qualified as a medical expert with respect to the asbestos-related disease in question before a state or federal judge, is presumptively reliable, although the Asbestos PI Trust may seek to rebut the presumption.

In addition, claimants who otherwise meet the requirements of this TDP for payment of a PCC Fund Claim or a PPG Fund Claim shall be paid irrespective of the results in any litigation at any time between the claimant and any other defendant in the tort system. However, any relevant evidence submitted in a proceeding in the tort system involving another defendant, other than any findings of fact, a verdict, or a judgment, may be introduced by either the claimant or the Asbestos PI Trust in any Individual Review proceeding conducted pursuant to 5.3(a)(2) or any Extraordinary Claim proceeding conducted pursuant to 5.4(a).

### 5.7(b)    Exposure Evidence

**5.7(b)(1)    In General.** As set forth in Section 5.3(a)(1)(C) above, to qualify for payment pursuant to this TDP, the claimant must demonstrate a minimum exposure to an asbestos-containing product manufactured, marketed, sold or distributed by PCC (generally, but not necessarily exclusively, its "Unibestos" product line), a PPG Entity (generally, but not necessarily exclusively, its "Pyrocal" product line), and/or a Corning Entity or Corhart (generally, but not necessarily exclusively, asbestos-containing materials shipped with Corhart products). Claims based solely on conspiracy theories are not compensable under this TDP. In

addition, PPG Asbestos Premises Claims and Corning Asbestos Premises Claims as defined in the Plan are not compensable under this TDP.

To meet the presumptive exposure requirements of Expedited Review set forth in Section 5.3(a)(1)(C) above for PCC Fund Claims, the claimant must show (i) for all Disease Levels, exposure to Unibestos between July 1, 1962 – December 31, 1972, and, for any other PCC Fund Claims, exposure to the asbestos-containing product in question prior to December 31, 1982; (ii) for PCC Fund Claims involving Asbestos/Pleural Disease Level II, six months occupational exposure to Unibestos during July 1, 1962 – December 31, 1972, and for any other PCC Fund Claims involving such Disease Level, six months occupational exposure to the asbestos-containing product in question prior to December 31, 1982; plus in all events, five years cumulative occupational asbestos exposure; and (iii) for PCC Fund Claims involving Asbestosis/Pleural Disease (Disease Level III), Severe Asbestosis (Disease Level IV), Other Cancer (Disease Level V) or Lung Cancer 1 (Disease Level VII), six months occupational exposure to Unibestos during July 1, 1962 – December 31, 1972, and for any other PCC Fund Claims involving such Disease Levels, six months occupational exposure to the asbestos-containing product in question prior to December 31, 1982; plus in all events, Significant Occupational Exposure to asbestos as defined below. If a claimant holding a PCC Fund Claim cannot meet the relevant presumptive exposure requirements for a Disease Level eligible for Expedited Review, the claimant may seek Individual Review pursuant to Section 5.3(a)(2) above of his or her exposure.

### 5.7(b)(2)    Significant Occupational Exposure.

"Significant Occupational Exposure" means employment for a cumulative period of at least five years, with a minimum of two of the years between January 1, 1962 and December 31, 1972, in the case of a claim based upon exposure to Unibestos, and a minimum of two years prior to December 31, 1982, in the case of any other PCC Fund Claim, in an industry and an occupation in which the claimant (a) handled raw asbestos fibers on a regular basis; (b) fabricated asbestos-containing products so that the claimant in the fabrication process was exposed on a regular basis to raw asbestos fibers; (c) altered, repaired or otherwise worked with an asbestos-containing product such that the claimant was exposed on a regular basis to asbestos fibers; or (d) was employed in an industry and occupation such that the claimant worked on a regular basis in close proximity to workers engaged in the activities described in (a), (b) and/or (c).

