# Exhibit D

# THE BABCOCK & WILCOX COMPANY

## ASBESTOS PERSONAL INJURY SETTLEMENT TRUST
## DISTRIBUTION PROCEDURES

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

## THE BABCOCK & WILCOX COMPANY

### ASBESTOS PERSONAL INJURY SETTLEMENT TRUST DISTRIBUTION PROCEDURES

## TABLE OF CONTENTS

<u>Page</u>

SECTION I — Introduction ............................................................ 1

    1.1    Purpose ................................................................. 1
    1.2    Interpretation ........................................................ 1


SECTION II — Overview ............................................................. 2

    2.1    PI Trust Goals ........................................................ 2
    2.2    Claims Liquidation Procedures ........................................ 2
    2.3    Application of the Payment Percentage ................................ 4
    2.4    PI Trust's Determination of the Maximum Annual Payment
           and Maximum Available Payment ..................................... 6
    2.5    Claims Payment Ratio ................................................. 7
    2.6    Indemnity and Contribution Claims .................................... 9

SECTION III — TDP Administration .................................................. 9

    3.1    Trust Advisory Committee and Future Claimants' Representative ........ 9
    3.2    Consent and Consultation Procedures ................................. 10


SECTION IV — Payment Percentage; Periodic Estimates ............................. 10

    4.1    Uncertainty of B&W's Personal Injury Asbestos Liabilities ........... 10
    4.2    Computation of Payment Percentage ................................... 10
    4.3    Applicability of the Payment Percentage ............................. 13

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

SECTION V — Resolution of PI Trust Claims ................................................................. 14

    5.1     Ordering, Processing and Payment of Claims ........................................ 14
          (a)     Ordering of Claims ............................................................... 14
               (1)     Establishment of the FIFO Processing Queue ................ 14
               (2)     Effect of Statutes of Limitations and Repose ................. 15
          (b)     Processing of Claims........................................................... 16
          (c)     Payment of Claims.............................................................. 16
    5.2     Resolution of Pre-Petition Liquidated PI Trust Claims ......................... 18
          (a)     Processing and Payment ...................................................... 18
          (b)     Marshalling of Security ....................................................... 19
    5.3     Resolution of Unliquidated PI Trust Claims .......................................... 19
          (a)     Expedited Review Process ................................................... 21
               (1)     In General ............................................................... 21
               (2)     Claims Processing under Expedited Review .................. 21
               (3)     Disease Levels, Scheduled Values
                      and Medical/Exposure Criteria ...................................... 22
          (b)     Individual Review Process ................................................... 26
                (1)     In General ............................................................... 26
                    (A)     Disease Levels I-III ............................................ 27
                    (B)     Disease Levels IV-VIII ..................................... 27
                (2)     Valuation Factors to be Considered in
                      Individual Review .......................................................... 28
               (3)     Scheduled, Average and Maximum Values .................... 29
    5.4     Categorizing Claims as Extraordinary and/or Exigent Hardship............ 30
          (a)     Extraordinary Claims .......................................................... 30
          (b)     Exigent Hardship Claims ..................................................... 30
    5.5     Secondary Exposure Claims ................................................................... 31
    5.6     Indirect PI Trust Claims ......................................................................... 31
    5.7     Evidentiary Requirements ....................................................................... 33
          (a)     Medical Evidence ................................................................ 33
               (1)     In General ............................................................... 33
                    (A)     Disease Levels I – IV............................................ 33
                    (B)     Disease Levels V – VIII ..................................... 34
                    (C)     Treatment of Certain Pre-Petition Claims............ 34
               (2)     Credibility of Medical Evidence ................................... 35
           (b)     Exposure Evidence............................................................... 36
               (1)     In General ............................................................... 36
               (2)     Significant Occupational Exposure ............................... 36
               (3)     B&W Exposure........................................................ 37
    5.8     Claims Audit Program ............................................................................ 38
    5.9     Second Disease (Malignancy) Claims .................................................... 38

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

| | | | |
|---|---|---|---|
| 5.10 | Arbitration | ........................................................ | 39 |
| | (a) | Establishment of ADR Procedures ............................................ | 39 |
| | (b) | Claims Eligible for Arbitration ................................................ | 39 |
| | (c) | Limitations on and Payment of Arbitration Awards.................... | 40 |
| 5.11 | Litigation | ........................................................ | 40 |

SECTION VI — Claims Materials   ................................................................ 41

| | | | |
|---|---|---|---|
| 6.1 | Claims Materials | ...................................................... | 41 |
| 6.2 | Content of Claims Materials | .................................................... | 41 |
| 6.3 | Withdrawal or Deferral of Claims | ........................................... | 42 |
| 6.4 | Filing Requirements and Fees | ................................................. | 42 |

SECTION VII — General Guidelines for Liquidating and Paying Claims .................... 43

| | | | |
|---|---|---|---|
| 7.1 | Showing Required | ................................................. | 43 |
| 7.2 | Costs Considered | .................................................. | 43 |
| 7.3 | Discretion to Vary the Order and Amounts of Payments in Event of Limited Liquidity | ................................................ | 43 |
| 7.4 | Punitive Damages | ................................................. | 44 |
| 7.5 | Interest | ................................................. | 44 |
| | (a) | In General ................................................. | 44 |
| | (b) | Unliquidated PI Trust Claims | 45 |
| | (c) | Liquidated Pre-Petition Claims.................................... | 45 |
| 7.6 | Suits in the Tort System................................................... | 46 |
| 7.7 | Payment of Judgments for Money Damages | .............................. | 46 |
| 7.8 | Releases | ................................................. | 47 |
| 7.9 | Third-Party Services | ............................................ | 47 |
| 7.10 | PI Trust Disclosure of Information.............................................. | 48 |

