**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

|  |  |  |
|---|---|---|
|  |  | six months B&W Exposure prior to December 31, 1982, (3) Significant Occupational Exposure[4] to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. |
| Lung Cancer 2 (Level VI) | None | (1) Diagnosis of a primary lung cancer; (2) B&W Exposure prior to December 31, 1982, and (3) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. Lung Cancer 2 (Level VI) claims are claims that do not meet the more stringent medical and/or exposure requirements of Lung Cancer (Level VII) claims. All claims in this Disease Level will be individually evaluated. The estimated likely average of the individual evaluation awards for this category is $15,000, with such awards capped at $50,000 unless the claim qualifies for Extraordinary Claim treatment. |
|  |  | Level VI claims that show no evidence of either an underlying Bilateral Asbestos-Related Non-malignant Disease or Significant Occupational Exposure may be individually evaluated, although it is not expected that such claims will be treated as having any significant value, especially if the claimant is |

---

III, V and VII. Pathological proof of asbestosis may be based on the pathological grading system for asbestosis described in the Special Issue of the Archives of Pathology and Laboratory Medicine, "Asbestos-associated Diseases," Vol. 106, No. 11, App. 3 (October 8, 1982).

[4]     The term "Significant Occupational Exposure" is defined in Section 5.7(b) below.

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

also a Smoker.[5] In any event, no presumption of validity will be available for any claims in this category.

Other Cancer (Level V)    $18,500    (1) Diagnosis of a primary colo-rectal, laryngeal, esophageal, pharyngeal, or stomach cancer, plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease, (2) six months B&W Exposure prior to December 31, 1982, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the other cancer in question.

Severe Asbestosis (Level IV)    $35,000    (1) Diagnosis of asbestosis with ILO of 2/1 or greater, or asbestosis determined by pathological evidence of asbestos, plus (a) TLC less than 65%, or (b) FVC less than 65% and FEV1/FVC ratio greater than 65%, (2) six months B&W Exposure prior to December 31, 1982, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question.

Asbestosis/

---

[5] There is no distinction between Non-Smokers and Smokers for either Lung Cancer (Level VII) or Lung Cancer (Level VI), although a claimant who meets the more stringent requirements of Lung Cancer (Level VII) (evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease plus Significant Occupational Exposure), and who is also a Non-Smoker, may wish to have his or her claim individually evaluated by the PI Trust. In such a case, absent circumstances that would otherwise reduce the value of the claim, it is anticipated that the liquidated value of the claim might well exceed the $35,000 Scheduled Value for Lung Cancer (Level VII) shown above. "Non-Smoker" means a claimant who either (a) never smoked or (b) has not smoked during any portion of the twelve (12) years immediately prior to the diagnosis of the lung cancer.

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

| | | |
|---|---|---|
| Pleural Disease (Level III) | $10,000 | (1) Diagnosis of Bilateral Asbestos-Related Nonmalignant Disease, plus (a) TLC less than 80%, or (b) FVC less than 80% and FEV1/FVC ratio greater than or equal to 65%, and (2) six months B&W Exposure prior to December 31, 1982, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
| Asbestosis/ Pleural Disease (Level II) | $5,000 | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease, and (2) six months B&W Exposure prior to December 31, 1982, and (3) five years cumulative occupational exposure to asbestos. |
| Other Asbestos Disease (Level I - Cash Discount Payment) | $250 | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease or an asbestos-related malignancy other than mesothelioma, and (2) B&W Exposure prior to December 31, 1982. |

**5.3(b)    Individual Review Process.**

**5.3(b)(1)  In General.** Subject to the provisions set forth below, a B&W claimant may elect to have his or her PI Trust Claim reviewed for purposes of determining whether the claim would be compensable in the tort system even though it does not meet the presumptive Medical/Exposure Criteria for any of the Disease Levels set forth in Section 5.3(a)(3) above. In addition or alternatively, a B&W claimant may elect to have a claim undergo the Individual Review Process for purposes of determining whether the liquidated value of the claim exceeds the Scheduled Value for the relevant Disease Level also set forth in said provision.

- 26 -

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

However, until such time as the PI Trust has made an offer on a claim pursuant to Individual Review, the claimant may change his or her Individual Review election and have the claim liquidated pursuant to the PI Trust's Expedited Review Process. In the event of such a change in the processing election, the claimant shall nevertheless retain his or her place in the FIFO Processing Queue.

**5.3(b)(1)(A)  Disease Levels I – III.** The PI Trust's Individual Review Process provides a claimant with an opportunity for individual consideration and evaluation of a PI Trust Claim that fails to meet the presumptive Medical/Exposure Criteria for Disease Levels I – III.  In such a case, the PI Trust shall either deny the claim or, if the PI Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system, the PI Trust can offer the claimant a liquidated value amount up to the Scheduled Value for that Disease Level.

