# Exhibit E

# DII INDUSTRIES, LLC ASBESTOS PI TRUST
# TRUST DISTRIBUTION PROCEDURES

The DII Industries, LLC Asbestos PT Trust Distribution Procedures ("TDP") contained herein provide for resolving all Asbestos PI Trust Claims (including so-called "premises liability" claims) for which a Halliburton Entity or a Harbison-Walker Entity has legal responsibility, as provided in and required by the Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code ("Plan") and the DII Industries, LLC Asbestos PT Trust Agreement (the "Asbestos PT Trust Agreement"). The Plan and Asbestos PT Trust Agreement establish the DII Industries, LLC Asbestos PI Trust (the "Asbestos PI Trust"). The Trustees shall implement and administer this TDP in accordance with the Asbestos PT Trust Agreement. Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Uniform Glossary of Defined Terms for Plan Documents attached as Exhibit A to the Disclosure Statement, as amended and filed of record.

## SECTION 1

## Introduction

### 1.1    Purpose

This TDP has been adopted pursuant to the Asbestos PT Trust Agreement. It is designed to provide fair, equitable, and substantially similar treatment for all Asbestos PI Trust Claims that may presently exist or may arise in the future.

### 1.2    Interpretation

Nothing in this TDP shall be deemed to create a substantive right for any claimant.

## SECTION 2

## Overview

### 2.1    Asbestos PI Trust Goals

The goal of the Asbestos PI Trust is to treat all claimants equitably and in accordance with the requirements of section 524(g) of the Bankruptcy Code. This Asbestos TDP furthers that goal by setting forth procedures for processing and paying claims generally on an impartial, first-in-first-out ("FIFO") basis, with the intention of paying all claimants over time as equivalent a share as possible of the value of their claims based on historical values for substantially similar claims in the tort system.[1]' To this end, the Asbestos TDP establishes a single schedule of eight asbestos-related diseases ("Disease Levels"), seven of which have presumptive medical and

---

[1] As used in this Asbestos TDP, the phrase "in the tort system" shall include only claims asserted by way of litigation and not claims asserted against a trust established pursuant to section 524(g) and/or section 105 of the Bankruptcy Code or any other applicable law.

exposure requirements ("Medical/Exposure Criteria") and specific liquidated values ("Scheduled Values"), and five of which have both anticipated average values ("Average Values") and caps on their liquidated values ("Maximum Values"). The Disease Levels, Medical/Exposure Criteria, Scheduled Values, Average Values, and Maximum Values, set forth in sections 5.3 and 5.4 below, have been selected and derived with the intention of achieving a fair allocation of the Asbestos PT Trust funds as among claimants suffering from different disease processes in light of the best available information considering the settlement history of the Halliburton Entities and the Harbison-Walker Entities and the rights claimants would have in the tort system absent the Reorganization Cases.

A claimant may assert separate Asbestos PI Trust Claims against the Asbestos PI Trust based on exposure to asbestos or asbestos-containing products manufactured or distributed by more than one of the Halliburton Entities or the Harbison-Walker Entities (the "Multiple Exposure Claims"); provided however, that all such Multiple Exposure Claims must be filed by the claimant at the same time. To the extent that the Asbestos PT Trust has separate liabilities to a single claimant based on Multiple Exposure Claims, the Asbestos PI Trust shall pay the claimant its several share of the liquidated value of each of the separate claim or claims for which it is liable, subject to the applicable Payment Percentage and Maximum Annual Payment, and Claims Payment Ratio limitations, if any, set forth below. Under no circumstances, however, shall any claimant receive more than the full liquidated value of each of one Harbison-Walker Asbestos PI Trust Claim and one Non-Harbison-Walker Asbestos PI Trust Claim (as defined in section 5 .3(a)(3) below) as such value(s) is (are) determined under this TDP.

## 2.2    Asbestos PI Trust Claim Liquidation Procedures

Asbestos PT Trust Claims shall be processed based on their place in the FIFO Processing Queues to be established pursuant to section 5.1(a) and section 5.2 below. The Asbestos PI Trust shall take all reasonable steps to resolve Asbestos PI Trust Claims as efficiently and expeditiously as possible at each stage of claims processing and arbitration, which steps may include conducting settlement discussions with claimants' representatives of more than one claim at a time. The Asbestos PI Trust also shall make every effort to resolve each year at least that number of Asbestos PT Trust Claims required to exhaust the Maximum Annual Payment and the Maximum Available Payment, as those terms are defined below.

The Asbestos PI Trust shall process and liquidate all Asbestos PT Trust Claims, other than Qualifying Settled Asbestos PI Trust Claims and Asbestos Final Judgment Claims, pursuant to the relevant provisions of this TDP. Qualifying Settled Asbestos PT Trust Claims shall be processed and paid solely pursuant to the Plan, the Asbestos PI Trust Funding Agreement, and section 5.2(a) below. Asbestos Final Judgment Claims shall be processed and paid pursuant to section 5.2(b) below.

Asbestos PI Trust Claims, other than foreign claims, that meet the presumptive Medical/Exposure Criteria of Disease Levels I—V, VII, and VIII shall be processed and paid under the Expedited Review process described in section 5.3(a) herein. Asbestos PI Trust Claims involving Disease Levels I—V. VII, and VIII that do not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level may undergo the Asbestos PT Trust's

Individual Review process described in section 5.3(b). In such a case, notwithstanding that the claim does not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level, the Asbestos PI Trust can offer the claimant an amount up to the Scheduled Value of that Disease Level, if the Asbestos PI Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system.

Asbestos PI Trust Claims involving Disease Levels IV—VIII tend to raise more complex valuation issues than the Asbestos PI Trust Claims in Disease Levels I—Ill. Accordingly, claimants holding claims involving these Disease Levels may in addition or alternatively seek to establish a liquidated value for the claim that is greater than its Scheduled Value by electing the Asbestos Ph Trust's Individual Review process. However, the liquidated value of a more serious Disease Level IV, V. VII, or VIII claim that undergoes the Individual Review process for valuation purposes may be determined to be less than its Scheduled Value and, in any event, shall not exceed the Maximum Value for the relevant Disease Level set forth in sections 5.3(b)(3) and 5.3(b)(4) below, unless the claim qualifies as an Extraordinary Claim as defined in section 5.4(a) below, in which case its liquidated value cannot exceed the Maximum Value specified in that provision for such claims. Disease Level VI (Lung Cancer 2) claims and all foreign claims may be liquidated only pursuant to the Asbestos PI Trust's Individual Review process.

Based upon the Halliburton Entities' and the Harbison-Walker Entities' claims settlement history in light of applicable tort law, and current projections of present and future unliquidated claims, the Scheduled Values and Maximum Values set forth in sections 5.3(b)(3) and 5.3(b)(4) have been established for each of the (5) five more serious Disease Levels that are eligible for Individual Review of their liquidated values, with the expectation that the combination of settlements at the Scheduled Values and those resulting from the Individual Review process will result in the Average Values also set forth in that provision.

All unresolved disputes over a claimant's medical condition, exposure history, and/or the liquidated value of the Asbestos PI Trust Claim shall be subject to binding or nonbinding arbitration as set forth in section 5.10 below, at the election of the claimant, under the ADR Procedures that are provided in Attachment A hereto. Disputes over whether an Asbestos PT Trust Claim is an Asbestos Final Judgment Claim shall also be resolved pursuant to the ADR Procedures attached hereto. Asbestos PT Trust Claims that are the subject of a dispute with the Asbestos PT Trust which cannot be resolved by such ADR Procedures, including nonbinding arbitration, may enter the tort system as provided in sections 5.11 and 7.6 below. However, if and when a claimant obtains a judgment in the tort system, the judgment will be payable (subject to the Payment Percentage, Maximum Available Payment, and Claims Payment Ratio provisions set forth below) as provided in section 7.7.

Disputes over whether an Asbestos PI Trust Claim is a Qualifying Settled Asbestos PI Trust Claim will be resolved solely pursuant to the terms of the applicable Asbestos PI Trust Claimant Settlement Agreement and the Plan.

### 2.3    Asbestos PI Trust Application of the Payment Percentage

After the Liquidated Amount of an Asbestos PT Trust Claim, other than a claim involving Other Asbestos Disease (Disease Level I) as defined in section 5.3(a)(3), is determined pursuant to the procedures set forth herein for Expedited Review, Individual Review, arbitration, litigation in the tort system, or by settlement, the claimant will ultimately receive a pro-rata share of that value based on the Payment Percentage described in section 4.2.

