will receive payments in the same manner as one who accepts the Asbestos PI Trust's original valuation of the claim.

### 5.11   Litigation

Claimants who elect nonbinding arbitration and then reject their arbitral awards retain the right to institute a lawsuit in a judicial forum against the Asbestos PI Trust pursuant to section 7.6 below. However, a claimant shall be eligible for payment of a judgment for monetary damages obtained in a judicial forum from the Asbestos PI Trust's available cash only as provided in section 7.7 below.

## SECTION 6

## Claims Materials

### 6.1   Claims Materials

The Asbestos PT Trust shall prepare suitable and efficient claims materials ("Claims Materials"), for all Asbestos PI Trust Claims, and shall provide such Claims Materials upon a written request for such materials to the Asbestos PT Trust. The proof of claim form to be submitted to the Asbestos PI Trust shall require the claimant to assert the highest Disease Level for which the claim qualifies at the time of filing and shall require the claimant to identify the Halliburton Entities or the Harbison-Walker Entities his or her claim alleges liability against. The proof of claim form shall also include a certification by the claimant or his or her attorney sufficient to meet the requirements of Rule 11(b) of the Federal Rules of Civil Procedure. In developing its claim-filing procedures, the Asbestos PI Trust shall make every reasonable effort to provide claimants with the opportunity to utilize currently available technology at their discretion, including filing claims and supporting documentation over the internet and electronically by disk or CD-rom. A copy of the proof of claim form to be used by the Asbestos PI Trust for unliquidated Asbestos PI Trust Claims is included m Attachment B hereto. The proof of claim form may be changed by the Asbestos PT Trust with the consent of the Asbestos TAC and the Legal Representative.

### 6.2   Content of Claims Materials

The Claims Materials shall include a copy of this TDP, such instructions as the Trustees shall approve, and a detailed proof of claim form. If feasible, the forms used by the Asbestos PT Trust to obtain claims information shall be the same or substantially similar to those used by other asbestos claims resolution organizations. Instead of collecting some or all of the claims information from a claimant or the claimant's attorney, the Asbestos PI Trust may also obtain such information from electronic data bases maintained by any other asbestos claims resolution organization. However, the Asbestos PI Trust shall inform the claimant that it plans to obtain information as available from such other organizations and may do so unless the claimant objects in writing or provides such information directly to the Asbestos PT Trust. If requested by the claimant, the Asbestos PT Trust shall accept information provided electronically. The claimant may, but will not be required to, provide the Asbestos PI Trust with evidence of recovery from other asbestos defendants and claims resolution organizations.

### 6.3    Withdrawal or Deferral of Claims

A claimant can withdraw an Asbestos PT Trust Claim at any time upon written notice to the Asbestos PI Trust and file another claim subsequently without affecting the status of the claim for statute of limitations purposes, but any such claim filed after withdrawal shall be given a place in the FIFO Processing Queue based on the date of such subsequent filing. A claimant can also request that the processing of his or her Asbestos PI Trust Claim by the Asbestos PT Trust be deferred for a period not to exceed three (3) years without affecting the status of the claim for statute of limitation purposes, in which case the claimant shall also retain his or her original place in the FIFO Processing Queue. Except for Asbestos PT Trust Claims held by representatives of deceased or incompetent claimants for which court or probate approval of the Asbestos PI Trust's offer is required, or an Asbestos PI Trust Claim for which deferral status has been granted, a claim will be deemed to have been withdrawn if the claimant neither accepts, rejects, nor initiates arbitration within six months of the Asbestos PI Trust's offer of payment or rejection of the claim. Upon written request and good cause, the Asbestos PI Trust may extend the withdrawal or deferral period for an additional six months.

### 6.4    Filing Requirements and Fees

The Trustees shall have the discretion to determine, with the consent of the Asbestos TAC and the Legal Representative, (a) whether a claimant must have previously filed an Asbestos PT Trust Claim in the tort system to be eligible to file the claim with the Asbestos PI Trust and (b) whether a filing fee should be required for any Asbestos PT Trust Claims.

## SECTION 7

## General Guidelines for Liquidating and Paying Claims

### 7.1    Showing Required

To establish a valid Asbestos PT Trust Claim, a claimant must meet the requirements set forth in this TDP. The Asbestos PT Trust may require the submission of X-rays, CT scans, laboratory tests, medical examinations or reviews, other medical evidence, or any other evidence to support or verify the claim and may further require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods, and procedures to assure that such evidence is reliable.

### 7.2    Costs Considered

Notwithstanding any provisions of this TDP to the contrary, the Trustees shall always give appropriate consideration to the cost of investigating and uncovering invalid Asbestos PI Trust Claims so that the payment of valid Asbestos PI Trust Claims is not further impaired by such processes with respect to issues related to the validity of the medical evidence supporting an Asbestos PT Trust Claim. The Trustees shall also have the latitude to make judgments regarding the amount of transaction costs to be expended by the Asbestos PT Trust so that valid Asbestos PI Trust Claims are not unduly further impaired by the costs of additional investigation. Nothing herein shall prevent the Trustees, in appropriate circumstances, from contesting the validity of

any claim against the Asbestos PI Trust whatever the costs or declining acceptance of medical evidence from sources that the Trustees have determined to be unreliable pursuant to the Claims Audit Program described in section 5.7 above.

### 7.3 Discretion to Vary the Order and Amounts of Payments in Event of Limited Liquidity

Consistent with the provisions hereof and subject to the FIFO Processing and Payment Queues, the Maximum Annual Payment, the Maximum Available Payment, and the Claims Payment Ratio requirements set forth above, the Trustees shall proceed as quickly as possible to liquidate valid Asbestos PT Trust Claims and shall make payments to holders of such claims in accordance with this TDP promptly as funds become available and as claims are liquidated, while maintaining sufficient resources to pay future valid claims in substantially the same manner. Because the Asbestos PI Trust's income and value over time remains uncertain and decisions about payments must be based on estimates that cannot be done precisely, they may have to be revised in light of experiences over time, and there can be no guarantee of any specific level of payment to claimants. However, the Trustees shall use their best efforts to treat similar claims in substantially the same manner, consistent with their duties as Trustees, the purposes of the Asbestos PT Trust, and the practical limitations imposed by the inability to predict the future with precision. In the event that the Asbestos PI Trust faces temporary periods of limited liquidity, the Trustees may, with the consent of the Asbestos TAC and the Legal Representative, suspend the normal order of payment and may temporarily limit or suspend payments altogether and may offer a Reduced Payment Option as described in section 2.5 above.

### 7.4 Punitive Damages

In determining the value of any liquidated or unliquidated Asbestos PT Trust Claim, punitive or exemplary damages, i.e., damages other than compensatory damages, shall not be considered or allowed, notwithstanding their availability in the tort system.

