# Exhibit F

**COMBUSTION ENGINEERING 524(g)**

**ASBESTOS PI TRUST DISTRIBUTION PROCEDURES**
**AS MODIFIED THROUGH JUNE 4, 2003**

These Combustion Engineering 524(g) Asbestos PI Trust Distribution Procedures ("TDP") provide for satisfying all asbestos-related personal injury and death claims caused by conduct of and/or exposure to products for which Combustion Engineering, Inc. ("CE") has legal responsibility, as provided in and required by Combustion Engineering, Inc.'s Plan of Reorganization ("Plan") and the Combustion Engineering 524(g) Asbestos PI Trust Agreement ("Trust Agreement"). These TDP do not address Basic Asbestos Personal Injury Claims, Basic Derivative Asbestos Personal Injury Claims, Lummus Asbestos Personal Injury Claims, or Lummus Derivative Asbestos Personal Injury Claims. Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Glossary for the Plan Documents for the Plan (the "Glossary") or in the Trust Agreement.

The Plan and the Trust Agreement establish the Asbestos PI Trust. The Trustees of the Asbestos PI Trust shall implement and administer this TDP in accordance with the Trust Agreement.

## SECTION I

### Introduction

**1.1    Purpose.** This TDP has been adopted pursuant to the Trust Agreement. It is designed to provide fair and equitable treatment for all CE Asbestos Trust Claims that may presently exist or may arise in the future in substantially the same manner.

**1.2    Interpretation.** Nothing in this TDP shall be deemed to create a substantive right for any claimant.

*PLAN --EXHIBIT G --TDP*

**1.3    Definitions.**    The following capitalized terms used herein shall have the meanings set forth below:

"Allowed" shall have the meaning set forth in the Glossary.

"Asbestos PI Trust" shall have the meaning set forth in the Glossary.

"Average Value" means the average value for Disease Levels as set forth in Section 5.3(b)(3).

"Basic Asbestos Personal Injury Claims" shall have the meaning set forth in the Glossary.

"Basic Derivative Asbestos Personal Injury Claims" shall have the meaning set forth in the Glossary.

"Category A Claims" means TDP Determined Claims involving severe asbestosis and malignancies (Disease Levels IV – VIII) that were unliquidated as of the Petition Date.

"Category B Claims" means TDP Determined Claims involving non-malignant Asbestosis or Pleural Disease (Disease Levels II and III) that were unliquidated as of the Petition Date.

"CE" means Combustion Engineering, Inc.

"CE Asbestos Trust Claims" means CE Asbestos Personal Injury Claims, CE Derivative Asbestos Personal Injury Claims, Demands, and the Unpaid Portion of Settled Asbestos Claims.

"CE Derivative Asbestos Personal Injury Claims" shall have the meaning set forth in the Glossary.

*PLAN --EXHIBIT G --TDP*

"CE Exposure" means exposure to asbestos or asbestos-containing products for which CE has legal responsibility as determined by the Asbestos PI Trust.

"Claimant's Jurisdiction" means (a) the jurisdiction in which the claim was filed (if at all) against CE in the tort system prior to the Petition Date or (b) if the claim was not filed against CE in the tort system prior to the Petition Date, at the claimant's election, (i) the jurisdiction in which the claimant resides at the time of diagnosis, (ii) the jurisdiction in which the claimant resides when the claim is filed with the Asbestos PI Trust, or (iii) any jurisdiction in which the claimant experienced CE Exposure.

"Claims Materials" means suitable and efficient claims materials prepared by the Asbestos PI Trust as described in Section VI.

"Claims Payment Ratio" means the claims payment ratio set forth in Section 2.5.

"Claims Reviewer" shall have the meaning set forth in the Master Settlement Agreement.

"Derivative Asbestos Personal Injury Claims" shall have the meaning set forth in the Plan.

"Direct Claimant" has the meaning set forth in Section 5.6.

"Disease Levels" means the eight asbestos-related disease levels defined in Section 5.3(a)(3).

"Expedited Review" means a review pursuant to the Expedited Review Process.

"Expedited Review Process" means the process to liquidate TDP Determined Claims set forth in Section 5.3(a).

"Exigent Hardship Claim" means a claim that meets the criteria set forth in Section 5.4(b).

"Extraordinary Claim" shall have the meaning set forth in Section 5.4(a).

"FIFO" means first-in-first-out.

"FIFO Payment Queue" shall have the meaning set forth in Section 5.1(c).

"FIFO Processing Queue" shall have the meaning set forth in Section 5.2.

3

*PLAN -- EXHIBIT G -- TDP*

"Final Order" shall have the meaning set forth in the Glossary.

"Future Claimants' Representative" shall have the meaning set forth in the Glossary.

"Indirect Claimant" has the meaning set forth in Section 5.6.

"Individual Review Process" means the individual review process described in Section 5.3(b).

"Initial Claims Filing Date" means on or before the date six months after the Effective Date.

"Lummus Asbestos Personal Injury Claims" shall have the meaning set forth in the Glossary.

"Lummus Derivative Asbestos Personal Injury Claims" shall have the meaning set forth in the Glossary.

"Master Settlement Agreement" shall have the meaning set forth in the Glossary.

"Maximum Annual Payment" shall have the meaning set forth in Section 2.4.

"Maximum Available Payment" shall have the meaning set forth in Section 2.4.

"Maximum Extraordinary Value" shall have the meaning set forth in Section 5.4(a).

4

"Maximum Value" means the maximum value for Disease Levels as set forth in Section 5.3(b)(3).

"Medical/Exposure Criteria" means the medical/exposure criteria for each Disease Level set forth in Section 5.3(a)(3).

"Notice Form" shall have the meaning set forth in the Master Settlement Agreement.

"Payment Category 1" shall have the meaning set forth in the Master Settlement Agreement.

"Payment Category 2" shall have the meaning set forth in the Master Settlement Agreement.

"Payment Category 3" shall have the meaning set forth in the Master Settlement Agreement.

"Payment Percentage" shall have the meaning set forth in Section 4.1.

"Plan" means Combustion Engineering, Inc.'s Plan of Reorganization

"Qualified Claimant" shall have the meaning set forth in the Master Settlement Agreement.

"Reduced Payment Option" shall have the meaning set forth in Section 2.5.

"Scheduled Value" means the scheduled value for each of the seven Disease Levels eligible for Expedited Review as set forth in Section 5.3(a)(3).

"Significant Occupational Exposure" means employment for a cumulative period of at least five years in an industry and an occupation in which the claimant (a) handled raw asbestos fibers on a regular basis; (b) fabricated asbestos-containing products so that the claimant in the fabrication process was exposed on a regular basis to raw asbestos fibers; (c) altered, repaired or otherwise worked with an asbestos-containing product such that the claimant was exposed on a regular basis to asbestos fibers; or (d) was employed in an industry and occupation such that the claimant worked on a regular basis in close proximity to workers engaged in the activities described in (a), (b) and/or (c).

"Submitted Administrative Claims" shall have the meaning set forth in the November

*PLAN --EXHIBIT G --TDP*

22, 2002 Supplement to the Master Settlement Agreement.

"TAC" shall have the meaning set forth in the Glossary.

"TDP" means these Combustion Engineering 524(g) Asbestos PI Trust Distribution Procedures.

"TDP Determined Claims" means CE Asbestos Trust Claims (other than the Unpaid Portion of Settled Asbestos Claims).

"Trust Agreement" means the Combustion Engineering 524(g) Asbestos PI Trust Agreement.

"Trustee" shall have the meaning set forth in the Glossary.

"Unpaid Portion of Settled Asbestos Claims" shall have the meaning set forth in the Glossary.

## SECTION II

### Overview

**2.1    Asbestos PI Trust Goals.**    The goal of the Asbestos PI Trust is to treat all holders of CE Asbestos Trust Claims equitably.  This TDP furthers that goal by setting forth procedures for processing CE Asbestos Trust Claims and paying Allowed CE Asbestos Trust Claims generally on an impartial, first-in-first-out ("FIFO") basis, with the intention of paying all holders of Allowed CE Asbestos Trust Claims over time as equivalent a share as possible of the value of such claims based on historical values for substantially similar claims in the tort system.  To this end, the TDP establishes a schedule of eight asbestos-related Disease Levels, as defined in Subsection 5.4(a)(3) of these TDP, all of which have Medical/Exposure Criteria set forth in Subsection 5.4(a)(3), seven of which have Scheduled Values, as set forth in Subsections 5.3(a)(3), and five of which have both anticipated Average Values and Maximum Values, set forth in Subsection 5.3(b)(3), as well as Maximum Extraordinary Values, set forth in Subsection 5.4(a). The Disease Levels, Medical/Exposure Criteria, Scheduled Values, Average Values, Maximum Values and Maximum Extraordinary

Values have all been determined with the intention of achieving a fair allocation of the Asbestos PI Trust's funds among claimants suffering from different disease processes in light of the most current and accurate information available at the time and considering the settlement history of CE and the rights claimants would have in the tort system absent CE's bankruptcy.

2.2    **Claims Liquidation Procedures.**    CE Asbestos Trust Claims (including any CE Asbestos Trust Claim that was liquidated prior to the Petition Date other than pursuant to the Master Settlement Agreement, but excluding the Unpaid Portion of Settled Asbestos Claims) ("TDP Determined Claims") shall be processed and determined based on their place in the FIFO Processing Queue to be established pursuant to Sections 5.1(a) and 5.1(b) below. The Asbestos PI Trust shall liquidate all TDP Determined Claims that meet the presumptive Medical/Exposure Criteria of Disease Levels I – V, VII or VIII efficiently and expeditiously under the Expedited Review Process described in Section 5.3(a) below. TDP Determined Claims in Disease Levels I – V, VII or VIII that do not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level may undergo the Individual Review Process described in Section 5.3(b) below. In such a case, notwithstanding that the TDP Determined Claim does not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level, the Asbestos PI Trust can offer the claimant an amount up to the Scheduled Value of the relevant Disease Level if the Asbestos PI Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system.

