## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Docket No. 13660 |
| | ) | Objection Deadline: 11/28/2006 at 4:00 P.M. |
| | | Hearing Date: December 5, 2006 at 9:00 A.M. |
| | | Pittsburgh, PA |

## MOTION TO COMPEL THE MMWR FIRMS' ASBESTOS PERSONAL INJURY CLAIMANTS TO RESPOND TO THE W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

In response to the W.R. Grace Asbestos Personal Injury Questionnaire ("Questionnaire"),

the clients represented by Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, A

Professional Law Corporation ("Kazan McClain"); Waters & Kraus, LLP; Hobin, Shingler &

Simon, LLP ("Hobin Shingler"); Paul, Hanley & Harley, LLP; Early Ludwick & Sweeney

("Early Ludwick"); Harowitz & Tigerman; and the Wartnick Law Firm (collectively, the

"MMWR Firms' Claimants"), have objected to providing information in response to certain

questions posed in the Questionnaire.[1]  Because the objections are unfounded, Grace hereby

---

[1]  The clients represented by Kazan McClain who have returned Questionnaires are identified in Exhibit A (attached).  The clients represented by Waters & Kraus who have returned Questionnaires are identified in Exhibit B (attached).  The clients represented by Hobin Shingler who have returned Questionnaires are identified in Exhibit C (attached).  The clients represented by Paul, Hanley & Harley who have returned Questionnaires are identified in Exhibit D (attached).  The clients represented by Early Ludwick who returned Questionnaires are identified in Exhibit E (attached).  The clients represented by Harowitz & Tigerman who have returned Questionnaires are identified in Exhibit F (attached).  The clients represented by the Wartnick Law Firm who have returned Questionnaires are identified in Exhibit G (attached).

For purposes of the estimation, the law firms representing the clients identified in Exhibits A-G are represented by Montgomery McCracken Walker & Rhoads, LLP ("MMWR").  MMWR has informed Grace that for purposes of this motion it also represents Early & Strauss ("Early Strauss").  *See* Ltr. from N. Ramsey to B. Harding at 1 (Nov. 3, 2006) ("MMWR Objection Letter") (attached as Exhibit H).  However, Grace has not received any Questionnaires returned on behalf of clients of Early Strauss.  Grace has received 483 Questionnaires returned by Early Ludwick.

moves to compel the MMWR Firms' Claimants to provide all the information requested in the Questionnaire.[2]

## ARGUMENT

The Court approved the Questionnaire after extensive briefing, argument, and consideration, and already has ruled that general relevance objections are unfounded and should not be maintained. The Court also has addressed the general burden objections related to providing the information requested in the Questionnaire by permitting response by way of attachment and by providing an additional year to provide the requested information. All general burden objections by the MMWR Firms' Claimants should be overruled on their face. *See* Memorandum of Points and Authorities Concerning Background of the Questionnaire Approval Process and Objections Previously Addressed by the Court ("Background Memorandum") (attached as Exhibit J).[3] Importantly, the Court also previously determined that even with respect to mesothelioma claims, the questions in the Questionnaire are relevant. *See* Section I, *infra*.

---

Additionally, MMWR only represents the Wartnick Law Firm with respect to its cancer claimants. *See* Ltr. from M. Bostick to B. Harding at 1 (Nov. 3, 2006) (identifying the law firm of Wendel Rosen Black & Dean, LLP as lodging objections "on behalf of [the Wartnick Law] Firm's non-GCCC clients") ("Wendel Objection Letter") (attached as Exhibit I). However, Grace brings this motion with respect to all clients of the Wartnick Law Firm whether represented for purposes of the estimation by MMWR or Wendel Rosen Black & Dean.

[2]   Grace moves only to compel responses to questions in which the MMWR Firms' Claimants have objected in lieu of providing responsive information. Grace reserves its right to raise any and all objections to the sufficiency of the MMWR Firms' Claimants' responses until the supplementation of their Questionnaire responses is complete.

[3]   The MMWR Claimants refused to answer questions 4-7 in Part VII, Section A on burden grounds. That objection is baseless as the MMWR Firms' Claimants have not demonstrated *any* burden associated with providing these answers, let alone a burden that is "undue." Moreover, the fact that the information may be equally available to Grace does not excuse the MMWR Firms' Claimants from their affirmative discovery obligations.

For the reasons stated in the Background Memorandum, Grace respectfully requests that the Court overrule the Morris MMWR Firms' Claimants' relevance and burden objections.

