## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Docket No. 13660 |
| | ) | Objection Deadline: November 28, 2006 at 4:00 P.M. |
| | ) | Hearing Date: December 5, 2006 @ 9:00 A.M. |

## MOTION TO COMPEL ASBESTOS PERSONAL INJURY CLAIMANTS REPRESENTED BY WEITZ & LUXENBURG, P.C., SIMMONSCOOPER, LLP AND WILENTZ GOLDMAN & SPITZER P.A. TO RESPOND TO THE W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

In response to the W.R. Grace Asbestos Personal Injury Questionnaire ("Questionnaire"), the clients represented by Weitz & Luxenburg, P.C., the clients represented by SimmonsCooper L.L.P., and the clients represented by Wilentz Goldman & Spitzer, P.A. (collectively, the "Weitz/SimmonsCooper/Wilentz Claimants") have objected to providing information in response to certain questions posed in the Questionnaire.[1]  As the Weitz/SimmonsCooper/Wilentz Claimants have raised substantially identical arguments, they have been joined in a single motion.  Where there are distinctions in the questions to which they object and/or the language of their objections, these distinctions have been noted for the Court.  Because their objections are unfounded, Grace hereby moves to compel the

---

[1]  The clients represented by Weitz & Luxenburg who have returned Questionnaires are identified in Exhibit A (attached).  The clients represented by SimmonsCooper who have returned Questionnaires are identified in Exhibit B (attached).  The clients represented by Wilentz Goldman & Spitzer who have returned Questionnaires are identified in Exhibit C (attached).

Weitz/SimmonsCooper/Wilentz Claimants to provide all the information requested in the Questionnaire.[2]

## ARGUMENT

The Court approved the Questionnaire after extensive briefing, argument, and consideration, and already has ruled that general relevance objections are unfounded and should not be maintained. The Court also has addressed the general burden objections related to providing the information requested in the Questionnaire by permitting response by way of attachment and by providing an additional year to provide the requested information. Accordingly, all general relevance and burden objections raised by the Weitz/SimmonsCooper/Wilentz Claimants should be overruled on their face. *See* Memorandum of Points and Authorities Concerning Background of the Questionnaire Approval Process and Objections Previously Addressed by the Court ("Background Memorandum") (attached as Exhibit D).[3]

---

[2]   Grace moves only to compel responses to questions to which the Weitz/SimmonsCooper/Wilentz Claimants have objected in lieu of providing responsive information. Grace reserves its right to raise any and all objections to the sufficiency of the Weitz/SimmonsCooper/Wilentz Claimants' responses until the supplementation of their Questionnaire responses is complete.

[3]   The Weitz & Luxenburg Claimants do not refuse to answer any questions on the grounds of relevance or burden.

The SimmonsCooper Claimants have refused to answer Part II, Question 3, on the grounds of burden. For the reasons discussed in the Background Memorandum, this objection should be overruled.

Counsel for the Wilentz Claimants has refused to respond to Question 3, in Part I of the Questionnaire, regarding the Claimant's race, on the grounds that counsel "do[es] not maintain records of [the] clients' race and therefore did not respond to questions regarding the same." *See* Ltr. from D. Pacheco to B. Harding (Nov. 10, 2006) ("Wilentz Objection Letter") (attached as Exhibit E). As the Court is aware, the Questionnaires were directed to the Claimants -- as counsel for the Wilentz Claimants acknowledges. *See id.* (responding "on behalf of asbestos-related personal injury/wrongful death claimants represented by Wilentz Goldman & Spitzer ... who did or will complete a questionnaire"). Clearly, a Claimant's own race is readily-available, non-privileged information in the possession of each individual Claimant, and the failure of counsel to maintain this information does not provide an adequate basis for refusing to respond to this Court-ordered discovery. Accordingly, and for the reasons stated in the Background Memorandum, this objection should be overruled.

In connection with all other objections raised by the Weitz/SimmonsCooper/Wilentz Claimants, it is fundamental, under both Federal Rule of Civil Procedure 26 and Federal Rule of Bankruptcy Procedure 7026, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1); Fed. R. Bankr. P. 7026.  Accordingly, under a motion to compel, the initial burden is on the moving party to demonstrate that the discovery sought is relevant.   Once the relevance showing has been satisfied, the "party resisting discovery" bears the burden of making a specific showing as to why the information sought does not have to be provided.  *See Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) (citations omitted).  Because the Court already has ruled that all the questions in the Questionnaire are relevant, *see* Order Concerning Debtors' Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Personal Injury Questionnaire ("MTC Order") (Docket No. 13393) (Oct. 12, 2006) at ¶ 1, the burden rests with the firms raising the objections and resisting the discovery to demonstrate why their objections should be sustained.

The Weitz/SimmonsCooper/Wilentz Claimants refused to answer several questions based on their various objections.  However, none of  the Weitz/SimmonsCooper/Wilentz Claimants' objections are justified for the following reasons:

- First, on the grounds of the "consultant expert privilege," the Weitz/SimmonsCooper/Wilentz Claimants refused to answer multiple subparts of Part II, relating to the medical basis for the Claimants' diagnoses and the relationship between Claimants, their counsel, and the doctors responsible for their diagnoses.  This objection must fail as the Weitz/SimmonsCooper/Wilentz Claimants have not met their burden of establishing the consulting expert privilege applies to the information sought by the Questionnaire.  Further, even if applicable, exceptional circumstances exist that would require the production of such documents.

- Second, on the grounds of the attorney-client privilege and/or the attorney work product privilege, the Weitz/SimmonsCooper/Wilentz Claimants have refused to

answer various questions.    The Weitz/SimmonsCooper/Wilentz Claimants'
objections are unfounded as the questions posed in the Questionnaire seek only
facts and not privileged information. Further, the Weitz/SimmonsCooper/Wilentz
Claimants have failed to provide any objective information that would allow the
Court to determine whether any valid privilege applies.    The questions the
Weitz/SimmonsCooper/Wilentz Claimants have refused to answer on these
grounds include:

o  The Weitz Claimants refused to answer the subparts of Questions 2, 3, 4, 5, 6,
   and 7 in Part II, relating to the purpose for retention of counsel, Question 6 in
   Part VII, Section A, relating to asbestos- and silica-related litigation, and
   Question 6, in Part VII, Section B, relating to non-litigation asbestos- and
   silica-related claims.

o  The Wilentz Claimants refused to answer multiple subparts of Questions 2, 3,
   4, 5, 6, and 7 in Part II, relating to the purpose for retention of counsel,
   whether Claimant's counsel referred Claimant to the identified doctors, and
   the relationship between Claimant, Claimant's counsel, and the doctors
   responsible for Claimant's diagnosis.

o  The SimmonsCooper Claimants refused to answer Question 6 in Part VII,
   Section A, relating to asbestos- and silica-related litigation, and Questions 5
   and 6 in Part VII, Section B, relating to asbestos- and silica-related claims.

•  Third, on grounds of confidentiality, the Weitz/SimmonsCooper/Wilentz
   Claimants refuse to answer Question 6, Part VII, Section A, relating to the
   settlement of asbestos- and silica-related litigation.  The Weitz/SimmonsCooper
   Claimants also refused to answer Question 6 of Part VII, Section B, relating to
   Claimants' settlements of non-litigation asbestos and silica claims, on the same
   grounds.    Additionally, the SimmonsCooper Claimants refused to answer
   Questions 1 and 5 of Part VII, Section B on the same grounds.  This objection
   must fail, as confidentiality agreements do not immunize facts concerning a
   settlement from discovery.

## I.    THE WEITZ/SIMMONSCOOPER/WILENTZ CLAIMANTS HAVE IMPROPERLY ASSERTED CLAIMS OF "CONSULTING EXPERT" PRIVILEGE.

The Weitz/SimmonsCooper/Wilentz Claimants have asserted objections based on the

"consulting expert" privilege of Federal Rule 26(b)(4)(B) with respect to the following

portions of the Questionnaire:

4

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Instruction C | Asbestos Related Condition(s) … If you have been diagnosed with multiple conditions and/or if you have received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. | [Claimants object] to the [] Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. Without limiting the foregoing, [Claimants object] to the following provisions of the [] Questionnaire as violative of Fed. R. Civ. P. 26(b)(4)(B): [Claimants object] to Section C of the Instructions to the extent that it requests the completion of Part II of the [] Questionnaire 'if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors.' |
| Instruction C | Supporting Documents for Diagnosis: This Questionnaire must be accompanied by any and all documents, you or your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis. | [Claimants object] to the [] Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. Without limiting the foregoing, [Claimants object] to the following provisions of the [] Questionnaire as violative of Fed. R. Civ. P. 26(b)(4)(B): . . . . [Claimants object] to Section C of the Instructions to the extent that it requests the production of 'any and all documents' that 'support or conflict with your diagnosis.' |

| Question | Text of Question | Text of Objection |
|---|---|---|
| Instruction C | X-rays and B-reads:  Please attach all x-ray readings or reports. | [Claimants object] to the [] Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. Without limiting the foregoing, [Claimants object] to the following provisions of the [] Questionnaire as violative of Fed. R. Civ. P. 26(b)(4)(B): . . . [Claimants object] to Section C of the Instructions to the extent that it requests the production of 'all x-ray readings and reports.' |
| Instruction C | Pulmonary Function Tests:  Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based. | [Claimants object] to the [] Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. Without limiting the foregoing, [Claimants object] to the following provisions of the [] Questionnaire as violative of Fed. R. Civ. P. 26(b)(4)(B): . . . [Claimants object] to Section C of the Instructions to the extent that it requests the production of 'all pulmonary function test results, including the raw data and all spirometric tracings, on which the results are based.' |

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Instruction J | As indicated the instructions to Parts II and III, this Questionnaire must be accompanied by copies ... of any and all documents you, your counsel, or your doctors have or subsequently obtain that ... support or conflict with your diagnosis. | [Claimants object] to the [] Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. Without limiting the foregoing, [Claimants object] to the following provisions of the [] Questionnaire as violative of Fed. R. Civ. P. 26(b)(4)(B): . . . [Claimants object] to Section J of the Instructions to the extent that it requests the production of 'any and all documents' that 'support or conflict with your diagnosis.' |
| Part II and all subparts | Asbestosis-Related Conditions | [Claimants object] to the [] Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. Without limiting the foregoing, [Claimants object] to the following provisions of the [] Questionnaire as violative of Fed. R. Civ. P. 26(b)(4)(B): [Claimants object] to Part II of the Discovery Questionnaire to the extent that it requests disclosure of 'diagnoses and diagnostic tests' by 'multiple doctors' concerning 'previous or subsequent diagnoses or diagnostic tests that change or conflict with the original diagnoses.' Claimant urges this objection with regard to all 'conditions' for which disclosure is requested. . . . [Claimants object]to Part II of the Questionnaire in its entirety on the ground that it exceeds the scope of discovery in that it seeks information . . . from experts that is non-discoverable and is subject to the consulting expert and work product privileges. |

*See, e.g.*, Questionnaire of F.R. at WR GRACE PIQ 44059-0034 to 44059-0040 (submitted

by Weitz & Luxenburg) (attached as Exhibit F); Questionnaire of J.H. at WR GRACE PIQ

57502-0045 to 57502-0054 (submitted by SimmonsCooper) (attached as Exhibit G); Wilentz

Objection Letter at 2.[4]

### A.    The Weitz/SimmonsCooper/Wilentz Claimants Have Not Demonstrated A Valid Consultant Relationship.

As    the    parties    claiming    a    privilege,    the    burden    is    on    the

Weitz/SimmonsCooper/Wilentz Claimants to prove that the consulting expert privilege

applies and prevents the discovery of otherwise relevant materials. *See In re Gabapentin*

*Patent Litig.*, 214 F.R.D. 178, 187 (D.N.J. 2003) ("[T]he party asserting the privilege bears

the burden of establishing those facts that are the essential elements of the privileged

relationship."). Indeed, "a party who alleges privilege as a reason for not complying with a

[discovery request] has the burden of proof to assert *specific facts* relating to specific

documents [or communications] and cannot rely on conclusory statements." *Mass. Sch. of*

*Law v. Am. Bar Assoc.*, 914 F. Supp. 1172, 1178 (E.D. Pa. 1996) (emphasis added). The

Weitz/SimmonsCooper/Wilentz Claimants' privilege claim is utterly devoid of any facts, let

alone specific facts that would be sufficient to justify their claims.

The Weitz/SimmonsCooper/Wilentz Claimants' position appears to be that any

doctors who performed any test, other than the doctors named expressly in the Questionnaire,

are so called "consulting experts." However, the Weitz/SimmonsCooper/Wilentz Claimants

have not demonstrated that a consulting relationship existed at the time that the tests were

---

[4]    *See also* Questionnaire of R.D. at WR GRACE PIQ 57764-0004 to 57764-0014 (submitted by Wilentz)
(attached as Exhibit H). These exemplars are representative of the Questionnaires submitted on behalf of
the Claimants named in Exhibits A-C. Grace will make available to the Court the Questionnaire for any
individual named in Exhibits A-C at the Court's request.

performed. Namely, the Weitz/SimmonsCooper/Wilentz Claimants have not shown facts that would allow the Court to conclude that such a relationship existed, such as: "(1) the manner in which the consultation was initiated; (2) the nature, type and extent of information or material provided to, or determined by, the expert in connection with his review; (3) the duration and intensity of the consultative relationship; and, (4) the terms of the consultation, if any (e.g. payment, confidentiality of test data or opinions, etc.)." *Ager v. Jane C. Stormont Hosp. and Training Sch. for Nurses*, 622 F.2d 496, 501 (10th Cir. 1980). Absent this showing, claims of consulting expert privilege cannot be sustained. *See Mass. Sch. of Law*, 914 F. Supp. at 1178.

Additionally, the names of the consulting experts, firms or diagnostic screening companies that performed tests on the Claimants on behalf of the firms are not privileged or shielded from disclosure under any scenario even if the firms can establish that such a confidential relationship existed with such persons or entities. *See Sea Colony, Inc. v. Continental Ins. Co.*, 63 F.R.D. 113, 114 (D. Del. 1974) (holding that the identity of non-testifying experts is not protected from discovery); *Butler v. Harrah's Marina Hotel Casino*, 1987 WL 16691, at *2 (E.D. Pa. Sept. 8, 1987) ("This Court believes that the proper interpretation of Rule 26 allows for the discovery of identities of experts who are not expected to testify as witnesses."). To the extent a privilege exists, it covers the advice or information provided, not the person providing that advice or information.

B.     **Even If A Consulting Expert Privilege Exists, The "Exceptional Circumstances" Exception Requires Disclosure Of The Tests That Support Or Conflict With The Claimants' Diagnoses.**

"Exceptional Circumstances" require disclosure of the medical information and tests being withheld. Fed. R. Civ. P. 26(b)(4)(B); *Ager*, 622 F.2d at 504; *see also Hoover v. U.S. Dep't. of the Interior*, 611 F.2d 1132, 1140-42 (5th Cir. 1980); *Perry v. United States*, 1997

WL 53136, at *2 (N.D. Tex. Feb. 4, 1997). Exceptional circumstances to overcome any

consultant's privilege exist: (1) where it is impracticable for the other party to obtain the

information from other sources, *see Ager*, 622 F.2d at 503 n.8; *Dixon v. Cappellini*, 88

F.R.D. 1, 3 (M.D. Pa. 1980); (2) where one party's experts cannot duplicate a test or an

observation by a consulting expert, *see Ager*, 622 F.2d at 503 n.8; or (3) where a party may

"shop" around for a favorable expert opinion, *see Coates v. AC & S, Inc.*, 133 F.R.D. 109,

110 (E.D. La. 1990). All three circumstances are present in this case.

> **1.    It is impracticable to obtain these test results from another party and the tests cannot be duplicated.**

Exceptional circumstances are present because it is impracticable for Grace to obtain

the information from other sources, and Grace's experts cannot acquire the same information

known by the consulting expert by performing their own x-ray readings or pulmonary

function tests. *See Ager*, 622 F.2d at 503 n.8; *Adams,* 132 F.R.D. at 442. Asbestosis is a

progressive disease. A person with asbestosis should experience a worsening of his or her

condition over time. The x-ray reports, diagnostic tests, and pulmonary function tests

prepared by these alleged consultants are the only evidence of the Claimant's physical

condition at the time the test was performed. Even if Grace's experts could re-perform the

tests, which they cannot, this would not be sufficient because the tests may be many years old

and a significant change of circumstances likely has occurred during the intervening period

of time. That is precisely why, regardless of any purported confidential consultant privilege,

medical reports are routinely ordered disclosed based on exceptional circumstances. *See*

*Braun v. Lorillard Inc.*, 84 F.3d 230, 236 (7th Cir. 1996), cert. denied, 519 U.S. 992 (1996)

(negative test results obtained by plaintiff's experts were discoverable because exceptional

circumstances were found when lung tissue was destroyed by the plaintiff's expert testing,

test results could not be obtained by other means and the cause of plaintiff's lung disease was in issue); *Delcastor, Inc. v. Vail Assocs., Inc.*, 108 F.R.D. 405, 409 (D. Colo. 1985) (defense expert's report was discoverable because exceptional circumstances were found where mudslide terrain eroded after the expert's examination); *Dixon*, 88 F.R.D. at 3 (reports made by psychologist and psychiatrist consulted by plaintiff immediately after alleged "de-programming" were discoverable because exceptional circumstances were found where information as to plaintiff's mental state at that specific time could not otherwise be obtained by defendants and plaintiff's mental state immediately following "de-programming" was in issue).

Moreover, these tests may be the only source of potentially exculpatory evidence. Any test that tends to show that a Claimant may have tested negative for the presence of asbestosis or another asbestos-related disease or that the Claimant is not impaired as the result of any asbestos-related disease is critically important to Grace's experts' evaluation of the pre-petition litigation claims. Such evidence cannot be shielded from discovery by the consultant privilege, particularly where, as here, it is impossible for Grace to obtain the potentially exculpatory evidence from any other source or in any other manner. This Court specifically addressed this issue when first determining the scope of the medical information that would be required in the Questionnaire. At that time, the Court recognized the importance of the provision of exculpatory medical information: "Well, I know this. I know that if there's an x-ray that doesn't support the diagnosis, because it's negative, and it should be positive, [then] that relates to the diagnosis." Tr. of Hr'g at 233 (Jul. 19, 2005). The Weitz/SimmonsCooper/Wilentz Claimants' attempts to hide this information should be rejected summarily. This is the very information Grace has been seeking from the inception

of this Bankruptcy. If exculpatory medical evidence exists about any of these firms' Claimants, it must be produced as ordered by this Court, and sanctions should be imposed if it is withheld.

### 2.    The potential "shopping" of experts is an exceptional circumstance.

Exceptional circumstances are also present where there is reason to believe that a Claimant or firm may have "shopped" around for an expert. *Coates v. AC & S, Inc.*, is on point. There, in a lawsuit alleging personal injury due to asbestos exposure, the District Court for the Eastern District of Louisiana held that "shopping" of tissue samples for a favorable expert opinion that a plaintiff's death resulted from mesothelioma constituted an exceptional circumstance under Rule 26(b)(4)(B). *See Coates*, 133 F.R.D. at 110. The Court ordered that the plaintiff was entitled to either depose or obtain copies of reports of experts to whom the tissue samples were taken. *See id.* at 110-11. The Court stated that it was "still of the opinion that 'shopping' continues to take place and that such 'shopping' is sufficient to fall within the Rule's exceptional circumstances exception." *Id.* at 110. The Court also noted that it was impracticable for the plaintiff to obtain this information by other means. *See id.* at 111.

There is reason to believe such "shopping" is taking place in these asbestos cases. *See, e.g.*, David Egilman, Letter to the Editor, *Asbestos Screenings*, 42 Am. J. of Indus. Med. 163 (2002). A substantial portion of asbestos litigation is supported by "specious medical evidence" including "evidence generated by the entrepreneurial medical screening enterprises and B-readers — specially certified X-ray readers that the enterprises or plaintiff lawyers select, who often conform their findings and reports to the expectations of the plaintiff lawyers who retain them." Lester Brickman, *On the Theory Class's Theories of*

*Asbestos Litigation: The Disconnect Between Scholarship and Reality*, 31 Pepp. L. Rev. 33, 41 (2003). Other asbestos bankruptcy cases have found that a few accommodating "over-reading" B-readers are responsible for a large percentage of previously paid claims. Specifically, Judge Fullam of the District of Delaware noted that "[c]ertain pro-plaintiff B-readers were so biased that their readings were simply unreliable." *Owens Corning v. Credit Suisse First Boston*, Memorandum and Order, Case No. 04-00905, Docket No. 106, at 6 (Mar. 31, 2005).

Further, David Austern, general counsel for the Manville Trust and the Future Claimants' Representative in *this case*, stated: "'Part of the problem was sort of an amazing elasticity — which is about as calm a word as I can think of — on the part of claimants' lawyers to find doctors who will say that somebody suffers from minimal asbestos disease.'" Christine Biederman, *et al.*, *Toxic Justice*, Dallas Observer, Aug. 13, 1998. The disclosure of the B-readings, x-ray reports, and other diagnostic tests by these so-called "consulting experts" are the only source of information that would conclusively determine that such doctor shopping occurred.

## II.   THE WEITZ/SIMMONSCOOPER/WILENTZ CLAIMANTS HAVE IMPROPERLY ASSERTED CLAIMS OF PRIVILEGE.

The Weitz/SimmonsCooper/Wilentz Claimants have asserted objections based on the attorney-client privilege and attorney work product with respect to the following portions of the Questionnaire:

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Instruction D[5] | Attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease. | Claimant objects to Instruction D to the extent that it requests Claimant to 'attach any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease' on the ground that . . . it requests documents that are subject to the work product privilege. |
| Part II, all subparts[6] | Asbestos-Related Medical Condition | Claimant objects to Part II of the Questionnaire in its entirety on the ground that it … seeks information … that is privileged …. and is subject to the … work product privilege. |

---

[5]   The Wilentz Claimants do not object to Instruction D on these grounds.

[6]   Only the Weitz Claimants object to Part II in its entirety on these grounds.

| Question | Text of Question | Text of Objection |
|---|---|---|
| Part II, Questions 2, 4, 5, 6, and 7[7] | Did you retain counsel in order to receive any of the services performed by the [] doctor? | Wilentz Claimants: WGS Claimants further object to the API Questionnaire to the extent that it seeks disclosure of any privileged communication between any WSG Claimant, and/or a representative of any WGS Claimant, and any attorney for any WGS Claimant, and/or a representative of any attorney for any WGS Claimant. In addition, pursuant to Federal Rule of Civil Procedure 26(b)(3), WGS Claimants object to the API Questionnaire to the extent that it seeks disclosure of the work product of any attorney for any WGS Claimant, including but not limited to the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of any WGS Claimant. Specifically, and without limiting the foregoing, WGS Claimants object to the following provisions of the API Questionnaire as violative of the attorney-client communication and/or attorney work product privileges: (a) WGS Claimants object to Part II of the API Questionnaire to the extent that it asks if WGS Claimants 'retained counsel in order to receive any of the services performed by the diagnosing doctor.' <br><br> Weitz Claimants: Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work products privileges. . . |

---

[7]   While the SimmonsCooper Claimants have not refused to respond on these grounds, they have also asserted objections based on the attorney-client privilege and the work product privilege to the subparts of Questions 2, 4, 5, 6, and 7 in Part II that relate to: (1) the purpose for the retention of counsel; (2) whether Claimant's counsel referred Claimant to the identified doctors; and (3) the relationship between Claimant, Claimant's counsel, and the doctor diagnosing or evaluating Claimant's alleged asbestos-related disease or condition. Despite these objections, the SimmonsCooper Claimants responded to the substance of these questions. To the extent that the SimmonsCooper Claimants are raising these objections or objections based on the consultant privilege, such objections should fail for all the reasons stated herein.

| Question | Text of Question | Text of Objection |
|---|---|---|
| Part II, Questions 2, 4, 5, and 6[8] | Was the [] doctor referred to you by counsel? | Wilentz Claimants: WGS Claimants further object to the API Questionnaire to the extent that it seeks disclosure of any privileged communication between any WSG Claimant, and/or a representative of any WGS Claimant, and any attorney for any WGS Claimant, and/or a representative of any attorney for any WGS Claimant.  In addition, pursuant to Federal Rule of Civil Procedure 26(b)(3), WGS Claimants object to the API Questionnaire to the extent that it seeks disclosure of the work product of any attorney for any WGS Claimant, including but not limited to the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of any WGS Claimant.  Specifically, and without limiting the foregoing, WGS Claimants object to the following provisions of the API Questionnaire as violative of the attorney-client communication and/or attorney work product privileges: . . . (b) WGS Claimants object to Part II of the API Questionnaire to the extent that it asks if 'the diagnosing doctor was referred to you by counsel.' |

---

[8]    Only the Wilentz Claimants have refused to respond to these questions on this basis.  While the Weitz Claimants have not refused to respond on these grounds, they have also asserted objections based on the attorney-client privilege and the work product privilege to the subparts of Questions 2, 4, 5, 6, and 7 in Part II that relate to:  (1) whether Claimant's counsel referred Claimant to the identified doctors; and (2) the relationship between Claimant, Claimant's counsel, and the doctor diagnosing or evaluating Claimant's alleged asbestos-related disease or condition.  Despite these objections, the Weitz Claimants responded to the substance of these questions.  To the extent that the Weitz Claimants are raising these objections or objections based on the consultant privilege, such objections should fail for all the reasons stated herein.  *See* n. 7, *supra*, regarding the SimmonsCooper Claimants.

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Part II, Questions 2, 4, 5, and 6[9] | Are you aware of any relationship between the [] doctor and your legal counsel? | Wilentz Claimants: WGS Claimants further object to the API Questionnaire to the extent that it seeks disclosure of any privileged communication between any WSG Claimant, and/or a representative of any WGS Claimant, and any attorney for any WGS Claimant, and/or a representative of any attorney for any WGS Claimant.  In addition, pursuant to Federal Rule of Civil Procedure 26(b)(3), WGS Claimants object to the API Questionnaire to the extent that it seeks disclosure of the work product of any attorney for any WGS Claimant, including but not limited to the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of any WGS Claimant.  Specifically, and without limiting the foregoing, WGS Claimants object to the following provisions of the API Questionnaire as violative of the attorney-client communication and/or attorney work product privileges: . . . (c) WGS Claimants object to Part II of the API Questionnaire to the extent that it asks if Claimant is 'aware of any relationship between the diagnosing doctor and your legal counsel' unless WGS Claimant's knowledge was obtained other than through communication with WGS Claimant's legal counsel and/or his/her representative. |
| Part VII, Section A, Question 6[10] | Settlement amount for each defendant [settling asbestos or silica related litigation]. | Claimant objects to Part VII, Subsection a, question 6 and each of its subparts regarding settlements reached in the lawsuit as it . . . requests privileged … information. |

---

[9]   *See* n. 7 & 8, *supra.*

[10]   The Wilentz Claimants do not object to Question 6 in Part VII, Section A on these grounds.

| **Question** | **Text of Question** | **Text of Objection** |
|---|---|---|
| Part VII, Section B, Question 5[11] | Was [asbestos- or silica-related] claim settled? | Claimant objects to Part VII, Subsection b, [question 5] regarding settlements with an asbestos trust as it . . . requests privileged ... information. |
| Part VII, Section B, Question 6[12] | Please indicate settlement amount: | Claimant objects to Part VII, Subsection b, [question 6] regarding settlements with an asbestos trust as it . . . requests privileged ... information. |

*See, e.g.*, Questionnaire of F.R. at WR GRACE PIQ 44059-0035 to 44059-0045 (submitted by Weitz & Luxenberg); Questionnaire of J.H. at WR GRACE PIQ 57502-0046 to 57502-0060 (submitted by SimmonsCooper); *see also* Wilentz Objection Letter at 3.

Regardless of which claim of privilege the Weitz/SimmonsCooper/Wilentz Claimants intend to assert, neither claim is well-founded. First, the questions at issue only seek facts and do not invade on *any* privilege at all. Second, the Weitz/SimmonsCooper/Wilentz Claimants have provided no information by which the Court could assess the validity of those privilege claims.

### A. Neither The Attorney-Client Privilege Nor The Work Product Doctrine Apply.

It is undisputed that the attorney-client privilege "extends only to *communications and not to facts.*" *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (empahasis original); *Synalloy Corp. v. Gray*, 142 F.R.D. 266, 268 (D. Del. 1992). Likewise, work product protection protects documents or opinions created in anticipation of litigation. *See Leonen v. Johns-Manville*, 135 F.R.D. 94, 96 (D.N.J. 1990) (holding that the work product

---

[11]  The Weitz Claimants and Wilentz Claimants do not object to Question 5 of Part VII, Section B on these grounds.

[12]  The Wilentz Claimants do not object to Question 6 of Part VII, Section B on these grounds.

doctrine "while protective of an attorney's opinions, does not protect the *facts* that underlie the opinions" and "[a] party may obtain such facts through the adversarial process *by asking questions* in the appropriate areas") (emphasis added).    Thus, questions seeking factual information as opposed to communications between the Claimant and his or her attorney or documents prepared by the attorney in anticipation of litigation do not fall within the privilege and must be answered. *See Upjohn*, 449 U.S. at 395; *Leonen*, 135 F.R.D. at 96.

The questions at issue seek information of a factual nature and do not invade the relevant privileges.    Indeed, this Court guided the formation of the questions with the attorney-client privilege and work-product doctrine in mind.    As this Court clearly will recall:

- Part II seeks information regarding the basis for Claimant's allegations of asbestos-related diseases or conditions, including whether that claim is based on an x-ray, a pulmonary function test, diagnoses by medical specialists, a pathology report, or another basis and asks for factual information regarding the Claimant's diagnosis, including the names of the physicians performing diagnostic tests and the results of those tests.    There is nothing privileged about such information. Information is not privileged just because it was discovered during the court of preparation for trial or while an attorney-client relationship existed.    Indeed, withholding information about medical tests performed in connection with the diagnosis of a disease for which the Claimant is seeking monetary recovery from Grace is disingenuous at best.

- Part II asks for information regarding the general purpose of the Claimant's retention of counsel, including whether counsel was retained in order to receive the services performed by the doctor in question.    It is well-recognized that the purpose of retention of counsel is not privileged.

- Part II further asks the Claimant whether the doctor in question was hired to perform the services as a result of being "referred to you by counsel."    There is nothing privileged about this information.

- Finally, Part II asks the Claimant whether he or she is "aware of any relationship between" the doctor in question "and your legal counsel."    There is nothing privileged about such facts.

- Part VII, Section A, Question 6 asks for the amount of any settlement agreement reached by a Claimant in other asbestos- or silica-related litigation.    Again, there is no privilege that bars discovery of such information.

- Part VII, Section B, Question 5 asks whether any asbestos- or silica-related claims have been settled by the Claimant. The fact of a settlement is not privileged.

- Part VII, Section B, Question 6 asks the amount of any settlement agreement reached by a Claimant in other asbestos- or silica-related claims. Once again, this factual information is clearly discoverable and not privileged.

These questions seek factual information known to the Claimant independent from any communications between the Claimant and his or her counsel. For example, the Part II questions seek information regarding the purpose and scope of the retention of counsel and other information known to the Claimant independent from any communications between the Claimant and his or her counsel. *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001) (permitting inquiry "into the general nature of legal services"); *In re Grand Jury Procedures*, 722 F.2d 303, 308 (6th Cir. 1983) (holding that mere fact of and scope of representation is not privileged). Moreover, the events in question, including the diagnosis of the Claimant with the disease or condition for which he or she seeks recovery, may well have occurred outside the attorney-client relationship. Thus, the Claimant may assert the attorney-client privilege as grounds for refusing to respond to these questions only after he or she have established the existence of an attorney-client relationship at the time of the relevant events.

**B.     The Weitz/SimmonsCooper/Wilentz Claimants Have Not Met Their Burden Of Demonstrating That Either The Attorney Client Privilege Or Work Product Doctrine Prevent The Disclosure Of The Information.**

Under established Third Circuit law, the burden of proving that the attorney-client privilege or work product doctrine apply and prevent the discovery of otherwise relevant information falls on the party asserting the privilege. *See In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 187 (D.N.J. 2003) ("The party asserting the privilege bears the burden of establishing those facts that are the essential elements of the privileged relationship."). Indeed, "a party who alleges privilege as a reason for not complying with a [discovery

request] has the burden of proof to assert *specific facts* relating to specific documents [or communications] and cannot rely on conclusory statements." *Mass. Sch. of Law v. Am. Bar Assoc.*, 914 F. Supp. 1172, 1178 (E.D. Pa. 1996) (emphasis added).    The Weitz/SimmonsCooper/Wilentz Claimants' privilege claims are utterly devoid of any facts, let alone specific facts that would be sufficient to justify their claims.  Indeed, sole support for the privilege claim are the conclusory statements that the objected-to questions may seek "privileged information" or "privileged communications." This is not enough. *See id.* ("The purpose of the rule is to provide a party whose discovery is constrained by a claim of privilege with information sufficient to evaluate the claim and to resist it.  The party claiming the privilege cannot decide the limits of his entitlement.").

With regard to the amounts of any settlement agreements, clearly the amount of a settlement agreement is entirely separate from any privileged attorney-client communication or attorney mental impression.  Grace has not asked the Claimants to reveal the nature or substance of settlement negotiations, nor has Grace asked the Claimants to reveal the bases for their decisions to enter into these settlement agreements.

In short, the Weitz/SimmonsCooper/Wilentz Claimants have offered no basis for finding that the purely factual question regarding (a) the amount of a settlement agreement; (b) the general purpose for the Claimants' retention of counsel; or (c) the relationship between Claimants, Claimants' counsel, and the doctors diagnosing Claimants invades the attorney work product or the attorney-client privilege.

III.    **THE EXISTENCE OF CONFIDENTIALITY AGREEMENTS DOES NOT EXCUSE THE WEITZ/SIMMONSCOOPER/WILENTZ CLAIMANTS' OBLIGATION TO PRODUCE INFORMATION REGARDING SETTLEMENTS.**

The Weitz/SimmonsCooper/Wilentz Claimants lodge a confidentiality objection to the following questions:

| Question | Text of Question | Text of Objection |
|---|---|---|
| Part VII, Section A, Question 6 | Settlement amount for each defendant [settling asbestos or silica related litigation]. | Weitz/SimmonsCooper Claimants:  Claimant objects to Part VII, Subsection a, question 6 and each of its subparts regarding settlements reached in the lawsuit as it . . . requests … confidential information. . . . Further, for a majority of defendants, any settlement agreements are subject to a confidentiality agreement.<br><br>Wilentz Claimants:  WGS Claimants further object to Section a.6 of Part VII of the API Questionnaire to the extent that it seeks disclosure of settlements reached with other defendants that are subject to binding confidentiality agreements. |
| Part VII, Section B, Question 1[13] | Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? | Claimant objects to Part VII, Subsection b, question 1 and each of its subparts regarding settlements reached in the lawsuit as it . . . requests … confidential information. |
| Part VII, Section B, Question 5[14] | Was [asbestos- or silica-related] claim settled? | Claimant objects to Part VII, Subsection b, questions 5 and 6 regarding settlements with an asbestos trust as it . . . requests privileged or confidential information. |

---

[13]    The Weitz Claimants and the Wilentz Claimants do not object to Question 1 of Part VII, Section B on these grounds.

[14]    The Weitz Claimants and the Wilentz Claimants do not object to Question 5 of Part VII, Section B on these grounds.

| Question | Text of Question | Text of Objection |
|----------|------------------|-------------------|
| Part VII, Section B, Question 6[15] | Please indicate settlement amount: | Claimant objects to Part VII, Subsection b, questions 5 and 6 regarding settlements with an asbestos trust as it . . . requests privileged or confidential information. |

*See, e.g.*, Questionnaire of F.R. at WR GRACE PIQ 44059-0044 to 44049-0045 (submitted by Weitz & Luxenberg); Questionnaire of J.H. at WR GRACE PIQ 57502-0058 to 57502-0059 (submitted by SimmonsCooper); Wilentz Objection Letter at 3.

This claim must fail for two reasons. First, the Weitz/SimmonsCooper/Wilentz Claimants fail to make sufficiently specific allegations regarding these purported confidentiality agreements to allow the Court to determine whether any such privilege from discovery would apply. Second, even if the Weitz/SimmonsCooper/Wilentz Claimants' factual allegations were sufficient, which they are not, the mere existence of a confidentiality agreement does not prevent the disclosure of the terms of a settlement agreement in litigation.

### A. The Weitz/SimmonsCooper/Wilentz Claimants' Allegations Are Insufficient To Support A Claim Of Confidentiality.

The Weitz/SimmonsCooper/Wilentz Claimants, as the parties seeking to resist the requested discovery, "must state with specificity the objection and how it relates to the particular request being opposed." *See Harding v. Dana Transport, Inc.*, 914 F. Supp. 1084, 1102 (D.N.J. 1996) ("Broad-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request."). Instead, the

---

[15] The Wilentz Claimants do not object to Question 6 of Part VII, Section B on these grounds.

Weitz/SimmonsCooper/Wilentz Claimants make cursory, equivocal allegations of some unspecified confidentiality interest.

In their response to Part VII, Section A, Question 6, for example, which asks for the amount of settlements reached with defendants in asbestos- or silica-related litigation, the Weitz/SimmonsCooper Claimants state, "for a *majority* of defendants, *any* settlement agreements are subject to a confidentiality agreement." *See, e.g.,* Questionnaire of J.H. at WR GRACE PIQ 57502-0058 (emphasis added). Similarly, the Wilentz Claimants object "*to the extent that* it seeks disclosure of settlements reached with other defendants that are subject to binding confidentiality agreements." *See* Wilentz Objection Letter at 3. These conclusory assertions of confidentiality are devoid of several key details that would be necessary for the Court to assess the propriety of any confidentiality claim. First, by stating that "for a majority of the defendants" or "to the extent that" there is a binding confidentiality agreement, the Weitz/SimmonsCooper/Wilentz Claimants' objections render it impossible to determine the scope of the potential objection. Second, not all confidentiality agreements are equivalent in scope.

There is no way to determine whether, under the alleged "confidentiality agreement" generically cited by the Weitz/SimmonsCooper/Wilentz Claimants, the disclosure of all information is purportedly prohibited or whether only the disclosure of certain information is allegedly barred. Moreover, confidentiality provisions frequently have express exceptions that permit the disclosure of the confidential material upon a court order. Without specific statements as to the terms of the purported confidentiality agreements, the Court cannot possibly ascertain the alleged propriety of the objection. *See* Tr. of Hr'g at 282-83 (Jul. 19, 2005) ("[The Court]:  I don't know what the scope of those agreements are."). At a

minimum, the Claimants must provide proof of the existence of a confidentiality agreement, the identity of the parties subject to the confidentiality agreements, and the scope of the confidentiality agreement.

**B.      As A Matter Of Law, Grace Is Entitled To Information Regarding The Amounts Of The Weitz/SimmonsCooper/Wilentz Claimants' Settlements And Trust Claims.**

Regardless    of    the    sufficiency    of    their    factual    allegations,    the Weitz/SimmonsCooper/Wilentz Claimants' allegation that the mere existence of a confidentiality provision bars discovery of the amounts of various litigation settlements is without legal merit.  The law does not bar the discovery of settlement agreements, or the information contained within such agreements.    Settlement-related information and agreements may be discovered if it is relevant to the "subject matter involved in the pending action ... [or it] appears reasonably calculated to lead to the discovery of admissible evidence." *Griffin v. Mashariki*, 1997 WL 756914, at *1 (S.D.N.Y. Dec. 8, 1997) (collecting cases).

Accordingly, courts have found that "litigants cannot shield a settlement agreement from discovery *merely because it contains a confidentiality provision*." *Cleveland Constr., Inc. v. Whitehouse Hotel, Ltd. P'ship*, 2004 WL 385052, at *1 (E.D. La. Feb. 25, 2004) (*quoting ABF Capital Mgmt. v. Askin Capital*, 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000)) (emphasis added).  This Court agreed with this very point when this issue arose in connection with its consideration of the Questionnaire during the July 2005 omnibus hearing. The PI Committee, acting on behalf of the interests of the Personal Injury Claimants (including the Weitz/SimmonsCooper/Wilentz claimants) objected to questions regarding the amounts of settlements with various defendants on the grounds that such settlements contain confidentiality agreements.  Tr. of Hr'g at 282-83 (Jul. 19, 2005).  Over the PI Committee's

objection, the Court ordered that the Claimants "identify the defendants with whom [the Claimants] settled, the amount, and for what disease," and stated that a defendant "can come in and contest it if [a Claimant] violates their agreements." *Id.*

To the extent that the Court believes that such information needs protection from disclosure outside the Bankruptcy proceedings, the proper course is not to deny Grace access to the information, but to issue a protective order that restricts the use of the information obtained in response to these questions to the estimation proceedings. As the Third Circuit made clear: "The [C]ourt, in its discretion, is authorized by this subsection to fashion a set of limitations that ***allows as much relevant material to be discovered as possible***, while preventing unnecessary intrusions into the legitimate interests -- including ... confidentiality interests -- that might be harmed by the release of the material sought." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) (emphasis added).

## CONCLUSION

For the foregoing reasons, Debtors respectfully request that the Court overrule the objections lodged by the Weitz/SimmonsCooper/Wilentz Claimants in lieu of providing answers to the questions posed in the Questionnaire and require that Claimants provide the required information on or before January 12, 2007.

Wilmington, Delaware
Dated:  November 17, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

KIRKLAND & ELLIS LLP
Barbara M. Harding
David Mendelson
Brian T. Stansbury
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:     (202) 879-5000
Facsimile:      (202) 879-5200

*and*

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB, LLP

*James E. O'Neill*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession