REDACTED

**FINAL REPORT**

KIDNEYS: Kidneys weigh approximately 200 grams each, and appear somewhat congested. Caps WR GRACE PIQ 57602-0034 normal resistance. No neoplastic lesions are seen.

ADRENALS: The right and left adrenals are negative for evidence of metastasis. The right adrenal has a 0.8 cm diameter focus of nodular hyperplasia in the cortex.

URINARY BLADDER: Urinary bladder is distended with urine and is otherwise unremarkable.

PROSTATE: The prostate is normal in size and grossly negative for evidence of neoplasia.

SECTIONS:
   1- dominant lung mass
   2- noncontiguous nodules, right upper middle, and lower lobes
   3- non-neoplastic right lung tissue
   4- left lung tissue
   5- anterior/posterior wall, left ventricle
   6- right ventricle/section of aneurysm of right coronary artery
   7- liver, pancreas
   8- spleen, adrenal
   9- kidney, prostate
   10- diaphragm, colonic diverticulum
   11- gallbladder, small intestine stomach

## MICROSCOPIC DESCRIPTION:

Sections document the presence of a poorly differentiated carcinoma of the lung. This may either be a non-small cell carcinoma or small cell carcinoma. The presence of nucleoli and the lack of nuclear streaming favors non-small cell carcinoma. It is seen in lymphatics. Multifocal lesions are documented in the visceral pleura. Involvement includes metastases to the liver and the diaphragm.

Sections also document a significant degree of panacinar emphysema with patchy areas of fibrosis. There are collections of macrophages with anthracotic pigment that include polarizable dust particles. No active fibrosis is seen. Squamous metaplasia is seen in some of the bronchi, which are bordered by a chronic inflammatory infiltrate. Some bronchioles appear to be enlarged and distorted, suggesting a component of small airways disease.

Slide 6 documents the presence of the right coronary artery aneurysm. Despite the significant accumulation of thrombus, serial sections of the decalcified vessel is negative for evidence of significant occlusion. There are several scattered foci of fibrosis immediately bordering some of the intramural arteries. No evidence of infarct is seen.

The remaining sections are unremarkable. Prominent autolysis is noted in sections of the gallbladder and stomach. A few fungal organisms are noted at the surface of one of the lung sections - this is an artifact, due to this portion of the lung not being immersed in formalin and allowing growth of the organism.

This patient has two significant processes resulting in his death: non small cell carcinoma with metastases; severe emphysema of the lungs. The "dust particles" in the sections of the lung are nonspecific. The usual effects of asbestos exposure (pleural plaques active interstitial fibrosis in areas with fibers) are not seen. Therefore, I can make no definite statement about the implications of the alleged exposure. If this issue is of importance, there are "experts", who may be willing to express an opinion in this matter.

| CHARLES D. SHORT, M.D. | VIRGILIO P. DUMADAG, M.D. | CHARLES W. FERRIS, M.D. | JOSEPH N. MARCUS, M.D. | NASREEN QAZI, M.D. | HANNAH KRIGMAN, M.D. |
|---|---|---|---|---|---|
| Pathologist | Pathologist | Pathologist | Pathologist | Pathologist | Pathologist |
| (314) 996-5213 | (314) 996-5219 | (314) 996-5214 | (314) 996-5218 | (314) 996-6946 | (314) 996-5015 |



WR GRACE PIQ 57592-0095

 

Steven H. Dikman, M.D.
(212) 241-7353; Fax: (212) 534-7491

The Lillian and Henry M.        One Gustave L. Levy Place
Stratton-Hans Popper            Box 1194
Department of Pathology         New York, NY 10029-6574

                                Phone (212) 241-8014
                                Facsimile (212) 426.5129



MOUNT SINAI
SCHOOL OF
MEDICINE

MOUNT SINAI NYU
HEALTH

March 21, 2001

John D. Simmons, Esq.
The Simmons Firm L.L.C.
621 South Bellwood Drive, Suite 300
East Alton, Illinois 62024

RE:          **REDACTED**

Dear Mr. Simmons,

I reviewed the medical records and pathology material from          DOD:
7/23/99).                                          **REDACTED**

Asbestos Exposure/Occupational History- Exposed to a variety of asbestos containing materials including pipe covering, block insulation, muds, cements, refractory materials and bricks, gunites, fire proofing and spray-on insulation, adhesives, joint compounds, tiles, felts, roofing and siding materials, board, pipe, wallboard and floor covering, plasters, fabric, yard, tape and paper, packing, seals, gaskets, gloves and apparel, brakes and clutches. Autopsy report noted clinical history of asbestos exposure. Dr. Ohar 5/13/96: worked on a freight dock and in a factory doing pipe rolling.

Smoking History- Dr. Ohar 5/13/96: Currently a smoker at 1 pack of cigarettes per day; began smoking in 1939. Dr. Ohar 5/13/96: Reported smoking history of 57 pack years.

The B-reader report of Dr. Schonfeld on 8/29/97 regarding the 8/13/97 study showed small opacities involving the bilateral lower lung zones with a 0/1 profusion consistent with pneumoconiosis. There was bilateral costophrenic angle pleural thickening and bilateral noncalcified chest wall plaquing. The comment indicated no change since 1995.

Pulmonary Function Tests- 10/27/95: FVC 15%; FEV1 13%; FEF 25-75 10%; TLC and RV not evaluated; diffusing capacity 39%.

Chest X-ray Reports- The 6/20/99: comparison to 8/28/98 show chronic obstructive pulmonary disease, a large mass in right hilum and minimal infiltrates in the right lobe since the last examination; 6/21/89 CT scan of abdomen showed multiple masses in liver, no adenopathy; 6/21/99 CT scan chest indicated right lung mass abutting the hilum and right hilar adenopathy representing neoplasm until proven otherwise; right upper lobe infiltrate; excessive changes of emphysema.



WR GRACE PIQ 57602-0038

**REDACTED**

page 2

Dr. Agasino 6/21/99: shortness of breath; back pain; 6/23/99 study indicating pneumonia and severe COPD. Chest x-ray showed that he had a mass in the right hilum and tumor should be considered with minimal infiltrates right lower lobe and old COPD; CT scan showed a large mass representing tumor until proven otherwise; evidence of emphysema, right upper lobe infiltrate. Dr. Ohar 5/13/96: History of dyspnea on exertion. The B-reader report dated 9/18/95 revealed small opacities in the lower lung zones bilaterally with a 0/1 profusion. There was costophrenic angle blunting bilaterally and pleural plaque bilaterally. Pulmonary testing was interpreted as consistent with severe airways obstruction and air trapping. The report indicated that the patient has asbestos induced pleural plaque with extremely severe airways obstruction consistent with a pattern of emphysema. Suggested alpha 1 protease inhibitor deficiency evaluation. The B-reader report was consistent with asbestos exposure which complements his occupational history.

Summary Autopsy Findings- MA 99-15, 7/24/99: carcinoma of the right of the lobe of the lung with metastatic lesions right middle and lower lobe, diaphragmatic pleura and liver. Severe panacinar emphysema of the lungs with chronic bronchitis; negative for pleural plaques. Multiple pleural adhesions. Aneurysm of proximal right coronary artery. Focal nodular hyperplasia of adrenal gland. Clinical history indicated severe advanced pulmonary disease with COPD. Developed bilateral lung lesions clinically believed to be carcinoma. Patient declined both biopsy and treatment because of extremely poor pulmonary function; autopsy to evaluate the impact of alleged asbestos exposure and obtain anatomical confirmation of the severity of his pulmonary dysfunction. Section 3: non-neoplastic right lung tissue; section 4: left lung tissue. Microscopic description indicated that the sections document the presence of the poorly differentiated carcinoma of the lung, either a non-small cell carcinoma or small cell carcinoma; the tumor was present in lymphatics and multiple lesions documented in the visceral pleura with metastases to liver and diaphragm. There was a significant degree of panacinar emphysema with patchy areas of fibrosis. There were collections of macrophages with anthracotic pigment that included polarized coal dust particles. No active fibrosis was seen. Squamous metaplasia was seen in some of the bronchi which were bordered by a chronic inflammatory infiltrate. Some bronchial appeared to be enlarged and distorted suggesting a component of small airways disease. The report noted that the patient had two significant processes resulting in his death: non-small cell carcinoma with metastases; severe emphysema of the lungs. The dust particles in the sections of lung were nonspecific. The usual effects of asbestos exposure (pleural plaques, active interstitial fibrosis in areas with fibers) were not seen. No definite statement about the implications of the alleged exposure.

I received 11 slides A99-15, 1-11. The sections 1 and 2contained lung parenchyma with sheets of small cell carcinoma with focal necrosis and lymphatic invasion. The lung parenchyma away from tumor effects showed pulmonary emphysema, bronchiolization, mild diffuse interstitial fibrosis, mild carbon deposits and mild deposition of silicates with polarization microscopy. Decolorization of lung sections and restaining for iron did not reveal asbestos bodies. Section 3 contained small tumor foci in lymphatics: subpleural and perivascular. Section 4 consisted of lung parenchyma without tumor showing similar findings, focal bronchial squamous metaplasia,

WR GRACE PIQ 57502-0037

REDACTED                              page 3

thromboemboli and early bronchopneumonia. The other sections showed: coronary artery with
non-occlusive atherosclerotic plaquing; atherosclerotic aneurysm of artery, liver with tumor,
pancreas with atherosclerotic arteries, adrenal cortical nodule, splenic acute congestion, kidney
with interstitial inflammatory cell infiltrates containing eosinophils, dilated tubules,
extramedullary hematopoiesis consistent with acute tubular necrosis; prostatic hyperplasia;
diverticulosis coli with colonic acute erosions. Unremarkable: myocardium, autolyic gall
bladder, small bowel other areas of colon. Examination of lung tissue for asbestos burden by
cytocentrifuge light microscopy, transmission electron microscopy, energy dispersive
spectroscopy and electron diffraction analysis disclosed 75,650 asbestos fibers per gram wet
weight lung tissue composed of a mixture of chrysotile asbestos and tremolite amphibole
asbestos in a ratio of 1:1. The fibers counted were greater than 5 micrometers in length with
aspect ratios greater than30.  The chrysotile was found as fibril bundles.

Comment- The examination of the lung tissue at autopsy confirmed the clinical diagnosis of lung
carcinoma.  The microscopic examination of the lung also confirmed interstitial pulmonary
fibrosis which correlated with the radiographic findings that indicated lung parenchymal changes
related to asbestos inhalation. Although the detected level of asbestos content in the analyzed
lung tissue sample was lower than some other occupationally exposed workers, this finding may
be related to the variability of distribution of asbestos within the lung and to the disappearance of
asbestos fibers, especially chrysotile asbestos, from lung tissue over time.         . had
tremolite asbestos in his lung digestion study which is a marker of prior chrysotile asbestos
exposure. It is my opinion, with a reasonable degree of medical certainty, given the occupational
history, clinical and morphologic evidence of pulmonary asbestosis and a history of cigarette
smoking, that both occupational asbestos exposure and cigarette smoking were significant
contributing factors in the development of the lung carcinoma which caused the death of Mr.

     REDACTED

                         Very truly yours,

                         Steven H. Dikman, M.D.

REDACTED

WR GRACE PIQ 57602-0038



 

MOUNT SINAI
SCHOOL OF
MEDICINE

MOUNT SINAI NYU
HEALTH

The Lillian and Henry M.
Stratton-Hans Popper
Department of Pathology

One Gustave L. Levy Place
Box 1194
New York, NY 10029-6574

Phone (212) 241-8014
Facsimile (212) 426.5129

March 20, 2001

Steven Dikman, M.D.
Department of Pathology
Mt. Sinai School of Medicine
1 Gustave L. Levy Place
New York, New York  10029

Re:          **REDACTED**
FA01-15
A99-15

Dear Dr. Dikman:

I received from Dr. Dikman on March 1, 2001 , 2 paraffin blocks containing lung tissue for asbestos fiber burden analysis. The paraffin blocks were marked A99-15 #3 & 4.  A portion of the tissue was removed from each of the paraffin blocks with the excess paraffin being cut away.  The remaining paraffin was removed from the tissue by immersion of the tissue in xylene.  The tissue was rehydrated through ethanol. The tissue was blotted and weighed. The aggregate of lung tissue weighed 0.80 grams wet weight. The tissue contents was then submerged in KOH for digestion. The digested tissue was centrifuged to separate the non-solubilized materials from reagents and solubilized materials. The precipitate was washed five times with distilled water. The digested lung material was resuspended in 20 ml and 10 uL samples were removed and placed on formvar coated nickel grids. The grids were analyzed by transmission electron microscopy utilizing a standard fiber counting protocol. Positive controls and negative control samples prepared from the same distilled water used to wash the sample were observed. Also observed, were representative samples of the paraffin from the blocks. Verification techniques of fiber counting were used for quality control and quality assurance.

A total of 100 grid openings were scanned on three separate grid preparations, at magnifications of either 10K or 19K. Higher magnifications if necessary were used for verification of particle morphology and type.



WR GRACE PIQ 57502-0039

2 –       **REDACTED**

Electron microscopic analysis of the lung tissue revealed chrysotile and amphibole type asbestos fibers in a calculated concentration of 75,650 fibers per gram wet weight with a limit of detection of 37,825 fibers per gram wet weight. All fibers counted were 5 micrometers or greater in length with aspect ratios of greater than 30. The fibers were seen in a ratio of 1:1. The chrysotile was seen as fibril bundles. The amphibole was identified as tremolite by energy dispersive spectroscopy (EDS) and SAED analysis. Fibrous titanium was also observed, documented but not included in the asbestos fiber counts.

Ronald E. Gordon, Ph.D.
Associate Professor
Director of Electron Microscopy
Director of Analytic Asbestos Analysis Laboratory



M.B.H.-SULLIVAN
RESPIRATORY CARE
PULMONARY FUNCTION LAB

PULMONARY FUNCTION TEST

PAGE 1

## REDACTED

| | | | | | |
|---|---|---|---|---|---|
| NAME: | | | | RM#: OUT/P | |
| AGE: | 66 | NON SMOKER | DATE: | 10/27/95 | |
| SEX/RACE: | MALE / CAUCASIAN | | TEMP/PRES: | 24 C / 760 MMHG | |
| HEIGHT: | 72 IN | | PHYSICIAN: | | |
| WEIGHT: | 168 LBS | | TESTED BY: | A. KORVER CRTT | |

| SPIROMETRY | (BTPS) | | PRED | PRE-RX ACTUAL %PRED | | POST-RX ACTUAL %PRED | | %CHG |
|---|---|---|---|---|---|---|---|---|
| FVC | LITERS | | 4.52 | 0.67 * | 15 | 0.54 * | 12 | -19 |
| FEV.5 | LITERS | | 2.26 | 0.26 * | 12 | 0.24 * | 11 | -8 |
| FEV.5/FVC | % | | 50 | 38 | | 44 | | --- |
| FEV1 | LITERS | | 3.33 | 0.42 * | 13 | 0.36 * | 11 | -14 |
| FEV1/FVC | .% | | 74 | 62 | | 66 | | --- |
| FEV3 | LITERS | | | | | | | 0 |
| FEV3/FVC | % | | 97 | | | | | --- |
| FEF25-75% | L/SEC | | 2.93 | 0.28 * | 10 | 0.27 * | 9 | -4 |
| PEF | L/SEC | | 8.88 | 0.71 * | 8 | 0.55 * | 6 | -23 |
| FET100% | SEC | | | 2.8 | | 2.5 | | -11 |
| FIVC | LITERS | | 4.52 | 0.82 * | 18 | 0.74 * | 16 | |
| FEF50/FIF50 | UNITLESS | | <1.00 | 0.32 | | 0.31 | | |

| LUNG VOLUMES | (BTPS) | | PRED | ACTUAL | %PRED | | | |
|---|---|---|---|---|---|---|---|---|
| VC | LITERS | | 4.52 | 0.83 * | 18 | | | |
| TLC | LITERS | | 7.05 | 23.24 * | 330 | | | |
| RV | LITERS | | 2.61 | 22.41 * | 859 | | | |
| RV/TLC | % | | 39 | | | | | |
| FRC | LITERS | | 4.14 | 6.85 * | 165 | | | |
| ERV | LITERS | | | 29.79 | | | | |
| IC | LITERS | | | 16.39 | | | | |

| DISTRIBUTION | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| LCI | UNITLESS | | 7.0 | 6.9 | 99 | | | |
| WASH TIME | MINUTES | | | 3.4 | | | | |

| SB DIFFUSION | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DLCO | ML/MIN/MMHG | | 22.0 | 8.6 * | 39 | | | |
| DLCO/VA | 1/MIN/MMHG | | 3.74 | 1.34 * | 36 | | | |
| VA | LITERS | | | 6.40 | | | | |
| CO T.C. | SEC | | 18.3 | 51.7 * | 283 | | | |
| DLCO | ML/MIN/MMHG | | 22.0 | 8.6 * | 39 | ** | | |
| DLCO/VA | 1/MIN/MMHG | | 3.74 | 1.34 * | 36 | ** | | |
| VA | LITERS | | | 6.40 | | ** | | |
| CO T.C. | SEC | | 18.3 | 51.7 * | 283 | ** | | |

----------
* = OUTSIDE NORMAL RANGE
** = AVERAGE OF 2 BEST TESTS


WR GRACE PIQ 57502-0041

PAGE 2

NAME:                                    **REDACTED**
POS-S0301-00      N-0201-21

COMMENTS:   PATIENT GAVE HIS BEST EFFORT. ON OXYGEN AT 2LPM. PT.
VERY S.O.B. TEST PERFORMED: 1 N2 WASHOUT,2 DLCO, 2 LOOPS,2 SUBS.
INTERPRETATION:

Patient had a hard time with this
test. Very short of breathe, he attemped
every test.

ALVIN J. SCHONFELD, D.O., F.C.C.P.

905 W. CASTLEWOOD TERRACE
CHICAGO, ILLINOIS 60640

**REDACTED**



WR GRACE PIQ  87602-0042

WORKER'S Social Security Number

| | | | | | | |

TYPE OF READING
A X P

FACILITY
IDENTIFICATION

| | | | |

---

| **1A.** DATE OF X-RAY | **1B.** FILM QUALITY | If Not Grade 1 Give Reason: | **1C.** IS FILM COMPLETELY NEGATIVE? |
|---|---|---|---|
| MONTH DAY YEAR 08 13 97 | X 2 3 4 | _____ | YES ☐ Proceed to Section 5   NO ☒ Proceed to Section 2 |

---

**2A.** ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?   YES ☒   COMPLETE 2B and 2C   NO ☐   PROCEED TO SECTION 3

**2B.** SMALL OPACITIES

a. SHAPE/SIZE

| PRIMARY | SECONDARY |
|---|---|
| p q r | p q r |
| s t u | s t u |

b. ZONES

| X | X |
| X | X |
| R | L |

c. PROFUSION

| 0/- | 0/0 | 0/1 X |
| 1/0 | 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/+ |

**2C.** LARGE OPACITIES

SIZE  X A B C

PROCEED TO SECTION 3

---

**3A.** ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?   YES ☐   COMPLETE 3B, 3C and 3D   NO ☐   PROCEED TO SECTION 4

**3B.** PLEURAL THICKENING

a. DIAPHRAGM (plaque)
SITE  X R L

b. COSTOPHRENIC ANGLE
SITE  0 X X

**3C.** PLEURAL THICKENING ... Chest Wall

a. CIRCUMSCRIBED (plaque)

| | SITE 0 X | SITE 0 X |
|---|---|---|
| IN PROFILE | X A B C | X A B C |
| i. WIDTH | X 1 2 3 | X 1 2 3 |
| ii. EXTENT | | |
| FACE ON | 0 X 2 3 | 0 X 2 3 |
| iii. EXTENT | | |

b. DIFFUSE

| | SITE X R | SITE X L |
|---|---|---|
| IN PROFILE | 0 A B C | 0 A B C |
| i. WIDTH | 0 1 2 3 | 0 1 2 3 |
| ii. EXTENT | | |
| FACE ON | 0 1 2 3 | 0 1 2 3 |
| iii. EXTENT | | |

**3D.** PLEURAL CALCIFICATION

| | SITE X R | EXTENT | | SITE X L | EXTENT |
|---|---|---|---|---|---|
| a. DIAPHRAGM | | 0 1 2 3 | a. DIAPHRAGM | | 0 1 2 3 |
| b. WALL | | 0 1 2 3 | b. WALL | | 0 1 2 3 |
| c. OTHER SITES | | 0 1 2 3 | c. OTHER SITES | | 0 1 2 3 |

PROCEED TO SECTION 4

---

**4A.** ANY OTHER ABNORMALITIES?   YES ☐   COMPLETE 4B and 4C   NO ☐   PROCEED TO SECTION 5

**4B.** OTHER SYMBOLS (OBLIGATORY)

O  ca  cg  cn  co  cp  cv  di  ef  em  es  fr  hi  ho  id  ih  kl  pi  px  rp  tb

Report items which may be of present clinical significance in this section.   (SPECIFY od.)  OD   Date Personal Physician notified?  MONTH DAY YEAR

**4C.** OTHER COMMENTS   NO Δ 1995

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C   YES NO   PROCEED TO SECTION 5

---

**5.** FILM READER'S INITIALS  AJS   PHYSICIAN'S SOCIAL SECURITY NUMBER  271 44 5525   DATE OF READING  MONTH DAY YEAR 08 29 97

NAME (LAST, FIRST, MIDDLE)



WR GRACE  PIQ  57502-0043

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | } | Chapter 11 |
| | } | |
| W.R. GRACE & CO., et al | } | Case No. 01-1139(JKF) |
| | } | (Jointly Administered) |
| Debtors. | } | |

**REDACTED**

## CLAIMANT'S OBJECTIONS AND RESPONSES TO THE W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

Claimant[1],                    by and through his counsel, SimmonsCooper LLC, submits the following objections and responses to the "W.R. Grace Asbestos Personal Injury Questionnaire" ("Questionnaire"). In order to maintain the integrity of the formatting on Debtor's Questionnaire, Claimant has set out all of his/her general and specific objections in the following separate sections of this response and hereby incorporates each of these objections into Claimant's Questionnaire responses by reference herein.

## CLAIMANT'S GENERAL OBJECTIONS TO THE W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

Claimant hereby files these objections in response to the Questionnaire propounded by W.R. Grace.

1.       Claimant objects to the Questionnaire and its Instructions to the extent that they impose discovery obligations beyond those of the Federal Rules of Bankruptcy Procedure and/or the rules of civil procedure in the state where Claimant filed an asbestos personal injury lawsuit. Claimant will respond to the discovery Questionnaire in accordance with those rules. Claimant objects to the Instructions as they make document requests that are overly broad, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Claimant contends that the burden and expense of responding to Debtor's Questionnaire in the format requested by Debtor outweighs its likely benefit.

2.       Claimant objects to the Questionnaire and its Instructions to the extent that they seek information or identification of documents that are attorney work product, subject to the attorney-client or consulting expert privileges, or are otherwise not discoverable under the Federal Rules of Bankruptcy Procedure or the rules of civil procedure in the state where Claimant filed an asbestos personal injury lawsuit. Claimant further objects to the Questionnaire and its Instructions to the extent it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to

---

[1]       Throughout these Objections and Responses, the "Claimant" means the person identified in the Questionnaire Part I, Subsection a, whether living or deceased, who has or had an alleged asbestos-related disease and who filed an asbestos-related lawsuit either directly or through his/her Estate.


WR GRACE PIQ 57502-0044

be called as a witness at trial. Inadvertent disclosure of any such information or documents shall not constitute waiver of any privilege.

3.      By providing responses to the Questionnaire, the claimant does not concede that the information provided is discoverable, relevant, or admissible. All responses are provided subject to the objections set forth herein. Each claimant reserves the right to challenge further discovery into the subject matter of the Questionnaire.

4.      Claimant objects to any request in the Questionnaire that seeks any information that is not in the Claimant's control, custody, or possession; is already in the control, custody or possession of the Debtor; or is obtainable with equal or greater facility by the Debtor. The answers to the majority of the questions in Debtor's Questionnaire may be derived or ascertained from interrogatory responses and documents produced in connection with Claimant's asbestos personal injury lawsuit to which Debtor was a party prior to filing for bankruptcy ("Claimant's Asbestos Lawsuit"). Because the burden of deriving or ascertaining the answer is substantially the same for Debtor as for Claimant, Claimant has specified in Claimant's Questionnaire response the document from which the answer may be derived as permitted by Rule 33(d) of the Federal Rules of Civil Procedure as incorporated by Rule 7033 of the Federal Rules of Bankruptcy Procedure.

5.      In response to this Questionnaire, Claimant objects to the extent that the questions are vague, ambiguous and premature. Moreover, Claimant objects to this Questionnaire to the extent that the scope and content of the information sought is unreasonably cumulative and duplicative.

6.      Claimant objects to this Questionnaire to the extent it requires Claimant to compile documents or information from sources not presently available to Claimants, including documents created or compiled by third parties. Claimant objects to the Questionnaire to the extent it purports to require Claimant to gather and summarize information contained in voluminous papers that are already matters of public record.

7.      Claimant objects to this Questionnaire to the extent that the questions and their discreet sub-parts exceed twenty-five (25) in number.

8.      By submitting this response to the Questionnaire, Claimant does not intend to, and hereby does not, submit to the jurisdiction of the United States District Court for the District of Delaware, to the United States Bankruptcy Court for the District of Delaware, or to any other court. Claimant reserves (i) all objections to jurisdiction and/or venue, (ii) all protections afforded under Federal Rule of Civil Procedure 45 and Federal Bankruptcy Rule of Procedure 9016, and (iii) the right to jury trial afforded under 28 U.S.C. § 157(b)(5).



WR GRACE PIQ 57602-0045

## CLAIMANT'S SPECIFIC OBJECTIONS TO THE W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

### INSTRUCTIONS

1.    Claimant objects to Instruction A.1 to the extent that it purports to include claims under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement or indemnity on the ground that it is overly broad and requests information that is not relevant to the subject matter of the estimation proceeding.

2.    Claimant objects to Instruction C in its entirety and Instruction J regarding medical supporting documentation on the ground that it is vague, ambiguous and exceeds the scope of discovery in that it seeks information and documents from experts that is not discoverable and is subject to the work product and consulting expert privileges. Claimant further objects to the portion of the instruction requiring claimant to "complete a separate Part II for each initial diagnosis and any previous or subsequent diagnosis or diagnostic tests that change or conflict with the initial diagnosis", on the ground that the burden outweighs its likely benefit. Claimant further objects to the instruction to attach all x-ray readings and reports and all pulmonary function test ("PFT") results on the ground that it is overly broad and ambiguous. Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. Without limiting the foregoing, Claimant objects to the following provisions of the Discovery Questionnaire as violative of Fed. R. Civ. P. 26(b)(4)(B):

> (a).   Claimant objects to Section C of the Instructions to the extent that it requests the completion of Part II of the Discovery Questionnaire "if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors."

> (b).   Claimant objects to Section C of the Instructions to the extent that it requests the production of "any and all documents" that "support or conflict with your diagnosis."

> (c).   Claimant objects to Section C of the Instructions to the extent that it requests the production of "all x-ray readings and reports."

> (d).   Claimant objects to Section C of the Instructions to the extent that it requests the production of "all pulmonary function test results, including the raw data and all spirometric tracings, on which the results are based."

> (e).   Claimant objects to Section J of the Instructions to the extent that it requests the production of "any and all documents" that "support or conflict with your diagnosis."

> (f).   Claimant objects to Part II of the Discovery Questionnaire to the extent that it requests disclosure of "diagnoses and diagnostic tests" by "multiple doctors" concerning "previous or subsequent diagnoses or diagnostic tests that change or conflict with the original diagnoses." Claimant urges this objection with regard to all "conditions" for which disclosure is requested.

WR GRACE PIQ 57602-0046

Subject to the foregoing, Claimant will attach any x-rays, B-reads, pulmonary function tests or pathology reports considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit.

3.  Claimant objects to Instruction D to the extent that it requests Claimant to "attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease" on the ground that it is ambiguous and exceeds the scope of discovery in that it requests documents that are subject to the work product privilege. Further, Claimant has been barred by the Bankruptcy Code Section 362 stay from pursuing discovery against Debtors.

## PART I:  IDENTITY OF INJURED PERSONS AND LEGAL COUNSEL

### Subsection (a)(7) - Daytime Telephone Number of client

Claimant objects to this inquiry on the ground that it is neither relevant nor likely to lead to the discovery of admissible evidence. Claimant is represented by counsel, as reflected herein, and may only be contacted through counsel.

## PART II: ASBESTOS-RELATED CONDITION(S)

1.  **General Objections.** Claimant objects to Part II of the Questionnaire in its entirety on the ground that it exceeds the scope of discovery in that it seeks information not relevant to the estimation proceeding, information that is privileged, and information from experts that is non-discoverable and is subject to the consulting expert and work product privileges. Additionally, the information sought may be derived from the Claimant's discoverable medical records, which are attached to the Questionnaire. Claimant further objects on the ground that the information requested by this question and its sub-parts is equally available to the Debtor in that it may be derived from Claimant's discoverable medical reports attached to the Questionnaire. Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of any privileged communication between Claimant, and/or a representative of Claimant, and any attorney for Claimant, and/or a representative of any attorney for Claimant. In addition, pursuant to Federal Rule of Civil Procedure 26(b)(3), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of the work product of any attorney for Claimant, including but not limited to the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of Claimant.

2.  **Subsection 1(a)-(f) - Condition Being Alleged**. Claimant objects to this question and each of its subparts (a-f) on the ground that it exceeds the scope of discovery in that it seeks information not relevant to the estimation proceeding, and information from experts that is non-discoverable and is subject to the consulting expert and work product privileges. Claimant further objects on the ground that the information requested by this question and its sub-parts is equally available to the Debtor in that it may be derived from the claimant's discoverable medical reports attached to the Questionnaire. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.



WR GRACE PIQ 67502-0047

3.  **Subsection 2 - Information Regarding Diagnosis.**

a.  Claimant objects to Part II, Subsection 2 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, seeks information from experts that is non-discoverable, and seeks information that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Claimant further objects to this question to the extent that it purports to require Claimant to gather and summarize information already contained in documents provided with Claimant's Questionnaire answers, and is, therefore, obtainable with equal or greater facility by the Debtors. Claimant's diagnosis of an asbestos-related condition may be based on one or more diagnostic test(s), pathology report(s) or physical examination(s). Therefore, asking Claimant to state a "date of diagnosis" is vague and ambiguous. Subject to and without waiving the foregoing, in response to Part II, Subsection 2, Claimant has provided the date of the medical report prepared by the medical doctor designated by Claimant in Claimant's Asbestos Lawsuit to provide expert medical opinions regarding Claimant's asbestos-related disease as needed to establish the elements of Claimant's claim under state law and has answered the questions regarding such doctor, if such information was readily available. Claimant has attached to this Questionnaire a copy of such expert's report along with any available x-ray readings, pulmonary function test reports ("PFT") and/or pathology reports considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit. In addition to specifying and attaching a copy of the records from which the answer to Part II, subsection 2 may be derived or ascertained and without waiving Claimant's right to do so pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Claimant has set out in the Questionnaire response the information that is contained in the medical reports and that was readily available to Claimant's attorney.

b.  Claimant further objects to the following questions in Part II, Subsection 2 regarding Claimant's relationship to the diagnosing doctor on the ground that these questions are violative of the attorney-client communication and/or attorney work product privileges, are harassing and seek information that is not relevant to the proceeding. Claimant has additional, specific objections for the questions noted below.



WR GRACE PIQ 57602-0048

---

With respect to your relationship to the diagnosing doctor, check all applicable boxes:

Was the diagnosing doctor your personal physician? ☐ Yes ☐ No
 Further, Claimant specifically objects to this question on the ground that it is vague and ambiguous.

Was the diagnosing doctor paid for the diagnostic services that he/she performed? ☐ Yes ☐ No
*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor? ☐ Yes ☐ No
 Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges, is misleading and cannot be fairly or completely answered with a "yes" or "no." Claimant retained counsel in order to determine whether he/she had an asbestos-related claim. As part of that analysis, Claimant's counsel referred Claimant to and/or forwarded a copy of Claimant's medical records to a medical doctor qualified to give opinions regarding asbestos-related disease.

Was the diagnosing doctor referred to you by counsel? ☐ Yes ☐ No
 Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges. Claimant objects to this question since "referred to you" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.

Are you aware of any relationship between the diagnosing doctor and your legal counsel? ☐ Yes ☐ No
 Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges. Claimant objects to this question since "relationship" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.

*If yes, please explain:*

---

  Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

4. **Subsection 3 - Information Regarding Chest X-Ray (Location of X-Ray)**

  Claimant objects to Part II, Subsection 3 on the ground that it is harassing, and exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, seeks information from experts that is non-discoverable, and seeks information that is subject to the consulting expert and work product privileges. Claimant further objects to this question on the ground that it is vague and ambiguous in that Claimant may have had multiple chest x-rays taken that do not change or conflict with Claimant's initial diagnosis of an asbestos-related condition and it would be duplicative, unduly burdensome and harassing to require Claimant to complete a separate Part II for each chest x-ray.

  Subject to and without waiving the foregoing, please refer to Claimant's deposition, if available, and any medical records attached hereto.



WR GRACE PIQ 57602-0049

5.    **Subsection 4 - Information Regarding Chest X-Ray Reading (Results of X-Ray)**

a.    Claimant objects to Part II, Subsection 4 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, information from experts that is non-discoverable, and information that is subject to the consulting expert, work product and attorney-client privileges.  Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing.  Additionally, Claimant objects to this question on the ground that it is duplicative of other questions herein, and thus is unduly burdensome.  Claimant objects to this question on the ground that it is vague and ambiguous in that Claimant may have had multiple chest x-rays taken that do not change or conflict with Claimant's initial diagnosis of an asbestos-related condition and it would be duplicative, unduly burdensome and harassing to require Claimant to complete a separate Part II for each chest x-ray. Subject to and without waiving the foregoing, in response to Part II, Subsection 4, Claimant has provided information regarding Claimant's certified B-reader report considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit.  Claimant has set out in the Questionnaire response the information relating to Claimant's certified B-reader report that was readily available to Claimant's attorney.

b.    Claimant objects to Part II, Subsection 4 of the Discovery Questionnaire as violative of the attorney-client communication and/or attorney work product privileges to the extent that it asks: "if Claimant retained counsel in order to receive any of the services performed by the reader;" if "the reader was referred to you by counsel"; and if Claimant is "aware of any relationship between the reader and your legal counsel".  Claimant further objects to the following questions in Part II, Subsection 4 regarding Claimant's relationship to the reader on the ground that these questions are harassing and seek information that is not relevant to the proceeding.  Claimant has additional, specific objections for the questions noted below.



WR GRACE PIQ 67502-0050

With respect to your relationship to the reader, check all applicable boxes:

Was the reader paid for the diagnostic services that he/she performed?  ☐  Yes  ☐  No

*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the reader?  ☐  Yes  ☐  No

> **Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges, is misleading and cannot be fairly or completely answered with a "yes" or "no." Claimant retained counsel in order to determine whether he/she had an asbestos-related claim. As part of that analysis, Claimant's counsel referred Claimant to and/or forwarded a copy of Claimant's x-ray to a medical doctor qualified to give opinions regarding asbestos-related disease.**

Was the reader referred to you by counsel?  ☐  Yes  ☐  No

> **Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges. Claimant objects to this question since "referred to you" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.**

Are you aware of any relationship between the reader and your legal counsel?  ☐  Yes  ☐  No

> **Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges. Claimant objects to this question since "relationship" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.**

*If yes, please explain:*

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

6.    **Subsection 5 - Information Regarding Pulmonary Function Test**

      a.    Claimant objects to Part II, Subsection 5 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, that is non-discoverable, and that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Additionally, Claimant objects to this question to the extent that it purports to require Claimant to gather and summarize information contained in documents already provided herewith, and is thus obtainable with equal or greater facility by the Debtor. Subject to and without waiving the foregoing, in response to Part II, Subsection 5, Claimant has provided information regarding Claimant's pulmonary function test ("PFT") considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit. Claimant has set out in the Questionnaire response the information relating to Claimant's PFT report that was readily available to Claimant's counsel.

      b.    Claimant objects to Part II, subsection 5 of the Discovery Questionnaire as violative of the attorney-client communication and/or attorney work product privileges to the extent that it asks: "if Claimant retained counsel in order to



WR GRACE PIQ 57502-0051

receive any of the services performed by the testing doctor or clinician;" if "the testing doctor or clinician was referred to you by counsel"; and if Claimant is "aware of any relationship between the testing doctor or clinician and your legal counsel". Claimant further objects to the following questions in Part II, Subsection 5 regarding Claimant's relationship to the doctor or clinician who performed the pulmonary function test on the ground that these questions are harassing and seek information that is not relevant to the proceeding. Claimant has additional, specific objections for the questions noted below.

---

With respect to your relationship to the doctor or clinician who performed the pulmonary function test, check all applicable boxes:

If the test was performed by a doctor, was the doctor your personal physician?    ☐ Yes    ☐    No
Further, Claimant specifically objects to this question on the ground that it is vague and ambiguous.

Was the testing doctor and/or clinician paid for the diagnostic services that he/she performed? ☐ Yes ☐ No
*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician? ☐ Yes ☐ No
Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges, is misleading and cannot be fairly or completely answered with a "yes" or "no." Claimant retained counsel in order to determine whether he/she had an asbestos-related claim. As part of that analysis, Claimant's counsel referred Claimant to a doctor or clinician qualified to perform a pulmonary function test.

Was the testing doctor or clinician referred to you by counsel? ☐    Yes    ☐    No
Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges. Claimant objects to this question since "referred to you" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.

Are you aware of any relationship between either the doctor or clinician and your legal counsel? ☐ Yes ☐ No
Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges. Claimant objects to this question since "relationship" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.
*If yes, please explain:*

---

    c.      Claimant objects to the following questions in Part II, Subsection 5 regarding Claimant's relationship to the doctor interpreting the results of the pulmonary function test on the ground that these questions are violative of the attorney-client communication and/or attorney work product privileges, harassing and seek information that is not relevant to the proceeding. Claimant has additional, specific objections for the questions noted below.


WR GRACE PIQ 67602-0062

With respect to your relationship to the doctor interpreting the results of the pulmonary function test, check all applicable boxes:

Was the doctor your personal physician?    ☐  Yes    ☐  No
    **Further, Claimant specifically objects to this question on the ground that it is vague and ambiguous.**

Was the doctor paid for the services that he/she performed?    ☐  Yes    ☐  No
    *If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the doctor?    ☐  Yes    ☐  No
    **Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges, is misleading and cannot be fairly or completely answered with a "yes" or "no." Claimant retained counsel in order to determine whether he/she had an asbestos-related claim. As part of that analysis, Claimant's counsel referred Claimant to a medical doctor qualified to interpret the results of Claimant's pulmonary function test.**

Was the doctor referred to you by counsel?    ☐  Yes    ☐  No
    **Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges. Claimant objects to this question since "referred to you" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.**

Are you aware of any relationship between the doctor and your legal counsel?    ☐  Yes    ☐  No
    **Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges. Claimant objects to this question since "relationship" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.**
    *If yes, please explain:*

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

7.      **Subsection 6 - Information Regarding Pathology Reports**

   a.      Claimant objects to Part II, Subsection 6 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, that is non-discoverable, and that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Claimant further objects to this question to the extent that it purports to require Claimant to gather and summarize information contained in documents already provided herewith, and is thus obtainable with equal or greater facility by the Debtor. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

   b.      Claimant objects to Part II, Subsection 6 of the Discovery Questionnaire as violative of the attorney-client communication and/or attorney work product privileges to the extent that it asks: "if Claimant retained counsel in order to receive any of the services performed by the doctor;" if "the doctor was referred to

WR GRACE PIQ 57602-0053

you by counsel"; and if Claimant is "aware of any relationship between the doctor and your legal counsel". Claimant further objects to the following questions in Part II, Subsection 6 regarding Claimant's relationship to the doctor issuing the pathology report on the ground that these questions are harassing and seek information that is not relevant to the proceeding. Claimant has additional, specific objections for the questions noted below.

---

With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:

Was the doctor your personal physician?      ☐  Yes    ☐   No

   **Further, Claimant specifically objects to this question on the ground that it is vague and ambiguous.**

Was the doctor paid for the services that he/she performed?        ☐   Yes    ☐   No

   *If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the doctor?  ☐   Yes    ☐   No

   **Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges, is misleading and cannot be fairly or completely answered with a "yes" or "no." Claimant retained counsel in order to determine whether he/she had an asbestos-related claim.**

Was the doctor referred to you by counsel?      ☐    Yes    ☐    No

   **Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges. Claimant objects to this question since "referred to you" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.**

Are you aware of any relationship between the doctor and your legal counsel?  ☐  Yes  ☐  No

   **Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges. Claimant objects to this question since "relationship" is vague and ambiguous; therefore, the question cannot be answered with either a "yes" or a "no." The doctor was retained by Claimant through Claimant's counsel to provide expert medical opinions in Claimant's Asbestos Lawsuit as needed to establish the elements of Claimant's claim under state law.**

   *If yes, please explain:*

---

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

8.      **Subsection 7 - Medical Treatment From Doctor for Condition Alleged**

Claimant objects to this question on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, that is non-discoverable, and that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is harassing. Additionally, Claimant objects to Part II, Subsection 7 of the Discovery Questionnaire to the extent that it asks if Claimant "retained counsel in order to receive any of the services performed by the doctor," on the ground that it is violative of the attorney-client communication and/or attorney work product privileges, is misleading and cannot be fairly or completely answered with a "yes" or "no." Claimant retained counsel in order to determine whether he/she had an asbestos-related claim.



WR GRACE PIQ 57502-0054

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached thereto.

## PART III:  DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

Claimant objects to Part III in its entirety on the ground that it is onerous, unduly burdensome and harassing in that it would require a great amount of time, labor and expense to create a chart of exposure to Debtor's products in the format requested by Debtor.  Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor.  Subject to and without waiving the foregoing objections, the information responsive to this request may be derived from the documents attached to Claimant's Questionnaire, including, where available, Claimant's Work History Sheet ("WHS"), Claimant's Answers to Interrogatories filed in connection with Claimant's Asbestos Lawsuit  (referred to in the Questionnaire response as "interrogatory responses") and Claimant's or Claimant's coworker's deposition.  Further, Claimant has been barred by the Bankruptcy Code Section 362 stay from pursuing discovery against Debtors, so Claimant is unable to properly ascertain the information necessary to fully answer this section of the Questionnaire.

## PART IV:  INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

1.  Claimant objects to Part IV, question 1 to the extent that it is vague and ambiguous with regard to the use of the terms "contact/proximity" and "injured person".  Claimant further objects to this question on the ground that it implicitly asserts unproven conclusions as established facts.  Specifically, Claimant may have been injured by exposure to Grace products as a result of contact or proximity to another person, but not necessarily an "injured" person.  To the best of Claimant's ability, Claimant understands the question to ask whether Claimant's injury is caused solely by contact/proximity with another person.  Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

2.  Claimant objects to Part IV, question 2 to the extent that it is vague and ambiguous with regard to the use of the undefined term  "Other Injured Person".  Specifically, there may not be an "Other Injured Person" responsible for Claimant's injuries.  Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire.  Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding.  Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

3.  Claimant objects to Part IV, question 3 to the extent that it is vague and ambiguous with regard to the use of the undefined term  "Other Injured Person".  Specifically, there may



WR GRACE PIQ 57502-0065

not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

4.  Claimant objects to Part IV, question 4 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

5.  Claimant objects to Part IV, question 5 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Claimant also objects to this question on the ground that Claimant may not know the specific day, month, and year of another person's exposure and therefore cannot answer the question. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

6.  Claimant objects to Part IV, question 6 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

7.  Claimant objects to Part IV, question 7 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further

objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

8.  Claimant objects to Part IV, question 8 to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Claimant further objects to the use of the term "Nature" in that it is vague and ambiguous. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

9.  Claimant objects to Part IV, question 9 to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Claimant further objects to the use of the term "Nature" in that it is vague and ambiguous. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

10. Claimant objects to Part IV, question 10 to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Additionally, Claimant objects to this question on the ground that Claimant may not recall the exact day, month, and year his or her exposure began or ended, and, in that regard, this question is unduly burdensome. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

## PART V: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

Claimant objects to Part V as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein. Claimant objects to this interrogatory on the ground that it is unduly burdensome, onerous and harrassing in that it would require a great amount of time, labor and expense to create a chart of exposure in the format requested by Debtor and then to create a separate chart for each party against which Claimant has filed an asbestos lawsuit or claim. Claimant further objects to Part V to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Subject to and without waiving the foregoing objections, the information responsive to this request may be derived from the documents attached to Claimant's Questionnaire, including, where available, Claimant's Work History Sheet, Claimant's Answers to Interrogatories filed in connection with Claimant's Asbestos Lawsuit ("interrogatory responses") and Claimant's or Claimant's coworker's deposition.



WR GRACE PIQ 57502-0057

## PART VI: EMPLOYMENT HISTORY

Claimant objects to Part VI on the ground that it is unduly burdensome and harassing and it would require a great amount of time, labor and expense to complete this section of the Questionnaire in the format requested by Debtors. Claimant further objects to this question because it requires Claimant to compile or summarize information from Claimant's Social Security records that is obtainable with equal or greater facility by the Debtor. Claimant further objects to providing information, including but not limited to, the occupation and industry codes for employers or jobsites where Claimant has not alleged any asbestos exposure as it exceeds the scope of permissible discovery in that it is not relevant to the subject matter of the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein, and is harassing to Claimant.

Subject to and without waiving the foregoing objections, the information responsive to this request may be derived from the documents attached to Claimant's Questionnaire, including, where available, the Answers to Interrogatories filed in connection with Claimant's Asbestos Lawsuit, Claimant's Work History Sheet, and Claimant's or Claimant's coworker's deposition, if available.

## PART VII: LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA

### Subsection a. - Litigation

1. Claimant objects to Part VII, Subsection a, question 1 as it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits; and further, it is not limited to the lawsuit in which Debtor was sued. Claimant responds to this entire Subsection a (questions 1 through 7) as if the question were so limited. Claimant further objects to this subpart to the extent that it requires Claimant to summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Responding to Part VII, Subsection a in the format in Debtor's Questionnaire is harassing and unduly burdensome. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto. Claimant's counsel does not represent Claimant in a lawsuit regarding silica.

2. Claimant objects to Part VII, Subsection a, question 2, to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Claimant further objects to this subpart as it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

3. Claimant objects to Part VII, Subsection a, question 3 on the ground that it is harrassing in that Grace knows equally as well as Claimant whether or not it was named as a defendant in Claimant's lawsuit, if any. Claimant objects to this subpart as it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits. Further, Claimant objects to this subpart on the ground that it


WR GRACE PIQ 57502-0059

exceeds the permissible scope of discovery in that it seeks information that is not relevant to the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

4.    Claimant objects to Part VII, Subsection a, question 4 on the ground that it seeks information that is neither relevant, nor necessary to the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein. Whether a particular defendant has been dismissed has no bearing on Debtor's share of the liability. Additionally, Claimant objects on the ground that it is unduly burdensome to provide the basis for dismissal for each of the dismissed defendants, if any. Claimant further objects to this subpart as it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

5.    Claimant objects to Part VII, Subsection a, question 5 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant, nor necessary to the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein. The existence and amount of any verdict or judgment against any defendant other than Debtor has no bearing on Debtor's share of the liability. Claimant objects to this subpart as it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

6.    Claimant objects to Part VII, Subsection a, question 6 and each of its subparts regarding settlements reached in the lawsuit as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein and requests privileged or confidential information. Specifically, the terms of the settlement agreements, if any, including the settlement amounts, if any, are irrelevant to an <u>aggregate</u> estimate of Debtor's liability. Claimant further objects to this subpart as it is overly broad to the extent that it seeks information beyond *asbestos-related personal injury* lawsuits. Settlements with other defendants are irrelevant to Debtor's share of the liability, and Debtor would get a set-off or credit for such settlements only for the cases that were tried all the way to judgment, which clearly will not happen in the context of the present proceeding. Further, for a majority of defendants, any settlement agreements are subject to a confidentiality agreement.

Claimant specifically objects to providing the "disease or condition alleged" and the "the disease or condition settled" (Part VII.a.6(c) and (d)) on the ground that it is ambiguous and harassing. Claimant filed a lawsuit alleging Claimant suffered injuries proximately caused by Claimant's exposure to asbestos-containing products designed, manufactured and sold by the Defendants named in the lawsuit, and any settlements were related to those allegations. Subject to and



WR GRACE PIQ 57602-0059

without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

7. Claimant objects to Part VII, Subsection a, question 7 on the ground that it is overly broad and unduly burdensome. Further, Claimant's deposition testimony is duplicative of information already provided herein. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

## Subsection b - Claims

1. Claimant objects to Part VII, Subsection b, question 1 as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein, and requests privileged or confidential information. Claimant further objects that responding to Part VII, Subsection b in the format in Debtors' Questionnaire is harassing and unduly burdensome. Additionally, Claimant objects on the ground that this question is overly broad in that it is not limited to *asbestos-related personal injury* claims. Claimant responds to this entire subsection b (questions 1 through 7) as if the questions were so limited. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

2. Claimant objects to Part VII, Subsection b, questions 2, 3 and 4 on the ground that it seeks information that is neither relevant, nor necessary to the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein. The date and entity against whom a claim was submitted has no bearing on Debtor's share of the liability. Additionally, Claimant objects on the ground that this question is overly broad in that it is not limited to *asbestos- related personal injury* claims. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

3. Claimant objects to Part VII, Subsection b, questions 5 and 6 regarding settlements with an asbestos trust as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein, and requests privileged or confidential information. The settlement amounts are not relevant to an <u>aggregate</u> estimate of Debtor's liability or to Debtor's share of the liability. Additionally, Claimant objects on the ground that this question is overly broad in that it is not limited to *asbestos- related personal injury* claims. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

4. Claimant objects to Part VII, Subsection b, question 7 on the ground that it seeks information that is neither relevant, nor necessary to the estimation proceeding, nor reasonably calculated to lead to admissible evidence therein. Whether a particular defendant has been dismissed has no bearing on Debtor's several share



WR GRACE  PIQ  57602-0060

of the liability.  Additionally, Claimant objects on the ground that it is unduly burdensome to provide the basis for dismissal for each of the dismissed defendants, if any, and it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits.  Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

## PART VIII:  CLAIMS BY DEPENDENTS OR RELATED PERSONS

Claimant objects to Part VIII on the ground that information regarding dependents or related persons who sued the Debtors before April 2, 2001 is equally available to Debtors.  Subject to and without waiving the foregoing, Claimant has provided information regarding Claimant's spouse where available.  Please see attached interrogatory responses and Debtors' own records for information regarding dependents.

## QUESTIONNAIRE RESPONSES

Claimant hereby incorporates by reference all of the foregoing general and specific objections into Claimant's Questionnaire responses and has provided the following responses subject to those objections.  Because the burden of deriving or ascertaining the answer is substantially the same for Debtor as for Claimant, Claimant has specified in Claimant's Questionnaire response the document(s) from which the answer may be derived, including but not limited to Claimant's medical records, Claimant's Work History Sheet (referred to in the  Questionnaire response as "WHS"), Claimant's Answers to Interrogatories filed in connection with Claimant's Asbestos Lawsuit (referred to in the Questionnaire response as "interrogatory responses"), and Claimant's or Claimant's coworker's deposition.

Respectfully submitted,

SIMMONSCOOPER LLC

Robert W. Phillips
707 Berkshire Boulevard
East Alton, IL 62024
Phone (618) 259-2222
Fax (618) 259-2251
rphillips@simmonscooper.com

Counsel for Claimant


WR GRACE PIQ 57502-0081

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al | ) | Case No. 01-1139(JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

### SPECIAL OBJECTION OF SIMMONSCOOPER LLC TO THE
### W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

SimmonsCooper LLC ("SimmonsCooper"), counsel to certain personal injury

claimants (each, a "Claimant") in receipt of the "W.R. Grace Asbestos Personal Injury

Questionnaire" ("Questionnaire"), submits the following special objection to Part X of

the Questionnaire:

1.      Part X of the Questionnaire contains two signature components. The first

signature block ("Injured Person Signature Requirement"), labeled "To Be Completed By

The Injured Person," states:

> I swear under penalty of perjury that, to the best of my knowledge, all of
> the foregoing information contained in this Questionnaire is true, accurate
> and complete.

Questionnaire, Part X. The second signature block ("Legal Representative Signature

Requirement"), labeled "To Be Completed By The Legal Representative Of The Injured

Person," states:

> I swear that, to the best of my knowledge, all of the information contained
> in this Questionnaire is true, accurate and complete.

Questionnaire, Part X.

2.      First, SimmonsCooper objects to this Part X of the Questionnaire in that it

is vague and unclear whether the Legal Representative Signature Requirement refers to



WR GRACE PIQ  57502-0082

the personal, special, or legal representative of the Claimant as is appointed under

applicable state laws when the Claimant is deceased or incapacitated, or instead refers to

the counsel for the Claimant in the underlying personal injury lawsuit filed against

Debtors.

      3.    Claim forms for asbestos personal injury trusts, upon which model the

Questionnaire is allegedly based, always differentiate among "claimants,"

"representatives," and "attorney/counsel," reserving "representative" for those persons

appointed by legal process to represent the claimant when deceased or incapacitated.

*See, e.g.,* Exhibit A (Celotex Asbestos Settlement Trust signature page); Exhibit B

(Eagle-Picher Industries Personal Injury Settlement Trust signature page); and Exhibit C

(DII Industries, LLC Asbestos Personal Injury Trust signature pages).

      4.    Because the Questionnaire specifies that the Injured Person Signature

Requirement must be executed by the "injured person," it is more logical to assume that

the Legal Representative Signature Requirement must be executed by the official,

personal, special or otherwise-appointed representative of the Claimant.  Any confusion

could be, and should have been, remedied by the use of the term "counsel" or "attorney"

if that was the intent.

      5.    Second, if instead the intent of the Legal Representative Signature

Requirement is that *counsel* to the Claimant must sign the Questionnaire, then

SimmonsCooper objects to Part X of the Questionnaire on the grounds that it is

unauthorized and unnecessary, and also that such requirement imposes a duty on counsel

to the Claimants far beyond what is allowed under the Federal Rules of Civil Procedure

and the Federal Rules of Bankruptcy Procedure.

WR GRACE PIQ 57502-0083

6.      Rule 33(b)(2) of the Federal Rules of Civil Procedure expressly states that the "answers" to interrogatories are "to be signed by the person making them" and that "objections" to interrogatories are to be "signed by the attorney making them." There is no requirement in this Rule that attorneys must sign factual responses to interrogatories.

7.      Rule 26(g)(2) of the Federal Rules of Civil Procedure, to the extent even applicable to the instant situation, states that an attorney's signature to a "discovery request, response, or objection"

> constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the request, response, or objection is:
>
> (A) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;
>
> (B) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and
>
> (C) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.

F.R.Civ. P. 26(g)(2). This certification language parallels the language in Rule 11 of the Federal Rules of Civil Procedure.

8.      The language of the Legal Representative Signature Requirement goes far beyond what is authorized under either Rule 33 or 26 (or Rule 11) of the Federal Rules of Civil Procedure, in that it requires the counsel for the Claimant to swear that all of the information provided is true, accurate, and complete, a burden not imposed anywhere in the Federal Rules of Civil Procedure.



WR GRACE PIQ 57502-0054

9.    Debtors have not made any showing, particularized or otherwise, as to why such an extreme and unwarranted departure from the Federal Rules of Civil Procedure and general practice is required in the instant situation.

10.    For these above reasons, even should the Court decide that counsel to the Claimants is required to sign the Questionnaire, the language used and certification made under such Legal Representative Signature Requirement should be limited to that specified in Rules 11 and 26(g)(2) of the Federal Rules of Civil Procedure and not the language demanded by the Questionnaire.

Respectfully submitted,

SIMMONSCOOPER LLC

Robert W. Phillips
707 Berkshire Boulevard
East Alton, IL 62024
Phone (618) 259-2222
Fax (618) 259-2251
rphillips@simmonscooper.com

Counsel for Claimants





**SimmonsCooper LLC**

Attorneys at Law

*From the Desk of*
*Robert W. Phillips*

July 10, 2006

*Via Overnight Delivery*
*and Facsimile*

Barbara M. Harding, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Fax (202) 879-5200

Re:    *In re W.R. Grace & Co., et al.,* Bankr. Case No. 01-1139 (JKF)
       Questionnaires

Dear Ms. Harding:

This firm received 382 sets of the W.R. Grace Asbestos Personal Injury Questionnaire ("Questionnaires") for the above-referenced bankruptcy case. Our clients' responses and objections to same have been sent to Rust Consulting, Inc. ("Rust Consulting"), as per the Questionnaires' instructions, but I am separately writing you to summarize the content of this firm's mailing to Rust Consulting.

The Questionnaires this firm received fall into three groups. The first group, 118 in number (a list of which is attached hereto as Exhibit A), concern claimants whose claims against W. R. Grace were resolved long before (in some cases 5 or more years before) the bankruptcy cases were filed on April 2, 2001 ("Petition Date"), whether by settlement or dismissal, or whom this firm long ago declined to represent. None of these claimants are current clients of this firm nor have been for some time. Accordingly, we have filed a special objection and have not responded to these Questionnaires nor intend to do so. There is no basis, in the bankruptcy court's order authorizing the Questionnaires or otherwise, to propound Questionnaires upon persons who did not have lawsuits pending against W.R. Grace on the Petition Date. Obviously, none of these claimants will be asserting a claim against W.R. Grace through the bankruptcy case or otherwise.

The second group of Questionnaires, 86 in number (a list of which is attached hereto as Exhibit B), concern claimants whose claims against W.R. Grace were settled, although not paid, prior to the Petition Date. Based on earlier statements and findings by the bankruptcy court, there is no basis to propound Questionnaires upon these persons. However, subject to and without waiving this objection, we have nonetheless prepared responses and

| Main Office | www.simmonscooper.com | Chicago Office | | Texas Office | |
|---|---|---|---|---|---|
| 707 Berkshire Blvd. | 800.479.9533 | 209 South LaSalle St. | 312.759.7500 | 103 North Sycamore | 866.574.2322 |
| P.O. Box 521 | 618.259.2222 | Suite 805 | 312.759.7516 Fax | P.O. Box 1640 | 940.574.2322 |
| East Alton, IL 62024 | 618.259.2251 Fax | Chicago, IL 60604 | | Archer City, TX 76351 | 940.574.2551 Fax |


WR GRACE PIQ 57502-0066

objections to this group of Questionnaires and submitted same to Rust Consulting. We have been unable to obtain signatures for a small number of these claimants and have therefore submitted unsigned responses for same, but we are continuing to try and locate these clients; we will forward executed copies of the Questionnaire as soon as we can do so.

The third and last group of Questionnaires, 178 in number (a list of which is attached hereto as Exhibit C), concern claimants who filed claims in the tort system against W.R. Grace prior to the Petition Date, but whose claims are still unliquidated. We have therefore prepared responses and objections to this group of Questionnaires, and submitted same to Rust Consulting. We have been unable to obtain signatures for a small number of these claimants and have therefore submitted unsigned responses for same, but we are continuing to try and locate these clients; we will forward executed copies of the Questionnaire as soon as we can do so.

Please be advised that we have included, where available, copies of relevant medical records, Answers to Interrogatories, client work history sheets, and deposition transcripts with the responses to the Questionnaires; we are still trying to locate certain of these documents in our records and will forward same to you when located and copied (by way of supplemental response to the Questionnaires). Pursuant to applicable rules of bankruptcy and civil procedure, we expect to be compensated for the costs of this document production, but will make separate application to you for these sums, and our production of same (in an effort to be cooperative) should not be interpreted as a waiver of this right.

Do not hesitate to contact me should you have any questions or desire to discuss this matter further. SimmonsCooper LLC reserves the right to file any other objections to the Questionnaires should such become necessary, and does not waive any other arguments or rights, including without limitation the right to oppose any attempt by the Debtors to disallow the claims of any of our clients for any reason.

Sincerely,

Robert W. Phillips

Encls.

cc:    Elihu Inselbuch, Esq. (w/ encls.)
       Peter Van N. Lockwood, Esq. (w/ encls.)
       Nathan D. Finch, Esq. (w/ encls.)
       Rust Consulting, Inc. (w/ encls.)



ERIN GOSKIE
618-259-2222 162
SIMMONSCOOPER LLC
707 BERKSHIRE BLVD.
EAST ALTON IL 62024

30 LBS    1 OF 1

SHIP TO:
    CLAIMS PROCESSING AGENT
    RUST CONSULTING, INC.
    201 LYNDALE AVE S
    FARIBAULT  MN 55021-5799



MN 550 2-01



UPS 2ND DAY AIR    2
TRACKING #: 1Z F38 V41 02 9577 0996



BILLING: P/P

Client Name: Bankruptcy
Dept/Employee Name: Bankruptcy/W.R. Grace    CS 8.5.37.0    WNTIE60 54.9A 04/2006

