**Exhibit K**

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire



WR GRACE PIQ 60268-0001



10315607111486

RE:
Kazan, McClain, Edises, Simon & Abrams
171 Twelfth Street, Third Floor
Oakland CA 94607

REC'D JUL 14 2006

REDACTED

000377111486

WR GRACE PIQ 60269-0002

[THIS PAGE INTENTIONALLY LEFT BLANK.]



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

YOU HAVE RECEIVED THIS QUESTIONNAIRE BECAUSE GRACE BELIEVES THAT YOU HAD SUED ONE OR MORE OF THE DEBTORS LISTED IN APPENDIX A ATTACHED TO THIS QUESTIONNAIRE BEFORE GRACE FILED FOR BANKRUPTCY ON APRIL 2, 2001 FOR AN ASBESTOS-RELATED PERSONAL INJURY OR WRONGFUL DEATH CLAIM, AND THAT CLAIM WAS NOT FULLY RESOLVED.

IF YOU HAVE SUCH A CLAIM, YOU MUST COMPLETE AND SUBMIT THIS QUESTIONNAIRE BY JANUARY 12, 2006 TO RUST CONSULTING, INC., THE CLAIMS PROCESSING AGENT, AT ONE OF THE FOLLOWING ADDRESSES:

| IF SENT BY U.S. MAIL | IF SENT BY FEDERAL EXPRESS, UNITED PARCEL SERVICE, OR A SIMILAR HAND DELIVERY SERVICE |
|---|---|
| RUST CONSULTING, INC. | RUST CONSULTING, INC. |
| CLAIMS PROCESSING AGENT | CLAIMS PROCESSING AGENT |
| RE: W.R. GRACE & CO. BANKRUPTCY | RE: W.R. GRACE & CO. BANKRUPTCY |
| P.O. BOX 1620 | 201 S. LYNDALE AVE. |
| FARIBAULT, MN 55021 | FARIBAULT, MN 55021 |

A QUESTIONNAIRE (AND ANY AMENDMENTS OR ADDITIONAL DOCUMENTS IN SUPPORT OF THE QUESTIONNAIRE) WILL NOT BE CONSIDERED UNLESS RECEIVED BY RUST CONSULTING, INC. BY JANUARY 12, 2006.

THIS QUESTIONNAIRE IS AN OFFICIAL DOCUMENT APPROVED BY THE COURT IN CONNECTION WITH ESTIMATING GRACE'S ASBESTOS-RELATED PERSONAL INJURY AND WRONGFUL DEATH CLAIMS AS A WHOLE. THE QUESTIONNAIRE IS BEING USED BY W. R. GRACE AS A MEANS TO SEEK INFORMATION ABOUT YOUR ASBESTOS CLAIM. BY TIMELY RETURNING THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE, GRACE, THE OFFICIAL COMMITTEES, AND THE FUTURE CLAIMANTS REPRESENTATIVE WILL SEEK TO PRIORITIZE THE PROCESSING OF YOUR CLAIM UNDER ANY TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION.

THE COURT HAS ORDERED THAT, AS PART OF THE DISCOVERY PROCESS, ALL HOLDERS OF PRE-PETITION ASBESTOS PERSONAL INJURY CLAIMS MUST COMPLETE AND RETURN THIS QUESTIONNAIRE. THUS, FAILURE TO TIMELY RETURN THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE MAY RESULT IN SANCTIONS AND/OR OTHER RELIEF AVAILABLE UNDER APPLICABLE FEDERAL RULES.

BECAUSE YOUR CLAIM WILL BE EVALUATED IN ACCORDANCE WITH THE TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION, COMPLETION OF THIS QUESTIONNAIRE DOES NOT MEAN THAT YOUR CLAIM WILL EITHER BE ALLOWED OR PAID. TO THE EXTENT YOU ATTACH TO THIS QUESTIONNAIRE DOCUMENTS ALSO NEEDED BY THE TRUST TO PROCESS YOUR CLAIM, SUCH DOCUMENTS WILL BE PROVIDED TO THE TRUST AND YOU WILL NOT NEED TO RESUBMIT THEM.

## INSTRUCTIONS

**A. GENERAL**

1. This Questionnaire refers to any lawsuit that you filed before April 2, 2001 for an "asbestos-related wrongful death claim." This term is intended to cover any lawsuit alleging any claim for person that relates to: (a) exposure to any products or materials containing asbestos that were manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present affiliates, or any of the predecessors of any of the Debtors or any of their respective past or present affiliates), or (b) exposure to vermiculite mined, milled or processed by the Debtors (or any of their respective past or present affiliates, any of the predecessors of any of the Debtors or any of their predecessors' respective past or present affiliates). It includes claims in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law or equity, or admiralty for, relating to, or arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal injuries or other damages caused, or allegedly caused, directly or indirectly, and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors. It includes all such claims, debts, obligations or liabilities for compensatory damages such as loss of consortium, personal or bodily injury (whether physical, emotional or otherwise), wrongful death, survivorship, proximate, consequential, general, special, and punitive damages.

2. Your Questionnaire will be deemed filed only when it has been received by Rust Consulting Inc., the Claims Processing Agent, via U.S. Mail, Federal Express, United Parcel Service or a similar hand delivery service. A Questionnaire that is submitted by facsimile, telecopy or other electronic transmission will **not** be accepted and will **not** be deemed filed.

   Do **not** send any Questionnaire to the Debtors, counsel for the Debtors, the Future Claimants Representative, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Asbestos Property Damage Claimants, the Official Committee of Equity Security Holders, or such Committees' counsel. Questionnaires that are filed with or sent to anyone other than Rust Consulting, Inc. will be deemed not to have been submitted, and such Questionnaires will not be considered.

3. Your completed Questionnaire must (i) be written in English, and (ii) attach relevant supporting materials as instructed further below.

4. All holders of claims described on page i (and as described in further detail in Instruction A (1) above) are required to file this Questionnaire by Jan. 12, 2006. Your Questionnaire will be used in connection with the estimation hearing to be conducted by the Court pursuant to the Estimation Procedures Order (a copy of which is attached as Appendix B).

5. Any subsequent amendment to the Questionnaire will not be considered for any purpose unless received by Jan. 12, 2006.

**B. PART I -- Identity of Injured Person and Legal Counsel**
Respond to all applicable questions. If you are represented by a lawyer, then in Part I (b), please provide your lawyer's name and the name, telephone number and address of his/her firm. If you are represented by a lawyer, he/she must assist in the completion of this Questionnaire. Also, if you would prefer that the Debtors send any additional materials only to your lawyer, instead of sending such materials to you, then check the box indicating this in Part I (b).

All references to "you" or the like in Parts I through X shall mean the injured person. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete this Questionnaire.

**C. PART II -- Asbestos-Related Condition(s)**
Please indicate all asbestos-related medical conditions for which you have been diagnosed. To complete questions related to injuries, medical diagnoses, and/or conditions, please use the following categories of customarily diagnosed conditions:

- Mesothelioma
- Asbestos-Related Lung Cancer
- Other Cancer (colon, laryngeal, esophageal, pharyngeal, or stomach)
- Clinically Severe Asbestosis
- Asbestosis
- Other Asbestos Disease

If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

**Supporting Documents for Diagnosis:** This Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis.

**X-rays and B-reads:** Please attach all x-ray readings and reports. You may, but are not required to, attach chest x-rays. The court, however, has ruled that Grace may seek access to chest x-rays upon request.

**Pulmonary Function Tests:** Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based.



WR GRACE PIQ 60269-0005

## D. PART III – Direct Exposure to Grace Asbestos-Containing Products

In Part III, please provide the requested information for the job and site at which you were exposed to Grace asbestos-containing products. Indicate the dates of exposure to each Grace asbestos-containing product. If your exposure was a result of your employment, use the list of occupation and industry codes below to indicate your occupation and the industry in which you worked at each site. If you allege exposure to Grace asbestos-containing products at multiple sites, the Court has ordered that you must complete a separate Part III for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

Attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease.

### Occupation Codes

| | |
|---|---|
| 01. Air conditioning and heating installer/maintenance | 31. Iron worker |
| 02. Asbestos miner | 32. Joiner |
| 03. Asbestos plant worker/asbestos manufacturing worker | 33. Laborer |
| 04. Asbestos removal/abatement | 34. Longshoreman |
| 05. Asbestos sprayer/spray gun mechanic | 35. Machinist/machine operator |
| 06. Assembly line/factory/plant worker | 36. Millwright/mill worker |
| 07. Auto mechanic/bodywork/brake repairman | 37. Mixer/bagger |
| 08. Boilermaker | 38. Non-asbestos miner |
| 09. Boiler repairman | 39. Non-occupational/residential |
| 10. Boiler worker/cleaner/inspector/engineer/installer | 40. Painter |
| 11. Building maintenance/building superintendent | 41. Pipefitter |
| 12. Brake manufacturer/installer | 42. Plasterer |
| 13. Brick mason/layer/hod carrier | 43. Plumber - install/repair |
| 14. Burner operator | 44. Power plant operator |
| 15. Carpenter/woodworker/cabinetmaker | 45. Professional (e.g., accountant, architect, physician) |
| 16. Chipper | 46. Railroad worker/carman/brakeman/machinist/conductor |
| 17. Clerical/office worker | 47. Refinery worker |
| 18. Construction - general | 48. Remover/installer of gaskets |
| 19. Custodian/janitor in office/residential building | 49. Rigger/stevedore/seaman |
| 20. Custodian/janitor in plant/manufacturing facility | 50. Rubber/tire worker |
| 21. Electrician/inspector/worker | 51. Sandblaster |
| 22. Engineer | 52. Sheet metal worker/sheet metal mechanic |
| 23. Firefighter | 53. Shipfitter/shipwright/ship builder |
| 24. Fireman | 54. Shipyard worker (incl. repair, maintenance) |
| 25. Flooring installer/tile installer/tile mechanic | 55. Steamfitter |
| 26. Foundry worker | 56. Steelworker |
| 27. Furnace worker/repairman/installer | 57. Warehouse worker |
| 28. Glass worker | 58. Welder/blacksmith |
| 29. Heavy equipment operator (includes truck, forklift, & crane) | 59. Other |
| 30. Insulator | |

### Industry Codes

| | |
|---|---|
| 001. Asbestos abatement/removal | 109. Petrochemical |
| 002. Aerospace/aviation | 110. Railroad |
| 100. Asbestos mining | 111. Shipyard-construction/repair |
| 101. Automotive | 112. Textile |
| 102. Chemical | 113. Tire/rubber |
| 103. Construction trades | 114. U.S. Navy |
| 104. Iron/steel | 115. Utilities |
| 105. Longshore | 116. Grace asbestos manufacture or milling |
| 106. Maritime | 117. Non-Grace asbestos manufacture or milling |
| 107. Military (other than U.S. Navy) | 118. Other |
| 108. Non-asbestos products manufacturing | |

**E.  PART IV -- Indirect Exposure to Grace Asbestos-Containing Products**

In Part IV, please provide the information requested for any injury alleged to have been cau _____ asbestos-containing products through contact/proximity with another injured person.  If you ____ contact/proximity with multiple injured persons, please complete a separate Part IV for each _____ _____ convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.

**F.  PART V -- Exposure to Non-Grace Asbestos-Containing Products**

In Part V, please provide the requested information for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products.  If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate Part V for each party.  If exposure was in connection with your employment, use the list of occupation and industry codes in Part III to indicate your occupation and the industry in which you worked.  For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

**G.  PART VI -- Employment History**

In Part VI, please provide the information requested for each industrial job you have held, other than jobs already listed in Parts III or V.  Use the list of occupation and industry codes in the instructions to Part III to indicate your occupation and the industry in which you worked for each job.  Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**H.  PART VII -- Litigation and Claims Regarding Asbestos and/or Silica**

In Part VII, please describe any lawsuits and/or claims that were filed by you or on your behalf regarding asbestos or silica.

**I.  PART VIII -- Claims by Dependents or Related Persons**

Part VIII is to be completed only by dependents or related persons (such as spouse or child) of an injured person who sued the Debtors before April 2, 2001 for an asbestos-related personal injury or wrongful death claim against Grace not involving physical injury to him-/herself on account of his/her own exposure.  One example of such a claim would be a claim for loss of consortium.  If you are asserting such a claim, complete the entire Questionnaire, providing all information and documentation regarding the injured person.

**J.  PART IX -- Supporting Documentation**

In Part IX, please mark the boxes next to each type of document that you are submitting with this Questionnaire.  As indicated in the instructions to Parts II and III, this Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that (a) support or conflict with your diagnosis and/or (b) establish exposure to Grace asbestos-containing products as having a substantial causal role in the development of the medical diagnoses, and/or conditions claimed.  Original documents provided to Grace will be returned within a reasonable time after its professionals and experts have reviewed the documents.

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such cost.

**K.  PART X -- Attestation that Information is True, Accurate and Complete**

By signing Part X, you, the injured person, are attesting and swearing, under penalty of perjury, that, to the best of your knowledge, all of the information in this Questionnaire is true, accurate and complete.  If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete and sign Part X on behalf of the injured person.

The legal representative of the injured person must complete and sign Part X where indicated.

## PART I: IDENTITY OF INJURED PERSON AND LEGAL COUNSEL

WR GRACE PIQ 60269-0007

**a.  GENERAL INFORMATION**

REDACTED

1.  **Name of Claimant:** _____    **2.  Gender:** ☒ Male ☐ Female
First                      MI                      Last

3.  **Race (for purposes of evaluating Pulmonary Function Test results):** .......................... ☒ White/Caucasian
☐ African American
☐ Other

4.  **Last Four Digits of Social Security Number:** _____    **5.  Birth Date:** _____

6.  **Mailing Address:** SEE PART I, b
Address            City            State/Province        Zip/Postal Code

7.  **Daytime Telephone Number:** SEE PART I, b         ( ___ ) ___ - ___

**b.  LAWYER'S NAME AND FIRM**

1.  **Name of Lawyer:** STEVEN KAZAN

2.  **Name of Law Firm With Which Lawyer is Affiliated:** KAZAN, McCLAIN, ABRAMS, ET. AL.

3.  **Mailing Address of Firm:** 171 TWELFH STREET, OAKLAND, CA 94607
Address            City            State/Province        Zip/Postal Code

4.  **Law Firm's Telephone Number or Lawyer's Direct Line:** .......................... ( 510 ) 465-7728

☒ Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in lieu of sending such materials to you.

**c.  CAUSE OF DEATH (IF APPLICABLE)**

1.  **Is the injured person living or deceased?** ...................................................... ☐ Living  ☒ Deceased
If deceased, date of death: ...................................................... 03/28/2001

2.  If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete the following:
**Primary Cause of Death (as stated in the Death Certificate):** CONGESTIVE HEART FAILURE
**Contributing Cause of Death (as stated in the Death Certificate):** MESOTHELIOMA

## PART II: ASBESTOS-RELATED CONDITION(S)

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1.  **Please check the box next to the condition being alleged:**

☐ Asbestos-Related Lung Cancer              ☒ Mesothelioma
☐ Asbestosis                                ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)
☐ Other Asbestos Disease                    ☐ Clinically Severe Asbestosis

a.  **Mesothelioma:** If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following (check all that apply):

☒ diagnosis from a pathologist certified by the American Board of Pathology

☐ diagnosis from a second pathologist certified by the American Board of Pathology

☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial causal role in the development of the condition

☐ other (please specify): _____

1

**PART II:  ASBESTOS-RELATED CONDITIONS (Continued)**

WR GRACE PIQ 60269-0008

b. **Asbestos-Related Lung Cancer:**  If alleging Asbestos-Related Lung Cancer, were your lung cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐ other (please specify):_____

c. **Other Cancer:**

(i) If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐ colon        ☐ pharyngeal        ☐ esophageal        ☐ laryngeal        ☐ stomach cancer

☐ other, please specify:  _____

(ii) Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☐ other (please specify): _____

2

---

**PART II:    ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE PIQ  60269-0008

**d.    Clinically Severe Asbestosis:** If alleging Clinically Severe Asbestosis, was your diagnosis b (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating total lung capacity less than 65% predicted

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

**e.    Asbestosis:** If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a second B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify): _____

**PART II: ASBESTOS-RELATED CONDITION(S, Continued)**



WR GRACE PIQ 60269-0010

f.   **Other Asbestos Disease:**  If alleging any asbestos-related injuries, medical diagnoses, and/or conditions other than those above, was your diagnosis based on the following (check all that apply):

☐   diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐   diagnosis determined by pathology

☐   a chest x-ray reading   conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐   a chest x-ray reading   conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a second B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐   a chest x-ray reading  other than those described above

☐   a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEVI/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐   a pulmonary function test other than that discussed above

☐   a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☐   a CT Scan or similar testing

☐   a diagnosis other than those above

☐   other (please specify):_____

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

## PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

WR GRACE PIQ 80269-0011

**2.  Information Regarding Diagnosis**

Date of Diagnosis: _04/10/2000_

Diagnosing Doctor's Name: _BEN HARRIMAN_

Diagnosing Doctor's Specialty: _PATHOLOGY_

Diagnosing Doctor's Mailing Address: _P.O. BOX 210_
<br>Address

_CLEARWATER_          _FL_          _33757_
<br>City          State/Province          Zip/Postal Code

Diagnosing Doctor's Daytime Telephone Number: _UNKNOWN_ (___) ___-____

With respect to your relationship to the diagnosing doctor, check all applicable boxes:

Was the diagnosing doctor your personal physician?.................................................... ☐ Yes ☒ No

Was the diagnosing doctor paid for the diagnostic services that he/she performed?................ ☒ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _SEE CLAIMANT'S RESPONSES & OBJECTIONS (ATTACHED)_

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor?........... ☐ Yes ☒ No

Was the diagnosing doctor referred to you by counsel?........................................... ☐ Yes ☒ No

Are you aware of any relationship between the diagnosing doctor and your legal counsel?.................... ☐ Yes ☒ No

*If yes, please explain:* _____

Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the diagnosis?.................................................................................. ☐ Yes ☒ No

Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?.................................... _UNKNOWN_ .................................... ☐ Yes ☐ No

Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to diagnosis?.................................... _UNKNOWN_ .................................... ☐ Yes ☐ No

Did the diagnosing doctor perform a physical examination?........................................... ☐ Yes ☒ No

Do you currently use tobacco products?........................................................ ☐ Yes ☒ No

Have you ever used tobacco products?......................................................... ☒ Yes ☐ No

*If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco products and the dates and frequency with which such products were used:*

☒ Cigarettes    Packs Per Day (half pack = .5) _.75_   Start Year _1941_ End Year _1963_

☐ Cigars    Cigars Per Day _____   Start Year ___ ___ ___ End Year ___ ___ ___

☐ If Other Tobacco Products, please specify (e.g., chewing tobacco): _____
<br>Amount Per Day _____   Start Year ___ ___ ___ End Year ___ ___ ___

Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")?.................... ☐ Yes ☒ No

*If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:*

**3.  Information Regarding Chest X-Ray**

Please check the box next to the applicable location where your chest x-ray was taken (check one):

☐ Mobile laboratory  ☐ Job site  ☐ Union Hall  ☐ Doctor office  ☐ Hospital  ☐ Other: _____

Address where chest x-ray taken: _____
<br>Address

_____          _____          _____
<br>City          State/Province          Zip/Postal Code

4.  **Information Regarding Chest X-Ray Reading**

Date of Reading: __ __ / __ __ / __ __ __ __            ILO score: _____

Name of Reader: _____

Reader's Daytime Telephone Number: ...................................... ( __ __ __ ) __ __ __ - __ __ __ __

Reader's Mailing Address: _____
Address

_____
City                                          State/Province                          Zip/Postal Code

With respect to your relationship to the reader, check all applicable boxes:

Was the reader paid for the services that he/she performed ....................................................... ☐ Yes  ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the reader? ................ ☐ Yes  ☐ No

Was the reader referred to you by counsel? ...................................................................................... ☐ Yes  ☐ No

Are you aware of any relationship between the reader and your legal counsel? ............................. ☐ Yes  ☐ No

*If yes, please explain:* _____

Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?

................................................................................................................................................ ☐ Yes  ☐ No

*If the reader is not a certified B-reader, please describe the reader's occupation, specialty, and the method through which the reading was made:* _____

5.  **Information Regarding Pulmonary Function Test:** ............................... Date of Test: __ __ / __ __ / __ __ __ __

List your height in feet and inches when test given: .............................................. _____ ft _____ inches

List your weight in pounds when test given: ...................................................................... _____ lbs

Total Lung Capacity (TLC): ............................................................................................ _____ % of predicted

Forced Vital Capacity (FVC): ......................................................................................... _____ % of predicted

FEV1/FVC Ratio: .......................................................................................................... _____ % of predicted

Name of Doctor Performing Test (if applicable): _____

Doctor's Specialty: _____

Name of Clinician Performing Test (if applicable): _____

Testing Doctor or Clinician's Mailing Address: _____
Address

_____
City                                          State/Province                          Zip/Postal Code

Testing Doctor or Clinician's Daytime Telephone Number: ........................ ( __ __ __ ) __ __ __ - __ __ __ __

Name of Doctor Interpreting Test: _____

Doctor's Specialty: _____

Interpreting Doctor's Mailing Address: _____
Address

_____
City                                          State/Province                          Zip/Postal Code

Interpreting Doctor's Daytime Telephone Number: ...................................... ( __ __ __ ) __ __ __ - __ __ __ __

PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)

WR GRACE PIQ 60269-0013

With respect to your relationship to the doctor or clinician who performed the pulmonary function test check all applicable boxes:

If the test was performed by a doctor, was the doctor your personal physician? ......................... ☐ Yes ☐ No

Was the testing doctor and/or clinician paid for the services that he/she performed? ................. ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician?.. ☐ Yes ☐ No

Was the testing doctor or clinician referred to you by counsel?.............................................. ☐ Yes ☐ No

Are you aware of any relationship between either the doctor or clinician and your legal counsel? ............. ☐ Yes ☐ No

*If yes, please explain:* _____

Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test? .............................................................................. ☐ Yes ☐ No

With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:

Was the doctor your personal physician? ......................................................................... ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? ................................................ ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor?........................... ☐ Yes ☐ No

Was the doctor referred to you by counsel? ..................................................................... ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? ........................ ☐ Yes ☐ No

*If yes, please explain* _____

Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed?............................. ☐ Yes ☐ No

6.  **Information Regarding Pathology Reports:**

Date of Pathology Report: ................................................................. 10/20/2000

Findings: MALIGNANT MESOTHELIOMA

Name of Doctor Issuing Report: WILLIAM R. SALYER, MD

Doctor's Specialty: PATHOLOGY

Doctor's Mailing Address: 2450   ASHBY AVE
Address

BERKELEY                    CA              94705
City                          State/Province      Zip/Postal Code

Doctor's Daytime Telephone Number: ................................. (510) 644-0951

With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:

Was the doctor your personal physician? ......................................................................... ☐ Yes ☒ No

Was the doctor paid for the services that he/she performed? ................................................ ☒ Yes ☐ No

*If yes, please indicate who paid for the services performed:* CLAIMANT & CLAIMANT'S COUNSEL

Did you retain counsel in order to receive any of the services performed by the doctor?........................... ☐ Yes ☒ No

Was the doctor referred to you by counsel? ..................................................................... ☐ Yes ☒ No

Are you aware of any relationship between the doctor and your legal counsel? ........................ ☐ Yes ☒ No

*If yes, please explain:* _____

Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?

................................................................................................................. ☒ Yes ☐ No

7

**PART II: ASBESTOS-RELATED CONDITION(S) (continued)**

WR GRACE PIQ 60269-0014

7. With respect to the condition alleged, have you received medical treatment from a doctor for
...................................................................................................................................................... ☒ Yes ☐ No

*If yes, please complete the following:*

Name of Treating Doctor: ROBERT McCREARY, MD

Treating Doctor's Specialty: ONCOLOGY

Treating Doctor's Mailing Address: 303 PINELLAS ST, STE 230
Address

CLEARWATER              FL          33756
City                                          State/Province                  Zip/Postal Code

Treating Doctor's Daytime Telephone number: ....................... (727) 442-4188

Was the doctor paid for the services that he/she performed? ............................................... ☒ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? ....................... ☐ Yes ☒ No

[REMAINDER OF PAGE INTENTIONALLY BLANK]

WR GRACE PIQ    60269-0015

## PART III: DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

   (a)  A worker who personally mixed Grace asbestos-containing products
   (b)  A worker who personally removed or cut Grace asbestos-containing products
   (c)  A worker who personally installed Grace asbestos-containing products
   (d)  A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others
   (e)  A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others
   (f)  If other, please specify.

**Site of Exposure:**

Site Name: UNIVERSITY OF FLORIDA    Location: GAINESVILLE, FL

Site Type: ☐ Residence  ☒ Business    Site Owner: STATE OF FLORIDA

Employer During Exposure: UNIV OF FLORIDA    Unions of which you were a member during your employment: UNKNOWN

| | Product(s) | Basis for Identification of Each Grace Product | Dates and Frequency of Exposure (hours/day, days/year) | Occupation Code If Code 39, specify. | Industry Code If Code 118, specify. | Was exposure due to working in or around areas where product was being installed, mixed, removed, or cut? If Yes, please indicate your regular proximity to such areas | Nature of Exposure |
|---|---|---|---|---|---|---|---|
| Job 1 Description: | ZONOLITE | GOOD FAITH BELIEF | 5/65 - 5/67 | 33 | 118 SCHOOL | YES, IRREGULAR PROXIMITY AT | D AND/OR E |
| Job 2 Description: | ZONOLITE | BASED ON INDUSTREYS PATTERNS & PRACTICES | 5/68 - 5/68 | 33 | 118 SCHOOL | VARIABLE DISTANCES AT | D AND/OR E |
| Job 3 Description: | | | | | | DIFFERENT TIMES DURING | |
| Job 4 Description: | | | | | | EMPLOYMENT AT SITE | |
| Job 5 Description: | | | | | | | |
| Job 6 Description: | | | | | | | |

9

## PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PR...

WR GRACE PIQ 60269-0018

1. Are you asserting an injury caused by exposure to Grace asbestos-containing products thr... with another injured person? .......................................................................................☐ Yes ☒ No

   *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to Grace asbestos-containing products. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.*

2. Please indicate the following information regarding the other injured person:

   Name of Other Injured Person: _____ Gender: ☐ Male ☐ Female

   Last Four Digits of Social Security Number: __ __ __ __          Birth Date: __ __ / __ __ / __ __ __ __

3. What is your Relationship to Other Injured Person: ................................☐ Spouse  ☐ Child  ☐ Other

4. Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:

   _____

5. Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products:

   From: __ __ / __ __ / __ __ __ __   To: __ __ / __ __ / __ __ __ __

6. Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:

   _____

7. Has the Other Injured Person filed a lawsuit related to his/her exposure? ...........................☐ Yes  ☐ No

   *If yes, please provide caption, case number, file date, and court name for the lawsuit:*

   Caption: _____

   Case Number: _____ File Date: __ __ / __ __ / __ __ __ __

   Court Name: _____

8. Nature of Your Own Exposure to Grace Asbestos-Containing Product:

   _____

9. Dates of Your Own Exposure to Grace Asbestos-Containing Product:

   From: __ __ / __ __ / __ __ __ __   To: __ __ / __ __ / __ __ __ __

10. Your Basis for Identification of Asbestos-Containing Product as Grace Product:

   _____

[REMAINDER OF PAGE INTENTIONALLY BLANK]

## PART V: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products
(b) A worker who personally removed or cut Non-Grace asbestos-containing products
(c) A worker who personally installed Non-Grace asbestos-containing products

(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(f) If other, please specify.

| Party Against which Lawsuit or Claim was Filed: | | Product(s) | Dates and Frequency of Exposure (hours/day, days/year) | Occupation Code If Code 59, specify. | Industry Code If Code 118, specify. | Was exposure due to working in or around areas where product was being installed, mixed, removed, or cut? If Yes, please indicate your regular proximity to such areas | Nature of Exposure |
|---|---|---|---|---|---|---|---|
| **Site of Exposure 1** Site Name: Address: City and State: Site Owner: | Job 1 Description: | | | | | | |
| | Job 2 Description: | | | | | | |
| | Job 3 Description: | | | | | | |
| **Site of Exposure 2** Site Name: Address: City and State: Site Owner: | Job 1 Description: | | | | | | |
| | Job 2 Description: | | | | | | |
| | Job 3 Description: | | | | | | |
| **Site of Exposure 3** Site Name: Address: City and State: Site Owner: | Job 1 Description: | | | | | | |
| | Job 2 Description: | | | | | | |
| | Job 3 Description: | | | | | | |

11

WR GRACE  PIQ  60269-0017

## PART VI: EMPLOYMENT HISTORY

WR GRACE PIQ  60269-0018

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial including your current employment. For each job, include your employer, location of employment, and dates of employment. Only include jobs at which you worked for at least one month. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

Occupation Code: _____ If Code 59, specify: _____

Industry Code: _____ If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
               Address

City                                State/Province                Zip/Postal Code

Occupation Code: _____ If Code 59, specify: _____

Industry Code: _____ If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
               Address

City                                State/Province                Zip/Postal Code

Occupation Code: _____ If Code 59, specify: _____

Industry Code: _____ If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
               Address

City                                State/Province                Zip/Postal Code

Occupation Code: _____ If Code 59, specify: _____

Industry Code: _____ If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
               Address

City                                State/Province                Zip/Postal Code

12

**PART VII:  LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA**

WR GRACE PIQ 60269-0019

### a.  LITIGATION

1.  Have you ever been a plaintiff in a lawsuit regarding asbestos or silica?.................................☒ Yes ☐ No

    *If yes, please complete the rest of this Part VII(a) for each lawsuit.  For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2.  Please provide the caption, case number, file date, and court name for the lawsuit you filed:

    Caption:

    Case Number:                    REDACTED                    File Date:          REDACTED

    Court Name:

3.  Was Grace a defendant in the lawsuit? ...........................................................................☐ Yes ☒ No

4.  Was the lawsuit dismissed against any defendant? ............................................................☐ Yes ☐ No

    *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

    _____

    _____

5.  Has a judgment or verdict been entered?............................................................................☐ Yes ☒ No

    *If yes, please indicate verdict amount for each defendant(s):* _____

6.  Was a settlement agreement reached in this lawsuit? ........................................................☐ Yes ☐ No

    *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

    a.  Settlement amount for each defendant: _____

    b.  Applicable defendants:_____

    c.  Disease or condition alleged: _____

    d.  Disease or condition settled (if different than disease or condition alleged):_____

7.  Were you deposed in this lawsuit? ....................................................................................☒ Yes ☐ No

    *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire*

### b.  CLAIMS

1.  Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? .........................................................☐ Yes ☐ No

    *If yes, please complete the rest of this Part VII(b).  If no, please skip to Part VIII.*

2.  Date the claim was submitted:.............................................................................___ / ___ / _____

3.  Person or entity against whom the claim was submitted:_____

4.  Description of claim: _____

5.  Was claim settled? ............................................................................................................☐ Yes ☐ No

6.  Please indicate settlement amount: _____$_____

7.  Was the claim dismissed or otherwise disallowed or not honored? ....................................☐ Yes ☐ No

    *If yes, provide the basis for dismissal of the claim:*_____

13



**PART VII: LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR**

WR GRACE PIQ  60269-0020

### a.  LITIGATION

1. Have you ever been a plaintiff in a lawsuit regarding asbestos or silica?............................☒ Yes ☐ No

   *If yes, please complete the rest of this Part VII(a) for each lawsuit.  For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2. Please provide the caption, case number, file date, and court name for the lawsuit you filed:

   Caption: _____

   Case Number:   **REDACTED**                              _____  File Date:      **REDACTED**

   Court Name: _____

3. Was Grace a defendant in the lawsuit? .........................................................................☒ Yes ☐ No

4. Was the lawsuit dismissed against any defendant? .........................................................☐ Yes ☐ No

   *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

   _____

   _____

5. Has a judgment or verdict been entered?.........................................................................☐ Yes ☒ No

   *If yes, please indicate verdict amount for each defendant(s):* _____

6. Was a settlement agreement reached in this lawsuit? ......................................................☐ Yes ☐ No

   *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

   a.  Settlement amount for each defendant:  _____

   b.  Applicable defendants: _____

   c.  Disease or condition alleged: _____

   d.  Disease or condition settled (if different than disease or condition alleged):_____

7. Were you deposed in this lawsuit? .................................................................................☒ Yes ☐ No

   *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.*

### b.  CLAIMS

1. Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? ...............................................☒ Yes ☐ No

   *If yes, please complete the rest of this Part VII(b).  If no, please skip to Part VIII.*

2. Date the claim was submitted:.................................................................... __ __ / __ __ / __ __ __ __

3. Person or entity against whom the claim was submitted: _____

4. Description of claim: _____

5. Was claim settled? ..........................................................................................................☐ Yes ☐ No

6. Please indicate settlement amount: ..........................................................$ _____

7. Was the claim dismissed or otherwise disallowed or not honored? ..................................☐ Yes ☐ No

   *If yes, provide the basis for dismissal of the claim:*_____

## PART VIII: CLAIMS BY DEPENDENTS OR RELATED PERSONS

### REDACTED

Name of Dependent or Related Person:      Gende

`WR GRACE PIQ 60289-0021`

Last Four Digits of Social Security Number:       Birth Date:

Financially Dependent:............................................................................................................[X] Yes ☐ No

Relationship to Injured Party: [X] Spouse ☐ Child ☐ Other  If other, please specify _____

Mailing Address: ___SEE PART I, b_____
         Address

City              State/Province       Zip/Postal Code

Daytime Telephone number: .....___SEE PART I, b_____...... ( ___ ) ___ - ___

## PART IX: SUPPORTING DOCUMENTATION

Please use the checklists below to indicate which documents you are submitting with this form.

**Copies:**

| | |
|---|---|
| [X] Medical records and/or report containing a diagnosis | ☐ X-rays |
| ☐ Lung function test results | ☐ X-ray reports/interpretations |
| ☐ Lung function test interpretations | ☐ CT scans |
| [X] Pathology reports | ☐ CT scan reports/interpretations |
| [X] Supporting documentation of exposure to Grace asbestos-containing products (INTERROGATORIES) | [X] Depositions from lawsuits indicated in Part VII of this Questionnaire (CAPTION PAGES ONLY) |
| ☐ Supporting documentation of other asbestos exposure AND ADDITIONAL SUPPORTING DOCUMENTATION) | [X] Death Certification |

**Originals:**

| | |
|---|---|
| ☐ Medical records and/or report containing a diagnosis | ☐ Supporting documentation of other asbestos exposure |
| ☐ Lung function test results | ☐ X-rays |
| ☐ Lung function test interpretations | ☐ X-ray reports/interpretations |
| ☐ Pathology reports | ☐ CT scans |
| ☐ Supporting documentation of exposure to Grace asbestos-containing products | ☐ CT scan reports/interpretations |
| | ☐ Death Certification |

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation. Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:

_____

_____

## PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

The information provided in this Questionnaire must be accurate and truthful. This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim. The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both. 18 U.S.C. §§ 152 & 3571. **TO BE COMPLETED BY THE INJURED PERSON.**

I swear, **under penalty of perjury**, that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate and complete.

Signature: _____     Date:___ / ___ / _____

Please Print Name: _____

**TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.**

I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete.

Signature: _____     Date:_07_/_10_/_2006_

Please Print Name: ___STEVEN KAZAN___

14


WR GRACE  PIQ  69269-0022

# Medical Reports





M E D I C A L   C E N T E R
ANATOMIC PATHOLOGY

October 20, 2000

Mr. Francis E. Fernandez
Kazan, McClain, Edises, Simon and Abrams
171 Twelfth Street, Third Floor
Oakland, California 94607

RE:          **REDACTED**

Dear Mr. Fernandez

I have reviewed the medical records and pathology materials provided in the above case. The medical records consisted of pathology reports only. In January, 1999, the patient was evaluated at St. Joseph's Regional Health Center, Hot Springs, Arkansas. He was a 75 year-old man with a history of recurrent pneumothorax. A wedge biopsy of a left lung bleb was described as showing a papillary, glandular proliferation consistent with low-grade adenocarcinoma. A mucin histochemical stain was negative. On March 31, 2000, at Morton Plant Hospital, Clearwater, Florida, a left pleural fluid cytologic study revealed malignant cells. A calretinin immunohistochemical study was positive. Immunohistochemical studies CEA and CD15 were negative. On May 1, 2000, both of the above samples were reviewed in consultation at the Armed Forces Institute of Pathology. The wedge biopsy of the left lung was felt to show epithelioid mesothelioma. Immunohistochemical studies keratin and calretinin were positive. Immunohistochemical studies CEA, LeuM1, B72.3, and BerEP4 were negative. The pleural fluid cytologic study was interpreted as revealing atypical mesothelial proliferation, consistent with mesothelioma if appropriate radiologic and clinical data were supportive. On August 31, 2000, at Morton Plant Hospital, open biopsies of the pleura were described as showing malignant mesothelioma. A calretinin immunohistochemical study was positive. A mucin histochemical was negative, as were immunohistochemical studies CEA, CD15, and TTF-1.

The pathology materials provided and my diagnoses:

1. St. Joseph's Regional Health Center, S-256-99, 14 slides

   Left lung, wedge biopsy:

   - Malignant epithelioid mesothelioma
   - Negative histochemical study mucin
   - Negative immunohistochemical studies CEA, CD15, and TTF-1
   - 0 asbestos bodies in 0.5 square cm
   - Emphysema

WR GRACE PIQ 60289-0024

October 20, 2000
Mr. Francis E. Fernandez
RE:
Page Two                REDACTED

Left lung nodule, biopsy:

    -Organizing hematoma
    -Focal, atypical mesothelial proliferation

2.  Morton Plant Hospital, P-00-468, 19 slides

    Left pleural fluid:

        -Malignant epithelioid mesothelioma
        -Positive immunohistochemical study calretinin
        -Negative histochemical study mucin
        -Negative immunohistochemical studies CEA and CD15

3.  Morton Plant Hospital, S-00-12280, 13 slides

    Pleura, open biopsies:

        -Malignant epithelioid mesothelioma
        -Positive immunohistochemical studies CK7, HBME-1, and calretinin
        -Negative histochemical study PASD
        -Negative immunohistochemical studies CEA, LeuM1, B72.3, BerEP4, and
          CK5/6

The patient has malignant mesothelioma of the pleura. The morphologic appearance of the neoplasm is characteristic. The results of the histochemical and immunohistochemical studies strongly support the diagnosis of mesothelioma. No asbestos bodies were identified in the small quantity of lung tissue included in the wedge biopsy of the left lung performed at St. Joseph's Health Center. The quantity of lung tissue available is insufficient for estimation of the asbestos-body concentration in the lung parenchyma.

Sincerely

William R. Salyer, M.D.

WRS/w



CLEARWATER PATHOLOGY ASSOCIATES
P.O. BOX 210
CLEARWATER, FLORIDA 33757-0210


WR GRACE  PIQ  60268-0026

BEN B. HARRIMAN, M.D.
GEORGE D. SCHAEFER, M.D.
MICHAEL R. PIEHL, M.D.
KENNETH R. SCHROER, M.D.
DIPLOMATES OF THE AMERICAN
BOARD OF PATHOLOGY



REDACTED

April 10, 2000

Greg Savel, M.D.
1230 S. Myrtle Ave.
Suite 205
Clearwater, FL  33756

Dear Dr. Savel,

This letter will formalize our findings related to the father of one of your employees, the former being                    age 77.

I received a left pleural fluid for examination (P-468) which was collected 03/32/00.  I enclose a copy of my findings, which was consistent with a mesothelioma.

At our later discussion about this, last week, you offered to retrieve for me a paraffin block of a previous biopsy from                    (see enclosure - a left lung nodule, January 12, 1999, St. Joseph's Regional Health Center, S-256-1).

There is a slight blush with TTF, Calretinin was technically unsatisfactory and the epithelial markers (LEU-M1 and CEA) were negative.

I believe this tumor is mesothelioma.

I am enclosing all pertinent slides, data and the paraffin block.

Best wishes,

Ben Harriman, M.D.

**MORTON PLANT HOSPITAL**
323 JEFFORDS STREET
CLEARWATER, FL 33756
(727) 462-7062



Date Received: 08/31/00
Date of Procedure: 08/30/00

REDACTED

S-00-012280

> Surgical Pathology

**GROSS:**
Received are multiple portions of red-tan to dark red soft tissue and some yellow-gray fibrofatty tissue. The specimen measures 8.0 x 7.5 x 3.0 cm in aggregate. On section, the tissue is gray-tan to gray-white, and partially cystic, containing red-tan to yellow-tan mucinous fluid.  rh/lf

**MICRO:**
Sections of the pleural tumor show an infiltrating tubulopapillary malignant tumor with well formed glands. Special stains for CD-15, CEA, Calretinin, TTF-1, and Mucin are performed. Calretinin, a mesothelial marker, is strongly positive, while CEA, CD-15, TTF-1 and Mucin are negative.

**DIAGNOSIS:**
Pleura, biopsy:  Malignant tubulopapillary mesothelioma.

KENNETH R. SCHROER, M.D.
PATHOLOGIST
KS : DAM
Date Reported:    09/05/00

REDACTED

**End of Report**

S-00-012280

0000090335921    /(11000)000-000944651
M/ 05/09/1923    MED/   WIT7 /0705 -01
Dr: Chapa, Liberato
Doctors Box #: 0001425



WR GRACE PIQ 60269-0027

# Interrogatory Responses



1  Francis E. Fernandez, Esq. (C.S.B. #65775)
   Gordon D. Greenwood, Esq. (C.S.B.# 136097)
2  KAZAN, McCLAIN, EDISES, SIMON & ABRAMS
   A Professional Law Corporation
3  171 Twelfth Street, Third Floor
   Oakland, California 94607
4  Telephone: (510) 465-7728

5  Attorneys for Plaintiffs

6

7

8          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF ALAMEDA

10

11      **REDACTED**                  No. 2001-025329

12                                    **RESPONSES TO JOINT DEFENSE**
                                      **INTERROGATORIES**
13                                    **(Wrongful Death)**

14          Plaintiffs,

15      vs.

16  A. P. GREEN SERVICES, INC., et al.,

17          Defendants.

18

19  PROPOUNDING PARTY:    Coordinating Defense Counsel, Berry & Berry

20  SET NUMBER:           ONE (1)

21  RESPONDING PARTY:     Plaintiff

22      Plaintiff                      , hereby responds to interrogatories propounded by

23  Coordinating Defense Counsel, Berry & Berry.

24                          **INTRODUCTION**

25      These responses include language drafted by plaintiffs' attorneys. As a result, some or all

26  of these responses may contain wording that plaintiffs might not use. The responses that follow

27  are based on information possessed by plaintiffs' attorneys, unless otherwise privileged, as well as

28  information known to plaintiffs. Plaintiffs may not have any information concerning a particular

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 893-7211
FAX (510) 835-4913

REDACTED

1  response.  Verification by plaintiff                          is not an in  WR GRACE PIQ 60269-0029

2  any knowledge concerning any particular response.

3  **RESPONSE TO INTERROGATORY NO. 1:**

4      (a)

5      (b)

6      (c)

7      (d)

8      (e)

9      (f)                         REDACTED

10     (g)

11     (h)

12     (i)

13     (j)

14     (k)

15     (l)

16     (m)

17     (n)                                    cause it is an invasion of privacy, irrelevant and

18  not likely to lead to admissible evidence.  Without waiving these objections, plaintiff responds:

19  Plaintiff has not remarried since her husband's death;

20     (o)

21     (p)    Not applicable;              REDACTED

22     (q)    Not applicable; and

23     (r)    Death;  March 28, 2001;  Clearwater, FL.

24  **RESPONSE TO INTERROGATORY NO. 2:**

25     (a)

26     (b)                         REDACTED

27     (c)

28     (d)

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 893-7211
FAX (510) 835-4913



WR GRACE PIQ 60269-0039

1  (e)

2  (f)

3  (g)

4  (h)

5  (i)

6  (j)

7  (k)                    **REDACTED**

8  (l)

9  (m)

10  (n)

11  (o)

12  (p)

13  (q)

14  (r)

15  (s)

16  (t)

17  <u>RESPONSE TO INTERROGATORY NO. 3:</u>

18  <u>Name and Address</u>                <u>Date of Birth</u>        <u>Occupation</u>

19                    **REDACTED**

20

21

22  <u>RESPONSE TO INTERROGATORY NO. 4:</u>

23      No.

24  <u>RESPONSE TO INTERROGATORY NO. 5:</u>

25      Mother

26      (a)

27      (b)            **REDACTED**

28      (c)

KAZAN, MCCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7228
(510) 893-7211
FAX (510) 835-4913

WR GRACE PIQ 60268-0031

1    Father

2    (a)

3    (b)                **REDACTED**

4    (c)

5    **RESPONSE TO INTERROGATORY NO. 6:**

6         Plaintiff objects to this interrogatory because it is burdensome, oppressive, vague and

7    ambiguous as to what constitutes "blood relatives," is not likely to lead to admissible evidence.

8    Without waiv                                    follows: Yes

9    (a)              **REDACTED**

10   (b)

11   **RESPONSE TO INTERROGATORY NO. 7:**

12   (a)

13   (b)

14   (c)            **REDACTED**

15   (d)

16   (e)

17   **RESPONSE TO INTERROGATORY NO. 8:**

18        Plaintiff objects to this interrogatory because it is overbroad, irrelevant to the subject

19   matter of the instant action, not likely to lead to admissible evidence, and is an invasion of

20   plaintiff's right to privacy.  Furthermore, *Smith v. Superior Court* (1961) 189 Cal.App.2d 6, is a

21   case on point concerning this subject.  Without waiving said objections, plaintiff responds:  At the

22   time of his death, decedent lived at

23   **RESPONSE TO INTERROGATORY NO. 9:**                    **REDACTED**

24        Decedent completed 8th grade at Pleasant Hill School, Pleasant Hill, AR  He then attended

25   Thomas Jefferson Jr. High and Plant High School, in Tampa, FL.  Decedent earned his GED while

26   in the USAF.  Other classes he took were: Military Leadership School 1951 at Brookly AFB,

27   Mobile, AL.; The NCO Academy in 1955 at Tindall AFB, Panama City, FL; and diesel

28   maintenance in 1956 at Nordberg Manufacturing Company, Milwaukee, WI.

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 663-7211
FAX (510) 835-4913



**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff objects to this interrogatory because it is irrelevant to the subject matter of the action and not likely to lead to admissible evidence (as to the decedent). As to the plaintiff: No.

**RESPONSE TO INTERROGATORY NO. 11:**

Plaintiff objects to the final part of this interrogatory, "If decedent was not a member of the Armed Forces . . . ," because it is overbroad and an invasion of decedent's right to privacy. Without waiving said objections, plaintiff responds as follows: Decedent served as a seaman and boson's mate (First Class) in the U.S. Navy from June 4, 1942 until November 1947, and then served in the U.S. Air Force as a boatmaster from June 1948, and Sergeant from 1951 until his retirement April 30, 1963.

Plaintiff refers defendants to her response to Interrogatory No. 30 below for details regarding decedent's job duties during his active duty in the Armed Forces.

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiff objects to this interrogatory because it is overbroad, burdensome and an invasion of the right to privacy. Further, defendants have relevant medical records or plaintiff's attorney will make relevant medical records available at a mutually convenient time in our office for the defendants' coordinating counsel for medical discovery, Berry & Berry. Without waiving said objections, plaintiff responds as follows:

| Doctor/Hospital/Address | Date of Treatment |
| --- | --- |
| Robert McCreary, M.D.<br>Florida Community Cancer Centers<br>303 Pinellas St, Ste 230<br>Clearwater, FL 33756 | May 2000 to death |

Reason for Treatment: Mesothelioma

| | |
| --- | --- |
| Scott J. Antonio, M.D.<br>H. Lee Moffitt Cancer Center<br>12902 Magnolia Dr.<br>Tampa, FL 33612 | April 2000, August 2000 |

Reason for Treatment: Mesothelioma, pleurodesis

| | |
| --- | --- |
| Bonnie Glisson, M.D.<br>Anderson Cancer Center<br>University of Texas<br>1515 Holcombe Blvd | July 2000 |

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 895-7211
FAX (510) 835-4913

WR GRACE PIQ 60269-0093

1  Houston, TX 77030

2  <u>Reason for Treatment</u>: Mesothelioma

3  Robert D. Johnson, M.D.                    June 2000
   Pulmonary Medicine
4  One Mercy Lane, Suite 401
   Hot Springs, AR 71913

5  <u>Reason for Treatment</u>: Mesothelioma

6

7  Brian G. Salisbury, M.D.                   3/28/00, 4/21/00
   510 E. Druid Rd, Ste. A
   Clearwater, FL 33756

8  <u>Reason for Treatment</u>: Breathing, pulmonary difficulties.

9  Albert Soriano, M.D.                       March-April 2000
10 1016 Ponce de Leon Blvd
   Belleair, FL 33756

11 <u>Reason for Treatment</u>: Breathing pulmonary difficulties.

12 John Bond, M.D.                            1980-June 2000
13 Internal Medicine
   100 McGowan Court
14 Hot Springs, AR 71913

15 <u>Reason for Treatment</u>: Hypertension, arthritis, anemia, neuropathy, pneumothorax, shortness of
   breath, mesothelioma.

16 John Brunner, M.D.                         December 1998-August 1999
17 Patrick A. Dolan, M.D.
   General Surgery
18 One Mercy Lane, Suite 201
   P.O. Box 6409
19 Hot Springs, AR 71902

20 <u>Reason for Treatment</u>: Pneumothorax, thoracoscopy, thoracotomy.

21 Jerry M. Herron, M.D.                      10/18/99
   Pulmonary Medicine
22 One Lile Court, Suite 201
   Little Rock, AR 72205

23 <u>Reason for Treatment</u>: Shortness of breath, fatigue

24 Dale Klinchloe, M.D.                       November 1990, February 1991
25 Orthopedics
   Hot Springs, AR

26 <u>Reason for Treatment</u>: Knee replacements.

27 James Burton, M.D.                         May 1991
28 Urologist
   Hot Springs, AR

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 835-7211
FAX (510) 835-4913

WR GRACE PIQ 60269-0034

1   Reason for Treatment:   TUR

2   Dr. Carson                                1970 to September 2000
    Dr. Hill
3   VA Medical Center
    4300 W. 7th Street
4   Little Rock, AR 72205

5   Reason for Treatment: Physicals, hypertension, arthritis.

6   Dr. S. Metzer, Neurology                  1992 to September 2000
    VA Medical Center
7   4300 W. 7th Street
    Little Rock, AR 72205
8
    Reason for Treatment: Neuropathy of feet and legs.
9
    Dr. Pelligrenio, Neurology                1993-1994
10  Hot Springs, AR

11  Reason for Treatment: Neuropathy of feet and legs

12  Air Force Flight Surgeon                   1964
    McDill AFB Hospital
13  Tampa, FL

14  Reason for Treatment: Pleurisy

15  Name/Address of Hospital                   Date(s) of Treatment

16  Morton Plant Hospital                      March 2000 to death
    323 Jeffords Street
17  Clearwater, FL 33756

18  Reason for Hospital Visit: Thoracentesis, mesothelioma

19  Anderson Cancer Center                     July 2000
    University of Texas
20  1515 Holcombe Blvd
    Houston, TX 77030
21
22  Reason for Hospital Visit: Mesothelioma.

23  H. Lee Moffitt Cancer Center               April 2000, 8/9/00
    12902 Magnolia Dr
    Tampa, FL 33612
24
25  Reason for Hospital Visit: Mesothelioma

26  St. Joseph's Regional Health Center        1990 to September 2000
    300 Werner St.
    Hot Springs, AR 71913
27
    Reason for Hospital Visit: Knee replacements, pneumothorax, thoracoscopy, thoracotomy,
28  colonoscopy.

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 893-7213
FAX (510) 835-4913



1  VA Hospital                                    1970 to September 2000
   4300 W. 7th Street
2  Little Rock, AR

3  <u>Reason for Hospital Visit:</u> Various X-rays and general physicals.

4  McDill AFB Hospital                            1964
   Tampa, FL
5
   <u>Reason for Treatment:</u> Pleurisy
6
   **RESPONSE TO INTERROGATORY NO. 13:**
7
8          Plaintiff objects to this interrogatory because it is overbroad, burdensome, and an invasion

9  of the right to privacy. Plaintiff also objects because this interrogatory seeks expert medical

   opinion; plaintiff is not an expert and is not qualified to give medical opinions. Further,
10
   defendants have relevant medical records or plaintiff's attorney will make relevant medical records
11
   available at a mutually convenient time in our office for the defendants' coordinating counsel for
12
   medical discovery, Berry & Berry. Without waiving said objections, plaintiff refers defendants to
13
   her response to Interrogatory No. 12 for information sought here.
14
   **RESPONSE TO INTERROGATORY NO. 14:**
15
16         Plaintiff objects to this interrogatory because it is overbroad, burdensome, and an invasion

17 of plaintiff's right to privacy. Further, defendants have these medical records or plaintiff's attorney

   will make these medical records available at a mutually convenient time in our office for the
18
   defendants' coordinating counsel for medical discovery, Berry & Berry. Without waiving said
19
   objections, plaintiff refers defendants to her response to Interrogatory No. 12 for information
20
   sought here.
21
           Re: Results and Conclusions: Plaintiff objects to this part of the interrogatory because it
22
   calls for a medical conclusion which plaintiff is not qualified to give.
23
   **RESPONSE TO INTERROGATORY NO. 15:**
24
25         Plaintiff objects to this interrogatory because it is overbroad, burdensome and that said

   information is equally available to defendants. Said information may be obtained by reviewing
26
   decedent's medical records. Further, defendants have these medical records or plaintiff's attorney
27
   will make these medical records available at a mutually convenient time in our office for the
28
   defendants' coordinating counsel for medical discovery, Berry & Berry. Without waiving said

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 465-7211
FAX (510) 835-4913

1  objections, plaintiff refers defendants to her response to Interrogatory No. 12 for

WR GRACE PIQ 60269-0036

2  sought here.

3      Re: Results and Conclusions:  Plaintiff objects to this part of the interrogatory because it

4  calls for a medical conclusion which plaintiff is not qualified to give.

5  **RESPONSE TO INTERROGATORY NO. 16:**

6      Plaintiff objects to this interrogatory because it is overbroad, burdensome and that said

7  information is equally available to defendants.  Said information may be obtained by reviewing

8  decedent's medical records.  Defendants have medical records or plaintiff's attorney will make

9  them available at a mutually convenient time in our office for the defendants' coordinating counsel

10  for medical discovery, Berry & Berry.  As to drugs taken for pulmonary problems, defendants are

11  referred to decedent's medical records.

12  **RESPONSE TO INTERROGATORY NO. 17:**

13      Plaintiff objects to this interrogatory because it is overbroad, burdensome, an invasion of

14  plaintiff's right to privacy, irrelevant to the subject matter of this lawsuit and not likely to lead to

15  admissible evidence.  Further, plaintiff's attorney will make any documents regarding decedent's

16  chest conditions and any other related problems available to defendants at a mutually convenient

17  time in our office for the defendants' coordinating counsel for medical discovery, Berry & Berry.

18  Without waiving said objections, plaintiff responds as follows:  See pathology report of William

19  R. Salyer dated October 20, 2000.

20  **RESPONSE TO INTERROGATORY NO. 18:**

21      Plaintiff objects to this interrogatory because it calls for a medical opinion which plaintiff

22  is not qualified to give.  Without waiving this objection, plaintiff responds:

23      (a)    Decedent's entire respiratory system; e.g., shortness of breath and severe pain.

24  Propounding defendants are referred to decedent's medical records and deposition testimony ;

25      (b)    Malignant mesothelioma ;

26      (c)    Decedent began to experience symptoms before April 2000;

27      (d)    Weight loss, and scars on his body as a result of surgical procedures relating to the

28  diagnosis of mesothelioma;

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 263-7211
FAX (510) 835-4913





1    (e)    Entire body and especially the respiratory system;

2    (f)    Approximately April 10, 2000;

3    (g)    Please see Response to Interrogatory No. 12 above;

4    (h)    Not applicable, as this is a wrongful death action.

5    **RESPONSE TO INTERROGATORY NO. 19:**

6    (a)    Approximately April 10, 2000;

7    (b)    See Response to Interrogatory No. 12 above;

8    (c)    Plaintiff objects to this subpart of the interrogatory because it calls for speculation

9 and a medical conclusion which plaintiff is not qualified to give. Without waiving said objections,

10 plaintiff responds as follows: Plaintiff does not know the method upon which the doctor made

11 such a determination, nor is plaintiff sure upon what information the interpretation was based.

12 Plaintiff refers defendant to decedent's medical records which are equally available to defendant;

13    (d)    Plaintiff refers defendants to decedent's medical records, which detail the

14 information requested and are equally available to defendants. In addition, plaintiff refers

15 defendants to responses to Interrogatories No. 12 and 13;

16    (e)    Members of decedent's immediate family were informed of decedent's medical

17 condition;

18    (f)    Not applicable;

19    (g)    See response to Interrogatory No. 16;

20    (h)    Yes; and

21    (i)    Plaintiff objects to this subpart of this interrogatory to the extent that it asks for

22 information protected by the attorney work product privilege. As to information not protected by

23 said privilege, plaintiff responds: Plaintiff refers defendant to the response to Interrogatories

24 Nos. 12 and 17, for the information sought here. Discovery is continuing.

25    **RESPONSE TO INTERROGATORY NO. 20:**

26    Plaintiff construes this interrogatory to relate only to complaints, symptoms and adverse

27 reactions that were caused by asbestos or asbestos-containing products. Therefore, plaintiff

28 responds: No.

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 883-7211
FAX (510) 835-4913

WR GRACE PIQ 60269-0938

1 **RESPONSE TO INTERROGATORY NO. 21:**

2     Yes. A copy is attached.

3 **RESPONSE TO INTERROGATORY NO. 22:**

4     No.

5 **RESPONSE TO INTERROGATORY NO. 23:**

6     Yes.                          **REDACTED**

7     (a)     (1) St. Joseph Hospital, Little Rock, AR;(2) Morton Plant Hospital;

8     (b)     (1) Seshagirirao Pemmaraju M.D. (2)Kenneth R. Schroer; M.D.

9     (c)     with Berry & Berry; and

10     (d)     (1) January 13, 1999 (2) August 30, 2000.

11 **RESPONSE TO INTERROGATORY NO. 24:**

12     Plaintiff objects to this interrogatory because it violates the attorney work product

13 privilege. Plaintiff will disclose the names of its experts pursuant to California Code of Civil

14 Procedure Section 2034 prior to trial.

15 **RESPONSE TO INTERROGATORY NO. 25:**

16     Plaintiff objects to this interrogatory because it is overbroad, vague and ambiguous.

17 Without waiving said objections, plaintiff responds: No.

18 **RESPONSE TO INTERROGATORY NO. 26:**

19     Yes.

20 **RESPONSE TO INTERROGATORY NO. 27:**

21     (a)     1941-1963.

22     (b)     Cigarettes, inhaled; cigars, inhaled;

23     (c)     daily;

24     (d)     Quit for 5 years. Not habituated to smoking;

25     (e)     Smoked socially only;

26     (f)     Less than one pack per day; and;

27     (g)     Various.

28

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 893-7211
FAX (510) 835-4913



WR GRACE PIQ  60269-0098

1  **RESPONSE TO INTERROGATORY NO. 28:**

2      Plaintiff objects to this interrogatory because it calls for speculation.  Without waiving said

3  objection, plaintiff responds:  Yes. 1963.  Dr. B. Brasher, Gainesville, FL.  Decedent followed his

4  advice, and quit smoking permanently.

5  **RESPONSE TO INTERROGATORY NO. 29:**

6      Plaintiff objects to this interrogatory because it is an invasion of privacy, irrelevant, and not

7  likely to lead to admissible evidence.  Without waiving said objections, plaintiff responds as

8  follows: Decedent drank socially.

9  **RESPONSE TO INTERROGATORY NO. 30:**

10      Plaintiff believes the following to be true regarding decedent's employers:

11  <u>Employer/Address</u>          <u>Dates</u>                  <u>Job Title</u>

12  U.S. Navy                    6/4/42- 11/47            Seaman, boson's mate

13  <u>Duties:</u> Decedent did his basic training at San Diego from June to September 1942.  He was then
    assigned to the destroyer *USS Gansevoort* (DD-608) in San Francisco, CA on which he served as a
14  seaman until September 1945.  He recalled pulling up all the floor sheeting or tile on the decks
    when he first boarded the ship, using blow torches, hammers, sandpaper and steel brushes.
15  Decedent's living space was in the stern compartment under the main battery 5 inch anti-aircraft
    and bombardment guns, and depth charge launchers.  When the guns were fired or during a
16  submarine attack, the vibrations shook the asbestos out of the steam pipe overhead lagging leaving
    dust and fibers over his bunk, blankets and everywhere below.
17      Decedent also recalled asbestos fiber and dust being everywhere in his sleeping
    compartment while the *Gansevoort* underwent overhaul and refit at Mare Island in approximately
18  1942, torpedo and depth charge training and shakedown cruise at San Diego Navy Yard 1942,
    main battery repairs and gun calibration at Pearl Harbor Navy Yard in September 1942, dry dock
19  at Bremerton Navy Yard after the Aleutian Campaign in 1943, more repairs at Pearl Harbor in
    1944, and major rip out and repairs of the overhead asbestos-lagging on the steam pipes in
20  decedent's sleeping quarters after the *Gansvoort* was hit and sunk by a kamikaze airplane, and
    refloated and repaired at Leyte before returning to Pearl Harbor, then Hunters Point for
21  refurbishing May 1945.  Decedent recalled working in the lower decks living spaces cleaning and
    refurbishing the vessel, alongside the Hunters Point shipyard workers, and being exposed to
22  asbestos during this time.
        After taking leave from September to December 1945, decedent was reassigned January
23  1946 to the *USS Portsmouth* (CL-102) and served as a boson's mate (first class) until he was
    honorably discharged in November 1947.  Plaintiff claims decedent was exposed to asbestos
24  throughout his Navy service.

25
    U.S. Air Force              June 1948-April 30, 1963    Boatmaster, 1st Sergeant

26  <u>Duties:</u> Decedent served at the following locations:

27  Crash Boat Squadron         June 1948-June 1953      Boatmaster
28  Brookly AFB
    Mobile, AL

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 835-7231
FAX (510) 835-4913

| | | |
|---|---|---|
| 22nd Crash Boat Squadron<br>APO San Francisco, CA | June 1953-June 1954 | Boatmaster |

**Duties:** Decedent served on Air Force rescue boats, in Korea, which were deployed when pilots were shot down. Some of these vessels were converted PT boats. Decedent recalled there was asbestos insulation on the exhausts and manifolds of these boats' engines which he maintained.

| | | |
|---|---|---|
| Crash Boat Squadron<br>Tindell AFB<br>Panama City, FL | June 1954-May 1956 | Boatmaster |

**Duties:** Decedent was transferred to power production for the USAF. He undertook training at the Nordberg Manufacturing Co. in Milwaukee to learn to operate power station engines. He worked on a large powerplant engine, and recalled replacing asbestos gaskets, and that the exhausts and mufflers were insulated with asbestos.

| | | |
|---|---|---|
| 1230th AACS<br>RAF Station<br>Croughton, England | May 1956-February 1959 | 1st Sergeant |

**Duties:** Decedent operated the power plant used to provide power to the communications equipment. Decedent recalled working on number of engines at the receiving station. Plaintiff claims decedent's exposure to asbestos during these operations.

| | | |
|---|---|---|
| AC&W Squadron<br>Winton, Salem N.C. | February 1959-February 1960 | 1st Sergeant |

**Duties:** Decedent operated the power plant which had a number of powerplant engines which were insulated with asbestos. Plaintiff claims decedent's exposure to asbestos during these operations.

| | | |
|---|---|---|
| 691st Radar Squadron<br>Cross City, FL | February 1960-June 1961 | 1st Sergeant |

| | | |
|---|---|---|
| 666th Radar Squadron<br>McDill AFB<br>Tampa, FL | February 1961-4/30/63 | 1st Sergeant |

**Duties:** Decedent transferred out of power plant operations to headquarters, from where he retired. Plaintiff does not claim decedent's asbestos exposure during this time period.

| | | |
|---|---|---|
| Gatorland Lounge<br>Gainesville, FL | May 1963-June 1964 | Owner, bartender |

| | | |
|---|---|---|
| Kings Food Host<br>Gainesville, FL | August-November 1964 | Building maintenance |

| | | |
|---|---|---|
| University of Florida<br>Gainesville, FL | May 1965-May 1967<br>May - December 1968 | Laboratory kilns maintenance,<br>Heat shields construction. |

**Duties:** Decedent built nuclear heat shields and subcritical reactors for graduate students. He also performed maintenance on laboratory kilns and other heat related equipment, and used asbestos gloves and gauntlets. Plaintiff claims decedent's exposure to asbestos at this employment.

Plaintiff refers defendants to decedent's deposition testimony for further information.

Discovery is continuing

KAZAN, McCLAIN,<br>EDISES, SIMON &<br>ABRAMS<br>A PROFESSIONAL<br>LAW CORPORATION<br>171 TWELFTH STREET<br>THIRD FLOOR<br>OAKLAND, CA 94607<br>(510) 465-7728<br>(510) 835-7211<br>FAX (510) 835-4812

RESPONSES TO JOINT DEFENSE INTERROGATORIES (Wrongful Death)    13




WR GRACE PIQ 60269-0041

## RESPONSE TO INTERROGATORY NO. 31:

Plaintiff does not personally know the information requested in subparts (a) through (i) of this interrogatory. Therefore, plaintiff bases her response on decedent's answers to personal injury interrogatories and his deposition. In both documents, which are equally available to defendants, decedent described the nature of his work and exposure to asbestos-containing materials, and also named former co-workers]

    (a)    See Response to Interrogatory No. 30 above. Discovery is continuing;

    (b)    Plaintiff refers defendants to her response to Interrogatory No. 30 above for the information sought here. Discovery is continuing;

    (c)    Yes. Plaintiff refers defendants to her Response to Interrogatory No. 30 above;

    (d)    Yes. Plaintiff refers defendants to her Response to Interrogatory No. 30 above;

    (e)    All types of asbestos-containing products used for ships, aboard ship and in shipyards, including but not limited to the following: Pipe covering, pipe insulation, gasket materials, block insulation, adhesives, insulating cement, cloth, tape and joint compounds. Decedent and his crewmembers aboard the *USS Gansevoort* and *USS Portsmouth* were regularly exposed to a dusty work environment which was created by the use of asbestos-containing materials; further decedent worked with asbestos gloves, and gauntlets, and asbestos-containing block and asbestos-containing insulation products when he worked at the University of Florida.

Decedent and his co-workers were regularly exposed to a dusty work environment which was created by the use of asbestos-containing materials.

Discovery is continuing;

    (f)    Mare Island; San Diego Navy Yard; Pearl Harbor Navy Yard; Bremerton Navy Yard; Hunters Point Naval Shipyard; University of Florida; and the ships decedent served upon: *USS Gansevoort* (9/42-9/45); *USS Portsmouth* (1/46-11/47); University of Florida (5/65-5/67, 5/68-12/68)

    (g)    *USS Gansevoort; USS Piedmont* (destroyer tender for temporary repairs after the Gansevoort was raised from sinking); *USS Portsmouth;*

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 832-7211
FAX (510) 835-4913

  

WR GRACE PIQ 60269-0042

1   (h)   Decedent recalled Commander John M. Steinbeck on the *USS Ga*

2 Premo was decedent's supervisor at the University of Florida.  Discovery is continuing;

3   (i)   Plaintiff objects to this subpart of this interrogatory because it is overbroad and

4 burdensome.  Short of having to subpoena the employment records from decedent's employers,

5 plaintiff is unable to answer this question.  Without waiving any objections, plaintiff responds:

6 Plaintiff does not know the addresses, nor whether any of the individuals with whom decedent

7 served  are deceased.  She attaches

8   (a) as **Exhibit A** a list which includes but is not limited to names of decedent's

9 crew-members on the *USS Gansevoort*.  Decedent did not recall crewmembers with whom he

10 served on the USS Portsmouth;

11   (b) as **Exhibit B** a list of individuals with whom decedent served on rescue boats in

12 the U.S Air Force;

13   (c)   Decedent identified working with Dr. Nils Diaz; Fred Premo, Gainesville, FL;

14 Joseph Mueller, deceased; John Whiteford; Robert Dalton; George Fogle. at the University of

15 Plaintiff believes that the employees of the U.S. Navy and U.S. Air Force at the shipyards/stations

16 in which decedent worked, and the employees of the University of Florida, as well as their

17 contractors and subcontractors, have such information.  At this time, plaintiff has not ascertained

18 the name of all these individuals, but believes that the personnel records of these employers are

19 equally available to defendants.

20   Plaintiff further believes that the crew members of *USS Gansevoort* including but not

21 limited to those individuals listed on Exhibit A hereto, and crewmembers of the *USS Portsmouth*;

22 and Air Force rescue boats' crews  upon which decedent worked including but not limited to those

23 individuals listed on Exhibit B hereto have such information, as do employees of the shipyards/air

24 bases and employees of the contractors and/or subcontractors at the shipyards/air bases where

25 these vessels were constructed, repaired, refurbished and overhauled.

26   Additionally plaintiff believes that employees of the entities that supplied and

27 manufactured asbestos containing products to decedent's worksites and/or to contractors at his

28 jobsites have such information.

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 835-7211
FAX (510) 835-4913

WR GRACE PIQ 60269-0043

1   Plaintiff refers propounding defendants to decedent's deposition testimo[...]

2   Discovery is continuing.

3   **RESPONSE TO INTERROGATORY NO. 32:**

4   Not to plaintiff's knowledge; discovery is continuing.

5   **RESPONSE TO INTERROGATORY NO. 33:**

6   Plaintiff does not know the information requested in subparts (a) through (f) of this

7   interrogatory.  Therefore, plaintiff bases her response on decedent's answers to his personal injury

8   interrogatories and to his deposition.  In both documents, which are equally available to

9   defendants, decedent discusses product identification]

10   (a)    Plaintiff refers defendants to her Response to Interrogatory Nos. 30 and 31 above;

11   (b)    Plaintiff's counsel herein is informed and believes that based on decedent's

12   exposures and the years of exposure that the manufacturers included all defendants named herein.

13   These materials include all those products itemized in Response to Interrogatory No. 31 above;

14   (c)    Unknown at this time; discovery is continuing;

15   (d)    Decedent referred to asbestos as "asbestos";

16   (e)    Unknown at this time; discovery is continuing;

17   (f)    To plaintiff's knowledge, decedent did not receive any health hazard warning;

18   Plaintiff refers propounding defendants to decedent's deposition testimony for further

19   information.

20   Discovery is continuing.

21   **RESPONSE TO INTERROGATORY NO. 34:**

22   Plaintiff believes that cartons or other containers of each defendant's product existed.

23   Plaintiff also refers defendants to her Response to Interrogatories Nos. 30 and 33 above.

24   Plaintiff further refers propounding defendants to decedent's deposition testimony.

25   Discovery is continuing.

26   **RESPONSE TO INTERROGATORY NO. 35:**

27   Plaintiff objects to this interrogatory to the extent that it calls for privileged information

28   that is the work product of plaintiff's attorneys or otherwise requires such disclosure of information

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 283-7211
FAX (510) 835-4913



WR GRACE PIQ 60269-0044

1  that would constitute a violation of various section 362a stay orders of the Federal

2  Courts. Without waiving said objections, plaintiff responds: Plaintiff's counsel is informed and

3  has no reason to believe that decedent was exposed to asbestos products manufactured or sold by

4  companies who could have been but were not named as defendants in this action. Discovery is

5  continuing.

6  **RESPONSE TO INTERROGATORY NO. 36:**

7      Plaintiff does not know at this time the exact percentage of exposure to the different

8  asbestos-containing materials. Discovery is continuing.

9  **RESPONSE TO INTERROGATORY NO. 37:**

10      Plaintiff objects to this interrogatory because it is overbroad and burdensome. Without

11  waiving said objections, plaintiff responds as follows: Plaintiff refers defendants to Response to

12  Interrogatory No. 31 above, to decedent's deposition testimony; and to his Responses to Joint

13  Defense Interrogatories for the information sought here. Additionally, plaintiff refers defendants

14  to decedent's employers' personnel records as well as to the personnel records of the contractors

15  and subcontractors who were doing work at the locations where decedent worked. Discovery is

16  continuing.

17  **RESPONSE TO INTERROGATORY NO. 38:**

18      Plaintiff objects to this interrogatory because it is burdensome and overbroad. Without

19  waiving said objection, plaintiff responds: Plaintiff refers defendants to response to Interrogatories

20  No. 31 above and to decedent's deposition testimony.

21      Plaintiff believes that the crew members of *USS Gansevoort*, including but not limited to

22  those individuals listed on Exhibit A hereto, or the *USS Portsmouth*, and USAF rescue boats on

23  which he worked including but not limited to those individuals listed on Exhibit B hereto have

24  such information, and of contractors and subcontractors at the shipyards/air bases where these

25  vessels were constructed, repaired, refurbished and overhauled. Additionally plaintiff believes that

26  employees of the University of Florida including but not limited to Fred Premo, Gainesville, FL;

27  Joseph Mueller, deceased; John Whiteford; Robert Dalton; George Fogle, and students including

28  but not limited to Dr. Nils Diaz, that supplied and manufactured asbestos containing products to

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 893-7211
FAX (510) 835-4913

1 his worksites and/or to contractors at decedent's jobsites have such information

2 plaintiff has not ascertained the names of all these individuals, but believes that the personnel

3 records of these various entities are equally available to defendants.

4     Plaintiff believes these individuals may have information regarding the use of asbestos-

5 containing materials, such as those manufactured, sold, distributed, and/or otherwise supplied by

6 propounding defendants, at location(s) where plaintiff claims that decedent was exposed to

7 asbestos.

8     Discovery is continuing.

9 **RESPONSE TO INTERROGATORY NO. 39:**

10     Plaintiff objects to this interrogatory because, to the extent that plaintiff's counsel might

11 possess such documents, they were obtained from defendants and are therefore equally available to

12 defendants.  Without waiving this objection, plaintiff responds:  Plaintiff personally neither saw

13 nor possessed invoices, bills or statements of any type demonstrating the sale of asbestos-

14 containing products to decedent's work sites.  Plaintiff refers defendants to documents previously

15 produced in Alameda, San Francisco, and Solano County cases involving Bethlehem Steel , San

16 Francisco , Mare Island Naval Shipyard and Hunters Point Naval Shipyards  Discovery is

17 continuing.

18 **RESPONSE TO INTERROGATORY NO. 40:**

19     Not to plaintiff's knowledge.

20 **RESPONSE TO INTERROGATORY NO. 41:**

21     Not to plaintiff's knowledge.

22 **RESPONSE TO INTERROGATORY NO. 42:**

23     Not to plaintiff's knowledge.

24 **RESPONSE TO INTERROGATORY NO. 43:**

25     No.

26 **RESPONSE TO INTERROGATORY NO. 44:**

27     (a)    Plaintiff had enlistment physicals in both the U.S. Navy and the US Air Force, and

28 had periodic physicals for ailments when in the services..

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 893-7211
FAX (510) 835-4913

WR GRACE PIQ 60269-0045

WR GRACE PIQ 60269-0046

1    (b)    Periodic physicals;

2    (c)    Required at enlistment; periodically once in the services

3    (d)    Chest X-rays were included occasionally;

4    (e)    As required;

5    (f)    Plaintiff objects to this subpart of this interrogatory because it calls for a medical

6  conclusion which plaintiff is not qualified to give;

7    (g)    Services physicians; and;

8    (h)    Not applicable.

9  Discovery is continuing.

10  **RESPONSE TO INTERROGATORY NO. 45:**

11  No.

12  **RESPONSE TO INTERROGATORY NO. 46:**

13  No.

14  **RESPONSE TO INTERROGATORY NO. 47:**

15  Please refer to Response to Interrogatory No. 45.

16  **RESPONSE TO INTERROGATORY NO. 48:**

17  Not to plaintiff's knowledge.

18  **RESPONSE TO INTERROGATORY NO. 49:**

19  No.

20  **RESPONSE TO INTERROGATORY NO. 50:**

21  Plaintiff objects to this interrogatory because it is irrelevant to the subject matter of this

22  lawsuit, is unlikely to lead to admissible evidence, and is an invasion of plaintiff's right to privacy.

23  Without waiving said objections, plaintiff responds:  Plaintiff retired in approximately 1986.

24  **RESPONSE TO INTERROGATORY NO. 51:**

25  Plaintiff objects to this interrogatory because it is vague and ambiguous as to the term

26  "disability pension" and is irrelevant to the subject matter of this lawsuit and not likely to lead to

27  admissible evidence.  Without waiving said objections, plaintiff responds:  Not applicable.

28

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 893-7211
FAX (510) 835-4913

**RESPONSE TO INTERROGATORY NO. 52:**

No.

**RESPONSE TO INTERROGATORY NO. 53:**

Not applicable.

**RESPONSE TO INTERROGATORY NO. 54:**

Plaintiff objects to providing information regarding plaintiff's income after the date of decedent's death because it is irrelevant to the subject matter of the instant action and not likely to lead to admissible evidence. Plaintiff also objects to providing information regarding decedent's income beyond the five years prior to his death because the interrogatory is overbroad, burdensome, irrelevant, and not likely to lead to admissible evidence. Without waiving these objections, plaintiff responds:   For the five years previous to decedent's death, plaintiff responds: Decedent testified that since retirement in 1986 his annual income was his USAF pension approximately $6,000 annually, and Social Security approximately $7200 annually.  See decedent's deposition transcripts,  and the Economic Report of Robert Johnson attached hereto for further information regarding these economic losses.

**RESPONSE TO INTERROGATORY NO. 55:**

At this time, plaintiff does not possess complete records detailing hospital expenses incurred as a result of decedent's asbestos-related treatment.  Plaintiff is in the process of gathering this information.  Discovery is continuing.

**RESPONSE TO INTERROGATORY NO. 56:**

At this time, plaintiff does not possess complete records detailing medical costs (other than hospitalization) incurred as a result of decedent's asbestos-related illness.  Plaintiff is in the process of gathering this information.  Discovery is continuing.

**RESPONSE TO INTERROGATORY NO. 57:**

Plaintiff objects to this interrogatory because it violates the collateral source rule, is irrelevant to the subject matter of this lawsuit, and is not likely to lead to admissible evidence. Please refer to Judge McKibben's ruling as to *Elnora Bell v. Fibreboard Corporation* (December 8, 1983), Case No. 568497-7 as a case on point concerning this interrogatory.

KAZAN, McCLAIN, EDISES, SIMON & ABRAMS A PROFESSIONAL LAW CORPORATION 171 TWELFTH STREET THIRD FLOOR OAKLAND, CA. 94607 (510) 465-7728 (510) 835-7211 FAX (510) 835-4913

WR GRACE PIQ 60269-0048

**RESPONSE TO INTERROGATORY NO. 58:**

Rhodes Funeral Directors, Inc., 800 East Druid Rd. Clearwater, FL 33756.

**RESPONSE TO INTERROGATORY NO. 59:**

Yes.

(a)    March 29, 2001; and

(b)    Florida National Cemetery, Bushnell, Florida

**RESPONSE TO INTERROGATORY NO. 60:**

No.

**RESPONSE TO INTERROGATORY NO. 61:**

Funeral and cemetery expenses were in excess of $8,000.   Copies of statements will be provided to co-ordinating counsel Berry & Berry.

**RESPONSE TO INTERROGATORY NO. 62:**

Plaintiff objects to this interrogatory because it is overbroad, violates the collateral source rule, is irrelevant to the subject matter of this lawsuit and is not likely to lead to admissible evidence.  Without waiving said objections, plaintiff responds as to the Workers' Compensation: No.

**RESPONSE TO INTERROGATORY NO. 63:**

Not applicable.

**RESPONSE TO INTERROGATORY NO. 64:**

Plaintiff objects to this interrogatory because it is vague and ambiguous.  Without waiving said objections, plaintiff responds:  Other than the instant action and for decedent's asbestos-related mesothelioma, no.

**RESPONSE TO INTERROGATORY NO. 65:**

Plaintiff objects to this interrogatory because it constitutes an invasion of privacy and is irrelevant to the subject matter herein and not likely to lead to admissible evidence.

//

//

//

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 465-7211
FAX (510) 835-4613



WR GRACE PIQ 60269-0049

1 **RESPONSE TO INTERROGATORY NO. 66:**

2 Plaintiff objects to this interrogatory because it is overbroad, ambiguous, a violation of the

3 collateral source rule, invasion of privacy, a violation of confidentiality agreements and not likely

4 to lead to admissible evidence.

5 **RESPONSE TO INTERROGATORY NO. 67:**

6 Plaintiff refers defendants to her Response to Interrogatory No. 66 above.

7 **RESPONSE TO INTERROGATORY NO. 68:**

8 Plaintiff objects to this interrogatory because it violates the attorney work product

9 privilege. Without waiving this objection, plaintiff responds: Plaintiff refers defendants to

10 Responses to Interrogatory Nos. 30, 31 and 38 herein. Discovery is continuing.

11 **RESPONSE TO INTERROGATORY NO. 69:**

12 Plaintiff objects to this interrogatory because it violates the attorney work product

13 privilege. Plaintiff further objects to this interrogatory because it is vague, ambiguous and

14 unintelligible so as to make a response impossible without speculation as to the meaning of the

15 question. Without waiving said objections and interpreting this question to mean those tangible

16 items which specifically evidenced decedent's exposure to asbestos-containing products directly,

17 plaintiff responds as follows: Other than medical records, plaintiff has located no such documents

18 at this time. Plaintiff further refers defendants to defendants' responses to discovery propounded

19 under the *In Re: Shipyard and Applicator Consolidated for Discovery* case caption and *In Re:*

20 *Complex Litigation* case caption, to all documents, if any, produced in                    and

21 v. ACandS, Inc., Alameda County Superior Court No. 830506-4 , to

22 decedent's deposition transcript and to Interrogatory No. 31 herein. Discovery is continuing.

23 **RESPONSE TO INTERROGATORY NO. 70:**

24 Yes.

25 **RESPONSE TO INTERROGATORY NO. 71:**

26 See attached records.

27 **RESPONSE TO INTERROGATORY NO. 72:**

28 Yes.

REDACTED

REDACTED

KAZAN, McCLAIN,
EDISES, SIMON &
ABRAMS
A PROFESSIONAL
LAW CORPORATION
171 TWELFTH STREET
THIRD FLOOR
OAKLAND, CA 94607
(510) 465-7728
(510) 893-7211
FAX (510) 835-4913