1    ///

WR GRACE-PIQ 002326-087

2    **RESPONSE TO INTERROGATORY NO. 85:**

3      Yes.

4      (a)    Not yet determined.

5      (b)    To be determined.

6      (c)    To be determined.

7      Investigation and discovery are continuing.

8    **RESPONSE TO INTERROGATORY NO. 86:**

9      **REDACTED**     enjoyed many activities with one another such as, traveling,

10    attending church, participating in church events, entertaining guests at their home, holiday

11    dinners, accommodating weekend guests, visiting with family and friends, discussing books and

12    articles that they read, watching television, taking walks, and just being together, sharing life as

13    husband and wife and friends.

14    **RESPONSE TO INTERROGATORY NO. 87:**

15      Twenty-four (24) hours per day.

16    **RESPONSE TO INTERROGATORY NO. 88:**

17      No.

18    **RESPONSE TO INTERROGATORY NO. 89:**

19      (a)    No.

20      (b)    No.

21    **RESPONSE TO INTERROGATORY NO. 90:**

22      Yes.

23    **RESPONSE TO INTERROGATORY NO. 91:**

24      Plaintiffs were assisted by their attorneys, HOBIN & SHINGLER, LLP, 1011 "A" Street,

25    Antioch, California 94509, (925)757-7020.

26    Dated: April 5, 2001.            HOBIN & SHINGLER, LLP

27

28

General Order Interrogatory Responses - Wrongful Death
Case No. 835568-9

WR GRACE-PIQ 002326-088

By: _____
RONALD J. SHINGLER

26

General Order Interrogatory Responses - Wrongful Death
Case No. 835568-9

# Hobin, Shingler & Simon, LLP

*Attorneys at Law*



Richard Hobin
Ronald J. Shingler
Aaron H. Simon

1011 A Street
Antioch, California 94509-2323
(925)757-7020   fax: (925) 757-0153
e-mail: info@deltalawyer.com
www.deltalawyer.com

Of Counsel
Bryce C. Anderson
Susan S. Ochi

RECEIVED JAN 1 6 2006

January 13, 2006

Rust Consulting, Inc.
Claims Processing Agent
Re: W.R. Grace & Co. Bankruptcy
PO Box 1620
Faribault, MN 55021-1620

Dear Sir or Madam:

Per your request, enclosed are the completed Asbestos Personal Injury Questionnaires for two of our clients:

• **REDACTED**
•

For each of the above, we have also attached a packet with the following documents:

•   Work history
•   Death certificate
•   Complaint caption
•   Medical reports
•   Interrogatories

We have also enclosed a Proof of Claim Form for each claimant, although we were unable to ascertain if they are required.

If you have any questions, please contact me.

Very truly yours,

HOBIN, SHINGLER & SIMON, LLP

Judith Geisler, Paralegal

Enclosures



WR GRACE-PIQ 002326-090

RONALD J. SHINGLER, ESQ.
(925) 757-7585
HOBIN, SHINGLER & SIMON, LLP
1011 A STREET
ANTIOCH, CA 945092323

2 LBS          1 OF 1

SHIP TO:
W R GRACE & CO. BANKRUPTCY
1-800-432-1909
RUST CONSULTING, INC.
PO BOX 1620
CLAIMS PROCESSING AGENT
**FARIBAULT  MN 55021-1501**

# MN 550 2-01

## UPS NEXT DAY AIR                              1
TRACKING #: 1Z YE2 652 01 9612 8496

BILLING: P/P

Reference#1: Crowle
Reference#2: J Moore

RECEIVED JAN 1 6 2006

UPS 8.0.14.0   WIN/550 48.0A/10/2005



# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

10315607058359
RE
Wartnick, Chaber, Harowitz & Tigerman
101 California Street, Suite 2200
San Francisco CA 94111

REC'D JUL 12 2006

REDACTED



001015058359

WR GRACE PIQ 59076-0002

[THIS PAGE INTENTIONALLY LEFT BLANK.]



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

YOU HAVE RECEIVED THIS QUESTIONNAIRE BECAUSE GRACE BELIEVES THAT YOU HAD SUED ONE OR MORE OF THE DEBTORS LISTED IN APPENDIX A ATTACHED TO THIS QUESTIONNAIRE BEFORE GRACE FILED FOR BANKRUPTCY ON APRIL 2, 2001 FOR AN ASBESTOS-RELATED PERSONAL INJURY OR WRONGFUL DEATH CLAIM, AND THAT CLAIM WAS NOT FULLY RESOLVED.

IF YOU HAVE SUCH A CLAIM, YOU MUST COMPLETE AND SUBMIT THIS QUESTIONNAIRE BY JANUARY 12, 2006 TO RUST CONSULTING, INC., THE CLAIMS PROCESSING AGENT, AT ONE OF THE FOLLOWING ADDRESSES:

| IF SENT BY U.S. MAIL | IF SENT BY FEDERAL EXPRESS, UNITED PARCEL SERVICE, OR A SIMILAR HAND DELIVERY SERVICE |
|---|---|
| RUST CONSULTING, INC. | RUST CONSULTING, INC. |
| CLAIMS PROCESSING AGENT | CLAIMS PROCESSING AGENT |
| RE: W.R. GRACE & CO. BANKRUPTCY | RE: W.R. GRACE & CO. BANKRUPTCY |
| P.O. BOX 1620 | 201 S. LYNDALE AVE. |
| FARIBAULT, MN 55021 | FARIBAULT, MN 55021 |

A QUESTIONNAIRE (AND ANY AMENDMENTS OR ADDITIONAL DOCUMENTS IN SUPPORT OF THE QUESTIONNAIRE) WILL <u>NOT</u> BE CONSIDERED UNLESS RECEIVED BY RUST CONSULTING, INC. BY JANUARY 12, 2006.

THIS QUESTIONNAIRE IS AN OFFICIAL DOCUMENT APPROVED BY THE COURT IN CONNECTION WITH ESTIMATING GRACE'S ASBESTOS-RELATED PERSONAL INJURY AND WRONGFUL DEATH CLAIMS AS A WHOLE. THE QUESTIONNAIRE IS BEING USED BY W. R. GRACE AS A MEANS TO SEEK INFORMATION ABOUT YOUR ASBESTOS CLAIM. BY TIMELY RETURNING THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE, GRACE, THE OFFICIAL COMMITTEES, AND THE FUTURE CLAIMANTS REPRESENTATIVE WILL SEEK TO PRIORITIZE THE PROCESSING OF YOUR CLAIM UNDER ANY TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION.

THE COURT HAS ORDERED THAT, AS PART OF THE DISCOVERY PROCESS, ALL HOLDERS OF PRE-PETITION ASBESTOS PERSONAL INJURY CLAIMS MUST COMPLETE AND RETURN THIS QUESTIONNAIRE. THUS, FAILURE TO TIMELY RETURN THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE MAY RESULT IN SANCTIONS AND/OR OTHER RELIEF AVAILABLE UNDER APPLICABLE FEDERAL RULES.

BECAUSE YOUR CLAIM WILL BE EVALUATED IN ACCORDANCE WITH THE TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION, COMPLETION OF THIS QUESTIONNAIRE DOES <u>NOT</u> MEAN THAT YOUR CLAIM WILL EITHER BE ALLOWED OR PAID. TO THE EXTENT YOU ATTACH TO THIS QUESTIONNAIRE DOCUMENTS ALSO NEEDED BY THE TRUST TO PROCESS YOUR CLAIM, SUCH DOCUMENTS WILL BE PROVIDED TO THE TRUST AND YOU WILL NOT NEED TO RESUBMIT THEM.

## INSTRUCTIONS



### A. GENERAL

1. This Questionnaire refers to any lawsuit that you filed before April 2, 2001 for an "asbestos-related wrongful death claim." This term is intended to cover any lawsuit alleging any claim for person... that relates to: (a) exposure to any products or materials containing asbestos that were manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present affiliates, or any of the predecessors of any of the Debtors or any of their respective past or present affiliates), or (b) exposure to vermiculite mined, milled or processed by the Debtors (or any of their respective past or present affiliates, any of the predecessors of any of the Debtors or any of their predecessors' respective past or present affiliates). It includes claims in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law or equity, or admiralty for, relating to, or arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal injuries or other damages caused, or allegedly caused, directly or indirectly, and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors. It includes all such claims, debts, obligations or liabilities for compensatory damages such as loss of consortium, personal or bodily injury (whether physical, emotional or otherwise), wrongful death, survivorship, proximate, consequential, general, special, and punitive damages.

2. Your Questionnaire will be deemed filed only when it has been received by Rust Consulting Inc., the Claims Processing Agent, via U.S. Mail, Federal Express, United Parcel Service or a similar hand delivery service. A Questionnaire that is submitted by facsimile, telecopy or other electronic transmission will not be accepted and will not be deemed filed.

   Do not send any Questionnaire to the Debtors, counsel for the Debtors, the Future Claimants Representative, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Asbestos Property Damage Claimants, the Official Committee of Equity Security Holders, or such Committees' counsel. Questionnaires that are filed with or sent to anyone other than Rust Consulting, Inc. will be deemed not to have been submitted, and such Questionnaires will not be considered.

3. Your completed Questionnaire must (i) be written in English, and (ii) attach relevant supporting materials as instructed further below.

4. All holders of claims described on page i (and as described in further detail in Instruction A (1) above) are required to file this Questionnaire by Jan. 12, 2006. Your Questionnaire will be used in connection with the estimation hearing to be conducted by the Court pursuant to the Estimation Procedures Order (a copy of which is attached as Appendix B).

5. Any subsequent amendment to the Questionnaire will not be considered for any purpose unless received by Jan. 12, 2006.

### B. PART I -- Identity of Injured Person and Legal Counsel

Respond to all applicable questions. If you are represented by a lawyer, then in Part I (b), please provide your lawyer's name and the name, telephone number and address of his/her firm. If you are represented by a lawyer, he/she must assist in the completion of this Questionnaire. Also, if you would prefer that the Debtors send any additional materials only to your lawyer, instead of sending such materials to you, then check the box indicating this in Part I (b).

All references to "you" or the like in Parts I through X shall mean the injured person. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete this Questionnaire.

### C. PART II -- Asbestos-Related Condition(s)

Please indicate all asbestos-related medical conditions for which you have been diagnosed. To complete questions related to injuries, medical diagnoses, and/or conditions, please use the following categories of customarily diagnosed conditions:

- Mesothelioma
- Asbestos-Related Lung Cancer
- Other Cancer (colon, laryngeal, esophageal, pharyngeal, or stomach)
- Clinically Severe Asbestosis
- Asbestosis
- Other Asbestos Disease

If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

**Supporting Documents for Diagnosis:** This Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis.

**X-rays and B-reads:** Please attach all x-ray readings and reports. You may, but are not required to, attach chest x-rays. The court, however, has ruled that Grace may seek access to chest x-rays upon request.

**Pulmonary Function Tests:** Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based.

**D. PART III – Direct Exposure to Grace Asbestos-Containing Products**

In Part III, please provide the requested information for the job and site at which you were e: ~~WR GRACE PIQ 59076-0905~~ asbestos-containing products. Indicate the dates of exposure to each Grace asbestos-containing product. was a result of your employment, use the list of occupation and industry codes below to indicate your occupation and the industry in which you worked at each site. If you allege exposure to Grace asbestos-containing products at multiple sites, the Court has ordered that you must complete a separate Part III for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

Attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease.

## Occupation Codes

| | |
|---|---|
| 01. Air conditioning and heating installer/maintenance | 31. Iron worker |
| 02. Asbestos miner | 32. Joiner |
| 03. Asbestos plant worker/asbestos manufacturing worker | 33. Laborer |
| 04. Asbestos removal/abatement | 34. Longshoreman |
| 05. Asbestos sprayer/spray-gun mechanic | 35. Machinist/machine operator |
| 06. Assembly line/factory/plant worker | 36. Millwright/mill worker |
| 07. Auto mechanic/bodywork/brake repairman | 37. Mixer/bagger |
| 08. Boilermaker | 38. Non-asbestos miner |
| 09. Boiler repairman | 39. Non-occupational/residential |
| 10. Boiler worker/cleaner/inspector/engineer/installer | 40. Painter |
| 11. Building maintenance/building superintendent | 41. Pipefitter |
| 12. Brake manufacturer/installer | 42. Plasterer |
| 13. Brick mason/layer/hod carrier | 43. Plumber - install/repair |
| 14. Burner operator | 44. Power plant operator |
| 15. Carpenter/woodworker/cabinetmaker | 45. Professional (*e.g.*, accountant, architect, physician) |
| 16. Chipper | 46. Railroad worker/carman/brakeman/machinist/conductor |
| 17. Clerical/office worker | 47. Refinery worker |
| 18. Construction - general | 48. Remover/installer of gaskets |
| 19. Custodian/janitor in office/residential building | 49. Rigger/stevedore/seaman |
| 20. Custodian/janitor in plant/manufacturing facility | 50. Rubber/tire worker |
| 21. Electrician/inspector/worker | 51. Sandblaster |
| 22. Engineer | 52. Sheet metal worker/sheet metal mechanic |
| 23. Firefighter | 53. Shipfitter/shipwright/ship builder |
| 24. Fireman | 54. Shipyard worker (md. repair, maintenance) |
| 25. Flooring installer/tile installer/tile mechanic | 55. Steamfitter |
| 26. Foundry worker | 56. Steelworker |
| 27. Furnace worker/repairman/installer | 57. Warehouse worker |
| 28. Glass worker | 58. Welder/blacksmith |
| 29. Heavy equipment operator (includes truck, forklift, & crane) | 59. Other |
| 30. Insulator | |

## Industry Codes

| | |
|---|---|
| 001. Asbestos abatement/removal | 109. Petrochemical |
| 002. Aerospace/aviation | 110. Railroad |
| 100. Asbestos mining | 111. Shipyard-construction/repair |
| 101. Automotive | 112. Textile |
| 102. Chemical | 113. Tire/rubber |
| 103. Construction trades | 114. U.S. Navy |
| 104. Iron/steel | 115. Utilities |
| 105. Longshore | 116. Grace asbestos manufacture or milling |
| 106. Maritime | 117. Non-Grace asbestos manufacture or milling |
| 107. Military (other than U.S. Navy) | 118. Other |
| 108. Non-asbestos products manufacturing | |



**E.   PART IV – Indirect Exposure to Grace Asbestos-Containing Products**

In Part IV, please provide the information requested for any injury alleged to have been ca
asbestos-containing products through contact/proximity with another injured person.  If y
contact/proximity with multiple injured persons, please complete a separate Part IV for each injured person.  For your
convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.

**F.   PART V – Exposure to Non-Grace Asbestos-Containing Products**

In Part V, please provide the requested information for each party against which you have filed a lawsuit and/or claim
alleging exposure to asbestos-containing products other than Grace products.  If you filed such lawsuits and/or claims against
multiple parties, the Court has ordered that you must complete a separate Part V for each party.  If exposure was in
connection with your employment, use the list of occupation and industry codes in Part III to indicate your occupation and
the industry in which you worked.  For your convenience, additional copies of Part V are attached as Appendix F to this
Questionnaire.

**G.   PART VI – Employment History**

In Part VI, please provide the information requested for each industrial job you have held, other than jobs already listed in
Parts III or V.  Use the list of occupation and industry codes in the instructions to Part III to indicate your occupation and the
industry in which you worked for each job.  Please use the copy of Part VI attached as Appendix G to this Questionnaire if
additional space is needed.

**H.   PART VII – Litigation and Claims Regarding Asbestos and/or Silica**

In Part VII, please describe any lawsuits and/or claims that were filed by you or on your behalf regarding asbestos or silica.

**I.   PART VIII – Claims by Dependents or Related Persons**

Part VIII is to be completed only by dependents or related persons (such as spouse or child) of an injured person who sued
the Debtors before April 2, 2001 for an asbestos-related personal injury or wrongful death claim against Grace not involving
physical injury to him-/herself on account of his/her own exposure.  One example of such a claim would be a claim for loss
of consortium.  If you are asserting such a claim, complete the entire Questionnaire, providing all information and
documentation regarding the injured person.

**J.   PART IX – Supporting Documentation**

In Part IX, please mark the boxes next to each type of document that you are submitting with this Questionnaire.  As
indicated in the instructions to Parts II and III, this Questionnaire must be accompanied by copies, with access to originals
upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that (a) support or
conflict with your diagnosis and/or (b) establish exposure to Grace asbestos-containing products as having a substantial
causal role in the development of the medical diagnoses, and/or conditions claimed.  Original documents provided to Grace
will be returned within a reasonable time after its professionals and experts have reviewed the documents.

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in
which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please
indicate the documents for which you are seeking reimbursement and attach a receipt for such cost.

**K.   PART X – Attestation that Information is True, Accurate and Complete**

By signing Part X, you, the injured person, are attesting and swearing, under penalty of perjury, that, to the best of your
knowledge, all of the information in this Questionnaire is true, accurate and complete.  If the injured person is deceased, then
the executor of the person's will (or similar estate representative) must complete and sign Part X on behalf of the injured
person.

The legal representative of the injured person must complete and sign Part X where indicated.

**PART I: IDENTITY OF INJURED PERSON AND LEGAL COUNSEL**

WR GRACE PIQ 59076-0007

**a.  GENERAL INFORMATION**          **REDACTED**

REDACTED

1.  **Name of Claimant:** _____          **Gender:** ☒ Male ☐ Female
    First          MI          Last

3.  **Race (for purposes of evaluating Pulmonary Function Test results):**.................... ☐ White/Caucasian

    ☐ African American

    ☐ Other

4.  **Last Four Digits of Social Security Number:** _____    5.  **Birth Date:** _____

6.  **Mailing Address:** _____
    Address          City          State/Province          Zip/Postal Code

7.  **Daytime Telephone Number:**................................................ ( __ __ __ ) __ __ __ - __ __ __ __

**b.  LAWYER'S NAME AND FIRM**

1.  **Name of Lawyer:** _____ Philip Atterley

2.  **Name of Law Firm With Which Lawyer is Affiliated:** _____ Paul Hanley & Harley LLP

3.  **Mailing Address of Firm:** _____ 1608 4th St Berkeley CA 94710
    Address          City          State/Province          Zip/Postal Code

4.  **Law Firm's Telephone Number or Lawyer's Direct Line:**.................... (510) 559-9980

    ☒ Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in lieu of sending such materials to you.

**c.  CAUSE OF DEATH (IF APPLICABLE)**

1.  **Is the injured person living or deceased?**.................................................. ☐ Living ☒ Deceased
    If deceased, date of death: ................................................................ 06/13/1998

2.  **If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete the following:**
    **Primary Cause of Death (as stated in the Death Certificate):** _Respiratory failure_
    **Contributing Cause of Death (as stated in the Death Certificate):** _Restrictive lung Disease, Asbestosis_

**PART II: ASBESTOS-RELATED CONDITION(S)**

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1.  **Please check the box next to the condition being alleged:**
    ☐ Asbestos-Related Lung Cancer          ☐ Mesothelioma
    ☐ Asbestosis          ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)
    ☐ Other Asbestos Disease          ☒ Clinically Severe Asbestosis

    a.  **Mesothelioma:** If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following (check all that apply):
        ☐ diagnosis from a pathologist certified by the American Board of Pathology
        ☐ diagnosis from a second pathologist certified by the American Board of Pathology
        ☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial causal role in the development of the condition
        ☐ other (please specify): _____

1

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE PIQ 59076-0008

b.  **Asbestos-Related Lung Cancer:** If alleging Asbestos-Related Lung Cancer, were y lung cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs of Pneumoconioses* (2000)

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

☐ other (please specify):_____

c.  **Other Cancer:**

(i)  If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

☐ colon      ☐ pharyngeal      ☐ esophageal      ☐ laryngeal      ☐ stomach cancer

☐ other, please specify: _____

(ii)  Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

☐ findings by a pathologist certified by the American Board of Pathology

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ evidence of asbestosis determined by pathology

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

☐ other (please specify): _____

2

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE PIQ 58078-0009

**d.   Clinically Severe Asbestosis:** If alleging Clinically Severe Asbestosis, was your diagnosis (check all that apply):

[ ] diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

[ ] a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

[ ] a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

[✓] asbestosis determined by pathology

[ ] a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing: Selection of Reference Values and Interpretive Strategies,* demonstrating total lung capacity less than 65% predicted

[ ] a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing: Selection of Reference Values and Interpretive Strategies,* demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

[ ] a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

[✓] other (please specify): <u>report of a board certified pathologist attributing death to asbestosis</u>

**e.   Asbestosis:** If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

[ ] diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

[ ] a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs of Pneumoconioses* (2000)

[ ] a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

[ ] asbestosis determined by pathology

[ ] a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing: Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

[ ] a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

[ ] other (please specify): _____

3

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE PIQ 59078-0010

f.   **Other Asbestos Disease:** If alleging any asbestos-related injuries, medical diagnoses, and those above, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ diagnosis determined by pathology

☐ a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a second B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading other than those described above

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEVI/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a pulmonary function test other than that discussed above

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☑ a CT Scan or similar testing

☐ a diagnosis other than those above

☐ other (please specify): _____

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

4

## PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

**2.  Information Regarding Diagnosis**

Date of Diagnosis: ............................................ 10 / _____

Diagnosing Doctor's Name: _Samuel Hammar_

Diagnosing Doctor's Specialty: _Pathology_

Diagnosing Doctor's Mailing Address: _760 Lebo Blvd . BOBox 2471_
                                                          Address

_Bremerton_                                    _WA_                        _98310_
City                                           State/Province             Zip/Postal Code

Diagnosing Doctor's Daytime Telephone Number: ........................................ ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

With respect to your relationship to the diagnosing doctor, check all applicable boxes:

Was the diagnosing doctor your personal physician? ................................................................................... ☐ Yes ☒ No

Was the diagnosing doctor paid for the diagnostic services that he/she performed? ................................... ☒ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _James Miller_

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor? ........... ☐ Yes ☒ No

Was the diagnosing doctor referred to you by counsel? ............................................................................ ☒ Yes ☐ No

Are you aware of any relationship between the diagnosing doctor and your legal counsel? ....................... ☐ Yes ☒ No

*If yes, please explain:* _____

Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the diagnosis? ................................................................................................... ☐ Yes ☒ No

Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis? .......................................................................................................................................... ☒ Yes ☐ No

Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to diagnosis? .......................................................................................................................................... ☒ Yes ☐ No

Did the diagnosing doctor perform a physical examination? ..................................................................... ☐ Yes ☒ No

Do you currently use tobacco products? ................................................................................................... ☐ Yes ☒ No

Have you ever used tobacco products? ...................................................................................................... ☒ Yes ☐ No

*If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco products and the dates and frequency with which such products were used:*

☒ Cigarettes       Packs Per Day (half pack = .5) _1_       Start Year _1948_ End Year _1998_

☐ Cigars           Cigars Per Day _____                    Start Year __ __ __ __ End Year __ __ __ __

☐ If Other Tobacco Products, please specify (e.g., chewing tobacco): _____
                   Amount Per Day _____                    Start Year __ __ __ __ End Year __ __ __ __

Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")? ................... ☐ Yes ☐ No

*If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:*

_____

**3.  Information Regarding Chest X-Ray**

Please check the box next to the applicable location where your chest x-ray was taken (check one):

☐ Mobile laboratory ☐ Job site ☐ Union Hall ☐ Doctor office ☐ Hospital ☐ Other: _N/A_

Address where chest x-ray taken: _N/A_
                                 Address

_____
City                                           State/Province             Zip/Postal Code

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE PIQ 68078-0012

4. **Information Regarding Chest X-Ray Reading**

    Date of Reading: _ _ / _ _ / _ _ _ _    N/A      ILO score: _____

    Name of Reader: _____

    Reader's Daytime Telephone Number: ............................................... ( _ _ _ ) _ _ _ - _ _ _ _

    Reader's Mailing Address: _____
    Address

    City _____ State/Province _____ Zip/Postal Code _____

    With respect to your relationship to the reader, check all applicable boxes:

    Was the reader paid for the services that he/she performed........................................................... ☐ Yes  ☐ No

    *If yes, please indicate who paid for the services performed:* _____

    Did you retain counsel in order to receive any of the services performed by the reader? ............................. ☐ Yes  ☐ No

    Was the reader referred to you by counsel? ........................................................................ ☐ Yes  ☐ No

    Are you aware of any relationship between the reader and your legal counsel? ........................................ ☐ Yes  ☐ No

    *If yes, please explain:* _____

    Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?

    ........................................................................................................ ☐ Yes  ☐ No

    *If the reader is not a certified B-reader, please describe the reader's occupation, specialty, and the method through which the reading was made:* _____

5. **Information Regarding Pulmonary Function Test:** .............................Date of Test: _ _ / _ _ / _ _ _ _

    List your height in feet and inches when test given: ............................_____ ft _____ inches

    List your weight in pounds when test given: ................... N/A ................._____ lbs

    Total Lung Capacity (TLC):.................................................................._____% of predicted

    Forced Vital Capacity (FVC): .............................................................._____% of predicted

    FEV1/FVC Ratio: ............................................................................_____% of predicted

    Name of Doctor Performing Test (if applicable): _____

    Doctor's Specialty: _____

    Name of Clinician Performing Test (if applicable): _____

    Testing Doctor or Clinician's Mailing Address: _____
    Address

    City _____ State/Province _____ Zip/Postal Code _____

    Testing Doctor or Clinician's Daytime Telephone Number: ........................ ( _ _ _ ) _ _ _ - _ _ _ _

    Name of Doctor Interpreting Test: _____

    Doctor's Specialty: _____

    Interpreting Doctor's Mailing Address: _____
    Address

    City _____ State/Province _____ Zip/Postal Code _____

    Interpreting Doctor's Daytime Telephone Number: ................................ ( _ _ _ ) _ _ _ - _ _ _ _

6

## PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

With respect to your relationship to the doctor or clinician who performed the pulmonary fur[...] applicable boxes:

If the test was performed by a doctor, was the doctor your personal physician? ......................... ☐ Yes ☐ No

Was the testing doctor and/or clinician paid for the services that he/she performed? ................. ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician?.. ☐ Yes ☐ No

Was the testing doctor or clinician referred to you by counsel?........................................... ☐ Yes ☐ No

Are you aware of any relationship between either the doctor or clinician and your legal counsel? ............ ☐ Yes ☐ No

*If yes, please explain:* _____

Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test? ......................................................... ☐ Yes ☐ No

With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:

Was the doctor your personal physician? ................................................................... ☐ Yes ☐ No

Was the doctor paid for the services that he/she performed? ........................................... ☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____

Did you retain counsel in order to receive any of the services performed by the doctor? ............. ☐ Yes ☐ No

Was the doctor referred to you by counsel? ............................................................. ☐ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? ....................... ☐ Yes ☐ No

*If yes, please explain* _____

Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed?.......................... ☐ Yes ☐ No

6. **Information Regarding Pathology Reports:**

Date of Pathology Report: ...................................... _7/28/2000_

Findings: _____ Asbestosis _____

Name of Doctor Issuing Report: _____ William Salyer _____

Doctor's Specialty: _____ Pathology _____

Doctor's Mailing Address: _____ 2450 Ashby Ave _____

                      Address

Berkeley _____ CA _____ 94705

City _____ State/Province _____ Zip/Postal Code

Doctor's Daytime Telephone Number: ............................................. ( ___ ) ___ - ___

With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:

Was the doctor your personal physician? ................................................................. ☐ Yes ☒ No

Was the doctor paid for the services that he/she performed? ......................................... ☒ Yes ☐ No

*If yes, please indicate who paid for the services performed:* _____ Unknown _____

Did you retain counsel in order to receive any of the services performed by the doctor? ............. ☐ Yes ☒ No

Was the doctor referred to you by counsel? ............................................................. ☒ Yes ☐ No

Are you aware of any relationship between the doctor and your legal counsel? ....................... ☐ Yes ☒ No

*If yes, please explain:* _____

Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?

...................................................................................................... ☒ Yes ☐ No

## PART II:  ASBESTOS-RELATED CONDITION(S) (Continued)

WR GRACE  PIQ  50078-0014

7. **With respect to the condition alleged, have you received medical treatment from a docto;** ....................................................................................................☑ Yes ☐ No

*If yes, please complete the following:*

Name of Treating Doctor: _____unKnown_____

Treating Doctor's Specialty: _____unKnown_____

Treating Doctor's Mailing Address: _____unKnown_____
                                    Address

_____
City                                    State/Province              Zip/Postal Code

Treating Doctor's Daytime Telephone number: ...........................( _ _ _ ) _ _ _ - _ _ _ _

Was the doctor paid for the services that he/she performed? ...........................☑ Yes ☐ No

*If yes, please indicate who paid for the services performed:* ___See Objection___

Did you retain counsel in order to receive any of the services performed by the doctor?...............☐ Yes ☑ No


**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

8

## PART III: DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Grace asbestos-containing products
(b) A worker who personally removed or cut Grace asbestos-containing products
(c) A worker who personally installed Grace asbestos-containing products
(d) A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others
(f) If other, please specify.

Site of Exposure:
Site Name: _Stanford-Chevron Oil Refinery_    Location: _Richmond CA_
Site Type: ☐ Residence ☑ Business    Site Owner: _____
Employer During Exposure: _Mike Electrical CO._

Unions of which you were a member during your employment: _6_

WR GRACE PIQ 59078-0016

| | Product(s) | Basis for Identification of Each Grace Product | Dates and Frequency of Exposure (hours/day, days/year) | Occupation Code If Code 59, specify. | Industry Code If Code 118, specify. | Was exposure due to working in or around areas where product was being installed, mixed, removed, or cut? If Yes, please indicate your regular proximity to such areas | Nature of Exposure |
|---|---|---|---|---|---|---|---|
| Job 1 Description: | Fireproofing See Objection | Reasonable Belief | 1975-1976 Intermittently | 21 | 89 | Yes in close proximity | D |
| Job 2 Description: | | | | | | | |
| Job 3 Description: | | | | | | | |
| Job 4 Description: | | | | | | | |
| Job 5 Description: | | | | | | | |
| Job 6 Description: | | | | | | | |

9

## PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PR

WR GRACE PIQ 59076-0016

1.  Are you asserting an injury caused by exposure to Grace asbestos-containing products thro.
    with another injured person? ..................................................................................... ☐ Yes ☐ No

    *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to Grace asbestos-containing products. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.*

2.  Please indicate the following information regarding the other injured person:

    Name of Other Injured Person: _____  Gender: ☐ Male ☐ Female

    Last Four Digits of Social Security Number: __ __ __ __     Birth Date: __ __ / __ __ / __ __

3.  What is your Relationship to Other Injured Person: .................................☐ Spouse   ☐ Child   ☐ Other

4.  Nature of Other Injured Person's Exposure to Grace Asbestos-Containing Products:
    _____

5.  Dates Other Injured Person was Exposed to Grace Asbestos-Containing Products:
    From: __ __ / __ __ / __ __ __ __  To: __ __ / __ __ / __ __ __ __

6.  Other Injured Person's Basis for Identification of Asbestos-Containing Product as Grace Product:
    _____

7.  Has the Other Injured Person filed a lawsuit related to his/her exposure? ........................... ☐ Yes ☐ No

    *If yes, please provide caption, case number, file date, and court name for the lawsuit:*

    Caption: _____

    Case Number: _____  File Date: __ __ / __ __ / __ __ __ __

    Court Name: _____

8.  Nature of Your Own Exposure to Grace Asbestos-Containing Product:
    _____

9.  Dates of Your Own Exposure to Grace Asbestos-Containing Product:
    From: __ __ / __ __ / __ __ __ __  To: __ __ / __ __ / __ __ __ __

10. Your Basis for Identification of Asbestos-Containing Product as Grace Product:
    _____

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

10

## PART V: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products
(b) A worker who personally removed or cut Non-Grace asbestos-containing products
(c) A worker who personally installed Non-Grace asbestos-containing products

(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others
(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed, or cut by others
(f) If other, please specify.

| Party Against which Lawsuit or Claim was Filed: | Product(s) | Dates and Frequency of Exposure (hours/day, days/year) | Occupation Code If Code 59, specify. | Industry Code If Code 118, specify. | Was exposure due to working in or around areas where product was being installed, mixed, removed, or cut? If Yes, please indicate your regular proximity to such areas | Nature of Exposure |
|---|---|---|---|---|---|---|
| **Site of Exposure 1**<br>Site Name:_____<br>Address:_____<br>City and State:_____<br>Site Owner:_____ | Job 1 Description:_____<br>Job 2 Description:_____<br>Job 3 Description:_____ | | | | | |
| **Site of Exposure 2**<br>Site Name:_____<br>Address:_____<br>City and State:_____<br>Site Owner:_____ | Job 1 Description:_____<br>Job 2 Description:_____<br>Job 3 Description:_____ | | | | | |
| **Site of Exposure 3**<br>Site Name:_____<br>Address:_____<br>City and State:_____<br>Site Owner:_____ | Job 1 Description:_____<br>Job 2 Description:_____<br>Job 3 Description:_____ | | | | | |

11

WR GRACE PIQ 59076-0017

## PART VI: EMPLOYMENT HISTORY

WR GRACE PIQ 59076-0019

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial employment, including your current employment.  For each job, include your employer, location of employment, and dates of employment.  Only include jobs at which you worked for at least one month.  Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

Occupation Code: _____ If Code 59, specify: _____

Industry Code: _____ If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
        Address

_____
City               State/Province         Zip/Postal Code

Occupation Code: _____ If Code 59, specify: _____

Industry Code: _____ If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
        Address

_____
City               State/Province         Zip/Postal Code

Occupation Code: _____ If Code 59, specify: _____

Industry Code: _____ If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
        Address

_____
City               State/Province         Zip/Postal Code

Occupation Code: _____ If Code 59, specify: _____

Industry Code: _____ If Code 118, specify: _____

Employer: _____

Beginning of Employment: __ __ / __ __ / __ __ __ __        End of Employment: __ __ / __ __ / __ __ __ __

Location: _____
        Address

_____
City               State/Province         Zip/Postal Code

**PART VII: LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR S**



**REDACTED**

**a.**   **LITIGATION**

1.  Have you ever been a plaintiff in a lawsuit regarding asbestos or silica?................................... ☒ Yes ☐ No

    *If yes, please complete the rest of this Part VII(a) for each lawsuit.  For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2.  Please provide the caption, case number, file date, and court name for the lawsuit you filed:

    Caption: _____ et al v. Raybestos Manhattan Inc Et Al.

    Case Number: 998956 _____ File Date: 11/02/1998

    Court Name: San Francisco. _____

3.  Was Grace a defendant in the lawsuit?................................................................ ☒ Yes ☐ No

4.  Was the lawsuit dismissed against any defendant? .................................................. ☐ Yes ☐ No

    *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

    _____

5.  Has a judgment or verdict been entered?............................................................. ☐ Yes ☒ No

    *If yes, please indicate verdict amount for each defendant(s):* _____

6.  Was a settlement agreement reached in this lawsuit? ............................................ ☐ Yes ☐ No

    *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

    a.   Settlement amount for each defendant: _____

    b.   Applicable defendants:_____

    c.   Disease or condition alleged: _____

    d.   Disease or condition settled (if different than disease or condition alleged):_____

7.  Were you deposed in this lawsuit?..................................................................... ☒ Yes ☐ No

    *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire*

**b.**   **CLAIMS**

1.  Have you ever asserted a claim regarding asbestos and/or silica, including but not limited to a claim against an asbestos trust (other than a formal lawsuit in court)? ...................................................... ☒ Yes ☐ No

    *If yes, please complete the rest of this Part VII(b).  If no, please skip to Part VIII.*

2.  Date the claim was submitted:......................................................... __ __ / __ __ / __ __ __ __

3.  Person or entity against whom the claim was submitted: _____

4.  Description of claim: _____

5.  Was claim settled? ...................................................................................... ☐ Yes ☐ No

6.  Please indicate settlement amount: ................................................. $_____

7.  Was the claim dismissed or otherwise disallowed or not honored? ............................... ☐ Yes ☐ No

    *If yes, provide the basis for dismissal of the claim:*_____

REDACTED

## PART VIII:  CLAIMS BY DEPENDENTS OR RELATED PERSONS

WR GRACE PIQ 59076-0020

Name of Dependent or Related Person: _____                Gender: ☐ Male ☑ Female

Last Four Digits of Social Security Number: _____      Birth Date: _____

Financially Dependent:................................................................................................. ☑ Yes ☐ No

Relationship to Injured Party: ☑ Spouse ☐ Child ☐ Other  If other, please specify _____

Mailing  Address: _____          _____
           Address

City _____          State/Province _____          Zip/Postal Code

Daytime Telephone number: .......................................... (_ _ _) _ _ _ - _ _ _ _

## PART IX:  SUPPORTING DOCUMENTATION

Please use the checklists below to indicate which documents you are submitting with this form.

**Copies:**

☑ Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☑ Pathology reports
☑ Supporting documentation of exposure to Grace asbestos-containing products
☑ Supporting documentation of other asbestos exposure

☐ X-rays
☐ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Depositions from lawsuits indicated in Part VII of this Questionnaire
☑ Death Certification

**Originals:**

☐ Medical records and/or report containing a diagnosis
☐ Lung function test results
☐ Lung function test interpretations
☐ Pathology reports
☐ Supporting documentation of exposure to Grace asbestos-containing products

☐ Supporting documentation of other asbestos exposure
☐ X-rays
☐ X-ray reports/interpretations
☐ CT scans
☐ CT scan reports/interpretations
☐ Death Certification

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:

_____
_____

## PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

The information provided in this Questionnaire must be accurate and truthful.  This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim.  The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both.  18 U.S.C. §§ 152 & 3571.
**TO BE COMPLETED BY THE INJURED PERSON.**

I swear, **under penalty of perjury**, that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate and complete.

Signature: _____          Date:__ __ / __ __ / __ __ __ __

Please Print Name: _____

**TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.**

I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete.

Signature: _Pascal Amell_          Date:_7 / ll / 2006_

Please Print Name: _David Amell_

STATE OF CALIFORNIA
CERTIFICATION OF VITAL RECORD

WR GRACE PIQ 59076-0021

# COUNTY OF SAN MATEO
## HEALTH DEPARTMENT
### SAN MATEO, CALIFORNIA

CERTIFICATE OF DEATH
STATE OF CALIFORNIA
USE BLACK INK ONLY/NO ERASURES, WHITEOUTS OR ALTERATIONS
VS-11 (REV. 7/97)

3199841 002591

STATE FILE NUMBER — LOCAL REGISTRATION NUMBER

REDACTED

| | | |
|---|---|---|
| 64 | DATE OF DEATH: 06/13/1998 | HOUR: 0841 |

MARITAL STATUS: Married

RACE: White

HISPANIC: X No Hispanic

OCCUPATION: Electrician

KIND OF BUSINESS: Department of Electricity

YEARS IN OCCUPATION: 12

DISPOSITION: 06/19/1998

PLACE OF FINAL DISPOSITION: Golden Hills Memorial, 2099 Oriedo Ct., Pacifica, CA 94044

Not Embalmed

FUNERAL DIRECTOR: 06/19/1998 VJD

PLACE OF DEATH: Kaiser Foundation Hospital
1200 El Camino Real — South San Francisco

CAUSE OF DEATH:
IMMEDIATE CAUSE: Respiratory Failure — 998-102BT

WAS CONDITION No

PHYSICIAN'S CERTIFICATION: 04/05/1992 to 06/13/1998

CORONER'S USE ONLY: X NATURAL

Exposed to Asbestosis in the work place for 15 years.

DATE SIGNED: 06/24/1998

TYPED NAME, TITLE OF CORONER OR DEPUTY CORONER: ADRIAN C. MOORMAN, Coroner

STATE REGISTRAR

077889

## CERTIFIED COPY OF VITAL RECORDS

STATE OF CALIFORNIA
COUNTY OF SAN MATEO

DATE ISSUED: 07/03/1998

This is a true and exact reproduction of the document officially registered and placed on file in the office of the SAN MATEO COUNTY HEALTH DEPARTMENT.

SCOTT MORROW, M.D.
HEALTH OFFICER AND REGISTRAR

This copy not valid unless prepared on engraved border displaying seal and signature of County Health Officer.

TO 3-1999 8:06AM    FROM DSL 3604797886



# DIAGNOSTIC SPECIALTIES LABORATORY, INC., P.

**Samuel P. Hammar, M.D., FCCP, FCAP, Director**
**Keith O. Hallman, M.D.**
**David M. Bray III, M.D.**
**Richard A. Cox, M.D., Ph.D.**

*700 Lebo Boulevard/PO 2171*
*Bremerton, Washington 98310*

voice: 360-479-7707
FAX: 360-479-7886
Washington State: 800-762-2344
e-mail: samhammar@wsb-o.net

October 11, 1999

James E. Miller, Attorney at Law
McCarthy, Johnson and Miller
595 Market Street, Suite 2200
San Francisco, CA 94105-2834

Re:                    **REDACTED**

Dear Mr. Miller:

Please find enclosed my report on                    From your letter addressed to me dated September 27, 1999, I know that you are very familiar with                    nistory and will not repeat it.

         had progressive respiratory insufficiency and expired on June 13, 1998.

I reviewed a variety of slides that are referred to in my report. The ones that were most important were the autopsy slides designated AAF98-5. The sections of lung showed significant asbestos-induced pleural disease in the form of visceral pleural fibrosis, parietal pleural fibrosis and hyaline pleural plaques. There was a region of round atelectasis in the right lung. There was diffuse mild alveolar septal interstitial fibrosis. In the iron stains, three ferruginous bodies characteristic of asbestos bodies were identified.

I conclude that          had significant asbestos-induced pleural disease and mild interstitial fibrosis consistent with asbestosis. I conclude these conditions were significant in causing his death.

All opinions and conclusions in my report and in this letter are to a reasonable degree of medical certainty.

If you have any questions concerning my report, please let me know.

Sincerely,

Samuel P. Hammar, M.D.

SPH/mjs

Enclosures

REDACTED

10-13-1999 8:07AM     FROM DSL 3604797886



WR GRACE PIQ 59076-0028

## DIAGNOSTIC SPECIALTIES LABORATORY, INC., P.S.
*700 Lebo Boulevard/PO Box 2171*
*Bremerton, Washington 98310*
*e-mail: samhammar@web-o.net*

Voice: 360-479-7707  Facsimile: 360-479-7886  Washington State: 800-762-2344

| | | | |
|---|---|---|---|
| *Name:* | *Age:* 64 | *Attorney:* | **Miller** |
| | *DOB:* | *DOD:* | 06/13/98 |

**REDACTED**

*Date Received:* **09/27/99**
*Date Transcribed:* **10/09/99**

*Requested:* **James E. Miller, Attorney at Law**

*Specimens:* **Medical records and reports**
**Pathology materials (slides) as follows:**
**2 designated 98-10257**
**2 designated 98-7902**
**1 designated S98-03060**
**1 designated     06024**
**1 designated 97-11419**
**2 designated C97-22639**
**1 designated 95-11460**
**2 designated 93-5119**
**4 designated AAF98 (stained)**
**4 designated AAF98 (unstained)**

*From:* **McCarthy, Johnson & Miller – San Francisco, CA**

Received from James E. Miller, Attorney at Law, McCarthy, Johnson & Miller, San Francisco, California, are two glass slides for review designated for review designated 93-5119, one glass slide for review designated 95-11460, one glass slide for review designated 97-11419, two glass slides for review designated 97-22639, one glass slide for review designated 06024, one glass slide for review designated S98-03060, two glass slides for review designated 98-7902 and two glass slides designated 98-10257. Also received are medical records and reports concerning

According to Mr. Miller's letter addressed to me dated September 27, 1999,          worked as an electrician during his entire working career of 40 years. He worked for R&M electric motor service from 1951 to 1953; for Buzzell Electric Works from 1953 to 1956; for Machine Electric Company from 1956 to 1970; for Dahl-Beck Electric Company from 1971 to 1985; for the City and County of San Francisco from 1985 until 1997 at which time he retired. Mr. Miller stated that Dr. Christine Angeles issued a pulmonary consultation report dated November 9, 1997 in which she stated that          was a 40-pack year cigarette smoker who had quit smoking in 1993.          as stated to have consumed up to four beers per day and discontinued his consumption of alcohol about two weeks prior to his last hospitalization.          was stated to have been treated for a transitional cell bladder cancer in 1995 and a follow-up cystoscopy in 1997 was stated to be negative.          was stated to have been admitted to the Kaiser Hospital in South San Francisco on June 20, 1998 with a diagnosis of pneumonia, respiratory failure and asbestosis. He was stated to have complaints of increasing difficulty breathing.

**REDACTED**

**ACCESSION NO. *L99-499***

Samuel P. Hammar, M.D., F.C.C.P., F.C.A.P., Director   Keith O. Hallman, M.D.   David M. Bray, M.D.   Richard A. Cox, M.D., Ph.D.

10-13-1999  8:07AM      FROM DSL 3604797886

WR GRACE PIQ 69076-0024

*Page 2 of 7*

Mr. Miller's letter goes on to state that              expired on June 13, 1998 and that the discharge summary by Christine Angeles, M.D. dated June 18, 1998 diagnosed respiratory failure from progressive restrictive lung disease with pleural asbestosis and probable parenchymal fibrosis from asbestosis. The death certificate that was dated July 3, 1998 by Christine Angeles, M.D., stated that              died from respiratory failure due to severe restrictive lung disease and asbestosis. Mr. Miller stated that an autopsy dated July 8, 1998 by Dr. John Walsh, which was limited to the heart and lungs, diagnosed pleural fibrosis with interstitial fibrosis and clinical respiratory failure. A CT scan of the chest and abdomen report dated November 14, 1997 by Dr. Richard Dorsay was stated to have identified bilateral pleural effusions somewhat greater on the right than left and a focal area of consolidation in the right lower lobe that had increased since the exam of 1996. A CT scan of the chest and abdomen report dated March 26, 1998 by Dr. Herbert Steinhardt was stated to have noted bilateral pleural effusions and streaky atelectasis in the left lung. The right lung base was stated to have an area of ovoid-shaped consolidation, probably circular pneumonia. A chest radiograph report by Dr. Gloria Chang dated June 11, 1998 was stated to have noted bilateral pleural effusions which were unchanged and diffuse right alveolar infiltrates with focal areas of consolidation at the medial right base and periphery of the right lower lobe.

There is a death certificate from the County of San Mateo Health Department, San Mateo, California, stating that              died on June 13, 1998 at age 64 from respiratory failure due to severe restrictive lung disease due to asbestosis.

There is a pulmonary consultation report by Christine Angeles, M.D., dated November 9, 1997 stating that              was referred to her by Dr. Sally Yu. The reason for the consult was bilateral pleural thickening and weight loss. Dr. Angeles described              as a 63-year-old retired electrician who had lost 20-25 pounds over the past several months and had right lower lateral chest discomfort in the rib cage of about one month that had resolved over the past several weeks and he currently felt well.              was stated to have recalled no chest wall trauma and had no dyspnea on exertion such as climbing stairs. He had no orthopnea, chest pain and cough. Weights recorded on the chart were usually between 120 and 130 pounds and included a weight reported in September 1996 of 128 pounds and a weight recorded in September 1997 of 113 pounds.              was stated to have a history of left lower lobe pneumonia associated with a large left pleural effusion in 1993 which was treated with antibiotics and thoracentesis with a residual left pleural reaction on follow-up x-ray in June 1993. A prior x-ray of April 1992 was stated to have been normal. Follow-up x-rays in April 1993 showed accumulation of the fluid and a small amount of fluid on the right with cardiomegaly and some element of heart failure. Follow-up chest radiograph dated May 1993 was stated to have shown a left pleural reaction vs. loculated fluid and some blunting of the right costophrenic angle. The effusion was tapped and a CT scan of the chest from May, 1993 showed bilateral pleural effusions larger on the left than right with associated left lower lobe collapse. Follow-up x-ray in June 1993 showed resolution of the right-sided effusion and persistence of the left-sided pleural change. A follow-up x-ray in September 1993 was stated to have shown a pleural reaction at the left base with no change from June. The next follow-up chest radiograph was done in September 1995 and showed no change in the left pleural reaction with loculated effusion and some blunting of the left costophrenic angle. The next x-ray was done in October 1996 which was stated to have shown an increased right pleural fluid vs. a pleural reaction. A follow-up x-ray dated September 8, 1997 was unchanged and showed a pleural reaction bilaterally medially in both lung fields with a significantly more pleural reaction. The heart size was stated to be smaller than in October 1996 and lung volumes were stated to seem somewhat smaller.              was stated to be a 40-pack year cigarette smoker who quit smoking in 1993. Other significant history was a transitional cell carcinoma

**ACCESSION NO.** *L99-499*

Samuel P. Hammar, M.D., F.C.C.P., F.C.A.P., Director   Keith O. Hallman, M.D.  David M. Bray, M.D.  Richard A. Cox, M.D., Ph.D.

REDACTED

REDACTED

WR GRACE PIQ 59076-0026

*Page 3 of 7*

REDACTED

of the urinary bladder treated with a negative follow-up cystoscopy in May 1997. This report states that _____ was a retired electrician and had asbestos exposure working on ships 20 years previous in the engine room. He did this work for about 10 years and described it as being hot and dusty. Review of systems was essentially negative except for a decreased appetite and rib pain. On physical examination, Dr. Angeles described _____ as a thin, pleasant man with a temperature of 96° F, , a pulse of 80 per minute, respiratory rate of 16 per minute, blood pressure of 138/73 mm/Hg. and a weight of 109 pounds. Chest exam showed decreased breath sounds at the bases, but no rales or wheezes. Extremities showed no clubbing, cyanosis or edema. Abdomen was negative as was cardiac exam. Lab studies showed a white cell count of 4,200 per microliter, a hemoglobin of 15 grams/dl. and a hematocrit of 43.5%. Serum chemistries were normal. The assessment was that of a gentleman with a 20 pound weight loss with bilateral pleural thickening vs. fluid which had progressed on x-ray since April, 1993. Dr. Angeles stated that in view of history of asbestos exposure, the changes could represent pleural asbestosis which could cause a reaction. A CT scan of the chest and abdomen were scheduled and a pleural biopsy with CT guidance was going to be done if necessary.

There is a bronch report from April, 1998 by Dr. Angeles stating that there were normal vocal cords and no airway abnormalities. Biopsies from the area of infiltrate were obtained under fluoroscopic control and were submitted for pathologic examination including cytology. Material was also sent for culture.

The next report is a transfer summary by Dr. Angeles which dated May 25, 1998-June 5, 1998. This report states that _____ was a pleasant 63-year-old retired electrician who was admitted with progressive worsening dyspnea on the day of admission without cough, fever or chest pain who developed increased peripheral edema. He had been treated as an outpatient for two months on hydrochlorothiazide but that was stopped because of severe hyponatremia with serum sodiums of 118 meq./liter. This report states that _____ was admitted with progressive respiratory failure related to restrictive lung disease from pleural asbestosis and probable left ventricular dysfunction. An echocardiogram was done which showed normal left ventricular size but low normal systolic function, mild bilateral enlargement, moderate mitral regurgitation, moderate tricuspid regurgitation and elevated pulmonary vascular pressures. _____ was stated to have been treated with IV Lasix and Lisinopril. Follow-up chest radiograph did not show clearing of the pulmonary vascular congestion, although the edema was stated to improve. Attempts were made to tap off the effusion but this was not possible and it became apparent that the pleura was quite thickened. An attempt was made at a CT-guided fine needle aspiration biopsy of a significant consolidation on the left but the material that was returned was fluid and was probably of pleural origin. There was also a consideration of underlying chronic obstructive pulmonary disease. Dr. Angeles's discharge diagnoses were: 1) respiratory failure with compensated respiratory acidosis secondary to severe pleural thickening, asbestosis and probable underlying COPD from cigarette smoking; 2) mild congestive heart failure; 3) prior transitional cell carcinoma of the bladder.

There is a report from the emergency room of Kaiser Foundation Hospital dated June 11, 1998 which states that _____ was a 63-year old man with a past history of asbestosis, respiratory failure, mild congestive heart failure and transitional cell carcinoma of the bladder. He was recently hospitalized for worsening shortness of breath and mild congestive heart failure. His condition had worsened in the past at 12 hours and he had a cough that was nonproductive. He was currently on oxygen. His medications included Lasix, Lisinopril, Albuterol, Ibuprofen, Zithromax and Vicodin. Lung exam showed diminished breath sounds throughout all fields and a chest radiograph showed a

ACCESSION NO. *L99-499*

Samuel P. Hammar, M.D., F.C.C.P., F.C.A.P., Director    Keith O. Hallman, M.D.   David M. Bray, M.D.   Richard A. Cox, M.D., Ph.D.

10-13-1999 8:09AM     FROM DSL 3604797886

WR GRACE PIQ 68076-0026

REDACTED

*Page 4 of 7*

REDACTED

new right lower lobe infiltrate.  Chest radiograph by Gloria Chang, M.D. dated June 11, 1998 stated that there were diffuse right alveolar infiltrates with more focal areas of consolidation at the medial right base and at the periphery of the right lower lobe.  There were bilateral pleural effusions that were unchanged and the heart was mildly enlarged.

There is a discharge summary by Christine Angeles, M.D. dated June 13, 1998 which states that Mr. ____ had progressive shortness of breath and respiratory failure and died on June 13, 1998.  The diagnosis at death was respiratory failure from progressive restrictive lung disease with some pleural asbestosis and probable parenchymal fibrosis from asbestosis.

### Review of slides:

There are two glass slides for review designated 93-5119 which correspond to a pathology report bearing that number indicating that the specimens represented biopsies of the left upper lobe posterior segment and left lower lobe.  Biopsy from the left upper lobe posterior segment showed pieces of bronchial mucosal tissue that are somewhat compressed with focal hemorrhage.  The respiratory epithelium is normal.  There is thickening of the basement membrane between the respiratory epithelium and the lamina propria.  The slide designated B, which represents the random biopsy, shows bronchial mucosa and peripheral lung tissue that is compressed.  The peripheral lung tissue shows mild alveolar septal interstitial fibrosis.  No granulomatous inflammation or neoplasm is observed.

There is one glass slide for review designated 95-11460 which corresponds to a pathology report bearing that number indicating that the specimen represented a bladder biopsy.  This slide shows pieces of a papillary transitional cell carcinoma composed of a papillary proliferation of transitional epithelial cells.  There is mild to focally moderate nuclear atypia and some cells have a somewhat squamoid appearance.  No invasion is identified.

There are two glass slides for review designated 97-22639 which correspond to a pathology report bearing that number stating that the specimen represented 600 cc of bloody pleural fluid.  The two slides, which represent smears, show mostly blood with an excess number of lymphocytes.  No malignant cells are observed.

There is one glass slide for review designated S97-11419 which corresponds to a pathology report bearing that number stating that the specimen represented a right pleural biopsy.  The slide shows pieces of parietal pleura and chest wall skeletal muscle admixed with blood.  The pleura shows fibrosis and chronic inflammation.  No primary or metastatic neoplasm is identified.

There is one glass slide for review designated C98-6024 which represents a cytologic preparation of bronchial washing.  This slide shows a background of proteinaceous material, respiratory columnar cells, alveolar macrophages and inflammatory cells.  No malignant cells are observed.

There is one glass slide for review designated S98-3060 that, according to the pathology report bearing that number, represents a right lung bronchoscopic biopsy.  This slide shows pieces of bronchial mucosa and peripheral lung tissue.  The bronchial mucosa is focally surfaced by respiratory epithelium.  There are a few chronic inflammatory cells in the lamina propria.  The peripheral lung tissue is somewhat compressed.  It is difficult to evaluate for fibrosis.  There is no neoplasm or granulomatous inflammation.

ACCESSION NO. *L99-499*

Samuel P. Hammar, M.D., F.C.C.P., F.C.A.P., Director   Keith O. Hallman, M.D.  David M. Bray, M.D.  Richard A. Cox, M.D., Ph.D.



WR GRACE PIQ 68076-0027

*Page 5 of 7*

REDACTED

There are two glass slides for review designated 98-7902 which correspond to a pathology report bearing that number stating that the specimen represented cytologic preparations of left pleural fluid. This slide shows a background of blood with no neoplastic cells.

There are two glass slides for review designated 98-10257 which correspond to a pathology report bearing that number stating that the specimens represented a left pleural aspirate. These slides show mostly blood with no malignant cells.

The remaining eight slides consist of four H&E stained sections and four slides with unstained tissue on them designated S98-5. The slides for review are A, J, K and L. These slides represent findings of the autopsy. The report by Dr. Walsh lists the final anatomic diagnoses on the first page as follows: 1) interstitial pulmonary fibrosis, marked pleural fibrosis; 2) chronic congestive heart failure; 3) early focal respiratory distress syndrome (diffuse alveolar disease); 4) pulmonary hypertension, mild to moderate, focal; 5) incidental bone marrow emboli and acute rib fractures secondary to Code Blue; 6) patchy myocardial fibrosis, left ventricle, mild; 7) pericardial fibrosis; 8) asbestosis by history. The report states that the autopsy was limited to the thoracic contents. The usual Y-shaped thoracoabdominal incision was made. There were non-displaced fractured ribs involving the anterior aspects of the left #3 and #4 ribs and the right #3 rib. The pericardial sac was stated to be obliterated by adhesions. The medial and inferior aspects of both right and left lungs were adherent to the pericardial sac. Moderate pleural adhesions were stated to have been noted above the mid-portion of the left lung and to a greater extent over the mid-portion of the right lung. There was no significant pleural fluid. The inferior aspect of both right and left lungs were described as being prominently thickened over the pleura. An estimated 10 cc of loculated fluid was noted between the lung and the pleural thickening on the right side. The thickening appeared to represent a pleural plaque and measured up to 10 mm in thickness. Under the heading "Cardiovascular System", the pleural cavity was stated to be obliterated by adhesions. No pericardial fluid was present. The pericardial sac was adhesed to the epicardium. The heart was stated to weigh 410 grams. The origin and distribution of the coronary arteries were described as being normal. Sectionings of the coronary arteries were stated to show moderate atherosclerosis. There were no thrombi observed. The endocardium and myocardium were described to measure 18 mm in thickness over the left anterior ventricular wall and the myocardium was unremarkable. The chorda tendinea and papillary muscles were described as being unremarkable. The valve ring circumferences were normal. There was virtually no atherosclerosis of the aorta. The pulmonary artery was stated to contain no thromboemboli. Under the heading "Respiratory System", the left lung was stated to weigh 550 grams and examination of the tracheobronchial tree revealed a small amount of clear fluid. The right lung was described as weighing 650 grams and examination of the tracheobronchial tree revealed a small amount of fluid. No masses were present. There is a code of sections which indicates that slide I represented a pleural plaque from the left inferior lobe. Slides J-K represented sections of the right lung and slide L represented pleural plaque from the right lower lobe. Slide I shows dense hypocellular connective tissue with a basketweave pattern consistent with hyaline pleural plaque caused by asbestos. There is fusion between the visceral and parietal pleura. No neoplasm is observed. Slide J is a section of right lung and pleura. There is fusion of the visceral and parietal pleura with marked fibrosis with focal plaque formation. The visceral pleura shows focal invagination into the underlying lung tissue characteristic of round atelectasis. The parenchyma is compressed and shows areas of mild alveolar septal fibrosis. There is a fair amount of predominantly black dust present in the tissue. In the H&E stained sections, no asbestos bodies are identified. Slide K shows peripheral lung tissue with congestion and atelectasis. There are focal deposits of dust around small bronchi and bronchioles.

### ACCESSION NO. *L99-499*

Samuel P. Hammar, M.D., F.C.C.P., F.C.A.P., Director   Keith O. Hallman, M.D.  David M. Bray, M.D.  Richard A. Cox, M.D., Ph.D.

WR GRACE PIQ 59076-0028

*Page 6 of 7*

The alveolar septae appear congested but otherwise unremarkable. In the H&E stained sections, no ferruginous bodies are observed. Slide L represents dense hypocellular connective tissue with a focal basketweave pattern, the findings being consistent with and characteristic of asbestosis. Iron stains are done in our laboratory on slides with unstained tissue on them designated J and K. These show three ferruginous bodies characteristic of asbestos bodies.

**The following summary statements can be made in this case:** 

1.          was a 64-year old man who was stated to have a history of occupational exposure to asbestos while working as an electrician from approximately 1951 through 1997. Mr.          was stated to have had a 40-pack year history of cigarette smoking, having quit smoking in 1993. —

2.          was referred to Dr. Christine Angeles in November 1997 by Dr. Sally Yu because of bilateral pleural thickening and weight loss. Dr.Angeles described          as being a 63-year old retired electrician with a 20 to 25 pound weight loss and right lower lateral chest discomfort.

3.          was stated to have had a history of a left lower lobe pneumonia associated with a large left pleural effusion in 1993 that was treated with antibiotics and thoracentesis with a residual pleural reaction seen on a follow-up chest radiograph in June 1993.

4. Several additional x-rays taken in 1993 showed the pleural reaction and pleural effusion. A chest radiograph done in September 1995 showed no change in the left pleural reaction with a loculated effusion and blunting of the left costophrenic angle. A follow-up chest radiograph from September 8, 1997 showed a pleural reaction bilaterally.

5.          was stated to have been diagnosed with a urinary bladder carcinoma and follow-up cystoscopy in May 1997 was negative.

6. On physical examination in November 1997, Dr. Angeles described          to be a thin man with a normal temperature, pulse and respiratory rate with a weight of 109 pounds. Chest exam showed decreased breath sounds at the bases but no rales or wheezes. Laboratory studies were mostly normal. Dr. Angeles diagnosed          to have asbestos exposure and changes in the pleura consistent with those caused by asbestos.

7. Dr. Angeles performed a bronchoscopy in April 1998 that showed normal vocal chords and no airway abnormalities.

8. A report by Dr. Christine Angeles dated May 25, 1998 – June 5, 1998 stated that          was admitted because of worsening dyspnea without cough, fever or chest pain. He developed progressive respiratory failure related to restrictive lung disease from pleural asbestosis and possible left ventricular dysfunction. An echocardiogram was stated to show a normal left ventricular size and a low normal systolic function with mild bilateral enlargement with moderate mitral regurgitation and tricuspid regurgitation with slightly elevated pulmonary vascular pressures.

9.          was treated with IV Lasix and Lisinopril. He had no significant improvement with these drugs. Dr. Angeles diagnosed          to have respiratory failure with compensated respiratory acidosis secondary to severe pleural thickening, asbestosis and probable underlying COPD. Also diagnosed was mild congestive heart failure and a prior transitional cell carcinoma of the bladder.

10.          was admitted to the Kaiser Foundation Hospital emergency room on June 11, 1998 with worsening shortness of breath and mild congestive heart failure. Chest radiograph read by Dr. Gloria Chang dated June 11, 1998 stated that there was diffuse right alveolar infiltrates with more focal areas of consolidation at the medial right base. Also diagnosed were bilateral pleural effusions and a slightly enlarged heart.

**ACCESSION NO. *L99-499***

Samuel P. Hammar, M.D., F.C.C.P., F.C.A.P., Director   Keith O. Hallman, M.D.  David M. Bray, M.D.  Richard A. Cox, M.D., Ph.D.

REDACTED

REDACTED

REDACTED

REDACTED

10-13-1999 8:11AM   FROM DSL 3604797886   P. 8



WR GRACE PIQ 59076-0028

**REDACTED**

11. Dr. Angeles's final diagnoses dated June 13, 1998 were progressive shortness of breath and respiratory failure due to progressive restrictive lung disease with pleural asbestosis and probable parenchymal fibrosis from asbestosis.

12. I reviewed the slides that are referred to in my report. The autopsy slides were designated as S98-5. The autopsy was performed by Dr. Walsh who lists the following anatomic diagnoses: 1) interstitial pulmonary fibrosis, marked pleural fibrosis; 2) chronic congestive heart failure; 3) early focal respiratory distress syndrome (diffuse alveolar disease); 4) pulmonary hypertension, mild to moderate, focal; 5) incidental bone marrow emboli and acute rib fractures secondary to Code Blue; 5) patchy myocardial fibrosis, left ventricle, mild; 7) pericardial fibrosis; 8) asbestosis by history.

13. The sections of lung and pleura showed hyaline pleural plaque formation with significantly fibrotic visceral and parietal pleura with focal fusion and fibrothorax formation. There was round atelectasis in the right lung. The pulmonary parenchyma showed mild alveolar septal fibrosis and a fair amount of dust in the tissue. There was congestion and atelectasis. Iron stains of sections from block J and K showed three ferruginous bodies characteristic of asbestos bodies.

14. I conclude that          had significant asbestos-induced pleural disease, round atelectasis and asbestosis. I conclude that these conditions were significant factors in causing his death.

15. All opinions and conclusions in this report are to a reasonable degree of medical certainty.

ACCESSION NO. *L99-499*

Samuel P. Hammar, M.D., F.C.C.P., F.C.A.P., Director   Keith O. Hallman, M.D.   David M. Bray, M.D.   Richard A. Cox, M.D., Ph.D.





MEDICAL CENTER
ANATOMIC PATHOLOGY

July 25, 2000

Revels M. Cayton, M.D.
3300 Webster Street, Suite 304
Oakland, California 94609

RE:                           REDACTED

Dear Doctor Cayton

I have reviewed the pathology materials provided in the above case.  I have not reviewed any pathology reports or other medical records.

The pathology materials provided and my diagnoses:

1.  Kaiser Hospital, South San Francisco, 93-5119, 2 slides

    Lung, transbronchial biopsy:  Negative

2.  Kaiser Hospital, South San Francisco, 95-11460, 1 slide

    ? Site, ? Bladder, biopsy:  Papillary transitional cell carcinoma, Grade 1, non-invasive

3.  Kaiser Hospital, South San Francisco, 97-11419, 1 slide

    ? Site:  Small fragments of skeletal muscle and fibrous connective tissue with mild
             chronic inflammation

4.  Kaiser Hospital, South San Francisco, C97-22639, 2 slides

    ? Site:  Negative

5.  Kaiser Hospital, South San Francisco, 6024, 1 slide

    Bronchial wash:  Negative

6.  Kaiser Hospital, South San Francisco, 98-7902, 2 slides

    ? Site:  Negative

7.  Kaiser Hospital, South San Francisco, 98-10257, 2 slides

    ? Site:  Negative



WR GRACE PIQ 59076-0031

REDACTED

July 25, 2000
Reveis M. Cayton, M.D.
RE:
Page Two

8.  Kaiser Hospital, South San Francisco, S98-3060, 1 slide

    Lung, transbronchial biopsy:  Negative

9.  Kaiser Hospital, South San Francisco, AAF98-5, 4 slides

    Lung and pleura, ? procedure:

        -Pleural plaque and fibrosis
        -Focal sub-pleural fibrosis
        -Focal peribronchiolar fibrosis

10.  Western Medical Center, KS-4293, 2 slides (prepared from above AAF98-5)

    Pleura, ? procedure:  Pleural plaque and fibrosis

11.  Diagnostic Specialties Laboratory, L99-499, 2 slides (prepared from above
     AAF98-5

        Lung, ? procedure (FE stains):  9 asbestos bodies in 6.9 square cm., or
                                        1.3 asbestos bodies per square cm.

The absence of corresponding pathology reports precludes my knowing the source of
some specimens and/or the nature of the procedure employed to obtain the specimens.
The slides listed under specimens 9, 10, and 11 above appear to derive from the same
tissue sample and blocks and show large sections of pleura and lung obtained either by
open biopsy, lobectomy, pneumonectomy, or autopsy.  These sections, as noted, reveal
pleural plaque and fibrosis.  Although focal areas of the pleural abnormalities show
increased cellularity, I cannot establish a diagnosis of desmoplastic mesothelioma on the
basis of this material alone.

11-15-2000  12:53PM    FRO                                                      P.2

WR GRACE  PIQ  59076-0032

REDACTED

July 25, 2000
Revels M. Cayton, M.D.
RE:
Page Three

The patient had prior occupational-level exposure to asbestos fibers, as documented by
the increased concentration of asbestos bodies in the lung parenchyma and as suggested
by the presence of pleural plaque. In my opinion, interstitial fibrosis is not present in this
material. Thus, I would not establish a diagnosis of asbestosis. However, the presence of
focal peribronchiolar fibrosis and of an elevated concentration of asbestos bodies satisfy
the CAP-NIOSH criteria for a diagnosis of Grade I asbestosis.

Please let me know if there are specific questions which I have not addressed in the above
evaluation.

Sincerely

William R. Salyer, M.D.

WRS/w



1   HARRY F. WARTNICK, ESQ., State Bar No. 54761
    WARTNICK, CHABER, HAROWITZ,
2     SMITH & TIGERMAN
    101 California Street, 22nd Floor
3   San Francisco, CA 94111                    **FILE COPY**
    Telephone: (415) 986-5566
4
    Attorneys for PLAINTIFFS
5

6

7

8                   SUPERIOR COURT OF CALIFORNIA

9                     COUNTY OF SAN FRANCISCO

10

11                                    )  No. 998956
    Individually and as Successor-    )
12  in-Interest to the Estate of      )  **PLAINTIFF'S ANSWERS TO**
                         Decedent;     )  **STANDARD INTERROGATORIES**
13                                    )  **PROPOUNDED BY DEFENDANTS**
                                      )
14          **REDACTED**               )  (Wrongful Death)
                                      )
15                                    )  Set 1
              Plaintiffs,             )
16                                    )
      vs.                             )
17                                    )
    RAYBESTOS-MANHATTAN, INC.,        )
18  et al.,                           )
                                      )
19                Defendants.         )
                                      )
20  _____)

21      Comes now plaintiff and responds to defendants' wrongful
    death interrogatories as follows.  Please note that plaintiff has
22  only just begun discovery in this case and that discovery is
    continuing with respect to each interrogatory and
23  sub-interrogatory.  In addition, plaintiff respectfully objects to
    each interrogatory and sub-interrogatory insofar as it calls for
24  privileged work product or privileged attorney-client
    communication and insofar as it constitutes an invasion of privacy
25  as guaranteed by Article I, Section I of the California
    Constitution.  Without waiving these objections, plaintiff
26  responds as follows:

28

                              - 1 -


    **REDACTED**

WR GRACE PIQ 59076-0034

```
 1    1A    A.
 2          B.
            C.
 3          D.
            E.
 4          F.
            G.
 5          H.
            I.
 6          J.                        REDACTED
            K.
 7          L.
            M.
 8          N.
            O.
 9          P.
            Q.
10          R.
            S.

11    1B    A.
            B.
12          C.
            D.
13          E.
            F.
14          G.
            H.
15          I.                       REDACTED
            J.
16          K.
            L.
17
            M.
18          N.
            O.
19          P.
            Q.
20          R.

21          S.

22
            T.
23

24    2.    (1)

25
                                      REDACTED
26

28
```

REDACTED

WR GRACE PIQ 60076-0035

```
  1    (2)  A.
            B.
  2         C.
            D.
  3         E.
            F.
  4
       (3)  A.
  5         B.
            C.
  6         D.
            E.
  7         F.
  8    (4)  A.
            B.
  9         C.
            D.
 10         E.
            F.
 11
  3.   A.
 12         B.
       C.   No.
 13    D.   Retired.
 14  4.   A.
       B.   Father
 15    C.   Plaintiff believes decedent's father passed away when
            decedent was approximately 9 or 10 years old.  Discovery
 16         is continuing.
       D.   Unknown.
 17    E.   Plaintiff is currently unaware of cause of death.
            Plaintiff believes the cause of death may have been
 18         respiratory disease.
       F.
 19    G.   Plaintiff is not in the possession of any documents
            relative to this interrogatory.
 20
  5.   Plaintiff respectfully objects to this interrogatory as being
 21    overbroad, burdensome and oppressive.  Without waiving this
       objection, plaintiff can recall the following:
 22    (1)  Plaintiff believes decedent resided in
                        from his birth until approximately 1945
 23         (decedent was 11 years old when he came to the United
            States).
 24    (2)  Decedent resided at
            for at least 5 years prior to 1975.
 25    (3)  Plaintiff and her husband resided at

 26    (4)
 28    Discovery is continuing.
```

REDACTED

REDACTED



WR GRACE PIQ 59076-0036

6.  Plaintiff is currently unaware of any other education
    background of the decedent other than that he completed the
    10th or 11th grade of high school.

7.                          **REDACTED**

8.  No.

9.  No.  Decedent received a draft card but he was never
    inducted.  Decedent had four children at the time of draft.

10. Objection.  Plaintiff does not have personal knowledge that
    is responsive to this interrogatory; the information sought
    in the sub-parts of this interrogatory is not readily
    available and would be burdensome to obtain; it necessitates
    the preparation and the making of a compilation, abstract or
    summary of other documents that are readily available to
    defendants, and in part, seeks information that is
    irrelevant, immaterial, not likely to lead to the discovery
    of admissible evidence and violates the state and federal
    right to privacy.  Notwithstanding said objections, decedent
    became a Kaiser member in 1985 (Kaiser No. 3624052) and he
    frequented the Kaiser San Francisco and South Francisco
    facilities.  At the time of death he was still a Kaiser
    member and it is plaintiff's understanding that at all times
    the only medical care decedent received was through Kaiser.
    Discovery is continuing.

11. Objection.  Plaintiff does not have personal knowledge that
    is responsive to this interrogatory; the information sought
    in the sub-parts of this interrogatory is not readily
    available and would be burdensome to obtain; it necessitates
    the preparation and the making of a compilation, abstract or
    summary of other documents that are readily available to
    defendants, and in part, seeks information that is
    irrelevant, immaterial, not likely to lead to the discovery
    of admissible evidence and violates the state and federal
    right to privacy.  Notwithstanding said objections, decedent
    became a Kaiser member in 1985 (Kaiser No. 3624052) and he
    frequented the Kaiser San Francisco and South Francisco
    facilities.  At the time of death he was still a Kaiser
    member and it is plaintiff's understanding that at all times
    the only medical care decedent received was through Kaiser.
    Discovery is continuing.

12. Please see the prefatory remarks to Interrogatory No. 10 that
    are incorporated herein by this reference.  In addition,
    please see plaintiff's answers to Interrogatory Nos. 10 and
    11.  Plaintiff believes that numerous x-rays and/or CT/high
    resolution CT scans would have been taken of decedent by each
    doctor at Kaiser hospital.  Regarding subpart (e) for this
    interrogatory, plaintiff believes that Berry & Berry will
    obtain copies of such x-rays and/or CT/high resolution CT

                              - 4 -

**REDACTED**



WR GRACE PIQ 59076-0037

scans based on the decedent's medical records.  Attached heretofore are the Radiology Report of 6/11/98 by Dr. Chang, and Cytopathology Report of 4/29/98 by Dr. Huang.  Discovery is continuing.

13. Please see introductory remarks to Interrogatory No. 10 that are incorporated herein by this reference.  Please also see answers to Interrogatory Nos. 10, 11, and 12.  Attached heretofore is the Pulmonary Consultation Report of 11/9/97 by Dr. Angeles.  Discovery is continuing.

14. Plaintiff provides the following information based on her best recollection and without having reviewed decedent's medical records:  Decedent took numerous medications during the course of his illness.  Plaintiff kindly refers you to decedent's medical records where descriptions of these medications can be found.  Discovery is continuing.

15. Plaintiff has identified medical treatment she recalls decedent receiving in her answers to Interrogatory Nos. 10, 11, 12 and 13.  She believes that all medical reports pertaining to this treatment will be subpoenaed by the law firm of Berry and Berry based on plaintiff's answers to interrogatories.  If there are any medical reports to which this inquiry is addressed, plaintiff believes that they would be found in those records.  Attached heretofore are a copy of the following reports:  Emergency Room Record of 4/11/93 by Patricia R. Salber, M.D.; Discharge Summary of 4/29/93 by Clinton Thompson, M.D.; History & Physical of 4/20/93 by Laurie J. Weisberg, M.D.; Bronchoscopy of 6/4/93 by Christopher Tyler, M.D.; History & Physical of 12/1/95 by Mark Gasparini, M.D.; Chest x-ray report of 10/1/96 by D. Klein, M.D.; Bronchoscopy Report of 4/1/98 by Christine Angeles, M.D.; Transfer Summary of 6/5/98 by Dr. Angeles; Cytopathology Consultation Report of 4/29/98 by Drs. Cyrus Safai and Christine Angeles; Discharge Summary of 6/18/98 by Dr. Angeles; Chest x-ray report of 6/11/98 by Gloria Chang, M.D.; Emergency Room Record of 6/11/98 by Barbara Curry-Kaufman, M.D.

Discovery is continuing.

16. With respect to subparts (e) and (f), please see introduction to Interrogatory No. 10 and decedent's medical records.  With respect to subpart (g), plaintiff respectfully objects on the grounds of work product privilege, attorney-client privilege and on the grounds that this question calls for expert opinions and calls for legal and medical conclusions.  Without waiving these objections, plaintiff responds to the remainder of the interrogatory as follows:

A.  Decedent was admitted to Kaiser San Francisco on 4/11/93 with complaints of shortness of breath, coughing up sputum streaked with blood, back and rib pain.  He was

- 5 -

REDACTED

 

WR GRACE PIQ 58076-0038

1         diagnosed with pneumonia and pleural effusion.

    B.   Decedent's condition continued to worsen.

2   C.   Decedent continued to suffer shortness of breath, dry cough, back and rib pain, and general malaise.  He

3       further suffered a collapsed left lung, increased weight loss, chronic pleural thickening, and shortness of

4       breath upon exertion of any activity.

    D.   All parts of decedent's body were affected.

5   E.   Please see introductory statement to this interrogatory.

    F.   Please see introductory statement to this interrogatory.

6   G.   Decedent took an age-related retirement on 10/17/97; however, plaintiff believes it was because her husband

7       was always out of breath and tired.

    H.   Not applicable.

8   I.  . Please refer to decedent's medical records.

9    Discovery is continuing.

10  17.  To avoid the risk of speculating as to information that cannot possibly be within the plaintiffs' personal knowledge,

11      plaintiffs kindly refer you to decedent's medical records.

12      Notwithstanding this reference, plaintiff responds as follows to the best of her knowledge:  decedent was diagnosed with

       asbestosis in 1998.

13   A.   Chronic pleural asbestosis.

    B.   February 1998.

14   C.   Decedent was admitted to Kaiser-So. SF on May 25, 1998,

15      for progressive respiratory failure, related to progressive pleural thickening from asbestosis and COPD.

16      Dr. Angeles discussed the poor prognosis, relation to asbestosis, and end of life care with plaintiff and her

       husband.

17   D.   Discovery is continuing.

    E.   Various tests, examinations, and evaluations.  Please

18      refer to decedent's medical records.

    F.   Dr. Christine Angeles, M.D., Kaiser Permanente, So. San

19      Francisco, CA.

    G.   Plaintiff's attorneys were advised.  Any further

20      information about that is privileged work product and/or attorney-client communication.

21   H.   Not applicable.  Decedent was retired in October 1997.

    I. .  Please refer to decedent's medical records.

22   J.   Please refer to decedent's medical records.

    K.   Plaintiff respectfully objects to this interrogatory

23      insofar as it calls for the disclosure of consultants, or the early disclosure of expert witnesses.  Please

24      refer to decedent's medical records.

    L.   Please refer to decedent's medical records and attached

25      medical reports.

26    Discovery is continuing.

28  18.  Plaintiff is currently not informed of any other factors that

REDACTED




WR GRACE PIQ 59076-0039

caused decedent's symptoms described above.  However, decedent was diagnosed with progressive respiratory failure related to progressive pleural thickening from asbestosis and underlying chronic obstructive pulmonary disease just prior to his death.  Please see decedent's medical records and medical reports attached.  Discovery is continuing.

19.  Yes.  Please see copy of Death Certificate attached.
   A.  Yes.
   B.

   C.                       REDACTED
   D.
   E.

   F.  Cause of Death:  **Respiratory failure** Due to:  **severe restrictive lung disease** Due to:  **asbestosis.**  Describe How Injury Occurred (Events Which Resulted In Injury):  **Exposed to Asbestosis in the work place for 15 years.**
   G.  6/13/98; 0841.

20.  Yes.  Please see copy of Autopsy Report attached.
   A.                   address above.
   B.  Spouse.
   C.  To determine cause of death.
   D.  Heart and lungs only.
   E.  Autopsy was performed by J. W. Walsh, M.D., Kaiser Permanente, So. San Francisco.
   F.  Please refer to Discharge Summary by Dr. Angeles reported 6/18/98, attached hereto.
   G.  6/17/98; 11:30 a.m.
   H.  1. Pleural fibrosis with interstitial pulmonary fibrosis and clinical respiratory failure; 2. Pericardial fibrosis; 3. Congestive heart failure; 4. coronary sclerosis, mild-moderate.
   I.  A copy of the report is attached.
   J.  Yes.
   K.  See attached.

21.  Plaintiff does not know all of the pathology slides that exist at this time and, therefore, kindly refers you to decedent's medical records.  Discovery is continuing.

22.  Plaintiff is currently unaware of any personal injuries suffered by decedent other than those involved in this lawsuit.  Discovery is continuing.

23.  Yes.
   A.  Plaintiff has a history of smoking 1 pack per day for 40 years.  He attempted to quit in 1993, and eventually reduced the amount of cigarettes to 1 cigarette per day.
   B.  Marlboro.
   C.  Daily.

REDACTED




WR GRACE PIQ 59076-0040

D.    One pack per day for 40 years until 1993.
E.    Marlboro.
F.    Please refer to decedent's medical records.  Plaintiff
      does not have that information.

24.  No.

25.  Plaintiff respectfully objects to this interrogatory as being
     irrelevant and unlikely to lead to the discovery of relevant
     evidence, an invasion of plaintiff's privacy, and on the
     grounds that it assumes a pattern of alcohol consumption over
     the decedent's lifetime.  Without waiving these objections,
     plaintiff responds as follows:  Plaintiff believes decedent
     consumed 2 beers upon return from work during the week, and
     during the weekend he would consume 5 to 6 alcoholic drinks.

26.  Objection.  This interrogatory seeks information that is
     irrelevant, immaterial; violates plaintiff's state and
     federal right to privacy and is not reasonably calculated to
     lead to the discovery of admissible evidence.
     Notwithstanding said objection, plaintiff will provide an
     amended response outlining her work history during the time
     she was married to decedent.

27.  A.
     B.    Decedent was a member of the IBEW for approximately 40
           years.

28.  Plaintiff is currently unaware when decedent first learned,
     or if he in fact was ever informed, that exposure to asbestos
     was a health hazard.  Discovery is continuing.

29.  Plaintiff is currently unaware when decedent, or if he in
     fact ever observed anyone using any safety precaution while
     working around raw asbestos or asbestos-containing
     material(s).  Discovery is continuing.

30.  Plaintiff is currently unaware whether decedent ever used any
     safety precaution while working around raw asbestos or
     asbestos-containing material(s).  Plaintiff is currently
     unaware whether plaintiff was ever informed of the health
     hazards of exposure to raw asbestos and asbestos-containing
     material(s).

31.  Plaintiff was required to take a physical examination before
     he became employed by the City and County of San Francisco in
     1985.  Plaintiff is currently unaware of any other
     information relative to this interrogatory.  Discovery is
     continuing.

32.  Plaintiff is currently unaware of any other exposure to
     asbestos at this time.  Discovery is continuing.

- 8 -

REDACTED



WR GRACE PIQ 68078-0041

1   33.   No.

2   34.   Decedent took an age-related retirement from his employment
        with the City and County of San Francisco on October 17,
3        1997.

4   35.   Yes.  Decedent began receiving retirement benefits from the
        following entities and Social Security in approximately
5        December 1997:   (1) Northern CA Electrical Workers' Pension;
        $410 per month.   (2) IBEW; $55.04 per month.   (3) National
6        Electrical Benefit Fund; $399.07 per month.   (4) Social
        Security; $1160.00 per month.  Decedent received these
7        benefits throughout the remainder of his life.

8   36.   Plaintiff responds by reference to decedent's Social
        Security Records, attached.
9
    37.   No.
10
11  38.   Yes.  Plaintiff does not know the total of hospital expenses
        at this time.  Plaintiff believes that Berry & Berry will
        order hospital bills and make them available to defendants.
12        Discovery is continuing is this regard.

13  39.   Yes.  Plaintiff does not know the total of these medical
        expenses at this time.  Plaintiff believes that Berry & Berry
14        will order medical bills and make them available to
        defendants.  Discovery is continuing is this regard.
15
16  40.   Plaintiff respectfully objects to this interrogatory on the
        grounds that it is irrelevant and not calculated to lead to
        the discovery of relevant evidence.  Indeed, the information
17        called for in this interrogatory falls under the collateral
        source doctrine.  Without waiving this objection, the
18        information sought can be found in the billing records of the
        health care providers whose records you will be acquiring by
19        authorization or subpoena, and pursuant to C.C.P. Section
        2030(d), plaintiff respectfully declines to make the
20        compilation sought in this interrogatory and directs you to
        the original records from which you can make this
21        calculation.

22  41.   No.

23  42.   No.

24  43.   No.

25  44.   No.

26

28

- 9 -

REDACTED

WR GRACE PIQ 69076-0042

1    45.  No.

2    46.  No.

3    47.  Yes.  Decedent's social security records are attached.

4    Dated: July 8, 1999.          WARTNICK, CHABER, HAROWITZ,
                                    SMITH & TIGERMAN
5

6

7                                   By:  _____
                                         COURTNEY S. LUI
8
                                    Attorneys for PLAINTIFF
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

28

- 10 -

**REDACTED**

  

WR GRACE PIQ 59076-0043

1   HARRY F. WARTNICK, ESQ., State Bar No. 54761
    RICHARD A. BRODY, ESQ., State Bar No. 100379
2   WARTNICK, CHABER, HAROWITZ, SMITH & TIGERMAN
    101 California Street, 22nd Floor
3   San Francisco, CA  94111
    Telephone:  (415) 986-5566
4
    Attorneys for PLAINTIFFS



5
6
7
8           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9           IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

10
                                    , Individually  )       No.  998956
11  and as Successor-in-Interest to the            )
    Estate of                                      )       PLAINTIFF'S AMENDED
12  Decedent;                                      )       RESPONSES TO STANDARD
              REDACTED                             )       INTERROGATORIES
13                                                 )       PROPOUNDED BY DEFENDANTS
                                                   )
14          Plaintiffs,                            )       (Wrongful Death)
                                                   )
15  vs.                                            )       Set 2
                                                   )
16  RAYBESTOS-MANHATTAN, INC., et al.              )
                                                   )
17          Defendants.                            )
                                                   )
18  _____               )       REDACTED

19
20          COMES NOW plaintiff                            and responds to defendants' standard

    interrogatories (wrongful death), set 2, as follows.  Please note that the plaintiff has only just
21
    begun discovery in this case and that discovery is continuing with respect to each interrogatory
22
    and sub-interrogatory.
23
            Plaintiff's responses to defendants' standard interrogatories (wrongful death), set 2,
24
    contain the most responsive information plaintiff is able to recall to date.  Plaintiff anticipates
25
    that she will recall further details regarding the circumstances of asbestos exposure until trial.
26
    Plaintiff provides her responses without prejudice to supplementation during the continuing
28

                                        - 1 -

  

WR GRACE PIQ 59078-0044

1   prosecution of this case.

2       In addition, plaintiff respectfully objects to each interrogatory and sub-interrogatory

3   insofar as it calls for privileged work product or privileged attorney-client communication and

4   insofar as it constitutes an invasion of privacy as guaranteed by Article I, Section I, of the

5   California Constitution.  Without waiving said objections, plaintiff responds as follows:

6   **RESPONSES TO INTERROGATORIES**

7   Response to Interrogatory No. 1:

8       Plaintiff objects to this interrogatory and to each sub-part because it is overbroad,

9   burdensome, and harassing.  Indeed, it would be a remarkable individual who could provide

10  every specific detail about each job her spouse possessed throughout a career spanning over

11  decades.  Notwithstanding this objection, plaintiff responds as follows:

12      A.    Please see **Exhibit A**, as follows.  Discovery and investigation are continuing..

13      B.    Please see **Exhibit A** for specific locations and plaintiff's Social Security record

14  (**Exhibit B**) for general locations.  Discovery and investigation are continuing.

15      C.    Please see **Exhibit B**.  Discovery and investigation are continuing.

16      D.    Please see **Exhibit B**.

17      E.    Please see **Exhibit A**.  Discovery and investigation are continuing.

18      F.    Please see **Exhibit A**.  Discovery and investigation are continuing.

19      G.    On information and belief, yes;

20      (1)    Please see **Exhibit A**.  Discovery and investigation are continuing.

21      (2)    Please see **Exhibit B**.  Discovery and investigation are continuing.

22      (3)    Plaintiff currently does not recall.  Discovery and investigation are

23  continuing.

24      (4)    Please see **Exhibit A**.  Discovery and investigation are continuing.

25      (5)    Objection, calls for speculation.  Without waiving said objection, see

26  Response to Interrogatory No. 1.G.(3)-(4), above.

28      (6)    Please see **Exhibit A** and **Exhibit G**.  Discovery and investigation are

- 2 -





WR GRACE PIQ 59076-0045

1    continuing.

2            (7)    Please see **Exhibit A** and **Exhibit G**.  Discovery and investigation are

3    continuing.

4            (8)    Please see **Exhibit B**.  Discovery and investigation are continuing.

5            (9)    Records are currently being subpoenaed by defense counsel.  Discovery

6    and investigation are continuing.

7        (10)    Yes.

8            a.        Please see **Exhibit A** and **Exhibit C**.  Discovery and

9    investigation are continuing.

10           b.        Please see **Exhibit A** and **Exhibit C**.  Discovery and

11    investigation are continuing.

12           c.-e.    No.

13        (11)    Yes.

14           a.        Please see **Exhibit A** and **Exhibit C**.  Discovery and

15    investigation are continuing.

16           b.        Please see **Exhibit A** and **Exhibit C**.  Discovery and

17    investigation are continuing.

18           c.-e.    Objection.  Calls for speculation.  Without waiving this

19    objection, please see Response to Interrogatory No. 1.G.(3)-(5), above, and **Exhibit D**.

20           f.-h.    None.

21    Response to Interrogatory No. 2:    Please see **Exhibit E**.

22    Response to Interrogatory No. 3:    Please see **Exhibit F**.

23

24    DATED:  October 1, 1999.            WARTNICK, CHABER, HAROWITZ
                                          SMITH & TIGERMAN

25

26                                        By:  _____
                                              MARILENI MATTIS
27                                            Attorneys for PLAINTIFFS
28

- 3 -

  

WR GRACE PIQ 59076-0046

1

2 **REDACTED**      *VERIFICATION*

3      I,                    declare:

4      That I am the plaintiff named in the foregoing action; that I have read the foregoing

5 PLAINTIFF'S AMENDED ANSWERS TO STANDARD INTERROGATORIES PROPOUNDED BY

6 DEFENDANTS (WRONGFUL DEATH) SET 2 and know the contents thereof; that the same is

7 true of my own knowledge, except as to those matters therein stated on information and

8 belief, and as to those matters I believe it to be true.

9      I declare under penalty of perjury that the foregoing is true and correct.

10      Executed at San Francisco, California on October 4, 1999.

11

12

13                                                       **REDACTED**

14

15

16

17

18

19

20

21

22

23

24

25

26

28

- 1 -