Mr. Harry Wartnick
September 22, 1994
Page 8

RE:     REDACTED

WR GRACE-PIQ 001106-055

was seen on May 23, 1990 by Dr. Robert Cassidy. He had stage 4 adenocarcinoma of the left lung metastatic to the left retina and left axilla. He was receiving radiation to the left retinal metastasis and getting concurrent chemotherapy. He had completed the radiation therapy to the retina. He tolerated it without difficulty. At the end of radiation, his blurred vision had resolved although a black spot persisted in his left visual field.

was seen by Dr. Jackson on June 11, 1990. His vision had improved. The plan was to give him additional chemotherapy that day.

He was next seen on July 9, 1990. He still complained of some discomfort in his left upper, anterior and posterior chest. His chest film showed mild to moderate decrease in size of the tumor. He had moderate nausea and vomiting after the chemotherapy. On examination of his chest, there were diminished breath sounds. There were no rales heard. Chemotherapy was administered the next day.

Chest films were obtained on July 9, 1990. A 4 cm opacity was seen in the superior segment of the left lower lobe slightly less prominent than on May 1. There were prominent markings in the anterior lung fields on the lateral view. Prominent markings were seen in the right lateral costophrenic angle.

was seen on July 20, 1990. He was receiving palliative radiation to the left retinal metastasis and getting chemotherapy. He continued to complain of intermittent left anterior, posterior and lateral chest pain relieved by analgesics. The pain was somewhat worse than one month previously. His chest film showed decreased size of the left lung tumor.

I have reviewed a portion of a psychology note dated July 24, 1990. Mr. Kraft was 66 years of age. He was recently retired. He was a self-employed general contractor. He was married for 10 years. He was diagnosed with lung cancer four months previously. The cancer had metastasized. He was receiving chemotherapy. He was depressed. He denied suicidal ideation. His appetite was satisfactory. He was able to sleep except during periods of chemotherapy.

was seen by Dr. Jackson on August 13, 1990. He tolerated the last chemotherapy with 5 FU, Oncovin and mitomycin. He appeared to have a good response to chemotherapy and radiation therapy. He was given additional chemotherapy.

He was seen on September 10, 1990. He was feeling better. He was not depressed. He had diminished breath sounds in his chest. He was given additional chemotherapy that day.

WR GRACE-PIQ 001106-056



Dr. Robert Cassidy saw on September 14, 1990. He had near complete resolution of his left posterior scapular pain. He was using Tylenol at night. There was no change in his breath, appetite or energy level.

was seen by Dr. Jackson on October 3, 1990. He tolerated chemotherapy well. He had no cough, GI symptoms, bone pain or fever. His chest was clear. He was given more chemotherapy.

A chest film was obtained on October 26, 1990. There was no change in the size of the previously described nodule. On the lateral view, pleural reaction or a new lesion against the proximal portion of the sternum could not be excluded. A hiatal hernia was also seen on the lateral view.

returned on October 30, 1990. A chest film did not show any decrease in size of the primary malignancy compared to July 7 and there was possible slight anterior pleural involvement on the lateral view. He was placed back on platinum and VP16.

A chest PA and lateral were obtained on November 13, 1990. There was no malignancy in the superior segment of the left lower lobe unchanged from July 9, 1990 and October 26, 1990, although smaller than May 1, 1990. The left hilar adenopathy had also regressed since May 1. There was some underlying chronic fibrosis and nodular densities identified in the lower right lateral lung. There was a pleural based density seen. There were diffuse moderate degenerative changes of the spine.

He was next seen on November 14. On examination, rales were heard in the chest. complained of pain in his spine and across his anterior chest. A chest film showed the left posterior lung mass to be slightly larger. The pleural based lesion was also larger. He was thought to have progression of the lung cancer despite chemotherapy.

Dr. Robert Cassidy saw on November 16, 1990. Chest x-ray showed nodules in both lungs. He had worsening chest pain, shortness of breath and diminished energy. His lungs were clear. Palliative radiation was recommended.

He was seen on December 11, 1990. He had increased chest pain. He was given Tylenol No. 3.

He was next seen on December 31, 1991 complaining of difficulty swallowing.

He was seen on January 2, 1991. He had somewhat less coughing and chest pain. He had mild dyspnea. complained that her husband was forgetful. His gait was

REDACTED

REDACTED

Mr. Harry Wartnick
September 22, 1994
Page 10                                    RE:                    REDACTED


WR GRACE-PIQ 001106-057

REDACTED

REDACTED

somewhat unsteady.   He had diminished breath sounds in his chest.— Additional chemotherapy was recommended.

He was seen by Dr. Cassidy on January 2, 1991.  The dysphagia and left rib pain had resolved.  His nausea and appetite were improved.  Over the previous two weeks, he gained 10 pounds.  He continued to have cough productive of whitish sputum.  He complained of mild substernal pleuritic chest pain.  He had no fever or chills.  On examination, he had fine crackles at the bases.

A chest film was done on January 9, 1991.  There was a new area of relatively localized pleural thickening involving the left mid lung posterolaterally.  There was no pleural effusion.

He was seen on January 14, 1991.                was rapidly deteriorating.  He had increasingly severe dyspnea on the slightest exertion and some dyspnea at rest.  He had minimal cough.  He complained of mild anterior and posterior chest pain.  His appetite was poor.  He could hardly swallow pills.  He stopped most of his cardiac medications.  On examination, he was very dyspneic.  His heart rhythm was irregular.  He was diagnosed with rapidly advancing lung cancer.                desired not to have any more chemotherapy and wished to have terminal care.  He was placed on oxygen and methadone.

I have reviewed a radiation oncology completion note dated January 21, 1991 by Dr. Robert Cassidy from the University of Arizona.                completed a palliative course of radiation therapy to his left lung.  He had treatment from November 20, 1990 to December 20, 1990.

He was seen on January 23, 1991.  He was better on oxygen and prednisone.  His pain was barely controlled on Tylenol No. 3 so he did not start the methadone.  He developed foot drop on the right.  He had diminished breath sounds.  He was given Percocet and was started on hospice home care.

Review of Death Certificate.                expired on February 11, 1991 of cancer of the lung.  No autopsy was performed.

Review of Social Security Itemized Statement of Earnings.  From 1942 to 1946, worked part time for the R.A.C. Corporation of Farmingdale, New York.  From 1946 to 1947, he worked for Viebrock and Bertelsen of Freeport, New York.  He worked for other employers for short periods of time in 1947 and 1948.  From mid 1948 through 1950, he worked for Cord Viebrock of Freeport, New York.  During portions of 1948 and 1949, he worked for Roland Hampton of Hempstead, New York.  Through all of 1950 and early

RE:                    REDACTED

1951, he worked for Fairchild Industries. From 1951 to 1955, he worked part time for the Sperry Corporation. From 1953 to 1955, he worked part time for the International Union of Electrical, Radio and Machine Workers. From 1957 to 1960, he worked for Jalindow Incorporated for Merritt, New York. From 1955 to 1982, he was self-employed. During the same time, he worked for a number of other development or construction companies, particularly in the early 1970s.

Report of Dr. Samuel Hammar dated May 10, 1991. Dr. Hammar reviewed slides from bronchial washings. No malignant cells were seen. He reviewed a transbronchial biopsy which demonstrated moderately to poorly differentiated adenocarcinoma. There was a piece of focal peripheral lung tissue showing compressive atelectasis. In one of the pieces, there was some iron material associated with black mineral dust which was thought to possibly represent a portion of an asbestos body although no intact asbestos bodies were seen.

## Diagnoses

1.    Metastatic adenocarcinoma of the lung.

2.    Coronary artery disease, status post myocardial infarction, angina and ventricular arrhythmias.

3.    History of aortic aneurysm repair.

4. .   History of colectomy for diverticulitis.

5.    History of GI bleeding.

6.    History of bladder tumor.

7.    History of hypertension.

## Discussion          REDACTED

        presented in the winter and spring of 1990 with a number of complaints including reduction in his vision of his left eye, a nonproductive cough, fatigue and chest pain. He saw an ophthalmologist who saw a lesion in the left eye which was thought to represent a malignancy and recommended that he receive follow-up care to look for a primary lesion.


WR GRACE-PIQ 001106-059

Mr. Harry Wartnick
September 22, 1994
Page 12                                    RE:        REDACTED

A chest x-ray demonstrated a 4.5 cm lesion in the superior segment of the left lower lobe. He was subsequently referred to a pulmonary specialist who performed bronchoscopy in early May, 1990. Transbronchoscopic lung biopsy demonstrated adenocarcinoma of the lung.

He was subsequently referred to Dr. Ralph Jackson, an oncologist, who began him on chemotherapy which he received through the remainder of 1990. In addition, in May, 1990 he received radiation to the left retina which resulted in improvement in his vision. In November and December, 1990 he received palliative radiation therapy to the lung. Nevertheless, in the late fall 1990 and early 1991, he continued to deteriorate and died of complications of the metastatic adenocarcinoma of the lung.

There are two factors which should be considered in the causation of his lung cancer. They are 1) cigarette smoking and 2) asbestos exposure. The information in the medical records indicate that          smoked about two packs of cigarettes per day for 22 years or about 44 pack years. However, he stopped smoking at age 40 which was 25 year prior to the presentation with lung cancer. Many studies have been reported in the world's literature demonstrating that individuals who smoke are at increased risk for lung cancer. Studies have also demonstrated that once individuals stop smoking, the risk for developing lung cancer falls substantially. The first American Cancer Society study indicates that once individuals have stopped smoking for 10 years, the risk of developing lung cancer falls to that of the non-smoking population. Other studies have not been nearly as optimistic. While the risk for lung cancer has fallen, it has fallen much more slowly. Because of the very long interval from the time he stopped smoking to the time he was diagnosed with lung cancer, I think it is unlikely that          smoking contributed to the development of his malignancy. If it contributed at all, it did so to a small extent.

According to your office,          was previously exposed to asbestos. According to your office, his son has indicated that he worked with his father during the 1960s when they worked in Long Island, New York and in the 1970s in Arizona. In the 1960s,          and his son were doing remodeling and repair. This involved removing dry wall and installing new dry wall and doing drywall taping as well as sanding of the dry wall. In the 1970s,          worked in Arizona. He was involved in renovation of HUD housing and repair of housing through the Farmers Home Administration. He was involved in the renovation of housing. This included removing old floor tile which contained asbestos. He tore out dry wall. He installed new dry wall and did drywall taping. The drywall taping was done with asbestos containing material. In addition, in the 1970s in Arizona,          used an asbestos containing tape which was used for insulation on furnaces and water heaters.

REDACTED

REDACTED



WR GRACE-PIQ 001106-060

Mr. Harry Wartnick
September 22, 1994
Page 13

RE:        **REDACTED**

REDACTED

son also indicated that he and his father worked on their own houses removing asbestos floor tiles and asbestos insulation.

Therefore,         was exposed to asbestos in the 1960s and through much of the 1970s as a construction worker.

Many studies have been reported in the world's literature demonstrating that workers previously exposed to asbestos are at risk for developing lung cancer. There is a known dose response relationship for this disease. That is, the greater the asbestos exposure, the greater the risk for developing lung cancer.

A number of studies have been reported looking at the types of lung cancer in asbestos workers. I have reviewed this literature and I have concluded all histologic types including adenocarcinoma are increased in asbestos workers.

In summary,         died of complications of having adenocarcinoma of the lung. His prior asbestos exposure in construction over a period of more than one decade is the cause. I am uncertain whether his history of smoking contributed to the development of the malignancy.

Thank you for referring the case of         for my evaluation.

Sincerely,

Barry R. Horn, M.D.

BRH/js

DIAGNOSTIC SPECIALTIES LABORATORY, INC., P.S.
700 LEBO BOULEVARD/P.O. BOX 2171
BREMERTON, WASHINGTON  98310

**REDACTED**

Name:                                           Age:        Attorney: W
                                                DOB:

Patient No:  CONSULTATION                                    Date: 5/10/91
Requested:   Susy Meyer, Legal Assistant to Harry F. Wartnick, Attorney at
             Law, Law Offices of Cartwright Slobodin Bokelman Borowsky
             Wartnick Moore & Harris, 101 California Street #2600, San
             Francisco, California  94111

Specimens:   REVIEW OF SLIDES (14) + (1) paraffin block
             C-4661-90 (4)              St. Joseph Hospital
             C-4662-90 (7)              350 North Wilmot Road
             S-7355-90 (3) + (1)        Tuscon, Arizona 85711

All from attorney's office

Received from Susy Meyer, Legal Assistant to Harry F. Wartnick, Attorney at Law,
Law Offices of Cartwright Slobodin Bokelman Borowsky Wartnick Moore & Harris,
San Francisco, California, are fourteen glass slides plus one paraffin block for
review.  Also received are various medical records and reports concerning

The letter from Ms. Meyer states that          died at age 66 from a left upper
lobe cancer, in February of 1991.          was employed as a construction
worker and contractor who specialized in repairing and renovating housing.  He
did this from approximately 1973 to 1980.  He recalled being exposed to asbestos
during most phases of construction, which included roofing, insulating, plumbing
and installing electrical equipment.  He was also exposed to asbestos while
demolishing existing housing that probably contained asbestos insulation.  He
specifically recalled 100-foot rolls of asbestos insulation that he would cut up
to wrap furnaces, water heaters and ventilator pipes.  Ms. Meyer's letter
indicates that          smoked about two packs of cigarettes a day from
approximately age 18 (1924) to age 40 (1964), an approximate 44 pack-year
history of cigarette smoking.  He quit smoking cigarettes in 1964, and had not
smoked since that time.

There is a clinical history from University Medical Center in Tuscon, Arizona,
dictated by Drs. Richard B. Wilder and J. Robert Cassady, dated May 11, 1990,
stating that          is a 66-year-old man with a 45 pack-year history of
smoking, who quit smoking 25 years ago, and who developed constant sharp
pleuritic left-sided chest pain five months previously.  The pain gradually
increased in severity to the point that it was only partially alleviated by
Tylenol with codeine.          also developed blurred vision and a black spot
in his left visual field about three months ago, and the ocular symptoms
gradually worsened.  In about March,          developed a non-productive cough,
and in April experienced occasional wheezing.  A physical examination was
remarkable for a yellowish lesion involving the left macula, which was thought
to be a metastatic tumor or a primary melanoma.  A chest radiograph revealed a
4.5 cm mass in the left mid-lung field and left hilar adenopathy.  No metastatic
lesions were present in the thoracic spine or ribs.  A CBC and chemistry screen

-continued-
ACCESSION NO.  L-131-91

Keith O. Hallman, M.D.        Samuel P. Hammar, M.D., Director        John P. Matan, M.D.

REDACTED

Consultation
page -2-

WR GRACE-PIQ 001106-062

were normal except for a mildly elevated alkaline phosphatase. Broncho~~~~~
performed, and a transbronchial biopsy was stated to show adenocarcinoma. Past
medical history states that there was a history of hemorrhage in the right eye
in 1979, resulting in blindness. The patient also had a history of a myocardial
infarct in 1973, and two-vessel coronary artery disease. He had had a
transurethral resection of a bladder tumor in 1973, and an aortic aneurysm
repaired in 1980. He was on several different medications. His family history
was negative. The social history states that he used to work as a building
contractor, and believes he was exposed to asbestos. His physical examination
was relatively normal. There was a speckled yellowish lesion measuring one
optic disc in diameter in the left retina adjacent to the macula. There was no
supraclavicular or inguinal adenopathy. There were fine crackles present at the
base of the right lung. The patient's tumor was diagnosed clinically as a
$T_xN_xM_x$, stage IV adenocarcinoma, with metastases involving the left retina and
left axilla.

There is a copy of a chest radiograph report dated August 2, 1986 stating that
there was diffuse increased interstitial markings present. There was a 12-mm
nodular density at the right base of the lung which was present in 1981, and
most likely represented a benign process. Cardiomegaly was also present. The
increased interstitial markings were nonspecific, but congestive heart failure
was one possible explanation. I cannot locate any other chest radiograph
reports. There are many notes present in the chart concerning the fact that the
patient was treated with combination chemotherapy and radiation. As of January
14, 1991 he was described as deteriorating rapidly, with increasing severe
dyspnea on exertion and dyspnea at rest.

A letter-report addressed to Mr. Harry Wartnick, Attorney at Law, San Francisco,
California, from Dr. Barry R. Horn, dated June 24, 1991, indicates that Dr. Horn
had reviewed            chest radiographs, dating from 1982 through 1991. The
films in 1982 showed interstitial markings that appeared to be at the upper
limits of normal, corresponding to an I.L.O. classification of s/t 0/1. No
definite pleural disease was identified. Similar observations were made on the
chest radiographs dated July 6, 1983. The chest radiographs dated January 12,
1984, showed interstitial markings that had increased, with an I.L.O.
classification of t/s 1/0. The chest radiographs dated June 20, 1986 showed
interstitial markings mildly increased, corresponding to an I.L.O.
classification of t/t 1/0. In all of these films, beginning in 1982, a mass was
seen in the right middle lobe that was unchanged from the previous films. The
films dated May 1, 1990 showed a mass in the left mid-lung field measuring 4.5 x
4.5 cm, and on the lateral film appeared to be in the anterior segment of the
left lower lobe. There was prominence of the left hilum suggesting adenopathy.
Interstitial markings were increased, and corresponded to an I.L.O.
classification of t/t 1/1. Similar observations were made on the chest films
dated July 9, 1990 and October 26, 1990. The films of November 13, 1990 showed
interstitial markings that appeared more prominent, classified by Dr. Horn as
t/t 2/1. The films reviewed by Dr. Horn dated January 9, 1991 showed increased
interstitial markings corresponding to an I.L.O. classification of t/t 2/2. Dr.
Horn indicated there was a suggestion of honeycombing on these films. No
definite pleural disease was identified.

-continued-
ACCESSION NO.  L-131-91

Keith O. Hallman, M.D.        Samuel P. Hammar, M.D., Director        John P. Matan, M.D.

REDACTED

consultation
page -3-

NR GRACE-PIQ 001106-063

### Review of Outside Slides:

Four glass slides for review are designated C-4661-90. These probably represent cytologic preparations of bronchial washings, and consist of a relatively hypocellular specimen. A few respiratory columnar epithelial cells are identified. A rare inflammatory cell is seen. No cytologically malignant cells are noted.

Seven glass slides are designated C-4662-90, and are artefactually distorted, especially the smears. The cell blocks show abundant debris and degenerating cells, some of which are superficial squamous cells. Also present are numerous polys. I do not identify any intact viable neoplastic cells.

Three glass slides and one block are designated S7355-90, and represent the transbronchial biopsy specimen. These slides show a moderately to poorly-differentiated adenocarcinoma consistent with a primary pulmonary adenocarcinoma. There is focal peripheral lung tissue present that shows compressive atelectasis. A small amount of black mineral dust is present, and in one of the pieces of tissue there is some iron material associated with the black mineral dust, which theoretically could be part of an asbestos body, although no intact asbestos bodies are seen.

The following summary statements can be made in this case:

1. The patient was a 66-year-old man with a 45 pack-year history of cigarette smoking, having quit smoking in 1964. He had a history of occupational exposure to asbestos while working in the construction trade.
2. In approximately January of 1990 he developed left-sided chest pain that was initially pleuritic, which increased in intensity. He also developed ocular symptoms consisting of a left visual field defect.
3. Optic examination showed an area of abnormality adjacent to the macula that was thought to represent either a metastatic neoplasm or a primary retinal melanoma. A chest radiograph subsequently showed a 4.5 cm mass in the left mid-lung field with left hilar adenopathy. He was subsequently identified as having left axillary adenopathy.
4. A transbronchial biopsy was done. I have reviewed these slides (S-7355-90) and they show a moderately-differentiated adenocarcinoma consistent with a primary pulmonary adenocarcinoma.
5. Dr. Barry R. Horn reviewed multiple sets of chest radiographs taken of . As early as 1982 these showed a slight increase in interstitial markings, which steadily progressed to the point that by 1991 they were classified according to the I.L.O. classification as t/t 2/2, and Dr. Horn indicated that there was a suggestion of honeycombing. Clinical examination in January of 1990 described fine crackles at the right base, which would be consistent with interstitial fibrosis.
6. Assuming that the interstitial markings observed by Dr. Horn in the chest radiographs represent asbestosis, I believe that         lung cancer was causally related to asbestos. Whether or not cigarette smoke was a factor in the development of his lung cancer is less clear, wince he quit smoking in 1964, which was more than 20 years before the radiographic identification of his left lung mass.

SPH/ps:7-1-91
ACCESSION NO. L-131-91

Keith O. Hallman, M.D.          Samuel P. Hammar, M.D., Director          John P. Matan, M.D.



WR GRACE-PIQ  001106-064

HARRY F. WARTNICK   (Bar No. 54761)
MADELYN J. CHABER   (Bar No. 88950)
STEVEN M. HAROWITZ   (Bar No. 71117)
AUDREY A. SMITH   (Bar No. 118411)
NIROMI L. WIJEWANTHA   (Bar No. 154216)
CARTWRIGHT, SLOBODIN, BOKELMAN, BOROWSKY,
     WARTNICK, MOORE & HARRIS, INC.
101 California Street, 26th Floor
San Francisco, CA  94111
(415) 433-0440

Attorneys for Plaintiffs


IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

| | | |
|---|---|---|
| REDACTED | ) | |
| and | ) | |
| | ) | |
| | ) | No. 933909 |
| Plaintiffs, | ) | |
| | ) | PLAINTIFF'S ANSWERS TO |
| vs. | ) | WRONGFUL DEATH INTERROGATORIES |
| | ) | BY DEFENDANTS |
| RAYBESTOS-MANHATTAN, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | REDACTED |

Comes now plaintiff            , and responds to defendants'
wrongful death interrogatories as follows.  Please note that
plaintiff has only just begun discovery in this case and that
discovery is continuing with respect to each interrogatory and
sub- interrogatory. .In addition, plaintiff respectfully objects
to each interrogatory and sub-interrogatory insofar as it calls
for privileged work product or privileged attorney-client
communication and insofar as it constitutes an invasion of
privacy as guaranteed by Article I, Section I of the California

-1-



WR GRACE-PIQ 001106-065

Constitution.   Without  waiving  these  objections,  plaintiff
responds as follows:

```
1A.
(a)
(b)                      REDACTED
(c)
(d)
(e)
(f)
(g)
(h)     Not applicable.
(i)     Not applicable.
(j)     Not applicable.
(k)     Arizona T354569.
(l)
(m)     12th grade plus.
(n)     Not applicable.
(o)     Not applicable.
(p)     Lester Smith.
(q)     1963.
(r)     Divorced in Des Moines, Iowa in November 1968.

1B.
(a)
(b)                      REDACTED
(c)
(d)
(e)
(f)
(g)     Not applicable.
(h)     Not applicable.
(i)
(j)     Arizona T145068.
(k)
(l)     Junior College.
(m)
(n)
(o)
(p)
(q)                      REDACTED
(r)
(s)
(t)

2.(1) (a)
      (b)
      (c)
      (d)
```

-2-

WR GRACE-PIQ 001106-066

REDACTED

(2) (a)
    (b)
    (c)         **REDACTED**
    (d)

3.  No.

4.  Decedent's father died at the age of 67 of a heart attack. Decedent's mother died in her 70s, also of a heart attack.

5.  Plaintiff respectfully objects to this interrogatory as being overbroad, burdensome and oppressive. Without waiving this objection, plaintiff can recall the following:

    (1)
    (2)
    (3)         **REDACTED**
    (4)
    (5)

6.  Decedent graduated from the Merrick Grammar School in New York. He attended and graduated from the W. C. Metham High School majoring in chemistry. He attended Hoffstra College majoring in psychology for three years and studied computer sciences at Pema College for 2 years.

7.  No.

8.  Decedent was a member of the Army Air Corp from February 1943 through September 1945. His rank was that of Corporal and his service number was 328-00-282. He was stationed variously at Gulfport, Mississippi, Langley Field, VA, and Italy. He was honorably discharged in 1945.

9.  During the spring of 1982, plaintiff's attorney offered to provide the names of doctors and hospitals each present and future plaintiff could recall and to have each plaintiff sign authorizations for use by the defense group to obtain decedent's medical records. As of August 19, 1982, Philip Berry, Esquire, who has been responsible for ordering and summarizing medical records on behalf of all members of the defense group, told plaintiff's counsel that the defense group was still considering plaintiff's offer. Thereafter, in December, 1982 and prior to the service of these interrogatories, plaintiff's counsel renewed this offer to Mr. Berry. His response was that the defense group was still considering it. To date, we have not heard back from Mr. Berry. In January, 1983, plaintiff's counsel renewed this offer to Douglas Wah, attorney for defendant Raymark Industries. Mr. Wah expressed interest and promised to get back to us. To date, we have not yet heard back from Mr. Wah. Without access

-3-


WR_GRACE-PIQ 001106-067

to decedent's medical records to refresh her memory, plaintiff cannot provide all the detailed medical information sought in these interrogatories. It would be an extraordinary individual indeed who could recall all of the detailed medical information you have requested in these interrogatories. By her previous offer, plaintiff has made decedent's medical records accessible to you. You are respectfully directed to decedent's medical records which, under California Rules of Civil Procedure, are accessible to you. This introductory statement is incorporated by reference into each and every interrogatory in this set seeking medical information. In partial response to this interrogatory, please see the information provided below and the information provided in answers to Interrogatory Nos. 10, 11, and 12, which is the best that plaintiff can do by memory alone at this time.

(1) (a) Martin Meyer, M.D., 630 N. Alvernon Way, Tucson, AZ 85711.
(b) Primary care physician.
(c) Dates unknown at present time, discovery is continuing in this regard.

(2) (a) John Tedford, M.D., 630 N. Alvernon Way, Tucson, AZ 85711.
(b) Opthomologist.
(c) Dates unknown at present time, discovery is continuing in this regard.

(3) (a) Ralph Jackson, M.D., 630 N. Alvernon Way, Tucson, AZ 85711.
(b) Lung cancer.
(c) 1990 to 1991.

(4) (a) Robert Cassady, M.D., 1501 N. Campbell St., Tucson, AZ 85724.
(b) Lung cancer.
(c) 1990 to 1991.

(5) (a) Mark Karychner, M.D., 5402 East Grant Road, Tucson, AZ.
(b) Aneurism repair and bypass surgery.
(c) Dates unknown, discovery is continuing in this regard.

(6) (a) Joseph Smith, M.D., 350 Wilmot Road, Tucson, AZ.
(b) Discovery is continuing in this regard.
(c) Dates unknown, discovery is continuing in this regard.

10. The prefatory remarks in answer to Interrogatory No. 9 are incorporated herein.

-4-


WR GRACE-PIQ 001106-068

(1) (a) University Medical Center, 1501 N. Campbell St., Tucson, AZ 85724.
   (b) Radiation Therapy.
   (c) 1990 to 1991.

(2) (a) Thomas Davis Clinic, N. Alvernon Way, Tucson, AZ 85711.
   (b) Discovery is continuing in this regard.
   (c) Dates unknown, discovery is continuing in this regard.

(3) (a) Carondolet-St. Joseph;s Hospital, 350 Wilmot Road, Tucson, AZ.
   (b) Discovery is continuing in this regard.
   (c) Dates unknown, discovery is continuing in this regard.

11.  Please see the prefatory remark to Interrogatory No. 9 which is incorporated herein.  In addition, please see plaintiff's answers to Interrogatory Nos. 9 and 10.

    Plaintiff believes that numerous x-rays would have been taken by each doctor and at each hospital noted above.  Please see decedent's medical records for the information that you seek.  Discovery is continuing in this regard.

12.  Please see introductory remark to Interrogatory No. 9 which is incorporated herein by reference.  Please also see answers to Interrogatory Nos. 9, 10, and 11.

    Plaintiff does not specifically recall whether the decedent underwent pulmonary function tests and, therefore, kindly refers you to decedent's medical records.  Discovery is continuing in this regard.

13.  Plaintiff provides the following information based on her best recollection and without having reviewed decedent's medical records:  Decedent took numerous medications prior to and during the course of his cancer.  Plaintiff kindly refers you to decedent's medical records.

14.  Plaintiff has identified medical treatment she recalls decedent receiving in her answers to Interrogatory Nos. 9, 10, 11 and 12.  She believes that all medical reports pertaining to this treatment will be subpoenaed by the law firm of Berry and Berry based on plaintiff's answers to interrogatories. If there are any medical reports to which this inquiry is addressed, plaintiff believes that they would be found in those records.  As to any reports or records of Dr. Barry R. Horn, his report with respect to decedent's x-rays is attached. Discovery is, of course, continuing in this regard.


WR GRACE-PIQ 001106-069

15.   With respect to subparts (f) and (g), please see introduction to Interrogatory No. 9 and decedent's medical records (including the report of Dr. Barry R. Horn).   With respect to subpart (h), plaintiff respectfully objects on the grounds of work product privilege, attorney-client privilege and on the grounds that this question calls for expert opinions and calls for legal and medical conclusions.  Without waiving these objections, plaintiff responds to the remainder of the interrogatory as follows:

(a) Various symptoms associated with lung cancer.
(b) lung cancer.
(c) Decedent first began experiencing shortness of breath in approximately December 1989.
(d) Significant weight loss.
(e) So far as plaintiff and/or her attorneys understand, lack of  oxygen and lung cancer can adversely affect all parts of one's body.
(f) Please see decedent's medical records.
(g) Please see plaintiff's answers to Interrogatories Nos. 9, 10, 11 and 12, and decedent's medical records.
(h) Plaintiff respectfully objects to this Interrogatory as calling for a legal conclusion and as being work product.

16. Decedent underwent a lung biopsy performed by Dr. Joseph Smith in Tucson, Arizona in approximately 1990.  He was diagnosed with lung cancer as a result of this biopsy.  Although plaintiff is not currently aware as to whether or not decedent was informed that his cancer was asbestos related; based on the type of work that he did and his exposure to asbestos, she believes this to be the case. . In addition, pulmonary specialist. Barry R. Horn, M.D., has reviewed chest films of the late          .  Dr. Horn found very extensive interstitial changes seen bilaterally in all lung fields corresponding to an ILO Classification of t/t 2/2 irregular opacities with a suggestion of honey combing.
     Additionally, pulmonary pathologist Dr. Samuel R. Hammar, has reviewed transbronchial biopsy specimans pertaining to          ..  Dr. Hammar found that the interstitial markings observed in          chest x-rays are representative of asbestosis and therefore his lung cancer was causally related to asbestos exposure.  The report of Dr. Hammar is attached.

17.   No.

18.   Yes.
(a) Yes.
(b) Pima County Health Department.
(c)

REDACTED

(d) Surviving spouse.

REDACTED


WR GRACE-PIQ 001106-070

    (e) Ralph A. Jackson, M.D., 630 N. Alvernon Way, Tucson, AZ.
    (f) Carcinoma of the lung.
    (g) 3:45 p.m., February 11, 1991, St. Joseph's Hospital,
Tucson, AZ.

19.  No.

20.  Yes.
    (a) St. Joseph's Hospital, Tucson, AZ.
  (b) Joseph Smith, M.D.
     (c) With plaintiff's attorney.
     (d) Approximately 1990.

21.  Please see answers to Interrogatory Nos. 9-12 and decedent's
medical records.

22.  Yes.

23.  (a) 1943 to 1963;
    (b) Cigarettes;
    (c) Daily;
    (d) Approximately 1 to 1-1/2 packs per day;
    (e) Raleigh.

24.  Plaintiff respectfully objects to this interrogatory as
being irrelevant and unlikely to lead to the discovery of
relevant evidence, an invasion of plaintiff's privacy, and on the
grounds that it assumes a pattern of alcohol consumption over the
decedent's lifetime. Without waiving these objections, plaintiff
responds as follows: Decedent drank 1-2 drinks on social
occasions only, but quit drinking any alcoholic beverages in
1982.

25.  Decedent was exposed to asbestos at those employments noted
below with an asterisk. Discovery is continuing as to decedent's
exposure at all other employments. In addition, discovery is
continuing as to other places of employment where decedent may
have worked for short periods.

William Goldberg CPA
3445 N Dodge Blvd
Tucson          AZ      85716

Job Type: Guard
Date Started: 1985
Date terminated: 1985
Asbestos Installation: No
Asbestos Removal: No
Supervisor: Unk


WR GRACE-PIQ 001106-071

---
Self Employment                    *


Job Type: Carpenter
Date Started: 1982
Date terminated: 1982
Asbestos Installation: Yes
Asbestos Removal: Yes
Supervisor: Self

---
Ekern LTD
7931 E Julia Pl
Tucson              AZ         85710

Job Type: Worker
Date Started: 1981
Date terminated: 1981
Asbestos Installation: No
Asbestos Removal: No
Supervisor: Unk

---
Self Employment                    *


Job Type: Carpenter
Date Started: 1976
Date terminated: 1980
Asbestos Installation: Yes
Asbestos Removal: Yes
Supervisor: Self

---
Gil Lam Construction         *
3820 E Bellvue
Tucson              AZ         85716

Job Type: Carpenter
Date Started: 1972
Date terminated: 1975
Asbestos Installation: Yes
Asbestos Removal: Yes
Supervisor: Mr Lamb

---
Thule Construction
PO Drawser K
Halesite            NY         11743



WR GRACE-PIQ 001106-072

Job Type: Carpenter
Date Started: 1972
Date terminated: 1972
Asbestos Installation: Discovery Continuing
Asbestos Removal: Discovery Continuing
Supervisor: Unk

---
Braverman Development
99 Hawthorne Ave
Valley Stream          NY          11580

Job Type: Carpenter
Date Started: 1972
Date terminated: 1972
Asbestos Installation: Discovery Continuing
Asbestos Removal: Discovery Continuing
Supervisor: Unk

---
Posillico Construction
31 Tennyson Ave
Westbury               NY          11590

Job Type: Carpenter
Date Started: 1971
Date terminated: 1971
Asbestos Installation: Discovery Continuing
Asbestos Removal: Discovery Continuing
Supervisor: Unk

---
Self Employment                *

Job Type: Carpenter
Date Started: 1961
Date terminated: 1971
Asbestos Installation: Yes
Asbestos Removal: Yes
Supervisor: Self

---
Jalindow
174 W Merrick Rd
Merrick                NY          11566

Job Type: Worker
Date Started: 1957
Date terminated: 1960

-9-



WR GRACE-PIQ 001106-073

Asbestos Installation: No
Asbestos Removal: No
Supervisor: Unk

---
Self Employment            *


Job Type: Carpenter
Date Started: 1955
Date terminated: 1957
Asbestos Installation: Yes
Asbestos Removal: Yes
Supervisor: Self

---
Sperry Corp
30 Rockefeller Plz
New York              NY

Job Type: Worker
Date Started: 1951
Date terminated: 1955
Asbestos Installation: Discovery Continuing
Asbestos Removal: Discovery Continuing
Supervisor: Unk

---
Radio & Machine Workers
260 07 Hillside Ave
Floral Park           NY        11004

Job Type: Worker
Date Started: 1953
Date terminated: 1955
Asbestos Installation: Discovery Continuing
Asbestos Removal: Discovery Continuing
Supervisor: Unk

---
Fairchild Industries
PO Box 10803
Chantilly             VA        22021

Job Type: Worker
Date Started: 1950
Date terminated: 1951
Asbestos Installation: No
Asbestos Removal: No
Supervisor: Unk

-10-



WR GRACE-PIQ 001106-074

---
Cord Biebrock
40 S Main St
Freeport                    NY        11520

Job Type: Laborer
Date Started: 1948
Date terminated: 1950
Asbestos Installation: No
Asbestos Removal: No
Supervisor: Unk

---
Rollan Hampton
206 Fulton Ave
Hempstead              NY

Job Type: Laborer
Date Started: 1948
Date terminated: 1949
Asbestos Installation: No
Asbestos Removal: No
Supervisor: Unk

---
Whipple Motors
209 N Franklin St
Hempstead              NY        11550

Job Type: Worker
Date Started: 1948
Date terminated: 1948
Asbestos Installation: No
Asbestos Removal: No
Supervisor: Unk

---
Theodore J Steffek
67 E Seaman Ave
Freeport               NY

Job Type: Worker
Date Started: 1948
Date terminated: 1948
Asbestos Installation: No
Asbestos Removal: No
Supervisor: Unk

---
Rosdale Beverage

-11-



WR GRACE-PIQ 001106-075

305 Merrick Rd
Valley Stream          NY

Job Type: Worker
Date Started: 1948
Date terminated: 1948
Asbestos Installation: No
Asbestos Removal: No
Supervisor: Unk

---
Viebrock & Bertelsen
40 S Main St
Freeport               NY

Job Type: Worker
Date Started: 1946
Date terminated: 1947
Asbestos Installation: No
Asbestos Removal: No
Supervisor: Unk

---
Burner & Fuel
360 Hempstead Ave
Rockville Centre       NY        11570

Job Type: Worker
Date Started: 1947
Date terminated: 1947
Asbestos Installation: No
Asbestos Removal: No
Supervisor: Unk

---
George Ryan
Box 78
Merrick                NY

Job Type: Worker
Date Started: 1947
Date terminated: 1947
Asbestos Installation: No
Asbestos Removal: No
Supervisor: Unk

---
R A C Corp
Farmingdale            NY        11735



WR GRACE-PIQ 001106-076

Job Type: Worker
Date Started: 1942
Date terminated: 1946
Asbestos Installation: No
Asbestos Removal: No
Supervisor: Unk


Crestwood Dairy
PO Box 127
Copiague            NY        11726

Job Type: Worker
Date Started: 1946
Date terminated: 1946
Asbestos Installation: No
Asbestos Removal: No
Supervisor: Unk

26.  Please see answer to Interrogatory No. 25 for subparts (a),
(b), (c), (d), (f) and (h).


With respect to subpart (e), plaintiff and/or her counsel
believe that decedent was exposed to most, if not all, types of
asbestos-containing materials including but not limited to
asbestos fibers, asbestos mud, asbestos cloth, asbestos tape,
asbestos tube, asbestos pipe, asbestos pipe covering, asbestos
rope, asbestos packings, asbestos rollboard, asbestos cement,
asbestos cement boards, asbestos block insulation, asbestos
lagging, RWL lagging, asbestos luting, asbestos insulation pads,
asbestos paper, asbestos insulating felts, asbestos millboard
and/or insulation boards, asbestos gaskets, asbestos pipeline
felts, asbestos curtains, asbestos sheets, asbestos bags, and
asbestos powder, during his many years of exposure.  Discovery
is continuing in this regard. As to subpart (i), plaintiff
respectfully objects on the grounds that this interrogatory is
overbroad, burdensome and oppressive.  Without waiving these
objections, none other than those already known to you, those
whose depositions have been taken, or those whose names have been
or are being revealed in discovery or trial in this or other
cases. Discovery is, of course, continuing in this regard.  In
addition, without waiving these objections, plaintiff provides
the following information:

  Gil Lamb, Deceased
  Edgar Houston, Tucson, AZ
  Frank Musgrave, Tucson, AZ
  William Kraft, Tucson, AZ

As to subpart (g),


WR GRACE-PIQ 001106-077

Discovery is continuing in this regard.

27.  Uncertain at this time, but discovery is continuing in this regard.

28.  Plaintiff respectfully objects to this interrogatory on the grounds that it is vague, ambiguous, overbroad, burdensome and oppressive.  Without waiving this objection, decedent recalled being around or working with asbestos- containing products from the manufacturers listed below at his places of employment. Discovery is, of course, continuing in this regard:

Armstrong   —

Johns-Manville

29.  Investigations are continuing as to more specific descriptions of the containers, boxes, etc., if decedent did in fact see any of the above.

30.  Not that plaintiff knows of at present other than those identified in these answers to interrogatories, but discovery is continuing in this regard.  In addition, my attorneys and/or I believe that decedent may have been exposed to products manufactured by companies currently in bankruptcy including but not limited to Johns-Manville, Unarco, Forty- Eight Insulations and Amatex at decedent's places of employment listed above.

31.  Please see answer to Interrogatory No. 26, subpart (i).

32.  No.

33.  No.

34.  No.

35.  Decedent was retired at the time of his death, he last worked in the 1980s.

36.  Not applicable.

37.  No.

38.  Not applicable.

39.  Decedent was retired and therefore had no annual earnings for the past 10 years.  Plaintiff's annual earnings are as follows:

    1982  $ 8,911

-14-



WR GRACE-PIQ 001106-078

| | |
|---|---|
| 1983 | $ 9,831 |
| 1984 | $ 5,000 |
| 1985 | $ 7,855 |
| 1986 | $ 8,198 |
| 1987 | $10,609 |
| 1988 | $12,216 |
| 1989 | $12,356 |

40.  Decedent's hospital bills have been ordered and will be provided to defendants when received.    Discovery and investigation are continuing in this regard.

41.  Decedent's medical bills have been ordered and will be provided to defendants when received.    Discovery and investigation are continuing in this regard.

42.  Plaintiff respectfully objects to this interrogatory on the grounds that it is irrelevant and not calculated to lead to the discovery of relevant evidence.  Indeed, the information called for in this interrogatory falls under the collateral source doctrine.  Without waiving this objection, the information sought can be found in the billing records of the health care providers whose records you will be acquiring by authorization or subpoena, and pursuant to C.C.P. Section 2030(d), plaintiff respectfully declines to make the compilation sought in this interrogatory and directs you to the original records from which you can make this calculation.

43.  Adair Funeral Home, Dodge Chapel, 1050 North Dodge Blvd., Tucson, AZ.

44.  No.

45.  Yes.
(a) February 19, 1991
(b)  El  Encanto  Crematory,  1050  North  Dodge  Blvd, Tucson,  AZ.

46.  Plaintiff's cost for decedent's cremation totaled $835.54.

47.  Plaintiff respectfully objects to this interrogatory insofar as it requests information concerning health or accident insurance benefits, disability benefits and accident compensation benefits on the grounds that the question is irrelevant, overbroad, constitutes a violation of the collateral source rule, and constitutes an invasion of plaintiff's privacy in violation of Article I, Section I of the California Constitution.  Please see Hallendorf vs. Superior Court and related cases.  Without waiving this objection, plaintiff will provide the following information to you.  In addition, please see plaintiff's answers

-15-

WR GRACE-PIQ  001106-079

to Interrogatory Nos. 9, 10, 11 and 12, and the records which you acquire directly or indirectly therefrom which are incorporated herein.

Discovery is continuing in this regard.

48.    Plaintiff respectfully objects to this interrogatory insofar as it requests information concerning health or accident insurance benefits, disability benefits and accident compensation benefits on the grounds that the question is irrelevant, overbroad, constitutes a violation of the collateral source rule, and constitutes an invasion of plaintiff's privacy in violation of Article I, Section I of the California Constitution.  Please see <u>Hallendorf vs. Superior Court</u> and related cases.  Without waiving this objection, plaintiff will provide the following information to you.  In addition, please see plaintiff's answers to Interrogatory Nos. 9, 10, 11 and 12, and the records which you acquire directly or indirectly therefrom which are incorporated herein.

Not applicable.

49.  No.

50.  No.

51.  No settlements have been received to date.

52.  Yes.

53.  If the social security record has been received, it has been incorporated into the answer to Interrogatory No. 25.

54.  Yes.

55.  Plaintiff has been employed as follows:

| DATES | EMPLOYER | JOB | LOCATION |
|-------|----------|-----|----------|
| 1960-61 | St Mary's Hospital | Nurse Asst. | Tucson, AZ |
| 1962-64 | St Joseph's Hosp. | Nurse Asst. | Tucson, AZ |
| 1966-69 | Palo Verde Hosp. | Operator | Tucson, AZ |
| 1972-74 | St. Joseph's Hosp. | Nurse Asst. | Tucson, AZ |
| 1974-76 | Upjohn | Nurse Asst. | San Francisco, CA |
| 1977-79 | Host International | Personnel Ast | San Francisco, CA |

-16-


WR GRACE-PIQ 001106-080

```
            Pima County Sherrif  Clerk           Tucson, AZ
1979-81     Pima Counth Health   Clerk           Tucson, AZ
3/85-11/85
            Self-Employed        House Cleaner  Tucson, AZ
1985-87     City of Tucson       Clerk Typist   Tucson, AZ
4/87 to present
```

56.  Yes.

57.  No.

58.  No.

59.  No.

60.  (a)                    **REDACTED**

     (b) Entire 12 months.

61.  No.

62.  No.

63.  No.

64.  No.

65.  No.

66.  Yes.
     (a) The amount to be awarded by a jury.
     (b) Reasonable value of the care, comfort and companionship
of a loving husband of 10 years.

67.  My husband and I enjoyed just being together.  We learned
the computer together, we enjoyed watching TV, going to the
movies, going to the mountains, having supper with
children.  We also did part-time work together to make extra
money.  We went to plays, on rides, visited friends, went to
church and church functions.  We had many similar interests and
had a lot of fun together.  We had dinners at our home with
family and friends.  As the years went by, we had more in common.
 Claude was my best friend besides being my husband.

**REDACTED**

68.  All hours but working hours.

69.  No.



WR GRACE-PIQ 001106-081

70. No.

71. Yes.

72. No one other than my attorneys and their employees.

Dated: June 4, 1993.

CARTWRIGHT, SLOBODIN, BOKELMAN, BOROWSKY,
WARTNICK, MOORE & HARRIS, INC.

By: <u>Harry F. Wartnick</u>
     HARRY F. WARTNICK

-18-

WR GRACE-PIQ 001106-082

HARRY F. WARTNICK Esq., State Bar No. 54761
STEVEN M. HAROWITZ Esq., State Bar No. 71117
BRENDA D. POSADA Esq., State Bar No. 152480
WARTNICK, CHABER, HAROWITZ, SMITH & TIGERMAN
101 California Street, 26th Floor
San Francisco, California 94111
Telephone 415-986-5566

Attorneys for Plaintiffs

SUPERIOR COURT OF THE STATE OF CALIFORNIA

CITY AND COUNTY OF SAN FRANCISCO

| | |
|---|---|
| **REDACTED** and individually, Plaintiffs, vs. RAYBESTOS-MANHATTAN INC. et al., Defendants. | No. 933909<br>PLAINTIFF'S FACTUAL STATEMENT IN COMPLIANCE WITH GENERAL ORDER NO. 54<br>Settlement Conf ........... July 26, 1996<br>Time ........................ 2:00PM<br>Department .................... Nine<br>Trial Date ................ Sept. 3, 1996 |

Plaintiff **REDACTED** hereby submits the following settlement conference statement.

I. FACTS

Plaintiff filed the instant complaint seeking damages for personal injuries suffered by her husband, plaintiff's decedent . Additionally, plaintiff seeks damages for wrongful death. Throughout his career as a carpenter and while in performance of his job duties suffered exposure to airborne asbestos dust and fibers released from asbestos containing products being used at his various places of employment. Due to his exposure to friable airborne asbestos present at jobsites throughout his career he died, on February 11, 1991.

While working for various employers as a carpenter, was exposed to asbestos-containing products distributed, supplied and/or sold by these defendants.

**REDACTED**



WR GRACE-PIQ 001106-083



Working as a subcontractor for Farmer's Home Administration at various housing units throughout Eloy, Casa Grande and Tucson Arizona,          functioned in the capacity of electrician and insulator and was also engaged in the tearing down of houses.  Employed by Gil Lamb Construction Company from 1972-1975 and at sites located throughout Arizona,          performed repair and maintenance work, which included the wrapping of asbestos insulation and lagging around water heater vents and placement of asbestos fire brick around furnace pipes. He also supervised other subcontractors' activities.          removed partitions, repaired wall damage by applying asbestos joint compounds to cracks, applied ceiling texture products and installed asbestos floor tile with asbestos containing adhesives. He was further exposed to asbestos products which were being used by others working around him.  In the course of his duties as a home maintenance worker          utilized asbestos tape, asbestos ceiling texture products, asbestos mud and asbestos joint compounds.  Upon completion of a particular job          was responsible for the cleaning up of all detritus produced in the course of that job.

Further details relating to          employment are set forth in his answers to General Order No. 29 Interrogatories and in          deposition testimony of February 2, 1996.

## II.  INJURIES AND DAMAGES

In May 1990, Doctor Emmerson performed a bronchoscopy on          A cytopathology report by Doctor Monteforte noted abnormal cells were suspicious for adenocarcinoma.  On the same day a diagnosis was made of adenocarcinoma.  In May 1990, Dr Ralph Jackson examined and determined adenocarcinoma of the lung with hilar and retinal metastases.  Although underwent radiation therapy and chemotherapy, the procedure was unsuccessful in arresting the progression of the disease, which had now metastasized to the eye.

Dr Barry Horn examined          in June 1991 and chest radiographs taken in January 1991 had an ILO classification of t/t 2/2 with irregular opacities in lower two-thirds of the lung fields bilaterally.



WR GRACE-PIQ  001106-084

**REDACTED**

On February 11, 1991,          as admitted for terminal care at Saint Joseph's Hospital and suffering severe pain, coughing, dyspneic and congested as a result of his terminal carcinoma of the lung condition with anemia.  He was given injected methadone and frequent morphine shots and his pain was relieved.          passed away the same day in the presence of family.

          smoked approximately 2 packs per day for twenty years, quitting in 1963.

Medical expenses exceed $75,000.

          suffered loss of consortium in an amount according to proof.

Total funeral and related expenses were $840.

An economic loss statement is pending and will be made available to defendants upon receipt.


## III. LIABILITY

Defendants are the manufacturers and/or distributors of the asbestos-containing products plaintiff encountered at his work sites.

Defendant **AMERICAN ASBESTOS** manufactured, distributed and/or sold asbestos-containing insulation products to          job sites.

          was exposed to asbestos-containing products manufactured and/or distributed by **ANCHOR PACKING**, including but not limited to cloth gaskets, gasket materials and packing, sheet and woven asbestos yarn while working at the Standard Oil refinery for various employers on various occasions between 1955 to 1982.

**CONSOLIDATED INSULATION COMPANY** and **DOUGLASS INSULATION COMPANY** installed and/or supplied asbestos-containing products, including but not limited to cement, block and pipe covering to construction sites where plaintiff worked.

          was exposed to asbestos-containing sheet, gaskets and packing materials manufactured, distributed and/or sold by **GARLOCK, INC.** while employed as described above.

          was exposed to the asbestos-containing joint compound, wall texture ceiling texture and taping compound (Gold Bond brand name and other fill-in products) manufactured, distributed

**REDACTED**



WR GRACE-PIQ 001106-085

and/or sold by **HAMILTON MATERIALS** while working at various sites throughout the course of his career as a carpenter, including new construction.

Defendant **RICH-TEX** sold and/or distributed asbestos-containing taping compound, spray texture and ceiling acoustical spray to             job sites.              worked in the vicinity of persons working with said products.

Plaintiff was exposed to asbestos-containing pipe covering, block insulation and cement (Kaylo brand and other fill-in products) manufactured, distributed and/or sold by **OWENS-CORNING FIBERGLAS.** Owens-Corning Fiberglas Corp., through its contracting division, FENCO, supplied asbestos-containing KAYLO brand pipe covering and block insulation to the   while employed as described above.

     was also exposed to the asbestos-containing insulation and refractory materials manufactured and/or distributed by **PLANT INSULATION,** including but not limited to Pabco brand products, "Precision Molded" insulation, high temperature insulation products, insulation blocks and cement as well as various asbestos-containing cloth compounds, coatings and refractory materials which were present at sites where he worked.

     was exposed to the full line of asbestos-containing insulation, construction and refractory materials manufactured and/or distributed by **QUINTEC,** including but not limited to preformed pipe covering, cloth cements, gasketing and packing materials, in their capacity as a successor to Western Fiberglass and/or Western Fibrous Glass and as a distributor of OWENS-CORNING FIBERGLAS KAYLO and other asbestos-containing products.

     was exposed to asbestos-containing products manufactured by Philip Carey Manufacturing Corporation and manufactured, mined and/or distributed by the **RAPID AMERICAN CORPORATION** group of companies in their capacity as a successor-in-interest to the Philip Carey, Philip Carey Manufacturing, Panacon and Carey Canada Corporations), including but not limited to

REDACTED

REDACTED

13921/go54



REDACTED

CAREYTEMP insulation, CAREY cements and other CAREY insulating products which were used and installed at his various jobsites.

was exposed to Limpet, a form of spray-on asbestos coating and asbestos containing decking and flooring manufactured and/or distributed by SELBY, BATTERSBY & COMPANY and used extensively on ships on which he worked. Plaintiff is unable to more fully describe these products as Defendant SELBY, BATTERSBY & COMPANY has failed to provide descriptions of their products or the locations where their products were used in answers to Interrogatories as required by the court in General Order 29. Plaintiff intends to move at trial to strike the answer of this defendant.

worked aboard ships insulated with asbestos-containing products at the Triple A Shipyard, owned and operated by TRIPLE A MACHINE SHOP, INC.

was also exposed to asbestos-containing thermal insulation material, pipe covering insulation, block and cement, coatings, construction materials, rope, board, gaskets, packing material as well as to raw asbestos, and other products manufactured and/or distributed by one or more of the defendants represented by the CENTER FOR CLAIMS RESOLUTION, at construction sites. Among the products to which he was exposed are: ARMSTRONG asbestos-containing floor tiles, thermal insulation and cements; asbestos-containing thermal insulation material, pipe covering, block, cement board, plaster, fireproofing plaster, exterior finish stucco, joint compound, taping compound, texture paint, acoustical plaster and spray, acoustical ceiling tiles, drywall surfacer, siding, shingles, sheetrock, cement siding and wallboard sold and distributed by U.S. GYPSUM; GAF asbestos-containing building materials; sheetrock products, thermal insulation and cements; FLEXITALLIC asbestos gaskets; ASBESTOS CLAIM MANAGEMENT (formerly National Gypsum)'s asbestos-insulating cement, asbestos joint compound, Gold Bond wool board, Gold Bond adhesive, asbestos tape, asbestos paper and asbestos paint; sprayed Limpet asbestos, raw asbestos fiber, raw crocidolite fiber distributed, supplied and/or sold by T & N; asbestos-containing products manufactured, supplied, and/or sold by QUIGLEY COMPANY; asbestos-containing refractory products manufactured, sold, and/or supplied by A.P GREEN INDUSTRIES INC. AND A.P. GREEN REFRACTORIES



WR GRACE-PIQ 001106-087

including insulating cement, insulation adhesive, insulation coating, asbestos firebrick and asbestos castables.

UNITED STATES MINERAL PRODUCTS COMPANY provided spray-on "limpet" and/or fireproofing sprayed at                various places of employment.

Defendant SURADUR MANUFACTURING CORPORATION manufactured and marketed siding and roofing products which contained chrysotile asbestos which was distributed to various jobsites where        performed work.        purchased defendant's products, as well in order to perform repairs on various housing units.

was further exposed to the full array of asbestos-containing insulation, construction and refractory materials manufactured and/or distributed by WESTERN MACARTHUR COMPANY including but not limited to pre-formed pipe covering, cloth, cements, gasketing and packing materials while working at the various sites noted above.

## IV.  SETTLEMENTS AND DEMANDS

Settlements negotiated in this case are as follows:                $22,500

Demands to the remaining defendants are as follows:

| | |
|---|---|
| American Asbestos | $25,000 |
| Anchor Packing | $25,000 |
| C R B Ins | $75,000 |
| Center for Claims Resolution | $175,000 |
| Consolidated Insulation | $25,000 |
| Douglass Insulatio | $25,000 |
| Garlock Packin | $35,000 |
| Hamilton Materials | $75,000 |
| Owens-Corning Fiberglas | $125,000 |
| Plant Insulation | $75,000 |
| Quintec Industries | $125,000 |
| Rapid-American | $125,000 |
| Rich-Tex | $125,000 |
| Selby, Battersby & Company | $65,000 |
| Supradur | $95,000 |
| Triple A | $45,000 |
| U.S. Mineral Products | $175,000 |
| Western MacArthur | $950,000 |

All other defendants are engaged in group settlement negotiations with plaintiff and therefore no demands as to them are stated.

REDACTED

WR GRACE-PIQ 001106-088

DATED:  December 27, 2005

WARTNICK, CHABER, HAROWITZ,
SMITH & TIGERMAN

By _____
HARRY F. WARTNICK
Attorneys for Plaintiff

13921/go54

7



WR GRACE-PIQ  001106-089

## DECLARATION OF SERVICE BY MAIL
### (CCP §§ 1013(a), 2015.5)

I, the undersigned, under penalty of perjury, declare and say:

That I am, and was at the times of the service hereinafter mentioned, over the age of 18 years, a citizen of the United States, and not a party to the within entitled cause of action. My business address is 101 California Street, 26th Floor, San Francisco, CA 94111, and I am employed in the City and County of San Francisco, State of California.

On the date last written herein I served

**PLAINTIFF'S FACTUAL STATEMENT PURSUANT TO GENERAL ORDER 54**

by placing for collection and deposit in the United States mail a copy of said document at 101 California Street, 26th Floor, in San Francisco, California, in a sealed envelope, with postage fully prepaid, addressed to:

### SEE ATTACHED

I am readily familiar with the firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. Service of the above-described document would have been deposited with the United States Postal Service on the same day as the date last written herein, the same day on which said document was placed at WARTNICK, CHABER, HAROWITZ, SMITH & TIGERMAN for deposit in the United States Postal Service.

Executed on December 27, 2005 at San Francisco, California.

_____

SERVICE LIST -          **REDACTED**

WR_GRACE-PIQ 001106-090

1  BERRY & BERRY, Designated Defense Counsel, P.O. Box 70250, Oakland,
CA 94612-0260

2  ARCHER, MCCOMAS, BRESLIN, MCMAHON & CHRITTON, 2033 North Main Street,
#800 P.O. Box 8035, Walnut Creek, CA 94596
     Phone: (510) 930-6600  Fax: (510) 930-6620
     Waldron Duffy

5  GLASPY & GLASPY, 100 Pringle Dr., #750 , Walnut Creek, CA 94596
     Phone: (510) 947-1300  Fax: (510) 947-1594
     Anchor Packing Company
     Garlock, Inc.

6  GORDON & REES, 275 Battery St., 20th Fl. , San Francisco, CA 94111
     Phone: (415) 986-5900  Fax: (415) 986-8054
     Rapid American Corporation
     W. R. Grace & Company

8  HASSARD BONNINGTON, Two Embarcadero Ctr., #1800 , San Francisco, CA 94111
     Phone: (415) 288-9800  Fax: (415) 288-9801
     Pittsburgh-Corning Corp.

10  JACKSON & WALLACE, 580 California St., 15th Fl. , San Francisco, CA 94104
     Phone: (415) 982-6300  Fax: (415) 982-6700
     Arizona Sash & Door Company
     Plant Insulation Company

15  SCADDEN, HAMILTON & RYAN, 580 California St., #1400 , San Francisco, CA 94104
     Phone: (415) 362-5116  Fax: (415) 362-4214
     Foster Wheeler Boiler Corporation, Foster Wheeler Energy Corporation, Foster Wheeler USA
Corporation
     Riley Stoker Corporation

16  ST.PETER & COOPER, 3 Embarcadero Center, #2900 , San Francisco, CA 94111
     Phone: (415) 955-0700  Fax: (415) 955-0711
     ACANDS, INC.

17  VOGL & MEREDITH, 456 Montgomery St., 20th Fl. , San Francisco, CA 94104
     Phone: (415) 398-0200  Fax: (415) 398-2820
     American Asbestos Company

18  WALSWORTH, FRANKLIN, BEVINS & MCCALL, 580 California St., #1335 , San
Francisco, CA 94104
     Phone: (415) 781-7072  Fax: (415) 391-6258
     Hamilton Materials, Inc.
     Quintec Industries, Inc.
     Selby, Battersby & Company

21  MULLALLY & CEDERBORG, INC., 1405 Central Building 436 - 14th Street, Oakland, CA
94612
     Phone: (510) 444-0992  Fax: (510) 763-6978
     Kentile Floors, Inc.

13921/go54



WR GRACE-PIQ 001106-091

22 IMAI, TADLOCK & KEENEY, 180 Montgomery St., #1000 , San Francisco, CA 94104
Phone: (415) 989-8687  Fax: (415) 989-7640
Rich-Tex, Inc.

49 SEDGWICK, DETERT, MORAN & ARNOLD, One Embarcadero Ctr., 16th Fl. , San
Francisco, CA 94111
Phone: (415) 781-7900  Fax: (415) 781-2635
Consolidated Insulation, Inc.

101 OPTON, HANDLER, GOTTLIEB, FEILER, LANDAU & HIRSCH, 52 Vanderbilt Avenue ,
New York, NY 10017
Supradur Manufacturing Corporation

146 DANAHER, TEDFORD, LAGNESE & NEAL, P.C., Capitol Place 21 Oak Street, #700,
Hartford, CT 06106
Phone: (203) 247-3666  Fax: (203) 547-1321
Pittsburgh-Corning Corp.

158 LOW, BALL & LYNCH, 601 California St., 21st Fl. , San Francisco, CA 94108
Phone: (415) 981-6630  Fax: (415) 982-1634
Douglass Insulation Co., Inc.

189 PRINDLE, DECKER & AMARO, 369 Pine St., #800 , San Francisco, CA 94104
Phone: (415) 788-8354  Fax: (415) 788-3625
M. H. Detrick Company
Triple A Machine Shop, Inc.

216 TILLY & GRAVES, 500 Sansome Street, #800 , San Francisco, CA 94111
Phone: (415) 955-8925  Fax: (415) 955-8933
Owens-Corning Fiberglas Corporation

223 HAIGHT, BROWN & BONESTEEL, 201 Sansome St., 3rd Fl. , San Francisco, CA 94104
Phone: (415) 986-7700  Fax: (415) 986-6945
Armstrong World Ind
Asbestos Claims Management Corporation, formerly known as National Gypsum Company
Flexitallic, Inc.
GAF Corporation
Quigley Company, Inc.
T&N, plc, sued herein as Turner & Newall, PLC
United States Gypsum Co.

233 SCHAFFER & LAX, 5757 Wilshire Blvd., #600 , Los Angeles, CA 90036
Phone: (213) 934-4300  Fax: (213) 931-5680
U. S. Mineral Products Company

C.R.B. Insulation



WR GRACE-PIQ 001106-092

```
SSA-1826               ITEMIZED STATEMENT OF EARNINGS
VERSION 1984.002 * * *      FOR SSN
                                        REDACTED


FROM:  SOCIAL SECURITY ADMINISTRATION
       OFFICE OF CENTRAL RECORDS OPERATIONS
       BALTIMORE, MARYLAND  21235-0000


                              NUMBER HOLDER NAME:

                                  REDACTED


PERIODS REQUESTED  JANUARY 1940  THRU  DECEMBER 1997

YEAR  JAN - MARCH  APRIL - JUNE  JULY - SEPT  OCT - DEC    TOTAL


EMPLOYER NUMBER:  11-1235255
R A C CORPORATION
FARMINGDALE, NY  11735

1942                             425.78      794.41 $   1,220.19
1943     362.61                                     $     362.61
1944                 13.77                          $      13.77
1945                                         310.73 $     310.73
1946     162.81                                     $     162.81

EMPLOYER NUMBER:  11-0811072
CRESTWOOD DAIRY INC
P O BOX 127
COPIAGUE, NY  11726

1946      28.40                                     $      28.40

EMPLOYER NUMBER:  11-1525815
A. VIERBR, CORD
40 S. MAIN ST
FREEPORT, NJ  00000

1946      67.20       95.50       92.82        4.50 $     260.02
1947                 323.81                          $     323.81
                              PAGE 001
```



WR GRACE-PIQ 001106-093

SSA-1826                     ITEMIZED STATEMENT OF EARNINGS
VERSION 1984.002 * * *        FOR SSN
                                            **REDACTED**


YEAR  JAN - MARCH  APRIL -JUNE  JULY - SEPT   OCT - DEC      TOTAL


EMPLOYER NUMBER:  11-0662560
D E BURNER & FUEL CORP
% ANDERSON 360—HEMPSTEAD AVE
ROCKVILLE CENTRE, NY  11570

1947                                215.14     530.18 $      745.32

EMPLOYER NUMBER:  11-1567087
GEORGE J RYAN
BOX 78
NASSAU N.Y.

1947                                  8.68              $       8.68

EMPLOYER NUMBER:  11-1566139
WHIPPLE MOTORS INC.
209 N FRANKLIN ST
HEMPSTEAD, NY  11550

1948          97.50                                     $      97.50

EMPLOYER NUMBER:  11-1366780
THEO J STEFFEK
49 NORTH MAIN ST
FREEPORT, NY  11520

1948                      187.50                        $     187.50

EMPLOYER NUMBER:  11-1510217
ROSDALE BEVERAGE CO
305 MERRICK RD
VALLEY STREAM, NY  00000

1948                       46.63                        $      46.63

                              PAGE 002


WR GRACE-PIQ 001106-094

SSA-1826                    ITEMIZED STATEMENT OF EARNINGS
VERSION 1984.002 * * *        FOR SSN
                                          **REDACTED**

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|------|-------------|-------------|-------------|-----------|---|---------|

EMPLOYER NUMBER: 11-1441166
CORD VIEBROCK
TA VIEBROCKS
40 SOUTH MAIN ST
FREEPORT, NY  11520

| | | | | | | |
|------|-------------|-------------|-------------|-----------|---|---------|
| 1948 | | | 81.25 | | $ | 81.25 |
| 1949 | | 137.00 | 761.91 | 392.26 | $ | 1,291.17 |
| 1950 | 292.44 | 254.66 | 263.14 | 96.99 | $ | 907.23 |

EMPLOYER NUMBER: 11-1589192
ROLLAND HAMPTON
206 FULTON AVE
HAMPSTEAD N.Y.

| | | | | | | |
|------|-------------|-------------|-------------|-----------|---|---------|
| 1948 | | | 404.13 | 407.00 | $ | 811.13 |
| 1949 | 448.75 | 513.28 | | | $ | 962.03 |

EMPLOYER NUMBER: 52-0579835
FAIRCHILD INDUSTRIES INC
PO BOX 10803
CHANTILLY, VA  22021

| | | | | | | |
|------|-------------|-------------|-------------|-----------|---|---------|
| 1950 | 489.44 | 714.42 | 702.92 | 657.84 | $ | 2,564.62 |
| 1951 | 588.96 | | | | $ | 588.96 |

EMPLOYER NUMBER: 13-1332740
THE SPERRY CORP
30 ROCKEFELLER PLAZA
NEW YORK, NY  00000

| | | | | | | |
|------|-------------|-------------|-------------|-----------|---|---------|
| 1951 | 179.92 | 1,065.63 | 1,028.08 | 1,146.53 | $ | 3,420.16 |
| 1952 | 1,435.08 | 1,467.24 | 697.68 | | $ | 3,600.00 |
| 1953 | 1,630.28 | 929.97 | 1,039.75 | | $ | 3,600.00 |
| 1954 | 804.42 | 911.93 | 1,057.51 | 826.14 | $ | 3,600.00 |
| 1955 | 818.81 | 304.32 | | | $ | 1,123.13 |

3


WR GRACE-PIQ 001106-095

```
SSA-1826              ITEMIZED STATEMENT OF EARNINGS
VERSION 1984.002 * * *       FOR SSN
                                              REDACTED


YEAR  JAN - MARCH  APRIL -JUNE  JULY - SEPT   OCT - DEC       TOTAL


EMPLOYER NUMBER:  11-0763781
INTL UNION OF ELECTRONIC ELECTRICAL
 SALARIED MACH&FURN WORKERS AFLCIO
450 IUE
260 07 HILLSIDE AVE
FLORAL PARK, NY  11004

1953                                           144.02 $       144.02
1954      167.13                                       $       167.13
1955      113.11                                       $       113.11

EMPLOYER NUMBER:  11-1845286
JALINDOW INC
174 W MERRICK RD
MERRICK, NY  11566

1957                                           550.00 $       550.00
1958    1,300.00    1,300.00    1,545.00        55.00 $     4,200.00
1959    1,625.00    1,625.00    1,550.00              $     4,800.00
1960    1,125.00               2,300.00       1,015.00 $     4,440.00

EMPLOYER NUMBER:  11-1563381
POSILLICO CONSTR CO INC
31 TENNYSON AVE
WESTBURY, NY  11590

1971                                         2,060.35 $     2,060.35

EMPLOYER NUMBER:  11-1879176
THULE CONSTR CO INC
50 N NEW YORK AVE
HALESITE, NY  11743

1972               1,187.20                           $     1,187.20

EMPLOYER NUMBER:  11-2225332
BRAVERMAN DEVELOPMENT CORP
99 HAWTHORNE AVE
VALLEY STREAM, NY  11580

1972                176.40                            $       176.40
```

PAGE 004


WR GRACE-PIQ 001106-096

SSA-1826              ITEMIZED STATEMENT OF EARNINGS
VERSION 1984.002 * * *      FOR SSN
                                        **REDACTED**

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|------|-------------|-------------|-------------|-----------|---|-------|

EMPLOYER NUMBER:  86-0182033
GIL LAMB CONSTRUCTION CO
3820 E BELLVUE
TUCSON, AZ  85716

| 1972 | | | 636.00 | 2,899.00 | $ | 3,535.00 |
|------|--------|--------|--------|--------|---|----------|
| 1973 | 3,068.00 | 3,376.75 | 364.00 | 2,911.25 | $ | 9,720.00 |
| 1974 | 3,232.00 | 3,697.50 | 3,958.50 | 2,312.00 | $ | 13,200.00 |
| 1975 | 1,609.51 | 398.75 | | | $ | 2,008.26 |

EMPLOYER NUMBER:  94-2705369
EKERN LTD
7931 E JULIA PL
TUCSON, AZ  85710

| 1981 | - | - | - | - | $ | 757.97 |
|------|---|---|---|---|---|--------|

EMPLOYER NUMBER:  86-0410866
FRATERNAL ORDER OF POLICE
TUCSON METROPOLITAN F O P INC
% WILLIAM A GOLDBERG CPA LTD
3445 N DODGE BLVD
TUCSON, AZ  85716

| 1985 | - | - | - | - | $ | 3,000.00 |
|------|---|---|---|---|---|----------|

SELF EMPLOYMENT:

| 1955 | - | - | - | - | $ | 2,679.18 |
|------|---|---|---|---|---|----------|
| 1956 | - | - | - | - | $ | 2,655.19 |
| 1957 | - | - | - | - | $ | 1,810.30 |
| 1961 | - | - | - | - | $ | 3,725.28 |
| 1962 | - | - | - | - | $ | 2,988.47 |
| 1963 | - | - | - | - | $ | 4,433.74 |
| 1964 | - | - | - | - | $ | 4,614.12 |
| 1965 | - | - | - | - | $ | 3,653.53 |
| 1966 | - | - | - | - | $ | 3,548.34 |
| 1967 | - | - | - | - | $ | 3,560.54 |
| 1968 | - | - | - | - | $ | 4,559.00 |



WR GRACE-PIQ 001106-097

SSA-1826              ITEMIZED STATEMENT OF EARNINGS
VERSION 1984.002 * * *      FOR SSN
                                        **REDACTED**

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|------|-------------|-------------|-------------|-----------|---|-------|
| 1969 | - | - | - | - | $ | 4,962.00 |
| 1970 | - | - | - | - | $ | 4,896.00 |
| 1971 | - | - | - | - | $ | 3,772.00 |
| 1976 | - | - | - | - | $ | 648.00 |
| 1977 | - | - | - | - | $ | 9,144.00 |
| 1978 | - | - | - | - | $ | 14,404.00 |
| 1979 | - | - | - | - | $ | 3,882.00 |
| 1980 | - | - | - | - | $ | 4,283.00 |
| 1982 | - | - | - | - | $ | 2,423.00 |
| 1990 | - | - | - | - | $ | 2,484.00 |

THERE ARE NO OTHER EARNINGS RECORDED UNDER THIS SOCIAL SECURITY
NUMBER FOR THE PERIOD REQUESTED.

                        PAGE 006 END

## CERTIFICATION OF VITAL RECORD

WR GRACE-PIQ 001106-098

# STATE OF ARIZONA
### Certified Copy of Vital Record

DEPARTMENT OF HEALTH SERVICES – OFFICE OF VITAL RECORDS    DEATH NO. 01-001810

STATE COPY

### CERTIFICATE OF DEATH    D 102-

REDACTED

| NAME OF DECEASED | A. FIRST | B. MIDDLE | C. LAST | SEX MALE | DATE OF DEATH: FEBRUARY 11, 1991 |
|---|---|---|---|---|---|

RACE: White — WAS DECEDENT OF HISPANIC ORIGIN: No — IF YES, INDICATE MEXICAN, SPANISH, PUERTO RICAN, CUBAN, ETC. — WAS DECEASED EVER IN U.S. ARMED FORCES? Yes — DOA / DOE EMER. / IN PATIENT

COUNTY: Pima — TOWN OR CITY: Tucson — HOSPITAL OR INSTITUTION: St. Joseph's Hospital — IF RESIDENCE, GIVE STREET ADDRESS

DATE OF DEATH: MONTH DAY YEAR — AGE: — MARRIED, NEVER MARRIED, WIDOWED, DIVORCED (SPECIFY): Married — SURVIVING SPOUSE

STATE AND CITY OF BIRTH: Brooklyn, NY — CITIZEN OF WHAT COUNTRY: USA — SOCIAL SECURITY NO. — USUAL OCCUPATION: Contractor — KIND OF BUSINESS OR INDUSTRY: Res/Comm Const.

USUAL RESIDENCE: A. STATE — B. COUNTY — C. TOWN OR CITY — D. ZIP CODE — HOW LONG IN ARIZONA: 19 Years — EDUCATION HIGHEST GRADE COMPLETED: ELEMENTARY-SECONDARY / COLLEGE 3

INSIDE CITY LIMITS: YES — ON RESERVATION: NO — PREVIOUS STATE OF RESIDENCE: New York

FATHER'S NAME — MOTHER'S NAME — ADDRESS — CITY AND STATE — ZIP CODE

BURIAL, CREMATION, REMOVAL, OTHER (Specify): Cremation — DATE: 2/19/91 — CEMETERY OR CREMATORY—NAME/LOCATION: El Encanto Crematory, Tucson, AZ — EMBALMER'S SIGNATURE: NO EMBALMING — CERT. NO. 304

FUNERAL HOME: Adair Funeral Home 1050 N. Dodge Blvd Tucson, Arizona — FUNERAL DIRECTOR: — CERT. NO.

TO THE BEST OF MY KNOWLEDGE, DEATH OCCURRED AT THE TIME, DATE AND PLACE AND DUE TO THE CAUSES STATED — DATE SIGNED: 2-13-91 — HOUR OF DEATH: 3:45 PM

NAME AND ADDRESS OF CERTIFIER, PHYSICIAN, MEDICAL EXAMINER OR TRIBAL LAW ENFORCEMENT: Ralph A. Jackson M.D., 630 N. Silverton Way — PRONOUNCED DEAD (Hour)

DATE REGISTERED: Feb. 19, 1991 — REG. FILE NO. 975 — REGISTRAR'S SIGNATURE: — Deputy — REG. DISTRICT: 1002 — DATE REC'D IN STATE OFFICE: MAR 28 1991

PART I. IMMEDIATE CAUSE (FINAL DISEASE OR CONDITION RESULTING IN DEATH): Carcinoma of Lung — DUE TO OR AS A CONSEQUENCE OF: — DUE TO OR AS A CONSEQUENCE OF: Unknown — APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH: 1 Yr

PART II. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH — AUTOPSY: No — WAS CASE REFERRED TO MEDICAL EXAMINER: Yes-Cremation

MANNER OF DEATH: ☐ NATURAL CAUSES ☐ HOMICIDE ☐ ACCIDENT ☐ PENDING INVESTIGATION ☐ SUICIDE ☐ UNDETERMINED — DATE OF INJURY — INJURY AT WORK — DESCRIBE HOW INJURY OCCURRED — PLACE OF INJURY — WHERE LOCATED — STREET ADDRESS — CITY OR TOWN — STATE

SUPPLEMENTARY ENTRIES

DATE ISSUED: SEP 14 1992

This is a true and exact reproduction of the document officially registered and placed on file in the OFFICE OF VITAL RECORDS, DEPARTMENT OF HEALTH SERVICES, PHOENIX, ARIZONA issued under the authority of A.R.S. 36-341, and by direction of:

ALETHEA O. CALDWELL, Director
Department of Health Services
State Registrar

RENÉE GAUDINO
Assistant State Registrar

1095720

This copy not valid unless prepared on engraved form displaying state seal and impressed with raised seal of issuing agency.

WR GRACE-PIQ   001106-099

1  HARRY F. WARTNICK, ESQ.
2  CARTWRIGHT, SLOBODIN, ROKELMAN
   BOROWSKY, WARTNICK, MOORE, & HARRIS, INC.
3  101 CALIFORNIA ST., SUITE 2600
   SAN FRANCISCO, CA 94111
4  (415) 433-0440

5  ATTORNEYS FOR PLAINTIFFS

6

7         IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

8            IN AND FOR THE COUNTY OF SAN FRANCISCO

9

10                    , individually,                  )
                                                       )
11                                                     )
                    Plaintiffs                         )
12                                                     )
    vs.                                                )
13                                                     )
    RAYBESTOS-MANHATTAN, INC; OWENS-ILLINOIS           )
14  CORPORATION; OWENS-CORNING FIBERGLAS               )
    CORPORATION; THE CELOTEX CORPORATION; ·            )
15  UNARCO INDUSTRIES, INC.; ARMSTRONG CORK            )
    COMPANY; NICOLET INDUSTRIES, INC.; AMATEX          )
16  CORPORATION; H.K.PORTER COMPANY, INC.;             )
    A C & S, INC.; AMERICAN ASBESTOS TEXTILE           )
17  CORPORATION; ESBESTONE CORPORATION; ATLAS          )
    ASBESTOS COMPANY; BALDWIN-EHRET HILL, INC.;)
18  CLAREMONT COMPANY, INC.; COMBUSTION                )
    ENGINEERING, INC.; CROWN CORK AND SEAL;            )
19  EAGLE PICHER INDUSTRIES; EMPIRE-ACE                )
    INSULATION MANUFACTURING CORPORATION;              )
20  FIBREBOARD CORPORATION; THE FLINTKOTE              )
    COMPANY; FOURTY-EIGHT INSULATIONS· INC.;           )
21  GAF CORPORATION; GARLOCK, INC.; HURON              )
    CEMENT DIVISION OF NATIONAL GYPSUM                 )
22  CORPORATION; J. P. STEVENS, & CO., INC.;           )
    KAISER CEMENT CORPORATION; KEASBY AND              )
23  MATTISON COMPANY; KEENE BILLING PRODUCTS           )
    CORPORATION; KEENE CORPORATION; MUNDET             )
24  CORK, INC.; NATIONAL GYPSUM CORPORATION;           )
    PABCO, INC.; PHILIP CAREY MANUFACTURING            )
25  COMPANY; PITTSBURG CORNING CORPORATION;            )
    PITTSBURG PLATE GLASS INDUSTRIES, INC.;            )
26  RUBEROID COMPANY; SEPCO CORPORATION; SMITH )
    ASBESTOS PRODUCTS, INC.; SOUTHERN ASBESTOS )
    COMPANY; STANDARD ASBESTOS MANUFACTURING           )

No.

# 933909

COMPLAINT FOR
DAMAGES

(Wrongful Death)
(Loss of Consor-
tium)

ENDORSED
FILED
San Francisco County Superior Court

JUL 1 - 1991

DONALD W. DICKINSON, Clerk
BY: PETE LOBO, JR.
                        Deputy Clerk

REDACTED

Law Offices of
CARTWRIGHT, SLOBODIN, ROKELMAN, BOROW
WARTNICK, MOORE & HARRIS, INC.
101 CALIFORNIA STREET · 26TH FLOOR · 433-0440
SAN FRANCISCO 94111

WR GRACE-PIQ 001106-100

AND INSULATION COMPANY; PLANT INSULATION          )
COMPANY; UNITED STATES GYPSUM COMPANY; and        )
FIRST DOE through THREE HUNDREDTH DOE,             )
inclusive,                                        )
                                                  )
                    Defendants.                   )
                                                  )

FIRST CAUSE OF ACTION—NEGLIGENCE

(Wrongful Death)



PLAINTIFFS COMPLAIN OF DEFENDANTS, AND EACH OF THEM, AND

FOR A CAUSE OF ACTION FOR NEGLIGENCE (WRONGFUL DEATH)

ALLEGES:

1.  The true names and capacities, whether individual,

corporate, associate, governmental or otherwise, of

defendants FIRST DOE through THREE HUNDREDTH DOE, inclusive,

are unknown to plaintiffs at this time, who therefore sue

said defendants by such fictitious names.  When the true

names and capacities of said defendants have been

ascertained, plaintiffs will amend this Complaint

accordingly.  Plaintiffs are informed and believe and thereon

allege that each defendant designated herein as a DOE is

responsible, negligently or in some other actionable manner,

for the events and happenings hereinafter referred to, and

caused injuries and damages proximately thereby to the

plaintiff, as hereinafter alleged.

2.  At all times herein mentioned, each of the defendants

was the agent, servant, employee and/or joint venturer of his

co-defendants, and each of them, and at all said times, each

CARTWRIGHT, SLOBODIN, BOKELMAN, BOROWSKY,
WARTNICK, MOORE & HARRIS, INC.
101 CALIFORNIA STREET · 26TH FLOOR · 433-0340
SAN FRANCISCO, 94111

-2-



WR GRACE-PIQ 001106-101

## General Objections To W.R. Grace Questionnaire

Claimant herein, through The Wartnick Law Firm, his counsel of record, respectfully states that the questions and requests posed by the Debtor are being asked of the Claimant in place of interrogatories and document requests which otherwise could have been issued in the instant bankruptcy proceeding. Accordingly, all of the obligations and rights within the Federal Rules of Civil Procedure applicable to federal discovery (e.g., Federal Rules of Civil Procedure 26, 33, 34) apply to the Questionnaire requests submitted to the Claimant by the Debtor. As such, the Claimant herein is under no obligation to produce any information that is unduly costly or burdensome, nor is the Claimant required to obtain documents not already in the possession of the Claimant or his agents.

The Claimant specifically objects to this Questionnaire on the basis that it is violative of Federal Rule of Civil Procedure 26(b)(2), Federal Rule of Civil Procedure 33(b)(1) and (b)(4), and Federal Rule of Civil Procedure 34(a) and (b), in that:

    (i)    The Questionnaire, as a discovery request, is unreasonably cumulative and duplicative of information and documentation which is already in the possession of the Debtor and/or its local legal counsel, and/or The Law Firm of Berry & Berry, which is the Designated Defense Counsel for the San Francisco and Alameda County Complex Asbestos Litigation. Obtaining the information and documents sought by the Questionnaire from these sources would be more convenient, less burdensome and less expensive for the Claimant and The Wartnick Law Firm.

    (ii)    The Debtor has had ample opportunity by discovery in the Claimant's underlying action to obtain the information sought. The Debtor, through its local legal counsel, has previously been served with discovery responses and medical records providing the information sought herein.

    (iii)    The burden and expense to the Claimant and to The Wartnick Law Firm of responding to each and every question and sub-question of this Questionnaire outweighs its likely benefit, given the likely liquidation value of the Claimant's asbestos-related claim, the respective financial resources of the Debtor and the Claimant, any issues arguably related to the information sought by the Questionnaire and the alleged importance of responses to the Questionnaire in resolving any issues in this bankruptcy proceeding.

The Claimant objects to the Questionnaire in its entirety as being overbroad and unduly burdensome. It would require literally days of work to complete every question in a single Claimant Questionnaire. The Wartnick Law Firm must complete and return 235 Questionnaires within the time allotted, which is an impossible burden. That this Questionnaire is unduly burdensome is reflected by the detailed nature and scope of its questions. To the best knowledge of Claimant and his/her counsel, the detailed nature and scope of these questions far exceed the scope of any discovery permitted in any asbestos-related bankruptcy proceeding to date.

The Debtor is obviously far more knowledgeable than the Claimant as to the locations where the Debtor's asbestos-containing products were sold, installed, used, manipulated, repaired and removed. The Debtor is obviously far more knowledgeable than the Claimant as to which of its specific asbestos-containing products were so used at each such location. In these responses, the Claimant incorporates by reference as though set forth in full herein the Debtor's Responses To Plaintiff's Standard Interrogatories Pursuant to General Order No. 129 (San Francisco County

1



WR GRACE-PIQ 001106-102

Superior Court), the Debtor's Responses to Plaintiff's Standard Interrogatories Pursuant to General Order No. 29 (San Francisco County Superior Court), the Debtor's Responses to Plaintiff's Standard Interrogatories (Alameda County Superior Court), the Debtor's Responses to Plaintiff's Standard Interrogatories (Solano County Superior Court), and the Debtor's Responses To Plaintiff's Interrogatories Propounded To All Defendants (First and Second Set)(Los Angeles County Superior Court), as well as any and all similar responses to Court-adopted standard interrogatories to defendants in asbestos related actions pending in other jurisdictions.

The Claimant and his/her counsel also object to this Questionnaire on the grounds that it seeks information protected by the attorney-client privilege and attorney work product doctrine. The Questionnaire is replete with objectionable questions. Examples of such include, but are not limited to:

1.  Questions asking whether the Claimant retained Counsel in order to receive any of the services performed by the testing doctor or clinician.
2.  Whether the Claimant is aware of any relationship between the doctor and Claimant's counsel.
3.  Information regarding each and every non-Grace asbestos containing product to which Claimant alleges exposure.
4.  Settlement information for all prior settling defendants, as well as information regarding the amount of all bankruptcy claims payments.

Rule 33(d) of the Federal Rules of Civil Procedure specifically authorizes a party to produce the relevant documents from which the interrogatory may be answered in lieu of answering the interrogatory where "the burden of deriving the answer is substantially the same for the party serving the interrogatory as for the party served." Without waiving and specifically subject to the objections set forth herein, and in a good faith attempt to comply with the Court's order allowing the Debtor to serve this Questionnaire, the Claimant has provided responses to the Questionnaire, either by specifically answering questions or by attaching relevant documents, including interrogatory responses and expert medical reports. The attached documents provide answers responsive to questions which have not been completed in full or in part on the Questionnaire form. The Claimant is informed and believes and thereon alleges that the Debtor, its local counsel, and/or Designated Defense Counsel, was previously served with or voluntarily provided with the majority, if not all, of these documents. To the extent, if any, that the requested information cannot be readily derived from the attached documentation, The Wartnick Law Firm is prepared to meet and confer in good faith regarding potential supplemental responses, or will supplement these responses upon further order of the Court.

2

# THE WARTNICK LAW FIRM

A PROFESSIONAL CORPORATION

WR GRACE-PIQ 001106-103

*Of Counsel*

HARRY F. WARTNICK (1947-2003)
RICHARD A. BRODY
JANE KOEGEL

650 CALIFORNIA STREET, 15TH FLOOR
SAN FRANCISCO, CALIFORNIA 94108
TELEPHONE (415) 986-5566
FACSIMILE (415) 986-5896

STEVEN M. HAROWITZ
STEPHEN M. TIGERMAN
BERT Z. TIGERMAN

January 6, 2006

**By FEDERAL EXPRESS - TRACKING NO.: 7924 8259 0139**

Rust Consulting, Inc.
Claims Processing Agent
Re: W. R. Grace & Company Bankruptcy.
201 South Lyndale Avenue
Fairibault, MN 55021

*Re:* **W. R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE**
**Clients of The Wartnick Law Firm**

To Whom It May Concern:

Enclosed please find completed W. R. Grace Asbestos Personal Injury Questionnaires for clients of The Wartnick Law Firm who are listed below. Please stamp this letter with a "Received" stamp or something similar to indicate receipt, and return it to our office in the enclosed stamped, self-addressed envelope.

The clients whose questionnaires are being submitted are the following:

| No. | Last Name | First Name |
|-----|-----------|------------|
| 1. | Clinton | Richard |
| 2. | Ackerman | David |
| 3. | Borgen | William |
| 4. | Alexander | Thurman |
| 5. | Book | William |
| 6. | Burton | Matthew |
| 7. | Blake | Merle |
| 8. | Asborno | Mario |
| 9. | Bichler | Jacob |
| 10. | Billings | Warren |
| 11. | Bjerke | Howard |
| 12. | Yarnell | Elmore |
| 13. | Wilson, Sr. | John |
| 14. | White | Fulton |
| 15. | Lilienthal | Anna |
| 16. | Williams | Robert |
| 17. | Lazar | Abel |
| 18. | Rice | Willie |
| 19. | Lewis | Victor |

900001 ltr.tr.rust.1-06-06

January 6, 2006
Rust Consulting, Inc.
Claims Processing Agent
Re: W. R. Grace & Company Bankruptcy
Page 2

| No. | Last Name | First Name |
|-----|-----------|------------|
| 20. | Chase | Maurice |
| 21. | Dunbar | D. D. |
| 22. | Lazar | Abel |
| 23. | Barrineau | William |
| 24. | Manning | Richard |
| 25. | Lopes | Confessor |
| 26. | Lehman | Harold |
| 27. | Gishizky | Lev |
| 28. | Nelson | Donald |
| 29. | Stashin | Frank |
| 30. | Mansell | Robert |
| 31. | Pringle | Charles |
| 32. | Poznanovich | John |
| 33. | Prentice | John |
| 34. | Pistol | Dallas |
| 35. | Berk | William |
| 36. | Attaway, Sr. | Billy |
| 37. | Sellers | Donald |
| 38. | Pulasky | Chester |
| 39. | Shaffer | Donald |
| 40. | Alberigi | William |
| 41. | Kennedy | Robert |
| 42. | Beasley | Alfred |
| 43. | Luksys | Francis |
| 44. | Beck | Robert |
| 45. | | |
| 46. | Martin, Sr. | Frank |
| 47. | Livingston | Phillip |
| 48. | Verkerk | Otto |
| 49. | Young | Sonny |
| 50. | Quesada | Louis |
| 51. | Rivera | Cesar |
| 52. | Rogers | Floyd |
| 53. | Tweten | Kenneth |
| 54. | Roberts | William C. |
| 55. | Renner | Warren |
| 56. | McGrew | Fred |
| 57. | Medema | William |

**REDACTED**

January 6, 2006
Rust Consulting, Inc.
Claims Processing Agent
Re: W. R. Grace & Company Bankruptcy
Page 3

WR GRACE-PIQ 001106-105

Please note that the questionnaires were erroneously sent to our former address at 101 California Street, Suite 2200, San Francisco, California 94111. Please correct your records to reflect the following address:

**Bert Z. Tigerman, Firm Administrator**
**The Wartnick Law Firm**
**650 California Street, 15th Floor**
**San Francisco, CA 94108**
**Telephone:    (415) 986-5566**
**Facsimile:    (415) 986-5896**

Very truly yours,

THE WARTNICK LAW FIRM

By _____ For

BERT Z. TIGERMAN

BZT:ns
Enclosures

FedEx | Ship Manager | Label 7924 8259 0139



From:   Origin ID: (415)986-5566
Eddy MacLeod
THE WARTNICK LAW FIRM
15th Floor
650 California Street
SAN FRANCISCO, CA 94108


FedEx
Express



Ship Date: 06JAN06
ActWgt: 40 LB
System#: 1534977/INET2300
Account#: S *********

CLS W278349FM

REF: 900001



Delivery A                         5566

SHIP TO:   (415)986-5566        BILL SENDER

**Claims Agent W.R. Grace**
**Rust Consulting**
**201 South Lyndale Ave.**

**Fairbault, MN 55021**

2 of 2

---

**PRIORITY OVERNIGHT**          **MON**
                                 Deliver By:
TRK#   7924 8259 0139   FORM    09JAN06
                        0201
                                 **RST**      AA

55021       -MN-US

                   XX OWAA

Shipping Label: Your shipment