**REDACTED**                                        **REDACTED**


WR GRACE PIQ 44059-0025

| Defendant | Defendant Status | Disease Alleged | Disease Settled |
|---|---|---|---|
| MORSE-DIESEL CONSTRUCTION CO., | Unresolved | | |
| NARCO | Unresolved | | |
| NATIONAL SERVICES INDUSTRIES,I | Dismissed | | |
| NOSROC CORP | Unresolved | | |
| O'CONNOR CONTRACTORS INC. | Unresolved | | |
| OAKFABCO, INC. | Unresolved | | |
| OWENS-CORNING FIBER-GLASS CORP | Unresolved | | |
| OWENS-ILLINOIS, INC. | Settled | Non-Malignant Disease | Non-Malignant Disease |
| PATTERSON KELLY DIVISION | Unresolved | | |
| PATTERSON PUMP COMPANY | Unresolved | | |
| PEERLESS HEATER CO. INC. | Unresolved | | |
| PEERLESS INDUSTRIES INC. | Unresolved | | |
| PFIZER, INC. | Unresolved | | |
| PITTSBURGH CORNING CORP. | Unresolved | | |
| PLIBRICO COMPANY | Unresolved | | |
| PORTER-HAYDEN COMPANY | Unresolved | | |
| PPG INDUSTRIES, INC. | Unresolved | | |
| PROKO INDUSTRIES INC. | Unresolved | | |
| PUERTO RICO SAFETY EQUIPMENT CORPORATION | Unresolved | | |
| QUIGLEY COMPANY | Unresolved | | |
| RAPID AMERICAN CORPORATION | Unresolved | | |
| REYNOLDS ALUMINUM COMPANY | Unresolved | | |
| ROBERT A. KEASBEY COMPANY | Unresolved | | |
| RUTLAND FIRE CLAY COMPANY | Unresolved | | |
| SAFEGUARD INDUSTRIAL EQUIPMENT CO., INC. | Unresolved | | |
| SEQUOIA VENTURES, INC., f/k/a BECHTEL CORPORATION | Unresolved | | |
| STONE & WEBSTER ENGINEERING | Unresolved | | |
| T&N | Unresolved | | |
| THE OKONITE COMPANY | Unresolved | | |
| THE TISHMAN CONSTRUCTION CORPORATION | Unresolved | | |
| TISHMAN LIQUIDATING CORP. | Unresolved | | |
| TREADWELL CORPORATION | Unresolved | | |
| UNION CARBIDE | Unresolved | | |
| UNIROYAL(U.S. RUBBER) | Unresolved | | |
| UNITED CONVEYOR CORPORATION | Unresolved | | |
| UNITED STATES GYPSUM COMPANY | Unresolved | | |
| UNITED STATES MINERAL PRODUCTS COMPANY | Unresolved | | |
| VIACOM, INC., as successor by merger to CBS CORPORATION, f/k/a WESTINGHOUSE ELEC | Unresolved | | |
| W.R. GRACE & CO. | Unresolved | | |
| WEIL-MCLAIN COMPANY, INC. | Unresolved | | |
| WHITING CORPORATION | Unresolved | | |
| WORTHINGTON CORPORATION | Settled | Non-Malignant Disease | Non-Malignant Disease |
| YORK INDUSTRIES CORP. | Unresolved | | |

WR GRACE PIQ 44069-0026

REDACTED

REDACTED

REDACTED

REDACTED

## PART VII: LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA

### b. CLAIMS

| Trust | Date Claim Submitted | Settled |
|---|---|---|
| CELOTEX CORP. | 07/16/2001 | No |
| EAGLE-PICHER INDUSTRIES, INC. | 05/30/2001 | No |
| FORTY-EIGHT INSULATIONS TRUST | 12/29/2000 | No |
| MANVILLE TRUST | 05/02/2001 | Yes |
| NATIONAL GYPSUM CO. TRUST | 02/11/2005 | No |
| UNARCO INDUSTRIES | 12/14/2000 | No |

# RICHARD B. LEVINE, M.D.

WR GRACE PIQ 44069-0027

*Practice Limited to Radiology*

304 Dogwood Lane
Elkins Park, PA 19027
(215) 884-1523

5/04/98

RE:                    **REDACTED**


**CHEST:**

Examination of the chest demonstrates bilateral calcified diaphragmatic plaque along with right-sided pleural thickening.  The findings are pathognomonic of previous occupational exposure to asbestos dust indicating asbestos-related pleural disease.  The osseous and soft tissue structures are intact.

**SUMMARY:**

Asbestos-related pleural disease with calcified pleural plaque.

RICHARD B. LEVINE, M.D.

RBL/fph

2/23/01

*Diplomate American Board of Radiology*
*N.I.O.S.H. "B" Reader*





Feb 21  2004  4 0 PV    BUFFALO CARDIOLOGY + CA: 01

5305 Main St.
Williamsville, NY 14231
Pulmonary Function Report

**REDACTED**

WR GRACE PIQ 44059-0028

29414

Age: 74
Height(in): 72 Weight(lb): 172
Gender: Male
Race: Black
Temp: 18    PBar: 745

Diagnosis: asbestosis
Dyspnea Rest: Yes
Cough: Yes
Smoker: No
Cigarettes: No          Cigars: No

Medication:
Dyspnea Exercise: Yes
Persistent: Yes
How Long(pk/yrs):          Stopped(yrs):
Pipe: No

| | | | Ref | Pre | % Ref | Post | % Ref | %Chg |
|---|---|---|---|---|---|---|---|---|
| **Spirometry** | | | | | | | | |
| FVC | Liters | | 3.83 | 2.84 | 73 | 2.73 | 75 | 3 |
| FEV1 | Liters | | 2.81 | 1.93 | 69 | 1.99 | 71 | 3 |
| FEV1/FVC | % | | 77 | 73 | | 73 | | |
| FEF25-75% | L/sec | | 3.39 | 1.43 | 42 | 1.40 | 41 | -2 |
| FEF50% | L/sec | | 4.27 | 1.84 | 43 | 1.81 | 42 | -2 |
| PEF | L/sec | | 8.60 | 4.48 | 52 | 5.81 | 68 | 30 |
| FET25-75% | Sec | | 0.54 | 0.94 | 173 | 0.99 | 184 | 6 |
| FET100% | Sec | | | 6.76 | | 7.58 | | 12 |
| FIVC | Liters | | 3.63 | 2.86 | 79 | 2.85 | 79 | -0 |
| FIV1 | Liters | | | 2.46 | | 2.34 | | -5 |
| FIV1/FIVC | % | | | 86 | | 82 | | |
| FIF50% | L/sec | | | 2.73 | | 2.75 | | 1 |
| PIF | L/sec | | | 2.85 | | 3.37 | | 18 |
| MVV | L/min | | 129 | 81 | 63 | 85 | 66 | 5 |
| f | BPM | | | 80 | | 75 | | -6 |
| **Lung Volumes** | | | | | | | | |
| TLC | Liters | | 6.93 | 4.04 | 58 | | | |
| VC | Liters | | 3.63 | 2.86 | 79 | | | |
| FRC N2 | Liters | | 4.14 | 1.94 | 47 | | | |
| ERV | Liters | | | 0.76 | | | | |
| RV | Liters | | 2.75 | 1.18 | 43 | | | |
| RV/TLC | % | | 42 | 29 | | | | |
| LCI | | | 7.00 | 7.87 | 112 | | | |
| Wash Time | Min | | | 1.2 | | | | |
| **Diffusing Capacity** | | | | | | | | |
| DLCO | mL/mmHg/min | | 20.2 | 18.5 | 92 | | | |
| DLCO/VA | mL/mHg/min/L | | 3.47 | 4.25 | 123 | | | |

Comments

Spirometry data is ACCEPTABLE and REPRODUCIBLE. Bronchodialator Given : .3cc Alupent with 2cc Saline.

Version: IVS-0101-05-2A

PF Reference: Knudson Cotton Dust RA

Feb.21. 2001  4:01PM   BUFFALO CARDIOLOGY - CAYUGA            No.1759

WR GRACE PIQ  44050-0028

## BUFFALO CARDIOLOGY AND PULMONARY ASSOCIATES, P.C.
5305 Main Street, Buffalo, NY 14221
716-634-5100

29414

## Pulmonary Function Test

**Patient:**                    REDACTED                    **Account #:** 0166752
**DOB:**                                                    **Chart #:** 0634-38
**Phone:**                                                  **Date:** 09/25/2000

**Ordering MD:** Weitz & Luxenberg, ATT.
**Referring MDs:.**

### PULMONARY FUNCTION TEST:

Indication: Asbestosis.

Static Lung Volumes:. The total lung capacity reveals 4.04 liters (58% of predicted) and slow vital capacity is recorded at 2.86 liters (79% of predicted). Functional residual capacity by the dilution method is recorded at 1.94 liters (47% of predicted). RV is recorded at 1.18 liters (43% of predicted). RV:TLC ratio is 29%.

Airway Dynamics: The forced vital capacity is recorded at 2.64 liters (73% of predicted) and FEV1 is recorded at 1.93 liters (69% of predicted) without significant change with bronchodilator therapy. The contour of the flow volume loop reveals an obstructive pattern of a mild degree. The FEV1/FVC ratio is recorded at 73%. Maximum voluntary ventilation is recorded at 81 liters/min (83% of predicted).

Diffusion Capacity: Diffusion capacity of the lung for carbon monoxide is recorded at 18.6 mL/mmHg/min (92% of predicted) and DLCO corrected for alveolar volume is recorded at 4.25 mL/mmHg/min/L (123% of predicted).

### IMPRESSION:

1. The static lung volumes reveal a restrictive pattern of a moderate degree.
2. Airway dynamics reveal an obstructive pattern of a mild degree.
3. Mild airway trapping.
4. Normal diffusion capacity of the lung for carbon monoxide and DLCO corrected for alveolar volume.

jab  09/26/2000                          Nalini J. Namassivaya, MD



Feb.21. 2001  4:31PM   BUFFALO CARDIOLOGY - CA/USA.                    No.9759

### BUFFALO CARDIOLOGY AND PULMONARY ASSOCIATES, P.C.
5300 Main Street,  Buffalo, NY 14221
716-634-5100

WR GRACE PIQ  44069-0090

# CHEST X-RAY

**Patient:**                    **REDACTED**                    Account #:  0166752
**DOB:**                                                        Chart #:   0634-38
**Phone:**                                                        Date:   09/25/2000

   **Ordering MD:**   Weitz & Luxenberg, ATT.
**Referring MDs:**

**File #:** D-4435

### PA AND LATERAL CHEST X-RAY PROJECTIONS

Indication:  Asbestos evaluation.

The lung volumes are within normal limits.  The trachea is in the midline.  The lung parenchyma reveals an increasing reticulonodular pattern especially in the lower lobe than the upper lobes.  Also notable for a nodular density in the right upper lobe.  There are also multiple ill-defined opacities bilaterally.  Notable for calcified pleural plaques present on the bilateral hemidiaphragm and notable for pleural thickening.  No evidence of cardiomegaly or pleural effusion.  The bony structures are within normal limits.

### IMPRESSION:

1.  Right upper lobe nodular density.  Recommend CT scan of the chest for further evaluation.
2.  Calcified pleural plaques, pleural thickening without pleural effusion.
3.  Increasing interstitial and alveolar pattern, question asbestos related interstitial lung disease.
4.  No cardiomegaly.

jab.  09/28/2000                    Nalini J. Namsasivaya, MD.

SSN: **REDACTED**

NAME:

DATE 5/4/98
OF X-RAY:

A X F
29414
WR GRACE PIQ 44069-0031

| 1B. FILM QUALITY | 1C. IS FILM COMPLETELY NEGATIVE? |
|---|---|
| X 2 3 4 | YES ☐   NO ☒ |

**1A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**   YES ☐  COMPLETE 1B and 1C   NO ☒   PROCEED TO SECTION 3

**1B. SMALL OPACITIES**

a. SHAPE/SIZE

| PRIMARY | SECONDARY |
|---|---|
| p s | p s |
| q t | q t |
| r u | r u |

b. ZONES

c. PROFUSION
| 0/- | 0/0 | 0/1 |
| 1/0 | 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/4 |

**1C. LARGE OPACITIES**

SIZE 0 A B C

PROCEED TO SECTION 3

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**   YES ☒  COMPLETE 3B, 3C and 3D   NO ☐   PROCEED TO SECTION 4

**3B. PLEURAL THICKENING**

a. DIAPHRAGM (plaque)
SITE 0 R X

c. COSTOPHRENIC ANGLE
SITE R̶ L̶

**3C. PLEURAL THICKENING... Chest Wall**

a. CIRCUMSCRIBED (plaque)

| | SITE | 0 | X |
|---|---|---|---|
| IN PROFILE | 0 X B C |
| b. WIDTH | 0 X 2 3 |
| c. EXTENT | 0 X 2 3 |
| FACE ON c. EXTENT | 0 X 1 2 3 |

| | SITE | X | L |
|---|---|---|---|
| IN PROFILE | 0 A B C |
| b. WIDTH | 0 1 2 3 |
| c. EXTENT | 0 1 2 3 |
| FACE ON c. EXTENT | 0 1 2 3 |

b. DIFFUSE

| | SITE | X | R |
|---|---|---|---|
| IN PROFILE | 0 A B C |
| b. WIDTH | 0 1 2 3 |
| c. EXTENT | 0 1 2 3 |
| FACE ON c. EXTENT | 0 1 2 3 |

| | SITE | X | L |
|---|---|---|---|
| IN PROFILE | 0 A B C |
| b. WIDTH | 0 1 2 3 |
| c. EXTENT | 0 1 2 3 |
| FACE ON c. EXTENT | 0 1 2 3 |

**3D. PLEURAL CALCIFICATION**

SITE 0 X EXTENT
a. DIAPHRAGM — 0 L X 3
b. WALL X 1 2 3
c. OTHER SITES X 1 2 3

SITE 0 X EXTENT
a. DIAPHRAGM 0 X 2 3
b. WALL X 1 2 3
c. OTHER SITES X 1 2 3

PROCEED TO SECTION 4

**4A. ANY OTHER ABNORMALITIES?**   YES ☐  COMPLETE 4B and 4C   NO ☒   PROCEED TO SECTION 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

| 0 | ax | bu | ca | cn | co | cv | cr | di | ef | em | es | fr | hi | ho | id | ih | kl | pi | px | rp | tb |

Report items which may be of present clinical significance in this section.

(SPECIFY od)   00

Date Personal Physician notified?
| MONTH | DAY | YR |

**4C. OTHER COMMENTS**

_____
_____
_____
_____

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C?   YES NO   PROCEED TO SECTION 5

| 5. FILM READER'S INITIALS | PHYSICIAN'S SOCIAL SECURITY NUMBER | DATE OF READING |
|---|---|---|
| R R L | 0 6 4 0 8 1 1 2 | MONTH 7 DAY 13 YR 98 |

Complete if

NAME (LAST—FIRST—MIDDLE)
LEVINE RICHARD BARRY

REDACTED REDACTED

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

WR GRACE PIQ 44059-0092

| | | |
|---|---|---|
| In re: | } | Chapter 11 |
| | } | |
| W.R. GRACE & CO., et al | } | Case No. 01-1139(JKF) |
| | } | (Jointly Administered) |
| Debtors. | } | |

## CLAIMANT'S OBJECTIONS AND RESPONSES TO THE
## W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

Claimant[1]                     by and through his/her counsel, Weitz & Luxenberg, P.C., submits the following objections and responses to the "W.R. Grace Asbestos Personal Injury Questionnaire" ("Questionnaire"). In order to maintain the integrity of the formatting on Debtor's Questionnaire, Claimant has set out all of his/her general and specific objections in the following separate sections of this response and hereby incorporates each of these objections into Claimant's Questionnaire responses by reference herein.

## CLAIMANT'S GENERAL OBJECTIONS TO THE W.R. GRACE ASBESTOS
## PERSONAL INJURY QUESTIONNAIRE

Claimant hereby files these objections in response to the Questionnaire propounded by W.R. Grace.

1.      Claimant objects to the Questionnaire and its Instructions to the extent that they impose discovery obligations beyond those of the Federal Rules of Bankruptcy Procedure and/or the rules of civil procedure in the state where Claimant filed an asbestos personal injury lawsuit. Claimant will respond to the discovery Questionnaire in accordance with those rules. Claimant objects to the Instructions as they make document requests that are overly broad, harassing, and not reasonably calculated to lead to the discovery of admissible evidence. Claimant contends that the burden and expense of responding to Debtor's Questionnaire in the format requested by Debtor outweighs its likely benefit.

2.      Claimant objects to the Questionnaire and its Instructions to the extent that they seek information or identification of documents that are attorney work product, subject to the attorney-client or consulting expert privileges, or are otherwise not discoverable under the Federal Rules of Bankruptcy Procedure or the rules of civil procedure in the state where Claimant filed an asbestos personal injury lawsuit. Claimant further objects to the Questionnaire and its Instructions to the extent it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. Inadvertent disclosure of any such information or documents shall not constitute waiver of any privilege.

3.      By providing responses to the Questionnaire, the claimant does not concede that the information provided is discoverable, relevant, or admissible. All responses are provided subject to the objections set forth herein. Each claimant reserves the right to challenge further discovery into the subject matter of

---

[1]      Throughout these Objections and Responses, the "Claimant" means the person identified in the Questionnaire Part I, Subsection a, whether living or deceased, who has or had an alleged asbestos-related disease and who filed an asbestos-related lawsuit either directly or through his/her Estate.

REDACTED           REDACTED



the Questionnaire.

4.    Claimant objects to any request in the Questionnaire that seeks any information that is not in the Claimant's control, custody, or possession; is already in the control, custody or possession of the Debtor; or is obtainable with equal or greater facility by the Debtor. The answers to the majority of the questions in Debtor's Questionnaire may be derived or ascertained from interrogatory responses and documents produced in connection with Claimant's asbestos personal injury lawsuit to which Debtor was a party prior to filing for bankruptcy ("Claimant's Asbestos Lawsuit"). Because the burden of deriving or ascertaining the answer is substantially the same for Debtor as for Claimant, Claimant has specified in Claimant's Questionnaire response the document from which the answer may be derived as permitted by Rule 33(d) of the Federal Rules of Civil Procedure as incorporated by Rule 7033 of the Federal Rules of Bankruptcy Procedure.

5.    In response to this Questionnaire, Claimant objects to the extent that the questions are vague, ambiguous and premature. Moreover, Claimant objects to this Questionnaire to the extent that the scope and content of the information sought is unreasonably cumulative and duplicative.

6.    Claimant objects to this Questionnaire to the extent it requires Claimant to compile documents or information from sources not presently available to Claimants, including documents created or compiled by third parties. Claimant objects to the Questionnaire to the extent it purports to require Claimant to gather and summarize information contained in voluminous papers that are already matters of public record.

7.    Claimant objects to this Questionnaire to the extent that the questions and their discreet sub-parts exceed twenty-five (25) in number.

8.    By submitting this response to the Questionnaire, Claimant does not intend to, and hereby does not, submit to the jurisdiction of the United States District Court for the District of Delaware, to the United States Bankruptcy Court for the District of Delaware, or to any other court. Claimant reserves (i) all objections to jurisdiction and/or venue, (ii) all protections afforded under Federal Rule of Civil Procedure 45 and Federal Bankruptcy Rule of Procedure 9016, and (iii) the right to jury trial afforded under 28 U.S.C. § 157(b)(5).

**REDACTED**                                                        **REDACTED**

## CLAIMANT'S SPECIFIC OBJECTIONS TO THE W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE



WR GRACE PIQ 44059-0034

### INSTRUCTIONS

1.    Claimant objects to Instruction A.1 to the extent that it purports to include claims under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement or indemnity on the ground that it is overly broad and requests information that is not relevant to the subject matter of the estimation proceeding.

2.    Claimant objects to Instruction C in its entirety and Instruction J regarding medical supporting documentation on the ground that it is vague, ambiguous and exceeds the scope of discovery in that it seeks information and documents from experts that is not discoverable and is subject to the work product and consulting expert privileges.  Claimant further objects to the portion of the instruction requiring claimant to "complete a separate Part II for each initial diagnosis and any previous or subsequent diagnosis or diagnostic tests that change or conflict with the initial diagnosis", on the ground that the burden outweighs its likely benefit.  Claimant further objects to the instruction to attach **all** x-ray readings and reports and **all** pulmonary function test ("PFT") results on the ground that it is overly broad and ambiguous.  Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of facts known or opinions held by any expert who has been retained or specially employed in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial. Without limiting the foregoing, Claimant objects to the following provisions of the Discovery Questionnaire as violative of Fed. R. Civ. P. 26(b)(4)(B):

      (a).  Claimant objects to Section C of the Instructions to the extent that it requests the completion of Part II of the Discovery Questionnaire "if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors."

      (b)  Claimant objects to Section C of the Instructions to the extent that it requests the production of "any and all documents" that "support or conflict with your diagnosis."

      (c)  Claimant objects to Section C of the Instructions to the extent that it requests the production of "all x-ray readings and reports."

      (d).  Claimant objects to Section C of the Instructions to the extent that it requests the production of "all pulmonary function test results, including the raw data and all spirometric tracings, on which the results are based."

      (e).  Claimant objects to Section J of the Instructions to the extent that it requests the production of "any and all documents" that "support or conflict with your diagnosis."

      (f).  Claimant objects to Part II of the Discovery Questionnaire to the extent that it requests disclosure of "diagnoses and diagnostic tests" by "multiple doctors" concerning "previous or subsequent diagnoses or diagnostic tests that change or conflict with the original diagnoses."  Claimant urges this objection with regard to all "conditions" for which disclosure is requested.

     Subject to the foregoing, Claimant will attach any x-rays, B-reads, pulmonary function tests or pathology reports considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit.

REDACTED REDACTED



3.    Claimant objects to Instruction D to the extent that it requests Claimant copies of any and all documents establishing that exposure to Grace asbestos products had a substantial causal role in the development of the disease" on _____ that it is ambiguous and exceeds the scope of discovery in that it requests documents that are subject to the work product privilege. Further, Claimant has been barred by the Bankruptcy Code Section 362 stay from pursuing discovery against Debtors.

## PART I: IDENTITY OF INJURED PERSONS AND LEGAL COUNSEL

### Subsection (a)(7) - Daytime Telephone Number of client

Claimant objects to this inquiry on the ground that it is neither relevant nor likely to lead to the discovery of admissible evidence. Claimant is represented by counsel, as reflected herein, and may only be contacted through counsel.

## PART II: ASBESTOS-RELATED CONDITION(S)

1.    **General Objections.**  Claimant objects to Part II of the Questionnaire in its entirety on the ground that it exceeds the scope of discovery in that it seeks information not relevant to the estimation proceeding, information that is privileged, and information from experts that is non-discoverable and is subject to the consulting expert and work product privileges. Additionally, the information sought may be derived from the Claimant's discoverable medical records, which are attached to the Questionnaire. Claimant further objects on the ground that the information requested by this question and its sub-parts is equally available to the Debtor in that it may be derived from Claimant's discoverable medical reports attached to the Questionnaire. Claimant further objects to the Discovery Questionnaire to the extent that it seeks disclosure of any privileged communication between Claimant, and/or a representative of Claimant, and any attorney for Claimant, and/or a representative of any attorney for Claimant. In addition, pursuant to Federal Rule of Civil Procedure 26(b)(3), Claimant objects to the Discovery Questionnaire to the extent that it seeks disclosure of the work product of any attorney for Claimant, including but not limited to the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of Claimant.

2.    **Subsection 1(a)-(f) - Condition Being Alleged.**  Claimant objects to this question and each of its subparts (a-f) on the ground that it exceeds the scope of discovery in that it seeks information not relevant to the estimation proceeding, and information from experts that is non-discoverable and is subject to the consulting expert and work product privileges. Claimant further objects on the ground that the information requested by this question and its sub-parts is equally available to the Debtor in that it may be derived from the claimant's discoverable medical reports attached to the Questionnaire. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

3.    **Subsection 2 - Information Regarding Diagnosis.**

a.    Claimant objects to Part II, Subsection 2 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, seeks information from experts that is non-discoverable, and seeks information that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Claimant further objects to this question to the extent that it purports to require Claimant to gather and summarize information already

                                                                          **REDACTED**

WR GRACE PIQ  44069-0096

contained in documents provided with Claimant's Questionnaire answers, an therefore, obtainable with equal or greater facility by the Debtors. Claimant' of an asbestos-related condition may be based on one or more diagnostic test(.), pathology report(s) or physical examination(s). Therefore, asking Claimant to state a "date of diagnosis" is vague and ambiguous. Subject to and without waiving the foregoing, in response to Part II, Subsection 2, Claimant has provided the date of the medical report prepared by the medical doctor designated by Claimant in Claimant's Asbestos Lawsuit to provide expert medical opinions regarding Claimant's asbestos-related disease as needed to establish the elements of Claimant's claim under state law and has answered the questions regarding such doctor, if such information was readily available. Claimant has attached to this Questionnaire a copy of such expert's report along with any available x-ray readings, pulmonary function test reports ("PFT") and/or pathology reports considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit.   In addition to specifying and attaching a copy of the records from which the answer to Part II, subsection 2 may be derived or ascertained and without waiving Claimant's right to do so pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Claimant has set out in the Questionnaire response the information that is contained in the medical reports and  that was readily available to Claimant's attorney in electronic form.

b.  Claimant further objects to the following questions in Part II, Subsection 2 regarding Claimant's relationship to the diagnosing doctor on the ground that these questions are violative of the attorney-client communication and/or attorney work product privileges, leading, harassing and seek information that is not relevant to the proceeding. Claimant has additional, specific objections for the questions noted below.

---

**With respect to your relationship to the diagnosing doctor, check all applicable boxes:**
Was the diagnosing doctor your personal physicians?     ☐     Yes     ☐     No
Further, Claimants specifically objects to this question on the ground that it is vague and ambiguous.
Was the diagnosing doctor paid for the diagnostic services that he/she performed?     ☐     Yes     ☐     No
*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor?     ☐ Yes ☐No
Further, Claimants specifically objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work products privileges is misleading and biased and cannot be fairly or completely answered with a "yes" or "no".
Was the diagnosing doctor referred to you by counsel?     ☐     Yes     ☐     No
Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privilege.
Are you aware of any relationship between the diagnosing doctor and your legal counsel?     ☐     Yes     ☐     No
Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges.
*If yes, please explain:*

---

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and documents attached hereto.

4.    **Subsection 3 - Information Regarding Chest X-Ray (Location of X-Ray)**

Claimant objects to Part II, Subsection 3 on the ground that it is harassing, and exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, seeks information from experts that is non-discoverable, and seeks information that is subject to the consulting expert and work product privileges. Claimant further objects to this question on the ground that it is vague and ambiguous in that Claimant may have had multiple

REDACTED                    REDACTED



chest x-rays taken that do not change or conflict with Claimant's initial diagnosis of related condition and it would be duplicative, unduly burdensome and harassing to r Claimant to complete a separate Part II for each chest x-ray.

Subject to and without waiving the foregoing, please refer to Claimant's deposition, if available, and any medical records attached hereto.

5.     **Subsection 4 - Information Regarding Chest X-Ray Reading (Results of X-Ray)**

a.     Claimant objects to Part II, Subsection 4 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, information from experts is non-discoverable, and information that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Additionally, Claimant objects to this question on the ground that it is duplicative of other questions herein, and thus is unduly burdensome. Claimant objects to this question on the ground that it is vague and ambiguous in that Claimant may have had multiple chest x-rays taken that do not change or conflict with Claimant's initial diagnosis of an asbestos-related condition and it would be duplicative, unduly burdensome and harassing to require Claimant to complete a separate Part II for each chest x-ray. Subject to and without waiving the foregoing, in response to Part II, subsection 4, Claimant has provided information regarding Claimant's certified B-reader report considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit. Claimant has set out in the Questionnaire response the information relating to Claimant's certified B-reader report that was readily available to Claimant's attorney in electronic form.

b.     Claimant objects to Part II, subsection 4 of the Discovery Questionnaire as violative of the attorney-client communication and/or attorney work product privileges to the extent that it asks: "if Claimant retained counsel in order to receive any of the services performed by the diagnosing doctor;" if "the diagnosing doctor was referred to you by counsel"; and if Claimant is "aware of any relationship between the diagnosing doctor and your legal counsel". Claimant further objects to the following questions in Part II, Subsection 4 regarding Claimant's relationship to the reader on the ground that these questions are leading, harassing and seek information that is not relevant to the proceeding. Claimant has additional, specific objections for the questions noted below.

---

With respect to your relationship to the reader, check all applicable boxes:
Was the reader paid for the diagnostic services that he/she performed?          ☐     Yes     ☐     No
*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the reader?   ☐     Yes     ☐     No
**Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communications and/or attorney work product privileges, is misleading and biased and cannot be fairly or completely answered with a "yes" or "no."**
Was the reader referred to you by counsel?     ☐     Yes     ☐     No
**Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges.**
Are you aware of any relationship between the reader and your legal counsel?   ☐     Yes     ☐     No
**Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges.**
*If yes, please explain:*

---

REDACTED                                                        REDACTED



WR GRACE PIQ 44069-0038

Subject to and without waiving the foregoing, please see Claimant's Questionnaire r documents attached hereto.

6.    **Subsection 5 - Information Regarding Pulmonary Function Test**

   a.    Claimant objects to Part II, Subsection 5 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant to the subject matter of the estimation proceeding, that is non-discoverable, and that is subject to the consulting expert, work product and attorney-client privileges. Claimant further objects to this question as it is not reasonable and necessary to this proceeding and is harassing. Additionally, Claimant objects to this question to the extent that it purports to require Claimant to gather and summarize information contained in documents already provided herewith, and is thus obtainable with equal or greater facility by the Debtor. Subject to and without waiving the foregoing, in response to Part II, Subsection 5, Claimant has provided information regarding Claimant's pulmonary function test ("PFT") considered by Claimant's medical expert in forming his/her opinion in connection with Claimant's Asbestos Lawsuit. Claimant has set out in the Questionnaire response the information relating to Claimant's PFT report that was readily available to Claimant's counsel in electronic form.

   b.    Claimant objects to Part II, subsection 5 of the Discovery Questionnaire as violative of the attorney-client communication and/or attorney work product privileges to the extent that it asks: "if Claimant retained counsel in order to receive any of the services performed by the diagnosing doctor;" if "the diagnosing doctor was referred to you by counsel"; and if Claimant is "aware of any relationship between the diagnosing doctor and your legal counsel". Claimant further objects to the following questions in Part II, Subsection 5 regarding Claimant's relationship to the doctor or clinician who performed the pulmonary function test on the ground that these questions are leading, harassing and seek information that is not relevant to the proceeding. Claimant has additional, specific objections for the questions noted below.

---

With respect to your relationship to the doctor or clinician who performed the pulmonary function test, check all applicable boxes:

If the test was performed by a doctor, was the doctor your personal physician?  ☐ Yes ☐      No
**Further, Claimant specifically objects to this question on the ground that it is vague and ambiguous.**
Was the testing doctor and/or clinician paid for the diagnostic services that he/she performed? ☐  Yes ☐ No
*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician? ☐ Yes ☐   No
**Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client communications and/or attorney work product privileges, is misleading and biased and cannot be fairly or completely answered with a "yes" or "no."**
Was the testing doctor or clinician referred to you by counsel? ☐       Yes      ☐      No
**Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges.**
Are you aware of any relationship between either the doctor or clinician and your legal counsel? ☐ Yes ☐ No
**Further, Claimant objects to this question on the ground that it is violative of the attorney-client communication and/or attorney work product privileges.**
*If yes, please explain:*

---

   c.    Claimant objects to the following questions in Part II, Subsection 5 regarding Claimant's relationship to the doctor interpreting the results of the pulmonary function test on the ground that these questions are violative of the attorney-client communication and/or

REDACTED
REDACTED

attorney work product privileges, leading, harassing and seek information t
relevant to the proceeding. Claimant has additional, specific objections fo
noted below.

WR GRACE PIQ  44069-0039

---

With respect to your relationship to the doctor interpreting the results of the pulmonary function test, check all
applicable boxes:
Was the doctor your personal physician?                       ☐      Yes    ☐      No
**Further, Claimant specifically objects to this question on the ground that it is vague and ambiguous.**
Was the doctor paid for the services that he/she performed?    ☐      Yes    ☐      No
*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the doctor?    ☐      Yes    ☐      No
**Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client
communications and/or attorney work product privileges, is misleading and biased and cannot be fairly or
completely answered with a "yes" or "no."**
Was the doctor referred to you by counsel?         ☐      Yes    ☐      No
**Further, Claimant objects to this question on the ground that it is violative of the attorney-client
communication and/or attorney work product privileges.**
Are you aware of any relationship between either the doctor or clinician and your legal counsel?    ☐  Yes  ☐      No
**Further, Claimant objects to this question on the ground that it is violative of the attorney-client
communication and/or attorney work product privileges.**
*If yes, please explain:*

---

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and
documents attached hereto.

7.    **Subsection 6 - Information Regarding Pathology Reports**

a.      Claimant objects to Part II, Subsection 6 on the ground that it exceeds the scope of
discovery in that it seeks information that is not relevant to the subject matter of the
estimation proceeding, that is non-discoverable, and that is subject to the consulting
expert, work product and attorney-client privileges. Claimant further objects to this
question as it is not reasonable and necessary to this proceeding and is harassing.
Claimant further objects to this question to the extent that it purports to require Claimant
to gather and summarize information contained in documents already provided herewith,
and is thus obtainable with equal or greater facility by the Debtor. Subject to and without
waiving the foregoing, please see Claimant's Questionnaire responses and documents
attached hereto.

b.      Claimant objects to Part II, subsection 6 of the Discovery Questionnaire as
violative of the attorney-client communication and/or attorney work product privileges to
the extent that it asks: "if Claimant retained counsel in order to receive any of the
services performed by the diagnosing doctor;" if "the diagnosing doctor was referred to
you by counsel"; and if Claimant is "aware of any relationship between the diagnosing
doctor and your legal counsel". Claimant further objects to the following questions in
Part II, Subsection 4 regarding Claimant's relationship to the doctor issuing the pathology
report on the ground that these questions are leading, harassing and seek information that
is not relevant to the proceeding. Claimant has additional, specific objections for the
questions noted below.

WR GRACE PIQ 44059-0040

With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:
Was the doctor your personal physician?                ☐     Yes    ☐     No
Further, Claimant specifically objects to this question on the ground that it is vague and ambiguous.

Was the doctor paid for the services that he/she performed?          ☐     Yes    ☐     No
     *If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the doctor?    ☐     Yes    ☐     No
Further, Claimant specifically objects to this question on the ground that it is violative of the attorney-client
communications and/or attorney work product privileges, is misleading and biased and cannot be fairly or
completely answered with a "yes" or "no."
Was the doctor referred to you by counsel?          ☐     Yes    ☐     No
Further, Claimant objects to this question on the ground that it is violative of the attorney-client
communication and/or attorney work product privileges.
Are you aware of any relationship between either the doctor or clinician and your legal counsel?    ☐  Yes  ☐  No
*If yes, please explain:*

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and
documents attached hereto.

8.    **Subsection 7 - Medical Treatment From Doctor for Condition Alleged**

Claimant objects to this question on the ground that it exceeds the scope of discovery in that it
seeks information that is not relevant to the subject matter of the estimation proceeding, that is
non-discoverable, and that is subject to the consulting expert, work product and attorney-client
privileges. Claimant further objects to this question as it is harassing. Additionally, Claimant
objects to Part II, subsection 7 of the Discovery Questionnaire to the extent that it asks if
Claimant "retained counsel in order to receive any of the services performed by the diagnosing
doctor."

Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and
documents attached thereto.

**PART III:  DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS**

Claimant objects to Part III in its entirety on the ground that it is onerous, unduly burdensome
and harassing in that it would require a great amount of time, labor and expense to create a chart
of exposure to Debtor's products in the format requested by Debtor. Claimant further objects to
this question to the extent that it requires Claimant to compile or summarize information made
available to Debtor that is obtainable with equal or greater facility by the Debtor. Subject to and
without waiving the foregoing objections, the information responsive to this request may be
derived from the documents attached to Claimant's Questionnaire, including, where available,
Plaintiff's Exposure History Sheet ("PEH"), and Claimant's Answers to Interrogatories filed in
connection with Claimant's Asbestos Lawsuit (referred to in Questionnaire response as
"interrogatory responses").

**PART IV:  INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS**

1.    Claimant objects to Part IV, question 1 to the extent that it is vague and ambiguous with regard
to the use of the terms "contact/proximity" and "injured person". Claimant further objects to this

REDACTED                                    REDACTED

question on the ground that it implicitly asserts unproven conclusions as established. Specifically, Claimant may have been injured by exposure to Grace products as a r[e] contact or proximity to another person, but not necessarily an "injured" person. To Claimant's ability, Claimant understands the question to ask whether Claimant's injury is caused solely by contact/proximity with another person. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

2.    Claimant objects to Part IV, question 2 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

3.    Claimant objects to Part IV, question 3 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

4.    Claimant objects to Part IV, question 4 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

5.    Claimant objects to Part IV, question 5 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this question to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Additionally, Claimant objects to this question as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding. Claimant also objects to this question on the ground that Claimant may not know the specific day, month, and year of another person's exposure and therefore cannot answer the question. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

6.    Claimant objects to Part IV, question 6 to the extent that it is vague and ambiguous with regard to the use of the undefined term "Other Injured Person". Specifically, there may not be an

REDACTED                                                  REDACTED

"Other Injured Person" responsible for Claimant's injuries. Claimant further objec
question to the extent that it requires Claimant to compile or summarize informati<
available to Debtor that is obtainable with equal or greater facility by the Debtor, c
actually attached to this Questionnaire. Additionally, Claimant objects to this question as it
exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the
estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's
Questionnaire responses and the documents attached hereto.

WR GRACE PIQ 44059-0042

7.     Claimant objects to Part IV, question 7 to the extent that it is vague and ambiguous with regard
       to the use of the undefined term "Other Injured Person". Specifically, there may not be an
       "Other Injured Person" responsible for Claimant's injuries. Claimant further objects to this
       question to the extent that it requires Claimant to compile or summarize information made
       available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is
       actually attached to this Questionnaire. Additionally, Claimant objects to this question as it
       exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the
       estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's
       Questionnaire responses and the documents attached hereto.

8.     Claimant objects to Part IV, question 8 to the extent that it requires Claimant to compile or
       summarize information made available to Debtor that is obtainable with equal or greater facility
       by the Debtor. Claimant further objects to the use of the term "Nature" in that it is vague and
       ambiguous. Subject to and without waiving the foregoing, please see Claimant's Questionnaire
       responses and the documents attached hereto.

9.     Claimant objects to Part IV, question 9 to the extent that it requires Claimant to compile or
       summarize information made available to Debtor that is obtainable with equal or greater facility
       by the Debtor. Claimant further objects to the use of the term "Nature" in that it is vague and
       ambiguous. Subject to and without waiving the foregoing, please see Claimant's Questionnaire
       responses and the documents attached hereto.

10.    Claimant objects to Part IV, question 10 to the extent that it requires Claimant to compile or
       summarize information made available to Debtor that is obtainable with equal or greater facility
       by the Debtor. Additionally, Claimant objects to this question on the ground that Claimant may
       not recall the exact day, month, and year his or her exposure began or ended, and, in that regard,
       this question is unduly burdensome. Subject to and without waiving the foregoing, please see
       Claimant's Questionnaire responses and the documents attached hereto.

## PART V:  EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

       Claimant objects to Part V as it exceeds the permissible scope of discovery in that it is not
       relevant to the subject matter of the estimation proceeding. Claimant objects to this interrogatory
       on the ground that it is unduly burdensome, onerous and harassing in that it would require great
       amount of time, labor and expense to create a chart of exposure in the format requested by
       Debtor and then to create a separate chart for each party against which Claimant has filed an
       asbestos lawsuit or claim. Claimant further objects to Part V to the extent that it requires
       Claimant to compile or summarize information made available to Debtor that is obtainable with
       equal or greater facility by the Debtor. Subject to and without waiving the foregoing objections,
       the information responsive to this request may be derived from the documents attached to
       Claimant's Questionnaire, including, where available, Plaintiff's Exposure History Sheet
       ("PEH"), and Claimant's Answers to Interrogatories filed in connection with Claimant's
       Asbestos Lawsuit ("interrogatory responses"). In addition, Claimant has attached to the

REDACTED
REDACTED

Questionnaire a List of Parties Against which a Lawsuit or Claim was Filed ("List o

WR GRACE PIQ 44059-0043

## PART VI: EMPLOYMENT HISTORY

Claimant objects to Part VI on the ground that it is unduly burdensome and harassing and it would require a great amount of time, labor and expense to complete this section of the Questionnaire in the format requested by Debtors. Claimant further objects to this question because it requires Claimant to compile or summarize information from Claimant's Social Security records that is obtainable with equal or greater facility by the Debtor. Claimant further objects to providing information, including but not limited to, the occupation and industry codes for employers or jobsites where Claimant has not alleged any asbestos exposure as it exceeds the scope of permissible discovery in that it is not relevant to the subject matter of the estimation proceeding, and is harassing to Claimant.

Subject to and without waiving the foregoing objections, the information responsive to this request may be derived from the documents attached to Claimant's Questionnaire, including, where available, Claimant's Itemized Statement of Earnings prepared by the Social Security Administration, Plaintiff's Exposure History Sheet ("PEH"), and Claimant's deposition, if available.

## PART VII: LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA

### Subsection a. - Litigation

1.      Claimant objects to Part VII, Subsection a, question 1 as it is overly broad in that it is not limited to *asbestos- related personal injury* lawsuits; and further, it is not limited to the lawsuit in which Debtor was sued. Claimant responds to this entire Subsection a (questions 1 through 7) as if the question were so limited. Claimant further objects to this subpart to the extent that it requires Claimant to summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor, or that is actually attached to this Questionnaire. Responding to Part VII, Subsection a in the format in Debtor's Questionnaire is harassing and unduly burdensome. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto. Claimant's counsel does not represent Claimant in a lawsuit regarding silica.

2.      Claimant objects to Part VII, Subsection a, question 2, to the extent that it requires Claimant to compile or summarize information made available to Debtor that is obtainable with equal or greater facility by the Debtor. Claimant further objects to this subpart as it is overly broad in that it is not limited to *asbestos- related personal injury* lawsuits. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

3.      Claimant objects to Part VII, Subsection a, question 3 on the ground that it is harrassing in that Grace knows equally as well as Claimant whether or not it was named as a defendant in Claimant's lawsuit, if any. Claimant objects to this subpart as it is overly broad in that it is not limited to *asbestos- related personal injury* lawsuits. Further, Claimant objects to this subpart on the ground that it exceeds the permissible scope of discovery in that it seeks information that is not relevant to the estimation proceeding. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

REDACTED

REDACTED

WR GRACE PIQ 44069-0044

4.      Claimant objects to Part VII, Subsection a, question 4 on the ground ... information that is neither relevant nor necessary to the estimation proceeding. Whether a particular defendant has been dismissed has no bearing on Debtor's several share of the liability. Additionally, Claimant objects on the ground that it is unduly burdensome to provide the basis for dismissal for each of the dismissed defendants, if any. Claimant further objects to this subpart as it is overly broad in that it is not limited to *asbestos-related personal injury* lawsuits. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

5.      Claimant objects to Part VII, Subsection a, question 5 on the ground that it exceeds the scope of discovery in that it seeks information that is not relevant or necessary to the estimation proceeding. The existence and amount of any verdict or judgment against any defendant other than Debtor has no bearing on Debtor's several share of the liability. Claimant objects to this subpart as it is overly broad in that it is not limited to *asbestos- related personal injury* lawsuits. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

6.      Claimant objects to Part VII, Subsection a, question 6 and each of its subparts regarding settlements reached in the lawsuit as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding and requests privileged or confidential information. Specifically, the terms of the settlement agreements, if any, including the settlement amounts, if any, are irrelevant to an aggregate estimate of Debtor's liability. Claimant further objects to this subpart as it is overly broad to the extent that it seeks information beyond *asbestos- related personal injury* lawsuits. Settlements with other defendants are irrelevant to Debtor's several share of the liability, and Debtor would get a set-off or credit for such settlements only for the cases that were tried all the way to judgment, which clearly will not happen in the context of the present proceeding. Further, for a majority of defendants, any settlement agreements are subject to a confidentiality agreement.

Claimant specifically objects to providing the "disease or condition alleged" and the "the disease or condition settled" (Part VII.a.6(c) and (d)) on the ground that it is ambiguous and harassing. Claimant filed a lawsuit alleging Claimant suffered injuries proximately caused by Claimant's exposure to asbestos-containing products designed, manufactured and sold by the Defendants named in the lawsuit, and any settlements were related to those allegations. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the List of Parties attached hereto. Claimant has provided information regarding the status of his/her claim against the Defendants named in Claimant's Asbestos Lawsuit in the attached List of Parties.

7.      Claimant objects to Part VII, Subsection a, question 7 on the ground that it is overly broad and unduly burdensome. Further, Claimant's deposition testimony is duplicative of information already provided herein.    Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

**Subsection b - Claims**

1.      Claimant objects to Part VII, Subsection b, question 1 as it exceeds the

permissible scope of discovery in that it is not relevant to the subject matter estimation proceeding and requests privileged or confidential information. further objects that responding to Part VII, Subsection b in the format in De.... Questionnaire is harassing and unduly burdensome. Additionally, Claimant objects on the ground that this question is overly broad in that it is not limited to *asbestos-related personal injury* claims. Claimant responds to this entire subsection b (questions 1 through 7) as if the questions were so limited. Subject to and without waiving the foregoing, Claimant has provided information regarding the status of his asbestos claim against any asbestos trust in the attached List of Parties.

2.      Claimant objects to Part VII, Subsection b, questions 2 and 3 on the ground that it seeks information that is neither relevant nor necessary to the estimation proceeding. The date and entity against whom a claim was submitted has no bearing on Debtor's several share of the liability. Additionally, Claimant objects on the ground that this question is overly broad in that it is not limited to *asbestos- related personal injury* claims. Subject to and without waiving the foregoing, please see the attached List of Parties.

3.      Claimant objects to Part VII, Subsection b, questions 5 and 6 regarding settlements with an asbestos trust as it exceeds the permissible scope of discovery in that it is not relevant to the subject matter of the estimation proceeding and requests privileged or confidential information. The settlement amounts are not relevant to an aggregate estimate of Debtor's liability or to Debtor's several share of the liability. Additionally, Claimant objects on the ground that this question is overly broad in that it is not limited to *asbestos- related personal injury* claims. Subject to and without waiving the foregoing, Claimant has noted the settled claims on the attached List of Parties.

4.      Claimant objects to Part VII, Subsection b, question 7 on the ground that it seeks information that is neither relevant nor necessary to the estimation proceeding. Whether a particular defendant has been dismissed has no bearing on Debtor's several share of the liability. Additionally, Claimant objects on the ground that it is unduly burdensome to provide the basis for dismissal for each of the dismissed defendants, if any, and it is overly broad in that it is not limited to *asbestos- related personal injury* lawsuits. Subject to and without waiving the foregoing, please see Claimant's Questionnaire responses and the documents attached hereto.

## PART VIII:  CLAIMS BY DEPENDENTS OR RELATED PERSONS

Claimant objects to Part VIII on the ground that information regarding dependents or related persons who sued the Debtors before April 2, 2001 is equally available to Debtors. Subject to and without waiving the foregoing, Claimant has provided information regarding Claimant's spouse where available. Please see attached interrogatory responses and Debtors' own records for information regarding dependents.

REDACTED                                   REDACTED

## QUESTIONNAIRE RESPONSES

WR GRACE PIQ  44059-0046

      Claimant hereby incorporates by reference all of the foregoing general and specific into Claimant's Questionnaire responses and has provided the following responses subject to those objections. Because the burden of deriving or ascertaining the answer is substantially the same for Debtor as for Claimant, Claimant has specified in Claimant's Questionnaire response the document(s) from which the answer may be derived, including but not limited to Claimant's medical records, Plaintiff's Exposure History Sheet, (referred to in Questionnaire response as "PEH"), Claimant's Answers to Interrogatories filed in connection with Claimant's Asbestos Lawsuit (referred to in Questionnaire response as "interrogatory responses"), Claimant's Itemized Statement of Earnings prepared by the Social Security Administration (referred to in Questionnaire responses as "Statement of Earnings") and Claimant's deposition. In addition, Claimant has compiled information responsive to the Questionnaire in the attached List of Parties Against which a Lawsuit or Claim Was Filed (referred to in the Questionnaire responses as "List of Parties").

# W E I T Z
# &
# L U X E N B E R G
### A PROFESSIONAL CORPORATION
· LAW OFFICES ·

180 MAIDEN LANE · NEW YORK, NY 10038
TEL. 212-558-5500          FAX 212-344-5461



WR GRACE PIQ 44069-0047

July 10, 2006

Re:    W.R. Grace Discovery Questionnaire
       Claimant:

**REDACTED**

To Whom It May Concern:

Enclosed please find Claimant's Objections and Responses to the W.R. Grace Asbestos Personal Injury Questionnaire.  Weitz & Luxenberg has not been able to do any specific discovery on W.R. Grace before and since April 2, 2001, the petition date.

As such, this W.R. Grace discovery questionnaire is being submitted under the belief that the plaintiff has potential W.R. Grace exposure.  In order to further process any and all potential W.R. Grace Claims, we must be allowed to do discovery of all W.R. Grace documents to obtain and verify where and when W.R. Grace products were sold and used.

As well, further medical documentation may be provided at the time a W.R. Grace trust is set up if necessary.

Sincerely,

Weitz & Luxenberg, P.C.

WR GRACE PIQ 44069-0048

ORIGINAL LABEL FOR SHIPPING. USING A PHOTOCOPY OF THIS LABEL FOR SHIPPING PURPOSES IS FRAUDULENT AND COULD RESULT IN ADDITIONAL BILLING CHARGES, ALONG WITH THE CANCELLATION OF YOUR FEDEX ACCOUNT NUMBER.

From:   Origin ID: FIDA  (212) 558 5667
Karen Sylander
Weitz & Luxenberg P.C.
180 Maiden Lane
17th Floor
New York, NY 10038

FedEx Express

Ship Date: 12JUL06
Actual Wgt: 1 LB
System#: 606290/FXRS0763
Account#: S *********

REF: 999991-99-General, Bankruptcy

CLS0013DS09/16

SHIP TO:   (212) 558 5500      BILL SENDER
Rust Consulting, Inc
Claims Processing Agent, WR Grace
201 S. Lyndale Avenue

Faribault, MN 55021


Delivery Address Bar Code



STANDARD OVERNIGHT          THU
                           Deliver By:
TRK# 7391 0773 8021  FORM  13JUL06
                      0201
                           MSP   AA
55021   -MN-US

NR FBLA

