## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| _____) | | |
| | ) | |
| **IN RE:** | ) | **Chapter 11** |
| | ) | |
| **W.R. GRACE & CO.,** *et al.*, | ) | **Case No. 01-01139 (JKF)** |
| | ) | **Jointly Administered** |
| | ) | |
| **Debtors.** | ) | **Related to Docket No. 13626** |
| | ) | **Hrg. Date: December 5, 2006** |
| | ) | **Objection Deadline: November 27, 2006** |
| _____) | | |

**RESPONSE AND OPPOSITION OF MOTLEY RICE LLC TO DEBTOR'S MOTION TO COMPEL ASBESTOS PERSONAL INJURY CLAIMANTS REPRESENTED BY EDWARD O. MOODY, P.A., FOSTER & SEAR L.L.P., MOTLEY RICE LLC, AND WILLIAMS BAILEY LAW FIRM, LLP TO RESPOND TO THE W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE AND MOTLEY RICE LLC'S JOINDER IN THE RESPONSES OF VARIOUS LAW FIRMS REPRESENTING ASBESTOS PERSONAL INJURY CLAIMANTS IN OPPOSITION TO <u>DEBTOR'S MOTION TO COMPEL</u>**

COMES NOW, Motley Rice LLC, (hereinafter "Motley Rice") a law firm representing various asbestos personal injury claimants, and hereby files this Response and Opposition of Motley Rice LLC to Debtor's Motion to Compel Asbestos Personal Injury Claimants Represented by Edward O. Moody, P.A., Foster & Sear L.L.P., Motley Rice LLC, and Williams Bailey Law Firm, LLP to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire and Motley Rice LLC's Joinder in the Responses of Various Law Firms Representing Asbestos Personal Injury Claimants in Opposition to Debtor's Motion to Compel. Motley Rice respectfully shows the Court as follows:

## I.  INTRODUCTION.

Before the Court is the latest in a series of attempts by W.R. Grace & Co. and its affiliated companies (hereinafter collectively "Grace" or "Debtor") to acquire information that does not further the accepted purpose of its Questionnaire and instead annoys unnecessarily its would-be creditors, namely those that have been personally injured by Grace.  This is demonstrated by way of comparing the questions that Grace is seeking further responses from claimants through Motley Rice with the recognized goal of the Questionnaire.

This Court has declared repeatedly that the goal of the Questionnaire is solely to provide an "estimation of Grace's asbestos personal injury liability . . . ."  Order Concerning Debtors' Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire, ¶ 1 (Order dated Oct. 12, 2006).  It is evident that this is not a traditional litigation setting.  This is not even a traditional claims determination setting as it is understood by all that the merits of the individual claims will be addressed in a different setting. Instead, Grace is only attempting to estimate its debts to a potential class of creditors—those personally injured by Grace through Grace's use of asbestos, with the assistance of these very same creditors and their counsel.  Each of the following contentions should be viewed with an eye as to whether the information sought actually furthers this ultimate goal.  With that purpose in mind, a review of the general information that Grace seeks to have compelled includes:  (1) information concerning other diagnoses and information and documentation that support these diagnoses, (2) information concerning communications made among claimants, their counsel, and the claimant's physician, and (3) confidential settlement information and information concerning other lawsuits.

When one compares the information sought with the purpose of the Questionnaire, it is plain that none of the information demanded by Grace furthers the Questionnaire's ultimate purpose.  In a claims processing setting, required information is provided by a claimant, reviewed by the processing service, and, if the information meets certain criteria, a payment is made to the claimant based on the type of disease/injury the claimant can demonstrate.  Thus, whether a claimant has been to more than one physician about a particular injury is beside the point.  The only important, relevant inquiry is whether a claimant can provide evidence of a diagnosis and thus, a particular type of injury.

Also beside the point is what relationship, if any, the physician has or had with a claimant's attorney.  Again, this is not a litigation scenario where the jury must judge the credibility or potential bias of a witness based on a relationship with the party.  The only important matter is the evidence of an injury by way of a diagnosis.  As to information concerning other settlements and lawsuits, while this information may be discoverable in a litigation setting as it relates to a potential set-off (depending on applicable law), it has nothing to do with Grace's obligations to its creditors.  Grace is not in the position to disclaim all liability to its creditors just because some may have received settlements from others that have contributed to their injury as well.

Interestingly, Grace's actual goal with respect to its Motion to Compel seems to be in direct conflict with the goal of the Questionnaire.  If an estimate of liability is the goal, then the proper inquiry would be what number of claims should Grace expect to be properly submitted, not attempting to uncover information that would have no bearing on a claimant's ability to submit a proof of claim successfully.

Of course, other concerns warrant a denial of Grace's latest Motion to Compel.  First, the Motion is procedurally defective and Federal Rule of Civil Procedure 37(a)(2)(B) mandates that Grace's Motion be denied.  Second, despite an attempt to spin this Court's previous ruling to its liking, Grace has failed to carry its burden with respect to the relevance of these specific questions to the current matter as discussed above.  Third, none of the information sought is discoverable under the Federal Rules of Civil Procedure.  The questions at issue are so narrowly tailored and seek, on their face, protected or privileged information that this Court must uphold Motley Rice's objections and prevent discovery, or, more aptly, the abuse of the discovery process, sought by Grace.  All of these contentions will be developed more fully below.

II.     GRACE'S MOTION TO COMPEL SHOULD BE DENIED AS IT DOES NOT COMPLY WITH APPLICABLE FEDERAL RULES OF PROCEDURE.

Prior to addressing specifically the assertions made by Debtor in its Motion, Motley Rice submits that Debtor's Motion to Compel is procedurally defective and should be summarily denied.  Federal Rule of Civil Procedure 37, upon which Debtor relies in filing its Motion, states that a motion to compel "**must** include a certificate that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the disclosure without court action."  Fed. R. Civ. P. 37 (a)(2)(B) (emphasis added). Failure to include the required certificate renders any prospective Motion to Compel fatally defective and necessitates the denial of the Motion.  *Kelly v. MBNA America Bank*, 2006 WL 2993268 (D.Del. 2006); *Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 186-87 (3rd Cir. 2003).  Nowhere in its lengthy filing has Debtor included or even referenced the required certificate of good faith.  The reason for this is because Debtor has not, and apparently will not, make any effort to cooperate or come to any reasonable resolution when confronted

4

with Motley Rice's legitimate concerns and objections to Debtor's questionnaire.[1]  Letter dated

October 18, 2006, attached as Exhibit 1.

In contrast to Grace's maneuvering, Motley Rice has attempted to confer with Grace in

good faith to resolve these discovery issues.  Letter dated September 15, 2006, attached as

Exhibit 2.  Unfortunately, Motley Rice's efforts have either been rebuffed or met with

indifference.

Grace has also failed to meet its threshold burden with respect to the relevance of these

particular questions.  This warrants summary denial of Grace's motion as well.  Grace's

portrayal of this Court's ruling concerning the relevancy and burdensomeness objections of the

questionnaire merits correcting.  What this Court actually ruled was "there may be specific

individual questions that for reasons particular to an individual's circumstances or claim, a

question contained in the Questionnaire is not relevant to his or her claim or is unduly

burdensome or invades a privilege . . . .  The Court has not decided the merits of any claimant-

specific objection."  Order Concerning Debtors' Motion to Compel Asbestos Personal Injury

Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire, ¶ 1 (Order

dated Oct. 12, 2006).

Grace acknowledges in its Motion, as it must, that the initial burden to demonstrate the

relevancy of a discovery request is on the party seeking discovery.  Grace's Motion to Compel at

p. 2.  Thus, the burden to establish the relevancy of the questions that are the subject of Grace's

---

[1] Motley Rice notes that by filing this response, Motley Rice, either on behalf of itself or on behalf of any Claimants it may represent, does not submit to the jurisdiction of this Court for any purpose and hereby expressly denies that this Court has personal jurisdiction over Motley Rice or any Claimants it may represent with regard to the questionnaire or any issue arising with respect to the questionnaire except to the extent that some clients may have submitted proof of claims against Debtor.  Thus, Motley Rice specifically reserves its objections to this Court's exercise of jurisdiction over it or Claimants represented by it who have not submitted to the jurisdiction of this Court.  Furthermore, Motley Rice states that many pre-petition claimants were formerly represented by Ness Motley.  Motley Rice is not the successor to Ness Motley and therefore may not have access to many claimants' entire files.

present motion is shouldered initially by Grace, not the individual claimants or their counsel. As Grace's Motion to Compel is devoid of any attempt to demonstrate that the questions at issue are relevant and are not unduly burdensome, Motley Rice submits that Grace has failed to carry its initial burden to establish that it is entitled to a Motion to Compel. Therefore, Grace's Motion to Compel should be denied.

III.    GRACE IS NOT ENTITLED TO ANY OF THE INFORMATION SOUGHT TO BE COMPELLED AND ITS MOTION SHOULD BE DENIED.

Despite the threshold deficiencies of Debtor's Motion, Motley Rice will, in an abundance of caution, respond to the assertions made by Debtor in its Motion to Compel. Grace's demand for irrelevant, privileged and protected information or materials should be denied by this Court.

A.  Grace is not entitled to any additional Diagnostic Information from Claimants.

Grace's Questionnaire seeks information and "any and all" documentation related to each and every diagnosis (including conflicting diagnoses) of a disease. Motley Rice has provided Grace with diagnostic information and related documentation for each Questionnaire respondent to the extent that no privilege has been violated. In essence, Motley Rice has provided Debtor with information supporting each claimant's diagnosis of an asbestos-related disease. This information should be sufficient to satisfy the Questionnaire's sole purpose—to allow Debtor to properly estimate liability. Motley Rice has objected to Questionnaire's instructions and questions to the extent they seek nondiscoverable information and documentation. Grace is not entitled to this information under the Federal Rules of Civil Procedure and none of the additional information is necessary for the fulfillment of the Questionnaire's purpose.

Initially, Grace claims that Motley Rice has not demonstrated that the expert privilege applies to the information sought. Such a claim is dubious, overly technical, and ultimately,

6

unavailing. First, the only reason the federal rules purport to require any specificity from one claiming a privilege is to allow the opposing party to determine whether it would seek to challenge the assertion of the privilege. *See* Advisory Committee Notes, Fed. R. Civ. P. 26(b)(5); *Mass. Sch. of Law v. Am. Bar. Ass'n*, 914 F.Supp. 1172, 1178 (E.D.Pa. 1996). Furthermore, the Federal Rules do not require a party to respond so specifically that privileged or protected information itself may be revealed. Fed. R. Civ. P. 26(b)(5). In this matter, the questions and instructions at issue are so specific that Grace can readily ascertain exactly how and why Motley Rice is asserting the expert consulting privilege (among other privilege and work product objections). This is not the case where one party responds to a broad, general discovery request with an equally broad and general claim of privilege. Instead, this is a scenario where the requesting party has submitted questions that, on their face, request privileged or protected information. Now Motley Rice is left with the dilemma of either asserting a general objection or revealing privileged or protected information in an effort to claim that very privilege or protection. This is not what the federal rules envisioned. Moreover, the federal rules do not require Motley Rice to respond with specificity that would divulge privileged or protected information. *Id.*

In any event, many courts have considered and upheld objections regardless of the generality of their assertion. For example, in *Prouty v. National Railroad Passenger Corp.* the district court denied plaintiff's motion to compel the defendant to disclose the identity of specific employees because the information was irrelevant. 99 F.R.D. 545, 549 (D.D.C. 1983). This ruling was made despite the fact that defendant had only interposed general objections to the discovery request. *Id.* In *Pulsecard, Inc., v. Discover Card Services, Inc.*, another court recognized that general objections can serve as a sufficient response to discovery requests. 168

F.R.D. 292, 304 (D.Kan. 1996) (citing *First Sav. Bank, F.S.B. v. Fist Bank Sys., Inc.*, No. 95-4020-SAC, 1995 WL 250394, at *1 & n.3 (D.Kan. Mar. 30, 1995), *order set aside on other grounds*, 902 F.Supp. 1356 (D.Kan. 1995); *Sunbird Air Servs., Inc. v. Beech Aircraft Corp.*, No. Civ.A. 89-2181-V, 1992 WL 739505, at *3 (D. Kan. Sept. 4, 1992)). Thus, Motley Rice submits that, given the specificity of the discovery requests, its general objections were sufficient to advise Grace of the reasons underlying the assertion of the expert privilege and work product doctrine. Were Motley Rice to some how divine a way to respond with a level of specificity sought by Grace, it cannot divine how, given the Questionnaire's precision and specificity, such additional information would benefit Grace in any way.

Grace next claims that it is entitled to the medical information under the exceptional circumstances exception to the expert privilege. Whether such an exception is even available to be explored depends on whether the experts at issue are characterized as experts informally consulted or non-testifying experts consulted in anticipation of litigation.

If the expert is merely informally consulted, as Motley Rice contends is the case here, no discovery may be had and there is no exceptional circumstances exception. According to the Advisory Committee Notes, Rule 26(b)(4) "precludes discovery against experts who were informally consulted in preparation for trial, but not retained or specially employed." Advisory Committee Notes, Fed. R. Civ. P. 26(b)(4). "If the expert is considered to have been only informally consulted in anticipation of litigation, discovery is barred." *Ager v. Jane C. Stormont Hospital & Training*, 622 F.2d 496, 502 (10th Cir. 1980). The payment of a fee does not preclude an informal expert characterization. *Id.* The expert services, to the extent applicable in this matter, all qualify as informal consultations. Given the manner, nature and duration of the

consultation, Motley Rice submits that discovery is completely barred as the experts at issue were merely informally consulted.  *Id*. at 501.

To the extent that Grace contends the experts at issue were consulted in anticipation of litigation, Grace has failed to demonstrate that any exceptional circumstances are present that warrant disclosure of the information.  Rule 26 of the Federal Rule of Civil Procedure provides a party may discover facts or opinions of an expert "who has been retained or specially employed by another party in anticipation of litigation or preparation for trial who is not expected to be called as a witness at trial, only as provided in Rule 35(b) [inapplicable here] or **upon a showing of exceptional circumstances** under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."  Fed. R. Civ. P. 26(b)(4)(B).[2]  The Court of Appeals for the Tenth Circuit, ironically in a case cited by Debtor, has recognized that the "advisory committee notes indicate that the structure of rule 26 was largely developed around the doctrine of unfairness designed to prevent a party from building his own case by means of his opponent's financial resources, superior diligence and more aggressive preparation."  *Ager v. Jane C. Stormont Hospital & Training*, 622 F.2d 496, 502 (10th Cir. 1980).  Courts have repeatedly held that a party was not entitled to information from non-testifying, retained experts as the party seeking discovery had another expert available to testify on the same subject matter.  *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984); *In re GHR Energy Corp*., 33 B.R. 451, 455 (Bankr.D.Mass. 1983).

Grace contends that exceptional circumstances exist because (1) as asbestosis is a progressive disease, the tests allegedly prepared by Motley Rice's experts "are the only evidence

---

[2] Rule 35(b) addresses the court ordering of a mental or physical examination of a party.  Fed. R. Civ. P. 35.  Debtor has not asserted that Rule 35 applies to the present matter.

of claimant's physical condition at the time the test was performed" and (2) a potential for "shopping" of experts is an exceptional circumstance.  Neither of these arguments is availing.

First, Grace is mistaken about the context of the present matter.  As stated earlier, this is not a traditional litigation setting.  The only important tests with respect to a potential claimant are those submitted with a proof of claim that demonstrates that the claimant actually has an asbestos-related injury.  In any event, Grace's own experts remain free to interpret X-rays and pulmonary function test results that are provided to Grace in the claims submission process.  None of the cases cited by Grace in its Motion deal with interpretation of data or tests already performed.  In those cases, there was no physical artifact (or data) for later experts to examine or interpret.  *See Braun v. Lorillard Inc.*, 84 F.3d 230, 236 (7th Cir. 1996) (lung tissue destroyed); *Delcastor, Inc. v. Vail Assocs., Inc.*, 108 F.R.D. 405, 409 (D.Colo. 1985) (terrain eroded); *Dixon v. Cappellini*, 88 F.R.D. 1, 3 (M.D. Pa. 1980) (mental state no longer extant).

Even if the early status of the disease were relevant, this would not rise to the level of an exceptional circumstance.  In *Sprague v. Office of Workers' Compensation*, the Court of Appeals for the First Circuit held that a letter from a physician following an attorney's request for the physician's opinion as to a cause of a disease was protected as work product.  688 F.2d 862, 868-70 (1st Cir. 1982).  The court in *Sprague* held that the parties did not meet the substantial need exception to the work product doctrine despite claims that the letter was "prepared by the only medical expert who observed Sprague's left leg within six days of his July 1975 injuries" and that it contained beneficial, factual information.  *Id*. at 868, 870.  Similarly, Grace fails to demonstrate the requisite substantial need in the present matter despite the rather vague claim that the sought material is invaluable given the progressive nature of asbestos diseases.  Of

course, this is putting the cart (a determination of the merits of a claim) far before the horse (an estimation of Grace's liability) that is the subject of the present motion.

Second, Grace contends that an alleged potential for expert "shopping" qualifies as an exceptional circumstance. To support this contention, Grace relies on *Coates v. AC & S, Inc*. and several general articles concerning asbestos screenings. Initially, Motley Rice notes that Grace does not explain how any potential for expert shopping rises to the level of an exceptional circumstance, it just announces that such a practice would. This is insufficient to carry the heavy burden of establishing exceptional circumstances to over-ride a privilege. Even considering Grace's opaque argument, it is remarkable that all of the articles are general in nature and not specific to any of the claimants at issue. This fact argues against the finding of the exception. Further, the lone case cited by Grace was discussed and rejected by another court.

In *Dominguez v. Syntex Laboratories, Inc.*, the court rejected "expert shopping" as an exceptional circumstance. 149 F.R.D. 158, 163 (S.D.Ind. 1993), *superseded on other grounds*, *Simon Property Group L.P. v. mySimon, Inc.*, 194 F.R.D. 644, 647 n.1 (S.D.Ind. 2000). The court reasoned that "Even if we assume that plaintiffs chose not to use Gruy because he did not tell them what they wanted to hear, this is not only perfectly permissible, but as indicated above, the very purpose of the rule is to protect plaintiffs from having Gruy's testimony used by their opponent." *Id*. (citing *Eliasen v. Hamilton*, 111 F.R.D. 396, 401 (N.D.Ill. 1986)). The court remarked that "with the exception of *Coates*, no other case has found exceptional circumstances existed because plaintiff visited a number of experts." *Id*. The court further noted that the defendant had not met its burden as it had failed to offer evidence that a future examination would not yield the information requested. *Id*. at 163-64. Similarly, in the present case, Grace has failed to offer any evidence that a review of medical records submitted by claimants in

support of their claim would somehow be insufficient to allow Grace to adequately estimate its liability much less evaluate the claim's merits. Grace has failed to carry its heavy burden in demonstrating that exceptional circumstances exist such that the expert privilege is over-ridden.

Finally, Grace seeks to have Motley Rice identify experts that were, in Debtor's view, specially retained but non-testifying. If the experts are considered specially retained (not informally consulted) Motley Rice may be compelled to divulge this information only upon a "proper showing." *Ager*, 622 F.2d at 502-503. The "proper showing" required "corresponds to a showing of 'exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.'" *Id*. at 503 (quoting Fed. R. Civ. P. 26(b)(4)(B). Despite Grace's contentions to the contrary, this is the "prevailing" view among courts. *Kuster v. Harner*, 109 F.R.D. 372, 374 (D.Minn. 1986) (citing *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984); *Gidlewski v. Bettcher Ind., Inc.*, 38 F.R.Serv.2d 664 (E.D.Pa. 1983); *In re Sinking of Barge Ranger I*, 92 F.R.D. 486, 488-89 (S.D.Tex. 1981)). "The party 'seeking disclosure under Rule 26(b)(4)(B) carries a **heavy burden**' in demonstrating the existence of exceptional circumstances." *Ager*, 622 F.2d at 503 (quoting *Hoover v. United States Dept. of Interior*, 611 F.2d 1132, 1142 n.13 (5th Cir. 1980)).

Grace has not carried its burden with respect to this claim and Motley Rice's privilege assertions should be upheld. Motley Rice has already provided Debtor with information from experts that will, would have, or did testify at the trial of any of the potential claimants' cases. To the extent Debtor seeks information from experts that may be characterized as either individuals who were "retained or specially employed" but non-testifying or experts who were merely consulted informally, this information, should it exist, is not subject to discovery. The expert information is either completely barred from discovery or protected by the consulting

expert privilege.  Grace has failed to demonstrate any exceptional circumstances that would necessitate discovery of this material.[3]

        B.       Grace is not entitled Information concerning the relationship among Claimant, Claimant's counsel, and Claimant's physician.

In the next section of its Motion, Grace seeks information about the relationship between a Claimant and his or her doctor, the relationship between claimant and his or her counsel, and the relationship between claimant's counsel and claimant's doctor.  The questions at issue are precise and, on their face, seek information protected by the attorney-client privilege and the work product doctrine.  To summarize Grace's position, it argues that (1) none of the questions seek privileged or protected information and (2) Motley Rice hasn't sufficiently demonstrated that the privilege or protection applies.  Neither of these contentions has any merit.

Motley Rice will address the second contention, the establishment of the privilege or protection, first.  As with the case of the earlier questions, Grace's questions at issue in this section are likewise on their face invasive of the attorney-client privilege and work product doctrine and therefore, it is unnecessary for Motley Rice to relay specific facts that would jeopardize the protected information. As mentioned previously, Rule 26(b)(5) provides that a party need not divulge the privileged or protected material in asserting a privilege or claiming a protection.  Fed. R. Civ. P. 26(b)(5).  This is particularly applicable given the type of questions asked by Grace such as "Did you retain counsel in order to receive any of the services performed by the [] doctor?" or "Was the [] doctor referred to you by counsel?"  Of course, how any of the questions mentioned in this section are relevant to the furtherance of the goal of the Questionnaire, the assessment of liability for asbestos injuries, is mystifying and never

---

[3] To the extent Grace's questions concern attorney-client privilege or the application of the work product doctrine, Motley Rice directs the Court to section III.B. for a discussion of those concepts.

explained.  Without the relevance of this information established, Grace has not met its burden to demonstrate that it should be entitled to such information.  Furthermore, as mentioned earlier, general objections, particularly in the face of such specific and defective requests are sufficient. *See, e.g., Pulsecard, Inc.,* 168 F.R.D. at 304.

Grace's other contention, that the requests only seek information not communications, misconstrues the actual intent of the rule and should be rejected.  "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citing J. Wigmore, Evidence § 2290 (McNaughton rev. 1961)).  The underlying purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote the broader public interest in the observance of law and administration of justice." *Id*.  The attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."  *Id*. at 390 (citations omitted).  Considerations "of convenience do not overcome the policies served by the attorney-client privilege." *Id*. at 396.  Such time-honored principles cannot be circumvented by Grace's attempt at a game of semantics.  The statement in *Upjohn* relied on by Grace that the privilege extends to "communications and not to facts" is taken out of context.  Grace's Motion at p. 18.  The court in *Upjohn* was actually recognizing, as has long been understood, that a litigant may not immunize certain facts from discovery by incorporating "a statement of such fact into his communications to his attorney."  *Upjohn*, 449 U.S. at 39 (quoting *Philadelphia v. Westinghouse Electric Corp*., 205 F.Supp. 830, 831 (E.D.Pa. 1962)).  That is not what has occurred in the present matter.  Grace's questions seek details from conversations between claimants and their counsel (and physicians) that go to the very heart of the prosecution and

investigation of the claimant's case.  Facts are necessarily part of the communication but are nevertheless undiscoverable.  Should Grace's interpretation of the attorney-client privilege be adopted, the preparation of any case would be severely hampered and the privilege would be practically destroyed.

With respect to the questions that seek details of the communications made between counsel and a physician, Motley Rice notes that the attorney-client privilege has been held to extend to agents hired on behalf of a client including professionals such as physicians.  *See, e.g., United States v. Kovel*, 296 F.2d 918, 922 (2nd Cir. 1961) (privilege extended to accountant); *In re Allen*, 106 F.3d 582 (4th Cir. 1997) (attorney-client privilege extends to investigator).  "Communications from an attorney to a client are privileged if the statements reveal, directly or indirectly, the substance of a confidential communication."  *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 449, 453 (N.D.Ill. 2006) (citing *Ohio Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 21, 28 (N.D. Ill. 1980)).  Again, these statements go to the heart of the investigation and prosecution of a claimant's case and are not discoverable.

Of course, Motley Rice's objections are not limited to the assertion of the attorney-client privilege but also include the assertion of work product protection.  A party may only obtain documents or materials prepared in anticipation of litigation "upon a showing that the party seeking discovery has **substantial need** of the materials in the preparation of the party's case **and that the party is unable without undue hardship** to obtain the substantial equivalent of the materials by other means.  Fed. R. Civ. P. 26(b)(3) (emphasis added).  The work product doctrine is broadly construed.  *See Leonen v. Johns-Manville*, 135 F.R.D. 94, 96 (D.N.J. 1990).  As the United States Supreme Court has noted, there is a "'strong public policy' underlying the

work-product doctrine . . . ."  *Upjohn Co. v. United States,* 449 U.S. 383, 398 (1981).  As early

as 1947 the Supreme Court reasoned

> In performing his various duties, however, it is essential that a lawyer work with a certain
> degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.
>
> Proper preparation of a client's case demands that he assemble information, sift what he
> considers to be the relevant from the irrelevant facts, prepare his legal theories and plan
> his strategy without undue and needless interference.  That is the historical and the
> necessary way in which lawyers act within the framework of our system of jurisprudence
> to promote justice and to protect their clients' interests.  This work is reflected, of course,
> in interviews, statements, memoranda, correspondence, briefs, mental impressions,
> personal beliefs, and countless other tangible and intangible ways – aptly though roughly
> termed . . . "work product of the lawyer."  Were such materials open to opposing counsel
> on mere demand, much of what is now put down in writing would remain unwritten.  An
> attorney's thoughts, heretofore inviolate, would not be his own.  Inefficiency, unfairness
> and sharp practices would inevitably develop in the giving of legal advice and in the
> preparation of cases for trial.  The effect on the legal profession would be demoralizing.
> And the interests of the clients and the cause of justice would be poorly served.

*Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).  Grace again attempts to twist the scope of the

work product doctrine by arguing that it applies only to opinions not facts that underlie those

opinions.  Grace Motion at 18.  As with the attorney client privilege, Grace misses the point.

This is not a situation in which Motley Rice has gathered indispensable witness statements that it

later attempts to shield from discovery by assertion of the work product doctrine.  Instead, Grace

seeks information and documentation that would be necessarily investigatory and contain

counsel's mental impressions.  The whole point of the work product doctrine is to allow an

attorney to prepare and investigate a case without fear that his diligence will be used against him

by an adversary.  *See, e.g., Hickman*, 329 U.S. at 511.  If the investigatory materials include facts

of the investigation (not the underlying case itself) this would not automatically allow discovery

of those facts.  If such a broad interpretation of the work product doctrine were endorsed, the

entire protection would be worthless.  Such a result is not what the United States Supreme Court

intended when it recognized the value of the work product doctrine so long ago.  Moreover,

Grace has not even attempted to demonstrate exceptional circumstances that might allow for discovery of materials protected by the work product doctrine.  Thus, Grace is absolutely barred from discovery of such material.

As the foregoing demonstrates, Grace is not entitled to invade the attorney-client privilege or the work product protection and its Motion to Compel responses to questions concerning interactions among claimants, their counsel, and their physicians should be denied.[4]

     C. Grace is not entitled to any Confidential Settlement Information or information concerning other lawsuits.

In the final section of its Motion, Grace demands information related to confidential settlement agreements entered into on behalf of claimants in asbestos and silica claims.[5]  Grace argues, essentially, that Motley Rice's claim of privilege or protection is inadequate and that the settlement provisions are discoverable regardless of their confidential character.   Grace's argument is without merit.

Motley Rice submits that this Court should follow the rationale enunciated by the United States Court of Appeals for the Sixth Circuit and protect settlement statements from discovery by third parties.  *Goodyear Tire & Rubber v. Chiles Power Supply*, 332 F.3d 976, 977 (6th Cir. 2003).   In *Goodyear*, the Sixth Circuit held that "any communications made in furtherance of settlement are privileged."  *Id*. at 983.  The court reasoned that "[t]here exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations. . . . Moreover, confidential settlement communications are a tradition in this country."  *Id*. at 980

---

[4] Grace contends that Motley Rice did not object to Part VII, Section A, Question 6.  This question concerns a request for settlement amounts for defendants settling asbestos or silica suits.  A review of the Questionnaire's reveals that Motley Rice did object to these questions and hereby reaffirms those objections.  A discussion of those objections will be undertaken in connection with Section III, C. of this response.

[5] Although in its Motion Debtor claims that Motley Rice did not object to Part VII, Section B and all subparts, a review of Questionnaires prepared on behalf of Motley Rice Claimants reveals that Motley Rice did object to these questions and Motley Rice hereby reaffirms its objections to these requests to the extent they seek confidential settlement information.  The grounds for the objections are similar to those lodged by other Claimants' counsel.

(citing *Palmieri v. New York*, 779 F.2d 861, 865 (2d Cir. 1985)).  The court noted that Federal Rule of Evidence 408 prevents the introduction of settlement negotiations into evidence for substantive purposes and that one of the rationales underlying that rule is that "statements made in furtherance of settlement are *never* relevant."  *Id*. at 982-83.  These policy arguments led the court to conclude that evidence of settlement negotiations are barred.  *Id*. at 983.

Similarly, the evidence of settlement with other defendants in an asbestos case is wholly irrelevant to the purpose of estimating liability for asbestos claims.  The estimation process is focused on determining how many proofs of claims will be filed to enable Grace to properly allocate resources to fund the trust to pay these claims.  The fact that a claimant may have entered into a settlement with another entity also responsible for his or her asbestos-related injury would not absolve Grace of its liability.  Also, allowing discovery of these settlements would circumvent the public policy considerations found persuasive by the Sixth Circuit in *Goodyear*.

Moreover, although some courts have allowed the discovery of settlement agreements, the rationale for the discovery is wholly inapplicable to the present matter.  The recognized basis for some courts allowing discovery of settlement agreements is that the agreements are relevant in a case because they provide evidence of the "settling parties bias, interest, or prejudice . . . . [S]ettlement information may be discoverable when a party seeks that information primarily for its impeachment value, *i.e.*, to establish the bias of a settling co-defendant."  *Cleveland Construction Inc. v. Whitehouse Hotel Limited Partnership*, 2004 WL 385052 at *1 (E.D.La. Feb. 25, 2004) (quoting *ABF Capital Mgmt. v. Askin Capital*, 2000 WL 191698 at *2 (S.D.N.Y. Feb. 10, 2000)).  As this is not a litigation setting and there are no co-defendants whose bias can be demonstrated in front of a jury, these settlement agreements are irrelevant and the rationale

employed by courts that have allowed discovery of settlement agreements in the past in inapplicable.

This Court should deny Grace's attempt to discover confidential settlement agreements as the agreements are completely irrelevant to helping provide an estimation of liability for asbestos claims against Grace. This Court should also refuse to allow the discovery of other lawsuits, including silica lawsuits as such suits are irrelevant to an estimation of Grace's liability.

## IV. JOINDER IN OTHER CLAIMANTS' RESPONSES.

Motley Rice hereby and herewith expressly joins, adopts, and incorporates by reference any and all responses to Debtor's Motion to Compel Asbestos Personal Injury Claimants Represented by Edward O. Moody, P.A., Foster & Sear L.L.P., Motley Rice LLC, and Williams Bailey Law Firm, LLP to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire, filed by other parties in interest to the extent that such responses are applicable to and not inconsistent with Motley Rice's positions expressed in this document. Moreover, Motley Rice expressly adopts, joins, and incorporates herein by reference any and all other responses filed by other counsel for Claimants that address the issues asserted by Debtor in its Motion to Compel against Motley Rice to the extent that such responses are applicable to and not inconsistent with Motley Rice's positions expressed in this document.

## V. CONCLUSION AND PRAYERS FOR RELIEF.

WHEREFORE, for the reasons set forth in this response and the Responses filed on behalf of other Claimants in response to Debtor's latest Motion to Compel, Motley Rice prays that Debtor's Motion to Compel Asbestos Personal Injury Claimants Represented by Edward O. Moody, P.A., Foster & Sear L.L.P., Motley Rice LLC, and Williams Bailey Law Firm, LLP to

Respond to the W.R. Grace Asbestos Personal Injury Questionnaire be denied in its entirety. Motley Rice prays that its objections to the Questionnaire be sustained and that this Court enter a Protective Order that prohibits Debtor from seeking the privileged information sought in its Motion to Compel, and that Motley Rice be granted such other, just, equitable, and necessary relief as this Court deems proper.

Dated:  November 27, 2006.


                                        RESPECTFULLY SUBMITTED,


                                        */s/ John E. Herrick*
                                        JOHN E. HERRICK
                                        MOTLEY RICE LLC
                                        28 Bridgeside Blvd.
                                        P.O. Box 1792
                                        Mount Pleasant, SC 29465
                                        Tel. (843) 216-9000
                                        Fac. (843) 216-9440
                                        Email:  jherrick@motleyrice.com


                                        HEIMAN, GOUGE & KAUFMAN, LLP

                                        */s/ Susan E. Kaufman*
                                        Susan E. Kaufman (DSB # 3381)
                                        800 King Street
                                        Suite 303
                                        P.O. Box 1674
                                        Wilmington, DE 19801
                                        (302) 658-1800
                                        (302) 658-1473 (fax)
                                        skaufman@hgkde.com


                                        COUNSEL FOR VARIOUS
                                        ASBESTOS PERSONAL INJURY
                                        CLAIMANTS