**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JFK) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Hearing Date: December 5, 2006 |
| | ) | Objection Deadline: November 28, 2006 |

**MEMORANDUM OF LAW IN SUPPORT OF CLAIMANTS' OPPOSITION TO DEBTORS' MOTION TO COMPEL ASBESTOS PERSONAL INJURY CLAIMANTS REPRESENTED BY THORNTON & NAUMES LLP TO RESPOND TO THE W.R. GRACE PERSONAL INJURY QUESTIONNAIRE**

NOW COME certain asbestos personal injury claimants (each, a "Claimant") in receipt of the "W.R. Grace Asbestos Personal Injury Questionnaire," (hereinafter, "Questionnaire"), by and through their counsel, Thornton & Naumes, LLP, and hereby oppose the Debtors' *second* Motion to compel asbestos personal injury claimants to respond to the questionnaire because the bulk of debtors' motion is moot as debtors based their motion to compel on an earlier version of Claimants' completed questionnaires, and, contrary to the Debtors' assertions, the objections contained in Claimants' supplemented questionnaires are valid and necessary. In support thereof, the Claimants state as follows:

**I.     Background**

On November 9, 2006, Debtors filed a Notice and Memorandum of Points and Authorities concerning background of questionnaire approval process and objections previously addressed by the court. In this document, Debtors discuss a negotiation they conducted with certain law firms—Thornton & Naumes not being included in that group—that set an omnibus

schedule for the filing of motions to compel and the supplementation of questionnaire responses. (Debtors' Notice, p. 14).  Grace agreed to give all firms until January 12, 2007 for supplementation and the firms agreed to provide notice of remaining objections on or before November 10, 2006.  *Id.*  Despite the fact that Thornton & Naumes was not included in this negotiation, Debtors filed a motion to compel directed at Thornton & Naumes Claimants on November 10, 2006.   Importantly, because Thornton & Naumes claimants were not aware of this negotiation, when Debtors filed their motion, Claimants were still attempting to supplement and return their questionnaires to Debtors in compliance with the November 13, 2006 deadline set by this Court.  Indeed, Debtors themselves acknowledge this deadline and the fact that Grace "reserves its right to raise any and all objections to the sufficiency of the Thornton & Naumes Claimants' . . . responses until the supplementation of their Questionnaire responses is complete."  (Debtors' Motion, p. 1, FN 2).   As a consequence of Grace's refusal to wait until Thornton & Naumes Claimants submitted their questionnaires before filing its motion to compel, the majority of Grace's motion wastes time and space dealing with objections that Claimants are no longer raising.

Grace has tried to subvert the agreed upon deadlines, has raised needless arguments, and now also asks to reserve its rights to bring another motion if it does not like how Claimants have answered the recently submitted questionnaires.  As this process is inefficient and unfair, Claimants ask that this Motion be denied, or at the very least stayed so that Debtors will at least have reviewed the questionnaires that Claimants submitted before they can attempt to object the inadequacy of Claimants' responses.

Assuming arguendo that Grace's motion was properly filed against Thornton & Naumes Claimants on November 10, 2006, however, Claimants assert that the objections that have been

retained in the final version of the submitted questionnaires are properly made and should be sustained by this Court.[1]

## II. Attorney-Client Privilege and Confidentiality as it Relates to Legal Strategy

Debtors attempt to mischaracterize Claimants' objections based upon the attorney-client privilege by claiming that the information sought by the questionnaire is purely factual and an attorney-client relationship has not been established for the relevant times. Where a person, as a client or prospective client, consults a member of the bar in his or her capacity as such, the communication in confidence of matters that are necessary to the proper conduct of legal business is privileged at the option of the client. *See In the Matter of John Doe Grand Jury Investigation*, 408 Mass. 480, 482 (1990). The purpose of the privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Except when mandated by constitutional considerations, the privilege does not yield to society's interest in obtaining evidence. *See Matter of John Doe*, 408 Mass. at 485. The related duty of confidentiality prevents a lawyer from revealing information relating to the representation of a client. *One Nat'l Bank v. Antonellis*, 80 F.3d 606, 610 (1st Cir. 1996).

Debtors note that questions relating to the general purpose of retaining counsel are factual in nature and that "inquiry into the general nature of legal services provided by Counsel does not necessitate an assertion of the privilege because the general nature of services is not protected."

---

[1] As Claimants have removed objections relating to relevance and doctor/patient privilege, Claimants will not address Debtors' argument on these points.

(Debtors' Motion, p. 6, *citing GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1773 (Fed. Ct. 2001)). According to Debtors, "the questions to which the Thornton & Naumes Claimants . . . assert their privilege objections seek this precise type of information." (Debtors' Motion, p. 7). In the supplemented versions of their responses to Debtors' questionnaires, Claimants have retained objections based on attorney-client privilege and confidentiality to questions from Part II of the questionnaire that ask of Claimants: "Did you retain counsel in order to receive any of the services performed by the diagnosing doctor?"; "Was the diagnosing doctor referred to you by counsel?"; and "Are you aware of any relationship between the diagnosing doctor and your legal counsel?"[2]  Contrary to Debtors assertions, however, these questions do not merely inquire into whether or not the Claimants are represented by counsel or the "general nature of services," but rather, they are essentially asking for the motivation behind Claimants' initiation of individual lawsuits and for disclosures that may relate to legal strategy or advice that counsel offered based upon Claimants' individual circumstances and concerns. Importantly, matters that touch upon legal advice and strategy are covered by attorney-client privilege. *See United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998). Thus, the information that the questionnaire seeks is indeed covered by the attorney-client privilege and Debtors attempts to suggest otherwise mischaracterizes this information. *See id.*

Further, Debtors argue that Claimants cannot assert the attorney-client privilege because they have not established that an attorney-client relationship existed at the time of any such communication. While it is true that the attorney-client relationship is a prerequisite to asserting the privilege, Debtors' argument does not make sense in the context of the Thornton & Naumes Claimants' objections because the questions to which Claimants have objected on this ground

---

[2] Debtors pose these same basic questions, and Claimants offer the same objections, in reference to "diagnosing doctors," "chest x-ray readers," "doctors interpreting the results of the pulmonary function test," and "doctors issuing the pathology report."

presuppose the existence of an attorney-client relationship; that is, they all ask about the actions of Claimants' counsel. Thus, Grace has framed its questions in such a way that in order for the questions to be applicable there must be an attorney-client relationship in existence at the pertinent time, and so the attorney-client privilege must apply.

### III.    The Confidentiality of Settlement Agreements Should be Maintained

Debtors rely on a couple of unpublished decisions to assert that "litigants cannot shield a settlement agreement from discovery *merely* because it contains a confidentiality agreement." (Debtors' Motion, p. 10, *citing Cleveland Constr., Inc. v. Whitehouse Hotel Ltd.*, 2004 WL 385052 *1 (E.D. La. Feb. 25, 2004)(*quoting ABF Capital Mgmt. v. Askin Capital*, 2000 WL 191698, *2 (S.D.N.Y. Feb. 10, 2000)(emphasis added)). Yet, it does not follow from the reasoning of these isolated cases that *every* settlement agreement is discoverable. Indeed, in *Hasbrouck v. BankAmerica Housing Servs.*, the court found that plaintiff had demonstrated good cause for an order protecting the confidential information relating to her settlement with a third party not involved in the suit at bar. 187 F.R.D. 453, 457 (N.D.N.Y. 1999).

Among the factors the court considered: the rights of parties as contracted between them deserve the protection of the court (*Id., citing Kalinauskas v. Wong*, 151 F.R.D. 363, 365 (D. Nev. 1993)); the third party's privacy interest in the information should be given additional weight because it is not involved in the present action (*Id., citing Laxalt v. McClatchy*, 116 F.R.D. 455, 457 (D. Nev. 1986)); protecting the confidentiality of the settlement agreement promotes the important public policy of encouraging settlements (*Id., citing Marine Midland Realty Credit Corp. v. LLMD of Michigan, Inc.*, 821 F. Supp. 370, 373 (E.D. Pa. 1993)); confidentiality is an important corollary without which many lawsuits would remain unsettled (*Id., citing City of Hartford v. Chase*, 942 F.2d 130, 135 (2d Cir. 1991)); while protecting the

confidentiality of settlement agreements encourages settlement, which is in the public interest, permitting disclosure would discourage settlements, contrary to the public interest (*Id., citing Kalinauskas*, 151 F.R.D. at 365).

These same factors apply to the Claimants in the matter at hand: it is in the best interests of Claimants and any other entities with which they have previously settled to honor the confidentiality agreements into which they have entered. Further, just as the *Hasbrouck* court found that the general public also had a strong interest in upholding confidentiality agreements that would promote settlement, this is especially true in the asbestos-litigation context where literally hundreds of thousands of individuals have been adversely affected by asbestos exposure and it is generally the preference of both plaintiffs and defendants to settle these claims. Setting a precedent that would disturb the confidentiality of these settlement agreements would not only be deleterious to the Claimants' involved in this action, but, further, while it may be beneficial to Grace, would potentially disrupt this entire system and adversely affect both plaintiffs and defendants nationwide.

### IV.    Conclusion

Claimants have objected to certain questions posed in Debtors' questionnaire because they seek information that would reveal legal advice and strategy, both of which are protected by attorney-client privilege. Similarly, Claimants have objected to other questions that seek information concerning confidential settlement agreements between Claimants and third parties not involved in this action. These objections should be upheld as keeping this settlement agreement confidential would serve the best interests not only of the individual Claimants submitting these questionnaires, but would also benefit the other defendants who have already

settled with these Claimants, all individuals, on both sides of the litigation, who are involved in litigating asbestos claims, and the general public.

WHEREFORE, the Claimants respectfully request that the Court deny Debtors' Motion and uphold Claimants' objections, or at the very least order that Debtors' withdraw this motion to compel and evaluate the questionnaires that Claimants have submitted before Debtors can file a motion to compel.

Dated: November 27, 2006

                                        Respectfully submitted,

                                        /s/ Daniel K. Hogan
                                        Daniel K. Hogan (De. Bar. No. 2814)
                                        THE HOGAN FIRM
                                        1311 Delaware Avenue
                                        Wilmington, DE 19806
                                        Phone: (302) 656-7540
                                        Facsimile: (302) 656-7599

                                        *and*

                                        Garrett J. Bradley, Esq.
                                        Thornton & Naumes, LLP
                                        100 Summer Street, 30th Floor
                                        Boston, MA 02110
                                        Phone: (617) 720-1333
                                        Facsimile: (617) 720-2445

                                        Counsel for Claimants