UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 11** |
| | ) | |
| W.R. GRACE & CO., et al., | ) | **Case No. 01-01139(JFK)** |
| | ) | **(Jointly Administered)** |
| Debtors. | ) | |

## OBJECTION OF CLAIMANTS REPRESENTED BY GOLDBERG, PERSKY & WHITE TO DEBTORS' MOTION TO COMPEL

Claimants represented by Goldberg, Persky & White, P.C. (the "Goldberg Claimants"), through their undersigned counsel, respond to the Motion to Compel filed by the Debtors, W.R. Grace Co. and affiliates ("Grace") as follows:

### Introduction

Grace has filed a Motion to Compel directed toward claimants who, Grace alleges, have not completely and adequately answered Grace's questionnaire  Attached to its Motion was Exhibit "A" listing claimants represented by Goldberg, Persky & White, P.C. ("GPW"). The clients contained on Exhibit A were part of the May 1, 2000 Settlement Agreement referenced below.  Exhibit A, however,  also includes a few individuals not represented by GPW, and GPW has no information pertaining to these individuals. GPW has no idea why these individuals were included on a list pertaining to GPW clients. Grace also attached Exhibit "B," listing claimants represented by the Serling law firm. It is not clear to GPW why Grace included these clients in a pleading pertaining to GPW, and GPW does not have any information related to the settlement status of these individuals. Many of the legal arguments raised by GPW regarding privilege and confidentiality, however, are equally applicable to the Serling claimants.

In its present motion, Grace seeks discovery of information relating to, among other things, settlement agreements that the Goldberg Claimants have entered into with other entities. To allow such discovery would be anathema to the entire settlement procedure. Any legitimate use that Grace might have for this information is far outweighed by the intrusion this discovery would be into the settlement process. For this reason and others set forth below, the Goldberg Claimants object to Grace's Motion to Compel.

## Argument

I.    The Goldberg Claimants are not required to respond to Grace's Questionnaire under this Court's Orders.

GPW has previously filed objections to a Motion to Compel filed by Grace, and has discussed the background of the settlement agreements entered into by GPW and Grace. In that response, GPW noted that this Court entered an Order dated October 24, 2005 (docket No. 10825) which clarified that under the PI CMO, persons with enforceable pre-petition settlement agreements are not required to complete the questionnaire. All or almost all of the Goldberg Claimants are subject to a settlement agreement between GPW and Grace as of May 1, 2000. More recently, this Court held a hearing at which it reiterated that "I'm not going to compel them [the Goldberg Claimants] to submit any further answers until I know whether they have to fill out the questionnaire in the first place." Tr. Of Hr'g at 227 (Sept. 11, 2006). Because it is not yet determined whether the Goldberg Claimants must complete the Questionnaire at all, Grace's Motion to Compel should be denied.

II.    Confidential settlement agreements should not be deemed discoverable.

Grace has argued in its Motion to Compel that the Goldberg Claimants cannot assert a privilege with regard to confidential settlement agreements arising from asbestos-related claims not involving Grace. As part of this argument, Grace points out a distinction between

2

negotiations leading to settlements and the settlement agreements themselves. Despite any

logical attractiveness of such a distinction, however, the Goldberg Claimants' settlement

agreements should be protected from discovery because "[s]ecrecy of settlement terms . . . is a

well-established American litigation practice" which courts routinely honor. *Palmieri v. New

York*, 779 F.2d 861, 865 (2d Cir. 1985) (citation omitted).

   As a preliminary matter, Grace must make a heightened showing of the particular

relevance of the documents it seeks due to their express confidentiality. One District Court

addressed this issue and noted that:

> several cases [have addressed the issue of] whether a non-settling defendant
> should have access to a settlement agreement that is confidential by agreement of
> the signatories. None of these courts have blithely permitted discovery, but
> rather, required some heightened showing of relevance or need. For example, in
> the Second and Seventh Circuits, discovery is permitted only if the movant 'lays a
> foundation by adducing from other sources evidence indicating that the settlement
> may be collusive.' By contrast, other courts addressing the issue only require 'a
> particularized showing of a likelihood that admissible evidence will be generated
> by the dissemination of the terms of a settlement agreement.'

*Doe v. Methacton School Dist.*, 164 F.R.D. 175, 176 (E.D. Pa. 1995) (citations omitted). The

*Doe* Court rejected a party's attempt to discover such agreements because that party only

asserted that the agreements were relevant to damages without showing more particular need. *Id.*

at 176-77. Likewise, although the relevance of other claimants' non-confidential settlement

agreements might be relevant and discoverable, Grace has made no showing any particular need

for the Goldberg Claimants' agreements. Instead, it asserts only that such agreements will aid in

estimation of claims. Since Grace's assertion falls well below the requisite particularized

showing, any legitimate use Grace can make of the confidential agreements is slight in

comparison to the burden its requested discovery would be into the settlement process.

Because "public policy strongly favors the settlement of disputed claims, [ ] confidentiality agreements regarding settlements should not be set aside absent a compelling justification." *Barbine v. Keystone Quality Transport*, No. Civ.A. 03-3426, 2006 WL 834709, *1 (E.D. Pa. April 16, 2004).  There is no such justification in the present case.  Grace argues that information in settlement agreements is useful for valuation, but Rule 408 of the Federal Rules of Evidence expressly disallows the use of settlement agreements as evidence of the a claim's value.  *See* Fed.R.Evid. 408.  Therefore, any potential use of the evidence Grace seeks is far below the justification required for the disclosure of confidential agreements.

Grace refutes in its brief the Goldberg Claimants' argument that disclosure of confidential settlement agreements will have a chilling effect on future negotiations.  However, as the Sixth Circuit has observed:

> The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system.  In order for settlement talks to be effective, parties must feel uninhibited in their communications. . . . Parties must be able to abandon their adversarial tendencies to some degree.

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.2d 976, 980 (6th Cir. 2003).  The reality of asbestos litigation requires that the same defendants will repeatedly enter into settlement negotiations with similarly situated plaintiffs.  The effectiveness of such negotiations will be severely hampered if an otherwise confidential settlement will be discoverable in later proceedings.  Therefore, Grace's desire for the information in confidential settlement agreements is outweighed by the importance of secrecy for the parties to the agreements.

Furthermore, state courts in Pennsylvania recognize a "strong policy in favor of settlement." *Charles v. Giant Eagle Markets*, 522 A.2d 1, 3 (Pa. 1987).  "Settlement is a valuable tool in our arsenal of dispute resolution and it should not be undermined." *Id.* at 2.  The

value of settlement is especially high in the field of asbestos litigation, where state courts constantly deal with massive amounts of asbestos litigation.  State courts therefore must foster an atmosphere conducive to settlement negotiations.  To allow a party to run to federal court in order to lift the veil on settlements entered into in state courts disrespects the state courts' strong interest in these settlements, and would be a violation of the principle of comity.

Grace has also argued that, since parties to an agreement "can come in and contest it if [a Claimant] violates their agreements," then there is no reason to keep the agreements confidential. Grace's Motion at p. 10.  It is true that once parties litigate a breach of a settlement agreement, they risk waiving confidentiality.  *See Bank of America Nat. Trust and Sav. Ass'n v. Hotel Rittenhouse Associates*, 800 F.2d 339 (3d Cir. 1986).  However, the fact that a party can at some point waive confidentiality for the purpose of litigating the breach of a settlement agreement has no bearing on whether there should be forced disclosure for the benefit of a non-party to the agreement.

Because any possible legitimate use by Grace is far outweighed by the importance of keeping settlement agreements confidential, this Court should deny Grace's Motion.

III.    Settlements with bankrupts are also not discoverable.

For the same reasons as any other confidential settlement agreement, those agreements entered into between the Goldberg Claimants and bankrupt entities should not be discoverable. Such agreements arise out of negotiations just as any other settlement, and parties have the same expectations of confidentiality.  For those reasons, at least one District Court has reversed a Bankruptcy Court's order requiring production of confidential settlement agreement with bankrupt entity.  *See In re Comdisco, Inc.*, No. 06 C 1535, 01 B 24795, 2006 WL 2375458 (N.D. Ill. August 14, 2006).  Another court has upheld a similar confidentiality provision. *See In re*

*A.H. Robins Co., Inc.*, 197 B.R. 541 (E.D. Va. 1995). The Goldberg Claimants respectfully submit that this Court should give the same protection to these confidential agreements.

IV.   <u>Information regarding reasons for retaining counsel are privileged.</u>

The Goldberg Claimants have objected to the portion of Grace's Questionnaire which asks "Did you retain counsel in order to receive the services provided by the [ ] doctor?" Grace now claims that the Goldberg Claimants have "improperly asserted claims of privilege." Grace's Motion at p. 5. To the contrary, this question goes to the essence of confidential communications between attorney and client.

Grace supports its question by citing *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, (Fed. Cir. 2001), which stated that "[i]nquiry into the general nature of the legal services provided by counsel does not necessitate an assertion of the privilege because the general nature of services is not protected." *Id.* at 1273. However, Grace has not inquired into "the general nature" of GPW's legal services because they are undisputed: GPW represents clients who have claims against manufacturers and suppliers for injuries arising from exposure to asbestos. What Grace has inquired into, on the other hand, are particular clients' reasons for retaining the legal services of a particular firm. The only way that question could be answered is by referring to communications between attorney and client, not of the underlying facts of a claim, but of a claimant's state of mind expressed to counsel. Such communications are at the heart of the attorney-client privilege, and therefore the Goldberg Claimants continue to object to Grace's question and request that this Court deny Grace's Motion to Compel with respect to that question.

## Conclusion

For the foregoing reasons, Grace's Motion to Compel should be denied as to the

Goldberg Claimants.

GOLDBERG, PERSKY & WHITE, P.C.

*/s/ Mark C. Meyer*
Mark C. Meyer
David B. Rodes
1030 Fifth Avenue
Pittsburgh, PA  15219
412-471-3980
412-471-8308 (Fax)
mmeyer@gpwlaw.com .

Date: November 27, 2006