**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | **Hearing Date: December 5, 2006 @ 8:30 a.m.** |
| | ) | **Related Docket No.: 13618** |
| | ) | **Before the Honorable Judith K. Fitzgerald, U.S.** |
| | ) | **Bankruptcy Court, 5414 U.S. Steel Tower, 600 Grant** |
| | ) | **Street, Pittsburgh, PA 15219** |

**THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS'
RESPONSE TO THE DEBTORS' MEMORANDUM OF POINTS AND AUTHORITIES
CONCERNING BACKGROUND OF QUESTIONNAIRE APPROVAL PROCESS AND
<u>OBJECTIONS PREVIOUSLY ADDRESSED BY THE COURT [D.I. 13618]</u>**

The Official Committee of Asbestos Personal Injury Claimants ("Committee"), by and through its undersigned counsel, hereby submits this Response to the "Memorandum of Points and Authorities Concerning Background of Questionnaire Approval Process and Objections Previously Addressed by the Court" (hereinafter "Grace Mem.") filed by the debtors-in-possession herein (collectively, "Grace") on or about November 9, 2006 [Docket # 13618].

## BACKGROUND

Grace's Memorandum makes the following three basic assertions:

(1) that the Court has effectively already over-ruled all objections to the Questionnaire based on relevance and burden (Grace Mem. at 2, 10-13);

(2) that there has been an orchestrated delay in responding to the Questionnaires which is the fault of the Committee and the individual asbestos personal injury claimants (Grace Mem. at 1); and

(3) that the appropriate sanction for failure to complete the Questionnaire is claim disallowance or asking the Court to draw "an adverse inference" concerning the claimant's claim. (Grace Mem. at 17).

The first two assertions are Grace's attempt at revisionist history and are contradicted by both the history of the Questionnaire process and the Court's prior orders, as explained *infra*.

The last assertion (concerning disallowance or "adverse inference" as a sanction) is clearly inappropriate, for several reasons. First, the Estimation Hearing (as both Grace and the Court have repeatedly emphasized) is for the purpose of determining Grace's aggregate liability for all present and future asbestos personal injury claims for plan confirmation uses only, and not for the purpose of allowing or estimating the value of any particular asbestos claim or group of claims. Second, 28 U.S.C. section 157(b)(2)(B) makes clear that only the district court, not the bankruptcy court, may make final determinations concerning "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution" thus precluding claims disallowance by this Court as part of the estimation process. Finally, to the extent that Grace asks the Court to draw "an adverse inference" against either the Committee or the Future Claimants Representative ("FCR") based on an individual claimant's inability to meet a discovery deadline, it is wholly inappropriate to sanction a party (here the FCR or the Committee) for potential discovery lapses by a third party recipient of discovery over whom neither the Committee nor the FCR have any control.

Finally, the ACC also expects that if Grace is successful in obtaining rulings in its favor on the most current round of motions to compel, it will seek to have any order issued by the Court to be applied to claimants or law firms which were not served with a motion. This is inappropriate and counter to the most basic notions of notice, due process and fundamental fairness. Grace filed its most recent motions to compel against a defined number of plaintiff law firms; the remaining claimants and law firms were not served with a motion and thus have no motion to which they must respond. Grace cannot circumvent fundamental issues of notice and due process by seeking to apply rulings issued by the Court with respect to one set of claimants (i.e. those who are respondents to a particular motion to compel) to claimants who are not

respondents to a motion to compel and who may have objections which are highly fact specific and related to their own particular circumstances.

## ARGUMENT

### A. The Court Has Not Overruled Claimant-Specific Burden or Relevance Objections

Much of Grace's Memorandum is devoted to the motion, briefing, and argument process engaged in by Grace and the Committee which led to the issuance of the Questionnaire (Grace Mem. at 2, 4-8). Grace seems to be asserting that because the Committee objected to certain elements of its discovery Questionnaire, the individual claimants who received the Questionnaires are barred from raising similar objections. (Grace Mem. at 2). That argument, however, is unavailing. The Committee has repeatedly explained in the course of the proceedings here that a creditors' committee does not represent individual claimants, and cannot bind them with respect to issues unique to those claimants. See In re Kensington Int'l Ltd., 368 F.3d 289, 315 (3d Cir. 2004); In re Levy, 54 B.R. 805, 807 (Bankr. S.D.N.Y. 1985). Here, Grace did not provide notice to the individual claimants of its motion for leave to circulate the Questionnaire, and with a few highly particularized exceptions, individual claimants or claimant groups did not participate in the proceedings leading up to the distribution of the Questionnaire. Nor, until the present motions to compel scheduled for hearing on December 5, 2006, will the Court have been presented with or asked to rule upon specific burden or relevance objections to the Questionnaire raised by the individual claimants themselves.

Nothing in the extensive record suggests that the Court intended – or even believed it had the power – to preemptively overrule any objections that individual claimants might advance. In fact, the Court acknowledged that there would likely be objections from some respondents. See, e.g., Hr'g Tr. of Jun. 19, 2006, at 55, 86 (excerpt attached as Exhibit 1); Hr'g Tr. of Apr. 17,

2006, at 27 (excerpt attached as Exhibit 2); Hr'g Tr. of Jul. 19, 2005, at 232 (excerpt attached as Exhibit 3). Most importantly, in its October 12, 2006 Order denying Grace's initial "Global" Motion to Compel, the Court made clear that claimants may still raise their own claimant specific burden and relevance objections to the Questionnaire:

> The Court has indicated that there may be specific individual questions that for reasons particular to an individual's circumstances or claim, a question contained in the Questionnaire is not relevant to his or her claim or is unduly burdensome or invades a privilege, and he or she may separately raise his or her specific objections pursuant to the mechanism established below in ¶ 6. The Court has not decided the merits of any claimant-specific objection.

Order of October 12, 2006 [Docket # 13393] at ¶ 1.

By permitting the Questionnaire exercise to go forward, the Court decided that the questions were within the broad scope of permissible discovery. Nevertheless, its decision does not mean that an individual claimant's objection is without merit or that objections should be barred as a result of contrary "law of the case." Here, the Court must give due deference to individual claimants who raise issues of burden and relevance, since such issues will be specific to their circumstances.

Within its Questionnaire, Grace chose to propound broad-ranging questions, whose burden and relevance – or likelihood of leading to relevant evidence – are likely to vary widely from case to case. A question that one claimant can answer quite simply – because, for example, he has access to worksite records or his counsel had already developed the relevant information when the automatic stay went into effect – may present a heavy and unreasonable burden for another. A broad category of inquiry, which may meet relevance standards in some cases (e.g., questions related to smoking in a lung cancer case), may be highly invasive of privacy or very far afield from the issues presented in other cases (e.g., smoking history is irrelevant in

mesothelioma cases). The Court's general ruling that a question is one that can properly be put in the exercise of very broad-ranging discovery, does not mean – nor could it properly mean – that a claimant-specific objection is without merit.

**B.     The Delays Inherent In the Questionnaire Process Are Not The Fault of the Committee or the Asbestos Claimants**

Grace blithely asserts that it is the victim of "concerted efforts by asbestos personal injury firms and the PI Committee to obstruct and delay the Questionnaire discovery process." (Grace Mem. at 1). This ad hominem attack grossly mischaracterizes the case history, ignores the delays which are inherent in any Questionnaire process which seeks discovery from over 140,000 people, the delays caused by the hiatus in discovery due to the mediated attempt to reach a consensual plan of reorganization, and the delays in seeking resolution of disputed discovery issues which were caused solely by Grace itself.

First, by its very nature, a discovery process involving 140,000 individual claims was likely to take far more time than either Grace or the Committee initially estimated. It is highly unprecedented for discovery from an asbestos defendant to proceed simultaneously against a large percentage of a plaintiff law firm's clients, as is the case with Grace's Questionnaire discovery. In many jurisdictions, neither the plaintiff nor the defendant may proceed with any discovery after an asbestos personal injury case is filed until the case is moved onto the "trial docket." This means that as a practical matter usually only a small percentage of the claims pending against an asbestos defendant are in the active discovery process at any one time. For firms who have thousands of claimants with lawsuits on file against Grace, the time necessary to respond to simultaneous discovery concerning a large percentage of their clients was likely to exceed the amount of time that Grace and the Committee estimated would be necessary in the

original CMO. This is no one's fault, just a practical reality of seeking simultaneous discovery from over 100,000 people.

Second, although Grace points out that the Questionnaires were initially served in September 2005 (Grace Mem. at 7) and notes that the Questionnaire return deadline was extended three times from January 12, 2006 until July 12, 2006, Grace fails to mention that the reason that the deadlines were extended was to provide time for Grace, the Committee, the FCR and other parties to attempt to negotiate a consensual plan of reorganization. As part of that negotiation process, discovery was effectively stayed – both the Committee's discovery from Grace and Grace's discovery of the claimants – because if a consensual plan was reached there would be no need for any party or the individual claimants to devote time and resources to complying with discovery demands. Although the Court-supervised mediation did lead to an important agreement between the PI Committee, the PD Committee, and the Zonolite Attic Insulation Claimants, the remaining constituencies were unable to resolve their difference of opinion with the Asbestos Constituencies concerning whether there was any equity value remaining for Grace's shareholders after its creditors were paid. Consequently, no agreement on a consensual plan was reached. However, it is unfair to characterize the six month delay in completion of the Questionnaires as the product of "obstruction and delay" by the Committee or the individual claimants.

Third, Grace itself has contributed to the delay in bringing Questionnaire objections it deems unfounded to the Court's attention. Approximately 60,000 Questionnaires were returned to Grace on or before the July 12, 2006 deadline, many of them contained objections in addition to responses.[1] Rather than teeing up motions to compel concerning individual objections based

---

[1] An additional 36,000 claimants filed proof of claim forms for settled claims, and were thus not required to complete a Questionnaire.

on privilege or work product or claimant specific objections which Grace believed lacked merit, Grace instead filed a global motion to compel on July 17, 2006 in which it sought an Order declaring (1) that all objections to the Questionnaire based on relevance, burden, breadth and vagueness were over-ruled, (2) that questions in the Questionnaire could not be answered by reference to attached documents, and (3) that both the claimant and the claimant's attorney had to sign the Questionnaire attestation.  Not surprisingly, after several rounds of briefing, two hearings, and three months gone by, the Court denied the global relief sought by Grace.  See Order of October 12, 2006 [Docket # 13393].   Grace cannot fault the claimants or the Committee for its tactical decision in choosing to wait until November 9, 2006 (only 3 weeks before expert reports from the parties' estimation experts were originally scheduled to be due) to file motions to compel which for the first time address the merits of individual or claimant-specific objections to the Questionnaire.

      **C.**      **Claims Disallowance And "Drawing An Adverse Inference" Are Not Appropriate Discovery Sanctions in This Proceeding.**

At the conclusion of its Memorandum, Grace states that it "will seek to have an individual's claim disallowed or seek an adverse inference where a Claimant fails to provide the requested information by January 12, 2007." (Grace Memo. at 17).  Neither discovery sanction is appropriate given the nature of the Estimation Hearing and the role the bankruptcy court plays in plan confirmation as opposed to claims allowance and liquidation for purposes of distribution.

28 U.S.C. section 157(b)(2)(B) makes clear that core proceedings include "estimation of claims or interests for the purposes of confirming a plan under chapter 11" but do not include "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution."  28 U.S.C. § 157(b)(2)(B).  Here, the debtor proposes a section 524(g) plan which is opposed by one or more groups of creditors on

the ground that the plan allocates too little (or too much) value to the 524(g) trust and thus the plan "unfairly discriminates" against a group of creditors within the meaning of 11 U.S.C. section 1129(b).  In such cases, as here, an estimate of the aggregate asbestos liability is necessary to determine whether the plan can be confirmed over the objections of a dissenting creditor class.  See, e.g., In re Armstrong World Indus., Inc., 348 B.R. 111, 114-15 (D. Del. 2006) (Robreno, J.).  Additionally, section 524(g) itself requires the bankruptcy court to make a finding in circumstances where the channeling injunction will protect entities in addition to the debtor with the direct liability to the claimants that the benefits provided to the debtor and related parties by the channeling injunction are "fair and equitable" to future demand holders.  11 U.S.C, § 524(g)(4)(B)(ii).  In order to make such a finding, a court in some circumstances could also be required to estimate the aggregate PI liability.[2]  Estimation of the aggregate liability for plan confirmation/cram down purposes, rather than individual claims allowance, is particularly necessary in 524(g) asbestos bankruptcy cases, when all parties recognize that the vast majority of the liability is for claims that will arise in the future (which 524(g) calls "demands") and which cannot be allowed or disallowed during the pendency of the bankruptcy case in any event.

The Estimation Hearing in this proceeding is thus demonstrably *not* an estimation for purposes of claims allowance.  In fact, none of the asbestos claims will be allowed in the bankruptcy case – they will be channeled to a trust and considered and resolved by the trust post-bankruptcy.  The Court has repeatedly stated (and Grace has agreed) that the Estimation Hearing is to determine the debtor's aggregate liability for pending and future asbestos personal injury claims, and not for the purpose of evaluating or estimating the claims for purposes of individual allowance or disallowance.  See, e.g., Hr'g Tr. of Sept. 25, 2006 at 166 ("This process is to help

---

[2]  One of the key terms of the Settlement Agreement resolving the Sealed Air litigation (which settlement agreement obligates Sealed Air Corporation to contribute over a billion dollars of value to the Grace bankruptcy estate) is that Sealed Air receive the benefit of a § 524(g) channeling injunction.

anybody's expert that the information that they need to try to convince me of what the existing and future asbestos personal injury claims will be, and how much it's going to cost to resolve them. That's what this is for. And nothing else."), 194 ("The point was that this is for estimation purposes, not for allowance and disallowance purposes.") (excerpt attached as Exhibit 4).

Now, for the first time, Grace has made clear that it will seek to use the Questionnaire process as a vehicle for individual claims disallowance. Even if Grace were litigating the merits of individual claims directly with each claimant, claims disallowance would be an extreme and drastic sanction against a party for a discovery violation. Here, however, although the individual claimants may be parties to the bankruptcy proceedings if they file a proof of claim: (a) they are not parties to the Estimation Hearing; (b) their claims are not being estimated individually for purposes of allowance, disallowance, or distribution; and (c) the discovery of individual claims has been permitted only as an aid to estimation of the aggregate liability. Disallowance of individual claims as a discovery sanction thus flies in the face of an Estimation Hearing conducted solely for purposes of confirming a section 524(g) plan, when under the debtors' proposed plan all the claims will be channeled to a post-confirmation trust and considered and resolved by the trust post-bankruptcy.

Moreover, as noted above, 28 U.S.C. section 157(b)(2)(B) provides that core proceedings do not include "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution." Section 157(c)(1) in turn mandates that although a bankruptcy court may hear non-core proceedings that are otherwise related to a case under title 11:

> In such [non-core] proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be

entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1). No one can seriously dispute that claims disallowance as a discovery sanction is a liquidation of the claim for purposes of distribution (i.e. zero); thus, it is highly doubtful that a bankruptcy court even has the authority to disallow a personal injury claim without each such decision being subject to de novo review in the district court.

Grace has also stated that it will seek an "adverse inference" where a claimant fails to provide the requested information without stating exactly against whom the inference should be drawn. If the adverse inference is to be drawn against an individual claimant, it is inappropriate for the same reason that claims disallowance is an inappropriate sanction – namely that the purpose of the Estimation hearing is to determine the aggregate liability for all present and future claims, not to estimate the value of any particular claim.

If on the other hand Grace seeks to have the Court draw an adverse inference against the Committee or the FCR based upon individual claimants' inability to meet their discovery obligations by the January 12, 2007 supplementation deadline, such a request is wholly inappropriate for an even more fundamental reason: neither the Committee nor the FCR are the parties to whom the Questionnaire discovery is directed. It is axiomatic that any discovery sanction (such as the drawing of an adverse inference or treating facts as established) can only be imposed on a *party* who has failed to comply with its discovery obligations. See Fed. R. Civ. P. 37(b)(2).[3] Here, neither the Committee nor the FCR are in default of any of their own discovery

---

[3] Fed. R. Civ. P. 37(b)(2) provides in pertinent part:
> If a *party* or an officer, director, or managing agent of a *party* or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a *party* fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule

obligations. Nor does the Committee (much less the FCR) have the ability to control the actions of individual claimants. In short, whatever Grace may mean by "an adverse inference," it is inappropriate to apply such a sanction to the Committee or FCR.

Dated: November 27, 2006    **CAMPBELL & LEVINE, LLC**

*/s/Mark T. Hurford*_____
Marla R. Eskin (No. 2989)
Mark T. Hurford (No. 3299)
800 N. King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 426-1900
Telefax: (302) 426-9947

- and -

**CAPLIN & DRYSDALE, CHARTERED**

Elihu Inselbuch
375 Park Avenue, 35th Floor
New York, NY 10152-3500
Telephone: (212) 319-7125
Telefax: (212) 644-6755

---

35, or if a *party* fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient *party* to support or oppose designated claims or defenses, or prohibiting that *party* from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient *party*.

(*emphasis* added).

Peter Van N. Lockwood
Nathan D. Finch
Walter B. Slocombe
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone: (202) 862-5000
Telefax: (202) 429-3301

Counsel for the Official Committee
of Asbestos Personal Injury Claimants