**EXHIBIT "A"**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| | ) | |

### DECLARATION OF SCOTT WERT

1. I declare under penalty of perjury that the following is true and correct. I have personal knowledge of the matters stated herein.

2. My name is Scott Wert. I am an attorney practicing law in the state of Texas with the law firm of Foster & Sear, LLP. Foster & Sear represents certain individuals with claims against W.R. Grace, et al. ("Debtors") for personal injuries caused by exposure to asbestos-containing products. I am familiar with (i) my firm's use of consulting expert witnesses, (ii) communications with our clients regarding their claims, including the medical aspect of their claims, and (iii) the terms of typical settlements reached with defendants in asbestos litigation.

3. In many of our litigation cases, including the cases currently pending against Debtors, our client, or my law firm on behalf of our client, has retained or specially employed physicians or other medical professionals as expert witnesses in anticipation of litigation or preparation for trial, and who are not expected to be called as witnesses at trial (a "Consulting Expert"). In such cases we do not disclose the identity, opinion, reports or materials of the Consulting Expert(s) to the adverse party in such litigation, but instead hold such information in confidence. The facts known to and opinions of Consulting Experts are not required to be disclosed, as a matter of law and fundamental jurisprudence, in all of the jurisdictions where the cases are pending.

4. The questionnaire propounded by Debtors to claimants in this bankruptcy case requests disclosure of such confidential information as it relates to our Consulting Experts in cases against the Debtors. Specifically, the following questions and instructions request the disclosure of such confidential information:

-1-

 (a) Section C of the Instructions requests the completion of Part II of the Discovery Questionnaire "if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors."
 (b) Section C of the Instructions requests the production of "any and all documents" that "support or conflict with your diagnosis."
 (c) Section C of the Instructions requests the production of "all x-ray readings and reports."
 (d) Section C of the Instructions requests the production of "all pulmonary function test results, including the raw data and all spirometric tracings, on which the results are based."
 (e) Section J of the Instructions requests the production of "any and all documents" that "support or conflict with your diagnosis."
 (f) Part II of the questionnaire requests disclosure of "diagnoses and diagnostic tests" by "multiple doctors" concerning "previous or subsequent diagnoses or diagnostic tests that change or conflict with the original diagnoses."

5. Foster & Sear also regularly communicates with its clients regarding matters relating to the clients' claims, including the medical aspect of such claims. These communications relate to various issues regarding a client's medical condition, and sometimes include, but are not limited to, discussions relating to the physicians and medical professionals that treat the client or provide opinions with regard to the client's condition. These communications are confidential, are made for the purpose of facilitating the rendition of legal services to the client and are covered by the attorney-client and work product privileges. In addition, these communications often include the mental impressions of legal counsel developed in anticipation of litigation or for trial, and thus constitute work product of Foster & Sear.

6. The questionnaire propounded by Debtors to claimants in this bankruptcy case requests disclosure of such protected attorney-client communications and of Foster & Sear's privileged work product. Specifically, the following questions and instructions request the disclosure of such attorney-client communications and work product

 (a) Part II of the questionnaire to the extent that it asks if Claimant "retained counsel in order to receive any of the services performed by the diagnosing doctor."
 (b) Part II of the questionnaire to the extent that it asks if "the diagnosing doctor was referred to you by counsel."
 (c) Part II of the Discovery Questionnaire to the extent that it asks if Claimant is "aware of any relationship between the diagnosing doctor and your legal counsel".

    (d)    The above questions are asked in sections 2, 3, 4, 5, 6 and 7 of Part II of the questionnaire.

7. When our clients reach settlements with defendants regarding asbestos claims, the settlements are memorialized in a written settlement agreement, which specifies the terms and conditions of the settlement. In the usual case, such agreements contain a confidentiality requirement which requires that the parties keep the settlements confidential and not disclose the terms, conditions or the amounts of the settlements to any person or entity not a party to the agreements.

8. These confidentiality provisions are binding on the parties and do not contain any temporal limitations. Accordingly, Foster & Sear and its clients who are parties to such settlements remain subject to the confidentiality provisions of the agreements. The agreement to not disclose the terms, conditions or amounts of the settlements constitutes a portion of the consideration for the settlement. To disclose such matters could constitute a breach of the agreement and could possibly subject Foster & Sear and its clients to potential penalties for such breach.

Executed at Arlington, Texas on November 20, 2006.

_____
Scott Wert