# **EXHIBIT "C"**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) ) ) | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | ) ) ) | Case No. 01-01139 (JKF) Jointly Administered |
| Debtors. | ) ) ) ) | |

### DECLARATION OF DEIRDRE WOULFE PACHECO

1. I declare under penalty of perjury that the following is true and correct. I have personal knowledge of the matters stated herein.

2. My name is Deirdre Pacheco. I am an attorney practicing law in the states of New Jersey and New York, with the law firm of Wilentz Goldman & Spitzer, P. A. ("Wilentz"). Wilentz represents certain individuals with asbestos-related personal injury/wrongful death claims against W.R. Grace, et al. ("Debtors") in the state courts of New York and New Jersey ("the WGS Grace Claimants"). I am familiar with (i) my firm's use of consulting expert witnesses, (ii) communications with our clients regarding their claims, including the medical aspect of their claims, (iii) the terms of typical settlements reached with defendants in asbestos litigation, and (iv) the Wilentz. firm's position on seeking racial information of its clients.

### CONSULTING EXPERTS

3. In many of our litigation cases, including the cases currently pending against Debtors, our client, or my law firm on behalf of our client, has retained or specially employed physicians or other medical professionals as expert witnesses in anticipation of litigation or in preparation for trial, and who are not expected to be called as witnesses at trial (a "Consulting Expert"). In such cases we do not disclose the identity, opinion, reports or materials of the Consulting Expert(s) to the adverse party in such litigation, but instead hold such information in confidence. The facts known to, and opinions of, Consulting Experts are not required to be disclosed, as a matter of law

and fundamental jurisprudence, in all of the jurisdictions where the WGS Grace Claimants' cases are pending.

4. The questionnaire propounded by Debtors to claimants in this bankruptcy case requests disclosure of such confidential information as it relates to our Consulting Experts in cases against the Debtors. Specifically, the following questions and instructions request the disclosure of such confidential information:

(a) Section C of the Instructions requests the completion of Part II of the Discovery Questionnaire "if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors."
(b) Section C of the Instructions requests the production of "any and all documents" that "support or conflict with your diagnosis."
(c) Section C of the Instructions requests the production of "all x-ray readings and reports."
(d) Section C of the Instructions requests the production of "all pulmonary function test results, including the raw data and all spirometric tracings, on which the results are based."
(e) Section J of the Instructions requests the production of "any and all documents" that "support or conflict with your diagnosis."
(f) Part II of the questionnaire requests disclosure of "diagnoses and diagnostic tests" by "multiple doctors" concerning "previous or subsequent diagnoses or diagnostic tests that change or conflict with the original diagnoses."

As it so happens, this objection, as to WGS Grace Claimants, has turned out to be prophylactic, so far. I.e., after nearly 6 (six) years of the automatic stay, all medicals called for have been produced via responses to the API Questionnaire. WGS Grace Claimants, however, do NOT waive this objection to the extent they come to have such medicals, of which applicable non-bankruptcy law would prohibit production as called for in the API Questionnaire.

## ATTORNEY/CLIENT COMMUNICATIONS

5. Wilentz also regularly communicates with its clients regarding matters relating to the clients' claims, including the medical aspect of such claims. These communications relate to various issues regarding a client's medical condition, and sometimes include, but are not limited to, discussions relating to the physicians and medical professionals that treat the client or provide opinions with regard to the client's

condition. These communications are confidential, are made for the purpose of facilitating the rendition of legal services to the client and are covered by the attorney-client and work product privileges. In addition, these communications often include the mental impressions of legal counsel developed in anticipation of litigation or in preparation for trial, and thus constitute work product of Wilentz.

6. The questionnaire propounded by Debtors to claimants in this bankruptcy case requests disclosure of such protected attorney-client communications and of Wilentz's privileged work product. Specifically, the following questions and instructions request the disclosure of such attorney-client communications and work product

    (a) Part II of the questionnaire to the extent that it asks if Claimant "retained counsel in order to receive any of the services performed by the diagnosing doctor."
    (b) Part II of the questionnaire to the extent that it asks if "the diagnosing doctor was referred to you by counsel."
    (c) Part II of the Discovery Questionnaire to the extent that it asks if Claimant is "aware of any relationship between the diagnosing doctor and your legal counsel".
    (d) The above questions are asked in sections 2, 3, 4, 5, 6 and 7 of Part II of the questionnaire.

### DETAILS OF SETTLEMENTS WITH NON-GRACE PARTIES

7. When our clients reach settlements with defendants regarding asbestos claims, the settlements are memorialized in a written settlement agreement, which specifies the terms and conditions of the settlement. In the usual case, such agreements contain a confidentiality requirement which requires that the parties keep the settlements confidential and not disclose the terms, conditions or the amounts of the settlements to any person or entity not a party to the agreements. Even the court-approved form of releases for settled New Jersey and New York asbestos cases do not disclose this information.

8. These confidentiality provisions are binding on the parties and do not contain any temporal limitations. Accordingly, Wilentz and its clients who are parties to such settlements remain subject to the confidentiality provisions of the agreements. The agreement to not disclose the terms, conditions or amounts of the settlements constitutes a portion of the consideration for the settlement. To

      disclose such matters could constitute a breach of the agreement and could possibly subject Wilentz and its clients to potential penalties for such breach.

9. Further, *inter alia*, WGS has no interest in other plaintiff's firms learning the amounts for which WGS clients' claims were settled, no interest in other defendants learning the amounts for which WGS clients' claims were settled, or, and especially, no interest in insurance carriers - who represent these and other defendants in and out of bankruptcy courts - learning the amounts for which WGS clients' claims were settled. Under applicable New Jersey law, such information would under no circumstances ever be discoverable. Under applicable New York law, there are rare instances in which, some information of this type *might* have to be disclosed - to the court - but only *post-*verdict for liability re-allocation purposes.

10. In response to the Questionnaire, WGS has already provided Grace lists of which other defendants settled w/each client, but without the amount of such settlement on a plaintiff/defendant basis. WGS would also agree to provide a current aggregate settlement figure for each plaintiff (e.g., "settlements paid for John Doe on the 14 settlements above out of 50 defendants = $X), however WGS is unwilling to provide individual settlement numbers, and such information is not discoverable.

## RACE

11. Wilentz does not collect or maintain information concerning its clients' race. However, to the extent that any particular client has taken a pulmonary function test, the client's race is typically noted on the test results, which have already been provided to Grace. Since Grace's question on its face indicates that race is only sought "for the purposes of evaluating Pulmonary Function Test results", Grace will have information regarding race on the very test documents it is evaluating.

12. To the extent that Grace wants the information for any other reason, it may well be discriminatory and improper. Wilentz has submitted proofs of claim for each of its clients, including each client's home address. Grace is likely correct that our clients know their own race. Accordingly, if the Court determines that Grace has some legitimate need for this information, respectfully, the Court should direct that Grace ask our clients this question directly. Under no circumstances will Wilentz ask its clients this question.

Executed at Woodridge, NJ (city and state), on November 28th, 2006.

_Deirdre Woulfe Pacheco_ (signed)
Deirdre Woulfe Pacheco