# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                          Chapter 11

**W.R. Grace & Co., et al.**                    Case No. 01-01139 (JKF)

    Debtors.                Jointly Administered

**TWENTY-SECOND QUARTERLY FEE APPLICATION OF STROOCK & STROOCK
& LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
FROM JULY 1, 2006 THROUGH SEPTEMBER 30, 2006**

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **July 1, 2006 – September 30, 2006** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$380,213.50** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$4,742.11** |
| Fees and Expenses of the Asbestos Issues Expert | **$219,776.61** |

This is an: ☒ interim ☐ final application

This is the twenty-first quarterly application filed.

**Attachment A**

**Monthly Interim Fee Applications**

| Date Filed | Period Covered | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01- 4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01- 7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02- 04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

|  |  | Payment Requested |  | Payment Approved |  |
|---|---|---|---|---|---|
| July 2, 2002 D.I.2324 | 05/01/02 – 05/31/02 | $74,910.75 | $2,9154.43 (Stroock) $43,190.69 (Chambers) | $59,928.60 | $46,105.12 |
| August 5, 2002 D.I.2495 | 06/01/02 – 06/30/02 | $73,096.75 | $2,054.05 (Stroock) $114,666.72 (Chambers) | $58,477.4011 | $116,720.77 |
| September 20, 2002 D.I.2720 | 07/01/02 – 07/31/02 | $90,903.27 | $1,250.79 (Stroock) $11,996.25 (Chambers) | $72,722.61 | $13,274.04 |
| October 29, 2002 D.I.2898 | 08/01/02 – 08/31/02 | $93,151.25 | $11,539.51 (Stroock) $5,046.70 (Chambers) | $74,521.00 | $16,586.21 |
| November 14, 2002 D.I.2981 | 09/01/02 - 09/30/02 | $96,613.25 | $15,567.77 (Stroock) $771.50 (Chambers) | $77,290.60 | $16,339.27 |
| December 10, 2002 D.I.3129 | 10/1/02 – 10/31/02 | $68,404.00 | $2,956.54 (Stroock) $1,780.75 (Chambers) | $54,723.20 | $4,737.29 |
| January 28, 2003 D.I.3286 | 11/1/02 – 11/30/02 | $75,345.50 | $8,712.16 (Stroock) | $60,276.40 | $8,712.16 |
| February 7, 2003 D.I.3349 | 12/1/02 – 12/31/02 | $27,683.50 | $13,332.14 (Stroock) | $22,146.80 | $13,332.14 |
| March 26, 2003 D.I.3552 | 1/1/03 – 1/31/03 | $88,139.00 | $1,210.11 (Stroock) | $70,511.20 | $1,210.11 |
| April 7, 2003 D.I.3626 | 2/1/03 – 2/28/03 | $76,313.00 | $2,022.78 (Stroock) $1,077.80 (Chambers) | $61,050.40 | $3,100.58 |
| April 29, 2003 D.I.3718 | 3/1/03 – 3/31/03 | $60,163.50 | $6,191.15 (Stroock) | $48,130.80 | $6,191.15 |
| June 2, 2003 D.I. 3850 | 4/1/03 – 4/30/03 | $60,269.00 | $814.02 (Stroock) $2,043.00 (Chambers) | $48,215.20 | $2,857.02 |
| July 1, 2003 D.I. 3983 | 5/1/03 – 5/31/03 | $111,990.50 | $691.84 (Stroock) $3,830.50 (Chambers) | $89,592.40 | $10,522.34 |
| August 5, 2003 D.I. 4152 | 6/1/03 – 6/30/03 | $43,824.00 | $1,220.42 (Stroock) $61,755.00 (Chambers) | $35,059.20 | $62,975.42 |
| September 4, 2003 D.I. 4381 | 7/1/03 – 7/31/03 | $79,090.50 | $2,301.33 (Stroock) $14,274.25 (Chambers) | $63,272.40 | $16,575.58 |

2

|  | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 30, 2003<br>D.I. 4512 | 8/1/03 –<br>8/31/03 | $69,927.00 | $1,164.19 (Stroock)<br>$12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003<br>D.I. 4625 | 9/1/03 –<br>9/30/03 | $69,409.50 | $1,076.94 (Stroock)<br>$10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2003<br>D.I. 4843 | 10/1/03 –<br>10/31/03 | $96,980.50 | $3,800.45 (Stroock)<br>$42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2004<br>D.I. 4976 | 11/1/03 –<br>11/30/03 | $66,428.50 | $1,225.38 (Stroock)<br>$30,463.00 (Navigant<br>f/k/a Chambers) | $53,142.80 | $31,688.38 |
| February 4, 2004<br>D.I. 5056 | 12/1/03 –<br>12/31/03 | $52,321.50 | $924.99 (Stroock)<br>$27,005.00 (Navigant<br>f/k/a Chambers) | $41,857.20 | $27,929.99 |
| March 17, 2004<br>D.I. 5309 | 1/1/04 –<br>1/31/04 | $65,980.50 | $1,917.93 (Stroock)<br>$47,654.57 (Navigant<br>f/k/a Chambers) | $52,784.40 | $49,572.50 |
| April 6, 2004<br>D.I. 5406 | 2/1/04 –<br>2/29/04 | $90,421.50 | $3,636.48 (Stroock)<br>$35,492.50 (Navigant<br>f/k/a Chambers) | $72,337.20 | $39,128.98 |
| April 28, 2004<br>D.I. | 3/1/04 –<br>3/31/04 | $103,524.00 | $5,567.34 (Stroock) | $82,819.20 | $5,567.34 |
| June 14, 2004<br>D.I. 5803 | 4/1/04 –<br>4/30/04 | $99,136.00 | $3,518.96 (Stroock)<br>$1,515.00 (Navigant<br>February)<br>$49,667.00 (Navigant<br>March)<br>$80,307.11 (Navigant<br>April) | $79,308.80 | $135,008.07 |
| July 2, 2004<br>D.I. 5917 | 5/1/04 –<br>5/31/04 | $134,324.50 | $2,409.97 (Stroock)<br>$78,360.05 (Navigant<br>May) | $107,459.60 | $80,770.02 |
| August 2, 2004<br>D.I. 6105 | 6/1/04 –<br>6/31/04 | $120,501.00 | $1,831.49 (Stroock)<br>$62,625.00 (Navigant<br>June) | $96,400.80 | $64,456.49 |

3

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 9, 2004 D.I. 6341 | 7/1/04 – 7/31/04 | $72,394.00 | $3,461.84 (Stroock) $40,427.50 (Navigant July) | $57,915.20 | $43,889.34 |
| September 23, 2004 D.I. 6444 | 8/1/04 – 8/31/04 | $70,457.00 | $1,764.40 (Stroock) | $56,365.60 | $1,764.40 |
| October 14, 2004 D.I 6625 | 9/1/04 – 9/30/04 | $83,903.50 | $1,535.61 (Stroock) $27,142.00 (Navigant August) | $67,122.80 | $28,677.61 |
| December 3, 2004 D.I. 7086 | 10/1/04 – 10/31/04 | $200,155.50 | $1,368.18 (Stroock) $ 24,659.00 (Navigant September) | $160,124.40 | $26,027.18 |
| January 7, 2005 D.I. 7481 | 11/1/04 – 11/30/04 | $218,608.50 | $14,019.09 (Stroock) $25,102.80 (Navigant October) $27,972.34 (Navigant November) | $174,886.80 | $67,094.23 |
| February 2, 2005 D.I. 7667 | 12/1/04 – 12/31/04 | $235,503.70 | $10,442.92 (Stroock) $62,687.97 (Navigant December) | $188,402.96 | $73,130.89 |
| March 15, 2005 D.I. 8026 | 1/1/05 – 1/31/05 | $187,168.00 | $4,411.55 (Stroock) $15,686.00 (Navigant January) | $149,734.40 | $20,097.55 |
| April 1, 2005 D.I. 8155 | 2/1/05 – 2/28/05 | $108,180.25 | $8,102.85 (Stroock) $18,303.37 (Navigant February) | $86,544.20 | $26,406.22 |
| April 29, 2005 D.I. 8305 | 3/1/05~ – 3/31/05 | $56,941.25 | $287.23 (Stroock) $6,114.86 (Navigant March) | $45,553.00 | $6,402.09 |
| June 6, 2005 D.I. 8562 | 4/1/05- 4/30/05 | $127,695.00 | $3,531.45 (Stroock) $20,129.06 (Navigant April) | $102,156.00 | $23,660.51 |
| June 28, 2005 D.I. 8704 | 5/1/05- 5/31/05 | $98,569.00 | $4,871.74 (Stroock) | $78,855.20 | $858.21 |

4

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| August 3, 2005<br>D.I. 9135 | 6/1/05-<br>6/30/05 | $114,903.75 | $4,871.74 (Stroock)<br>$34,075.28 (Navigant<br>June) | $91,923.00 | $38,947.02 |
| September 8, 2005<br>D.I. 9356 | 7/1/05 –<br>7/31/05 | $117,780.75 | $2,088.44 (Stroock)<br>$2,211.00 (Navigant) | $94,224.60 | $4,299.44 |
| October 4, 2005<br>D.I. 9565 | 8/1/05 –<br>8/31/05 | $106,796.25 | $5,046.99 (Stroock)<br>$18,550.00 (Navigant) | $85,437.00 | $23,596.99 |
| November 1, 2005<br>D.I. 10951 | 9/1/05 –<br>9/30/05 | $67,697.50 | $1,399.68 (Stroock)<br>$11,197.50 (Navigant) | $54,158.00 | $12,597.18 |
| November 29, 2005<br>D.I. 11202 | 10/1/05 –<br>10/31/05 | $98,216.75 | $1,611.30 (Stroock)<br>$11,582.50 (Navigant) | $78,573.40 | $13,193.80 |
| January 9, 2006<br>D.I. 11507 | 11/1/05 –<br>11/30/05 | $104,348.00 | $2,847.45 (Stroock)<br>$71,598.50 (Navigant) | $83,478.40 | $74,445.95 |
| January 30, 2006<br>D.I. 11655 | 12/1/05 –<br>12/31/05 | $96,855.00 | $1,379.53 (Stroock)<br>$20,317.49 (Navigant) | $77,484.00 | 21,697.02 |
| March 1, 2006<br>D.I. 11921 | 1/1/06 –<br>1/31/06 | $73.383.00 | $1,810.85 (Stroock)<br>$14,124.01 (Navigant) | $58.706.40 | $15,934.86 |
| March 28, 2006<br>D.I. 12134 | 2/1/06 –<br>2/28/06 | $105,083.75 | $1,434.62 (Stroock)<br>$25,971.70 (Navigant) | $84.067.00 | $27,406.32 |
| May 2, 2006<br>D.I. 12354 | 3/1/06 –<br>3/31/06 | $145,189.50 | $2,512.81 (Stroock)<br>$25,838.37 (Navigant) | $116,151.60 | $28,351.18 |
| May 31, 2006    DI.<br>12558 | 4/1/2006 –<br>4/30/2006 | $116,817.00 | $2,141.42 (Stroock)<br>$7,425.00 (Navigant) | $93,453.60 | $9,566.42 |
| July 6, 2006<br>D.I. 12748 | 5/1/2006 –<br>5/31/2006 | $121,304.50 | $1,838.71 (Stroock)<br>$17,493.75 (Navigant) | $97,043.60 | $19,332.46 |
| August 1, 2006<br>D.I. 12899 | 6/1/2006 –<br>6/30/2006 | $94,856.50 | $1,869.66 (Stroock)<br>$38,548.75 (Navigant) | $75,885.20 | $40,418.41 |
| August 30, 2006<br>D.I. 13117 | 7/1/2006 –<br>7/31/2006 | $97,397.25 | $496.76 (Stroock)<br>$30,280.00 (Navigant) | $77,917.80 | $30,776.76 |
| October 2, 2006<br>D.I. 13336 | 8/1/2006 –<br>8/31/2006 | $131,856.25 | $98.34 (Stroock)<br>$98,317.50 (Navigant) | $105,485.00 | $98,415.84 |

SSL-DOCS1 1750444v2

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| November 2, 2006 D.I. 13559 | 9/1/2006 – 9/30/2006 | $150,960.00 | $4,147.01 (Stroock) $91,179.11 (Navigant) | $120,768.00 | $95,326.12 |

6

**Quarterly Fee Applications**

| Date Filed | Period Covered | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 (First) | 4/12/01-6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 (Second) | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 (Third) | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43* | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 (Fourth) | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60* | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 (Fifth) | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78* | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 (Sixth) | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45* | $224,534.21[1] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 (Seventh) | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75* | $136,886.40[2] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |

---

[*]    These amounts relate to the Committee's Asbestos Issues Expert.

[1]    Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[2]    Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

7

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 20, 2003<br>D.I. 3815<br>(Eighth) | 1/1/03 –<br>3/31/03 | $224,358.50 | $9,424.04<br>$1,077.80* | $224,615.50[3] | $9,424.04<br>(Stroock)[3]<br>$1,077.80<br>(Chambers)[3] |
| August 29, 2003<br>D.I. 4357<br>(Ninth) | 4/1/03 –<br>6/30/03 | $215,903.50 | $2,726.28<br>$67,628.50* | $215,903.50[4] | $2,726.28<br>(Stroock)[4]<br>$67,628.50<br>(Chambers)[4] |
| December 5, 2003<br>D.I. 4778<br>(Tenth) | 7/1/03 –<br>9/30/03 | $218,222.00 | $4,339.46<br>$36,865.19* | $218,222.00[5] | $4,339.46<br>(Stroock)[5]<br>$36,865.19<br>(Chambers)[5] |
| March 2, 2004<br>D.I. 5212<br>(Eleventh) | 10/1/03 –<br>12/31/03 | $215,718.50 | $5,950.82<br>$100,349.50* | $215,718.50[6] | $5,922.67<br>(Stroock)[6]<br>$100,349.50<br>(Chambers)[6] |
| May 18, 2004<br>D.I. 5597<br>(Twelfth) | 1/1/04 –<br>3/31/04 | $254,857.00 | $9,965.36<br>$83,147.07* | $254,857.00[7] | $9,965.36<br>(Stroock)[7]<br>$83,147.07<br>(Navigant)[7] |
| August 26, 2004<br>D.I. 6269<br>(Thirteenth) | 4/1/04 –<br>6/30/04 | $353,629.50 | $7,760.42<br>$272,474.16* | $353,629.50[8] | $7,760.42<br>(Stroock)[8]<br>$272,474.16<br>(Navigant)[8] |

---

[3]    Court Order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

[4]    Amended Court Order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

[5]    Court Order dated April 26, 2004 approved fees in the amount of $218,222.00 and expenses in the amount of $41,204.65.

[6]    Court Order dated June 16, 2004 approved fees in the amount of $215,718.50 and expenses in the amount of $106,272.17.

[7]    Court Order dated September 27, 2004 approved fees in the amount of $254,857.00 and expenses in the amount of $93,011.96.

[8]    Court Order dated January 25, 2005 approved fees in the amount of $353,629.50 and expenses in the amount of $280,234.58.

SSL-DOCS1 1750444v2

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| November 10, 2004 D.I. 6871 (Fourteenth) | 7/1/04 – 9/30/04 | $226,702.50 | $6,705.08 $67,569.50* | $226,702.50[9] | $6,705.08 (Stroock)[9] $67,569.50 (Navigant)[9] |
| February 22, 2005 D.I. 7851 (Fifteenth) | 10/1/04 – 12/31/04 | $653,133.20 | $25,830.19 $140,422.11* | $648,355.70[10] | $25,830.19 (Stroock)[10] $140,422.11 (Navigant)[10] |
| May 16, 2005 D.I. 8468 (Sixteenth) | 1/1/05- 3/31/05 | $352,289.50 | $12,746.23 $40,104.23* | $349,644.00 | $12,746.23 (Stroock)[11] $40,104.23 (Navigant) |
| August 19, 2005 D.I. 9225 (Seventeenth) | 4/1/-5 – 6/30/05 | $340,821.25 | $9,261.40 $54,204.34* | $340,096.25[12] | $9,261.40 (Stroock) $54,204.34 (Navigant) |
| November 18, 2005 D.I. 11118 (Eighteenth) | 7/1/05 – 9/30/05 | $291,843.50 | $8,534.71 $31,958.50 | $291,843.50[13] | $8,534.71 (Stroock) $31,958.50 (Navigant) |
| February 15, 2006 D.I. 11798 (Nineteenth) | 10/1/05 – 12/31/05 | $299,419.75 | $5,838.28 $103,498.49 | $299,419.75[14] | $5,838.69 (Stroock $103,498.49 (Navigant) |

---

[9] Court Order dated March 22, 2005 approved fees in the amount of $226,702.50 and expenses in the amount of $74,274.58.

[10] Court Order dated June 29, 2005 approved fees in the amount of $648,335.70 and expenses in the amount of $166,252.30.

[11] Court Order dated September 27, 2005 approved fees in the amount of $349,644.00 and expenses in the amount of $52,850.46.

[12] Court Order dated December 19, 2005 approved fees in the amount of $340,096.25 and expenses in the amount of $63,465.74.

[13] Court Order dated March 24, 2006 approved fees in the amount of $291,843.50 and expenses in the amount of $40,493.21.

[14] Court Order dated June 16, 2006 approved fees in the amount of $299,419.75 and expenses in the amount of $109,337.18.

9

|  |  | Payment Requested |  | Order Approving Amount of: |  |
|---|---|---|---|---|---|
| May 26, 2006<br>D.I. 12533<br>(Twentieth) | 1/1/2006 –<br>3/31/2006 | $323,566.25 | $5,758.28<br>$65,934.98 | $323,451.25[15] | $5,758.28<br>(Stroock)<br>$64,810.58<br>(Navigant) |
| August 17, 2006<br>D.I. 13006<br>(Twenty-First) | 4/1/2006 –<br>6/30/2006 | $332,978.00 | $5,849.79<br>$63,467.50 |  |  |

---

[15]     Court Order dated September 25, 2006 approved fees in the amount of $323,451.25 and expenses in the
amount of $71,130.16.

10

## WR GRACE & CO
## ATTACHMENT B
### JULY 1, 2006 - SEPTEMBER 30, 2006

| | Hours | Rate | Amount | No. of Years in Position |
|---|---|---|---|---|
| **Partners** | | | | |
| Greenberg, Mayer | 2.2 | $ 710 | $ 1,562.00 | 8 |
| Kruger, Lewis | 74.4 | 825 | 61,380.00 | 35 |
| Pasquale, Kenneth | 148.8 | 650 | 96,720.00 | 7 |
| | | | | |
| **Associates** | | | | |
| Cutler, Llana | 105.0 | 250 | 26,250.00 | 1 |
| Eichler, Mark | 0.6 | 550 | 330.00 | 8 |
| Krieger, Arlene G. | 307.0 | 575 | 176,525.00 | 21 |
| Strauss, Joseph E. | 0.8 | 530 | 424.00 | 5 |
| | | | | |
| **Paraprofessionals** | | | | |
| Holzberg, Ethel H. | 61.0 | 225 | 13,725.00 | 34 |
| Lollie, Toya | 7.3 | 150 | 1,095.00 | 1 |
| Mohamed, David | 106.0 | 150 | 15,900.00 | 17 |
| | | | | |
| **SUB TOTAL** | 813.1 | | $ 393,911.00 | |
| **LESS 50% TRAVEL** | (19.4) | | (13,697.50) | |
| **TOTAL** | 793.7 | | $ 380,213.50 | |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.**[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

**TWENTY-SECOND QUARTERLY FEE APPLICATION BY STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., et al., FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JULY 1, 2006 THROUGH SEPTEMBER 30, 2006**

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

---

[1]     The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

accordance with the Administrative Fee Order (defined below) for interim allowance of compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents as follows:

## INTRODUCTION

1.  By this application (the "Application"), Stroock seeks (i) an interim allowance of compensation for the professional services rendered by Stroock as counsel for the Committee for the period from July 1, 2006 through September 30, 2006 (the "Compensation Period") in the aggregate amount of $380,213.50 representing 638.8 hours of professional services and 174.3 hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Stroock during the Compensation Period in connection with the rendition of such professional services and paraprofessional services in the aggregate amount of $4,742.11, as well as the fees and expenses of the asbestos issues expert employed by the Committee pursuant to the Court's June 22, 2001 Order Authorizing the Retention of Experts (the "Asbestos Issues Expert") in respect of services rendered in the months of July, August and September of 2006 in the aggregate amount of $219,776.61.

2.  Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

## BACKGROUND

3.  On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code and have continued in the management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

2

Bankruptcy Code. Pursuant to an order of the Court, the Debtors' chapter 11 cases have been procedurally consolidated and are being jointly administered.

4. The Debtors operate a world-wide specialty chemicals and materials business and employ approximately 3860 full and part-time employees. On a consolidated basis, for the fiscal year 2000, Grace reported a net loss of $89.7 million[2] from $1.59 billion in net revenues. The Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor subsidiaries and affiliates.

5. On April 12, 2001, the United States Trustee formed the Committee. During the first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter 11 cases. The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP (n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel. On December 3, 2003, a second amended notice of appointment of the Committee was filed by the United States Trustee. On July 10, 2006, a third amended notice of appointment of the Committee was filed by the United States Trustee.

6. The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims and asbestos-related property damage claims against the Debtors (collectively, the "Asbestos Claim

---

[2]     The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related charge to earnings recorded in the fourth quarter of 2000.

3

Committees"). On June 18, 2001, the United States Trustee appointed an official committee to represent the interests of equity security holders of the Debtors (the "Equity Committee").

7.  By order dated May 24, 2004, the Court authorized the appointment of a legal representative for future asbestos claimants (the "Futures Representative").

8.  By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001. The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

9.  This is the twenty-second quarterly interim application Stroock has filed with the Court for an allowance of compensation and reimbursement of expenses for services rendered to the Committee. This Application is submitted pursuant to the terms of the Administrative Order Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, approved by the Court on May 3, 2001 as amended by order dated April 19, 2002 (collectively, the "Administrative Fee Order").

10. In accordance with the procedures established by the Administrative Fee Order, Stroock had, at the time of filing this Application, received payment from the Debtors for 80% of the fees and 100% of Stroock's expenses requested, and not objected to, in the July 2006 fee statement encompassed within this Compensation Period. Stroock has not yet received payment for the fees and expenses requested in the August 2006 fee statement for which a certificate of no objection has been filed, or for the September 2006 fee statement. In addition, Stroock has received payment from the Debtors in the amount of $30,280.00, representing the fees and

4

expenses of Navigant Consulting, Inc. ("Navigant") formerly known as Chambers Associates, the Asbestos Issues Expert for the Committee, for the month of July 2006, but has not received payment in respect of the fees and expenses of the Asbestos Issues Expert for the months of August and September 2006. Applicant has received no other payments and no promises for payment from any source for services rendered in connection with these cases for the months encompassing this Compensation Period other than as immediately set forth above. There is no agreement or understanding between the Applicant and any other person (other than members of Stroock) for the sharing of compensation to be received for the services rendered in these cases.

11. As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit "A," all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

## SUMMARY OF SERVICES RENDERED

12. Since being retained by the Committee, Stroock has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtors' estates. The variety and complexity of these cases and the need to act or respond on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by personnel from several legal disciplines, on an as-needed basis, including in certain instances, working into the evening and on weekends.

13. Stroock maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee. Such time records were made contemporaneously with the rendition of services by the person rendering such services and in the ordinary course of Stroock's practice, and are presented in compliance

5

with Delaware Local Rule 2016-2(d) amended effective as of February 1, 2006. A compilation

showing the name of the attorney or paraprofessional, the date on which the services were

performed, a description of the services rendered, and the amount of time spent in performing the

services during the Compensation Period is annexed hereto as Exhibit "B". In addition, Exhibit

"C" hereto contains a summary of the hours expended by each of the attorneys and

paraprofessionals during the Compensation Period, their normal hourly rates, and the value of

their services.

14. Stroock also maintains records of all actual and necessary out-of-pocket expenses

incurred in connection with the rendition of its professional services, all of which are also

available for inspection. A schedule of the categories of expenses and amounts for which

payment is requested is annexed hereto as Exhibit "D".

15. Stroock respectfully submits that the professional services that it rendered on behalf

of the Committee were necessary and have directly benefited the creditor constituents

represented by the Committee and have contributed to the effective administration of these cases.

16. The following summary of the services rendered during the Compensation Period is

not intended to be a detailed description of the work performed, as those day-to-day services and

the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is

merely an attempt to highlight certain of these areas in which services were rendered to the

Committee, as well as to identify some of the problems and issues to which Stroock was required

to direct its attention.

6

### Claim Analysis Objection, Resolution & Estimation (Asbestos) -- Category 0003

17. As reflected in prior compensation applications, in mid-November 2004, the Debtors filed a reorganization plan and numerous related pleadings including their motion seeking the estimation of asbestos claims and the establishment of a schedule and procedures for carrying out the estimations (the "Estimation Motion"), and their motion to establish post-confirmation litigation protocols for liquidating asbestos claims (the "Case Management Motion").

18. During a prior compensation period, the Court approved a form of case management order ("CMO") to govern the pre-confirmation estimation of asbestos personal injury claims (the "PI CMO") and the related form of questionnaire (the "Questionnaire") to be used by asbestos personal injury claimants who had commenced pre-petition litigation against the Debtors (the "PI Pre-Petition Litigation Claimants") and two case management orders for property damage claims the ("PD CMOs"); one to govern the Debtors' claims objection process and the other to govern the pre-confirmation estimation of property damage claims ("PD claims"). July 12, 2006 was the deadline set for Pre-Petition Litigation Claimants to return completed Questionnaires.

19. During this Compensation Period, Stroock attended to numerous estimation and discovery-related matters including (i) Grace's production to the Asbestos Claim Committees, (ii) testimony and depositions previously given in connection with the Sealed Air litigation, (iii) the numerous expert reports filed during the Compensation Period, (iv) the Debtors' motion and supplemental pleadings seeking to compel Pre-Petition Litigation Claimants to complete and return the Questionnaire (the "PIQ Motion"), and the numerous objections and responses filed in opposition to the Debtors' PIQ Motion, (v) the discovery mediation held before Judge Whelan in

7

connection with the PIQ Motion, and (vi) estimation-related discussions with Navigant, the Committee's asbestos issues expert.

20. In addition, during this Compensation Period, Stroock attended to the revised proposed PD case management orders and the pleadings filed in respect of Prudential Insurance Company's property damage claims and Anderson Memorial's motions for stay relief and for discovery from the Debtors. Stroock has expended 267.6 hours on this category for a fee of $123,646.50.

### Asset Analysis and Recovery -- Category 0008

21. As reflected in the prior compensation application, Stroock was informed that the Debtors were considering an additional acquisition. During this Compensation Period, Stroock reviewed the draft acquisition materials provided by the Debtors and discussed this matter with Capstone and with Debtors' counsel and in-house personnel. Stroock also reviewed and discussed with Capstone its preliminary analysis on the acquisition in advance of the Debtors' in-person meeting with the Committee. Stroock has expended 1.5 hours on this category for a fee of $862.50.

### Asset Dispositions/Sales and Uses -- Category 0009

22.     During this Compensation Period, Stroock was informed that the Debtors intended to sell the fleet of tank trailers and tractors used in the Company's admixture business and terminate related leases. Stroock reviewed the materials received from the Debtors setting forth the principal terms of the transaction, and discussed this matter and a proposed information request to the Debtors with Capstone. Further, during this Compensation Period, Stroock exchanged memoranda with and discussed the proposed disposition of the Debtors' tank fleet

8

assets and issues raised thereby with Debtors' counsel and in-house personnel familiar with this matter, and attended to Capstone's memorandum to the Committee discussing this asset sale. Stroock expended 7.7 hours on this category for a fee of $4,427.50.

### Business Operations -- Category 0013

23. During this Compensation Period, Stroock reviewed Capstone's report on the Company's second quarter 2006 operations and the Company's June 2006 financial information package. Stroock also discussed with Capstone a memorandum addressing additional reserves taken by the Company and attended to certain filings in respect of transfers of equity holdings in the Company. Stroock has expended 5.2 hours on this category for a fee of $3,140.00.

### Case Administration -- Category 0014

24. As reported in prior monthly compensation applications, these chapter 11 cases were reassigned to District Court Judge Alfred Wolin in November 2001 and referred to Bankruptcy Court Judge Judith Fitzgerald, and then reassigned to District Court Judge Ronald L. Buckwalter following Judge Wolin's recusal from these cases.

25. During this Compensation Period, Stroock continued to closely monitor the items on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each of the pending adversary proceedings, to ensure that the Committee was fully informed about all pending motions and adversary proceedings and that Stroock would be ready to timely respond on behalf of the Committee, as might be applicable. Stroock continued to engage the Debtors' counsel and Capstone on an on-going basis with respect to pending matters and information requests. In addition, during this Compensation Period, Stroock and the Debtors' representatives engaged in a number of conference calls during which pending motions, Court hearings and

9

upcoming matters were discussed, as were various estimation-related issues. Also, during this

Compensation Period, Stroock prepared a response to the inquiry received from the United States

Trusteee's office on Stroock's Twentieth Quarterly Fee Application and attended to the review

of the proposed project category and fee schedules in respect to the Fee Auditor's Twentieth

Quarterly Fee Order. Stroock has expended 123.2 hours on this category for a fee of $31,722.50.

### Claims Analysis, Objection and Resolution (Non-Asbestos) -- Category 0015

26. As reflected in the prior compensation application, Stroock reviewed the Debtors'

notice of settlement of tax claim with the State of Michigan and additional related material, and

engaged Debtors' representatives and financial advisor in discussions on this matter. During this

Compensation Period, Stroock communicated further with Debtors' counsel on the proposed

Michigan tax claim settlement and reviewed the proposed Stipulation embodying the settlement.

In addition during this Compensation Period, Stroock attended to District Court Judge

Buckwalter's memorandum opinion affirming the Bankruptcy Court's ruling denying the motion

for leave to file a late proof of claim filed by PacifiCorp and VanCott Bagley. Stroock has

expended 3.9 hours on this category for a fee of $2,242.50.

### Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017

27. During this Compensation Period, Stroock communicated with the members of the

full Committee through numerous memoranda and telephone calls. In order to keep the

Committee fully informed of all of the pending matters in these cases, and thus enable the

Committee to take informed positions on those issues, Stroock reviewed and summarized the

motions, other pleadings and notices filed by the Debtors and other parties in interest in these

cases and the objections and responses filed, raised issues the Committee should be aware of,

made recommendations to the Committee concerning appropriate actions to be taken with regard to the pleadings and communicated with members of the Committee regarding the positions to be taken.  In addition, Stroock engaged counsel and other representatives for the Debtors, and other parties and movants, as applicable, with the Committee's questions, concerns and comments, negotiated whenever and to the extent possible consensual resolutions of outstanding issues and acceptable forms of proposed orders, stipulations and settlement agreements and advised the Committee of the Court's hearings and rulings.

28. The motions, settlement agreements, and other materials Stroock reviewed during this Compensation Period, prepared memoranda to the Committee on and discussed with the Committee, as applicable, included, among other matters, (i) the Debtors' proposed settlement agreement and mutual release with underwriters at Lloyd's London, the modfications to that agreement under negotiation and the status of discussions over it, (ii) the Debtors' motion seeking approval for a settlement with the Internal Revenue Service resolving asserted liabilities for taxes in excess of $60.0 million, and (iii) the supplemental pleadings filed by the asbestos committees and the futures representative and the Debtors with respect to the Debtors' request for a further extension of exclusivity.

29. In addition, during this Compensation Period, Stroock prepared memoranda to the Committee discussing each of the omnibus hearings held before Judge Fitzgerald and addressing (i) the status of the amended PI case management orders in respect of the PI Estimation, (ii) the adjudication of the Debtors' substantive objections to traditional PD claims, (iii) the argument and Court's ruling on exclusivity, and the appeal taken from the Court's order, and (iv) the issues in respect of the many incomplete Questionnaires filed.  Stroock also had a number of

11

conference calls with the Committee on those issues and otherwise discussed and communicated with the Committee with respect to the PI Estimation, plan-related matters, and various proposals under discussion seeking to modify the Lloyd's Settlement Agreement.

30. Further, during this Compensation Period, Stroock attended to the decision rendered by the Sixth Circuit Court of Appeals in the Dow Corning case addressing general unsecured creditors entitlement to post-petition interest at the default rate. Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions and express the Committee's views regarding the issues which arise in these cases, to support the establishment of appropriate processes for the estimation of the Debtors' asbestos liabilities, and participate in the estimation proceedings and in the preparation of a plan providing appropriate treatment for the creditors represented by the Committee. Stroock has expended 74.3 hours on this category for a fee of $45,517.50.

## Fee Application, Applicant -- Category 0018

31. During this Compensation Period, Stroock prepared its fee statements for the months of May 2006, June 2006, July 2006 and August 2006, and related notices, affidavits of service and certifications of no objection. Stroock also prepared its Twenty-First Quarterly Fee Application covering the period from April 1, 2006 through June 30, 2006 (the "Prior Compensation Application"), including a narrative section summarizing the services rendered during that period by Stroock and numerous fee and expense schedules, as required by the Administrative Fee Order entered by the Court. Stroock has expended 86.3 hours on this category for a fee of $25,637.50.

12

### Creditor Inquiries -- Category 0019

32. During this Compensation Period, Stroock responded to numerous inquiries from unsecured creditors with respect to the status of these cases, the estimation of asbestos liabilities and related issues, the extension of the Debtors' exclusivity and other plan-related matters, and the results of and matters addressed during the hearings held in this Compensation Period. Stroock has expended 19.0 hours on this category for a fee of $12,397.50.

### Fee Application, Others -- Category 0020

33. During this Compensation Period, Stroock prepared notices, affidavits of service and certifications with respect to Capstone's monthly fee statements for the months of June 2006 and July 2006 and with respect to Capstone's tenth quarterly fee application. Stroock also attended to the United States Trustee's comments to Capstone's ninth quarterly fee application, to the Fee Auditor's final reports on certain professionals' applications and to the fee applications of other professionals retained in these cases. Stroock has expended 11.5 hours on this category for a fee of $4,140.00.

### Employee Benefits, Pension -- Category 0021

34. As reported in the prior compensation application, the Debtors filed a motion seeking authorization to make minimum funding contributions in aggregate amounts in excess of $100.00 million to their defined benefit plans during the period from July 15, 2006 through April 15, 2007 (the "Pension Funding Motion"). In connection with the agreement of the major partners-in-interest to most of the relief sought in the Pension Funding Motion, the Debtors agreed to provide certain additional information to the official committees and the futures representative, including a study on the Grace Salaried Plan to be prepared by a pension

13

consultant retained by the Debtors. During this Compensation Period, Stroock received and reviewed that analysis and discussed it with Capstone.

35. In addition as reported in the prior compensation application, the Debtors filed a motion seeking to extend for the 2006-2008 period the terms of the Debtors' existing long-term, performance based incentive program for certain employees (the "LTIP Program"). During this Compensation Period, Stroock was informed that the Debtors sought to modify the terms of the LTIP Program they had been seeking Court approval for. Stroock exchanged memoranda with Debtors' counsel, reviewed the modified form of Order incorporating the changes sought to the LTIP Program and engaged in multiple discussions with respect to the modifications and their impact. Stroock also received and provided input on a memorandum to the Committee discussing the proposed changes. Stroock has expended 7.0 hours on this category for the fee of $4,147.50.

### Environmental Matters/Regulations/Litigations -- Category 0022

36. As reported in the prior compensation application, the Debtors filed a motion seeking approval for a stipulation with eleven entities embodying a settlement liquidating the Debtors' past, present and future liability for environmental investigation, operation, maintenance and response costs at a federal superfund site (the "Wauconda Settlement Stipulation"). Stroock reviewed the motion and related settlement materials, and also reviewed and discussed with Debtors' counsel the related settlement notice filed by the United States of America on behalf of the EPA. During this Compensation Period, Stroock attended to the proposed order approving the Wauconda Settlement Stipulation and a settlement agreement with the Government. Stroock has expended 0.4 hours on this category for a fee of $230.00.

14

### Executory Contracts/Unexpired Leases – Category 0023

37.    As reported in the prior compensation application, the Debtor filed a motion

seeking to assume and assign a prime lease and sublease of commercial property in Houston.

During this Compensation Period, Stroock prepared a memorandum for the Committee

discussing this matter, reviewed the proposed order and provided comments on the order to

Debtors' counsel.  Stroock has expended 0.8 hours on this category for a fee of $460.00.

### Insurance – Category 0028

38. As reported in the prior compensation applications, the Debtors informed Stroock that

they had negotiated a settlement with underwriters at Lloyds, London ("Lloyds") with respect to

certain policies of insurance and prior insurance-related agreements, pursuant to which

settlement $90.0 million would be paid into an escrow account, and thereafter to the Debtors or

as provided for in a confirmed reorganization plan.  The Debtors subsequently filed their motion

with the Court seeking approval for the settlement, which Stroock reviewed and discussed with

the Debtors' representatives and with the Committee.

39. During this Compensation Period, a number of objections were filed to the Lloyd's

motion as the parties were initially unable to reach agreement on either whether the proposed

settlement was beneficial to these estates, or on the terms of the settlement agreement.  Stroock

reviewed the objections and relevant case law and throughout this period, exchanged multiple

memoranda with Debtors' counsel, attended to each of the drafts of the settlement agreement

circulated for consideration and prepared comment on and proposed textual changes to the

settlement drafts setting forth the Committee's position.  Stroock also participated in the

numerous conference calls with representatives for all parties and continued to advise the

15

Committee of the status of the various parties' positions. Stroock has expended 38.2 hours on this category for a fee of $23,752.50.

### Investigation – Category 0031

40. During this Compensation Period, Stroock reviewed the decision issued in August 2006 by Montana District Court Judge Molloy in the Government's Libby Criminal Litigation and attended to the recent revised indictment. Stroock has expended 2.9 hours on this category for a fee of $1,757.50.

### Travel – Non Working -- Category 0035

41. Stroock's fees in this category during this Compensation Period relate to attorneys traveling from and to New York for the omnibus hearings before Judge Fitzgerald on July 24, 2006, August 21, 2006 and September 25, 2006, in Wilmington, DE, and on September 11, 2006 in Pittsburgh, PA, and to an attorney traveling from and to New York for the discovery mediation before Judge Whelan in Washington, DC on August 29, 2006. Stroock has expended 38.6 hours on this category for a fee of $27,395.00 for which Stroock is seeking payment in the amount of $13,697.50.

### Plan and Disclosure Statement -- Category 0036

42. During the prior compensation period, Judge Fitzgerald extended the Debtors' exclusive period to file a plan through the July 24, 2006 omnibus hearing. During this Compensation Period, Stroock attended to the supplemental objections to exclusivity asserted by the asbestos committees and the futures representative and the plan proposal and solvency analysis set forth therein, and the Debtors' supplemental brief in support of a further extension of exclusivity. Stroock also attended to Debtors' motion to compel production of documents

16

relating to the settlement agreement among the various asbestos constituents and the asbestos constituents' response in opposition thereto. Further, Stroock attended to the form of the interim and final exclusivity orders issued by the Court and to the appeal taken to the interim order at the end of this Period. Stroock expended 18.3 hours on this category for a fee of $11,227.50.

### Hearings -- Category 0037

43. During this Compensation Period, Judge Fitzgerald held three-extended omnibus hearings in Wilmington, DE and an additional lengthy hearing in Pittsburgh, PA. Stroock reviewed each of the agenda notices and all relevant pleadings, orders, stipulations and other documentation in advance of the hearings, which as described elsewhere in this Application addressed a variety of matters and issues including (i) a further extension of the Debtors' exclusivity periods, (ii) the establishment of a bar date for Pre-Petition Litigation Claimants, (iii) various PI Estimation discovery and Questionnaire-related issues, and (iv) the adjudication of Canadian Claims and other PD claims-related matters. Stroock prepared for and attended the hearings, and advocated the Committee's positions, as appropriate. After the hearings, Stroock, as reflected elsewhere in the Application, prepared memoranda informing the Committee of the arguments made at, and the results of, the hearings. Stroock expended 93.1 hours on this category for a fee of $63,075.00.

### Tax Issues – Category 0047

44. During this Compensation Period, Stoock attended to a tax issue raised by Debtors' counsel in connection with the Lloyd's settlement and the potential resolution of that issue under consideration. Also during this Compensation Period, the Debtors filed a motion seeking approval for a settlement with the Internal Revenue Service, of tax liabilities asserted in an

17

amount in excess of $60.0 million plus interest . Stroock reviewed the pleadings, participated in conference calls with Debtors' representatives to discuss the settlement and address the Committee's questions and concerns, attended to additional information provided by Debtors' counsel and, as reflected elsewhere in this Application, advised the Committee of this matter. Stroock expended 13.6 hours on this category for a fee of $8,132.00.

### FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

45. The factors to be considered in awarding attorneys fees have been enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547 F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts. Stroock respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

The Time and Labor Required. The professional services rendered by Stroock on behalf of the Committee have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the complex issues encountered by the Committee with skill and dispatch. Occasionally, Stroock has been required to perform these services under significant time constraints requiring work late into the evening and on weekends. The services rendered by Stroock were performed efficiently, effectively and economically.

The Novelty and Difficulty of Questions. Novel and complex issues have already arisen in the course of these Chapter 11 cases, and it can be

18

anticipated that other such issues will be encountered. In this case, as in many others in which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

The Skill Requisite to Perform the Legal Services Properly. Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the resolution of issues, are and will continue to contribute to the maximization of the distributions to the Debtors' unsecured creditors.

The Preclusion of Other Employment by Applicant Due to Acceptance of the Case. Due to the size of Stroock's insolvency department, Stroock's representation of the Committee has not precluded its acceptance of new clients. However, the volume of the matters needing attention on a continuing basis has required several of the attorneys to commit significant portions of their time to these cases.

The Customary Fee. The fee sought herein is based upon Stroock's normal hourly rates for services of this kind. Stroock respectfully submits that the fee sought herein is not unusual given the magnitude and complexity of these cases and the time expended in attending to the representation of the Committee, and is commensurate with fees Stroock

19

has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

Whether the Fee is Fixed or Contingent. Pursuant to §§ 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed under § 1103 of the Code are contingent pending final approval by this Court, and are subject to adjustment dependent upon the services rendered and the results obtained.

Time Limitations Imposed by Client or Other Circumstances. As already indicated, Stroock has attended to the various issues arising in these cases. Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

The Amount Involved and Results Obtained. Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

The Experience, Reputation and Ability of the Attorneys. Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including: Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel

20

Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation,
Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The
Charter Company, Federated Department Stores, G. Heileman Brewing
Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc.,
Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation,
Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc.,
Flushing Hospital and Medical Center, Planet Hollywood International,
Anchor Glass Container Corporation, Beloit Corporation in the
Harnischfeger Industries Chapter 11 Cases, RSL COM U.S.A. Inc, USG
Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings.
Stroock's experience enables it to perform the services described herein
competently and expeditiously. In addition to its expertise in the area of
corporate reorganization, Stroock has already frequently called upon the
expertise of its partners and associates in the litigation, ERISA, tax,
environmental and intellectual property law areas to perform the wide
ranging scope of the legal work necessitated by these cases.

The "Undesirability" of the Case. These cases are not undesirable, but as
already indicated, have required a significant commitment of time from
several of the attorneys assigned hereto.

Nature and Length of Professional Relationship. As described above,
Stroock has been actively rendering services on behalf of the Committee
as necessary and appropriate from April 12, 2001 through to the present.

21

## ALLOWANCE OF COMPENSATION

46. The professional services rendered by Stroock required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort.  It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefitted the Debtors' unsecured creditor body as a whole and the Debtors' estates.

47. With respect to the level of compensation, § 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person (including attorneys for a creditors' committee): "Reasonable compensation for actual necessary services rendered by [such] . . . professional person.  11 U.S.C. § 330.  Section 330 further states that the court should take into consideration, _inter alia_, the nature, extent, and value of services performed, as well as the cost of comparable services other than in a case under this title.  _Id._  The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

48. The total time spent by Stroock attorneys and paraprofessionals during the Compensation Period for which Stroock seeks payment was 813.1 hours.  Such services have a fair market value of $380,213.50.  The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

49. As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time.  Attached hereto as Exhibit "C" are

22

summaries of the hours expended by the attorneys and paraprofessionals during the

Compensation Period, their normal hourly rates, and the value of their services.

50. In addition, Stroock incurred actual out-of-pocket expenses in connection with the

rendition of the professional services to the Committee in the sum of $4,742.11 for which

Stroock respectfully requests reimbursement in full. The disbursements and expenses have been

incurred in accordance with Stroock's normal practice of charging clients for expenses clearly

related to and required by particular matters. Such expenses were often incurred to enable

Stroock to devote time beyond normal office hours to matters, which imposed extraordinary time

demands. Stroock has endeavored to minimize these expenses to the fullest extent possible.

51. Stroock's billing rates do not include charges for photocopying, telephone and

telecopier toll charges, computerized research, travel expenses, "working meals", secretarial

overtime, postage and certain other office services, because the needs of each client for such

services differ. Stroock believes that it is fairest to charge each client only for the services

actually used in performing services for it. Stroock has endeavored to minimize these expenses

to the fullest extent possible.

52. Stroock charges $.10 per page for in-house photocopying services, with respect to

computerized research services Stroock charges the actual cost from the vendor, and $1.00 per

page for out-going facsimile transmissions. Stroock does not charge for incoming facsimiles.

53. Further, in accordance with the Court's June 22, 2001 Order Authorizing the

Retention of Experts, this Application seeks payment for the fees and expenses of Navigant, the

asbestos issues expert engaged by the Committee, in the aggregate amount of $219,776.61, for

23

the services rendered on behalf of the Committee in the months of July through September of 2006. No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

54. Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

55. No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order and the Court's June 22, 2001 Order Authorizing the Retention of Experts:

the allowance of compensation for professional services rendered to the Committee during the period from July 1, 2006 through and including September 30, 2006 in the amount of $380,213.50;

the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from July 1, 2006 through and including September 30, 2006 in the amount of $4,742.11;

the payment of the fees and expenses of the asbestos issues expert employed by the Committee for the months of July, August and September 2006 in the aggregate amount of $219,776.61;

24

authorizing and directing the Debtors to pay to Stroock each of the amounts set

forth in (a) (b) and (c) of this WHEREFORE clause (to the extent not already paid

pursuant to the Administrative Fee Order); and

granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
November 29, 2006

                    STROOCK & STROOCK & LAVAN LLP


                    Lewis Kruger
                    Kenneth Pasquale
                    Members of the Firm
                    180 Maiden Lane
                    New York, New York 10038-4982
                    (212) 806-5400

                    Co-Counsel for the Official Committee of
                    Unsecured Creditors of W. R. Grace & Co., et al.