**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Case No. 01-1139 (JKF) |
| | Jointly Administered |
| W.R. GRACE & CO., *et al.*, | |
| | Chapter 11 |
| Debtor. | |
| | **Objection Deadline: December 1, 2006 at 4:00 PM** |
| | **Hearing Date:  December 18, 2006 at 12:00 PM** |

**OBJECTION OF NL INDUSTRIES, INC. TO DEBTORS'
EIGHTEENTH OMNIBUS OBJECTION TO CLAIMS (SUBSTANTIVE) AS TO
CLAIMS NUMBERS 2625, 2626, and 2627**

NL Industries, Inc. ("NL") hereby objects to Debtors' Eighteenth Omnibus Objection to claims (the "Motion").  In support hereof, NL states as follows:

1.       On or about January 5, 2003, NL filed a general unsecured Proof of Claim numbers 2625, 2626, and 2627 relating to a contractual relationship to perform environmental remediation it had with Debtors related to a site in Kalkaska, Michigan and a site in Odessa, Texas (The "Kalkaska and Odessa Sites") as well as other sites.

2.       At the time, NL had recently begun to incur remedial costs for which Debtors were liable and filed the claim as an unliquidated claim.

3.       Since that time, NL has incurred significant remedial costs at the Kalkaska and Odessa Sites and now knows the probable future costs of remediation at the Kalkaska and Odessa Sites.  NL now knows the liquidated amounts of Debtors' liabilities related to these Sites.

4.       Debtors have objected to the Proof of Claim on the basis that (1) Debtors purportedly "withdrew from work at Kalkaska, MI & Odessa, TX due to NL's refusal to pay its 75% share of costs as required by the settlement agreement" and (2) the claims asserted were unliquidated.

5.      The Debtors have provided no proof that they validly withdrew from the work at the Kalkaska and Odessa Sites, and indeed, the settlement agreement which was attached to NL's Proof of Claim, combined with the letter upon which Debtors rely for their purported withdrawal from work show that Debtors never validly withdrew from the agreement and are still obligated to pay 25% of the cleanup costs at the Kalkaska and Odessa Sites.

6.      Further, NL submits herewith evidence of the liquidated amount of its claim, including documentation reflecting both the past remedial costs and the probable future remedial costs for which Debtors are liable.

## The Settlement Agreement

7.      As a result of litigation, Debtor and NL entered into a settlement agreement (Ex. 1) which, among other things, allocated cleanup costs at the Kalkaska and the Odessa Sites such that NL would pay 75% of cleanup costs and Debtor would pay 25% of any cleanup costs.

8.      This was reflected in Section IV of the settlement agreement at paragraph (B)(1).

9.      Paragraph D of Section IV set forth the mechanism under which all disputes under Section IV would be decided:

> Any disputes pursuant to Section IV will be submitted to binding
> arbitration under the procedures set out in Section VII.  Either
> party may initiate arbitration at any time following the failure of
> any party to tender full payment within the thirty (30) day period
> set out in Section IV(C).  Disputed amounts may be aggregated
> into a single arbitration proceeding.

10.      In other words, to the extent that NL did not tender payment, as was alleged in Debtor's July 1, 2002 letter (Ex. 2), under the terms of the settlement agreement, the Debtor had no right to terminate the agreement or to stop paying its portion of the cleanup.

11.      A settlement agreement is a binding contract, obligating both parties to perform the duties to which they agreed thereunder.  Donzis v. McLaughlin, 981 S.W.2d 58, 61 (Tex.

App. - San Antonio 1998, no pet.); <u>Old Republic Ins. Co. v. Fuller</u>, 919 <u>S.W.</u>2d 726, 728 (Tex. App. - Texarkana 1996, writ denied)[1]

12.     Agreements to arbitrate are likewise binding upon the parties who enter into them. <u>IPCO-G.&C. Joint Venture v. A.B. Chance Co.</u>, 65 <u>S.W.</u>3d 252, 255 (Tex. App. - Houston [1st Dist.] 2001, pet. Denied).  Further, agreements to arbitrate are favored and accorded great deference, and will be enforced whenever possible.  <u>In re: Dean Wilson Constr. Co.</u>, 196 <u>S.W.</u>3d 774, 782-83 (Tex. 2006).

13.     Instead of recognizing the valid contract between NL and Debtors and their requirement to arbitrate any disputes related to payment under the agreement, Debtors attempt to avoid their liability with the statement that they "withdrew from work" at these sites.

14.     This statement ignores that Debtors were obligated to participate in the cleanup at these sites pursuant to their contract with NL and that Debtors agreed to resolve any payment disputes in arbitration and <u>not</u> by attempting to unilaterally withdraw from work at the Kalkaska and Odessa Sites.

15.     The dispute in the July 1, 2002 letter, is clearly a dispute centered on "who would pay what when."  The agreement specifically contemplated that such disputes could arise and set forth that arbitration would be the means by which Debtors and NL would resolve such disputes. Debtors negotiated and agreed to this provision.

16.     Nonetheless, Debtors attempted to unilaterally withdraw from the contract without submitting their claims to arbitration.  This was an invalid and ineffective withdrawal as agreements to arbitrate are not only valid, but are favored, and courts will readily enforce such terms.  Unilateral efforts to revoke arbitration agreements will not be given effect by courts,

---

[1] The settlement agreement stated that it would be governed by Texas law.  (Ex. 1 at VII(F)).

which will instead enforce the arbitration agreement a party is trying to avoid.  In re: Dean
Wilson Constr. Co., supra, 196 S.W.3d at 782-84.

17.     Thus, Debtors' attempt to terminate the agreement in the July 1, 2002 letter was
ineffective and did not validly terminate the agreement or relieve Debtors of their contractual
obligations.

18.     Further, if the Court reads the July 1, 2002 letter in its entirety, it will see that the
real reason Debtors attempted to terminate the contract was that they had already filed a
bankruptcy petition.

19.     Thus, by Debtors' own admission, NL had a valid, cognizable claim at the time
Debtors filed their bankruptcy petition.

20.     Concurrent correspondence reinforces that the attempted withdrawal had nothing
to do with payment disputes, but was really based on Debtors' bankruptcy filing, as only two
days after they sent their letter seeking to terminate their cleanup obligations, Debtors sent
identical letters to the Michigan Department of Environmental Quality regarding the Kalkaska
Site (Ex. 3) and to the Texas Natural Resources and Conservation Commission regarding the
Odessa site (Ex. 4).  These letters informed the respective state regulatory agencies that it was
"not able to participate further in environmental remediation activities at the" respective sites
because of its bankruptcy filing.  Debtor concluded each letter "[w]e regret that the Chapter 11
status precludes Grace from participating further at the Site and appreciate your understanding."

21.     In other words, Debtors made no mention of their letter purporting to terminate
their contractual agreement with NL to these agencies, and only stated that their bankruptcy
filing would make them unable to further participate in work at the Kalkaska and Odessa Sites.
Thus, it would seem that, in light of the timing of the letter to NL, the letters to the MDEQ and

the TNRCC and the bankruptcy filing, that the letter to NL was an invalid attempt to limit

Debtors' liabilities in their bankruptcy proceeding.

22.     Debtors have not contended that they did not enter into the settlement agreement

or that they were not obliged to perform under the terms of the settlement agreement.  They have

simply alleged that this unilateral "withdrawal" letter relieves them of their obligations under the

settlement agreement.  However, the letter is an ineffective attempt to terminate the settlement

agreement, as the agreement itself commands that if any party, including NL, fails to pay for a

portion of the cleanup, the remedy of the other party (including Debtor) is to file arbitration not

to terminate the agreement.  Thus, Debtors have never terminated their obligations under their

agreement with NL.

23.     Since Debtors never actually withdrew, their obligation to pay 25% of the cleanup

at the Kalkaska and Odessa Sites is a valid debt and obligation for which NL is properly seeking

recovery in this bankruptcy proceeding.

**Liquidated Amount of Claims**

24.     Since Debtors ceased paying their obligations under the agreement, NL has

incurred a total of $437,001.89 in remedial costs at the Kalkaska and Odessa Sites.  Pursuant to

the contract terms, Debtors are responsible for 25% of that cost, or $109,250.47 (Ex. 5).

25.     NL will incur a total of $260,000.00 in future remedial costs at the Odessa Site.

Pursuant to the contract terms, Debtors are responsible for 25% of that cost, or $65,000.00 (Ex.

6).

26.     NL will incur a total of $253,935.00 in future remedial costs at the Kalkaska Site.

Pursuant to the contract terms, Debtors are responsible for 25% of that cost, or $63,483.75 (Ex.

7).

27.     The total liquidated amount of NL's claim is thus $237,734.22.

5

WHEREFORE, NL Industries, Inc. respectfully requests that the Court deny the Debtors'

Motion as related to NL and grant such other relief as is just and proper.


Dated:  November 30, 2006                    By:  /s/  John V. Fiorella                    .
                                                  John V. Fiorella (DE No. 4330)
                                                  ARCHER & GREINER, PC
                                                  300 Delaware Avenue, Suite 1370
                                                  Wilmington, DE   19801
                                                  Telephone:  302-777-4350
                                                  Facsimile:  302-777-4352
                                                  E-mail:   jfiorella@archerlaw.com
                                                  *Counsel for NL Industries, Inc.*

2420260v1