**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | **Hearing Date: December 5, 2006 @ 8:30 a.m.** |
| | ) | **Related Docket Nos.: 13598** |
| | ) | **Related Agenda Item No. 1** |
| | ) | |

**THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS'
REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION TO COMPEL PRODUCTION OF DOCUMENTS [D.I. 13598]**

CAMPBELL & LEVINE, LLC

*/s/Mark Hurford*
Marla R. Eskin (No. 2989)
Mark T. Hurford (No. 3299)
800 North King Street, Suite 300
Wilmington, DE  19801
Telephone: (302) 426-1900
Telefax: (302) 426-9947

-and-

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
375 Park Avenue
New York, NY  10152-3500
(212) 319-7125

Peter Van N. Lockwood
Nathan D. Finch
Walter B. Slocombe
Adam L. VanGrack
One Thomas Circle, N.W.
Washington, D.C.  20005
(202) 862-5000

*Counsel to the Official Committee of
Asbestos Personal Injury Claimants*

Dated:  December 1, 2006

{D0076987.1 }

Grace resolved thousands of asbestos personal injury claims prior to its bankruptcy filing; that history – both as to what types of cases Grace paid to settle and the amount it paid – is highly probative and relevant evidence for estimating how similar claims (pending and future) would have been handled had Grace not gone into bankruptcy.  Grace, however, has contended from the very start of this case, that its past history should be ignored or heavily discounted because – it asserts – Grace settled many claims that it was aware were invalid.  See, e.g., W.R. Grace & Co.'s Informational Brief, April 2, 2001, at 29-30 ("Grace considered many of these claims to be meritless . . . .") (ACC Mem. Exhibit 12).

Grace is entitled, if it wishes, to maintain that its past settlement history should be discounted for whatever reasons it thinks persuasive.  However, Grace is not entitled to advance a factual assertion – that it settled claims it knew were invalid, rather than because it knew it risked large damages – and then deny discovery designed to produce evidence relevant to testing those arguments.

## I.    RULE 408 DOES NOT BAR DISCOVERY OF THE SETTLEMENT INFORMATION SOUGHT BY THE ACC

Grace argues – contrary to well-established precedent – that Federal Rule of Evidence 408 bars evidence of settlement practices generally.  That argument is simply inconsistent with the Rule, which only bars "[e]vidence of . . . compromising . . . *a* claim . . . to prove liability for or invalidity of *the* claim."  Fed. R. Evid. 408 (emphasis added).[1]  Courts have repeatedly held that evidence about settlements is admissible, not to prove the amount or validity of the claim at issue in the case in which it is offered, but to establish some other relevant point.  See, e.g., In re Babcock & Wilcox Co., 274 B.R. 230, 256 (E.D. La. 2002) (quoting 2 Weinstein, Fed. Evidence

---

[1]    Significantly, Grace's statement of the "test under Rule 408" (Grace Opp. 5) leaves out the fundamental requirement that the evidence excluded relate to the particular claim at issue, and is not a general rule against admission of evidence of settlements.

§ 408.05[5], at 408-35 (2001)) ("When settlement negotiations and terms explain and are part of another dispute, however, they are often admitted to allow the trier of fact to 'understand the case.'"); <u>Lesal Interiors, Inc. v. Resolution Trust Corp.</u>, 153 F.R.D. 552, 561 (D.N.J. 1994) (Fed. R. Evid. 408 "refers to settlements of the claims at issue in the subject litigation. In this instance, [movant] seeks discovery . . . of settlement negotiations taking place in an entirely *separate* litigation.") (internal citations omitted); <u>Broadcort Capital Corp. v. Summa Medical Corp.</u>, 972 F.2d 1183, 1194 (10th Cir. 1992) ("Thus, Rule 408 did not bar this evidence because it related to settlement discussions that involved a different claim than the one at issue in the current trial."); <u>see also</u> 23 Wright and Graham, <u>Fed. Practice and Procedure</u> § 5306, at 215-16 (1980) ("Rule 408 only applies to the use of evidence of compromise to prove the validity or invalidity of the claim that was the subject of the compromise.").  The cases Grace cites on this point are not to the contrary.  Rather, each is distinguishable and rests, in part, on the irrelevance of the requested settlement information.[2]

Grace's position on Rule 408 is internally contradictory:  When Rule 408 applies, it bars evidence of "amount" just as much as evidence of "liability . . . or invalidity."  Grace is simultaneously arguing that the Court cannot consider, as evidence, the fact – which is undisputed – that Grace settled most of the cases filed against it, and yet saying that the amounts at which it settled are evidence of the value of pending and future claims.  If evidence of past

---

[2]    <u>See, e.g.</u>, <u>Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.</u>, 332 F.3d 976, 983 (6th Cir. 2003) (ruling on an issue of communications between adverse parties during settlement and noting that the movant had "not demonstrated a legitimate, admissible use" for the information sought); <u>Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.</u>, 265 F.3d 1294, 1307-08 (Fed. Cir. 2001) (noting the movant's "failure to show the materiality" of the information sought); <u>White v. Kenneth Warren & Son, Ltd.</u>, 203 F.R.D. 364, 367-68 (N.D. Ill 2001) (permitting discovery of some settlement information, and denying discovery of other information based on a lack of "probative value"); <u>Centillion Data Sys., Inc. v. Ameritech Corp.</u>, 193 F.R.D. 550, 551-52 (S.D. Ind. 1999) (noting that the movant sought irrelevant settlement information explicitly to help evaluate the merits in the settled case).

settlements was excluded, then the standard for valuing claims would be jury awards, allowing

for those cases that a jury would decide for defendants.[3] See In re Farley, Inc., 146 B.R. 748,

753-56 (Bankr. N.D. Ill. 1992).

Grace is forced to acknowledge that evidence of past settlement practices has been

admitted repeatedly in recent proceedings addressing exactly the same issue of estimating

liabilities for pending and future asbestos personal injury claims.  Its attempt to dismiss these

precedents as merely the result of "strategic choices" not to raise a Rule 408 objection (Grace

Opp. 10) is fatally undermined by the fact that in the first of them, In re Babcock & Wilcox Co.,

the exact same objection now asserted was indeed raised and squarely rejected. 274 B.R. 230,

256-57 (E.D. La. 2002).  Grace (represented by the same counsel who lost the issue in Babcock

& Wilcox) now seeks to dismiss that rejection as coming in a case where the issue was "what

liabilities were assumed by the company" at a date in the past.  (Grace Opp. 11).   However, the

issue there, as here, was estimating the value of a future stream of liabilities and the Babcock &

Wilcox court admitted the settlement evidence because to ignore past settlements "would close

one's eyes to the realities that existed in 1998."  274 B.R. at 256-57.[4]

Grace asks for "a clear and particularized explanation for why the documents they seek to

discover will be admissible."  (Grace Opp. 15).  The answer is simple:  The ACC and FCR are

---

[3]     At one point, Grace declares that "in order to determine Grace's aggregate liability, the individual claims at issue must first be addressed, because the sum of those claims will comprise Grace's aggregate liability."  (Grace Opp. 13).  Such an individual case-by-case process would, under 28 U.S.C. § 1411(a) & 157(b)(5), have to be done by a series of jury trials in District Court, a process whose utter impracticality makes estimation necessary – and requires analysis based in significant part on how similar claims were resolved in the past.  Individual liability is not at issue in this estimation; only aggregate prospective costs.

[4]     Nothing in the Babcock & Wilcox court's analysis suggested that the retrospective nature of the analysis had anything to do with its ruling.  Indeed, when, at the confirmation hearing, the same court considered Babcock & Wilcox's liabilities on pending and future claims measured as of its petition date, it also considered settlement history.

entitled to prepare for the possibility that, having raised the issue of settling non-meritorious

cases, Grace will offer some evidence in support of it, and to do that preparation the ACC and

FCR must undertake discovery that will lead to evidence appropriate to refute the claim – *i.e.*

that Grace settled cases it believed would be likely to survive summary judgment and in which it

therefore risked large jury verdicts.

## II. PUTTING ITS LEGAL ADVICE IN ISSUE, GRACE HAS WAIVED ITS PRIVILEGE

Grace denies that it has put its legal advice in issue, either by its general claims that it

settled cases that were without merit, or by its lawyer's testimony as to that point.[5]  Grace's

lawyers have in fact spoken directly about their opinion of the merits of the claims against Grace,

and Grace has referred to those statements in its arguments in this estimation proceeding.  Grace

attempts to avoid the impact of its counsel's testimony as merely "what everyone already knew."

(Grace Opp. 19).  But Mr. Hughes did not testify to what "everyone" knew; he testified to what

"*we* knew and were well aware" of.  (Grace Opp. 19)  (emphasis added).  Who can "we" refer to

if not Mr. Hughes and his colleagues who represented Grace?

Grace cites statements by judges and commentators on problems of the tort system in

handling cases and the pressures to settle.  (Grace Opp. 19).  However, Grace has chosen to

question the probative value of its settlement history, not on the basis of such outside statements,

but by specifically citing its lawyers' views on what "we" knew about the merits of the claims

against it.[6]  Moreover, it has also advanced assertions about its view of the merits of the cases it

---

[5]    Grace has carefully not denied that it still intends to argue that it believed many of the cases
settled were without merit.  The ACC and FCR cannot be made to await trial to see if Grace will
pursue this issue, because by that time it would be too late to discover possible refuting evidence.

[6]    Nor do all the quotes actually support Grace's position:  In particular, the well-known
observation that the "elephantine mass of asbestos cases" had "defie[d] customary judicial
administration" (Grace Opp. 19) is not an observation on their merits, but on their numbers.  The

settled.  See, e.g., Memorandum of Points and Authorities in Support of W.R. Grace & Co.'s

Motion to Approve PI CMO and Questionnaire, May 10, 2005, at 40-41 (ACC Mem. Exhibit

13); W.R. Grace & Co.'s Informational Brief, April 2, 2001, at 29-30 (ACC Mem. Exhibit 12).

Those views were necessarily derived from the advice of its lawyers; certainly Grace does not

suggest any other source.  Under the standards in the 3rd Circuit – especially as established in

Livingstone v. North Belle Vernon Borough, 91 F.3d 515, 537 (3d Cir. 1996), which Grace does

not address in its Opposition – it has thereby put its legal advice in issue. See ACC Mem. 17-23.

Grace seeks to dismiss the statements of its lawyers that it cites as made in depositions

taken in the related Sealed Air case, and claims that it did not make an issue of its legal advice in

the Sealed Air aspect of its bankruptcy proceeding.  (Grace Opp. 22-23).  Even if that were true –

and it is not – Grace has clearly stated in *this* aspect of the overall proceedings that it settled non-

meritorious cases, and cited its attorney's view of those merits, beginning in the Informational

Brief it filed on the very day of its Chapter 11 filing.  The ACC and FCR maintain only that

Grace's settlement record is an objective indicator of what happened in the tort system in the

past, and evidence of what would have happened had Grace remained in that system.  It is Grace

that has argued that its past history was distorted by settling bad claims, and thereby

affirmatively raised a factual issue on which discovery is proper.

---

"pressures to settle" – referred to by other citations of Grace – applied to plaintiffs as well as
defendants.  For example, one major pressure on plaintiffs to settle is the inability to get a trial
date for their claims.  As usual, Grace ignores that the ultimate reason for its asbestos problems
is not defects in the tort system, but having recklessly exposed hosts of people to a product it
knew to be dangerous.