IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | ) | Chapter 11 |
|  | ) |  |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
|  | ) | Jointly Administered |
|  | ) |  |
| Debtors. | ) | Related to Docket No. 13702 |
|  | ) | Hrg. Date: December 5, 2006 |

### RESPONSE OF FIRMS REPRESENTED BY STUTZMAN, BROMBERG, ESSERMAN & PLIFKA REGARDING QUESTIONNAIRE-RELATED ISSUES TO REQUEST FOR ENTRY OF DEBTORS' PROPOSED PROTOCOL CONCERNING PRODUCTION OF CHEST X-RAYS

Certain law firms (the "Firms") represented in this proceeding on matters related to the W.R. Grace Personal Injury Questionnaire (the "questionnaire") by Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, respond as follows to "Debtors' Notice of Failure to Reach Agreement and Request for Entry of Debtors' Proposed Protocol Concerning Production of Chest X-Rays of Asbestos Personal Injury, Pre-Petition

Claimants with Non-Mesothelioma, Malignant Claims" (hereinafter, the "Request").[1] This response is supported by the Declarations of Alan Rich, Colin Moore, Robert Shuttlesworth, Scott Wert, and David J. Parsons, Exhibits 1 through 5 hereto, which are incorporated herein by reference.

## I. Introduction.

With almost eerie prescience given the issues now before this Court, another court made the following observations about a dozen years ago in another case:

> Discovery in a civil action is not some fundamental right, to be pursued as long and to whatever extent a party may desire. … Experience has demonstrated that the discovery rules can be and sometimes are abused … . Parties are often, and non-party witnesses are always, coerced participants who should not be held hostage to the personal perceptions of a party seeking discovery as to what is desirable or appropriate.

*Vakharia v. Swedish Covenant Hosp.*, No 90 C 6548, 1994 WL 75055, at *1 (N.D. Ill., Mar. 9, 1994).[2]

---

[1] The Firms include Baron & Budd, P.C.; Brayton Purcell; Campbell, Cherry, Harrison, Davis & Dove, P.C.; Foster & Sear, L.L.P.; Hissey, Kientz & Herron, P.L.L.C.; The Law Offices of Peter G. Angelos, A Professional Corporation; LeBlanc & Waddell, LLP; David Lipman, P.A.; Morris, Sakalarios and Blackwell, PLLC; Chris Parks & Associates; Robert Pierce & Associates; Provost & Umphrey, L.L.P.; Reaud, Morgan & Quinn, L.L.P.; Sieben, Polk, LaVerdiere & Dusich, PA; Silber Pearlman LLP; SimmonsCooper, L.L.C.; Weitz & Luxenberg P.C.; Wilentz, Goldman & Spitzer, P.A.; and Williams Bailey Law Firm L.L.P.

[2] The *Vakharia* decision and all other unreported decisions cited herein are attached as exhibits to the Declaration of David J. Parsons, which is itself Exhibit 5 hereto.

Grace continues, over objections of many creditors, to enjoy the prerogative of exclusivity in its chapter 11 case. For the time being at least, only Grace may propose a plan of reorganization. But Grace persists in the misguided notion that it enjoys a comparable prerogative to dictate how discovery is to be conducted in its reorganization case. Grace's Request reads like a haughty sovereign's "invitation" to a command performance.[3] Grace wants pre-petition claimants with non-mesothelioma malignancies to send in their original chest x-rays to a "central repository" to be maintained by Rust Consulting, Inc., Grace's consultant, and asks the Court to rubber-stamp its "protocol" to that effect. Request 1. Grace also signals that it intends to

---

[3] The "x-ray impasse" was fully and finally recognized on November 6, 2006, when discussions concerning the discovery of x-rays were broken off by mutual agreement. The discussions were between Grace, on the one hand, and the Asbestos Claimants' Committee, the Firms, and other law firms represented by Montgomery, McCracken, Walker & Rhoads, LLP, herein, on the other hand. Grace waited more than two weeks – until the Friday before Thanksgiving – before alerting the Court to the impasse, and then did so by filing the Response in lieu of a formal motion. Claiming incorrectly that its proposed x-ray discovery regime "seeks nothing more than what the Court already has ordered", Grace excused itself from the usual practice of filing a motion. Request 1. With Grace's Request set to be heard on December 5, it seems apparent that hundreds of law firms that were not participants in the recently concluded discussions, collectively representing thousands of Grace's asbestos victims, may not have been afforded proper notice of Grace's effort to impose its x-ray "protocol" in lieu of complying with applicable rules of procedure, raising due process concerns.

employ the same "protocol" for original chest x-rays from an as yet unspecified sampling of non-malignant claimants.[4]

For now, Grace demands that non-mesothelioma, cancer-afflicted claimants (or their survivors) relinquish control – for three months – over critical, fragile, and, in many instances, irreplaceable[5] evidence to accommodate Grace's whim. Grace's "protocol" is no less provocative than a demand that its financial claimants surrender control to Grace of original promissory notes or other original documentation underlying their claims. Such an approach is inconsistent with both the questionnaire that Grace continues to advocate and the underlying Federal Rules of Civil Procedure. Its extraordinary nature is perhaps best attested to by Grace's complete indifference to Federal Rule of Civil Procedure 34 ("Rule 34").[6] Grace's failure in the Request even to mention or cite to that Rule, entitled "Production of Documents and Things and Entry Upon Land for Inspection and Other Purposes", showcases the impropriety of the Request and the stunning one-sidedness of Grace's "protocol."

---

[4] Grace's insistence that it must have original x-rays is undercut by its willingness to make an exception for non-mesothelioma cancer claimants whose original x-rays are in the possession of their treating physicians. [Proposed] Order submitted with the Request¶ 1.

[5] Original "film" x-rays are irreplaceable. Copies of original digital x-rays are, if properly made, likely to be indistinguishable from the originals.

[6] Rule 34 applies to contested matters in bankruptcy, such as the forthcoming estimation proceeding, by virtue of FED. R. BANKR. P. 9014. So, too, does Federal Rule of Civil Procedure 26.

II. **Grace Takes Liberties with the Questionnaire, Likening a Right of Access to Original X-Rays to a Right to Possess Them.**

"As a threshold matter," Grace declares, it "seeks nothing more than what the Court already has ordered." Request 1. Grace goes on to say that "[t]he Court-approved Questionnaire provides that Grace can seek *access* to original x-rays[.]" *Id.* (emphasis added). Putting aside Grace's insinuation that the Court has already categorically approved the questionnaire in all its aspects – a point as to which there remains disagreement – the questionnaire does state that "[t]he Court has ruled that Grace may seek *access* to chest x-rays upon request." Questionnaire ii (emphasis added). Indeed, Grace seems to concede that what it is entitled to, under the questionnaire, is *access* to original x-rays. As Grace quotes further from the questionnaire's instructions:

> This Questionnaire must be accompanied by copies, ***with access to originals upon request***, of any and all documents you, your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis.

Request 1 (citing the questionnaire ii, but with emphasis added).

The Court has also spoken of Grace's "right of access" to original documents:

> [addressing Mr. Bernick, Grace's counsel] Okay, I think you have the ***right of access***, but having the chest x-ray copies attached might be too burdensome ... . But provide that you can have the ***access*** upon request, but the copies do not need to be attached.

July 2005 Omnibus, Dkt. No. 9105, at 217.

Grace's proposed "protocol", however, would entail far more than just the access contemplated by the questionnaire and the Court. Grace proposes, through its agent, Rust Consulting, to take actual custody of original x-rays. As any divorced parent can attest, there is a big difference between "access" and "custody."[7] Grace is overreaching.

### III. In Lieu of Its Proposed Protocol, Grace Should Just Follow the Rules of Civil Procedure.

Rule 34 is, of course, specific to the discovery of documents and tangible things such as x-rays. But even Rule 26, the general discovery rule, suggests that original documents are to be treated differently from copies. Regarding the exchange of information, the rule provides:

> [A] party must … provide to other parties: *a copy of*, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely used for impeachment.

FED. R. CIV. P. 26(a)(1)(B) (emphasis added)(applicable in bankruptcy proceedings per FED. R. BANKR. P. 9014).

The only portion of Rule 26 that Grace cites in the Request is the general statement that "[p]arties may obtain discovery regarding any matter,

---

[7] Also alarming is Grace's contemplation that Rust Consulting be charged with maintaining its "central repository." Request 1. The Court will recall that Grace has previously disclaimed Rust's competence to exercise any interpretive discretion with respect to the questionnaire responses while assembling Grace's database. It is therefore troublesome that Rust would be entrusted with the enormous responsibility of receiving, safeguarding, and ultimately returning irreplaceable pieces of evidence.

not privileged, that is relevant to the claim or defense of any party." Request 4 (quoting FED. R. CIV. P. 26(b)(1)). However, the non-mesothelioma malignancy claimants represented by the Firms (collectively, the "Non-Meso Cancer Claimants") ***do not dispute*** Grace's prerogative to discover original x-rays (subject to the applicable rules, including, without limitation, the consulting expert privilege provided for in FED. R. CIV. P. 26(b)(4)(B)). At no point in the recently concluded discussions did the Firms even suggest that Grace could not access original x-rays; the Non-Meso Cancer Claimants' disagreement with Grace is confined to the irregular manner of discovery contemplated by Grace's "protocol" and Grace's false equating of access with possession.

Rule 34 is, of course, the official "protocol" governing production of documents and tangible things, including x-rays, in litigation.[8] *See Murphy v. United States*, No. 87 C 5731, 1989 WL 99744, at *3 (N.D. Ill., Aug. 14, 1989) ("… the plaintiff can, by use of discovery under Rule 34, cause the defendant, the [Veteran's Administration] itself, to produce ***copies of the x-rays*** and medical records.") (emphasis added). Rule 34 provides, in part, as follows:

> Any party may serve on any other party a request (1) to produce and permit the party making the request, or

---

[8] Rule 45 of the Federal Rules of Civil Procedure concerns subpoenas of non-party witnesses. The Advisory Committee Notes accompanying the 1991 Amendments to Rule 45 provide "[t]he non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34."

> someone acting on the requestor's behalf, *to inspect and copy*, any designated documents (including writings, drawing, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form), or *to inspect and copy, test, or sample* any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served …
>
> * * *
>
> The response shall state, with respect to each item or category, *that inspection and related activities* will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated … .

FED. R. CIV. P. 34(a, b) (emphasis added).

Although Rule 34 fairly contemplates that original documents may be *inspected* – inspection being consistent with *access* – nothing in the text can be read to require a party to release (or cause to be released) original documents to the custody of an adverse litigant or its agent. The Non-Meso Cancer Claimants, moreover, are not even parties to the estimation proceeding, a contested matter between the Asbestos Claimants' Committee and Grace. Grace does not cite a single case where a court has required a party, let alone a third-party witness, to transfer possession of an original document against its will to a hostile litigant.

In situations where a litigant has sought to discover original documents, courts routinely permit inspection of the originals but decline to

require that possession of the originals be surrendered to the discovering party.  At least one case has specifically addressed the issue in the context of a party's "desire to obtain the original x-rays from medical providers for examination."  *Weaver v. Evans*, No. 97-1138-FGT, 1997 WL 833168, at *1 (D. Kan., Dec. 10, 1997).  There, the compelled party shared the concern of the Non-Meso Cancer Claimants here "that allowing the original x-rays to be removed from the medical provider would create a risk of unintentional damage or loss to those x-rays." *Id*.  The court ruled that:

> As with any documents that are sought in discovery, ***courts do not generally require that the original copies be turned over to the custody and control of the other party. It has generally been deemed sufficient to make documents available for inspection and copying. The court can see no reason to depart from that general practice in this case. Defendant can personally inspect the original x-rays at the business location of the medical providers. In addition, the defendant can request that a copy be made of the x-rays.*** This will allow the defendant the discovery that he is entitled to while allowing the original x-rays to remain with the medical provider, where they should properly be maintained for purposes of present and future medical care of the plaintiff.

*Id*. (emphasis added); *see also, G.B.G., Inc. v. Kolinsky (In re Kolinsky)*, 140 B.R. 79, 87 (Bankr. S.D.N.Y. 1992) ("The defendants have a right to inspect the originals." (citing 4 James Wm. Moore, *Moore's Federal Practice* § 26-184 (2d ed. 1991)); *Neuberg v. Michael Reese Hosp. & Med. Ctr.,* No. 75 C 3844, 1992 WL 477018, at  *2 n.3 (N.D. Ill., Jan. 13, 1992) ("Plaintiffs should advise defendants as to which copies are illegible.  As necessary, defendants should

furnish new copies or allow plaintiffs to inspect the original policies."); *Brooks v. Singletary*, No. 88-C-2865, 1991 WL 94083, at *5 (N.D. Ill., May 24, 1991) ("[The compelled party] is ordered to allow plaintiff to inspect the originals of the illegible and obstructed documents … .").

In *Vakharia v. Swedish Covenant Hosp.*, the Court noted that the hospital from which documents had been sought had "give[n] no reason why it cannot permit plaintiff to inspect the original [document]. Absent a compelling reason, it should permit that inspection." 1994 WL 75055, at *6. The *Vakharia* court did not even consider requiring the hospital to facilitate that inspection by surrendering custody of the document in question to its adversary.

Apart from exceeding Rule 34's parameters, the idea that anyone can be compelled to surrender possession of original x-rays (or, for that matter, any other original documentary evidence) to an adversely disposed litigant is highly problematic. As the *Weaver* court recognized, 1997 WL 833168, *1, loss (whether in transit or in handling) and spoliation are legitimate concerns; Rule 34 addresses them by permitting the responding party to

remain in possession of originals.[9]  In *United States ex rel. Camillo v. Ancilla Sys., Inc.*, 233 F.R.D. 520, 521 (S.D. Ill. 2005), the plaintiff sought production from a hospital of billing and refund records.  The hospital contended that the records in question contained confidential medical information of non-party patients, fretted about possible spoliation, and proposed a protective order that would have redacted nearly all identifying information, ostensibly to conform to restrictive disclosure requirements of the Health Insurance Portability and Accountability Act (HIPAA) and applicable state law.  *Id.* at 521-22.  Ultimately siding with the plaintiff, the court tellingly observed that "[a]ny fears of spoliation of evidence should be allayed by the very fact that the hospital remains in possession of the original records." *Id.* at 523.  Thus, although the documents would be produced, the originals would continue to be maintained by the hospital, the responding party.  This is a far cry from Grace's "protocol", where original x-rays would be submitted to Grace's consultant, leaving Non-Meso Cancer Claimants with only the hope and

---

[9] Grace attempts to downplay these concerns.  Dr. David Weill, whose affidavit is attached as Exhibit A to the Request, states that "[s]ending original x-rays to a medical professional for a medical assessment is a common practice in the medical community." Weill Aff. ¶ 7.  The witness adds that "[a]s Director of the Stanford Lung and Heart Transplant Program, I have assessed approximately 240 referrals to the transplant program. … We have not misplaced any x-rays for these approximately 240 potential transplant candidates." *Id.*  Entrusting original x-rays on an individual, case-by-case basis to a respected transplant specialist is not the same thing as requiring many firms to send numerous original x-rays to Rust Consulting at the same time and in bulk.  Regardless, one doctor's belief that he can exercise proper care over an x-ray does not change the provisions of Rule 34, which does not require a responding party to relinquish possession of original documents.

prayer that they would not be damaged or lost and would be ultimately (and timely) returned.[10]

Grace wants more than just "access" to the original x-rays – it wants them delivered to Rust no later than January 12, 2007 – barely a month following the scheduled hearing on Grace's Request, with the Christmas and New Year's holidays intervening. [Proposed] Order submitted with Request ¶ 2. Grace is indifferent to the considerable logistical burdens to which it would put the Non-Meso Cancer Claimants and their counsel. Grace also seems oblivious to just how ambitious their schedule is even if the Non-Meso Cancer Claimants and their lawyers cooperated fully. Many x-rays, for example, are in the possession of doctors or hospitals; others are in archival or state court-mandated facilities. Just because the Non-Meso Cancer Claimants and their counsel may authorize release of these x-rays to Grace in a timely manner, they cannot assure that the doctors, hospitals or archives will act in a correspondingly timely manner (or act at all), particularly with depleted staffs during the holiday season.

Grace's "protocol" is yet another attempt by Grace to foist upon its asbestos creditors and their personal injury counsel the labor-intensive

---

[10] Just as airlines routinely lose a portion of their passengers' luggage, it is in the nature of things that some original x-rays will be lost if Grace's "protocol" is approved and thousands of x-rays change hands temporarily. Original x-rays, unlike toothbrushes, are not susceptible to replacement. Claimants should not be required to entrust crucial evidence to Grace's designee.

aspects of (and risks that attend) Grace's own ambitious discovery. The Court will recall Grace's recent refusal to permit asbestos personal injury claimants to respond to any portion of the questionnaire by reference to attachments because Grace did not want its minions at Rust put to the task of examining attachments. At the Court's urging, Grace has reconsidered its stance on that issue.

Grace persists in forgetting long-settled law that "[a] litigant may not compel his adversary to go to work for him."[11] *Phillips v. City of New York*, 230 F.R.D. 369, 370 (S.D.N.Y. 2005) (citing *Breedland v. Yale & Towne Mfg. Co.,* 26 F.R.D. 119, 120 (E.D.N.Y. 1960) as quoting *Aktiebolaget Vargos v. Clark*, 8 F.R.D. 635, 636 (D.D.C. 1949)).

> An adverse party should not be required to perform burdensome labors or to execute difficult and expensive tasks, in searching for facts and classifying and compiling data.

8 F.R.D. at 636; *see also United Cigar-Whelan Stores Corp. v. Phillip Morris, Inc.*, 21 F.R.D. 107, 109 (S.D.N.Y. 1957) ("[D]iscovery proceedings should [not] be utilized to cast upon a defendant the burden of establishing the plaintiff's case when the plaintiff can at least as readily establish the requested facts.").

---

[11] *See also Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (Jackson, J., concurring) ("Discovery was hardly intended to enable a learned profession to perform its functions … on wits borrowed," or, one might infer, exertions exacted from, "the adversary.").

Nowhere in its "protocol" does Grace address the practical risk that one or more of these x-rays might be needed by the Non-Meso Cancer Claimants in litigation against another asbestos defendant. Grace is indifferent to the reality that some cases against co-defendants as to which original x-rays will be critical evidence will be called to trial while its "protocol" would stockpile all original x-rays with Rust Consulting.

In short, if Grace wants to avail itself of access to original chest x-rays, it should be prepared to inspect the original x-rays where they are maintained. The Non-Meso Cancer Claimants should not be put to the burden of facilitating Grace's leisurely inspection of x-rays by relinquishing possession to Grace or its designee, nor should the Non-Meso Cancer Claimants be called upon to bear all risk that something might go wrong (x-rays damaged, lost, or not being readily available for clinical use or medical treatment).[12]

## IV. The Authorities Upon Which Grace Relies for Its "Protocol" Are Unavailing.

Grace boldly proclaims that "[v]arious courts have similarly required the production of original x-rays." Request 6. Of course they have; "production" under Rule 34 entails affording the requesting party an opportunity to inspect originals. "Requiring production" of originals,

---

[12] Grace would leave to another day ironing out procedures "for the immediate return of any specific x-ray should it be needed for actual clinical use or medical treatment." Request 7.

however, is not the same thing as directing that they be turned over to the requesting party.

The authorities upon which Grace relies for its dubious pronouncement are inapposite. In *Malone v. Med Inn Ctrs. of America, LLC*, No. 00-CV-0720E(SR), 2004 WL 1080155, at *2 n.4 (W.D.N.Y., Apr. 20, 2004), the Buffalo, New York, lawyer representing the solitary Texas-resident plaintiff had executed an affidavit stating in part "that he would attempt to disclose the relevant radiographic films to defendant … ." Apparently, his "attempt", if made, was not fully successful, and the court ordered the films produced. *Id.* at *3.

In *In re G-I Holdings, Inc.*, No. 01-30135 (RG), 2006 WL 2403531, at *23 (Bankr. D.N.J., Aug. 11, 2006), the Court expressed a tolerance for "narrowly tailored" discovery directed at a sampling of asbestos claimants, noting that "any discovery plan must address concerns regarding the handling of any original x-rays or other medical records."  The G-I court called for an immediate discovery conference to work out details relating to the permitted discovery.  *Id.*

Finally, Grace also relies on the ubiquitous *In re Silica Products Liability Litigation,* 398 F. Supp. 2d. 563 (S.D. Tex. 2005) decision.  There, the Court had issued an order establishing a document depository in Corpus Christi, where the case was pending.  Although it is not entirely clear from Judge Jack's decision, original x-rays may have been sent to this centralized

depository, the custodian of which was an attorney designated by the court. *See* Order 5A, Order for Establishment of Document Depositories and Electronic Bulletin Board, Dkt. No. 1553 (S.D. Tex., Jan. 26, 2004) [Electronically Docketed at Item 115].[13] *In re Silica Products Liability Litigation,* however, was not one debtor's chapter 11 case. It was a multi-district litigation consolidation of silica claims asserted by numerous claimants against numerous defendants. Judge Jack's court was where those claims were, for a time, being litigated. The centralized depository was for the benefit of all parties, given the numerous plaintiffs and defendants involved. The claimants, moreover, were actual parties to the proceedings, unlike the Non-Meso Cancer Claimants here who are but third-party witnesses with respect to the estimation proceeding.

The establishment of a centralized document depository in an MDL proceeding does not lend support to what Grace is trying to do here: (i) subvert the rules of procedure by commandeering original x-rays; (ii) shift extraordinary burdens and risks onto a subset of the very tort claimants it has previously victimized (together with their personal injury counsel), and (iii) whitewash its own inattention to discovery of x-rays until looming deadlines necessitate radical improvisation.

---

[13] Copies of this order and a companion Order 6 obtained from the electronic docket are attached to Exhibit 5 hereto, the Declaration of David J. Parsons.

V.  <u>What the Firms and Their Clients Are Willing To Do</u>.

Neither the Firms nor their clients would deny Grace access to original x-rays, subject to requirements of applicable rules.  On behalf of their clients, the Firms are willing to reasonably facilitate Grace's inspection of original x-rays where they are maintained.  On behalf of their clients, the Firms are willing to take reasonable measures intended to facilitate (i) the copying of original x-rays at Grace's expense, and (ii) the provision of the copies to Grace.[14]  The Firms and their clients, however, are not agreeable to Grace's "protocol" and urge its categorical rejection by the Court.

Dated: November 30, 2006

Sander L. Esserman
Van J. Hooker
David A. Klingler
David J. Parsons
**STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, A Professional Corporation**
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 969-4900
Facsimile:   (214) 969-4999

**COUNSEL FOR VARIOUS FIRMS REPRSENTING ASBESTOS CLAIMANTS**

---

[14] It is believed that the cost per x-ray copy would approximate $100, but if Grace thinks copies can be obtained on a more cost-effective basis, the Non-Meso Cancer Claimants would be open to reasonable consideration of Grace's suggestions.

-17-

/s/ Daniel K. Hogan
Daniel K. Hogan (ID no. 2814)
**THE HOGAN FIRM**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656-7540
Facsimile: (302) 656-7599
E-mail: dan@dkhogan.com

**LOCAL COUNSEL FOR VARIOUS FIRMS REPRSENTING ASBESTOS CLAIMANTS**