# Exhibit E



Not Reported in F.Supp.                                                                                                          Page 1
Not Reported in F.Supp., 1992 WL 477018 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

H
Briefs and Other Related Documents
Neuberg v. Michael Reese Hosp. and Medical CenterN.D.Ill.,1992.Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
Leland G. NEUBERG and Joel G. NEUBERG, Plaintiffs,
v.
MICHAEL REESE HOSPITAL AND MEDICAL CENTER, et al., Defendants.
**No. 75 C 3844.**

Jan. 13, 1992.

REPORT AND RECOMMENDATION [FN1]

To the Honorable CHARLES R. NORGLE, SR., one of the Judges of the United States District Court of the Northern District of Illinois.

GOTTSCHALL, United States Magistrate Judge.
***1** This matter is before the court on plaintiffs' motions to compel and to add parties. The court addresses each motion in turn.

**PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs move under Fed.R.Civ.P. ("Rule") 26 and 37 to compel compliance with a number of their discovery requests. Plaintiffs point to eight areas of disagreement.

(1) Alleged non-compliance with court order of April 22, 1988

On April 22, 1988, Judge Norgle ordered defendants to produce copies of insurance policies potentially providing coverage for plaintiffs' claims. Previously, defendants had via interrogatory provided information on the existence of and limits of these policies. Judge Norgle's order to produce the insurance agreements themselves was based on Rule 26(b)(2), which provides as follows:
Insurance Agreements. A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial. For purposes of this paragraph, an application for insurance shall not be treated as part of an insurance agreement.

Fed.R.Civ.P. 26(b)(2). The rule was adopted to enable counsel to appraise a case realistically, and is meant to be conducive to settlement. *See Henderson v. Zurn Industries, Inc.,* 131 F.R.D. 560, 563 (S.D.Ind.1990). If a party wishes to discover policy information beyond the agreement itself, however, it must make a showing of relevancy under Rule 26(b)(1). *See Simon v. G.D. Searle & Co.,* 816 F.2d 397, 404 (8th Cir.), *cert. denied,* 484 U.S. 917 (1987); *Potomac Electric Co. v. California Union Insurance Co.,* 136 F.R.D. 1, 2 (D.D.C.1990).

At the April 22, 1988 status hearing, Judge Norgle determined that defendants should produce insurance policies for the years 1947, 1956, 1962, 1966 and 1974.[FN2] At that time, defendants advised Judge Norgle that they were unable to procure all the original policies, and that it would be necessary to produce specimen policies in some cases. Although plaintiffs requested "certified copies" of the policies, Judge Norgle observed that Rule 26(b)(2) does not contain such a requirement. He then added, "... [B]ut in this case if you feel it's appropriate, and since there is no strong objection to the certification-unless there is-I would order it." April 22, 1988 Transcript of Proceedings Before Judge Charles Ronald Norgle ("Tr.") at 9. Ultimately, having heard that defendants' insurers were in some cases able to produce only a specimen policy instead of the original, Judge Norgle instructed defendants that "you should have some certification or some affidavit explaining what the issue may be regarding the policies and their production." Tr. at 11.

***2** To date, defendants Michael Reese Hospital and Michael Reese Medical Center (collectively "Michael Reese") have produced copies of their primary insurance policies for all years in question except 1947. The policies produced are accompanied by certifications that, to the best of the insurer's understanding and belief, the policies are true and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 477018 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.)**

accurate copies of those in effect for the time period delineated therein. Michael Reese has not, however, produced any attestation concerning its efforts to locate the missing policies. In the case of the defendant estates of doctors Philip and Arthur Rosenblum ("Estates"), an affidavit of the insurer for both deceased doctors states that the original policies are unavailable, and that the specimens provided contain the same or similar language as the actual policy requested. Although unsatisfied by these attestations, plaintiffs, in their motion to compel, sought only an order that Michael Reese be compelled to produce its 1947 primary policies and its excess insurance policies for 1947, 1956, 1962, 1966 and 1974. In their reply brief, however, plaintiffs reasserted their contention that they are entitled to detailed affidavits concerning the search for the missing policies. Also, plaintiffs observe that the Estates have furnished neither excess insurance policies nor sworn statements to the effect that the deceased doctors did not have excess coverage.

This court cannot compel defendants to produce that which they do not have. Also, since the policies are being produced only for the purpose of facilitating settlement, this court finds the existing attestations regarding the authenticity of specimen policies sufficient. On the other hand, this court interprets Judge Norgle's comments as requiring an explanation for defendants' inability to produce any missing policies. Michael Reese should produce an affidavit describing its search for the missing policies and attesting to the reasons why the policies cannot be found. In addition, Estates should produce any copies of excess insurance policies for the years in question. If there was no such coverage in effect, Estates should produce affidavits to that effect. This court therefore recommends the plaintiffs' first request be granted on the terms set forth above.[FN3]

(2) Request for verified list of insurance policies and self insurance

In this request, plaintiffs seek a "verified list" of all Michael Reese's primary and excess coverages between 1947 and the present.[FN4] The motion is brought under Rule 26(b)(2). In their request, plaintiffs ask that the verified list include "amounts of coverage ... together with risk management information, including reserves set up for payment of claims for injuries resulting from the Michael Reese tonsil irradiation program." As becomes apparent in the discussion that follows, resolution of this question is complicated by the lack of precision in plaintiffs' request.

Rule 26(b)(2) speaks only of the discovery of "the existence and contents of any insurance agreement." Information as to risk management and reserves is therefore beyond the reach of the rule. *Simon v. G.D. Searle & Co.,* 816 F.2d 397, 404 (8th Cir.), *cert. denied,* 484 U.S. 917 (1987). Although *Simon* did allow discovery concerning reserves set up to cover product liability claims, the *Searle* plaintiff made a detailed showing of relevancy under Rule 26(b)(1). *See id.* Also, the documents requested were within the control of the defendant, which was to some extent self-insured. Here, in contrast, plaintiffs have not made a showing of relevancy under Rule 26(b)(1). Nor is it clear whether the information requested is held by Michael Reese or its insurers. For instance, plaintiffs have not specified whether Michael Reese is partially self-insured or whether the amount of the reserves in question are determined by Michael Reese or its insurers.

**\*3** Michael Reese resists this discovery on the basis that the information requested is privileged under Illinois law. Indeed, Fed.R.Evid. 501 provides that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law." The rule is among express exceptions to the general rule that federal, rather than state law, governs the admissibility of evidence in federal diversity cases. *Lovejoy Electronics v. O'Berto,* 873 F.2d 1001, 1005 (7th Cir.1989). The Illinois statute on which Michael Reese relies provides that "[n]o person or organization shall be required to furnish claims, loss or risk management information held or provided by an insurer, which information is described in Section 143.10a of the 'Illinois Insurance Code.' " Ill.Rev.Stat. ch. 110, § 2-1003(e). That section of the Insurance Code in turn deals with information on open and closed claims, such as dates and descriptions of occurrences, total amounts of payments and total reserves. Ill.Rev.Stat. ch. 73, § 755.10a(1).

Neither party has cited authority interpreting § 2-1003 and this court's research has found none.[FN5] The plain language of the statute indicates, however, that any reserves for irradiation claims set up by Michael Reese's insurers fall within the privilege. Assuming the information requested is held by Michael Reese's insurers, the information is privileged.[FN6] Given plaintiffs' failure to establish

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1992 WL 477018 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

relevancy under Rule 26(b)(1), this court would similarly deny plaintiffs' access to Michael Reese's risk management information.

There remains the question of whether the kind of policy information authorized under Rule 26(b)(2) should be provided for other years. Judge Norgle has already ordered production of the policy information required under Rule 26(b)(2) for 5 years, including the years of the alleged exposure and manifestation. *See* note 2 *supra.* While plaintiffs have submitted an article predicting that courts will apply some form of a continuous injury theory of coverage in cases of injury from irradiation, they have not demonstrated that this circuit has adopted the approach.[FN7] Michael Reese does not present any legal discussion on the question of coverage, while defendant Estate of Philip Rosenblum cites authority finding that insurance coverage for different years does not "stack" or accumulate when the harm flows from a single cause. *See Aetna Casualty & Surety Co. v. Medical Protective Co.,* 575 F.Supp. 901 (N.D.Ill.1983).

The question of which, if any, of defendants' insurers must pay plaintiffs' claims can be expected to become a central issue in this lawsuit should plaintiffs prevail upon trial on the merits. The issue of insurance coverage in cases of delayed manifestation of injury is, however, a complicated one. *See UNR Industries, Inc. v. Continental Casualty Co.,* 942 F.2d 1101, 1106-1108 (7th Cir.1991). While the salutory purpose of Rule 26(b)(2) is not to be minimized or disregarded, this court does not believe that the rule mandates a broad-ranging inquiry into questions of potential insurance coverage where the underlying question of liability are still seriously disputed. Since policies covering the years of injury and manifestation are commonly accepted sources of recovery, the discovery required under Judge Norgle's order provides plaintiffs a preliminary idea of what funds would be available to cover their claims. Coverage under policies for other years is susceptible to resolution at a later point in this dispute. This court therefore recommends that plaintiffs' second request be denied.

### (3) Requests for Notices of Claims

The various insurance policies thus far produced in this litigation require timely notice of claims against the policy as a condition precedent to the insurers' duty to defend. Because defendants are apparently represented by attorneys retained by their insurers, plaintiffs have reason to believe that notices of their claims were submitted to the insurers. Plaintiffs request copies of the notices advising defendants' insurers of their claims, as well as the first notices advising insurers of problems in *any* tonsil irradiation case. According to plaintiffs, these notices are relevant to the issues of failure to warn and punitive damages. This court agrees that the information is relevant.

**\*4** Defendants resist this discovery on the basis that, under Illinois law, an insured's statements to its insurer are cloaked with the attorney-client privilege. In support of that proposition, they point to the Illinois Supreme Court's observation that where an insurer is under a duty to defend, its insured generally assumes that the insurer will transmit the insureds' confidential statements regarding the occurrence to attorneys who will defend the claim. *See People v. Ryan,* 30 Ill.2d 456, 197 N.E.2d 15, 17 (1964); *Braglia v. Cephus,* 146 Ill.App.3d 241, 496 N.E.2d 1171, 1176 (1st Dist.1986); *Mooney v. Etheridge,* 65 Ill.App.3d 847, 382 N.E. 826, 830 (2d Dist.1978). In addition, defendants contend that the previously discussed privilege under Ill.Rev.Stat. ch. 110, § 2-1003(e) should apply here. Finally, defendants contend that evidence of claims by patients other than plaintiffs is highly prejudicial to their case.

Defendants' notices of claim, if any, may contain privileged information. As the parties asserting privilege, however, defendants have the burden of demonstrating the underlying facts giving rise to the privilege, *Ekstrom v. Temple,* 197 Ill.App.3d 120, 553 N.E.2d 424, 428 (2d Dist.1990). Means of supporting a claim of privilege include submission of the purportedly privileged material for *in camera* inspection or submission of affidavits setting forth facts sufficient to establish the applicability of particular documents withheld. *See id.*

Although defendants have not made such a showing of privilege, notices of claim would seem to fall squarely within the privilege for information provided an insurer at Ill.Rev.Stat. ch. 110, § 2-1003(e). The court does not reach this issue, however, as not all the information requested by plaintiffs is privileged. For instance, the fact that a notice was sent is not privileged. [FN8] The inquiry turns, then, to whether defendants have provided nonprivileged information in their responses to interrogatories or other discovery.

This court is unable to determine from the present record whether defendants have furnished sufficient

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 01-01139-AMC    Doc 13877-10    Filed 12/01/06    Page 5 of 14

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 477018 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.)**

Page 4

responses to discovery on the question of whether notices were sent to insurers. On the one hand, plaintiffs state that defendants previously advised them that notices were not sent by defendants nor received by the insurers because none were required. In their response to the motion to compel, however, defendants seemingly admit that the requested correspondence exists.

To the extent they have not already provided this information in signed responses to discovery, defendants should produce affidavits attesting to the dates they sent to insurers notices of plaintiffs' claims. The affidavit should also provide the date of the first claims against them resulting from the tonsil irradiation program. If no notices were sent, the affidavit should so state. Thus, this court recommends that plaintiffs' third request be granted on the terms set forth above.

(4) *Employment files and search committee reports*

In this request, plaintiffs seek production of the employment files and search committee reports concerning four physicians employed by Michael Reese or its Tumor Clinic. One of those physicians, Dr. Uhlmann ("Uhlmann"), was director of the Tumor Clinic at the time of plaintiffs' irradiation. Dr. Smith was superintendent of Michael Reese at the time of the irradiation, while the other two physicians, doctors Nickson and Cohen, succeeded Uhlmann as directors of the Tumor Clinic. Only Uhlmann is a defendant in this case.

Other then stating that all these physicians had significant responsibilities with respect to the irradiation program and that the employment records "will help obtain proof of the facts of the existence of the fiduciary relation and its breaches," plaintiffs do not explain what information they expect these documents to provide. Defendants oppose this discovery on the basis of relevancy. In addition, they state that the discovery would violate the privacy rights of the three physicians who are not defendants in this case.

**\*5** This court recommends that plaintiffs' request be granted as to Uhlmann and denied as to the other three physicians. Uhlmann is a defendant in this case and plaintiffs maintain that Michael Reese was negligent in employing him. Thus, his records are relevant and should be produced subject to an appropriate confidentiality agreement.

The result is not the same with respect to the other three physicians. While plaintiffs outline Uhlmann's involvement in their irradiation in the second amended complaint, the other three defendants' connection with the program is tangential at best. Although there have been years of discovery and depositions in this case, plaintiffs point to no indicators that the other three doctors are in any way connected to the events giving rise to this dispute. Their request for this information is apparently based on the doctors' status within the hospital administration. Other than to make conclusory allegations of fiduciary duty, however, they have not explained how the requested information concerning these three non-defendants is relevant or will lead to the discovery of relevant information. This court therefore recommends that plaintiffs' fourth request be denied as to these other physicians.

(5) *Pharmacy records*

In this request, plaintiffs ask that Michael Reese produce those of its pharmacy records which would show inventory levels of sulfa, penicillin and other antibiotics for the years 1943 to 1950. Plaintiffs state that this request relates to the issue of whether such drugs were available for use in tonsil treatments as an alternative to surgery, irradiation and bed rest. Michael Reese resists production on the basis that the information could reveal patient identities. Indeed, under Illinois law, a hospital may assert the physician-patient privilege to protect the records of its patients who are not parties to a lawsuit. *Parkson v. Central DuPage Hospital,* 105 Ill.App.3d 850, 435 N.E.2d 140, 142 (1st Dist.1982). To this argument plaintiffs respond that they only seek data showing the gross amount of such drugs obtained and the gross amounts disbursed in those years. Plaintiffs have not, however, alleged that some tonsil patients were treated with these drugs while others were subjected to radiation treatment.

Even assuming the requested records could be produced in a form that would not divulge confidential patient information, this court is unable to see their relevancy. Plaintiffs may establish that these drugs are used in tonsil treatments by other means, such as expert testimony. While records of gross amounts obtained and disbursed would establish that the drugs in question were available at Michael Reese, there is no allegation that these drugs are used exclusively in tonsil treatments. Absent a link between these drugs and their exclusive use in tonsil treatments, the probative value of these

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 477018 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.)**

Page 5

documents is remote and insufficient to burden Michael Reese with their production. [FN9] Accordingly, it is recommended that plaintiffs' fifth request be denied.

### (6) *Tumor Clinic record policies*

**\*6** Plaintiffs contend that defendants have failed to respond to their request for Tumor Clinic bylaws, rules and regulations concerning the maintenance, perpetration, microfilming and destruction of clinic patient records for the years 1947 to 1975. Plaintiffs see a need for this information because the copies of their own records produced by Michael Reese are illegible. One use to which plaintiffs would put the records is to show that Michael Reese violated a fiduciary duty to maintain accurate patient records.

To date, defendants have allegedly produced only two documents in response to this request for recordkeeping policies. One is a 1972 document entitled "Bylaws of the Medical Staff," and the other is a 1973 document entitled "Rules Governing the Activities of the Department of Medicine." While those two documents apparently do not address the maintenance of patient records, defendants neither admit nor deny that written policies on patient records exist.

In this court's view, plaintiffs are entitled to an explanation why their records have been produced in such an unsatisfactory condition. Even if there was no formal written policy, the absence of a recordkeeping procedure is relevant. On the present record this court is unable to ascertain whether defendants' answers to other discovery requests, such as interrogatories, would provide information on recordkeeping policies. While defendants suggest that there have been such requests, they have not pointed to any particular response where they provide the requested information.

This court recommends that plaintiffs' request be granted. Defendants should be ordered to provide plaintiffs with a sworn statement describing the Tumor Clinic's records maintenance policies for the years 1947 to 1975. Alternatively, in the event defendants have already provided that information in answers to other discovery requests, they should specify in their statement where that information may be found.

### (7) *Tumor Clinic records of other patients*

Plaintiffs request that Michael Reese produce for examination and copying the Tumor Clinic records of other patients who have filed suit against Michael Reese. The purpose of this request is "to establish with these records that defendants were conducting an experimental program (and not pursuing an established procedure) to test the efficacy and safety of using x-ray instead of surgery, chemicals or other standard alternatives, to treat alleged tonsil problems, or prophylactically prevent them." In addition, plaintiffs contend that there was no examination of patients prior to treatment; nor did defendants explain alternative treatments or obtain necessary consent to the irradiation treatment.

Defendants resist production on the grounds the information is privileged, again relying on the principles of privilege set forth in Ill.Rev.Stat. ch. 110, § 8-802. That section provides, in part, that:

No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve such patient, except only (1) in trials for homicide when the disclosure relates directly to the fact or immediate circumstances of the homicide, (2) in actions, civil or criminal, against the physician for malpractice, (3) with the expressed consent of the patient, or in case of his or her death or disability, of his or her personal representative or other person authorized to sue for personal injury or of the beneficiary of an insurance policy on his or her life, health, or physical condition, (4) in all actions brought by or against the patient, his or her personal representative, a beneficiary under a policy of insurance, or the executor or administrator of his or her estate wherein the patient's physical or mental condition is an issue,....

**\*7** Ill.Rev.Stat. ch. 110, § 8-802. In creating the physician-patient privilege, the state legislature has recognized "that patients have a right to be free from the embarrassment and invasion of privacy that often accompany the disclosure of medical information." *Pritchard v. Swedishamerican Hospital,* 191 Ill.App.3d 388, 547 N.E.2d 1279, 1288 (2d Dist.1989) (citation omitted). As with other statutory privileges, it reflects "a legislative balancing between relationships that society feels should be fostered through the shield of confidentiality and the interests served by disclosure of the information in a court of law." *Parkson v. Central DuPage Hospital,* 105 Ill.App.3d 850, 435 N.E.2d 140, 143 (1st Dist.1982). Nonetheless, the privilege is not

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1992 WL 477018 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

absolute, as the statute contains several exceptions. House v. Swedishamerican Hospital, 206 Ill.App.3d 437, 564 N.E.2d 922, 926 (2d Dist.1990). The question here is whether Michael Reese can invoke the privilege on the part of non-party patients, even though those patients have filed malpractice actions against the hospital.

In its argument that the records of other Tumor Clinic patients are privileged, Michael Reese relies on *Parkson,* which refused to compel a hospital to produce the records of non-party patients of a physician being sued for malpractice. Parkson, 435 N.E.2d at 143. *Parkson* further found that the doctor's other patients did not waive the physician-patient privilege when they signed authorizations allowing the hospital to release their medical information to "such agencies as might be concerned with third party payment of charges for services." Id. at 144. In the words of the *Parkson* court, "[w]e do not believe that the execution of this limited waiver evidences an intent by the patients to allow the release of their medical information to unknown individuals or agencies or to the public at large." *Id.* Other courts have agreed that the records of non-parties are privileged, even though the requested information was highly relevant to the requestor's case. See House, 564 N.E.2d at 927; Ekstrom v. Temple, 197 Ill.App.3d 120, 553 N.E.2d 424, 430 (2d Dist.1990).

Significantly, none of the above cases deal with records of non-party patients who have also filed malpractice claims against a physician. Where other patients have brought legal actions against a physician charged with malpractice, the Fifth District of the Appellate Court of Illinois has found that those patients' records are not privileged. Gleason v. St. Elizabeth Medical Center, 135 Ill.App.3d 92, 481 N.E.2d 780, 781 (5th Dist.1985). The rationale in *Gleason* is that patients waive the physician-patient privilege by placing their physical condition in issue in a court proceeding. *Id.* Also, non-constitutional privileges are generally lost when the privilege holder discloses the protected information. *Id.* (citing People v. Phillips, 128 Ill.App.3d 457, 470 N.E.2d 1137 (5th Dist.1984).

**\*8** Other decisions have found waiver by non-parties in a variety of circumstances. People v. Herbert, 108 Ill.App.3d 143, 438 N.E.2d 1255, 1259 (1st Dist.1982), cert. denied sub nom. Herbert v. Illinois, 459 U.S. 1204 (1983) (investigating agents solicited and obtained patients' signed authorizations for release of medical information); People v. Mileris, 103 Ill.App.3d 589, 431 N.E.2d 1064, 1066-1067 (1st Dist.1981) (under Workmen's Compensation Act, claimants had no expectation that records of medical treatment would remain confidential); People v. Florendo, 95 Ill.App.3d 601, 420 N.E.2d 506, 508-509 (1st Dist.1981), aff'd, 95 Ill.2d 155, 447 N.E.2d 282 (1983) (disclosure of patients' names was no greater than that disclosure patients agreed to in utilizing public aid funds for payment of medical treatment). Interestingly, these latter decisions were rendered in the context of grand jury investigations. As *Florendo* notes, where a grand jury seeks confidential medical information, the balancing takes into account a consideration absent in civil cases:

The conflict does not lend itself to a facile or straightforward resolution. On the one hand, we are presented with the patient's interest in maintaining privacy in personal dealings with a physician, as recognized in part by the legislature in enacting the physician-patient privilege. On the other hand, we have the interest of the public in maintaining the breadth of the grand jury's power to conduct investigations and ferret out criminal activity in society, which power is to be given the broadest scope possible consistent with constitutional limitations.

*Id.* at 508 (citations omitted). See also Herbert, 438 N.E.2d at 1259. Cf. People v. Bickham, 90 Ill.App.3d 897, 414 N.E.2d 37, 40-41 (1st Dist.1980), aff'd, 89 Ill.2d 1, 431 N.E.2d 365 (1982).

In this civil action, plaintiffs' allegations of an experimental procedure arguably do not present the type of compelling need for disclosure present in a grand jury investigation. A second consideration causes this court to hesitate before allowing wholesale discovery of the medical records of other patients who have filed suit against Michael Reese.

Several decisions have found that by filing a malpractice action, a patient does not implicitly consent to unlimited discovery concerning his medical condition. "The patient's implicit consent ... is obviously and necessarily limited; he consents only to the release of his medical information (relative to the lawsuit) *pursuant to the methods of discovery authorized by* Supreme Court Rule 201(a) ...." Petrillo v. Syntex Laboratories, Inc., 148 Ill.App.3d 581, 499 N.E.2d 952, 959 (1st Dist.1986), cert. denied, 483 U.S. 1007 (1987) (emphasis in the original). Similarly Ritter v. Rush-Presbyterian-St. Luke's Medical Center, 177 Ill.App.3d 373, 532 N.E.2d 327, 330 (1st Dist.1988). See also Village of Arlington Heights v. Bartelt, 211 Ill.App.3d 747, 570

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 7
Not Reported in F.Supp., 1992 WL 477018 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

N.E.2d 668, 671 (1st Dist.1991) (finding that even if an exception to the privilege applies, nature of physician-patient relationship is such that patient has right to expect that medical records will only be disclosed pursuant to judicially authorized methods of discovery). Although the problem in these cases of *ex parte* communications with physicians or other hospital personnel is not the same one at issue here, the decisions support the proposition that the scope of a litigant's waiver of the physician-patient privilege may be limited. Indeed, while noting that the physician-patient privilege reflects a sound public policy which respects both society's desire for privacy and its desire to see that the truth is reached in civil disputes, *Petrillo* was "unwilling to accept the proposition that the legislature intended the consensual waiver of the physician-patient privilege (*See,* Ill.Rev.Stat.1983, ch. 110, par. 8-802(4)) to apply to anything more than the information necessary to ascertain the truth." Petrillo, 499 N.E.2d at 967.

**\*9** It is concededly very likely that the records of other Tumor Clinic patients were produced in the course of discovery in their own malpractice actions.[FN10] Nonetheless, despite years of discovery in this lawsuit that is now over sixteen years old, plaintiffs have not demonstrated that they have any support for their theory that Michael Reese was conducting an experiment in its irradiation program. Balancing patients' interest in the confidentiality of their medical records against plaintiffs' need for this discovery, this court does not perceive sufficient need to compel the production of potentially confidential information when plaintiffs can investigate the court files in the other lawsuits against Michael Reese. It is therefore recommended that plaintiffs' seventh request be denied.

*Plaintiffs' Request for Discovery Sanctions*

At the end of their motion to compel, plaintiffs ask that the court "invoke Rule 37 against defendants for their failure to make or cooperate in discovery and order sanctions as the Court deems appropriate under Rule 37, inter alia, the rendering of a judgment by default against all defendants as indicated under 37(b)(A) [sic]."[FN11] Because defaults should generally be entered "only when absolutely necessary, such as where less drastic sanctions have proven unavailing," *e.g.,* United States v. DiMucci, 879 F.2d 1488, 1493 (7th Cir.1989), a default sanction is not appropriate here. Although this court has not presided over most of the proceedings in this case, it does not find on the record before it the kind of contumacious conduct that would justify imposition of an order of default. While plaintiffs have not specified what other sanctions they seek under Rule 37, this court assumes they request the expenses of moving to compel or for compliance with a court order. Fed.R.Civ.P. 37(a)4 and (b).

By its express terms, "Rule 37 provides that a party that unsuccessfully opposes discovery or that fails to comply with a discovery order shall pay the reasonable expenses, including attorneys' fees, incurred by the moving party, 'unless the court finds that the opposition to the motion [or the failure to comply with the order] was substantially justified or that other circumstances make an award of expenses unjust.'" United States v. Kemper Money Market Fund, Inc., 781 F.2d 1268, 1279 (7th Cir.1986). An award of costs may be unjust where both parties' inflexibility and inability to compromise render them equally culpable for their discovery disputes. Pasant v. Jackson Nat'l. Life Ins. Co. of America, 137 F.R.D. 255, 258-259 (N.D.Ill.1991).

Based on its review of the record before it, this court concludes that both parties to this dispute bear responsibility for the problems addressed on plaintiffs' motion to compel. While defendants have not fully complied with Judge Norgle's orders concerning production of their insurance policies, the directive was given orally at a status hearing and there is some ambiguity in its terms. Plaintiffs have also exhibited some degree of inflexibility in their arguments and it is not clear that they have taken all appropriate steps to insure disclosure of the information they seek. Even assuming plaintiffs had achieved total success in their motion to compel, which they have not, this court would be disinclined to impose discovery sanctions. This court therefore recommends that plaintiffs' request for sanctions be denied.

**MOTION TO ADD PARTIES UNDER FED.R.CIV.P. 21**

**\*10** Plaintiffs move to join as defendants in this action all Boards of Directors of Michael Reese Hospital and Medical Center and Michael Reese Research Foundation ("Boards") that have served between 1938 and the present. They bring the motion under Rule 21, which provides that "parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." If

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 477018 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.)**

Page 8

granted, Boards and their members would be joined collectively and individually as defendants. According to plaintiffs' list (PX C), the number of individuals known to have served on Boards is more than 80 or 90. Plaintiffs have not informed this court as to when the identities of Boards' members were first made known to them. Also, any applicable statute of limitations has apparently expired years ago.[FN12]

Plaintiffs state that they wish to join Boards because "the board of directors is responsible for the competency of employees, professionals and staff and for the quality of medical care afforded patients. To be relieved of personal and collective responsibility for failure to provide an acceptable quality of care, the board must put in place Medical Staff Bylaws, Rules and Regulations, and Hiring Practices Guidelines, along with Oversight Protocols and Systems to ensure enforcement and delivery of acceptable quality of care to patients." Motion to Add Parties Under Rule 21 ("Motion"), ¶ 1. According to plaintiffs, in January 1990 they learned that Michael Reese had no medical staff bylaws until 1964. Having learned that no bylaws existed until 1964, they then moved to add Boards' members as defendants. Plaintiffs state that they did not know of the need to join the directors until that point because defendants had failed to comply with their discovery requests for information concerning the bylaws.

Plaintiffs' theory is that Boards "failed to function so as to render finest loyalty to plaintiffs, as was their duty, and failed to carry out their responsibility to assume that patients would receive a reasonably good quality of medical care (1) by establishing rules, regulations and bylaws, and oversight procedures to ensure that the rules, regulations and bylaws were functioning to protect the health and well-being of patients, and (2) by engaging competent personnel and staff." Motion, ¶ 5. They cite no authority finding this alleged duty. Even assuming this theory of hospital directors' liability is viable,[FN13] it is not the only dereliction by Boards of which plaintiffs complain. Besides alleging that Boards failed to promulgate bylaws, plaintiffs contend that Boards engaged incompetent staff, permitted use of tonsil irradiation, allowed hospital staff to misrepresent to the public the effects of the irradiation procedure, and permitted defendants' attorneys to block discovery in this lawsuit. Motion, ¶¶ 6-16. In fact, plaintiffs basically allege that Boards are responsible for causing or allowing the existence of conditions that led to their physical injuries and to the difficulties they have experienced in this lawsuit.

*11 Under Rule 21, where the original suit was timely commenced, but the statute of limitations has run, the addition of parties is subject to Rule 15(c) or 17(a). 3A *Moore's Federal Practice* ¶ 21.04 at 21-26 (1991).[FN14] Rule 15(c) allows relation back of an amendment changing the party against whom a claim is asserted if

... within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

*Peterson v. Sealed Air Corp.,* 902 F.2d 1232, 1235 (7th Cir.1990) (quoting Rule 15(c)). The rule "was designed to protect a plaintiff who names a party mistakenly and then discovers the proper party's identify after the statute of limitations has run." *Hill v. Shelander,* 924 F.2d 1370 (7th Cir.1991).

Here, Boards' failure to promulgate bylaws is only one of the actions of which plaintiffs complain. Plaintiffs have presented no reason why a claim based on these other deficiencies in Boards' actions could not have been brought earlier. There being no indication that plaintiffs mistakenly attributed these other actions to the corporate entity, this court finds no reason to allow an amendment adding Boards as parties defendant. Consequently, this court recommends that plaintiffs' motion to add parties be denied.

At the same time, this court recommends that Michael Reese be denied its motion for expenses incurred in responding to the motion to add parties. The response in question is a two-page addendum to Michael Reese's response to the motion to compel. There is no indication that any significant amount of time was involved in its preparation. Nor does Michael Reese deny that it delayed in responding to plaintiffs' interrogatories concerning the bylaws. Given the de minimis amount of work needed to respond to plaintiffs' motion, and Michael Reese's role in precipitating the motion, this court recommends that sanctions not be allowed.

### OTHER PENDING MATTERS

All pretrial matters in this case have been referred to this court. While the above report and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 9
Not Reported in F.Supp., 1992 WL 477018 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

recommendation addresses the two motions that were briefed before this court, plaintiffs have advised the court of their belief that a number of other earlier motions in this case have not been ruled upon. Because this court has not presided over the many status hearings in this case, it is uncertain whether some of these matters have been resolved informally. In the hopes of expediting these proceedings, there follows a discussion of the motions that have allegedly not yet been decided. With the exception of the first matter, the court expresses only a preliminary determination. In the event plaintiffs wish to pursue these matters further, they should make submissions in accordance with the discussion below.

*Motion to File Deposition Transcripts*

**\*12** In this motion, filed June 29, 1990, plaintiffs seek to file transcripts of depositions with the Clerk of the District Court. Under Local General Rule 18, deposition transcripts are "discovery materials," to be filed only upon court order. Until that time, the party taking a deposition is to retain the original transcript and be the custodian of it.

Here, plaintiffs' sole reason for seeking leave to file the depositions is to make them available to the parties during trial. Plaintiffs present no reason why the parties cannot safeguard the deposition transcripts until that time. Given the need to conserve space in the court's files and the absence of a need for access to the transcripts at the present, this court recommends that plaintiffs' motion be denied.

*Motion to Compel Michael Reese to Designate*

In April 1988 plaintiffs moved under Rule 30(b)(6) to compel Michael Reese to designate the individual or individuals that would testify at deposition on the hospital's behalf. Rule 30(b)(6) provides that:
A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization.

Fed.R.Civ.P. 30(b)(6). According to plaintiffs, they filed the notice of Michael Reese's deposition in April 1988, but the deposition was never taken because of a pending controversy over whether plaintiffs' counsel should be disqualified. That question having been resolved,[FN15] the question of the designation can now be addressed.

Shortly after plaintiffs filed this motion, Michael Reese filed a response in which it enumerated reasons why it would not arrange to have its employees or agents testify on the various topics listed in plaintiffs' notice of deposition. Among those reasons, Michael Reese contended that much of the information had already been provided in depositions previously taken of its employees and agents. Michael Reese did not, however, make specific references to the deposition transcripts where those answers were provided. Plaintiffs consider Michael Reese's response evasive and incomplete, apparently because the deponents now alleged to have spoken on behalf of the hospital were not designated in advance of their depositions. The issue of whether witnesses should be deposed a second time therefore arises. Another recurring theme in Michael Reese's response is its contention that the information requested is privileged under the Medical Studies Act, Ill.Rev.Stat. ch. 110, § 8-2101. There was also a relevancy objection to plaintiffs' request for employee benefits paid to certain Michael Reese employees involved in the irradiation program. While Michael Reese refused to provide a deponent to testify on most of the matters listed in plaintiffs' notice, its refusal was not categorical. Thus, Michael Reese named several individuals who can testify on topics in the notice of deposition.

**\*13** For the most part, this court considers Michael Reese's response sufficient. Where Michael Reese's employees have already provided sufficient testimony concerning plaintiffs' requests for information, redeposing them is to waste time and resources. Also, Michael Reese obviously could not have designated its employees to answer specific questions if it did not know in advance the matters on which plaintiffs sought the hospital's official position. Nonetheless, Michael Reese will have to review these depositions in advance of trial and plaintiff is entitled to know which employees state the hospital's position. Therefore, this court would require that Michael Reese designate passages in depositions that provide its answers to plaintiffs' inquiries. This

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 477018 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.)**

Page 10

court considers the question of privilege unresolved, however, and would require briefing, with citation to applicable case law, before a determination as to whether Michael Reese must designate a person to testify concerning decisions made by its committees. Finally, this court agrees that the material in item (m), concerning benefits paid to certain employees, is irrelevant.

*Motions to Compel Insurers to Designate*

In their notices of deposition to Lloyds of London ("Lloyds"), insurer of Michael Reese, and to Medical Protective Company ("Medical Protective"), insurer of doctors Rosenblum, plaintiffs asked that each insurer designate a representative to testify concerning the insurance policies in effect during the years at issue in this dispute, as well as details of the dealings between each insurer and its insured. In addition, plaintiffs sought information concerning the involvement of each insurer in the alleged concealment of and failure to warn patients concerning the risks of tonsil irradiation. In response, Michael Reese moved for a protective order concerning the information relating to Lloyds, while Medical Protective moved to quash the notice of deposition.

Basically, the objections can be summarized as follows. Insofar as the information requested is discoverable under Rule 26(b)(2), defendants contend that the information has already been provided in accordance with Judge Norgle's order of April 22, 1988. Other information is allegedly privileged under Illinois law. In addition, the insurers have not been named as defendants in this action. This being so, their alleged involvement in any scheme to conceal the truth about the irradiation treatments is irrelevant.

Based on the discussion earlier in this report, this court finds defendants' claims of privilege and compliance with Rule 26(b)(2) persuasive. It is also obvious that the insurers are not defendants here. On the whole, plaintiffs have little likelihood of convincing this court that these depositions should proceed. However, since this court is uncertain as to whether Judge Norgle has previously considered this question, it makes no recommendation or ruling at this time. After Judge Norgle's decision on this report and recommendation, plaintiffs may present to this court those arguments they deem necessary and justified under the law.

*Pretrial Order and Jury Instructions*

**\*14** Although this case has been set for trial on several occasions, the parties have not yet submitted the joint pretrial order required under this district's standing pretrial order, found at § 5.00 of the Local General Rules. Under the standing order, counsel for plaintiff has primary responsibility for preparation of the pretrial order.

To date, plaintiffs have submitted to defendants first and second drafts of a pretrial order, as well as two drafts of proposed jury instructions. In the first submission, the proposed instructions were unnumbered and made no supporting citations to authority. Defendants responded by moving for an order requiring plaintiffs to revise and resubmit the instructions. Defendants did not make revisions to plaintiffs' submissions as contemplated under the standing pretrial order. Although plaintiffs have since submitted the second drafts of their pretrial order and proposed instructions, defendants again have not proposed any revisions to them. This court accepts defendants' justification for their failure to participate in this second drafting process, however.[FN16]

Plaintiffs' second draft of contemplated jury instructions is 298 pages long and their second draft of the pretrial order is 170 pages long. In their present format, these submissions are unworkable. This court disagrees with plaintiffs' contention that the issues in this case are so complex that these prolix submissions are necessary. On the other hand, defendants have an obligation to work with plaintiffs on the preparation of the pretrial order, even though the effort required may be greater than in other cases.

Following Judge Norgle's determination on this report and recommendation, the parties are to advise this court's clerk. The court will then order a status hearing, at which a timetable for pretrial submissions will be set. In the interim, plaintiffs are directed to review their proposed pretrial order and jury instructions, with an end to eliminating material that is repetitious or unnecessary. This court further suggests that plaintiffs direct their attention toward the choice of trial counsel, and that he or she be involved in the process of drafting the pretrial order. Defendants in the interim should also attempt to formulate suggestions for expediting the process of formulating the pretrial order.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 01-01139-AMC    Doc 13877-10    Filed 12/01/06    Page 12 of 14

Not Reported in F.Supp.                                                                                               Page 11
Not Reported in F.Supp., 1992 WL 477018 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

## CONCLUSION

For the reasons set forth above, this court recommends that plaintiffs' motion to compel be granted in part and denied in part, with defendants ordered to comply with requests 1, 3, 4 and 6 and plaintiffs' request for sanctions denied. This court further recommends that plaintiffs' motion to add parties be denied and that defendants' request for sanctions under Rule 11 be denied. Finally, the court recommends that plaintiffs' motion to file deposition transcripts be denied.

Counsel are given ten days from the date hereof to file objections to this Report and Recommendation with the Honorable Charles R. Norgle, Sr. Failure to object constitutes waiver of the right to appeal.

FN1. This case has been referred to this court for rulings on nondispositive pretrial matters and for report and recommendation on dispositive motions. Plaintiffs' motion to compel is a non-dispositive matter. The motion to add parties is dispositive. Had these motions been decided at different points in time, this court would issue an order on the motion to compel and a report and recommendation ("R & R") on the motion to add parties. While the procedure for adoption of the R & R would necessarily provide the parties with the opportunity to object, they would also have the right to appeal the determination on the motion to compel. Given the parties' right to object to the decision on both motions, this court, for purposes of expediency, addresses both motions in an R & R.

FN2. These five years include the years in which plaintiffs were exposed to radiation and the years in which their injuries were discovered or treated. In their second amended complaint, plaintiffs allege that they received tonsil irradiation treatment in 1947. ¶ 10. As a consequence of the treatments, Leland Neuberg developed cancer in 1962 (¶ 20) and Joel Neuberg in 1974 (¶ 25). The other two years correspond to publications in 1956 (¶ 144) and 1966 (¶ 146) in which defendants discussed the question of a link between tonsil irradiation and thyroid cancer. Some years after these publications, the Michael Reese recall program began in 1974 (¶ 147).

FN3. In their reply brief, plaintiffs also complain that some of the policies are illegible. Although the copies submitted to this court appear legible, it is possible that some produced for plaintiffs are not. Plaintiffs should advise defendants as to which policies are illegible. As necessary, defendants should furnish new copies or allow plaintiffs to inspect the original policies.

FN4. In their reply brief, plaintiffs apparently limit this request to insurance information for the years 1947 to 1975.

FN5. One decision mentions the privilege in § 2-1003(c), but finds it unnecessary to discuss it. *Leeson v. State Farm Mutual Automobile Insurance Co.,* 190 Ill.App.3d 359, 546 N.E.2d 782, 788 (1st Dist.1989).

FN6. Because of the lack of clarity in plaintiffs' request, this court does consider the applicability of § 2-1003 to self-insured entities.

FN7. As exhibit A to their reply brief (before corrections) on the motion to compel, plaintiffs attach an article discussing the question of which insurance policies should provide coverage for ionizing radiation claims. F. Nachman, *Insurance Coverage for Ionizing Radiation Claims-A Guide for the Perplexed,* ___ Insurance Counsel Journal 616 (Oct. 1985). One approach is to limit coverage to the policies in effect at the time of exposure to radiation; another is to find coverage under policies in effect at the time the injury manifested itself years later. In his article, the author also discusses the "continuing injury theory" adopted by the Court of Appeals for the District of Columbia in an asbestosis case. *Keene Corp. v. Insurance Co. of North America,* 667 F.2d 1034 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007 (1982). Under the *Keene* theory of coverage, all insurance companies that issued policies during the period between a victim's first exposure to asbestos and the manifestation of his symptoms must provide coverage for his injuries. *See* Nachman, *supra,* at 619. The author predicts that

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 477018 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.)**

Page 12

courts are more likely to adopt some form of a *Keene* analysis, in part because this theory affords the most insurance coverage to claimants. *Id.* at 625.

FN8. This court disagrees that defendants waived any privilege when, after 1974, they admitted publicly that irradiation treatment increased the risks of thyroid cancer. Plaintiffs' theory of waiver is apparently based on the hospital's 1974 statement as well as a 1966 article acknowledging a causal connection between tonsil irradiation and thyroid cancer. While plaintiffs claim that there is a reference to Leland Neuberg in this article co-authored by doctors Philip and Arthur Rosenblum, the article merely lists the initials "L.N." on a table of 19 patients treated at Reese. Even assuming that reference is to Leland Neuberg, plaintiffs cite no authority to the effect that a later admission of potential liability can waive an insured's privilege with respect to a communication years earlier with an insurer.

FN9. In reaching this conclusion, this court has considered plaintiffs' belief that Michael Reese was engaged in an experimental program to test the efficacy of using radiation instead of alternative treatments such as drug therapy. In such an experiment, Michael Reese would presumably have used a control group that was treated with drugs instead of radiation. Even assuming the existence of a "control group," however, information on *total* levels of sulfa and antibiotic drug usage would not assist the inquiry into any alleged experiment unless these drugs were exclusively used for tonsil treatments.

FN10. This report assumes that plaintiffs have propounded and defendants have responded to interrogatories concerning other malpractice actions stemming from the tonsil irradiation program. Such a request would fall within the range of relevant nonprivileged matter.

FN11. Although plaintiffs elsewhere invoke Rule 26 as a basis for sanctions, they have not indicated which part of that rule would apply. This report therefore confines its discussion to Rule 37.

FN12. Plaintiffs suggest that some form of tolling permits them to add the directors as defendants, but they have not clarified which statutes of limitations they believe applicable and they have not cited authority delineating the circumstances in which this type of extensive tolling would apply. Assuming the claim is one for medical malpractice, the statue of limitations is generally four years. Ill.Rev.Stat. ch. 110, § 13-212. In the case of fraudulent concealment, the action may be commenced within five years after the person entitled to bring the action discovers that he or she has a cause of action. Ill.Rev.Stat. ch. 110, § 13-215.

FN13. A hospital's bylaws are not irrelevant in an action for malpractice against the hospital itself. Under Illinois law, hospitals may be liable for injuries suffered by patients under its care under two distinct theories. *E.g., Alford v. Phipps,* 169 Ill.App.3d 845, 523 N.E.2d 563, 571 (4th Dist.1988). "The hospital may be liable for a physician's misconduct on a *respondeat superior* theory when an employer-employee or principal-agent relationship is present or for the violation of an independent duty owed by the hospital to review and supervise medical care administered to the patient." *Id.; Wogelius v. Dallas,* 152 Ill.App.3d 614, 504 N.E.2d 791, 795 (1st Dist.1987). It has also been held that a hospital owes a duty to its patients to exercise reasonable care in light of apparent risk. *Andrews v. Northwestern Memorial Hospital,* 184 Ill.App.3d 486, 540 N.E.2d 447, 452 (1st Dist.1989) (citation omitted). Admissible evidence on the question of the applicable standard of care includes expert testimony, state licensing regulations, the hospital's bylaws and accreditation standards and regulations. *Id.; Magana v. Elie,* 108 Ill.App.3d 1028, 439 N.E.2d 1319, 1321 (2d Dist.1982).

FN14. Rule 17(a) with its focus on the identity of the party prosecuting an action, *see Gogolin & Stelter v. Karn's Auto Imports, Inc.,* 886 F.2d 100, 102 (5th Cir.1989), *cert. denied sub nom. Gogolin & Stelter v. First City Bank, N.A.,* 110 S.Ct. 1480 (1990), has no bearing on the situation before this court.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 13
Not Reported in F.Supp., 1992 WL 477018 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

FN15. At that point in time, plaintiffs' counsel was LeRoy Neuberg, plaintiffs' father. The motion to disqualify was granted on May 20, 1988. Since then, successor counsel Anthony McGuire ("McGuire"), LeRoy Neuberg's partner, has been disqualified from acting as trial counsel. McGuire has been allowed to continue as plaintiffs' attorney for all pretrial matters.

FN16. According to defendants, plaintiffs made the second group of submissions after Judge Bua set this case for trial. Although Judge Bua had informed the parties that he did not require a pretrial order in civil cases, plaintiffs requested leave to submit the second draft anyway because they had expended time and effort in preparing it.

N.D.Ill.,1992.
Neuberg v. Michael Reese Hosp. and Medical Center
Not Reported in F.Supp., 1992 WL 477018 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1:75cv03844 (Docket) (Nov. 11, 1975)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.