# Exhibit F



Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1994 WL 75055 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Briefs and Other Related Documents
Vakharia v. Swedish Covenant Hosp.N.D.Ill.,1994.Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
Usha VAKHARIA, M.D., Plaintiff,
v.
SWEDISH COVENANT HOSPITAL, Nancy Loeber, M.D., et al., Defendants.
**No. 90 C 6548.**

March 9, 1994.

MEMORANDUM AND ORDER
MORAN, Chief Judge.
**\*1** Somewhat more than a year ago defendants filed a motion for summary judgment. Plaintiff sought discovery, pursuant to Rule 56(f) F.R.Civ.P., prior to responding to that motion. Resolution of that motion was delayed by the need, once again, in an ongoing pleading war, to determine what claims against which defendants could go forward. That was determined in March and, then again, on June 8, 1993, when we ruled upon a motion for reconsideration.

On June 8, 1993, we also ruled upon the Rule 56(f) motion. We there permitted eight depositions by plaintiff before responding to the summary judgment motion. Thereafter plaintiff deposed those eight witnesses. Seven of them took from two to six days or portions of days. The cumulative transcripts exceed 5400 pages, of which only 16 pages involve interrogation by defendants' counsel. Defendants have deposed plaintiff, some 1100 or so pages of transcript. In addition, the prior ad hoc committee hearing generated over 3100 pages of transcript. Document discovery has been massive.

That is not, however, the end of it. Plaintiff wants to add more defendants, and insists that she has not concluded her examination of any of the eight witnesses. Defendants seek a protective order limiting resumption of those depositions only for the purpose of allowing defendants to conduct their examination, at plaintiff's expense. Plaintiff wants to take eight more depositions and have some additional interrogatories answered by the hospital, ASA and Dr. Loeber. She also wants the hospital or Dr. Loeber or both of them to respond to some 190 requests to admit beyond a prior 64 requests. Those defendants seek a protective order relieving them of any further obligation to respond. Plaintiff insists that various documents should be produced or, if privilege has been claimed, that they be reviewed *in camera.* She has also submitted to the hospital a "Fourth" and "Amended Fifth" set of requests for documents, and the hospital objects. Finally, the defendants ask reconsideration of their motion to dismiss the section 1985 and Sherman Act section 1 claims.

We deferred ruling on the various motions relating to discovery until we had read all the deposition transcripts. We have read all 6500-plus pages. It has been a disheartening exercise.

Discovery in a civil action is not some fundamental right, to be pursued as long and to whatever extent as a party may desire. It is a rather recent innovation. Indeed, in criminal cases, where the stakes are often far higher than they are in civil cases, the discovery remains limited. Experience has demonstrated that the discovery rules can be and sometimes are abused, and there is presently an ongoing effort to curb such abuses. Parties are often, and non-party witnesses are always, coerced participants who should not be held hostage to the personal perceptions of a party seeking discovery as to what is desirable or appropriate. The 1993 amendments to the Federal Rules of Civil Procedure reflect that effort. Rule 1 now expressly states that the rules should be "administered to secure the just, speedy and inexpensive determination of every action." The cooperation of counsel is emphasized. Rule 26(b)(2) expressly authorizes courts to limit the length of depositions when discovery is unreasonably cumulative, the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought or the burden or expense of the proposed discovery outweighs its likely benefit. Time limitations are addressed again in Rule 30, where general guidelines for the conduct of depositions are set forth. The presumptive limit on depositions by a party is ten (plaintiff has taken nine depositions) and customarily a witness should be examined only once (some witnesses deposed here, as well as others, have previously been examined during the ad hoc committee hearing). The maximum norm nationally is 25 interrogatories, 20 in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1994 WL 75055 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

this district. Sanctions are strengthened in Rule 37.

**\*2** Those amendments are consistent with the objectives of the Civil Justice Reform Act. Pursuant to that statute this district has adopted, as has every other district, a Delay & Expense Reduction Plan. Pursuant to that Plan a committee of attorneys has been appointed to consider guidelines and rules for discovery practice. The Advisory Group, which developed the recommendations upon which the Plan is based, concluded that the scope of allowable discovery should balance cost against likely benefit. It suggests that cost-shifting be considered when the scope of discovery moves toward being overly burdensome and expensive. That suggestion echoes the clear results of a survey of federal practitioners in this district.

The discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. Parties are entitled to a reasonable opportunity to investigate the facts-and no more. How do we apply those standards in the context here, which is Rule 56(f)? Defendants complain that the examinations in the depositions taken so far have pursued immaterial and repetitious lines of questioning for hours and even days on end; that it has often been abusive and marked by quibbling over the form of objections, attacks on counsel and parties and gratuitous comments; and that to a large extent it has been a testing of a witness's present recollection of documents and past testimony rather than a search for relevant information. Plaintiff contends that defendants have engaged in unfounded objections, improper coaching of witnesses, belated disclosure of relevant documents, and improper directions not to answer, and that they imposed unrealistic time limitations that frustrated her efforts to explore quality of care issues.

As we have said previously, we have read all the deposition transcripts (except one by plaintiff not in contention here). We kept in mind, when reviewing the transcripts, the numerous complaints by plaintiff's counsel during various proceedings before this court that he and his client were mistreated from time to time during the depositions. That review indicates that the level of incivility varied greatly from deposition to deposition and from page to page. Defendants' counsel were from time to time less than civil-the deposition transcripts are punctuated by acrimonious exchanges. It should be noted, however, that plaintiff's counsel at various times accused witnesses of being racist and untruthful. He also accused defendants' counsel (including on occasion their law firms) of likewise being racist, of coaching witnesses, of engaging in a coverup, of falsifying and altering documents, and of suborning perjury. We found no support in the transcripts for those accusations. Not surprisingly (although not necessarily justifiably) defendants' counsel on occasion replied in kind or initiated their own attacks. On this court's scoreboard, of the three defendant attorneys appearing at depositions, one was remarkably restrained, one was less restrained, and one had a tendency to become far too involved. It can hardly be said, however, that plaintiff's counsel was in any sense a victim.

**\*3** There was, as well, far too much time spent on such irrelevancies as to whether or not an objection had been properly articulated, what it meant and whether or not it was valid. Again, plaintiff's counsel was at least equally involved in that process. That is not to say that the depositions were at all times contentious and disagreeable. Within minutes of a heated exchange counsel were often amiably able to agree on breaks, scheduling, identification of exhibits, and reformulation of questions. The deposition of Dr. McCormick went relatively smoothly. Counsel for plaintiff covered considerable material in the last session with Dr. Wender.

What the depositions do reflect is an immense amount of time devoted to matters that are at least of marginal relevancy, an exhaustive and often repetitive interrogation respecting those and other matters, and lengthy inquiries about what witnesses remembered about prior recorded testimony and documents which were not before them and which they had not seen in years, if at all. Dr. Wender's deposition is a good example. He testified at length at the ad hoc committee hearing. Plaintiff did not question him about quality of care issues, although she then had an opportunity to do so. Because plaintiff contended that she was unrepresented at the time and therefore did not have a reasonable opportunity to explore that area, we allowed plaintiff to make "that inquiry" in a Rule 56(f) deposition. That deposition went on for much of five separate days. Dr. Wender had reviewed the medical records in preparation for his testimony at the ad hoc committee hearing. He reviewed those records again before his deposition. He was not, however, questioned about quality of care issues until the fifth session, and then it was more a matching of records than it was a substantive inquiry. Prior to that time the questioning had concerned such largely

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 01-01139-AMC    Doc 13877-11    Filed 12/01/06    Page 4 of 7

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1994 WL 75055 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

immaterial matters as how he and others he knew organized their practices. Plaintiff got a second bite out of the apple when we permitted the deposition. She is not entitled to a third. She has had ample opportunity to obtain information about quality of care issues, and we will not require Dr. Wender to review the medical records and submit to examination yet again.

Dr. Blancato also reviewed the medical records in preparation for his deposition, and he eventually was asked, repetitiously, about one patient during the entire four days of the deposition. Much of his examination was devoted to the views of the witness about a "surplus" of anesthesiologists, which he expressed, to the extent he recalled, over and over again. Plaintiff has had an ample opportunity to examine Dr. Blancato, a person of advanced years who was briefly involved in a survey more than four years ago. He also need not submit to examination again.

The deposition was the second shot at Dr. Loeber, as she testified at length before the ad hoc committee. Much of three days was spent on such matters as the careers of the witness and her husband before they ever came to Chicago. Plaintiff has had ample opportunity to seek information. We gave some additional time for Judith Borenstein. That deposition is now concluded. Dr. McCormick testified at the ad hoc committee hearing and was deposed on four different days as well. That is enough, particularly since plaintiff's stated reason for wishing to inquire further relates to his financial relationship to the hospital, an area of at most marginal relevance.

**\*4** Dr. Rogin and Dr. Shapiro were both deposed for two days and Dr. Ovieda was deposed for one day. All three were members of the ad hoc committee. They were, indeed, three of the five members. Much of the examinations had nothing to do with their involvement with that committee, and much of the examination relating to the committee was a testing of their present recollection of the recorded testimony at the committee hearings. We believe that plaintiff has had opportunity enough with Dr. Rogin and Dr. Shapiro. In view of where counsel left off with Dr. Ovieda we believe he should have three more hours to complete his examination.

Defendants not only wish to terminate plaintiff's depositions of these witnesses; they also wish to have their opportunity to ask questions, and they seek to continue the depositions for that limited purpose and at plaintiff's expense. If they wish to inquire of those witnesses they should have an opportunity to do so. We do not, however, direct that the inquiry be at plaintiff's expense. Further, should they resume the deposition of any witness the plaintiff will have half as much time for further inquiry as defendants use for their inquiry.

Plaintiff now moves to take eight more depositions. She may take the deposition of Dr. Trakas for three hours, as he apparently was a significant participant in the selection of the ad hoc committee. We see no reason to further delay plaintiff's response to the summary judgment motions by taking the seven other depositions. From the court's perception of the issues in this litigation none of those seven is a significant witness, even though each might be able to contribute a few details about matters not central to the final decision.

Not content with seeking additional depositions, plaintiff now want to add defendants and allegations. She contends that Dr. Loeber's husband, a professional corporation with which they were involved, various attorneys and even the hearing officer at the ad hoc committee hearing are answerable to her on antitrust grounds. This is a 1990 case. A motion for summary judgment has been pending for a year. We have read the transcripts. We see no substantiated reason to add these defendants at this late date. The motion is denied.

Plaintiff has served upon the hospital a "Sixth" set of interrogatories and a "Fourth" and "Amended Fifth" set of requests for documents, and she moves for leave to propose additional interrogatories to the hospital and Dr. Loeber. She also seeks to compel production of income tax records and billing records of Dr. Loeber, Dr. Chookaszian, Dr. Konowitz, and Dr. Myint. Other motions relate to a second request for admission addressed to the hospital and Dr. Loeber, a first request for admissions addressed to Dr. Loeber, a fourth request addressed to the hospital, and a fifth request addressed to the hospital. There appear to be some 190 requests in all. Finally, plaintiff has filed two motions to compel the production of documents.

**\*5** The "Sixth" set of interrogatories to be answered by the hospital is, in reality, a single interrogatory consisting of nine subparts and requiring the production of documents. The information sought relates to whether or not there was a surplus of physician anesthesiologists at the hospital in 1988.

Case 01-01139-AMC    Doc 13877-11    Filed 12/01/06    Page 5 of 7

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1994 WL 75055 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

The interrogatory was served in August 1993, before any but the Borenstein deposition had commenced. We have lost track of how many other interrogatories have been served, but we believe the local limit of 20 was exceeded long ago.

This court has remarked before that interrogatories are an unsatisfactory means of obtaining general information. Because of their limited utility the national rules now limit the number to 25, five more than the maximum permitted in this district. This interrogatory is illustrative of the reasons for such limitations. Plaintiff already has whatever documents relate to this matter; they have long been within the scope of prior discovery requests. The subject relates to events now more than five years in the past. Dr. Loeber is a logical source of information on that subject for both plaintiff and the hospital, to the extent she recalls. Perhaps Dr. Trakas may have a recollection; his deposition is yet to come. There is nothing to suggest, at this late date, that the hospital can provide any further information on the matter, certainly nothing to justify it being required to respond to a wide-ranging interrogatory. This is particularly so in light of the marginal nature of the issue. We have previously indicated that the antitrust laws do not prohibit the hospital from organizing its provision of anesthesiology services as it sees fit, except that it cannot do so by means of unreasonably excluding plaintiff from a larger market. While that is an issue defendants wish us to revisit, and we shall do so at a later time, we see no basis for any contention that those laws require the hospital to use the services of a particular anesthesiologist or permit any qualified anesthesiologist to practice there or to spread the work among all who may have been practicing there. The hospital's motion for a protective order respecting the "Sixth" set is granted.

Several of the pending motions relate to documents. The "Fourth" request for documents asks the hospital to produce written correspondence and drafts of letters among the various counsel for the defendants for the period June 1, 1988 to June 1, 1992, as well as notes and memoranda relating to any communications among them. The "Amended Fifth" request seeks documents relating to physician applications for anesthesiology staff privileges for January 1, 1984 to December 31, 1992, including files from any "applicant pool." Plaintiff has moved to compel production of the income tax and billing records of four anesthesiologists at the hospital for a nine or ten year period. Finally, Plaintiff seeks to compel production of various documents which, she asserts, defendants were supposed to produce before or for which they assert a privilege.

**\*6** The hospital contends that the "Fourth" and "Amended Fifth" requests come too late, ask for privileged documents, and seek to impose upon the hospital the burden of yet again combing through its files. We agree that plaintiff has not provided any compelling reason to require the hospital to review its files once again. The hospital previously has represented that it has produced all responsive documents that it has been able to locate. This court is, as well, reluctant to review *in camera* whatever ongoing correspondence and contacts there may have been among counsel, since it is unlikely that they should be made available to plaintiff. That plaintiff would vigorously pursue all avenues available to her to vindicate her position was evident long before ASA was named a defendant; a community of interest among various parties long predated that event. Perhaps a careful analysis would result in the production of some documents, but we do not believe that the effort is justified or required at this stage of the proceedings.

We are, however, uncertain about the status of applicant files. We had thought that such files had been produced previously as a result of the references in the defendants' summary judgment motion to post-plaintiff staffing. Perhaps we are in error. The hospital should tell us if it has no additional responsive documents. Plaintiff should be far more explicit than she has been in explaining whether she is seeking documents not previously requested and, if so, why she could not have made the request far earlier and why the need is substantial.

The motion to compel the production of income tax and billing records is, for now, denied. We are not persuaded that other anesthesiologists should produce records because plaintiff has done so. We are, as well, unpersuaded that production of income tax returns, even though subject to a protective order, requires especially compelling justification. We assume that the production of billing records would be burdensome (plaintiff implies that her production of such records was so for her), and that production of tax returns would not be difficult. Plaintiff insists that the information will help her establish damages; defendants disagree.

If we assume that plaintiff is correct in that respect, we still conclude that any decision on the production of such records should be deferred. Plaintiff's primary arguments for production relate to antitrust

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1994 WL 75055 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

damages. We have yet to rule on a motion for reconsideration of prior rulings about that claim, but we think we have made it clear (and said so earlier herein) that the antitrust claim does not extend to the organization of services within one hospital. Further, the most immediate priority is a determination of the motion for summary judgment, an issue of liability rather than damages.

Finally, with respect to documents, there are two plaintiff motions to compel, and we earlier deferred defendant hospital's reply. A responsive letter indicates, however, the substance of the hospital's position to the first motion. It gives no reason why it cannot permit plaintiff to inspect the original of item 2. Absent a compelling reason, it should permit that inspection. We cannot determine what the dispute is relating to item 10, document 9115. Defendant should check to determine whether or not there was a duplication mixup respecting items 12 and 13. If not, its response stands. We are unable to determine the nature of the disputes respecting items 14, 17, 25 and 26. Defendant has responded to item 21. With respect to the second motion, it is impossible to determine with clarity the nature of most of the disputes. By "pertinent" we assume defendant means "responsive." Plaintiff should be advised if our assumption is in error. If plaintiff wants this court to review documents in camera she should list them and request the hospital to furnish them to the court. Before making such a request, however, plaintiff should exercise some discretion in determining both the likelihood of privilege and of materiality. For example, various tables of contents may not be privileged but the likelihood that they will be of assistance to plaintiff appears to be remote. We are mindful that the document production has been massive and very few documents were used during depositions. In any event, the resolution of whatever disputes may remain pertaining to those documents need not postpone a response to the summary judgment motion.

**\*7** The last dispute relates to requests to admit. One motion seeks leave to ask the hospital, ASA and Dr. Loeber for dates on which various hospital bodies or Dr. Loeber reviewed, if they reviewed, various patient records and reports. Those are matters which were subjects of inquiry during depositions. Recollections were somewhat vague. There is nothing to suggest that the institutional defendants can come up with more precise answers than the persons upon whom they must rely for information, or that Dr. Loeber can clarify by interrogatory answer. We see no reason to compel those defendants to go through that exercise.

The requests to admit include a first set to the hospital and Dr. Loeber, consisting of some 64 admissions; a second set to the hospital and Dr. Loeber, consisting of an additional 16 admissions; a first set to Dr. Loeber, consisting of 114 admissions; a fourth set to the hospital, consisting of 52 admissions; and a fifth set to the hospital consisting of 8 admissions. We are unsure of the status of the first set of requests to the hospital and Dr. Loeber; the motions for protective orders do not refer to that request, and apparently they were answered. All of the requests predate all of the depositions except the first sessions with Judith Borenstein. Defendants' motions for protective orders were grounded on the contention that the requests were vexatious because they required defendants to parse ever so finely information that plaintiff could obtain by deposition shortly thereafter. This court agrees.

For example, plaintiff concedes that the 114 requests in the first set to Dr. Loeber relate to "three rather simple questions." All three were explored with Dr. Loeber at her deposition.

Perhaps there are requests to admit that remain pertinent after the depositions. If so, they can be resubmitted in a less micro incremental fashion, and we can consider them then, if necessary. Requests to admit do have a salutary purpose, although in most cases the parties simply agree in the final pretrial order about what is in dispute and what is not. In any event, we grant the protective orders for now, recognizing that a possible revisitation of the matter at a later time does not impact any response to the summary judgment motion. It is, after all, highly unlikely that plaintiff would be requesting defendants to admit something the defendants are contending is not so beyond reasonable dispute, and if she did the defendants would be responding with a denial.

Almost all of this Memorandum and Order was prepared before the tragedy of this past weekend. We do not believe it to be appropriate to now change, because of that tragedy, the views expressed in the then draft. We recognize, however, that the necessity of one counsel carrying on, when two had been actively involved before, may affect closure and response dates and the like, and we wish to be accommodating in that regard. We are fortunate in that co-counsel, although not the attorney conducting the depositions, has been an active participant in all phases of discovery. He has been, indeed, the counsel submitting almost all of the motions and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1994 WL 75055 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

memoranda discussed herein. How we proceed from here can be discussed at a status hearing at 9:45 a.m. on March 16, 1994. It is the court's intention to establish dates for a response and reply to the long-pending motion for summary judgment.

N.D.Ill.,1994.
Vakharia v. Swedish Covenant Hosp.
Not Reported in F.Supp., 1994 WL 75055 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1:90CV06548 (Docket) (Nov. 08, 1990)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.