IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: ) <br> ) <br> W.R. Grace & Co., *et al.,* ) <br> ) <br> Debtors. ) <br> ) <br> ) | In Proceedings for a Reorganization under Chapter 11 <br><br> Case No. 01-01139-JKF <br><br> Hearing: December 5, 2006 at 8:30 a.m. |

**MEMORANDUM OF THE MMWR FIRMS' ASBESTOS CLAIMANTS IN OPPOSITION TO "DEBTORS' NOTICE OF FAILURE TO REACH AGREEMENT AND REQUEST FOR ENTRY OF DEBTORS' PROPOSED PROTOCOL CONCERNING PRODUCTION OF CHEST X-RAYS OF ASBESTOS PERSONAL INJURY, PRE-PETITION CLAIMANTS <u>WITH NON-MESOTHELIOMA, MALIGNANT CLAIMS"</u>**

The MMWR Firms[1] on behalf of their respective asbestos personal injury claimants, and by and through their own counsel, MMWR,[2] hereby submit this Memorandum in Opposition to the "Debtors' Notice of Failure to Reach Agreement and Request for Entry of Debtors' Proposed Protocol Concerning Production of Chest X-Rays of Asbestos Personal Injury, Pre-Petition Claimants with Non-Mesothelioma, Malignant Claims" (hereinafter referred to as "Grace's X-Ray Request" or the "X-Ray Request").

---

[1] For the purposes of this Memorandum, the "MMWR Firms" are defined as follows: (i) Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, A Professional Law Corporation; (ii) Waters & Krauss, LLP; (iii) Hobin, Shingler & Simon, LLP ("Hobin Shingler"); (iv) Paul, Hanley & Harley, LLP; (v) Early Ludwick & Sweeney; (vi) Harowitz & Tigerman; (vii) the Wartnick Law Firm; (viii) Wise & Julian, P.C.; (ix) Rose, Klein & Marias, LLP; (x) Erly & Strauss; (xi) Clapper, Patti, Schweizer & Mason; (xii) Bergman & Frockt; and (xiii) The Grace Certain Cancer Claimants.

[2] The law firm of Montgomery, McCracken, Walker & Rhoads, LLP ("MMWR") represents these noted law firms and, except with respect to the limited representation of "The Grace Certain Cancer Claimants," MMWR does not directly represent any of the individual claimants who are directly represented only by these firms.

2133389v1

**I.      INTRODUCTION**

Grace seeks to compel the production of certain specified original x-rays for eventual delivery to a single "centralized repository" for review and return "to the claimants within three months."  Grace's X-ray Request at p. 3.

Neither the applicable Federal discovery rules nor relevant legal precedent support Grace's request.

In any event, the duration of any retention of original x-rays in any "centralized repository" – if and to the extent ordered by the Court – should be limited to a period of two weeks.

It should be noted at the outset that Grace's proposed Order properly imposes no duty on claimants who rely on evidence other than chest x-rays to show that asbestos exposure caused their cancer.  Grace's proposed Order provides that "[e]ach Claimant alleging an asbestos-related cancer other than mesothelioma…[shall] send to Rust Consulting…the original posterior-anterior view chest x-ray <u>that serves as the basis for the contention that his or her cancer is related to exposure to asbestos</u>."  Grace proposed Order, at ¶ 1, emphasis added.  By limiting the terms of this proposed Order to claimants who are relying on a chest x-ray to support his or her claim, Grace properly <u>excludes</u> from the scope of the proposed Order all claimants who rely on other evidence — such as a pathology report or on a high resolution CT scan — "as the basis for the contention that his or her cancer is related to exposure to asbestos."

Grace's proposed Order also properly does not seek the production of original x-rays "in the possession of Claimant's treating physician."  Grace proposed Order, at ¶1.

-2-

2133389v1

Accordingly, the MMWR Firms' respond only with respect to those claimants who are relying on chest x-rays not in the possession of their treating physician to support their claims that asbestos exposure caused their cancer.

## II. LEGAL ARGUMENT

### A. THE FEDERAL RULES AND APPLICABLE CASE LAW DO NOT REQUIRE THAT ORIGINAL DOCUMENTS BE SENT TO, OR THAT THEIR CUSTODY BE RELINQUISHED TO, AN OPPOSING PARTY

Federal Rule of Civil Procedure 34(a) provides as follows:

Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect and copy, any designated documents…or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served; or (2) to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rule 26(b).

By its plain language, Rule 34(a) allows a party to whom a request for production has been made to maintain "possession, custody or control" of the party's own documents. Nothing in this Rule or any other Federal Rule requires that the party to whom a request has been made must relinquish custody of that party's documents to the opposing party. Significantly, Fed. R. Civ. P. 26 (a)(1)(B) refers to the duty of a party only to provide "<u>a copy of</u> . . . all documents, data compilations, and tangible things that are in the possession, custody, or control of the party . . ." (emphasis added).

-3-

Grace now requests that certain claimants' deliver "the original x-ray" – the very x-ray that forms the basis of their claim against Grace – to Grace's designee, where that x-ray can then be stored for three months in some central repository. Grace offers no compelling reason why original x-rays must be stored in such a central repository for so long. Grace's own convenience is, under the circumstances, not a legally sufficient justification. Claimants, on the other hand, have a demonstrably compelling interest in maintaining custody and/or easy access to their own original x-rays. Specifically, claimants need these x-rays to pursue their claims against Grace and other asbestos defendants. By maintaining custody and/or easy access to these x-rays, claimants can themselves ensure the proper and safe handling of this critical evidence.

The MMWR Firms' Asbestos Claimants have agreed to make their original x-rays available for Grace's inspection; they have not agreed to relinquish custody and control to their adversary for three months.

Courts have routinely permitted inspection, but not production, of originals. See, for example, In re Kolinsky, 140 B.R. 79, 87 (Bankr. S.D.N.Y. 1992); Neuberg v. Michael Reese Hosp. and Med. Ctr., No. 75 C 3844, 1992 WL 477018, at *2 n. 3 (N.D. Ill., Jan. 13 1992). In one case specifically addressing the inspection of x-rays, the court stated that "courts do not generally require that the original copies be turned over to the custody and control of the other party," but instead that "[i]t has generally been deemed sufficient to make documents available for inspection and copying" and that "allowing the original x-rays to be removed from the medical provider would create a risk of unintentional damage or loss to those x-rays." Weaver v. Evans, No. 97-1138-FGT, 1997 WL 833168 at *1 (D. Kan., Dec. 10, 1997).

Grace's reliance on specified Trust Distribution Procedures ("TDP's") from other asbestos bankruptcies is misplaced. None of the referenced portions of the TDP's cited by Grace

-4-

2133389v1

(see Grace's X-Ray Request at p. 2) required claimants to turn over original x-rays to any trust for any period of time, much less for three months.

Grace's reliance on Judge Conti's statement in <u>In re USG Corp.</u> is likewise misplaced. Grace quotes the following statement of Judge Conti: "I'm going to permit the x-rays to be produced." Grace's X-Ray Request at p. 3. (Exhibit H to Grace's X-Ray Request at p. 36). But Judge Conti's Statement is irrelevant to the present circumstances because the MMWR Firms' Asbestos Claimants have agreed to <u>produce</u> original x-rays. The objection is to the <u>delivery</u> of original x-rays to the designee of an opposing party for three months.

Grace's reliance on page 36 of the October 6, 2005 Hearing Transcript in <u>In re USG Corp.</u>, Case No. 01-2094 (D. Del.), is noteworthy because on the page immediately preceding the portion Grace cites, Debtor's counsel Scott Devereux explained to the Court that as to requested "medical records":

> [W]e've pared it down in a way that I identified earlier. <u>Almost nothing from meso claims</u>. . .

Transcript of Hearing at p. 35 (Oct. 6, 2005), copy attached as Exhibit H to Grace's X-Ray Request.

Of course, unlike USG's counsel, Grace's counsel has insisted on monumentally voluminous "medical records" with respect to "meso claims." <u>See</u> Grace's "Motion to Compel the MMWR Firms' Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire."

Grace's X-Ray Request suggests that the production of original x-rays is somehow the ordinary course in litigation. <u>See</u>, X-Ray Request at pp. 3, 6 (citing cases). None of the cases that Grace cites stands for the proposition that production of original x-rays is commonplace. In fact, none of the cited cases even explicitly requires a party's relinquishment of original x-rays to

-5-

an opposing party. Grace cites generally to <u>In re Silica Prods. Liab. Litig.</u>, 298 F.Supp. 2d 563 (S.D. Tex. 2005), in support of the proposition of "establishing [a] repository of original x-rays." X-Ray Request at p. 6. While this opinion discusses x-ray reading procedures at length, nowhere does it make any statement about the production, retention, release, or storage of claimant x-rays.

Grace then cites to <u>Malone v. Med Inn Ctrs. Of Am., LLC</u>, No. 00-CV-0720E(SR), 2004 WL 1080155, at *3 (W.D.N.Y., Apr. 20, 2004). X-Ray Request at p. 6. In <u>Malone</u>, the Court merely stated that the "plaintiff shall provide the following to defendant…any outstanding original radiographic films, x-rays and MRI films…." <u>Malone</u>, 2004 WL 1080155 at *3.

Like the <u>USG Corp.</u> Court, the <u>Malone</u> Court never stated that the party possessing the original x-rays must entrust them to the opposing party for some specified time period.

Production for the opposing party's inspection is what Rule 34(a) requires — not entrustment of originals for three months to some central repository controlled by the opposing party.

Finally, Grace cites to <u>In re G-I Holdings, Inc.</u>, Nos. 01-30135(RG), 01-38790(RG), 2006 WL 2403531, at *23 (Bank. D.N.J. Aug. 11, 2006). X-Ray Request at p. 6. The <u>G-I Holdings</u> Court made no pronouncement regarding the production of original x-rays, but only stated that "any discovery plan must address concerns regarding the handling of any original x-rays or other medical records." <u>In re G-I Holdings</u>, 2006 WL 2403531 at *23.

In short, none of the cases cited in Grace's X-Ray Request actually stands for the proposition that original x-rays are routinely turned over to a requesting party. Indeed, as explained above, courts have routinely protected original x-rays by <u>not</u> requiring parties to relinquish control of them to an opposing party.

The MMWR Firms therefore request that this Court follow established case law and Federal Rules of Civil Procedure 26 (a)(1)(B) and 34 (a) and allow the claimants at issue to produce original x-rays for inspection, but <u>not</u> require the claimants to relinquish custody of original x-rays to Grace, thereby "risk[ing] unintentional damage or loss to those x-rays." <u>Weaver v. Evans</u>, 1997 WL 833168 at *1.

**B.  TO THE EXTENT THAT THE COURT DOES DIRECT ANY CLAIMANTS TO ENTRUST ANY ORIGINAL X-RAY TO GRACE, THE MMWR FIRMS' ASBESTOS CLAIMANTS REQUEST THAT GRACE'S POSSESSION OF ANY INDIVIDUAL X-RAY BE LIMITED TO A TWO-WEEK PERIOD**

Grace proposes to retain original x-rays in a central repository for a three-month period. Grace's proposed Order, at ¶¶ 2-4.

To the extent that the Court decides to require any claimants to deliver any original x-rays to Grace, the MMWR Firms request a protocol that involves the production of original x-rays on a rolling basis such that no original x-ray is in Grace's possession for more than two weeks. Certain claimants may need their original x-rays either for continuing treatment or for other litigation. Grace's X-Ray Request states that:

> Grace and the Claimants can work together to establish procedures for the immediate return of any specific x-ray should it be needed for actual clinical or medical treatment.

Grace X-ray Request at p. 7. Grace's apparent reasonableness in offering to "work together to establish procedures for the immediate return of any specific x-ray should it be needed for actual clinical or medical treatment" ignores the fact that there may be circumstances where such original x-rays should not be delivered to Grace's designee in the first place. There

must be provision in any protocol to make certain that the ongoing medical treatment of claimants will have first priority.

Moreover, Grace's X-ray Request makes no comparable commitment on Grace's part to "work together to establish procedures for the immediate return of any specific x-ray should it be needed" for <u>litigation</u> purposes by a claimant.

For claimants that are estates and not living individuals, a litigation purpose is all that the families have left. No principled basis exists for Grace to relegate litigation needs to second-class status.

Two weeks is sufficient time for Grace to review and analyze any one x-ray. The key to the protocol is producing, and then returning, all original x-rays on a rolling basis, rather than allowing Grace to keep all x-rays for a three-month period.

### C. GRACE MUST SUFFER THE CONSEQUENCES IF ANY ORIGINAL X-RAY IS LOST

If the Court requires the production of any original x-rays at Grace's request, then Grace must also bear the consequences for any loss of an original x-ray.

As a starting point, if any original X-ray is lost, damaged, or destroyed while in Grace's possession, that claimant must be entitled to an adverse inference against Grace, and/or against any Trust created in connection with the Grace bankruptcy. <u>See, for example, Schmid v. Milwaukee Elec. Tool Corp.</u>, 13 F.3d 76, 78 (3d Cir. 1994) (quoting Jamie S. Gorelick, Steven Marzen and Lawrence Solum, *Destruction of Evidence,* § 2.1 (1989)) ("Since the early 17th century, courts have admitted evidence tending to show that a party destroyed evidence relevant

to the dispute being litigated… permit[ting] an inference, the 'spoliation inference,' that the destroyed evidence would have been unfavorable to the position of the offending party.")

In addition, if any claimant's original x-ray is lost, damaged, or destroyed while in Grace's possession, that claimant must also be entitled to pursue a damage claim against Grace, and must be provided with an administrative claim for the amount of any proven damage.

### D.  GRACE'S PROPOSED ORDER DOES NOT INCLUDE VARIOUS PROTECTIONS THAT GRACE COMMITS TO IN ITS X-RAY REQUEST

The following commitments are referenced in Grace's X-Ray Request, but are not included in Grace's proposed Order:

- "Grace agreed to … pay the reasonable costs incurred in obtaining and transmitting the original x-rays."  Grace's X-ray Request at p. 4.  The quoted language is Grace's description of what it "agreed" to do in its "discussions" with certain claimants' counsel.  Presumably, Grace should be prepared to honor this same agreement in the context of any Court ordered production of original x-rays.  However, Grace's proposed Order includes no provision for any payment by Grace of "reasonable costs incurred in obtaining and transmitting the original x-rays."

- "Grace and the claimants can work together to establish procedures for the immediate return of any specific x-ray should it be needed for actual clinical use or medical treatment."  Grace's X-ray Request at p. 7.  Grace's proposed Order has no reference to the creation of any such procedures.

If and to the extent that the Court agrees to grant any relief as requested by Grace, then all of the foregoing commitments referenced in Grace's X-Ray Request should be explicitly included in that Order.

**III.     CONCLUSION**

For the foregoing reasons, the MMWR Firms' respectfully request that the Court deny Grace's X-Ray Request.

Dated: December 1, 2006               MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP

By:      /s/ Noel C. Burnham
Noel C. Burnham, Esquire (DE 3483)
Natalie D. Ramsey, Esquire (PA only)
Leonard A. Busby, Esquire (PA only)
300 Delaware Avenue, Suite 750
Wilmington, DE 19801
(302) 504-7800
(302) 504-7820 (facsimile)

and

123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500
(215) 772-7620 (facsimile)

Attorneys for the MMWR Firms