## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |

## CONSOLIDATED REPLY IN SUPPORT OF MOTIONS TO COMPEL ASBESTOS PERSONAL INJURY CLAIMANTS TO RESPOND TO THE W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRE

In the interest of economy, W.R. Grace & Co. ("Grace") files this Consolidated[1] Reply Memorandum in support of its Motions to Compel the Claimants represented by various law firms.[2]

## I.    THE CLAIMANTS' FUNDAMENTAL FAILURE: (1) TO STATE CLAIMANT SPECIFIC FACTS; AND (2) TO FACTUALLY SUPPORT GENERAL LEGAL CONTENTIONS.

In responding to the Motions to Compel, the Claimants resisting discovery have the express burden "to clarify and explain precisely why [their] objections are proper given the broad

---

[1] Grace will file a separate, short Reply to the ACC's pleading on this issue.

[2] Grace has moved to compel the Claimants represented by the following law firms: (1) Baron & Budd P.C.; (2) LeBlanc & Waddell; (3) Silber Pearlman LLP; (4) Hartley & O'Brien, PLLC; (5) Provost Umphrey L.L.P.; (6) Law Offices of Peter G. Angelos, P.C.; (7) Kelley & Ferraro L.L.P.; (8) Ferraro & Associates, P.A.; (9) Law Offices of James F. Humphreys & Associates, L.C.; (10) Goldberg Persky & White P.C.; (11) Michael B. Serling, P.C.; (12) Morris, Sakalarios & Blackwell, PLLC; (13) Cooney & Conway; (14) Edward O. Moody, P.A.; (15) Foster & Sear L.L.P.; (16) Motley Rice LLC; (17) Williams Bailey Law Firm, L.L.P.; (18) Thornton & Naumes LLP; (19) Alwyn H. Luckey, P.A.; (20) Lipsitz & Ponterio, LLC; (21) Kazan, McClain, Abrams, Fernandez, Lyons, Farrise, & Greenwood, A Professional Law Corporation; (22) Waters & Kraus, LLP; (23) Hobin, Shingler & Simon LLP; (24) Paul, Hanley & Harley LLP; (25) Early Ludwick & Sweeney; (26) Harowitz & Tigerman; (27) The Wartnick Law Firm; (28) Weitz & Luxenburg, P.C.; (29) SimmonsCooper LLC; and (30) Wilentz, Goldman & Spitzer, P.A.

In separately filed Notices, Grace has withdrawn its Motions to Compel with regard to the Claimants represented by Lipsitz & Ponterio, LLC and the Claimants represented by SimmonsCooper LLC.

Responsive briefs have been filed by the majority of the remaining law firms. However, to date, no response has been filed by the Claimants represented by the Law Offices of James F. Humphreys & Associates, L.C. or by the Claimants represented by Edward O. Moody, P.A.

and liberal construction of the federal discovery rules." *United Oil Co. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 411 (D. Md. 2005); *see also Fidelity and Deposit Co. of Maryland v. McCulloch*, 168 F.R.D. 516, 520 (E.D. Penn. 1996) (recognizing that, "Plaintiff, as the party resisting discovery, bears the burden of persuasion on its objections"). They failed to discharge their burden in two key ways. First, the Court instructed that Claimants articulate reasons particular "to an *individual's* circumstance or claim." They have now had the opportunity to come forward. Indeed, when Grace attempted to resolve certain objections on a global basis, the Claimants and their counsel protested, demanding that *individual* objections on behalf of *individual* Claimants be addressed in an *individual* manner on specific facts. The Court thus gave the Claimants this opportunity to meet their burden of persuasion as to their *individual* objections. Yet, now, when afforded that opportunity, the Claimants wholly fail to meet it. Without exception, and despite their insistence that Grace file motions to compel as to *individual* Claimants, *not one firm* has responded with a single fact or circumstance particular to an identifiable claimant.

Second, the Claimants have failed to discharge their burden by stating broad legal principles without providing specific factual support. In some instances, the Claimants do not even bother to respond to Grace's challenges to their objections.[3] In others, the Claimants recite

---

[3] *See generally* Goldberg Persky Objection to Debtors' to Compel ("Goldberg Persky Mem.") (Nov. 27, 2006) (Docket No. 13803) (failing to address Grace's challenge to their objection to Question 6 in Part VII, Section A, relating to settlements of asbestos- and silica-related litigation, on the grounds of "controlling state law"); MMWR Firms' Opposition to Debtors' Motion to Compel ("MMWR Br.") (Nov. 28, 2006) (Docket No. 13812) (failing to address Grace's challenge to their objection to Part V, relating to non-Grace asbestos exposure, on the grounds of privacy); Combined Response of Foster & Sear LLP, Williams Bailey Law Firm LLP, Law Offices of Peter G. Angelos, P.C., Provost Umphrey Law Firm, LLP, Baron & Budd, P.C., Silber Pearlman, LLP, and LeBlanc & Waddell, LLP to the Debtors' Motions to Compel ("Joint Response") (Nov. 27, 2006) (Docket No. 13805) (failing to address Grace's challenges to their objections on the grounds of "work product privilege" to Question 1 in Part II, relating to the bases for their diagnoses, and to Question 6 in Part VII, Section A, relating to settlements of asbestos or silica-related litigation); Joinder of Morris Sakalarios & Blackwell, PLLC to Joint Response ("Morris & Sakalarios Mem.") (failing to address Grace's challenges to the Morris & Sakalarios Claimants' objections to Part V, relating to non-Grace asbestos exposure, on the grounds that Grace failed to provide necessary discovery and objections to Parts V and VII, relating to non-Grace

legal boilerplate or make passing references to objections but fail to offer any substantive defense of or factual support for their objection.[4]

In many instances, the Claimants are quite willing to engage in broad debates over legal principles, such as the importance of the attorney-client privilege or the desire to encourage settlements of claims, but they remain entirely reticent when it comes to identifying specific facts that support their objections.    At no time do they offer facts particular to an *individual's* circumstances or claims as ordered by the Court.    Without such factual support, the Claimants cannot meet their burden of persuasion in justifying their refusals to respond to the Questionnaire or to withhold information the Court already has found to be relevant and discoverable.    For this reason alone, as well as for all the reasons expressed below and in Grace's opening motions, the Motions to Compel should be granted.

## II.    TERMS OF OTHER FINAL SETTLEMENTS: THE CLAIMANTS HAVE FAILED TO ESTABLISH THAT THIS EVIDENCE SHOULD BE PROTECTED FROM DISCOVERY.

As the Court is well aware, Grace asked for final terms of other settlements entered into by these same Claimants because it believed the Claimants entered into inconsistent settlements and that the amount of money they received in the settlements are germane to their claims here. Critically, what we asked for were terms of final settlements that these same Claimants had

---

asbestos exposure and to asbestos- and silica-related litigation and claims, on the grounds that these questions exceed the limits on interrogatories set by the Federal Rules); Opposition of Alwyn H. Luckey, P.A. to the Debtors' Motion to Compel ("Alwyn Luckey Mem.") (Nov. 27, 2006) (Docket No. 13801) (failing to address Grace's challenges to their objections on the basis of relevance to Part V, relating to non-Grace asbestos exposure, Question 4 in Part VII, Section A, relating to asbestos- and silica-related litigation, and Part VII, Section B, relating to asbestos- and silica-related claims).

[4]    *See, e.g.,* Joint Response of Kelley & Ferraro, LLP and the Ferraro Law Firm to Debtors' Motion to Compel ("Kelley & Ferraro Mem.") (Nov. 27, 2006) (Docket No. 13796) at 3 (referencing but not discussing or defending their objection on the grounds of Fla. Stat. § 90.408 to Questions 5 and 6 in Part VII, Section A and to Question 6 in Part VII, Section B, relating to settlements of asbestos- and silica-related litigation and claims); Alwyn Luckey Mem. at 2-5 (referencing but not discussing or defending their objections on the grounds of relevance to Question 3 in Part I, Section A, regarding the Claimants' race, and to Question 6 in Section VII, Section A, regarding settlements of asbestos- and silica-related litigation).

entered into on grounds of similar exposure histories and similar medical conditions. It defies imagination that Plaintiffs who place their medical conditions at issue in this bankruptcy and intend to file claims for money from the Trust established at the conclusion of the bankruptcy somehow can avoid providing this evidence. The Claimants here are not third parties seeking to protect final settlements in unrelated litigation. These Claimants are *volunteers* who have put their medical conditions at issue are actively litigating against Grace the same claims for which they have settled with other defendants. As such, Grace is entitled to probe the terms of those final settlement agreements.

These firms resisting this discovery completely ignore that the Court already has found that threshold information regarding previous settlements is relevant. *See* Tr. of Hr'g at 282 (Jul. 19, 2005) (overruling objections and ordering the Claimants to "identify the defendants with whom [the Claimants] settled, the amount, and for what disease"). This information about settlement amounts and diseases at issue in prior settled cases is highly relevant to the value assigned to claims in the estimation, where set-off and double recovery issues will clearly affect the size of future awards. *See, e.g., White v. Kenneth Warren & Sons*, 203 F.R.D. 364, 368 (N.D. Ill. 2001). Such evidence also may lead to the discovery of other admissible evidence, such as evidence that exposures to non-Grace asbestos products caused a Claimant's condition or evidence that Claimants have made claims in this litigation inconsistent with claims made in other cases they have settled. As demonstrated below, Claimants' objections to this limited discovery should be overruled.

A.    **Grace Has Not "Conceded" That Settlement Information Is Irrelevant.**

Certain Claimants argue that Grace should not be provided with basic settlement information because "Grace has conceded that information about the amounts of claimants' settlements in lawsuits is irrelevant to the issues in this estimation proceeding." Joint Response

4

at 31. Grace has done no such thing. In both its prosecution and defense of this case, Grace has maintained a consistent and legally-principled position with regard to its prior settlements: the basic terms of final settlements, including the parties thereto and the amounts thereof, are discoverable and potentially relevant to limited aspects of this estimation proceeding (*e.g.*, claim value), but the other documents and communications regarding the evaluation of claims, the basis for deciding to settle a claim, and the negotiations of such settlements are wholly irrelevant to this proceeding, clearly invade attorney-client privileged communications and attorney work product, and have not been shown to have any potential use other than those barred by Fed. R. Evid. 408. *See* W.R. Grace & Co.'s Opposition to Motion of the Official Committee of Asbestos Personal Injury Claimants to Compel Production of Documents ("Response to ACC MTC") (Nov. 22, 2006) (Docket No. 13772) at 5-8, 16-23. As a result, in addition to its CMS database on settlements, Grace has produced hundreds of boxes of information relating to the parties and amounts of its previous personal injury settlements.[5]

Grace's legally-principled approach to settlement discovery is contrasted by that advocated by the personal injury Claimants. Unlike Grace, Claimants take diametrically opposed positions on the discoverability of settlement information, depending on the result they are hoping to achieve. The Claimants use their Committee to argue that Grace should be compelled to produce not only its final settlement agreement information but also all of its settlement negotiations, internal communications, and confidential evaluations of *individual* claims on the grounds that such information is relevant to this estimation proceeding and not

---

[5]    Certain firms suggest that Grace should be judicially estopped from pursuing this discovery because of a purported "flip-flop." *See* Joint Resp. at 28 and fn. 23. This argument is frivolous. As demonstrated, Grace has consistently drawn a principled distinction between objective settlement information, which is clearly and unquestionably discoverable, and settlement negotiations and internal deliberations, which clearly and unquestionably are not discoverable.

protected from disclosure by the Federal Rules.  At the same time, the *individual* Claimants refuse to produce even the basic terms (*e.g.*, parties, conditions or diseases included, and amounts) regarding their previous settlements on the grounds that settlement agreements, and any and all information relating to settlement agreements, should never be discoverable.  Such blatant gamesmanship cannot be allowed.

**B.      Public Policy Considerations Do Not Bar the Discovery of Basic, Objective Settlement Information.**

The Claimants cite public policy-type considerations (such as those embodied in Fed. R. Evid. 408) to argue that the discovery of any and all information concerning settlements is barred.  For example, the Thornton & Naumes Claimants argue that the general public interest in settlement agreements and the need to maintain confidentiality of such agreements in order to encourage more parties to enter into settlements are sufficient to justify their refusal to respond to Grace's requests for basic information regarding the terms of Claimants' previous settlements. They rely on *Hasbrouck v. BankAmerica Housing Servs.*, 187 F.R.D. 453 (N.D.N.Y. 1999), where the Court considered whether the plaintiff had demonstrated good cause sufficient to justify the issuance of a protective order to preclude discovery of a confidential settlement with a third party.  This argument, and the reliance on *Hasbrouck* as justification for their argument, is misplaced because the Claimants have neither sought a protective order from the Court, nor have they attempted to meet the good cause standard required for such a protective order -- nor could they given the Court's previous orders.

**C.      The Existence of Confidentiality Agreements Does Not Bar Disclosure of Basic Settlement Information Pursuant to a Valid Court Order.**

In their Responses, the Claimants argue that, as a general matter, the terms of their asbestos- and silica-related settlements should not be discoverable because they are protected by confidentiality provisions in alleged settlement agreements. *See, e.g.,* Joint Response at 25-26

6

("Claimants have objected to providing this information as to settlements attended by confidentiality undertakings."). These blanket assertions are utterly devoid of any facts that would allow the Court to determine whether such agreements exist, even though Claimants have had ample opportunity to allege such facts. The Claimants have not even deigned to submit a sample settlement agreement -- or a clause from such an agreement -- to establish that there are confidentiality provisions contained therein. Instead, the only "support" provided by any of the Claimants' law firms is phrased in terms of the *firms'* general practices, instead of facts specific to any *Claimant's* or group of Claimants' claim. *See, e.g.*, Declaration of Natalie Duncan at ¶ 6 (Nov. 27, 2006) (attached as Exhibit E to Joint Response) ("When our clients reach settlements with defendants regarding asbestos claims, the settlements are *usually* memorialized in writing. *In many cases*, the settlements contain a requirement that the parties keep the terms, conditions or the amounts of the settlements confidential.") (emphasis added); Declaration of Armand J. Volta, Jr. at ¶ 6 (Nov. 22, 2006) (attached as Exhibit D to Joint Response) (same). Accordingly, the Court should overrule their objection on this ground alone. *See* Order Concerning Debtors' Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Personal Injury Questionnaire ('MTC") (Oct. 12, 2006) (Docket No. 13393) at ¶ 1.

Further, in its Motions to Compel, Grace extensively addressed the Claimants' legal misapprehension that the mere existence of a confidentiality agreement immunizes settlement information from discovery and thus will not repeat those arguments here. *See, e.g.,* Motion to Compel the MMWR Firms Asbestos Personal Injury Claimants ("MMWR MTC") (Nov. 17, 2006) (Docket No. 13703) at 15-16. But in their Responses on this issue, the Claimants completely ignore the fact that most settlement agreements expressly provide for the disclosure of the terms of those settlements pursuant to a valid order issued by a court of competent

7

jurisdiction. No Claimant even attempted to allege that the supposed confidentiality agreements at issue do not contain such an exception.

### D. There Is No Right to Privacy That Immunizes Settlement Terms From Discovery.

The MMWR Claimants argue that the settlement information is not discoverable due to privacy interests. In their response, they state that *Hinshaw, Winkler, Draa, Marsh & Still v. Superior Court*, 51 Cal. App. 4th 233, (Cal. App. 6th Dist. 1996) bars the discovery of such information and that the *Volkswagen* case relied on by Grace, *Volkswagen of America, Inc. v. Superior Court of San Francisco*, 139 Cal. App. 4th 1481 (Cal. App. 1st Dist. 2006), is distinguishable. Contrary to the MMWR Claimants' assertion, the *Volkswagen* case is exactly on point for the reasons stated in Grace's Opening Brief. *See* MMWR Br. at 19-20. As in the *Volkswagen* case, the settlement information being withheld by the MMWR Claimants "bears on the very same issue[s]" in contention in this litigation -- namely, the value and amount assigned to claims, and causation of the alleged disease. *Volkswagen* demonstrates conclusively that California state privacy interests do not bar discovery of the amounts and terms of settlements between the MMWR Claimants and other asbestos and silica defendants.

Further, the MMWR Claimants' reliance on *Hinshaw* is misplaced. The privacy rights at issue in *Hinshaw* -- those of settling individual plaintiffs who were not parties to the subsequent litigation -- are inapplicable here. *See Hinshaw*, 51 Cal. App. at 241-242. Grace seeks information directly from the *individual* Claimants who entered into the previous settlement agreements and are asserting claims against Grace -- often for the same injury. Moreover, to the extent that *Hinshaw* stands for anything beyond the need to protect third-party rights, it was limited by *Volkswagen* to "sexual or psychiatric histories." *See Volkswagen*, 139 Cal. App. 4th at 1492. Consequently, the MMWR Claimants' privacy objection should be overruled.

DOCS_DE:123217.1

Finally, MMWR Claimants argue that *Volkswagen* is distinguishable because it involves a "trial" and the case before this Court is an "estimation." This is a distinction without meaning. This proceeding is a trial -- an estimation trial. The issues include Grace's "liability" for personal injury asbestos claims and the value of the claims for which it is liable. The Court already has ruled that the settlement information requested by Grace in the Questionnaire is relevant to the potential values of those claims. *See* Tr of Hr'g at 282-83, (Jul. 19, 2005). Additionally, while settlements with other defendants are not admissible to show that Grace is *not* liable or that other defendants are, they are likely to lead to the discovery of admissible evidence, namely, that another defendant's product was the actual cause of the Claimant's disease.

## III. THE CONSULTING EXPERT PRIVILEGE CANNOT BE USED AS A CLOAK TO CONCEAL DISCOVERABLE FACTS AND THE SYSTEMATIC EXPLOITATION OF MASS SCREENERS TO SKEW AND MISREPRESENT THE CONDITION OF THE CLAIMANTS.

As reviewed in Grace's Status Report on Non-Party discovery, Grace has, since the beginning of the case, called into question the reliability of mass screening and the "medical data" that come from them. Over the intervening years, it has become well-established outside this case, that mass screenings are used to foist unreliable and skewed medical evidence on the claims administration process. Recent discovery, in this case, has confirmed that these problems pervade and infect claims offered up in this case. The Questionnaires are designed specifically to (a) uncover the full spectrum of underlying medical facts, and (b) establish those claims that are being put forth through this unfortunate and improper version of today's quack medicine. Amazingly, the response from the plaintiffs' bar is to throw a cloak over this whole unfortunate world through a cynical and legally unfounded invocation of important privileges. This effort must fail.

9

It is *unquestionable* that certain categories of documents and evidence are not encompassed by the consulting expert privilege. Thus, to the extent that the Claimants are purporting to withhold such documents or information on the basis of a consulting expert privilege, the privilege simply does not apply and the objection should be overruled. Those categories of documents and information that are clearly not subject to, or protected by, the consulting expert privilege are:

- All information concerning a Claimant that was prepared by, provided to, or considered by a doctor who has been disclosed by the Claimant in his or her Questionnaire response, including materials prepared by non-testifying experts and considered by the disclosed doctor.

- Medical tests related to the condition alleged by the Claimant that were contemporaneous or subsequent to the Claimant's diagnosis with the alleged condition (*i.e.*, x-rays, PFTs, pathology samples, etc.), and/or after the filing of the complaint against Grace, or, if not available, results, and reports of those tests.

- Information in the possession of the Claimant's treating physician relating to the alleged condition.

- Information critical to demonstrating the systematic abuse of the screening process and several problems with the medical data offered in support claims.

## A.    Disclosed Doctors And The Materials They Considered

First, it is textbook law and simple common sense that any and all information prepared by, provided to, or considered by the doctors disclosed in a Claimant's Questionnaire response is not privileged. *See, e.g.,* Fed. R. Civ. P. 26(a)(1) (requiring disclosure of all documents and information that a party uses to support its claim); Fed. R. Civ. P. 26(a)(2) (stating that a party must disclose, *inter alia*, "the basis and reasons [for a testifying expert's opinion]" and "the data or other information considered by the [expert] witness in forming the opinions"). Accordingly, in addition to producing the information from the disclosed doctor, if the disclosed doctor relied on a B-reading, PFT, or physical examination report prepared by another doctor who is not disclosed by the Claimant, those documents and the identities of the other doctors also must be

produced to Grace. *See United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995) ("When counsel forwards documents prepared by a non-testifying consultant to a testifying expert, they become discoverable."); *Johnson v. Gmeinder*, 191 F.R.D. 638, 647 (D. Kan. 2000) ("[A]ny type of privileged material, ***including materials or documents prepared by a non-testifying expert***, lose their privileged status when disclosed to, and considered by, a testifying expert.") (emphasis added).    It is clear that some Claimants have, at this point, withheld documents that their disclosed physicians relied on in forming their opinions.    For example, a Motley Rice Claimant submitted a Questionnaire that attaches a 2003 diagnostic report rendered by a Dr. Wayne Middendorf that relies on a chest x-ray "dated January 14, 2003 interpreted by Dr. James W. Ballard."    However, the Claimant does not attach Dr. Ballard's interpretation. *See* Questionnaire of B.T. at WR GRACE PIQ 52093-0026 (attached as Exhibit A).    Such underlying information and documents must be produced.

## B.    Medical Tests Of Claimants.

Medical tests related to the condition for which the Claimant has sued Grace and will seek recovery from the Section 524(g) trust are not privileged and must be disclosed.    As discussed in Grace's Motions to Compel, while communications, mental impressions or opinions may be privileged, objective facts are not. *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981); *Leonen v. Johns-Manville*, 135 F.R.D. 94, 96 (D.N.J. 1990).    This principle extends to the facts that underlie reports prepared by a non-testifying expert. *See Terre Haute Warehousing Serv., Inc., v. Grinnell Fire Protection Sys. Co.*, 193 F.R.D. 561, 566 (S.D. Ind. 1999) ("Rule 26(b)(4)(B) applies to facts known and opinions held directly by the non-testifying expert himself and does not independently reach any ***documents or things*** consulted or collected by the expert, such as witness statements.") (emphasis added); *Aptargroup, Inc. v. Owens-Illinois, Inc.*, 2003 WL 21800083, at *2 (N.D. Ill. Jul. 25, 2003) ("Facts acquired by an expert

11

may be discoverable even if they are contained in a non-discoverable document."). And, it is clear that the Claimants cannot immunize otherwise discoverable information simply by showing it to a consulting expert. *See Chiquita Int'l Ltd. v. M/V Bolero Reefer*, 1994 WL 177785, at *2 (S.D.N.Y. May 4, 1996) (finding that "information does not become exempt from discovery merely because it is conveyed to a non-testifying expert"); *see also Fleet Nat'l Bank v. Tonneson & Co.*, 150 F.R.D. 10, 15 n.6 (D. Mass. 1993) ("[L]itigants cannot use the work product privilege to shield facts which their adversaries are entitled to know.").

To the extent that the evidence of these facts -- *i.e.*, the x-rays and PFT tests -- has been lost, no longer exists, or no longer is obtainable by the Claimant, and the only remaining evidence of the tests is the consulting expert's interpretations or reports concerning them -- that is the *classic* exceptional circumstance that requires disclosure of the consulting expert's report. *Braun v. Lorillard, Inc.*, 84 F.3d 230 (7th Cir. 1996), cert denied, 519 U.S. 992 (1996), is directly on point. In *Braun*, where the pathology sample of a mesothelioma plaintiff had been destroyed as a result of the testing performed by plaintiff's non-testifying expert, the Court found that the defendants were entitled to the test results because, *in the absence of the actual sample*, the test results provided the best evidence of the plaintiff's condition. *See id.* at 236. So too here. Grace is entitled to non-testifying consultants' interpretations of the tests or reports of the tests if the Claimant is unable to produce the underlying tests themselves. As this Court and others have recognized, this is particularly true and important where potentially exculpatory evidence is at issue. *See* Tr. of Hr'g at 233 (Jul. 19, 2005). Thus, contrary to the Claimants' assertions, Grace is not seeking to carve out an all-encompassing exception to the consulting expert privilege, but rather is seeking that the Court order Claimants to produce documents that fall squarely into the already well-established exception to the privilege, where applicable. Accordingly, there is no

12

interpretation of the consulting expert privilege that shields medical tests related to a Claimant's medical condition. All x-rays, PFTs, or other medical tests conducted contemporaneously with, after a diagnosis, or after the filing of the law suit must be provided.[6]

### C.    Treating Physician Information.

Information in the possession of the Claimants' treating physicians must be produced and may not be protected by the consulting expert privilege. *See Gomez v. Rodriguez*, 344 F.3d 103, 113 (1st Cir. 2003) ("[C]ourts have followed the advisory committee's lead and ruled that a treating physician, testifying as to his consultation with or treatment of a patient, is not an expert witness for purposes of Rule 26."); *Harasimowicz v. McAllister*, 78 F.R.D. 319, 320 (E.D. Pa. 1978) (holding that the rules preventing disclosure of consultant expert witness information do not apply to the expert whose "information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to the transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness."); *Congrove v. St. Louis-San Francisco Railways Co.*, 77 F.R.D. 503, 504-5 (W.D. Mo. 1978) (finding that treating physician is subject to ordinary discovery).

---

[6]    Interestingly, many Claimants appear to be offering diagnostic reports that post-date the filing of their law suits. *See* Questionnaire of B.T. at WR GRACE PIQ 52093-0026. Grace obviously has no quarrel with the provision of such information. However, all of these Claimants sued Grace prior to April of 2001 and alleged *at that time* that they had an asbestos-related disease. Thus, even if they now are relying upon a subsequent "diagnosis" by another doctor, Grace clearly is entitled to the medical information that allegedly provided the basis for the law suit to begin with, and any medical tests that occurred after the filing of the law suit. To the extent that they have no medical data or evidence to support their claims that they had an asbestos-related disease at the time the law suit was filed, not only is that sanctionable, but it is also evidence relevant to the credibility of their current "diagnosis."

Grace wants to make clear that by this argument it in no way is implicating the credibility of any individual Claimant. Quite the opposite. To the extent a Claimant was led to believe they had an asbestos-related disease previously -- and did not -- that is an injustice to those Claimants. *See In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 636 (S.D. Tex. 2005) ("[I]t should not be forgotten that a misdiagnosis potentially imposes an emotional cost on the Plaintiff and the Plaintiff's family that no court can calculate.").

**D.    Information Critical To Demonstrating the Systematic Abuse Of The Screening Process And Several Problems With The Medical Data Offered In Support Claims.**

As the Court is well aware, Grace has maintained from the inception of this bankruptcy that unreliable diagnostic and screening processes have resulted in unreliable medical data offered in support of asbestos claims.  Grace's *Status Report on Non-Party Discovery*, which Grace filed today, previews for the Court what we are beginning to learn about these practices as they relate to the asbestos claims brought against W. R. Grace.  For example, in this case, Grace has determined that:

- Grace asbestos claimants have undisclosed subsequent or intervening negative x-ray reports indicating that their diagnoses of asbestos-related disease may be unreliable.

- Claimants or their attorneys have been shopping negative x-rays, searching for doctors who will provide positive findings in order to support claims.

- Numerous Grace claimants have brought claims both for asbestosis and silicosis, often based on the same x-ray despite that dual occurrence in a single individual of both silicosis and asbestosis is believed to be a clinical rarity.

- The testimony of doctors who have been deposed in this bankruptcy case has been revealed that doctors who have participated in this medical-legal screening process do not follow accepted medical practices in rendering diagnoses.

- Doctors with litigation based screening practices do not perform differential diagnoses to rule out other, non-asbestos causes of disease, do not take their own occupational and exposure histories from claimants, and do not conduct physical examinations before diagnosing disease.

- Screening doctors and litigation-based B-readers rely on clerical staff to translate their notes, generate their reports, and stamp their names to the reports, and frequently fail to review their reports themselves.

- Screening companies and law firms gave doctors instructions and/or criteria for their diagnoses and reports that the doctors duly followed.

- Doctors with litigation-based practices frequently fail to retain any claimant materials, leaving the only source for crucial medical records to be the law firms themselves.

- Lawyers and claimants are selectively omitting or concealing evidence that does not support their claims or that would raise questions about the reliability of the underlying medical diagnoses.

*See* Status Report on Non-Party Discovery (Dec. 1, 2006).

The Questionnaires are the only way for Grace to trace those problems to *individual* claims and to determine the magnitude of the impact of these problems on the Grace claims. Accordingly, plaintiffs' firms should not be permitted to shield evidence of exculpatory medical data, nor evidence of fraud, or fraudulent or unreliable medical practices, nor should they be permitted to perpetuate any of those practices in the discovery phase of this estimation trial under the cloak of the consultant's privilege. *See id.*

## IV.    THE CLAIMANTS HAVE NOT ESTABLISHED THAT THE INFORMATION REQUESTED IS PROTECTED BY EITHER THE ATTORNEY-CLIENT PRIVILEGE OR THE ATTORNEY WORK PRODUCT DOCTRINE.

Another prong of the medical screening machine is that the screeners are tied to the law firms and have huge financial incentives to cooperate in fostering the prosecution of thousands of claims. The Claimants are shuttled through the system, not through their own choices in doctors but through the choices of the long-involved asbestos lawyers. Grace seeks to find out where Claimants go and when and what the relationships are. Grace does not seek to discover legal strategy, rather the manner in which the Claimants are moved through the system. The Court previously recognized Grace's legitimate attempts to discover information on this issue by specifically approving the limited questions on these issues in the Questionnaires.

The Claimants now assert that these questions "are essentially asking for the motivation behind Claimants' initiation of individual lawsuits and for disclosures that may relate to legal strategy or advice that counsel offered based upon Claimants' individual circumstances and

concerns." [7]  Opposition to Debtors' Motion to Compel Thornton & Naumes LLP ("Thornton Mem.") (Nov. 27, 2006) (Docket No. 13800) at 4.  This argument blatantly mischaracterizes the questions that are asked in the Questionnaire -- questions that were challenged by the PI Committee and then *specifically rephrased by this Court. See, e.g.*, Tr. of Hr'g at 254 (Jul. 19, 2005) (The Court: "I think it's fine if you say, 'Are you aware of a relationship between your counsel and your doctor, and if so, what is it?'").  The questions require answers that do not reveal any communications between the client and counsel, but rather *actions* taken by Claimants and *facts* known by Claimants.  Neither are protected by the attorney-client privilege.[8]

The bottom line is this: attempts to cloak relevant factual information in the protections of the attorney-client privilege without any articulated bases for doing so are unavailing.  It is the Claimants' burden to provide sufficient evidence to establish the applicability of the attorney-client privilege.  *See In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 187 (D.N.J. 2003) ("The party asserting the privilege bears the burden of establishing those facts that are the essential elements of the privileged relationship.").  Having failed to offer any facts to support or analyze the merits of this objection or any reason why the *facts* requested in the Questionnaire concerning the relationship between the firms and the doctors should not be disclosed, their objection should be overruled.

---

[7]    These Claimants include Cooney & Conway, Thornton & Naumes, Motley Rice, Morris Sakalarios, & Blackwell, The Wartnick Law Firm, Weitz & Luxemborg, and Wilentz Goldman & Spitzer, as well as the Esserman and MMWR firms.

[8]    The Claimants also argue that, to the extent the answers would reveal the attorney's "mental impressions," the work product doctrine would excuse the Claimants from responding. Joint Resp. at 22. For the same reasons discussed herein, this claim must fail.

## V.    THE CLAIMANTS' RELEVANCE AND BURDEN OBJECTIONS ARE WITHOUT MERIT, INSUFFICIENTLY SUPPORTED, AND SHOULD BE OVERRULED

### A.    The MMWR Claimants' Relevance Objections Have Been Overruled by the Court and Prematurely Raise Arguments Regarding Ultimate Issues.

Even in their response, despite the opportunity to do so, the MMWR Claimants did not raise any *individual* and specific relevance objections but instead made their familiar and sweeping argument that certain discovery sought as to mesothelioma claims is irrelevant as a matter of law. The MMWR Claimants contest the general relevance of medical information: (1) regarding diagnosis, chest x-ray results and readings, and pulmonary function tests, *see* MMWR Br. at 3-5; (2) information regarding non-Grace asbestos exposures, *see id.* at 10-13; and (3) information regarding other lawsuits and claims, *see id.* at 15-18.

In all three cases, either the Court has already ruled that the discovery Grace seeks is relevant -- *see* Tr. of Hr'g at 207 (Sept. 11, 2006) (information relating to non-asbestos exposures); Tr. of Hr'g at 206-07 (Sept. 11, 2006) (information regarding other lawsuits and claims) -- or the Claimants seek a premature ruling on the merits of their claims. For example, the Claimants argue that diagnostic information other than pathology is not absolutely necessary in 99% of cases, and that exposure to any Grace asbestos, even one fiber, is sufficient to prove causation.[9] Both of these positions, however, depend upon expert testimony for support, and Grace's experts disagree with the Claimants' experts. Any ruling on the substance of the

---

[9]    Grace does not dispute that pathology reports are sufficient if they are conducted by competent pathologists, using state-of-the-art technology, at a qualified hospital. But the pathology reports Grace actually will be receiving do not meet these standards. *See* MMWR MTC at 9-11. Indeed, as Dr. Hammar himself recognizes, pathology information alone is not sufficient to provide a diagnosis in a large number of cases. *See* Affidavit of Samuel P. Hammar (Nov. 22, 2006) (attached as Exhibit C to MMWR Br.) at ¶ 3 ("I have been asked to review thousands of mesothelioma cases forwarded by research pathologists, hospitals, and universities that have been unsure of the diagnosis and offer my opinion as to the diagnosis in each case."). Likewise, many of the pathology reports Grace will receive will also be questionable so that Grace will be "unsure of the diagnosis." For these cases, Grace will need additional information before a conclusive diagnosis can be made.

Claimants' objections would necessarily entail a ruling on the merits of their claims and would be premature. In essence, Claimants conflate the standard for discovery -- whether the requests discovery seeks relevant information or will lead to the discovery of admissible evidence -- with the standard they must meet to satisfy their burden of proof at trial. But the standard Claimants must meet to satisfy their burden of proof is not determinative of whether Grace is entitled to discovery.[10] Put differently, the MMWR Claimants cannot argue that the discovery must be precluded because it is inconsistent with *their* theory of the case.

**B.** **The MMWR Claimants' Newly Raised Burden Objection is Unfounded and Improper.**

The MMWR Claimants (who allege many diseases, not just mesothelioma) have, for the first time in their Response Brief, objected to Section V of the Questionnaire on the ground that it is "needlessly detailed and duplicative of the relevant work history information to be provided pursuant to Part VI of the Grace Questionnaire." MMWR Br. at 6. Section V and Section VI, however, do not ask for the same information. Section V seeks information regarding "exposure to non-Grace asbestos-containing products," while Section VI asks for "all prior industrial work experience up to and including your current employment." As recognized by the Court previously when adopting the Questionnaire, an individual's prior work history is likely to lead to the discovery of admissible evidence relating to potential causes of the *individual* Claimant's disease. Section V, the non-Grace product exposure section, asks for information relating to the asbestos products to which the Claimant was exposed or the duration and frequency of those exposures -- information completely distinct from the information in the work history section,

---

[10] *See, e.g., Kopacz v. Delaware River & Bay Auth.*, 225 F.R.D. 494, 497 (D.N.J. 2004) ("The question of relevancy is to be more loosely construed at the discovery stage than at the trial."); 8 Wright, Miller & Marcus, *Federal Practice and Procedure* § 2008 (same).

and not contained in work histories provided by the Claimants.  The objection simply has no merit.

### C.    The Baron/Silber/LeBlanc Claimants Have Demonstrated No Burden from Responding to the Five Identified Questions.

Baron & Budd, Silber Pearlman, and LeBlanc & Waddell ("Baron/Silber/LeBlanc") object to answering five questions on grounds of burden.  These questions seek information about asbestos- and silica-related litigation and trust claims.  The Court's clear Order states that burden objections will be sustained only if a Claimant can show that "for reasons particular to *an individual's* circumstance or claim, a question contained in the Questionnaire is not relevant to his or her claim or is unduly burdensome."    MTC  Order  at  ¶ 1.    Despite  this, Baron/Silber/LeBlanc Claimants improperly attempt to aggregate the burden on their *law firms* to justify their improper refusal to provide certain information by alleging that it will "take thousands of hours ... at a cost of several million dollars in time and expenses."  *See* Joint Response at 30-31.  But, the aggregate burden *on a law firm* is not a sufficient basis to prevent otherwise relevant discovery.  *See Standard Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F. Supp. 232, 262 (D. Del. 1992) (holding that an allegation that a discovery request "will entail significant legal and accounting expenses to complete is not a proper basis for refusing to comply" with the request) (citation omitted); *see also In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 632 ("Hordes of Plaintiffs have not been thrust upon [the plaintiffs' firms] against their will .... [T]he attorneys undertook the burden of representing *each one of them* -- and the sheer volume of Plaintiffs does not mean that these professionals' obligations toward each Plaintiff has been lessened.") (emphasis added).

Further, and importantly, Claimants represented by many different law firms already have answered these questions.  It is unfair to require the information from one group of

19

Claimants or law firm, but then permit others to be excused from the same requirement on grounds of burden. One of the firms that answered all the questions had over 100 Claimants and answered by the July 2006 deadline. That, in itself, suggests the burden claim is exaggerated.

Second, the burden on a Claimant of a firm that has thousands of claims should be judged precisely the same as the burden on the Claimant of a firm representing one claim. To do otherwise deprives the *individual* Claimant and the lawyer of that Claimant of the same treatment in this estimation. Indeed, the firm with a thousand Claimants will potentially receive a thousand times more money than the firm with one. Thus, the larger firm should not be excused from discovery obligations that are clearly not burdensome on any one Claimant. And finally, all burden objections have been considered and cured by the provision of nearly 16 months to complete the Questionnaires.

> **D.    The Wilentz Claimants Have Demonstrated No Burden Associated With Identifying their Races.**

The Wilentz Claimants argue, amazingly, that it is too burdensome for them to disclose their own races. *See* Response of Weitz & Luxenborg, P.C. and Wilentz Goldman & Spitzer, P.A. to the Debtors' Motion to Compel ("Wilentz Response") (Nov. 28, 2006) (Docket No. 13819) at 4. This is just silly. If the lawyers do not have the information in their files, they should simply call and ask their clients. It may be embarrassing for the firms to ask their clients for this information -- but it is not burdensome. The Questionnaire is directed to the Claimants and the law firm. Surely a Claimant knows his or her own race.[11]

---

[11]    The Wilentz Claimants also argue that the race information is contained in the PFT readings. To the extent this is the case, and the Wilentz Claimants follow the Court's Order to identify where that information can be found in the PFT results attached to the Questionnaire, this motion will not apply. *See* MTC Order at ¶ 2 ("[I]f a response is made by way of an attachment, the attachment must have the answer ... and the response must clearly reference the specific page(s) of the attachment."). It is only in those instances where the Claimant attached a PFT and the Claimant's race is not contained in the PFT itself that Grace seeks to compel a response to this question.

DOCS_DE:123217.1

**E.    Certain Claimants' State Law Relevance Objections Are Not Based On The Discoverability Of The Requested Information But Prematurely Raise Arguments Regarding Potential Uses Of This Evidence At Trial.**

The Cooney & Conway Claimants and the Kelley & Ferraro Claimants raise premature and unfounded state law relevance objections that should be overruled.  The Cooney & Conway Claimants object to questions relating to non-Grace asbestos exposures on the grounds that Illinois law regarding joint and several liability precludes this evidence.  They offer a litany of cases presenting factors Illinois courts consider in determining the *admissibility* of this potential evidence in light of the Illinois joint and several liability law, but they offer no support for the argument that discovery should be precluded on this basis.

The Kelley & Ferraro Claimants object to questions relating to previous settlements of asbestos- and silica-related claims and litigation on the grounds that *Fidelholtz v. Peller* (1998), 81 Ohio St. 3d 197, 690 N.E.2d 502, precludes this evidence.  While *Fidelholtz* requires a determination that a settling co-defendant is "liable in tort" before a non-settling defendant may be entitled to set-off of the settlement amount -- a determination that may be based on the release language in the settlement itself, *see id.*, 690 N.E.2d at 507 -- it has no bearing on the discoverability of such previous settlements.

The Court has previously found that such discovery is relevant to this estimation proceeding, *see* Tr. of Hr'g at 282 (Jul. 19, 2005), and it should be allowed.  Questions of whether this evidence would be admissible as a defense in an Illinois state court proceeding or whether an additional showing would be required before set-off of a settlement amount is permitted under Ohio law are of no moment.  This is an estimation in federal court.

## CONCLUSION

For the foregoing reasons and those expressed in its Motions to Compel, Debtors respectfully request that the Court overrule the objections lodged by the Claimants in lieu of

21

DOCS_DE:123217.1

providing answers to the questions posed in the Questionnaire and require that Claimants provide

the required information no later than January 12, 2007.

Wilmington, Delaware
Dated: December 1, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

KIRKLAND & ELLIS LLP
Barbara M. Harding
David Mendelson
Brian T. Stansbury
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:    (202) 879-5000
Facsimile:    (202) 879-5200

*and*

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession