IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Docket No. 13804** |
| | ) | |

**REPLY TO OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY
CLAIMANTS' RESPONSE TO THE DEBTORS' MEMORANDUM OF POINTS
AND AUTHORITIES CONCERNING BACKGROUND OF QUESTIONNAIRE
APPROVAL PROCESS AND OBJECTIONS
PREVIOUSLY ADDRESSED BY THE COURT**

The Official Committee of Asbestos Personal Injury Claimants ("PI Committee") has filed a response to a Memorandum of Points and Authorities that was filed as a part of motions to compel filed by W.R. Grace & Co. ("Grace") and directed to the *individual Claimants* represented by *individual law firms*. Grace welcomes the PI Committee's filing and points out that it illustrates the realities of the estimation -- *i.e.,* the PI Committee, still, is acting as the "voice" of the Claimants and their interests. Accordingly, the Court should feel comfortable both affirming its prior rulings that were made with the participation of the PI Committee and entering orders on issues raised by the PI Committee that are binding on the Claimants going forward.

The PI Committee *first* argues that the Court had not overruled *Claimant-specific* burden or relevance objections. *See* PI Comm. Br. at 3-5. It contends that to the extent any burden or relevance objections were litigated by the PI Committee, that does not apply to arguments specific to individual Claimants. This is simply a red herring as Grace has not

taken a position to the contrary.  But the reality is that *no law firm raised a Claimant-specific burden or relevance objection*.[1]

To the extent the PI Committee believes it is proper simply to write the words "relevance" or "undue burden" on the Questionnaire, and then not identify the relevance issues or burden to that individual Claimant, the Court has already rejected that argument.  In the Order leading to this briefing, the Court was crystal clear: (1) as a general matter, questions included in Grace's Questionnaire are relevant and should be answered; (2) it is proper to raise "specific individual questions that for reasons *particular to an individual's circumstances or claim*" render a question irrelevant or burdensome; but (3) each Claimant must "separately raise his or her specific objections" by identifying grounds related to that Claimant.  *See* Order Concerning Debtors' Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Graces Asbestos Personal Injury Questionnaire (Oct. 12, 2006)(Docket No. 13393) at 1-2 (emphasis added).  The bottom line is this:  The Court's clear instructions prohibit the Claimants from resting on generic, non-Claimant specific objections, the Questionnaire requires the Claimants to provide the information to Grace, and the Court should once again reject these tactics and require the Claimants to answer.

*Second*, the PI Committee attempts to thrust "blame" for the delays in receiving complete answers to the Questionnaire, not on the tactics of the Claimants' law firms (and,

---

[1]  Five firms have raised slightly more specific objections: (1) the Cooney & Conway Claimants object to the discovery of non-Grace asbestos exposures on grounds of state law relevance; (2) the Kelley & Ferraro Claimants object to the discovery of previous asbestos- or silica-related settlements on grounds of state law relevance; (3) certain mesothelioma Claimants object to the discovery of non-pathology medical tests and non-Grace asbestos exposures on the grounds that the specific characteristics of mesothelioma claims make such discovery irrelevant, and that providing information on non-Grace exposures beyond cursory exposure histories is too burdensome; (4) the Wilentz Claimants argue that providing information about their race is too burdensome; and (5) Baron & Budd/LeBlanc/Silber Pearlman Claimants argue that providing answers to certain questions relating to asbestos- and silica-related litigation and claims brought by the Claimants is too burdensome.

2

for that matter, the PI Committee), but on Grace's decision to bring a motion to compel in July and then a Claimant-specific motion in November. *See* PI Comm. Br. at 5-7. To the contrary, there can be no question that any delay in receiving complete, truthful, and accurate answers is solely the result of the Claimants' law firms, who, working in conjunction with the PI Committee, have attempted to string out responding to the Questionnaire for as long as possible. These Questionnaires were served in September of 2005 -- over one year ago. Claimants did not seek clarification or relief at that time, or at any time during the 10 months they had to prepare their answers to the Questionnaires. Instead, they resorted to self-help, raising frivolous and non-specific objections - many of which now appear to have been withdrawn - and attaching thousands of pages of undifferentiated documents. Even now, after clamoring for the right to be heard on highly-particularized, Claimant-specific objections, the law firms representing the Claimants have chosen not to make such particularized objections and have failed to provide any proper and specific factual support for the objections they do make. Instead, many are ignoring the Court's October 12th Order, standing on patently frivolous objections, often supported by nothing or, at best, supported by overly-generalized, non-Claimant-specific statements. If this was their intention all along, these issues could have been resolved at the time of Grace's first Motion to Compel.

*Third,* the PI Committee misconstrues the nature of Grace's intentions with respect to whether it will seek disallowance of claims or will seek an adverse inference against certain Claimants. *See* PI Comm. Br. at 7-11. As Grace has consistently maintained, it will not ask the Court to disallow a specific claim on the merits as part of the estimation. But as the Court is aware, it has broad powers to control discovery in estimation, including the power to sanction non-compliant subjects of discovery. Fed. R. Bankr. P. 9014. This is nothing new,

3

as Grace has maintained all along that sanctions should be available and used against non-complying Claimants.  Indeed, the Questionnaire itself states explicitly that sanctions may be leveled if Claimants do not comply with the Orders of the Court concerning the Questionnaire.  *See* W.R. Grace Asbestos Personal Injury Questionnaire at i.

Indeed, Grace is not asking the Court to do anything beyond what the Federal Rules that govern the estimation expressly provide.  For example, pursuant to Fed. R. Civ. P. 37, which applies to the estimation via Fed. R. Bankr. P. 7037, the Court may issue "[a]n order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim" of the party seeking sanctions.[2]  If the Court orders certain material or information to be produced for purposes of estimating and valuing claims from certain firms or individuals, and those persons refuse to produce that information, the Court can only assume that the information is not favorable to the Claimant and find that the Claimant would not under any circumstance be able to support his or her claim.  If such an order enters as to a single Claimant here or there, it will not affect the estimation value, but if thousands or tens of thousands of Claimants refuse to provide information (which may be the case depending on certain firms' conduct), that obviously will affect the overall estimation value.  The point is simply this: Claimants cannot refuse to provide information necessary for the estimation and then expect that refusal to have no effect on the Court's ultimate resolution of Grace's putative liability.

---

[2]    The PI Committee's assertion that the Court cannot issue such an order because it would unfairly penalize the Committee misses the point  Any adverse inference permitted by the Court as a sanction for the Claimants' failure to comply with its discovery orders will go to the value of the claims, which is the subject of the estimation.  The PI Committee, as discussed above, is participating in that estimation as a *proxy for*, if not as a representative of, the Claimants and will have to accept the factual record and implications drawn from that record by the Court, just as will Grace.

4

Similarly, the Court's power under Fed. R. Civ. P. 37 and Fed. R. Bankr. P. 7037 to "dismiss[] the action ... or render[] a judgment by default against the disobedient party" surely allows the Court to, as a sanction, enter an order providing that when a Claimant seeks allowance of a claim against the estate or the trust, a negative inference will be drawn with respect to the validity of the claim as to information not provided to Grace and to the Court in response to the Questionnaires. All Grace has asked is that the Court make clear that this is the Claimants' last chance. At the conclusion of this hearing, the Claimants must comply with the terms of any issuing order or otherwise they will face real and severe consequences.

Wilmington, Delaware
Dated:  December 1, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000


KIRKLAND & ELLIS LLP
Barbara M. Harding
David Mendelson
Brian T. Stansbury
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:     (202) 879-5000
Facsimile:      (202) 879-5200

*and*

5

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

*James E. O'Neill*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

6