# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| Debtors. | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FEE APPLICATION OF KIRKLAND & ELLIS
## FOR THE TWENTY-FIRST INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Fee Application of Kirkland & Ellis for the Twenty-First Interim Period.

## BACKGROUND

1.      Kirkland & Ellis was retained as counsel to the Debtors.  In the Application, Kirkland & Ellis seeks approval of fees totaling $5,096,175.50 and costs totaling $1,333,149.79 for its services from April 1, 2006, through June 30, 2006.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the

United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served on K&E an initial report based on our review, and received a response from K&E, portions of which response are quoted herein.

### DISCUSSION

3.      In our initial report, we noted 20 conferences or meetings attended by multiple professionals, in which the time entries did not explain the need for multiple professionals.  (See Exhibit A.)  We asked K&E to examine the exhibit and in each instance to explain the need for each professional's presence and the particular area of expertise each brought to the meeting.  The firm's response is provided as Response Exhibit 1.  We appreciate the response and offer no objection to these fees.

4.      We noted that on June 7, 2006, DMB attended a conference regarding personal injury litigation in bankruptcy.  The total time spent was 5.00 hours for a fee of $4,225.00.  The entry is provided below.

| 6/7/2006 | David M Bernick, P.C. | 5.00 | Prepare for and attend conference re personal injury litigation in bankruptcy. |
|----------|------------------------|------|--------------------------------------------------------------------------------|

In an earlier fee hearing regarding this case, the Court stated, "...[t]here is one thing that I am not going to permit as compensable fees or expenses for any professional in this Estate.  And this is attendance at professional seminars of any kind, whether to do with asbestos or not." See Transcript of August 26, 2002, hearing, p. 101, In re W.R. Grace & Co., et al.  We asked K&E to explain why the referenced conference should not be considered a professional seminar.  K&E's response is provided as Response Exhibit 2.  We appreciate the explanation and, based on the information that

this was not an outside seminar or conference, but rather, a conference held amongst various attorneys for the Debtors, have no objection to these fees.

5.    We noted that on April 12, 2006, LEM attended database training.  The total time spent was 0.70 hours for a fee of $122.50. The entry is provided below.

04/12/06    LEM    7.50            ...........attend database training (.7);..........

Training is normally considered a part of firm overhead.  We asked K&E to explain why this entry should be excepted.  The firm's response is provided as Response Exhibit 3.  We appreciate the response and concur that, since the training related solely to W.R. Grace matters, the time should be compensable.

6.    We noted numerous entries for professional and expert fees throughout the application.  The entries are listed in Exhibit B.  We asked K&E for further information regarding these fees.  The firm's response is provided as Response Exhibit 4.  We have examined the Exhibit A that K&E references in Response Exhibit  4, which lists the professionals and their areas of expertise as these relate to the bankruptcy.[1]  We are aware of the confidential nature of much of this work and are satisfied with K&E's response that the work of the professionals listed meets the necessary criteria for acceptance.    We thus offer no objection to these fees.

7.    We noted two expense entries totaling $911.90 which also appear to relate to professional seminars.  The entries are provided below.

5/26/2006    487.96 RUESCH INTERNATIONAL - ADDITIONAL CHARGE FOR FOREIGN DRAFT ISSUED FOR ASBESTOS FORUM ATTENDED BY B. STANBURY

---

[1] Because of the confidential nature of the information on Exhibit A, we have chosen not to attach it to this final report.

6/19/2006      423.94 LEXISNEXIS MEALEY'S - Information Broker Doc/Svcs, Asbestos Bankruptcy Conf audio CD, 6/19/06

As referenced in Paragraph #4 above, we asked K&E to explain why these expenses should be approved.  K&E's response is provided as Response Exhibit 5.  We appreciate the response and concur with the proposed reduction for the May 26, 2006 expense.  Thus, we recommend a reduction of $487.96 in expenses.

    8.    We noted four hotel expenses that appear excessive.  The entries are provided below.

4/6/2006      376.71 Michelle Browdy, Hotel, Washington, DC, 04/06/06, (Conference)
4/24/2006     491.01 Samuel Blatnick, Hotel, New York, NY, 04/24/06, (Conference)
4/6/2006      376.71 Renee Smith, Hotel, D.C., 04/06/06, (Client Conference)
4/6/2006      502.66 Elli Leibenstein, Hotel, Washington, DC, 04/06/06 (Client Conference)

We recommend a reasonable ceiling of $250, plus applicable taxes, for hotel stay per night in most cities ($350 for New York, $300 for Washington D.C., $400 for London).  We asked K&E to explain why the cited hotel entries should not be viewed as excessive and provide the appropriate room tax information for each entry so that we might fairly assess the total rate.  K&E's response is provided as Response Exhibit 6.  We appreciate the response and for these hotel stays we recommend a reduction of $277.00 in expenses.

    9.    We noted two car rental expenses that appear excessive.  The entries are provided below.

4/22/2006     715.79 Brian Stansbury, Car Rental, Missoula, MT, 04/18/06 to 04/22/06, (Document Production)

6/7/2006      480.06 Margaret Utgoff, Car Rental, Missoula, MT, 06/07/06 to 06/11/06, (Conference)

While a number of other car rental charges appear in the application, all but these two appear to be

in the $60-70 per day range.  We asked K&E to explain why these charges are significantly higher.

The firm's response is provided as Response Exhibit 7.  We appreciate the response and accept the

explanations.  Thus, we offer no objection to these expenses.

  10.  We noted a single transportation expense that appears excessive.  The entry is

provided below.

6/16/06  592.43 SUNNY'S EXECUTIVE SEDAN SERVICE INC - Transportation to/from
      airport, 6/8/06, B. Stansbury

We asked K&E to note the circumstances of the fare and to explain why this fare was so much

greater than the others contained in the application describing the same expense.  K&E's response

is provided as Response Exhibit 8.  We appreciate the response but believe it fails to adequately

explain the need for the car service.  As the car service picked him up at his home and took him to

the office to pick up materials, certainly that first leg of the journey should not be eligible for

reimbursement, as Mr. Stansbury would not normally charge the estate for his daily home-to-office

transportation.  The response makes mention of numerous meetings through the day at different

locations and argues for the efficiency of the car service.  While we are cognizant of the need for

efficiency in all aspects of the case, we remain unconvinced that a rental car or personal car, used

with appropriate reimbursement, would not have been the more cost-effective solution.  Finally, the

response argues that the use of the car service allowed Mr. Stansbury to spend his travel time

preparing for the meetings rather than driving.  We have no reason to doubt that, but we find nothing

in the fee detail to show that Mr. Stansbury did not bill for this preparation time, wherever it was

done.  Given these factors, we suggest that all rental car expenses, including gasoline and drop-off

fees, should not have exceeded $125.00.  Even granting an additional $75.00 for multiple parking

fees, we suggest a reasonable transportation expense totaling $200.00. Thus, we recommend a reduction of $392.43 for this expense entry.

11.    We noted two meal expenses that appear excessive. The entries are provided below.

5/16/06        108.04 Renee Smith, Travel Meal, Washington, DC, 05/16/06, (Trial preparation)

5/16/06         64.63  Renee Smith, Travel Meal, Washington, DC, 05/16/06, (Trial preparation)

We asked K&E to provide more information regarding these entries. K&E's response is provided as Response Exhibit 9. We appreciate the response and thus for these two meal entries we recommend a reduction of $72.67 in expenses.

## CONCLUSION

12.    Thus, we recommend approval of fees totaling $5,096,175.50 and costs totaling $1,331,919.73 ($1,333,149.79 minus $1,230.06) for K&E's services from April 1, 2006, through June 30, 2006.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
        Warren H. Smith
        Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1275
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 5th day of December, 2006.

_____
Warren H. Smith

**SERVICE LIST**
<u>Notice Parties</u>

**The Applicant**
Janet S. Baer
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured**
**Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property**
**Damage Claimants**

Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.

Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal**
**Injury Claimants**

Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**
Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

1. On April 7, 2006, four firm members (all Partners) attended a conference in Washington, D.C. The total time spent including any preparation and non-working travel time was 39.30 hours[2] for a total fee of $27,795.50.  Please explain why this conference required the attendance of four firm Partners?

| | | | |
|---|---|---|---|
| 04/05/06 | DMB | 1.50 | Prepare for defense/PD/PI team conference. |
| 04/06/06 | DMB | 4.00 | Prepare for defense/PD/PI team conference. |
| 04/07/06 | JSB | 6.80 | .................; confer with criminal and estimation teams re criminal and related issues (5.0). |
| 04/07/06 | DMB | 8.00 | Attend defense/PD/PI team conference and follow up re same. |
| 04/07/06 | MHB | 8.40 | Team conference re PI, PD and criminal case issues (5.5); prepare and follow-up re same (1.5);............... |
| 04/07/06 | BMH | 11.50 | Prepare materials for team conference re criminal case and confer with S. Michael re same (2.1); K&E team conference re PI, PD and criminal case (7.0);............. |
| 04/07/06 | JSB | 3.70 | Travel to Washington, D.C. for conference with criminal team on case status and strategy (billed at half time) (1.2); return travel from Washington, D.C. back to Chicago after same (flight delays) (2.5) (billed at half time). |
| 04/07/06 | DMB | 1.00 | Travel to and from criminal team conference (billed at half time). |

2.  On April 10, 2006, four firm members (two Partners and two Associates) attended a conference. The total time spent including any preparation time was 25.20 hours[3] for a total fee of $11,128.00. Please explain why this conference required the attendance of four firm members?

| | | | |
|---|---|---|---|
| 04/10/06 | BTS | 4.50 | Confer with experts, S. McMillin, B. Harding and E.Zoldan re potential expert work |

---

[2] Time for this entry was located in two Project Categories - (i) Claim Analysis Objection & Resolution (Asbestos) and (ii) Travel non-working.

[3] Time for this entry was located in three Project Categories - (i) Claim Analysis Objection & Resolution (Asbestos); (ii) Montana Grand Jury Investigation; and (iii) Travel non-working.

| 04/10/06 | ECZ | 6.00 | Confer with B. Harding, B. Stansbury. S. McMillin and experts re expert reports (5.5);...................... |
| 04/10/06 | BMH | 8.60 | Prepare for conference with experts (1.0); confer with experts, S. McMillin, B. Stansbury and E. Zoldan (5.5);.......... |
| 04/10/06 | SAM | 7.30 | .............; confer with expert (5.0). |
| 4/10/2006 | BTS | 0.90 | Travel to and from conferences with experts (billed at half time). |
| 4/10/2006 | ECZ | 0.80 | Travel to and from conferences with experts (billed at half time). |
| 4/12/2006 | MHB | 2.00 | Travel from Vancouver to Chicago (billed at half time). |

3. On April 17, 2006, five firm members (four Partners and one Associate) attended a hearing. The total time spent including any preparation and non-working travel time was 58.10 hours[4] for a total fee of $38,295.50. Please explain why this hearing required the attendance of five firm members?

| 4/6/2006 | Janet S Baer | 0.30 | Confer with J. O'Neill re April agenda and related issues. |
| 4/12/2006 | Janet S Baer | 1.00 | Review materials re bar date notice issues in preparation for April 17 hearing. |
| 4/12/2006 | B M Harding | 2.00 | Draft outline re hearing preparation and argument. |
| 4/13/2006 | Janet S Baer | 0.50 | Confer with team re status and strategy for April 17 hearing on exclusivity. |
| 4/13/2006 | M H Browdy | 2.70 | Team conference re April 17 hearing (.5); prepare for April 17 hearing (1.5); edit draft presentation for board re April 17 hearing (.7). |
| 4/13/2006 | B M Harding | 2.20 | Prepare materials re hearing and confer with client and D. Bernick re same. |
| 4/14/2006 | Janet S Baer | 1.50 | Assemble materials re April 17 hearing (.8); confer with L. DeVault and H. Bull re materials and orders for April 17 hearing (.3);.............. |

---

[4] Time for this entry was located in two Project Categories - (i) Hearings and (ii) Travel non-working.

| 4/14/2006 | D M Bernick | 1.30 | Confer with P. Lockwood, S. Baena and R. Frankel re Monday hearing. |
| 4/14/2006 | M H Browdy | 2.60 | Continue to prepare for April 17 hearing. |
| 4/14/2006 | B M Harding | 4.00 | Review documents and confer with B. Stansbury, D. Mendelson, M. Coyne and M. Utgoff re preparation for omnibus hearing. |
| 4/16/2006 | M H Browdy | 2.30 | Continue to prepare for April 17 hearing on PD issues. |
| 4/16/2006 | B M Harding | 2.70 | Review, revise and edit presentation materials for hearing re Whitehouse discovery issue. |
| 4/17/2006 | Janet S Baer | 5.60 | Review agenda and materials in preparation for April omnibus hearing (.8); confer with Delaware counsel, client, B. Harding and M. Browdy in preparation for April hearing (2.5); attend and conduct April omnibus hearing and confer with client after same (2.3). |
| 4/17/2006 | S F Bianca | 2.00 | Attend omnibus hearing via telephone. |
| 4/17/2006 | D M Bernick. | 8.50 | Prepare for and attend omnibus hearing. |
| 4/17/2006 | M H Browdy | 8.50 | Attend USG hearing re Anderson Memorial PD claims (1.0); attend omnibus hearing (2.0); prepare for hearing and follow up (5.5). |
| 4/17/2006 | B M Harding | 5.00 | Prepare for and participate in Grace omnibus hearing. |
| 4/16/2006 | D M Bernick | 1.50 | Travel to Delaware to attend hearing (billed at half time). |
| 4/17/2006 | Janet S Baer | 4.30 | Travel from Chicago to Wilmington for April omnibus hearing (billed at half time) (2.3); return travel from Wilmington back to Chicago after hearing (2.0) (billed at half time). |

4. On April 13, 2006, six firm members (three Partners and three Associates) attended a conference. The total time spent including any preparation time was 8.20 hours for a total fee of $3,458.00. Please explain why this conference required the attendance of six firm members?

| 4/13/2006 | Tyler D Mace | 16.10 | ...............;   confer with defense counsel (1.3);......... |

| 4/13/2006 | Christopher C Chiou | 13.80 | Confer with joint defense counsel (1.3); prepare for same (.4);........... |
| 4/13/2006 | Rebecca A Koch | 8.10 | .................; confer with L. Urgenson, K. Clark, T. Mace, C. Chiou, and W. Jacobson re case developments (1.6). |
| 4/13/2006 | William B Jacobson | 1.50 | Confer with defense counsel re case issues. |
| 4/13/2006 | Mark E Grummer | 6.90 | ...........; confer with co-counsel re expert reports (1.1);......... |
| 4/13/2006 | Laurence A Urgenson | 2.20 | .............. joint defense conference (1.0). |

5. On April 14, 2006, six firm members (four Partners and two Associates) attended a conference. The total time spent including any preparation time was 9.20 hours for a total fee of $4,591.00. Please explain why this conference required the attendance of six firm members?

| 4/14/2006 | Christopher C Chiou | 6.90 | Confer with K&E team and counsel for individual defendants re expert issues (1.3); prepare for same (.5);............... |
| 4/14/2006 | Brian T Stansbury | 6.40 | ............; confer with W. Jacobson, L. Flatley, S. McMillin, C. Chiou, and R. Smith re expert reports (1.6);................. |
| 4/14/2006 | William B Jacobson | 3.50 | ...........; confer re expert witnesses (1.2);....... |
| 4/14/2006 | Mark E Grummer | 2.10 | Prepare for conference with co-counsel re expert reports (1.2); confer re same (.9). |
| 4/14/2006 | Scott A McMillin | 4.60 | Prepare for conference with defense team re litigation strategy (.4); confer re same (.9);............. |
| 4/14/2006 | Laurence A Urgenson | 2.00 | .................; confer with D. Bernick, W. Jacobson, R. Smith, B. Harding, S. McMillin et al re case status and strategy (1.2);............. |

6. On April 20, 2006, five firm members (three Partners and two Associates) attended a conference. The total time spent including any preparation time was 6.90 hours for a total fee of $3,202.50. Please explain why this conference required the attendance of five firm members?

| 04/20/06 | TDM | 9.00 | ..........; confer with defense counsel (1.8);................. |

| 04/20/06 | CCC | 12.80 | ............; confer with joint defense counsel (1.7);........... |
|---|---|---|---|
| 04/20/06 | WBJ | 8.60 | ............; confer with defense counsel (1.3). |
| 04/20/06 | MEG | 2.70 | ..........; confer with defense counsel (.4). |
| 04/20/06 | LAU | 3.40 | ............; joint defense conference (1.7);.............. |

7. On April 27, 2006, four firm members (two Partners and two Associates) attended a conference. The total time spent including any preparation time was 2.50 hours for a total fee of $1,052.50. Please explain why this conference required the attendance of four (4) firm members?

| 04/27/05 | TDM | 8.90 | ..............; confer with defense counsel (.5);........... |
|---|---|---|---|
| 04/27/06 | CCC | 7.70 | ............; confer with joint defense counsel (1.0);.............. |
| 04/27/06 | WBJ | 8.40 | ...............; confer with defense counsel (.5);............. |
| 04/27/06 | LAU | 1.30 | JDA conference (.5);................. |

8. On May 19, 2006, four firm members (one Partner, two Associates and one Legal Assistant) attended a conference. The total time spent including any preparation time was 18.00 hours for a total fee of $6,075.00. Please explain why this conference required the attendance of four firm members?

| 5/19/2006 | Amanda C Basta | 6.80 | Attend expert conference with B. Stansbury, B. Harding, T. Fitzsimmons and expert (3.5);.............. |
|---|---|---|---|
| 5/19/2006 | Brian T Stansbury | 4.40 | Prepare for expert conference (.6); confer with B. Harding, J. Hughes, T. Fitzsimmons and expert re potential expert report (3.8). |
| 5/19/2006 | Timothy J Fitzsimmons | 7.50 | Confer with B. Stansbury, B. Harding and A. Basta re expert report and distribute correspondence re same (6.0);................ |
| 5/19/2006 | Barbara M Harding | 7.80 | Prepare for conference with expert (2.1); confer with expert re medical issues (2.0);............ |

9. On May 4, 2006, seven firm members (three Partners and four Associates) attended a conference. The total time spent including any preparation time was 8.10 hours for a total fee of $3,561.50. Please explain why this conference required the attendance of seven firm members?

| 05/04/06 | TDM | 9.10 | ...............; confer with defense counsel (1.8);............. |
| 05/04/06 | MDS | 8.80 | ............; legal strategy conference with team (1.3). |
| 05/04/06 | CCC | 8.10 | Confer with joint defense counsel (1.0);................. |
| 05/04/06 | BTS | 7.00 | ...........; confer with co-defendant counsel re motion (.5);........... |
| 05/04/06 | WBJ | 8.90 | ............; confer with defense counsel (1.0);............ |
| 05/04/06 | RDS | 1.30 | Review materials in preparation for conference with defense counsel re motion issues (.4); confer re same (.6);.......... |
| 05/04/06 | LAU | 7.50 | ............; JDA conference (1.5);.............. |

10.  On May 11, 2006, nine firm members (five Partners and four Associates) attended a conference. The total time spent including any preparation time was 16.80 hours for a total fee of $8,173.00. Please explain why this conference required the attendance of nine firm members?

| 5/11/2006 | Tyler D Mace | 4.80 | Confer with defense counsel (2.8);............. |
| 5/11/2006 | Christopher C Chiou | 9.70 | Prepare for joint defense conference (.9); confer with joint defense counsel (.8);........... |
| 5/11/2006 | Kenneth S Clark | 2.00 | Attend joint defense conference. |
| 5/11/2006 | Brian T Stansbury | 6.20 | ...............; confer with joint defense group re case strategy (2.0);........... |
| 5/11/2006 | David M Bernick, P.C. | 2.50 | Prepare for conference re motions (1.0); confer re same (1.5). |
| 5/11/2006 | Mark E Grummer | 3.90 | ..........; K&E conference re motions (1.3);....... |
| 5/11/2006 | Barbara M Harding | 7.70 | .................; prepare for conference with D. Bernick, criminal team, client and outside counsel re motions (.4); confer re same (.8);............... |
| 5/11/2006 | Scott A McMillin | 6.30 | ..............; defense team conference re motions (1.8);.......... |
| 5/11/2006 | Laurence A Urgenson | 4.70 | .............; JDA conference (1.5);.............. |

11.  On May 25, 2006, eight firm members (four Partners and four Associates) attended a conference.  The total time spent including any preparation time was 9.30 hours for a total fee of $4,077.50.  Please explain why this conference required the attendance of eight firm members?

| | | | |
|---|---|---|---|
| 5/25/2006 | Tyler D Mace | 9.80 | .............; confer with defense counsel re status (1.5). |
| 5/25/2006 | Salvatore F Bianca | 6.20 | .................; confer with joint defense counsel re motion (.5). |
| 5/25/2006 | Christopher C Chiou | 4.50 | Confer with joint defense counsel (1.3);......... |
| 5/25/2006 | Kenneth S Clark | 1.60 | ..............; confer with W. Jacobson, T. Mace, C. Chiou and joint defense team (1.3). |
| 5/25/2006 | William B Jacobson | 7.50 | ..............; confer with defense counsel (1.2);........ |
| 5/25/2006 | Renee D Smith | 16.50 | ..............; joint defense conference re same (1.0);............ |
| 5/25/2006 | Scott A McMillin | 6.80 | ...........; joint defense conference re trial preparation (1.2);............. |
| 5/25/2006 | Laurence A Urgenson | 9.90 | ............; JDA conference (1.3);............ |

12.  On May 26, 2006, eight firm members (six Partners and two Associates) attended a conference.  The total time spent including any preparation time was 16.00 hours for a total fee of $8,303.50.  Please explain why this conference required the attendance of eight firm members?

| | | | |
|---|---|---|---|
| 5/26/2006 | Salvatore F Bianca | 5.60 | ..............; team conference (1.5). |
| 5/26/2006 | Christopher C Chiou | 10.40 | Confer with K&E team and joint defense counsel (2.3); prepare for same (1.2);............ |
| 5/26/2006 | William B Jacobson | 9.10 | ..............; confer with counsel re same (2.0). |
| 5/26/2006 | David M Bernick, P.C. | 8.50 | Confer with counsel (2.0);........... |
| 5/26/2006 | Mark E Grummer | 8.00 | ...........; team conference re motions (1.7);......... |
| 5/26/2006 | Renee D Smith | 8.00 | Prepare for conference with D. Bernick, co-defense counsel and client re motion issues (1.0); confer re same (1.8);.......... |

| 5/26/2006 | Scott A McMillin | 10.40 | ...............; joint defense conference re motions (2.0);........... |
|---|---|---|---|
| 5/26/2006 | Laurence A Urgenson | 7.50 | ...............; confer with co-counsel re motions (.5);............ |

13. On June 19, 2006, five firm members (three Partners and two Associates) attended a hearing. The total time spent including any preparation and non-working travel time was 45.70 hours[5] for a total fee of $30,133.50. Please explain why this hearing required the attendance of five firm members?

| 6/8/2006 | Barbara M Harding | 1.50 | Review documents in preparation for hearing. |
|---|---|---|---|
| 6/14/2006 | Janet S Baer | 0.90 | Confer with W. Sparks re status of various issues and matters for June omnibus hearing (.3); review June ominbus hearing agenda and arrange for assembly of hearing binder (.2); confer re status of PD matters for 6/19 hearing and organize CMO materials (.4). |
| 6/15/2006 | Janet S Baer | 4.60 | Confer with D. Bernick, M. Browdy and B. Harding re status of PD, PI, plan and related issues in preparation for 6/19 hearing (.6); follow up on outstanding issues re same (.3); review hearing transcripts and pleadings re issues re mediation, exclusivity and related issues in preparation for 6/19 hearing (3.3); prepare draft outline re same (.4). |
| 6/15/2006 | Barbara M Harding | 1.30 | Prepare for conference with D. Bernick, J. Baer and M. Browdy re hearing preparation (.5); confer re same (.8). |
| 6/16/2006 | Janet S Baer | 1.60 | Review materials for June omnibus hearing (1.3); confer re hearing exhibits (.3). |
| 6/18/2006 | Barbara M Harding | 3.70 | Review documents and revise slides and charts for omnibus hearing (2.9); correspond with A. Basta, D. Bernick, J. Baer and expert re same (.8). |
| 6/19/2006 | Janet S Baer | 7.10 | Review materials in preparation for June omnibus hearing (2.5); confer with Delaware counsel and client re same (1.0); attend and conduct June omnibus |

---

[5] Time for this entry was located in two Project Categories - (i) Hearings and (ii) Travel non-working.

|  |  |  | hearing (2.5);..............; confer re PD claims estimation and hearing issues (.3); confer re PI estimation and hearing (.3). |
|---|---|---|---|
| 6/19/2006 | Salvatore F Bianca | 2.20 | Attend June omnibus hearing via telephone. |
| 6/19/2006 | Samuel Blatnick | 2.10 | Participate in June omnibus hearing telephone conference. |
| 6/19/2006 | David M Bernick, P.C. | 8.00 | Prepare for and attending omnibus hearing. |
| 6/19/2006 | Barbara M Harding | 8.40 | Review documents and revise slides and graphs re omnibus hearing and correspond with D. Bernick, J. Baer, J. O'Neill, A. Basta, and A. Brockman re same (4.0); correspond with E. Leibenstein re hearings (.5); attend telephonic omnibus hearing and correspond with J. Baer, E. Leibenstein, A. Basta, D. Mendelson and J. Hughes re same (3.9). |
| 6/19/2006 | Janet S Baer | 4.80 | Travel to Delaware for June omnibus hearing (1.8); travel from Delaware back to Chicago after hearing (with flight delays) (3.0) (billed at half time). |

14.   On June 6, 2006, seven firm members (four Partners and three Associates) attended a conference.  The total time spent including any preparation time was 48.50 hours for a total fee of $22,817.50.  Please explain why this conference required the attendance of seven firm members?

| 6/6/2006 | Tyler D Mace | 10.30 | Confer with client and K&E team re case status. |
|---|---|---|---|
| 6/6/2006 | Michael D Shumsky | 5.00 | Participate in legal strategy conference with client and K&E team. |
| 6/6/2006 | Brian T Stansbury | 8.40 | Confer with D. Bernick, T. Mace, R. Smith, L. Urgenson, W. Jacobson and client re case strategy (5.0);................; prepare for expert conference (.5). |
| 6/6/2006 | William B Jacobson | 9.20 | Confer with L. Urgenson (1.0); confer with client re strategy (8.2). |
| 6/6/2006 | Barbara M Harding | 11.00 | Prepare for conference with expert (3.2); conference with expert and S. McMillin re expert report (3.0);............... |

| 6/6/2006 | Scott A McMillin | 6.90 | Prepare for expert conference (2.5); confer re same (1.5);........... |
| 6/6/2006 | Laurence A Urgenson | 9.30 | Prepare for client conference re case status and strategy (1.0); confer with M. Sheltnitz, D. Siegel, D. Kuchinsky, R. Finke, J. Hughes, W. Sparks, W. Jacobson, T. Mace, C. Chiou, D. Bernick and M. Shumsky (7.3);............ |

15. On June 8, 2006, five firm members (all Associates) attended a conference. The total time spent including any preparation time was 5.10 hours for a total fee of $1,399.50.  Please explain why this conference required the attendance of five firm members?

| 6/8/2006 | Tyler D Mace | 8.90 | .......; confer with defense counsel re status (1.0);....... |
| 6/8/2006 | Michael D Shumsky | 1.50 | Participate in  legal strategy conference with co-counsel (.5);............ |
| 6/8/2006 | Christopher C Chiou | 6.90 | Confer with joint defense counsel and prepare for same (1.8);............. |
| 6/8/2006 | Kenneth S Clark | 0.50 | Joint defense conference. |
| 6/8/2006 | Rebecca A Koch | 2.30 | Confer with W. Jacobson, T. Mace, C. Chiou and K. Clark re case developments (1.3);......... |

16. On June 13, 2006, six firm members (three Partners, two Associates and one Legal Assistant) attended a conference. The total time spent including any preparation time was 21.00 hours for a total fee of $9,031.00.  Please explain why this conference required the attendance of six firm members?

| 6/13/2006 | Salvatore F Bianca | 4.80 | Review expert reports (3.2); confer and correspond re same (1.6). |
| 6/13/2006 | Margaret S Utgoff | 3.00 | Confer with expert. |
| 6/13/2006 | Brian T Stansbury | 13.40 | Confer with expert re expert report (3.0);......... |
| 6/13/2006 | William B Jacobson | 10.30 | Prepare for witness interview (2.1); conduct witness interview (3.7);.............. |
| 6/13/2006 | Barbara M Harding | 15.50 | ...............; prepare for conference with expert (2.0); confer with expert and S. McMillin re expert report |

(1.7).

6/13/2006    Scott A McMillin    8.40    ..............; confer with experts re draft reports (.7);...........

17. On June 15, 2006, four firm members (one Partner and three Associates) attended a conference. The total time spent including any preparation time was 3.90 hours for a total fee of $1,380.50. Please explain why this conference required the attendance of four firm members?

06/15/06    TDM    9.90    ...........; confer with defense counsel (1.2);...........

06/15/06    MDS    3.50    ...........; attend legal strategy conference with team (1.0).

06/15/06    CCC    6.30    ...........; confer with joint defense counsel (.7).

06/15/06    WBJ    9.60    ..............; confer with defense counsel (1.0);...........

18. On June 22, 2006, five firm members (three Partners and two Associates) attended a conference. The total time spent including any preparation time was 6.40 hours for a total fee of $2,885.00. Please explain why this conference required the attendance of five firm members?

06/22/06    TDM    8.70    ...........; confer with defense counsel (2.0);...........

06/22/06    CCC    9.90    Confer with joint defense counsel (1.4);.............

06/22/06    WBJ    7.00    Confer with defense counsel (1.3);...........

06/22/06    MEG    12.70    Confer with defense counsel re statutory issues (.4);.......

06/22/06    LAU    6.60    ............; JDA conference re case status and strategy (1.3);...........

19. On June 26, 2006, six firm members (two Partners and four Associates) attended a conference. The total time spent including any preparation time was 12.70 hours for a total fee of $5,768.00. Please explain why this conference required the attendance of six firm members?

6/26/2006    Michael D Shumsky    2.50    Attend legal strategy conference with team.

6/26/2006    Salvatore F Bianca    11.70    Joint defense conference re motions in limine (1.9);.............

6/26/2006    Christopher C Chiou    13.60    .......; confer with joint defense counsel (1.9);.........

6/26/2006    Brian T Stansbury    12.50    ...........; joint defense conference re motions

|            |                   |       | (1.9);........... |
|------------|-------------------|-------|-------------------|
| 6/26/2006  | William B Jacobson | 11.50 | ...............; confer with defense counsel re motion responses (2.0);........... |
| 6/26/2006  | Laurence A Urgenson | 5.60 | ...................; confer with defense counsel re case status and strategy (2.5);........... |

20. On June 29, 2006, four firm members (three Partners and one Associate) attended a conference. The total time spent including any preparation time was 4.60 hours for a total fee of $2,562.00. Please explain why this conference required the attendance of four firm members?

| 6/29/2006 | Tyler D Mace | 5.50 | ...........; confer with defense counsel (1.0);......... |
|-----------|--------------|------|---------------------------------------------------------|
| 6/29/2006 | William B Jacobson | 10.20 | Confer with defense counsel (1.5);............ |
| 6/29/2006 | Mark E Grummer | 3.50 | Confer with defense counsel re statutory issues (.6);.......... |
| 6/29/2006 | Laurence A Urgenson | 6.00 | ...........; confer with JDA group re same (1.5);.......... |

Exhibit B

| 3/21/2006 | 66,721.25 | Professional Fees, Services rendered 2/2006 |
| 3/31/2006 | 20,575.85 | Professional Fees, Services rendered for March 2006, Fees |
| 4/3/2006 | 21,800.00 | Professional Fees, Research, March 2006 |
| 4/3/2006 | 3,125.00 | Professional Fees, 3/21/06 to 3/29/06 |
| 4/3/2006 | 4,990.00 | Professional Fees - PROFESSIONAL SERVICES MARCH 27, 2006-APRIL 2, 2006 |
| 4/3/2006 | 4,697.50 | Professional Fees - PROFESSIONAL SERVICES MARCH 23, 2006-APRIL 2, 2006 |
| 4/3/2006 | 4,750.00 | Professional Fees - PROFESSIONAL SERVICES MARCH 23, 2006-APRIL 2, 2006 |
| 4/3/2006 | 4,000.00 | Professional Fees, Services rendered for March 2006 |
| 4/4/2006 | 4,302.50 | Expert Fees |
| 4/4/2006 | 4,916.25 | Expert Fees |
| 4/4/2006 | 4,875.00 | Expert Fees |
| 4/4/2006 | 308.75 | Professional Fees, Services rendered thru 2/21/06, Fees |
| 4/4/2006 | 4,541.25 | Professional Fees - PROFESSIONAL SERVICES MARCH 24, 2006-APRIL 1, 2006 |
| 4/6/2006 | 17,485.10 | Expert Fees, Services rendered 7/25/05-4/1/06 |
| 4/18/2006 | 359,803.50 | Professional Services - Fees for Period Ending March 31, 2006 |
| 4/18/2006 | 4,686.24 | Professional Services - Expenses for Period Ending March 31, 2006 |
| 4/24/2006 | 4,950.00 | Expert Fees |
| 4/25/2006 | 60,000.00 | Professional Fees - Research, March and April, 2006 |
| 4/30/2006 | 13,138.55 | Professional Fees, April 2006 Consulting Service |
| 4/3/2006 | 4,917.50 | Professional Fees - PROFESSIONAL SERVICES MARCH 21, 2006-APRIL 2, 2006 |
| 4/3/2006 | 4,833.75 | Professional Fees - PROFESSIONAL SERVICES MARCH 31, 2006-APRIL 2, 2006 |
| 4/3/2006 | 4,416.25 | Professional Fees - PROFESSIONAL SERVICES MARCH 28, 2006-APRIL 1, 2006 |
| 5/4/2006 | 4,800.00 | Medical Consultant Fees, 5/4/06 |
| 5/4/2006 | 39,300.00 | Professional Fees, Services rendered for April 2006 |
| 5/8/2006 | 4,675.00 | Professional Fees, Services rendered 4/2006 |
| 5/8/2006 | 36,400.00 | PROFESSIONAL FEES AND EXPENSES, TRAVEL EXPENSES FOR 3/8/06, 4/26/06-4/29/06 |
| 5/8/2006 | 321.00 | Professional Fees SERVICE RENDERED 5/8/06-5/9/06 |
| 6/6/2006 | 1,200.00 | Professional Fees - CONSULTATION, 5/19/06 |
| 6/7/2006 | 4,875.00 | Expert Fees - Services rendered, 5/3/2006 |

Response Exhibit 1

1.      Attendance at Conferences and Hearings (¶ 3)

The Initial Report requests greater explanation concerning multiple professionals' attendance at, and preparation for, eighteen conferences and two hearings. The following lettered paragraphs explain the topic(s) of each conference or hearing and the need for each professional's participation therein.  As has been explained before, it is not K&E's routine practice to have multiple K&E attorneys at conferences and hearings.  When multiple professionals participated in a conference, they did so because: (a) K&E made the conscious decision that it was more advantageous to have multiple professionals participate, rather than relying on information to "flow down" after the conference had concluded, and/or (b) a particular professional's input was required for certain portions of the conference.  In the latter case, that professional only participated in the relevant portions of the conference at issue. In the case of hearings, in each instance that a particular professional participated, it was because that individual brought particular expertise and issue preparation to the hearing, and so his/her presence was critical.

Multiple professionals' participation/attendance at certain conferences has been particularly important in these Chapter 11 cases, because of the multiple proceedings pending in multiple forums, all of which are ultimately connected to these Chapter 11 cases.  It is critical that, for example, members of the criminal defense team meet regularly and coordinate with the asbestos personal injury ("PI") team, as many of the matters addressed in the defense of the criminal indictment will relate directly to the allowance and viability of certain PI claims.  In addition, discovery ongoing in the criminal case is running parallel with discovery in the PI estimation and coordination of these efforts has been necessary.

This reasoning will be further explained below, in the context of each individual questioned conference and hearing.

(a)      April 7, 2006 conference (Interim Report, Exhibit A, Item 1)

Bernick/Baer/Browdy/Harding

The April 7th conference was a key and rare in-person joint conference among the senior members of: (a) the criminal defense team (including Larry Urgenson and Tyler Mace whose time was billed in matter 57), (b) the PI team (Barbara Harding), (c) the asbestos property damage ("PD") team (Michelle Browdy) and (d) the bankruptcy team (me).  In addition, David Bernick participated in his role as quarterback of the entirety of the Debtors' cases across all forums (civil and criminal). K&E held the conference so that (a) the criminal defense team attorneys could discuss with the non-criminal team partners important developments in the criminal case and the corresponding defense strategy, and (b) all the conference participants could review and discuss the criminal case developments and their impact on the Debtors' Chapter 11 cases.

(b)      April 10, 2006 Conference (Interim Report, Exhibit A, Item 2)

Stansbury/Zoldan/Harding/McMillin/Browdy

These April 10th time entries actually represent successive meetings in one day with four different experts on epidemiological issues. The reasons for these meetings were: (1) to develop the reports being prepared by the experts, and (2) to allow PI team attorneys to stay informed of criminal expert issues, and, conversely, for criminal team attorneys to stay informed of PI expert issues. Because of the importance of epidemiological issues to the criminal case and the PI portion of the bankruptcy case, and because of the large degree of overlap of the underlying data, attorneys from both of those teams participated in these meetings. As discussed in the Prior Responses, due to the overlap and necessity for coordinating strategy between the criminal defense team and the PI team, it often makes sense for attorneys from both of those teams to meet, both with each other and with their mutual experts.

The April 10th meetings involved one testifying criminal defense expert and three PI non-testifying experts. Scott McMillin, the criminal defense team partner primarily responsible for development of expert issues, attended the meetings in order to: (a) confer and work on the expert report with an expert testifying in the criminal case, and (b) attend and participate in the meetings with non-testifying PI experts. Ms. Harding, lead partner on the PI team, attended in a capacity mirroring that of Mr. McMillin: she attended and participated in the meeting with the testifying criminal team expert, and she led the meetings with the PI experts.

Ms. Harding had primary PI expert witness development responsibility and attended the meetings both to oversee the process, and in order to fulfill her role as having responsibility for expert reports related to epidemiological issues. PI team associate Evan Zoldan assisted Ms. Harding with preparing and conducting the PI witness meetings. In addition, Mr. Zoldan had the primary responsibility of helping to develop the expert reports of two of the PI experts. Associate Brian Stansbury, a member of both the PI and criminal defense teams, had primary responsibility for developing one of the PI expert reports, and assisted Mr. McMillin in the meeting with the criminal testifying expert.

Finally, the "MHB" travel time entry listed in the Initial Report as relating to this conference was in fact unrelated travel by PD partner Michelle Browdy with respect to travel she engaged in for PD issues.

(c)    April 17, 2006 Hearing (Interim Report, Exhibit A, Item 3)

Bernick/Baer/Browdy/Harding/Bianca

Mr. Bernick, Ms. Harding, Ms. Browdy and I attended and participated in this hearing, while Mr. Bianca attended telephonically. Mr. Bernick presented the major contested matters, which included the Debtors' exclusivity extension argument and plan mediation, and a status report on PD claims. I conducted the portions of the hearing not conducted by Mr. Bernick, presented certain bankruptcy-related motions, and presented the uncontested matters. Ms. Harding, the lead partner on the PI team, reported on discovery issues regarding the Libby claimants. Ms. Browdy, as the lead

PD team partner, attended to present certain PD matters.  Restructuring associate Salvatore Bianca assisted in preparation of various materials for the hearing.  He attended (telephonically) the portions of the hearing related to the matters in which he was involved.

      (d)     April 13, 2006 Conference (Interim Report, Exhibit A, Item 4)

      Mace/Chiou/Koch/Jacobson/Grummer/Urgenson

The April 13th conference was one in a series of weekly "joint defense" telephone conferences scheduled for the K&E criminal defense team and the other law firms representing Grace and seven former Grace employees in preparation for the criminal trial originally scheduled to commence on September 11, 2006, in Missoula, Montana.  The charges related to the Debtors' former vermiculite mining and processing activities in Libby, Montana, as well as to events arising from EPA's cleanup of the Libby area, which began in November 1999.

K&E attorneys on the criminal matter participate in these weekly conferences as matters specific to their area of responsibility are on the conference agenda.  The joint defense conferences provide an opportunity for all criminal team co-counsel to discuss and coordinate various aspects of Grace's criminal defenses, including: review of discovery materials provided by the Government, discussion of research assignments, coordination of witness interviews, review of expert reports, and update of task lists.  These conferences increasingly focused on trial strategy (including opening statements and the cross-examination of Government witnesses) as September 11, 2006 approached.

The weekly conferences also served as internal team meetings for the K&E criminal team, allowing partners to avoid the inefficiency of describing case status to various associates on multiple occasions.  Since the joint defense conferences are generally in-person meetings for K&E (with other law firms participating via telephone), the meetings allow the team to coordinate work assignments for the upcoming week and discuss the status of in-progress projects.

Lawrence Urgenson, the senior litigation partner on the criminal matter, is ultimately responsible for all of Grace's criminal defense efforts.  He attended the April 13th conference in this capacity.  William Jacobson, the junior litigation partner on the criminal matter, manages the legal strategy, motions practice and factual development of Grace's defense.  As such, his participation in this conference was necessary.  Tyler Mace participated as the lead litigation associate on the criminal defense team, responsible for, among other things, the coordination of discovery and defense efforts with the individual defendants, as well as day-to-day management of the more junior associates assigned to the matter.  Christopher Chiou and Rebecca Koch participated in their roles as junior litigation associates on the criminal matter, each responsible for many areas of legal research and specific factual development.  Both of them attended the April 13th conference in order to report on the outcome of his or her previous assignments and to receive new assignments.  Finally, Mark Grummer attended in his role as the criminal team's environmental law expert.  He participates in the joint defense conferences whenever environmental issues require his expertise.

      (e)     April 14, 2006 Conference (Interim Report, Exhibit A, Item 5)

Chiou/Stansbury/Jacobson/Grummer/McMillin/Urgenson

This was a criminal defense team telephone conference. While the conference participants included many of the weekly joint defense conference participants, this conference focused specifically on a number of expert witness disclosures that were due to be filed on April 30th. Each K&E attorney listed bore responsibility for one or more of such disclosures, and, accordingly, each participated in order to update the team, coordinate filings, and discuss next steps toward finalizing the disclosures. Mr. McMillin participated in his role as criminal team partner responsible for expert development. In addition to the regular criminal team members, Mr. Stansbury, an associate on both the criminal and PI teams responsible for the development of expert reports, participated in that capacity.

(f)    April 20, 2006 Conference  (Exhibit A, Item 6)

Mace/Chiou/Jacobson/Grummer/Urgenson

The April 20th conference was another weekly joint defense conference. The participating attorneys attended in their respective roles described under paragraph (d) above.

(g)    April 27, 2006 Conference (Exhibit A, Item 7)

Mace/Chiou/Jacobson/Urgenson

The April 27th conference was another weekly joint defense conference. The participating attorneys attended in their respective roles described under paragraph (d) above.

(h)    May 19, 2006 Conference (Exhibit A, Item 8)

Basta/Stansbury/Fitzsimmons/Harding

The May 19th conference was with a key PI medical expert, and included both fact and expert discovery portions. Ms. Harding participated in both portions in her role as the lead partner on the PI team, with overall responsibility for PI estimation issues and expert development. Amanda Basta participated in her role as the lead associate on the PI team responsible for fact discovery. Her presence at this conference was particularly important in that this expert's area of expertise was critical in developing the discovery propounded on third parties by the Debtors. Mr. Stansbury attended in his role as senior associate responsible for expert reports and discovery; specifically, he attended in order to assist in developing the expert's report. Timothy Fitzsimmons, the PI team legal assistant responsible for scientific issues, assists with expert report preparation as well, and he participated in that capacity.

(i)    May 4, 2006 Conference (Exhibit A, Item 9)

Mace/Shumsky/Chiou/Stansbury/Jacobson/Smith/Urgenson

The May 4th conference was another weekly joint defense telephone conference, this one specifically focused on motions *in limine* that the Debtors were due to file on May 30th (many of which related to expert issues). The participating attorneys attended in their respective roles described under paragraph (d) above. In addition, criminal team attorneys Michael Shumsky and Renee Smith were each responsible for one or more of the motions being discussed, and attended in such capacity. Mr. Stansbury participated in his role described under paragraph (e) above.

    (j)    May 11, 2006 Conference (Exhibit A, Item 10)

Mace/Chiou/Clark/Stansbury/Bernick/Grummer/Harding/McMillin/Urgenson

The May 11th conference was another weekly joint defense telephone conference, again focused on the motions *in limine* discussed under paragraph (i) above. The participating attorneys attended in their respective roles described under paragraph (d) above. Mr. Stansbury and Mr. McMillin participated in their respective roles described under paragraph (e) above. Mr. Bernick participated in order to receive an update on the status of the motions and their relationship both to each other and to the Debtors' cases as a whole. He also provided the criminal team with his comments and feedback on the motions and proposed strategy. Lead PI team partner Ms. Harding attended in order to be informed of substance and strategy underlying the motions at issue and the impact thereof on the PI portion of the bankruptcy case. Kenneth Clark participated in his role as junior litigation associate on the criminal matter, responsible for various areas of legal research supporting certain of the motions being discussed.

    (k)    May 25, 2006 Conference (Exhibit A, Item 11)

Mace/Bianca/Chiou/Clark/Jacobson/Smith/McMillin/Urgenson

The May 25th conference was another joint defense conference that again focused on the motions *in limine* due to be filed May 30th. The participating attorneys attended in their respective roles described under paragraphs (d), (e) and (i) above. Litigation associate Salvatore Bianca, who had been given responsibility for certain motions and related witnesses, participated in portion of the conference related thereto.

    (l)    May 26, 2006 Conference (Exhibit A, Item 12)

Bianca/Chiou/Jacobson/Bernick/Grummer/Smith/McMillin/Urgenson

The May 26th conference was also a joint defense conference. Because the motions *in limine* described above were due only 4 days after this conference, the joint defense team members convened to finalize the substance of the motions, to ensure their internal consistency and to coordinate their filing. While each participating attorney attended in his or her role described above, each participant bore responsibility for (a) one or more of the motions, and/or (b) bore supervisory responsibility over all or some of the motions. For purposes of this conference, each participant's role was fairly specifically limited to his or her assigned motion(s). Mr. Bernick participated in his role described under paragraph (j) above.

(m)    June 19, 2006 Hearing Attendance and Preparation (Exhibit A, Item 13)

Harding/Baer/Bianca/Blatnick/Bernick

Mr. Bernick and I each attended and conducted portions of the June 19th hearing.  Mr. Bernick presented a status report on plan mediation, while I presented certain bankruptcy-related motions and uncontested matters. Ms. Harding attended (telephonically) the portions of the hearing relating to personal injury matters. Mr. Bianca and litigation associate Samuel Blatnick each assisted in preparation of various materials for the hearing, and each attended (telephonically) the portions of the hearing related to the matters in which each was involved.

(n)    June 6, 2006 Conference (Exhibit A, Item 14)

Mace/Shumsky/Stansbury/Jacobson/Harding/McMillin/Urgenson

The June 6th time entries on the Initial Report represent two separate conferences.  Mr. McMillin's entries relate to a meeting with a criminal expert. Ms. Harding participated in a portion of this conference via telephone.

The remaining five professionals' entries relate to a meeting among members of the criminal defense team and in-house attorneys for the Debtors.  The conference's purpose was to bring the client up to speed on recent criminal case developments and to make key strategic decisions concerning the criminal case (further information is attorney-client privileged).

(o)    June 8, 2006 Conference (Exhibit A, Item 15)

Mace/Shumsky/Chiou/Clark/Koch

The June 8th conference was another weekly joint defense conference.  The participating attorneys attended in their respective roles described under paragraph (d), (i) and (j) above.

(p)    June 13, 2006 Conference (Exhibit A, Item 16)

Bianca/Utgoff/Stansbury/Jacobson/Harding/McMillin

The June 13th time entries on the Initial Report represent five different conferences.  Each of the six K&E professionals listed, except Margaret Utgoff, conferred with different experts on this date, but there was no joint conference.  (Ms. Utgoff, a PI team legal assistant, attended one of the expert conferences Mr. Stansbury conducted on June 13th.) Mr. Bianca, Mr. Jacobson, Ms. Harding, Mr. Stansbury and Mr. McMillin, collectively, conferred with twelve experts on June 13th, but, save for Ms. Utgoff's time, described above, each of these time entries represents a conference between only the participating attorney and the expert at issue.  In addition, 1.7 hours of Ms. Harding's time represents time spent conferring with Mr. McMillin about their overlapping expert development responsibilities in general, and the expert reports they had reviewed and discussed that day, in particular.

(q)      June 15, 2006 Conference (Exhibit A, Item 17)

Mace/Shumsky/Chiou/Jacobson

The June 15th conference was another weekly joint defense conference.  The participating attorneys attended in their respective roles described under paragraph (d) above.  Mr. Shumsky attended in his role described in paragraph (i) above.

(r)      June 22, 2006 Conference (Exhibit A, Item 18)

Mace/Chiou/Jacobson/Grummer/Urgenson

The June 22nd conference was another weekly joint defense conference.  The participating attorneys attended in their respective roles described under paragraph (d) above.

(s)      June 26, 2006 Conference (Exhibit A, Item 19)

Shumsky/Bianca/Chiou/Jacobson/Urgenson

The June 29th conference was another weekly joint defense conference.  The participating attorneys attended in their respective roles described under paragraph (d) above.  Mr. Shumsky participated with respect to his role described under paragraph (i) above, and Mr. Bianca participated in his role described under paragraph (k) above.  In addition, Mr. Bianca bore responsibility for replying to several of the oppositions on the motions *in limine*, and attended the portion of the conference related thereto.

(t)      June 29, 2006 Conference (Exhibit A, Item 20)

Mace/Jacobson/Grummer/Urgenson

The June 29th conference was another weekly joint defense conference.  The participating attorneys attended in their respective roles described under paragraph (d) above.

Response Exhibit 2

1.      David Bernick Conference on June 7, 2006 (¶ 4)

Paragraph 4 of the Initial Report notes the following June 7th conference attended by David Bernick, and requests that K&E explain why the conference should not be considered a (non-reimbursable) professional seminar:

6/7/2006      David M Bernick, P.C.      5.00   Prepare for and attend conference re personal injury litigation in bankruptcy.

The June 7th conference was not an outside seminar or conference, but rather, a conference held amongst the various attorneys on the PI team and the Debtors' in-house attorneys.  This particular conference was held in K&E's Washington, D.C. offices, and participants included K&E partners Barbara Harding and Elli Leibenstein, as well as in-house counsel of the Debtors.  The subject of the conference was to review the status of and strategy toward the PI litigation at the core of the Grace bankruptcy cases.  A more accurate description of Mr. Bernick's time would have read, "Prepare for and attend team and client conference re personal injury litigation issues in Grace bankruptcy case."  Mr. Bernick's use of the work "bankruptcy" as it appeared in his time entry signified only K&E's "shorthand" for the full term "W.R. Grace bankruptcy case."  For this reason, K&E respectfully requests approval of the fees for Mr. Bernick's time spent preparing and participating in the June 7th conference.

Response Exhibit 3

1.      Laura Mellis time spent attending database training on April 12, 2006.  (¶ 5)

Paragraph 5 of the Initial Report notes a fee of $122.50 for 0.7 hours spent by legal assistant Laura Mellis, of K&E's Washington, D.C. office attending database training on April 12th, and asks why the cost should not be considered part of K&E's overhead.  This particular database was created for a Grace-specific purpose: it is a Concordance database of all the many exhibits that have been used by various members of the Asbestos Personal Injury Committee in Grace trials over the years. Ms. Mellis was asked by the attorneys on the PI team to learn how to use the database so that she could readily obtain any document those attorneys might need in their preparation on the PI portion of the bankruptcy case.  For this reason, K&E respectfully requests approval of the fees for Ms. Mellis' time spent training on the Grace specific Concordance database.

Response Exhibit 4

1.    Professional and Expert Fees (¶ 6)

The Initial Report requests that K&E provide the following information for each of the 29 entries for professional and expert fees listed in Exhibit B of the Initial Report:

(a)    provider of the service;

(b)    need for and nature of expertise provided; and

(c)    ultimate benefit to the estate of the service provided.

      Exhibit A hereto contains a chart providing (with the caveat below) the identity of each such provider and the nature of the work provided.  I believe that the need for each provider's expertise and the corresponding benefit to the estate are made clear by virtue of the information presented in the chart, but I will be happy to discuss this information with you in greater detail, subject to the paragraph below.

      The caveat I refer to above is that, when the identity of a particular provider or expert has not been disclosed publicly in the case, I have not disclosed that provider or expert's identity on Exhibit A.  Instead, I have included a brief description of the type of services such provider or expert has provided the Debtors.  As I said above, I believe that Exhibit A provides you with sufficient information to judge the necessity for and benefit from the services of each provider or expert. However, should you desire greater detail, please contact me as the information may be confidential attorney work product.  In particular, if you wish to know the identity of an undisclosed expert or see his invoice, we will need to arrange to give you that information in a confidential manner.

Response Exhibit 5

1.      May 29, 2006 Foreign Draft Expense and June 19, 2006 Conference Audio CD Expense (¶ 7)


        The Initial Report questions two expenses in Paragraph 7.  They are set forth below, each followed by K&E's response:

>       5/26/2006      487.96 RUESCH INTERNATIONAL - ADDITIONAL CHARGE FOR FOREIGN DRAFT ISSUED FOR ASBESTOS FORUM ATTENDED BY B. STANBURY

        K&E agrees that the expense should not have been charged to the Debtors, and so it hereby withdraws the expense from the Fee Application.


>       6/19/2006      423.94 LEXISNEXIS MEALEY'S - Information Broker Doc/Svcs, Asbestos Bankruptcy Conf audio CD, 6/19/06

        An attendee of this conference (to which no K&E professionals attended) informed me that certain other parties in the Grace case were present at the conference and made statements at conference presentations that revealed confidential information about the Debtors.  In order to verify whether this occurred, I needed to obtain the audio CD of the conference.  Upon review of the CD, we discovered that confidential information was indeed revealed and the CD information was subsequently cited in the Grace case.  For these reasons, K&E respectfully requests approval of the charge associated with the June 19th expense.

Response Exhibit 6

1.      Hotel Expenses (¶ 8)

The Initial Report lists four hotel expenses and, for each, requests (i) an explanation as to why the hotel cost should not be viewed as excessive, and (ii) the appropriate room tax information so that the Fee Auditor might fairly assess the total rate.

First, K&E will agree, for purposes of these four hotel expenses, to reduce the amounts charged to the Debtors' estate by the requisite amount (i.e., the amount by which the room charge, net of taxes, is above the recommended cap).   However, I would like to note that, with respect to these four expenses, as with numerous other hotel room expenses incurred by K&E that have fallen outside the recommended caps, K&E has booked the hotel rooms at the earliest time feasible given the shifting demands on the professionals working on the Debtors' cases.  K&E is aware of the Fee Auditor's recommended hotel room ceilings, and I send out periodic reminders to the entire Grace team to request that each Grace team member make every possible effort to stay within the recommended caps.  I would appreciate the opportunity to address with you these continuing exceptions K&E is encountering to the recommended hotel expense caps.

Below please find each of the questioned expenses, followed by a breakout of the hotel room rate and the taxes.

(a)      4/6/2006       376.71 Michelle Browdy, Hotel, Washington, DC, 04/06/06, (Conference)

| Room Rate | Room Tax | Total |
|-----------|----------|-------|
| $329.00 | $47.71 | $376.71 |

To comply with the recommended $300 per night cap for Washington, D.C. hotels, K&E agrees to a reduction of $29.00 on this expense.

(b)      4/24/2006       491.01 Samuel Blatnick, Hotel, New York, NY, 04/24/06, (Conference)

| Room Rate | Room Taxes | | Total |
|-----------|------------|--|-------|
| $430.00 | NY Sales Tax 8.35% | $36.01 | $491.01 |
| | NY City Tax 5% | $21.50 | |
| | Occupancy Tax ($2.00) Javits Fee ($1.50) | $3.50 | |
| | Total Taxes | $61.01 | |

To comply with the recommended $350.00 per night cap for New York, N.Y. hotels, K&E agrees to a reduction of $80.00 on this expense.

(c)    4/6/2006        376.71 Renee Smith, Hotel, D.C., 04/06/06, (Client Conference)

| Room Rate | Room Tax | Total |
|---|---|---|
| $329.00 | $47.71 | $376.71 |

To comply with the recommended $300.00 per night cap for Washington, D.C. hotels, K&E agrees to a reduction of $29.00 on this expense.

(d)    4/6/2006        502.66 Elli Leibenstein, Hotel, Washington, DC, 04/06/06 (Client Conference)

| Room Rate | Room Tax | Total |
|---|---|---|
| $439.00 | $63.36 | $502.66 |

To comply with the recommended $300.00 per night cap for Washington, D.C. hotels, K&E agrees to a reduction of $139.00 on this expense.

Response Exhibit 7

1.    Rental Car Expenses (¶ 9)

The Initial Report lists two car rental expenses that represent a daily rental fee that is higher than that of the other car rental expenses listed in the Fee Application, and asks for an explanation of the difference.

(a)    4/22/2006    715.79 Brian Stansbury, Car Rental, Missoula, MT, 04/18/06 to 04/22/06, (Document Production)

Mr. Stansbury traveled to Montana from April 18th to April 22nd in order to participate in an expert conference (in Missoula) and to conduct a document review (in Kalispell).  As the two cities are approximately 3 hours driving time from each other, it was efficient and economical for him to rent a vehicle upon his arrival in Montana (in Missoula) and return it upon his departure from Montana (in Kalispell).  (His alternative would have been to drive the vehicle back to Missoula, thereby incurring billable fees for his 3 hours of driving time.)  In addition, car rental charges are generally higher in small rental locations such as Missoula (as compared with urban or larger rental locations).  For these reasons, K&E respectfully requests approval of this car rental expense.

(b)    6/7/2006    480.06 Margaret Utgoff, Car Rental, Missoula, MT, 06/07/06 to 06/11/06, (Conference)

The per-day rate for this car rental expense was higher than for other car rental expenses listed in the Fee Application for two reasons:  first, Ms. Utgoff rented the vehicle at the Missoula, Montana airport and returned it at the Kalispell Airport, which resulted in an extra drop-off fee.  She did this because, as with Mr. Stansbury's travel described above, she combined a trip to Kalispell and a trip to Missoula in one trip to Montana.  In addition, because Ms. Utgoff is under the age of 25, she was charged (as is standard for car rental agencies) a $25/day additional charge.  For these reasons, K&E respectfully requests approval of this car rental expense.

Response Exhibit 8

The Initial Report lists the following transportation expense and requests that K&E explain the charge.

6/16/06          592.43 SUNNY'S EXECUTIVE SEDAN SERVICE INC - Transportation to/from
                 airport, 6/8/06, B. Stansbury

Mr. Stansbury ordered this car service for one day (9.0 hours), to take him from his home in Arlington, Virginia, first to K&E's Washington, D.C. office, to pick up preparation materials, and then to various locations in the Baltimore, Maryland vicinity, to meet with numerous expert witnesses.  Because Mr. Stansbury was visiting numerous witnesses at different locations on the same day, he felt that it would be more efficient and less costly to order a car service for the day than to rent a car and pay for car rental, gas, multiple parking fees, and a fee for rental car drop-off at a different location than pick-up.  (Mr. Stansbury returned to the office rather than to his home after his interviews were complete). In addition, booking a car service rather than a rental car allowed Mr. Stansbury to spend his travel time preparing for these meetings rather than driving.  For these reasons, K&E respectfully requests approval of this transportation expense.

Response Exhibit 9

1.      Travel Meal Expenses (¶ 11)

The Initial Report identifies two travel meal expenses with respect to which it requests the type of meal.  Each of these expenses is set forth below, followed by the requested information:

5/16/06          108.04 Renee Smith, Travel Meal, Washington, DC, 05/16/06, (Trial preparation)

This meal was for a room service dinner on May 16, 2006.  In accordance with the recommended $50 per person dinner expense cap, K&E agrees to reduce this expense by $58.04.

5/16/06           64.63  Renee Smith, Travel Meal, Washington, DC, 05/16/06, (Trial preparation)

This meal was for a room service dinner on May 17, 2006 (not May 16, which date appeared due to a typographical error on the Fee Application).  In accordance with the recommended $50 per person dinner expense cap, K&E agrees to reduce this expense by $14.63.