**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF BILZIN SUMBERG DUNN BAENA**
**PRICE & AXELROD LLP FOR THE TWENTY-FIRST INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Fee Application of Bilzin Sumberg Dunn Baena Price & Axelrod LLP for the Twenty-First Interim Period.

**BACKGROUND**

1.   Bilzin Sumberg Dunn Baena Price & Axelrod LLP ("Bilzin") was retained as counsel to the Official Committee of Asbestos Property Damage Claimants. In the Application, Bilzin seeks approval of fees totaling $677,491.00 and costs totaling $822,323.72 for its services from April 1, 2006, through June 30, 2006.

2.   In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330, Issued January 30, 1996 (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Bilzin an initial report based on our review, and received a response from Bilzin, portions of which response are quoted herein.

## DISCUSSION

3.  In our initial report, we noted that the U.S. Trustee, by e-mail to Jay Sakalo on September 18, raised a number of concerns regarding the Application: (1) a single lawyer billed 426.80 hours and $160,050.00 for reviewing the Boston Repository Index without a sufficient explanation of these activities, (2) Bilzin billed $114,250.35 for reviewing and analyzing property damage claim files without a sufficient explanation of these activities, (3) Bilzin professionals gave vague activity descriptions with respect to other matters including telephone conferences, (4) Bilzin billed $33,308 to "review and analyze debtors' insurance policies", and (5) Bilzin seeks reimbursement of $784,895.16 in expert witness fees and costs without adequately justifying and explaining the fees and costs. As we believe that these issues are being adequately addressed by the U.S. Trustee, we do not believe that there is any need for us to review the U.S. Trustee's concerns here, and thus we do not express any opinion on those issues. Thus, our recommendation expressed herein remains subject to this Court's determination of any of the issues raised by the U. S. Trustee.

4.  In our initial report, we noted that we did not believe the activity descriptions for reviewing and analyzing property damage claim files adequately explained the activities of paralegals engaged in review and "analysis" of property damage claim files. Without repeating

the U.S. Trustee's efforts in quantifying the amounts in question, we asked that Bilzin further describe these activities for which the estate is asked to pay $114,250.35 in fees. Bilzin's response is provided as Response Exhibit 1. We appreciate the response.

5. In our initial report, we noted an instance in which a summer associate billed 24.7 hours and $4,940.00 (at $200.00 per hour) on a "summer assignment", and two attorneys billed a total of 0.90 hour and $310.00 for assisting the summer associate.

| Date | Atty | Hours | Amount | Description |
|---|---|---|---|---|
| 05/17/06 | JWB | 2.00 | 400.00 | Review case file and research pension contributions. |
| 05/17/06 | JWB | 2.00 | 400.00 | Meeting with Jay Sakalo (.5); conference call regarding research project on pension contributions (1.5). |
| 05/17/06 | JMS | 4.00 | 200.00 | Conference with J. Burke regarding pension issues and research projects (.5);…. |
| 05/18/06 | JWB | 0.30 | 60.00 | Meeting with Jay Sakalo regarding research signment on pension contribution. |
| 05/23/06 | JWB | 2.00 | 400.00 | Research on minimum contributions to pensionfunds. |
| 05/24/06 | JWB | 7.50 | 1,500.00 | Research minimum contributions to pension fund. |
| 05/24/06 | JCM | 0.40 | 110.00 | Assist J. Burke with summer assignment. |
| 05/25/06 | JWB | 10.00 | 2,000.00 | Research minimum contributions to pension fundand draft memorandum regarding same (10.0). |
| 05/25/06 | JWB | 0.30 | 60.00 | Meet with J. Sakalo concerning research on minimum contributions to pension fund. |
| 05/31/06 | JWB | 0.60 | 120.00 | Attend conference calls regarding pension matters. |

We asked Bilzin to explain the value the referenced activities conferred upon the estate and why they should be compensated at the indicated rates. Bilzin's response is provided as Response

Exhibit 2. We appreciate the response. We accept that the research proved meaningful to Bilzin in its role as counsel to the PD Committee; however, a further issue is whether the billing rate for this research as performed by a summer law clerk may be too high. We note that first-year associates billed at $225, while paralegals billed at as much as $160 per hour. In this context, $200 per hour for a summer associate does not seem clearly excessive. Since we are satisfied that the work was valuable, we accept the explanation and recommend no reduction in this regard.

6.      In our initial report, we noted what appeared to be two research projects by another summer associate, for which a total of 20.75 hours and $4,150.00 were billed to the estate:

| | | | | |
|---|---|---|---|---|
| 06/21/06 | CP | 5.00 | 1,000.00 | Research on bankruptcy abstention and ancillary forums and write research memorandum. |
| 06/24/06 | CP | 0.50 | 100.00 | Edit memo for response to motion. |

And:

| | | | | |
|---|---|---|---|---|
| 06/22/06 | CP | 5.00 | 1,000.00 | Research regarding 15th omnibus objection. |
| 06/23/06 | CP | 5.50 | 1,100.00 | Memo regarding 15th omnibus objection. |
| 06/25/06 | CP | 0.50 | 100.00 | Edit memo for regarding 15th omnibus objection. |
| 06/26/06 | CP | 4.20 | 850.00 | Finalize memo regarding 15th omnibus objection. |

We asked Bilzin to explain these projects and the value they provided the estate. Bilzin's response is provided as Response Exhibit 3. As with the issue addressed in Paragraph 5, we accept that the research proved meaningful to Bilzin in its role as counsel to the PD Committee. Additionally, we note that first-year associates billed at $225, while paralegals billed at as much

as $160 per hour. In this context, $200 per hour for a summer associate does not seem clearly excessive. Since we are satisfied that the work was valuable, we accept the explanation and recommend no reduction in this regard.

7. In our initial report, we noted that Bilzin has not provided adequate detail regarding its airfare expenses. See Exhibit A. We asked Bilzin to provide more information regarding each airline expense. Bilzin's response is provided as Response Exhibit 4. We appreciate the response and have no objections to these expense items, other than the item with respect to which Bilzin has agreed to a $160 reduction. Accordingly, we recommend a reduction of $160.00 in expenses.

8. In our initial report, we noted the following expense entries totaling $784,895.16 for expert witness fees and costs:

| Date | Description | Amount |
|---|---|---|
| 03/31/06 | Miscellaneous Costs   Professional/Expert fees related to PD Estimation for March 2006   $330.00 | 330.00 |
| 03/31/06 | Miscellaneous Costs   Professional/Expert fees related to PD Estimation for March 2006   $228,973.53 | 228,973.53 |
| 04/30/06 | Miscellaneous Costs   Professional/Expert fees related to PD Estimation for April 2006   $214,948.13 | 214,948.13 |
| 05/31/06 | Miscellaneous Costs   Professional/Expert fees related to PD Estimation for May 2006   $168,993.33 | 168,993.33 |
| 06/30/06 | Miscellaneous Costs   Professional/Expert fees related to PD Estimation for June 2006   $171,650.17 | 171,650.17 |

We asked Bilzin to provide further information regarding these charges. Bilzin's response is attached as Response Exhibit 5. We accept this response and have no objection to these expenses.

9. In our initial report, we noted a number of limousine charges that the expense detail does not adequately explain:

| Date | Description | Amount |
|---|---|---|
| 03/27/06 | Fares, Mileage, Parking VENDOR: KING LIMOUSINE AND TRANSPORTATION SERVIC; INVOICE#: 86836 DATE 3/31/2006 – Clients | 49.88 |
| 04/16/06 | Fares, Mileage, Parking VENDOR: KING LIMOUSINE AND TRANSPORTATION SERVIC; INVOICE#: 87412 DATE 4/16/2006 – Account# BILZIN | 49.13 |
| 04/17/06 | Fares, Mileage, Parking VENDOR: KING LIMOUSINE AND TRANSPORTATION SERVIC; INVOICE#: 87660 DATE 4/23/2006 – Clients | 48.38 |
| 06/19/06 | Fares, Mileage, Parking VENDOR: KING LIMOUSINE AND TRANSPORTATION SERVIC; INVOICE#: 90656 DATE 6/25/2006 – Account# BILZIN | 211.13 |

We asked Bilzin to indicate the point of origin and the destination of each of the trips associated with these charges, to compare the charges with the cost of regular taxi transportation, and to explain why these charges should be considered reasonable. Bilzin provided the following response:

> The Fee Auditor requests additional information regarding expenses for sedan-car service trips. Each of the trips was for transportation from either the Philadelphia airport to Wilmington or from Wilmington to Philadelphia via a sedan-car service vendor named King Limousine. Bilzin utilizes a car service for travel between Philadelphia and Wilmington, and has negotiated a rate with this vendor that is lower than the cost of taxi service between the two locations. In fact, we utilize the same service as many other professionals in this case. The first three entries are pro-rated one-way trips, as Bilzin utilized such service for two cases on such occasions. The last entry is a round-trip charge that was not pro-rated, as Bilzin only used the service for attendance at a Grace omnibus hearing on that trip.

We appreciate this response and have no objection to these expenses.

10. In our initial report, we noted the following sizable taxi charges:

| | | |
|---|---|---|
| 04/17/06 | Fares, Mileage, ParkingTaxi Fare – Travel to NYC – VENDOR: SCOTT L. BAENA; INVOICE#: SLB-04/19/06; DATE 4/19/2006 – Client -15537 | 48.38 |
| 05/25/06 | Fares, Mileage, ParkingCab Fare – Travel to Philadelphia – VENDOR: Snyder,Jeffrey; INVOICE#: JS-05/25/06; DATE 5/25/2006 – Client -15537 | 90.00 |
| 05/30/06 | Fares, Mileage, ParkingCab Fares – Travel to NY – VENDOR: SCOTT L. BAENA; INVOICE#: SLB-05/30/06; DATE 5/30/2006 – Client -15537 | 57.00 |
| 06/19/06 | Fares, Mileage, ParkingTaxi fares – Travel to NY – VENDOR: SCOTT L. BAENA; INVOICE#: SLB-06/27/06; DATE 6/27/2006 – Client -15537 | 66.00 |

We asked Bilzin to indicate the point of origin and destination for each taxi ride. Bilzin's response is attached as Response Exhibit 6. We appreciate the response but do not understand the statement that the nature of the $48.38 charge was addressed in the response to paragraph 9. That response dealt with trips between Philadelphia and Wilmington, while the charge in question here refers to New York City. In the absence of further information, we recommend a reduction of $48.38 in expenses.

11. In our initial report, we noted the following meal charges for which inadequate detail is provided:

| | | |
|---|---|---|
| 05/16/06 | MealsTravel to Delaware – VENDOR: JAY M. SAKALO; INVOICE#: JMS-05/16/06; DATE: 5/16/2006 - Clients | 33.00 |
| 05/16/06 | MealsTravel to NY – VENDOR: SCOTT L. BAENA; INVOICE#: SLB-05/16/06; DATE: 5/16/2006 - Clients | 36.29 |
| 05/25/06 | MealsTravel to Philadelphia – VENDOR: Snyder,Jeffrey; INVOICE#: JS-05/25/06; DATE: 5/25/2006 – Client – 15537 | 122.38 |

We asked Bilzin to indicate which meal of the day each charge covers and the number of diners

encompassed by each charge. Bilzin's reply is attached as Response Exhibit 7. We note that the expense detail reflects one dinner for one person in the amount of $57.99. This exceeds our standard of reasonableness by $7.99, and we accordingly recommend a reduction of $7.99 in expenses.

      12.      In our initial report, we noted the following inadequately detailed lodging charge:

05/25/06      LodgingTravel to Philadelphia – VENDOR: Snyder,Jeffrey;902.42
                INVOICE#: JS-05/25/06; DATE: 5/25/2006 – Client – 15537

We asked Bilzin to indicate the number of nights encompassed by this charge. Bilzin replied that "[t]he expense in question was for 3 nights lodging." Because Philadelphia's city, county, and state hotel taxes total 14 percent, we calculate that the expenditure was $791.60, or $263.87 per night, before taxes. This exceeds our standard of reasonableness by $13.87 per night, and we accordingly recommend a reduction of $41.60 in expenses.

## CONCLUSION

      13.      Thus we recommend approval of fees totaling $677,491.00 and expenses in the amount of $822,065.75 ($822,323.72 minus $257.97) for Bilzin's services from March 1, 2005, through May 31, 2005.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
    Warren H. Smith
    Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1275
Dallas, Texas 75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 8th day of December 2006.

_____
Warren H. Smith

**SERVICE LIST**

**The Applicant**
Scott L. Baena
Jay M. Sakalo
BILZIN SUMBERG DUNN BAENA PRICE & AXELROD LLP
2500 First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2385

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph,Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**
Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Buchanan Ingersoll
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

| | | |
|---|---|---:|
| 03/15/06 | AirfareTravel to NY – VENDOR: DINERS CLUB; INVOICE#: 03/28/06; DATE 3/28/2006 – Acct.#5306220025395504 - Continental Travel | 1,567.10 |
| 03/22/06 | Fares, Mileage, ParkingTravel to Washington DC – VENDOR: DINERS CLUB; INVOICE#; 03/28/06: DATE 3/28/2006 – Acct.#5306220025395504 - Continental Travel | 1,568.60 |
| 03/26/06 | AirfareTravel to Philadelphia – VENDOR: DINERS CLUB; INVOICE#: 03/28/06; DATE 3/28/2006 – Acct.#5306220025395504 - Continental Travel | 574.30 |
| 04/19/06 I | AirfareTravel from NYC – VENDOR: SCOTT L. BAENA; NVOICE#: SLB-04/19/06; DATE 4/19/2006 – Client 15537 | 659.30 |
| 04/16/06 | AirfareTravel to Philadelphia – VENDOR: DINERS CLUB; INVOICE#: 03/28/06-04/26/06; DATE 4/26/2006 – Acct.#5306-2200-2539-5504 | 784.30 |
| 04/17/06 | AirfareTravel from Philadelphia – VENDOR: DINERS CLUB; INVOICE#: 03/28/06-04/26/06; DATE 4/26/2006 – Acct.#5306-2200-2539-5504 | 404.65 |
| 04/19/06 | AirfareTravel to NY – VENDOR: DINERS CLUB; INVOICE#: 03/28/06-04/26/06; DATE 4/26/2006 – Acct.#5306-2200-2539-5504 | 379.30 |
| 04/19/06 | AirfareTravel from NY – VENDOR: DINERS CLUB; INVOICE#: 03/28/06-04/26/06; DATE 4/26/2006 – Acct.#5306-2200-2539-5504 | 379.30 |
| 05/14/06 | AirfareTravel to Philadelphia – Continental Travel – VENDOR: DINERS CLUB; INVOICE#: 04/26/06-05/26/06; DATE 5/26/2006 – Firm - Acct.#5306220025395504 | 429.65 |
| 05/15/06 | AirfareTravel to Delaware – VENDOR: SCOTT L. BAENA; INVOICE#: SLB-05/16/06; DATE 5/16/2006 – Clients | 404.65 |
| 05/16/06 | AirfareTravel to NY - VENDOR: SCOTT L. BAENA; INVOICE#: SLB-05/16/06; DATE 5/16/2006 – Firm - Acct.#5306220025395504 | 759.30 |
| 05/16/06 | AirfareTravel to NY – Continental Travel – VENDOR: | 759.30 |

**FEE AUDITOR'S FINAL REPORT** - Page 11
wrg FR Bilzin 21st.wpd

| | | |
|---|---|---:|
| | DINERS CLUB; INVOICE#:  04/26/06-05/26/06; DATE 5/26/2006 –Firm - Acct.#5306220025395504 | |
| 05/30/06 | AirfareTravel to NY - VENDOR:  SCOTT L. BAENA; INVOICE#:  SLB-05/30/06; DATE 5/30/2006 – Firm - Acct.#5306220025395504 | 1,298.60 |
| 05/30/06 | AirfareTravel to NY - VENDOR:  JAY M. SAKALO; INVOICE#: JMS-05/30/06; DATE 5/30/2006 – Client 15537 | 1,568.60 |
| 06/19/06 | AirfareTravel to Philadelphia - VENDOR:  SCOTT L. BAENA; INVOICE#:  SLB-06/19/06; DATE 6/19/2006 – Client 15537 | 808.60 |
| 06/19/06 | AirfareTravel to Philadelphia - VENDOR:  JAY M. SAKALO; INVOICE#:  JMS-06/19/06; DATE 6/19/2006 – Clients | 808.60 |
| 06/23/06 | AirfareTravel to Washington, DC - VENDOR:  JAY M. SAKALO; INVOICE#:  JMS-06/26/06; DATE 6/26/2006 – Client 15537 | 1,288.60 |
| 06/26/06 | AirfareTravel to Washington, DC - VENDOR:  SCOTT L. BAENA; INVOICE#:  SLB-06/26/06; DATE 6/26/2006 – Client 15537 | 1,288.60 |
| 06/27/06 | AirfareTravel to NY - VENDOR:  SCOTT L. BAENA; INVOICE#:  SLB-06/27/06; DATE 6/27/2006 – Client 15537 | 1,288.60 |

Response Exhibit 1

The Fee Auditor requests an explanation regarding the activities of certain paraprofessionals with respect to the review and analysis of insurance property damage claim files. As has been explained to the Fee Auditor in response to issues raised in prior fee applications, the estimation of property damage claims (the "PD Estimation") is one of the most critical aspects of the PD Committee's function in these cases, recognizing the current status of the methodology issues and claims objections. The task of estimating thousands of filed property damage claims is unprecedented and necessitates a full-time team devoted to the host of issues that must be addressed for the PD Committee to properly estimate the claims. As an example of this task's complexity, the Debtors seek to reduce their liability owing to these claimants based on such purported defenses as (a) constructive notice; (b) actual notice; (c) assumption of risk; and (d) lack of hazard of Debtors' asbestos products.

In respect of the PD Estimation, Bilzin sought documents from the Debtors concerning (a) asbestos property damage insurance claim files and (b) files relating to the settlement of pre-petition property damage claims. In response to the PD Committee's discovery requests, the Debtors produced in excess of 200,000 pages of insurance claim file documents on a non-searchable CD-ROM. Without any doubt, these documents are highly relevant to the estimation of property damage claims as they comprise the Debtors' historical settlements with its insurers regarding pre-petition property damage claims. In order to streamline the review and analysis of the 200,000+ pages, Bilzin assigned the task to lower-billing paraprofessionals. At times, however, certain of the documents included on the CD-ROMs, including the underlying insurance policies, required detailed analyses by attorneys. As you can see though from the time entries, these are few and far between.

At the onset of the project, Bilzin's paraprofessionals were educated regarding the particular details of the matter and the type of information sought. Through their analyses, Bilzin's paraprofessionals created a searchable, navigable database that allows Bilzin attorneys and the PD Committee's experts to run queries in response to targeted search requests. Moreover, through the analyses, Bilzin discovered highly relevant and probative information relevant to the PD Estimation. Without question, the analyses needed to be completed by the PD Committee and Bilzin submits that its use of paraprofessionals to accomplish the lion's share of the project was reasonable and should be compensable in full. Bilzin also notes that the UST raised a similar question regarding the time entries at issue, but was fully satisfied by Bilzin's response to his inquiry.

Response Exhibit 2

The Fee Auditor requests an explanation regarding a research project performed by a summer associate at our Firm. The research project assigned to the summer associate was in respect of the Debtors' motion to make further contributions to their pension programs to cure alleged underfundings under ERISA guidelines. The PD Committee has been very careful in analyzing each of the Debtors' prior requests to make pension contributions. In this instance, the Debtors sought authority to pay in excess of $100 million over time to their pension plans. The PD Committee requested that Bilzin analyze the legal implications of the Debtors' request analyze and the minimum funding requirements under ERISA. This project was initially delegated to James Burke (JWB), a summer law clerk from the University of Virginia College of Law. Mr. Burke ably researched the ERISA statutory scheme and presented Mr. Sakalo with various alternative theories that could be pursued. Indeed, as a direct result of Mr. Burke's research and analysis, Bilzin, along with the FCR's counsel, was successful in obtaining significant concessions from the Debtors with respect to the funding request, including their agreement to consider the various proposals that Mr. Burke was instrumental in developing. Thus, it is clear that the activities were necessary and reasonable, and should be fully compensable.

Response Exhibit 3

The Fee Auditor requests an explanation regarding two research projects performed by a summer associate at our Firm. In reality, it was one research project related to the Debtors' motion to, among other things, transfer the adjudication of property damage claims filed by claimants in Canada against the Debtors to a proceeding in Canada for Grace Canada, Inc., a non-debtor in these cases. Chris Paniewski's research on two discreet legal issues presented in the Debtors' motion was incorporated directly into the PD Committee's opposition to the Debtors' motion. Indeed, the PD Committee, on account of its written opposition and oral advocacy, was successful in defeating the Debtors' motion after two court hearings and two rounds of briefing. Thus, it is clear that the work product of Mr. Paniewski should be fully compensable.

Response Exhibit 4

The Fee Auditor requests additional information regarding certain airfare expenses listed on Exhibit A. Bilzin's responses are below.

- 3/15/06 -- $1,567.10
    - Roundtrip airfare from Miami to NYC for Mr. Sakalo. The fare was booked as an "A" class fare which is a special First-Class fare that is less than refundable coach class fares
- 3/22/06 -- $1,568.60
    - Roundtrip airfare from Miami to Washington, D.C. for Mr. Sakalo. The fare was booked as an "A" class fare which is a special First-Class fare that is less than refundable coach class fares
- 3/26/06 -- $574.30
    - Roundtrip airfare from Miami to Philadelphia for Mr. Kramer. The fare was booked as an economy class and split with USG.
- 4/19/06 -- $ 659.30
    - Airfare from NYC to Miami for Mr. Baena. The fare was booked as coach class fare
- 4/16/06 -- $784.30
    - Roundtrip airfare from Miami to Philadelphia for Mr. Sakalo. The fare was booked as an economy class and split with USG. Return fare was cancelled and rescheduled and credit for same is reflected on Bilzin's June 2006 statement.
- 4/17/06 -- $ 404.65
    - One way fare from Philadelphia to Miami for Mr. Sakalo, split with USG. "P" class fare
- 4/19/06 -- $ 379.30
    - Depart Miami to NYC on American Airlines for Mr. Sakalo. Total airfare $1,138.60. Return air to Miami from NYC was changed to Delta Airlines. A amount of $759.30 was refunded for the second leg of the American Airlines trip.
- 4/19/06 -- $ 379.30
    - There is only one charge for $379.30 on our statement for May 2006.
- 5/14/06 -- $ 429.65
    - Roundtrip airfare from Miami to Philadelphia for Mr. Sakalo. The fare was booked as an "A" class fare which is a special First-Class fare that is less than refundable coach class fares and split with USG.
- 5/15/06 -- $ 404.64
    - Roundtrip airfare from Miami to Delaware for Mr. Baena. The fare was booked as an "A" class fare which is a special First-Class fare that is less than refundable coach class fares and split with USG.
- 5/16/06 -- $ 759.30
    - Roundtrip airfare from Miami to New York for Mr. Baena. The fare was booked as an economy class fare and split with USG.
- 5/16/06 -- $ 759.30
    - Roundtrip airfare from Miami to New York for Mr. Sakalo. The fare was booked as an economy class fare and split with USG.

- 5/30/06 -- $ 1,298.60
    - Roundtrip airfare from Miami to New York for Mr. Baena. The fare was booked as an "A" class fare which is a special First-Class fare that is less than refundable coach class fares
- 5/30/06 -- $ 1,298.60
    - Roundtrip airfare from Miami to New York for Mr. Sakalo. The fare was booked as a coach class fare.
- 6/19/06 -- $ 808.60
    - Roundtrip airfare from Miami to Philadelphia for Mr. Baena. The fare was booked as an "A" class fare which is a special First-Class fare that is less than refundable coach class fares
- 6/19/06 -- $ 808.60
    - Roundtrip airfare from Miami to Philadelphia for Mr. Sakalo. The fare was booked as a "P" class fare.
- 6/23/06 -- $ 1,288.60
    - Roundtrip airfare from Miami to Washington for Mr. Sakalo. The fare was booked as a "P" class fare.
- 6/26/06 -- $ 1,288.60
    - Roundtrip airfare from Miami to Washington for Mr. Sakalo. The fare was booked as a "P" class fare.
- 6/27/06 -- $ 1,288.60
    - Roundtrip airfare from Miami to New York for Mr. Baena. The fare was booked as a "P" class fare. Total charges were $1,128.60. We agree to a reduction of $160.00

<u>Response Exhibit 5</u>

The Fee Auditor requests additional information regarding the expense entries related to expert witnesses. As explained to the Fee Auditor in prior responses and as explained above, the PD Estimation is one of the most critical aspects of these cases. The expenses at question relate to the fees and expenses incurred by the PD Committee's asbestos estimation expert, LECG, and relates to the PD Estimation. Although LECG was formally retained by the PD Committee, as a result of LECG's likely role as a testifying witness in the PD estimation, the Court granted dispensation to the PD Committee and LECG from having to file fee applications with respect to LECG's work as a testifying witness. This is consistent with the practice utilized by other professionals in these cases to both preserve the confidentiality of their experts' work product and seek payment of their experts. Additionally, Bilzin, at the Court's direction, previously advised the Fee Auditor of such billing arrangements. Bilzin submits that each of the fees and expenses incurred are reasonable and necessary in light of the substantial amount of work done in connection with, and the unprecedented nature of, the PD estimation. Further, Bilzin does not object to providing the U.S. Trustee with the fee and expense detail of its expert provided that the U.S. Trustee agrees to enter into an appropriate confidentiality arrangement. Bilzin also notes that the UST made a similar inquiry regarding the expense entries at issue and was fully satisfied with Bilzin's response to his inquiry.

Response Exhibit 6

- 4/17/06 -- $48.38
    - this charge is addressed in our response to Paragraph 9.

- 5/25/06 -- $90.00
    - Round-trip taxi cab service from Philadelphia airport to Center City in Philadelphia for attendance at court hearings.

- 5/30/06 -- $57.00
    - Parking at Miami International Airport for a mediation session in NYC and one-way cab fare from LaGuardia to NYC

- 6/19/06
    - Taxi cab service to Miami International Airport and from La Guardia to New York City.

Response Exhibit 7

- 5/16/06 -- $33.00
    o   Lunch for 3 people (Messrs. Baena, Sakalo and Tacconelli); expense was incurred on 5/15/06
- 5/16/06 -- $36.29
    o   Dinner on 5/15/06 for one person
    o   Dinner on 5/16/06 for one person
- 5/25/06 -- $122.38
    o   2 dinners; $36.00, 57.99, [one person each]
    o   3 lunches; $8.14, 5.65, 13.10 [one person each]
    1 breakfast; $1.50