IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF) |
|  | Jointly Administered |
| Debtors. | Related to Docket No. 13771 |
|  | Hrg. Date: December 18, 2006 |

---

**MEMORANDUM OF LAW IN SUPPORT OF 67 ASBESTOS-RELATED PERSONAL INJURY/WRONGFUL DEATH CLAIMANTS REPRESENTED BY WILENTZ, GOLDMAN & SPITZER IN STATE COURT BEING ACCEPTED AS 'SETTLED' CLAIMANTS FOR 'SETTLED POC'/API QUESTIONNAIRE PURPOSES**

---

Wilentz, Goldman & Spitzer, P.A. ("Wilentz") files this Memorandum of Law in Support of 67 Asbestos-Related Personal Injury/Wrongful Death Claimants Represented by Wilentz, Goldman & Spitzer in State Court Being Accepted as 'Settled' Claimants for 'Settled POC'/API Questionnaire Purposes, and would show as follows:

STATEMENT OF FACTS AND PROCEDURAL HISTORY

On October 16, 2006, as amended on December 8, 2006, WGS submitted 67 'settled' POC's. By letter dated November 10, 2006, Grace asserted that none of the 67 WGS settled claims would be accepted by Grace as such. The December 8th amendments addressed the manner of submission. The following addresses Grace's

#2834680

assertion that the 67 'settled' Proofs of Claim should nevertheless be deemed 'non-settled' for API Questionnaire purposes.

The certification of WGS shareholder Lynne M. Kizis shows that the claims of each of the 67 WGS clients against the Grace defendants was addressed in the same manner as prior WGS/Grace settlement package plaintiffs whose claims were paid by Grace as settled claims under pre-petition settlement agreements.  Indeed, Grace paid other claimants within the same 4 settlement packages, but asserts no record of the settlements in which these 67 participants are a portion of the unpaid 'balance.'  That process included plaintiff-by-plaintiff file review between plaintiff's counsel and Grace's defense counsel of many years.  Each of the 67 plaintiffs has submitted a release pursuant to his/her acceptance of participation in 1 (one) of the 4 (four) settlement packages in issue.

The following brief addresses two main issues: enforceability of settlements under applicable New Jersey and/or New York law, estoppel issues, and, settlement authority of Grace's defense counsel.

## THE WGS CLAIMANT/GRACE SETTLEMENT AGREEMENTS ARE ENFORCEABLE

A settlement agreement is nothing more than a garden variety contract. There may be conditions precedent, conditions subsequent, or any number of contract attributes, but at heart it is a deal struck where parties agree to cease litigation for the exchange of that consideration, with or without other consideration and applicable terms.

#2834680

Where there is a settlement agreement between competent adults, "[t]here is no legal requirement that there be court approval in such a case, and the practice of spreading the terms of the agreement upon the record, although a familiar practice, is not a procedure requisite to enforcement." Pascarella v. Bruck, 190 N.J.Super. 119, 124 (1982)(citing, DeCaro v. DeCaro, 13 N.J. 36, 43, 97 A.2d 658 (1953). Moreover, the fact that "the agreement to settle was orally made is of no consequence, and the failure to do no more than … inform the court of settlement and have the clerk mark the case settled has no effect on the validity of a compromise disposition" Id. "[P]arties may orally, by informal memorandum, or by both agree upon all the essential terms of a contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the execution later of a formal document to memorialize their undertaking" McBarron v. Kipling Woods, L.L.C., 365 N.J. Super. 114, 116 (2004). "Settlement agreements are not required to be on the record to be enforceable." Berberian v. Lynn, 355 N.J.Super. 210, 216 (2002). It is thus clearly evident that an oral agreement to compromise a dispute can itself be an enforceable contract.

One of the primary requisites of an enforceable contract is mutual assent of the parties to enter into a binding undertaking, the so-called "meeting of the minds" requirement. "A meeting of the minds occurs when there has been a common understanding and mutual assent of all the terms of the contract." Knight v. New England Mut. Life Ins. Co., 220 N.J.Super. 560, 565 (1987).

Here, counsel for both sides participated in a series of settlement package procedures of long-standing between the actual participants and the law firms involved. They went through a *de facto* protocol, encompassing plaintiff-by-plaintiff claim review for the express purposes of weeding out those which should not be prosecuted further and those which, upon plaintiff consent, could be settled in lieu of proceeding to trial. "The phrase, 'meeting of the minds,' can properly mean only the agreement reached by the parties as expressed, i.e., their manifested intention, not one secret or undisclosed, which may be wholly at variance with the former. Leitner v. Braen, 51 N.J.Super. 31, 37 (1958). "An offeree may manifest assent to the terms of an offer through words, creating an express contract, or by conduct, creating a contract implied-in-fact." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 436 (1992); See Restatement (Second) of Contracts § 19(1) (1981).

In the matter at bar, an express written contract was entered into between the Grace defendants and those plaintiffs represented by WGS who elected to agree to participate in the settlement package by, *inter alia*, executing a release, ceasing discovery and dismissing their cases. And, grace paid other claimants within the 4 settlement packages whose releases were proffered sooner.

"An agreement to settle a lawsuit is a contract which, like all other contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." Hannigan v. Township of Old Bridge, 288 N.J.Super. 313, 319 (App.Div. 1996)(quoting from Pascarella, 190 N.J.Super. at 124-25). Nothing in any of the 4

#2834680

settlement packages here provides any indication of fraud or other compelling circumstance under applicable law.

Indeed, just as under the Bankruptcy Code, applicable non-bankruptcy law favors the settlement of disputes and the enforcement of those settlements. As set forth by the Court in <u>Primus v. Alfred Sanzari Enterprises</u>, 363 N.J.Super. 538 (App.Div. 2003), reversed on other grounds, 372 N.J. Super 392, 859 A.2d 452 (2004):

> There exists "a strong public policy in favor of settlement" of lawsuits. <u>Bistricer v. Bistricer</u>, 231 N.J.Super 143, 147, 555 A.2d 45, 47 (Ch.Div.1987); <u>Pacarella v. Bruck</u>, 190 N.J.Super. 118, 125, 462 A.2d 186, 190 (App.Div.), certif. denied, 94 N.J. 600, 468 A.2d 233 (1983); <u>Honeywell v. Bubb</u>, 130 N.J.Super. 130, 136, 325 A.2d. 832, 836 (App.Div.1974). Accordingly, courts should "strain to give effect to the terms of a settlement wherever possible." <u>Department of Public Advocate v. N.J. Board of Public Utilities</u>, 206 N.J.Super. 523, 528, 503 A.2d 331, 333 (App.Div.1985).

<u>Primus</u>, 363 N.J. Super at 553, fn. 3.

New Jersey law thus strongly favors settlement of litigation claims and only in the rarest of circumstances will a court refuse to honor a settlement agreement. "It is only where the inadequacy of consideration is grossly shocking to the conscience of the court that it will interfere" with settlement agreements voluntarily entered into and executed by the parties. <u>Pascarella v. Bruck</u>, 190 N.J.Super. 118, 125 (App.Div. 1983). The record is devoid of any evidence of grossly shockingly inadequate consideration such as to warrant judicial interference with the 4 settlement packages agreed upon between counsel for the 67 plaintiffs and Grace's

#2834680

defense counsel. Given the plaintiff-by-plaintiff, joint review of plaintiffs' evidence, it can only remain so. Indeed, with respect to other plaintiffs who opted in to one of the 4 settlement packages earlier than the 67 plaintiffs here at issue, grace paid.

In continuance of this strong public policy of honoring and enforcing settlement agreements, New Jersey courts have required that clear and convincing proof of reasons not to enforce is required. *See* <u>Borough of Haledon v. Borough of North Haledon</u>, 358 N.J.Super. 289, 305 (App.Div. 2003). Here, the mumbled assertion that 'headquarters doesn't have a record' falls far short of this burden of proof.

Further, the purpose at hand must be kept in mind. The issue before the Court is not payment of the 67 claims, or even allowance of the 67 claims. This is part of the Grace debtors' "estimation" methodology. The 67 WGS 'settled' POC's are submitted for purposes of adhering to this Court's orders concerning, for the benefit of Grace's estimation methodology, which plaintiffs must fill out a 'long form' API Questionnaire rather than state that their asbestos-related personal injury/wrongful death claim has already survived individual product exposure evidence and disease severity evidence review by or on behalf of the Grace defendants/debtors. As Ms. Kizis's certification makes clear, the asbestos-related personal injury/wrongful death claims of the 67 individuals in issue have indeed already been subjected to such individualized defense review.

Grace notes that one of the releases appears to be lacking a date, then attempts to extrapolate that to a legal conclusion that no settlement agreement

#2834680

existed. A possibly defective release does not make Grace's agreement to pay this person *when* a proper release is submitted unenforceable; it means the plaintiff involved - assuming away the entire bankruptcy - would not be able to compel Grace to write a check *in performance of its settlement contract obligation* until a properly completed release were submitted. What Grace asserts here is that 'because your post-agreement release is defective, no deal ever existed.' This is simply inaccurate; the deal existed and is enforceable upon tender of a conforming release. Again, the issue before the Court is whether the evidence backing up a plaintiff's claim has already been subjected to Grace scrutiny for long-form API Questionnaire completion purposes, not whether Grace has to write a check 'today.'

GRACE IS ESTOPPED FROM REPUDIATING THE 67 SETTLED CLAIMS

"The essential principle of the policy of estoppel … is that one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct.." Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 504 (1955). *Accord* Wood v. Borough of Wildwood Crest, 319 N.J.Super. 650, 656 (App.Div. 1999). To establish equitable estoppel, a litigant must show that the other party engaged in conduct that induced his reliance and that the change of position worked to his detriment. Knorr v. Smeal, 178 N.J. 169, 178 (2003).

Here, in reliance upon each of the 4 settlement packages, WGS submitted releases to its clients for execution and return, canceled further discovery, and, advised the court of the affected plaintiffs' cases having been settled. These series

#2834680

of material reliances were affirmatively induced by or on Grace's behalf and entirely justified and reasonable considering the on-going nature and type of protocol involved and the multi-year history of similar events between counsel, and between Grace and the individuals asserting asbestos-related personal injury/wrongful death claims against it via WGS.

Moreover, Grace has already written a number of 'partial' checks with respect to each and every one of the 4 settlement packages in which the 67 individuals in issue opted to become an accepting participant. This mid-payment, anticipatory breach is the ultimate basis for estoppel.

The adverse consequences to plaintiffs and their counsel are obvious. First, while Grace filed for bankruptcy protection on the assertion that it could not afford to address asbestos-related claims one by one, it now seeks to review them one by one via proofs of claim, and, one by one via the API Questionnaires, and, then the plaintiffs will have to submit their claims to the trust, one by one, for payment. And that's just for the personal injury/wrongful death asbestos claims. The present exercise is purely for the benefit of the Grace debtors' and the "estimation methodology" by which they insist on pursuing individual review of individual claims that will not result in allowance or payment (which will require another round of 'proving up' their claims vis-à-vis the resulting trust). The 67 plaintiffs at issue here have ceased discovery against Grace any number of years ago, during which not only have they not been paid in breach of the initial settlement contract in which they elected to participate, but during which they have also been precluded

#2834680

from conducting further discovery because of their agreement to settle and the imposition of the automatic stay, and during which 6 years who knows how many documents and witnesses have disappeared or become unavailable in one manner or another. Indeed, certain of the individuals asserting claims have died in the interim, and can no longer testify on their own behalves.

## ACTUAL/APPARENT AUTHORITY

As shown in the accompanying certification, WGS dealt - on behalf of its asbestos-related personal injury/wrongful death clients asserting claims against Grace - with the same defense firm for decades[?]. Prior settlement packages arrived at through the same protocol were honored and paid by Grace. The settlement package confirmation letters did not get typed up unless and until defense counsel advised WGS that the settlement package agreed upon had been approved by Grace. Defense counsel of record is an agent for the client. The express purpose of each of the 4 separate plaintiff-by-plaintiff file review sessions and resulting settlement package agreements was to achieve consensual resolution of a group of plaintiffs' claims.

When GAF (G-1) attempted to repudiate settlements reached on its behalf by the CCR (Center for Claims Resolution), the New York court found that CCR had acted within the scope of its actual authority as GAF's agent in settling asbestos claims and that GAF had to pay out on the settlements reached between plaintiffs and the CCR. In re Eighth Judicial District Asbestos Litigation, 302 A.D. 2d 908, 909, 753 N.Y.S.2d 911, 911. Moreover, the Court there stated, "even assuming,

#2834680

*arguendo*, that CCR lacked actual authority to enter into the settlement agreements on behalf of GAF, we conclude that CCR had apparent authority to bind GAF to those agreements," *Id.*, 302 A.D.2d at 909, 753 N.Y.S.2d at 911-12.  Here, Grace's defense counsel and in-house counsel had just as much apparent authority to negotiate and settle asbestos-related personal injury/wrongful death claims asserted via WGS, based upon Grace's prior payment of similar settlement packages and failure to make known to WGS any revocation of authority for its defense counsel to pursue the same benefits for Grace via the same protocol.

"Apparent authority" is "the power held by an agent of other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."  Restatement (Third) of Agency § 2.03 (2006).  It applies even if an agent acts beyond the scope of its actual authority.  *Id.*, at comments a and b.

The agency relationship does not need to be specified as to the third party; the law looks to the conduct of the agent and the principal vis-à-vis the pertinent world - not to what agent and principal state *inter se*, but to their conduct and actions as to others.  Sears Mortg. Corp. v. Rose, 134 N.J. 326, 337 (1993).  The same defense counsel had been settling WGS-represented asbestos claimants under the same protocol for decades.  "Of particular importance in determining whether a person is an agent by virtue of apparent authority is whether the third person has relied upon the agent's apparent authority to act for the principal." *Id.*  Here, the

WGS plaintiffs, through their counsel, justifiably relied upon Grace's defense counsel's continuing to act just the way they always did in participating in the same protocol for claims review for package consensual resolutions as they had before, and, based upon which the Grace defendants had always previously written checks in settlement of the asbestos-related personal injury/wrongful death claims encompassed.

Dated: December 13, 2006

Sander L. Esserman
David J. Parsons
**STUTZMAN, BROMBERG, ESSERMAN & PLIFKA,**
**A Professional Corporation**
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 969-4900
Facsimile:   (214) 969-4999

Dierdre Pacheco
**WILENTZ, GOLDMAN & SPITZER,**
**A Professional Corporation**
90 Woodbridge Center Drive
P.O. Box 10
Woodbridge, New Jersey 07095-0958
Telephone:  (732) 636-8000

/s/ Daniel K. Hogan
Daniel K. Hogan (ID no. 2814)

**THE HOGAN FIRM**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone:  (302) 656-7540
Facsimile:   (302) 656-7599
E-mail:  dan@dkhogan.com

**COUNSEL FOR**
**WILENTZ, GOLDMAN & SPITZER,**
**A Professional Corporation**

#2834680