**WILENTZ, GOLDMAN & SPITZER**
A Professional Corporation
90 Woodbridge Center Drive
P.O. Box 10
Woodbridge, New Jersey  07095-0958
(732) 636-8000
Attorneys for Asbestos Claimants
**DEIRDRE WOULFE PACHECO, ESQ.**
(DWP-6171)

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ) | Chapter 11 |
| ) | |
| W.R. GRACE & CO., *et al.*, ) | Case No. 01-01139 (JKF) |
| ) | Jointly Administered |
| ) | |
| Debtors. ) | |
| ) | |

### CERTIFICATION OF LYNNE M . KIZIS IN SUPPORT OF ASSERTION THAT 67 WILENTZ, GOLDMAN & SPITZER P.A. CLAIMANTS HAVE 'SETTLED' CLAIMS

Lynne M. Kizis, of full age, certifies as follows:

1.      I am an attorney admitted to practice before the state and federal courts of New Jersey as well as the Third Circuit and I am a shareholder and director of Wilentz, Goldman & Spitzer P.A. **("WGS")**.  I have been involved in the prosecution of asbestos-related, personal injury and wrongful death claims on behalf of WGS clients since August, 1989, including discovery, trial and/or negotiation and settlement thereof.  I make this certification in support of the request that this Court uphold the 67 proofs of claim submitted as 'settled' ones for API Questionnaire purposes.

#2833534

## THE PROOF OF CLAIM FORMS

2. On or about October 16, 2006, WGS submitted 'settled' proofs of claim on behalf of 67 individuals represented by WGS in prior state court litigation.

3. Upon receipt of Lisa G. Esayian's November 10, 2006 letter (Exh. A hereto), I ascertained that my instructions for collecting and submitting the 'settled' WGS Proofs of Claim had not been followed. Accordingly, as evidenced by the letter dated November 28, 2006 from Deirdre Woulfe Pacheco, Esq., counsel at WGS (Exh. B hereto), I directed that the WGS 'settled' Proofs of Claim be resubmitted. This was accomplished December 8, 2006 (Exh. C hereto).

4. Nevertheless, it is my understanding that the debtors' "objections" to the WGS assertion that any WGS clients have 'settled' claims go beyond the format of the actual submissions, and attempt to attack the legal nature of same as 'settled' under applicable law.

## WGS/GRACE NEGOTIATION OF SETTLEMENTS

5. The track of the settlement process of WGS clients' asbestos claims against Grace defendants, as applicable to the 4 (four) settlement agreements in issue in the WGS settled claims, was essentially the same.

6. During the time period when these 4 settlement agreements were negotiated and concluded, I was a senior associate or a partner working with Phil Pahigian, Esq. I was among the attorneys who directly assisted him in the process of negotiating and settling the claims of WGS clients against Grace and I have personal knowledge of the matters stated herein.

7. Phil Pahigian met periodically with counsel for W.R. Grace in New Jersey and New York asbestos litigation to discuss and attempt to negotiate settlement of pending matters. These meetings were initiated either by Phil Pahigian or counsel for W.R. Grace, either because there were pending matters coming up for trial, or because a number of matters for discussion had accumulated.

#2833534

8.  WGS did not enter "administrative" settlement agreements.  Each matter resolved with W.R. Grace from the 1980's until it filed for Chapter 11 bankruptcy was initiated by the filing and service of a complaint against W.R. Grace and others.  The cases generally went through some amount of discovery prior to negotiation.  To the extent that discovery was not completed, negotiation included discussions of each plaintiffs asbestos diseases, their trade or occupation and exposure to asbestos from W.R. Grace products.  As a result of these discussions, the claims of some plaintiffs were dismissed in the course of the negotiations.

9.  As a result of discovery conducted, W.R. Grace produced documentary evidence of the job sites where its asbestos containing spray fireproofing products were installed.  See e.g., February 23, 1989 letter from counsel for Grace, annexed at Exhibit D.  This discovery included voluminous invoices for Monokote products which are not included because of their bulk.  This information from W.R. Grace was used as a guide for discussion and negotiations about the WGS clients' exposure to W.R. Grace asbestos products.

10.  The amounts of settlements agreed to for each client who did establish an asbestos disease and exposure to W.R. Grace asbestos products varied, based on such factors as the plaintiff's trade, worksite, disease, jurisdiction, and special circumstances.

11.  As a result of the negotiation process, regarding the 67 claimants, WGS submitted as settled pre-petition for POC/API Questionnaire purposes, Grace or its authorized agents were provided significant, plaintiff-by-plaintiff information about the claimants' lawsuit, exposure to W.R. Grace and other asbestos products, and asbestos-related medical condition.

12.  The settlement agreements reached during these extensive in-person meetings would include: defense counsel's need to get client approval, confirmation by both sides that the typed settlement package confirmation letter accurately reflected the results of the meeting, and, the right of any plaintiff included in such a settlement package to 'opt out' of the proposed settlement as to his/her claim.  Herein WGS has asserted as "settled" only the claims of those

#2833534

plaintiffs who affirmatively accepted the offer by executing a release in the form requested by W.R. Grace.

13. Copies of the 4 settlement agreements in issue are attached hereto as Exh. E. (without the actual plaintiff lists which are voluminous and heavily redacted so as to eliminate persons not the subject of the matters presently before this court).

14. Ms. Esayian's November 10, 2006 letter states that the debtors have no record of the 4 settlement agreements in issue. I have no knowledge concerning the state of the debtors' record-keeping. To the extent the debtors attempt to imply that defense counsel settled the cases in issue without actual authority, this is a legal issue addressed in the accompanying brief. Indeed, Grace partially performed each of the four settlement agreements, in which the instant 67 individuals are involved and fully paid prior agreements. (Exh. F) Some of the negotiation meetings occurred at W.R. Grace's offices. To the extent the debtors attempt to imply that defense counsel failed to advise its client of the fact of settlement as to any of the 4 settlement packages in issue, having worked with that same defense counsel for many, many years, I find that difficult to believe and note that nothing filed in the within matter indicates that plaintiffs' counsel, let alone defense counsel, has been notified of any such 'failure.'

I certify that the foregoing statements made by me are true. I am aware that if any of them are willfully false, I am subject to punishment.

Dated: Woodbridge, NJ      /s/ Lynne M. Kizis, Esq.
       December 12, 2006      _____
                                        LYNNE M. KIZIS, ESQ.

#2833534