UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 11** |
| | ) | |
| W.R. GRACE & CO., et al., | ) | **Case No. 01-01139(JFK)** |
| | ) | **(Jointly Administered)** |
| Debtors. | ) | |

**RESPONSE OF CLAIMANTS REPRESENTED BY
GOLDBERG, PERSKY & WHITE TO DEBTORS' BRIEF REGARDING
SETTLED PRE-PETITION ASBESTOS PI CLAIMS**

Claimants represented by Goldberg, Persky & White, P.C. (the "Goldberg Claimants"),

through their undersigned counsel, respond to the Brief Regarding Settled Pre-Petition Asbestos

PI Claims filed by the Debtors, W.R. Grace Co. and affiliates ("Grace") as follows:

**Introduction**

Grace has filed a brief setting forth what it believes are the categories of asbestos

personal injury claimants who must respond to its Questionnaire. Attached to this Response as

Exhibit "A" is the 2000 settlement agreement between the Goldberg Claimants and Grace. The

Goldberg Claimants submit that all claimants subject to this agreement have clearly defined

eligibility to receive payments, subject to clearly defined procedures. Therefore, any claimant

subject to this agreement has an enforceable contract, or at least has an easily ascertainable value

to his or her claim.

Nonetheless, Grace contends in its brief that the people on Grace's list have "Non-

Settled" claims because they have not sent releases. Goldberg, Persky & White, P.C. ("Goldberg

Persky") has examined its records and identified four categories of people on the list. Each

category has been listed on a separate Exhibit attached to this Response. The first (Exhibit "B")

is claimants who are subject to the 2000 settlement agreement and who have sent releases, notwithstanding Grace's claim that they have not. The releases are attached as Exhibit "F." The second category (Exhibit "C") is people who have not submitted any claims against Grace, and therefore need not be considered at this point of the proceedings. The third (Exhibit "D") is people who have claims against Grace, but are not subject to the 2000 settlement agreement. Goldberg Persky concedes that these people have unsettled claims against Grace, but they have submitted Questionnaires nonetheless. The fourth category (Exhibit "E") is claimants who are subject to the 2000 settlement agreement, but have not provided releases.

With respect to the fourth category, Grace has argued that all claims subject to a settlement agreement for which Grace does not have signed releases should be considered "Non-Settled Pre-Petition Asbestos PI Claims," and therefore must submit Questionnaires. The Goldberg Claimants submit that they should not be required to submit Questionnaires because (1) under this Court's orders, these claims are not "Non-Settled Pre-Petition Asbestos PI Claims," (2) these Claimants have enforceable contracts (3) regardless of whether Grace has received a release, the value of these claims is defined by the settlement agreement, and (4) the Goldberg Claimants have not waived their objections.

## Argument

1.  Under this Court's orders, these claims are not "Non-Settled Pre-Petition Asbestos PI Claims."

As cited in Grace's brief, this Court entered an Order on August 24, 2006 which defined "Non-Settled Pre-Petition Asbestos PI Claims." That order states that the first criterion of such a claim is that it "was filed in court as a lawsuit or civil action prior to April 2, 2001." See Grace's Brief at p.4; August 24, 2006 Order at p. 2. The Goldberg Claimants have not filed "lawsuits or

civil actions" against Grace, pursuant to the settlement agreement between Grace and Goldberg, Persky & White. See Settlement Agreement at p. 9 ¶ 14.

Therefore, under this Court's order, *as a matter of plain English, the Goldberg Claimants' claims are not Non-Settled Pre-Petition Asbestos PI Claims*, and thus the Goldberg Claimants should not be required to submit Questionnaires.

2. These Claimants have enforceable contracts

Grace has argued in its brief that the Goldberg Claimants cannot be considered "settled" if they have not already provided releases. In support of this position, Grace relies on the familiar principle that consideration is necessary for a binding contract. However, Grace fails to acknowledge that the Goldberg Claimants subject to the 2000 settlement agreement ("Agreement") have an enforceable contract supported by valid consideration.

According to the Agreement, any plaintiff eligible to participate in the settlement is a "Settling Plaintiff." See Agreement at p. 3. As consideration for the agreement, the Goldberg Claimants promised not to institute an action against Grace, and Grace promised to make periodic payments to the Goldberg Claimants subject to certain conditions, and both parties agreed to toll any statute of limitations. These mutual promises are more than adequate to support a contract. The Agreement furthermore states that "No Settlement Funds shall be disbursed unless and until [Goldberg Persky] has (i) received assurance that at least ninety percent (90%) of the Settlement Plaintiffs . . . have agreed to accept the settlement payments set forth" in the Agreement. See Agreement at p. 6, ¶ 10.

That provision belies Grace's claim that the Goldberg Claimants could simply "walk away" from the Agreement. Grace had no obligation to make payments until Goldberg Persky, as representative of the Goldberg Claimants, manifested consent to the Agreement. The fact that

payments have been made indicates that consent was manifested, and the Agreement is binding.

By making its argument, Grace proposes a hypothetical that has not occurred. If a Goldberg Claimant were to attempt to "walk away" from the Agreement, there would undoubtedly be a dispute as to whether he or she could do so without breaching.[1] In the event a Claimant walked away from the Agreement and filed suit, Grace could have filed a motion seeking to compel any Claimant to sign a release. *See, e.g. Gregory v. Hamilton*, 77 Cal. App.3d 213 (Cal. App. 1978); *Mozdirez Consulting, Inc. v. Mile Marker, Inc.*, 2006 WL 799222, No. 04-CV-74925-DT (E.D. Mich. March 28, 2006); *Armstrong v. City and County of San Francisco*, 2004 WL 2713068, No. C 01-2611 VRW MEJ (N.D. Cal. June 15, 2004). That such a dispute is possible does not in any way indicate that the promises embodied in the Agreement are illusory.

Indeed, contrary to Grace's claims, a Release is a condition only to the receipt of payments, not to the validity of the contract. See Agreement pp. 7-9, ¶¶ 11-12. Because the Goldberg Claimants have fulfilled any conditions to the enforceability of the Agreement, they should be considered to have settled claims against Grace.

3. Regardless of whether Grace has received releases, the value of these claims is defined by the settlement agreement.

The fact that the Goldberg Claimants are not defined as "non-settled" under the August 24 Order (see Section 1 above) is no mere anomaly of language – there is good reason for all Goldberg Claimants to be considered settled for the purposes of Grace's Questionnaire. In its Brief, Grace focuses strongly on the question of whether it has received a release from each and every claimant. Under its analysis of contract law, Grace believes that a release is dispositive on the issue of whether a claimant can be considered settled or not. However, for purposes of Grace's Questionnaire, a release is irrelevant.

---

[1] The Agreement does, however, allow a Claimant to reject the Agreement *if* Grace enters bankruptcy or reorganization, and *if* the Claimant has not already been paid. See Agreement at p. 12, ¶ 23.

Under the terms of the settlement, a limited number of claimants could potentially receive settlement payments in any year. After a claimant waited his turn, he would have to provide a release and the relevant qualifying materials. Grace focuses on the hypothetical situation of a claimant being allowed to "walk away" from the agreement, but the fact remains that the ministerial act of providing these releases was sufficient to create in a claimant the entitlement to the agreed-upon sum.[2] As such, the Goldberg Claimants had an option to claim the payments described in the Agreement, upon the ministerial act of providing the release and other qualifying materials.

Regardless of whether that release has yet been delivered to Grace, it is simply implausible that a claim is worth less than the amount to which a claimant would be entitled upon the production of a release. And yet, the very premise of requiring the Goldberg Claimants to submit Questionnaires is that Grace somehow needs to estimate the value of their claims. The Goldberg Claimants submit that the value of the claims is easily ascertainable from the settlement agreement. With or without the releases, Grace has the information necessary to establish that the Goldberg Claimants are eligible for the sums set forth in the settlement agreement. The Goldberg Claimants have at least an option to receive payments, regardless of any liability filter.

4.  The Goldberg Claimants have not waived their objections.

Grace contends in its brief that claimants represented by all firms except Silber Perlman have waived any objections to "Grace's position" that all claimants listed as "Non-Settled" by Grace must submit Questionnaires. However, the Goldberg Claimants objected to portions of the Questionnaire well before this Court's Order of August 24, 2006, which set timelines for

---

[2] Grace acknowledges in its brief that settled claimants need not submit Questionnaires even if Grace has not yet received supporting information. See Grace's Brief at pp. 8-9.

objections. Goldberg Persky has furthermore objected several times that, according to this Court's orders, the Goldberg Claimants are not required to submit Questionnaires at all. Therefore, the assertion that they have somehow waived their objections is meritless.

### Conclusion

For the foregoing reasons, Grace's Proposed Order should not be entered with respect to the Goldberg Claimants.

GOLDBERG, PERSKY & WHITE, P.C.

*/s/ Mark C. Meyer*
Mark C. Meyer
David B. Rodes
1030 Fifth Avenue
Pittsburgh, PA  15219
412-471-3980
412-471-8308 (Fax)
mmeyer@gpwlaw.com

Date: December 15, 2006

# Exhibit

# A

\\gpjw_nt_main\cfilip\WORD7.0\W.R. Grace confidential settlement agreement.doc

## CONFIDENTIAL SETTLEMENT AGREEMENT

This Confidential Settlement Agreement (the "Agreement") is entered into as of the 1st day of May, 2000, by and between (i) W.R. Grace & Co. -- Conn. and (ii) the Settling Plaintiffs (as defined below) by and through their attorneys, Theodore Goldberg and the law firm of Goldberg, Persky, Jennings & White, P.C.

## RECITALS

WHEREAS, the law firm of Goldberg, Persky, Jennings & White, P.C. ("GPJ&W"), as counsel for Plaintiffs, has filed thousands of asbestos-related bodily-injury and wrongful-death claims against others in various courts located in the States of West Virginia, Pennsylvania, Ohio, Michigan, Indiana and Maryland, but has not sued W.R. Grace & Co. -- Conn. because of a tolling agreement.

WHEREAS, W.R. Grace & Co. -- Conn. desires, without in any way admitting liability, to settle the claims by clients of GPJ&W against W.R. Grace & Co. -- Conn. so as to avoid the delay, inconvenience, expense and uncertainties of litigation.

WHEREAS, GPJ&W has determined that the settlement set forth in this Agreement is fair to, and is in the best interests of, each of the Settling Plaintiffs (as defined below) and has agreed, to the extent consistent with its professional responsibilities to its clients, to recommend strongly this settlement and to use its best efforts to have the settlement accepted by each and every Settling Plaintiff (as defined below).

NOW, THEREFORE, in consideration of the premises and the mutual promises and representations contained herein and other good and valuable consideration, the receipt and

sufficiency of which are hereby acknowledged, and with the intent to be legally bound hereby, it is hereby agreed as follows:

## DEFINITIONS AND ELIGIBILITY TO PARCITITPATE IN SETTLEMENT

1.    For purposes of this Agreement, the term "W.R. Grace" means: (i) W.R. Grace & Co. -- Conn. ( a Connecticut corporation); (ii) W.R. Grace & Co. (a New York corporation); (iii) Western Mineral Products Company; (iv) Southern Zonolite Company; and (v) all other persons or entities (including, without limitation, licensees or distributors) to the extent they are alleged by Settling Plaintiffs to be liable for designing, manufacturing, marketing, distributing or otherwise placing into the stream of commerce asbestos-containing products for which W.R. Grace, Western Mineral Products Company or Southern Zonolite are alleged by Settling Plaintiffs to be responsible.  The term "W.R. Grace" also includes, with respect to the entities listed in clauses (i)-(v) of this Paragraph 1, all of their predecessors; successors; assigns; insurers; present and former parents and subsidiaries; present and former partners, principals, shareholders, employees, officers, directors and agents; and all entities controlling or controlled by them.

2.    For purposes of this Agreement, the terms "GPJ&W" means: (i) the law firm of Goldberg, Persky, Jennings & White, P.C.; (ii) all successor firms to the law firms of Goldberg, Persky, Jennings & White, P.C.; (iii) the individual lawyers who are now or who may hereafter become partners, associates, or otherwise affiliated with the law firm of Goldberg, Persky, Jennings & White, P.C.; and (iv) all lawyers and law firms who have referred to Goldberg, Persky, Jennings & White, P.C. any clients who are Settling Plaintiffs (as defined below) or Shipyard Plaintiffs (as defined below) or who are receiving any portion of the attorneys' fees that are paid as a result of the settlement set forth in this Agreement.  Excluded from this Agreement are cases of Michael Serling, Esquire.

3.     The plaintiffs eligible to participate in the settlement set forth in this Agreement are referred to herein collectively as "Settling Plaintiffs" and individually as a "Settling Plaintiff." The term "Settling Plaintiffs" means each and every client of GPJ&W as of May 1, 2000, (i) who was a plaintiff in a pending lawsuit in any court (state or federal) wherein any claim is being asserted for monetary damages for any asbestos-related disease, injury or death or who had retained GPJ&W to file such a suit against W.R. Grace; (ii) who is not already a party to or otherwise subject to a prior settlement agreement with W.R. Grace; and (iii) who is not a Shipyard Plaintiff (as defined below). GPJ&W will identify the Settling Plaintiffs by June 1, 2000. It is estimated by GPJ&W that the number and disease categories of Settling Plaintiffs are as set forth on Exhibit A hereto.

4.     Each client of GPJ&W who, as of May 1, 2000, is a plaintiff in a pending lawsuit in any court (state or federal) and who is asserting a claim based on exposure to asbestos that is alleged to have occurred primarily at shipyards or aboard ships is referred to herein as "Shipyard Plaintiff." Shipyard Plaintiffs are not eligible to participate in the settlement set forth in this Agreement and are not included within the definition of Settling Plaintiffs. GPJ&W believes, based on reasonable investigation and evidence developed in asbestos-related lawsuits pending against W.R. Grace and evidence from W.R. Grace that its asbestos-containing products were not used in ships, and that any Shipyard Plaintiffs would not be able to meet applicable legal standards of exposure to W.R. Grace asbestos products for purposes of pursing a claim. W.R. Grace has consistently resisted settlement of all such claims and has consistently indicated that it will never settle such claims. GPJ&W believes that it does not represent any Shipyard Plaintiffs. GPJ&W agrees that should any Shipyard Plaintiff cases be identified, it will seek the client's consent to dismiss the claim against W.R. Grace with prejudice, each side to bear its own costs.

3

Under no circumstances, however, are dismissal of any Shipyard Plaintiffs' cases linked to settlement of other plaintiffs' cases.

## SETTLEMENT PAYMENTS AND DISBURSEMENTS PROCEDURES

5.     GPJ&W agrees that settlement payments from WR. Grace in the following amounts constitute on average a fair and reasonable basis on which to settle  claims of each Settling Plaintiff against W.R. Grace:

### West Virginia Cases

(i)     $2,250 for each Settling Plaintiff who alleges a non-malignant asbestos-related disease and whose exposure was not as a construction tradesman;

(ii)    $4,000 for each Settling Plaintiff who alleges a non-malignant asbestos-related disease and whose exposure was as a construction tradesman;

(iii)   $7,500 for each Settling Plaintiff who alleges an asbestos-related other than lung cancer or mesothelioma.

(iv)    $12,500 for each Settling Plaintiff who alleges an asbestos-related lung cancer; and

(v)     $50,000 for each Settling Plaintiff who alleges an asbestos-related mesothelioma.

### Pennsylvania, Michigan, Ohio, Indiana & Maryland Cases

(i)     $1,750 for each Settling Plaintiff who alleges a non-malignant asbestos-related disease and whose exposure was not as a construction tradesman;

(ii)    $4,000 for each Settling Plaintiff who alleges a non-malignant asbestos-elated disease and whose exposure was as a construction tradesman;

(iii)   $7,500 for each Settling Plaintiff who alleges an asbestos-related other than lung cancer or mesothelioma.

4

(iv)   $12,500 for each Settling Plaintiff who alleges an asbestos-related lung cancer; and

(v)   $50,000 for each Settling Plaintiff who alleges an asbestos-related mesothelioma.

In the case of wrongful-death claims, only one payment shall be made under this Paragraph 5 for each decedent, regardless of the number of Settling Plaintiffs who have made claims with respect to that decedent. The amount each Settling Plaintiff receives will not necessarily be the amount set forth above. W.R. Grace understands that GPJ&W may allocate the payments differently among its clients. However, W.R. Grace will pay those amounts on average, regardless of the GPJ&W allocation. GPJ&W agrees, to the extent consistent with its professional responsibilities to its client, to recommend strongly that all Settling Plaintiffs accept payments in the above amount in full and complete settlement of all of their claims against W.R. Grace. GPJ&W represents and warrants that it will explain the settlement reflected in this Agreement to each Settling Plaintiff and has disclosed to each Settling Plaintiff the existence and nature of all of the claims involved in this settlement and the general nature of the participation of each Settling Plaintiff in this settlement.

6.   Additional Payments:

All Settling Plaintiffs paid for a non-malignant disease shall be entitled to an additional payment should they develop mesothelioma or lung cancer. The amount of the subsequent payment for each such case shall be fifty thousand ($50,000) dollars, if for mesothelioma and twelve thousand five hundred ($12,500) dollars, if for lung cancer, less any previous payments made to that claimant under this Settlement Agreement.

7.   The parties estimate that the sum of **seventeen million two hundred eighteen thousand two hundred fifty dollars ($17,218,250)** (the "Settlement Funds") represents the

amount necessary to provide to each Settling Plaintiff the settlement payment to which he or she would be entitled under Paragraph 5 of this Agreement. The amount of the Settlement Funds has been calculated based on Exhibit A hereto, which represents the best information currently available to the parties concerning the identity and the payment category of each Settling Plaintiff. The parties recognize, however, that Exhibit A may not be completely accurate and will work together to resolve any errors or discrepancies that may exist on Exhibit A and will, if necessary, adjust the amount of the Settlement Funds accordingly.

8.    The settlement will be paid in nearly equal monthly installments of $772,580.65. The payments for 2000 shall equal 12 x $772,580.65 or $9,270,967.80, even if that exceeds the estimated monthly payment rate.

9.    GPJ&W will submit approximately 150 Qualifying Materials and releases per month. It is anticipated that Qualifying Materials and releases will be sent beginning in or about June 2000. For 2000, it is anticipated that approximately 1,800 releases will be submitted. Should GPJ&W be late in submitting releases, W.R. Grace will be given a reasonable period of time to process them, but will also endeavor to maintain the payment schedule.

10.    No Settlement Funds shall be disbursed unless and until GPJ&W has (i) received assurance that at least ninety percent (90%) of the Settlement Plaintiffs who allege an asbestos-related lung cancer and asbestos-related mesothelioma have agreed to accept the settlement payments set forth in Paragraph 5 of this Agreement in full and complete settlement of all claims against W.R. Grace and (ii) accomplished the dismissal with prejudice of the claims of all Shipyard Plaintiffs as required by Paragraph 3 of this Agreement. If the conditions set forth in clauses (i) and (ii) of this Paragraph 10 have not occurred by October 1, 2000, then this Agreement shall become null and void, and GPJ&W shall be given leave to join W.R. Grace as a defendant in the asbestos cases. In that event, W.R. Grace, GPJ&W and the Settling Plaintiffs

6

shall each be restored to the respective positions it held immediately prior to execution of this Agreement, and no party to this Agreement shall have any obligations or liabilities to any other party with respect to this Agreement.

11.    Once GPJ&W has received written assurance that the settlement has been accepted by the requisite percentage of Settling Plaintiffs under Paragraph 10 of this Agreement and has sought permission to dismiss with prejudice of all claims by Shipyard Plaintiffs, if any, against W.R. Grace, Settlement Funds may be disbursed, but only in accordance with the following procedure: (i) as GPJ&W submits to W.R. Grace Qualifying Materials (as defined below) for each Settling Plaintiff; (ii) within 30 business days of the receipt of Qualifying Materials for a particular Settling Plaintiff, W.R. Grace shall advise GPJ&W in writing whether W.R. Grace has accepted the Qualifying Materials for that Settling Plaintiff; (iii) upon written notice that W.R. Grace has accepted the Qualifying Materials for a particular Settling Plaintiff, W.R. Grace will make prompt payment of the Settlement Funds based on the payment averages under Paragraph 5 of this Agreement.  If W.R. Grace rejects the Qualifying Materials submitted on behalf of any Settling Plaintiffs, no Settlement Funds may be disbursed to, or on account of, that Settling Plaintiff.  GPJ&W shall complete the submission of Qualifying Materials on behalf of all Settling Plaintiffs who have accepted the settlement set forth in this Agreement by January 1, 2002, but this may be extended for cause by GPJ&W.

12.    The materials that GPJ&W must submit to W.R. Grace for each Settling Plaintiff are referred to in this Agreement as the "Qualifying Materials."  The Qualifying Materials consist of the following:  (i) an affidavit or other evidence demonstrating that the Settling Plaintiff (or, for wrongful-death claims, the Settling Plaintiff's decedent) was exposed to an asbestos-containing product that was manufactured, sold or distributed by W.R. Grace ("Exposure Evidence"); (ii) competent medical evidence that the Settling Plaintiff (or, for

7

wrongful-death claims, the Settling Plaintiff's decedent) has an asbestos-related disease or injury of the type set forth in Paragraph 5 of this Agreement ("Medical Evidence"); and (iii) a standard release in the form attached hereto as Exhibit B and a dismissal with prejudice in the form attached hereto as Exhibit C. The parties agree that Exposure Evidence will be deemed sufficient if it demonstrates to W.R. Grace's satisfaction (which satisfaction will not be unreasonably withheld) that: (i) the Settling Plaintiff (or, for wrongful-death claims, the Settling Plaintiff's decedent) worked at a jobsite where it has been previously demonstrated through other evidence that W.R. Grace's products were used and/or installed and (ii) the Settling Plaintiff (or, for wrongful-death claims, the Settling Plaintiff's decedent) worked at such a jobsite during a time period when it is reasonable to expect that the Settling Plaintiff (or his or her decedent) would have been exposed to W.R. Grace's products. The form of the Exposure Evidence may consist of a statement contained in the standard release as follows: "The undersigned verifies under oath that the plaintiff _____ was exposed to asbestos-containing products manufactured or distributed by W.R. Grace in connection with the plaintiff's employment as _____ during the approximate years _____ at the _____ jobsite." The parties further agree that pulmonary-function or other tests administered by any individual or entity named as a defendant in Owens-Corning v. Pitts, et al., C.A. No. 96-2095 in the United States District Court for the Eastern District of Louisiana, or any similar lawsuit that may be filed in the future (assuming that the basis of any such subsequent suit is well-founded and reasonably implicates the accuracy of the medical material involving the particular Settling Plaintiffs in question), shall not constitute acceptable Medical Evidence.

The Qualifying Materials for a Settling Plaintiffs' claim for an additional payment pursuant to Section 6 hereof shall consist of (i) medical evidence that the Settling Plaintiff has

(had) the disease mesothelioma, and (ii) a standard release in the form attached hereto as Exhibit D. No exposure evidence shall be required as the Settling Plaintiff will have previously qualified.

13.     W.R. Grace shall identify to GPJ&W with reasonable particularity, the defects in any Exposure Evidence and/or Medical Evidence that W.R. Grace determines to be unacceptable. GPJ&W shall then have the opportunity to cure the defects identified by W.R. Grace. W.R. Grace (through Jay W. Hughes, Jr.) and GPJ&W (through Theodore Goldberg) shall endeavor in good faith to resolve any disputes that may arise with respect to the sufficiency of Exposure Evidence and Medical Evidence. W.R. Grace, however, shall retain at all times the reasonable discretion to accept or reject Exposure Evidence and Medical Evidence. In the event that W.R. Grace and GPJ&W are unable to resolve disputes about the sufficiency of Exposure Evidence and/or Medical Evidence, the rejected Settling Plaintiffs may arbitrate to final and binding decision whether the submitted Exposure Evidence and Medical Evidence is satisfactory, considering similar submissions under this Agreement. Any plaintiff who loses or forgoes arbitration may re-enter the tort system.

## MORATORIUM PERIOD AND TOLLING OF LIMITATIONS

14.     Subject only to the exceptions expressly set forth in this Agreement, GPJ&W agrees that they will not commence, file or otherwise pursue any asbestos-related bodily-injury or wrongful-death actions or claims against W.R. Grace (or assist any other counsel in the commencement, filing or pursuit of any such actions or claims against W.R. Grace) during the period from March 1, 2000 to May 1, 2002 (the "Moratorium Period"); provided, however, that GPJ&W (i) may continue to pursue against W.R. Grace during the Moratorium Period the claims of Settling Plaintiffs whose Qualifying Materials are rejected by W.R. Grace and who fail to pursue or who lose arbitration; and (ii) may present to W.R. Grace during the Moratorium Period

9

claims on behalf of claimants who have been diagnosed with an asbestos-related mesothelioma or lung cancer (the "Extraordinary Claimants"), not to exceed seven mesothelioma cases and 25 lung cancer cases per year. W.R. Grace agrees to treat such Extraordinary Claimants as exceptions to the Moratorium Period and to enter good faith negotiations in an attempt to resolve such claims (upon submission and acceptance by W.R. Grace of Qualifying Materials). If the parties are unable to reach an agreement on any Extraordinary Claimants, GPJ&W may proceed to file formal proceedings on behalf of such Extraordinary Claimants.

15.    It is recognized that GPJ&W may, during the Moratorium Period, commence or pursue asbestos-related bodily-injury or wrongful-death case against defendants other than W.R. Grace on behalf of clients who are not Settling Plaintiffs ("Moratorium Plaintiffs"). If GPJ&W adds W.R. Grace as a defendant to any such case after expiration of the Moratorium Period but prior to September 1, 2002, then W.R. Grace agrees to consent to the amendment adding it as a defendant and to accept service of the Amended Complaint by Notice as provided in Section 20 hereafter. For purposes of the statute of limitations only, the case will be deemed to have been filed against W.R. Grace on the day it was first commenced against any other defendant. However, W.R. Grace retains all other defenses. The actual date on which W.R. Grace is added to any such suit shall control for all purposes other than the statute of limitations.

## NO ADMISSION OF LIABILITY

16.    GPJ&W and the Settling Plaintiffs acknowledge that W.R. Grace has denied and continues to deny any liability or wrongdoing and is willing to enter into this Agreement solely to avoid the delay, expense, inconvenience and uncertainty of further litigation. Neither this Agreement, nor any exhibit, document or instrument delivered hereunder, nor any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Agreement, shall be (i) deemed to be or constructed as an admission by any party of any fact,

matter, proposition or merit or lack of merit of any claim or defense or (ii) referred to or used in any manner or for any purpose in any pending or future action or proceeding, except one to enforce this Agreement.

## UNDER AND SUBJECT TO APPLICABLE ETHICS RULES

17.    The parties acknowledge that the terms and conditions of this Agreement are subject to applicable Codes of Professional Responsibility, Ethics Rules and similar provisions. To the extent any provision is held to or becomes inconsistent with such requirements, it will not be enforced, and the parties will endeavor to negotiate a revision that is consistent with such rules. Should it be impossible to do that, the remaining provisions of the Agreement shall still be enforceable, unless to do so would be to deprive either side of the benefit of the Agreement. It is the parties belief that the Agreement does comply with all applicable Codes of Professional Responsibility Ethics Rules and the like.

## CONFIDENTIALITY

18.    Except to the extent the Settling Plaintiffs or W.R. Grace (or their respective attorneys) are required to disclose such information in order to comply with applicable law or regulation, the terms of this Agreement, including the amount of any consideration paid, shall be kept strictly confidential and shall not be directly or indirectly disclosed by W.R. Grace or the Settling Plaintiffs or their employees, agents or attorneys except by written agreement of the parties or court order.  In the event that the Settling Plaintiffs or W.R. Grace are required to disclose such information in order to comply with applicable law or regulation, they agree that such disclosure will be limited only to those who have a lawful right to know such information and, at the time of such disclosure, they will exact, to the extent practicable, an additional agreement of confidentiality (that equates with their agreement hereunder) from the person or entity to whom such disclosure is made.

## NOTICES

19.    All notices or communications required or permitted to be given under this Agreement to Goldberg, Persky, Jennings & White, P.C. or the Settling Plaintiffs shall be addressed to:  Theodore Goldberg, Goldberg, Persky, Jennings & White, P.C., 1030 Fifth Avenue, Pittsburgh, Pennsylvania 15219.

20.    All notices or communications required or permitted to be given under this Agreement to W.R. Grace shall be addressed to:  Jay W. Hughes, Jr., W.R. Grace & Co.--Conn., 5400 Broken Sound Boulevard N.W., Boca Raton, FL  33487.

## ENTIRE AGREEMENT & JOINT AGREEMENT

21.    This Agreement shall for all purposes include all Exhibits and such Exhibits are incorporated herein.  This Agreement embodies the entire agreement among the parties, supersedes all prior agreements and understandings relating to the subject matter hereof and may be amended only by a written agreement executed jointly by all parties hereto. .In executing this Agreement, each party represents and warrants that he or she is not relying on any representation of any other party with respect to the subject matter hereof, except those explicitly set forth in this Agreement.  Any action to enforce this Agreement with respect to a particular Settling Plaintiff shall be filed in the court where the Settling Plaintiffs' case was pending.

22.    This Agreement has been prepared by joint negotiations of the parties.  Neither party is to be deemed the primary scrivener of this document.

## BANKRUPTCY OR REORGANIZATION

23.    Should W.R. Grace be placed into bankruptcy or reorganization, either voluntarily or involuntarily, the Settling Plaintiffs who were not already paid, and the Moratorium Plaintiffs may, at their individual option, reject this Agreement and assert their claims unrestricted by this Agreement.  However, even if they reject this Agreement, the Settling Plaintiffs and Moratorium

12

Plaintiffs shall continue to have the protection from the statute of limitations in this Agreement
and prior agreements.

EXECUTED as of the _____ day of _____, 2000.

W.R. GRACE & CO. -- CONN.

By: _____
Jay W. Hughes, Jr.
Senior Litigation Counsel

GOLDBERG, PERSKY, JENNINGS &
WHITE, P.C.

By: _____
Theodore Goldberg

13

# Exhibit

# B

Brown, Hillard
Morford, Lavern
Boudreau, Raymond D.
Bowman, Willis D.
Brooks, John E.
Bruno, Joseph M.
Cagney, Dennis J.
Jennings, Ralph
Kiesel, Ronald S.
Ostrozovich, Dan
Roe Jr., Frederick W.
Toth, John J.
Williams, Melvin
Wall, June M.

# Exhibit

# C

Acosta, Jose
Atkinson, Billy R.
Adams, Chaffie
Bergeron, Daniel H.
Banks, James
Billings, Ruben
Boddie, Jr., Leslie J.
Braddock, Jessie
Brodnex, Elijah
Burger, Fred C.
Busch, Barbara
Bowden, Samuel
Baston, Charles E.
Beier, Guenther H.
Brewster, Craige L.
Bednarz, Russell D.
Bilski, Louis J.
Carr, Richard
Clemons, A.W.
Carlisle, James
Curry, James
Dunn, Jr., Joseph
Davidson, Jr., James G
Dobis, Joseph G.
Doxie, William
Fernandez, Manuel
Gates, George H.
Gipson, Wilson
Gort, Sr., Harvey
Gates, Peter J.
Gipson, John H.
Green, J. C.
Green, Oscar T.
Harris, Jr., Sylvester
Horrison, Johnnie F.
Humes, Terrace
Healy, John N.
Hicks, Jr., William D.
Hinton, Eddie
Hooper, Jr., James
Irvin, Lawrence C.
Jones, Lorenzo
Jumper, Thomas L.
Jamrog, Richard G.
Jackson, Samuel H.
Jones, Roosevelt

Jones, Leon
Jackson, T. J.
King, William
Korpal, John
Lee, David
Livingston, George J.
Lampley, Robert
Long, Jerry
Louis, Richard
McMillan, T.J.
Milliken, Daniel B.
Munoz, Fenando
Marlatt, Earl L.
Norris, Jerry J.
Owens, Elvin
Presley, A. Z.
Piotrowski, Leonard
Pritchard, John E.
Painter, Clifford L.
Rangel, Joseph J.
Riley, Dudley
Rodriguez, Jaime
Ryan, Jr., Clifton
Schuiteman, Richard E.
Scott, Robert L.
Swilley, Joe N.
Simmons, Julius
Sims, Norvell
Sponseller, Lee
Sponseller, Lee
Thornton, Bobby
Tucker, Terry L.
Treiber, Rudolph H.
Vanzant, Thurman
Vasquez, Alfred
Vega, Manuel G.
Williams, Richard
Woodson, Cleveland
Woodhouse, Samuel
Wyatt, John G.
Wicker, Cornell
Wilson, Willie B.
Watson, Thomas
Weed, David A.
Wilson, Larry J.

# Exhibit

# D

Arbour, Frederick J
Ayres, Elmer A
Bolton, John
Brown, Jackson
Bell, John H
Beechum, Bernard C
Barnes, John R
Carter, Ervin M
Dallas, Sr. L J
Delaney, Jr., Willie J.
Dugan, Rudolph
Davis, Norman
Fisher, Arthur G.
Fisher, Aletha L
Fisher, William J
Fisher, William J
Flood, Jerome C
Ferguson, Richard A
Gofton, Robert
Gadioli, Sr., John C.
Gage, Cecil A
Glazier, Ralph M.
Green, Albert H
Hobbs, Wendall H
Houde, Jean P
Hilliard, Dana D
Hager, Charles A
Johnson, Willie
Krenz, Donald
Krenz, Robert L
Krenz, William R
Kraycsir, Sr., Andrew
Kulik, Erwin J
Lyke, Robert E
Lewis, James E
Lester, George
Lapan, Lyle J
Martin, Robert R
Marecek, Frank H
Maliszewski, Edward
McClain, Roscoe
McNeal, Thomas L
Moralez, Benito
Morel, Gary C
Morley, Glenden P
Morin, Norbert I

Nagel, Samuel
Nichols, George R
Porath, Robert D
Parling, Melvin B
Purtell, John M
Sherman, Willie W
Vogan, Gerold K
Wagar, Jonh D
Wiles, William J
Weiler, Jerome T
Boyer, Henry L
Bray, Willie M
Bridgewater, Carl W
Casas, Jr., Eugenio C
Davidson, Jr., James G
Fortenberry, James
Gay, Thomas B.
Mieczek, Kenneth E

# Exhibit

# E

Averill, Ronald
Arvig, Charles M.
Abee, Jack O.
Armiger, Frances
Avera, Michael J.
Baxter, Leroy G.
Black, George
Bennington, Glen
Bailey, Robert G.
Black, Elwood
Bennett, Stanley
Bartolovich, Ralph
Barch, Albert C.
Bonafortuna, Samuel J.
Byrand, Regis C.
Cook, Harry K.
Cowan, Cecil A.
Canoles, Thomas B.
Carson, John R.
Conaway, George
Connell, Jerome P.
Cook, Walter H.
Carson, Paul E.
Craig, Ronald J.
Davis, Nimrod
Davis, William E.
Dashkovitz, Fred
Dudek, John C.
Daugherty, John J.
Edwards, Horace W.
Estermyer, James G.
Edmundson Jr. Erny
Ellis, Herbert
Earls, Crawford
Ensminger, Larry L.
Fales, Lawrence B.
Fischer, Leroy J.
Frederick, Jack D.
Fraley, Beryl
Faulkner, John P.
Ferrise, Pete A.
Flowers, Earl
Figiel, Francis M.
Giles, Edward
Gould, Charles E.
Grosiak, Stanley

Gamble Sr., Reginald W.
Gualteri, Samuel
Howard, Danny
Houser, Leroy
Hofmeister, John J.
Higgins, James D.
Hornick, Francis M.
Hartman, Victor R.
Herron, Victor D.
Hasley, Michael W.
Harper, James D.
Harris, Robert A.
Hagin Sr., Thomas M.
Jose, David  L.
Jamison, Homsey N.
Joseph, Arthur L.
Kolesar, Leo J.
Kosnac, Steve M.
Keesecker Sr., Ralph M.
Kolman, Albert J.
Kopa, Michael
Koller, Robert B.
Knechtel, Daniel W.
Krol, Peter J.
Kibble, Francis W.
Kyle Sr., Robert A.
Life, Gilbert
Litwiler Jr., Victor E.
Lee, James
Loveridge, Randall D.
Lewis, Robert L.
Love, Ernest E.
Lee, John W.
Linton, Walter M.
Long, Dorsey C.
Myers, Fleming
Mangold, John
Marney, Denis
Mazik, Jr., Robert A.
Moore, Ronald R.
Miller, James E.
McComas, Richard D.
Marinos Sr., Stanley
Mucy, Gabriel
McGhee, Fred
Moffett, Calvin C.

Morrow, Roosevelt
Miller, William T.
McBride, James
McNelly, Charles
Mason, Donald E.
Martin, Edward C.
Neal, Wesley
Overly, Frank E.
O'Malley, Richard
O'Neil, John J.
Parker, Earl J.
Porter, Cledis
Partin, Robert
Petrow, John H.
Patterson, Leslie
Peil, Ronald L.
Pavilky, Dorothea R.
Popp, Anthony P.
Pratt, Ray C.
Prodanovich, Nick
Pelles, Elmer
Perez, Roberto
Popp, Bruce R.
Putz Sr., James S.
Perez, Thomas
Potts, Gary D.
Quinn, Robert
Ridgely, James W.
Rowe Sr., Charles R.
Rungo, Frank
Roper, Mary L.
Rosado, Onofre G.
Roe, Jack M.
Stewart, Gerald
Sowards, Richard L.
Stuart, Jr., James M.
Simpson, Herbert R.
Stevenson, Kirk
Schaefer, Paul
Shrum, Barbara
Schoon, Warren D.
Slatton, Raymond C.
Stewart, Willie
Salsgiver, Fred T.
Springer, Richard M.
Shaffer Sr., Maurice K.

Sheinin, Mary C.
Stoecker, Henry F.
Taylor Jr., Samuel T.
Tennant, Jimmy B.
Thomas, Julius
Trowbridge, Albert
Tincani, Joseph
Unick, Albert T.
Vedral, Betty Lou
Voight, Frederick A.
Vuckovich, Nicholas G.
Wright, Frank C.
Walter, Edward V.
Weddle, Dewey
Wilkerson, Harold L.
Walker, Albert
Whitehead, James
Williams, Samuel
Wylie, Edward L.
Wilczynski, Paul F.
Weishorn, Richard
Wagner, Joseph W.
Zsiros, William
Zaleta, William
Zawinski, Paul
Zimmers, Vincent S.
Zimmer, Terry R.
Awdakimow, Edward
Armagost, Earl L.
Ayris, Ivan F
Ames, Terry L
Anderson, Ronald B.
Antill, William A.
Anderson, Douglas G
Adams, Jr., Hiram
Alford, Jerry
Allison, James C.
Ayers, Kevin S.
Adams, Sr., Fred O
Byrne, Thomas J.
Burns, Raymond K.
Bailey, Robert E.
Bennett, James E.
Becker, Raymond
Benzo, John
Boyd, Bernard

Bennett, Ervin
Burnett, Ralph H.
Benjamin, Keith B.
Brownlee Sr., John F.
Braddock, Vaughn D.
Bazan, Michael
Beagle, David F.
Bright, Kenneth D.
Bellinger, Roger L
Black, A. J.
Barnes, James V.
Beaty, Joe D.
Bermudez, Gildardo
Bills, Yvonne
Blake, James H.
Blanco, Arturo
Ilich, Boro
Brooks, Barnett F.
Brown, Charles E.
Buchanan, Freddie
Boykins, Leroy
Blazek, Steve J.
Bryan, Wayne A.
Butler, Gary L.
Burnette, Lee James
Berisford, Robert A.
Burke, Michael T.
Bradfield, Sr., William E
Braidic, George M.
Bartholomew, William W.
Conley, Carl K.
Cartwright, Francie S
Clements, Robert J
Collins, Clyde
Carroll, Herbert D.
Coen, Hank L.
Campana, William P.
Coleman, Arthur
Carroll, Roosevelt
Collins, James L.
Corter, Julius A.
Costakis, George L.
Cunningham, Dave E.
Camerlin, Robert W.
Chadnock, John W.
Connolly, Okey K.

Conroy, Michael J.
Cooper, John A.
Calebaugh, Michael S.
Clutter, Richard R.
Crile, Donald L.
Craver, Walter
Casson, George R.
Cline, Rufus
Dauer, Raymond
Durstine, William A.
Deller, William E.
Deal, Dennis
Doney, George W.
Danna, Walter L.
Davis, Edgar R.
Darr, Wilbert
Dickens, Kary L
Dupuis, Paul D.
DeBlassio Sr., Joseph
Dickey, William
Darling Sr., William D.
Dubowski, Annie
Durr, John
DaRe, Richard J.
DePass, Earl
Daugherty, Glen L.
DiCenzo, Joseph
Evans, Robert J.
Eguia, John C.
Fizer, John R.
Ferrell, Raymond
Fetty, Herbert A.
Flaherty, Hugh F.
Flaherty, Michael E.
Frohnapfel, Robert
Flattery, Kenneth T
Farmer, Willie J.
Fitzgerald, James E.
Franklin, Judson
Ford, Robert A.
Gross, Gerald C
Gemble, Peter J.
Gilreath, Gordon C
Geary, Robert H.
Gularek, Francis M.
Guthrie, Dale O.

Gustin, William A
Garrett Jr, Otis
Glass, Eugene
Guske, Arno A
Heagy, Paul
Haraburda, Paul J.
Hudak, Nicholas
Hitchcock, Robert L
Hayes, George B
Hicks, Alvin R.
Humberson, Terry L.
Hart, Jerome J
Huffman, Donald R.
Holcomb, Bernett
Hilty, Milton
Hawkins Jr., Billy
Henderson, Albert
Henderson, John H.
Holm, Richard
Hood, Larry E.
Hooper Jr., Theodore
Hoskin, Floyd
Horn, James N
Hancock, Harry
Heinritz, Dale
Hickey, Gordon D
Harbourt, Phillip R.
Johnson, Russell
Jones Sr., Fred J.
Jones, Avery
Jones, Willard
Jones, Donald H.
Joseph, John N.
Jones, Claude
Jordan, Leroy C.
Josleyn Earl W.
Johnson, James A.
Johnson, Clarence J.
Kinnen, Robert L.
Kasun, Ronald
Kirkland, Carl W.
Knotts, Gary
Keffer, Earl
Keras, Charles
Komorowski, Michael
Kuntz, William A.

Koons, Lloyd W.
Kordistos, James P.
Karoftis, Manolis M.
Kelly, James L.
Krol, Michael W.
Kakascik Sr., Thomas F.
Knight Sr., William P.
Kruger, Roger L.
Kiffer, Earl R.
Kegley, Oscar A.
Koenig, Robert J.
Knotts, Daniel E.
King Sr., James J.
Keyser, Robert J.
Lewis, Martin D
LaCue, Leonard C.
Livingstone, Barry D.
Lambert, Herman
Lewis Jr., Richard
Lott, Fatimor
Lowery, Charles E.
Layfield, Davis S.
Laudensack, Michael M.
Luci, Ronald R
Lepowsky, Joseph F.
Meloche, Richard L
Miller, Harry P.
Mason, Donald L.
Murdy, Raymond
Muth, Robert
Mahaffey, Richard S.
Medved, Thomas R.
Matijevich, Dan
Martini, John
Marsh Jr., William G.
Malecke, Dennis J
McDowell, Ernest R
Maslowski, Joseph
Maxwell, Joseph D.
McClain, John L.
McKnight, Jack
McVicker, James K.
Misoyianis, George
Moore, Nickolas W.
Morris, John D.
Miller, John H

Mandzok, Method
Malone, Aaron
Marthel, Larry
Mattern, Carmen F.
Matthews, Ellen M.
Metcalf, Elton
Morales, Michael
Mahan, Charles E.
Miller, Bernard D.
Manuel, Foye L.
Maston, Carl M.
Moore, Ralph E.
McCormick, Harold D.
Naser, Robert
Noah Sr., William H.
Neeley, Raymond L.
Neudovich, George J.
Nichols, Napoleon
Nickelson, Otis
Nickerson, Joe
O'Donnell, John
Oswalt Sr., Robert
Pringle, William L.
Prast, Charles A
Picciuto, Mike
Patrick, Michael
Puskarich, Nicholas
Patton, Ray
Pugh, James D.
Podjed, Jacob R.
Pagot, Joseph M.
Pride, Robert H.
Reagle, Arthur L.
Robinson, Charles L.
Rysak, Walter L.
Rogers, Charles C.
Rice Jr., Edward J.
Richardson, Herbert L.
Rizzi, Victor J.
Rose, Margaret E.
Rosales, Santos J
Regal, Joseph
Roberts, Louise
Robinson, Larry J.
Rospierski Sr., Thomas M.
Ross, Howard M.

Rhodes, Robert R.
Rogers, David K.
Ruyak, Robert F.
Snyder, Ira D.
Stephens, Warren A.
Shiel Sr., Edward
Schwab, Matt
Sikora, John
Stull, Donald
Sloat, Joseph B.
Stanley Sr., Kenneth J.
Stouffer, Wendell W.
Small, Robert H
Sever, David R.
Schultz, Donald
Stephan, Richard T.
Salvetti, Gerald C.
Saylor, James C.
Shaifer Sr., John W.
Sills, Richard L.
Singleton, Charles E.
Smith, Raymond C.
Stout, Roosevelt, D.
Surbaugh, Franklin
Santo, Frank
Santo, Joseph
Smith, Herbert E.
St.Clair, Donald L.
Sample, Walter G,
Saner, John M.
Strizak, Charles J.
Sefchick, Frank J.
Tucker, David L.
Tyrpin, Stanley H.
Taylor, James
Taylor, John
Taylor, Robert L.
Thorn, George L.
Topps, Elbert
Tucker, Robert C.
Thornton, Michael T.
Terberg, Wayne L
Trenk, George A.
Tkalcevic, Thomas
Torok, Edward
Tournay Sr., Alfred

Thomas, Michael J
Thorton, Michael I
Ursta, John C.
Vates, Raymond
Vasquez, Domingo
Vrotsos, Pete P.
Varga, Geza S.
Vandiver, Joseph J.
Vavoulas, John
White, George W.
Warner, Jerry D
Whitley, Charles W.
Warchola, Harry
Watkins, John C.
White, George A.
Wieloh, Bernard E.
Wright, George
Weinzen, Robert L.
Wellhausen, William
Weatherspoon, Willis
Wilson, Willie B.
Woldt, Wendell J.
Wise, Ronald E.
Walker, Gerald H.
White Sr., Walter
Walters, Randall E.
Yuckenberg, Harry C.
Yacura, Michael A.
Yaroscak, John M.
Yates, Richard H.
Chenot, Fred
Collins Sr., Willie
Contos, George
DeCrease, Aukey J.
Gilbertson, Rodney E.
Harvilak, John B.
Haywood, James L.
Mohr Sr., Richard F.
Nesbitt, Walter
Vevers Jr., Chester R.
Wargo, Marvin E.

# Exhibit

# F

I:\settle\release\wrg\wrgind.doc\B2939

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is made by and between **Raymond D. Boudreau and Debra J. Boudreau** (hereinafter referred to as ("Claimant") and W.R. Grace & Co.-Conn. ("Grace")(collectively, the "Parties"). This Agreement is premised upon the following recitals:

## RECITALS

A.    On _____, 2000, Claimant filed a lawsuit against Grace and several other defendants in the **Marion County Superior Court, Civil Division**, Case No. **49D029501-MI-001-825** (the "Lawsuit"). In the Lawsuit, the Claimant sought to recover for his medical condition allegedly caused by asbestos-containing products to which he was allegedly exposed.

B.    Grace has denied and continues to deny liability to the Claimant for the matters alleged or such matters which could have been alleged in the Lawsuit, and enters into this Agreement solely to avoid the uncertainty and expense of further litigation.

C.    The Parties desire to compromise and settle completely the disputes between them upon the terms and in the manner herein provided.

## AGREEEMENT

**NOW, THEREFORE,** in consideration of the mutual promises contained in this Agreement, and each act done pursuant to this Agreement by the Parties, the Parties now agree as follows:

1.     Grace shall pay to the Claimant the total sum TEN Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged.

2.     The Claimant agrees that not later than five (5) business days after she receives payment, she will dismiss or cause to be dismissed, with prejudice, all of the claims made in the Lawsuit against Grace.

3.     The Claimant covenants that she will never at any future time commence, prosecute, maintain or cause or permit to be commenced, prosecuted or maintained against Grace (including without limitation all affiliated, related, parent and subsidiary companies) and all of its present and former employees, officers, servants, agents, representatives, directors, attorneys, successors and/or assigns ("the Grace Parties") any action or proceeding of any description whatever in any Court or in any other kind of forum to charge the Grace Parties with any liability for, or to recover any compensation for, or to recover damages, or for any determination of fact or law, arising out of or relating to:

   (a)     Claimant and/or Claimant's medical condition;

   (b)     All matters alleged or which could have been alleged in the Lawsuit regarding Claimant and/or Claimant's medical condition;

   (c)     Any and all matters, losses or damages of any kind relating to Claimant and/or Claimant's medical condition, including those which are known or anticipated, those which were alleged in the Lawsuit, and those presently unknown or unanticipated which may later result or be discovered; and

   (d)     Any and all matters, losses, damages or things of any kind prior to the date hereof, including those which are known or anticipated and those presently unknown or unanticipated which may later result or be discovered. Provided, however, that if plaintiff, **Raymond D. Boudreau**, develops lung cancer or mesothelioma, as those terms are more fully defined and described in the Confidential Settlement Agreement between W.R. Grace & Co-Conn. And Goldberg, Persky, Jennings & White, P.C., then, such plaintiff's exclusive rights to additional compensation from W.R. Grace & Co.-Conn. Will be governed by paragraph 6 of said Confidential Settlement Agreement.

4.    The Claimant declares, warrants and represents:

(a)    That the Claimant has not assigned nor transferred to any person, entity or party any claims that are the subject matter of this Agreement and that he is the sole Party in interest with respect to the claims about which this Agreement is being made;

(b)    That no promise, enticement or agreement not herein expressed has been made to the Claimant and that the terms of the Agreement constitute the entire agreement between the Parties with respect to the subject matter hereof, and that the terms of this Agreement are contractual and not merely a recital; and

(c)    That the Claimant may in the future discover facts different from or in addition to those which he now knows or believes to be true with respect to the matters which are the subject of this Agreement, and he agrees that this Agreement shall remain in effect in all respects, notwithstanding the discovery or existence of different or additional facts.

5.    <u>Confidentiality Clause</u>.  The Parties and their attorneys expressly waive any rights they may have to disclose the terms of this Agreement under federal or state law, including federal and state statutory and constitutional law, and agree that they will not divulge, disclose or communicate to any person, firm, organization or corporation the terms of this Agreement and/or the amounts (or any estimate or approximation thereof) paid to the Claimant pursuant to this Agreement, except under the Order of any Court of competent jurisdiction.  The Parties and their attorneys further agree not to disclose, disseminate or reveal in any way whatsoever the original, any copy or any portion of this Agreement, directly or indirectly, to any person, firm, corporation, or organization.

It is understood and agreed by the Parties and their attorneys that a breach of this Confidentiality Clause does not constitute a breach of the entire Agreement.  The Parties and their attorneys intend that the Confidentiality Clause be severable from the other terms of this Agreement.

The Parties and their attorneys agree that if any proceeding is brought against them to require the terms or amount of this Agreement to be disclosed to any person, firm, organization or corporation, the person from whom discloser is sought will immediately notify opposing attorneys in writing of such proceeding.  Such notice shall be sent by certified mail, return receipt requested, to either (a) **Goldberg, Persky, Jennings & White, P.C.** (for the Claimant), or (b **Jay W. Hughes, Jr.** (for Grace).  The Parties and their attorneys further agree to provided each other with the opportunity to intervene in and defend against any such proceeding and agree to abide by the terms of the Confidentiality Clause unless ordered by a Court of competent jurisdiction to disclose the terms or amount involved in this Agreement.

6.    Each party shall pay it sown costs and attorneys' fees arising out of the Lawsuit, and neither party shall recover its costs or attorneys fees from the other in connection with this matter.

7.    No waiver, modification or amendment or any term, condition or provision of this Agreement shall be valid or have any force or effect unless made in writing and signed by the Parties.

8.    This Agreement may be pleaded as a defense to any claim, action or other proceeding that my be brought, instituted or taken by the Claimants against the Grace Parties in breach of the Agreement or relating to the matters which formed the basis for the Lawsuit.

9.    Each of the covenants contained in this Agreement shall be binding upon and shall inure to the benefit of the respective heirs, executors, administrators, assigns, and successors in interest of each of the Parties.

10.    The Claimant acknowledges and declares that in making this Agreement, he has relied solely upon his own or his counsel's own judgment, believe, and knowledge of the nature

and extent of any damages suffered as a result of the matters at issue in the Lawsuit, and has not relied upon any statement or representation by Grace or any of its officers, representatives, agents, attorneys or employees.

11.    This Agreement shall be governed by and interpreted in accordance with the laws of the State of Indiana.  Any action regarding this Agreement shall be maintained in a court in the State of Indiana.

12.    This Agreement represents the entire agreement between the Parties with respect to this matter, and it supersedes all prior negotiations, representations, or agreements, whether written or oral, between the Parties.

13.    This Agreement may be executed in multiple counterparts, each of which shall be an original, but all of which together shall constitute one and the same instrument.

Dated: 11-21-00

Raymond D. Boudreau

Debra J. Boudreau

I:\settle\release\wrg\wrgind.doc\B2944

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is made by and between **Willis D. Bowman and Carol S. Bowman** (hereinafter referred to as ("Claimant") and W.R. Grace & Co.-Conn. ("Grace")(collectively, the "Parties"). This Agreement is premised upon the following recitals:

## RECITALS

A.    On _____, 2000, Claimant filed a lawsuit against Grace and several other defendants in the **Marion County Superior Court, Civil Division**, Case No. **49D029501-MI-001-753** (the "Lawsuit"). In the Lawsuit, the Claimant sought to recover for his medical condition allegedly caused by asbestos-containing products to which he was allegedly exposed.

B.    Grace has denied and continues to deny liability to the Claimant for the matters alleged or such matters which could have been alleged in the Lawsuit, and enters into this Agreement solely to avoid the uncertainty and expense of further litigation.

C.    The Parties desire to compromise and settle completely the disputes between them upon the terms and in the manner herein provided.

## AGREEEMENT

**NOW, THEREFORE,** in consideration of the mutual promises contained in this Agreement, and each act done pursuant to this Agreement by the Parties, the Parties now agree as follows:

1.     Grace shall pay to the Claimant the total sum TEN Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged.

2.     The Claimant agrees that not later than five (5) business days after she receives payment, she will dismiss or cause to be dismissed, with prejudice, all of the claims made in the Lawsuit against Grace.

3.     The Claimant covenants that she will never at any future time commence, prosecute, maintain or cause or permit to be commenced, prosecuted or maintained against Grace (including without limitation all affiliated, related, parent and subsidiary companies) and all of its present and former employees, officers, servants, agents, representatives, directors, attorneys, successors and/or assigns ("the Grace Parties") any action or proceeding of any description whatever in any Court or in any other kind of forum to charge the Grace Parties with any liability for, or to recover any compensation for, or to recover damages, or for any determination of fact or law, arising out of or relating to:

(a)     Claimant and/or Claimant's medical condition;

(b)     All matters alleged or which could have been alleged in the Lawsuit regarding Claimant and/or Claimant's medical condition;

(c)     Any and all matters, losses or damages of any kind relating to Claimant and/or Claimant's medical condition, including those which are known or anticipated, those which were alleged in the Lawsuit, and those presently unknown or unanticipated which may later result or be discovered; and

(d)     Any and all matters, losses, damages or things of any kind prior to the date hereof, including those which are known or anticipated and those presently unknown or unanticipated which may later result or be discovered.  Provided, however, that if plaintiff, **Willis D. Bowman**, develops lung cancer or mesothelioma, as those terms are more fully defined and described in the Confidential Settlement Agreement between W.R. Grace & Co-Conn. And Goldberg, Persky, Jennings & White, P.C., then, such plaintiff's exclusive rights to additional compensation from W.R. Grace & Co.-Conn. Will be governed by paragraph 6 of said Confidential Settlement Agreement.

4.      The Claimant declares, warrants and represents:

(a)      That the Claimant has not assigned nor transferred to any person, entity or party any claims that are the subject matter of this Agreement and that he is the sole Party in interest with respect to the claims about which this Agreement is being made;

(b)      That no promise, enticement or agreement not herein expressed has been made to the Claimant and that the terms of the Agreement constitute the entire agreement between the Parties with respect to the subject matter hereof, and that the terms of this Agreement are contractual and not merely a recital; and

(c)      That the Claimant may in the future discover facts different from or in addition to those which he now knows or believes to be true with respect to the matters which are the subject of this Agreement, and he agrees that this Agreement shall remain in effect in all respects, notwithstanding the discovery or existence of different or additional facts.

5.      <u>Confidentiality Clause</u>. The Parties and their attorneys expressly waive any rights they may have to disclose the terms of this Agreement under federal or state law, including federal and state statutory and constitutional law, and agree that they will not divulge, disclose or communicate to any person, firm, organization or corporation the terms of this Agreement and/or the amounts (or any estimate or approximation thereof) paid to the Claimant pursuant to this Agreement, except under the Order of any Court of competent jurisdiction. The Parties and their attorneys further agree not to disclose, disseminate or reveal in any way whatsoever the original, any copy or any portion of this Agreement, directly or indirectly, to any person, firm, corporation, or organization.

It is understood and agreed by the Parties and their attorneys that a breach of this Confidentiality Clause does not constitute a breach of the entire Agreement. The Parties and their attorneys intend that the Confidentiality Clause be severable from the other terms of this Agreement.

The Parties and their attorneys agree that if any proceeding is brought against them to require the terms or amount of this Agreement to be disclosed to any person, firm, organization or corporation, the person from whom discloser is sought will immediately notify opposing attorneys in writing of such proceeding. Such notice shall be sent by certified mail, return receipt requested, to either (a) **Goldberg, Persky, Jennings & White, P.C.** (for the Claimant), or (b **Jay W. Hughes, Jr.** (for Grace). The Parties and their attorneys further agree to provided each other with the opportunity to intervene in and defend against any such proceeding and agree to abide by the terms of the Confidentiality Clause unless ordered by a Court of competent jurisdiction to disclose the terms or amount involved in this Agreement.

6.      Each party shall pay it sown costs and attorneys' fees arising out of the Lawsuit, and neither party shall recover its costs or attorneys fees from the other in connection with this matter.

7.      No waiver, modification or amendment or any term, condition or provision of this Agreement shall be valid or have any force or effect unless made in writing and signed by the Parties.

8.      This Agreement may be pleaded as a defense to any claim, action or other proceeding that my be brought, instituted or taken by the Claimants against the Grace Parties in breach of the Agreement or relating to the matters which formed the basis for the Lawsuit.

9.      Each of the covenants contained in this Agreement shall be binding upon and shall inure to the benefit of the respective heirs, executors, administrators, assigns, and successors in interest of each of the Parties.

10.     The Claimant acknowledges and declares that in making this Agreement, he has relied solely upon his own or his counsel's own judgment, believe, and knowledge of the nature

and extent of any damages suffered as a result of the matters at issue in the Lawsuit, and has not relied upon any statement or representation by Grace or any of its officers, representatives, agents, attorneys or employees.

11.     This Agreement shall be governed by and interpreted in accordance with the laws of the State of Indiana.  Any action regarding this Agreement shall be maintained in a court in the State of Indiana.

12.     This Agreement represents the entire agreement between the Parties with respect to this matter, and it supersedes all prior negotiations, representations, or agreements, whether written or oral, between the Parties.

13.     This Agreement may be executed in multiple counterparts, each of which shall be an original, but all of which together shall constitute one and the same instrument.

Dated: _11-15-200_

Willis D. Bowman

Carol S. Bowman

I:\settle\release\wrg\wrgind.doc\B2950

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is made by and between **John Brooks and Kathryn Brooks** (hereinafter referred to as ("Claimant") and W.R. Grace & Co.-Conn. ("Grace")(collectively, the "Parties"). This Agreement is premised upon the following recitals:

### RECITALS

A.    On _____, 2000, Claimant filed a lawsuit against Grace and several other defendants in the **Marion County Superior Court, Civil Division**, Case No. **49D029501-MI-001-409** (the "Lawsuit"). In the Lawsuit, the Claimant sought to recover for his medical condition allegedly caused by asbestos-containing products to which he was allegedly exposed.

B.    Grace has denied and continues to deny liability to the Claimant for the matters alleged or such matters which could have been alleged in the Lawsuit, and enters into this Agreement solely to avoid the uncertainty and expense of further litigation.

C.    The Parties desire to compromise and settle completely the disputes between them upon the terms and in the manner herein provided.

### AGREEEMENT

NOW, THEREFORE, in consideration of the mutual promises contained in this Agreement, and each act done pursuant to this Agreement by the Parties, the Parties now agree as follows:

1.     Grace shall pay to the Claimant the total sum TEN Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged.

2.     The Claimant agrees that not later than five (5) business days after she receives payment, she will dismiss or cause to be dismissed, with prejudice, all of the claims made in the Lawsuit against Grace.

3.     The Claimant covenants that she will never at any future time commence, prosecute, maintain or cause or permit to be commenced, prosecuted or maintained against Grace (including without limitation all affiliated, related, parent and subsidiary companies) and all of its present and former employees, officers, servants, agents, representatives, directors, attorneys, successors and/or assigns ("the Grace Parties") any action or proceeding of any description whatever in any Court or in any other kind of forum to charge the Grace Parties with any liability for, or to recover any compensation for, or to recover damages, or for any determination of fact or law, arising out of or relating to:

(a)     Claimant and/or Claimant's medical condition;

(b)     All matters alleged or which could have been alleged in the Lawsuit regarding Claimant and/or Claimant's medical condition;

(c)     Any and all matters, losses or damages of any kind relating to Claimant and/or Claimant's medical condition, including those which are known or anticipated, those which were alleged in the Lawsuit, and those presently unknown or unanticipated which may later result or be discovered; and

(d)     Any and all matters, losses, damages or things of any kind prior to the date hereof, including those which are known or anticipated and those presently unknown or unanticipated which may later result or be discovered. Provided, however, that if plaintiff, **John Brooks**, develops lung cancer or mesothelioma, as those terms are more fully defined and described in the Confidential Settlement Agreement between W.R. Grace & Co-Conn. And Goldberg, Persky, Jennings & White, P.C., then, such plaintiff's exclusive rights to additional compensation from W.R. Grace & Co.-Conn. Will be governed by paragraph 6 of said Confidential Settlement Agreement.

4.     The Claimant declares, warrants and represents:

   (a)     That the Claimant has not assigned nor transferred to any person, entity or party any claims that are the subject matter of this Agreement and that he is the sole Party in interest with respect to the claims about which this Agreement is being made;

   (b)     That no promise, enticement or agreement not herein expressed has been made to the Claimant and that the terms of the Agreement constitute the entire agreement between the Parties with respect to the subject matter hereof, and that the terms of this Agreement are contractual and not merely a recital; and

   (c)     That the Claimant may in the future discover facts different from or in addition to those which he now knows or believes to be true with respect to the matters which are the subject of this Agreement, and he agrees that this Agreement shall remain in effect in all respects, notwithstanding the discovery or existence of different or additional facts.

5.     <u>Confidentiality Clause</u>. The Parties and their attorneys expressly waive any rights they may have to disclose the terms of this Agreement under federal or state law, including federal and state statutory and constitutional law, and agree that they will not divulge, disclose or communicate to any person, firm, organization or corporation the terms of this Agreement and/or the amounts (or any estimate or approximation thereof) paid to the Claimant pursuant to this Agreement, except under the Order of any Court of competent jurisdiction. The Parties and their attorneys further agree not to disclose, disseminate or reveal in any way whatsoever the original, any copy or any portion of this Agreement, directly or indirectly, to any person, firm, corporation, or organization.

It is understood and agreed by the Parties and their attorneys that a breach of this Confidentiality Clause does not constitute a breach of the entire Agreement. The Parties and their attorneys intend that the Confidentiality Clause be severable from the other terms of this Agreement.

The Parties and their attorneys agree that if any proceeding is brought against them to require the terms or amount of this Agreement to be disclosed to any person, firm, organization or corporation, the person from whom discloser is sought will immediately notify opposing attorneys in writing of such proceeding. Such notice shall be sent by certified mail, return receipt requested, to either (a) **Goldberg, Persky, Jennings & White, P.C.** (for the Claimant), or (b **Jay W. Hughes, Jr.** (for Grace). The Parties and their attorneys further agree to provided each other with the opportunity to intervene in and defend against any such proceeding and agree to abide by the terms of the Confidentiality Clause unless ordered by a Court of competent jurisdiction to disclose the terms or amount involved in this Agreement.

6.    Each party shall pay it sown costs and attorneys' fees arising out of the Lawsuit, and neither party shall recover its costs or attorneys fees from the other in connection with this matter.

7.    No waiver, modification or amendment or any term, condition or provision of this Agreement shall be valid or have any force or effect unless made in writing and signed by the Parties.

8.    This Agreement may be pleaded as a defense to any claim, action or other proceeding that my be brought, instituted or taken by the Claimants against the Grace Parties in breach of the Agreement or relating to the matters which formed the basis for the Lawsuit.

9.    Each of the covenants contained in this Agreement shall be binding upon and shall inure to the benefit of the respective heirs, executors, administrators, assigns, and successors in interest of each of the Parties.

10.    The Claimant acknowledges and declares that in making this Agreement, he has relied solely upon his own or his counsel's own judgment, believe, and knowledge of the nature

and extent of any damages suffered as a result of the matters at issue in the Lawsuit, and has not relied upon any statement or representation by Grace or any of its officers, representatives, agents, attorneys or employees.

11.    This Agreement shall be governed by and interpreted in accordance with the laws of the State of Indiana. Any action regarding this Agreement shall be maintained in a court in the State of Indiana.

12.    This Agreement represents the entire agreement between the Parties with respect to this matter, and it supersedes all prior negotiations, representations, or agreements, whether written or oral, between the Parties.

13.    This Agreement may be executed in multiple counterparts, each of which shall be an original, but all of which together shall constitute one and the same instrument.

Dated: _11-17-00_

**John Brooks**

**Kathryn Brooks**

I:\settle\release\wrg\wrgind.doc\B2952

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is made by and between **Hillard Brown** (hereinafter referred to as ("Claimant") and W.R. Grace & Co.-Conn. ("Grace")(collectively, the "Parties"). This Agreement is premised upon the following recitals:

## RECITALS

A.    On _____, 2000, Claimant filed a lawsuit against Grace and several other defendants in the **Marion County Superior Court, Civil Division**, Case No. **49D029501-MI-001-828** (the "Lawsuit"). In the Lawsuit, the Claimant sought to recover for his medical condition allegedly caused by asbestos-containing products to which he was allegedly exposed.

B.    Grace has denied and continues to deny liability to the Claimant for the matters alleged or such matters which could have been alleged in the Lawsuit, and enters into this Agreement solely to avoid the uncertainty and expense of further litigation.

C.    The Parties desire to compromise and settle completely the disputes between them upon the terms and in the manner herein provided.

## AGREEEMENT

**NOW, THEREFORE,** in consideration of the mutual promises contained in this Agreement, and each act done pursuant to this Agreement by the Parties, the Parties now agree as follows:

1.    Grace shall pay to the Claimant the total sum TEN Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged.

2.      The Claimant agrees that not later than five (5) business days after she receives payment, she will dismiss or cause to be dismissed, with prejudice, all of the claims made in the Lawsuit against Grace.

3.      The Claimant covenants that she will never at any future time commence, prosecute, maintain or cause or permit to be commenced, prosecuted or maintained against Grace (including without limitation all affiliated, related, parent and subsidiary companies) and all of its present and former employees, officers, servants, agents, representatives, directors, attorneys, successors and/or assigns ("the Grace Parties") any action or proceeding of any description whatever in any Court or in any other kind of forum to charge the Grace Parties with any liability for, or to recover any compensation for, or to recover damages, or for any determination of fact or law, arising out of or relating to:

(a)      Claimant and/or Claimant's medical condition;

(b)      All matters alleged or which could have been alleged in the Lawsuit regarding Claimant and/or Claimant's medical condition;

(c)      Any and all matters, losses or damages of any kind relating to Claimant and/or Claimant's medical condition, including those which are known or anticipated, those which were alleged in the Lawsuit, and those presently unknown or unanticipated which may later result or be discovered; and

(d)      Any and all matters, losses, damages or things of any kind prior to the date hereof, including those which are known or anticipated and those presently unknown or unanticipated which may later result or be discovered. Provided, however, that if plaintiff, **Hillard Brown**, develops lung cancer or mesothelioma, as those terms are more fully defined and described in the Confidential Settlement Agreement between W.R. Grace & Co-Conn. And Goldberg, Persky, Jennings & White, P.C., then, such plaintiff's exclusive rights to additional compensation from W.R. Grace & Co.-Conn. Will be governed by paragraph 6 of said Confidential Settlement Agreement.

4.      The Claimant declares, warrants and represents:

(a)   That the Claimant has not assigned nor transferred to any person, entity or party any claims that are the subject matter of this Agreement and that he is the sole Party in interest with respect to the claims about which this Agreement is being made;

(b)   That no promise, enticement or agreement not herein expressed has been made to the Claimant and that the terms of the Agreement constitute the entire agreement between the Parties with respect to the subject matter hereof, and that the terms of this Agreement are contractual and not merely a recital; and

(c)   That the Claimant may in the future discover facts different from or in addition to those which he now knows or believes to be true with respect to the matters which are the subject of this Agreement, and he agrees that this Agreement shall remain in effect in all respects, notwithstanding the discovery or existence of different or additional facts.

5.   <u>Confidentiality Clause</u>. The Parties and their attorneys expressly waive any rights they may have to disclose the terms of this Agreement under federal or state law, including federal and state statutory and constitutional law, and agree that they will not divulge, disclose or communicate to any person, firm, organization or corporation the terms of this Agreement and/or the amounts (or any estimate or approximation thereof) paid to the Claimant pursuant to this Agreement, except under the Order of any Court of competent jurisdiction. The Parties and their attorneys further agree not to disclose, disseminate or reveal in any way whatsoever the original, any copy or any portion of this Agreement, directly or indirectly, to any person, firm, corporation, or organization.

It is understood and agreed by the Parties and their attorneys that a breach of this Confidentiality Clause does not constitute a breach of the entire Agreement. The Parties and their attorneys intend that the Confidentiality Clause be severable from the other terms of this Agreement.

The Parties and their attorneys agree that if any proceeding is brought against them to require the terms or amount of this Agreement to be disclosed to any person, firm, organization

or corporation, the person from whom discloser is sought will immediately notify opposing attorneys in writing of such proceeding.  Such notice shall be sent by certified mail, return receipt requested, to either (a) **Goldberg, Persky, Jennings & White, P.C.** (for the Claimant), or (b **Jay W. Hughes, Jr.** (for Grace).  The Parties and their attorneys further agree to provided each other with the opportunity to intervene in and defend against any such proceeding and agree to abide by the terms of the Confidentiality Clause unless ordered by a Court of competent jurisdiction to disclose the terms or amount involved in this Agreement.

6.      Each party shall pay it sown costs and attorneys' fees arising out of the Lawsuit, and neither party shall recover its costs or attorneys fees from the other in connection with this matter.

7.      No waiver, modification or amendment or any term, condition or provision of this Agreement shall be valid or have any force or effect unless made in writing and signed by the Parties.

8.      This Agreement may be pleaded as a defense to any claim, action or other proceeding that my be brought, instituted or taken by the Claimants against the Grace Parties in breach of the Agreement or relating to the matters which formed the basis for the Lawsuit.

9.      Each of the covenants contained in this Agreement shall be binding upon and shall inure to the benefit of the respective heirs, executors, administrators, assigns, and successors in interest of each of the Parties.

10.      The Claimant acknowledges and declares that in making this Agreement, he has relied solely upon his own or his counsel's own judgment, believe, and knowledge of the nature and extent of any damages suffered as a result of the matters at issue in the Lawsuit, and has not

relied upon any statement or representation by Grace or any of its officers, representatives, agents, attorneys or employees.

11.    This Agreement shall be governed by and interpreted in accordance with the laws of the State of Indiana.  Any action regarding this Agreement shall be maintained in a court in the State of Indiana.

12.    This Agreement represents the entire agreement between the Parties with respect to this matter, and it supersedes all prior negotiations, representations, or agreements, whether written or oral, between the Parties.

13.    This Agreement may be executed in multiple counterparts, each of which shall be an original, but all of which together shall constitute one and the same instrument.

Dated: 11-21-00

_Hillard Brown_

**Hillard Brown**

_____

APPROVED AS TO FORM:

F:\settle\release\wrg\wrgind.doc\B2958

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is made by and between **Joseph M. Bruno** (hereinafter referred to as ("Claimant") and W.R. Grace & Co.-Conn. ("Grace")(collectively, the "Parties"). This Agreement is premised upon the following recitals:

## RECITALS

A.     On _____, 2000, Claimant filed a lawsuit against Grace and several other defendants in the **Marion County Superior Court, Civil Division**, Case No. **49D029601-MI0001-395** (the "Lawsuit"). In the Lawsuit, the Claimant sought to recover for his medical condition allegedly caused by asbestos-containing products to which he was allegedly exposed.

B.     Grace has denied and continues to deny liability to the Claimant for the matters alleged or such matters which could have been alleged in the Lawsuit, and enters into this Agreement solely to avoid the uncertainty and expense of further litigation.

C.     The Parties desire to compromise and settle completely the disputes between them upon the terms and in the manner herein provided.

## AGREEEMENT

**NOW, THEREFORE,** in consideration of the mutual promises contained in this Agreement, and each act done pursuant to this Agreement by the Parties, the Parties now agree as follows:

1.     Grace shall pay to the Claimant the total sum TEN Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged.

2.    The Claimant agrees that not later than five (5) business days after she receives payment, she will dismiss or cause to be dismissed, with prejudice, all of the claims made in the Lawsuit against Grace.

3.    The Claimant covenants that she will never at any future time commence, prosecute, maintain or cause or permit to be commenced, prosecuted or maintained against Grace (including without limitation all affiliated, related, parent and subsidiary companies) and all of its present and former employees, officers, servants, agents, representatives, directors, attorneys, successors and/or assigns ("the Grace Parties") any action or proceeding of any description whatever in any Court or in any other kind of forum to charge the Grace Parties with any liability for, or to recover any compensation for, or to recover damages, or for any determination of fact or law, arising out of or relating to:

(a)    Claimant and/or Claimant's medical condition;

(b)    All matters alleged or which could have been alleged in the Lawsuit regarding Claimant and/or Claimant's medical condition;

(c)    Any and all matters, losses or damages of any kind relating to Claimant and/or Claimant's medical condition, including those which are known or anticipated, those which were alleged in the Lawsuit, and those presently unknown or unanticipated which may later result or be discovered; and

(d)    Any and all matters, losses, damages or things of any kind prior to the date hereof, including those which are known or anticipated and those presently unknown or unanticipated which may later result or be discovered.    Provided, however, that if plaintiff, **Joseph M. Bruno**, develops lung cancer or mesothelioma, as those terms are more fully defined and described in the Confidential Settlement Agreement between W.R. Grace & Co-Conn. And Goldberg, Persky, Jennings & White, P.C., then, such plaintiff's exclusive rights to additional compensation from W.R. Grace & Co.-Conn. Will be governed by paragraph 6 of said Confidential Settlement Agreement.

4.    The Claimant declares, warrants and represents:

(a)    That the Claimant has not assigned nor transferred to any person, entity or party any claims that are the subject matter of this Agreement and that he is the sole Party in interest with respect to the claims about which this Agreement is being made;

(b)    That no promise, enticement or agreement not herein expressed has been made to the Claimant and that the terms of the Agreement constitute the entire agreement between the Parties with respect to the subject matter hereof, and that the terms of this Agreement are contractual and not merely a recital; and

(c)    That the Claimant may in the future discover facts different from or in addition to those which he now knows or believes to be true with respect to the matters which are the subject of this Agreement, and he agrees that this Agreement shall remain in effect in all respects, notwithstanding the discovery or existence of different or additional facts.

5.    <u>Confidentiality Clause</u>.  The Parties and their attorneys expressly waive any rights they may have to disclose the terms of this Agreement under federal or state law, including federal and state statutory and constitutional law, and agree that they will not divulge, disclose or communicate to any person, firm, organization or corporation the terms of this Agreement and/or the amounts (or any estimate or approximation thereof) paid to the Claimant pursuant to this Agreement, except under the Order of any Court of competent jurisdiction.  The Parties and their attorneys further agree not to disclose, disseminate or reveal in any way whatsoever the original, any copy or any portion of this Agreement, directly or indirectly, to any person, firm, corporation, or organization.

It is understood and agreed by the Parties and their attorneys that a breach of this Confidentiality Clause does not constitute a breach of the entire Agreement.  The Parties and their attorneys intend that the Confidentiality Clause be severable from the other terms of this Agreement.

The Parties and their attorneys agree that if any proceeding is brought against them to require the terms or amount of this Agreement to be disclosed to any person, firm, organization

or corporation, the person from whom discloser is sought will immediately notify opposing attorneys in writing of such proceeding. Such notice shall be sent by certified mail, return receipt requested, to either (a) **Goldberg, Persky, Jennings & White, P.C.** (for the Claimant), or (b **Jay W. Hughes, Jr.** (for Grace). The Parties and their attorneys further agree to provided each other with the opportunity to intervene in and defend against any such proceeding and agree to abide by the terms of the Confidentiality Clause unless ordered by a Court of competent jurisdiction to disclose the terms or amount involved in this Agreement.

6.     Each party shall pay it sown costs and attorneys' fees arising out of the Lawsuit, and neither party shall recover its costs or attorneys fees from the other in connection with this matter.

7.     No waiver, modification or amendment or any term, condition or provision of this Agreement shall be valid or have any force or effect unless made in writing and signed by the Parties.

8.     This Agreement may be pleaded as a defense to any claim, action or other proceeding that my be brought, instituted or taken by the Claimants against the Grace Parties in breach of the Agreement or relating to the matters which formed the basis for the Lawsuit.

9.     Each of the covenants contained in this Agreement shall be binding upon and shall inure to the benefit of the respective heirs, executors, administrators, assigns, and successors in interest of each of the Parties.

10.     The Claimant acknowledges and declares that in making this Agreement, he has relied solely upon his own or his counsel's own judgment, believe, and knowledge of the nature and extent of any damages suffered as a result of the matters at issue in the Lawsuit, and has not

relied upon any statement or representation by Grace or any of its officers, representatives, agents, attorneys or employees.

11.    This Agreement shall be governed by and interpreted in accordance with the laws of the State of Indiana.  Any action regarding this Agreement shall be maintained in a court in the State of Indiana.

12.    This Agreement represents the entire agreement between the Parties with respect to this matter, and it supersedes all prior negotiations, representations, or agreements, whether written or oral, between the Parties.

13.    This Agreement may be executed in multiple counterparts, each of which shall be an original, but all of which together shall constitute one and the same instrument.

Dated: 11-28-00                                    _Joseph M. Bruno_

                                                   Joseph M. Bruno

                                                   _____

APPROVED AS TO FORM:

C147

THIS IS AN IMPORTANT LEGAL DOCUMENT.  READ IT CAREFULLY

JOINT TORTFEASOR RELEASE
W.R. GRACE & COMPANY

**Dennis J. Cagney**
Plaintiffs,

vs.

**A-BEST PRODUCTS COMPANY, ET ALL.,**
Defendants


IN THE COURT OF COMMON PLEAS OF **PA: Allegheny** COUNTY
NO. 97-04557


1.   KNOW ALL MEN BY THESE PRESENTS that I/we, **Dennis J. Cagney**, (hereinafter "Releasors"), being of lawful age and sound mind, for good and other valuable consideration to us in hand paid, the receipt and sufficiency of which is hereby acknowledged, by this Release do hereby for ourselves and our heirs, executors, administrators, successors and assigns, release, acquit and forever discharge, W. R. Grace & Company, as well as, but not limited to, W. R. Grace & Company's former, present and future principals, parent corporations, subsidiary corporations, Successor corporations, and predecessor corporations, whether actual or alleged, and their respective former, present and future parent corporations, subsidiary corporations, successor corporations, predecessor corporations and affiliated corporations, and each of the aforesaid or above-described corporations' former, present and future successors, predecessors, assigns, divisions and subdivisions, their insurance carriers, and the former, present and future directors, officers, agents, servants, representatives, employees, attorneys, stockholders, and affiliates of all such corporations, (hereinafter collectively referred to as "W. R. Grace & Company" or the "Releasees"), of any and all liability, action, causes of action, judgements, claims, and demands of whatsoever kind or nature (consequential, compensatory, punitive, exemplary or otherwise) which the undersigned have or to which the undersigned claim to be entitled by reason of damages, injuries, illnesses, losses and conditions (including by not limited to death) which presently exist or which may arise in the future, known or unknown, foreseen or unforeseen, arising or which may arise as a result of or in any way connected with any exposure of **Dennis J. Cagney** to any of the products of Releasees as is more particularly set forth in the Complaint and other pleadings filed in the above-captioned lawsuit in the COURT

OF COMMON PLEAS OF **PA: Allegheny** COUNTY.   It is intended by the parties hereto that this Release be construed as though the aforementioned lawsuit had been tried to final judgement and all claims presently subject to preclusion, merger and bar, be merged, barred and precluded as to the Releasors and Releasees hereby.

2.   Notwithstanding anything to the contrary herein, it is expressly agreed that this Release shall not operate as a bar to any claim or cause of action which a family member/spouse of **Dennis J. Cagney** may have for any loss, injuries or damages which might be suffered as a result of actual exposure to asbestos fibers, materials or products.

3.   We, the undersigned Releasors, do hereby declare and represent that any injuries or illnesses, both physical and mental, resulting from exposure to asbestos or may be permanent, and that any recovery therefrom is uncertain and indefinite, **AND THAT THEY MAY CAUSE OR LEAD TO OTHER DELETERIOUS CONDITIONS INCLUDING BUT NOT LIMITED TO CANCERS AND DEATH** and that in making this Release, it is understood and agreed that we rely wholly upon our own judgment, belief and knowledge regarding the nature, extent, effect, and duration of said injuries and liability therefor, and that this Release is made without reliance upon any statement or representation by Releasees or its representatives, the making of any such statements or representations being specifically denied, **AND THAT NOTWITHSTANDING ANY RIGHT THAT PLAINTIFFS MAY OTHERWISE HAVE TO BRING A SUBSEQUENT LAWSUIT FOR FUTURE ASBESTOS RELATED CONDITIONS, ALL CLAIMS FOR CANCER, DEATH, FEAR OF FUTURE INJURY AND ALL OTHER POSSIBLE FUTURE OR AS YET UNDETECTED CONDITIONS ARE INCLUDED IN THIS RELEASE AND ARE RELEASED IN FULL HEREBY, EXCEPT AS MAY BE PRESERVED IN PARAGRAPH 2, ABOVE.**

Provided, however, that if plaintiff Dennis J. Cagney develops lung cancer or mesothelioma, as those terms are more fully defined and described in the Confidential Settlement Agreement between W. R. Grace & Co.—Conn. and Goldberg, Persky, Jennings & White, P. C., then, such plaintiff's exclusive rights to additional compensation from W. R. Grace & Co.—Conn. will be governed by paragraph 6 and said Confidential Settlement Agreement.

4.   It is understood and agreed that we, the undersigned Releasors, are not releasing any claim or demand that we have or may have against any other person and/or organization other than Releasees, and we reserve the right to make claims against any and every other person and/or organization and to make claim that they, and not Releasees, are solely liable to us for our injuries, losses, and damages.

5. It is further agreed and understood that any other person and/or organization, other than Releasees, whom we, the undersigned Releasors, claim is liable to us for our injuries, losses, and damages, shall not be entitled to a satisfaction or reduction or pro rata reduction of the damages we are claiming against them by reason of the settlement payment made by Releasees hereunder, unless it is adjudicated that Releasees is a joint tortfeasor with said other person and/or organization.   In the event that Releasees is adjudicated to be a joint tortfeasor, then the settlement payment shall constitute a reduction to the extent of the greatest of either (a) the dollar amount of the payment on behalf of Releasees, or (b) the pro rata share, pursuant to 42 Pa. C.S. §8327, of Releasees of the Releasors' damages recoverable against all the other tort-feasors, or (c) the share of liability determined pursuant to the Comparative Negligence Act or otherwise of Releasees, whichever is the least amount necessary to extinguish all contribution claims, from the damages recoverable by us from the other tortfeasors.   This Release is expressly intended and shall be construed to release and protect Releasees from all claims  of contribution.

6. Should it be adjudicated in any suit, action or proceeding, however, that Releasees and others jointly or in succession caused injuries, losses or damages, then, in order to save said Releasees harmless and as further consideration for the aforesaid payment, Releasors agree to satisfy on behalf of the Releasees, any decree, judgment or award against Releasees for any and all damages, including but not limited to compensatory and punitive damages, in which there is such finding or adjudication involving Releasees, to the extent or Releasees' liability to any other party for damages and contribution and/or indemnity.   As further consideration, we will indemnify and save forever harmless Releasees against loss or damage because of any and all further claims, demands or actions made by others on account of or in any manner resulting from the injuries, losses or damages released herein.   Provided, however, that nothing in this Release obligates us to pay or contribute to the payment of any costs, expenses and/or attorneys' fees incurred in the defense of any claims, demands or actions.

7. It is further understood that the attorneys for us, the undersigned Releasors, are authorized to make on our behalf and in our names such objections to testimony by any person or any other evidence presented to identify Releasees as a joint tortfeasor in the case, and to file in our names any pre-trial and/or post-trial motions regarding such testimony or evidence, to present testimony or evidence limited solely to disputing such identification and to file an appeal in our names from any adverse trial rulings, verdicts or judgments concerning product identification, only to the extent such objections, motions, testimony and appeals are permitted by the laws or Pennsylvania, in light of the effect that an adjudication of joint liability on the part of Releasees might have on our recovery from non-settling defendants under the Pennsylvania Uniform Contribution Among Tortfeasors Act.   It is

expressly understood that nothing herein gives us the right to file any pleading, motion, appeal or other document in the name of or on behalf of Releasees, it being the intent of the parties to this Releases that our attorneys shall not and do not represent Releasees.

8.  It is further understood and agreed that nothing in this Release shall be deemed to exclude, limit or release any claims or rights that the undersigned have against any person, firm or corporation, other than Releasees and the entities and persons identified in Paragraph 1, above, as related to Releasees. This does not release any defendants, additional defendants or third party defendants who have filed petitions in bankruptcy as of the date of this Release nor does it release a present defendant, additional defendant or third party defendant who in the future may merge or in any manner be acquired by or acquire a released defendant, in whole or part. It is the intent or this Release to release only Releasees and those entities and persons, identified in Paragraph 1, above, as related to Releasees.

9.  It is further agreed that we will hold harmless Releasees from any and all liability arising from liens and/or subrogation claims including any worker's compensation or medical payments due or claimed to be due under the law, state or federal regulation or contract. We expressly acknowledge that all obligations to satisfy such liens are those of Releasors not Releasees. Provided, however, that nothing in this Release obligates us to pay or contribute to the payment of any costs, expenses and/or attorneys' fees incurred in the defense of any claims, demands or actions.

10.  It is understood and agreed that the payment referred to herein is a compromise of a disputed claim and shall not be construed as in admission of liability on the part of Releasees, since liability is expressly denied.

11.  The undersigned hereby certifies that the undersigned has a good faith belief that the undersigned (or the undersigned's decedent) was exposed to the Releasees' asbestos-containing products, although the undersigned understands this claim is disputed by Releasees.

12.  This Release contains the ENTIRE AGREEMENT between the undersigned and the Releasees, and the terms thereof are contractual and not a mere recital. The undersigned state that we have carefully read the foregoing or had it read and explained to us and that we know and understand the contents and meaning of signing this document and accepting payment. We sign this Release as our own free act.

**13.  I/We, Dennis J. Cagney**, have signed this release after consultation with our attorney, fully intending to be legally bound hereby.

IN WITNESS WHEREOF, and intending to be legally bound, we have hereunto set or hands and seal this _____ day of _____, 2000.

WITNESSED BY:

_____ (Seal)
**Dennis J. Cagney**


_____ (Seal)


SWORN TO AND SUBSCRIBED
before me this _12_ day
of _OCTOBER_ , 20_00_ .

_____
Notary Public

Notarial Seal
Andrea J. Ciechowicz, Notary Public
Baldwin Boro, Allegheny County
My Commission Expires Feb. 26, 2001

Member, Pennsylvania Association of Notaries

J762

THIS IS AN IMPORTANT LEGAL DOCUMENT.   READ IT CAREFULLY

JOINT TORTFEASOR RELEASE
W.R. GRACE & COMPANY

**Ralph Jennings**
Plaintiffs,

vs.

**A-BEST PRODUCTS COMPANY, ET ALL.,**
Defendants

IN THE COURT OF COMMON PLEAS OF **PA: Allegheny** COUNTY
NO. 99-13885

1.   KNOW ALL MEN BY THESE PRESENTS that I/we, **Ralph Jennings**, (hereinafter "Releasors"), being of lawful age and sound mind, for good and other valuable consideration to us in hand paid, the receipt and sufficiency of which is hereby acknowledged, by this Release do hereby for ourselves and our heirs, executors, administrators, successors and assigns, release, acquit and forever discharge, W. R. Grace & Company, as well as, but not limited to, W. R. Grace & Company's former, present and future principals, parent corporations, subsidiary corporations, Successor corporations, and predecessor corporations, whether actual or alleged, and their respective former, present and future parent corporations, subsidiary corporations, successor corporations, predecessor corporations and affiliated corporations, and each of the aforesaid or above-described corporations' former, present and future successors, predecessors, assigns, divisions and subdivisions, their insurance carriers, and the former, present and future directors, officers, agents, servants, representatives, employees, attorneys, stockholders, and affiliates of all such corporations, (hereinafter collectively referred to as "W. R. Grace & Company" or the "Releasees"), of any and all liability, action, causes of action, judgements, claims, and demands of whatsoever kind or nature (consequential, compensatory, punitive, exemplary or otherwise) which the undersigned have or to which the undersigned claim to be entitled by reason of damages, injuries, illnesses, losses and conditions (including by not limited to death) which presently exist or which may arise in the future, known or unknown, foreseen or unforeseen, arising or which may arise as a result of or in any way connected with any exposure of **Ralph Jennings** to any of the products of Releasees as is more particularly set forth in the Complaint and other pleadings filed in the above-captioned lawsuit in the COURT

OF COMMON PLEAS OF **PA: Allegheny** COUNTY.   It is intended by the parties hereto that this Release be construed as though the aforementioned lawsuit had been tried to final judgement and all claims presently subject to preclusion, merger and bar, be merged, barred and precluded as to the Releasors and Releasees hereby.

    2.   Notwithstanding anything to the contrary herein, it is expressly agreed that this Release shall not operate as a bar to any claim or cause of action which a family member/spouse of **Ralph Jennings** may have for any loss, injuries or damages which might be suffered as a result of actual exposure to asbestos fibers, materials or products.

    3.   We, the undersigned Releasors, do hereby declare and represent that any injuries or illnesses, both physical and mental, resulting from exposure to asbestos or may be permanent, and that any recovery therefrom is uncertain and indefinite, **AND THAT THEY MAY CAUSE OR LEAD TO OTHER DELETERIOUS CONDITIONS INCLUDING BUT NOT LIMITED TO CANCERS AND DEATH** and that in making this Release, it is understood and agreed that we rely wholly upon our own judgment, belief and knowledge regarding the nature, extent, effect, and duration of said injuries and liability therefor, and that this Release is made without reliance upon any statement or representation by Releasees or its representatives, the making of any such statements or representations being specifically denied, **AND THAT NOTWITHSTANDING ANY RIGHT THAT PLAINTIFFS MAY OTHERWISE HAVE TO BRING A SUBSEQUENT LAWSUIT FOR FUTURE ASBESTOS RELATED CONDITIONS, ALL CLAIMS FOR CANCER, DEATH, FEAR OF FUTURE INJURY AND ALL OTHER POSSIBLE FUTURE OR AS YET UNDETECTED CONDITIONS ARE INCLUDED IN THIS RELEASE AND ARE RELEASED IN FULL HEREBY, EXCEPT AS MAY BE PRESERVED IN PARAGRAPH 2, ABOVE.**

    Provided, however, that if plaintiff Ralph Jennings develops lung cancer or mesothelioma, as those terms are more fully defined and described in the Confidential Settlement Agreement between W. R. Grace & Co.—Conn. and Goldberg, Persky, Jennings & White, P. C., then, such plaintiff's exclusive rights to additional compensation from W. R. Grace & Co.—Conn. will be governed by paragraph 6 and said Confidential Settlement Agreement.

    4.   It is understood and agreed that we, the undersigned Releasors, are not releasing any claim or demand that we have or may have against any other person and/or organization other than Releasees, and we reserve the right to make claims against any and every other person and/or organization and to make claim that they, and not Releasees, are solely liable to us for our injuries, losses, and damages.

5.  It is further agreed and understood that any other person and/or organization, other than Releasees, whom we, the undersigned Releasors, claim is liable to us for our injuries, losses, and damages, shall not be entitled to a satisfaction or reduction or pro rata reduction of the damages we are claiming against them by reason of the settlement payment made by Releasees hereunder, unless it is adjudicated that Releasees is a joint tortfeasor with said other person and/or organization.  In the event that Releasees is adjudicated to be a joint tortfeasor, then the settlement payment shall constitute a reduction to the extent of the greatest of either (a) the dollar amount of the payment on behalf of Releasees, or (b) the pro rata share, pursuant to 42 Pa. C.S. §8327, of Releasees of the Releasors' damages recoverable against all the other tort-feasors, or (c) the share of liability determined pursuant to the Comparative Negligence Act or otherwise of Releasees, whichever is the least amount necessary to extinguish all contribution claims, from the damages recoverable by us from the other tortfeasors.  This Release is expressly intended and shall be construed to release and protect Releasees from all claims of contribution.

6.  Should it be adjudicated in any suit, action, or proceeding, however, that Releasees and others jointly or in succession caused injuries, losses or damages, then, in order to save said Releasees harmless and as further consideration for the aforesaid payment, Releasors agree to satisfy on behalf of the Releasees, any decree, judgment or award against Releasees for any and all damages, including but not limited to compensatory and punitive damages, in which there is such finding or adjudication involving Releasees, to the extent or Releasees' liability to any other party for damages and contribution and/or indemnity.  As further consideration, we will indemnify and save forever harmless Releasees against loss or damage because of any and all further claims, demands or actions made by others on account of or in any manner resulting from the injuries, losses or damages released herein.  Provided, however, that nothing in this Release obligates us to pay or contribute to the payment of any costs, expenses and/or attorneys' fees incurred in the defense of any claims, demands or actions.

7.  It is further understood that the attorneys for us, the undersigned Releasors, are authorized to make on our behalf and in our names such objections to testimony by any person or any other evidence presented to identify Releasees as a joint tortfeasor in the case, and to file in our names any pre-trial and/or post-trial motions regarding such testimony or evidence, to present testimony or evidence limited solely to disputing such identification and to file an appeal in our names from any adverse trial rulings, verdicts or judgments concerning product identification, only to the extent such objections, motions, testimony and appeals are permitted by the laws or Pennsylvania, in light of the effect that an adjudication of joint liability on the part of Releasees might have on our recovery from non-settling defendants under the Pennsylvania Uniform Contribution Among Tortfeasors Act.  It is

expressly understood that nothing herein gives us the right to file any pleading, motion, appeal or other document in the name of or on behalf of Releasees, it being the intent of the parties to this Releases that our attorneys shall not and do not represent Releasees.

8.  It is further understood and agreed that nothing in this Release shall be deemed to exclude, limit or release any claims or rights that the undersigned have against any person, firm or corporation, other than Releasees and the entities and persons identified in Paragraph 1, above, as related to Releasees.  This does not release any defendants, additional defendants or third party defendants who have filed petitions in bankruptcy as of the date of this Release nor does it release a present defendant, additional defendant or third party defendant who in the future may merge or in any manner be acquired by or acquire a released defendant, in whole or part.  It is the intent or this Release to release only Releasees and those entities and persons, identified in Paragraph 1, above, as related to Releasees.

9.  It is further agreed that we will hold harmless Releasees from any and all liability arising from liens and/or subrogation claims including any worker's compensation or medical payments due or claimed to be due under the law, state or federal regulation or contract.  We expressly acknowledge that all obligations to satisfy such liens are those of Releasors not Releasees.  Provided, however, that nothing in this Release obligates us to pay or contribute to the payment of any costs, expenses and/or attorneys' fees incurred in the defense of any claims, demands or actions.

10.  It is understood and agreed that the payment referred to herein is a compromise of a disputed claim and shall not be construed as in admission of liability on the part of Releasees, since liability is expressly denied.

11.  The undersigned hereby certifies that the undersigned has a good faith belief that the undersigned (or the undersigned's decedent) was exposed to the Releasees' asbestos-containing products, although the undersigned understands this claim is disputed by Releasees.

12.  This Release contains the ENTIRE AGREEMENT between the undersigned and the Releasees, and the terms thereof are contractual and not a mere recital.  The undersigned state that we have carefully read the foregoing or had it read and explained to us and that we know and understand the contents and meaning of signing this document and accepting payment.  We sign this Release as our own free act.

13.  **I/We, Ralph Jennings**, have signed this release after consultation with our attorney, fully intending to be legally bound hereby.

IN WITNESS WHEREOF, and intending to be legally bound, we have hereunto set or hands and seal this _20_ day of _____OCT_____, 2000.

WITNESSED BY:

_____ (Seal)
**Ralph Jennings**


_____ (Seal)


SWORN TO AND SUBSCRIBED
before me this _20_ day
of _____OCT_____, 2000

_____
Notary Public

JESSE J. CRAMER, District Justice
Belle Vernon, Fayette County, PA
My Comm. Exp. First Mon. Jan. 2002

K1338

THIS IS AN IMPORTANT LEGAL DOCUMENT.  READ IT CAREFULLY

JOINT TORTFEASOR RELEASE
W.R. GRACE & COMPANY

**Ronald S. Kiesel and Susan E. Kiesel**
Plaintiffs,

vs.

**A-BEST PRODUCTS COMPANY, ET ALL.,**
Defendants

IN THE COURT OF COMMON PLEAS OF **PA: Allegheny** COUNTY
NO. 98-16284

1.    KNOW ALL MEN BY THESE PRESENTS that I/we, **Ronald S. Kiesel and Susan E. Kiesel**, (hereinafter "Releasors"), being of lawful age and sound mind, for good and other valuable consideration to us in hand paid, the receipt and sufficiency of which is hereby acknowledged, by this Release do hereby for ourselves and our heirs, executors, administrators, successors and assigns, release, acquit and forever discharge, W. R. Grace & Company, as well as, but not limited to, W. R. Grace & Company's former, present and future principals, parent corporations, subsidiary corporations, Successor corporations, and predecessor corporations, whether actual or alleged, and their respective former, present and future parent corporations, subsidiary corporations, successor corporations, predecessor corporations and affiliated corporations, and each of the aforesaid or above-described corporations' former, present and future successors, predecessors, assigns, divisions and subdivisions, their insurance carriers, and the former, present and future directors, officers, agents, servants, representatives, employees, attorneys, stockholders, and affiliates of all such corporations, (hereinafter collectively referred to as "W. R. Grace & Company" or the "Releasees"), of any and all liability, action, causes of action, judgements, claims, and demands of whatsoever kind or nature (consequential, compensatory, punitive, exemplary or otherwise) which the undersigned have or to which the undersigned claim to be entitled by reason of damages, injuries, illnesses, losses and conditions (including but not limited to death) which presently exist or which may arise in the future, known or unknown, foreseen or unforeseen, arising or which may arise as a result of or in any way connected with any exposure of **Ronald S. Kiesel** to any of the products of Releasees as is more particularly set forth in the Complaint and other pleadings filed in the above-

captioned lawsuit in the COURT OF COMMON PLEAS OF **PA: Allegheny** COUNTY. It is intended by the parties hereto that this Release be construed as though the aforementioned lawsuit had been tried to final judgement and all claims presently subject to preclusion, merger and bar, be merged, barred and precluded as to the Releasors and Releasees hereby.

2.    Notwithstanding anything to the contrary herein, it is expressly agreed that this Release shall not operate as a bar to any claim or cause of action which a family member/spouse of **Ronald S. Kiesel** may have for any loss, injuries or damages which might be suffered as a result of actual exposure to asbestos fibers, materials or products.

3.    We, the undersigned Releasors, do hereby declare and represent that any injuries or illnesses, both physical and mental, resulting from exposure to asbestos or may be permanent, and that any recovery therefrom is uncertain and indefinite, **AND THAT THEY MAY CAUSE OR LEAD TO OTHER DELETERIOUS CONDITIONS INCLUDING BUT NOT LIMITED TO CANCERS AND DEATH** and that in making this Release, it is understood and agreed that we rely wholly upon our own judgment, belief and knowledge regarding the nature, extent, effect, and duration of said injuries and liability therefor, and that this Release is made without reliance upon any statement or representation by Releasees or its representatives, the making of any such statements or representations being specifically denied, **AND THAT NOTWITHSTANDING ANY RIGHT THAT PLAINTIFFS MAY OTHERWISE HAVE TO BRING A SUBSEQUENT LAWSUIT FOR FUTURE ASBESTOS RELATED CONDITIONS, ALL CLAIMS FOR CANCER, DEATH, FEAR OF FUTURE INJURY AND ALL OTHER POSSIBLE FUTURE OR AS YET UNDETECTED CONDITIONS ARE INCLUDED IN THIS RELEASE AND ARE RELEASED IN FULL HEREBY, EXCEPT AS MAY BE PRESERVED IN PARAGRAPH 2, ABOVE.**

Provided, however, that if plaintiff Ronald S. Kiesel develops lung cancer or mesothelioma, as those terms are more fully defined and described in the Confidential Settlement Agreement between W. R. Grace & Co.—Conn. and Goldberg, Persky, Jennings & White, P. C., then, such plaintiff's exclusive rights to additional compensation from W. R. Grace & Co.—Conn. will be governed by paragraph 6 and said Confidential Settlement Agreement.

4.    It is understood and agreed that we, the undersigned Releasors, are not releasing any claim or demand that we have or may have against any other person and/or organization other than Releasees, and we reserve the right to make claims against any and every other person and/or organization and to make claim that they, and not Releasees, are solely liable to us for our injuries, losses, and damages.

5.  It is further agreed and understood that any other person and/or organization, other than Releasees, whom we, the undersigned Releasors, claim is liable to us for our injuries, losses, and damages, shall not be entitled to a satisfaction or reduction or pro rata reduction of the damages we are claiming against them by reason of the settlement payment made by Releasees hereunder, unless it is adjudicated that Releasees is a joint tortfeasor with said other person and/or organization.  In the event that Releasees is adjudicated to be a joint tortfeasor, then the settlement payment shall constitute a reduction to the extent of the greatest of either (a) the dollar amount of the payment on behalf of Releasees, or (b) the pro rata share, pursuant to 42 Pa. C.S. §8327, of Releasees of the Releasors' damages recoverable against all the other tort-feasors, or (c) the share of liability determined pursuant to the Comparative Negligence Act or otherwise of Releasees, whichever is the least amount necessary to extinguish all contribution claims, from the damages recoverable by us from the other tortfeasors.  This Release is expressly intended and shall be construed to release and protect Releasees from all claims of contribution.

6.  Should it be adjudicated in any suit, action or proceeding, however, that Releasees and others jointly or in succession caused injuries, losses or damages, then, in order to save said Releasees harmless and as further consideration for the aforesaid payment, Releasors agree to satisfy on behalf of the Releasees, any decree, judgment or award against Releasees for any and all damages, including but not limited to compensatory and punitive damages, in which there is such finding or adjudication involving Releasees, to the extent or Releasees' liability to any other party for damages and contribution and/or indemnity.  As further consideration, we will indemnify and save forever harmless Releasees against loss or damage because of any and all further claims, demands or actions made by others on account of or in any manner resulting from the injuries, losses or damages released herein.  Provided, however, that nothing in this Release obligates us to pay or contribute to the payment of any costs, expenses and/or attorneys' fees incurred in the defense of any claims, demands or actions.

7.  It is further understood that the attorneys for us, the undersigned Releasors, are authorized to make on our behalf and in our names such objections to testimony by any person or any other evidence presented to identify Releasees as a joint tortfeasor in the case, and to file in our names any pre-trial and/or post-trial motions regarding such testimony or evidence, to present testimony or evidence limited solely to disputing such identification and to file an appeal in our names from any adverse trial rulings, verdicts or judgments concerning product identification, only to the extent such objections, motions, testimony and appeals are permitted by the laws or Pennsylvania, in light of the effect that an adjudication of joint liability on the part of Releasees might have on our recovery from non-settling defendants under the

Pennsylvania Uniform Contribution Among Tortfeasors Act.    It is expressly understood that nothing herein gives us the right to file any pleading, motion, appeal or other document in the name of or on behalf of Releasees, it being the intent of the parties to this Releases that our attorneys shall not and do not represent Releasees.

8.    It is further understood and agreed that nothing in this Release shall be deemed to exclude, limit or release any claims or rights that the undersigned have against any person, firm or corporation, other than Releasees and the entities and persons identified in Paragraph 1, above, as related to Releasees.    This does not release any defendants, additional defendants or third party defendants who have filed petitions in bankruptcy as of the date of this Release nor does it release a present defendant, additional defendant or third party defendant who in the future may merge or in any manner be acquired by or acquire a released defendant, in whole or part.    It is the intent or this Release to release only Releasees and those entities and persons, identified in Paragraph 1, above, as related to Releasees.

9.    It is further agreed that we will hold harmless Releasees from any and all liability arising from liens and/or subrogation claims including any worker's compensation or medical payments due or claimed to be due under the law, state or federal regulation or contract.    We expressly acknowledge that all obligations to satisfy such liens are those of Releasors not Releasees. Provided, however, that nothing in this Release obligates us to pay or contribute to the payment of any costs, expenses and/or attorneys' fees incurred in the defense of any claims, demands or actions.

10.    It is understood and agreed that the payment referred to herein is a compromise of a disputed claim and shall not be construed as in admission of liability on the part of Releasees, since liability is expressly denied.

11.    The undersigned hereby certifies that the undersigned has a good faith belief that the undersigned (or the undersigned's decedent) was exposed to the Releasees' asbestos-containing products, although the undersigned understands this claim is disputed by Releasees.

12.    This Release contains the ENTIRE AGREEMENT between the undersigned and the Releasees, and the terms thereof are contractual and not a mere recital.    The undersigned state that we have carefully read the foregoing or had it read and explained to us and that we know and understand the contents and meaning of signing this document and accepting payment.    We sign this Release as our own free act.

13.  **I/We, Ronald S. Kiesel and Susan E. Kiesel,** have signed this release after consultation with our attorney, fully intending to be legally bound hereby.

IN WITNESS WHEREOF, and intending to be legally bound, we have hereunto set or hands and seal this _____ day of _____, 2000.

WITNESSED BY:

_____ (Seal)
**Ronald S. Kiesel**

_____ (Seal)
**Susan E. Kiesel**


SWORN TO AND SUBSCRIBED
before me this _____ day
of _____, 20___.


_____

Notary Public

M2987

THIS IS AN IMPORTANT LEGAL DOCUMENT.   READ IT CAREFULLY

JOINT TORTFEASOR RELEASE
W.R. GRACE & COMPANY

**Duane Morford, Executor of the Estate of Lavern Morford and Elizabeth Morford**
Plaintiffs,

vs.

**A-BEST PRODUCTS COMPANY, ET ALL.,**
Defendants

IN THE COURT OF COMMON PLEAS OF **PA: ALLEGHENY** COUNTY
NO. 99-21401

1.   KNOW ALL MEN BY THESE PRESENTS that I/we, **Duane Morford, Executor of the Estate of Lavern Morford, Elizabeth Morford** (hereinafter "Releasors"), being of lawful age and sound mind, for good and other valuable consideration to us in hand paid, the receipt and sufficiency of which is hereby acknowledged, by this Release do hereby for ourselves and our heirs, executors, administrators, successors and assigns, release, acquit and forever discharge, W. R. Grace & Company, as well as, but not limited to, W. R. Grace & Company's former, present and future principals, parent corporations, subsidiary corporations, Successor corporations, and predecessor corporations, whether actual or alleged, and their respective former, present and future parent corporations, subsidiary corporations, successor corporations, predecessor corporations and affiliated corporations, and each of the aforesaid or above-described corporations' former, present and future successors, predecessors, assigns, divisions and subdivisions, their insurance carriers, and the former, present and future directors, officers, agents, servants, representatives, employees, attorneys, stockholders, and affiliates of all such corporations, (hereinafter collectively referred to as "W. R. Grace & Company" or the "Releasees"), of any and all liability, action, causes of action, judgements, claims, and demands of whatsoever kind or nature (consequential, compensatory, punitive, exemplary or otherwise) which the undersigned have or to which the undersigned claim to be entitled by reason of damages, injuries, illnesses, losses and conditions (including by not limited to death) which presently exist or which may arise in the future, known or unknown, foreseen or unforeseen, arising or which may arise as a result of or in any way connected with any exposure of **Lavern Morford** to any of the products of

Releasees as is more particularly set forth in the Complaint and other pleadings filed in the above-captioned lawsuit in the COURT OF COMMON PLEAS OF **PA: ALLEGHENY** COUNTY.   It is intended by the parties hereto that this Release be construed as though the aforementioned lawsuit had been tried to final judgement and all claims presently subject to preclusion, merger and bar, be merged, barred and precluded as to the Releasors and Releasees hereby.

2.   Notwithstanding anything to the contrary herein, it is expressly agreed that this Release shall not operate as a bar to any claim or cause of action which a family member/spouse of **Lavern Morford** may have for any loss, injuries or damages which might be suffered as a result of actual exposure to asbestos fibers, materials or products.

3.   We, the undersigned Releasors, do hereby declare and represent that any injuries or illnesses, both physical and mental, resulting from exposure to asbestos or may be permanent, and that any recovery therefrom is uncertain and indefinite, **AND THAT THEY MAY CAUSE OR LEAD TO OTHER DELETERIOUS CONDITIONS INCLUDING BUT NOT LIMITED TO CANCERS AND DEATH** and that in making this Release, it is understood and agreed that we rely wholly upon our own judgment, belief and knowledge regarding the nature, extent, effect, and duration of said injuries and liability therefor, and that this Release is made without reliance upon any statement or representation by Releasees or its representatives, the making of any such statements or representations being specifically denied, **AND THAT NOTWITHSTANDING ANY RIGHT THAT PLAINTIFFS MAY OTHERWISE HAVE TO BRING A SUBSEQUENT LAWSUIT FOR FUTURE ASBESTOS RELATED CONDITIONS, ALL CLAIMS FOR CANCER, DEATH, FEAR OF FUTURE INJURY AND ALL OTHER POSSIBLE FUTURE OR AS YET UNDETECTED CONDITIONS ARE INCLUDED IN THIS RELEASE AND ARE RELEASED IN FULL HEREBY, EXCEPT AS MAY BE PRESERVED IN PARAGRAPH 2, ABOVE.**

Provided, however, that if plaintiff Duane Morford, Executor of the Estate of Lavern Morford develops lung cancer or mesothelioma, as those terms are more fully defined and described in the Confidential Settlement Agreement between W. R. Grace & Co.—Conn. and Goldberg, Persky, Jennings & White, P. C., then, such plaintiff's exclusive rights to additional compensation from W. R. Grace & Co.—Conn. will be governed by paragraph 6 and said Confidential Settlement Agreement.

4.   It is understood and agreed that we, the undersigned Releasors, are not releasing any claim or demand that we have or may have against any other person and/or organization other than Releasees, and we reserve the right to make claims against any and every other person and/or organization and to make claim that they, and not Releasees, are solely liable to us for our injuries,

losses, and damages.

5. It is further agreed and understood that any other person and/or organization, other than Releasees, whom we, the undersigned Releasors, claim is liable to us for our injuries, losses, and damages, shall not be entitled to a satisfaction or reduction or pro rata reduction of the damages we are claiming against them by reason of the settlement payment made by Releasees hereunder, unless it is adjudicated that Releasees is a joint tortfeasor with said other person and/or organization. In the event that Releasees is adjudicated to be a joint tortfeasor, then the settlement payment shall constitute a reduction to the extent of the greatest of either (a) the dollar amount of the payment on behalf of Releasees, or (b) the pro rata share, pursuant to 42 Pa. C.S. §8327, of Releasees of the Releasors' damages recoverable against all the other tort-feasors, or (c) the share of liability determined pursuant to the Comparative Negligence Act or otherwise of Releasees, whichever is the least amount necessary to extinguish all contribution claims, from the damages recoverable by us from the other tortfeasors. This Release is expressly intended and shall be construed ·to release and protect Releasees from all claims of contribution.

6. Should it be adjudicated in any suit, action or proceeding, however, that Releasees and others jointly or in succession caused injuries, losses or damages, then, in order to save said Releasees harmless and as further consideration for the aforesaid payment, Releasors agree to satisfy on behalf of the Releasees, any decree, judgment or award against Releasees for any and all damages, including but not limited to compensatory and punitive damages, in which there is such finding or adjudication involving Releasees, to the extent or Releasees' liability to any other party for damages and contribution and/or indemnity. As further consideration, we will indemnify and save forever harmless Releasees against loss or damage because of any and all further claims, demands or actions made by others on account of or in any manner resulting from the injuries, losses or damages released herein. Provided, however, that nothing in this Release obligates us to pay or contribute to the payment of any costs, expenses and/or attorneys' fees incurred in the defense of any claims, demands or actions.

7. It is further understood that the attorneys for us, the undersigned Releasors, are authorized to make on our behalf and in our names such objections to testimony by any person or any other evidence presented to identify Releasees as a joint tortfeasor in the case, and to file in our names any pre-trial and/or post-trial motions regarding such testimony or evidence, to present testimony or evidence limited solely to disputing such identification and to file an appeal in our names from any adverse trial rulings, verdicts or judgments concerning product identification, only to the extent such objections, motions, testimony and appeals are permitted by the laws or Pennsylvania, in light of the effect that an adjudication of joint liability on the part of Releasees might

have on our recovery from non-settling defendants under the
Pennsylvania Uniform Contribution Among Tortfeasors Act.   It is
expressly understood that nothing herein gives us the right to
file any pleading, motion, appeal or other document in the name of
or on behalf of Releasees, it being the intent of the parties to
this Releases that our attorneys ·shall not and do not represent
Releasees.

    8.   It is further understood and agreed that nothing in this
Release shall be deemed to exclude, limit or release any claims or
rights that the undersigned have against any person, firm or
corporation, other than Releasees and the entities and persons
identified in Paragraph 1, above, as related to Releasees.   This
does not release any defendants, additional defendants or third
party defendants who have filed petitions in bankruptcy as of the
date of this Release nor does it release a present defendant,
additional defendant or third party defendant who in the future
may merge or in any manner be acquired by or acquire a released
defendant, in whole or part.   It is the intent or this Release to
release only Releasees and those entities·and persons, identified
in Paragraph 1, above, as related to Releasees.

    9.   It is further agreed that we will hold harmless Releasees
from any and all liability arising from liens and/or subrogation
claims including any worker's compensation or medical payments due
or claimed to be due under the law, state or federal regulation or
contract.   We expressly acknowledge that all obligations to
satisfy such liens are those of Releasors not Releasees.
Provided, however, that nothing in this Release obligates us to
pay or contribute to the payment of any costs, expenses and/or
attorneys' fees incurred in the defense of any claims, demands or
actions.

    10.   It is understood and agreed that the payment referred to
herein is a compromise of a disputed claim and shall not be
construed as in admission of liability on the part of Releasees,
since liability is expressly denied.

    11.   The undersigned hereby certifies that the undersigned
has a good faith belief that the undersigned (or the undersigned's
decedent) was exposed to the Releasees' asbestos-containing
products, although the undersigned understands this claim is
disputed by Releasees.

    12.   This Release contains the ENTIRE AGREEMENT between the
undersigned and the Releasees, and the terms thereof are
contractual and not a mere recital.   The undersigned state that we
have carefully read the foregoing or had it read and explained to
us and that we know and understand the contents and meaning of
signing this document and accepting payment.   We sign this Release
as our own free act.

13.   I/We, **Duane Morford, Executor of the Estate of Lavern Morford,**Elizabeth Morford have signed this release after consultation with our attorney, fully intending to be legally bound hereby.

IN WITNESS WHEREOF, and intending to be legally bound, we have hereunto set or hands and seal this _16th_ day of _____October_____, 2000.

WITNESSED BY:

_____(Seal)
**Duane Morford, Executor of the Estate of Lavern Morford**

_____(Seal)
**Elizabeth Morford**

SWORN TO AND SUBSCRIBED before me this _16th_ day of _October_, 20_00_.

_____
Notary Public

Notarial Seal
Anita L. Orris, Notary Public
East Deer Twp., Allegheny County
My Commission Expires Mar. 23, 2004
Member, Pennsylvania Association of Notaries

I:\settle\release\wrg\wrgind.doc\O346

# SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is made by and between **Dan Ostrozovich** (hereinafter referred to as ("Claimant") and W.R. Grace & Co.-Conn. ("Grace)(collectively, the "Parties"). This Agreement is premised upon the following recitals:

## RECITALS

A.      On _____, 2000, Claimant filed a lawsuit against Grace and several other defendants in the **Marion County Superior Court, Civil Division**, Case No. **49D029601-MI0001-072** (the "Lawsuit"). In the Lawsuit, the Claimant sought to recover for his medical condition allegedly caused by asbestos-containing products to which he was allegedly exposed.

B.      Grace has denied and continues to deny liability to the Claimant for the matters alleged or such matters which could have been alleged in the Lawsuit, and enters into this Agreement solely to avoid the uncertainty and expense of further litigation.

C.      The Parties desire to compromise and settle completely the disputes between them upon the terms and in the manner herein provided.

## AGREEEMENT

**NOW, THEREFORE,** in consideration of the mutual promises contained in this Agreement, and each act done pursuant to this Agreement by the Parties, the Parties now agree as follows:

1.      Grace shall pay to the Claimant the total sum TEN Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged.

2.      The Claimant agrees that not later than five (5) business days after she receives payment, she will dismiss or cause to be dismissed, with prejudice, all of the claims made in the Lawsuit against Grace.

3.      The Claimant covenants that she will never at any future time commence, prosecute, maintain or cause or permit to be commenced, prosecuted or maintained against Grace (including without limitation all affiliated, related, parent and subsidiary companies) and all of its present and former employees, officers, servants, agents, representatives, directors, attorneys, successors and/or assigns ("the Grace Parties") any action or proceeding of any description whatever in any Court or in any other kind of forum to charge the Grace Parties with any liability for, or to recover any compensation for, or to recover damages, or for any determination of fact or law, arising out of or relating to:

(a)      Claimant and/or Claimant's medical condition;

(b)      All matters alleged or which could have been alleged in the Lawsuit regarding Claimant and/or Claimant's medical condition;

(c)      Any and all matters, losses or damages of any kind relating to Claimant and/or Claimant's medical condition, including those which are known or anticipated, those which were alleged in the Lawsuit, and those presently unknown or unanticipated which may later result or be discovered; and

(d)      Any and all matters, losses, damages or things of any kind prior to the date hereof, including those which are known or anticipated and those presently unknown or unanticipated which may later result or be discovered.   Provided, however, that if plaintiff, **Dan Ostrozovich**, develops lung cancer or mesothelioma, as those terms are more fully defined and described in the Confidential Settlement Agreement between W.R. Grace & Co-Conn. And Goldberg, Persky, Jennings & White, P.C., then, such plaintiff's exclusive rights to additional compensation from W.R. Grace & Co.-Conn. Will be governed by paragraph 6 of said Confidential Settlement Agreement.

4.      The Claimant declares, warrants and represents:

(a)    That the Claimant has not assigned nor transferred to any person, entity or party any claims that are the subject matter of this Agreement and that he is the sole Party in interest with respect to the claims about which this Agreement is being made;

(b)    That no promise, enticement or agreement not herein expressed has been made to the Claimant and that the terms of the Agreement constitute the entire agreement between the Parties with respect to the subject matter hereof, and that the terms of this Agreement are contractual and not merely a recital; and

(c)    That the Claimant may in the future discover facts different from or in addition to those which he now knows or believes to be true with respect to the matters which are the subject of this Agreement, and he agrees that this Agreement shall remain in effect in all respects, notwithstanding the discovery or existence of different or additional facts.

5.    <u>Confidentiality Clause</u>. The Parties and their attorneys expressly waive any rights they may have to disclose the terms of this Agreement under federal or state law, including federal and state statutory and constitutional law, and agree that they will not divulge, disclose or communicate to any person, firm, organization or corporation the terms of this Agreement and/or the amounts (or any estimate or approximation thereof) paid to the Claimant pursuant to this Agreement, except under the Order of any Court of competent jurisdiction. The Parties and their attorneys further agree not to disclose, disseminate or reveal in any way whatsoever the original, any copy or any portion of this Agreement, directly or indirectly, to any person, firm, corporation, or organization.

It is understood and agreed by the Parties and their attorneys that a breach of this Confidentiality Clause does not constitute a breach of the entire Agreement. The Parties and their attorneys intend that the Confidentiality Clause be severable from the other terms of this Agreement.

The Parties and their attorneys agree that if any proceeding is brought against them to require the terms or amount of this Agreement to be disclosed to any person, firm, organization

or corporation, the person from whom discloser is sought will immediately notify opposing attorneys in writing of such proceeding. Such notice shall be sent by certified mail, return receipt requested, to either (a) **Goldberg, Persky, Jennings & White, P.C.** (for the Claimant), or (b **Jay W. Hughes, Jr.** (for Grace). The Parties and their attorneys further agree to provided each other with the opportunity to intervene in and defend against any such proceeding and agree to abide by the terms of the Confidentiality Clause unless ordered by a Court of competent jurisdiction to disclose the terms or amount involved in this Agreement.

6.    Each party shall pay it sown costs and attorneys' fees arising out of the Lawsuit, and neither party shall recover its costs or attorneys fees from the other in connection with this matter.

7.    No waiver, modification or amendment or any term, condition or provision of this Agreement shall be valid or have any force or effect unless made in writing and signed by the Parties.

8.    This Agreement may be pleaded as a defense to any claim, action or other proceeding that my be brought, instituted or taken by the Claimants against the Grace Parties in breach of the Agreement or relating to the matters which formed the basis for the Lawsuit.

9.    Each of the covenants contained in this Agreement shall be binding upon and shall inure to the benefit of the respective heirs, executors, administrators, assigns, and successors in interest of each of the Parties.

10.    The Claimant acknowledges and declares that in making this Agreement, he has relied solely upon his own or his counsel's own judgment, believe, and knowledge of the nature and extent of any damages suffered as a result of the matters at issue in the Lawsuit, and has not

relied upon any statement or representation by Grace or any of its officers, representatives, agents, attorneys or employees.

11.    This Agreement shall be governed by and interpreted in accordance with the laws of the State of Indiana.  Any action regarding this Agreement shall be maintained in a court in the State of Indiana.

12.    This Agreement represents the entire agreement between the Parties with respect to this matter, and it supersedes all prior negotiations, representations, or agreements, whether written or oral, between the Parties.

13.    This Agreement may be executed in multiple counterparts, each of which shall be an original, but all of which together shall constitute one and the same instrument.


Dated: _____              _____

**Dan Ostrozovich**

_____


APPROVED AS TO FORM:

# B-Reading Roentgenographic Interpretation

Ella A. Kazerooni, M.D.
Associate Professor
Division of Thoracic Imaging
Department of Radiology
University of Michigan Medical Center

1500 E. Medical Center Drive
Ann Arbor, MI 48109-0326
Phone: (734) 936-4366
Fax:   (734) 936-9723
email: ellakaz@umich.edu

Patient's Name: Ostrozovich, Dan

Worker's SS#: 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

Date of Birth: 02/04/22

Date of Reading: 05/17/99

---

**1A. DATE OF X-RAY** — MONTH 10  DAY 23  YR 98

**1B. FILM QUALITY** — 1✓ 2 3 Pr  If Not Grade 1 Give Reason:

**1C. IS FILM COMPLETELY NEGATIVE?** — YES ☐ Proceed to Section 3   NO ☑ Proceed to Section 2

---

**2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**   YES ☑   COMPLETE 2B and 2C   NO ☐ PROCEED TO SECTION 3

**2B. SMALL OPACITIES**

a. SHAPE/SIZE
PRIMARY: p q r t u   SECONDARY: p q r s t u (s✓)

b. ZONES — R / L

c. PROFUSION:
0/- 0/0 0/1
1/0 1/1 1/2
2/1 2/2 2/3
3/2 3/3 3/4

**2C. LARGE OPACITIES** — SIZE ☑/A B C   PROCEED TO SECTION 3

---

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**   YES ☑   COMPLETE 3B, 3C and 3D   NO ☐ PROCEED TO SECTION 4

**3B. PLEURAL THICKENING**

a. DIAPHRAGM (plaque) — SITE O ☑R L

b. COSTOPHRENIC ANGLE — SITE ☑R L

**3C. PLEURAL THICKENING ... Chest Wall**

a. CIRCUMSCRIBED (plaque)
SITE O ☑R        SITE O ☑L
IN PROFILE:
i. WIDTH ☑A B C      ☑A B C
ii. EXTENT 0 1 2 3 / 0 1 2 3
FACE ON:
iii. EXTENT 0 1 2 3 / 0 1 2 3

b. DIFFUSE
SITE O ☑R        SITE O ☑L
IN PROFILE:
i. WIDTH 0 A B C     0 A B C
ii. EXTENT 0 1 2 3   0 1 2 3
FACE ON:
iii. EXTENT 0 1 2 3  0 1 2 3

**3D. PLEURAL CALCIFICATION**

SITE ☑R   EXTENT
a. DIAPHRAGM — 0 1 2 3
b. WALL — 0 1 2 3
c. OTHER SITES — 0 1 2 3

SITE ☑L   EXTENT
a. DIAPHRAGM — 0 1 2 3
b. WALL — 0 1 2 3
c. OTHER SITES — 0 1 2 3

PROCEED TO SECTION 4

---

**4A. ANY OTHER ABNORMALITIES?**   YES ☐   COMPLETE 4B and 4C   NO ☐ PROCEED TO SECTION 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

O | ax | bu | ca | cn | co | cp | cv | di | ef | em | es | fr | hi | ho | id | ih | kl | pi | px | rp | tb

Report items which may be of present clinical significance in this section.   OD (SPECIFY od.)

Date Personal Physician notified?   MONTH  DAY  YR

**4C. OTHER COMMENTS** _____

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C   YES / NO   PROCEED TO SECTION 5

R1605

THIS IS AN IMPORTANT LEGAL DOCUMENT.   READ IT CAREFULLY

JOINT TORTFEASOR RELEASE
W.R. GRACE & COMPANY

**Frederick W. Roe Jr.**
Plaintiffs,

vs.

**A-BEST PRODUCTS COMPANY, ET ALL.,**
Defendants

IN THE COURT OF COMMON PLEAS OF **PA: WASHINGTON** COUNTY
NO.


    1.    KNOW ALL MEN BY THESE PRESENTS that I/we, **Frederick W. Roe Jr.**, (hereinafter "Releasors"), being of lawful age and sound mind, for good and other valuable consideration to us in hand paid, the receipt and sufficiency of which is hereby acknowledged, by this Release do hereby for ourselves and our heirs, executors, administrators, successors and assigns, release, acquit and forever discharge, W. R. Grace & Company, as well as, but not limited to, W. R. Grace & Company's former, present and future principals, parent corporations, subsidiary corporations, Successor corporations, and predecessor corporations, whether actual or alleged, and their respective former, present and future parent corporations, subsidiary corporations, successor corporations, predecessor corporations and affiliated corporations, and each of the aforesaid or above-described corporations' former, present and future successors, predecessors, assigns, divisions and subdivisions, their insurance carriers, and the former, present and future directors, officers, agents, servants, representatives, employees, attorneys, stockholders, and affiliates of all such corporations, (hereinafter collectively referred to as "W. R. Grace & Company" or the "Releasees"), of any and all liability, action, causes of action, judgements, claims, and demands of whatsoever kind or nature (consequential, compensatory, punitive, exemplary or otherwise) which the undersigned have or to which the undersigned claim to be entitled by reason of damages, injuries, illnesses, losses and conditions (including by not limited to death) which presently exist or which may arise in the future, known or unknown, foreseen or unforeseen, arising or which may arise as a result of or in any way connected with any exposure of **Frederick W. Roe Jr.** to any of the products of Releasees as is more particularly set forth in the Complaint and other pleadings filed in the above-captioned lawsuit in the

COURT OF COMMON PLEAS OF **PA: WASHINGTON** COUNTY.  It is intended by the parties hereto that this Release be construed as though the aforementioned lawsuit had been tried to final judgement and all claims presently subject to preclusion, merger and bar, be merged, barred and precluded as to the Releasors and Releasees hereby.

2.  Notwithstanding anything to the contrary herein, it is expressly agreed that this Release shall not operate as a bar to any claim or cause of action which a family member/spouse of **Frederick W. Roe Jr.** may have for any loss, injuries or damages which might be suffered as a result of actual exposure to asbestos fibers, materials or products.

3.  We, the undersigned Releasors, do hereby declare and represent that any injuries or illnesses, both physical and mental, resulting from exposure to asbestos or may be permanent, and that any recovery therefrom is uncertain and indefinite, **AND THAT THEY MAY CAUSE OR LEAD TO OTHER DELETERIOUS CONDITIONS INCLUDING BUT NOT LIMITED TO CANCERS AND DEATH** and that in making this Release, it is understood and agreed that we rely wholly upon our own judgment, belief and knowledge regarding the nature, extent, effect, and duration of said injuries and liability therefor, and that this Release is made without reliance upon any statement or representation by Releasees or its representatives, the making of any such statements or representations being specifically denied, **AND THAT NOTWITHSTANDING ANY RIGHT THAT PLAINTIFFS MAY OTHERWISE HAVE TO BRING A SUBSEQUENT LAWSUIT FOR FUTURE ASBESTOS RELATED CONDITIONS, ALL CLAIMS FOR CANCER, DEATH, FEAR OF FUTURE INJURY AND ALL OTHER POSSIBLE FUTURE OR AS YET UNDETECTED CONDITIONS ARE INCLUDED IN THIS RELEASE AND ARE RELEASED IN FULL HEREBY, EXCEPT AS MAY BE PRESERVED IN PARAGRAPH 2, ABOVE.**

Provided, however, that if plaintiff Frederick W. Roe Jr. develops lung cancer or mesothelioma, as those terms are more fully defined and described in the Confidential Settlement Agreement between W. R. Grace & Co.—Conn. and Goldberg, Persky, Jennings & White, P. C., then, such plaintiff's exclusive rights to additional compensation from W. R. Grace & Co.—Conn. will be governed by paragraph 6 and said Confidential Settlement Agreement.

4.  It is understood and agreed that we, the undersigned Releasors, are not releasing any claim or demand that we have or may have against any other person and/or organization other than Releasees, and we reserve the right to make claims against any and every other person and/or organization and to make claim that they, and not Releasees, are solely liable to us for our injuries, losses, and damages.

5.   It is further agreed and understood that any other person and/or organization, other than Releasees, whom we, the undersigned Releasors, claim is liable to us for our injuries, losses, and damages, shall not be entitled to a satisfaction or reduction or pro rata reduction of the damages we are claiming against them by reason of the settlement payment made by Releasees hereunder, unless it is adjudicated that Releasees is a joint tortfeasor with said other person and/or organization.   In the event that Releasees is adjudicated to be a joint tortfeasor, then the settlement payment shall constitute a reduction to the extent of the greatest of either (a) the dollar amount of the payment on behalf of Releasees, or (b) the pro rata share, pursuant to 42 Pa. C.S. §8327, of Releasees of the Releasors' damages recoverable against all the other tort-feasors, or (c) the share of liability determined pursuant to the Comparative Negligence Act or otherwise of Releasees, whichever is the least amount necessary to extinguish all contribution claims, from the damages recoverable by us from the other tortfeasors.   This Release is expressly intended and shall be construed to release and protect Releasees from all claims  of contribution.

6.   Should it be adjudicated in any suit, action or proceeding, however, that Releasees and others jointly or in succession caused injuries, losses or damages, then, in order to save said Releasees harmless and as further consideration for the aforesaid payment, Releasors agree to satisfy on behalf of the Releasees, any decree, judgment or award against Releasees for any and all damages, including but not limited to compensatory and punitive damages, in which there is such finding or adjudication involving Releasees, to the extent or Releasees' liability to any other party for damages and contribution and/or indemnity.   As further consideration, we will indemnify and save forever harmless Releasees against loss or damage because of any and all further claims, demands or actions made by others on account of or in any manner resulting from the injuries, losses or damages released herein.   Provided, however, that nothing in this Release obligates us to pay or contribute to the payment of any costs, expenses and/or attorneys' fees incurred in the defense of any claims, demands or actions.

7.   It is further understood that the attorneys for us, the undersigned Releasors, are authorized to make on our behalf and in our names such objections to testimony by any person or any other evidence presented to identify Releasees as a joint tortfeasor in the case, and to file in our names any pre-trial and/or post-trial motions regarding such testimony or evidence, to present testimony or evidence limited solely to disputing such identification and to file an appeal in our names from any adverse trial rulings, verdicts or judgments concerning product identification, only to the extent such objections, motions, testimony and appeals are permitted by the laws or Pennsylvania, in light of the effect that an adjudication of joint liability on the part of Releasees might have on our recovery from non-settling defendants under the Pennsylvania Uniform Contribution Among Tortfeasors Act.   It is

expressly understood that nothing herein gives us the right to file any pleading, motion, appeal or other document in the name of or on behalf of Releasees, it being the intent of the parties to this Releases that our attorneys shall not and do not represent Releasees.

8.   It is further understood and agreed that nothing in this Release shall be deemed to exclude, limit or release any claims or rights that the undersigned have against any person, firm or corporation, other than Releasees and the entities and persons identified in Paragraph 1, above, as related to Releasees.   This does not release any defendants, additional defendants or third party defendants who have filed petitions in bankruptcy as of the date of this Release nor does it release a present defendant, additional defendant or third party defendant who in the future may merge or in any manner be acquired by or acquire a released defendant, in whole or part.   It is the intent or this Release to release only Releasees and those entities and persons, identified in Paragraph 1, above, as related to Releasees.

9.   It is further agreed that we will hold harmless Releasees from any and all liability arising from liens and/or subrogation claims including any worker's compensation or medical payments due or claimed to be due under the law, state or federal regulation or contract.   We expressly acknowledge that all obligations to satisfy such liens are those of Releasors not Releasees. Provided, however, that nothing in this Release obligates us to pay or contribute to the payment of any costs, expenses and/or attorneys' fees incurred in the defense of any claims, demands or actions.

10.   It is understood and agreed that the payment referred to herein is a compromise of a disputed claim and shall not be construed as in admission of liability on the part of Releasees, since liability is expressly denied.

11.   The undersigned hereby certifies that the undersigned has a good faith belief that the undersigned (or the undersigned's decedent) was exposed to the Releasees' asbestos-containing products, although the undersigned understands this claim is disputed by Releasees.

12.   This Release contains the ENTIRE AGREEMENT between the undersigned and the Releasees, and the terms thereof are contractual and not a mere recital.   The undersigned state that we have carefully read the foregoing or had it read and explained to us and that we know and understand the contents and meaning of signing this document and accepting payment.   We sign this Release as our own free act.

13.    I/We, **Frederick W. Roe Jr.**, have signed this release after consultation with our attorney, fully intending to be legally bound hereby.

IN WITNESS WHEREOF, and intending to be legally bound, we have hereunto set or hands and seal this ___*19*___ day of _____*Oct*_____, 2000.

WITNESSED BY:

_____ (Seal)
**Frederick W. Roe Jr.**

_____ (Seal)

SWORN TO AND SUBSCRIBED before me this *19* day of ___*Oct*___, 20 *00*.

_____
Notary Public

Notarial Seal
Laura Wallace, Notary Public
Washington, Washington County
My Commission Expires June 25, 2001

Member, Pennsylvania Association of Notaries

I:\settle\release\wrg\wrgind.doc\T1062

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is made by and between **John J. Toth and Irene M. Toth** (hereinafter referred to as ("Claimant") and W.R. Grace & Co.-Conn. ("Grace)(collectively, the "Parties"). This Agreement is premised upon the following recitals:

### RECITALS

A.    On _____, 2000, Claimant filed a lawsuit against Grace and several other defendants in the **Marion County Superior Court, Civil Division**, Case No. **49D029601-MI0001-182** (the "Lawsuit"). In the Lawsuit, the Claimant sought to recover for his medical condition allegedly caused by asbestos-containing products to which he was allegedly exposed.

B.    Grace has denied and continues to deny liability to the Claimant for the matters alleged or such matters which could have been alleged in the Lawsuit, and enters into this Agreement solely to avoid the uncertainty and expense of further litigation.

C.    The Parties desire to compromise and settle completely the disputes between them upon the terms and in the manner herein provided.

### AGREEEMENT

**NOW, THEREFORE,** in consideration of the mutual promises contained in this Agreement, and each act done pursuant to this Agreement by the Parties, the Parties now agree as follows:

1.    Grace shall pay to the Claimant the total sum TEN Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged.

2.    The Claimant agrees that not later than five (5) business days after she receives payment, she will dismiss or cause to be dismissed, with prejudice, all of the claims made in the Lawsuit against Grace.

3.    The Claimant covenants that she will never at any future time commence, prosecute, maintain or cause or permit to be commenced, prosecuted or maintained against Grace (including without limitation all affiliated, related, parent and subsidiary companies) and all of its present and former employees, officers, servants, agents, representatives, directors, attorneys, successors and/or assigns ("the Grace Parties") any action or proceeding of any description whatever in any Court or in any other kind of forum to charge the Grace Parties with any liability for, or to recover any compensation for, or to recover damages, or for any determination of fact or law, arising out of or relating to:

    (a)    Claimant and/or Claimant's medical condition;

    (b)    All matters alleged or which could have been alleged in the Lawsuit regarding Claimant and/or Claimant's medical condition;

    (c)    Any and all matters, losses or damages of any kind relating to Claimant and/or Claimant's medical condition, including those which are known or anticipated, those which were alleged in the Lawsuit, and those presently unknown or unanticipated which may later result or be discovered; and

    (d)    Any and all matters, losses, damages or things of any kind prior to the date hereof, including those which are known or anticipated and those presently unknown or unanticipated which may later result or be discovered. Provided, however, that if plaintiff, **John J. Toth**, develops lung cancer or mesothelioma, as those terms are more fully defined and described in the Confidential Settlement Agreement between W.R. Grace & Co-Conn. And Goldberg, Persky, Jennings & White, P.C., then, such plaintiff's exclusive rights to additional compensation from W.R. Grace & Co.-Conn. Will be governed by paragraph 6 of said Confidential Settlement Agreement.

4.    The Claimant declares, warrants and represents:

(a)    That the Claimant has not assigned nor transferred to any person, entity or party any claims that are the subject matter of this Agreement and that he is the sole Party in interest with respect to the claims about which this Agreement is being made;

(b)    That no promise, enticement or agreement not herein expressed has been made to the Claimant and that the terms of the Agreement constitute the entire agreement between the Parties with respect to the subject matter hereof, and that the terms of this Agreement are contractual and not merely a recital; and

(c)    That the Claimant may in the future discover facts different from or in addition to those which he now knows or believes to be true with respect to the matters which are the subject of this Agreement, and he agrees that this Agreement shall remain in effect in all respects, notwithstanding the discovery or existence of different or additional facts.

5.    <u>Confidentiality Clause</u>. The Parties and their attorneys expressly waive any rights they may have to disclose the terms of this Agreement under federal or state law, including federal and state statutory and constitutional law, and agree that they will not divulge, disclose or communicate to any person, firm, organization or corporation the terms of this Agreement and/or the amounts (or any estimate or approximation thereof) paid to the Claimant pursuant to this Agreement, except under the Order of any Court of competent jurisdiction. The Parties and their attorneys further agree not to disclose, disseminate or reveal in any way whatsoever the original, any copy or any portion of this Agreement, directly or indirectly, to any person, firm, corporation, or organization.

It is understood and agreed by the Parties and their attorneys that a breach of this Confidentiality Clause does not constitute a breach of the entire Agreement. The Parties and their attorneys intend that the Confidentiality Clause be severable from the other terms of this Agreement.

The Parties and their attorneys agree that if any proceeding is brought against them to require the terms or amount of this Agreement to be disclosed to any person, firm, organization

or corporation, the person from whom discloser is sought will immediately notify opposing attorneys in writing of such proceeding. Such notice shall be sent by certified mail, return receipt requested, to either (a) **Goldberg, Persky, Jennings & White, P.C.** (for the Claimant), or (b **Jay W. Hughes, Jr.** (for Grace). The Parties and their attorneys further agree to provided each other with the opportunity to intervene in and defend against any such proceeding and agree to abide by the terms of the Confidentiality Clause unless ordered by a Court of competent jurisdiction to disclose the terms or amount involved in this Agreement.

6.    Each party shall pay it sown costs and attorneys' fees arising out of the Lawsuit, and neither party shall recover its costs or attorneys fees from the other in connection with this matter.

7.    No waiver, modification or amendment or any term, condition or provision of this Agreement shall be valid or have any force or effect unless made in writing and signed by the Parties.

8.    This Agreement may be pleaded as a defense to any claim, action or other proceeding that my be brought, instituted or taken by the Claimants against the Grace Parties in breach of the Agreement or relating to the matters which formed the basis for the Lawsuit.

9.    Each of the covenants contained in this Agreement shall be binding upon and shall inure to the benefit of the respective heirs, executors, administrators, assigns, and successors in interest of each of the Parties.

10.    The Claimant acknowledges and declares that in making this Agreement, he has relied solely upon his own or his counsel's own judgment, believe, and knowledge of the nature and extent of any damages suffered as a result of the matters at issue in the Lawsuit, and has not

relied upon any statement or representation by Grace or any of its officers, representatives, agents, attorneys or employees.

11.    This Agreement shall be governed by and interpreted in accordance with the laws of the State of Indiana.  Any action regarding this Agreement shall be maintained in a court in the State of Indiana.

12.    This Agreement represents the entire agreement between the Parties with respect to this matter, and it supersedes all prior negotiations, representations, or agreements, whether written or oral, between the Parties.

13.    This Agreement may be executed in multiple counterparts, each of which shall be an original, but all of which together shall constitute one and the same instrument.

Dated: 11/16/2000

John J. Toth

Irene M. Toth

I:\settle\release\wrg\wrgind.doc\W1825

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is made by and between **Melvin Williams** (hereinafter referred to as ("Claimant") and W.R. Grace & Co.-Conn. ("Grace)(collectively, the "Parties"). This Agreement is premised upon the following recitals:

## RECITALS

A.      On _____, 2000, Claimant filed a lawsuit against Grace and several other defendants in the **Marion County Superior Court, Civil Division**, Case No. **49D029601-MI0001-208** (the "Lawsuit"). In the Lawsuit, the Claimant sought to recover for his medical condition allegedly caused by asbestos-containing products to which he was allegedly exposed.

B.      Grace has denied and continues to deny liability to the Claimant for the matters alleged or such matters which could have been alleged in the Lawsuit, and enters into this Agreement solely to avoid the uncertainty and expense of further litigation.

C.      The Parties desire to compromise and settle completely the disputes between them upon the terms and in the manner herein provided.

## AGREEEMENT

**NOW, THEREFORE,** in consideration of the mutual promises contained in this Agreement, and each act done pursuant to this Agreement by the Parties, the Parties now agree as follows:

1.      Grace shall pay to the Claimant the total sum TEN Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged.

2.    The Claimant agrees that not later than five (5) business days after she receives payment, she will dismiss or cause to be dismissed, with prejudice, all of the claims made in the Lawsuit against Grace.

3.    The Claimant covenants that she will never at any future time commence, prosecute, maintain or cause or permit to be commenced, prosecuted or maintained against Grace (including without limitation all affiliated, related, parent and subsidiary companies) and all of its present and former employees, officers, servants, agents, representatives, directors, attorneys, successors and/or assigns ("the Grace Parties") any action or proceeding of any description whatever in any Court or in any other kind of forum to charge the Grace Parties with any liability for, or to recover any compensation for, or to recover damages, or for any determination of fact or law, arising out of or relating to:

    (a)    Claimant and/or Claimant's medical condition;

    (b)    All matters alleged or which could have been alleged in the Lawsuit regarding Claimant and/or Claimant's medical condition;

    (c)    Any and all matters, losses or damages of any kind relating to Claimant and/or Claimant's medical condition, including those which are known or anticipated, those which were alleged in the Lawsuit, and those presently unknown or unanticipated which may later result or be discovered; and

    (d)    Any and all matters, losses, damages or things of any kind prior to the date hereof, including those which are known or anticipated and those presently unknown or unanticipated which may later result or be discovered.  Provided, however, that if plaintiff, **Melvin Williams**, develops lung cancer or mesothelioma, as those terms are more fully defined and described in the Confidential Settlement Agreement between W.R. Grace & Co-Conn. And Goldberg, Persky, Jennings & White, P.C., then, such plaintiff's exclusive rights to additional compensation from W.R. Grace & Co.-Conn. Will be governed by paragraph 6 of said Confidential Settlement Agreement.

4.    The Claimant declares, warrants and represents:

(a)  That the Claimant has not assigned nor transferred to any person, entity or party any claims that are the subject matter of this Agreement and that he is the sole Party in interest with respect to the claims about which this Agreement is being made;

(b)  That no promise, enticement or agreement not herein expressed has been made to the Claimant and that the terms of the Agreement constitute the entire agreement between the Parties with respect to the subject matter hereof, and that the terms of this Agreement are contractual and not merely a recital; and

(c)  That the Claimant may in the future discover facts different from or in addition to those which he now knows or believes to be true with respect to the matters which are the subject of this Agreement, and he agrees that this Agreement shall remain in effect in all respects, notwithstanding the discovery or existence of different or additional facts.

5.  <u>Confidentiality Clause</u>. The Parties and their attorneys expressly waive any rights they may have to disclose the terms of this Agreement under federal or state law, including federal and state statutory and constitutional law, and agree that they will not divulge, disclose or communicate to any person, firm, organization or corporation the terms of this Agreement and/or the amounts (or any estimate or approximation thereof) paid to the Claimant pursuant to this Agreement, except under the Order of any Court of competent jurisdiction. The Parties and their attorneys further agree not to disclose, disseminate or reveal in any way whatsoever the original, any copy or any portion of this Agreement, directly or indirectly, to any person, firm, corporation, or organization.

It is understood and agreed by the Parties and their attorneys that a breach of this Confidentiality Clause does not constitute a breach of the entire Agreement. The Parties and their attorneys intend that the Confidentiality Clause be severable from the other terms of this Agreement.

The Parties and their attorneys agree that if any proceeding is brought against them to require the terms or amount of this Agreement to be disclosed to any person, firm, organization

or corporation, the person from whom discloser is sought will immediately notify opposing attorneys in writing of such proceeding. Such notice shall be sent by certified mail, return receipt requested, to either (a) **Goldberg, Persky, Jennings & White, P.C.** (for the Claimant), or (b **Jay W. Hughes, Jr.** (for Grace). The Parties and their attorneys further agree to provided each other with the opportunity to intervene in and defend against any such proceeding and agree to abide by the terms of the Confidentiality Clause unless ordered by a Court of competent jurisdiction to disclose the terms or amount involved in this Agreement.

6.    Each party shall pay it sown costs and attorneys' fees arising out of the Lawsuit, and neither party shall recover its costs or attorneys fees from the other in connection with this matter.

7.    No waiver, modification or amendment or any term, condition or provision of this Agreement shall be valid or have any force or effect unless made in writing and signed by the Parties.

8.    This Agreement may be pleaded as a defense to any claim, action or other proceeding that my be brought, instituted or taken by the Claimants against the Grace Parties in breach of the Agreement or relating to the matters which formed the basis for the Lawsuit.

9.    Each of the covenants contained in this Agreement shall be binding upon and shall inure to the benefit of the respective heirs, executors, administrators, assigns, and successors in interest of each of the Parties.

10.    The Claimant acknowledges and declares that in making this Agreement, he has relied solely upon his own or his counsel's own judgment, believe, and knowledge of the nature and extent of any damages suffered as a result of the matters at issue in the Lawsuit, and has not

relied upon any statement or representation by Grace or any of its officers, representatives, agents, attorneys or employees.

11.    This Agreement shall be governed by and interpreted in accordance with the laws of the State of Indiana.  Any action regarding this Agreement shall be maintained in a court in the State of Indiana.

12.    This Agreement represents the entire agreement between the Parties with respect to this matter, and it supersedes all prior negotiations, representations, or agreements, whether written or oral, between the Parties.

13.    This Agreement may be executed in multiple counterparts, each of which shall be an original, but all of which together shall constitute one and the same instrument.

Dated: _____

**Melvin Williams**

_____

APPROVED AS TO FORM: