IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | ) | Chapter 11 |
|  | ) |  |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
|  | ) | Jointly Administered |
|  | ) |  |
| Debtors. | ) | Related to Docket No. 13999 |
|  | ) |  |
|  | ) | Hrg. Date: December 5, 2006 |

COMBINED RESPONSE OF CERTAIN LAW FIRMS
TO THE DEBTORS' ADDITIONAL BRIEF IN SUPPORT OF W.R. GRACE & CO.'S MOTION TO
COMPEL CLAIMANTS TO RESPOND TO THE W.R. GRACE ASBESTOS PERSONAL INJURY
QUESTIONNAIRE [Docket No. 13999]

Respondent law firms (collectively, "Respondents" with each being a "Respondent")[1], counsel for and on behalf of certain personal injury claimants ("Claimants"),[2] by and through their undersigned attorneys, hereby file this combined response to the Debtors' Additional Brief [Docket No. 13999] in Support of W.R. Grace & Co.'s Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire (collectively, the "Additional Brief" and the "Motion to Compel", respectively) filed herein by W.R. Grace & Co., et al. ("Grace" or "Debtor"). Respondents would respectfully state as follows:

---

[1] The Respondents include the following law firms: Foster & Sear, LLP., Williams Bailey Law Firm, LLP, Provost & Umphrey, LLP, The Law Offices of Peter G. Angelos, PC, Baron & Budd, P.C., Silber Pearlman, LLP, LeBlanc & Waddell, LLP, Weitz & Luxenberg, PC, and Wilentz, Goldman & Spitzer, P.A., who represent the Claimants.

[2] The names of the individual Claimants from whom Grace seeks to compel discovery are listed in the exhibits to the Motion to Compel.

Page 1

## INTRODUCTION

The basic premise underlying Grace's Additional Brief is that no Claimant – not one – should be allowed to assert any consulting expert privilege, because Grace believes that every asbestos claim asserted against it is a fraud. Grace posits that the only way to prove this massive fraud is to ignore Rule 26(b)(4)(B) entirely and to deny all Claimants a valuable right conferred upon all litigants (even Grace) by the Supreme Court and Congress.

The Court must not forget that this is an estimation proceeding. The Questionnaire was approved as an information gathering process, but it has digressed into *en masse* litigation of individual claims and individual Claimants' rights. Grace is essentially attempting to "try" the merits of every asbestos claim against it in bulk, while trampling over **individual** Claimants' rights in the process. Grace has said over and over that it is not attempting to liquidate any individual claim. Its disclaimers notwithstanding, Grace *does* want to "liquidate" individual rights and privileges to prove that individual claims lack merit. It can't have it both ways. These Claimants have rights, including the right to assert evidentiary privileges (such as work product, consulting expert, etc.), regardless of whether this is an estimation proceeding or a trial on the merits of an individual claim. These rights are keystones of our judicial system that cannot be vitiated *en masse* on the basis of Grace's unsupported supposition and innuendo. The Court should not be swept up in Grace's hysteria at the expense of disregarding rules of civil procedure and the rights of individual Claimants.

The Claimants have now filed proofs of claims, which are deemed allowed in the absence of objections.[3] To Respondents' knowledge, Grace has not objected to any individual claim. If it does, and if in that claim objection proceeding Grace wants to allege that the claim was a fraud, Grace would be required to plead fraud against that individual Claimant with the particularity demanded by Federal Rule of Civil Procedure 9. Only then, and only upon proof of exceptional circumstances under Rule 26(b)(4)(B) in that particular case, might Grace be entitled to pierce the consulting expert privilege. Grace has done none of that here. There is simply no authority for this Court to rule across the board that the consulting expert privilege does not apply in this bankruptcy and to allow Grace to begin the massive fishing expedition that will ensue.[4]

Grace's Additional Brief is devoid of evidence against any individual Claimant. Indeed, although invited to do so by the Court,[5] Grace did not attach any affidavit to its Additional Brief.[6] Instead, Grace relies on things such as newspaper articles, unverified memos from unrelated cases, and unverified exhibits relating to

---

[3] 11 U.S.C. § 502(a).

[4] Moreover, in an individual claim objection proceeding, a Claimant would have the right to protect itself through the adversary process, including taking discovery from Grace. That is not allowed here, yet the Claimants' rights are just as effectively being affected.

[5] *See* Order Granting in Part and Denying in Part W.R. Grace & Co.'s Motion for Reconsideration, Dec. 7, 2006 ("Debtors may … submit a brief and/or affidavits … .)

[6] In contrast, each of the Respondents submitted declarations under penalty of perjury that describe the law firms' use of physicians and other medical professionals as consultants and how the firms maintain the confidentiality of the facts and opinions of such experts in cases where the experts are not expected to be used at trial. *See* Combined Response of Foster Sear, LLP, et al., to the Debtors' Motion to Compel, etc. (Exhibits A-G) and Response of Weitz & Luxenberg, et al., to the Debtor's Motion to Compel, etc. (Exhibits B and C) [Docket Nos. 13805 and 13819].

less than a handful of individual claimants who are not represented by Respondents. Yet with such unbelievably meager support, Grace asks this Court to overrule with one order *all* consulting expert privileges regardless of individual circumstance. Grace's wishes to the contrary notwithstanding, Courts trade in evidence – not innuendo, rumor, or self-serving paranoia.

Grace may grandstand and condemn the tort system to its heart's content, but until the Supreme Court and Congress repeal Rule 26(b)(4)(B), such rule applies in asbestos bankruptcy cases like all others.[7] The following discussion therefore primarily addresses the application of the rule generally, its specific application in medical cases and some of the issues that appeared to concern the Court at the last omnibus hearing.[8] Specifically, the briefing below addresses the issue of whether a doctor who performs an actual physical examination of a patient may be considered a consulting expert. Under Rule 26(b)(4)(B) it is incontrovertible that a physician or other medical professional who performs such an examination is fully entitled to protection as a consulting expert if he or she otherwise satisfies the requirements of the rule. Respondents respectfully request that the Court decide this issue on the applicable law and sustain Claimants' right to assert the consulting expert privilege as appropriate in responses to the Questionnaire.

---

[7] Evidentiary privileges in the Federal Rules of Civil Procedure may be abolished or modified only upon a recommendation of the Supreme Court that is approved by an act of Congress. 28 U.S.C. § 2074(b).

[8] This brief responds to certain statements made by Grace in the Additional Brief and provides a supplemental discussion of the law under Rule 26(b)(4)(B). The Court is respectfully directed to Section II (pages 8-21) of Respondent's original brief on this issue for a complete discussion of the law regarding the consulting expert privilege and its applicability here. *See* Combined Response of Foster Sear, LLP, et al., to Debtors' Motion to Compel, etc. [Docket No. 13805].

# ARGUMENT

### A. Consulting expert status is determined by the specific language of Rule 26(b)(4)(B).

A "consulting expert" is "an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial[.]" FED. R. CIV. P. 26(b)(4)(B). Based on the rule's text, it may be said that there are three necessary "elements" to proper classification of an expert as a consulting expert. The expert must have been (1) retained or specially employed, (2) by another party in anticipation of litigation or preparation for trial, and (3) is not expected to be called as a witness at trial.

Once consulting expert status is established – a fairly easy undertaking, given that the first two elements are straightforward and the third is wholly within the control of the party being consulted – the rules of procedure strictly limit discovery regarding consulting experts. Rule 26(b)(4)(B) embodies the limitations:

> A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, *only* as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

FED. R. CIV. P. 26(b)(4)(B) (emphasis added).[9]

---

[9] Citing no authority, Grace argues that consultants should not be entitled to protection if they did not sign a formal contract with a law firm. *See* Additional Brief 3-4. Rule 26(b)(4)(B), however, requires only that the expert be "retained or specially employed" in anticipation of litigation or preparation for trial and does not require that the retention or employment be reflected in a written contract. In fact, to the extent that an informal consultation with an expert does not rise

B.  <u>Rule 26(b)(4)(B) protects both the "facts known" and the "opinions held by" a consulting expert.</u>

Several observations are in order.  First, the rule's text places the limitations on "facts known or opinions held by" the consulting expert.  *See Shoemaker v. General Motors Corp.*, 154 F.R.D. 235, 236 (W.D. Mo. 1994) ("information about the facts known and opinions held by consulting experts is protected by Fed.R.Civ.P. 26(b)(4)(B)").  That the discovery limitation encompasses the "facts known" in addition to "opinions held by" a consulting expert seems to have been overlooked in the recent omnibus hearing.

A second observation is that the limitations on discovery of those facts known and opinions held by consulting experts are formidable obstacles not easily overcome.[10]  By its explicit terms the rule provides only two avenues for a party wishing to discover facts and opinions known to an adversary's consulting expert.  Those options are (1) pursuant to Rule 35(b), or (2) upon a showing of exceptional circumstances.  There is simply no other permissible route to discovering facts

---

to the level of a formal retention, discovery is barred under any circumstance.  "Subdivision (b)(4)(B) is concerned only with experts retained or specially consulted in relation to trial preparation.  Thus *the subdivision precludes discovery against experts who were informally consulted in preparation for trial, but not retained or specially employed.*  As an ancillary procedure, a party may on a proper showing require the other party to name experts retained or specially employed, *but not those informally consulted.*"  Fed. R. Civ. P. 26 advisory committee's note (emphasis added); *see also, Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 502 (10th Cir. 1980) ("If the expert is considered to have been only informally consulted in anticipation of litigation, discovery is barred.").

[10]  *See, e.g., Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458, 460 (S.D.N.Y. 1995) (Rule 26(b)(4)(B) imposes a "severe limitation on the discovery of consultive, as opposed to testifying, experts."); *Goldberg v. APCOA, Inc.*, No. CIV.A. 97-6088(JEI), 1998 WL 531822, at *1 (D.N.J. Aug. 24, 1998) ("Normally, Rule 26(b)(4)(B) makes it difficult to obtain an adversary's expert report when the adversary has no intention of offering that expert as a witness at trial.").

known or opinions held by another party's consulting experts.  Because Rule 35(b) does not apply in the present context,[11] Grace has *no choice* if it proposes to discover facts known or opinions held by Claimants' consulting experts.  It *must* demonstrate exceptional circumstances (which it has not done) or desist from further efforts to discover "facts known or opinions held by" Claimants' consulting experts.

A third observation afforded by a textual analysis of Rule 26(b)(4)(B) is that the critical dichotomy is between experts who are expected to testify at trial (as to whom wide discovery is permitted) and experts who are not expected to testify at trial (consulting experts as to whom discovery is severely restricted).[12]  This applies uniformly to all experts, including medical experts.

C. <u>Whether an expert conducted an actual physical examination of a plaintiff is not determinative of whether an expert qualifies as a consultant.</u>

At the recent omnibus hearing, the Court seemed to focus on a different dichotomy (from whether an expert was going to testify or not).  The Court inquired

---

[11] Although Rule 35 does not apply to the facts and circumstances before this Court, it nevertheless warrants careful attention.  Rule 35 clearly establishes that medical experts who physically examine personal injury claimants (as opposed, for example, to merely reviewing their files or testing data) may qualify as consulting experts.  Respondents' are hopeful that the discussion of Rule 35 below will dispel any lingering skepticism as to this point on the part of the Court.

[12] Even Grace seems to acknowledge this important dichotomy, but in a way that seems calculated to mislead.  When the [Silica MDL] "Court ruled that so long as Plaintiffs are proffering the doctors and their diagnoses to fulfill this Court's requirement … that Plaintiff's produce diagnoses of silica-related disease, plaintiffs cannot claim the doctors are non-testifying", it was simply making that point that Rule 26(b)(4)(B) protects only consulting experts and not testifying experts whose opinions are being actively proffered. Additional Brief in Support of W.R. Grace & Co.'s Motion to Compel Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire ("Grace's Additional Brief") 5, n. 15 (quoting *In re Silica Prods. Liab. Litig.*, 398 F. Supp.2d 563, 584 (S.D. Tex. 2005)); *see also*, Grace's Additional Brief 7, n. 20 (making the same point).

as to whether a distinction should be made between a medical expert who had physically examined a Claimant versus an expert who had simply reviewed a file or an x-ray and opined on that limited basis. There is absolutely no question, however, that a doctor or other medical expert who examines a Claimant may properly be classified as a consulting expert, provided that the three "elements" are met (*i.e.*, (1) retained or specially employed, (2) by another party in anticipation of litigation or preparation for trial, and (3) not expected to be called as a witness at trial).[13]

How do we know this to be so? The answer is Federal Rule of Civil Procedure 35, which applies in contested matters[14] but obviously does not come up very often in bankruptcy cases. Entitled "Physical and Mental Examinations of Persons", Rule 35 is the proper mechanism for requiring a party whose mental or physical condition is in controversy to submit to an examination "by a suitably licensed or certified examiner … ." FED. R. CIV. P. 35(a). When, and only when, such an examination is conducted under Rule 35(a), does Rule 35(b) then become one of the two avenues for legitimately obtaining discovery of an adverse party's consulting experts.

It works like this. Under Rule 35(a), an examination may be requested and ordered by a court. The party whose examination has been ordered may request a copy of the examiner's report of the examination, which "shall" be delivered if

---

[13] Respondents are not asserting here that doctors who are actually treating a patient for the particular disease at issue would qualify as consulting experts. Such "treating" physicians would normally be considered fact witnesses. However, a non-treating physician who conducts an actual physical examination of the plaintiff is entitled to protection as a consulting expert if he or she otherwise satisfies the requirements of Rule 26(b)(4)(B).

[14] *See* FED. R. BANKR. P. 9014.

requested. FED. R. CIV. P. 35(b)(1). If such a request is made, however, significant consequences attend. As set forth in Rule 35(b)(2):

> By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the party examined waives any privilege the party may have in that action or any other involving the same controversy, regarding the testimony of every other person *who has examined or may thereafter examine the party in respect of the same mental or physical condition*.

FED. R. CIV. P. 35(b)(2) (emphasis added).

As noted, the ramifications are significant, as one court has summarized:

> Certain consequences attach to the use of the power granted by Rule 35(a). The examined party may request a copy of the physician's [*i.e.*, the examiner's] report, regardless of whether the examining party intends to call the physician at trial. By making that request, "the party examined waives any privilege he may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition," Rule 35(b)(2), and the examining party *becomes entitled* to reports prepared by the examined party's physicians.

*Salvatore v. Am. Cyanamid Co.*, 94 F.R.D. 156, 158 (D.R.I. 1982) (emphasis added) (quoting FED. R. CIV. P. 35(b)(2)). Rule 35 therefore contemplates that the report of a physician who actually conducts a hands-on examination of a plaintiff will be entitled to protection under the consulting expert rule unless such privilege is waived under Rule 35(b). If, in the absence of an examined party's request for the examining physician's report under Rule 35(a), the examining party was already entitled to reports prepared by the examined party's consulting physicians, Rule 35(b)(2) would make no sense. Any notion that there is a relevant dichotomy

between "hands-on" and "backroom" non-testifying experts finds no validation in the rules.

Thus, by requesting and obtaining a copy of the examiner's report, the party examined "waives any privilege the party may have in that action … regarding the testimony of every other person who has examined" him or her with regard to the same condition. FED. R. CIV. P. 35(b)(2). A waiver of the physician-patient privilege can thereby be effected. *See, e.g., Bethel v. Thornbrough*, 311 F.2d 201, 203-04 (10th Cir. 1962); *Cunningham v. Conn. Mut. Life Ins.*, 845 F. Supp. 1403, 1408 (S.D. Cal. 1994). So, too, can a waiver of the consulting expert privilege embodied in Rule 26(b)(4)(B) be effected. In *White v. Augur*, Civ. A. No. 85-0848, 1987 WL 11997, at *1 (D.D.C. May 26, 1987), for example, the injured plaintiff had submitted to an examination pursuant to Rule 35(a) and had both requested and received a copy of the examiner's report. The defendants subsequently sought to take the deposition of a doctor that the plaintiff insisted had been "retained [by him] as a special consultant on medical matters and will not testify at trial." *Id.* (quoting from a paper plaintiff had filed). The plaintiff sought a protective order barring the deposition, which the court denied in a concise opinion, citing Rule 35(b)(2). *Id.*

The procedures of Rule 35 thus answer any questions about whether an examining physician's report can be privileged. "To be sure, if the report is privileged, then discovery is not permissible under any rule other than Rule 35(b) and it is permissible under Rule 35(b) only if the party requests a copy of the report

of examination made by the other party's doctor." FED. R. CIV. P. 35 advisory committee's note.

### D. The consulting expert privilege is intended to protect the very misuse that Grace hopes to employ in this case.

Rule 26(b)(4)(B) is intended to protect a party's confidential work product from several possible misuses by an opponent. As noted in *House v. Combined Ins. Co.*, 168 F.R.D. 236, 241 (N.D. Iowa 1996), "[t]he rule on access to a consulted-but-not-testifying expert serves a number of interests, as identified [in] *Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458, 460 (S.D.N.Y. 1995)." The first of these was the

> … "important interest in allowing counsel to obtain the expert advice they need in order properly to evaluate and present their clients' position without fear that every consultation with an expert may yield *grist for the adversary's mill*," which the court found underlies *Fed.R.Civ.P.* 26(b)(4)(B)'s limitation on discovery of consultative, as opposed to testifying experts …

*Id.* at 241 (quoting *Rubel*, 160 F.R.D. at 460) (emphasis in original). Also of concern is "the substantial risk of 'explosive' prejudice stemming from the fact of the prior retention of an expert by the opposing party."[15] *Id.* (quoting *Rubel*, 160 F.R.D. at 460). Grace clearly fantasizes about running its myriad tort victims' medical consultants through an elaborate discovery "mill", tantalized by the idea of "explosively prejudicing" compelling evidence of asbestos disease with anecdotal accounts of some Claimants' prior consultations with alleged "bad" doctors.

---

[15] The other interests identified include "the unfairness of allowing an opposing party to benefit from a party's effort and expense incurred in preparing its case" and "fear of restraint on the willingness of experts to serve as consultants if their testimony could be compelled." *House*, 168 F.R.D. at 241 (quoting *Rubel*, 160 F.R.D. at 460).

Grace conveniently forgets what is pending before the Court – an estimation proceeding, a contested matter between Grace and the Asbestos Claimants' Committee (the "Committee"). Individual asbestos claimants are not parties to this proceeding, which has as its purpose estimating Grace's aggregate asbestos liabilities – not inquiring into the relative merits of individual claims.

How does Grace's forgetfulness manifest itself? Consider Grace's reliance on *Derrickson v. Circuit City Stores, Inc.*, No. DKC 95-3296, 1999 WL 1456538 (D. Md. March 19, 1999), *aff'd sub. nom. Johnson v. Circuit City Stores, Inc.*, 203 F.3d 821 (4th Cir. 2000), an employment discrimination case. Grace's Additional Brief improperly ascribes heraldic significance to a quote from the *Derrickson* district court, and suggests that a consulting expert privilege may be overcome if the party's purpose in seeking to avoid the privilege is not to build its own case but rather to "tear down" its opponent's case.

Two points bear noting. First, Grace has previously disclaimed any intention to "tear down" any claimants' claim in the forthcoming estimation proceeding. The *Derrickson* court's dichotomy between discovery intrusions that would "steal" an opponent's trial preparation materials versus "tear down" those same materials is not recognized in the rule and, in any event, is inapposite since the Committee, not the Claimants individually, are Grace's opponent in the estimation. Grace is clearly attempting to build its own case against the Committee with the evidence it seeks from the Questionnaire.

Second, and most importantly, the *Derrickson* court ultimately concluded that discovery of the consulting expert should be allowed because exceptional circumstances had been shown. *Id.* In the end, Grace's elaborate effort to contrive some other avenue for intruding on the Claimants' consulting experts brings it right back to where it started: the requirement that it demonstrate exceptional circumstances justifying the intrusion.

### E.  A simple allegation of fraud does not establish exceptional circumstances.

At the end of day, if Grace proposes to discover facts known and opinions held by Claimants' consulting experts, it must reconcile itself to its responsibility, under the rules, to demonstrate the requisite exceptional circumstances. Failing that, the rules make it clear that Grace is not entitled to what it seeks.[16] In its Additional Brief Grace does not argue exceptional circumstances, but instead suggests that the consulting expert privilege must be merely disregarded in its entirety to allow Grace to investigate the "fraud" that is supposedly being perpetrated by all of the Claimants in this case.

Grace has not alleged fraud, however, in defense of any individual claim in this case. Indeed, to Respondents' knowledge, Grace has not objected to any proof of claim filed by any Claimant and thus all claims in this case are currently deemed allowed in full. If Grace did file an objection to any individual claim, and if in that claim objection proceeding Grace wanted to allege that the claim was a fraud, Grace

---

[16] Respondents' original response to the Motion to Compel addresses in detail Grace's failure to prove exceptional circumstances in this case, a discussion that will not be repeated here. *See* Section II (pages 8-21) of Combined Response of Foster Sear, LLP, et al., to Debtors' Motion to Compel, etc. [Docket No. 13805].

would be required to plead fraud against that individual Claimant and to do so with particularity. *See* FED. R. CIV. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").[17] Failing such particularity, Grace would not even be allowed to take discovery and the issue of consulting experts would never arise. "The particularity requirement of Rule 9 is a nullity if a [party] gets a ticket to the discovery process without identifying a single claim [of fraud against the opposing party]." *United States ex rel. Atkins v. McInteer*, ____ F3d. ____, 2006 WL 3461441, at *6 (11th Cir. 2006).[18] Yet that is exactly what Grace wants here – an open ticket to the discovery process (and an order from this Court that no Claimant will have any evidentiary privileges in such process) without even alleging, much less proving, any particular fraud by any individual Claimant. There is simply no basis whatsoever on which to grant such relief.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Respondents pray that the Motion to Compel be denied in its entirety, and that Respondents be afforded such other relief, individually and/or jointly, as to which they may be entitled.

---

[17] Federal Rule of Civil Procedure 9 is applicable to contested matters under Bankruptcy Rule 9014(c). Fed. R. Bankr. P. 9014(c).

[18] Moreover, even after pleading fraud with particularity, in order to use the crime-fraud exception to invade the attorney-client privilege a party must make a prima facie showing of proof demonstrating that the privileged communication falls within the exception. *See In re Grand Jury Investigation*, 445 F.3d 266, 274 (3rd Cir. 2006). Grace, of course, has made no such showing here.

Dated: December 15, 2006

Sander L. Esserman
Van J. Hooker
David A. Klingler
David J. Parsons
**STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,
A Professional Corporation**
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 969-4900
Facsimile: (214) 969-4999

**COUNSEL FOR RESPONDENTS**


/s/ Daniel K. Hogan
Daniel K. Hogan (ID no. 2814)
**THE HOGAN FIRM**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656-7540
Facsimile: (302) 656-7599
E-mail: dan@dkhogan.com

**LOCAL COUNSEL FOR RESPONDENTS**