# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

_____

In Re:                                                )

                                                      )

W.R. Grace & Co., *et al.,*                           )

                                                      )

                    Debtors.                          )

                                                      )

_____   )

In Proceedings for a Reorganization under
Chapter 11

Case No. 01-01139-JKF
Re:  DI  13703


### THE MMWR FIRMS' BRIEF IN OPPOSITION TO THE "ADDITIONAL BRIEF OF W. R. GRACE IN SUPPORT OF W.R. GRACE'S MOTION TO COMPEL CLAIMANTS TO RESPOND TO THE W.R. GRACE PERSONAL INJURY QUESTIONNAIRE"


The MMWR Firms, [1] on behalf of their respective asbestos personal injury claimants, and

by and through their own counsel, MMWR, [2] hereby submit this Brief in Opposition[3] to the

Additional Brief of W.R. Grace ("Grace's Additional Brief").

---

[1] For the purposes of this Brief, the "MMWR Firms" are defined as follows:  (i) Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, A Professional Law Corporation; (ii) Waters & Krauss, LLP; (iii) Hobin, Shingler & Simon, LLP ("Hobin Shingler"); (iv) Paul, Hanley & Harley, LLP; (v) Early Ludwick & Sweeney; (vi) Harowitz & Tigerman; (vii) the Wartnick Law Firm; (viii) Wise & Julian, P.C.; (ix) Rose, Klein & Marias, LLP; (x) Erly & Strauss; (xi) Clapper, Patti, Schweizer & Mason; (xii) Bergman & Frockt; and (xiii) The Grace Certain Cancer Claimants.

[2] The law firm of Montgomery, McCracken, Walker & Rhoads, LLP ("MMWR") represents these noted law firms and, except with respect to the limited representation of "The Grace Certain Cancer Claimants," MMWR does not directly represent any of the individual claimants who are directly represented only by these firms.

[3] The MMWR Firms were not initial respondents to Grace's motion to compel disclosure of consulting experts because that motion was not made against the MMWR Firms, but only against other firms.  However, during the course of the hearing on the Debtor's motion, it became clear to the MMWR Firms, who were represented at the hearing on different issues, that Grace was advocating a position not supported by applicable law and threatening some of the most important protections and privileges of the lawyer client relationship.  Because the Court has stated that it will rule in an identical fashion to any future motions made against other firms and claimants, the MMWR Firms submit this brief in opposition to the Debtor's position.  The MMWR Firms adopt and incorporate by reference as if fully set forth herein the arguments set forth in opposition to the discovery of consulting expert reports in the <u>Combined Response of Foster & Sear, LLP, Williams Bailey Law Firm, LLP, Law Offices of Peter G. Angelos, P.C., Provost Umphrey Law Firm, LLP, Baron & Budd, P.C., Silber Pearlman, LLP, and LeBlanc & Waddell, LLP to the Debtors' Motions to Compel Asbestos Personal Injury Claimants Represented by (i) Edward O.</u>

Continued…

I.    **INTRODUCTION**

Grace's Additional Brief is a continuation of Grace's efforts to mislead and confuse the Court on the issue of discovery of non-disclosed non-testifying consulting experts.  Grace continues to seek discovery that is irrelevant, illogical, and specifically prohibited by Fed.R.Civ.P. 26(b)(4)(B).

More specifically, Grace attempts to divert the attention of the Court, and the resources of the Debtor's Estate, to an impossible "trial" of a "screening process."  As explained below, there is nothing inherently wrong with the B-reader screening process that Grace has itself proposed to this Court, and that Grace is itself using.  The evils complained of by Grace involve individual doctors and screening companies as to which the remedy is preclusion and <u>not</u> the violation on a grand scale of the controlling Federal Rules of Civil Procedure for expert discovery – namely, Fed.R.Civ.P. 26(b)(4)(B).

Grace's arguments are also illogical because relying on particularized individual circumstances as the basis for an impermissible global discovery order.  Grace identifies concerns – conclusory and as yet unproven as to any individual claimants – involving 1.4% of the claimants' law firms and 6.5% of the claimants, and Grace then illogically relies on this conclusory and unproven microcosm as the basis for a legally unsupportable global discovery order that Grace seeks to impose on 100% of the law firms and 100% of the claimants.

---

….Continued

Moody, P.A., Foster & Sear, LLP., Motley Rice, O'Brien, PLLC, Provost Umphrey, LLP and The Law Offices of Peter G. Angelos, P.C. [Docket no. 13620], and (iii) Baron & Budd, P.C., Silber Pearlman, LLP, and LeBlanc & Waddell, P.C. [Docket No. 13628] to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire.

In support of its position, Grace cites to only three cases regarding Fed.R.Civ.P. 26(b)(4)(B).  Grace's Additional Brief at p. 7.  All three of these cases – <u>Derrickson v. Circuit City Stores, Inc.</u>, <u>In re Silica Prods. Lid. Litig.</u>, and <u>Agron v. Trustees of Columbia Univ.</u> – involved cases where parties the party opposing discovery had already both disclosed the identity of the expert and had already relied on the expert in some fashion.  Therefore, these cases provide no precedent for the discovery of non-disclosed<u>, non-testifying</u> experts Grace cites to no case as precedent for the discovery of non-disclosed, <u>non-testifying</u> experts.  Moreover, Grace entirely ignores the countless cases –19 of which are identified and discussed below – that prohibit the discovery of non-disclosed<u>, non testifying</u> experts as now sought by Grace.


## II.    <u>LEGAL ARGUMENT</u>


### A.    **FEDERAL RULE OF CIVIL PROCEDURE 26(b)(4)(B) PREVENTS GRACE FROM DISCOVERING REPORTS AND OTHER EVIDENCE <u>REGARDING NON-DISCLOSED NON-TESTIFYING EXPERTS</u>**

The Debtor's entire argument relies on emotion and is a diversion from the simple fact that the Federal Rules do not permit the discovery that it seeks.  Fed.R.Civ.P 26(b)(4)(B), incorporated into these proceedings by Federal Rule of Bankruptcy Procedure 7026, governs the extent to which a party may obtain discovery of a non-disclosed non-testifying expert.

Fed.R.Civ.P. 26(b)(4)(B) states in full as follows:

> A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial <u>only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for</u>

> the party seeking discovery to obtain facts or opinions on the same
> subject by other means.

Emphasis added.  In short, the opinions of an expert retained in anticipation of litigation

are not discoverable except in the limited circumstances set forth in Rule 35(b).

Rule 35(b) is inapplicable to the present dispute and, as explained below, there

has been no showing by Grace of "exceptional circumstances" as required to permit

discovery of a non-disclosed non-testifying expert.

### 1. With Respect to Non-Disclosed, Non-Testifying Experts "Retained or Specially Employed . . . In Anticipation of Litigation or Preparation For Trial," Discovery is Not Allowed

Grace argues that "a true consultancy relationship did not exist."  Grace's Additional

Brief at p. 3.  But Rule 26(b)(4)(B) makes no reference to a "true consultancy relationship" –

whatever that might be.  The Rule requires only that the expert in question be "*retained or*

*specially employed . . . in anticipation of litigation or preparation for trial*."  "The test to be

applied is whether, in light of the nature of the documents and factual situation in a particular

case, the experts and their information can fairly be said to have been obtained or acquired

because of the prospect of litigation."  In re Sinking of Barge "Ranger I" Casualty Near

Galveston, Tex. on May 10, 1979, 92 F.R.D. 486,489 (S.D. Tex. 1981) (citing Hercules, Inc. v.

Exxon Corp., 434 F. Supp. 136 (D. Del. 1977)).  See, also, Bank Brussels Lambert v. Chase

Manhattan Bank, 175 F.R.D. 34, 43 (S.D.N.Y. 1997) ("To conclude that an expert was hired in

anticipation of litigation, a lawsuit need not have been filed, but there must have existed 'more

than a remote possibility of litigation.'") (quoting United States v. Bell, No. 94-20342, 1994 WL

665295, *4 (N.D. Cal. Nov. 9, 1994)); Santos v. Rando Machine Corp., 151 F.R.D. 19, 21

(D.R.I. 1993) ("Whether an expert was retained 'in anticipation of litigation' depends upon the facts of each case.  It must be shown that the investigation was conducted knowing that the claim would 'likely lead to litigation.'") (quoting <u>Binks Mfg. Co. v. National Presto Indus., Inc.</u>, 709 F.2d 1109, 1110 (7th Cir. 1983)); <u>Dominguez v. Syntex Labs., Inc.</u>, 149 F.R.D. 158, 160 (S.D. Ind. 1993) ("As arranged by his attorney at the time, plaintiff visited the Cincinnati doctors after filing this action, in part, to quantify plaintiff's loss.  Therefore, the Cincinnati visit occurred in anticipation of litigation and comes within the ambit of Rule 26(b)(4).") <u>superseded by rule on other grounds as stated in</u>  <u>Simon Prop. Group, L.P. v. mySimon, Inc.</u>, 194 F.R.D. 644 (S.D. Ind. 2000) and <u>Karn v. Ingersoll-Rand Co.</u>, 168 F.R.D. 633 (N.D. Ind. 1996); <u>Eliasen v. Hamilton</u>, 111 F.R.D. 396, 401 (N.D. Ill. 1986) ("Gruy is an expert who has been 'retained or specially employed' by plaintiffs in preparation for trial.  Plaintiffs hired Gruy to prepare a report; plaintiffs furnished information to Gruy for the report; and plaintiffs paid Gruy for his services. That is all the rule requires for Gruy to become a 'captured expert.'").

In short, to the extent that consulting physicians were "retained or specially employed in. . . anticipation of litigation or preparation for trial" – as here – discovery is not allowed.  The MMWR Firms will, to the extent necessary, provide the Court with sworn declarations as to having "retained or specially employed" heretofore non-disclosed experts.

**2.     Under Rule 26(b)(4)(B) the Identification of Experts Upon Whom Parties Expect to Rely at Trial is Not Made Until the Time When Such Experts are Officially Designated; Therefore, Grace's Request for Expert Discovery is, at Best,  Premature**

The determination of which experts are "expected to be called as a witness" is not made until after each party has officially designated their trial experts, which typically does not occur until the eve of trial and after entry of a scheduling order requiring designation.  And until such designation is made, a party's non-testifying experts are entitled to Rule 26(b)(4)(B) protection. See, for example, Hoover v. United States Dep't of the Interior, 611 F.2d 1132, 1142 (5th Cir. 1980) ("Discovery is limited to trial witnesses, and may be obtained only at a time when the parties know who their expert witnesses will be."); Moore U.S.A. Inc. v. The Standard Register Co., 206 F.R.D. 72, 75 (W.D.N.Y. 2001) ("While it is true that [plaintiff] has not yet designated [the expert in question]  as a testifying or non-testifying expert, neither has the court entered a scheduling order regarding a deadline for the disclosure of the parties' respective trial experts. Until the court sets a date by which [plaintiff] must decide whether to identify [the expert in question] as one of its trial experts, [the expert in question] is entitled to the protection afforded by Rule 26(b)(4)(b)."); Bank Brussels Lambert, 175 F.R.D. at 43 ("Until [plaintiffs] affirmatively identify [the expert in question] as a testifying witness or the court sets a date by which plaintiffs must so identify [the expert] , [the expert] is entitled to the protection afforded by Rule 26(b)(4)(B); Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd. P'ship, 154 F.R.D. 202, 207 n.8 (N.D. Ind. 1993) ("Indeed, the designation of trial experts often cannot be identified until the latter stages of litigation.  Until such time as [defendant] affirmatively has to identify a testifying expert, they are entitled to assert that [the expert in question] will not be a witness.  In so doing, they operate within the spirit of Federal Rule of Civil Procedure 26(b)(4)(B).") (citing

<u>United States v. 215.7 Acres of Land</u>, 719 F.Supp 273, 278 (D. Del, 1989); <u>Virginia Elec. Power</u>

<u>Co. v. Sun Shipbuilding & Dry Dock Co.</u>, 68 F.R.D. 397, 406 (E.D. Va. 1975) ("Defendant

undoubtedly has retained certain experts to assist it in trial preparation.  The production of the

reports of such experts may be required only under the provisions of Rule 26(b)(4)(A) if such

experts are designated as trial witnesses, or under rule 26(b)(4)(B) if such experts are not

designated as trial witnesses.").

  Accordingly, Grace's request for any expert discovery, except that which forms the basis

for a claimant's claim, is premature at best.  The claims at issue are neither near "trial" nor near

any claims allowance procedure analogous to trial (which proceedings could only take place in

the District Court under 28 U.S.C. § 157(b)(5)).  Indeed, the discovery now at issue is solely with

respect to a hearing to estimate Grace's aggregate asbestos liability for plan confirmation

purposes, and as to which Grace has repeatedly acknowledged that the allowance or

disallowance of individual claims is not at issue.


   **3.**  **No "Exceptional Circumstances" Exist for Purposes of Rule**
      **26(b)(4)(B)**

  Pursuant to Rule 26(b)(4)(B) Grace may only obtain discovery by showing "exceptional

circumstances."  Grace has the burden of establishing "exceptional circumstances":

> The party seeking discovery of a non-testifying expert carries the
> burden of showing exceptional circumstances.  Courts and
> commentators have commonly identified two situations where the
> exceptional circumstances standard has been met.  The first
> situation is where the object or condition observed by the non-
> testifying expert is no longer observable by an expert of the party
> seeking discovery.  This situation has been demonstrated where
> some physical condition has deteriorated enough so that one
> party's expert may be the only expert who actually could have
> fairly observed it before its deterioration.

The second situation commonly recognized as constituting exceptional circumstances is where it is possible to replicate expert discovery on a contested issue, but the costs would be judicially prohibitive.

Bank Brussels Lambert, 175 F.R.D. at 44.  See also Hartford Fire Ins. Co. 154 F.R.D. at 208 ("A number of cases hold that 'exceptional circumstances' allowing for discovery of a non-testifying expert's opinion exist where the object or condition observed is not observable by an expert of the party seeking discovery.'") (quoting Delcaster, Inc. v. Vail Assoc., Inc., 108 F.R.D. 405 (D. Colo. 1985) and citing Dixon v. Cappellini, 88 F.R.D. 1 (M.D. Pa. 1980); Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 299 (E.D. Pa. 1980); Pearl Brewing Co. v. Joseph Shiltz Brewing Co., 415 F.Supp. 1122 (S.D. Tex. 1976)).

"It is quite clear that it will rarely be possible to make the required showing and equally clear that this was deliberately intended by the draftsmen of the rule." Eliasen, 111 F.R.D. at 402 (quoting 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2032, p. 256 (1970)).  See also Hartford Fire Ins. Co., 154 F.R.D. at 208 ("This burden has been characterized as a 'heavy one.'") (citing In re Shell Oil Refinery, 132 F.R.D. 437, 442 (E.D. La. 1990)).

Grace's premise – that "where evidence is being used to challenge plaintiffs' claim, Rule 26(b)(4)(B) does not apply" – is false, and simply ridiculous.  If Grace's premise were true, then Rule 26(b)(4)(B) would have no meaning whatsoever, because in every case, every defendant's goal in seeking discovery is to find evidence to use in challenging the plaintiff's claims.

Grace quotes this sentence from the Derrickson out of context to try to support its premise, which presents a completely different and distinguishable circumstance.  What the quotation refers to is the fact that in Derrickson, the plaintiff's designated trial expert based his testimony entirely on a series of computer instructions written and performed by his assistant.

The court held that the defendant would not be able to effectively cross-examine the expert without first obtaining discovery from the assistant.

Here, Grace argues essentially that it needs discovery from the non-disclosed consulting experts in order to show that some of these experts may have provided false (or incorrect) determinations of asbestos disease.

But Grace already possesses, or has access to, all of the underlying medical records and x-rays on which any determinations of asbestos disease was made; Grace has its own experts. The underlying data has not deteriorated, much less deteriorated to the point that the "exceptional circumstances" standard requires – i.e. to the point where Grace's experts would be unable to do their own independent review.  Indeed, Grace does not even allege such deterioration, and Grace's Brief conveniently ignores the fact that Grace is in the process of having its own experts perform their own review.  There is no risk of any fraud on the Court in the context of a fully operational adversary system with equal access to the relevant underlying x-rays, CT scan and medical records.

In short, no "exceptional circumstances" are present, because Grace already possesses (or can or will possess)[4] all of the relevant underlying data, and has the resources and available experts to perform any number of counter-diagnoses it desires.

Indeed, if none of the claimants rely upon medical evidence provided by the "tainted doctors", whose identities are well known to the asbestos bar, the Debtor and this Court, there is no reason for concern over whether a claimant previously saw a tainted doctor.  The issue is

---

[4] Indeed, had Grace timely sought to review the underlying medical data, it could have done so a long time ago.  To the extent that Grace delayed and does not yet have what it desires, its delay should not create an emergency for the claimants.

whether the asbestos disease is real; there are many safeguards in the process for determining

that issue.

**4.    Grace's Requested Relief Contravenes the Purpose and Policy of Rule 26(b)(4)(B)**

The purposes and policies furthered by Fed.R.Civ.P. 26(b)(4)(B) have been set forth in

countless Court opinions.  By way of example only, the following cases are noted.

Rule 26(b)(4)(B)'s limitation of consulting expert discovery is "designed to prevent a

party from building his case on the diligent preparation of his adversary." Moore U.S.A., 206

F.R.D. at 75 (citing Adams v. Shell Oil Co., 132 F.R.D. 437, 440 (E.D. La. 1990)). See also

Eliasen, 111 F.R.D. at 401 ("As stated by the Courts which have considered the rule, it is

designed to promote fairness by precluding unreasonable access to an opposing party's diligent

trial preparation, to prevent a party from building his own case by means of his opponent's

financial resources, superior diligence and more aggressive preparation, and more specifically, to

prevent one party from utilizing the services of the opponent's experts by means of a

deposition.").

Further, the "primary purpose" of Rule 26(b)(4)'s distinction between testifying and non-

testifying experts "is to permit the opposing party to prepare an effective cross-examination."

Hoover, 611 F.2d at 1142.  See also Moore U.S.A., 206 F.R.D. at 75 ("This Rule recognizes that

with non-testifying experts, there is no need to obtain discovery for effective cross-

examination.").  Non-designated consulting expects will, by definition, not be testifying at trial.

Therefore, one of the reasons for allowing expert discovery – to enable cross examination – does

not apply to the discovery that Grace seeks here.

In Dominguez, 149 F.R.D. at 163, the Court held that "Rule 26(b)(4)(B) protects the

retaining counsel's right to decide which of several retained expert to put on the witness stand

based on the expert's clarity of presentation, ability to withstand cross-examination, or other strategic concerns without fear that the non-testifying expert's information will get into the 'wrong hands."

In Eliasen, the Court held as follows:

> Even if we assume that plaintiffs chose not to use [the consulting expert in question] because he did not tell them what they wanted to hear, this is not only perfectly permissible, but as indicated above, the very purpose of the rule is to protect plaintiffs from having [the expert in question's] testimony used by their opponent.

Another purpose of Rule 26(b)(4)(B) is "to allow litigants to consult experts in order to evaluate a claim 'without fear that every consultation with an expert may yield grist for the adversary's mill.'"  Moore U.S.A, 206 F.R.D. at 75 (quoting Rubel v. Eli Lilly and Co., 160 F.R.D. 458, 460 (S.D.N.Y. 1995)).  Allowing Grace to invade the claimants' consulting expert privilege would have a chilling effect on the ability of litigants to prepare their own case.

      **B.    GRACE'S ATTEMPT TO PUT A PARTICULAR "SCREENING PROCESS" ON TRIAL IN THIS CURRENT ESTIMATION PROCEEDING – AND TO SEEK DISCOVERY OF NON-DISCLOSED NON-TESTIFYING EXPERTS IN CONNECTION WITH THAT ATTEMPT – IS ILLOGICAL, IRRELEVANT, AND A COLOSSAL WASTE OF THE RESOURCES OF THE DEBTOR'S ESTATE AND OF THIS COURT**

Grace's Additional Brief, which purports to articulate grounds for discovery of non-disclosed non-testifying experts, ignores all of the controlling case law under Fed.R.Civ.P. 26(b)(4)(B), but Grace does make repeated references to alleged defects in the "screening process."

It is apparent from Grace's Additional Brief, and from earlier Grace submissions that Grace intends to put the "screening process" on trial in this case.  In addition to being legally

impermissible, Grace's attempt in this regard is illogical, irrelevant, and a colossal waste of the resources of the Debtor's estate and of this Court.

To explain, even if the screening process of a particular doctor, or a particular screening company, is conclusively proven to be unreliable, that proof would be utterly irrelevant to the ultimate issue of whether or not the individual claimant screened by that particular doctor or screening company does or does not have asbestos disease and that proof would be equally irrelevant to the present estimation proceeding because: (i) Grace has undertaken to litigate the entire estimation proceeding by independently evaluating each claim; (ii) there is no permissible evidentiary basis on which the conduct of one particular doctor, or one particular screening company, can be imputed to other doctors or other screening companies; and, (iii) there is no permissible evidentiary basis on which the conduct of one particular doctor, or one particular screening company, can be used to determine or discount the legitimacy of any claim – whether for estimation purposes or for allowance or disallowance.  To paraphrase Judge Jack, even if Grace could prove that the Plaintiffs do not have diagnoses, it is not the same as proving that the plaintiffs do not have asbestos disease.  See Order No. 29: Addressing Subject-Matter Jurisdiction, Expert Testimony and Sanctions, In re Silica Products Liability Litigation (S.D.Tex., MDL 1553), p. 237.

Grace is already in the process of collecting, through the Questionnaire process, copies of x-rays, pathology reports, high resolution CT-scans, and other medical records, and Grace has the additional opportunity to obtain access to original x-rays if need be.

Grace's review of these underlying "facts" reasonably and appropriately gives Grace the opportunity to do its own "screening."  Undoubtedly Grace will use its results to make its own arguments with respect to estimation, and the expenditure of resources of the Debtor's Estate in

this exercise is at least presumptively reasonable.  Moreover, Grace's own screening, and/or

other discovery, may give Grace grounds to move this Court to preclude, subject to reasonable

rights of presenting additional substantiation, B-readings or reports of individually discredited

doctors or screening companies.

  But to put the entire screening process itself "on trial" is a wasteful, procedurally

unworkable, and irrelevant undertaking.  As already noted, there is no permissible evidentiary

basis on which the conduct of one particular doctor, or one particular screening company, can be

imputed to other doctors or other screening companies.  It may be appropriate for Grace to

challenge individual doctors or screening companies, but the facts and the evidence as to each

such doctor or screening company will have to be evaluated on a case by case basis.

  Similarly, there is no one "screening process" any more than there is one "plaintiffs' bar"

or one universe of "the law firms."

  Grace is again engaging in impermissible over-generalizations and grandiose accusations

of global misconduct by association or by implication.  Grace's present arguments are analogous

to its earlier efforts to obtain an Order that would have imposed extreme discovery burdens on all

law firms based on a few isolated examples of conduct by a very few law firms.  The Court

properly rejected that request by Grace, and the Court should do the same with the present

request.

  An example of Grace's guilt by association and over-generalization is when Grace refers

to "the plaintiffs' bar" on page 2 of its Additional Brief, and when Grace then proceeds

throughout its Additional Brief to castigate the entire asbestos "plaintiff's bar" as if all asbestos

plaintiff's lawyers were all doing all of the same things.  Similarly, Grace's reference to a Wall

Street Journal essay (Grace's Additional Brief at p. 10, fn. 27) that attacks the conduct of one

individual lawyer is presented with the obvious implication that that one lawyer's conduct is representative of the entire asbestos "plaintiffs' bar."  This kind of implied guilt by association is both offensive and demonstrably false.

According to Grace's original July 17, 2006 Motion to Compel, it sought discovery from "approximately 1,000 law firms."  (Grace Motion to Compel of July 17, 2006, at p. 19.) However, Grace's Additional Brief now references only 14 specific law firms in footnote 17 on p. 6.  Grace's unspecified reference to the "plaintiffs' bar" is a particularly grotesque over-generalization in the context of Grace having identified only 14 law firms out of "approximately 1,000 law firms."  Moreover, the 14 firms identified by Grace are "accused" only of having used "one or more of the doctors who have been found to be unreliable or have been discredited." Grace's Additional Brief, fn. 17, at p. 6.  The use of doctors whose conduct has been "discredited" in varying respects does not in anyway itself prove anything about the actual merits of any individual's asbestos claim, nor does such use in and of itself establish any impropriety on the part of any law firms.

Grace's request for over-generalized relief as to an over-broad universe based on conclusory allegations involves an unrepresentative microcosm of approximately 1.4% of all the law firms involved on behalf of asbestos claimants in this bankruptcy (14 law firms ÷ 1000 law firms = .014 or 1.4%).  Even using Grace's claimed statistic of 52.3% of "approximately 16,000 questionnaires," the net total is 8,368 claimants (52.3% x 16,000 = 8,368) which represents only about 6.5% of the total population of "approximately 129,000 persons holding pre-petition litigation personal injury claims" as asserted by Grace (Grace's Motion to Compel of July 17, 2006, at p. 6, fn. 1) (8,368 ÷ 129,000 = .064868 or approximately 6.5%).

Stated differently, alleged and unproven conduct by 1.4% of the law firms in this case, involving 6.5% of the claimants in this case, is not a basis on which this Court can properly take extraordinary and legally unsupportable action as requested by Grace with respect to 100% of the law firms and 100% of the claimants.

Moreover, as Grace concedes, "[this] is not to say that B-reading is itself inherently unreliable." Grace's Additional Brief at p. 12. Grace must concede the inherent reliability of B-reading because Grace has itself proposed the use of B-readers to this Court. See, Grace's proposed Order accompanying its Notice of Failure to Reach Agreement and Request for Entry of Proposed Protocol Concerning Production of Chest X-rays of Asbestos Personal Injury, Pre-Petition Claimants with Non-Mesothelioma, Malignant Claims: "The x-rays shall be reviewed by a panel of three or more independent B-readers." (A copy of Grace's proposed Order is attached as Exhibit A.)

In short, it is apparent that Grace's argument does not involve B-reading in general; nor is Grace attacking the methodology of B-reading which is a standardized and accepted practice already proposed to this Court by Grace. Rather, Grace is using complaints as to specific individual B-readers, and/or specific individual screening companies, as a means to try to obtain discovery regarding other doctors, never disclosed to Grace and used by claimants' counsel in reasonable reliance on the protections provided pursuant to Fed.R.Civ.P. 26(b)(4)(B), and the work product privilege generally.

Grace's argument that "we may as well not proceed", as articulated at the December 5, 2006 hearing, Tr. at p. 160, lines 9-10, is simply not a legal basis to disregard the Federal Rules, the context of these proceedings, and reason.

**C.     GRACE'S ARGUMENTS ABOUT THE SCREENING PROCESS ARE
        IRRELEVANT TO THE RIGHTS OF ALL FEDERAL COURT
        LITIGANTS TO MAINTAIN THE CONFIDENTIALITY OF NON-
        DISCLOSED AND NON-TESTIFYING CONSULTING EXPERTS**

Grace's Additional Brief essentially argues as follows:  some individual doctors (or screening companies) are bad; therefore the screening process of all of "the law firms" "perpetrates a fraud on the court" (Grace's Additional Brief at p. 3); therefore, for every asbestos claimant of every law firm, every doctor ever seen by that claimant for any reason involving asbestos must be disclosed, and every report of every such doctor must also be disclosed, regardless of the protections afforded to all Federal Court litigants under Fed.R.Civ.P. 26(b)(4)(B).

This is ridiculous.

To the extent that individual doctors have already been disclosed on any questionnaires, there may be an argument that – as to such <u>already disclosed</u> doctors – Grace has some entitlement to discovery of reports generated by those particular doctors as to those particular claimants.  <u>See</u> Grace's Additional Brief at p. 5, fn. 15; and at p. 7, fn. 20.

But any such arguable entitlement on Grace's part has no connection whatsoever to the discovery of <u>non-disclosed</u> non-testifying experts used by counsel.  To use the familiar words of an old expression:  Grace is mixing apples and oranges when it tries to treat disclosed experts and non-disclosed experts as if they were the same.

-16-

Grace further confuses matters with the conclusory overgeneralization that "the law firms and claimants themselves . . . have thrust the screening practice into the center of this case by relying upon the screening results to file and support their claims."  Grace's Additional Brief at p. 5.

Grace assumes without evidence or logic that all "law firms" used the same "screening process" for all "claimants."

Moreover, as already explained, Grace is in the process of completing its own screening process as to all present claimants.  Grace's simultaneous attempt to challenge an entire "screening process" is in the first instance duplicative, but, more importantly, unworkable, unmanageable, and completely irrelevant.

There is nothing inherently wrong with a B-read screening process – as noted Grace is engaged in the same process.  And, there may be defects in a B-read screening process as applied by particular doctors – but, if so, the solution is to address that particular problem and not to demand discovery about every non-disclosed non-testifying expert for every claimant of every law firm in complete contravention of applicable law, including, without limitation, Fed.R.Civ.P. 26(b)(4)(B).

### D.    GRACE IGNORES THE DISTINCTION BETWEEN THE PRESENT ESTIMATION PROCESS, AND A FUTURE CLAIMS ALLOWANCE PROCESS

Grace argues that we are already at the <u>Daubert</u> stage of these proceedings.  <u>See</u>, for example, Grace's Brief at p. 3 and p. 12.  Even if <u>Daubert</u> could be applied in the context of allowance of these state law claims (a contention with which the MMWR Firms disagree), this

case is nowhere close to the <u>Daubert</u> stage.  The present stage of proceedings is estimation – a procedure wholly independent from the claim allowance process, and a stage that involves no determinations whatsoever regarding the merits of individual claims or evidence relating thereto. The "Daubert stage" of a proceeding does not arrive until the eve of trial – when the parties have identified all testifying experts, and when the expert reporting and discovery process is complete.

> **E.     THE COURT SHOULD EXEMPT MESOTHELIOMA CLAIMANTS FROM ANY DISCOVERY OF NON-DISCLOSED CONSULTING EXPERTS**

As the Court correctly and correctly ruled on December 5, 2006, there is no relevance to other medical history in the case of mesothelioma, at least in the vast majority of cases where a definitive diagnosis is obtained through a pathology report.  The "screening process" complained of by Grace has no relevance to mesothelioma claimants.  There is no basis articulated by Grace for the Court to reconsider this ruling, and the Court should not change its ruling.  Moreover, the concerns expressed by Grace have no relevance to mesothelioma diagnosed by a pathology report.

> **F.     <u>CONCLUSION</u>**

All parties in this case oppose fraud.  The MMWR Firms and the principles of those firms have fought the battle to ensure that legitimate, truly sick claimants recover fairly for their injuries for many years.  The testimony of Mr. Kazan before Congress, relied upon extensively by the Debtor here, is merely one example of their efforts in this regard.

However, here the Debtor is using this issue as a mere pretext for destroying the attorney work product privilege in all cases in an impermissible way.

Grace's effort to tar the planitiffs' bar, or worse, the truly ill claimants, and deflect attention away from its own wrongful conduct is deplorable.  It is Grace's conduct that properly is at issue in this case.


Dated:  December 15, 2006                     MONTGOMERY, MCCRACKEN, WALKER &
                                              RHOADS, LLP


                                              By:      /s/ Noel C. Burnham
                                                     Noel C. Burnham, Esquire (DE 3483)
                                                     Natalie D. Ramsey, Esquire (PA only)
                                                     Leonard A. Busby, Esquire (PA only)
                                                     300 Delaware Avenue, Suite 750
                                                     Wilmington, DE 19801
                                                     (302) 504-7800
                                                     (302) 504-7820 (facsimile)

                                                     and

                                                     123 South Broad Street
                                                     Philadelphia, PA 19109
                                                     (215) 772-1500
                                                     (215) 772-7620 (facsimile)

                                                     Attorneys for the "MMWR Firms"