IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

Objection Deadline: January 5, 2007 at 4:00 p.m.
Hearing Date: January 23, 2007 at 8:30 a.m.

## W.R. GRACE & CO.'S MOTION TO QUASH
## 30(b)(6) DEPOSITION NOTICE AND FOR A PROTECTIVE ORDER

The Future Asbestos Claimants ("FCR") and Official Committee of Asbestos Personal

Injury Claimants ("ACC") (together the "Committees") have notified W.R. & Company

("Grace") that they intend to take an extensive series of Rule 30(b)(6) depositions. (Notice of

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Rule 30(b)(6) Deposition of W.R. Grace & Co., et al. ("Notice") (attached as Exhibit A).) The

proposed depositions would cover a wide array of topics, from Grace's asbestos claim reserve

calculations (*Id.* at 7, ¶ 1), to information regarding Grace products, including alleged exposures

to asbestos and locations where the asbestos-containing products were used (*Id.* at ¶¶ 3, 7, 8, 9,

and 10), to yet another effort to discover Grace's attorneys' mental impressions and reasons for

settling claims (*Id.* at ¶¶ 2, 4, 5, and 11). Their notice is fundamentally flawed because it seeks

to breach the attorney-client privilege, unnecessarily burden Grace, duplicate previous discovery,

and invade the province of the experts designated in this case.

- The Committees' requests for a corporate representative witness to testify about Grace's estimates and calculations of its liability for asbestos tort claims (Ex. A, ¶ 1) seeks to invade both: (1) the attorney-client privilege; and (2) the province of the testifying experts in this matter who will be offering opinions on that very issue. It is also cumulative of discovery previously provided.

- The Committees' requests for a corporate representative witness to testify about job sites, the identity of Grace products, sales records, and related topics is cumulative and needlessly burdensome discovery. (Ex. A, ¶¶ 3,7,8,9,10) Grace has already granted wide access to its document repository, created products lists and answered written discovery on these identical issues.[2] To the extent the Committees want Grace to further review thousands of pages of the same documents and answer questions already provided by the documents (such as the name of Grace products), that is an abuse of the Rule 30(b)(6) process.

- The Committees' requests for a corporate representative witness to testify concerning the thought process, trends, and criteria used in settling Grace's pre-petition asbestos personal injury claims implicate privileged subject matters. (Ex. A, ¶¶ 2,4,5,6, & 11). But even putting that aside, the Committees have already filed a motion to compel discovery concerning the settlement advice provided by Grace's lawyers. Grace

---

[2]    (*See, e.g.*, Product Appendix (attached as Exhibit B); Supplemental Product Appendix (attached as Exhibit C); W.R. Grace & Co.'s Answers & Objections to Official Committee of Asbestos Personal Injury Claimants' First Set of Interrogs. Directed to the Debtors at 9-10 (answering interrogatory requesting information on "every Asbestos-Containing Product which you have ever manufactured, installed, sold, distributed, or marketed") (attached as Exhibit D); W.R. Grace & Co.'s Resp. to the Official Committee of Asbestos Personal Injury Claimants' First Set of Requests for Admission & Supplemental Interrog. Directed to the Debtors at 12-16 (answering requests for admission pertaining to job sites, products, and estimates of the numbers of individuals exposed to asbestos products (attached as Exhibit E).)

could have refused to provide any discovery in response to that motion, but instead negotiated in good-faith a compromise under which it agreed to make available for deposition the three people who know the most about its pre-petition settlements — current and former in-house counsel David Siegel, Robert Beber, and Jay Hughes. This is on top of the fact that these same people testified extensively on these issues in the *Sealed Air* litigation, as part of this bankruptcy. Despite having negotiated this compromise, the Committees now have decided to pursue their carry-over Rule 30(b)(6) requests on the same subjects. There is no need or justification for this duplicative discovery.

Accordingly, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Grace hereby moves for a protective order and respectfully requests that this Court quash the FCR and ACC's deposition notice.

## Argument

Under Federal Rule of Civil Procedure 26(c), the Court may enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" including by ordering "that the disclosure or discovery not be had." The Court has broad discretion to limit discovery. *See Crawford-El v. Britton*, 523 U.S. 574, 598-99 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery. . . . Additionally, upon motion the court may limit the time, place and manner of discovery, or even bar discovery altogether on certain subjects, as required 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.' Rule 26(c)."); *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990) ("*[e]ven if relevant*, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking the information") (emphasis in original).

In order to be entitled to Rule 30(b)(6) depositions, claimants must meet two requirements. First, the information they seek must not be privileged. *See* Fed. R. Civ. P.

3

26(b)(1) ("Parties may obtain discovery regarding any matter, ***not privileged***, that is relevant to the claim or defense of any party" and that is "reasonably calculated to lead to the discovery of admissible evidence") (emphasis added).   Second, the requested discovery must not be cumulative, duplicative, or unduly burdensome:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules . . . shall be limited by the court if it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2).  These rules apply to 30(b)(6) depositions. *See, e.g., Micro Motion*, 894 F.2d at 1328 (quashing 30(b)(6) deposition subpoena that sought testimony on irrelevant subjects); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 519 (N.D. Okla. 2003) (granting motion for protective order where 30(b)(6) requests were irrelevant); *Novartis Pharms. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 163 (D. Del. 2001) (quashing 30(b)(6) deposition as cumulative); *Caban v. Sedgwick County Sheriff's Dept.*, 2000 WL 1480481 (D. Kan. May 18, 2000) (attached as Exhibit F) (quashing 30(b)(6) deposition as unduly burdensome).

Here, the Claimants' notice fails both requirements.

## I.   THE COURT SHOULD ENTER A PROTECTIVE ORDER BECAUSE THE 30(b)(6) DEPOSITION NOTICE SEEKS CUMULATIVE AND DUPLICATIVE DISCOVERY.

The Court may limit discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2).  Courts regularly bar depositions where a party's witnesses already have testified to all the information that would be learned if an additional

4

deposition were taken. For example, in *Novartis*, a party sought to compel a Rule 30(b)(6) deposition of a witness on a topic for which a fact witness had previously testified extensively. 203 F.R.D. at 162-63. This fact witness already had testified about the proposed 30(b)(6) topic for over 80 pages. The court concluded that another deposition would be cumulative and denied the motion to compel. *Id.*; *see also Padana Assicurazioni-Societa Azioni v. M/V Carribbean Express*, 1999 WL 30966, at *2 (E.D. La. Jan. 21, 1999) (attached as Exhibit G) ("Plaintiffs have already conducted a Rule 30(b)(6) deposition of the corporate representative they selected, and defendants have not demonstrated that another such deposition would not be cumulative or duplicative or that they did not have ample opportunity in the mate's deposition to obtain the same information they now seek, so that this proposed discovery appears appropriately prohibited pursuant to Fed. R. Civ. P. 26(b)(2)(i) and (ii)."). A similar situation has presented itself here.

### A.     Reserve Topics

The Committees demand a witness to testify on Grace's behalf to the following: "For the years 1997 to the present, Grace's estimates, figures, projections, and calculations of its liability for Asbestos Tort Claims for both external (*e.g.*, SEC reporting) and internal purposes, including the estimates of Asbestos Tort Claim liability under Grace's plan of reorganization." (Ex. A, ¶ 1). They already have this testimony. In 2002, as part of the *Sealed Air* litigation, the ACC deposed Grace's former general counsel at length about all of the topics for which they now seek discovery. As indicated by Committees' briefing on their motion to compel production of documents, the Committees already have received extensive 30(b)(6) testimony on the issue of reserve calculations. (*See* Mot. of the Official Committee of Asbestos Personal Injury Claimants to Compel Production of Documents (Docket No. 13598) (Nov. 7, 2006) at 9 n.5 (discussing

testimony of Robert Beber and Jay Hughes regarding the basis of calculations in Grace's 10k-5 filings and the basis for Grace's internal estimates of its asbestos liability.)

Moreover, the Bankruptcy Plan's estimation of liability and the various SEC 10-Ks speak for themselves. Despite this, Grace is prepared to take even further steps, by providing a declaration confirming the basis set forth in its SEC 10-K disclosures for its reserve disclosures for the time period after *Sealed Air*. This should provide the Committees all of the information they need, but in the least burdensome manner.

Grace's reason for requesting this approach is not simply because the testimony is cumulative and burdensome on its face. As discussed in Section II-A below, most of this information is privileged. Given the largely cumulative nature of this testimony, and Grace's willingness to provide alternative means of obtaining any truly relevant, non-privileged information, these alternative means of discovery are preferable. *See SmithKline Beecham Corp. v. Apotex Corp.*, 2004 WL 739959 at * 3 (E.D. Pa. Mar. 23, 2004) (attached as Exhibit H) (ordering party to serve interrogatories rather than conduct a 30(b)(6) deposition; determination "guided by which device would yield most reliably and in the most cost-effective, least burdensome manner information that is sufficiently complete to meet the needs of the parties and the court in a case like this") (citation and quotations omitted); *Exxon Research & Eng'g Co. v. United States*, 44 Fed. Cl. 597, 601 (1999) (holding contention interrogatories were more appropriate than 30(b)(6) deposition, in part because "a deposition of an attorney should be avoided until other possible methods for discovery are attempted and found unsatisfactory").

## B.    Product Information

The Committees demand a corporate representative to testify concerning the following topics:

- "The process and procedures, within Asbestos Tort Claims, for identifying Jobsites, Asbestos-related diseases, and exposure to your Asbestos-Containing Products." (Ex. A at 7 ¶ 3.)

- "The Asbestos-Containing Products that Grace has ever manufactured, installed, purchased, sold, distributed, or marketed, including, but not limited to:

    a.    the brand name(s) of the product;

    b.    the date the product first went into production;

    c.    the last date the product was produced;

    d.    the last date the product was sold;

    e.    all manufacturing locations;

    f.    dates of manufacture at each location;

    g.    the percentage of Asbestos contained in each such product, and the dates and all reasons for any modifications thereto;

    h.    the type(s) of Asbestos contained in, and any chemical analysis of the composition of, such product;

    i.    The specific source of Asbestos contained in each such product, including dates of procurement;

    j.    the color, physical characteristic, and appearance of the product;

    k.    a full and precise description of all forms of the package in which the product was sold or distributed, including, but not limited to, type of package, size, color(s), and writings thereon;

    l.    all names under which the product was sold, including by licenses or re-branding; and

    m.    the number and date of each patent or patent application relevant to the product." (*Id.* at ¶ 7.)

- "The number and identity of persons, including but not limited to, individuals, contractors, corporations, companies, partnerships, government units, retailers, wholesalers, and/or distributors, to whom any of Grace's Asbestos-Containing Products were sold, supplied, delivered, used, applied, repaired, maintained, installed, distributed, erected, constructed, manufactured, built, sent, or placed on a ship or other means of transportation." (*Id.* at ¶ 8.)

- "The Jobsites to which any of Grace's Asbestos-Containing Products were sold, supplied, delivered, used, applied, repaired, maintained, installed, distributed, erected, constructed, manufactured, built, sent, placed on a ship or other means of transportation, or which have ever been identified by an Asbestos Claimant or other person as a place where Grace Asbestos-Containing Products gave rise to exposure to asbestos." (*Id.* at ¶ 9.)

- "The number and identity of invitees to any Jobsite or premises in which Grace's Asbestos-Containing Products were sold, supplied, delivered, used, applied, repaired, maintained, installed, distributed, erected, constructed, manufactured, built, sent, or placed on a ship or other means of transportation." (*Id.* at ¶ 10.)

There can be no question that any Rule 30(b)(6) witness would be entirely cumulative of discovery already produced by response to interrogatories, requests for admission and document requests. Included in those responses were a detailed products list, responses to specific questions regarding job sites, and responses to questions regarding product distribution. (*See* Exs. B & C (product appendices); Ex. D at 8-10 (job sites and product distribution); Ex. E at 13-16 (questions regarding job sites and exposures).) To the extent those written discovery responses do not answer all of the Committees' questions, the Committees have been granted access to the Grace document repository, as well as a list of documents produced to the EPA, and sample discovery responses from other cases.

Critically, the relevant information is as easy to access for the Committees as it is for Grace. The Committees may not refuse to review the documents for this information, and then demand that a Grace representative familiarize himself with millions of pages of documents so that person can be asked questions. *See Alexander v. FBI*, 186 F.R.D. 137, 143 (D.D.C. 1998) ("persons under Rule 30(b)(6) must be prepared and knowledgeable but they need not be subjected to a 'memory contest'"); *Resolution Trust Corp. v. Kazimour*, 1993 WL 13009325, at *3 (N.D. Iowa Nov. 16, 1993) (attached as Exhibit I) ("Nothing in *Rule* 30(b)(6) requires a party to 'create' a witness in response to a 30(b)(6) notice. While some courts have imposed an obligation on parties to adequately prepare such witnesses, this requirement is not the same as

8

finding persons and educating them as to the facts so that they may later be deposed."). This is especially so where this information has been reviewed in litigation for years and years by members of the ACC.

The bottom line is simple. Between the written discovery and documents produced, the Committees have all they need. There can be no purpose for further depositions on this topic other than to harass Grace and waste its resources and time.

### C.    Historical Litigation Settlements

The Committees demand a witness to discuss:

- "The process and procedures by which Grace settled, defended, litigated, or otherwise resolved Asbestos Tort Claims." (Ex. A at 7 ¶ 2.)

- "The historical trends of Grace's resolution of Asbestos Tort claims, including the number of Claims filed (by disease category) against Grace from 1999[sic]-2001, the number of Claims settled (by disease category) by Grace from 1990-2001, and the average Claim settlement amount (by disease category)." (*Id.* at ¶ 4.)

- "Grace's criteria or decision process for determining when to settle or litigate Asbestos Tort Claims, including evidence considered by Grace before it would offer an Asbestos Tort claimant money to settle." (*Id.* at ¶ 5.)

- "The value of Asbestos Tort Claims in settlement, and what factors Grace considered important in evaluating an Asbestos Tort Claim for purposes of settlement." (*Id.* at ¶ 6.)

- "Grace's database(s) regarding or relating to Asbestos Tort Claims, including, but not limited to, the creation of the database(s), the meaning of each field or code, how the database was coded, how and when the information in the database was obtained, compiled, reviewed, input, amended and updated, and the source of each piece of data in the database." (*Id.* at ¶ 11.)

This testimony is also cumulative of previous testimony and document productions. First, Grace has produced its tort claims database, that contains all of its settlement values and corresponding disease categories. Second, the ACC already has taken extensive 30(b)(6) testimony regarding the terms of Grace's historical settlements of asbestos claims. (*See* Mot. of

the Official Committee of Asbestos Personal Injury Claimants at 8-13 (Docket No. 13598) (Nov. 7, 2006) (quoting deposition testimony on litigation strategy and the reasons for settling claims)). Third, Grace recently agreed to make three of its in-house counsel or former in-house counsel, who are the most knowledgeable Grace employees on this topic, available to discuss their understanding of Grace's settlement strategy. To require Grace to put forward 30(b)(6) witnesses (who may very well be the same people) is clearly duplicative and harassing, and should not be countenanced. *See Novartis*, 203 F.R.D. at 162-63 (denying motion to compel 30(b)(6) deposition where fact witness had testified already about the topic for over 80 pages); *Padana*, 1999 WL 30966 at * 2 (denying 30(b)(6) deposition where plaintiffs already had deposed the corporate representative and another witness be cumulative and duplicative).

## II.     THE COURT SHOULD ENTER A PROTECTIVE ORDER BECAUSE THE 30(b)(6) DEPOSITION NOTICE SEEKS PRIVILEGED COMMUNICATIONS AND WORK PRODUCT.

The attorney-client privilege prevents the disclosure of communications made between a lawyer and a client for the purpose of securing legal advice. *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994) (listing elements of attorney-client privilege). As the Supreme Court has recognized, "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege "encourage[s] full and frank communication between attorneys and their clients;" "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client;" "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out;" and "encourage[s] clients to make full disclosure to their attorneys." *Id.* In addition, the work-product doctrine "shelters the mental processes of the attorney, providing a privileged area

10

within which he can analyze and prepare his client's case." *In re Cedant Corp. Sec. Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003) (quoting *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975)). The protection also extends to the attorney and agents of the attorney and client who are preparing documents in case of litigation. *Id.*

The ACC and FCR seek information relating to Grace's reserve calculations and Grace's historical resolution of asbestos claims.    But any testimony on these subjects would be privileged.  Accordingly, Grace is entitled to a protective order on these subjects.

A.    **Reserve Calculations Are Attorney-Client Privileged And Protected Work Product.**

The Committees seek "estimates, figures, projections, and calculations" of liability that were prepared by Grace's attorneys in anticipation of — and as part of — ongoing litigation. Because the reserve calculations are privileged, Claimants are not entitled to this discovery. *See* Fed. R. Civ. P. 26(b)(1).

As set forth in Rule 26(b)(3), claimants are not entitled to discovery of work product except upon a showing of "substantial need." Fed. R. Civ. P. 26(b)(3).  Reserve calculations prepared by attorneys in anticipation of litigation fall squarely within this prohibition and are shielded from discovery.  In *Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, 139 F.R.D. 609 (E.D. Pa. 1991), for instance, the court held that both individual reserves — calculations of liability for individual lawsuits — and aggregate reserves — calculations of a company's total liability — were protected. *Id.* at 614-16.  Individual reserves were protected because they "reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim.  By their very nature they are prepared in anticipation of litigation, and consequently, they are protected from discovery as opinion work-product." *Id.* at 614.  Similarly, aggregate reserve information is protected because:

the aggregate reserve figures may give some insight into the mental processes of the lawyers in setting specific case reserves. This is inevitable considering that these aggregates and averages are based upon the attorney's evaluations of the value of specific claims . . . . They could not be formulated without the attorneys' initial evaluations of specific legal claims. Thus, it is impossible to protect the mental impressions underlying the specific case reserves without also protecting the aggregate figures.

*Id.* at 614-15. Consequently, the court held that the reserve calculations were protected from discovery.

Other courts agree. *See Ohio Mgmt., LLC v. James River Ins. Co.*, 2006 WL 1985962, at * 2 n.10 (E.D. La. July 13, 2006) (attached as Ex. J) ("Where the reserves have been established based on legal input, the results and supporting papers most likely will be work-product and may also reflect attorney-client privilege communications. Whether aggregate or individual, case reserve figures reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim. By their very nature they are prepared in anticipation of litigation, and consequently, they are protected from discovery as opinion work product"); *Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, 2006 WL 355289, at *3 (N.D. Ohio Feb. 15, 2006) (attached as Ex. K) ("[T]he decision is the work product of either legal counsel or members of the risk management department and hence is protected by Fed. R. Civ. Pro. 26(b)(3) and caselaw."); *Montgomery v. Aetna Plywood, Inc.*, 1996 WL 189347 (N.D. Ill. July 2, 1996) (attached as Ex. L) (valuation reports protected by work-product doctrine).[3]

---

[3]  In *Simon v. G.D. Searle & Co.*, 816 F.2d 397 (8th Cir. 1987), the Eighth Circuit held that individual reserve information was protected by the attorney work-product doctrine but aggregate reserve information was not. *Id.* at 401-02. The basis for the Court's decision was that the aggregate reserve figures in that case did not reveal the thoughts of attorneys. *Id.* at 402. Here, however, Grace's reserve information submitted in 2005 was prepared as part of its plan of reorganization and thus was prepared in anticipation of litigation and necessarily discloses the mental impressions of Grace's attorneys. Therefore, even under the reasoning of *Simon*, the reserve calculations in this case are protected work product.

As in these cases, "Grace estimates, figures, projections, and calculations of its liability for Asbestos Tort Claims" are accordingly entitled to work-product protection. Indeed, the case for work product protection here is even more compelling because the calculations were made as part of an ongoing litigation — Grace's bankruptcy and a contested plan of reorganization — rather than merely in anticipation of litigation. Documents prepared pursuant to a plan of reorganization are protected work-product. *See In re Celotex Corp.*, 196 B.R. 596, 598 (Bankr. M.D. Fla. 1996) (holding that documents "prepared by Debtor's financial consultants and counsel" and pertaining to "the formulation of the plan of reorganization proposed by Debtor" were entitled to work product protection). [4]

Nor can Committees evade the work-product doctrine simply by demanding a Rule 30(b)(6) deposition. Rule 26(b)(1), which prohibits discovery of privileged matters, covers all discovery, including depositions. Courts have held repeatedly that parties are not entitled to take depositions where the testimony would be protected by the work-product doctrine. *See, e.g., Novartis*, 203 F.R.D. at 163 (denying motion to compel 30(b)(6) deposition where information sought was protected by work-product doctrine); *Resolution Trust Corp.*, 1993 WL 13009325 at *3, ("The process of sifting through scores of documents and selecting the ones that counsel believes are most damaging to a particular defendant, if revealed at a deposition, would disclose absolutely protected opinion work-product.").

Grace does not dispute that Claimants are entitled to confirm what is already disclosed in the 2005 SEC 10-K disclosure:  that the asbestos litigation reserve disclosed in that filing was

---

[4]    Grace did not waive the privilege when Messrs. Hughes, Siegel, and Beber testified in 2002 about Grace's reserve calculations because the Court in *Sealed Air* ordered that these witnesses could testify about reserve analysis without it being a waiver of privilege.  (Order To Compel And Protective Order (Adv. No. 02-2210, Docket No. 26) (May 21, 2002) (attached as Ex. M.))

based on the conditions for acceptance of the plan of reorganization filed with the Court. As expressly set forth in the 10-K:

> The Bankruptcy Court is expected to use the estimated liability to determine the amounts to be paid into the trust on the effective date of the Plan. The amounts to fund PI-SE Claims, PD Claims and the expense of trust administration would be capped at the amount determined by the Bankruptcy Court. Amounts required to fund PI-AO Claims would not be capped . . . . The Plan provides that, as a condition precedent to confirmation, the maximum estimated aggregate funding amount for all asbestos-related liabilities (PI-SE, PI-AO and PD including ZAI) and trust administration costs and expenses as determined by the Bankruptcy Court cannot exceed $1,613 million, which Grace believes would fund over $2 billion in claims, costs and expenses over time.

(2005 10-K at F-13) Grace is prepared to file an affidavit confirming that the referenced Plan condition was the basis for the disclosure of the 10-K reserve figure. But Claimants are not entitled to take a 30(b)(6) deposition in an attempt to learn how Grace valued and estimated all of its liability for asbestos tort claims, as those calculations were made in litigation. Accordingly, the Court should enter a protective order denying the FCR's and ACC's proposed 30(b)(6) deposition.

**B.      The Requested Testimony Regarding Grace's Historical Resolution Of Asbestos Claims Is Duplicative Of The Fact Witness Depositions That Grace Has Already Agreed To Provide.**

Claimants also seek testimony regarding Grace's historical resolution of asbestos claims. (*See* Notice at 7 ¶¶ 2, 4, 5. and 6.) These subjects directly parallel the document requests for which the ACC recently filed a motion to compel, and which the FCR joined. (*See* Mot. of the Official Committee of Asbestos Personal Injury Claimants to Compel Production of Documents (Docket No. 13598) (Nov. 7, 2006) at 2 (seeking to compel discovery of documents "concerning Grace's experience with personal injury Asbestos litigation in the tort system of the United States" and "Documents constituting or reflecting communications between Grace's outside defense counsel and Grace which explain or discuss reasons why Grace agreed to settle any

Asbestos personal injury case").) Just like the document requests, these proposed subject matters seek privileged information and are improper. (*See* W.R. Grace & Co.'s Opp'n to Mot. of the Official Committee of Asbestos Personal Injury Claimants to Compel Production of Documents (Docket No. 13772) (Nov. 22, 2006) filed 11/21/06, at 15-21.) But more importantly, the ACC and the FCR negotiated just last week with Grace a compromise resolution of their motion to compel production of the settlement documents, in which Grace agreed to produce two of its former general counsel (Messrs. Beber and Siegel) and its in-house attorney responsible for its personal injury litigation (Mr. Hughes) for depositions on those same subjects. Having accepted Grace's offer to produce these three fact witnesses for yet another round of depositions, the Committees should not be allowed to seek duplicative Rule 30(b)(6) depositions on the same subjects from what will inevitably be the same people.

### III.    TOPIC NUMBERS 4 AND 8 THROUGH 10 HAVE BEEN OR SHOULD BE ADDRESSED THROUGH WRITTEN DISCOVERY OR EXPERT DISCOVERY.

Topic Number 4 seeks testimony concerning "the number of Claims filed (by disease category) against Grace from 1990-2001, the number of Claims settled (by disease category) by Grace from 1990-2001, and the average Claim settlement amount (by disease category)." This will be the subject of expert testimony. Nevertheless, in response to this request, Grace compiled the requested claim information as it is recorded on the claims database, and provided it to counsel for the ACC and the Futures Representative. The ACC and the Futures Representative still insist on taking a Rule 30(b)(6) deposition *now* to preview how Grace's estimation expert will interpret that data *at trial*. Any such use of Rule 30(b)(6) to accelerate (on a unilateral basis) the pretrial disclosure of expert opinion testimony is improper. If the ACC and the Futures Representative want to move up the deadlines for the disclosure of Rule 26 expert reports, they

should file a motion to that effect, and they should be prepared to comply with the same schedule.

Topic Numbers 8 through 10 seek testimony from Grace confirming the obvious facts that it cannot specifically and individually identify all customers to whom its asbestos-containing products were ultimately sold (Topic Number 8), or name each job site or other location where those products were sold, supplied, distributed, transported or used (Topic Number 9), or provide the specific number and identity of each invitee who was present at each such location or jobsite (Topic Number 10). Grace already has responded to requests for admission and a companion interrogatory on each of those requests. (*See* Ex. D at 8-10 (interrogatories on job sites); Ex. E at 12-16 (requests for admission on job sites and estimates of exposure).) No purpose would be served by requiring Grace to respond to a duplicative Rule 30(b)(6) request on each of those same subjects. The Committees have this information.

*[Remainder of Page Intentionally Left Blank]*

## Conclusion

For the foregoing reasons, Grace respectfully requests that this Court enter a protective order and quash the Claimants' deposition notice.

Dated:  December 15, 2006

Respectfully submitted:

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL YOUNG
JONES & WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:   (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession