# EXHIBIT

# D

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JJF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

## W. R. GRACE & CO.'S ANSWERS AND OBJECTIONS TO OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS' FIRST SET OF INTERROGATORIES DIRECTED TO THE DEBTORS

### PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

From the beginning of Debtor W. R. Grace & Co.'s ("Grace") involvement in asbestos litigation in the early 1980s through the date of Grace's bankruptcy filing, virtually every asbestos-related claim made against Grace related to Grace's Zonolite line of products which had been manufactured by the Zonolite Company, which Grace acquired in 1963, or by its Construction Products Division ("CPD"). More specifically, the prior asbestos litigation focused on products in which asbestos was added as part of the product's formulation ("commercial asbestos containing products") and vermiculite products. Grace will produce in response to those interrogatories seeking information regarding jobsites (8) and product information (11) any and all materials produced to any party at any time in connection with personal injury asbestos-related litigation and/or documents produced in connection with the EPA investigation of Grace's vermiculite mine and mill in Libby, Montana, as well as the various class actions relating to Zonolite Attic Insulation ("ZAI").

1.  Grace objects to the definitions and instructions contained in the Official Committee of Asbestos Claimants' ("PI Committee") First Set of Interrogatories Directed to the Debtors (collectively, "Interrogatories") to the extent that said definitions and instructions purport or seek to impose discovery obligations on the Debtors' beyond those required by Fed. R. Civ. P. 26 and 33 and Rules 7026, 7033, and 9014 of the Federal Rules of Bankruptcy Procedure.

2.  Grace objects to the Interrogatories to the extent they seek information or identification of documents beyond the permissible scope of discovery or impose burdens beyond those permitted by the applicable rules of civil procedure. Grace further objects to the Interrogatories to the extent they seek information that will be presented by expert witnesses on the grounds that such inquiry is premature.

3.    Grace objects to the Interrogatories and specifically to the PI Committee's Definition and Instruction No. 4 (relating to the identity of documents) as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

4.    Grace objects to the Interrogatories and specifically to the PI Committee's Definition and Instruction No. 9 (relating to the identity of documents, person and entities) as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

5.    Grace objects to the Interrogatories and specifically to the PI Committee's Definition and Instruction No. 13 (relating to the identification of privileged information) as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

6.    Grace objects to the Interrogatories and specifically to the PI Committee's Definition and Instruction No. 15 (purporting to define "Asbestos-Containing Product") as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

7.    Grace objects to the Interrogatories and specifically to the PI Committee's Definition and Instruction No. 16 (purporting to define "Your Absestos-Containing Product") as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

8.    Grace objects to the Interrogatories and specifically to the PI Committee's Definition and Instruction No. 22 (purporting to define "Asbestos Tort Claim") as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

9.    Grace objects to the Interrogatories and specifically to the PI Committee's Definition and Instruction No. 23 (purporting to define "Asbestos Claimant") as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

10.    Grace objects to the Interrogatories and specifically to the PI Committee's Definition and Instruction No. 25 (purporting to define the relevant time frame) as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

11.    Grace objects to the Interrogatories to the extent they call for or may be construed as calling for information or the identification of documents subject to a claim of privilege against disclosure, including, without limitation, the attorney-client privilege, the work product doctrine, and/or are otherwise protected by applicable common-law or statutory privileges or are otherwise immune from discovery (collectively, "Privileged Information"), Grace hereby claims such privilege or

2

privileges. Accordingly, Grace objects to the provision of Privileged Information. Inadvertent production of such documents or information shall not constitute a waiver of any privilege on any grounds.

12. Grace objects to the Interrogatories to the extent that they ask Grace to disclose confidential, trade secret, competitively sensitive, or commercial information, including internal corporate documents and materials, that could irreparably harm Grace (including subsidiaries or affiliates), if disclosed to competitors. Grace will not provide such information or documents absent an appropriate protective order or confidentiality agreement.

13. Grace's partial response to any interrogatory is not a waiver of its objection or right to object to any additional, supplemental, or other interrogatory or part thereof, but is instead volunteered in an effort to resolve potential discovery disputes. Additionally, Grace's production of a document or documents in response to any of the interrogatories is not a waiver of Grace's objection to production of additional documents.

14. Except where otherwise specified, Grace will not search for nor will it produce information or documents subject to its General Objections or any objections made in response to particular request or interrogatory.

15. Grace objects to the Interrogatories to the extent they seek information or identification of documents in the possession of third parties and/or not presently in Grace's possession, custody, or control on the grounds that such requests are beyond the scope of permissible discovery and are unduly burdensome. Grace further objects to all Interrogatories on the grounds that they are overbroad, oppressive, and unduly burdensome, to the extent they purport to require Grace to provide information or identify documents of other parties to this action, or of third parties, or from publicly available sources. Accordingly, Grace's responses to these Interrogatories do not include or incorporate such information.

16. Grace further objects to the extent the Committee has propounded more interrogatories than permitted under the rules.

17. Neither the fact that Grace has responded to these Interrogatories (or any other discovery request) nor the responses themselves shall constitute an admission or acknowledgement that such Interrogatories (or other discovery requests) are proper, that the information sought is relevant, material, or otherwise within the proper bounds of discovery, or that other discovery requests will be treated in a similar fashion in this or any other proceeding. Further, no response by Grace to any interrogatory (or other discovery request) shall be deemed to constitute an admission of any fact or matter set forth or assumed in any discovery request.

18. Grace reserves the right to make future motions and objections relating to these Interrogatories at any subsequent stage of this action, including, but not limited to,

3

the right to object to the use of any responses, or the subject matter thereof, on any ground (including materiality and relevance) in any proceeding in any action. Grace reserves the right to modify, supplement, revise, correct, clarify, or otherwise amend its answers in accordance with the Federal Rule of Civil Procedure 26(e). Grace further reserves the right to object to the admissibility of any evidence based on the responses to these Interrogatories.

19.     Unless otherwise noted in answer to a specific interrogatory, these answers are limited to the Zonolite line of products including: (1) commercial asbestos containing products (products in which asbestos was added as part of the product's formulation), manufactured by the Zonolite Company or by Grace's Construction Products Division ("CPD"); (2) vermiculite containing products manufactured by the Zonolite Company or CPD for sale to and use by consumers (such as ZAI, agricultural and horticultural products) through approximately 2000; (3) other vermiculite containing products, manufactured by the Zonolite Company or CPD through approximately 1985; and (4) certain other commercial asbestos containing products manufactured by the Horn and Servicised companies during the time such entities were operated through CPD through approximately 1985. These responses are further limited to the sale of the products described above in the United States and Canada through approximately 2000.

20.     The above-stated General Objections shall be deemed applicable and are incorporated by reference into each response set forth below even if not specifically referred to in such responses.

## ANSWERS

1.     Identify any fact witness who you intend to call at the Asbestos Estimation Hearing in this case.

ANSWER: Grace objects to this interrogatory to the extent that it conflicts with the schedule for identifying fact witnesses articulated in paragraph 7 of the Case Management Order for the Estimation of Asbestos Personal Injury Liabilities ("PI CMO") (Docket No. 9301). It will identify witnesses at the times and in the manner designated by the Court.

2.     Identify each lawyer who defended Grace in an Asbestos Tort Claim personal injury trial which began at any time after January 1, 1995.

ANSWER: Grace objects to this interrogatory as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Grace further objects to this interrogatory to the extent that it seeks information that is a matter of public record, equally available to the PI Committee as to Grace. Subject to these objections and the General Objections above, Grace is able to identify the following lead trial counsel based on a review of its records:

1.     Gary L. Graham, Esq.

Garlington, Lohn & Robinson
199 West Pine
P.O. Box 7909
Missoula, MT 59807-7909

2.  Sandra F. Clark, Esq.
Mehaffy & Weber
Interfirst Tower
2615 Calder Avenue
P.O. Box 16
Beaumont, TX 77704

3.  Robert A. Murphy, Esq.
Casner & Edwards, LLP
303 Congress Street
Boston, MA 02210

4.  Dennis E. O'Connell, Esq.
Bryan Cave
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102-2750

5.  Jeffrey S. Hebrank, Esq.
Burroughs, Hepler, Broom, MacDonald, Hebrank & True
2 Mark Twain Plaza, Suite 300
P.O. Box 510
103 W. Vandalia Street
Edwardsville, IL 62025-0510

6.  Robert E. Thackston, Esq.
Jenkens & Gilchrist
Fountain Place
1445 Ross Avenue, Suite 3200
Dallas, TX 75202-2799

7.  James P. Gannon, Esq.
Segal McCambridge Singer & Mahoney, Ltd.
United Plaza
30 S. 17th Street, Suite 1700
Philadelphia, PA 19103

8.  James L. Hiller, Esq.
Hitt, Hiller & Monfils LLP
510 S.W. Third Avenue, Suite 309
Portland, OR 97204

5

9. Virginia E. Johnson, Esq.
   Johnson & Tomlin
   4770 Biscayne Boulevard, Suite 1030
   Miami, FL  33137-3251

3.      For the time period January 1, 1995 through June 30, 2001, identify each Asbestos Tort Claim personal injury trial which went to verdict and Grace was a remaining defendant at the time of such verdict and for each such trial state the following: jurisdiction, court, name of plaintiff, identity of plaintiff's counsel, identity of defense counsel for Grace, disease alleged by the plaintiff, whether a verdict was returned in favor of the plaintiff or Grace, the amount of the verdict as to all defendants, amount of the verdict allocated to Grace, and the amount of any post-verdict settlement or judgment paid by Grace (or bonded by the Grace if the case was appealed). Alternatively, produce documents sufficient to show the above information for each such trial and identify the Bates-number of each document.

ANSWER:  Grace objects to this interrogatory as irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Grace further objects to this interrogatory to the extent it seeks information which is a matter of public record, equally available to the committee as to Grace. Subject to and without waiving these objections and/or the General Objections above, Grace states that it has previously produced its Case Management System on disc in this case, which may contain information responsive to this interrogatory. Grace is willing to again produce its Case Management System if counsel for the PI Committee so requests. To the extent this interrogatory seeks information not available in the Case Management System, Grace objects as the request is overly broad and unduly burdensome.

4.      Identify any lawyer, claims adjuster, or other representative who represented Grace in the settlement or resolution of a group of 1,000 or more Asbestos Tort Claims entered into between January 1, 1996 and December 31, 2001.

ANSWER:  Grace objects to this interrogatory as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Grace further objects to this interrogatory to the extent that it seeks information about settlement negotiations, which is inadmissible under Rule 408 of the Federal Rules of Evidence. Subject to and without waiving these objections and/or the General Objections above, Grace states that during the relevant time period, Jay W. Hughes, Jr., Esq., a Senior Litigation Counsel, was the Grace employee with primary responsibility for the settlement or resolution of Asbestos Tort Claims in conjunction with outside counsel.

5.      Identify any lawyer, claims adjuster, or other representative who represented Grace in the settlement of any Asbestos Tort Claim which was entered into between January 1, 2000 and December 31, 2001.

ANSWER:  Grace objects to this interrogatory as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Grace further objects to this interrogatory to the extent that it seeks information about settlement negotiations, which is inadmissible under Rule 408 of the Federal Rules of Evidence. Subject to

6

and without waiving these objections and the General Objections above, Grace states that during the relevant time period, Jay W. Hughes, Jr., Esq., a Senior Litigation Counsel, was the Grace employee with primary responsibility for the settlement or resolution of Asbestos Tort Claims in conjunction with outside counsel.

6.      Identify all in-house lawyers for Grace who had any responsibility for Asbestos Tort Claim matters from January 1, 1980 through July 1, 2001.

ANSWER:  Grace objects to this interrogatory as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and/or the General Objections above, Grace states that the following in-house lawyers had responsibility for Asbestos Tort Claims matters during the relevant time period:

1.      Stephen Ahern, Esq.
        W.R. Grace & Co.
        7500 Grace Drive
        Columbia, MD  21044

2.      Robert H. Beber (Retired)
        Executive Vice President & General Counsel
        c/o W.R. Grace & Co.
        5400 Broken Sound Blvd., N.W., #300
        Boca Raton, FL  33487

3.      Albert A. Eustis (Retired)
        Executive Vice President & General Counsel
        c/o W.R. Grace & Co.
        7500 Grace Drive
        Columbia, MD  21044

4.      O. Mario Favorito, Esq.
        W. R. Grace & Co.
        62 Whittemore Avenue
        Cambridge, MA  02140

5.      Jay W. Hughes, Jr.
        Senior Litigation Counsel
        W. R. Grace & Co.
        62 Whittemore Avenue
        Cambridge, MA  02140

6.      William Knapp, Esq.
        c/o W. R. Grace & Co.
        62 Whittemore Avenue
        Cambridge, MA  02140

7.    Kevin T. O'Reilly
Chief Litigation Counsel (Retired)
c/o W. R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

8.    David B. Siegel (Retired)
Senior Vice President & General Counsel
c/o W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

7.    Identify all persons, other than lawyers included in ¶¶ 2-6, who, in any manner, participated in decisions concerning the handling of an Asbestos Tort Claim from 1990 to the date of your responses to these Interrogatories.

ANSWER: Grace objects to this interrogatory as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and/or the General Objections above, Grace states the following persons were regularly involved with such decisions and/or had ultimate authority:

1.    Jeffrey M. Posner
Former Director of Risk Management
c/o W.R. Grace & Co.
5400 Broken Sound Blvd., N.W., #300
Boca Raton, FL 33487

2.    J. Peter Grace
Chairman of the Board & Chief Executive Officer 1990-1995 (Deceased)

3.    J. P. Bolduc
Chief Executive Officer 1992-1995

4.    Albert Costello
Chairman of the Board & Chief Executive Officer 1995-1998 (Deceased)

5.    Paul Norris
Chairman of the Board & Chief Executive Officer 1998-2004

By way of further response, Grace states that other members of Grace's senior management may have participated in such decisions.

8.    List all Jobsites to which any of your Asbestos-Containing Products, as defined by Definition 16, were sold, used, supplied, delivered, installed, or applied. Alternatively

produce documents sufficient to show the above information for each such Jobsite and identify the Bates number of the document.

ANSWER:  Grace objects to this interrogatory as overly broad and unduly burdensome.  Grace further objects to the extent that the interrogatory requires Grace to contact third parties to obtain the requested information.  Grace also objects to this interrogatory to the extent it is inconsistent with or exceeds the obligations imposed by the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure or other applicable rules or law.  Subject to and without waiving these objections and/or the General Objections above, subject to the requirements of Federal Rule of Civil Procedure 33(d) and Federal Rule of Bankruptcy Procedure 7033, Grace will produce the collections of documents discussed in its General Objections at a mutually agreeable time.

9.    List each Jobsite which has ever been identified by an Asbestos Claimant or other person in a sworn affidavit or deposition testimony or trial testimony (i.e. in a statement under oath) as a place where Grace Asbestos-Containing Products gave rise to exposure to asbestos.  Alternatively, produce each affidavit, deposition transcript or transcript of trial testimony in which a person identified a Grace Asbestos-Containing Product to be present and identify the Bates-numbers of this production.

ANSWER:  Grace objects to this interrogatory as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.  Grace further objects to this interrogatory to the extent the information requested is a matter of public record, equally available to the PI Committee as to Grace.  Grace further objects to the extent that the interrogatory requires Grace to contact third parties to obtain the requested information.  Grace also objects to this interrogatory to the extent it is inconsistent with or exceeds the obligations imposed by the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure or other applicable rules or law.

10.    List each Jobsite which has ever been identified on an "Agreed Site List" or "Agreed Exposure Site" in any settlement agreement ever entered into between Grace and an Asbestos Claimant.

ANSWER:  Grace objects to this interrogatory as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.  Grace further objects to the use of the terms "Agreed Site List" and "Agreed Exposure Site," which are vague terms not commonly used by Grace and have no meaning in this context.  Grace further objects to this interrogatory to the extent the information requested is a matter of public record, equally available to the PI Committee as to Grace.  Grace further objects to the extent that the interrogatory requires Grace to contact third parties to obtain the requested information.  Grace further objects to this interrogatory to the extent that it seeks information about settlement negotiations, which is inadmissible under Rule 408 of the Federal Rules of Evidence.

11.    List every Asbestos-Containing Product which you have ever manufactured, installed, sold, distributed, or marketed. As to each such product, state the following:

(a)     the brand name(s) of the product;

(b)     the date the product first went into production;

(c)     the last date the product was produced;

(d)     the last date the product was sold;

(e)     all manufacturing locations;

(f)     dates of manufacture at each location;

(g)     the percentage of Asbestos, and the dates and all reasons for any modification thereto;

(j)     the type of Asbestos and any chemical analysis of the composition of such product;

(k)     the specific source of Asbestos with dates;

(l)     the color, physical characteristic, and appearance of the product;

(m)     a full and precise description of all forms of the package in which the product was sold or distributed, including, but not limited to, type of package, size, color(s), and writings thereon;

(n)     all other names under which the product was sold, including without limitation, pursuant to a Grace Licensed Product;

(o)     the number and date of each patent or patent application as to the product.

ANSWER: Grace objects to this interrogatory as overly broad and unduly burdensome. Grace further objects to this interrogatory to the extent that it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections and/or the General Objections above, Grace states as follows:

(a, n)    See Product Appendix Nos. 1-57(a).
(b)       See Product Appendix Nos. 1-57(b).
(c, d)    See Product Appendix Nos. 1-57(c, d).
(e, f)    See Product Appendix Nos. 1-57(e, f).
(g, j)    See Product Appendix Nos. 1-57(g, j).
(k)       See Product Appendix Nos. 1-57(k).
(l)       See Product Appendix Nos. 1-57(l).
(m)       See Product Appendix Nos. 1-57(m).
(o)       See Product Appendix Nos. 1-57(o).

12.    State the number of new mesothelioma claims filed against Grace in each year for the years 1991 through 2001.

ANSWER:   Grace objects to this request as overly broad and unduly burdensome as this information is publicly available and/or in the possession of claimants.  Subject to and without waiving these objections and/or the General Objections above, Grace states that it has previously produced its Case Management System on disc in this case, which may contain information responsive to this interrogatory.   Grace is willing to again produce its Case Management System if counsel for the PI Committee so requests.   To the extent this interrogatory seeks information not contained in the Case Management System, Grace objects because it is overly broad and unduly burdensome.

13.    State the number of new lung cancer claims filed against Grace in each year for the years 1991 through 2001.

ANSWER:   Grace objects to this request as overly broad and unduly burdensome as this information is publicly available and/or in the possession of claimants.  Subject to and without waiving these objections and/or the General Objections above, Grace states that it has previously produced its Case Management System on disc in this case, which may contain information responsive to this interrogatory.   Grace is willing to again produce its Case Management System if counsel for the PI Committee so requests.   To the extent this interrogatory seeks information not contained in the Case Management System, Grace objects because it is overly broad and unduly burdensome.

14.    State the number of new other cancer claims filed against Grace in each year for the years 1991 through 2001.

ANSWER:   Grace objects to this request as overly broad and unduly burdensome as this information is publicly available and/or in the possession of claimants.  Subject to and without waiving these objections and/or the General Objections above, Grace states that it has previously produced its Case Management System on disc in this case, which may contain information responsive to this interrogatory.   Grace is willing to again produce its Case Management System if counsel for the PI Committee so requests.   To the extent this interrogatory seeks information not contained in the Case Management System, Grace objects because it is overly broad and unduly burdensome.

15.    State the number of new non-malignant claims filed against Grace in each year for the years 1991 through 2001.

ANSWER:   Grace objects to this request as overly broad and unduly burdensome as this information is publicly available and/or in the possession of claimants.  Subject to and without waiving these objections and/or the General Objections above, Grace states that it has previously produced its Case Management System on disc in this case, which may contain information responsive to this interrogatory.  Grace is willing to again produce its Case Management System if counsel for the PI Committee so requests.  To the extent this interrogatory seeks information

not contained in the Case Management System, Grace objects because it is overly broad and unduly burdensome.

16.    State the total number of Asbestos Tort Claims in each disease category (e.g., mesothelioma, lung cancer, other cancer, or non-malignancy) that Grace resolved by settlement, judgment, or dismissal between January 1, 2001 and December 31, 2001.

ANSWER:  Grace objects to this interrogatory as irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.  Grace further objects to this request as overly broad and unduly burdensome as this information is publicly available and/or in the possession of claimants.  Grace also objects to this interrogatory to the extent that it seeks information about litigation strategy, or other information protected by the attorney/client privilege or work-product doctrine.  Grace further objects to this interrogatory to the extent it seeks information about settlement negotiations, which is inadmissible under Rule 408 of the Federal Rules of Evidence.  Subject to and without waiving these objections and/or the General Objections above, Grace states that it has previously produced its Case Management System on disc in this case, which may contain information responsive to this interrogatory.  Grace is willing to again produce its Case Management System if counsel for the PI Committee so requests.  To the extent this interrogatory seeks information not contained in the Case Management System, Grace objects because it is overly broad and unduly burdensome.

17.    State the total number of Asbestos Tort Claims in each disease category (e.g., mesothelioma, lung cancer, other cancer, or non-malignancy) that Grace resolved between January 1, 2001 and December 31, 2001 in which the resolution included the payment or promise of payment of a positive sum of money to the plaintiff (whether by settlement or judgment).

ANSWER:  Grace objects to this request as overly broad and unduly burdensome as this information is publicly available and/or in the possession of claimants.  Grace further objects to this interrogatory as irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.  Grace also objects to the interrogatory to the extent it seeks information about litigation strategy, or other information protected by the attorney/client privilege or work-product doctrine.  Grace further objects to this interrogatory to the extent it seeks information about settlement negotiations, which is inadmissible under Rule 408 of the Federal Rule of Evidence.  Subject to and without waiving these objections and/or the General Objections above, Grace states that it has previously produced its Case Management System on disc in this case, which may contain information responsive to this interrogatory.  Grace is willing to again produce its Case Management System if counsel for the PI Committee so requests.  To the extent this interrogatory seeks information not contained in the Case Management System, Grace objects because it is overly broad and unduly burdensome.

18.    For the claims that Grace resolved between January 1, 2001 and December 31, 2001 by the payment or promise of payment of a positive sum of money to the plaintiff (whether by settlement of judgment), state the average amount of the indemnity payment in each disease category (e.g., mesothelioma, lung cancer, other cancer, or non-malignancy).

ANSWER: Grace objects to this interrogatory as irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Grace further objects to this request as overly broad and unduly burdensome as this information is publicly available and/or in the possession of claimants. Grace also objects to this interrogatory to the extent it seeks information about litigation strategy, or other information protected by the attorney-client privilege or work product doctrine. Grace further objects to this interrogatory to the extent it seeks information about settlement negotiations, which is inadmissible under Rule 408 of the Federal Rules of Evidence. Subject to and without waiving these objections and/or the General Objections above, Grace states that it has previously produced its Case Management System on disc in this case, which may contain information responsive to this interrogatory. Grace is willing to again produce its Case Management System if counsel for the PI Committee so requests. To the extent this interrogatory seeks information not contained in the Case Management System, Grace objects because it is overly broad and unduly burdensome.

19.    Identify any lawyer, claims adjuster, or other representative who represented Grace in the settlement or resolution of more than 5,000 Asbestos Tort Claims in total.

ANSWER: Grace objects to this interrogatory as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Grace further objects to this interrogatory to the extent that it seeks information about settlement negotiations, which is inadmissible under Rule 408 of the Federal Rules of Evidence. Subject to these objections and/or the General Objections above, Grace states that during the relevant time period, Jay W. Hughes, Jr., Esq., a Senior Litigation Counsel, was the Grace employee with primary responsibility for the settlement or resolution of Asbestos Tort Claims in conjunction with outside counsel.

20.    For each year between January 1, 1991 and December 31, 2000, state the total number of Asbestos Tort Claims in each disease category (e.g., mesothelioma, lung cancer, other cancer, or non-malignancy) that Grace resolved by settlement, judgment, or dismissal in each such year.

ANSWER: Grace objects to this interrogatory as irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Grace further objects to this request as overly broad and unduly burdensome, as this information is publicly available and/or in the possession of claimants. Grace also objects to the interrogatory to the extent that it seeks information about litigation strategy, or other information protected by the attorney-client privilege or work product doctrine. Grace also objects to this interrogatory to the extent it seeks information about settlement negotiations, which is inadmissible under Rule 408 of the Federal Rule of Evidence. Subject to and without waiving these objections and/or the General Objections above, Grace states that it has previously produced its Case Management System on disc in this case, which may contain information responsive to this interrogatory. Grace is willing to again produce its Case Management System if counsel for the PI Committee so requests. To the extent this interrogatory seeks information not contained in the Case Management System, Grace objects because it is overly broad and unduly burdensome.

21.    For each year between January 1, 1991 and December 31, 2000, state the total number of Asbestos Tort Claims in each disease category (e.g., mesothelioma, lung cancer, other cancer, or non-malignancy) that Grace resolved in each such year in which the resolution included the payment or promise of payment of a positive sum of money to the plaintiff (whether by settlement or judgment).

ANSWER:  Grace objects to this interrogatory as irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.  Grace further objects to this request as overly broad and unduly burdensome as this information is publicly available and/or in the possession of claimants.  Grace also objects to the interrogatory to the extent that it seeks information about litigation strategy, or other information protected by the attorney-client privilege or work product doctrine.  Grace objects to this interrogatory to the extent it seeks information about settlement negotiations, which is inadmissible under Rule 408 of the Federal Rules of Evidence.  Subject to and without waiving these objections and/or the General Objections above, Grace states that it has previously produced its Case Management System on disc in this case which may contain information responsive to this interrogatory.  Grace is willing to again produce its Case Management System if counsel for the PI Committee so requests.  To the extent this interrogatory seeks information not contained in the Case Management System, Grace objects because it is overly broad and unduly burdensome.

22.    For the claims that Grace resolved between January 1, 1991 and December 31, 2000 by the payment or promise of payment of a positive sum of money to the plaintiff (whether by settlement or judgment), for the claims resolved by positive payment in each such year state the average amount of the indemnity payment in each disease category (e.g., mesothelioma, lung cancer, other cancer, or non-malignancy).

ANSWER:  Grace objects to this interrogatory as irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.  Grace objects to this request to the extent that it is overly broad and unduly burdensome as this information is publicly available and/or in the possession of claimants.  Grace further objects to the interrogatory to the extent that it seeks information about litigation strategy, or other information protected by the attorney-client privilege or work product doctrine.  Grace objects to this interrogatory to the extent it seeks information about settlement negotiations, which is inadmissible under Rule 408 of the Federal Rules of Evidence.  Subject to and without waiving these objections and/or the General Objections above, Grace states that it has previously produced its Case Management System on disc in this case, which may contain information responsive to this interrogatory.  Grace is willing to again produce its Case Management System if counsel for the PI Committee so requests.  To the extent this interrogatory seeks information not contained in the Case Management System, Grace objects because it is overly broad and unduly burdensome.

23.    Please identify each insurer which participated in the defense of asbestos personal injury/wrongful death claims asserted against the debtor and the years during which such insurer participated in the defense.

ANSWER: Grace objects to this interrogatory as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections and/or the General Objections above, Grace states that CNA was the primary liability insurer for Grace prior to the exhaustion of the aggregate limits of the CNA policies in 1991. CNA participated in the defense of claims pursuant to the terms of its policies. The participation of Grace's excess insurers in the defense of claims was governed by the terms of those policies and related insurance coverage settlement agreements. Grace will provide the relevant policies and agreements at a mutually convenient time subject to the approval of the relevant insurance companies in those cases where the settlement agreements contain confidentiality agreements.

24.    For each such insurer, please state whether it controlled the defense of asbestos personal injury/wrongful death claims asserted against you and, if so, please describe the nature and extent of that control.

ANSWER: Grace objects to this interrogatory as vague and ambiguous in that the term "controlled" is undefined and capable of various interpretations. Grace further objects to this interrogatory as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Grace further objects to the interrogatory to the extent that it seeks information about litigation strategy, or other information protected by the attorney-client privilege or work product doctrine. Subject to and without waiving these objections and/or the General Objections above, Grace states that CNA was the primary liability insurer for Grace prior to the exhaustion of the aggregate limits of the CNA policies in 1991. CNA participated in the defense of claims pursuant to the terms of its policies. The participation of Grace's excess insurers in the defense of claims was governed by the terms of those policies and related insurance coverage settlement agreements. Grace will provide the relevant policies and agreements at a mutually convenient time subject to the approval of the relevant insurance companies in those cases where the settlement agreements contain confidentiality agreements.

25.    For each such insurer, please state whether it hired counsel to represent you in connection with the defense of asbestos personal injury claims and, if so, please identify the counsel.

ANSWER: Grace further objects to this interrogatory as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Grace further objects to the interrogatory to the extent that it seeks information about litigation strategy, or other information protected by the attorney-client privilege or work product doctrine. Subject to and without waiving these objections and/or the General Objections above, Grace states that CNA was the primary liability insurer for Grace prior to the exhaustion of the aggregate limits of the CNA policies in 1991. CNA participated in the defense of claims pursuant to the terms of its policies. The participation of Grace's excess insurers in the defense of claims was governed by the terms of those policies and related insurance coverage settlement agreements. Grace will provide the relevant policies and agreements at a mutually convenient time subject to the approval of the relevant insurance companies in those cases where the settlement agreements contain confidentiality agreements.

26.    For each such insurer, please state whether it directed, participated in and/or ratified the litigation conduct of the counsel it hired to represent you in connection with the defense of asbestos personal injury/wrongful death claims.

ANSWER:  Grace objects to this interrogatory as vague and ambiguous in that the terms "directed," "participated in" and/or "ratified the litigation conduct" is undefined and subject to various interpretations.   Grace further objects to this interrogatory as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.   Grace also objects to the interrogatory to the extent that it seeks information about litigation strategy, or other information protected by the attorney-client privilege or work product doctrine.   Subject to and without waiving these objections and/or the General Objections above, Grace states that CNA was the primary liability insurer for Grace prior to the exhaustion of the aggregate limits of the CNA policies in 1991.   CNA participated in the defense of claims pursuant to the terms of its policies.   The participation of Grace's excess insurers in the defense of claims was governed by the terms of those policies and related insurance coverage settlement agreements.   Grace will provide the relevant policies and agreements at a mutually convenient time subject to the approval of the relevant insurance companies in those cases where the settlement agreements contain confidentiality agreements.

27.    For each such insurer, please state whether it or you made the ultimate decision about what defenses, if any, would be asserted on your behalf in connection with the defense of asbestos personal injury/wrongful death claims.

ANSWER:  Grace objects to this interrogatory as vague and ambiguous in that the term "ultimate decision" is undefined and subject to various interpretations.  Grace further objects to this interrogatory as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.  Grace also objects to the interrogatory to the extent that it seeks information about litigation strategy, or other information protected by the attorney-client privilege or work product doctrine.  Subject to and without waiving these objections and/or the General Objections above, Grace states that CNA was the primary liability insurer for Grace prior to the exhaustion of the aggregate limits of the CNA policies in 1991.  CNA participated in the defense of claims pursuant to the terms of its policies.  The participation of Grace's excess insurers in the defense of claims was governed by the terms of those policies and related insurance coverage settlement agreements.  Grace will provide the relevant policies and agreements at a mutually convenient time subject to the approval of the relevant insurance companies in those cases where the settlement agreements contain confidentiality agreements.

28.    For each such insurer, please state whether it or you made the ultimate decision whether to settle asbestos personal injury/wrongful death claims asserted against you.

ANSWER:  Grace objects to this interrogatory as vague and ambiguous in that the term "ultimate decision" is undefined and subject to various interpretations.  Grace further objects to this interrogatory as overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.  Grace also objects to the interrogatory to the extent that it seeks information about litigation strategy, or other information protected by

the attorney-client privilege or work product doctrine. Grace further objects to this interrogatory to the extent that it seeks information about settlement negotiations, which is inadmissible under Rule 408 of the Federal Rules of Civil Procedure. Subject to and without waiving these objections and/or the General Objections above, Grace states that CNA was the primary liability insurer for Grace prior to the exhaustion of the aggregate limits of the CNA policies in 1991. CNA participated in the defense of claims pursuant to the terms of its policies. The participation of Grace's excess insurers in the defense of claims was governed by the terms of those policies and related insurance coverage settlement agreements. Grace will provide the relevant policies and agreements at a mutually convenient time subject to the approval of the relevant insurance companies in those cases where the settlement agreements contain confidentiality agreements.

AS TO OBJECTIONS,

KIRKLAND & ELLIS LLP
David M. Bernick
Jonathan Friedland
Salvatore F. Bianca
200 East Randolph Drive
Chicago, IL 60601
Telephone:    (312) 861-2000
Facsimile:    (312) 861-2200

KIRKLAND & ELLIS LLP

*Amanda C. Basta*

Barbara M. Harding
David E. Mendelson (admission *pro hac vice* pending)
Brian T. Stansbury
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:    (202) 879-5000
Facsimile:    (202) 879-5200

PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.
Laura Davis Jones (Bar No. 2436)
James E. O'Neill, III (Bar. No.4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400

-and-

CASNER & EDWARDS, LLP

*Matthew T. Murphy / acb by permission*

Robert A. Murphy (BBO No. 363700)
Matthew T. Murphy (BBO No.550742)
303 Congress Street
Boston, MA  02210
Telephone:    (617) 426-5900
Facsimile:    (617) 426-8810

Dated: November 14, 2005