# EXHIBIT

# E

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | |
| | ) | |
| | ) | |
| Debtors. | ) | Case No. 01-01139 (JJF) |
| | ) | Jointly Administered |
| | ) | |

**W. R. GRACE & CO.'S RESPONSE TO THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS' FIRST SET OF REQUESTS FOR ADMISSION AND SUPPLEMENTAL INTERROGATORY DIRECTED TO THE DEBTORS**

Debtors W.R. Grace & Co., et al., (hereinafter "Grace") respond to the following requests for admission:

## REQUESTS FOR ADMISSION

1.    The Estimation Hearing is for the purpose of estimating Grace's aggregate liability for pending and future asbestos personal injury claims for plan confirmation purposes.

**RESPONSE:**

Grace objects to this request on the basis that it calls for a legal conclusion. It is an abuse of FRCP 36 to use requests for admission to paraphrase or to recharacterize the Court's rulings. Grace further objects to this request on the basis that the purposes to be served by the Estimation Hearing have been and will be determined by the Court, and not the parties, in the Case Management Order and in future court orders. Subject to those objections, Grace admits that the request states one of the purposes of the Estimation Hearing, but denies that it states the only potential purpose of the Hearing.

2.    The Estimation Hearing is not for the purpose of the allowance or disallowance of any Individual Asbestos Personal Injury Claim.

**RESPONSE:**

Grace incorporates herein its objections to request no. 1.  Subject to this objection, Grace admits this request.  Grace denies the inference from this request that the record developed in the Estimation Hearing would not be used for any other purpose relating to any Individual Asbestos Personal Injury Claim.

3.    The Estimation Hearing is not for the purpose of estimating the value of any particular Individual Asbestos Personal Injury Claim.

**RESPONSE:**

Grace incorporates herein its objections to requests nos. 1 and 2.  Grace denies this request.  Grace further states that in the Estimation Hearing, the Court will be asked to estimate the value of all Asbestos Personal Injury Claims, which estimation will bear on the value of any particular Individual Asbestos Personal Injury Claim.

4.    The 11 U.S.C. § 362 automatic bankruptcy stay that went into effect when Grace filed for bankruptcy protection has prevented any Individual Asbestos Personal Injury Claimant from proceeding to trial against Grace in an asbestos personal injury case.

**RESPONSE:**

Grace objects to this request on the basis that it calls for a legal conclusion.  Grace admits that the practical effect of the stay has been to discourage any Individual Asbestos Personal Injury Claimant from proceeding to trial.  Grace denies the inference that any Individual Asbestos Personal Injury Claimant has not had the ability to develop its case against Grace.  The evidence necessary to develop any case against Grace, that is specific to Grace, has been available for years, and thousands of claimants have developed their cases based on such evidence.  Individual Asbestos Personal Injury Claimants continue to have access to this evidence, as well as evidence from other companies which might be relevant to a case against Grace.

5.      Since it filed its Chapter 11 petition, Grace has not participated as a defendant in a trial of any Individual Asbestos Personal Injury Claimant's claim.

**RESPONSE:**

Admitted.

6.      Since filing its Chapter 11 petition, Grace has not been permitted to make a settlement payment to any Individual Asbestos Personal Injury Claimant unless Grace first obtained an order permitting it to do so from the Bankruptcy Court.

**RESPONSE:**

Grace objects to this request on the basis that it calls for a legal conclusion. Grace states that it has not sought approval from the Bankruptcy Court to make any such settlement payment, so the assertion that it "has not been permitted to make a settlement payment" in inapplicable. Grace therefore denies this request.

7.      Grace has not made a settlement payment to any Individual Asbestos Personal Injury Claimant at any time since it filed its Chapter 11 petition.

**RESPONSE:**

Grace admits this request.

8.      Grace has not made a settlement payment to any Individual Asbestos Personal Injury Claimant at any time after January 1, 2002.

**RESPONSE:**

Grace admits this request.

9.      Grace has not made a settlement payment to any Individual Asbestos Personal Injury Claimant at any time after January 1, 2003.

**RESPONSE:**

Grace admits this request.

10.      The automatic bankruptcy stay that went into effect when Grace filed its Chapter 11 petition has prevented any Individual Asbestos Personal Injury Claimant from serving discovery requests (including document requests, deposition notices, interrogatories, or requests for admission) on Grace outside the Chapter 11 case.

**RESPONSE:**

Grace incorporates herein its objections and response to request no. 4.  Grace

further states that it has provided extensive discovery in this Chapter 11 case, including by way

of example making its asbestos document repository available for inspection and copying.  Grace

also states that notwithstanding the automatic bankruptcy stay, it has been improperly served

with discovery requests post-petition.  Grace therefore denies this request.

11.    The automatic bankruptcy stay that went into effect when Grace filed its
Chapter 11 petition has prevented any Individual Asbestos Personal Injury Claimant from
serving discovery requests (including document requests, deposition notices, interrogatories, or
requests for admission) on Grace for the purpose of obtaining claimant-specific or Jobsite-
specific discovery concerning the location of Grace's asbestos containing products outside the
Chapter 11 case.

**RESPONSE:**

Grace incorporates herein its objections and  response to request no. 4.  Grace

further states that it has provided extensive discovery in this Chapter 11 case that is relevant to

claimant-specific or Jobsite-specific discovery, including by way of example making its asbestos

document repository available for inspection and copying.  Grace therefore denies this request.

12.    The Bankruptcy Court has not lifted the automatic stay or otherwise
authorized any court to allow any Individual Asbestos Personal Injury Claimant to proceed to
trial against Grace to prove the merits of his or her claim against Grace.

**RESPONSE:**

Grace incorporates herein its objections and response to request no. 4.  Grace

further objects to this request on the basis that the Committee is equally capable of reviewing the

docket and the Court's rulings in this Chapter 11 case.  It is an abuse of FRCP 36 to use requests

for admission to paraphrase or to recharacterize the Court's rulings or the case docket

13.    The Bankruptcy Court has not established a trial date for any Individual
Asbestos Personal Injury Claimant to prove the merits of his or her claim against Grace.

4

**RESPONSE**:

Grace incorporates herein its objections and response to request no. 4.  Grace

further objects to this request on the basis that the Committee is equally capable of reviewing the

docket and the Court's rulings in this Chapter 11 case.  It is an abuse of FRCP 36 to use requests

for admission to paraphrase or to recharacterize the Court's rulings or the case docket.  Grace

further states that it was prepared to proceed to actual trials under FRCP Rule 42 and BRP 7042

that would deal with the merits of all Individual Asbestos Personal Injury Claims, but such trials

were successfully resisted by the attorneys for the Official Committee of Asbestos Personal

Injury Claimants.

14.    The Bankruptcy Court has not set any trial date or established any other
procedure to determine the merits of any specific Individual Asbestos Personal Injury Claim.

**RESPONSE**:

Grace denies this request.  The purpose of the Estimation Hearing is to have a

merits-based determination of the value of the Asbestos Personal Injury Claims.

15.    The Bankruptcy Court has not established any deadline for any Individual
Asbestos Personal Injury Claimant to identify the expert witness( es) that he or she would call to
testify in a trial against Grace concerning his or her Individual Asbestos Personal Injury Claim.

**RESPONSE**:

Grace incorporates herein its response to request no. 14.  Grace objects to this

request on the basis that the Committee is equally capable of reviewing the docket and the

Court's rulings in this Chapter 11 case.  It is an abuse of FRCP 36 to use requests for admission

to paraphrase or to recharacterize the Court's rulings or the case docket.  Grace further states that

expert witnesses known to the individual claimant that are in a position to support the medical or

exposure statements made in the Questionnaire, including any such experts identified in the

required medical documentation to be submitted with the Questionnaire (*see* Instructions C and J

expert witness testimony or other evidence that he or she might seek to introduce into evidence in a trial against Grace involving his or her Individual Asbestos Personal Injury Claim.

**RESPONSE:**

Grace incorporates herein its objections and responses to request nos. 15 through 17. Grace therefore denies this request.

19.    In responding to the Grace Asbestos Personal Injury Questionnaire, an Individual Asbestos Personal Injury Claimant was not required to gather information that was not yet available.

**RESPONSE:**

Grace objects to this request on the basis that the Committee is equally capable of reviewing the Court's rulings in this Chapter 11 case. It is an abuse of FRCP 36 to use requests for admission to paraphrase or to recharacterize the Court's rulings or the case docket. Grace further objects to the ambiguous reference in this request to "information that was not yet available." Grace states that an individual claimant that had asserted a claim against Grace pre-petition needed to have sufficient information to provide a good-faith basis for that claim. Grace further states that information obtained or that became available for any reason (such as the assertion or prosecution of claims against other defendants) between the initial assertion of a claim against Grace and the filing of the Questionnaire in this Chapter 11 case should have been included with the Questionnaire. Grace therefore denies this request.

20.    In responding to the Grace Asbestos Personal Injury Questionnaire, an Individual Asbestos Personal Injury Claimant was not required to identify all expert witnesses who may be called to testify on his or her behalf in a trial against Grace.

**RESPONSE:**

Grace objects to this request on the basis that the Committee is equally capable of reviewing the Court's rulings in this Chapter 11 case. It is an abuse of FRCP 36 to use requests for admission to paraphrase or to recharacterize the Court's rulings or the case docket. Grace

to the Questionnaire) should have been disclosed in the Questionnaire.  Grace therefore denies

this request.

16.    The Bankruptcy Court has not established any deadline for any Individual Asbestos Personal Injury Claimant to identify the fact witness(es) that he or she would call to testify in a trial against Grace involving his or her Individual Asbestos Personal Injury Claim.

**RESPONSE:**

Grace incorporates herein its response to request no. 14.  Grace objects to this

request on the basis that the Committee is equally capable of reviewing the docket and the

Court's rulings in this Chapter 11 case.  It is an abuse of FRCP 36 to use requests for admission

to paraphrase or to recharacterize the Court's rulings or the case docket.  Grace further states that

fact witnesses known to the individual claimant that are in a position to support the medical

statements made in the Questionnaire should have been disclosed in the Questionnaire.  Grace

therefore denies this request.

17.    The Bankruptcy Court has not established any deadline for any Individual Asbestos Personal Injury Claimant to identify the documents or other evidence that he or she would seek to introduce into evidence as trial exhibits in a trial against Grace involving his or her Individual Asbestos Personal Injury Claim.

**RESPONSE:**

Grace incorporates herein its response to request no. 14.  Grace objects to this

request on the basis that the Committee is equally capable of reviewing the docket and the

Court's rulings in this Chapter 11 case.  It is an abuse of FRCP 36 to use requests for admission

to paraphrase or to recharacterize the Court's rulings or the case docket.  Grace further states that

documents in the possession of or known to the individual claimant that support the exposure

statements made in the Questionnaire should have been disclosed in the Questionnaire.  (*See*

Instructions D and J to the Questionnaire).  Grace therefore denies this request.

18.    In responding to the Grace Asbestos Personal Injury Questionnaire, an Individual Asbestos Personal Injury Claimant was not required to identify all factual testimony,

further states that an individual claimant was required to identify all examining physicians or

other medical professionals with information supporting the claim in the Questionnaire response.

Grace admits this request only to the extent that it refers to other potential expert witnesses who

had not yet examined the individual claimant at the time of submission of the Questionnaire.

Otherwise, Grace denies this request.

       21.     In responding to the Grace Asbestos Personal Injury Questionnaire, an Individual Asbestos Personal Injury Claimant was not required to identify all fact witnesses who may be called to testify on his or her behalf in a trial against Grace.

**RESPONSE:**

       Grace incorporates herein its objections and response to request no. 20.

       22.     In responding to the Grace Asbestos Personal Injury Questionnaire, an Individual Asbestos Personal Injury Claimant was not required to identify all documents or other exhibits which may be offered into evidence on his or her behalf in a trial against Grace.

**RESPONSE:**

       Grace objects to this request on the basis that the Committee is equally capable of

reviewing the Court's rulings in this Chapter 11 case. It is an abuse of FRCP 36 to use requests

for admission to paraphrase or to recharacterize the Court's rulings or the case docket. Grace

further states that an individual claimant was required to identify all medical and exposure

documents supporting the claim in the Questionnaire response. (*See* Instructions C, D and J to

the Questionnaire). Grace therefore denies this request.

       23.     In each of the years 1994-2000, Grace received more than 400 new mesothelioma claims filed against it.

**RESPONSE:**

       Grace objects to this request because the phrase "new mesothelioma claims filed

against it" is ambiguous. Construing this request to exclude duplicate claims, to include claims

of type consortium, third party, and party to a claim, and without allocation of unknown disease

claims, and counting claims as being "new" solely because they were being filed for the first time against Grace, Grace denies this request because then, depending on the field used to determine the relevant date for allocation by year, Grace may or may not have received more than 400 new mesothelioma claims in each of the years 1994 - 2000.  Grace refers to the asbestos claims database previously provided to the PI Committee as support for this denial.

24.      In each of the years 1994-2000, Grace received more than 500 new mesothelioma claims filed against it.

**RESPONSE:**

Grace objects to this request because the phrase "new mesothelioma claims filed against it" is ambiguous.  Construing this request to exclude duplicate claims, to include claims of type consortium, third party, and party to a claim, and without allocation of unknown disease claims, and counting claims as being "new" solely because they were being filed for the first time against Grace, Grace denies this request because then, depending on the field used to determine the relevant date for allocation by year, Grace may or may not have received more than 500 new mesothelioma claims in each of the years 1994 - 2000.  Grace refers to the asbestos claims database previously provided to the PI Committee as support for this denial.

25.      The average judgment or post-verdict settlement paid by Grace in an asbestos personal injury case which went to verdict in favor of the plaintiff against Grace exceeds $700,000.

**RESPONSE:**

Grace objects that it is impossible to respond to this request because no time period for the request is stated.  Grace further objects that the PI Claimants' Committee has been provided with Grace's verdict payment summary (*see* "W.R. Grace Verdict Payment" list attached to Barbara Harding's October 17, 2006 letter to Nathan Finch), and is equally capable of ascertaining from that list the requested information.

9

26.    The average judgment or post-verdict settlement paid by Grace in an asbestos personal injury case which went to verdict in favor of the plaintiff against Grace exceeds $1,000,000.

**RESPONSE:**

Grace objects that it is impossible to respond to this request because no time

period for the request is stated. Grace further objects that the PI Claimants' Committee has been

provided with Grace's verdict payment summary (*see* "W.R. Grace Verdict Payment" list

attached to Barbara Harding's October 17, 2006 letter to Nathan Finch), and is equally capable

of ascertaining from that list the requested information.

27.    Recognizing the uncertainties of asbestos-related litigation and the possibility that actual amounts could differ materially from the recorded liability, as of the year ending December 31, 2000, for SEC reporting purposes, Grace estimated its liability for asbestos-related litigation at $1,105.9 million.

**RESPONSE:**

Grace denies that the PI Committee has fairly or accurately recited the disclosures

in Grace's 2000 Form 10-K. Grace refers the Committee to the entire discussion of asbestos

litigation and the recorded asbestos liability in that Form 10-K disclosure. In particular, Grace

refers the Committee to the following statement made in that disclosure: "Based on Grace's

experience and trends in asbestos bodily injury litigation, Grace has endeavored to reasonably

forecast the number and ultimate cost of all present and future bodily injury claims expected to

be asserted, based on measures governed by generally accepted accounting principles relating to

probable and estimable liabilities. Grace has accrued $1,105.9 million at December 31, 2000 as

its estimate of liability for all asbestos-related property damage and bodily injury cases and

claims then pending (except for the cases and claims related to Grace's attic fill litigation as

described above), as well as all bodily injury claims expected to be filed in the future. (However,

due to the Chapter 11 filing and the uncertainties of asbestos-related litigation, actual amounts

could differ materially from the recorded liability.)" (2000 Form 10-K, Item 3)

        28.    Recognizing the uncertainties of asbestos-related litigation and the
possibility that actual amounts could differ materially from the recorded liability, as of the year
ending December 31, 2005, for SEC reporting purposes, Grace estimated its liability for
asbestos-related litigation at $1,700.0 million.

**RESPONSE:**

        Grace denies that the PI Committee has fairly or accurately recited the disclosures

in Grace's 2005 Form 10-K. Grace refers the Committee to the entire discussion of asbestos

litigation and the recorded asbestos liability in that Form 10-K disclosure. In particular, Grace

refers the Committee to the fact that the 10-K disclosed that Grace's asbestos-related claims

liabilities "are being accounted for in accordance with the conditions precedent under the Plan

[of Reorganization then on file with the Bankruptcy Court]." (*See* 10-K, at F-14) Grace further

states that the "conditions precedent under the Plan" that were the basis for the 10-K disclosure

were a function of the stage of the plan negotiations at that time. Grace also refers the

Committee to the following statement in that 10-K disclosure: "As claims are resolved, or where

better information becomes available and is evaluated, Grace will make adjustments to the

liabilities recorded on its financial statements as appropriate. Any such adjustments could be

material to its consolidated financial position and results of operations." (*Id.*)

        29.    Grace estimated its asbestos bodily injury liabilities for SEC reporting
purposes based upon historical claim filing levels, settlement averages and dismissal rates.

**RESPONSE:**

        Grace objects to disclosure of information protected by the work product doctrine,

the attorney-client privilege, and the accountant work paper privilege. Grace further objects to

the Committee's failure to specify the time period for this request. Subject to and without

waiving those objections, Grace denies this request. The basis for Grace's recording of asbestos-

related liability is expressly disclosed in each year's 10-K. Grace's 2005 10-K disclosure was

expressly based on the conditions precedent under the pending proposed Plan of Reorganization.

(*see* 10-K at F-14)

      30.    Grace estimated its bodily injury liabilities for SEC reporting purposes based upon its experience with, and recent trends in, asbestos litigation.

**RESPONSE:**

      Grace objects to disclosure of information protected by the work product doctrine,

the attorney-client privilege, and the accountant work paper privilege. Grace further objects to

the Committee's failure to specify the time period for this request. Subject to and without

waiving those objections, Grace denies this request. The basis for Grace's recording of asbestos-

related liability is expressly disclosed in each year's 10-K. Grace's 2005 10-K disclosure was

expressly based on the conditions precedent under the pending proposed Plan of Reorganization.

(*see* 10-K at F-14)

      31.    When making the decision to settle or litigate Individual Asbestos Personal Injury Claims in the years leading up to its chapter 11 filing, Grace considered, among other things, evidence such as the expert opinions and/or fact witness testimony that could be submitted in a trial on behalf of the asbestos personal injury claimant who was asserting a claim against Grace.

**RESPONSE:**

      Grace objects to disclosure of information protected by the work product doctrine

and the attorney-client privilege. Grace further objects that this request improperly seeks to

require disclosure of confidential information protected by Federal Rule of Evidence 408.

Subject to the foregoing objections, Grace denies this request.

      32.    Grace does not know how many people were present at each and every Jobsite or premises during the time(s) in which Grace's Asbestos-Containing Products were sold, supplied, delivered, used, applied, repaired, maintained, installed, distributed, erected, constructed, manufactured, built, sent, or placed at the Jobsite.

**RESPONSE:**

Grace admits that it does not have sufficient information to determine exactly how many people were present at each and every Jobsite or premises referenced in this request. Grace refers the Committee to the documents made available at Grace's asbestos document repository, to the customer invoice database made available to the Committee, to the claims database made available to the Committee, and to other information that has been and will be disclosed in the expert discovery phase of this Chapter 11 case.

33.    Grace does not know how many different individuals in total were Exposed to one or more of Grace's Asbestos Containing Products.

**RESPONSE:**

Grace incorporates herein its response to request no. 32.

34.    Grace does not have any contemporaneous records which identify how many different individuals in total were Exposed to one or more of Grace's Asbestos Containing Products.

**RESPONSE:**

Grace admits that it does not have contemporaneous records which identify how many different individuals in total were present at a Jobsite or other location for at least four hours at a time when Grace's Asbestos-Containing Products were used, applied, delivered, installed, mixed, sprayed or otherwise placed in a location and used in such a manner that the individual would have inhaled respirable asbestos fibers. Grace refers the Committee to the documents made available at Grace's asbestos document repository, to the customer invoice database made available to the Committee, to the claims database made available to the Committee, and to other information that has been and will be disclosed in the expert discovery phase of this Chapter 11 case.

35.    Grace is unable to identify by name those persons who were present on each Jobsite or premises during the time(s) in which Grace's Asbestos-Containing Products were

sold, supplied, delivered, used, applied, repaired, maintained, installed, distributed, erected, constructed, manufactured, built, sent, or placed at the Jobsite.

**RESPONSE:**

      Grace admits this request.

      36.    Grace never made a contemporaneous record of the number or identity of all persons who were present at each and every Jobsite or premises during the time(s) in which Grace's Asbestos-Containing Products were sold, supplied, delivered, used, applied, installed, distributed, erected, constructed, manufactured, built, sent, or placed at the Jobsite.

**RESPONSE:**

      Grace admits this request.

      37.    At least 100,000 different specific individuals were present at one or more Jobsites or premises during a time in which one or more of Grace's Asbestos-Containing Products were used, applied, delivered, installed or otherwise placed in or around a location where such individuals were present.

**RESPONSE:**

      Grace objects to the confusing, overbroad and ambiguous terminology of this request. Subject to that objection, Grace denies this request. Grace is aware of no evidence supporting the assertion made in the request that "[a]t least 100,000 different specific individuals were present at one or more Jobsites or premises during a time in which one or more of Grace's Asbestos-Containing Products were used, applied, delivered, installed or otherwise placed in or around a location where such individuals were present."

      38.    At least 1,000,000 different specific individuals were present at one or more Jobsites or premises during a time in which one or more of Grace's Asbestos-Containing Products were used, applied, delivered, installed or otherwise placed in or around a location where such individuals were present.

**RESPONSE:**

      Denied. Grace incorporates herein its objection and response to request no. 37.

      39.    At least 5,000,000 different specific individuals were present at one or more Jobsites or premises during a time in which one or more of Grace's Asbestos-Containing Products were used, applied, delivered, installed or otherwise placed in or around a location where such individuals were present.

**RESPONSE:**

Denied. Grace incorporates herein its objection and response to request no. 37.

40. At least 25,000,000 different specific individuals were present at one or more Jobsites or premises during a time in which one or more of Grace's Asbestos-Containing Products were used, applied, delivered, installed or otherwise placed in or around a location where such individuals were present.

**RESPONSE:**

Denied. Grace incorporates herein its objection and response to request no. 37.

41. At least 100,000 different specific individuals were exposed to Grace's Asbestos Containing Products.

**RESPONSE:**

Grace objects to the ambiguity of this request. The request is unclear as to

whether "exposed to Grace's Asbestos Containing Products" is intended to mean something

different from the definition of "Exposed to a Grace Asbestos Containing Product" set forth in

the "Definition and Instructions." Subject to that objection, Grace denies this request. Grace is

aware of no evidence supporting the assertion that "at least 100,000 different specific

individuals" "were present at a Jobsite or other location for at least four hours at a time when

Grace's Asbestos-Containing Products were used, applied, delivered, installed, mixed, sprayed

or otherwise placed in a location and used in such a manner such that the individual would have

inhaled respirable asbestos fibers."

42. At least 1,000,000 different specific individuals were exposed to Grace's Asbestos Containing Products.

**RESPONSE:**

Denied. Grace incorporates herein its objection and response to request no. 41.

43. At least 5,000,000 different specific individuals were exposed to Grace's Asbestos Containing Products.

**RESPONSE:**

Denied.  Grace incorporates herein its objection and response to request no. 42.

44.    At least 25,000,000 different specific individuals were exposed to Grace's Asbestos Containing Products.

**RESPONSE:**

Denied.  Grace incorporates herein its objection and response to request no. 42.

## INTERROGATORY

1.    If any of your responses to any of the requests for admission above is anything other than an unqualified admission, please state in detail the basis for your denial or refusal to admit, and identify all documents upon which you base your denial or refusal to admit.

**Response To The Companion Interrogatory Served By The Committee**

Grace objects to this interrogatory because courts have consistently held that parties are not required to explain denials of requests for admission. *See Michael v. Wes Banco Bank, Inc.*, No. 5:04CV46, 2006 WL 1705935 *2 (N.D.W. Va. June 16, 2006) at *3 ("The Federal Rules of Civil Procedure do not require parties to explain a denial."); *Scherer v. GE Capital Corp.*, No. 99-2172-GTV, 2000 WL 303145, at *3 (D. Kan. Mar. 21, 2000) ("Parties may properly respond to a request for admission with a denial.  No further response is warranted. Neither the Federal Rules of Civil Procedure nor the Rules of Practice of the United States District Court for the District of Kansas require parties to explain a denial.").

Nothwithstanding this objection, Grace has generally stated the basis for its objections and responses to these requests for admissions in the above-responses.  Grace further objects to the interrogatory request that it identify all documents supporting Grace's denial or refusal to admit, because that request is unreasonably burdensome and would require Grace to catalogue documents in Grace's asbestos document repository that are equally accessible to the Committee.  Grace further refers the Committee to the customer invoice database, the asbestos

claims database, and to the document repository indices and document lists that have already

been made available to the Committee.  Grace further states that additional evidence supporting

Grace's denials of the foregoing requests has been and will be provided by Grace's testifying

experts.

Dated: November 20, 2006                    Submitted and certified as to objections:

                                            KIRKLAND & ELLIS LLP

                                            David M. Bernick, P.C.
                                            Andrew R. Running
                                            Janet S. Baer
                                            200 East Randolph Drive
                                            Chicago, Illinois 60601
                                            (312) 861-2000

                                            and

                                            PACHULSKI, STANG, ZIEHL, YOUNG
                                            JONES & WEINTRAUB PC
                                            Laura Davis Jones (#2436)
                                            James E. O'Neill (#4042)
                                            919 North Market Street, 16th Floor
                                            P.O. Box 8705
                                            Wilmington, Delaware 19899-8705 (Courier
                                            19801)
                                            Telephone: (302) 652-4100
                                            Facsimile:   (302) 652-4400

                                            Co-Counsel for the Debtors and Debtors in
                                            Possession

## CERTIFICATION

John V. Port, being first duly sworn, on oath deposes and says he is the Controller, LSG of Debtor W. R. Grace & Co., that he has read the foregoing answers to requests for admission and answer to interrogatory and knows the contents thereof; that said answers were prepared by and with the assistance of employees and representatives of the corporation, with the assistance and advice of counsel, upon which he has relied; that the answers set forth herein, subject to inadvertent or undiscovered errors, are based on and therefore necessarily limited by the records and information still in existence, presently recollected and thus far discovered in the course of the preparation of these answers; that consequently W. R. Grace & Co. reserves the right to make any changes in the answers if it appears at any time that omissions or errors have been made therein or that more accurate information is available; and that subject to the limitations set forth herein the said answers are true to the best of his present knowledge, information and belief.

_____
JOHN V. PORT

STATE OF FLORIDA            )
                                            )  ss
COUNTY OF PALM BEACH    )

Subscribed and sworn to before
me this 20th day of November, 2006,
by John V. Port, who is personally
known to me.

_____
NOTARY PUBLIC

Jody M. Crossman
Commission # DD444750
Expires June 26, 2009
Bonded Troy Fain - Insurance, Inc  800-385-7013

50000.0/368437.1