# EXHIBIT B

# WR Grace

### Bankruptcy Form 10
#### Index Sheet

SR00000736

| Claim Number: | 00014648 | Receive Date: | 03/31/2003 |
|---|---|---|---|

## Multiple Claim Reference

Claim Number _____

- [ ] MMPOC — Medical Monitoring Claim Form
- [ ] PDPOC — Property Damage
- [ ] NAPO — Non-Asbestos Claim Form
- [ ] — Amended

Claim Number _____

- [ ] MMPOC — Medical Monitoring Claim Form
- [ ] PDPOC — Property Damage
- [ ] NAPO — Non-Asbestos Claim Form
- [ ] — Amended

## Attorney Information

| Firm Number: | 00406 | Firm Name: | Morgan Lewis & Brockius LLP |
|---|---|---|---|
| Attorney Number: | 00290 | Attorney Name: | Richard W Esterkin |

Zip Code: 90071-3132

Cover Letter Location Number: SR00000736

| Attachments Medical Monitoring | Attachments Property Damage | Non-Asbestos |
|---|---|---|
| [ ] TBD | [ ] TBD | [X] Other Attachments |
| [ ] TBD | [ ] TBD | |
| [ ] TBD | [ ] TBD | |
| [ ] TBD | [ ] TBD | |
| [ ] TBD | [ ] TBD | |
| | [ ] Other Attachments | |

**Other**

- [ ] Non-Standard Form
- [ ] Amended
- [ ] Post-Deadline Postmark Date

Box/Batch: WRBF0046/WRBF0181                    Document Number: WRBF009038

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF Delaware

**GRACE NON-ASBESTOS PROOF OF CLAIM FORM**

Name of Debtor:[1] Creative Food 'N Fun Company | Case Number 01-1148

NOTE: Do not use this form to assert an Asbestos Personal Injury Claim, a Settled Asbestos Claim or a Zonolite Attic Insulation Claim. Those claims will be subject to a separate claims submission process. This form should also not be used to file a claim for an Asbestos Property Damage Claim or Medical Monitoring Claim. A specialized proof of claim form for each of these claims should be filed.

Name of Creditor (The person or other entity to whom the Debtor owes money or property):
Del Taco, Inc.

Name and address where notices should be sent:
Richard W. Esterkin
Morgan, Lewis & Bockius LLP
300 South Grand Avenue, Suite 2200
Los Angeles, CA 90071-3132

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies Debtor:
N/A

Check here ☐ replaces
if this claim ☐ amends a previously filed claim, dated:_____

Corporate Name, Common Name, and/or d/b/a name of specific Debtor against whom the claim is asserted:
Creative Food 'N Fun Company

| 1. Basis for Claim | |
|---|---|
| ☐ Goods sold | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a) |
| ☐ Services performed | ☐ Wages, salaries, and compensation (fill out below) |
| ☐ Environmental liability | |
| ☐ Money loaned | Your SS #:_____ _____ _____ |
| ☐ Non-asbestos personal injury/wrongful death | Unpaid compensation for services performed |
| ☐ Taxes | from _____ to _____ (date) |
| ☒ Other   Contract | |

2. Date debt was incurred:  July 7, 1992 | 3. If court judgment, date obtained:  N/A

4. Total Amount of Claim at Time Case Filed:  $ Unknown
  If all or part of your claim is secured or entitled to priority, also complete Item 5 below.
  ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. Classification of Claim. Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured Nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☐ SECURED CLAIM (check this box if your claim is secured by collateral, including a right of setoff.)

  Brief Description of Collateral:

  ☐ Real Estate          ☐ Other (Describe briefly)
  _____

Amount of arrearage and other charges at time case filed included in secured claim above, if any: $_____

  Attach evidence of perfection of security interest

☐ UNSECURED NONPRIORITY CLAIM

  A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM - Specify the priority of the claim.

☐ Wages, salaries, or commissions (up to $4650), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(7).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a(_____).

6. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

This Space is for Court Use Only

7. Supporting Documents: *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8. Acknowledgement: Upon receipt and processing of this Proof of Claim, you will receive an acknowledgement card indicating the date of filing and your unique claim number. If you want a file stamped copy of the Proof of Claim form itself, enclose a self-addressed envelope and copy of this proof of claim form.

Date
3/28/03

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
Richard W. Esterkin, Attys. for Del Taco, Inc.

WR Grace    BF.46.181.9038
00014648
SR=736

REC'D MAR 3 1 2003

ORIGINAL

[1] See General Instructions and Claims Bar Date Notice and its exhibits for names of all Debtors and "other names" used by the Debtors.

 

# SPECIFIC INSTRUCTIONS FOR COMPLETING
## GRACE NON-ASBESTOS PROOF OF CLAIM FORMS

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, there may be exceptions to these general rules.*

This Proof of Claim form is for Creditors who have Non-Asbestos Claims against any of the Debtors. Non-Asbestos Claims are any claims against the Debtors as of a time immediately preceding the commencement of the Chapter 11 cases on April 2, 2001 other than Asbestos Personal Injury Claims, Asbestos Property Damage Claims, Zonolite Attic Insulation Claims, Settled Asbestos Claims or Medical Monitoring Claims, as defined on the enclosed General Instructions. More specifically, Non-Asbestos Claims are those claims against one or more of the Debtors, whether in the nature of or sounding in tort, contract, warranty or any other theory of law or equity for, relating to or arising by reason of, directly or indirectly, any injury, damage or economic loss caused or allegedly caused directly or indirectly by any of the Debtors or any products or materials manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors and arising or allegedly arising directly or indirectly, from acts or omissions of one or more of the Debtors, including, but not limited to, all claims, debts, obligations or liabilities for compensatory and punitive damages.

**Administrative Expenses:** Those claims for, among other things, the actual, necessary costs and expenses of preserving the estate as defined in Section 503 of the Bankruptcy Code that arose after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to Section 503 of the Bankruptcy Code. This form should not be used to make a claim for an administrative expense.

**Secured Claim:** A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property. Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right to setoff), the creditor's claim may be a secured claim. (See also Unsecured Claim.)

**Unsecured Claim:** If a claim is not a secured claim, it is an unsecured claim. Unsecured claims are those claims for which a creditor has no lien on the debtor's property or the property on which a creditor has a lien is not worth enough to pay the creditor in full.

**Unsecured Nonpriority Claim:** Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as Unsecured Nonpriority Claims.

**Information about Creditor:** Complete this section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the court which sent notice, or if this proof of claim replaces or amends a proof of claim that was already filed, check the appropriate box on the form.

1.  **Basis for Claim:** Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in your social security number and the dates of work for which you were not paid.

2.  **Date Debt Incurred:** Fill in the date the debt was first owed by the debtor.

3.  **Court Judgments:** If you have a court judgment for this debt, state the date the court entered the judgment.

4.  **Amount of Claim:** Insert the amount of claim at the time the case was filed in the appropriate box based on your selected Classification of Claim in item 5. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

5.  **Classification of Claim:** Check either Secured, Unsecured Nonpriority or Unsecured Priority as appropriate. (See Definitions above.)

    **Unsecured Priority Claim:** Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See Definitions, above.) A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

6.  **Credits:** By signing this proof of claim, you are stating under oath that in calculating the amount of your claim, you have given the debtor credit for all payments received from the debtor.

7.  **Supporting Documents:** You must attach to this proof of claim form, copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

*Be sure to date the claim and place original signature of claimant or person making claim for creditor where indicated at the bottom of the claim form. Please type or print name of individual under the signature. Be sure all items are answered on the claim form. If not applicable, insert "Not Applicable".*

RETURN CLAIM FORM (WITH ATTACHMENTS, IF ANY) TO THE FOLLOWING CLAIMS AGENT FOR THE DEBTORS:

> Claims Processing Agent
> Re: W. R. Grace & Co. Bankruptcy
> P.O. Box 1620
> Faribault, MN 55021-1620

The Bar Date for filing all NON-ASBESTOS CLAIMS against the Debtors is March 31, 2003 at 4:00 p.m. Eastern Time.

## ATTACHMENT TO PROOF OF CLAIM

This Proof of Claim is based upon a Modification and Purchase Agreement between Creative Food 'N Fun Company ("Creative") and Del Taco Inc. ("Del Taco") dated July 7, 1992, a copy of which is attached hereto as Exhibit "1" (the "Modification Agreement"). Creative's obligations under the Modification Agreement were guarantied by W.R. Grace & Co. – Conn. pursuant to the terms of a written "Guaranty" appended to the Modification Agreement.

Pursuant to the provisions of paragraph 8 of the Modification Agreement, Creative was obligated to indemnify Del Taco against certain losses, claims, damages, liabilities and expenses (including, without limitation, reasonable attorney's fees and other legal expenses) arising from or out of certain facts, obligations or transactions. On January 19, 1996, William Baker, Eber Jaques, Bradford Miller, Montgomery R. Fisher, Sharon R. Ormsbee, Marilyn Rea and the Fisher Trust commenced an action against Del Taco in the Superior Court of the State of California, for the County of Orange entitled Baker, et al. v. W.R. Grace & Co., etc., et al., Case No. 758512 (the "Baker Action"). A copy of the complaint in the Baker Action is attached hereto as Exhibit "2." Del Taco denies that it is liable to the plaintiffs in the Baker Action as alleged in the Baker Action. No trial has, as yet, taken place in the Baker Action.

Pursuant to the terms of the Modification Agreement, Del Taco is entitled to indemnification from Creative of its costs of defending against the Baker Action and against any liability that it may have to the plaintiffs in the Baker Action. As of the date of this Proof of Claim, Del Taco has actually incurred attorneys fees and other costs of defending against the Baker Action. Del Taco anticipates that it will incur additional attorneys fees and costs of defending against the Baker Action in the future and reserves the right to include such future costs and expenses in this Proof of Claim. In addition, although Del Taco denies that it is liable to plaintiffs in the Baker Action as alleged therein, in the event that Del Taco is found liable to the plaintiffs in the Baker Action for any amount, Del Taco reserves the right to include the amount that it may be required to pay to plaintiffs in the Baker Action on account of the Baker Action in this Proof of Claim. As the amount of such future damages is presently unknown, Del Taco is filing this Proof of Claim in an "unknown" amount. Del Taco will furnish the then present amount that it has expended in relation to the Baker Action upon request.

**1**

7/7/9≤  18

## MODIFICATION AND PURCHASE AGREEMENT

AGREEMENT dated July 7, 1992, between CREATIVE FOOD 'N FUN COMPANY, a Delaware corporation ("CFF"), and DEL TACO, INC., a California corporation ("DTI").

### W I T N E S S E T H:

WHEREAS, pursuant to the Conveyance Agreement dated September 16, 1977 (the "Original Conveyance Agreement"), between DTI and DTG, Inc. (whose current name is Del Taco Corporation), a Delaware corporation ("DTC"), DTI transferred to DTC all right, title and interest of DTI in and to (i) the name "Del Taco" everywhere in the Domestic Territory (as defined therein), (ii) United States trademark registration no. 1035949, together with the goodwill symbolized thereby, (iii) all state trademark registrations with respect to the name "Del Taco" except for registrations in California, and (iv) the Del Taco System (as defined therein) for use everywhere in the Domestic Territory;

WHEREAS, pursuant to the Service Mark License Agreement dated September 16, 1977 (the "Service Mark License Agreement"), between DTC and DTI, DTC granted to DTI the right to use the service mark "Del Taco," including the form thereof which is the subject of United States trademark registration no. 1035949, in the State of California and in Yuma, Arizona;

WHEREAS, capitalized terms used but not defined herein are used with the definitions given them in the Original Conveyance Agreement as amended by Amendment No. 1 thereto dated March 30, 1981 (the "Conveyance Agreement");

WHEREAS, pursuant to the Del Taco System and Trademark Purchase Agreement and two Assignment and Assumption Agreements, each dated as of March 1, 1984, between DTC and CFF, DTC (i) sold to CFF its entire right, title and interest in and to the Trademarks, Registrations and Del Taco System (all as defined therein), together with the goodwill of the business symbolized by the Trademarks (as defined therein), and (ii) assigned to CFF its rights and obligations under the Conveyance Agreement and the Service Mark License Agreement;

WHEREAS, CFF has operated restaurants under the Del Taco name and has franchised a system for operating Mexican fast food restaurants under the Del Taco name based on the Del Taco System (the "CFF System");

WHEREAS, CFF has entered into an agreement to sell substantially all of the fee and leasehold properties at which CFF and its affiliates currently operate such restaurants (the "Properties Sale Agreement"); and

deldti.agt



EXHIBIT 1
PAGE 4

2

WHEREAS, Article 4 of the Conveyance Agreement ("Article 4") provides, on the terms and conditions set forth therein, that if, as at the end of a calendar year, the Average Stores Starts are less than 25, DTI may thereupon notify CFF that it will exercise the right (the "Article 4 Right") to open DTI Stores in the Domestic Territory;

WHEREAS, the Average Stores Starts at December 31, 1991, were less than 25; CFF does not intend to open or franchise additional Company Stores; and DTI has notified CFF that it will exercise the Article 4 Right;

WHEREAS, the parties wish to modify the Article 4 Right and to provide for the servicing of certain franchisees of CFF under the development and franchise agreements listed in **Exhibit A** hereto (the "Franchise Agreements"); and CFF wishes to sell to DTI and DTI wishes to acquire from CFF all of CFF's right, title and interest in and to certain related assets;

NOW, THEREFORE, in consideration of the premises and the mutual agreements contained herein, the parties hereto agree as follows:

1. (a) Modification of Article 4. Article 4 is hereby modified to delete (i) the one-year period described in Article 4 and (ii) the payment requirements of Section 4.04 of the Conveyance Agreement.

(b) Purchase and Sale. CFF hereby sells, transfers and assigns to DTI and DTI hereby purchases and accepts from CFF all of CFF's right, title and interest in and to the furniture, equipment and other personal property described in **Exhibit B** hereto (the "Purchased Assets"); provided that CFF shall retain possession, control and use of the Purchased Assets for a limited period as provided in Section 4(f) hereof.

(c) Consideration. In consideration for the modification of Article 4, and the sale, transfer and assignment by CFF of the Purchased Assets to DTI, DTI is paying to CFF, in the manner described in Section 2(b), the sum of $350,000 (the "Purchase Price").

2. Actions of the Parties at the Closing. The closing of the transactions contemplated by this Agreement (the "Closing") is taking place on the date hereof. All of the actions being taken and instruments and other documents being delivered at the Closing are being taken or delivered, as the case may be, simultaneously with the execution and delivery of this Agreement, and no action or delivery shall be effective until all actions to be taken and

deldti.agt

EXHIBIT 1
PAGE 2

3

deliveries to be made at the Closing, as contemplated by this Agreement, are complete. At the Closing:

(a). CFF is executing and delivering to DTI a general bill of sale and other instruments of sale, transfer and assignment in order to convey to DTI all of CFF's right, title and interest in and to the Purchased Assets.

(b) DTI is delivering to CFF, in payment of the Purchase Price, (i) $50,000 in immediately available funds and (ii) a secured promissory note (the "Note") in the principal amount of $300,000, payable in six semiannual installments of $50,000 on each March 30 and September 30 commencing March 30, 1993, and continuing through September 30, 1995, each of which installments shall be accompanied by payment of accrued interest on the unpaid principal balance at a rate of 10% per annum.

(c) CFF and DTI are executing and exchanging counterparts of (i) a management agreement (the "Management Agreement") providing for the performance by DTI on behalf of CFF of CFF's obligations under the Franchise Agreements and (ii) an assignment and security agreement (the "Security Agreement") whereby, in order to secure DTI's obligations under the Note and this Agreement, DTI is assigning to CFF and granting to CFF a security interest in certain collateral (the "Collateral"), including (A) the Purchased Assets; (B) DTI's rights under any Franchise Agreement hereinafter assumed by DTI; and (C) DTI's rights under any agreement granting any other person or entity any rights in or with respect to DTI's rights under Article 4. The Security Agreement shall also provide that in the event of a purchase pursuant to Section 4(d) hereof, the rights so purchased shall be included in the Collateral.

(d) CFF is delivering to DTI the opinion of its General Counsel as to certain of the matters set forth in Section 5.

(e) DTI is delivering to CFF the opinion of Messrs. Morgan, Lewis & Bockius as to certain of the matters set forth in Section 6.

(f) DTI is delivering to CFF the consent of General Electric Capital Corporation ("GECC") to the transactions contemplated by this Agreement and the exclusion of the Collateral from any lien of GECC.

3. Franchise Agreements. (a) As used in this Agreement, "Section 3.01 Comfort" with respect to a transaction means reasonably satisfactory evidence that such transaction would not give rise to liability of DTI under Section 3.01 of the Conveyance Agreement in connection with DTI's exercise of its rights under

deldti.agt

EXHIBIT 1
PAGE 9

4

Article 4. Without limiting the generality of the foregoing, any of the following shall constitute Section 3.01 Comfort: (i) agreement or acknowledgement by those holding rights under Section 3.01 that there is no such liability; or (ii) a final judgment by a court of competent jurisdiction that there is no such liability; or (iii) an opinion of counsel reasonably satisfactory to DTI that there is no such liability. CFF shall use all reasonable efforts to obtain the agreement or acknowledgement contemplated by clause (i) of the immediately preceding sentence; provided that CFF shall not be obligated to pay any consideration or incur any obligation in order to obtain such agreement or acknowledgement.

(b) From and after the date hereof, DTI shall use all reasonable efforts to cause the franchisees under the Franchise Agreements (the "Franchisees") to become franchisees of DTI under its own restaurant system (the "DTI System") and to enter into general releases of CFF and its affiliates from all obligations under the applicable Franchise Agreements. The franchise terms to be offered by DTI to the Franchisees shall be in accordance with the standards set forth in **Exhibit C** hereto. The foregoing provisions of this Section 3(b) shall be conditioned on the obtaining or receipt by DTI of Section 3.01 Comfort with respect to the transaction contemplated thereby. Any Franchisee which does not elect to become a franchisee of the DTI System and does not give any required consent to the assignment of its Franchise Agreement(s) shall remain a Franchisee pursuant to the terms of its Franchise Agreement(s) and shall be covered by the Management Agreement.

(c) If Del Taco Restaurants, Inc., CFF's corporate parent, is unable to terminate any of its eight Taco Villa franchises in Texas, DTI will supply administrative services to such franchisees for compensation and on such other terms and conditions as shall be agreed to by the parties.

4. **Additional Agreements.** The parties further agree as follows:

(a)(i) Unless DTI shall breach or default on its obligations under this Agreement, the Note or the Security Agreement, CFF hereafter shall not sell or grant any franchise or other interest in the Del Taco Rights (as defined below) to any other person or entity, or open additional Del Taco restaurants.

(a)(ii) If at any time CFF shall have the right to declare DTI's obligations under the Note immediately due and payable, or if the entire principal balance of and accrued interest on the Note are not paid in full at the maturity of the Note, CFF shall have the right, exercisable by notice to DTI (a "Reinstatement Notice"), to terminate DTI's rights under Sections 4(c) and 8

deldti.agt



EXHIBIT 1
PAGE 7

5

hereof and reinstate the provisions of Article 4 as in effect immediately prior to the execution and delivery of this Agreement. Such reinstatement is not an exclusive remedy and shall not otherwise affect DTI's obligations or CFF's rights or remedies under the Note, this Agreement, the Security Agreement or any other instrument or document delivered pursuant hereto or thereto. In the event of such reinstatement, DTI thereupon shall pay CFF an amount equal to the aggregate amounts that would have been payable under the reinstated payment provisions of Article 4, during the period from the execution hereof until the date of such reinstatement, if the reinstated payment provisions of Article 4 had been in effect throughout such period. The provisions of this paragraph are subject to the condition that if, within ten days after DTI's receipt of a Reinstatement Notice, DTI shall pay the principal balance of the Note, together with interest accrued through the date of payment and any other amount due under this Agreement, the Note or the Security Agreement, then the termination and reinstatement resulting from such Reinstatement Notice shall be deemed cancelled.

(b) The intellectual property rights licensed to DTI under the Article 4 Rights shall be administered in accordance with the quality control standards and other terms set forth in **Exhibit D** hereto.

(c) At any time after DTI has satisfied all of its obligations under this Agreement, the Note and the Security Agreement, DTI shall have the right, exercisable by notice to CFF, to purchase from CFF for a purchase price of $1,000.00 all of CFF's right, title and interest in and to the Tradename and the United States federal and state trademarks, trademark registrations and trademark applications with respect to the Tradename and the operation of Mexican fast food restaurants, including those listed on **Exhibit E** hereto (the "CFF Trademark Rights"), together with the goodwill symbolized by the Tradename and the CFF Trademark Rights (collectively, the "Del Taco Rights").

(d) If at any time hereafter DTI shall obtain or be provided with Section 3.01 Comfort with respect to the assignment to DTI of the Franchise Agreements, then (i) the parties shall enter into an assignment and assumption agreement in the form of **Exhibit F** hereto with respect to the Franchise Agreements; and (ii) CFF shall have the right, exercisable by notice to DTI, to sell to DTI for a purchase price of $1,000.00 all of CFF's right, title and interest in and to the Del Taco Rights.

(e) In the event of the exercise of the rights set forth in paragraph (c) or (d) of this Section, the purchase shall be effected by agreements and other documents reasonably satisfactory to the parties, including documents to effect the termination of

deldti.agt



EXHIBIT ____1____
PAGE ____8____

6

the Conveyance Agreement and the Service Mark License Agreement.
Such purchase shall be subject to the provisions of Section 7
hereof.    In connection with such purchase, DTI shall grant the
following nontransferable licenses: (i) to CFF and its affiliates,
a nonexclusive, paid-up license to use the Del Taco Rights to
continue to operate any Del Taco restaurants owned and operated by
CFF or its affiliates on the date hereof until such restaurants (A)
are sold pursuant to the Properties Sale Agreement or otherwise or
(B) cease to be operated as Mexican fast food restaurants; (ii) to
each Franchisee covered by the Management Agreement, for so long as
its Franchise Agreement(s) remain in effect, a nonexclusive, paid-
up license to use the Del Taco Rights for the purpose of continuing
its operations under such Franchise Agreement(s); and (iii) at the
option of CFF, to each Del Taco franchisee of CFF not covered by
the Management Agreement, for so long as its franchise agreement(s)
remain in effect, a nonexclusive, paid-up license for a term of
twelve months from the date of such purchase, to use the Del Taco
Rights for the purpose of continuing its operations under such
franchise agreement(s).

        (f) Notwithstanding the sale of the Purchased Assets to
DTI as provided herein, CFF shall retain possession, control and
use of certain of the Purchased Assets listed in **Exhibit B** hereto
under the heading "Del Taco Furniture and Equipment" (the "Office
Assets") on a rent-free basis for so long as CFF and its affiliates
require the Office Assets in connection with operations at their
office in Atlanta, Georgia; provided that in any event CFF's rights
under this paragraph shall expire on March 30, 1993.  CFF shall have
no obligation for ordinary wear and tear of the Office Assets.  In
the event of material casualty to the Office Assets, CFF shall pay
to DTI a maximum of $10,000 for the Office Assets damaged or
destroyed.  If there is any material casualty to the Office Assets
constituting less than a total loss, CFF shall pay DTI a reasonable
portion of such amount depending upon the extent of damage.  Any
such casualty payment shall be made by deductions from the last
installment of principal on the Note.  When the rights granted
under this paragraph are no longer required by CFF or have expired,
DTI shall remove the Office Assets from CFF's offices in Atlanta,
Georgia, at DTI's expense.    CFF shall supply all reasonable
cooperation to facilitate such removal.

        5. Representations and Warranties of CFF.

        The representations and warranties set forth in this
Section shall not provide the basis for any claim against CFF as to
matters of which DTI or any of its officers, employees, attorneys
or accountants has actual knowledge or awareness on the date of
this Agreement. The representations set forth in this Section as
to knowledge of the CFF Executives are as to the actual present
personal knowledge of such individuals at the date of this

deldti.agt

EXHIBIT _____
PAGE _____ 9

7

Agreement.   As used in this Section, the term "CFF Executives"
means B.A. Schulte, President of CFF; E.A. Kray, Vice President and
COO of CFF; and S.E. Zelac, Assistant Vice President, Business
Development Group of W.R. Grace & Co.

CFF hereby represents and warrants to DTI as follows:

(a) CFF is a corporation duly organized, validly existing
and in good standing under the laws of Delaware, with full
corporate power to enter into this Agreement and to perform its
obligations hereunder.

(b) The execution and delivery by CFF of this Agreement,
and the performance by CFF of its obligations hereunder, have been
duly and validly authorized by all necessary corporate action of
CFF.   The CFF Transaction Documents have been duly executed and
validly delivered by CFF and are legally binding on CFF.

(c) The execution and delivery of this Agreement, the
Security  Agreement  and  the  Management  Agreement  (the  "CFF
Transaction Documents") by CFF and the performance by CFF of its
obligations thereunder will not (i) conflict with the Certificate
of Incorporation or By-laws of CFF, (ii) require CFF to obtain any
authorization, action, consent, order, approval of, or to give
notice to or seek review by or make any filing, registration or
qualification  with,  any  governmental,  quasi-governmental,
administrative  or  judicial  body,  agency,  instrumentality  or
authority, except for such of the foregoing as has been obtained or
effected or which the failure to obtain or effect would not have a
material adverse effect on CFF's execution or delivery of this
Agreement or the performance by CFF of its obligations hereunder,
or (iii) result in the breach of any of the provisions of, or
constitute a default under, any agreement, instrument or other
document to which CFF is a party or by which it is bound, which
breach or default would have a material adverse affect on the
transactions contemplated by this Agreement.

(d) Except as set forth on **Schedule 5(d)** hereto, insofar
as the CFF Executives have knowledge, after consultation with
Randall S. Strange, Senior Litigation Counsel of the Legal Services
Division of W.R. Grace & Co., no action, suit or proceeding before
any court or any governmental or regulatory authority and no
investigation by any governmental or regulatory authority has been
commenced or is threatened against CFF or its affiliates, officers
or  directors,  seeking  to  restrain,  prevent  or  change  the
transactions contemplated by this Agreement or questioning the
validity of any of such transactions or seeking damages against DTI
or  any  of  its  affiliates  in  connection  with  any  of  such
transactions.

deldti.agt

EXHIBIT ___1___
PAGE ___10___

8

(e) Except for rights granted to DTI and under the Franchise Agreements, CFF has made no currently effective grant of any rights in the Del Taco Rights to any person or entity.

### 6. Representations and Warranties of DTI.

The representations and warranties set forth in this Section shall not provide the basis for any claim against DTI as to matters of which CFF or any of its officers, employees, attorneys or accountants has actual knowledge or awareness on the date of this Agreement. The representations set forth in this Section as to knowledge of the DTI Executives are as to the actual present personal knowledge of such individuals at the date of this Agreement. As used in this Section, the term "DTI Executives" means Kevin K. Moriarty, President of DTI; and Harold Fox, Vice President and Chief Financial Officer of DTI.

DTI hereby represents and warrants to CFF as follows:

(a) DTI is a corporation duly organized, validly existing and in good standing under the laws of California, with full corporate power to enter into this Agreement and to perform its obligations hereunder.

(b) The execution and delivery of this Agreement, the Note, the Security Agreement, the Management Agreement and the instruments and documents contemplated hereby and thereby (the "DTI Transaction Documents") by DTI, and the performance by DTI of its obligations thereunder, have been duly and validly authorized by all necessary corporate action of DTI. The DTI Transaction Documents have been (or on their execution and delivery will be) duly executed and validly delivered by DTI and are (or upon their execution and delivery will be) legally binding on DTI.

(c) The execution and delivery of the DTI Transaction Documents by DTI, and the performance by DTI of its obligations thereunder, will not (i) conflict with the Articles of Incorporation or By-laws of DTI, (ii) require DTI to obtain any authorization, action, consent, order, approval of, or to give notice to or seek review by or make any filing, registration or qualification with, any governmental, quasi-governmental, administrative or judicial body, agency, instrumentality or authority, except for such of the foregoing as has been obtained or effected or which the failure to obtain or effect would not have a material adverse effect on DTI's execution or delivery of the DTI Transaction Documents or the performance by DTI of its obligations thereunder, (iii) result in the imposition of any lien, encumbrance, charge, pledge or hypothecation (each a "Lien") of or on any of the Purchased Assets, except as may be provided under the Security Agreement, or (iv) result in the breach of any of the

deldti.agt

EXHIBIT _____
PAGE ___(( ___

9

provisions of, or constitute a default under, any agreement, instrument or other document to which DTI is a party or by which it is bound, which breach or default would have a material adverse affect on the transactions contemplated by this Agreement.

(d) Insofar as the DTI Executives have knowledge, after consultation with Morgan, Lewis & Bockius, counsel to DTI, no action, suit or proceeding before any court or any governmental or regulatory authority and no investigation by any governmental or regulatory authority has been commenced or is threatened against DTI or its affiliates, officers or directors, seeking to restrain, prevent or change the transaction contemplated by this Agreement or questioning the validity of any of such transactions or seeking damages against CFF or any of its affiliates in connection with any of such transactions.

(e) DTI is not and will not be party to or bound by any agreement, instrument or other document which grants any third party a Lien in or with respect to any of the Collateral prior to the payment in full of all of DTI's obligations under the DTI Transaction Documents.

7. **Disclaimers**.  The parties acknowledge and agree as follows:

(a) The transactions contemplated by this Agreement are primarily a license to DTI of, together with the grant to DTI of an option to purchase, the Tradename and the CFF Trademark Rights and associated goodwill. DTI is entering into the Management Agreement and agreeing (subject to the terms and conditions set forth herein) to assume the Franchise Agreements as an accommodation to CFF. DTI does not intend to utilize the CFF System, to the extent that it differs from DTI's own restaurant concepts and systems, in any material respect other than in connection with performing its obligations under the Franchise Agreements. CFF is not making, and hereby expressly excludes and disclaims, any and all representations or warranties of any kind, whether express or implied, regarding the Article 4 Right, the Franchise Agreements or the Franchisees, including (but without limiting the generality of the foregoing) any warranty of validity, title, freedom from encumbrance, freedom from claim of infringement, performance, profitability, or fitness or effectiveness for any purpose.

(b) DTI has examined the Purchased Assets to its satisfaction and is purchasing the Purchased Assets "**AS IS**". CFF is not making, and hereby expressly excludes and disclaims, any and all representations or warranties, whether express or implied, of any nature with respect to the Purchased Assets, including (but without limiting the generality of the foregoing) any warranty of validity, title, freedom from encumbrance, freedom from claim of

deldti.agt

EXHIBIT 1
PAGE 12

10

infringement, merchantability, condition, state of repair, or fitness or effectiveness for any purpose, of or with respect to the Purchased Assets, other than the representations and warranties of CFF specifically set forth in Section 5.

(c) DTI has taken full responsibility for evaluating the legal assignability of CFF's rights in the Purchased Assets and the Franchise Agreements, and CFF shall have no liability on account of any legal questions concerning the effectiveness of any such assignment; provided, however, that nothing in this Section shall diminish CFF's obligations under Section 9(a).

(d) DTI disclaims and does not assume any liability for breaches under the Franchise Agreements occurring prior to the date hereof.

8. <u>Indemnification; Survival</u>. (a)  CFF shall indemnify and hold harmless DTI and its direct and indirect subsidiaries from and against any and all losses, claims, damages, liabilities and expenses, including (but without limiting the generality of the foregoing) reasonable attorneys' fees and other legal expenses (collectively, "Losses") arising from or out of or with respect to the breach of any representation, warranty, covenant or agreement of CFF contained in the CFF Transaction Documents.

CFF shall indemnify and hold harmless DTI and its direct and indirect subsidiaries from and against any and all Losses arising from or out of or with respect to litigation commenced in any federal or state court in which DTI is a defendant, claiming liability for amounts allegedly payable under Section 3.01 of the Conveyance Agreement.

(b) DTI shall indemnify and hold harmless CFF and its direct and indirect parents and subsidiaries from and against any and all Losses arising from or out of or with respect to the breach of any representation, warranty, covenant or agreement of DTI contained in the DTI Transaction Documents.

(c) A party seeking indemnification under this Section (the "Indemnitee") will give prompt notice (a "Claim Notice") to the indemnifying party (the "Indemnitor") of any Loss for which the Indemnitor is seeking such indemnification. The Claim Notice will describe such Loss in reasonable detail. With respect to any claim in a Claim Notice relating to a third party claim, the Indemnitor at its expense may defend such third party claim, and the Indemnitee at its own expense shall have the right to participate in such defense.  So long as the Indemnitor is defending in good faith such third party claim, the Indemnitee shall not settle or compromise such third party claim.  The Indemnitee shall cooperate fully with the Indemnitor in the defense of such third party claim.

deldti.agt

EXHIBIT __1__
PAGE __12__

11

If the Indemnitor does not elect to defend such third party claim, the Indemnitee may at its election defend such third party claim at the Indemnitor's expense if the Indemnitor does not provide the Indemnitee with reasonable assurances that the Indemnitor will either satisfy or defend such third party claim.

(d) The representations and warranties contained in this Agreement shall survive the closing of the transactions contemplated hereby and the delivery of this Agreement and any other instruments or documents delivered pursuant hereto or in connection herewith, for a period of one year from the date hereof, and no claim for indemnification under this Section with respect to such representations and warranties shall be effective unless a Claim Notice with respect thereto shall have been given in accordance with the provisions of this Agreement within one year from the date hereof.

9.   Miscellaneous.

(a) Further Actions.  From time to time each party, as and when requested by the other party, shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to carry out the intent and purposes of this Agreement and to consummate the transactions contemplated hereby.

(b) Expenses.  Each party shall pay its own expenses in connection with the negotiation, execution, delivery and performance of this Agreement.

(c) Entire Agreement.  This Agreement (which includes the Schedules and Exhibits hereto) and the other documents, agreements and instruments executed and delivered pursuant to or in connection with this Agreement, contain the entire agreement between the parties with respect to the transactions contemplated by this Agreement and supersede all prior arrangements or understandings with respect thereto.

(d) Descriptive Headings.  The descriptive headings of this Agreement are for convenience only and shall not control or affect the meaning or construction of any provision of this Agreement.

(e) Notices.  All notices or other communications which are required or permitted hereunder shall be in writing and sufficient if delivered personally or by facsimile transmission, or sent and delivered by registered or certified mail, postage prepaid, addressed as follows:

deldti.agt

EXHIBIT  1
PAGE  14

12

If to CFF:

       Creative Food 'N Fun Company
       c/o W.R. Grace & Co.-Conn.
       One Town Center Road
       Boca Raton, FL 33486-1010
       Attention:  Secretary
       Facsimile number:    407-362-1635
       Confirmation number: 407-362-1645


If to DTI:

       Del Taco, Inc.
       345 Baker Street
       Costa Mesa, CA  92626
       Attention:  President
       Facsimile number:    (714) 641-3612
       Confirmation number: (714) 641-3601

       with a copy to:

       General Electric Capital Corporation
       292 Long Ridge Road
       Stamford, CT 06927-5150
       Attention:  William Cary
       Facsimile number:    (203) 357-4025
       Confirmation number: (203) 357-3100

Either party hereto may by notice change the address to which notice or other communications to it are to be delivered or mailed.

      (f)  <u>Governing Law; Consent to Jurisdiction; Waiver of Jury Trial</u>.

      (i)  THIS AGREEMENT AND THE OTHER DTI TRANSACTION DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, EXCEPT FOR ANY PRINCIPLES OF CONFLICT OF LAWS THAT WOULD OTHRWISE REQUIRE THE APPLICATION OF THE LAWS OF A JURISDICTION OTHER THAN NEW YORK.

      (ii)  Any action, suit or other proceeding initiated by either party against the other under or in connection with this Agreement or any of the other DTI Transaction Documents may be brought in any federal or state court in New York County, State of New York, as the party bringing such action, suit or proceeding shall elect.  Each party hereby submits itself and consents to the non-exclusive personal jurisdiction of any such court, waives any defense it may have based on lack of personal jurisdiction and agrees that service of process on it in any such action, suit or

**deldti.agt**

EXHIBIT 1
PAGE 15

13

proceeding may be effected by the means by which notices are to be given to it under this Agreement.

(iii) BY ITS EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY HEREBY WAIVES ANY RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED UPON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH, THIS AGREEMENT OR ANY OF THE OTHER DTI TRANSACTION DOCUMENTS, ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, OR VERBAL OR WRITTEN STATEMENT, OF ANY OF THE PARTIES. THIS PROVISION IS A MATERIAL INDUCEMENT FOR CFF TO ENTER INTO THIS AGREEMENT.

(g)  <u>Assignability</u>.  This Agreement shall not be assignable otherwise than by operation of law by either party without the prior written consent of the other party, and any purported assignment by any party without the prior written consent of the other party shall be void.

(h)  <u>Remedies</u>.  The parties hereto acknowledge that the remedy at law for any breach of the obligations undertaken by the parties hereto is and will be insufficient and inadequate and that the parties hereto shall be entitled to equitable relief, in addition to remedies at law.

(i)  <u>Waivers and Amendments</u>.  Any waiver of any term or condition, or any amendment or supplementation, of this Agreement shall be effective only if in writing.  A waiver of any breach of any of the terms or conditions of this Agreement shall not in any way be construed as a waiver of any subsequent breach.

(j)  <u>Third Party Rights</u>.  Except as otherwise provided in Section 8, this Agreement shall be effective only as between the parties hereto, their successors and permitted assigns.

(k)  <u>Affiliates</u>.  Reference in this Agreement to an "affiliate" of a specified person or entity means any other person or entity directly or indirectly controlling, controlled by or under common control with such specified person or entity.

deldti.agt

EXHIBIT ___|___

PAGE ___|\6___

14

        (1) <u>Continued Effectiveness of Conveyance Agreement</u>.
Except as modified hereby, the Conveyance Agreement shall remain in
full force and effect.

        IN WITNESS WHEREOF, the undersigned have executed this
Agreement as of the date first above written.

                              CREATIVE FOOD 'N FUN COMPANY

                              By:_____
                                 Bernd A. Schulte
                                 President

                              DEL TACO, INC.

                              By:_____
                                 Kevin K. Moriarty
                                 President

deldti.agt

EXHIBIT ___1___
PAGE ___17___

## GUARANTY

W.R. GRACE & CO.-CONN., a Connecticut corporation
("Parent"), is the indirect owner of all the issued and outstanding
capital stock of Creative Food 'N Fun Company, a Delaware
corporation ("CFF"). In order to induce Del Taco, Inc., a
California corporation ("DTI"), to sign the foregoing Modification
and Purchase Agreement (the "Modification Agreement") and intending
DTI to rely thereon, Parent hereby guarantees the full, complete
and punctual performance by CFF of each and every one of its
obligations set forth in the Modification Agreement to all intents
and purposes as though such obligations were those of Parent and
not of CFF. Parent acknowledges and agrees that in the event of a
default by CFF of the Modification Agreement, DTI shall have the
right to proceed immediately against Parent and shall not be
obligated to first exhaust any rights or remedies it may otherwise
ahve against CFF. No waiver, amendment or revision with respect to
the Modification Agreement shall abrogate, limit, release or have
any effect upon the guaranty of Parent set forth herein.

This Guaranty shall be governed by, construed and
enforced in accordance with the internal laws of the State of
California.

Dated: June 7, 1992

                                    W.R. GRACE & CO.-CONN.
                                    a Connecticut corporation

                                    By: _____
                                        J. P. Bolduc
                                        President

EXHIBIT ___
PAGE ___ 18

**EXHIBIT A TO MODIFICATION AND PURCHASE AGREEMENT**
**CFF DEVELOPMENT AND FRANCHISE AGREEMENTS**

deldti.exa

EXHIBIT 1
PAGE 19

EXHIBIT
PAGE 70

# Del Taco Restaurants, Inc.
## Franchise Document Information

| Franchisee/Principal Contact(s) | Document | Date |
|---|---|---|
| Abblitt Corporation<br>Lawrence L/Betty Ann Abblitt | Development Agreement | 05/23/85 |
| | Franchise Agreement - #6039<br>919 Joe Frank Harris Pkwy.<br>Cartersville, GA 30120 | 04/14/88 |
| | Amendment #2<br>Amendment #3<br>Letter Agreement<br>Letter Agreement | 11/01/89<br>10/01/91<br>10/01/88<br>01/01/91 |
| | Franchise Agreement - #6057<br>1285 Highway 278<br>Dallas, GA 30132 | 05/06/87 |
| | Amendment #2<br>Amendment #3<br>Letter Agreement<br>Letter Agreement | 11/01/89<br>10/01/91<br>10/01/88<br>01/01/91 |
| | Franchise Agreement - #6066<br>1507 Turner-McCall Blvd.<br>Rome, GA 30316 | 01/01/88 |
| | Amendment #2<br>Amendment #3<br>Letter Agreement<br>Letter Agreement | 11/01/89<br>10/01/91<br>10/01/88<br>01/01/91 |

Del Taco Restaurants, Inc.
Franchise Document Information

Page 1

EXHIBIT 1
PAGE 2?

| Franchisee/Principal Contact(s) | Document | Date |
|---|---|---|
| Accomplishments Through People, Inc.<br>Frederick J. Axelbord | Development Agreement - #6025 | 11/08/85 |
| | Franchise Agreement - #6025<br>Peachtree Mall - Space 4<br>Columbus, GA 31909 | 11/08/85 |
| | Amendment #3<br>Letter Agreement<br>Letter Agreement | 10/01/91<br>04/01/89<br>10/01/88 |
| | Development Agreement - #6030 | 02/07/86 |
| | Franchise Agreement - #6030<br>1460 Opelika Road<br>Auburn, AL 36830 | 02/07/86 |
| | Amendment #3<br>Letter Agreement | 10/01/91<br>10/01/88 |
| | Development Agreement - #6031 | 04/30/86 |
| | Franchise Agreement - #6031<br>733 E. Forsythe Street<br>Americus, GA 31709 | 04/30/86 |
| | Amendment #3<br>Letter Agreement | 10/01/91<br>10/01/88 |
| | Development Agreement - #6032 | 04/30/86 |
| | Franchise Agreement - #6032<br>1029 - 280 Bypass<br>Phenix City, AL 36867 | 04/30/86 |
| | Amendment #3<br>Letter Agreement | 10/01/91<br>10/01/88 |

Del Taco Restaurants, Inc.
For Document Information

| Franchisee/Principal Contact(s) | Doc.    gmt | Date |
|---|---|---|
| Accomplishments Through People, Inc. (cont.) | Development Agreement - #6041 | 02/07/86 |
| | Franchise Agreement - #6041<br>6490 Hamilton Road<br>Columbus, Georgia 31909 | 02/07/86 |
| | Amendment #3<br>Letter Agreement<br>Letter Agreement | 10/01/91<br>04/01/89<br>10/01/88 |
| | Development Agreement - #6069 | 02/07/86 |
| | Franchise Agreement - #6069<br>3527 Macon Road<br>Columbus, GA 31909 | 03/04/88 |
| | Amendment #3<br>Letter Agreement | 10/01/91<br>10/01/88 |
| Alza Corporation, Inc.<br>Haider Sultan | Development Agreement | Original not in file. |
| | Franchise Agreement - #6088<br>1312 Cumberland Mall<br>Atlanta, GA 30345 | 05/28/87 |
| | Amendment #1<br>Amendment #3<br>Letter Agreement<br>Letter Agreement to Transfer to Alza Corporation from Taco Associates Limited Partnership.<br>Letter Agreement to Transfer to Taco Associates Limited Partnership from TLIC, Inc. | 05/28/87<br>10/01/91<br>10/01/88<br>10/01/90<br>04/28/89 |

EXHIBIT<br>PAGE

EXHIBIT 1
PAGE 22

| Franchisee/Principal Contact(s) | Document | Date |
|---|---|---|
| DJH, Inc.<br>William R./Jackie Horman | Development Agreement | 11/23/87 |
| | Amendment #1 | 04/08/88 |
| | Franchise Agreement - #6074<br>388 West 2230 North<br>Provo, UT 84603 | 04/08/88 |
| | Amendment #3 | 10/01/91 |
| | Letter Agreement | 01/01/91 |
| | Letter Agreement | 10/01/88 |
| Del South Restaurants, Inc.<br>Clinton M. Day | Development Agreement | 09/30/88 |
| | Franchise Agreement - #9076 | Original not on file. |
| | Amendment | 12/16/88 |
| | Amendment #3 | 11/01/89 |
| | Amendment #4 | 10/01/91 |
| | Letter Agreement | 01/01/91 |
| F.W.P., Inc.<br>Frederick W. Pierson | Development Agreement | 01/16/86 |
| | Franchise Agreement - #6034<br>209 W. 23rd Street<br>Panama City, FL 32405 | 01/18/85 |
| | Amendment #3 | 10/01/91 |
| | Letter Agreement | 07/01/89 |
| | Letter Agreement | 01/01/89 |
| | Letter Agreement | 10/01/88 |

EXHIBIT
PAGE ⅔

| | Title | Date |
|---|---|---|
| **Jin Bonds Enterprises**<br>James A. Bonds | | |
| | Development Agreement | 11/17/86 |
| | Franchise Agreement - #8040<br>2209 Demere Road<br>St. Simons Island, GA  31522 | 11/20/86 |
| | Amendment #3<br>Amendment #4<br>Letter Agreement<br>Letter Agreement | 11/01/89<br>10/01/91<br>01/01/91<br>10/01/88 |
| | Franchise Agreement - #6060<br>100 Mall Blvd., Unit D-15<br>Brunswick, GA  31520 | 08/08/87 |
| | Amendment #3<br>Amendment #4<br>Letter Agreement<br>Letter Agreement | 11/01/89<br>10/01/91<br>01/01/91<br>10/01/88 |
| | Franchise Agreement - #6083<br>4400 Altama Avenue<br>Brunswick, GA  31520 | 12/01/89 |
| | Amendment #3<br>Letter Agreement | 10/01/91<br>01/01/91 |
| **Mel-Dax Associates**<br>Murray Riese | | |
| | Master Development Agreement | 07/20/84 |
| | Franchise Agreement - #7003<br>877 Lexington Avenue<br>New York, NY  10001 | 10/10/86 |
| | Amendment #3 | 10/01/91 |
| | Franchise Agreement - #7005<br>401 7th Avenue<br>New York, NY  10001 | Original not on file. |

EXHIBIT 1
PAGE 52

| Franchisee/Principal Contact(s) | Doc Type | Date |
|---|---|---|
| Patel Enterprises, Inc.<br>Challu Patel | Development Agreement | 09/30/96 |
| | Amendment #2 | 11/01/89 |
| | Franchise Agreement - #6035<br>2100 Pleasant Hill Road, R-5<br>Duluth, GA 30136 | 09/30/86 |
| | Amendment #3 | 11/01/89 |
| | Amendment #4 | 10/01/91 |
| | Letter Agreement | 10/01/88 |
| | Letter Agreement to Transfer to Patel Enterprises, Inc.<br>from Moradi Brothers II., Inc. | 04/24/92 |
| | Letter Agreement to Transfer to Moradi Brothers II.,<br>Inc. from Del South Restaurants, Inc. | 04/25/90 |
| Noboll Food Company, Inc.<br>Mark W. Blanchard<br>Maurice A. Roberts | Development Agreement | 09/25/89 |
| | Franchise Agreement - #6085<br>Route 12A/I-89 K-Mart Plaza<br>West Lebanon, NH 03784 | 11/02/90 |
| | Amendment #3 | 10/01/91 |
| | Letter Agreement | 01/01/91 |
| Phoenix Concepts Corporation<br>James M. Lappe | Development Agreement | 05/09/85 |
| | Amendment #1 | 11/01/89  *(05/29/86) |
| | Amendment #2 | 11/30/87 |
| | Amendment #3 | 11/01/89  *(05/05/85) |
| | Letter Agreement | 11/30/87 |

*Amendment reflects different
Development Agreement date.

Del Taco Restaurants, Inc.
Franchise Document Information

EXHIBIT __1__

PAGE _26_

| Franchisee/Principal Contact(s) | Document | Date |
|---|---|---|
| Phoenix Concepts Corporation (cont.) | Franchise Agreement - #6022<br>1055 Patton Avenue<br>Asheville, NC 28806 | 06/28/85 |
| | Amendment #2 | 11/01/89 |
| | Amendment #3 | 10/01/91 |
| | Letter Agreement | 10/01/88 |
| | Letter Agreement - Consent to Assignment of Development Agreement by Franchisor. | 10/30/86 |
| | Letter Agreement - Proposed Transfer by Augusta Road DT, Inc., D.T. Hickory, Inc. and D.T. Patton, Inc. | 11/20/87 |
| | Franchise Agreement - #6023<br>1845 Highway 65-70 S.E.<br>Hickory, NC 28602 | 06/04/85 |
| | Amendment #2 | 11/01/89 |
| | Amendment #3 | 10/01/91 |
| | Letter Agreement | 10/01/88 |
| | Letter Agreement - Consent to Assignment of Development Agreement by Franchisor | 10/30/86 |
| | Letter Agreement - Proposed Transfer by Augusta Road D.T., Inc., D.T. Hickory, Inc. and D.T. Patton, Inc. | 11/20/87 |
| | Franchise Agreement - #6059<br>700 Haywood Road<br>Greenville, SC 29648 | 09/21/87 |
| | Amendment #3 | 11/01/89 |
| | Amendment #3 | 10/01/91 |
| | Letter Agreement | 04/01/89 |
| | Letter Agreement | 10/01/88 |
| | Franchise Agreement - #6065<br>217 Highway 272 Bypass<br>Greenwood, SC 29648 | 11/30/87 |
| | Amendment #2 | 11/01/89 |
| | Amendment #3 | 10/01/91 |
| | Letter Agreement | 10/01/88 |

Del Taco Restaurants, Inc.
File    Document Information

EXHIBIT
**PAGE 27**

**Franchisee/Principal Contact(s)**

Southern Foods, Inc.
D. Frank Owens

**Document**

Development Agreement

Amendment #1

Franchise Agreement - #6084
5117 Ashley Phosphate Road
N. Charleston, SC 29418

Amendment
Amendment #3

**Date**

06/20/88

11/01/89

07/25/90

11/16/88
10/01/91

Page 6

Del Taco Restaurants, Inc.

## EXHIBIT B TO MODIFICATION AND PURCHASE AGREEMENT
### PERSONAL PROPERTY

1. Del Taco concession trailer, VIN 1WC200G24M3020706

2. Spare parts and equipment in warehouse at Providence Court, College Park, Georgia

3. Furniture and equipment in Atlanta office, as described on attached list

By its acceptance hereof, DTI agrees that CFF shall have no liability for immaterial discrepancies between the assets described in paragraphs 2 and 3 above and the assets obtained by DTI

EXHIBIT
PAGE 28

DEL TACO FURNITURE AND EQUIPMENT.                    DTI                    17-Jun-92

| DESCRIPTION | TOTAL |
|---|---|
| BINDING MACHINE | 1 |
| BOOKCASE-METAL/OTHER | 10 |
| BOOKCASE-WOOD | 23 |
| CABINETS-STANDING 2DR | 10 |
| CART 3-TIER | 2 |
| CHAIR-BREAKROOM | 9 |
| CHAIR-CONFERENCE | 20 |
| CHAIR-OTHER | 39 |
| CHAIR-SECT.-EXEC. | 71 |
| CHECK BURSTER | 1 |
| COMPUTERS | 21 |
| COUCH | 3 |
| CREDENZA-EXECUTIVE | 15 |
| CREDENZA-OTHER | 13 |
| DESK-EXECUTIVE | 12 |
| DESK-OTHER | 2 |
| DESK-SECRETARIAL | 35 |
| EASEL | 2 |
| FILE CABINET 2-DR | 31 |
| FILE CABINET 4-DR | 23 |
| FILE CABINET 5-DR | 50 |
| FILE CABINET-PORTABLE | 4 |
| FILE FIRE SAFE | 1 |
| FLOOR SCALE | 1 |
| HAND TRUCK | 1 |
| LAMP | 3 |
| AIL BIN (25) | 1 |
| OEM | 3 |
| JNITOR | 19 |
| OVERHEAD PROJECTOR | 2 |
| PAPER SHREDDER | 1 |
| PODIUM STAND | 1 |
| PRINTER IBM | 2 |
| PRINTER-DOT MATRIX | 10 |
| PRINTER-LASER | 3 |
| PROJECTOR SCREEN | 1 |
| RECORDER-SONEY | 1 |
| REFRIGERATOR | 3 |
| SAFE DIEBOLD 4'X 7' | 1 |
| SLIDE PROJECTOR | 1 |
| TABLE-OTHER | 34 |
| TABLE-ROUND | 6 |
| TABLE-SQUARE | 14 |
| TERMINAL-IBM | 12 |
| TV | 2 |
| TYPEWRITER-IBM | 5 |
| TYPEWRITER-OLIVETTI | 1 |
| VCR | 2 |
| VISUAL AID BOARD | 2 |
| WIRE STORAGE RACKS | 14 |
| TOTAL | 544 |

EXHIBIT _____1_____

PAGE ___29___

**EXHIBIT C TO MODIFICATION AND PURCHASE AGREEMENT**
**STANDARDS FOR DTI FRANCHISE TERMS**

1. The former CFF franchisees shall not incur any charge for entering into a franchise agreement with DTI.

2. DTI will provide financial support to the former CFF franchisees, in the form of royalty rebates of up to $12,500 per unit, in order to assist such franchisees in the physical conversion to the DTI concept.

**deldti.exc**

EXHIBIT___1___
PAGE___30___

**EXHIBIT D TO MODIFICATION AND PURCHASE AGREEMENT**
**INTELLECTUAL PROPERTY ADMINISTRATION**

References in this Exhibit to "this Agreement" refer to the Modification and Purchase Agreement to which this Exhibit is attached and of which this Exhibit, together with the other Exhibits and Schedules attached thereto, is an integral part. Capitalized terms used but not defined in this Exhibit are used with the definitions given them in this Agreement.

PARAGRAPH I. Quality Control.

DTI covenants and agrees as follows:

(A) DTI will maintain the essential nature of the units operated under the rights licensed to it under Article 4 (the "Article 4 Rights") as fast food outlets serving Mexican-style food, along with American-style foods, and beverages.

(B) DTI will conduct all operations, and maintain all products served, in connection with the Article 4 Rights, at standards which, at the minimum, meet all the quality maintenance standards incorporated in the "OPERATIONS MANUAL" referred to in Section 3.2 of the Service Mark License Agreement. DTI covenants to maintain its operations and the products it serves at level of quality equal or superior to those of its units currently in existence; to maintain the standards and diligence of inspection of its units currently in existence; to maintain all operations and products in compliance with applicable federal, state and local law; and otherwise to conduct its operations and sell its products in a manner consistent with the maintenance of the presently existing goodwill symbolized by the Article 4 Rights.

(C) DTI will make no use of the Article 4 Rights without the prior written consent of CFF, except in substantial conformance with the uses made of the Tradename on the date of this Agreement.

(D) DTI will not develop or acquire any rights of any kind in the Article 4 Rights other than the rights it acquires under the provisions of this Agreement and the Service Mark License Agreement.

(E) DTI will cooperate with CFF in CFF's quality control activities. Upon reasonable notice, DTI will provide CFF with an opportunity to inspect, at reasonable times and frequencies, all premises, personnel, products and records related to operations under the Article 4 Rights, and to provide CFF at DTI's expense with such information and sample materials as CFF may request in connection with its maintenance of quality under this Paragraph I.

deldti.exd

EXHIBIT ___ [ ___
PAGE  3 ]

2

(F) The quality control provisions of this Paragraph I shall not be interpreted to prevent DTI from making changes in its business that do not result in a breach of the quality control standards provided herein, or to confer upon CFF any power to direct DTI in the operation of its business or require any changes in DTI's operations or products, other than to maintain the quality standards provided herein.

PARAGRAPH II. Administration.

(A) DTI shall notify CFF of all applications and other actions that it proposes to file or take with respect to any trademark or service mark (each a "Mark"). CFF shall have the sole right to file such application or take such other action with respect to any Mark which is related or similar to any of the intellectual property licensed to DTI under Article 4, and the decision to undertake such application or other action shall be made in CFF's sole discretion. Any Marks registered by CFF under this subparagraph (A) ("Additional Marks") shall be deemed covered by the Article 4 Rights, and such Additional Marks together with the good will symbolized thereby shall be deemed part of the Del Taco Rights for purposes of Section 4 of this Agreement.

(B) In its own discretion or at DTI's request, CFF will renew or undertake additional state registrations in the Domestic Territory for the Marks licensed to DTI under Article 4 and any Additional Marks.

(C) DTI shall prepare the applications to be filed at its request under this Paragraph II and deliver them to CFF for review and filing after any modification.

(D) At CFF's discretion, the parties may appoint a joint agent to undertake all or part of the administration of the Article 4 Marks and the Additional Marks. Such agent shall keep the parties informed of all material events or developments related to such administration. Any such agent may be removed or replaced at the request of CFF after consultation with DTI.

(E) If any claims are made or legal action is threatened or commenced by a third party against CFF or DTI on the ground that any product or service of DTI sold or performed under the Article 4 Rights infringes any intellectual property right of such third party, the party so claimed against, threatened or sued shall inform the other party, and the parties shall confer respecting the appropriate course of action. Defense of such legal action shall be undertaken at the request of either party. The costs of any such defense, and the costs of any settlement or any award by a court or arbitrator, shall be paid by DTI. To the extent practicable, such defense and any settlement negotiations shall be

deldti.exd

EXHIBIT ____I____

PAGE __32__

3

conducted by CFF.  CFF shall consult with DTI regarding the conduct of the defense and any settlement negotiations, and DTI shall render such assistance in such defense or settlement negotiations as shall reasonably be requested by CFF. No settlement shall be effected without the consent of DTI, which consent shall not be unreasonably withheld.

(F)  Each party shall promptly notify the other if it becomes aware of any infringement or alleged infringement of the intellectual property licensed under Article 4, whereupon the parties shall consult together regarding an appropriate course of action.    Neither  party  shall  be  required  to  undertake  or participate in any claim or legal action with respect to any such infringement or alleged infringement.  If either party does pursue such claim or action, it shall not settle such claim or action without the consent of the other party.

(G)  In its performance of administrative actions with respect to the Article 4 Rights and the Related Rights, CFF shall have no liability to DTI except with respect to CFF's willful misconduct.

(H)  DTI shall pay or reimburse against appropriate documentation all CFF's reasonable out-of-pocket expenses arising from  or  out  of  CFF's  registration,  renewal,  protection  and administration of the intellectual property licensed under Article 4 and the performance of CFF's obligations under this Paragraph II.

PARAGRAPH III. Assignment.

During the term of the provisions of this Exhibit, DTI may not sell, assign, transfer, license, sublicense, lease or franchise any of the Article 4 Rights to any person or other entity.

PARAGRAPH IV. Termination.

The provisions of this Exhibit shall expire upon the first to occur of the following: (i) sale of the Del Taco Rights to DTI pursuant to Section 4 of this Agreement, (ii) expiration of the last to expire of the registrations of Marks licensed under Article 4, or (iii) termination of DTI's rights under Article 4.

deldti.exd

EXHIBIT ____I____
PAGE ___23___

**EXHIBIT E TO MODIFICATION AND PURCHASE AGREEMENT**
**TRADEMARKS AND TRADEMARK APPLICATIONS**

**deldti.exe**

EXHIBIT ___1___
PAGE ___34___

## U. S. MARKS

### REGISTRATIONS

| Mark | Reg. No. |
| --- | --- |
| BIGGER BITE MENU | 1,644,012 |
| COMBO CUP | 1,231,240 |
| DEL MEAT BURRITO | 1,232,360 |
| DEL TACO | 1,231,138 |
| DEL TACO | 1,231,168 |
| DEL TACO | 1,221,321 |
| DEL TACO & DESIGN | 1,035,949 |
| DEL TACO EXPRESS | 1,458,796 |
| DEL TACO MEXICAN CAFE | 1,392,800 |
| DOUBLE DEL | 1,219,339 |
| HOT IDEA | 1,546,671 |
| HOT IDEA & DESIGN | 1,552,209 |

### APPLICATIONS

| Mark | Ser. No. |
| --- | --- |
| DEL TACO & DESIGN | 74/093227 |
| DEL TACO & DESIGN | 74/227652 |
| DEL TACO & DESIGN | 74/226466 |
| DEL TACO & DESIGN | 74/93227 |
| MEXI-MUNCHIES | 74/045558 |

EXHIBIT __1__
PAGE __35__

## STATE REGISTRATIONS

| Mark | State | Reg. No. |
|------|-------|----------|
| DEL TACO | Alabama | 100339 |
| DEL TACO | Florida | 924607 |
| DEL TACO | Georgia | S-4020 |
| DEL TACO | Maryland | 87-S2079 |
| DEL TACO | Nevada | - - - |
| DEL TACO | North Carolina | - - - |
| DEL TACO | Oklahoma | 19789 |
| DEL TACO | South Carolina | - - - |
| DEL TACO | Tennessee | Record Book No. 87 Page 83 |
| DEL TACO | Texas | 36373 |
| DEL TACO | Utah | 28861 |
| DEL TACO & DESIGN | Arkansas | 156-80 |
| DEL TACO & DESIGN | Florida | 922905 |
| DEL TACO & DESIGN | Georgia | S-1128 |
| DEL TACO & DESIGN | South Carolina | 566 |
| DEL TACO & DESIGN | Texas | 36374 |
| DEL TACO MEXICAN CAFE | Alabama | 102182 |
| DEL TACO MEXICAN CAFE | Arkansas | 230-85 |
| DEL TACO MEXICAN CAFE | Florida | T01500 |
| DEL TACO MEXICAN CAFE | Georgia | S-5198 |
| DEL TACO MEXICAN CAFE | New York | S-8435 |
| DEL TACO MEXICAN CAFE | North Carolina | - - - |
| DEL TACO MEXICAN CAFE | South Carolina | 1930 |

EXHIBIT 1
PAGE 36

| Mark | State | Req. No. |
|------|-------|----------|
| DEL TACO MEXICAN CAFE | Tennessee | - - - |
| DEL TACO MEXICAN CAFE | Texas | 43806 |
| SUNBURST DESIGN | Georgia | S-4019 |
| SUNBURST DESIGN | Texas | 36403 |

EXHIBIT 1

PAGE 37

EXHIBIT F TO MODIFICATION AND PURCHASE AGREEMENT

ASSIGNMENT AND ASSUMPTION AGREEMENT

ASSIGNMENT AND ASSUMPTION AGREEMENT dated as of _____,
between CREATIVE FOOD 'N FUN COMPANY, a Delaware corporation
("Transferor"), and DEL TACO, INC., a California corporation
("Transferee").

WITNESSETH:

WHEREAS, this Agreement is being delivered pursuant to
Section 4(d) of the Modification and Purchase Agreement dated June
__, 1992, between Transferor and Transferor;

WHEREAS, Transferor is the franchisor under the franchise
agreements listed on **Schedule 1** attached hereto (the "Franchise
Agreements");

NOW, THEREFORE, for good and valuable consideration, the
receipt and sufficiency of which are hereby acknowledged, the
parties agree as follows:

1. (a) Transferor hereby sells, assigns and sets over.
unto Transferee, all of Transferor's right, title and interest in
and to the Franchise Agreements with respect to the period prior to
the date hereof.

(b) Transferee hereby assumes, and agrees to perform and
otherwise satisfy, all of the obligations, covenants and agreement
of Transferor under the Franchise Agreements with respect to the
period from and after the date hereof.

2. Upon the request of either party, the other party
shall execute and deliver, or cause to be executed and delivered,
all such deeds, assignments, consents and other documents, and take
or cause to be taken, all such other actions as the requesting
party reasonably deems necessary or desirable in order to complete,
confirm, perfect or evidence the transactions contemplated by this
Agreement.

deldti.exf

EXHIBIT ___
PAGE ___38

2

IN WITNESS WHEREOF, the parties have executed this Assignment and Assumption Agreement on the date first written above.

CREATIVE FOOD 'N FUN COMPANY

By:_____
   Name:
   Title:

DEL TACO, INC.

By:_____
   Name:
   Title:

deldti.exf

EXHIBIT 1
PAGE 39

SCHEDULE 5(d)

1. <u>Taco Tico Acquisition Corp., et al. v. W.R. Grace & Co-Conn., et al.</u>, Superior Court, Fulton County, State of Georgia, Civil Action File No. D-96548.

2. <u>The Ablitt Corporation v. Del Taco Restaurants, Inc., et al.</u>, State Court, Fulton County, State of Georgia, Civil Action File No. 91 VS 43114D.

3. Threats of litigation have been made by a franchisee of six Del Taco Restaurants in Georgia and Alabama, and other Del Taco franchisees may also threaten or bring litigation.

EXHIBIT 1

PAGE 40

2

1 | Richard B. Specter, Bar No. 114090
CORBETT & STEELMAN
2 | A Professional Law Corporation
18200 Von Karman Avenue, Suite 200
3 | Irvine, California 92715-1086
(714)  553-9266
4
Attorneys for Plaintiffs WILLIAM C. BAKER,
5 | EBER E. JAQUES, BRADFORD H. MILLER,
MONTGOMERY R. FISHER, SHARON R. ORMSBEE,
6 | MARILYN REA and THE FISHER TRUST

**FILED**
ORANGE COUNTY SUPERIOR COURT

JAN 19 1996

ALAN SLATER, Executive Officer/Clerk
By___A. KNOX___DEPUTY

7

8

9 |                SUPERIOR COURT OF THE STATE OF CALIFORNIA

10 |                       FOR THE COUNTY OF ORANGE

11 |                                                      **758512**

12 | WILLIAM C. BAKER, EBER E. JAQUES, )    CASE NO.
BRADFORD H. MILLER, MONTGOMERY)
13 | R. FISHER, SHARON R. ORMSBEE,     )    COMPLAINT FOR BREACH OF
MARILYN REA, and THE FISHER        )    CONTRACT, BREACH OF THE
14 | TRUST                             )    COVENANT OF GOOD FAITH AND
                                   )    FAIR DEALING, INTENTIONAL
15 |          Plaintiffs,            )    INTERFERENCE WITH
                                   )    CONTRACTUAL RELATIONSHIP,
16 |     v.                          )    ACCOUNTING AND
                                   )    DECLARATORY RELIEF
17 | W. R. GRACE & CO., a Connecticut )
corporation; CREATIVE FOOD 'N FUN )
18 | COMPANY, a Delaware corporation; )
DEL TACO, INC., a California       )
19 | corporation; and DOES 1 through 50, )    JUDGE THOMAS N. THRASHER, SR.
inclusive,                         )          DEPT. 13
20 |                                 )
         Defendants.             )
21 | _____)

22

23

24 |        Plaintiffs William C. Baker, Eber E. Jaques, Bradford H. Miller,

25 | Montgomery R. Fisher, Sharon R. Ormsbee, Marilyn Rea, and The Fisher Trust

26 | ("Plaintiffs") allege as follows:

27 | ///

28 | ///

2478-301/18Jan96

THIS CASE HAS BEEN ASSIGNED TO CIVIL CASE MANAGEMENT ALL PARTIES MUST COMPLY WITH THE RULES SET FORTH IN ORANGE COUNTY RULES OF COURT, EACH PLEADING MUST INCLUDE THE ASSIGNED JUDGE DESIGNATION, AS WELL AS THE CASE NUMBER OF THIS DOCUMENT, PURSUANT TO OR...

EXHIBIT 2
PAGE 41

1    ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

2        1.    Plaintiffs William C. Baker, Eber E. Jaques, Bradford H. Miller, and

3    Sharon R. Ormsbee are individuals who reside in the County of Orange, State of

4    California.

5        2.    Plaintiffs Montgomery R. Fisher and Marilyn Lee Rea are individuals

6    who reside in the County of Los Angeles, State of California.

7        3.    Plaintiff The Fisher Trust is a trust duly formed under the laws of the

8    State of California.

9        4.    Plaintiffs are informed and believe, and thereupon allege, that

10   Defendant W. R. Grace & Co. is a corporation organized and existing under and by

11   virtue of the laws of the State of Connecticut, with its principal place of business

12   in the State of Florida. At all times mentioned herein, Defendant W. R. Grace &

13   Co. has done and is doing business in the State of California.

14       5.    Plaintiffs are informed and believe, and thereupon allege, that

15   Defendant Creative Food 'N Fun Company is a corporation organized and existing

16   under and by virtue of the laws of the State of Delaware, with its principal place of

17   business in the State of Georgia. At all times mentioned herein, Defendant

18   Creative Food 'N Fun Company has done business in the State of California.

19       6.    Plaintiffs are informed and believe, and thereupon allege, that

20   Defendant Del Taco, Inc., is a corporation organized and existing under and by

21   virtue of the laws of the State of California, with its principal place of business in

22   the County of Orange, State of California.

23       7.    The true names and capacities, whether individual, corporate,

24   associate or otherwise, of Defendants designated herein as DOES 1 through 50,

25   inclusive, are presently unknown to Plaintiffs, who therefore sue said Defendants

26   by such fictitious names pursuant to California Code of Civil Procedure Section

27   474. Plaintiffs are informed and believe, and thereupon such information and belief

28

-2-

2478-001/18Jan96

EXHIBIT 2
PAGE 42

1    allege, that each of the Defendants is now, and has been at all times herein

2    mentioned, the agent, servant, employee, partner, associate, joint venturer,

3    co-participant, co-conspirator, and/or principal of and with each of the remaining

4    Defendants, and that each Defendant has been, at all times herein mentioned,

5    acting within the scope of such relationship and with the knowledge, consent,

6    authority, ratification and/or permission of each of the remaining Defendants.

7    Whenever appearing in this Complaint, each and every reference to a DOE

8    Defendant, or any of them, is intended to, and shall be deemed to, include all

9    fictitiously named Defendants.

10        8.    On or about September 16, 1977, Defendant Del Taco, Inc., and DTG,

11   Inc., entered into a written Conveyance Agreement, which is referred to hereinafter

12   as the "Conveyance Agreement."   A true and correct copy of the Conveyance

13   Agreement is attached hereto as Exhibit 1 and is incorporated herein by this

14   reference as though set forth in full hereat.

15        9.    On or about March 30, 1981, Defendant Del Taco, Inc., Del Taco

16   Corporation, as successor to DTG, Inc., all Plaintiffs with the exception of The

17   Fisher Trust, and Kendall C. Simpson entered into a written "Amendment No. 1 to

18   Conveyance Agreement", which is hereinafter referred to as the "Amendment".  A

19   true and correct copy of the Amendment is attached hereto as Exhibit 2 and is

20   incorporated herein by this reference as though set forth in full hereat.

21        10.  Plaintiffs are informed and believe, and thereupon allege, that

22   Defendant Del Taco, Inc., is the successor-in-interest to Del Taco, Inc., as that

23   entity is identified under the Conveyance Agreement and the Amendment and the

24   Assignment, and shares the same liabilities and obligations.

25        11.  Plaintiffs allege on information and belief that Defendant Creative Food

26   'N Fun Company is the successor in interest to Del Taco Corporation, and shares

27   the same liabilities and obligations.

28

EXHIBIT 2
PAGE 43

1      18.  Plaintiff Bradford H. Miller subsequently transferred half of his interest

2   to Plaintiff Sharon Ormsbee.

3      19.  Plaintiff Montgomery Ross Fisher subsequently transferred a portion of

4   his interest to The Fisher Trust.

5      20.  By that Guarantee dated September 16, 1977, a true and correct copy

6   of which is attached hereto as Exhibit 4 and incorporated herein by this reference

7   as though fully set forth hereat, Defendant W. R. Grace & Co. is responsible for all

8   of the obligations of Defendant Creative Food 'N Fun Company, as the successor

9   to DTG, Inc.

10      21.  Pursuant to paragraph 3.01 of the Conveyance Agreement,

11   Defendants W. R. Grace & Co., Creative Food 'N Fun Company and DOES 1-30

12   (hereinafter the "GRACE Defendants"), are obligated to pay to Plaintiffs a

13   percentage of the gross receipts of restaurants operated outside of the State of

14   California, and Yuma, Arizona, using the Del Taco name or system.

15      22.  Plaintiffs are informed and believe, and thereupon allege, that within

16   the last four (4) years, the GRACE Defendants have failed to pay the foregoing

17   monies to Plaintiffs, for which they are obligated pursuant to the Conveyance

18   Agreement.

19      23.  As a result of the GRACE Defendants' breach of the Conveyance

20   Agreement, as aforesaid, Plaintiffs have been and will be damaged in an amount to

21   be ascertained, but no less than Fifty Thousand Dollars ($50,000.00).

22      24.  Pursuant to paragraph 3.05 of the Conveyance Agreement, Plaintiffs

23   are entitled to ten percent (10%) interest per annum on the amounts due from the

24   due date, on such amounts as are determined pursuant to the preceding paragraph.

25   ///

26   ///

27   ///

28

EXHIBIT  2
PAGE  45

12. Plaintiffs are informed and believe and thereupon allege that at all times, Defendant W. R. Grace & Co. has and does control, manage and supervise Defendant Creative Food 'N Fun Company, and is responsible for said Defendant's operations, obligations and liabilities.

13. On or about July 7, 1992, Defendants Del Taco, Inc., and Creative Food 'N Fun Company entered into a "Modification and Purchase Agreement." A true and correct copy of the Modification and Purchase Agreement is attached hereto as Exhibit 3 and is incorporated herein by this reference as though set forth in full hereat.

14. The Conveyance Agreement, Amendment and Modification and Purchase Agreement were made and to be performed in the County of Orange, State of California.

### FIRST CAUSE OF ACTION

(For Breach of Contract - Conveyance Agreement)

(Against All Defendants except Del Taco, Inc. and DOES 31-50)

15. Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1 through 14, above, as if the same were fully set forth hereat.

16. Effective April 27, 1979, Defendant Del Taco, Inc., transferred to Kendall C. Simpson and Plaintiffs William C. Baker, Eber Jaques, Montgomery Ross Fisher, and Bradford H. Miller, pro rata, all of Del Taco, Inc.'s rights to monies payable pursuant to Sections 3.01, 3.04 and 3.05 of the Conveyance Agreement, and all of Defendant Del Taco, Inc.'s rights pursuant to Article 4 of the Conveyance Agreement, and notice of which was duly given to Del Taco Corporation, as successor to DTG, Inc.

17. Plaintiff Eber E. Jaques subsequently transferred half of his interest to Plaintiff Marilyn Rea.

-4-



EXHIBIT 2
PAGE 44

1    <u>SECOND CAUSE OF ACTION</u>

2    (For Breach of Contract - Conveyance Agreement)

3    (Against the GRACE Defendants)

4        25.  Plaintiffs incorporate herein by reference the allegations contained in

5    paragraphs 1 through 14, and 16 through 20, above, as if the same were fully set

6    forth hereat.

7        26.  Pursuant to paragraph 7.02 of the Conveyance Agreement, the

8    GRACE Defendants are required to take all actions to protect the use of the name

9    "Del Taco" and the "Del Taco System."

10       27.  Plaintiffs are informed and believe, and thereupon allege, that

11   restaurants using the "Del Taco" name or the "Del Taco System" are being

12   operated in a manner not in compliance with the Conveyance Agreement.

13       28.  Plaintiffs are informed and believe, and thereupon allege, that the

14   GRACE Defendants have breached their obligations pursuant to paragraph 7.02 of

15   the Conveyance Agreement by failing to take all action necessary to preserve and

16   protect the use of the "Del Taco" name and the "Del Taco System," as required by

17   the Conveyance Agreement.

18       29.  As a result of the GRACE Defendants' breach of the Conveyance

19   Agreement, as aforesaid, Plaintiffs have been and will be damaged in an amount to

20   be ascertained, but in any event no less than Fifty Thousand Dollars ($50,000.00).

21

22   <u>THIRD CAUSE OF ACTION</u>

23   (For Breach of the Implied Covenant of Good Faith and Fair Dealing)

24   (Against the GRACE Defendants)

25       30.  Plaintiffs incorporate herein by reference the allegations contained in

26   paragraphs 1 through 14, 16 through 24, and 26 through 29, above, as if the

27   same were fully set forth hereat.

28

EXHIBIT 2
PAGE 46

1    31.   In every contract, there is an implied covenant of good faith and fair

2    dealing that neither party will do anything which impairs the right of the other to

3    receive the benefits of the agreement.

4    32.   Pursuant to the Conveyance Agreement and the Amendment, the

5    GRACE Defendants were obligated to act fairly and in good faith in dealing with

6    Plaintiffs, and had a duty of good faith and fair dealing in protecting the interests of

7    Plaintiffs.

8    33.   By doing the actions as set forth above, the GRACE Defendants have

9    breached the implied covenant of good faith and fair dealing in the Conveyance

10   Agreement and the Amendment.

11   34.   As a direct and proximate result of the GRACE Defendants' breach of

12   the implied covenant of good faith and fair dealing, Plaintiffs have been damaged in

13   an amount unknown at the present time, but believed to be, and therefore alleged

14   to be, in excess of One Hundred Thousand Dollars ($100,000.00).

15

16                            FOURTH CAUSE OF ACTION

17         (For Breach of Contract Against Del Taco, Inc. and DOES 31-50)

18   35.   Plaintiffs incorporate herein by reference the allegations contained in

19   paragraphs 1 through 140, above, as if the same were fully set forth hereat.

20   36.   On or about April 27, 1979, Defendant Del Taco, Inc., and DOES 31-

21   50 (hereinafter the "DEL TACO Defendants") transferred, conveyed, assigned and

22   delivered to Plaintiffs a pro rata interest in all of the DEL TACO Defendants' right,

23   title and interest in the Conveyance Agreement.

24   37.   By letter dated April 27, 1979, a copy of which is attached hereto as

25   Exhibit 5 and incorporated herein by this reference as though fully set forth hereat,

26   Defendant Del Taco, Inc. notified the GRACE Defendants of the assignment

27   (hereinafter the "Assignment"), including the rights provided for pursuant to

28

2478-001/18Jan96

EXHIBIT  2

PAGE  47

1 | Sections 3.01, 3.04, 3.05 and Article 4 of the Conveyance Agreement.

2 |      38.  Plaintiffs are informed and believe, and thereupon allege that in or

3 | about July of 1992, the DEL TACO Defendants purported to compromise, transfer

4 | and exercise, on their own behalf, those rights which had previously been

5 | transferred to Plaintiffs, and which rights no longer lawfully belonged to the DEL

6 | TACO Defendants.

7 |      39.  By doing said actions, the DEL TACO Defendants breached the terms

8 | of the Assignment to Plaintiffs.

9 |      40.  As a direct and proximate result of the DEL TACO Defendant's breach

10 | of the Assignment, Plaintiffs have been and will be damaged in an amount to be

11 | determined, but in any event, no less than One Hundred Thousand Dollars

12 | ($100,000.00).

13 |

14 |           **FIFTH CAUSE OF ACTION**

15 |   (For Breach of the Implied Covenant of Good Faith and Fair Dealing)

16 |         (Against the DEL TACO Defendants)

17 | , 41.  Plaintiffs incorporate herein by reference the allegations contained in

18 | paragraphs 1 through 14 and 36 through 40, above, as if the same were fully set

19 | forth hereat.

20 |      42.  In every contract, there is an implied covenant of good faith and fair

21 | dealing that neither party will do anything which impairs the right of the other to

22 | receive the benefits of the agreement.

23 |      43.  Pursuant to the Assignment, the DEL TACO Defendants were

24 | obligated to act fairly and in good faith in dealing with Plaintiffs, and had a duty of

25 | good faith and fair dealing in protecting the interests of Plaintiffs.

26 |      44.  By doing the actions as set forth above, said DEL TACO Defendants

27 | breached the implied covenant of good faith and fair dealing in the Assignment.

28 |



EXHIBIT 2

PAGE 48

1    **45.** As a direct and proximate result of the DEL TACO Defendants' breach
2    of the implied covenant of good faith and fair dealing, Plaintiffs have been damaged
3    in an amount unknown at the present time, but believed to be, and therefore
4    alleged to be, in excess of One Hundred Thousand Dollars ($100,000.00).

5

6

7                          SIXTH CAUSE OF ACTION
8           (For Declaratory Relief Against Defendants W. R. Grace & Co.
9                       and Creative Food 'N Fun Company)
10          **46.** Plaintiffs incorporate herein by reference the allegations contained in
11   paragraphs 1 through 14, 16 through 21, and 26 through 28, above, as if the
12   same were fully set forth hereat.
13          **47.** Plaintiffs are informed and believe, and thereupon allege, that a
14   dispute presently exists by and among Plaintiffs, Defendant W. R. Grace & Co. and
15   Defendant Creative Food 'N Fun Company with respect to the rights and
16   obligations under the Conveyance Agreement, the Amendment, the Modification
17   and Purchase Agreement, and the Assignment, in that Plaintiffs contend that they
18   are entitled to receive from said Defendants a percentage of the gross receipts on
19   all Del Taco Restaurants operated outside of the State of California and Yuma,
20   Arizona, while Defendants W. R. Grace & Co. and Creative Food 'N Fun Company
21   contend that Plaintiffs are not entitled to such payments.
22          **48.** It is necessary and appropriate that this Court declare the rights and
23   obligations of the parties hereto with respect to the matters described herein at this
24   time, in that Plaintiffs contend that said Defendants have failed to previously pay
25   such royalties owed to Plaintiffs, and such royalties on future sales will continue to
26   be due and owing to Plaintiffs, and would require a multiplicity of actions by
27   Plaintiffs to recover such funds hereafter, absent a declaration by this Court of said
28

:478-321/18Jan96



EXHIBIT 2
PAGE 49

1 | Defendants' obligations to Plaintiffs.

2

3 | ### SEVENTH CAUSE OF ACTION

4 | (For Accounting Against All Defendants)

5 | 49. Plaintiffs incorporate herein by reference the allegations contained in

6 | paragraphs 1 through 14, 16 through 22 and 24, above, as if the same were fully

7 | set forth hereat.

8

9 | 50. The exact amount of the gross receipts of the Del Taco stores, as set

10 | forth in paragraph 3.05, and the exact amount of monies owed to Plaintiffs, are

11 | unknown and can only be determined by an accounting.

12 | 51. Plaintiffs are informed and believe, and thereupon allege, that

13 | Defendant Del Taco, Inc., is the owner and operator of, at least, some of the

14 | Stores for which payments are due pursuant to paragraph 3.01. Defendant Del

15 | Taco, Inc. is named as a Defendant herein as a necessary party, as an accounting

16 | cannot properly be rendered, and the amount of the gross receipts and monies

17 | owed to Plaintiffs determined, without the involvement and assistance of

18 | Defendant Del Taco, Inc., which is therefore a necessary party to this action.

19 | 52. Plaintiffs have demanded an accounting by Defendants, and that

20 | Defendants pay to Plaintiffs the monies owed pursuant to the Conveyance

21 | Agreement. Defendants have failed and refused, and continue to fail and refuse, to

22 | render such an accounting and to pay Plaintiffs the sums due to them.

23 | 53. Plaintiffs are informed and believe, and thereupon allege, that the

24 | monies due to Plaintiffs are in excess of Fifty Thousand Dollars ($50,000.00).

25 | ///

26 | ///

27 | ///

28

2478-301/18Jan96

-10-

EXHIBIT  Z
PAGE  50

1

2

3

4

5

6

7

8

9

10

11

12

13

14

## EIGHTH CAUSE OF ACTION

(For Intentional Interference With Contractual Relationship)

(Against the DEL TACO Defendants)

54.  Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1 through 14, and 16 through 24, above, as if the same were fully set forth hereat.

55.  A valid contractual relationship existed between Defendants W. R. Grace & Co. and Creative Food 'N Fun Company, on the one hand, and Plaintiffs, in the form of the Conveyance Agreement and the Amendment.

56.  The DEL TACO Defendants had knowledge of the contract.

57.  The DEL TACO Defendants intended to induce a breach of the agreement between the other Defendants and Plaintiffs, by avoidance of the payment of the monies due and owing to Plaintiffs by said Defendants.

58.  As set forth hereinabove, the GRACE Defendants have breached their obligations to Plaintiffs, which breach was the result of the DEL TACO Defendants' wrongful and unjustified conduct.

59.  As a result of said Defendants' conduct, Plaintiffs have suffered damage in an amount to be ascertained but, in any event, no less than Fifty Thousand Dollars ($50,000.00).

60.  The aforementioned conduct of the DEL TACO Defendants, and each of them, was willful and intended to cause injury to Plaintiffs. Plaintiffs are therefore entitled to an award of exemplary or punitive damages.

## NINTH CAUSE OF ACTION

(For Intentional Interference With Contractual Relationship)

(Against the GRACE Defendants)

25

26

27

28

61.  Plaintiffs incorporate herein by reference the allegations contained in

1478-301/18Jan96

-11-

EXHIBIT 2
PAGE 51



1  paragraphs 1 through 14 and 36 through 40, above, as if the same were fully set

2  forth hereat.

3       62.  A valid contract existed between Plaintiffs and Defendant Del Taco,

4  Inc., in the Assignment.

5       63.  The GRACE Defendants were informed of and had knowledge of the

6  Assignment.

7       64.  By virtue of entering into the Modification and Purchase Agreement,

8  the GRACE Defendants intended to induce a breach of the Assignment, which

9  Assignment was in fact breached by the DEL TACO Defendants, by virtue of the

10  GRACE Defendants' wrongful and unjustified conduct.

11       65.  Plaintiffs have suffered damages as a result of said breach, in an

12  amount to be ascertained, but in any event no less than One Hundred Thousand

13  Dollars ($100,000.00).

14       66.  The aforementioned conduct of the GRACE Defendants, and each of

15  them, was willful and intended to cause injury to Plaintiffs.  Plaintiffs are therefore

16  entitled to an award of exemplary or punitive damages.

17

18       WHEREFORE, Plaintiffs, and each of them, pray for Judgment herein as

19  follows:

20       1.    For compensatory damages against all Defendants, and each of them,

21  in a sum to be proven at trial;

22       2.    For interest on all monies owed by the GRACE Defendants pursuant to

23  the Conveyance Agreement, at the rate of ten percent (10%) per annum from and

24  since due;

25       3.    For exemplary and punitive damages against all Defendants in an

26  amount to be proven at trial;

27       4.    For a declaration by the Court declaring the rights and obligations of

28

EXHIBIT 2

PAGE 52

1    the parties with respect to the Conveyance Agreement, and specifically for a

2    declaration that Defendants W. R. Grace & Co. and Creative Food 'N Fun Company

3    are obligated to pay to Plaintiffs a royalty on all restaurants using the Del Taco

4    name or the Del Taco system outside of the State of California and Yuma, Arizona;

5        5.    For an accounting between Plaintiffs and Defendants;

6        6.    For payment to Plaintiffs of the amount due from the GRACE

7    Defendants as a result of the accounting, and interest on that amount from and

8    after the due date at the rate of ten percent (10%) per annum;

9        7.    For costs of suit herein incurred; and

10       8.    For such other and further relief as the Court may deem just and

11   proper under the circumstances.

12   DATED:  January 18, 1996                    CORBETT & STEELMAN

13

14                                        By: _____

15                                             Richard B. Specter
                                              Attorneys for Plaintiffs
16                                            WILLIAM C. BAKER, EBER E.
                                              JAQUES, BRADFORD H. MILLER,
17                                            MONTGOMERY R. FISHER,
                                              SHARON R. ORMSBEE, MARILYN
18                                            REA and THE FISHER TRUST

19

20

21

22

23

24

25

26

27

28

2478-001/18Jan96                    -13-

EXHIBIT 2
PAGE 53