# EXHIBIT E

# WR Grace

## Bankruptcy Form 10

### Index Sheet

SR00000633

| Claim Number: | 00013944 | | Receive Date: | 03/31/2003 |

## Multiple Claim Reference

**Claim Number** _____

- [ ] MMPOC — Medical Monitoring Claim Form
- [ ] PDPOC — Property Damage
- [ ] NAPO — Non-Asbestos Claim Form
- [ ]     Amended

**Claim Number** _____

- [ ] MMPOC — Medical Monitoring Claim Form
- [ ] PDPOC — Property Damage
- [ ] NAPO — Non-Asbestos Claim Form
- [ ]     Amended

## Attorney Information

| Firm Number: | 00357 | Firm Name: | Corbett & Steelman |
| Attorney Number: | 00236 | Attorney Name: | David F Brown |

Zip Code: 92612-1086

Cover Letter Location Number: SR00000633

| Attachments<br>Medical Monitoring | Attachments<br>Property Damage | Non-Asbestos |
|---|---|---|
| [ ] TBD | [ ] TBD | [x] Other Attachments |
| [ ] TBD | [ ] TBD | |
| [ ] TBD | [ ] TBD | |
| [ ] TBD | [ ] TBD | |
| [ ] TBD | [ ] TBD | |
| | [ ] Other Attachments | |

| **Other** | [ ] Non-Standard Form | |
| | [ ] Amended | |
| | [ ] Post-Deadline Postmark Date | |

Box/Batch: WRBF0046/WRBF0181

Document Number: WRBF009032

| UNITED STATES BANKRUPTCY COURT FOR: DISTRICT OF Delaware | ● | **GRACE NON-ASBESTOS PROOF OF CLAIM FORM** |
|---|---|---|

**Name of Debtor:**[1] W.R. Grace & Co - Conn.  |  **Case Number** 01-1179

NOTE: Do not use this form to assert an Asbestos Personal Injury Claim. a Settled Asbestos Claim or a Zonolite Attic Insulation Claim. These claims will be subject to a separate claims submission process. This form should also not be used to file a claim for an Asbestos Property Damage Claim or Medical Monitoring Claim. A specialized proof of claim form for each of these claims should be filed.

| **Name of Creditor** (The person or other entity to whom the Debtor owes money or property):William C. Baker, et al. (See Attachment 1) | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. <br> ☐ Check box if you have never received any notices from the bankruptcy court in this case. <br> ☒ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|
| **Name and address where notices should be sent:** <br> Richard B. Specter / David F. Brown <br> Corbett & Steelman <br> 18200 Von KArman Ave., Suite 200 <br> Irvine, CA  92612 | | |

Account or other number by which creditor identifies Debtor:  |  Check here ☐ replaces  <br> if this claim ☐ amends a previously filed claim, dated:_____

**Corporate Name, Common Name, and/or d/b/a name of specific Debtor against whom the claim is asserted:**
  W.R. Grace & Co., a Connecticut Croporation

| 1. **Basis for Claim** <br> ☐ Goods sold <br> ☐ Services performed <br> ☐ Environmental liability <br> ☐ Money loaned <br> ☐ Non-asbestos personal injury/wrongful death <br> ☐ Taxes <br> ☒ Other__See Attachment 1__ | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a) <br> ☐ Wages, salaries, and compensation (fill out below) <br><br> Your SS #:_____ <br> Unpaid compensation for services performed <br> from _____ to _____ (date) |
|---|---|

| 2. **Date debt was incurred:** continuing form 1977 | 3. **If court judgment, date obtained:** |
|---|---|

4. **Total Amount of Claim at Time Case Filed:**   $ 25,000,000
  If all or part of your claim is secured or entitled to priority, also complete Item 5 below.
  ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. **Classification of Claim.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured Nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. **CHECK THE APPROPRIATE BOX OR BOXES** that best describe your claim and **STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.**

| ☐ SECURED CLAIM (check this box if your claim is secured by collateral, including a right of setoff.) <br><br> Brief Description of Collateral: <br><br> ☐ Real Estate   ☐ Other (Describe briefly) <br><br> _____ <br><br> Amount of arrearage and other charges at time case filed included in secured claim above, if any:  $_____ <br><br> Attach evidence of perfection of security interest <br><br> ☒ UNSECURED NONPRIORITY CLAIM <br><br> A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim. | ☐ UNSECURED PRIORITY CLAIM - Specify the priority of the claim. <br><br> ☐ Wages, salaries, or commissions (up to $4650), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3). <br><br> ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4). <br><br> ☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(7). <br><br> ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)_____. |
|---|---|

| 6. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. | This Space is for Court Use Only |
|---|---|

7. **Supporting Documents:** _Attach copies of supporting documents_, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8. **Acknowledgement:** Upon receipt and processing of this Proof of Claim, you will receive an acknowledgement card indicating the date of filing and your unique claim number. If you want a file stamped copy of the Proof of Claim form itself, enclose a self addressed envelope and copy of this proof of claim form.

| Date <br> 3/28/03 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): <br> Corbett & Steelman <br> By: _(signature)_ <br> David F. Brown, Attorneys for Creditors | WR Grace   BF.46.181.9032 <br> 00013944 <br> SR=633 |
|---|---|---|

[1] See General Instructions and Claims Bar Date Notice and its exhibits for names of all Debtors and "other names" used by the Debtors.

REC'D MAR 3 1 2003

# SPECIFIC INSTRUCTIONS FOR COMPLETING
## GRACE NON-ASBESTOS PROOF OF CLAIM FORMS

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, there may be exceptions to these general rules.*

This Proof of Claim form is for Creditors who have Non-Asbestos Claims against any of the Debtors. Non-Asbestos Claims are any claims against the Debtors as of a time immediately preceding the commencement of the Chapter 11 cases on April 2, 2001 other than Asbestos Personal Injury Claims. Asbestos Property Damage Claims, Zonolite Attic Insulation Claims, Settled Asbestos Claims or Medical Monitoring Claims, as defined on the enclosed General Instructions. More specifically, Non-Asbestos Claims are those claims against one or more of the Debtors, whether in the nature of or sounding in tort, contract, warranty or any other theory of law or equity for, relating to or arising by reason of, directly or indirectly, any injury, damage or economic loss caused or allegedly caused directly or indirectly by any of the Debtors or any products or materials manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors and arising or allegedly arising directly or indirectly, from acts or omissions of one or more of the Debtors, including, but not limited to, all claims, debts, obligations or liabilities for compensatory and punitive damages.

**Administrative Expenses:** Those claims for, among other things, the actual, necessary costs and expenses of preserving the estate as defined in Section 503 of the Bankruptcy Code that arose after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to Section 503 of the Bankruptcy Code. This form should not be used to make a claim for an administrative expense.

**Secured Claim:** A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property. Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right to setoff), the creditor's claim may be a secured claim. (See also Unsecured Claim.)

**Unsecured Claim:** If a claim is not a secured claim, it is an unsecured claim. Unsecured claims are those claims for which a creditor has no lien on the debtor's property or the property on which a creditor has a lien is not worth enough to pay the creditor in full.

**Unsecured Nonpriority Claim:** Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as Unsecured Nonpriority Claims.

**Information about Creditor:** Complete this section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the court which sent notice, or if this proof of claim replaces or amends a proof of claim that was already filed, check the appropriate box on the form.

1.    **Basis for Claim:** Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in your social security number and the dates of work for which you were not paid.

2.    **Date Debt Incurred:** Fill in the date the debt was first owed by the debtor.

3.    **Court Judgments:** If you have a court judgment for this debt, state the date the court entered the judgment.

4.    **Amount of Claim:** Insert the amount of claim at the time the case was filed in the appropriate box based on your selected Classification of Claim in item 5. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

5.    **Classification of Claim:** Check either Secured, Unsecured Nonpriority or Unsecured Priority as appropriate. (See Definitions above.)

      **Unsecured Priority Claim:** Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See Definitions, above). A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

6.    **Credits:** By signing this proof of claim, you are stating under oath that in calculating the amount of your claim, you have given the debtor credit for all payments received from the debtor.

7.    **Supporting Documents:** You must attach to this proof of claim form, copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

*Be sure to date the claim and place original signature of claimant or person making claim for creditor where indicated at the bottom of the claim form. Please type or print name of individual under the signature. Be sure all items are answered on the claim form. If not applicable, insert "Not Applicable".*

RETURN CLAIM FORM (WITH ATTACHMENTS, IF ANY) TO THE FOLLOWING CLAIMS AGENT FOR THE DEBTORS:

Claims Processing Agent
Re: W. R. Grace & Co. Bankruptcy
P.O. Box 1620
Faribault, MN 55021-1620

**The Bar Date for filing all NON-ASBESTOS CLAIMS against the Debtors is March 31, 2003 at 4:00 p.m. Eastern Time.**

## ATTACHMENT 1 TO PROOF OF CLAIM

THIS CLAIM IS THE SUBJECT OF A PENDING ACTION in the Superior Court of California, County of Orange, Case No. 758512 entitled *William C. Baker, et al. V. W.R. Grace & Co., etc., et al.* A copy of the Complaint in that action is attached hereto as Exhibit "A" and incorporated herein by reference.

**Names of Creditors:**      William C. Baker
Eber E. Jaques
Bradford H. Miller
Montgomery R. Fisher
Sharon R. Ormsbee
Marilyn Rea
The Fisher Trust

### Background Facts of Claim

The Creditors are former shareholders of Del Taco, Inc., a California corporation ("DTI").

In 1977, DTI and DTG, Inc., a Delaware corporation, entered into a written Conveyance Agreement a copy of which is attached to the Complaint as Exhibit 1 and incorporated herein by reference.

Pursuant to Article 3.01 of the Conveyance Agreement, DTG was required to pay a royalty of 1 percent (1%) of the gross receipts of stores opened in the Domestic Territory (defined in the Conveyance Agreement essentially as anywhere in the United States except California and Yuma Arizona) to DTI ("Article 3 Percentage Fee"). Pursuant to Article 4.04 of the Conveyance Agreement, in the event that DTG did not timely open a sufficient number of restaurants, DTI could exercise an option to open its own restaurants in the Domestic Territory ("Article 4 Option") in exchange for paying DTG $10,000 for each store opened, plus 1 percent (1%) of gross receipts of stores opened on the Domestic Territory by DTI.

The obligations of DTG, Inc. pursuant to the Conveyance Agreement were guaranteed by W.R. Grace & Co., a Connecticut corporation ("Grace") pursuant to the Guarantee attached to the Conveyance Agreement. A copy fo the Guarantee is attached to the Complaint as Exhibit 4 and incorporated herein by reference. Creditors are informed and believe that Grace subsequently became known as W.R. Grace & Co.– Conn.

DTG, Inc. subsequently changed its name to Del Taco Corporation, a Delaware corporation ("DTC").

1

In 1978 DTI sold and assigned to Creditors certain rights under the Conveyance Agreement, including the right to receive that portion of the Article 3 Percentage Fee totaling in the aggregate 80 percent (80%) of DTI's interest in the Article 3 Percentage Fee. A copy of the Agreements evidencing that sale and assignment is attached hereto as Exhibit 6 and incorporated herein by reference.

In 1979, DTI assigned to Creditors additional rights under the Conveyance Agreement including in the Article 4 Option. A copy of the Assignments evidencing those assignments are attached hereto as Exhibit 7 and incorporated herein by reference.

DTC was given and received notice of the 1979 Assignments. A copy of a letter constituting notice to DTC is attached to the Complaint as Exhibit 5 and incorporated herein by reference.

In 1981, DTC and Creditors, and others, entered into an Amendment No. 1 to Conveyance Agreement which, among other things confirmed the assignment of the Article 3 Percentage Fee to Creditors. A copy of the Amendment No.1 is attached to the Complaint as Exhibit 2 and incorporated herein by reference.

In March 1984, DTC sold, transferred and assigned to Creative Food 'N Fun Company, a Delaware corporation ("CFF") its rights and obligations under the Conveyance Agreement and CFF assumed the obligations of DTC.

In March1988, DTI was merged into and acquired by DTI Acquisition Corporation. DTI Acquisition Corporation, subsequently changed its name to and/or merged into AWR II, Inc., a California corporation, which later changed its name to Del Taco, Inc., a California corporation ("Del Taco").

In 1992, in derogation of Creditors rights to the Article 4 Option, Del Taco and CFF entered into a Modification and Purchase Agreement ("Modification Agreement") whereby Del Taco purported to exercise the Article 4 Option and CFF and Del Taco purported to modify the Article 4 Option previously assigned to Creditors. A copy of the Modification Agreement is attached to the Complaint as Exhibit 3 and incorporated herein by reference.

In 1994, Del Taco filed an action in the Superior Court of California, County of Orange, against Creditors and CFF seeking a declaration by the court that Del Taco was not responsible for the direct payment of any percentage fees or royalties to Creditors, entitled *Del Taco, Inc. v. William C. Baker, et al.*, Case No. 730152 ("Declaratory Relief Action"). In the Declaratory Relief Action, the court specifically determined that under Article 3 of the Conveyance Agreement, royalty payments were only payable by DTG. The Judgment states:

2

> "'A Percentage Fee' is payable only under Article 3 of the
> Conveyance Agreement and <u>is payable thereunder by</u>
> <u>DTG, Inc.</u> and not by Plaintiff Del Taco, Inc." (Emphasis
> added.)

DTC, CFF and Grace remain obligated to pay the Article 3 Percentage Fee to
Creditors for all Del Taco opened in the Domestic Territory, including all Del Taco
restaurants opened by Del Taco or its franchisees prior to and subsequent to the
commencement of Debtors' bankruptcy cases.

Creditors seek to recover the Article 3 Percentage Fee which is and will be
due and payable pursuant to the Conveyance Agreement by DTG, Inc. and,
therefore, also by DTC as successor by name change to DTG, Inc., by Grace, as
guarantor, and by CFF as assignee. Creditors are informed and believe that the
obligations of DTC under the Conveyance Agreement assumed by CFF were, by
virtue of certain transfers, assignments, assumptions and/or mergers also assumed
by Taco Villa, Inc. and Del Taco Restaurant, Inc.

Creditors also seek damages for breach of contract, breach of implied
covenant of good faith and fair dealing and interference with contract. The tort
claim for interference with contract against CCF and Grace arises from the
interference with the Assignments of the Article 4 Option by DTI to Creditors
which interference arises from CFF and Del Taco entering into the Modification
Agreement. Creditors also have claims against CFF and Grace for declaratory relief
and an accounting.

K:\DOCUMENT\2478-001\Grace BK 2001\Attach 1 to Proof of Claim.wpd

3

1  Richard B. Specter, Bar No. 114090
   CORBETT & STEELMAN
2  A Professional Law Corporation
   18200 Von Karman Avenue, Suite 200
3  Irvine, California 92715-1086
   (714)   553-9266
4
   Attorneys for Plaintiffs WILLIAM C. BAKER,
5  EBER E. JAQUES, BRADFORD H. MILLER,
   MONTGOMERY R. FISHER, SHARON R. ORMSBEE,
6  MARILYN REA and THE FISHER TRUST

7

8

9                SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                   FOR THE COUNTY OF ORANGE

11

12  WILLIAM C. BAKER, EBER E. JAQUES, )     CASE NO.   **758512**
    BRADFORD H. MILLER, MONTGOMERY)
13  R. FISHER, SHARON R. ORMSBEE,    )      COMPLAINT FOR BREACH OF
    MARILYN REA, and THE FISHER      )      CONTRACT, BREACH OF THE
14  TRUST                            )      COVENANT OF GOOD FAITH AND
                                     )      FAIR DEALING, INTENTIONAL
15            Plaintiffs,            )      INTERFERENCE WITH
                                     )      CONTRACTUAL RELATIONSHIP,
16       v.                          )      ACCOUNTING AND
                                     )      DECLARATORY RELIEF
17  W. R. GRACE & CO., a Connecticut )
    corporation; CREATIVE FOOD 'N FUN)
18  COMPANY, a Delaware corporation; )      ┌─────────────────────────┐
    DEL TACO, INC., a California     )      │ JUDGE THOMAS N. THRASHER, SR. │
19  corporation; and DOES 1 through 50,)    │        DEPT. 13         │
    inclusive,                       )      └─────────────────────────┘
20                                   )
             Defendants.             )
21  _____ )

22

23

24       Plaintiffs William C. Baker, Eber E. Jaques, Bradford H. Miller,

25  Montgomery R. Fisher, Sharon R. Ormsbee, Marilyn Rea, and The Fisher Trust

26  ("Plaintiffs") allege as follows:

27  ///

28  ///

FILED
ORANGE COUNTY SUPERIOR COURT

JAN 19 1996

ALAN SLATER, Executive Officer/Clerk
By   A. KNOX        DEPUTY

2478-001/18Jan96

1    <u>ALLEGATIONS COMMON TO ALL CAUSES OF ACTION</u>

2        1.    Plaintiffs William C. Baker, Eber E. Jaques, Bradford H. Miller; and

3    Sharon R. Ormsbee are individuals who reside in the County of Orange, State of

4    California.

5        2.    Plaintiffs Montgomery R. Fisher and Marilyn Lee Rea are individuals

6    who reside in the County of Los Angeles, State of California.

7        3.    Plaintiff The Fisher Trust is a trust duly formed under the laws of the

8    State of California.

9        4.    Plaintiffs are informed and believe, and thereupon allege, that

10   Defendant W. R. Grace & Co. is a corporation organized and existing under and by

11   virtue of the laws of the State of Connecticut, with its principal place of business

12   in the State of Florida.  At all times mentioned herein, Defendant W. R. Grace &

13   Co. has done and is doing business in the State of California.

14       5.    Plaintiffs are informed and believe, and thereupon allege, that

15   Defendant Creative Food 'N Fun Company is a corporation organized and existing

16   under and by virtue of the laws of the State of Delaware, with its principal place of

17   business in the State of Georgia.  At all times mentioned herein, Defendant

18   Creative Food 'N Fun Company has done business in the State of California.

19       6.    Plaintiffs are informed and believe, and thereupon allege, that

20   Defendant Del Taco, Inc., is a corporation organized and existing under and by

21   virtue of the laws of the State of California, with its principal place of business in

22   the County of Orange, State of California.

23       7.    The true names and capacities, whether individual, corporate,

24   associate or otherwise, of Defendants designated herein as DOES 1 through 50,

25   inclusive, are presently unknown to Plaintiffs, who therefore sue said Defendants

26   by such fictitious names pursuant to California <u>Code of Civil Procedure</u> Section

27   474. Plaintiffs are informed and believe, and thereupon such information and belief

28

1   allege, that each of the Defendants is now, and has been at all times herein

2   mentioned, the agent, servant, employee, partner, associate, joint venturer,

3   co-participant, co-conspirator, and/or principal of and with each of the remaining

4   Defendants, and that each Defendant has been, at all times herein mentioned,

5   acting within the scope of such relationship and with the knowledge, consent,

6   authority, ratification and/or permission of each of the remaining Defendants.

7   Whenever appearing in this Complaint, each and every reference to a DOE

8   Defendant, or any of them, is intended to, and shall be deemed to, include all

9   fictitiously named Defendants.

10      8.   On or about September 16, 1977, Defendant Del Taco, Inc., and DTG,

11   Inc., entered into a written Conveyance Agreement, which is referred to hereinafter

12   as the "Conveyance Agreement."   A true and correct copy of the Conveyance

13   Agreement is attached hereto as Exhibit 1 and is incorporated herein by this

14   reference as though set forth in full hereat.

15      9.   On or about March 30, 1981, Defendant Del Taco, Inc., Del Taco

16   Corporation, as successor to DTG, Inc., all Plaintiffs with the exception of The

17   Fisher Trust, and Kendall C. Simpson entered into a written "Amendment No. 1 to

18   Conveyance Agreement", which is hereinafter referred to as the "Amendment".  A

19   true and correct copy of the Amendment is attached hereto as Exhibit 2 and is

20   incorporated herein by this reference as though set forth in full hereat.

21      10.  Plaintiffs are informed and believe, and thereupon allege, that

22   Defendant Del Taco, Inc., is the successor-in-interest to Del Taco, Inc., as that

23   entity is identified under the Conveyance Agreement and the Amendment and the

24   Assignment, and shares the same liabilities and obligations.

25      11.  Plaintiffs allege on information and belief that Defendant Creative Food

26   'N Fun Company is the successor in interest to Del Taco Corporation, and shares

27   the same liabilities and obligations.

28

1    12.   Plaintiffs are informed and believe and thereupon allege that at all
2    times, Defendant W. R. Grace & Co. has and does control, manage and supervise
3    Defendant Creative Food 'N Fun Company, and is responsible for said Defendant's
4    operations, obligations and liabilities.

5    13.   On or about July 7, 1992, Defendants Del Taco, Inc., and Creative
6    Food 'N Fun Company entered into a "Modification and Purchase Agreement."  A
7    true and correct copy of the Modification and Purchase Agreement is attached
8    hereto as Exhibit 3 and is incorporated herein by this reference as though set forth
9    in full hereat.

10   14.   The Conveyance Agreement, Amendment and Modification and
11   Purchase Agreement were made and to be performed in the County of Orange,
12   State of California.

13

14   ## FIRST CAUSE OF ACTION
15   (For Breach of Contract - Conveyance Agreement)
16   (Against All Defendants except Del Taco, Inc. and DOES 31-50)
17   15.   Plaintiffs incorporate herein by reference the allegations contained in
18   paragraphs 1 through 14, above, as if the same were fully set forth hereat.

19   16.   Effective April 27, 1979, Defendant Del Taco, Inc., transferred to
20   Kendall C. Simpson and Plaintiffs William C. Baker, Eber Jaques, Montgomery Ross
21   Fisher, and Bradford H. Miller, pro rata, all of Del Taco, Inc.'s rights to monies
22   payable pursuant to Sections 3.01, 3.04 and 3.05 of the Conveyance Agreement,
23   and all of Defendant Del Taco, Inc.'s rights pursuant to Article 4 of the
24   Conveyance Agreement, and notice of which was duly given to Del Taco
25   Corporation, as successor to DTG, Inc.

26   17.   Plaintiff Eber E. Jaques subsequently transferred half of his interest to
27   Plaintiff Marilyn Rea.

28

1    18.  Plaintiff Bradford H. Miller subsequently transferred half of his interest
2    to Plaintiff Sharon Ormsbee.

3    19.  Plaintiff Montgomery Ross Fisher subsequently transferred a portion of
4    his interest to The Fisher Trust.

5    20.  By that Guarantee dated September 16, 1977, a true and correct copy
6    of which is attached hereto as Exhibit 4 and incorporated herein by this reference
7    as though fully set forth hereat, Defendant W. R. Grace & Co. is responsible for all
8    of the obligations of Defendant Creative Food 'N Fun Company, as the successor
9    to DTG, Inc.

10    21.  Pursuant to paragraph 3.01 of the Conveyance Agreement,
11    Defendants W. R. Grace & Co., Creative Food 'N Fun Company and DOES 1-30
12    (hereinafter the "GRACE Defendants"), are obligated to pay to Plaintiffs a
13    percentage of the gross receipts of restaurants operated outside of the State of
14    California, and Yuma, Arizona, using the Del Taco name or system.

15    22.  Plaintiffs are informed and believe, and thereupon allege, that within
16    the last four (4) years, the GRACE Defendants have failed to pay the foregoing
17    monies to Plaintiffs, for which they are obligated pursuant to the Conveyance
18    Agreement.

19    23.  As a result of the GRACE Defendants' breach of the Conveyance
20    Agreement, as aforesaid, Plaintiffs have been and will be damaged in an amount to
21    be ascertained, but no less than Fifty Thousand Dollars ($50,000.00).

22    24.  Pursuant to paragraph 3.05 of the Conveyance Agreement, Plaintiffs
23    are entitled to ten percent (10%) interest per annum on the amounts due from the
24    due date, on such amounts as are determined pursuant to the preceding paragraph.

25    ///
26    ///
27    ///
28

2476-001/18Jan96

-5-

1 | SECOND CAUSE OF ACTION

2 | (For Breach of Contract - Conveyance Agreement)

3 | (Against the GRACE Defendants)

4 |    ·25.  Plaintiffs incorporate herein by reference the allegations contained in

5 | paragraphs 1 through 14, and 16 through 20, above, as if the same were fully set

6 | forth hereat.

7 |      26.  Pursuant to paragraph 7.02 of the Conveyance Agreement, the

8 | GRACE Defendants are required to take all actions to protect the use of the name

9 | "Del Taco" and the "Del Taco System."

10 |      27.  Plaintiffs are informed and believe, and thereupon allege, that

11 | restaurants using the "Del Taco" name or the "Del Taco System" are being

12 | operated in a manner not in compliance with the Conveyance Agreement.

13 |      28.  Plaintiffs are informed and believe, and thereupon allege, that the

14 | GRACE Defendants have breached their obligations pursuant to paragraph 7.02 of

15 | the Conveyance Agreement by failing to take all action necessary to preserve and

16 | protect the use of the "Del Taco" name and the "Del Taco System," as required by

17 | the Conveyance Agreement.

18 |      29.  As a result of the GRACE Defendants' breach of the Conveyance

19 | Agreement, as aforesaid, Plaintiffs have been and will be damaged in an amount to

20 | be ascertained, but in any event no less than Fifty Thousand Dollars ($50,000.00).

21 |

22 | THIRD CAUSE OF ACTION

23 | (For Breach of the Implied Covenant of Good Faith and Fair Dealing)

24 | (Against the GRACE Defendants)

25 |      30.  Plaintiffs incorporate herein by reference the allegations contained in

26 | paragraphs 1 through 14, 16 through 24, and 26 through 29, above, as if the

27 | same were fully set forth hereat.

28 |

C478-001/18Jan96

1    31.  In every contract, there is an implied covenant of good faith and fair

2    dealing that neither party will do anything which impairs the right of the other to

3    receive the benefits of the agreement.

4    32.  Pursuant to the Conveyance Agreement and the Amendment, the

5    GRACE Defendants were obligated to act fairly and in good faith in dealing with

6    Plaintiffs, and had a duty of good faith and fair dealing in protecting the interests of

7    Plaintiffs.

8    33.  By doing the actions as set forth above, the GRACE Defendants have

9    breached the implied covenant of good faith and fair dealing in the Conveyance

10   Agreement and the Amendment.

11   34.  As a direct and proximate result of the GRACE Defendants' breach of

12   the implied covenant of good faith and fair dealing, Plaintiffs have been damaged in

13   an amount unknown at the present time, but believed to be, and therefore alleged

14   to be, in excess of One Hundred Thousand Dollars ($100,000.00).

15

16                    **FOURTH CAUSE OF ACTION**

17         (For Breach of Contract Against Del Taco, Inc. and DOES 31-50)

18   35.  Plaintiffs incorporate herein by reference the allegations contained in

19   paragraphs 1 through 140, above, as if the same were fully set forth hereat.

20   36.  On or about April 27, 1979, Defendant Del Taco, Inc., and DOES 31-

21   50 (hereinafter the "DEL TACO Defendants") transferred, conveyed, assigned and

22   delivered to Plaintiffs a pro rata interest in all of the DEL TACO Defendants' right,

23   title and interest in the Conveyance Agreement.

24   37.  By letter dated April 27, 1979, a copy of which is attached hereto as

25   Exhibit 5 and incorporated herein by this reference as though fully set forth hereat,

26   Defendant Del Taco, Inc. notified the GRACE Defendants of the assignment

27   (hereinafter the "Assignment"), including the rights provided for pursuant to

28

1  Sections 3.01, 3.04, 3.05 and Article 4 of the Conveyance Agreement.

2       38.  Plaintiffs are informed and believe, and thereupon allege that in or

3  about July of 1992, the DEL TACO Defendants purported to compromise, transfer

4  and exercise, on their own behalf, those rights which had previously been

5  transferred to Plaintiffs, and which rights no longer lawfully belonged to the DEL

6  TACO Defendants.

7       39.  By doing said actions, the DEL TACO Defendants breached the terms

8  of the Assignment to Plaintiffs.

9       40.  As a direct and proximate result of the DEL TACO Defendant's breach

10  of the Assignment, Plaintiffs have been and will be damaged in an amount to be

11  determined, but in any event, no less than One Hundred Thousand Dollars

12  ($100,000.00).

13

14                    FIFTH CAUSE OF ACTION

15       (For Breach of the Implied Covenant of Good Faith and Fair Dealing)

16                    (Against the DEL TACO Defendants)

17       41.  Plaintiffs incorporate herein by reference the allegations contained in

18  paragraphs 1 through 14 and 36 through 40, above, as if the same were fully set

19  forth hereat.

20       42.  In every contract, there is an implied covenant of good faith and fair

21  dealing that neither party will do anything which impairs the right of the other to

22  receive the benefits of the agreement.

23       43.  Pursuant to the Assignment, the DEL TACO Defendants were

24  obligated to act fairly and in good faith in dealing with Plaintiffs, and had a duty of

25  good faith and fair dealing in protecting the interests of Plaintiffs.

26       44.  By doing the actions as set forth above, said DEL TACO Defendants

27  breached the implied covenant of good faith and fair dealing in the Assignment.

28

45.  As a direct and proximate result of the DEL TACO Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs have been damaged in an amount unknown at the present time, but believed to be, and therefore alleged to be, in excess of One Hundred Thousand Dollars ($100,000.00).


## SIXTH CAUSE OF ACTION

(For Declaratory Relief Against Defendants W. R. Grace & Co.

and Creative Food 'N Fun Company)

46.  Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1 through 14, 16 through 21, and 26 through 28, above, as if the same were fully set forth hereat.

47.  Plaintiffs are informed and believe, and thereupon allege, that a dispute presently exists by and among Plaintiffs, Defendant W. R. Grace & Co. and Defendant Creative Food 'N Fun Company with respect to the rights and obligations under the Conveyance Agreement, the Amendment, the Modification and Purchase Agreement, and the Assignment, in that Plaintiffs contend that they are entitled to receive from said Defendants a percentage of the gross receipts on all Del Taco Restaurants operated outside of the State of California and Yuma, Arizona, while Defendants W. R. Grace & Co. and Creative Food 'N Fun Company contend that Plaintiffs are not entitled to such payments.

48.  It is necessary and appropriate that this Court declare the rights and obligations of the parties hereto with respect to the matters described herein at this time, in that Plaintiffs contend that said Defendants have failed to previously pay such royalties owed to Plaintiffs, and such royalties on future sales will continue to be due and owing to Plaintiffs, and would require a multiplicity of actions by Plaintiffs to recover such funds hereafter, absent a declaration by this Court of said

2478-301/18Jan96

1    Defendants' obligations to Plaintiffs.

2

3                    SEVENTH CAUSE OF ACTION

4                (For Accounting Against All Defendants)

5        49.  Plaintiffs incorporate herein by reference the allegations contained in

6    paragraphs 1 through 14, 16 through 22 and 24, above, as if the same were fully

7    set forth hereat.

8

9        50.  The exact amount of the gross receipts of the Del Taco stores, as set

10   forth in paragraph 3.05, and the exact amount of monies owed to Plaintiffs, are

11   unknown and can only be determined by an accounting.

12        51.  Plaintiffs are informed and believe, and thereupon allege, that

13   Defendant Del Taco, Inc., is the owner and operator of, at least, some of the

14   Stores for which payments are due pursuant to paragraph 3.01.  Defendant Del

15   Taco, Inc. is named as a Defendant herein as a necessary party, as an accounting

16   cannot properly be rendered, and the amount of the gross receipts and monies

17   owed to Plaintiffs determined, without the involvement and assistance of

18   Defendant Del Taco, Inc., which is therefore a necessary party to this action.

19        52.  Plaintiffs have demanded an accounting by Defendants, and that

20   Defendants pay to Plaintiffs the monies owed pursuant to the Conveyance

21   Agreement.  Defendants have failed and refused, and continue to fail and refuse, to

22   render such an accounting and to pay Plaintiffs the sums due to them.

23        53.  Plaintiffs are informed and believe, and thereupon allege, that the

24   monies due to Plaintiffs are in excess of Fifty Thousand Dollars ($50,000.00).

25   ///

26   ///

27   ///

28

## EIGHTH CAUSE OF ACTION

### (For Intentional Interference With Contractual Relationship)

### (Against the DEL TACO Defendants)

54. Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1 through 14, and 16 through 24, above, as if the same were fully set forth hereat.

55. A valid contractual relationship existed between Defendants W. R. Grace & Co. and Creative Food 'N Fun Company, on the one hand, and Plaintiffs, in the form of the Conveyance Agreement and the Amendment.

56. The DEL TACO Defendants had knowledge of the contract.

57. The DEL TACO Defendants intended to induce a breach of the agreement between the other Defendants and Plaintiffs, by avoidance of the payment of the monies due and owing to Plaintiffs by said Defendants.

58. As set forth hereinabove, the GRACE Defendants have breached their obligations to Plaintiffs, which breach was the result of the DEL TACO Defendants' wrongful and unjustified conduct.

59. As a result of said Defendants' conduct, Plaintiffs have suffered damage in an amount to be ascertained but, in any event, no less than Fifty Thousand Dollars ($50,000.00).

60. The aforementioned conduct of the DEL TACO Defendants, and each of them, was willful and intended to cause injury to Plaintiffs. Plaintiffs are therefore entitled to an award of exemplary or punitive damages.

## NINTH CAUSE OF ACTION

### (For Intentional Interference With Contractual Relationship)

### (Against the GRACE Defendants)

61. Plaintiffs incorporate herein by reference the allegations contained in

-11-

2478-001/18Jan96

1 paragraphs 1 through 14 and 36 through 40, above, as if the same were fully set

2 forth hereat.

3     62. A valid contract existed between Plaintiffs and Defendant Del Taco,

4 Inc., in the Assignment.

5     63. The GRACE Defendants were informed of and had knowledge of the

6 Assignment.

7     64. By virtue of entering into the Modification and Purchase Agreement,

8 the GRACE Defendants intended to induce a breach of the Assignment, which

9 Assignment was in fact breached by the DEL TACO Defendants, by virtue of the

10 GRACE Defendants' wrongful and unjustified conduct.

11     65. Plaintiffs have suffered damages as a result of said breach, in an

12 amount to be ascertained, but in any event no less than One Hundred Thousand

13 Dollars ($100,000.00).

14     66. The aforementioned conduct of the GRACE Defendants, and each of

15 them, was willful and intended to cause injury to Plaintiffs. Plaintiffs are therefore

16 entitled to an award of exemplary or punitive damages.

17

18     WHEREFORE, Plaintiffs, and each of them, pray for Judgment herein as

19 follows:

20     1. For compensatory damages against all Defendants, and each of them,

21 in a sum to be proven at trial;

22     2. For interest on all monies owed by the GRACE Defendants pursuant to

23 the Conveyance Agreement, at the rate of ten percent (10%) per annum from and

24 since due;

25     3. For exemplary and punitive damages against all Defendants in an

26 amount to be proven at trial;

27     4. For a declaration by the Court declaring the rights and obligations of

28

1  the parties with respect to the Conveyance Agreement, and specifically for a

2  declaration that Defendants W. R. Grace & Co. and Creative Food 'N Fun Company

3  are obligated to pay to Plaintiffs a royalty on all restaurants using the Del Taco

4  name or the Del Taco system outside of the State of California and Yuma, Arizona;

5      5.    For an accounting between Plaintiffs and Defendants;

6      6.    For payment to Plaintiffs of the amount due from the GRACE

7  Defendants as a result of the accounting, and interest on that amount from and

8  after the due date at the rate of ten percent (10%) per annum;

9      7.    For costs of suit herein incurred; and

10     8.    For such other and further relief as the Court may deem just and

11 proper under the circumstances.

12 DATED:  January 18, 1996                    CORBETT & STEELMAN

13

14

15 By: _____
                                              Richard B. Specter
16                                            Attorneys for Plaintiffs
                                              WILLIAM C. BAKER, EBER E.
17                                            JAQUES, BRADFORD H. MILLER,
                                              MONTGOMERY R. FISHER,
18                                            SHARON R. ORMSBEE, MARILYN
                                              REA and THE FISHER TRUST

19

20

21

22

23

24

25

26

27

28

2478-001/18Jan96                         -13-

1

## CONVEYANCE AGREEMENT

AGREEMENT made this 16th day of September, 1977, by and between DEL TACO, INC., a California corporation ("DTI"), and DTG, INC., a Delaware corporation ("Company").

## R E C I T A L S :

A.   DTI and its predecessor corporations have, for a period in excess of ten (10) years, engaged in the business of acquiring, owning and operating for its own account and granting franchises to others to own and operate fast food restaurants for the sale of food items featuring Mexican dishes.  DTI has developed an entire concept with respect to its fast food operations, which includes the following:

1.   A system of site selection criteria and design.

2.   Designs for various types of relatively standardized DTI buildings.

3.   Signs, graphics, names, logos, and other decorative features.

4.   Recipes and menus.

5.   Interior equipment package.

6.   Forms of advertising material.

7.   Operating procedures, including detailed operating manuals.

8.   Training procedures including detailed training manuals and films.

9.   Specifications for supplies, including food products to be used.

EXHIBIT   1

     10.   Accounting and bookkeeping system.

All of the above information, designs, plans and other matters are referred to herein collectively as the "Original Del Taco System", and the Original Del Taco System and the improvements and changes referred to in Section 2.03 are referred to herein collectively as the "Del Taco System". The Del Taco System does not include the rights referred to in Sections 2.01 or 2.05 (a) and (b).

     B.   The Company has determined that it wishes to enter into the fast food business as to "Mexican food" type items and has determined that it wishes to enter into this Agreement for the purposes of acquiring the name "Del Taco", the Del Taco System and other services for conducting its business.

     C.   The Company, simultaneously herewith, is entering into an Employment Agreement of even date with William C. Baker, Chairman of the Board of DTI, and a Formation Agreement of even date with W. R. Grace & Co., a Connecticut corporation, and William C. Baker with respect to the ownership and operation of the Company.

     NOW, THEREFORE, THE PARTIES HERETO AGREE AS FOLLOWS:

     1.   **Definitions.**  As used herein, the following terms shall have the meanings specified.

     1.01  "Affiliate" of the Company or DTI means a business entity controlled by or under common control with the Company or DTI, respectively, or franchised by the Company or DTI, respectively.

     1.02  "Company Store" means a fast-food restaurant owned or operated by the Company or an Affiliate of the Company (or which was previously owned by the Company or an Affiliate of the Company and which was transferred, sold or conveyed to other persons or entities), which uses the name "Del Taco" and/or any material part of the Del Taco System and which sells Mexican food items, and "DTI Store" means such a restaurant owned or operated by DTI or an Affiliate of DTI.

-2-

1.03 "Gross Receipts" means all monies received by the Company or an Affiliate of the Company with respect to a Company Store, or by DTI or an Affiliate of DTI with respect to a DTI Store, from all sales made, in, or upon or with respect to orders placed at or completed by delivery in, through or from any Company Store or DTI Store, as the case may be, less the sum of (a) sales and transfer taxes to be paid over to any taxing authority, (b) refunds paid to cutomers, (c) service charges paid to unaffiliated credit card companies with respect to sales on credit, (d) employee discounts, and (e) gratuities paid by customers to employees.

1.04 "Domestic Territory" means the United States of America, its territories and possessions and the Commonwealth of Puerto Rico, except for the areas specified in Exhibit "A" hereto.

2.    Grant.

2.01 In consideration of the payment provided for in Section 3.01, DTI hereby conveys, sells, transfers and delivers to the Company, all right, title and interest of DTI in and to:

(a) the name "Del Taco" everywhere in the Domestic Territory;

(b) United States trademark registration No. 103549 with respect to the trade name "Del Taco", together with the goodwill symbolized thereby, subject to Section 2.07; and

(c) state trademark registrations, if any, with respect to the name "Del Taco" except for the State of California.

2.02 In consideration of the payment provided for in Section 3.02, DTI hereby conveys, sells and transfers to the Company all right, title and interest of DTI in and to the Original Del Taco System for use everywhere in the Domestic Territory. The Company acknowledges and

agrees that it has investigated and inspected the Original
Del Taco System and by its execution of this Agreement,
hereby accepts said System "AS IS."

2.03  DTI anticipates that it will from time
to time improve and update the Original Del Taco System,
although DTI has no obligation so to improve or update the
Original Del Taco System.  In consideration of the payment
provided for in Section 3.03, DTI hereby conveys, sells and
transfers to the Company all improvements and changes, if
any, in the Original Del Taco System including, without
limitation, new site selection criteria, building designs,
interior package changes, graphics, advertising material,
operating manuals and procedures, training manuals and
procedures, recipes, menus, information with respect to
suppliers, specifications for food and supplies, sign de-
signs, names, logos, trademarks, trade names, brand names
and copyrights, for use everywhere in the Domestic Territory.

2.04  In consideration of the payment pro-
vided for in Section 3.03, DTI hereby grants to the Company
the Option specified in Section 2.05.

2.05  The Company shall have the option
("Option") to obtain (a) all of DTI's right, title and
interest in and to the name "Del Taco", (b) all trademark
registrations with respect to the name "Del Taco", and (c)
the Del Taco System, in any and all areas of the world other
than the Domestic Territory and the areas specified in
Exhibit "A" hereto (such rights with respect to the Domestic
Territory having been conveyed pursuant to Sections 2.01,
2.02 and 2.03).  The Option shall terminate except to the
extent previously exercised as provided herein, on the tenth
(10th) anniversary of the date hereof.  In the event that
the Company wishes to exercise the Option at any time it may
do so by giving DTI written notice to that effect.  Thereupon,
DTI shall be deemed to have conveyed, sold, transferred and
delivered to the Company or its designee or designees all of
DTI's right, title and interest in and to (i) the name "Del
Taco", (ii) any and all trademark registrations with respect
to the name "Del Taco", and (iii) the Del Taco System;
except as to the Domestic Territory and the areas specified

-4-

in Exhibit "A". At the request of the Company, DTI will enter into a written instrument, satisfactory in form and substance to the Company and DTI, confirming such conveyance, sale, transfer and delivery.

2.06  DTI agrees that it will not use and will not grant rights to others to use the Del Taco System within the Domestic Territory or, until such time as the Option has expired, in any other part of the world (other than the areas specified in Exhibit "A").

2.07  The Company is contemporaneously herewith granting to DTI a license to use the trademark of United States trademark registration Del Taco No. 1035949 in the areas specified in Exhibit "A" pursuant to a separate instrument delivered to DTI simultaneously herewith.

2.08  The Company acknowledges and agrees that the Company will not use nor grant to others the right to use the "Del Taco" name or the Del Taco System in the areas specified in Exhibit "A".

2.09  DTI shall, upon reasonable demand by the Company, deliver to, or cause to be delivered to, the Company, such documents or other materials as are necessary to complete delivery to the Company of the Original Del Taco System conveyed in Section 2.02 hereof and shall take such other action as the Company may reasonably require to complete delivery of said System to the Company.

3.    Payments.

3.01  In consideration of the conveyance provided for in Section 2.01, the Company agrees to pay to DTI a fee equal to one percent (1%) of the Gross Receipts of Company Stores in the Domestic Territory.

3.02  In consideration of the conveyance provided for in Section 2.02, the Company has paid to DTI, simultaneously with the execution hereof, the sum of Three Million Dollars ($3,000,000) which sum, except for delivery of the Original Del Taco System, has been fully earned and is non-refundable.

-5-

3.03  In consideration of the conveyance and grants provided for in Sections 2.03 and 2.04 and the agreements of the Company provided for in Article 5, the Company has paid to DTI, simultaneously with the execution hereof, the sum of One Million Dollars ($1,000,000), which sum has been fully earned and is non-refundable.

3.04  In consideration of the conveyance provided for in Section 2.05(a) and (b), the Company agrees to pay or cause to be paid to DTI a fee equal to one-half percent (1/2%) of the Gross Receipts of Company Stores opened outside the Domestic Territory. Upon exercise of the Option and in consideration of the conveyance provided for in Section 2.05(c), the Company agrees to pay or cause to be paid to DTI the sum of One Million Dollars ($1,000,000).

3.05  The fees provided for in Section 3.01 and the first sentence of Section 3.04 (herein called "Percentage Fees") shall be payable not less than twelve (12) times annually within sixty (60) days from the end of each approximately equal accounting period of the Company during each year. Should the Percentage Fee not be timely paid, DTI shall be paid interest on the amount due from the due date to the date of payment at the rate of ten percent (10%) per annum. With each payment the Company shall submit a Report of Gross Receipts of Company Stores for such period. The Report of Gross Receipts of Company Stores shall include a breakdown by Company Store. DTI, its agents and representatives, shall have the right to examine the books and records of the Company with respect to Gross Receipts. In addition to receiving the Report of Gross Receipts and inspecting the books and records of the Company, DTI shall have the right to establish such other procedures as may from time to time be proper for verifying Gross Receipts. In the event that, at any time or from time to time, DTI is not satisfied with any Report, DTI shall have the right within one (1) year from the date of receipt of such Report by DTI to have Price Waterhouse & Co. examine such Report and such other books, records and material as Price Waterhouse & Co. deems necessary or desirable to conduct its audit. The Company agrees to pay or cause to be paid on demand any deficiency shown to be due by such examination and should such deficiency be in

-6-

excess of five percent (5%) of the amount shown by such
Report the Company shall pay the cost of such examination;
otherwise, the cost thereof shall be borne by DTI.  Should
the Company fail to timely provide the Report of Gross
Receipts, in addition to the rights of DTI to inspect the
books and records of the Company, to determine such pay-
ments, DTI may, at its sole election, and for so long as it
elects to have such election effective, until such time as
it receives the appropriate Report of Gross Receipts, require
payment of the Percentage Fees based upon the average Per-
centage Fees paid for the previous six (6) months (before
failure to supply the Report of Gross Receipts), on a Company
Store basis multiplied by the then number of Company Stores.

      3.06  The Company's obligation to pay the
Percentage Fees shall not apply to Gross Receipts of Company
Stores with respect to fiscal years commencing after the
ninety-ninth (99th) anniversary of the date hereof.

      4.    <u>Starting Schedule; License of Rights</u>.  As
used in this Article 4, a Company Store shall have been
"started" when construction has been commenced.

      4.01  DTI acknowledges and agrees that the
Company is not obligated hereunder to start any Company
Stores.

      4.02  Until such time as five hundred (500)
Company Stores have been started, as at the end of each cal-
endar year commencing with calendar year 1981, the following
calculation shall be made:  The total number of Company
Stores started since the date hereof divided by the number
of whole calendar years from January 1, 1981 to the date of
such calculation, the result of such calculation being the
Average Stores Starts.  In the event that the Average Stores
Starts is less than twenty-five (25), DTI may thereupon
notify the Company that it will exercise the option provided
for in Section 4.03.

      4.03  If DTI gives the notice provided for in
Section 4.02, the Company shall have one (1) year from the
date of said notice in which to increase its Average Store

-7-

Starts to twenty-five (25), including the one (1) year
period granted by this Section 4.03.  If the Company fails
to increase its Average Store Starts to twenty-five (25)
within the additional one (1) year period, DTI and its
Affiliates shall thereupon have the complete right, by
themselves or with others, to open DTI Stores anywhere
within the Domestic Territory, except in those Standard
Metropolitan Statistical Areas in which a Company Store has
been opened at the time said notice was received, or was
planned to be opened at the time said notice was received
and, in fact, was opened within one (1) year from the date
said notice was received.  The Company, pursuant to the
provisions of this Section, shall be deemed to have granted
to DTI or such persons as DTI may designate, a service mark
license (under all of the terms, other than territorial,
contained in that certain "Service Mark License" executed
contemporaneously with this Conveyance Agreement) to the
rights conveyed in Sections 2.01, 2.02 and 2.03 sufficient
to permit the opening of such DTI Stores.

4.04  DTI agrees to pay the Company the sum
of Ten Thousand Dollars ($10,000) with respect to each DTI
Store opened pursuant to a license granted under Section
4.03 (up to an aggregate sum of Four Million Dollars ($4,000,000)),
such sum to be payable upon such opening, plus a fee equal
to one percent (1%) of the Gross Receipts of each such DTI
Store.  Such fee shall be payable under the same conditions
and in the same manner as the Percentage Fees are payable as
specified in Sections 3.05 and 3.06.

4.05  In the event a DTI Store is opened pur-
suant to this Article 4, the Company shall not thereafter
open a Company Store within a radius of one (1) mile of such
DTI Store.

5.   Services.

5.01  It is the intention of the parties
hereto that the Company initially will seek and receive the
aid of DTI's personnel in those areas in which the Company
has not yet developed its own internal capability as an
interim measure in order to avoid the Company having to

-8-

prematurely hire personnel and incur unnecessarily high
overhead.  In this regard, for a period of three (3) years
from the date hereof, DTI, at the Company's reasonable
request, shall use its best efforts to provide staff and
managerial services with respect to the matters described
hereinbelow as (a) through (f) to the extent necessary for
the Company to complete its Project Plan of seventy (70)
Company Stores and after completion of such Project Plan
shall, for the remainder of said three (3) year period,
provide staff and managerial services to the extent then
available and at times and in a manner so as not to interfere
with the proper operations of DTI, with respect to matters
as follows:

     (a)  site selection;

     (b)  project planning including demo-
graphic studies, hiring employees and negotiating leases;

     (c)  consulting on operations;

     (d)  recruiting and training employees
of the Company in the Del Taco System training program;

     (e)  public relations and advertising;

     (f)  other services necessary or desir-
able for operation of the Company's business.

     5.02  At the Company's request, DTI will, to
the extent then available and not required by DTI, make
available to the Company appropriate office space for the
staff services to be provided pursuant to Section 5.01.

     5.03  At the Company's request, DTI will, to
the extent capacity is then available and does not interfere
with DTI's operations, provide the Company with computer
services to perform accounting functions for all Company
Stores.

     5.04  The Company shall pay DTI for the ser-
vices and facilities referred to in Sections 5.01 through

-9-

5.03 on a reimbursement of costs basis without profit as
determined by DTI and the Company under generally accepted
accounting methods and as is more definitively set forth in
Exhibit "B," attached hereto and incorporated herein by this
reference.

6.    Company Services.  To the extent that the
Company makes any changes in the Original Del Taco System
including, without limitation, revised menus, logos, graphics,
layouts, designs, training or any or all other portions of
the original Del Taco System, to the extent that the Company
has prepared advertising material, formats, layouts, scripts,
or similar material, all of such information material shall
be furnished to DTI by the Company at no cost or expense to
DTI.

7.    Confidential Material; Preservation of Rights.

7.01  DTI has advised the Company that each
and every element of the Del Taco System including, specifi-
cally, operating manuals, training manuals, menus, recipes,
supplier requirements, building designs and equipment infor-
mation has been developed at great cost and expense by DTI.
The Company shall not duplicate, and shall use its best ef-
forts to prevent any Affiliate from duplicating, any portion
of the Del Taco System including the operating manual or
training manual except in conjunction with the operation of
Company Stores.

7.02  The Company shall take all actions nec-
essary to preserve and protect all rights of the Company in
and to the name "Del Taco" and each and every portion of the
Del Taco System including compliance with all trademark,
trade name and copyright laws, posting of or including upon
an disseminated material such notices as may be legally
required for such protection, and DTI shall cooperate with
respect thereto.  DTI and the Company will take appropriate
measures to prevent the disclosure of the Del Taco System by
their respective employees.

8.    Representations and Warranties.  DTI repre-
sents and warrants to the Company as follows:

-10-

8.01  DTI does not own or control any United
States or foreign patents or patent applications or any
right, license or interest in any such patent or application.
(As used in this Article 8, "control" is used in the sense
of having the right to grant licenses to others).

8.02  No claim or threat of patent infringement
has been made in respect of the conduct of DTI's business
and DTI is not aware of the existence of any patent or
patent application anywhere which poses or may pose an
infringement question or issue in any such regard.  DTI has
no information or other reason to know or suspect that any
such proceeding will hereafter be declared or commenced.

8.03  The term "Proprietary Names and Symbols"
means and includes any and all trademarks, service marks,
trade names, brand names, symbols, designs or insignia of
any kind, whether registered or unregistered, which are
presently in use by DTI (or have been used by DTI since
February 25, 1976), to identify services or products as
emanating exclusively from DTI, in order to distinguish said
services and products from those emanating from others than
DTI.

The term "Principals of DTI" means and includes
every person who is presently a director, or stockholder of
DTI.

This Agreement is intended to convey to the Company
all of the interest of DTI, or of any of the principals of
DTI, in any of said Proprietary Names and Symbols.

All Proprietary Names and Symbols known to the
principals of DTI have been fully disclosed to the Company,
and all rights of DTI therein are intended to be conveyed to
the Company by this Agreement.

The principals of DTI are not aware of any claim
or threat against DTI which would impair or impede the use
by the Company of any Proprietary Name or Symbol.  This
representation is not intended to guarantee the right to
continued use of proprietary names and symbols of companies
other than DTI, references to which may have been occasionally

-11-

found in DTI menues, or other advertising material, to
inform the public of the origin of some product or service
sold by DTI.  The only past claims known to DTI are certain
claims once made by El Taco of California and Arizona, fully
disclosed to the Company in these negotiations, which claims
were not pressed apparently for lack of any basis or merit.

DTI has not previously granted to anyone any right
in said Proprietary Names and Symbols, except (a) certain
licenses and franchises for use thereof limited to California
and (b) the agreements referred to in item 3 of Exhibit "A"
attached hereto.

8.04 The term "Proprietary Information" means
and includes the DTI system of doing business, taken collectively
as an integrated whole, and consisting in substantial part
of business systems and business information, which has been
kept in confidence by DTI, and which is not readily discoverable
by any lawful means, other than by confidential disclosure
by DTI.  The term also includes any trade secrets, confidential
information of any kind, including any invention, process,
know-how, formula or design, or any list of suppliers or
customers, which is used by DTI in its business, and which
has been retained by DTI in sufficient confidentiality so
that it is not readily discoverable by the public that said
information is in use by DTI, or the method of DTI's use of
it.

It is the intention of this Conveyance Agreement
that DTI convey to the Company all of its interest in said
Proprietary Information.

DTI has not previously granted to anyone any right
in said Proprietary Information, except (a) certain licenses
and franchises for use thereof limited to California, and
(b) the agreements referred to in item 3 of Exhibit "A"
hereto.

DTI warrants that the principals of DTI are not
aware of any claim or threat by any other person or company
which would impede or impair the right of the Company to
make full and unlimited use of the Proprietary Information
conveyed to the Company by DTI pursuant to this Agreement.

-12-

Said Proprietary Information has been acquired and developed lawfully and in good faith by DTI, in the following manner:

(a)  In part by a bona fide purchase from a predecessor, after careful investigation which disclosed no defects in predecessor's power to deliver a lawful and unencumbered right to use said Proprietary Information, and subject to warranties by written contract, which warranties are hereby assigned to Company, as successor in interest to DTI;

(b)  In the remainder by its own developmental efforts, at the cost of substantial efforts by its personnel and expenditure of its resources.  DTI warrants that the principals of DTI do not know that any Proprietary Information has been acquired by DTI by any wrongful means, and do not know of any claim made by any other person that any of said Proprietary Information was acquired by wrongful means.

8.05  DTI does not own or control any United States or foreign copyrights, or applications therefor.

8.06  No director or stockholder of DTI owns, directly or indirectly, in whole or in part, any property, asset or right, tangible or intangible (including, but not limited to, any patent, proprietary name or copyright or pending application therefor) or invention, process, know-how, formulae, design, or a trade secret which is associated with any property, asset or right owned by DTI or which DTI is presently operating or using or the use of which is necessary for its business.

8.07  The execution and delivery of this Agreement by DTI and the consummation of the transactions contemplated hereby have been duly and validly authorized by the board of directors and stockholders of DTI.  This Agreement has been duly and validly authorized by all necessary corporate action of DTI and has been duly executed and delivered by DTI and is legally binding on DTI in accordance with its terms.  The execution and delivery of this Agreement and the consummation of the transactions contemplated by this Agreement will not result in the breach of any of the terms and conditions of, or constitute a default under, the charter documents or the by-laws of DTI, or any con-

-13-

tract, agreement, commitment, indenture, mortgage, pledge
agreement, note, bond, license or other instrument or
obligation to which DTI is now a party or by which DTI or
any of the property or properties or assets of DTI may be
bound.

### 9. Survival of Representations and Warranties; Indemnification.

9.01 All covenants, agreements, representa-
tions and warranties of the parties under this Agreement
shall survive the execution and delivery of this Agreement
and shall remain effective regardless of any investigation
at any time made by or on behalf of the other party or of
any information which the other party may have with respect
thereto; provided, however, any claim by the Company against
DTI with respect to the matters set forth in Article 8
hereof must be asserted, if at all, within two (2) years
from the date hereof.

9.02 Notwithstanding the execution and de-
livery of this Agreement, and regardless of any investigation
made at any time by or on behalf of either party hereto or
any information which either party hereto may have, except
as provided in Sections 2.02, 3.02 and 3.03, each party
herein (such party being herein called the "Indemnitor"),
agrees to indemnify the other party hereto (such party being
herein called the "Indemnitee") and save and hold Indemnitee
harmless from and against any damage, liability, loss, cost
or deficiency (including, but not limited to, reasonable
attorneys' fees and other costs and expenses incident to
proceedings or investigations or the defense of any claim)
arising out of, resulting from or related to and to pay
Indemnitee on demand the full amount of any sum which Indemni-
tee pays or becomes obligated to pay on account of (a) any
inaccuracy in any representation or the breach of any warranty
by Indemnitor under this Agreement, or (b) any failure by
Indemnitor duly to perform or observe any term, provision,
covenant or agreement to be performed or observed by Indemni-
tor pursuant to this Agreement. Indemnitee shall be deemed
to have suffered such damage, liability, loss or deficiency
if the same shall have been suffered by an Affiliate of
Indemnitee, and the amount thereof deemed to have been
suffered by Indemnitee shall be the amount thereof suffered
by such Affiliate.

-14-

Without limiting the generality of the foregoing, the Company agrees that it shall fully comply with all applicable governmental laws and regulations with respect to the granting to third parties of any rights with respect to the Del Taco name or the Del Taco System and the Company hereby indemnifies and holds DTI free and harmless from any and all loss, liability, claim, cost or cause of action with respect to the granting thereof, unless caused by DTI, including, without limitation, reasonable costs of defense and attorneys' fees.

10.  **Compliance with All Laws.**  The Company, at its own cost and expense, shall comply with all laws, ordinances, regulations, and orders affecting directly or indirectly the operation of Company Stores and shall pay all fees, costs and expenses with respect thereto including all required taxes.

11.  **Franchise Law Compliance.**  The Company acknowledges and agrees that this Conveyance Agreement does not constitute the sale of a franchise under any Franchise or similar Law of any state within the Domestic Territory.  The Company further agrees not to open a Company Store and use any part of the Del Taco System or the Del Taco name in any state constituting a part of the Domestic Territory wherein any compliance with any Franchise Law may be required without the Company, at its sole cost and expense, causing such compliance to be undertaken on behalf of DTI, as to which DTI shall fully cooperate.

12.  **Relationship of Parties.**  Nothing contained herein shall constitute DTI as a partner of or joint venturer with the Company, nor shall make DTI liable, directly or indirectly, for any contracts, orders, commitments, obligations or acts or omissions to act of the Company or for the Company's agents or employees.

13.  **Notices.**

13.01  All notices, requests, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to be duly given if delivered personally or mailed first class, postage prepaid, registered or certified mail, as follows:

-15-

If to DTI:          DEL TACO, INC.
                       16722 Hale Avenue
                       Irvine, Ca. 92714

If to Company:      DTG INC.
                       1114 Avenue of the Americas
                       New York, N.Y. 10036
                       Attn: Secretary

        13.02 Either party may change the address to which such communications are to be directed to it by giving notice to the other in the manner provided in Section 13.01.

        14.   <u>General.</u>

        14.01 This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York.

        14.02 The article and section headings contained herein are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

        14.03 All of the terms and conditions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by, the parties hereto and their respective successors and assigns, heirs at law, legatees, distributees, executors, administrators and other legal representatives, but this Agreement and the rights and obligations of the parties hereunder shall not be assignable, except that (i) the Company may assign all or a part of its rights hereunder, provided the Guarantee of W.R. Grace & Co. attached hereto remains in full force and effect, (a) to the transferee of substantially all the assets of the Company or to one or more Affiliates other than a franchisee of operations in the Domestic Territory, and (b) after five hundred (500) Company Stores have been opened in the Domestic Territory, to one or more franchisees of operations in the Domestic Territory; and (ii) DTI may assign (a) its rights to the Percentage Fee to one or more of its stockholders, and (b) its rights, but not duties, under Article 4 hereof, to any person or entity.

        14.04 This Agreement may be amended, modified, superseded or cancelled and any of the terms, cove-

-16-

nants and agreements hereof may be waived, only by a written instrument executed by all parties hereto or, in the case of a waiver, by the party waiving compliance.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the day and year first above written.

Attest:

_____
Secretary

Attest:

_____
Asst. Secy.

DEL TACO, INC.,
a California corporation

By _____
Its    President

DTG INC.
a Delaware corporation

By  A. S. Soliman
Its  Vice President

-17-

EXHIBIT "A"

Areas Not Included in Domestic Territory

1.  State of California.

2.  Yuma, Arizona.

3.  Within a one (1) mile radius of up to ten (10) stores
    owned and operated by David Jameson and Edward Hackbarth
    individually, jointly with each other, or with others,
    during the five (5) years ended February 24, 1981 pur-
    suant to agreements with DTI dated February 25, 1976,
    as amended, three (3) of such ten (10) stores having
    been opened in California.

EXHIBIT "A"

## REIMBURSEMENT OF COSTS

### SECTION (1).

The Company will reimburse DTI for out of pocket expenses (if any), other than those specified under Section (2) of this Exhibit, incurred by DTI on behalf and for the benefit of the Company, and DTI employee's salaries for time expended on behalf of the Company, provided that said expenses and salaries have been properly documented and approved by the Company's President according to the Limits of Authorities described in that certain Employment Agreement dated September 16, 1977 between the Company and William C. Baker.

### SECTION (2).

2.01 During the first full year of operation, the Company will pay DTI an amount equal to the lesser of:

   a.  5% of the expense catagories, described under Section (3) of this Exhibit, or

   b.  Ten thousand dollars ($10,000.00).

2.02 During the second and third full years of operation, the Company will pay DTI an amount equal to the lesser of:

   a.  10% of the expense catagories, described under Section (3) of this Exhibit, or

   b.  Twenty thousand dollars ($20,000.00) per year.

### SECTION (3).

The expense catagories referred to under Section (2) of this Exhibit include:

   a.  Office rent

### EXHIBIT "B"

b. Property taxes, building

c. Insurance, building

d. Utilities

e. Janitorial & gardening services

f. Telephone and telegraph

g. Postage

h. Duplicating & copying

i. Receptionist/switchboard

j. Office services

## GUARANTEE

The undersigned, W. R. GRACE & CO., a Connecticut corporation ("Parent") is the owner of eighty percent (80%) of the issued and outstanding common stock of DTG INC. ("Company"). In order to induce Del Taco, Inc. ("DTI") to sign the foregoing Agreement and intending DTI to rely thereon, Parent, for the benefit of DTI, its successors and assigns, hereby guarantees the full, complete and punctual per-formance by Company of each and every one of its obligations set forth in the foregoing Conveyance Agreement to all intents and purposes as though such obligations were those of Parent and not of Company. Parent acknowledges and agrees that in the event of a default by Company of the Conveyance Agreement, DTI, shall have the right to immediately proceed against Parent and shall not be obligated to first exhaust any rights or remedies it may otherwise have against Company. It is the intention of DTI and Parent that this Agreement shall constitute the unequivocal and unconditional guarantee by Parent of each and every obligation of Company set forth in this Conveyance Agreement. No waiver, amendment or revision with respect to the Conveyance Agreement shall abrogate, limit, release or have any effect upon the Guarantee of Parent set forth herein.

This Guarantee shall be governed by, construed and enforced in accordance with the internal laws of the State of California.

DATED: ___September 16___, 1977.

W. R. GRACE & CO.

a Connecticut corporation

By _Bruce S. Solms___

Its _Vice President___

"Parent"

**2**

## AMENDMENT NO. 1 TO CONVEYANCE AGREEMENT

This Amendment No. 1 to Conveyance Agreement is made and entered into this 30th day of  March, 1981 by and among Del Taco, Inc., a California corporation ("DTI"), Del Taco Corporation, a Delaware corporation (the "Company") and William C. Baker, Kendall C. Simpson, Eber E. Jaques, Bradford H. Miller, Montgomery R. Fisher, Sharon R. Winterhalter (formerly Sharon R. Miller) and Marilyn Robinson (formerly Marilyn Jaques) (collectively, the "Royalty Holders").

### R E C I T A L S

A.    DTI and the Company (formerly named DTG, Inc.) have entered into a Conveyance Agreement, dated September 16, 1977 (the "Conveyance Agreement"). Capitalized terms used herein without definitions shall have the same definitions as in the Conveyance Agreement.

B.    In May, 1978 and April, 1979 DTI, as permitted by Section 14.03 (ii)(a) of the Conveyance Agreement, transferred its rights to the Percentage Fee, to its stockholders, and the Royalty Holders (which group now includes the former wives of two of the stockholders) hold all of the right, title and interest formerly held by DTI under the Conveyance Agreement in the Percentage Fee.

C.    The Company desires to amend the Conveyance Agreement in order to permit it to assign certain of its rights to franchisees in the Domestic Territory prior to the opening of 500 Company Stores which is a condition precedent to the Company's right to

EXHIBIT    2

franchise under Section 14.03, and DTI and the Royalty Holders are willing to consent to such amendment upon the terms and conditions hereafter set forth.

NOW, THEREFORE, the parties hereto agree as follows:

1. Section 14.03 of the Conveyance Agreement shall be amended by deleting the phrase "after five hundred (500) Company Stores have been opened in the Domestic Territory," therein.

2. Confirming what DTI and the Company intended by Section 14.03 of the Conveyance Agreement, the Company may not assign, and will not assign, any of its duties and obligations to DTI or the Royalty Holders under the Conveyance Agreement to any franchisee including, without limiting the generality of the foregoing, its obligations under Section 3.01 to pay to the Royalty Holders the Percentage Fee on the Gross Receipts of Company Stores in the Domestic Territory, it being understood that the franchised stores will be Company Stores under the Conveyance Agreement.

3. Further, confirming the intention of DTI and the Company, the indemnity obligations of the Company set forth in the second paragraph of Section 9.02 of the Conveyance Agreement and the obligations of the Company under Sections 10 and 11 of the Conveyance Agreement shall apply with respect to the activities of all franchisees who operate Company Stores within the Domestic Territory and any subfranchisees of such franchisees.

2

IN WITNESS WHEREOF, the parties hereto have duly executed this Amendment Agreement on the day and year first above written.

DEL TACO, INC.,
a California corporation

Attest:

_Wayne W. Armstrong_

By _Kendall C. Sys_
                              President

DEL TACO CORPORATION,
a Delaware corporation

Attest:

_Carl Erickson_

_John C. Broyton_

_____
William C. Baker

_____
Montgomery R. Fisher

_____
Kendall C. Sampson

_____
Sharon R. Winterhalter

_____
Eber E. Jaques

_____
Marilyn Robinson

_____
Bradford H. Miller

"Royalty Holders"

3

## MODIFICATION AND PURCHASE AGREEMENT

AGREEMENT dated July 7, 1992, between CREATIVE FOOD 'N FUN COMPANY, a Delaware corporation ("CFF"), and DEL TACO, INC., a California corporation ("DTI").

### W I T N E S S E T H:

WHEREAS, pursuant to the Conveyance Agreement dated September 16, 1977 (the "Original Conveyance Agreement"), between DTI and DTG, Inc. (whose current name is Del Taco Corporation), a Delaware corporation ("DTC"), DTI transferred to DTC all right, title and interest of DTI in and to (i) the name "Del Taco" everywhere in the Domestic Territory (as defined therein), (ii) United States trademark registration no. 1035949, together with the goodwill symbolized thereby, (iii) all state trademark registrations with respect to the name "Del Taco" except for registrations in California, and (iv) the Del Taco System (as defined therein) for use everywhere in the Domestic Territory;

WHEREAS, pursuant to the Service Mark License Agreement dated September 16, 1977 (the "Service Mark License Agreement"), between DTC and DTI, DTC granted to DTI the right to use the service mark "Del Taco," including the form thereof which is the subject of United States trademark registration no. 1035949, in the State of California and in Yuma, Arizona;

WHEREAS, capitalized terms used but not defined herein are used with the definitions given them in the Original Conveyance Agreement as amended by Amendment No. 1 thereto dated March 30, 1981 (the "Conveyance Agreement");

WHEREAS, pursuant to the Del Taco System and Trademark Purchase Agreement and two Assignment and Assumption Agreements, each dated as of March 1, 1984, between DTC and CFF, DTC (i) sold to CFF its entire right, title and interest in and to the Trademarks, Registrations and Del Taco System (all as defined therein), together with the goodwill of the business symbolized by the Trademarks (as defined therein), and (ii) assigned to CFF its rights and obligations under the Conveyance Agreement and the Service Mark License Agreement;

WHEREAS, CFF has operated restaurants under the Del Taco name and has franchised a system for operating Mexican fast food restaurants under the Del Taco name based on the Del Taco System (the "CFF System");

WHEREAS, CFF has entered into an agreement to sell substantially all of the fee and leasehold properties at which CFF and its affiliates currently operate such restaurants (the "Properties Sale Agreement"); and

deldti.agt

2

WHEREAS, Article 4 of the Conveyance Agreement ("Article 4") provides, on the terms and conditions set forth therein, that if, as at the end of a calendar year, the Average Stores Starts are less than 25, DTI may thereupon notify CFF that it will exercise the right (the "Article 4 Right") to open DTI Stores in the Domestic Territory;

WHEREAS, the Average Stores Starts at December 31, 1991, were less than 25; CFF does not intend to open or franchise additional Company Stores; and DTI has notified CFF that it will exercise the Article 4 Right;

WHEREAS, the parties wish to modify the Article 4 Right and to provide for the servicing of certain franchisees of CFF under the development and franchise agreements listed in **Exhibit A** hereto (the "Franchise Agreements"); and CFF wishes to sell to DTI and DTI wishes to acquire from CFF all of CFF's right, title and interest in and to certain related assets;

NOW, THEREFORE, in consideration of the premises and the mutual agreements contained herein, the parties hereto agree as follows:

1. (a) **Modification of Article 4**. Article 4 is hereby modified to delete (i) the one-year period described in Article 4 and (ii) the payment requirements of Section 4.04 of the Conveyance Agreement.

(b) **Purchase and Sale**. CFF hereby sells, transfers and assigns to DTI and DTI hereby purchases and accepts from CFF all of CFF's right, title and interest in and to the furniture, equipment and other personal property described in **Exhibit B** hereto (the "Purchased Assets"); provided that CFF shall retain possession, control and use of the Purchased Assets for a limited period as provided in Section 4(f) hereof.

(c) **Consideration**. In consideration for the modification of Article 4, and the sale, transfer and assignment by CFF of the Purchased Assets to DTI, DTI is paying to CFF, in the manner described in Section 2(b), the sum of $350,000 (the "Purchase Price").

2. **Actions of the Parties at the Closing**. The closing of the transactions contemplated by this Agreement (the "Closing") is taking place on the date hereof. All of the actions being taken and instruments and other documents being delivered at the Closing are being taken or delivered, as the case may be, simultaneously with the execution and delivery of this Agreement, and no action or delivery shall be effective until all actions to be taken and

deldti.agt

3

deliveries to be made at the Closing, as contemplated by this Agreement, are complete. At the Closing:

(a)  CFF is executing and delivering to DTI a general bill of sale and other instruments of sale, transfer and assignment in order to convey to DTI all of CFF's right, title and interest in and to the Purchased Assets.

(b)  DTI is delivering to CFF, in payment of the Purchase Price, (i) $50,000 in immediately available funds and (ii) a secured promissory note (the "Note") in the principal amount of $300,000, payable in six semiannual installments of $50,000 on each March 30 and September 30 commencing March 30, 1993, and continuing through September 30, 1995, each of which installments shall be accompanied by payment of accrued interest on the unpaid principal balance at a rate of 10% per annum.

(c)  CFF and DTI are executing and exchanging counterparts of (i) a management agreement (the "Management Agreement") providing for the performance by DTI on behalf of CFF of CFF's obligations under the Franchise Agreements and (ii) an assignment and security agreement (the "Security Agreement") whereby, in order to secure DTI's obligations under the Note and this Agreement, DTI is assigning to CFF and granting to CFF a security interest in certain collateral (the "Collateral"), including (A) the Purchased Assets; (B) DTI's rights under any Franchise Agreement hereinafter assumed by DTI; and (C) DTI's rights under any agreement granting any other person or entity any rights in or with respect to DTI's rights under Article 4. The Security Agreement shall also provide that in the event of a purchase pursuant to Section 4(d) hereof, the rights so purchased shall be included in the Collateral.

(d)  CFF is delivering to DTI the opinion of its General Counsel as to certain of the matters set forth in Section 5.

(e)  DTI is delivering to CFF the opinion of Messrs. Morgan, Lewis & Bockius as to certain of the matters set forth in Section 6.

(f)  DTI is delivering to CFF the consent of General Electric Capital Corporation ("GECC") to the transactions contemplated by this Agreement and the exclusion of the Collateral from any lien of GECC.

3.  Franchise Agreements.  (a) As used in this Agreement, "Section 3.01 Comfort" with respect to a transaction means reasonably satisfactory evidence that such transaction would not give rise to liability of DTI under Section 3.01 of the Conveyance Agreement in connection with DTI's exercise of its rights under

deldti.agt

Article 4.  Without limiting the generality of the foregoing, any of the following shall constitute Section 3.01 Comfort:  (i) agreement or acknowledgement by those holding rights under Section 3.01 that there is no such liability; or (ii) a final judgment by a court of competent jurisdiction that there is no such liability; or (iii) an opinion of counsel reasonably satisfactory to DTI that there is no such liability.  CFF shall use all reasonable efforts to obtain the agreement or acknowledgement contemplated by clause (i) of the immediately preceding sentence; provided that CFF shall not be obligated to pay any consideration or incur any obligation in order to obtain such agreement or acknowledgement.

(b)  From and after the date hereof, DTI shall use all reasonable efforts to cause the franchisees under the Franchise Agreements (the "Franchisees") to become franchisees of DTI under its own restaurant system (the "DTI System") and to enter into general releases of CFF and its affiliates from all obligations under the applicable Franchise Agreements.  The franchise terms to be offered by DTI to the Franchisees shall be in accordance with the standards set forth in **Exhibit C** hereto.  The foregoing provisions of this Section 3(b) shall be conditioned on the obtaining or receipt by DTI of Section 3.01 Comfort with respect to the transaction contemplated thereby. Any Franchisee which does not elect to become a franchisee of the DTI System and does not give any required consent to the assignment of its Franchise Agreement(s) shall remain a Franchisee pursuant to the terms of its Franchise Agreement(s) and shall be covered by the Management Agreement.

(c)  If Del Taco Restaurants, Inc., CFF's corporate parent, is unable to terminate any of its eight Taco Villa franchises in Texas, DTI will supply administrative services to such franchisees for compensation and on such other terms and conditions as shall be agreed to by the parties.

4. **Additional Agreements**.  The parties further agree as follows:

(a)(i)  Unless DTI shall breach or default on its obligations under this Agreement, the Note or the Security Agreement, CFF hereafter shall not sell or grant any franchise or other interest in the Del Taco Rights (as defined below) to any other person or entity, or open additional Del Taco restaurants.

(a)(ii)  If at any time CFF shall have the right to declare DTI's obligations under the Note immediately due and payable, or if the entire principal balance of and accrued interest on the Note are not paid in full at the maturity of the Note, CFF shall have the right, exercisable by notice to DTI (a "Reinstatement Notice"), to terminate DTI's rights under Sections 4(c) and 3

deldti.agt

hereof and reinstate the provisions of Article 4 as in effect immediately prior to the execution and delivery of this Agreement. Such reinstatement is not an exclusive remedy and shall not otherwise affect DTI's obligations or CFF's rights or remedies under the Note, this Agreement, the Security Agreement or any other instrument or document delivered pursuant hereto or thereto. In the event of such reinstatement, DTI thereupon shall pay CFF an amount equal to the aggregate amounts that would have been payable under the reinstated payment provisions of Article 4, during the period from the execution hereof until the date of such reinstatement, if the reinstated payment provisions of Article 4 had been in effect throughout such period. The provisions of this paragraph are subject to the condition that if, within ten days after DTI's receipt of a Reinstatement Notice, DTI shall pay the principal balance of the Note, together with interest accrued through the date of payment and any other amount due under this Agreement, the Note or the Security Agreement, then the termination and reinstatement resulting from such Reinstatement Notice shall be deemed cancelled.

(b) The intellectual property rights licensed to DTI under the Article 4 Rights shall be administered in accordance with the quality control standards and other terms set forth in **Exhibit D** hereto.

(c) At any time after DTI has satisfied all of its obligations under this Agreement, the Note and the Security Agreement, DTI shall have the right, exercisable by notice to CFF, to purchase from CFF for a purchase price of $1,000.00 all of CFF's right, title and interest in and to the Tradename and the United States federal and state trademarks, trademark registrations and trademark applications with respect to the Tradename and the operation of Mexican fast food restaurants, including those listed on **Exhibit E** hereto (the "CFF Trademark Rights"), together with the goodwill symbolized by the Tradename and the CFF Trademark Rights (collectively, the "Del Taco Rights").

(d) If at any time hereafter DTI shall obtain or be provided with Section 3.01 Comfort with respect to the assignment to DTI of the Franchise Agreements, then (i) the parties shall enter into an assignment and assumption agreement in the form of **Exhibit F** hereto with respect to the Franchise Agreements; and (ii) CFF shall have the right, exercisable by notice to DTI, to sell to DTI for a purchase price of $1,000.00 all of CFF's right, title and interest in and to the Del Taco Rights.

(e) In the event of the exercise of the rights set forth in paragraph (c) or (d) of this Section, the purchase shall be effected by agreements and other documents reasonably satisfactory to the parties, including documents to effect the termination of

deldti.agt

6

the Conveyance Agreement and the Service Mark License Agreement.
Such purchase shall be subject to the provisions of Section 7
hereof.   In connection with such purchase, DTI shall grant the
following nontransferable licenses: (i) to CFF and its affiliates,
a nonexclusive, paid-up license to use the Del Taco Rights to
continue to operate any Del Taco restaurants owned and operated by
CFF or its affiliates on the date hereof until such restaurants (A)
are sold pursuant to the Properties Sale Agreement or otherwise or
(B) cease to be operated as Mexican fast food restaurants; (ii) to
each Franchisee covered by the Management Agreement, for so long as
its Franchise Agreement(s) remain in effect, a nonexclusive, paid-
up license to use the Del Taco Rights for the purpose of continuing
its operations under such Franchise Agreement(s); and (iii) at the
option of CFF, to each Del Taco franchisee of CFF not covered by
the Management Agreement, for so long as its franchise agreement(s)
remain in effect, a nonexclusive, paid-up license for a term of
twelve months from the date of such purchase, to use the Del Taco
Rights for the purpose of continuing its operations under such
franchise agreement(s).

          (f) Notwithstanding the sale of the Purchased Assets to
DTI as provided herein, CFF shall retain possession, control and
use of certain of the Purchased Assets listed in **Exhibit B** hereto
under the heading "Del Taco Furniture and Equipment" (the "Office
Assets") on a rent-free basis for so long as CFF and its affiliates
require the Office Assets in connection with operations at their
office in Atlanta, Georgia; provided that in any event CFF's rights
under this paragraph shall expire on March 30, 1993. CFF shall have
no obligation for ordinary wear and tear of the Office Assets.   In
the event of material casualty to the Office Assets, CFF shall pay
to DTI a maximum of $10,000 for the Office Assets damaged or
destroyed.   If there is any material casualty to the Office Assets
constituting less than a total loss, CFF shall pay DTI a reasonable
portion of such amount depending upon the extent of damage. Any
such casualty payment shall be made by deductions from the last
installment of principal on the Note.   When the rights granted
under this paragraph are no longer required by CFF or have expired,
DTI shall remove the Office Assets from CFF's offices in Atlanta,
Georgia, at DTI's expense.    CFF shall supply all reasonable
cooperation to facilitate such removal.

          5. **Representations and Warranties of CFF**.

          The representations and warranties set forth in this
Section shall not provide the basis for any claim against CFF as to
matters of which DTI or any of its officers, employees, attorneys
or accountants has actual knowledge or awareness on the date of
this Agreement.   The representations set forth in this Section as
to knowledge of the CFF Executives are as to the actual present
personal knowledge of such individuals at the date of this

deldti.agt

Agreement.  As used in this Section, the term "CFF Executives" means B.A. Schulte, President of CFF; E.A. Kray, Vice President and COO of CFF; and S.E. Zelac, Assistant Vice President, Business Development Group of W.R. Grace & Co.

CFF hereby represents and warrants to DTI as follows:

(a) CFF is a corporation duly organized, validly existing and in good standing under the laws of Delaware, with full corporate power to enter into this Agreement and to perform its obligations hereunder.

(b) The execution and delivery by CFF of this Agreement, and the performance by CFF of its obligations hereunder, have been duly and validly authorized by all necessary corporate action of CFF.  The CFF Transaction Documents have been duly executed and validly delivered by CFF and are legally binding on CFF.

(c) The execution and delivery of this Agreement, the Security Agreement and the Management Agreement (the "CFF Transaction Documents") by CFF and the performance by CFF of its obligations thereunder will not (i) conflict with the Certificate of Incorporation or By-laws of CFF, (ii) require CFF to obtain any authorization, action, consent, order, approval of, or to give notice to or seek review by or make any filing, registration or qualification with, any governmental, quasi-governmental, administrative or judicial body, agency, instrumentality or authority, except for such of the foregoing as has been obtained or effected or which the failure to obtain or effect would not have a material adverse effect on CFF's execution or delivery of this Agreement or the performance by CFF of its obligations hereunder, or (iii) result in the breach of any of the provisions of, or constitute a default under, any agreement, instrument or other document to which CFF is a party or by which it is bound, which breach or default would have a material adverse affect on the transactions contemplated by this Agreement.

(d) Except as set forth on **Schedule 5(d)** hereto, insofar as the CFF Executives have knowledge, after consultation with Randall S. Strange, Senior Litigation Counsel of the Legal Services Division of W.R. Grace & Co., no action, suit or proceeding before any court or any governmental or regulatory authority and no investigation by any governmental or regulatory authority has been commenced or is threatened against CFF or its affiliates, officers or directors, seeking to restrain, prevent or change the transactions contemplated by this Agreement or questioning the validity of any of such transactions or seeking damages against DTI or any of its affiliates in connection with any of such transactions.

deldti.agt

8

(e) Except for rights granted to DTI and under the Franchise Agreements, CFF has made no currently effective grant of any rights in the Del Taco Rights to any person or entity.

6. Representations and Warranties of DTI.

The representations and warranties set forth in this Section shall not provide the basis for any claim against DTI as to matters of which CFF or any of its officers, employees, attorneys or accountants has actual knowledge or awareness on the date of this Agreement. The representations set forth in this Section as to knowledge of the DTI Executives are as to the actual present personal knowledge of such individuals at the date of this Agreement. As used in this Section, the term "DTI Executives" means Kevin K. Moriarty, President of DTI; and Harold Fox, Vice President and Chief Financial Officer of DTI.

DTI hereby represents and warrants to CFF as follows:

(a) DTI is a corporation duly organized, validly existing and in good standing under the laws of California, with full corporate power to enter into this Agreement and to perform its obligations hereunder.

(b) The execution and delivery of this Agreement, the Note, the Security Agreement, the Management Agreement and the instruments and documents contemplated hereby and thereby (the "DTI Transaction Documents") by DTI, and the performance by DTI of its obligations thereunder, have been duly and validly authorized by all necessary corporate action of DTI. The DTI Transaction Documents have been (or on their execution and delivery will be) duly executed and validly delivered by DTI and are (or upon their execution and delivery will be) legally binding on DTI.

(c) The execution and delivery of the DTI Transaction Documents by DTI, and the performance by DTI of its obligations thereunder, will not (i) conflict with the Articles of Incorporation or By-laws of DTI, (ii) require DTI to obtain any authorization, action, consent, order, approval of, or to give notice to or seek review by or make any filing, registration or qualification with, any governmental, quasi-governmental, administrative or judicial body, agency, instrumentality or authority, except for such of the foregoing as has been obtained or effected or which the failure to obtain or effect would not have a material adverse effect on DTI's execution or delivery of the DTI Transaction Documents or the performance by DTI of its obligations thereunder, (iii) result in the imposition of any lien, encumbrance, charge, pledge or hypothecation (each a "Lien") of or on any of the Purchased Assets, except as may be provided under the Security Agreement, or (iv) result in the breach of any of the

deldti.agt

9

provisions of, or constitute a default under, any agreement, instrument or other document to which DTI is a party or by which it is bound, which breach or default would have a material adverse affect on the transactions contemplated by this Agreement.

(d) Insofar as the DTI Executives have knowledge, after consultation with Morgan, Lewis & Bockius, counsel to DTI, no action, suit or proceeding before any court or any governmental or regulatory authority and no investigation by any governmental or regulatory authority has been commenced or is threatened against DTI or its affiliates, officers or directors, seeking to restrain, prevent or change the transaction contemplated by this Agreement or questioning the validity of any of such transactions or seeking damages against CFF or any of its affiliates in connection with any of such transactions.

(e) DTI is not and will not be party to or bound by any agreement, instrument or other document which grants any third party a Lien in or with respect to any of the Collateral prior to the payment in full of all of DTI's obligations under the DTI Transaction Documents.

7. **Disclaimers.**  The parties acknowledge and agree as follows:

(a) The transactions contemplated by this Agreement are primarily a license to DTI of, together with the grant to DTI of an option to purchase, the Tradename and the CFF Trademark Rights and associated goodwill. DTI is entering into the Management Agreement and agreeing (subject to the terms and conditions set forth herein) to assume the Franchise Agreements as an accommodation to CFF. DTI does not intend to utilize the CFF System, to the extent that it differs from DTI's own restaurant concepts and systems, in any material respect other than in connection with performing its obligations under the Franchise Agreements. CFF is not making, and hereby expressly excludes and disclaims, any and all representations or warranties of any kind, whether express or implied, regarding the Article 4 Right, the Franchise Agreements or the Franchisees, including (but without limiting the generality of the foregoing) any warranty of validity, title, freedom from encumbrance, freedom from claim of infringement, performance, profitability, or fitness or effectiveness for any purpose.

(b) DTI has examined the Purchased Assets to its satisfaction and is purchasing the Purchased Assets "**AS IS**". CFF is not making, and hereby expressly excludes and disclaims, any and all representations or warranties, whether express or implied, of any nature with respect to the Purchased Assets, including (but without limiting the generality of the foregoing) any warranty of validity, title, freedom from encumbrance, freedom from claim of

deldti.agt

10

infringement, merchantability, condition, state of repair, or fitness or effectiveness for any purpose, of or with respect to the Purchased Assets, other than the representations and warranties of CFF specifically set forth in Section 5.

(c) DTI has taken full responsibility for evaluating the legal assignability of CFF's rights in the Purchased Assets and the Franchise Agreements, and CFF shall have no liability on account of any legal questions concerning the effectiveness of any such assignment; provided, however, that nothing in this Section shall diminish CFF's obligations under Section 9(a).

(d) DTI disclaims and does not assume any liability for breaches under the Franchise Agreements occurring prior to the date hereof.

8. <u>Indemnification; Survival</u>. (a)  CFF shall indemnify and hold harmless DTI and its direct and indirect subsidiaries from and against any and all losses, claims, damages, liabilities and expenses, including (but without limiting the generality of the foregoing) reasonable attorneys' fees and other legal expenses (collectively, "Losses") arising from or out of or with respect to the breach of any representation, warranty, covenant or agreement of CFF contained in the CFF Transaction Documents.

CFF shall indemnify and hold harmless DTI and its direct and indirect subsidiaries from and against any and all Losses arising from or out of or with respect to litigation commenced in any federal or state court in which DTI is a defendant, claiming liability for amounts allegedly payable under Section 3.01 of the Conveyance Agreement.

(b) DTI shall indemnify and hold harmless CFF and its direct and indirect parents and subsidiaries from and against any and all Losses arising from or out of or with respect to the breach of any representation, warranty, covenant or agreement of DTI contained in the DTI Transaction Documents.

(c) A party seeking indemnification under this Section (the "Indemnitee") will give prompt notice (a "Claim Notice") to the indemnifying party (the "Indemnitor") of any Loss for which the Indemnitor is seeking such indemnification. The Claim Notice will describe such Loss in reasonable detail. With respect to any claim in a Claim Notice relating to a third party claim, the Indemnitor at its expense may defend such third party claim, and the Indemnitee at its own expense shall have the right to participate in such defense. So long as the Indemnitor is defending in good faith such third party claim, the Indemnitee shall not settle or compromise such third party claim. The Indemnitee shall cooperate fully with the Indemnitor in the defense of such third party claim.

deldti.agt

If the Indemnitor does not elect to defend such third party claim, the Indemnitee may at its election defend such third party claim at the Indemnitor's expense if the Indemnitor does not provide the Indemnitee with reasonable assurances that the Indemnitor will either satisfy or defend such third party claim.

(d) The representations and warranties contained in this Agreement shall survive the closing of the transactions contemplated hereby and the delivery of this Agreement and any other instruments or documents delivered pursuant hereto or in connection herewith, for a period of one year from the date hereof, and no claim for indemnification under this Section with respect to such representations and warranties shall be effective unless a Claim Notice with respect thereto shall have been given in accordance with the provisions of this Agreement within one year from the date hereof.

9. · **Miscellaneous**.

(a) **Further Actions**. From time to time each party, as and when requested by the other party, shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to carry out the intent and purposes of this Agreement and to consummate the transactions contemplated hereby.

(b) **Expenses**. Each party shall pay its own expenses in connection with the negotiation, execution, delivery and performance of this Agreement.

(c) **Entire Agreement**. This Agreement (which includes the Schedules and Exhibits hereto) and the other documents, agreements and instruments executed and delivered pursuant to or in connection with this Agreement, contain the entire agreement between the parties with respect to the transactions contemplated by this Agreement and supersede all prior arrangements or understandings with respect thereto.

(d) **Descriptive Headings**. The descriptive headings of this Agreement are for convenience only and shall not control or affect the meaning or construction of any provision of this Agreement.

(e) **Notices**. All notices or other communications which are required or permitted hereunder shall be in writing and sufficient if delivered personally or by facsimile transmission, or sent and delivered by registered or certified mail, postage prepaid, addressed as follows:

deldti.agt

12

If to CFF:

          Creative Food 'N Fun Company
          c/o W.R. Grace & Co.-Conn.
          One Town Center Road
          Boca Raton, FL 33486-1010
          Attention:  Secretary
          Facsimile number:    407-362-1635
          Confirmation number: 407-362-1645

If to DTI:

          Del Taco, Inc.
          345 Baker Street
          Costa Mesa, CA  92626
          Attention:  President
          Facsimile number:    (714) 641-3612
          Confirmation number: (714) 641-3601

          with a copy to:

          General Electric Capital Corporation
          292 Long Ridge Road
          Stamford, CT 06927-5150
          Attention:  William Cary
          Facsimile number:    (203) 357-4025
          Confirmation number: (203) 357-3100

Either party hereto may by notice change the address to which
notice or other communications to it are to be delivered or mailed.

          (f)   Governing Law: Consent to Jurisdiction: Waiver of
Jury Trial.

          (i)  THIS  AGREEMENT  AND  THE  OTHER  DTI  TRANSACTION
DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE
LAWS OF THE STATE OF NEW YORK, EXCEPT FOR ANY PRINCIPLES OF
CONFLICT OF LAWS THAT WOULD OTHRWISE REQUIRE THE APPLICATION OF THE
LAWS OF A JURISDICTION OTHER THAN NEW YORK.

          (ii) Any action, suit or other proceeding initiated by
either party against the other under or in connection with this
Agreement or any of the other DTI Transaction Documents may be
brought in any federal or state court in New York County, State of
New York, as the party bringing such action, suit or proceeding
shall elect.  Each party hereby submits itself and consents to the
non-exclusive personal jurisdiction of any such court, waives any
defense it may have based on lack of personal jurisdiction and
agrees that service of process on it in any such action, suit or

deldti.agt

13

proceeding may be effected by the means by which notices are to be given to it under this Agreement.

(iii) BY ITS EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY HEREBY WAIVES ANY RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED UPON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH, THIS AGREEMENT OR ANY OF THE OTHER DTI TRANSACTION DOCUMENTS, ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, OR VERBAL OR WRITTEN STATEMENT, OF ANY OF THE PARTIES.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR CFF TO ENTER INTO THIS AGREEMENT.

(g)  .Assignability.    This Agreement shall not be assignable otherwise than by operation of law by either party without the prior written consent of the other party, and any purported assignment by any party without the prior written consent of the other party shall be void.

(h)  Remedies.  The parties hereto acknowledge that the remedy at law for any breach of the obligations undertaken by the parties hereto is and will be insufficient and inadequate and that the parties hereto shall be entitled to equitable relief, in addition to remedies at law.

(i)  Waivers and Amendments.  Any waiver of any term or condition, or any amendment or supplementation, of this Agreement shall be effective only if in writing.  A waiver of any breach of any of the terms or conditions of this Agreement shall not in any way be construed as a waiver of any subsequent breach.

(j)  Third Party Rights.  Except as otherwise provided in Section 8, this Agreement shall be effective only as between the parties hereto, their successors and permitted assigns.

(k)  Affiliates.    Reference in this Agreement to an "affiliate" of a specified person or entity means any other person or entity directly or indirectly controlling, controlled by or under common control with such specified person or entity.

deldti.agt

14

(1)  <u>Continued  Effectiveness  of  Conveyance  Agreement</u>.
Except as modified hereby, the Conveyance Agreement shall remain in
full force and effect.

IN  WITNESS  WHEREOF,  the  undersigned  have  executed  this
Agreement as of the date first above written.

CREATIVE FOOD 'N FUN COMPANY

By: _____

Bernd A. Schulte
President

DEL TACO, INC.

By: _____

Kevin K. Moriarty
President

deldti.agt

14

(1) <u>Continued Effectiveness of Conveyance Agreement</u>. Except as modified hereby, the Conveyance Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

CREATIVE FOOD 'N FUN COMPANY

By:_____
    Bernd A. Schulte
    President

DEL TACO, INC.

By:_____
    Kevin K. Moriarty
    President

deldti.agt

## GUARANTY

W.R. GRACE & CO.-CONN., a Connecticut corporation ("Parent"), is the indirect owner of all the issued and outstanding capital stock of Creative Food 'N Fun Company, a Delaware corporation ("CFF"). In order to induce Del Taco, Inc., a California corporation ("DTI"), to sign the foregoing Modification and Purchase Agreement (the "Modification Agreement") and intending DTI to rely thereon, Parent hereby guarantees the full, complete and punctual performance by CFF of each and every one of its obligations set forth in the Modification Agreement to all intents and purposes as though such obligations were those of Parent and not of CFF. Parent acknowledges and agrees that in the event of a default by CFF of the Modification Agreement, DTI shall have the right to proceed immediately against Parent and shall not be obligated to first exhaust any rights or remedies it may otherwise ahve against CFF. No waiver, amendment or revision with respect to the Modification Agreement shall abrogate, limit, release or have any effect upon the guaranty of Parent set forth herein.

This Guaranty shall be governed by, construed and enforced in accordance with the internal laws of the State of California.

Dated: June 7, 1992

W.R. GRACE & CO.-CONN.
a Connecticut corporation

By: _____
J. P. Bolduc
President

**EXHIBIT A TO MODIFICATION AND PURCHASE AGREEMENT
CFF DEVELOPMENT AND FRANCHISE AGREEMENTS**

deldti.exa

Del Taco Restaurants, Inc.
Franchise Document Information

| Franchisee/Principal Contact(s) | Document | Date |
|---|---|---|
| Abbiti Corporation<br>Lawrence L./Betty Ann Abbiti | Development Agreement | 05/23/85 |
| | Franchise Agreement - #6039<br>919 Joe Frank Harris Pkwy.<br>Cartersville, GA 30120 | 04/14/86 |
| | Amendment #2 | 11/01/89 |
| | Amendment #3 | 10/01/91 |
| | Letter Agreement | 10/01/80 |
| | Letter Agreement | 01/01/91 |
| | Franchise Agreement - #6057<br>1285 Highway 278<br>Dallas, GA 30132 | 05/06/87 |
| | Amendment #2 | 11/01/89 |
| | Amendment #3 | 10/01/91 |
| | Letter Agreement | 10/01/88 |
| | Letter Agreement | 01/01/91 |
| | Franchise Agreement - #6066<br>1507 Turner-McCall Blvd.<br>Rome, GA 30316 | 01/01/88 |
| | Amendment #2 | 11/01/89 |
| | Amendment #3 | 10/01/91 |
| | Letter Agreement | 10/01/88 |
| | Letter Agreement | 01/01/91 |

Franchisee/Principal Contact(s)

Accomplishments Through
People, Inc.
Frederick J. Axelbord

| Document | Date |
|---|---|
| Development Agreement - #6025 | 11/08/85 |
| Franchise Agreement - #6025<br>Peachtree Mall - Space 4<br>Columbus, GA  31909 | 11/08/85 |
| Amendment #3<br>Letter Agreement<br>Letter Agreement | 10/01/91<br>04/01/89<br>10/01/88 |
| Development Agreement - #6030 | 02/07/86 |
| Franchise Agreement - #6030<br>1460 Opelka Road<br>Auburn, AL  36830 | 02/07/86 |
| Amendment #3<br>Letter Agreement | 10/01/91<br>10/01/88 |
| Development Agreement - #6031 | 04/30/86 |
| Franchise Agreement - #6031<br>733 E. Forsythe Street<br>Americus, GA  31709 | 04/30/86 |
| Amendment #3<br>Letter Agreement | 10/01/91<br>10/01/88 |
| Development Agreement - #6032 | 04/30/86 |
| Franchise Agreement - #6032<br>1029 - 280 Bypass<br>Phenix City, AL  36867 | 04/30/86 |
| Amendment #3<br>Letter Agreement | 10/01/91<br>10/01/88 |

Del To:   ...siana, Inc.
Fron      ...cument Information

| Franchisee/Principal Contact(s) | Document | Date |
|---|---|---|
| Accomplishments Through People, Inc. (cont.) | Development Agreement - #0041 | 02/07/06 |
| | Franchise Agreement - #0041<br>6490 Hamilton Road<br>Columbus, Georgia 31909 | 02/07/80 |
| | Amendment #3<br>Letter Agreement<br>Letter Agreement | 10/01/91<br>04/01/89<br>10/01/88 |
| | Development Agreement - #6069 | 02/07/86 |
| | Franchise Agreement - #6069<br>3527 Macon Road<br>Columbus, GA 31909 | 03/04/88 |
| | Amendment #3<br>Letter Agreement | 10/01/91<br>10/01/88 |
| Aliza Corporation, Inc.<br>Heider Sultan | Development Agreement | Original not in file. |
| | Franchise Agreement - #6096<br>1312 Cumberland Mall<br>Atlanta, GA 30345 | 05/29/87 |
| | Amendment #1<br>Amendment #3<br>Letter Agreement<br>Letter Agreement to Transfer to Aliza Corporation from Teco Associates Limited Partnership.<br>Letter Agreement to Transfer to Teco Associates Limited Partnership from TL/C, Inc. | 05/29/87<br>10/01/91<br>10/01/88<br>10/01/90<br>04/20/89 |

| Franchisee/Principal Contact(s) | Document | Date |
|---|---|---|
| DJH, Inc.<br>William R./Jackie Horman | Development Agreement | 11/23/87 |
| | Amendment #1 | 04/08/88 |
| | Franchise Agreement - #6074<br>388 West 2230 North<br>Provo, UT 84603 | 04/08/88 |
| | Amendment #3 | 10/01/91 |
| | Letter Agreement | 01/01/91 |
| | Letter Agreement | 10/01/88 |
| Del South Restaurants, Inc.<br>Clinton M. Day | Development Agreement | 09/30/86 |
| | Franchise Agreement - #6076 | Original not on file. |
| | Amendment | 12/16/88 |
| | Amendment #3 | 11/01/80 |
| | Amendment #4 | 10/01/91 |
| | Letter Agreement | 01/01/91 |
| F.W.P., Inc.<br>Frederick W. Pierson | Development Agreement | 01/16/86 |
| | Franchise Agreement - #6034<br>208 W. 23rd Street<br>Panama City, FL  32405 | 01/16/86 |
| | Amendment #3 | 10/01/91 |
| | Letter Agreement | 07/01/89 |
| | Letter Agreement | 01/01/89 |
| | Letter Agreement | 10/01/88 |

Jim Bonds Enterprises
James A. Bonds

Development Agreement — 11/17/86

Franchise Agreement - #6040 — 11/20/86
2209 Demere Road
St. Simons Island, GA  31522

Amendment #3 — 11/01/89
Amendment #4 — 10/01/91
Letter Agreement — 01/01/91
Letter Agreement — 10/01/88

Franchise Agreement - #6060 — 06/08/87
100 Mall Blvd, Unit D-15
Brunswick, GA  31520

Amendment #3 — 11/01/88
Amendment #4 — 10/01/91
Letter Agreement — 01/01/91
Letter Agreement — 10/01/88

Franchise Agreement - #6083 — 12/01/89
4400 Altama Avenue
Brunswick, GA  31520

Amendment #3 — 10/01/91
Letter Agreement — 01/01/91

Mel-Dex Associates
Murray Rieso

Master Development Agreement — 07/20/84

Franchise Agreement - #7003 — 10/10/86
677 Lexington Avenue
New York, NY  10001

Amendment #3 — 10/01/91

Franchise Agreement - #7005 — Original not on file.
401 7th Avenue
New York, NY  10001

Patel Enterprises, Inc.
Challo Patel

| | | |
|---|---|---|
| Development Agreement | 09/30/86 | |
| Amendment #2 | 11/01/89 | |
| Franchise Agreement - #6005 | 09/30/86 | |
| 2100 Pleasant Hill Road, R-5 | | |
| Duluth, GA 30136 | | |
| Amendment #3 | 11/01/89 | |
| Amendment #4 | 10/01/91 | |
| Letter Agreement | 10/01/88 | |
| Letter Agreement to Transfer to Patel Enterprises, Inc. | 04/24/92 | |
| from Moradi Brothers II., Inc. | | |
| Letter Agreement to Transfer to Moradi Brothers II., | 04/25/90 | |
| Inc. from Del South Restaurants, Inc. | | |

Nobell Food Company, Inc.
Mark W. Blanchard
Maurice A. Roberts

| | | |
|---|---|---|
| Development Agreement | 09/25/89 | |
| Franchise Agreement - #6085 | 11/02/90 | |
| Route 12A/1-89 K-Mart Plaza | | |
| West Lebanon, NH 03784 | | |
| Amendment #3 | 10/01/91 | |
| Letter Agreement | 01/01/91 | |

Phoenix Concepts Corporation
James M. Lappe

| | | |
|---|---|---|
| Development Agreement | 05/09/85 | |
| Amendment #1 | 11/01/89 | *(05/29/86) |
| Amendment #2 | 11/30/87 | |
| Amendment #3 | 11/01/89 | *(05/05/85) |
| Letter Agreement | 11/30/87 | |

*Amendment reflects different
Development Agreement date.

| Franchisee/Principal Contact(s) | Document | Date |
|---|---|---|
| Phoenix Concepts Corporation (cont.) | | |
| | **Franchise Agreement - #6022**<br>1055 Patton Avenue<br>**Asheville, NC 28000** | 09/20/85 |
| | Amendment #2<br>Amendment #3<br>Letter Agreement - Consent to Assignment of Development Agreement by Franchisor.<br>Letter Agreement - Proposed Transfer by Augusta Road DT, Inc., D.T. Hickory, Inc. and D.T. Patton, Inc. | 11/01/89<br>10/01/91<br>10/01/08<br>10/30/86<br>11/20/87 |
| | **Franchise Agreement - #6023**<br>1845 Highway 65-70 S.E.<br>**Hickory, NC 28602** | 08/04/85 |
| | Amendment #2<br>Amendment #3<br>Letter Agreement<br>Letter Agreement - Consent to Assignment of Development Agreement by Franchisor<br>Letter Agreement - Proposed Transfer by Augusta Road D.T., Inc., D.T. Hickory, Inc. and D.T. Patton, Inc. | 11/01/89<br>10/01/91<br>10/01/88<br>10/30/88<br>11/20/87 |
| | **Franchise Agreement - #6059**<br>700 Haywood Road<br>**Greenville, SC 29648** | 09/21/87 |
| | Amendment #3<br>Amendment #3<br>Letter Agreement<br>Letter Agreement | 11/01/89<br>10/01/91<br>04/01/89<br>10/01/88 |
| | **Franchise Agreement - #6065**<br>217 Highway 272 Bypass<br>**Greenwood, SC 29648** | 11/20/87 |
| | Amendment #2<br>Amendment #3<br>Letter Agreement | 11/01/89<br>10/01/91<br>10/01/00 |

Franchisee/Principal Contact(s)

Southern Foods, Inc.
D. Frank Owens

| Document | Date |
|---|---|
| Development Agreement | 08/20/88 |
| Amendment #1 | 11/01/89 |
| Franchise Agreement - #6084 | 07/25/90 |
| 5117 Ashley Phosphate Road | |
| N. Charleston, SC 29410 | |
| Amendment | 11/16/88 |
| Amendment #3 | 10/01/91 |

Restaurants, Inc.

**EXHIBIT C TO MODIFICATION AND PURCHASE AGREEMENT**
**STANDARDS FOR DTI FRANCHISE TERMS**

1. The former CFF franchisees shall not incur any charge for entering into a franchise agreement with DTI.

2. DTI will provide financial support to the former CFF franchisees, in the form of royalty rebates of up to $12,500 per unit, in order to assist such franchisees in the physical conversion to the DTI concept.

**deldti.exc**

**EXHIBIT D TO MODIFICATION AND PURCHASE AGREEMENT**
**INTELLECTUAL PROPERTY ADMINISTRATION**

References in this Exhibit to "this Agreement" refer to the Modification and Purchase Agreement to which this Exhibit is attached and of which this Exhibit, together with the other Exhibits and Schedules attached thereto, is an integral part. Capitalized terms used but not defined in this Exhibit are used with the definitions given them in this Agreement.

PARAGRAPH I. Quality Control.

DTI covenants and agrees as follows:

(A) DTI will maintain the essential nature of the units operated under the rights licensed to it under Article 4 (the "Article 4 Rights") as fast food outlets serving Mexican-style food, along with American-style foods, and beverages.

(B) DTI will conduct all operations, and maintain all products served, in connection with the Article 4 Rights, at standards which, at the minimum, meet all the quality maintenance standards incorporated in the "OPERATIONS MANUAL" referred to in Section 3.2 of the Service Mark License Agreement. DTI covenants to maintain its operations and the products it serves at level of quality equal or superior to those of its units currently in existence; to maintain the standards and diligence of inspection of its units currently in existence; to maintain all operations and products in compliance with applicable federal, state and local law; and otherwise to conduct its operations and sell its products in a manner consistent with the maintenance of the presently existing goodwill symbolized by the Article 4 Rights.

(C) DTI will make no use of the Article 4 Rights without the prior written consent of CFF, except in substantial conformance with the uses made of the Tradename on the date of this Agreement.

(D) DTI will not develop or acquire any rights of any kind in the Article 4 Rights other than the rights it acquires under the provisions of this Agreement and the Service Mark License Agreement.

(E) DTI will cooperate with CFF in CFF's quality control activities. Upon reasonable notice, DTI will provide CFF with an opportunity to inspect, at reasonable times and frequencies, all premises, personnel, products and records related to operations under the Article 4 Rights, and to provide CFF at DTI's expense with such information and sample materials as CFF may request in connection with its maintenance of quality under this Paragraph I.

deldti.exd

(F) The quality control provisions of this Paragraph I shall not be interpreted to prevent DTI from making changes in its business that do not result in a breach of the quality control standards provided herein, or to confer upon CFF any power to direct DTI in the operation of its business or require any changes in DTI's operations or products, other than to maintain the quality standards provided herein.

PARAGRAPH II. Administration.

(A) DTI shall notify CFF of all applications and other actions that it proposes to file or take with respect to any trademark or service mark (each a "Mark"). CFF shall have the sole right to file such application or take such other action with respect to any Mark which is related or similar to any of the intellectual property licensed to DTI under Article 4, and the decision to undertake such application or other action shall be made in CFF's sole discretion. Any Marks registered by CFF under this subparagraph (A) ("Additional Marks") shall be deemed covered by the Article 4 Rights, and such Additional Marks together with the good will symbolized thereby shall be deemed part of the Del Taco Rights for purposes of Section 4 of this Agreement.

(B) In its own discretion or at DTI's request, CFF will renew or undertake additional state registrations in the Domestic Territory for the Marks licensed to DTI under Article 4 and any Additional Marks.

(C) DTI shall prepare the applications to be filed at its request under this Paragraph II and deliver them to CFF for review and filing after any modification.

(D) At CFF's discretion, the parties may appoint a joint agent to undertake all or part of the administration of the Article 4 Marks and the Additional Marks. Such agent shall keep the parties informed of all material events or developments related to such administration. Any such agent may be removed or replaced at the request of CFF after consultation with DTI.

(E) If any claims are made or legal action is threatened or commenced by a third party against CFF or DTI on the ground that any product or service of DTI sold or performed under the Article 4 Rights infringes any intellectual property right of such third party, the party so claimed against, threatened or sued shall inform the other party, and the parties shall confer respecting the appropriate course of action. Defense of such legal action shall be undertaken at the request of either party. The costs of any such defense, and the costs of any settlement or any award by a court or arbitrator, shall be paid by DTI. To the extent practicable, such defense and any settlement negotiations shall be

deldti.exd

3

conducted by CFF.  CFF shall consult with DTI regarding the conduct of the defense and any settlement negotiations, and DTI shall render such assistance in such defense or settlement negotiations as shall reasonably be requested by CFF. No settlement shall be effected without the consent of DTI, which consent shall not be unreasonably withheld.

(F)  Each party shall promptly notify the other if it becomes aware of any infringement or alleged infringement of the intellectual property licensed under Article 4, whereupon the parties shall consult together regarding an appropriate course of action.   Neither party shall be required to undertake or participate in any claim or legal action with respect to any such infringement or alleged infringement. If either party does pursue such claim or action, it shall not settle such claim or action without the consent of the other party.

(G)  In its performance of administrative actions with respect to the Article 4 Rights and the Related Rights, CFF shall have no liability to DTI except with respect to CFF's willful misconduct.

(H)  DTI shall pay or reimburse against appropriate documentation all CFF's reasonable out-of-pocket expenses arising from or out of CFF's registration, renewal, protection and administration of the intellectual property licensed under Article 4 and the performance of CFF's obligations under this Paragraph II.

PARAGRAPH III. Assignment.

During the term of the provisions of this Exhibit, DTI may not sell, assign, transfer, license, sublicense, lease or franchise any of the Article 4 Rights to any person or other entity.

PARAGRAPH IV. Termination.

The provisions of this Exhibit shall expire upon the first to occur of the following: (i) sale of the Del Taco Rights to DTI pursuant to Section 4 of this Agreement, (ii) expiration of the last to expire of the registrations of Marks licensed under Article 4, or (iii) termination of DTI's rights under Article 4.

deldti.exd

**EXHIBIT E TO MODIFICATION AND PURCHASE AGREEMENT**
**TRADEMARKS AND TRADEMARK APPLICATIONS**

deldti.exe

### U. S. MARKS

#### REGISTRATIONS

| Mark | Reg. No. |
|------|----------|
| BIGGER BITE MENU | 1,644,012 |
| COMBO CUP | 1,231,240 |
| DEL MEAT BURRITO | 1,232,360 |
| DEL TACO | 1,231,138 |
| DEL TACO | 1,231,168 |
| DEL TACO | 1,221,321 |
| DEL TACO & DESIGN | 1,035,949 |
| DEL TACO EXPRESS | 1,458,796 |
| DEL TACO MEXICAN CAFE | 1,392,800 |
| DOUBLE DEL | 1,219,339 |
| HOT IDEA | 1,546,671 |
| HOT IDEA & DESIGN | 1,552,209 |

#### APPLICATIONS

| Mark | Ser. No. |
|------|----------|
| DEL TACO & DESIGN | 74/093227 |
| DEL TACO & DESIGN | 74/227652 |
| DEL TACO & DESIGN | 74/226466 |
| DEL TACO & DESIGN | 74/93227 |
| MEXI-MUNCHIES | 74/045558 |

## STATE REGISTRATIONS

| Mark | State | Reg. No. |
|------|-------|----------|
| DEL TACO | Alabama | 100339 |
| DEL TACO | Florida | 924607 |
| DEL TACO | Georgia | S-4020 |
| DEL TACO | Maryland | 87-S2079 |
| DEL TACO | Nevada | - - - |
| DEL TACO | North Carolina | - - - |
| DEL TACO | Oklahoma | 19789 |
| DEL TACO | South Carolina | - - - |
| DEL TACO | Tennessee | Record Book No. 87 Page 83 |
| DEL TACO | Texas | 36373 |
| DEL TACO | Utah | 28861 |
| DEL TACO & DESIGN | Arkansas | 156-80 |
| DEL TACO & DESIGN | Florida | 922905 |
| DEL TACO & DESIGN | Georgia | S-1128 |
| DEL TACO & DESIGN | South Carolina | 566 |
| DEL TACO & DESIGN | Texas | 36374 |
| DEL TACO MEXICAN CAFE | Alabama | 102182 |
| DEL TACO MEXICAN CAFE | Arkansas | 230-85 |
| DEL TACO MEXICAN CAFE | Florida | T01500 |
| DEL TACO MEXICAN CAFE | Georgia | S-5198 |
| DEL TACO MEXICAN CAFE | New York | S-8435 |
| DEL TACO MEXICAN CAFE | North Carolina | - - - |
| DEL TACO MEXICAN CAFE | South Carolina | 1930 |

| Mark | State | Reg. No. |
|------|-------|----------|
| DEL TACO MEXICAN CAFE | Tennessee | - .- - |
| DEL TACO MEXICAN CAFE | Texas | 43806 |
| SUNBURST DESIGN | Georgia | S-4019 |
| SUNBURST DESIGN | Texas | 36403 |

**EXHIBIT F TO MODIFICATION AND PURCHASE AGREEMENT**

**ASSIGNMENT AND ASSUMPTION AGREEMENT**

ASSIGNMENT AND ASSUMPTION AGREEMENT dated as of _____, between CREATIVE FOOD 'N FUN COMPANY, a Delaware corporation ("Transferor"), and DEL TACO, INC., a California corporation ("Transferee").

**WITNESSETH:**

WHEREAS, this Agreement is being delivered pursuant to Section 4(d) of the Modification and Purchase Agreement dated June __, 1992, between Transferor and Transferor;

WHEREAS, Transferor is the franchisor under the franchise agreements listed on **Schedule 1** attached hereto (the "Franchise Agreements");

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. (a) Transferor hereby sells, assigns and sets over unto Transferee, all of Transferor's right, title and interest in and to the Franchise Agreements with respect to the period prior to the date hereof.

(b) Transferee hereby assumes, and agrees to perform and otherwise satisfy, all of the obligations, covenants and agreement of Transferor under the Franchise Agreements with respect to the period from and after the date hereof.

2. Upon the request of either party, the other party shall execute and deliver, or cause to be executed and delivered, all such deeds, assignments, consents and other documents, and take or cause to be taken, all such other actions as the requesting party reasonably deems necessary or desirable in order to complete, confirm, perfect or evidence the transactions contemplated by this Agreement.

deldti.exf

2

IN WITNESS WHEREOF, the parties have executed this Assignment and Assumption Agreement on the date first written above.

CREATIVE FOOD 'N FUN COMPANY

By: _____
    Name:
    Title:

DEL TACO, INC.

By: _____
    Name:
    Title:

deldti.exf

**4**

## GUARANTEE

The undersigned, W. R. GRACE & CO., a Connecticut corporation ("Parent") is the owner of eighty percent (80%) of the issued and outstanding common stock of DTG INC. ("Company"). In order to induce Del Taco, Inc. ("DTI") to sign the foregoing Agreement and intending DTI to rely thereon, Parent, for the benefit of DTI, its successors and assigns, hereby guarantees the full, complete and punctual performance by Company of each and every one of its obligations set forth in the foregoing Conveyance Agreement to all intents and purposes as though such obligations were those of Parent and not of Company. Parent acknowledges and agrees that in the event of a default by Company of the Conveyance Agreement, DTI, shall have the right to immediately proceed against Parent and shall not be obligated to first exhaust any rights or remedies it may otherwise have against Company. It is the intention of DTI and Parent that this Agreement shall constitute the unequivocal and unconditional guarantee by Parent of each and every obligation of Company set forth in this Conveyance Agreement. No waiver, amendment or revision with respect to the Conveyance Agreement shall abrogate, limit, release or have any effect upon the Guarantee of Parent set forth herein.

This Guarantee shall be governed by, construed and enforced in accordance with the internal laws of the State of California.

DATED:    September 16            , 1977.

                W. R. GRACE & CO.      )

                a Connecticut corporation


                By  Anna S. Soliman
                Its  Vice President


                        "Parent"

EXHIBIT        4

5



**Del Taco**

April 27, 1979

Del Taco Corporation
1100 Spring Street N. W.
Suite 750
Atlanta, Georgia  30309
Attention:  William C. Baker, President

Re:  Conveyance Agreement

Gentlemen:

This will advise you that effective April 27, 1979, all sums
payable by Del Taco Corporation, formerly DTG, Inc. ("DTC"),
to Del Taco, Inc. ("DTI") pursuant to Sections 3.01, 3.04
(except DTI's right to be paid $1,000,000 in the event DTC
exercises the Option pursuant to Section 2.05) and 3.05 of
that certain Conveyance Agreement dated September 16, 1977,
by and between DTC and DTI ("Conveyance Agreement"), must be
paid pro rata directly to the Shareholders of DTI.  The
names and addresses of the Shareholders to whom such payments
should be made are:

William C. Baker
Route 3
P.O. Box 300
Madison, GA  30650

Kendall C. Simpson
4500 Orrington Road
Corona del Mar, CA  92625

Eber E. Jaques
2707 Hillside Drive
Newport Beach, CA  92660

Montgomery Ross Fisher
2126 Cotner Avenue
Los Angeles, CA  90025

Bradford H. Miller
One Brookhollow Drive
Santa Ana, CA  92705

**EXHIBIT**

5

Del Taco Corporation
Attention: William C. Baker, President
April 27, 1979
Page Two

In addition, effective April 27, 1979, DTI has transferred
to the Shareholders listed above all of DTI's rights under
Article 4 of the Conveyance Agreement.

Very truly yours,

Wayne W. Armstrong
Executive Vice President
DEL TACO, INC.

WWA:jvg
cc:   William C. Baker
      Kendall C. Simpson
      Eber E. Jaques
      Montgomery Ross Fisher
      Bradford H. Miller

6

## AGREEMENT

THIS AGREEMENT is entered into this __5th__ day of May, 1978, between DEL TACO, INC., a California corporation ("Seller") and _____WILLIAM C. BAKER_____ ("Buyer").

### R E C I T A L S

A.  On September 16, 1977, Seller entered into a Conveyance Agreement with DTG, INC., a Delaware corporation, the name of which has been changed to Del Taco Corporation ("DTC"). A copy of the Conveyance Agreement, without the exhibits thereto, is attached hereto as Exhibit "A".

B.  Pursuant to the Conveyance Agreement, DTC is obliged to pay to Seller the fee set forth in Section 3.01 of the Conveyance Agreement ("Domestic Fee") and the fee set forth in Section 3.04 of the Conveyance Agreement, exclusive of the One Million Dollar ($1,000,000.00) payment described therein ("Foreign Fee").

C.  Seller desires to sell, and Buyer desires to purchase, a partial interest in one-fifth (1/5) of the Domestic Fee and one-fifth (1/5) of the Foreign Fee on the terms and conditions set forth herein.

D.  Concurrently herewith, the remaining partial interest in four-fifths (4/5) of the Domestic Fee and the Foreign Fee are being offered for purchase to other persons.

### AGREEMENT

NOW, THEREFORE, the parties hereto agree as follows:

1.  Sale of Fee; Payment of Purchase Price. Subject to the limitation set forth in paragraph 2 hereof, Seller hereby sells,

DTBK01492

assigns and conveys an undivided one-fifth (1/5) interest in both
the Domestic Fee and Foreign Fee (collectively "Fees") to Buyer and
Buyer hereby accepts an undivided one-fifth (1/5) interest in the Fees
from Seller. The purchase price for the undivided one-fifth (1/5)
interest in the Fees is $20,000.00, cash, and is paid concurrently here-
with. Seller acknowledges receipt of the purchase price.

2. **Reservation to Seller.** Seller hereby reserves the right
to receive, with respect to this Agreement and all similar agreements, the
first $300,000.00 of Fees payable pursuant to the Conveyance Agreement
which are paid during any calendar year. For example, if in calendar
year A, the total Fees paid to the Company are $250,000.00, Buyer will
be entitled to no payments. If in calendar year B, the total Fees paid
to the Company are $350,000.00, Buyer shall be entitled to receive one-
fifth of $50,000.00 ($350,000.00 - 300,000.00) or $10,000.00.

3. **Representations and Warranties of Buyer.** Buyer represents
and warrants that he is fully aware that the Fees consist of mere
expectancies of future income from DTC; that there is no assurance
that the purchase price will ever be recovered by the Fees; that DTC
has no legally enforceable obligation under the Conveyance Agreement
to take any action which would result in the Fees becoming payable
thereunder; that he has made such investigations of Seller, DTC and
the Conveyance Agreement that he deems necessary and appropriate to
the determination of the purchase price for the Fees prior to the
execution of this Agreement; and that no officer, director or agent
of Seller or DTC has made any representation or warranty in connection
with the execution of this Agreement.

4. **Integration.** This Agreement contains the entire agree-
ment between the parties relating to the subject matter hereof and
supersedes all prior oral and written agreements, understandings,
commitments and practices between the parties relating to the subject
matter hereof, whether or not fully performed before the date of this
Agreement. No amendments to this Agreement may be made except by a
writing signed by both parties.

- 2 -                    DTBK01493

5. <u>Notices</u>. Any notice or demand required or permitted to be given hereunder shall be in writing and shall be deemed effective upon the personal delivery thereof if delivered or, if mailed, twenty-four (24) hours after having been deposited in the United States mail, postage prepaid, and addressed in the case of Seller to 345 Baker Street, Costa Mesa, California, 92626, and in the case of Buyer to _____2242 Mesa Drive, Newport Beach, California 92660_____. Either party may change the address to which such notices are to be addressed by giving the other party notice in the manner set forth.

6. <u>Paragraph Headings</u>. The paragraph headings used in this Agreement are for convenience only and shall not be considered in the interpretation hereof.

7. <u>Controlling Law; Severability</u>. To the full extent controllable by stipulation of the parties, this Agreement shall be interpreted and enforced under California law. If any provision hereof is determined to be unenforceable by a court of competent jurisdiction, the remaining provisions shall nevertheless be given full force and effect.

8. <u>Successors</u>. This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their heirs, representatives, successors and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement at _Newport Beach, Ca._ as of the date first above written.

SELLER:

DEL TACO, INC.,
a California corporation

By _____
       President

By _____
       Secretary

BUYER:

_____
WILLIAM C. BAKER

DTBK01494

- 3 -

## AGREEMENT

THIS AGREEMENT is entered into this __5th__ day of May,
1978, between DEL TACO, INC., a California corporation ("Seller")
and _____EBER E. JAQUES_____ ("Buyer").

## R E C I T A L S

A.   On September 16, 1977, Seller entered into a Convey-
ance Agreement with DTG, INC., a Delaware corporation, the name of
which has been changed to Del Taco Corporation ("DTC").  A copy of
the Conveyance Agreement, without the exhibits thereto, is
attached hereto as Exhibit "A".

B.   Pursuant to the Conveyance Agreement, DTC is obliged
to pay to Seller the fee set forth in Section 3.01 of the Convey-
ance Agreement ("Domestic Fee") and the fee set forth in Section
3.04 of the Conveyance Agreement, exclusive of the One Million
Dollar ($1,000,000.00) payment described therein ("Foreign Fee").

C.   Seller desires to sell, and Buyer desires to purchase,
a partial interest in one-fifth (1/5) of the Domestic Fee and one-
fifth (1/5) of the Foreign Fee on the terms and conditions set
forth herein.

D.   Concurrently herewith, the remaining partial interest
in four-fifths (4/5) of the Domestic Fee and the Foreign Fee are
being offered for purchase to other persons.

## AGREEMENT

NOW, THEREFORE, the parties hereto agree as follows:

1.   Sale of Fee; Payment of Purchase Price.  Subject to the
limitation set forth in paragraph 2 hereof, Seller hereby sells,

DTBK01483

assigns and conveys an undivided one-fifth (1/5) interest in both
the Domestic Fee and Foreign Fee (collectively "Fees") to Buyer and
Buyer hereby accepts an undivided one-fifth (1/5) interest in the Fees
from Seller. The purchase price for the undivided one-fifth (1/5)
interest in the Fees is $20,000.00, cash, and is paid concurrently here-
with. Seller acknowledges receipt of the purchase price.

2. <u>Reservation to Seller</u>. Seller hereby reserves the right
to receive, with respect to this Agreement and all similar agreements, the
first $300,000.00 of Fees payable pursuant to the Conveyance Agreement
which are paid during any calendar year. For example, if in calendar
year A, the total Fees paid to the Company are $250,000.00, Buyer will
be entitled to no payments. If in calendar year B, the total Fees paid
to the Company are $350,000.00, Buyer shall be entitled to receive one-
fifth of $50,000.00 ($350,000.00 - 300,000.00) or $10,000.00.

3. <u>Representations and Warranties of Buyer</u>. Buyer represents
and warrants that he is fully aware that the Fees consist of mere
expectancies of future income from DTC; that there is no assurance
that the purchase price will ever be recovered by the Fees; that DTC
has no legally enforceable obligation under the Conveyance Agreement
to take any action which would result in the Fees becoming payable
thereunder; that he has made such investigations of Seller, DTC and
the Conveyance Agreement that he deems necessary and appropriate to
the determination of the purchase price for the Fees prior to the
execution of this Agreement; and that no officer, director or agent
of Seller or DTC has made any representation or warranty in connection
with the execution of this Agreement.

4. <u>Integration</u>. This Agreement contains the entire agree-
ment between the parties relating to the subject matter hereof and
supersedes all prior oral and written agreements, understandings,
commitments and practices between the parties relating to the subject
matter hereof, whether or not fully performed before the date of this
Agreement. No amendments to this Agreement may be made except by a
writing signed by both parties.

DTBK01484

- 2 -

5.  Notices.  Any notice or demand required or permitted to
be given hereunder shall be in writing and shall be deemed effective
upon the personal delivery thereof if delivered or, if mailed, twenty-
four (24) hours after having been deposited in the United States mail,
postage prepaid, and addressed in the case of Seller to 345 Baker
Street, Costa Mesa, California,  92626, and in the case of Buyer to
   1008 West Cliff Drive, Newport Beach, California 92660  Either party
may change the address to which such notices are to be addressed by
giving the other party notice in the manner set forth.

6.  Paragraph Headings.  The paragraph headings used in this
Agreement are for convenience only and shall not be considered in the
interpretation hereof.

7.  Controlling Law; Severability.  To the full extent
controllable by stipulation of the parties, this Agreement shall be
interpreted and enforced under California law.  If any provision hereof
is determined to be unenforceable by a court of competent jurisdiction,
the remaining provisions shall nevertheless be given full force and
effect.

8.  Successors.  This Agreement shall be binding upon, and
inure to the benefit of, the parties hereto and their heirs, representa-
tives, successors and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this
Agreement at _Newport Beach, Ca_ as of the date first above written.

SELLER:

DEL TACO, INC.,
a California corporation

By _____

By _____

BUYER:

_____
EBER E. JAQUES
- 3 -

DTBK01485

## AGREEMENT

· THIS AGREEMENT is entered into this __5th__ day of May, 1978, between DEL TACO, INC., a California corporation ("Seller") and ___MONTGOMERY ROSS FISHER___ ("Buyer").

### R E C I T A L S

A. On September 16, 1977, Seller entered into a Conveyance Agreement with DTG, INC., a Delaware corporation, the name of which has been changed to Del Taco Corporation ("DTC"). A copy of the Conveyance Agreement, without the exhibits thereto, is attached hereto as Exhibit "A".

B. Pursuant to the Conveyance Agreement, DTC is obliged to pay to Seller the fee set forth in Section 3.01 of the Conveyance Agreement ("Domestic Fee") and the fee set forth in Section 3.04 of the Conveyance Agreement, exclusive of the One Million Dollar ($1,000,000.00) payment described therein ("Foreign Fee").

C. Seller desires to sell, and Buyer desires to purchase, a partial interest in one-fifth (1/5) of the Domestic Fee and one-fifth (1/5) of the Foreign Fee on the terms and conditions set forth herein.

D. Concurrently herewith, the remaining partial interest in four-fifths (4/5) of the Domestic Fee and the Foreign Fee are being offered for purchase to other persons.

### AGREEMENT

NOW, THEREFORE, the parties hereto agree as follows:

1. __Sale of Fee; Payment of Purchase Price.__ Subject to the limitation set forth in paragraph 2 hereof, Seller hereby sells,

assigns and conveys an undivided one-fifth (1/5) interest in both the Domestic Fee and Foreign Fee (collectively "Fees") to Buyer and Buyer hereby accepts an undivided one-fifth (1/5) interest in the Fees from Seller. The purchase price for the undivided one-fifth (1/5) interest in the Fees is $20,000.00, cash, and is paid concurrently herewith. Seller acknowledges receipt of the purchase price.

2. Reservation to Seller. Seller hereby reserves the right to receive, with respect to this Agreement and all similar agreements, the first $300,000.00 of Fees payable pursuant to the Conveyance Agreement which are paid during any calendar year. For example, if in calendar year A, the total Fees paid to the Company are $250,000.00, Buyer will be entitled to no payments. If in calendar year B, the total Fees paid to the Company are $350,000.00, Buyer shall be entitled to receive one-fifth of $50,000.00 ($350,000.00 - 300,000.00) or $10,000.00.

3. Representations and Warranties of Buyer. Buyer represents and warrants that he is fully aware that the Fees consist of mere expectancies of future income from DTC; that there is no assurance that the purchase price will ever be recovered by the Fees; that DTC has no legally enforceable obligation under the Conveyance Agreement to take any action which would result in the Fees becoming payable thereunder; that he has made such investigations of Seller, DTC and the Conveyance Agreement that he deems necessary and appropriate to the determination of the purchase price for the Fees prior to the execution of this Agreement; and that no officer, director or agent of Seller or DTC has made any representation or warranty in connection with the execution of this Agreement.

4. Integration. This Agreement contains the entire agreement between the parties relating to the subject matter hereof and supersedes all prior oral and written agreements, understandings, commitments and practices between the parties relating to the subject matter hereof, whether or not fully performed before the date of this Agreement. No amendments to this Agreement may be made except by a writing signed by both parties.

- 2 -

DTBK01487

5.  _Notices_.  Any notice or demand required or permitted to
be given hereunder shall be in writing and shall be deemed effective
upon the personal delivery thereof if delivered or, if mailed, twenty-
four (24) hours after having been deposited in the United States mail,
postage prepaid, and addressed in the case of Seller to 345 Baker
Street, Costa Mesa, California,  92626, and in the case of Buyer to
424 Robert Lane, Beverly Hills, California 90210          .  Either party
may change the address to which such notices are to be addressed by
giving the other party notice in the manner set forth.

6.  _Paragraph Headings_.  The paragraph headings used in this
Agreement are for convenience only and shall not be considered in the
interpretation hereof.

7.  _Controlling Law; Severability_.  To the full extent
controllable by stipulation of the parties, this Agreement shall be
interpreted and enforced under California law.  If any provision hereof
is determined to be unenforceable by a court of competent jurisdiction,
the remaining provisions shall nevertheless be given full force and
effect.

8.  _Successors_.  This Agreement shall be binding upon, and
inure to the benefit of, the parties hereto and their heirs, representa-
tives, successors and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this
Agreement at _Newport Beach, Calif._ as of the date first above written.

SELLER:

DEL TACO, INC.,
a California corporation

By _____
      President

By _____
      Secretary

BUYER:

_____
MONTGOMERY ROSS FISHER

- 3 -

DTBK01488

## AGREEMENT

THIS AGREEMENT is entered into this __5th__ day of May, 1978, between DEL TACO, INC., a California corporation ("Seller") and ____BRADFORD H. MILLER____ ("Buyer").

### R E C I T A L S

A.  On September 16, 1977, Seller entered into a Conveyance Agreement with DTG, INC., a Delaware corporation, the name of which has been changed to Del Taco Corporation ("DTC"). A copy of the Conveyance Agreement, without the exhibits thereto, is attached hereto as Exhibit "A".

B.  Pursuant to the Conveyance Agreement, DTC is obliged to pay to Seller the fee set forth in Section 3.01 of the Conveyance Agreement ("Domestic Fee") and the fee set forth in Section 3.04 of the Conveyance Agreement, exclusive of the One Million Dollar ($1,000,000.00) payment described therein ("Foreign Fee").

C.  Seller desires to sell, and Buyer desires to purchase, a partial interest in one-fifth (1/5) of the Domestic Fee and one-fifth (1/5) of the Foreign Fee on the terms and conditions set forth herein.

D.  Concurrently herewith, the remaining partial interest in four-fifths (4/5) of the Domestic Fee and the Foreign Fee are being offered for purchase to other persons.

### AGREEMENT

NOW, THEREFORE, the parties hereto agree as follows:

1.  <u>Sale of Fee; Payment of Purchase Price</u>.  Subject to the limitation set forth in paragraph 2 hereof, Seller hereby sells,

DTBK01489

assigns and conveys an undivided one-fifth (1/5) interest in both the Domestic Fee and Foreign Fee (collectively "Fees") to Buyer and Buyer hereby accepts an undivided one-fifth (1/5) interest in the Fees from Seller. The purchase price for the undivided one-fifth (1/5) interest in the Fees is $20,000.00, cash, and is paid concurrently herewith. Seller acknowledges receipt of the purchase price.

2. Reservation to Seller. Seller hereby reserves the right to receive, with respect to this Agreement and all similar agreements, th first $300,000.00 of Fees payable pursuant to the Conveyance Agreement which are paid during any calendar year. For example, if in calendar year A, the total Fees paid to the Company are $250,000.00, Buyer will be entitled to no payments. If in calendar year B, the total Fees paid to the Company are $350,000.00, Buyer shall be entitled to receive one-fifth of $50,000.00 ($350,000.00 - 300,000.00) or $10,000.00.

3. Representations and Warranties of Buyer. Buyer represents and warrants that he is fully aware that the Fees consist of mere expectancies of future income from DTC; that there is no assurance that the purchase price will ever be recovered by the Fees; that DTC has no legally enforceable obligation under the Conveyance Agreement to take any action which would result in the Fees becoming payable thereunder; that he has made such investigations of Seller, DTC and the Conveyance Agreement that he deems necessary and appropriate to the determination of the purchase price for the Fees prior to the execution of this Agreement; and that no officer, director or agent of Seller or DTC has made any representation or warranty in connection with the execution of this Agreement.

4. Integration. This Agreement contains the entire agreement between the parties relating to the subject matter hereof and supersedes all prior oral and written agreements, understandings, commitments and practices between the parties relating to the subject matter hereof, whether or not fully performed before the date of this Agreement. No amendments to this Agreement may be made except by a writing signed by both parties.

- 2 -                    DTBK01490

5. <u>Notices</u>. Any notice or demand required or permitted to be given hereunder shall be in writing and shall be deemed effective upon the personal delivery thereof if delivered or, if mailed, twenty-four (24) hours after having been deposited in the United States mail, postage prepaid, and addressed in the case of Seller to 345 Baker Street, Costa Mesa, California, 92626, and in the case of Buyer to <u>One Brookhollow Dr., Santa Ana, California 92705</u>. Either party may change the address to which such notices are to be addressed by giving the other party notice in the manner set forth.

6. <u>Paragraph Headings</u>. The paragraph headings used in this Agreement are for convenience only and shall not be considered in the interpretation hereof.

7. <u>Controlling Law: Severability</u>. To the full extent controllable by stipulation of the parties, this Agreement shall be interpreted and enforced under California law. If any provision hereof is determined to be unenforceable by a court of competent jurisdiction, the remaining provisions shall nevertheless be given full force and effect.

8. <u>Successors</u>. This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their heirs, representatives, successors and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement at _Newport Beach, Ca._ as of the date first above written.

SELLER:

DEL TACO, INC.,
a California corporation

By _[signature]_
   President

By _[signature]_
   Secretary

BUYER:

_[signature]_
BRADFORD H. MILLER

- 3 -

DTBK01491

7

## ASSIGNMENT

Del Taco, Inc., a California corporation ("DTI"), hereby transfers, conveys, assigns and delivers to William C. Baker an undivided 20% interest in all of DTI's right, title and interest, in and to, and all of DTI's obligations under, that certain Conveyance Agreement, dated September 16, 1977, between DTI and Del Taco Corporation (formerly DTG, Inc.) except only the right, which DTI reserves, to receive one million dollars ($1,000,000.00) in the event that Del Taco Corporation exercises its Option pursuant to Section 2.05 of the Conveyance Agreement. This Assignment shall include, without limiting the generality of the foregoing, DTI's right to receive the first three hundred thousand dollars ($300,000.00) of Fees payable pursuant to the Conveyance Agreement which are paid during any calendar year, a right which DTI specifically reserved under the Agreements, dated May 5, 1978, by and between DTI and each of its shareholders.

Del Taco, Inc.
("DTI").

By _____
Kendall C. Simpson, President

DTI3D 0267

<u>ASSIGNMENT</u>

Del Taco, Inc., a California corporation ("DTI"), hereby transfers, conveys, assigns and delivers to Bradford H. Miller an undivided 20% interest in all of DTI's right, title and interest, in and to, and all of DTI's obligations under, that certain Conveyance Agreement, dated September 16, 1977, between DTI and Del Taco Corporation (formerly DTG, Inc.) except only the right, which DTI reserves, to receive one million dollars ($1,000,000.00) in the event that Del Taco Corporation exercises its Option pursuant to Section 2.05 of the Conveyance Agreement.  This Assignment shall include, without limiting the generality of the foregoing, DTI's right to receive the first three hundred thousand dollars ($300,000.00) of Fees payable pursuant to the Conveyance Agreement which are paid during any calendar year, a right which DTI specifically reserved under the Agreements, dated May 5, 1978, by and between DTI and                )
each of its shareholders.                )

                              Del Taco, Inc.
                                 ("DTI")

                              By _____
                                 Kendall C. Simpson, President

## ASSIGNMENT

Del Taco, Inc., a California corporation ("DTI"), hereby transfers, conveys, assigns and delivers to Montgomery R. Fisher an undivided 20% interest in all of DTI's right, title and interest, in and to, and all of DTI's obligations under, that certain Conveyance Agreement, dated September 16, 1977, between DTI and Del Taco Corporation (formerly DTG, Inc.) except only the right, which DTI reserves, to receive one million dollars ($1,000,000.00) in the event that Del Taco Corporation exercises its Option pursuant to Section 2.05 of the Conveyance Agreement. This Assignment shall include, without limiting the generality of the foregoing, DTI's right to receive the first three hundred thousand dollars ($300,000.00) of Fees payable pursuant to the Conveyance Agreement which are paid during any calendar year, a right which DTI specifically reserved under the Agreements, dated May 5, 1978, by and between DTI and each of its shareholders.

Del Taco, Inc.
("DTI")

By _____
Kendall C. Simpson, President

DTI3D 0271