IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. [1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

## DEBTORS' OBJECTION TO CLAIM OF ANTON F. VOLOVSEK

The Debtors hereby object to the claim of Anton F. Volovsek ("Volovsek") filed in the amount of $491 *billion* against the Debtors. The Claim, based on the Debtors' alleged refusal to sell him a certain product back in 1975, is baseless. Volovsek fails to state any actionable claim and cites numerous irrelevant statutes in support of his claim. In addition, his allegations of criminal and antitrust violations are not only meritless and unsupported by the facts, but they are without any foundation in law. A private individual may not bring a criminal action. Nor does Volovsek have standing to assert any antitrust claims. Perhaps most important, any possible

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

recovery under any theory of law has long since been barred by the statute of limitations. The Claim is entirely without merit and must be disallowed and expunged by this Court, even when the facts and allegations are taken in a light most favorable to Volovsek. In support hereof, the Debtors state the following:

### Jurisdiction

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (O).

2. The statutory bases for relief requested herein are 11 U.S.C. §§ 105(a) and 502, Rules 3001 and 3007 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware.

### Background

3. Grace Construction Products ("Construction Products") is an operating unit of Grace Performance Chemicals – one of the Debtors' two business segments. The Debtors' total annual revenue, as reported in their most recent 10-K, was approximately $2.6 billion for 2005. Construction Products accounted for approximately 35.3% of the Debtors' total 2005 revenues, or approximately $906 million.

4. Since the 1960s, Construction Products has manufactured and continues to manufacture a product known as Bituthene. Bituthene is, among other things, a structural waterproofing system used in commercial structures.

5. According to ¶¶ 1-4 of the Affidavit of Anton Frank Volovsek dated 1996 (the "Volovsek Affidavit" attached as <u>Exhibit A</u> hereto),[2] in late 1974, Volovsek allegedly contacted Construction Products regarding purchasing Bituthene for experimenting with a roofing system that he was allegedly developing and claimed he had patented.

6. According to ¶¶ 6 and 8 of the Volovsek Affidavit, Volovsek claims that Construction Products refused to sell him Bituthene.

7. On October 14, 1975, Volovsek's attorney sent a letter to the President of the Debtors at the time, J. Peter Grace. The letter stated that Volovsek was told that his order for 105 rolls of Bituthene could not be filled by Construction Products. Volovsek's counsel demanded an explanation for such refusal to sell.

8. On October 24, 1975, the Vice President of Construction Products, Leonard Rosenblatt, wrote a letter to Volovsek's counsel in response, explaining that: (a) Construction Products desired that its product be used only in applications wherein there was sufficient basis to believe that it will perform satisfactorily; (b) there was the potential for product liability exposure; and (c) Construction Products was concerned that bad exposure of Bituthene in the market would adversely affect sales. Instead, Mr. Rosenblatt offered 5 rolls of Bituthene at no charge for further testing with the roofing system allegedly developed by Volovsek.

9. Volovsek did not accept Mr. Rosenblatt's offer to obtain 5 rolls of Bituthene. Instead, on November 7, 1975, Volovsek's counsel responded with a letter offering to purchase 200 rolls of Bituthene and threatening litigation if Construction Products refused to sell Bituthene to his client.

---

[2] The Volovsek Affidavit was provided to Debtors' counsel from Volovsek directly. It appears to be a draft with various handwritten notations. It is not dated, signed or notarized.

10. In a letter dated November 26, 1975, Construction Products stated that it could not sell 200 rolls of Bituthene to Volovsek.[3]

11. According to ¶ 8 of the Affidavit of Default (as that term is defined in ¶ 14 of this Objection), and ¶¶ 10 and 11 of the Volovsek Affidavit, Volovsek alleges that he attempted to find a distributor that would sell him Bituthene, but that both Highway Pavers and Milwaukee Insulation refused to sell him the product because the Debtors "threatened to blacklist them if they did."[4] According to ¶¶ 12 and 13 of the Volovsek Affidavit, Volovsek also alleges that he attempted to find a substitute for Bituthene but was unable to do so.

12. According to ¶¶ 14-25 of the Volovsek Affidavit, Volovsek further alleges that as a direct result of Construction Products' refusal to sell Bituthene to him, among other things, (a) he was forced to the brink of bankruptcy, (b) his health failed because of the stress, (c) he lost his company, his marriage and his family, (d) he moved to Phoenix, Arizona to work for a chemical engineer who tried to buy Volovsek's roofing system but, when Volovsek refused, he was fired, (e) he suffered a nervous breakdown, (f) his attorney attempted to steal his patent, (g) he was forced to hire a second lawyer who also tried to steal his patent, (h) he spent $225,000 in litigation costs to retrieve his patent, (i) he spent an additional $100,000 in expenses for physicians, hospitalization and medications, (j) he failed in his efforts to restart his business or market it to oil companies or the U.S. government, (k) he failed in his efforts to market the product to other companies, and (l) he was unable to earn a living for twenty years.

13. To the best of the Debtors' knowledge, Volovsek took no formal action against the Debtors until at least 1996. According to ¶ 19 of the Affidavit of Default, Volovsek claims

---

[3] The series of letter correspondence referred to in ¶¶ 7-10 of this Objection is attached as <u>Exhibit B</u> hereto.
[4] Although Volovsek refers to an attached Exhibit B as part of his allegation in ¶ 8 of the Affidavit of Default, no such exhibit was filed with the Claim or provided to the Debtors.

that on October 2, 1996, he caused to be mailed a *Commercial Affidavit of Fact, Notice and Warning of Commercial Grace, and Notice of Non-Judicial and Pre-Judicial Proceeding* (the "Notice of Proceeding"). Volovsek has not provided the Debtors, either as part of his Claim or via separate correspondence, proof of service of the Commercial Affidavit and, to the best of the Debtors' knowledge, the Debtors have no record of ever having received such a notice.

14. On or about January 7, 1997, Volovsek apparently filed a Commercial Affidavit of Default with the Klickitat County Auditor in the State of Washington (the "Affidavit of Default," attached as Exhibit C hereto). In the Affidavit of Default, Volovsek alleges that the Debtors violated antitrust, civil procedure, and criminal laws and infringed on his constitutional rights.

15. On April 2, 2001, the Debtors commenced their respective reorganization cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

16. By an order dated April 25, 2002, this Court set March 31, 2003, as the last date for filing proofs of claim for all pre-petition claims relating to asbestos property damage, non-asbestos claims (including all governmental claims), and medical monitoring claims.

17. On or about April 29, 2002, Volovsek filed a claim against the Debtors, Claim No. 714, in the amount of $491,500,462,500.00 (the "Claim", attached as Exhibit D hereto). The Claim amount is apparently calculated as outlined in ¶ 17 of the Affidavit of Default, where Volovsek alleges that 10 billion square feet of product could have been sold per year. He estimates that he would have earned 2.5 cents per square foot. However, over the relevant time period, 1975 - 2001, that only amounts to $6.5 billion. Nowhere has Volovsek explained how the $491 billion Claim amount was reached.

18. After several telephone conversations with Debtors' counsel at both Pachulski, Stang, Ziehl, Young, Jones & Weintraub P.C. and Kirkland & Ellis LLP, on September 1, 2006, Volovsek sent a packet of materials to Debtors' counsel at Kirkland & Ellis, a complete copy of which is attached as Exhibit E hereto.[5] Volovsek has, since then, contacted Debtors' counsel attempting to bring a resolution to his claim.

### The Objection

19. For the reasons discussed below, the Debtors request that this Court disallow and expunge the Claim filed by Volovsek.

**A.  Volovsek Cannot Bring Any Criminal Claims Against The Debtors.**

20. Volovsek claims that the Debtors are in violation of several sections of Title 18 of the United States Code. Title 18 generally deals with crimes and criminal procedure. Specifically, Volovsek alleges that the Debtors violated sections 3, 4, 241 and 242 of Title 18. *See* Affidavit of Default ¶¶ 18(f) - (l), attached as Exhibit C hereto. Volovsek does not have standing to assert any claims under these sections of Title 18 nor are the criminal allegations of any merit. Thus, this portion of the Claim must be disallowed.

**1. An Individual Has No Private Right Of Action To Bring A Criminal Claim.**

21. It is established law that there is generally no private right of action under Title 18 of the United States Code. *See, e.g., Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86 (2d Cir. 1972) (stating "it is a truism, and has been for decades, that in our federal system crimes are always prosecuted by the Federal Government."); *Kennan v. McGrath*, 328 F.2d 610, 611 (1st Cir. 1964) (finding no authority for permitting a private individual to initiate a criminal

---

[5] Exhibit E is an exact copy of the materials provided by Volovsek to Debtors' counsel. The packet includes materials that have been previously identified and attached separately as exhibits, such as the Volovsek Affidavit at Exhibit A, the series of letter correspondence at Exhibit B, and the Claim at Exhibit D. The packet includes various other materials which the Debtors believe are irrelevant.

prosecution in his own name in a United States District Court); *Lewis v. Gallivan*, 315 F. Supp. 2d 313, 316-17 (W.D.N.Y. 2004) (stating "the law is well settled that no private citizen has a constitutional right to bring a criminal complaint against another individual."). This is particularly true for criminal allegations under 18 U.S.C. §§ 241 and 242, which are the thrust of Volovsek's allegations against the Debtors. *See, e.g., Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("only the United States as prosecutory can bring a complaint under 18 U.S.C. §§ 241-242, as 'these statutes do not give rise to a civil action for damages.'"); *U.S. v. Oguaju*, 26 Fed. Appx. 579, 2003 WL 21580657 at *2 (6th Cir. 2003) (no private right of action under 18 U.S.C. §§ 241, 242); *Reid v The City of New York*, 2001 U.S. Dist. Lexis 13789 at 19 (S.D.N.Y. 2001) (same).

22. Enforcement of criminal actions rests with the Attorney General and the Justice Department. *See* Fed. R. Crim. P. 7(c) ("the indictment ... must be signed by an attorney for the government"). To do otherwise would "provide a means to circumvent the legal safeguards provided for persons accused of crime." *Kennan v. McGrath*, 328 F.2d at 611.

23. Under Title 18, Volovsek does not have standing to bring any of the claims he alleges against the Debtors. As a result, Volovsek's Claim does not constitute a cause of action for which relief may be granted by this Court. This Court must disallow all portions of the Claim alleging criminal violations.

### 2. The Allegations Under Title 18 Do Not Present A Viable Cause Of Action Against The Debtors And Must Be Disallowed.

24. The Debtors assert that none of the criminal allegations made by Volovsek are true or supported by the facts. In addition, Volovsek cannot maintain a cause of action under any of the sections of Title 18 that he has cited.

7

25.     Volovsek's allegations that the Debtors conspired to embezzle the patented system, either from the beginning or after the fact, and thus violated § 3 of Title 18 do not present a viable cause of action as that section makes it a crime to hinder or prevent prosecution of an individual who has committed an offense *against the United States*.[6] *See* 18 U.S.C. § 3.

26.     Section 4 of Title 18 makes it a crime to conceal a felony.[7] Volovsek, however, does not identify a felony. In fact, he makes no allegation under this section -- he simply quotes the language of the statute. As such, this portion of the Claim must be disallowed.

27.     Section 241 makes it a crime to conspire to violate a person's constitutional or statutory rights.[8] *See* 28 U.S.C. § 241. Section 242 makes it a crime to willfully deprive persons of constitutional or statutory rights while acting under color of law.[9] *See* 28 U.S.C. § 242.

---

[6]  18 U.S.C. § 3 specifically provides:
Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.
Except as otherwise expressly provided by any Act of Congress, an accessory after the fact shall be imprisoned not more than one-half the maximum term of imprisonment or (notwithstanding section 3571) fined not more than one-half the maximum fine prescribed for the punishment of the principal, or both; or if the principal is punishable by life imprisonment or death, the accessory shall be imprisoned not more than 15 years.

[7]  18 U.S.C. § 4 specifically provides:
Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

[8]  18 U.S.C. § 241 specifically provides:
If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or
If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured--
They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

[9]  18 U.S.C. § 241 specifically provides:
Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are
(Continued...)

Volovsek provides no evidence of any conspiracy or any acts to willfully deprive him of a constitutional or statutory right, or what the constitutional or statutory right is for that matter. As such, this portion of the Claim must be disallowed.

### B.  Volovsek Cannot Bring Any Antitrust Claims Against The Debtors.

28. Volovsek claims that the Debtors are also in violation of several sections of Title 15 of the United States Code. Title 15 generally deals with antitrust claims. Specifically, Volovsek alleges that the Debtors violated sections 1 and 1311 of Title 15 and seeks recovery under § 1.186-1 of what is presumably the Treasury Regulations. *See* Affidavit of Default ¶¶ 6 and 18(e), attached as <u>Exhibit C</u> hereto. Volovsek (a) is barred by the statue of limitations and (b) does not have standing to assert any claims under these sections of Title 15. Furthermore, this portion of the Claim must be disallowed since the sections of Title 15 cited by Volovsek do not present any cause of action and are not even applicable to the Debtors.

#### 1. Volovsek Has Far Exceeded The Statue Of Limitations By Failing To Bring A Claim Until, At Least, 1996.

29. An antitrust cause of action accrues and the four-year statute of limitations begins to run when the defendant commits the act that injures the plaintiff's property or business. *See* 15 U.S.C. § 15b. *See also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971) ("The basic rule is that damages are recoverable under the federal antitrust acts only if suit therefor is 'commenced within four years after the cause of action accrued'.... Generally, a

---

prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

DOCS_DE:123654.1

cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business.")

30.     Here, the alleged anticompetitive act (i.e. the failure to sell Bituthene to Volovsek) occurred in late 1975. *See* Affidavit of Anton Frank Volovsek, at ¶¶ 8, 10, attached as part of Exhibit A hereto. Consequently, the statute of limitations was triggered at that point. However, Volovsek's first alleged action was to send a Commercial Affidavit of Fact to the Debtors in 1996 and then to file a lien against the Debtors in the State of Washington in 1997, 22 years after the alleged wrongful acts. Moreover, to the best of the Debtors' knowledge, Volovsek to date has not filed a complaint against the Debtors as threatened by his attorney in correspondence dating back to 1975. Therefore, Volovsek has no actionable claim against the Debtors at this late date as he is barred by the statute of limitations.

31.     Furthermore, there can be no argument that the statute of limitations was tolled in this case. There are a few limited exceptions that would justify tolling of the statute of limitations: (a) where the damages incurred are speculative or not provable as of the date of injury (not merely uncertain),[10] (b) until the plaintiff discovers, or should have discovered, both its injury and the party responsible for the injury,[11] (c) if the defendants are guilty of fraudulent concealment,[12] and (d) during the pendency of criminal or civil proceedings by the government, plus an additional one-year period thereafter.[13]

---

[10] *See Camotex, S.R.L. v. Hunt*, 741 F. Supp. 1086, 1090 (S.D.N.Y. 1990) ("A limited exception to the general rule of accrual upon injury permits tolling where the damage is speculative or unprovable as of the date of injury.").

[11] *See In re Copper Antitrust Litig.*, 436 F.3d 782, 789-91 (7th Cir. 2006).

[12] *See In re Copper Antitrust Litig.*, 436 F.3d at 791 ("In order for a plaintiff to benefit from tolling for fraudulent concealment, he must show 'that he neither knew nor, in the exercise of due diligence, could reasonably have known of the offense.'").

[13] *See* 15 U.S.C. § 16(i) ("Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect to every private or State right of action arising under said
(Continued...)

DOCS_DE:123654.1

32. None of these exceptions are applicable. The damages allegedly incurred by Volovsek are not uncertain, let alone speculative. The value of the two contracts that Volovsek claims to have lost as a result of the Debtors' alleged acts in 1974 and 1975 is clearly ascertainable. *See* Affidavit of Anton Frank Volovsek, ¶ 9. Furthermore, the 1975 correspondence between Volovsek's lawyer and the Debtors clearly demonstrate that Volovsek was aware of the alleged injury and the debtor's alleged anticompetitive acts, thereby precluding any claims of either ignorance of injury or fraudulent concealment. *See* Affidavit of Anton Frank Volovsek, ¶¶ 8, 10. Finally, no civil or criminal proceedings by the government were ever instituted against the Debtors on antitrust grounds.

33. In sum, no circumstances warrant tolling of the statute of limitations in this case because none of the limited exceptions apply here. And, even if the Debtors were to concede that the statute of limitations is tolled by allegedly serving the Debtors with a Notice of Proceeding in 1996, to prevent being barred by the statute of limitations, Volovsek would have to allege an anticompetitive act by the Debtors post-1992, which he has failed to do. As a result, the statute of limitations on Volovsek's Claim, which started in late 1975, expired well before the alleged date of the Notice of Proceeding in 1996 and, certainly, prior to the Petition Date. Therefore, this Court must disallow the antitrust portions of the Claim because Volovsek did not bring a complaint against the Debtors within the statute of limitations.

### 2. Volovsek Lacks Standing To Bring An Antitrust Cause Of Action.

34. The Supreme Court has set forth a six-factor test to determine whether a plaintiff has standing to bring an antitrust action. *See Associated Gen. Contractors of Calif., Inc. v. Calif.*

---

laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter"). *See also Varner v. Peterson Farms*, 371 F.3d 1011, 1019 (8th Cir. 2004) ("[15 U.S.C. § 16(i)] excludes from the four-year statute of limitations the time during which the wrongdoer is the subject of a civil or criminal proceeding by the United States.").

11

*State Council of Carpenters*, 459 U.S. 519, 537-45 (1983); *see also Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 10 (1st Cir. 1999). These factors are:

> (1) the causal connection between the alleged antitrust violation and harm to the plaintiff; (2) an improper motive; (3) the nature of the plaintiff's alleged injury and whether the injury was of a type that Congress sought to redress with the antitrust laws ("antitrust injury"); (4) the directness with which the alleged market restraint caused the asserted injury; (5) the speculative nature of the damages; and (6) the risk of duplicative recovery or complex apportionment of damages.

35. A cursory application of these factors to Volovsek's allegations reveals that Volovsek has no standing to bring an antitrust claim. Volovsek must show each of the above-stated elements. *See, e.g., Midwest Gas Serv., Inc. v. Indiana Gas Co., Inc.*, 317 F.3d 703, 712 (7th Cir. 2003) ("[a] private antitrust plaintiff ... does not acquire standing merely by showing that he was injured by the defendant's conduct."). Among other things, Volovsek provides absolutely no explanation to support an allegation that the alleged injury to Volovsek was of a type that Congress sought to redress with the antitrust law.[14] Nor does he allege an improper motive. In fact, in his October 24, 1975 letter, Mr. Rosenblatt explained the legitimate reasons for Construction Products' refusal to sell Bituthene to Volovsek and offered to provide him, at no charge, with 5 rolls of Bituthene -- an offer which Volovsek did not accept. Furthermore, although Volovsek claims to have support for his theory that Construction Products threatened to blacklist any supplier who provided Bituthene to Volovsek, nothing specific is alleged and no supporting documentation is attached. Therefore, this Court must summarily disallow the antitrust portion of Volovsek's Claim because Volovsek has no standing to seek relief from this Court.

---

[14] The Debtors need not even address the other factors.

### 3. The Claims Under Title 15 Are Without Merit And Do Not Support A Cause Of Action Against The Debtors.

36. Section 1 of Title 15 makes it a felony to contract or conspire to restrain trade *among the several states of the U.S. or with foreign nations.*[15] Volovsek makes no allegations against the Debtors with respect to restraint of trade.

37. Section 1311 simply defines the terms used in Chapter 34 of Title 15.[16] *See* 15 U.S.C. § 1311. Chapter 34, §§ 1311 - 1314, generally relates to antitrust civil process. Volovsek's Claim does not refer to any violations of the other subsections of Chapter 34. However, even if it did, Chapter 34 does not give Volovsek any causes of action that could support a claim. Section 1312 provides that if the Attorney General believes that a person may have information relevant to a civil antitrust investigation, he may issue a civil investigative demand requiring production of materials or responses to interrogatories. *See* 15 U.S.C. § 1312. Section 1313 deals with custody of documents, answers and transcripts. *See* 15 U.S.C. § 1313. Section 1314 provides the Attorney General with the authority to file for a petition for an order of a court enforcing his request for production or response to interrogatories. *See* 15 U.S.C. § 1314.

---

[15] 15 U.S.C. § 1 specifically provides:
Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

[16] 15 U.S.C. § 1311 specifically provides for the definitions of the following terms:
(a) antirust law, (b) antirust order, (c) antitrust investigation, (d) antitrust violation, (e) antitrust investigator, (f) person, (g) documentary material, (h) custodian, (i) product of discovery, (j) agent, and (k) foreign antitrust laws.

13

DOCS_DE:123654.1

### 3. The Claims Under Title 15 Are Without Merit And Do Not Support A Cause Of Action Against The Debtors.

36. Section 1 of Title 15 makes it a felony to contract or conspire to restrain trade *among the several states of the U.S. or with foreign nations.*[15] Volovsek makes no allegations against the Debtors with respect to restraint of trade.

37. Section 1311 simply defines the terms used in Chapter 34 of Title 15.[16] *See* 15 U.S.C. § 1311. Chapter 34, §§ 1311 - 1314, generally relates to antitrust civil process. Volovsek's Claim does not refer to any violations of the other subsections of Chapter 34. However, even if it did, Chapter 34 does not give Volovsek any causes of action that could support a claim. Section 1312 provides that if the Attorney General believes that a person may have information relevant to a civil antitrust investigation, he may issue a civil investigative demand requiring production of materials or responses to interrogatories. *See* 15 U.S.C. § 1312. Section 1313 deals with custody of documents, answers and transcripts. *See* 15 U.S.C. § 1313. Section 1314 provides the Attorney General with the authority to file for a petition for an order of a court enforcing his request for production or response to interrogatories. *See* 15 U.S.C. § 1314.

---

[15] 15 U.S.C. § 1 specifically provides:
Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

[16] 15 U.S.C. § 1311 specifically provides for the definitions of the following terms:
(a) antirust law, (b) antirust order, (c) antitrust investigation, (d) antitrust violation, (e) antitrust investigator, (f) person, (g) documentary material, (h) custodian, (i) product of discovery, (j) agent, and (k) foreign antitrust laws.

38.     Clearly, none of the subsections of Chapter 34 of Title 15 have any relevance to any private claim Volovsek may seek to assert against the Debtors. Therefore, this Court must disallow these portions of the Claim.

39.     Presumably, the reference to § 1.186-1 in ¶ 6 of the Affidavit of Default, attached as Exhibit C hereto, is to the Treasury Regulations. Sections 1.186-1(a) and (b) simply provide for an income tax deduction for compensable injuries, including recoveries for an injury suffered under certain antitrust violations. Obviously, this has no relevance to any claims a private citizen would have against the Debtors.

### C.    Volovsek's Remaining Citation Is Also Not Applicable To The Debtors.[17]

40.     In additional to criminal and antitrust claims, Volovsek cites one section -- § 2451 -- from Wright and Miller. *See* Affidavit of Default ¶6, attached as Exhibit C hereto. Section 2451 discusses subpoenas, and their relevance and potential uses. The Debtors, yet again, do not understand this reference and state that it is inapplicable. As such, this Court must disallow the remaining portions of the Claim.

### Reservation

41.     The Debtors hereby reserve the right to object in the future to the Claim listed in this Objection or on the exhibits attached hereto on any ground, and to amend, modify and/or supplement this Objection, including, without limitation, to object to amended claims and newly-filed claims and to file all other objections relating to this Claim. Separate notice and hearing will be scheduled for any such objection.

---

[17] The Debtors have not responded to the reference to 31 U.S.C. § 5112 included in ¶ 20 of the Affidavit of Default. Section 5112 simply describes the denominations, specifications, and design of coins that can be minted by the U.S. Secretary of the Treasury. The Debtors do not believe that this citation merits any response.

## Conclusion

Volovsek's criminal and antitrust allegations against the Debtors are meritless, support no cause of action, may not be brought by an individual, and are barred by the statute of limitations. As a result, the Debtors respectfully request that this Court enter an order disallowing and expunging Volovsek's Claim in its entirety.

Dated: December 18, 2006                    Respectfully submitted,

KIRKLAND & ELLIS LLP
Janet S. Baer
Lori Sinanyan
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Curtis A. Hehn (Bar No. 4264)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for Debtors and Debtors in Possession