IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. [1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

## DEBTORS' OBJECTION TO CLAIM OF ROBERT H. LOCKE AND AGREEMENT FOR REFERRAL TO MEDIATION

This Court approved the Debtors' motion to establish an alternative dispute resolution program to liquidate certain prepetition claims (D.I. 6853) (the "ADR Order") on November 8, 2004.[2] Locke filed a claim against the Debtors for age and "perceived" handicap (hereinafter "handicap" or "disability") discrimination as alleged in a lawsuit pending against the Debtors and Bettacchi (the "Locke Action"). Since the Locke Action has been pending for over 7 years and remains unresolved, the parties have agreed that the best alternative at this time is to attempt

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] Terms not defined in this Introduction are defined in the Background Section of this Objection.

to resolve the Claim against the Debtors and all claims against Bettachi under the terms of the ADR Order.

Pursuant to the ADR Order, the Debtors must first file an objection to a disputed claim and, after the claimant has responded to the Debtors' objection, the Debtors are authorized to submit the disputed claim to the ADR Program established under the ADR Order. The Debtors hereby object to the Claim (the "Objection"). In support hereof, the Debtors state the following:

### Jurisdiction

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (O).

2. The statutory bases for relief requested herein are 11 U.S.C. §§ 105(a) and 502, Rules 3001 and 3007 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware.

### Background

3. On April 2, 2001, the Debtors commenced their respective reorganization cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

4. By an order dated April 25, 2002, this Court set March 31, 2003, as the last date for filing proofs of claim for all pre-petition claims relating to asbestos property damage, non-asbestos claims (including all governmental claims), and medical monitoring claims.

5. On March 28, 2003, Robert H. Locke ("Locke") filed a claim against the Debtors, Claim No. 9566 in the amount of approximately $6 - 7 million for age and handicap discrimination (the "Claim").

6. The Claim arises out of a complicated and long history.

2

DOCS_DE:123704.1

7. In 1992, Locke became Vice President and Chief Technical Officer ("CTO") of one of the Debtors' subsidiaries. As CTO, Locke was responsible for two primary areas: research and development ("R&D") and new business development. In 1998, due to the changes in the business climate, Grace determined that the CTO job had become too much for one person to manage. As a result, Robert J. Bettacchi ("Bettacchi"), the then Senior Vice President of W. R. Grace & Co. and W. R. Grace & Co.-Conn., and President of Grace Performance Chemicals, eliminated the CTO position and created two new positions: (a) Vice President of R&D and (b) Vice President of New Business Development. On June 5, 1998, Locke was offered the position of Vice President of New Business Development, which he rejected on June 12, 1998. Locke's official termination date was July 31, 1998.

8. On or about May 18, 1999, Locke filed the case captioned Robert Locke v. W. R. Grace and Robert Bettacchi, No. 99-2530, (Mass. Sup. Ct., Middlesex Cty.), (defined above as the "Locke Action"), asserting claims of employment discrimination against the Debtors and Bettachi (collectively, the "Defendants"). Specifically, he alleged that the Debtors' decision to terminate his employment was motivated by his age and "perceived" disability, his inability to work under stress.

9. On or about January 2, 2001, the Massachusetts Superior Court entered an order granting a motion to compel the Defendants to respond to certain discovery requests submitted by Locke. Another order granting a motion to compel discovery was entered in May 2001 (together, the "Discovery Order").

10. On or about January 22, 2001, the Defendants filed a motion for summary judgment seeking a judgment in favor of the Defendants on all counts of the Locke Action (the "Summary Judgment Motion").

11. On or about April 27, 2001, this Court entered a preliminary injunction staying actions against certain non-debtor affiliates of the Debtors which was later extended to stay actions against current and former directors, officers and employees of the Debtors arising out of their employment with the Debtors, including the Locke Action (the "Injunction").

12. On or about May 19, 2003, the parties entered into a stipulation which partially lifted the automatic stay and the Injunction to permit the parties to the Locke Action to complete discovery as set forth in the Discovery Order, prosecute and defend the Summary Judgment Motion, and to take such actions as necessary or appropriate to exercise their rights of appeal, if any, with respect to the Summary Judgment Motion, until such rights had been exhausted.

13. On or about November 16, 2004, the Summary Judgment Motion was granted with respect to the age discrimination claims but denied with respect to the disability claims.

14. Although the Locke Claim had been expunged by an order of this Court, the Debtors, subject to Bankruptcy Court approval, have agreed (a) to reinstate the disability portion of the Claim only as specified in that certain *Stipulation Reinstating Claim of Robert Locke and Referral of Claim to ADR Program* (D.I. 13735) (the "Stipulation"), which Stipulation is currently pending before this Court, and (b) to submit the reinstated portion of the Claim for resolution under the terms of the ADR Order.

### The Objection

15. For the reasons discussed below, Debtors request that this Court disallow the partially reinstated Claim filed by Locke.

    (a) **Locke Cannot Prove Discrimination Based Upon Handicap.**

        (i) **Locke fails to establish his *prima facie* case of handicap discrimination.**

4

16.     Locke's handicap claim is based on his allegation that Defendants sought to transfer him to the new business development position because they perceived him as having a disability that substantially limited his ability to work.  Locke's claim fails because he is unable to establish that Defendants perceived him as disabled or that the Defendant's actions were motivated by handicap discrimination.

17.     To establish a claim of handicap discrimination, the plaintiff must show that: (a) he is handicapped; (b) with or without reasonable accommodation he could have performed his job; and (c) his employer fired him in whole or in party because of his handicap.  In cases in which there is a material dispute as to the reasons why the employee was terminated, the complainant may satisfy his burden of proof by providing direct evidence of discriminatory termination.  There is no direct evidence of handicap discrimination in this case.  In fact, it is undisputed that the Defendants offered Locke a job as Vice President of New Business Development – a highly compensated, executive level position consisting of a significant portion of the duties he previously performed as CTO.  This fact forecloses any conceivable argument that the Defendants perceived him to be disabled and, to the contrary, demonstrates that the Defendants believe he was capable of performing a job critically important to their business, that required significant skill and expertise.  In the absence of direct evidence, the complainant may utilize circumstantial evidence, pursuant to the burden-shifting framework.  Locke fails here as well.

18.     Locke cannot establish a prima facie case of handicap discrimination because he cannot prove that he was constructively discharged or that he was sufficiently qualified for the new position of Vice President of R&D.  Nor can he prove that he has a disability under applicable state and federal statutes, or that the Defendants perceived him to have a disability.

5

Locke's allegations that Defendants perceived him unable to work in his desired position due to stress is insufficient to sustain his claim. Furthermore, under a standard established by the Supreme Court, a claim based on a perceived disability does not survive where a plaintiff is denied a *particular* position. This is exactly the basis for Locke's failed claim – he alleges he was denied a particular position, Vice President of R&D, because he was perceived to be unable to work due to stress. He admits he was offered the position of Vice President of New Development, but refused to accept it. The circumstances are simply insufficient to support a claim for handicap discrimination. Accordingly, Locke has not met his prima facie burden.

### (ii) Locke fails to carry the burden of proof even assuming arguendo that he established his *prima facie* case of handicap discrimination.

19. If Locke could establish a prima facie case of discrimination, Defendants would then be required to articulate a non-discriminatory reason for his new job assignment, which they have. Thus, the burden shifts back to Locke to bear the burden of producing evidence sufficient to support a jury verdict that it was more likely than not that the articulated reason was pretext for discrimination. Locke cannot establish that he was replaced or that the Debtor's legitimate non-discriminatory reasons for terminating his employment are merely pretexts. Locke's claim that upon his return to work after a medical leave of absence, Bettacchi's treatment of him changed, is not sufficient to establish pretext. The undisputed evidence establishes that Defendants offered Locke a high-level position, with no salary reduction and with the anticipation that he would remain on the executive committee. Locke's qualifications made him a better candidate for the new business development job. The legitimacy of Defendant's decision to divide the CTO position into two separate positions is evidenced by the fact that Defendants have retained this structure since Locke's resignation. Locke has failed to present any evidence to refute the efficacy of this decision.

DOCS_DE:123704.1

20. Finally, Locke cannot show he was entitled to and denied reasonable accommodation. Locke never specifically identified his alleged limitations. Nonetheless, he was never required to do anything more than the essential functions of his job, which is a perfectly legitimate expectation for an individual with a disability.

21. Although the Summary Judgment Motion was not granted with respect to handicap discrimination, it is clear from the record that the Defendants would prevail if the claim is litigated. Whether or not Bettacchi warned Locke that the new position he was being offered carried an increased level of stress, and whether that was motivated by Bettacchi's knowledge of Locke's stress problems, Locke clearly fails to satisfy the remaining elements to establish a handicap discrimination claim.

### Reservation

22. The Debtors hereby reserve the right to object in the future to the Claim listed in this Objection or on the exhibits attached hereto on any ground, and to amend, modify and/or supplement this Objection, including, without limitation, to object to amended claims and newly-filed claims and to file all other objections relating to this Claim. Separate notice and hearing will be scheduled for any such objection.

### Notice

23. Debtors will serve copies of this Objection on (a) the Office of the United States Trustee; (b) counsel to each of the official committees appointed by the United States Trustee; (c) counsel for the Future Claimants' Representative; (d) counsel to the debtor in possession lender; (e) Locke, through his counsel of record; and (f) all parties that have requested that they be served with all pleadings filed in these cases pursuant to Bankruptcy Rule 2002.

24. The Debtors submit that notice of this Objection as outlined above is sufficient under Bankruptcy Rule 3007 and that no further notice is necessary.

### No Previous Request

25. No previous request for the specific relief set forth herein has been made to this or any other court.

### Compliance With Rule 3007-1

26. This Objection complies with Rule 3007-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware.

WHEREFORE, the Debtors respectfully request that the Court enter an order disallowing the Claim.

Dated: December 20, 2006    Respectfully submitted,

KIRKLAND & ELLIS LLP
Janet S. Baer
Lori Sinanyan
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Curtis A. Hehn (Bar No. 4264)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for Debtors and Debtors in Possession