# EXHIBIT 1

# WR Grace

Bankruptcy Form 10

Index Sheet

SR00000097

| Claim Number: | 00001755 | | Receive Date: | 08 / 12 / 2002 |
|---|---|---|---|---|

## Multiple Claim Reference

Claim Number _____

- [ ] MMPOC — Medical Monitoring Claim Form
- [ ] PDPOC — Property Damage
- [ ] NAPO — Non-Asbestos Claim Form
- [ ] — Amended

Claim Number _____

- [ ] MMPOC — Medical Monitoring Claim Form
- [ ] PDPOC — Property Damage
- [ ] NAPO — Non-Asbestos Claim Form
- [ ] — Amended

## Attorney Information

Firm Number: 00192       Firm Name: Hughes Hubbard & Reed LLP

Attorney Number: 00065       Attorney Name: Charles D Schoor

Zip Code: 90071-3442

Cover Letter Location Number: SR00000097

| Attachments<br>Medical Monitoring | Attachments<br>Property Damage | Non-Asbestos |
|---|---|---|
| [ ] TBD | [ ] TBD | [x] Other Attachments |
| [ ] TBD | [ ] TBD | |
| [ ] TBD | [ ] TBD | |
| [ ] TBD | [ ] TBD | |
| [ ] TBD | [ ] TBD | |
| | [ ] Other Attachments | |

**Other**

- [ ] Non-Standard Form
- [ ] Amended
- [ ] Post-Deadline Postmark Date

Box/Batch: WRBF0009/WRBF0034       Document Number: WRBF001658

*GRACE NON-ASBESTOS PROOF OF CLAIM*

B10 (Official Form 10) (Rev. 04/01)

| UNITED STATES BANKRUPTCY COURT<br>For the District of Delaware | PROOF OF CLAIM |
|---|---|

| In re: **W.R. Grace & Co.** | Case Number: **01-01139-JJF** |
|---|---|

NOTE: This claim should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Creditor Name**
(Person or entity to whom the debtor owes money or property): **Gulf Pacific America, Inc.**

**Address Line 1** c/o Mar-Gulf Management, Inc.

**Address Line 2** 7083 Hollywood Boulevard

**Address Line 3** Suite 690

**City, ST ZIP** Hollywood, California 90028

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:
**Not applicable**

☐ Check here if this claim ☐ replaces ☐ amends a previously filed claim dated: _____

**1. BASIS FOR CLAIM**

☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other (Describe briefly) **See Attachment A.**
☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (Fill out below)
Your social security No. _____
Unpaid compensation for services performed from _____ (date) to _____ (date)

**2. Date Debt Incurred: (MMDDYY)**

**3. If Court Judgment, Date Obtained:**

**4. CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☐ **SECURED CLAIM**
Attach evidence of perfection of security interest
Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle  ☐ Other (Describe briefly)
Amount of arrearage and other charges at time case filed included in secured claim above, if any $ _____

☒ **UNSECURED NONPRIORITY CLAIM**
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ **UNSECURED PRIORITY CLAIM** - Specify the priority of the claim.
☐ Wages, salaries, or commissions (up to $4,650), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4)
☐ Up to $2,100 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Taxes or penalties of governmental units - 11 U.S.C. § 507 (a)(7)
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a) _____

**5. AMOUNT OF CLAIM AT TIME CASE FILED:**

| (Secured) | (Unsecured Nonpriority) | (Unsecured Priority) |
|---|---|---|
|  | 2 0 7 9 3 7 0 0 |  |

☐ Check this box if claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**6. CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

**7. SUPPORTING DOCUMENTS:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary. **See Exhibits to Attachment A.**

**8. TIME-STAMPED COPY:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date 7/1/02 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) **Gulf Pacific America, Inc.**<br>By: _____<br>**Ani Soghomonian, Secretary** |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

AUG 12 2002

WR Grace
SR-97
BF.9.34.1855
00001755

## U.S. BANKRUPTCY COURT-DISTRICT OF DELAWARE
## INSTRUCTIONS FOR COMPLETING CLAIM FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

**Debtor**

The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

**Creditor**

A creditor is any person, corporation, or other entity to whom the debtor owed a debt on the date the bankruptcy case was filed.

**Proof of Claim**

A form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim). This form must be filed with the clerk of the bankruptcy court where the bankruptcy case was filed.

**Secured Claim**

A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property.

Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right of setoff), the creditor's claim may be a secured claim. (See also *Unsecured Claim.*)

**Unsecured Claim**

If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

**Unsecured Nonpriority Claim**

Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as *Unsecured Nonpriority Claims.*

**Court, Name of Debtor, and Case Number:**
If not already pre-printed, fill in the name of the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the name of the debtor in the in re: space provided and the name of the bankruptcy case number. If you received a notice of the case from the court, all of this information is near the top of the notice.

**Information about Creditor:**
If not already pre-printed, complete this section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this proof of claim replaces or amends a proof of claim that was already filed, check the appropriate box on the form.

1. **Basis for Claim:**
Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in your social security number and the dates of work for which you were not paid.

2. **Date Debt Incurred:**
Fill in the date the debt was first owed by the debtor. Use the format MMDDYY (ie 100196 for October 1, 1996).

3. **Court Judgments:**
If you have a court judgement for this debt, state the date the court entered the judgment.

4. **Classification of Claim:**
Check either Secured, Unsecured Nonpriority or Unsecured Priority as appropriate. (See DEFINITIONS above.)

5. **Amount of Claim:**
Insert the amount of claim at the time the case was filed in the appropriate box based on your selected Classification of Claim in item 4. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

**6.7.8.   Please read - Important information.**

Upon completion of this claim form, you are certifying that the statements herein are true.

*Be sure to date the claim and place original signature of claimant or person making claim for creditor where indicated at the bottom of the claim form. Please type or print name of individual under the signature. Be sure all items are answered on the claim form. If not applicable, insert "Not Applicable".*

RETURN CLAIM FORM (WITH ATTACHMENTS, IF ANY). IF A CHAPTER 13 CASE INCLUDE A SECOND COPY WITH ANY ATTACHMENTS.

U.S. BANKRUPTCY COURT
ATTN: CLAIMS
824 MARKET STREET
5TH FLOOR
WILMINGTON, DELAWARE 19801

**Attachment A to Proof of Claim Submitted by Gulf Pacific America Inc.**

On April 2, 2001 (the "Petition Date"), the date on which these Chapter 11 proceedings were commenced on behalf of *inter alia* W.R. Grace & Co ("Grace") and Creative Food'N Fun Company ("Creative"), Gulf Pacific America, Inc. ("GPA") was the owner of that certain real property located at 1029 Highway 280 Bypass, Phenix City, Alabama (the "Premises") as successor in interest to Corvette Land Company, N.V. The Premises were subject to that certain Lease dated October 16, 1981 (the "Lease") between Corvette Land Company, N.V. as landlord and Del Taco Corporation as tenant. A copy of the Lease is attached hereto as Exhibit A-1. Creative is the successor in interest to Del Taco Corporation under the Lease. The obligations of the tenant were guaranteed by Grace under that certain Lease Guaranty Agreement dated October 16, 1981 (the "Guaranty"). A copy of the Guaranty is attached hereto as Exhibit A-2.

Under that certain Sublease dated August 25, 1997 (the "Sublease"), between Creative and Hua Xing Zhou and Li G. Yang dba China Buffet ("Subtenant"), Creative subleased the Premises to Subtenant. On August 23, 2000, the improvements on the Premises were totally destroyed by fire. When Subtenant failed or refused to rebuild the improvements and abandoned the Premises, Creative terminated the Sublease and retook possession of the Premises.

Under the Lease, Creative was obligated to maintain the Premises in good condition, reasonable wear and tear excepted, and to restore the improvements on the Premises in the event of fire or other casualty loss. Creative elected not to do so and, following the commencement of these reorganization proceedings, elected to reject the Lease. An order rejecting the Lease was entered in these reorganization proceedings effective as of the Petition Date.

GPA's unsecured nonpriority claim has two separate components. The first is comprised of damages resulting from Creative's failure to restore the Premises as was required under the Lease. FM Global, which insured the improvements against fire and other casualty, has adjusted the loss in the sum of $292,659. It has further agreed to pay under the terms of the policy the sum of $119,494 to GPA and Creative, as their interests may appear, and GPA and Creative have agreed by stipulation that the insurance proceeds in the sum of $119,494 shall be paid over to GPA in accordance with the rights of GPA and the obligations of Creative under the Lease. Provided that insurance proceeds in the sum of $119,494 are in fact paid over to GPA, GPA accordingly submits an unsecured nonpriority claim for such damages equal to the excess of $292,659 over $119,494, or the sum of $173,165.

The second is comprised of damages resulting from the rejection of the Lease by Creative. Such damages consist of $34,772, comprised of the following:

(a)    Rent reserved under the Lease in the sum of $2,788.50 per month for the twelve (12) month period following rejection, or $33,462.

(b)    Additional rent reserved under the Lease for real property taxes, which Creative was obligated to pay under the Lease as additional rent, for the twelve (12) month period following rejection in the aggregate amount of $1,110.

LA 518176_1

(c)    Insurance premiums for general commercial liability insurance, which Creative was obligated to pay under the Lease as additional rent, for the twelve (12) month period following rejection in the aggregate amount of $200.

GPA's aggregate unsecured priority claim is therefore $207,937.

LA 518176_1



**EXHIBIT A-1**

| ARTICLE | | PAGE |
|---|---|---|
| 1. | Premises............................................. | 1 |
| 2. | Warranties.......................................... | 1 |
| 3. | Term................................................ | 1 |
| 4. | Rent................................................ | 1 |
| 5. | Public Utilities, Taxes and Assessments........... | 3 |
| 6. | Use of Premises.................................... | 4 |
| 7. | Fixtures and Equipment............................. | 4 |
| 8. | Tenant's Duty to Maintain.......................... | 4 |
| 9. | Insurance.......................................... | 4 |
| 10. | Damage and Destruction of Premises............... | 5 |
| 11. | Alterations........................................ | 6 |
| 12. | Assignment and Subletting.......................... | 6 |
| 13. | Quiet Enjoyment.................................... | 7 |
| 14. | Landlord's Remedies Upon Breach.................. | 7 |
| 15. | Default by Landlord................................ | 9 |
| 16. | Subordination...................................... | 10 |
| 17. | Eminent Domain..................................... | 10 |
| 18. | Abandonment........................................ | 12 |
| 19. | Laws and Regulations............................... | 12 |
| 20. | Signs.............................................. | 12 |
| 21. | Surrender of Premises.............................. | 12 |
| 22. | Attorneys' Fees.................................... | 13 |
| 23. | Notices............................................ | 13 |
| 24. | Title Insurance.................................... | 13 |
| 25. | Mechanics' Liens................................... | 13 |
| 26. | Option to Extend................................... | 14 |
| 27. | Estoppel Certificate............................... | 14 |
| 28. | Short Form Lease................................... | 14 |
| 29. | Amendment and Modification......................... | 14 |
| 30. | Waiver of Breach or Default........................ | 15 |

11.  Non-Disturbance by Existing Lender or
     or Lienholder.................................  15

12.  General Provisions.............................  15

     Exhibit "A"...........Transaction Description

     Exhibit "B".........Plot Plan

     Exhibit "C".........Memorandum of Lease

     W.R. Grace & Co. Guaranty

THIS LEASE (hereinafter referred to as this "Lease"), dated as of the date set forth in Exhibit "A", attached hereto and by this reference incorporated herein, is made and entered into by and between the person or entity named as Landlord in Exhibit "A" (hereinafter referred to as "Landlord") and DEL TACO CORPORATION, a Delaware corporation (hereinafter referred to as "Tenant").

### 1.   Premises.

Landlord hereby leases to Tenant, and Tenant hereby leases from Landlord, that certain real property (hereinafter referred to as the "Property") described in Exhibit "A", together with the Improvements from time to time situated on the Property (being hereinafter referred to individually as the "Improvement" and collectively as the "Improvements"). The Property comprises an area of approximately the number of square feet set forth in Exhibit "A" and is delineated in orange on the plot plan attached hereto, marked Exhibit "B", and made a part hereof by this reference. For the sake of convenience, except when the context provides otherwise, the Property and the Improvements are collectively herein called "Demised Premises".

### 2.   Warranties.

Landlord warrants the following as of the execution of this Lease:

   (a).   That Landlord is the owner of the fee interest in the Property.

   (b).   That Landlord does not know of any actual, pending or threatened condemnation of the Demised Premises.

### 3.   Term.

The term of this Lease shall commence on the execution date hereof and expire twenty-five (25) years after the first day of the month following the date the Short Form Lease referred to in Paragraph 28 hereof is filed for record. The day of the month on which the Short Form Lease is filed for record is hereinafter referred to as the "True Commencement Date."

### 4.   Rent.

### 4.1   Minimum Rental.

As hereinafter provided, Tenant shall pay to Landlord without any deduction or set-off whatsoever except to the limited extent permitted in Paragraph 15.1 hereof, as minimum monthly rental for the Demised Premises (hereinafter referred to as the "Minimum Rental"), one-twelfth of the amount set forth in Exhibit "A" as "Annual Minimum Rental." The obligation to pay Annual Minimum Rental shall commence on the True Commencement Date. Monthly installments of Annual Minimum Rental shall be paid in advance on the first day of each month after the True Commencement Date during the term hereof (except that an appropriately prorated installment of Annual Minimum Rental shall be paid on the True Commencement Date for any partial month caused by the fact that the True Commencement Date is not the first day of a month.

**4.2**  Percentage Rental.

(a)  In addition to the Annual Minimum Rental for which provision is above made, Tenant shall pay to Landlord, at the time and in the manner herein specified, percentage rental in an amount equal to five percent (5%) of the amount of Tenant's gross sales (as herein defined) made in, upon or from the Demised Premises during each lease year of the term hereof (hereinafter referred to as "Percentage Rental"), less the aggregate amount of the Annual Minimum Rental previously paid by Tenant for said lease year.

(b)  The Percentage Rental shall be computed at the expiration of each whole or partial month during the term of this Lease after the True Commencement Date and, on or before fifteen (15) days following the close of each such month, Tenant shall pay to Landlord the amount of the Percentage Rental, less the installment of Annual Minimum Rental paid for such whole or partial month. The Percentage Rental payments shall be accompanied by a statement of Tenant, certified by an officer of Tenant to be correct, showing gross sales and deductions for the applicable period.

(c)  In addition to the monthly statements for which provision is above made, Tenant shall prepare and submit to Landlord, within thirty (30) days after the close of each lease year, a statement of gross sales for the preceding lease year prepared on the same basis as the monthly statements are prepared.  If the amounts of rent for said year actually paid by Tenant exceed (or are less than, as the case may be) five percent (5%) of the gross sales as so computed on a twelve (12) month basis, then such excess rental payments shall be refunded by Landlord to Tenant (and any shortfall in rental payments shall be paid by Tenant to Landlord), provided, however, Tenant shall never pay less for any lease year than the Annual Minimum Rental.

(d)  The term "Lease Year," as used herein, is intended to mean each twelve (12) calendar month period during the term of this Lease, the first such twelve (12) month period commencing with the first day of the first full month following the True Commencement Date as defined in Article 3 of this Lease (but such first Lease Year shall also include any partial month if the True Commencement Date does not fall on the first day of a month) and ending with the last day of the preceding month in the next succeeding calendar year.

(e)  "Gross sales", as used herein, is defined to be the selling price of all goods and services sold (excluding commissions from any coin operated vending machines other than food vending machines) in, upon or from the Demised Premises by Tenant whether upon credit or for cash, but excluding therefrom any goods or services furnished or sold to employees, rebates and/or refunds to customers, food or services given for promotional purposes on in replacement of any goods or services already sold, and the amount of any sales taxes or other similar taxes.

(f)  Tenant shall keep, or cause to be kept, full, complete and proper books, records and accounts of its gross

sales and credits, and said books, records and
accounts, including any sales tax reports that Tenant
may be required to furnish to any governmental agency,
shall at all reasonable times be open to the
inspection of Landlord, Landlord's auditor or other
authorized representative or agent.  If any such
inspection or audit conducted by Landlord shall
disclose that any statement of gross sales submitted
by Tenant to Landlord in accordance with the terms of
this Lease understated gross sales to the extent of at
least three percent (3%) thereof, Tenant shall, as
additional rental, with the rental payment next due
reimburse Landlord for all costs and expenses
reasonably incurred by Landlord in making such audit
and inspection.  Percentage Rental shall be
recalculated based upon the gross sales determined by
such audit.  Any Percentage Rental determined to be
due to Landlord by reason of any understated gross
sales shall be paid by Tenant to Landlord with the
rental payment next due.

5.  **Public Utilities, Taxes and Assessments.**

5.1 **Additional Rental.**

   Tenant shall pay all water, light, power, electricity, gas,
telephone or other utility charges relating to the Demised
Premises, and Landlord shall have no responsibility therefor.
Tenant shall also pay, as additional rental, on or before ten
(10) days before the due date of such tax or assessment, the
amount of all real property taxes and assessments applicable or
allocable to the Demised Premises during any full or partial
year during the term hereof after the True Commencement Date.
Landlord shall deliver to Tenant a true copy of the current tax
bill or notice of assessment promptly after Landlord's receipt
thereof.   Provided, however that Landlord shall be entitled to
notify and direct the appropriate State, County and (where
applicable) City or other taxing authorities to forward
directly to Tenant (at the address for notice set forth herein)
all ad valorem real property tax bills and notices of
assessments with respect to the Demised Premises for the year
in which the True Commencement Date occurs and for all years
subsequent thereto during the term of this Lease, and receipt
by Tenant of such tax bills and notices of assessments shall be
deemed to constitute compliance with the Landlord's obligation
to provide Tenant with copies of tax bills and notices of
assessment.  In the event said taxes or assessments may be paid
in installments, Tenant shall have the right and option to pay
to Landlord the amount of each installment on or before ten
(10) days before the delinquency date of each such
installment.  The term "real property taxes and assessments" is
not intended to include any franchise, estate, inheritance,
succession, capital levy, transfer, net income or excess
profits tax imposed on Landlord.  All real property taxes and
assessments payable for a period partly within and partly
without the term of this Lease shall be prorated between
Landlord and Tenant based upon a thirty (30) day month.

   5.2 **Right to Contest.**

   Tenant shall have the right, at Tenant's sole cost and
expense, to contest the legality or validity of any taxes,
assessments or other public charges to be paid hereunder by
Tenant.  Landlord shall, at the request of Tenant, execute or
join in the execution of any instrument or documents reasonably
necessary in connection with any such contest.  Tenant shall be
entitled to any adjustment in the tax or any refund of taxes
resulting from said contests which may have been paid by Tenant.

5.3    <u>Payment of Personal Property Taxes</u>.

Tenant shall pay before delinquency all taxes on all personal property belonging to or used by Tenant on the Demised Premises.

6.    <u>Use of Premises</u>.

Tenant agrees that the Demised Premises shall be used and occupied for the operation of a restaurant business with drive-through capability and for no other purpose or purposes without Landlord's prior written consent, which consent shall not be unreasonably withheld.

7.    <u>Fixtures and Equipment</u>.

Tenant may install in the Demised Premises, at its own cost and expense, any fixtures or equipment it deems necessary for the conduct of its business, which fixtures and equipment may either be purchased or leased. Landlord shall not be responsible for the safe-keeping of any fixtures, equipment and other goods or property of Tenant on the Demised Premises. All furniture, fixtures and equipment heretofore or hereafter installed by Tenant in the Demised Premises regardless of the method in which the same are affixed thereto, shall at all times be and remain the personal property of Tenant and/or the equipment-lessor or conditional seller of such furniture, fixtures and equipment, as the case may be, and shall not be deemed part of the "Demised Premises" as herein defined. Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-seller of such furniture, fixtures and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant. Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-seller, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

8.    <u>Tenant's Duty to Maintain</u>.

Except as provided in Article 10.2 hereinafter set forth, Tenant, at its expense, shall make all repairs as required by applicable governmental agencies and authorities and as shall be reasonably necessary to keep the Demised Premises in good and safe condition and repair, reasonable wear and tear excepted and excepting uninsured causes other than those occasioned by the act, conduct or negligence of Tenant, its agents, employees, subtenants, licensees, concessionaires, and/or contractors.

9.    <u>Insurance</u>.

9.1    <u>Indemnification</u>.

During the term of this Lease, Tenant shall indemnify and save Landlord harmless from any and all liabilities or damages arising from or connected with breach on the part of Tenant in the performance of any covenants or agreements on the part of Tenant to be performed pursuant to the terms of this Lease, or from any negligent acts or omissions of Tenant, its agents or

employees in, on or about the Demised Premises.  Landlord shall
indemnify and save Tenant harmless from any and all liabilities
or damages arising from or connected with a breach on the part
of Landlord in the performance of any covenants or agreements
on the part of Landlord to be performed pursuant to the terms
of this Lease or arising from or connected with any negligent
acts or omissions of Landlord, its agents or employees in, on
or about the Demised Premises.  If Landlord is served as a
party defendant in any action or proceeding covered by this
Paragraph, attorneys selected by Tenant or Tenant's insurance
carrier shall defend Landlord without charge, and Landlord
shall promptly notify Tenant immediately upon said service
being effected.  If Tenant is served as a party defendant in
any action or proceeding covered by this Paragraph, attorneys
selected by Landlord or Landlord's insurance carrier shall
defend Tenant without charge, and Tenant shall promptly notify
Landlord immediately upon said service being effected.

9.2  Public Liability Insurance Limits.

Tenant agrees to maintain or cause to be maintained during
the term hereof, at its own expense, public liability insurance
in the amount of One Million Dollars ($1,000,000.00) Single
Limit Bodily Injury Liability per person and per occurrence,
including Property Damage Liability per occurrence.

9.3  Casualty Insurance Limits.

Tenant shall maintain during the term hereof, at its own
expense, fire, extended coverage, vandalism and malicious
mischief insurance on the Improvements on the Property in an
amount equal to not less than ninety percent (90%) of the full
replacement value (exclusive of foundation and excavation
costs) of such Improvements.

9.4  Waiver of Subrogation Right.

Each party hereby waives its entire right of recovery
against the other for losses which are insured against under
insurance policies carried by each of such parties.

9.5  Verification of Insurance.

Punctually upon written request by Landlord, Tenant shall
provide to Landlord a letter, signed by an officer of Tenant,
verifying that the insurance required by this Lease is in
effect.

10.  Damage and Destruction of Premises.

10.1  Duty of Tenant to Repair Damage Covered by Insurance.

In the event of a total or partial destruction of the
Improvements from any cause covered by the insurance which is
to be maintained by Tenant, Tenant shall forthwith and
diligently repair the same, but such destruction shall not anul
or void this Lease, nor shall rental abate.  Tenant alone shall
have the right to settle claims against insurance companies
arising from a covered casualty.  If there is total or partial
destruction of the Improvements during the last five (5) years
of the term hereof, or any extension or renewal thereof, Tenant
may elect not to repair or restore the Improvements, but may
terminate this Lease by paying the insurance proceeds to
Landlord.

10.2   Duty of Tenant to Repair Damage not Covered by
       Insurance.

Except as set forth in Section 10.3 hereof, in the event of
damage or destruction by a casualty other than a casualty which
is to be insured under the insurance referred to hereinabove,
Landlord may restore the Demised Premises, and the Rental shall
be abated until said restoration has been completed, or at
Landlord's option, Landlord may elect to terminate this Lease
and thereupon be released from further obligation hereunder by
giving written notice thereof to Tenant within twenty (20) days
after the occurrence of such casualty unless Tenant elects to
restore the Demised Premises by delivering written notice of
such election to Landlord within twenty (20) days after the
receipt of Landlord's written election to terminate the Lease.
If Tenant elects to restore, Tenant shall, as soon as
reasonably possible, commence and proceed diligently to restore
the Demised Premises substantially to the condition thereof
immediately prior to such damage or destruction, and the Rental
shall be abated until said restoration has been completed. If
neither party elects to restore the Demised Premises, this
Lease shall be terminated, and Landlord and Tenant shall be
released from further obligation hereunder, except that
Landlord shall be obligated to repay Tenant any unused prepaid
rent paid to Landlord.

10.3   Duty of Tenant to Repair Damage Resulting from
       Negligence.

Notwithstanding anything contained herein to the contrary,
in the event of damage or destruction to the Demised Premises
occasioned by the negligent or willful acts or omissions of
Tenant, its agents, employees, subtenants, licensees,
concessionaires, or independent contractors, whether or not
covered by insurance, Tenant, at no cost to Landlord, shall
forthwith and diligently repair and reconstruct the Demised
Premises to substantially the condition in which it existed
immediately prior to such damage or destruction, and rental
shall not abate. It is understood and agreed by Landlord and
Tenant that any negligent or willful acts or omissions in
connection with the construction of the Improvements, and any
latent defects in the Improvements, shall be attributed to and
deemed to be, for purposes of this Section 10.3, the negligent
or willful acts or omissions of Tenant.

11.   Alterations.

Tenant shall not make, or suffer to be made, any repairs
to, or alterations of, the Improvements in excess of Five
Thousand Dollars ($5,000.00) value without the written consent
of Landlord first had and obtained, and any additions to, or
alterations of, the Improvements shall become at once a part of
the realty and belong to Landlord. If written consent of
Landlord to any such proposed repairs or alterations by Tenant
shall have been obtained, Tenant agrees to advise Landlord in
writing of the date upon which such repairs or alterations will
commence. Tenant agrees to save and hold Landlord free and
harmless against any liability, loss or damage (and to defend
Landlord by attorneys of Tenant's selection, at Tenant's sole
expense) on account of any mechanic's lien claim for work
performed or materials furnished in connection with such
alterations.

12.   Assignment and Subletting.

12.1   Limitation on Assigning and Subletting.

Except as hereinafter provided, Tenant shall not assign, or
otherwise transfer, this Lease, in whole or in part, or any
interest therein, nor sublet or permit occupancy by any party
other than Tenant of all or any part of the Demised Premises,
without the prior written consent of Landlord in each
instance. Any purported assignment or subletting contrary to

the provisions hereof without consent shall be void. The consent by Landlord to an assignment or subletting shall not constitute a waiver of the necessity for such consent to any subsequent assignment or subletting. As additional rent hereunder, Tenant shall reimburse Landlord for reasonable legal and other expenses incurred by Landlord in connection with any request by Tenant for consent to assignment or subletting.

12.2 **Consent to Assign or Sublet.**

Landlord hereby consents to an assignment or subletting by Tenant to a partnership in which Del Taco Corporation, or one of its subsidiaries, is a general partner. Landlord hereby consents to an assignment by Tenant pursuant to a reorganization under which a majority of the capital stock or substantially all of the assets of Tenant are acquired by a publicly owned company, whose shares, are traded through a recognized stock exchange. If Tenant so lets or sublets or makes any such assignment, Tenant shall remain liable hereunder in the same manner and to the same extent as though no lease, sublease or assignment had been made.

12.3 **Landlord's Assignment**

Tenant hereby consents to an assignment or sale of Landlord's interest herein to any party of Landlord's choice. Tenant agrees to deliver to Landlord, or its assignee, an estoppel certificate upon such assignment or sale. In the event of an assignment or sale, Tenant will upon request made within thirty (30) days after such sale or assignment, attorn to the purchaser and recognize the purchaser as the Landlord under this Lease, and notwithstanding such sale or assignment, Tenant's right to quiet possession of the Demised Premises shall not be disturbed so long as Tenant shall pay the rent and observe and perform all of the provisions of this Lease to be observed and performed by Tenant during the unexpired term of this Lease and any renewal or extension thereof.

13. **Quiet Enjoyment.**

Tenant, upon paying the rent herein provided and performing all and singularly the covenants and conditions of this Lease on its part to be performed, shall and may peaceably and quietly have, hold and enjoy the Demised Premises during the term hereof without hindrance or molestation by Landlord, or those claiming through Landlord.

14. **Landlord's Remedies Upon Breach.**

14.1 **Definition of Breach.**

As used in this Lease, "breach" means any of the following: (i) the failure of Tenant to pay or cause to be paid when due any rent, monies or charges required by this Lease to be paid or caused to be paid by Tenant for five (5) days after written demand therefor from Landlord to Tenant; (ii) the failure of Tenant to do or cause to be done any act, other than the payment of rent, monies or charges, required by this Lease to be done or caused to be done by Tenant; or (iii) any (a) attachment, execution or other judicial levy upon the leasehold estate hereunder not vacated within sixty (60) days thereafter, (b) assignment of said leasehold estate for the direct or indirect benefit of creditors of Tenant (except in connection with a secured loan to Tenant), (c) judicial appointment of a receiver or similar officer to take possession of said leasehold estate or the Demised Premises not vacated within sixty (60) days after such appointment, or (d) filing of any petition by, for or against Tenant under any chapter of the

Federal Bankruptcy Act not vacated within sixty (60) days after the filing of such petition.

### 14.2  Right of Tenant to Cure Breach.

Notwithstanding any other provision of this Lease, where the curing of an alleged breach requires more than the payment of money, and the work of curing said breach cannot reasonably be accomplished within the time otherwise permitted herein, and where Tenant has commenced upon said work of curing said breach and is diligently pursuing the same, Tenant shall be, and is, entitled to reasonable time extensions to permit the completion of said work of curing said breach as a condition precedent to any re-entry by Landlord or termination of this Lease by Landlord and any breach that is cured shall not thereafter be grounds for re-entry or for termination.

### 14.3  Landlord's Remedies.

Upon the occurrence of any breach described in this Article 14, Landlord shall have the option to pursue any one or more of the following remedies without any notice or demand whatsoever:

(a) Terminate this Lease, in which event Tenant shall immediately surrender the Demised Premises to Landlord, and if Tenant fails so to do, Landlord may, without prejudice to any other remedy which it may have for possession or arrearages in rent, enter upon and take possession of the Demised Premises and expel or remove Tenant and any other person who may be occupying such Demised Premises or any part thereof, by force if necessary, without being liable for prosecution or any claim of damages therefor; and Tenant agrees to pay to Landlord on demand the amount of all loss and damage which Landlord may suffer by reason of such termination.

(b) Without terminating this Lease, enter upon and take possession of the Demised Premises and expel or remove Tenant and any other person who may be occupying such Demised Premises or any part thereof, by force if necessary, without being liable for prosecution or any claim for damages therefor, and relet the Demised Premises for Tenant's account, and receive the rent therefor; and Tenant agrees to pay to the Landlord on demand any deficiency that may arise by reason of such reletting.  Tenant and Landlord agree, however, that Landlord's rights and remedies hereunder are optional and fully within the discretion of Landlord, and that Tenant and Landlord agree that whatever Rent may be received by Landlord, pursuant to a reletting, shall be conclusively presumed to be reasonable, and Tenant shall have no defense to the payment of any deficiency that may arise by reason by such reletting, if any.

(c) Enter upon the Demised Premises by force if necessary without being liable for prosecution or any claim for damages therefor, and do whatever Tenant is obligated to do under the terms of this Lease; and Tenant agrees to reimburse Landlord on demand for any expense which Landlord may incur in thus effecting compliance with Tenant's obligations under this Lease, and Tenant further agrees that Landlord shall not be liable for any damages resulting to the Tenant from such action, whether caused by the negligence of Landlord or otherwise.

Pursuit of any of the foregoing remedies shall not preclude pursuit of any of the other remedies herein provided and any

other remedies provided by law, nor shall pursuit of any remedy
herein provided constitute a forfeiture or waiver of any rent
due to Landlord hereunder or of any damages accruing to
Landlord by reason of the violation of any of the terms,
provisions and covenants herein contained.  Forbearance by
Landlord to enforce one or more of the remedies herein provided
upon a breach shall not be deemed or construed to constitute a
waiver of such breach.  No act or thing done by the Landlord or
its agents during the term hereby granted shall be deemed an
acceptance of the surrender of the Demised Premises, and no
agreement to accept a surrender of the Demised Premises shall
be valid unless in writing and signed by Landlord.

### 14.4  Notice of Breach.

In the event a breach of this Lease is other than a failure
of Tenant to pay or cause to be paid, when due, any rent,
monies or charges required hereunder, Landlord shall not
exercise any of the remedies above described unless and until
Landlord shall have delivered to Tenant a written notice
describing with reasonable particularity such breach, and the
same is not cured within thirty (30) days (or such longer
period as said notice may set forth) after said delivery.

### 14.5  Remedies are Cumulative.

The remedies provided in this Article 14 are not exclusive,
but are supplemental and additional to any other legal or
equitable rights and remedies Landlord may have for Tenant's
breach hereunder.

### 15.    Default by Landlord.

### 15.1  Tenant's Remedies.

Provided Tenant is not in breach hereunder, should the
Demised Premises at any time during the term of this Lease be
subject to the lien of any deed to secure debt, mortgage,
judgment, assessment, tax or other obligation, whether incurred
before or after the execution of this Lease, which Tenant is
not bound hereunder to pay or discharge, and should Landlord
fail to pay or discharge any obligation which Landlord is
obligated under this Lease to pay or discharge any such obligation,
but Tenant shall not be obligated to do so.  Should Tenant
elect to pay or discharge any such obligation, Landlord shall,
within ten (10) days after demand, reimburse Tenant in the full
amount thereof, together with interest on the sums paid at the
highest rate allowed by law from the date of payment, in
default of which, Tenant shall have the right to deduct from
rent thereafter payable under this Lease all amounts due from
Landlord under this Paragraph until such amounts have been paid
in full.

### 15.2  Period in Which Landlord May Cure Default.

Landlord shall in no event be in default in the performance
of any of Landlord's obligations in this Lease unless and until
Landlord shall have failed to perform such obligations within
thirty (30) days or such additional time as is reasonably
required to correct any such default after notice in writing by
Tenant to Landlord properly specifying wherein Landlord has
failed to so perform.  Such notice of default to be delivered
to Landlord shall be concurrently delivered to any mortgagee of
record under a mortgage or deed to secure debt securing an
obligation of Landlord, as borrower, which mortgagee shall have
the right to correct any such default by Landlord within said
time period in which event Landlord shall not be in default
hereunder.

15.3  Remedies are Cumulative.

The remedies provided in this Article 15 are not exclusive, but are supplemental and additional to any other legal or equitable rights and remedies Tenant may have for Landlord's breach hereunder.

16.  Subordination.

Except as hereinafter provided, this Lease may, at Landlord's option, be made subordinate to any mortgage or deed to secure debt now or hereafter placed upon the Demised Premises and to any and all advances made on the security thereof and to all renewals, replacements and extensions thereof. Tenant shall, upon request by Landlord, execute and deliver such instruments as may be necessary or convenient to evidence such subordination. The subordination of this Lease to any such mortgage or deed to secure debt shall be subject to the following conditions, which shall be set forth in any document evidencing this subordination which Tenant is requested to sign: (i) in the event of the sale of the Demised Premises upon foreclosure or upon the exercise of a power of sale under any such mortgage or deed to secure debt, Tenant will upon request made within thirty (30) days after such sale, attorn to the purchaser and recognize the purchaser as the Landlord under this Lease; and (ii) notwithstanding such subordination, Tenant's right to quiet possession of the Demised Premises shall not be disturbed so long as Tenant shall pay the rent and observe and perform all of the provisions of this Lease to be observed and performed by Tenant during the unexpired term of this Lease and any renewal or extension thereof.

17.  Eminent Domain.

17.1  Termination Upon Taking of Whole.

If the whole of the Demised Premises is acquired or condemned by eminent domain, inversely condemned or sold in lieu of condemnation for any public or quasi-public use or purpose ("Condemned"), then the term of this Lease shall terminate as of the date of title vesting in such proceeding. Both Landlord and Tenant shall immediately notify the other of any such occurrence.

17.2  Termination Upon Partial Taking.

If a portion of the Demised Premises shall be condemned and the portion not so taken would not, in the reasonable judgment of Tenant stated in a notice to Landlord within thirty (30) days after such taking, be adequate for the continued operation of Tenant's business, either unrestored or as to be restored by Landlord as hereinafter in this Paragraph 17.2 provided (and if Landlord shall not elect to add contiguous land as provided in Paragraph 17.3), then this Lease shall be deemed to have terminated as of the date said Demised Premises are so taken. In the event of any taking under the power of eminent domain which does not terminate this Lease as aforesaid, any obligation of Tenant under this Lease to pay rent and all of the other provisions of this Lease shall remain in full force and effect, except as provided in this Paragraph 17.2. Within a reasonable time after it is determined by Tenant, pursuant to the foregoing provisions, that such taking will not terminate this Lease if the Demised Premises are restored as hereinafter set forth, Landlord, shall, at Landlord's own cost and expense, proceed with due diligence to restore such part of the Property as is not taken and any contiguous land which Landlord may elect to add as provided in Paragraph 17.3, to as near the

former condition of the original Demised Premises including parking area and drive-through capability as the circumstances will permit, and Tenant shall continue to utilize said Demised Premises for the operation of its business. Upon completion of such restoration, (i) the Minimum Rental provided in this Lease shall be adjusted to an amount which bears the same ratio to the Minimum Rental in effect immediately prior to such taking under the power of eminent domain as the cash fair market value of the Demised Premises immediately after such taking bears to the cash fair market value of the Demised Premises immediately prior to such taking and (ii) the Demised Premises shall be reduced by the Property so taken.

### 17.3  Election to Terminate Upon Partial Taking.

If a portion of the Demised Premises shall be condemned and the remaining portion would not, in the reasonable judgment of Tenant, be adequate for the continued operation of Tenant's business if restored by Landlord as provided in Paragraph 17.2, then Landlord shall have the election to add to the Demised Premises an amount of land contiguous to the Demised Premises substantially equal in area to the portion taken, which when used with that portion of the original Demised Premises not so taken will, in the reasonable judgment of Tenant, be adequate for the continued operation of Tenant's business. Said election shall be exercisable within ninety (90) days after the date of possession is taken by eminent domain, and Landlord shall so notify Tenant in writing.

### 17.4  Interference or Destruction of Drive-Through Capability and Adjacent Parking.

Notwithstanding any provision of this Article 17 to the contrary, any partial taking under the power of eminent domain which materially interferes with or destroys the Tenant's drive-through capability or adjacent parking shall be deemed to render the remainder of the Demised Premises inadequate for the continued operation of Tenant's business.

### 17.5  Landlord's Award.

If the Demised Premises are wholly or partially condemned, subject to the provision of Article 17.6, Landlord shall be entitled to the entire award of such condemnation, and Tenant waives any right or claim to any part thereof from Landlord or the condemning authority.

### 17.6  Tenant's Award.

Tenant shall have the right to reclaim and recover from the condemning authority but not from Landlord, such compensation as may be separately awarded or recoverable by Tenant in Tenant's own right on account of any and all costs or loss (including loss of business) to which Tenant might be put in removing Tenant's merchandise, furniture, fixtures, leasehold improvements and equipment to a new location, or any other loss except the loss of Tenant's leasehold estate.

### 17.7  Apportionment of Rent.

If this Lease is terminated as provided in this Article 17, all Rent shall be paid up to the date of title vesting in the public authority, and Landlord shall make an equitable refund to Tenant of any rent or other amounts paid by Tenant which are applicable to any period after that date and not yet earned.

18.   **Abandonment.**

Tenant agrees not to vacate or abandon the Demised Premises at any time during the term hereof. Should Tenant vacate or abandon said Demised Premises or be dispossessed by process of law or otherwise, such abandonment, vacation or dispossession, if continued for thirty (30) days, shall be a breach of this Lease and, in addition to any other rights which Landlord may have, Landlord may remove any personal property belonging to Tenant which remains on the Demised Premises and store the same, such removal and storage to be for the account of Tenant.

19.   **Laws and Regulations.**

Tenant, at Tenant's own cost and expense, shall comply promptly with all laws, rules and orders of all federal, state and municipal governments or departments which may be applicable to the Demised Premises.

20.   **Signs.**

Tenant shall have the right to affix and maintain on the Demised Premises such signs and advertising matter as Tenant may deem necessary for the operation of its business; provided, however, that Tenant shall not affix any signs which are in violation of any applicable law or ordinances.

21.   **Surrender of Premises.**

21.1   **Upon Termination.**

Tenant shall, upon termination of the term hereof or any extensions or renewals thereof, or any earlier termination of this Lease, surrender the Demised Premises to Landlord.

21.2   **Removal of Fixtures, Furniture, Etc.**

Fixtures, furniture, equipment and signs, which have been or may be installed in the Demised Premises prior to or during the term hereof at the cost of Tenant shall not be deemed to become a part of the Demised Premises and may be removed by Tenant from the Demised Premises at or before the end of the term hereof if Tenant be not then in breach hereunder. Tenant shall, at its own cost and expense, repair any and all damage to the Demised Premises resulting from or caused by such removal. Tenant shall have thirty (30) days after termination of this Lease for any reason whatsoever to effect such removal and repair; provided, however, no such fixtures or equipment placed on or in the Demised Premises by Tenant, and which remain the property of Tenant, may be removed at a time when Tenant is in breach in payment of Rent or any other money payable hereunder. Tenant shall not be required to pay Rent for the thirty (30) day removal period.

21.3   **Removal of Signs.**

Anything to the contrary herein notwithstanding, Tenant shall have the right at any time to remove its signs and other equipment bearing any of its trade names, trademarks or service marks whether registered or unregistered. Landlord shall have no right to use and shall not have or acquire any interest in any such trade name, trademark or service mark by reason of any of the terms or provisions of this Lease, or by reason of use of the same on the Demised Premises.

21.4  <u>Owner's Waiver.</u>

Landlord agrees promptly to execute a so-called Owner's Waiver and Agreement and to cause any encumbrance holder or owner in connection with the Demised Premises to promptly execute a similar form of Waiver and Agreement in order to subordinate the interests of Landlord and such encumbrance holders or owners to the security interests of any equipment-lessor or equipment-seller of furniture, fixtures and equipment installed in the Demised Premises, or any financing entity which finances the purchase or lease by Tenant of the same.

22.  <u>Attorneys' Fees.</u>

Should either party hereto institute any action or proceeding in court to enforce any provision hereof or for damages by reason of any alleged breach or default of any provision of this Lease or for a declaration of such party's rights or obligations hereunder, or for any other judicial remedy, the prevailing party shall be entitled to receive from the losing party such amount as the court may adjudge to be reasonable attorneys' fees for the services rendered to the party finally prevailing in such action or proceeding, including appeals therefrom.

23.  <u>Notices.</u>

All notices to be given to Tenant may be given in writing personally or by depositing the same in the United States Mail, postage prepaid, certified or registered, and addressed to Tenant in care of Del Taco Corporation, 1100 Spring Street, N.W., Atlanta, Georgia 30309, or such other address as Tenant may from time to time designate in writing, in the manner provided herein.  Notices by Tenant to Landlord shall be in writing and deposited in the United States Mail, postage prepaid, certified or registered, and addressed to Landlord at the address set forth in <u>Exhibit "A"</u>, or such other address as Landlord may from time to time designate in writing, in the manner provided herein.

24.  <u>Title Insurance.</u>

Landlord agrees to provide Tenant, at Landlord's sole expense and cost, with a leasehold Policy of Title Insurance insuring Tenant's leasehold interest in and to the Property with no exceptions other than those contained in Tenant's existing owner's policy of title insurance, exceptions arising subsequent to the effective date of such owner's policy of title insurance, exception for loss or damage caused by Tenant's violation of the terms of this Lease, and exceptions approved in writing by Tenant.

25.  <u>Mechanics' Liens.</u>

Tenant covenants to keep the Demised Premises at all times during the term hereof free of mechanics' liens and other liens of like nature other than liens created or claimed by reason of any work done by or at the instance of Landlord, and at all times fully to protect and indemnify Landlord against all such liens or claims which may ripen into such liens and against all attorney's fees and other costs and expenses growing out of or incurred by reason of or on account of any such claim or lien, and Landlord agrees to do likewise with respect to work done by or for Landlord.  All amounts so paid by Landlord or Tenant, together with interest thereon at the highest rate permitted by law from time of payment until repayment, shall be repaid by the other.  If the Tenant or Landlord shall desire to contest

any mechanic's lien claim, the contesting party shall furnish to the other adequate security in the amount of the claim or a bond of a responsible corporate surety in such amount as will permit such lien claim to be removed of record. If a final judgment establishing the validity or existence of a lien for any amount is entered, the responsible party shall pay and satisfy the same at once.

26.    Option to Extend.

26.1    Term.

Landlord hereby grants to Tenant an option to extend this Lease after the expiration of the initial term hereof for the number of additional periods set forth in Exhibit "A", each of which shall be for the number of years set forth in Exhibit "A", at the same rental and upon the same terms and conditions as contained in this Lease. The options of Tenant to extend the term of this Lease for any or all of the later option periods shall be exercisable only if the option to extend the term of this Lease for the immediately preceding option period has been exercised.

26.2    Notice of Exercise of Option.

To exercise Tenant's options to extend, Tenant must notify Landlord in writing on or before sixty (60) days before the date of expiration of the within Lease (for the first option period) or of the immediately preceding option period that it elects to exercise said option; provided, however, that if Landlord desires an earlier determination concerning Tenant's exercise of any option period, Landlord may serve a demand upon Tenant in writing at any time within one hundred eighty (180) days from the date of expiration of said Lease or prior option period, for a determination by Tenant concerning exercise of said option, in which event, to exercise the option, Tenant must notify Landlord in writing within thirty (30) days from receipt of said demand from Landlord that it elects to exercise said option.

27.    Estoppel Certificate.

Tenant shall at any time and from time to time, upon written request of Landlord, deliver a certificate to Landlord or to any proposed or present mortgagee, purchaser, or successor in interest certifying the commencement and expiration dates of the Lease term and that this Lease is then in full force and effect and setting forth the nature and amount of modifications, defenses or offsets, if any, claimed by Tenant.

28.    Short Form Lease.

A Short Form Lease, in the form attached hereto as Exhibit "C" and by this reference made a part hereof, suitable for recording in the Office of the Clerk of the Superior Court of the County in which the Property is located, shall be executed concurrently with this Lease and promptly recorded. Said Short Form Lease shall incorporate the legal description of the Demised Premises described in Exhibit "A".

29.    Amendment and Modification.

This Lease may be modified or amended only by a writing duly authorized and executed by both Landlord and Tenant. It may not be amended or modified by oral agreements or understandings between the parties or by any acts or conduct of the parties with reference thereto unless reduced to writing.

The Article and Paragraph headings used herein are for convenience only and shall not be resorted to for purposes of interpretation or construction hereof.

30. **Waiver of Breach or Default.**

Any waiver of or consent to a breach or default in any of the terms or conditions of this Lease which may be given to the Tenant or the Landlord shall not extinguish any covenant or condition of this Lease nor constitute a waiver of any subsequent breach or default thereof.

31. **Non-Disturbance by Existing Lender or Lienholder.**

This Lease shall be contingent upon Landlord providing Tenant with evidence satisfactory in form and content to Tenant, within thirty (30) days from the date of execution hereof, that any existing Lender or Lienholder which has a secured interest in the Property has agreed to recognize and not disturb the tenancy of Tenant while not in breach hereunder, if Landlord defaults under the terms of any mortgage, deed to secure debt or other security instrument relating to the Property, and said lender or lienholder forecloses on the Property and takes possession thereof.

32. **General Provisions.**

32.1 **Hold Over.**

Any holding over after the expiration of the term hereof, including extensions thereto, shall be construed to be a tenancy from month-to-month only, at the same rental, terms and conditions as are herein set forth.

32.2 **Gender.**

All personal pronouns used in this Lease shall include the other genders whether used in the masculine, feminine or neuter gender, and the singular shall including the plural whenever and as often as may be appropriate.

32.3 **Successors.**

All of the terms, covenants and conditions hereof shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors, assigns and sublessees of the parties hereto, provided that nothing in this Paragraph shall be deemed to permit any subletting or assignment contrary to the provisions of Article 12 hereof.

32.4 **Tenant.**

All references to Tenant contained herein also refer to any successors, assignees or sublessees of Tenant.

32.5 **Consent.**

Whenever Landlord's or Tenant's respective consents or approvals are required under any provisions of this Lease, Landlord and Tenant, respectively, agree not unreasonably to withhold such consents or approvals.

32.6 **Choice of Law.**

This Lease is made and delivered within the State of Georgia and shall be construed and enforced in accordance with the laws of the State of Georgia.

32.7  Payment of Broker's Fees.

Landlord shall be solely responsible for the payment of any and all broker's fees relating to this lease transaction.

32.8  Accord and Satisfaction.

No payment by Tenant or receipt by Landlord of a lesser amount than the Rent payment herein stipulated shall be deemed to be other than on account of the Rent, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as Rent be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such Rent or pursue any other remedy provided in this Lease.

32.9  Entire Agreement.

This Lease sets forth all the covenants, promises, agreements, conditions and understandings between Landlord and Tenant concerning the Demised Premises, and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between them other than as are herein set forth. Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Lease shall be binding upon Landlord or Tenant unless reduced in writing and signed by them.

32.10  Severability.

If any term, covenant, condition or provision of this Lease, or the application thereof to any person or circumstance shall to any extent be held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms, covenants, conditions and provisions of this Lease, or the application thereof to any person or circumstance, shall remain in full force and effect and shall in no way be affected, impaired or invalidated thereby.

32.11  Interest.

Any and all sums due hereunder by Tenant shall bear interest at the rate of ten and one-half percent (10.5%) per annum, or the maximum rate permitted by law, if lower, from the date due until paid, and said interest shall be construed to be Additional Rent hereunder.

IN WITNESS WHEREOF, the parties hereto have executed this Lease under seal as of the date first above written.

LANDLORD:

CORVETTE LAND COMPANY N.V.

Dated  October 16    , 19 81

By: _____
Title:    ATTORNEY in FAC.

(SEAL)

TENANT:

DEL TACO CORPORATION, a
   Delaware corporation

Dated: October 16   , 19 81

By: _____
   R. J. (Wyman)
Title:  President

DTC No. 3-3082

EXHIBIT "A"

(Transaction Description)

1. **Date of Lease:**    October 16                    , 19 81

2. **Name of Landlord:**  CORVETTE LAND COMPANY N.V.

3. **Description of Property:**  All that tract or parcel of land
   located in Land Lot        of Phoenix City        of
   of  Russell County, Ala         and described in the
   Addendum attached to and by reference incorporated in this
   Exhibit "A".

4. **Square Footage of the Property:**  14,671

5. **Annual Minimum Rental:**  $ 33,462.00 ·

6. **Address for Notice to Landlord:**    Three Brookhollow Drive
                                          Santa Ana, CA, 92705

7. **Number of Additional Renewal Periods:**  two (2)

8. **Length (in years) of each Renewal Period:**    five (5)

[SEE ATTACHED ADDENDUM FOR LEGAL DESCRIPTION OF PROPERTY]

Accepted and agreed to by the undersigned as of the Date of
Lease shown above.

LANDLORD:

CORVETTE LAND COMPANY N.V.

By: _____
      Title:
                ATTORNEY IN FACT
                (SEAL)

TENANT:

DEL TACO CORPORATION, a
Delaware corporation

By: _____
      R. W. WYMAN - President

(CORPORATE SEAL)

EXHIBIT "A"
(ADDENDUM)

'.E-#1082

...of land comprising 34 acre, more or less, lying and being in the City of Phenix City, the south half of the northeast quarter of Section 16, Township 17 North, Range 30 East, Russell County, Alabama, and being more particularly described as follows:

FOR THE POINT OF BEGINNING, commence at the southeast corner of the southeast quarter of the northeast quarter of said Section 16, run thence North 04 degrees 49 minutes 45 seconds West a distance of 40.63 feet to an iron pin located at the POINT OF BEGINNING; run thence North 35 degrees 18 minutes West a distance of 100.0 feet to an iron pin; run thence North 54 degrees 36 minutes East a distance of 147.5 feet to an iron pin located on the southwesterly line of the right-of-way of U.S. Highway No. 280 and 431 (a 300 foot right-of-way); running thence southeasterly along said southwesterly line of right-of-way of U.S. Highway No. 280 and 431 and following the curvature thereof along the arc of a curve to the left (said arc having a radius of 5,061.05 feet) a distance of 211 feet to an iron pin; running thence South 54 degrees 36 minutes West a distance of 133 feet to the POINT OF BEGINNING, being labeled Parcel "B" on a plat of survey entitled "Boundary and Topographic Survey", dated October 11, 1978, revised March 1, 1979 and July 10, 1979, bearing the certification of R. L. Faircloth, Alabama Registered Land Surveyor No. 1256.

TOGETHER WITH a nonexclusive easement for the use, benefit and enjoyment of Del Time Corporation and its successors in interest, and their tenants, employees, invitees, agents, independent contractors and customers, for the purpose of vehicular and pedestrian ingress, egress, passage and access to and from the property described hereinabove over, across, and along the following described property:

THAT TRACT OR PARCEL OF LAND lying and being in the southeast quarter of the northeast quarter of Section 16, Township 17 North, Range 30 East, in the City of Phenix City, Russell County, Alabama and being more particularly described as follows:

COMMENCING AT A POINT located north 04 degrees 49 minutes 45 seconds west a distance of 40.63 feet from the southeast corner of the southeast quarter of the northeast quarter of said Section 16; said point also being located south 54 degrees 36 minutes west a distance of 147.5 feet from a point on the southwesterly right-of-way line of U.S. Highway No. 280 and 431 (a 300 foot right-of-way) which point is 201.05 feet northwesterly from the intersection of said southwesterly right-of-way line of U.S. Highway No. 280 and 431 and the Northeasterly right-of-way line of 15th Avenue as measured along said southwesterly right-of-way line of U.S. Highway No. 280 and 431.

FOR THE POINT OF BEGINNING as thus established run thence north 35 degrees 18 minutes west a distance of 21.08 feet to a point; running thence north 56 degrees 57 minutes east a distance of 146.17 feet to a point on said southwesterly right-of-way line of U.S. Highway No. 280 and 431; running thence in a southeasterly direction along said southwesterly right-of-way line of U.S. Highway No. 280 and 431 a distance of 15.08 feet to a point; running thence south 54 degrees 36 minutes west a distance of 165.95 feet to the POINT OF BEGINNING, being depicted as "Ingress/Egress Easement" on plat of survey entitled "Boundary and Topographic Survey", dated October 11, 1978, revised March 1, 1979 and July 10, 1979, bearing the certification of R. L. Faircloth, Alabama Registered Land Surveyor No. 1256.

EXHIBIT A-2

## LEASE GUARANTY AGREEMENT

FOR VALUE RECEIVED the undersigned, W.R. GRACE & CO., a Connecticut corporation ("Guarantor"), hereby unconditionally guarantees to   Corvette Land Company, N.V.
("Lessor"), its successors and assigns, the performance of all of the obligations of DEL TACO CORPORATION, a Delaware corporation ("Lessee"), pursuant to the terms and conditions of that certain Lease dated       October 16     19 81      , between Lessor and Lessee (the "Lease"), with reference to the property located at 1029-280 Bypass, Phenix City, Alabama

The obligations hereunder are independent of the obligations of Lessee and a separate action or actions may be brought against Guarantor without regard to whether Lessee is joined in any such action or actions.

Guarantor authorizes Lessor, without notice or demand and without affecting its liability hereunder, from time to time to modify or amend the Lease in a manner mutually acceptable to Lessor and Lessee.  Lessor may, without notice, assign this Guaranty to any successor to Lessor's interest in the Lease.

Guarantor waives any required notice of default and any right to require Lessor to (a) proceed against Lessee, (b) proceed against or exhaust any security taken from Lessee, or (c) pursue any other remedy in Lessor's power whatsoever.  Until the performance of Lessee under the Lease shall have been performed in full, Guarantor shall have no  right of subrogation; provided, however, Guarantor hereby reserves the right to enforce any remedy which Lessee now has or may hereafter have against Lessor.

Should any action or proceeding be instituted in court to enforce any provision hereof or for damages by reason of any alleged breach of default of any provision of this Guaranty or for a declaration of any party's rights or obligations hereunder, or for any other judicial remedy, the prevailing party shall be entitled to receive from the losing party such amount as the court may adjudge to be reasonable attorney's fees for the services rendered to the party finally prevailing in such action or proceeding, including appeals therefrom.

All rights of Lessor hereunder are separate and cumulative and no one of them, whether exercised or not, shall be deemed to be in the exclusion of any other rights, and shall not limit or prejudice any other legal or equitable rights or remedies which Lessor may have. Lessor shall not be deemed to waive any of its rights or remedies under this Guaranty unless such waiver be in writing and signed by Lessor. Except for applicable Statutes of Limitations, no delay or omission on the part of Lessor in exercising any right shall operate as a waiver of such right or any other right. A waiver of any right on any future occasion.

If any provision of this Guaranty is held to be unenforceable or invalid, the remaining provisions hereof shall nevertheless be carried into effect.

This Guaranty shall inure to the benefit of Lessor, its legal representatives, successors and assigns.

IN WITNESS WHEREOF, the undersigned Guarantor has executed this Guaranty on this __16th__ day of __October__ , 19 81 .

W.R. GRACE & CO.,
a Connecticut corporation

By: _____
     Executive Vice President - Finance

By: _____
     Assistant Treasurer

THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In re:                                    )    Chapter 11
                                          )
W. R. GRACE & CO., et al.,[1]             )    Case No. 01-1139 (JKF)
                                          )    (Jointly Administered)
                     Debtors.             )
                                          )

## STIPULATION RESOLVING CERTAIN OF THE CLAIMS OF GULF PACIFIC AMERICA, INC.

This stipulation is entered into this 15th day of December, 2006 between W. R. Grace &

Co. and its affiliates (collectively, the "Debtors"), and Gulf Pacific America, Inc. ("Gulf

Pacific").

**WHEREAS,** on or about April 2, 2001 (the "Petition Date"), the Debtors, including

W. R. Grace & Co. ("Grace") and W. R. Grace & Co.-Conn. ("Grace-Conn"), filed their

voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code. The

Debtors' bankruptcy cases are pending as case numbers 01-1139 (JKF) through 01-1200 (JKF)

---

1    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.),
     W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon,
     Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc.,
     Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC
     (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a
     Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC
     Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities
     Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary
     Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe,
     Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc.
     (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace
     Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W.
     R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe
     Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai
     Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH,
     Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings
     Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA
     Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental
     Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin &
     Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country
     Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

KAE 11592891.2

(the "Bankruptcy Cases") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

WHEREAS, on April 2, 2001 the Bankruptcy Court issued an Order consolidating the Bankruptcy Cases for administrative purposes only under Case No. 01-1139 (JKF) (the "Jointly Administered Bankruptcy Case").

WHEREAS, on April 22, 2002, the Bankruptcy Court issued its Bar Date Order [Docket No. 1963], which established March 31, 2003 as the bar date for the filing of certain pre-petition (a) non-asbestos, (b) asbestos property damage and (c) medical monitoring claims. The Bar Date Order required claimants to file a separate claim in each of the Bankruptcy Cases for such claim to be effective and asserted against each of the Debtors.

WHEREAS, on or about August 12, 2002, Gulf Pacific timely filed two claims each for $207,937 against the Debtors in their respective Bankruptcy Cases as specified herein:

| Name of Creditor | Against which Debtor entities | Proof of Claim Nos. | Quantity of Claims |
|---|---|---|---|
| Gulf Pacific America, Inc. | W. R. Grace & Co. | 1755 | 1 |
| Gulf Pacific America, Inc. | Creative Food 'N Fun Company | 1756 | 1 |
| | | | 2 Total Claims |

WHEREAS, on January 13, 2005, the Debtors filed their Amended Joint Plan of Reorganization (the "Plan"). To date, the Plan has not been confirmed. The Plan proposes that as of the Effective Date (as that term is defined in the Plan), the Debtors shall be deemed consolidated under the Plan for Plan purposes only. Upon confirmation, each and every claim filed against any of the Debtors shall be deemed filed against the deemed consolidated Debtors and shall be deemed one claim against and obligation of the deemed consolidated Debtors.

2

NOW, THEREFORE, for good and valuable consideration received, the parties hereby stipulate and agree as follows:

1.      Claim number 1755, a copy of which is attached hereto as Exhibit A and made a part hereof, shall remain as Gulf Pacific's sole claim against the Debtors or the Debtors' bankruptcy estate(s).

2.      Claim number 1756 shall be disallowed and expunged from the Claims Register for all purposes (such claim, the "Disallowed Claim"). Notwithstanding any other provision herein, to the extent that the Plan does not, or any other plan or plans of reorganization confirmed in these chapter 11 cases do not, provide for the substantive consolidation of the Bankruptcy Cases (for purposes of distribution on account of allowed claims), the Disallowed Claim shall be reinstated, without requiring any further affirmative action by Gulf Pacific, and Gulf Pacific shall be entitled to pursue all such claims, as appropriate. This Stipulation shall not affect the rights or obligations of the respective parties under the *Order Pursuant to Sections 365 and 554 of the Bankruptcy Code (i) Authorizing and Approving a Procedure for the Rejection of Certain Unexpired Leases of Non-Residential Real Property and (ii) Authorizing the Debtors to Reject Certain Unexpired Leases of Non-Residential Real Property and Executory Contracts* [Docket No. 24].

3.      The Debtors expressly reserve any and every objection that they now have or may have in the future to the substance of the claim number 1755, but forever waive and release any and every objection they may have to the Disallowed Claim on the basis that such claim was improperly or untimely filed in the Bankruptcy Cases or the Jointly Administered Bankruptcy Case, or any of them, or that the claim should have been filed in each of the Bankruptcy Cases.

4.      Each party executing this Stipulation represents that such party has the full authority and legal power to do so. This Stipulation may be executed in counterparts and each

3

such counterpart together with the others shall constitute one and the same instrument. The parties further agree that facsimile signatures hereon shall be deemed to be original signatures. This Stipulation shall be binding upon and inure to the benefit of each of the parties, and upon their respective assignees, successors and/or partners.

5.    The Debtors shall direct the Claims Agent, Rust Consulting, Inc., to mark the Claims Register to reflect the following:

(a)    claim number 1756 shall be disallowed and expunged as outlined herein; and

(b)    claim number 1755 shall remain on the Claims Register as outlined herein.

6.    The parties shall take whatever additional action, if any, is advisable to make sure that Gulf Pacific's claims are treated as outlined herein.

4

**STIPULATED AND AGREED:**

**GULF PACIFIC AMERICA, INC.**

By: _____
One of Their Attorneys

Daniel Slate
Hughes, Hubbard, & Reed LLP
350 South Grand Avenue
Los Angeles, CA 90071-3442

Counsel for Gulf Pacific America, Inc.

**W. R. GRACE & CO., et al.**

By: _____
One of Their Attorneys

Janet S. Baer
Lori Sinanyan
Samuel Gross
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

and

Laura Davis Jones
James E. O'Neill
Curtis A. Hehn
Pachulski, Stang, Ziehl, Young, Jones &
Weintraub PC
919 North Market Street, 16th Floor
P. O. Box 8705
Wilmington, DE  19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in
Possession

Date: December ____, 2006