UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          . Case No. 01-1139(JKF)
                                .
                                .
W.R. GRACE & CO.,               . 5414 USX Tower Building
                                . Pittsburgh, PA  15222
                                .
              Debtor.   .
                                . December 19, 2006
. . . . . . . . . . . . . . . . 11:03 p.m.


TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:             Kirkland & Ellis, LLP
                            By:  JANET BAER, ESQ.
                                 DAVID M. BERNICK, P.C., ESQ.
                                 BARBARA HARDING, ESQ.
                            Aon Center
                            200 East Randolph Drive
                            Chicago, IL  60601

For David T. Austern,       Phillips, Goldman & Spence, P.A.
Future Claimants Rep:       By: DEBRA FELDER, ESQ.
                            1200 North Broom Street
                            Wilmington, DE  19806


Audio Operator:             Cathy Younker


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

<u>APPEARANCES</u> (Cont'd.):

For Asbestos Creditors'          Caplin & Drysdale, Chartered
                                 By:  RITA TOBIN, ESQ.
                                 399 Park Avenue, 27th Floor
                                 New York, NY  10022

                                 Caplin & Drysdale, Chartered
                                 By:  NATHAN D. FINCH, ESQ.
                                 One Thomas Circle, NW
                                 Washington, DC  20005

                                 Campbell & Levine, LLC
                                 By:  MARK T. HURFORD, ESQ.
                                 800 N. King Street
                                 Suite 300
                                 Wilmington, DE  19801

For Official Committee of        Bilzin Sumberg Baena Price
Property Damage Claimants:        & Axelrod LLP
                                 By:  JAY M. SAKALO, ESQ.
                                 Wachovia Financial Center
                                 200 South Biscayne Boulevard
                                 Suite 2500
                                 Miami, FL  33131

For Reaud, Morgan & Quinn        Stutzman, Bromberg, Esserman,
and ELG:                          & Plifka, PC
                                 By:  SANDER L. ESSERMAN, ESQ.
                                      VAN J. HOOKER, ESQ.
                                 2323 Bryan Street, Suite 2200
                                 Dallas, TX  75201

For Ad Hoc Committee             Weil, Gotshal & Manges, LLP
of Equity Security-Holders:      By:  M. JARRAD WRIGHT, ESQ.
                                      DAVID HICKERSON, ESQ.
                                 1300 Eye Street, NW, Suite 900
                                 Washington, DC 20005

For the FAI Claimants:           The Scott Law Group
                                 By:  DARRELL SCOTT, ESQ.
                                 2712 Middleburg Dr.
                                 P. O. Box 2665
                                 Columbia, SC 29206

APPEARANCES (Cont'd.):

| | |
|---|---|
| For National Union Fire Company: | Zeichner Ellman & Krause LLP<br>By:  MICHAEL S. DAVIS, ESQ.<br>     ROBERT GUTTMAN, ESQ.<br>575 Lexington Avenue<br>New York, NY  10022 |
| For Official Committee of Asbestos Property Damage Claimants: | Ferry, Joseph & Pearce, P.A.<br>By:  THEODORE J. TACCONELLI, ESQ.<br>824 Market Street<br>Suite 904<br>P.O. Box 1351<br>Wilmington, DE  19899 |
| For Ad Hoc Committee of Equity Security Holders: | The Bayard Firm<br>By:  STEVEN M. YODER, ESQ.<br>222 Delaware Avenue, Suite 900<br>P.O. Box 25130<br>Wilmington, DE  19899 |
| For David T. Austern, Future Claimants Rep: | Phillips, Goldman & Spence, P.A.<br>By:  RICHARD Y. WYRON, JR., ESQ.<br>1200 North Broom Street<br>Wilmington, DE  19806 |
| For Royal Insurance: | Wilson, Elser, Moskowitz<br>Edelman & Dicker, LLP<br>By:  SARAH J. EDWARDS, ESQ.<br>150 E. 42nd Street<br>New York, NY  10017-5639 |
| For Property Damage Claimants: | Speights & Runyan<br>By:  DANIEL A. SPEIGHTS, ESQ.<br>200 Jackson Avenue East<br>Hampton, SC  29924 |
| Roman Catholic Church Archdiocese of New Orleans: | Dies, Henderson & Carona<br>By:  MARTIN DIES, ESQ.<br>1009 Green Avenue<br>Orange, TX  77630 |
| For Federal Insurance Co.: | Cozen O'Connor<br>By:  DAVID J. LIEBMAN, ESQ.<br>1900 Market Street<br>Philadelphia, PA  19103 |

APPEARANCES (Cont'd.):

For Future Claimants:              Phillips, Goldman & Spence, P.A.
                                   By:  JOHN C. PHILLIPS, JR., ESQ.
                                   1200 North Broom Street
                                   Wilmington, DE  19806

For Everest Reinsurance            Crowell & Moring, LLP
Co. & McKinley Ins. Co.:           By:  MARK D. PLEVIN, ESQ.
                                        LESLIE A. EPLEY, ESQ.
                                   1001 Pennsylvania Avenue, NW
                                   Washington, DC  20004

For Everest Reinsurance            Marks, O'Neill, O'Brien &
Co. & McKinley Ins. Co.:             Courtney, P.C.
                                   By:  BRIAN KASPRZAK, ESQ.
                                   913 North Market St., Suite 800
                                   Wilmington, DE  19801

For Halcyon Asset                  Halcyon Asset Management, LLC
Management, LLC:                   By:  OSCAR MOCKRIDGE, ESQ.

For the State of Montana:          Monzack and Monaco, P.A.
                                   By:  FRANCIS MONACO, ESQ.
                                   1201 North Orange St., Suite 400
                                   P.O. Box 2031
                                   Wilmington, DE  19899

For Grace Certain Cancer           Montgomery, McCracken, Walker
Claimants:                           & Rhoads, LLP
                                   By:  NOEL C. BURNHAM, ESQ.
                                        NATALIE RAMSEY, ESQ.
                                   300 Delaware Avenue, Suite 750
                                   Wilmington, DE  19801-1607

For ACE Insurance Co.:             White & Williams, LLP
                                   By:  MARC S. CASARINO, ESQ.
                                   824 N. Market Street, Suite 902
                                   P.O. Box 709
                                   Wilmington, DE  19899-0709

U.S. Trustee:                      U.S. Trustee Department
                                   By:  DAVID KLAUDER

For PD Claimants:                  Richardson Patrick Westbrook
                                     & Brickman, LLC
                                   By:  EDWARD WESTBROOK, ESQ.
                                   1037 Chuck Dawley Blvd., Bldg. A
                                   Mount Pleasant, SC  29464

APPEARANCES (Cont'd.):

```
Official Committee of          Duane Morris, LLP
Unsecured Creditors:           By:  MICHAEL R. LASTOWSKI, ESQ.
                               1100 North Market St., Suite 1200
                               Wilmington, DE  19801-1246

For London Market Companies:   Mendes & Mount, LLP
                               By:  ALEXANDER MUELLER, ESQ.
                               750 Seventh Avenue
                               New York, NY  10019-6829

For Campbell, Cherry,          Frank/Gecker, LLP
Harrison, Davis, Dove:         JOSEPH D. FRANK, ESQ.
                               325 N. LaSalle, Suite 625
                               Chicago, IL  60610

For the Future Claimants       Piper Jaffray & Co.
Representative:                By:  JONATHAN BROWNSTEIN, ESQ.
                                    RITWIK CHATTERJEE, ESQ.

For Travelers Casualty         Simpson, Thacher & Bartlett, LLP
Insurance Company:             By:  ELISA ALCABES, ESQ.
                               425 Lexington Avenue
                               New York, NY  10017

For Official Committee of      Stroock & Stroock & Lavan, LLP
Unsecured Creditors:           By:  ARLENE G. KRIEGER, ESQ.
                               180 Maiden Lane
                               New York, NY  10038

For DK Acquisition Partners:   Willkie Farr & Gallagher LLP
                               By:  STEPHEN B. VOGEL, ESQ.
                               The Equitable Center
                               787 Seventh Avenue
                               New York, NY  10019

For Hartley & O'Brien          Hartley & O'Brien
Asbestos Claimants:            By:  JAY MICHAEL PRASCIK, ESQ.
                               2001Main Street
                               Suite 600
                               Wheeling, WV  26003

For ZAI Claimants:             William D. Sullivan, LLC
                               By:  WILLIAM SULLIVAN, ESQ.
```

APPEARANCES (Cont'd.):

For Continental Casualty          Ford Marrin Esposito Witmeyer
Co.:                               & Gleser, L.L.P.
                                  By:  LYNNE S. NISSEN, ESQ.
                                  Wall Street Plaza
                                  New York, NY  10005


For Investor:                     Korn Capital, LLC
                                  By:  STEPHANIE KWONG


For Shareholder for W.R.          Tocqueville Asset Management
Grace & Co.:                      By:  PETER SHAWN

For Future Claimants              Orrick, Herrington &
Representative:                    Sutcliffe, LLP
                                  By:  ROGER FRANKEL, ESQ.
                                  Washington Harbour
                                  3050 K Street, N.W.
                                  Washington, DC  20007


Fee Auditor:                      Warren H. Smith & Associates, PC
                                  By:  WARREN H. SMITH


For Co-Counsel to the             Cohn Whitesell & Goldberg, LLP
Libby claimants:                  By:  CHRISTOPHER M. CANDON, ESQ.
                                  101 Arch Street
                                  Boston, MA  02110


For Murray Capital                Murray Capital Management, Inc.
Management, Inc.:                 By:  MARTI MURRAY


For W.R. Grace & Co.              W.R. Grace & Co.
                                  By:  PAUL NORRIS
                                       DAVID SIEGEL
                                       JAY HUGHES
                                       MARK SHEINITZ


For Lehman Brothers:              Lehman Brothers
                                  By:  ANDREW CHAN


For Asbestos Property             LECG
Damage Claimants:                 By:  SEAN WALSH, ESQ.


For Rockbay Capital Mgt.:         Rockbay Capital Mgt.
                                  By:  AMELIA WONG


Financial Advisor to the          The Blackstone Group
Debtor:                           By:  JOHN O'CONNELL

APPEARANCES (Cont'd.):

For Various Claimant Firms:    Stutzman, Bromberg, Esserman,
 & Plifka, PC
                               By:  DAVID J. PARSONS, ESQ.
                               2323 Bryan Street
                               Suite 2200
                               Dallas, TX  75201

For Credit Suisse:             Credit Suisse
                               By:  MARK HERON

For Allstate Insurance:        Cuyler Burk, LLP
                               By:  ANDREW K. CRAIG, ESQ.
                               Parsippany Corporate Center
                               Four Century Drive
                               Parsippany, NJ  07054


ADDITIONAL APPEARANCES NOTED:

Goldberg, Persky & White, P.C.
By:  DAVID RODES, ESQ.
1030 Fifth Avenue, Third Floor
Pittsburgh, Pennsylvania 15219-6295

Kramer, Levin, Naftalis &
 Frankel, LLP
By:  GREGG HOROWITZ, ESQ.
919 Third Avenue
New York, NY  10022

F. Gerald Maples
By:  CARLOS ZELAYA, ESQ.

1          THE COURT:  Good morning.  This is the matter of W.R.

2  Grace, 01-1139.  This is a continued hearing from yesterday,

3  and I at this point don't have a list of participants, so -- do

4  we have one now?

5          THE CLERK:  Yes.

6          THE COURT:  Oh, okay.  Okay.  The list of

7  participants -- there is no one in the courtroom.  Everyone is

8  by phone.  Jonathan Brownstein, Brian Kasprzak, Mark Plevin,

9  Leslie Epley, Steve Yoder, Elisa Alcabes, Jay Sakalo, Jarrad

10  Wright, David Hickerson, Robert Guttman, Michael Davis, Arlene

11  Krieger, Stephen Vogel, John Phillips, Joseph Frank, Natalie

12  Ramsey, David Lieberman -- Liebman, pardon me, Jay Prascik,

13  William Sullivan, Oscar Mockridge, Richard Wyron, Lynne Nissen,

14  Stephanie Kwong, Peter Shawn, Alex Mueller, David Klauder,

15  Edward Westbrook, Martin Dies, Roger Frankel, Debra Felder,

16  Ritwik Chatterjee, Marc Casarino, Darrell Scott, Daniel

17  Speights, Francis Monaco, Sarah Edwards, Michael Lastowski,

18  Warren Smith, Christopher Candon, Marti Murray, Noel Burnham,

19  Paul Norris, David Siegel, Jay Hughes, Mark Sheinitz, Andrew

20  Chan, Sean Walsh, Amelia Wong, John O'Connell, David Parsons,

21  Mark Heron, Theodore Tacconelli, Rita Tobin, and Andrew Craig.

22  Cathy, you can have your list in case you need it.  Did I miss

23  anyone, please?

24          MR. ESSERMAN:  This is Sandy Esserman.  I'm also on.

25          THE COURT:  All right.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. FINCH:  This is Nathan Finch from Caplan and

2 Drysdale.  I'm also on.

3          MR. RODES:  This is David Rodes from Goldberg,

4 Persky, and White.  I'm also on.

5          MR. HOROWITZ:  Gregg Horowitz from Kramer Levin.  I'm

6 also on.

7          MR. ZELAYA:  Carlos Zelaya with F. Gerald Maples.

8 I'm also on.

9          THE COURT:  I'm sorry.  Whoever is speaking, I can't

10 hear you.

11          MR. ZELAYA:  Carlos Zelaya with F. Gerald Maples.

12 I'm also on the phone.

13          THE COURT:  Will you spell your last name, please?

14          MR. ZELAYA:  Z as in Zebra, e-l-a-y-a.

15          THE COURT:  Okay.  Thank you.  Anyone else?

16          MR. HOOKER:  Van Hooker --

17          THE COURT:  Van Hooker?

18          MR. HOOKER:  Yes.

19          THE COURT:  Who else?

20          MS. HARDING:  Your Honor, this is Barbara Harding.

21          THE COURT:  I think someone was speaking at the same

22 time as Ms. Harding.

23          UNIDENTIFIED ATTORNEY:  I heard David Bernick.

24          MR. BERNICK:  You did.

25          THE COURT:  Okay.

                    **J&J COURT TRANSCRIBERS, INC.**

1          MR. HURFORD:  Also, Your Honor, Mark Hurford from

2   Campbell and Levine.

3          MS. BAER:  Jan Baer is also on.

4          THE COURT:  Okay.  Mr. Bernick.

5          MR. BERNICK:  Yes, I think that there are really two

6   matters this morning for discussion.  One is what to do with

7   respect to the x-rays, and the other is, as we discussed

8   yesterday, the outstanding matter of the consultants privilege.

9   I think it probably makes sense to deal with the x-ray that's

10  been the subject of a further meet and confer discussion this

11  morning.  And rather than trying to characterize what happened

12  on that call, I guess I would leave it to Barbara Harding, who

13  is more intimately involved in the details, and I think Natalie

14  Ramsey, who also has been involved in these discussions.  And I

15  guess I'll turn it over to Barbara to make a report on where

16  things actually stand.

17          MS. HARDING:  Good morning, Your Honor.  It's Barbara

18  Harding talking.  I believe that we've reached consensus on

19  almost all of the issues.  There are a couple of issues that --

20  Ms. Ramsey sent me an e-mail indicating the places where we

21  have some disagreement, and I'm going to go through those.  I

22  think we actually have agreement on most of them.

23          The first one is that they want to add a provision

24  for -- includes shipping costs, which we are amenable to doing

25  that.  The second issue, which I think is the one that is --

**J&J COURT TRANSCRIBERS, INC.**

1 it's one that's still in contention, which regards Your Honor's

2 comments yesterday that to the extent that a duplicate copy

3 cannot be obtained by the claimant, we have included new

4 language for Your Honor's instructions yesterday indicating

5 that the original x-rays should be made available for

6 inspection by Grace at counsel's office on a central location.

7        There has been some concern expressed by the

8 claimants and their counsel that there may be some instances

9 where that's not possible, because the hospital will not

10 release the original, and we are amenable to an edit to the

11 current order that as long as it provides that the hospital

12 certifies that they, you know, will not make the original

13 available to the claimant.  That is the -- that's really the

14 main issue I think.

15        The final one -- Natalie, I think those are the three

16 issues.  Right?

17        MS. RAMSEY:  There are a couple of other small

18 issues.  I think that we also had agreement, Barbara, that

19 there would be language added that carved out originals when

20 originals were to be made available that were necessary for

21 ongoing medical care other purposes.

22        MS. HARDING:  Right, but that will be a carve out

23 that relates to the original issue, and that -- yes, it was in

24 the original order

25        MS. RAMSEY:  So we have -- and then the -- going back

1  to -- let me just make sure I'm clearing out the issues that I

2  think we have agreement on, and then we'll come back to this

3  one.  The other issue I think we have agreement on are that

4  copies are going to be used exclusively for the estimation

5  hearing, or do I understand that we also have an issue on that?

6          MS. HARDING:  No, that was in our original proposal.

7          MS. RAMSEY:  Okay, and that they won't be used for

8  any other purpose.  And then there was a subpart to that, which

9  I think may be the second issue that we need to present to the

10 Court which is confidentiality?  Barbara?

11          MS. HARDING:  I don't know.  I'm not sure what your

12 proposal is, Natalie.

13          MR. BERNICK:  It's paragraph six.

14          MS. RAMSEY:  Yes, there's a provision in the last --

15 the last sentence of our proposed paragraph six.  It provided

16 for confidentiality of all of the personal information

17 reflected in the x-rays, and --

18          MS. HARDING:  We don't have an objection to the --

19 we've done it with the other stuff as well so --

20          MS. RAMSEY:  All right.  So we're okay there.  All

21 right, then I think the only issue, Your Honor -- and I'm sorry

22 for the fact that we're sort of engaging still in this

23 dialogue --

24          MS. HARDING:  Natalie, before --

25          MS. RAMSEY:  -- but we went through it quickly this

**J&J COURT TRANSCRIBERS, INC.**

1  morning.

2       MS. HARDING:  Natalie, before you go on though, with

3  respect to the provision for treating the use of -- the

4  originals not being available because of being used in

5  treatment, again, that would have to be -- there would have to

6  be some certification from the doctor that the originals cannot

7  be provided, because they're being used for treatment.

8       MR. ESSERMAN:  Well, there's -- this is Sandy

9  Esserman.  There's also a situation that I read this morning

10 where it may be other reasons other than treatment.  For

11 instance, on the off chance that the client happens to be in

12 trial for a week or two, and they need the x-ray.  So I --

13      MR. BERNICK:  I -- this is David Bernick, and again,

14 we're obviously trying to get to the point of working this

15 thing out, and we apologize for doing this on the Court's time

16 and everybody else's time.  There's a real problem there with

17 -- those were always the reasons that were advanced in

18 supporting the proposition that the x-ray -- the originals

19 could not be made available, and we have -- we can't be in a

20 situation where the exception -- those exceptions swaddle the

21 rule, because that -- those were the reasons why this was all

22 felt to be not possible and not appropriate.  If somebody is on

23 trial for a couple weeks -- and again, we're talking about

24 people -- all these people are people who were diagnosed

25 presumably more than five years ago.  These are lung cancer

**J&J COURT TRANSCRIBERS, INC.**

1  mesothelioma, and so I -- the idea that somehow the fact of

2  they're being in litigation or it's being needed for medical

3  treatment forecloses making these available in the next call it

4  60 days I suppose is possible, but it would not -- it would

5  seem to me that it would mean that they would not be available

6  for some portion of that period of time, but they could still

7  be made available during that period of time.  The x-ray

8  doesn't have to be lodged in some court somewhere for 60 days.

9  You know, there certainly has got to be a time that if

10 someone's being treated where the x-rays --

11           THE COURT:  The only -- look, folks.  This really is

12 wasting my time.  I'm sorry, but I'm really have other things

13 to do.  The copies are the things that are to be transmitted,

14 unless the copies for some reason or other are not certified as

15 accurate.  You're not even going to get into this issue about

16 the originals if you get copies, so you're really wasting a lot

17 of time.  If somebody has a legitimate reason why an original

18 can't be provided in lieu of a copy, they're going to give you

19 a certification, and if you have some challenge to it, then

20 final a motion, and we'll deal with it.  You know, this process

21 is supposed to be the exception not the rule.  Let's move on to

22 something -- surely, you can work out language with respect to

23 that.

24           MR. RAMSEY:  Your Honor, I think we would be very

25 comfortable with the language the Court just provided, because

1  I do think there are -- what we are concerned about -- and

2  without taking up too much time -- is the various types of

3  circumstances that could arise in a mandatory order that

4  appears to require us to do something we can't, and we don't

5  want the exception to the rule.  So if we can provide that --

6  those circumstances will be presented to the Court if we can't

7  work them out.  I think that will solve a lot of the problem.

8          THE COURT:  I think that's the way to do it.

9          MR. BERNICK:  And we'll put something together and

10 with their certification I think we can work this out.

11         THE COURT:  All right.  You had one issue, Ms.

12 Harding, that I think that you were going to address that was

13 not worked out, or, Ms. Ramsey?  I'm not sure.

14         MS. HARDING:  No.  No.  That was the main issue, Your

15 Honor.

16         THE COURT:  Okay, so that's it on the x-rays?

17         MS. HARDING:  I believe that's it.

18         MR. BERNICK:  I think that's it.

19         THE COURT:  All right.

20         MR. BERNICK:  So we could send an order to the Court

21 pretty much some time today.

22         THE COURT:  That's fine.

23         MR. BERNICK:  Okay.

24         THE COURT:  When you --  if you could just call.  I'm

25 going to be in today and tomorrow, and then I'm going to be off

1  for the holidays, and I can sometimes access the e-mail and my

2  files, and sometimes I can't, and it's -- I don't know why I

3  can't sometimes and why I can some other times.  Nonetheless, I

4  have had some difficulty being able to get into the docket from

5  remote locations.  So if you can get things to me between today

6  and tomorrow that you would like to have signed before the end

7  of the year, I would suggest that you try to do that, because

8  after tomorrow I can't guarantee the orders will be entered

9  between now and the beginning of next year.

10         MR. BERNICK:  And I want to -- if we can come back to

11  that, there's -- the only other -- there's the other matter

12  that we were going to talk about this morning, which is the

13  consultant's privilege.  And then I think the only other order

14  that was outstanding with which -- which from the debtor's

15  point of view would be critical to have entered before the

16  holidays, again because it relates to the questionnaire

17  process, is the order on the motion to compel.  And I know that

18  that was being circulates and worked on.  I don't know that

19  there's any particular hang up on that.

20         MR. FINCH:  Which order are you talking about, David.

21  This is Nate Finch from Caplan and Drysdale.

22         MR. BERNICK:  Yes, the order on our -- the order that

23  came from the last hearing on our motion to compel.

24         MR. FINCH:  I don't that --

25         MR. BERNICK:  There are a lot of decisions the Court

1  made beyond the one that has not been made which is the

2  consultant's privilege, and what we need to do is -- we hoped

3  that the Court can resolve the consultant's privilege issue

4  today, but then we need to have the order finalized with

5  respect to all the matters that were ruled on at the hearing.

6           MR. FINCH:  We haven't seen a proposed order from the

7  debtor.

8           MR. ESSERMAN:  I haven't -- this is Sandy Esserman.

9  I have not either.

10          MR. BERNICK:  Okay, then we'll  -- we just ought to

11 circulate it today based upon whatever the Court determines

12 today, but we'd like to be able to get that entered before the

13 end of the year, so it's clear that, you know, what the rules

14 of the road are as the January 12th date approaches.

15          THE COURT:  Okay.  Well, if you can get me one today

16 or tomorrow, then I will get it entered today or tomorrow.

17          With respect to the consultant privilege, I have had

18 an opportunity to read all the briefs.  I have not had an

19 opportunity to read all the cases that were cited, nonetheless,

20 I will accept for a proposition of this ruling that your

21 recitation as to what the cases say is accurate.  And I think I

22 am -- perhaps I created some confusion on the record that I

23 want to get straightened out.  I was not suggesting that

24 because a doctor is a treating physician, that that doctor may

25 not be subject to qualification as an expert and, therefore,

**J&J COURT TRANSCRIBERS, INC.**

1 also be entitled to some consultant privilege as a treating

2 physician.  I was attempting to, and not very articulately,

3 posit the problem that I see, which is articulated in the

4 hypothetical on page seven of the response of the Committee of

5 asbestos payments -- I apologize.  I don't have docket numbers

6 -- to this process where they list the hypothetical.  The

7 worker goes to a union hall, gets a screening, and thereafter

8 goes to either a doctor or a lawyer, back to the union that

9 eventually gets referred to the lawyer with the x-rays or the

10 B reads or the medical history, whatever it is, in hand.

11          I was apparently confused about the fact that these

12 -- the people who are going through these screenings would be

13 seen by a doctor, and my concern was that that initial

14 opportunity for the debtor to try to find out whether the

15 debtor even has a medical condition at all was not subject to a

16 consultant privilege, whether that's the person who sees the

17 debtor in that circumstance is a doctor or not, because there

18 is no contemplated litigation.  You don't even know what the

19 diagnosis is at that point in time.  So I apologize for

20 creating the confusion on the record, but that was the person

21 that I was attempting to address not in general terms doctors

22 as experts and/or consultants.

23          Having looked at these pleadings, I -- briefs --

24 pardon me -- I still do not see why the initial person who

25 screens a court plaintiff is subject to a consultant privilege

1  for the reasons that I've just expressed.  There is no

2  litigation.  In many instances, there isn't even an attorney-

3  client relationship at that point in time, so I can't see how

4  there can be an attorney-consultant relationship when there's

5  no client as to which the attorney can consult at that point.

6  So those initial screenings, regardless of the outcome, I think

7  have to be provided.  They are not protected by any consultant

8  privilege.

9       With respect to consultants who are not testifying

10  experts other than those, because I don't think they're

11  consultants at all, but with respect to true consultants that a

12  lawyer contacts with respect to attempting to get a litigation

13  strategy together after the lawyer has a client, then I think

14  the consultant privilege does indeed protect those consultants

15  who are not testifying experts, whether or not the fact of that

16  protection causes some problems with the debtor in the case or

17  the debtor's inability to cross examine witnesses or whatever.

18  The debtor has the opportunity to hire its own experts to

19  review the medical criteria that are submitted in support of

20  the claim and supported in support of the questionnaire, and I

21  believe that that is the reason why the debtor will not be able

22  and has not to date shown some extraordinary circumstance which

23  would take this consultant privilege outside of the rule that

24  applies.

25       So the initial screenings are to be provided

**J&J COURT TRANSCRIBERS, INC.**

1  regardless of what the outcome is.  There is no indication that

2  those screenings are in any way protected.  In fact, there's

3  not even an indication that there's an attorney-client

4  relationship that's been formed prior to those screenings.  But

5  with respect to other true consultants -- and I -- somebody

6  disagreed with the concept of true consultant, and I'm using it

7  anyway to try to distinguish it from this initial screening

8  where I don't think there's a consultant privilege or

9  consultant relationship at all.  So with respect to the true

10 consultants, I believe those are protected, and they need not

11 be disclosed.  The debtor can certainly hire its own expert to

12 take a look at the evidence, and at the end of that process, if

13 additional discovery is warranted, come back and ask for some

14 additional discovery at that point.  But I don't see any basis

15 right now to require disclosure based on the briefs and the

16 argument of counsel at the last hearing and the pleadings that

17 have been filed.  So I do not find exceptional circumstances

18 that would take this scenario outside the rules.

19         MR. BERNICK:  Thank you, Your Honor.

20         THE COURT:  Okay.  That's my ruling.  Can you -- you

21 can do the order now?

22         MR. BERNICK:  If I can ask a question just to make

23 sure that we're clear on what Your Honor has ruled.  I don't

24 want to reargue anything, I just want to ask a question about

25 what -- who a testifying expert is.  That is if we have an

1 expert who's B reads have been put before the Court in support

2 of these proofs of claim, am I correct that at that point the

3 testifying expert is subject to being impeached with respect to

4 prior B reads that he made?

5          MR. FINCH:  Your Honor, may I respond to that?

6          MR. BERNICK:  If we've got an expert, let's say it's

7 Dr. Graziano who has now been proffered in support of hundreds,

8 if not thousands, of claims that are -- and he's identified in

9 the questionnaires whose B reads are out there.  Do we at that

10 point -- because he's now proffering his opinions as being

11 reliable, do we have the ability to find out the x-ray B reads

12 that he has done for purposes of that claimant and other

13 claimants to establish --

14          THE COURT:  Well, the problem is, Mr. Bernick, this

15 is not an individual objection to claim process.  This is an

16 estimation process, so if the debtor's view is that these

17 doctors are wholly unreliable for whatever, because their

18 credibility has been subject to attack in another case, and

19 you're going to argue that basis as a reason why their B reads

20 in this case ought to be discounted by some factor, then, you

21 know, I think that's what you're going to argue.  But this is

22 not a challenge to each individual proof of claim.  The

23 responding parties in this estimation process are not the

24 individual claimants.  They're the Committee.  So I -- I don't

25 under --

                    **J&J COURT TRANSCRIBERS, INC.**

1        MR. BERNICK:  Right.  If I could --

2        MR. FINCH:  Your Honor, may I respond to Mr. Bernick

3 and make an observation?

4        MR. BERNICK:  If I can respond to the question the

5 Court just asked?  Excuse me.

6        THE COURT:  Yes, Mr. Bernick, go ahead, and then Mr.

7 Finch.

8        MR. BERNICK:  We're not -- what we are doing is

9 exactly what the Court indicates, which is that we are saying

10 that the process that these individual people followed

11 routinely that did not vary was an inherently unreliable

12 process, therefore, for estimation purposes to the extent that

13 these people and their B reads are being proffered to say that

14 groups of claims are valid claims.

15       THE COURT:  Mr. Bernick, I don't see that that's the

16 relevant test.  I mean the test isn't that their process is

17 improper.  I think the test is whether or not the evidence can

18 be duplicated, whether or not it's been subject to peer review,

19 the Dalbert standards.  And to the extent that these B reads

20 can, in fact, be duplicated or can't, in fact, be duplicated,

21 then it either will or won't meet the Dalbert standards.  But

22 the fact that somebody sets up a -- you know, a screening

23 process in the back end of the trailer, there may be some

24 question about the competence of the persons who make the --

25 have taken the x-ray at all.  You can certainly explore that,

**J&J COURT TRANSCRIBERS, INC.**

1  but this is not an issue I think where the concept of B reads

2  is subject to challenge.  The debtor's intending to use B

3  reads.

4         MR. FINCH:  Your Honor, may I respond now, please?

5         THE COURT:  Mr. Finch, I'll get to you, please.  I'm

6  sorry.  Mr. Bernick.

7         MR. BERNICK:  Yes.  Again, to be clear, we will take

8  issue with the process, etcetera.  What we are trying to en

9  route is that if we've got a doctor, say Dr. -- say Dr. X, who

10  has done a thousand x-rays, and he is -- his x-ray B reads are

11  being used to support the estimate in the sense that they are

12  being used to support the idea that X number of people who have

13  submitted questionnaires that rely upon those B reads, in fact,

14  have medical evidence to support their claims, we want to be

15  able to establish that Dr. X has done a thousand other B reads

16  for other claimants that conflict with the claimants' own

17  submissions, so, therefore, his B reads are unreliable under

18  <u>Dalbert</u>, because they can't be replicated.  And the source of

19  their inability to be replicated comes from Dr. Graziano or Dr.

20  X himself, and that's what's so key, is that we can do it

21  through our people, but they have already produced the evidence

22  in their own mass screening B reads of massive inconsistency.

23         THE COURT:  Well, Mr. Bernick, I think you're -- I

24  think at this point you're ahead of me.  Right now this is a

25  discovery issue.  If, in fact, somebody designates one of these

**J&J COURT TRANSCRIBERS, INC.**

1  doctors to testify, then I suppose at that point in time

2  they're going to be putting their credibility and their

3  processes on the line.  But until they're designated as a

4  testifying witness, the fact that they are a consultant witness

5  means that they are protected by this rule.  So unless and

6  until they are designations, I do not believe that this

7  consultant privilege is going to be waived by making somebody a

8  testifying witness until there is a designation, and as of --

9  as far as I know right now, there are no such designations.

10         MR. FINCH:  Your Honor, may I respond to that,

11  please?

12         MR. BERNICK:  I'm sorry.  That was the question that

13  I began with.  Once they have disclosed -- selectively

14  disclosed in the questionnaire process that person's B read --

15  that is they're saying in the questionnaire process this

16  establishes that I've got a medical basis for my claim, at that

17  point I believe that that is a disclosure and a use of the

18  information that means that it's no longer -- he's no longer --

19         THE COURT:  Well, Mr. Bernick, you are rearguing.

20  This is beyond what I have been asked to do today.  What I've

21  been asked to do today is to give global rulings on whether or

22  not this consultant privilege protects certain things, and I

23  have ruled that it does not protect the initial screening.

24  That it will protect consultant experts who are testifying

25  experts.  If, in your view, they become testifying experts,

**J&J COURT TRANSCRIBERS, INC.**

1 then file the appropriate motion, and I'll deal with it in that

2 context, but that's not before me today.  I'm not aware that

3 anybody has been advocated yet as a testifying expert.  Mr.

4 Finch.

5 　　　　MR. FINCH:  Yes, may I please respond to Mr.

6 Bernick's comments?  The Court has entered an order for a

7 schedule leading up to an estimation of Grace's aggregate

8 liability.  The date for disclosing experts by the Committee

9 and by Grace and by the Future Claimants Representative for

10 people who are going to be non-estimation testifying experts

11 was back in last September.  Not a single one of the claimants

12 identified the experts that they would call if they were asked

13 to prove their cases at trial or even an estimation --

14 individual claim estimation proceeding has identified anyone as

15 a testifying expert.  So as -- until someone is identified as a

16 testifying expert, they're a consulting expert, unless they're

17 a treating physician or subject to the Court's ruling about

18 whether they were a screening doctor before there was an

19 attorney-client privilege put in place.  So the fact that

20 somebody responded to discovery propounded by W.R. Grace

21 through the questionnaire by saying yes, I've got a B reading

22 report from a Dr. Graziano, in no way shape or form means that

23 Dr. Graziano has been identified as that person's testifying

24 expert.  It just happens to be the medical evidence they have

25 concerning their claim in the file at this time.  If, as, and

1  which -- if, as, and when some court, probably a District Court

2  or a State Court, puts that case on a schedule to individually

3  try it or estimate it, there will be a scheduling order, and at

4  that point the scheduling order would say the individual

5  claimant has to identify the experts that he or she will call

6  as testifying experts at trial.  Then there would be the

7  equivalent of, or if it's in a Federal Court, the Rule 26(a)(2)

8  expert report, and that would convert whatever the expert is as

9  a consulting expert if they rely on them and to a testifying

10 expert.  There haven't been any testifying experts identified

11 by any claimant in the Grace bankruptcy thus far, and, thus,

12 you know, Mr. Bernick's whole construct in terms of -- by

13 submitting a B read report from Dr. Graziano that they have,

14 quote, proffered this guy as their testifying expert is

15 completely false, and I'd like the Court to keep that in mind.

16 I think your order, as articulated today, keeps that

17 distinction in mind, but I can't let Mr. Bernick's comments go

18 unresponded to on behalf of the Committee.

19         THE COURT:  Okay.  Is there anything else?  Have I

20 given you enough to be able to get the order done now, Mr.

21 Bernick?

22         MR. BERNICK:  Yes, I think we should have, and we

23 appreciate your making the time to do it.  And I would simply

24 ask that in interest of time that Your Honor give us a word of

25 encouragement at this point to get this order finalized

**J&J COURT TRANSCRIBERS, INC.**

1  together with the other matters that are encompassed by the

2  order before you leave, so that we don't have to worry about

3  interrupting your holiday.

4           THE COURT:  I told you if you get it to me by

5  tomorrow, I will have it entered by tomorrow.  But when I say

6  tomorrow, let me make sure that you understand that's 4:00

7  tomorrow, because I need time to read things and find them and

8  everything else.  So if I have orders between now and 4:00 p.m.

9  tomorrow, I will do my very best to get them entered before I

10  leave.  If I don't have them until after 4:00 tomorrow, they

11  probably will not be entered until after the 1st of the year --

12  certainly not until after Christmas, maybe not until after the

13  end of the year.

14           MR. BERNICK:  Then we will endeavor to get the order

15  to Your Honor.  In fact, I'm assuming people like Natalie and

16  Sandy and Nate are available to talk in the next 24 hours.

17           MS. RAMSEY:  Yes, I am around.

18           MR. ESSERMAN:  I am around.

19           MR. BERNICK:  I am, and I'm at Kirkland's offices in

20  New York right now.

21           MR. ESSERMAN:  Well, God bless you.

22           MR. BERNICK:  Thank you.

23           UNIDENTIFIED ATTORNEY:  The sooner you could

24  circulate the order, the better, David.

25           THE COURT:  All right.  I have one other question,

**J&J COURT TRANSCRIBERS, INC.**

1  folks.  I have been -- I did talk to the Clerk with respect to

2  how to handle the issue of the Xeroxing of the documents that

3  were went here by the South Carolina court, and frankly, the

4  court's simply not going to be able to do them.  In having --

5  in looking through them, there is another problem that I did

6  not realize was going to happen, and that is that the Court's

7  docket sheet does not contain any docket numbers.

8          So what we've received is an entire -- is literally

9  four boxes of documents, some rubber banded together, some

10 stapled, some not, and a certified copy of the docket sheet.  I

11 am now having my staff go through the docket sheet and the

12 pleadings that we have been given and adding a docket number,

13 so that we will know when things come back to this court what

14 we had.  It does not appear that everything that's on that

15 docket sheet was Xeroxed, unless for some reason or other it's

16 in another box that we haven't gotten to yet.  My staff's been

17 working at this all morning, and they're not finished with the

18 first box yet.  So it's taking quite some time just to match

19 papers up with this docket sheet.

20         So my question is since the court I think is really

21 not the appropriate entity to try to get this done, it will

22 take us months probably to fit this in, I think, Mr. Bernick, I

23 need to know from you who you want to pick this up, so that I

24 can do an order that releases the custody of this file and

25 provides an opportunity to get the copies made, then orders the

1  file to be brought back to me in the condition in which it was

2  delivered.  But I am going to add to these pleadings a docket

3  number reference, and I will clarify that in the order that

4  releases custody, so you understand that the copies of the

5  docket that you will get will have handwritten numbers on it,

6  and the pleadings will have a handwritten number.  Those are

7  being added by my staff.  They are not part of the certified

8  record in South Carolina, but I think it will be easier for

9  everyone that way to know what is and what isn't missing and

10 what has and hasn't been turned over for custody purposes for

11 getting the Xeroxing done.  So --

12        MR. BERNICK:  Am I to understand that Your Honor's

13 people are going to continue this effort to assign numbers or

14 that you want somebody else to take it over?

15        THE COURT:  Oh, no.  No.  We're -- my staff is

16 assigning all of the numbers, and I'm hoping that they'll have

17 that project finished today.  If not today, it will be done

18 tomorrow.  So I can then release these documents to whoever you

19 want to pick them up to get them copied.  I just need to know

20 who that is.

21        MR. BERNICK:  Okay.  Well, then what I'll do is our

22 -- if you could -- or Jan, if you can just make sure to contact

23 Dan Speights.  What I would propose, Your Honor, is that we

24 have somebody from Mr. Restivo's office come over to take

25 control of them, send them out to a copy service to have two

**J&J COURT TRANSCRIBERS, INC.**

1 copies made and sent out, and if Mr. Speights disagrees, then

2 we'll try to figure something else out.  That seems to me

3 that's the simplest way to get it done.

4          THE COURT:  Okay.  Well, I believe yesterday he was

5 fine with the fact that a law firm or a copy service would pick

6 them up.  His concern was making sure that we got back what we

7 had -- what we gave out, and I share that concern, so I'm doing

8 my best to figure out what we can do in that respect.  And I

9 think numbering these pleadings, so that we have a record of

10 what we do have and what we don't have will go a long way for

11 assuring that we do get back what we gave out.  Mr. Speights,

12 are you on?

13          MR. BERNICK:  I hope that there -- I hope there's

14 some state secrets somewhere in those that makes it worthwhile,

15 but I don't think --

16          THE COURT:  The other issue that I have to raise with

17 respect to this is some of the documents in these boxes are

18 under seal, so the other question is what do you want me to do

19 with the sealed documents?  I think from Mr. Speights' argument

20 at one of the hearings that some of the information that's

21 under seal is actually what he wants the Court to look at, so

22 I'm assuming that I should provide those documents, too.  But,

23 Mr. Bernick, I think you need to discuss that with Mr. Speights

24 and also let me know what the resolution is about the sealed

25 documents.  I have not unsealed them.  I don't know what they

1  are.

2        MR. BERNICK:  Right.  What we're -- I think you're

3  right in your observation, and it just seems to be that they

4  ought to be -- that they also ought to be copied, and we can

5  then take up at an appropriate point in time what should happen

6  with respect to reviewing those.  It just seems to me that if

7  everybody's going to be reading off the same page, we have to

8  have everybody in possession of those copies, even if they are

9  sealed.  I believe that they were submitted under seal, because

10 they relate to settlement discussions.

11       THE COURT:  Well, why don't you get in touch with Mr.

12 Speights.  If you want, a phone call with me just about this

13 issue, nothing else, to deal with how to handle the custody

14 issue and what to do with the sealed documents.  I'll be

15 available this afternoon.  If you and Mr. Speights can agree

16 and you can just contact my staff and say do it this way,

17 that's fine.  I will do whatever your pleasure is with respect

18 to this.  I just want to know what to put into the order.

19       MR. BERNICK:  Okay.

20       MS. BAER:  Your Honor, this is Janet Baer.  I'll call

21 Mr. Speights and coordinate and call your chambers back and let

22 them know.

23       THE COURT:  All right.  Thank you.  Okay.  Any other

24 matters today?

25                    (No verbal response)

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  Okay.  Happy Holidays, everyone.

2          MR. BERNICK:  Thank you, Your Honor, very much.  Bye

3  bye.

4          THE COURT:  We're adjourned.

5                        *  *  *  *  *

6                        **CERTIFICATION**

7          I, PATRICIA C. REPKO, court approved transcriber,

8  certify that the foregoing is a correct transcript from the

9  official electronic sound recording of the proceedings in the

10  above-entitled matter to the best of my ability.

11

12  /s/ Patricia C. Repko          Date:  January 2, 2007

13  PATRICIA C. REPKO

14  J&J COURT TRANSCRIBERS, INC.

**J&J COURT TRANSCRIBERS, INC.**