# Exhibit 1

MAY 04 '00 17:08 FR ORANGE COUNTY REGISTR    TO 912136122554    P.02/13

COURT OF APPEAL-4TH DIST. DIV. 3
**FILED**

MAY 3 2000

_____
Deputy Clerk

COPY

***NOT TO BE PUBLISHED***

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| WILLIAM C. BAKER et al., | G021973 |
| Plaintiffs and Appellants, | (Super. Ct. No. 758512) |
| v. | OPINION |
| W.R. GRACE & CO. et al., | |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Robert E. Thomas, Judge. Affirmed in part and reversed in part.

Corbett & Steelman, Richard B. Specter and Mark M. Monachino for Plaintiffs and Appellants.

Greenberg Glusker Fields Claman & Machtinger, Jeffrey Spitz and Elizabeth A. Basini for Defendants and Respondents.

\*   \*   \*

Without first affording the parties oral argument, the trial court granted defendants' motion for summary judgment.[1] And it did so in an enigmatic (if not inscrutable) minute order which, among other things, sheds little, if any, light on the facts or law which it found to be dispositive and, as a result, makes resolution of this appeal a daunting endeavor.[2] Nevertheless, plaintiffs argue, and we agree, that the judgment in an earlier declaratory relief action does not collaterally estop plaintiffs' causes of action sounding in contract.[3] Consequently, we reverse that portion of the judgment based upon a finding of collateral estoppel.

---

[1] The issue is not urged by plaintiffs, but we could reverse on this ground alone. (*Gwartz v. Superior Court* (1999) 71 Cal.App.4th 480; *Mediterranean Construction Co. v. State Farm Fire & Casualty Co.* (1998) 66 Cal.App.4th 257.)

[2] Plaintiffs do not attack the order on this ground either, but the trial court's minute order deciding defendants' motion for summary judgment was clearly deficient under Code of Civil Procedure section 437c, subdivision (g). It requires as follows: "Upon the grant of a motion for summary judgment, on the ground that there is no triable issue of material fact, the court shall, by written or oral order, specify the reasons for its determination. The order shall specifically refer to the evidence proffered in support of, and if applicable in opposition to, the motion which indicates that no triable issue exists." In a long line of cases, we and other appellate panels have enforced these strictures emphatically. (See, e.g., *Truck Ins. Exchange v. Amoco Corp.* (1995) 35 Cal.App.4th 814, 828; *Payless Drug Store v. Superior Court* (1993) 20 Cal.App.4th 277, 278-279; *Greater Irvine Credit Union v. Superior Court* (1986) 186 Cal.App.3d 1189, 1192; *Tera Pharmaceuticals, Inc. v. Superior Court* (1985) 170 Cal.App.3d 530, 532.)

[3] Only some of plaintiffs' causes of action applied to defendants W.R. Grace & Company or Creative Food 'N Fun Company. Of those, only the complaint's first, second, third, and seventh causes of action were apparently disposed of on collateral estoppel grounds. Plaintiffs' ninth cause of action, a tort claim for intentional interference with contractual relations, was also dismissed (presumably on statute-of-limitations grounds) in the final order proposed by defense counsel and subsequently signed by the judge.

2

However, with respect to plaintiffs' cause of action for intentional interference with contractual relations (which would not have been disposed of by way of collateral estoppel), we conclude this claim is barred by the applicable two-year statute of limitations. Accordingly, we affirm summary adjudication as to it.

I

On September 16, 1977, the original Del Taco, Inc. (Del Taco) a fast-food Mexican restaurant whose principal place of business was California, entered into an agreement (the "Conveyance Agreement") with DTG, Inc. (the predecessor of defendant Creative Food 'N Fun Company, a subsidiary of defendant W.R. Grace & Co.). The Conveyance Agreement granted to DTG the exclusive right to use the Del Taco name and system throughout what the agreement refers to as the "Domestic Territory," defined as everywhere in the United States save for California and part of Arizona, which was retained by Del Taco.

In exchange, DTG promised in Article 3 of the agreement that it would pay Del Taco a fee (referred to by the parties as the Article 3 "Percentage Fee") equal to one percent of the gross receipts of each Del Taco restaurant it opened in the Domestic Territory. Although the Conveyance Agreement did not obligate DTG to open any specific number of Del Taco restaurants in any given year, Article 4 of the agreement provided that if DTG opened fewer than 25 in a given year, then Del Taco, after providing notice, could itself open one for every one DTG failed to open in the Domestic Territory, up to and including 25. Article 4 also provided that if Del Taco exercised this option, it would, among other things, pay DTG $10,000 per restaurant, plus a reverse royalty equal to one percent of that restaurant's gross receipts.

On April 27, 1979, Del Taco assigned its right to receive the one percent Article 3 Percentage Fee to its then-shareholders, who (along with their assignees and/or

3

successors) are the plaintiffs in this action.[4] The assignment agreement did not itself transfer Del Taco's Article 4 rights — i.e., the option possessed by Del Taco upon certain circumstances to open Del Taco restaurants in the Domestic Territory with the correlative duty to pay DTG a fee equal to one percent of each such store's gross receipts. Rather, plaintiffs assert, and defendants deny, that Del Taco transferred its Article 4 rights in a side agreement.[5] This, as we will conclude, is the issue that cries out for a resolution on the merits.

This state of affairs essentially persisted until July 7, 1992, when Del Taco and DTG's successor, defendant Creative Food 'N Fun Company, agreed to modify the Conveyance Agreement.[6] In the 1992 "Modification and Purchase Agreement," Del Taco and Creative substantially altered the provisions of Article 4.[7] Among other things,

---

[4] Specifically, plaintiffs — who are also sometimes referred to as the "Royalty Holders" because of their right to receipt of the one-percent royalty — are William C. Baker, Eber E. Jaques, Bradford H. Miller, Montgomery R. Fisher, Sharon R. Ormsbee, Marilyn Rea, and The Fisher Trust.

[5] As proof, plaintiffs point to an April 27, 1979 letter from Wayne W. Armstrong, a Del Taco executive, to DTG's successor, Del Taco Corporation, informing it of the assignment of Del Taco's right to the one-percent Percentage Fee under Article 3, but also stating that, "effective April 27, 1979, [Del Taco] has transferred to the Shareholders listed above all of [Del Taco's] rights under Article 4 of the Conveyance Agreement."

[6] We use the word "essentially" advisedly. That is, during the period between the 1979 assignment and the 1992 modification of the Conveyance Agreement, several changes, which are immaterial to the outcome of this appeal, took place. Among them, on March 30, 1981, Del Taco and DTG's successor amended the Conveyance Agreement, removing restrictions upon franchising Del Taco restaurants in the Domestic Territory. Defendants note that this amendment refers to the assignment of Del Taco's assignment of the Article 3 Percentage Fee to Del Taco's shareholders, but says nothing about any Article 4 assignment.

[7] Plaintiffs, who claimed they now possessed certain of the Article 4 rights affected by the modification, were not parties to the 1992 Modification and Purchase Agreement.

4

the Modification and Purchase Agreement replaced the $10,000 per store charge and the one percent reverse royalty payable by Del Taco upon exercise of its Article 4 option to open Del Taco restaurants in the Domestic Territory, with a one-time universal payment of $350,000. In return Creative promised not to open or franchise additional Del Taco restaurants in the Domestic Territory. Del Taco opened its first restaurant in the Domestic Territory under the Modification and Purchase Agreement on May 1, 1993.

Controversy soon arose over whether the "Royalty Holders" (i.e., plaintiffs and appellants in this appeal) were entitled to collect Percentage Fees (or any money) for each restaurant opened in the Domestic Territory by Del Taco. As a result, Del Taco commenced an action (referred to sometimes as the "Prior Action") on May 24, 1994, for declaratory relief, naming both Creative and the Royalty Holders as defendants.[8] The complaint averred the existence of a dispute among the parties "with respect to their rights and obligations under the Conveyance Agreement . . . and the Modification Agreement in that [Del Taco] contends that it is not obligated to pay the Percentage Fee provided for at [Article 3] of the Conveyance Agreement to the Royalty Holders with respect to any Del Taco restaurants that it may open . . . in the 'Domestic Territory,' . . . because the Percentage Fee is payable solely upon 'Gross Receipts of Company [DTG, Inc.] Stores in the Domestic Territory' and not upon the gross receipts of any stores that [Del Taco] . . . may open in the Domestic Territory." Accordingly, Del Taco requested a declaration from the court setting forth "the rights and obligations of the parties with respect to the Percentage Fee provided for at *paragraph 3.01* of the Conveyance Agreement." (Italics added.)

---

[8] Actually, Del Taco initially filed this declaratory relief action on November 24, 1993, as an adversary proceeding in Del Taco's Chapter 11 bankruptcy proceeding. However, the case was dismissed and subsequently refiled in superior court.

5

In time Del Taco brought a motion for summary judgment, which the court granted, ordering plaintiff to draft an order and judgment. Initially, however, it was uncertain exactly what the court had ordered. That is because the court made some statements at oral argument suggesting its ruling would far exceed the relief requested in Del Taco's complaint and declare that the Royalty Holders were entitled to no payment whatsoever, either under Article 3 or Article 4 — neither from Del Taco nor Creative with respect to restaurants opened in the Domestic Territory by Del Taco following the Modification and Purchase Agreement.[9] However, Del Taco's counsel tried twice, and Creative's attorneys once, to obtain court approval for an order to that effect.[10] The court, however, rejected all three proposals and, instead, ordered the Royalty Holders' counsel to try its hand at crafting an order.

The proposed order submitted by the Royalty Holders fared somewhat better. Tracking closely the relief requested in Del Taco's complaint, it stated, "Plaintiff DEL TACO, INC., requests a Declaration of its obligations, pursuant to the Conveyance Agreement, . . . to pay the 'Percentage Fee' set forth therein, to the ROYALTY

---

[9] Among other things the court stated, "the motion needs to be granted and must be granted because . . . the percentage fee applies only to the stores originally cited by the defendant in the Domestic Territory and not to the stores later placed by the plaintiff in the Domestic Territory after the plaintiff paid the $350,000 buyout fee because the defendant didn't generate enough business. [A]rticle four payment is not one that now is flowing through. . . . [¶] It rather is a payment that is . . . not payable to the Royalty Holders. Only the paragraph three Percentage Fee is payable to the Royalty Holders."

[10] For example, Del Taco proposed the following order: "The Royalty Holders are not entitled to receive any payments, including payments under Sections 3 or 4 of the Conveyance Agreement, based on the ownership or operation of restaurants in the 'Domestic Territory' by [Del Taco]." Similarly, Creative offered the following in its proposed order: "The Royalty Holders are not entitled to receive any royalty payments based on gross receipts of restaurants which are or may he owned, operated or franchised by plaintiff Del Taco."

6

MAY 04 '00 17:10 FR ORANGE COUNTY REGISTR        TO 91213612255₄        P.08/13

HOLDERS." The proposed order stated, "The 'Percentage Fee' is only payable under Article 3 of the Conveyance Agreement, and is payable thereunder by DTG, Inc., and not by Plaintiff DEL TACO, INC."

Del Taco and Creative inveighed mightily against this proposed order. For example, Del Taco objected that it "is <u>directly</u> contrary to the court's ruling" at the hearing. Instead, the court should order that Del Taco "has no duty to pay the 'Percentage Fee' or any Article 4 payments under the Conveyance Agreement to [the Royalty Holders]." Likewise, Creative asserted that the "Proposed Order is inaccurate and misleading in a number of significant respects." Chief among them, Creative argued, was that the proposed order was too narrow, dealing only with the Percentage Fee required by Article 3. Instead, Del Taco requested that the court make "a declaration as to whether <u>any</u> fees were payable to the Royalty Holders by Del Taco, Inc., pursuant to the agreement between the parties, based on restaurants opened by Del Taco, Inc." However, the court's view of what Del Taco requested and the conclusions it drew from the evidence adduced by the parties differed significantly. Accordingly, the court adopted the Royalty Holders' proposed order that "[u]nder the Conveyance Agreement, Plaintiff DEL TACO, INC., has no duty to pay the 'Percentage Fee' set forth therein to [the Royalty Holders], with respect to any Del Taco Restaurants that it may open."[11]

The Royalty Holders filed this action on January 16, 1996, in pursuit of the elusive royalty payments for the Del Taco restaurants in the Domestic Territory opened

---

[11] Reflecting its apparent desire to tailor the relief granted closely to that requested by the Del Taco, Inc., complaint, the court elided one sentence from the proposed findings — the only finding going beyond Article 3 and touching upon Article 4 obligations — which, as drafted, read, "Pursuant to the Conveyance Agreement, Plaintiff DEL TACO, INC.'s only duty to pay any monies thereunder arises under Article 4 of the Conveyance Agreement."

MAY 04 '00 17:11 FR ORANGE COUNTY REGISTR     TO 912136122554     P.09/13

by Del Taco following the adoption of the Modification and Purchase Agreement in 1992. As to defendants Creative and, its parent, W.R. Grace & Co., plaintiffs articulated four causes of action sounding in contract and one tort claim for intentional interference with contract. When defendants subsequently moved for summary judgment, they asserted the judgment in Del Taco's declaratory relief action (the "Prior Action") collaterally estopped plaintiffs' contract claims and that plaintiffs' intentional interference cause of action foundered on the two-year statute of limitations set forth in Code of Civil Procedure section 339, subdivision 1. As to collateral estoppel, defendants argued that, while the literal scope of the Prior Action's judgment is quite narrow, the true breadth of the judgment is augmented by statements, disclosed in the reporter's transcript, made by that court in the course of oral argument on the motion that led to the judgment.

Plaintiffs' contrary assertions were in vain, however. Dispensing with any oral argument on the motion, the court ruled by minute order, the brevity of which is, perhaps, telltale: "Motion for summary judgment is granted. [¶] The court takes judicial notice of Del Taco's successful action to obtain declaratory relief that it owed no Percentage Fee payments to the Royalty Holders, (plaintiffs in this action). Moving party's objection to the 'pass through' characterization is sustained because it contradicts the plain meaning of the Conveyance Agreement. Objections to the Terrano declaration are overruled. He is the CFO of Del Taco and can testified to the contents of the declaration."[12] Plaintiffs' tort claim for intentional interference apparently fell through the judicial cracks, for the minute order said absolutely nothing specifically pertaining to that cause of action or to the statute of limitations (the basis of defendants' challenge to

---

12  With respect to judicial notice, we are told that the court also granted judicial notice of a videotape of proceedings in the Prior Action. We grant defendants' motion to take judicial notice of the same tape, although we do not find it particularly illuminating for reasons explained in the text. (See pp. 9-10, *infra*.)

8

the claim). However, the order — which was drafted by defense counsel — states summary judgment is granted as to this claim, as well, a sentiment with which the trial court apparently agreed because it signed that proposed order.

## II

Plaintiffs argue the trial court erroneously granted summary judgment against them on collateral estoppel grounds, contending the judgment in the Prior Action by Del Taco for declaratory relief did not determine whether, or on what grounds, the Royalty Holders were entitled to payment by Creative for Del Taco's restaurants in the Domestic Territory. The determination of an issue by one court can preclude its relitigation in a subsequent proceeding, but only where: (1) The issue in each proceeding is identical; (2) the issue was actually litigated and (3) necessarily decided in the first proceeding; (4) estoppel is asserted against a party (or someone in privity) to the former action; and (5) the earlier determination is final. (*McCutchen v. City of Montclair* (1999) 73 Cal.App.4th 1138, 1144.)

Plaintiffs assert, and we agree, that the issue decided in the Prior Action — that only DTG, Inc. was bound by the Conveyance Agreement to pay the Royalty Holders the Article 3 Percentage Fee — is far from identical with the question at issue here, which is whether DTG's successor (i.e., Creative) is liable to the Royalty Holders, under Article 3 *or otherwise*, on account of Del Taco restaurants opened in the Domestic Territory by Del Taco.

Defendants argue that the judgment from the Prior Action must include oral statements of opinion made by the court during argument on the underlying summary judgment motion. Although we agree that, in appropriate circumstances, statements made by a court during a hearing may be used to help give meaning to the subsequent written judgment, we disagree that the circumstances here are appropriate for such use of prior

9

oral pronouncements. That is, oral opinions of a trial court may appropriately be used for many reasons — for example, "for the purpose of discovering the process by which the trial court arrived at its ultimate conclusion," or perhaps to give specific meaning to a generalized judicial edict — but they may not be used to impeach a judgment or written findings by the court. (*Tract Development Services, Inc. v. Kepler* (1988) 199 Cal.App.3d 1374, 1385-1386; see also, *Earhart v. William Low Co.* (1979) 25 Cal.3d 503, 508, fn. 4; *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 161.)

The statements offered by defendants here do not give specific meaning to a generalized judicial holding with which they are otherwise consistent. Rather, as Del Taco's counsel squarely, and emphatically, put it in objecting to the Royalty Holders' proposed order (which the court subsequently adopted), those statements are "*directly contrary*" to the judgment in the Prior Action. In sum, the judicial statements are not offered to elaborate, but to impermissibly impeach, the Prior Action's judgment.[13] (*Tract Development Services, Inc. v. Kepler, supra,* 199 Cal.App.3d at pp. 1385-1386.)

### III

Plaintiffs also challenge the trial court's judgment that their cause of action for intentional interference with contractual relationship was barred by the two-year statute of limitations in Code of Civil Procedure section 339, subdivision 1. They contend, in the alternative, that they had no actual or constructive knowledge sufficient to trigger commencement of the statute more than two years before filing their complaint

---

[13] Our certainty on this issue is fortified by the fact that the court, on at least three occasions (and perhaps more, depending on how one quantifies them), rejected pleas by Del Taco and Creative that it adopt a holding that would have collaterally estopped plaintiffs here — that is, a holding to the effect that neither Del Taco nor Creative owed plaintiffs a penny on account of the post-Modification Del Taco restaurants opened by Del Taco in the Domestic Territory. Put another way, that the court did not adopt such a holding cannot be attributed to oversight for inadvertence.

10