# EXHIBIT
# F



Slip Copy                                                                                                                    Page 1

Slip Copy, 2006 WL 1985962 (E.D.La.)
(Cite as: Slip Copy)

Briefs and Other Related Documents
Ohio Management, LLC v. James River Ins. Co.E.D.La.,2006.Only the Westlaw citation is currently available.
   United States District Court,E.D. Louisiana.
         OHIO MANAGEMENT, LLC
                      v.
      JAMES RIVER INSURANCE COMPANY.
            Civil Action No. 06-0280.

               July 13, 2006.

Richard Charles Trahant, Richard C. Trahant, Attorney at Law, Jack Edward Morris, Jack E. Morris, Attorney at Law, Ted A. Price, Price & Landry, Metairie, LA, for Ohio Management, LLC.
Donald Coleman Brown, Woodley, Williams Law Firm, LLC, Lake Charles, LA, for James River Insurance Company.
DANIEL E. KNOWLES, III, Magistrate Judge.
*1 On July 12, 2006, plaintiff's Motion to Compel (Rec.Doc. No. 11) came on for hearing before the undersigned Magistrate Judge with counsel for both parties present. Pursuant to the hearing, the Court ruled as follows, to wit:

**IT IS ORDERED:**

(1) As to plaintiff's Interrogatory No.4 (identify all agents/ employees who participated in evaluating/adjusting/ supervising Ohio Management's Hurricane Katrina claims for excess coverage), Request for Production No. 7 (all computer diary entries maintained by defendant's employees from the inception of the claim); Request for Production No. 15 (all drafts or checks made out for any costs relative to this claim) and Request for Production No. 24 (copies of any and all damage estimates or reports relative to any and all properties for which Ohio Mgmt is named insured and which sustained damage from Hurricane Katrina), plaintiff's motion is DISMISSED AS MOOT,[FN1] except that defendant shall further provide contact information with respect to any and all agents/employees, who are longer employed by James River.

> FN1. Pursuant to Fed.R.Civ.P. 33(d), James River produced its entire claims/adjusters' file, which contains all of the information/documents requested, except for privilege log documents which are not the subject of this motion.

(2) As to Request for Production No. 6 (general files maintained with respect to losses from Hurricane Katrina), defendant shall ascertain whether any such files exist and either produce same or definitively state that it maintains no such general Hurricane Katrina claims handling files.

(3) As to Interrogatory No. 5 (detail the policies, practices and/or procedures used by JRIC to determine Ohio Mgmt's losses from Hurricane Katrina), Interrogatory No. 6 (identify each person/entity who/which participated in the creation of the aforesaid policies, practices and procedures), plaintiff's motion is DISMISSED AS MOOT, considering that James River responded subject to its objections.[FN2] However, the Court reminds the defendant of its continuing duty to supplement its answers in the event that any bulletins, directives or other documents pertaining to applicable claims handling policies come to its attention.

> FN2. JRIC responded stating that it " makes every effort to properly adjust claims pursuant to the provisions of policies issued by JRIC and promptly pay all covered losses" and to comply with " the statutory, regulatory and jurisprudential framework within the state the claims was filed. As to Interrogatory No. 6, to the extent that it requests information

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 1985962 (E.D.La.)
(Cite as: Slip Copy)

Page 2

pertaining to the claims file, defendant produced its entire claims file. Defendant notes that its answers detail the different approach taken by JRIC. In other words, it has no "Best Practices-Products Manual" or any comparable to the documents at issue in *Felham Enterprises v. Certain Underwriters at Lloyds* (Felham II), 2005 WL 2050284 (E.D.La.2005). Instead, JRIC looks to the implicated policy or policies (which define the obligations) together with the applicable law. JRIC attached copies of the JRIC policy and the AIC policy (which was incorporated by reference) to the extent they are consistent. JRIC specifically notes Section E, "Loss Conditions" and subsection 4 "Loss Payment", which describe the procedures the insurer is obligated to follow under its policy. James River further noted that actions taken by it in furtherance of these ends would be reflected in the adjuster's file which was provided as part of discovery.

(4) As to Interrogatory No. 7 (detail each policy, practice, procedure and step taken to determine any time limits which obligated JRIC to unconditionally tender money to Ohio Management), plaintiffs' motion is DISMISSED AS MOOT, [FN3] except that defendant shall further supplement its response to state whether it was operating under the "belief that it had no obligation to act until Aspen Insurance Company [*i.e.,* the underlying carrier] paid its policy limits to Ohio Management." [FN4]

> FN3. In its Supplemental Answer to Interrogatory No. 7, James River further elucidated that its claims file, as submitted, includes the steps that have been used to determine the claims adjusting procedures and further indicates the steps that have been taken in pursuance of that goal.

> FN4. *See* Plaintiff's Interrogatory No.7.

(5) As to Interrogatory No. 14 (explain why as of January 17, 2006, nearly five months after the loss, JRIC was only beginning the estimation process), plaintiff's motion to compel is DENIED.[FN5]

> FN5. *See* Defendant's Supplemental Answer to Interrogatory No. 14 (incorporating its Supplemental Response to Interrogatory No. 15).

(6) As to Interrogatory No. 15 (regarding details of any actions of Ohio Management which it contends may have impeded James Rivers investigation of the claim) and considering plaintiff's counsel's explanation of the term "actions of plaintiff" *(i.e.,* not permitting access to the damaged property, *inter alia)*, defendant shall further supplement its response to definitively state whether it contends that any such actions on plaintiff's part impeded James River's investigation and, if so, give details regarding any such impediment.

*2 (7) As to Interrogatory No. 18, Interrogatory No. 19, Interrogatory No. 20, Request for Production Nos. 1 and 2 (specifically referring to statements made to stockholders and inquiring as to the existence of an estimate of losses based primarily on an analysis of each individual policy in areas affected by Hurricane Katrina using catastrophe modeling to estimate the impact of the hurricane on properties JRIC insured), defendant shall further supplement its response to state whether any such estimate exists with respect to the plaintiff's policy and, if so, either provide same to the plaintiff or to the Court for *in camera* review.

(8) As to Requests for Admission Nos. 3-7 and 9, plaintiff's motion to compel is DENIED.[FN6]

> FN6. Whether admitted or denied, the conclusions asserted in the subject requests will not eliminate or resolve any issue to be adjudicated on the merits.

(9) As to Interrogatory No. 21 (regarding estimated after-tax losses from Hurricane Katrina/revisions of same, if any, etc.) [FN7] and Request for Production No. 23 (copy of "catastrophe reinsurance treaty" in effect on August 29, 2005),[FN8] plaintiff's motion to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 3

Slip Copy, 2006 WL 1985962 (E.D.La.)
(Cite as: Slip Copy)

compel is GRANTED. To the extent that the information and/or documents may contain proprietary or confidential information, defendant's production shall be made pursuant to a consent protective order [FN9] prohibiting the disclosure beyond the bounds of the instant litigation, which shall be confected by counsel for the parties and executed by the undersigned Magistrate Judge.

FN7. As discussed at the time of hearing, the question does not appear to relate to the issue of punitive damages at all and rather is directed at exacting information relative to the insured loss at pertinent times throughout the pendency of the plaintiff's claimed insurance loss (i.e., information which was either known by or reasonably knowable by the insurer. This is relevant to the issue of bad faith.

FN8. See Bondex International, Inc. v. Hartford Accident and Indemnity Co., 2006 WL 355289 (N. D.Ohio) (reinsurance is not privileged per se -defendants make a stronger case for their assertion that information about reserves is not discoverable); Tardiff v. Knox County, 224 F.R.D. 522 (D. Maine 2004) (noting that reinsurance agreements are discoverable under Rule 26(a)(1)(D) and that it is totally irrelevant that reinsurers would pay insurer and that plaintiff cannot sue the reinsurer directly); Missouri Pacific Railroad Co v. Aetna Casualty & Surety Co., 1995 WL 861146 (N. D.Tex.) (comparing Rule 26(a)(1)(D) with former Rule 26(b)(2) and noting that discovery of reinsurance agreements is clearly authorized, if not required, by the Federal Rules of Civil Procedure since by definition such policies would render a reinsurer liable for all or part of an adverse judgment entered against the primary insurer which obtained the reinsurance policy); FDIC v. Marsiglia, 1992 WL 300830 (E.D.La.) (Lemelle, J.) (ordering production of reinsurance agreements).

FN9. See Missouri Pacific Railroad Co v. Aetna Casualty & Surety Co., 1995 WL 861146 (N. D.Tex.) ("Although confidentiality with regard to the identity of reinsurers and the terms of reinsurance policies may be appropriate, Plaintiff is entitled to review policies of reinsurance, if they exist.").

(10) As to Request for Production No. 9 (any and all forms dealing, in any way, with reserves or monetary authority relative to this claim, whether filled out or not), the defendant interposed an objection on the basis of privilege. Accordingly, the defendant shall formulate a separate privilege log addressing only reserve information/forms and produce said documents in camera to the undersigned Magistrate Judge for review.[FN10] As to defendant's relevance objection (i.e., that evidence of the amount of reserves is not relevant because it is not necessarily based on a full knowledge of the facts and the law of the case), defendant shall contemporaneously file a brief memorandum explaining precisely how individual and aggregate case reserves are established and describe any events, circumstances, guidelines and/or regulations which will precipitate or require a revision of same.

FN10. Where the reserves have been established based on legal input, the results and supporting papers most likely will be work-product and may also reflect attorney-client privilege communications. Whether aggregate or individual, case reserve figures reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim. By their very nature they are prepared in anticipation of litigation, and consequently, they are protected from discovery as opinion work-product. Hickman v. Taylor, 329 U.S. 495, 512, 67 S.Ct. 385, 91 L.Ed. 451 (1947); In re Murphy, 560 F.2d 326, 336 (8th Cir.1977); Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co., 139 F.R.D. 609, 614 (E.D.Pa.1991). Additionally, Rule 26(b)(3)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 4

Slip Copy, 2006 WL 1985962 (E.D.La.)
(Cite as: Slip Copy)

requires a court to "protect against disclosure of the mental impressions, conclusions opinions or legal theories of an attorney *or other representative of a party concerning the litigation.*" Fed.R.Civ.P. 26(b)(3) (emphasis added). Thus protective work product is not confined to information or materials gathered or assembled by a lawyer. Instead, it includes materials gathered by any consultant, surety, indemnitor, insurer, agent, or even the party itself. *Id.* The question is whether the mental impressions were documented, by either a lawyer or non-lawyer *in anticipation of litigation.* In summary, documents based on mental impressions of its lawyers and representatives concerning litigation, strategy and costs may be of limited value, but they should not be the subject of discovery. *See Rhone-Poulenc Rorer, Inc.*, 139 F.R.D. at 613-616 (emphasis added); *Bondex International, Inc. v. Hartford Accident and Indemnity, Co.*, 2006 WL 355289 * * 2-3 (N. D.Ohio Feb. 15, 2006). Ohio Management cites no case which persuasively rebuts the court's reasoning in *Rhone-Poulenc Rorer. See Culbertson v. Shelter Mutual Ins. Co.*, 1998 WL 743592 (E.D.La.) (Africk, M.J.) (finding reserve information discoverable but specifically noting that *no arguments were made regarding either attorney-client or work product privilege); First National Bank of Louisville v. Lustig*, 1991 WL 236839 (E.D.La.1991) (Mentz, J.) (finding reserve information discoverable but without any discussion as to the applicability of attorney-client/ work product privileges and/or waiver of same).

(11) As to Request for Production No. 11 (any and all correspondence between JRIC/JRG and any expert consulted relative to this claim), Request for Production No. 14 (any and all communications with any retained/testifying expert relative to plaintiff's claim), and Request for Production No. 18 (copies of any documents generated by any consulting or testifying expert notwithstanding any expert reports which are subject to the Court ordered deadlines), the Court rules as follows: (1) insofar as the aforesaid requests for production seek disclosure of the identities of any consulting and/or non-testifying expert, defendant's objections are SUSTAINED in absence of any showing of *exceptional* circumstances; and (2) as to testifying experts, the defendant correctly notes that the district judge's scheduling order governs and thus plaintiff's motion to compel is DENIED insofar as it seeks to supersede the scheduling order imposed by the district judge. However, nothing stated hereinabove should be construed as *carte blanche* to delay adjustment of claimed loss [FN11] or in derogation of defendant's duty supplement its discovery responses as new responsive information and/or documents become available.

> FN11. In this regard, plaintiff contends that it has suffered a covered loss in excess of the excess insurer's policy limits due to wind damage on 26 properties, has presented the defendant with proofs of loss against the policy totalling $12,594,356.60 and that JRIC had not initiated loss adjustment as of January 17, 2006.

\*3 **IT IS FURTHER ORDERED** that, within ten (10) days of the entry of this order, defendant shall resolve the above mentioned deficiencies by providing supplemental discovery responses to the plaintiff and privileged documents to the undersigned for *in camera* review, together with a log and a memorandum addressing the calculation of reserves.

E.D.La.,2006.
Ohio Management, LLC v. James River Ins. Co.
Slip Copy, 2006 WL 1985962 (E.D.La.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1035305 (Trial Pleading) Answer to Complaint for Damages (Mar. 9, 2006) Original Image of this Document (PDF)
• 2006 WL 625451 (Trial Pleading) Answer to Complaint for Damages (Feb. 21, 2006) Original Image of this Document (PDF)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 5

Slip Copy, 2006 WL 1985962 (E.D.La.)
**(Cite as: Slip Copy)**

• 2006 WL 361797 (Trial Pleading) Complaint for Damages (Jan. 25, 2006) Original Image of this Document (PDF)
• 2:06cv00280 (Docket) (Jan. 25, 2006)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.