# EXHIBIT 1

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

# FORM 10-K

### ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES AND EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2005          Commission file number 1-13953

# W. R. GRACE & CO.

| Incorporated under the Laws of the State of Delaware | I.R.S. Employer Identification No. 65-0773649 |
|---|---|

**7500 Grace Drive, Columbia, Maryland 21044-4098**
**410/531-4000**

Securities registered pursuant to Section 12(b) of the Exchange Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Stock, $.01 par value<br>Preferred Stock Purchase Rights | New York Stock Exchange, Inc. |

Securities registered pursuant to Section 12(g) of the Exchange Act:

None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.

Yes ☐         No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Exchange Act.

Yes ☐         No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months and (2) has been subject to such filing requirements for the past 90 days.

Yes ☒         No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulations S-K is not contained herein and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☐          Accelerated filer ☒          Non-accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).

Yes ☐         No ☒

The aggregate market value of W. R. Grace & Co. voting and non-voting common equity held by non-affiliates as of June 30, 2005 (the last business day of the registrant's most recently completed second fiscal quarter) based on the closing sale price of $7.79 as reported on the New York Stock Exchange was $433,873,772.*

At February 17, 2006, 67,051,200 shares of W. R. Grace & Co. Common Stock, $.01 par value, were outstanding.

DOCUMENTS INCORPORATED BY REFERENCE

None.

*Excludes 11,219,148 shares of outstanding W. R. Grace & Co. ("Grace") Common Stock held by directors and executive officers and stockholders, whose beneficial ownership exceeds 10% of the outstanding shares of Grace Common Stock, as of June 30, 2005. Exclusion of shares held by any person should not be construed to indicate that such person possesses the power, direct or indirect, to direct or cause the direction of the management or policies of Grace, or that such person is controlled by or under common control with Grace.*

settled or adjudicated; no or insufficient documentation; failure to identify a Grace product; the expiration of the applicable statute of limitations and/or statute of repose, and/or laches; and a defense that the product in place is not hazardous. As of February 21, 2006, following the reclassification, withdrawal or expungement of claims, approximately 990 property damage claims remain outstanding.

Eight of the ZAI cases were filed as purported class action lawsuits in 2000 and 2001. In addition, eight lawsuits were filed as purported class actions in 2004 and 2005 with respect to persons and homes in Canada. These cases seek damages and equitable relief, including the removal, replacement and/or disposal of all such insulation. The plaintiffs assert that this product is in millions of homes and that the cost of removal could be several thousand dollars per home. As a result of the Chapter 11 filing, the eight U.S. cases have been transferred to the Bankruptcy Court. Based on Grace's investigation of the claims described in these lawsuits, and testing and analysis of this product by Grace and others, Grace believes that the product was and continues to be safe for its intended purpose and poses little or no threat to human health. The plaintiffs in the ZAI lawsuits (and the U.S. government in the Montana criminal proceeding described below) dispute Grace's position on the safety of ZAI. In July 2002, the Bankruptcy Court approved special counsel to represent, at Grace's expense, the ZAI claimants in a proceeding to determine certain threshold scientific issues regarding ZAI. On October 18, 2004, the Bankruptcy Court held a hearing on motions filed by the parties to address a number of important legal and factual issues regarding the ZAI claims, and has taken the motions under advisement. The Bankruptcy Court has indicated that it may require further proceedings with respect to the matters addressed in the motions and no decision has yet been rendered. Given the early stage of litigation, Grace's recorded asbestos-related liability at December 31, 2005 assumes the risk of loss from ZAI litigation is not probable. If Grace's view as to the risk of loss were not sustained, management believes the cost to resolve the matter would be material.

*Asbestos Personal Injury Litigation*

Asbestos personal injury claimants allege adverse health effects from exposure to asbestos-containing products formerly manufactured by Grace. Claims are generally similar to each other, differing primarily in the type of asbestos-related illness allegedly suffered by the plaintiff. Grace's cost to resolve such claims has been influenced by numerous variables, including the solvency of other former producers of asbestos-containing products, cross-claims by co-defendants, the rate at which new claims are filed, the jurisdiction in which the claims are filed, and the defense and disposition costs associated with these claims.

Cumulatively through the date of the Chapter 11 filing, 16,354 asbestos personal injury lawsuits involving approximately 35,720 claims were dismissed without payment of any damages or settlement amounts (primarily on the basis that Grace products were not involved) and approximately 55,489 lawsuits involving approximately 163,698 claims were disposed of (through settlements and judgments) for a total of $645.6 million. As of the date of the Chapter 11 filing, 129,191 claims for personal injury were pending against Grace. Grace believes that a substantial number of additional personal injury claims would have been received between the date of the Chapter 11 filing and December 31, 2005 had these claims not been stayed by the Bankruptcy Court.

Prior to the Chapter 11 filing date, based on its experience and analysis of trends in asbestos personal injury litigation, Grace endeavored to project the number and ultimate cost of all present and future personal injury claims expected to be asserted, based on actuarial principles, and to measure probable and estimable liabilities under generally accepted accounting principles. After the Chapter 11 filing and prior to the filing of the plan of reorganization, Grace did not change its recorded asbestos-related personal injury liability because it did not believe that there was an appropriate basis to do so.

*Treatment of Asbestos Litigation under Plan of Reorganization*

Under the plan of reorganization, Grace is requesting that the Bankruptcy Court determine the aggregate dollar amount, on a net present value basis, that must be funded on the effective date of the plan of reorganization into an asbestos trust (established under Section 524(g) of the Bankruptcy Code) to pay all allowed pending and future asbestos-related personal injury and property damage claims (including ZAI) and related trust administration costs and expenses on the later of the effective date of the plan of reorganization or when allowed. We refer to this amount herein as the Funding Amount. It is a condition to confirmation of the plan of reorganization that the Bankruptcy Court shall conclude that the Funding Amount is not greater than $1,613 million. This amount, which should be sufficient to fund over $2 billion in pending and future claims, is based in part on Grace's evaluation of:

- existing but unresolved personal injury and property damage claims;

22

- actuarially-based estimates of future personal injury claims;
- the risk of loss from ZAI litigation;
- proposed claim payments reflected in the plan of reorganization; and
- the cost of the trust administration and litigation.

This amount may not be consistent with what the Bankruptcy Court may conclude would be a sufficient Funding Amount.

The Bankruptcy Court has issued separate case management orders for estimating liability for pending and future personal injury claims and pending property damage claims, excluding ZAI claims. The case management orders originally contemplated that estimation hearings would take place in September 2006. However, in connection with the latest extensions of Grace's exclusive right to propose a plan of reorganization, the Bankruptcy Court has deferred the estimation process to provide Grace and the other stakeholders in the Chapter 11 proceeding with an opportunity to negotiate a resolution of all or a portion of Grace's asbestos-related liabilities. The Bankruptcy Court has appointed a mediator to facilitate these negotiations. As a result of this deferral, if negotiations are not successful and the Bankruptcy Court resumes the estimation process, Grace does not expect estimation hearings would take place until late 2006 or early 2007.

For personal injury claims, the Bankruptcy Court has ordered that all claimants with claims pending as of the date of the Chapter 11 filing must complete detailed questionnaires providing information on, among other things, their medical condition, including diagnostic support, exposure to Grace and non-Grace asbestos-containing products, employment history, and pending lawsuits against other companies. Such information will be analyzed by experts and presented to the Bankruptcy Court, including estimates of the number of personal injury claims expected to be filed in the future, as the basis for determining the Funding Amount in respect of all pending and future asbestos personal injury claims.

For property damage claims, the case management order provides that estimation will be preceded by litigation on certain common threshold issues affecting a substantial majority of claims. Such litigation will consist of determining the date by which building owners knew or should have known of the reported hazards of asbestos-containing materials in their buildings, which would provide the basis for a statute of limitations defense, and the evidentiary admissibility of certain asbestos testing methodologies. During the period preceding the estimation hearing, Grace will also ask the Bankruptcy Court to rule on Grace's specific objections to individual claims and groups of claims. Claims not resolved or expunged through the common issue litigation or the objection process would be the subject of an estimation hearing, which would provide the basis for a Bankruptcy Court determination of the Funding Amount in respect of all property damage claims and may also provide for the allowability of the remaining property damage claims.

The Funding Amount will be primarily a function of the estimated number of allowed property damage and personal injury claims, and the amount payable per claim. Through the estimation process, Grace will seek to demonstrate that most claims should not be allowed because they fail to establish any material property damage, health impairment or significant occupational exposure to asbestos from Grace's operations or products. If the Bankruptcy Court agrees with Grace's position on the number of, and the amounts to be paid in respect of, allowed personal injury and property damage claims, then Grace believes that the Funding Amount could be less than $1,613 million. However, this outcome is highly uncertain and will depend on a number of Bankruptcy Court rulings favorable to Grace's position.

Conversely, the asbestos claimants committees and the future claimants representative continue to assert that Grace's asbestos-related liabilities are substantially higher than $1,613 million, and in fact are in excess of Grace's business value. If the Bankruptcy Court accepts the position of the asbestos claimants committees, then any plan of reorganization likely would result in the loss of all or substantially all equity value by current Grace shareholders. Therefore, due to the significant uncertainties of this process and asbestos litigation generally, Grace is not able to estimate a probable Funding Amount that would be accepted by the Bankruptcy Court.

However, as Grace is willing to proceed with confirmation of the plan of reorganization with a Funding Amount of up to $1,613 million (assuming that other conditions precedent to confirmation of the plan of reorganization are satisfied, including the availability of the payment from Cryovac directly to the asbestos trust under the settlement agreement described below), during the fourth quarter of 2004, Grace accrued and took a charge of $714.8 million to increase its recorded asbestos-related liability to reflect the maximum amount allowed as a condition precedent under the plan of reorganization. This amount, plus $87.0 million for pre-Chapter 11 contractual settlements and judgments, brings the total recorded asbestos-related liability as of December 31, 2005 to $1,700.0 million. Any differences between the plan of reorganization as filed and as approved for confirmation could fundamentally change the accounting measurement of Grace's asbestos-related liability and that change could be material.