**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Related Docket No. 14044** |
| | ) | **Objection Deadline:  January 5, 2007** |
| | ) | **Reply Deadline:  January 12, 2007** |
| | ) | **Hearing Date: January 23, 2007 @ 8:30 a.m.** |

**OPPOSITION OF THE FUTURE CLAIMANTS' REPRESENTATIVE
TO W.R. GRACE & CO.'S MOTION
TO QUASH 30(b)(6) DEPOSITION NOTICE
AND FOR A PROTECTIVE ORDER**

David T. Austern, the Court-appointed legal representative for future asbestos claimants (the "Future Claimants' Representative" or "FCR"), by and through his undersigned counsel, hereby files this *Opposition to W.R. Grace & Co.'s* (collectively, the "Debtors" or "Grace") *Motion to Quash 30(b)(6) Deposition Notice and for a Protective Order* (Docket No. 14044) (the "Motion"), and respectfully requests that the Court deny the Motion.

**I.      INTRODUCTION**

In the Motion, the Debtors ask the Court to deny the FCR and the Official Committee of Asbestos Personal Injury Claimants (the "ACC") their procedural right to a 30(b)(6) deposition.  In support of their position, the Debtors argue that the ACC and FCR's request for a 30(b)(6) deposition is objectionable in almost every conceivable way:  it invades the attorney-client privilege, is unreasonably cumulative, duplicative, and

burdensome under Fed. R. Civ. P. 26(b)(2), and intrudes upon "the province of experts."[1]

Grace even argues that its obligation to produce a corporate designee deponent somehow

was fulfilled more than four years ago in the largely unrelated *Sealed Air* matter in which

the FCR was not a party and where – in stark contrast to this case – there was no dispute

over the methodology to be used for the estimation of Grace's liability as of the time of

the transfers at issue.[2]  The Debtors' arguments are misapplied and unsupported, and their

Motion should be denied.

## II.    FACTUAL BACKGROUND

The Debtors petitioned this Court for relief under Chapter 11 of the Bankruptcy

Code on April 2, 2001.  In November 2004, the Debtors proposed an initial plan of

reorganization to deal with their substantial asbestos liability.  The Debtors filed an

amended plan of reorganization in early January 2005 (the "Plan").  The Plan assumes

that the level of funding necessary to pay present and future asbestos-related claims is not

greater than $1.613 billion.

---

[1] The Debtors assert that the number of claims filed, the number of claims settled, and the average claim settlement amount will be the subject of expert testimony, and that the ACC and FCR are attempting to preemptively gather expert witness information.  Motion at p. 15.  While these numbers may underlie the calculations the experts conduct, the numbers were not created by the experts.  Instead, the numbers and data (*i.e.*, discoverable, underlying facts) were compiled by Grace into a pre-petition claims database, which Grace refers to as the CMS database.

[2] In September 2000, Grace was named in a purported class action suit in California alleging that a 1996 reorganization involving a predecessor of Grace and Fresenius Medical Care Holdings, Inc., and a 1998 reorganization involving a predecessor of Grace and Sealed Air Corporation, were fraudulent transfers.  Although these lawsuits were stayed as a result of Grace's Chapter 11 filing, this Court authorized the ACC to proceed with claims against Sealed Air and Fresenius on behalf of Grace's bankruptcy estate.  On November 29, 2002, Sealed Air and Fresenius each announced that they had reached agreements in principle with the ACC to settle asbestos, successor liability, and fraudulent transfer claims relating to the transactions in question.  This Court approved the Fresenius and Sealed Air settlements on July 2003 and June 2005, respectively.

Following the filing of the Plan, the Debtors, the FCR, the ACC, and others engaged in discovery for purposes of the Court's anticipated estimation of pending and future asbestos personal injury claims against Grace.  The ACC served written discovery requests and supplemental discovery requests on the Debtors on October 14, 2005 and October 19, 2006, respectively.  The Debtors served their partial responses and objections on November 14, 2005 and November 20, 2006.

On October 3, 2006, the ACC and FCR served a notice of a Rule 30(b)(6) deposition on the Debtors, which seeks information relating to, *inter alia*: (1) estimates of Grace's liability for Asbestos Tort Claims for both external and internal purposes; (2) processes and procedures by which Grace settled, defended, litigated or resolved claims; (3) processes and procedures for identifying jobsites, asbestos-related diseases, and exposure to Grace Asbestos-Containing Products; (4) historical trends of Grace's resolution of Asbestos Tort Claims including number of claims filed and settled by disease category; (5) Grace's criteria or decision process for determining when to settle or litigate Asbestos Tort Claims, including evidence considered by Grace before it would offer an Asbestos Tort Claimant money to settle; and (6) the value of Asbestos Tort Claims in settlement, and what factors Grace considered important in evaluating an Asbestos Tort Claim for purposes of settlement.

The Debtors have repeatedly resisted the FCR and ACC's discovery requests.  A number of meet and confer sessions were held, but the parties have been unable to resolve their differences.  Specifically, the Debtors have refused to provide the ACC and FCR with documents responsive to their requests for the actuarial-based studies underlying their Form 10-Ks filed with the United States Securities and Exchange

Commission (the "SEC"), which resulted in the filing of a separate but related motion to compel (*see* Docket No. 14057). Further, the Debtors have attempted to avoid their obligations pursuant to the FCR and ACC's 30(b)(6) deposition notice by, among other things, offering a substitute discovery device that is inadequate and inappropriate. This dispute is the subject of the instant Motion (*see* Docket No. 14044), which the FCR respectfully submits, as described herein, should be denied.

## III.    ARGUMENT

### A.    The FCR and ACC Control Their Own Discovery, Not the Debtors

The FCR and ACC – not the Debtors – have the right to determine the manner of their own discovery as long as it is permissible under the Federal Rules of Civil Procedure.[3] Depositions are a superior form of discovery which allow the person taking the deposition to obtain immediate follow-up, observe demeanor, and avoid pre-prepared answers which are likely to lead to additional discovery disputes. Depositions may be taken for *any* matter that is not privileged and that is relevant to the claim or defense of any party. *In re Subpoena Issued to Dennis Friedman*, 350 F. 3d 65, 69 n.3 (2d Cir. 2003) (*citing Greenberg v. Safe Lighting Inc., Inertia Switch Div.*, 24 F.R.D. 410, 411 (S.D.N.Y. 1959) ("Experience has made it abundantly clear that the advantages of oral examination far outweigh the advantages of written interrogatories in

---

[3] Fed. R. Civ. P. 30(b)(6), made applicable to this proceeding by Rules 7030 and 9014 of the Federal Rules of Bankruptcy Procedure, provides that a party may depose a public corporation, and that the organization so named shall designate a person or persons who will testify as to the matters known or reasonably available to the organization.

carrying out the deposition procedures in aid of discovery under the [Federal R]ules [of Civil Procedure].")).

Nevertheless, the Debtors' Motion is replete with offers to provide declarations, affidavits, and written discovery, *i.e.*, anything but a 30(b)(6) deposition. Grace makes these offers on the mistaken assumption that it should be able to control the ACC and FCR's discovery, even when Grace's previous substitutes for 30(b)(6) testimony have been wholly inadequate. For example, in lieu of a corporate designee witness on topic number 4 of the 30(b)(6) deposition notice (historical trends of Grace's resolution of Asbestos Tort Claims including number of claims filed and settled by disease category), Grace produced a completely uninformative – indeed almost illegible – print-out of a portion of its claims database.[4] In light of Grace's prior efforts to avoid a 30(b)(6) deposition through such "simpler" methods, Grace should not now be allowed to mandate the form of the FCR and ACC's discovery.

### B.   The 30(b)(6) Deposition is Neither Duplicative Nor Cumulative of Previous Discovery

Grace's contention that the information requested in the 30(b)(6) deposition notice is duplicative, cumulative, and unduly burdensome is without merit. It is clear that a 30(b)(6) deposition is warranted because there are many unanswered questions which are relevant to this litigation, and Grace has failed to show undue burden or any other element under Fed. R. Civ. P. 26(b)(2) which would weigh in favor of granting the

---

[4] Attached hereto as **Exhibit A** (filed under seal) is an excerpt illustrating the Debtors' attempt to provide written discovery in response to topic number 4 of the 30(b)(6) deposition notice, which is essentially incomprehensible. Accordingly, Grace's effort to relegate topic number 4 to written discovery should be denied. Motion at p. 15. Grace offers no acceptable rationale for denying discovery of such information in deposition and, as noted, has already failed to properly provide the information via written discovery.

Debtors' protective order. *Hurley v. JARC Builders, Inc.*, 164 F.R.D. 39, 40 (E.D. Pa. 1995) (court denied motion for protective order from second deposition noting that there were many unanswered relevant questions, and the movants had demonstrated neither undue burden or expense); *Christy v. Penn. Tpk. Comm'n*, 160 F.R.D. 51, 53 (E.D. Pa. 1995) (Court denied motion for protective order because movant asserted no particular harm or burden, nor any demonstration of how the second deposition would be cumulative.). In response to every type of discovery propounded by the FCR and ACC, Grace has routinely asserted that the testimony obtained as part of the *Sealed Air* litigation in 2002, is somehow sufficient to cover *all* of the topics on which the ACC and FCR currently seek discovery. This assertion cannot be further from the truth.

At issue in the *Sealed Air* litigation was Grace's solvency at the time of the 1998 Sealed Air transaction. During the course of that litigation, Grace produced several documents relating to its internal estimates of its aggregate asbestos liability as of the time of the 1998 transaction, and the ACC took deposition discovery on Grace's claims and settlement history. That discovery was taken for the purpose of determining Grace's aggregate asbestos liability and its solvency; there was no dispute between the parties about the basic methodology to be used to estimate Grace's aggregate asbestos liability as of the time of the 1998 transfers.

The current discovery, now four years later, is aimed at a very different determination. As the ACC aptly argued in its pending Motion to Compel Production of Certain Actuarial Studies,

> Grace has strived to turn this estimation proceeding into a contest of methodologies. Here, the [ACC] and the [FCR] are developing an estimate of Grace's liability that is tied to Grace's claims and settlement history, an approach that has been recognized and adopted

by all the courts that have rendered estimation decisions in asbestos bankruptcy cases. On the other side is Grace, which is doing its utmost to escape its own claims history, and is attempting to develop an alternative estimate by utilizing data from claimant questionnaires – an unorthodox and defective approach that no court to date has recognized or adopted.

*Motion of the Official Committee of Asbestos Personal Injury Claimants to Compel Debtors' Production of Certain Actuarial Studies Referenced in Their Securities Filings*, dated Dec. 22, 2005, Docket No. 14057, at pp. 2-3. Thus, whereas in *Sealed Air* there was no real dispute between the parties that the best way to estimate Grace's aggregate asbestos liability was based upon past history and actuarial projections of future claims, the goal of the ACC and FCR's discovery in this estimation proceeding is (1) to understand the *methodology* used by Grace in accounting for future and current asbestos personal injury liabilities – specifically *how* historical estimates were developed, *how* settlement and litigation decisions were made, and what factors went into setting the reserve levels and (2) to demonstrate to the Court that Grace itself chose to estimate its aggregate asbestos liability for business planning, SEC reserve and bankruptcy plan formulation purposes using the same type of methodology that will be used by the ACC/FCR experts in the estimation hearing.

Further, the case law cited by Grace in support of its contention that witnesses may not be re-deposed, when they have previously been deposed on the same topic, is inapplicable. In each of those cases, the witnesses were being deposed as part of the *same* litigation over the exact *same* topic. As the following discussion demonstrates, Grace's witnesses *have not* testified with respect to all of the areas the FCR and ACC are requesting for purposes of the estimation.

## 1.    Reserve Topics

Grace's estimates and calculations of its liability for asbestos tort claims including its reserve amounts are highly relevant topics in the estimation proceeding. Grace alleges that the information is cumulative and duplicative because the topics of liability estimates and reserves were addressed in the *Sealed Air* litigation and because Grace's post-petition reserve amounts are contained in its Form 10-K Annual Reports filed with the SEC (the "SEC 10-Ks"), which "speak for themselves." Motion at pp. 5-6. Nevertheless, Grace has indicated that it is prepared to sign a declaration outlining the bases of such filings, thus conceding the relevance of the discovery sought. Motion at p. 6. But without seeing the proposed declaration, the Court cannot determine whether it would render any 30(b)(6) testimony on the same topic cumulative or whether it would fully satisfy Grace's discovery obligations. Not surprisingly, Grace has not cited any authority for the proposition that a Court can enter a protective order to prevent one form of discovery on the basis of the movant's offer to provide a different form of discovery yet unseen.

Moreover, contrary to Grace's assertions that its SEC 10-Ks speak for themselves, the SEC 10-Ks contain only the *amount* of Grace's reserves and only a broad, categorical listing of what Grace considered in arriving at that reserve amount. The FCR and ACC have the right to know what specific information was used to reach the reserve amount, what information was not considered, and in what ways any internal estimates differ from those reported. For example, Grace's March 13, 2006 10-K, covering the period ending December 31, 2005, refers to two items of data which form a primary component of the asbestos personal injury reserve: (i) the Company's evaluation of existing but unresolved personal injury and property damage claims and (ii) an actuarially-based estimate of future personal injury claims. Nowhere within the March 13, 2006 10-K are these

documents described in any detail, yet Grace explicitly relies on these in estimating its liability for both SEC reporting and plan funding purposes. The FCR and ACC not only are entitled to this underlying data, but also are entitled to have a corporate representative explain how the information was used.

## 2.    Product Information

Grace has had multiple opportunities to provide product information through alternative forms of discovery and has failed to do so. As noted by Grace, the FCR and ACC have previously requested product information, but aside from product appendices, Grace has failed to provide any substantial responses.

Far from being cumulative, the requested 30(b)(6) testimony is relevant and has never been produced by Grace. Grace has previously asserted in this bankruptcy that product and disease identification are essential components to their estimation procedure. It should be obvious that a product identification list is insufficient for analysis of these components. Accordingly, the testimony regarding the processes and procedures Grace typically undertook in identifying jobsites, asbestos-related diseases, and exposure to Grace products is particularly relevant to the estimation proceeding. Grace's allegation that the information is "as easy to access for the Committees as it is for Grace," ignores the fact that much of the information being requested resides in the memories of individuals who employed the processes or procedures in assessing these components of the asbestos-related claims. Motion at p. 8. This information is not available through the Grace document repository, the documents produced to the EPA, privilege logs, or sample discovery responses, and therefore it must be provided by Grace in the form of a 30(b)(6) deposition.

### 3.    Historical Settlement Information

Grace's settlement history is relevant to any estimation of Grace's pending and future liability.   The Debtors assert that the production of the CMS database, previous 30(b)(6) testimony on the subject generally, and Grace's offer to make Messrs. Beber, Siegel and Hughes available for deposition in their individual capacities should be sufficient.   This assertion clearly indicates the lack of importance and understanding Grace places on this key element of estimation.   None of these sources of information provide the requisite level of particularity or focus on Grace's actions, processes, and procedures necessary for purposes of the estimation procedure.

For example, the CMS database cannot explain the process or procedure by which Grace settled, defended, litigated, or otherwise resolved its asbestos tort claims.   It lacks detail of the criteria or decision-making process, including evidence or other factors Grace utilized to determine when to settle or litigate those claims.

Finally, Grace's contention that its agreement to make Messrs. Beber, Siegel, and Hughes available for individual, Rule 30(b)(1) depositions is sufficient to meet its obligations is baseless.   The concept behind 30(b)(6) depositions is that the corporation testifies, not an individual in his or her individual capacity.   As noted in the Advisory Committee Notes to the 1970 Amendments to Rule 30 (which added subdivision (b)(6)): "The new procedure should be viewed as an added facility for discovery, one which may be advantageous to both sides as well as an improvement in the deposition process . . . It will curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it."   At the least, the Court should defer ruling on

Grace's Motion with respect to this issue until after the depositions of Messrs. Beber, Siegel and Hughes have been taken. If the witnesses limit their testimony to personal knowledge and are incapable of providing full discovery, then Grace should be required to educate a 30(b)(6) witness.

### C.    The Deposition Topics Do Not Call for Attorney Work-Product

The information Grace alleges constitutes work-product is not work-product and therefore does not qualify for the protections of Fed. R. Civ. P. 26(b)(3). Further, even assuming that the material is work-product, the ACC and FCR have evidenced a substantial need for the information which is obtainable only through depositions of Grace.

The work-product doctrine was developed to keep material, "documents or tangible things," prepared by an attorney in anticipation of *identifiable* litigation from being used against their clients in such litigation. *Novartis Pharm. Corp. v. Abbot Lab.*, 203 F.R.D. 159, 163 (D. Del. 2001). The party claiming work-product immunity carries the burden of proving that the document or tangible thing in question was prepared "in anticipation of litigation." *See Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000) ("A party claiming work-product immunity bears the burden of showing that the materials in question 'were prepared in the course of preparation for possible litigation.'") (citations omitted); *In re Tri State Outdoor Media Group, Inc.*, 283 B.R. 358, 363 (Bankr. M.D. Ga. 2002) ("The burden initially rests on the party asserting the work product doctrine to prove that the documents were prepared in anticipation of litigation."). Grace has not met this burden.

The Debtors' basis for claiming work-product protection is that the material requested was "prepared by Grace's attorneys in anticipation of – and as part of – ongoing litigation." Motion at p. 11. This contention is wrong. In the case of reserve amounts, Grace has not put forward any facts that would lead this Court to conclude that Grace's reserves were prepared in anticipation of litigation, and not for business or SEC reporting purposes.[5] *See* Fed. R. Civ. P. 26(b)(3) advisory committee note (explaining that "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes" are excluded from work-product protection). As the ACC argued in its pending Motion to Compel Production of Certain Actuarial Studies, the Eight Circuit's decision in *Simon v. G.D. Searle & Co.*, 816 F.2d 397 (8th Cir. 1987) is instructive on this point. The *Simon* Court determined that a company's *aggregate* reserve information which was used for multiple aspects of business planning, including litigation, was not prepared *in anticipation of litigation* and thus did not qualify for work-product protection.

Assuming for the sake of argument that Grace's reserves do constitute work-product, the opposing party would be individuals whose cases led to the provision of the reserves, *i.e.*, the individual asbestos claimants. Neither the FCR nor ACC fit into that category. *In re Teleglobe Comm'ns Corp.*, No. 02-11518, 2006 WL 2568371 *16 (D. Del. Feb. 22, 2006) (work-product doctrine was developed to protect work-product as to opposing parties, not from the world at large.)

---

[5] In fact the information relating to the reserves is accountant-based work-product and as such is neither work-product nor attorney-client privilege. *United States v. Arthur Young and Co.*, 465 U.S. 805 (1984) (No confidential accountant-client privilege exists under federal law, and no state-created privilege has been recognized in federal cases).

Although Grace does not assert work-product protection in regard to historical settlement information, it should be clear that such information was not prepared for this bankruptcy proceeding, as ironically, the Debtors do not consider the information to be more than marginally relevant to the estimation proceeding. Obviously, the information the ACC and FCR are requesting is for an evaluation of the historical methodology used by Grace in settling or litigating claims in general, not to determine Grace's liability in the particular underlying cases.

Grace cannot point to a single estimation case where reserve and historical settlement information has been withheld during estimation proceedings under the work-product doctrine. Instead, the Debtors rely on cases in which plaintiffs are asking for reserve information associated with their own litigation or aggregate reserve information from which individual information may be obtained, material prepared in anticipation of the current litigation, or irrelevant information. All of these scenarios are inapposite.[6] The Debtors' attempt to align their position with that advanced by the Court in *In re Celotex* is also unpersuasive. The *In re Celotex* Court determined the documents in question reflected "professional activities" – *i.e.*, they reflected advice, analysis, and opinions of the debtors' advisers and experts, which pertained only to issues in the basic bankruptcy case, and not to the fraudulent conveyance action in which the discovery was

---

[6] *Rhone-Poulen Rorer Inc. v. Home Indemnity Co.*, 139 F.R.D. 609 (E.D. Pa. 1991) (plaintiffs sought reserve information for the underlying claims in the same litigation proceeding. The *Rhone* court emphasized that the plaintiffs were seeking information with a "very tenuous relevance, if any relevance at all."); *Montgomery v. Aetna Plywood, Inc.*, No. 95-C-3193, 1996 WL 189347 (N.D. Ill. July 2, 1996) (Court found that valuation reports produced in anticipation of the underlying litigation were attorney work-product.); *Ohio Mgmt., LLC v. James River Ins. Co.*, No. 06-0280, 2006 WL 1985962 (E.D. La. July 13, 2006) (Court required the defendant to file a brief memo explaining exactly how its individual and aggregate case reserves were established. The case is further distinguishable in that the plaintiff was requesting all reserves related to the underlying litigation.).

sought.  *In re Celotex*, 196 B.R. 596, 598 (Bankr. M.D. Fla. 1996).  Grace's estimates, figures, projections and calculations were not prepared or used solely for purposes of the bankruptcy or estimation and therefore do not constitute attorney work-product.

### D.    The FCR and ACC Have A Substantial Need for the Discovery

Work-product protection is limited to certain circumstances, and those limited circumstances do not apply to Grace's reserves.  Specifically, Federal Rule of Civil Procedure 26(b)(3) provides that a party may obtain discovery of documents that were prepared in anticipation of litigation upon a showing that: (1) the party seeking discovery has substantial need of the materials in the preparation of a party's case; and (2) that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.  The second element of "undue hardship to obtain the substantial equivalent" clearly applies to the reserve estimates, as it is not just unduly hard for the ACC and FCR to obtain this information, but impossible to otherwise obtain a substantial equivalent.

As to the first element, the ACC and FCR have more than a "substantial need" of the materials in the preparation of its case.  The 30(b)(6) depositions are essential because the solicited information goes to a central aspect of this bankruptcy – the estimation of Grace's current and future claims – and the relevant information is solely available to Grace.

Grace's estimates and calculations of its liability for asbestos tort claims, including (i) how it arrived at its reserve amounts ("reserve topics"), (ii) information relating to its products and product uses, and (iii) Grace's historical settlement information, are all essential and form the basis upon which the estimation procedure

may continue.  Estimations predict future, unknown events through an analysis of past, similar, known events, while considering foreseeable factors that are likely to make the future different from the past.  Grace's historical settlement information and the consideration thereof is the central repository for recognizing patterns of claim filing, for the standards applied to settle, and for the amounts at which Grace and claimants historically resolved claims.  Grace's settlement history is being used by both the FCR and ACC's experts for their estimation of Grace's expected asbestos liability.  Grace's attorneys are claiming this information is not very relevant to the current tort world, and thus their experts will either not use it at all or significantly discount it.  The FCR and ACC believe that contrary to Grace's expected assertions, Grace did factor into its historical settlement and litigation decisions issues including: tort reform, suspect doctors, and questionable B-reads.  Obviously what Grace considered or disregarded is discovery that cannot be obtained from any other source.  It is uniquely within the control of Grace.

The FCR and ACC have shown a critical need for the information underlying Grace's establishment of reserves, both in its audited and unaudited financial statements and as contained in Grace's SEC filings.  The discovery of this information is critical to the presentation of the FCR and ACC's estimation case and cannot be obtained other than directly from Grace via oral deposition.  The production of databases, access to product lists, and copies of previous litigation materials provide no more than a skeletal view into the Company's decision-making processes and procedures.  The ACC and FCR must be allowed to question Grace on its prior decisions to settle or litigate cases, its assessment of claims, reliability of claimants, supporting doctors, product identification

requirements, and the impact of potential tort reform. The FCR and ACC must be given the opportunity to assess the validity of the Debtors' expected contention that Grace is operating in a new world and historically did not consider the issues currently identified as significantly effecting its estimation. This data, which is solely in the possession of Grace, is the data which will most bear on the estimation of Grace's asbestos liabilities.

Because the FCR has demonstrated both a substantial need for the requested discovery and that the discovery cannot be obtained from any other source, or by any other manner, any qualified work-product privilege is overcome. *See, e.g., Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *United States v. Amerada Hess Corp.*, 619 F.2d 980, 988 (3d Cir. 1980) (avoidance of compiling information from other sources was sufficient showing of need); *Raso v. CMC Equip. Rental, Inc.*, 154 F.R.D. 126, 129 (E.D. Pa. 1994).

### E.    The Requested Information is Not Unnecessarily Burdensome

Grace strains credulity in asserting that a 30(b)(6) deposition in this multi-billion dollar bankruptcy estimation would be unduly burdensome. Contrary to Grace's assertion, the deposition would not impose a burden on Grace to familiarize a witness "with millions of pages of documents," but to simply educate a witness on how Grace's reserve amounts were calculated, products and processes were identified, and settlement decisions made. Grace also argues that requiring the same three individuals to be put forward as 30(b)(6) and 30(b)(1) witnesses will be duplicative and harassing. To avoid

any duplication, the ACC and FCR are willing to depose the same witnesses on the same

day as both a 30(b)(1) *and* a 30(b)(6) witness.[7]

Moreover, the Fed. R. Civ. P. 26(b) "proportionality test" weighs in favor of

allowing the ACC and FCR to depose Grace on the reserve levels and historical

settlement litigation topics.  Fed. R. Civ. P. 26(b) provides general limitations on the

scope of discovery via a proportionality test which may be used to limit discovery where

the burden or expense of the discovery outweighs its benefit.  In applying this test, courts

in this Circuit have weighed the inquiring party's legitimate discovery needs against the

lawsuit's "nature and complexity, the importance of the issues at stake in a case seeking

damages . . . and the significance of the substantive issues."  *Johnston Dev. Group, Inc.,*

*v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 353 (D. N.J. 1990).  The *Johnston*

*Court* found that the "deposition of an adverse attorney on central factual issues, rather

than peripheral concerns, would weigh more heavily for the proportionality of the

discovery sought."  *Id.*  Specifically the *Johnston Court* found that both a  "lead

attorney"  and  "house counsel"  had particular knowledge, substantial participation, and

had participated in multiple conversations of "clear importance . . . concerning central

issues" for which a substantial equivalent was unavailable and that this weighed "heavily

in favor" of permitting defendants to obtain his deposition testimony.  *Id. at 354-355.*

*See also Ferguson v. Lion Holding Inc.,* No. 02-4258, 2005 WL 1216300 at  *1

(S.D.N.Y. May 23, 2005) (The Court held that the burden of taking one additional

deposition was minimal and that the parties had already demonstrated a willingness to

devote substantial resources to discovery.).  Grace is the only party with the particular

---

[7] The parties in the *Sealed Air* litigation entered into a confidentiality agreement for the 30(b)(6) depositions.  The ACC and FCR are willing to enter into the same agreement for purposes of

knowledge concerning its historical settlement litigation and the processes and

procedures undertaken in setting reserves.  Grace has already agreed to make its counsel

available for  30(b)(1) depositions, and would therefore suffer no undue burden in

making them available for 30(b)(6) depositions.  Because of this fact, and because the

information the ACC and FCR seek relates to the central issue in this case and is only

available through Grace,  the "proportionality test" supports the denial of

the Debtors' Motion.

### F.     Grace Has Already Made A Subject Matter Waiver of the Work-Product Privilege

It is well-settled that the qualified work-product privilege may be waived through

disclosure.  Moreover, the disclosure of some privileged documents concerning a

particular subject matter is held to be a waiver as to all privileged documents concerning

that subject matter. *See,  e.g., Novartis Pharms. Corp. v. Eon Labs Mfg., Inc.*, No. 00-

800-JJF, 2002 U.S. Dist. LEXIS 6491, at *8-9 (D. Del. March 28, 2002) ("Having

concluded that these privileges are waived, the Court concludes that everything with

respect to the subject matter of counsel's advice is discoverable, despite the protection

that is normally afforded to attorney-client communications and work product

material."); *In re Nat'l Smelting of New Jersey, Inc. Bondholders Litig.*, No. 84-3199,

1989 U.S. Dist. LEXIS 16962, at *41 (D.N.J. June 29, 1989) ("The waiver of privilege,

by reliance upon advice of counsel and by disclosure, waives the privilege not only with

respect to the communications actually relied upon or revealed, but also with respect to

all documents and communications upon the same subject matter . . . Once the privilege

has been waived as to some communications upon this subject, it is waived as to all.").

--------

these 30(b)(6) depositions.

Grace asserts that all of the current requests are duplicative and cumulative of information previously produced. By this rationale, Grace has opened the door to that subject matter and any information not previously given but falling within the same subject matter should be disclosed.

Grace previously released reserve information and information underlying their settlement and litigation histories in the *Sealed Air* litigation, including the files of its consultant, KPMG (the company hired to provide an estimate of Grace's future asbestos liabilities). The release of that information constitutes a waiver of any work-product with respect to the related subject matter. Grace voluntarily released this information prior to ever receiving a written document request or being ordered to do so by the Court. The fact that the information now being requested includes similar information which has since developed does not negate the subject matter waiver. The proverbial toothpaste is out of the tube.

In addition to the fact that Grace waived whatever work-product/privilege protection may have attached to its asbestos liability reserve information and documents concerning this topic when it originally produced them to the parties to the *Sealed Air* litigation, the *Sealed Air* documents were also produced to the United States Government. In addition, all the documents Grace ever produced to the ACC, including the documents produced in the *Sealed Air* litigation, were produced by the ACC to the United States Government pursuant to a subpoena.[8] Grace was duly notified of this subpoena, and did not object on privilege or other grounds to the ACC turning over all of these documents to the Government. It is black letter law that once a document arguably protected by the attorney-client privilege or work-product doctrine is produced to a third

party not within the ambit of the privilege, any such privilege which may have once protected the document is forever waived.  There is no plausible argument that Grace's attorney-client or work-product privileges extends to the United States Government and thus any document relating to Grace's aggregate asbestos liability reserves is not protected by any privilege.

**IV.    Conclusion**

Accordingly, for the reasons stated herein, the FCR respectfully requests that the Debtors' Motion should be denied in all respects.

---

[8] A copy of the subpoena is attached hereto as **Exhibit B**.

Dated:  January 5, 2007             Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


*/s/ Raymond G. Mullady, Jr.*
Roger Frankel
Richard H. Wyron
Raymond G. Mullady, Jr.
3050 K Street, NW
Washington, DC 20007
Telephone:  (202) 339-8400

John C. Phillips, Jr. (#110)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
Telephone:  (302) 655-4200

*Counsel for David T. Austern,*
*Future Claimants' Representative*