IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

Hearing Date: January 23, 2007 at 9:00 AM
Agenda Item No. 8

### W.R. GRACE & CO.'S REPLY IN SUPPORT OF ITS MOTION TO QUASH 30(b)(6) DEPOSITION NOTICE AND FOR A PROTECTIVE ORDER

The FCR's and ACC's October 5, 2006 deposition notice (Docket No. 13359) seeks to require Grace to produce Rule 30(b)(6) deponents to testify in four general areas:

- Grace's Pre-Petition Settlements (Topic Nos. 2-6);

- Grace's Asbestos-Claim Estimates (Topic No. 1);

- Grace's Asbestos-Containing Products, the Identity of Grace's Customers and Distributors, the Job Sites Where Grace's Products Were Used, and the Persons Who Were Present At Those Job Sites (Topics 7-10); and,

- The Interpretation of Graces' Asbestos Claim Database (Topic No. 11).

None of these are proper subjects for Rule 30(b)(6) depositions in this case.

I.  **The Pre-Petition Settlement Topics Have Been Resolved By A Stipulation That The Committees Now Seek To Ignore.**

Grace has already agreed to produce its confidential internal settlement files as well as its three most knowledgeable law department witnesses — Messrs. Beber, Hughes, and Siegel — for deposition. The FCR and ACC do not dispute that these are the most knowledgeable witnesses. Grace could have stood on its privilege objections to all of this discovery, but instead negotiated a good-faith compromise of the dispute when it was first raised by the Committees' motion to compel production of the law department's settlement files. Having negotiated that compromise, the Committees should not be allowed to demand 30(b)(6) testimony on the same

topics before they have even bothered to take the three fact witness depositions. "No good deed should go unpunished" is a poor approach for encouraging cooperation and efficiency in discovery. If the compromise is to be that meaningless, the stipulation should be cancelled, and the Court should decide all of the relevance, burden and privilege issues implicated by these multiple waves of discovery demands.

## II. The ACC and FCR Are Not Entitled To 30(b)(6) Depositions Regarding Asbestos-Claim Estimates.

The Committees already have the pre-petition asbestos-claim estimates as a result of the *Sealed Air* litigation. As to the post-petition estimates in Grace's 2004 and 2005 10-Ks, the FCR and ACC spend the bulk of their briefs reiterating the arguments in their Motion to Compel Actuarial Studies, despite the fact that the October 2, 2006 expert discovery stipulation bars the requested discovery and it is privileged in any event.

### A. The Committees' Waiver Argument Is A Red Herring.

In support of their attempt to breach the attorney-client privilege, the FCR and ACC contend that Grace did not object to the production — *by the ACC* — to the Government of certain documents and testimony concerning pre-petition reserves that it obtained in the *Sealed Air* litigation. To the extent that production can even be alleged to constitute a waiver, at most the waiver would be limited to the *pre-petition* reserves at issue in *Sealed Air*, and would provide no justification to force disclosure of privileged information with respect to the *post-petition* estimates in the 2004 and 2005 10-Ks. But Grace did not even waive privilege with respect to testimony taken concerning pre-petition reserves in the *Sealed Air* depositions, because the Court in *Sealed Air* ordered that these witnesses could testify about the reserve analyses without causing a waiver. (*See* Ex. M to Grace's Mot.) Likewise, no subject matter waiver occurred. For subject matter waiver to apply, Grace must have asserted a claim or defense and attempted to

prove that claim or defense by disclosing or describing an attorney-client communication. *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994). The ACC and FCR do not identify any claim or defense that Grace attempted to prove by disclosing or describing an attorney-client communication.

### B.    The 2004 And 2005 10-K Estimates Are Privileged.

The FCR and ACC are not entitled to take a 30(b)(6) deposition pertaining to the actuarially based estimates that Grace referred to in its 2004 and 2005 10-Ks. On that subject, the FCR and ACC do nothing more than reiterate their prior arguments in their Motion to Compel Production of Actuarial Studies Dec. 18, 2006) (Docket No. 14057). As Grace explained in response to that motion, the FCR and ACC are not entitled to discover the estimates for two reasons: (1) the parties expressly stipulated that non-final actuarial studies, such as those underlying the calculations to which Grace disclosed to the SEC, would not be discoverable (*See* Ex. D to Grace's Opp'n to ACC's Mot. to Discovery Actuarial Studies); and (2) the estimates are work-product and attorney-client privileged. (*See* Grace's Mot. at 5-7 (stipulation); *Id.* at 7-12 (privileged).) As explained in its response, Grace's position is supported by strong legal authority. *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 139 F.R.D. 609, 614-15 (E.D. Pa. 1991) (individual and aggregate reserves privileged and protected work product); *Ohio Mgmt., LLC v. James River Ins. Co.*, 2006 WL 1985962, at * 2 n.10 (E.D. La. July 13, 2006) (same); *Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, 2006 WL 355289, at *3 (N.D. Ohio Feb. 15, 2006) (same); *Montgomery v. Aetna Plywood, Inc.*, 1996 WL 189347 (N.D. Ill. July 2, 1996) (valuation reports protected by work-product doctrine). The FCR's only response is to attempt to distinguish these cases on the ground that they do not specifically deal with an estimation proceeding. (*See* FCR Resp. at 13.) But the FCR provides no reason why this should make a difference. Bankruptcy proceedings are "litigation." *See In re Celotex Corp.*, 196 B.R. 596, 598

(Bankr M.D. Fla. 1996). All the reserve information for which the FCR and ACC now seek discovery was prepared pursuant to the plan of reorganization. Accordingly, the information is privileged, work-product, and protected from discovery.

Further, like the documents themselves, any testimony regarding the estimates would also be privileged. No purpose would be served in convening a 30(b)(6) deposition, only to have Grace instruct the witness not to answer every single question propounded by the ACC or FCR.

### III.    The Product, Distributor, Customer And Job Site Topics Are Also Inappropriate.

Nor are the four notice topics concerning Grace's products, distributors, customers, and job sites appropriate subjects for Rule 30(b)(6) depositions. Rule 30(b)(6) is intended to be an exploratory tool, designed to minimize discovery costs when the knowledgeable witnesses and the relevant documents have *not* been previously identified. *See, e.g., Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000)(procedure "meant to prevent the necessity of naming several company representatives in order to find the one with knowledge of the relevant facts. . ."). It is plainly an abuse of the rule to use it to re-plow old ground that has been the subject of decades of discovery in the state court system. Grace has also made available its document production archives on product information. Grace has also provided both a Products List and Supplemental Products List. In total, this discovery gives the FCR and ACC everything they need to prepare for the estimation proceeding. The FCR response has not offered a single reason why a 30(b)(6) deposition is needed on these topics. The relevant documents and testimony are equally available to the Committees; it would be burdensome and unproductive for Grace to be required to create and then "educate" a corporate representative on these matters. *See Resolution Trust Corp. v. Kazimour,* 1993 WL 13009325, *3 (N.D. Iowa Nov. 16, 1993) ("Nothing in *Rule* 30(b)(6) requires a party to "create" a witness in response to a 30(b)(6) notice").

## IV. The Interpretation Of Grace's Asbestos Claims Database Is A Matter For Expert Discovery.

Finally, the demand that Grace produce a Rule 30(b)(6) witness to testify as to "the meaning" of the information in its computerized personal injury claims database is nothing more than an attempt to compel Grace to produce its testifying actuarial expert for deposition in the fact discovery phase of the litigation, before that expert's opinions are even final. Grace will produce its testifying expert in accordance with the schedule for disclosure of expert reports and opinions. The FCR and ACC have given no reason why they need Rule 30(b)(6) depositions now, when they will later be able to obtain all the information they need from Grace's experts.

The FCR erroneously asserts that Grace's compilation of the claims data requested in request no. 4 of the 30(b)(6) notice is "essentially incomprehensible." But Grace is not responsible for the format of the printout with the illegible font size that the FCR attaches to its brief. That document was created by the FCR. Grace provided the requested data on a disk, in an accessible and easily legible manner, as it is maintained by the Company. Any interpretation of what that data "means" is not fact testimony, and should be left to the experts.

## CONCLUSION

The ACC and FCR already have all the discovery they need. They had the opportunity to depose Messrs. Beber, Hughes, and Siegel as part of the *Sealed Air* litigation, which concerned pre-petition reserve analyses and settlement information. They will have the opportunity to depose these witnesses again. And Grace has now filed an affidavit from its general counsel confirming that the Form 10-K asbestos estimates submitted to the SEC in 2004 and 2005 were prepared pursuant to Grace's plan of reorganization. (*See* Ex. C to Grace's Opp'n to Mot. to Compel Production Of Actuarial Studies). Nothing further is needed.

Therefore, Grace respectfully requests that the Court grant its Motion to Quash 30(b)(6) Deposition Notice and for a Protective Order.

Dated:  January 12, 2006

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB LLP

/s/ James E. O'Neill
Laura Davis Jones (#2436)
James E. O'Neill (#4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and
Debtors in Possession