IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Hearing Date: February 26, 2007 at 2:00 p.m.
Objection Deadline: February 9, 2007 at 4:00 p.m.

### DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO MAKE LEGALLY REQUIRED MINIMUM CONTRIBUTIONS TO DEFINED BENEFIT PENSION PLANS COVERING DEBTORS' EMPLOYEES, DUE APRIL 2007

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully move this Court for the entry of an order authorizing the Debtors to make contributions to the defined benefit retirement plans covering the Debtors' employees in the United States (the "Grace Retirement Plans") required to be made on or prior to April 15, 2007, to assure compliance with the minimum funding requirements under federal law (the "April 2007

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street,lzi.c., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch Nest Coal Company, H-G Coal Company.

Contributions"). The April 2007 Contributions will total $20,567,271. In support of this Motion, the Debtors respectfully state as follows:

### Jurisdiction

1.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is §§ 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code").

### Background

2.  On April 2, 2001 (the "Petition Date"), each of the Debtors in these chapter 11 cases (collectively, the "Chapter 11 Cases") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

3.  The Debtors have requested through a series of prior pension funding motions (collectively, the "Prior Funding Motions"), and received Court permission to make, all legally required minimum contributions to the Grace Retirement Plans for the period through January 2007. With respect to each such Motion, prior to the applicable hearing date, the management of the Debtors discussed the applicable motion with the Official Committee of Unsecured Creditors, the Official Committee of Property Damage Claimants, the Official Committee of Personal Injury Claimants, the Official Committee of Equity Security Holders (collectively, the "Committees") and the Future Claimants' Representative (the "FCR"), as requested.

4.  The Court entered orders approving the requests under each Prior Funding Motion (as modified). In accordance with those orders, the Debtors contributed approximately

$40 million to the Grace Retirement Plans in 2003[2], approximately $20 million in 2004, approximately $16.2 million in 2005[3] and approximately $99 million in 2006[4]. In addition, pursuant to the most recent Prior Funding Motion (approved by the Court on June 16, 2006), the Debtors will make contributions totaling $16.3 million to the Grace Retirement Plans in January 2007.

5.  By this Motion, the Debtors are seeking approval to make the April 2007 Contributions on or before April 15, 2007, in an amount that will assure compliance with minimum funding requirements under federal law. As stated, the total amount of the April 2007 Contributions will be approximately $20.6 million, which will include a contribution of approximately $18.2 million for the Grace Salaried Employees Retirement Plan and approximately $2.4 million for various other smaller retirement plans covering segments of the Debtors' union and non-union hourly employees. The April 2007 Contributions will be the first quarterly contributions for the 2007 plan year to the Grace Retirement Plans. In order to assure compliance with the ERISA funding rules, these contributions represent 25% of the total 2006 minimum required contribution (without regard to any credit balance). The actual amount of the 2007 quarterly contributions, including the April 2007 Contributions, will be based upon the 2007 actuarial valuation report, which is expected to be completed in May 2007. Currently, it is estimated that the 2007 quarterly contributions will be approximately $12.9M per quarter. If that proves to be the case, then the "excess" portion of the April 2007

---

[2] In 2003, the Debtors also contributed approximately $8.5 million for the Curtis Bay union pension plan, based on a separate motion and court order dated March 3, 2003 [Docket Nos. 3259, 3445].

[3] In 2005, the Debtors also contributed approximately $7.9 million to two union pension plans covering union employees at its Lake Charles, Louisiana and its Chattanooga, Tennessee plants, based on a separate motion and court order dated June 22, 2005 [Docket Nos. 8487, 8666].

[4] In 2006, the Debtors also contributed approximately $1.1 million to the Debtors' Chicago Dewey and Almy union pension plan, based on a separate motion and court order. [Docket Nos. 12226, 12439].

Contributions will be used as an offset to the next 2007 quarterly contributions due in July 2007. (See footnote 5 below.)

6.  In June 2007, the Debtors anticipate submitting another pension funding motion to make all required contributions for the remainder of 2007 and early 2008. That motion will specify the amount of each contribution required during that period; and will also include information regarding the overall funded status of the Grace Retirement Plans, which will update such information included in the Prior Funding Motions.

7.  The Debtors are not currently requesting permission to make post-April funding for the Grace Retirement Plans for the following reasons:

- The amount of those contributions will not be finalized until the 2007 actuarial valuation report for the Plans is completed. It is anticipated that such report will be completed by the end of May 2007.[5]

- The Debtors would like the opportunity to analyze and consider the effect of the pension funding provisions of the recently enacted Pension Protection Act

---

[5] For information purposes, following is the current estimate of the required minimum contributions to the Grace Retirement Plans through January 2008:

| Payment Due Date | Est. Reg. Contributions | Plan Year |
|---|---|---|
| 2007 | | |
| July 15 | $5.1M | 2007 |
| September 15 | 15.3M | 2006 |
| October 15 | 12.9M | 2007 |
| 2008 | | |
| January 15 | $12.9M | 2007 |

The July 15, 2007 contributions are the second 2007 quarterly contributions to the Grace Retirement Plans. These contributions will be made after the 2007 actuarial valuation report has been completed in May 2007, which will determine the amount of the 2007 quarterly contributions. The amount of the July 15 contribution listed in this chart, $5.1 Million, reflects the application of an "offset" equal to the estimated amount that the April 2007 Contributions exceed the estimated required 2007 quarterly contributions (plus interest).

(the "PPA") upon required funding of the Plans commencing in 2008.[6]

8.  This request to make the April 2007 Contributions to the Grace Retirement Plans is a continuation of the funding approach specified in the most recent Prior Funding Motion, whereby the Debtors have timely made only the legally required minimum contributions to each Grace Retirement Plan.

9.  The Prior Funding Motions included considerable background regarding the Grace Retirement Plans and the importance of maintaining those Plans and supporting their financial viability. That background continues to be valid. In summary, the Debtors' management continues to strongly believe that continuing to make at least the legally required minimum contributions to each of the Grace Retirement Plans is essential to maintaining the morale of the Debtors' workforce and its confidence in management, and thereby the productivity and long-term profitability of the Debtors' businesses. The employees are vital to maintaining and enhancing the value of the Debtors' estate and to the Debtors' successful reorganization.

10. The Debtors have provided each of the Committees and the FCR with a prior draft of this Motion and have discussed the Motion with them and their representatives who have requested such discussions.

### Relief Requested

11. By this Motion, the Debtors seek authority to make the minimum contributions required by applicable federal law to one or more of the Grace Retirement Plans for the period after January 15, 2007 but prior to (or on) April 15, 2007 in the amount of $20,567,271.

---

[6] The pension funding provisions of the PPA are generally effective for plan years commencing in 2008, and therefore do not generally affect the estimated contributions specified in the above chart.

## Basis for Relief

12. Section 105(a) of the Bankruptcy Code "permits the court to issue any order that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business property of the estate." 11 U.S.C. § 363(b). A court has the statutory authority to authorize a debtor to use property of the estate pursuant to § 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Lionel Corp., 722 F.2d 1063, 1071(2d Cir. 1983), see also Fulton State Bank v. Schipper, 993 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by "some articulated business justification"); Stephen Indus., Inc. v. McClun, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Rome Ctr Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

13. Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. See Lionel Corp., 722 F.2d at 1070-71. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Res., Inc., 147 B.R. 654, 656 (S.D.N.Y. 1992). A party in interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." Montgomery Ward, 242 B.R. at 155.

### The Proposed Transaction Is Supported by Sound Business Judgment

14. The Debtors respectfully submit that making the April 2007 Contributions is the least costly approach to funding the Grace Retirement Plans in accordance with the requirements imposed by applicable federal law. That is, the Debtors are seeking approval to make no more than the legally required contributions to those Plans that are due on or prior to April 15, 2007. Making the April 2007 Contributions will help to maintain the morale and productivity of Debtors' employees throughout the United States, which is key to continuing to retain a dedicated, motivated and loyal work force. Such work force is a vital component of the Debtors' estates and restructuring efforts.

15. The Debtors have determined in their business judgment that making the April 2007 Contributions is in the best interests of the Debtors' estates and creditors. As specified above, clear business reasons exist to justify, under section 363(b) of the Bankruptcy Code, such implementation.

### Notice

16. Notice of this Motion has been given to (i) of the Office of the United States Trustee, (ii) counsel to the Debtor-In-Possession lenders, (iii) counsel to each Official Committee appointed by the United States Trustee, and (iv) those parties that requested papers under Fed.R.Bankr.P.2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

### No Prior Request

17. No prior Application for the relief requested herein has been made to this or any other Court.

18.   WHEREFORE, the Debtors respectfully request that the Court enter an Order substantially in the form attached hereto (i) authorizing the Debtors to make the April 2007 Contributions to the Grace Retirement Plans required by federal law, on or prior to April 15, 2007, in the amount of $20,567,271, and (ii) granting such other and further relief as the Court deems just and proper.

Dated: January 22, 2007

        Respectfully submitted,

        KIRKLAND & ELLIS LLP
        David M. Bernick, P.C.
        Janet S. Baer
        Andrea L. Johnson
        200 East Randolph Drive
        Chicago, ILL 60601
        (312) 861-2000

        and

        PACHULSKI STANG ZIEHL YOUNG JONES
        & WEINTRAUB LLP

        */s/ Curtis A. Hehn*
        Laura Davis Jones (Bar No. 2436)
        James O'Neill (Bar No. 4042)
        Curtis A. Hehn (Bar no. 4264)
        919 North Market Street, 17th Floor
        P. O. Box 8705
        Wilmington, Delaware 19899-8705
        Telephone: (302) 652-4100
        Facsimile:  (302) 652-4400

        Co-Counsel for the Debtors and Debtors-In-Possession