IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | | Related Docket No. 14148 |

**EXPEDITED MOTION TO MODIFY ORDER REGARDING PRODUCTION OF
X-RAYS BASED ON SUBSTANTIAL NON-COMPLIANCE WITH ORDER**

W.R. Grace & Co. ("Grace" or "Debtor"), through its undersigned counsel, hereby moves this Court to modify the December 22, 2006 Order Regarding x-ray Evidence ("December 22nd X-ray Order") because the asbestos personal injury claimants have substantially failed to comply with the order. Initially, Grace requested the production of original x-rays for all claimants asserting non-mesothelioma malignancies who intended to rely on radiographic evidence to attribute the malignancy to asbestos. Grace requested that the original x-rays be sent to Rust Consulting to permit a panel of B-readers to review the x-rays. The PI Committee and counsel for various claimants objected to this protocol and instead offered to provide copies of x-rays. At the December 5, 2006 hearing, the Court declared that claimants could provide copies provided that they were certified as accurate and representative of the original. The Court acknowledged that, in exceptional circumstances, a claimant or counsel might not be able to obtain the requisite certification, and, in that exceptional circumstance, could offer to produce originals x-rays in counsel's office. The December 22nd X-ray Order reflected the compromise of the Debtors' and claimants' counsel upon the direction of this Court.

Now the exception has swallowed the rule. Since the issuance of the December 22nd Order, approximately 25% of the firms subject to the order have indicated that they cannot comply with the requirements of the order, and additional firms have expressed uncertainty as to

whether they will be able to comply with the Court's order. These firms represent over half of the approximately 5,500 claimants subject to the order. Pursuant to the Court's instructions at the January 23, 2007 omnibus hearing, Grace hereby moves this Court to modify the December 22nd X-ray Order by establishing an x-ray repository to be administered by counsel for the claimants and requiring all claimants who cannot make the certifications required by the December 22nd X-ray Order to send their original x-rays to the x-ray repository for centralized review.

I. **NUMEROUS FIRMS HAVE INDICATED THAT THEY CANNOT MAKE THE X-RAY COPY CERTIFICATION REQUIRED BY THE X-RAY ORDER**

The December 22nd X-ray Order requires each firm representing claimants alleging non-mesothelioma malignancies to send copies of the claimants' x-rays to Rust Consulting with a "certification from someone qualified in the appropriate field or a stipulation from the Claimant or his or her counsel certifying that any images in the original x-ray which are material to the Claimant's allegation that the x-ray demonstrates that his or her cancer is attributable to asbestos appear identically in the copy being provided." December 22nd X-ray Order at ¶ 2. The December 22nd X-ray Order further provided that any law firm that could not make such a certification was required to notify Grace no later than January 12, 2007. *Id.* at ¶ 3.

On December 28, 2006, Grace sent a letter to 126 firms whom Grace believed represented claimants subject to the December 28, 2006 Order. *See* January 30, 2007, Affidavit of Yvette Knopp at ¶ 2 (attached as Exhibit 1). In the letter, Grace explained the methodology that it employed to determine which claimants were subject to the December 22nd X-ray Order. *See* December 28, 2006 Letter from Barbara Harding to Counsel (attached as Exhibit 2). Grace enclosed with each letter a copy of the December 22nd X-ray Order as well as a list of claimants represented by that firm whom Grace believed were subject to the X-ray Order. In total, there

were 5,439 claimants whom Grace believed were subject to the December 22nd X-ray Order whose counsel were notified via the December 28th notice letter. *See* Knopp Aff. At ¶ 2.

As of the date of this filing, 37 law firms have informed Grace that they cannot make the certification required by Paragraph two of the December 22nd X-ray Order. *See* Correspondence Appendix I (attached as Exhibit 3). These law firms indicated that they would not be sending copies of their x-rays to Rust and have instead informed Grace that they will make original x-rays available at their offices. Pursuant to Paragraph three of the December 22nd X-ray Order, Grace has notified each of these firms in writing that it intends to review the original x-rays. *See* Correspondence Appendix II (attached as Exhibit 4). These law firms represent at least 2,934 claimants, over half of the claimants subject to the December 22nd X-ray Order. Moreover, the law firms representing these 2,934 claimants are dispersed across 19 different states. *See* Correspondence Appendix I.

Additional law firms have indicated that they may not be able to make the certification required by paragraph two of the December 22nd X-ray Order. *See* Correspondence Appendix III (attached as Exhibit 5). Accordingly, the total number of law firms failing to make the requisite certification will likely increase, as will the total number of claimants whose x-rays *will not* be sent to Rust as envisioned by the December 22nd X-ray Order.

Finally, some of the law firms that are submitting certifications are not including the language required by this Court's Order. For example, the Wartnick Law Firm certified that it had "no reason to believe that the x-rays we are submitting are not representative of the originals and believe them to be representative of the originals; however, we are unable to certify that these copies are identical to the originals as we do not have the originals in our possession nor do we have the skill or training to make that assessment." *See* January 26, 2007 Letter from Steven

Harowitz to Barbara Harding (attached as Exhibit 6). This certification amounts to no certification at all. It defies both the letter and spirit of the Court's Order which was designed to ensure that the copied x-rays sent to the repository were fair and accurate reproductions of the originals. The Wartnick Law Firm certification does not contain any of the affirmative representations with respect to the appearance of the x-ray copies that were required by paragraph two of the December 22nd X-ray Order. Because Grace has no way to tell if the x-rays are accurate reproductions, it will have to review the original Wartnick x-rays. Thus, the firms that have failed to provide compliant certifications are no different from the firms who refuse to certify, necessitating review of the claimants' original x-rays. Accordingly, firms failing to provide compliance certifications should also be required to send their claimants' original x-rays to a centralized repository for review.

Due to the claimants' refusal or inability to certify, x-rays for less than half of the non-mesothelioma malignant claimants will be sent to the Rust respository. Under the current order, that would mean Grace would have to travel to 20 plus states to review several thousand x-rays at dozens of firms over the next few months. This is both impractical and defeats the purpose of the Court's original x-ray order. Consequently, Grace requests that the Court modify its original x-ray order to require the claimants' attorneys to set up their own repository and send the original x-rays for all such claimants to their respository.

## II. THE X-RAY ORDER SHOULD BE MODIFIED WITH RESPECT TO ANY FIRM THAT CANNOT MAKE THE X-RAY CERTIFICATION.

The December 22nd X-ray Order was an agreed order reflecting the prior rulings of this Court and extensive negotiations among the Debtor, the Asbestos Personal Injury Creditors Committee, and various counsel for claimants asserting malignancies. The language in the December 22nd X-ray Order requiring the generation and production of copies of x-rays

4

represents a compromise proposed by various law firms that did not want to send original x-rays to Rust.

> The Court: "So the debtor will have to pay for the copy, but I think that to the extent that counsel can obviously facilitate getting the copies." Tr. of Hr'g at 88 (Dec. 5, 2006).
>
> Mr. Esserman: "Absolutely. And we intend to do that, the firms that I represent, and I suspect the others will also. So we think that this is an easy solution. Thank you."

Tr. of Hr'g at 88 ( Dec. 5, 2006). The certification required by paragraph two of the December 22nd Order was proposed and advocated by claimants' counsel, not Grace, as an alternative to producing original x-rays.

Based on the representations made by claimants' counsel, it was the understanding of Grace and the Court that the Claimants would obtain the necessary certification and would send copies of the claimants' x-rays to Rust.

> The Court: "The only -- look, folks. This really is wasting my time. I'm sorry, but I'm really have other things to do. The copies are the things that are to be transmitted, unless the copies for some reason or other are not certified as accurate. You're not even going to get into this issue about the originals if you get copies, so you're really wasting a lot of time. If somebody has a legitimate reason why an original can't be provided in lieu of a copy, they're going to give you a certification, and if you have some challenge to it, then file a motion, and we'll deal with it. You know, *this process is supposed to be the exception not the rule*. Let's move on to something -- surely, you can work out language with respect to that."

Tr. of Hr'g at 14 (Dec. 19, 2006) (emphasis added). These very same law firms are now refusing to make the necessary certification and as a result, are not sending their x-rays to Rust.

Due to this substantial non-compliance with the Court's December 22nd X-ray Order, the order should be modified to specifically address those law firms who have failed to make the required certification. To date, Rust has received x-rays from 15 law firms that were

accompanied by the certification required by paragraph two of the December 22nd X-ray Order. Pursuant to the Order, Grace is now in the process of reimbursing these law firms for the cost of copying the x-rays, obtaining the certification, and sending the x-rays to Rust. Such law firms that have complied with the Order demonstrate the feasibility of making the necessary certification and complying with the Court's order. It is those law firms who have failed to make any certification or have made inadequate certifications that are not complying with the Court's order and should be subject to a modified Order.

Accordingly, Grace requests that any law firm that has failed to make a certification consistent with the requirements of paragraph two of the December 22nd X-ray Order be required to send original x-rays for their non-mesothelioma malignant claimants to an x-ray repository to be administered by the Asbestos PI Committee or a law firm designated by them. The Court appointed administrator should have control over access to the x-rays in order to ensure that only physicians or other appropriate agents of the Debtors or Committees have access to the x-rays. Moreover, to the extent that an x-ray is needed for medical or legal reasons, this law firm should have the ability to address such exceptional needs as they arise. The reasonable costs incurred by the administrator in administering the repository shall be reimbursed by Grace.

WHEREFORE, due to the substantial non-compliance of law firms representing over half of the claimants alleging non-mesothelioma malignancies, Grace requests that the Court modify the X-ray Order by requiring the claimants' counsel to set up and administer a repository to which all non-certifying law firms must send their claimants' original X-rays.

Dated: January *30*, 2007

Respectfully submitted,

KIRKLAND & ELLIS LLP
Barbara M. Harding
David E. Mendelson
Brian Stansbury
Amanda C. Basta
Evan Zoldan
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:   (202) 879-5000
Facsimile:   (202) 879-5200

KIRKLAND & ELLIS LLP
David Bernick
Janet Baer
Scott McMillin
Ellen Ahern
Salvatore Bianca
200 East Randolph Drive
Chicago, IL 60601
Telephone:   (312) 861-2000
Facsimile:   (312) 861-2200

And

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

*/s/ James E. O'Neill*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession