IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Objection Deadline: February 1, 2007 @ 3:00 p.m.** |
| | ) | **Hearing Date: February 2, 2007 at 3:30 p.m.** |
| | ) | **Related Docket Nos. 14441, 14442, 14450** |

**OPPOSITION OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS TO DEBTORS' EXPEDITED MOTION TO MODIFY ORDER REGARDING PRODUCTION OF X-RAYS BASED ON SUBSTANTIAL NON-COMPLIANCE WITH ORDER**

The Official Committee of Asbestos Personal Injury Claimants (the "ACC") hereby files this Opposition to Debtors W.R. Grace Company, et al. ("Grace")'s Expedited Motion to Modify Order Regarding Production of X-rays Based on Substantial Non-Compliance With Order [Docket #14441]. Grace's asserted inability to review the x-rays of lung and other cancer claimants in sufficient time to comply with the expert report deadlines in this case (even if this assertion were true) is a problem and an "emergency" of its own making. Based on the facts as described in Grace's Expedited Motion and exhibits thereto and the plain terms of the December 22, 2006 Order Regarding X-Ray Evidence [Docket #14148][Copy attached as Exhibit 1], it is clear that the claimant law firms are in full compliance with the Court's Order and Grace is simply unsatisfied with the fact that many claimants have been unable to obtain the certification that a copied x-ray was identical in all respects to the original and have instead made their original x-rays available for review by Grace at their counsel's offices as Paragraph 3 of the December 22 Order requires them to do. The Court should recognize Grace's Motion for what it is: a two-pronged ploy to (1) re-argue a position that it asserted and lost at the December 5, 2006 hearing (namely that it was entitled to require claimants to turn over possession of their original

{D0079203.1 }

x-rays to Grace or to a centralized repository) and (2) as a set up for a later request that the Court push back the expert report deadlines (and consequently the Estimation Hearing) based on the unsupported assertion that it has insufficient time to review all the x-rays that it requested. The Court should see through this ploy for what it is and deny the Motion.

## ARGUMENT

Although this Court entered a Case Management Order allowing discovery for the Asbestos Estimation Hearing to begin in August *2005*, for its own reasons Grace did not begin requesting asbestos personal injury claimants to produce x-rays until October 23, 2006.[1] See October 23, 2006 Letter from Barbara Harding to Claimants [attached as Exhibit 2]. Many of the claimants who received this request quite properly responded by offering Grace a choice as provided in the Federal Rules of Civil Procedure: it could either review the x-rays in question in the place where they were located or the claimants would send a copy of the x-ray to Grace at its expense. See, e.g. November 6, 2006 Letter from Cooney & Conway to Barbara Harding; October 31, 2006 letter to Harding from Landry & Swarr [both letters are attached as composite exhibit 3]. Grace instead demanded that claimants must turn over possession of their original x-rays, which led to extensive motions practice and argument at the December 5, 2006 hearing, and resulted in the Court's December 22, 2006 Order Regarding X-Ray Evidence [Docket #14148].

In their papers and in the argument at the December 5 hearing, the claimants, citing Fed. R. Civ. P. 34 and 45, and Weaver v. Evans, No. 97-1138-FGT, 1997 WL 833168 at *1 (D. Kan. 1997), among other authorities, explained that there is no provision in the Federal Rules of Civil

---

[1] At the time it went into bankruptcy, Grace had a database which identified, by name and social security number, the identity of the persons who had filed asbestos personal injury claims against it, and, in most instances, the disease alleged. Grace thus had sufficient information to begin requesting x-rays from lung and other cancer claimants as early as April 2001.

Procedure that requires a party to turn over originals to the possession of its opponent. The Court quite correctly ruled in the claimants' favor on this key issue at the December 5 hearing, stating that "I really don't think you're [Grace] entitled to custody of the originals." December 5, 2006 Hearing Tr. at 85. Grace's counsel (not the claimants, as Grace falsely asserts at page 5 of its Expedited Motion) then suggested a certification or "a stipulation that the copies are complete and accurate and they won't be challenged," as the following exchange makes clear:

MS. HARDING: Your Honor, if the plaintiffs' firms will submit with their copies affidavits that the copies fully and completely represent and accurately represent the original x-ray and that the evidence of asbestosis that they believe is there appears on that x-ray –

THE COURT: I think you're entitled to that.

MS. HARDING: -- then I think that we will be – that the copies will be adequate under those circumstances.

THE COURT: You're entitled to know that somebody with the appropriate criteria has looked at the copy and that it is a duplicate of the original. The whole reason why you can substitute copies for originals is because they're duplicates. And I think you're entitled to that.

MS. HARDING: Your Honor, Mr. Bernick suggests a stipulation that the copies are complete and accurate and they won't be challenged based on – and that the –

THE COURT: Fine.

December 5, 2006 Tr. at 85.

Later during the same hearing, the Court made the following comments in response to statements from claimants' attorney John Herrick:

MR. HERRICK: Furthermore, Your Honor, with respect to the certification of an original chest – excuse me – that a copy is as good as an original chest x-ray, the plaintiffs don't have the wherewithal to do that. That would have to be something that W.R. Grace –

THE COURT: No. Absolutely not. If the plaintiffs control the originals and are getting copies made the rule is very clear, you can substitute a duplicate provided that it's the same as the original. That is the claimant's burden. If you're going to submit an x-ray as part of your proof you're going to make sure it's a duplicate.

MR. HERRICK: And then the rule also allows for someone who is responding to discovery to allow somebody to come to their offices and view the documents.

THE COURT: Yes.

MR. HERRICK: I assume that rule remains with respect to the original chest x-ray.

THE COURT: Yes. If they want to go look at the originals they can certainly go look at the originals. They have that right. But nonetheless they're entitled to a certification that indicates that this is a duplicate. And if it can't be a duplicate for some reason they they'll say I can't get a duplicate, the image is faded or whatever. I don't know what the reasons will be, but then Grace will know they have to go look at the original.

December 5, 2006 Hearing Tr. at 91.

Given the Court's clear guidance on the point, counsel for certain claimants and Grace then negotiated the specific language which was embodied in the Court's December 22, 2006 Order Regarding X-Ray Evidence. That Order makes clear that if it was not "possible or reasonably practical" to obtain a certification that "any images in the original x-ray which are material to the Claimant's allegation that the x-ray demonstrates that his or her cancer is attributable to asbestos appear identically in the copy being provided," then the claimant must so inform Grace and produce the original x-ray at his counsel's office. See Paragraphs 2 and 3 of the December 22, 2006 Order. The Order also spells out additional procedures if a hospital or other third party has possession of the x-ray and refuses to timely produce it to the Claimant or his counsel upon request. December 22, 2006 Order, Paragraph 4.

On the face of Grace's Expedited Motion and the correspondence and other certifications from claimants' counsel (attached as Exhibit 3 thereto) it is obvious that the asbestos claimants are in fact in full compliance with the Court's December 22, 2006 Order. Based on Grace's own tally, almost 70% (89/136) of the claimant law firms, and almost half of the affected claimants, have submitted or will submit copies of x-rays with certifications that the copied x-rays are identical to the original. See Grace Expedited Motion at 2-3; January 11, 2007 Letter from

{D0079203.1 }4

Thornton & Naumes to Barbara Harding (attached as Exhibit 4 hereto). Contrary to Grace's assertion at page 1 of its Motion, law firms have not "indicated that they cannot comply with the requirements of the order"; the correspondence attached as Exhibit 3 to its Motion makes clear that the law firms are in full compliance with the Court's Order and have so complied by certifying that "it is not reasonably practicable to obtain the certifications described in Paragraph 2 of the Order Regarding X-ray evidence" and instead offering to make the original x-rays available to Grace upon request. See, e.g. January 11, 2007 Letter from Silber Pearlman to David Bernick (included as part of Exhibit 3 to Grace's Motion); January 11, 2007 Letter from Thomas Wilson to Barbara Harding (included as part of Exhibit 3 to Grace's Motion); January 11, 2007 Letter from David Parron to Barbara Harding (included as part of Exhibit 3 to Grace's Motion); Letter from Thomas Bevan to Barbara Harding (included as part of Exhibit 3 to Grace's Motion).

Many of the claimants' counsel also explained the reasons why they could not obtain a certification that an x-ray copy was identical to the original film. For example, in a letter to Grace's counsel from Jon Heberling, counsel for the Libby claimants, Mr. Heberling explains:

> We have conferred with Dr. Whitehouse of the CARD Clinic in Libby, and we are informed that the CARD Clinic will not certify that any copy of a chest x-ray will be absolutely identical to the original.

January 10, 2007 letter from Heberling to Harding (included within Exhibit 3 to Grace's Motion). Similarly, a January 16, 2007 Letter from John Herrick to Barbara Harding (included as part of Exhibit 3 to Grace's Motion) states that:

> claimants represented by Motley Rice LLC are unaware of any process by which copies of a chest x-ray can be made to exactly duplicate an original film, neither claimants nor claimants' counsel are able to provide the certification referenced in paragraph 2 of Judge Fitzgerald's December 22, 2006 Order. Accordingly, please consider this letter to be the certification contemplated by paragraph 3 of the Judge's Order.

The letter from Mr. Bevan to Ms. Harding provides a similar explanation:

> Please be advised that it is not reasonably practicable nor, based on our experience, is it possible to copy any original x-rays in our possession in a manner in which the copy will be identical to the original. I know of no B-reader who can state that a copy of an x-ray is identical and sufficient to perform an accurate B-reading.

January 11, 2007 Letter from David Parron to Barbara Harding (included as part of Exhibit 3 to Grace's Motion).

At bottom, Grace simply does not like the fact that a large percentage of claimants have been unable to obtain a certification from a medical professional that copies of their x-rays are identical to the original (a certification that Grace, not the claimants, had requested) and instead have offered to produce the original x-rays for inspection at their offices, which the December 22 Order clearly entitled them to do. Grace has thus created an "emergency" of its own making. It was **Grace** which in December 2006 agreed to the expert report deadlines in the current CMO, **Grace** which sought to review the x-rays of 5,439 people, and **Grace** which now must live with the fact that there is a limited amount of time in which to review all of the x-rays that it requested. It is inappropriate for Grace to then turn around and blame the claimants, who are in substantial compliance with the Court's Orders, for the fact that it would be "impractical" for Grace's doctors to travel to the locations where the x-rays are found and review them there.

Given the procedural posture of this case[2] and the fact that Grace could have asked for and reviewed these x-rays a year or more ago if it had wished to do so, the ACC suspects that the

---

[2] Under Grace's Plan of Reorganization, **_none_** of its asbestos personal injury claimants are required to "prove" their claims during the pendency of the bankruptcy case; claims review and resolution will occur only after plan confirmation and be conducted by the § 524(g) trust. This Court has repeatedly stated (and Grace has agreed) that the Estimation Hearing is for the purpose of determining Grace's aggregate liability for pending and future asbestos personal injury claims, and not for the purpose of evaluating or estimating the claims for purposes of individual

real motivation behind Grace's "emergency" motion is to set up a request that the Court push back the expert report deadlines (and consequently the Estimation Hearing) because it will claim it had insufficient time to review all the x-rays that it requested. As the Court will recall, at the January 23, 2007, omnibus hearing, counsel for the Debtors stated in the context of a discussion of the X-rays issue: "We've a pretrial order that anticipated that this material be available a long time ago, and what's happening now is, they're saying, Let's hold the date. Let's hold the whole pretrial order, but we're still not giving you the information that's necessary for us to complete the preparation of the case. *I'm just alerting the Court to this, that we will take up at the next omnibus – we'll make a proposal for shifting some of the pretrial dates so we can get [sic] now this data analyzed*." January 23, 2007 Tr. at 84-85 (*emphasis* added).

Now, Grace has filed its Expedited Motion so that it has an additional basis to argue for a continuance of the expert report deadlines. The Court must not countenance this delay. As things now sit, the ACC and FCR will barely have enough time to depose Grace's myriad fact and expert witnesses (Grace has listed over 20 experts), and to defend their own expert depositions (at least 7 experts) between the expert report deadlines on March 30 and the June 1 discovery cut-off. Any further change in the expert deadlines would seriously imperil the ability of the parties to complete their discovery in time for the June Estimation Hearing, which we suspect is Grace's real motivation for filing its Expedited Motion.

---

allowance or disallowance. See, e.g., Hr'g Tr. of Sept. 25, 2006 at 166 ("This process is to help anybody's expert that the information that they need to try to convince me of what the existing and future asbestos personal injury claims will be, and how much it's going to cost to resolve them. That's what this is for. And nothing else."), 194 ("The point was that this is for estimation purposes, not for allowance and disallowance purposes."). Neither the CMO for the Estimation Hearing, the bar date process or any other order entered by the Court sets a trial date for the trial or estimation of any particular claimant's claim.

## **CONCLUSION**

The Court should deny Grace's Expedited Motion.

        CAMPBELL & LEVINE, LLC

        */s/Mark Hurford*
        Marla R. Eskin (No. 2989)
        Mark T. Hurford (No. 3299)
        800 North King Street, Suite 300
        Wilmington, DE 19801
        Telephone: (302) 426-1900
        Telefax: (302) 426-9947

        -and-

        CAPLIN & DRYSDALE, CHARTERED
        Elihu Inselbuch
        375 Park Avenue
        New York, NY 10152-3500
        (212) 319-7125

        Peter Van N. Lockwood
        Nathan D. Finch
        One Thomas Circle, N.W.
        Washington, D.C. 20005
        (202) 862-5000

        *Counsel to the Official Committee of*
        *Asbestos Personal Injury Claimants*