IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Related to Docket No. 14441 |
| | ) | Hrg. Date: February 2, 2007 |
| | ) | 3:30 p.m. EST |
| | ) | (telephonic) |

### RESPONSE OF FIRMS REPRESENTED BY STUTZMAN, BROMBERG, ESSERMAN & PLIFKA TO GRACE'S EXPEDITED MOTION TO MODIFY ORDER REGARDING PRODUCTION OF X-RAYS

Certain law firms (the "Firms") represented in this proceeding on matters related to the W.R. Grace Personal Injury Questionnaire (the "questionnaire") by Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, respond as follows to the "Expedited Motion to Modify Order Regarding Production of X-Rays Based on Substantial Non-Compliance with Order" (hereinafter, the "Motion") filed by W.R. Grace & Co., *et al.* (collectively, "Grace" or "Debtors").[1]

---

[1] The Firms include Baron & Budd, P.C.; Brayton Purcell; Campbell, Cherry, Harrison, Davis & Dove, P.C.; Foster & Sear, L.L.P.; Hissey, Kientz & Herron, P.L.L.C.; The Law Offices of Peter G. Angelos, A Professional Corporation; LeBlanc & Waddell, LLP; David Lipman, P.A.; Morris, Sakalarios and Blackwell, PLLC; Chris Parks & Associates; Robert Pierce & Associates; Provost & Umphrey, L.L.P.; Reaud, Morgan & Quinn, L.L.P.; Sieben, Polk, LaVerdiere & Dusich, PA; Silber Pearlman LLP; SimmonsCooper, L.L.C.; Weitz & Luxenberg P.C.; Wilentz, Goldman & Spitzer, P.A.; and Williams Bailey Law Firm L.L.P.

-1-

-2-

The Firms take strong issue with the central premise underlying both the Motion and Grace's insistence that the Court consider it on an expedited basis. As demonstrated by the Motion itself, the Firms' asbestos personal injury clients have *not*, despite Grace's claim to the contrary, "substantially failed to comply with the [O]rder [Regarding X-Ray Evidence]." Motion at 1. Rather, they *have complied* with the X-Ray Order[2] – just not in the manner Grace regards as most convenient. There is no emergency justifying expedited consideration of the Motion.[3] Additionally, substantial due process concerns are raised by the limited notice and extraordinarily tight briefing schedule associated with the Motion.

## I.

The X-Ray Order emerged following (1) litigation over "Debtors' Notice of Failure to Reach Agreement and Request for Entry of Debtors' Proposed Protocol Concerning Production of Chest X-Rays of Asbestos Personal Injury, Pre-Petition Claimants with Non-Mesothelioma, Malignant Claims" and (2) extensive negotiations between Grace, on the one hand, and the Asbestos Claims Committee, the Firms, and other firms representing asbestos claimants ("Claimants"), on the other. The X-Ray Order was submitted to the

---

[2] Order Regarding X-Ray Evidence, Dkt. No. 14148.

[3] Grace's own conduct suggests the absence of an emergency. Grace could easily have sent representatives to the Firms' offices months ago to inspect x-rays.

Court *upon a certification of Grace's counsel*.[4]   It must be borne in mind that Grace is urging modification of an order to which it agreed little more than a month ago.  Not surprisingly, the "emergency" modifications that Grace now belatedly seeks would simply revert back to the "protocol" that Grace earlier proposed, the Firms opposed, and the Court unequivocally rejected.

The X-Ray Order directed non-mesothelioma cancer claimants who had indicated that they possessed x-ray evidence in support of their claims to provide Grace with a copy of their chest x-rays by January 30, 2007.  X-Ray Order, ¶ 1.  Each copy was to

> … include a certification from someone qualified in the appropriate field or a stipulation from the Claimant or his or her counsel certifying that any images in the original x-ray which are material to the Claimant's allegation that the x-ray demonstrates that his or her cancer is attributable to asbestos appear identically in the copy being provided.

Id. at ¶ 2.  Providing copies of x-rays with the prescribed certification might be described as the "Paragraph 2" avenue for compliance with the X-Ray Order.

The X-Ray Order also provides that, if it were not possible or reasonably practicable to obtain such a certification, the Claimant (or counsel) was to provide Grace with notice that the certification could not be obtained.  That would oblige affected Claimants to make original x-rays

---

[4] Certification of Counsel for Proposed Order Regarding X-Ray Evidence, Dkt. No. 14093. Grace's counsel certified, *inter alia*, that the proposed order "reflects the disposition of the matter as provided at the [December 5, 2006 Omnibus] Hearing and agreed to by counsel" and requested that the Court enter the proposed order at its earliest convenience, which the Court subsequently did.

available for inspection at their counsels' offices within thirty (30) days of a demand by Grace, subject to the other terms of the X-Ray Order.  *Id.* at ¶ 3. Producing original x-rays in such a manner upon Grace's demand, where it was not reasonably practicable to obtain certified copies, is the "Paragraph 3" avenue for compliance with the X-Ray Order.

Grace's Motion is predicated on its complaint that too many Claimants who are unable to obtain a certification regarding copies of their x-rays have complied with the X-Ray Order via Paragraph 3 rather than Paragraph 2, the latter evidently being Grace's preference.  Without any reference to the text of the X-Ray Order, Grace asserts that "the exception [*i.e.*, Paragraph 3] has swallowed the rule [*i.e.*, Paragraph 2]."  Motion at 1.  Grace ignores that the X-Ray Order expressly permits Claimants who cannot obtain a certification to so notify Grace and whitewashes the fact that it agreed to the terms of the order as to which it now complains.[5]

It is also a bit odd that Grace would characterize Paragraph 3 as "swallowing" Paragraph 2.  Grace acknowledges in the Motion that "approximately 25% of the firms subject to the [X-Ray O]rder have indicated that they cannot comply with the requirements of the [X-Ray O]rder …."

---

[5] Attached hereto as Exhibits 1 and 2 are copies of representative letters sent by Grace's counsel to two of the Firms, dated approximately two weeks ago, in which Grace acknowledges the pertinent Firms' inability to obtain the certifications and requests that original x-rays be made available for inspection at the Firms' offices.  Grace acknowledges that it sent similar letters to every Claimants' firm that indicated it could not obtain the certifications under Paragraph 2 of the X-Ray Order.  Motion at 3.  These letters do not suggest that Grace viewed the Firms' inability to obtain the certifications as any manner of non-compliance with the X-Ray order, but do suggest that Grace understood and was comfortable with the mechanics of the X-Ray Order – even as to Paragraph 3 thereof.

-4-

Motion at 1. What Grace evidently means is that a quarter of firms – a distinct minority – have not complied with the X-Ray Order in the manner that Grace would prefer (*i.e.*, Paragraph 2), which is a very different thing from the "substantial non-compliance" Grace proclaims in the title of its Motion.[6] Grace's statistics suggest that three-quarters of Claimants' firms *have* been able to provide the certification envisaged under paragraph 2.

## II.

With the Motion, Grace reverts to its demand that the rules of civil procedure be disregarded and that cancer-afflicted Claimants (or their survivors) relinquish to an unspecified repository control over critical, fragile, and, in many instances, irreplaceable[7] evidence – all to accommodate Grace. As noted previously, this is just as provocative as a demand that financial creditors relinquish promissory notes or other original documentation underlying their claims. Such an approach is in derogation of Rules 26 and 34 of the Federal Rules of Civil Procedure, which apply to the forthcoming estimation proceeding.[8]

And why does Grace find itself in the position of insisting, yet again, on such an accommodation? Grace's problems are of its own making. Grace

---

[6] Grace does say that these firms represent over half of the approximately 5,500 claimants that it believes are subject to the X-Ray Order. Motion at 2.

[7] Original "film" x-rays are irreplaceable. Copies of original digital x-rays are effectively duplicate originals that, if properly rendered, are likely to be indistinguishable from each other.

[8] FED. R. BANKR. P. 9014.

could have sought production of x-rays much earlier than it did. The Firms have never suggested that they would not cooperate in facilitating Grace's access to original x-rays or facilitating the provision of copies of x-rays to Grace (at Grace's expense) – in fact, just the opposite. Grace waited until November 17, 2006, to file its "request" for entry of its proposed x-ray protocol.[9] It could have commenced x-ray discovery in 2005 or earlier. Indeed, all non-mesothelioma cancer claimants (*i.e.*, all Claimants subject to the X-Ray Order) had filed pre-petition lawsuits against Grace. Given the importance Grace now attaches to x-ray discovery, one might have expected Grace to have initiated it far sooner – perhaps in discovery in the underlying tort cases.

Rule 26, of course, is the general discovery rule, and Rule 34 specifically governs discovery of documents and tangible things such as x-rays. Even the general rule suggests that original documents are to be treated differently from copies. Regarding the exchange of information, Rule 26 provides:

> [A] party must … provide to other parties: *a copy of*, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely used for impeachment.

FED. R. CIV. P. 26(a)(1)(B) (emphasis added).

---

[9]  Dkt. No. 13702.

Rule 34 is controlling. *See Murphy v. United States*, No. 87 C 5731, 1989 WL 99744, at *3 (N.D. Ill., Aug. 14, 1989) ("… the plaintiff can, by use of discovery under Rule 34, cause the defendant, the [Veteran's Administration] itself, to produce ***copies of the x-rays*** and medical records.") (emphasis added). It provides, in part, as follows:

> Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on the requestor's behalf, ***to inspect and copy***, any designated documents (including writings, drawing, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form), or ***to inspect and copy, test, or sample*** any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served …
>
> * * *
>
> The response shall state, with respect to each item or category, ***that inspection and related activities*** will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated … .

FED. R. CIV. P. 34(a, b) (emphasis added).

Nothing in the text of Rule 34 can be read to require a party to divest itself of custody of original documents. (Asbestos claimants, it must be recalled, are not even parties to the estimation proceeding, a contested matter between the Asbestos Claimants' Committee and Grace.) Where a litigant has sought to discover original documents, courts routinely permit

inspection of the originals but decline to require that possession of the originals be surrendered. *G.B.G., Inc. v. Kolinsky (In re Kolinsky)*, 140 B.R. 79, 87 (Bankr. S.D.N.Y. 1992) ("The defendants have a right to inspect the originals." (citing 4 James Wm. Moore, *Moore's Federal Practice* § 26-184 (2d ed. 1991)); *Neuberg v. Michael Reese Hosp. & Med. Ctr.,* No. 75 C 3844, 1992 WL 477018, at *2 n.3 (N.D. Ill., Jan. 13, 1992) ("Plaintiffs should advise defendants as to which copies are illegible.  As necessary, defendants should furnish new copies or allow plaintiffs to inspect the original policies."); *Brooks v. Singletary*, No. 88-C-2865, 1991 WL 94083, at *5 (N.D. Ill., May 24, 1991) ("[The compelled party] is ordered to allow plaintiff to inspect the originals of the illegible and obstructed documents … .").

Apart from exceeding Rule 34's parameters, the idea that anyone can be compelled to surrender possession of original x-rays (or, for that matter, any other original documentary evidence) is deeply troublesome.  Loss (whether in transit or in handling) and spoliation are legitimate concerns; Rule 34 addresses them by permitting the responding party to remain in possession of originals.  In *United States ex rel. Camillo v. Ancilla Sys., Inc.*, 233 F.R.D. 520, 521 (S.D. Ill. 2005), the plaintiff sought production from a hospital of billing and refund records.   The hospital contended that the records in question contained confidential medical information of non-party patients, fretted about possible spoliation, and proposed a protective order that would have redacted nearly all identifying information, ostensibly to

conform to restrictive disclosure requirements of the Health Insurance Portability and Accountability Act (HIPAA) and applicable state law. *Id.* at 521-22. Ultimately siding with the plaintiff, the court tellingly observed that "[a]ny fears of spoliation of evidence should be allayed by the very fact that the hospital remains in possession of the original records." *Id.* at 523. Thus, although the documents would be produced, the originals would continue to be maintained by the hospital, the responding party.

### III.

Grace wants Claimants to be required to deliver original x-rays to a repository by February 14, 2007 – less than two weeks after the Motion is set to be heard. Apart from being incompatible with the controlling rule of procedure, Grace's proposed timing is stunningly unrealistic, especially with the repository yet to be determined. Additionally, Grace persists in its indifference to situations where a doctor, hospital or other third party has possession of original x-rays (as opposed to Claimants' counsel) and does not cooperate in making them available to Claimants' counsel upon request. Just because Claimants' counsel may request that original x-rays be forwarded to them, they cannot assure that the doctors, hospitals or other third parties will cooperate at all or on a timely basis. This recurring scenario was addressed by Paragraph 4 of the X-Ray Order, which Grace's proposed order

F:\GG\X\XX001-0002\Briefing\0006GG02.DOC

on the Motion would effectively wipe away.[10]  If Claimants do not have original x-rays to send to Rust Consulting, they do not have them to send to a different depository, and certainly not in less than a fortnight.

### IV.

Grace's Motion boils down to an eleventh hour attempt by Grace to yoke Claimants and their personal injury counsel, including the Firms, in the labor-intensive aspects and attendant risks of Grace's unreasonably ambitious discovery agenda.  Relevant admonitions from the case law have been cited before and are reiterated here.  "A litigant may not compel his adversary to go to work for him."[11]  *Phillips v. City of New York*, 230 F.R.D. 369, 370 (S.D.N.Y. 2005) (citing *Breedland v. Yale & Towne Mfg. Co.,* 26 F.R.D. 119, 120 (E.D.N.Y. 1960) as quoting *Aktiebolaget Vargos v. Clark*, 8 F.R.D. 635, 636 (D.D.C. 1949)).

> An adverse party should not be required to perform burdensome labors or to execute difficult and expensive tasks, in searching for facts and classifying and compiling data.

---

[10] In fact, Grace has recently refused to pay the cost of obtaining original x-rays from third parties, taking the incredible position that the Claimants must absorb all costs of obtaining x-rays from third parties, even the reasonable fees imposed by the third parties.  Grace wants to turn the discovery rules upside down.  If Grace desires to inspect original x-rays that are not in the possession of the Claimants or their counsel, Grace should be responsible for either obtaining the originals itself, or at a minimum reimbursing the Claimant's counsel for their outside costs in obtaining the original x-rays.

[11] *See also Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (Jackson, J., concurring) ("Discovery was hardly intended to enable a learned profession to perform its functions … on wits borrowed," or, one might infer, exertions exacted from, "the adversary.").

F;GG\X\XX001-0002\Briefing\0006GG02.DOC

8 F.R.D. at 636; see also United Cigar-Whelan Stores Corp. v. Phillip Morris, Inc., 21 F.R.D. 107, 109 (S.D.N.Y. 1957) ("[D]iscovery proceedings should [not] be utilized to cast upon a defendant the burden of establishing the plaintiff's case when the plaintiff can at least as readily establish the requested facts.").

## Conclusion

An Order Regarding X-Ray Evidence, agreed to by Grace, was entered barely a month ago. It is out of order for Grace to urge modification of that order now for no better reason than an insufficient number of Claimants have complied with the X-Ray Order in a manner that Grace finds sufficiently expedient for its own purposes. The process set forth in the X-Ray Order is working, and the Firm's are complying with such order. Grace's Expedited Motion to Modify Order Regarding Production of X-Rays Based on Substantial Non-Compliance With Order is based on a faulty premise and should be summarily denied.

[Signature Block Appears on the Following Page]

Dated: February 1, 2007                    Sander L. Esserman
                                           Van J. Hooker
                                           David A. Klingler
                                           David J. Parsons
                                           **STUTZMAN, BROMBERG,**
                                           **ESSERMAN & PLIFKA,**
                                           **A Professional Corporation**
                                           2323 Bryan Street, Suite 2200
                                           Dallas, Texas 75201
                                           Telephone:  (214) 969-4900
                                           Facsimile:   (214) 969-4999

                                           **COUNSEL FOR VARIOUS FIRMS**
                                           **REPRESENTING ASBESTOS**
                                           **CLAIMANTS**


                                           /s/ Daniel K. Hogan
                                           Daniel K. Hogan (ID no. 2814)
                                           **THE HOGAN FIRM**
                                           1311 Delaware Avenue
                                           Wilmington, Delaware 19806
                                           Telephone:  (302) 656-7540
                                           Facsimile:   (302) 656-7599
                                           E-mail:  dkhogan@dkhogan.com

                                           **LOCAL COUNSEL FOR VARIOUS**
                                           **FIRMS REPRESENTING ASBESTOS**
                                           **CLAIMANTS**