IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: ) | In Proceedings for a Reorganization under Chapter 11 |
| ) | |
| W.R. Grace & Co., *et al.,* ) | Case No. 01-01139-JKF |
| ) | Re:  DI  13703 |
| Debtors. ) | |
| ) | Emergency Hearing: February 2, 2007 at 3:30 p.m. by telephone |
| ) | |

**THE MMWR FIRMS' RESPONSE TO THE DEBTORS' EXPEDITED MOTION TO MODIFY ORDER REGARDING PRODUCTION OF X-RAYS BASED ON <u>SUBSTANTIAL NON-COMPLIANCE WITH ORDER</u>**

The MMWR Firms, [1] on behalf of their respective asbestos personal injury claimants, and by and through their own counsel, MMWR, [2] hereby submit this Response to W.R. Grace & Co.'s Expedited Motion to Modify Order Regarding Production of X-Rays Based on Substantial Non-Compliance With Order ("Grace's Motion").

**I.    Introduction**

Grace's Motion is another attempt to delay the estimation proceeding and the final resolution of this case.

---

[1] For the purposes of this Response, the "MMWR Firms" are defined as follows:  (i) Kazan, McClain, Abrams, Lyons, Farrise & Greenwood, A Professional Law Corporation; (ii) Waters & Kraus, LLP; (iii) Hobin, Shingler & Simon, LLP ("Hobin Shingler"); (iv) Paul, Hanley & Harley, LLP; (v) Early Ludwick & Sweeney; (vi) Harowitz & Tigerman; (vii) the Wartnick Law Firm; (viii) Wise & Julian, P.C.; (ix) Rose, Klein & Marias, LLP; (x) Early & Strauss; (xi) Clapper, Patti, Schweizer & Mason; (xii) The Law Offices of Matthew Bergman ; and (xiii) The Grace Certain Cancer Claimants.

[2] The law firm of Montgomery, McCracken, Walker & Rhoads, LLP ("MMWR") represents these noted law firms and, except with respect to the limited representation of "The Grace Certain Cancer Claimants," MMWR does not directly represent any of the individual claimants who are directly represented only by these firms.

2152917v1

- 2 -

Grace seeks relief on the basis of a false premise. Grace contends that it needs the Court to modify its December 22, 2006 Order Regarding X-ray Evidence (the "X-ray Order") because "the asbestos personal injury claimants have substantially failed to comply with the order." Grace's Motion, p. 1.

That statement is false as regards the MMWR Firms, including those MMWR Firms specifically identified in Grace's Motion.

As detailed below, the claimants represented by the MMWR Firms have complied with both the letter and the spirit of the Court's December 22, 2006 Order Regarding X-ray Evidence (the "X-ray Order"). In addition, a review of the correspondence on which Grace relies from law firms other than the MMWR Firms does not support Grace's Motion.

Moreover, Grace's own conduct has created the "emergency" of which it now complains. Indeed, Grace has already previewed its intention to rely on this self-created emergency as a basis to seek to further delay this case, which has already been pending for almost six (6) years.

Grace's Motion should be denied.

**II.     The MMWR Firms are complying with the X-ray Order, and no basis exists for amending the X-ray Order as to the MMWR Firms**

The MMWR Firms have provided copies of chest x-rays where a "[c]laimant [represented by the MMWR Firms has alleged] an asbestos-related cancer other than mesothelioma who, in a . . . Questionnaire response . . .has produced, or alleged or indicated that he has x-ray evidence that the cancer is attributable to asbestos exposure", see X-ray Order, ¶ 1, and where the firm can certify that they believe that the copy is an accurate copy of the original.

The "non-compliance" that Grace alleges is essentially that some of the MMWR Firms, for some number of claimants, have found obtaining certificates that the x-ray copy is a true

- 3 -

duplicate of the original, or that they believe it to be so, either "not possible or reasonably practical" and have therefore either followed the procedure contained in paragraph 3, or both provided copies and offered to follow the procedure contained in paragraph 3.

Rather than "non-compliance," what Grace describes in its Emergency Motion is that firms have in fact followed the strict letter of the Order by informing Grace that they cannot possibly or reasonably practically obtain a certificate and that they therefore will comply with the procedure described in paragraph 3 of the X-ray Order. Indeed, Exhibit 3 to Grace's Motion contains letters sent by claimants' firms so informing Grace.

Unbelievably, Grace's Motion implies that the claimants' representatives that appeared at the December 5th hearing somehow tricked Grace's counsel into believing that more "paragraph 2" certificates, and fewer "paragraph 3 elections" would be forthcoming. Neither the briefing nor the Transcript from the December 5 hearing bear out Grace's allegation that "[t]he certification required by paragraph two of the December 22nd Order was proposed and advocated by claimants' counsel, not Grace, as an alternative to producing original x-rays." See Grace's Motion at p. 5. In addition, the MMWR Firms are not aware of any representations made by claimants' counsel that would cause Grace to have had a basis for an "understanding . . . that the Claimants would obtain the necessary certification and would send copies of the claimants' x-rays to Rust." Id.

What actually appears to be at the root of Grace's Motion is that it did not believe the plaintiffs and their law firms when they told Grace that it would be very difficult to obtain certifications of precisely the nature Grace wanted. Grace also appears to have difficulty with the fact that it, like all other litigants, is governed by the Federal Rules.

- 3 -

2152917v1

### A. Response to Allegations Regarding the Wartnick Law Firm

Although Grace does not list the Wartnick Law Firm ("Wartnick Law") on either of its Appendices, Grace singles Wartnick Law out in its Motion as an example of a firm that did not "include[e] the language required by this Court's Order]." This is simply an extraordinary contention in light of the facts. See, id. at pp. 3-4.

The X-ray Order, by its express terms, acknowledges that there will be circumstances where "it is not possible or reasonably practicable to obtain the certification described". X-ray Order, ¶ 2.

Here, Wartnick explained that it did not have possession of the originals so it was unable to make the comparison necessary to certify and that, as a law firm, it did not have the skills to make the certification, even if the original were available to review.

When Grace raised this as an extra-Agenda item at the hearing held on January 23, 2007, the Court acknowledged the reasonableness of this position. See 1/23/07 Tr. at pp.77-79, attached hereto as Exhibit D.

Still, demonstrating its good faith, Wartnick Law provided copies to Rust along with a certification that is misquoted in Grace's brief. Wartnick Law also provided a certification that it "had no reason to believe that the x-rays we are submitting are not representative of the originals and believe them to be representative of the originals". Letter attached to Grace's Motion as Exhibit 6.

Moreover, Grace's Motion fails to acknowledge or attach a second letter sent by Wartnick Law directly to Grace's counsel, also on January 26, 2007, which went on to state that "If you have any concerns about this certification or require additional information, please let us

2152917v1

know immediately." Letter dated January 26, 2007 from Steven M. Harowitz to Barbara Mack Harding, David Bernick and Brian Stansbury, attached hereto as Exhibit A. Following this letter, Wartnick Law heard nothing from Grace or its counsel until Grace's Motion was filed.

### B. Response to Allegations Regarding Rose, Klein & Marias LP

Grace lists Rose, Klein & Marias, LLP ("Rose Klein") on Correspondence Appendix I on its Motion as one of the firms that "informed Grace that they cannot make the certification required by Paragraph two of the December 22nd X-ray Order."

Grace charges that Rose Klein "indicated that they would not be sending copies of their x-rays to Rust and . . . instead informed Grace that they will make original x-rays available at their offices." Id.

Grace mischaracterizes the Rose Klein correspondence. Rose Klein expressly states that with respect to all but one of its clients, "[o]nce they [copies of X-rays] have been received, they will be forwarded on to you for review." Letter dated January 11, 2007 from Barbara Taylor to Rust Consulting, attached to Grace's Motion as part of Exhibit 3. With respect to the one Rose Klein client for whom the firm had possession of originals, Rose Klein provided that it would make those originals available for inspection.

Subsequent to the attached January 11 correspondence, Rose Klein has provided x-ray copies, with certifications of the kind desired by Grace, for some claimants and has notified Rust that it will promptly provide copies for its other claimants, with certifications, as soon as those x-rays (which were timely requested but have not yet been received) are received. See correspondence dated January 30, 2007 from Debra Gorman to Rust Consulting, attached hereto as Exhibit B.

2152917v1

Although Rose Klein is uncertain of its ability to make a certification in the form desired by Grace with regard to the one plaintiff as to which it possess originals, it nonetheless is willing to make copies and provide them to Grace at Grace's expense.

It must also be noted that, consistent with Grace's pattern of delay, subsequent to the January 11, 2007 letter, the first communication that Rose Klein received from Grace was the filing of Grace's Motion.

### C. Response to Allegations Regarding The Law Office of Matthew Bergman

Grace's Motion attaches a letter from the Law Office of Matthew Bergman ("Bergman Law") as an example of a law firm that has "indicated that they may not be able to make the certification required by paragraph two of the December 22nd X-ray Order. <u>See</u> Exhibit 5 to Grace's Motion. Bergman's letter informs Grace that with respect to two particular claimants, Bergman is not aware of the location of any x-rays.

Bergman's letter continues, however, that Bergman does not rely on x-ray evidence to support these two claimants' allegations. Indeed, in their Questionnaire responses, those claimants did not "produce, allege, or indicate that their claims were supported by x-ray evidence." See copies of the relevant pages of the Questionnaire responses for those two plaintiffs, attached hereto as <u>Exhibit C</u>.

Consequently, under the express terms of the X-ray Order, those two claimants fall outside the scope of the X-ray Order.

Grace's use of those claimants to suggest non-compliance with the terms of the X-ray Order is misplaced.

### III. Grace's Motion is Impermissibly Global in Scope

- 6 -

2152917v1

With generalized, vastly sweeping allegations, Grace attempts to impose universal obligations on approximately 5,439 claimants, at the same time not naming any of them specifically, and not mentioning any specific circumstances of any specific claimants, except for a few that are mentioned by way of example in the Motion or attached Exhibits. As the Court has stated time and time again, claimants' due process rights prevent Grace from imposing global conditions without regard for claimants' specific circumstances. Grace essentially accuses approximately half of the 5,439 claimants of bad faith in opting to proceed under paragraph 3 as opposed to paragraph 2 of the Order (or, as Grace puts it, "failing to comply with the Order").

## IV. There is No Emergency

All of the cases that are subject to the Questionnaire process, and the related X-ray Order, are pre-petition cases. That is, all of the cases were filed over six years ago, and many were in active litigation at the time of Grace's bankruptcy filing.

Grace filed its bankruptcy case on April 2, 2001.

Grace filed its motion seeking discovery with respect to estimation in November 2004.[3] At that time, Grace proposed a Questionnaire process that would include discovery of x-ray information.

But, despite the length of time these cases have been pending and Grace has been in bankruptcy, and even since Grace decided that it intended to pursue a novel and expensive form of estimation of claims, not until October, 2006, did Grace begin requesting production of x-rays. That is, despite opportunities pre-petition, post-petition, and particularly since it first sought to

---

[3] The Debtors filed a motion on November 13, 2004 proposing an estimation protocol, that included a Questionnaire process (which has imbedded the intention to seek x-ray information), captioned as the Debtors' Motion for Entry of an Order Seeking the Estimation of Asbestos Claims and Certain Related Relief [Doc. Ref. 6899].

- 7 -

2152917v1

impose the Questionnaire process over two (2) years ago, which Questionnaire included identification by plaintiffs of x-ray information, Grace delayed <u>until October 2006</u> to seek production of x-rays.

Eight responses [4] were filed in opposition to the Debtor's letter demand for expedited turnover of original x-rays by non-mesothelioma cancer plaintiffs, including the Memorandum of the MMWR Firms' Asbestos Claimants in Opposition to "Debtors' Notice Of Failure To Reach Agreement and Request for Entry of Debtors' Proposed Protocol Concerning Production of Chest X-Rays of Asbestos Personal Injury, Pre-Petition Claimants with Non-Mesothelioma, Malignant Claims" [Filed: 12/1/06] (Docket No. 13881), which Memorandum is incorporated herein by reference. Among other arguments advanced in opposition, the respondents opposed production of originals based on Rules 34 and 45 of the Federal Rules of Civil Procedure. <u>See, for example</u>, pp. 3-7 of the MMWR Firms' Opposition.

At a hearing on the Debtor's contested request to have plaintiffs deliver their original x-rays to the Debtor held on December 5, 2007, the Court ordered that copies of x-rays would be sufficient if produced with a certification that they were duplicates of the originals. <u>See</u> 12/5/06 Tr., p. 86 at lines 1-8.

In a dialogue with the Debtor over the difficulties that Grace had been informed existed with respect to delivery of originals, the Court stated:

> And you may go look at it. Ms. Harding, I'm done. That's my ruling. You either get copies if you want them in your possession or go look at them at the site. You're entitled to see the originals, I'm not going to prohibit you from seeing the originals, but I'm also not going to require plaintiffs who may need these – who in many cases do need

---

[4] <u>See</u> Amended Notice of Agenda of Matters Scheduled for Hearing on December 5, 2006, at 8:30 a.m. before the Honorable Judith K. Fitzgerald in Pittsburgh, Pennsylvania [Doc. Ref. 13891], item #2.

> these x-rays for other purposes to turn them over to this debtor when in fact they may need them for some other purpose.

Id. at 89, lines 16-23.

After further argument from plaintiffs' counsel regarding the difficulty of obtaining a certification, the Court stated:

> If they want to go look at the originals they can certainly go look at the originals. They have that right. But nonetheless they're entitled to a certification that indicates that this is a duplicate. And if it can't be a duplicate for some reason then they'll say I can't get a duplicate, the image is faded or whatever. I don't know what the reasons will be, but then Grace will know they have to go look at the original.

Id. at 91, lines 18-25 (emphasis added).

Following the December 5th hearing, Grace and the various law firms representing personal injury claimants negotiated (at length) and agreed on a procedure to govern X-ray production. To be clear, and as Grace itself admits, Grace expressly negotiated, participated in the drafting of, agreed to, and presented to the Court the X-ray Order.[5]

The Court entered the agreed-upon procedure on December 22, 2006 in the form of the X-ray Order.

In the intervening time, the MMWR Firms have strictly and fully complied with the X-ray Order. Yet, three of the MMWR Firms are identified as being among the "37 [unnamed] law firms" that are alleged not to have complied with the X-ray Order.

Despite this compliance and despite Grace having bargained for and agreed to the terms of the X-ray Order, Grace now seeks to re-argue its extraordinary request for production of

---

[5] See Certification of Counsel for Proposed Order Regarding X-ray Evidence [Doc. Ref. 14093].

- 9 -

originals because, it claims, it would be burdensome for Grace to have to travel to look at the originals. The MMWR Firms anticipate that, as an alternative, Grace will seek additional time to review the originals and simultaneously seek to push back the estimation hearing that was <u>originally scheduled for August 2005</u>.

There is no actual emergency to Grace's motion – only the emergency created by Grace's own actions. There is no factual or legal merit to Grace's request to modify the X-ray Order.

## V. Conclusion

For all of the foregoing reasons, Grace's Motion should be denied, with costs assessed against Grace and/or its counsel.

Dated: February 2, 2006

MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP

By:  /s/ Noel C. Burnham
Noel C. Burnham, Esquire (DE 3483)
Natalie D. Ramsey, Esquire (PA only)
Leonard A. Busby, Esquire (PA only)
300 Delaware Avenue, Suite 750
Wilmington, DE 19801
(302) 504-7800
(302) 504-7820 (facsimile)

and

123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500
(215) 772-7620 (facsimile)

Attorneys for the "MMWR Firms"