## LEASE AGREEMENT

THIS INDENTURE OF LEASE made and entered into as of the 17th day of September, 1991, by and between JASON A. HERVIN, an individual, residing at 2020 S.W. 15th Avenue, in the City of Portland, State of Oregon (hereinafter referred to as the "Landlord") and W. R. GRACE & CO.-CONN. (Construction Products Division), a corporation organized and existing under the laws of the State of Connecticut and having an office and place of business at 62 Whittemore Avenue, in the City of Cambridge, and Commonwealth of Massachusetts, (hereinafter referred to as the "Tenant").

### WITNESSETH:

That for and in consideration of the rents, covenants and agreements hereinafter reserved and contained, the Landlord and the Tenant hereby agree as follows:

SECTION 1 - DESCRIPTION OF PREMISES, TERM AND RENT

The Landlord agrees to and does hereby demise and lease to the Tenant and the Tenant does hereby take and hire from the Landlord all that piece of parcel of land together with the buildings and improvements thereon situated, lying and being in the City of Portland, County of Multnomah, State of Oregon, and more particularly bounded and described as follows:

> Block 72, ALBINA ADDITION, an addition to the city of Portland, County of Multnomah, State of Oregon, consisting of 40,000 square feet, more or less, and commonly known as 2303 North Harding Avenue.

EXHIBIT 1
PAGE 1

Together with all permanent fixtures, appurtenances, rights, easements, rights of way and profits thereunto appertaining and all land, railroad rights, riparian rights, and other rights in, over or to land or water adjacent to or used or useful in connection with the premises hereinbefore described or servient to the within premises.

To HAVE AND TO HOLD said premises with the appurtenances and privileges thereunto appertaining unto the Tenant, its successors and assigns, for and during the term of two (2) years and five (5) months commencing on the first day of February 1992 and ending on the 30th day of June, 1994, both dates inclusive, yielding and paying therefor an annual rental in the first Lease Year thereof of Forty-Six Thousand Dollars ($46,000.00) payable in installments as follows: an initial installment of Three Thousand Eight Hundred Thirty-Three Dollars and Thirty-Three Cents ($3,833.33) per month on the first month of said lease year and equal monthly installments thereafter of Three Thousand Eight Hundred Thirty-Three Dollars and Thirty-Three Cents ($3,833.33) payable on the first day of each and every month of said year. Lease Year means each successive 12-month period during this Lease commencing on February 1, 1992.

Immediately following the end of each Lease Year of this Lease or any renewal thereof and as soon as the necessary government statistics become available, the Tenant shall pay to the Landlord an additional sum equal to the yearly rental for said year multiplied by the percentage increase, if any, in the all urban Consumer Price Index (U.S. city average) for said Lease

Year ("additional rent"). In addition, the annual rental for the succeeding lease year shall be increased by an amount equal to the additional rent paid in the <u>preceding</u> lease year. (For example, the annual rental for the lease year ending in 1994 shall be increased by the additional rent paid after the close of the lease year ending in 1993). Rent for each full Lease Year shall be paid in twelve equal monthly installments on the first day of each and every month thereof. Rent for any partial Lease Year shall be prorated based on the number of months in each partial Lease Year. However, no further additional rent on account of an increase in the Consumer Price Index shall be calculated or charged with respect to the last five (5) months of the term of this Lease, unless this Lease is renewed and extended. If this Lease is renewed and extended through <u>June 30, 1996,</u> then no further additional rent shall be calculated or charged with respect to the last five (5) months of the renewal term. Tenant further agrees to timely pay all taxes and assessments (as described in Section 18, below), building maintenance, insurance and other expenses pertaining to the demised premises.

Tenant agrees to use and occupy the demised premises for the purpose of office space, manufacturing, storage, warehousing, parking of automobiles and trucks and such other purposes as the Tenant may deem necessary in the conduct of its business (including any subsidiary, managed or controlled corporation of the Tenant and any corporation in, or with which the Tenant or its subsidiary, managed or controlled corporations

3 -- LEASE AGREEMENT

EXHIBIT 1
PAGE 3

may be duly merged, converted or consolidated under any statutory procedure.)

For the purpose of this Lease hazardous materials shall be defined as any and all materials which constitute hazardous, extremely hazardous, or toxic materials or petroleum products under any applicable federal, state, or local law relative to hazardous or toxic materials, water or air quality, petroleum products, or public health, or any other applicable law or regulation. In the use of any hazardous materials upon the premises Tenant shall comply with all applicable laws in connection therewith. Tenant further agrees to indemnify, defend, and hold Landlord harmless with respect to any and all claims or liabilities of each and every kind arising out of or pertaining to *any such hazardous materials or* Tenant's failure to so comply with said laws.

SECTION 3 - PAYMENT OF RENT

The Tenant hereby convenants and agrees to pay the rent hereinbefore reserved as herein provided promptly as and when the same shall become due to the Landlord at his office at 2020 S.W. 15th Avenue, Portland, Oregon 97201.

SECTION 4 - FAILURE TO PAY RENT OR OTHER DEFAULT BY TENANT

In the event the Tenant shall

(a) fail to pay the rent herein reserved or any part thereof for a period of Thirty (30) days after the Landlord shall have given written notice to Tenant of such default, or

4 - LEASE AGREEMENT

EXHIBIT 1
PAGE 4

(b) fail to reasonably perform any of the other terms and conditions of this Lease to be performed by the Tenant for Thirty (30) days after the Landlord shall have given written notice of such default, the Landlord may at its option on Ten (10) days' written notice by certified mail of its intention so to do terminate this Lease and repossess the demised premises unless the Tenant shall in the meantime remedy such default. In the event of any such termination and repossession, the Tenant shall immediately be obligated to pay to the Landlord an amount equal to the unpaid balance of the rent reserved in this Lease for the residue of the term hereof. The Tenant shall thereafter be credited with such sums as the Landlord may receive upon his re-rental of the demised premises to any other tenant during said period, up to and including said unpaid balance of the rent reserved in this Lease.

SECTION 5 - REPAIRS TO PREMISES BY TENANT

The Tenant agrees that it will take good care of the demised premises and that it will, ~~to the extent due to Tenant's use and occupancy of the premises~~, repair, replace, and, if necessary, repaint any areas on the interior or exterior thereof which are warped, bent, or otherwise damaged or broken, and will make any other repairs and perform any other maintenance necessary to preserve the demised premises in good order and condition. However, the Tenant shall not be responsible for repairs necessitated by losses for which the demised premises are insured. This section shall also pertain to such repair and/or

5 - LEASE AGREEMENT

EXHIBIT 1
PAGE 5

maintenance of the railroad sidings adjoining the demised premises which are deemed by the railroad to be the responsibility of the shipper or property owner rather than of the railroad.

SECTION 6 - HEATING OF PREMISES AND PUBLIC UTILITIES

The Tenant agrees to heat the premises, provided, however, that the Tenant shall not be responsible to the Landlord for any damage or injury to the demised premises caused by the failure of the Tenant to furnish such heat when such failure is occasioned by necessary repairs to or replacements in the heating system and equipment by shortages of or inability to obtain fuel, by strikes, lockout or other labor conditions, or by any other cause or causes beyond the Tenant's control or which are not due to the fault or negligence of the Tenant, all so long as the Tenant has engaged in reasonable efforts to protect the demised premises.

The Tenant agrees to assume and pay for all charges made by a public utility for water and sewer facilities furnished on said premises during the term hereof and for gas and electric current used in connection with the operation of the demised premises. All such services are separately metered to the premises.

SECTION 7 - PROCUREMENT OF INSURANCE BY TENANT

The Tenant agrees to pay for and keep in effect throughout the term of this Lease, or any renewal or extension thereof, public liability insurance in the amount of One Million Dollars ($1,000,000) for injury to or death of one person, and

6 - LEASE AGREEMENT

EXHIBIT 1
PAGE 6

Two Million Dollars ($2,000,000) for injury to or death of any number of persons arising out of one accident, protecting the Landlord, to the extent of such insurance but to no further extent, against any and all claims for damages resulting from injury to person or loss of life to any one in or about the demised premises or any part thereof, arising out of or caused as a result of the negligence of the Tenant, its agents, servants, or employees. Tenant shall also procure and keep in effect fire and other casualty insurance to the extent of the replacement value of the premises. All such policies of insurance shall be in standard form; shall be issued by companies authorized to transact business in the state in which the demised premises are located; shall state that they provide primary coverage; and shall include Landlord as a named insured and name Landlord as payee of the proceeds of any loss. The Tenant shall promptly provide Landlord with binders with respect to said insurance policies. In lieu of separate policies of insurance Tenant may, at its option, include same in any blanket policy which it may hold or maintain, and deliver to the Landlord a certificate or certificates evidencing the fact that the Landlord has been covered as described above by the insurance required pursuant to the terms of this Section.

SECTION 8 - ASSIGNMENT OF LEASE AND SUBLETTING

The Tenant may assign this Lease or sublet the demised premises or any part thereof, but the Tenant shall remain

responsible for compliance with all the terms and conditions of this Lease unless expressly released therefrom by the Landlord.

SECTION 9 - ACCESS TO PREMISES BY LANDLORD

Tenant agrees that the Landlord, its employees, representatives and agents upon reasonable notice to Tenant shall have the right to enter upon the demised premises at reasonable times during the term hereof for the propose of examining or inspecting the same, provided that the same shall not interfere with the conduct of Tenant's business therein.

SECTION 10 - COMPLIANCE WITH LAWS, ETC., BY TENANT

The Tenant agrees that in the manner of the use of the premises, it will observe and comply with all applicable state and federal statutes and all municipal ordinances insofar as they are applicable and may relate to the manner of the use of the premises and the Tenant's obligations under this Lease. Tenant may, however, in good faith, contest the validity of any such statute, ordinance or any other act, rule, requirement, order, direction, or regulation and pending the determination of such contest may postpone compliance therewith.

SECTION 11 - LANDLORD'S WARRANTIES AND QUIET ENJOYMENT

The Landlord warrants to the Tenant that it is seized and possessed of the demised premises in fee simple and has a good and lawful right to enter into this Lease. The Landlord also covenants with the Tenant that the Tenant, upon paying the said rent in the manner specified and performing the conditions, covenants and agreements herein contained, shall and may

peaceably and quietly have, hold and enjoy the demised premises for the term aforesaid, subject, however, to the provisions herein contained for earlier termination.

SECTION 12 - ALTERATIONS, FIXTURE INSTALLATIONS AND REMOVAL AND PERMITS THEREFOR

The Landlord agrees that the Tenant may make such alterations, additions, improvements or other changes in, the demised premises as, in the opinion of the Tenant, are necessary for it to conduct its business therein, and as the Landlord shall approve upon review of the Tenant's written request therefor with drawings showing such changes. The Landlord's approval shall not be unreasonably withheld. The Tenant shall supply the Landlord with "as built" plans following the completion of any such changes.

The Landlord agrees that it will, on request, cooperate with the Tenant to the extant required in order to obtain the necessary permits and any other necessary authority to proceed with the approved alterations, additions, improvements or other further agrees, upon demand of the Tenant, to promptly execute and deliver any instruments, documents, certificates, agreements and such other papers as may be necessary or required to obtain such permits and authority.

It is expressly agreed and understood between the Landlord and the Tenant that, unless otherwise agreed to in writing, with reference to any alteration, addition, improvement or other change, the same shall become the property of the

9 - LEASE AGREEMENT

EXHIBIT 1
PAGE 9

Landlord upon installation and the Tenant shall not, upon the termination of the tenancy under this Lease or any subsequent lease of the demised premises between the Tenant and the Landlord, be required-to restore to its original condition any part of the leased premises thus altered.

All personal property, whether or not attached to the realty, and all movable furniture, machinery, equipment and the like which is placed within or on but not affixed to the demised premises by or at the expense of the Tenant shall be and remain the personal property of the Tenant and may be removed by the Tenant at any time at or prior to the expiration of the term hereof or left, in whole or in part, in the premises in which latter event they shall become the property of the Landlord. In the event of removal by the Tenant, the Tenant shall promptly repair any resulting damage to the premises and leave the premises free of any unreasonable alterations or changes.

SECTION 13 - SURRENDER OF PREMISES

Upon the expiration or other termination of the term of this Lease, Tenant shall quit and surrender to the Landlord the demised premises in good order and condition, ordinary wear and tear and damage by the elements, fire, or other casualty excepted.

SECTION 14 - REPAIRS DUE TO FIRE DAMAGE OR OTHER CASUALTY, ETC.

If the demised premises, or any part thereof, shall be damaged or destroyed by fire or other casualty, the Tenant shall

10 - LEASE AGREEMENT

EXHIBIT 1
PAGE 10

give prompt notice thereof to the Landlord and the Landlord shall, upon receiving such notice, promptly proceed with all due diligence, subject always to events or delays by causes beyond its reasonable control, to repair or reconstruct, or cause to be repaired or reconstructed, such damage or destruction, and the rent and other payments required by this Lease shall continue to be paid, except that the rent payments alone shall be prorated on the basis of the still-usable proportion of the demised premises. If the damage to the demised premises is fifty (50) percent or more, or if the making of such repairs or reconstruction of the building is such so that the same cannot reasonably be repaired or reconstructed by the Landlord within one hundred twenty (120) days after the happening of such fire or other casualty, then, in such event, the Tenant and the Landlord shall have the right to cancel and terminate this Lease as of the date of the damage by such fire or other casualty, provided that the terminating party shall notify the other party of its decision within thirty (30) days of the fire or other casualty. If the Tenant or Landlord shall cancel this Lease as herein provided, the Tenant shall be released and discharged from all further liability under this Lease, and if the rent shall have been paid by the Tenant for a period beyond the date of such cancellation and termination, the prorated portion thereof shall be promptly refunded by the Landlord to the Tenant.

/ / /

/ / /

11 - LEASE AGREEMENT

EXHIBIT 1
PAGE 11

SECTION 15 - POSSIBLE CONDEMNATION OR EMINENT DOMAIN PROCEEDINGS

In the event that the premises shall be taken under any condemnation or eminent domain proceedings during the term hereof, or said term as extended pursuant hereto, or in the event any portion of said premises shall be taken in any such proceedings and the remaining portion shall not be reasonably suitable or adequate for the uses and purposes for which said premises are then being utilized by Tenant, then and in any such event this Lease and the terms hereof shall terminate on the date of such taking and Tenant shall be liable for the payment of rent only up to the date of such taking any rent paid in advance shall be apportioned and promptly refunded to Tenant. If a portion of the premises shall be taken under any condemnation or eminent domain proceedings during the term hereof, or said term as extended pursuant hereto, and the remaining portion of said premises not taken or condemned shall be reasonably suitable and adequate for the uses and purposes of the Tenant then, in such event, this Lease shall be and remain unaffected by such condemnation or eminent domain proceedings except that, effective as of the date of such taking, the rent shall be diminished by an amount representing the part of said rent applicable to that portion, if any, of the premises which is so condemned or taken, and the Landlord shall proceed promptly and with due diligence to make such alterations in or do such construction of the premises as may be required as the result of such condemnation or eminent

12 - LEASE AGREEMENT

EXHIBIT 1
AGE 12

domain proceedings. Any rent paid in advance for the whole demised premises shall be apportioned as of the date of such taking and the appropriate amount shall be promptly refunded to the Tenant.

In the event of any condemnation of eminent domain proceedings as in this Section provided, Landlord and Tenant may file their respective claims for damages and shall be entitled to receive and be paid their respective awards. Tenant shall have the right to appear in any such condemnation or eminent domain proceedings and to participate in any and all hearings, trials and appeals therein.

SECTION 16 - RENEWAL OPTION

For and in consideration of the payment by Tenant to Landlord of the sum of $6,000.00 on the date hereof, the Landlord, for itself, its successors and assigns, does hereby grant unto the Tenant the right and option to renew and extend the term of this Lease for one (1) additional successive period of two (2) years. Such renewal and extension shall be on like covenants, agreements, terms, provisions and conditions as are contained herein (unless changed or modified by mutual agreement), except such of the provisions hereof as are applicable exclusively during the original term of this Lease, and that the annual rental for the first ~~Lease~~ *full* Year of the renewal period shall be the higher of (i) $46,000 or (ii) the Consumer Price Index-adjusted rental for said year calculated pursuant to the terms of Section One, above. Such right and option to extend

13 - LEASE AGREEMENT

EXHIBIT 1
PAGE 13

the term or terms hereof may be exercised and the term or terms thereby extended by written notice thereof given by the Tenant to the Landlord not later than December 31, 1993. If such extension does take place, Landlord shall refund the above $~~12,000.00~~ [handwritten: 6,000.00] payment to Tenant (but not interest thereon) not later than July 1, 1994. Landlord shall be free to sell or otherwise transfer the property at any time, but any such sale or other transfer shall preserve Tenant's rights under this lease.

SECTION 17 - NOTICES, DEMANDS AND COMMUNICATIONS

Notices, demands and communications hereunder, to Landlord or Tenant, must be given, or sent in writing and shall be deemed to have been given or sent,

(a) if intended for the Landlord, by mailing by certified mail with postage prepaid, addressed to the Landlord at 2020 S.W. 15th Avenue, Portland, Oregon 97201, or

(b) if intended for the Tenant, by mailing by certified mail with postage prepaid, addressed to the Tenant at 62 Whittemore Avenue, Cambridge, Massachusetts 02140, attention of Jack W. Wolter, Vice President.

Either party may designate, by notice in writing a new address to which any notice, demand or communication may hereafter be so given or sent.

/ / /

/ / /

14 - LEASE AGREEMENT

EXHIBIT 1
PAGE 14

SECTION 18 - TAXES AND ASSESSMENTS

Upon presentation by Landlord to Tenant of bills therefor, Tenant shall pay all real estate, county and city taxes, and any assessments affecting the demised premises during the term of this Lease or any renewal or extension thereof, except any taxes assessed against the Landlord's net income; provided, however, that for the last six (6) months of the term of this Lease or, if this Lease is renewed and extended, then only for the last six (6) months of the renewal term, Tenant shall pay only one-half of that year's Multnomah County business tax and city of Portland business license tax. However, Tenant may, in good faith, at any time allowed by law, contest the validity of any such tax or assessment and, pending determination of any such contest, may postpone payment. Landlord shall cooperate with Tenant in any such contest. If requested by Tenant, Landlord shall cause the demised premises to be separately assessed on the tax and assessment rolls of the taxing and assessing authorities from any other property of the Landlord with which the premises may be joined on the tax and assessment rolls.

SECTION 19 - EFFECT ON SUCCESSOR PARTIES

The covenants, conditions and provisions herein contained shall be binding upon, and shall inure to the benefit of the parties hereto, their legal representatives, heirs, successors and assigns.

/ / /

15 - LEASE AGREEMENT

EXHIBIT 1
PAGE 15

representative thereof in which writing this Lease shall be specifically referred to.

IN WITNESS WHEREOF, the parties hereto have executed this Lease, or caused this Lease to be executed, as of the day and year first above written.

WITNESS:

_____        _____
                                        JASON A. HERVIN

ATTEST:                                 W. R. GRACE & CO.-CONN
                                        Construction Products Division

_____        By _____
Assistant Secretary                     Jack W. Wolter, Vice President


STATE OF OREGON         )
                        ) ss.
County of Multnomah     )

September    This instrument was acknowledged before me on 30th
_____, 1991, by JASON A. HERVIN.

                                        _____
                                        Notary Public for Oregon
                                        My Commission Expires: 5-16-94


COMMONWEALTH OF MASSACHUSETTS)
                             ) ss.
County of Middlesex          )

September   This instrument was acknowledged before me on 17th
_____, 1991, by JACK W. WOLTER, as Vice President of W.R. Grace & Co.

                                        _____
                                        Notary Public for Massachusetts
                                        My Commission Expires: April 3, 1998


17 - LEASE AGREEMENT


EXHIBIT 1
PAGE 16