## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | **Chapter 11** |
|  | ) |  |
| W.R. GRACE & CO., et al., | ) | **Case No. 01-1139 (JKF)** |
|  | ) |  |
| Debtors. | ) | **(Jointly Administered)** |
|  | ) |  |
|  | ) | **Related Docket Nos. 9315, 10520** |
|  | ) | **Claim Number: 12758** |
|  | ) |  |
|  | ) | **Hearing Date: April 9, 2007 at 9:00 am** |
|  | ) | **Response Deadline: March 19, 2007** |
|  | ) |  |

## MEMORANDUM OF LAW IN SUPPORT OF MACERICH FRESNO LIMITED PARTNERSHIP'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE DEBTORS' FIFTEENTH OMNIBUS OBJECTION (SUBSTANTIVE) TO ASBESTOS PROPERTY DAMAGE CLAIMS ON BASES OF <u>STATUTE OF LIMITATIONS, LACHES, AND ASSUMPTION OF RISK</u>

# TABLE OF CONTENTS

Page

I.      STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ............ 1

II.     STATEMENT OF FACTS .................................................................................... 3

III.    LEGAL STANDARD FOR SUMMARY JUDGMENT ........................................... 5

IV.     SUMMARY OF ARGUMENT ................................................................................ 6

V.      ARGUMENT ........................................................................................................ 9

        A.      The Macerich Claim is not barred by the statute of limitations for a
                property damage claim in tort because under California law, the
                statute of limitations does not commence until a plaintiff has
                knowledge of the physical damage to his property. ....................................... 9

        B.      The Macerich Claim is not barred by the statute of limitations for a
                nuisance claim because under California law, each reoccurrence of
                a continuing but abatable nuisance gives rise to a separate cause of
                action, with only those claims that arose three years prior to
                Macerich's filing of its Proof of Claim barred. ........................................... 14

        C.      The Macerich Claim is not barred by the operation of the doctrine
                of laches because the laches defense is not applicable in an action
                for money damages, and even if the laches defense is applicable
                here, the Debtor has not produced any evidence which shows that
                it has been prejudiced by the delay. .............................................................. 15

        D.      The Macerich Claim is not barred by the assumption of risk
                doctrine because under California law, assumption of risk is not an
                absolute defense, and it may only be considered as an element of
                comparative negligence. ............................................................................... 17

VI.     CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

Page

## Cases

*Aaas v. Superior Court of San Diego County,*
   24 Cal. 4th 627 (2000) .................................................................................. 11

*Adickes v. S.H. Kress & Co.,*
   398 U.S. 144 (1970) ....................................................................................... 5

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) .................................................................................... 5, 6

*Arcade Water Dist. v. U.S.,*
   940 F.2d 1265 (9th Cir. 1991) ...................................................................... 15

*Baker v. Burbank-Glendale-Pasadena Airport Authority,*
   39 Cal.3d 862 (1985) ..................................................................................... 15

*Barkley v. Blue Lake,*
   47 Cal. App. 4th 309 (1996) ......................................................................... 16

*Bono v. Clark,*
   103 Cal. App. 4th 1409 (2002) ..................................................................... 16

*Butner v. U.S.,*
   440 U.S. 48 (1979) .......................................................................................... 9

*California Sansome Co. v. US. Gypsum,*
   55 F.3d 1402 (9th Cir. 1994) ........................................................................ 10

*Capogeannis v. Superior Court,*
   12 Cal. App. 4th 446 (1993) ......................................................................... 15

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ........................................................................................ 5

*Chevron U.S.A. Inc. v. Superior Court,*
   44 Cal. App. 1009 (1994) .............................................................................. 15

*City of San Diego v. United States Gypsum Company,*
   30 Cal. App. 4th 575 (1994) ......................................................................... 10

*Getty v. Getty,*
   187 Cal. App. 3d 1159 (1986) ...................................................................... 16

*Ideal Dairy Farms, Inc. v. John Labatt, Ltd.,*
   90 F.3d 737 (3d Cir. 1996) .............................................................................. 6

MACERICH'S MEMORANDUM OF LAW
Case No. 01-1139 (JKF)

*KFC Western, Inc. v. Meghrig,*
    23 Cal. App. 4th 1167 (1994) ................................................................. 15

*Li v. Yellow Cab Co.,*
    13 C.3d 804 (1975) .................................................................... 8, 17

*Mangini v. Aerojet-General Corporation,*
    230 Cal. App. 3d 1125 (1991) .................................................. 8, 14, 15

*Mangini v. Aerojet-General Corporation,*
    12 Cal. 4th 1087 (1996) ......................................................... 15

*Newhall Land & Farming Co. v. Superior Court,*
    19 Cal. App. 4th 334 (1993) ................................................... 15

*Powell v. Nat'l Bd. of Med. Examiners,*
    364 F.3d 79 (2d. Cir. 2004) .................................................... 6

*Pratali v. Gates,*
    4 Cal. App. 4th 632 (1992) ..................................................... 8, 16

*Prudential Insurance Company of America v. United States Gypsum*
*Company,*
    359 F.3d 226 (3d Cir. 2004) .................................................. 12, 13

*San Francisco Unified School District v. W.R. Grace & Co.,*
    37 Cal. App. 4th 1318 (1995) ........................................... passim

*Wells Fargo Bank v. Bank of America,*
    32 Cal. App. 4th 424 (1995) ................................................... 16

*Wilshire Westwood Associates v. Atlantic Richfield Co.,*
    20 Cal. App. 4th 732 (1993) ................................................... 15

## Statutes and Codes

California Civil Code
    Section 3479 ............................................................................. 14

California Code of Civil Procedure
    Section 338 .............................................................................. 7, 9

## Rules and Regulations

Federal Rules of Civil Procedure
    Rule 56(c) ................................................................................. 5

**Other Authorities**

Environmental Protection Agency, *Guidance for Controlling Asbestos-*
    *Containing Materials in Buildings,* EPA 560/5-85-024 (1985) .................. 4, 5, 7, 12

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Claimant Macerich Fresno Limited Partnership ("Macerich") submits that its motion for summary judgment against W.R. Grace & Co., et al. ("Debtor"),[1] the above-captioned debtor in this proceeding, with respect to four "gateway" objections to the Macerich claim raised by the Debtor in its Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims [Docket No. 9315] (the "Fifteenth Omnibus Objection")[2] should be granted in all respects.

Macerich has asserted a claim (the "Claim" or the "Macerich Claim") in bankruptcy seeking recovery for property damage incurred and that will be incurred by Macerich at stores and common areas of a shopping center owned and operated by Macerich in Fresno, California (the "Mall"). Prior to entering the estimation stage of this bankruptcy proceeding, the Court has allowed the Debtor to raise certain "gateway" objections in an effort to winnow the number of property damage claims against the Debtor. As part of that process, the Debtor has raised four objections to the Macerich Claim. Three of the

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]    All references to the Debtors' Fifteenth Omnibus Objection shall be cited herein as "Debtors' 15th Omni, p. ____, ¶ ____."

objections assert that any property damage claim by Macerich related to the Debtor's asbestos fireproofing material at the Mall would be time-barred under California law, alleging that (1) Macerich had constructive notice of the dangers of asbestos no later than 1983, which was a date prior to the expiration of any applicable limitations period; (2) Macerich had actual notice of the presence of asbestos prior to the expiration of any applicable limitations period; and (3) Macerich unreasonably delayed filing its Claim and its Claim should be barred under the doctrine of laches. The Debtor also asserts a fourth objection, alleging that any property damage claim would be barred under California law by the doctrine of assumption of risk, because Macerich purchased the Fresno property with knowledge of the presence of asbestos containing materials ("ACM").

In its Amended Order Setting Various Deadlines Regarding Objections to Asbestos Property Damage Claims, entered October 13, 2006 [Docket No. 13406], this Court scheduled hearings on the Debtor's objections for April and May 2007. In addition, the Court provided that either the Debtor or a claimant may file a motion for summary judgment with respect to the omnibus objections raised by the Debtor to the various property damage claims, with such motions to be heard by the Court on April 9, 2007.

As discussed in more detail below, there is no dispute concerning the material facts underlying the Claim and the Debtor's objection thereto. The Debtor does not contest its asbestos-containing fireproofing material was used in construction of the Mall. Macerich does not claim it was unaware of the presence of that ACM at the Mall. Macerich acknowledges in its Claim and in its response to the Debtor's Fifteenth Objection [Docket No. 10520] (the "Response") that during its period of management and ownership of the shopping center, there have been multiple ACM surveys, including, in particular, surveys performed in 1988 and 1996 to identify the presence and condition of ACM in the stores and common areas at the Mall. *See* W.R. Grace & Co. Asbestos Property Damage Proof of Claim Form ("Proof of Claim"), Attachment B, a true and correct copy of which is attached to the Declaration of Aladdin Ghafari in Support of Macerich Fresno Limited Partnership's

Motion for Summary Judgment with Respect to the Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims on Bases of Statute of Limitations, Laches, and Assumption of Risk (the "Ghafari Declaration"),[3] filed concurrently herewith, as "Exhibit 1".  The issues with respect to the validity of Debtors' Fifteenth Omnibus Objection as applied to the Macerich Claim turn on the appropriate legal standards to be applied to those uncontested facts.  The critical question on the "limitations" objections is whether, under California law, knowledge of the mere presence of ACM on the premises would commence the operation of the statute of limitations for tort and nuisance claims, or whether, as Macerich contends, it commences only upon the occurrence of damage to the property.  With respect to laches, the Debtor relies only on the fact that Macerich did not file suit upon learning of the presence of ACM; it fails to identify how it may have been prejudiced by the alleged undue delay, which Macerich contends is a required element of a laches defense, and given the relevant factual issues for the Macerich Claim, it is difficult to understand how the Debtor could ever establish that prejudice.  With respect to the assumption of risk objection, the simple response is that the Debtor's objection is to the Claim itself, not to the value of the Claim, and that under California law, assumption of risk is not a bar to a claim, but only a factor to be considered in determining comparative responsibility.  Accordingly, this Court should hold that as a matter of law, none of the Debtor's "gateway" objections would serve to bar the Macerich Claim.

## II.    STATEMENT OF FACTS

W.R. Grace manufactured and sold a variety of ACM over the period from 1963 to 1973, at which time the U.S. Environmental protection Agency ("EPA") banned the use of ACM.  Those ACM products included Zonolite Mono-Kote ("MK-3"), a spray-applied fireproofing insulation material used in building construction.  After being named as a defendant in large numbers of personal injury and property damage claims related to the

---

[3]  All references to Ghafari Declaration shall be cited herein as 'Ghafari Decl. ¶ ___".

manufacture and sale of ACM products, W.R. Grace filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code on April 2, 2001.

Macerich filed a timely Proof of Claim in the bankruptcy proceeding on March 31, 2003, based on property damage that had resulted or would result from the presence of MK-3 in the store units and common areas in the east wing of the Mall. The Mall, which is located in the city of Fresno, California, includes 65 individual store units, three large "anchor" stores, as well as an enclosed common area. Ghafari Decl. ¶ 4. Macerich is the current owner and manager of the Mall. Ghafari Decl. ¶ 2. It briefly held a limited ownership interest in the Mall in 1987, has managed its operations since 1988, and purchased the Mall in 1996. Ghafari Decl. ¶ 2.

The ACM at issue with respect to the Macerich Claim is MK-3, a spray-applied fireproofing ("SAFP") material. The Debtor does not contest that MK-3 was used in construction of the stores and common areas of the Mall. Macerich has had at least two asbestos surveys performed at the Mall, in 1988 and 1996 respectively. Ghafari Decl. ¶¶ 5-6. Results of both surveys identified the presence of fireproofing ACM on structural beams and cross members in the ceiling cavity and walls in the stores and common areas of the Mall, but found that the ACM was in adequate condition, and that ambient air asbestos levels did not exceed regulatory limits. Ghafari Decl. ¶¶ 5-6. Accordingly, given the ACM's condition and location, Macerich did not immediately remove the ACM from the stores and common areas, but rather, consistent with its legal responsibilities and as set out in EPA asbestos management guidance,[4] Macerich has monitored the condition of ACM in the stores and common areas of the Mall, and has employed enclosures and undertaken air sampling during renovation or removal activities at the Mall to protect the safety of its tenants, workers and the public. Ghafari Decl. ¶ 9. Consistent with cost-effective and public safety management of asbestos risk, Macerich has removed the MK-3 fireproofing

---

[4] Environmental Protection Agency, *Guidance for Controlling Asbestos-Containing Materials in Buildings*, EPA 560/5-85-024 (1985) ("*EPA Guidance for Controlling ACM in Buildings*")

when – either due to a change in tenancy or a planned renovation of common areas – there were construction activities at the Mall and a risk that the ACM might be disturbed and released into the stores and common areas. Ghafari Decl. ¶ 10-11. This timing of removal activities allowed removal of the ACM with minimum disruption of the operations of tenants and of the Mall, and minimum risk of exposure for its tenants, workers, and members of the public. This approach is also consistent with the EPA's Guidance for Controlling Asbestos Containing Materials in Buildings, which lists the condition and location of the material as the basic criteria in determining the timing of removal.[5]

The Macerich Claim is for those costs incurred and to be incurred in the removal of MK-3 from store units and common areas of the Mall. Proof of Claim, Attachment A. At this point, Macerich has removed the ACM at 58 of 65 of the retail store units in the east wing of the Mall, in addition to the enclosed common area, incurring costs of approximately $2.75 million. Ghafari Dec. ¶ 13. Macerich estimates that the cost of removal of the ACM in the 7 remaining retail store spaces in the east wing, plus two anchor stores, will be approximately $4.5 million. Ghafari Dec. ¶ 13.

### III.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure requires the entry of summary judgment if "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159 (1970).[6]

If the movant carries the initial burden of showing an absence of a genuine issue of material fact, the non-movant must then establish an issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if it may affect the

---

[5]  *EPA Guidance for Controlling ACM in Buildings*, Chapter 4.

[6]  *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) ("[S]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'").

suit's outcome. *Id.* The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is "genuine." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 84 (2d. Cir. 2004). An issue of material fact is genuine only if the non-movant presents facts such that a reasonable jury could find in favor of the non-movant. *Id.* It is not enough that the nonmovant's evidence be "merely colorable" or anything short of 'significantly probative.'" *Liberty Lobby*, 477 U.S. at 248. Thus, the party opposing summary judgment must present concrete evidence supporting each essential element of its claim. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 747 (3d Cir. 1996).

## IV.    <u>SUMMARY OF ARGUMENT</u>

The Macerich Claim for recovery of damages for injury to its property from asbestos could be brought under either tort or nuisance theories.[7] The issue for the Court at this stage of the bankruptcy proceedings is not the value of that Claim, but simply whether, as the Debtor asserts, under California law, the Claim, if brought, would be disallowed on one or more of the grounds relied upon by the Debtor in its Fifteenth Omnibus Objection.

Specifically, the issues for the Court are: (1) whether the Macerich Claim should be barred because it would be dismissed under the statutes of limitation applicable to asbestos property damage claims in California, based on the date of either actual or constructive notice; (2) whether the Macerich Claim should be barred because it would be dismissed under California law by the operation of the doctrine of laches; and (3) whether Macerich's Claim should be barred because its cause of action would be dismissed under California law under the assumption of risk doctrine. For the reasons described herein, the answer to each such issue is a resounding "no."

---

[7] For example, in *San Francisco Unified School District v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318 (1995), plaintiff school district alleged causes of action for strict liability, negligence, breach of implied warranty, fraud and civil conspiracy in connection with asserted damages caused by W.R. Grace's asbestos products.

For a property damage action either under tort or nuisance causes of action in California, the period of the applicable statute of limitations is three years. Cal. Code Civ. Proc. § 338. As will be discussed in more detail in Section V below, the three year statute of limitations for a tort action for property damage does not commence until a plaintiff has knowledge of the physical damage to his property, specifically, when "contamination by friable asbestos" occurs. *San Francisco Unified School District v. W.R. Grace & Co.,* 37 Cal. App. 4th 1318, 1335 (1995) ("*SFUSD*"). Accordingly, under California law, Debtor's assertion that the Macerich Claim would be barred by "constructive knowledge" of the potential danger of asbestos from various publications or regulatory actions it cites is of no relevance. Indeed, many of the publications cited by the Debtor, including official EPA guidance documents, themselves indicate that mere presence of ACM does not pose a hazard unless the materials have deteriorated or are disturbed.[8]

Likewise with respect to actual knowledge of property damage, Macerich was aware of the presence of ACM in the stores and common areas at the Mall more than three years prior to filing its claim with this Court. However, based on its assessment of the condition and location of the ACM, and the absence of releases of friable asbestos into the ambient air, Macerich did not have actual knowledge of the physical damage to its property from the ACM. Macerich's actual knowledge of the damage at a particular store or area, did not occur until there was actual or likely disturbance of the ACM at that store or common area during work required for a new tenant or in the course of renovation.

Nor would the three year statute of limitations bar a claim by Macerich based on nuisance. The presence of ACM has interfered with Macerich's use of its property, requiring Macerich to modify its management of the stores and common areas of the Mall and to incur considerable abatement costs. In those locations where the ACM continues to

---

[8] *See EPA Guidance for Controlling ACM in Buildings*, pp. 4-6 and Table 2 (the need for and timing of action with respect to spray-applied ACM depends on the condition of the material, its characteristics and its location).

be found, such interference continues, and the need for abatement costs recurs each time a store unit is renovated for a new tenant or when construction or demolition activity is required in the common area. Under California law, each reoccurrence of the nuisance gives rise to a separate cause of action, and only those claims arising more than three years prior to the Macerich's Proof of Claim could be barred by statute of limitations. *Mangini v. Aerojet-General Corporation*, 230 Cal. App. 3d 1125 (1991).

In addition, the Debtor is incorrect in arguing that a laches defense would bar Macerich's claim. Laches is not a defense in an action at law, and may be asserted only in a suit in equity. *See, e.g., Pratali v. Gates*, 4 Cal. App. 4th 632, 645 (1992). Given that Macerich would be seeking monetary damages for the costs and expenses it incurred and would incur in abating the ACM at the Mall, laches would not be an available defense for the Debtor. Further, delay alone is insufficient to establish laches. The party who raises the defense must demonstrate an unreasonable delay that results in some prejudice to that party. Here, the Debtor fails to offer any evidence demonstrating how it has been prejudiced by the alleged delay. Indeed, the facts supporting the property damage claim are objective and the alleged damages are well-documented, indicating that the time of filing would be irrelevant to the Debtor's ability to defend against the Claim.

Finally, the Debtor's assertion that Macerich's Claim is barred by application of the assumption of risk doctrine is misplaced. Under California law, assumption of risk, even if properly established, would not be a complete defense to a tort claim, as the Debtor asserts; it is only a factor that may be taken into account in the apportionment of damages. *Li v. Yellow Cab Co.*, 13 C.3d 804, 829 (1975).

## V.    ARGUMENT

**A.    The Macerich Claim is not barred by the statute of limitations for a property damage claim in tort because under California law, the statute of limitations does not commence until a plaintiff has knowledge of the physical damage to his property.**

The standard for commencement of the statute of limitations for a cause of action is an issue of state law, and in this instance the laws of California. *See, e.g., Butner v. U.S.,* 440 U.S. 48 (1979). As the Debtor acknowledges, there are a variety of legal bases available to property owners for property damage resulting from ACM, ranging from strict liability, negligence and nuisance, to RICO claims. *See* Debtors' 15th Omni, pp. 35-36, ¶ 105. The Debtor therefore has to establish that under any of those causes of action, any property damage claim based on the Debtor's asbestos-containing SAFP at the stores and common areas of the Mall would be time-barred under California law. It has not, and cannot, establish such a defense under the undisputed facts with respect to Macerich Claim.

Under California law, the statute of limitations for tort claims for property damage is three years from the date the claimant knew or should have known of all elements of the cause of action. Cal. Code Civ. Proc. § 338; *SFUSD,* 37 Cal. App. 4th at 1325-1327.

The elements of specific causes of action in tort will differ, but a common element for each is the injury – in this case, the property damage. The California appellate court in *SFUSD* explained that "if the last element of the cause of action to occur is damage, the statute of limitations begins to run on the occurrence of appreciable and actual harm," noting that a "speculative harm or the threat of future harm" would not suffice to create a cause of action. *Id.* at 1326.

The *SFUSD* court, in pointing out the California Supreme Court's recognition that a plaintiff might in unusual cases be aware of wrongdoing before damage arose, expressly recognized that asbestos-in-building cases presented exactly this situation, differentiating knowledge of wrongdoing – the installation of potentially dangerous asbestos, from knowledge of damage – contamination by friable asbestos. *Id.* at 1333. Applying the limitations period under section 338 of the California Code of Civil Procedure, the court

held that the three-year statute of limitations for tort liability for property damage did not commence until a plaintiff had knowledge of the physical damage to his property, *i.e.* when "contamination by friable asbestos" occurred. *Id.* at 1335.[9]

     The *SFUSD* court also criticized the analysis of an earlier decision by another appellate court which held that "appreciable harm [was] not limited to the existence of an actual health hazard" and the plaintiff's "knowledge of deterioration to its building caused by asbestos constitute[d] the infliction of an appreciable harm that [began] the statute of limitations running." *City of San Diego v. United States Gypsum Company*, 30 Cal. App. 4th 575, 578 (1994). In *City of San Diego*, the city sued manufacturers and distributors of asbestos-containing building materials for money it spent and would spend to identify and abate asbestos danger in its buildings and for loss of use and decline in value of its property. *Id.* The city had alleged in its complaint that asbestos dust and fiber release had occurred continuously from the time of sale and installation of the materials, which the court held established that the city suffered more than "nominal" damages outside the limitations period. *Id.* at 583.[10] The *SFUSD* court rejected the holding by the *City of San Diego* court that "any moneys spent that constitute[d] more than nominal damages [was] the appreciable harm that trigger[ed] the commencement of the statute of limitations without considering whether any physical injury [had] yet occurred." *SFUSD*, 37 Cal. App. 4th at 1331. Instead, the *SFUSD* court held that a careful reading of the "appreciable harm" cases demonstrated that those cases contrasted "appreciable harm with nominal damages *or*

---

[9]  The *SFUSD* court held that "in an asbestos-in-building case, the mere presence of asbestos constitute[d] only a threat of future harm" and that "[c]ontamination by friable asbestos [was] the physical injury and the actual, appreciable harm that must exist before a property owner's . . . cause of action against an asbestos manufacturer accrue[d] and the limitations period commence[d]."); *see also California Sansome Co. v. US. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1994) (concluding in the asbestos property damage case that "[u]nder California law, the limitation period commences 'upon the occurrence of the last element essential to a cause of action'" and "[a] tort cause of action doe not accrue until there is wrongdoing *and* 'actual and appreciable harm.'" (emphasis in original)).

[10]  The *City of San Diego* court found further support for that conclusion in the fact that the city had asserted a claim in bankruptcy proceeding for another company for the cost of repair due to presence of asbestos-containing building materials. *Id.* at 584.

speculative harm *or* a threat of future harm." *Id.* (emphasis in original). Because it is the existence of injury – not the extent of damage – that is uncertain in asbestos-in-building cases, the *SFUSD* court concluded that "[t]he plaintiff must be aware of the physical manifestation of the injury for the cause of action to accrue and the statute of limitations to begin running." *Id.* at 1332.[11]

The California Supreme Court reached a similar conclusion in addressing whether homeowners and a homeowners association should be allowed to recover damages from a developer for construction defects that had not resulted in property damage. *Aaas v. Superior Court of San Diego County*, 24 Cal. 4th 627 (2000). In denying recovery in tort based on economic loss alone, the California Supreme Court cited, *inter alia*, the *SFUSD* decision, observing that in *SFUSD*, "a public school district could not state a cause of action in negligence or strict liability based on the presence of asbestos products in its buildings, when the products had not contaminated the buildings by releasing friable asbestos." *Id.* at 640.

Here it is not contested that Macerich was aware of the presence of the ACM in the stores and common areas of the Mall more than three years prior to the filing of its Claim. However, Macerich was also aware from visual observation and air monitoring that the location and condition of the ACM in question – the MK-3 sold by the Debtor and applied as fireproofing to structural beams and cross members in the ceiling cavities and walls in the stores and common areas at the Mall – had not resulted in elevated asbestos levels in the ambient air. Ghafari Decl. ¶¶ 5-6. That is, as in *SFUSD*, there was knowledge more than

---

[11] Aside from the flawed legal analysis, the *City of San Diego* case is factually distinguishable from the situation underlying the Macerich claim. In *City of San Diego*, records contained instances of degrading or deterioration of asbestos-containing building materials in city buildings, including a ceiling collapse which produced high asbestos fiber counts. *Id.* at 580. In contrast, Macerich found the condition of the ACM to be adequate during its inspections of the ACM outside of the three year limitations period. Finally, the *City of San Diego* court found that the city had "essentially pleaded a products liability action" (*Id.* at 585), and stated at the end of its opinion that it "[did] not discuss City's contention that its alleged damages [were] contamination and resulting injury to city buildings, rather than damages for a defective product or one that [did] not perform as expected" (*Id.* at 590). Here, Macerich's claim against the Debtor is based on tort actions for property damage resulting from asbestos contamination at the stores and common areas of the Mall, not on product liability.

three years prior to 2002 that ACM was present, but there was no knowledge that there was

property damage resulting from friable ACM releasing asbestos into the ambient air.  The

damage, and Macerich's knowledge for purposes of the statute of limitations, occurred

when – as with the renovation of a particular store or common area – there was a risk of

disturbance resulting in such a release, and a concomitant obligation under state and federal

asbestos abatement laws to address and eliminate that risk.

      Thus, under California law, the Debtor's reliance on the doctrines of constructive

and actual notice as bar to the Macerich Claim is unavailing.  With respect to constructive

notice, the Debtor argues that "*potential* dangers from asbestos containing materials in

buildings were widely known *at least* as early as October 20, 1983," also pointing to

"various EPA and Congressional actions throughout the 1970s and early 1980s" to deal

with potential hazards of asbestos, as well as "widely publicized" building and trade

journals.  Debtors' 15th Omni, p. 33, ¶ 95 (emphasis in original).  What Debtor neglected to

point out is that in many of these publications, the text emphasized the industry position

that absent disturbance of the ACM, there was no risk of exposure, *i.e.*, that the presence of

ACM alone was not a hazard where the material was not deteriorated or disturbed as would

occur with renovation or removal.[12]  California law has clearly established that it is the

actual knowledge of the existence of the damage – not the constructive knowledge of the

potential danger of asbestos – that would begin the commencement of the statute of

limitations.

      Accordingly, in applying California law, the Debtor's argument that Macerich

should have been aware of the cited publications or regulatory actions more than three years

prior to its filing of the Proof of Claims is irrelevant.  Those publications indicate that the

mere presence of ACM is not a problem, where the material is undisturbed and not

deteriorated.  Also irrelevant is the Debtor's reliance on *Prudential Insurance Company of*

---

[12] *EPA Guidance for Controlling ACM in Buildings*, pp. 4-6 and Table 2.

*America v. United States Gypsum Company*, 359 F.3d 226 (3d Cir. 2004), that "a claimant

is deemed to be on notice of its claim...on the date that the claimant *should have* learned of

its claim through the exercise of reasonable diligence...." Debtors' 15th Omni, p. 32, ¶ 94

(emphasis in original). In that ruling, the Third Circuit also carefully distinguished

Prudential's broad claims under the federal Racketeer Influenced and Corrupt

Organizations Act ("RICO") from traditional claims for asbestos property damage. *Id.* at

237 ("We note...that it is Prudential itself that chose to pursue redress under RICO for both

monitoring and testing costs associated with potential contamination as well as costs for

abatement and repair in its amended complaint. In contrast, the plaintiffs in the cases cited

by Prudential confined their claims to costs of remediation, and pursued their redress

through state-law claims that require different accrual analyses than used in RICO cases").

   The Debtor's argument with respect to actual notice fares no better. Like the

plaintiff in *SFUSD*, Macerich performed asbestos testing and investigation at the stores and

common areas in the Mall. Ghafari Decl. ¶¶ 5-6. The 1988 survey (which included limited

air sampling) indicated the presence of ACM on structural beams and cross members above

the ceilings and in the walls at the Mall, but did not show levels of asbestos in the air

exceeding regulatory standards. Ghafari Decl. ¶ 5. The air sampling results and visual

survey in the 1996 survey produced similar results and did not indicate ambient air asbestos

levels above regulatory thresholds. Ghafari Decl. ¶ 6. The court in *SFUSD* expressly

recognized that testing and investigation were typically done once a responsible property

owner discovered that asbestos might be present in its building, but stated that "the act of

testing and investigating which disclose[d] no contamination [could not] be equated with

the actual harm of contamination." *SFUSD*, 37 Cal. App. 4th at 1331. Under California

law, since the 1988 and 1996 surveys did not demonstrate that the condition of asbestos

presented a problem, Macerich did not have actual knowledge of its property damage claim.

   As the *SFUSD* court also emphasized, its holding was not ground-breaking

precedent. It was consistent with the law in most if not all jurisdictions that had decided

MACERICH'S MEMORANDUM OF LAW
Case No. 01-1139 (JKF)

asbestos-in-building cases.[13] *Id.* at 1333.   The court went on to say that in these jurisdictions, the relevant inquiry would be "when did plaintiff know that asbestos was being released from the asbestos-containing material and thus presented a hazard." *Id.* at 1334.

In summary, Macerich is not barred from pursuing its Claim under tort to recover its damages.  Although the asbestos-containing fireproofing on structural beams and cross members in the ceilings and walls would not have already contaminated a store at the Mall, undertaking the renovation of that space upon a change of tenant or new construction for an existing tenant would disturb the fireproofing and contaminate the surrounding areas, giving rise to a cause of action under tort for property damage.  Thus, the statute of limitations would commence to run on the date that the construction or renovation commenced.  The fact that Macerich prevented actual contamination of work and public areas during the renovation and removal actions by implementing the procedures and practices required by Federal and California law does not negate Macerich's property damage Claim.

**B.**     **The Macerich Claim is not barred by the statute of limitations for a nuisance claim because under California law, each reoccurrence of a continuing but abatable nuisance gives rise to a separate cause of action, with only those claims that arose three years prior to <u>Macerich's filing of its Proof of Claim barred.</u>**

Under California law, nuisance is anything "which is injurious to health . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . ." Cal. Civil Code § 3479. Modern California cases have recognized the statutory definition of nuisance to be broad enough to encompass almost every conceivable type of interference with the enjoyment or use of land or property, including contamination of a property.  *Mangini v. Aerojet-General*

---

[13] In fact, the *SFUSD* court only found two states which allowed a cause of action to accrue before contamination occurred. *SFUSD*, 37 Cal. App. 4th at 1334.

*Corporation*, 230 Cal. App. 3d 1125, 1136 (1991) ("*Mangini I*"), *aff'd* 12 Cal. 4th 1087 (1996) ("*Mangini II*"). Generally, a nuisance action has a three year statute of limitations. Cal. Civ. Proc. § 338. However, California courts have validated nuisance claims for contamination of property where the court has found that the injuries are "continuing" but abatable, not "permanent." *Mangini II*, 12 Cal. 4th at 1233 n.2 (citing *Capogeannis v. Superior Court*, 12 Cal. App. 4th 446 (1993); *Newhall Land & Farming Co. v. Superior Court*, 19 Cal. App. 4th 334 (1993); *Wilshire Westwood Associates v. Atlantic Richfield Co.*, 20 Cal. App. 4th 732 (1993); *KFC Western, Inc. v. Meghrig*, 23 Cal. App. 4th 1167 (1994); *Arcade Water Dist. v. U.S.*, 940 F.2d 1265 (9th Cir. 1991)). Where a continuing nuisance is alleged, every recurrence of the nuisance gives rise to a separate claim for damages caused by the nuisance. *Mangini I*, 230 Cal. App. 3d at 1143 (citing the California Supreme Court in *Baker v. Burbank-Glendale-Pasadena Airport Authority*, 39 Cal.3d 862, 868-869 (1985)). Generally, the distinction between a permanent and continuing nuisance is whether the nuisance may be discontinued or abated. *Mangini I*, 230 Cal. App. 3d at 1146. However, "in case of doubt as to the permanency of the injury the plaintiff may elect whether to treat a particular nuisance as permanent or continuing." *Baker*, 39 Cal.3d at 870; *see also Chevron U.S.A. Inc. v. Superior Court*, 44 Cal. App. 4th 1009, 1014 (1994).

In this case, the Debtor's asbestos-containing fireproofing material has required that Macerich modify its management of the stores and common areas at the Mall and incur substantial cost, so that it can operate in a manner consistent with the safety of its tenants, workers, and the general public. That interference continues as long as not all ACM has been removed, and it recurs each time a store unit is renovated for a new tenant, or where construction or demolition activity is required in the common areas of the Mall.

**C.    The Macerich Claim is not barred by the operation of the doctrine of laches because the laches defense is not applicable in an action for money damages, and even if the laches defense is applicable here, the Debtor has not produced any evidence which shows that it has been prejudiced by the delay.**

The Debtor also argues that the Macerich Claim is barred by the doctrine of laches.

First, laches is an equitable defense, and it can be asserted only in an action in equity. *Pratali v. Gates*, 4 Cal. App. 4th 632, 645 (1992) (defense not available in an action in law); *Wells Fargo Bank v. Bank of America*, 32 Cal. App. 4th 424, 439 (1995) (same); *Barkley v. Blue Lake*, 47 Cal. App. 4th 309, 315 (1996) (same). Since Macerich's Claim is for the recovery of money damages, the laches defense would not even be available here.

Assuming *arguendo* that the Debtor could raise laches as a defense, California law requires that the Debtor establish not only unreasonable delay in assertion of the Claim, but that it has been prejudiced in its defense by that delay. *Getty v. Getty*, 187 Cal. App. 3d 1159, 1170-1171 (1986). Under California law, prejudice is not presumed and must be affirmatively demonstrated by a defendant to sustain his burden of proof and burden of production of evidence on the issue. *Bono v. Clark*, 103 Cal. App. 4th 1409, 1420 (2002). The Debtor does not even attempt in its Fifteenth Omnibus Objection to address the individual circumstances of each claim, or identify in any respect how it has been prejudiced in its defense against the Macerich Claim by the alleged unreasonable delay. In fact, the known facts strongly belie the existence of any actual prejudice. Macerich conducted technical analysis that established the fireproofing material as consistent with the composition of MK-3, a W.R. Grace product, and submitted this information as a supplement to its timely Proof of Claim. Ghafari Decl. ¶ 14. The Debtor does not contest this identification. Nor has the Debtor been hindered by the passage of time in addressing the issue of Macerich's knowledge of the asbestos fireproofing. Macerich acknowledges it was aware of the asbestos in 1988 from a survey that identified the location and condition of fireproofing ACM. Ghafari Decl. ¶ 5. Likewise, Macerich's costs of remediation are recent and thoroughly documented.

Thus, the Debtor has not only failed to carry its burden of demonstrating that it has been hindered in its defense by the alleged delay, the objective facts strongly indicate there would be no such prejudice with respect to the material and significant facts of the Claim.

**D.    The Macerich Caim is not barred by the assumption of risk
doctrine because under California law, assumption of risk
is not an absolute defense, and it may only be considered
<u>as an element of comparative negligence.</u>**

Having asserted that the mere presence of asbestos in a building is not property

damage or a risk to human health, and that claims should be barred absent evidence of

elevated levels of asbestos fibers in the air (Debtors' 15th Omni, p. 39, ¶ 119; p. 42, ¶ 128),

the Debtor then asserts that anyone who purchased a building containing asbestos assumed

the risk of such property damage, and should be barred from asserting a claim against the

manufacturer of the ACM (Debtors' 15th Omni, pp. 34-35, ¶¶ 99-102).  Macerich did know

of the presence of ACM at the time it purchased the building.  However, it also knew from

its diligent pre-purchase inspection that the ACM was not a health risk at that time.  Ghafari

Decl. ¶ 6.  To suggest that a purchaser should be barred from asserting a claim based on the

property damage from the subsequent deterioration of ACM materials and/or the need to

meet its legal obligations with respect to work that might disturb ACM would provide a

buyer with little incentive to carry out a thorough investigation of site conditions, a

situation directly contrary to the public interest.  For that reason, "assumption of risk" is not

a favored defense under California law, and while it may be an element of comparative

negligence, it is not an absolute defense to a claim.  *Li v. Yellow Cab Co.*, 13 C.3d 804,

829 (1975).  Accordingly, to the extent that the Debtor asserts assumption of risk as a bar to

this Claim, the Debtor is simply wrong.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, the Debtor has not established that the Macerich Claim

should be barred under the statute of limitations or by operation of the doctrines of laches or

assumption of risk, and Macerich respectfully requests that the Court (i) grant summary

grant in favor of Macerich with respect to the category D-2, D-3, D-4 and D-6 objections

asserted in the Debtors' Fifteenth Omnibus Objection, (ii) enter an order substantially in the

form attached to Macerich's Motion for Summary Judgment as Exhibit A, and (iii) grant

Macerich such other and further relief as the Court deems appropriate.

Dated:  February 16, 2007

ASHBY & GEDDES, ,P.A.

*AMWinfree*

William P. Bowden (I.D. #2553)
Amanda M. Winfree (I.D. #4615)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Tel: (302) 654-1888
Fax: (302) 654-2067

-and-

PILLSBURY WINTHROP SHAW PITTMAN LLP
Gerald F. George (CA I.D. #142573)
Rita S. Chan (CA I.D. #234754)
50 Fremont Street
Post Office Box 7880
San Francisco, CA  94120-7880

*Attorneys for Claimant Macerich Fresno
Limited Partnership*

177875.1

MACERICH'S MEMORANDUM OF LAW
Case No. 01-1139 (JKF)