IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |

Hearing Date: April 9, 2007 at 9:00 a.m.
Pittsburgh, PA
Response Deadline: March 19, 2007
Related Docket No: 9315

**DEBTORS' MOTION AND MEMORANDUM FOR AN ORDER
PURSUANT TO F.R.B.P. 7056 DISALLOWING AND EXPUNGING ONE
HUNDRED NINE (109) CALIFORNIA ASBESTOS PROPERTY DAMAGE
CLAIMS BARRED BY THE STATUTE OF LIMITATIONS**

The Debtors bring this motion for an order disallowing 109 time-barred Asbestos

Property Damage Claims for buildings located in California (collectively, the "California

Claims," which are identified in the attached Exhibit A.)  The California Claims were filed by

the following claimants: California State University ("CSU") (36 claims), University of

California ("UC") (56 claims), California Department of General Service ("DGS") (16 claims),

and County of Sonoma (1 claim).  Each of the California Claims states it was filed on account of

property damage due to the installation of Grace asbestos containing building materials during or

before 1977 – nearly twenty-five years prior to this Chapter 11 proceeding.

The *identical injuries* alleged in the California Claims were also the subject of previous

actions brought by the California Claimants against Grace and/or other defendants in 1990 or

earlier – more than a decade before this proceeding was instituted.  The fact that the claims are

the same as those being prosecuted against Grace in this Chapter 11 cannot be contested; it is acknowledged by the California Claimants in their Claim Forms.[1]

The California Claimants' pursuit of these previous actions establishes that the California Claimants knew of their respective claims against Grace and the injuries they claim to have suffered by at least those dates. The applicable statute of limitations for property damage, however, is only three years, and, therefore, the California Claimants were required to assert their claims against Grace nearly a decade before this Chapter 11 proceeding was instituted in April 2001. As such, the California Claims are proscribed as a matter of law, and the Court should enter an order disallowing and expunging each of them with prejudice.[2]

## ARGUMENT

### A. Summary Judgment is Appropriate Because There is No Issue of Material Fact, and Grace is Entitled to Judgment as a Matter of Law.

Summary judgment is appropriate here because, as set forth below, the applicable three-year statute of limitations began to run for the California Claims at the earlier of when the California Claimants knew or should have known of their alleged injuries. As demonstrated by their pursuit of prior actions, including a lawsuit against Grace on account of the *identical injuries* alleged in their California Claims, the California Claimants knew of their alleged injuries in all instances during or before 1990 – more than ten years before the filing of this Chapter 11 case. Therefore, the California claims were proscribed well before they were filed here.

---

[1] *See* Rule 1006 Summary of Voluminous Writings, attached as Exhibit B ("Ex. B").

[2] In this Motion, the Debtors do not seek an adjudication of other objections to the California Claims asserted in the Fifteenth Omnibus Objection. The Debtors reserve their right to prosecute their remaining objections to the California Claims at a later time, in the event that the Court does not grant this Motion in full.

B.      **The California Claimants Knew of Their Alleged Injuries By At Least 1990.**

In every instance, the California Claims do not represent the claimants' first attempt to recover for the alleged damage to their building(s).  As outlined below, the California Claimants all sought recovery in 1984, 1985, and/or 1990 on account of the same injuries.  The California state entities' (CSU, UC and DGS) claims were included in a 1990 lawsuit that was filed against Grace in the United States Supreme Court.  Prior to that, in 1984 and 1985, the County of Sonoma, UC and CSU filed asbestos property damage claims against Johns-Manville in its bankruptcy case.  Having sought relief years earlier for their injuries, the California Claimants are precluded now from arguing that they did not know until a later date of their claims and the injuries and damages they purport to have suffered.

1.      **The State of California Sued Grace in 1990.**

On January 29, 1990, the State of California – CSU, DGS, and UC – sought leave to file a complaint in the United States Supreme Court against Grace and other defendants.  In *Alabama, et al. v. W.R. Grace & Co., et al* (referred to herein as the "*Alabama*" case), twenty-nine states, including California, sued Grace and various other corporate defendants seeking damages for the states' costs to abate asbestos in their public buildings.  The states (including California) alleged property damage on account of injury from Grace asbestos containing materials ("ACM") in the subject buildings.  *See* Ex. B.  All of the California Claims were included in the *Alabama* suit, which purported to include all "state-owned buildings and facilities."  *See id.*

CSU and UC have ***expressly admitted*** in their Claim Forms that the ***buildings for which they submitted claims in this Chapter 11 were also*** at issue in the *Alabama* case.  *See id.*

The *Alabama* complaint sought recovery on account of the ***identical injuries alleged by these claimants in their California Claims***.  Specifically, in its Brief in Support of Motion for Leave to File a Complaint, which was submitted to the U.S. Supreme Court on January 29, 1990, California alleged as follows:

- "The States [including California] bring this action in their capacity as *parens patriae* to protect the public health and as owners of ***public buildings contaminated by asbestos-containing products***. The States seek equitable relief designed to reimburse them for costs incurred in abating the ***asbestos contamination*** present in state-owned buildings and facilities." *See* Ex. B.

- "The States contend that the Asbestos Companies owe to them a duty to abate the hazards caused by the presence of their asbestos containing-products in public facilities." *Id.*

- "[S]ince no safe level of asbestos had yet been defined, each day of exposure to asbestos puts the plaintiff in a position involving an immediate necessity for action." *Id.*

- The asbestos contamination of state-owned buildings has caused "serious injury" and "serious harm." *Id.*

These allegations are admissions by CSU, UC and DGS that they knew of their claims, and of the injuries and damages they purport to have suffered, by at least 1990.

2.    **CSU, the County of Sonoma, and UC Filed Asbestos Property Damage Claims Against Johns-Manville in 1984 or 1985.**

On October 30, 1984, CSU filed a proof of claim in the Johns-Manville Chapter 11 bankruptcy case for property damage caused by asbestos-containing materials at San Diego State University (CSU has likewise filed asbestos property damage claims for San Diego State buildings against Grace). *See* Ex. B. In its Johns-Manville proof of claim, CSU stated that it had performed remedial and/or abatement work in May 1983 and would perform additional work in November through December, 1986, and sought $2,430,160 in damages. *Id.*

On January 28, 1985, CSU filed another property damage claim against Johns-Manville seeking $500 million in damages. *See* Ex. B. CSU stated that liability was "based on our knowledge of the age of our buildings and the materials and common usage at the time these buildings were built." *Id.* The claim referred to a 1985 report which had been prepared for CSU pursuant to a contract with a certified testing laboratory. The report, entitled "Report on the Facilities Asbestos Inspection and Risk Assessment Services" (the "1985 Report"), documented

the inspection of all of the then-existing CSU campuses – 19 campuses comprised of 973 separate facilities – to locate, test, and identify friable ACM, and to "prioritize" the "asbestos hazards" to determine a remedial course of action "that will address the most serious problems first and deal with less serious problems later." *See* Ex. B.

The 1985 Report states that "every campus was methodically surveyed building by building. Every room in each building was inspected including crawl spaces, suspended ceilings, acoustic ceilings, chases, attics and installed mechanical equipment." *Id.* The testing included bulk samples, as well as some wipe samples and air samples. *Id.*

In 1985, the County of Sonoma and UC likewise filed claims against the Johns-Manville trust. *See* Ex. B. The County of Sonoma's claim alleged $37 million in property damage caused by "installed friable asbestos-containing material in varying amounts for a variety of public buildings owned by claimants." *See* Ex. B. The County of Sonoma's claim further indicated that the "Environmental Sciences Department of the EAL Corporation" had already performed testing on certain of its buildings, and that testing on remaining buildings was "in progress." *Id.* UC's claim alleged $67.7 million in property damage caused by friable asbestos-containing materials throughout its campus. *Id.* UC's claim also stated that, between 1980 and 1985, it had abated various asbestos containing materials located on its campuses, including "spray applied fireproofing material applied to ceilings" and "ceiling tile." *Id.*

3.    **The California Claimants Are Precluded From Arguing That They Knew of Their Alleged Injuries at Any Time Later Than The Dates of Their Previous Actions.**

Under California law, a civil action cannot be commenced until the cause of action has fully accrued. Cal. Code Civ. Proc. § 312. When damages is an element of a cause of action, such as in a tort action, the cause of action does not accrue until such damages have been sustained. *City of Vista v. Robert Thomas Securities, Inc.*, 84 Cal. App. 4th 882, 887 (Cal. Ct. App. 2000), *citing United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 597 (Cal. Ct. App. 1970). Thus, the "mere possibility or even probability, that an event causing damage will result from a wrongful act does not render the act actionable," and the "[m]ere threat of

future harm, not yet realized, is not enough." *See Vista,* 84 Cal. App. 4th at 886-887, *citing Walker v. Pacific Indemnity Co.*, 183 Cal. App.2d 513, 517 (Cal. Ct. App. 1960). Therefore, since damage is an essential element of a property damage claim, the California Claimants could not have properly sought leave to file the *Alabama* lawsuit unless they believed, at the time of the filing in January 1990, that they had already sustained the compensable injuries they alleged. *See City of San Diego v. United States Gypsum,* 30 Cal. App. 4th 575 (1994).

The California Claimants are bound by these previous statements. The California Claimants' admissions in their prior lawsuits are admissions for purposes of their California Claims. *See* Rule 801(d)(2) of the Federal Rules Evidence; *Williams v. Union Carbide Corp.*, 790 F.2d 552, 555 (6th Cir. 1986) (allegations in a complaint from a prior lawsuit are admissible as evidentiary admissions in subsequent litigation); *Dugan v. EMS Helicopters, Inc.,* 915 F.2d 1428, (10th Cir. 1990) (same).

Further, judicial estoppel precludes claimants from now asserting that their alleged injuries and damages did not occur until a time later than their previous lawsuits were filed. *See, e.g., Ryan Operations G.P. v. Santiam-Midwest Lumber Co.* 81 F.3d 355 (3d Cir. 1996) (the doctrine of judicial estoppel precludes a party from taking an inconsistent position in subsequent litigation, and it does not require the party to have been successful in the previous litigation or otherwise to have benefited from its prior position in order to be judicially estopped from subsequently asserting an inconsistent position).

The California Claimants are also bound by their claims against the Johns-Manville trust, which were admissions by the California Claimants that they knew in 1984 and 1985 of their claims, and the injuries and damages they claim to have suffered, and believed them to have ripened by that time. In *City of San Diego v. United States Gypsum,* 30 Cal. App. 4th 575 (1994), the City of San Diego sued U.S. Gypsum and other asbestos manufacturers for alleged property damage. The defendants moved for summary judgment on limitations grounds. The court granted the requested relief, and, in so doing, held that San Diego's previous claim for $50 million against the Johns-Manville trust - which had been filed three years and four months

before San Diego filed its lawsuit against U.S. Gypsum - demonstrated that San Diego's claims had ripened outside of the applicable three-year limitations period. *Id.* at 584.

*City of San Diego* further held that for limitations purposes it was irrelevant that the claim had been filed against Johns-Manville and not the defendants in the pending case: "It matters not that the claim was directed to Johns-Manville Corporation and not these defendants since the statute of limitations is not delayed because plaintiff does not know the wrongdoer's identity." *Id.*

The same situation exists with respect to the claims of the County of Sonoma, CSU and UC. As noted above, each of these entities filed asbestos property damage claims against the Johns-Manville trust more than fifteen years before the filing of this Chapter 11.

**C.    The California Claims are Proscribed Under the Applicable Statute of Limitations.**

To determine the appropriate state's statute of limitations to apply to the California Claims, the Court must consider Delaware's choice of law rules, as this Court has already determined in the context of determining that other asbestos property damage claims against the Debtors were time-barred. *See* Order Disallowing Prudential Georgia Claims (Dkt. No. 13457). Those rules direct the Court to apply the limitations period of the state where the claim at issue arose, unless Delaware's limitations period is shorter. *See* 10 Del. C. § 8121 (2005).

For purposes of the borrowing statute, the California Claims "arose" in California - the state where the allegedly damaged properties are located. *See* Order Disallowing Prudential Georgia Claims; *see also Pennzoil Products Co. v. Colelli & Assoc.*, 149 F.3d 197, 202 (3d Cir. 1998) ("Since Pennzoil claims to have suffered damage to its refinery equipment in Pennsylvania, that is where—for jurisdictional purposes—we must conclude the alleged injury occurred."); *Paoletto v. Beech Aircraft Co.*, 464 F.2d 976 (3d Cir. 1972).

Therefore, in considering the California Claims, the Court applies California's statute of limitations, unless Delaware's applicable limitations period is shorter. For purposes of this Motion, however, the Court need not determine which state's limitations period is applicable,

because both states have three-year limitations periods for property damage; and, therefore, since the California Claimants knew of their alleged injuries for a decade before the filing of this Chapter 11, the California Claims are proscribed by either California or Delaware's respective limitations period.

1.    **The California Claims are Barred by California's Three-Year Statute of Limitations.**

California's statute of limitations period for injury to real property is three years. Cal. Civ. Proc. Code § 338(b); *San Francisco Unified School Dist. v. W.R. Grace & Co. – Connecticut*, 37 Cal. App. 4th 1318, 1325 (Cal. Ct. App. 1995) [hereinafter, "*SFUSD*"]; *City of San Diego*, 30 Cal. App. 4th at 578. No cause of action accrues and no claim can be filed in a tort action until damage has occurred, as the limitations period does not begin to run until the last element essential to the cause of action occurs. *SFUSD*, 37 Cal. App. 4th at 1326; *City of San Diego*, 30 Cal. App. 4th at 582.

If the last element of the cause of action to occur is damage, the statute of limitations begins to run on the occurrence of "appreciable and actual harm, however uncertain in amount," that consists of more than nominal damages. *SFUSD*, 37 Cal. App. 4th at 1326 (citing *Davies v. Krasna*, 14 Cal. 3d 502, 513-514 (Cal. Ct. App. 1975); *City of San Diego*, 30 Cal. App. 4th at 582-583; *Miller v. Lakeside Village Condominium Ass'n*, 1 Cal. App. 4th 1611, 1623 (Cal. Ct. App. 1991)). "[O]nce plaintiff has suffered actual and appreciable harm, neither the speculative nor uncertain character of damages nor the difficulty of proof will toll the period of limitation." *Davies*, 14 Cal. 3d at 514; *City of San Diego*, 30 Cal. App. 4th at 583.

As articulated above, the California Claimants previous lawsuits and claims are binding admissions by them that all of the elements of their causes of action, including their alleged injuries, had occurred (and they knew of those alleged injuries) at the time their previous actions were filed. Given that the Alabama action was filed in 1990, and the Johns-Manville claims were filed in 1984 and 1985, all of the California Claimants knew of their claims and their alleged injuries more than *ten years* before the filing of this Chapter 11. Therefore, all of the

California Claims were proscribed well before this bankruptcy proceeding was instituted in April 2001.

## 2.    The California Claims are Likewise Barred by Delaware's Three-Year Statute of Limitations.

Delaware also has a three-year statute of limitations for property damage claims, which begins to run at the time the claimant knew or should have known of its alleged injuries. *See* 10 Del. C. § 8106; *Becker v. Hamada, Inc.*, 455 A.2d 353 (Del. 1982). Therefore, the California Claims are likewise barred by Delaware's statute of limitations, should the Court determine that Delaware's statute of limitations is shorter and, therefore, applicable to the California Claims.

## 3.    The California Claims Are Not Saved By Tolling or Any Other Potential Loophole.

The California Claimants may argue that their claims were tolled during the pendency of their lawsuit.[3] Any such tolling, however, would not save the California Claims. The *Alabama* action was filed with the Supreme Court on January 29, 1990. The Supreme Court entered an order denying the petition on May 14, 1990, which ended the litigation. *See* Ex. B. Therefore, at best, the statute of limitations for the California Claims included in the *Alabama* action would have been tolled for five months, making the California Claimants' filings a decade too late.

## CONCLUSION

The California Claimants filed lawsuits and/or claims on account of the injuries and damages alleged here more than a decade before this Chapter 11 was instituted. These prior actions are admissions by the California Claimants that they had actual knowledge of their claims and alleged damages by at least that time, and preclude them from arguing otherwise. Given that California and Delaware each have three-year statutes of limitations for property damage claims, the California Claims were proscribed well before this Chapter 11 was filed in April 2001. Therefore, Grace respectfully requests that the Court enter an order disallowing and expunging the 109 time-barred California Claims, with prejudice.

---

[3] Grace does not concede that tolling is applicable.

Dated: February 16, 2007

REED SMITH LLP
James J. Restivo, Jr., Esq. (#10113)
Lawrence Flatley, Esq. (#21871)
Douglas E. Cameron, Esq. (#41644)
Traci S. Rea, Esq. (#76258)
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: (412) 288-3131
Facsimile: (412) 288-3063

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Salvatore F. Bianca
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

And

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LIP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in
Possession