IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |

Hearing Date: April 9, 2007 at 9:00 a.m.
Pittsburgh, PA
Response Deadline: March 19, 2007
Related Docket No. 9315

## DEBTORS' MOTION AND MEMORANDUM IN SUPPORT OF AN ORDER PURSUANT TO F.R.B.P. 7056 DISALLOWING AND EXPUNGING ONE HUNDRED TWENTY (120) TIME-BARRED LOUISIANA ASBESTOS PROPERTY DAMAGE CLAIMS

This motion seeks to expunge 120 Louisiana property damage claims that are barred by Louisiana's one-year statute of limitations or "prescription period."

The facts are undisputed. On January 17, 1983, a nationwide class action (the "Class Action") was filed in which each of the Louisiana School Boards that are subject to this motion were putative class members. All of the Louisiana School Boards opted out of the Class Action in 1988 to file a new action. Under Louisiana law, while the filing of the Class Action initially tolled the one-year prescription period, once the Louisiana School Boards opted-out of the Class Action, that tolling is deemed never to have occurred. Accordingly, the Louisiana School Boards' claims are barred if, by 1987 (one year prior to the filing of the new action), they knew or should have known of their claims.

All but three of the Louisiana School Boards admitted that they knew of their claims by 1984. In fact, several of the Louisiana School Boards knew of their claims in 1981, more than a year before even the Class Action was filed. Had the remaining Louisiana School Boards acted

diligently and in accordance with government mandates, they also would have known of their

claims in 1981.  For the foregoing reasons, all of the Louisiana School Boards' claims are barred

by Louisiana's one-year prescription period.

## BACKGROUND

I.     **Louisiana's One-Year Prescription Period Applies To The Louisiana School Boards' Claims.**

To determine which state's statute of limitations to apply, the Court must apply

Delaware's choice of law rules.  Under Delaware's choice of law rules, Louisiana's one-year

prescription period applies to the Louisiana School Boards' claims.[1]

As set forth in more detail below, Louisiana's prescription period for asbestos property

damage claims is one year.  Because this period is shorter than Delaware's three-year statute of

limitation and because the Louisiana School Boards' claims arose in Louisiana, Delaware's

borrowing statute compels application of the one-year Louisiana prescription period to those

claims.  10 Del. C. § 8121 (2005).[2]

II.    **The Louisiana Prescription Period Is One Year From The Date When The Claimants Knew Or Should Have Known Of Their Claims.**

Louisiana's prescription period for asbestos property damage claims is one year.  La. Civ.

Code art. 3492.  The one-year period begins to run when the plaintiff knew or should have

known of his cause of action.  *Orleans Parish Sch. Bd. v. United States Gypsum Co.*, 892 F.

---

[1]  *See* Debtors' "Road Map" of Summary Judgment Motions to Expunge Various Asbestos Property Damage Claims at 13-14.

[2]  If Delaware's three-year statute of limitations is deemed to be shorter than Louisiana's one-year prescription period for any reason, it would apply under Delaware's borrowing statute.  The Court need not reach that issue to decide this motion because the Louisiana School Boards' claims clearly are barred under Louisiana's one-year prescription period.  Since the shorter of the two periods applies, if the claims are barred by Louisiana's one-year period, Debtor is entitled to have the claims expunged regardless of which period applies under Delaware's borrowing statute.

Supp. 794, 798 (E.D. La. 1995). A person knows or should know of the existence of his cause of action once he has received sufficient notice to prompt a reasonable person to investigate further. *Id.*

For asbestos property damage claims, the one-year prescription period begins to run when the plaintiff becomes aware that asbestos is present in some of its buildings posing a health risk to employees, and that it must be dealt with at a considerable expense. *Orleans Parish School Board v. United States Gypsum Co.*, 114 F.3d 66, 68 (5th Cir. 1997); *Cameron Parish School Board v. AC and S, Inc.*, 687 So.2d 84 (La. 1997); *see also Trizec Properties, Inc. v. United States Mineral Prods. Co.*, 974 F.2d 602, 607-608 (5th Cir. 1992) (period ran where plaintiff knew of the presence of asbestos in its buildings more than one year before filing suit). Accordingly, under Louisiana law, where a school board has been warned of the dangers of asbestos and discovers that some of its buildings contain asbestos which may require expensive removal, the prescriptive period on their claims against the asbestos manufacturer begins to run. *Id.*

## III.    The Class Action Was Commenced In 1983 And The Louisiana School Boards Opted Out in 1988.

On January 17, 1983, various school boards filed the Class Action against numerous manufacturers of asbestos containing materials ("ACMs"), including the Debtor. The Class Action was brought on behalf of all primary and secondary schools in the United States, including the Louisiana School Boards, and, eventually, the class was certified. *See In Re Asbestos School Litig.*, 104 F.R.D. 422 (E.D. Pa. 1984), *modified*, 107 F.R.D. 215 (E.D. Pa. 1985), *aff'd in part and vacated in part*, 789 F.2d 996 (3d Cir. 1986), *cert. denied*, 479 U.S. 852 (1986). The Class Action was the first action by the Louisiana School Boards against the Debtors for property damage resulting from the inclusion of ACMs in their respective school buildings. *Id.*

On March 16, 1988, each of the Louisiana School Boards opted out of the Class Action. On August 31, 1988, the Louisiana School Boards and others sued the Debtor and other ACMs manufacturers in Louisiana in an action captioned *Jefferson Parish School Board v. W.R. Grace & Co.*, Civ. A. No. 88-3844F (D. La. filed Aug. 31, 1988) (the "Louisiana Action"). *See Exhibit A (Rule 1006 Summary of Voluminous Writings) ("Ex. A.")*. The Louisiana Action sought to recover alleged damages related to the detection, management, removal, and abatement of ACMs used in the construction of the Louisiana School Boards' schools. *Id.*

Under Louisiana law, once the Louisiana School Boards opted out of the Class Action, any tolling of the applicable prescription period was rendered null and void. Accordingly, the claims of all of the Louisiana School Boards are barred by Louisiana's one-year prescription period if they knew or should have known of their claims by August 31, 1987, one year before the Louisiana Action was filed.

## IV.    All of the Louisiana School Boards Knew Or Should Have Known Of Their Claims By 1984.

Each of the Louisiana School Boards that are subject to this motion were required to submit a proof of claim form (the "Claim Form") to support their asbestos property damage claims in this bankruptcy proceeding.[3] The Claim Form required the claimants to state when they first knew of the presence of asbestos in the property for which they are making their claims.

---

[3]  The claims that are the subject of this motion are:  Jefferson Parish School Board ("Jefferson") claim numbers 008164 -008186; Acadia Parish School Board ("Acadia") claim numbers 008029-008030; East Baton Rouge Parish School Board ("East Baton Rouge") claim numbers 012651-012669; Natchitoches Parish School Board ("Natchitoches") claim numbers; 011326-011330); Lafourche Parish School Board ("Lafourche") claim numbers 008018-008023 (Laforche); Caddo Parish School Board ("Caddo") claim numbers 010631-010647; Jefferson Davis Parish School Board ("Jefferson Davis") claim numbers 008025-008026 (Jefferson Davis); Lafayette Parish School Board ("Lafayette") claim numbers 011285-011297; St. Martin Parish School Board ("St. Martin") claim numbers 008024 and 008031; Calcasieu Parish School Board ("Calcasieu") claim numbers 008032-008039; LaSalle Parish School Board ("LaSalle") claim numbers 008027 and 008028; and The Archdiocese of New Orleans ("The Archdiocese") claim numbers 008357-008377. These claimants are collectively referred to herein as the "Louisiana School Boards."

All but three of the Louisiana School Boards admitted that, between the period 1979 and 1984, they had actual knowledge that asbestos was in their buildings. Those same Louisiana School Boards also undertook remediation efforts with respect to the ACMs in their buildings and/or knew of the significant costs associated with those efforts by 1984. In addition, in light of an extensive federal asbestos notification program and widespread publicity regarding the asbestos problems in Louisiana schools, all of the Louisiana School Boards knew or should have known of the hazards associated with ACMs in their buildings and the substantial costs of dealing with asbestos in the early 1980s.

## V.    In 1979, The Federal Government Began Notifying School Boards Throughout The United States About The Hazards Of ACMs In Their Schools.

In the late 1970s and early 1980s, school boards across the nation, including the Louisiana School Boards, learned of the potential dangers of asbestos, the possibility of its presence in school buildings, and the expense of its removal. *Orleans Parish*, 114 F.3d at 66.

Specifically, in 1979, the Environmental Protection Agency (the "EPA") issued a report entitled *Asbestos-Containing Materials in School Buildings: A Guidance Document* ("EPA Guidance Document") which warned school districts of the presence of ACMs in school buildings and described potential health risks caused by exposure to ACMs. *Ex. A.*[4] The EPA Guidance Document also provided detailed procedures for school officials to follow for identifying ACMs in school buildings. In addition, the EPA Guidance Document notified school systems that ACMs were likely to have been used in "[s]chools built or renovated during the period following World War II to 1978 [and that such schools] should be inspected," because ACMs use was not widely prohibited until 1978. *Id.*

---

[4]    The documents referenced in this section were produced by certain of the Louisiana School Boards in discovery in the Louisiana Action. All of the Louisiana School Boards were parties to the Louisiana Action.

Also in 1979, the EPA sent a publication related to the EPA Guidance Document to every school district in the United States entitled School Asbestos Program Questions and Answers ("School Asbestos Questions"). *Ex. A; see also Orleans Parish* at 68-69. The School Asbestos Questions explained that asbestos in school buildings was of great concern because "[e]xposure to asbestos fibers [could] cause debilitating or fatal diseases." *Id.* The EPA also characterized asbestos as hazardous, warning that:

> [e]pidemiological studies of asbestos workers have shown that exposure to asbestos increases the risks of developing lung cancer, mesothelioma ... and asbestosis . . . . EPA believes that any exposure to asbestos involves some increase of risk. No safe level of exposure or "threshold" level has ever been established . . . .

*Id.*

The School Asbestos Questions repeated the EPA Guidance Document's recommendation that each school should:

> (1) visually inspect the building for material which might contain asbestos, (2) take bulk samples of suspect material, (3) have the bulk samples analyzed, (4) if there is asbestos-containing material, perform exposure assessment . . . and (5) perform corrective action if necessary.

*Id.*

In 1980 and 1981, the EPA promulgated proposed regulations and Congress passed the Asbestos School Hazard Detection and Control Act of 1980 ("ASHDCA"), 20 U.S.C. § 3601 *et seq.* ASHDCA required state educational agencies to prepare plans for inspecting school buildings for ACMs and for abating ACMs in school buildings. *Id.*

On April 7, 1980, Louisiana's Office of Health Services and Environmental Quality sent a letter to parish school superintendents informing them that the EPA's regulations regarding asbestos in schools:

> will become <u>mandatory</u> near the end of May 1980, as follows:
>
> 1.  A survey of all schools for asbestos hazards will have to be completed in 120 days after publication of the rule....

2.  A report that the surveys were made and that samples, if any, were sent for testing will have to be sent to the EPA within 180 days after publication of the rule....

*See Exhibit B.* In 1981, the Louisiana legislature codified the Louisiana Educational Facilities Asbestos Detection Program which established a program whereby all schools could obtain free testing of building materials suspected of containing asbestos. *See* La.R.S. § 17:3701 *et. seq.* at §§17:3707, 17:3709.

Also in 1981, following the promulgation of the ASHDCA, the Attorney General of the United States issued a report entitled "The Attorney General's Asbestos Liability Report to Congress" (1981) ("Attorney General's Report"). *Ex. A.* The Attorney General's Report advised school systems to file legal actions before state statutes of limitations expired. *Id.* In particular, the Attorney General warned that:

> School authorities faced with substantial expenditures in removing or containing friable asbestos should, as a matter of the utmost urgency, consult with qualified counsel to determine whether they should file litigation on their own, as at least three school districts already have done. **Urgency is necessary because of statutes of limitation.**

*Id.* (emphasis supplied). On May 27, 1982, the EPA issued a final rule requiring the Louisiana School Boards to inspect and test for ACMs in their schools. *See* 47 Fed. Reg. 23360 (codified at 40 C.F.R. § 763).

## VI.    Asbestos Problems in Louisiana Schools Were Widely Publicized Beginning In 1979.

At least as early as January of 1979, Louisiana newspapers began reporting on the extensive asbestos problems in Louisiana schools. On January 18, 1979, the New Orleans Times-Picayne (the "New Orleans Times") reported that Jefferson Parish School Board ("Jefferson) ordered its staff to being investigating ACMs in its schools.[5] Jefferson viewed

---

5    *See Exhibit C,* Molly Moore, *Jeff To Probe School Asbestos,* New Orleans Times-Picayune, Jan. 18, 1979, at 1.

Continued on following page

ACMs as a potentially "massive problem" that would be very expensive to remediate. *Id.* On June 29, 1979, the newspaper reported that both Jefferson and the Orleans Parish School Board had begun to gather samples for asbestos testing.[6] On November 29, 1979, the New Orleans Times further reported that ACMs had been detected in 23 Jefferson schools and that costs to remediate those ACMs could be nearly $1 million.[7] In that same article, a Jefferson official was quoted as stating that the other Louisiana school boards were "just burying their heads and acting like the problem doesn't exist." *Id.*

On January 24, 1980, it was reported that ACMs had been discovered in two thirds of the public schools surveyed in New Orleans and that remediation costs would be $1 million.[8] On July 22, 1983, the New Orleans Times reported that the $2 million project to remove ACMs in Louisiana schools that had begun two years earlier was expected to be completed by the summer of 1984.[9] That same article reported that ACMs had been removed from the Egard Elementary School in St. John the Baptist Parish about three years earlier. *Id.*

---

Continued from previous page

Copies of the articles referenced in this section were produced by certain of the Louisiana School Boards in connection with the Louisiana Action.

[6]  *Id.*, Rhonda McKendall, *N.O., Jeff Schools Tested for Asbestos*, June 29, 1979 at AS-2A.

[7]  *Id.*, Molly Moore, *Asbestos Found In 23 Jeff Schools*, New Orleans Times-Picayune, Nov. 29, 1979, at 18.

[8]  *Id.*, Rhonda McKendall, *Asbestos Discovered In Many City Schools*, New Orleans Times-Picayune, January 24, 1980, at 6.

[9]  *Id.*, Rhonda McKendall, *Jefferson, Orleans Lead Race To Clean Up School Asbestos*, New Orleans Times-Picayune, July 22, 1983, § 1 at 13-14.

## VII.   All Of The Louisiana School Boards Knew Or Should Have Known Of Their Claims By 1984.

### A.   Caddo Began An Asbestos Program By 1980.

Caddo admitted in its Claim Forms that, in 1979 or 1980, it began its asbestos control program. 10631-007.[10] On December 11, 1981, Caddo submitted bulk samples for cost-free testing through the state asbestos program. 10631-067. The results of that testing established that ACMs in Caddo Middle Magnet School contained between 15-25% chrysotile asbestos. 10631-062-067. Caddo encapsulated ACMs in that school in 1982 and removed them in 1986. 10631-062-064. In 1983, Caddo encapsulated and removed ACMs in its Captain Shreve High School. 10632-005. Caddo did not file suit before the Class Action and opted out of the Class Action in 1988.

### B.   Natchitoches Knew Of Its Claims In 1981.

Natchitoches admitted in its Claim Form that it learned that ACMs were present in North Natchitoches Elementary School in 1981. 11326-006. In 1983, Natchitoches encapsulated ACMs in the school. 11326-004. Natchitoches also removed ACMs from its Provencal Elementary School in 1983 at a cost of in excess of $85,000.[11] Natchitoches similarly failed to file suit before the Class Action was initiated and opted out of the Class Action along with the other Louisiana School Boards in 1988.

---

[10]   The information in this section comes from the Claims Forms and supporting documentation submitted by the Louisiana School Boards in this proceeding. Page references are to the claim number followed by the page number of the Claim Form or supporting documents submitted with the claim. *See Ex. A.*

[11]   This information is found in the supplemental material submitted in support of Natchitoches' claim 11328 on September 18, 2006. There are no page numbers on these supplemental documents. *See Ex. A.*

### C.    East Baton Rouge Began An Asbestos Program in 1979.

East Baton Rouge admitted in its Claim Forms that it began an asbestos control program in 1979. 12651-006. Despite the initiation of this program and the availability of cost-free testing in 1981, East Baton Rouge purportedly first submitted samples for testing in 1983. 12651-037-040. The results of that testing showed the presence of 9-33% chrysotile asbestos in East Baton Rouge schools. *Id.* East Baton Rouge admits that it knew of asbestos in its schools by 1983. 12651-006. By June of 1983, East Baton Rouge had taken corrective actions to remedy ACMs in several of its schools.[12] From June through August of 1984, East Baton Rouge had ACMs removed from its Capital Middle School. 12654-006. By 1985, East Baton Rouge estimated ACMs remedial costs to be $425,000.[13] Like the other Louisiana School Boards, East Baton Rouge failed to file suit prior to the Class Action and opted out of the Class Action in 1988.

### D.    Jefferson Davis Knew Of Its Claims In 1982.

Jefferson Davis admitted in its Claim Forms that it knew of the presence of ACMs in its schools in 1982. 8025-006.[14] Jefferson Davis obtained a bulk sample report dated August 2, 1982 showing that Jennings High School had ACMs that contained between 5% and 35% chrysotile asbestos. 8025-019-020. Jefferson Davis encapsulated ACMs in the school in 1982. 8025-004, 008, 022. Jefferson Davis opted out of the Class Action and did not bring suit against the Debtor until August 31, 1988, more than six years after it knew of its claims.

---

[12] This information is found in the supplemental material submitted in support of East Baton Rouge's claims on September 18, 2006. There are no page numbers on these supplemental documents. *See Ex. A.*

[13] This information is found in the supplemental material submitted in support of East Baton Rouge's claims on September 18, 2006. There are no page numbers on these supplemental documents.

[14] *See Ex. A.*

### E.    Acadia Knew Of Its Claims In 1983.

Acadia admitted in its Claim Form that it learned that ACMs were present in South Crowley Elementary School in 1983. 8029-006.[15] On March 11, 1983 Acadia learned that the ACMs in the school contained 35% chrysotile asbestos. 8029-019. Arcadia encapsulated ACMs in its schools in 1984. 8029-021. Acadia opted out of the Class Action and did not file the Louisiana Action until 1988.

### F.    Lafourche Knew of Its Claims In 1983.

In 1983, Lafourche learned that it had asbestos in its schools. 8023-006, 8019-006, 8018-006.[16] On July 14, 1982, Lafourche engaged an asbestos testing contractor to test Central Lafourche High School (8018-006) and Cut Off Elementary School (8019-006) for ACMs. Lafourche conducted inspections for friable ACMs, took bulk samples of the materials at its schools and, on or about March 1, 1983, learned that the ACMs contained 25% chrysotile asbestos. 8019-006, 8019-051, 8018-006, 8018-061-65. Thereafter, on May 20, 1983, Lafourche sent notices to school employees (8019-052) and letters to parents (8019-054) informing them that ACMs had been found in its buildings and noting the health hazards associated with asbestos. Lafourche encapsulated ACMs in 1983. 8022-004. As of January 7, 1985, Lafourche had removed some ACMs in its schools and planned to remove more at a cost of over $550,000. 8018-066, 8019-055, 8022-050, 8023-182. Despite its knowledge of its claims in 1983, Lafourche opted out of the Class Action and did not file suit prior to the Louisiana Action in 1988.

---

[15] *See Ex. A.*

[16] *See Ex. A.*

### G.    Lafayette Knew Of Its Claims By 1984.

Lafayette admitted in its Claim Forms that it knew its schools contained asbestos by
1984. 11285-006.[17] A December 11, 1984 report to Lafayette showed that nine of its schools
contained ACMs with 11% to 15% asbestos, and 13 schools contained ACMs with 50% to 65%
asbestos. 11285-092-093. Lafayette had encapsulated ACMs in its schools' reading labs by
December 11, 1984. *Id.* By March 30, 1987, some ACMs in Lafayette's schools had been
encapsulated and a recommendation had been made to remove remaining ACMs at a cost of
$895,400. 11285-042. Lafayette did not file suit against the Debtor prior to the Class Action
and, along with the other Louisiana School Boards, opted out of the Class Action in 1988.

### H.    Jefferson Knew Of Its Claims By 1980.

In its Claim Forms, Jefferson admitted that it knew of the presence of asbestos in its
schools by 1980. 8165-006.[18] Jefferson encapsulated ACMs in its schools in 1981. 8164-004,
8181-004, 8184-004, 8186-004. In addition, Jefferson removed ACMs from its SJ Barbre Jr.
High School in 1985. 8165-004, 006. Jefferson opted out of the Class Action in 1988 along
with the other Louisiana School Boards.

### I.    St. Martin Should Have Known Of Its Claims By 1984.

Despites the extensive government notices and media coverage of the asbestos problems
in Louisiana schools, St. Martin stated in its Claim Forms that it did not know that asbestos was
in its buildings until 1988. 8024-006.[19] At that time, St. Martin abated ACMs in its schools in
order to bring the schools into compliance with existing federal law. 8024-004, 008, 020. Given
the extensive government notifications and publications detailing the problems with asbestos,

---

[17] *See Ex. A.*

[18] *See Ex. A.*

[19] *See Ex. A.*

had St. Martin exercised reasonable diligence, it would have known of its claims, like most of the other Louisiana School Boards did, by 1984.

## J.    Calcasieu Should Have Known Of Its Claims By 1984.

Calcasieu similarly asserted in its Claim Forms that it did not know about asbestos in its buildings until 1988. 8034-006.[20] Calcasieu encapsulated ACMs in its schools at that time. 8034-004, 008. Had Calcasieu acted responsibly in light of the extensive information published in legislation, government bulletins and the media, Calcasieu also would have known of its claims by 1984.

## K.    LaSalle Should Have Known Of Its Claims By 1984.

LaSalle stated in its Claim Forms that it did not know about asbestos in its buildings until it opted-out of the Class Action and joined the Louisiana Action in 1988. 8027-006.[21] Had LaSalle headed EPA mandates and begun testing in 1981, it would have known of its claims by 1984 like other Louisiana School Boards did.

## L.    The Archdiocese Knew Of Its Claims In 1981.

The Archdiocese began testing for ACMs in 1981. In July 1981, St. Louise de Marillac tested for ACMs and found that certain spray-on ceiling material in the building contained 15% chrysotile asbestos.[22] At Chinchuba Institute samples were taken at the school for asbestos testing in January, 1982.[23] On April 26, 1982, the Archdiocese sent a letter to school principals

---

[20] *See Ex. A.*

[21] *See Ex. A.*

[22] *See Ex. A,* September 4, 1990 Rule 30(B)(6) Deposition of Donald B. Pfefferle ("Pfefferle Deposition") at 134. The depositions and documents referenced in this section were taken and produced in connection with the Louisiana Action.

[23] *Id.* at 135-136.

indicating that an asbestos problem existed with regard to buildings constructed before 1972.[24]

The Archdiocese finally instituted a mandatory testing program in October, 1982, even though it

knew that at least some schools had ACMs in 1981.[25] The Archdiocese admitted in its Claim

Forms that it knew of the presence of asbestos in its some of its buildings in 1983.  8359-007,

8365-011.[26]

## ARGUMENT

**I.      Debtors' Motion Should Be Granted Because The Louisiana School Boards' Claims Are Prescribed By Louisiana Civil Code Article 3492.**

Summary judgment should be granted if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c); *Orleans Parish,* 114 F.3d at 68.  "When the record -- taken

as a whole -- could not lead a rational trier of fact to find for the nonmoving party, then there is

no genuine issue for trial."  *Davis v. Chevron USA, Inc.,* 14 F.3d 1082, 1084 (5th Cir. 1994).

**A.      The Louisiana School Boards' Claims Are Barred By Louisiana's One Year Prescription Period.**

Louisiana Civil Code article 3492 states that "Delictual [tort] actions are subject to a

liberative prescription of one year.  This prescription commences to run from the day injury or

damage is sustained . . . ."  La. Civ. Code art. 3492.  The Louisiana Supreme Court has held that

prescription begins to run in asbestos property damage cases "once [the plaintiff] has received

sufficient notice to prompt a reasonable person to investigate further."  *Orleans Parish,* 892 F.

Supp. at 798 (citing *Jordan v. Employee Transfer Corp.,* 509 So. 2d 420, 423-424 (La. 1987)).

---

[24] *See Ex. A.,* November 15, 1990 Deposition of John C. Rice, Jr. at 26, 32.  According to Rice's April 5, 1982 letter to superintendents, Rice indicated that he had distributed copies of Act 268 of the Louisiana Legislature to the superintendents in the summer of 1981.  *Id.* at page 31.

[25] *See Ex. A.,* October 7, 1982 Howard Jenkins and Leonard J. Fine letter to all pastors and principals.

[26] *See Ex. A.*

Similarly, federal courts have held that Louisiana's one year period begins to run in asbestos property damage cases "when the person in whose favor a cause of action exists knows or should have known of the existence of his cause of action." *Orleans Parish*, 892 F. Supp. at 798. The Fifth Circuit and Louisiana Supreme Court have consistently held that:

> at the latest, prescription begins to run against a school board in a suit against an asbestos manufacturer when the school board becomes aware that asbestos is present in 'at least some of its buildings' posing a health risk to employees, and that it must be removed at a considerable expense.

*Orleans Parish*, 114 F.3d at 68 (citing *Cameron Parish*, 687 So. 2d at 89).

In *Cameron Parish*, the Louisiana Supreme Court held that prescription began to run against the Cameron Parish School Board ("CPSB") not later than November 1981 when, after having received EPA warnings, it determined that ACMs were present in the Grand Lake High School and it adopted a resolution to seek bids for a contract to remove the ACMs from that school. *Cameron Parish*, 687 So. 2d at 89. Accordingly, the Supreme Court held that the filing of the Class Action in January 1983 was too late to interrupt prescription for the benefit of the CPSB and affirmed the dismissal of the school board's action. *Id.* at 93.

In *Orleans Parish*, the district court held that the Orleans Parish School Board ("OPSB") had sufficient notice to prompt investigation and filing of its claim against the Debtor by 1980, or 1981 at the very latest. *Orleans Parish*, 892 F. Supp at 801. The court referred to the texts of the 1979 EPA School ACM Guidance Document and the School Asbestos Questions, both of which the school board received in the summer of 1979. The court also noted that the School Asbestos Questions booklet

> emphasized the likelihood that many public school buildings contained ACMs. It recommended that schools check building records, conduct a visual inspection of buildings, gather and test bulk samples of suspected ACMs, and take any necessary corrective action.

*Orleans Parish*, 892 F. Supp. at 798. The record showed that OPSB inspected and sampled its buildings for ACMs in 1979 and by the summer of 1980 began to undertake asbestos encapsulation and other abatement procedures. The court determined that prescription on the OPSB claims against the Debtor began to run by at least 1981 and that the claims prescribed in 1982 before the Class Action was filed in January 1983. *Id.* at 801-802

The Fifth Circuit, in affirming the decision, found the 1981 date to be an "expansive reading of the facts" and held that by sometime in 1980 OPSB knew or should have known of its claims. *Orleans Parish*, 114 F.3d at 69 n.10. The Fifth Circuit found that "[i]n the late 1970s and early 1980s, school boards across the nation learned of the potential dangers of asbestos, the possibility of its presence in school buildings, and the expense of its removal." *Id.* at 67. The court further held that the 1979 EPA Guidance Documents should have been enough to prompt a reasonable school board to investigate whether their buildings contained ACMs, and to test sample building materials from its schools as the OPSB did in 1979. *Id.* at 68.

The district court and the Fifth Circuit both held that pinpointing an exact date upon which the prescriptive period began to run was not a material fact for purposes of resolving the issue. As the Fifth Circuit stated:

> Although from the record we cannot pinpoint the exact day that prescription began to run against the School Board, it is not necessary that such be done. The record reflects beyond peradventure that the School Board knew by sometime in 1980 that asbestos was a serious problem and that it necessitated an extensive and expensive removal process. The one year liberative prescription for delictual actions began to accrue against the School Board at that time. The School Board's claims were thus prescribed by the time the national class action lawsuit was filed in 1983.

*Id.* at 69.

The district court in *Orleans Parish* also held that even if the OPSB had non-prescribed claims on January 17, 1983, which were preserved by the filing of the Class Action, those claims

later prescribed because of OPSB's decision to opt out of the Class Action on March 16, 1988.[27]

That action, the court held, was in effect a voluntary dismissal of its claims in the Class Action.

*Orleans Parish*, 892 F. Supp. at 802-05. The court reasoned that:

> By opting out of the national class action, the School Board lost any
> benefit it gained by being in the class, because opting out of a class action
> lawsuit, like voluntarily dismissing a suit without the consent of the
> defendant, is a unilateral, voluntary action by the plaintiff that allows the
> plaintiff to forum-shop. By opting out of the national class action in 1988,
> the School Board voluntarily and unilaterally chose to cease being a part
> of litigation that had been ongoing for five years so that it could bring suit
> in a court of its own choosing. **Under Louisiana law, the class action is**
> **considered as if it was never filed.**

*Id.* at 804 (emphasis added).

The rationales supporting the dismissals of the *Orleans Parish* and *Cameron Parish* cases

apply with equal force to the claims of the Louisiana School Boards. All of the Louisiana School

Boards opted out of the Class Action in 1988 negating any tolling effect of that action. All but

three of the Louisiana School Boards admitted on their Claim Forms that they knew that ACMs

were in their schools by 1984. Some of the Louisiana School Boards admitted to instituting

asbestos control programs by 1980. All but three of the Louisiana School Boards took steps to

abate ACMs in their buildings by 1984.

All of the Louisiana School Boards were informed of the hazards of ACMs by the EPA in

1979 and 1980 and were required to begin testing for ACMs in their schools by 1982. In

addition, the well-publicized asbestos detection and abatement activities in Jefferson and OPSB

schools in 1979 and 1980 emphasized the importance of the EPA's notices and informed the

Louisiana School Boards of the substantial expenses associated with abatement activities.

---

[27] While La. Civ. Code art. 3462 provides that prescription is interrupted by the timely filing of an action (in a
court of competent jurisdiction and proper venue) and that the filing of a class action interrupts prescription on
behalf of all class members, *Williams v. State of La.*, 350 So. 2d 131, 137 (La. 1977), La. Civ. Code art. 3463
provides that interruption of prescription "is considered never to have occurred if the plaintiff abandons [or]
voluntarily dismisses the action at any time . . . ." *Id.*

As the Supreme Court of Louisiana held under strikingly similar circumstances:

> the Board clearly was aware it had asbestos in at least some of its buildings, the asbestos posed a serious health problem to its employees and students, the problem was severe enough to warrant immediate removal of the material, and the removal . . . would cost the Board a significant amount of money.

*Cameron Parish*, 687 So.2d at 89. The identical conclusion is warranted in the present case. In short, because all of the Louisiana School Boards knew or should have known of their claims by 1984 and because the Louisiana School Boards failed to file suit until 1988, all of their claims are barred by Louisiana's one year prescription period.

In addition, Caddo, Natchitoches, Jefferson and the Archdiocese knew of their claims more than a year before the Class Action was filed in 1983. Those Louisiana School Boards knew of the presence of ACMs in their schools in 1981. Had the remaining Louisiana School Boards acted diligently and availed themselves of cost-free testing for ACMs in their schools in 1981 -- as recommended by government agencies -- they also would have known of their claims at that time. The Louisiana School Boards' failure to do so does not prevent Louisiana's one year prescription period from running. *See Orleans Parish*, 892 F. Supp. at 799-802. Accordingly, all of the Louisiana School Boards knew or should have known of their claims in 1981, more than one year before the Class Action was filed.

Given these undisputed facts, the claims of all of the Louisiana School Boards are barred by Louisiana's one-year prescription period as a matter of law. *Orleans Parish*, 892 F. Supp at 801-802, *Cameron Parish*, 687 So.2d at 89.

## II.     Knowledge Of The Identity Of The Manufacturer Of ACMs Is Not Necessary To Begin Tolling Of Louisiana's One Year Prescriptive Period.

Under Louisiana law, knowledge of the identity of the manufacturer of ACMs is not necessary to begin the tolling of Louisiana's one-year prescription period. *Orleans Parish*, 892 F. Supp. at 800-801. Specifically, once the Louisiana School Boards knew of the presence of

ACMs in at least some of their buildings, they were charged with exercising reasonable diligence to discovery the identity of the manufacturers of those ACMs. *Id.* Because the Louisiana School Boards undisputedly knew or should have known of the presence and hazards of ACMs in their buildings by no later than 1984, any alleged failure on their part to identify the Debtor in the intervening four years before the Louisiana Action was filed does not toll Louisiana's one-year prescription period. *Id.*

III. **Louisiana's R.S. 9:5644 Does Not Apply Retroactively To Revive The Louisiana School Boards' Claims.**

In *Cameron Parish* and *Orleans Parish*, the school boards unsuccessfully argued that La. R.S. 9:5644 applied retroactively to revive their claims against asbestos products manufacturers. *Cameron Parish*, 687 So. 2d at 89-93; *Orleans Parish*, 114 F.3d at 69. On September 6, 1985, Louisiana enacted La. R. S. 9:5644 which in relevant part provides:

> **Prescription of actions involving asbestos abatement....**
>
> B. Notwithstanding any other provision of law to the contrary, any time limitation or prescriptive period which may be applicable to any action to recover for asbestos abatement work shall not apply or expire until five years after the date on which the party seeking to recover has completed the abatement work or discovered the identity of the manufacturer of the materials which require abatement, whichever is later.
>
> C. Any person who has an action to recover for asbestos abatement work under the provisions of this Section but whose action is barred by the prescriptive period provided in R.S. 9:5644 shall have one year from the effective date of this Act within which to bring an action or be forever barred.

The Louisiana Supreme Court meticulously analyzed R.S. 9:5644 and concluded that "[s]ubsections B and C clearly apply retroactively to causes of action which arose prior to the date of its enactment and as to which the applicable prescriptive period had not yet accrued . . . ." *Cameron Parish*, 687 So. 2d at 90. Under circumstances nearly identical to the Louisiana School Boards' claims which, as shown above, were prescribed more than one year before the revival

statute, the *Cameron Parish* court held that "the Board's claims are not simply prescribed by the prescriptive period provided in La. R.S. 9:5644 but, instead, were prescribed for nearly three years before the enactment of La. R.S. 9:5644, and nothing in the statute evidences a 'clear and unequivocal intent' on the part of the legislature to revive such prescribed claims." *Id.* at 92.

The Fifth Circuit, when faced with the same issue in *Orleans Parish,* held that "[t]his issue was decided conclusively in *Cameron Parish* in which the Louisiana court held that La. R.S. 9:5644(c) could not be retroactively applied to 'claims as to which prescription has already accrued.'" *Orleans Parish*, 114 F.3d at 69. In light of the foregoing, it is clear that La. R.S. 9:5644 does not retroactively apply to, and did not revive, the Louisiana School Boards' untimely claims.

**CONCLUSION**

The Court should disallow and expunge the Louisiana School Boards' 120 property damage claims that are prescribed by Louisiana Civil Code article 3492.

Dated:  February 16, 2007

REED SMITH LLP
James J. Restivo, Jr., Esq. (#10113)
Lawrence Flatley, Esq. (#21871)
Douglas E. Cameron, Esq. (#41644)
Traci S. Rea, Esq. (#76258)
435 Sixth Avenue
Pittsburgh, PA  15219
Telephone:  (412) 288-3131
Facsimile:  (412) 288-3063

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Salvatore F. Bianca
200 East Randolph Drive
Chicago, Illinois 60601
Telephone:  (312) 861-2000
Facsimile:  (312) 861-2200

And

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession