IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | |
| W. R. GRACE & CO., et al. ) | Chapter 11 |
| ) | |
| Debtors. ) | Case No. 01-01139 (JKF) |
| ) | (Jointly Administered) |

Hearing Date: April 9, 2007 at 9:00 a.m.
Pittsburgh, PA
Response Deadline: March 19, 2007
Related Docket No: 9315

## DEBTORS' MOTION AND MEMORANDUM FOR AN ORDER PURSUANT TO F.R.B.P. 7056 DISALLOWING AND EXPUNGING EIGHTY-EIGHT (88) TIME-BARRED CANADIAN ASBESTOS PROPERTY DAMAGE CLAIMS

For the reasons stated in this motion and in the attached report of Graeme Mew, an expert on Canadian limitations law and the author of the leading treatise on the subject, Canadian "ultimate limitations periods" and "normal limitations periods" operate to bar a total of 88 Canadian PD claims.[1] In *Privest Properties Ltd. v. Foundation Co. of Canada Ltd.*, the only asbestos in buildings case litigated to a decision in Canada, a British Columbia court carefully considered evidence presented over the course of 182 days and issued a thorough 309-page judgment rejecting every aspect of the plaintiff's claim against Grace.

The court found, among other things, that Grace's MK-3 fireproofing was not an inherently dangerous product and that the plaintiff's claim was time-barred under the applicable

---

[1] Graeme Mew is the Office Managing Partner at the law firm of Nicholl Paskell-Mede, Lawyers - Avocats, in Toronto, Ontario, Canada. Mr. Mew holds law degrees from Kingston University in London, England and the University of Windsor in Ontario, Canada. He has practiced law since 1984, initially in England and, subsequently, in Canada. He is a specialist in the Canadian law of limitations and has written and spoken extensively on that subject. Mr. Mew's report is attached hereto as **Exhibit A.**

limitations period. The 1995 *Privest* decision, which was affirmed on appeal, marked both the beginning and the end of asbestos in buildings litigation in Canada.

This Court should follow what has been the law in Canada for at least a decade -- under Canadian law, asbestos in buildings claims simply are not viable. Even the Canadian claimants' counsel, Speights & Runyan, recognizes as much. Shortly after Grace filed for bankruptcy, counsel circulated a newsletter in Canada, attached hereto as **Exhibit B**, offering to represent Canadian building owners in the bankruptcy on a contingency-fee basis. The newsletter noted, correctly, that "no Canadian Property owners have ever successfully sued U.S. asbestos manufacturers" and that the only asbestos property damage case tried in Canada "brought into question the Statute of Limitations for such suits in Canada." (*Id.* at 1). While the newsletter referred to Grace's bankruptcy filing as a "current window of opportunity," the Canadian claimants cannot resuscitate their claims, which would be dead on arrival in the Canadian courts, by exporting them to this United States bankruptcy proceeding.

For the following reasons, Grace moves for an order disallowing and expunging 88 Canadian claims as time-barred:[2]

*First*, Canadian ultimate limitations periods -- comparable to statutes of repose in the United States -- bar 44 claims. The ultimate limitations periods of Alberta (ten years), British Columbia (30 years), and Manitoba (30 years) apply to the claims at issue here, and started to run upon the *installation* of Grace asbestos-containing products in claimants' buildings *regardless* of whether their claims for asbestos property damage were discoverable at that time or at any other time.

---

[2] A total of 89 claims remain for buildings located in Canada. Grace is moving for summary judgment on all of these claims except for one claim from Quebec (claim no. 12533). Unlike all of the other Canadian provinces, which have common-law systems, Quebec has a civil law system based on a Civil Code derived from the French Napoleonic Code. For this reason, the present motion does not address the Quebec claim. Grace reserves its right to challenge this claim at the April hearing on limitations issues.

Taking the date that Grace filed for bankruptcy, April 2, 2001, as the date that the Canadian claims were filed for limitations purposes, the ten-year Alberta ultimate limitations period bars 42 claims with dates of installation earlier than April 2, 1991, and the 30-year British Columbia and Manitoba ultimate limitations periods bar two claims with dates of installation earlier than April 2, 1971.

*Second*, Canadian normal limitations periods -- comparable to statutes of limitations in the United States -- also bar these 44 claims, plus 44 more claims. Depending on the province, the applicable normal limitations period is either two years or six years. Although discoverability principles apply to the normal limitations periods, it is the *claimants'* burden to submit evidence sufficient to postpone the running of time.

Claimants cannot meet this burden. Given the existence of Canadian legislation requiring building owners to know about asbestos in their buildings, and the longstanding and widespread notoriety in Canada of the controversy surrounding the alleged health risks of asbestos in buildings, the applicable normal limitations periods expired more than a decade ago.

## ARGUMENT

### A. CANADIAN ULTIMATE LIMITATIONS PERIODS BAR 44 CLAIMS.

Ultimate limitations periods in certain Canadian provinces -- comparable to statutes of repose in the United States -- bar 44 claims. Attached hereto as **Exhibit C** is a Rule 1006 summary listing the claims barred by ultimate limitations periods. As stated by Mr. Mew in his report, ultimate limitations periods are "ultimate cut off points within which time a claim must be brought *regardless* of when the claims were or ought to have been 'discoverable.'" (Mew Rpt., Ex. A at 8 (emphasis added); *see also id.* at 15 (noting that ultimate limitations periods "set an outside time limit for asserting a claim, regardless of discoverability considerations")). They are

designed to "provide defendants with protection from stale claims and ensure that defendants are not subject to open-ended liability." (*Id.* at 16).

As one Canadian court put it, putative defendants "should not be compelled to have the sword of Damocles hanging over their heads forever," and consequently, the relatively long time limits provided for in ultimate limitations periods must apply "no matter what, even in the face of ongoing and continuing disability or in the absence of knowledge despite reasonable efforts." (*Id.*, citing *M.(M.) v. Roman Catholic Church of Canada*, 2001 MBCA 148, at para. 41).

Three Canadian provinces -- Alberta, British Columbia, and Manitoba -- have ultimate limitations periods that apply to the pending claims in those provinces.[3] Alberta's ultimate limitations period is ten years, and the ultimate limitations periods of British Columbia and Manitoba are 30 years. (*Id.* at 4-5, 16-19). These ultimate limitations periods began to run upon the *installation* of Grace asbestos-containing products in the claimants' buildings. (*Id.* at 4, 15 (noting that "[u]ltimate limitations periods run from the date of installation"), citing *Armstrong v. West Vancouver (District)*, [2003] B.C.J. No. 303 (B.C.C.A) (Q.L.); *Dean v. Kociniak*, [2001] A.J. No. 643 (Alta. Q.B.) (Q.L.)).

Under Canadian law, the asbestos in buildings claims at issue here are claims for economic loss, not property damage, and the installation of a Grace asbestos-containing product in a building, not some alleged "property damage," starts the running of the applicable limitations period. (*Id.* at 9-10) ("The significance of these Claims sounding in pure economic loss is that the date upon which the cause of action arises is the date of installation of the allegedly defective product."), citing *Winnipeg Condominium Corp. No. 36 v. Bird Construction*

---

[3] Under Canadian choice of law principles, the applicable limitations period for a particular claim is that of the province in which the building at issue is located. (Mew Rpt., Ex. A at 7-8, citing *Tolofson v. Jensen*, [1994] S.C.R. 1022 (S.C.C.)).

*Co.*, [1995] 1 S.C.R. 85 (S.C.C.); *Privest Properties Ltd. v. Foundation Co. of Canada Ltd.*, [1995] 10 W.W.R. 385 (B.C.S.C.), *aff'd* [1997] 5 W.W.R. 265 (B.C.C.A.), *leave to appeal dismissed*, [1997] S.C.C.A. No. 216 (S.C.C.).

1. **42 Alberta Claims Are Time-Barred Under Alberta's Ten-Year Ultimate Limitations Period.**

Taking the date that Grace filed for bankruptcy (April 2, 2001) as the date that the claims at issue were filed for limitations purposes, Alberta's ten-year ultimate limitations period bars all 42 claims for buildings in that province. (Ex. C) (listing claims barred by ultimate limitations periods). As Mew explains: "Alberta's 10 year ultimate limitation period bars Claims for installations of Grace products that were allegedly installed on or before April 2, 1991." (Mew Rpt., Ex. A at 16-17, citing *Limitations Act*, R.S.A. 2000, c. L-12; *Bowes v. Edmonton (City)*, [2005] A.J. No. 941 (Alta. Q.B.) (Q.L.); *Dean v. Kociniak*, [2001] A.J. No. 643 (Alta. Q.B.) (Q.L.)).

As the record demonstrates, all 42 Alberta claims involve installations before April 2, 1991. In response to questions on the Claim Forms, eleven Alberta claimants admitted that Grace products were installed in their buildings prior to April 2, 1991.[4] (Ex. C at Columns 4, 5). The remaining 31 Alberta claimants failed to provide installation dates or submit documentation reflecting installation dates. Thus, their claims are time-barred because there is no evidence of post-1991 installations of Grace asbestos-containing products.

In fact, as stated in the affidavit of James Cintaini attached hereto as **Exhibit D**, Grace stopped selling asbestos-containing products in Canada before 1976 at the latest, more than fifteen years prior to the April 2, 1991 installation cut-off date. (Cintani Aff., Ex. D at ¶ 4).

---

[4] Specifically, these are claim numbers 12293, 12388, 12400, 12401, 12421, 12422, 12423, 12454, 12489, 12496, and 12576.

Claimants have had four years since the March 2003 PD claims bar date to produce evidence of post-April 1991 installations, and have not. Their claims are time-barred under Alberta's ultimate limitations period.

### 2. Two British Columbia And Manitoba Claims Are Time-Barred Under Those Provinces' 30-Year Ultimate Limitations Periods.

Likewise, British Columbia's and Manitoba's thirty-year ultimate limitations periods bar two claims.[5] (Ex. C) (listing claims barred by ultimate limitations periods). Mew notes that "Claims against Grace arising out of alleged installation of Grace products in British Columbia, Manitoba, and Newfoundland and Labrador[6] buildings prior to April 2, 1971 are time-barred due to the operation of those provinces' 30 year ultimate limitations provisions." (Mew Rpt., Ex. A at 16, 18-19, citing *Limitations Act*, R.S.B.C. 1996, c. 266 (British Columbia); *Armstrong v. West Vancouver (District)*, [2003] B.C.J. No. 303 (C.A.) (Q.L.); *The Limitation of Actions Act*, C.C.S.M. c.L150) (Manitoba)).

The record demonstrates that one British Columbia and one Manitoba claim involve installations before April 2, 1971. The British Columbia claimant (claim no. 11632) attached backup documentation in support of its claim reflecting the installation of acoustical plaster in its building prior to April 2, 1971. (Ex. C at Columns 4, 5). In response to questions on the Claim

---

[5] Six other British Columbia and Manitoba claims (claim nos. 11627, 12346, 12430, 12476, 12525, and 12527) remain. These claimants neither indicated when Grace asbestos-containing products were allegedly installed in their buildings nor provided backup documentation reflecting dates of installation. Grace does not seek summary judgment for these six claims based on the applicable ultimate limitations periods. As explained in Part C below, however, these claims are barred by British Columbia's and Manitoba's normal limitations periods and Grace is moving for their dismissal on that basis. Grace also reserves its right to challenge these claims at the hearing on limitations issues.

[6] Three Newfoundland and Labrador claims (claim nos. 12491, 12493, and 12536) remain. Because these claimants indicated in their proofs of claim that the relevant dates of installation were after April 2, 1971, Grace does not seek summary judgment for these claims based on the applicable ultimate limitations period. As explained in Part C below, however, these claims are barred by Newfoundland and Labrador's normal limitations period and Grace is moving for their dismissal on that basis. Grace also reserves its right to challenge these claims at the hearing on limitations issues.

Form, the Manitoba claimant (claim no. 11620) admitted that a Grace product was installed in its building prior to April 2, 1971. (*Id.*) These two claims are time-barred.

## B. CANADIAN NORMAL LIMITATIONS PERIODS BAR 88 CLAIMS.

Normal limitations periods in certain Canadian provinces -- comparable to statutes of limitations in the United States -- bar 88 of the remaining 89 Canadian PD claims. Attached hereto as **Exhibit E** is a list of the 88 claims barred by normal limitations periods. Of these 88 claims, 42 are for buildings located in Alberta (all of which are also barred by Alberta's ultimate limitations period) and 46 are for buildings located in other common-law provinces (two of these claims are also barred by British Columbia's and Manitoba's ultimate limitations periods).

Like ultimate limitations periods, normal limitations periods start to run upon installation of an allegedly defective product. (Mew Rpt., Ex. A at 5, citing *Privest Properties Ltd. v. Foundation Co. of Canada Ltd.*, [1995] 10 W.W.R. 385 (B.C.S.C.)). However, in contrast to ultimate limitations periods, normal limitations periods are subject to discoverability principles. (*Id.* at 10-14, *citing Peixeiro v. Haberman*, [1997] 3 S.C.R. 549 (S.C.C.); *Novak v. Bond* (1999), 172 D.L.R. (4th) 385 (S.C.C.)). Critically, under Canadian limitations law it is the *plaintiff's* burden to invoke discoverability principles and submit evidence sufficient to postpone the running of the applicable normal limitations period. (*Id.* at 11). The Canadian claimants have not met their burden.

In Canada, courts apply a burden-shifting approach to determine whether a claim is time-barred under the applicable normal limitations period. To establish a limitations defense, "the defendant has only to show that the claim was brought after the expiry of the limitation period set out in the applicable statute." (*Id.*) Then, if the plaintiff's claim is presumptively time-barred, "the burden is on the *plaintiff* to prove that [the] date of commencement of the running of

the limitation period should be postponed until some time after the date of the alleged wrong." (*Id.*) (emphasis added). To sustain this burden, the plaintiff must establish that "the material facts upon which its cause of action is based were not discoverable with the exercise of reasonable diligence until some time after the date of the alleged wrong." (*Id.*) As one court explained, the plaintiff "cannot simply wait until he or she has an expert report in hand which supports the claim before being deemed to have discovered the existence of a claim." (*Id.*, citing *Soper v. Southcott* (1998), 39 O.R. (3d) 737 (Ont. C.A.)).

1. **All 42 Alberta Claims Are Also Time-Barred Under Alberta's Two-Year Normal Limitations Period.**

Again taking the date that Grace filed for bankruptcy (April 2, 2001) as the date that the claims at issue were filed for limitations purposes, Alberta's normal limitations period presumptively bars the 42 claims for buildings in that province. (Ex. E) (listing claims barred by normal limitations periods). For the type of claim at issue here, Alberta's normal limitations period is two years from the date of installation. (Mew Rpt., Ex. A at 21-22, citing *Limitations Act*, S.A. 1996, c. L-15.1). As noted above, Grace stopped selling asbestos-containing products in Canada more than 30 years ago. (Cintani Aff., Ex. D at ¶ 4). Because the installation of a Grace asbestos-containing product in a building in Alberta would have occurred well before April 2, 1999, any resulting claim against Grace was time-barred before April 2, 2001, when Grace filed for bankruptcy.

### 2. 46 British Columbia, Manitoba, Newfoundland and Labrador, Nova Scotia, And Ontario Claims Are Time-Barred Under These Provinces' Six-Year Normal Limitations Periods.

By the same token, the 46 claims for buildings located in the other common-law provinces are presumptively time-barred. (Ex. E) (listing claims barred by normal limitations periods). In each of the other common-law provinces for which claims remain -- British Columbia, Manitoba, Newfoundland and Labrador, Nova Scotia, and Ontario -- the applicable normal limitations period is six years. (Mew Rpt., Ex. A at 22-29, 30, citing *Limitations Act*, R.S.B.C. 1996 c. 266 (British Columbia); *Limitation of Actions Act*, C.C.S.M. c.L150 (Manitoba); *Limitations Act*, S.N.L. 1995, c. L-16.1 (Newfoundland and Labrador); *Limitation of Actions Act*, R.S.N.S. 1989, c. 258 (Nova Scotia); *Limitations Act*, R.S.O. 1990, c. 1-15 (Ontario)). Because the installation of a Grace-asbestos containing product in a building in any of these provinces would have occurred well before April 2, 1995, any resulting claim against Grace was time-barred before April 2, 2001, when Grace filed for bankruptcy.

### 3. For All 88 Of These Canadian Claims, Due To The Extensive Knowledge In Canada Of The Controversy Surrounding The Alleged Health Effects Of Asbestos In Buildings, The Canadian Claimants Cannot Successfully Invoke Discoverability Principles To Postpone The Running Of The Normal Limitations Periods.

Despite having the burden of proof on discoverability, none of the Canadian claimants have offered any evidence in support of postponing the running of the normal limitations periods. To avoid having their claims expunged as time-barred under Alberta's normal limitations period, the Alberta claimants would have to prove that their claims were not discoverable with the exercise of reasonable diligence until after April 2, 1999. (Mew Rpt., Ex. A at 21-22). The other claimants would have to prove that their claims were not discoverable

with the exercise of reasonable diligence until after April 2, 1995. (*Id.* at 22-29, 30). This is the claimants' -- not Debtors' -- burden. Claimants have failed to submit *any* evidence on this point and, for this reason alone, their claims are time-barred.

In any event, given the notoriety of asbestos issues in Canada, the Canadian claimants *could not* submit any evidence that would successfully postpone the running of the normal limitations periods. In the "definitive" Canadian case on the issue of the notoriety of asbestos issues in Canada, *Privest Properties Ltd. v. Foundation Co. of Canada Ltd.*, [1995] 10 W.W.R. 385, a British Columbia building owner sued W.R. Grace and several other defendants for the costs of removing Grace's MK-3 fireproofing. (*Id.* at 12). The trial judge held that "all of the factors necessary to bring an action existed as of the date of completion of the installation of the asbestos-containing product in the building." (*Id.*) Therefore, the normal limitations period started to run upon the installation of Grace's MK-3 in the plaintiff's building. (*Id.*)

The *Privest* decision, which was affirmed on appeal, cited the Canadian Supreme Court's finding in *Canadian Indemnity Co. v. Johns-Manville Co. Ltd.*, [1988] 54 D.L.R. (4th) 468 (Que. C.A.); (1990) 72 D.L.R. (4th) 478 (S.C.C.), that "the alleged health hazards of asbestos were of 'public character and notoriety' in Canada in the late 1960's and early 1970's." (*Id.*)[7]

The *Privest* and *Johns-Manville* decisions simply confirm what was clear already: Well before the mid-1990s, Canadian building owners were on notice about issues and the controversy regarding asbestos in buildings. Before the 1990's, legislation throughout Canada, described in Exhibit D to the Mew report on Canadian limitations periods, "made it a statutory duty for

---

[7] The *Privest* litigation itself raised the public's awareness of the controversy surrounding asbestos in buildings. (Morse Rpt. Ex. F at 26 ("Beginning with the *Privest* litigation in the late 1980s and through the mid-1990's there was prominent coverage given to the asbestos-in-buildings litigation in Canada.")).

building owners to know whether asbestos products were contained in their buildings." (*Id.* at 5).

Moreover, the expert report of architect Roger G. Morse, attached hereto as **Exhibit F**, catalogs hundreds of Canadian newspaper articles, trade journals, and government publications from the mid-1980s and earlier publicizing the issues surrounding asbestos in buildings. Mr. Morse concludes that in Canada "building owners had available to them a vast amount of information about the issues concerning the use of asbestos-containing materials in buildings to the extent that, by the early to mid-1980s, virtually all building owners should have been aware of the widespread use of asbestos-containing materials and the alleged health risks of those materials in their facilities." (Morse Rpt., Ex. F at 7).

While the Morse report catalogs a vast amount of publicity throughout Canada, the establishment of the Royal Commission on Matters of Health and Safety Arising from the Use of Asbestos in Ontario ("RCA") in 1980 and the issuance of a comprehensive report by the RCA in 1984 are particularly significant. (*Id.* at 13). The initial public meetings of the RCA were advertised in more than 80 newspapers throughout Ontario and attracted hundreds of attendees. (*Id.* at 13-14). More than 2,000 individuals and organizations placed themselves on the RCA's mailing list and received information about the RCA's hearings and its research program. (*Id.* at 14).

In 1984, the RCA released a comprehensive three-volume final report that was made available to the public. (*Id.* at 13-14). Part IV of the report dealt specifically with "Asbestos in Buildings." (*Id.* at 14). Chapters 9 and 10 of the report provided a detailed discussion of issues involving asbestos in buildings. (*Id.*) The report included dozens of recommendations for the government to consider relating to asbestos in buildings and asbestos work in buildings. (*Id.* at

14). By the time the RCA report was released in 1984, the Ontario Ministry of Education had already started a program to inspect its schools for asbestos containing materials and approximately 3,700 Federal government buildings across Canada had been inspected for sprayed friable asbestos. (*Id.* at 9).

Building owners throughout Canada also had access to information from their architect and engineering contacts prior to and throughout the 1980's and into the 1990's. Indeed, articles published in architectural and engineering journals discussed issues such as the use of sprayed fireproofing in buildings, the bans on the use of sprayed fireproofing in the United States, and the alleged health effects of asbestos, among other things. (*Id.* at 19-20). Members of BOMA Canada, the Canadian arm of the Building Owners and Managers Association, also had access to information relating to asbestos in buildings. (*Id.* at 17).

In light of the *Privest* and *Johns-Manville* decisions, the Canadian legislation requiring building owners to know whether asbestos-containing products were in their buildings, and the Morse report on the notoriety in Canada of the controversy surrounding asbestos in buildings, Canadian limitations law expert Graeme Mew concludes that the Canadian claimants could not successfully invoke discoverability principles in the Canadian courts to postpone the running of the normal limitations periods; therefore, "all of the remaining claims against Grace are time-barred due to the operation of the provincial limitations statutes." (Mew Rpt., Ex. A at 5; *see also id.* at 12-14, 30-31). Because the Canadian claimants have not satisfied their burden with respect to discoverability, and cannot do so, summary judgment is appropriate.

## CONCLUSION

Grace respectfully requests that the Court enter an order disallowing and expunging the 88 time-barred claims listed in Exhibits C and E hereto.

Dated: February 16, 2007

REED SMITH LLP
James J. Restivo, Jr. (Bar No. 10113)
Lawrence E. Flatley (Bar No. 21871)
Douglas E. Cameron (Bar No. 41644)
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: (412) 288-3131
Facsimile: (412) 288-3063

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Lisa Esayian
Samuel L. Blatnick
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

*/s/ James E. O'Neill*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession