# EXHIBIT B

## *New Developments in Asbestos Property Damage Cost Recovery for Canadian Property Owners*

Over the past 15 years property owners in the United States have been very successful in recovering the cost of asbestos removal or abatement programs from the manufacturers of the friable sprayed asbestos products installed in their buildings. These judgments have included many millions of dollars in damages plus, in some cases, punitive awards if the manufacturers of the products knew of the inherent risk of these products when they were being installed. For Canadian owners it is interesting to note that some of these friable sprayed products were still being installed in Canadian buildings after they had been withdrawn from the U.S. Market for these health reasons.

Although no Canadian Property owners have ever successfully sued U.S. asbestos manufacturers (some cases in British Columbia were settled out-of-court for exceptional reasons), there is a current window of opportunity, which may allow many Canadian owners to recover a substantial amount of the money spent or to be spent on asbestos abatement. The details are provided below.

**Why have Canadian Building Owners not been in a position to recover such costs in the past?**

There are many reasons for this. Firstly there are significant differences in the liability laws between Canada and the U.S. Such theories as "strict liability" for a defective product and suits for pure economic loss are viable in the U.S. Courts but much less likely to succeed in Canada. The U.S. cases have historically taken many, many years to settle or come to court and the costs have been so great that the only effective way for building owners to succeed was by engaging specialty lawyers on contingency – a much less common practice in Canada. The only case tried in Canada (commonly referred to as the Privest Case) also brought into question the Statute of Limitations for such suits in Canada.

For all these reasons, particularly the doubtful outcome and costs involved, the extensive time such litigation takes and Canadians' historic reluctance to use the courts, Canadian Property Damage cases have never been widely considered.

**How has this situation changed at this time?**

Recently several of the major manufacturers of sprayed fireproofing and acoustic finishes (in particular W.R. Grace, Federal Mogul and U.S. Mineral) have either been forced into bankruptcy protection or voluntarily entered Bankruptcy Court in order to settle forever all potential liability arising from their manufacture, use or installation of asbestos products. These filings require these companies to notify and seek settlements not only within the United States but worldwide. Canada is in fact specifically named as eligible in some of the filings. It is likely that the standard of proof and even the applicable jurisdiction may have changed as a result of these companies now being in bankruptcy negotiation. It should be noted that these companies (at least Federal Mogul and W.R.

# EXHIBIT B

Grace) are not bankrupt and in fact are quite solvent and will continue operating. The bankruptcy is, however their method of avoiding the increasing number of frivolous claims from unimpaired plaintiffs (plaintiffs with no bodily injury) who are suing based on any exposure to their product whatsoever. Due to their financial situation U.S. Mineral is unlikely to have much available money and is of marginal interest in the cost recovery litigation.

**How would the system work and what are possible time frames?**

Based on the prior asbestos-related bankruptcies of National Gypsum and Celotex Corporation it is possible to make some predictions (although of course each case is different). Typically the Bankruptcy resolution will require negotiation between the Defendant and the various groups of creditors. These creditors fall into four main categories:
  Trade Creditors
  Impaired Personal Injury Plaintiffs (with actual asbestos disease)
  Property Damage Plaintiffs
  Unimpaired Personal Injury Plaintiffs

In the case of W.R. Grace there may be a fifth group of claimants related to the use of Zonolite Attic Insulation. Once the amount of money available from the Defendants is determined by negotiation, then these groups of creditors negotiate a division of the available funds. In the case of W.R. Grace and Federal Mogul most of their assets will become property of the creditors but the companies will remain operational and free of liabilities as long as the settlement agreement is acceptable to 75% of the plaintiffs in each plaintiff group.

These negotiations may take from one year up to five years to complete based on the experience to date in previous asbestos bankruptcies. Once the bankruptcy proceedings are complete, payment of creditors may take an additional two years or more depending on the complexity of the cases and the proof of claims required.

**How can Canadian Property Owners take part in the process?**

Since W.R. Grace and Federal Mogul have allocated money to this settlement the division of the money between the four creditor groups becomes the most difficult part of the settlement. The Pinchin Group of Companies have arranged with the pre-eminent U.S. Property Damage Lawyer, Dan Speights of Speights and Runyan to represent our Canadian clients in the initial filings, bankruptcy hearings and settlement negotiations. Although the subject companies have advertised the settlements nationally and in theory a Canadian owner or their lawyer could independently file, we believe the cost involved will be significant and the potential for success for a Canadian property owner proceeding independently is very low. Basically both Pinchin and Speights and Runyan will proceed on a contingency basis for any of our Canadian clients. Therefore with the possible exception of more conclusive analytical work, a Canadian property owner can pursue the course with the greatest potential for success at no cost other than a small amount of time spent in collecting data in your buildings.

**What are the potential up-sides?**

Once again this answer will depend on the amount of money made available to the Property Damage group but, based on prior settlements, the amount paid may be up to 50% of the pure removal or abatement cost. (excluding costs related to refit of the building, loss of lease income, etc.) As noted above, you should be aware that payment of successful claims could take years, however, on this contingency basis, there will be no need for you or your representative to appear in court or any costs of further representation.

**Who is Dan Speights and why does this route have the greatest chance of success?**

Dan Speights has been involved in Property Damage (PD) Litigation over asbestos since 1982. His prime concerns and successes have been related to sprayed fireproofing and acoustic finishes (collectively referred to in the U.S. as Surface Treatments). He obtained the first settlements on behalf of schools from Surface Treatment Manufacturers in 1984. He was the lead attorney in the first successful PD litigation in 1986. He, along with Alan Runyan, has spent more than 10,000 hours in compiling documents and depositions related to Surface Treatment Manufacturing in general and W.R. Grace in particular. His firm has had a long string of successful individual cases against the Surface Defendants. Of particular value to our Canadian clients is the fact that Speights and Runyan filed a class action in 1992 in South Carolina for all commercial building owners (including Canadian owners) which will preserve your rights in the US Bankruptcy proceedings.

Of particular importance at this time is Mr. Speights' role in the current bankruptcies. He is co-chair of the PD Committee in the Grace Bankruptcy, he is one of two PD representatives in the joint asbestos committee in U.S. Mineral Bankruptcy and he is one of only two lawyers active in Federal Mogul. As a result of this daily involvement in the bankruptcies our clients will have a representative who is present at the negotiating table at all times. This, in our opinion, is the best and possibly the only way, for a Canadian property owner to be successful. More details on the qualifications and successes of Dan Speights and Speights and Runyon can be found at www.speightsrunyan.com.

**How do I proceed?**

It is necessary for a Pinchin representative to work with your staff to complete the forms in a manner that is acceptable to the U.S. Courts. We will have the best guidance and advice from Dan Speights in this matter. It is very important to realize that not all friable asbestos is included or covered by these bankruptcies, as this applies only to the products of Grace, Federal Mogul and to a lesser extent (due to the limited money available), U.S. Mineral. Pinchin's staff will be able to assist in this product identification (we are familiar with the products in many buildings) and ensure that all appropriate materials are included. You should be prepared to collect and copy asbestos surveys and analysis

reports. You may have to commit some time to outline the asbestos removal history and in assisting our staff in collecting further samples for product identification. The time commitment per building on your part will likely be several hours depending on the complexity of the building. At some later time (once the bankruptcy has been settled but prior to disbursement of funds) some additional testing of material from your building may be necessary for verification of the manufacturer.

**Are there any other important facts related to the claim?**

First of all this is the very last opportunity for Canadian Property owners will ever have to file a claim for damage. The time lines are very tight. The claim must be filed by dates ranging from February 20, 2003 to March 31, 2003. With the time needed to complete the forms, time is absolutely critical. Although it will take years for these issues to be resolved, there is no other more expedient way to proceed.

These cases will only be taken on a contingency bases. This is primarily due to US practices in this litigation and to compensate for the time spent to date by Speights and Runyon to reach this position. It will be necessary for you to sign very simple contingency agreements for the work to be performed by Pinchin and Speights and Runyon.

The settlement (if successful) will apply equally to money already spent on asbestos removal and the future likely cost of asbestos removal. While it may be necessary at some later time to prove actual costs of removal, it may be possible to utilize a settlement negotiation to arrive at an average cost.

In order to proceed or to discuss the issue please contact the following as soon as possible

| Location | Contact | Telephone # | E-mail Address |
|---|---|---|---|
| Atlantic Canada | Ron LeBlanc | 902-461-9999 | rleblanc@pinchinleblanc.com |
| Ontario & National Portfolios | Don Pinchin Robin Connelly | 905-507-4855 | dpinchin@pinchin.com rconnelly@pinchin.com |
| Alberta & Saskatchewan | John Holland | 604-244-8101 | jholland@phhenv.com |
| | | | |