IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| W. R. GRACE & CO., et al. | ) Chapter 11 |
| | ) |
| Debtors. | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |

**Hearing Date: April 9, 2007**
**Pittsburgh, PA**
**Response Deadline: March 19, 2007**
**Related Docket No: 9315**

### DEBTORS' MOTION AND MEMORANDUM FOR AN ORDER PURSUANT TO F.R.B.P. 7056 DISALLOWING AND EXPUNGING FIFTY-TWO (52) LIBBY CLAIMS PRESENTING NO DAMAGE

The Debtors request the entry of an order disallowing and expunging the 52 Asbestos Property Damage ("PD") Claims that are identified on the attached Rule 1006 Summary of Voluminous Writings (the "Libby Claims"). These claims were filed on account of properties located in the Libby, Montana area, where the United States Environmental Protection Agency ("EPA") has taken exclusive responsibility for inspecting properties for the presence of asbestos and, if EPA determines that cleanup is necessary, remediating such properties.

EPA has obtained judgment directing Grace to pay for these cleanup efforts. Therefore, any properties that EPA determines need remediation have been or will be remediated by EPA using monies from Grace at *no cost to the claimants*, and the Libby Claims serve as unsubstantiated attempt to recover twice on account of the same injury. The Libby claimants certainly are aware of this process; in most cases EPA has already inspected, and in some instances already remediated, their respective properties.

In particular, EPA has already inspected 48 of the 52 properties for which the Libby Claims were filed. For 22 of these properties, EPA's testing did not find asbestos on the property and, therefore, EPA determined that remediation will not be needed. For 26 properties, EPA found that some asbestos was present. EPA has remediated 20 of these properties, and EPA is in the process of remediating the other six (6) properties at no cost to the claimants. The remaining four (4) claims are likewise eligible for EPA inspection and, if necessary, remediation by EPA.

Accordingly, by filing PD Proofs of Claim in these Chapter 11 cases, the Libby claimants are seeking double recovery on account of properties where EPA will perform any necessary remediation (at no cost to the claimant).[1] Therefore, the Libby claimants do not have any compensable injury for which Grace is liable. The Debtors request that the Court enter an order disallowing and expunging the Libby Claims.

## FACTS AND BACKGROUND

Originally, 58 PD Claims were filed for properties located in or around Libby, Montana. Only 52 of those claims remain pending.[2] These 52 Libby Claims, identified on the Rule 1006 Summary attached hereto as Exhibit A, seek recovery from the Debtors for alleged property damage stemming from Grace's vermiculite mining and milling operations.

Grace's involvement in Libby began in 1963, when W. R. Grace & Co. purchased the Zonolite Company. The Zonolite Company owned and operated a vermiculite mine at

---

[1] Grace has contested and disputes the extent of any contamination at these Libby properties, and Grace has and will continue to contest and dispute the extent of the remediations that EPA has undertaken and is continuing to undertake. However, the fact remains that because EPA is remediating these properties, allowing the Libby Claimants to recover from both Grace and EPA would constitute double recovery.

[2] Six of these 58 claims were subject to an order of default entered on December 21, 2005, per Docket No. 11394. They are claim numbers: 2542, 2624, 5566, 5567, 5568, and 7045.

Vermiculite Mountain in northwestern Montana and a related processing facility in Libby. After the acquisition, Grace continued the mining and processing operations until September 1990, at which time the operations permanently ceased. The vermiculite mined from Vermiculite Mountain contained low levels of asbestos.

Over the years, residual vermiculite and other materials from the mine allegedly came to be located at properties in Libby. At some Libby residences vermiculite was used in gardens for soil enhancement and allegedly was found in some driveways. It has also been alleged that vermiculite was "tracked in" to residences from outdoors, and that asbestos originating from the mine entered residences by other means.

In November 1999, EPA sent an Emergency Response Team to investigate concerns raised by news articles about alleged asbestos concerns at certain Libby properties. Since that time, EPA has been actively involved inspecting properties for asbestos and overseeing remediation activities in the Libby area.

On February 26, 2002, EPA proposed adding the Libby area (the "Libby Site") to the National Priorities List (the "NPL"). The NPL is a list of hazardous waste sites that are eligible for governmentally-funded cleanup under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (as amended) ("CERCLA" or "Superfund"). Further, the State of Montana has designated the Libby Site as its highest priority site pursuant to CERCLA § 105(8)(b). 42 U.S.C. 9605 (8)(b). On October 24, 2002, the Libby Site's listing on the NPL became final. Such a listing enables a site to receive federal funds for cleanup. CERCLA authorizes EPA to seek recovery of such funds from persons qualifying as responsible under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

In 2002, pursuant to Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1), EPA began cleanups of various Libby locations including the interiors and exteriors of Libby residences. EPA has taken responsibility for all facets of the residential cleanups, including temporarily relocating residents while cleanups are in progress. Further, EPA has developed specific plans for conducting the residential cleanups. The EPA describes its remediation process as "remov[ing] vermiculite and restor[ing] the home, indoor and outdoor, to its pre-removal condition." *Id.* The EPA has represented that, "[w]hen EPA is finished cleaning a house, we believe it to be safe." 03/13/2003 LCAG Mtg. Notes, p. 5 (attached as Exhibit B). The EPA has further stated, "when the cleanup [of Libby] is finished…it will be safer to live here [Libby] than anywhere else in the country." *Id.* As of September 14, 2006, the EPA had cleaned 730 Libby properties, and the EPA has stated that it intends to clean up all remaining properties that it believes require remediation. 9/14/2006 LCAG Mtg. Notes, p. 1. (attached as Exhibit C).

With respect to monies spent by the EPA on Libby properties, the agency has stated that, it "will be trying to get back as much of these costs as possible from W. R. Grace." 02/13/2003 Libby Community Action Group ("LCAG") Mtg. Notes, p. 3 (attached as Exhibit D). Indeed, in 2002, the United States sued Grace under CERCLA, seeking to recover costs that it had incurred (and will occur) to investigate and remediate properties within the Libby Site. Specifically, EPA sought $55,166,026.56, as well as prejudgment interest that had accrued since May 23, 2000, and a declaratory judgment as to the liability of Grace for future response costs.

On December 19, 2002, the United States District Court for the District of Montana granted judgment in favor of the United States and found Grace liable to EPA for all past and future cleanup costs. *United States v. W.R. Grace*, 280 F.Supp. 2d 1135 (D. Mont. 2002). The Ninth Circuit affirmed and found that, "the EPA is entitled to recover [from Grace] the full costs

of its removal action in Libby as found by the district court." *United States v. W.R. Grace*, 429 F.3d 1224, 1249 (9th Cir. 2005). Grace has contested and disputes the extent of any contamination at the Libby-area properties, and Grace has and will continue to contest and dispute the extent of the remediations that EPA has undertaken and is continuing to undertake. However, the fact remains that EPA is remediating the properties represented in the Libby Claims.

Despite EPA's ongoing remediation efforts, on or about March 31, 2003, the Libby Claimants filed their respective proofs of claim in these Chapter 11 Cases. On September 1, 2005, the Debtors filed their 15th Omnibus Objection to Asbestos PD Claims [Dkt. No. 9315]. The Debtors objected to all of the Libby Claims on multiple grounds, including that these claims are deficient as a matter of law because EPA has taken exclusive responsibility for remediating the Libby properties, and that all of the subject properties have been, are currently being, or will be investigated and remediated where necessary by EPA. *Id.* at 60, ¶ 198.

During the course of EPA's inspection and remediation work, EPA issues reports and correspondence to Libby residents that inform the residents of the status of their properties. In particular, during the EPA's initial investigation of the property, EPA completes a "Contaminant Screening Study," which documents the observations of the field team during their inspection of the property. Then, for properties where samples are taken during field inspection, EPA generates a lab report, which indicates whether the samples contain asbestos. With respect to properties that have been remediated, "[a]fter cleanup of their property is finished, EPA sends a letter notifying the property owner that the cleanup has been completed." 01/13/2005 LCAG Mtg. Notes, p. 1 (attached as Exhibit E). This letter is commonly referred to as a "Cleanup Completion Letter." *Id.*

As the attached Rule 1006 Summary indicates, EPA has already inspected 48 of the 52 properties for which the Libby Claims were filed. *See* Exhibit A.

- For 22 of these properties, the EPA's testing did not find any asbestos on the property and, therefore, remediation will not be needed (collectively, the "Uncontaminated Properties"). *See id.*

- For 26 properties, EPA examined the properties and determined that asbestos was present. Of these 26 properties, EPA has already remediated 20 of the properties (collectively, the "Remediated Properties"), and EPA is in the process of remediating the remaining six (6) properties that it determines require such remediation (collectively, the "Potential Remediation Properties"). *See id.*

The remaining four claims were filed for properties that have not yet been inspected by the EPA ("the Pending Properties"). One of the Pending Properties is located in Libby, Montana, and is therefore eligible to be inspected by EPA. The three remaining Pending Properties are located in Troy, Montana, which is also included in the Libby Site (the "Troy Claims"). *See* Map of EPA Superfund Area from EPA Website (attached as Exhibit F). To date, these properties have not been examined, but they are all eligible for inspection (and, if necessary, remediation) by EPA.

## ARGUMENT[3]

The undisputed facts establish that the Libby Claimants have not satisfied their burdens of proof with respect to their claims. That is because their "property <u>damage</u> claims" were

---

[3] The legal standard for the relief requested in this Motion is described in Debtors' "Road Map" of Summary Judgment Motions to Expunge Various Asbestos Property Damage Claims, which is being filed contemporaneously with this Motion.

submitted for properties that <u>are not damaged</u>. Specifically, the Libby claimants' properties: (1) were determined by the EPA to never have been contaminated in the first place; (2) have already been remediated by the EPA; (3) are currently in the process of being remediated by the EPA; or (4) are eligible to be inspected and (if the EPA deems necessary) remediated by the EPA. By attempting to seek additional recovery on account of properties that are not damaged, the Libby Claimants improperly are attempting to collect twice for a single alleged injury.

Under Montana law,[4] the Libby Claimants must establish, among other things, that their respective properties contain physical injury that was unlawfully caused by Grace. *See, e.g., Spackman v. Ralph M. Parsons Co.*, 414 P.2d 918 (Mont. 1966); *Wilhelm v. City of Great Falls*, 732 P.2d 1315 (Mont. 1987). However, in light of EPA's comprehensive residential cleanup program, the Libby Claimants cannot demonstrate any such injury.[5]

For the 22 Uncontaminated Properties, EPA has already inspected the properties and determined that asbestos was not present. Therefore, these properties require no remediation, and the claimants cannot satisfy their burden of establishing that the property currently has physical injury that was caused by Grace.

For the 20 Remediated Properties, EPA performed any allegedly necessary cleanup, eliminating any alleged injury to the properties. Therefore, while these properties allegedly may have once been damaged (which Grace denies), any alleged damage has been eliminated at no cost to claimants.

---

[4] The Court applies Montana substantive law to the Libby Claims. *Butner v. U.S.*, 440 U.S. 48 (1979).

[5] The Libby Claimants may argue that their claims are for "stigma," but such an argument would be futile. This Court has already determined on more than one occasion that asbestos PD claimants must prove actual property damage and cannot recover for "stigma," because "stigma" claims are "too remote and speculative." *ZAI Memorandum Opinion*, December 14, 2006 (Dkt No. 14014); see also *In re W. R. Grace & Co.*, 346 B.R. 672 (Bankr. D. Del. 2006).

For the six (6) Potential Remediation Properties, EPA inspected the subject properties and determined that there was some asbestos on the property. Accordingly, the EPA may determine that remediation is necessary for these properties. To the extent that the EPA determines that any of these properties require cleanup, the EPA will do so, at no cost to claimants. Therefore, to the extent that any of these claimants allege to have sustained property damage, the EPA is in the process of remediating, and any claim for recovery from Grace would constitute "double dipping."

Finally, the four (4) Pending Claims were submitted on behalf of properties located in Troy, Montana and Libby, Montana. Libby and Troy are both included in the Libby Superfund site. Accordingly, the EPA has likewise committed itself to inspecting (and, if necessary, remediating) these properties for which these claims were submitted. Therefore, to the extent these claimants request inspection and the EPA determines the properties need cleanup, the properties will be cleaned by the EPA at no cost to claimants.

## CONCLUSION

By filing PD Proofs of Claim in these Chapter 11 cases, the Libby Claimants are seeking double-recovery on account of properties where EPA has already performed (or is in the process of performing) any necessary remediation. As a result, the Libby Claimants have not established – and could not possibly establish – compensable injury for which Grace is liable. Therefore, the Libby Claims are deficient as a matter of law, and the Debtors request that the Court enter an order disallowing and expunging each of the 52 Libby Claims identified on Exhibit A hereto.

Dated: February 16, 2007

REED SMITH LLP
James J. Restivo, Jr. (Bar No. 10113)
Lawrence E. Flatley (Bar No. 21871)
Douglas E. Cameron (Bar No. 41644)
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: (412) 288-3131
Facsimile: (412) 288-3063

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Lisa Esayian
Samuel L. Blatnick
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL YOUNG
JONES & WEINTRAUB LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

By: _____
Co-Counsel for the Debtors and
Debtors in Possession