# EXHIBIT B

1

```
 1        IN THE CIRCUIT COURT
          OF JASPER COUNTY, MISSISSIPPI
 2

 3

 4   MARION C. BENTLEY, SR., et al.,
          Plaintiffs,
 5
     VERSUS              CIVIL ACTION NO. 92-7655
 6

 7   CRANE CO., et al.,
          Defendants.
 8

 9

10
          DEPOSITION OF DR. PHILLIP H. LUCAS
11
     Taken at the Country Club of Jackson,
12   Jackson, Mississippi, on Saturday,
     June 15, 2002, beginning at 8:00 a.m.
13

14

15
     REPORTED BY:
16

17      CANDACE O'BARR, CSR #1260
        State-Wide Reporters
18      764 Water Street (39530)
        Post Office Box 389 (39533)
19      Biloxi, Mississippi
        Telephone: (228) 432-0770
20      Fax: (228) 432-0690

21   Jackson Address:
```

40

1    A.    That's correct.

2    Q.    Is there a reason why you don't carry

3    malpractice insurance for the B-Read work?

4    A.    I don't find the need to do so.

5    Q.    Why?

6    A.    I suppose it never occurred to me.

7    Q.    Do you consider the individuals that

8    you are doing B-Reads for, whether they are

9    narratives or ILO forms, your patient? Are they

10    your patients?

11    A.    They are not my patients in the

12    strictest since of the term. I feel a

13    responsibility to read the radiograph as

14    accurately as I can.

15    Q.    Okay. Do you believe that there is a

16    physician/patient relationship between you and

17    those individuals that you are reading the

18    films, such as Mr. Bentley, Mr. Clay and

19    Richardson?

20    A.    I feel the need to -- I feel the need

21    to point out any abnormality that I think needs

22  to be addressed; tumors, large hearts, for

23  example. And I so notate that in the report.

24  It is my understanding with the individuals with

25  whom -- for whom I read the films, that they

133

1  failure or, hopefully, I would have said

2  something about it. So I would doubt that heart

3  disease -- But the point is, I know nothing

4  about this gentleman. I described some findings

5  and the significance, I have no idea. The

6  significance of those findings, I have no idea.

7      Q. But it could be consistent with a lot

8  of disease processes for Mr. Bentley and Mr.

9  Clay and Mr. Richardson other than asbestos?

10     A. Correct.

11     Q. Why don't you note that in the report

12 that it could be consistent with these other

13 processes?

14     A. I'm asked to be a consultant by, in

15 this case, Mr. Sakalarios and his firms to see

16 if this gentleman has asbestos-related disease.

17 They are not asking me if he has got anything

18 else. This finding -- these findings are

19 consistent with it, if this gentleman has been

20 exposed, if the latent period has occurred,

21 etc., etc. It would be very cumbersome to list

22   100 different things that it could be, because

23   Mr. Sakalarios is not trying to treat this

24   individual. Now, if this was in my medical

25   practice, I'd give a differential diagnosis.

174

1    days off, two days other than the standard

2    holidays and weekend?

3        A.   Correct.

4    MR. REDMANN:

5            I think that's all I have. Thank

6    you, Doctor.

7    MR. SAKALARIOS:

8            I've go some. So you want me to go

9    ahead and go?

10                 EXAMINATION

11   BY MR. SAKALARIOS:

12       Q.   All right. Mr. Setter asked you

13   about some work that you did in Ohio, some

14   x-rays that you had read in Ohio. When you read

15   those x-rays, were -- have you ever had a

16   practice in Ohio?

17       A.   No.

18       Q.   Do you have any patients in Ohio,

19   i.e., did anybody contact you and ask you to

20   particularly read their x-rays for them?

21       A.   No.

22   Q. In the capacity as a doctor/patient?

23   A. No.

24   Q. The x-rays that you took in Ohio,

25   then, were they sent to you by lawyers?

175

1   A. Yes.

2   Q. And did you read those x-rays for

3   lawyers and not for individual patients?

4   A. That's correct.

5   Q. Okay. And when you were paid for

6   those x-rays, were you paid by lawyers or by

7   individuals?

8   A. By individuals.

9   Q. That you read the x-rays?

10  A. Lawyers.

11  Q. By the lawyers. Okay. And the

12  medical reports that you sent, were they sent

13  specifically to the lawyers for the lawyer's use

14  or were they sent to be sent to the individuals

15  for whom the x-rays were taken, to your

16  knowledge?

17  MR. SETTER:

18      Object to form. Calls for

19  speculation. Assumes facts not in evidence.

20  MR. SAKALARIOS:

21  Q. Well, you know who you sent them to,

22    don't you?

23    A.    They were sent to the lawyers.

24    Q.    Did you send them to the patients for

25    the people that you read -- that the x-rays were

STATE-WIDE REPORTERS (228) 432-0770