# EXHIBIT A

# WR Grace

SR00000461 ▮

## Bankruptcy Form 10

### Index Sheet

Claim Number:     00006049                    Receive Date:    03/25/2003

**Multiple Claim Reference**

Claim Number      _____     ☐  MMPOC     Medical Monitoring Claim Form

                                  ☐  PDPOC     Property Damage

                                  ☐  NAPO      Non-Asbestos Claim Form

                                  ☐           Amended

Claim Number      _____     ☐  MMPOC     Medical Monitoring Claim Form

                                  ☐  PDPOC     Property Damage

                                  ☐  NAPO      Non-Asbestos Claim Form

                                  ☐           Amended

**Attorney Information**

Firm Number:                      Firm Name:

Attorney Number:                  Attorney Name:

Zip Code:

Cover Letter Location Number:

| Attachments<br>Medical Monitoring | Attachments<br>Property Damage | Non-Asbestos |
|---|---|---|
| ☐ TBD | ☐ TBD | ☒ Other Attachments |
| ☐ TBD | ☐ TBD | |
| ☐ TBD | ☐ TBD | |
| ☐ TBD | ☐ TBD | |
| ☐ TBD | ☐ TBD | |
| | ☐ Other Attachments | |

| **Other** | ☐ Non-Standard Form | |
|---|---|---|
| | ☐ Amended | |
| | ☐ Post-Deadline Postmark Date | |

▮ Box/Batch: WRBF0026/WRBF0102                    Document Number: WRBF005051 ▮

**Claim No. 6049 p. 01**

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF Delaware

**GRACE NON-ASBESTOS PROOF OF CLAIM FORM**

| | |
|---|---|
| Name of Debtor:[1]  W. R. Grace & Co., et al,1 | Case Number 01-01139 (JFK) |

**NOTE: Do not use this form to assert an Asbestos Personal Injury Claim, a Settled Asbestos Claim or a Zonolite Attic Insulation Claim. Those claims will be subject to a separate claims submission process. This form should also not be used to file a claim for an Asbestos Property Damage Claim or Medical Monitoring Claim. A specialized proof of claim form for each of these claims should be filed.**

Name of Creditor (The person or other entity to whom the Debtor owes money or property):

Circle Bar Ranch,Inc. Cleve Preece,President

Name and address where notices should be sent:

738 Ashley Rd.
P.O. Box 696
Craig, Co. 81626

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☒ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies Debtor:

Check here ☐ replaces
if this claim ☐ amends a previously filed claim, dated:_____

Corporate Name, Common Name, and/or d/b/a name of specific Debtor against whom the claim is asserted:

W.R. Grace & Co.

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Environmental liability
☐ Money loaned
☐ Non-asbestos personal injury/wrongful death
☐ Taxes
☒ Other extension for option to purchase

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)

Your SS #:_____
Unpaid compensation for services performed
from _____ to _____ (date)

**2. Date debt was incurred:** June 26,1975

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ 3,536,552.60

If all or part of your claim is secured or entitled to priority, also complete Item 5 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Classification of Claim.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured Nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. **CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.**

☒ SECURED CLAIM (check this box if your claim is secured by collateral, including a right of setoff.)

Brief Description of Collateral:

☐ Real Estate   ☒ Other (Describe briefly)
recorded and signed documents

Amount of arrearage and other charges at time case filed included in secured claim above, if any: $_____

Attach evidence of perfection of security interest

☐ UNSECURED NONPRIORITY CLAIM

A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM - Specify the priority of the claim.

☐ Wages, salaries, or commissions (up to $4650), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(7).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Acknowledgement:** Upon receipt and processing of this Proof of Claim, you will receive an acknowledgement card indicating the date of filing and your unique claim number. If you want a file stamped copy of the Proof of Claim form itself, enclose a self addressed envelope and copy of this proof of claim form.

This Space is for Court Use Only

WR Grace       BF.26.102.5051
               **00006049**
SR=461

| | |
|---|---|
| Date  3/23/03 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):  Cleve Preece, President |

REC'D MAR 25 2003

[1] See General Instructions and Claims Bar Date Notice and its exhibits for names of all Debtors and "other names" used by the Debtors.

**Claim No. 6049 p. 02**

# SPECIFIC INSTRUCTIONS FOR COMPLETING
## GRACE NON-ASBESTOS PROOF OF CLAIM FORMS

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, there may be exceptions to these general[1] rules.*

This Proof of Claim form is for Creditors who have **Non-Asbestos Claims** against any of the Debtors. **Non-Asbestos Claims** are any claims against the Debtors as of a time immediately preceding the commencement of the Chapter 11 cases on April 2, 2001 other than Asbestos Personal Injury Claims, Asbestos Property Damage Claims, Zonolite Attic Insulation Claims, Settled Asbestos Claims or Medical Monitoring Claims, as defined on the enclosed General Instructions. More specifically, **Non-Asbestos Claims** are those claims against one or more of the Debtors, whether in the nature of or sounding in tort, contract, warranty or any other theory of law or equity for, relating to or arising by reason of, directly or indirectly, any injury, damage or economic loss caused or allegedly caused directly or indirectly by any of the Debtors or any products or materials manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors and arising or allegedly arising directly or indirectly, from acts or omissions of one or more of the Debtors, including, but not limited to, all claims, debts, obligations or liabilities for compensatory and punitive damages.

**Administrative Expenses:** Those claims for, among other things, the actual, necessary costs and expenses of preserving the estate as defined in Section 503 of the Bankruptcy Code that arose after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to Section 503 of the Bankruptcy Code. This form should not be used to make a claim for an administrative expense.

**Secured Claim:** A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property. Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right to setoff), the creditor's claim may be a secured claim. (See also Unsecured Claim.)

**Unsecured Claim:** If a claim is not a secured claim, it is an unsecured claim. Unsecured claims are those claims for which a creditor has no lien on the debtor's property or the property on which a creditor has a lien is not worth enough to pay the creditor in full.

**Unsecured Nonpriority Claim:** Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as Unsecured Nonpriority Claims.

**Information about Creditor:** Complete this section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the court which sent notice, or if this proof of claim replaces or amends a proof of claim that was already filed, check the appropriate box on the form.

1.      **Basis for Claim:** Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in your social security number and the dates of work for which you were not paid.

2.      **Date Debt Incurred:** Fill in the date the debt was first owed by the debtor.

3.      **Court Judgments:** If you have a court judgment for this debt, state the date the court entered the judgment.

4.      **Amount of Claim:** Insert the amount of claim at the time the case was filed in the appropriate box based on your selected Classification of Claim in item 5. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

5.      **Classification of Claim:** Check either Secured, Unsecured Nonpriority or Unsecured Priority as appropriate. (See Definitions above.)

        **Unsecured Priority Claim:** Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See Definitions, above.) A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

6.      **Credits:** By signing this proof of claim, you are stating under oath that in calculating the amount of your claim, you have given the debtor credit for all payments received from the debtor.

7.      **Supporting Documents:** You must attach to this proof of claim form, copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

*Be sure to date the claim and place original signature of claimant or person making claim for creditor where indicated at the bottom of the claim form. Please type or print name of individual under the signature. Be sure all items are answered on the claim form. If not applicable, insert "Not Applicable".*

RETURN CLAIM FORM (WITH ATTACHMENTS, IF ANY) TO THE FOLLOWING CLAIMS AGENT FOR THE DEBTORS:

        Claims Processing Agent
        Re: W. R. Grace & Co. Bankruptcy
        P.O. Box 1620
        Faribault, MN 55021-1620

**The Bar Date for filing all NON-ASBESTOS CLAIMS against the Debtors is March 31, 2003 at 4:00 p.m. Eastern Time.**

# *Circle Bar Ranch, Inc,*

*P.O. Box 696 Craig, CO 81626 970-824-5127*

March 23, 2003

Claims Processing Agent
RE: W.R. Grace & Co. Bankruptcy
Faribault Town Square 201 S. Lyndale
Faribault, MN 55021

To Whom It May Concern:

In 1974 Circle Bar Ranch, Inc. entered into an exploration agreement with the option to purchase properties "A & C". Through the years before W.R. Grace purchased the property W. R. Grace and Circle Bar Ranch, Inc. entered into several letter agreements.

W. R. Grace requested an extension to purchase the properties. In June of 1975 Circle Bar Ranch, Inc. granted W. R. Grace an extension on properties "A & C" for five years. The consideration for the extensions W. R. Grace was to pay Circle Bar Ranch, Inc. $.05/ton of coal mined and produced by W.R. Grace or those in privity of contract with W. R. Grace, which royalty shall continue to be paid until the total of all such royalty payments paid equals $1,000,000.00 on property "A" and $1,000,000.00 on property "C".

In December 1979 Circle Bar Ranch, Inc. and W. R. Grace entered into another exploration agreement with options to purchase property "D". Paragraph 16 of the agreement states that this agreement may be assigned with the owners' (Circle Bar Ranch, Inc.) approval and notwithstanding an assignment of this agreement, W. R. Grace shall remain responsible for all obligations. Paragraph 20 also states that W. R. Grace will pay Circle Bar Ranch, Inc. $05/ton of coal mined; under this option W. R. Grace contracted to pay an additional $1,536,552.00 for property "D". The total obligation of W. R. Grace to Circle Bar Ranch, Inc. is $3,536,552.00.

In the February 25, 1980 letter agreement, in paragraph 2, it is agreed that "A" & "C" options can only be assigned to a financially responsible assignee with approval of owner.

In the September 29, 1980 letter agreement, Circle Bar Ranch, Inc. did give consent to assignments by W. R. Grace of all its rights under "A", "C" and "D" options to a wholly owned subsidiary of W. R. Grace or to a general partnership, the general partners of which will be wholly owned subsidiaries of W. R. Grace.

In October of 1980, W. R. Grace exercised its options to purchase properties "A", "C" and "D".

In 1995 W. R. Grace sold properties "A", "C" and "D" to Cottonwood Land Company (Peabody Coal Company). W. R. Grace did not inform Circle Bar Ranch, Inc. nor did they acquire permission to sell properties to Cottonwood Land Company. They also did not inform Cottonwood Land Company of the assignment of royalty payments that should have been passed on to them with the sale of the properties.

Cottonwood Land Company has informed Circle Bar Ranch, Inc. that they are not responsible for these royalty payments. (See enclosed letter).

W. R. Grace also agrees that they have no dispute with Circle Bar Ranch, Inc.. They do agree that they indeed do owe the money when the coal is mined. (See letter dated June 19, 1998).

Also, I am submitting a legal notice showing interest in opening a coal mine in the area covered by these agreements.

I have spoken on March 7, 2003 to Mr. Charles Margolf, former Director of Western Coal Operations, concerning the intent and validity of these agreements. He informed me that he had submitted a letter to W. R. Grace in 1997 explaining the intent and validity of these agreements. He also informed me that he would be willing to testify if need be.

W.R. Grace did not follow the letter agreements as to informing Circle Bar Ranch, Inc. of the sale and in obtaining permission for the sale of the property. Nor did they inform Cottonwood Land Company of the assignment of royalty payments that are tied to the property.

With the W. R. Grace bankruptcy action and the possibility of them going out of business, I believe that there is no protection for Circle Bar Ranch, Inc. to receive the royalty payments that are rightfully due them. There has been no consideration shown to the agreements made between W. R. Grace and Circle Bar Ranch, Inc..

It is our desire that W. R. Grace should take responsibility for ignoring their commitment to the agreements made with Circle Bar Ranch, Inc. and pay their obligations now.

Sincerely yours,

Cleve Preece
President

Enclosures

OTTEN, JOHNSON, ROBINSON, NEFF & RAGONETTI, P.C.
ATTORNEYS AND COUNSELORS AT LAW

1600 COLORADO NATIONAL BUILDING
950 SEVENTEENTH STREET
DENVER, COLORADO 80202

WILLIAM R. NEFF
DIRECT DIAL (303) 575-7504
WRNEFF@OJRNR.COM

TELEPHONE 303-825-8400
FAX 303-825-6525

May 18, 1998

Ms. Sandy Michael
W.R. Grace & Co.
One Town Center Road
Boca Raton, FL  33486

Dear Ms. Michael:

Notwithstanding the promises you made to us in our telephone calls, we have not yet had a response from you regarding our letters dated July 24, 1997, January 28, 1998 and the information provided to you by Charlie Margolf.

If we do not have a response from you by June 10, 1998, confirming the obligations of W.R. Grace & Co. to Circle Bar Ranch, Inc., we will recommend to our client that a declaratory judgment action be commenced in the District Court in Routt County Colorado. We hope that this will not be necessary and that you will have the courtesy to reply to our letters.

Very truly yours,

William R. Neff
for
OTTEN, JOHNSON, ROBINSON,
NEFF & RAGONETTI, P.C.

WRN/lv
Enclosures
323699.2



# DAVIS, GRAHAM & STUBBS LLP

A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW

THOMAS P. JOHNSON
(303) (303) 892-7487

SUITE 4700
370 SEVENTEENTH STREET
DENVER, COLORADO 80202

MAILING ADDRESS
POST OFFICE BOX 185
DENVER, COLORADO 80201-0185

TELEPHONE 303-892-9400    TELEX 413726 DGS DVR UD
FACSIMILE 303-893-1379    CABLE DAVGRAM, DENVER

June 19, 1998

*VIA FACSIMILE AND U.S. MAIL*

William R. Neff, Esq.
Otten, Johnson, Robinson,
  Neff & Ragonetti, P.C.
1600 Colorado National Building
950 Seventeenth Street
Denver, CO 80202

Re:    Williams Fork Mountain Ranch - Royalties

Dear Mr. Neff:

W.R. Grace has referred to our firm your recent correspondence in which you demand that Grace "[confirm] the obligations of W.R. Grace & Co. to Circle Bar Ranch, Inc.", and in which you threaten the commencement of a declaratory judgment action. Our response to your letters, submitted within the scope and protections of Colo. R. Evid. 408, follows.

Apparently, the obligations that you want Grace to "confirm" relate to the royalty described in Paragraph 20 of the December 1, 1979 Exploration Agreement With Option to Purchase which you enclosed with your July 24, 1997 letter. However, those obligations, whatever their scope or meaning, will not vest until certain conditions precedent are satisfied, including the condition that coal from the subject property is "mined, produced and sold". That has not yet occurred, and we are not aware of any current intention by the present owner of the property to mine, produce or sell any coal from the property. Until that occurs (if it ever occurs), any discussion of Grace's obligations is premature.

Your threat of initiating a declaratory judgment action is particularly inappropriate. As you know, a declaratory judgment proceeding may not be used to resolve disputes that are not "ripe for adjudication." See Utah Int'l, Inc. v. Board of Land Comm'rs, 41 Colo. App. 72, 579 P.2d 96 (Colo. Ct. App. 1978) (claim seeking declaratory relief over mineral

DGS-124432.1
June 19, 1998 3:13 pm

o



William R. Neff, Esq.
June 19, 1998
Page 2

rights not justiciable where plaintiff "had no immediate plans to begin [mining] operations" on the land). Grace has no dispute with Circle Bar Ranch now and may never have a dispute with Circle Bar Ranch in the future. To initiate a lawsuit at this time would be legally improper and likely in violation of Colorado's statute governing groundless and frivolous lawsuits.

Please direct any further communications on this issue to me.

Very truly yours,

Thomas P. Johnson



June 5, 2002

Circle Bar Ranch, Inc.
Box 696
Craig, Colorado  81626

RE:  Letter ("Letter") dated October 26, 2001;  W.R. Grace Overriding Royalty Issue

Dear Mr. Preece:

Cottonwood Land Company ("Cottonwood") is in receipt of the above referenced letter and related documentation provided by you concerning an overriding royalty issue(s) related to the property you sold to an affiliate of W.R. Grace in 1980.  This letter is in response to that correspondence.

In addition to the documentation provided by you in your Letter, Cottonwood has obtained a copy of two Warranty Deeds, both dated 12/16/80 from the Circle Bar Ranch ("CBR") to Hayden-Gulch West Coal Company ("HG"), recorded in Book 521, at pages 601 and 615, conveying the subject property and coal in question, which has since been sold and/or conveyed to Cottonwood.

An abbreviated title search of the property was conducted and disclosed only two instruments of record between CBR and W. R. Grace, being two "Memorandum Form of Exploration Agreement with Option to Purchase," ("Memos") both dated March 10, 1978, and filed in Book 448, at pages 584and 591.  These Memos did not indicate or reference any override between the parties relating to the coal. The February 25, 1980 Letter Agreement ("Letter Agreement") and underlying Exploration Agreement with Option to Purchase agreements ("Options") that you have provided to Cottonwood are unrecorded instruments between CBR and W. R. Grace. In your letter you questioned whether or not the prohibition against assignment of these instruments, without the consent of CBR, contained in the Letter Agreement was applicable to the sale from HG to Cottonwood. Any issues concerning CBR's consent to assignment of the Options (presumably to HG) would have been made moot by the actual conveyance of the property by warranty deed from CBR to W. R. Grace's affiliate, HG.

As you are probably well aware of, neither Warranty Deed contains any reservation and/or creation by CBR of an override in the coal being conveyed from CBR to HG. Additionally, the title search has shown that there are no other instruments of record indicating that an override on the



coal existed or was created in favor of CBR; a retention by any party of an override; and/or a conveyance by HG of an override in the coal to any party. This confirms the previous title commitment review conducted by Cottonwood at the acquisition of this real property in 1995.

As such, there is no overriding royalty that has been retained by or created in favor of Circle Bar Ranch, as applicable to Cottonwood Land Company or any successor in interest thereto to the coal interest. Any provisions in the Options or Letter Agreement relating to the property or conveyance of the property would have merged into the original conveyance instrument, the Warranty Deed from CBR to HG. This is called the doctrine of merger of instruments and is intended to protect subsequent purchasers of real property interests from unrecorded instruments, such as the Options and the Letter Agreement.

Finally, there was no agreement between HG and Cottonwood to assume any override between any third party and HG, including the Circle Bar Ranch.

I trust that this response adequately addresses all of the issues raised in your above referenced letter.

Sincerely,
Cottonwood land Company


By: *[signature]*
Its: *Manager*

US Legal Notices

107279-2

**DEPARTMENT OF THE INTERIOR**
**Bureau of Land Management**
**(CO-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-01;COC 59748)**
Notice of Public Hearing and Request for Comments on Environmental Assessment, Maximum Economic Recovery Report, and Fair Market Value; Application for Competitive Coal Lease COC 59748; Colorado.
**AGENCY:** Bureau of Land Management, Interior.
**ACTION:** Notice of Public Hearing
**SUMMARY:** Bureau of Land Management, Colorado State Office, Lakewood, Colorado, hereby gives notice that a public hearing will be held to receive comments on the environmental assessment, maximum economic recovery, and fair market value of federal coal to be offered. An application for coal lease was filed by Juniper Coal Company requesting the Bureau of Land Management offer for competitive lease 14,785.64 acres of federal coal in Routt County, Colorado.
**DATES:** The public hearing will be held at 7 p.m., December 9, 1998. Written comments should be received no later than December 23, 1998.
**ADDRESSES:** The public hearing will be held in the Little Snake Field Office, 455 Emerson St, Craig, Colorado 81625. Written comments should be addressed to the Bureau of Land Management, Little Snake Field Office, at the address given above.
**FOR FURTHER INFORMATION CONTACT:** John Husband, Field Office Manager, Little Snake Field Office at the address above, or by telephone at (970) 826-5089.
**SUPPLEMENTARY INFORMATION:** Bureau of Land Management, Colorado State Office, Lakewood, Colorado, hereby gives notice that a public hearing will be held on December 9, 1998, at 7 p.m., in the Little Snake Field Office at the address given above.
An application for coal lease was filed by Juniper Coal Company requesting the Bureau of Land Management offer for competitive lease federal coal in the lands outside established coal production regions described as:
T. 5 N., R. 88 W., 6th P.M.
   sec. 4, SE1/4NW1/4, and SW1/4;
   sec. 5, lot 5, SW1/4NE1/4, E1/2SW1/4,SW1/4 SW1/4, and SE1/4;
   sec. 7, lot 17, SW1/4 NE1/4, and SE1/4;
      Tract 39, lots 15, and 16;
   sec. 8, all;
   sec. 9, W1/2W1/2, NE1/4NW1/4, and SE1/4SW1/4;
   sec. 17, N1/2N1/2, S1/2NW1/4, and S1/2SW1/4;
   sec. 18, lots 5, 12, 13, 16, and 17, N1/2NE1/4, and SW1/4NE1/4;
      Tract 39, lots 6 and 8;
      Tract 40, lots 7, 9 to 11, inclusive, 14, and 15;
   sec. 19, lots 7, 8, 13, and 14;
   sec. 20, SW1/4NE1/4, NW1/4, and W1/2SE1/4; sec. 30, lots 7, 8, 13, and 14;
   sec. 31, lots 7, 8, 15, and 16.

Tract 45, lot 26;
   sec. 4, SE1/4;
   sec. 9, lots 1, 2, and 7 to 10, inclusive;
   sec. 10, lots 2 to 15, inclusive;
      Tract 45, lots 1, 11, lots 6, 8, 10, and 14 to 19, inclusive;
      Tract 37, lots 3 to 5, inclusive, 7, 9, 11, 12, and 20;
      Tract 47, lots 13, and 21;
      sec. 12, lots 4 to 6, inclusive, an0d 9 to 11, inclusive;
      Tract 47, lots 7, and 8;
   sec. 13, lots 1 to 3, inclusive, and 5 to 17, inclusive;
      Tract 47, lot 4;
   sec. 14, lots 2, 3, and 5 to 17, inclusive;
      Tract 47, lot 1;
      Tract 52, lots 4, and 10;
   sec. 15, lots 1 to 16, inclusive;
   sec. 16, lots 3, 4, 9, and 10, inclusive;
   sec. 21, NE1/4, and S1/2;
   sec. 22, all;
   sec. 23, all;
   sec. 24, all;
   sec. 25, all;
   sec. 26, all;
   sec. 27, all;
   sec. 28, all;
   sec. 33, N1/2;
   sec. 34, N1/2;
   sec. 35, N1/2;
   sec. 36, all.
T. 6 N., R. 88 W., 6th P.M.
   sec. 32, SE1/4NE1/4, E1/2SE1/4, and SW1/4SE1/4;
   sec. 33, N1/2, and N1/2S1/2;
   sec. 34, W1/2NE1/4, E1/2NW1/4, NE1/4SW1/4, N1/2SE1/4, and SE1/4SE1/4;
   sec. 35, SW1/4, N1/2SE1/4, SW1/4SE1/4.
Containing approximately 14,785.64 acres, more or less.
The coal resource to be offered is limited to coal recoverable by underground mining methods.
The purpose of the hearing is to obtain public comments on the environmental assessment and on the following items:
(1) The method of mining to be employed to obtain maximum economic recovery of the coal,
(2) The impact that mining the coal in the proposed leasehold may have on the area, and
(3) The methods of determining the fair market value of the coal to be offered.
Written requests to testify orally at the December 9, 1998, public hearing should be received at the Little Snake Field Office prior to the close of business December 9, 1998. Those who indicate they wish to testify when they register at the hearing may have an opportunity if time is available.
In addition, the public is invited to submit written comments concerning the fair market value and maximum economic recovery of the coal resource. Public comments will be utilized in establishing fair market value for the coal resource in the described lands. Comments should address specific factors related to fair market value including, but not limited to:
1. The quality and quantity of the

would bring in the market place.
3. The cost of producing the coal.
4. The interest rate at which anticipated income streams would be discounted.
5. Depreciation and other accounting factors.
6. The mining method or methods which would achieve maximum economic recovery of the coal.
7. Documented information on the terms and conditions of recent and similar coal land transactions in the lease area, and
8. Any comparable sales data of similar coal lands.
Should any information submitted as comments be considered to be proprietary by the commenter, the information should be labeled as such and stated in the first page of the submission. Written comments on the environmental assessment, maximum economic recovery, and fair market value should be sent to the Little Snake Field Office at the above address prior to close of business on December 23, 1998.
Substantive comments, whether written or oral, will receive equal consideration prior to any lease offering.
The Draft Environmental Assessment and Maximum Economic Recovery Report are available from the Little Snake Field Office upon request.
A copy of the Draft Environmental Assessment, the Maximum Economic Recovery Report, the case file, and the comments submitted by the public, except those portions identified as proprietary by the commenter and meeting exemptions stated in the Freedom of Information Act, will be available for public inspection at the Colorado State Office, 2850 Youngfield, Lakewood, Colorado, 80215.
Karen A. Purvis Solid Minerals Team Resource Services
Published in the Craig Daily Press November 24 and December 1, 1998.

Circle Bar Ranch, Inc.
Box 696
Craig CO 81625
June 26, 1975

W. R. Grace & Co.
Denver Technological Center - Bldg. 40
7935 E. Prentice Ave.
Englewood CO 80110

Gentlemen:

Please refer to that certain Letter Option dated June 24, 1974, and that certain Exploration Agreement with Option to Purchase dated June 24, 1974 attached thereto, under which Circle Bar Ranch, Inc. (hereafter called "CIRCLE BAR") did grant to W. R. Grace & Co. (hereafter called "GRACE") an exclusive and irrevocable option to purchase the property described in said Exploration Agreement with Option to Purchase and in Exhibit A attached thereto containing approximately 4100 acres.

Said Letter Option dated June 24, 1974 is a month to month option which, by its terms, GRACE can extend until 5:00 P.M. December 30, 1975, provided the specified payments of $5,000 for each one month extension is timely paid.

For and in consideration of the payment by GRACE to CIRCLE BAR of One Hundred Dollars, and other good and valuable consideration, the receipt and sufficiency of which CIRCLE BAR hereby acknowledges, CIRCLE BAR agrees to amend said Letter Option, and the Exploration Agreement with Option to Purchase attached thereto, as follows:

(1) GRACE shall have the right to extend its exclusive and irrevocable option from month to month beyond 5:00 P.M. MT December 30, 1975 up to and including 5:00 P.M. MT December 30, 1980.

(2) The consideration to be paid by GRACE to CIRCLE BAR for each such one month extension beyond December 30, 1975, shall be the sum of Two Thousand Five Hundred Dollars ($2,500.00) and each of such payments shall be credited against the purchase price in the event GRACE elects to exercise its option and shall be deducted from the down payment due upon the exercise of said option so that the amount paid down, after crediting all option payments made under said Letter Option dated

- 2 -

June 24, 1974 and all option payments made under this Extension Agreement, shall not exceed 29% of the purchase price.

(3) GRACE agrees that in the event GRACE extends its Option beyond December 30, 1975, and thereafter exercises its option, and in the further event GRACE acquires the right to mine coal from any land located in Township 5 North, Range 89 West, GRACE shall pay to CIRCLE BAR, its successors or assigns, a royalty of five cents ($0.05) per ton of 2000 pounds of coal mined and produced by GRACE (or those in privity of contract with GRACE) from any such lands so located, which royalty shall continue to be paid until the total of all such royalty payments so paid equals the sum of One Million Dollars ($1,000,000.00). Such royalty payments shall be paid to CIRCLE BAR each year within sixty (60) days after the end of each calendar year based on the production records for all coal produced by GRACE (or by others in privity of contract with GRACE) from such lands during each calendar year.

It is understood and agreed that all rights of GRACE shall terminate at 5:00 P.M. MT on the thirtieth (30th) day of any month for which the required payment to extend this option has not been paid.

If the terms above set forth are acceptable to GRACE, please so indicate by signing a copy of this letter in the space provided. Upon your acceptance, said Letter Option dated June 24, 1974, and the Exploration Agreement with Option to Purchase dated June 24, 1974 attached thereto, shall thereupon be amended in the manner herein set forth and, except as expressly amended by the terms of this Letter Agreement, all other terms and provisions of said Letter Option dated June 24, 1974 and the Exploration Agreement with Option to Purchase attached thereto are hereby ratified and confirmed.

CIRCLE BAR:

Circle Bar Ranch, Inc.

Accepted:

W. R. GRACE & CO.
Mining Division

Cleve Preece
President

Charles W. Margoff
Director of Western Coal Operations

**Claim No. 6049 p.13**

*John J. Preece* "C"

Circle Bar Ranch, Inc.
P. O. Box 696
Craig CO 81625
June 25, 1975

W. R. Grace & Co.
Denver Technological Center - Bldg. 40
7935 E. Prentice Ave.
Englewood CO 80110

Gentlemen:

Please refer to that certain Letter Option dated June 24, 1974, and that certain Exploration Agreement with Option to Purchase dated June 24, 1974 attached thereto, under which Circle Bar Ranch, Inc. (hereafter called "CIRCLE BAR") did grant to W. R. Grace & Co. (hereafter called "GRACE") an exclusive and irrevocable option to purchase the property described in said Exploration Agreement with Option to Purchase and in Exhibit A attached thereto containing approximately 5400 acres contingent upon CIRCLE BAR being able to trade its property for that certain ranch known as the Vaughn Preece Ranch containing approximately 4100 deeded acres which GRACE has acquired an option to purchase with the difference in deeded acreage being made up at the applicable rate per acre set forth in said Letter Option dated June 24, 1974.

Said Letter Option dated June 24, 1974 is a month to month option which, by its terms, GRACE can extend until 5:00 P.M. December 30, 1975, provided the specified payments of $5,000 for each one month extension is timely paid.

For and in consideration of the payment by GRACE to CIRCLE BAR of One Hundred Dollars, and other good and valuable consideration, the receipt and sufficiency of which CIRCLE BAR hereby acknowledges, CIRCLE BAR agrees to amend said Letter Option, and the Exploration Agreement with Option to Purchase attached thereto, as follows:

(1)    GRACE shall have the right to extend its exclusive and irrevocable option from month to month beyond 5:00 P.M. MT December 30, 1975 up to and including 5:00 P.M. MT December 30, 1980.

(2)    The consideration to be paid by GRACE to CIRCLE BAR for each such one month extension beyond December 30, 1975, shall be the sum of Two Thousand Five Hundred Dollars ($2,500.00)

- 2 -

and each of such payments made under this
Extension Agreement and all payments made
under said Letter Option dated June 24, 1974
shall be credited against the amount of money
to be paid to CIRCLE BAR at closing for the
difference in deeded acreage between the
deeded acreage described in Exhibit A attached
to said Exploration Agreement with Option to
Purchase and the deeded acreage of the Vaughn
Preece Ranch to be traded therefor.

(3) GRACE agrees that in the event GRACE
extends its option beyond December 30, 1975,
and thereafter exercises its option, and in
the further event GRACE acquires the right to
mine coal from any land located in Township 5
North, Range 89 West, GRACE shall pay to
CIRCLE BAR, its successors or assigns, a
royalty of five cents ($0.05) per ton of 2000
pounds of coal mined and produced by GRACE
(or those in privity of contract with GRACE)
from any such lands so located, which royalty
shall continue to be paid until the total of
all such royalty payments so paid equals the
sum of One Million Dollars ($1,000,000.00).
Such royalty payments shall be paid to CIRCLE
BAR each year within sixty (60) days after
the end of each calendar year based on the
production records for all coal produced by
GRACE (or by others in privity of contract
with GRACE) from such lands during each
calendar year.

(4) As further consideration to CIRCLE BAR,
GRACE agrees to drill a water well at its
expense at a location to be selected by
CIRCLE BAR not to exceed a depth below
collar elevation of five hundred (500) feet
and not to exceed a hole diameter of 6½
inches, and if suitable water be found
therein to case said well at GRACE's expense;
it being understood and agreed that GRACE
makes no representations or warranties of any
kind that water will be found, or if it is
found that such water will be suitable for
use, and if such water well is not successful
GRACE shall have no obligation, liability, or
responsibility to drill or attempt to drill
another well, GRACE's sole responsibility
being to have the well drilled by a licensed
water well driller and to case the well at
GRACE's expense if the well be successful.

– 3 –

It is understood and agreed that all rights of GRACE shall terminate at 5:00 P.M. MT on the thirtieth (30th) day of any month for which the required payment to extend this option has not been paid.

If the terms above set forth are acceptable to GRACE, please so indicate by signing a copy of this letter in the space provided.  Upon your acceptance, said Letter Option dated June 24, 1974, and the Exploration Agreement with Option to Purchase dated June 24, 1974 attached thereto, shall thereupon be amended in the manner herein set forth and, except as expressly amended by the terms of this Letter Agreement, all other terms and provisions of said Letter Option dated June 24, 1974 and the Exploration Agreement with Option to Purchase attached thereto are hereby ratified and confirmed.

CIRCLE BAR:

Circle Bar Ranch, Inc.

Cleve Preece
President

Accepted:

W. R. GRACE & CO.
Mining Division

Charles W. Margolf
Director of Western Coal Operations

February 25, 1980

W.R. Grace & Co.
3333 Quebec Street
Suite 8800
Denver, Colorado 80207

Gentlemen:

You have requested that Circle Bar Ranch, Inc. (the "Owner"), execute an Exploration Agreement with Option to Purchase granting Grace the option to purchase certain property from Owner, commonly known as The Madden Farm. In consideration for the execution by Circle Bar Ranch, Inc., of the Exploration Agreement with Option to Purchase on The Madden Farm, we have agreed that the Exploration Agreements with Option to Purchase previously entered into between Grace and Owner, known as the "A" and "C" options are supplemented and amended as follows:

1. It is understood and agreed that the right to royalty payments granted to Owner under the A Option, under the C Option, and under the D Option are separate and independent obligations of Grace, or anyone in privity of contract with Grace, under each option agreement.

2. It is agreed that the "A" and "C" options can only be assigned to a financially responsible assignee with the approval of Owner, which shall not be unreasonably withheld, and that in the event of the assignment of either the "A" of "C" option by Grace, Grace nevertheless shall remain responsible for all obligations to Owner under the options, and the royalty payments to Owner shall be made with respect to any coal mined by Grace, the assignee, or anyone in privity of contract with Grace of the assignee.

W.R. Grace & Co.
February 25, 1980
Page 2

3.  Grace agrees to provide Owner with a title commitment within thirty days after the date of this letter covering the Vaughn Preece property to be exchanged for the property under the "C" option.  An updated title commitment on the exchange property shall be delivered by Grace to Owner ten days prior to the closing of the "C" option.  Promptly after the closing Grace shall deliver to Owner a title insurance policy covering the exchange property and shall pay the premium thereon.

4.  At the closing of the "C" option, title to the exchange property to be conveyed from Grace to Owner shall be good and merchantable in Grace and Grace shall execute and deliver a good and sufficient general warranty deed to Owner conveying the exchange property with all of its appurtenances free and clear of all taxes (except the general taxes for the year in which the option is closed), liens, and encumbrances, except easements, restrictions, and reservations of record on the date of this Letter.  General taxes for the year of closing and any other customary items, if any, shall be apportioned to date of delivery of the deed. Possession of the exchange property shall be delivered to Circle Bar Ranch, Inc., on the closing date.

5.  At the closing of the "A" option the purchase price payable by Grace to Owner shall be paid in cash or certified funds.

6.  Grace agrees to at all times comply with all applicable federal and state laws and regulations in conducting its drilling, exploratory, mining and other activities with respect to the property covered by the options granted by Owner to Grace and to defend, protect, and indemnify Owner from and against any claims or expenses resulting from Grace's failure to comply with such laws or regulations.

W. R. Grace & Co.
February 25, 1980
Page Three

    7.   Grace agrees that in the event of its exercise of its option to purchase the property covered by the "A" and "C" options Owner shall have exclusive hunting rights on the property covered by the options during the period of its lease of the property from Grace.

    8.   It is agreed that the lease by Grace to Owner of the property covered by the "A" Option shall be on the terms and conditions of the Agricultural and Livestock Grazing Lease attached hereto as Exhibit A and the lease by Grace to Owner of the property covered by the "C" Option shall be on the terms and conditions of the Agricultural and Livestock Grazing Lease attached hereto as Exhibit B.

    9.   The provisions of this letter and of the "A" and "C" Options that require performance by Grace subsequent to the closing or termination of the Options shall survive such closing or termination.

    Please confirm your agreement to the terms set forth in this letter by signing and returning the enclosed copy to Circle Bar Ranch, Inc.

               Very truly yours,

               CIRCLE BAR RANCH, INC.

               By _____
                   President

Agreed:

W. R. GRACE & CO.

By _Charles W. Margol_
   Title:
  Director of Western Coal Operations



September 29, 1980

W. R. Grace & Co.
3333 Quebec Street
Suite 8800
Denver, Colorado  80207

Gentlemen:

Circle Bar Ranch, Inc. ("Circle Bar") and W. R. Grace & Co. ("Grace")
have entered into the following agreements (the "Option Agreements"):

1.    Exploration Agreement with Option to Purchase dated June 24,
1974, and amended by Letter Agreements dated June 24, 1974, June 26,
1975, March 10, 1978, May 3, 1978, April 20, 1979, February 25, 1980,
and June 24, 1980 (collectively the "A Option") pursuant to which Circle
Bar granted to Grace an Option to purchase a certain tract of land con-
taining approximately 4100 acres more or less in Routt County, Colorado.

2.    An Exploration Agreement with Option to Purchase dated June 24,
1974, and amended by Letter Agreements dated June 24, 1974, June 25,
1975, March 10, 1978, February 25, 1980, and June 16, 1980 (collectively
the "C Option") pursuant to which Circle Bar granted to Grace an Option
to purchase a certain tract of land containing approximately 5400 acres
more or less in Routt County, Colorado, by the exchange of certain prop-
erty known as the Vaughn Preece Farm.

3.    An Exploration Agreement with Option to Purchase dated Decem-
ber 1, 1979, and amended by Letter Agreement dated March 24, 1980 (col-
lectively the "D Option") pursuant to which Circle Bar granted to Grace
an Option to purchase a certain tract of land containing 2365.06 acres
more or less in Routt County, Colorado.

Pursuant to paragraph 2 of the Letter Agreement dated February 25, 1980,
between Circle Bar and Grace amending the "A" and "C" Options, and paragraph
16 of the "D" Option, Circle Bar hereby consents to the assignment by Grace
of all of its rights under the "A," "C," and "D" Options to either Axial Basin
Coal Corporation, a wholly owned subsidiary of Grace, or to a general partner-
ship, the general partners of which will be wholly owned subsidiaries of Grace
and The Hanna Mining Company.  It is understood and agreed that the assignment
is subject to the provisions of paragraph 2 of the Letter Agreement dated
February 25, 1980, and paragraph 16 of the "D" Option.  It is further agreed
that the obligation to make the royalty payments in the Option Agreements
will arise only if Grace, the assignee, or an affiliate of either is granted
the right to mine coal in which event and only in which event the payments
will be made with respect to any coal mined, produced, and sold by Grace,
the assignee, an affiliate of either, or anyone in privity of contract with
any of the foregoing.



W. R. Grace & Co.
Page Two
September 29, 1980


        This letter will also confirm our agreement that the rights appurtenant
to the Vaughn Preece Farm that will be transferred to Circle Bar upon the
closing of the "C" Option will include all water, water rights, oil, gas,
coal, and other mineral rights and federal, state, and private leases and
permits, if any, that are owned by Vaughn Preece and being transferred to
Grace under its option with Vaughn Preece.

        Please confirm our agreement as set forth in this letter by signing
and returning the enclosed copy to Circle Bar.

                                    Very truly yours,

                                    CIRCLE BAR RANCH, INC.


                                    By _____
                                          President


AGREED:

W. R. GRACE & CO.

By _____
        Title: MANAGER - REAL ESTATE

Record~d at _2__ o'clock _P_ M. _Feb. 26, 1980_
Recep~on No. __294474__ _____ Deputy Don Recorder.

BOOK 498 PAGE 189

**KNOW ALL MEN BY THESE PRESENTS,** That I, Cleve Preece

of the          County of   Moffat          , and State of Colorado, for the consideration of

Ten and 00/100 Dollars
and other good and valuable considerations,                    ~~Dollars~~
in hand paid, hereby sell and convey to Circle Bar Ranch, Inc., a Colorado cor-
whose legal address is                                        poration
of the          County of    Craig          , and the State of Colorado,

the following real property, situate in the          County of    Routt          and State of

Colorado, to wit:
  See Exhibit "A" attached hereto and by this reference made a
  part hereof

with all its appurtenances.
Subject to the provisions set forth on Exhibit "A"; a certain
Exploration Agreement with option to purchase between Circle Bar
Ranch, Inc., and W. R. Grace & Co. dated June 24, 1974, as modified
by letter agreements between the same parties dated June 24, 1974,
June 26, 1975, and March   , 1978, a memorandum of which was recorded
March 15, 1978, in Book 448, at Page 584 of the real property re-
cords of Routt County, Colorado; and a Deed of Trust executed by
Cleve Preece for the benefit of Stanley Preece, dated _11 Feb._,
19_80_, and recorded _Feb. 26_, 19_80_, at Book _498_, Page _181_,
which indebtedness Circle Bar Ranch, Inc., assumes and agrees to
pay.

STATE DOCUMENT ... FEE
$ _2-26-80_

also known as street and number

Signed and delivered this    11th    day of   February    ,1980  .

In the presence of                                    [SEAL]
_____                                [SEAL]
_____                                [SEAL]

STATE OF COLORADO,
        County of

The foregoing instrument was acknowledged before me this  11th   day of   February
19 80 , by   Cleve Preece

My commission expires    July 7    , 19  82 . Witness my hand and official seal.

                                    Carol A. Stockey
                                              Notary Public.

No. 901.   BARGAIN AND SALE DEED.—Statutory Form.—Bradford Publishing Co., 1824-46 Stout Street, Denver, Colorado—12-76

"D"

## EXPLORATION AGREEMENT WITH OPTION TO PURCHASE

THIS AGREEMENT, is made and entered into as of this 1st day of December, 1979, by and between CIRCLE BAR RANCH, INC., a Colorado corporation (hereinafter "Owner"), and W. R. GRACE & CO., a Connecticut corporation (hereinafter "Grace").

WHEREAS, Owner and Grace have entered into an Exploration Agreement with Option to Purchase dated June 24, 1974, as modified by letter agreements dated June 24, 1974, June 26, 1975, and March 10, 1978, a memorandum of which was recorded on March 15, 1978, in Book 448, at Page 584 of the Real Property Records of Routt County, Colorado (hereinafter the "'A' Option"), and

WHEREAS, Owner and Grace have entered into an Exploration Agreement with Option to Purchase dated June 24, 1974, as modified by letter agreements between the same parties dated June 24, 1974, June 25, 1975, and March 10, 1978, a memorandum of which was recorded on March 15, 1978, in Book 448, at Page 591 of the Real Property Records of Routt County, Colorado (hereinafter the "'C' Option"), and

WHEREAS, Grace desires to enter into an Exploration Agreement with Option to Purchase with respect to certain real property in Routt County, County, Colorado described in Exhibit A attached hereto (the "Property"), such option to be hereinafter referred to as the "'D' Option," and

WHEREAS, Owner is agreeable to entering into an Exploration Agreement with Option to Purchase with Grace with respect to the Property provided that the exercise of such option is contingent on the exercise no later than September 30, 1980, of the "A" Option, and the exercise of the "D" Option concurrently with or subsequent to the exercise of the "C" Option,

NOW, THEREFORE, the parties agree as follows:

1.    In consideration of the sum of $2,500 paid by Grace to Owner, receipt of which is hereby acknowledged, the

Owner grants unto Grace the right and option to purchase the
Property on the terms set forth in this Agreement with all of
its appurtenances, specifically including any water, water rights,
oil, gas, coal, and other mineral rights, and federal, state,
and private leases, and permits, if any, that may be owned by
Owner.

2.    Unless this option is terminated under paragraph 11,
the term of this option shall be from the date hereof until 5:00
p.m. Mountain Standard Time on December 31, 1980, provided, how-
ever, that in the event Grace fails to exercise the "A" Option
on or before September 30, 1980, this option shall terminate
on such date.

3.    The option under this Agreement cannot be exercised
by Grace unless the "A" and "C" Options have been exercised prior
to the exercise of this option or are exercised concurrently
herewith.

4.    If Grace wishes to exercise its option to purchase
the Property under this Agreement, it shall do so by giving the
Owner written notice of its election.  The closing of the pur-
chase shall occur within thirty days after the notice of the
exercise of the option unless the time of closing is extended
by mutual agreement of the parties.  The time and place of clos-
ing shall be designated by the parties.  At the closing Grace
shall pay Owner the purchase price as provided in paragraph 6
and Owner shall convey the Property to Grace as provided in para-
graph 8.

5.    The purchase price for the Property in the event Grace
exercises its option shall be $780,469.80.

6.    At the closing, Grace shall pay twenty percent of the
purchase price in cash or certified funds (less any amounts pre-
viously paid that are to be credited against the purchase price)
with the balance represented by Grace's negotiable promissory
note payable in five equal annual installments of principal on
the anniversary of the closing with interest at the rate of 10

-2-

percent per annum on the unpaid principal balance payable with
each installment of principal. Prepayment of the note in whole
or in part shall not be permitted. Notwithstanding the fore-
going, Owner may elect to receive the entire purchase price in
cash at the closing by giving written notice to Grace of such
election prior to Grace's exercise of its option to purchase
the Property.

7.    Grace agrees to obtain a title commitment on the Prop-
erty as well as the property covered by the "A" and "C" Options
promptly after execution of this Agreement and to advance any
funds necessary to obtain the title commitment. An updated title
commitment shall be obtained by Grace on the Property as well
as the property covered by the "A" and "C" Options after the
exercise of the options and prior to closing. At the closing,
Owner shall reimburse Grace for the costs and expenses incurred
in obtaining the title insurance commitments. Owner shall deliver
a title insurance policy to Grace covering the Property promptly
after closing and shall pay the premium thereon.

8.    At the closing, title shall be good and merchantable
in the Owner. Subject to payment or tender as provided in para-
graph 6 and compliance with the other terms and conditions here-
under by Grace, the Owner shall execute and deliver at the closing
a good and sufficient general warranty deed to Grace conveying
the Property with all its appurtenances as described in paragraph
1 free and clear of all taxes (except the general taxes for the
year in which the option is closed), liens, and encumbrances,
except easements, restrictions, and reservations of record on
the date of this Agreement. General taxes for the year of clos-
ing and any other customary items, if any, shall be apportioned
to date of delivery of the deed.

9.    Possession of the Property shall be delivered to Grace
on the closing date, provided that Grace shall immediately lease
back to Owner the surface of the Property for the period and
on the terms and conditions of the Agricultural and Livestock
Grazing Lease attached hereto as Exhibit B.

-3-

10.  If title is not merchantable and written notice of defect is given to the Owner within the time herein provided for delivery of deed and the title shall not be rendered merchantable within thirty days after such written notice then Grace shall not be required to purchase the Property, at its option, even though it may have previously exercised the option.  If Grace determines not to complete the purchase because title is not merchantable in the Owner, Owner shall return one-half of the payments previously made to it under paragraph 1 and 11 of this Agreement.  In lieu of correcting any defects of title, Owner may, within the thirty day period after notice of defects, obtain a commitment for an owner's title insurance policy in the amount of the purchase price showing the title to be free from such defects and Owner shall pay the full premium for such insurance policy.

11.  Until such time as Grace exercises its option to purchase, Grace shall pay the Owner the sum of $2,500 per month payable on or before the 30th day of each month at Owner's address as stated in paragraph 23.  All such payments, as well as the payment described in paragraph 1, shall be credited against the purchase price of the Property in the event Grace exercises its option to purchase the Property.  In the event Grace fails to make any monthly payment within ten days after written notice from Owner that such payment is past due, Grace's option to purchase the Property shall automatically terminate and the Owner shall be entitled to retain all amounts previously paid by Grace to the Owner.

12.  During the term of the option and subject to the conditions set forth in this Agreement, Grace shall have the exclusive right and privilege to explore for and define the extent and quality of coal deposits underlying the Property, including the right to drill exploratory holes on the Property.  Grace agrees that whenever possible the exploratory drill holes shall

-4-

be located at such places as will cause the least damage to the surface of the Property and to reimburse Owner for any damage to crops, fences, land, water supply, or any other losses incurred by the Owner as the result of such drilling. In addition, if Grace does not exercise its option to purchase the Property, Grace agrees that upon termination of the option it will pay the Owner $100.00 for each hole drilled on the Property less all payments made by Grace to Owner for reimbursement for damages or losses as provided above. Grace agrees that all exploratory holes drilled by Grace shall be plugged with an octaplug upon completion of drilling and logging. If Grace does not exercise its option to purchase it agrees to turn over to the Owner all drilling information in its possession with respect to the Property without any cost or expense to Owner promptly after termination of the option.

13. Grace agrees to at all times comply with all applicable federal and state laws and regulations in conducting its drilling, exploratory, mining and other activities with respect to the Property.

14. Grace agrees to defend, protect, and indemnify Owner and save it and any of its officers and employees harmless from and against any loss, liability, expense, cost, claim, or damage of any kind whatsoever, including reasonable attorneys' fees, resulting from Grace's exploration, drilling, and mining operations on the Property. This indemnity shall survive the closing if Grace exercises its option to purchase hereunder or the expiration of the option period if the option is not exercised.

15. Recovery of damages by Owner shall be its exclusive remedy for any failure by Grace to conduct its exploratory and drilling operations in the manner required by this Agreement and no failure by Grace to observe the terms and conditions of this Agreement shall be considered as grounds for termination of this Agreement during the option period except the failure of Grace to make the payments as required under paragraph 11.

-5-

16. This Agreement may be assigned by Grace to a financially responsible assignee with Owner's approval, which approval shall not be unreasonably withheld. Notwithstanding an assignment of this Agreement Grace shall remain responsible for all obligations to Owner under the Agreement and the royalty payments to Owner shall be made with respect to any coal mined by Grace, the assignee, or anyone in privity of contract with Grace or the assignee.

17. Upon termination of the option granted herein, Grace agrees to execute and deliver a quit-claim deed to Owner covering the Property upon request of Owner made within ninety days after the termination of the option.

18. Grace agrees that Owner shall have a right to lease the surface of the Property to a third party for ranching or farming purposes before or after the exercise of the option provided that a lease in effect at the time of closing shall become a sublease from Owner subject to the terms of Grace's lease to Owner under paragraph 9 and further provided that any lease by Owner to a third party shall be terminable at such times and upon such notice as shall be required to comply with this Agreement. It is agreed that the merchantability of Owner's title shall not be affected by any lease to a third party that is permitted under this paragraph. In the event Owner leases the Property, the rights of indemnification of Owner under this Agreement and the right to payment for crops under paragraph 9 shall be extended to the lessee as well as to Owner.

19. Owner agrees to maintain fire and extended coverage insurance on all improvements on the Property in an amount equal to the full replacement value thereof. In the event of the purchase of the Property by Grace as provided herein, Grace shall be entitled to the entire proceeds of the insurance payable as a result of any damage to the improvements by fire or other casualty prior to the date of closing unless the improvements are repaired or replaced by Owner prior to closing.

-6-

20.  Grace agrees that in the event it exercises its option
under this Agreement and in the further event that Grace acquires
the right to mine coal, which is located in Township 5 North,
Range 89 West of the Sixth P.M., Grace shall pay to Owner a royalty
of five cents per ton of 2,000 pounds of coal mined, produced,
and sold by Grace (or those in privity of contract with Grace)
from any such land so located, which royalty shall continue to
be paid until the total of all such royalty payments under this
Agreement equals the sum of two times the purchase price of the
Property.  Such royalty payments shall be paid to Owner each
year within sixty days after the end of such calendar year based
on the production and sales records during each calendar year.
It is expressly agreed that the right to royalty payments under
this option, as well as those under the "A" and "C" Options are
separate and independent obligations of Grace.

21.  Grace agrees that in the event it exercises its option
to purchase the Property Owner shall have exclusive hunting rights
on the Property during the three year lease period provided in
paragraph 9.

22.  At Grace's request Owner shall execute a memorandum
form of this Agreement for recording purposes.

23.  Notice shall be deemed given when hand delivered or
mailed by certified mail with postage prepaid to the parties
at the following addresses or to such other address as may be
designated in writing by any party from time to time:

| | |
|---|---|
| Grace: | W. R. Grace & Co.<br>3333 Quebec Street, Suite 8800<br>Denver, Colorado 80207 |
| Owner: | Mr. Cleve Preece<br>P. O. Box 696<br>Craig, Colorado  81625 |
| With a copy to: | Western United Realty, Inc.<br>P. O. Box 1027<br>Craig, Colorado 81625 |
| With a copy to: | Fairfield and Woods<br>1600 Colorado National Building<br>Denver, Colorado  80202 |

-7-

24. The provisions of this Agreement shall inure to the benefit of and be binding upon the successors and assigns of the parties hereto. The provisions hereof that contain obligations of Grace to be performed subsequent to the closing of the purchase of the property shall survive the closing.

25. Owner and Grace each represent and warrant that there is no sales commission, finder's fee, or any other payment whatsoever due and owing to any third party as a result of this Agreement or the closing of the purchase of the property hereunder, except the commission of 10 percent of the purchase price of the Property payable to Western United Realty, Inc., that Owner has agreed to pay.

                              W. R. GRACE & CO.

                              By _Charles W. Margolf_

                              CIRCLE BAR RANCH, INC.

                              By _Cleve Preece_

State of Colorado      )
                       ) ss.
County of Denver       )

The foregoing instrument was acknowledged before me this 26th day of February, 1981, by Charles W. Margolf as Director of Western Operations of the Mining Division of W. R. Grace & Co., a Connecticut corporation.

    Witness my hand and official seal.

    My commission expires: 8/26/81

                              _____
                              Notary Public  _Kay Lynch_

State of Colorado      )
                       ) ss.
County of ~~Moffat~~ Denver )

The foregoing instrument was acknowledged before me this 26th day of February, 1981, by Cleve Preece as President of Circle Bar Ranch, Inc., a Colorado corporation.

    Witness my hand and official seal.

    My commission expires: 8/26/81

                              _____
                              Notary Public  _Kay Lynch_

                         -8-

Recorded at 2:15 O'clock P.M. March 15, 1918 "C"
Reception No. **273659**                    EUNICE DORR, Recorder

MEMORANDUM FORM OF
EXPLORATION AGREEMENT WITH
OPTION TO PURCHASE

BOOK **448** PAGE **591**

This is a memorandum form of an agreement made and
entered into on March 10, 1978, by and between CIRCLE BAR
RANCH, INC., a Colorado corporation ("Owners"); and W. R.
GRACE & CO., a Connecticut corporation which is authorized
to do business in Colorado ("Grace"). This memorandum is
for recording purposes only and does not contain the entire
agreement of the parties, which agreement is fully set forth
in that certain undated Letter Option Agreement and that cer-
tain Exploration Agreement with Option to Purchase dated
June 24, 1974, as amended by letter agreements dated June 24,
1974, June 25, 1975 and March 10, 1978, between Grace and
Owners. The rights and obligations of the parties shall be
determined solely by reference to such Letter Option Agree-
ment and Exploration Agreement with Option to Purchase, as
so amended, and not by reference to this memorandum.

W I T N E S S E T H :

For and in consideration of the mutual promises
and covenants herein set forth, the parties hereto agree as
follows:

1. In consideration of the sum of *** paid by
Grace to Owners, and the sum of *** paid to Owners by check
of Western United Realty, receipt of which is confessed and
acknowledged, the Owners give and grant to Grace the exclu-
sive right and privilege during the option period herein-
after stated, to explore for and define the extent and
quality of coal deposits underlying the real estate ("Real
Estate") described on Appendix "A" attached and by reference
made a part hereof. As a part of the rights granted above
Owners also grant to Grace during the same option period,
the right to drill exploration drill holes on the Real

BOOK 448 PAGE 592

Estate.  For the same consideration, stated in this Section 1,
Owners give and grant to Grace the right and option to
purchase the Real Estate and other interests described on
Appendix A.  The period of the option shall be from date
hereof until December 30, 1980, at 5:00 o'clock P.M., MT, at
which time this option and the exploration rights defined in
this Section 1 shall automatically expire, unless the option
is exercised by Grace on or prior to that time and date.

2.  If Grace elects to exercise the option to pur-
chase, it shall do so by giving the Owners written notice of
its election, addressed to the Owners at Western United Realty,
Inc., Box 1027, Craig, Colorado 81625, by Certified Mail, with
return receipt requested, and with adequate and sufficient
postage attached and prepaid.  Upon the exercise of the op-
tion, if such is the case, the closing of the transaction
shall occur 30 days after the notice of exercise of option
at the offices of Western United Realty, Inc. in Craig, Colo-
rado.  The time of closing shall be designated by Western
United Realty, Inc.

3.  The purchase price to be paid for the Real
Estate, in the event the option is exercised, will be ***.
This contract is strictly contingent upon the owners being
able to trade for the Vaughn Preece Ranch on the terms set
forth by Vaughn Preece or land suitable to sellers.  Any
discrepancy in acreage shall be made up at the rate of ***
per acre if the option is exercised on or before September 30,
1974, *** if the option is exercised between October 1, 1974
and June 24, 1975, inclusive, and *** if the option is
exercised after June 24, 1975.

3.1 Grace shall pay Owners on or before 5:00 P.M.
September 30, 1974 and or before 5:00 P.M. on the 30th day
of each calendar month thereafter up to and including Novem-
ber 30, 1975, the sum of ***.  Grace shall pay Owners on or

-2-

before 5:00 P.M. MT December 30, 1975 and on or before 5:00 P.M. on the 30th day of each calendar month thereafter up to and including November 30, 1980, the sum of ***. It is understood and agreed that if Grace fails to make any option payment as specified herein, Owners shall give Grace written notice of such failure and Grace shall have 10 days after receipt of such notice from Owners in which to cure such failure. If Grace does not cure such failure within such 10 days, Grace's rights hereunder shall terminate. All payments made by Grace under the terms of this paragraph and the payments referred to in paragraph 1 shall be credited against the amount of money to be paid to Owners at closing for the difference in deeded acreage between the real estate and the deeded acreage of the Vaughn Preece Ranch to be traded therefor.

3.2. ***

3.3 ***

4. At the closing, if the option is exercised, the following will occur:

4.1 Grace will pay owners in cash the difference between the full purchase price less the amount paid by Grace to Vaughn Preece to acquire the Vaughn Preece Ranch being traded to Owners.

4.2 Owners will convey the Real Estate with appurtenances, to Grace by deed as provided in Paragraph 9.

4.3 Owners will pay Western United Realty its sales commission.

5.1 During the option period, Grace agrees (a) to locate any exploratory drill holes only at such places which will cause the least damage to the surface of the Real Estate and (b) to reimburse Owners for any damage to crops, fences, land, water supply or other losses incurred by the Owners as the result of such drilling. During the term of this option, Grace agrees to pay the Owners $100.00 for each hole drilled on the Real Estate, which sum shall be applied to any claim of Owners for damages which accrue as a result

-3-

BOOK 448 PAGE 594

of Grace's exploration operations.  All exploratory holes
drilled by Grace will, upon completion of drilling and
logging, be plugged with an octaplug.

5.1  Grace agrees to indemnify Owners and save
them harmless from and against any loss, liability, expense
or damage they may incur to third persons or corporations
for injury to or death of persons or damage to property
which is a direct result of Grace's exploration operations
on the Real Estate.  The provisions of this Subsection 5.2
shall survive the closing, if the option is exercised, or
the expiration of the option period, if the option is not
exercised.

6.    Recovery of damages by Owners shall be their
exclusive remedy for any failure by Grace to conduct its
exploratory operations in the manner required by this in-
strument and no failure by Grace to observe the terms and
conditions of this instrument shall be considered as grounds
for rescission or cancellation of this option during the
period stated in Section 1 hereof.

7.    This Exploration Agreement with Option to
Purchase may be assigned by Grace and if Grace or its as-
signs fails to exercise the option within the period granted
by Owners, then, at the request of Owners made at any time
after the expiration of the option, Grace and its assigns
agree to execute and deliver a quitclaim deed to Owners
covering the described Real Estate.

8.    An abstract of title to said property, certi-
fied to date, or a current commitment for title insurance
policy in an amount equal to the purchase price, at Owner's
option and expense, shall be furnished Grace on or before
the time of Grace's request therefor.  If Owners elect to
furnish said title insurance commitment, Owners will deliver
the title insurance policy to Grace after closing and pay
the premium thereon.

-4-

BOOK 448 PAGE 595

9.    Title shall be merchantable in the Owners. Subject to payment or tender as above provided and compliance with the other terms and conditions hereunder by Grace, the Owners shall execute and deliver a good and sufficient general warranty deed to Grace at the closing, conveying said property, including all of the Owners' oil, gas, minerals and coal rights laying in and under said described lands, free and clear of all taxes, except the general taxes for the year in which the closing occurs, and free and clear of all liens and encumbrances except easements and restrictions of record.  ***

10.    The provisions of this instrument shall inure to the benefit of and be binding upon the heirs, personal representatives, successors in interest and assigns of the Owners.

CIRCLE BAR RANCH, INC.

By: _____
        Cleve Preece, President

W. R. GRACE & CO.

By: _____
        Charles W. Margolf, Director
        of Western Operations

STATE OF COLORADO    )
                                          ) ss.
COUNTY OF Moffat    )

The foregoing instrument was acknowledged before me this 14th day of March, 1978, by Cleve Preece as President of Circle Bar Ranch, Inc., a Colorado corporation.

Witness my hand and official seal.

My commission expires: March 15, 1981.

_____
Notary Public

-5-

STATE OF COLORADO    )
                     ) ss.
COUNTY OF _Denver_   )

BOOK 448 PAGE 596

    The foregoing instrument was acknowledged before me this _10th_ day of _March_, 1978, by Charles W. Margolf as Director of Western Operations of W. R. Grace & Co., a Connecticut corporation.

    Witness my hand and official seal.

    My commission expires:      My Commission expires Aug. 26, 1951 .



_____
Notary Public

-6-

APPENDIX A TO
MEMORANDUM FORM OF EXPLORATION
AGREEMENT WITH OPTION TO PURCHASE
BETWEEN CIRCLE BAR RANCH, INC.
AND W. R. GRACE & CO.


Township 5 North, Range 89 West, 6th P.M.

That portion of the following which lies southerly and
westerly of a straight line extending from the SW corner
of Lot 1, Section 4, to the NW corner of Lot 3, Section 14:
Section 11:    Lot 15, 16, 18


Township 5 North, Range 89 West, 6th P.M.

Section 14:    Tract 52
               Lots 8, 12, 14, 15, 16, 17
               That portion of Lots 3, 4, 5, 9, 10, 11 not
               lying in Tract 52.
Section 15:    Lots 7, 8, 10, 15, 16
Section 22:    E1/2, E1/2E1/2NW1/4, NE1/4NE1/4SW1/4,
Section 23:    W1/2, W1/2E1/2
Section 26:    W1/2, W1/2E1/2
Section 27:    NE1/4SE1/4, NE1/4
Section 35:    N1/2, N1/2SW1/4, SE1/4, SE1/4SW1/4
               EXCEPT a tract of land described as follows:
               Beginning at a point on the southeasterly ROW
               of County Road No. 53 from which the SE Corner
               of Section 35, T5N, R89W of the 6th P.M., bears
               N 58 deg. 37'00" W, 853.7 feet; thence S 58
               deg. 36'58" E, 7.00 feet; thence S 55 deg.
               09'00" E, 170.00 feet; thence S 21 deg. 20'00"
               W, 280 feet; thence N 33 deg. 50'00" W, 247.12
               feet, more or less, to an intersection with the
               above mentioned ROW; thence N 31 deg. 00'38"
               E, 182.40 feet along said ROW to the point of
               beginning.


Township 4 North, Range 89 West, 6th P.M.

Section 11:    SE1/4
Section 12:    Lots 2 and 4, W/2SW/4
               EXCEPT that part of the following described
               parcel which lies within Lot 2, Section 12,
               T4N, R89W, 6th P.M.:
               A tract of land located partly in the SW1/4SW1/4
               of Sec. 36, T5N, R89W of the 6th P.M., & partly
               in Lots 1 & 2, Sec. 12, T4N, R89W of the 6th
               P.M., bounded by a line described as follows:
               Beginning at a point on the Southerly line of
               said Sec. 36 from which the SW Corner of said
               Sec. 36 bears S 89 deg. 04' W, 398.47 feet,
               thence N 108.00 feet; thence N 70 deg. 07' E,
               292.00 feet; thence S 52 deg. 37' E, 147.00 feet,
               thence S 06 deg. 57' W, 270.00 feet, thence
               S 37 deg. 00' E, 48.00 feet, thence S 58 deg.
               17'20" E, 26.82 feet to the Westerly ROW line
               of Routt County Highway Number 53, thence
               along said ROW S 31 deg. 00'38" W, 39.98 feet,
               thence leaving said ROW N 77 deg. 58'20" W,
               244.35 feet, thence N 63 deg. 53'57" W,

BOOK 448 PAGE 598

188.54 feet, thence S 38 deg. 40' W, 165.00
feet, thence S 25 deg. 25'51" E, 382.36 feet,
thence S 46 deg. 30' W, 575.00 feet, thence
S 29 deg. 30' W, 195.22 feet to the Westerly
ROW line of said Highway Number 53, thence
along said ROW S 58 deg. 17'31" W, 89.25 feet,
thence leaving said ROW N 54 deg. 00' W, 316.84
feet, thence N 38 deg. 40' E, 1285.00 feet to
the point of beginning.
ALSO EXCEPT that portion of the following
described parcel which lies in Lot 2 of Sec. 12,
T4N, R89W of the 6th P.M.: Beginning at
Corner No. 1, from which the SW Corner of
Sec. 36, T5N, R89W of the 6th P.M., bears N
50 deg. 53'10" W, 356.83 feet; (said point of
beginning being a point on the boundary line
of a tract of land conveyed to Ruby Construction
Company, Inc., by Deed recorded in Book 379
at Page 686): thence S 25 deg. 25'51" E,
382.36 feet to Corner 2; thence S 46 deg. 30'00"
W, 575.00 feet to Corner 3; thence S 29 deg.
30'00" W, 195.22 feet to Corner 4 on the
Northwesterly ROW line of Routt County Road
No. 53; thence following the Northwesterly
ROW line of said Routt County Road No. 53,
377.51 feet along a curve to the right having
a radius of 3794.19 feet, the chord of which
bears N 61 deg. 08'32" E, 377.36 feet to
Corner 5; thence N 63 deg. 59'34" E, 117.58
feet to Corner 6; thence 168.55 feet along a
curve to the left having a radius of 226.93
feet, the chord of which bears N 42 deg.
42'53" E, 164.50 feet to Corner 7; thence N
21 deg. 26'12" E, 73.29 feet to Corner 8;
thence 47.94 feet along a curve to the right
having a radius of 286.93 feet, the chord of
which bears N 26 deg. 13'25" E, 47.89 feet to
Corner 9; thence N 31 deg. 00'38" E, 513.48
feet to Corner 10; thence leaving said
Northwesterly ROW line of Routt County Road
No. 53 N 77 deg. 58'20" W, 244.35 feet to
Corner 11; thence N 63 deg. 53'57" W, 188.54
feet to Corner 12; thence S 38 deg. 40'00"
W, 165.00 feet to Corner 1 the point of
beginning.

Section 13:    That part of the S1/2NW1/4 lying North of
Williams Fork Road.
EXCEPT a tract of land described as follows:
From the 1/4 corner common to Section 13 in
T4N, R89W, 6th P.M., and Section 18 in T4N,
R88W, 6th P.M., S 52 deg. 50' W 706.35 feet,
thence S 24 deg. 30' W 72 feet to Corner No. 1
of Tract; thence S 53 deg. 5' W, 1247.4 feet
to Corner No. 2; thence N 57 deg. 40' W,
2158.2 feet to Corner No. 3; thence North
541 feet to Corner No. 4; thence E 758 feet
to Corner No. 5; thence S 0 deg. 35' E,
462 feet to Corner No. 6, center of Section 13;
thence N 88 deg. E, 2019.6 feet to Corner
No. 7, thence S 508.6 feet to corner No. 1,
point of beginning.

ALSO EXCEPT an 8 acre tract of indefinite location as
excepted in deed dated Oct. 1, 1937 and recorded Oct. 1, 1937
in Book 193 at page 138 of Routt County Records.

Page 2 of 3

BOOK 448 PAGE 599

Township 6 North, Range 89 West, 6th P.M.

Section 33:    E/2SW/4, Lot 11, and a tract in Lot 10
bounded by a line as follows:  Beginning
at the SW corner of said Lot 10; thence
N 991 feet; thence S 46 deg. E 741 feet;
thence S 30 deg. E 528 feet; thence W 812
feet to the point of beginning.

Township 5 North, Range 89 West, 6th P.M.

That portion of the following which lies southerly and
westerly of a straight line extending from the SW corner of
Lot 1, Section 4, to the NW corner of Lot 3, Section 14:
Section 3:    Lots 20, 21, 22, 23, 24
Section 4:    SE/4NE/4
Section 10:   Lots 1, 2, 3, 7, 8 and Tracts 41 and 46.

Township 5 North, Range 89 West, 6th P.M.

Section 4:    Lots 2 and 3, SE/4NW/4, SW/4NE/4, E/2SW/4,
SE/4
Section 9:    Lots 1, 2, 7, 8
That part of Lots 3 and 6, lying NE of a
straight line running from the NW corner of
Lot 3 to the exact center of Sec. 9; and
that part of Lots 9 and 10 lying NE of a
straight line running from the center of
Sec. 9 to the NE corner of Tract 51.
Section 10:   Lots 4, 5, 6, 9, 10, 11, 13, 14, 15
Section 15:   Lots 2, 3, E/2 of Lot 6, E/2 of Lot 11

Page 3 of 3



"A"

MEMORANDUM FORM OF
EXPLORATION AGREEMENT WITH     BOOK 448 PAGE 584
OPTION TO PURCHASE

This is a memorandum form of an agreement made and
entered into on March 10, 1978, by and between CIRCLE BAR
RANCH, INC., a Colorado corporation ("Owners"), and W. R.
GRACE & CO., a Connecticut corporation which is authorized
to do business in Colorado ("Grace").  This memorandum is for
recording purposes only and does not contain the entire
agreement of the parties, which agreement is fully set forth
in that certain undated Letter Option Agreement and that
certain Exploration Agreement with Option to Purchase, dated
June 24, 1974, as amended by letter agreements dated June 24,
1974, June 26, 1975 and March 10, 1978, all between Grace and
Owners.  The rights and obligations of the parties shall be
determined soley by reference to such Letter Option Agreement
and Exploration Agreement with Option to Purchase, as so
amended, and not by reference to this memorandum.

W I T N E S S E T H :

For and in consideration of the mutual promises
and covenants herein set forth, the parties hereto agree
as follows:

1.  In consideration of the sum of * * * paid
by Grace to Owners, and the sum of * * * paid to Owners by
check of Western United Realty, receipt of which is confessed
and acknowledged, the Owners give and grant to Grace the
exclusive right and privilege during the option period
hereinafter stated, to explore for and define the extent
and quality of coal deposits underlying the real estate
("Real Estate") described on Appendix "A" attached and by
reference made a part hereof.  As a part of the rights
granted above Owners also grant to Grace during the same
option period, the right to drill exploration drill

EUNICE DORR, Recorder

Recorded at 8:50 o'clock P. March 15, 1978

Reception No. 273658

BOOK 448 PAGE 585

holes on the Real Estate. For the same consideration, stated
in this Section 1, Owners give and grant to Grace the right
and option to purchase the Real Estate and other interests
described on Appendix A. The period of the option shall be
from date hereof until December 30, 1980, at 5:00 o'clock
P.M., MT, at which time this option and the exploration rights
defined in this Section 1 shall automatically expire, unless
the option is exercised by Grace on or prior to that time
and date.

2.    If Grace elects to exercise the option to purchase,
it shall do so by giving the Owners written notice of its election,
addressed to the Owners at Western United Realty, Box 1027,
Craig, Colorado 81625, by Certified Mail, with return receipt
requested, and with adequate and sufficient postage attached
and prepaid. Upon the exercise of the option, if such is
the case, the closing of the transaction shall occur 30 days
after the notice of exercise of option, at the offices of
Western United Realty, Inc. in Craig, Colorado. The time of
closing shall be designated by Western United Realty, Inc.

3.    The purchase price to be paid for the Real
Estate, in the event the option is exercised, will be * * *
if the option is exercised on or before June 24, 1975, and
shall be increased to * * * if the option is exercised there-
after. The purchase price shall be payable as follows:  * * *

3a.    Grace shall pay Owners on or before 5:00 P.M.
September 30, 1974 and on or before 5:00 P.M. on the 30th
day of each calendar month thereafter up to and including
November 30, 1975, the sum of * * *. Grace shall pay Owners
on or before 5:00 P.M. MT December 30, 1975 and on or before
5:00 P.M. on the 30th day of each calendar month thereafter
up to and including November 30, 1980, the sum of * * *.
It is understood and agreed that if Grace fails to make any
option payment as specified herein, Owners shall give Grace
written notice of such failure and Grace shall have 10 days after

-2-

BOOK 448 PAGE 586

receipt of such notice from Owners in which to cure such
failure.  If Grace does not cure such failure within such
10 days, Grace's rights hereunder shall terminate.  All pay-
ments made by Grace under the terms of this paragraph 3a and
the payments referred to in paragraph 1 shall be credited
against the purchase price in the event Grace elects to
exercise its option and shall be deducted from the down payment
due upon the exercise of said option so that the amount paid
down, after crediting all such payments, shall not exceed 29%
of the purchase price.

3b.   * * *

4.   At the closing, if the option is exercised,
the following will occur:

4.1  Grace will pay Owners * * *.

4.2  Owners will convey the Real Estate with appurte-
nances, to Grace by deed as provided in Paragraph 9.

4.3  Owners will pay Western United Realty its
sales commission.

5.1  During the option period, Grace agrees (a) to
locate any exploratory drill holes only at such places which
will cause the least damage to the surface of the Real Estate
and (b) to reimburse Owners for any damage to crops, fences,
land, water supply or other losses incurred by the Owners as
the result of such drilling.  During the term of this option,
Grace agrees to pay the Owners $100.00 for each hole drilled
on the Real Estate, which sum shall be applied to any claim
of Owners for damages which accrue as a result of Grace's ex-
ploration operations.  All exploratory holes drilled by Grace
will, upon completion of drilling and logging, be plugged with
an octaplug.

5.2  Grace agrees to indemnify Owners and save them
harmless from and against any loss, liability, expense or damage
they may incur to third persons or corporations for injury to
or death of persons or damage to property which is a direct result

-3-

BOOK 443 PAGE 587

of Grace's exploration operations on the Real Estate.  The
provisions of this Subsection 5.2 shall survive the closing,
if the option is exercised, or the expiration of the option
period, if the option is not exercised.

6.    Recovery of damages by Owners shall be their
exclusive remedy for any failure by Grace to conduct its ex-
ploratory operations in the manner required by this instrument
and no failure by Grace to observe the terms and conditions
of this instrument shall be considered as grounds for rescission
or cancellation of this option during the period stated in
Section 1 hereof.

7.    This Exploration Agreement with Option to
Purchase may be assigned by Grace and if Grace or its assigns
fails to exercise the option within the period granted by
Owners, then, at the request of Owners made at any time
after the expiration of the option, Grace or its assigns
shall execute and deliver a Quit Claim Deed to Owners
covering the Real Estate.

8.    An abstract of title to said property, certified
to date, or a current commitment for title insurance policy
in an amount equal to the purchase price, at Owners' option
and expense, shall be furnished Grace on or before when
Grace asks for them.  If Owners elect to furnish said title
insurace commitment, Owners will deliver the title insurance
policy to Grace after closing and pay the premium thereon.

9.    Title shall be merchantable in the Owners.
Subject to payment or tender as above provided and compliance
with the other terms and conditions hereunder by Grace, the
Owners shall execute and deliver a good and sufficient
General warranty deed to Grace at the closing, conveying
said property, including all of the Owners' oil, gas, mineral
and coal laying in and under said described lands, free and
clear of all taxes, except the general taxes for the year in
which the closing occurs, and except easements and restrictions

-4-

BOOK 448 PAGE 588

of record; free and clear of all liens and encumbrances ex-
cept the above mentioned loan. * * *.

     10.  The provisions of this instrument shall inure
to the benefit of and be binding upon the heirs, personal
representatives, successors in interest and assignees of the
Owners.

CIRCLE BAR RANCH, INC.

By _____
     Cleve Preece, President


W. R. GRACE & CO.

By _____
     Charles W. Margolf,
     Director of Western Operations


STATE OF COLORADO  )
                )
COUNTY OF Moffat  )

     The foregoing instrument was acknowledged before me
this 14th day of March , 1978, by Cleve Preece as
President of Circle Bar Ranch, Inc., a Colorado corporation.

     Witness my hand and official seal.

     My Commission expires: March 15, 1981

_____
     Notary Public


STATE OF COLORADO  )
                )
COUNTY OF Denver  )

     The foregoing instrument was acknowledged before me
this 10th day of March , 1978, by Charles W. Margolf
as Director of Western Operations of W. R. Grace & Co., a
Connecticut corporation.

     Witness my hand and official seal.

     My Commission expires: My Commission expires Aug. 26, 1981

_____
     Notary Public

-5-

BOOK448 PAGE589

APPENDIX A TO
MEMORANDUM FORM OF EXPLORATION
AGREEMENT WITH OPTION TO PURCHASE
BETWEEN CIRCLE BAR RANCH, INC.
AND W. R. GRACE & CO.


Township 4 North, Range 88 West of the 6th P.M., Routt County

Section 7:   Lot 1, N1/2SE1/4, SE1/4SW1/4
Section 8:   Lot 4
Section 18:  NE1/4NW1/4, Lots 1, 2 and 3,
             EXCEPT the portion of the following described
             tract lying in said Lot 3:
             Beginning at a point whence the SE corner of
             Lot 4 of said Section 18 bears S. 624 feet
             (Magnetic variation 16°45' E), thence N. 56°30'
             W. 411 feet; thence N. 23°27' E. 163 feet;
             thence N. 38°14' W. 252 feet; thence N. 89°43'
             W. 155 feet; thence N. 64°22' W. 80 feet;
             thence N. 20° E. 217 feet; thence S. 73°04'
             E. 180 feet; thence S. 83° E. 423 feet, to the
             E line of said Lots 3 and 4, thence S along
             said E line 711 feet to the point of beginning.

Township 5 North of Range 88 West of the 6th P.M., Routt County

Section 16:  All
             EXCEPT the tract of land situate in the
             SW1/4NW1/4 of said Section 16 to-wit: commencing
             at a point on the North line of said SW1/4NW1/4,
             Section 16 which bears S. 40°18' E. 1744 feet
             from the NW corner of said Section 16; thence
             S. 8°10' W. 140 feet; thence S. 37°52' W. 195
             feet; thence S. 15°02' W. 170 feet; thence
             S. 5°36' E. 147 feet; thence S. 28°29' W. 510
             feet; thence S. 33°02' W. 320 feet to a point
             on the South line of said SW1/4NW1/4 of Section
             16; thence W. 507 feet more or less to the SW
             corner of said SW1/4NW1/4 of Section 16; thence
             N. 0°01' W. 1320 feet to the NW corner of said
             SW1/4NW1/4 of Section 16; thence East 1140 feet,
             more or less, to the point of beginning, con-
             taining 27.2 acres, more or less.
Section 17:  SE1/4SE1/4
Section 20:  NW1/4NE1/4, E1/2E1/2, SW1/4SE1/4
Section 21:  W1/2NW1/4, S1/2

Township 4 North of Range 89 West of the 6th P.M., Routt County

Section 12:  Lot 1 and SE1/4
             EXCEPT a tract of land in Lot 1 of Sec. 12
             described as follows:  Beginning at a point which
             is S. 58°37' E. 860.7 feet from the SW corner
             of Section 36, T5N, R89W 6th P.M.; thence
             S. 55°90' E. 170 feet; thence S. 21°20' W. 280
             feet; thence N. 33°50' W. 224.9 feet; thence
             N. 49°14' E. to point of beginning, containing
             1.58 acres.
             AND EXCEPT a tract of 10.5 acres (8.5 acres,
             more or less, of this excepted parcel being
             situate in Lot 1 of Section 12) described as
             follows:  Beginning at a point which bears N.
             89°04' E. a distance of 206 feet from the NE
             corner of Lot 2 of said Section 12; thence N.
             a distance of 108 feet; thence N. 70°7' E.

BOOK 448 PAGE 590

a distance of 292 feet; thence S. 52°37' E.
a distance of 147 feet; thence S. 6°57' W.
a distance of 270 feet; thence S. 37° E. a
distance of 48 feet; thence S. 41°20' W. a
distance of 39 feet; thence N. 76°45' W. a
distance of 107 feet; thence N. 81°12' W. a
distance of 70 feet; thence S. 81°30' W. a
distance of 108 feet; thence S. 13°45' W. a
distance of 179 feet; thence S. 27°30' E. a
distance of 132 feet; thence S. 19° E. a dis-
tance of 72 feet; thence S. 46°30' W. a distance
of 575 feet; thence S. 29°30' W. a distance of
215 feet; thence N. 54° W. a distance of 350
feet; thence N. 38°40' E. a distance of 1222
feet to the point of beginning.

Section 13:   N1/2NE1/4, that portion of NE1/4SE1/4 lying
North of the County Road, EXCEPT so much thereof
as is contained within the following described
tract of land:
From the E1/4 corner of said Section 13 run
S. 52°50' W. 706.35 feet and thence S. 24°30'
W. 72 feet to Corner No. 1 of said Tract; thence
S. 53°5' W. 1247.4 feet to Corner No. 2; thence
N. 57°40' W. 2158.2 feet to Corner No. 3; thence
North 541 feet to Corner No. 4, thence East
758 feet to Corner No. 5, thence S. 0°35' E.
462 feet to Corner No. 6, center of Section 13,
thence N. 88° E. 2019.6 feet to Corner No. 7,
thence South 508.6 feet to Corner No. 1, the
point of beginning.

Township 5 North of Range 89 West of the 6th P.M., Routt County

Section 13:   Lots 6, 13, 14
Section 14:   Lots 6, 7, 13
Section 23:   E1/2E1/2
Section 24:   All
Section 25:   SE1/4SE1/4, S1/2N1/2, NW1/4NW1/4, SW1/4,
NE1/4NE1/4, W1/2SE1/4
Section 26:   E1/2E1/2
Section 36:   E1/2NE1/4, NW1/4, SE1/4, S1/2SW1/4
EXCEPT a tract of land situated in Section 36
and described as follows:  Beginning at a point
which bears N. 89°04' E. a distance of 206 ft.
from the NE corner of Lot 2, Section 12,
T 4 N, R 89 W 6th P.M.; thence N. a distance
of 108 ft.; thence N. 70°7' E. a distance of
292 feet; thence S. 52°37' E. a distance of
147 ft.; thence S. 6°57' W. a distance of 270
ft.; thence S. 37° E. a distance of 48 ft.;
thence S. 41°30' W. a distance of 39 ft.;
thence N. 76°45' W. a distance of 107 ft.;
thence N. 81°12' W. a distance of 70 ft.;
thence S. 81°30' W. a distance of 108 ft.;
thence S. 13°45' W. a distance of 179 ft.;
thence S. 27°30' E. a distance of 132 ft.;
thence S. 19° E. a distance of 72 ft.; thence
S. 46°30' W. a distance of 575 ft.; thence
S. 29°30' W. a distance of 215 ft.; thence
N. 54° W. a distance of 350 ft.; thence N.
38°40' E. a distance of 1222 ft. to the point
of beginning, containing 10.5 acres, more or
less (2 acres more or less of the excepted
tract being situate in the SW1/4SW1/4 of Sec.
36, T5N, R89W.)



**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**


In re: W.R  GRACE & CO , et al.
Case No. 01-11139-(JKF)-11


# DOCUMENTS APPENDED TO CLAIM

On August 7, 2006 document(s) were appended to Claim Number **6049** for the following reason(s)

☐   Order re Settlement of Claim

☐   New Supporting Documents

☐   Change of Address

☒   Correspondence dated 5/28/06 and 8/2/06

☐   Other   Docket Number ##

*Circle Bar Ranch, Inc.*
*P O. Box 696, Craig, CO  81626*

May 28, 2006

Holly Bull
Kirkland & Ellis
200 East R 6549
Chicago, IL  60601-6636

Dear Ms  Bull,

In my letter of March 23, 2003 you have the history of exploration and letter agreements with
W  R  Grace and Circle Bar Ranch Inc   It is my desire to have a resolution to this claim

In 1995 Grace sold properties to Cottonwood Land Company (Peabody Coal Company)   During the
sale to Cottonwood, Grace ignored letter agreements with Circle Bar, most important are

   1   Did not inform Cottonwood of coal royalty issue (those in privity of contract with Grace)
   2   Did not inform Cottonwood Land Company of the assignment of royalty payments
       That should have been passed on to them with the sale of the properties
   3   Agreement with options can only be assigned to a financially responsible assignee with
       approval of Circle Bar

Grace knew these coal royalty obligations were important in 1994, prior to Grace's sale to
Cottonwood, Circle Bar and Grace were in final negotiations on a final land sale to clean up missed
acreage of the sale of 1980   During the negotiations, Grace tried to have the royalty payments
dropped   (See copy of letter)

Grace did not list Circle Bar or inform the bankruptcy court as a creditor   With all the coal activity in
the area, mining could have started and still may start while Grace is still in bankruptcy protection

It is our desire that W R  Grace should take responsibility for ignoring their commitment to the letter
agreements made with Circle Bar Ranch, Inc    With all the wrong doings of Grace and the change of
business direction, I do believe these obligations will be lost   I would propose that Grace agree to the
wrong doings that are apparent and compensate Circle Bar by buying out this receivable at a
discount   Circle Bar would agree to a discount of 65% on the obligation of $3,536,552 00

Sincerely yours,

Cleve Preece
President

Enclosures

contractors, licensees, successors, assigns, affiliates or related corporations of Circle Bar or Preece, have any rights to use or access the Farm Lease Property or any other rights under the Farm Lease

4 2    At Closing, Hayden-Gulch shall pay to Preece $6,500 00 for summer fallow work done on the Farm Lease Property in 1993

4 3    At closing, Circle Bar shall deliver to Hayden-Gulch the release attached hereto as Exhibit E executed by Dale Biskup

5    Releases

5 1    Hayden-Gulch    Hayden-Gulch, for itself, and for its agents, partners, heirs, personal representatives, predecessors, successors, assignees, assigns, affiliates and related corporations, hereby fully and finally releases, and forever discharges, Circle Bar and Preece and each of their respective agents, officers, directors, shareholders, predecessors, successors, assignees, affiliates, related corporations, employees and attorneys (collectively, "the Released Circle Bar Parties") from any and all rights, duties, claims, suits, damages, demands, or causes of action, whether known or unknown, accrued or unaccrued, or hereafter acquired, arising from any agreement, occurrence, matter, fact or thing, existing or occurring from the beginning of time to the date of this Settlement and Purchase Agreement, that it may have against the Released Circle Bar Parties, including but not limited to any claims arising directly or indirectly out of the D Option, the Grazing Lease and the Farm Lease, with the exception on y of those rights and obligations imposed on each party by this Settlement and Purchase Agreement

5 2    Circle Bar and Preece    Circle Bar and Preece, for themselves and their agents, officers, directors, predecessors, successors, assigns, affiliates and related corporations, hereby fully and finally release, and forever discharge Hayden-Gulch and each of its respective agents, officers, directors, shareholders, predecessors, successors, assignees, affiliates, related corporations, employees and attorneys (collectively, the "Released Hayden-Gulch Parties") from any and all rights, duties, claims, suits, damages, demands, or causes of action whether known or unknown, accrued or unaccrued, or hereafter acquired, arising from any agreement, occurrence, matter, fact or thing, existing or occurring from the beginning of time to the date of this Settlement and Purchase Agreement, that they may have against the Released Hayden-Gulch Parties, including but not limited to any claims arising directly or indirectly out of the D Option, the Grazing Lease and the Farm Lease, with the exception only of those rights and obligations imposed on each party by this Settlement and Purchase Agreement, provided, however, that any obligation of Hayden-Gulch or others that may exist under Colorado law to pay any mineral royalty to Circle Bar or Preece by reason of Paragraphs 16 and 20 of the D Option shall not be released hereby and shall survive the closing of this Settlement and Purchase Agreement

-8-

August 2, 2006

**VIA UNITED STATES MAIL**

Mr Cleve Preece
Circle Bar Ranch, Inc
P O Box 696
Craig, Colorado 81626

                    Re:    **Claim No. 6049**

Dear Mr Preece

        Thank you for your letter of May 28th and follow-up telephone messages   I have shared your claim settlement offer with Kirkland & Ellis' client, W R & Co ("Grace")  While Grace appreciates your effort to come to resolution on your claim, Grace's view of the factual and legal situation surrounding the claim differs from yours   Though your recent letter indicates your belief that "these obligations will be lost," please be assured that your claim will remain an active, open claim in Grace's Chapter 11 case until such time as it gets resolved  At this time Grace has not moved toward resolution of the claim, but, when it does do so (as it must, under the Bankruptcy Code), you will receive written notification thereof   In that regard, please be sure to inform the Court of any change of address to which to send you relevant documents

                            Regards,


                            Holly W Bull

HWB/cjb

                    Claim No. 6049 p.52