# EXHIBIT B

**CLOSING INDEX**

for the Sale of

Real Property Known As the Williams Fork Mountain Ranch
Routt County, Colorado
("Property")

by

**H-G COAL COMPANY,**
a Delaware general partnership
("H-G")

and

**AXIAL BASIN RANCH COMPANY,**
a Delaware general partnership
("ABR" and referred to herein together with H-G as the "Seller")

to

**COTTONWOOD LAND COMPANY,**
a Delaware corporation
("Buyer")

with title insured by

**TRANSAMERICA TITLE INSURANCE COMPANY**
("Title Company")

<u>Closing Date:   August 2, 1995</u>

<u>Closing Documents:</u>

1.  Agreement for Sale of Real Property dated August 2, 1995 between Buyer and Seller.

2.  First Amendment to Agreement for Sale of Real Property dated September 18, 1995 between Buyer and Seller.

3.  Second Amendment to Agreement for Sale of Real Property dated September 19, 1995 between Buyer and Seller.

4.  Letter of confirmation for extension to Buyer dated September 22, 1995 from counsel for Seller.

5.  Special Warranty Deed dated October 2, 1995 executed by Seller conveying the Property from Seller to Buyer.

6.  Quitclaim Deed dated October 2, 1995 executed by Seller conveying the water rights from Seller to Buyer.

7.  Exclusive Listing Agreement from Cushman & Wakefield dated October 25, 1994.

8.  Promissory Note executed by Buyer dated October 2, 1995 in the amount of $3,000,000 made payable by Buyer to the order of Seller.

9.  Deed of Trust dated October 2, 1995 executed by Buyer for the benefit of Seller.

10. Guaranty dated October 2, 1995 executed Buyer.

11. Buyer's Closing Statement dated October 2, 1995.

12. Seller's Closing Statement dated October 2, 1995.

13. Assignment and Assumption of Leases dated October 2, 1995 from Seller to Buyer.

14. Closing Certificate dated October 2, 1995 from Seller to Buyer.

15. Commission Agreement dated October 2, 1995 by Cushman & Wakefield and Charlie Margolf for the benefit of Seller.

16. Certificate of Incumbency dated September 29, 1995 executed by Buyer.

17. Certificate of Secretary of Buyer dated September 29, 1995.

18. Certificate of Incorporation of Buyer dated August 17, 1995.

19. Title Insurance Commitment for the Property dated September 27, 1995 issued by the Title Company.

20. Owner's Title Insurance Policy Number 7821439 covering the Property issued by the Title Company to Buyer.

21. Tax Certificates dated September 27, 28 and 29, 1995 for the Property.

22. Certificate of Insurance dated September 26, 1995 naming H-G Coal as additional insured.

23. Real Property Transfer Declaration dated October 2, 1995 executed by Buyer.

24. Information with Respect to a Conveyance of a Colorado Real Property Interest Affirming Permanent Place of Business dated October 2, 1995 executed by Seller.

25. Form 1099-S dated October 2, 1995 executed by Seller.

## AGREEMENT FOR SALE OF REAL PROPERTY

THIS AGREEMENT FOR SALE OF REAL PROPERTY ("Agreement") is made and entered into as of the _2ⁿᵈ_ day of August, 1995 by and between AXIAL BASIN RANCH COMPANY, a Delaware general partnership ("ABR"), and H-G COAL COMPANY, a Delaware general partnership ("H-G" and referred to herein together with ABR as the "Seller"), and PEABODY DEVELOPMENT COMPANY, a Delaware corporation ("Buyer").

## RECITALS

This Agreement is made with respect to the following facts:

A.   Seller owns the real property located in Routt County, Colorado, consisting of approximately 14,200 acres as more particularly described on Exhibit A attached hereto and by this reference made part hereof (the "Land").

B.   The Land, together with all improvements thereon and all appurtenances thereto, and together with any Water Rights (as hereinafter defined), are referred to herein collectively as the "Property". As used herein, the "Water Rights" shall mean any and all water rights and conditional water rights that are appurtenant to or that have been used or are intended for use in connection with the Land, including, without limitation, (i) any and all ditch, well, pipeline, spring, storage, and reservoir rights, whether or not adjudicated or evidenced by any decree, permit, certificate, stock, or other document, (ii) all rights with respect to non-tributary ground water (and other ground water that is subject to the provisions of Colorado Revised Statutes Section 37-90-137(4) or the corresponding provisions of any successor statute) underlying the Land, (iii) any permit to use or construct any water well, and (iv) any decreed or pending plan of augmentation or water exchange plan.

C.   Various portions of the Property are subject to certain unrecorded leases, licenses, and other agreements which grant third parties the right use portions of the Property for purposes of wildlife ranching, hunting, grazing, farming, and other similar and related uses (the "Agricultural Leases"). A list of the Agricultural Leases is set forth on Exhibit B attached hereto and by this reference made part hereof.

D.   A portion of the Land containing approximately 1,280 acres located at the east end of the Land as more particularly described on Exhibit C attached hereto and by this reference made part hereof (the "Mined Land") has been used for coal mining and related purposes and is currently subject to certain reclamation obligations (the "Reclamation Obligations").

E.   Buyer wishes to purchase the Property from Seller, and Seller wishes to sell the Property to Buyer, on and subject to the terms and conditions set forth in this Agreement.

## AGREEMENT

In consideration of the promises and agreements of the parties set forth herein, the sufficiency of which is hereby acknowledged by each of the parties hereto, Seller and Buyer do hereby promise and agree as follows:

1.   <u>Sale and Purchase</u>.  Seller shall sell the Property to Buyer, and Buyer shall purchase the Property from Seller, on and subject to the terms and conditions set forth in this Agreement.

2.   <u>Purchase Price</u>.  The purchase price for the Property (the "Purchase Price") shall be THREE MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($3,500,000.00).  The Purchase Price shall be payable as follows:

(A)   <u>Earnest Money Deposit</u>.  Concurrently with the execution of this Agreement by Buyer and Seller, Buyer shall deposit SEVENTY-FIVE THOUSAND AND NO/100 DOLLARS ($75,000.00) into escrow with Transamerica Title Insurance Company (the "Escrow Agent").  The Escrow Agent shall hold and disburse such funds (referred to herein, together with any interest or other income earned thereon, as the "Deposit") in accordance with the terms of this Agreement and pursuant to an Escrow Agreement among Seller, Buyer, and the Escrow Agent in the form of Exhibit D attached hereto and by this reference made part hereof.  At the Closing (as hereinafter defined), the Deposit shall be paid to Seller and credited against the Purchase Price.  In the event that Closing fails to occur as a result of a breach of this Agreement by Seller, the Deposit shall be returned to Buyer.  In the event that Closing fails to occur as a result of a breach of this Agreement by Buyer, the Deposit shall be forwarded to Seller.

(B)   <u>Closing Payment</u>.   ONE MILLION AND NO/100 DOLLARS ($1,000,000.00), as adjusted for the net of all credits and prorations provided for herein (the "Closing Payment"), shall be paid by Buyer to Seller at the Closing in immediately available funds by wire transfer to the account designated by Seller.

(C)   <u>Note and Deed of Trust</u>.  The balance of the Purchase Price, in the amount of TWO MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($2,500,000.00) shall be paid by Buyer to Seller in the form of a Promissory Note (the "Note") to be executed by Buyer and delivered to Seller at the Closing.  The Note shall bear no interest, except

-2-

in the event of a default thereunder by Seller, in which case default interest shall accrue at the rate of 18% per annum. The Note shall be payable in five equal annual installments of $500,000 each, payable on the first, second, third, fourth, and fifth anniversaries of the Note. The Note shall be secured by a first priority Deed of Trust on the Property (the "Deed of Trust") to be executed by Buyer and delivered to Seller at the Closing. Both Buyer and Seller shall use diligent efforts to finalize the forms of the Note and the Deed of Trust to be executed by Buyer at the Closing within 30 days after the date of this Agreement.

3. _Title_. Title to the Property shall be free and clear of all liens and encumbrances, subject only to:

(A) The lien for real property taxes for the year of Closing and all subsequent years.

(B) Any and all defects, easements, covenants, restrictions, reservations, exceptions, and other matters which Buyer accepts or which Buyer may be deemed to have accepted pursuant to the terms of Paragraph 5 of this Agreement.

(C) All of the Agricultural Leases.

(D) The Reclamation Obligations and all permits and other documents relating to the Reclamation Obligations.

(E) Any defects or encumbrances created by Buyer, at the instance of Buyer, or with Buyer's consent.

The foregoing title exceptions are hereinafter collectively called the "Permitted Exceptions."

4. _Title Commitment_. Within 20 days after the date hereof, Seller shall furnish to Buyer a current ALTA commitment for the issuance of an ALTA Form B Owner's Policy of Title Insurance (Rev. 1992) covering the Property (the "Commitment") issued by Transamerica Title Insurance Company or another title insurance company designated by Seller and agreed to by Buyer (the "Title Company"), committing to insure, subject only to the normal requirements and Permitted Exceptions set forth herein above, title to the Property in Buyer in the amount of the Purchase Price.

5. _Title Defects_.

(A) _Buyer's Right to Object_. Within 30 days after Buyer's receipt of the Commitment, Buyer shall give Seller written notice of any and all title defects or exceptions shown therein which are not accepted and have not been deemed accepted by Buyer as Permitted Exceptions. Any and all defects and exceptions affecting

-3-

all or any portion of the Property disclosed by the Commitment (as exceptions, requirements, or otherwise) which are not the subject of a notice from Buyer to Seller given within the applicable period of time, shall be deemed accepted by Buyer as Permitted Exceptions.

(B) <u>Seller's Right to Cure</u>.  If Buyer notifies Seller of any defect or exception shown by the Commitment which is not accepted and has not been deemed accepted by Buyer as a Permitted Exception, Seller may cure such defect or exception in a manner reasonably acceptable to Buyer; provided that Seller shall not be obligated hereby to cure any such defect or exception or to incur any expense in connection with any such cure.  For purposes hereof, a title defect or exception shall be deemed cured if (i) the Title Company deletes the defect or exception from the Commitment or (ii) the Title Company undertakes in writing to issue an endorsement to the Owner's Policy obligating the Title Company, within the limits of the Owner's Policy, to protect Buyer against any loss or damage incurred on account of such defect or exception; provided, however, that such defect or exception is not material and/or will not have a material adverse impact upon Buyer's intended usage of the Property.

(C) <u>Buyer's Right to Terminate</u>.  If each of the defects and exceptions objected to by Buyer has not been cured on or before the earlier of (i) the 30th day after the date that Seller receives the written notice from Buyer objecting to such matters or (ii) the date on which Buyer receives written notice from Seller stating that Seller will not attempt to cure any of the matters previously objected to by Buyer (which period of time is referred to herein as the "Cure Period"), Buyer may, by written notice given to Seller within five (5) days after the last day of the Cure Period (the "Notice Date"), either (i) terminate this Agreement or (ii) waive its objection to such defects and exceptions and accept the same as Permitted Exceptions.  If Buyer does not notify Seller of its decision to terminate or waive on or before the Notice Date, Buyer shall be deemed to have waived its objection to such defects and exceptions and to have accepted the same as Permitted Exceptions.  If Buyer terminates this Agreement pursuant to this Paragraph 5, the Deposit shall be returned to Buyer and both parties shall thereupon be relieved of all further obligations hereunder, except for any obligations of Buyer arising under any of Paragraphs 8, 17, 18, 19, and 20, all of which shall continue in full force and effect.

6.   <u>Additional Documents</u>.   Seller shall deliver to Buyer, within 10 days after the execution of this Agreement, copies of all of the Agricultural Leases and copies of the other documents and materials relating to the Property listed on <u>Exhibit D</u> attached

-4-

hereto and by this reference made part hereof. Promptly after the date hereof, Seller shall use reasonable efforts to furnish to Buyer copies of any and all additional documents relating to the current physical condition or title to the Property which are in Seller's possession. The foregoing documents are referred to herein collectively as the "Additional Documents." The Additional Documents will be furnished to Buyer as is, without any representation or warranty by Seller of any kind or nature whatsoever. Any reliance placed by Buyer upon any information contained in any of the Additional Documents shall be placed at Buyer's sole and exclusive risk. Seller shall have no responsibility or liability arising under or in any way relating to any information contained in any of the Additional Documents. Buyer hereby waives and releases all claims Buyer might otherwise have against Seller by reason of any inaccuracy or omission in any of the Additional Documents.

7. <u>Inspection</u>. Buyer shall have a period of time (the "Inspection Period") to conduct an environmental audit, core hole drill, test, inspect, and evaluate the Property, the Additional Documents, and any other information deemed appropriate by Buyer to determine the suitability of the Property for Buyer's intended purposes. The Inspection Period shall commence on the date of this Agreement and expire on the 60th day after the date of this Agreement. If, in Buyer's reasonable good faith determination, the Property is not suitable for Buyer's intended purposes, or in the event that the environmental liabilities relating to the Property are deemed unacceptable in Buyer's sole determination, Buyer may terminate this Agreement by written notice given to Seller on or before the last day of the Inspection Period, which notice shall state the reason or reasons for Buyer's determination. If no such notice is received by Seller on or before such date, Buyer's right to terminate this Agreement under this Paragraph 7 shall end and this Agreement shall continue in full force and effect and proceed to Closing on the terms set forth herein. In the event of a termination of this Agreement by Buyer pursuant to this Paragraph 7, the Deposit shall be returned to Buyer and both parties shall thereupon be relieved of all further obligation hereunder, except for any obligations of Buyer arising under any of Paragraphs 8, 17, 18, 19, and 20, all of which shall continue in full force and effect.

8. <u>Access; Mechanic Liens</u>. Buyer may, at any time and from time to time after the date hereof and until the earlier of the Closing or the termination of this Agreement, upon reasonable prior notice to Seller, have the right of access to the Property to conduct an environmental audit, test, core hole drill, survey, inspect, and evaluate the Property as Buyer deems appropriate; provided that, at Seller's option, a representative of Seller shall be entitled to accompany Buyer or any of Buyer's employees or consultants during any such activity. Buyer shall promptly repair any damage and restore any changes made to the Property by Buyer, or at Buyer's instance or request, and Buyer shall pay for all work performed on the Property by Buyer, or at Buyer's instance or

request, as such payments come due.  Any and all liens on any
portion of the Property resulting from the actions or requests or
otherwise at the instance of Buyer shall be removed by Buyer at its
expense within 15 days after notice thereof is given to Buyer.
Buyer shall, at Buyer's expense, defend, indemnify, and hold
harmless Seller from and against any and all obligations, claims,
losses, and damages, including environmental response and
remediation costs and liabilities, and including costs and
attorneys' fees, resulting from or related to Buyer's access to the
Property and activities thereon, including, without limitation, any
mechanics' liens.

9.  <u>Buyer's Assumption of Reclamation Obligations</u>.
Buyer shall assume and agree to perform all obligations,
responsibilities, and liabilities of Seller relating to the
Reclamation Obligations and arising or accruing on or after the
date of the Closing, and Buyer shall indemnify, defend, and hold
Seller harmless from and against any and all losses, damages,
obligations, liabilities, costs, and expenses (including, without
limitation, attorneys' fees) arising from or relating to the
Reclamation Obligations, including, without limitation, any and all
claims relating to any restrictions imposed upon the use of any
other properties owned by Seller (or any affiliate of Seller) or by
any other entity in which Seller (or any affiliate of Seller) has
an ownership interest resulting from any failure or claimed failure
by Buyer to perform any required work in connection with the
Reclamation Obligations.  Such obligations by Buyer shall continue
from the date of the Closing until all bonds, permits, agreements,
and other obligations relating to the Reclamation Obligations which
have been posted by, issued in the name of, or otherwise binding
upon Seller, or any entity affiliated with Seller, are satisfied in
full and released (the "Release Date").  Buyer shall, from and
after the date of the Closing and until the Release Date, provide
to Seller quarterly reports of the progress made with respect to
the Reclamation Obligations during such quarter and a description
of the work remaining to be done until the Release Date.  Such
obligations by Buyer shall be set forth in an Indemnity Agreement
(the "Indemnity Agreement") to be executed by Buyer and delivered
to Seller at the Closing.  The Indemnity Agreement shall provide
Seller the right to have access to the Mined Land to complete any
necessary work in connection with the Reclamation Obligations in
the event of any failure by Buyer to perform such work.  The
obligations of Buyer under the Indemnity Agreement shall be
unconditionally guaranteed by a Guaranty (the "Guaranty") from
Peabody Holding Company, Inc., a Delaware corporation ("PHC") to be
executed by PHC and delivered to Seller at the Closing.  Both Buyer
and Seller shall use diligent efforts to finalize the forms of the
Indemnity Agreement and the Guaranty to be executed by Buyer at the
Closing within 30 days after the date of this Agreement.  All of
the obligations of Buyer under this Paragraph 9 shall survive the
Closing.  From and after the date of this Agreement and until the
Closing, Seller shall continue to perform all necessary work in
connection with the Reclamation Obligations in the ordinary course
of business.

10.  <u>Actions Pending Closing</u>.  From and after the date of this Agreement, Seller shall not, without the prior written consent of Buyer, which consent shall not be unreasonably withheld, take or agree to take any of the following actions:

(A)  Enter into any new leases or other agreements granting any third party a right to use or occupy all or any part of the Property which will bind the Buyer or the Property following the date of the Closing.

(B)  Terminate, accept a surrender of, renew, extend, or materially alter or amend any of the Agricultural Leases, except that nothing contained herein shall preclude any action which Seller reasonably determines to be appropriate in connection with any default under any of the Agricultural Leases, including, without limitation, accepting an assignment thereof or agreement to the termination thereof; and provided that Seller shall have the right, without Buyer's prior written consent, to cause or permit any of the Agricultural Leases to be renewed or extended pursuant to any express option or right to renew or extend set forth in any of the Agricultural Leases.

11.  <u>Buyer's Representations and Warranties</u>.  Buyer hereby represents and warrants to Seller, as of the date of this Agreement and as of the date of the Closing, as follows:

(A)  <u>Authority</u>.  Subject to the contingency set forth in Paragraph 27 of this Agreement, the person executing this Agreement and all documents to be executed by Buyer in connection herewith on behalf of Buyer have the authority to do so, and the execution and delivery by Buyer of this Agreement and all documents to be executed by Buyer in connection herewith are duly authorized by all requisite organizational actions of Buyer.

(B)  <u>Financial Capability</u>.  Buyer has the financial capability to satisfy the monetary obligations of Buyer as set forth herein.  The financial statements for Buyer provided by Buyer to Seller are complete and accurate in all material respects and there has been no material change in the financial condition of Seller since the date of such statements.

12.  <u>Seller's Representations and Warranties</u>.  Seller hereby represents and warrants to Buyer, as of the date of this Agreement, as follows:

(A)  <u>Authority</u>.  Subject to the contingency set forth in Paragraph 27 of this Agreement, the persons executing this Agreement and all documents to be executed by Seller in connection herewith on behalf of Seller have the authority to do so, and the execution and delivery by

the entities comprising the Seller of this Agreement are duly authorized by all requisite organizational actions of such entities.

(B) <u>Litigation</u>.  To Seller's Knowledge (defined below) there is no pending or threatened litigation which would materially adversely affect the Property.

(C) <u>No Governmental Notices</u>.  To Seller's Knowledge, Seller has not received any notices, demands, or other directives from any governmental entities with jurisdiction over the Property asserting that any current use of or condition on the Property violates any federal, state, or local laws or regulations.

(D) <u>Non-Foreign Person</u>.  Seller is not a "foreign person" as that term is defined in Section 1455 of the Internal Revenue Code of 1954, as amended, and applicable regulations.

(E) <u>Leaseholds</u>.  Except for the Agricultural Leases, and except as may be set forth in the Commitment or any of the Additional Documents, to Seller's Knowledge, the Property is not subject to any leasehold or other possessory interests of any person or entity.

(F) <u>Condemnation</u>.  To Seller's Knowledge, Seller has received no notice of any pending or threatened condemnation or eminent domain proceedings which will directly affect the Property or any part thereof.

As used herein, the phrase "Seller's Knowledge," means to Seller's best knowledge, information, and belief, after reasonable inquiry.

13. <u>Closing Certificate</u>. At the Closing, Seller shall deliver to Buyer a written certificate (the "Certificate") certifying to Buyer, as of the date of the Closing, with such modifications and exclusions as shall be necessary to make the Certificate accurate when given, the accuracy of the matters represented and warranted to in Paragraph 12 of this Agreement; provided, however, if Seller proposes to make any such modifications or exclusions, Seller shall deliver a copy of such Certificate to Buyer for Buyer's review at least two (2) days prior to the date of the Closing. If the Certificate delivered by Seller to Buyer at or prior to the Closing modifies or excludes any of such matters, in any material respect, Buyer may either (i) terminate this Agreement or (ii) accept the Certificate in the form delivered by Seller. If Buyer proceeds to close, Buyer shall be deemed to have elected to accept the Certificate in the form delivered by Seller. By accepting the Certificate at the Closing, Buyer shall be deemed to have waived, released, and forever relinquished any and all claims or causes of action arising under the warranties and representations contained in Paragraph 12 hereof, but not as to those contained in the Certificate. Any and

all claims or causes of action under the Certificate shall be asserted or commenced by Buyer within the earlier of (i) the applicable limitations period for such claims under Colorado law or (ii) 5 years after the date of the Closing. Any and all claims or causes of action under the Certificate which are not asserted or commenced within such period of time shall be deemed waived, released, and forever relinquished by Buyer. In the event of a termination of this Agreement by Buyer pursuant to this Paragraph 13, provided that there is not then any uncured defaults hereunder by Buyer, the Deposit shall be returned to Buyer and both parties shall thereupon be relieved of all further obligations hereunder, except for any obligations of Buyer arising under any of Paragraphs 8, 17, 18, 19, and 20, all of which shall continue in full force and effect.

14. <u>Property Sold As Is</u>. Buyer is relying upon its own inspection of the Property to evaluate the condition of the Property and the suitability of the Property for Buyer's intended use. Buyer hereby acknowledges that the opportunity to inspect the Property provided herein is sufficient for Buyer to obtain whatever information regarding the Property that Buyer may deem necessary for Buyer to determine the condition of the Property and its suitability for Buyer's intended use. Except as specifically set forth in Paragraph 12 of this Agreement (as modified by the Certificate), the Property shall be sold and conveyed hereunder to Buyer as is, without any representation or warranty by Seller of any kind or nature whatsoever. Buyer hereby acknowledges that, except as specifically set forth in Paragraph 12 of this Agreement (as modified by the Certificate), and except for the warranties of title set forth in the Deed, Seller hereby disclaims any and all express and implied warranties regarding the Property or the condition thereof, including, without limitation, the fitness of the Property for any particular purpose.

15. <u>Closing</u>. The closing of the sale of the Property from Seller to Buyer (the "Closing") shall take place in the offices of the Title Company on the later of (i) the 15th day after the last day of the Inspection Period, or (ii) on the 10th business day after the last day of the Cure Period.

At the Closing:

(A) Buyer shall pay to Seller the Closing Payment and Buyer shall execute and deliver to Seller the Note, the Deed of Trust, and the Indemnity Agreement, and Buyer shall cause PHC to execute and deliver to Seller the Guaranty.

(B) The Deposit shall be paid to Seller.

(C) Seller shall convey the Property (except for the Water Rights) to Buyer by a duly executed Special Warranty Deed in the form of <u>Exhibit E</u> attached hereto and by this reference made part hereof (the "Deed").

(D)   Seller shall convey the Water Rights to Buyer by a duly executed Quitclaim Deed in the form of _Exhibit F_ attached hereto and by this reference made part hereof.

(E)   Seller shall assign to Buyer all of its right, title, and interest in, to, and under the Agricultural Leases and the Additional Documents, and Buyer shall assume all obligations of Seller arising thereunder from and after the date of the Closing, by an instrument in form reasonably acceptable to both Buyer and Seller.

(F)   Seller shall execute and deliver to Buyer the Certificate pursuant to the terms of Paragraph 13 of this Agreement.

(G)   Seller shall, at Seller's expense, cause the Title Company to deliver to Buyer an unconditional written undertaking to issue to Buyer its ALTA Form B Owner's Policy of Title Insurance (Rev. 1992) (the "Owner's Policy") insuring title to the Property in Buyer in the amount of the Purchase Price, subject only to the Permitted Exceptions.

(H)   The parties shall each do or cause to be done such other matters and things as shall be necessary to close the transactions contemplated herein.

Seller shall pay any charges imposed by the Title company to provide closing and disbursement services.  Seller shall pay the premium charged by the Title Company for the Owner's Policy, and Buyer shall pay all recording, documentary, and similar fees incurred in connection with the Closing and the cost of any endorsements to the Owner's Policy which Buyer may elect to obtain.

16.   _Prorations_.    At   the   Closing,   the   following prorations shall be made:

(i)    All real estate taxes on the Property for the year of the Closing shall be prorated to the date of the Closing based on the actual taxes for such year, or, if not yet known, based on the taxes paid for the year immediately prior to the year of the Closing. Non-delinquent installments of special assessments shall also be prorated to the date of the Closing.  Buyer shall be responsible for the payment of such taxes and assessments for the year of the Closing.  Such proration shall be a final proration with respect to all such taxes and assessments for all purposes hereunder.

(ii)   All   rents,   operating   expense   payments, escalations, utility charges, and other charges paid by tenants under any of the Agricultural Leases as of the date of the Closing, together with any such rents or

-10-

other charges which become due and payable within 30 days prior to the date of the Closing, shall be prorated as of the date of the Closing. Any such rents or other charges which are delinquent by more than 30 days as of the date of the Closing shall not be prorated.

(iii) In the event that, on the date of the Closing, any tenant under any of the Agricultural Leases is delinquent in the payment of rent or any other sum payable thereunder by more than 30 days, said delinquent rent shall remain the property of Seller and no proration with respect thereto shall be made at the Closing. Following the application of the amounts collected to rental obligations for periods after the date of the Closing, Buyer shall remit any balance thereof to Seller. Seller reserves the right to take any action Seller deems necessary to collect such delinquent rent, provided that Seller shall not terminate any of the Agricultural Leases or dispossess any of the tenants thereunder. Buyer shall include such delinquent rents on all bills for rent submitted from and after the date of the Closing. Any such amounts applicable to such delinquent rents collected by Buyer after the date of the Closing, less any reasonable out-of-pocket collection costs incurred by Buyer, shall be promptly forwarded to Seller.

17. <u>Sales Commissions</u>. Buyer and Seller each hereby warrant and represent to the other that it has not dealt with any broker in connection with the transaction contemplated herein, except for Cushman & Wakefield of Colorado, Inc. (the "Broker"), which has represented Seller. Upon the consummation of the sale of the Property as contemplated herein, Seller shall pay to the Broker the commission which Seller has agreed to pay by separate agreement with the Broker. Seller shall indemnify and hold harmless Buyer from and against any and all claims for commissions, fees, or other compensation payable to the Broker or to any other real estate broker, agent, salesman, finder, or other person as a result of the sale of the Property and on account of any implied or express commitment or undertaking made by Seller. Buyer shall indemnify and hold harmless Seller from and against any and all claims for commissions, fees, or other compensation payable to any real estate broker, agent, salesman, finder, or other person (except the Broker) as a result of the sale of the Property and on account of any implied or express commitment or undertaking made by Buyer.

18. <u>No Assignment</u>. This Agreement shall be binding and effective on and inure to the benefit of the successors and assigns of the parties hereto. Buyer shall not, without the prior written consent of Seller, which consent may not be unreasonably withheld, assign or otherwise transfer or encumber this Agreement or any interest of Buyer herein. In no event shall it be deemed unreasonable for Seller to withhold its consent to any assignment of this Agreement by Buyer which may result in a reduction in the financial capability of the entities responsible for the monetary

obligations of Buyer under this Agreement or under any document to be executed by Buyer in connection herewith.

19. <u>No Recording; Quit Claim Deed</u>. Buyer shall not record this Agreement or any evidence hereof. Recording this Agreement or any evidence hereof shall constitute a material default by Buyer entitling Seller to all remedies available at law or in equity. In the event that this Agreement is terminated, Buyer shall promptly execute and deliver to Seller a quitclaim deed conveying to Seller any interest Buyer may have in the Property hereunder. Buyer shall be liable to Seller for any damages suffered by Seller on account of any recording of this Agreement and on account of any failure of Buyer to execute and deliver such quitclaim deed as required hereby, including, without limitation, any consequential damages.

20. <u>Attorneys' Fees</u>. In the event that a law suit or other action is brought to enforce or interpret all or any portion of this Agreement, the prevailing party in such suit or action shall be entitled to recover, in addition to any other relief available to such party, reasonable costs and expenses, including, without limitation, reasonable attorneys' fees, incurred in connection with such suit or action.

21. <u>Remedies</u>.

(A)   <u>Seller's Remedies</u>. In the event of any breach or failure to perform hereunder by Buyer, which breach or failure continues uncured for 5 days after written notice thereof is given to Buyer, Seller shall, as Seller's only remedy, be entitled to terminate this Agreement and retain the Deposit as liquidated damages; except that, in the event of any breach or failure by Buyer under any of the provisions of Paragraphs 8, 17, 18, or 19, Seller shall also be entitled to all remedies available for such a breach, at law or in equity.

(B)   <u>Buyer's Remedies</u>. In the event of any breach or failure to perform hereunder by Seller, which breach or failure continues uncured for 5 days after written notice thereof is given to Seller, Buyer shall be entitled to receive a refund of the Deposit and to pursue any remedy available for the recovery of any actual damages suffered by Buyer in connection with such breach or failure by Seller. Buyer shall further be entitled to the remedy of specific performance. Buyer hereby waives any remedy for consequential, special, exemplary, or punitive damages arising from or related to any such breach or failure to perform by Seller.

22. <u>Notices</u>. All notices provided for herein shall be in writing and shall be deemed given to a party when a copy thereof, addressed to such party as provided herein, is actually delivered, by personal delivery, by commercial courier, by

successful facsimile transmission, or by certified or registered mail, return receipt requested, at the address of such party determined as provided herein.

All notices to Seller shall be addressed to Seller at the following addresses and facsimile numbers or such other addresses and facsimile numbers of which Seller gives Buyer notice hereunder:

    Axial Basin Ranch Company
    H-G Coal Company
    c/o P.O. Box 882323
    Steamboat Springs, Colorado 80488
    Attention:  R. David Usilton
    Facsimile:  (970) 879-5412
    Telephone:  (970) 879-5412

    with a copy to:

    Davis, Graham & Stubbs
    370 Seventeenth Street, Suite 4700
    Denver, Colorado  80202
    Attention:  Beat U. Steiner, Esq.
    Facsimile:  (303) 893-1379
    Telephone:  (303) 893-9400

All notices to Buyer shall be addressed to Buyer at the following addresses and facsimile numbers or such other addresses and facsimile numbers of which Buyer give Seller notice hereunder:

    Peabody Development Company
    301 N. Memorial Drive, Suite 310
    St. Louis, Missouri  63102-2401
    Attention:  J. L. Lautenschlager
    Facsimile:  (314) 342-7627
    Telephone:  (314) 342-7696

23.  <u>Governing Law</u>.  The validity and effect of this Agreement shall be determined in accordance with the laws of the State of Colorado.

24.  <u>Computation of Time</u>.  If any event or performance hereunder is scheduled or required to occur on a date which is on Saturday, Sunday, or legal state or federal holiday in Denver, Colorado, the event or performance shall be required to occur on the next day which is not a Saturday, Sunday or legal state or federal holiday in Denver, Colorado.

25.  <u>Time</u>.  Time is of the essence with respect to each provision requiring performance within a stated period of time.

26.  <u>Counterparts; Execution</u>.  This Agreement may be executed in counterparts and, when counterparts of this Agreement have been executed and delivered by both of the parties hereto, this Agreement shall be fully binding and effective, just as if

-13-

both of the parties hereto had executed and delivered a single counterpart hereof Without limiting the manner in which execution of this Agreement may otherwise be effected hereunder, execution by either party may be effected by facsimile transmission of a signature page hereof executed by such party.  If either party effects execution in such manner, such party shall also promptly deliver to the other party the counterpart physically signed by such party, but the failure of such party to do so shall not invalidate the execution hereof effected by facsimile transmission.

27.  Corporate Approvals.  Each party hereby acknowledges that, notwithstanding the execution of this Agreement by the other party, neither party shall have any obligation, responsibility, or liability, under this Agreement unless and until both parties have received all of the necessary corporate consents and approvals for the execution of this Agreement.  Both parties shall have a period of time (the "Approval Period") to obtain such approvals.  The Approval Period shall begin on the date hereof and end on the 45th day after such date.  If a party is unable to obtain all such approvals, such party shall have the right to terminate this Agreement by written notice given to the other party on or before the last day of the Approval Period.  If no such notice is given to the other party, such party shall be deemed to have obtained all such approvals and this Agreement shall continue in full force and effect.  If either party terminates this Agreement in accordance with the terms set forth in this Paragraph 27, the Deposit shall be returned to Buyer and both parties shall thereupon be relieved of all further obligations hereunder, except for any obligations of Buyer arising under any of Paragraphs 8, 17, 18, 19, and 20, all of which shall continue in full force and effect.

28.  Entire Agreement.  This Agreement contains the entire understanding and agreement between the parties with respect to the subject matter hereof and supersedes all prior commitments, understandings, agreements, and negotiations, all of which are, by the execution of this Agreement, merged herein.  No amendment or modification of this Agreement shall be made or deemed to have been made unless in writing, executed by the party or parties to be bound thereby.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement intending that it be valid and effective from and after the date first written above.

**SELLER:**

**AXIAL BASIN RANCH COMPANY,** a Delaware general partnership

By:  Grace A-B Inc., a Delaware
     corporation, General Partner

     By:  _R D Usilton_____
          R. D. Usilton, President

By:  Grace A-B II Inc., a Delaware
     corporation, General Partner

     By:  _R D Usilton_____
          R. D. Usilton, President

**H-G COAL COMPANY,** a Delaware general partnership

By:  Coalgrace, Inc., a Delaware
     corporation, General Partner

     By:  _R D Usilton_____
          R. D. Usilton, President

By:  Coalgrace II, Inc., a Delaware
     corporation, General Partner

     By:  _R D Usilton_____
          R. D. Usilton, President

**BUYER:**

**PEABODY DEVELOPMENT COMPANY**

_Jack L Lautenschlager_____
J. L. Lautenschlager
President

-15-

EXHIBIT A
TO
AGREEMENT FOR SALE OF REAL PROPERTY


[Legal description of Property]


TOWNSHIP 4 NORTH, RANGE 88 WEST OF THE 6TH P.M.
COUNTY OF ROUTT, STATE OF COLORADO

Section 7:   Lot 1, N1/2SE1/4, SE1/4SW1/4;
Section 8:   Lot 4;
Section 18:  Lots 1, 2, 3, NE1/4NW1/4;
             EXCEPT that part of the following lying in Lot 3 of Section
             18, described by metes and bounds as follows:  beginning at a
             point whence the Southeast corner of Lot 4 of said Section
             bears South 624 feet (magnetic variation 16deg 45min east),
             thence North 56deg 30min West 411 feet, thence North 23deg
             27min East 163 feet, thence North 38deg 14min West 252 feet,
             thence North 89deg 43min West 155 feet, thence North 64deg
             22min West 80 feet, thence North 20deg East 217 feet, thence
             South 73deg 04min East 180 feet, thence South 83deg East 423
             feet, to the East line of said Lots 3 and 4, thence South
             along said East line 711 feet to the point of beginning.

TOWNSHIP 5 NORTH, RANGE 88 WEST OF THE 6TH P.M.
COUNTY OF ROUTT, STATE OF COLORADO

Section 17:  S1/2SW1/4;
Section 19:  Lots 11, 12, 15 and 16, E1/2NE1/4;
Section 20:  NW1/4, NW1/4SE1/4, W1/2NE1/4
             EXCEPT parcels of land conveyed to The County of Routt by
             deed recorded January 16, 1979 in Book 468 at Page 697;

             ALSO EXCEPT all those portions of the NW1/4NE1/4 of Section
             20, lying East of Routt County Road No. 53.

Section 29:  SW1/4SW1/4, S1/2NW1/4SW1/4
Section 30:  E1/2, Lots 5, 6, 9, 10, 11, 12, 15 and 16;
             EXCEPT parcels of land conveyed to The County of Routt by
             deed recorded January 16, 1979 in Book 468 at Page 697.
Section 31:  NE1/4, Lots 5, 6, 9, 10, 11, 12, 13, 14, 17, 18, 19 and 20

TOWNSHIP 4 NORTH, RANGE 89 WEST OF THE 6TH P.M.
COUNTY OF ROUTT, STATE OF COLORADO

Section 11:  SE1/4
Section 12:  W1/2SW1/4, SE1/4, Lots 1, 2 and 4
             EXCEPT that part of the following described parcel which lies

A-1

within Lots 1 and 2, Section 12, T4N, R89W:
A tract of land located partly in the SW1/4SW1/4 of Section
36, T5N, R89W and partly in Lots 1 and 2, Section 12, T4N,
R89W, bounded by a line described as follows:
Beginning at a point on the Southerly line of said Section 36
from which the SW corner of said Section 36 bears S 89deg
04min W 398.47 feet; thence N 108.00 feet; thence N 70deg
07min E 292.00 feet; thence S 52deg 37min E 147.00 feet;
thence S 06deg 57min W 270.00 feet; thence S 37deg 00min E
48.00 feet; thence S 58deg 17min 20sec E 26.82 feet to the
Westerly right of way line of Routt County Highway No. 53;
thence along said right of way S 31deg 00min 38sec W 39.98
feet; thence leaving said right of way N 77deg 58min 20sec W
244.35 feet; thence N 63deg 53min 57sec W 188.54 feet; thence
S 38deg 40min W 165.00 feet; thence S 25deg 25min 51sec E
382.36 feet; thence S 46deg 30min W 575.00 feet; thence S
29deg 30min W 195.22 feet to the Westerly right of way line
of said Highway No. 53; thence along said right of way S
58deg 17min 31sec W 89.25 feet; thence leaving said right of
way N 54deg 00min W 316.84 feet; thence N 38deg 40min E
1285.00 feet to the point of beginning.

EXCEPT a tract of land in Lots 1 and 2 of Section 12, T4N,
R89W of the 6th P.M., bounded by a line described as follows:
Beginning at corner No. 1, from which the SW corner of
Section 36, T5N, R89W bears N 50deg 53min 10sec W 356.83
feet; (Said point of beginning being a point on the boundary
line of a tract of land conveyed to Ruby Construction
Company, Inc., by deed recorded in Book 379 at Page 686);
thence S 25deg 25min 51sec E 382.36 feet to corner 2; thence
S 46deg 30min 00sec W 575.00 feet to corner 3; thence S 29deg
30min 00sec W 195.22 feet to corner 4 on the Northwesterly
ROW line of Routt County Road No. 53; thence following the
Northwesterly ROW line of said Routt County Road No. 53,
377.51 feet along a curve to the right having a radius of
3794.19 feet; the chord of which bears N 61deg 08min 32sec E
377.36 feet to corner 5; thence N 63deg 59min 34sec E 117.58
feet to corner 6; thence 168.55 feet along a curve to the
left having a radius of 226.93 feet, the chord of which bears
N 42deg 42min 53sec E 164.70 feet to corner 7; thence N 21deg
26min 12sec E 73.29 feet to corner 8; thence 47.94 feet along
a curve to the right having a radius of 286.93 feet, the
chord of which bears N 26deg 13min 25sec E 47.89 feet to
corner 9; thence N 31deg 00min 38sec E 513.48 feet to corner
10; thence leaving said Northwesterly ROW line of Routt
County Road 53 N 77deg 58min 20sec W 244.35 feet to corner

11, thence N 63deg 53min 57sec W 188.54 feet to corner 12;
thence S 38deg 40min 00sec W 165.00 feet to corner 1 the
point of beginning.

Section 13: N1/2NE1/4, that portion of the NE1/4SE1/4 lying North of the
County Road,
EXCEPT so much thereof as is contained within the following
described tract of land:
From the E1/4 corner of Section 13, T4N, R89W run S 52deg
50min W 706.35 feet and thence S 24deg 30min W 72 feet to
Corner No. 1 of said Tract; thence S 53deg 5min W 1247.4 feet
to Corner No. 2, thence N 57deg 40min W 2158.2 feet to Corner
No. 3; thence North 541 feet to Corner No. 4, thence East 758
feet to Corner No. 5, thence S 0deg 35min E 462 feet to Corner
No. 6, center of Section 13, thence N 88deg E 2019.6 feet to
Corner No. 7, thence South 508.60 feet to Corner No. 1, the
point of beginning.

That part of the S1/2NW1/4 lying North of the Williams Fork
Road,
EXCEPT a tract of land described as follows:
From 1/4 corner Commmon to Sections 13, T4N, R89W and Section
18, T4N, R88W, S 52deg 50min W 706.35 feet; thence S 24deg
30min W 72 feet to Corner No. 1 of Tract; thence S 53deg 5min
W 1247.4 feet to Corner No. 2; thence N 57deg 40min W 2158.2
feet to Corner No. 3; thence N 541 feet to Corner No. 4;
thence E 758 feet to Corner No. 5; thence S 0deg 35min E 462
feet to Corner No. 6 Center Section 13; thence N 88deg E
2019.6 feet to Corner No. 7; thence S 508.6 feet to Corner
No. 1 point of beginning.

EXCEPT an 8 acre tract of indefinite location as excepted in
Deed dated October 1, 1937, recorded October 1, 1937 in Book
193 at Page 138.

TOWNSHIP 5 NORTH, RANGE 89 WEST OF THE 6TH P.M.
COUNTY OF ROUTT, STATE OF COLORADO

Section 1:  Lots 7, 9, 10, 15, 16, 17 and 18.
Section 2:  Lots 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 20 and 21;
Lot 19, EXCEPT a tract bounded by a line described as
follows:
Beginning at the NW corner of said SE1/4SW1/4; thence East
along he North line of said SE1/4SW1/4 a distance of 760

A-3

feet; thence Southwest in a straight line and along the western side of the proposed County Road on said ridge, a distance of 945 feet to a point on the West line of said SE1/4SW1/4 which is 588 feet due South from the place of beginning; thence 588 feet due North to the Point of Beginning.

**Section 3:** Lots 5, 6, 10, 11, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26 and 27.

**Section 4:** Lots 2, 3, 4, S1/2, S1/2NW1/4, S1/2NE1/4

**Section 9:** Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 15;

**Section 10:** Lots 1, 2, 4, 5, 6, 9, 10, 11, 12, 13, 15 and 16.
That part of Lots 3 and 8 which lies Southerly and Westerly of a straight line extending from the SW corner of Lot 1 of Section 4 to the NW corner of Lot 3 of Section 14 in said Township and Range.

**Section 11:** Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 15, 16, 18, 19 and 20;
Lots 11 and 12, EXCEPT a tract of land described as follows: Beginning at a point 454.2 feet East of the NW corner of Lot 13 of said Section 11, thence N 63deg 26min E 647 feet to a point on the North line of Lot 12 of Section 11, thence N 63deg 26min E 328.3 feet to a point on the East line of Lot 11 of said Section 11, thence S 0deg 51min W 142.2 feet to the NE corner of said Lot 12, thence S 0deg 51min W 294.00 feet, thence West 865.8 feet to the Point of Beginning.

A tract of land in Lot 13 described as follows: Beginning at the NW corner of said Lot 13, thence East 454.2 feet along the North line of said Lot 13, thence S 63deg W 512.8 feet to a point on the West line of said Lot 13, thence N 0deg 51min E 233.5 feet to the Point of Beginning.

**Section 13:** Lots 1, 6, 9, 10, 11, 12, 13, 14, 15, 16 and 17.

**Section 14:** Lots 6, 7, 8, 12, 13, 14, 15, 16, 17 and that part of Lots 3, 4, 5, 9, 10 and 11 not lying within Tract 52.

**Section 15:** Lots 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 15 and 16.

**Section 16:** Lots 1, 2, 3, 4, 6, 7, 8, 9 and 10.

**Section 20:** NE1/4

**Section 21:** N1/2N1/2, N1/2SW1/4NE1/4, N1/2S1/2SW1/4NE1/4, N1/2SE1/4NW1/4, N1/2S1/2SE1/4NW1/4

**Section 22:** E1/2, NW1/4, NE1/4NE1/4SW1/4

**Section 23:** All

**Section 24:** All

**Section 25:** NE1/4NE1/4, S1/2NE1/4, W1/2NW1/4, SE1/4NW1/4, W1/2SE1/4, SE1/4SE1/4, SW1/4

**Section 26:** All

**Section 27:** NE1/4, NE1/4SE1/4

**Section 35:** N1/2, SE1/4, N1/2SW1/4, SE1/4SW1/4

A-4

Section 36: E1/2NE1/4, NW1/4, SE1/4, S1/2SW1/4
EXCEPT that part of the following described parcel which lies
within the SW1/4SW1/4, Section 36, T5N, R89W:
A tract of land located partly in the SW1/4SW1/4 of Section
36, T5N, R89W and partly in Lots 1 and 2, Section 12, T4N,
R89W, bounded by a line described as follows:
Beginning at a point on the Southerly line of said Section 36
from which the SW corner of said Section 36 bears S 89deg
04min W 398.47 feet; thence N 108.00 feet; thence N 70deg
07min E 292.00 feet; thence S 52deg 37min E 147.00 feet;
thence S 06deg 57min W 270.00 feet; thence S 37deg 00min E
48.00 feet; thence S 58deg 17min 20sec E 26.82 feet to the
Westerly right of way line of Routt County Highway No. 53;
thence along said right of way S 31deg 00min 38sec W 39.98
feet; thence leaving said right of way N 77deg 58min 20sec W
244.35 feet; thence N 63deg 53min 57sec W 188.54 feet; thence
S 38deg 40min W 165.00 feet; thence S 25deg 25min 51sec E
382.36 feet; thence S 46deg 30min W 575.00 feet; thence S
29deg 30min W 195.22 feet to the Westerly right of way line
of said Highway No. 53; thence along said right of way S
58deg 17min 31sec W 89.25 feet; thence leaving said right of
way N 54deg 00min W 316.84 feet; thence N 38deg 40min E
1285.00 feet to the point of beginning.

### TOWNSHIP 5 NORTH, RANGE 89 WEST OF THE 6TH P.M.
### COUNTY OF ROUTT, STATE OF COLORADO

ORIGINAL SURVEY                                          RESURVEY

| | | |
|---|---|---|
| Section 1: | Lots 3, 4, SW1/4NW1/4 | Tract 38 |
| Section 2: | SE1/4NE1/4 | Tract 40 |
| Section 2: | N1/2SE1/4, SW1/4SE1/4, SE1/4SW1/4 | |
| Section 2: | SW1/4SW1/4 | |
| Section 10: | E1/2NE1/4 | Tract 41 |
| Section 11: | NW1/4NW1/4 | Tract 46 |
| Section 10: | SW1/4NE1/4, NW1/4SE1/4, E1/2SW1/4 | Tract 51 |
| Section 16: | All | Tract 52 |
| Section 14: | N1/2NW1/4, SW1/4NW1/4, NW1/4SW1/4 | |

### TOWNSHIP 6 NORTH, RANGE 89 WEST OF THE 6TH P.M.
### COUNTY OF ROUTT, STATE OF COLORADO

Section 33: SW1/4, Lots 6 and 11, and a tract in Lot 10 bounded by a line
described as follows:

A-5

Beginning at the SW corner of said Lot 10; thence N 991 feet;
thence S 46deg E 741 feet; thence S 30deg E 528 feet; thence
W 812 feet to the point of beginning.
EXCEPT that part conveyed to The County of Routt by Right of
Way Deed recorded January 14, 1931 in Book 170 at Page 311.

EXCEPT a tract of land bounded by a line described as
follows:
Beginning at the NE corner of said Lot 6, thence South on the
East line of Lot 6, 80 feet, thence N 49deg 22min W 110 feet,
thence East 70 feet on the North line of said Lot 6 to the NE
corner of said Lot 6, the place of beginning.
Section 34: Lot 16
Section 35: Lots 13, 14, 15 and 16.

A-6

EXHIBIT B
TO
AGREEMENT FOR SALE OF REAL PROPERTY

[Agricultural Leases]

1.  Cooperative Agreement for Wildlife Ranching:  State of
    Colorado in H-G West and H-G; 3/1/91

2.  Williams Fork Mountain Ranch Ranching for Wildlife
    Management Plan

3.  Wildlife Ranching Lease:  Hayden-Gulch West Coal Co.,
    H-G, and Tarrell Massey; 4/1/90

4.  Grazing Lease:  ABR and Tuttle Ranch and Livestock;
    1/1/94

5.  Letter Agreement:  ABR and Everett L. Williams; 3/21/94

6.  Farm Lease:  ABR and Everett and Mary J. Williams;
    1/1/94

7.  Grazing Lease:  ABR and David and Kathleen Smith;
    1/1/94

8.  Agricultural and Livestock Grazing Lease; J. Burton
    Tuttle and Hayden-Gulch West Coal Co.; 12/5/80

EXHIBIT C
TO
AGREEMENT FOR SALE OF REAL PROPERTY


[Legal Description of Mined Land]


Township 5 North, Range 88 West of the 6th P.M.,

Section 19:    Lots 11, 12, 15 and 16;
Section 29:    SW1/4SW1/4, S1/2NW1/4SW1/4
Section 30:    E1/2, Lots 5, 6, 9, 10, 11, 12, 15 and 16,
               EXCEPT parcels of land conveyed to the County
               of Routt by deed recorded January 16, 1979 in
               Book 468 at page 697.
Section 31:    NE1/4, Lots 5, 6, 9, 10, 11, 12, 13, 14, 17,
               18, 19 and 20

C-1

EXHIBIT D
TO
AGREEMENT FOR SALE OF REAL PROPERTY


[Additional Documents]


1.        Legal Descriptions
          A.      Deed in to ABR, dated 7/20/93
          B.      Deed in to H-G, dated 1/30/78
          C.      Deed in to H-G, dated 1/30/78
          D.      Deed in to H-G, dated 1/30/78
          E.      Deed in to H-G, dated 1/30/78
          F.      Deed in to H-G, dated 1/30/78
          G.      Deed out to Smiths, dated 10/29/92
          H.      Deed out to Smiths, dated 10/29/92
          I.      Deed in to ABR, dated 9/21/81


2.        Corporate Structure
          2.1     Trade Name Affidavits
                  A.      H-G
                  B.      ABR


3.        Maps
          3.1     Assessor Maps
                  A.      Parcel 0913 (T5N, R89W)
                  B.      Parcel 1103 (T4N, R89W)
                  C.      Parcel 0849 (T6N, R88W)
                  D.      Parcel 0851 (T6N, R89W)
                  E.      Parcel 0915 (T5N, R88W)
                  F.      Parcel 1101 (T4N, R88W)


          3.2     Disclosure Map
          3.3     H-G and Hayden-Gulch West Coal Company ("H-G West") Area Map

4.    <u>Title Insurance</u>
    4.1    Existing Policies
        A.    Transamerica Title Insurance Policy No. 7803756, issued 10/30/80 to H-G West
        B.    Transamerica Title Insurance Policy No. 7803754, issued 12/17/80 to H-G West
        C.    Transamerica Title Insurance Policy No. 8,001,332-0, issued 5/22/75 to W.R.Grace & Co.
        D.    Transamerica Title Insurance Policy No. 8,003,173, issued 4/19/78 to H-G
        E.    Transamerica Title Insurance Policy No. 7803753, issued 12/17/80 to H-G West
        F.    Title Opinion as to Lots 15 and 16, Section 30, T5N, R88W, issued 5/22/78 by Davis, Graham & Stubbs ("DG&S")
        G.    Preliminary Title Opinion as to Lots 1,9,10,11,12,15,16,17, Section 13, T5N, R89W, issued 9/16/80 by DG&S
        H.    Title Opinion as to parts of Section 30 and 31, T5N, R88W, issued 5/23/78 by DG&S
        I.    Title Opinion as to part of Section 29, T5N, R88W, issued 5/24/78 by DG&S
        J.    Title Opinion as to parts of Sections 17, 19, 20 and 30, T5N, R88W, issued 5/23/78 by DG&S

5.    <u>Leases and Wildlife Hunting Program Agreements</u>
    5.1    Cooperative Agreement for Wildlife Ranching: State of Colorado in H-G West and H-G;  3/1/91
    5.2    Williams Fork Mountain Ranch Ranching for Wildlife Management Plan
    5.3    Wildlife Ranching Lease: Hayden-Gulch West Coal Co., H-G, and Tarrell Massey; 4/1/90
    5.4    Grazing Lease: ABR and Tuttle Ranch and Livestock; 1/1/94
    5.5    Letter Agreement: ABR and Everett L. Williams; 3/21/94
    5.6    Farm Lease: ABR and Everett and Mary J. Williams; 1/1/94
    5.7    Grazing Lease: ABR and David and Kathleen Smith; 1/1/94
    5.8    Agricultural and Livestock Grazing Lease: J. Burton Tuttle and Hayden-Gulch West Coal Co.; 12/5/80

6.   <u>Minerals</u>
     **6.1**   Memo
     **6.2**   MT (Master Title) Plats
          A.   T4N, R88W
          B.   T4N, R89W
          C.   T5N, R88W
          D.   T5N, R89W
          E.   T6N, R89W

7.   <u>Reclamation</u>
     **7.1**   1994 Annual Reclamation Report: H-G, Hayden Gulch Mine Permit
               No. C-80-003, prepared by TerraMatrix, Inc. for the Colorado
               Division of Minerals and Geology

8.   <u>Utilities</u>
     **8.1**   Water
     **8.2**   Utilities

9.   <u>Miscellaneous</u>
     **9.1**   Climate Data

EXHIBIT E-1
to
AGREEMENT FOR SALE OF REAL PROPERTY

[Special Warranty Deed]


**SPECIAL WARRANTY DEED**

(Statutory Short Form - C.R.S. § 38-30-115)


AXIAL BASIN RANCH COMPANY, a Delaware general partnership, whose street address is _____, of the County of _____ and State of _____, for good and valuable consideration, in hand paid, hereby sells and conveys to PEABODY DEVELOPMENT COMPANY, a Delaware corporation, whose street address is _____, of the County of _____ and State of _____, the following real property in the County of Routt and State of Colorado, to wit:

The real property described on Exhibit A attached hereto and by this reference made part hereof;

with all its appurtenances and warrants the title against all persons claiming under it, subject to any and all easements, reservations, restrictions, and other encumbrances of record, including, without limitation, those matters set forth on Exhibit B attached hereto and by this reference made part hereof.


Signed this _____ day of _____, 1995.


                         AXIAL BASIN RANCH COMPANY, a
                         Delaware general partnership


                    By:  Grace A-B Inc., a Delaware
                         corporation, General Partner

                         By:_____

                         Its:_____


                    By:  Grace A-B II Inc., a Delaware
                         corporation, General Partner

                         By:_____

STATE OF _____        )
                           ) ss.
COUNTY OF _____       )


        The foregoing instrument was acknowledged before me
this _____ day of _____, 1995 by _____,
as _____ of Grace A-B Inc., a Delaware
corporation, as general partner of Axial Basin Ranch Company, a
Delaware general partnership.

        Witness my hand and official seal.

        My commission expires:        _____


                                      _____
                                      Notary Public


STATE OF _____        )
                           ) ss.
COUNTY OF _____       )


        The foregoing instrument was acknowledged before me
this _____ day of _____, 1995 by _____,
as _____ of Grace A-B II Inc., a Delaware
corporation, as general partner of Axial Basin Ranch Company, a
Delaware general partnership.

        Witness my hand and official seal.

        My commission expires:        _____


                                      _____
                                      Notary Public

**EXHIBIT A**
to
**SPECIAL WARRANTY DEED**

[Legal Description of Property]


Attach legal description of portions of the Property
owned by Axial Basin Ranch Company.


**A-1**

EXHIBIT B
to
SPECIAL WARRANTY DEED

[Permitted Exceptions]


Attach description of title exceptions from the
Title Insurance Commitment.

EXHIBIT E-2
to
AGREEMENT FOR SALE OF REAL PROPERTY

[Special Warranty Deed]


**SPECIAL WARRANTY DEED**

(Statutory Short Form - C.R.S. § 38-30-115)

      H-G COAL COMPANY, a Delaware general partnership, whose street address is _____, of the County of _____ and State of _____, for good and valuable consideration, in hand paid, hereby sells and conveys to PEABODY DEVELOPMENT COMPANY, a Delaware corporation, whose street address is _____, of the County of _____ and State of _____, the following real property in the County of Routt and State of Colorado, to wit:

          The real property described on Exhibit A attached
          hereto and by this reference made part hereof;

with all its appurtenances and warrants the title against all persons claiming under it, subject to any and all easements, reservations, restrictions, and other encumbrances of record, including, without limitation, those matters set forth on Exhibit B attached hereto and by this reference made part hereof.


      Signed this \_\_\_\_\_ day of _____, 1995.


              H-G COAL COMPANY, a Delaware
              general partnership

          By:  Coalgrace, Inc., a Delaware
              corporation, General Partner

              By:_____

              Its:_____


          By:  Coalgrace II, Inc., a Delaware
              corporation, General Partner

              By:_____

STATE OF _____            )
                                ) ss.
COUNTY OF _____            )


     The foregoing instrument was acknowledged before me
this _____ day of _____, 1995 by _____,
as _____ of Coalgrace, Inc., a Delaware
corporation, as general partner of H-G Coal Company, a Delaware
general partnership.

     Witness my hand and official seal.

     My commission expires: _____

                                 _____
                                 Notary Public


STATE OF _____            )
                                ) ss.
COUNTY OF _____            )


     The foregoing instrument was acknowledged before me
this _____ day of _____, 1995 by _____,
as _____ of Coalgrace II, Inc., a Delaware
corporation, as general partner of H-G Coal Company, a Delaware
general partnership.

     Witness my hand and official seal.

     My commission expires: _____

                                 _____
                                 Notary Public

EXHIBIT A
to
SPECIAL WARRANTY DEED

[Legal Description of Property]

Attach legal description of portions of the Property
owned by H-G Coal Company.

A-1

EXHIBIT B
to
SPECIAL WARRANTY DEED

[Permitted Exceptions]


Attach description of title exceptions from the
Title Insurance Commitment.

EXHIBIT F-1
to
AGREEMENT FOR SALE OF REAL PROPERTY

[Quitclaim Deed]


**QUITCLAIM DEED**

(Statutory Short Form - C.R.S. § 38-30-116)


AXIAL BASIN RANCH COMPANY, a Delaware general
partnership, whose street address is _____
_____, of the County of _____ and
State of _____, for good and valuable consideration, in
hand paid, hereby sells and quitclaims to PEABODY DEVELOPMENT
COMPANY, a Delaware corporation, whose street address is
_____, of the County
of _____ and State of _____, the following real
property in the County of Routt and State of Colorado, to wit:

Any all water rights and conditional water rights that
are appurtenant to or that are appurtenant to or that
have been used or are intended for use in connection
with the land described herein below (the "Land"),
including, without limitation (i) any and all ditch,
well, pipeline, spring, storage, and reservoir rights,
whether or not adjudicated or evidenced by any decree,
permit, certificate, stock, or other document (ii) all
rights with respect to nontributary groundwater (and
other groundwater that is subject to the provisions of
Colorado Revised Statutes Section 37-90-137(4) or the
corresponding provisions of any successor statute)
underlying the Land, (iii) any permit to use or
construct any water well, and (iv) any decreed or
pending plan of augmentation or water exchange plan.

The above-referenced Land is described as follows:

See Exhibit A attached hereto and by this
reference made part hereof.

with all its appurtenances.


Signed this _____ day of _____, 1995.

AXIAL BASIN RANCH COMPANY, a
Delaware general partnership

By:  Grace A-B Inc., a Delaware
     corporation, General Partner

     By:_____

     Its:_____


By:  Grace A-B II Inc., a Delaware
     corporation, General Partner

     By:_____

     Its:_____


STATE OF _____        )
                             ) ss.
COUNTY OF _____          )


        The foregoing instrument was acknowledged before me
this _____ day of _____, 1995 by _____,
as _____ of Grace A-B Inc., a Delaware
corporation, as general partner of Axial Basin Ranch Company, a
Delaware general partnership.

        Witness my hand and official seal.

        My commission expires:  _____


                                _____
                                Notary Public


-2-

STATE OF _____ )
                       ) ss.
COUNTY OF _____   )

     The foregoing instrument was acknowledged before me
this _____ day of _____, 1995 by _____,
as _____ of Grace A-B II Inc., a Delaware
corporation, as general partner of Axial Basin Ranch Company, a
Delaware general partnership.

     Witness my hand and official seal.

     My commission expires: _____

                                  _____
                                  Notary Public

EXHIBIT A
to
QUITCLAIM DEED

[Legal description of Property]


**Attach legal description of portion of the Property owned by Axial Basin Ranch Company**

EXHIBIT F-2
to
AGREEMENT FOR SALE OF REAL PROPERTY

[Quitclaim Deed]

### QUITCLAIM DEED

(Statutory Short Form - C.R.S. § 38-30-116)

H-G COAL COMPANY, a Delaware general partnership, whose street address is _____ _____, of the County of _____ and State of _____, for good and valuable consideration, in hand paid, hereby sells and quitclaims to PEABODY DEVELOPMENT COMPANY, a Delaware corporation, whose street address is _____, of the County of _____ and State of _____, the following real property in the County of Routt and State of Colorado, to wit:

Any all water rights and conditional water rights that are appurtenant to or that are appurtenant to or that have been used or are intended for use in connection with the land described herein below (the "Land"), including, without limitation (i) any and all ditch, well, pipeline, spring, storage, and reservoir rights, whether or not adjudicated or evidenced by any decree, permit, certificate, stock, or other document (ii) all rights with respect to nontributary groundwater (and other groundwater that is subject to the provisions of Colorado Revised Statutes Section 37-90-137(4) or the corresponding provisions of any successor statute) underlying the Land, (iii) any permit to use or construct any water well, and (iv) any decreed or pending plan of augmentation or water exchange plan.

The above-referenced Land is described as follows:

See Exhibit A attached hereto and by this reference made part hereof.

with all its appurtenances.

Signed this _____ day of _____, 1995.

H-G COAL COMPANY, a Delaware
general partnership

By:  Coalgrace, Inc., a Delaware
    corporation, General Partner

    By:_____

    Its:_____


By:  Coalgrace II, Inc., a Delaware
    corporation, General Partner

    By:_____

    Its:_____


STATE OF _____         )
                               ) ss.
COUNTY OF _____         )


      The foregoing instrument was acknowledged before me
this _____ day of _____, 1995 by _____,
as _____ of Coalgrace, Inc., a Delaware
corporation, as general partner of H-G Coal Company, a Delaware
general partnership.

      Witness my hand and official seal.

      My commission expires: _____


                        _____
      Notary Public

STATE OF _____ )
                       ) ss.
COUNTY OF _____ )

        The foregoing instrument was acknowledged before me this _____ day of _____, 1995 by _____, as _____ of Coalgrace II, Inc., a Delaware corporation, as general partner of H-G Coal Company, a Delaware general partnership.

        Witness my hand and official seal.

        My commission expires: _____

                                _____
                                 Notary Public

**EXHIBIT A**
**to**
**QUITCLAIM DEED**

[Legal description of Property]


Attach legal description of portion of the Property
owned by H-G Coal Company

A-1

**FIRST AMENDMENT**
to
**AGREEMENT FOR SALE OF REAL PROPERTY**

THIS FIRST AMENDMENT TO AGREEMENT FOR SALE OF REAL PROPERTY (this "Amendment") is made and entered into as of the ___18___ day of September, 1995 by and between AXIAL BASIN RANCH COMPANY, a Delaware general partnership ("ABR"), and H-G COAL COMPANY, a Delaware general partnership ("H-G" and referred to herein together with ABR as the "Seller"), and PEABODY DEVELOPMENT COMPANY, a Delaware corporation ("Buyer").

## Recitals

This Amendment is made with respect to the following facts:

A.    Buyer and Seller are the parties to the Agreement for Sale of Real Property dated August 2, 1995 (the "Agreement"), whereby Seller agreed to sell to Buyer, and Buyer agreed to purchase from Seller, certain real property located in Routt County, Colorado, as more particularly described in the Agreement (the "Property").

B.    Buyer and Seller now wish to amend the Agreement on the terms and conditions set forth herein.

## Agreement

NOW, THEREFORE, in consideration of the Agreement and the obligations of the parties set forth therein, and in consideration of the promises and agreements of the parties set forth herein, the sufficiency of which is hereby acknowledged by the parties hereto, Buyer and Seller do hereby promise and agree as follows:

1.    Purchase Price.  Paragraph 2 of the Agreement is hereby amended to read as follows:

2.    Purchase Price.  The purchase price for the Property (the "Purchase Price") shall be FOUR MILLION AND NO/100 DOLLARS ($4,000,000.00).  The Purchase Price shall be payable as follows:

(A)    Earnest Money Deposit.  Concurrently with the execution of this Agreement by Buyer and Seller, Buyer shall deposit SEVENTY-FIVE THOUSAND AND NO/100 DOLLARS ($75,000.00) into escrow with

Transamerica Title Insurance Company (the "Escrow Agent"). The Escrow Agent shall hold and disburse such funds (referred to herein, together with any interest or other income earned thereon, as the "Deposit") in accordance with the terms of this Agreement and pursuant to an Escrow Agreement among Seller, Buyer, and the Escrow Agent in the form of Attachment 1 attached hereto and by this reference made part hereof. At the Closing (as hereinafter defined), the Deposit shall be paid to Seller and credited against the Purchase Price. In the event that Closing fails to occur as a result of a breach of this Agreement by Seller, the Deposit shall be returned to Buyer. In the event that Closing fails to occur as a result of a breach of this Agreement by Buyer, the Deposit shall be forwarded to Seller.

(B)  Closing Payment. ONE MILLION AND NO/100 DOLLARS ($1,000,000.00), as adjusted for the net of all credits and prorations provided for herein (the "Closing Payment"), shall be paid by Buyer to Seller at the Closing in immediately available funds by wire transfer to the account designated by Seller.

(C)  Note and Deed of Trust. The balance of the Purchase Price, in the amount of THREE MILLION AND NO/100 DOLLARS ($3,000,000.00) shall be paid by Buyer to Seller in the form of a Promissory Note (the "Note") to be executed by Buyer and delivered to Seller at the Closing. The Note shall bear no interest, except in the event of a default thereunder by Buyer, in which case default interest shall accrue at the rate of 18% per annum. The Note shall be payable in five annual installments payable on the first, second, third, fourth, and fifth anniversaries of the Note. The installments shall be in the following amounts:

| Anniversary: | Amount: |
|---|---|
| First | 666,667.00 |
| Second | 666,667.00 |
| Third | 666.667.00 |
| Fourth | 500,000.00 |
| Fifth | 500,000.00 |

The Note shall be secured by a first priority Deed of Trust on the Property (the "Deed of Trust") to be executed by Buyer and delivered to Seller at the Closing. Before the end of the Inspection Period, both Buyer and Seller shall use diligent efforts to finalize the forms of the Note and the

Deed of Trust to be executed by Buyer at the
Closing.

2.   Reclamation Obligations.   Paragraph 9 of the
Agreement is hereby amended to read as follows:

9.   Reclamation Obligations.   Both prior to and
after the Closing, Seller shall retain all obligations,
responsibilities, and liabilities relating to the
Reclamation Obligations, and, from and after the date
hereof, Seller shall use reasonably diligent efforts to
complete all work necessary to achieve a Release Date
(as hereinafter defined) as early as reasonably
possible.   At the Closing, Seller will not convey to
Buyer, and Seller will retain in H-G, title to the
Mined Land; provided that, on the fifth (5th) business
day after the Release Date, Buyer and Seller shall
consummate the closing (the "Mined Land Closing") of
the conveyance of the Mined Land from Seller to Buyer.
At the Mined Land Closing, Seller shall convey, for no
additional consideration, the Mined Land (except the
Water Rights relating thereto) to Buyer by
special warranty deed in the form of Exhibit E-2
attached hereto and by this reference made a part
hereof and shall convey the Water Rights relating to
the Mined Land to Buyer by quitclaim deed in the form
of Exhibit F-2 attached hereto and by this reference
made a part hereof.   At the Mined Land Closing, (i) the
terms of Paragraphs 13, 14, 16, and 17 of the Agreement
shall apply with respect to the conveyance of the
Mined Land from Seller to Buyer as of the date of the
Mined Land Closing, (ii) Seller shall, at Seller's
expense, cause the Title Company to deliver to Buyer an
unconditional written undertaking to issue to Buyer an
Owner's Policy in the form described in Paragraph 15(G)
of the Agreement insuring title to the Mined Land in
Buyer in the amount of $500,000, and (iii) Seller shall
assign to Buyer, and Buyer shall assume, any and all
Agricultural Leases and Additional Documents with
respect to the Mined Land, and any other similar
agreements executed after the Closing with respect to
the Mined Land, by an instrument in the form of the
instrument executed at the Closing pursuant to
Paragraph 15(E) of the Agreement.   For purposes of this
Agreement, the Reclamation Obligations shall be deemed
complete on the date (the "Release Date") that Seller
has obtained (a) the full release of all bonds,
permits, agreements, and other obligations relating to
the Reclamation Obligations which have been posted by,
issued in the name of, or otherwise binding upon Seller
and (b) any and all consents and approvals from all
governmental and quasi-governmental bodies with
jurisdiction over the Reclamation Obligations that are
necessary for the release of the bonds and the full

-3-

completion of the Reclamation Obligations. From and after the date of the Closing, and until the consummation of the Mined Land Closing, Buyer and Seller shall cooperate with each other in all reasonable respects with regard to the management of the Mined Land, including, without limitation, with regard to the formation, extension, and administration of any leases or agreements which are or may be structured to effect the Mined Land together with other portions of the Property, such as any wildlife, hunting, grazing, farming, or other similar leases and agreements. From and after the date of the Closing, and until the consummation of the Mined Land Closing, Seller shall permit Buyer access to and from the surface of the Mined Land at any time and from time to time as may be reasonably necessary in connection with Buyer's use and enjoyment of the Property; provided that in no event shall Seller be obligated hereby to permit Buyer to use the Mined Land in any manner which may interfere with, make more costly, or delay in any material way the performance of any work by Seller in its efforts to complete the Reclamation Obligations; and provided further that Buyer shall indemnify and hold Seller harmless from and against any and all obligations, claims, losses, and damages, including environmental response and remediation costs and liabilities, and including costs and attorneys' fees, resulting from or related to Buyer's access to the Mined Land and activities thereon, including, without limitation, any mechanics' liens. The obligations of the parties under this Paragraph 9 shall survive the Closing.

3.   _Inspection Period_.  The second sentence of Paragraph 7 of the Agreement is hereby amended to read as follows:

The Inspection Period shall commence on the date of this Agreement and expire on September 20, 1995.

4.   _Corporate Approvals_.  The third sentence of Paragraph 27 of the Agreement is hereby amended to read as follows:

The Approval Period shall commence on the date of this Agreement and expire on September 20, 1995.

5.   _Closing_.  Paragraph 15 of the Agreement is hereby amended as follows:

A.   The first sentence of Paragraph 15 of the Agreement is hereby amended to read as follows:

-4-

The closing of the sale of the Property (except for the Mined Land) from Seller to Buyer (the "Closing") shall take place in the offices of the Title Company at 10:00 AM MDT on October 2, 1995.

B.    Paragraph 15(A) of the Agreement is hereby amended to read as follows:

(A)  Buyer shall pay to Seller the Closing Payment and Buyer shall execute and deliver to Seller the Note and the Deed of Trust.

C.    Paragraph 15(C) of the Agreement is hereby amended to read as follows:

(C)  ABR shall convey the Property, except for the Water Rights relating thereto (and except for the Mined Land and the Water Rights relating thereto) to Buyer by a duly executed special warranty deed in the form of Exhibit E-1 attached hereto and by this reference made a part hereof (the "Deed").

D.    Paragraph 15(D) of the Agreement is hereby amended to read as follows:

(D)  ABR shall convey the Water Rights (except for the Water Rights relating to the Mined Land) to Buyer by a duly executed quitclaim deed in the form of Exhibit F-1 attached hereto and by this reference made a part hereof.

E.    Paragraph 15(E) of the Agreement is hereby amended to read as follows:

(E)  Seller shall assign to Buyer all of its right, title, and interest in, to, and under the Agricultural Leases and the Additional Documents (except to the extent the same relate to the Mined Land), and Buyer shall assume all obligations of Seller arising thereunder from and after the date of the Closing, by an instrument in form reasonably acceptable to both Buyer and Seller.

F.    Paragraph 15(G) of the Agreement is hereby amended to read as follows:

(G)  Seller shall, at Seller's expense, cause the Title Company to deliver to Buyer an unconditional written undertaking to issue to Buyer its ALTA Form B Owner's Policy of Title Insurance (Rev. 1992) (the "Owner's Policy")

-5-

insuring title to the Property (except for the Mined Land) in Buyer in the amount of $3,500,000, subject only to the Permitted Exceptions.

6.  <u>Prorations</u>.  The prorations to be made at the Closing pursuant to the terms of Paragraph 16 of the Agreement shall be made with respect to the portion of the Property which does not include the Mined Land rather than the entire Property.

7.  <u>Form of Special Warranty Deeds</u>.  The form of the special warranty deeds attached to the Agreement as <u>Exhibits E-1</u> and <u>E-1</u> shall be amended to be in the form of the documents attached hereto as <u>Attachments 1</u> and <u>2</u> respectively.

8.  <u>Assignment</u>.  Buyer has notified Seller that, at the Closing, Buyer intends to assign all of its right, title, and interest in, to, and under the Agreement to Cottonwood Land Company, a Delaware corporation ("Cottonwood").  Pursuant to the terms of Paragraph 18 of the Agreement, Seller hereby confirms its consent to such assignment; provided that, at the Closing, Buyer shall cause Peabody Holding Company, Inc., a New York corporation ("PHCI"), to execute and deliver to Seller an unconditional guaranty of the payment and performance of all obligations of Cottonwood under the Agreement, the Note, and the Deed of Trust in form and substance reasonably acceptable to both Buyer and Seller.  Cottonwood is a wholly-owned subsidiary of PHCI.

9.  <u>Acknowledgements</u>.  Buyer hereby acknowledges that there are a number of parcels of land that are owned by the United States Bureau of Land Management or other third parties which are fully-enclosed within the perimeter boundary of the Property.  Buyer hereby acknowledges that the respective amounts of title insurance required hereunder to be obtained by Seller with respect to the Property (other than the Mined Land) and the Mined Land are not intended in any way to reflect a determination or opinion of the value of those portions of the Property.  Such amounts shall not be used or relied upon by either party or by any third party for any purpose whatsoever, including, without limitation, as evidence of the value, or either party's opinion of the value, of the respective portions of the Property.

10.  <u>Counterparts; Facsimile Execution</u>.  This Amendment may be executed in counterparts and, when counterparts of this Amendment have been executed and delivered by each of the parties hereto, this Amendment shall be fully binding and effective, just as if each of the parties hereto had executed and delivered a single counterpart hereof.  Without limiting the manner in which execution of this Amendment may otherwise be effected, execution by any party may be effected by facsimile transmission of a signature page hereof executed by such party.  If any party effects execution in such manner, such party shall also promptly deliver to the other parties a counterpart physically signed by

-6-

such party, but the failure of any such party to do so shall not invalidate the execution hereof by facsimile transmission.

11.  Effect.  Except as specifically set forth in this Amendment, the Agreement shall not be amended or modified by this Amendment.  As so amended, the Agreement shall continue in full force and effect.

DATED as of the day and year first set forth above.

SELLER:

AXIAL BASIN RANCH COMPANY, a
Delaware general partnership

By: Grace A-B Inc., a Delaware
corporation, General Partner

By: _____
R. D. Usilton, President

By: Grace A-B II Inc., a Delaware
corporation, General Partner

By: _____
R. D. Usilton, President

H-G COAL COMPANY, a Delaware
general partnership

By: Coalgrace, Inc., a Delaware
corporation, General Partner

By: _____
R. D. Usilton, President

By: Coalgrace II, Inc., a Delaware
corporation, General Partner

By: _____
R. D. Usilton, President

BUYER:

PEABODY DEVELOPMENT COMPANY, a
Delaware corporation

By: *Jack L Lautenschlager*
J. L. Lautenschlager, President

-8-

DATED as of the day and year first set forth above.

SELLER:

AXIAL BASIN RANCH COMPANY, a
Delaware general partnership

By:  Grace A-B Inc., a Delaware
     corporation, General Partner

     By: _R̶D̶ ̶U̶s̶i̶l̶t̶o̶n̶_____
         R. D. Usilton, President

By:  Grace A-B II Inc., a Delaware
     corporation, General Partner

     By: _R̶D̶ ̶U̶s̶i̶l̶t̶o̶n̶_____
         R. D. Usilton, President

H-G COAL COMPANY, a Delaware
general partnership

By:  Coalgrace, Inc., a Delaware
     corporation, General Partner

     By: _R̶D̶ ̶U̶s̶i̶l̶t̶o̶n̶_____
         R. D. Usilton, President

By:  Coalgrace II, Inc., a Delaware
     corporation, General Partner

     By: _R̶D̶ ̶U̶s̶i̶l̶t̶o̶n̶_____
         R. D. Usilton, President

BUYER:

PEABODY DEVELOPMENT COMPANY, a
Delaware corporation

By: _____
    J. L. Lautenschlager, President

-8-

**ATTACHMENT 1**

[Escrow Agreement]

## ESCROW AGREEMENT

Escrow Number: _____

THIS ESCROW AGREEMENT (this "Agreement") is made and entered into this _____ day of September, 1994 by and among AXIAL BASIN RANCH COMPANY, a delaware general partnership ("ABR"), H-G COAL COMPANY, a Delaware general partnership ("H-G" and referred to herein together with ABR as the "Seller"), PEABODY DEVELOPMENT COMPANY, a Delaware corporation ("Buyer"), and TRANSAMERICA TITLE INSURANCE COMPANY (the "Escrow Agent").

### RECITALS

This Agreement is made with respect to the following facts:

A.    Buyer and Seller are the parties to the Agreement for Sale of Real Property dated August 2, 1995 (the "Sale Contract"), whereby Seller agreed to sell to Buyer, and Buyer agreed to purchase from Seller, certain real property located in Routt County, Colorado, on and subject to the terms and conditions set forth in the Sale Contract.  A copy of the Sale Contract is attached hereto as <u>Exhibit A</u> and by this reference made part hereof.

B.    Pursuant to the terms of the Sale Contract, Buyer has agreed to pay an earnest money deposit to be held in escrow pending either the closing of the transaction contemplated in the Sale Contract or the termination of the Sale Contract.

### AGREEMENT

In consideration of the Sale Contract and the obligations of the parties thereunder, and in consideration of the promises and agreements of the parties set forth herein, the receipt and sufficiency of which are hereby acknowledged by each of the parties hereto, Seller, Buyer, and the Escrow Agent each hereby promise and agree as follows:

1.    <u>Acknowledgement by Escrow Agent</u>.  The Escrow Agent hereby acknowledges receipt of $75,000.00 (the "Funds") from Buyer delivered pursuant to the terms of the Sale Contract. The Escrow Agent shall hold and disburse the Funds in accordance with the terms set forth in this Agreement.

2.    <u>Funds to be Deposited</u>.  The Escrow Agent shall deposit the Funds in a federally-insured interest-bearing savings account or money market fund (the "Account"); provided, however,

that the Escrow Agent shall not deposit the Funds in any account which limits, restricts, or delays their withdrawal. Any interest or other income earned on the Funds (the "Interest") shall be held in the Account and disbursed in accordance with the provisions of this Agreement as part of the Funds. As used herein, the term "Funds" shall include the Interest.

    3.   <u>Disbursement of Funds</u>.  The Escrow Agent shall disburse the Funds as follows:

    (A)  <u>Joint Instructions or Court Order</u>.  The Escrow Agent shall disburse all or any portion of the Funds at any time and from time to time pursuant to (i) written instructions (the "Joint Instructions") executed by both Seller and Buyer, or (ii) the order of a court of competent jurisdiction ("Court Order"). Buyer and Seller each hereby promise and agree to execute such Joint Instructions as may be necessary to provide for the payment of the Funds in accordance with the terms of the Sale Contract. Within one business day after receipt of any Joint Instructions or the entry of any Court Order, the Escrow Agent shall disburse the Funds as directed in such Joint Instructions or Court Order.

    (B)  <u>Unilateral Instructions</u>.

    (i)  <u>Right to Give Unilateral Instructions</u>. Subject to the provisions of this <u>Paragraph 3(B)</u>, the Escrow Agent may also disburse all or any portion of the Funds at any time and from time to time pursuant to written instructions (the "Unilateral Instructions") executed by only one party (the "Requesting Party"). Upon receipt of any Unilateral Instructions, the Escrow Agent shall promptly give written notice (the "Disbursement Notice") of its receipt of the Unilateral Instructions, together with a copy of the Unilateral Instructions, to the other party (the "Receiving Party").

    (ii)  <u>Right to Object</u>.  The Receiving Party shall have the right to object (an "Objection") to any Unilateral Instructions by delivering written notice of objection to the Escrow Agent and the Requesting Party within ten days after its receipt of the Disbursement Notice (the "Objection Period") stating in reasonable detail the grounds upon which such Objection is made. The Receiving Party may waive its right to make an Objection at any time during the Objection Period by delivering written notice of waiver to the Escrow Agent and the Requesting Party, in which event, the Objection Period shall end as of the date of such notice.

    (iii)  <u>Disbursement</u>.  Unless the Escrow Agent earlier receives Joint Instructions or a Court Order,

the Escrow Agent shall disburse the Funds as directed in the Unilateral Instructions within one business day after the last day of the Objection Period.  If the Escrow Agent receives an Objection during the Objection Period, the Escrow Agent shall (a) disburse any part of the Funds requested in the Unilateral Instructions to which no objection is made in the Objection as directed in the Unilateral Instructions, and (b) hold and not disburse the portion of the Funds to which the Objection applies except in accordance with any subsequent Joint Instructions or a Court Order.

4.    <u>Limitation on Rights and Duties of Escrow Agent</u>. The Escrow Agent shall not be required or permitted to inquire as to the accuracy or validity of any Joint Instructions, Unilateral Instructions, or Objections submitted in accordance with the terms of this Agreement.  The Escrow Agent shall not disburse any portion of the Funds to any party except pursuant to any Joint Instructions or Unilateral Instructions submitted in accordance with the terms of this Agreement or pursuant to any Court Order.

5.    <u>Termination</u>.  This Agreement shall terminate when the Funds have been fully disbursed in accordance herewith.

6.    <u>Interpleader</u>.  In the event the Escrow Agent and its legal counsel shall, in good faith, be uncertain as to the Escrow Agent's obligations under this Agreement, and in the event the Escrow Agent is unable to obtain the written agreement of Buyer and Seller resolving such uncertainty, the Escrow Agent may bring a declaratory or interpleader action, naming Buyer and Seller as respondents or defendants, in any court of competent jurisdiction in order to resolve such uncertainty; and, in such event, the Escrow Agent shall be entitled to retain from the Funds its out-of-pocket costs, including reasonable attorney's fees, incurred in connection with such action.

7.    <u>Notices</u>.  All notices required or permitted hereunder shall be in writing and shall be deemed given when a copy thereof is actually delivered, by hand, by commercial courier, by successful facsimile transmission, or by certified or registered mail, return receipt requested, to the parties at the following address:

(i)    If to Buyer:

Peabody Development Company
310 North Memorial Drive, Suite 310
St. Louis, Missouri  63102-2401
Attention:  J. L. Lautenschlager
Telephone:  (314) 342-7696
Facsimile:  (303) 342-7627

(ii)   If to Seller:

Axial Basin Ranch Company
H-G Coal Company
c/o Davis, Graham & Stubbs, L.L.C.
4700 Republic Plaza
370 Seventeenth Street
Denver, Colorado  80202
Attention:  John G. McGrath
Telephone:  (303) 892-9400
Facsimile:  (303) 893-1379

(iii)  If to the Escrow Agent:

Transamerica Title Insurance Company
_____

Attention: _____
Telephone:  (____) _____
Facsimile:  (____) _____

or at such other address as any party shall request by a notice given pursuant to this <u>Paragraph 7</u>.

8.   <u>Attorneys' Fees</u>.  In the event suit is brought for any form of relief hereunder, the prevailing party in such suit shall be entitled to recover, in addition to any other relief available to such party, reasonable attorneys' fees incurred in connection with such suit.

9.   <u>Choice of Law</u>.  The validity and effect of this Agreement shall be determined in accordance with the laws of the State of Colorado.

10.   <u>Counterparts</u>.  This Agreement may be executed in counterparts and, when counterparts of this Agreement have been executed and delivered by each of the parties hereto, this Agreement shall be fully binding and effective, just as if each of the parties hereto had executed and delivered a single counterpart hereof.

11.   <u>Entire Agreement</u>.  This Agreement contains the entire contract, understanding, and agreement between the parties with respect to the subject matter hereof, and supersedes all prior understandings, statements, discussions, negotiations, and correspondence, all of which are by the execution hereof rendered null and void.  No amendment or modification of this Agreement shall be made or deemed to have been made unless made in writing executed by the party or parties to be bound thereby.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates indicated below intending that it be valid and effective from and after the date first written above.

SELLER:

AXIAL BASIN RANCH COMPANY, a
Delaware general partnership

By:  Grace A-B Inc., a Delaware
     corporation, General Partner

     By:_____
          R. D. Usilton, President

By:  Grace A-B II Inc., a Delaware
     corporation, General Partner

     By:_____
          R. D. Usilton, President

H-G COAL COMPANY, a Delaware
general partnership

By:  Coalgrace, Inc., a Delaware
     corporation, General Partner

     By:_____
          R. D. Usilton, President

By:  Coalgrace II, Inc., a Delaware
     corporation, General Partner

     By:_____
          R. D. Usilton, President

BUYER:

PEABODY DEVELOPMENT COMPANY, a
Delaware corporation

By:_____
     J. L. Lautenschlager, President

-5-

ESCROW AGENT:

TRANSAMERICA TITLE INSURANCE
COMPANY

By:_____
　　 Its Authorized Representative

Date:_____

**ATTACHMENT 2**

[Special Warranty Deed from ABR]

EXHIBIT E-1
to
AGREEMENT FOR SALE OF REAL PROPERTY

[Special Warranty Deed]


**SPECIAL WARRANTY DEED**

(Statutory Short Form - C.R.S. § 38-30-115)


AXIAL BASIN RANCH COMPANY, a Delaware general partnership, whose street address is _____, of the County of _____ and State of _____, for good and valuable consideration, in hand paid, hereby sells and conveys to PEABODY DEVELOPMENT COMPANY, a Delaware corporation, whose street address is _____, of the County of _____ and State of _____, the following real property in the County of Routt and State of Colorado, to wit:

The real property described on Exhibit A attached hereto and by this reference made part hereof;

with all its appurtenances and warrants the title against all persons claiming under it, subject to any and all easements, reservations, restrictions, and other encumbrances of record, including, without limitation, those matters set forth on Exhibit B attached hereto and by this reference made part hereof.


Signed this _____ day of _____, 1995.


AXIAL BASIN RANCH COMPANY, a Delaware general partnership

By:  Grace A-B Inc., a Delaware corporation, General Partner

By:_____

Its:_____


By:  Grace A-B II Inc., a Delaware corporation, General Partner

By:_____

Its: _____

STATE OF _____          )
                                 ) ss.
COUNTY OF _____           )


    The foregoing instrument was acknowledged before me
this _____ day of _____, 1995 by _____,
as _____ of Grace A-B Inc., a Delaware
corporation, as general partner of Axial Basin Ranch Company, a
Delaware general partnership.

    Witness my hand and official seal.

    My commission expires: _____

                      _____
                      Notary Public


STATE OF _____          )
                                 ) ss.
COUNTY OF _____           )


    The foregoing instrument was acknowledged before me
this _____ day of _____, 1995 by _____,
as _____ of Grace A-B II Inc., a Delaware
corporation, as general partner of Axial Basin Ranch Company, a
Delaware general partnership.

    Witness my hand and official seal.

    My commission expires: _____

                      _____
                      Notary Public

EXHIBIT A
to
SPECIAL WARRANTY DEED

[Legal Description of Property]


Attach legal description of portions of the Property
owned by Axial Basin Ranch Company.

A-1

EXHIBIT B
to
SPECIAL WARRANTY DEED

[Permitted Exceptions]


Attach description of title exceptions from the
Title Insurance Commitment.

**ATTACHMENT 3**

[Special Warranty Deed from H-G]