EXHIBIT E-2
to
AGREEMENT FOR SALE OF REAL PROPERTY

[Special Warranty Deed]


**SPECIAL WARRANTY DEED**

(Statutory Short Form - C.R.S. § 38-30-115)


      H-G COAL COMPANY, a Delaware general partnership, whose street address is _____ _____, of the County of _____ and State of _____, for good and valuable consideration, in hand paid, hereby sells and conveys to PEABODY DEVELOPMENT COMPANY, a Delaware corporation, whose street address is _____, of the County of _____ and State of _____, the following real property in the County of Routt and State of Colorado, to wit:

      The real property described on Exhibit A attached hereto and by this reference made part hereof;

with all its appurtenances and warrants the title against all persons claiming under it, subject to any and all easements, reservations, restrictions, and other encumbrances of record, including, without limitation, those matters set forth on Exhibit B attached hereto and by this reference made part hereof.


      Signed this \_\_\_\_\_ day of _____, 1995.


               H-G COAL COMPANY, a Delaware
               general partnership

      By:  Coalgrace, Inc., a Delaware
          corporation, General Partner

          By:_____

          Its:_____


      By:  Coalgrace II, Inc., a Delaware
          corporation, General Partner

          By:_____

Its:_____

STATE OF _____              )
                                          ) ss.
COUNTY OF _____               )


      The foregoing instrument was acknowledged before me
this \_\_\_\_\_ day of _____, 1995 by _____,
as _____ of Coalgrace, Inc., a Delaware
corporation, as general partner of H-G Coal Company, a Delaware
general partnership.

      Witness my hand and official seal.

      My commission expires:    _____


                           _____
                           Notary Public


STATE OF _____              )
                                          ) ss.
COUNTY OF _____              )


      The foregoing instrument was acknowledged before me
this \_\_\_\_\_ day of _____, 1995 by _____,
as _____ of Coalgrace II, Inc., a Delaware
corporation, as general partner of H-G Coal Company, a Delaware
general partnership.

      Witness my hand and official seal.

      My commission expires:    _____


                           _____
                           Notary Public

EXHIBIT A
to
SPECIAL WARRANTY DEED

[Legal Description of Property]


Attach legal description of portions of the Property
owned by H-G Coal Company.

EXHIBIT B
to
SPECIAL WARRANTY DEED

[Permitted Exceptions]


Attach description of title exceptions from the
Title Insurance Commitment.

**SECOND AMENDMENT**
**to**
**AGREEMENT FOR SALE OF REAL PROPERTY**

THIS SECOND AMENDMENT TO AGREEMENT FOR SALE OF REAL PROPERTY (this "Amendment") is made and entered into as of the 19th day of September, 1995 by and between AXIAL BASIN RANCH COMPANY, a Delaware general partnership ("ABR"), and H-G COAL COMPANY, a Delaware general partnership ("H-G" and referred to herein together with ABR as the "Seller"), and PEABODY DEVELOPMENT COMPANY, a Delaware corporation ("Buyer").

## Recitals

This Amendment is made with respect to the following facts:

A.  Buyer and Seller are the parties to the Agreement for Sale of Real Property dated August 2, 1995, as amended by the First Amendment to Agreement for Sale of Real Property dated September 18, 1995 (the "Amended Agreement"), whereby Seller agreed to sell to Buyer, and Buyer agreed to purchase from Seller, certain real property located in Routt County, Colorado, as more particularly described in the Amended Agreement (the "Property").

B.  Buyer and Seller now wish to further amend the Amended Agreement to provide additional time for the parties to obtain any necessary corporate approvals for the sale.

## Agreement

NOW, THEREFORE, in consideration of the terms of the Amended Agreement and the obligations of the parties set forth therein, and in consideration of the promises and agreements of the parties set forth herein, the sufficiency of which is hereby acknowledged by the parties hereto, Buyer and Seller do hereby promise and agree as follows:

1.  Corporate Approvals.  The third sentence of Paragraph 27 of the Amended Agreement is hereby amended to read as follows:

> The Approval Period shall commence on the date of this Agreement and expire at 5:00 PM MDT on September 22, 1995.

2.   <u>Counterparts; Facsimile Execution</u>.  This Amendment may be executed in counterparts and, when counterparts of this Amendment have been executed and delivered by each of the parties hereto, this Amendment shall be fully binding and effective, just as if each of the parties hereto had executed and delivered a single counterpart hereof.  Without limiting the manner in which execution of this Amendment may otherwise be effected, execution by any party may be effected by facsimile transmission of a signature page hereof executed by such party.  If any party effects execution in such manner, such party shall also promptly deliver to the other parties a counterpart physically signed by such party, but the failure of any such party to do so shall not invalidate the execution hereof by facsimile transmission.

3.   <u>Effect</u>.  Except as specifically set forth in Section 1 of this Amendment, the Amended Agreement shall not be amended or modified by this Amendment.  As so amended, the Amended Agreement shall continue in full force and effect.

DATED as of the day and year first set forth above.

SELLER:

AXIAL BASIN RANCH COMPANY, a
Delaware general partnership

By:  Grace A-B Inc., a Delaware
     corporation, General Partner

     By: _____
         R. D. Usilton, President

By:  Grace A-B II Inc., a Delaware
     corporation, General Partner

     By: _____
         R. D. Usilton, President

H-G COAL COMPANY, a Delaware
general partnership

By:  Coalgrace, Inc., a Delaware
     corporation, General Partner

     By: _____
         R. D. Usilton, President

By:  Coalgrace II, Inc., a Delaware
     corporation, General Partner

     By: _____
         R. D. Usilton, President

BUYER:

PEABODY DEVELOPMENT COMPANY, a
Delaware corporation

By: _____
    J. L. Lautenschlager, President

-3-

DATED as of the day and year first set forth above.

SELLER:

AXIAL BASIN RANCH COMPANY, a
Delaware general partnership

By:   Grace A-B Inc., a Delaware
      corporation, General Partner

      By: _____
          R. D. Usilton, President

By:   Grace A-B II Inc., a Delaware
      corporation, General Partner

      By: _____
          R. D. Usilton, President

H-G COAL COMPANY, a Delaware
general partnership

By:   Coalgrace, Inc., a Delaware
      corporation, General Partner

      By: _____
          R. D. Usilton, President

By:   Coalgrace II, Inc., a Delaware
      corporation, General Partner

      By: _____
          R. D. Usilton, President

BUYER:

PEABODY DEVELOPMENT COMPANY, a
Delaware corporation

By: _J. L. Lautenschlager_____
    J. L. Lautenschlager, President

-3-

DAVIS, GRAHAM & STUBBS, L.L.C.

A LIMITED LIABILITY COMPANY

ATTORNEYS AT LAW

JOHN G. McGRATH
303-892-7468

SUITE 4700
370 SEVENTEENTH STREET
DENVER, COLORADO 80202

MAILING ADDRESS
POST OFFICE BOX 185
DENVER, COLORADO 80201-0185

TELEPHONE 303-892-9400    TELEX 413726 DGS DVR UD
FACSIMILE 303-893-1379    CABLE DAVGRAM, DENVER

WASHINGTON D.C. OFFICE
SUITE 1200
1299 NEW YORK AVENUE, N.W.
WASHINGTON, D.C. 20005-3919
TELEPHONE 202-822-8660
FACSIMILE 202-893-4794

September 22, 1995

<u>VIA FACSIMILE</u>

Tom Dietrich, Esq.
Peabody Development Co.
701 Market Street, Suite 700
St. Louis, MO  63101

        Re:  <u>Williams Fork Mountain Ranch</u>

Dear Tom:

        Reference is made to the Agreement for Sale of Real
Property, dated August 2, 1995, as amended by the First Amendment
to Agreement for Sale of Real Property, dated September 18, 1995,
and by the Second Amendment to Agreement for Sale of Real
Property, dated September 19, 1995 (the "Amended Agreement").

        This letter is written to effect the agreement of the
parties under the Amended Agreement to extend the Approval Period
under Paragraph 27 of the Amended Agreement to expire at
5:00 p.m. MDT on September 26, 1995,

        This letter will confirm, on behalf of my clients,
their agreement the foregoing extension.

U:\DATA\PUBL\FDAH\D450182.2
September 22, 1995  11:34am

SENT BY:

Tom Dietrich, Esq.
September 22, 1995
Page 2

          Please confirm your agreement to the foregoing by
signing and returning to me a copy of this letter.

                                   Very truly yours,

                                   John G. McGrath
                                        for
                                   DAVIS, GRAHAM & STUBBS, L.L.C.


Agreed to and Accepted this _22nd_ day of September, 1995.

PEABODY DEVELOPMENT COMPANY,
a Delaware corporation

By: _____
      T.W. Dietrich



## FACSIMILE OPERATOR SHEET

Please deliver the following documents to:

_JOHN McGRATH_

organization:

facsimile number: (303) 893 - 1379

There are ___ pages including cover. If you experience difficulty, please call us at the following number:

314-342- _____ .

Mailing Address:      Peabody Holding Company, Inc.     Facsimile No. 314-342- _____
701 Market Street
Suite 700                         Facsimile Operator : _____
St. Louis, Missouri 63101-1826

Date _9/22/95_ Time _____ From _Th Dietrich_

Message:

The information contained in this facsimile message is confidential information intended only for the use of the individual or entities named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the above address via the U. S. Postal Service. Thank you.

## SPECIAL WARRANTY DEED

### (Statutory Short Form - C.R.S. § 38-30-115)

AXIAL BASIN RANCH COMPANY, a Delaware general partnership, whose street address is c/o W.R. Grace & Co., One Town Center Road, Boca Raton, Florida 33486, for good and valuable consideration, in hand paid, hereby sells and conveys to COTTONWOOD LAND COMPANY, a Delaware corporation, whose street address is c/o Peabody Holding Company, Inc., 301 North Memorial Drive, Suite 310, St. Louis, Missouri 63102-2401, the following real property in the County of Routt and State of Colorado, to wit:

The real property described on Exhibit A attached hereto and by this reference made part hereof;

with all its appurtenances and warrants the title against all persons claiming under it, subject to any and all easements, reservations, restrictions, and other encumbrances of record, including, without limitation, those matters set forth on Exhibit B attached hereto and by this reference made part hereof.

Signed this 2nd day of October, 1995.

AXIAL BASIN RANCH COMPANY, a
Delaware general partnership

By: Grace A-B Inc., a Delaware
corporation, General Partner

By: E D Ublln

Its: President

By: Grace A-B II Inc., a Delaware
corporation, General Partner

By: E D Ublln

Its: President

G:\DATA\PUBL\JMCG\D472606.2
September 27, 1995  5:09pm

STATE OF *Colorado*        )
                                 ) ss.
COUNTY OF *Denver*        )

      The foregoing instrument was acknowledged before me
this *2nd* day of *October* , 1995 by *R O USILTON* ,
as *President* of Grace A-B Inc., a Delaware
corporation, as general partner of Axial Basin Ranch Company, a
Delaware general partnership.

      Witness my hand and official seal.

      My commission expires: *May 12, 1998*
                                 *Margaret M. Newton*
                                 Notary Public


STATE OF *Colorado*        )
                                 ) ss.
COUNTY OF *Denver*        )

      The foregoing instrument was acknowledged before me
this *2nd* day of *October* , 1995 by *R O USILTON* ,
as *President* of Grace A-B II Inc., a Delaware
corporation, as general partner of Axial Basin Ranch Company, a
Delaware general partnership.

      Witness my hand and official seal.

      My commission expires: *May 12, 1998*
                                   *Margaret M. Newton*
                                 Notary Public

-2-

EXHIBIT A
TO
SPECIAL WARRANTY DEED

Legal Description

<u>TOWNSHIP 4 NORTH, RANGE 88 WEST OF THE 6TH P.M.</u>
<u>COUNTY OF ROUTT, STATE OF COLORADO</u>

Section 7:    Lot 1, N1/2SE1/4, SE1/4SW1/4;
Section 8:    Lot 4;
Section 18:   Lots 1, 2, 3, NE1/4NW1/4;
              EXCEPT that part of the following lying in Lot 3 of Section
              18, described by metes and bounds as follows:  beginning at a
              point whence the Southeast corner of Lot 4 of said Section
              bears South 624 feet (magnetic variation 16deg 45min east),
              thence North 56deg 30min West 411 feet, thence North 23deg
              27min East 163 feet, thence North 38deg 14min West 252 feet,
              thence North 89deg 43min West 155 feet, thence North 64deg
              22min West 80 feet, thence North 20deg East 217 feet, thence
              South 73deg 04min East 180 feet, thence South 83deg East 423
              feet, to the East line of said Lots 3 and 4, thence South
              along said East line 711 feet to the point of beginning.

<u>TOWNSHIP 5 NORTH, RANGE 88 WEST OF THE 6TH P.M.</u>
<u>COUNTY OF ROUTT, STATE OF COLORADO</u>

Section 17:   S1/2SW1/4;
Section 19:                              E1/2NE1/4;
Section 20:   NW1/4, NW1/4SE1/4, W1/2NE1/4
              EXCEPT parcels of land conveyed to The County of Routt by
              deed recorded January 16, 1979 in Book 468 at Page 697;

              ALSO EXCEPT all those portions of the NW1/4NE1/4 of Section
              20, lying East of Routt County Road No. 53.

<u>TOWNSHIP 4 NORTH, RANGE 89 WEST OF THE 6TH P.M.</u>
<u>COUNTY OF ROUTT, STATE OF COLORADO</u>

Section 11:   SE1/4
Section 12:   W1/2SW1/4, SE1/4,Lots 1, 2 and 4
              EXCEPT that part of the following described parcel which lies

A-1

within Lots 1 and 2, Section 12, T4N, R89W:
A tract of land located partly in the SW1/4SW1/4 of Section
36, T5N, R89W and partly in Lots 1 and 2, Section 12, T4N,
R89W, bounded by a line described as follows:
Beginning at a point on the Southerly line of said Section 36
from which the SW corner of said Section 36 bears S 89deg
04min W 398.47 feet; thence N 108.00 feet; thence N 70deg
07min E 292.00 feet; thence S 52deg 37min E 147.00 feet;
thence S 06deg 57min W 270.00 feet; thence S 37deg 00min E
48.00 feet; thence S 58deg 17min 20sec E 26.82 feet to the
Westerly right of way line of Routt County Highway No. 53;
thence along said right of way S 31deg 00min 38sec W 39.98
feet; thence leaving said right of way N 77deg 58min 20sec W
244.35 feet; thence N 63deg 53min 57sec W 188.54 feet; thence
S 38deg 40min W 165.00 feet; thence S 25deg 25min 51sec E
382.36 feet; thence S 46deg 30min W 575.00 feet; thence S
29deg 30min W 195.22 feet to the Westerly right of way line
of said Highway No. 53; thence along said right of way S
58deg 17min 31sec W 89.25 feet; thence leaving said right of
way N 54deg 00min W 316.84 feet; thence N 38deg 40min E
1285.00 feet to the point of beginning.

EXCEPT a tract of land in Lots 1 and 2 of Section 12, T4N,
R89W of the 6th P.M., bounded by a line described as follows:
Beginning at corner No. 1, from which the SW corner of
Section 36, T5N, R89W bears N 50deg 53min 10sec W 356.83
feet; (Said point of beginning being a point on the boundary
line of a tract of land conveyed to Ruby Construction
Company, Inc., by deed recorded in Book 379 at Page 686);
thence S 25deg 25min 51sec E 382.36 feet to corner 2; thence
S 46deg 30min 00sec W 575.00 feet to corner 3; thence S 29deg
30min 00sec W 195.22 feet to corner 4 on the Northwesterly
ROW line of Routt County Road No. 53; thence following the
Northwesterly ROW line of said Routt County Road No. 53,
377.51 feet along a curve to the right having a radius of
3794.19 feet; the chord of which bears N 61deg 08min 32sec E
377.36 feet to corner 5; thence N 63deg 59min 34sec E 117.58
feet to corner 6; thence 168.55 feet along a curve to the
left having a radius of 226.93 feet, the chord of which bears
N 42deg 42min 53sec E 164.70 feet to corner 7; thence N 21deg
26min 12sec E 73.29 feet to corner 8; thence 47.94 feet along
a curve to the right having a radius of 286.93 feet, the
chord of which bears N 26deg 13min 25sec E 47.89 feet to
corner 9; thence N 31deg 00min 38sec E 513.48 feet to corner
10; thence leaving said Northwesterly ROW line of Routt
County Road 53 N 77deg 58min 20sec W 244.35 feet to corner

A-2

11, thence N 63deg 53min 57sec W 188.54 feet to corner 12; thence S 38deg 40min 00sec W 165.00 feet to corner 1 the point of beginning.

Section 13: N1/2NE1/4, that portion of the NE1/4SE1/4 lying North of the County Road,
EXCEPT so much thereof as is contained within the following described tract of land:
From the E1/4 corner of Section 13, T4N, R89W run S 52deg 50min W 706.35 feet and thence S 24deg 30min W 72 feet to Corner No. 1 of said Tract; thence S 53deg 5min W 1247.4 feet to Corner No. 2, thence N 57deg 40min W 2158.2 feet to Corner No. 3; thence North 541 feet to Corner No. 4, thence East 758 feet to Corner No. 5, thence S 0deg 35min E 462 feet to Corner No. 6, center of Section 13, thence N 88deg E 2019.6 feet to Corner No. 7, thence South 508.60 feet to Corner No. 1, the point of beginning.

That part of the S1/2NW1/4 lying North of the Williams Fork Road,
EXCEPT a tract of land described as follows:
From 1/4 corner Commmon to Sections 13, T4N, R89W and Section 18, T4N, R88W, S 52deg 50min W 706.35 feet; thence S 24deg 30min W 72 feet to Corner No. 1 of Tract; thence S 53deg 5min W 1247.4 feet to Corner No. 2; thence N 57deg 40min W 2158.2 feet to Corner No. 3; thence N 541 feet to Corner No. 4; thence E 758 feet to Corner No. 5; thence S 0deg 35min E 462 feet to Corner No. 6 Center Section 13; thence N 88deg E 2019.6 feet to Corner No. 7; thence S 508.6 feet to Corner No. 1 point of beginning.

EXCEPT an 8 acre tract of indefinite location as excepted in Deed dated October 1, 1937, recorded October 1, 1937 in Book 193 at Page 138.

## TOWNSHIP 5 NORTH, RANGE 89 WEST OF THE 6TH P.M.
## COUNTY OF ROUTT, STATE OF COLORADO

Section 1: Lots 7, 9, 10, 15, 16, 17 and 18.
Section 2: Lots 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 20 and 21; Lot 19, EXCEPT a tract bounded by a line described as follows:
Beginning at the NW corner of said SE1/4SW1/4; thence East along he North line of said SE1/4SW1/4 a distance of 760

A-3

feet; thence Southwest in a straight line and along the
western side of the proposed County Road on said ridge, a
distance of 945 feet to a point on the West line of said
SE1/4SW1/4 which is 588 feet due South from the place of
beginning; thence 588 feet due North to the Point of
Beginning.

Section 3:   Lots 5, 6, 10, 11, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23,
24, 25, 26 and 27.
Section 4:   Lots 2, 3, 4, S1/2, S1/2NW1/4, S1/2NE1/4
Section 9:   Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13.
Section 10:  Lots 1, 2, 4, 5, 6, 9, 10, 11, 12, 13, 14 and 15;
That part of Lots 3 and 8 which lies Southerly and Westerly
of a straight line extending from the SW corner of Lot 1 of
Section 4 to the NW corner of Lot 3 of Section 14 in said
Township and Range.
Section 11:  Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 15, 16, 18, 19 and 20;
Lots 11 and 12, EXCEPT a tract of land described as follows:
Beginning at a point 454.2 feet East of the NW corner of Lot
13 of said Section 11, thence N 63deg 26min E 647 feet to a
point on the North line of Lot 12 of Section 11, thence N
63deg 26min E 328.3 feet to a point on the East line of Lot
11 of said Section 11, thence S 0deg 51min W 142.2 feet to
the NE corner of said Lot 12, thence S 0deg 51min W 294.00
feet, thence West 865.8 feet to the Point of Beginning.

A tract of land in Lot 13 described as follows: Beginning at
the NW corner of said Lot 13, thence East 454.2 feet along
the North line of said Lot 13, thence S 63deg W 512.8 feet to
a point on the West line of said Lot 13, thence N 0deg 51min
E 233.5 feet to the Point of Beginning.
Section 12:  Lots 2 and 3.
Section 13:  Lots 1, 6, 9, 10, 11, 12, 13, 14, 15, 16 and 17.
Section 14:  Lots 6, 7, 8, 12, 13, 14, 15, 16, 17 and that part of Lots 3,
4, 5, 9, 10 and 11 not lying within Tract 52.
Section 15:  Lots 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 15 and 16.
Section 16:  Lots 1, 2, 3, 4, 6, 7, 8, 9 and 10.
Section 20:  NE1/4
Section 21:  N1/2N1/2, N1/2SW1/4NE1/4, N1/2S1/2SW1/4NE1/4, N1/2SE1/4NW1/4,
N1/2S1/2SE1/4NW1/4
Section 22:  E1/2, NW1/4, NE1/4NE1/4SW1/4
Section 23:  All
Section 24:  All
Section 25:  NE1/4NE1/4, S1/2NE1/4, W1/2NW1/4, SE1/4NW1/4, W1/2SE1/4,
SE1/4SE1/4, SW1/4
Section 26:  All
Section 27:  NE1/4, NE1/4SE1/4

A-4

Section 35: N1/2, SE1/4, N1/2SW1/4, SE1/4SW1/4
Section 36: E1/2NE1/4, NW1/4, SE1/4, S1/2SW1/4
        EXCEPT that part of the following described parcel which lies
within the SW1/4SW1/4, Section 36, T5N, R89W:
A tract of land located partly in the SW1/4SW1/4 of Section
36, T5N, R89W and partly in Lots 1 and 2, Section 12, T4N,
R89W, bounded by a line described as follows:
Beginning at a point on the Southerly line of said Section 36
from which the SW corner of said Section 36 bears S 89deg
04min W 398.47 feet; thence N 108.00 feet; thence N 70deg
07min E 292.00 feet; thence S 52deg 37min E 147.00 feet;
thence S 06deg 57min W 270.00 feet; thence S 37deg 00min E
48.00 feet; thence S 58deg 17min 20sec E 26.82 feet to the
Westerly right of way line of Routt County Highway No. 53;
thence along said right of way S 31deg 00min 38sec W 39.98
feet; thence leaving said right of way N 77deg 58min 20sec W
244.35 feet; thence N 63deg 53min 57sec W 188.54 feet; thence
S 38deg 40min W 165.00 feet; thence S 25deg 25min 51sec E
382.36 feet; thence S 46deg 30min W 575.00 feet; thence S
29deg 30min W 195.22 feet to the Westerly right of way line
of said Highway No. 53; thence along said right of way S
58deg 17min 31sec W 89.25 feet; thence leaving said right of
way N 54deg 00min W 316.84 feet; thence N 38deg 40min E
1285.00 feet to the point of beginning.


      **TOWNSHIP 5 NORTH, RANGE 89 WEST OF THE 6TH P.M.**
        **COUNTY OF ROUTT, STATE OF COLORADO**

ORIGINAL SURVEY                      RESURVEY

| | | |
|---|---|---|
| Section 1: | Lots 3, 4, SW1/4NW1/4 | |
| Section 2: | SE1/4NE1/4 | Tract 38 |
| Section 2: | N1/2SE1/4, SW1/4SE1/4, SE1/4SW1/4 | Tract 40 |
| Section 2: | SW1/4SW1/4 | |
| Section 10: | E1/2NE1/4 | |
| Section 11: | NW1/4NW1/4 | Tract 41 |
| Section 10: | SW1/4NE1/4, NW1/4SE1/4, E1/2SW1/4 | Tract 46 |
| Section 16: | All | Tract 51 |
| Section 14: | N1/2NW1/4, SW1/4NW1/4, NW1/4SW1/4 | Tract 52 |


      **TOWNSHIP 6 NORTH, RANGE 89 WEST OF THE 6TH P.M.**
        **COUNTY OF ROUTT, STATE OF COLORADO**

Section 33: SW1/4, Lots 6 and 11, and a tract in Lot 10 bounded by a line

A-5

described as follows:
Beginning at the SW corner of said Lot 10; thence N 991 feet;
thence S 46deg E 741 feet; thence S 30deg E 528 feet; thence
W 812 feet to the point of beginning.
EXCEPT that part conveyed to The County of Routt by Right of
Way Deed recorded January 14, 1931 in Book 170 at Page 311.

EXCEPT a tract of land bounded by a line described as
follows:
Beginning at the NE corner of said Lot 6, thence South on the
East line of Lot 6, 80 feet, thence N 49deg 22min W 110 feet,
thence East 70 feet on the North line of said Lot 6 to the NE
corner of said Lot 6, the place of beginning.
Section 34: Lot 16
Section 35: Lots 13, 14, 15 and 16.

A-6

EXHIBIT B
TO
SPECIAL WARRANTY DEED

Exceptions

1.  Reservations of (1) all coal; and (2) right of way for any ditches
    or canals constructed by authority of United States, in the
    following U.S. Patents:

| RECORDED | BOOK | PAGE | PROPERTY AFFECTED |
|---|---|---|---|
| August 12, 1920 | 77 | 545 | Lot 1 & N1/2SE1/4 Sec 7,T4N,R88W<br>& Lot 4 Sec 8,T4N,R88W |
| November 22, 1919 | 115 | 167 | SE1/4SW1/4 Sec 7,T4N,R88W;<br>NE1/4NW1/4 & Lots 1 & 2,<br>Sec 18,T4N,R88W |
| February 23, 1924 | 124 | 337 | S1/2SW1/4 Sec 17,T5N,R88W<br>& NW1/4,SW1/4NE1/4 & NW1/4SE1/4<br>Sec 20,T5N,R88W |
| December 18, 1920 | 124 | 41 | SE1/4SW1/4 & SE1/4 Sec 35,<br>T5N,R89W<br>SW1/4SW1/4 Sec 36,T5N,R89W<br>Lots 2 & 4,Sec 12,T4N,R89W |
| August 9, 1926 | 124 | 513 | Lots 8,9,10,11,12,16 & 17,Sec 2<br>T5N,R89W<br>Lots 5,6,14 & 16,Sec 3<br>T5N,R89W |
| November 1, 1922 | 124 | 232 | Lots 18,19 & 20,Sec 11<br>T5N,R89W<br>Lots 3,4,5,9 & 11, Sec 14<br>T5N,R89W |
| August 2, 1924 | 124 | 387 | Lots 5,6,7 & 13,Sec 2,T5N,R89W<br>Lot 16,Sec 34,T6N,R89W<br>Lots 13,14,15 & 16,Sec 35,<br>T6N,R89W |
| March 15, 1922 | 124 | 154 | Lots 9,11&12,Sec 11,T5N,R89W |
| March 21, 1929 | 160 | 98 | Lots 7,10,15 & 18,Sec 1,<br>T5N,R89W<br>Lots 2 & 3,Sec 12,T5N,R89W |
| March 31, 1928 | 160 | 48 | Lots 17,18,19,20,21,22,23,24,<br>25,26 & 27,Sec 3,T5N,R89W<br>Lot 1,Sec 10,T5N,R89W |

B-1

| | | | |
|---|---|---|---|
| May 24, 1938 | 160 | 409 | Lots 9,16 & 17,Sec 1,T5N,R89W<br>Lots 14,19,20 & 21,Sec 2<br>T5N,R89W<br>Lots 1 & 2,Sec 11,T5N,R89W |
| February 15, 1923 | 129 | 386 | Lot 2,Sec 10,T5N,R89W |
| October 30, 1920 | 124 | 23 | Lots 7,8,9,10,11 & 13, Sec 3,<br>T5N,R89W<br>N1/2NE1/4 Sec 4,T5N,R89W<br>Lots 11 & 12,Sec 33,T6N,R89W |
| March 4, 1936 | 160 | 319 | Lots 14,15,16 & 17,Sec 14<br>T5N,R89W |
| June 14, 1933 | 160 | 226 | S1/2SW1/4,Sec 23,T5N,R89W<br>W1/2NW1/4,Sec 26,T5N,R89W<br>E1/2,NE1/4,SW1/4NE1/4 &<br>NE1/4SE1/4,Sec 27,T5N,R89W |
| March 6, 1920 | 77 | 493 | Lot 10,Sec 33,T6N,R89W |
| June 22, 1920 | 77 | 523 | Lots 15 & 16,Sec 15,T5N,R89W<br>NW1/4 & W1/2NE1/4,Sec 22,T5N,R89W |
| August 27, 1920 | 77 | 549 | E1/2SE1/4,Sec 26,T5N,R89W<br>E1/2NE1/4,Sec 35,T5N,R89W<br>NW1/4,Sec 36,T5N,R89W |
| September 30, 1920 | 124 | 1 | Lots 2,6,7,8,12 & 13,Sec 14,<br>T5N,R89W<br>NW1/4NE1/4,Sec 23,T5N,R89W |
| October 20, 1920 | 124 | 16 | Lots 3,4,5 & 6,Sec 10,T5N,R89W<br>Lots 1,2,7 & 8,Sec 9,T5N,R89W |
| October 20, 1920 | 124 | 18 | Lots 3,4,5,6,7,8,15 & 16,<br>Sec 11,T6N,R89W<br>Lots 8 & 15,Sec 10,T5N,R89W |
| April 14, 1921 | 124 | 79 | W1/2NE1/4,NW1/4,N1/2SW1/4<br>Sec 35,T5N,R89W |
| February 4, 1922 | 124 | 142 | Lots 9,12,13 & 14,Sec 10,<br>T5N,R89W<br>Lots 2,3,4 & 6,Sec 15,T5N,R89W |
| May 31, 1923 | 124 | 279 | Lot 10,Sec 14,T5N,R89W<br>E1/2E1/2,Sec 22,T5N,R89W<br>W1/2NW1/4,NW1/4SW1/4,Sec 23<br>T5N,R89W |

| June 17, 1924 | 124 | 374 | NW1/4,Sec 4,T5N,R89W |
|---|---|---|---|
| June 30, 1924 | 124 | 380 | Lots 3,5,6,9,10,11 & 12<br>Sec 9,T5N,R89W<br>Lots 10 & 11,Sec 10,T5N,R89W |
| November 29, 1924 | 124 | 408 | Lots 6,7,8,10,11,12 & 13,<br>Sec 15,T5N,R89W<br>Lots 3 & 4,Sec 16,T5N,R89W |
| March 10, 1927 | 124 | 571 | NW1/4SW1/4,NE1/4NW1/4,W1/2NW1/4<br>Sec 25,T5N,R89W<br>NE1/4,Sec 26,T5N,R89W |
| April 26, 1927 | 124 | 584 | N1/2NW1/4,SW1/4NW1/4,NW1/4SW1/4<br>Sec 14,T5N,R89W |
| April 9, 1929 | 160 | 100 | Lot 7,Sec 16,T5N,R89W<br>NE1/4,Sec 20,T5N,R89W<br>NW1/4NW1/4,Sec 21,T5N,R89W |
| March 13, 1923 | 124 | 259 | Lots 8,9 & 10,Sec 16,T5N,R89W<br>N1/2NE1/4,SW1/4NE1/4,E1/2NW1/4,<br>Sec 21,T5N,R89W |
| June 24, 1920 | 77 | 525 | Lots 6,13 & 14,Sec 13,T5N,R89W |
| August 27, 1920 | 77 | 550 | NE1/4NE1/4,S1/2NE1/4,W1/2SE1/4,<br>E1/2SW1/4,SW1/4SW1/4,Sec 25,<br>T5N,R89W |
| July 31, 1937 | 160 | 378 | SE1/4SE1/4,Sec 25,T5N,R89W<br>E1/2NE1/4,SE1/4SW1/4,SE1/4,<br>Sec 36,T5N,R89W |
| April 8, 1940 | 160 | 489 | Lots 1,9,10,11,12,15,16 & 17,<br>Sec 13,T5N,R89W |
| December 5, 1930 | 160 | 299 | Lot 13,Sec 9,T5N,R89W<br>Lots 1,2 & 6,Sec 16,T5N,R89W |

2.   Reservation of (1) all coal and other minerals; and (2) right of way for any ditches or canals constructed by authority of the United States, in the following U.S. Patents:

| RECORDED | BOOK | PAGE | PROPERTY AFFECTED |
|---|---|---|---|
| October 24, 1938 | 160 | 424 | E1/2SE1/4,Sec 11,T4N,R89W<br>W1/2SW1/4,Sec 12,T4N,R89W |
| September 28, 1939 | 160 | 385 | Lot 1 & SE1/4,Sec 12,T4N,R89W<br>N1/2NE1/4,Sec 13,T4N,R89W |
| January 31, 1927 | 124 | 561 | S1/2NE1/4,S1/2,Sec 4,T5N,R89W<br>Lot 4,Sec 9,T5N,R89W |

B-3

| June 6, 1952 | 251 | 371 | All of Sec 24,T5N,R89W |
| July 27, 1939 | 160 | 442 | SE1/4,S1/2NE1/4,NE1/4NE1/4,<br>NE1/4NW1/4,Sec 23,T5N,R89W |
| September 16, 1930 | 160 | 161 | SW1/4,Sec 22,T5N,R89W |
| May 8, 1941 | 160 | 532 | W1/2SE1/4,Sec 22,T5N,R89W<br>SE1/4NW1/4,NE1/4SW1/4,Sec 23,<br>T5N,R89W<br>NW1/4NE1/4,Sec 27,T5N,R89W |
| July 23, 1926 | 124 | 506 | E1/2NW1/4,W1/2SE1/4,SW1/4,<br>Sec 26,T5N,R89W |

3. Reservation of (1) right of proprietor of any penetrating vein or lode to extract his ore; and (2) right of way for any ditches or canals constructed by authority of the United States, in the following U.S. Patents:

| RECORDED | BOOK | PAGE | PROPERTY AFFECTED |
|---|---|---|---|
| July 5, 1913 | 77 | 83 | Lot 3,Sec 18,T4N,R88W<br>NE1/4SE1/4,Sec 13,T4N,R89W |
| December 26, 1925 | 148 | 468 | NW1/4NE1/4,Sec 20,T5N,R88W |
| April 19, 1909 | 49 | 449 | NE1/4,Sec 19,T5N,R88W |
| April 24, 1909 | 49 | 452 | E1/2SW1/4 & Lots 3 & 4,Sec 19<br>T5N,R88W |
| June 16, 1910 | 64 | 473 | E1/2NW1/4 & Lots 1 & 2,Sec 30<br>T5N,R88W |
| December 2, 1910 | 64 | 489 | NE1/4,Sec 30,T5N,R88W |
| December 2, 1910 | 64 | 490 | E1/2SW1/4 & Lots 3 & 4,Sec 30<br>T5N,R88W |
| March 1, 1909 | 49 | 443 | SW1/4,Sec 29,T5N,R88W |
| December 2, 1910 | 64 | 491 | SE1/4,Sec 30,T5N,R88W |
| April 19, 1909 | 49 | 450 | Lots 3 & 4 & E1/2SW1/4,Sec 21 |

|                   |      |     | T5N,R88W                                        |
|-------------------|------|-----|-------------------------------------------------|
| January 12, 1910  | 64   | 459 | E1/2NW1/4 & Lots 1 & 2,Sec 31 T5N,R88W         |
| January 12, 1910  | 64   | 460 | NE1/4,Sec 31,T5N,R88W                           |
| May 8, 1913       | 77   | 71  | W1/2SE1/4,Sec 11,T4N,R89W                       |
| May 1, 1918       | 103  | 299 | S1/2NW1/4,Sec 13,T4N,R89W                       |
| June 6, 1898      | 21   | 305 | SW1/4NE1/4,NW1/4SE1/4,E1/2SW1/4 Section 10,T5N,R89W |
| December 9, 1902  | 28   | 106 | SW1/4SW1/4,Sec 2,T5N,R89W E1/2NE1/4,Sec 10,T5N,R89W NW1/4NW1/4,Sec 11,T5N,R89W |
| November 13, 1899 | 28   | 161 | Lots 3 & 4 & SW1/4NW1/4 Sec 1,T5N,R89W,SE1/4NE1/4,Sec 2 T5N,R89W |
| July 1, 1910      | 64   | 286 | SW1/4,Sec 33,T6N,R89W                           |

4.   Reservation of right of way for any ditches or canals constructed by authority of United States, in the following U.S. Patents:

| RECORDED         | BOOK | PAGE | PROPERTY AFFECTED      |
|------------------|------|------|------------------------|
| January 23, 1911 | 64   | 498  | SE1/4,Sec 31,T5N,R88W  |

5.   Reservation of right of proprietor of any penetrating vein or lode to extract his ore, in the following U.S. Patents:

| RECORDED        | BOOK | PAGE | PROPERTY AFFECTED                          |
|-----------------|------|------|--------------------------------------------|
| August 28, 1891 | 6    | 321  | N1/2SE1/4,SW1/4SE1/4, SE1/4SW1/4,Sec 2,T5N,R89W |

6.   All coal and minerals as reserved by Julia Belle Scott, administratrix, and Thomas Bosworth Scott, administrator of the Estate of Charles Pittman Scott, deceased in deed recorded March 3, 1941 in Book 206 at Page 154, and any interests therein or rights thereunder.
(Affects the NW1/4NE1/4 Section 20, T5N, R88W)

B-5

7.  A strip of land for a roadway, as conveyed by Quit Claim Deed recorded March 12, 1913 in Book 68 at Page 183, 20 feet in width, beginning about 75 feet west of the SW corner of Section 18, and running on an easy grade about 1/2 mile in a northerly direction, across the wooden bridge (Scott-Detwiller Bridge) now spaning the Williams Forks, to the main travelled County road on the north side of the Williams Forks; and being over and across the following quarter-sections: SE1/4SE1/4, Section 13, T4N, R89W of the 6th P.M., W1/2SW1/4, Section 18, T4N, R88W of the 6th P.M.

8.  Terms, agreements, provisions, conditions and obligations as contained in Surface User Agreement by and between Axial Basin Ranch Company and Hayden Gulch West Coal Company, owner and Peabody Coal Company, permittee recorded May 20, 1986 in Book 634 at Page 1861.

    NOTE:     Continuation of the above Agreement recorded May 8, 1991 in Book 662 at Page 1892.
              (Affects Section 20, T5N, R88W)

9.  All minerals, ores and metals of every kind and character and all coal, asphaltum, oil and other like substance, as reserved by Routt County in the deeds recorded August 15, 1946 in Book 221 at Page 493 and recorded April 13, 1977 in Book 433 at Page 140, and any interests therein or rights thereunder.
    (Affects E1/2NE1/4 and SW1/4 Section 19, NW1/4, N1/2SW1/4 and NW1/4NE1/4 Section 30, T5N, R88W)

10. All minerals, ores and metals of every kind and character and all coal, asphaltum, oil and other like substances, as reserved by Routt County in the deed recorded August 15, 1946 in Book 221 at Page 495, and any interests therein or rights thereunder.
    (Affects NW1/4SE1/4, SW1/4NE1/4 and NE1/4 Section 20, S1/2SW1/4 Section 17, T5N, R88W)

11. Easement and right of way for private road, easement, highway or by-way as reserved in deeds recorded August 15, 1946 in Book 221 at Pages 493 and 495, affecting the following described property:

    20 feet on each side of a centerline described as follows: Beginning at a point on the Dry Creek County road at a point whence the Northwest Corner of Section 20, T5N, R88W, bears N 89deg 50min W 4060 feet, thence S 80deg 21min W 2370 feet, thence N 80deg 29min W 180 feet, thence S 78deg 21min W 245 feet, thence S 80deg 11min W 330 feet, thence S 48deg 41min W 420 feet, thence S 64deg 01min W 440 feet, thence S 50deg 28min W 200 feet, thence

B-6

S 28deg 36min W 115 feet, thence S 47deg 56min W 210 feet, thence
S 34deg 51min W 650 feet, thence S 65deg 51min W 238 feet, thence
S 74deg 31min W 280 feet, thence S 34deg 36min W 230 feet, thence
S 48deg 16min W 140 feet, thence S 30deg 06min W 190 feet, thence
S 40deg 05min W 160 feet, said last mentioned point being on the
east line of the W1/2 of the NE1/4 of Section 19, T5N, R88W,
whence the SE corner of the W1/2 of the NE1/4 of said Section 19,
bears S 0deg 11min E 100 feet.

12. All oil, gas and other mineral rights as reserved by Bertie May
    Nowels in the deed recorded August 11, 1966 in Book 326 at Page
    217, and any interests therein or rights thereunder.
    (Affects Section 29, T5N, R88W)

13. All minerals, ores and metals of every kind and character, and all
    coal, asphaltum, coal and other like substances, as reserved by
    Routt County in the deeds recorded July 17, 1946 in Book 221 at
    Page 357, and recorded April 5, 1977 in Book 432 at Page 669, and
    any interests therein or rights thereunder.
    (Affects E1/2NE1/4, SW1/4NE1/4, SE1/4 Section 30, T5N, R88W and
    NE1/4, Lots 5, 6, 9, 10, 13, 14, 17 & 18, Section 31, T5N, R88W)

14. Easements and the terms, agreements, provisions, conditions and
    obligations as contained in Agreement recorded May 24, 1979 in
    Book 475 at Page 520 and Plat filed May 24, 1979 at File No. 8339.
    (See instrument for property affected)

15. Easement and right of way to construct, operate and maintain an
    electric transmission or distribution line or system, granted to
    Yampa Valley Electric Association, Inc., a corporation by Wm. S.
    Green by instrument recorded December 5, 1994 in Book 703 at Page
    1714, in which the specific location of the easement is not
    defined.
    (Affects NE1/4, N1/2SE1/4 Section 30, T5N, R88W and NW1/4 Section
    31, T5N, R88W)

16. All coal, oil, gas and other minerals as reserved by Harold H.
    Christy in the deed recorded December 20, 1977 in Book 444 at Page
    397, and any interests therein or rights thereunder.
    (Affects Lots 15 and 16, Section 30, T5N, R88W)

17. All coal, oil, gas and other minerals reserved as follows:
    An undivided 1/6 interest by Horace F. Amrine, in the deed
    recorded February 3, 1978 in Book 446 at Page 606;
    An undivided 1/6 interest by Christopher O. Moffett also known as
    C.O. Moffett, in the deed recorded February 3, 1978 in Book 446 at
    Page 607;

An undivided 1/2 interest by Robert Ward Reubendale and Ettamarie A. Reubendale in the deed recorded February 3, 1978 in Book 446 at Page 608;
An undivided 1/6 interest by Charles R. Baxter and Priscilla Coffin Baxter, in the deed recorded February 3, 1978 in Book 446 at Page 609; and any interests therein or rights thereunder.
(Affects SE1/4 Section 31, T5N, R88W)

18. Easement and right of way for road purposes, as granted to J. Burton Tuttle by Hayden-Gulch West Coal Company, a partnership, recorded March 12, 1981 in Book 529 at Page 8, affecting the following described property:

A 60.00 foot wide road easement lying in the W1/2 of Section 33, T6N, R89W and the NW1/4 of Section 4, T5N, R89W of the 6th , Routt County, Colorado and lying 30.00 feet on either side of the following described centerline.

Beginning at a point on the north-south centerline of said Section 33, lying N 00deg 00min 38sec E, 3360.26 feet from the South 1/4 corner of said Section 33; thence S 56deg 31min 21sec W, 296.59 feet; thence 219.98 feet along the arc of a curve to the left, having a central angle of 14deg 00min 16sec and a radius of 900.00 feet, the chord of which bears S 49deg 31min 13sec W, 219.43 feet; thence S 42deg 31min 05sec W, 294.29 feet; thence 169.91 feet along the arc of a curve to the right, having a central angle of 7deg 03min 16sec and a radius of 1380.00 feet, the chord of which bears S 46deg 02min 43sec W, 169.80 feet; thence S 49deg 34min 21sec W, 41.81 feet; thence 531.59 feet along the arc of a curve to the left, having a central angle of 38deg 04min 20sec and a radius of 800.00 feet, the chord of which bears S 30deg 32min 11sec W, 521.86 feet; thence S 11deg 30min 01sec W, 58.96 feet; thence 179.06 feet along the arc of a curve to the right having a central angle of 10deg 28min 07sec and a radius of 980.00 feet, the chord of which bears S 16deg 44min 05sec W, 178.81 feet; thence S 21deg 58min 08sec W, 518.88 feet; thence 228.32 feet along the arc of a curve to the left, having a central angle of 10deg 03min 47sec and a radius of 1300.00 feet, the chord of which bears S 16deg 56min 15sec W, 228.03 feet; thence S 11deg 54min 21sec W, 48.99 feet; thence 197.03 feet along the arc of a curve to the right, having a central angle of 18deg 48min 55sec and a radius of 600.00 feet, the chord of which bears S 21deg 18min 49sec W, 196.15 feet; thence S 30deg 43min 16sec W, 282.54 feet; thence 150.14 feet along the arc of a curve to the left, having a central angle of 03deg 19min 17sec and a radius of 2590.00 feet, the chord of which bears S 29deg 03min 38sec W, 150.12 feet; thence S 27deg 23min 59sec W, 224.62 feet;thence 199.87 feet along

B-8

the arc of a curve to the right, having a central angle of 03deg
46min 01sec and a radius of 3040.00 feet, the chord of which bears
S 29deg 17min 00sec W, 199.83 feet; thence S 31deg 10min 00sec W,
282.01 feet; thence 190.03 feet along the arc of a curve to the
left, having a central angle of 06deg 24min 17sec and a radius of
1700.00 feet, the chord of which bears S 27deg 57min 52sec W,
189.93 feet; thence S 24deg 45min 43sec W, 1013.34 feet; thence
199.33 feet along the arc of a curve to the left, having a central
angle of 11deg 39min 14sec and a radius of 980.00 feet, the chord
of which bears S 18deg 56min 06sec W, 198.99 feet; thence S 13deg
06min 29sec W, 198.33 feet; thence 149.80 feet along the arc of a
curve to the right, having a central angle of 02deg 56min 22sec
and a radius of 2920.00 feet, the chord of which bears S 14deg
34min 40sec W, 149.79 feet; thence S 16deg 02min 51sec W, 127.27
feet to a point on the west line of the NW1/4 of said Section 4
and the terminus, said point lying S 01deg 40min 02sec W, 1610.94
feet from the NW corner of said Section 4.

The north line of the NW1/4 of said Section 4 is considered to
bear N 89deg 18min 58sec E.

19. All oil and gas as reserved by F.L. Colley in deed recorded June
6, 1927 in Book 154 at Page 73, and any interests therein or
rights thereunder.
(Affects NW1/4SE1/4 Section 11, T5N, R89W)

20. All coal, oil, gas, minerals and mineral rights as reserved by
Stella M. Wright in the deed recorded April 16, 1952 in Book 251
at Page 103, and any interests therein or rights thereunder.
(Affects Lots 8 and 15, Section 10, T5N, R89W and Lots 3, 4, 5, 6,
7, 8, 15 and 16, Section 11, T5N, R89W)

21. Easement and right of way for electrical purposes granted to the
United States by John Preece and Mary Preece, also known as Mary
W. Preece, by instrument recorded March 7, 1963 in Book 312 at
Page 169, affecting the following described property:

Parcel No. 152-CC

That part of Lot 9, Section 9 lying Northeast of a straight line
running from the center of Section 9 to the NE corner of Tract 51,
Lots 11 and 10, Tract 46 and Tract 41 in Section 10; Lots 5, 4, 3
and 2 in Section 11; Lots 20 and 21 in Section 2; Lots 17, 18 and
15 in Section 1, all in Township 5 North, Range 89 West of the 6th
P.M., according to G.L.O. Supplemental Diagram, accepted August
10, 1917. Said centerline is more particularly described as
follows:

B-9

Beginning at a point within said Lot 9, Section 9, 903.6 feet
South and 692.1 feet West of the E1/4 corner of said Section 9;
thence N 69deg 14min E 720.6 feet to a point on the East line of
said Section 9, 648.4 feet southerly from said E1/4 corner Section
9; thence continuing N 69deg 14min E, 5754.7 feet to a point on
the East line of said Section 10, 1371.9 feet southerly from the
NE corner of said Section 10; thence continuing N 69deg 14min E,
4020.2 feet to a point on the North line of said Section 11,
1612.4 feet westerly from the NE corner of said Section 11; thence
continuing N 69deg 14min E, 1726.7 feet to a point on the East
line of said Section 2, 592.5 feet northerly from the SE corner of
said Section 2; thence continuing N 69deg 14min E, 2854.0 feet to
a point on the East line of said Lot 15, Section 1, 1604.3 feet
North and 2677.4 feet East of the SW corner of said Section 1.

The above perpetual easement is 125 feet in width, being 62.5 feet
left of and 62.5 feet right of the above described centerline.

22.  A perpetual easement and right of way for road purposes granted to
the United States of America by John Preece and Mary Preece, by
instrument recorded March 13, 1964 in Book 317 at Page 480,
affecting the following described property:

Parcel No. 152-CCAR

Strips of land in Tract 41, Lots 19 and 20, Section 2, and Lots 2
and 4, Section 11, all in Township 5 North, Range 89 West of the
6th P.M., as shown on the G.L.O. Supplemental Diagram accepted
August 10, 1917, 20.0 feet wide and included between lines
situated 10.0 feet left of and 10.0 feet right of the following
described centerline measured at right angles and/or radially
thereto:
Traverse "A"
Beginning at a point on the northerly ROW line of the
Curecanti-Hayden Transmission Line, N 29deg 01min E 96.8 feet from
the centerline Station 9604+50.9 of said transmission line, and S
20deg 24min E 1213.4 feet from the NW corner of said Section 11;
thence N 23deg 29min E, 138.5 feet; thence N 51deg 29min E 108.6
feet; thence N 38deg 10min E 402.10 feet to a point on the
southerly ROW line of a county road, N 74deg 26min E, 1457.7 feet
from the SW corner of said Section 2, also,
Traverse "B"
Beginning at a point on the southerly ROW line of a county road, N
8deg 11min E, 1334.4 feet fromt he S1/4 corner of said Section 2;
thence S 13deg 32min W 124.9 feet; thence S 33deg 21min W, 297.6
feet; thence S 40deg 18min W 300.4 feet; thence along a curve to
the left with a radius of 80.0 feet for an arc distance of 73.4

B-10

feet; thence S 12deg 15min E 259.9 feet; thence S 23deg 49min E
173.9 feet; thence S 39deg 41min E 298.1 feet; thence S 50deg
29min E 314.3 feet to a point on the northerly ROW line of the
said transmission line, N 50deg 29min W 72.0 feet from centerline
Station 9633+46.8 of said transmission line and S 61deg 08min E
392.6 feet from the N1/4 corner of said Section 11.

23.   A perpetual easement and right of way for road purposes granted to
the United States of America by John Preece and Mary Preece, by
instrument recorded November 28, 1969 in Book 339 at Page 731,
affecting the following described property:

Parcel No. 279(P)

A strip of land in Lot 3, Section 11, Lot 19, and Tract 40,
Section 2, Township 5 North, Range 89 West of the 6th P.M., as
shown on the G.L.O. Supplemental Diagram accepted August 10, 1917,
30.0 feet wide and included between two lines being 15.0 feet left
of and 15.0 feet right of the following described centerline
measured at right angles or radially thereto:
Beginning at a point known as Access Road centerline Station
0+69.0 on the northerly ROW line of the Curecanti-Hayden
Transmission Line, 2048.3 feet North and 1726.4 feet East of the
West quarter corner of said Section 11; thence N 46deg 00min W,
159.7 feet; thence N 06deg 24min W, 359.3 feet; thence N 28deg
42min E, 414.0 feet; thence N 19deg 17min E 185.5 feet; thence N
39deg 53min E 216.6 feet; thence N 24deg 08min E 72.01 feet;
thence N 03deg 50min E 230.8 feet to a point known as Access Road
centerline Station 17+07.1 located on the centerline of a County
Road, 3516.8 feet North and 2015.4 feet East of said West quarter
corner of Section 11.

24.   One-half grantors interest in all oil, gas and other mineral
rights as reserved by Joseph F. Livingston in the Deed to John
Preece, Stanley Preece, Vaughn Preece and E.D. Davis, Executor of
the Estate of Lee Preece, deceased in a deed recorded December 30,
1952 in Book 253 at Page 474 and any interest therein or rights
thereunder.

(Affects Lots 2 and 3, Section 12, T5N, R89W)

25.   Entire interest in all coal, oil, gas and mineral rights as
reserved by Vaughn Preece, Irene Preece, Stanley Preece, Virginia
Preece, Dean Preece, Pearl Preece and Mary Eckert in a deed
recorded February 22, 1960 in Book 296 at Page 169 and any
interest therein or rights thereunder.

B-11

(Affects Lots 2 and 3, Section 12, T5N, R89W)

26.  Entire interest in all coal, oil, gas and mineral rights as
     reserved by Mary Preece as guardian of the Estate of Carol Lee
     Preece in a deed recorded February 22, 1960 in Book 296 at Page
     179 and any interest therein or rights thereunder.

     (Affects Lots 2 and 3, Section 12, T5N, R89W)

27.  Entire interest in all coal, oil, gas and mineral rights as
     reserved by Mary Eckert as Administratrix of the Estate of Clet
     Heber Preece in a deed recorded February 22, 1960 in Book 296 at
     Page 208 and any interest therein or rights thereunder.

     (Affects Lots 2 and 3, Section 12, T5N, R89W)

28.  One-half grantors interest in all oil, gas and other mineral
     rights as reserved by John Preece, Mary Preece, Vaughn Preece,
     Irene Preece, Dean Preece, Pearl Preece, Stanley Preece, Virginia
     Preece in the Deed to Edward G. Skeeters and to Vaughey and
     Vaughey, a co-partnership in a deed recorded in Book 284 at Page
     311 and any interest therein or rights thereunder.

     (Affects Lots 2 and 3, Section 12, T5N, R89W)

29.  An undivided 1/2 interest in and to all minerals, including oil
     and gas, as reserved by H.C. Meyers and Regina Meyers in the deed
     recorded August 8, 1968 in Book 333 at Page 722, and any interests
     therein or rights thereunder.
     (Affects Lots 1, 9, 10, 11, 12, 15, 16 and 17, Section 13, T5N,
     R89W)

30.  An undivided 1/2 of the oil and gas as reserved by Marvin D.
     Barnes and Constance L. Barnes in the deed recorded December 5,
     1980 in Book 520 at Page 535, and any interests therein or rights
     thereunder.
     (Affects Lots 1, 9, 10, 11, 12, 15, 16 and 17, Section 13, T5N,
     R89W)

31.  All rights to any and all minerals, ore and metals of any kind and
     character, and all coal, asphaltum, oil, gas and other like
     substances in or under said land, the rights of ingress and egress
     for the purpose of mining, together with enough of the surface of
     the same as may be necessary for the proper and convenient working
     of such minerals and substances, as reserved in Patent from the
     State of Colorado, recorded June 14, 1923 in Book 128 at Page 541.
     (Affects Section 16, T5N, R89W)

B-12

32.  Easement for electric transmission line, being 125 feet in width,
     granted to the United States of America by Decree recorded
     February 22, 1963 in Book 312 at Page 27 of the Routt County,
     Colorado records. Said easement is said to traverse the following:
     Lots 9, 10 and 13 of Section 9, Tract 51 in Section 16, T5N, R89W.

33.  Terms, agreements, provisions, conditions and obligations as
     contained in Agricultural and Livestock Grazing Lease dated
     December 5, 1980 for a term of 21 years from and after that date
     by and between Hayden-Gulch West Coal Company, a partnership
     consisting of Grace H-G Inc., a Delaware corporation and Hanna H-G
     Inc., a Delaware Corporation, as Lessor, and J. Burton Tuttle, as
     Lessee recorded December 5, 1980 in Book 520 at Page 637.

34.  The traverse and right of way for all ditches and canals over and
     across subject property, including, but not limited to the Hayden
     Bench Canal as disclosed by Plat recorded April 9, 1964 at File
     No. 6409 and the Rosette Ditch as disclosed by Plat recorded April
     26, 1910 at File No. 1664.

35.  Any rights, interest or easements in favor of the riparian owners,
     the State of Colorado, the United States of America, or the
     general Public, which exist, have existed, or are claimed to exist
     in and over the waters and present and past bed and banks of all
     rivers, streams, creeks, reservoirs, lakes or other natural
     waterways.

36.  All coal, oil, gas, other minerals and mineral rights, and any
     interests therein or rights thereunder.

37.  Easements and rights of way for all roads and highways, including
     but not limited to Routt County Roads 29, 53, 59, 59B and 61.

38.  Lack of a right of access from various portions of subject
     property to any open public road.

## QUITCLAIM DEED

(Statutory Short Form - C.R.S. § 38-30-116)

AXIAL BASIN RANCH COMPANY, a Delaware general partnership, whose street address is c/o W.R. Grace & Company, One Town Center Road, Boca Raton, Florida 33486, for good and valuable consideration, in hand paid, hereby sells and quitclaims to COTTONWOOD LAND COMPANY, a Delaware corporation, whose street address is c/o Peabody Holding Company, Inc., 301 North Memorial Drive, Suite 310, St. Louis, Missouri 63102-2401, the following real property in the County of Routt and State of Colorado, to wit:

Any all water rights and conditional water rights that are appurtenant to or that are appurtenant to or that have been used or are intended for use in connection with the land described herein below (the "Land"), including, without limitation (i) any and all ditch, well, pipeline, spring, storage, and reservoir rights, whether or not adjudicated or evidenced by any decree, permit, certificate, stock, or other document (ii) all rights with respect to nontributary groundwater (and other groundwater that is subject to the provisions of Colorado Revised Statutes Section 37-90-137(4) or the corresponding provisions of any successor statute) underlying the Land, (iii) any permit to use or construct any water well, and (iv) any decreed or pending plan of augmentation or water exchange plan.

The above-referenced Land is described as follows:

See Exhibit A attached hereto and by this reference made part hereof.

with all its appurtenances.

Signed this 2nd day of October, 1995.

AXIAL BASIN RANCH COMPANY, a
Delaware general partnership

By:  Grace A-B Inc., a Delaware
corporation, General Partner

By: _E.D. Willman_____

Its: _President_____

G:\DATA\PUBL\JMCG\D472603.1
September 28, 1995  4:32pm

By:  Grace A-B II Inc., a Delaware
corporation, General Partner

By: _RD Usilton_____

Its: _President_____

STATE OF _Colorado_        )
                           ) ss.
COUNTY OF _Denver_         )

The foregoing instrument was acknowledged before me
this _2nd_ day of _October_, 1995 by _R D USILTON_,
as _President_ of Grace A-B Inc., a Delaware
corporation, as general partner of Axial Basin Ranch Company, a
Delaware general partnership.

Witness my hand and official seal.

My commission expires: _May 13, 1998_

_Margaret M. Neuta_
Notary Public

STATE OF _Colorado_        )
                           ) ss.
COUNTY OF _Denver_         )

The foregoing instrument was acknowledged before me
this _2nd_ day of _October_, 1995 by _R D USILTON_,
as _President_ of Grace A-B II Inc., a Delaware
corporation, as general partner of Axial Basin Ranch Company, a
Delaware general partnership.

Witness my hand and official seal.

My commission expires: _May 13, 1998_

_Margaret M. Neuta_
Notary Public

-2-

EXHIBIT A
TO
QUIT CLAIM DEED

Legal Description

### TOWNSHIP 4 NORTH, RANGE 88 WEST OF THE 6TH P.M.
### COUNTY OF ROUTT, STATE OF COLORADO

Section 7:   Lot 1, N1/2SE1/4, SE1/4SW1/4;
Section 8:   Lot 4;
Section 18:  Lots 1, 2, 3, NE1/4NW1/4;
             EXCEPT that part of the following lying in Lot 3 of Section
             18, described by metes and bounds as follows:  beginning at a
             point whence the Southeast corner of Lot 4 of said Section
             bears South 624 feet (magnetic variation 16deg 45min east),
             thence North 56deg 30min West 411 feet, thence North 23deg
             27min East 163 feet, thence North 38deg 14min West 252 feet,
             thence North 89deg 43min West 155 feet, thence North 64deg
             22min West 80 feet, thence North 20deg East 217 feet, thence
             South 73deg 04min East 180 feet, thence South 83deg East 423
             feet, to the East line of said Lots 3 and 4, thence South
             along said East line 711 feet to the point of beginning.

### TOWNSHIP 5 NORTH, RANGE 88 WEST OF THE 6TH P.M.
### COUNTY OF ROUTT, STATE OF COLORADO

Section 17: S1/2SW1/4;
Section 19:                          E1/2NE1/4;
Section 20: NW1/4, NW1/4SE1/4, W1/2NE1/4
            EXCEPT parcels of land conveyed to The County of Routt by
            deed recorded January 16, 1979 in Book 468 at Page 697;

            ALSO EXCEPT all those portions of the NW1/4NE1/4 of Section
            20, lying East of Routt County Road No. 53.

### TOWNSHIP 4 NORTH, RANGE 89 WEST OF THE 6TH P.M.
### COUNTY OF ROUTT, STATE OF COLORADO

Section 11: SE1/4
Section 12: W1/2SW1/4, SE1/4,Lots 1, 2 and 4
            EXCEPT that part of the following described parcel which lies

A-1

within Lots 1 and 2, Section 12, T4N, R89W:
A tract of land located partly in the SW1/4SW1/4 of Section
36, T5N, R89W and partly in Lots 1 and 2, Section 12, T4N,
R89W, bounded by a line described as follows:
Beginning at a point on the Southerly line of said Section 36
from which the SW corner of said Section 36 bears S 89deg
04min W 398.47 feet; thence N 108.00 feet; thence N 70deg
07min E 292.00 feet; thence S 52deg 37min E 147.00 feet;
thence S 06deg 57min W 270.00 feet; thence S 37deg 00min E
48.00 feet; thence S 58deg 17min 20sec E 26.82 feet to the
Westerly right of way line of Routt County Highway No. 53;
thence along said right of way S 31deg 00min 38sec W 39.98
feet; thence leaving said right of way N 77deg 58min 20sec W
244.35 feet; thence N 63deg 53min 57sec W 188.54 feet; thence
S 38deg 40min W 165.00 feet; thence S 25deg 25min 51sec E
382.36 feet; thence S 46deg 30min W 575.00 feet; thence S
29deg 30min W 195.22 feet to the Westerly right of way line
of said Highway No. 53; thence along said right of way S
58deg 17min 31sec W 89.25 feet; thence leaving said right of
way N 54deg 00min W 316.84 feet; thence N 38deg 40min E
1285.00 feet to the point of beginning.

EXCEPT a tract of land in Lots 1 and 2 of Section 12, T4N,
R89W of the 6th P.M., bounded by a line described as follows:
Beginning at corner No. 1, from which the SW corner of
Section 36, T5N, R89W bears N 50deg 53min 10sec W 356.83
feet; (Said point of beginning being a point on the boundary
line of a tract of land conveyed to Ruby Construction
Company, Inc., by deed recorded in Book 379 at Page 686);
thence S 25deg 25min 51sec E 382.36 feet to corner 2; thence
S 46deg 30min 00sec W 575.00 feet to corner 3; thence S 29deg
30min 00sec W 195.22 feet to corner 4 on the Northwesterly
ROW line of Routt County Road No. 53; thence following the
Northwesterly ROW line of said Routt County Road No. 53,
377.51 feet along a curve to the right having a radius of
3794.19 feet; the chord of which bears N 61deg 08min 32sec E
377.36 feet to corner 5; thence N 63deg 59min 34sec E 117.58
feet to corner 6; thence 168.55 feet along a curve to the
left having a radius of 226.93 feet, the chord of which bears
N 42deg 42min 53sec E 164.70 feet to corner 7; thence N 21deg
26min 12sec E 73.29 feet to corner 8; thence 47.94 feet along
a curve to the right having a radius of 286.93 feet, the
chord of which bears N 26deg 13min 25sec E 47.89 feet to
corner 9; thence N 31deg 00min 38sec E 513.48 feet to corner
10; thence leaving said Northwesterly ROW line of Routt
County Road 53 N 77deg 58min 20sec W 244.35 feet to corner

A-2

11, thence N 63deg 53min 57sec W 188.54 feet to corner 12;
thence S 33deg 40min 00sec W 165.00 feet to corner 1 the
point of beginning.

Section 13:  N1/2NE1/4, that portion of the NE1/4SE1/4 lying North of the
County Road,
EXCEPT so much thereof as is contained within the following
described tract of land:
From the E1/4 corner of Section 13, T4N, R89W run S 52deg
50min W 706.35 feet and thence S 24deg 30min W 72 feet to
Corner No. 1 of said Tract; thence S 53deg 5min W 1247.4 feet
to Corner No. 2, thence N 57deg 40min W 2158.2 feet to Corner
No. 3; thence North 541 feet to Corner No. 4, thence East 758
feet to Corner No. 5, thence S 0deg 35min E 462 feet to Corner
No. 6, center of Section 13, thence N 88deg E 2019.6 feet to
Corner No. 7, thence South 508.60 feet to Corner No. 1, the
point of beginning.

That part of the S1/2NW1/4 lying North of the Williams Fork
Road,
EXCEPT a tract of land described as follows:
From 1/4 corner Commmon to Sections 13, T4N, R89W and Section
18, T4N, R88W, S 52deg 50min W 706.35 feet; thence S 24deg
30min W 72 feet to Corner No. 1 of Tract; thence S 53deg 5min
W 1247.4 feet to Corner No. 2; thence N 57deg 40min W 2158.2
feet to Corner No. 3; thence N 541 feet to Corner No. 4;
thence E 758 feet to Corner No. 5; thence S 0deg 35min E 462
feet to Corner No. 6 Center Section 13; thence N 88deg E
2019.6 feet to Corner No. 7; thence S 508.6 feet to Corner
No. 1 point of beginning.

EXCEPT an 8 acre tract of indefinite location as excepted in
Deed dated October 1, 1937, recorded October 1, 1937 in Book
193 at Page 138.

TOWNSHIP 5 NORTH, RANGE 89 WEST OF THE 6TH P.M.
COUNTY OF ROUTT, STATE OF COLORADO

Section 1:  Lots 7, 9, 10, 15, 16, 17 and 18.
Section 2:  Lots 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 20 and 21;
Lot 19, EXCEPT a tract bounded by a line described as
follows:
Beginning at the NW corner of said SE1/4SW1/4; thence East
along he North line of said SE1/4SW1/4 a distance of 760

A-3

feet; thence Southwest in a straight line and along the western side of the proposed County Road on said ridge, a distance of 945 feet to a point on the West line of said SE1/4SW1/4 which is 588 feet due South from the place of beginning; thence 588 feet due North to the Point of Beginning.

Section 3:  Lots 5, 6, 10, 11, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26 and 27.

Section 4:  Lots 2, 3, 4, S1/2, S1/2NW1/4, S1/2NE1/4

Section 9:  Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13.

Section 10: Lots 1, 2, 4, 5, 6, 9, 10, 11, 12, 13, 14 and 15; That part of Lots 3 and 8 which lies Southerly and Westerly of a straight line extending from the SW corner of Lot 1 of Section 4 to the NW corner of Lot 3 of Section 14 in said Township and Range.

Section 11: Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 15, 16, 18, 19 and 20; Lots 11 and 12, EXCEPT a tract of land described as follows: Beginning at a point 454.2 feet East of the NW corner of Lot 13 of said Section 11, thence N 63deg 26min E 647 feet to a point on the North line of Lot 12 of Section 11, thence N 63deg 26min E 328.3 feet to a point on the East line of Lot 11 of said Section 11, thence S 0deg 51min W 142.2 feet to the NE corner of said Lot 12, thence S 0deg 51min W 294.00 feet, thence West 865.8 feet to the Point of Beginning.

A tract of land in Lot 13 described as follows: Beginning at the NW corner of said Lot 13, thence East 454.2 feet along the North line of said Lot 13, thence S 63deg W 512.8 feet to a point on the West line of said Lot 13, thence N 0deg 51min E 233.5 feet to the Point of Beginning.

Section 12: Lots 2 and 3.

Section 13: Lots 1, 6, 9, 10, 11, 12, 13, 14, 15, 16 and 17.

Section 14: Lots 6, 7, 8, 12, 13, 14, 15, 16, 17 and that part of Lots 3, 4, 5, 9, 10 and 11 not lying within Tract 52.

Section 15: Lots 2, 3, 4, 5, 6, 7, 8, 11, 12, 13, 15 and 16.

Section 16: Lots 1, 2, 3, 4, 6, 7, 8, 9 and 10.

Section 20: NE1/4

Section 21: N1/2N1/2, N1/2SW1/4NE1/4, N1/2S1/2SW1/4NE1/4, N1/2SE1/4NW1/4, N1/2S1/2SE1/4NW1/4

Section 22: E1/2, NW1/4, NE1/4NE1/4SW1/4

Section 23: All

Section 24: All

Section 25: NE1/4NE1/4, S1/2NE1/4, W1/2NW1/4, SE1/4NW1/4, W1/2SE1/4, SE1/4SE1/4, SW1/4

Section 26: All

Section 27: NE1/4, NE1/4SE1/4

A-4

Section 35: N1/2, SE1/4, N1/2SW1/4, SE1/4SW1/4
Section 36: E1/2NE1/4, NW1/4, SE1/4, S1/2SW1/4
EXCEPT that part of the following described parcel which lies
within the SW1/4SW1/4, Section 36, T5N, R89W:
A tract of land located partly in the SW1/4SW1/4 of Section
36, T5N, R89W and partly in Lots 1 and 2, Section 12, T4N,
R89W, bounded by a line described as follows:
Beginning at a point on the Southerly line of said Section 36
from which the SW corner of said Section 36 bears S 89deg
04min W 398.47 feet; thence N 108.00 feet; thence N 70deg
07min E 292.00 feet; thence S 52deg 37min E 147.00 feet;
thence S 06deg 57min W 270.00 feet; thence S 37deg 00min E
48.00 feet; thence S 58deg 17min 20sec E 26.82 feet to the
Westerly right of way line of Routt County Highway No. 53;
thence along said right of way S 31deg 00min 38sec W 39.98
feet; thence leaving said right of way N 77deg 58min 20sec W
244.35 feet; thence N 63deg 53min 57sec W 188.54 feet; thence
S 38deg 40min W 165.00 feet; thence S 25deg 25min 51sec E
382.36 feet; thence S 46deg 30min W 575.00 feet; thence S
29deg 30min W 195.22 feet to the Westerly right of way line
of said Highway No. 53; thence along said right of way S
58deg 17min 31sec W 89.25 feet; thence leaving said right of
way N 54deg 00min W 316.84 feet; thence N 38deg 40min E
1285.00 feet to the point of beginning.


### TOWNSHIP 5 NORTH, RANGE 89 WEST OF THE 6TH P.M.
### COUNTY OF ROUTT, STATE OF COLORADO

ORIGINAL SURVEY                                    RESURVEY

| Section | Original Survey | Resurvey |
|---|---|---|
| Section 1: | Lots 3, 4, SW1/4NW1/4 | |
| Section 2: | SE1/4NE1/4 | Tract 38 |
| Section 2: | N1/2SE1/4, SW1/4SE1/4, SE1/4SW1/4 | Tract 40 |
| Section 2: | SW1/4SW1/4 | |
| Section 10: | E1/2NE1/4 | |
| Section 11: | NW1/4NW1/4 | Tract 41 |
| Section 10: | SW1/4NE1/4, NW1/4SE1/4, E1/2SW1/4 | Tract 46 |
| Section 16: | All | Tract 51 |
| Section 14: | N1/2NW1/4, SW1/4NW1/4, NW1/4SW1/4 | Tract 52 |


### TOWNSHIP 6 NORTH, RANGE 89 WEST OF THE 6TH P.M.
### COUNTY OF ROUTT, STATE OF COLORADO

Section 33: SW1/4, Lots 6 and 11, and a tract in Lot 10 bounded by a line


A-5

described as follows:
Beginning at the SW corner of said Lot 10; thence N 991 feet;
thence S 46deg E 741 feet; thence S 30deg E 528 feet; thence
W 812 feet to the point of beginning.
EXCEPT that part conveyed to The County of Routt by Right of
Way Deed recorded January 14, 1931 in Book 170 at Page 311.

EXCEPT a tract of land bounded by a line described as
follows:
Beginning at the NE corner of said Lot 6, thence South on the
East line of Lot 6, 80 feet, thence N 49deg 22min W 110 feet,
thence East 70 feet on the North line of said Lot 6 to the NE
corner of said Lot 6, the place of beginning.
Section 34: Lot 16
Section 35: Lots 13, 14, 15 and 16.

A-6

**EXCLUSIVE LISTING AGREEMENT**

**SALE OR LEASE TRANSACTION**

The undersigned Owner hereby appoints Cushman & Wakefield of Colorado, Inc. ("C&W") as its sole broker with the exclusive right to sell the real property located near Hayden, Colorado, known as the Williams Fork Mountain Ranch, a 14,000 acre site (the "Property").

1.  **TERM:** The term of this Agreement begins on October 25, 1994 and will end at midnight on October 31, 1995.

2.  **C&W'S SERVICES:** C&W will enlist the best efforts of its firm to secure a satisfactory purchaser(s) for the Property and C&W will also promptly solicit the cooperation of other licensed real estate brokers. C&W will assist Owner in negotiating the terms of any sale, all of such terms being in Owner's sole discretion.

3.  **OWNER REFERRALS:** Owner will refer to C&W all inquiries and offerings received by Owner regarding the Property. In the event Owner is obligated to pay a referral fee, the commission payable to C&W will be adjusted in accordance with the attached Schedule of Commissions.

4.  **ADVERTISING:** Owner authorizes C&W to advertise and to place signage on the Property. C&W, at its expense, will provide its standard signage and flyer/brochure. Any additional advertising and promotion must be approved in writing by Owner and will be done at Owner's expense pursuant to a program and budget agreed upon by Owner and C&W and will identify C&W as exclusive agent for the Property.

5.  **COMMISSION:** If, during the term hereof, Owner sells the Property, Owner will pay to C&W a commission in accordance with the attached Schedule of Commissions. Within 15 days after the end of the term, C&W will provide to Owner a list of prospective purchasers or tenants to whom the Property was submitted (by C&W, Owner or any third party) during the term. If a prospective purchaser or tenant, appearing on said list, enters into a purchase contract, lease or option within 120 days after the end of the term, and the purchase thereafter closed, Owner will pay a commission to C&W as provided above, less any referral fees owed by Owner.

6.  **OUTSIDE BROKERS:** If an outside broker represents the purchaser in a transaction for which a commission is payable hereunder, C&W will request such broker to agree to accept an equitable portion of the commission as its compensation. If such broker so agrees, Owner will pay to C&W the commission provided for herein, out of which C&W will pay to such broker its agreed share and retain the balance as C&W's compensation. If such broker does not so agree, then negotiations will go forward pending agreement, and Owner, at closing, may place the commission in escrow with an agent of Owner's choice until the matter is decided, which action by Owner will absolve it of all liability to either party. Anything to the contrary herein notwithstanding, in no event shall Owner be required to pay a commission in excess of commission specified on the Schedule of Commission, regardless of the number of brokers involved.

7.  **ALTERNATIVE TRANSACTION:** If a proposed transaction covered by this Agreement turns into any other transaction, including, but not limited to, a sale, exchange, right of first refusal, ground lease or lease, then C&W and Owner will endeavor to reach an agreement as to the amount, if any, of commission to which C&W may be entitled. Absent agreement, the matter

shall be submitted to the American Arbitration Association for resolution pursuant to its rules.

8.  **PROPERTY INFORMATION:** Owner represents that it has no actual knowledge of toxic, contaminated or hazardous substances, or defective conditions, at the Property except as Owner has informed C&W in writing, nor has Owner been advised that such conditions exist. Owner authorizes C&W to advise prospective purchasers of Owner's lack of such knowledge.

9.  **BROKER RELATIONSHIP DISCLOSURE: PURSUANT TO COLORADO REVISED STATUES §12-61-808, C&W ADVISES OWNER THAT DIFFERENT BROKERAGE RELATIONSHIPS ARE AVAILABLE WHICH INCLUDE SELLER OR LANDLORD AGENCY, BUYER OR TENANT AGENCY, DUAL AGENCY, TRANSACTION BROKER AND SUBAGENCY. OWNER ACKNOWLEDGES RECEIPT OF C&W'S BROKERAGE RELATIONSHIP POLICY AND DISCLOSURE OF OBLIGATIONS IN VARIOUS BROKERAGE RELATIONSHIPS, AND OWNER HAS AGREED TO THE BROKERAGE RELATIONSHIPS SPECIFIED ON THE ATTACHED BROKER RELATIONSHIP ADDENDUM.**

10. **AUTHORITY:** Owner represents that it is the owner of the Property and/or has the full right, power and authority to execute this Agreement and to consummate a transaction as provided herein, and to perform Owner's obligations hereunder. The individuals signing this Agreement represent that they are authorized signatories.

11. **PROFESSIONAL ADVICE:** C&W recommends that Owner obtain legal, tax or other professional advice relating to this Agreement and the proposed sale or lease of the Property as well as the condition and/or legality of the Property, including, but not limited to, the Property's improvements, equipment, soil, tenancies, title, environmental aspects and compliance with the Americans with Disabilities Act. Owner further agrees that in determining the financial soundness of any prospective purchaser or tenant, Owner will rely solely upon Owner's own investigation and evaluation, notwithstanding C&W's assistance in gathering any financial information.

12. **NON-DISCRIMINATION:** It is unlawful for either Owner or C&W to discriminate against any persons because of their race, color, religion, national origin, sex, handicap or family status.

13. **SURVIVAL:** This Agreement is binding upon the parties hereto and their respective successors and assigns. The terms "Owner", "Purchaser" and "Tenant" include affiliates, successors, assigns and nominees.

14. **ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between Owner and C&W and supersedes all prior discussions. No modification of this Agreement will be effective unless made in writing and signed by both Owner and C&W. Owner acknowledges receipt of a copy of this Agreement and the Schedule of Commissions.

15. Nothing herein shall be construed as obligating Owner to sell the Property to any party, or as obligating Owner to accept any terms whatsoever, all of such decisions being reserved to Owner's sole judgment and discretion.

H-G COAL COMPANY
BY COALGRACE, INC.
a General Partner

By: _____
     F. L. Ryan, Vice President

HAYDEN GULCH WEST COAL COMPANY
BY GRACE H-G, INC.
a General Partner

By: _____
     F. L. Ryan, Vice President

AXIAL BASIN RANCH COMPANY
BY GRACE A-B, INC.
a General Partner

By: _____
     F. L. Ryan, Vice/President

Address:    Two Galleria Tower
            13455 Noel Road, Suite 1500
            Dallas, Texas 75240

Date:       October 25, 1994


CUSHMAN & WAKEFIELD OF COLORADO, INC.

By: _____
     Stephen P. Miller
     Director, Branch Manager

Address:    410 Seventeenth Street, Suite 200
            Denver, Colorado 80202

Date:       October 25, 1994

## SCHEDULE OF COMMISSIONS

### A.  SALES

Rates: For unimproved real property: a percentage of the total sales price, as follows:
- 6% on first $3,000,000 of proceeds, plus
- 8% on amount in excess of $3,000,000, plus
- 2% Bonus on total if C&W closes on a sale prior to 6/30/95.

**Time of Payment:** The commission shall be paid in full at the time of the closing or transfer of title to the property, except in the case of an installment purchase contract, in which case the commission shall be paid in full at the time of the execution and delivery of the installment purchase contract between Seller and Purchaser. In the event Owner is required to pay a referral fee, as described in "B" below, Owner will deduct such referral fee from the commission calculated above, and pay C&W the net amount.

**Computation of Sales Price:** The commission shall be computed in accordance with the above rates based upon the total sales price, which shall include any mortgages, loans or other obligations of Seller which may be assumed by Purchaser or which Purchaser takes title "subject to", any purchase money loans or mortgages taken back by Seller, the sales price of any fixtures or other personal property sold by separate agreement between Seller and Purchaser as part of the overall sales of the real property, and the current market value of any other real or personal property transferred from Purchaser to Seller.

**Purchaser Option:** If Seller grants a purchase option, C&W will be paid a commission at the above rate as and when amounts are payable for the option (and for extensions thereof). Upon closing of the sale, C&W will be paid a commission at the above rate on the total sales price (excluding any amount paid for the option and applied to the sales price).

**Deposit:** In the event title does not close due to the fault of the Buyer and the deposit is retained by Seller, the commission to be paid C&W shall be either 1/2 of the amount of the deposit, or the regular commission computed as set forth above, whichever is less, less 1/2 of any amount owed by Owner to a referral.

### B.  REFERRALS TO OWNER

Owner has solicited a broad variety of individuals for their assistance in locating a Buyer for the Property. In the event the Property is sold to a Buyer referred to Owner by some party other than C&W and a referral fee is owed by Owner to such party, then the amount of such referral fee shall be deducted from the commission amount calculated per "A" above, and only the net amount shall be payable to C&W as a commission.

### C.  PROPERTY SALES CONTACTS PRIOR TO LISTING

Owner has discussed this Property with several individuals prior to the date of this listing, as identified on Exhibit "A" to this Agreement. In the event that a sale to any party identified on Exhibit "A" is under contract prior to 1/31/95, C&W shall not be entitled to any commission whatsoever. However, in the event of such a sale, Owner will reimburse C&W for all documented out-of-pocket expenses incurred by C&W between 10/25/94 and the closing date of such sale, such reimbursement not to exceed $50,000.

In the event that a sale to any party identified on Exhibit "A" is not under contract prior to 1/31/95, C&W shall be entitled to the below indicated commission applicable to the period in which the property is sold:

| Date of Sale | Applicable C&W Commission Rate |
|---|---|
| 2/1/95-3/31/95 | 2.0% |
| 4/1/95-6/30/95 | 4.0% |
| 7/1/95 or later | Per Section "A" above |

## EXHIBIT A

1.    Peabody Development Company (and affiliates)

2.    Zeigler Coal Holding Company

3.    Consol Inc.

4.    RTZ America Inc. (and affiliates)

5.    William K. Anderson

6.    Western Fuels Association, Inc.

7.    Cyprus/Amax Coal Corporation

8.    Trapper Mining Inc.

9.    A Middle East buyer to be identified by Mont P. Hoyt

# PROMISSORY NOTE



$3,000,000.00

Denver, Colorado
October 2, 1995

COTTONWOOD LAND COMPANY, a Delaware corporation ("Maker"), for value received, the receipt and sufficiency of which are hereby acknowledged, promises and agrees to pay to the order of AXIAL BASIN RANCH COMPANY, a Delaware general partnership ("Lender"), at One Town Center Road, Boca Raton, Florida 33486, or at such other place or places as Lender may designate, the sum of Three Million and No/100 Dollars ($3,000,000.00), without interest. Such amount shall be payable in five annual installments payable on the first, second, third, fourth, and fifth anniversaries of this Note. The installments shall be in the following amounts:

| Payment Date: | Amount: |
|---|---|
| 1.    October 2, 1996 | $666,667.00 |
| 2.    October 2, 1997 | $666,667.00 |
| 3.    October 2, 1998 | $666,666.00 |
| 4.    October 2, 1999 | $500,000.00 |
| 5.    October 2, 2000 | $500,000.00 |

This entire Note, including all unpaid principal, and any and all other amounts outstanding hereunder, under the Deed of Trust, or under any other instrument given to secure this Note, shall be due and payable in full on October 2, 2000.

Maker may prepay this Note in whole or in part at any time and from time to time without premium, penalty, or other charge or cost. All payments and prepayments shall be applied: first to all accrued costs and expenses which Maker is obligated to pay or for which maker is obligated to reimburse Lender hereunder, under the Deed of Trust, or under any other instrument given to secure this Note and last to the reduction of principal.

Maker shall pay to Holder on demand a late charge of five percent (5%) of any payment due hereunder, under the Deed of Trust, or under any other instrument given to secure this Note, which is not paid within five days after the date due.

If Maker fails to make any payment due hereunder on the date that such payment is due and such failure continues uncured for a period of ten (10) days after such date, the entire unpaid balance of this Note shall, at the option of Lender, become immediately due and payable without notice or demand. Notwithstanding any other term or provision of this Note to the contrary, from and after the occurrence of any default hereunder, the unpaid balance of this Note shall without notice bear interest at the rate of eighteen percent (18%) per annum, compounded monthly. A default shall occur hereunder upon the occurrence of any of the following events (a) failure to make any payment of any amount owed to Lender pursuant to this Note or the

Deed of Trust or any other instrument given to secure this Note when the same shall be due and payable or the failure to perform any other obligation when due hereunder, under said Deed of Trust, or under any other instrument given to secure this Note; (b) insolvency of, appointment of a receiver for any part of the property of, or assignment for the benefit of creditors by, Maker; (c) the commencement of any proceedings under any bankruptcy or insolvency laws by Maker; or (d) the commencement of any involuntary proceedings under any bankruptcy or insolvency laws against Maker if the same have not been fully discharged within sixty (60) days after the commencement thereof.

In the event that Lender shall determine that it is necessary or desirable to place this Note in the hands of an attorney for collection, to foreclose the Deed of Trust given to secure this Note, or to take any action on any other instrument given as security for this Note, Maker agrees to pay all costs of such collection, foreclosure, and other action, including reasonable attorneys' fees. Without limiting the generality of the foregoing, attorneys' fees which do not exceed fees which would be applicable if determined at the hourly rates normally charged by the persons performing the work shall be conclusively deemed to be reasonable, regardless of whether said fees bear a reasonable relationship to the relief obtained.

Maker and the endorsers hereof severally waive presentment for payment, protest and demand, notice of protest, of demand, and of nonpayment and dishonor hereof, and agree to any extension of time of payment and partial payment before, at, or after maturity.

No waiver by Lender shall be effective unless made by express written instrument. The acceptance of any partial payment or other payment which does not fully pay all amounts then due hereunder and fully cure all defaults hereunder shall not constitute a waiver of the right to payment of the balance of such payment or other amount then or thereafter due, of any default hereunder, of the right to declare a default hereunder or cause the entire unpaid balance hereof to become immediately due and payable in full, or of any other right or remedy.

Without negating the effectiveness of a notice given by Lender in any other manner, any notice by Lender hereunder shall be valid and effective on Maker and all endorsers if one copy thereof is mailed addressed as follows:

> Cottonwood Land Company
> c/o Peabody Holding Company, Inc.
> 301 North Memorial Drive, Suite 300
> St. Louis, Missouri  63102-2401

This Note is secured by a Deed of Trust of even date herewith on real property located in the County of Routt, Colorado.  In the event of default hereunder or under the Deed of Trust or any other instrument given to secure this Note, Lender may, at its option, foreclose the Deed of Trust, foreclose on any other security given for this Note, or exercise any other right or remedy available hereunder or under the Deed of Trust or any other instrument given to secure this Note, or otherwise available at law or in equity, in any sequence or combination. Proceeding with any one right or remedy or any combination thereof shall not be an election against or waiver of any other right or remedy.

-2-

The validity and effect of this Note shall be governed by the laws of the State of Colorado.

COTTONWOOD LAND COMPANY,
a Delaware corporation

By: _Jack S Lautersilby_

Its: _PRESIDENT_

-3-

Recorded at _____ o'clock ___ M., _____
Reception No. _____

Recorder.

## DEED OF TRUST

THIS INDENTURE, Made this   2nd   day of   October   , 19 95   between
COTTONWOOD LAND COMPANY, a Delaware corporation

whose address is

301 North Memorial Drive, Suite 310, St. Louis,
MO 63102-2401
hereinafter referred to as grantor, and the Public Trustee of the                                   County of
Routt                                   , State of Colorado, hereinafter referred to as Public Trustee.

WITNESSETH, THAT, WHEREAS,
COTTONWOOD LAND COMPANY, a Delaware corporation

has executed a promissory note or notes, hereinafter referred to in the singular, dated   October 2, 1995   , for the
principal sum of   Three Million and No/100------------------------------
Dollars,
payable to the order of
AXIAL BASIN RANCH COMPANY, a Delaware general partnership

whose address is

One Town Center Road, Boca Raton, FL 33486
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXX   XXXXXXXXXXXX XX XXXXXXXXXX XXXXX XXX XXXXX
The Note bears no interest and is payable in annual installments
in the amounts specified therein until October 2, 2000 on which
date all amounts payable thereunder and hereunder shall be due and
payable in full.

AND WHEREAS, the grantor is desirous of securing payment of the principal and interest of said promissory note in whose hands soever the said
note may be.

NOW THEREFORE, the grantor, in consideration of the premises and for the purpose aforesaid, does hereby grant, bargain, sell and convey unto
the said Public Trustee in trust forever, the following described property, situate in the                                   County of
Routt                                   , State of Colorado, to wit:

        The real property described on Exhibit A attached
        hereto and by this reference made part hereof.

XXXXXXXXX XXXXXXXXXXXXXX

TO HAVE AND TO HOLD the same, together with all and singular the privileges and appurtenances thereunto belonging: In trust nevertheless, that
in case of default in the payment of said note or any part thereof, or in the payment of the interest thereon according to the tenor and effect of said note, or in
the payment of any prior encumbrances, principal or interest, if any, or in case default made in or in case of violation or breach of any of the terms,
conditions, covenants or agreements herein contained, the beneficiary hereunder or the legal holder of the indebtedness secured hereby may declare a
violation of any of the covenants herein contained and may elect to advertise said property for sale, and demand such sale by filing a notice of election and
demand for sale with the Public Trustee. Upon receipt of such notice of election and demand for sale, the Public Trustee shall cause a copy of the same to be
recorded in the recorder's office of the county in which said property is situated. The Public Trustee shall then give public notice of the time and place of sale
by advertisement to be published for four weeks (once each week for five successive weeks) in some newspaper of general circulation at that time published
in the county or counties in which said property is located. A copy of such notice shall be mailed within ten days after the date of the first publication thereof
to the grantor at the address given herein, to such persons appearing to have acquired a subsequent record interest in said property at the address given in the
recorded instrument, and to any other persons as may be provided by law. It shall and may then be lawful for the Public Trustee to sell said property for the
highest and best price the same will bring in cash and to dispose of the same (en masse or in separate parcels, as the said Public Trustee may think best)
together with all the right, title and interest of the grantor therein, at public auction at any place as may be specified by statute and designated in the notice of
sale. The Public Trustee shall make and give to the purchaser of such property at such sale, a certificate in writing containing: a description of such property
purchased; the sum paid therefor; a statement that said purchaser shall be entitled to a deed therefore, unless the same shall be redeemed as is provided by
law; and in the event of a continuance of the sale, a recital that the sale was duly continued. The Public Trustee shall, upon demand by the person holding the
said certificate of purchase, when said demand is made or upon demand by the person entitled to a deed and for the property purchased at the time such
demand is made, the time for redemption having expired, make and execute to such person a deed to the said property purchased. Said deed shall be in the
ordinary form of a conveyance, and shall be signed, acknowledged and delivered by the said Public Trustee and shall confirm the foreclosure sale and sell and
convey to such person entitled to such deed, the property purchased as aforesaid and all the right, title, interest, benefit and equity of redemption of the
grantor therein. The Public Trustee shall, out of the proceeds or avails of such sale, after first paying and retaining all fees, charges and costs of making said
sale, pay to the beneficiary hereunder or the legal holder of said note, the principal and interest due on said note according to the tenor and effect thereof, and
all moneys advanced by such beneficiary or legal holder of said note for insurance, taxes and assessments, with interest thereon at   18   per cent per
annum, rendering the overplus, if any, unto those persons entitled thereto as a matter of law. Said sale and said deed so made shall be a perpetual bar, both in
law and equity, against the grantor and all other persons claiming the said property, or any part thereof, by, from, through or under the grantor. The holder of
said note may purchase said property or any part thereof; and it shall not be obligatory upon the purchaser at any such sale to see to the application of the
purchase money.

*If in Denver, insert "City and".

453293       B-712    P-1032 10/04/95 03:38P PG 1    OF 10            REC      DOC
Kay Weinland        Routt County Clerk & Recorder                    51.00

No. 341A. Rev. 12-92.    DEED OF TRUST (Public Trustee) With Due on Sale Clause ©
Bradford Publishing, 1743 Wazee St., Denver, CO 80202 — (303) 292-2500 — 3-95

And the grantor covenants and agrees in and with the Public Trustee, that at the time of the ensealing and delivery of these presents he is well seized of the said land and tenements in fee simple, and has good right, full power and lawful authority to grant, bargain, sell and convey the same in the manner and form as aforesaid; hereby fully and absolutely waiving and releasing all rights and claims he may have in or to said lands, tenements, and property as a Homestead Exemption, or other exemption, under or by virtue of any act of the General Assembly of the State of Colorado, or as any exemption under and by virtue of any act of the United States Congress, now existing or which may hereafter be passed in relation thereto and that the same are free and clear of all liens and encumbrances whatever, except

**all easements, reservations, restrictions, and other encumbrances of record,**

and the above bargained property in the quiet and peaceable possession of the Public Trustee, against all and every person or persons lawfully claiming or to claim the whole or any part thereof, the grantor shall and will Warrant and Forever Defend.

Until payment in full of the indebtedness, the grantor shall timely pay all taxes and assessments levied on the property; any and all amounts due on account of principal and interest or other sums on any senior encumbrances, if any; and will keep all improvements that may be on said lands insured against any casualty loss, including extended coverage, in a company or companies meeting the net worth requirements of the beneficiary hereof in an amount which will yield to the holder of the indebtedness, after reduction by co-insurance provisions of the policy, if any, not less than the then total indebtedness. Each policy shall contain a loss payable clause naming the beneficiary as mortgagee and shall further provide that the insurance may not be canceled upon less than ten days written notice to the beneficiary. At the option of the beneficiary, the original policy or policies of insurance shall be delivered to the beneficiary as further security for the indebtedness. Should the grantor fail to insure and deliver the policies or to pay taxes or assessments as the same fall due, or to pay any amounts payable upon senior encumbrances, if any, the beneficiary may make any such payments or procure any such

insurance, and all monies so paid with interest thereon at the rate of    18    % per annum shall be added to and become a part of the indebtedness secured by this Deed of Trust and may be paid out of the proceeds of the sale of the property if not paid by the grantor. In addition, and at this option, the beneficiary may declare the indebtedness secured hereby and this Deed of Trust to be in default for failure to procure insurance or make any of the payments required by this paragraph.

If all or any part of the property or an interest therein is sold or transferred by the grantor without beneficiary's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, beneficiary may, at beneficiary's option, declare all the sums secured by this Deed of Trust to be immediately due and payable. Beneficiary shall have waived such option to accelerate if, prior to the sale or transfer, beneficiary and the person to whom the property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to beneficiary and that the interest payable on the sums secured by this Deed of Trust shall be at such rate as beneficiary shall request.

**AND THAT IN CASE OF ANY DEFAULT** whereby the right of foreclosure occurs hereunder, the holder of said note or certificate of purchase shall at once become entitled to the possession, use and enjoyment of the property aforesaid, and to the rents, issues and profits thereof, from the accruing of such right and during the pendency of foreclosure proceedings and the period of redemption, if any there be; and such possession shall at once be delivered to the holder of said note or certificate of purchase on request, and on refusal, the delivery of such possession may be enforced by the holder of said note or certificate of purchase by any appropriate civil suit or proceeding, and the holder of said note or certificate of purchase, or any thereof, shall be entitled to a Receiver for said property, and of the rents, issues and profits thereof, after such default, including the time covered by foreclosure proceedings and the period of redemption, if any there be, and shall be entitled thereto as a matter of right without regard to the solvency or insolvency of the grantor or of the then owner of said property and without regard to the value thereof, and such Receiver may be appointed by any court of competent jurisdiction upon ex parte application and without notice — notice being hereby expressly waived — and all rents, issues and profits, income and revenue therefrom shall be applied by such Receiver to the payment of the indebtedness hereby secured, according to the law and the orders and directions of the court.

**AND,** that in case of default in any of said payments of principal or interest, according to the tenor and effect of said promissory note or any part thereof, or of a breach or violation of any of the covenants or agreements herein, by the grantor, then and in that case the whole of said principal sum hereby secured and the interest thereon to the time of the sale may at once, at the option of the legal holder thereof, become due and payable, and the said property be sold in the manner and with the same effect as if said indebtedness had matured, and that if foreclosure be made by the Public Trustee ~~XXXXXXXXXXXX~~ of ~~XXXXXX~~ **reasonable attorneys' fees** ~~XXXX~~ for services in the supervision of said foreclosure proceedings shall be allowed by the Public Trustee as a part of the cost of foreclosure, and if foreclosure be made through the courts a reasonable attorney's fee shall be taxed by the court as a part of the cost of foreclosure proceedings.

**It Is Further Understood and Agreed,** that if a release of this deed of trust is required, the grantor will pay the expense thereof; that all the covenants and agreements herein contained shall extend to and be binding upon the heirs, personal representatives, successors and assigns of the respective parties hereto; and that the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

Executed this   2nd   day of   October   , 19 95 .

ATTEST: _James C Serum_      COTTONWOOD LAND COMPANY, a
(SEAL)                         Delaware corporation

City and County of Denver

By: _Jack L Rautenberg_
Its: _PRESIDENT_

State of Colorado     } ss.

The foregoing instrument was acknowledged before me this   2nd   day of   October   , 19 95
by _Jack L Rautenberg_ as _President_ of
Cottonwood Land Company, a Delaware corporation.

Witness my hand and seal.
My commission expires   May 13, 1998      _Margaret M. Newton_
                                          Notary Public

Name and Address of Person Creating Newly Created Legal Description (§ 38-35-106.5, C.R.S.)

453293     B-712     P-1032   10/04/95   03:38P   PG 2   OF 10

STATE OF COLORADO
County of
I hereby certify that this instrument was filed for record in my office at _____ o'clock _____ M., this _____ day of _____ 19_____ and is duly recorded in book _____ page _____
Film No. _____ Reception No. _____
Recorder _____ Deputy
Fees, $ _____

BRADFORD PUBLISHING CO

ADDENDUM
to
DEED OF TRUST

THIS ADDENDUM is attached to and made a part of the Deed of Trust dated October 2, 1995 (the "Deed of Trust") made and given by COTTONWOOD LAND COMPANY, a Delaware corporation ("Grantor") to the Public Trustee of Routt County, Colorado for the benefit of AXIAL BASIN RANCH COMPANY, a Delaware general partnership ("Beneficiary"). In the event of any inconsistency between the terms set forth in the printed portion of this Deed of Trust and the terms set forth in this Addendum, the terms set forth in this Addendum shall control.

1. <u>Active Surface Mining Operations</u>. Grantor shall not, without the prior written consent of Beneficiary, conduct any active surface mining operations on the Property or any part thereof at any time prior to the complete release of this Deed of Trust. For purposes of this Deed of Trust, active surface mining operations shall mean and include any activity which physically alters the surface of the Property for purposes relating to the development or extraction of coal or other minerals from the Property by surface mining methods. As used herein, active surface mining operations shall not include any activity on or about the Property undertaken primarily for the purpose of permitting, exploring, examining, or assessing the presence, quantity, quality, location, nature, or extent of minerals on the Property; and shall not include the construction on the Property of any outbuildings, storage facilities, or other structures, infrastructure, or alterations on the surface of the Property in anticipation of or in preparation for the commencement of active surface mining operations.

2. <u>No Subdivision</u>. Grantor shall not, without the prior written consent of Beneficiary, subdivide all or any portion of the Property.

3. <u>Environmental Laws</u>.

(A) <u>Environmental Law</u>. As used herein, the term "Environmental Law" shall mean any federal, state or local enactment relating to protection of public health or the environment, including (by way of illustration rather than limitation) the Clean Water Act, 33 U.S.C. § 1251, <u>et seq.</u>, the Clean Air Act, 42 U.S.C. § 7401, <u>et seq.</u>, the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, <u>et seq.</u>, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601, <u>et seq.</u>, the Toxic Substances Control Act, 15 U.S.C. § 2601, <u>et seq.</u>, and the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 135, <u>et seq.</u>, as well as applicable state counterparts to such federal legislation and any regulations, guidelines, directives or other interpretations of any such enactment, all as amended from time to time.

(B) <u>Regulated Substance</u>. As used herein, the term "Regulated Substance" shall mean any substance, the manufacture, storage, transport, generation, use, treatment, recycling, disposal or other disposition of which is prohibited or regulated (including, without limitation, being subjected to notice, reporting, record-keeping or clean-up requirements) by any Environmental Law.

(C) <u>Use of Regulated Substances</u>. Grantor will not cause or permit all or any part of the Property to be used to manufacture, generate, store, transfer, treat, recycle or dispose of any Regulated Substance, nor will Grantor cause or permit, as a result of any intentional or unintentional act on the part of Grantor or any tenant, subtenant or other user or occupant of the Property, any release of any Regulated Substance onto the

Property or from the Property onto other property. Grantor will indemnify Beneficiary against, and hold Beneficiary harmless from, any loss, claim, damage or expense, including attorneys' fees and other litigation expenses, incurred by Beneficiary in connection with any actual or alleged violation of the preceding sentence. Such indemnity shall survive the release, foreclosure or other discharge of this Deed of Trust.

4. <u>Remedies Cumulative</u>. Beneficiary's rights and remedies under the Note, the Deed of Trust, and the Guaranty given by Peabody Holding Company, Inc. are cumulative of the rights and remedies available to Beneficiary under each of such instruments and those otherwise available to Beneficiary at law or in equity. No act of Beneficiary shall be construed as an election to proceed under any particular provision of any of such instruments to the exclusion of any other provision in the same or any other such instrument, or as an election of remedies to the exclusion of any other remedy that may then or thereafter be available to Beneficiary.

GRANTOR:

COTTONWOOD LAND COMPANY,
a Delaware corporation

ATTEST:

By: _____

Its: _PRESIDENT_____

J. C. Seven
Secretary

SEAL

453293   B-712   P-1032   10/04/95   03:38P PG 4   OF 10

EXHIBIT A

TOWNSHIP 4 NORTH, RANGE 88 WEST OF THE 6TH P.M.
COUNTY OF ROUTT, STATE OF COLORADO

Section 7:  Lot 1, N1/2SE1/4, SE1/4SW1/4;
Section 8:  Lot 4;
Section 18: Lots 1, 2, 3, NE1/4NW1/4;
            EXCEPT that part of the following lying in Lot 3 of Section
            18, described by metes and bounds as follows:  beginning at a
            point whence the Southeast corner of Lot 4 of said Section
            bears South 624 feet (magnetic variation 16deg 45min east),
            thence North 56deg 30min West 411 feet, thence North 23deg
            27min East 163 feet, thence North 38deg 14min West 252 feet,
            thence North 89deg 43min West 155 feet, thence North 64deg
            22min West 80 feet, thence North 20deg East 217 feet, thence
            South 73deg 04min East 180 feet, thence South 83deg East 423
            feet, to the East line of said Lots 3 and 4, thence South
            along said East line 711 feet to the point of beginning.

TOWNSHIP 5 NORTH, RANGE 88 WEST OF THE 6TH P.M.
COUNTY OF ROUTT, STATE OF COLORADO

Section 17: S1/2SW1/4;
Section 19:                        E1/2NE1/4;
Section 20: NW1/4, NW1/4SE1/4, W1/2NE1/4
            EXCEPT parcels of land conveyed to The County of Routt by
            deed recorded January 16, 1979 in Book 468 at Page 697;

            ALSO EXCEPT all those portions of the NW1/4NE1/4 of Section
            20, lying East of Routt County Road No. 53.

TOWNSHIP 4 NORTH, RANGE 89 WEST OF THE 6TH P.M.
COUNTY OF ROUTT, STATE OF COLORADO

Section 11: SE1/4
Section 12: W1/2SW1/4, SE1/4, Lots 1, 2 and 4
            EXCEPT that part of the following described parcel which lies

453293  B-712  P-1032 10/04/95 03:38P PG 5   OF 10

A-1

within Lots 1 and 2, Section 12, T4N, R89W:
A tract of land located partly in the SW1/4SW1/4 of Section
36, T5N, R89W and partly in Lots 1 and 2, Section 12, T4N,
R89W, bounded by a line described as follows:
Beginning at a point on the Southerly line of said Section 36
from which the SW corner of said Section 36 bears S 89deg
04min W 398.47 feet; thence N 108.00 feet; thence N 70deg
07min E 292.00 feet; thence S 52deg 37min E 147.00 feet;
thence S 06deg 57min W 270.00 feet; thence S 37deg 00min E
48.00 feet; thence S 58deg 17min 20sec E 26.82 feet to the
Westerly right of way line of Routt County Highway No. 53;
thence along said right of way S 31deg 00min 38sec W 39.98
feet; thence leaving said right of way N 77deg 58min 20sec W
244.35 feet; thence N 63deg 53min 57sec W 188.54 feet; thence
S 38deg 40min W 165.00 feet; thence S 25deg 25min 51sec E
382.36 feet; thence S 46deg 30min W 575.00 feet; thence S
29deg 30min W 195.22 feet to the Westerly right of way line
of said Highway No. 53; thence along said right of way S
58deg 17min 31sec W 89.25 feet; thence leaving said right of
way N 54deg 00min W 316.84 feet; thence N 38deg 40min E
1285.00 feet to the point of beginning.

EXCEPT a tract of land in Lots 1 and 2 of Section 12, T4N,
R89W of the 6th P.M., bounded by a line described as follows:
Beginning at corner No. 1, from which the SW corner of
Section 36, T5N, R89W bears N 50deg 53min 10sec W 356.83
feet; (Said point of beginning being a point on the boundary
line of a tract of land conveyed to Ruby Construction
Company, Inc., by deed recorded in Book 379 at Page 686);
thence S 25deg 25min 51sec E 382.36 feet to corner 2; thence
S 46deg 30min 00sec W 575.00 feet to corner 3; thence S 29deg
30min 00sec W 195.22 feet to corner 4 on the Northwesterly
ROW line of Routt County Road No. 53; thence following the
Northwesterly ROW line of said Routt County Road No. 53,
377.51 feet along a curve to the right having a radius of
3794.19 feet; the chord of which bears N 61deg 08min 02sec E
377.36 feet to corner 5; thence N 63deg 59min 34sec E 117.58
feet to corner 6; thence 168.55 feet along a curve to the
left having a radius of 226.93 feet, the chord of which bears
N 42deg 42min 53sec E 164.70 feet to corner 7; thence N 21deg
26min 12sec E 73.29 feet to corner 8; thence 47.94 feet along
a curve to the right having a radius of 286.93 feet, the
chord of which bears N 26deg 13min 25sec E 47.89 feet to
corner 9; thence N 31deg 00min 38sec E 513.48 feet to corner
10; thence leaving said Northwesterly ROW line of Routt
County Road 53 N 77deg 58min 20sec W 244.35 feet to corner

11, thence N 63deg 53min 57sec W 188.54 feet to corner 12;
thence S 33deg 40min 00sec W 165.00 feet to corner 1 the
point of beginning.

Section 13: N1/2NE1/4, that portion of the NE1/4SE1/4 lying North of the
County Road,
EXCEPT so much thereof as is contained within the following
described tract of land:
From the E1/4 corner of Section 13, T4N, R89W run S 52deg
50min W 706.35 feet and thence S 24deg 30min W 72 feet to
Corner No. 1 of said Tract; thence S 53deg 5min W 1247.4 feet
to Corner No. 2, thence N 57deg 40min W 2158.2 feet to Corner
No. 3; thence North 541 feet to Corner No. 4, thence East 758
feet to Corner No. 5, thence S 0deg 35min E 462 feet to Corner
No. 6, center of Section 13, thence N 88deg E 2019.6 feet to
Corner No. 7, thence South 508.60 feet to Corner No. 1, the
point of beginning.

That part of the S1/2NW1/4 lying North of the Williams Fork
Road,
EXCEPT a tract of land described as follows:
From 1/4 corner Commmon to Sections 13, T4N, R89W and Section
18, T4N, R88W, S 52deg 50min W 706.35 feet; thence S 24deg
30min W 72 feet to Corner No. 1 of Tract; thence S 53deg 5min
W 1247.4 feet to Corner No. 2; thence N 57deg 40min W 2158.2
feet to Corner No. 3; thence N 541 feet to Corner No. 4;
thence E 758 feet to Corner No. 5; thence S 0deg 35min E 462
feet to Corner No. 6 Center Section 13; thence N 88deg E
2019.6 feet to Corner No. 7; thence S 508.6 feet to Corner
No. 1 point of beginning.

EXCEPT an 8 acre tract of indefinite location as excepted in
Deed dated October 1, 1937, recorded October 1, 1937 in Book
193 at Page 138.

<u>TOWNSHIP 5 NORTH, RANGE 89 WEST OF THE 6TH P.M.</u>
<u>COUNTY OF ROUTT, STATE OF COLORADO</u>

Section 1:  Lots 7, 9, 10, 15, 16, 17 and 18.
Section 2:  Lots 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 20 and 21;
Lot 19, EXCEPT a tract bounded by a line described as
follows:
Beginning at the NW corner of said SE1/4SW1/4; thence East
along he North line of said SE1/4SW1/4 a distance of 760

feet; thence Southwest in a straight line and along the western side of the proposed County Road on said ridge, a distance of 945 feet to a point on the West line of said SE1/4SW1/4 which is 588 feet due South from the place of beginning; thence 588 feet due North to the Point of Beginning.

Section 3: Lots 5, 6, 10, 11, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26 and 27.

Section 4: Lots 2, 3, 4, S1/2, S1/2NW1/4, S1/2NE1/4

Section 9: Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13.

Section 10: Lots 1, 2, 4, 5, 6, 9, 10, 11, 12, 13, 14 and 15; That part of Lots 3 and 8 which lies Southerly and Westerly of a straight line extending from the SW corner of Lot 1 of Section 4 to the NW corner of Lot 3 of Section 14 in said Township and Range.

Section 11: Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 15, 16, 18, 19 and 20; Lots 11 and 12, EXCEPT a tract of land described as follows: Beginning at a point 454.2 feet East of the NW corner of Lot 13 of said Section 11, thence N 63deg 26min E 647 feet to a point on the North line of Lot 12 of Section 11, thence N 63deg 26min E 328.3 feet to a point on the East line of Lot 11 of said Section 11, thence S 0deg 51min W 142.2 feet to the NE corner of said Lot 12, thence S 0deg 51min W 294.00 feet, thence West 865.8 feet to the Point of Beginning.

A tract of land in Lot 13 described as follows: Beginning at the NW corner of said Lot 13, thence East 454.2 feet along the North line of said Lot 13, thence S 63deg W 512.8 feet to a point on the West line of said Lot 13, thence N 0deg 51min E 233.5 feet to the Point of Beginning.

Section 12: Lots 2 and 3.

Section 13: Lots 1, 6, 9, 10, 11, 12, 13, 14, 15, 16 and 17.

Section 14: Lots 6, 7, 8, 12, 13, 14, 15, 16, 17 and that part of Lots 3, 4, 5, 9, 10 and 11 not lying within Tract 52.

Section 15: Lots 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 15 and 16.

Section 16: Lots 1, 2, 3, 4, 6, 7, 8, 9 and 10.

Section 20: NE1/4

Section 21: N1/2N1/2, N1/2SW1/4NE1/4, N1/2S1/2SW1/4NE1/4, N1/2SE1/4NW1/4, N1/2S1/2SE1/4NW1/4

Section 22: E1/2, NW1/4, NE1/4NE1/4SW1/4

Section 23: All

Section 24: All

Section 25: NE1/4NE1/4, S1/2NE1/4, W1/2NW1/4, SE1/4NW1/4, W1/2SE1/4, SE1/4SE1/4, SW1/4

Section 26: All

Section 27: NE1/4, NE1/4SE1/4

Section 25: N1/2, SE1/4, N1/2SW1/4, SE1/4SW1/4
Section 36: E1/2NE1/4, NW1/4, SE1/4, S1/2SW1/4
    EXCEPT that part of the following described parcel which lies
    within the SW1/4SW1/4, Section 36, T5N, R89W:
    A tract of land located partly in the SW1/4SW1/4 of Section
    36, T5N, R89W and partly in Lots 1 and 2, Section 12, T4N,
    R89W, bounded by a line described as follows:
    Beginning at a point on the Southerly line of said Section 36
    from which the SW corner of said Section 36 bears S 89deg
    04min W 398.47 feet; thence N 108.00 feet; thence N 70deg
    07min E 292.00 feet; thence S 52deg 37min E 147.00 feet;
    thence S 06deg 57min W 270.00 feet; thence S 37deg 00min E
    48.00 feet; thence S 58deg 17min 20sec E 26.82 feet to the
    Westerly right of way line of Routt County Highway No. 53;
    thence along said right of way S 31deg 00min 38sec W 39.98
    feet; thence leaving said right of way N 77deg 58min 20sec W
    244.35 feet; thence N 63deg 53min 57sec W 188.54 feet; thence
    S 38deg 40min W 165.00 feet; thence S 25deg 25min 51sec E
    382.36 feet; thence S 46deg 30min W 575.00 feet; thence S
    29deg 30min W 195.22 feet to the Westerly right of way line
    of said Highway No. 53; thence along said right of way S
    58deg 17min 31sec W 89.25 feet; thence leaving said right of
    way N 54deg 00min W 316.84 feet; thence N 38deg 40min E
    1285.00 feet to the point of beginning.


    TOWNSHIP 5 NORTH, RANGE 89 WEST OF THE 6TH P.M.
    COUNTY OF ROUTT, STATE OF COLORADO
ORIGINAL SURVEY
                                              RESURVEY
    Section 1:  Lots 3, 4, SW1/4NW1/4
    Section 2:  SE1/4NE1/4
    Section 2:  N1/2SE1/4, SW1/4SE1/4, SE1/4SW1/4   Tract 38
    Section 2:  SW1/4SW1/4                          Tract 40
    Section 10: E1/2NE1/4
    Section 11: NW1/4NW1/4
    Section 10: SW1/4NE1/4, NW1/4SE1/4, E1/2SW1/4   Tract 41
    Section 16: All                                 Tract 46
    Section 14: N1/2NW1/4, SW1/4NW1/4, NW1/4SW1/4   Tract 51
                                                    Tract 52


    TOWNSHIP 6 NORTH, RANGE 89 WEST OF THE 6TH P.M.
    COUNTY OF ROUTT, STATE OF COLORADO
Section 33: SW1/4, Lots 6 and 11, and a tract in Lot 10 bounded by a line


53293   B-712  P-1032 10/04/95 03:38P PG 9   OF 10

A-5

described as follows:
Beginning at the SW corner of said Lot 10; thence N 991 feet;
thence S 46deg E 741 feet; thence S 30deg E 528 feet; thence
W 812 feet to the point of beginning.
EXCEPT that part conveyed to The County of Routt by Right of
Way Deed recorded January 14, 1931 in Book 170 at Page 311.

EXCEPT a tract of land bounded by a line described as
follows:
Beginning at the NE corner of said Lot 6, thence South on the
East line of Lot 6, 80 feet, thence N 49deg 22min W 110 feet,
thence East 70 feet on the North line of said Lot 6 to the NE
corner of said Lot 6, the place of beginning.
Section 34: Lot 16
Section 35: Lots 13, 14, 15 and 16.

**GUARANTY**

      THIS GUARANTY is given as of the 2nd day of October, 1995 by PEABODY HOLDING COMPANY, INC., a New York corporation ("Guarantor"), to and for the benefit of AXIAL BASIN RANCH COMPANY, a Delaware general partnership ("AXIAL"), H-G COAL COMPANY, a Delaware general partnership ("H-G" and referred to herein together with AXIAL as "Lender"), and COTTONWOOD LAND COMPANY, a Delaware corporation ("COTTONWOOD").

<u>Recitals</u>

      A.    Pursuant to the Agreement for Sale of Real Property, dated August 2, 1995, as amended by the First Amendment for Sale of Real Property, dated September 18, 1995, and by the Second Amendment to Agreement for Sale of Real Property, dated September 19, 1995 (the "Amended Agreement"), between AXIAL and H-G and Peabody Development Company, a Delaware corporation ("Peabody"), AXIAL and H-G agreed to sell to Peabody, and Peabody agreed to purchase from AXIAL and H-G, certain real property located in Routt County, Colorado (the "Property").

      B.    Pursuant to the Assignment and Assumption Agreement, dated of even date herewith, Peabody assigned all of its right, title, and interest in, to, and under the Amended Agreement to COTTONWOOD.

      C.    The parties have closed the sale of the Property from AXIAL and H-G to COTTONWOOD concurrently with the execution of this Guaranty.

      D.    Pursuant to the terms of the Amended Agreement, a portion of the purchase price for the Property has been paid by COTTONWOOD by its execution and delivery of that certain Promissory Note, dated of even date herewith (the "Note"), payable to the order of AXIAL in the principal amount of $3,000,000.00.

      E.    The Note is secured by that certain Deed of Trust, dated of even date herewith (the "Deed of Trust"), from COTTONWOOD to the Public Trustee of Routt County, Colorado, encumbering a portion of the Property.

      F.    AXIAL and H-G are unwilling to accept the Note unless payment of the Note, as well as performance and observance of all of the covenants and conditions of COTTONWOOD under the Note, the Deed of Trust, and the Amended Agreement are unconditionally guaranteed by Guarantor.

Agreement

1.    **Guaranty.**  Guarantor hereby unconditionally and irrevocably guarantees to Lender (i) the payment when due of all indebtedness now or hereafter evidenced by the Note, as such Note or indebtedness may be accelerated, renewed, modified, or extended, and (ii) the timely performance of all obligations of COTTONWOOD.

2.    **Default.**  As used herein, a "Cottonwood Default" shall mean any failure by COTTONWOOD to pay any amount or perform any obligation as and when such payment or performance is due (which failure continues uncured after the expiration of any applicable cure period) under any of the Note, the Deed of Trust, or the Amended Agreement for any reason whatsoever, including, without limitation, any dissolution of COTTONWOOD or the effect of any proceeding under the Federal Bankruptcy Code or any similar present or future federal or state law.

3.    **Independent Obligations.**  The obligations of Guarantor hereunder are direct and independent of any obligation of COTTONWOOD to Lender; provided that such obligations of Guarantor shall not arise until the occurrence of a Cottonwood Default.  Upon the occurrence of a Cottonwood Default, a separate action or actions may be brought and prosecuted against Guarantor without regard to whether any action is brought against COTTONWOOD or whether COTTONWOOD is joined in any such action or actions.  No circumstance which operates to discharge, or to bar, suspend, or delay Lender's right to enforce, any obligation of COTTONWOOD hereunder (including, but not limited to, the effect of the federal Bankruptcy Code or any similar present or future federal or state law) shall have any effect upon the enforceability of Guarantor's obligations hereunder.  In the event of the occurrence of a Cottonwood Default, Lender may proceed against Guarantor hereunder without proceeding against COTTONWOOD, without proceeding against or exhausting any security now or hereafter held by Lender for the obligations hereby guaranteed, and without pursuing any other right or remedy available to Lender whatsoever, including, without limitation, any right or remedy provided under the Note or the Deed of Trust.

4.    **Authority to Modify Obligations.**  Guarantor hereby authorizes AXIAL and/or H-G, without notice to Guarantor and without impairing the liability of Guarantor hereunder, from time to time (a) to renew, extend, accelerate, modify, or otherwise change the times for or terms of payment or performance of the obligations guaranteed hereby, (b) to take and hold security for the performance of this Guaranty or the obligations hereby guaranteed, and to exchange, enforce, waive and release any such security, and (c) to apply such security and direct the order or manner of sale thereof as AXIAL and/or H-G in their sole discretion may determine.

-2-

5. **Delays and Waivers.** No delay or omission on Lender's part in exercising any right or remedy shall operate as a waiver of such right or remedy or any other right or remedy. A waiver on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion. No waiver or consent by Lender, and no purported amendment of this Guaranty, shall be binding upon Lender unless it is in writing and signed by Lender.

6. **Guarantor's Claims Against COTTONWOOD.** Guarantor postpones and subordinates to the claims of Lender against COTTONWOOD any indebtedness or other claim which the Guarantor may have now or in the future against COTTONWOOD.

7. **Waivers by Guarantor.** Guarantor waives all presentments, demands for payment or performance, notices of nonpayment or nonperformance, notices of default, protests, notices of protest, notices of dishonor, notice of acceptance of this Guaranty, and all other notices whatever, and agree to pay on demand all costs and expenses, including attorneys' fees, which may be incurred by Lender in connection with the enforcement of this Guaranty.

8. **Binding Effect; Termination.** This Guaranty shall inure to the benefit of Lender and any successor holders of the Note, and shall be binding upon Guarantor and upon Guarantor's successors and assigns. Guarantor's obligations hereunder shall continue in full force notwithstanding the transfer (with or without the consent of Lender) of Guarantor's interest in COTTONWOOD, until all of the obligations guaranteed herein have been paid and performed in full.

9. **Applicable Law.** This Guaranty shall be construed and enforced in accordance with the laws of the State of Colorado.

DATED as of the date first mentioned above.

PEABODY HOLDING COMPANY, INC., a New York corporation

By: _Thomas S. Hilton_

Its: _VICE PRESIDENT_

-3-

STATE OF MISSOURI        )
                         )    SS.
COUNTY OF ST. LOUIS      )

    The foregoing instrument was acknowledged before me this
29th day of September, 1995, by Thomas S. Hilton, Vice President of
Peabody Holding Company, Inc., a New York corporation.

          My commission expires: _12-22-98_

          Witness my hand and official seal.

          _Carol A. Prunty_
          Notary Public

> CAROL A. PRUNTY
> Notary Public-Notary Seal
> STATE OF MISSOURI
> ST LOUIS COUNTY
> My Commission Expires DEC 22, 1998

-4-

TRANSAMERICA TITLE INSURANCE COMPANY
3700 E. Alameda Ave  Suite 340
Denver, CO 80209
(303) 388-1221

Escrow Officer: MARGARET M. NEWTON
        SENIOR ESCROW OFFICER

Title No. : 292471R
Date    : October 2, 1995

BUYER'S CLOSING STATEMENT

Buyer(s): Cottonwood Land Company, a Delaware
        Corporation

Property: Vacant Land
        Routt County, Colorado

Seller(s): Axial Basin Ranch Company, a Delaware
        General Partnership and
**H-G Coal Company, a Delaware**
        **General Partnership**

| | DEBIT | CREDIT |
|---|---|---|
| Contract sales price | $4,000,000.00 | |
| TRUST DEED TO SELLER | | 3,000,000.00 |
| | | |
| PRORATIONS: | | |
| COUNTY TAXES - $5,423.50    01/01/95  to  10/02/95 | | 4,071.34 |
| | | |
| LENDER CHARGES: | | |
| | | |
| RESERVES: | | |
| | | |
| TITLE CHARGES: | | |
| TAX CERTIFICATES | 170.00 | |
| LENDERS TITLE INSURANCE PREMIUM | 60.00 | |
| | | |
| RECORDING FEES, TRANSFER TAXES: | | |
| DOCUMENTARY FEE | 400.00 | |
| RECORDING FEES | 200.00 | |
| | | |
| ADDITIONAL CHARGES: | | |
| | | |
| RECEIPT DUE FROM BUYER | | 996,758.66 |
| | $4,000,830.00 | $4,000,830.00 |

The above figures do not include sales or use taxes on personal property.
THE ABOVE DEDUCTIONS, ADJUSTMENTS, DISBURSEMENTS ARE HEREBY AUTHORIZED AND APPROVED.

Cottonwood Land Company, a Delaware
Corporation

BY _Jack L Lautenberg_

Broker Cushman & Wakefield

By: _____

Transamerica Title Insurance Company
By: MARGARET M. NEWTON

TRANSAMERICA TITLE INSURANCE COMPANY
3300 East First Avenue
Denver, CO 80209
(303) 388-1221

Escrow Officer : MARGARET M. NEWTON
           SENIOR ESCROW OFFICER

Title No. : 292471R
Date    : October 2, 1995

### SELLER'S CLOSING STATEMENT

Seller(s) : Axial Basin Ranch Company, a Delaware
              General Partnership and
H-G Coal Company, a Delaware General
Property: Vacant Land    Partnership
         Routt County, Colorado

Buyer(s) : Cottonwood Land Company, a Delaware
            Corporation

|  | DEBIT | CREDIT |
|---|---|---|
| Contract sales price |  | 4,000,000.00 |
| TRUST DEED TO SELLER | 3,000,000.00 |  |
| PAYOFF: |  |  |
| BROKER'S COMMISSION: |  |  |
| Commission    Cushman & Wakefield | 140,000.00 |  |
| PRORATIONS: |  |  |
| COUNTY TAXES - $5,423.50  01/01/95 to 10/02/95 | 4,071.34 |  |
| TITLE CHARGES: |  |  |
| CLOSING FEE | 500.00 |  |
| OWNERS TITLE INSURANCE PREMIUM | 5,950.00 |  |
| RECORDING FEES, TRANSFER TAXES: |  |  |
| ADDITIONAL CHARGES: |  |  |
| Survey/ILC    D & D, INC. | 2,176.40 |  |
| Fee    Charlie Margolf | 30,000.00 |  |
| LENDER CHARGES: |  |  |
| PROCEEDS DUE SELLER | 817,302.26 |  |
|  | $4,000,000.00 | $4,000,000.00 |

The above figures do not include sales or use taxes on personal property.
**THE ABOVE DEDUCTIONS, ADJUSTMENTS, DISBURSEMENTS ARE HEREBY AUTHORIZED AND APPROVED.**

Axial Basin Ranch Company, a Delaware
General Partnership

BY _R D Usilton_
  PRESIDENT OF GENERAL PARTNERS

Broker Cushman & Wakefield

By: _____

Transamerica Title Insurance Company
By: MARGARET M. NEWTON

H-G Coal Company, a Delaware
       General Partnership

BY: _R D Usilton_
  PRESIDENT OF GENERAL PARTNERS

## ASSIGNMENT AND ASSUMPTION OF LEASES

THIS ASSIGNMENT AND ASSUMPTION OF LEASES ("Assignment") is made and entered into as of the 2nd day of October, 1995 by AXIAL BASIN RANCH COMPANY, a Delaware general partnership ("ABR"), H-G COAL COMPANY, a Delaware general partnership ("HG" and referred to herein together with ABR as "Assignor"), and COTTONWOOD LAND COMPANY, Delaware corporation ("Assignee").

### Recitals

A.    Assignor and Peabody Development Company, a Delaware corporation ("Peabody"), are the parties to that certain Agreement for Sale of Real Property, dated August 2, 1995, as amended (the "Agreement"), whereby Assignor agreed to sell to Peabody, and Peabody agreed to purchase from Assignor, certain real property located in Routt County, Colorado (the "Property"). The Property is described on <u>Exhibit A</u> attached hereto and by this reference made part hereof.

B.    Peabody has assigned all of its rights under the Agreement to Assignee pursuant to the Assignment and Assumption Agreement dated October 2, 1995.

C.    Concurrently herewith, the parties have completed the closing of the sale of the Property from Assignor to Assignee.

D.    The Property is subject to those leases and other agreements described on <u>Exhibit B</u> attached hereto and by this reference made part hereof (the "Leases").

E.    Pursuant to the terms of the Agreement, the parties now wish to provide for the assignment from Assignor to Assignee, and the assumption by Assignee, of the Leases to the extent that the same effect or concern the Property.

### Assignment and Assumption

NOW, THEREFORE, In consideration of the obligations of the parties under the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby assigns and transfers to Assignee all of Assignor's right, title, and interest in, to, and under the Leases to the extent that such Leases effect or concern the Property.

Assignee hereby confirms its acceptance of the foregoing assignment and hereby assumes and agrees to perform any

F:\DATA\PUBL\JMCG\435769.1
October 2, 1995  8:54am

and all obligations of Assignor arising under such Leases on or after the date hereof.

DATED as of the day and year first written above.

ASSIGNOR:

AXIAL BASIN RANCH COMPANY, a Delaware general partnership

By:  Grace A-B Inc., a Delaware corporation, General Partner

    By: _R D Usilton_____
        R. D. Usilton, President

By:  Grace A-B II Inc., a Delaware corporation, General Partner

    By: _R D Usilton_____
        R. D. Usilton, president

H-G COAL COMPANY, a Delaware general partnership

By:  Coalgrace, Inc., a Delaware corporation, General Partner

    By: _R D Usilton_____
        R. D. Usilton, president

By:  Coalgrace II, Inc., a Delaware corporation, General Partner

    By: _R D Usilton_____
        R. D. Usilton, President

ASSIGNEE:

COTTONWOOD LAND COMPANY, a Delaware corporation

By: _Jack L Lautaschlag_____
Its: _PRESIDENT_____

-2-

STATE OF COLORADO           )
    CITY AND               ) ss.
COUNTY OF DENVER            )

        The foregoing instrument was acknowledged before me this 2nd day of October, 1995 by R. D. Usilton, as President of Grace A-B Inc., and Grace A-B II Inc., as the General Partners of AXIAL BASIN RANCH COMPANY, a Delaware general partnership.

        Witness my hand and official seal.

        My commission expires: _May 13, 1998_

                                   _Margaret M. Neilor_
                                   Notary Public

STATE OF COLORADO           )
    CITY AND               ) ss.
COUNTY OF DENVER            )

        The foregoing instrument was acknowledged before me this 2nd day of October, 1995 by R. D. Usilton, as President of Coalgrace, Inc., and Coalgrace II, Inc., as the General Partners of H-G COAL COMPANY, a Delaware general partnership.

        Witness my hand and official seal.

        My commission expires: _May 13, 1998_

                                     _Margaret M. Neilor_
                                   Notary Public

STATE OF COLORADO           )
    CITY AND               ) ss.
COUNTY OF DENVER            )

        The foregoing instrument was acknowledged before me this 2nd day of October, 1995 by _Jack L. Lautenschlager_ as _President_ of COTTONWOOD LAND COMPANY, a Delaware corporation.

        Witness my hand and official seal.

        My commission expires: _May 13, 1998_

                                     _Margaret M. Neilor_
                                   Notary Public

EXHIBIT A


Legal Description


TOWNSHIP 4 NORTH, RANGE 88 WEST OF THE 6TH P.M.
COUNTY OF ROUTT, STATE OF COLORADO

Section 7:   Lot 1, N1/2SE1/4, SE1/4SW1/4;
Section 8:   Lot 4;
Section 18:  Lots 1, 2, 3, NE1/4NW1/4;
             EXCEPT that part of the following lying in Lot 3 of Section
             18, described by metes and bounds as follows:  beginning at a
             point whence the Southeast corner of Lot 4 of said Section
             bears South 624 feet (magnetic variation 16deg 45min east),
             thence North 56deg 30min West 411 feet, thence North 23deg
             27min East 163 feet, thence North 38deg 14min West 252 feet,
             thence North 89deg 43min West 155 feet, thence North 64deg
             22min West 80 feet, thence North 20deg East 217 feet, thence
             South 73deg 04min East 180 feet, thence South 83deg East 423
             feet, to the East line of said Lots 3 and 4, thence South
             along said East line 711 feet to the point of beginning.

TOWNSHIP 5 NORTH, RANGE 88 WEST OF THE 6TH P.M.
COUNTY OF ROUTT, STATE OF COLORADO

Section 17:  S1/2SW1/4;
Section 19:                        E1/2NE1/4;
Section 20:  NW1/4, NW1/4SE1/4, W1/2NE1/4
             EXCEPT parcels of land conveyed to The County of Routt by
             deed recorded January 16, 1979 in Book 468 at Page 697;

             ALSO EXCEPT all those portions of the NW1/4NE1/4 of Section
             20, lying East of Routt County Road No. 53.




TOWNSHIP 4 NORTH, RANGE 89 WEST OF THE 6TH P.M.
COUNTY OF ROUTT, STATE OF COLORADO

Section 11:  SE1/4
Section 12:  W1/2SW1/4, SE1/4,Lots 1, 2 and 4
             EXCEPT that part of the following described parcel which ..es

A-1

within Lots 1 and 2, Section 12, T4N, R89W:
A tract of land located partly in the SW1/4SW1/4 of Section
36, T5N, R89W and partly in Lots 1 and 2, Section 12, T4N,
R89W, bounded by a line described as follows:
Beginning at a point on the Southerly line of said Section 36
from which the SW corner of said Section 36 bears S 89deg
04min W 398.47 feet; thence N 108.00 feet; thence N 70deg
07min E 292.00 feet; thence S 52deg 37min E 147.00 feet;
thence S 06deg 57min W 270.00 feet; thence S 37deg 00min E
48.00 feet; thence S 58deg 17min 20sec E 26.82 feet to the
Westerly right of way line of Routt County Highway No. 53;
thence along said right of way S 31deg 00min 38sec W 39.98
feet; thence leaving said right of way N 77deg 58min 20sec W
244.35 feet; thence N 63deg 53min 57sec W 188.54 feet; thence
S 38deg 40min W 165.00 feet; thence S 25deg 25min 51sec E
382.36 feet; thence S 46deg 30min W 575.00 feet; thence S
29deg 30min W 195.22 feet to the Westerly right of way line
of said Highway No. 53; thence along said right of way S
58deg 17min 31sec W 89.25 feet; thence leaving said right of
way N 54deg 00min W 316.84 feet; thence N 38deg 40min E
1285.00 feet to the point of beginning.

EXCEPT a tract of land in Lots 1 and 2 of Section 12, T4N,
R89W of the 6th P.M., bounded by a line described as follows:
Beginning at corner No. 1, from which the SW corner of
Section 36, T5N, R89W bears N 50deg 53min 10sec W 356.83
feet; (Said point of beginning being a point on the boundary
line of a tract of land conveyed to Ruby Construction
Company, Inc., by deed recorded in Book 379 at Page 686);
thence S 25deg 25min 51sec E 382.36 feet to corner 2; thence
S 46deg 30min 00sec W 575.00 feet to corner 3; thence S 29deg
30min 00sec W 195.22 feet to corner 4 on the Northwesterly
ROW line of Routt County Road No. 53; thence following the
Northwesterly ROW line of said Routt County Road No. 53,
377.51 feet along a curve to the right having a radius of
3794.19 feet; the chord of which bears N 61deg 08min 32sec E
377.36 feet to corner 5; thence N 63deg 59min 34sec E 117.58
feet to corner 6; thence 168.55 feet along a curve to the
left having a radius of 226.93 feet, the chord of which bears
N 42deg 42min 53sec E 164.70 feet to corner 7; thence N 21deg
26min 12sec E 73.29 feet to corner 8; thence 47.94 feet along
a curve to the right having a radius of 286.93 feet, the
chord of which bears N 26deg 13min 25sec E 47.89 feet to
corner 9; thence N 31deg 00min 38sec E 513.48 feet to corner
10; thence leaving said Northwesterly ROW line of Routt
County Road 53 N 77deg 58min 20sec W 244.35 feet to corner

A-2

11, thence N 63deg 53min 57sec W 188.54 feet to corner 12; thence S 33deg 40min 00sec W 165.00 feet to corner 1 the point of beginning.

Section 13:  N1/2NE1/4, that portion of the NE1/4SE1/4 lying North of the County Road,
EXCEPT so much thereof as is contained within the following described tract of land:
From the E1/4 corner of Section 13, T4N, R89W run S 52deg 50min W 706.35 feet and thence S 24deg 30min W 72 feet to Corner No. 1 of said Tract; thence S 53deg 5min W 1247.4 feet to Corner No. 2, thence N 57deg 40min W 2158.2 feet to Corner No. 3; thence North 541 feet to Corner No. 4, thence East 758 feet to Corner No. 5, thence S 0deg 35min E 462 feet to Corner No. 6, center of Section 13, thence N 88deg E 2019.6 feet to Corner No. 7, thence South 508.60 feet to Corner No. 1, the point of beginning.

That part of the S1/2NW1/4 lying North of the Williams Fork Road,
EXCEPT a tract of land described as follows:
From 1/4 corner Commmon to Sections 13, T4N, R89W and Section 18, T4N, R88W, S 52deg 50min W 706.35 feet; thence S 24deg 30min W 72 feet to Corner No. 1 of Tract; thence S 53deg 5min W 1247.4 feet to Corner No. 2; thence N 57deg 40min W 2158.2 feet to Corner No. 3; thence N 541 feet to Corner No. 4; thence E 758 feet to Corner No. 5; thence S 0deg 35min E 462 feet to Corner No. 6 Center Section 13; thence N 88deg E 2019.6 feet to Corner No. 7; thence S 508.6 feet to Corner No. 1 point of beginning.

EXCEPT an 8 acre tract of indefinite location as excepted in Deed dated October 1, 1937, recorded October 1, 1937 in Book 193 at Page 138.

TOWNSHIP 5 NORTH, RANGE 89 WEST OF THE 6TH P.M.
COUNTY OF ROUTT, STATE OF COLORADO

Section 1:  Lots 7, 9, 10, 15, 16, 17 and 18.
Section 2:  Lots 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 20 and 21; Lot 19, EXCEPT a tract bounded by a line described as follows:
Beginning at the NW corner of said SE1/4SW1/4; thence East along he North line of said SE1/4SW1/4 a distance of 760

feet; thence Southwest in a straight line and along the
western side of the proposed County Road on said ridge, a
distance of 945 feet to a point on the West line of said
SE1/4SW1/4 which is 588 feet due South from the place of
beginning; thence 588 feet due North to the Point of
Beginning.

Section 3: Lots 5, 6, 10, 11, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26 and 27.

Section 4: Lots 2, 3, 4, S1/2, S1/2NW1/4, S1/2NE1/4

Section 9: Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13.

Section 10: Lots 1, 2, 4, 5, 6, 9, 10, 11, 12, 13, 14 and 15;
That part of Lots 3 and 8 which lies Southerly and Westerly
of a straight line extending from the SW corner of Lot 1 of
Section 4 to the NW corner of Lot 3 of Section 14 in said
Township and Range.

Section 11: Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 15, 16, 18, 19 and 20;
Lots 11 and 12, EXCEPT a tract of land described as follows:
Beginning at a point 454.2 feet East of the NW corner of Lot
13 of said Section 11, thence N 63deg 26min E 647 feet to a
point on the North line of Lot 12 of Section 11, thence N
63deg 26min E 328.3 feet to a point on the East line of Lot
11 of said Section 11, thence S 0deg 51min W 142.2 feet to
the NE corner of said Lot 12, thence S 0deg 51min W 294.00
feet, thence West 865.8 feet to the Point of Beginning.

A tract of land in Lot 13 described as follows: Beginning at
the NW corner of said Lot 13, thence East 454.2 feet along
the North line of said Lot 13, thence S 63deg W 512.8 feet to
a point on the West line of said Lot 13, thence N 0deg 51min
E 233.5 feet to the Point of Beginning.

Section 12: Lots 2 and 3.

Section 13: Lots 1, 6, 9, 10, 11, 12, 13, 14, 15, 16 and 17.

Section 14: Lots 6, 7, 8, 12, 13, 14, 15, 16, 17 and that part of Lots 3, 4, 5, 9, 10 and 11 not lying within Tract 52.

Section 15: Lots 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 15 and 16.

Section 16: Lots 1, 2, 3, 4, 6, 7, 8, 9 and 10.

Section 20: NE1/4

Section 21: N1/2N1/2, N1/2SW1/4NE1/4, N1/2S1/2SW1/4NE1/4, N1/2SE1/4NW1/4, N1/2S1/2SE1/4NW1/4

Section 22: E1/2, NW1/4, NE1/4NE1/4SW1/4

Section 23: All

Section 24: All

Section 25: NE1/4NE1/4, S1/2NE1/4, W1/2NW1/4, SE1/4NW1/4, W1/2SE1/4, SE1/4SE1/4, SW1/4

Section 26: All

Section 27: NE1/4, NE1/4SE1/4

Section 35: N1/2, SE1/4, N1/2SW1/4, SE1/4SW1/4
Section 36: E1/2NE1/4, NW1/4, SE1/4, S1/2SW1/4
EXCEPT that part of the following described parcel which lies within the SW1/4SW1/4, Section 36, T5N, R89W:
A tract of land located partly in the SW1/4SW1/4 of Section 36, T5N, R89W and partly in Lots 1 and 2, Section 12, T4N, R89W, bounded by a line described as follows:
Beginning at a point on the Southerly line of said Section 36 from which the SW corner of said Section 36 bears S 89deg 04min W 398.47 feet; thence N 108.00 feet; thence N 70deg 07min E 292.00 feet; thence S 52deg 37min E 147.00 feet; thence S 06deg 57min W 270.00 feet; thence S 37deg 00min E 48.00 feet; thence S 58deg 17min 20sec E 26.82 feet to the Westerly right of way line of Routt County Highway No. 53; thence along said right of way S 31deg 00min 38sec W 39.98 feet; thence leaving said right of way N 77deg 58min 20sec W 244.35 feet; thence N 63deg 53min 57sec W 188.54 feet; thence S 38deg 40min W 165.00 feet; thence S 25deg 25min 51sec E 382.36 feet; thence S 46deg 30min W 575.00 feet; thence S 29deg 30min W 195.22 feet to the Westerly right of way line of said Highway No. 53; thence along said right of way S 58deg 17min 31sec W 89.25 feet; thence leaving said right of way N 54deg 00min W 316.84 feet; thence N 38deg 40min E 1285.00 feet to the point of beginning.

## TOWNSHIP 5 NORTH, RANGE 89 WEST OF THE 6TH P.M.
### COUNTY OF ROUTT, STATE OF COLORADO

ORIGINAL SURVEY                                              RESURVEY

| | | |
|---|---|---|
| Section 1: | Lots 3, 4, SW1/4NW1/4 | |
| Section 2: | SE1/4NE1/4 | Tract 38 |
| Section 2: | N1/2SE1/4, SW1/4SE1/4, SE1/4SW1/4 | Tract 40 |
| Section 2: | SW1/4SW1/4 | |
| Section 10: | E1/2NE1/4 | |
| Section 11: | NW1/4NW1/4 | Tract 41 |
| Section 10: | SW1/4NE1/4, NW1/4SE1/4, E1/2SW1/4 | Tract 46 |
| Section 16: | All | Tract 51 |
| Section 14: | N1/2NW1/4, SW1/4NW1/4, NW1/4SW1/4 | Tract 52 |

## TOWNSHIP 6 NORTH, RANGE 89 WEST OF THE 6TH P.M.
### COUNTY OF ROUTT, STATE OF COLORADO

Section 33: SW1/4, Lots 6 and 11, and a tract in Lot 10 bounded by a line

A-5

described as follows:
Beginning at the SW corner of said Lot 10; thence N 991 feet;
thence S 46deg E 741 feet; thence S 30deg E 528 feet; thence
W 812 feet to the point of beginning.
EXCEPT that part conveyed to The County of Routt by Right of
Way Deed recorded January 14, 1931 in Book 170 at Page 311.

EXCEPT a tract of land bounded by a line described as
follows:
Beginning at the NE corner of said Lot 6, thence South on the
East line of Lot 6, 80 feet, thence N 49deg 22min W 110 feet,
thence East 70 feet on the North line of said Lot 6 to the NE
corner of said Lot 6, the place of beginning.
Section 34: Lot 16
Section 35: Lots 13, 14, 15 and 16.

EXHIBIT B


[Agricultural Leases]


1.    Cooperative Agreement for Wildlife Ranching:  State of
      Colorado in H-G West and H-G; 3/1/91

2.    Williams Fork Mountain Ranch Ranching for Wildlife
      Management Plan

3.    Wildlife Ranching Lease:  Hayden-Gulch West Coal Co.,
      H-G, and Tarrell Massey; 4/1/90

4.    Grazing Lease:  ABR and Tuttle Ranch and Livestock;
      1/1/94

5.    Letter Agreement:  ABR and Everett L. Williams; 3/21/94

6.    Farm Lease:  ABR and Everett and Mary J. Williams;
      1/1/94

7.    Grazing Lease:  ABR and David and Kathleen Smith;
      1/1/94

8.    Agricultural and Livestock Grazing Lease; J. Burton
      Tuttle and Hayden-Gulch West Coal Co.; 12/5/80

## CLOSING CERTIFICATE

THIS CLOSING CERTIFICATE is made and given as of the 2nd day of October, 1995 by AXIAL BASIN RANCH COMPANY, a Delaware general partnership ("ABR"), and H-G COAL COMPANY, a Delaware general partnership ("HG" and referred to herein together with ABR as "Seller"), to and in favor of COTTONWOOD LAND COMPANY, Delaware corporation ("Buyer").

### Recitals

A.   Seller and Peabody Development Company, a Delaware corporation ("Peabody"), are the parties to that certain Agreement for Sale of Real Property, dated August 2, 1995, as amended (the "Agreement"), whereby Assignor agreed to sell to Peabody, and Peabody agreed to purchase from Assignor, certain real property located in Routt County, Colorado and described in the Agreement (the "Property").

B.   Peabody has assigned all of its rights under the Agreement to Buyer pursuant to the Assignment and Assumption Agreement dated October 2, 1995.

C.   Concurrently herewith, the parties have completed the closing of the sale of the Property from Assignor to Assignee.

D.   Pursuant to the terms of Section 13 of the Agreement, Seller is required to deliver to Buyer a certificate regarding certain representations and warranties made by Seller as set forth in the Agreement.  Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Agreement.

### Certificate

NOW, THEREFORE, In consideration of the obligations of the Seller the Agreement, Seller hereby represents and warrants to Buyer, as of the date hereof, as follows:

A.   Authority.  The persons executing the Agreement and all documents to be executed by Seller in connection therewith on behalf of Seller have the authority to do so, and the execution and delivery by the entities comprising the Seller of the Agreement and all such documents are duly authorized by all requisite organizational actions of such entities.

B.   Litigation.  To Seller's Knowledge there is no pending or threatened litigation which would materially adversely affect the Property.

C.   No Governmental Notices.  To Seller's Knowledge, Seller has not received any notices, demands, or other directives from any governmental entities with jurisdiction over the Property asserting that any current use of or condition on the Property violates any federal, state, or local laws or regulations.