# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

**CENTRAL WESLEYAN COLLEGE**, on behalf of
itself and all others similarly situated,

                Plaintiff,

            v.

**W.R. GRACE & CO., et al.,**

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 2:87-1860-8

## SETTLEMENT AGREEMENT

This Agreement is made and entered into this _12th_ day of January, 2000, by and be-

tween W.R. Grace & Co. and the party plaintiff, individually and as representative of the plaintiff

class in the above-captioned litigation, acting by and through their respective undersigned counsel.

## DEFINITIONS

As used herein, the following terms shall have the meanings specified below:

    a.       The "Court" shall mean the United States District Court for the District of

South Carolina.

    b.       The "Named Plaintiff" shall mean Central Wesleyan College and any subse-

quently named plaintiffs in the Litigation.

-2-

c.     The "Litigation" shall mean the individual and class action known as Central Wesleyan College, et al. v. W.R. Grace & Co., et al., filed in the United States District Court for the District of South Carolina and assigned No. 2:87-1860-8, including, but not limited to, the action filed by the Named Plaintiff against, inter alia, W.R. Grace & Co.

d.     The "Class" shall mean the Named Plaintiff and each and all members thereof, both individually and collectively, of the Rule 23(b)(3) class certified in the Court's Order entered on September 4, 1992 in the Litigation that are not Excluded Plaintiffs, as defined below.

e.     The "Excluded Plaintiffs" shall mean all members of the Rule 23(b)(3) class certified in the foregoing Order in the Litigation that filed timely and valid exclusion elections as set forth in Exhibit A hereto.

f.     "Grace" shall mean W.R. Grace & Co., a Connecticut corporation, W.R. Grace & Co., a New York corporation, their predecessors and successors, and past and present assigns (including the purchasers of any of their former divisions and subsidiaries), representatives, subsidiaries, divisions affiliates, parents, partnerships and partners, and all of their officers, directors, agents, employees, insurers and attorneys, both past and present, but not including any other defendant in this action.

g.     The "Parties" shall mean Grace and the Class.

h.     The "Claims" shall mean the Litigation and all claims, demands, rights or causes of action (including all claims for punitive damages, costs, expenses or fees), present or future, known and unknown, arising out of or relating to the manufacture, sale, installation or use of asbestos-

-3-

containing materials, friable or which may become friable, including but not limited to all direct-to-steel fireproofing or acoustical products manufactured by or under license from Grace which contain asbestos, all claims relating to costs of inspection to determine whether such asbestos-containing materials are present, all claims relating to the costs of medical monitoring, except as part of a course of treatment of a person who has been injured by exposure to asbestos, and all claims of conspiracy or concert of action or any other type of shared liability for asbestos-containing materials manufactured, sold or installed by other persons, which members of the Class, individually or collectively, and their predecessors or successors, transferees and assigns or any of their past or present representatives, assigns, subsidiaries, divisions, affiliates, parents, partners, officers, directors, employees, agents or insurers, had, now have or hereinafter may have against Grace from the beginning of the world, including any claims which may arise in the future by reason of any alleged asbestos-containing materials installed in any building of any class member, or any alleged contamination such material may have created or may create in the future; the term Claims shall also include all claims arising out of, or in any way related in whole or in part to facts, matters, acts of commission or omission, statements, agreements or occurrences which were or could have been asserted, alleged, described, embraced or otherwise referred to in any of the complaints and amended complaints in the Class Action. provided, however, that the term does not include any rights which the Class or Grace may have now or in the future concerning any claims for personal injury caused by asbestos or asbestos-containing building products in any class member's buildings.

      i.    The "Final Judgment Order" or "Final Order" shall mean an order to be entered by the Court as set forth in Section 14 below.

-4-

j.      The "Effective Date" shall mean the date following the entry of a Final Order approving this settlement on which, by lapse of time, process of appeal, or otherwise, the Final Judgment Order is no longer subject to review or appeal, including by writ of certiorari.

k.      The "Settlement Fund" shall mean the amounts set forth in Exhibit B hereto.

l.      "Plaintiffs' Co-Lead Counsel" shall mean Daniel A. Speights, Esquire and Edward J. Westbrook, Esquire.

m.      "Person" includes, without limitation, any individual, corporation, partnership, firm, association or other entity.

## RECITALS

WHEREAS, an individual and class action known as Central Wesleyan College, et al. v. W.R. Grace & Co., et al., C.A. No. 2:87-1860-8 has been filed in the United States District Court for the District of South Carolina on behalf of a purported class against, inter alia, Grace; and

WHEREAS, the Court entered an Order dated September 4, 1992 in the Litigation, certifying a class pursuant to Fed. R. Civ. P. 23(b)(3), consisting of all colleges and universities in the United States with friable asbestos-containing materials which had claims in excess of $10,000; and

WHEREAS, various defendants obtained leave to appeal class certification pursuant to 28 U.S.C. § 1292(b), and class certification was upheld on appeal by the United States Court of Appeals for the Fourth Circuit; and

-5-

WHEREAS, Grace has denied and continues to deny all allegations of wrongdoing, violations of law or breaches of duty and has asserted and continues to assert (1) that the claims alleged in the Litigation have no substance in fact or law, (2) that it has meritorious defenses to such claims, (3) that it has affirmative defenses, (4) that the litigation class should not have been certified and (5) that Grace should be dismissed from the Litigation; and

WHEREAS, Grace has agreed to enter into this Agreement to avoid further expense, inconvenience and the distraction of expensive, burdensome and protracted litigation, and to obtain total and final peace, satisfaction and protection from the Class' Claims; and

WHEREAS, the Class representatives and Grace are desirous of settling and resolving the Claims of the Class and have engaged in productive settlement discussions directed towards that end; and

WHEREAS, Grace currently manufactures and sells non-asbestos-containing fire-proofing and acoustical products; and

WHEREAS, Grace is willing to make available purchase credit coupons to members of the Class for their own use in compliance with and reliance upon the provisions of 15 U.S.C. § 13(c); and

WHEREAS, Grace is willing to make such purchase credit coupons available which, if used to their fullest extent by class members, could potentially result in a total credit not to exceed $25,000,000; and

-6-

WHEREAS, because actual usage of such purchase credits cannot be predicted, the total credit which may result could be substantially less than such potential maximum; and

WHEREAS, to the best of the knowledge or information of the Plaintiffs' Class Counsel, none of the members of the Class has assigned or transferred any Claim it might have against Grace to any Third Party; and

WHREAS, plaintiff and its counsel, in the course of this and similar litigation have conducted discovery and investigations into the facts of this case, have made a thorough study of the legal principles applicable to the Claims in the Litigation and have concluded that a settlement with Grace in the amount and on the terms hereinafter set forth is fair, reasonable and adequate, and is in the best interest of the Class;

NOW, THEREFORE, the Parties enter into this Settlement Agreement.

## TERMS AND CONDITIONS
## OF THE SETTLEMENT

1.    In full and complete satisfaction of the Class's Claims, Grace agrees to pay the Settlement Fund as set forth in Appendix B hereto, and to issue coupons which will entitle members of the Class to purchase credits substantially in the form set forth in Exhibit C hereto, which if used to their fullest extent by each class member to whom they are issued could potentially result in a total credit of $25,000,000.

2.    After the Effective Date, Grace will deliver such number of pre-numbered blank purchase credit coupons as Plaintiff's counsel may request.  Plaintiff's counsel will cause cou-

pons to be issued in the name of each class member entitled thereto who requests such issuance, setting forth the name of the class member and the number of bags for which it may receive purchase credits, and shall promptly provide Grace with a list, in both hard copy and computer readable format, of names and addresses of those class members and the number of bags for which each class member may receive purchase credits. Plaintiff will promptly provide Grace with the same information for any coupons issued thereafter. The maximum discount allowed on any bag is set forth in Exhibit C hereto. Each time that the coupon is presented by a class member to Grace, the number of bags on which the purchase credit has been granted shall be noted by Grace on the back of the coupon.  Such coupons shall be freely transferable among class members, as set forth in Exhibit C. When a class member has purchased the number of bags for which the coupon was issued, the coupon shall be surrendered to Grace.

3.       The terms of the agreement in principle set forth in letter of September 7, 1999, and the terms of this Settlement Agreement shall remain confidential as long as practicable and, at least, until an application for preliminary approval of the Settlement Agreement is filed with the Court. To the extent feasible, any application for judicial approval of the Settlement Agreement which is filed with the Court shall be accompanied by a request that the financial terms of the Settlement Agreement set forth in Exhibit B hereto remain confidential and under seal and that any notice to the class and any public announcement of the settlement not disclose the cash portion of the settlement with Grace; provided, however, nothing shall preclude the aggregate amount of cash paid by all settling defendants from being disclosed in such notice.  The parties shall coordinate on the timing of any application to the Court. Nothing herein shall preclude Grace from making any public disclosure of the settlement which it determines to be required by law.

-8-

4.      Plaintiffs' Co-Lead Counsel shall hold the Settlement Fund (including any interest earned thereon) in escrow, subject to the control and supervision of the Court. Plaintiffs' Co-Lead Counsel, or such of their designees as shall be approved by the Court, shall invest and reinvest the Settlement Fund in the United States Government securities or such other high-grade investment securities as Plaintiffs' Co-Lead Counsel may select. Any interest earned on the Fund shall become and remain a part thereof. Plaintiffs' Co-Lead Counsel may from time to time apply to the Court for instructions and/or orders concerning the administration of the Settlement Fund and may apply to the Internal Revenue Service for such rulings with respect thereto as it may consider appropriate.

5.      Plaintiffs' Co-Lead Counsel and the Class shall be reimbursed and indemnified out of the Fund  for all costs incurred in the administration of the Fund, and for all costs of Notice of this settlement to the Class, and any reasonable costs of printing, mailing, postage or other costs incurred in connection with the giving of Notice. The cost of Notice shall be shared pro rata with any other class settlement for which notice is being given at the same time. Disbursements for such costs shall be made from time to time with the approval of the Court. Said disbursements shall not be returned to Grace in the event that this settlement is terminated pursuant to the provisions of Section 20 of this Agreement.

6.      The Settlement Fund, together with any accrued interest, less any attorneys' fees and expenses awarded to counsel for the Class, and the purchase credit coupons shall be distributed to the named plaintiffs and members of the Class, who establish their entitlement thereto, regardless of whether the amount they are entitled to is less than $10,000.

-9-

7.      Grace's sole liability under this Agreement is limited to making such payments or granting such purchase credits as are set forth in paragraph 1 above.

8.      No one shall have any recourse against Grace regarding the Settlement Fund once it is delivered to Plaintiffs' Co-Lead Counsel as co-trustees and escrow agents, and Grace shall not be liable or accountable for any loss in value or other loss or impairment of the settlement fund, including any loss incurred in or resulting from the investment or reinvestment thereof, nor for any costs (including the costs of notice to class members) or attorneys' fees in connection with the administration of this Agreement and the administration and distribution of the Settlement Fund, but all such costs and attorneys' fees as approved by the Court shall be paid out of the Settlement Fund and any interest earned thereon. The Class and its counsel shall not claim any attorneys' fees or costs from Grace.

9.      The Settlement Fund shall be distributed to the Class, or otherwise used in connection with the costs, expenses or fees of this Litigation only pursuant to and in accordance with an Order of the Court. Except as provided in Section 5 of this Agreement with respect to the costs of Notice or as otherwise expressly permitted by provisions of this Agreement and by the Court, upon notice to Grace, no distribution of the Fund shall be made until the Effective Date of this Agreement.

**RELEASES**

10.     On the Effective Date of this Agreement, each member of the Class shall be deemed to have constructively released all Claims against Grace with the same force and effect as if it had individually executed a Release and Covenant Not To Sue in the form of Exhibit D attached hereto and incorporated herein. A Release and Covenant Not To Sue in the form of Exhibit D, or in

-10-

another form consented to by Grace, shall also be incorporated into the Notice to the Class of this Settlement pursuant to Section 13 hereof.

11.    Each party expressly waives any and all rights and benefits with respect to Claims conferred upon it by the provisions of California Civil Code Section 1542 (or by similar legal provisions in other states), which provides as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

## NOTICE AND APPROVAL

12.    The parties agree that the Class should receive Notice of this Settlement as soon as practicable. The Parties shall cooperate in good faith, use their best efforts, and take all steps necessary to implement and effectuate this Agreement and the Settlement provided for herein and shall take all steps necessary to obtain prompt approval by the Court.

13.    As soon as practicable, Plaintiffs' Co-Lead Counsel and counsel for Grace shall submit this Agreement to the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure for the Court's preliminary approval and shall request an Order of the Court including the following terms:

(a)    Scheduling a hearing to be held as soon as practicable after the date of entry of such Order to determine the fairness, reasonableness and adequacy of this Settlement Agreement and whether it should be approved by the Court;

-11-

(b)      Providing for notice by first class mail as soon as practicable to the members of the Class of the proposed settlement in the form consented to by Plaintiffs' Co-Lead Counsel and Grace and as approved by the Court; of the hearing thereon; of the fact that they may appear at that hearing to object to approval of the proposed settlement and that, if they choose to appear, they must file written objections at least fifteen (15) days prior to the hearing; that any judgment entered will bind all members of the Class; of the nature of the release constructively entered thereunder; and that any Class member may, if it desires, enter an appearance through counsel; and

(c)      Providing that the manner of such notice shall constitute due and sufficient notice of the hearings to all persons entitled to receive such notice; and requiring that proof of such notice be filed at or prior to the hearing.

14.      If the Court approves this Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, a judgment shall be entered in accordance with Rule 54(b) of the Federal Rules of Civil Procedure:

(a)      approving the settlement set forth in this Settlement Agreement as fair, reasonable, adequate and binding on the Class;

(b)      dismissing with prejudice and without costs to any party the Claims against Grace, and including the provisions set forth in paragraphs 16 and 17 below; and

(c)      reserving jurisdiction over all matters relating to the administration of this Agreement, including allocation and distribution of the Settlement Fund.

-12-

## CONTRIBUTION AND INDEMNITY

15.    The Parties intend that Grace obtain in this Agreement total and final peace, satisfaction and protection from any liability arising from the Claims and any and all claims for contribution or indemnity asserted by any person. The Parties further intend to obviate the necessity and expense to Grace of continuing to appear in and defend the Litigation and of appearing and defending in any action commenced by the Class asserting Claims against any other person.

16.    The Class shall take the following steps to bar, discharge and release any liability on the part of Grace to any other person for contribution and indemnity arising from the Claims:

(a)    The Class shall reduce any judgment it obtains against any other person by the amount, percentage or share of such judgment attributable to Grace so as to bar, discharge and release under applicable law any claims for contribution or indemnity against Grace arising from or related to the Claims;

(b)    In the event that the Class obtains a judgment (including pursuant to a settlement agreement) against any other person and such person obtains a judgment over, in whole or in part, against Grace for contribution or indemnity, then the Class will be required to reduce or remit any judgment or portion thereof obtained from that person by the amount of the judgment over against Grace.

17.    Each class member agrees that it will indemnify Grace and hold it harmless from any asbestos-related property damage claim relating or arising out of any building which con-

-13-

tains asbestos-containing products which the class member has transferred or conveyed to any other person.

## EFFECT ON CLAIMS AGAINST OTHER DEFENDANTS

18.    The Class expressly reserves all their rights and claims against non-settling defendants.  This Settlement Agreement and any covenant which is executed pursuant thereto is not intended and is not to be construed as a release or dismissal by the Class of any claims or rights against non-settling defendants.

## TERMINATION

19.    Except as provided in Paragraph 20 hereof, if this Agreement is disapproved, in part or in whole, by the Court or by any appellate court, or if dismissal of the Litigation and the Claims with prejudice as to Grace cannot be accomplished, or if a final judgment on the terms set forth in Section 14 hereof is not entered, or if this Agreement otherwise is not fully consummated and effected:

(a)    This Agreement shall have no further force and effect and it and all negotiations and proceedings connected therewith shall be without prejudice to the rights of Grace and the Class;

(b)    Plaintiffs' Co-Lead Counsel shall immediately return to Grace the Settlement Fund and all interest earned thereon, except that the costs (exclusive of attorneys' fees) incurred in the administration of the Settlement Fund, or in sending Notice to the Class, or as

-14-

otherwise provided herein that have been paid under the provisions of Section 5 hereof shall first be deducted before the Fund is returned to Grace; and

(c)     Plaintiffs' Co-Lead Counsel shall consent to a reasonable continuance of the Litigation for Grace to prepare and file motions and prepare for trial.

20.     If the Class in the Litigation is decertified before the Effective Date of this Agreement, or if it is determined before the Effective Date that the Court lacks subject-matter juris-diction over the Class, or any part thereof, the Defendants, or Grace, this Agreement shall remain in force and effect and the Named Plaintiffs' Co-Lead Counsel and Grace shall cooperate in good faith, use their best efforts and take all steps necessary to implement and effectuate this Agreement and the Settlement provided for herein on behalf of a settlement class consisting of all members of the Class or such members thereof over which the Court has subject-matter jurisdiction. In the event that this Court is found before the Effective Date to lack subject-matter jurisdiction over a significant number of members of the Class, or if there are opt-outs in any new action which are significantly different in size or greater in number than those that opted out of this action, Grace may, at its sole option exer-cised in good faith, elect to withdraw from this Agreement, whereupon this Agreement shall be null and void, except as to paragraph 5 herein. If the Class in the Litigation is decertified or dismissed after the Effective Date, such decertification or dismissal shall not affect the enforceability of this Settlement.

## USE OF THIS AGREEMENT

21.     This Agreement, the settlement provided for herein (whether or not consum-mated), and any proceedings taken pursuant to this Agreement shall not be:

-15-

(a)    construed by anyone for any purpose whatsoever as or deemed to be, evidence of a presumption, concession or an admission by Grace of the truth of any fact alleged or the validity of any Claims, or of the deficiency of any defense which has or could have been asserted in the Litigation, or of any liability, fault, or wrongdoing on the part of Grace; or

(b)    offered or received as evidence of a presumption, concession or an admission of any liability, fault or wrongdoing, or referred to for any other reason by the Class in the Litigation or by any person not party to this Agreement in any other action or proceeding other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if the Settlement is approved by the Court, plaintiffs may, subject to Court approval, at the trial of the Litigation against other defendants refer to the fact of the Settlement; or

(c)    construed by anyone for any purpose whatsoever as an admission or concession that the Settlement Fund represents the amount which could or would have been recovered after trial; or

(d)    construed as any admission by Grace that its products are to be found or have been identified as present in any building or other facility of the named Plaintiff or other members of the Class.

-16-

## WARRANTIES

22.    Named Plaintiff, its counsel, and counsel for the Class hereby warrant that this Agreement is entered into in good faith, that no conflicts of interest exist on their part and that in their opinion the Settlement Fund represents fair consideration for the Claims of the Class released herein.

23.    The Named Plaintiffs and the Class represent and warrant to Grace and acknowledge that they have entered into this Agreement only after first obtaining all the legal and professional advice which is appropriate and necessary and have determined, in their judgment, that the Class's best interests are served by entering into this Agreement.  The Named Plaintiffs and the Class warrant and represent that they have agreed to this Agreement without relying on any statement or representations of Grace, other than as expressly set forth in paragraph 24, or any of its agents; the Named Plaintiffs and the Class further represent and warrant to Grace that they have agreed to this Agreement solely in reliance on their own knowledge and information as to the nature, extent and duration of the damages, injuries, losses, legal rights and claims which are asserted or could have been asserted in the Actions.

24.    The undersigned counsel represent and warrant that they have taken all actions and have secured the consents of all persons necessary to authorize the execution of this Agreement and related documents and the performance of the acts necessary to fulfill the terms and conditions of this Agreement, and that they are fully authorized to enter into and execute this Agreement on behalf of the Parties.

-17-

## BINDING EFFECT

25.    The Parties deem this Agreement to be fair and reasonable and have arrived at this Agreement in arm's-length negotiations taking into account all relevant factors, present or potential.

26.    This Agreement shall be binding upon and inure to the benefit of each of the Parties, their predecessors and successors, and their past and present assigns (including the purchasers of former divisions and subsidiaries), representatives, subsidiaries, divisions, affiliates, parents (including subsidiaries thereof), partners, partnerships, officers, directors, agents, employees, insurers and attorneys.

27.    The Parties acknowledge that there is no adequate remedy at law for breach of this Agreement and that this Agreement is specifically enforceable.  In the event of a breach of this Agreement, the sole and exclusive remedy of Grace, the Named Plaintiffs, and the Class shall be to enforce the terms hereof and in no event shall any breach revive any Claims released pursuant to this Agreement.

28.    The Exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

29.    This Agreement, with its Attachments, sets forth the entire understanding of the Parties.  Any previous discussions, agreements, or understandings between or among the Parties regarding the subject matter herein are hereby merged into and superseded by this Agreement.

-18-

## MODIFICATION AND EXECUTION

30.    This Agreement may be amended and any of its provisions may be waived only by a writing executed by all signatories hereto.

31.    This Agreement may be executed in counterparts, all of which constitute a single, entire agreement.

32.    This Agreement shall become effective and binding (subject to all terms and conditions hereof) upon the Parties and their counsel when it has been executed by the undersigned counsel for the Parties.

## MISCELLANEOUS PROVISIONS

33.    All parties to this Agreement agree to cooperate with one another in seeking the Court's approval thereof and to use their best efforts to effect consummation of this Agreement and the settlement provided for herein as expeditiously as possible.

34.    Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

-19-

IN WITNESS WHEREOF, each of the Parties executes this Agreement through its

duly authorized representative:

Edward J. Westbrook
Ness, Motley, Loadholt,
   Richardson & Poole
151 Meeting Street, Suite 600
Post Office Box 1137
Charleston, SC 29402
Co-Lead Counsel for the Plaintiff Class


Daniel A. Speights
Speights & Runyan
304 Lee Avenue
Post Office Box 685
Hampton, SC 29924
Co-Lead Counsel for the
   Plaintiff Class


David B. Siegel
Senior Vice-President and General Counsel
W.R. Grace & Co. - Connecticut

## The College & University Opt-Out List

Updated 08/27/96 — 3:00 p.m

| State | Actual Forms | Institution |
|---|---|---|
| **ALABAMA** | 1 | United States Sports Academy |
| **ALASKA** | 1 | University of Alaska |
| **ARIZONA** | 2 | The American Institute<br>Arizona College of the Bible |
| **CALIFORNIA** | 4 | California State University<br>Contra Costa Community College District<br>International School of Theology<br>The Regents of the University of California<br>Woodbury University |
| **COLORADO** | 12 | Adams State College<br>Auraria Higher Education Center<br><br>Colorado Community Colleges and Occupational Education System Including but not limited to Front Range Community College and Red Rocks Community College<br><br>Colorado School of Mines<br>Colorado State University<br>Fort Lewis College<br>Mesa State College<br>Metropolitan State College of Denver<br>Western State College<br>Trustees of the State Colleges in Colorado<br>University of Northern Colorado<br>University of Southern Colorado |
| **DELAWARE** | 3 | Delaware State University<br>Delaware Technical & Community College<br>University of Delaware |
| **DISTRICT OF COLUMBIA** | 1 | University of the District of Columbia |
| **FLORIDA** | 5 | Florida Computer & Business School<br>Jones College<br>Pensacola Junior College<br>Seminole Community College<br>University of Central Florida |
| **GEORGIA** | 1 | Georgia Baptist Health Care System - Georgia Baptist College of Nursing |
| **HAWAII** | 1 | University of Hawaii, including all components and including specifically:<br>University of Hawaii, Manoa Campus<br>University of Hawaii, Hilo Campus<br>Honolulu Community College<br>Leeward Community College<br>Windward Community College |
| **IDAHO** | 1 | North Idaho College |

EXHIBIT A

The College & University Opt-Out List

2

| ILLINOIS | 12 | Board of Trustees of Northern Illinois University, successor to Board of Regents for Northern Illinois University |
| | | |
| | | Board of Trustees of Southern Illinois University |
| | | Chicago State University |
| | | Eastern Illinois University |
| | | Governors State University |
| | | Illinois State University |
| | | Kaskaskia College |
| | | Moraine Valley Community College, Community College District No. 524 |
| | | Northeastern Illinois University |
| | | Southern Illinois University at Carbondale |
| | | |
| | | University of Illinois at Urbana-Champaign, Chicago and Springfield |
| | | |
| | | Western Illinois University |
| IOWA | 2 | Hamilton Technical College, Ltd. |
| | | Northwest Iowa Community College |
| KANSAS | 1 | Topeka School of Medical Technology |
| KENTUCKY | 10 | Eastern Kentucky University |
| | | Kentucky State University |
| | | Morehead State University |
| | | Murray State University |
| | | Northern Kentucky University |
| | | Saint Catharine College |
| | | University of Kentucky |
| | | University of Kentucky and its Community College System |
| | | University of Louisville |
| | | Western Kentucky University |
| LOUISIANA | 1 | All Louisiana Public Colleges & Univ (As Listed on Attachment A) |
| | |     Delgado College |
| | |     Grambling State University |
| | |     Louisiana Tech University |
| | |     Louisiana State University, Eunice |
| | |     Louisiana State University, Medical Center |
| | |     Louisiana State University, Shreveport |
| | |     Louisiana State University, Baton Rouge |
| | |     Louisiana State University, Alexandria |
| | |     McNeese State University |
| | |     Nicholls State University |
| | |     Northeast State University |
| | |     Northwestern State University, Natchitoches |
| | |     Northwestern State University, Fort Polk |
| | |     Southeast Louisiana University |
| | |     Southern University |
| | |     University of New Orleans |
| | |     University of Southwest Louisiana |
| MARYLAND | 6 | Frostburg State University |
| | | St. Mary's College of Maryland |
| | | Towson State University |
| | | University of Maryland at Baltimore |
| | | University of Maryland, College Park |
| | | University of Maryland, Eastern Shore |

# The College & University Opt-Out List

| State | | |
|---|---|---|
| MASSACHUSETTS | 4 | All of the colleges and universities of the Commonwealth of Massachusetts including Community College, State Colleges, and all campuses of the University of Massachusetts. |
| | | Marian Court College |
| | | Montserrat College of Art |
| | | Mount Wachusett Community College |
| MINNESOTA | 1 | United Theological Seminary of the Twin Cities |
| MISSISSIPPI | 8 | Alcorn State University |
| | | Delta State University |
| | | Jackson State University |
| | | Mississippi State University |
| | | Mississippi University for Women |
| | | Mississippi Valley State University |
| | | University of Mississippi |
| | | University of Southern Mississippi |
| MISSOURI | 3 | Mineral Area College |
| | | St. Charles County Community College |
| | | Traditional Acupuncture Instit. |
| NEVADA | 2 | Morrison College |
| | | State of Nevada |
| NEW HAMPSHIRE | 1 | Thomas More College of Liberal Arts |
| NEW JERSEY | 1 | Thomas Edison State College |
| NORTH DAKOTA | 8 | Bismarck State College |
| | | Dickinson State University |
| | | Jamestown College |
| | | Minot State University |
| | | North Dakota State University |
| | | North Dakota State University - Bottineau |
| | | University of North Dakota |
| | | University of North Dakota - Lake Region |
| OHIO | 2 | Circleville Bible College |
| | | Kenyon College |
| OKLAHOMA | 1 | Seminole Junior College |
| OREGON | 8 | Eastern Oregon State College |
| | | Eugene Bible College |
| | | Oregon Institute of Technology |
| | | Oregon State University |
| | | Portland State University |
| | | Southern Oregon State College |
| | | University of Oregon |
| | | Western Oregon State College |

#6

B.

| PENNSYLVANIA | 17 | Bloomsburg University of PA<br>California University of PA<br>Cheyney University of PA<br>Clarion University of PA<br>East Stroudsburg University of PA<br>Edinboro University of PA<br>Indiana University of PA<br>Kutztown University of PA<br>Lock Haven University of PA<br>Mansfield University of PA<br>McCarrie Schools of Health, Sciences and Technology<br>Millersville University of PA<br>The Pennsylvania State University<br>Philadelphia College of Pharmacy and Science<br>Shippensburg University of Pennsylvania<br>Slippery Rock University of PA<br>West Chester University of PA |
|---|---|---|
| RHODE ISLAND | 3 | Community College of RI<br>Rhode Island College<br>University of Rhode Island |
| SOUTH CAROLINA | 7 | The Citadel<br>Francis Marion University<br>Lander University<br>Medical University of SC<br>South Carolina State University<br><br>S.C. State Board for Comprehensive & Technical Education includes all S.C. Technical Colleges: Aiken, Lowcountry, Chesterfield-Marlboro, Denmark, Florence-Darlington, Greenville, Horry-Georgetown, Midlands, Orangeburg-Calhoun, Piedmont, Spartanburg, Central Carolina, Tri-County, Trident, Williamsburg, York<br><br>Winthrop University |
| SOUTH DAKOTA | 1 | South Dakota Board of Regents |

#7

**The College & University Opt-Out List**

5

| TEXAS | 44 | Alamo Community College District |
|---|---|---|
| | | Alvin Community College |
| | | Amarillo College |
| | | Angelina College |
| | | Austin Community College |
| | | Blinn College |
| | | Clarendon College |
| | | College of the Mainland |
| | | Corpus Christi Junior College District (Del Mar College) |
| | | East Texas State University |
| | | Frank Phillips College |
| | | Grayson County College |
| | | Hill College |
| | | Houston Community College System |
| | | Jacksonville College |
| | | Kilgore College |
| | | Laredo Community College |
| | | Lee College District |
| | | Lon Morris College |
| | | McLennan Community College |
| | | Midwestern State University |
| | | Navarro College |
| | | |
| | | North Central Texas Community College District and Its Components |
| | | |
| | | Odessa College |
| | | Panola College |
| | | Paris Junior College |
| | | Ranger College |
| | | San Jacinto Community College District |
| | | San Jacinto Junior College District |
| | | South Plains Junior College |
| | | Southwest Texas Junior College |
| | | Stephen F. Austin State University |
| | | Tarrant County Junior College District |
| | | Temple Junior College |
| | | Texarkana College |
| | | Texas Southern University |
| | | Texas Southmost College |
| | | Texas Tech University and Its Components |
| | | Trinity Valley Community College |
| | | Tyler Junior College |
| | | The University of North Texas |
| | | Vernon Regional Jr. College |
| | | Victoria College |
| | | Wharton County Junior College |

#8

| TEXAS (CON'T.) | 1 | Dallas County Community College District and Its Various Components<br>    Brookhaven Community College<br>    Cedar Valley Community College<br>    Eastfield Community College<br>    El Centro Community College<br>    Mountain View Community College<br>    North Lake Community College<br>    Richland Community College |
| --- | --- | --- |
| TEXAS (CON'T.) | 1 | North Harris Montgomery Community College District and Its Components<br>    North Harris Montgomery Community College District<br>    North Harris College<br>    Kingwood College<br>    Tomball College<br>    Montgomery College |
| TEXAS (CON'T.) | 1 | The Texas A&M University & its Components as Listed & Enumerated in Exhibit A Attached Hereto<br>    Prairie View A&M University<br>    Tarleton State University<br>    Texas A&M International University<br>    Texas A&M University - Corpus Christi<br>    Texas A&M University at Galveston<br>    Texas A&M University - Kingsville<br>    Texas A&M University<br>    Texas Agricultural Experiment Station<br>    Texas Agricultural Extension Service<br>    Texas Animal Damage Control Service<br>    Texas Engineering Experiment Station<br>    Texas Engineering Extension Service<br>    Texas Forest Service<br>    Texas Transportation Institute<br>    Texas Veterinary Medical Diagnostic Laboratory<br>    West Texas A&M University |



#9

**The College & University Opt-Out List**

| TEXAS (CON'T.) | 1 | Texas Public Universities and Colleges as Shown on Exhibit A Attached Hereto |
|---|---|---|

Amarillo Junior College
Central Texas College
Dallas County Community College District
Tarrant County Junior College
Texas A&M University System
    Prairie View A&M University
    Tarleton State University
    Texas A&M International University
    Texas A&M - Corpus Christi
    Texas A&M at Galveston
    Texas A&M - Kingsville
    Texas A&M University
    Texas Agricultural Experiment Station
    Texas Agricultural Extension Service
    Texas Animal Damage Control Service
    Texas Engineering Experiment Station
    Texas Engineering Extension Service
    Texas Forest Service
    Texas Transportation Institute
    Texas Veterinary Medical Diagnostic Lab
    West Texas A&M University
Texas Southern University
Texas State Technical College System
Texas State University System
    Angelo State University
    Lamar University
    Sam Houston State University
    Southwest Texas State University
    Sul Ross State University
Texas Tech College System
    Texas Tech University Health Science Center
    Texas Tech University, Junction
Texas Woman's University
    Texas Woman's University Dallas-Parkland
    Texas Woman's University Dallas Presbyterian
    Texas Woman's University Houston Medical Center
University of Houston
    University of Houston - Clear Lake
    University of Houston - Downtown
    University of Houston - Victoria
University of North Texas
University of Texas System
    University of Texas Health Science Center at Houston
    University of Texas Health Science Center at San Antonio
    University of Texas MD Anderson Cancer Center
    University of Texas Medical Branch at Galveston
    University of Texas at San Antonio Institute of Texas Culture
    University of Texas South Western Medical Center at Dallas
    University of Texas South Western Medical Center at Dallas
    University of Texas at Austin
    University of Texas at El Paso
    University of Texas - Pan American
    University of Texas at Permian Basin
    University of Texas at Tyler
Victoria College

#10

**The College & University Opt-Out List**

| | | |
|---|---|---|
| ON'T.) | 1 | Texas State Technical College System And Its Components as Listed and Enumerated in Attached Exhibit A<br>　　Texas State Technical College at Amarillo<br>　　Texas State Technical College at Harlingen<br>　　Texas State Technical College at Sweetwater<br>　　Texas State Technical College at Waco<br>　　Extension Center at Abilene<br>　　Extension Center at Brownswood<br>　　Extension Center at Breckenridge<br>　　Extension Center at Marshall |
| (CON'T.) | 1 | The Texas State University System and Components Identified on Exhibit A<br>　　Southwest Texas State University<br>　　Sam Houston State University<br>　　Angelo State University<br>　　Sul Ross State University<br>　　The Lamar University System |
| 2 (CON'T.) | 1 | Texas Woman's University & its Components as Listed & Enumerated Exhibit A Attached Hereto<br>　　Texas Woman's University - Dallas Parkland Campus<br>　　Texas Woman's Dallas Presbyterian Campus<br>　　Texas Woman's University - Houston Medical Center Campus- |
| 1S (CON'T.) | 1 | University of Houston System and its Components as Listed & Enumerated in Exhibit A Attached Hereto<br>　　University of Houston<br>　　University of Houston - Clear Lake<br>　　University of Houston - Downtown<br>　　University of Houston - Victoria |
| AS (CON'T.) | 1 | The University of Texas System and Components Identified on Exhibit A<br>　　The University of Texas - Pan American<br>　　The University of Texas at Austin<br>　　The University of Texas at Tyler<br>　　The University of Texas at El Paso<br>　　The University of Texas at Permian Basin<br>　　The University of Texas Southwestern Medical Center at Dallas<br>　　The University of Texas Medical Branch at Galveston<br>　　The University of Texas Health Science Center at Houston<br>　　The University of Texas Health Science Center at San Antonio<br>　　The University of Texas at San Antonio Institute of Texas Cultures<br>　　The University of Texas M.D. Anderson Cancer Center<br>　　The University of Texas at Arlington<br>　　The University of Texas Health Center at Tyler |
| OTAL FOR TEXAS | 52 | |
| IRGINIA | 1 | Southside Virginia Community College |

# 11

| WASHINGTON | 17 | Centralia College |
|---|---|---|
| | | Clark College |
| | | Clover Park Technical College |
| | | Edmonds Community College |
| | | Green River Community College |
| | | Highline Community College |
| | | Lake Washington Technical College |
| | | Lower Columbia College |
| | | Peninsula College |
| | | Pierce College |
| | | Renton Technical College |
| | | |
| | | Seattle Community College District VI |
| | | includes North, Central and South Seattle Community Colleges |
| | | |
| | | Shoreline Community College |
| | | Skagit Valley College |
| | | University of Washington |
| | | Washington State University |
| | | Wenatchee Valley College |
| WEST VIRGINIA | 13 | Bluefield State College |
| | | Concord College |
| | | Fairmont State College |
| | | Glenville State College |
| | | Marshall University |
| | | Potomac State College of West Virginia |
| | | Sherpherd College |
| | | West Liberty State College |
| | | West Virginia Institute of Technology |
| | | West Virginia School of Osteopathic Medicine |
| | | West Virginia State College |
| | | West Virginia University |
| | | WVU at Parkersburg |
| WISCONSIN | 2 | Milwaukee Institute of Art & Design |
| | | Nicolet Area Technical College |
| GRAND TOTAL | 218 | |



## **EXHIBIT B**

The Settlement Sum shall consist of:

1.       $12.5 million to be paid within 10 days of preliminary approval by the Court of this Agreement.

2.       $12.5 million to be paid within 10 days of the Effective Date of this Agreement.

## EXHIBIT C

### (FRONT OF COUPON)

Two-Dollars and Fifty Cents ($2.50)
Per Bag Credit Toward the Purchase
of Retro-guard™, Sonotex™-1 or Sonotex™-5

This coupon has been issued to [NAME OF COLLEGE OR UNIVERSITY] (the "Institution") as part of the settlement of Central Wesleyan College v. W.R. Grace & Co., Civ. A. No. 2:87-18605 (D.S.C.). The Institution or Authorized Transferee (as defined below) may present this coupon to any sales office of Grace Construction Products Division ("Grace"), and receive a credit of two dollars and fifty cents ($2.50), toward the purchase price for each 50 lbs. bag of (a) of Retro-guard™, Grace's replacement fireproofing product; or (b) Sonotex™-1 (formerly known as Monkote™ Acoustical Plaster Type AK-1) or Sonotex™-5, Grace's acoustical spray-applied plasters, which the Institution or Authorized Transferee purchases, up to a maximum of [NUMBER OF BAGS IN WORDS] bags. The coupon must be presented at the time of purchase. The purchase credit applies to the lower of (a) Grace's published list price; or (b) any generally available discounted price announced by Grace for the particular geographic region and product, provided that the resulting price to the Institution shall be no more than 75% of (a) or (b). Only one (1) purchase credit may be applied to each bag purchased. The purchase is subject to all terms, conditions and warranties which may be in effect at the time of sale.

This coupon may be freely transferred to any other member of the class certified in Central Wesleyan College v. W.R. Grace & Co., Civ. A. No. 2:87-18605 (D.S.C.) who did not file a timely request for exclusion (an "Authorized Transferee"), but it may not be sold, bartered or transferred to any other persons or entities. In order to make such a transfer, the Institution should contact [NAME OF ACCOUNTING FIRM APPOINTED BY THE COURT TO ADMINISTER COUPONS], which will issue new coupon(s) to the Authorized Transferee(s). A coupon may only be used by the Institution or Authorized transferee to whom it is issued for the purchase of product to be installed in a structure to be operated for educational functions exclusively by the Institution or Authorized Transferee; as a condition of receiving the purchase credit, the Institution or Authorized Transferee, upon request, may be required to submit satisfactory evidence that the product will be used in compliance herewith. Any use of the coupon in violation of the terms hereof renders the purchase credit void and the Institution or Authorized Transferee liable for purchase credit given in violation of the terms of the coupon.

This coupon shall be valid until December 31, [Tenth year after Final Approval of The Settlement] unless otherwise extended in writing by Grace. All orders are subject to availability of product.

-2-

(BACK OF COUPON)

REGISTER OF BAGS PURCHASED

| Date | Product | Number of Bags Purchased | Invoice Number |
|------|---------|--------------------------|----------------|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**EXHIBIT D**

**GENERAL RELEASE AND COVENANT NOT TO SUE**

KNOW ALL MEN BY THESE PRESENTS, that Plaintiff in the litigation <u>Central Wesleyan College, et al.</u> v. <u>W.R. Grace & Co., et al.</u>, No.2:87-1860-8, (United States District Court for the District of South Carolina) filed February 17, 1987 (the "Litigation"), Central Wesleyan College ("Named Plaintiff"), and all members, individually and collectively, of the Rule 23(b)(3) class certified in an Order entered September 4, 1992 that have not filed timely and valid exclusion elections (the "Class"), individually and collectively, on behalf of themselves and their predecessors, successors and assigns, intending to be legally bound hereby, absolutely, fully and forever release, relieve, remise and discharge W.R. Grace & Co., a Connecticut Corporation, W.R. Grace & Co., a New York Corporation, and their predecessors and successors, and past and present assigns (including the purchasers of any former divisions and subsidiaries) representatives, subsidiaries, divisions, affiliates, parents (and subsidiaries thereof) partnerships and partners, and all of their officers, directors, agents, employees, insurers and attorneys, both past and present (hereafter "Grace"), but not including any co-defendant in this action, of and from any and all manner of claims, demands, rights or causes of action (including all claims for punitive damages, costs, expenses or fees), present or future, known and unknown, legal or equitable, arising out of or relating to asbestos-containing materials, friable or which may become friable, including but not limited to all direct-to-steel fireproofing or acoustical products manufactured by or under license from Grace which contain asbestos, all claims relating to costs of inspection to determine whether such asbestos-containing materials are present, all claims relating to the cost of medical monitoring, except as a part of a course of treatment of a person who has been injured by exposure to asbestos, and all claims of conspiracy or concert of action or any other type of

-2-

shared liability for asbestos-containing materials manufactured, sold or installed by other persons.

which the Named Plaintiffs or members of the Class, and their predecessors of successors, transferees

and assigns or any of their past or present representatives, assigns, subsidiaries, divisions, affiliates,

parents, partners, officers, directors, employees, agents or insurers had, now have or hereinafter may

have against Grace from the beginning of the world, including any claims which may arise in the fu-

ture by reason of any alleged asbestos-containing materials installed in any building of a class mem-

ber, or any alleged contamination such material may have created or may create in the future, and all

claims arising out of or in any way related, in whole or in part, to facts, matters, acts of commission or

omission, statements, agreements or occurrences which were or could have been asserted, alleged,

described, embraced or otherwise referred to in any of the complaints and amended complaints in the

litigation, (the "Claims") provided, however, that the parties reserve any rights they may have now or

in the future concerning any claims for personal injury allegedly caused by asbestos or asbestos-

containing building products in any class member's buildings.

Each party expressly waives any and all rights and benefits conferred upon it by the

provisions of California Civil Code Section 1542 (or by similar legal provisions in other states),

which provides as follows:

> "A general release does not extend to claims which the creditor does not know or sus-
> pect to exist in his favor at the time of executing the release, which if known by him
> must have materially affected his settlement with the debtor."

The Named Plaintiffs, the Class, and the members thereof, covenant and agree not to

institute, maintain, collect or proceed against Grace on any Claims that arise out of, relate to, or are

based upon, in whole or in part, any subject or matter covered by the release described in the para-

graphs above.

-3-

The Named Plaintiff, the Class, and the members thereof agree that they will reduce any judgment any of them may obtain against the other person for asbestos-related property damage by the amount, percentage or share of such judgment attributable to Grace so as to bar, discharge and release under applicable law any claims for contribution or indemnity against Grace arising from or related to such asbestos-related property damage claims.

In the event that the Named Plaintiff, the Class, or any member thereof, obtains a judgment against any other person for asbestos-related property damage and that person obtains a judgment over, in whole or in part, against Grace for contribution or indemnity, then the pertinent Named Plaintiff, Class or class member will reduce or remit any judgment or portion thereof obtained from such person by the amount of the judgment over against Grace.

Each class member agrees that it will indemnify Grace and hold it harmless from any asbestos-related property damage claim relating to or arising out of any building which contains asbestos-containing products which the class member has transferred or conveyed to any other person.

The Named Plaintiff, the Class, the members of the Class, and Grace accept and assume the risk that if any fact or circumstance is found, suspected, or claimed hereafter to be other than or different from the facts or circumstances now believed to be true, the general release and covenant not to sue contained herein shall be and remain effective notwithstanding any such difference in any such facts or circumstances.

IN WITNESS WHEREOF, the Named Plaintiff, the Class and the members of such Class have caused the undersigned, who are authorized to execute this General Release and Covenant

-4-

Not to Sue on their behalf, to set forth their hand and seal on behalf of the Named Plaintiff and the

Class.

EDWARD J. WESTBROOK                    DANIEL A. SPEIGHTS

Co-Lead Counsel for Named Plaintiff and the Class

**Attachment 2**

W R GRACE & CO
TABLE OF CONTENTS

operating activities of discontinued operations' excludes the effects of chang
in working capital of discontinued operations prior to their classification as
such. The net investing and financing activities of discontinued operations
represent cash flows of discontinued operations subsequent to the respective
dates of such classifications.

INCOME TAXES: Grace applies Statement of Financial Accounting Standards (SFAS)
No. 109, 'Accounting for Income Taxes,' which specifies an asset and liability
approach requiring the recognition of deferred tax assets and liabilities with
respect to the expected future tax consequences of events that have been
recorded in the Consolidated Financial Statements and tax returns. If it is mor
likely than not that all or a portion of deferred tax assets will not be
realized, a valuation allowance is provided against such deferred tax assets.

FOREIGN CURRENCY TRANSLATION: Assets and liabilities of foreign subsidiaries
(other than those located in countries with highly inflationary economies) are
translated into U.S. dollars at current exchange rates, while their revenues,
costs and expenses are translated at average exchange rates during each
reporting period; resulting translation adjustments are reported as a component
of shareholders' equity. The financial statements of subsidiaries located in
countries with highly inflationary economies are remeasured as if the functiona
currency were the U.S. dollar; the remeasurement creates translation adjustment
that are reflected in net income.

FINANCIAL INSTRUMENTS: Grace periodically enters into interest rate swap
agreements and foreign exchange forward and option contracts to manage exposure
to fluctuations in interest and foreign currency exchange rates. Grace does not
hold or issue derivative financial instruments for trading purposes.

OTHER INCOME: Other income consists of interest income, equity in earnings of
affiliated companies, gains on sales of investments and other items.

----------------------------------------------------------------------
2.   ASBESTOS AND RELATED INSURANCE LITIGATION
----------------------------------------------------------------------

Grace is a defendant in property damage and personal injury lawsuits relating t
previously sold asbestos-containing products and expects that it will be named
as a defendant in additional asbestos-related lawsuits in the future. Grace wa:
a defendant in approximately 45,100 asbestos-related lawsuits at December 31,
1998 (14 involving claims for property damage and the remainder involving
approximately 97,000 claims for personal injury), as compared to approximately
40,600 lawsuits at December 31, 1997 (18 involving claims for property damage
and the remainder involving approximately 96,900 claims for personal injury).

F-9
<PAGE>

PROPERTY DAMAGE LITIGATION

Copyright (C) 1998 Dow Jones & Co., Inc.



W R GRACE & CO
TABLE OF CONTENTS

The plaintiffs in property damage lawsuits generally seek to have the defendant:
absorb the cost of removing, containing or repairing the asbestos-containing
materials in the affected buildings. Each property damage case is unique in that
the age, type, size and use of the building, and the difficulty of asbestos
abatement, if necessary, vary from structure to structure. Thus, the amounts
involved in prior dispositions of property damage cases are not necessarily
indicative of the amounts that may be required to dispose of cases in the
future. Information regarding product identification, the amount of product in
the building, the age, type, size and use of the building, the jurisdictional
history of prior cases and the court in which the case is pending provide
meaningful guidance as to the range of potential costs. Some of this informatio:
is not yet available in the property damage cases currently pending against
Grace. Accordingly, it is not possible to estimate with precision the costs of
defending against and disposing of these cases. In accordance with SFAS No. 5,
'Accounting for Contingencies,' Grace has recorded an accrual for all existing
property damage cases for which sufficient information is available to form a
range of estimated exposure. At December 31, 1998, an estimate was not accrued
for one case, due to insufficient information. Grace believes that the number o
property damage cases to be filed in the future and the costs associated with
such filings are not estimable.
     Through December 31, 1998, 140 asbestos property damage cases were
dismissed without payment of any damages or settlement amounts; judgments were
entered in favor of Grace in nine cases (excluding cases settled following
appeals of judgments in favor of Grace); judgments were entered in favor of the
plaintiffs in seven cases (none of which is on appeal) for a total of $60.3; an
200 property damage cases were settled for a total of $587.9. Property damage
case activity for 1998 and 1997 was as follows:

| | 1998 | 1997 |
|---|---|---|
| Cases outstanding, beginning of year.............. | 18 | 31 |
| New cases filed................................... | 2 | 1 |
| Settlements....................................... | (5) | (9) |
| Dismissals........................................ | (1) | (4) |
| Judgments......................................... | -- | (1) |
| Cases outstanding, end of year.............. | 14 | 18 |

PERSONAL INJURY LITIGATION
Personal injury claims are generally similar to each other (differing primaril:
in the type of asbestos-related illness allegedly suffered by the plaintiff).
However, Grace's estimated liability for such claims is influenced by numerous
variables, including the solvency of other former asbestos producers,
cross-claims by co-defendants, the rate at which new claims are filed, the
jurisdiction in which the filings are made, and the defense and disposition

Copyright (C) 1998 Dow Jones & Co., Inc.



V R GRACE & CO
TABLE OF CONTENTS

costs associated with these claims.

Through December 31, 1998, approximately 13,700 asbestos personal injury lawsuits involving 30,700 claims were dismissed without payment of any damages or settlement amounts (primarily on the basis that Grace products were not involved), and approximately 43,900 lawsuits involving 108,700 claims were disposed of for a total of $347.3. Personal injury claim activity for 1998 and 1997 was as follows:

|                                              | 1998     | 1997     |
|----------------------------------------------|----------|----------|
| Claims outstanding, beginning of year........ | 96,933   | 91,511   |
| New claims................................... | 20,993   | 30,339   |
| Settlements.................................. | (19,503) | (22,957) |
| Dismissals................................... | (1,399)  | (1,955)  |
| Judgments.................................... | (7)      | (5)      |
| Claims outstanding, end of year............. | 97,017   | 96,933   |

ASBESTOS-RELATED LIABILITY

In the fourth quarter of 1996, Grace recorded a noncash net pretax charge of $229.1 ($148.9 after-tax) after estimated insurance recoveries of $119.3, for the estimated costs of defending against and disposing of asbestos personal injury claims expected to be filed during the five-year period 1997-2001. Based on experience with, and recent trends in, asbestos personal injury litigation, Grace believes it can reasonably forecast the number and ultimate cost of present and future personal injury claims expected to be asserted through 2039. The change in the accrual period for asbestos-related personal injury litigatio

resulted in a fourth quarter noncash net pretax charge of $376.1 ($244.4 after-tax) after estimated insurance recoveries of $200.8. The provision consists of an addition of $576.9 to the asbestos liability for personal injury indemnity and defense costs, partially offset by expected recoveries from insurance carriers. The asbestos liability (including personal injury and property damage), net of insurance recoveries, is $751.1 at December 31, 1998. The personal injury asbestos accrual as of December 31, 1998 is based on Grace' best estimate of the full cost of resolving these liabilities through 2039.

F-10
<PAGE>

Based upon and subject to the factors discussed above, Grace estimates that its probable liability with respect to the defense and disposition of asbestos property damage and personal injury cases and claims was as follows at December 31, 1998 and 1997:

Copyright (C) 1998 Dow Jones & Co., Inc.



I R GRACE & CO
ABLE OF CONTENTS

Note: The following TABLE/FORM is too wide to be displayed on one screen. You
must print it for a meaningful review of its contents.

Copyright (C) 1998 Dow Jones & Co., Inc.



V R GRACE & CO
TABLE OF CONTENTS

**********************************************************************
******** This is a section of the piece table.                *******
**********************************************************************

```
<TABLE>
<CAPTION>
--------------------------------------------------------------------
                                                          1998
--------------------------------------------------------------------

<S>                                                <C>           <
Current liability for asbestos-related litigation .........    $    93.0
Noncurrent liability for asbestos-related litigation.......       1,101.1
                                                                 --------       -
    Total asbestos-related liability.....................        $1,194.1      $
                                                                 ========       =
--------------------------------------------------------------------
</TABLE>
```

Copyright (C) 1998 Dow Jones & Co., Inc.

Westlaw.

**Attachment 3**

# GRACE (W.R.) NYSE-GRA

| RECENT PRICE | 14 | P/E RATIO | 10.5 | (Trailing: 12.0 Median: 15.0) | RELATIVE P/E RATIO | 0.65 | DIV'D YLD | Nil | VALUE LINE | 1908 |

TIMELINESS — Suspended 9/1/95

SAFETY — 3 New 5/29/98

TECHNICAL — Suspended 9/1/95

BETA .NMF (1.00 = Market)

**2001-03 PROJECTIONS**

| | Price | Gain | Ann'l Total Return |
|---|---|---|---|
| High | 54 | (+285%) | 37% |
| Low | 38 | (+170%) | 29% |

Insider Decisions

Institutional Decisions

Target Price Range 2001 2002 2003

© VALUE LINE PUB., INC.

**CAPITAL STRUCTURE** as of 9/30/98

Total Debt $281.6 mill. Due in 5 Yrs $248.9 mill.
LT Debt $32.8 mill.    LT Interest $2.0 mill.
(Total interest coverage: 8.1)    (5% of Cap'l)

Leases, Uncapitalized Annual rentals $9 mill.

Pension Liability None

Pfd Stock None

Common Stock 74,333,993 shs.    (91% of Cap'l)
MARKET CAP: $1.3 bill. (Mid Cap)

**CURRENT POSITION**    1996    1997    9/30/98

**ANNUAL RATES**

**BUSINESS:** W.R. Grace & Co. has a core business of specialty chemicals including container sealants, catalysts/silica, and construction products. Transferred packaging business (Cryovac) to Sealed Air Corp. 3/98. Sold the Grace Dearborn water treatment business on 6/96 and sold off the National Medical Care unit in 9/96. In '92-'93, divested dozens of products, organic chemicals, and units in oil and gas production and oil-field services. In '97, foreign sales were 51% of total. R&D, 2.7%. 1997 depreciation rate: 5.6%. Has about 27,400 employees, 17,400 stockholders. Officers and Directors own 1.1% of stock. (4/97 Proxy). Chairman, President, and C.E.O.: Paul J. Norris. Inc.: New York. Address: One Town Center Road, Boca Raton, FLA 33486. Telephone: 561-362-2000.

Grace stock offers investors a wide 3- to 5-year appreciation potential. This company has been in its present format for less than a year, not long enough to enable us to compute a Timeliness rank. It came into being following the sale of Grace's Cryovac division (flexible packaging) last March. Reported earnings in 1997 and 1998 were distorted by one-time charges relating to the sale, the results of discontinued operations, and the restructuring of continuing activities. But Grace, as it is now constituted, has a large stake in such promising fields as specialty chemicals both at home and abroad. (Foreign sales are about equal to those domestically.) In addition, the sale of Cryovac eliminated most of Grace's debt while reducing the company's capital spending needs. Accordingly, Grace will likely be generating cash well above its capital and debt servicing needs. Thus it have the means to expand its ongoing businesses, develop new products, make acquisitions, and repurchase stock, as it has done for the past few years. But even as Grace is now configured, we are projecting considerably higher earnings and a richer stock price by 2001-2003.

But the stock is best suited for the more venturesome. One reason is its short trading history, which likely reduces its appeal to many investors who prefer to see a lengthy history on which to base their judgments. A more serious concern is the cost of asbestos-related claims (arising from past operations). The year-end 1998 balance sheet will show a liability of over $750 million for this purpose, more than double stockholders' equity. Since these claims will be paid out over many years, their present value is far below $750 million. On the other hand, that figure is only the company's most-recent estimate; it has been revised upward in the past.

Grace is making substantial cost cuts. Headquarters will move to Maryland from Florida, and employment reductions have been announced. Further such moves will follow as a result of a review of the company's administrative and operating productivity. These steps, together with those already taken last year for which the cost has already been charged, suggest substantial earnings gains in the years ahead.

*Milton Schlein*    February 26, 1999

| | |
|---|---|
| Company's Financial Strength | |
| Stock's Price Stability | NMF |
| Price Growth Persistence | NMF |
| Earnings Predictability | NMF |

1-800-833-0046.

**Attachment 4**

BridgeStation                                    Thu Sep 30 08:08:51 1999

ID: ZRFWDB  Src: MARG TM: 02:23  26Sep      30-Sep-99 08:07 NYC  PAGE 10 OF 12
us;GRA    WR Grace and Co             +16  3/16  (N)     UNCHO       V 0
                    SELECTED BALANCE SHEET ITEMS ($000)
                         YEAR ENDING              QUARTER ENDING
                      12/31/97    12/31/98      06/30/98    06/30/99

| | YEAR ENDING | | QUARTER ENDING | |
| --- | --- | --- | --- | --- |
| | 12/31/97 | 12/31/98 | 06/30/98 | 06/30/99 |
| Cash & ST Investments | 47,600 | 65,300 | 72,600 | 56,700 |
| Receivables | 273,300 | 196,900 | 364,000 | 203,600 |
| Total Current Assets | 2,175,500 | 625,600 | 831,400 | 546,000 |
| LT Investments | 0 | 0 | 0 | 0 |
| Fixed Assets | 663,300 | 661,400 | 651,400 | 624,200 |
| Total Assets | 3,773,000 | 2,577,800 | 2,415,100 | 2,444,600 |
| Accounts Payable | 106,500 | 123,700 | 107,200 | 111,700 |
| ST Debt & Curr LTD | 413,600 | 80,600 | 216,600 | 177,000 |
| Total Current Liab. | 1,357,700 | 688,200 | 830,200 | 695,000 |
| LT Debt & Cap Leases | 658,700 | 32,800 | 32,800 | 8,100 |
| Total Liabilities | 3,305,100 | 2,490,200 | 2,106,600 | 2,355,600 |
| Preferred Stock | 0 | 0 | 0 | 0 |
| Common/Paid In Capital | 564,100 | 410,000 | 396,100 | 407,300 |
| Retained Earnings | 108,300 | -157,600 | 25,500 | -171,400 |
| Total Equity | 467,900 | 87,600 | 308,500 | 89,000 |
| Shares Outstanding | 74,540 | 72,503 | 74,998 | 71,159 |

                {Press Enter for Next page.} (c)BRIDGE



PLAINTIFF'S
EXHIBIT
950

(c) BRIDGE Information Systems, Inc. 1998                          Page 1 of 1

**Attachment 5**

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| CENTRAL WESLEYAN COLLEGE, | * | |
| on behalf of itself and all others | * | CIVIL ACTION NO. 2:87-1860-8 |
| similarly situated, | * | |
| | * | NOTICE OF PROPOSED SETTLEMENT |
| Plaintiff, | * | WITH AN ADDITIONAL |
| | * | DEFENDANT |
| v. | * | |
| | * | |
| W.R. GRACE & CO., et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * *

COLLEGE AND UNIVERSITY CLAIMS FOR
ASBESTOS-RELATED PROPERTY DAMAGE

This Notice is being issued pursuant to an Order of the United States District Court for the District of South Carolina and Rule 23 of the Federal Rules of Civil Procedure. The purpose of this Notice is to inform you: (1) of a proposed settlement by an additional defendant with the Class; (2) of your right to comment on the proposed settlement; and (3) of a hearing scheduled for _____, at _____ a.m. in the United States Courthouse at Charleston, South Carolina, to consider whether to approve the proposed settlement. You are being informed of these matters so that you may make appropriate decisions concerning what steps you may wish to take concerning this litigation.

PLEASE READ THIS NOTICE CAREFULLY IN ITS ENTIRETY. YOUR LEGAL RIGHTS MAY BE AFFECTED BY THESE LEGAL PROCEEDINGS AND THE PROPOSED SETTLEMENTS WHICH ARE DISCUSSED HEREIN.

## I.   BRIEF SUMMARY OF THE LITIGATION

1.      On July 17, 1987, Central Wesleyan College ("Central Wesleyan") filed a class action complaint in the United States District Court for the District of South Carolina against more than 50 defendants on behalf of all public and private colleges and universities in the country.  This action is known as <u>Central Wesleyan College v. W.R. Grace, et al.</u>, Civil Action No. 2:87-1860-8 (D.S.C.) ("the Class Action").  The complaint seeks compensatory and punitive damages, as well as injunctive relief, and alleges that asbestos-containing products previously installed in buildings owned or operated by class members have or in the future will contaminate these buildings and that, pursuant to federal regulations, these products must be separately removed during certain renovations or at demolition.  The complaint asserts that defendants should bear the cost of inspection, testing, identification, analysis, repair, removal, and replacement of these asbestos-containing products.  Plaintiff's liability claims include negligence, strict liability in tort, breach of warranties, concert of action, civil conspiracy and restitution.

2.      The current/settling defendants in this action are as follows:

A.P. Green Refractories Company                    United States Gypsum Company
General Refractories Company                        VIMASCO Corporation
U.S. Mineral Products, Co.                          * W.R. Grace & Co.

*   The proposed settling defendant; <u>see</u> ¶ 7.

W.R. Grace denies that it is liable for any claim asserted by plaintiff or the Class and asserts numerous defenses to those claims.

3.      The Court has not passed upon any of the parties' contentions.  The sending of this Notice is not to be construed as an expression of any opinion by the Court about the

merits of any claims or defenses. The foregoing is only a summary of the contentions of plaintiff and defendants. The pleadings and other records of this litigation more fully reflect the respective contentions of the parties. You or your counsel may review the pleadings and other papers filed at the Office of the Clerk of Court, United States District Court for the District of South Carolina, Federal Courthouse, Broad and Meeting Streets, Charleston, SC 29401.

4.    On September 4, 1992 this Court conditionally certified a class action in this litigation under Rule 23(b)(3) of the Federal Rules of Civil Procedure. <u>Central Wesleyan v. W.R. Grace & Co.</u>, 143 F.R.D. 628 (D.S.C. 1992). The plaintiff class consists of:

> All entities that own or operate in whole or in part any public or private college or university in the United States with friable asbestos-containing material who, at the time the complaint herein was filed in 1987, had claims in excess of $10,000.00, exclusive of interest and costs.

The conditional class certification ruling was upheld on appeal on September 24, 1993. <u>Central Wesleyan College v. W.R. Grace & Co.</u>, 6 F.3d 177 (4th Cir. 1993).

5.    This class certification does not imply a conclusion that any entity within the Class was injured as a result of friable asbestos-containing products in its buildings. This class certification applies to all claims for damages and equitable relief stated in the complaint, whether now existing or which may arise in the future by reason of alleged asbestos-containing materials installed in any building owned or operated by a class member, or any alleged contamination such material may have created or will create. If you are included in the class definition, you are automatically a member of the Class unless you previously excluded yourself

- 3 -

by filing a request for exclusion with the Clerk of Court by May 6, 1996, as directed by the Class Notice of April 2, 1996.

## II.    PRIOR SETTLEMENTS

6.    On April 5, 1995, the Court granted approval to a class settlement with National Gypsum Company.  On May 22, 1996, the Court granted approval to settlements with an additional 22 defendants.  On March 17, 1999, the Court granted approval to five more settlements.  On September 1, 1999 the Court approved an additional eight settlements.  The total amount being held by the Class from those settlements to date is approximately $28 million.  No disbursements have been made from these settlements and it is not anticipated that there will be any disbursements until the conclusion of the action.

## III.   PROPOSED SETTLEMENT WITH AN ADDITIONAL DEFENDANT

7.    As indicated in Paragraph 2, Plaintiff has reached a proposed settlement with an additional defendant, W.R. Grace & Co., that will create a settlement fund in the amount of $25 million cash, plus $25 million in product rebates redeemable by class members over the next ten years.  The coupons are good for a $2.50 per bag (approximately 25%) credit on the purchase of W.R. Grace's replacement non-asbestos fireproofing Retro-Guard and on its non-asbestos acoustical plasters, Sonotex-1, and Sonotex-5.  The coupons may be freely transferred among class members.  The full details of the rebate program are contained in the settlement papers on file with the Court at the address noted in ¶ 10.  The settlement is subject to the conditions set forth in the Settlement Agreement that is on file with the Court.  The settling defendant denies liability to plaintiff and the Class for any claim alleged by plaintiff, and the

Settlement Agreement is not to be construed as an admission of liability on the part of the settling defendant.

8.     The Court has granted preliminary approval to the settlement and designated a settlement subclass for the purpose of notifying the Class and administering the settlement. This Notice is not an expression of any opinion by the Court about the merits of the settlement or whether it will be finally approved. The purpose of this Notice is to inform you of the pendency of the proposed settlement and of the rights you have with respect to it.

9.     Each member of the Class is entitled to be heard with respect to the proposed settlement described in this Notice. Members of the Class will share the benefits of the settlements described herein if it is finally approved by the Court.

10.     A settlement hearing to determine the adequacy, fairness, and reasonableness of the settlement will be held on _____, 2000, at _____ in the Federal District Courthouse at Broad and Meeting Streets, Charleston, South Carolina. At that hearing, the Court will consider whether it should give final approval to the proposed settlement and dismiss the settling defendant with prejudice from the litigation. The approval hearing, once commenced, may be adjourned from time to time by the Court, without further notice.

11.     At the approval hearing, any member of the Class may appear in person or by counsel and be heard to the extent allowed by the Court in support of, or in opposition to, the fairness, reasonableness, and adequacy of the settlement. However, no class member will be heard in support of or in opposition to the settlement, and no paper or brief submitted by any such party will be accepted or considered by the Court, unless, at least fifteen (15) days before the settlement hearing, such class member: (1) files with the Clerk of Court, Post Office Box

835, Charleston, South Carolina 29402, notice of its intention to appear, together with a statement that indicates the basis for its support or opposition; and (2) serves copies thereof, and copies of any other papers or briefs it files with the Court, upon Class Counsel:

Edward J. Westbrook, Esquire
Ness, Motley, Loadholt,
Richardson & Poole
Post Office Box 1792
Mt. Pleasant, SC 29465
843-216-9113

Daniel A. Speights, Esquire
Speights & Runyan
200 Jackson Avenue East
Post Office Box 685
Hampton, SC 29924
803-943-4444

and on defense liaison counsel, Donald A. Cockrill, Esquire, Ogletree, Deakins, Nash, Smoak & Stewart, 300 North Main Street, Post Office Box 2757, Greenville, South Carolina 29602.

12.     Class Counsel recommend court approval of the settlement described herein as fair and reasonable and in the best interests of the members of the Class, in view of: (1) the risks and costs of continuing the litigation against the settling defendant; (2) the substantial and valuable benefits that will accrue under the terms of the settlement to the Class; (3) the favorable sum of the settlement in light of the settling and remaining defendants' relative roles in the Litigation; and (4) the favorable total sum of the settlement compared to the potential recovery from the settling defendant in the Litigation.

13.     The settlement fund, established pursuant to the Settlement Agreement, is being maintained in full, subject only to such deductions or expenditures as are expressly provided for in the Agreement and approved or otherwise ordered by the Court.  The settlement fund will be distributed to class members or otherwise as the Court may direct after final judicial approval of the Agreement, or at the conclusion of this Litigation.  In the event that the settlement fails to obtain final judicial approval or is otherwise not finalized according to its

terms and conditions, the settlement funds are to be returned to the settling defendant less certain deductions for the cost of notice.

14.     Notice is expressly given that, subject to judicial approval, settlement funds may be disbursed in whole or in part to defray costs of the Litigation, including such reasonable attorneys' fees as may be awarded by the Court.  Subject to Court approval, the plaintiff also may be reimbursed and indemnified out of the settlement fund for all fees and expenses related to this Notice or incurred in the administration of the settlement fund.

15.     Except with respect to the expenses of Notice or as otherwise expressly permitted by the provisions of the Agreement, or otherwise ordered by the Court, no distribution of the settlement fund is to be made until there has been a final judicial approval of the settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure, and until a final judgment of dismissal with prejudice has been entered with respect to the settling defendant against plaintiff and all members of the Class and an order of the Court allowing such distribution has been issued.

16.     In the event of final judicial approval of the proposed settlement, the litigation will be dismissed with prejudice against the settling defendant.  The plaintiff and all members of the Class will be deemed to have agreed that they will be forever barred from instituting, maintaining, or prosecuting against the settling defendant any of the claims asserted or which could have been asserted in the complaint.  The settling defendant is to be discharged from any and all responsibility to plaintiff and members of the class with respect to such claims.  The plaintiff and all members of the class shall be deemed absolutely, fully, and forever to release, relieve, remise, and discharge the settling defendant, its respective predecessors and successors,

and past and present assigns, representatives, subsidiaries, divisions, affiliates, receivers, parents, shareholders, partnerships and partners, and all of its officers, directors, agents, employees, insurers, and attorneys, both past, present, and future (as more fully described in the Settlement Agreement), from any and all manner of claims, demands, rights, or causes of action (including all claims for punitive damages, costs, expenses, or fees) past, present, or future, known or unknown, that the members of the Class, individually and collectively, had, now have, or hereinafter can, shall, or may have against the settling defendant, from the beginning of the world that were brought or could have been brought in the Litigation arising out of or relative to asbestos-containing materials, friable or that can become friable.  The Release given to the settling defendant, which is attached to the Settlement Agreement, defines completely its scope. Complete copies of the Settlement Agreement and Release are available for inspection and copying at the offices of Class Counsel.

17.    Under certain conditions as set forth in the Settlement Agreement, the settling defendant may, at its option exercised in good faith, elect to withdraw from its Agreement, whereupon such Agreement shall be null and void and the litigation will continue against the settling defendant.

18.    In the event of final judicial approval of the Settlement Agreement and in the event that any class member obtains a judgment against one or more non-settling defendants on the class action claims, any such class member shall reduce any judgment it obtains against any defendant by the amount, percentage, or share of such judgment attributable to the settling defendant, so as to bar, discharge, and release under applicable law any claims for contribution or indemnity against the settling defendant, arising from or related to the class action claims.

- 8 -

In the event that any class member obtains a judgment against one or more defendants in the Litigation and any of those defendants obtains a judgment over, in whole or in part, against the settling defendant for contribution or indemnity, then that class member will be required to reduce or remit any judgment or portion thereof obtained from those defendants by the amount or portion of the judgment over against the settling defendant.

19.    Plaintiff and members of the Class have expressly reserved all their rights against all non-settling defendants except as expressly set forth herein.  The Settlement Agreement and any covenants that are executed pursuant thereto are not intended and are not to be construed as a release or dismissal by plaintiff and members of the Class of any claims or rights against any non-settling defendant except as expressly set forth herein or in the Settlement Agreement or covenants.

20.    The summary of certain provisions of the Settlement Agreement and Release in this Notice is not intended, and should not be construed, as a complete statement of the settlement documents.  Those documents are on file with the Court and are also available for inspection and copying at the offices of Class Counsel.

IF YOU HAVE ANY QUESTIONS CONCERNING ANYTHING IN THIS NOTICE, YOU SHOULD CONTACT YOUR LEGAL COUNSEL OR CLASS COUNSEL.  DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE FOR INFORMATION.

*Clerk of the United States District Court,*
*District of South Carolina*

_____, 2000
Charleston, South Carolina

**Attachment 6**

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

CENTRAL WESLEYAN COLLEGE,     *
on behalf of itself and all others     *     CIVIL ACTION NO. 2:87-1860-8
similarly situated,     *
    *
        Plaintiff,     *
    *
v.     *     O R D E R
    *
W.R. GRACE & CO., et al.,     *
    *
        Defendants.     *
    *
* * * * * * * * * * * * * * * * * * *     *

This matter came before the Court on class plaintiff's motion for: (1) preliminary approval of a proposed class settlement with W.R. Grace & Co.; and (2) for permission to send the Class a notice that would give class members the opportunity to comment on the settlement. The remaining defendants have indicated no opposition to the settlement. Based upon the record, including class plaintiff's motion and memorandum, the Court finds that the settlement should be preliminarily approved, and a settlement sub-class designated pursuant to Fed. R. Civ. P. 23(c)(4)(B) consisting of all class claims against the proposed settling defendant. Further, it is appropriate to notify class members of this settlement and their opportunity to comment thereon. Fed. R. Civ. Proc. 23(c)(2); Fed. R. Civ. P. 23(e). The Class is authorized to disseminate notice of the settlement to the Class, as proposed by the class plaintiff. The Court deems such notice adequate and orders plaintiff to provide proof of such notice to the Court.

IT IS SO ORDERED, this _____ day of _____, 2000.


_____
SOL BLATT, JR.
UNITED STATES DISTRICT JUDGE


_____
Charleston, South Carolina

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of Plaintiff's Motion for: (1) Preliminary Approval of Class Settlement with an Additional Defendant; and (2) Permission to Send a Class Notice; with Local Rule 7.02 Certification and Memorandum in Support thereof has been served on the below-listed counsel by United States Mail, first class postage pre-paid as follows:

Daniel A. Speights, Esquire
SPEIGHTS & RUNYAN
200 Jackson Avenue East
P.O. Box 685
Hampton, SC 29924
CO-LEAD COUNSEL FOR THE PLAINTIFF CLASS

Frank R. Ellerbe, III, Esquire
ROBINSON, McFADDEN, & MOORE
P.O. Box 944
Columbia, SC 29202-0944
ATTORNEY FOR A.P. GREEN REFRACTORIES COMPANY

William S. Davies, Jr.
NELSON, MULLINS, RILEY & SCARBOROUGH, LLP
P.O. Box 11070
Columbia, SC 29211
ATTORNEY FOR GENERAL REFRACTORIES COMPANY

Joseph B.G. Fay, Jr., Esquire
MORGAN, LEWIS & BOCKIUS LLP
2000 One Logan Square
Philadelphia, PA 19103-6993
ATTORNEY FOR UNITED STATES GYPSUM COMPANY

Steven W. Ouzts, Esquire
TURNER, PADGET, GRAHAM & LANEY, P.A.
1901 Main Street, 17th Floor
P.O. Box 1473
Columbia, SC 29202
ATTORNEY FOR UNITED STATES GYPSUM COMPANY

Bruce E. Miller, Esquire
BARNWELL, WHALEY, PATTERSON & HELMS
P.O. Drawer H
Charleston, SC 29402-0197
ATTORNEY FOR U.S. MINERAL PRODUCTS CO.

Paul F. Slater, Esquire
DANAHER, TEDFORD, LAGNESE & NEAL, P.C.
20 Exchange Place, 31st Floor
New York, NY 10005
ATTORNEY FOR U.S. MINERAL PRODUCTS CO.

Mark H. Wall, Esquire
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
P.O. Box 1808
Charleston, SC 29402
ATTORNEY FOR VIMASCO CORPORATION

Donald A. Cockrill, Esquire
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
300 North Main Street
P.O. Box 2757
Greenville, SC 29602
ATTORNEY FOR W.R. GRACE & CO.-CONN.

Allen S. Joslyn, Esquire
CAHILL, GORDON & REINDEL
80 Pine Street
New York, NY 10005
ATTORNEY FOR W.R. GRACE & CO.-CONN.

This 20th day of January, 2000.

By: _____