**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

In re:                                                Chapter 11

**W.R. Grace & Co., et al.**                          Case No. 01-01139 (JKF)

           Debtors.                          Jointly Administered

**TWENTY-THIRD QUARTERLY FEE APPLICATION OF STROOCK & STROOCK
& LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
<u>FROM OCTOBER 1, 2006 THROUGH DECEMBER 31, 2006</u>**

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **October 1, 2006 – December 31, 2006** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$484,693.50** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$10,038.19[1]** |
| Fees and Expenses of the Asbestos Issues Expert | **$336,058.12[2]** |

This is an: ☒ interim ☐ final application

This is the twenty-third quarterly application filed.

---

[1]  Upon further review, it has come to Stroock's attention that the December 2006 fee statement contains two charges for $260.00 in the Travel Expenses – Transportation expense category, where there should only have been one such charge. A credit for $260.00 will be reflected in Stroock's February 2007 monthly fee statement.

[2]  Upon further review, it has come to Navigant's attention that there are several charges aggregating to the sum of $69.96 which should not have been charged to the Debtors' estates. A credit for that amount will be reflected in Navigant's January 2007 bill.

**Attachment A**

**Monthly Interim Fee Applications**

| Date Filed | Period Covered | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01-7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02-04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| July 2, 2002<br>D.I.2324 | 05/01/02 –<br>05/31/02 | $74,910.75 | $2,9154.43 (Stroock)<br>$43,190.69 (Chambers) | $59,928.60 | $46,105.12 |
| August 5, 2002<br>D.I.2495 | 06/01/02 –<br>06/30/02 | $73,096.75 | $2,054.05 (Stroock)<br>$114,666.72 (Chambers) | $58,477.4011 | $116,720.77 |
| September 20, 2002<br>D.I.2720 | 07/01/02 –<br>07/31/02 | $90,903.27 | $1,250.79 (Stroock)<br>$11,996.25 (Chambers) | $72,722.61 | $13,274.04 |
| October 29, 2002<br>D.I.2898 | 08/01/02 –<br>08/31/02 | $93,151.25 | $11,539.51 (Stroock)<br>$5,046.70 (Chambers) | $74,521.00 | $16,586.21 |
| November 14, 2002<br>D.I.2981 | 09/01/02 -<br>09/30/02 | $96,613.25 | $15,567.77 (Stroock)<br>$771.50 (Chambers) | $77,290.60 | $16,339.27 |
| December 10, 2002<br>D.I.3129 | 10/1/02 –<br>10/31/02 | $68,404.00 | $2,956.54 (Stroock)<br>$1,780.75 (Chambers) | $54,723.20 | $4,737.29 |
| January 28, 2003<br>D.I.3286 | 11/1/02 –<br>11/30/02 | $75,345.50 | $8,712.16 (Stroock) | $60,276.40 | $8,712.16 |
| February 7, 2003<br>D.I.3349 | 12/1/02 –<br>12/31/02 | $27,683.50 | $13,332.14 (Stroock) | $22,146.80 | $13,332.14 |
| March 26, 2003<br>D.I.3552 | 1/1/03 –<br>1/31/03 | $88,139.00 | $1,210.11 (Stroock) | $70,511.20 | $1,210.11 |
| April 7, 2003<br>D.I.3626 | 2/1/03 –<br>2/28/03 | $76,313.00 | $2,022.78 (Stroock)<br>$1,077.80 (Chambers) | $61,050.40 | $3,100.58 |
| April 29, 2003<br>D.I.3718 | 3/1/03 –<br>3/31/03 | $60,163.50 | $6,191.15 (Stroock) | $48,130.80 | $6,191.15 |
| June 2, 2003<br>D.I. 3850 | 4/1/03 –<br>4/30/03 | $60,269.00 | $814.02 (Stroock)<br>$2,043.00 (Chambers) | $48,215.20 | $2,857.02 |
| July 1, 2003<br>D.I. 3983 | 5/1/03 –<br>5/31/03 | $111,990.50 | $691.84 (Stroock)<br>$3,830.50 (Chambers) | $89,592.40 | $10,522.34 |
| August 5, 2003<br>D.I. 4152 | 6/1/03 –<br>6/30/03 | $43,824.00 | $1,220.42 (Stroock)<br>$61,755.00 (Chambers) | $35,059.20 | $62,975.42 |
| September 4, 2003<br>D.I. 4381 | 7/1/03 –<br>7/31/03 | $79,090.50 | $2,301.33 (Stroock)<br>$14,274.25 (Chambers) | $63,272.40 | $16,575.58 |

SSL-DOCS1 1778182v2

|  |  | Payment Requested |  | Payment Approved |  |
|---|---|---|---|---|---|
| September 30, 2003 D.I. 4512 | 8/1/03 – 8/31/03 | $69,927.00 | $1,164.19 (Stroock) $12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003 D.I. 4625 | 9/1/03 – 9/30/03 | $69,409.50 | $1,076.94 (Stroock) $10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2003 D.I. 4843 | 10/1/03 – 10/31/03 | $96,980.50 | $3,800.45 (Stroock) $42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2004 D.I. 4976 | 11/1/03 – 11/30/03 | $66,428.50 | $1,225.38 (Stroock) $30,463.00 (Navigant f/k/a Chambers) | $53,142.80 | $31,688.38 |
| February 4, 2004 D.I. 5056 | 12/1/03 – 12/31/03 | $52,321.50 | $924.99 (Stroock) $27,005.00 (Navigant f/k/a Chambers) | $41,857.20 | $27,929.99 |
| March 17, 2004 D.I. 5309 | 1/1/04 – 1/31/04 | $65,980.50 | $1,917.93 (Stroock) $47,654.57 (Navigant f/k/a Chambers) | $52,784.40 | $49,572.50 |
| April 6, 2004 D.I. 5406 | 2/1/04 – 2/29/04 | $90,421.50 | $3,636.48 (Stroock) $35,492.50 (Navigant f/k/a Chambers) | $72,337.20 | $39,128.98 |
| April 28, 2004 D.I. | 3/1/04 – 3/31/04 | $103,524.00 | $5,567.34 (Stroock) | $82,819.20 | $5,567.34 |
| June 14, 2004 D.I. 5803 | 4/1/04 – 4/30/04 | $99,136.00 | $3,518.96 (Stroock) $1,515.00 (Navigant February) $49,667.00 (Navigant March) $80,307.11 (Navigant April) | $79,308.80 | $135,008.07 |
| July 2, 2004 D.I. 5917 | 5/1/04 – 5/31/04 | $134,324.50 | $2,409.97 (Stroock) $78,360.05 (Navigant May) | $107,459.60 | $80,770.02 |
| August 2, 2004 D.I. 6105 | 6/1/04 – 6/31/04 | $120,501.00 | $1,831.49 (Stroock) $62,625.00 (Navigant June) | $96,400.80 | $64,456.49 |

3

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 9, 2004<br>D.I. 6341 | 7/1/04 –<br>7/31/04 | $72,394.00 | $3,461.84 (Stroock)<br>$40,427.50 (Navigant<br>July) | $57,915.20 | $43,889.34 |
| September 23, 2004<br>D.I. 6444 | 8/1/04 –<br>8/31/04 | $70,457.00 | $1,764.40 (Stroock) | $56,365.60 | $1,764.40 |
| October 14, 2004<br>D.I 6625 | 9/1/04 –<br>9/30/04 | $83,903.50 | $1,535.61 (Stroock)<br>$27,142.00 (Navigant<br>August) | $67,122.80 | $28,677.61 |
| December 3, 2004<br>D.I. 7086 | 10/1/04 –<br>10/31/04 | $200,155.50 | $1,368.18 (Stroock)<br>$ 24,659.00 (Navigant<br>September) | $160,124.40 | $26,027.18 |
| January 7, 2005<br>D.I. 7481 | 11/1/04 –<br>11/30/04 | $218,608.50 | $14,019.09 (Stroock)<br>$25,102.80 (Navigant<br>October)<br>$27,972.34 (Navigant<br>November) | $174,886.80 | $67,094.23 |
| February 2, 2005<br>D.I. 7667 | 12/1/04 –<br>12/31/04 | $235,503.70 | $10,442.92 (Stroock)<br>$62,687.97 (Navigant<br>December) | $188,402.96 | $73,130.89 |
| March 15, 2005<br>D.I. 8026 | 1/1/05 –<br>1/31/05 | $187,168.00 | $4,411.55 (Stroock)<br>$15,686.00 (Navigant<br>January) | $149,734.40 | $20,097.55 |
| April 1, 2005<br>D.I. 8155 | 2/1/05 –<br>2/28/05 | $108,180.25 | $8,102.85 (Stroock)<br>$18,303.37 (Navigant<br>February) | $86,544.20 | $26,406.22 |
| April 29, 2005<br>D.I. 8305 | 3/1/05~ –<br>3/31/05 | $56,941.25 | $287.23 (Stroock)<br>$6,114.86 (Navigant<br>March) | $45,553.00 | $6,402.09 |
| June 6, 2005<br>D.I. 8562 | 4/1/05-<br>4/30/05 | $127,695.00 | $3,531.45 (Stroock)<br>$20,129.06 (Navigant<br>April) | $102,156.00 | $23,660.51 |
| June 28, 2005<br>D.I. 8704 | 5/1/05-<br>5/31/05 | $98,569.00 | $4,871.74 (Stroock) | $78,855.20 | $858.21 |

4

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| August 3, 2005 D.I. 9135 | 6/1/05- 6/30/05 | $114,903.75 | $4,871.74 (Stroock) $34,075.28 (Navigant June) | $91,923.00 | $38,947.02 |
| September 8, 2005 D.I. 9356 | 7/1/05 – 7/31/05 | $117,780.75 | $2,088.44 (Stroock) $2,211.00 (Navigant) | $94,224.60 | $4,299.44 |
| October 4, 2005 D.I. 9565 | 8/1/05 – 8/31/05 | $106,796.25 | $5,046.99 (Stroock) $18,550.00 (Navigant) | $85,437.00 | $23,596.99 |
| November 1, 2005 D.I. 10951 | 9/1/05 – 9/30/05 | $67,697.50 | $1,399.68 (Stroock) $11,197.50 (Navigant) | $54,158.00 | $12,597.18 |
| November 29, 2005 D.I. 11202 | 10/1/05 – 10/31/05 | $98,216.75 | $1,611.30 (Stroock) $11,582.50 (Navigant) | $78,573.40 | $13,193.80 |
| January 9, 2006 D.I. 11507 | 11/1/05 – 11/30/05 | $104,348.00 | $2,847.45 (Stroock) $71,598.50 (Navigant) | $83,478.40 | $74,445.95 |
| January 30, 2006 D.I. 11655 | 12/1/05 – 12/31/05 | $96,855.00 | $1,379.53 (Stroock) $20,317.49 (Navigant) | $77,484.00 | 21,697.02 |
| March 1, 2006 D.I. 11921 | 1/1/06 – 1/31/06 | $73.383.00 | $1,810.85 (Stroock) $14,124.01 (Navigant) | $58.706.40 | $15,934.86 |
| March 28, 2006 D.I. 12134 | 2/1/06 – 2/28/06 | $105,083.75 | $1,434.62 (Stroock) $25,971.70 (Navigant) | $84.067.00 | $27,406.32 |
| May 2, 2006 D.I. 12354 | 3/1/06 – 3/31/06 | $145,189.50 | $2,512.81 (Stroock) $25,838.37 (Navigant) | $116,151.60 | $28,351.18 |
| May 31, 2006    DI. 12558 | 4/1/2006 – 4/30/2006 | $116,817.00 | $2,141.42 (Stroock) $7,425.00 (Navigant) | $93,453.60 | $9,566.42 |
| July 6, 2006 D.I. 12748 | 5/1/2006 – 5/31/2006 | $121,304.50 | $1,838.71 (Stroock) $17,493.75 (Navigant) | $97,043.60 | $19,332.46 |
| August 1, 2006 D.I. 12899 | 6/1/2006 – 6/30/2006 | $94,856.50 | $1,869.66 (Stroock) $38,548.75 (Navigant) | $75,885.20 | $40,418.41 |
| August 30, 2006 D.I. 13117 | 7/1/2006 – 7/31/2006 | $97,397.25 | $496.76 (Stroock) $30,280.00 (Navigant) | $77,917.80 | $30,776.76 |
| October 2, 2006 D.I. 13336 | 8/1/2006 – 8/31/2006 | $131,856.25 | $98.34 (Stroock) $98,317.50 (Navigant) | $105,485.00 | $98,415.84 |

5

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| November 2, 2006 D.I. 13559 | 9/1/2006 – 9/30/2006 | $150,960.00 | $4,147.01 (Stroock) $91,179.11 (Navigant) | $120,768.00 | $95,326.12 |
| November 29, 2006 D.I. 13838 | 10/1/06 - 10/31/06 | $196,223.50 | $915.14 (Stroock) $147,374.20 (Navigant) | $156,978.89 | $148,289.34 |
| January 12, 2007 D.I. 14292 | 11/1/06 11/30/06 | $188,638.00 | $3,370.16 (Stroock) $133,438.70 (Navigant) | $150,910.40 | $136,808.86 |
| January 29, 2007 D.I. 14415 | 12/1/06 – 12/31/06 | $99,832.00 | $5,752.89 (Stroock) $55,245.22 (Navigant) | | |

6

**Quarterly Fee Applications**

| Date Filed | Period Covered | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 (First) | 4/12/01- 6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 (Second) | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 (Third) | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43* | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 (Fourth) | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60* | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 (Fifth) | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78* | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 (Sixth) | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45* | $224,534.21[1] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 (Seventh) | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75* | $136,886.40[2] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |

---

[*]    These amounts relate to the Committee's Asbestos Issues Expert.

[1]    Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[2]    Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

7

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 20, 2003<br>D.I. 3815<br>(Eighth) | 1/1/03 –<br>3/31/03 | $224,358.50 | $9,424.04<br>$1,077.80* | $224,615.50[3] | $9,424.04<br>(Stroock)[3]<br>$1,077.80<br>(Chambers)[3] |
| August 29, 2003<br>D.I. 4357<br>(Ninth) | 4/1/03 –<br>6/30/03 | $215,903.50 | $2,726.28<br>$67,628.50* | $215,903.50[4] | $2,726.28<br>(Stroock)[4]<br>$67,628.50<br>(Chambers)[4] |
| December 5, 2003<br>D.I. 4778<br>(Tenth) | 7/1/03 –<br>9/30/03 | $218,222.00 | $4,339.46<br>$36,865.19* | $218,222.00[5] | $4,339.46<br>(Stroock)[5]<br>$36,865.19<br>(Chambers)[5] |
| March 2, 2004<br>D.I. 5212<br>(Eleventh) | 10/1/03 –<br>12/31/03 | $215,718.50 | $5,950.82<br>$100,349.50* | $215,718.50[6] | $5,922.67<br>(Stroock)[6]<br>$100,349.50<br>(Chambers)[6] |
| May 18, 2004<br>D.I. 5597<br>(Twelfth) | 1/1/04 –<br>3/31/04 | $254,857.00 | $9,965.36<br>$83,147.07* | $254,857.00[7] | $9,965.36<br>(Stroock)[7]<br>$83,147.07<br>(Navigant)[7] |
| August 26, 2004<br>D.I. 6269<br>(Thirteenth) | 4/1/04 –<br>6/30/04 | $353,629.50 | $7,760.42<br>$272,474.16* | $353,629.50[8] | $7,760.42<br>(Stroock)[8]<br>$272,474.16<br>(Navigant)[8] |

[3]   Court Order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

[4]   Amended Court Order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

[5]   Court Order dated April 26, 2004 approved fees in the amount of $218,222.00 and expenses in the amount of $41,204.65.

[6]   Court Order dated June 16, 2004 approved fees in the amount of $215,718.50 and expenses in the amount of $106,272.17.

[7]   Court Order dated September 27, 2004 approved fees in the amount of $254,857.00 and expenses in the amount of $93,011.96.

[8]   Court Order dated January 25, 2005 approved fees in the amount of $353,629.50 and expenses in the amount of $280,234.58.

8

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| November 10, 2004 D.I. 6871 (Fourteenth) | 7/1/04 – 9/30/04 | $226,702.50 | $6,705.08 $67,569.50* | $226,702.50[9] | $6,705.08 (Stroock)[9] $67,569.50 (Navigant)[9] |
| February 22, 2005 D.I. 7851 (Fifteenth) | 10/1/04 – 12/31/04 | $653,133.20 | $25,830.19 $140,422.11* | $648,355.70[10] | $25,830.19 (Stroock)[10] $140,422.11 (Navigant)[10] |
| May 16, 2005 D.I. 8468 (Sixteenth) | 1/1/05- 3/31/05 | $352,289.50 | $12,746.23 $40,104.23* | $349,644.00 | $12,746.23 (Stroock)[11] $40,104.23 (Navigant) |
| August 19, 2005 D.I. 9225 (Seventeenth) | 4/1/-5 – 6/30/05 | $340,821.25 | $9,261.40 $54,204.34* | $340,096.25[12] | $9,261.40 (Stroock) $54,204.34 (Navigant) |
| November 18, 2005 D.I. 11118 (Eighteenth) | 7/1/05 – 9/30/05 | $291,843.50 | $8,534.71 $31,958.50 | $291,843.50[13] | $8,534.71 (Stroock) $31,958.50 (Navigant) |
| February 15, 2006 D.I. 11798 (Nineteenth) | 10/1/05 – 12/31/05 | $299,419.75 | $5,838.28 $103,498.49 | $299,419.75[14] | $5,838.69 (Stroock $103,498.49 (Navigant) |

---

[9]   Court Order dated March 22, 2005 approved fees in the amount of $226,702.50 and expenses in the amount of $74,274.58.

[10]  Court Order dated June 29, 2005 approved fees in the amount of $648,335.70 and expenses in the amount of $166,252.30.

[11]  Court Order dated September 27, 2005 approved fees in the amount of $349,644.00 and expenses in the amount of $52,850.46.

[12]  Court Order dated December 19, 2005 approved fees in the amount of $340,096.25 and expenses in the amount of $63,465.74.

[13]  Court Order dated March 24, 2006 approved fees in the amount of $291,843.50 and expenses in the amount of $40,493.21.

[14]  Court Order dated June 16, 2006 approved fees in the amount of $299,419.75 and expenses in the amount of $109,337.18.

9

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 26, 2006 D.I. 12533 (Twentieth) | 1/1/2006 – 3/31/2006 | $323,566.25 | $5,758.28 $65,934.98 | $323,451.25[15] | $5,758.28 (Stroock) $64,810.58 (Navigant) |
| August 17, 2006 D.I. 13006 (Twenty-First) | 4/1/2006 – 6/30/2006 | $332,978.00 | $5,849.79 $63,467.50 | $332,978.00[16] | $5,849.70 (Stroock) $63,467.50 (Navigant) |
| November 29, 2006 D.I. 13835 (Twenty-Second) | 7/1/2006 – 9/30/2006 | $380,213.50 | $4,742.11 $219,776.61 | | |

---

[15] Court Order dated September 25, 2006 approved fees in the amount of $323,451.25 and expenses in the amount of $71,130.16.

[16] Court Order dated December 18, 2006 approved fees in the amount of $332,978.00 and expenses in the amount of $69,317.29. .

10

WR GRACE & CO
ATTACHMENT B
OCTOBER 1, 2006 - DECEMBER 31, 2006

|  | Hours | Rate | Amount | No. of Years in Position |
|---|---|---|---|---|
| **Partners** |  |  |  |  |
| Kruger, Lewis | 96.3 | $ 825 | $    79,447.50 | 35 |
| Pasquale, Kenneth | 238.6 | 650 | 155,090.00 | 7 |
| Wintner, Mark | 0.7 | 745 | 521.50 | 26 |
|  |  |  |  |  |
| **Associates** |  |  |  |  |
| Cutler, Ilana | 63.4 | 250 | 15,850.00 | 1 |
| Gutierrez, James S. | 44.1 | 355 | 15,655.50 | 3 |
| Holob, Marissa J. | 0.2 | 435 | 87.00 | 1 |
| Krieger, Arlene G. | 308.1 | 575 | 177,157.50 | 21 |
| Strauss, Joseph E. | 29.9 | 530 | 15,847.00 | 6 |
|  |  |  |  |  |
| **Paraprofessionals** |  |  |  |  |
| Holzberg, Ethel H. | 63.3 | 225 | 14,242.50 | 34 |
| Lollie, Toya | 26.9 | 150 | 4,035.00 | 1 |
| Mohamed, David | 119.6 | 150 | 17,940.00 | 17 |
|  |  |  |  |  |
| **Sub Total** | 991.1 |  | $ 495,873.50 |  |
| **Less 50% Travel** | (17.4) |  | (11,180.00) |  |
| **Total** | 973.7 |  | $ 484,693.50 |  |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.**[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |

**TWENTY-THIRD QUARTERLY FEE APPLICATION OF STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., et al., FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM OCTOBER 1, 2006 THROUGH DECEMBER 31, 2006**

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation. Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

accordance with the Administrative Fee Order (defined below) for interim allowance of compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents as follows:

## INTRODUCTION

1.      By this application (the "Application"), Stroock seeks (i) an interim allowance of compensation for the professional services rendered by Stroock as counsel for the Committee for the period from October 1, 2006 through December 31, 2006 (the "Compensation Period") in the aggregate amount of $484,693.50 representing 781.3 hours of professional services and 209.8 hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Stroock during the Compensation Period in connection with the rendition of such professional services and paraprofessional services in the aggregate amount of $10,038.19 as well as the fees and expenses of the asbestos issues expert employed by the Committee pursuant to the Court's June 22, 2001 Order Authorizing the Retention of Experts (the "Asbestos Issues Expert") in respect of services rendered in the months of October, November and December of 2006 in the aggregate amount of $336,058.12.

2.      Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

## BACKGROUND

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code and have continued in the management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

2

Bankruptcy Code.  Pursuant to an order of the Court, the Debtors' chapter 11 cases have been procedurally consolidated and are being jointly administered.

4.      The Debtors operate a world-wide specialty chemicals and materials business and employ approximately 3860 full and part-time employees.  On a consolidated basis, for the fiscal year 2000, Grace reported a net loss of $89.7 million[2] from $1.59 billion in net revenues.  The Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor subsidiaries and affiliates.

5.      On April 12, 2001, the United States Trustee formed the Committee.  During the first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter 11 cases.  The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP (n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel.  On December 3, 2003, a second amended notice of appointment of the Committee was filed by the United States Trustee. On July 10, 2006, a third amended notice of appointment of the Committee was filed by the United States Trustee.

6.      The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims and asbestos-related property damage claims against the Debtors (collectively, the "Asbestos Claim

---

[2]    The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related charge to earnings recorded in the fourth quarter of 2000.

3

Committees"). On June 18, 2001, the United States Trustee appointed an official committee to represent the interests of equity security holders of the Debtors (the "Equity Committee").

7.      By order dated May 24, 2004, the Court authorized the appointment of a legal representative for future asbestos claimants (the "Futures Representative").

8.      By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001. The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

9.      This is the twenty-third quarterly interim application Stroock has filed with the Court for an allowance of compensation and reimbursement of expenses for services rendered to the Committee. This Application is submitted pursuant to the terms of the Administrative Order Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, approved by the Court on May 3, 2001 as amended by order dated April 19, 2002 (collectively, the "Administrative Fee Order").

10.      In accordance with the procedures established by the Administrative Fee Order, Stroock had, at the time of filing this Application, received payment from the Debtors for 80% of the fees and 100% of Stroock's expenses requested, and not objected to, in the October 2006 fee statement encompassed within this Compensation Period. Stroock has not yet received payment for the fees and expenses requested in the November 2006 fee statement for which a certificate of no objection has been filed, or for the December 2006 fee statement. In addition, Stroock has received payment from the Debtors in the amount of $147,374.20, representing the fees and

expenses of Navigant Consulting, Inc. ("Navigant") formerly known as Chambers Associates, the Asbestos Issues Expert for the Committee, for the month of October 2006, but has not received payment in respect of the fees and expenses of the Asbestos Issues Expert for the months of November and December 2006. Applicant has received no other payments and no promises for payment from any source for services rendered in connection with these cases for the months encompassing this Compensation Period other than as immediately set forth above. There is no agreement or understanding between the Applicant and any other person (other than members of Stroock) for the sharing of compensation to be received for the services rendered in these cases.

11.    As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit "A," all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

## SUMMARY OF SERVICES RENDERED

12.    Since being retained by the Committee, Stroock has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtors' estates. The variety and complexity of these cases and the need to act or respond on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by personnel from several legal disciplines, on an as-needed basis, including in certain instances, working into the evening and on weekends.

13.    Stroock maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee. Such time

records were made contemporaneously with the rendition of services by the person rendering

such services and in the ordinary course of Stroock's practice, and are presented in compliance

with Delaware Local Rule 2016-2(d) amended effective as of February 1, 2006. A compilation

showing the name of the attorney or paraprofessional, the date on which the services were

performed, a description of the services rendered, and the amount of time spent in performing the

services during the Compensation Period is annexed hereto as Exhibit "B". In addition, Exhibit

"C" hereto contains a summary of the hours expended by each of the attorneys and

paraprofessionals during the Compensation Period, their normal hourly rates, and the value of

their services.

16.     Stroock also maintains records of all actual and necessary out-of-pocket expenses

incurred in connection with the rendition of its professional services, all of which are also

available for inspection. A schedule of the categories of expenses and amounts for which

payment is requested is annexed hereto as Exhibit "D".

15.     Stroock respectfully submits that the professional services that it rendered on

behalf of the Committee were necessary and have directly benefited the creditor constituents

represented by the Committee and have contributed to the effective administration of these cases.

16.     The following summary of the services rendered during the Compensation Period

is not intended to be a detailed description of the work performed, as those day-to-day services

and the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is

merely an attempt to highlight certain of these areas in which services were rendered to the

6

Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

### Claim Analysis Objection, Resolution & Estimation (Asbestos) -- Category 0003

17.     As reflected in prior compensation applications, in mid-November 2004, the Debtors filed a reorganization plan and numerous related pleadings including their motion seeking the estimation of asbestos claims and the establishment of a schedule and procedures for carrying out the estimations (the "Estimation Motion"), and their motion to establish post-confirmation litigation protocols for liquidating asbestos claims (the "Case Management Motion").

18.     During a prior compensation period, the Court approved a form of case management order ("CMO") to govern the pre-confirmation estimation of asbestos personal injury claims (the "PI CMO") and the related form of questionnaire (the "Questionnaire") to be used by asbestos personal injury claimants who had commenced pre-petition litigation against the Debtors (the "PI Pre-Petition Litigation Claimants") and two case management orders for property damage claims the ("PD CMOs"); one to govern the Debtors' claims objection process and the other to govern the pre-confirmation estimation of property damage claims ("PD claims"). July 12, 2006 was the deadline set for Pre-Petition Litigation Claimants to return completed Questionnaires. November 15, 2006 was the deadline set for PI-Pre-Petition Litigation Claimants to file proofs of claim.

19.     During this Compensation Period, Stroock attended to numerous estimation and related discovery matters including (i) Grace's production to the asbestos personal injury

7

committee (the "Asbestos PI Committee"), (ii) testimony and depositions previously given in connection with the Sealed Air litigation, (iii) the numerous expert reports filed during the Compensation Period, (iv) the Debtors' motions and supplemental pleadings seeking to compel certain Pre-Petition Litigation Claimants to respond to the Questionnaire and/or supplement PIQs previously filed (the "PIQ Motions"), and the numerous objections and responses filed in opposition to the Debtors' PIQ Motions, (v) the Asbestos PI Committee's and Futures Representative's motions to (a) compel production of documents concerning the Debtors' internal evaluation of asbestos claims filed against them and whether to settle or litigate those claims and (b) compel the production of the Debtors' actuarial and certain other estimation documentation and Debtors' motion for a protective order and other responses thereto; (vi) Debtors' pleadings in support of their proposed protocol to obtain original x-rays from non-mesothelioma malignant cancer claimants and the many objections and responses filed in opposition thereto; and (vii) all PD expert designations and reports, and Anderson Memorial related pleadings, and prepared for and attended numerous conference calls with all parties held in connection with such matters.

In addition, during this Compensation Period, Stroock prepared for and attended the depositions of Drs. Gaziano and Segarra and held a number of estimation-related discussions and meetings with Navigant, the Committee's asbestos-issues consultant, and with representatives for the Debtors and Equity Committee.

Further, during this Compensation Period, Judge Fitzgerald issued a memorandum decision and order (the "ZAI Decision") on the ZAI-related cross-motions for summary judgment previously filed by the Debtors and the ZAI Claimants. Prior to the close of this

8

Compensation Period, the ZAI Claimants appealed the ZAI Decision to the District Court and

filed a motion for leave to appeal. Stroock reviewed the Court's lengthy Decision, related

appellate filings and documentation and prepared memoranda for the Committee on this matter.

Stroock has expended 422.2 hours on this category for a fee of $234, 314.50.

### Business Operations -- Category 0013

20.     During this Compensation Period, Stroock reviewed Capstone's report on the

Company's third quarter 2006 operations and the Company's September 2006 financial

information package. Stroock also continued to communicate with Capstone regarding the status

of an acquisition the Company has been considering and regarding a sale of a business unit.

Stroock has expended 4.8 hours on this category for a fee of $2,885.00.

### Case Administration -- Category 0014

21.     As reported in prior monthly compensation applications, these chapter 11 cases

were reassigned to District Court Judge Alfred Wolin in November 2001 and referred to

Bankruptcy Court Judge Judith Fitzgerald, and then reassigned to District Court Judge Ronald L.

Buckwalter following Judge Wolin's recusal from these cases.

22.     During this Compensation Period, Stroock continued to closely monitor the items

on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each

of the pending adversary proceedings, to ensure that the Committee was fully informed about all

pending motions and adversary proceedings and that Stroock would be ready to timely respond

on behalf of the Committee, as might be applicable. Stroock continued to engage the Debtors'

counsel and Capstone on an on-going basis with respect to pending matters and information

requests. In addition, during this Compensation Period, Stroock and the Debtors' representatives

9

engaged in a number of conference calls during which pending motions, Court hearings and

upcoming matters were discussed, as were various estimation-related issues.  Some of those

services are in this Category, and others are in Category 0017 (Committee, Creditors).  Also,

during this Compensation Period, Stroock prepared a response to the Fee Auditor's initial report

on Stroock's Twenty-First Quarterly Fee Application, and a response to the inquiry received on

such quarterly fee application from the United States Trusteee's office.  Stroock has expended

158.9 hours on this category for a fee of $40,374.50.

### Claims Analysis, Objection and Resolution (Non-Asbestos) -- Category 0015

23.    During this Compensation Period, the Debtors filed (1) two notices of claim

settlements whereby they sought authorization to participate in two insurance settlement funds;

one established by Zurich American Insurance Company and the other by American

International Group Inc. and affiliates, pursuant to which the Debtors would be required to

execute general releases and (2) a stipulation seeking authorization to reinstate a portion of the

proof of claim of a former officer of the Debtors expunged in error and to refer such claim to the

ADR program established in these cases.  Stroock reviewed the underlying related

documentation, discussed those settlements and the basis for the stipulation with the Debtors'

counsel and requested additional information in order to evaluate the Debtors' proposed

participation in the insurance settlement funds.  In addition, during this Compensation Period,

Stroock reviewed the three omnibus objections to claims filed by the Debtors.  Stroock has

expended 16.4 hours on this category for a fee of $9,430.00.

**Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017**

24.    During this Compensation Period, Stroock communicated with the members of the full Committee through memoranda and telephone calls.  In order to keep the Committee fully informed of all of the pending matters in these cases, and thus enable the Committee to take informed positions on those issues, Stroock reviewed and summarized the motions, other pleadings and notices filed by the Debtors and other parties in interest in these cases and the objections and responses filed, raised issues the Committee should be aware of, made recommendations to the Committee concerning appropriate actions to be taken with regard to the pleadings and communicated with members of the Committee regarding the positions to be taken.  In addition, Stroock engaged counsel and other representatives for the Debtors, and other parties and movants, as applicable, with the Committee's questions, concerns and comments, negotiated whenever and to the extent possible consensual resolutions of outstanding issues and acceptable forms of proposed orders, stipulations and settlement agreements and advised the Committee of the Court's hearings and rulings.

25.    The motions, settlement agreements, and other materials Stroock reviewed during this Compensation Period, prepared memoranda to the Committee on and discussed with the Committee, as applicable, included, among other matters, (i) the continued negotiation among Lloyd's, the Debtors, the Asbestos Claim Committees, the Futures Representative and the Libby Claimants over a revised settlement agreement and mutual release with underwriters at Lloyd's London, and the parties' ultimate agreement on a foirm of Settlement Agreement and Escrow Agreement, (ii) the Debtors' proposals to settle insurance – related claims with Zurich American

11

Insurance and American International Group, Inc., and (iii) Debtors' proposed stipulation with Robert Locke.

26.    In addition, during this Compensation Period, Stroock prepared memoranda to the Committee discussing the hearings held before Judge Fitzgerald, addressing many of the estimation-related pleadings identified in Category 0003-Claims Analysis Objection, Resolution and Estimation (Asbestos), the appeals taken from the Court's order extending exclusivity by the Asbestos Claim Committees and the Futures Representative, and the Committee's participation with the Debtors and the Equity Committee in responding thereto.  Further during this Compensation Period, Stroock prepared for and conducted an in person meeting with the Committee and Navigant, during which various PI Estimation and plan-related matters were discussed.

27.    Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions and express the Committee's views regarding the issues which arise in these cases, to support the establishment of appropriate processes for the estimation of the Debtors' asbestos liabilities, and participate in the estimation proceedings and in the preparation of a plan providing appropriate treatment for the creditors represented by the Committee.  Stroock has expended 94.2 hours on this category for a fee of $46,883.00.

## Fee Application, Applicant -- Category 0018

28.    During this Compensation Period, Stroock prepared its fee statements for the months of September 2006, October 2006, and November 2006, and related notices, affidavits of service and certifications of no objection.  Stroock also prepared its Twenty-Second Quarterly

12

Fee Application covering the period from July 1, 2006 through September 30, 2006 (the "Prior

Compensation Application"), including a narrative section summarizing the services rendered

during that period by Stroock and numerous fee and expense schedules, as required by the

Administrative Fee Order entered by the Court.  Stroock has expended 72.6 hours on this

category for a fee of $23,560.00.

### Creditor Inquiries -- Category 0019

29.     During this Compensation Period, Stroock responded to numerous inquiries from

unsecured creditors with respect to the status of these cases, the estimation of asbestos liabilities

and related issues, the extension of the Debtors' exclusivity and other plan-related matters, the

Court's ZAI Decision and the results of and matters addressed during the hearings held during

this Compensation Period.  Stroock has expended 16.8 hours on this category for a fee of

$10,945.00.

### Fee Application, Others -- Category 0020

30.     During this Compensation Period, Stroock prepared notices, affidavits of service

and certifications with respect to Capstone's monthly fee statements for the months of August

2006 and September 2006 and with respect to Capstone's eleventh quarterly fee application.

Stroock also attended to the Fee Auditor's final reports on certain professionals' applications and

to the fee applications of other professionals retained in these cases.  Stroock has expended 13.7

hours on this category for a fee of $4,317.50.

### Employee Benefits, Pension -- Category 0021

31.     As reported in a prior compensation application, the Debtors filed a motion

seeking authorization to make minimum funding contributions in aggregate amounts in excess of

13

$100.00 million to their defined benefit plans during the period from July 15, 2006 through April 15, 2007 (the "Pension Funding Motion"). In connection with the agreement of the major parties-in-interest to most of the relief sought in the Pension Funding Motion, the Debtors agreed to provide certain additional information to the official committees and the futures representative, including a study on the Debtors' pension and benefit plans to be prepared by a pension consultant retained by the Debtors. During this Compensation Period, Stroock received and reviewed that analysis and related materials and discussed the analysis with Capstone and representatives for the Debtors. Stroock has expended 3.4 hours on this category for the fee of $2,074.00.

### Environmental Matters/Regulations/Litigations -- Category 0022

32.        As reported in the prior compensation applications, in March 2001, the United States sued the Debtors in the United States District Court for the District of Montana to recover response costs the Environmental Protection Agency incurred through December 2001 in cleaning up the Libby mine site and to obtain a determination that Grace would be liable for future costs. In December 2002, the Montana District Court issued a decision granting the federal government summary judgment on the liability issue and after a trial issued another decision awarding the federal government approximately $54.5 million. On appeal, the Ninth Circuit Court of Appeals affirmed the Montana District Court's decisions. The Debtors filed a petition for a writ of certiorari to the Supreme Court. During this Compensation Period, the Supreme Court issued its decision which denied the Debtors' petition for certiorari. Stroock attended to the Supreme Court's decision. Stroock has expended 0.5 hours on this category for a fee of $287.50.

14

**Insurance – Category 0028**

33.     As reported in the prior compensation applications, the Debtors informed Stroock

that they had negotiated a settlement with underwriters at Lloyds, London ("Lloyds") with

respect to certain policies of insurance and prior insurance-related agreements, pursuant to which

settlement $90.0 million would be paid into an escrow account, and thereafter to the Debtors or

as provided for in a confirmed reorganization plan.  The Debtors subsequently filed their motion

with the Court seeking approval for the settlement, which Stroock reviewed and discussed with

the Debtors' representatives and with the Committee.  A number of objections were filed to the

Lloyd's motion as the parties were initially unable to reach agreement on either whether the

proposed settlement was beneficial to these estates, or on the terms of the settlement agreement.

34.     During this Compensation Period, Stroock attended to each of the drafts of the

settlement agreement and the proposed revised escrow agreement circulated for consideration

and the comments and further changes requested by each of the parties, and prepared comments

on and proposed textual changes to the settlement drafts setting forth the Committee's position.

Stroock also exchanged multiple memoranda with counsel for the Debtors and Lloyds,

participated in a conference call with representatives for all parties and continued to advise the

Committee of the status of the various parties' positions.  Before the end of this period, final

forms of these documents, as agreed upon by all of the parties, were submitted to the Court and

approved.  Stroock has expended 48.8 hours on this category for a fee of $30,217.50.

**Travel – Non Working -- Category 0035**

35.     Stroock's fees in this category during this Compensation Period relate to an

attorney traveling (i) from New York for the omnibus hearing before Judge Fitzgerald on

15

October 23, 2006 in Wilmington, DE, (ii) from and to New York for the omnibus hearing before

Judge Fitzgerald on November 20, 2006 in Wilmington, DE, (iii) from and to New York for

hearings on PI Estimation issues on December 5, 2006 in Pittsburgh, PA, and (iv) from and to

New York for the depositions of (a) Dr. Gaziano in Charleston W. Virginia in mid-October 2006

and (b) Dr. Segarra in Biloxi, MS in November 2006.  Stroock has expended 34.8 hours on this

category for a fee of $22,360.00 for which Stroock is seeking payment in the amount of

$11,180.00.

### Plan and Disclosure Statement -- Category 0036

36.      As reported in the prior compensation application, Judge Fitzgerald extended the

Debtors' exclusive period to file a plan through the July 24, 2007 omnibus hearing, and at the

end of the period an appeal was taken by the Asbestos Claim Committees and the Futures

Representative to the Court's exclusivity order.

37.      During this Compensation Period, Stroock reviewed all of the pleadings relating

to the appeal of the Court's exclusivity extension order including (i) appellants' designation of

items for the record on appeal and statement of issues, (ii) the Debtors' counter-designation, (iii)

the appellants' motion to have the appeal heard on an expedited basis and the Debtors' response

thereto, and (iv) appellants' brief on appeal.  Stroock attended to the issues raised by the appeal

and as a co-proponent with the Debtors and the Equity Committee of the Debtors' plan of

reorganization on file, participated in the preparation of the appellees' brief by reviewing and

providing comments on each draft of the brief circulated.

16

38.     Further during this Compensation Period, Stroock discussed plan-related

information with the Committee and Capstone and attended to Capstone's revised recovery

analyses.  Stroock expended 46.2 hours on this category for a fee of $30,587.50.

### Hearings -- Category 0037

39.     During this Compensation Period, Judge Fitzgerald held three omnibus hearings;

two in Wilmington, DE and one in Pittsburgh, PA and also held two additional hearings, which

as described elsewhere in this Compensation Application addressed a variety of PI Estimation,

and PD litigation-related matters and issues.  Stroock reviewed each of the agenda notices and all

relevant pleadings, orders, stipulations and other documentation in advance of the hearings.

Stroock prepared for and attended the hearings, and advocated the Committee's positions, as

appropriate.  After the hearings, Stroock, as reflected elsewhere in the Application, prepared

memoranda informing the Committee of the arguments made at, and the results of, the hearings.

During this Compensation Period, the Court also held two hearings relating to the adversary

proceeding commenced by the Debtors against National Union Insurance Company, and

specifically the motion by certain asbestos claimants' law firms for judgment against National

Union.  Stroock expended 57.7 hours on this category for a fee of $37,580.00.

### Tax Issues – Category 0047

40.     As reported in the prior compensation application, the Debtors filed a motion

seeking approval for a settlement with the Internal Revenue Service, of tax liabilities asserted in

an amount in excess of $60.0 million plus interest.  Stroock reviewed the pleadings, participated

in conference calls with Debtors' representatives to discuss the settlement and address the

Committee's questions and concerns, attended to additional information provided by Debtors'

17

counsel and, as reflected elsewhere in that prior application, advised the Committee of this matter. During this Compensation Period, Stroock informed Debtors' counsel of the Committee's position on this settlement. Stroock expended 0.1 hours on this category for a fee of $57.50.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

41.    The factors to be considered in awarding attorneys fees have been enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547 F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts. Stroock respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

The Time and Labor Required. The professional services rendered by Stroock on behalf of the Committee have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the complex issues encountered by the Committee with skill and dispatch. Occasionally, Stroock has been required to perform these services under significant time constraints requiring work late into the evening and on weekends. The services rendered by Stroock were performed efficiently, effectively and economically.

The Novelty and Difficulty of Questions. Novel and complex issues have already arisen in the course of these Chapter 11 cases, and it can be anticipated that other such issues will be encountered. In this case, as in

18

many others in which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

The Skill Requisite to Perform the Legal Services Properly.  Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the resolution of issues, are and will continue to contribute to the maximization of the distributions to the Debtors' unsecured creditors.

The Preclusion of Other Employment by Applicant Due to Acceptance of the Case.  Due to the size of Stroock's insolvency department, Stroock's representation of the Committee has not precluded its acceptance of new clients.  However, the volume of the matters needing attention on a continuing basis has required several of the attorneys to commit significant portions of their time to these cases.

The Customary Fee.  The fee sought herein is based upon Stroock's normal hourly rates for services of this kind.  Stroock respectfully submits that the fee sought herein is not unusual given the magnitude and complexity of these cases and the time expended in attending to the representation of the Committee, and is commensurate with fees Stroock

19

has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

Whether the Fee is Fixed or Contingent.  Pursuant to §§ 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed under § 1103 of the Code are contingent pending final approval by this Court, and are subject to adjustment dependent upon the services rendered and the results obtained.

Time Limitations Imposed by Client or Other Circumstances.  As already indicated, Stroock has attended to the various issues arising in these cases. Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

The Amount Involved and Results Obtained.  Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

The Experience, Reputation and Ability of the Attorneys.  Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including: Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel

20

Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation,
Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The
Charter Company, Federated Department Stores, G. Heileman Brewing
Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc.,
Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation,
Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc.,
Flushing Hospital and Medical Center, Planet Hollywood International,
Anchor Glass Container Corporation, Beloit Corporation in the
Harnischfeger Industries Chapter 11 Cases, RSL COM U.S.A. Inc, USG
Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings.
Stroock's experience enables it to perform the services described herein
competently and expeditiously.  In addition to its expertise in the area of
corporate reorganization, Stroock has already frequently called upon the
expertise of its partners and associates in the litigation, ERISA, tax,
environmental and intellectual property law areas to perform the wide
ranging scope of the legal work necessitated by these cases.

The "Undesirability" of the Case.  These cases are not undesirable, but as
already indicated, have required a significant commitment of time from
several of the attorneys assigned hereto.

Nature and Length of Professional Relationship.  As described above,
Stroock has been actively rendering services on behalf of the Committee
as necessary and appropriate from April 12, 2001 through to the present.

21

## ALLOWANCE OF COMPENSATION

42.    The professional services rendered by Stroock required a high degree of

professional competence and expertise so that the numerous issues requiring evaluation and

determination by the Committee could be addressed with skill and dispatch and have, therefore,

required the expenditure of substantial time and effort.  It is respectfully submitted that the

services rendered to the Committee were performed efficiently, effectively and economically,

and the results obtained to date have benefitted the Debtors' unsecured creditor body as a whole

and the Debtors' estates.

43.    With respect to the level of compensation, § 330 of the Bankruptcy Code

provides, in pertinent part, that the Court may award to a professional person (including

attorneys for a creditors' committee): "Reasonable compensation for actual necessary services

rendered by [such] . . . professional person.  11 U.S.C. § 330.  Section 330 further states that the

court should take into consideration, inter alia, the nature, extent, and value of services

performed, as well as the cost of comparable services other than in a case under this title.  Id.

The clear Congressional intent and policy expressed in this statute is to provide for adequate

compensation in order to continue to attract qualified and competent bankruptcy practitioners to

bankruptcy cases.

44.    The total time spent by Stroock attorneys and paraprofessionals during the

Compensation Period for which Stroock seeks payment was 991.1 hours.  Such services have a

fair market value of $484,693.50.  The work involved, and thus the time expended, was carefully

assigned in light of the experience and expertise required for a particular task.

22

45.    As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time.  Attached hereto as Exhibit "C" are summaries of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

46.    In addition, Stroock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $10,038.19 for which Stroock respectfully requests reimbursement in full.  The disbursements and expenses have been incurred in accordance with Stroock's normal practice of charging clients for expenses clearly related to and required by particular matters.  Such expenses were often incurred to enable Stroock to devote time beyond normal office hours to matters, which imposed extraordinary time demands.  Stroock has endeavored to minimize these expenses to the fullest extent possible. Attached hereto as Exhibit "D" is a summary chart reflecting each category of disbursement for which Stroock seeks reimbursement.

47.    Stroock's billing rates do not include charges for photocopying, telephone and telecopier toll charges, computerized research, travel expenses, "working meals", secretarial overtime, postage and certain other office services, because the needs of each client for such services differ.  Stroock believes that it is fairest to charge each client only for the services actually used in performing services for it.  Stroock has endeavored to minimize these expenses to the fullest extent possible.

48.     Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions.  Stroock does not charge for incoming facsimiles.

49.     Further, in accordance with the Court's June 22, 2001 Order Authorizing the Retention of Experts, this Application seeks payment in the aggregate amount of $336,058.12, for the fees and expenses of Navigant, the asbestos issues expert engaged by the Committee, for the services rendered on behalf of the Committee in the months of October through December of 2006 and the expenses incurred in connection with the rendition of those services and certain services that were rendered earlier.[3]  Attached as Exhibit "E" are three disbursement schedules corresponding to and itemizing the expenses sought in each of Navigant's October 2006, November 2006 and December 2006 bills.

50.     No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

51.     Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

---

[3]   As reflected in the disbursement statements attached as Exhibit "E" hereto, certain of the expenses sought by Navigant in its October 2006 were incurred in connection with services rendered for the Committee during the months of July and August 2006.

24

52.     No prior application has been made in this or in any other Court for the relief

requested herein for the Compensation Period other than as set forth herein.

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order

and the Court's June 22, 2001 Order Authorizing the Retention of Experts:

the allowance of compensation for professional services rendered to the

Committee during the period from October 1, 2006 through and including

December 31, 2006 in the amount of $484,693.50;

the reimbursement of Stroock's out-of-pocket expenses incurred in connection

with the rendering of such services during the period from October 1, 2006

through and including December 31, 2006 in the amount of $10,038.19;

the payment of the fees and expenses of the asbestos issues expert employed by

the Committee for the months of October, November and December 2006 in the

aggregate amount of $336,058.12;

25

authorizing and directing the Debtors to pay to Stroock each of the amounts set

forth in (a) (b) and (c) of this WHEREFORE clause (to the extent not already paid

pursuant to the Administrative Fee Order); and

granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
     March _1_, 2007

                     STROOCK & STROOCK & LAVAN LLP

                     Lewis Kruger
                     Kenneth Pasquale
                     Members of the Firm
                     180 Maiden Lane
                     New York, New York 10038-4982
                     (212) 806-5400

                     Co-Counsel for the Official Committee of
                     Unsecured Creditors of W. R. Grace & Co., et al.