**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF REED SMITH LLP**
**FOR THE TWENTY-SECOND INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Fee Application of Reed Smith LLP for the Twenty-Second Interim Period.

**BACKGROUND**

1. Reed Smith LLP ("Reed Smith") was retained as special asbestos products liability defense counsel to the Debtors. In the Application, Reed Smith seeks approval of fees totaling $963,313.00 and costs totaling $30,971.64 for its services from July 1, 2006, through September 30, 2006.

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued

January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.

**DISCUSSION**

3.  In our initial report, we noted that four entries by MTH ($140) totaling 18.1 hours and $2,534.00 appear to be clerical in nature. The entries are provided below.

| | | | |
|---|---|---|---|
| 07/19/06 | MTH | 2.30 | ..............; compile and distribute same (2.20). |
| 07/31/06 | MTH | 9.00 | ...................; began compilation and reproduction of all expert V. Rose documentation for folder organization for J. Ash (4.70);.................... |
| 08/01/06 | MTH | 7.70 | Began reproduction of all expert documents for J. Ash (7.2);............ |
| 08/15/06 | MTH | 4.30 | ..........; compiled and reproduced same (4.00). |

In the review of the fee detail, we have allowed most of the hours devoted to this compilation process to stand as billable at the full $140.00 per hour rate. However, regarding those entries referencing "distribution" and "reproduction", we feel those tasks should be viewed as clerical in nature. We have been consistent in recommending that clerical tasks be billed at no more than $80.00 per hour. In re Busy Beaver Bldg. Centers, Inc., 19 F.3d 833, 855 n.34 (3rd Cir. 1994), the Court stated that "the statute [11 U.S.C. 330] plainly specifies that the type of service performed by a paralegal (including whether it is clerical) affects the rate of compensation, not compensability vel non." Busy Beaver at 849. In keeping with that opinion, we asked Reed Smith to explain why the time for these activities should not be compensated at $80.00 per hour, thus resulting in a fee reduction of $1,086.00. Reed Smith's response is provided as Response Exhibit 1. We appreciate the response and the offer of one-third of our suggested reduction. However, we remain convinced that the cited entries do reflect clerical activities and should therefore be billed at the suggested

$80.00 per hour rate. We thus recommend a reduction of $1,086.00 in fees.

4. We noted that on July 27, 2006, JJR, LEF and DEC (all Partners) attended a meeting in Chicago. The total time spent including any preparation and non-working travel time is 63.50 hours[1] for a total fee of $35,106.50. (See Exhibit A.) We asked Reed Smith to explain why this meeting required the attendance of three firm partners. Reed Smith's response to this issue, as well as to the following issue, are provided a Response Exhibit 2, as both concern meetings attended by the same three partners. We appreciate the response and offer no objection to these fees.

5. On July 10, 2006, JJR, LEF and DEC (all Partners) attended a meeting. The total time spent including any preparation time is 23.60 hours for a total fee of $13,086.00. The entries are provided below.

| Date | Atty | Hours | Description |
|---|---|---|---|
| 07/08/06 | DEC | 1.40 | Begin review of new materials from M. Browdy in preparation for meeting on July 10. |
| 07/09/06 | DEC | 2.40 | Continued review of new materials from M. Browdy in preparation for July 10 meeting (2.1); e-mails regarding same (0.3). |
| 07/10/06 | DEC | 6.60 | Prepare for meeting with M. Browdy and R. Finke (1.6); participate in portions of meeting relating to asbestos P.D. claims with M. Browdy, J. Restivo, L. Flatley and R. Finke (4.0);.............. |
| 07/10/06 | LEF | 6.40 | Preparation for meeting (1.2); meeting with R. Finke, M. Browdy, and J. Restivo and D. Cameron (5.2). |
| 07/10/06 | JJR | 7.80 | Prepare for (2.6) and attend (5.2) planning meeting with client and K&E. |

We asked Reed Smith to explain why this meeting required the attendance of three firm partners.

---

[1] Time for this entry was located in the following two Project Categories - (i) Travel-Nonworking and (ii) Claims Analysis Objection Resolution & Estimation (Asbestos).

**FEE AUDITOR'S FINAL REPORT** - Page 3
wrg FR Reed 22int 7-9.06.wpd

As stated in Paragraph 4, the response is provided as Response Exhibit 2. We have no objection to these fees.

## CONCLUSION

6.   Thus we recommend approval of fees totaling $962,227.00 ($963,313.00 minus $1,086.00) and costs totaling $30,971.64 for Reed Smith's services from July 1, 2006, through September 30, 2006.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
Warren H. Smith
Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1270
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 6th day of March, 2007.

_____
Warren H. Smith

**SERVICE LIST**
Notice Parties

**The Applicant**

Richard Keuler, Esq.
Reed Smith LLP
1201 Market Street, Ste. 1500
Wilmington, DE 19801

Douglas Cameron
Reed Smith LLP
P. O. Box 2009
Pittsburgh, PA 15230-2009

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**
Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Buchanan Ingersoll & Rooney
1000 West Street, Suite 141
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
Frank J. Perch, Esq.
844 King Street, Suite 2311
Wilmington, DE 19801

Exhibit A

| | | | |
|---|---|---|---|
| 07/27/06 | DEC | 3.50 | Non-working portions of travel to and from Chicago for strategy meeting for asbestos property damage claims (7 hours at one-half time). |
| 07/27/06 | LEF | 2.50 | non-working portions of travel time returning from Chicago to Pittsburgh (5 hours at one-half the actual time). |
| 07/27/06 | JJR | 3.50 | Non-working portions of travel time to and from Chicago for meeting (7 hours at one-half time). |
| 07/13/06 | LEF | 4.60 | ..............; reviewing and organizing materials provided by M. Browdy in preparation for Chicago meeting and preliminary outlines (4.1). |
| 07/17/06 | JJR | 3.00 | Prepare for Chicago meeting and Omnibus hearing. |
| 07/18/06 | LEF | 3.60 | ................; preparation for 7/20 meeting in Chicago, including reviewing/outlining various experts' reports (3.5). |
| 07/18/06 | JJR | 1.00 | Continue preparing for Chicago meeting. |
| 07/19/06 | LEF | 4.60 | Preparation for 7/20 meeting in Chicago. |
| 07/20/06 | LEF | 6.00 | Preparation for Chicago meeting and rescheduling of it (5.0);............ |
| 07/25/06 | LEF | 1.70 | .............; outline of agenda for 7/27 meeting and circulating it (0.2). |
| 07/26/06 | DEC | 3.60 | Prepare for meeting in Chicago with K&E lawyers regarding property damage estimation (2.1); meet with J. Restivo regarding same (0.7); e-mails regarding same (0.8). |
| 07/26/06 | LEF | 1.40 | Preparation for Chicago meeting. |
| 07/26/06 | JJR | 2.00 | Meeting with D. Cameron (1.0); prepare for Chicago meeting (1.0). |
| 07/27/06 | DEC | 8.30 | Prepare for defense counsel strategy meeting during travel to Chicago and discussions with J. Restivo and L. Flatley regarding same (1.4); attend defense counsel strategy |

|            |     |       |                                                                                                                                                                          |
|------------|-----|-------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            |     |       | meeting at K&E with K&E lawyers, R. Finks, J. Restivo and L. Flatley (5.2);..............                                                                                |
| 07/27/06   | LEF | 10.00 | Preparation for meeting and reviewing materials (3.0); meeting with R. Finke, et al, at K&E in Chicago and follow-up with R. Finke, J. Restivo and D. Cameron (7.0).     |
| 07/27/06   | JJR | 9.00  | Prepare for (1.9) and attend (7.1) meeting in Chicago.                                                                                                                   |

Response Exhibit 1

In Paragraph 3 of the Initial Report, the Fee Auditor observes that four entries by Mariel T. Howard entered between July 19, 2006 and August 15, 2006, totaling 18.1 hours, appear to be clerical in nature. The relevant portions of the time entries (as reproduced by the Fee Auditor) describe the tasks as follows: "compile and distribute" materials (July 19); "began compilation and reproduction of all expert V. Rose documentation for folder organization for J. Ash" (July 31); "[b]egan reproduction of all expert documents for J. Ash" (August 1); "compiled and reproduced" materials (August 15). Ms. Howard's hourly rate during this period was $140.

As Reed Smith has described to the Fee Auditor previously, Ms. Howard is a paralegal for Reed Smith and provides paraprofessional assistance to Reed Smith attorneys in their representation of the Debtors. In that capacity, one of her tasks is to maintain, manage and work with voluminous sets of documents and related materials relating to various issues in the criminal prosecution pending in Montana against the Debtors. With respect to that task, Ms. Howard is required not only to be able to locate and provide materials to Reed Smith attorneys upon their request (and occasionally to reproduce those materials, if needed), but also to have a substantive understanding of the materials' contents to determine what materials are responsive to an attorney's request.

Ms. Howard's time entries for the foregoing dates reflect time spent reviewing and identifying documents that were required to be circulated to the Reed Smith litigation team, and in preparing those documents to be copied and circulated. The tasks of compiling, reproducing and organizing these materials do not consist merely of operating a copier machine and collating the finished product; rather, it requires review of these materials and the application of judgment and analysis to ensure that the materials are reproduced thoroughly and are organized correctly for

efficient use by the attorney, and that full copy sets of all materials the filed by the other parties in the case are created. Nevertheless, some portion of this time must be allocated to the clerical chores of operating the copier machine and assembling the finished materials.

As such, Reed Smith believes that at least two-thirds of the total of the foregoing entries (12.0 hours) should be paid at full value ($140 per hour). The balance of that time (6.1 hours) might be considered clerical in nature, and could be charged at the clerical task rate of $80. This would result in a fee reduction of $366, which Reed Smith will not contest.

Response Exhibit 2

In Paragraphs 4 and 5 of the Initial Report, the Fee Auditor observes that three Reed Smith partners -- James J. Restivo, Jr., Lawrence E. Flatley and Douglas E. Cameron --attended two meetings (one on July 10, 2006 in Reed Smith's Pittsburgh office, and the other on July 27, 2006 in Chicago, which required non-working travel time in addition to the meeting time itself), and asks for an explanation as to why the presence of all three partners was required in these meetings.

Both of the meetings at issue focused on the more than 625 asbestos-related property damage claims that are now pending against the Debtors before the Bankruptcy Court, and specifically the adjudication of the Debtors' objections to those claims. Originally, the lead counsel role for these claims was assigned to a group of lawyers from Kirkland & Ellis, the Debtors' bankruptcy counsel, led by Michelle Browdy. However, as a result of the announcement of Ms. Browdy's departure from Kirkland & Ellis in late June 2006, Reed Smith was asked by the Debtors in early July 2006 to assume primary responsibility for litigating the objections to over 620 asbestos-related property damage claims.

By that point in time, Mr. Cameron had been assisting Kirkland & Ellis in portions of the asbestos-related property damage claims litigation, but neither he nor anyone else at Reed Smith had been given primary responsibility for adjudicating the objections to those claims. Messrs. Restivo and Flatley had little involvement with the property damage claims in the bankruptcy up until that point, although (like Mr. Cameron) they had extensive experience with asbestos-related property damage lawsuits against the Debtors before the bankruptcy and with the ZAI claims in the bankruptcy (as discussed further below). As a result of Ms. Browdy's departure, the Debtors asked Messrs. Restivo, Flatley and Cameron to undertake the lead roles in the property damage litigation

in a manner similar to that in which Reed Smith had represented the Debtors in both their pre-bankruptcy asbestos-related cases and in the ZAI Science Trial matter that was litigated before the Bankruptcy Court.

As the Fee Auditor is likely well aware by now, throughout Reed Smith's representation of the Debtors (both before and after the Debtors' bankruptcy filing), primary responsibility for specific subject areas and segments of the cases that Reed Smith has handled for the Debtors has been divided among Reed Smith professionals. Primary responsibility for specific subject areas and case segments have been divided among attorneys Restivo, Flatley, and Cameron for dealing with, among other things, responsibility over medical issues and experts, industrial hygiene issues and experts, microscopy issues and experts, regulatory issues and experts, Grace's historical documents and witnesses, document production and discovery issues, case-specific claims and facts, and damages.

This division of primary responsibility was designed to avoid (and has avoided) duplication of effort, and was also intended to allocate direct responsibility for results. Because this division of responsibility worked very well for over ten years, it was carried over to Reed Smith's retention as the Debtors' Special Asbestos Product Liability Defense Counsel. The attendance of multiple Reed Smith professionals at certain meetings, hearings or conference calls during the Debtors' bankruptcy has often been necessary when the event in question covers topics within the areas of primary responsibility of more than one Reed Smith professional. So it was with the meetings on July 10, 2006 and July 27, 2006. Each meeting involved the Reed Smith attorneys, with the Debtors' in-house counsel, Richard Finke, meeting with attorneys from Kirkland & Ellis to review a plethora of issues relating to the asbestos-related property damage claims -- including the background of the remaining claims, how the claims had been handled and reviewed by Kirkland & Ellis thus far, the

strategy for resolving the claims, and other procedural and substantive issues related to the adjudication of these claims for which Reed Smith would be charged with primary responsibility.

The July 10, 2006 meeting, which was requested by the Debtors, involved Ms. Browdy traveling to Pittsburgh to meet with Messrs. Restivo, Flatley and Cameron to explain the history of and the strategy for adjudicating the Debtors' objections to the property damage claims, as well as to discuss how the matter would be staffed and various other transition issues; one result of this meeting was the decision that several Kirkland & Ellis attorneys who had worked on these cases before Ms. Browdy's departure would continue to assist Reed Smith in the adjudication of these claims. The second meeting involved the Reed Smith attorneys traveling to Chicago to meet with the Kirkland & Ellis team that had been working on these issues up until that time, in order to discuss and implement the transition strategy that was discussed during the July 10 meeting in Pittsburgh. This allowed Messrs. Restivo, Flatley and Cameron to establish personal working relationships with the individuals from Kirkland & Ellis who would continue working as part of this "asbestos property damage claim team." Much more time likely would have been spent by each of these Reed Smith partners separately if they each had to make contacts and develop an understanding of the status of the asbestos property damage claims on their own.

Adjudication of the Debtors' objections to the asbestos-related property damage claims involves many of the same types of analytical issues that were presented by other asbestos-related claims filed against the Debtors both before and after their bankruptcy filing. A thorough treatment of these claims (for the preparation of a vigorous defense against them) requires an understanding of the history of the Debtors' business and of the products allegedly involved in these claims. Reed Smith's traditional division of labor required that each attorney with expertise on (and primary

responsibility for) these subjects be present at the foregoing meetings, so that the transition of responsibility and strategy for the defense of these claims could proceed as smoothly as possible.

Reed Smith is fully aware of the need to avoid the duplication of work, and it has made -- and will continue to make -- concentrated efforts to avoid any such duplication, including writing off time prior to the submission of Fee Applications if there is any unnecessary duplication. As the various Fee Applications reflect, particularly after the early stages of Reed Smith's representation of the Debtors, the overwhelming majority of meetings, hearings and calls have involved only one Reed Smith professional. Reed Smith has had multiple professionals participate only where multiple issues were addressed and where doing so was necessary and/or more economical than any alternative staffing plan; it will continue to follow this policy in the future.