## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 01-01139 (JKF) |
| W. R. GRACE & CO., et al., | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: April 9, 2007 9:00 a.m.** |
| Debtors. | ) | **Pittsburg, PA** |
| | ) | |
| | ) | **Response Deadline: March 19, 2007** |
| | ) | |
| | ) | **Related Docket No. 9315** |
| | ) | **Related Document 14594** |

## CLAIMANT CALIFORNIA STATE UNIVERSITY'S OPPOSITION TO GRACE'S MOTION FOR SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS

THE BRANDI LAW FIRM
THOMAS J. BRANDI
TERENCE D. EDWARDS
44 Montgomery Street, #1050
San Francisco, CA  94104
Telephone:     (415) 989-1800
Facsimile:     (415) 989-1801

SPEIGHTS & RUNYAN
C. ALAN RUNYAN
MARION C. FERRY
200 Jackson Avenue East
Post Office Box 685
Hampton, SC  29924
Telephone:     (803) 943-4444
Facsimile:     (803) 943-4599

LOIZIDES, P.A.
CHRISTOPHER D. LOIZIDES (No. 3968)
1225 King Street, Suite 800
Wilmington, DE  19801
Telephone:     (302) 654-0248
Facsimile:     (302) 654-0728

# TABLE OF CONTENTS

I.    Introduction                                                                                    1

II.   Legal Argument                                                                                  1

    A.    Grace Has Failed to Show Any Evidence that the
        Statute of Limitations Has Lapsed                                                          1

        1.    Grace Has the Burden of Proving its Affirmative
                Defenses Based on the Statute of Limitations.                                  2

        2.    Where, As Here, Grace Has Failed To Establish
                That EVERY Element of the Cause of Action,
                Including Contamination, Arose Outside the
                Statutory Period, Grace Has Failed to Meet Its
                Burden of Proof That UC's Claims are Barred by
                the Statute of Limitations                                                    3

        3.    Grace's Discovery Responses Admit that
                There is No Asbestos Contamination in
                Claimant's Buildings                                                          5

        4.    The Statute of Limitations is Determined
                on a Building-by-Building Basis Using
                Accepted Scientific Techniques                                                7

        5.    Grace Has Not And Cannot Present Evidence
                Showing That The Subject Buildings Were
                Contaminated by Friable Asbestos from Grace's
                Fireproofing So That an Actual and Appreciable
                Harm Occurred Outside the Limitations Period                                  11

    B.    The 1990 Petition Is Not An "Admission" Because It
        "Admits" Nothing Relevant                                                           13

C.   The Johns-Manville Claims Did Not Even Trigger the Statute of Limitations for All Manville Products, Let Alone Grace Products ....................................................................................... 17

III.   CONCLUSION ....................................................................................... 24

# TABLE OF AUTHORITIES

<u>CASES</u>

3250 Wilshire Blvd. Bldg. v. W.R. Grace & Co., 1989 WL 260222
    (C.D.Cal. Jul. 24, 1989)     15

Adams-Arapahoe School District No. 28-J v. GAF Corp., 959 F.2d 868
    (10th Cir.1992)     15

Banc One Bldg. Management Corp. v. W.R. Grace & Co., 157 Wis.2d 814
    (1990)     16

BellSouth Communications v. W. R. Grace & Co., 77 F.3d 603
    (2d Cir.1996)     15

Board of Educ. of City of Chicago v. A, C & S, Inc., 131 Ill.2d 428
    (1989)     16

California Sansome v. U.S. Gypsum, 55 F.3d 1402
    (9th Cir. 1995)     2, 4, 5, 14, 22

Catasauqua Area School District v. Eagle-Picher Indus., 1988 WL 102689
    (E.D.Pa. Sept. 28, 1988)     15

City of Greenville v. W.R. Grace & Co., 827 F.2d 975
    (4th Cir. 1987)     9, 11, 15

City of Manchester v. National Gypsum Co., 637 F.Supp. 646
    (D.R.I.1986)     15

City of Wichita v. United States Mineral Product Co.. 72 F.3d 1491
    (10th Cir.1996)     15

City of San Diego v. U.S. Gypsum Co. 30 Cal.App.4th 575
    (1994)     8, 22

County of Santa Clara v. Atlantic Richfield Co.
    (2006) 137 Cal.App.4th 292                 19

Fox v. Ethicon Endo-Surgery, Inc.
    (2005) 35 Cal.4th 797                 21

Franklin County Sch. Bd. v. Lake Asbestos of Quebec, Ltd., 1986 WL 69060
    (N.D.Ala. Feb. 13, 1986)                 15

Grisham v. Philip Morris U.S.A., Inc. Cal.Rptr.3d, 2007 WL 473678
    (Feb. 15, 2007)                 21

Hebron Pub. Sch. Dist. No. 13 v. U.S. Gypsum, 690 F.Supp. 866
    (D. N.D.1988)                 15

Jolly v. Eli Lilly & Co. 44 Cal.3d 1103
    (1988)                 19, 21

Kershaw County Bd. of Educ. v. U.S. Gypsum Co., 302 S.C. 390
    (1990)                 15

Landry v. Keene Corp., 811 F.Supp. 367
    (N.D.Ill. 1993)                 10

MDU Resources Group v. W.R. Grace and Co., 14 F.3d 1274
    (8th Cir. 1994)                 9, 10, 12

San Francisco Unified School District v. W.R. Grace & Co.
37 Cal.App.4th 1318
    (1995)                 3, 4, 8, 9, 11, 12, 14, 18, 22

School Dist. of City of Independence v. U.S. Gypsum Co., 750 S.W.2d 442
    (Mo.App.1988)                 16

THS Northstar v. W. R. Grace & Co., 66 F.3d 173
    (8th Cir.1995)                 15

Tioga Public School District v. U. S. Gypsum; 984 F.2d 915
    (8th Cir.1993)                 15

Town of Hooksett Sch. Dist. v. W.R. Grace & Co., 617 F.Supp. 126
    (D.N.H.1984)                                                              15

# I. INTRODUCTION

California law provides that the statute of limitations in an asbestos-in-building case does not start to run until there is actual contamination in that particular building.  Since Grace explicitly and tacitly admits there was no contamination, its Motion for Summary Judgment directed toward the California State University[1] claims must be denied.

Graces' contention that claimant "admitted" "identical injuries" outside the statute of limitations period is incorrect.

# II. LEGAL ARGUMENT

## A.  Grace Has Failed to Show Any Evidence that the Statute of Limitations Has Lapsed

The statute of limitations is an affirmative defense and Grace – not claimants – bears the burden of proof.  Grace admits that California law governs these

---

[1] Grace's Motion for Summary Judgment (Document 14594) was directed towards four different California claimants who made a total of 109 different claims:  1 claim for County of Sonoma, 16 claims for the California Department of General Services (DGS), 36 claims for the California State University System (CSU), and 56 claims for and The Regents of the University of California (UC).  Each of these claimants is a different legal entity.

UC and CSU are represented by the same law firms but these two claimants were created by and governed by different laws and their claims have different facts so this opposition is filed solely on behalf of the California State University.   Sonoma and DGS are represented by two different firms.

claims. Therefore Grace must prove that contamination was present from its asbestos-containing fireproofing products prior to the applicable accrual date and that claimant knew (or should have known) of that contamination. Only after Grace first proves each of these elements does the burden shift to claimants to provide contrary evidence. Grace has provided *no* evidence that *any* of the subject buildings were contaminated by Grace's products prior to the applicable accrual date. Because Grace has failed to provide information to sustain its burden of proof, Grace's motion must be denied.

### 1.    Grace Has the Burden of Proving its Affirmative Defenses Based on the Statute of Limitations

In an asbestos-in-building case arising under California law, the Ninth Circuit Court of Appeal has specifically noted that the defendant has the burden of proof on the statute of limitations to establish that all of the essential elements of the cause of action arose outside the statutory time period. In *California Sansome v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995), the Ninth Circuit summarized California law as follows:

> A defendant raising the statute of limitations as an affirmative defense has the burden of proving the action is time barred. *See, e.g., Permanente Medical Group/Kaiser Found. Hosp. v. Workers' Compensation Appeals Bd.*, 171 Cal.App.3d 1171, 217 Cal.Rptr. 873, 876 (1985) (citing *Kaiser, Found. Hosp. V. Workers' Compensation Appeals Bd.*, 39 Cal.3d 57, 216 Cal.Rptr. 115, 702 P.2d 197 (1985)) ("The burden of producing evidence sufficient to show [plaintiff's] claim is barred was upon [defendant] who had

2

asserted the statute as a defense."); cf. *Palmer v. Hoffman*, 318 U.S. 109, 117, 63 S.Ct. 477, 482, 87 L.Ed. 645 (1943) (finding state law governs the allocation of the burden of proof in diversity cases). Under California law, the limitation period commences "upon the occurrence of the last element essential to a cause of action." *City of San Diego*, 35 Cal.Rptr.2d at 881; *see CAMSI IV v. Hunter Technology Corp.*, 230 Cal.App.3d 1525, 282 Cal.Rptr. 80, 85 (1991); *Leaf v. City of San Mateo*, 104 Cal.App.3d 398, 163 Cal.Rptr. 711, 715 (1980). A tort cause of action does not accrue until there is wrongdoing and "actual and appreciable harm." CAMSI IV, 282 Cal.Rptr. at 85; *see Davies v. Krasna*, 14 Cal.3d 502, 121 Cal.Rptr. 705, 713, 535 P.2d 1161, 1169 (1975); *City of San Diego*, 35 Cal.Rptr.2d at 881; *see also Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 245 Cal.Rptr.658, 661, 751, P.2d 923, 926-927 (1988) ("[T]he common law rule, that an action accrues on the date of injury . . . applies only as modified by the 'discovery rule' "); *Dolan v. Borelli*, 13 Cal.App.4th 816, 16 Cal.Rptr.2d 714, 717 (1993) (same); *Bell v. Hummel and Pappas*, 136 Cal.App.3d 1009, 186 Cal.Rptr.688, 694 (1982) ("Even after knowing of a wrongful act, if there is no actual irremediable damage, there is no running of the statute of limitations.") [since overruled]. Thus, the defendant has the burden of demonstrating the complained of wrongdoing and harm occurred outside the limitations period.

Grace fails to carry this burden because, as discussed below, it does not present any evidence at all that the statute of limitations has lapsed for CSU's claims.

2.    **Where, As Here, Grace Has Failed To Establish That EVERY Element of the Cause of Action, Including Contamination, Arose Outside the Statutory Period, Grace Has Failed to Meet Its Burden of Proof That CSU's Claims are Barred by the Statute of Limitations**

Grace concedes that in California the statute of limitations in an asbestos-in-building case is governed by the rule of *San Francisco Unified School District v. W.R. Grace & Co.* (1995) 37 Cal.App.4th 1318 which held:

3

> [I]n an asbestos-in-building case, the mere presence of asbestos constitutes only a threat of future harm. Contamination by friable asbestos is the physical injury and the actual, appreciable harm that must exist before a property owner's strict liability or tort cause of action against an asbestos manufacturer accrues and the limitation period commences.

*Id.* at 1335; *see also id.* at 1322 ("the statute of limitations in an asbestos-in-building case does not commence until there has been damage in the form of contamination."). *SFUSD*, along with other cases, sets five separate hurdles that Grace must overcome to prevail on its statute of limitations defense. Grace must prove that its wrongdoing resulted in the following:

1) contamination of the subject building, *see SFUSD*, 37 Cal.App.4th at 1335; *California Sansome*, 55 F.3d 1402, 1406; *see also City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975, 980 (4th Cir. 1987);

2) by the release of fibers from friable asbestos, *see SFUSD*, 37 Cal.App.4th at 1335;

3) manufactured by Grace, *see California Sansome*, 55 F.3d at 1406;

4) causing actual and appreciable harm, *see SFUSD*, 37 Cal.App.4th at 1335;

5) outside the statutory period, *see id.*

Applying *SFUSD* and *California Sansome* to this case, it is clear that Grace must establish both wrongdoing and injury prior to the applicable accrual date. Therefore, Grace must establish that its product contaminated each of CSU's buildings as a result of its wrongdoing prior to the accrual date for the statute of

4

limitations to be a bar. Grace has mustered <u>no</u> evidence to show that <u>any</u> of the buildings were contaminated <u>at all</u> and, in fact, admits the opposite is true.

Indeed, in *California Sansome*, the Ninth Circuit reversed the trial court and ordered a new trial where the trial court had <u>wrongfully</u> placed the burden of proof on the plaintiff to establish that pre-statute injury (i.e., contamination) did <u>not</u> occur. The court stated that "The [district] court's analysis mistakenly treats the occurrence of appreciable injury as equivalent to the discovery of that injury." *Id.* The court continued: "We are not aware of, and [the defendant] fails to cite, any cases in which the occurrence of injury serves as an exception like the discovery rule, thereby shifting the burden to the plaintiff to demonstrate the non existence of appreciable harm." *Id.*

### 3. Grace's Discovery Responses Admit that There is No Asbestos Contamination in Claimant's Buildings

Claimant sent a number of discovery requests to Grace regarding the question of contamination and in every response Grace denied that there was contamination and stated it was not aware of any evidence or documents to the contrary.

5

On March 12, 2007 Grace responded to claimant's special interrogatories as

follows[2]:

> 3.     Do you contend that the Claimant's building has been injured or
> damaged by asbestos fibers released from Mono-kote or other surfacing
> treatment manufactured by Grace? . . .
>
> Answer:
> Subject to and not waiving the foregoing General Objections, no.
>
> 4.     Do you contend that the Claimant's building has been injured or
> damaged by the presence of asbestos fibers in Mono-kote or other surfacing
> treatment manufactured by Grace? . . .
>
> Answer:
> Subject to and not waiving the foregoing General Objections, no.

On the same day, Grace also responded to claimant's requests for admission as

follows:

> 1.     The claimant's building has been injured or damaged by asbestos
> fibers released from Mono-kote or other surfacing materials manufactured
> by Grace.
>
> Response:
> Denied
>
> 2.     The Claimant's building has been injured or damaged by the presence
> of asbestos in Mono-Kote or other surfacing materials manufactured by
> Grace.
>
> Response:
> Denied

---

[2] The responses are attached as Exhibit A to the Declaration of Terence D. Edwards.

Finally, Grace made the same admissions in response to requests for production of document that specifically addressed the contamination issue:

> 6.    Each document which you allege tends to prove that the Claimant's building is or was contaminated with asbestos fibers released from Mono-kote or other surfacing treatment manufactured by Grace:
>
> Response:
> Subject to and not waiving the General Objections, Debtors have made no such allegations
>
> 7.    Each document which you allege tends to prove that the Claimant's building was injured or damaged by the presence of asbestos-containing Mono-kote or asbestos-containing surface treatment manufactured by Grace.
>
> Response:
> Subject to and not waiving the General Objections, Debtors have made no such allegations

These admissions kill Grace's motion. They were all made on March 12, 2007 – well after Grace filed its motion for summary judgment.  Grace bears the burden of proof of establishing contamination and they have utterly failed to do so.


### 4.    The Statute of Limitations is Determined on a Building-by-Building Basis Using Accepted Scientific Techniques

Lacking the required evidence of contamination, Grace attempts to argue that contamination of other buildings (such as those that were the subject of the Manville claims) somehow triggers the statute of limitations issue regarding the specific buildings at issue here.  First, this completely ignores the fact that Grace

7

has uniformly denied that any of claimant's buildings are contaminated – as discussed above.  In any event, California law does not permit such a ruse. California law clearly states that the statute of limitations in asbestos-in-building cases does not run <u>until there is contamination in the subject building and the plaintiff knows or should know of such contamination in that particular building</u>:

> As we have found, a strict liability or negligence cause of action accrues in an asbestos-in-building case when the building becomes contaminated or the Plaintiff should have known that contamination occurred.  Contamination constitutes injury—when injury is the last element of the cause of action for strict liability or negligence to occur, the cause of action accrues and the statute of limitations begins to run when contamination occurs.

*SFUSD*, 37 Cal.App.4[th] at 1335-36.  The California Court of Appeal in *SFUSD* went to direct that "As the trial court <u>erroneously focused on when SFUSD was put on notice that its schools contained potentially dangerous asbestos</u>, we think it prudent to remand this matter to the trial court for a determination of when contamination occurred at <u>each</u> school or when SFUSD should reasonably have discovered that <u>each</u> school's contamination occurred." *Id.* at 1336 (emphasis supplied); *see also id.* at 1336 n.6 ("SFUSD alleges that each of the six schools in which asbestos was installed were built at different times, with construction beginning between 1968 and 1973. Thus, the factual question of when contamination occurred must be resolved on a building-by-building basis.").

In this case, Grace has the burden of showing there was contamination present (or the claimants should have known of contamination) in <u>each</u> of CSU's buildings for which a claim has been filed prior to the accrual date. Only evidence regarding each specific building can establish when the requirements of wrongdoing and injury were actually present in that building.

Instead, all Grace has done is to assert that CSU should have known there was contamination by Grace products in all of its buildings because CSU alleged there was contamination by Manville products in some of its buildings. This approach is at least two steps removed from the actual legal standard. Neither the mere presence of asbestos in an uncontaminated subject building nor actual contamination in other buildings are sufficient for the statute of limitations to accrue for a claim based on a subject building. *See SFUSD*, 37 Cal.App.4[th] at 1335. California's requirement of actual contamination is consistent with tests employed by other jurisdictions.[3]

---

[3] Contamination, which is the injury in an asbestos-in-building case, encompasses a scientific determination by experts as to the contamination of the building. Such a determination is addressed in *MDU Resources Group v. W.R. Grace and Co.*, 14 F.3d 1274 (8th Cir. 1994), and *City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975. In *City of Greenville*, the Fourth Circuit held that a jury could reasonably have found contamination where evidence was presented that "Greenville's experts took samples from the office areas of the city hall and found that a significant number of asbestos fibers had contaminated areas in which people worked. For example, the testing revealed 8,550,000 asbestos fibers per square foot in the carpet of one office area, and 170,000 asbestos fibers per square foot on the surface of one office computer." 827 F.2d at 979-80. Upholding a jury verdict against Grace, the Fourth Circuit reviewed trial evidence of testing of dust samples and noted: "From the evidence presented by Greenville, the jury reasonably could have found that the city hall was contaminated by significant

9

While contamination is at the heart of when an asbestos-in-building cause of action accrues, Grace's motion is silent about when <u>any building</u> was contaminated. How can Grace possibly argue that claims are barred when it denies contamination and presents absolutely no evidence of contamination? It is not as if Grace is unaware of the contamination requirement. Contamination involves analysis of many factors. A surface in a building is contaminated when the concentration of asbestos fibers in a given area of surface dust is sufficient to result in significant increase in the airborne concentration of asbestos when the surface

---

amounts of asbestos, and that the asbestos had come from the fallen Monokote and Monokote dust." *Id.* at 980.

In *MDU Resources*, the plaintiff sued Grace for Monokote in its building placed in 1968. In 1980, Health Department tests revealed that the Monokote fireproofing contained 15-25% asbestos. The plaintiff there first learned that the Monokote was releasing fibers and contaminating its building in 1988, when testing confirmed contamination and "subsequent tests found an average of more than 78 billion asbestos fibers per square foot on horizontal surfaces below the fireproofing." *MDU Resources*, 14 F.3d at 1276. The Eighth Circuit applied the contamination standard for Grace's statute of limitations defense and reversed a jury verdict for Grace that was obtained because the trial court wrongly applied the "discovery of asbestos" standard. *See also California Sansome*, 55 F.3d at 1405 n.5 (the parties agreed and the court defined contamination as "the release of asbestos fibers into the air of Sansome's buildings sufficient to constitute elevated levels- is the 'harm' that triggers the ruling [sic] of the statute of limitation . . . .").

In *Landry v. Keene Corp.*, 811 F.Supp. 367 (N.D.Ill. 1993), the plaintiffs acquired two separate buildings at the same time in 1984. At the time they acquired the buildings, the plaintiffs received reports about the asbestos problems in one of the buildings. The plaintiffs brought an asbestos property damage suit on the other building after they later discovered that the second building also contained asbestos. Notably, the defendant moved for summary judgment, arguing that the plaintiffs' actual knowledge about the asbestos <u>in the first building</u> put them on notice that the <u>second building *might* contain asbestos</u>. Once the plaintiffs actually knew about the first building's asbestos problems, the defendant contended, it should have known about the asbestos in the second building and could have easily contacted the second building's prior building owner or checked that building's specifications. The Northern District for the District of Illinois disagreed, aptly holding that the "duty to investigate" under the discovery rule of accrual "does not arise until after plaintiffs knew or should have known that an injury occurred and that it was wrongfully caused." *Id.* at 373. The injury, of course, is contamination, not the mere presence of asbestos in other buildings. "The purpose of the investigation is to determine whether the injury is actionable," the court held, and not whether one has been injured in the first instance. *Id.* at 373-74.

10

dust is disturbed by activities normally expected to occur. Experts utilize electron microscopy to examine the surface dust and analyze the concentration of asbestos fibers in the surface dust. The methods of collection of dust samples are well-recognized and are performed pursuant to scientific protocols.

From its involvement as a defendant in multiple asbestos-in-building cases (including *City of Greenville*, *MDU Resources* and *SFUSD*) Grace knows what contamination is and it knows that to sustain its burden of proof it is necessary to present evidence of specific conditions existing in <u>each</u> of CSU's buildings prior to the accrual date asserted by the plaintiffs. Grace must show that all of these elements existed. Grace must prove that its product caused the subject building to be contaminated by friable asbestos from Grace's fireproofing so that an actual and appreciable harm occurred prior to the asserted accrual date. Instead, Grace has attempted to meet its burden with speculation and silence.

**5.    Grace Has Not And Cannot Present Evidence Showing That The Subject Buildings Were Contaminated by Friable Asbestos from Grace's Fireproofing So That an Actual and Appreciable Harm Occurred Outside the Limitations Period**

As set forth above, there must be actual and appreciable harm from contamination and not just nominal damage. In *SFUSD*, the mere presence of asbestos or testing of asbestos-containing material that does not reveal contamination does not begin the statute of limitations. *See* 37 Cal.App.4th at

11

1335 ("Contamination by friable asbestos is the physical injury and the actual,
appreciable harm that must exist before a property owner's strict liability or tort
cause of action against an asbestos manufacturer accrues and the limitation period
commences."). The presence of potentially dangerous asbestos can only constitute
a threat of future harm. Again, *SFUSD* is instructive:

> Testing and investigation are typically undertaken once a responsible
> property owner discovers that asbestos may be present in its building. But
> the act of testing and investigation which discloses no contamination cannot
> be equated with the actual harm of contamination. At best, such testing and
> investigation could show a threat of future harm. In light of the 'threat of
> future harm' cases and the unique analytical problems posed by an asbestos-
> in-building case, we may reasonably conclude that the California Supreme
> Court did not intend such a result. These expenses may be found to have
> been undertaken to determine when the threat of future harm ripens into
> appreciable, actual harm for purposes of the accrual of a tort cause of action.
> *Id.* at 1332-33.

Moreover, the fact that other buildings may have asbestos, or even may be
contaminated, does not equate to a finding that claimants' buildings are
contaminated. Today, Grace repeats the same discredited script it has made in
other cases before: namely, that for the purposes of the statute of limitations, any
contamination predates the statute; but for all other purposes, there was no injury
and no need to do anything. Again *MDU Resources* is helpful: Grace argued at
trial not only that the statute of limitations had run, but also that the plaintiff had
suffered no injury from the asbestos Monokote. The arguments are inconsistent:  if
MDU has suffered no injury from the Monokote, then it has no cause of action -

12

until an injury is suffered, the statute of limitations cannot begin to run. *See, MDU Resources,* 14 F.3d at 1279-80 n. 9.

## B. The 1990 Petition Is Not An "Admission" Because It "Admits" Nothing Relevant

Grace alleges that the 1990 Petition is proof that CSU "knew of [its] claims, and of the injuries and damages [it] purport[s] to have suffered, by at least 1990"[4] (Motion at 4). Apparently, this is Grace's only evidence to establish that the subject buildings involved in this bankruptcy were contaminated before the asserted accrual date.

First, the information on the claim form about the 1990 Petition cannot be construed as an admission because Grace's interpretation of it is inconsistent with other information on the same claim form. Specifically, Question 18 asked, "When did you first know of the presence of asbestos in the property of the Grace Product for which you are making this claim?" Claimant responded "2003." (Exemplar claim form is Exhibit B to the Edwards Dec.). Question 20 asked, "When did you first learn that the Grace product for which you are making this claim contained asbestos?" Again, claimant responded "2003." The Court will recall that there has been considerable discussion at various hearings about these

---

[4] The Petition was dismissed without comment or prejudice by the United State Supreme Court.

two questions and, at Grace's request, claimant supplemented all of the claim

forms it filed previously to provide a signature of the client (in addition to the first

signature of the attorneys) to regarding these issues. (Exemplar of Amended Claim

form is Exhibit C to Edwards Dec.). Obviously, if CSU did not even know that the

Grace products in its buildings contained asbestos until 2003, it is impossible that

CSU could have "admitted" back in 1990 that its building was contaminated by

asbestos from Grace's products.

Second, the 1990 lawsuit pre-dated *SFUSD* which was decided in 1995.

Thus, at the time the 1990 Petition was filed, it was unclear in California (and,

apparently in many other states) what constituted "injury" in an asbestos-in-

building case. *See, e.g.*, the 1990 Petition at paragraphs 6, 7, 11, 19, and 32 where

seemingly different types of injuries are asserted. The State of California rightfully

joined the Petition to protect its rights in an abundance of caution. With *SFUSD*, it

is clear that contamination, and not simply the mere presence of asbestos, is the

injury that triggers the accrual date.

Third, Grace's position would reverse its burden of proof as required by

*SFUSD* and *California Sansome*. Those cases require Grace to offer evidence of

when the subject buildings were contaminated or when the claimants should have

known of contamination. The 1990 Petition made no allegations about the specific

CSU buildings at issue in this bankruptcy. Accordingly, the State of California's

14

decision to participate in an analogous suit involving 29 states proves nothing

about when the specific CSU buildings may have been contaminated by Grace's

asbestos products. Indeed, had the Petition been granted by the U. S. Supreme

Court, Grace would have undoubtedly argued with some force and based upon

existing case law that the State of California could not recover past or future

abatement costs because it could not prove that Grace products in state buildings

had contaminated the buildings with asbestos.[5]

---

[5] *See, Adams-Arapahoe School District No. 28-J v. GAF Corp.*, 959 F.2d 868 (10th Cir.1992) (emphasis supplied); *City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975, 976-78 (4th Cir.1987) (the release of toxic fibers from an asbestos-containing fireproofing product rendered the manufacturer liable for damages to the property owner under South Carolina tort law); *Tioga Public School District v. U. S. Gypsum*; 984 F.2d 915 (8th Cir.1993) (finding Tioga's claims recoverable in tort because they had alleged and proven that asbestos fibers from the ceiling plaster had been released and contaminated the school); *THS Northstar v. W. R. Grace & Co.*, 66 F.3d 173 (8th Cir.1995) ("the distinction between the mere presence of asbestos-containing materials in a building and actual release and contamination is critical" because "no cause of action exists until there has been a substantial release"); *BellSouth Communications v. W. R. Grace & Co.*, 77 F.3d 603 (2d Cir.1996) (claim does not accrue until contamination of the building by asbestos and consequent health risk occurs); *City of Wichita v. United States Mineral Product Co.*. 72 F.3d 1491 (10th Cir.1996) (holding actual physical injury by "contamination" is an essential element of any negligence claim and liability may not be premised upon the mere risk of future harm not yet suffered; *3250 Wilshire Blvd. Bldg. v. W.R. Grace & Co.*, 1989 WL 260222 at *4-8 (C.D.Cal. Jul. 24, 1989) (recognizing that allegations of actual contamination constitute valid tort damages claims, whereas tort claims for injury by virtue of mere presence of asbestos-containing products or by virtue of a potential risk of harm are invalid); *Catasauqua Area School District v. Eagle-Picher Indus.*, 1988 WL 102689 (E.D.Pa. Sept. 28, 1988) (removal and replacement costs of asbestos cement constitute economic loss not recoverable under tort absent demonstration that cement contaminated other property or that it created a significant health risk to building occupants); *Hebron Pub. Sch. Dist. No. 13 v. U.S. Gypsum*, 690 F.Supp. 866, 870 (D. N.D.1988) (negligence claim survived motion to dismiss where plaintiffs alleged asbestos products released harmful fibers into the building); *City of Manchester v. National Gypsum Co.*, 637 F.Supp. 646, 651- 52 (D.R.I.1986) (court denied motion to dismiss finding that allegations of contamination constituted allegations of physical harm sufficient to support a claim for negligence under New Hampshire law); *Franklin County Sch. Bd. v. Lake Asbestos of Quebec, Ltd.*, 1986 WL 69060 at *5-6 (N.D.Ala. Feb. 13, 1986) (school board's negligence claim dismissed for failing to allege actual, present harm, i.e. contamination); *Town of Hooksett Sch. Dist. v. W.R. Grace & Co.*, 617 F.Supp. 126, 130-31 (D.N.H.1984) (motion to dismiss denied because plaintiff alleged contamination and contamination constitutes a physical injury cognizable under tort); *Kershaw County Bd. of Educ. v. U.S.*

Claimant California State University's Opposition to Grace's Motion for Summary Judgment based on the Statute of Limitations

Fourth and finally, viewed in context, the 1990 Petition is far too vague and scattershot to ever be an admission. The petition was not an actual lawsuit or a claim, it was a request to the United States Supreme Court to permit filing of a lawsuit. Grace has supplied no authority that such a document could be the basis for a legally binding admission. Although CSU was not directly involved in the Petition, it understands that genesis of the petition was a group of State Attorneys General who conceived of the Petition and then asked various State Attorneys General if they wished to join the petition. To that end, some 29 different Attorneys General signed onto the Petition that sought permission to file suit against 25 different companies.[6] There is no reason to believe – and certainly no evidence – that each state intended to bring claims against each potential

---

*Gypsum Co.,* 302 S.C. 390, 393, 396 S.E.2d 369, 371 (1990) (judgment against manufacturer of asbestos-containing ceiling materials on negligence claim upheld where plaintiff alleged and proved damage to other property); *Banc One Bldg. Management Corp. v. W.R. Grace & Co.*, 157 Wis.2d 814, 461 N.W.2d 448 (1990) (unpublished disposition) (dismissal of negligence action affirmed where plaintiff failed to allege actual physical harm); *Board of Educ. of City of Chicago v. A, C & S, Inc.*, 131 Ill.2d 428, 443, 137 Ill.Dec. 635, 642-43, 546 N.E.2d 580, 587-88 (1989) ("dangerousness which creates a risk of harm is insufficient standing alone to award damages in ... negligence; however, allegations of asbestos release are sufficient to defeat a motion to dismiss"); *School Dist. of City of Independence, Mo., No. 30 v. U.S. Gypsum Co.*, 750 S.W.2d 442, 456 (Mo.App.1988) (jury verdict upheld where school district provided evidence of contamination caused by defendant's asbestos-containing acoustical ceiling plaster).

[6] The potential "defendants" listed in the Petition were: W.R. Grace & Company, National Gypsum Company, United States Gypsum Company, USG Corporation, American Biltrite, Inc., Armstrong World Industries, Inc., Azrock Industries, Inc., Basic Incorporated, Carey-Canada, Inc., The Celotex Corporation, Certainteed Corporation, Crown Cork & Seal Company, Inc., Eagle-Picher Industries, Inc., Fibreboard Corporation, The Flintkote Company, GAF Corporation, Georgia-Pacific Corporation, H.K. Porter Company, Inc., Keene Corporation, Kentile Floors, Inc., Owens-Corning Fiberglas Corporation, Owens-Illinois, Inc., Pfizer, Inc., Raymark Industries, Inc., Sprayed Insulation, Inc., and Turner & Newall PLC.

16

defendant.  Presumably, if the Petition had been granted, the next step would have

been for the States to draft complaints.  The 29 states have different laws regarding

product liability, different statutes of limitations, and so forth.  Claims and causes

of action permissible in some states would not have existed in other states so,

presumably, each state would have filed its own complaint or states with similar

laws would have joined together to file complaints.  But it is absurd to believe that

any of the States believed at the time that the Petition was filed that it would have

viable causes of action against every one of the defendants.  So, at most, the 1990

Petition offers speculation about what claims the different states *might* have

eventually filed.  Finally, even if the process had gone forward and the State had

filed a claim against Grace, that would not have started the running of the statute of

limitation as regards Grace.  Only contamination and actual and appreciable harm

can trigger the running of the statute of limitations.

## C. The Johns-Manville Claims Did Not Even Trigger the Statute of Limitations for All Manville Products, Let Alone Grace Products

Grace argues that the damages alleged by CSU in the prior Johns-Manville

bankruptcy claim somehow triggered the statute of limitations for any and all

asbestos property damages.  This grossly misstates California law.  As Grace itself

states on page 8 of its memorandum of points and authorities: "No cause of action

17

accrues and no claim can be filed in a tort action until the damage has occurred, as the limitations period does not begin to run until the last element essential to the cause of action occurs. *SFUSD*, 37 Cal.App.4[th] at 1326; *City of San Diego*, 30 Cal.App.4[th] at 582."

Here, Grace denies all contamination by its products in any CSU building outside the statute period.

Grace cites to the case of *City of San Diego v. U.S. Gypsum Co*. (1994) 30 Cal.App.4th 575 case for the proposition that any injury from any asbestos-containing product in any building an entity owns triggers the running of the statute of limitations for all asbestos products in every building. This overstates the holding of the *San Diego* case and Grace's argument is also incorrect for a several reasons. The unique facts of the *San Diego* case make it inapplicable here. The City of San Diego's complaint alleged that asbestos dust had been "continuously" released since the installation of the materials, thereby admitting that appreciable harm had occurred more than three years earlier. *Id*. at 583. In other words, *San Diego* never addressed the question of when the statute of limitations starts to run because the plaintiff had <u>admitted</u> that it had started to run. As another court recently stated:

> *San Diego* is of no assistance here. The Second District avoided resolving the question of *when or if* accrual had occurred for the City's strict liability and negligence causes of action. Instead, *San Diego* relied on the fact that

18

the City, by asserting that asbestos contamination was the alleged physical injury for which it sought relief and alleging that some contamination had occurred more than three years earlier, had essentially conceded that the statute of limitations barred its action even if contamination constituted physical injury and resulted in the accrual of the City's causes of action.

*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 322

Moreover, *San Diego* relied solely on the *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103 without any analysis or reasoning.[7] Examination of the facts of the *Jolly* case demonstrates that it has no relevance to the facts of this case. First, the discovery rule only applies when all of the elements for the cause of action are established. In *Jolly*, the plaintiff was injured *in utero* by her mother's use of estrogen diethylstilbestrol (DES). *Id.* at 1108. Although the *Jolly* plaintiff first learned that her mother's DES use might cause her injury in 1972 and although she had surgeries in 1976 and 1978 as a result of her injuries she did not file suit until 1981. *Id.* In other words, 1) Lilly's tortuous conduct had occurred, 2) plaintiff had actually suffered the resulting injuries, and 3) she knew that her injuries were likely caused by her mother's DES use - all outside of the statute period. The only thing she claimed not to know was the identity of the manufacturer of the DES. In

---

[7] Here is the relevant section it its entirety: "This claim establishes City suffered more than 'nominal' damages beyond the three-year statute of limitations period. Moreover, it matters not that the claim was directed to Johns-Manville Corporation and not these defendants since the statute of limitations is not delayed because plaintiff does not know the wrongdoer's identity. (*Jolly v. Eli Lilly & Co., supra,* 44 Cal.3d 1103, 1112, 245 Cal.Rptr. 658, 751 P.2d 923, fn. 8.)." *San Diego, supra,* 30 Cal.App.4th at 584.

contrast, here there is no evidence whatsoever – none – that CSU suffered any injury because of Grace's products outside of the statute period.

Second, Grace's argument is simply illogical and would encourage a voluminous filing of unnecessary lawsuits. Under Grace's theory, claims that any asbestos manufacturer's products have contaminated a building start the statute running against all manufacturers, even if there is no evidence that the other manufacturers have caused any injury. In other words, suppose a property owner discovers that floor tiles in one of its buildings manufactured by Company X are deteriorating and releasing asbestos. Clearly, the statute of limitations starts to run and the property owner has to file suit against Company X within the time permitted by the statute of limitations. However, further suppose that said building also contains Grace's spray-on fireproofing but there no evidence that the fireproofing has started to deteriorate. If the property owner were also to file suit against Grace, no doubt Grace would argue that there is no injury from its product so Grace has no liability. On the other hand, if the property owner does not file suit and three years pass, Grace will argue, as it does here, that the suit is untimely. Grace cannot have it both ways.

Grace's argument – that knowledge of harm from one entity triggers the statute of limitations for all harms from all other similar entities – has - been repeatedly rejected by the California Supreme Court in similar contexts, most

20

recently in February 2007. *See Grisham v. Philip Morris U.S.A., Inc.* (Feb. 15,

2007) --- Cal.Rptr.3d ----, 2007 WL 473678. *Grisham* involved the issue of

whether, for purposes of statute of limitations governing tobacco-related personal

injury actions, persons were presumed to have been aware by 1988 that smoking

caused addiction and other health problems. As relevant to these proceedings, the

Supreme Court discussed its prior holding in *Fox v. Ethicon Endo-Surgery, Inc.*

(2005) 35 Cal.4th 797 where the Court rejected a similar argument Grace now

asserts:

> [W]e **rejected** the holding in *Bristol-Myers Squibb Co. v. Superior Court*
> (1995) 32 Cal.App.4th 959, 966, 38 Cal.Rptr.2d 298, that "[w]hen a plaintiff
> has cause to sue based on knowledge or suspicion of negligence the statute
> starts to run as to *all* potential defendants," regardless of whether those
> defendants are alleged to be wrongdoers in a different cause of action.

*Id.* at *13 (emphasis supplied). The Supreme Court noted that:

> One of the reasons for our rejection was that "[i]t would be contrary to
> public policy to require plaintiffs to file a lawsuit 'at a time when the
> evidence available to them failed to indicate a cause of action.' [Citations.]
> Were plaintiffs required to file all causes of action when one cause of action
> accrued, as they would be under the *Bristol-Myers Squibb* rule, they would
> run the risk of sanctions for filing a cause of action without any factual
> support. [Citations.] Indeed, it would be difficult to describe a cause of
> action filed by a plaintiff, before that plaintiff reasonably suspects that the
> cause of action is a meritorious one, as anything but frivolous. At best, the
> plaintiff's cause of action would be subject to demurrer for failure to specify
> supporting facts (see, e.g., 4 Witkin, Cal. Procedure (4th ed.1997), Pleading,
> § 339, p. 436 [requirement of pleading facts] ). In sum, the interest of the
> courts and of litigants against the filing of potentially meritless claims is a
> public policy concern that weighs heavily against the *Bristol-Myers Squibb*
> formulation of the discovery rule."

21

*Id.* at *13 (quoting *Fox, supra*, 35 Cal.4th at 815).

Turning to Philip Morris' argument, which is similar to Grace's herein, the

Supreme Court stated:

> In the present case the rule proposed by Philip Morris, like the *Bristol-Myers Squibb* rule we rejected in *Fox,* would compel cigarette smokers either to file groundless tort causes of action based on physical injury against tobacco companies as soon as they discovered they were addicted to cigarettes and had an unfair competition cause of action (again, assuming such a cause of action exists), or risk losing their right to sue in tort for such physical injury. This rule would violate the essence of the discovery rule that a plaintiff need not file a cause of action before he or she " 'has reason at least to suspect a factual basis for its elements.' [Citation.]" ( *Fox, supra,* 35 Cal.4th at p. 807, 27 Cal.Rptr.3d 661, 110 P.3d 914.) It would directly contravene "the interest of the courts and of litigants against the filing of potentially meritless claims." ( *Id.,* at p. 815, 27 Cal.Rptr.3d 661, 110 P.3d 914.)

Id. at *13.

Third, *San Diego* is inconsistent with subsequent California and Federal

authority that specifically focus on when the statute of limitations is triggered in an

asbestos-in-building case.  In *California Sansome*, the district court mistakenly

framed delayed injury as an exception to the orthodox running of the limitations

period thereby displacing injury as an essential element of the cause of action.

"The 'discovery rule,' on the other hand, assumes that the elements of accrual

including harm exist, but tolls the ruling of the statute until the plaintiff is on

inquiry notice of its injury (and its wrongful cause)." *California Sansome*, 55 F.3d

at 1406.  Simply stated, in *Jolly*, where the issue was the occurrence of

22

wrongdoing, is distinguishable from an asbestos-in-building case, where the issue

is occurrence of injury. As *SFUSD* aptly summarized:

> The issue presented by our case is distinguishable from that presented in
> *Jolly*. SFUSD does not ask whether wrongdoing occurred, but what
> constitutes an injury in the context of an asbestos-in-building case. Injury
> and wrongdoing are distinct legal issues. (See *Jolly v. Eli Lilly & Co.*, supra,
> 44 Cal.3d at p. 1112, 245 Cal.Rptr. 658, 751 P.2d 923.) The word "injury" is
> a term of art referring to the damaging effect of the wrongful act, not the act
> itself. (See *Zambrano v. Dorough* (1986) 179 Cal.App.3d 169, 172, 224
> Cal.Rptr. 323.) Last year, the California Supreme Court distinguished
> between ignorance of the identity of the wrongdoer and ignorance of the
> injury itself. (See *Bernson v. Browning-Ferris Industries*, supra, 7 Cal.4th at
> p. 932, 30 Cal.Rptr.2d 440, 873 P.2d 613.) As *Jolly* assumes injury has
> occurred, *Jolly* may reasonably be read to apply when the issue is
> wrongdoing, but not when the issue is what constitutes injury.
>
> The California Supreme Court has recognized that in unusual cases, a
> plaintiff may be aware of wrongdoing before damage arises. Ordinarily, a
> plaintiff has already suffered damage by the time the tortious conduct is
> discovered. Only in an unusual case will the plaintiff discover a defendant's
> negligence without having suffered any consequential damage. (See *Budd v.*
> *Nixen, supra, 6 Cal.3d at p. 201, 98 Cal.Rptr. 849, 491 P.2d 433* [legal
> malpractice case].) [since superseded by statute on other grounds, *see* C.C.P.
> § 340.6]. As asbestos-in-building cases are admittedly unique because of the
> dormant period before asbestos becomes friable, it seems reasonable to infer
> that contamination often arises after evidence of wrongdoing-the installation
> of potentially dangerous asbestos-has been discovered. 37 Cal.App.4th at
> 1333 (emphasis supplied).

California law clearly requires Grace to establish that each building involved

in CSU's  claims were contaminated from its fireproofing outside the statutory

period. The possibility of contamination is not enough because Grace has the

burden of proof. Moreover, the fact that other buildings may have asbestos, or

even may be contaminated, does not equate to a finding that the specific buildings at issue here were also contaminated.

## III.  CONCLUSION

Graces' motion must be denied because Grace fails to prove that claimant CSU knew or should have known that Grace's products contaminated CSU's buildings outside of the period permitted by the statute of limitations.  Such contamination is the only thing that will trigger the running of the statute and Grace denies that its products *ever* contaminated claimant's buildings.

Grace's other argument – that CSU has somehow admitted such contamination – is inconsistent with the facts.  Finally, Grace's assertion that claims CSU may have had against other asbestos manufacturers somehow triggers the running of the statute against Grace has no support in California law.

DATED:  March 16, 2007

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.[8]
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 654-0248
Facsimile:    (302) 654-0728
E-mail:    loizides@loizides.com

---

[8] F/k/a Loizides & Associates.  Name change pending.

24

Thomas J. Brandi
Terence D. Edwards
THE BRANDI LAW FIRM
44 Montgomery Street Suite 1050
San Francisco CA 94104
Telephone:     (415) 989-1800
Facsimile:     (415) 989-1801

C. Alan Runyan (SC Fed. ID No. 4837)
Marion C. Fairey, Jr. (SC Fed. ID No. 6101)
SPEIGHTS & RUNYAN
200 Jackson Avenue, East
Post Office Box 685
Hampton, SC 29924
Telephone:     (803) 943-4444
Facsimile:     (803)943-4599

*Counsel for California State University*