## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 01-01139 (JKF) |
| W. R. GRACE & CO., et al., | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: April 9, 2007 9:00 a.m.** |
| Debtors. | )) | **Pittsburg, PA** |
| | ) | |
| | ) | **Response Deadline: March 19, 2007** |
| | ) | |
| | ) | **Related Docket No. 9315** |
| _____ | ) | **(Related Document 14594)** |

## CLAIMANT THE REGENTS OF THE UNIVERSITY
## OF CALIFORNIA'S OPPOSITION TO GRACE'S MOTION
## <u>FOR SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS</u>

THE BRANDI LAW FIRM
THOMAS J. BRANDI
TERENCE D. EDWARDS
44 Montgomery Street, #1050
San Francisco, CA 94104
Telephone:    (415) 989-1800
Facsimile:    (415) 989-1801

SPEIGHTS & RUNYAN
C. ALAN RUNYAN
MARION C. FERRY
200 Jackson Avenue East
Post Office Box 685
Hampton, SC 29924
Telephone:    (803) 943-4444
Facsimile:    (803) 943-4599

LOIZIDES, P.A.
CHRISTOPHER D. LOIZIDES (No. 3968)
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 654-0248
Facsimile:    (302) 654-0728

# TABLE OF CONTENTS

I.    Introduction                                                                    1

II.   Legal Argument                                                                  2

      A.   Grace Has Failed to Show Any Evidence that the
Statute of Limitations Has Lapsed                                                     2

         1.   Grace Has the Burden of Proving its Affirmative
Defenses Based on the Statute of Limitations.                                         2

         2.   Where, As Here, Grace Has Failed To Establish
That EVERY Element of the Cause of Action,
Including Contamination, Arose Outside the
Statutory Period, Grace Has Failed to Meet Its
Burden of Proof That UC's Claims are Barred by
the Statute of Limitations                                                           4

         3.   The Statute of Limitations is Determined on a
Building-by-Building Basis Using Accepted
Scientific Techniques                                                                6

         4.   Grace Has Not And Cannot Present Evidence
Showing That The Subject Buildings Were
Contaminated by Friable Asbestos from Grace's
Fireproofing So That an Actual and Appreciable
Harm Occurred Outside the Limitations Period                                         8

         5.   Grace Has Not And Cannot Present Evidence
Showing That The Subject Buildings Were
Contaminated by Friable Asbestos from Grace's
Fireproofing So That an Actual and Appreciable
Harm Occurred Outside the Limitations Period                                         12

      B.   The 1990 Petition Is Not An "Admission" Because UC
and the State Are Not The Same Entity and UC Did Not
Consent to Participate in the Petition                                               13

i

1.    UC and the State Are Separate Entities As
      Shown By the Fact That UC - Not the State -
      Owns UC's Property                                        13

2.    Grace Has Failed To Produce Any Evidence
      That UC Authorized the State To File the 1990
      Petition on Behalf of UC's Property                      18

3.    Even If UC Were Somehow Included, the Filing
      of the 1990 Petition Did Not Trigger The
      Running of the Statute of Limitations For All
      State Buildings, Let Alone All of UC's
      Buildings.                                               20

4.    Even If UC Were Somehow Included,  the Filing
      of the 1990 Petition Did Not Trigger The Running
      of the Statute of Limitations For All State
      Buildings, Let Alone All of UC's Buildings              22

C.    The Johns-Manville Claims Did Not Even Trigger the Statute
      of Limitations for All Manville Products, Let Alone Grace
      Products                                                 27

III.  CONCLUSION                                               33

ii

# TABLE OF AUTHORITIES

## CASES

3250 Wilshire Blvd. Bldg. v. W.R. Grace & Co., 1989 WL 260222
    (C.D.Cal. Jul. 24, 1989)                            24

Adams-Arapahoe School District No. 28-J v. GAF Corp., 959 F.2d 868
    (10th Cir.1992)                            24

Banc One Bldg. Management Corp. v. W.R. Grace & Co., 157 Wis.2d 814
    (1990)                            25

BellSouth Communications v. W. R. Grace & Co., 77 F.3d 603
    (2d Cir.1996)                            24

Board of Educ. of City of Chicago v. A, C & S, Inc., 131 Ill.2d 428
    (1989)                            25

California Sansome v. U.S. Gypsum, 55 F.3d 1402
    (9th Cir. 1995)                   3, 5, 10, 24, 32

Catasauqua Area School District v. Eagle-Picher Indus., 1988 WL 102689
    (E.D.Pa. Sept. 28, 1988)                    25

City of Greenville v. W.R. Grace & Co., 827 F.2d 975
    (4th Cir. 1987)                    5, 10, 11, 24

City of Manchester v. National Gypsum Co., 637 F.Supp. 646
    (D.R.I.1986)                          25

City of Wichita v. United States Mineral Product Co.. 72 F.3d 1491
    (10th Cir.1996)                         24

City of San Diego v. U.S. Gypsum Co. 30 Cal.App.4th 575
    (1994)                          27, 28, 32

County of Santa Clara v. Atlantic Richfield Co.
    (2006) 137 Cal.App.4th 292      28

Dugan v. EMS Helicopters, Inc., 915 F.2d 1428
    (10th Cir 1990)      19, 20

Fox v. Ethicon Endo-Surgery, Inc.
    (2005) 35 Cal.4th 797      30

Franklin County Sch. Bd. v. Lake Asbestos of Quebec, Ltd., 1986 WL 69060
    (N.D.Ala. Feb. 13, 1986)      25

Grisham v. Philip Morris U.S.A., Inc. Cal.Rptr.3d, 2007 WL 473678
    (Feb. 15, 2007)      30

Hebron Pub. Sch. Dist. No. 13 v. U.S. Gypsum, 690 F.Supp. 866
    (D. N.D.1988)      25

In re Work Uniform Cases  133 Cal.App.4th 328
    (2005)      15

Ishimatsu v. Regents of the University of California 266 Cal.App.2d 854
    (1968)      15

Jolly v. Eli Lilly & Co. 44 Cal.3d 1103
    (1988)      28, 29

Kershaw County Bd. of Educ. v. U.S. Gypsum Co., 302 S.C. 390
    (1990)      25

Landry v. Keene Corp., 811 F.Supp. 367
    (N.D.Ill. 1993)      10

MDU Resources Group v. W.R. Grace and Co., 14 F.3d 1274
    (8th Cir. 1994)      10, 13

Oakland Raiders v. City of Berkeley 65 Cal.App.3d 62
    (1976)      20, 21

Regents of University of California v. Aubry  42 Cal.App.4th 579
    (1996)                                 14, 15, 16

Regents of University of California v. Benford  128 Cal.App.4th 867
    (2005)                                 19

Regents of the University of California v. City of Santa Monica
77 Cal.App.3d 130
    (1978)                                19, 20

San Francisco Labor Council v. The Regents of the University of California
26 Cal.3d 785
    (1980)                                15, 16

San Francisco Unified School District v. W.R. Grace & Co.
37 Cal.App.4th 1318
    (1995)             5, 8, 9, 12, 23, 24, 27, 32

School Dist. of City of Independence v. U.S. Gypsum Co., 750 S.W.2d 442
    (Mo.App.1988)                         25

THS Northstar v. W. R. Grace & Co., 66 F.3d 173
    (8th Cir.1995)                       24

Tioga Public School District v. U. S. Gypsum; 984 F.2d 915
    (8th Cir.1993)                       24

Town of Hooksett Sch. Dist. v. W.R. Grace & Co., 617 F.Supp. 126
    (D.N.H.1984)                        25

Williams v. Union Carbide Corp., 790 F.2d 552
    (6th Cir. 1986)                      19

## STATUTES

Constitution of the State of California
    Article IV, § 9                     15
    Article IX, § 9         14, 15, 16, 20

Claimant The Regents of the University of California's Opposition to Grace's Motion for Summary Judgment based on the Statute of Limitations

California Education Code
   § 92436                                           14
   § 92437                                           14

Federal Rule of Evidence
   801                                             18, 19

Claimant The Regents of the University of California's Opposition to Grace's Motion for Summary Judgment based on the Statute of Limitations

# I. INTRODUCTION

California law provides that the statute of limitations in an asbestos-in-building case does not start to run until there is actual contamination in that particular building. Since Grace explicitly and tacitly admits there was no contamination, its Motion for Summary Judgment directed toward The Regents of University of California's[1] claims must be denied.

Graces' contention that claimant "admitted" "identical injuries" outside the statute of limitations period is simply not true.   Grace erroneously assumes – without citing any evidence or authority – that the University of California (UC) and the State of California are the same entity.  In fact, as provided by the Constitution of the State of California, UC and the State of California are separate entities and UC owns and manages its own property separate from the State. Moreover, Grace fails to provide any evidence that UC consented – as required by law – to the State of California filing a 1990 petition in the United States Supreme

---

[1] Grace's Motion for Summary Judgment (Document 14594) was directed towards four different California claimants who made a total of 109 different claims:  1 claim for County of Sonoma, 16 claims for the California Department of General Services (DGS), 36 claims for the California State University System (CSU), and 56 claims for and The Regents of the University of California (UC).  Each of these claimants is a different legal entity.

UC and CSU are represented by the same law firms but these two claimants were created by and governed by different laws and their claims have different facts so this opposition is filed solely on behalf of The Regents of the University of California.   Sonoma and DGS are represented by two different firms.

Court on its behalf.   Finally, Grace relies on a claim form submitted by UC which has been amended and is no longer the operative claim.

## II. LEGAL ARGUMENT

## A. Grace Has Failed to Show Any Evidence that the Statute of Limitations Has Lapsed

The statute of limitations is an affirmative defense and Grace – not claimants – bears the burden of proof.  Grace admits that California law governs these claims. Therefore Grace must prove that contamination was present from its asbestos-containing fireproofing products prior to the applicable accrual date and that claimant knew (or should have known) of that contamination.  Only after Grace first proves each of these elements does the burden shift to claimants to provide contrary evidence.  Grace has provided *no* evidence that *any* of the subject buildings were contaminated by Grace's products prior to the applicable accrual date.  Because Grace has failed to provide information to sustain its burden of proof, Grace's motion must be denied.

### 1. Grace Has the Burden of Proving its Affirmative Defenses Based on the Statute of Limitations

In an asbestos-in-building case arising under California law, the Ninth Circuit Court of Appeal has specifically noted that the defendant has the burden of

2

proof on the statute of limitations to establish that all of the essential elements of

the cause of action arose outside the statutory time period.  In *California Sansome*

*v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995), the Ninth Circuit summarized

California law as follows:

> A defendant raising the statute of limitations as an affirmative defense has
> the burden of proving the action is time barred. *See, e.g., Permanente*
> *Medical Group/Kaiser Found. Hosp. v. Workers' Compensation Appeals*
> *Bd.*, 171 Cal.App.3d 1171, 217 Cal.Rptr. 873, 876 (1985) (citing *Kaiser,*
> *Found. Hosp. V. Workers' Compensation Appeals Bd.*, 39 Cal.3d 57, 216
> Cal.Rptr. 115, 702 P.2d 197 (1985)) ("The burden of producing evidence
> sufficient to show [plaintiff's] claim is barred was upon [defendant] who had
> asserted the statute as a defense."); cf. *Palmer v. Hoffman*, 318 U.S. 109,
> 117, 63 S.Ct. 477, 482, 87 L.Ed. 645 (1943) (finding state law governs the
> allocation of the burden of proof in diversity cases).  Under California law,
> the limitation period commences "upon the occurrence of the last element
> essential to a cause of action." *City of San Diego*, 35 Cal.Rptr.2d at 881; *see*
> *CAMSI IV v. Hunter Technology Corp.*, 230 Cal.App.3d 1525, 282 Cal.Rptr.
> 80, 85 (1991); *Leaf v. City of San Mateo*, 104 Cal.App.3d 398, 163 Cal.Rptr.
> 711, 715 (1980).  A tort cause of action does not accrue until there is
> wrongdoing and "actual and appreciable harm." CAMSI IV, 282 Cal.Rptr.
> at 85; *see Davies v. Krasna*, 14 Cal.3d 502, 121 Cal.Rptr. 705, 713, 535 P.2d
> 1161, 1169 (1975); *City of San Diego*, 35 Cal.Rptr.2d at 881; *see also Jolly*
> *v. Eli Lilly & Co.*, 44 Cal.3d 1103, 245 Cal.Rptr.658, 661, 751, P.2d 923,
> 926-927 (1988) ("[T]he common law rule, that an action accrues on the date
> of injury . . . applies only as modified by the 'discovery rule' "); *Dolan v.*
> *Borelli*, 13 Cal.App.4[th] 816, 16 Cal.Rptr.2d 714, 717 (1993) (same); *Bell v.*
> *Hummel and Pappas*, 136 Cal.App.3d 1009, 186 Cal.Rptr.688, 694 (1982)
> ("Even after knowing of a wrongful act, if there is no actual irremediable
> damage, there is no running of the statute of limitations.") [since overruled].
> Thus, the defendant has the burden of demonstrating the complained of
> wrongdoing and harm occurred outside the limitations period.

Grace fails to carry this burden because, as discussed below, it does not present any evidence at all that the statute of limitations has lapsed for UC's claims.

2. **Where, As Here, Grace Has Failed To Establish That EVERY Element of the Cause of Action,  Including Contamination, Arose Outside the Statutory Period, Grace Has Failed to Meet Its Burden of Proof That UC's Claims are Barred by the Statute of Limitations**

Grace concedes that in California the statute of limitations in an asbestos-in-building case is governed by the rule of *San Francisco Unified School District v. W.R. Grace & Co.* (1995) 37 Cal.App.4th 1318 which held:

> [I]n an asbestos-in-building case, the mere presence of asbestos constitutes only a threat of future harm.  Contamination by friable asbestos is the physical injury and the actual, appreciable harm that must exist before a property owner's strict liability or tort cause of action against an asbestos manufacturer accrues and the limitation period commences.

*Id.* at 1335; *see also id.* at 1322 ("the statute of limitations in an asbestos-in-building case does not commence until there has been damage in the form of contamination.").  *SFUSD*, along with other cases, sets five separate hurdles that Grace must overcome to prevail on its statute of limitations defense.  Grace must prove that its wrongdoing resulted in the following:

4

1) contamination of the subject building, *see SFUSD*, 37 Cal.App.4th at

1335; *California Sansome*, 55 F.3d 1402, 1406; *see also City of Greenville v.*

*W.R. Grace & Co.*, 827 F.2d 975, 980 (4th Cir. 1987);

2) by the release of fibers from friable asbestos, *see SFUSD*, 37 Cal.App.4th

at 1335;

3) manufactured by Grace, *see California Sansome*, 55 F.3d at 1406;

4) causing actual and appreciable harm, *see SFUSD*, 37 Cal.App.4th at 1335;

5) outside the statutory period, *see id.*

Applying *SFUSD* and *California Sansome* to this case, it is clear that Grace

must establish both wrongdoing and injury prior to the applicable accrual date.

Therefore, Grace must establish that its product contaminated each of UC's

buildings as a result of its wrongdoing prior to the accrual date for the statute of

limitations to be a bar.  Grace has mustered no evidence to show that any of the

buildings were contaminated at all and, in fact, admits the opposite is true.

Indeed, in *California Sansome*, the Ninth Circuit reversed the trial court and

ordered a new trial where the trial court had wrongfully placed the burden of proof

on the plaintiff to establish that pre-statute injury (i.e., contamination) did not

occur.  The court stated that "The [district] court's analysis mistakenly treats the

occurrence of appreciable injury as equivalent to the discovery of that injury." *Id.*

The court continued: "We are not aware of, and [the defendant] fails to cite, any

5

cases in which the occurrence of injury serves as an exception like the discovery rule, thereby shifting the burden to the plaintiff to demonstrate the non existence of appreciable harm." *Id.*

### 3.    Grace's Discovery Responses Admit that There is No Asbestos Contamination in Claimant's Buildings

Claimant sent a number of discovery requests to Grace regarding the question of contamination and in every response Grace denied that there was contamination and stated it was not aware of any evidence or documents to the contrary.

On March 12, 2007 Grace responded to claimant's special interrogatories as follows[2]:

> 3.    Do you contend that the Claimant's building has been injured or damaged by asbestos fibers released from Mono-kote or other surfacing treatment manufactured by Grace? . . .
>
> Answer:
> Subject to and not waiving the foregoing General Objections, no.
>
> 4.    Do you contend that the Claimant's building has been injured or damaged by the presence of asbestos fibers in Mono-kote or other surfacing treatment manufactured by Grace? . . .
>
> Answer:
> Subject to and not waiving the foregoing General Objections, no.

---

[2] The responses are attached as Exhibit A to the Declaration of Terence D. Edwards.

6

On the same day, Grace also responded to claimant's requests for admission as

follows:

> 1.    The claimant's building has been injured or damaged by asbestos
> fibers released from Mono-kote or other surfacing materials manufactured
> by Grace.
>
> Response:
> Denied
>
> 2.    The Claimant's building has been injured or damaged by the presence
> of asbestos in Mono-Kote or other surfacing materials manufactured by
> Grace.
>
> Response:
> Denied

Finally, Grace made the same admissions in response to requests for production of

document that specifically addressed the contamination issue:

> 6.    Each document which you allege tends to prove that the Claimant's
> building is or was contaminated with asbestos fibers released from Mono-
> kote or other surfacing treatment manufactured by Grace:
>
> Response:
> Subject to and not waiving the General Objections, Debtors have made no
> such allegations
>
> 7.    Each document which you allege tends to prove that the Claimant's
> building was injured or damaged by the presence of asbestos-containing
> Mono-kote or asbestos-containing surface treatment manufactured by Grace.
>
> Response:
> Subject to and not waiving the General Objections, Debtors have made no
> such allegations

These admissions kill Grace's motion. They were all made on March 12, 2007 –

well after Grace filed its motion for summary judgment.  Grace bears the burden of

proof of establishing contamination and they have utterly failed to do so.

### 4. The Statute of Limitations is Determined on a Building-by-Building Basis Using Accepted Scientific Techniques

Lacking the required evidence of contamination, Grace attempts to argue

that contamination of other buildings (such as those that were the subject of the

Manville claims) somehow triggers the statute of limitations issue regarding the

specific buildings at issue here.  First, this completely ignores the fact that Grace

has uniformly denied that any of claimant's buildings are contaminated – as

discussed above.  In any event, California law does not permit such a ruse.

California law clearly states that the statute of limitations in asbestos-in-building

cases does not run <u>until there is contamination in the subject building and the

plaintiff knows or should know of such contamination in that particular building</u>:

> As we have found, a strict liability or negligence cause of action accrues in
> an asbestos-in-building case when the building becomes contaminated or the
> Plaintiff should have known that contamination occurred.  Contamination
> constitutes injury—when injury is the last element of the cause of action for
> strict liability or negligence to occur, the cause of action accrues and the
> statute of limitations begins to run when contamination occurs.

*SFUSD*, 37 Cal.App.4[th] at 1335-36.  The California Court of Appeal in *SFUSD*

went to direct that "As the trial court <u>erroneously focused on when SFUSD was put</u>

8

on notice that its schools contained potentially dangerous asbestos, we think it prudent to remand this matter to the trial court for a determination of when contamination occurred at each school or when SFUSD should reasonably have discovered that each school's contamination occurred." *Id.* at 1336 (emphasis supplied); *see also id.* at 1336 n.6 ("SFUSD alleges that each of the six schools in which asbestos was installed were built at different times, with construction beginning between 1968 and 1973. Thus, the factual question of when contamination occurred must be resolved on a building-by-building basis.").

In this case, Grace has the burden of showing there was contamination present (or the claimants should have known of contamination) in each of UC's buildings for which a claim has been filed prior to the accrual date. Only evidence regarding each specific building can establish when the requirements of wrongdoing and injury were actually present in that building.

Instead, all Grace has done is to assert that UC should have known there was contamination by Grace products in all of its buildings because UC alleged there was contamination by Manville products in some of its buildings. This approach is at least two steps removed from the actual legal standard. Neither the mere presence of asbestos in an uncontaminated subject building nor actual contamination in other buildings are sufficient for the statute of limitations to accrue for a claim based on a subject building. *See SFUSD*, 37 Cal.App.4[th] at

9

1335.  California's requirement of actual contamination is consistent with tests employed by other jurisdictions.[3]

While contamination is at the heart of when an asbestos-in-building cause of action accrues, Grace's motion is silent about when any building was

---

[3] Contamination, which is the injury in an asbestos-in-building case, encompasses a scientific determination by experts as to the contamination of the building. Such a determination is addressed in *MDU Resources Group v. W.R. Grace and Co.*, 14 F.3d 1274 (8th Cir. 1994), and *City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975. In *City of Greenville*, the Fourth Circuit held that a jury could reasonably have found contamination where evidence was presented that "Greenville's experts took samples from the office areas of the city hall and found that a significant number of asbestos fibers had contaminated areas in which people worked. For example, the testing revealed 8,550,000 asbestos fibers per square foot in the carpet of one office area, and 170,000 asbestos fibers per square foot on the surface of one office computer." 827 F.2d at 979-80. Upholding a jury verdict against Grace, the Fourth Circuit reviewed trial evidence of testing of dust samples and noted: "From the evidence presented by Greenville, the jury reasonably could have found that the city hall was contaminated by significant amounts of asbestos, and that the asbestos had come from the fallen Monokote and Monokote dust." *Id.* at 980.

In *MDU Resources*, the plaintiff sued Grace for Monokote in its building placed in 1968. In 1980, Health Department tests revealed that the Monokote fireproofing contained 15-25% asbestos. The plaintiff there first learned that the Monokote was releasing fibers and contaminating its building in 1988, when testing confirmed contamination and "subsequent tests found an average of more than 78 billion asbestos fibers per square foot on horizontal surfaces below the fireproofing." *MDU Resources*, 14 F.3d at 1276. The Eighth Circuit applied the contamination standard for Grace's statute of limitations defense and reversed a jury verdict for Grace that was obtained because the trial court wrongly applied the "discovery of asbestos" standard. *See also California Sansome*, 55 F.3d at 1405 n.5 (the parties agreed and the court defined contamination as "the release of asbestos fibers into the air of Sansome's buildings sufficient to constitute elevated levels- is the 'harm' that triggers the ruling [sic] of the statute of limitation . . . .").

In *Landry v. Keene Corp.*, 811 F.Supp. 367 (N.D.Ill. 1993), the plaintiffs acquired two separate buildings at the same time in 1984. At the time they acquired the buildings, the plaintiffs received reports about the asbestos problems in one of the buildings. The plaintiffs brought an asbestos property damage suit on the other building after they later discovered that the second building also contained asbestos. Notably, the defendant moved for summary judgment, arguing that the plaintiffs' actual knowledge about the asbestos in the first building put them on notice that the second building *might* contain asbestos. Once the plaintiffs actually knew about the first building's asbestos problems, the defendant contended, it should have known about the asbestos in the second building and could have easily contacted the second building's prior building owner or checked that building's specifications. The Northern District for the District of Illinois disagreed, aptly holding that the "duty to investigate" under the discovery rule of accrual "does not arise until after plaintiffs knew or should have known that an injury occurred and that it was wrongfully caused." *Id.* at 373. The injury, of course, is contamination, not the mere presence of asbestos in other buildings. "The purpose of the investigation is to determine whether the injury is actionable," the court held, and not whether one has been injured in the first instance. *Id.* at 373-74.

contaminated. How can Grace possibly argue that claims are barred when it denies contamination and presents absolutely no evidence of contamination? It is not as if Grace is unaware of the contamination requirement. Contamination involves analysis of many factors. A surface in a building is contaminated when the concentration of asbestos fibers in a given area of surface dust is sufficient to result in significant increase in the airborne concentration of asbestos when the surface dust is disturbed by activities normally expected to occur. Experts utilize electron microscopy to examine the surface dust and analyze the concentration of asbestos fibers in the surface dust. The methods of collection of dust samples are well-recognized and are performed pursuant to scientific protocols.

From its involvement as a defendant in multiple asbestos-in-building cases (including *City of Greenville*, *MDU Resources* and *SFUSD*) Grace knows what contamination is and it knows that to sustain its burden of proof it is necessary to present evidence of specific conditions existing in <u>each</u> of UC's buildings prior to the accrual date asserted by the plaintiffs. Grace must show that all of these elements existed. Grace must prove that its product caused the subject building to be contaminated by friable asbestos from Grace's fireproofing so that an actual and appreciable harm occurred prior to the asserted accrual date. Instead, Grace has attempted to meet its burden with speculation and silence.

11

5. **Grace Has Not And Cannot Present Evidence Showing That The Subject Buildings Were Contaminated by Friable Asbestos from Grace's Fireproofing So That an Actual and Appreciable Harm Occurred Outside the Limitations Period**

As set forth above, there must be actual and appreciable harm from contamination and not just nominal damage. In *SFUSD*, the mere presence of asbestos or testing of asbestos-containing material that does not reveal contamination does not begin the statute of limitations. *See* 37 Cal.App.4th at 1335 ("Contamination by friable asbestos is the physical injury and the actual, appreciable harm that must exist before a property owner's strict liability or tort cause of action against an asbestos manufacturer accrues and the limitation period commences."). The presence of potentially dangerous asbestos can only constitute a threat of future harm. Again, *SFUSD* is instructive:

> Testing and investigation are typically undertaken once a responsible property owner discovers that asbestos may be present in its building. But the act of testing and investigation which discloses no contamination cannot be equated with the actual harm of contamination. At best, such testing and investigation could show a threat of future harm. In light of the 'threat of future harm' cases and the unique analytical problems posed by an asbestos-in-building case, we may reasonably conclude that the California Supreme Court did not intend such a result. These expenses may be found to have been undertaken to determine when the threat of future harm ripens into appreciable, actual harm for purposes of the accrual of a tort cause of action. *Id.* at 1332-33.

Moreover, the fact that <u>other</u> buildings may have asbestos, or even may be contaminated, does not equate to a finding that claimants' buildings are

12

contaminated. Today, Grace repeats the same discredited script it has made in other cases before: namely, that for the purposes of the statute of limitations, any contamination predates the statute; but for all other purposes, there was no injury and no need to do anything.  Again *MDU Resources* is helpful: Grace argued at trial not only that the statute of limitations had run, but also that the plaintiff had suffered no injury from the asbestos Monokote. The arguments are inconsistent:  if MDU has suffered no injury from the Monokote, then it has no cause of action - until an injury is suffered, the statute of limitations cannot begin to run. *See, MDU Resources,* 14 F.3d at 1279-80 n. 9.

**B. The 1990 Petition Is Not An "Admission" Because It "Admits" Nothing Relevant, Because UC and the State Are Not The Same Entity, and Because UC Did Not Consent to Participate in the Petition**

### 1.    UC and the State Are Separate Legal Entities

Recognizing its failure to produce *any* evidence of contamination for a single UC building, Grace resorts to focusing on a 1990 Petition filed in the Supreme Court of the United States in which 29 States, including the State of California through the Office of Attorney General, sought permission to assert claims against Grace and other manufacturers of asbestos under the Public Assistance Doctrine.  This was not even actually a complaint or claim, it was only

a request to be allowed to file a complaint or claim. It is true that the State of California filed such a petition but this is irrelevant because the University of California is <u>not</u> the State of California. It is also true that when the claims forms were first filed, UC's attorneys did indicate that UC had previously filed suit against Grace for the subject buildings. However, this error was corrected by an amended claim form signed by the claimant that was filed on February 16, 2007. (See Exhibit C to the Edwards Dec.). Accordingly, the UC claim forms on which Grace exclusively relies are no longer the operative claim forms.

Grace's motion hastily and erroneously assumes – without citing any evidence, statutes, bylaws or other authority – that that the University of California and the State of California are the same entity. (*See* Motion at 3). In fact, UC and the State of California are separate legal entities. The University of California and its governing Regents were created by the California Constitution. *See* Cal. Const., Article IX, § 9(a) which created the Regents of the University of California.[4] As such, UC has the power to sue and to be sued, *see* Cal. Const., Article IX, § 9(f), and to enter into contracts, *see* Cal. Education Code §§ 92436, 92437. Further, it is clear that the Regents has "virtual autonomy in self governance," *see Regents of*

---

[4] Most public or state universities are creatures of state statute with their authority to act independently of the state substantially circumscribed. Only a small number of universities have substantial constitutional authority in which they are identified as a separate branch of government with virtually absolute authority over internal affairs, as is the case with the University of California.

14

*the University of California v. City of Santa Monica* (1978) 77 Cal.App.3d 130,

135.  As the California Supreme Court noted out in *San Francisco Labor Council*

*v. The Regents of the University of California* (1980) 26 Cal.3d 785, 788, "[w]e

recently pointed out 'the University is intended to operate as independently of the

state as possible.  (*See* Cal. Const., art. IV, §9.)".  (internal quotations omitted).

There are only three areas in which UC is subject to legislative regulation:

appropriations regarding salaries, general police power regulations, and regulations

governing matters of statewide concern not involving internal university affairs. *In*

*re Work Uniform Cases* (2005) 133 Cal.App.4th 328, 343.

   Because of its unique status as both a public body serving a state interest, but

not the state itself, UC is not the State nor a "department, agency, or

instrumentality" of the State for all purposes.  In *Ishimatsu v. Regents of the*

*University of California* (1968) 266 Cal.App.2d 854, 864, UC was described as "a

branch of the state government equal and coordinate with the legislature, the

judiciary and the executive".[5]

   Article IX, section 9 of the Constitution of the State of California grants The

Regents of UC primary authority over higher education at the University of

---

[5] This co-equal status also explains why the University of California enjoys certain powers and immunities afforded to "State" entities, such as Eleventh Amendment immunity.

California subject to limitations contained in the Constitution and certain

limitations developed by case law.  The powers and duties of The Regents as

defined in Article IX, Section 9(f) provide in relevant part:

> The Regents of the University of California shall be vested with the legal
> title and the management and disposition of the property of the university
> and of property held for its benefit and shall have the power to take and
> hold, either by purchase or by donation, or gift, testamentary or otherwise, or
> in any other manner, without restriction, all real or personal property for the
> benefit of the university or incidentally to its conduct .... Said corporation
> shall also have all the powers necessary or convenient for the effective
> administration of its trust, including the power to sue and to be sued, to use a
> seal, and to delegate to its committees or to the faculty of the university, or
> to others, such authority or functions as it may deem wise.

This Constitutional provision distinguishes UC from state-owned

administrative agencies whose powers derive from statute and whose authority is

limited by statute.  This Constitutional provision has been interpreted as granting

"the regents broad powers to organize and govern the university and limits the

Legislature's power to regulate either the university or the regents." *San Francisco

Labor Council, supra,*  26 Cal.3d at 788; *see also Regents of University of

California v. Aubry* (1996) 42 Cal.App.4th 579, 586, *Regents of University of

California v. City of Santa Monica, supra*, 77 Cal.App.3d at 135.  "[T]he power of

the Regents to operate, control, and administer the University is virtually

exclusive." *San Francisco Labor Council, supra*, 26 Cal.3d at 788 (citations and

internal quotation marks omitted).

16

Moreover, the California Attorney General, which is the department of the State of California which actually filed the 1990 Petition, has stated in a published opinion on the autonomy granted to The Regents:

> [I]t is a Constitutional corporation or department and constitutes a branch of state government equal and coordinate with the legislature, the judiciary and the executive …. The Regents, not the legislature, have the general rule-making or policy-making power in regard to the University …. it is clear, however, that the power of The Regents to operate, control and administer the University is virtually exclusive.

30 Ops. Cal. Atty. Gen. 162, 166 (1957).

In addition to the clear Constitutional provisions establishing the separate status of UC, there are a number of facts that demonstrate this status as well. UC and the State are represented by different law firms in this action. (*See* Dec. of Eric Behrens ¶4). The State makes its legal decisions and acts through the Office of Attorney General. (*See* Behrens Dec. ¶4). The University of California acts through its own legal counsel who, in turn, reports to The Regents of the University of California. (*See* Behrens Dec. ¶4). In this action, the State filed claims for its properties, while The Regents filed claims for its properties. (*See* Behrens Dec. ¶4).

## 2.    Grace Has Failed To Produce Any Evidence That UC Authorized the State To File the 1990 Petition on Behalf of UC's Property

Grace argues that the 1990 petition constitutes an admission by UC.

(Motion at 6).  Because Grace fails to provide any evidence that UC consented – as

required by law – to the State's filing the 1990 petition on UC's behalf, Grace's

argument fails.

Under the Federal Rules of Evidence, an admission of a party-opponent is

not considered hearsay.  Federal Rule of Evidence 801(d)(2) states that a statement

is not hearsay if:

> The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person **authorized** by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

The only possible category that the 1990 Petition could fall under is **subpart**

**(C),** "a statement by a person authorized by the party to make a statement

concerning the subject."  The petition was filed by the State of California, not UC.

As part of the autonomy that UC exercises, UC must consent to the State suing on

behalf of UC.  (Behrens Dec. ¶5)  The California Attorney General's Office cannot

file a suit on behalf of UC without its permission, since under Bylaw 21.2, "The

General Counsel and Vice President for Legal Affairs ... shall have general charge

18

of all legal matters pertaining to the Corporation in **all** legal proceedings."

(emphases supplied)(Behrens Dec. ¶6). This Bylaw is the legal equivalent of a

state statute. *See, e.g., Regents of University of California v. Benford* (2005) 128

Cal.App.4th 867, 872; *Regents of the University of California v. City of Santa*

*Monica* (1978) 77 Cal.App.3d 130, 135. As set forth in ¶6 of the Behrens Dec.,

UC did not provide consent for the California Attorney General to represent UC in

the petition before the Supreme Court. So the Petition cannot be an admission by

UC under Fed. Rule Evid. 801(d)(2)(C) and the summary judgment should be

denied on this ground.

Grace also fails another requirement of FRE 801(d)(2):

> The contents of the statement shall be considered but are not alone sufficient
> to establish the declarant's authority under subdivision (C), the agency or
> employment relationship and scope thereof under subdivision (D), or the
> existence of the conspiracy and the participation therein of the declarant and
> the party against whom the statement is offered under subdivision (E).

Grace has not provided any other evidence at all other than the statements in the

Petition that supports its contention that the State had authority to speak on behalf

of UC.

The cases Grace relies upon, *Williams v. Union Carbide Corp.*, 790 F.2d 552

(6th Cir. 1986) and *Dugan v. EMS Helicopters, Inc.*, 915 F.2d 1428 (10th Cir.

1990) are inapplicable because they involve admissions made by people authorized

to make such statements. *Williams,* for instance, held that a statement made by an

attorney in a prior complaint was an admission against the client because the

attorney was authorized to act on behalf of the client. *Dugan* held that an

allegation made in a complaint by a party could be used as an admission against

that party at another trial.  In contrast, Grace has presented no evidence that UC

provided consent to the State, and therefore neither the State nor its attorneys had

the authority to file the petition on behalf of UC.  As the State and UC are separate

entities, consequently the Petition cannot be considered an admission by UC.

### 3. Even if UC Were Somehow Included, the Filing of the 1990 Petition Did Not Trigger the Running of the Statute of Limitations for UC's Buildings, because They are Not Owned by the State

In *Oakland Raiders v. City of Berkeley* (1976) 65 Cal.App.3d 623, the court

recognized the broad power Article IX, Section 9(f) provided to the Regents in the

sole ownership and management of UC property:

> [T]he Regents of the University of California are vested by the Constitution with the legal title and management of property of the University of California **and have the unrestricted power to take and hold real and personal property for the benefit of the university.** (Cal. Const., art. IX, s 9, subd. (f).) Thus, the University of California is not subject to local regulations with regard to its use or management of the property held by the Regents in public trust.

*Id.* at 626 (emphasis supplied).

Grace's misunderstanding of the autonomy between UC and the State is

evidenced by its focus that the 1990 petition "purported to include all 'state-owned

buildings and facilities.'" (Motion at 3; *see also* Motion at 4 (citing petition as encompassing property owned by the State of California)[6]. In fact, as set forth above, the State of California does not own or operate the various campuses of the University of California; they are held in trust by The Regents. (*See* Cal. Const., art. IV, §9(f); *see also* Behrens Dec. ¶3); *Oakland Raiders v. City of Berkeley*, *supra*, 65 Cal.App.3d at 626; *Regents of University of California v. City of Santa Monica* (1978) 77 Cal.App.3d 130, 136 (In light of the "virtually plenary power" of the Regents in the regulation of affairs relating to UC and the use of property owned or leased by UC for educational purposes, the Regents, in constructing improvements solely for educational purposes, were exempt from local building codes and zoning regulations and were also exempt from payment of local permit and inspection fees.). And as set forth above, it is UC – not the State of California – who is constitutionally empowered to make decisions, subject to certain limitations, regarding the sale, use, lease, etc. of its property. Accordingly, because the State of California does not own the UC property, the 1990 petition could not have possibly encompassed the UC property that it does not own.

---

[6] Elsewhere, the Petition states: "as owners of public buildings contaminated by asbestos-containing products. The States seek equitable relief designed to reimburse them for the costs incurred in abating the asbestos contamination present in state-owned buildings and facilities." (Brief in Support of Motion for Leave to File Complaint, p. 11, Exhibit B to Grace's motion.)

Simply put, the State does not own or operate any of the buildings for which UC has filed claims. (Behrens Dec. ¶3) Instead, pursuant to Article IX, Section 9 of the Constitution of the State of California, the various campuses of the University of California are owned and operated by The Regents of the University of California. (Behrens Dec. ¶3) Even if one ignores the separate legal status of he University of California, the petition is still irrelevant because legal title to claimant's buildings is not held by the State.

### 4. Even If UC Were Somehow Included, the Filing of the 1990 Petition Did Not Trigger The Running of the Statute of Limitations For All State Buildings, Let Alone All of UC's Buildings.

Grace alleges that the 1990 Petition is proof that UC "knew of [its] claims, and of the injuries and damages [it] purport[s] to have suffered, by at least 1990"[7] (Motion at 4). Apparently, this is Grace's only evidence to establish that the subject buildings involved in this bankruptcy were contaminated before the asserted accrual date.

First, the information on the claim form about the 1990 Petition cannot be construed as an admission because Grace's interpretation of it is inconsistent with other information on the same claim form. Specifically, Question 18 asked, "When did you first know of the presence of asbestos in the property of the Grace

---

[7] The Petition was dismissed without comment or prejudice by the United State Supreme Court.

Product for which you are making this claim?"  Claimant responded "2003."

(Exemplar claim form is Exhibit B to the Edwards Dec.).    Question 20 asked,

"When did you first learn that the Grace product for which you are making this

claim contained asbestos?"  Again, claimant responded "2003."  The Court will

recall that there has been considerable discussion at various hearings about these

two questions and, at Grace's request, claimant supplemented all of the claim

forms it filed previously to provide a signature of the client (in addition to the first

signature of the attorneys) to regarding these issues.  (Exemplar of Amended Claim

form is Exhibit C to Edwards Dec.).  Obviously, if UC did not even know that

Grace products in its buildings contained asbestos until 2003, it is impossible that

UC could have "admitted" back in 1990 that its building was contaminated by

asbestos from Grace's products.

Second, the 1990 Petition pre-dated *SFUSD* which was decided in 1995.

Thus, at the time the Petition was filed, it was unclear in California (and,

apparently in many other states) what constituted "injury" in an asbestos-in-

building case.  *See, e.g.*, the 1990 Petition at paragraphs 6, 7, 11, 19, and 32 where

seemingly different types of injuries are asserted.  The State of California rightfully

joined the Petition to protect its rights in an abundance of caution.  With *SFUSD*, it

is clear that contamination, and not simply the mere presence of asbestos, is the

injury that triggers the accrual date.

23

Third, Grace's position would reverse its burden of proof as required by *SFUSD* and *California Sansome*. Those cases require Grace to offer evidence of when the subject buildings were contaminated or when the claimants should have known of contamination. The 1990 Petition made no allegations about the specific UC buildings at issue in this bankruptcy. Accordingly, the State of California's decision to participate in an analogous suit involving 29 states proves nothing about when the specific UC buildings may have been contaminated by Grace's asbestos products. Indeed, had the Petition been granted by the U. S. Supreme Court, Grace would have undoubtedly argued with some force and based upon existing case law that the State of California could not recover past or future abatement costs because it could not prove that Grace products in state buildings had contaminated the buildings with asbestos.[8]

_____

[8] *See, Adams-Arapahoe School District No. 28-J v. GAF Corp.*, 959 F.2d 868 (10th Cir.1992) (emphasis supplied); *City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975, 976-78 (4th Cir.1987) (the release of toxic fibers from an asbestos-containing fireproofing product rendered the manufacturer liable for damages to the property owner under South Carolina tort law); *Tioga Public School District v. U. S. Gypsum*, 984 F.2d 915 (8th Cir.1993) (finding Tioga's claims recoverable in tort because they had alleged and proven that asbestos fibers from the ceiling plaster had been released and contaminated the school); *THS Northstar v. W. R. Grace & Co.*, 66 F.3d 173 (8th Cir.1995) ("the distinction between the mere presence of asbestos-containing materials in a building and actual release and contamination is critical" because "no cause of action exists until there has been a substantial release"); *BellSouth Communications v. W. R. Grace & Co.*, 77 F.3d 603 (2d Cir.1996) (claim does not accrue until contamination of the building by asbestos and consequent health risk occurs); *City of Wichita v. United States Mineral Product Co.*, 72 F.3d 1491 (10th Cir.1996) (holding actual physical injury by "contamination" is an essential element of any negligence claim and liability may not be premised upon the mere risk of future harm not yet suffered); *3250 Wilshire Blvd. Bldg. v. W.R. Grace & Co.*, 1989 WL 260222 at *4-8 (C.D.Cal. Jul. 24, 1989) (recognizing that allegations of actual contamination constitute valid tort damages claims, whereas tort claims for injury by virtue of mere presence of asbestos-containing products or by virtue of a

Fourth and finally, viewed in context, the 1990 Petition is far too vague and scattershot to ever be an admission. The petition was not an actual lawsuit or a claim, it was a request to the United States Supreme Court to permit filing of a lawsuit. Grace has supplied no authority that such a document could be the basis for a legally binding admission. Although UC was not involved in the Petition, it understands that genesis of the petition was a group of State Attorneys General who conceived of the Petition and then asked various State Attorney Generals if they wished to join the petition. To that end, some 29 different Attorneys General signed onto the Petition that sought permission to file suit against 25 different

---

potential risk of harm are invalid); *Catasauqua Area School District v. Eagle-Picher Indus.*, 1988 WL 102689 (E.D.Pa. Sept. 28, 1988) (removal and replacement costs of asbestos cement constitute economic loss not recoverable under tort absent demonstration that cement contaminated other property or that it created a significant health risk to building occupants); *Hebron Pub. Sch. Dist. No. 13 v. U.S. Gypsum*, 690 F.Supp. 866, 870 (D. N.D.1988) (negligence claim survived motion to dismiss where plaintiffs alleged asbestos products released harmful fibers into the building); *City of Manchester v. National Gypsum Co.*, 637 F.Supp. 646, 651- 52 (D.R.I.1986) (court denied motion to dismiss finding that allegations of contamination constituted allegations of physical harm sufficient to support a claim for negligence under New Hampshire law); *Franklin County Sch. Bd. v. Lake Asbestos of Quebec, Ltd.*, 1986 WL 69060 at *5-6 (N.D.Ala. Feb. 13, 1986) (school board's negligence claim dismissed for failing to allege actual, present harm, i.e. contamination); *Town of Hooksett Sch. Dist. v. W.R. Grace & Co.*, 617 F.Supp. 126, 130-31 (D.N.H.1984) (motion to dismiss denied because plaintiff alleged contamination and contamination constitutes a physical injury cognizable under tort); *Kershaw County Bd. of Educ. v. U.S. Gypsum Co.*, 302 S.C. 390, 393, 396 S.E.2d 369, 371 (1990) (judgment against manufacturer of asbestos-containing ceiling materials on negligence claim upheld where plaintiff alleged and proved damage to other property); *Banc One Bldg. Management Corp. v. W.R. Grace & Co.*, 157 Wis.2d 814, 461 N.W.2d 448 (1990) (unpublished disposition) (dismissal of negligence action affirmed where plaintiff failed to allege actual physical harm); *Board of Educ. of City of Chicago v. A, C & S, Inc.*, 131 Ill.2d 428, 443, 137 Ill.Dec. 635, 642-43, 546 N.E.2d 580, 587-88 (1989) ("dangerousness which creates a risk of harm is insufficient standing alone to award damages in ... negligence; however, allegations of asbestos release are sufficient to defeat a motion to dismiss"); *School Dist. of City of Independence, Mo., No. 30 v. U.S. Gypsum Co.*, 750 S.W.2d 442, 456 (Mo.App.1988) (jury verdict upheld where school district provided evidence of contamination caused by defendant's asbestos-containing acoustical ceiling plaster).

companies.[9]  There is no reason to believe – and certainly no evidence – that each

state intended to bring claims against each potential defendant.  Presumably, if the

Petition had been granted, the next step would have been for the States to draft

complaints.  The 29 states have different laws regarding product liability, different

statutes of limitations, and so forth.  Claims and causes of action permissible in

some states would not have existed in other states so, presumably, each state would

have filed its own complaints or states with similar laws would have joined

together to file complaints.  But it is absurd to believe that any of the States

believed at the time that the Petition was filed that it would have viable causes of

action against every one of the defendants.  So, at most, the 1990 Petition offers

speculation about what claims the different states *might* have eventually filed.

Finally, setting aside the fact that UC is not the State of California, even if the

process had gone forward and the State had filed a claim against Grace, that would

not have started the running of the statute of limitation as regards Grace.  Only

---

[9] The potential "defendants" listed in the Petition were: W.R. Grace & Company, National Gypsum Company, United States Gypsum Company, USG Corporation, American Biltrite, Inc., Armstrong World Industries, Inc., Azrock Industries, Inc., Basic Incorporated, Carey-Canada, Inc., The Celotex Corporation, Certainteed Corporation, Crown Cork & Seal Company, Inc., Eagle-Picher Industries, Inc., Fibreboard Corporation, The Flintkote Company, GAF Corporation, Georgia-Pacific Corporation, H.K. Porter Company, Inc., Keene Corporation, Kentile Floors, Inc., Owens-Corning Fiberglas Corporation, Owens-Illinois, Inc., Pfizer, Inc., Raymark Industries, Inc., Sprayed Insulation, Inc., and Turner & Newall PLC.

contamination and actual and appreciable harm can trigger the running of the statute of limitations.

## C. The Johns-Manville Claims Did Not Even Trigger the Statute of Limitations for All Manville Products, Let Alone Grace Products

Grace argues that the damages alleged by UC in the prior Johns-Manville bankruptcy claim somehow triggered the statute of limitations for any and all asbestos property damages. This grossly misstates California law. As Grace itself states on page 8 of its memorandum of points and authorities: "No cause of action accrues and no claim can be filed in a tort action until the damage has occurred, as the limitations period does not begin to run until the last element essential to the cause of action occurs. *SFUSD*, 37 Cal.App.4th at 1326; *City of San Diego*, 30 Cal.App.4th at 582."

Here, Grace denies all contamination by its products in any UC building outside the statute period.

Grace cites to the case of *City of San Diego v. U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575 case for the proposition that any injury from any asbestos-containing product in any building an entity owns triggers the running of the statute of limitations for all asbestos products in every building. This overstates the holding of the *San Diego* case and Grace's argument is also incorrect for a

27

several reasons.  The unique facts of the *San Diego* case make it inapplicable here.

The City of San Diego's complaint alleged that asbestos dust had been

"continuously" released since the installation of the materials, thereby admitting

that appreciable harm had occurred more than three years earlier. *Id.* at 583.  In

other words, *San Diego* never addressed the question of when the statute of

limitations starts to run because the plaintiff had <u>admitted</u> that it had started to run.

As another court recently stated:

> *San Diego* is of no assistance here. The Second District avoided resolving
> the question of *when or if* accrual had occurred for the City's strict liability
> and negligence causes of action. Instead, *San Diego* relied on the fact that
> the City, by asserting that asbestos contamination was the alleged physical
> injury for which it sought relief and alleging that some contamination had
> occurred more than three years earlier, had essentially conceded that the
> statute of limitations barred its action even if contamination constituted
> physical injury and resulted in the accrual of the City's causes of action.

*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 322

Moreover, *San Diego* relied solely on the *Jolly v. Eli Lilly & Co.* (1988) 44

Cal.3d 1103 without any analysis or reasoning.[10]  Examination of the facts of the

*Jolly* case demonstrates that it has no relevance to the facts of this case.  First, <u>the</u>

<u>discovery rule only applies when all of the elements for the cause of action are</u>

---

[10] Here is the relevant section it its entirety: "This claim establishes City suffered more than 'nominal' damages beyond the three-year statute of limitations period. Moreover, it matters not that the claim was directed to Johns-Manville Corporation and not these defendants since the statute of limitations is not delayed because plaintiff does not know the wrongdoer's identity. (*Jolly v. Eli Lilly & Co., supra,* 44 Cal.3d 1103, 1112, 245 Cal.Rptr. 658, 751 P.2d 923, fn. 8.)." *San Diego, supra,* 30 Cal.App.4th at 584.

28

established. In *Jolly*, the plaintiff was injured *in utero* by her mother's use of

estrogen diethylstilbestrol (DES). *Id.* at 1108. Although the *Jolly* plaintiff first

learned that her mother's DES use might cause her injury in 1972 and although she

had surgeries in 1976 and 1978 as a result of her injuries she did not file suit until

1981. *Id.* In other words, 1) Lilly's tortuous conduct had occurred, 2) plaintiff had

actually suffered the resulting injuries, and 3) she knew that her injuries were

likely caused by her mother's DES use - all outside of the statute period. The only

thing she claimed not to know was the identity of the manufacturer of the DES. In

contrast, here there is no evidence whatsoever – none – that UC suffered any injury

because of Grace's products outside of the statute period.

Second, Grace's argument is simply illogical and would encourage a

voluminous filing of unnecessary lawsuits. Under Grace's theory, claims that any

asbestos manufacturer's products have contaminated a building start the statute

running against all manufacturers, even if there is no evidence that the other

manufacturers have caused any injury. In other words, suppose a property owner

discovers that floor tiles in one of its buildings manufactured by Company X are

deteriorating and releasing asbestos. Clearly, the statute of limitations starts to run

and the property owner has to file suit against Company X within the time

permitted by the statute of limitations. However, further suppose that said building

also contains Grace's spray-on fireproofing but there no evidence that the

fireproofing has started to deteriorate. If the property owner were also to file suit against Grace, no doubt Grace would argue that there is no injury from its product so Grace has no liability. On the other hand, if the property owner does not file suit and three years pass, Grace will argue, as it does here, that the suit is untimely. Grace cannot have it both ways.

Grace's argument – that knowledge of harm from one entity triggers the statute of limitations for all harms from all other similar entities – has - been repeatedly rejected by the California Supreme Court in similar contexts, most recently in February 2007. *See Grisham v. Philip Morris U.S.A., Inc.* (Feb. 15, 2007) --- Cal.Rptr.3d ----, 2007 WL 473678. *Grisham* involved the issue of whether, for purposes of statute of limitations governing tobacco-related personal injury actions, persons were presumed to have been aware by 1988 that smoking caused addiction and other health problems. As relevant to these proceedings, the Supreme Court discussed its prior holding in *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797 where the Court rejected a similar argument Grace now asserts:

> [W]e **rejected** the holding in *Bristol-Myers Squibb Co. v. Superior Court* (1995) 32 Cal.App.4th 959, 966, 38 Cal.Rptr.2d 298, that "[w]hen a plaintiff has cause to sue based on knowledge or suspicion of negligence the statute starts to run as to *all* potential defendants," regardless of whether those defendants are alleged to be wrongdoers in a different cause of action.

*Id.* at *13 (emphasis supplied). The Supreme Court noted that:

One of the reasons for our rejection was that "[i]t would be contrary to public policy to require plaintiffs to file a lawsuit 'at a time when the evidence available to them failed to indicate a cause of action.' [Citations.] Were plaintiffs required to file all causes of action when one cause of action accrued, as they would be under the *Bristol-Myers Squibb* rule, they would run the risk of sanctions for filing a cause of action without any factual support. [Citations.] Indeed, it would be difficult to describe a cause of action filed by a plaintiff, before that plaintiff reasonably suspects that the cause of action is a meritorious one, as anything but frivolous. At best, the plaintiff's cause of action would be subject to demurrer for failure to specify supporting facts (see, e.g., 4 Witkin, Cal. Procedure (4th ed.1997), Pleading, § 339, p. 436 [requirement of pleading facts] ). In sum, the interest of the courts and of litigants against the filing of potentially meritless claims is a public policy concern that weighs heavily against the *Bristol-Myers Squibb* formulation of the discovery rule."

*Id.* at *13 (quoting *Fox, supra,* 35 Cal.4th at 815).

Turning to Philip Morris' argument, which is similar to Grace's herein, the

Supreme Court stated:

In the present case the rule proposed by Philip Morris, like the *Bristol-Myers Squibb* rule we rejected in *Fox,* would compel cigarette smokers either to file groundless tort causes of action based on physical injury against tobacco companies as soon as they discovered they were addicted to cigarettes and had an unfair competition cause of action (again, assuming such a cause of action exists), or risk losing their right to sue in tort for such physical injury. This rule would violate the essence of the discovery rule that a plaintiff need not file a cause of action before he or she " 'has reason at least to suspect a factual basis for its elements.' [Citation.]" ( *Fox, supra,* 35 Cal.4th at p. 807, 27 Cal.Rptr.3d 661, 110 P.3d 914.) It would directly contravene "the interest of the courts and of litigants against the filing of potentially meritless claims." ( *Id.,* at p. 815, 27 Cal.Rptr.3d 661, 110 P.3d 914.)

Id. at *13.

31

Third, *San Diego* is inconsistent with subsequent California and Federal authority that specifically focus on when the statute of limitations is triggered in an asbestos-in-building case. In *California Sansome*, the district court mistakenly framed delayed injury as an exception to the orthodox running of the limitations period thereby displacing injury as an essential element of the cause of action. "The 'discovery rule,' on the other hand, assumes that the elements of accrual including harm exist, but tolls the ruling of the statute until the plaintiff is on inquiry notice of its injury (and its wrongful cause)." *California Sansome*, 55 F.3d at 1406. Simply stated, in *Jolly*, where the issue was the occurrence of wrongdoing, is distinguishable from an asbestos-in-building case, where the issue is occurrence of injury. As *SFUSD* aptly summarized:

> The issue presented by our case is distinguishable from that presented in *Jolly*. SFUSD does not ask whether wrongdoing occurred, but what constitutes an injury in the context of an asbestos-in-building case. Injury and wrongdoing are distinct legal issues. (See *Jolly v. Eli Lilly & Co.*, supra, 44 Cal.3d at p. 1112, 245 Cal.Rptr. 658, 751 P.2d 923.) The word "injury" is a term of art referring to the damaging effect of the wrongful act, not the act itself. (See *Zambrano v. Dorough* (1986) 179 Cal.App.3d 169, 172, 224 Cal.Rptr. 323.) Last year, the California Supreme Court distinguished between ignorance of the identity of the wrongdoer and ignorance of the injury itself. (See *Bernson v. Browning-Ferris Industries*, supra, 7 Cal.4th at p. 932, 30 Cal.Rptr.2d 440, 873 P.2d 613.) As *Jolly* assumes injury has occurred, *Jolly* may reasonably be read to apply when the issue is wrongdoing, but not when the issue is what constitutes injury.
>
> The California Supreme Court has recognized that in unusual cases, a plaintiff may be aware of wrongdoing before damage arises. Ordinarily, a plaintiff has already suffered damage by the time the tortious conduct is

32

discovered. Only in an unusual case will the plaintiff discover a defendant's negligence without having suffered any consequential damage. (See *Budd v. Nixen, supra,* 6 Cal.3d at p. 201, 98 Cal.Rptr. 849, 491 P.2d 433 [legal malpractice case].) [since superseded by statute on other grounds, *see* C.C.P. § 340.6]. As asbestos-in-building cases are admittedly unique because of the dormant period before asbestos becomes friable, it seems reasonable to infer that contamination often arises after evidence of wrongdoing-the installation of potentially dangerous asbestos-has been discovered. 37 Cal.App.4th at 1333 (emphasis supplied).

California law clearly requires Grace to establish that each building involved in UC's claims were contaminated from its fireproofing outside the statutory period. The possibility of contamination is not enough because Grace has the burden of proof. Moreover, the fact that other buildings may have asbestos, or even may be contaminated, does not equate to a finding that the specific buildings at issue here were also contaminated.

## III. Conclusion

Graces' motion must be denied because Grace fails to prove that claimant UC knew or should have known that Grace's products contaminated UC's buildings outside of the period permitted by the statute of limitations. Such contamination is the only thing that will trigger the running of the statute and Grace denies that its products *ever* contaminated claimant's buildings.

Grace's other argument – that UC has somehow admitted such contamination – is contrary to both law and fact. UC did not participate in the

33

State of California's 1990 Petition so it cannot be bound by it.  Finally, Grace's

assertion claims that UC may have had against other asbestos manufacturers

somehow triggers the running of the statute against Grace has no support in

California law.

DATED:  March 19, 2007

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.[11]
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 654-0248
Facsimile:     (302) 654-0728
E-mail:         loizides@loizides.com

Thomas J. Brandi
Terence D. Edwards
THE BRANDI LAW FIRM
44 Montgomery Street Suite 1050
San Francisco CA  94104
Telephone:    (415) 989-1800
Facsimile:     (415) 989-1801

C. Alan Runyan (SC Fed. ID No. 4837)
Marion C. Fairey, Jr. (SC Fed. ID No. 6101)
SPEIGHTS & RUNYAN
200 Jackson Avenue, East
Post Office Box 685
Hampton, SC  29924
Telephone:    (803) 943-4444
Facsimile:     (803)943-4599

*Counsel for California State University*

---

[11] F/k/a Loizides & Associates.  Name change pending.