IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

FILED
2007 MAR 19 PM 12: 12

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | # 14593 |
| Debtors. | ) | |
| | ) | |

**RESPONSE OF JOHN M. BELFERMAN, CLAIMANT NO. 12752,
TO DEBTORS' MOTION AND MEMORANDUM FOR AN ORDER
PURSUANT TO F.R.B.P. 7056 DISALLOWING AND EXPUNGING
ELEVEN (11) ASBESTOS PROPERTY DAMAGE CLAIMS
INVOLVING PRODUCTS NOT MADE BY THE DEBTORS**

John M. Belferman ("Claimant"), having filed Claim No. 12752 (the "Claim") for asbestos property damage claims in this action, responds to Debtors' Motion for an Order Disallowing Property Damage Claims ("Debtors' Motion") as follows:

1. On or about February 16, 2007, Debtors filed a Motion (which their counsel, Mr. Restivo, characterized as a "summary judgment motion" in a telephonic conference with the Honorable Judith K. Fitzgerald, United States Bankruptcy Judge, on March 8, 2007), seeking to disallow eleven (11) property damage claims including that of the Claimant. Debtors' Motion, allegedly relying on the Expert Report on "Product Identification" of Richard J. Lee, Ph.D. ("Dr. Lee"), is based on two grounds: (1) the bald assertion that Dr. Lee conclusively establishes that the alleged asbestos-containing product involved in Claimant's claim "[*is*] *not* Debtors' surfacing product[ ]" (emphasis added) , and (2) that the laboratory analysis submitted by Claimant further establishes the presence of a component, namely, cellulose, that precludes its identification as a product made by Debtors. Debtors insist that this leaves no material facts to be established and that they are therefore entitled to summary judgment. For the reasons set forth below, Debtors' Motion is without merit and should be denied.

2. On October 21, 2005, Claimant filed his Response to "Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims," in which Debtors erroneously contended that the instant Claim was "not accompanied by *any* documentation reflecting airborne asbestos levels inside the building[ ]" (emphasis in original). In his Response, Claimant reiterated the basis for his Claim – namely, that he was required to have removed, by a professionally qualified firm, wallboard coated with an asbestos-containing material in order to refinish the original plaster walls and ceilings underneath – and resubmitted all of the substantiating documentation filed with his original Claim, including a laboratory analysis and report (Response Exhibit 1), the third-party air monitoring report (Response Exhibit 3), and a copy of his original Proof of Claim Form (Response Exhibit 4) in which he characterized the asbestos-containing

product as what he believed to be "textured paint applied to sheetrock" and "painted wallboard." Of these, only the latter page, Bates-stamped 012752-000005, was included in Debtors' Tab A to their "Appendix to Rule 1006 Summaries With Information Attached," accompanying their present Motion for Summary Judgment. For the Court's convenience, all of the relevant pages described in this Paragraph are attached hereto as Exhibit 1.

3. In support of the present Response, and by way of further clarification regarding the collection and condition of the sample submitted by Claimant for laboratory analysis, as substantiated by his attached Affidavit (Exhibit 2), Claimant avers that the sample of the textured, asbestos-containing substance which he removed remained attached to the paper surfacing of the wallboard, and that he submitted the entire sample for analysis.

4. The analysis of the foregoing sample performed by Labcorp of Richmond, Virginia on behalf of Claimant's abatement contractor, ACM Services Corporation of Rockville, Maryland, corroborates that it included the paper wallboard surfacing described above, i.e., "WHITE CHALKY W/WHITE PAPER-LIKE" material (see Exhibit 1). That the entire sample was analyzed by the laboratory is attested by its conclusion, "Asbestos found in white chalky *only*" (emphasis added). The laboratory's analysis goes on to describe the following components of the entire sample: Chrysotile (i.e., asbestos), >1-5%; Cellulose, 20%; and Non-fibrous, 75%. Debtors neglected to include this report in their Motion for Summary Judgment, which purports to set forth all "undisputed facts" relevant to their Motion.

5. To repeat, Debtors' Motion makes the conclusory assertion that the "allegedly asbestos-containing product[ ]" described in the instant Claim is "not Debtors' surfacing product[ ]," ostensibly based on Dr. Lee's expert report. In fact, Dr. Lee's report not only does not support this contention, but contains contradictory and internally inconsistent assertions. For example, Debtors' Motion claims that their asbestos-containing products consisted only of a fireproofing material described as "Monokote-3" and certain "acoustical plaster." Yet Appendix A to Dr. Lee's report, entitled "Grace Product Formulas," identifies the relevant products as "asbestos-containing acoustical plaster, *surface texture* and fireproofing products" (emphasis added), a description not inconsistent with Claimant's description of what he (a non-expert) believed to be a "textured paint." Dr. Lee further contends, at page 7 of his report, that submitted sample results are deemed to be "inconsistent" with Debtors' product formulas if they (1) contain constituents foreign to those formulas, (2) lack constituents called for in the formulas, or (3) contain constituents in disproportionate amounts to those specified in said formulas. Yet he goes on, at page 8 of his report, to describe a category of "samples with insufficient laboratory data" to establish *any* conclusion whether the material was inconsistent *or not* with Debtors' formulas -- including "laboratory results [that] indicated the amount of chrysotile asbestos that was present but did not identify any of the other constituents of the material" or "identified the remaining portion of the material simply as 'binder' or 'non-fibrous material' without identifying the specific components that make up the binding material" -- a description that matches the analysis submitted by Claimant.

6. Having conceded that a category labeled "insufficient laboratory data," which would include that of Claimant, does not confirm or deny the presence of Debtors' product, Dr. Lee leaps forward at page 9 of his report to invent a sub-category 4.5, "Claims with Laboratory Data that *Fail to Establish* the Presence of a Grace Product" (emphasis added), including Claim No. 12752 – thus, presuming to the Court's role in determining this material fact issue. Debtors further gloss this "conclusion" by asserting in their Motion that it positively shows the sample submitted by Claimant *not* to be any of their products. In fact, Dr. Lee adduces no argument to support his *legal* conclusion that "insufficient data" equate to "fail[ure] to establish the presence of a Grace product" -- let alone Debtors' assertion that they affirmatively prove it is *not* their product. Finally, in the tables attached as Appendix B to Dr. Lee's report – specifying the "product identification" criteria applicable to the various property damage claims – Dr. Lee avers, with respect to Claimant's sample, only that it contains "wrong components" (about which more below), and *not* that it is "not a Grace product" as he asserts with respect to other claimants' samples. Dr. Lee's own concluding table, in other words, does not support Debtors' assertion that Claimant's sample is "not their product."

7. Lastly – with respect to Debtors' assertion that the laboratory analysis of Claimant's sample cites the presence of cellulose, which is not found in any of Debtors' products – Claimant submits that this may reasonably be explained by the presence of the paper-like, wallboard surfacing attached to the sample he submitted for analysis, which was analyzed along with the "chalky white," asbestos-containing material adhering to it. This in any event is an issue for a trier of fact to resolve.

WHEREFORE, Claimant respectfully requests that the Court deny Debtors' Motion for Summary Judgment.

Dated: March 16, 2007                           Respectfully submitted,

                                                */s/ John M. Belferman*
                                                John M. Belferman