IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re | ) | Chapter 11 |
| | ) | |
| W.R. Grace, et al., | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | |
| | ) | **Hearing Date: April 9, 2007 at 9:00 a.m. Pittsburgh, PA** |

**CLAIMANTS' RESPONSE TO DEBTORS' MOTION
FOR AN ORDER PURSUANT TO F.R.B.P. 7056 DISALLOWING AND
EXPUNGING THREE (3) PROPERTY DAMAGE CLAIMS
<u>BARRED BY STATUES OF REPOSE IN MINNESOTA</u>**

Claimants object to Debtor's motion seeking the disallowing and expunging of three (3) property damage claims[1] which are not in fact barred by the Minnesota statute of repose because of application of the fraud exception.

**I. Legal Standard**

Debtor seeks to expunge three (3) Minnesota property damage[2] claims invoking Federal Rule of Bankruptcy Procedure 7056. Rule 7056 incorporates Federal Rule of Civil Procedure 56 into the Bankruptcy Code and makes this summary judgment section applicable to such adversary proceedings. Civil Rule 56(c) provides, "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[1] Church of St. Helena (Claim No. 3512), Church of Holy Redeemer (Claim No. 6933), City of Barnesville (Claim No. 6936)

[2] Debtor's Motion seeks the expunging and dismissal of five property damage claims. This response is on the behalf of Church of St. Helena (Claim No. 3512), Church of Holy Redeemer (Claim No. 6933), City of Barnesville (Claim No. 6936).

there is *no genuine issue as to any material fact*." (emphasis added). The moving party on summary judgment bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Any disputed facts and inferences must be resolved in favor of the party opposing summary judgment. *Fleet Nat'l Bank v. H & D Entertainment, Inc.,* 96 F.3d 532, 537 (1st Cir.1996).

## II.  Acts of Fraud by Debtor Prevent Application of Minnesota Statute of Repose

The first words of the Minnesota statute of repose cited by Debtor are "Except where fraud is involved . . ." Minnesota Statute § 541.051(a). Specifically, the Minnesota Supreme Court has found that "[I]f the defendant has by fraud prevented the plaintiff from discovering the defective and unsafe condition within [the repose period], the statute is tolled until the plaintiff could, by reasonable diligence, have discovered the defective condition." *Wittmer v. Ruegemer,* 419 N.W.2d 493, 497 (Minn.1988).

Three major federal court cases[3] have considered the tolling of the Minnesota statute of repose based upon fraud. In all three of these cases Debtor was a defendant seeking the protection of the Minnesota statute of repose.

The case most relevant to these claims is *Independent School Dist. No. 197 v.*

*W.R. Grace*, in which the U.S. District Court for Minnesota used the Minnesota Supreme Court's *Wittmer* decision as guidance. 752 F.Supp. 286, 290 (D. Minn 1990).

---

[3] *Appletree Square 1 Limited Partnership, CHRC v. W.R. Grace & Co.,* 816 F.Supp 1266 (D. Minn 1993); *Metropolitan Federal Bank v, W.R. Grace & Co.*, 999 F.2d 1257 (8th Cir. 1993); *Independent School Dist. No. 197 v. W.R. Grace*, 752 F.Supp. 286 (D. Minn 1990).

In *Independent School Dist. No. 197*, a two step analysis was applied. First the court had to determine if "there is a genuine issue of material fact concerning whether Grace fraudulently concealed knowledge of the hazardous nature of asbestos during the pertinent time period." *Id.* at 290. Looking to this question the court found that there was a "genuine issue concerning whether defendant knew that [the affected building] contained asbestos products, and that asbestos may be linked to serious health effects, and whether that knowledge was fraudulently concealed from the public, including plaintiff." *Id.* Under the *Wittmer* analysis, a finding of fraudulent concealment tolls the statute of repose. *Wittmer*, 419 N.W.2d at 497.

The next step of the analysis looks to when the tolling of the statute of repose ends so that the ten year period may commence. After fraudulent concealment, the statute of repose is tolled until the plaintiff could, by reasonable diligence, have discovered the defective condition. *Wittmer*, 419 N.W.2d at 497. Therefore, the next issue considered in *Independent School Dist. No. 197* was when plaintiff should have discovered the injury. 752 F.Supp. at 290. The court in *Independent School District No. 197* found that the discovery rule is used in determining when the plaintiff discovered or reasonably should have discovered their injury following fraudulent concealment. *Id.* The court cited *Independent District No. 622 v. Bor-Son Construction, Inc.,*[4] and found that tolling

ended "when plaintiff learned the type and amount of asbestos used in the particular building, and that the presence of asbestos constituted a hazard requiring abatement." *Id.* Ultimately, the court in *Independent School Dist. No. 197* determined that there was a

---

[4] CIVIL C5-84-1701 (Minn. Dist. Ct. Mar. 25, 1987).

genuine issue of material fact to preclude entry of summary judgment based upon plaintiff's position that it did not become aware of the presence of asbestos at the effected building until the testing of a sample confirmed the present of asbestos. *Id.*

The other Minnesota federal court cases[5] considering the application of the fraud exception against W.R. Grace are factually distinct from the claims brought by these three Claimants. In both *Appletree Square 1 Limited Partnership, CHRC v. W.R. Grace & Co.* and *Metropolitan Federal Bank v. W.R. Grace & Co.* the buildings were purchased by parties subsequent to the installation of W.R. Grace products. 816 F.Supp 1266, 1275 fn. 15 (D. Minn 1993); 999 F.2d 1257, 1261 (8th Cir. 1993). In *Metropolitan Federal Bank* the court noted that "the parties had no dealings when the buildings at issue were constructed; [plaintiff] acquired those buildings years later and does not claim that W.R. Grace communicated anything that would toll the statute." 999 F.2d at 1261. Similarly, the court in *Appletree Square 1 Limited Partnership* noted that "W.R. Grace could not of course, have been concealing the truth from the plaintiffs prior to their purchasing the Appletree Project in 1981." 816 F.Supp at 1275 fn. 15.

Furthermore, both *Metropolitan Federal Bank* and *Appletree Square 1 Limited*

*Partnership* focus upon the lack of evidence of an "affirmative representation to the [plaintiff]." 999 F.2d at 1261; *see also* 816 F.Supp at 1276. Minnesota case law, however, recognizes three circumstances under which an affirmative duty to speak exists.

---

[5] *Concordia College Corp. v. W.R. Grace & Co.*, 999 F.2d 326 (8th Cir. 1993) is excluded from this analysis because in that case the court held that the plaintiff "failed to raise the issue in response to defendants' motion for summary judgment."

*Klein v. First Edina Nat. Bank*, 293 Minn. 418, 421, 196 N.W.2d 619 (Minn. 1972). Two

of these circumstances apply to these Claimants:

> (a) *One who speaks* must say enough to prevent his words
> from misleading the other party. *Newell v. Randall*, 32
> Minn. 171, 19 N.W. 972 (1884).
> (b) One who has *special knowledge of material facts to
> which the other party does not have access* may have a
> duty to disclose these facts to the other party. *Marsh v.
> Webber*, 13 Minn. 109, Gil. 99 (1868).

*Klein*, 293 Minn. at 421 (emphasis added).

Through advertising Debtor made deceptive statements both about the hazards of

asbestos and about the bonding properties of their products. These statements created a

duty to speak.

Furthermore, Grace and its predecessors possessed special knowledge in the years

following the installation of Zonolite on the Claimant's properties which was not

available to the Claimants. As such, Grace had an affirmative duty to reveal the dangers

of Zonolite.

### III. Fraudulent Concealment

Zonolite was installed at St. Helena's Church (Claim No. 3152) in 1954. *See*

"Zonolite Acoustical Plaster Installation Excerpts" attached as Exhibit "A" and

incorporated by reference. Zonolite was installed at the Church of Holy Redeemer

(Claim No. 6933) in the early 1950's.[6] *See* Exhibit "A." Zonolite was installed at the

City of Barnesville facilities in 1950 (Claim No. 6936). *See* Exhibit "A."

W.R. Grace has long known of the dangers asbestos. In 1936, Bradley Dewey,

President of Dewey and Almy Chemical Company, believed that "the subject of dust

---

[6] The excerpts note the "Montgomery Catholic Church."

would soon be one of the most important problems in the asbestos industry.  He thought that this dust was definitely harmful. . ."  *See* "National Research Laboratories Progress Report 1936" attached as Exhibit "B" and incorporated by reference.  Dewey and Almy Chemical Company was acquired by W.R. Grace in 1954.  By the 1950's when Zonolite was installed at these Claimants' buildings W.R. Grace and its predecessor corporations were clearly aware of the dangerous of asbestos.  For example a 1954 letter reveals that Zonolite Co. was receiving information about the "accumulation of fine dust" in the lungs of workers.  *See* "Letter of December 21, 1954" attached as Exhibit "C" and incorporated by reference.  In 1957, J.A. Kelley, Executive Vice President of Zonolite Company called a letter from the Bureau of Mines regarding "asbestos in Libby ore. . . pretty well founded."  *See* "Letter of June 26, 1957" attached as Exhibit "D" and incorporated by reference.  Corporate documents further reveal that internally Grace Executives were discussing the "dangers of exposing our employees to asbestos dust while they are manufacturing acoustical plastic."  *See* "Letter of December 21, 1955" attached as Exhibit "E" and incorporated by reference.

Furthermore in this same time period Grace and its predecessors were becoming aware that Zonolite had a strong tendency to crack and become separated.  Internal

corporate documents reveal that it was known that Zonolite Acoustical Plastic repeatedly "lost its bond to the base coat plaster" and that this was producing "a great deal of anxiety."  *See* "Letter of May 26, 1954" attached as Exhibit "F" and incorporated by reference.  In fact a 1954 report was created on "acoustical plastic bond failures."  *See*

"Memorandum of December 15, 1954" attached as Exhibit "G" and incorporated by reference.

These exhibits raise a material question of fact as to whether Grace and its predecessors had unique knowledge both of the dangers of asbestos in their products and of the bonding failures which could potentially release asbestos. Given that Debtor possessed special knowledge of this danger not available to the Claimants, Debtor was under a duty to reveal this information. *Klein*, 293 Minn. at 421 ("One who has *special knowledge of material facts to which the other party does not have access* may have a duty to disclose these facts to the other party."). Failure to reveal this information with the 10 year period of the Minnesota statute of repose constituted fraud which tolled the statute.

Statements made in Grace advertising during this period constituted affirmative statements which created a duty to speak. For example, Grace advertised Zonolite as "non-irritating to the skin and lungs." *See* "Zonolite Insulating Fill Advertisement" attached as Exhibit "H" and incorporated by reference. Despite their knowledge of the bonding failures of Zonolite Plaster Debtor's advertised Zonolite plaster as "up for keeps" and "stands the test of time." *See* "Zonolite Plaster is up for Keeps!" attached as Exhibit "I" and incorporated by reference.

These deceptive advertisements constitute a circumstance in which "One who speaks must say enough to prevent his words from misleading the other party." *Klein*, 293 Minn. at 421 (citing *Newell v. Randall*, 32 Minn. 171, 19 N.W. 972 (1884). Debtor did not however warn Claimants of either the dangers of asbestos in their products, nor that the plasters bonding could fail releasing this asbestos.

Following these two forms of common law fraud the statute of repose was tolled until Claimants could, by reasonable diligence, have discovered the defective condition. *Wittmer*, 419 N.W.2d at 497. The Church of Holy Redeemer (Claim No. 6933) did not receive such notice until the results of a MAS analysis was completed in 2003. *See* "MAS Report" attached as Exhibit "J" and incorporated by reference. Similarly, the Church of St. Helena (Claim No. 3512) and City of Barnesville (Claim No. 6936) Claimants did not become aware of their claims until the commencing of Debtors Bankruptcy. *See* Claim Forms No. 3512 & 6936. Since tolling does not recommence until the Claimant "learned the type and amount of asbestos used in the particular building, and that the presence of asbestos constituted a hazard requiring abatement" the tolling of Claimant's actions did not recommence until after 2000. *See Independent School District No.* 197, 752 F.Supp. at 290. As such, these three Minnesota claims are not barred by the Minnesota statute of repose.

***[Remainder of Page Intentionally Left Blank]***

### III.  Conclusion

Debtor's actions constitute fraud which prevents the application of Minnesota

Statute § 541.051.  As such, Debtor's Motion to Expunge Three (3) Minnesota Property

Damage Claims should be denied.


Mt. Pleasant, SC
March 19, 2007


     Respectfully Submitted by:

          JASPAN SCHLESINGER HOFFMAN LLP

          /s/ Laurie S. Polleck
          Laurie S. Polleck, Esquire (No. 4300)
          913 N. Market Street, 12th Floor
          Wilmington, Delaware 19801
          Telephone: (302) 351-8000
          Facsimile: (302) 351-8010
          E-mail: lpolleck@jshllp-de.com

          And

          MOTLEY RICE LLC
                  /s
          Anne McGinness Kearse
          MOTLEY RICE LLC
          28 Bridgeside Blvd.
          P.O. Box 1792
          Mount Pleasant, SC 29465
          Telephone: (843) 216-9140
          Facsimile: (843) 216-9440
          E-mail: akearse@motleyrice.com