# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | **Chapter 11** |
| | ) | |
| W. R. Grace & Co., et al.[1], | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Re: Docket No. 13701** |
| | ) | **Reply Deadline:  March 23, 2007** |
| | ) | **Hearing:  9:00 a.m., Pittsburgh, PA** |
| | ) | |
| | ) | **Claim No.: 9684** |
| | ) | **555 Olympus Properties, LLC** |
| | ) | **555 Broadhollow Rd.** |
| | ) | **Melville, NY 11747** |
| | ) | |
| | ) | **Claim No.:  6636** |
| | ) | **F.F. Thompson Continuing Care Center** |
| | ) | **350 Parish Street** |
| | ) | **Canadaigua, NY 14424** |
| | ) | |
| | ) | **Claim No.: 10722** |
| | ) | **IBM Metro Employees Fed. Credit Union** |
| | ) | **29-21 Queens Plaza North** |
| | ) | **Long Island City, NY 11101-4009** |
| | ) | |
| | ) | **Claim No.: 10747** |
| | ) | **Friendly Home Nursing Center** |
| | ) | **3156 East Avenue** |
| | ) | **Rochester, NY 14618** |
| | ) | |
| | ) | |
| | ) | |

---

[1] The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgracc, Inc., Coalgracc II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B 11 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

)  **Claim No.: 10749**
)  **Glen Oak Country Club**
)  **175 Post Road**
)  **Old Westbury, NY 11568**
)
)  **Claim No.: 10767**
)  **Oneida County Office Building**
)  **800 Park Avenue**
)  **Utica, NY 13502**
)
)  **Claim No.: 10947**
)  **Cayuga County Office Building**
)  **160 Genesee Street**
)  **Auburn, NY 13021**
)
)  **Claim No.: 11103**
)  **Schuyler Hospital**
)  **220 Steuben Street**
)  **Montour Falls, NY 14865**
)
)  **Claim No.: 11243**
)  **St. Joseph's Hospital**
)  **555 East Market Street**
)  **Elmira, NY 14901**
)
)  **Claim No.: 11703**
)  **1199 SEIU 310 W. 43rd St. Building**
)  **New York, NY 11036-6405**
)

## ANDERSON MEMORIAL HOSPITAL'S RESPONSE TO DEBTORS' MOTION FOR SUMMARY JUDGMENT DIRECTED TO 10 CLAIMS FROM THE STATE OF NEW YORK

By and through Anderson Memorial Hospital and on their own behalf, Claimants 555 Olympus, LLC (Claim No. 9684), F. F. Thompson Continuing Care Center (Claim No. 6636), IBM Metro Employees Federal Credit Union (Claim No. 10722), Friendly Home Nursing Care & Rehabilitation Center (Claim No. 10747), Glen Oak Country Club (Claim No. 10749), Oneida County Office Building (Claim No. 10767), Cayuga County Office Building (Claim No. 10947), Schuyler Hospital (Claim No. 11003), St. Joseph's Hospital (Claim No. 11243), 1199 SEIU (Claim No. 11703) respectfully submits its Response to the Debtors' Motion for Summary Judgment with respect to certain New York Property Damage Claims.

## I.    Statement of Position

The Debtors claim that there is no genuine issue of material fact that each of these ten New York asbestos property damage claims are time barred because the asbestos-containing Monokote fireproofing was installed in each of these buildings by 1973 at the latest, and that under New York law, that is the date the injury occurred and the statute of limitations began to run.  Among the problems with this argument is the fact that, with the exception of Claim No. 9684,  the Debtors failed to object to these claims on the basis of the actual knowledge of the Plaintiffs for statute of limitations purposes.  Moreover, the Debtors' Exhibit A to this Court's August 31, 2006 CMO and October 13, 2006 CMO for Objection Proceedings fails to list any of these claims (excepting Claim No. 9684) as being subject to a statute of limitations based defenses based upon the actual knowledge of the claimant.  Accordingly, nine of the have not even been scheduled as part of these proceedings.

The Debtors have also offered no evidence to show that the New York claimants have suffered any damage or injury from Grace asbestos-containing products outside the limitations period.  Indeed, the Debtors have admitted that it has no evidence that the New York claimants had been damaged or suffered an injury outside any limitations period.

Additionally, the Debtors' motion fails to correctly identify the applicable filing date for these claims.  Instead of April 2, 2001 – the date the Debtors filed their bankruptcy petition, the actual date of commencement for statue of limitations purposes is December 23, 1992, the date that the Anderson class action was filed.  Because each of these claimants have asserted that they were part of the Anderson case on their claim form, the statute of limitations was tolled as to these claimants from the commencement of the Anderson case.

Finally, the Debtors cannot rely on the concept of constructive knowledge to trigger the New York statute of limitations. For all of these reasons, the Debtors motion must be denied.

## II.    Statement of Pertinent Facts

The Claimants hereby incorporate the Factual Background and attached document summary from their prior Response to the Debtor's Fifteenth Omnibus Objection, submitted at Docket Nos. 10501, 9874, 9859, 9896, 10094, 10048, 9957, 10160, 10358 and 10805.

## III.    Argument

### A.    Actual Knowledge is Not Part of These Proceedings with respect to 9 Claims

Pursuant to this Court's June 22, 2002 Bar Order, Claim Nos. 6636, 10722, 10747, 10749, 10767, 10947, 11003, 11243, 11703 were filed prior to the March 31, 2003 bar date. As stated in the notice authorized by the bar order, claimants were instructed that they must file all claims under all theories on or before March 31, 2003.

On September 2, 2005, the Debtors' filed their 15th Omnibus Objection to asbestos property damage claims, objecting to thousands of claims on various bases including these claims. On June 16, 2006, Grace filed a Motion for a Scheduling Order Regarding Certain of the Debtor's Fifteenth Omnibus Objections to PD Claims (Substantive), which sought to establish a Case Management Order with respect to asbestos PD claims objections.

The Debtors then submitted a proposed CMO with respect to the 15th Omnibus Objection which scheduled claim objections to be heard in this Court in three proceedings (Methodology, Limitations and Product ID, and Hazard). Attached to the Debtors proposed CMO was a list of property damage claims and specific objections prepared by the Debtors indicating the specific claims and specific objections that would be adjudicated in the PD

Claims allowance proceedings. The purpose of the attached list of claims and specific objections was to provide specific notice to the Court and the claimants of which specific objections the Debtors sought to adjudicate.

On August 31, 2006, this Court entered a CMO, and then an amended CMO on October 13, 2006 after a number of individual claimants filed objections. The October 13, 2006 Order entered by this Court and served upon all claimants specifically provided that

> Certain specific objections to PD Claims will be adjudicated on **April 23, 24 and 25, 2007, commencing at 9:00 a.m., Eastern time,** in Pittsburgh, Pennsylvania. The objections that will be adjudicated as to these PD Claims are those asserted in the 15[th] Omnibus Objection regarding product identification and limitations periods (specifically C-1 through C-4, D-1 through D-6, F-1 and F-4 and F-5) . . .. *These claims are listed on Exhibit A hereto.* The pre-trial schedule for these objections is set forth in the Schedule attached as Exhibit B to this Order.

October 13, 2006 Order, ¶2 (Dk. No. 13406) (bold in original, italics supplied). Notably, Exhibit A did not list the specific Statute of Limitation Objections – Actual Notice (Objection D-4) for any of the claims subject to this motion for summary judgment except Claim No. 9684. (See Exhibit 1, excerpts from Exhibit A to August 31, 2006 CMO). Claim No. 11103 for Schuyler Hospital was not even listed in Exhibit A as a participant in any of these objections.

**B.**     **Burden of Proof**

**1.**     **Burden of Proof in Bankruptcy Objection Proceedings**

A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). See also, Fed. R. Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the

meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. *See* Adv. Comm. Notes to Fed. R. Bankr.P. 9014.

Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." Lundell v. Anchor Construction Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir.2000); citing, Wright v. Holm (In re Holm ), 931 F.2d 620, 623 (9th Cir.1991); see also, Ashford v. Consolidated Pioneer Mort., 178 B.R. 222, 226 (9th Cir. BAP 1995), aff'd, 91 F.3d 151, 1996 WL 393533 (9th Cir.1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." In re Holm, 931 F.2d at 623. Moreover, this is especially true where objection is based upon the affirmative defense of limitations upon which the Debtors' bear the ultimate burden of proof. Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481 (3d Cir.1985); California Sansome v. U. S. Gypsum Co., 55 F.3d 1402 (9th Cir.1995); Clayton Center Asso. v. W. R. Grace & Co., 861 S.W.2d 686 (Mo.App.1993).

### 2.    Standard for Summary Judgment

In reviewing a motion for summary judgment, the Court must view all facts and inferences in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary Judgment may only be granted if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP. If material facts are in dispute and further discovery is required, summary judgment should not be granted. Celotex v. Catrett, 477 U.S. 317, 322, 106 S.C. 2548, 91 LED.2d 265 (1986). The court must decide if the "evidence presents a sufficient disagreement to require

submission to the fact finder or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-53, 106 S.C. 2205, 2511-12, 91 LED.2d 202 (1986).

### C.    Grace Has Not Met its Burden on Any Claim

### 1.    The Debtors Assert the Incorrect Commencement Date

Grace claims that the "undisputed" commencement date for purposes of determining the statute of limitations is April 2, 2001, the date it filed its bankruptcy petition. This date is neither "undisputed" nor is it correct.

Each of these New York claimants have filed claim forms or amended claim forms that reference Anderson Memorial Hospital[2] class litigation that was filed on December 23, 1992. That litigation was ongoing at the time the Debtors bankruptcy petition was filed, and the New York claimants filing under that class action are entitled to have the statute of limitations tolled as of the date of filing.

Class action tolling is most often linked to the United State Supreme Court decisions American Pipe & Construction Company v. Utah, 414 U.S. 538, 554, 94 S.Ct. 756, 776, 38 L.Ed.2d 713 (1974) (holding that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action"); and Crown Cork & Seal v. Parker, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (holding that tolling applies even where the class action is dismissed so that absent class members may be permitted file and prosecute their own claims). However, New York courts recognized class action tolling long before these landmark cases were decided by the United States Supreme Court. As

---

[2] Anderson Memorial Hospital v. W. R. Grace & Co., et al., 92-CP-25-279 (Ct.Com.Pls, Hampton County, SC) (putative international class action).

explained by the Second Circuit, "New York courts have, in the interest of avoiding "court congestion, wasted paperwork and expense," long embraced the principles of *American Pipe*" Cullen v. Margiotta, 811 F.2d 698, 719 (2d Cir.1987) (citing numerous New York appellate decisions that hold that the filing of a class action tolls the statute of limitations as to absent class members in New York).[3]

In *Sutton Carpet Cleaners*, 68 N.Y.S.2d 218, 224 (Sup.Ct. Bronx Co. 1947), *aff'd*, 273 A.D. 944, 78 N.Y.S.2d 565 (1st Dep't 1948), *aff'd*, 299 N.Y. 646, 87 N.E.2d 53 (1949), the court was faced with 79 individual actions, at least some of which apparently had not been timely filed, and one purported class action filed days before the running of the limitations period.   The court noted that "[t]he law undoubtedly is that a representative action timely brought saves all represented claims from the running of the statutory or contractual period of limitations," and ruled that tolling had occurred in the case before it even though the putative **class** plaintiff was not a proper representative of the class.

Moreover, class action tolling has been held to apply until the denial of class certification has been finally determined on appeal.   Indeed, the United States Supreme Court has held so held. McDonald v. United Airlines, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977).   Moreover, numerous state appellate courts and federal district courts have reached the same conclusion.   See, American Tierra Corp. v. City of West Jordan, 840 P.2d 757 (Utah 1992); Fred Meyer of Alaska v. Adams, 963 P.2d 1025 (Alaska 1998); Scarvey v. First

---

[3] Yollin v. Holland America Cruises, Inc., 97 A.D.2d 720, 720, 468 N.Y.S.2d 873, 875 (1st Dep't 1983) ("We ... hold that the timely commencement of the action by plaintiff herein satisfied the purpose of the contractual limitation period as to all persons who might subsequently participate in the same suit as members of the class. See *American Pipe*...." ); Clifton Knolls Sewerage Disposal Co. v. Aulenbach, 88 A.D.2d 1024, 1025, 451 N.Y.S.2d 907, 908 (3d Dep't 1982) ("the Statute of Limitations on each of plaintiff's claims was tolled during the pendency of [a prior] class action"). *See also* 2 Weinstein-Korn-Miller, *New York Civil Practice* ¶ 901.06, at 9-21 (1986) (filing of class actions tolls statute of limitations as to all members of class "even if the class action is ultimately dismissed for reasons other than the fact that it was a frivolous action") (citing *American Pipe*).

Federal Savings and Loan Ass'n of Charlotte, 552 S.E.2d 655 (N.C.App.2001); West Haven School Dist. v. Owens-Corning, 721 F.Supp. 1547, 1555 (D.Conn.1988) (noting in dicta that the statute of limitations in a School's asbestos property damage case was tolled until "there was a definitive determination of the class certification issue" which occurred "no earlier than when the appeals on that issue ran their course."); Byrd v. Travenol Laboratories, Inc., 675 F.Supp. 342 (N.D.Miss.1987); Davis v. Behleham Steel, 600 F.Supp. 1312 (D.Md.1985).

It is undisputed that the Anderson class action was filed on December 23, 1992 and that it sought to certify a class that would have certainly included these New York claimants. Applying these facts to the law of New York and its recognition of class action tolling, the appropriate commencement date for the statute of limitations purposes is December 23, 1992 and not April 2, 2001.

### 2.    Accrual Standard

The statute of limitations is an affirmative defense upon which the Debtors bear the burden of proof.  It is the Debtors who bear the burden of establishing that the wrongdoing and the injury occurred outside the limitations period.  Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481 (3d Cir.1985);  California Sansome v. U. S. Gypsum Co., 55 F.3d 1402 (9th Cir.1995);  Clayton Center Asso. v. W. R. Grace & Co., 861 S.W.2d 686 (Mo.App.1993).

Since the beginning of asbestos property damage litigation, Courts across the country have clearly and unambiguously held that an asbestos property damage cause of action does not accrue until a compensable injury occurs.  Stated another way, tort actions for asbestos property damage can be maintained only where plaintiffs explicitly allege and subsequent evidence demonstrates contamination of the building or other property as a result of fibers

released from asbestos products.  In other words, **only asbestos contamination constitutes a physical injury compensable under tort law.** Adams-Arapahoe School District No. 28-J v. GAF Corp., 959 F.2d 868 (10th Cir.1992) (emphasis supplied); City of Greenville v. W.R. Grace & Co., 827 F.2d 975, 976-78 (4th Cir.1987) (the release of toxic fibers from an asbestos-containing fireproofing product rendered the manufacturer liable for damages to the property owner under South Carolina tort law);    More importantly, knowledge of a "potential" future hazard  or injury is not enough. Adams-Arapahoe; MDU Resources v. W. R. Grace & Co., 14 F.3d 1274, 1279 (8th Cir.1994) ("the District Court erred when it instructed that the issue for purposes of the statute of limitations was when MDU learned of the presence of asbestos in the building"); THS Northstar v. W. R. Grace & Co., 66 F.3d 173 (8th Cir.1995) ("the distinction between the mere presence of asbestos-containing materials in a building and actual release and contamination is critical" because "no cause of action exists until there has been a substantial release"); San Francisco Unified School District v. W. R. Grace & Co., 37 Cal.App.4[th] 1318, 44 Cal.Rptr.2d 305 (Cal.App.4[th] 1995) ("the mere presence of asbestos constitutes only a threat of future harm. . . . [c]ontamination by friable asbestos is the physical injury and the actual, appreciable harm that must exist before a property owner's strict liability or tort cause of action against an asbestos manufacturer accrues and the limitations period commences."); Heider v. W. R. Grace & Co., 1992 WL 189254 (N.D.Ill.) (knowledge of the presence of asbestos is not enough to trigger the statute of limitations because the "threat of future harm, not yet realized, is not enough").

This basic tort principle makes clear that damages may not be awarded for injuries not yet suffered. General knowledge that a product in the building contains asbestos and poses a risk of future injury is simply not enough.  MDU Resources v. W. R. Grace, 14 F.3d

1274 (8th Cir.1994) (rejecting Grace's argument that knowledge of the mere presence of asbestos triggers the statute of limitations, and holding that the proper question was when MDU could have learned, with the exercise of reasonable diligence, that its building had been contaminated by asbestos); <u>California Sansome v. U. S. Gypsum Co.</u>, 55 F.3d 1402 (9th Cir.1995) (contamination must occur in the first instance in order to trigger the running of the statute of limitations); <u>Kansas City v. W. R. Grace & Co.</u>, 778 S.W.2d 264 (Mo.App.1989) (statute not triggered until there is a "substantial and unreasonable" risk of harm from the release of toxic fibers); <u>City of Wichita v. United States Mineral Product Co.</u>. 72 F.3d 1491 (10th Cir.1996 (holding actual physical injury by "contamination" is an essential element of any negligence claim and liability may not be premised upon the mere risk of future harm not yet suffered); <u>3250 Wilshire Blvd. Bldg. v. W.R. Grace & Co.</u>, 1989 WL 260222 at *4-8 (C.D.Cal. Jul. 24, 1989) (recognizing that allegations of actual contamination constitute valid tort damages claims, whereas tort claims for injury by virtue of mere presence of asbestos-containing products or by virtue of a potential risk of harm are invalid); <u>Catasauqua Area School District v. Eagle-Picher Indus.</u>, 1988 WL 102689 (E.D.Pa. Sept. 28, 1988) (removal and replacement costs of asbestos cement constitute economic loss not recoverable under tort absent demonstration that cement contaminated other property or that it created a significant health risk to building occupants); <u>Hebron Pub. Sch. Dist. No. 13 v. U.S. Gypsum</u>, 690 F.Supp. 866, 870 (D. N.D.1988) (negligence claim survived motion to dismiss where plaintiffs alleged asbestos products released harmful fibers into the building); <u>City of Manchester v. National Gypsum Co.</u>, 637 F.Supp. 646, 651- 52 (D. R.I.1986) (court denied motion to dismiss finding that allegations of contamination constituted allegations of physical harm sufficient to support a claim for negligence under New Hampshire law);

Franklin County Sch. Bd. v. Lake Asbestos of Quebec, Ltd., 1986 WL 69060 at *5-6
(N.D.Ala. Feb. 13, 1986) (school board's negligence claim dismissed for failing to allege
actual, present harm, i.e. contamination);  Town of Hooksett Sch. Dist. v. W.R. Grace & Co.,
617 F.Supp. 126, 130-31 (D.N.H.1984) (motion to dismiss denied because plaintiff alleged
contamination and contamination constitutes a physical injury cognizable under tort);
Kershaw County Bd. of Educ. v. U.S. Gypsum Co., 302 S.C. 390, 393, 396 S.E.2d 369, 371
(1990) (judgment against manufacturer of asbestos-containing ceiling materials on
negligence claim upheld where plaintiff alleged and proved damage to other property);  Banc
One Bldg. Management Corp. v. W.R. Grace & Co., 157 Wis.2d 814, 461 N.W.2d 448
(1990) (unpublished disposition) (dismissal of negligence action affirmed where plaintiff
failed to allege actual physical harm);  Board of Educ. of City of Chicago v. A, C & S, Inc.,
131 Ill.2d 428, 443, 137 Ill.Dec. 635, 642-43, 546 N.E.2d 580, 587-88 (1989)
("dangerousness which creates a risk of harm is insufficient standing alone to award damages
in ... negligence;  however, allegations of asbestos release are sufficient to defeat a motion to
dismiss");  School Dist. of City of Independence v. U.S. Gypsum Co., 750 S.W.2d 442, 456
(Mo.App.1988) (jury verdict upheld where school district provided evidence of
contamination caused by defendant's asbestos-containing acoustical ceiling plaster).

New York law is in accord.  In Thoma v. Town of Schodack, 6 A.D.3d 957, 776
N.Y.S.2d 109 (N.Y.A.D. 3 Dept.2004), the court held that, under New York law, to prevail
on the statute of limitations in an environmental contamination case, it was the defendant's
burden to establish that a plaintiff knew or should have known, through the exercise of
reasonable diligence, that there was contamination to their property prior to the expiration of
the applicable limitations period.

Similarly, the New York Court of Appeals held in <u>Kronos, Inc. v. AVX Corp.</u>, 81

N.Y.2d 90, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993) that

> as a general proposition, a tort cause of action cannot accrue until
> an injury is sustained. That, rather than the wrongful act of
> defendant or discovery of the injury by plaintiff, is the relevant
> date for marking accrual. The Statute of Limitations does not run
> until there is a legal right to relief. Stated another way, accrual
> occurs when the claim becomes enforceable, i.e., when all
> elements of the tort can be truthfully alleged in a complaint

(Citations omitted).

Likewise, in <u>Brooklyn Union Gas Company v. Hunter Turbo Corp.</u>, 241 A.D.2d 505,

N.Y.S.2d 877 (App. Div. 2d Dept.1997), the appellate court rejected the Defendant's

argument that a Plaintiffs' cause of action accrued when a defective wheel was first put into

use, holding that it "is well established that in any action to recover damages for negligence

and/or strict product liability, the plaintiff's claim accrues upon the date of injury. At bar, the

elements of the plaintiff's claim were not complete until it was "damaged" when the

defendant's wheel malfunctioned . . ." 241 A.D.2d at 506 (citations omitted).

In this case, the applicable limitations period is set forth in NY CPLR §214-c, which

provides,

> the three year period within which an action to recover damages
> for personal injury or injury to property caused by the latent effects
> of exposure to any substance or combination of substances, in any
> form, upon or within the body or upon or within property must be
> commenced shall be computed from the date of discovery of the
> injury by the plaintiff or from the date when through the exercise
> of reasonable diligence such injury should have been discovered
> by the plaintiff, whichever is earlier.

However, this discovery rule does not apply "where the injury 'either was discovered or

through the exercise of reasonable diligence should have been discovered prior to July 1,

1986." <u>MRI Broadway Rental, Inc. v. U. S. Mineral Product Co.</u>, 92 N.Y.2d 421, 704

N.E.2d 550, 681 N.Y.S.2d 783 (1998); <u>citing</u>, NY CPLR §214-c(6).

Unlike the defendant in <u>MRI</u> Broadway, Grace has provided no evidence that there

has been an injury to any of these claimants, let alone that these claimants knew or should

have known of their injury prior to the applicable limitations period. Indeed, the Debtors did

not even object to nine of these claims on limitations based on the actual knowledge of the

claimant.

The Debtors have also failed address whether any cause of action for restitution has

been time barred. As recognized by the Appellate Division of the New York Supreme Court

in <u>City of New York v. Lead Industries Ass'n, Inc.</u>, 222 A.D.2d 119, 644 N.Y.S.2d 919

(N.Y.A.D. 1 Dept.1996) in finding that a cause of action for restitution did not accure until

the plaintiff undertook the manufacturers duty to abate the lead hazard in its buildings:

> The thrust of the complaint is that plaintiffs took the immediate
> action necessary to protect the health and safety of the residents of
> their buildings, particularly children, from the well-recognized
> hazards of lead paint which had been manufactured and marketed
> by defendants. As stated by Justice Wallach, in our prior decision,
> the reasonable costs of abatement are recognized as recoverable on
> such a claim. It may also be noted that restitution has been
> characterized as a particularly relevant remedy for the costs of
> abatement of asbestos, a problem of similar wide-spread
> consequence as lead paint and that flexibility and discretion may
> be exercised in fashioning a restitution remedy in light of the
> particular equities involved.

222 A.D.2d at 127, 644 N.Y.S.2d at 924.

### 3.    The Debtors' Admissions Create a Question of Fact

To the contrary, in the one claim that the Debtors did object to on the basis of actual

knowledge, the Debtors have admitted that the claimant has suffered no injury due to

presence of Mono-kote fireproofing.  In its response to 555 Olympus Properties First Request

for Admissions, the Debtor answered as follows:

> 1.  The Claimant's building has been injured or damaged by asbestos fibers
> released from Mono-kote or other surfacing materials manufactured by Grace.
> **Response: Denied.**
>
> 2.  The Claimant's building has been injured or damaged by the presence of
> asbestos in Mono-kote or other surfacing materials manufactured by Grace.
> **Response: Denied.**

Exhibit 2 (Grace Responses to First Request for Admissions) (emphasis in original).

As noted by the Eighth Circuit Court of Appeals in reversing a statute of limitations

verdict,

> Grace argued at trial not only that the statute of limitations had run,
> but also that the plaintiff had suffered no injury from the asbestos
> Monokote.   The arguments are inconsistent:  if MDU has suffered
> no injury from the Monokote, then it has no cause of action--until
> an injury is suffered, the statute of limitations cannot begin to run.

MDU Resources Group v. W. R. Grace & Co., 14 F.3d 1274 (8th Cir.1994).   Here, the

Debtor's admission is not only patently inconsistent with its argument that the statute of

limitations bars Claim No. 9684, it creates a genuine issue of material fact as to when the

injury occurred.

Grace has failed to provide any evidence that would establish the claimant was

injured, let alone that the claimant knew or should have known it had been injured by its

products.   Indeed, Grace has denied that products release asbestos fibers into buildings once

installed.   Even if they did, however, Grace's substantial efforts to conceal the hazards of

asbestos or that its products even contained asbestos are sufficient to toll any statute of

limitations period from running.   See, THS NOrthstar v. W. R. Grace & Co., 860 F.Supp.

640, 646 (D.Minn.1994) (noting Northstar presented substantial evidence of Grace's

representations that asbestos containing materials did not pose a hazard);  *see also, Expert Report of Jack Halliwell.*

### D.    Constructive Notice is Not Applicable

#### 1.    This Court Has Already Found Constructive Notice Inapplicable

This Court has already addressed the inappropriateness of Constructive Notice in these proceedings.  At the November 14, 2005 Omnibus Hearing, this Court refused to consider Constructive Notice globally as part of Phase I of the PD Estimation.  At that hearing, the Court stated:

> But I think Mr. Baena is correct, from limited research I've been able to do so far, I don't think you can knock out every building in California by saying that as of a certain date everybody in California knew that asbestos in a building created some property damage claim that should have been addressed by the -- should have been raised with and then addressed by the Debtor.

(Nov. 14, 2005 Omnibus Hearing Tr. p. 82).  Constructive Notice is no more appropriate now than it was in November of 2005.

#### 2.    No Basis to Apply Constructive Notice to Trigger Limitations

The application of constructive notice as a limitations trigger for limitations periods in asbestos property damage actions has been resoundingly rejected across the county. Yet Grace has utterly failed to come forward with any evidence or applicable state law to support this position despite its obligation to do so.  Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481 (3d Cir.1985); California Sansome v. U. S. Gypsum Co., 55 F.3d 1402 (9th Cir.1995); Clayton Center Asso. v. W. R. Grace & Co., 861 S.W.2d 686 (Mo.App.1993) (statue of limitations is an affirmative defense on which the burden of proof is on the defendant).  More importantly, Grace's objection completely ignores literally scores of reported decisions from across the country that reject this very argument.

Notably, in Kansas City v. W. R. Grace & Co., 778 S.W.2d 264, (Mo.App.1989), the Missouri Court of Appeals reversed the grant of summary judgment on the statute of limitations and specifically rejected the arguments now made the Debtor. In Kansas City, the appellate court correctly recognized that in order for an asbestos property damage action to accrue, there must be a "release of toxic asbestos fibers into the environment" along with "the ability to ascertain a substantial and unreasonable risk of harm form the release of the toxic asbestos fibers." 778 S.W.3d at 268. In so finding, the Appellate Court held that the type of evidence Grace now claims is sufficient to establish "constructive notice" of a property damage claim was not relevant to the statute of limitations.

Specifically, defendants in Kansas City made the identical claim made by the Debtors in this case: that because the city had constructive notice of NESHAPS regulations (first published in 1973) which banned the spray application of asbestos-containing fireproofing and later required that asbestos material be specially removed at great expense when disturbed by renovation or demolition, that the City's claim was barred by the statute of limitations.[4] In rejecting this argument, the appellate court aptly held that, "simply because Kansas City had notice of NESHAPS, its causes of action for negligence and strict liability were not caused to accrue until asbestos fibers were released into the environment of the airport buildings and Kansas City was capable of ascertaining that there was a substantial and unreasonable risk of harm from the release of the toxic asbestos fibers." Id. at 269. Courts across the country are in accord. See, MDU Resources v. W. R. Grace & Co., 14 F.3d 1274, 1279 (38th Cir.1994); THS Northstar v. W. R. Grace & Co., 66 F.3d 173 (8th Cir.1995); BellSouth Communications v. W. R. Grace & Co., 77 F.3d 603 (2d Cir.1996); City of

---

[4] The NESHAP regulations are the same regulations, amendments and related guidance documents cited by the Debtors in footnote 9, of their Fifteenth Omnibus Objection as evidence of "constructive knowledge."

Wichita v. United States Mineral Product Co.. 72 F.3d 1491 (10th Cir.1996); San Francisco Unified School District v. W. R. Grace & Co., 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305 (Cal.App.4th 1995);   Heider v. W. R. Grace & Co., 1992 WL 189254 (N.D.Ill.) (citing, *Prosser & Keeton on the Law of Torts*, §30 at 165 (5th Ed. 1984)); Clayton Center Asso. v. W. R. Grace & Co., 861 S.W.2d 686 (Mo.App.1993).

Moreover, the Debtors' constructive notice argument is patently inconsistent with its claim that its asbestos-containing surfacing materials are not hazardous and do not cause property damage. *See, Debtors' Fifteenth Omnibus Objection,* ¶ 118 (alleging claimants allegedly barred because there is no "proof of hazard."); ¶175 (citing British Columbia court as holding that Monokote does not "contaminate buildings" and is therefore not hazardous). As noted by the Eighth Circuit Court of Appeals in reversing a statute of limitations verdict,

> **Grace** argued at trial not only that the statute of limitations had run, but also that the plaintiff had suffered no injury from the **asbestos** Monokote. The arguments are inconsistent: if MDU has suffered no injury from the Monokote, then it has no cause of action--until an injury is suffered, the statute of limitations cannot begin to run.

MDU Resources Group v. W. R. Grace & Co., 14 F.3d 1274 (8th Cir.1994).

### 3.    Inquiry Notice Still Requires Actual Knowledge

The Debtors and its expert, Mr. Morse, have spent a great deal of energy attempting to catalog every item of information about the alleged hazards of asbestos from 1970 to 1995. Even if that information were relevant, which as explained above, it is clearly not, the Debtors and Mr. Morse have still utterly failed to link any of that information to these specific building owners.[5] Its failure to do so is fatal to its motion.

---

[5] In his deposition, Mr. Morse testified that he had no expertise and training on the issue of effectively communicating through the mass medial, designing or understanding notice programs or the likelihood that any specific person would receive or read anything published in the mass media. Exhibit 3, p. 54 (Deposition of

First, it is evident that the Debtors have confused the concept of "constructive notice" with "inquiry notice." As eloquently explained by the Maryland Court of Appeals over a century ago

> Notice is of two kinds: actual and constructive. Actual notice may either be express or implied. If the one, it is established by direct evidence; if the other, by the proof of circumstances from which it is inferable as a fact. Constructive notice is, on the other hand, always a presumption of law. Express notice embraces, not only knowledge, but also that which is communicated by direct information, either written or oral, from those who are cognizant of the fact communicated. Implied notice, which is equally actual notice, arises where the party to be charged is shown to have had knowledge of such facts and circumstances as would lead him, by the exercise of due diligence, to a knowledge of the principal fact. Or, as defined by the supreme court of Missouri in Rhodes v. Outcalt, 48 Mo. 370, "a notice is regarded in law as actual when the party sought to be affected by it knows of the particular fact, or is conscious of having the means of knowing it, although he may not employ the means in his possession for the purpose of gaining further information." It is simply circumstantial evidence from which notice may be inferred. It differs from constructive notice, with which it is frequently confounded, and which it greatly resembles, in respect to the character of the inference upon which it rests; constructive notice being the creature of positive law, resting upon strictly legal presumptions, which are not allowed to be controverted, while implied notice arises from inference of fact,

Baltimore v. Whittington, 78 Md. 231, 27 A. 984, 985 (1893). Citing this provision, the Maryland Court of Appeals, a century later, recognized this distinction and reaffirmed the that "constructive notice or knowledge will not suffice for inquiry notice." Georgia Pacific v. Benjamin, 394 Md. 59, 904 A.2d 511, 529 (2006). In so holding, the court reasoned that application of the discovery to a statute of limitations requires a person to "have actual notice, either express or implied. . . .  Implied notice occurs 'when a plaintiff gains knowledge sufficient to prompt a reasonable person to inquire further.'"  Id (citations

---

Mr. Morse, 3/1/2007). Mr. Morse freely admitted that he would have no way of knowing what a particular building owner may or may not have been reading. Id at p. 46-47. The claimants reserve all objections to Mr. Morse's opinions and expected testimony.

omitted). Accordingly, to begin the operation of the statute of limitations, a defendant must come forward with evidence that a plaintiff actually knew something as opposed to simply alleging that the plaintiff could have learned something had he happened to read the New York Times in 1972. Because the Debtors have failed to provide any evidence that these New York claimants had actual knowledge of anything, their motion must fail.

## III. Conclusion

The Debtors have failed to establish a lack of genuine issue of material fact and that they are entitled to summary judgment based upon the limitations periods of New York. The Debtors' motion should be denied.

DATED: March 19, 2007

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 654-0248
Facsimile:    (302) 654-0728
E-mail:    loizides@loizides.com

-and -

C. Alan Runyan (SC Fed. ID No. 4837)
Marion C. Fairey, Jr. (SC Fed. ID No. 6101)
SPEIGHTS & RUNYAN
200 Jackson Avenue, East
Post Office Box 685
Hampton, SC 29924
Telephone:    (803) 943-4444
Facsimile:    (803)943-4599

*Counsel for Anderson Memorial Hospital*

---

[6] F/k/a Loizides & Associates. Name change pending.

## <u>Summary of Exhibits</u>

Exhibit 1                          Excerpts from Exhibit A to August 31, 2006 CMO

Exhibit 2        Grace Responses to First Set of Interrogatories, First Request for Admissions
                 and First Request for Production of Documents to Claim No. 9684 (555
                                                                    Olympus Properties)

Exhibit 3        Excerpts from the Deposition of Roger Morse, March 1, 2007 (p. 46-47, 54)