## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | **Chapter 11** |
| | ) | |
| W. R. Grace & Co., et al.[1], | ) | **Case No. 01-01139 (JKF)** |
| | ) | **Jointly Administered** |
| Debtors. | ) | |
| | ) | Re: Docket No. 14597 |
| | ) | |
| | ) | Claim Nos.: See Exhibit 1 |
| | ) | Reply Deadline: March 23, 2007 |
| | ) | Hearing Date: 9:00 a.m., April 9, 2007, Pittsburgh, |
| | ) | PA |

### ANDERSON MEMORIAL HOSPITAL'S RESPONSE TO
### DEBTORS' MOTION FOR SUMMARY JUDGMENT DIRECTED TO
### 88 CLAIMS FROM CANADA BASED UPON THE STATUTE OF LIMITATIONS

By and through Anderson Memorial Hospital and on their own behalf, Canadian

Claimants listed on Exhibit 1 respectfully submit their Response to the Debtors' Motion for

Summary Judgment Directed to 88 Claims from Canada Based upon the Statute of

Limitations.

---

[1] The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgracc, Inc., Coalgracc II, Ins., Creative Food `N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B 11 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Ins., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## I.    Statement of Position

The Debtors claim that there is no genuine issue of material fact with respect to the

Canadian claimants and they are entitled to summary judgment as a matter of law.   Their

arguments are based on two distinct arguments – that the "ultimate" limitations periods or

statutes of repose of Alberta, British Columbia and Manitoba are a complete bar to these

claims, and that the "normal" limitations periods also bar these claims as well claims from

the provinces of New Foundland, Nova Scotia and Ontario.  The Debtors motion should be

denied.

First, the Debtors' arguments with respect to the "ultimate" limitations periods are not

properly before this Court because the Debtors never objected to any claims on that basis.

The Debtors' Fifteenth Omnibus Objection did not include any Canadian claimants under its

objections based upon statues of repose, nor did the Debtors' Objection even cite the ultimate

limitations provisions.  Moreover, the Debtors failed to include any repose objections to

Exhibit A to this Court's August 31, 2006 CMO and October 13, 2006 Amended CMO

establishing the schedule and substance of the Statute of Limitations and Product

Identification Objection Proceedings.  These objections are simply not properly part of these

proceedings.  This bootstrapping is forbidden by Del. Bankr. Local Rule 3007-1(f)(iii), and

flies in the face of the due process, notice and fundamental fairness rights of the Canadian

claimants.

Second, the Debtors' arguments about the applicable commencement date for the

statute of limitations fail to take into account the tolling provisions of the various Canadian

Provincial class action tolling statutes.  Under these statutes, the limitations periods in

Canada were automatically suspended upon the filing of the <u>Anderson Memorial Hospital</u>

class action. Each of the Canadian claimants has referenced the <u>Anderson</u> case in their claim forms, is clearly within the class definition of the putative class defined in <u>Anderson</u> and are therefore protected by these suspension provisions.

Finally, the Debtors have failed to establish the occurrence of all of the necessary elements to establish that any limitations period has been triggered, let alone expired. This is so for a number of reasons, including that Canadian law requires that damage occur before a cause of action accrues and the Debtors have admitted that they can make no such showing in this case. Additionally, in Canada, a claimant must learn the specific identity of the defendant before the limitation statute can begin to run. The Debtors have failed to rebut the averments of almost all claimants – that they did not learn that Grace was the manufacturer of asbestos-containing products in their buildings until 2003.

## II.    Argument

### A.    The Debtors Failed to Raise Claim Objections Based upon Canadian Statutes of Repose or "Ultimate Limitations"

As the Debtors' proffered expert on Canadian limitations law explained during his deposition, as well as in prior submissions to this Court, "an ultimate limitation provision in Canadian jurisprudence serves what I understand to be a similar function and purpose as a statute of repose in certain states within the United States." Exhibit 2 (*Draft of 3/15/2006 Mew Deposition*, pp. 84-5). Accordingly, both the Debtors and their proffered expert on Canadian limitations law have currently couched their arguments as a statute of repose objection.

There is one simple, fundamental and fatal problem with the Debtors' arguments in this regard. The Debtors have never raised a statute of repose objection to any Canadian

claim. *See, Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims* (Docket No. 9315), pp. 52-57.

Del. Bankr. Local Rule 3007-1(f)(iii) provides that an "Objection based on substantive grounds shall include **all objections to each claim on substantive grounds**." (Emphasis supplied).[2] Despite the local rule, the Debtors did not cite or even mention any "ultimate" limitations statutes or repose arguments with respect to Canadian claimants in their Fifteenth Omnibus Objection. Remarkably, these arguments were first raised in the Debtors' current Motion for Summary Judgment.

Additionally, the Debtors' Exhibit A list of claims and schedule of pending objections attached to this Court's August 31, 2006 CMO for Asbestos Property Damage Claims Objections and October 13, 2006 Amended CMO did not list any statute of repose objections as to any Canadian claimant. Therefore, those objections are not proper and are not part of current Property Damage Proceedings before the Court. The Debtors motion should be denied on that basis alone.

> ## B. Burden of Proof
>
> ### 1. Burden of Proof in Bankruptcy Objection Proceedings

A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). See also, Fed. R. Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. *See* Adv. Comm. Notes to Fed. R. Bankr.P. 9014.

---

[2] Additionally, to the extent that the Debtors attempt to argue that limitations matters in Canada are substantive, rather than procedural, Mr. Mew testified that limitations defenses must be specifically pled. Exhibit 2, p. 54.

Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." Lundell v. Anchor Construction Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir.2000); citing, Wright v. Holm (In re Holm ), 931 F.2d 620, 623 (9th Cir.1991); see also, Ashford v. Consolidated Pioneer Mort., 178 B.R. 222, 226 (9th Cir. BAP 1995), aff'd, 91 F.3d 151, 1996 WL 393533 (9th Cir.1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." In re Holm, 931 F.2d at 623. This especially true where the objection is based upon the affirmative defenses of limitations or repose upon which the Debtor bears the burden of proof.

## 2.    Standard for Summary Judgment

In deciding a motion for summary judgment, the court must view all facts and inferences in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 247-249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment may only be granted if the evidence in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP. The court must decide if the "evidence presents a sufficient disagreement to require submission to the fact finder or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-53, 106 S.Ct. at 2511-12.

C.    **The Proper Commencement Date for the Canadian Claims – the Class Claims Acts of Alberta, British Columbia, Manitoba and Ontario**

The Debtors assert that the "undisputed" date for purposes of determining the statute of limitations is April 2, 2001, the date it filed its bankruptcy petition.[3]  This date is neither "undisputed" nor is it correct.

Each of these Canadian claimants have filed claim forms or amended claim forms in this bankruptcy referencing the Anderson Memorial Hospital[4] class litigation filed against Grace on December 23, 1992.  That litigation was ongoing at the time the Debtors' bankruptcy petition was filed, and the Canadian claimants filing under that class action are entitled to have the statute of limitations tolled as of the date of filing.   Because these claims were subject to class proceedings, the statutes of limitations have been suspended since 1992.  Specifically, the *Class Proceedings Acts* of Alberta, British Columbia, Manitoba, New Foundland and Ontario expressly provide for class action tolling as a matter of statute.[5]

For instance, the *Class Proceedings Act* of Alberta (Chapter C 16.5), §40 (Limitations Periods) specifically provides

> Subject to subsection (3), any limitation period applicable to a cause of action asserted in a proceeding, whether or not the proceeding is ultimately certified, is suspended in favour of a person if another proceeding is commenced and it is reasonable for the person to assume that he or she is a class member or subclass member for the purposes of that other proceeding.

Similarly, the *Class Proceedings Act* of British Columbia ([RSBC 1996] Chapter 50) §38.1 provides

---

[3] The Mew affidavit provides, "I am informed that on April 2, 2001, Grace filed for bankruptcy.  For the purposes of this opinion, I have taken that date as the date from which the limitation consequences of Canadian law with respect to the Claim should be viewed." *Expert Report of Graeme Mew*, p. 1.
[4] Anderson Memorial Hospital v. W. R. Grace & Co., et al., 92-CP-25-279 (Ct.Com.Pls., Hampton County, SC) (putative international class action)  (Complaint Attached as Exhibit 3).
[5] The relevant portions of the various *Class Proceedings Acts* are attached hereto as Exhibit 4.

(1) If a person has a cause of action, a limitation period applicable to that cause of action is suspended for the period referred to in subsection (2) in the event that

(a) an application is made for an order certifying a proceeding as a class proceeding.

(b) when the proceeding referred to in paragraph (a) is commenced, it is reasonable to assume that, if the proceeding were to be certified,

(i) the cause of action would be asserted in the proceeding, and

(ii) the person would be included as a member of the class on whose behalf the cause of action would be asserted, and

(c) the court makes an order that

(i) the application referred to in subsection (1)(a) be dismissed.

(ii) the cause of action must not be asserted in the proceeding, or

(iii) the person is not a member of the class for which the the proceeding may be certified.

(2) In the circumstances set out in subsection (1), the limitation period applicable to a cause of action referred to in that subsection is suspended for the period beginning at the commencement of the proceeding and ending on the date which

(a) the time for appeal of an order referred to in a subsection (1)(c) expires without an appeal being commenced, or

(b) any appeal of an order referred to in the subsection (1)(c) is finally disposed of.

The *Class Proceedings Acts* of other provinces are similar. (See Exhibit 4).

Moreover, at least one provincial appellate court has specifically recognized that Canadian citizens can participate as unnamed or absent class members in national or international class litigation arising both outside of Ontario, and outside of Canada. In reaching this determination, the court reasoned that "[t]here are strong policy reasons

favouring the fair and efficient resolution of inter-provincial and international class action litigation." <u>Currie v. McDonald's Restaurants of Canada, Ltd.</u>, [2005] 74 O.R. (3d) 32D.L.R. (4th) 224; 195 O.A.C. 244 at ¶15 (attached as Exhibit 5). Moreover, because these statutes apply to "any limitations period" rather than specific limitations periods, it must follow that these Class Proceedings Acts were intended to apply to the "ultimate" limitations periods as well as the general limitations periods. Accordingly, the appropriate date for commencement of the Canadian claims is December 23, 1992.

### D.    Applicability of the "Ultimate Limitations Periods"

#### 1.    The Alberta Statute Is Inapplicable on its Face

On its face, the "ultimate" limitations provision of the Alberta *Limitations Act* [2000] RSA, c-L-12, or statute of repose, applies only to proceedings commenced on or after March 1, 1999.[6] Even if the Debtors had properly asserted an objection to the Alberta claimants based upon the Alberta statute, it would fail because these Canadian claimants were class members in the <u>Anderson</u> class action. Accordingly, the Alberta 10 year "ultimate" limitation or statute of repose cannot bar the 44 claims for Alberta buildings.

#### 2.    The Applicability of the British Columbia and Manitoba "Ultimate Limitations Periods"

Because the Debtors' have proffered the wrong date for the commencement of these Canadian claims, they have also failed to establish that any 30 year "ultimate" limitations provisions or statutes of repose from Manitoba and British Columbia. Even assuming that the Debtors' are correct and these statutes began to run from the date Grace's asbestos-containing material was installed in the various buildings, with one exception, the Debtors

---

[6] See also, *Expert Report of Graeme Mew*, p. 17.

have failed to offer any evidence that its products were installed prior to 1962 (or 30 years prior to December 23, 1992).

However, there is no basis to conclude from the plain meaning of the limitations periods cited by the Debtors that the trigger for the "ultimate" limitations periods in British Columbia and Manitoba is the installation of the asbestos-containing product, as argued by the Debtors.[7] Indeed, the plain meaning of the specific statutory language does not comport with the Debtors' view.

For instance, the British Columbia "ultimate" limitations provision provides that no action may be brought "in any case, after the expiration of 30 years from the date on which the right to do so arose." *Limitations Act*, RSBC 1996, c. 266 §8(c).

In construing this statute, it is necessary to consider what is meant by the "the right to do so" means. Like the United States, Canadian courts consider damage to be an essential element that must be alleged and proven in a negligence action. As explained by the Manitoba Court of Appeals in Long v. Western Propeller Co. Ltd., [1968] 67 D.L.R. (2d) 345, 63 W.W.R. 146 (Man.C.A.) "[i]n negligence actions . . . there is no 'cause to sue' until the third requirement of the A, B, C rule – i.e., the damage, has occurred." Exhibit 7. That court went on to find that damage was required to complete the cause of action in negligence and that the limitation period did not begin to run until the damage had occurred.

---

[7] The Debtors cite Privest v. W. R. Grace & Co., [1995] 10 W.W.R. 385 (B.C.S.C.) as support for this assertion. First, even Grace's limitations expert acknowledged that the "ultimate" limitations period was not addressed in Privest. Exhibit 2, p. 70. He also acknowledged that he was unaware of the specific causes of action raised (or not raised) by the Plaintiffs in Privest (Id); that the factual findings of the trial court in Privest were not binding upon any other court or party (Id at p. 104); that primary finding of the trial judge was merely that the Plaintiffs in Privest had failed to prove the specific allegations they made in that case (Id at pp. 100-101); and that the holding of the Court of Appeals in Privest v. W. R. Grace & Co., [1997] was simply that the appellate court would not "reweigh" the evidence considered by the trial court (Id at 101-102). Indeed, the Court of Appeals in Privest specifically refused to review the trial court's findings with respect to any limitations issues. Privest v. W. R. Grace & Co., [1997] 143 D.L.R. (4th) 635, [1997] 5 W.W.R. 265, ¶4. Exhibit 6.

This reasoning is consistent with the Canadian Supreme Court's determination that concepts of "discoverability" are rules of statutory construction.  In determining when a limitations period begins, the Supreme Court of Canada has expressly adopted the view that

> The judge-made discoverability rule is nothing more than a rule of construction. Whenever a statute requires an action to be commenced within a specified time from the happening of a specific event, the statutory language must be construed.  When time runs from "the accrual of the cause of action" or from some other event which can be construed as occurring only when the injured party has knowledge of the injury sustained, the judge-made discoverability rule applies.  But, when time runs from an event which clearly occurs without regard to the injured party's knowledge, the judge-made discoverability rule may not extend the period the legislature has prescribed.

Haberman v. Peixero, [1997] 3 S.C.R. 549, ¶37.  (Exhibit 7).

Accordingly, for the Debtors to come within the ambit of these statutes they must establish that the Claimants' damage occurred more than 30 years before December 23, 1992.  This they have not done.  To the contrary, the Debtors responses to Claimants' First Request for Admissions expressly admitted that that these Claimants have suffered no injury or damage due to the presence of asbestos in Monokote or other Grace manufactured surfacing treatment.

> 1.    The Claimants' building has been injured or damaged by asbestos fibers released from Mono-kote or other surfacing materials manufactured by Grace.
> **Response: Denied**
>
> 2.  The Claimants' building has been injured or damaged by the presence of asbestos in Mono-kote or other surfacing materials manufactured by Grace.
> **Response: Denied**

Exhibit 8 (Grace Responses to First Request for Admissions) (emphasis in original).  In accordance with Canadian law, Grace cannot establish any Canadian claimant has a "cause to

sue" without proof that the injury or damage has occurred. Therefore, the Debtors

admissions are fatal to its limitations arguments.

However, even if Canadian courts construed the limitations periods to run from the

time the acts or omissions giving rise to the injury occurred, the Debtors could not prevail on

all Canadian claims. As noted by the Canadian Supreme Court in Hollis v. Dow Corning

Corp., [1995] 4 S.C.R. 634:

> It is well established in Canadian law that a manufacturer of a product has a
> duty to warn consumers in the use of its product of which it has knowledge or
> ought to have knowledge. . . . The duty to warn is a continuing duty, requiring
> manufacturers to warn not only of dangers known at the time of sale, but also
> of dangers discovered after the product has been sold and delivered. All
> warnings must be reasonably communicated, and must clearly describe any
> specific dangers that arise from the ordinary use of the product.

Exhibit 9. Indeed, Mr. Mew acknowledged in his deposition that in Canada, a manufacturer

has a continuing duty to warn. Exhibit 2, pp. 58-59. Accordingly, even if the limitations

period began to run upon the occurrence of the acts or omissions of the Debtors giving rise to

liability, a new cause would accrue for every breach of the continuing duty to warn.[8] These

Claimants have submitted voluminous evidence that tends to prove that the Debtors violated

post-sale breaches of duty to warn. This evidence is incorporated herein by reference. *See,*

*e.g., Calgary Board of Education – Altadore Elementary School, Claim No. 14885 Response*

*to Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage*

*Claims,* ¶¶3-59 (Docket No. 10518).

Finally, the Debtors have failed to address the applicable limitations period for other

asbestos-property damage causes of action, and therefore, cannot obtain summary judgment

---

[8] *See, e.g.,* Alberta's *Limitations Act,* 1996, c. L-15.1(3)(a) which defines the trigger for the "ultimate"
limitations period as follows: "a claim or an number of claims based on any number of breaches of duty,
resulting from a continuing course of conduct or a series of related acts or omissions, arises when the conduct
terminates or the last act or omission occurs."

as to those causes of action. The Debtors' expert acknowledged that Canadian law

recognizes a number of non-negligence based causes of actions historically available in

asbestos property damage actions. For instance, Mr. Mew testified that Canadian courts

recognize causes of action in nuisance, warranty (express and implied), conspiracy,

restitution, fraud, and misrepresentation. Exhibit 2, pp. 55-60. The Debtors have not argued

that these additional causes of action would be barred.

> **E.    Grace has Failed to Establish the Essential Elements Necessary to Trigger Any of the Applicable "Normal" Limitations Periods**

As noted above, in order to establish that the applicable limitations period has begun,

the Debtors must show that all elements of the cause of action have occurred. Because the

Debtors have admitted that no damage has occurred from its asbestos-containing materials,

they cannot logically assert that there is no genuine issue of material fact that the Plaintiffs'

damage occurred prior to the applicable limitations period. As the Eighth Circuit held in

MDU Resources Group v. W. R. Grace & Co., 14 F.3d 1274 (8th Cir.1994)

> Grace argued at trial no only that the statute of limitations had run, but also that the plaintiff had suffered no injury from the asbestos Monokote. The arguments are inconsistent: if MDU has suffered no injury from the Monokote, then it has no cause of action—until an injury is suffered, the statute of limitations cannot begin to run.

The Debtors have likewise glossed over specific provisions in the Limitations Act of

Alberta and British Columbia which require the claimant to have actual or imputed

knowledge of the identity of the defendant to trigger the statute of limitations. In the Alberta

*Limitations Act*, S.A. 1996, c. L-15.1 the statute is triggered only when

> The claimant first knew, or in the circumstances ought to have known, (i) that the injury for which the claimant seeks a remedial order had occurred; (ii) **that the injury was attributable to conduct of the defendant**, and (iii) that the injury, assuming liability on the part of the defendant, warrants bringing a proceeding.

(Emphasis supplied).  Likewise, the British Columbia Act is provides that

> Time does not begin to run against a plaintiff with respect to an action referred to in subsection (3) [including damage to property] until **the identity of the defendant** is known to the plaintiff

*Limitations Act (British Columbia)*, R.S.B.C. c 266 §6(4).  Indeed, the Debtors' limitations

expert, Mr. Mew, offered testimony regarding this requirement as follows:

> Q. So, in the *Privest*, and I actually think this is somewhere in *Privest*, but among other things, time does not begin to run until the identify of the defendant is known to the plaintiff.  Is that correct?

> A. This section is what is called the postponement provision of the *British Columbia Act*, and it is British Columbia's statutory rendition of the discoverability rule.  So, with that sort of qualification, I agree.

> Q. And is that true in other provinces besides British Columbia, that is, the identity of the defendant is known?

> A. Yes.  In one of the...time starts to have a cause of action.  You have to have a defendant, a party whose identity is known, or at least capable of being ascertained.  And that is...it is in statutory form of British Columbia and in some other provinces, and even in those which...it is not in statutory form.  The discoverability rule operates in that fashion.

Exhibit 2, pp. 112-13.[9]

With only a few exceptions, each of the Canadian claimants has asserted in its

verified claim form that it did not learn that Grace was the manufacturer of asbestos-

containing materials in its building until 2003.  Exhibit 10 (signed pages from amended

Canadian claim forms).  Accordingly, there is a material issue of fact as to when the

limitations periods for which actual knowledge of the identity of the defendant is triggered

for those claims.

---

[9] Mr. Mew likewise testified that knowledge of the manufacturer is an essential element of proof in a Canadian asbestos property damage case.  Exhibit 2, pp. 61-2.

**F.    Estoppel**

Another bar to asserting the defense of limitations in Canada is estoppel. As the

Debtors' own expert recognized, there can be situations under Canadian law where estoppel

applies to prevent a defendant from asserting the statute of limitations.   Exhibit 2, p. 113. In

this case, the doctrine of estoppel should prevent the Debtors from arguing that, *inter alia*,

the claimants are barred by any limitations period in the face of the Debtors' admissions that

they cannot show that any Canadian claimant has suffered an injury or damage for Grace's

asbestos-containing materials.

**G.    "Constructive" Notice is not Applicable**

This Court has already addressed the inappropriateness of constructive notice in these

proceedings.  At the November 14, 2005 Omnibus hearing, this court refused to consider

constructive notice globally as part of the Phase I PD Estimation.  At that hearing, the Court

stated:

> But I think Mr. Baena is correct, from the limited research I've been able to
> do so far, I don't think you can knock out every building in California by
> saying that as of a certain date everybody in California knew that asbestos in a
> building created some property damage claim that should have been addressed
> by the – should have been raised with and then addressed by the Debtor.

(Tr. Of Hr'g, p. 82, Nov. 14, 2005).

Moreover, the Debtors have failed to present this Court with any Canadian authority

finding that constructive notice is available to trigger the appropriate limitations period.

The Canadian Supreme Court's decision in Canadian Indemnity Co. v. Johns-Manville Co.,

Ltd.. [1990] 2 S.C.R. 549 (attached as Exhibit 11), cited by Grace as an example of the

"public character and notoriety" of the "alleged health hazards of asbestos" in Canada is

completely inapposite and the Debtors' citation of this case is misleading for a number of reasons.

The limited issue before the Canadian Supreme Court in the <u>Canadian Indemnity</u> case was whether or not a company whose primary business was mining and selling raw asbestos had a duty under a specific Insurance Act Quebec to disclose medical studies in its possession showing its workers were suffering from a high incidence of lung disease when it applied for a general liability insurance policy.  Under the Act, an insured was obligated to "fully and fairly" disclose to an insurer those facts which show the nature and extent of the risk to be insured.  <u>Id</u> at p. 24.  The statutory exception to this requirement notes that the "insured is not obligated to represent facts known to the insurer or which from their public character and notoriety he is presumed to know."  <u>Id</u> at p. 29.  In interpreting these statutes, the court determined that the reference to "public character" simply meant that the information was accessible by the insurer.  <u>Id</u>.  With respect to the "notoriety" requirement, the court specifically rejected the argument that the information must be "notorious" to the general public.

> I have little difficulty concluding that the "notoriety" of art. 2486 C.C. must be interpreted with reference to the insurer.  Article 2484 C.C. does not refer to notorious facts which the general public is presumed to know, nor does it refer to notorious facts which those in the industry in which the risk is being insured are presumed to know; it expressly states that the notoriety in question is that which he, the insurer, is presumed to know."  . . .
>
> It is still possible to argue that that which is notorious to the insurer is identical to that which is notorious to the general public or, alternatively, to those in a particular industry.  In my opinion, however, such arguments lack credibility.  Instead, according to my view of this matter, the court is required to focus on the insurer and to determine what it can or should be presumed to know.

<u>Id</u> at p. 29-30.  Accordingly, it is clear that the Canadian Supreme Court specifically rejected the implication made by the Debtors and their expert -- that the <u>Canadian Indemnity</u> case

found that the hazards of asbestos were widely known to the general public in Canada in the late 1960's and early 1970's.

## III. Conclusion

The Debtors have failed to establish that there are no genuine issues of material fact and they are entitled to summary judgment based upon the limitations periods of Canada. The Debtors' motion should be denied.

DATED: March 19 2007

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.[10]
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 654-0248
Facsimile:    (302) 654-0728
E-mail:    loizides@loizides.com

SPEIGHTS & RUNYAN
Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed. ID No. 6101)
200 Jackson Avenue, East
P.O. Box 685
Hampton, SC 29924
Telephone:    (803) 943-4444
Facsimile:    (803) 943-4599

*Counsel for Anderson Memorial Hospital*

---

[10] F/k/a Loizides & Associates (name change pending).

## Summary of Exhibits

| | |
|---|---|
| Exhibit 1 | List of Canadian Claimants with Claim Number |
| Exhibit 2 | Excerpts from Deposition of Graeme Mew (pp. 54-60, 58-59, 70, 84-5, 100-102, 104, 113) |
| Exhibit 3 | December 23, 1992 Complaint, Anderson Memorial Hospital v. W. R. Grace & Co., et al., 92-CP-25-279 |
| Exhibit 4 | Excerpts from the *Class Proceedings Acts* of Alberta, British Columbia, Manitoba, New Foundland and Ontario |
| Exhibit 5 | Currie v. McDonand's Restaurants of Canada, Ltd., [2005] 74 O.R. (3d) 321; D.L.R. (4th) 224; 195 O.A.C. |
| Exhibit 6 | Privest v. W. R. Grace & Co., [1997] 143 D.L.R. (4th) 635, [1997] 5 W.W.R. 265 |
| Exhibit 7 | Long v. Western Propeller Co. Ltd., [1968] 67 D.L.R. (2d) 345, 63 W.W.R. 146 (Man.C.A.) |
| Exhibit 8 | Haberman v. Peixero, [1997] 3 S.C.R. 549 |
| Exhibit 9 | Grace Responses to Canadian Claimants' First Set of Interrogatories, First Request for Admissions and First Request for Production of Documents |
| Exhibit 10 | Hollis v. Dow Corning Corp., [1995] 4 S.C.R. 634 |
| Exhibit 11 | Excerpts from Canadian Claimants Amended Claim Forms |
| Exhibit 12 | Canadian Indemnity Co. v. Johns-Manville Co. Ltd., [1990] 2. S.C.R. 549 |