### 5.7(b)(3)    Sufficiency of Evidence for PCC Fund Claims and PPG Fund Claims.

**Claims and PPG Fund Claims.** All holders of PCC Fund Claims and PPG Fund Claims must demonstrate meaningful and credible exposure to the asbestos or asbestos-containing product(s) in question in accordance with the exposure requirements described in Section 5.7(b)(1) and (2) above. That meaningful and credible exposure evidence may be established by an affidavit of the claimant, by an affidavit of a co-worker or the affidavit of a family member in the case of a deceased claimant (providing the Asbestos PI Trust finds such evidence reasonably reliable), by invoices, employment, construction or similar records, or by other credible evidence. The

specific exposure information required by the Asbestos PI Trust to process a claim under either Expedited or Individual Review shall be set forth on the proof of claim form to be used by the Asbestos PI Trust. The Asbestos PI Trust can also require submission of other or additional evidence of exposure when it deems such to be necessary.

5.8     **Claims Audit Program.**  The Asbestos PI Trust, with the consent of the TAC and the Future Claimants' Representative, may develop methods for auditing the reliability of medical evidence, including additional reading of X-rays, CT scans, and verification of pulmonary function tests, as well as the reliability of evidence of exposure to asbestos, including exposure to Unibestos during the period July 1, 1962 – December 31, 1972, or to any other asbestos-containing product with respect to which the PCC Fund has liability prior to December 31, 1982. In the event that the Asbestos PI Trust reasonably determines that any individual or entity has engaged in a pattern or practice of providing unreliable medical evidence to the Asbestos PI Trust, it may decline to accept additional evidence from such provider in the future.

Further, in the event that an audit reveals that fraudulent information has been provided to the Asbestos PI Trust, the Asbestos PI Trust may penalize any claimant or claimant's attorney by disallowing the claim or by other means including, but not limited to, requiring the source of the fraudulent information to pay the costs associated with the audit and any future audit or audits, reordering the priority of payment of all affected claimants' Asbestos PI Trust Claims, raising the level of scrutiny of additional information submitted from the same source or sources, refusing to accept additional

evidence from the same source or sources, seeking the prosecution of the claimant or claimant's attorney for presenting a fraudulent claim in violation of 18 U.S.C. §152, and seeking sanctions from the Bankruptcy Court.

**5.9        Second Disease (Malignancy) Claims**. The holder of any Asbestos PI Trust Claim, including Pre-Petition Liquidated Claims, involving a non-malignant asbestos-related disease (Disease Levels I through IV) may assert a new Asbestos PI Trust Claim against the Asbestos PI Trust for a malignant disease (Disease Levels V – VIII) that is subsequently diagnosed. Any additional payments to which such claimant may be entitled with respect to such malignant asbestos-related disease shall not be reduced by the amount paid for the non-malignant asbestos-related disease, provided that the malignant disease had not been diagnosed by the time the claimant was paid with respect to his or her original claim involving the non-malignant disease.

**5.10   Arbitration**.

**5.10(a)        Establishment of ADR Procedures for PCC Fund Claims and PPG Fund Claims.** The Asbestos PI Trust, with the consent of the TAC and the Future Claimants' Representative, shall institute binding and non-binding arbitration procedures in accordance with the Alternative Dispute Resolution ("ADR") Procedures to be adopted by the Trust, with the consent of the TAC and the Future Claimants' Representative for resolving disputes concerning whether a Pre-Petition settlement agreement with PCC, any PPG Entity, or any Corning Entity is binding and judicially enforceable in the absence of a Final Order of the Bankruptcy Court determining the issue. The ADR Procedures shall also be used to determine whether the Asbestos PI Trust's outright rejection or denial of a PCC Fund Claim or a PPG Fund Claim was

proper, or whether the claimant's medical condition or exposure history meets the presumptive requirements of this TDP for purposes of categorizing a PCC Fund Claim involving Disease Levels I – VIII. Binding and non-binding arbitration shall also be available for resolving disputes over the liquidated value of a PCC Fund Claim or PPG Fund Claim involving Disease Levels II – VIII, as well as disputes over PCC's, any PPG Entity's, or any Corning Entity's share of the unpaid portion of a Pre-Petition Liquidated Claim described in Section 5.2 above or the validity of an Indirect Asbestos Claim described in Section 5.6 above.

In all arbitrations, the arbitrator shall consider the same medical and exposure evidentiary requirements that are set forth in Section 5.7 above. In the case of an arbitration involving the liquidated value of a PCC Fund Claim or PPG Fund Claim, the arbitrator shall consider the same valuation factors that are set forth in Section 5.3(a)(2)(B) above. With respect to all claims eligible for arbitration, the claimant, but not the Asbestos PI Trust, may elect either non-binding or binding arbitration. The ADR Procedures may be modified by the Asbestos PI Trust with the consent of the TAC and the Future Claimants' Representative.

5.10(b)    **Claims Eligible for Arbitration.** In order to be eligible for arbitration, the claimant must first complete the Individual Review Process pursuant to Section 5.3(a)(2) above, as well as either the Pro-Bono Evaluation or the Mediation processes set forth in the ADR Procedures to be adopted by the Asbestos PI Trust, with respect to the disputed issue. Individual Review will be treated as completed for these purposes when the claim has been individually reviewed by the Asbestos PI Trust, the Asbestos PI Trust has made an offer on the claim, the claimant has rejected the

liquidated value resulting from the Individual Review, and the claimant has notified the Asbestos PI Trust of the rejection in writing. Individual Review will also be treated as completed if the Asbestos PI Trust has rejected the claim.

  **5.10(c) Limitations on and Payment of Arbitration Awards.**  In the case of a PCC Fund Claim or PPG Fund Claim involving Disease Levels II – VIII that does not qualify as an Extraordinary Claims (as defined in Section 5.4(a) above), the arbitrator shall not return an award in excess of the Maximum Value for the appropriate Disease Level as set forth in Section 5.3(a)(3) above, and for an PCC Fund Claim or PPG Fund Claim that is an Extraordinary Claim involving one of those Disease Levels, the arbitrator shall not return an award greater than the Maximum Extraordinary Value for such a claim as set forth in Section 5.4(a) above. A claimant who submits to arbitration and who accepts the arbitral award will receive payments in the same manner as one who accepts the Trust's original valuation of the claim.

  **5.11 Litigation of Asbestos PI Trust Claims.** Holders of Asbestos PI Trust Claims may litigate their PCC Fund Claims, PPG Fund Claims and Corning Fund Claims in the tort system only as provided below. In each such case, the claimant may seek to recover only the relevant Asbestos PI Trust Fund's separate share of the liquidated value of the claim.

  **5.11(a)   Litigation of PCC Fund Claims and PPG Fund Claims.**  Claimants holding PCC Fund Claims or PPG Fund Claims who elect non-binding arbitration and then reject their arbitral awards retain the right to institute a

lawsuit against the Asbestos PI Trust in the name of the Asbestos PI Trust only in the Claimant's Jurisdiction pursuant to Sections 5.11(a) and 7.6(a) below. All lawsuits brought against the Asbestos PI Trust involving PCC Fund Claims or PPG Fund Claims must be filed by the claimant in her or her own right and name and not as a member or representative of a class, no such lawsuit may be consolidated with any other lawsuit, and a claimant shall be eligible for payment of a judgment for monetary damages obtained in the tort system from the Asbestos PI Trust's available cash only as provided in Section 7.7(a) below. Under no circumstances shall an action be brought or proceed against any Asbestos Protected Party with respect to a PCC Fund Claim or a PPG Fund Claim, nor shall any Asbestos Protected Party be required to pay any costs of defense, settlement, indemnity or judgments arising from or in connection with any PCC Fund Claim or PPG Fund Claims.

**5.11(b) Litigation of Corning Fund Claims.**  Claimants holding Corning Fund Claims may institute suit on the claim naming the Asbestos PI Trust as defendant in the relevant tort system pursuant to Sections 5.11(b) and 7.6(b) below if they fail to reach a settlement of the claim with either the Asbestos PI Trust or the insurer or insurers that have the responsibility for handling such claims. All lawsuits brought against the Asbestos PI Trust involving Corning Fund Claims must be filed by the claimant in her or her own right and name and not as a member or representative of a class, no such lawsuit may be consolidated with any other lawsuit, and a claimant shall be eligible for payment of a judgment for monetary damages obtained in the tort

system from the Corning Fund's available cash only as provided in Section 7.7(b) below.

If a lawsuit related to a Corning Fund Claim is commenced, the Asbestos PI Trust shall tender the claim to the insurer or insurers who have provided coverage for claims arising out of such exposure. It is anticipated that the insurer or insurers will defend the Asbestos PI Trust against those claims or reimburse the Asbestos PI Trust for its costs of defense, and that all settlements or final judgments against the Asbestos PI Trust resulting from such law suits will be paid by or on behalf of the Corning Fund from the proceeds of the insurance in question pursuant to Section 7.7(b) below. Under no circumstances shall an action be brought or proceed against any Asbestos Protected Party with respect to any Corning Fund Claim, nor shall any Asbestos Protected Party be required to pay any costs of defense, settlement, indemnity or judgments arising from or in connection with any Corning Fund Claim.

Any such lawsuits based on exposure to asbestos-containing products for which any Corning Entity is liable may be brought by the claimant only against the Asbestos PI Trust in the federal or state court of his or her choosing as permitted under applicable federal or state law, and may seek only the several share of the liability of the relevant Corning Entity for the claim. Where an action involving a Corning Fund Claim is pending or a suit involving a Corning Fund Claim is commenced naming Corhart or any Corning Entity, the Asbestos PI Trust, within 15 days of receiving notice of the claimant's election to file an action in that forum, shall execute

appropriate legal documents stipulating to the substitution of the Asbestos PI Trust as a

party defendant, or failing that, the joinder of the Asbestos PI Trust as a party

defendant in any federal or state action as permitted by applicable law.

## SECTION VI

## Claims Materials

**6.1    Claims Materials.**  The Asbestos PI Trust shall prepare suitable and

efficient claims materials ("Claims Materials") for all Asbestos PI Trust Claims, and

shall provide such Claims Materials upon a written request for such materials to the

Asbestos PI Trust. The proof of claim form to be submitted to the Asbestos PI Trust

shall require the claimant to assert the highest Disease Level for which the claim

qualifies at the time of filing. The proof of claim form shall also include a certification

by the claimant or his or her attorney sufficient to meet the requirements of Rule 11(b)

of the Federal Rules of Civil Procedure. In developing its claim filing procedures, the

Asbestos PI Trust shall make every reasonable effort to provide claimants with the

opportunity to utilize currently available technology at their discretion, including filing

claims and supporting documentation over the internet and electronically by disk or

CD-Rom. The proof of claim forms may be changed by the Asbestos PI Trust with the

consent of the TAC and the Future Claimants' Representative.

**6.2    Content of Claims Materials.**  The Claims Materials shall include a

copy of this TDP, such instructions as the Trustees shall approve, and a detailed proof

of claim form.  If feasible, the forms used by the Asbestos PI Trust to obtain claims

information shall be the same or substantially similar to those used by other asbestos

claims resolution organizations. Instead of collecting some or all of the claims information from a claimant or the claimant's attorney, the Asbestos PI Trust may also obtain such information from electronic data bases maintained by any other asbestos claims resolution organization. However, the Asbestos PI Trust shall inform the claimant that it plans to obtain information as available from such other organizations and may do so unless the claimant objects in writing or provides such information directly to the Asbestos PI Trust. If requested by the claimant, the Asbestos PI Trust shall accept information provided electronically. The claimant may, but will not be required to, provide the Asbestos PI Trust with evidence of recovery from other asbestos defendants and claims resolution organizations.

**6.3     Withdrawal or Deferral of Claims**. A claimant can withdraw an Asbestos PI Trust Claim at any time upon written notice to the Asbestos PI Trust and file another such claim subsequently without affecting the status of the claim for statute of limitations purposes, but any such claim filed after withdrawal shall be given a place in the FIFO Processing Queue for the relevant Asbestos PI Trust Fund based on the date of such subsequent filing. A claimant can also request that the processing of his or her Asbestos PI Trust Claim by the Asbestos PI Trust be deferred for a period not to exceed three (3) years without affecting the status of the claim for statute of limitation purposes, in which case the claimant shall also retain his or her original place in the FIFO Processing Queue.

Except for Asbestos PI Trust Claims held by representatives of deceased or incompetent claimants for which court or probate approval of the Asbestos PI Trust's offer is required, or a claim for which deferral status has been granted, a claim will be

deemed to have been withdrawn if the claimant neither accepts, rejects, nor initiates arbitration within six months of the Asbestos PI Trust's written offer of payment or rejection of the claim. Upon written request and good cause, the Asbestos PI Trust may extend either the deferral or withdrawal period for additional six month periods.

**6.4**    **Filing Requirements and Fees.** The Trustees shall have the discretion to determine, with the consent of the TAC and the Futures Representative, (a) whether a claimant must have previously filed an Asbestos PI Trust Claim in the tort system to be eligible to file the claim with the Asbestos PI Trust and (b) whether a filing fee should be required for any Asbestos PI Trust Claims.

## SECTION VII

## General Guidelines for Liquidating and Paying Claims

**7.1**    **Showing Required.** To establish a valid Asbestos PI Trust Claim, a claimant must meet the requirements set forth in this TDP. The Asbestos PI Trust may require the submission of X-rays, CT scans, laboratory tests, medical examinations or reviews, other medical evidence, or any other evidence to support or verify the claim, and may further require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods, and procedures to assure that such evidence is reliable.

**7.2**    **Costs Considered.** Notwithstanding any provisions of this TDP to the contrary, the Trustees shall always give appropriate consideration to the cost of investigating and uncovering invalid Asbestos PI Trust Claims so that the payment of valid Asbestos PI Trust Claims is not further impaired by such processes with respect to issues related to the validity of the medical evidence supporting an Asbestos PI Trust

Claim. The Trustees shall also have the latitude to make judgments regarding the amount of transaction costs to be expended by the Asbestos PI Trust so that valid Asbestos PI Trust Claims are not unduly further impaired by the costs of additional investigation. Nothing herein shall prevent the Trustees, in appropriate circumstances, from contesting the validity of any claim against the Asbestos PI Trust whatever the costs, or declining to accept medical evidence from sources that the Trustees have determined to be unreliable pursuant to the Claims Audit Program described in Section 5.7 above.

**7.3    Discretion to Vary the Order and Amounts of Payments in Event of Limited Liquidity.** Consistent with the provisions hereof and subject to the FIFO Processing and Payment Queues, as well as the Maximum Annual Payment, the Maximum Available Payment, Payment Percentage and Claims Payment Ratio requirements set forth above with respect to PCC Fund Claims, the Trustees shall proceed as quickly as possible to liquidate valid Asbestos PI Trust Claims, and shall make payments to holders of such claims in accordance with this TDP promptly as insurance proceeds and other funds become available and as claims are liquidated, while maintaining sufficient resources to pay future valid claims in substantially the same manner.

Because the Asbestos PI Trust's income over time remains uncertain, and decisions about payments must be based on estimates that cannot be done precisely, they may have to be revised in light of experiences over time, and there can be no guarantee of any specific level of payment to claimants. However, the Trustees shall use their best efforts to treat similar claims in substantially the same manner,

consistent with their duties as Trustees, the purposes of the Asbestos PI Trust, the

established allocation of funds to PCC Fund Claims in Categories A and B, and the

practical limitations imposed by the inability to predict the future with precision. In

the event that the Asbestos PI Trust faces temporary periods of limited liquidity, the

Trustees may, with the consent of the TAC and the Future Claimants' Representative,

suspend the normal order of payment and may temporarily limit or suspend payments

altogether, and may offer a Reduced Payment Option as described in Section 2.5

above.

**7.4    Punitive Damages.**  In determining the value of any liquidated or

unliquidated PCC Fund Claim, PPG Fund Claim or Corning Fund Claim, punitive or

exemplary damages, i.e., damages other than compensatory damages, shall not be

considered or allowed, notwithstanding their availability in the tort system. Similarly,

no punitive or exemplary damages will be payable with respect to any claim litigated

against the Asbestos PI Trust in the tort system pursuant to Sections 5.11 above and

7.6 below.

**7.5    Interest.**

**7.5(a)  Liquidated Pre-Petition Claims.**  Interest shall be payable on

the liquidated value of all Pre-Petition Liquidated Claims described in Section 5.2(a)

above. In the case of Pre-Petition Liquidated Claims liquidated by verdict or judgment,

interest shall be measured from the date of payment back to the date that is one year

after the date that the verdict or judgment was entered.  In the case of Pre-Petition

Liquidated Claims liquidated by a binding, judicially enforceable settlement, interest

shall be measured from the date of payment back to the date that is one year after the

Petition Date.

        **7.5(b)  Unliquidated PCC Fund and PPG Fund Claims.**  Except for unliquidated PCC Fund Claims and PPG Fund Claims involving Other Asbestos Disease (Disease Level I – Cash Discount Payment) and subject to the limitations set forth below, interest shall be paid on all PCC Fund Claims and PPG Fund Claims with respect to which the claimant has had to wait a year or more for payment, provided, however, that no claimant shall receive interest for a period in excess of seven (7) years. The applicable interest rate shall be six percent (6%) simple interest per annum for each of the first five (5) years after the Effective Date; thereafter, the Asbestos PI Trust shall have the discretion to change the annual interest rate with the consent of the TAC and the Future Claimants' Representative.

        Interest shall be payable on the Scheduled Value of any unliquidated PCC Fund Claims or PPG Fund  Claim involving Disease Levels II – V, VII and VIII, whether the claim is liquidated under Expedited Review or Individual Review, or by arbitration. No interest shall be paid on any claim liquidated in the tort system pursuant to section 5.11 above and 7.6 below. Interest on an unliquidated PCC Fund Claim or PPG Fund Claims that meet the general requirements of Disease Level VI shall be based on the Average Value for that Disease Level. Interest on such unliquidated PCC Fund Claims and PPG Fund Claims shall be measured from the date of payment back to the earliest of the date that is one year after the date on which (i) the claim was filed against the relevant Asbestos Protected Party; (ii) the claim was filed against another defendant in the tort system on or after the Petition Date but before the Effective Date; or (iii) the claim was filed with the Asbestos PI Trust after the Effective Date.

**7.5(c)    Unliquidated Corning Fund Claims.** In the case of Corning
Fund Claims that are liquidated by final judgment or settlement in the tort system,
interest shall paid only to the extent required by applicable statute or by the express
terms of a pre-petition settlement agreement. When and if Corning Fund Claims are
payable from the Corning Fund rather than by a Corning Plan Insurer, interest on such
claims shall be payable, if at all, pursuant to procedures to be adopted by the Asbestos
PI Trust, with the consent of the TAC and the Future Claimants' Representative, for
processing, liquidating and paying such claims.

**7.6**     **Suits in the Tort System.**

**7.6(a)  PCC Fund Claims and PPG Fund Claims.** If the holder of a
disputed PCC Fund Claim or PPG Fund Claim disagrees with the Asbestos PI Trust's
determination regarding the Disease Level of the claim, the claimant's exposure history
or the liquidated value of the claim, and if the holder has first submitted the claim to
non-binding arbitration as provided in Section 5.10 above, the holder may file a lawsuit
in the Claimant's Jurisdiction as defined in Section 5.3(a)(2)(B) above.  Any such
lawsuit must be filed by the claimant in her or her own right and name and not as a
member or representative of a class, and no such lawsuit may be consolidated with any
other lawsuit. All defenses (including with respect to the Asbestos PI Trust all defenses
that could have been asserted by any Asbestos Protected Party in the case of a PCC
Fund Claim or PPG Fund Claim) shall be available to both sides at a trial involving
any Asbestos PI Trust Claim; however, the Asbestos PI Trust may waive any defense
and/or concede any issue of fact or law.  If the claimant was alive at the time the initial
pre-petition complaint was filed or on the date the proof of claim form was filed with
the Asbestos PI Trust, the case will be treated as a personal injury case with all
personal injury damages to be considered even if the claimant has died during the
pendency of the claim.

**Section 7.6(b)     Corning Fund Claims.** Claims that are payable from
the Corning Fund shall be litigated in the tort system pursuant to Sections 5.3(b) and
5.11(b) above. All defenses (including, with respect to the Asbestos PI Trust, all
defenses which could have been asserted by any Corning Entity with respect to the

claim) shall be available to both sides at trial; however, the Asbestos PI Trust shall not waive any defense and/or concede any issue of fact or law.

### 7.7    Payment of Money Judgments

**7.7(a)    Judgments Relating to PCC Fund Claims and PPG Fund Claims.** If and when a claimant obtains a judgment in the tort system relating to the several share(s) of the PCC Fund and/or PPG Fund 's liability to the claimant, the claim shall be placed in the FIFO Payment Queue established by the PCC Fund and/or the PPG Fund based on the date on which the judgment became final.  Thereafter, the claimant shall receive from the relevant Asbestos PI Trust Fund an initial payment (subject in the case of a PCC Fund Claim to the applicable Payment Percentage, the Maximum Annual Payment, the Maximum Available Payment, and the Claims Payment Ratio provisions set forth above) of an amount equal to one-hundred percent (100%) of the greater of (i) the Asbestos PI Trust's last offer to the claimant or (ii) the award that the claimant declined in non-binding arbitration.  The claimant shall receive the balance of the judgment, if any, in five equal installments in years six (6) through ten (10) following the year of the initial payment (also subject in the case of a PCC Fund Claim to the applicable Payment Percentage, the Maximum Annual Payment, the Maximum Available Payment and the Claims Payment Ratio provisions set forth above).

In the case of non-extraordinary PCC Fund Claims or PPG Fund Claims involving Disease Levels II - VIII, the total amounts paid with respect to such claims shall not exceed the Maximum Values for such Disease Levels set forth in Section

5.3(a)(3). In the case of Extraordinary PCC Fund Claims or PPG Fund Claims, the total

amounts paid with respect to such claims shall not exceed the Maximum Value for such

claims set forth in Section 5.4(a) above. Under no circumstances shall interest or

punitive damages be paid in respect of any judgments or settlements obtained in the tort

system with respect to PCC Fund Claims or PPG Fund Claims.

### 7.7(b)  Settlements and Judgments Relating to Corning Fund Claims.

Claimants who hold settlements or final judgments against the Asbestos PI Trust

arising out of litigation in the tort system involving the Corning Fund's several share

of the liability for an Asbestos PI Trust Claim shall have those settlements or

judgments paid by or on behalf of the Corning Fund based on their place in the

Asbestos PI Trust Fund's FIFO Payment Queue.  Payments of such settlements and

final judgments shall be made as insurance proceeds and the Asbestos PI Trust Fund's

cash reserve become available in accordance with the provisions of the Plan and this

TDP. As provided above, no punitive damages shall be paid in respect of such

judgments, and no interest shall be paid on either settlements or judgments unless

provided by the express terms of a settlement agreement or under an applicable statute.

7.8    **Releases.** With respect to all Asbestos PI Trust Claims, the Trustees shall,

with the consent of the TAC, the Future Claimants' Representative, PCC, PPG, and

Corning, determine the form and substance of the releases to be provided to the Asbestos

PI Trust in order to maximize recovery for claimants against other tortfeasors without

increasing the risk or amount of claims for indemnification or contribution from the

Asbestos PI Trust.  As a condition to making any payment to a claimant, the Asbestos PI

72

Trust shall obtain a general, partial, or limited release as appropriate in accordance with the applicable state or other law; however, all such releases shall be consistent with the requirements of the Plan, the PPG Trust Funding Agreement and the Corning Trust Funding Agreement.  If allowed by state law, the endorsing of a check or draft for payment by or on behalf of a claimant shall constitute such a release.

**7.9    Third-Party Services**. Nothing in this TDP shall preclude the Asbestos PI Trust from contracting with another asbestos claims resolution organization to provide services to the Asbestos PI Trust so long as decisions about the categorization and liquidated value of Asbestos PI Trust Claims are based on the relevant provisions of this TDP, including in the case of PCC Fund Claims the Disease Levels, Scheduled Values, Average Values, Maximum Values, and Medical/Exposure Criteria set forth above for PCC Fund Claims.

**7.10    Asbestos PI Trust Disclosure of Information.**  Periodically, but not less often than once a year, the Asbestos PI Trust shall make available to claimants and other interested parties, the number of claims by disease levels that have been resolved both by the Individual Review Process and by arbitration as well as by litigation in the tort system, indicating the amounts of the awards and the averages of the awards by jurisdiction.

**SECTION VIII**

**Miscellaneous**

**8.1    Amendments**.  Except as otherwise provided herein, the Trustees may amend, modify, delete, or add to any provisions of this TDP (including, without

73

limitation, amendments to conform this TDP to advances in scientific or medical

knowledge or other changes in circumstances), provided they first obtain the consent of

the TAC and the Future Claimants' Representative pursuant to the Consent Process set

forth in Sections 5.7(b) and 6.6(b) of the Asbestos PI Trust Agreement, except that the

right to amend the Claims Payment Ratio is governed by the restrictions in Section 2.5

above, and the right to adjust the Payment Percentage is governed by Section 4.2

above.

     **8.2**    **Severability.**  Should any provision contained in this TDP be

determined to be unenforceable, such determination shall in no way limit or affect the

enforceability and operative effect of any and all other provisions of this TDP.  Should

any provision contained in this TDP be determined to be inconsistent with or contrary

to PCC's, the PPG Entities', or the Corning Entities' obligations to any insurance

company providing insurance coverage to PCC, the PPG Entities, or the Corning

Entities in respect of claims for personal injury based on exposure to asbestos-

containing products manufactured or distributed by PCC, the PPG Entities, **or** the

Corning Entities, the Asbestos PI Trust, with the consent of the TAC and the Future

Claimants' Representative, may amend this TDP and/or the Asbestos PI Trust

Agreement to make the provisions of either or both documents consistent with the

duties and obligation of PCC, the PPG Entities, or the Corning Entities to said

insurance company.

     **8.3**    **Governing Law.**  Except for purposes of determining the liquidated

value of any Asbestos PI Trust Claim, administration of this TDP shall be governed

by, and construed in accordance with, the laws of the Commonwealth of Pennsylvania. The law governing the liquidation of PCC Fund Claims and PPG Fund Claims in the case of Individual Review, arbitration or litigation in the tort system shall be the law of the Claimant's Jurisdiction as described in Section 5.3(a)(2)(B) above. The law governing the liquidation in the tort system of Corning Fund Claims shall be determined based on applicable federal or state choice of law rules.