SECTION VIII — Miscellaneous   ................................................................ 48

| | | | |
|---|---|---|---|
| 8.1 | Amendments | ................................................. | 48 |
| 8.2 | Severability | ................................................. | 48 |
| 8.3 | Governing Law | ................................................. | 49 |

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

## THE BABCOCK & WILCOX COMPANY

## ASBESTOS PERSONAL INJURY SETTLEMENT TRUST DISTRIBUTION PROCEDURES

The Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust Distribution Procedures (this "TDP") contained herein provide for resolving all asbestos-related personal injury and death claims caused by conduct of, and/or exposure to products for which, The Babcock & Wilcox Company ("B&W"), and its predecessors, successors, and assigns, have legal responsibility (hereinafter for all purposes of this TDP defined as "PI Trust Claims"), as provided in and required by The Babcock & Wilcox Company Plan of Reorganization ("Plan") and The Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust Agreement (the "PI Trust Agreement"). The Plan and PI Trust Agreement establish The Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust ("PI Trust"). The Trustees of the PI Trust ("Trustees") shall implement and administer this TDP in accordance with the PI Trust Agreement. Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Plan and the PI Trust Agreement.

## SECTION I

### Introduction

**1.1    Purpose.** This TDP has been adopted pursuant to the PI Trust Agreement. It is designed to provide fair, equitable and substantially similar treatment for all PI Trust Claims that may presently exist or may arise in the future in substantially the same manner.

**1.2    Interpretation.** Nothing in this TDP shall be deemed to create a substantive right for any claimant.

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

## SECTION II

### Overview

**2.1**  **PI Trust Goals.** The goal of the PI Trust is to treat all claimants equitably. This TDP furthers that goal by setting forth procedures for processing and paying claims generally on an impartial, first-in-first-out ("FIFO") basis, with the intention of paying all claimants over time as equivalent a share as possible of the value of their claims based on historical values for substantially similar claims in the tort system.[1]  To this end, the TDP establishes a schedule of eight asbestos-related diseases ("Disease Levels"), seven of which have presumptive medical and exposure requirements ("Medical/Exposure Criteria") and specific liquidated values ("Scheduled Values"), and five of which have both anticipated average values ("Average Values") and caps on their liquidated values ("Maximum Values"). The Disease Levels, Medical/Exposure Criteria, Scheduled Values, Average Values and Maximum Values, which are set forth in Sections 5.3 and 5.4 below, have all been selected and derived with the intention of achieving a fair allocation of the PI Trust funds as among claimants suffering from different disease processes in light of the best available information considering the settlement history of B&W and the rights claimants would have in the tort system absent the bankruptcy.

**2.2**  **Claims Liquidation Procedures.** PI Trust Claims shall be processed based on their place in the FIFO Processing Queue to be established pursuant to Section 5.1(a) below. The PI Trust shall take all reasonable steps to resolve PI Trust Claims as efficiently and expeditiously as possible at each stage of claims processing and arbitration, which steps may

---

[1]  As used in this TDP, the phrase "in the tort system" shall include only claims asserted by way of litigation and not claims asserted against a trust established pursuant to section 524(g) and/or section 105 of the Bankruptcy Code or any other applicable law.

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

include conducting settlement discussions with claimants' representatives with respect to more

than one claim at a time. The PI Trust shall also make every effort to resolve each year at least

that number of PI Trust Claims required to exhaust the Maximum Annual Payment and the

Maximum Available Payment for Category A and Category B claims, as those terms are

defined below.

The PI Trust shall liquidate all PI Trust Claims that meet the presumptive

Medical/Exposure Criteria of Disease Levels I – V, VII and VIII under the Expedited Review

Process described in Section 5.3(a) below. Claims involving Disease Levels I – V, VII and VIII

that do not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level may

undergo the PI Trust's Individual Review Process described in Section 5.3(b) below. In such a

case, notwithstanding that the claim does not meet the presumptive Medical/Exposure Criteria

for the relevant Disease Level, the PI Trust can offer the claimant an amount up to the

Scheduled Value of that Disease Level if the PI Trust is satisfied that the claimant has

presented a claim that would be cognizable and valid in the tort system.

PI Trust Claims involving Disease Levels IV - VIII tend to raise more complex

valuation issues than the PI Trust Claims in Disease Levels I – III. Accordingly, claimants

holding claims involving these Disease Levels may in addition or alternatively seek to establish

a liquidated value for the claim that is greater than its Scheduled Value by electing the PI

Trust's Individual Review Process. However, the liquidated value of a more serious Disease

Level IV, V, VII or VIII claim that undergoes the Individual Review Process for valuation

purposes may be determined to be less than its Scheduled Value, and in any event shall not

exceed the Maximum Value for the relevant Disease Level set forth in Section 5.3(b)(3) below,

unless the claim qualifies as an Extraordinary Claim as defined in Section 5.4(a) below, in

- 3 -

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

which case its liquidated value cannot exceed the Maximum Value specified in that provision for such claims. Level VI (Lung Cancer 2) claims may be liquidated only pursuant to the PI Trust's Individual Review Process.

Based upon B&W's claims settlement history in light of applicable tort law, and current projections of present and future unliquidated claims, the Scheduled Values and Maximum Values set forth in Section 5.3(b)(3) have been established for each of the five more serious Disease Levels that are eligible for Individual Review of their liquidated values, with the expectation that the combination of settlements at the Scheduled Values and those resulting from the Individual Review Process will result in the Average Values also set forth in that provision.

All unresolved disputes over a claimant's medical condition, exposure history and/or the liquidated value of the claim shall be subject to binding or non-binding arbitration as set forth in Section 5.10 below, at the election of the claimant, under the ADR Procedures that are provided in Attachment A hereto. PI Trust Claims that are the subject of a dispute with the PI Trust that cannot be resolved by non-binding arbitration may enter the tort system as provided in Sections 5.11 and 7.6 below.  However, if and when a claimant obtains a judgment in the tort system, the judgment will be payable (subject to the Payment Percentage, Maximum Available Payment, and Claims Payment Ratio provisions set forth below) as provided in Section 7.7 below.

**2.3** **Application of the Payment Percentage.** After the liquidated value of a PI Trust Claim other than a claim involving Other Asbestos Disease (Disease Level I – Cash Discount Payment), as defined in Section 5.3(a)(3) below, is determined pursuant to the procedures set forth herein for Expedited Review, Individual Review, arbitration, or litigation in the tort system,

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

the claimant will ultimately receive a pro-rata share of that value based on a Payment Percentage described in Section 4.2 below. The Payment Percentage shall also apply to all Pre-Petition Liquidated Claims as provided in Section 5.2 below.

The Initial Payment Percentage has been set at 13.5 percent (13.5%), and shall apply to all PI Trust Voting Claims accepted as valid by the PI Trust, unless adjusted by the PI Trust pursuant to the consent of the PI Trust Advisory Committee ("TAC") and the Legal Representative for Future Asbestos-Related Claimants ("Future Claimants' Representative") (who are described in Section 3.1 below) pursuant to Section 4.2 below. The term "PI Voting Trust Claims" includes (i) Pre-Petition Liquidated Claims as defined in Section 5.2(a) below; (ii) claims filed against B&W in the tort system or actually submitted to B&W pursuant to an administrative settlement agreement prior to the Petition Date of February 22, 2000; and (iii) all claims filed against another defendant in the tort system prior to the date the Plan was filed with the Bankruptcy Court (the "Plan Filing Date"); provided, however, that the holder of a claim described in subsection (i), (ii) or (iii) above, or his or her authorized agent, actually voted to accept or reject the Plan pursuant to the voting procedures established by the Bankruptcy Court, and provided further that the claim was subsequently filed with the PI Trust pursuant to Section 6.1 below by the Initial Claims Filing Date defined in Section 5.1(a) below. The Initial Payment Percentage has been calculated on the assumption that the Average Values set forth in Section 5.3(b)(3) below will be achieved with respect to existing present claims and projected future claims involving Disease Levels IV – VIII.

The Payment Percentage may be adjusted upwards or downwards from time to time by the PI Trust with the consent of the TAC and the Future Claimants' Representative to reflect then-current estimates of the PI Trust's assets and its liabilities, as well as then-estimated value

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

of then-pending and future claims. However, any adjustment to the Initial Payment Percentage

shall be made only pursuant to Section 4.2 below. If the Payment Percentage is increased over

time, claimants whose claims were liquidated and paid in prior periods under the TDP will not

receive additional payments except as provided in Section 4.2 below relating to circumstances in

which the PI Trust has received a substantial recovery of insurance proceeds. Because there is

uncertainty in the prediction of both the number and severity of future claims, and the amount of

the PI Trust's assets, no guarantee can be made of any Payment Percentage of a PI Trust Claim's

liquidated value.

      **2.4**     **PI Trust's Determination of the Maximum Annual Payment and**

**Maximum Available Payment.** The PI Trust shall estimate or model the amount of cash flow

anticipated to be necessary over its entire life to ensure that funds will be available to treat all

present and future B&W claimants as similarly as possible. In each year, the PI Trust will be

empowered to pay out all of the interest earned during the year, together with a portion of its

principal, calculated so that the application of PI Trust funds over its life shall correspond with

the needs created by the anticipated flow of claims (the "Maximum Annual Payment"), taking

into account the Payment Percentage provisions set forth in Sections 2.3 above and 4.2 below.

The PI Trust's distributions to all claimants for that year shall not exceed the Maximum Annual

Payment determined for that year.

      In distributing the Maximum Annual Payment, the PI Trust shall first allocate the amount

in question to outstanding Pre-Petition Liquidated Claims and to liquidated PI Trust Claims

involving Disease Level I (Cash Discount Payment), in proportion to the aggregate value of each

group of claims. The remaining portion of the Maximum Annual Payment (the "Maximum

Available Payment"), if any, shall then be allocated and used to satisfy all other liquidated PI

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

Trust Claims, subject to the Claims Payment Ratio set forth in Section 2.5 below. In the event

there are insufficient funds in any year to pay the total number of outstanding Pre-Petition

Liquidated Claims and/or Disease Level I Claims, the available funds allocated to that group of

claims shall be paid to the maximum extent to claimants in the particular group based on their

place in their respective FIFO Payment Queue. Claims in either group for which there are

insufficient funds shall be carried over to the next year, and placed at the head of their FIFO

Payment Queue.

     **2.5**    **Claims Payment Ratio.** Based upon B&W's claims settlement history and

analysis of present and future claims, a Claims Payment Ratio has been determined which, as of

the Effective Date, has been set at 55% for Category A claims, which consist of PI Trust Claims

involving severe asbestosis and malignancies (Disease Levels IV – VIII) that were unliquidated

as of the Petition Date, and at 45% for Category B claims, which are PI Trust Claims involving

non-malignant Asbestosis or Pleural Disease (Disease Levels II and III) that were similarly

unliquidated as of the Petition Date. However, the Claims Payment Ratio shall not apply to any

Pre-Petition Liquidated Claims or to any claims for Other Asbestos Disease (Disease Level I -

Cash Discount Payment).

     In each year, after the determination of the Maximum Available Payment described in

Section 2.4 above, 55% of that amount will be available to pay Category A claims and 45% will

be available to pay Category B claims that have been liquidated since the Petition Date.

In the event there are insufficient funds in any year to pay the liquidated claims within either or

both of the Categories, the available funds allocated to the particular Category shall be paid to

the maximum extent to claimants in that Category based on their place in the FIFO Payment

Queue described in Section 5.1(c) below, which will be based upon the date of claim

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

liquidation. Claims for which there are insufficient funds allocated to the relevant Category

shall be carried over to the next year where they will be placed at the head of the FIFO Payment

Queue. If there are excess funds in either or both Categories, because there is an insufficient

amount of liquidated claims to exhaust the respective Maximum Available Payment amount for

that Category, then the excess funds for either or both Categories will be rolled over and remain

dedicated to the respective Category to which they were originally allocated.

The 55%/45% Claims Payment Ratio and its rollover provision shall apply to all PI Trust

Voting Claims as defined in Section 2.3 above (except Pre-Petition Liquidated Claims and

Other Asbestos Disease claims (Disease Level I – Cash Discount Payment)), and shall not be

amended until the fifth anniversary of the Effective Date. Thereafter, both the Claims Payment

Ratio and its rollover provision shall be continued absent circumstances, such as a significant

change in law or medicine, necessitating amendment to avoid a manifest injustice. However,

the accumulation, rollover and subsequent delay of claims resulting from the application of the

Claims Payment Ratio shall not, in and of itself, constitute such circumstances. In addition, an

increase in the numbers of Category B claims beyond those predicted or expected shall not be

considered as a factor in deciding whether to reduce the percentage allocated to Category A

claims.

In considering whether to make any amendments to the Claims Payment Ratio and/or its

rollover provisions, the Trustees shall consider the reasons for which the Claims Payment Ratio

and its rollover provisions were adopted, the settlement history that gave rise to its calculation,

and the foreseeability or lack of foreseeability of the reasons why there would be any need to

make an amendment. In that regard, the Trustees should keep in mind the interplay between the

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

Payment Percentage and the Claims Payment Ratio as it affects the net cash actually paid to claimants.

In any event, no amendment to the Claims Payment Ratio may be made without the consent of the TAC and the Future Claimants' Representative pursuant to the consent process set forth in Sections 5.7(b) and 6.6(b) of the PI Trust Agreement. However, the Trustees, with the consent of the TAC and the Future Claimants' Representative, may offer the option of a reduced Payment Percentage to holders of claims in either Category A or Category B in return for prompter payment (the "Reduced Payment Option").

    **2.6**    **Indemnity and Contribution Claims.** As set forth in Section 5.5 below, PI Trust Claims for indemnity and contribution ("Indirect PI Trust Claims"), if any, shall be subject to the same categorization, evaluation, and payment provisions of this TDP as all other PI Trust Claims.

**SECTION III**

**TDP Administration**

    **3.1**    **Trust Advisory Committee and Future Claimants' Representative.** Pursuant to the Plan and the PI Trust Agreement, the PI Trust and this TDP shall be administered by the Trustees in consultation with the TAC, which represents the interests of holders of present PI Trust Claims, and the Future Claimants' Representative, who represents the interests of holders of PI Trust Claims that will be asserted in the future. The Trustees shall obtain the consent of the TAC and the Future Claimants' Representative on any amendments to these Procedures pursuant to Section 8.1 below, and on such other matters as are otherwise required below and in Section 2.2(f) of the PI Trust Agreement. The Trustees shall also consult with the TAC and the Future Claimants' Representative on such matters as are provided below and in Section 2.2(e) of the PI

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

Trust Agreement. The initial members of the TAC and the initial Future Claimants'

Representative are identified in the PI Trust Agreement.

    **3.2**      **Consent and Consultation Procedures.**  In those circumstances in which

consultation or consent is required, the Trustees will provide written notice to the TAC and the

Future Claimants' Representative of the specific amendment or other action that is proposed.

The Trustees will not implement such amendment nor take such action unless and until the

parties have engaged in the Consultation Process described in Sections 5.7(a) and 6.6(a), or the

Consent Process described in Sections 5.7(b) and 6.6(b), of the PI Trust Agreement, respectively.

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

## SECTION IV

### Payment Percentage; Periodic Estimates

**4.1    Uncertainty of B&W's Personal Injury Asbestos Liabilities.**  As discussed

above, there is inherent uncertainty regarding B&W's total asbestos-related tort liabilities, as

well as the total value of the assets available to the PI Trust to pay PI Trust Claims.

Consequently, there is inherent uncertainty regarding the amounts that holders of PI Trust Claims

will receive.  To seek to ensure substantially equivalent treatment of all present and future

claims, the Trustees must determine from time to time the percentage of full liquidated value that

holders of present and future PI Trust Claims will be likely to receive, *i.e.*, the "Payment

Percentage" described in Section 2.3 above and Section 4.2 below.

**4.2    Computation of Payment Percentage.** As provided in Section 2.3 above, the

Initial Payment Percentage shall be 13.5 percent (13.5%), and shall apply to all PI Trust Voting

Claims as defined in Section 2.3 above, unless the Trustees, with the consent of the TAC and

the Future Claimants' Representative, determine that the Initial Payment Percentage should be

changed to assure that the PI Trust will be in a financial position to pay holders of unliquidated

and/or unpaid PI Trust Voting Claims and present and future PI Trust Claims in substantially

the same manner.

In making any such adjustment, the Trustees, the TAC and the Future Claimants'

Representative shall take into account the fact that the holders of PI Trust Voting Claims voted

on the Plan relying on the findings of experts that the Initial Payment Percentage represented a

reasonably reliable estimate of the PI Trust's total assets and liabilities over its life based on the

best information available at the time, and shall thus give due consideration to the expectations

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

of PI Trust Voting Claimants that the Initial Payment Percentage would be applied to their PI Trust Claims.

Except with respect to PI Trust Voting Claims to which the Initial Payment Percentage applies, the Payment Percentage shall be subject to change pursuant to the terms of this TDP and the PI Trust Agreement if the Trustees determine that an adjustment is required. No less frequently than once every three years, commencing with the first day of January occurring after the Plan is consummated, the Trustees shall reconsider the then applicable Payment Percentage to assure that it is based on accurate, current information and may, after such reconsideration, change the Payment Percentage if necessary with the consent of the TAC and the Future Claimants' Representative. The Trustees shall also reconsider the then applicable Payment Percentage at shorter intervals if they deem such reconsideration to be appropriate or if requested to do so by the TAC or the Future Claimants' Representative.

The Trustees must base their determination of the Payment Percentage on current estimates of the number, types, and values of present and future PI Trust Claims, the value of the assets then available to the PI Trust for their payment, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of funds to pay a comparable percentage of full value to all holders of PI Trust Claims. When making these determinations, the Trustees shall exercise common sense and flexibly evaluate all relevant factors. The Payment Percentage applicable to Category A or Category B claims may not be reduced to alleviate delays in payments of claims in the other Category; both Categories of claims shall receive the same Payment Percentage, but the payment may be deferred as needed, and a Reduced Payment Option may be instituted as described in Section 2.5 above.

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

The uncertainty surrounding the amount of the PI Trust's future assets is due in significant part to the fact that the estimates of those assets do not take into account the possibility that the PI Trust may receive substantial additional funds from successful recoveries of insurance proceeds that have been assigned to the PI Trust with respect to which the coverage is presently in dispute or the solvency of the carrier is in doubt. If the PI Trust successfully resolves an insurance coverage dispute or otherwise receives a substantial recovery of insurance proceeds, the PI Trust will use those proceeds first to maintain the Payment Percentage then in effect.

However, if the insurance recovery exceeds the amount estimated to be reasonably necessary to maintain the Payment Percentage then in effect, the PI Trust, with the consent of the TAC and the Future Claimants' Representative, shall adjust the Payment Percentage upward to reflect the increase in available assets, and shall also make supplemental payments to claimants who previously liquidated their claims against the PI Trust and received payments based on a lower Payment Percentage. The amount of any such supplemental payment shall be the liquidated value of the claim in question times the newly adjusted Payment Percentage, less all amounts previously paid to the claimant with respect to the claim.

**4.3     Applicability of the Payment Percentage.** No holder of a PI Trust Voting Claim, other than a PI Trust Voting Claim for Other Asbestos Disease (Disease Level I - Cash Discount Payment) as defined in Section 5.3(a)(3) below, shall receive a payment that exceeds the Initial Payment Percentage times the liquidated value of the claim. Except as otherwise provided in Section 5.1(c) below for PI Trust Claims involving deceased or incompetent claimants for which approval of the PI Trust's offer by a court or through a probate process is required, no holder of any other PI Trust Claim, other than a PI Trust Claim for Other Asbestos

- 13 -

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

Disease (Disease Level I - Cash Discount Payment), shall receive a payment that exceeds the

liquidated value of the claim times the Payment Percentage in effect at the time of payment. PI

Trust Claims involving Other Asbestos Disease (Disease Level I - Cash Discount Payment) shall

not be subject to the Payment Percentage, but shall instead be paid the full amount of their

Scheduled Value as set forth in Section 5.3(a)(3) below.

If a redetermination of the Payment Percentage has been proposed in writing by the

Trustees to the TAC and the Future Claimants' Representative but has not yet been adopted, the

claimant shall receive the lower of the current Payment Percentage or the proposed Payment

Percentage. However, if the proposed Payment Percentage was the lower amount but was not

subsequently adopted, the claimant shall thereafter receive the difference between the lower

proposed amount and the higher current amount. Conversely, if the proposed Payment

Percentage was the higher amount and was subsequently adopted, the claimant shall thereafter

receive the difference between the lower current amount and the higher adopted amount.

**SECTION V**

**Resolution of PI Trust Claims.**

5.1    **Ordering, Processing and Payment of Claims**.

    5.1(a)  **Ordering of Claims.**

        5.1(a)(1)  **Establishment of the FIFO Processing Queue.** The PI Trust

will order claims that are sufficiently complete to be reviewed for processing purposes on a FIFO

basis except as otherwise provided herein (the "FIFO Processing Queue"). For all claims filed on

or before the date six months after the Effective Date (the "Initial Claims Filing Date"), a

claimant's position in the FIFO Processing Queue shall be determined as of the earlier of (i) the

date prior to February 22, 2000 (the "Petition Date") (if any) that the specific claim was either

- 14 -

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

filed against B&W in the tort system or was actually submitted to B&W pursuant to an

administrative settlement agreement; (ii) the date before the Petition Date that a claim was filed

against another defendant in the tort system if at the time the claim was subject to a tolling

agreement with B&W; (iii) the date after the Petition Date (if any) but before the Effective Date

that the claim was filed against another defendant in the tort system; (iv) the date the claim was

filed in the Bankruptcy Court pursuant to the Court's bar date order in this Chapter 11

proceeding; (v) the date a ballot was submitted on behalf of the claimant for purposes of voting

to accept or reject the Plan pursuant to the voting procedures approved by the Bankruptcy Court;

or (vi) the date after the Effective Date but on or before the Initial Claims Filing Date that the

claim was filed with the PI Trust.

Following the Initial Claims Filing Date, the claimant's position in the FIFO Processing

Queue shall be determined by the date the claim was filed with the PI Trust. If any claims are

filed on the same date, the claimant's position in the FIFO Processing Queue shall be determined

by the date of the diagnosis of the asbestos-related disease. If any claims are filed and diagnosed

on the same date, the claimant's position in the FIFO Processing Queue shall be determined by

the claimant's date of birth, with older claimants given priority over younger claimants.

5.1(a)(2)  **Effect of Statutes of Limitation and Repose.** To be eligible

for a place in the FIFO Processing Queue, a claim must meet either (i) for claims first filed in the

tort system against B&W prior to the Petition Date, the applicable federal, state and foreign

statute of limitation and repose that was in effect at the time of the filing of the claim in the tort

system, or (ii) for claims not filed against B&W in the tort system prior to the Petition Date, the

applicable federal, state or foreign statute of limitation that was in effect at the time of the filing

with the PI Trust. However, the running of the relevant statute of limitation shall be tolled as of

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

the earliest of (A) the actual filing of the claim against B&W prior to the Petition Date, whether in the tort system or by submission of the claim to B&W pursuant to an administrative settlement agreement; (B) the filing of the claim against another defendant in the tort system prior to the Petition Date if the claim was tolled against B&W at the time by an agreement or otherwise; (C) the filing of a claim after the Petition Date but prior to the Effective Date against another defendant in the tort system; (D) the filing of a proof of claim pursuant to the bar date order of the Bankruptcy Court; (E) the filing of the claim for voting purposes in this Chapter 11 proceeding; or (F) the filing of a proof of claim with the requisite supporting documentation with the PI Trust after the Effective Date.

If a PI Trust Claim meets any of the tolling provisions described in the preceding sentence and the claim was not barred by the applicable federal, state or foreign statute of limitation at the time of the tolling event, it will be treated as timely filed if it is actually filed with the PI Trust within three (3) years after the Effective Date. In addition, any claims that were first diagnosed after the Petition Date, irrespective of the application of any relevant federal, state or foreign statute of limitation or repose, may be filed with the PI Trust within three (3) years after the date of diagnosis or within three (3) years after the Effective Date, whichever occurs later. However, the processing of any PI Trust Claim by the PI Trust may be deferred at the election of the claimant pursuant to Section 6.3 below.

**5.1(b)  Processing of Claims.** As a general practice, the PI Trust will review its claims files on a regular basis and notify all claimants whose claims are likely to come up in the FIFO Processing Queue in the near future. However, claims that were not filed (i) against B&W in the tort system or actually submitted to B&W pursuant to an administrative settlement agreement prior to the Petition Date, or (ii) against another defendant in the tort

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

system prior to the Plan Filing Date, shall not be processed until after the Initial Claims Filing Date.

          **5.1(c)  Payment of Claims.** PI Trust Claims that have been liquidated by the Expedited Review Process as provided in Section 5.3(a) below, by the Individual Review Process as provided in Section 5.3(b) below, by arbitration as provided in Section 5.10 below, or by litigation in the tort system provided in Section 5.11 below, shall be paid in FIFO order based on the date their liquidation became final (the "FIFO Payment Queue"), all such payments being subject to the applicable Payment Percentage, the Maximum Available Payment, and the Claims Payment Ratio, except as otherwise provided herein. Pre-Petition Liquidated Claims, as defined in Section 5.2 below, shall be subject to the Maximum Annual Payment and Payment Percentage limitations, but not to the Maximum Available Payment and Claims Payment Ratio provisions set forth above.

        Where the claimant is deceased or incompetent, and the settlement and payment of his or her claim must be approved by a court of competent jurisdiction or through a probate process prior to acceptance of the claim by the claimant's representative, an offer made by the PI Trust on the claim shall remain open so long as proceedings before that court or in that probate process remain pending, provided that the PI Trust has been furnished with evidence that the settlement offer has been submitted to such court or in the probate process for approval. If the offer is ultimately approved by the court or through the probate process and accepted by the claimant's representative, the PI Trust shall pay the claim in the amount so offered, multiplied by the Payment Percentage in effect at the time the offer was first made.

        If any claims are liquidated on the same date, the claimant's position in the FIFO Payment Queue shall be determined by the date of the diagnosis of the claimant's asbestos-

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

related disease. If any claims are liquidated on the same date and the respective holders'

asbestos-related diseases were diagnosed on the same date, the position of those claims in the

FIFO Payment Queue shall be determined by the PI Trust based on the dates of the claimants'

birth, with older claimants given priority over younger claimants.

      **5.2**     **Resolution of Pre-Petition Liquidated PI Trust Claims.**

      **5.2(a)**    **Processing and Payment.** As soon as practicable after the Effective

Date, the PI Trust shall pay, upon submission by the claimant of the applicable PI Trust proof of

claim form (included in Attachment B) together with all documentation required thereunder, all

PI Trust Claims that were liquidated by (i) a binding settlement agreement for the particular

claim entered into prior to the Petition Date that is judicially enforceable by the claimant, (ii) a

jury verdict or non-final judgment in the tort system obtained prior to the Petition Date, or (iii)

by a judgment that became final and non-appealable prior to the Petition Date (collectively "Pre-

Petition Liquidated Claims").

      The liquidated value of a Pre-Petition Liquidated Claim shall be the unpaid portion of the

amount agreed to in the binding settlement agreement, the unpaid portion of the amount awarded

by the jury verdict or non-final judgment, or the unpaid portion of the amount of the final

judgment, as the case may be, plus interest, if any, that has accrued on that amount in accordance

with the terms of the agreement, if any, or under applicable state law for settlements or

judgments as of the Petition Date; however, pursuant to Section 7.4 below, the liquidated value

of a Pre-Petition Liquidated Claim shall not include any punitive or exemplary damages. In

addition, the amounts payable with respect to such claims shall not be subject to or taken into

account in consideration of the Claims Payment Ratio and the Maximum Available Payment

limitations, but shall be subject to the Maximum Annual Payment and Payment Percentage

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

provisions. In the absence of a Final Order of the Bankruptcy Court determining whether a settlement agreement is binding and judicially enforceable, a dispute between the claimant and the PI Trust over this issue shall be resolved pursuant to the same procedures in this TDP that are provided for resolving the validity and/or liquidated value of a PI Trust Claim (i.e., arbitration and litigation in the tort system as set forth in Sections 5.10 and 5.11 below).

Pre-Petition Liquidated Claims shall be processed and paid in accordance with their order in a separate FIFO queue to be established by the PI Trust based on the date the PI Trust received a completed proof of claim form with all required documentation for the particular claim; provided, however, the amounts payable with respect to such claims shall not be subject to or taken into account in consideration of the Claims Payment Ratio, but shall be subject to the Maximum Annual Payment and Payment Percentage provisions set forth above. If any Pre-Petition Liquidated Claims were filed on the same date, the claimants' position in the FIFO queue for such claims shall be determined by the date on which the claim was liquidated. If any Pre-Petition Liquidated Claims were both filed and liquidated on the same dates, the position of the claimants in the FIFO queue shall be determined by the dates of the claimants' birth, with older claimants given priority over younger claimants.

**5.2(b)    Marshalling of Security.**  Holders of Pre-Petition Liquidated Claims that are secured by letters of credit, appeal bonds, or other security or sureties shall first exhaust their rights against any applicable security or surety before making a claim against the PI Trust. Only in the event that such security or surety is insufficient to pay the Pre-Petition Liquidated Claim in full shall the deficiency be processed and paid as a Pre-Petition Liquidated Claim.

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

5.3     **Resolution of Unliquidated PI Trust Claims**. Within six months after the

establishment of the PI Trust, the Trustees, with the consent of the TAC and the Future

Claimants' Representative, shall adopt procedures for reviewing and liquidating all unliquidated

PI Trust Claims, which shall include deadlines for processing such claims. Such procedures shall

also require that claimants seeking resolution of unliquidated PI Trust claims must first file a

proof of claim form, together with the required supporting documentation, in accordance with

the provisions of Sections 6.1 and 6.2 below. It is anticipated that the PI Trust shall provide an

initial response to the claimant within six months of receiving the proof of claim form.

The proof of claim form shall require the claimant to assert his or her claim for the

highest Disease Level for which the claim qualifies at the time of filing. Irrespective of the

Disease Level alleged on the proof of claim form, all claims shall be deemed to be a claim for the

highest Disease Level for which the claim qualifies at the time of filing, and all lower Disease

Levels for which the claim may also qualify at the time of filing or in the future shall be treated

as subsumed into the higher Disease Level for both processing and payment purposes.

Upon filing of a valid proof of claim form with the required supporting documentation,

the claimant shall be placed in the FIFO Processing Queue in accordance with the ordering

criteria described in Section 5.1(a) above. The PI Trust shall provide the claimant with six-

months notice of the date by which it expects to reach the claim in the FIFO Queue, following

which the claimant shall promptly (i) advise the PI Trust whether the claim should be liquidated

under the PI Trust's Expedited Review Process described in Section 5.3(a) below or, in certain

circumstances, under the PI Trust's Individual Review Process described in Section 5.3(b)

below; (ii) provide the PI Trust with any additional medical and/or exposure evidence that was

not provided with the original claim submission; and (iii) advise the PI Trust of any change in

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

the claimant's Disease Level. If a claimant fails to respond to the PI Trust's notice prior to the

reaching of the claim in the FIFO Queue, the PI Trust shall process and liquidate the claim under

the Expedited Review Process based upon the medical/exposure evidence previously submitted

by the claimant, although the claimant shall retain the right to request Individual Review as

described in Section 5.3(b) below.

> **5.3(a)    Expedited Review Process.**

> **5.3(a)(1)    In General.** The PI Trust's Expedited Review Process is

designed primarily to provide an expeditious, efficient and inexpensive method for liquidating all

claims (except those involving Lung Cancer 2 - Disease Level VI) where the claim can easily be

verified by the PI Trust as meeting the presumptive Medical/Exposure Criteria for the relevant

Disease Level. Expedited Review thus provides claimants with a substantially less burdensome

process for pursuing PI Trust Claims than does the Individual Review Process described in

Section 5.3(b) below. Expedited Review is also intended to provide qualifying claimants a fixed

and certain claims payment.

Thus, claims that undergo Expedited Review and meet the presumptive

Medical/Exposure Criteria for the relevant Disease Level shall be paid the Scheduled Value for

such Disease Level set forth in Section 5.3(a)(3) below. However, except for claims involving

Other Asbestos Disease (Disease Level I), all claims liquidated by Expedited Review shall be

subject to the applicable Payment Percentage, the Maximum Available Payment, and the Claims

Payment Ratio limitations set forth above. Claimants holding claims that cannot be liquidated by

Expedited Review because they do not meet the presumptive Medical/Exposure Criteria for the

relevant Disease Level may elect the PI Trust's Individual Review Process set forth in Section

5.3(b) below.

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

       **5.3(a)(2)  Claims Processing Under Expedited Review.**  All claimants seeking liquidation of their claims pursuant to Expedited Review shall file the PI Trust's proof of claim form provided in Attachment B hereto. As a proof of claim form is reached in the FIFO Processing Queue, the PI Trust shall determine whether the claim described therein meets the Medical/Exposure Criteria for one of the seven Disease Levels eligible for Expedited Review, and shall advise the claimant of its determination. If a Disease Level is determined, the PI Trust shall tender to the claimant an offer of payment of the Scheduled Value for the relevant Disease Level multiplied by the applicable Payment Percentage, together with a form of release approved by the PI Trust. If the claimant accepts the Scheduled Value and returns the release properly executed, the claim shall be placed in the FIFO Payment Queue, following which the Trust shall disburse payment subject to the limitations of the Maximum Available Payment and Claims Payment Ratio, if any.

       **5.3(a)(3)   Disease Levels, Scheduled Values and Medical/Exposure Criteria.**  The eight Disease Levels covered by this TDP, together with the Medical/Exposure Criteria for each and the Scheduled Values for the seven Disease Levels eligible for Expedited Review, are set forth below. These Disease Levels, Scheduled Values, and Medical/Exposure Criteria shall apply to all PI Trust Voting Claims filed with the PI Trust (except Pre-Petition Liquidated Claims) on or before the Initial Claims Filing Date provided in Section 5.1 above for which the claimant elects the Expedited Review Process. Thereafter, for purposes of administering the Expedited Review Process and with the consent of the TAC and the Future Claimants' Representative, the Trustees may add to, change, or eliminate Disease Levels, Scheduled Values, or Medical/Exposure Criteria; develop subcategories of Disease Levels, Scheduled Values or Medical/Exposure Criteria; or determine that a novel or exceptional

- 22 -

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

asbestos personal injury claim is compensable even though it does not meet the

Medical/Exposure Criteria for any of the then current Disease Levels.

In addition, the Trustees, with the consent of the TAC and the Future

Claimants' Representative, shall establish separate Medical/Exposure Criteria and standards, as

well as separate requirements for physician and other professional qualifications, which shall  be

applicable to foreign claims; provided, however, that such criteria, standards or requirements

shall not effectuate substantive changes to the claims eligibility requirements under this TDP, but

rather shall be made only for the purpose of adapting those requirements to the particular

licensing provisions and/or medical customs or practices of the foreign country in question.

| Disease Level | Scheduled Value | Medical/Exposure Criteria |
|---|---|---|
| Mesothelioma (Level VIII) | $90,000 | (1) Diagnosis[2] of mesothelioma; and (2) credible evidence of B&W Exposure as defined in Section 5.7(b)(3). |
| Lung Cancer 1 (Level VII) | $35,000 | (1) Diagnosis of a primary lung cancer plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease[3], (2) |

---

[2]    The requirements for a diagnosis of an asbestos-related disease that may be compensated under the provisions of this TDP are set forth in Section 5.7 below.

[3]    Evidence of "Bilateral Asbestos-Related Nonmalignant Disease," for purposes of meeting the criteria for establishing Disease Levels I, II, III, V, and VII, means a report submitted by a qualified physician stating that the claimant has or had either (i) a chest X-ray read by a qualified B reader of 1/0 or higher on the ILO scale or (ii)(x) a chest X-ray read by a qualified B reader, (y) a CT scan read by a qualified physician, or (z) pathology, in each case showing either bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification. Solely for claims filed against B&W or another asbestos defendant in the tort system prior to the Petition Date, if an ILO reading is not available, either (i) a chest X-ray or a CT scan read by a qualified physician, or (ii) pathology, in each case showing bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification consistent with or compatible with a diagnosis of asbestos-related disease, shall be evidence of a Bilateral Asbestos-Related Nonmalignant Disease for purposes of meeting the presumptive medical requirements of Disease Levels I, II,