**5.3(b)(1)(B) Disease Levels IV – VIII.**  Claimants holding claims in the five more serious Disease Levels IV – VIII shall also be eligible to seek Individual Review of the liquidated value of their claims, as well as of their medical/exposure evidence. The Individual Review Process is intended to result in payments equal to the full liquidated value for each claim multiplied by the Payment Percentage; however, the liquidated value of any PI Trust Claim that undergoes Individual Review may be determined to be less than the Scheduled Value the claimant would have received under Expedited Review. Moreover, the liquidated value for a claim involving Disease Levels IV – VIII shall not exceed the Maximum Value for the relevant Disease Level set forth in Section 5.3(b)(3) below, unless the claim meets the requirements of an Extraordinary Claim described in Section 5.4(a) below, in which case its liquidated value cannot exceed the Maximum Value set forth in that provision for such claims. Because the detailed

- 27 -

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

examination and valuation process pursuant to Individual Review requires substantial time and

effort, claimants electing to undergo the Individual Review Process will ordinarily be paid the

liquidated value of their PI Trust Claims later than would have been the case had the claimant

elected the Expedited Review Process.

5.3(b)(2)   **Valuation Factors to Be Considered in Individual Review.**

The PI Trust shall liquidate the value of each PI Trust Claim that undergoes Individual Review

based on the historic liquidated values of other similarly situated claims in the tort system for the

same Disease Level. The PI Trust will thus take into consideration all of the factors that affect

the severity of damages and values within the tort system including, but not limited to, (i) the

degree to which the characteristics of a claim differ from the presumptive Medical/Exposure

Criteria for the Disease Level in question; (ii) factors such as the claimant's age, disability,

employment status, disruption of household, family or recreational activities, dependencies,

special damages, and pain and suffering; (iii) evidence that the claimant's damages were (or

were not) caused by asbestos exposure, including exposure to an asbestos-containing product or

to conduct for which B&W has legal responsibility prior to December 31, 1982 (for example,

alternative causes, and the strength of documentation of injuries); (iv) the industry of exposure;

and (v) settlements, verdicts and the claimant's and other law firms' experience in the Claimant's

Jurisdiction for similarly situated claims.

For these purposes, the "Claimant's Jurisdiction" is the jurisdiction in which the claim

was filed (if at all) against B&W in the tort system prior to the Petition Date.  If the claim was

not filed against B&W in the tort system prior to the Petition Date, the claimant may elect as the

Claimant's Jurisdiction either (i) the jurisdiction in which the claimant resides at the time of

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

diagnosis or when the claim is filed with the PI Trust; or (ii) a jurisdiction in which the claimant experienced exposure to an asbestos-containing product or to conduct for which B&W has legal responsibility.

>    **5.3(b)(3)    Scheduled, Average and Maximum Values.**  The Scheduled, Average and Maximum Values for claims involving Severe Asbestosis (Disease Level IV) and malignancies (Disease Levels V – VIII) are the following:

| Scheduled Disease | Scheduled Value | Average Value | Maximum Value |
|---|---|---|---|
| Mesothelioma (Level VIII) | $90,000 | $120,000 | $400,000 |
| Lung Cancer 1 (Level VII) | $35,000 | $ 45,000 | $150,000 |
| Lung Cancer 2 (Level VI) | None | $ 15,000 | $ 50,000 |
| Other Cancer (Level V) | $18,500 | $ 22,500 | $ 75,000 |
| Severe Asbestosis (Level IV) | $35,000 | $ 37,000 | $150,000 |

These Scheduled Values, Average Values and Maximum Values shall apply to all PI Trust Voting Claims other than Pre-Petition Liquidated Claims filed with the PI Trust on or before the Initial Claims Filing Date as provided in Section 5.1 above.  Thereafter, the PI Trust, with the consent of the TAC and the Future Claimants' Representative pursuant to Sections 5.7(b) and 6.6(b) of the PI Trust Agreement, may change these valuation amounts for good cause and consistent with other restrictions on the amendment power.

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

**5.4     Categorizing Claims as Extraordinary and/or Exigent Hardship**

**5.4(a)   Extraordinary Claims**. "Extraordinary Claim" means a PI Trust Claim that otherwise satisfies the Medical Criteria for Disease Levels IV - VIII, and that is held by a claimant whose exposure to asbestos was at least 75% the result of exposure to an asbestos-containing product or to conduct for which B&W has legal responsibility, and in either case there is little likelihood of a substantial recovery elsewhere. All such Extraordinary Claims shall be presented for Individual Review and, if valid, shall be entitled to an award of up to a Maximum Value of five (5) times the Scheduled Value set forth in Section 5.3(b)(3) claims qualifying for Disease Levels IV -V, VII and VIII, and five (5) times the Average Value for claims in Disease Level VI, multiplied by the applicable Payment Percentage.

Any dispute as to Extraordinary Claim status shall be submitted to a special Extraordinary Claims Panel established by the PI Trust with the consent of the TAC and the Future Claimants' Representative. All decisions of the Extraordinary Claims Panel shall be final and not subject to any further administrative or judicial review. An Extraordinary Claim, following its liquidation, shall be placed in the FIFO Queue ahead of all other PI Trust Claims except Exigent Hardship Claims, which shall be first in said Queue, based on its date of liquidation, subject to the Maximum Available Payment and Claims Payment Ratio described above.

**5.4(b)   Exigent Hardship Claims.** At any time the PI Trust may liquidate and pay PI Trust Claims that qualify as Exigent Hardship Claims as defined below. Such claims may be considered separately no matter what the order of processing otherwise would have been under this TDP. An Exigent Hardship Claim, following its liquidation, shall be placed first in the FIFO Payment Queue ahead of all other liquidated PI Trust Claims, subject to the Maximum

- 30 -

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

Available Payment and Claims Payment Ratio described above. A PI Trust Claim qualifies for payment as an Exigent Hardship Claim if the claim meets the Medical/Exposure Criteria for Severe Asbestosis (Disease Level IV) or an asbestos-related malignancy (Disease Levels V-VIII), and the PI Trust, in its sole discretion, determines (a) that the claimant needs financial assistance on an immediate basis based on the claimant's expenses and all sources of available income, and (b) that there is a causal connection between the claimant's dire financial condition and the claimant's asbestos-related disease.

     **5.5**    **Secondary Exposure Claims.**  If a claimant alleges an asbestos-related disease resulting solely from exposure to an occupationally exposed person, such as a family member, the claimant may seek Individual Review of his or her claim pursuant to Section 5.3(b) above. In such a case, the claimant must establish that the occupationally exposed person would have met the exposure requirements under this TDP that would have been applicable had that person filed a direct claim against the PI Trust.  In addition, the claimant with secondary exposure must establish that he or she is suffering from one of the eight Disease Levels described in Section 5.3(b)(3) above or an asbestos-related disease otherwise compensable under this TDP, that his or her own exposure to the occupationally exposed person occurred within the same time frame as the occupationally exposed person was exposed to an asbestos-containing product or to conduct for which B&W has legal responsibility, and that such secondary exposure was a cause of the claimed disease. The proof of claim form included in Attachment B hereto contains an additional section for Secondary Exposure Claims. All other liquidation and payment rights and limitations under this TDP shall be applicable to such claims.

     **5.6**    **Indirect PI Trust Claims.**  Indirect PI Trust Claims asserted against the PI Trust based upon theories of contribution or indemnification under applicable law,

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

shall be treated as presumptively valid and paid by the PI Trust subject to the applicable Payment

Percentage if (a) such claim satisfied the requirements of the Bar Date for such claims

established by the Bankruptcy Court, if applicable, and is not otherwise disallowed by Section

502(e) of the Code, and (b) the holder of such claim (the "Indirect Claimant") establishes to the

satisfaction of the Trustees that (i) the Indirect Claimant has paid in full the liability and

obligation of the Trust to the individual claimant to whom the PI Trust would otherwise have had

a liability or obligation under these Procedures (the "Direct Claimant"), (ii) the Direct Claimant

and the Indirect Claimant have forever and fully released the Trust from all liability to the Direct

Claimant, and (iii) the claim is not otherwise barred by a statute of limitation or repose or by

other applicable law. In no event shall any Indirect Claimant have any rights against the PI Trust

superior to the rights of the related Direct Claimant against the PI Trust, including any rights

with respect to the timing, amount or manner of payment. In addition, no Indirect Claim may be

liquidated and paid in an amount that exceeds what the Indirect Claimant has actually paid the

related Direct Claimant.

Further, the PI Trust shall not pay any Indirect Claimant unless and until the Indirect

Claimant's aggregate liability for the Direct Claimant's claim has been fixed, liquidated and paid

fully by the Indirect Claimant by settlement (with an appropriate full release in favor of the PI

Trust) or a Final Order (as defined in the Plan) provided that such claim is valid under the

applicable state law. In any case where the Indirect Claimant has satisfied the claim of a Direct

Claimant against the PI Trust under applicable law by way of a settlement, the Indirect Claimant

shall obtain for the benefit of the PI Trust a release in form and substance satisfactory to the

Trustees.

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

If an Indirect Claimant cannot meet the presumptive requirements set forth above, including the requirement that the Indirect Claimant provide the PI Trust with a full release of the Direct Claimant's claim, the Indirect Claimant may request that the PI Trust review the Indirect PI Trust Claim individually to determine whether the Indirect Claimant can establish under applicable state law that the Indirect Claimant has satisfied a liability or obligation that the PI Trust would otherwise have to the Direct Claimant. If the Indirect Claimant can show that it has satisfied such a liability or obligation, the PI Trust shall reimburse the Indirect Claimant the amount of the liability or obligation so satisfied, times the then applicable Payment Percentage. However, in no event shall such reimbursement to the Indirect Claimant be greater than the amount to which the Direct Claimant would have otherwise been entitled. Further, the liquidated value of any Indirect PI Trust Claim paid by the PI Trust to an Indirect Claimant shall be treated as an offset to or reduction of the full liquidated value of any PI Trust Claim that might be subsequently asserted by the Direct Claimant against the PI Trust.

Any dispute between the PI Trust and an Indirect Claimant over whether the Indirect Claimant has a right to reimbursement for any amount paid to a Direct Claimant shall be subject to the ADR procedures provided in Section 5.10 below and set forth in Attachment A hereto. If such dispute is not resolved by said ADR procedures, the Indirect Claimant may litigate the dispute in the tort system pursuant to Sections 5.11 above and 7.6 below.

The Trustees may develop and approve a separate proof of claim form for Indirect PI Trust Claims. Indirect PI Trust Claims that have not been disallowed, discharged, or otherwise resolved by prior order of the Bankruptcy Court shall be processed in accordance with procedures to be developed and implemented by the Trustees consistent with the provisions of

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

this Section 5.6, which procedures (a) shall determine the validity, allowability and

enforceability of such claims; and (b) shall otherwise provide the same liquidation and payment

procedures and rights to the holders of such claims as the PI Trust would have afforded the

holders of the underlying valid PI Trust Claims.

> **5.7    Evidentiary Requirements**

> > **5.7(a)    Medical Evidence.**

> > > **5.7(a)(1)    In General.**  All diagnoses of a Disease Level shall be

accompanied by either (i) a statement by the physician providing the diagnosis that at least 10

years have elapsed between the date of first exposure to asbestos or asbestos-containing products

and the diagnosis, or (ii) a history of the claimant's exposure sufficient to establish a 10-year

latency period. A finding by a physician after the Petition Date that a claimant's disease is

"consistent with" or "compatible with" asbestosis will not alone be treated by the PI Trust as a

diagnosis.


> > > **5.7(a)(1)(A) Disease Levels I-IV.  5.7(a)(1)(A).  Disease**

**Levels I-IV.**  Except for claims filed against B&W or any other asbestos defendant in the tort

system prior to the Petition Date, all diagnoses of a non-malignant asbestos-related disease

(Disease Levels I-IV) shall be based in the case of a claimant who was living at the time the

claim was filed, upon a physical examination of the claimant by the physician providing the

diagnosis of the asbestos-related disease.  In addition, all living claimants must provide (i) for

Disease Levels I-III, evidence of Bilateral Asbestos-Related Nonmalignant Disease (as defined

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

in Footnote 3 above); (ii)for Disease Level IV,[6] an ILO reading of 2/1 or greater or pathological

evidence of asbestosis, and (iii) for Disease Levels III and IV, pulmonary function testing.[7]

In the case of a claimant who was deceased at the time the claim was filed, all

diagnoses of a non-malignant asbestos-related disease (Disease Levels I-IV) shall be based upon

either (i) a physical examination of the claimant by the physician providing the diagnosis of the

asbestos-related disease; or (ii)pathological evidence of the non-malignant asbestos-related

disease; or (iii) in the case of Disease Levels I-III, evidence of Bilateral Asbestos-Related

Nonmalignant Disease (as defined in Footnote 3 above), and for Disease Level IV, either an ILO

reading of 2/1 or greater or pathological evidence of asbestosis; and (iv) for either Disease Level

III or IV, pulmonary function testing.

       **5.7(a)(1)(B).  Disease Levels V – VIII.**  All diagnoses of

an asbestos-related malignancy (Disease Levels V – VIII) shall be based upon either (i) a

physical examination of the claimant by the physician providing the diagnosis of the asbestos-

related disease, or (ii) on a diagnosis of such a malignant Disease Level by a board-certified

pathologist.

---

[6]    All diaganoses of Asbestos/Pleural Disease (Disease Levels II and III) not based on pathology shall be presumed to be based on findings of bilateral asbestosis or pleural disease, and all diagnoses of Mesothelioma (Disease Level VIII) shall be presumed to be based on findings that the disease involves a malignancy.  However, the PI Trust may rebut such presumptions.

[7]    "Pulmonary Function Testing" shall mean spirometry testing that is in material compliance with the quality criteria established by the American Thoracic Society ("ATS") and is performed on equipment which is in material compliance with ATS standards for technical quality and calibration.

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

**5.7(a)(1)(C). Treatment of Certain Pre-Petition Claims.** If the holder of a PI Trust Claim that was filed against B&W or any other defendant in the tort system prior to the Petition Date has available a report of a diagnosing physician who conducted a physical examination of the holder as described in Sections 5.7(a)(1)(A), or if the holder has filed such medical evidence with another asbestos-related personal injury settlement trust that requires such evidence, the holder shall provide such medical evidence to the Trust notwithstanding the exception in Sections 5.7(a)(1)(A).

**5.7(a)(2)    Credibility of Medical Evidence.** Before making any payment to a claimant, the PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards. The PI Trust may require the submission of X-rays, CT scans, detailed results of pulmonary function tests, laboratory tests, tissue samples, results of medical examination or reviews of other medical evidence, and may require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods and procedure to assure that such evidence is reliable. Medical evidence (i) that is of a kind shown to have been received in evidence by a state or federal judge at trial, (ii) that is consistent with evidence submitted to B&W to settle for payment similar disease cases prior to B&W's bankruptcy, or (iii) a diagnosis by a physician shown to have previously qualified as a medical expert with respect to the asbestos-related disease in question before a state or federal judge, is presumptively reliable, although the PI Trust may seek to rebut the presumption. In addition, claimants who otherwise meet the requirements of this TDP for payment of a PI Trust Claim shall be paid irrespective of the results in any litigation at anytime between the claimant and any other defendant in the tort system. However, any relevant evidence submitted in a proceeding in the tort system, other than

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

any findings of fact, a verdict, or a judgment, involving another defendant may be introduced by either the claimant or the PI Trust in any Individual Review proceeding conducted pursuant to 5.3(b) or any Extraordinary Claim proceeding conducted pursuant to 5.4(a).

      **5.7(b)    Exposure Evidence.**

      **5.7(b)(1)    In General.** As set forth above in Section 5.3(a)(3), to qualify for any Disease Level, the claimant must demonstrate some exposure to an asbestos-containing product or to conduct for which B&W has legal responsibility. Claims based on conspiracy theories that involve no such B&W exposure or conduct are not compensable under this TDP. To meet the presumptive exposure requirements of Expedited Review set forth in Section 5.3(a)(3) above, the claimant must show (i) for all Disease Levels, B&W Exposure as defined in Section 5.7(b)(3) below prior to December 31, 1982; (ii) for Asbestos/Pleural Disease Level II, six months B&W Exposure prior to December 31, 1982, plus five years cumulative occupational asbestos exposure; and (iii) for Asbestosis/Pleural Disease (Disease Level III), Severe Asbestosis (Disease Level IV), Other Cancer (Disease Level V) or Lung Cancer 1 (Disease Level VII), the claimant must show six months B&W Exposure prior to December 31, 1982, plus Significant Occupational Exposure to asbestos. If the claimant cannot meet the relevant presumptive exposure requirements for a Disease Level eligible for Expedited Review, the claimant may seek Individual Review pursuant to Section 5.3(b) of his or her claim based on exposure to an asbestos-containing product or to conduct for which B&W has legal responsibility.

      **5.7(b)(2)    Significant Occupational Exposure.** "Significant Occupational Exposure" means employment for a cumulative period of at least five years with a

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

minimum of two years prior to December 31, 1982, in an industry and an occupation in which

the claimant (a) handled raw asbestos fibers on a regular basis; (b) fabricated asbestos-containing

products so that the claimant in the fabrication process was exposed on a regular basis to raw

asbestos fibers; (c) altered, repaired or otherwise worked with an asbestos-containing product

such that the claimant was exposed on a regular basis to asbestos fibers; or (d) was employed in

an industry and occupation such that the claimant worked on a regular basis in close proximity to

workers engaged in the activities described in (a), (b) and/or (c).

       **5.7(b)(3)**       **B&W Exposure.** The claimant must demonstrate

meaningful and credible exposure, which occurred prior to December 31, 1982, to asbestos or

asbestos-containing products (including boilers) supplied, specified, manufactured, installed,

maintained, or repaired by B&W and/or any entity, including a B&W contracting unit, for which

B&W has legal responsibility. Working at a site prior to December 31, 1982, in the proximity of

a B&W boiler during a time period in which the PI Trust has established the presence of a B&W

boiler, or in the proximity of the performance of services by a B&W entity, including a B&W

contracting unit, shall constitute presumptive evidence of exposure. For other sites, the PI Trust

shall consider meaningful and credible evidence, including an affidavit of the claimant, by an

affidavit of a co-worker or the affidavit of a family member in the case of a deceased claimant

(providing the PI Trust finds such evidence reasonably reliable), by invoices, employment,

construction or similar records, or by other credible evidence. The PI Trust can also require

submission of other or additional evidence of exposure when it deems such to be necessary. The

specific exposure information required by the PI Trust to process a claim under either Expedited

or Individual Review is set forth on the proof of claim form to be used by the PI Trust, which is

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

attached as Attachment B hereto. The PI Trust can also require submission of other or additional evidence of exposure when it deems such to be necessary.

5.8    **Claims Audit Program.**  The PI Trust, with the consent of the TAC and the Futures Claimants Representative, may develop methods for auditing the reliability of medical evidence, including additional reading of X-rays, CT scans and verification of pulmonary function tests, as well as the reliability of evidence of exposure to asbestos, including exposure to asbestos-containing products manufactured or distributed by B&W prior to December 31, 1982. In the event that the PI Trust reasonably determines that any individual or entity has engaged in a pattern or practice of providing unreliable medical evidence to the Trust, it may decline to accept additional evidence from such provider in the future.

Further, in the event that an audit reveals that fraudulent information has been provided to the PI Trust, the PI Trust may penalize any claimant or claimant's attorney by disallowing the PI Trust Claim or by other means including, but not limited to, requiring the source of the fraudulent information to pay the costs associated with the audit and any future audit or audits, reordering the priority of payment of all affected claimants' PI Trust Claims, raising the level of scrutiny of additional information submitted from the same source or sources, refusing to accept additional evidence from the same source or sources, seeking the prosecution of the claimant or claimant's attorney for presenting a fraudulent claim in violation of 18 U.S.C. §152, and seeking sanctions from the Bankruptcy Court.

5.9    **Second Disease (Malignancy) Claims**.  The holder of a PI Trust Claim involving a non-malignant asbestos-related disease (Disease Levels I through IV) may assert a new PI Trust Claim against the PI Trust for a malignant disease (Disease Levels V – VIII) that is subsequently diagnosed. Any additional payments to which such claimant may be entitled with

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

respect to such malignant asbestos-related disease shall not be reduced by the amount paid for

the non-malignant asbestos-related disease, provided that the malignant disease had not been

diagnosed by the time the claimant was paid with respect to the original claim involving the non-

malignant disease.

    **5.10**    **Arbitration**.

    **5.10(a)**    **Establishment of ADR Procedures.**  The PI Trust, with the consent of

the TAC and the Future Claimants' Representative, shall institute binding and non-binding

arbitration procedures in accordance with the Alternative Dispute Resolution ("ADR") Procedures

included in Attachment A hereto for resolving disputes concerning whether a Pre-Petition

settlement agreement with B&W is binding and judicially enforceable in the absence of a Final

Order of the Bankruptcy Court determining the issue, whether the PI Trust's outright rejection or

denial of a claim was proper, or whether the claimant's medical condition or exposure history

meets the requirements of this TDP for purposes of categorizing a claim involving Disease Levels

I – VIII.  Binding and non-binding arbitration shall also be available for resolving disputes over

the liquidated value of a claim involving Disease Levels IV – VIII.

    In all arbitrations, the arbitrator shall consider the same medical and exposure evidentiary

requirements that are set forth in Section 5.7 above.  In the case of an arbitration involving the

liquidated value of a claim involving Disease Levels IV – VIII, the arbitrator shall consider the

same valuation factors that are set forth in Section 5.3(b)(2) above. With respect to all claims

eligible for arbitration, the claimant, but not the PI Trust, may elect either non-binding or binding

arbitration. The ADR Procedures set forth in Attachment A hereto may be modified by the PI

Trust with the consent of the TAC and the Future Claimants' Representative.

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

     **5.10(b)   Claims Eligible for Arbitration.**  In order to be eligible for arbitration, the claimant must first complete the Individual Review Process with respect to the disputed issue as well as either the Pro Bono Evaluation or the Mediation processes set forth in to the ADR Procedures.  Individual Review will be treated as completed for these purposes when the claim has been individually reviewed by the PI Trust, the PI Trust has made an offer on the claim, the claimant has rejected the liquidated value resulting from the Individual Review, and the claimant has notified the PI Trust of the rejection in writing. Individual Review will also be treated as completed if the PI Trust has rejected the claim.

     **5.10(c)   Limitations on and Payment of Arbitration Awards.**  In the case of a non-Extraordinary claim involving Disease Levels I - III, the arbitrator shall not return an award in excess of the Scheduled Value for such claim.  In the case of a non-Extraordinary Claim involving Disease Levels IV -- VIII, the arbitrator shall not return an award in excess of the Maximum Value for the appropriate Disease Level as set forth in Section 5.3(a)(3) above, and for an Extraordinary Claim involving one of those Disease Levels, the arbitrator shall not return an award greater than the Maximum Extraordinary Value for such a claim as set forth in Section 5.4(a) above.  A claimant who submits to arbitration and who accepts the arbitral award will receive payments in the same manner as one who accepts the Trust's original valuation of the claim.

     **5.11   Litigation.**  Claimants who elect non-binding arbitration and then reject their arbitral awards retain the right to institute a lawsuit in the tort system against the PI Trust pursuant to Section 7.6 below. However, a claimant shall be eligible for payment of a judgment for monetary damages obtained in the tort system from the PI Trust's available cash only as provided in Section 7.7 below.

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

## SECTION VI

### Claims Materials

**6.1**    **Claims Materials.**  The PI Trust shall prepare suitable and efficient claims

materials ("Claims Materials") for all PI Trust Claims, and shall provide such Claims Materials

upon a written request for such materials to the PI Trust. The proof of claim form to be submitted

to the PI Trust shall require the claimant to assert the highest Disease Level for which the claim

qualifies at the time of filing. The proof of claim form shall also include a certification by the

claimant or his or her attorney sufficient to meet the requirements of Rule 11(b) of the Federal

Rules of Civil Procedure. In developing its claim filing procedures, the PI Trust shall make every

effort to provide claimants with the opportunity to utilize currently available technology at their

discretion, including filing claims and supporting documentation over the internet and

electronically by disk or CD-rom. A copy of the proof of claim form to be used by the PI Trust

for Pre-Petition Liquidated Claims and unliquidated PI Trust Claims is included in Attachment B

hereto. The proof of claim form may be changed by the PI Trust with the consent of the TAC and

the Future Claimants' Representative.

**6.2**    **Content of Claims Materials.**  The Claims Materials shall include a copy of this

TDP, such instructions as the Trustees shall approve, and a detailed proof of claim form.  If

feasible, the forms used by the PI Trust to obtain claims information shall be the same or

substantially similar to those used by other asbestos claims resolution organizations.  Instead of

collecting some or all of the claims information from a claimant or the claimant's attorney, the PI

Trust may also obtain such information from electronic data bases maintained by any other

asbestos claims resolution organization.  However, the PI Trust shall inform the claimant that it

plans to obtain information as available from such other organizations and may do so unless the

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

claimant objects in writing or provides such information directly to the PI Trust.  If requested by the claimant, the PI Trust shall accept information provided electronically.  The claimant may, but will not be required to, provide the PI Trust with evidence of recovery from other asbestos defendants and claims resolution organizations.

6.3      **Withdrawal or Deferral of Claims**.  A claimant can withdraw a PI Trust Claim at any time upon written notice to the PI Trust and file another claim subsequently without affecting the status of the claim for statute of limitations purposes, but any such claim filed after withdrawal shall be given a place in the FIFO Processing Queue based on the date of such subsequent filing. A claimant can also request that the processing of his or her PI Trust Claim by the PI Trust be deferred for a period not to exceed three (3) years without affecting the status of the claim for statute of limitation purposes, in which case the claimant shall also retain his or her original place in the FIFO Processing Queue. Except for PI Trust Claims held by representatives of deceased or incompetent claimants for which court or probate approval of the PI Trust's offer is required, or a PI Trust Claim for which deferral status has been granted, a claim will be deemed to have been withdrawn if the claimant neither accepts, rejects, nor initiates arbitration within six months of the PI Trust's offer of payment or rejection of the claim.  Upon written request and good cause, the PI Trust may extend the withdrawal or deferral period for an additional six months.

6.4      **Filing Requirements and Fees**. The Trustees shall have the discretion to determine, with the consent of the TAC and the Futures Representative, (a) whether a claimant must have previously filed a PI Trust Claim in the tort system to be eligible to file the claim with the PI Trust and (b) whether a filing fee should be required for any PI Trust claims.

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

## SECTION VII

### General Guidelines for Liquidating and Paying Claims

7.1     **Showing Required.**  To establish a valid PI Trust Claim, a claimant must meet

the requirements set forth in this TDP. The PI Trust may require the submission of X-rays, CT

scans, laboratory tests, medical examinations or reviews, other medical evidence, or any other

evidence to support or verify the claim, and may further require that medical evidence submitted

comply with recognized medical standards regarding equipment, testing methods, and

procedures to assure that such evidence is reliable.

7.2     **Costs Considered.**  Notwithstanding any provisions of this TDP to the contrary,

the Trustees shall always give appropriate consideration to the cost of investigating and

uncovering invalid PI Trust Claims so that the payment of valid PI Trust Claims is not further

impaired by such processes with respect to issues related to the validity of the medical evidence

supporting a PI Trust Claim.  The Trustees shall also have the latitude to make judgments

regarding the amount of transaction costs to be expended by the PI Trust so that valid PI Trust

Claims are not unduly further impaired by the costs of additional investigation.  Nothing herein

shall prevent the Trustees, in appropriate circumstances, from contesting the validity of any

claim against the PI Trust whatever the costs, or to decline to accept medical evidence from

sources that the Trustees have determined to be unreliable pursuant to the Claims Audit Program

described in Section 5.7 above.

7.3     **Discretion to Vary the Order and Amounts of Payments in Event of Limited**

**Liquidity.**  Consistent with the provisions hereof and subject to the FIFO Processing and

Liquidation Queues, the Maximum Annual Payment, the Maximum Available Payment and the

Claims Payment Ratio requirements set forth above, the Trustees shall proceed as quickly as

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

possible to liquidate valid PI Trust Claims, and shall make payments to holders of such claims in accordance with this TDP promptly as funds become available and as claims are liquidated, while maintaining sufficient resources to pay future valid claims in substantially the same manner.

Because the PI Trust's income over time remains uncertain, and decisions about payments must be based on estimates that cannot be done precisely, they may have to be revised in light of experiences over time, and there can be no guarantee of any specific level of payment to claimants. However, the Trustees shall use their best efforts to treat similar claims in substantially the same manner, consistent with their duties as Trustees, the purposes of the PI Trust, the established allocation of funds to claims in Categories A and B, and the practical limitations imposed by the inability to predict the future with precision.

In the event that the PI Trust faces temporary periods of limited liquidity, the Trustees may, with the consent of the TAC and the Future Claimants' Representative, suspend the normal order of payment and may temporarily limit or suspend payments altogether, and may offer a Reduced Payment Option as described in Section 2.5 above.

7.4    **Punitive Damages.**  In determining the value of any liquidated or unliquidated PI Trust Claim, punitive or exemplary damages, i.e., damages other than compensatory damages, shall not be considered or allowed, notwithstanding their availability in the tort system.

7.5    **Interest.**

7.5(a)    **In General.**  Except for any PI Trust Claim involving Other Asbestos Disease (Disease Level I – Cash Discount Payment) and subject to the limitations set forth below, interest shall be paid on all PI Trust Claims with respect to which the claimant has had to wait a year or more for payment, provided, however, that no claimant shall receive interest for a

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

period in excess of seven (7) years. The applicable interest rate shall be six percent (6%) simple

interest per annum for each of the first five (5) years after the Effective Date; thereafter, the PI

Trust shall have the discretion to change the annual interest rate with the consent of the TAC and

the Future Claimants' Representative.

        **7.5(b)**     **Unliquidated PI Trust Claims.** Interest shall be payable on the

Scheduled Value of any unliquidated PI Trust Claim that meets the requirements of Disease

Levels II –V, VII and VIII, whether the claim is liquidated under Expedited Review, Individual

Review, or by arbitration. No interest shall be paid on any claim liquidated in the tort system

pursuant to section 5.11 above and 7.6 below. Interest on an unliquidated PI Trust Claim that

meets the requirements of Disease Level VI shall be based on the Average Value of such a claim.

Interest on all such unliquidated claims shall be measured from the date of payment back to the

earliest of the date that is one year after the date on which (a) the claim was filed against B&W

prior to the Petition Date; (b) the claim was filed against another defendant in the tort system on

or after the Petition Date but before the Effective Date; (c) the claim was filed with the

Bankruptcy Court during the pendency of the Chapter 11 proceeding; or (d) the claim was filed

with the PI Trust after the Effective Date.

        **7.5(c)**     **Liquidated Pre-Petition Claims.** Interest shall also be payable on the

liquidated value of all Pre-Petition Liquidated Claims described in Section 5.2(a) above. In the

case of Pre-Petition Liquidated Claims liquidated by verdict or judgment, interest shall be

measured from the date of payment back to the date that is one year after the date that the verdict

or judgment was entered. In the case of Pre-Petition Liquidated Claims liquidated by a binding,

judicially enforceable settlement, interest shall be measured from the date of payment back to the

date that is one year after the Petition Date.

EXHIBIT C TO PLAN -- ASBESTOS PI TDP

**7.6     Suits in the Tort System.**  If the holder of a disputed claim disagrees with the PI

Trust's determination regarding the Disease Level of the claim, the claimant's exposure history

or the liquidated value of the claim, and if the holder has first submitted the claim to non-binding

arbitration as provided in Section 5.10 above, the holder may file a lawsuit in the Claimant's

Jurisdiction as defined in Section 5.3(b)(2) above.  Any such lawsuit must be filed by the

claimant in her or her own right and name and not as a member or representative of a class, and

no such lawsuit may be consolidated with any other lawsuit.  All defenses (including, with

respect to the PI Trust, all defenses which could have been asserted by B&W) shall be available

to both sides at trial; however, the PI Trust may waive any defense and/or concede any issue of

fact or law. If the claimant was alive at the time the initial pre-petition complaint was filed or on

the date the proof of claim form was filed with the PI Trust, the case will be treated as a personal

injury case with all personal injury damages to be considered even if the claimant has died

during the pendency of the claim.

**7.7     Payment of Judgments for Money Damages.**  If and when a claimant obtains a

judgment in the tort system, the claim shall be placed in the FIFO Payment Queue based on the

date on which the judgment became final.  Thereafter, the claimant shall receive from the PI Trust

an initial payment (subject to the applicable Payment Percentage, the Maximum Available

Payment, and the Claims Payment Ratio provisions set forth above) of an amount equal to one-

hundred percent (100%) of the greater of (i) the PI Trust's last offer to the claimant or (ii) the

award that the claimant declined in non-binding arbitration.  The claimant shall receive the

balance of the judgment, if any, in five equal installments in years six (6) through ten (10)

following the year of the initial payment (also subject to the applicable Payment Percentage, the

Maximum Available Payment and the Claims Payment Ratio provisions above).

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

In the case of non-Extraordinary claims involving Disease Levels I, II and III, the total amounts paid with respect to such claims shall not exceed the relevant Scheduled Value for such Disease Levels as set forth in Section 5.3(b)(3) above. In the case of claims involving a non-malignant asbestos-related disease that does not attain classification under Disease Levels I, II or III, the amount payable shall not exceed the Scheduled Value for the Disease Level most comparable to the disease proven. In the case of non-Extraordinary claims involving severe asbestosis and malignancies (Disease Levels IV – VIII), the total amounts paid with respect to such claims shall not exceed the Maximum Values for such Disease Levels set forth in Section 5.3(b)(3). In the case of Extraordinary Claims, the total amounts paid with respect to such claims shall not exceed the Maximum Value for such claims set forth in Section 5.4(a) above. Under no circumstances shall interest be paid pursuant to Section 7.5 or under any statute on any judgments obtained in the tort system.

      **7.8**    **Releases.** The Trustees shall have the discretion to determine the form and substance of the releases to be provided to the PI Trust in order to maximize recovery for claimants against other tortfeasors without increasing the risk or amount of claims for indemnification or contribution from the PI Trust. As a condition to making any payment to a claimant, the PI Trust shall obtain a general, partial, or limited release as appropriate in accordance with the applicable state or other law. If allowed by state law, the endorsing of a check or draft for payment by or on behalf of a claimant shall constitute such a release.

      **7.9**    **Third-Party Services**. Nothing in this TDP shall preclude the PI Trust from contracting with another asbestos claims resolution organization to provide services to the PI Trust so long as decisions about the categorization and liquidated value of PI Trust Claims are

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

based on the relevant provisions of this TDP, including the Disease Levels, Scheduled Values,

Average Values, Maximum Values, and Medical/Exposure Criteria set forth above.

     **7.10    PI Trust Disclosure of Information.**    Periodically, but not less often than once a

year, the PI Trust shall make available to claimants and other interested parties, the number of

claims by disease levels that have been resolved both by the Individual Review Process and by

arbitration as well as by litigation in the tort system indicating the amounts of the awards and the

averages of the awards by jurisdiction.

**SECTION VIII**

**<u>Miscellaneous</u>**

     **8.1    Amendments.**    Except as otherwise provided herein, the Trustees may amend,

modify, delete, or add to any provisions of this TDP (including, without limitation, amendments

to conform this TDP to advances in scientific or medical knowledge or other changes in

circumstances), provided they first obtain the consent of the TAC and the Future Claimants'

Representative pursuant to the Consent Process set forth in Sections 5.7(b) and 6.6(b) of the PI

Trust Agreement, except that the right to amend the Claims Payment Ratio is governed by the

restrictions in Section 2.5 above, and the right to adjust the Payment Percentage is governed by

Section 4.2 above.

     **8.2    Severability.**    Should any provision contained in this TDP be determined to be

unenforceable, such determination shall in no way limit or affect the enforceability and operative

effect of any and all other provisions of this TDP. Should any provision contained in this TDP be

determined to be inconsistent with or contrary to B&W's obligations to any insurance company

providing insurance coverage to B&W in respect of claims for personal injury based on exposure

to an asbestos-containing product or to conduct for which B&W has legal responsibility, the PI

**EXHIBIT C TO PLAN -- ASBESTOS PI TDP**

Trust with the consent of the TAC and the Future Claimants' Representative may amend this TDP and/or the PI Trust Agreement to make the provisions of either or both documents consistent with the duties and obligations of B&W to said insurance company.

      **8.3**    **Governing Law.** Except for purposes of determining the liquidated value of any PI Trust Claim, administration of this TDP shall be governed by, and construed in accordance with, the laws of the State of Delaware. The law governing the liquidation of PI Trust Claims in the case of Individual Review, arbitration or litigation in the tort system shall be the law of the Claimant's Jurisdiction as described in Section 5.3(b)(2) above.