As defined in the Plan, the Payment Percentage (a) shall be the Initial Payment Percentage with respect to all Qualifying Settled Asbestos PT Trust Claims and Asbestos Final Judgment Claims and (b) the Payment Percentage selected by the Trustees of the Asbestos PT Trust with consent of the Legal Representative with respect to all claims liquidated under the Asbestos TDP (other than claims paid as claims for Disease Level I (Other Asbestos Disease)); provided, however, that the Payment Percentage shall not exceed the Initial Payment Percentage prior to the first (1st) anniversary of the Effective Date. The Payment Percentage for Disease Level I shall be 100%. The Payment Percentage may be adjusted upwards or downwards from time to time by the Asbestos PT Trust with the consent of the Asbestos TAC and the Legal Representative to reflect then-current estimates of the Asbestos Ph Trust's assets and its liabilities, as well as the estimated value of then-pending and future claims. The Trustees will calculate the Payment Percentage based on the assumption that the Average Values set forth in sections 5.3(b)(3) and 5.3(b)(4) will be achieved by the Asbestos PT Trust with respect to existing present claims and projected future claims involving Disease Levels IV—VIII. However, any adjustment to the Payment Percentage shall be made only pursuant to section 4.2. If the Payment Percentage is increased over time, claimants (i) whose claims are subject to the Payment Percentage, (ii) whose claims were liquidated under the Asbestos TDP or who hold Asbestos Final Judgment Claims, and (iii) who were paid in prior periods under the Asbestos TDP, will not receive additional payments except as provided in section 4.2 relating to circumstances in which the Asbestos PI Trust has received additional contributions under the Asbestos PI Trust Additional Funding Agreement. Because there is uncertainty in the prediction of both the number and severity of future claims and the amount of the Asbestos PI Trust's assets, no guarantee can be made of the Payment Percentage that will be applied to a particular Asbestos PI Trust Claim.

**2.4    Asbestos PT Trust's Determination of the Maximum Annual Payment and Maximum Available Payment**

The Asbestos PI Trust shall estimate or model the amount of cash flow anticipated to be necessary over its entire life to ensure that funds will be available to treat all present and future claimants in a substantially similar manner. In each year, the Asbestos PI Trust will be empowered to pay out all of the interest earned during the year, together with a portion of its principal, calculated so that the application of Asbestos PI Trust funds over its life shall correspond with the needs created by the anticipated flow of claims (the "Maximum Annual Payment") taking into account the Payment Percentage provisions set forth in sections 2.3 above and 4.2 below. The Asbestos PI Trust's distributions to all claimants for that year shall not exceed the Maximum Annual Payment determined for that year; provided, however, that the Maximum Annual Payment limitation shall not apply to any Qualifying Settled Asbestos PI Trust Claims as defined in section 5.2(a).

In distributing the Maximum Annual Payment, the Asbestos PI Trust shall first allocate the amount in question to Asbestos Final Judgment Claims and to liquidated Asbestos PI Trust Claims involving Disease Level I (Cash Discount Payment). Asbestos Final Judgment Claims and liquidated Disease Level I claims for which there are insufficient funds shall be carried over to the next year and placed at the head of the FIFO Payment Queue. In any given year, after payment of all outstanding Asbestos Final Judgment Claims and Disease Level I Claims, the remaining portion of the Maximum Annual Payment (the "Maximum Available Payment"), if any, shall then be allocated and used to satisfy all other liquidated Asbestos PI Trust Claims, subject to the Claims Payment Ratio, if any, set forth in section 2.5 below.

**2.5     Asbestos PI Trust Claims Payment Ratio and Reduced Payment Option**

In the event the Payment Percentage is less than 100%, the Asbestos PI Trust shall implement a payment ratio (the "Claims Payment Ratio") to control the distribution of Asbestos Ph Trust funds between Category A claims, which consist of Asbestos PI Trust Claims involving severe asbestosis and malignancies (Disease Levels IV—VIII), that were unliquidated as of the DII Industries Petition Date, and Category B claims, which are Asbestos PT Trust Claims involving non-malignant Asbestosis or Pleural Disease (Disease Levels II and III) that were similarly unliquidated as of the DII Industries Petition Date. Based on the Halliburton Entities' and the Harbison-Walker Entities' settlement history and analysis of present and future claims, the Claims Payment Ratios initially established by the Asbestos PI Trust shall be 60% for Category A claims and 40% for Category B claims. In no event shall the Claims Payment Ratio apply to any Qualifying Settled Asbestos PI Trust Claim, to any Asbestos Final Judgment Claim, or to any claims for Other Asbestos Disease (Disease Level I).

In the event the Asbestos PT Trust implements a Claims Payment Ratio in each year, after the annual determination of the Maximum Available Payment described in section 2.4 above, 60% of that amount will be available to Category A claims and 40% will be available to pay Category B claims.

In the event the Asbestos PI Trust implements a Claims Payment Ratio and there are insufficient funds in any year to pay the liquidated claims within either or both of the Categories, the available funds allocated to the particular Category shall be paid to the maximum extent to claimants in that Category based on their place in the FIFO Payment Queue described in section 5.1(c) below based upon the date of claim liquidation. Claims for which there are insufficient funds allocated to the relevant Category shall be carried over to the next year where they will be placed at the head of the FIFO Payment Queue. If there are excess funds in either or both Categories, because there is an insufficient amount of liquidated claims to exhaust the respective Maximum Available Payment amount for that Category, then the excess funds for either or both Categories will be rolled over and remain dedicated to the respective Category to which they were originally allocated.

Prior to any amendment to the Claims Payment Ratio (except to the extent the Payment Percentage is adjusted upward to 100%, in which case the Trustees may suspend the use of the Claims Payment Ratio), the Trustees must obtain the consent of the Asbestos TAC and the Legal

Representative. However, the Trustees at any time may offer the option of a reduced payment percentage to either category in return for prompter payment (the "Reduced Payment Option").

### 2.6    Asbestos PI Trust Indemnity and Contribution Claims

Indirect Asbestos PI Trust Claims based on indemnity, contribution, or other theory of reimbursement, if any, shall be subject to the provisions of section 5.6 below.

## SECTION 3

## TDP Administration

### 3.1    Asbestos TAC and Legal Representative

Pursuant to the Plan and the Asbestos PI Trust Agreement, the Asbestos PI Trust and this TDP shall be administered by the Trustees in consultation with the Asbestos TAC and the Legal Representative. The Trustees shall obtain the consent of the Asbestos TAC and the Legal Representative on any amendments to this TDP pursuant to section 8.1 below, and on such other matters as are otherwise required below and in section 2.2(f) of the Asbestos PT Trust Agreement. The Trustees shall also consult with the Asbestos TAC and the Legal Representative on such matters as are provided below and in section 2.2(e) and (1) of the Asbestos PT Trust Agreement. The initial members of the Asbestos TAC and the initial Legal Representative are identified in the Asbestos PT Trust Agreement.

### 3.2    Consultation Procedures

In those circumstances in which their consultation or consent is required, the Trustees will provide written notice to the Asbestos TAC and the Legal Representative of the specific amendment or other action that is proposed. The Trustees will not implement such amendment nor take such action unless and until the parties have engaged in the Consultation Process described in sections 5.7(a) and 6.6(a), or the Consent Process described in sections 5.7(b) and 6.6(b) of the Asbestos PT Trust Agreement, respectively.

## SECTION 4

## Payment Percentage; Periodic Estimates

### 4.1    Uncertainty of the Halliburton Entities' and the Harbison-Walker Entities' Asbestos Personal Injury Liabilities

As discussed herein, there is inherent uncertainty regarding the Halliburton Entities' and the Harbison-Walker Entities' total asbestos-related tort liabilities, as well as the total value of the assets available to the Asbestos PI Trust to pay Asbestos PI Trust Claims. Consequently, there is inherent uncertainty regarding the amounts that holders of those Asbestos PT Trust Claims will receive. To seek to ensure substantially equivalent treatment of all present and future claims, the Trustees shall determine from time to time the percentage of full liquidated value that holders of present and future Asbestos PI Trust Claims will be likely to receive from the

Asbestos PI Trust, i.e., the "Payment Percentage" described in section 2.3 above and section 4.2 below.

## 4.2   Payment Percentage

The Payment Percentage (as defined in the Plan) shall apply to all payments made from the Asbestos PI Trust, other than payments made on account of claims involving Other Asbestos Disease (Disease Level I), to assure that such Asbestos PT Trust will be in a financial position to pay holders of present and future Asbestos PT Trust Claims in substantially the same manner. Any subsequent changes to the Payment Percentage shall require the consent of the Asbestos TAC and the Legal Representative. The Payment Percentage shall be subject to change pursuant to the terms of this Asbestos TDP and the Asbestos PT Trust if the Trustees determine that an adjustment is required. No less frequently than once every three (3) years, commencing with the first day of January occurring after the Plan is consummated, the Trustees shall reconsider the then-applicable Payment Percentage to assure that it is based on accurate, current information and may, after such reconsideration, change the Payment Percentage, if necessary, with the consent of the Asbestos TAC and the Legal Representative. The Trustees also shall reconsider the then-applicable Payment Percentage at shorter intervals if they deem such reconsideration to be appropriate or if requested to do so by the Asbestos TAC or the Legal Representative. The Trustees must base their determination of the Payment Percentage on current estimates of the number, types, and values of present and future Asbestos PI Trust Claims, the value of the assets then available to the Asbestos PI Trust for their payment, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of Asbestos PT Trust funds to pay a comparable percentage of full value to all holders of Asbestos PT Trust Claims. When making these determinations, the Trustees shall exercise common sense and shall flexibly evaluate all relevant factors.

The uncertainty surrounding the amount of the Asbestos PT Trust's future assets is due in part to the fact that the Asbestos PT Trust may receive additional contributions under the Asbestos PI Trust Additional Funding Agreement. Any additional contributions will be used first to maintain the then-applicable Payment Percentage.

However, if the additional contributions exceed the amount estimated to be reasonably necessary to maintain the Payment Percentage then in effect, the Asbestos PT Trust, with the consent of the Asbestos TAC and the Legal Representative, shall adjust the Payment Percentage upward to reflect the increase in available assets and shall also make supplemental payments to claimants who previously liquidated their claims against the Asbestos PI Trust and received payments based on a lower Payment Percentage. The amount of any such supplemental payment shall be the liquidated value of the claim in question times the newly adjusted Payment Percentage, less all amounts previously paid the claimant with respect to the claim. In no event shall the Asbestos PI Trust make such supplemental payments to holders of Qualifying Settled Asbestos PT Trust Claims.

## 4.3   Applicability of the Payment Percentage

Except as otherwise provided in section 5.1(c) below for Asbestos PI Trust Claims involving deceased or incompetent claimants for which approval of the Asbestos PT Trust's offer by a court or through a probate process is required, no holder of any other Asbestos PI Trust Claim, other than an Asbestos PT Trust Claim for Other Asbestos Disease (Disease Level I), shall receive from the Asbestos PI Trust a payment that exceeds the Liquidated Amount of the claim times the Payment Percentage in effect at the time of payment unless a Reduced Payment Option applies. Asbestos PT Trust Claims involving Other Asbestos Disease (Disease Level 1) shall not be subject to the Payment Percentage, but shall instead be paid the full amount of their Scheduled Value as set forth in section 5.3(a)(3) below.

If a redetermination of the Payment Percentage has been proposed in writing by the Trustees to the Asbestos TAC and the Legal Representative but has not yet been adopted, the claimant shall receive the lower of the current Payment Percentage or the proposed Payment Percentage. However, if the proposed Payment Percentage was the lower amount but is not subsequently adopted, the claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount. Conversely, if the proposed Payment Percentage was the higher amount and is subsequently adopted, the claimant shall thereafter receive the difference between the lower current amount and the higher adopted amount.

## SECTION 5

### Resolution of Asbestos PI Trust Claims

**5.1     Ordering, Processing, and Payment of Claims**

**5.1(a)  Ordering of Claims**

**5.1(a)(1)   Establishment of the FIFO Processing Queue**

Other than Qualifying Settled Asbestos PI Trust Claims, which are addressed in section 5.2, the Asbestos PT Trust will order claims that are sufficiently complete to be reviewed for processing purposes on a FIFO basis, except as otherwise provided herein (the "FTFO Processing Queue"). For all claims filed on or before the date six months after the DII Industries Effective Date (the "Initial Claims Filing Date"), a claimant's position in the FIFO Processing Queue shall be determined as of the earlier of(i) the date prior to December_, 2003 (the "DII Industries Petition Date") that the specific claim was either filed against one or more of the Halliburton Entities or the Harbison-Walker Entities in the tort system or was actually submitted to one or more of the Halliburton Entities or the Harbison-Walker Entities pursuant to an administrative settlement agreement, (ii) the date before the DII Industries Petition Date that a claim was filed against another defendant in the tort system if at the time the claim was subject to a tolling agreement with one or more of the Halliburton Entities or the Harbison-Walker Entities, (iii) the date after the DII Industries Petition Date (if any) but before the Effective Date of the Plan (the "DII Industries Effective Date") that the claim was filed against another defendant in the tort system, or (iv) the date after the DII Industries Effective Date but on or before the Initial Claims Filing Date that the claim was filed with the Asbestos PI Trust. Following the Initial Claims Filing Date, the claimant's position in the FIFO Processing Queue shall be determined by

the date the claim was filed with the Asbestos PI Trust. If any claims are filed on the same date, the claimant's position in the FIFO Processing Queue shall be determined by the date of the diagnosis of the asbestos-related disease. If any claims are filed and diagnosed on the same date, the claimant's position in the FIFO Processing Queue shall be determined by the claimant's date of birth, with older claimants given priority over younger claimants.

### 5.1(a)(2)   Effect of Statutes of Limitations and Repose

To be eligible for a place in the FIFO Processing Queue, a claim must meet either (i) for claims first filed in the tort system against one or more of the Halliburton Entities or the Harbison-Walker Entities prior to the DII Industries Petition Date, the applicable federal, state, and foreign statute of limitation and repose that was in effect at the time of the filing of the claim in the tort system or (ii) for claims not filed against one or more of the Halliburton Entities or the Harbison-Walker Entities in the tort system prior to the DII Industries Petition Date, the applicable statute of limitation that was in effect at the time of the filing with Asbestos PT Trust. However, the running of the relevant statute of limitation shall be tolled as of the earliest of (A) the actual filing of the claim against one or more of the Halliburton Entities or the Harbison-Walker Entities prior to the DII Industries Petition Date, whether in the tort system or by submission of the claim to one or more of the Halliburton Entities or the Harbison-Walker Entities pursuant to an administrative settlement agreement; (B) the filing of the claim against another defendant in the tort system prior to the DII Industries Petition Date if the claim was tolled against one or more of the Halliburton Entities or the Harbison-Walker Entities at the time by an agreement or otherwise; (C) the filing of a claim after the DII Industries Petition Date but prior to the DII Industries Effective Date against another defendant in the tort system; and (D) the filing of a proof of claim with the requisite supporting documentation with the Asbestos PI Trust after the DII Industries Effective Date.

If an Asbestos PI Trust Claim meets any of the tolling provisions described in the preceding sentence and the claim was not barred by the applicable federal, state, or foreign statute of limitation at the time of the tolling event, it will be treated as timely filed if it is actually filed with the Asbestos PT Trust within three (3) years after the DII Industries Effective Date. In addition, any claims that were first diagnosed after the DII Industries Petition Date, irrespective of the application of any relevant federal, state, or foreign statute of limitation or repose, may be filed with the Asbestos PT Trust within three (3) years after the date of diagnosis or within three (3) years after the DII Industries Effective Date, whichever occurs later. However, the processing of any Asbestos PI Trust Claim by the Asbestos PT Trust may be deferred at the election of the claimant pursuant to section 6.3.

### 5.1(b)  Processing of Claims

As a general practice, the Asbestos PI Trust will review its claims files on a regular basis and notify all claimants whose claims are likely to come up in the FIFO Processing Queue in the near future.

### 5.1(c)  Payment of Claims

Asbestos PI Trust Claims that have been liquidated by the Asbestos Trust's Expedited Review process ("Expedited Review") as provided in section 5.3(a) below, by the Asbestos Trust's Individual Review process ("Individual Review") as provided in section 5.3(b) below, by arbitration as provided in section 5.10 below, or by litigation in the tort system provided in sections 5.11 and section 7.6 below shall be paid in FIFO order based on the date their liquidation became final (the "FIFO Payment Queue"), all such payments being subject to the applicable Payment Percentage, the Maximum Annual Payment, the Maximum Available Payment, and, if any, the Claims Payment Ratio, except as otherwise provided herein. Qualifying Settled Asbestos PT Trust Claims shall be paid solely pursuant to the Plan, the Asbestos PT Trust Funding Agreement, and section 5.2(a) below. Asbestos Final Judgment Claims shall be paid solely pursuant to section 5.2(b) below.

Where the claimant is deceased or incompetent, and the settlement and payment of his or her claim must be approved by a court of competent jurisdiction or through a probate process prior to acceptance of the claim by the claimant's representative, an offer made by the Asbestos PI Trust on the claim shall remain open so long as proceedings before that court or in that probate process remain pending, provided that the Asbestos PI Trust has been furnished with evidence that the settlement offer has been submitted to such court or in the probate process for approval. If the offer is ultimately approved by the court or through the probate process or accepted by the claimant's representative, the Asbestos PT Trust shall pay the claim in the amount so offered, multiplied by the Payment Percentage in effect at the time the offer was first made.

If any claims are liquidated on the same date, the claimant's position in the FIFO Payment Queue shall be determined by the date of the diagnosis of the claimant's asbestos-related disease. If any claims are liquidated on the same date and the respective holders' asbestos-related diseases were diagnosed on the same date, the position of those claims in the FIFO Payment Queue shall be determined by the Asbestos PI Trust based on the dates of the claimants' birth, with older claimants given priority over younger claimants.

## 5.2    Resolution of Liquidated Asbestos PI Trust Claims.

### 5.2(a)    Qualifying Settled Asbestos PT Trust Claims.

Qualifying Settled Asbestos PI Trust Claims shall be paid by the Asbestos PT Trust pursuant to the terms of the Plan and the Asbestos PT Trust Funding Agreement. Any dispute concerning whether a Settled Asbestos PI Trust Claim is a Qualifying Settled Asbestos PT Trust Claim shall be resolved between the claimant and the Debtors or Reorganized Debtors solely in accordance with the applicable Asbestos Claimant Settlement Agreement and the Plan. The Asbestos PI Trust shall not participate in such dispute and shall have no responsibility to pay a Settled Asbestos PI Trust Claim that has not been determined in accordance with the terms of the applicable Asbestos Claimant Settlement Agreement and the Plan to be a Qualifying Settled Asbestos PI Trust Claim; provided, however, that nothing in this section 5.2(a) shall preclude the holder of an alleged Settled Asbestos PT Trust Claim that is determined not to be a Qualifying Settled Asbestos PI Trust Claim from submitting an Asbestos PI Trust Claim to the Asbestos PT Trust. Qualifying Settled Asbestos PT Trust Claims shall not be subject to the Payment

0

Percentage, Maximum Annual Payment, Maximum Available Payment or Claims Payment Ratio, if any, limitations provided above.

### 5.2(b)  Asbestos Final Judgment Claims

Asbestos Final Judgment Claims as defined in the Plan shall be processed by the Asbestos PI Trust based on their place in a separate FTFO queue to be established for such claims. The placement of such claims in the FIFO queue shall be based on the date on which the claim was liquidated by a final judgment in the tort system. The Liquidated Amount of such claims shall be the amount of the judgment plus any interest on the claim that has accrued under applicable state law. All payments of Asbestos Final Judgment Claims shall be subject to the applicable Payment Percentage and the Maximum Annual Payment provisions set forth above. Such claims, however, shall not be subject to the Maximum Available Payment or Claims Payment Ratio, if any, limitations.

### 5.3    Resolution of Unliquidated Asbestos PI Trust Claims

Within six months after the establishment of the Asbestos PI Trust, the Trustees, with the consent of the Asbestos TAC and the Legal Representative, shall adopt procedures for reviewing and liquidating all unliquidated Asbestos PT Trust Claims, which shall include deadlines for processing such claims. Such procedures shall also require that claimants seeking resolution of unliquidated Asbestos PI Trust Claims first file a proof of claim form, together with the required supporting documentation, in accordance with the provisions of sections 6.1 and 6.2 below. It is anticipated that the Asbestos PT Trust shall provide an initial response to the claimant within six months of receiving the proof of claim form.

The proof of claim form shall require the claimant to assert his or her claim for the highest Disease Level for which the claim qualifies at the time of filing. Irrespective of the Disease Level alleged on the proof of claim form, all claims shall be deemed to be a claim for the highest Disease Level for which the claim qualifies at the time of filing, and all lower Disease Levels for which the claim may also qualify at the time of filing or in the future shall be treated as subsumed into the higher Disease Level for both processing and payment purposes.

Upon filing of a valid proof of claim form with the required supporting documentation, the claimant shall be placed iii the FIFO Processing Queue in accordance with the ordering criteria described in section 5.1(a) above. The Asbestos PT Trust shall provide the claimant with six-months notice of the date by which it expects to reach the claim in the FIFO Processing Queue, following which the claimant shall promptly (i) advise the Asbestos PI Trust whether the claim should be liquidated under the Asbestos PI Trust's Expedited Review process described in section 5.3(a) below or, in certain circumstances, under the Asbestos PI Trust's Individual Review process described in section 5.3(b) below; (ii) provide the Asbestos PT Trust with any additional medical and/or exposure evidence that was not provided with the original claim submission; and (iii) advise the Asbestos PT Trust of any change in the claimant's Disease Level. If a claimant fails to respond to the Asbestos PI Trust's notice prior to the reaching of the claim in the FIFO Processing Queue, the Asbestos PI Trust will process and liquidate the claim under the Expedited Review process based upon the medical/exposure evidence previously

1

submitted by the claimant, although the claimant shall retain the right to request Individual Review as described in section 5.3(b) below.

### 5.3(a)  Expedited Review Process

#### 5.3(a)(1)  In General

Expedited Review is designed primarily to provide an expeditious, efficient, and inexpensive method for liquidating all claims (except those involving Lung Cancer 2—Disease Level VI) where the claim can easily be verified by the Asbestos PT Trust as meeting the presumptive Medical/Exposure Criteria for the relevant Disease Level. Expedited Review thus provides claimants with a substantially less burdensome process for pursuing Asbestos PI Trust Claims than does the Individual Review process described in section 5.3(b) below. Expedited Review is also intended to provide qualifying claimants a fixed and certain claims payment. Thus, claims that undergo Expedited Review and meet the presumptive Medical/Exposure Criteria for the relevant Disease Level shall be paid the Scheduled Value for such Disease Level set forth in section 5.3(a)(3) below. However, except for claims involving Other Asbestos Disease (Disease Level I—Cash Discount Payment), all claims liquidated by Expedited Review shall be subject to the applicable Payment Percentage, the Maximum Available Payment, and, if any, the Claims Payment Ratio limitations set forth above. Claimants holding claims that cannot be liquidated by Expedited Review because they do not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level may elect Individual Review set forth in section 5.3(b) below.

#### 5.3(a)(2)  Claims Processing under Expedited Review

All claimants seeking liquidation of their claims pursuant to Expedited Review shall file the Asbestos PI Trust's proof of claim form provided in Attachment B hereto. As a proof of claim form is reached in the FIFO Processing Queue, the Asbestos PI Trust shall determine whether the claim described therein meets the Medical/Exposure Criteria for one of the seven Disease Levels eligible for Expedited Review and shall advise the claimant of its determination. If a Disease Level is determined, the Asbestos PI Trust shall tender to the claimant an offer of payment of the Scheduled Value for the relevant Disease Level multiplied by the applicable Payment Percentage, together with a form of release approved by the Asbestos PT Trust. If the claimant accepts the Scheduled Value and returns the release properly executed, the claim shall be placed in the FIFO Payment Queue, following which the Asbestos PT Trust shall disburse payment subject to the limitations of the Maximum Available Payment and Claims Payment Ratio, if any.

#### 5.3(a)(3)  Disease Levels, Scheduled Values, and Medical/Exposure Criteria

The eight Disease Levels covered by this TDP, together with the Medical/Exposure Criteria for each and the separate Scheduled Values for the unliquidated Asbestos PT Trust Claims for which any of the Harbison-Walker Entities have legal responsibility (the "Harbison-Walker Asbestos PT Trust Claims") and for the unliquidated Asbestos PI Trust Claims for which

2

any of the Halliburton Entities or their predecessors other than Harbison-Walker Entities (the "Non Harbison-Walker Asbestos PT Trust Claims") have legal responsibility for the seven Disease Levels eligible for Expedited Review, are set forth below. For those claimants who (i) vote to accept or reject the plan and (ii) file their claims with the Asbestos PI Trust on or before the Initial Claims Filing Date provided in section 5.1 above, these Disease Levels, Scheduled Values, and Medical/Exposure Criteria shall apply to all Asbestos PI Trust Claims (except Qualifying Settled Asbestos PI Trust Claims) for which the claimant elects Expedited Review. Thereafter for purposes of administering Expedited Review and with the consent of the Asbestos TAC and the Legal Representative, the Trustees may add to, change, or eliminate Disease Levels, Scheduled Values, or Medical/Exposure Criteria, develop subcategories of Disease Levels, Scheduled Values, or Medical/Exposure Criteria, or determine that a novel or exceptional asbestos personal injury claim is compensable even though it does not meet the Medical/Exposure Criteria for any of the then-current Disease Levels.

**[Remainder of page intentionally left blank]**

**Schedule 1—Non-Harbison-Walker Asbestos PI Trust Claims and Harbison-Walker Asbestos PI Trust Claims**

| Disease Level | Non-Harbison-Walker Asbestos PI Trust Claims/Harbison-Walker Asbestos PI Trust Claims | Medical Exposure Criteria |
|---|---|---|
| Mesothelioma (Level VIII) | $21,500/ $51,300 | (1) Diagnosis[2] of mesothelioma and (2) credible evidence of Company Exposure[3] as defined in section 5.7(c) |
| Lung Cancer 1 (Level VII) | $3,500/ $16,900 | (1) Diagnosis of a primary lung cancer plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease,[4] (2) six months Company Exposure prior to December 31, 1982, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. |
| Lung Cancer 2 (Level VI) | N/A | (1) Diagnosis of a primary lung cancer, (2) Company Exposure prior to December 31, 1982, and (3) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. |

Lung Cancer 2 (Level VI) claims are claims that do not meet the more stringent medical and/or exposure requirements of Lung Cancer (Level VII) claims. All claims in this Disease Level will be individually evaluated. The estimated likely average of the individual evaluation awards for this category is $1,500 (Non-Harbison-Walker Asbestos PI Trust Claims)/$7,200 (Harbison-Walker Asbestos PI Trust Claims), with such awards capped at $5,000 (Non-Harbison-Walker Asbestos PI Trust Claims)! $24,000 (Harbison-Walker Asbestos PT Trust Claims) unless the claim qualifies for Extraordinary Claim treatment. Level VI claims that

---

[2] The requirements for a diagnosis of an asbestos-related disease that may be compensated under the provisions of this TDP are set forth in Section 5.7 below.

[3] The term "Company Exposure" is defined in section 5.7(c) below.

[4] Evidence of "Bilateral Asbestos-Related Nonmalignant Disease" for purposes of meeting the criteria for establishing Disease Levels I, II, III, V, and VII, means either (i) a chest X-ray read by a qualified B reader of 1/0 or higher on the ILO scale or (ii)(x) a chest X-ray read by a qualified B reader, (y) a CT scan read by a qualified physician, or (z) pathology, in each case showing either bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification. Solely for claims filed against the Halliburton Entities and/or the Harbison-Walker Entities or another asbestos defendant in the tort system prior to the DII Industries Petition Date, if an TLO reading is not available, either (i) a chest X-ray or a CT scan read by a qualified physician, or (ii) pathology, in each case showing bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification consistent with or compatible with a diagnosis of asbestos-related disease, shall be evidence of a "Bilateral Asbestos-Related Nonmalignant Disease" for purposes of meeting the presumptive medical requirements of Disease Levels I, TI, ITT, V, and VII. Pathological evidence of asbestosis may be based on the pathological grading system for asbestosis described in the Special Issue of the Archives of Pathology and Laboratory Medicine, "Asbestos-Associated Diseases," Vol. 106, No. 11, App. 3 (October 8, 1982).

show no evidence of either an underlying Bilateral Asbestos-Related Non-malignant Disease or Significant Occupational Exposure may be individually evaluated, although it is not expected that such claims will be treated as having any significant value, especially if the claimant is also a Smoker.[5]  In any event, no presumption of validity will be available for any claims in this category.

| | | |
|---|---|---|
| Other Cancer (Level V) | $3,000/ $9,000 | (1) Diagnosis of a primary cob-rectal, laryngeal, esophageal, pharyngeal, or stomach cancer, plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease, (2) six months Company Exposure prior to December 31, 1982, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the other cancer in question. |
| Severe Asbestosis (Level IV) | $3,500/ $11,000 | (1) Diagnosis of asbestosis with ILO of 2/1 or greater, or asbestosis determined by pathological evidence of asbestosis[6], plus (a) TLC less than 65% or (b) FVC less than (Level IV) 65% and FEV1/FVC ratio greater than 65%, (2) six (6) months Company Exposure prior to December 31, 1982, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
| Asbestosis/ Pleural Disease (Level III) | $900/ $2,700 | (1) Diagnosis of Bilateral Asbestos-Related Nonmalignant Disease, plus (a) TLC less than 80% or (b) FVC less than 80% and FEV1/FVC ratio greater than 65%, (2) six months Company Exposure prior to December 31, 1982, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
| Asbestosis/ Pleural Disease (Level II) | $400/ $1,400 | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease, (2) six months Company Exposure, and (3) five years cumulative occupational exposure to asbestos. |
| Other Asbestos Disease (Level I) | $100/ $300 | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease or an asbestos-related malignancy other than mesothelioma and (2) Company Exposures prior to December 31, 1982. |

---

[5] There is no distinction between Non-Smokers and Smokers for either Lung Cancer I (Level VII) or Lung Cancer 2 (Level VI), although a claimant who meets the more stringent requirements of Lung Cancer 1 (Level VII) (evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease plus Significant Occupational Exposure), and who is also a Non-Smoker, may wish to have his or her claim individually evaluated by the PI Trust. In such a case, absent circumstances that would otherwise reduce the value of the claim, it is anticipated that the liquidated value of the claim might well exceed the Scheduled Value for Lung Cancer I (Level VII) shown above. "Non-Smoker" means a claimant who either (a) never smoked or (b)has not smoked during any portion of the twelve (12) years immediately prior to the diagnosis of the lung cancer.

[6] Proof of asbestosis may be based on the pathological grading system for asbestosis described in the Special Issue of the Archives of Pathology and Laboratory Medicine, "Asbestos-Associated Diseases," Vol. 106, No. 11, App. 3 (October 8, 1982).

**5.3(b)  Individual Review Process**

### 5.3(b)(1)   In General

Subject to the provisions set forth below, an Asbestos PT Trust claimant may elect to have his or her Asbestos PI Trust Claim reviewed for purposes of determining whether the claim would be compensable in the tort system even though it does not meet the presumptive Medical/Exposure Criteria for any of the Disease Levels set forth in section 5.3(a)(3) above. In addition, or alternatively, an Asbestos PI Trust claimant may elect to have a claim undergo the Individual Review process for purposes of determining whether the liquidated value of the claim exceeds the Scheduled Value for the relevant Disease Level also set forth in said provision. However, until such time as the Asbestos PI Trust has made an offer on a claim pursuant to Individual Review, the claimant may change his or her Individual Review election and have the claim liquidated pursuant to the Asbestos PT Trust's Expedited Review process. In the event of such a change in the processing election, the claimant shall nevertheless retain his or her place in the FIFO Processing Queue.

The liquidated value of all foreign claims shall be established pursuant to the Asbestos PI Trust's Individual Review process. In reviewing foreign claims, the Asbestos PT Trust shall take into account all relevant procedural and substantive legal rules to which the claims would be subject in the Claimant's Jurisdiction as defined in section 5 .3(b)(2) below. The Asbestos PI Trust shall determine the liquidated value of foreign claims based on historical settlements and verdicts in the Claimant's Jurisdiction as well as the other valuation factors set forth in section 5.3(b)(2) below.

For purposes of the Individual Review process, the Trustees, with the consent of the Asbestos TAC and the Legal Representative, may develop separate Medical/Exposure Criteria and standards, as well as separate requirements for physician and other professional qualifications, which shall be applicable to foreign claims; provided, however, that such criteria, standards, or requirements shall not effectuate substantive changes to the claims-eligibility requirements under this Asbestos TDP, but rather shall be made only for the purpose of adapting those requirements to the particular licensing provisions and/or medical customs or practices of the foreign country in question.

At such time as the Asbestos PI Trust has sufficient historical settlement, verdict, and other valuation data for claims from a particular foreign jurisdiction, the Trustees, with the consent of the Asbestos TAC and the Legal Representative, may also establish a separate valuation matrix for such claims based on that data.

### 5.3(b)(1)(A)   Disease Levels I-Ill

Individual Review provides a claimant with an opportunity for individual consideration and evaluation of an Asbestos PI Trust Claim that fails to meet the presumptive Medical/Exposure Criteria for Disease Levels I—Ill. In such a case, the Asbestos PI Trust shall either deny the claim, or, if the Asbestos PT Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system, the Asbestos PT Trust can offer the claimant a liquidated value amount up to the Scheduled Value for that Disease Level, unless the

claim qualifies as an Extraordinary Claim as defined in section 5.4(a) below, in which case its liquidated value cannot exceed the Maximum Value for such a claim set forth in that provision.

### 5.3(b)(1)(B)    Disease Levels IV-VIII

Claimants holding claims in the five more serious Disease Levels IV—VIII shall be eligible to seek Individual Review of the liquidated value of their claims, as well as of their medical/exposure evidence. The Individual Review process is intended to result in payments equal to the full liquidated value for each claim multiplied by the Payment Percentage; however, the liquidated value of any Asbestos PT Trust Claim that undergoes Individual Review may be determined to be less than the Scheduled Value the claimant would have received under Expedited Review. Moreover, the liquidated value for a claim involving Disease Levels IV—VIII shall not exceed the Maximum Value for the relevant Disease Level set forth in section 5.3(b)(3) below, unless the claim meets the requirements of an Extraordinary Claim described in section 5.4(a) below, in which case its liquidated value cannot exceed the Maximum Value set forth in that provision for such claims. Because the detailed examination and valuation process pursuant to Individual Review requires substantial time and effort, claimants electing to undergo the Individual Review process will ordinarily be paid the liquidated value of their Asbestos PT Trust Claims later than would have been the case had the claimant elected the Expedited Review process.

### 5.3(b)(2)    Valuation Factors to be Considered in Individual Review

The Asbestos PT Trust shall liquidate the value of each Asbestos PI Trust Claim that undergoes Individual Review based on the historic liquidated values of other similarly situated claims in the tort system for the same Disease Level. The Asbestos PI Trust will thus take into consideration all of the factors that affect the severity of damages and values within the tort system including, but not limited to: (i) the degree to which the characteristics of a claim differ from the presumptive Medical/Exposure Criteria for the Disease Level in question; (ii) factors such as the claimant's age, disability, employment status, disruption of household, family, or recreational activities, dependencies, special damages, and pain and suffering; (iii) evidence that the claimant's damages were (or were not) caused by asbestos exposure, including Company Exposure as defined in section 5.7(c) below prior to December 31, 1982 (for example, alternative causes and the strength of documentation of injuries); (iv) the industry of exposure; and (v) settlements, verdicts, and the claimant's and other law firms' experience in the Claimant's Jurisdiction for similarly situated claims.

For these purposes, the "Claimant's Jurisdiction" is the jurisdiction in which the claim was filed (if at all) against one or more of the Halliburton Entities or the Harbison-Walker Entities in the tort system prior to the DII Industries Petition Date. If the claim was not filed against one or more of the Halliburton Entities or the Harbison-Walker Entities in the tort system prior to the DII Industries Petition Date, the claimant may elect as the Claimant's Jurisdiction either (i) the jurisdiction in which the claimant resides at the time of diagnosis or when the claim is filed with the Asbestos PI Trust or (ii) a jurisdiction in which the claimant experienced exposure to an asbestos-containing product or to conduct for which any of the Halliburton Entities or the Harbison-Walker Entities has legal responsibility.

### 5.3(b)(3)   Scheduled, Average, and Maximum Values (Non-Harbison-Walker Asbestos PI Trust Claims)

The Scheduled, Average, and Maximum Values for all Asbestos PI Trust Claims other than Harbison-Walker Asbestos PI Trust Claims involving Severe Asbestosis (Disease Level IV) and malignancies (Disease Levels V-VIII) are the following:

| Scheduled Disease | Scheduled Value | Average Value[7] | Maximum Value |
|---|---|---|---|
| Mesothelioma (Level VIII)............................................ | $21,500 | $28,700 | $95,700 |
| Lung Cancer 1 (Level VII) ........................................... | $3,500 | $4,500 | $15,000 |
| Lung Cancer 2 (Level VI)............................................. | N/A | $1,500 | $5,000 |
| Other Cancer (Level V) ............................................... | $3,000 | $3,700 | $12,300 |
| Severe Asbestos (Level IV) .......................................... | $3,500 | $3,700 | $15,000 |

The Asbestos PI Trust, after consultation with the Asbestos TAC and the Legal Representative pursuant to sections 5.7(b) and 6.6(b) of the Asbestos PI Trust Agreement, may change these valuation amounts for good cause.

### 5.3(b)(4)   Scheduled, Average, and Maximum Values (Harbison-Walker Asbestos PI Trust Claims)

The Scheduled, Average, and Maximum Values for all Harbison-Walker Asbestos PT Trust Claims involving Severe Asbestosis (Disease Level TV) and malignancies (Disease Levels V-VIII) are the following:

| Scheduled Disease | Scheduled Value | Average Value[8] | Maximum Value |
|---|---|---|---|
| Mesothelioma (Level VIII)........................................... | $51,300 | $68,400 | $228,000 |
| Lung Cancer 1 (Level VII) ........................................... | $16,900 | $21,700 | $72,300 |
| Lung Cancer 2 (Level VI)............................................. | N/A | $7,200 | $24,000 |
| Other Cancer (Level V) ............................................... | $9,000 | $10,900 | $36,300 |
| Severe Asbestos (Level IV) .......................................... | $11,000 | $11,600 | $47,000 |

The Asbestos PT Trust, with the consent of the Asbestos TAC and the Legal Representative pursuant to sections 5.7(b) and 6.6(b) of the Asbestos PI Trust Agreement, may change these valuation amounts for good cause and consistent with other restrictions on the amendment power.

---

[7] The Trustee, in evaluating these Asbestos PI Trust Claims, shall use their best effort such that the amounts offered through Individual Review for each Disease Level shall annually arithmetically average the "Average Value" per claim set forth herein.

[8] The Trustee, in evaluating these Asbestos PI Trust Claims, shall use their best effort such that the amounts offered through Individual Review for each Disease Level shall annually arithmetically average the "Average Value" per claim set forth herein.

**5.4**      **Categorizing Claims as Extraordinary and/or Exigent Hardship**

     **5.4(a)   Extraordinary Claims**

     "Extraordinary Claim" means an Asbestos PI Trust Claim that otherwise satisfies the Medical Criteria for Disease Levels IT-VIII and that is held by a claimant whose exposure to asbestos (i) occurred primarily as a result of working in manufacturing facilities of one or more of the Halliburton Entities or the Harbison-Walker Entities or their predecessors during a period in which the Halliburton Entities or the Harbison-Walker Entities were manufacturing asbestos-containing products at the facility, provided that the claim is a tort claim that is not otherwise barred by a statutory workers' compensation program, or (ii) was at least 75% the result of Company Exposure as defined in section 5.7(c) below, and there is little likelihood of a substantial recovery elsewhere. All such Extraordinary Claims shall be presented for Individual Review and, if valid, shall be entitled to an award of up to (i) for Disease Levels II-V, VII, and VIII, five (5) times the Scheduled Value for such claims and (ii) for Disease Level VI, five (5) times the Average Value for such claims, multiplied by the applicable Payment Percentage.

     Any dispute as to Extraordinary Claim status shall be submitted to a special Extraordinary Claims Panel established by the Asbestos PI Trust with the consent of the Asbestos TAC and the Legal Representative. All decisions of the Extraordinary Claims Panel shall be final and not subject to any further administrative or judicial review.

     An Extraordinary Claim, following its liquidation, shall be placed in the FIFO Payment Queue ahead of all other Asbestos PI Trust Claims except Exigent Hardship Claims, Disease Level I (Other Asbestos Disease) Claims, and Asbestos Final Judgment Claims, which shall be first in said queue based on its date of liquidation, subject to the Maximum Available Payment and Claims Payment Ratio described above.

     **5.4(b)   Exigent Hardship Claims**

     At any time the Asbestos PI Trust may liquidate and pay Asbestos PI Trust Claims that qualify as Exigent Hardship Claims as defined below. Such claims may be considered separately no matter what the order of processing otherwise would have been under this TDP. An Exigent Hardship Claim, following its liquidation, shall be placed first in the FIFO Payment Queue ahead of all other liquidated Asbestos PI Trust Claims, except Disease Level I (other Asbestos Disease) Claims and Asbestos Final Judgment Claims, subject to the Maximum Available Payment and Claims Payment Ratio described above. An Asbestos PI Trust Claim qualifies for payment as an Exigent Hardship Claim if the claim meets the Medical/Exposure Criteria for Severe Asbestosis (Disease Level IV) or an asbestos-related malignancy (Disease Levels V-VIII) and the Asbestos PI Trust, in its sole discretion, determines (a) that the claimant needs financial assistance on an immediate basis based on the claimant's expenses and all sources of available income and (b) that there is a casual connection between the claimant's dire financial condition and the claimant's asbestos-related disease ("Exigent Hardship Claims").

     **5.5**      **Secondary Exposure Claims**

If a claimant alleges an asbestos-related disease resulting solely from exposure to an occupationally exposed person, such as a family member, the claimant may seek Individual Review of his or her claim pursuant to section 5.3(b) above. In such a case, the claimant must establish that the occupationally exposed person would have met the exposure requirements under this TDP that would have been applicable had that person filed a direct claim against the Asbestos PI Trust. In addition, the claimant with secondary exposure must establish (a) that he or she is suffering from one of the eight Disease Levels described in section 5 .3(b)(3) above or an asbestos-related disease otherwise compensable under this TDP, (b) that his or her own exposure to the occupationally exposed person occurred within the same time frame as the occupationally exposed person experienced Company Exposure as defined in section 5.7(c)(l) below, and (c) that such secondary exposure to such occupationally exposed person was a cause of the claimed disease. The proof of claim form included in Attachment B hereto contains an additional section for such secondary exposure claims. All other liquidation and payment rights and limitations under this TDP shall be applicable to such claims.

### 5.6    Indirect Asbestos F! Trust Claims

#### 5.6(a)  In General

Except as provided in section 5.6(b) below, Indirect Asbestos PI Trust Claims that are asserted against the Asbestos PT Trust based upon theories of contribution or indemnification under applicable law may not be processed or paid by the Asbestos PI Trust unless the holder of such claim (the "Indirect Asbestos Claimant") establishes to the satisfaction of the Trustees that (a) the Indirect Asbestos Claimant has paid in full obligations that the Asbestos PI Trust otherwise would have had to an individual claimant (the "Direct Asbestos Claimant"), (b) the Asbestos PT Trust has been or shall be forever and fully released from all liability to both the Direct Asbestos Claimant and the Indirect Asbestos Claimant, and (c) the claim is not otherwise barred by a statute of limitation, repose, or other applicable non-bankruptcy law. In no event shall any Indirect Asbestos Claimant have any rights against the Asbestos PI Trust superior to the rights of the related Direct Asbestos Claimant against the Asbestos PT Trust, including any rights with respect to the timing, amount, or manner of payment; provided, however, that, in addition, no Indirect Asbestos PT Trust Claim may be liquidated and paid in an amount that exceeds the lesser of (a) the amount the Direct Asbestos Claimant would have been entitled to recover from the Asbestos PT Trust or (b) the amount that the Indirect Asbestos Claimant has actually paid the related Direct Asbestos Claimant.  Except as maybe permitted after individual review, the Asbestos PT Trust shall not pay any Indirect Asbestos Claimant unless and until the Indirect Asbestos Claimant's aggregate liability for the Direct Asbestos Claimant's claim has been fixed, liquidated, and paid by the Indirect Asbestos Claimant by settlement (with an appropriate full release in favor of the Asbestos PT Trust) or a Final Order provided that such claim is valid under the applicable non-bankruptcy law. In any case where the Indirect Asbestos Claimant has satisfied the claim of a Direct Asbestos Claimant against the Asbestos PT Trust under applicable law by way of a settlement, the Indirect Asbestos Claimant shall obtain for the benefit of the Asbestos PI Trust a release in form and substance satisfactory to the Trustees. The liquidated value of any Indirect Asbestos PI Trust Claim paid by the Asbestos PI Trust to an Indirect Asbestos Claimant shall be treated as an offset to or reduction of the full liquidated value of any Asbestos PI Trust Claim that might be subsequently asserted by the Direct Asbestos Claimant against the Asbestos PI Trust.

If an Indirect Asbestos Claimant cannot meet the presumptive requirements set forth above, including the requirement that the Indirect Asbestos Claimant provide the Asbestos PT Trust with a full release of the Direct Asbestos Claimant's claim, the Indirect Asbestos Claimant may request that the Asbestos PI Trust review the Indirect Asbestos PI Trust Claim under its Individual Review Process to determine whether the Indirect Asbestos Claimant can establish under applicable law that the Indirect Asbestos Claimant has paid a liability or obligation that the Asbestos PI Trust would otherwise have to the Direct Asbestos Claimant. If the Indirect Asbestos Claimant can show that it has paid such a liability or obligation, the Asbestos PT Trust shall reimburse the Indirect Asbestos Claimant the amount of the liability or obligation so satisfied subject to the terms and provisions of the Asbestos TDP. However, in no event shall such reimbursement to the Indirect Asbestos Claimant be greater than the amount to which the Direct Asbestos Claimant would have otherwise been entitled.

Any dispute between the Asbestos PT Trust and an Indirect Asbestos Claimant over whether the Indirect Asbestos Claimant has a right to reimbursement for any amount paid to a Direct Asbestos Claimant shall be subject to the ADR procedures provided in section 5.10 below and set forth in Attachment A hereto. If such dispute is not resolved by said ADR procedures, the Indirect Asbestos Claimant may litigate the dispute in a judicial forum pursuant to sections 5.11 and 7.6 below. The Trustees may develop and approve a separate proof of claim form for such Indirect Asbestos PT Trust Claims.

Indirect Asbestos PI Trust Claims shall be processed in accordance with procedures to be developed and implemented by the Trustees, which procedures (a) shall determine the validity and enforceability of such claims and (b) shall otherwise provide the same liquidation and payment procedures and rights to the holders of such claims as the Asbestos PI Trust would have afforded the holders of the underlying valid Asbestos PI Trust Claims. Nothing in this Asbestos TDP is intended to preclude a trust to which asbestos-related liabilities are channeled from asserting an Indirect Asbestos PI Trust Claim against the Asbestos PI Trust subject to the requirements set forth herein.

### 5.6(b)  Certain Indemnification Claims.

In the case of a claim for indemnification that has been channeled to the Asbestos PT Trust pursuant to Article 10.3(a) of the Plan and that involves an underlying liability that is asserted by current or past employee of a Halliburton Entity or a Harbison-Walker Entity against an indemnitee that is not directly assertable against a Halliburton Entity or Harbison-Walker Entity, the rights of the indemnitee Indirect Asbestos Claimant shall be coextensive with both the rights the employee would have had against the Asbestos PI Trust had the underlying related claim been compensable under this Asbestos TDP and with the limitations to which such claim would have been subject under this Asbestos TDP concerning the time and manner of its processing and payment.

Notwithstanding anything to the contrary in this section 5.6, the Asbestos PI Trust shall not assert as a defense to an Indirect Asbestos PI Trust Claim brought by an indemnitee covered by this provision that the Asbestos PT Trust does not have liability to such indemnitee on the grounds that the current or former employee of a Halliburton Entity or Harbison-Walker Entity

would have been precluded from asserting the underlying related claim against the Asbestos PI Trust.

### 5.7    Evidentiary Requirements

#### 5.7(a)  Medical Evidence

##### 5.7(a)(1)   In General

All diagnoses of a Disease Level shall be accompanied by either (i) a statement by the physician providing the diagnosis that at least ten (10) years have elapsed between the date of first exposure to asbestos or asbestos-containing products and the diagnosis or (ii) a history of the claimant's exposure sufficient to establish a ten (10)-year latency period. A finding by a physician that a claimant's disease is "consistent with" or "compatible with" asbestosis will not alone be treated by the Asbestos PI Trust as a diagnosis.

##### 5.7(a)(1)(A)    Disease Levels I-IV

Except for claims filed against the Halliburton Entities and/or the Harbison-Walker Entities or another asbestos defendant in the tort system prior to the DII Industries Petition Date, all diagnoses of a non-malignant asbestos-related disease (Disease Levels I—IV) shall be based, in the case of a claimant who was living at the time the claim was filed, upon a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease. Such claimants must also provide: (i) for claims involving Disease Levels I—III, evidence of Bilateral Asbestos-Related Nonmalignant Disease (as defined in Footnote 4 above); (ii) for claims involving Disease Level IV,[9] an ILO reading of 2/1 or greater or pathological evidence of asbestosis; and (iii) for claims involving either Disease Level III or IV, pulmonary function testing.[10]  In the case of a claimant who was deceased at the time the claim was filed, his or her representative must provide either: (i) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease; (ii) pathological evidence of the non-malignant asbestos-related disease; (iii)(a) in the case of Disease Levels I—III, evidence of Bilateral Asbestos-Related Nonmalignant Disease (as defined in Footnote 4 above) or (b) for Disease Level IV, either an ILO reading of 2/1 or greater or pathological evidence of asbestosis; or (iv) for either Disease Level III or IV, pulmonary function testing.

##### 5.7(a)(1)(B)    Disease Levels V-VIII

---

[9] All diagnoses of Asbestos/Pleural Disease (Disease Levels II and III) not based on pathology shall be presumed to be based on findings of bilateral asbestosis or pleural disease, and all diagnoses of Mesothelioma (Disease Level VIII) shall be presumed to be based on findings that the disease involves a malignancy. However, the Asbestos PI Trust may rebut such presumptions.

[10] "Pulmonary Function Testing" shall mean spirometry testing that is in material compliance with the quality criteria established by the American Thoracic Society ("ATS") and is performed on equipment that is in material compliance with ATS standards for technical quality and calibration.

All diagnoses of an asbestos-related malignancy (Disease Levels V—VIII) shall be based upon either (i) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease or (ii) a diagnosis of such a malignant Disease Level by a board-certified pathologist.

### 5.7(a)(1)(C)    Exception to the Exception for Certain Pre-Petition Claims

If the holder of an Asbestos PT Trust Claim that was filed against a Halliburton Entity or a Harbison-Walker Entity or another defendant in the tort system prior to the Petition Date has not provided the Asbestos PI Trust with a diagnosis of the asbestos-related disease by a physician who conducted a physical examination of the claimant described in sections 5.7(a)( 1 )(A) and 5.7(a)( 1 )(B), but the claimant has available such a diagnosis by an examining physician engaged by the claimant, or the claimant has filed such a diagnosis with another asbestos-related personal injury settlement trust that requires such evidence, the claimant shall provide such diagnosis to the Asbestos PI Trust notwithstanding the exceptions in sections 5.7(a)(l)(A) and 5.7(a)(l)(B).

### 5.7(a)(2)    Credibility of Medical Evidence

Before making any payment to a claimant, the Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is competent medical evidence of an asbestos-related injury and is consistent with recognized medical standards. The Asbestos PI Trust may require the submission of X-rays, CT scans, detailed results of pulmonary function tests, laboratory tests, tissue samples, results of medical examination, or reviews of other medical evidence and may require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods, and procedure to assure that such evidence is reliable.

Medical evidence (i) that is of a kind shown to have been received in evidence by a state or federal judge at trial, (ii) that is consistent with evidence submitted to the Halliburton Entities or the Harbison-Walker Entities to settle for payment similar disease cases prior to the Reorganization Cases, or (iii) that is a diagnosis by a physician shown to have previously qualified as a medical expert with respect to the asbestos-related disease in question before a state or federal judge, is presumptively reliable, although the Asbestos PT Trust may seek to rebut the presumption. In addition, claimants who otherwise meet the requirements of this Asbestos TDP for payment of an Asbestos PI Trust Claim shall be paid without regard to the results of any litigation at anytime between the claimant and any other defendant in the tort system. However, any relevant evidence submitted in a proceeding in the tort system, other than any findings of fact, a verdict, or a judgment, involving another defendant may be introduced by either the claimant or the Asbestos PI Trust in any Individual Review proceeding conducted pursuant to 5.3(b) or any Extraordinary Claim proceeding conducted pursuant to 5.4(a).

### 5.7(b)    Exposure Evidence

### 5.7(b)(1)    In General

As set forth in section 5.3(a)(3), to qualify for any Disease Level, the claimant must demonstrate by credible evidence a minimum exposure to an asbestos-containing product manufactured or distributed by one or more of the Harbison-Walker Entities or the Halliburton Entities or their predecessors. Claims based on conspiracy theories that involve no exposure to an asbestos-containing product produced by the Halliburton Entities or the Harbison-Walker Entities or their predecessors are not compensable under this TDP. To meet the presumptive exposure requirements of Expedited Review set forth in section 5.3(a)(3) above, the claimant must show by credible evidence (i) for all Disease Levels, Company Exposure as defined in section 5.7(c) below prior to December 31, 1982; (ii) for Asbestos/Pleural Disease Level II, six months Company Exposure prior to December 31, 1982, plus five years cumulative occupational asbestos exposure; and (iii) for Asbestosis/Pleural Disease (Disease Level ITT), Severe Asbestosis (Disease Level TV), Other Cancer (Disease Level V), or Lung Cancer 1 (Disease Level VII), six months Company Exposure prior to December 31, 1982, plus Significant Occupational Exposure to asbestos as defined in section 5.7(b)(2) below, If the claimant cannot meet the relevant presumptive exposure requirements for a Disease Level eligible for Expedited Review, the claimant may seek Individual Review of his or her claim.

### 5.7(b)(2)    Significant Occupational Exposure

"Significant Occupational Exposure" means employment for a cumulative period of at least five years, with a minimum of two years prior to December 31, 1982, in an industry and an occupation in which the claimant (a) handled raw asbestos fibers on a regular basis; (b) fabricated asbestos-containing products so that the claimant in the fabrication process was exposed on a regular basis to raw asbestos fibers; (c) altered, repaired, or otherwise worked with an asbestos-containing product such that the claimant was exposed on a regular basis to asbestos fibers; or (d) was employed in an industry and occupation such that the claimant worked on a regular basis in close proximity to workers engaged in the activities described in (a), (b), and/or (c).

### 5.7(c)    Company Exposure

Company Exposure means meaningful and credible exposure, which occurred prior to December 31, 1982, to asbestos or asbestos-containing products supplied, specified, used, installed, or manufactured by one or more of the Halliburton Entities or the Harbison-Walker Entities or for which a Halliburton Entity or Harbison-Walker Entity is otherwise liable, in accordance with the exposure requirements described in sections 5.7(b)(l) and (2) above. Working at a Documented Site (as defined below) shall constitute presumptive evidence of Company Exposure. That meaningful and credible exposure evidence must be established by:

- an affidavit or other credible evidence that establishes by credible evidence that asbestos or asbestos-containing products supplied, specified, used, installed, or manufactured by a Halliburton Entity and/or a Harbison-Walker Entity or for which a Halliburton Entity as Harbison-Walker Entity is otherwise liable, were present at the time of the alleged exposure, or

- sales, construction, employment, or other contemporaneous records that establishes by credible evidence that asbestos or asbestos-containing products supplied, specified, used,

installed, or manufactured by a Halliburton Entity and/or a Harbison-Walker Entity or for which a Halliburton Entity or Harbison-Walker Entity is otherwise liable, were present at the time of the alleged exposure.

A "Documented Site" means an exposure location identified to the Trust where there is clear and convincing evidence that asbestos or asbestos-containing products supplied, installed, or manufactured by a Halliburton Entity and/or a Harbison-Walker Entity or their predecessors, successors, and assigns were present at the time of the alleged exposure.

The Asbestos PI Trust shall make available a non-exclusive list of Documented Sites. Not less than annually, the Asbestos PI Trust shall review the list of Documented Sites. To the extent the Trustees deem necessary, upon consultation with the Asbestos TAC and the Legal Representative, the Trustees shall supplement such non-exclusive list of Documented Sites.

### 5.8    Claims Audit Program

The Asbestos PI Trust, with the consent of the Asbestos TAC and the Legal Representative, may develop methods for auditing the reliability of medical evidence, including additional reading of x-rays, CT scans, and verification of pulmonary function tests, as well as the reliability of evidence of exposure to asbestos, including exposure to asbestos-containing products manufactured or distributed by the Halliburton Entities or Harbison Walker Entities prior to December 31, 1982. In the event that the Asbestos PI Trust reasonably determines that any individual or entity has engaged in a pattern or practice of providing unreliable medical evidence to the Asbestos PT Trust, it may decline to accept additional evidence from such provider in the future. Further, in the event that an audit reveals that fraudulent information has been provided to the Asbestos PI Trust, the Asbestos PI Trust may penalize any claimant or claimant's attorney by disallowing the Asbestos PI Trust Claim or by other means including, but not limited to, requiring the source of the fraudulent information to pay the costs associated with the audit and any future audit or audits, reordering the priority of payment of all affected claimants' Asbestos PI Trust Claims, raising the level of scrutiny of additional information submitted from the same source or sources, refusing to accept additional evidence from the same source or sources, seeking the prosecution of the claimant or claimant's attorney for presenting a fraudulent claim in violation of 18 U.S.C. § 152, and seeking sanctions from the Bankruptcy Court.

### 5.9    Second Disease (Malignancy) Claims

The holder of an Asbestos PI Trust Claim (including a holder of a Qualifying Settled Asbestos PI Trust Claim) involving a non-malignant asbestos-related disease (Disease Levels I—IV) may file a new Asbestos PI Trust Claim against the Asbestos PI Trust for a malignant disease (Disease Levels V—VIII) that is subsequently diagnosed; provided, however, that, with respect to a holder of a Qualifying Settled Asbestos PT Trust Claim, the Asbestos PI Trust may assert as a defense to such second disease claim any release made pursuant to the applicable Asbestos/Silica PI Trust Claimant Settlement Agreement. Any additional payments to which such claimant may be entitled with respect to such malignant asbestos-related disease shall not be reduced by the amount paid for the nonmalignant asbestos-related disease, provided that the

malignant disease had not been diagnosed by the time the claimant was paid with respect to the original claim involving the non-malignant disease.

### 5.10    Arbitration

#### 5.10(a)    Establishment of Alternative Dispute Resolution Procedures

The Asbestos PT Trust, with the consent of the Asbestos TAC and the Legal Representative, shall institute binding and nonbinding arbitration procedures in accordance with the Arbitration Dispute Resolution ("ADR") Procedures included in Attachment A hereto to attempt to resolve whether the Asbestos PI Trust's outright rejection or denial of a claim was proper or whether the claimant's medical condition or exposure history meets the requirements of this TDP for purposes of categorizing a claim involving Disease Levels 1—VIII. Disputes of whether an Asbestos PI Trust Claim is a Qualifying Settled Asbestos PI Trust Claim will be resolved pursuant to the terms of the applicable Asbestos PI Trust Claimant Settlement Agreement and the Plan. Binding and nonbinding arbitration shall also be available for resolving disputes over the liquidated value of a claim involving Disease Levels IV—VIII. In all arbitrations, the arbitrator shall consider the same medical and exposure evidentiary requirements that are set forth in section 5.7 above. In the ease of an arbitration involving the liquidated value of a claim involving Disease Levels IV—VIII, the arbitrator shall consider the same valuation factors that are set forth in section 5.3(b)(2) above. With respect to all claims eligible for arbitration, the claimant, but not the Asbestos PT Trust, may elect either nonbinding or binding arbitration. The ADR Procedures set forth in Attachment A hereto may be modified by the Asbestos PI Trust with the consent of the Asbestos TAC and the Legal Representative. Such amendments may also include adoption of mediation procedures as well as establishment of an Extraordinary Claims Panel to review such claims pursuant to section 5.4(a) above.

#### 5.10(b)    Claims Eligible for Arbitration

In order to be eligible for arbitration, the claimant must first complete the Individual Review process with respect to the disputed issue as well as either the Pro Bono Evaluation or the Mediation processes set forth in the ADR Procedures. Individual Review will be treated as completed for these purposes when the claim has been individually reviewed by the Asbestos PT Trust, the Asbestos PT Trust has made an offer on the claim, the claimant has rejected the liquidated value resulting from the Individual Review, and the claimant has notified the Asbestos PI Trust of the rejection in writing. Individual Review also will be treated as completed if the Asbestos PI Trust has rejected the claim.

#### 5.10(c)    Limitations on and Payment of Arbitration Awards

In the case of a non-Extraordinary Claim involving Disease Levels I—Ill, the arbitrator shall not return an award m excess of the Scheduled Value for such claim. In the case of a non-Extraordinary Claim involving Disease Levels TV—VIII, the arbitrator shall not return an award in excess of the Maximum Value for the appropriate Disease Level as set forth in section 5.3(a)(3) above, and for an Extraordinary Claim involving one of those Disease Levels, the arbitrator shall not return an award greater than the maximum value for such a claim as set forth in section 5.4(a) above. A claimant who submits to arbitration and who accepts the arbitral award