### 7.5 Interest

Except for Asbestos PI Trust Claim involving Other Asbestos Disease (Disease Level I) and subject to the limitations set forth below, interest shall be paid on all liquidated Asbestos PI Trust Claims with respect to which the claimant has had to wait a year or more for payment after the later of the DII Industries Effective Date or the date the claim was placed in the FIFO Payment Queue; provided, however, that no claimant shall receive interest for a period in excess of seven (7) years. Interest shall be simple and accrue at the one-year Treasury Bond rate in effect on January 1 of the year in which interest begins to accrue on the claim, and the rate to be adjusted each January 1 to correspond to the one-year Treasury Bond rate. The applicable interest shall be calculated based on the liquidated value of the claim, subject to the Payment Percentage. Notwithstanding the foregoing, the Asbestos PT Trust shall not be obligated to pay interest on Qualifying Settled Asbestos PT Trust Claims.

### 7.6 Suits in a Judicial Forum

If the holder of a disputed claim disagrees with the Asbestos PI Trust's determination regarding the Disease Level of the claim, the claimant's exposure history, or the liquidated value of the claim, and if the holder has first submitted the claim to nonbinding arbitration as provided in section 5.10 above, the holder may file a lawsuit in the Claimant's Jurisdiction as defined in section 5.3(b)(2) above or, in the case of the holder of an Indirect Asbestos PI Trust Claim, in a court of competent jurisdiction in the United States. Any such lawsuit must be filed by the claimant in her or her own right and name and not as a member or representative of a class, and no such lawsuit may be consolidated with any other lawsuit. All defenses (including, with respect to the Asbestos PT Trust, all defenses that could have been asserted by a Halliburton Entity or Harbison-Walker Entity) shall be available to both sides at trial; however, the Asbestos PT Trust may waive any defense and/or concede any issue of fact or law. If the claimant is an individual who was alive at the time the initial pre-petition complaint was filed or on the date the proof of claim was filed with the Asbestos PT Trust, the case will be treated as a personal injury case with all personal injury damages to be considered even if the claimant has died during the pendency of the claim.

### 7.7    Payment of Judgments for Money Damages

A claimant whose claim was liquidated in a judicial forum pursuant to sections 5.11 and 7.6 above after the DII Industries Effective Date shall receive from the Asbestos PI Trust an initial payment (subject to the Payment Percentage, the Maximum Annual Payment, the Maximum Available Payment, and, if any, the Claims Payment Ratio provisions set forth above) of an amount equal to one-hundred percent (100%) of the greater of (i) the Asbestos PT Trust's last offer to the claimant or (ii) the award that the claimant declined in nonbinding arbitration. Subject to the limitations set forth herein, the claimant shall receive the balance of the judgment, if any, in five equal installments in years six (6) through ten (10) following the year of the initial payment (also subject to the Payment Percentage, the Maximum Available Payment, and, if any, the Claims Payment Ratio provisions above). In the case of non-Extraordinary Claims involving Disease Levels I, II, and III, the total amounts paid with respect to such claims shall not exceed the relevant Scheduled Value for such Disease Levels as set forth above. In the case of claims involving a nonmalignant asbestos-related disease that does not attain classification under Disease Levels I, IT, or III, the amount payable shall not exceed the Scheduled Value for the Disease Level most comparable to the disease proven. In the case of non-Extraordinary Claims involving severe asbestosis and malignancies (Disease Levels IV—VIII), the total amounts paid with respect to such claims shall not exceed the Maximum Values for such Disease Levels set forth in sections 5.3(b)(3) and 5.3(b)(4). In the case of Extraordinary Claims, the total amounts paid with respect to such claims shall not exceed the maximum value for such claims set forth in section 5.4(a) above. Under no circumstances shall punitive damages or interest be paid on any judgments obtained in a judicial forum after the Petition Date.

### 7.8    Releases

The Trustees shall have the discretion to determine the form and substance of the releases to be provided to the Asbestos PT Trust in order to maximize recovery for claimants against other tortfeasors without increasing the risk or amount of claims for indemnification or contribution from the Asbestos PT Trust. As a condition to making any payment to a claimant, the Asbestos PI Trust shall obtain a general, partial, or limited release as appropriate in

accordance with the applicable state or other law. Such release shall include language evidencing the assignment to the applicable Reorganized Debtor of any Direct Action that may be assertable on account of such Asbestos PI Trust Claims. If allowed by state law, the endorsing of a check or draft for payment by or on behalf of a claimant shall constitute such a release.

### 7.9    Third-Party Services

Nothing in this TDP shall preclude the Asbestos PI Trust from contracting with another asbestos claims resolution organization to provide services to the Asbestos PT Trust so long as decisions about the categorization and liquidated value of Asbestos PT Trust Claims are based on the relevant provisions of this TDP, including the Disease Levels, Scheduled Values, Average Values, Maximum Values, and Medical/Exposure Criteria set forth above.

### 7.10   Asbestos F! Trust Disclosure of Information

Periodically, but not less often than once a year, the Asbestos PI Trust shall make available to claimants and other interested parties the number of claims by disease levels that have been resolved both by Individual Review and by arbitration as well as by litigation in the tort system indicating the amounts of the awards and the averages of the awards by jurisdiction.

## SECTION 8

### Miscellaneous

### 8.1    Amendments

Except as otherwise provided herein, the Trustees may amend, modify, delete, or add to any provisions of this TDP (including, without limitation, amendments to conform this TDP to advances in scientific or medical knowledge or other changes in circumstances), provided they first obtain the consent of the Asbestos TAC and the Legal Representative pursuant to the Consent Process set forth in sections 5.7(b) and 6.6(b) of the Asbestos PI Trust Agreement, except that the right to amend the Claims Payment Ratio is governed by the restrictions in section 2.5 above and the right to adjust the Payment Percentage is governed by section 4.2 above.

### 8.2    Severability

Should any provision contained in this TDP be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this TDP. Should any provision contained in this TDP be determined to be inconsistent with or contrary to any of the Harbison-Walker Entities' or the Halliburton Entities' obligations to any insurance company providing insurance coverage to any of the Harbison-Walker Entities or the Halliburton Entities in respect of claims for personal injury based on Company Exposure, the Asbestos PI Trust with the consent of the Asbestos TAC and the Legal Representative may amend this TDP and/or the Asbestos PT Trust Agreement to make the provisions of either or both documents consistent with the duties and obligations of any of the Halliburton Entities or the Harbison-Walker Entities to said insurance company.

**8.3     Governing Law**

Except for purposes of determining the Liquidated Amount of any Asbestos PT Trust Claim, administration of this TDP shall be governed by, and construed in accordance with, the laws of the Commonwealth of Pennsylvania. The law governing the liquidation of Asbestos PI Trust Claims in the case of Individual Review, arbitration, or litigation in the tort system shall be the law of the Claimant's Jurisdiction as determined in accordance with section 5.3(b)(2) above.

**Attachment A to Asbestos TDP**

**DII Industries, LLC Asbestos PI Trust
Alternative Dispute Resolution Procedures**

## DII INDUSTRIES, LLC ASBESTOS PI TRUST

## ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

Pursuant to section 5.10 of the DII Industries, LLC Asbestos PT Trust Trust Distribution Procedures (the "TDP"), the DII Industries, LLC Asbestos PI Trust (the "Asbestos PI Trust") hereby establishes the following Alternative Dispute Resolution ("ADR") Procedures to resolve all present and future Asbestos Unsecured PT Trust Claims, other than Qualifying Settled Asbestos Unsecured PI Trust Claims, as those terms are defined in the Plan (hereinafter referred to, for all purposes, as "Asbestos Unsecured PI Trust Claims"). All capitalized terms herein shall be as defined and/or referenced within the TDP and in the Uniform Glossary of Terms for Plan Documents attached as Exhibit A to the Disclosure Statement.

**I.    OVERVIEW**

The Asbestos PT Trust shall appoint a Private Adjudication Coordinator, at the cost of the Asbestos PT Trust, to administer these ADR procedures. To initiate these procedures, the claimant must make a written request to the Asbestos PT Trust. Within twenty (20) days of a claimant's request for ADR, the Asbestos PI Trust will send the claimant an ADR packet containing the documents necessary to pursue the ADR process. These ADR procedures shall not be construed as imparting to any claimant any substantive or procedural rights beyond those conferred by the TDP.

The ADR process available to the claimant includes both non-binding and binding elements. In addition, there are mandatory, as well as voluntary, options to be utilized by the claimant and the Asbestos PI Trust in proceeding toward settlement. These ADR procedures must be pursued by claimants on an individual basis. As a general matter, claims of different claimants cannot be grouped together even if the claimants are represented by the same counsel, unless the Asbestos PI Trust, in its sole discretion, decides it would be expeditious to conduct ADR proceedings with respect to more than one claim involving differently exposed claimants with those claimants' representative. In such a case, however, the arbitrator, mediator, or other neutral must individually value each such Asbestos Unsecured PT Trust Claim using the valuation factors set forth in section 5.3(b)(2) of the TDP, and the claimants' positions in the Asbestos PI Trust's FIFO Processing and Payment Queues must be separately maintained.

The requisite steps in the ADR process are as follows, in order:

### Mandatory APR Proceedings (Two Stages)

#### Stage One (Claimant Must Select One):

1. Pro Bono Evaluation

2. Mediation

#### Stage Two: Arbitration (Binding or Non-Binding)

**Initiation of ADR**

Within twenty (20) days of a claimant's request for ADR, the Asbestos PI Trust will send the claimant an ADR packet containing a copy of these procedures and the following:

1. A Summary Outline of the ADR procedures with the time limits identified;

2. Form of Affidavit of Completeness;

3. Election Form for Pro Bono Evaluation;

4. Request for Mediation Form;

5. Election Form and Agreement to submit to Binding Arbitration; and

6. Election Form and Agreement to submit to Non-binding Arbitration.

A claimant who wishes to proceed through the ADR process must engage in one of the two ADR options (pro bono evaluation or mediation) before any form of arbitration. Only after either party rejects a non-binding arbitration award may a claimant proceed to then commence a lawsuit in the tort system. It is the claimant's responsibility to comply with the ADR time deadlines. Although the deadlines may be extended by agreement or for cause shown, failure to comply with a deadline without obtaining an extension may result in withdrawal of the Asbestos Unsecured PI Trust Claim. Promptly after a claimant fails to comply with a specified deadline without obtaining an extension, the Asbestos PI Trust shall send the claimant written notice of the failure to comply. If the claimant does not take any action on the Asbestos Unsecured PI Trust Claim, then thirty (30) days thereafter the Asbestos Unsecured PI Trust Claim will be deemed withdrawn.

If the claimant requests arbitration, either binding or non-binding, the Asbestos PT Trust shall execute the appropriate election form and agreement. If both parties agree to binding arbitration, then the claimant and the Asbestos PI Trust waive their respective rights to seek a jury trial as set forth in the TDP.

If either party rejects a nonbinding arbitration award, and the claimant has otherwise complied with the requirements of these ADR procedures and the Plan, then the claimant may commence a lawsuit against the Asbestos PT Trust in the Claimant's Jurisdiction, as that term is defined in section 5.3(b)(2) of the TDP.

## II.    APR PROCEEDINGS SUMMARY

### A.    Showing Required

As set forth in the TDP, in order to establish a valid Asbestos Unsecured PI Trust Claim, a claimant must make a demonstration of exposure to asbestos-containing products for which one or more of the Halliburton Entities and/or the Harbison-Walker Entities bears legal responsibility.

**B.**     **Pro Bono Evaluation**

This ADR alternative consists of an evaluation of the Asbestos Unsecured PI Trust Claim by an evaluator selected from a pro bono panel. The panel shall be comprised of asbestos-litigation attorneys mutually agreed upon between the Asbestos TAC and the Trustees. The Asbestos TAC will be provided, on a quarterly basis, with a list of the pro bono panelists. Each evaluation will have a pro bono evaluator randomly selected by the Private Adjudication Coordinator from the list of pro bono panelists. Within fifteen (15) days of the claimant's request for the pro bono evaluation, the individual pro bono evaluator shall be randomly chosen from the approved panel.

A pro bono evaluation will be done by document submission. The identity of the pro bono evaluator will not be disclosed to the claimant or the claimant's attorney. The Asbestos PT Trust encourages identification of and not anonymity as to the alleged injured party so that medical records can be transmitted in their original form. The Private Adjudication Coordinator will communicate to the parties the pro bono evaluator's written evaluation. The parties will communicate their respective rejection or acceptance of settlement upon the terms of the written evaluation. If either or both parties reject settlement upon those terms, then the claimant may submit an Election Form and Agreement for Binding or Nonbinding Arbitration.

**C.**     **Mediation**

The claimant may request telephone mediation as an ADR alternative. This process will require the submission of detailed mediation statements to familiarize the mediator with the respective positions. The Asbestos PI Trust shall establish and maintain a list of qualified regional mediators compensated by the Asbestos PT Trust. The Private Adjudication Coordinator shall select a qualified mediator from the list based upon location of claimant within fifteen (15) days after receipt of the Request for Mediation Form signed by the claimant and the Asbestos PT Trust.

Asbestos Unsecured PI Trust Claims shall be handled by each mediator in the order received by him or her, to the extent practicable. Any party may be represented by legal counsel. The mediator shall review the Asbestos Unsecured PI Trust Claim and the positions of the parties, such information as the parties may wish to submit as to a fair and equitable settlement, and all documents and medical reports relevant to the Asbestos Unsecured PI Trust Claim as submitted by the parties. At least five (5) Business Days prior to the mediation conference, claimant and the Asbestos PT Trust shall each submit to the mediator a mediation statement consisting of a confidential statement outlining the claimant's medical condition, Company Exposure (as defined in section 5.7(c) of the TDP) and each party's detailed position on overall Asbestos Unsecured PI Trust Claim value. The mediator shall confer with the parties and/or their legal representatives, individually and jointly. Such conference shall be conducted by telephone unless

both parties agree otherwise. A representative of the Asbestos PI Trust with settlement authority must participate in the conference. The mediator may request, but not require, that the claimant personally participate in the conference. Such conference shall be in the nature of a settlement conference. The mediator shall work with both sides toward reaching an acceptable, reasonable settlement.

The mediator does not have the authority to impose a settlement on the parties. Ten (10) days after the conclusion of the mediation, if the parties have not settled the matter, the claimant may submit to the Asbestos PI Trust an Election Form and Agreement for Binding or Non-binding Arbitration.

### D.   Binding and Non-Binding Arbitration Procedures

Upon completion of either pro bono evaluation or mediation, the claimant may request non-binding and/or binding arbitration. Binding arbitration will be conducted in the "final offer" format also known as "baseball style" arbitration. If the Asbestos Unsecured PI Trust Claim is arbitrated in either the binding or nonbinding format, then the arbitrator shall return an award no greater than the Maximum Value for the relevant Disease Category set forth in section 5.3(b)(4) of the TDP, unless the Asbestos Unsecured PI Trust Claim qualifies as an Extraordinary Claim pursuant to section 5.4(a) of the TDP. In that case, the arbitrator shall return an award no greater than the Maximum Value for such Asbestos Unsecured PI Trust Claims as also set forth in section 5.4(a) of the TDP.

If the claimant requests arbitration, either binding or nonbinding, then the Asbestos PI Trust shall execute the appropriate Election Form and Agreement. The Asbestos PI Trust may not decline the claimant's election of either binding or nonbinding arbitration, but reserves all rights to reject any award in a nonbinding arbitration proceeding. If the parties agree to engage in binding arbitration, then the claimant and the Asbestos PI Trust waive their respective rights to seek a jury trial as set forth in the TDP.

## III.   RULES GOVERNING PRO BONO EVALUATION AND MEDIATION

Within ninety (90) days of a claimant's receipt of the ADR packet from the Asbestos PI Trust, the claimant must elect one of the two ADR procedures and return the appropriate form to the Asbestos PI Trust along with an executed Affidavit of Completeness.

### A.   Rules Governing Pro Bono Evaluation

**1.**   Election and Time Limits

a.   If the claimant chooses pro bono evaluation, then within ninety (90) days of claimant's receipt of the ADR packet, the claimant must send the Asbestos PI Trust the Election Form for Pro Bono Evaluation (See Attachment A). The claimant or his/her attorney shall personally sign the Election Form for Pro Bono Evaluation.

b.    The claimant must also sign an Affidavit of Completeness (See Attachment B) and return it to the Asbestos PI Trust with a copy to the Private Adjudication Coordinator within ninety (90) days of receipt of the AJJR packet. The Asbestos Unsecured PI Trust Claim will not proceed until the Asbestos PT Trust has received a completed election form and Affidavit of Completeness from the claimant. The Affidavit of Completeness shall verify that all information to be considered in the ADR process has been provided to the Asbestos PI Trust while the Asbestos Unsecured PT Trust Claim was under review by the Asbestos PI Trust.

c.    After receiving the signed election form and Affidavit of Completeness, the Asbestos PT Trust shall review and sign the election form within five (5) business days of receipt.

d.    Within fifteen (15) days from the date the Asbestos PT Trust notifies the claimant's counsel of the Asbestos PI Trust's consent to the election form, the Asbestos PI Trust shall send a copy of the signed election form, the Affidavit of Completeness together with complete copies of all materials submitted to the Asbestos PI Trust by the claimant and factual information in the Asbestos PI Trust file, if any, gathered by the Asbestos PI Trust from other sources, and a completed Affidavit of Accuracy to the claimant's counsel and the Private Adjudication Coordinator who will forward the materials to the selected pro bono evaluator at the time the evaluator is selected. The Asbestos PI Trust may not send the Private Adjudication Coordinator any materials in the Asbestos PI Trust file that have not previously been provided to the claimant.

**2.**    Selection of the Pro Bono Evaluator

Within fifteen (15) days of the date the Private Adjudication Coordinator received the claimant's election agreement, the Private Adjudication Coordinator shall randomly select the pro bono evaluator from the list of pro bono panelists and notify the parties that the evaluator has been designated without disclosing the identity of the evaluator. The pro bono evaluator shall be selected from a panel of asbestos litigation plaintiff attorneys who have volunteered to serve the Asbestos PI Trust at the request of the Asbestos TAC. Pro bono assignments will be made on a rotating basis.

The identity of the pro bono evaluator shall not be disclosed to the claimant or the claimant's attorney. The identity of the claimant should be disclosed so that medical records can be transmitted in their original form.

**3.**    Submission of Written Arguments

Fifteen (15) days after the Asbestos PI Trust sends the complete file materials to the Private Adjudication Coordinator, the claimant and the Asbestos PI Trust shall simultaneously exchange and submit written arguments to the Private Adjudication Coordinator. The Private Adjudication Coordinator will immediately forward the written arguments to the pro bono evaluator. The written arguments shall comply with the following rules:

    a.    The argument shall not exceed ten (10) double-spaced typewritten pages. In order to preserve anonymity in a pro bono evaluation, the name of counsel should not be mentioned. The argument may not introduce factual matter not contained in the documents in the Asbestos PT Trust's file. The evaluator shall disregard any argument that does not comply with this rule.

    b.    When a party fails to submit the written argument within the fifteen (15) days, the party waives written argument, and the pro bono evaluator shall disregard any argument received after that time.

**4.**    Evaluation of Documents

The pro bono evaluation is only a document review with complete anonymity preserved between claimant's counsel and the pro bono evaluator. The documents that the pro bono evaluator may consider shall be limited to the following:

    a.    the documents in Asbestos PI Trust's file forwarded to the pro bono evaluator;

    b.    the claimant's Affidavit of Completeness and the Asbestos PT Trust's Affidavit of Accuracy; and

    c.    the written arguments of the claimant and the Asbestos PI Trust that comply with the rules for written arguments set forth above.

Before the Private Adjudication Coordinator forwards any documents to the pro bono evaluator, it will redact all references to claimant's counsel.

**5.**    Written Evaluation and Procedure for Acceptance/Rejection

Within fifteen (15) days after the submission of written arguments, the pro bono evaluator shall submit a written evaluation of the claim to the Private Adjudication Coordinator who will promptly mail it to the parties.

Within fifteen (15) days after receipt of the pro bono evaluator's written evaluation, the claimant and the Asbestos PT Trust will each communicate in writing to the Private Adjudication Coordinator whether they will accept the amount of the pro bono evaluator's written evaluation to settle the Asbestos Unsecured PI Trust Claim. If both parties accept, then the Private Adjudication

Coordinator will immediately inform both parties that they have achieved a settlement and the Asbestos PI Trust shall pay the Asbestos Unsecured PT Trust Claim pursuant to the TDP. If either or both parties reject the pro bono evaluator's written evaluation, then within five (5) business days of receipt of both parties' written communication, the Private Adjudication Coordinator shall send each party a notice of rejection of pro bono evaluator's written evaluation that will not indicate whether the opposing party has accepted or rejected the pro bono evaluator's written evaluation amount.

6.      Arbitration May Proceed After Rejection of Pro Bono Evaluator's Written Evaluation

Within sixty (60) days after receipt of the notice of rejection of pro bono evaluator's written evaluation, the claimant may request arbitration by returning to the Asbestos PT Trust a signed Election Form and Agreement for either Binding or Non-binding Arbitration.

## B.     Rules Governing Mediation

1.      Election

If the claimant chooses mediation, then the claimant shall submit to the Asbestos PI Trust a signed Request for Mediation Form (Attachment C) along with an executed Affidavit of Completeness within ninety (90) days of claimant's receipt of the ADR packet. Within five (5) business days of the Asbestos PI Trust's receipt of the signed Request for Mediation Form, the Asbestos PI Trust shall review and sign the form and forward a signed copy along with an executed Affidavit of Accuracy to the claimant and the Private Adjudication Coordinator.

2.      Selection of Mediator

Within fifteen (15) days of the signed Request for Mediation Form, the Private Adjudication Coordinator shall retain a mediator from the approved list of mediators. The Private Adjudication Coordinator shall select the mediator based upon the region in which the claimant is located. The mediator shall be compensated by the Asbestos PI Trust. The Private Adjudication Coordinator shall schedule a mediation conference within sixty (60) days after receipt of the signed request for mediation form. The mediation will be conducted by telephone conference unless the parties agree otherwise. Scheduling of the conference shall be coordinated with the mediator, and the conferences shall take place in the order received by the mediator, to the extent practicable.

3.      Submission of Materials to Mediator

At least five (5) business days prior to the mediation conference, the claimant and the Asbestos PI Trust shall each submit to the mediator mediation statements consisting of a confidential statement outlining the claimant's medical condition,

the alleged Company Exposure, and each party's position on overall Asbestos Unsecured PT Trust Claim value. The parties may also submit to the mediator documents and medical reports that they believe are relevant to the Asbestos Unsecured PT Trust Claim. The mediator shall review the Asbestos Unsecured PT Trust Claim and the positions of the parties and the other information that the parties submit prior to the mediation conference. The mediation statements shall comply with the following rules:

a.    the statement should not exceed ten (10) double-spaced typewritten pages exclusive of attachments; and

b.    the statement may not introduce factual matter not contained in the documents in the Asbestos PI Trust's file as certified by the Affidavit of Completeness.

**4.    Mediation Conference**

Any party may be represented by legal counsel at the mediation conference. The mediator shall confer with the parties' legal representatives and, if the claimant is present and consents, with the claimant. A representative of the Asbestos PI Trust with settlement authority must participate in the conference. The mediator may request, but not require, that the claimant personally participate in the conference.

**5.    Negotiations at the Mediation Conference**

The mediator may facilitate settlement in any manner the mediator believes is appropriate. The mediator will help the parties focus on their underlying interests, explore resolution alternatives, and develop settlement options. The mediator will decide when to hold joint conferences and when to confer separately with each party.

The parties are expected to initiate, and convey to the mediator, proposals for settlement. Each party shall provide a rationale for any settlement terms proposed. Finally, if the parties fail to develop mutually acceptable settlement terms, before terminating the procedure, and only with the consent of the parties, (a) the mediator may submit to the parties a final settlement proposal, and (b) if the mediator believes he/she is qualified to do so, the mediator may give the parties an evaluation (which if all parties choose, and the mediator agrees, may be in writing) of the likely outcome of the case if it were tried to final judgment, subject to any limitations under the Plan, the TDP, and ethical codes.

**6.    Confidentiality of Mediation**

The entire mediation process is confidential. Unless agreed among all the parties or required to do so by law, the parties and the mediator shall not disclose to any person who is not associated with participants in the process, including any judicial officer, any information regarding the process (including preprocess

exchanges and agreements), contents (including written and oral information), settlement terms, or outcome of the proceeding.

Under this procedure, the entire process is a compromise negotiation subject to Federal Rule of Evidence 408 and all state counterparts, together with any applicable statute protecting the confidentiality of mediation. All offers, promises, conduct, and statements, whether oral or written, made in the course of the proceeding by any of the parties, their agents, employees, experts, or attorneys, and by the mediator, are confidential. Such offers, promises, conduct, and statements are privileged under any applicable mediation privilege and are inadmissible and not discoverable for any purpose, including impeachment, in litigation between the parties. However, any written or oral information or other materials submitted to the mediator by either the Asbestos PI Trust or the claimant may be submitted by either party to the arbitrator in an arbitration that takes place under these ADR procedures. In addition, evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable solely as a result of its presentation or use during the mediation.

The exchange of any tangible material shall be without prejudice to any Asbestos Unsecured PT Trust Claim that such material is privileged or protected as work-product within the meaning of Federal Rule of Civil Procedure 26 and all state and local counterparts.

The mediator and any documents and information in the mediator's possession will not be subpoenaed in any such investigation, action or proceeding, and all parties will oppose any effort to have the mediator or documents subpoenaed. The mediator will promptly advise the parties of any attempt to compel him/her to divulge information received in mediation.

7.    Submission of Written Offers After Mediation

At the conclusion of the mediation, the mediator shall require the parties to exchange written settlement offers that shall remain open for ten (10) days. If after the expiration of that ten (10) day period neither party accepts the other's written offer or the parties do not otherwise settle the matter, then the claimant may request binding or nonbinding arbitration by sending to the Asbestos PT Trust the appropriate signed Election Form and Agreement for either Binding or Non-binding Arbitration.

## IV.    RULES GOVERNING NON-BINDING AND BINDING ARBITRATION

### A.    Election by the Asbestos PI Trust

The Asbestos PI Trust shall review the signed Election Form and Agreement for Binding or Non-binding Arbitration (Attachments D and E), and within five business days of receipt, the Asbestos PT Trust shall sign the Agreement and shall

immediately send a fully signed Arbitration Agreement to the Private Adjudication Coordinator.

**B.    Selection of the Arbitrator**

1.    As soon as reasonably possible after the receipt of the signed Arbitration Agreement, but no more than fifteen (15) days after the receipt of the signed Arbitration Agreement, the Private Adjudication Coordinator shall select three potential arbitrators from a rotating list kept by the Private Adjudication Coordinator. Arbitrators' assignments will be made, on a rotating basis nationally, by the Private Adjudication Coordinator. The Private Adjudication Coordinator shall promptly notify the arbitrator and the parties of the potential arbitrators' selection. If a potential arbitrator is unable or unwilling to serve, then a replacement selection will be made prior to notifying the Asbestos PT Trust and the claimant of the potential arbitrators selected.

2.    Within seven (7) days of receipt of the list of potential arbitrators, the Asbestos PI Trust may select, and identify to the Private Adjudication Coordinator, one potential arbitrator to be stricken from the list. The Private Adjudication Coordinator shall then promptly notify the claimant of the Asbestos PI Trust's selection, whereupon, within seven (7) days of the receipt of such notification, the claimant may select, and identify to the Private Adjudication Coordinator, a second potential arbitrator to be stricken from the list. The Private Adjudication Coordinator shall then notify all parties which potential arbitrator remains and will conduct the arbitration. If either the Asbestos PT Trust or the claimant, or both, fails to exercise the right to strike an arbitrator from the list of potential arbitrators, the Private Adjudication Coordinator shall appoint from those potential arbitrators remaining the arbitrator next in rotation on the Asbestos PI Trust's rotating list.

3.    Any appointed arbitrator shall disclose to the Private Adjudication Coordinator any circumstances likely to affect impartiality, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or representatives. Upon receipt of such information from the arbitrator or another source, the Private Adjudication Coordinator shall communicate the information to the parties and, if the administrator deems necessary, to the arbitrator and others. Upon objection of a party to the continued service, the Private Adjudication Coordinator shall determine whether the arbitrator should be disqualified and shall inform the parties of the decision, which shall be final.

**C.    Extraordinary Claims and Those Reviewed by the Extraordinary Claims Review Panel**

In the event that the Extraordinary Claims Review Panel has deemed the Asbestos Unsecured PI Trust Claim worthy of extraordinary treatment, the Private Adjudication Coordinator shall forward to the arbitrator the written decision of the Extraordinary Claims Review Panel, and the parties may submit a final request that exceeds the values ascribed to the type of injury in the TDP. In such circumstances, the arbitrator may issue an award in accordance with such a final offer/request.

In the event that the Extraordinary Claims Review Panel declined to give extraordinary treatment to the Asbestos Unsecured PI Trust Claim, the arbitrator shall not be informed of the Extraordinary Claims Review Panel's decision, and the claimant must confine his/her award to the values ascribed to the type of injury in the TDP because the arbitrator may not award an amount in excess of the Maximum Value assigned to the appropriate category for the injury in the TDP. The Asbestos PI Trust will not engage in nonbinding or binding arbitration, and reserves the unilateral right to withdraw from a signed non-binding or binding arbitration agreement at any time, where the claimant's final offer and award demand exceeds the Maximum Value assigned to the type of injury in the TDP and the Extraordinary Claims Review Panel has declined to give extraordinary treatment to the Asbestos Unsecured PI Trust Claim.

**D.    Final Offer or "Baseball Style" Binding Arbitration**

All binding arbitration shall be conducted in the "final offer" format also known as "baseball style" arbitration. In the course of submitting the arbitration materials, as explained in these rules, the parties shall submit their final offer of settlement which shall also serve as the party's demand for arbitration award. The arbitrator must choose from one of these two demands in determining the amount of the arbitration award.

**E.    Submission of Pre-Hearing Statements**

Within twenty (20) days of the appointment of an arbitrator, each party shall submit to the opposing party and to the arbitrator a written statement (not to exceed ten (10) double-spaced pages) containing that party's positions and arguments. Each party may then submit a supplement to its position paper (not to exceed five (5) double-spaced pages) following the initial prehearing conference to respond to the opposing party's positions and arguments and addressing issues raised at the initial prehearing conference. Supplements must be sent to the opposing party and to the arbitrator within ten (10) days after the date of the prehearing conference.

The Private Adjudication Coordinator will provide the arbitrator with a complete schedule of categories of injuries and Scheduled and Maximum Values therefor in the TDP.

**F.    Initial Pre-Hearing Conference, Scheduling Hearing Date, Optional Video Conference for Arbitration Hearing**

1.    Within fifteen (15) calendar days of the receipt of both parties' statements, the Private Adjudication Coordinator shall contact the claimant, the arbitrator, and the Asbestos PI Trust to schedule the initial prehearing conference. The prehearing conference shall be presided over by the arbitrator and held by telephone conference call.

2.    During the initial prehearing conference, the arbitrator shall schedule the date and select the location of the arbitration hearing either at the location of the arbitrator or a location mutually agreeable by the parties. The arbitration hearing should be scheduled not less than forty-five (45) days, and not more than sixty (60) days, from the date of the initial prehearing conference. The Private Adjudication Coordinator will mail a confirmation notice of this date to the claimant and the Asbestos PI Trust.

3.    At the election of the claimant, the arbitration hearing may be conducted by video conference. If the claimant so elects, then the claimant must state that election in writing prior to the initial pre-hearing conference. The Private Adjudication Coordinator will make appropriate arrangements for the Asbestos PI Trust and the arbitrator to participate by video conference. The Asbestos PI Trust shall pay for its and the arbitrator's cost for use of video conference equipment and facilities. The claimant shall only be responsible for his/her costs (including participation by claimant's counsel).

4.    During the initial pretrial conference, the arbitrator shall seek to achieve agreement between the parties on:

a.    narrowing the issues (through methods including but not limited to stipulation of facts);

b.    whether the claimant will appear at the hearing (at the claimant's sole discretion);

c.    any legal issues; and

d.    any other matters that will expedite the arbitration proceedings.

If appropriate or if the parties do not agree on these issues, then the arbitrator must issue orders governing the process.

**G.    No Discovery With Limited Exceptions**

There shall be no discovery except as specifically provided below. The purpose of the arbitration is to resolve differences between the Asbestos PI Trust and the claimant based only on the documents that have been previously submitted to the

Asbestos PI Trust by the claimant and upon the documents relied upon by the Asbestos PI Trust to make a settlement offer to the claimant or to disallow the Asbestos Unsecured PI Trust Claim. Except, however, if the Asbestos PI Trust commissions an independent medical examination or a third-party medical review upon which the Asbestos PI Trust relies in evaluating the claimant's Asbestos Unsecured PI Trust Claim, then the claimant may depose the medical professional conducting the review or examination after having a reasonable opportunity to study any report or written opinion generated by the medical professional.

**H.    No Record of Proceedings Unless Requested by Arbitrator**

There will be no record or transcript of the proceedings unless and except if the arbitrator requests a transcript to assist him/her in reviewing the evidence or otherwise to aid in the decision making process. In the event an arbitrator requests a transcript prior to the arbitration, then the Asbestos PI Trust shall arrange for a court reporter and shall pay all expenses associated with the preparation of the transcript. In no event, however, will the transcript be made available to the parties, nor shall any time required for preparation of the transcript affect the time for the arbitrator to render a decision.

**I.    Postponement of Hearing**

The arbitrator for good cause may postpone any hearing upon the request of a party or upon the arbitrator's own initiative, and shall also grant such postponement when all of the parties agree.

**J.    Duration of Hearings**

The arbitrator shall complete the hearing in one day except for good cause shown. The arbitrator shall set time limits on the respective presentations and shall enforce those set limits. The parties shall request no more than three hours apiece for presentation of their cases.

**K.    Procedure at Arbitration Hearing**

**1.    Testimony Under Oath or Affirmation**

If the claimant or any other witness testifies, such testimony shall be under oath or affirmation administered by the arbitrator.

**2.    Conduct of Hearing**

At the opening of the arbitration hearing, the arbitrator shall make a written record of the time, place, and date of the hearing, and the presence of the parties and counsel.

**3.    Evidence**

a.     Rules of Evidence: The arbitrator is not required to apply the rules of evidence used in judicial proceedings; provided, however, that the arbitrator shall apply the attorney-client privilege and the work-product privilege.

The arbitrator shall determine the applicability of any privilege or immunity and the admissibility, relevance, materiality, and weight of the evidence offered.

b.     Admission of Evidence: The evidence that the arbitrator may consider shall be limited to the following:

(i)     the documents supplied to the Asbestos PT Trust prior to the execution of the Affidavit of Completeness;

(ii)    nonbinding or binding arbitration election agreement;

(iii)   testimony of the claimant. The claimant may offer evidence regarding the nature and extent of compensable damages, including physical injuries, and/or the market share of products produced or distributed by one or more of the Halliburton Entities and/or the Harbison-Walker Entities, if there is a Asbestos Unsecured PT Trust Claim of greater than average market share. The Asbestos PT Trust may cross-examine on these issues. At the claimant's option, a claimant's deposition, including videotaped testimony, shall be admissible into evidence in lieu of live testimony;

(iv)    any additional deposition testimony taken by the Asbestos PI Trust or the claimant, and provided to both sides, prior to the initiation of ADR;

(v)     any evidence submitted in mediation; and

(vi)    arguments of the claimant and the Asbestos PT Trust. The arguments shall be limited to the evidence contained and the issues raised in the documents or testimony referred to above and shall be limited to one-half hour. The arbitrator shall disregard any effort to introduce further evidence or issues in argument.

## L.     Arbitration in the Absence of a Party or Representative

The claimant may choose whether or not to attend the arbitration in person in his/her sole discretion. The arbitration may proceed in the absence of any party or representative who, after due notice, chooses not to be present, fails to be present, or fails to obtain a postponement if he/she desires to be present but cannot. An award shall not be made against a party solely for the failure to appear. The

arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

**M.    Conclusion of Hearing and Submission of Post-Hearing Briefs**

When the parties state that they have no further evidence or witnesses to offer, and after the parties have made their closing arguments, if any, the arbitrator shall declare the hearing closed. Post-hearing statements will be permitted only upon order of the arbitrator and shall be served upon the arbitrator no later than ten (10) days after the hearing is closed. Such statements shall be no longer than five (5) double spaced pages. The time limit within which the arbitrator is required to make the award shall commence to run upon the closing of the hearing or the submission of post-hearing statements whichever is later.

**N.    Option to Waive Oral Hearings**

The parties may request a waiver of oral hearings. Oral hearings will be waived only if all parties consent.

**O.    Arbitration Decision**

1.    The arbitrator shall issue a decision no later than fifteen (15) calendar days after the date of the close of the hearing or submission of post-hearing statements, whichever is later.

2.    The decision shall state only the amount of the award, if any. The decision shall not state reasons for the award. An arbitrator shall not be permitted to make punitive, exemplary, trebled, or other like damages or attorneys' fees, prejudgment and post-judgment interest, and costs shall not be sought or allowed. The award shall dispose of all monetary claims presented to the arbitrator and shall determine fully the only issue to be decided pursuant to the arbitration agreement: the amount, if any, at which the Asbestos Unsecured PI Trust Claim value should be fixed. To assist the arbitrator, the Private Adjudication Coordinator will provide the arbitrator with a schedule setting forth the Disease Levels and the Scheduled, Average, and Maximum Values associated with each category. Unless the Extraordinary Claims Review Panel has determined that a Asbestos Unsecured PT Trust Claim is entitled to extraordinary treatment during the claims review process, the arbitrator's award shall not exceed the Maximum Value amount for the appropriate Category in the TDP.

**P.    Payment of Award**

Pursuant to the terms of the arbitration agreement, the Asbestos PT Trust will promptly send to the claimant the appropriate release. The Asbestos PI Trust will then pay the Asbestos Unsecured PI Trust Claim based upon the binding or, if

accepted by both parties, the nonbinding award, in accordance with the TDP provisions in effect at that time.

**Q.     Rejection of Nonbinding Award**

　　　1.　　A party in a nonbinding arbitration proceeding that wishes to reject the award must notify the other party within thirty (30) days from the date a nonbinding award is issued. If no rejection is received or sent by the Asbestos PT Trust, then the decision will stand and the award will be deemed accepted by both parties and the Asbestos PT Trust will promptly send to the claimant the appropriate release. The Asbestos PT Trust will then pay the Asbestos Unsecured PI Trust Claim in accordance with the TDP in effect at that time.

　　　2.　　Procedure for Rejected Award

　　　　　a.　　Rejection by Claimant

　　　　　　　If claimant has sent the Asbestos PT Trust timely notification of rejection of a non-binding award and wishes to pursue the Asbestos Unsecured PT Trust Claim, then the claimant must notify the Asbestos PI Trust through correspondence postmarked no later than sixty (60) days from the date of the nonbinding award. If notification is received within the sixty (60) day deadline and claimant wishes to pursue the Asbestos Unsecured PT Trust Claim, then the Asbestos PT Trust will within fifteen (15) days of receipt of this notification send the claimant an authorization to commence litigation.

　　　　　b.　　Rejection by Asbestos PI Trust

　　　　　　　If the Asbestos PI Trust rejects the nonbinding award, then claimant may elect binding arbitration or request that the Asbestos PT Trust forward the authorization to commence litigation.

**V.     GENERAL ADR PROCEDURES GOVERNING PRO BONO EVALUATION, MEDIATION, NON-BINDING ARBITRATION, AND BINDING ARBITRATION**

**A.     ADR Submissions**

The claimant's submissions (with the exception of the binding arbitration's written argument) will be reviewed by the ADR administrator before they are submitted to the pro bono evaluator, mediator, or arbitrator. If they contain materials not previously submitted in support of the Asbestos Unsecured PT Trust Claim, then the Asbestos PI Trust Unsecured Claims department will review the additional information and determine the effect, if any, it would have on the

Asbestos PI Trust's evaluation of the Asbestos Unsecured PI Trust Claim. In appropriate situations, a new offer may be made to the claimant.

If an attorney or other agent represents the claimant, both the attorney <u>and</u> the claimant must also sign the Election and Agreement for Binding Arbitration. The attorney or agent may not sign in place of, or for, the claimant unless the claimant is incapacitated, incompetent, or deceased and the attorney or agent has been designated legally to act on the claimant's behalf Documentation of this legal designation will be required.

**B.    No Grouping or Bundling of Asbestos Unsecured PI Trust Claims**

As a general matter, there shall be no grouping or bundling of Asbestos Unsecured PT Trust Claims by separate claimants at any stage of the ADR or arbitrations even if the Asbestos Unsecured PT Trust Claims are related and/or the claimants have the same counsel. Each claimant must proceed individually through the ADR and arbitration processes with all Asbestos Unsecured PI Trust Claims that claimant may have or may represent. This provision is intended to separate Asbestos Unsecured PI Trust Claims of different exposed persons and has no effect upon multiple Asbestos Unsecured PT Trust Claims brought by a claimant's representative, such as heirs of a deceased worker. However, the Asbestos PI Trust, in its sole discretion, may decide that it would be expeditious to allow the conduct of arbitration proceeding with respect to more than one Asbestos Unsecured PI Trust Claim of different exposed persons, provided that the arbitrator individually values each such Asbestos Unsecured PI Trust Claim in accordance with the valuation factors set forth in section 5.3(b)(2) of the TDP, and provided that the respective claimants' separate positions in the Asbestos PI Trust's FIFO Processing and Payment Queues are maintained.

**C.    No Ex Parte Communication**

There shall be no ex parte communication between the arbitrator or pro bono evaluator and any counsel or party in any matter. All correspondence between the arbitrator or pro bono evaluator and the parties will be facilitated by the Private Adjudication Coordinator.

**D.    Asbestos Unsecured PI Trust Claims and Defenses**

All available Asbestos Unsecured PT Trust Claims and defenses which exist under the law subject to the claimant's election under the TDP shall be available to both sides.

**E.    Costs of ADR**

**1.    ADR expenses**

The Asbestos PI Trust will pay the arbitrator's fee for non-binding or binding arbitration up to two thousand dollars ($2,000.00) per Asbestos Unsecured PI

Trust Claim depending on the length of the hearing. The pro bono evaluator is a volunteer and thus no fee will be incurred. The Asbestos PT Trust will assume costs of meeting and hearing facilities for arbitration. Claimants will pay their costs and attorney fees including any expenses incurred should the claimant testify.

**2.**     No Filing Fee

No filing fee is required of the claimant for any ADR selection, unless the Asbestos PI Trust with the consent of the Asbestos TAC and the Legal Representative decide that it would be in the best interests of the Asbestos PI Trust and its beneficiaries to adopt such a fee.

**F.     Waiver of Objection to Rules Infraction**

Either party who continues with the pro bono evaluation, mediation, non-binding arbitration, or binding arbitration proceeding after knowing that any provision or requirement of the applicable rules has not been complied with, and who fails to state a timely objection in writing to the arbitrator, mediator, or pro bono evaluator, shall be deemed to have waived the right to object. A timely objection by a claimant must be stated in writing and mailed to the Asbestos PT Trust with instructions to forward the objection to the Private Adjudication Coordinator and to the arbitrator, mediator, or pro bono evaluator. A timely objection by the Asbestos PI Trust will be mailed to the claimant and to the Private Adjudication Coordinator with instructions to forward to the arbitrator, mediator, or pro bono evaluator.

**G.     Serving of Notices and Other Papers**

Each party to the ADR and arbitration agreements shall be deemed to have consented that any papers, notices, or processes necessary or proper for the initiation or continuation of ADR and Arbitration proceedings under these rules may be served upon such party as follows:

**1.**     by regular U.S. mail or overnight courier addressed to such party or their attorneys at their last known address;

**2.**     by facsimile transmission, if a copy of the transmitted papers is mailed addressed to the party or their attorney at their last known address within twenty-four (24) hours of the facsimile transmission; or

**3.**     by personal service, within or without the state where the pro bono evaluation, mediation or arbitration is to be held, whether the party is within or without the United States of America.

**H.     Time Limits Triggered Upon Receipt**

1.    Documents sent by U.S. mail under these rules shall be deemed received three (3) business days after the date of postmark. Documents sent via overnight mail shall be deemed received on the next business day after mailing.

2.    Documents sent via facsimile transmission shall be deemed received on the business day that the transmission is received.

## I.    Exclusion of Liability

Neither the Private Adjudication Coordinator, nor the mediator, nor the arbitrator, nor the pro bono evaluator shall be liable to any party for any act or omission in connection with any evaluation conducted under these rules.

## J.    Relationship of Rules to Election Form for Pro Bono Evaluation, Request for Mediation, Non-binding Arbitration Agreement, or Binding Arbitration Agreement

These Rules shall be deemed a part of, and incorporated by reference in, every duly executed ADR agreement or arbitration agreement and shall be binding on all parties.

## K.    Arbitrator/Pro Bono Evaluator Immunity

Arbitrators or pro bono evaluators who serve pursuant to these rules shall have the same immunity as judges for their official acts.

## L.    Jurisdiction

Any dispute under these rules shall be subject to the jurisdiction of the United States Bankruptcy Court for the Western District of Pennsylvania.

## M.    Statement of Confidentiality

1.    All ADR and arbitration proceedings and information relating to the proceeding will be confidential. Neither party shall disclose the information obtained during the proceedings or the valuation placed on the case by an arbitrator or pro bono evaluator to anyone or use such information or valuation in any further proceeding except as necessary to maintain the Asbestos PI Trust's obligation to report to the Bankruptcy Court and to provide ongoing evaluation by the Asbestos PT Trust and Asbestos TAC. Except for documents prepared by a non-party which are introduced as evidence before an arbitrator or pro bono evaluator, any document prepared by another party, attorney or other participant in anticipation of the ADR is privileged and shall not be disclosed to any court or arbitrator/pro bono evaluator or construed for any purpose as an admission against interest.

2.    All ADR and arbitration proceedings shall be deemed a settlement conference pursuant to Rule 408 of the Federal Rules of Evidence. Except by agreement of the parties, the parties will not introduce into evidence in any other proceedings the fact that there was an arbitration, the nature or amount of the award, and written submissions may be used for purposes of showing accord and satisfaction or res judicata. In binding arbitration, the decision of the arbitrator may be admissible in the event the claimant improperly seeks to litigate the Asbestos Unsecured PT Trust Claim. The binding arbitration award shall be admissible in support of a motion to enjoin such litigation. No arbitrator or pro bono evaluator will ever be subpoenaed or otherwise required by any party or any third party, to testify~, or produce records, notes, or work product in any future proceedings.

### N.    Amendments

Except as otherwise ruled by the Bankruptcy Court, these rules, as they may from time to time be amended by the Trustees, with the consent of the Asbestos TAC and the Legal Representative, will be binding on all parties in the form in which they are in force on the date the claimant signs the election agreement.

### O.    Time Limits

The time limits included in these procedures are to be strictly enforced. Any time limit set forth herein may be extended by agreement of the parties or for cause shown to the neutral party presiding over the particular ADR or arbitration proceeding. Any request for extension, however, shall first be made to the opposing party and then, if the parties cannot agree, shall be submitted to the Private Adjudication Coordinator who will request a ruling from the pro bono evaluator, mediator, or arbitrator as the case may be.

Although the deadlines may be extended by agreement or for cause shown, failure to comply with a deadline without obtaining an extension may result in withdrawal of the Asbestos Unsecured PT Trust Claim. Promptly after a claimant fails to comply with a specified deadline without obtaining an extension, the Asbestos PI Trust shall send the claimant written notice of the failure to comply. If the claimant does not take any action on the Asbestos Unsecured PT Trust Claim, then thirty (30) days thereafter the Asbestos Unsecured PT Trust Claim will be deemed withdrawn.