TDP Determined Claims in Disease Levels IV - VIII tend to raise more complex valuation issues than the TDP Determined Claims in Disease Levels I – III. Accordingly, (a) claimants holding TDP Determined Claims involving Disease Level VI (Lung Cancer 2) may be liquidated only pursuant to the Individual Review Process and (b) claimants holding TDP Determined Claims involving Disease Levels IV, V, VII or VIII may in addition or alternatively seek to establish a liquidated value for such claim that is greater than the Scheduled Value of the relevant Disease Level by electing the Individual Review Process.

*PLAN --EXHIBIT G --TDP*

However, the liquidated value of a more serious TDP Determined Claim involving Disease Level IV, V, VII or VIII that undergoes the Individual Review Process for valuation purposes may be determined to be less than its Scheduled Value, and in any event shall not exceed the Maximum Value for the relevant Disease Level set forth in Section 5.3(b)(3) below, unless such TDP Determined Claim qualifies as an Extraordinary Claim, in which case its liquidated value shall not exceed the Maximum Extraordinary Value specified in Section 5.4(a) below.

Based upon CE's claims settlement history, applicable tort law and current projections of present and future unliquidated CE Asbestos Trust Claims, the Scheduled Values and Maximum Values set forth in Section 5.3(b)(3) have been established for each of the five more serious Disease Levels that are eligible for Individual Review, with the expectation that the combination of settlements at the Scheduled Values and those resulting from the Individual Review Process will result in the Average Values also set forth in that provision.

Certain unresolved disputes over a claimant's medical condition, exposure history and/or the liquidated value of a TDP Determined Claim shall be subject to binding or non-binding arbitration, at the election of the claimant, as provided in Section 5.10. Arbitrable disputes with the Asbestos PI Trust that cannot be resolved by non-binding arbitration may be resolved in the tort system as provided in Sections 5.11 and 7.6 below. However, if and when a claimant obtains a judgment in the tort system, the judgment will be payable (subject to the Payment Percentage, Maximum Annual Payment, and Claims Payment Ratio provisions set forth below) as provided in Section 7.7 below.

2.3    **Application of the Payment Percentage.** After the liquidated value of a CE Asbestos PI Claim (other than a claim involving Disease Level I – Cash Discount Payment) is determined pursuant to the procedures set forth herein for Expedited Review, Individual Review, arbitration, or litigation in the tort system, or pursuant to the Master Settlement Agreement, as applicable, the claimant will ultimately receive a pro-rata share of such liquidated value based on the Payment Percentage described in Section 4.1 below. The

8

Payment Percentage may be adjusted upwards or downwards from time to time by the Asbestos PI Trust, with the consent of the TAC and the Future Claimants' Representative, to reflect then-current estimates of the Asbestos PI Trust's assets and its liabilities, as well as the then-estimated value of then-pending and future claims. However, any adjustment to the initial Payment Percentage shall be made only pursuant to Section 4.2 below. If the Payment Percentage is increased over time, claimants whose claims were liquidated and paid in prior periods under the TDP will not receive additional payments. Because there is uncertainty in the prediction of both the number and severity of future CE Asbestos Trust Claims, and the amount of the Asbestos PI Trust's assets, no guarantee can be made as to what Payment Percentage of a CE Asbestos Trust Claim's liquidated value will be paid to the holder of any such claim.

**2.4   Asbestos PI Trust's Determination of the Maximum Annual Payment.** The Asbestos PI Trust shall estimate or model the amount of cash flow anticipated to be necessary over its entire life to ensure that funds will be available to treat all present and future claimants as similarly as possible. The Asbestos PI Trust will be empowered to pay up to a certain limited amount during each fiscal year, which amount shall be determined annually by the Trustees with the consent of the TAC and the Future Claimants' Representative (the "Maximum Annual Payment"), and shall be calculated after reserves or other provision for Trust Expenses due in the related fiscal year have been established such that the application of the assets of the Asbestos PI Trust over its life shall correspond with the needs created by the anticipated flow of CE Asbestos Trust Claims, taking into account the Payment Percentage provisions set forth in Sections 2.3 and 4.2. The Asbestos PI Trust's aggregate distributions to all claimants for a particular fiscal year shall not exceed the Maximum Annual Payment determined for that year.

Subject to Sections 5.1(a) and 5.1(b) below, in distributing the Maximum Annual Payment, the Asbestos PI Trust shall first allocate such Maximum Annual Payment to the then-outstanding amount of the Unpaid Portion of Settled Asbestos Claims (subject to and after

application of the Payment Percentage), if any, and to previously liquidated TDP Determined Claims involving Disease Level I (Cash Discount Payment), in proportion to the aggregate value of each group of claims. The remaining portion of the Maximum Annual Payment, if any (the "Maximum Available Payment"), shall then be allocated and used to satisfy all other previously liquidated CE Asbestos Trust Claims, subject to the Claims Payment Ratio set forth in Section 2.5 below and the Payment Percentage. In the event there are insufficient funds in any year to pay the total amount of the outstanding Unpaid Portion of Settled Asbestos Claims and/or TDP Determined Claims involving Disease Level I, the available funds allocated to that group of claims shall be paid to the maximum extent to claimants in the particular group based on their place in the FIFO Payment Queue. Claims in each group for which there are insufficient funds shall be carried over to the next year and shall remain at the head of the FIFO Payment Queue.

2.5    **Claims Payment Ratio.**    Based upon CE's claims settlement history and analysis of present and future claims, a Claims Payment Ratio has been determined which, as of the Effective Date, has been set at 58% for TDP Determined Claims involving severe asbestosis and malignancies (Disease Levels IV – VIII) ("Category A Claims"), and at 42% for TDP Determined Claims involving non-malignant Asbestosis or Pleural Disease (Disease Levels II and III) ("Category B Claims"). The Claims Payment Ratio shall not apply to the Unpaid Portion of Settled Asbestos Claims or to any TDP Determined Claims for Other Asbestos Disease (Disease Level I - Cash Discount Payment). In each year, after the determination of the Maximum Available Payment, by application of the Claims Payment Ratio, 58% (which percentage shall be modified to correspond with each change, if any, in the Claims Payment Ratio after the Effective Date) of the Maximum Available Payment will be allocated to, and available to pay liquidated Category A Claims and 42% (which percentage shall be modified to correspond with each change, if any, in the Claims Payment Ratio after the Effective Date) will be allocated to, and available to pay, liquidated Category B Claims, in each case that have been liquidated since the Petition Date.

10

*PLAN --EXHIBIT G --TDP*

In the event there are insufficient funds in any year to pay the liquidated Category A Claims and/or the liquidated Category B Claims, the available funds allocated to the particular Category shall be paid to the maximum extent to claimants in the particular Category based on their place in the FIFO Payment Queue described in Section 5.1(c) below. Claims for which there are insufficient funds will be carried to the next year where they will remain at the head of the FIFO Payment Queue. If there are excess funds in either or both Categories, because there is an insufficient amount of liquidated claims to exhaust the amount of the Maximum Available Payment allocated to that Category by application of the Claims Payment Ratio, then the excess funds for either or both Categories will be rolled over and remain dedicated to the respective Category to which they were originally allocated.

The 58%/42% Claims Payment Ratio and its rollover provision shall apply to all TDP Determined Claims (other than TDP Determined Claims involving Disease Level I-Cash Discount Payment), and shall not be amended until the fifth anniversary of the Effective Date. Thereafter, both the Claims Payment Ratio and its rollover provision shall be continued absent circumstances, such as a significant change in law or medicine, necessitating amendment to avoid a manifest injustice. The accumulation, rollover and subsequent delay in the payment of claims resulting from the application of the Claims Payment Ratio, shall not, in and of itself, constitute such circumstances, nor may an increase in the numbers of Category B Claims beyond those predicted or expected be considered as a factor in deciding whether to reduce the percentage allocated to Category A Claims and provide a corresponding increase in the percentage allocated to Category B Claims.

In considering whether to make any amendments to the Claims Payment Ratio and/or its rollover provisions, the Trustees should consider the reasons for which the Claims Payment Ratio and its rollover provisions were adopted, the settlement history that gave rise to its calculation, and the foreseeability or lack of foreseeability of the reasons why there would be any need to make an amendment. In that regard, the Trustees should keep in mind the interplay between the Payment Percentage and the Claims Payment Ratio as it affects the

11

net cash actually paid to claimants. In any event, no amendment to the Claims Payment Ratio may be made without the consent of the TAC and the Future Claimants' Representative pursuant to the consent process set forth in Sections 6.6 and 7.7 of the Trust Agreement.

  **2.6**  **Indemnity and Contribution Claims.** As set forth in Section 5.6 below, CE Derivative Asbestos Personal Injury Claims, if any, will be subject to the same categorization, and payment provisions of this TDP as all other CE Asbestos Trust Claims.

### SECTION III

### <u>TDP Administration</u>

  **3.1**  **Trust Advisory Committee and Future Claimants' Representative.** Pursuant to the Plan and the Trust Agreement, this TDP will be administered by the Trustees in consultation with the TAC (which represents the interests of holders of present CE Asbestos Trust Claims), and the Future Claimants' Representative (who represents the interests of holders of CE Asbestos Trust Claims that may be asserted in the future). The Trustees shall obtain the consent of the TAC and the Future Claimants' Representative on any amendments to this TDP pursuant to Section 8.1 below, and on such other matters as are otherwise required herein or in the Trust Agreement. The Trustees shall also consult with the TAC and the Future Claimants' Representative on such matters as are provided below and in Section 3.1(e) of the Trust Agreement. The initial members of the TAC and the initial Future Claimants' Representative are identified on the signature pages to the Trust Agreement.

  **3.2**  **Consent and Consultation Procedures.** In those circumstances in which consultation or consent is required hereunder, the Trustees will provide written notice to the TAC and the Future Claimants' Representative of the specific amendment or other action that is proposed. The Trustees will not implement such amendment nor take such action unless and until the parties have engaged in the consent process described in Sections 6.6 and 7.7 of the Trust Agreement, respectively.

### SECTION IV

*PLAN --EXHIBIT G --TDP*

**Payment Percentage; Periodic Estimates; De Minimis Distributions**

4.1    **Uncertainty of CE's Personal Injury Asbestos Liabilities.**    As discussed above, there is inherent uncertainty regarding CE's total asbestos-related tort liabilities, as well as the total value of the assets available to pay such claims.  Consequently, there is inherent uncertainty regarding the amounts that holders of Allowed CE Asbestos Trust Claims will receive.  To seek to ensure substantially equivalent treatment of all present and future claims, the Trustees must determine from time to time the percentage of full liquidated value that holders of CE Asbestos Trust Claims will receive (the "Payment Percentage").

4.2    **Computation of Payment Percentage.**  The initial Payment Percentage shall be determined by the Trustees, with the consent of the TAC and the Future Claimants' Representative, to assure that the Asbestos PI Trust will be in a financial position to pay holders of unliquidated and/or unpaid CE Asbestos Trust Claims and present and future CE Asbestos Trust Claims in substantially the same manner.  The initial Payment Percentage will be calculated on the assumption that the Average Values set forth in Section 5.3(b)(3) below will be achieved with respect to existing present claims and projected future claims involving Disease Levels IV – VIII.

The initial Payment Percentage, and any subsequently applicable Payment Percentage, shall be subject to change pursuant to the terms of this TDP and the Trust Agreement if the Trustees, with the consent of the TAC and the Future Claimants' Representative, determine that an adjustment is required.  In making any such adjustment, the Trustees, the TAC and the Future Claimants' Representative shall take into account the most current and accurate information available at the time.  No less frequently than once every three years, commencing with the first day of January occurring more than three years after the Plan is consummated, the Trustees shall reconsider the then-applicable Payment Percentage to assure that it is based on accurate, current information and may, after such reconsideration, change the Payment Percentage if necessary with the consent of the TAC and the Future Claimants' Representative. The Trustees shall also reconsider the then-applicable Payment Percentage at

shorter intervals if they deem such reconsideration to be appropriate or if requested to do so by the TAC or the Future Claimants' Representative.

The Trustees must base their determination of the Payment Percentage on current estimates of the number, types, and values of present and future CE Asbestos Trust Claims, the value and liquidity of the assets then available to the Asbestos PI Trust for their payment, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of funds to pay a comparable percentage of full value to all holders of CE Asbestos Trust Claims. When making these determinations, the Trustees shall exercise common sense and flexibly evaluate all relevant factors.

**4.3    Applicability of the Payment Percentage.**  No holder of a CE Asbestos Trust Claim other than a CE Asbestos Trust Claim involving Disease Level I (Cash Discount Payment) shall receive a payment that exceeds the Payment Percentage of the relevant liquidated value of such CE Asbestos Trust Claim, except as otherwise provided in Section 5.1(c) below for CE Asbestos Trust Claims involving deceased or incompetent claimants for which court approval of the Asbestos PI Trust's offer is required.  CE Asbestos Trust Claims involving Disease Level I (Cash Discount Payment) shall not be subject to the Payment Percentage, but shall instead be paid the full amount of their Scheduled Value as set forth in Section 5.3(a)(3) below.

Except as provided in the remainder of this paragraph, the Payment Percentage applied to a TDP Determined Claim will be the one in effect at the time the Asbestos PI Trust's offer was made or, with regard to the Unpaid Portion of Settled Asbestos Claims, when the Unpaid Portion of a Settled Asbestos Claim is paid.  If a redetermination of the Payment Percentage has been proposed in writing by the Trustees to the TAC and the Future Claimants' Representative but has not yet been adopted, the claimant shall receive the lower of the current Payment Percentage or the proposed Payment Percentage. However, if the proposed Payment Percentage was the lower amount but is not subsequently adopted, the claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount,

*PLAN --EXHIBIT G --TDP*

subject to the limitation provided if Subsection 4.4. Conversely, if the proposed Payment Percentage was the higher amount and is subsequently adopted, the claimant shall thereafter receive the difference between the lower current amount and the higher adopted amount, subject to the limitation in Subsection 4.4.

### 4.4    De Minimis Distributions.

Notwithstanding any other provision of the TDP, the Trust Agreement or the Plan, the Trustees shall not be required to make distributions to any holder of an Allowed CE Asbestos Trust Claim (other than the holder of an Allowed CE Asbestos Trust Claim involving Disease Level I Cash Discount Payment), in an amount less than $100.00. Cash allocated to an Allowed CE Asbestos Trust Claim but withheld from distribution pursuant to this Section 4.4 shall be held by the Trustees for the account of and future distribution to the holder of such Allowed CE Asbestos Trust Claim in the event the holder of such Allowed CE Asbestos Trust Claim becomes entitled to a distribution which, together with all distributions withheld pursuant to this Section 4.4, exceeds $100.00.

### 4.5    Offsets.

If an Allowed CE Asbestos Trust Claim is secured by an appeal bond or is entitled to the benefit of any other security provided by or on behalf of CE, the Asbestos PI Trust shall offset against the Allowed Amount of such CE Asbestos Trust Claim an amount equal to the amount such holder is entitled to receive from, under or in respect of such appeal bond or other security, and the amount the holder of such CE Asbestos Trust Claim shall receive under this TDP shall equal the Allowed Amount of such claim, first reduced by such offset, and then multiplied by the applicable Payment Percentage.

## SECTION V

### Resolution of CE Asbestos Trust Claims.

### 5.1    Ordering, Processing and Payment of Claims.

### 5.1(a)    Ordering of TDP Determined Claims.

**5.1(a)(1)  Establishment of the FIFO Processing Queue.** The Asbestos PI Trust will order TDP Determined Claims for processing and determination purposes on a FIFO basis except as otherwise provided herein (the "FIFO Processing Queue").  For all TDP Determined Claims filed on or before the date six months after the Effective Date (the "Initial Claims Filing Date"), a claimant's position in the FIFO Processing Queue shall be determined as of the first to occur of (i) the date prior to the Petition Date that the specific TDP Determined Claim was either filed against CE in the tort system or was actually submitted to CE pursuant to an administrative settlement agreement; (ii) the date before the Petition Date that a TDP Determined Claim was filed against another defendant in the tort system if at the time such claim was subject to a tolling agreement with CE; (iii) the date after the Petition Date but before the Effective Date that the TDP Determined Claim was filed against another defendant in the tort system; or (iv) the date after the Effective Date but on or before the Initial Claims Filing Date that the TDP Determined Claim was filed with the Asbestos PI Trust.

Following the Initial Claims Filing Date, the claimant's position in the FIFO Processing Queue shall be determined by the date the claim was filed with the Asbestos PI Trust.  If any claims are filed on the same date, the claimant's position in the FIFO Processing Queue shall be determined by the date of the diagnosis of the asbestos-related disease.  If any claims are filed and diagnosed on the same date, the claimant's position in the FIFO Processing Queue shall be determined by the claimant's date of birth, with older claimants given priority over younger claimants.

**5.1(a)(2)     Effect of Statutes of Limitations and Repose.** To be eligible for a place in the FIFO Processing Queue, a TDP Determined Claim must meet either (i) for claims first filed in the tort system against CE prior to the Petition Date, the applicable federal and state statute of limitation and repose that was in effect at the time of the filing of the claim in the tort system, or (ii) for claims not filed against CE in the tort system prior to the Petition Date, the applicable statute of limitation and repose that was in effect at the time

16

of the filing with the Asbestos PI Trust. However, the running of the relevant statute of limitation shall be tolled as of the earliest of (A) the actual filing of the claim against CE prior to the Petition Date, whether in the tort system or by submission of the claim to CE pursuant to an administrative settlement agreement; (B) the filing of the claim against another defendant in the tort system prior to the Petition Date if the claim was tolled against CE at the time by an agreement or otherwise; (C) the filing of a claim after the Petition Date but prior to the Effective Date against another defendant in the tort system; (D) the filing of a proof of claim in the Chapter 11 Case prior to the Effective Date; or (E) the filing of a proof of claim with the requisite supporting documentation with the Asbestos PI Trust after the Effective Date.

If a CE Asbestos Trust Claim meets any of the tolling provisions described in subsection (A), (B), (C) or (D) of the preceding sentence, it will be treated as timely filed regardless of the date that it is actually filed with the Asbestos PI Trust. Also, any claims that were first diagnosed after the Petition Date, irrespective of the application of any relevant statute of limitation or repose, may be filed with the Asbestos PI Trust within three (3) years after the date of diagnosis or within three (3) years after the Effective Date, whichever occurs later.

**5.1(b) Processing of TDP Determined Claims.** As a general practice, the Asbestos PI Trust will review its claims files on a regular basis and notify all claimants whose claims are likely to come up in the FIFO Processing Queue in the near future, except that TDP Determined Claims filed within 70 days of the Effective Date shall be processed before TDP Determined Claims filed 71 days or more after the Effective Date. Within ten (10) Business Days of the Effective Date, the Asbestos PI Trust shall send notice, by first class mail, to all known holders of Asbestos PI Trust Claims, either directly, or if appropriate through their counsel, and all other counsel identified to the Asbestos PI Trust by Connecticut Valley Claims Services Company as representing any person who has asserted a claim against CE, of the priority in processing given to TDP Determined Claims filed on, or within, 70 days of the Effective Date.

17

**5.1(c)  Payment of TDP Determined Claims.**    TDP Determined Claims involving Disease Level I, Category A Claims and Category B Claims that have been liquidated by the Expedited Review Process as provided in Section 5.3(a) below, by the Individual Review Process as provided in Section 5.3(b) below, by arbitration as provided in Section 5.10 below, or in the tort system as provided in Sections 5.11 and 7.6 below, shall be paid in FIFO order based on the date their liquidation became final (the "FIFO Payment Queue"), all such payments being subject to the Payment Percentage, the Maximum Available Payment, and the Claims Payment Ratio, except as otherwise provided herein; provided, however, that TDP Determined Claims filed within 70 days of the Effective Date shall be processed and placed into the FIFO Payment Queue before TDP Determined Claims filed 71 days or more after the Effective Date are processed and placed in the FIFO Payment Queue. The Trustees, with the consent of the TAC and the Future Claimants' Representative, may offer the option of a reduced Payment Percentage to holders of either Category A Claims or Category B Claims in return for more prompt payment (the "Reduced Payment Option").

Where the claimant is deceased or incompetent, and the settlement and payment of his or her TDP Determined Claim must be approved by a court of competent jurisdiction prior to acceptance of an offer made by the Asbestos PI Trust on the claim by the claimant's representative, such offer shall remain open so long as proceedings before that court remain pending, provided that the Asbestos PI Trust has been furnished with evidence that the settlement offer has been submitted to such court for approval.  If the offer is ultimately approved by the court and accepted by the claimant's representative, the Asbestos PI Trust shall pay the claim in the amount so offered, multiplied by the Payment Percentage in effect at the time the offer was first made.

If any claims are liquidated on the same date, each such claimant's position in the FIFO Payment Queue shall be determined by the date of the diagnosis of such claimant's asbestos-related disease, with earlier diagnosis dates given priority over later diagnosis dates. If any claims are liquidated on the same date and the respective holders' asbestos-related diseases

18

were diagnosed on the same date, the position of those claims in the FIFO Payment Queue shall be determined by the dates of the claimants' birth, with older claimants given priority over younger claimants.

### 5.2    Payment of Unpaid Portion of Settled Asbestos Claims.

As soon as practicable after the payment of those TDP Determined Claims filed within 70 days after the Effective Date in accordance with Sections 5.1(b) and 5.1(c), above, the Asbestos PI Trust shall pay the Unpaid Portion of Settled Asbestos Claims in Payment Category 1 and Payment Category 2 pursuant to and in accordance with the Trust Agreement (subject to the Payment Percentage). The Unpaid Portion of Settled Asbestos Claims shall be paid in a separate FIFO queue (with respect to the Unpaid Portion of Settled Asbestos Claims, a "FIFO Payment Queue") in the following order: First, the Unpaid Portion of Settled Asbestos Claims in Payment Category 1 (as defined in the Master Settlement Agreement), second, the Unpaid Portion of Settled Asbestos Claims in Payment Category 2 (as defined in the Master Settlement Agreement) and third, the Unpaid Portion of Settled Asbestos Claims in Payment Category 3 (as defined in the Master Settlement Agreement). The Unpaid Portion of Settled Asbestos Claims in Payment Category 3 shall be paid as soon as the Trustees determine, with the Future Claimants' Representative's consent, that the amount of the Unpaid Portion of Settled Asbestos Claims in Payment Category 3 is calculable with a reasonable degree of certainty. Prior to making the determination described in the immediately preceding sentence, the Trustees in their discretion may make partial payments with respect to the Unpaid Portion of Settled Asbestos Claims in Payment Category 3. Further, for a temporary period to start at the time the separate FIFO Payment Queue begins to pay Unpaid Portion of Settled Asbestos Claims to a time to be determined by the Trustees with the Future Claimants' Representative's consent, the Unpaid Portion of Settled Asbestos Claims shall be paid in reverse priority (*i.e.*, first, the Submitted Administrative Claims shall be processed under the terms of the Master Settlement Agreement, and paid or partially paid as Payment Category 3 claimants; second, payment or partial payment of the Unpaid Portion of Settled Asbestos

19

Claims in Payment Category 3; third, the Unpaid Portion of Settled Asbestos Claims in Payment Category 2; fourth, the Unpaid Portion of Settled Asbestos Claims in Payment Category 1). The amounts payable with respect to the Unpaid Portion of Settled Asbestos Claims shall not be subject to or taken into account in consideration of the Claims Payment Ratio, but shall be subject to the Maximum Annual Payment and Payment Percentage provisions set forth above. The position of those claims in the separate FIFO queue for the Unpaid Portion of Settled Asbestos Claims in each Payment Category shall be determined by the date on which the Claims Reviewer (as defined in the Master Settlement Agreement) completed the Notice Form (as defined in the Master Settlement Agreement) verifying that the claimant had become a Qualified Claimant (as defined in the Master Settlement Agreement) in that Payment Category. If the Claims Reviewer completed Notice Forms on the same date for persons with an Unpaid Portion of Settled Asbestos Claim in the same Payment Category, the position of those claims in the separate FIFO queue for the Unpaid Portion of Settled Asbestos Claims shall be determined by the dates of the claimants' birth, with older claimants given priority over younger claimants.

   **5.3    Resolution of Unliquidated CE Asbestos Trust Claims**. Within six months after the establishment of the Asbestos PI Trust, the Trustees, with the consent of the TAC and the Future Claimants' Representative, shall adopt procedures for reviewing and liquidating all unliquidated CE Asbestos Trust Claims, which shall include deadlines for processing such claims. Such procedures shall also require claimants seeking resolution of unliquidated CE Asbestos Trust Claims to file a proof of claim form, together with the required supporting documentation, in accordance with the provisions of Sections 6.1 and 6.2 below. It is anticipated that the Asbestos PI Trust shall provide an initial response to the claimant within six months of receiving the proof of claim form.

   All claims filed with the Asbestos PI Trust shall be deemed to be a claim for the highest Disease Level for which the claim qualifies at the time of filing, with all lower Disease

Levels for which the claim then qualifies or may qualify in the future subsumed into the higher Disease Level for both processing and payment purposes.  Upon filing of a proof of claim form established pursuant to Section 6.1, and all other Claims Materials required to be filed in accordance with the instructions delivered by the Asbestos PI Trust pursuant to Section VI, the claim shall be placed in the FIFO Processing Queue in accordance with the ordering criteria described in Sections 5.1(a) and 5.1(b) above, and shall be liquidated either under the Expedited Review Process described in Section 5.3(a) below or, in certain circumstances, the Individual Review Process described in Section 5.3(b) below.

*PLAN --EXHIBIT G --TDP*

5.3(a)        **Expedited Review Process.**

**5.3(a)(1)        In General.**   The Asbestos PI Trust's Expedited Review
Process is designed primarily to provide an expeditious, efficient and inexpensive method for
liquidating all TDP Determined Claims (except those involving Lung Cancer 2 - Disease Level
VI) where the claim can easily be verified by the Asbestos PI Trust as meeting the presumptive
Medical/Exposure Criteria for the relevant Disease Level.   Expedited Review thus provides
claimants with a substantially less burdensome process for pursuing TDP Determined Claims
than does the Individual Review Process described in Section 5.3(b) below. Expedited Review
is also intended to provide qualifying claimants a fixed and certain liquidated amount.

Thus, claims that undergo Expedited Review and meet the presumptive
Medical/Exposure Criteria for the relevant Disease Level shall be assigned the Scheduled
Value for such Disease Level set forth in Section 5.3(a)(3) below.   Except for claims involving
Other Asbestos Disease (Disease Level I), all claims liquidated by Expedited Review shall be
subject to the applicable Payment Percentage, the Maximum Available Payment, and the
Claims Payment Ratio. Claimants holding claims that cannot be liquidated by Expedited
Review because they do not meet the presumptive Medical/Exposure Criteria for the relevant
Disease Level may elect the Asbestos PI Trust's Individual Review Process set forth in Section
5.3(b) below.

**5.3(a)(2)        Claims Processing under Expedited Review.**    All
claimants seeking liquidation of their claims pursuant to Expedited Review shall file the
Asbestos PI Trust's proof of claim form described in Section 6.1.   As a proof of claim form
is reached in the FIFO Processing Queue, the Asbestos PI Trust shall determine whether the
claim described therein meets the Medical/Exposure Criteria for one of the seven Disease
Levels eligible for Expedited Review, and shall advise the claimant of its determination. If a
Disease Level is determined, the Asbestos PI Trust shall tender to the claimant an offer of
payment of the Scheduled Value for the relevant Disease Level multiplied by the applicable
Payment Percentage. If the claimant accepts the Scheduled Value, the claim shall be placed in

the FIFO Payment Queue, in accordance with Section 5.1(c) above, following which the Trust

shall disburse payment subject to the limitations of the Maximum Available Payment, Payment

Percentage and Claims Payment Ratio, if any.

**5.3(a)(3)    Disease Levels, Scheduled Values and Medical/Exposure Criteria.**    The eight disease levels covered by this TDP set forth below (each, a "Disease Level") together with the medical/exposure criteria for each such Disease Level (as applicable, the "Medical/Exposure Criteria") and the Scheduled Values for each of the seven Disease Levels eligible for Expedited Review (as applicable, the "Scheduled Value"), are set forth below:

| Disease Level | Scheduled Value | Medical/Exposure Criteria |
|---|---|---|
| Mesothelioma (Level VIII) | $90,000.00 | (1) Diagnosis[1] of mesothelioma; and (2) CE Exposure[2]. |
| Lung Cancer 1 (Level VII) | $35,000.00 | (1) Diagnosis of a primary lung cancer plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease[3], (2) six months CE Exposure (3) Significant Occupational Exposure[4], and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. |

---

[1] The requirements for a diagnosis of an asbestos-related disease that may be compensated under the provisions of this TDP are set forth in Section 5.7 below.

[2] The term "CE Exposure" is defined in Section 5.7(b)(3).

[3] Evidence of "Bilateral Asbestos-Related Nonmalignant Disease" for purposes of meeting the criteria for establishing Disease Levels I, II, V, and VII, means a report submitted by a qualified physician stating that the claimant has or had an X-ray reading of 1/0 or higher on the ILO scale, or bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification (or, solely for claims filed against CE or another asbestos defendant in the tort system prior to the Petition Date, if an ILO reading is not available, a chest x-ray reading that indicates bilateral interstitial fibrosis, bilateral interstitial markings, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification consistent with, or compatible with, a diagnosis of asbestos-related disease).

[4] The term "Significant Occupational Exposure" is defined in Section 5.7(b)(2) below.

| | | |
|---|---|---|
| Lung Cancer 2 (Level VI) | Subject to Individual Review | (1) Diagnosis of a primary lung cancer; (2) CE Exposure, and (3) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. Lung Cancer 2 (Level VI) claims are claims that do not meet the more stringent medical and/or exposure requirements of Lung Cancer **1** (Level VII) claims. All claims in this Disease Level will be individually evaluated. The estimated likely average of the individual evaluation awards for this category is $15,000.00, with such awards capped at $50,000.00 unless the claim qualifies for Extraordinary Claim treatment.

Level VI claims that show no evidence of either an underlying Bilateral Asbestos-Related Non-malignant Disease or Significant Occupational Exposure may be individually evaluated, although it is not expected that such claims will be treated as having any significant value, especially if the claimant is also a Smoker. [5] In any event, no presumption of validity will be available for any claims in this category. |
| Other Cancer (Level V) | $18,500.00 | (1) Diagnosis of a primary colo-rectal, laryngeal, esophageal, pharyngeal, or stomach cancer, plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease, (2) six months cumulative CE Exposure, (3) Significant |

---

[5] There is no distinction between Non-Smokers and Smokers for either Lung Cancer (Level VII) or Lung Cancer (Level VI), although a claimant who meets the more stringent requirements of Lung Cancer (Level VII) (evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease plus Significant Occupational Exposure), and who is also a Non-Smoker, may wish to have his or her claim individually evaluated by the PI Trust. In such a case, it is anticipated that the liquidated value of the claim might well exceed the Scheduled Value for Lung Cancer (Level VII) shown above. "Non-Smoker" means a claimant who either (a) never smoked or (b) has not smoked during any portion of the twelve (12) years immediately prior to the diagnosis of the lung cancer.

*PLAN --EXHIBIT G --TDP*

|  |  | Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the other cancer in question. |
|---|---|---|
| Severe Asbestosis (Level IV) | $35,000.00 | (1) Diagnosis of asbestosis with ILO of 2/1 or greater, or asbestosis determined by pathological evidence of asbestos[6], plus (a) TLC less than 65%, or (b) FVC less than 65% and FEV1/FVC ratio greater than 65%, (2) six months CE Exposure, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
| Asbestosis/ Pleural Disease (Level III) | $8,500.00 | Diagnosis of asbestosis with ILO of 1/0 or greater or asbestosis determined by pathology, or bilateral pleural disease of B2 or greater, plus (a) TLC less than 80%, or (b) FVC less than 80% and FEV1/FVC ratio greater than or equal to 65%, and (2) six months CE Exposure, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
| Asbestosis/ Pleural Disease (Level II) | $4,000.00 | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease, and (2) six months CE Exposure, and (3) five years cumulative occupational exposure to asbestos |
| Other Asbestos Disease (Level I - Cash Discount Payment) | $250.00 Not subject to the | (1) Diagnosis of a Bilateral Asbestos- Related Nonmalignant |

---

[6] Proof of asbestosis may be based on the pathological grading system for asbestosis described in the Special Issue of the Archives of Pathology and Laboratory Medicine, "Asbestos-associated Diseases," Vol. 106, No. 11, App. 3 (October 8, 1982).

Payment Percentage                    Disease  or  an  asbestos-related
                                       malignancy  (except  mesothelioma),
                                       and (2) CE Exposure.

These Disease Levels, Scheduled Values, and Medical/Exposure Criteria shall apply to all CE

Asbestos Trust Claims filed with the Asbestos PI Trust on or before the Initial Claims Filing

Date provided in Section 5.1 above, with the exception of the Unpaid Portion of Settled

Asbestos Claims.    Thereafter, with the consent of the TAC and the Future Claimants'

Representative, the Trustees may add to, change, or eliminate Disease Levels, Scheduled

Values, or Medical/Exposure Criteria; develop subcategories of Disease Levels, Scheduled

Values or Medical/Exposure Criteria; or determine that a novel or exceptional asbestos

personal injury claim is compensable even though it does not meet the Medical/Exposure

Criteria for any of the then-current Disease Levels.

### 5.3(b)    Individual Review Process

#### 5.3(b)(1)  In General.

##### 5.3(b)(1)(A)   Disease Levels I – III.   The Asbestos PI Trust's

Individual Review Process provides a claimant with an opportunity for individual consideration

and evaluation of a TDP Determined Claim that fails to meet the presumptive

Medical/Exposure Criteria for Disease Levels I – III.   In such a case, the Asbestos PI Trust

shall either deny the claim, or, if the Asbestos PI Trust is satisfied that the claimant has

presented a claim that would be cognizable and valid in the tort system, the Asbestos PI Trust

may offer the claimant a liquidated value amount up to the Scheduled Value for that Disease

Level, unless the claim qualifies as an Extraordinary Claim as defined in Section 5.4(a) below,

in which case the Asbestos PI Trust can offer the claimant more than the Scheduled Value for

that Disease Level but such offer of liquidated value shall not exceed the Maximum

Extraordinary Value for such claim.

##### 5.3(b)(1)(B) Disease Levels IV – VIII   Claimants holding TDP Determined

Claims in the more serious Disease Levels IV, V, VII or VIII shall be eligible to seek, and

claimants holding TDP Determined Claims in Disease Level VI shall be required to undergo,

26

Individual Review of the liquidated value of their claims, as well as of their medical/exposure evidence. The Individual Review Process is intended to result in payments equal to the full liquidated value for each claim multiplied by the Payment Percentage; however, the liquidated value of any TDP Determined Claim that undergoes Individual Review may be determined to be less than the Scheduled Value the claimant would have received under Expedited Review. Moreover, the liquidated value for a claim involving Disease Levels IV – VIII shall not exceed the Maximum Value for the relevant Disease Level set forth in Section 5.3(b)(3) below, unless the claim meets the requirements of an Extraordinary Claim described in Section 5.4(a) below, in which case its liquidated value shall not exceed the Maximum Extraordinary Value for such claims. With the exception to the processing and ordering procedures provided for TDP Determined Claims filed within 70 days of the Effective Date, as descried in Sections 5.1(b) and 5.1(c) above, because the detailed examination and valuation process pursuant to Individual Review requires substantial time and effort, claimants electing to undergo the Individual Review Process will necessarily be paid the liquidated value of their TDP Determined Claims later than would have been the case had the claimant elected the Expedited Review Process.

5.3(b)(2)    **Valuation Factors to be Considered in Individual Review.** The Asbestos PI Trust shall liquidate the value of each Individual Review claim based on the historic liquidated values of other similarly situated claims in the tort system for the same Disease Level. The Asbestos PI Trust will thus take into consideration the factors that affect the severity of damages and values within the tort system including, but not limited to (i) the degree to which the characteristics of a claim differ from the presumptive Medical/Exposure Criteria for the Disease Level in question; (ii) factors such as the claimant's age, disability, employment status, disruption of household, family or recreational activities, dependencies, special damages, and pain and suffering; (iii) evidence that the claimant's damages were (or were not) caused by asbestos exposure, including CE Exposure, (for example, alternative

27

causes, and the strength of documentation of injuries); (iv) the industry of exposure; and (v) settlements, verdicts and the claimant's and other law firms' experience in the Claimant's Jurisdiction for similarly situated claims. For these purposes, the "Claimant's Jurisdiction" is (a) the jurisdiction in which the claim was filed (if at all) against CE in the tort system prior to the Petition Date or (b) if the claim was not filed against CE in the tort system prior to the Petition Date, at the claimant's election, (i) the jurisdiction in which the claimant resides at the time of diagnosis, (ii) the jurisdiction in which the claimant resides when the claim is filed with the Asbestos PI Trust, or (iii) any jurisdiction in which the claimant experienced CE Exposure.

     **5.3(b)(3)      Scheduled, Average and Maximum Values.**  For claims involving Severe Asbestosis (Disease Level IV) or malignancies (Disease Levels V – VIII) the "Scheduled Value", "Average Value" and "Maximum Value" for each such claim are, respectively, as set forth below:

| Scheduled Disease | Scheduled Value | Average Value | Maximum Value |
| --- | --- | --- | --- |
| Mesothelioma (Level VIII) | $90,000.00 | $120,000.00 | $400,000.00 |
| Lung Cancer 1 (Level VII) | $35,000.00 | $45,000.00 | $150,000.00 |
| Lung Cancer 2 (Level VI) | Subject to Individual Review | $15,000.00 | $50,000.00 |
| Other Cancer (Level V) | $18,500.00 | $22,500.00 | $75,000.00 |
| Severe Asbestosis (Level IV) | $35,000.00 | $45,000.00 | $150,000.00 |

     These Average Values and Maximum Values shall apply to all TDP Determined Claims filed with the Asbestos PI Trust on or before the Initial Claims Filing Date as provided in Section 5.1 above. Thereafter, the Asbestos PI Trust, with the consent of the TAC and the Future Claimants' Representative pursuant to Sections 6.6 and 7.7 of the Trust Agreement, may change these valuation amounts for good cause and consistent with the amendment provisions contained in Section 8.1.

     **5.4     Categorizing Claims as Extraordinary and/or Exigent Hardship**

**5.4(a)    Extraordinary Claims.** "Extraordinary Claim" means a TDP Determined Claim that otherwise satisfies the Medical Criteria for any of Disease Levels IV - VIII and that is held by a claimant whose exposure to asbestos was at least 75% the result of CE Exposure as defined in Section 5.7(b)(3) below, where there is little likelihood of the claimant receiving a substantial recovery elsewhere. All such Extraordinary Claims shall be presented for Individual Review and, if valid, shall be entitled to an award of up to an amount equal to five (5) times the Maximum Value set forth in Section 5.3(b)(3) for claims qualifying for Disease Levels IV -V, VII and VIII, and five (5) times the Average Value for claims in Disease Level VI (in each case, the "Maximum Extraordinary Value"), multiplied by the applicable Payment Percentage. An Extraordinary Claim, following its liquidation, shall be placed in the FIFO Payment Queue for purposes of payment based on its date of liquidation, subject to the Maximum Available Payment and Claims Payment Ratio described above.

**5.4(b)    Exigent Hardship Claims.** Notwithstanding any other provision herein, at any time the Asbestos PI Trust may liquidate and pay certain CE Asbestos Trust Claims that qualify as Exigent Hardship Claims as defined below, and such claims may be considered separately no matter what the order of processing otherwise would have been under this TDP. An Exigent Hardship Claim, following its liquidation, shall be placed at the head of the FIFO Payment Queue for purposes of payment, subject to the Maximum Annual Payment and Claims Payment Ratio described above. A CE Asbestos Trust Claim qualifies for payment as an "Exigent Hardship Claim" if the claim meets the Medical/Exposure Criteria for Severe Asbestosis (Disease Level IV) or an asbestos-related malignancy (Disease Levels V-VIII), and the Asbestos PI Trust, in its sole discretion, determines (a) that the claimant needs financial assistance on an immediate basis based on the claimant's expenses and all sources of available income, and (b) that there is a causal connection between the claimant's dire financial condition and the claimant's asbestos-related disease.

**5.5    Certain Derivative Claimants.** If a claimant alleges an asbestos-related disease resulting solely from exposure to an occupationally exposed person, such as a family member,

the claimant may seek Individual Review of his or her claim pursuant to Section 5.3(b) above. In such a case, the claimant must establish that the occupationally exposed person would have met the exposure requirements under this TDP that would have been applicable had that person filed a direct claim against the Asbestos PI Trust. In addition, the derivative claimant must establish that he or she is suffering from one of the eight Disease Levels described in Section 5.3(b)(3) above, that his or her own exposure to the occupationally exposed person occurred within the same time frame as the occupationally exposed person experienced CE Exposure as defined in Section 5.7(b)(3), and that such CE Exposure was a cause of the claimed disease. The proof of claim form to be provided by the Asbestos PI Trust shall include an additional section for Derivative Asbestos Personal Injury Claims. All liquidation and payment rights and limitations under this TDP shall be applicable to such claims.

     **5.6    Derivative    Asbestos    Personal    Injury    Claims    For Contribution/Indemnification.** Derivative Asbestos Personal Injury Claims that are asserted against the Asbestos PI Trust based upon theories of contribution or indemnification under applicable law may not be processed or paid by the Asbestos PI Trust unless (a) such claim satisfied the requirements of the Bar Date established by the Bankruptcy Court for Derivative CE Asbestos Trust Claims, if any, and is not otherwise disallowed under Section 502(e) of the Bankruptcy Code, and (b) the holder of such claim (the "Indirect Claimant") establishes to the satisfaction of the Trustees that (i) the Indirect Claimant has paid in full the liability and obligations of the Trust to the individual to whom the PI Trust would otherwise have had a liability or obligation under these TDP (the "Direct Claimant"), (ii) the Direct Claimant and the Indirect Claimant have forever released the Trust from all liability to the Direct Claimant, and (iii) the claim is not otherwise barred by a statute of limitation or repose or by other applicable law. In no event shall any Indirect Claimant have any rights against the Asbestos PI Trust superior to the rights of the related direct claimant against the Asbestos PI Trust, including any rights with respect to the timing, amount or manner of payment. In addition, no Derivative Asbestos Personal Injury Claim may be liquidated and paid in an amount that

*PLAN --EXHIBIT G --TDP*

exceeds what the Indirect Claimant has actually paid to the related Direct Claimant in respect of such Direct Claimant's claim against the Asbestos PI Trust.

The Asbestos PI Trust shall not pay any Indirect Claimant unless and until the Indirect Claimant's aggregate liability for the Direct Claimant's claim against the Asbestos PI Trust has been fixed, liquidated by the Indirect Claimant by settlement (and such settled claim is valid under applicable state law) or a Final Order, and has been paid by the Indirect Claimant. In any case where the Indirect Claimant has satisfied the claim of a Direct Claimant against the Asbestos PI Trust under applicable law by way of a settlement, the Indirect Claimant shall obtain for the benefit of the Asbestos PI Trust a release in form and substance reasonably satisfactory to the Trustees. The Trustees may develop and approve a separate proof of claim form for such claims as provided in Section 6.1.

Derivative Asbestos Personal Injury Claims that have not been disallowed, discharged, or otherwise resolved by prior order of the Court shall be processed in accordance with procedures to be developed and implemented by the Trustees, which procedures (a) shall determine the validity, allowability and enforceability of such claims; and (b) shall otherwise provide the same liquidation and payment procedures and rights to the holders of such claims as the Asbestos PI Trust would have afforded the holders of the underlying valid CE Asbestos Trust Claims.

### 5.7    Evidentiary Requirements

#### 5.7(a)    Medical Evidence.

**5.7(a)(1)    In General.** All diagnoses of a Disease Level shall be accompanied by either (i) a statement by the physician providing the diagnosis that at least 10 years have elapsed between the date of first exposure to asbestos or asbestos-containing products and the diagnosis, or (ii) a history of the claimant's exposure sufficient to establish a 10-year latency period. A finding by a physician that a claimant's disease is "consistent with" or "compatible with" asbestosis will not alone be treated by the Asbestos PI Trust as a diagnosis.

31

*PLAN --EXHIBIT G --TDP*

**5.7(a)(1)(A). Disease Levels I - IV.** Except for claims filed against CE or another asbestos defendant in the tort system prior to the Petition Date, all diagnoses of a non-malignant asbestos-related disease (Disease Levels I-IV) shall be based (i) in the case of a claimant who was living at the time the claim was filed, upon (A) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease; (B) an X-ray reading by a certified B-reader, and (C) pulmonary function testing[7] if the claim involves Asbestosis/Pleural Disease (Level III) or Severe Asbestosis (Level IV),[8] and (ii) in the case of a claimant who was deceased at the time the claim was filed, upon (A) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease, or (B) pathological evidence of the non-malignant asbestos-related disease, or (C) an X-ray reading by a certified B reader.

**5.7(a)(1)(B).    Disease Levels V – VIII.** Except for claims filed against CE or another asbestos defendant in the tort system prior to the Petition Date, diagnoses of an asbestos-related malignancy (Disease Levels V – VIII) shall be based upon either (i) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease, or (ii) on a diagnosis of such a malignant Disease Level by a board-certified pathologist.

**Section  5.7(a)(1)(C).  Treatment of Certain Pre-Petition Claims.** The exceptions provided in Sections 5.7(a)(1)(A) and (B) above for claims filed against CE or another asbestos defendant in the tort system prior to the Petition Date shall not apply if (i) the holder of such a claim has available the medical evidence in question, or (ii) the holder has

---

[7] "Pulmonary Function Testing" shall mean spirometry testing that is in material compliance with the quality criteria established by the American Thoracic Society ("ATS") and is performed on equipment which is in material compliance with ATS standards for technical quality and calibration.

[8] All diagnoses of Asbestos/Pleural Disease (Disease Levels II and III) not based on pathology shall be presumed to be based on findings of bilateral asbestosis or pleural disease, and all

32

filed such medical evidence with another asbestos-related personal injury settlement trust that requires the holder to provide such medical evidence and such medical evidence is made available by such other trust to the Asbestos PI Trust.

   **5.7(a)(2)  Credibility of Medical Evidence.** Before making any payment to a claimant, the Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards. The Asbestos PI Trust may require the submission of x-rays, detailed results of pulmonary function tests, laboratory tests, tissue samples, results of medical examination or reviews of other medical evidence, and may require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods and procedure to assure that such evidence is reliable. Medical evidence (i) that is of a kind shown to have been received in evidence by a state or federal judge at trial, (ii) that is consistent with evidence submitted to CE to settle similar disease cases prior to CE's bankruptcy, or (iii) that consists of a diagnosis by a physician shown to have previously qualified as a medical expert with respect to the asbestos-related disease in question before a state or federal judge, is presumptively reliable, although the Asbestos PI Trust may seek to rebut the presumption.

   In addition, claimants who otherwise meet the requirements of this TDP for payment of a CE Asbestos Trust Claim shall be paid irrespective of the results in any litigation at anytime between the claimant and any other defendant in the tort system. However, any relevant evidence submitted in a proceeding in the tort system, other than any findings of fact, a verdict, or a judgment, involving another defendant may be introduced by either the claimant or the Asbestos PI Trust in any Individual Review proceeding conducted pursuant to 5.3(b) or any Extraordinary Claim proceeding conducted pursuant to 5.4(a).

   **5.7(b) Exposure Evidence**

---

diagnoses of Mesothelioma (Disease Level VIII) shall be presumed to be based on findings that the disease involves a malignancy. However, the PI Trust may rebut such presumptions.

*PLAN --EXHIBIT G --TDP*

**5.7(b)(1)     In General.** As set forth above in Section 5.3(a)(3), to qualify for any Disease Level, the claimant must demonstrate some CE Exposure (which, in the case of Derivative Asbestos Personal Injury Claimants, shall be CE Exposure in respect of the Direct Claimant). Claims based on conspiracy theories that involve no CE Exposure are not compensable under this TDP. To meet the presumptive exposure requirements of Expedited Review set forth in Section 5.3(a)(3) above, the claimant must show (i) for all Disease Levels, CE Exposure as defined in Section 5.7(b)(3) below; (ii) for Asbestos/Pleural Disease Level II, six months CE Exposure, plus five years cumulative occupational asbestos exposure; and (iii) for Asbestosis/Pleural Disease (Disease Level III), Severe Asbestosis (Disease Level IV), Other Cancer (Disease Level V) or Lung Cancer 1 (Disease Level VII), the claimant must show six months CE Exposure, plus Significant Occupational Exposure to asbestos as defined in Section 5.7(b)(2) below.  If the claimant cannot meet the relevant presumptive exposure requirements for a Disease Level eligible for Expedited Review, the claimant may seek Individual Review of his or her CE Exposure pursuant to Section 5.3(b) above.

**5.7(b)(2)     Significant Occupational Exposure.**     "Significant Occupational Exposure" means employment for a cumulative period of at least five years in an industry and an occupation in which the claimant (a) handled raw asbestos fibers on a regular basis; (b) fabricated asbestos-containing products so that the claimant in the fabrication process was exposed on a regular basis to raw asbestos fibers; (c) altered, repaired or otherwise worked with an asbestos-containing product such that the claimant was exposed on a regular basis to raw asbestos fibers; or (d) was employed in an industry and occupation such that the claimant worked on a regular basis in close proximity to workers engaged in the activities described in (a), (b) and/or (c).

**5.7(b)(3)     CE Exposure.**     The claimant must demonstrate meaningful and credible exposure to asbestos or asbestos-containing products for which CE has legal responsibility.  The Asbestos PI Trust shall consider the meaningful and credible

evidence presented by the claimant, including an adequate affidavit of the claimant, an affidavit of a co-worker or the affidavit of a family member in the case of a deceased claimant (providing the Asbestos PI Trust finds such evidence reasonably reliable), invoices, employment, construction or similar records, or other credible evidence. The Asbestos PI Trust can also require submission of other or additional evidence of exposure when it deems such to be necessary. The specific exposure information required by the Asbestos PI Trust to process a claim under either Expedited or Individual Review is or shall be set forth on the proof of claim form established by the Asbestos PI Trust pursuant to Section 6.1 for use by claimants in making a claim against the Asbestos PI Trust.

5.8    **Claims Audit Program.** The Asbestos PI Trust with the consent of the TAC and the Future Claimants' Representative may develop methods for auditing the reliability of medical evidence, including additional reading of x-rays and verification of pulmonary function tests, as well as the reliability of evidence of exposure to asbestos for which CE has legal responsibility. In the event that the Asbestos PI Trust reasonably determines that any individual or entity has engaged in a pattern or practice of providing unreliable medical evidence to the Asbestos PI Trust, it may decline to accept additional evidence from such provider.

Further, in the event that an audit reveals that fraudulent information has been provided to the Asbestos PI Trust, the Asbestos PI Trust may penalize any claimant or claimant's attorney by disallowing the CE Asbestos Trust Claim or by other means including, but not limited to, requiring the source of the fraudulent information to pay the costs associated with the audit and any future audit or audits, reordering the priority of payment of all affected claimants' CE Asbestos Trust Claims, raising the level of scrutiny of additional information submitted from the same source or sources, refusing to accept additional evidence from the same source or sources, seeking the prosecution of the claimant or claimant's attorney for presenting a fraudulent claim in violation of 18 U.S.C. §152, and seeking sanctions from the Bankruptcy Court.

35

**5.9    Second Disease (Malignancy) Claims.** The holder of a claim involving a non-malignant asbestos-related disease (Disease Levels I through IV) may file a new claim for a malignant disease (Disease Levels V – VIII) that is subsequently diagnosed. Any additional payments to which such claimant may be entitled with respect to such malignant asbestos-related shall not be reduced by the amount paid for the non-malignant asbestos-related disease.

**5.10    Arbitration.**

**5.10(a)        Establishment of Arbitration Procedures.** The Asbestos PI Trust, with the consent of the TAC and the Future Claimants' Representative, shall institute binding and non-binding arbitration procedures in accordance with the arbitration rules promulgated by the Trustees, with the consent of the TAC and the Future Claimants' Representative, for resolving disputes concerning (i) whether a pre-petition settlement agreement with CE is binding and judicially enforceable in the absence of a Final Order of the Bankruptcy Court determining the issues, (ii) whether the Asbestos PI Trust's rejection or denial of a TDP Determined Claim was proper, or (iii) whether evidence concerning the claimant's medical condition or exposure history meets the requirements of this TDP for purposes of categorizing a claim involving Disease Levels I – VIII or any other category established hereunder. Binding and non-binding arbitration shall also be available for resolving disputes over the liquidated value of a claim involving Disease Levels IV – VIII.

In all arbitrations, the arbitrator shall consider the same medical and exposure evidentiary requirements that are set forth in Section 5.7 above. In the case of an arbitration involving the liquidated value of a claim involving Disease Levels IV – VIII, the arbitrator shall consider the same valuation factors that are set forth in Section 5.3(b)(2) above. With respect to all claims eligible for arbitration, the claimant, but not the Asbestos PI Trust, may elect either non-binding or binding arbitration. The Arbitration Rules set forth in Attachment A hereto may be modified by the Asbestos PI Trust with the consent of the TAC and the Future Claimants' Representative. Such amendments may include adoption of mediation procedures as well as establishment of a panel to review Extraordinary Claims pursuant to Section 5.4(a) above.

36

5.10(b)    **Claims Eligible for Arbitration.**    In order to be eligible for arbitration, the claimant must first complete the Individual Review Process with respect to the disputed issue. Individual Review will be treated as completed for these purposes when a TDP Determined Claim has been individually reviewed by the Asbestos PI Trust, and either (a) the Asbestos PI Trust has made an offer on the claim, the claimant has rejected the liquidated value resulting from the Individual Review, and the claimant has notified the Asbestos PI Trust of the rejection in writing or (b) the Asbestos PI Trust has rejected the claim.

5.10(c)    **Limitations on and Payment of Arbitration Awards.**    In the case of a TDP Determined Claim involving Disease Levels I - III, the arbitrator shall not return an award in excess of the Scheduled Value for such claim.  In the case of a non-Extraordinary Claim involving Disease Levels IV – VIII, the arbitrator shall not return an award in excess of the Maximum Value for the appropriate Disease Level as set forth in Section 5.3(a)(3) above, and for an Extraordinary Claim involving one of those Disease Levels, the arbitrator shall not return an award greater than the Maximum Extraordinary Value for such a claim as set forth in Section 5.4(a) above.  A claimant who submits to arbitration and who accepts the arbitral award will receive payments in the same manner as one who accepts the Asbestos PI Trust's original valuation of the claim.

**Section 5.11  Litigation.**  Claimants who elect non-binding arbitration and then reject their arbitral awards retain the right to seek relief in the tort system pursuant to Section 7.6 below. However, a claimant shall be eligible for payment of a judgment for monetary damages obtained in the tort system from the Asbestos PI Trust only as provided in Section 7.7 below.

## SECTION VI

### Claims Materials

6.1    **Claims Materials.**  The Asbestos PI Trust shall prepare suitable and efficient claims materials ("Claims Materials"), and shall provide such Claims Materials upon a written request for such materials to the Asbestos PI Trust. The proof of claim form to be submitted to

*PLAN –EXHIBIT G –TDP*

the Asbestos PI Trust shall include a certification by the claimant or his or her attorney sufficient to meet the requirements of Rule 11(b) of the Federal Rules of Civil Procedure. A copy of the proof of claim form to be used initially by the Asbestos PI Trust for unliquidated CE Asbestos Trust Claims will be provided by the Asbestos PI Trust promptly after the Effective Date of the Plan. The proof of claim form may be changed and additional proof of claim forms may be developed by the Asbestos PI Trust with the consent of the TAC and the Future Claimants' Representative.

**6.2     Content of Claims Materials.**  The Claims Materials shall include a copy of this TDP, such instructions as the Trustees shall approve, and a proof of claim form.  If feasible, the forms used by the Asbestos PI Trust to obtain claims information shall be the same or substantially similar to those used by other asbestos claims resolution organizations. Instead of collecting some or all of the claims information from a claimant or the claimant's attorney, the Asbestos PI Trust may also obtain such information from electronic data bases maintained by any other asbestos claims resolution organization.  However, the Asbestos PI Trust shall inform the claimant that it plans to obtain information as available from such other organizations and may do so unless the claimant objects in writing or provides such information directly to the Asbestos PI Trust.  If requested by the claimant, the Asbestos PI Trust shall accept information provided electronically.  The claimant may, but will not be required to, provide the Asbestos PI Trust with evidence of recovery from other asbestos claims resolution organizations; provided, however, that any person asserting that their claim qualifies as an Exigent Hardship Claim must certify to the Asbestos PI Trust the aggregate amount such person has recovered in respect of such claim from other asbestos claims resolution organizations.

**6.3     Withdrawal of Claims**.  A claimant can withdraw a CE Asbestos Trust Claim at any time upon written notice to the Asbestos PI Trust and file another claim subsequently without affecting the status of the claim for statute of limitations purposes, but any such claim filed after withdrawal shall be given a place in the FIFO Processing Queue based the date of

such subsequent filing. Except for CE Asbestos Trust Claims held by representatives of deceased or incompetent claimants for which court approval of the Asbestos PI Trust's offer is required, a claim will be deemed to have been withdrawn if the claimant neither accepts, rejects, nor initiates arbitration within six months of the Asbestos PI Trust's offer of payment or rejection of the claim. Upon written request and good cause, the Asbestos PI Trust may extend this period for up to an additional six months.

      **6.4**    **Filing Requirements and Fees**. The Trustees shall have the discretion to determine, with the consent of the TAC and the Future Claimants' Representative, (a) whether a claimant must have previously filed the claim in the tort system to be eligible to file the claim with the Asbestos PI Trust and (b) whether to require (and, if required, the amount of) any filing fee for any CE Asbestos Trust Claims.

**SECTION VII**

**General Guidelines for Liquidating and Paying Claims**

      **7.1**    **Showing Required.**  To establish a valid CE Asbestos Trust Claim, a claimant must meet the requirements set forth in this TDP. The Asbestos PI Trust may require the submission of x-rays, laboratory tests, medical examinations or reviews, other medical evidence, or any other evidence to support or verify the CE Asbestos Trust Claim with the exception of the Unpaid Portion of Settled Asbestos Claims, and may further require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods, and procedures to assure that such evidence is reliable.

      **7.2**    **Costs Considered.**  Notwithstanding any provisions of this TDP to the contrary, the Trustees shall always give appropriate consideration to the cost of investigating and uncovering invalid CE Asbestos Trust Claims so that the payment of valid CE Asbestos Trust Claims is not further impaired by such processes with respect to issues related to the validity of the medical evidence supporting a CE Asbestos Trust Claim. The Trustees shall also have the discretion to make judgments regarding the amount of transaction costs to be expended by the Asbestos PI Trust so that valid CE Asbestos Trust Claims are not unduly

39

*PLAN – EXHIBIT G – TDP*

further impaired by the costs of additional investigation. Nothing herein shall prevent the Trustees, in appropriate circumstances, from contesting the validity of any claim, with the exception of the Unpaid Portion of Settled Asbestos Claims, against the Asbestos PI Trust whatever the costs, or to decline to accept medical evidence from sources that the Trustees have determined to be unreliable pursuant to the Claims Audit Program described in Section 5.7 above.

**7.3    Discretion to Vary the Order and Amounts of Payments in Event of Limited Liquidity.** Consistent with the provisions hereof and subject to the FIFO Processing and Payment Queues, the Maximum Annual Payment, the Payment Percentage, the Maximum Available Payment and the Claims Payment Ratio requirements set forth herein, the Trustees shall proceed as quickly as practicable to process and determine TDP Determined Claims, and shall make payments to holders of Allowed CE Asbestos Trust Claims in accordance with this TDP promptly as funds become available (and, if applicable, as such claims are liquidated hereunder), while maintaining sufficient resources to pay future valid CE Asbestos Trust Claims in substantially the same manner, and to reserve for future Trust Expenses.

Because the Asbestos PI Trust's income over time remains uncertain, and decisions about payments must be based on estimates that cannot be done precisely, such decisions may have to be revised in light of experiences over time, and there can be no guarantee of any specific level of payment to claimants. However, the Trustees shall use their best efforts to treat similar claims in substantially the same manner, consistent with their duties as Trustees, the purposes of the Asbestos PI Trust, the established allocation of funds to Category A Claims and Category B Claims, and the practical limitations imposed by the inability to predict the future with precision.

In the event that the Asbestos PI Trust faces temporary periods of limited liquidity, the Trustees may, with the consent of the TAC and the Future Claimants' Representative,

*PLAN --EXHIBIT G --TDP*

suspend the normal order of payment and may temporarily limit or suspend payments altogether, and may offer a Reduced Payment Option as described in Section 2.5 above.

**7.4    Punitive Damages.**  In determining the value of any unliquidated CE Asbestos Trust Claim, punitive or exemplary damages, i.e., damages other than compensatory damages, shall not be considered or allowed, notwithstanding the availability of such punitive or exemplary damages in the tort system.

**7.5    Interest.**

**7.5(a) In General.**  Except for a CE Asbestos Trust Claim involving Other Asbestos Disease (Disease Level I - Cash Discount Payment) which is not entitled to interest under any circumstances, interest shall accrue and be paid on all CE Asbestos Trust Claims as and to the extent provided in this Section 7.5(a) and in Section 7.5(b) or 7.5(c), as applicable, provided, however, that no claimant shall receive interest for a period in excess of seven (7) years. The applicable interest rate for CE Asbestos Trust Claims entitled to interest under Section 7.5(b) or 7.5(c), as applicable, shall be six percent (6%) simple interest per annum for the first five (5) years after the Effective Date; thereafter, the Asbestos PI Trust shall have the discretion to change the annual interest rate with the consent of the TAC and the Future Claimants' Representative.

**7.5(b) Interest on TDP Determined Claims.**  Interest shall accrue on the Scheduled Value (and for purposes of distribution, shall be added to such Scheduled Value) of any TDP Determined Claim that meets the requirements of Disease Levels II -V, VII and VIII if and only if such claim is liquidated under Expedited Review, Individual Review, or by arbitration. Interest on a TDP Determined Claim that meets the requirements of Disease Level VI shall be based on the Average Value of such claim. Interest on a particular TDP Determined Claim that has not been paid within one year after the date on which such TDP Determined Claim was filed with the Asbestos PI Trust shall accrue during the period beginning on the date

*PLAN --EXHIBIT G --TDP*

that is one year after the date on which such TDP Determined Claim was filed with the Asbestos PI Trust and ending on the date of payment of the amount due under this TDP in respect of such TDP Determined Claim; provided, however, that notwithstanding the foregoing, (i) no such interest will begin to accrue until two (2) years after the Effective Date and (ii) interest shall cease to accrue on a TDP Determined Claim at the time the Asbestos PI Trust makes a good faith offer to settle such TDP Determined Claim; provided that if such TDP Determined Claim is, pursuant to Subsection 5.10 of these TDP, awarded a higher amount through arbitration than the offer made by the Asbestos PI Trust, interest on that TDP Determined Claim will be calculated on the full amount of that award during the entire period for which interest would have been payable but for the operation of this clause (ii).

      **7.5(c) Interest on the Unpaid Portion of Settled Asbestos Claims.** Notwithstanding the provisions of the Master Settlement Agreement, interest shall accrue on the Unpaid Portion of Settled Asbestos Claims, during the period beginning on the date that is two years after the Effective Date and ending on the date of payment of the amount due under this TDP in respect of such Unpaid Portion of Settled Asbestos Claim. For purposes of this calculation of amounts due, all accrued interest shall be paid on an amount equal to such interest multiplied by the Payment Percentage, subject to the other provisions of this TDP.

      **7.6    Suits in the Tort System.** If the holder of a disputed claim disagrees with the Asbestos PI Trust's determination regarding the Disease Level of the claim, the claimant's exposure history or the liquidated value of the claim, and if the holder has first submitted the claim to non-binding arbitration as provided in Section 5.10 above, the holder may file a lawsuit in the Claimant's Jurisdiction. Any such lawsuit must be filed by the claimant in his or her own right and name and not as a member or representative of a class, and no such lawsuit may be consolidated with any other lawsuit. All defenses (including, with respect to the Asbestos PI Trust, all defenses which could have been asserted by CE) shall be available to

*PLAN —EXHIBIT G —TDP*

both sides at trial; however, the Asbestos PI Trust may waive any defense and/or concede any issue of fact or law.  If the claimant was alive at the time the initial pre-petition complaint was filed or on the date the proof of claim was filed, the case will be treated as a personal injury case with all personal injury damages to be considered, even if the claimant has died during the pendency of the claim.

    **7.7**     **Payment of Judgments for Money Damages.**   If and when a claimant obtains a judgment in the tort system, the claim shall be placed in the FIFO Payment Queue based on the date on which the judgment becomes final.   Thereafter, the claimant shall receive from the Asbestos PI Trust an initial payment (subject to the Payment Percentage, the Maximum Available Payment, and the Claims Payment Ratio provisions set forth above) of an amount equal to one-hundred percent (100%) of the greater of (i) the Asbestos PI Trust's last offer to the claimant or (ii) the award that the claimant declined in non-binding arbitration.   The claimant shall receive the balance of the judgment, if any, in five equal installments in years six (6) through ten (10) following the year of the initial payment (also subject to the Payment Percentage, the Maximum Available Payment and the Claims Payment Ratio provisions above).

    In the case of TDP Determined Claims involving Disease Levels I, II and III, the total amounts paid with respect to such claims shall not exceed the relevant Scheduled Value for such Disease Levels as set forth in Section 5.3(b)(3) above. In the case of claims involving a non-malignant asbestos-related disease that does not attain classification under Disease Levels I, II or III, the amount payable shall not exceed the Scheduled Value for the Disease Level most comparable to the disease proven.  In the case of non-Extraordinary claims involving severe asbestosis and malignancies (Disease Levels IV – VIII), the total amounts paid with respect to such claims shall not exceed the Maximum Values for such Disease Levels set forth in Section 5.3(b)(3). In the case of Extraordinary Claims, the total amounts paid with respect to such claims shall not exceed the Maximum Extraordinary Value for such claims set forth in Section 5.4(a) above.  Under no circumstances shall interest be paid pursuant to Section 7.5 or under otherwise applicable state law on any judgments obtained in the tort system.

43

**7.8    Third-Party Services**.  Nothing in this TDP shall preclude the Asbestos PI Trust from contracting with another asbestos claims resolution organization to provide services to the Asbestos PI Trust so long as decisions about the categorization and liquidated value of CE Asbestos Trust Claims are based on the relevant provisions of this TDP, including the Diseases Levels, Scheduled Values, Average Values, Maximum Values, and Medical/Exposure Criteria set forth above.

**7.9    Asbestos PI Trust Disclosure of Information.**  Periodically, but not less often than once a year, the Asbestos PI Trust shall make available to claimants and other interested parties, the number of claims by disease levels that have been resolved both by individual review and by arbitration as well as by trial indicating the amounts of the awards and the averages of the awards by jurisdiction.

## SECTION VIII

### Miscellaneous

**8.1    Amendments**.  Except as otherwise provided herein, the Trustees may amend, modify, delete, or add to any provisions of this TDP (including, without limitation, amendments to conform this TDP to advances in scientific or medical knowledge or other changes in circumstances), provided they first obtain the consent of the TAC and the Future Claimants' Representative pursuant to the consent process set forth in Sections 6.6 and 7.7 of the Trust Agreement, except that amendments to the Claims Payment Ratio are governed by the restrictions in Section 2.5 above, and adjustments to and amendments of the Payment Percentage are governed by Section 4.2 above.

**8.2    Severability.**  Should any provision contained in this TDP be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this TDP. Should any provision contained in this TDP be determined to be inconsistent with or contrary to CE's obligations to any insurance company providing insurance coverage to CE in respect of claims for personal

*PLAN --EXHIBIT G --TDP*

injury based on CE Exposure, no payment shall be made by the Asbestos PI Trust in respect of any such claim from proceeds from said insurance coverage.

**8.3     Governing Law.** Except for purposes of determining the liquidated value of any CE Asbestos Trust Claim, administration of this TDP shall be governed by, and construed in accordance with, the laws of the State of Delaware. The law governing the liquidation of CE Asbestos Trust Claims in the case of Individual Review, arbitration or litigation in the tort system shall be the law of the Claimant's Jurisdiction as described in Section 5.3(b)(2) above. Any reference to the tort system herein shall refer to the United States tort system.