2

It is fundamental, under both Federal Rule of Civil Procedure 26 and Federal Rule of Bankruptcy Procedure 7026, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1); Fed. R. Bankr. P. 7026. Accordingly, under a motion to compel, the initial burden is on the moving party to demonstrate that the discovery sought is relevant. Once the relevance showing has been satisfied, the "party resisting discovery" bears the burden of making a specific showing as to why the information sought does not have to be provided. *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982). Because the Court already has ruled that all the questions in the Questionnaire are relevant for all Claimants, the burden rests with the firms raising the objections and resisting the discovery to demonstrate why their objections should be sustained. *See* Order Concerning Debtors' Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Personal Injury Questionnaire ("MTC Order") (Docket No. 13393) (Oct. 12, 2006) at ¶ 1. The MMWR Firms' Claimants fall short of meeting that burden.

The MMWR Firms' Claimants refused to answer a number of questions based on their various objections. Those objections are posed to questions relating to the Claimants' diagnoses (Part II of the Questionnaire), the Claimants' non-Grace asbestos exposures (Part V of the Questionnaire), and to asbestos- and silica-related litigation and claims brought by the Claimants (Part VII of the Questionnaire). However, none of the MMWR Firms' Claimants' objections are justified for the following reasons:

- First, the MMWR Firms' Claimants who assert a mesothelioma claim refuse, on grounds of relevance, to answer Questions 2-5 in Part II, relating to diagnostic tests other than pathology, and Part V, relating to the Claimants' non-Grace asbestos exposures. That objection is unfounded as the Court already has ruled on the relevance of those questions, and in particular, the Court already has ruled specifically that the questions are relevant even for mesothelioma claims.

3

- Second, the MMWR Firms' Claimants refused, on grounds of confidentiality, to answer Question 6 in Part VII, Section A, relating to settlements of asbestos- and silica-related litigation, and Question 6 in Part VII, Section B, relating to the amounts of settlements of non-litigation based asbestos and silica claims. This objection must fail, as confidentiality agreements do not immunize facts concerning a settlement from discovery.

- Third, the MMWR Firms' Claimants refused to answer Part V, relating to the Claimants' non-Grace asbestos exposures, Questions 4-7 in Part VII, Section A, relating to asbestos- and silica-related litigation, and Questions 2-7 in Part VII, Section B, relating to non-litigation based asbestos and silica claims, on the grounds that the questions violate the attorney-client privilege and/or the attorney work-product privilege. This objection is baseless as the questions contained in the Questionnaire seek facts and do not implicate any privilege nor have the MMWR Firms' Claimants established that any such privilege applies.

- Fourth, the MMWR Firms' Claimants refused to answer Part V, relating to the Claimants' non-Grace asbestos exposures, Questions 4-7 in Part VII, Section A, relating to asbestos- and silica-related litigation, and Questions 2-7 in Part VII, Section B, relating to non-litigation based asbestos and silica claims, on the grounds that the questions violate the Claimants' privacy rights. The MMWR Claimants cite no legal authority that would excuse them of their discovery obligations based upon this objection.

## I.    THE MMWR FIRMS' MESOTHELIOMA CLAIMANTS' CONTINUED BLANKET RELEVANCE OBJECTIONS ARE UNFOUNDED.

The MMWR Firms' Claimants who assert mesothelioma claims against Grace maintain

relevance objections to the following portions of the Questionnaire:

| Question | Text of Question | Text of Objection |
|---|---|---|
| Part II, Question 2 (including all subparts) | Information Regarding Diagnosis | For the reasons described in the GCCC Response, the mesothelioma claimants of these firms will not respond to the questions regarding … diagnostic testing other than conclusive pathology evidence of mesothelioma. As described in the GCCC Response, these sections are irrelevant to mesothelioma claimants because of the peculiar characteristics of that disease. |

| Question | Text of Question | Text of Objection |
|---|---|---|
| Part II, Question 3 (including all subparts) | Information Regarding Chest X-Ray | For the reasons described in the GCCC Response, the mesothelioma claimants of these firms will not respond to the questions regarding … diagnostic testing other than conclusive pathology evidence of mesothelioma.  As described in the GCCC Response, these sections are irrelevant to mesothelioma claimants because of the peculiar characteristics of that disease. |
| Part II, Question 4 (including all subparts) | Information Regarding Chest X-Ray Readings | For the reasons described in the GCCC Response, the mesothelioma claimants of these firms will not respond to the questions regarding … diagnostic testing other than conclusive pathology evidence of mesothelioma.  As described in the GCCC Response, these sections are irrelevant to mesothelioma claimants because of the peculiar characteristics of that disease. |
| Part II, Question 5 (including all subparts) | Information Regarding Pulmonary Function Test | For the reasons described in the GCCC Response, the mesothelioma claimants of these firms will not respond to the questions regarding … diagnostic testing other than conclusive pathology evidence of mesothelioma.  As described in the GCCC Response, these sections are irrelevant to mesothelioma claimants because of the peculiar characteristics of that disease. |
| Part V | Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging asbestos exposure to asbestos-containing products other than Grace products. | For the reasons described in the GCCC Response, the mesothelioma claimants of these firms will not respond to the questions regarding exposure to carcinogens other than asbestos [and] exposures at locations other than W.R. Grace workplaces.  As described in the GCCC Response, these sections are irrelevant to mesothelioma claimants because of the peculiar characteristics of that disease. |

*See* MMWR Objection Letter at 2; *see also* Wendel Objection Letter at 1.[4]

---

[4]   *See also* Questionnaire of K.B. at WR GRACE PIQ 60269-0011-60269-0017 (submitted by Kazan McClain); Questionnaire of L.A. at WR GRACE PIQ 015282-0011-015282-0017 (submitted by Waters & Kraus); Questionnaire of J.M. at WR GRACE PIQ 002326-011-002326-023 (submitted by Hobin Shingler); Questionnaire of C.A. at WR GRACE PIQ 59076-0011-59076-0017 (submitted by Paul, Hanley & Harley); Questionnaire F.B. at WR GRACE PIQ 00189-011-000189-017 (submitted by Early Ludwick); and Questionnaire C.K. at WR GRACE PIQ 001106-011-001106-017 (submitted by the Wartrick Law Firm).

This objection must fail for two reasons. First, the Court expressly ruled at the September 11, 2006 hearing on Grace's first motion to compel that the mesothelioma Claimants were not exempt from the Court's rulings on relevance. Second, the information sought by Grace is clearly relevant to the estimation.

## A.    The Court Already Has Overruled The MMWR Firms' Claimants' Relevance Objection.

In response to Grace's first Motion to Compel, the Grace Certain Cancer Claimants (which include claimants represented by Waters & Kraus, Early Ludwick & Sweeney, the Wartnick Law Firm, and Harowitz & Tigerman, among others) argued:

> With respect to mesothelioma claimants ... much of the information sought by the Questionnaire is plainly irrelevant. If such claimants can simply show proof of any exposure to W.R. Grace asbestos products, they will be able to show that W.R. Grace's products "substantially contributed" to their mesothelioma. No other evidence regarding causation would be relevant. Similarly, conclusive pathology evidence of mesothelioma eliminates all need for various other diagnostic testing such as chest X-rays, or Pulmonary Function tests. Accordingly, for mesothelioma claimants there is no proper basis for W.R. Grace to insist on answers to such diagnostic testing.

Response of Grace Certain Cancer Claimants In Opposition to the W.R. Grace Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire at 15 (Docket No. 12970) (Aug. 14, 2006) ("GCCC Brief"); *see also* Brief of Grace Certain Cancer Claimants Regarding Issues Still In Dispute Following Mediation at 2 (Docket No. 13157) (Sept. 7, 2006) ("With respect to mesothelioma Claimants, the rest of the Questionnaire is irrelevant."). The MMWR Firms rely on and adopt this argument to justify their failure to produce information regarding the Claimants' non-pathology diagnostic tests and non-Grace asbestos exposure. *See* MMWR Objection Letter at 2. That reliance is misplaced.

---

(collectively attached as Exhibit K). All exemplars cited are representative of the Questionnaires submitted on behalf of the Claimants named in Exhibits A-G. Grace will make available to the Court the Questionnaire for any individual named in Exhibits A-G upon the Court's request.

With respect to the issue of whether mesothelioma Claimants were required to provide information regarding their non-Grace asbestos exposures, there is no question that the Court already has ruled. This precise issue was taken up at the September 11, 2006 hearing concerning the Motion to Compel.    At the hearing, both Waters & Kraus, on its own behalf, and Montgomery McCracken Walker & Rhoads, acting on behalf of the Grace Certain Cancer Claimants, argued that the information sought by Grace was not relevant as to mesothelioma Claimants. *See* Tr. of Hr'g at 188-208 (Sept. 11, 2006); *id.* at 206 ("Now, there's no basis for exposure information as to anyone else, because of the precise reasons that Mr. Kraus[] articulated."). The Court considered these arguments and specifically found that the information sought by Grace was relevant as to mesothelioma Claimants, stating:

> Well, but that's why [Grace] want[s] to see the other exposure information, and that seems to me *to be relevant*. So ... if your client worked for Grace, and ... worked for Mid-Valley and worked for Pittsburgh Corning and had different exposure to different asbestos products and then had a diagnosis of mesothelioma and is filing claims against all three of those trusts, then each of the trusts is not going to be liable for the full amount of whatever the claimant's damages are, number one. And number two, this specific trust may be funded at a different level based on the fact that some part of the claim has been paid through another trust. *And that is appropriate and relevant evidence.*

Tr. of Hr'g at 206-07 (Sept. 11, 2006) (emphasis added).    Moreover, the Court specifically addressed mesothelioma claims in rendering its ruling on the relevance issue:

> Objecting on the grounds of relevance ... is what I said I was not going to revisit. It seemed to me that I determined relevance early on in going through this questionnaire. With respect to the issue that the mesos have raised, that there may be some parts of these questions that are not relevant as to them ... *give me a specific, line by line, why you shouldn't answer specific questions,* and I will look at that, because ... in looking at relevance I am looking at what the experts may need, *and it still seems to me that your ... exposure history may be relevant to an expert in terms of figuring out what the funding for a trust may be.* And since I can't at this point opine what the experts are going to want to know and discovery is reasonable, and if it is calculated to lead to relevant, admissible evidence, and this may be relevant admissible evidence, I have to determine that it's relevant.

*Id.* at 250-51 (emphasis added).

Thus, it is clear that the Court found that even with respect to mesothelioma -- non-Grace asbestos exposures were relevant to the estimation and that the MMWR Firms' mesothelioma Claimants would have to comply with the MTC Order. That Order provides:

> [A]s a general matter, the questions contained in the Questionnaire are relevant for purposes of Grace's discovery relating to the estimation of Grace's asbestos personal injury liability and the Court expects the claimants and/or their lawyers to answer the questions in the Questionnaire completely and accurately .... [T]here may be specific individual questions that for reasons particular to an individual's circumstances or claim, a question contained in the Questionnaire is not relevant to his or her claim or is unduly burdensome or invades a privilege, and he or she may separately raise his or her specific objections pursuant to the mechanism established below in ¶ 6.

MTC Order at ¶ 1. Despite the Court's clear direction on this issue, the MMWR Firms' Claimants do not "raise [their] specific objections," nor do they raise issues "particular" to their claims. *Id.* Instead, they simply rely on the same rationale put forward in the GCCC Brief that this Court already has rejected. *See* MMWR Objection letter at 2 ("For the reasons described in the GCCC Response, the mesothelioma claimants of these firms will not respond to the questions regarding exposure to carcinogens other than asbestos [and] exposures at locations other than W.R. Grace workplaces. As described in the GCCC Response, these sections are irrelevant to mesothelioma claimants because of the peculiar characteristics of that disease."). This reliance on an argument that the Court already has directly and specifically rejected is nothing more than a delay tactic. The MMWR Firms' Clients have wholly failed to do what the Court has required. Accordingly, the Court should overrule, once again, the MMWR Firms' mesothelioma relevance objections.

**B.  The Relevance Objection Is Simply An Attempt To Get The Court To Prematurely Render Substantive Rulings Regarding Mesothelioma Claims.**

The MMWR Firms' relevance objections are an inappropriate attempt to get the Court to make substantive rulings regarding mesothelioma claims, prior to the presentation of expert testimony relating to those claims. It is well-established that a "[r]elevant matter encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Kopacz v. Delaware River & Bay Auth.*, 225 F.R.D. 494, 497 (D.N.J. 2004) (internal citations and quotation marks omitted); *Hicks v. Big Brothers/Big Sisters of America*, 168 F.R.D. 528, 529 (E.D. Pa. 1996). "The question of relevancy is to be more loosely construed at the discovery stage than at the trial." *Kopacz*, 225 F.R.D. at 497; *see also* 8 Wright, Miller, & Marcus, *Federal Practice and Procedure*, § 2008 (same). The Court recognized this when it stated that relevance, for purposes of discovery, would be determined by the information "the experts may need." Tr. of Hr'g at 251 (Sept. 11, 2006).

The MMWR Firms' Claimants, by lodging "relevance" objections to certain Questionnaire questions on the basis that they should be exempted as mesothelioma claimants, essentially are asking the Court to rule, at this early juncture, that asbestos is the only cause of mesothelioma. That is not an accurate statement of the scientific data concerning mesothelioma causation. The established medical literature demonstrates that mesothelioma has other causes. *See* Expert Report of Suresh Moolgavkar, Ph.D., M.D. at 11 (Oct. 3, 2006) ("Moolgavkar Report") (collecting scientific and medical literature). "As with the vast majority of cancers, mesothelioma can occur spontaneously, i.e., purely by chance without any exposure to asbestos. In addition to the purely biological argument for spontaneous cases of mesothelioma, there is direct evidence that mesothelioma can occur without exposure to asbestos." *Id.* Moreover, one of the central challenges Grace intends to make at the estimation hearing is a *Daubert* challenge to the plaintiff experts' mantra that "every fiber" of asbestos is a "substantial contributing" cause

9

of mesothelioma. *See* Moolgavkar Report at 10-12; Expert Report of David H. Garabrant, Ph.D. at 4-6 (Oct. 3, 2006). Accordingly, the information regarding other asbestos exposures is not only relevant -- it is critical -- to Grace's experts' analysis of the mesothelioma claims. The Court should order the MMWR Firms' mesothelioma Claimants to comply with the Court's original Order, issued over 15 months ago, to produce the requested information. *See* Case Management Order for the Estimation of Asbestos Personal Injury Liabilities at ¶ 2 (Docket No. 9301) (Aug. 29, 2005) ("[A]ll holders of Asbestos PI Pre-Petition Litigation Claims are required to complete and serve the Questionnaire."); *see also Kopacz*, 225 F.R.D. at 497.

Similarly, the MMWR Firms' Claimants state, without support from or citation to any medical or scientific literature, that "conclusive pathology evidence eliminates all need for various other diagnostic testing such as chest X-rays, or Pulmonary Function Tests." GCCC Response at 15; MMWR Objection Letter at 2 ("For the reasons described in the GCCC Response, the mesothelioma claimants of these firms will not respond to the questions regarding ... diagnostic testing other than conclusive pathology evidence of mesothelioma. As described in the GCCC Response, these sections are irrelevant to mesothelioma claimants because of the peculiar characteristics of that disease.") (emphasis added). Again, these unsupported assertions are neither universally-accepted nor true. "The diagnosis of malignant mesothelioma can be difficult and requires *clinical* and pathological data." *See* Affidavit of Stephen E. Haber, M.D. ("Haber Aff.") at ¶ 4 (emphasis added) (attached as Exhibit L). Rather, as Dr. Stephen Haber, a pulmonologist and occupational disease specialist who has diagnosed patients with mesothelioma, explains:

> While pathology tests are important in diagnosing mesothelioma, pathology tests alone may not be diagnostic or conclusive as to whether the patient has mesothelioma. This is especially true when relying on pathology tests results that are five to ten or more years old, given the advent of more current techniques,

specialized stains and better equipment .... Thus, in some cases it is necessary to review other available medical information to exclude these other malignancies .... In addition to pathology reports, it can also be important to review available radiographic material and the radiology reports, available pathologic materials and slides, and other diagnostic test results or diagnosing reports prepared by the treating physician.   Moreover, reviewing the clinical history, clinical course, exposure history, smoking history, presenting symptoms, and results of physical examinations can also be important when there is a question concerning a mesothelioma diagnosis.

*Id.* at ¶¶ 4, 12, 13; *see also id.* at ¶¶ 10-11 (discussing limitations of pathology and staining techniques in diagnosis of mesothelioma).  In the light of the clear need for this medical data in the evaluation and diagnosis of mesothelioma, there simply is no basis for refusing to provide it in response to the Questionnaire. *Kopacz*, 225 F.R.D. at 497.[5]

## II.    THE MMWR FIRMS' CLAIMANTS HAVE IMPROPERLY ASSERTED CLAIMS OF PRIVILEGE.

The MMWR Firms' Claimants have asserted objections based on the attorney-client privilege and attorney work product with respect to the following portions of the Questionnaire:

| Question | Text of Question | Text of Objection |
|---|---|---|
| Part V | Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging asbestos exposure to asbestos-containing products <u>other than</u> Grace products. | The Firms will not provide information ... that is invasive of the attorney-client privilege [and] attorney work-product privilege. |
| Part VII, Section A, Question 4 | Please provide the basis for the dismissal of the lawsuit against each defendant [in each asbestos or silica-related lawsuit brought against the defendant]. | The Firms will not provide information ... that is invasive of the attorney-client privilege [and] attorney work-product privilege. |

---

[5]    Grace is withdrawing its request that mesothelioma patients provide the results of any pulmonary function tests in response to Part II, Question 5.

| Question | Text of Question | Text of Objection |
|---|---|---|
| Part VII, Section A, Question 5 | Please indicate the verdict amount against each defendant [in the claimant's asbestos- or silica-related lawsuit] | The Firms will not provide information ... that is invasive of the attorney-client privilege [and] attorney work-product privilege. |
| Part VII, Section A, Question 6 | Settlement amount for each defendant [with whom the claimant settled asbestos- or silica-related litigation]. | The Firms will not provide information ... that is invasive of the attorney-client privilege [and] attorney work-product privilege. |
| Part VII, Section A, Question 7 | Settlement amount for each defendant [with whom the claimant settled asbestos- or silica-related litigation]. | The Firms will not provide information ... that is invasive of the attorney-client privilege [and] attorney work-product privilege. |
| Part VII, Section B, Question 2 -7 | 2.   Date claim [for an asbestos- or silica-related injury]; 3. Person or entity against whom the claim was submitted; 4. Description of claim; 5. Was claim settled; 6. Please indicate settlement amount; 7. Was the claim dismissed or otherwise disallowed? *If yes, provide the basis for dismissal.* | The Firms will not provide information ... that is invasive of the attorney-client privilege [and] attorney work-product privilege. |

*See* MMWR Objection Letter at 3; Wendel Objection Letter at 1.

Regardless of whether they rely on the attorney-client privilege or work product doctrine, neither claim is well-founded. First, the questions at issue only seek facts and do not invade *any* privilege at all. Second, the MMWR Firms' Claimants have provided no information by which the Court could assess the validity of those privilege claims.

> **A.    Neither The Attorney-Client Privilege Nor The Work Product Privilege Apply.**

It is undisputed that the attorney-client privilege "extends only to *communications* and not to facts." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (emphasis original);

*Synalloy Corp. v. Gray*, 142 F.R.D. 266, 268 (D. Del. 1992). Likewise, work product protection

protects documents or opinions created in anticipation of litigation. *See Leonen v. Johns-*

*Manville*, 135 F.R.D. 94, 96 (D.N.J. 1990) (holding that the work product doctrine "while

protective of an attorney's opinions, does not protect the *facts* that underlie the opinions" and

"[a] party may obtain such facts through the adversarial process *by asking questions* in the

appropriate areas") (emphasis added). Thus, questions seeking factual information as opposed to

communications between the Claimant and his or her attorney or documents prepared by the

attorney in anticipation of litigation do not fall within the doctrine and must be answered. *See*

*Upjohn*, 449 U.S. at 395; *Leonen*, 135 F.R.D. at 96.

The questions at issue seek information of a factual nature and do not invade the relevant

privileges. Indeed, this Court guided the formation of the questions with the attorney-client and

work product privilege issues in mind. As this Court clearly will recall:

- Part V seeks factual information regarding the Claimants' exposure to non-Grace asbestos-containing products including the product to which the Claimant was exposed and the nature, frequency and location of the exposure. There is nothing privileged about such information. And the information is not privileged just because it was discovered during the course of preparation for trial or while an attorney-client relationship existed. Indeed, such an objection to provision of other exposure information is disingenuous, at best.

- Part VII, Section A, Questions 4-7 seek factual information regarding dismissals, verdicts and settlements of asbestos-or silica-related litigation brought by the Claimant: including the basis for the dismissal of any claim, the amount of a judgment or verdict entered against any defendant, the amount of any settlement reached with a defendant, and whether the Claimant was deposed. Once again, there is nothing privileged about such facts.

- Part VII, Section B, Questions 2-7 seek factual information regarding claims brought against asbestos- or silica-related trusts: including the date of the claim, the party against whom the claim was asserted, whether the claim was settled, the amount of the claim, and whether the claim was disallowed and on what basis. Similarly, this is factual information, clearly discoverable and not privileged.

Accordingly, because the information sought is factual and not concerned with communications that might be privileged, the privilege and work product objections should be denied.

**B.    The MMWR Firms' Claimants Have Not Met Their Burden Of Demonstrating That Either The Attorney-Client Privilege Or Work Product Privilege Prevent The Disclosure Of The Information.**

Under established Third Circuit law, the burden of proving that the attorney-client privilege or work product doctrines apply and prevent the discovery of otherwise relevant materials is on the party asserting the privilege. *See In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 187 (D.N.J. 2003) ("The party asserting the privilege bears the burden of establishing those facts that are the essential elements of the privileged relationship."). Indeed, "a party who alleges privilege as a reason for not complying with a [discovery request] has the burden of proof to assert *specific facts* relating to specific documents [or communications] and cannot rely on conclusory statements." (emphasis added) *Mass. Sch. of Law v. Am. Bar Assoc.*, 914 F. Supp. 1172, 1178 (E.D. Pa. 1996) (emphasis added). The MMWR Firms' Claimants' privilege claim is utterly devoid of any facts, let alone specific facts that would be sufficient to justify their claims. Indeed, the sole support for the privilege claim is the conclusory statement that the objected-to questions seek "privileged information." This is not enough. *See id.* at 1178 ("The purpose of the rule is to provide a party whose discovery is constrained by a claim of privilege with information sufficient to evaluate the claim and to resist it. The party claiming the privilege cannot decide the limits of the entitlement.").

**III.    THE EXISTENCE OF CONFIDENTIALITY AGREEMENTS DOES NOT EXCUSE THE MMWR FIRMS' CLAIMANTS' OBLIGATION TO PRODUCE INFORMATION REGARDING SETTLEMENTS.**

The MMWR Firms' Claimants lodge a confidentiality objection to the following questions:

| Question | Text of Question | Text of Objection |
|---|---|---|
| Part VII, Section A, Question 6 | Settlement amount for each defendant [with whom the claimant settled asbestos- or silica-related litigation]. | The firms will not provide … information regarding settlements with other defendants as such information is … protected by confidentiality agreements. |
| Part VII, Section B, Question 6 | Please indicate the settlement amount [for each asbestos- or silica-related claim brought by the claimant]. | Claimant objects … [on the grounds that the question] requests … confidential information. |

*See* MMWR Objection Letter at 3; Wendel Objection Letter at 1.

These objections must fail for two reasons. First, the MMWR Firms' Claimants fail to make specific allegations regarding these purported confidentiality agreements to allow the Court to determine whether any such privilege would apply. Second, even if the MMWR Firms' Claimants' factual allegations were sufficient, which they are not, the mere existence of a confidentiality agreement does not prevent the disclosure of the terms of a settlement agreement.

A.    **The MMWR Firms' Claimants Allegations Are Insufficient To Support A Claim Of Confidentiality.**

The MMWR Firms' Claimants, as the parties seeking to resist the requested discovery, "must state with specificity the objection and how it relates to the particular request being opposed." *Harding v. Dana Transport, Inc.,*, 914 F. Supp 1084, 1102 (D.N.J. 1996). Instead, the MMWR Firms' Claimants make cursory, equivocal allegations of some unspecified confidentiality interest.

In their response to Part VII, Section A, Question 6, for example, which asks for the amount of settlements reached with defendants in asbestos- or silica-related litigation, the

MMWR Firms' Claimants state, "such information is ... protected by confidentiality agreements." MMWR Objection Letter at 2. This conclusory assertion of confidentiality is devoid of several key details that would be necessary for the Court to assess the propriety of any confidentiality claim. First, the MMWR Firms' Claimants' objections render it impossible to determine the scope of the potential objection. Does the claimed confidentiality agreement apply to all settlements entered into between a particular Claimant, some, or none? The objection makes it impossible to determine. Second, not all confidentiality agreements are equivalent in scope. There is no way to determine whether, under the alleged "confidentiality agreement" generically cited by the MMWR Firms, the disclosure of all information is purportedly prohibited or whether only the disclosure of certain information is allegedly barred. Moreover, confidentiality provisions frequently express exceptions that permit the disclosure of the confidential material upon a court order. Without specific allegations as to the terms of the purported confidentiality agreements, the Court cannot possibly ascertain the alleged propriety of the objection. *See* Tr. of Hr'g at 282-283 (Jul. 19, 2005) ([The Court]: I don't know what the scope of those agreements are."). At a minimum, the Claimants must provide proof of the existence of a confidentiality agreement, the identity of the parties subject to the confidentiality agreement, and the scope of the confidentiality agreement.

**B.    As A Matter Of Law, Grace Is Entitled To Information Regarding The Amounts Of The MMWR Firms' Claimants' Settlements And Trust Claims.**

Regardless of the sufficiency of their factual allegations, the MMWR Firms' Claimants' allegation that the mere existence of a confidentiality provision bars discovery of the amounts of various litigation and trust settlements is without merit as a matter of law. The law does not bar the discovery of settlement agreements, or the information contained within such agreements. Settlement-related information and agreements may be discovered if it is relevant to the "subject

matter involved in the pending action ... [or it] appears reasonably calculated to lead to the discovery of admissible evidence." *Griffin v. Mashariki*, 1997 WL 756914, at *1 (S.D.N.Y. Dec. 8, 1997) (collecting cases).

Accordingly, courts have found that "litigants cannot shield a settlement agreement from discovery *merely because it contains a confidentiality provision*." *Cleveland Constr., Inc. v. Whitehouse Hotel, Ltd.*, 2004 WL 385052, at *1 (E.D. La. Feb. 25, 2004) (*quoting ABF Capital Mgmt. v. Askin Capital*, 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000)) (emphasis added). This Court agreed when this issue arose in connection with its consideration of the Questionnaire during the July 2005 omnibus hearing. The PI Committee, acting on behalf of the interests of the Personal Injury Claimants (including the MMWR Firms' Claimants), objected to questions regarding the amounts of settlements with various defendants on the grounds that such settlements contain confidentiality agreements. Tr. of Hr'g at 282-83 (Jul. 19, 2005). Over the PI Committee's objection, the Court ordered that the Claimants "identify the defendants with whom [the Claimants] settled, the amount, and for what disease," and stated that a defendant "can come in and contest it if [a Claimant] violates their agreements." *Id.*

To the extent that the Court believes that such information needs protection from disclosure outside the Bankruptcy proceedings, the proper course is not to deny Grace access to the information, but to issue a protective order that restricts the use of the information obtained in response to these questions to the estimation proceedings. As the Third Circuit made clear: "The Court, in its discretion, is authorized ... to fashion a set of limitations that *allows as much relevant material to be discovered as possible*, while preventing unnecessary intrusions into the legitimate interests -- including ... confidentiality interests -- that might be harmed by the release of the material sought." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) (emphasis added).

## IV.    THE MMWR FIRMS' CLAIMANTS' PURPORTED PRIVACY OBJECTION IS UNSUPPORTED AND BASELESS.

The MMWR Firms' Claimants have asserted objections based on a purported privacy

right with respect to the following portions of the Questionnaire:

| Question | Text of Question | Text of Objection |
|---|---|---|
| Part V | Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging asbestos exposure to asbestos-containing products other than Grace products. | The Firms will not provide information … that is invasive of … privacy rights. |
| Part VII, Section A, Question 4 | Please provide the basis for the dismissal of the lawsuit against each defendant [in each asbestos or silica-related lawsuit brought against the defendant]. | The Firms will not provide information … that is invasive of … privacy rights. |
| Part VII, Section A, Question 5 | Please indicate the verdict amount against each defendant [in the claimant's asbestos- or silica-related lawsuit]. | The Firms will not provide information … that is invasive of … privacy rights. |
| Part VII, Section A, Question 6 | Settlement amount for each defendant [with whom the claimant settled asbestos- or silica-related litigation]. | The Firms will not provide information … that is invasive of … privacy rights. |
| Part VII, Section A, Question 7 | Settlement amount for each defendant [with whom the claimant settled asbestos- or silica-related litigation]. | The Firms will not provide information … that is invasive of … privacy rights. |
| Part VII, Section B, Questions 2-7 | 2. Date claim [for an asbestos- or silica-related injury]; 3. Person or entity against whom the claim was submitted; 4. Description of claim; 5. Was claim settled; 6. Please indicate settlement amount; 7. Was the claim dismissed or otherwise disallowed? *If yes, provide the basis for dismissal.* | The Firms will not provide information … that is invasive of … privacy rights. |

18

*See* MMWR Objection Letter at 3; Wendel Objection Letter at 1.

The MMWR Firms' Claimants cite to no authority for the proposition that some unspecified privacy right can justify withholding otherwise relevant information from discovery. Indeed, so-called "privacy rights" do not provide justification for withholding such information at the discovery stage.

The case of *Volkswagen of America, Inc. v. Superior Court*, 139 Cal. App. 4th 1481 (Cal. App. 1 Dist. 2006), is instructive. In *Volkswagen*, the plaintiff had filed suit against 67 separate manufacturers of asbestos-containing products. *Id.* at 1485-86. Volkswagen requested the production of all documents submitted by the plaintiff to any bankruptcy trusts. *Id.* at 1486. Despite having submitted documents to the Kaiser, Johns-Manville and Western MacArthur trusts, the plaintiff refused to produce the documents to Volkswagen on the grounds that "the requests invaded protected privacy interests." *Id.* The materials at issue included "information and possibly supporting documentation describing a claimant's history of asbestos exposure and medical condition." *Id.* at 1489. The *Volkswagen* Court rejected the argument that privacy interests were sufficient to prevent the discovery, noting that such restrictions on discovery were "concerned primarily with protecting particularly sensitive matters, such as sexual or psychiatric histories, or the privacy interests of third parties." *Id* at 1492. Indeed, the Court stated:

> In contrast, what is at issue here is information bearing on the very injury for which [plaintiff] himself is suing Volkswagen. No third party interests are at stake. ***There is no reason to provide heightened protection for information concerning [plaintiff's] work history, which is plainly relevant and not confidential***, or concerning his medical condition which is directly at issue and undoubtedly substantially disclosed in materials that have already been produced during the course of discovery.

*Id.* (emphasis added). Similarly, the Court found that privacy interests did not protect the discovery of settlement amounts. *Id.* at 1491. As all the information sought by Grace in the

Questionnaire relates solely to information concerning the individual Claimants and their claims, there can be no conceivable privacy interest at stake, as the Claimants have squarely put their medical conditions, asbestos exposures, and settlement history with other defendants for the same claims at issue. The MMWR Firms' Claimants' privacy objection is unfounded at best. The Court should overrule the objection and order that the requested information be provided to Grace.

## CONCLUSION

For the foregoing reasons, Debtors respectfully request that the Court overrule the objections lodged by the MMWR Firms' Claimants in lieu of providing answers to the questions posed in the Questionnaire and require that Claimants provide the required information no later than January 12, 2007.

Wilmington, Delaware
Dated: November 17, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000


KIRKLAND & ELLIS LLP
Barbara M. Harding
David Mendelson
Brian T. Stansbury
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:    (202) 879-5000
Facsimile:    (202) 879-5200

*and*

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB, LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession