# Exhibit 5

CanLII
Canadian Legal Information Institute

Ontario >> Court of Appeal for Ontario >>

**This document:** 2005 CanLII 3360 (ON C.A.)
**Citation:** *Currie v. McDonald's Restaurants of Canada Ltd.*, 2005 CanLII 3360 (ON C.A.)
**Parallel citations:** (2005), 74 O.R. (3d) 321; (2005), 250 D.L.R. (4th) 224; (2005), 195 O.A.C. 244
**Date:** *2005-02-16*
**Docket:** *C41264;C41289;C41361*

[Noteup] [Cited Decisions and Legislation]

DATE: 20050216
DOCKET: C41264/C41289/C41361

## COURT OF APPEAL FOR ONTARIO

### SHARPE, ARMSTRONG and BLAIR JJ.A.

| | | |
|---|---|---|
| B E T W E E N : | ) | |
| | ) | |
| **GREG CURRIE** | )) | **Ronald Slaght, Q.C.** for McDonald's Restaurants of Canada Limited |
| Plaintiff/Respondent | ) | |
| | ) | **Joel Richler** and **J.A. Prestage** for McDonald's Corporation |
| - and - | ) | |
| | ) | **Glenn Zakaib** for Simon Marketing Inc. |
| | ) | |
| **McDONALD'S RESTAURANTS OF CANADA LIMITED, McDONALD'S CORPORATION and SIMON MARKETING INC.** | )) ) ) | **Chris G. Paliare, Martin Doane** and **John Phillips** for Greg Currie |
| | ) | |
| Defendants/Appellants | ) | |
| | ) | **Heard: November 15, 2004** |

**On appeal from the judgment of Justice Maurice Cullity of the Superior Court of Justice dated January 13, 2004, reported at** 2004 CanLII 19279 (ON S.C.), **(2004), 70 O.R. (3d) 53.**

**SHARPE J.A.:**

[1]    The plaintiff Greg Currie brings a proposed class action alleging wrongdoing in relation to promotional games offered to customers of McDonald's Restaurants of Canada Ltd. ("McDonald's Canada"). He is met with an Illinois judgment approving the settlement of a class action brought on behalf of an American and international class of McDonald's customers, including the customers of McDonald's Canada (the "*Boland* judgment"). The Illinois court directed that notice of the class action to Canadian class members be given by means of an advertisement in Maclean's magazine. Currie did not participate in the Illinois proceedings but

Preston Parsons, the named plaintiff in another Ontario class proceeding, represented by the same law firm and purporting to represent the same class, appeared in the Illinois court to challenge the settlement.

[2]      The central issue on this appeal is whether the *Boland* judgment is binding so as to preclude Currie's proposed class action in Ontario.

## FACTS

[3]      I adopt the following summary of the essential facts from the reasons of the motion judge.

> 1.      In the period between January 1, 1995 and December 31, 2001 – and earlier – McDonald's sponsored numerous promotional games, or contests, of chance - or chance and skill - at its restaurants in North America.  Some, but not all, of these were made available in the Canadian restaurants.  Prizes of different kinds and amounts were to be awarded. Participation in the games was, to a large extent, tied to the purchase of food at the restaurants.  Simon Marketing Inc - a corporation based in California that provided businesses with marketing services involving the provision and operation of promotional games – was retained for that purpose by McDonald's.

> 2.      On August 21, 2001, Jerome Jacobson – a senior employee of Simon Marketing - and a number of other individuals were indicted for embezzling prizes allocated to McDonald's games.

> 3.      The proceedings in *Boland* were commenced on the following day.  The class-action complaint alleged that Jacobson had directed prizes to specific individuals and claimed damages against McDonald's and Simon Marketing Inc. for consumer fraud and unjust enrichment.  The plaintiffs sued on behalf of themselves and "all customers of McDonald's who paid money for McDonald's food products in order to receive a subject contest game piece for subject contest promotions between 1995 and the present".

> 4.      Settlement discussions in the *Boland* action were conducted from October 2001 and culminated in a settlement agreement between the plaintiffs and McDonald's on April 19, 2002.

> 5.      The settlement agreement provided that the parties would apply to the Circuit Court of Cook County, Illinois for preliminary certification of the proceedings as a class action and for preliminary approval of the settlement as "fair, reasonable and adequate to the class and to members of the public".  Further orders were to be requested to approve the terms of a notice to class members - and the manner in which it was to be disseminated - to provide class members with an opportunity to opt out of the class and the settlement by a date to be specified and to make the settlement – and the releases to be provided to McDonald's and its subsidiaries -

binding on those who did not do so. The terms of the releases were broad. They covered all claims - referred to in the settlement agreement as "Released Claims" – relating to McDonald's promotional games under common law or statute, and specifically for breach of the consumer protection laws of any jurisdiction, contract, unjust enrichment, fraud, negligent misrepresentation, breach of fiduciary duty, strict liability and unfair or deceptive trade practices. The Released Claims would have covered each of the claims subsequently pleaded in the Parsons and Currie actions even though not all of the material facts on which they were based had been pleaded in *Boland*. The original Complaint was amended to extend the class to persons who had participated, or attempted to participate, in promotional games sponsored by McDonald's since 1979.

6.     On May 8, 2002, the application for the above orders was heard by Judge Stephen Schiller in Chicago and, on June 6, 2002, he granted the preliminary relief requested with some modifications to the proposed notice to class members. August 28, 2002 was designated as the final date for members to opt out and a final fairness hearing was to be held on September 17, 2002.

7.     The manner in which notice was to be given to customers in Canada was specifically addressed at the preliminary hearing on May 8, 2002 and the order of the court provided for the approved form of notice to be published in each of three French-language newspapers in Quebec on July 15, 2002 and in Maclean's magazine on July 15 and July 22 as well as in two US publications that had circulation in Canada.

8.     Jacobson had pleaded guilty to the criminal charges and, at the trial of his alleged conspirators, he gave evidence on August 19, 2002 that McDonald's had instructed Simon Marketing Inc that the "random" selection of winners of "high value" prizes was to be manipulated to ensure that no such prizes would be awarded to contestants in Canada. No such allegation had been - or was ever - made in the *Boland* action.

9.     After a US attorney had notified the firm of Paliare Roland in Toronto, the firm placed information about the US proceedings on its website and was subsequently contacted by the plaintiff, Preston Parsons. The Parsons action was commenced by statement of claim on September 13, 2002. As I have indicated, the causes of action that were pleaded were based on allegations that reflected those made by Jacobson, to which I have just referred, as well as those in the Complaint filed in *Boland*.

10.    On September 16, 2002, a group of Canadians, including Mr.

Parsons, moved for leave to intervene in the *Boland* proceedings to object to the settlement of that action. The documents filed in the court in Illinois named Paliare Roland as solicitors for Mr. Parsons although members of the firm did not - and could not - represent him in proceedings in that jurisdiction.

11.    At the Final Fairness Hearing on September 17, 2002, submissions were made by a US attorney on behalf of the Canadian objectors. The hearing was adjourned to October 10, 2002 to permit written submissions. It continued on that date after written submissions of the objectors and responding submissions on behalf of the plaintiffs in *Boland* had been filed.

12.    The Currie action was commenced on October 28, 2002 with Paliare Roland as solicitors of record.

13.    On January 3, 2003, Judge Schiller released his decision dismissing the objections of the Canadian objectors. The terms of the settlement were given final approval and the certification order was made final. On April 8, 2003, the formal order of the court was entered containing, among other things the release of McDonald's and its subsidiaries by the members of the class and a declaration that all members of the class who had not opted out were bound by the terms of the order.

14.    An appeal by Mr. Parsons from the decision of Schiller J. was dismissed on July 31, 2003 on the ground that the order of the learned judge was not then a final order as the question of costs had not been dealt with.

**Judicial Proceedings**

[4]    The appellants moved to dismiss or stay both the Parsons and Currie actions on the ground that the claims asserted in both actions had been finally disposed of in the *Boland* action.

[5]    The motion judge dismissed the Parsons action on the basis that by appearing in the Illinois court to object to the settlement, Parsons had attorned to the jurisdiction of the Illinois court and that the *Boland* judgment should be recognized and enforced against him and the other Canadian objectors who appeared to contest the *Boland* settlement.

[6]    The motion judge refused to stay or dismiss the Currie action. He found that Currie was not bound by the *Boland* judgment or by Parsons' attornment despite the fact that the claims were identical and that Parsons and Currie were both represented by the same law firm. The motion judge found that under the applicable conflict of law rules, the Illinois court had jurisdiction over the non-resident, non-attorning plaintiff class members. However, he further found that the notice given in that action to the Canadian members of the plaintiff class was so inadequate as to violate the rules of natural justice. The motion judge concluded, accordingly, that the *Boland* judgment should not be recognized and enforced so as to bind Currie and those he sought to represent in his proposed class action.

[7]      McDonald's Corp., McDonald's Canada and Simon Marketing appeal the motion judge's refusal to dismiss or stay the Currie action. Parsons did not appeal the dismissal of his action.

## ISSUES

[8]      The following issues arise on this appeal.

1.   Should the Ontario courts recognize and enforce the *Boland* judgment against Currie and the non-attorning Canadian class members he seeks to represent?

2.   Did the notice to the Canadian class members satisfy the requirements of natural justice?

3.   Is Currie precluded by the doctrines of *res judicata* or abuse of process from prosecuting his claim in Ontario?

## Analysis

*1.      Should the Ontario courts recognize and enforce the Boland judgment against Currie and the non-attorning Canadian class members he seeks to represent?*

[9]      It is common ground on this appeal that if the *Boland* judgment should be recognized in Ontario under the applicable conflict of laws principles, Currie and the members of the class he seeks to represent are bound by it and that Currie's proposed class action would be precluded. It is also common ground that the issue of whether the Ontario courts should recognize and enforce the Illinois judgment approving the settlement turns upon the application of the principles enunciated by the Supreme Court of Canada in *Morguard Investments Ltd. v. De Savoye,* 1990 CanLII 29 (S.C.C.), [1990] 3 S.C.R. 1077 and *Beals v. Saldanha,* 2003 SCC 72 (CanLII), [2003] 3 S.C.R. 416.

[10]     In *Morguard*, the Supreme Court of Canada identified the twin principles of "order and fairness" and "real and substantial connection" for the assessment of the propriety of conflict of laws jurisdiction. As La Forest J. explained at p. 1102, "order and justice militate in favour of the security of transactions", an interest fostered in the modern world of increased trans-border activity by freer recognition and enforcement of judgments from other jurisdictions. But embedded in the principles of order and fairness is also the notion of jurisdictional restraint. The interest of security of transactions gained by the party seeking enforcement must be balanced with the need for fairness to the party against whom enforcement is sought. As La Forest J. put it at 1103: "it hardly accords with principles of order and fairness to permit a person to sue another in any jurisdiction, without regard to the contacts that jurisdiction may have to the defendant or the subject-matter of the suit…Thus, fairness to the [party against whom enforcement is sought] requires that the judgment be issued by a court acting through fair process and with properly restrained jurisdiction."

[11]     The "real and substantial connection" test serves to control the assertion of jurisdiction. It is described variously in *Morguard*, at pp. 1104-9, as a connection "between the subject-matter of the action and the territory where the action is brought", "between the jurisdiction and the wrongdoing", "between the damages suffered and the jurisdiction", "between the defendant and the forum province", "with the transaction or the parties", and "with the action". The real and substantial connection test is a flexible one, "a term not yet fully defined" (*Tolofson v. Jensen,* 1994 CanLII 44 (S.C.C.), [1994] 3 S.C.R. 1022 at 1049), and there is no strict or rigid test to be applied. (*Hunt v. T&N plc.,* 1993 CanLII 43 (S.C.C.), [1993] 4 S.C.R. 289 at 325).

[12]    *Morguard* dealt with the recognition and enforcement of inter-provincial judgments. In *Beals*, those same principles were adapted and applied to international judgments. Writing for the majority, at para. 37, Major J. described real and substantial connection as "the overriding factor in the determination of jurisdiction." He stated at para. 32:

> The "real and substantial connection" test requires that a significant connection exist between the cause of action and the foreign court. Furthermore, a defendant can reasonably be brought within the embrace of a foreign jurisdiction's law where he or she has participated in something of significance or was actively involved in that foreign jurisdiction. A fleeting or relatively unimportant connection will not be enough to give a foreign court jurisdiction. The connection to the foreign jurisdiction must be a substantial one.

[13]    The novel point raised on this appeal is the application of the real and substantial connection test and the principles of order and fairness to unnamed, non-resident plaintiffs in international class actions.

[14]    Ontario residents frequently engage in cross-border activities that may become the subject of class action litigation in Ontario, in another province or in a foreign jurisdiction. Several Ontario trial courts have authorized national and international classes: *Robertson v. The Thompson Corporation* reflex, (1999), 43 O.R. (3d) 161 (S.C.J.) (international class), *Carom v. Bre-X Minerals Ltd.* reflex, (1999), 44 O.R. (3d) 173 (S.C.J.) (national class) and *Wilson v. Servier* reflex, (2000), 50 O.R. (3d) 219 (S.C.J.) (national class) In *Mondor v. Fisherman; CC&L Dedicated Enterprise Fund (Trustee of) v. Fisherman*, [2002] O.T.C. 317, Cumming J. approved a settlement in a class action where the class included American and other foreign plaintiffs. Legislation in several provinces specifically contemplates the inclusion of non-resident class members: *Class Proceedings* Act, S.A. 2003, c. C-16.5, ss. 7(1)(3) and 17(1)(b); *Class Proceedings Act*, R.S.B.C. 1996, c.50, ss. 692) and 16(2); *The Class Proceedings Act*, C.C.S.M., c. C130, s. 6(3); *Newfoundland and Labrador Class Actions Act*, SNL2001, c. C-18.1, ss. 7(2) and 17(2) – (5); *The Class Actions Act*, S.S. 2001, c. C-12.01, ss. 8(2) and 18(2).

[15]    There are strong policy reasons favouring the fair and efficient resolution of interprovincial and international class action litigation: *Vitapharm Canada Ltd. v. F. Hoffman-LaRoche Ltd.* (2001), 6 C.P.C. (5th) 245 at para. 27 (Ont. S.C.J.), aff'd (2002), 20 C.P.C. (5th) 65 (Ont. Div. Ct.), aff'd (2003), 30 C.P.C. (5th) 107 (Ont. C.A.); *Wilson v. Servier Canada Inc,.* above at 243-4 (S.C.J.); *Wilson v. Servier Canada Inc.* reflex, (2002), 59 O.R. (3d) 656 (S.C.J.) at 664-670. Conflict of law rules should recognize, in appropriate cases, the importance of having claims finally resolved in one jurisdiction. In some cases, Ontario courts will render judgments affecting the rights of non-residents and in other cases, Ontario residents will be affected by class action proceedings elsewhere. Ontario expects its judgments to be recognized and enforced, provided its courts assert jurisdiction in a proper manner and comity requires that, in appropriate cases, Ontario law should give effect to foreign class action judgments.

[16]    Recognition and enforcement rules should take into account certain unique features of class action proceedings. In this case, we must consider the situation of the unnamed, non-resident class plaintiff. In a traditional non-class action suit, there is no question as to the

jurisdiction of the foreign court to bind the plaintiff. As the party initiating proceedings, the plaintiff will have invoked the jurisdiction of the foreign court and thereby will have attorned to the foreign court's jurisdiction. The issue relating to recognition and enforcement that typically arises is whether the foreign judgment can be enforced against the defendant.

[17]   Here, the tables are turned. It is the defendant who is seeking to enforce the judgment against the unnamed, non-resident plaintiffs. The settling defendants, plainly bound by the judgment, seek to enforce it as widely and as broadly as possible in order to preclude further litigation against them. Henry Paul Monaghan, "Antisuit Injunctions and Preclusion Against Absent Nonresident Class Members" (1998) 98 Columbia Law Review 1148 at 1155-56, warns of the need to guard against potential abuses by settling class action defendants who "welcome class action suits as a vehicle for limiting overall liability, sometimes at bargain-basement prices." Before enforcing a foreign class action judgment against Ontario residents, we should ensure that the foreign court had a proper basis for the assertion of jurisdiction and that the interests of Ontario residents were adequately protected.

[18]   To determine whether the assumption of jurisdiction by the foreign court satisfies the real and substantial connection test and the principles of order and fairness, it is necessary to consider the situation from the perspective of the party against whom enforcement is sought. In many cases, the actions of the non-resident class member will assist in determining jurisdiction. Take, for example, the case of an Ontario resident who orders goods from a foreign mail order merchant or who buys securities on a foreign stock exchange. The Ontario resident has engaged in a cross-border transaction with a foreign entity. The cause of action arises at least in part in the foreign jurisdiction. It would not be unreasonable, from the perspective of the Ontario resident, to expect that legal claims arising from the transaction could be properly litigated in the foreign jurisdiction. Nor is it unreasonable, whether from the perspective of the foreign defendant or from that of the Ontario plaintiff, to expect that class action litigation in the foreign jurisdiction should dispose finally of the Ontario plaintiff's claim.

[19]   In this case, however, the unnamed, non-resident class members have done nothing to invite or invoke Illinois jurisdiction. The respondents offer this analogy: would Ontario law recognize the jurisdiction of Illinois to entertain a suit by the appellants for a declaration of non-liability against the respondents? That is the legal and practical effect of the Illinois judgment so far as they are concerned. If a judgment of non-liability by the foreign court would be recognized and enforced in Ontario, so too should the courts of Ontario recognize and enforce the foreign class action settlement. However, if the foreign non-liability judgment would not be recognized and enforced, an Ontario court should hesitate to recognize and enforce the foreign class action settlement against the non-resident plaintiff.

[20]   This analogy is of some assistance, but I am not persuaded that a model entirely based upon the position of the defendant in a traditional two-party lawsuit can adequately capture the legal dynamics and complexity of the situation of an unnamed plaintiff in modern cross-border class action litigation. The position of the class action plaintiff is not the same as that of a typical defendant. Rules for recognition and enforcement of class action judgments should reflect those differences. The class action plaintiff is not hauled before a foreign court and required to defend him or herself upon pain of default judgment. As stated by Rehnquist J. in the leading American decision, *Phillips Petroleum Company v. Shutts*, 472 U.S. 797 at 809 (1985), "[un]like a defendant in a civil suit, a class-action plaintiff is not required to fend for himself." Class action regimes typically impose upon the court a duty to ensure that the interests of the plaintiff class

members are adequately represented and protected. This is a factor favouring recognition and enforcement against unnamed class members: see John C.L. Dixon, "The *Res Judicata* Effect in England of a U.S. Class Action Settlement" (1997) 46 I.C.L.Q. 134 at 136, 150-51.

[21]    On the other hand, I accept the respondent's basic point that it would be wrong simply to approach the issue of jurisdiction by asking whether the Illinois court would have jurisdiction over the respondents at the suit of Canadian plaintiffs. The court must have regard to the rights and interests of unnamed plaintiffs who did not participate in the *Boland* proceedings. The question of jurisdiction should be viewed from the perspective of the Ontario client of a McDonald's Canada restaurant, participating in a promotional prize giveaway presented by McDonald's Canada, who has done nothing to invoke or submit to the jurisdiction of the Illinois court.

[22]    The principal connecting factors linking the cause of action asserted in Currie's proposed class action to the state of Illinois are that the alleged wrong occurred in the United States and Illinois is the site of McDonald's head office. The alleged wrongful conduct, manipulating the "random" selection of winners of "high value" prizes to ensure that no such prizes would be awarded to contestants in Canada, occurred in the United States. This factor is a "real and substantial connection" in favour of Illinois jurisdiction. While constitutional arrangements may put interprovincial suits on something of a different plain, as noted by Cumming J. in *Wilson v. Servier Canada Inc.* (2000), above at 241, Ontario courts have certified national class actions "if there is a real and substantial connection between the subject-matter of the action and Ontario" in the expectation that "other jurisdictions on the basis of comity should recognize the Ontario judgment."

[23]    On the other hand, the principles of "order and fairness" require that careful attention be paid to the situation of ordinary McDonald's customers whose rights are at stake. These non-resident class members would have no reason to expect that any legal claim they may wish to assert against McDonald's Canada as result of visiting the restaurant in Ontario would be adjudicated in the United States. The consumer transactions giving rise to the claims took place entirely within Ontario. The consumers are residents of Canada and the McDonald's Canada is a corporation that conducts its business in Canada. Damages from the alleged wrong were suffered in Ontario. The Currie plaintiffs themselves did nothing that could provide a basis for the assertion of Illinois jurisdiction, while McDonald's Canada invited the jurisdiction of the courts of Ontario by carrying on business here.

[24]    The locus of the alleged wrong indicates a real and substantial connection with Illinois, but recognizing Illinois jurisdiction could be unfair to the ordinary McDonald's customer who would have no reason to suspect that his or her rights are at stake in a foreign lawsuit and who has no link to or nexus with the *Boland* action.

[25]    To address the concern for fairness, it is helpful to consider the adequacy of the procedural rights afforded the unnamed non-resident class members in the *Boland* action. Before concluding that Ontario law should recognize the jurisdiction of the Illinois court to determine their legal rights, we should be satisfied that the procedures adopted in the *Boland* action were sufficiently attentive to the rights and interests of the unnamed non-resident class members. Respect for procedural rights, including the adequacy of representation, the adequacy of notice and the right to opt out, could fortify the connection with Illinois jurisdiction and alleviate concerns regarding unfairness. Given the substantial connection between the alleged wrong and Illinois, and given the small stake of each individual class member, it seems to me

that the principles of order and fairness could be satisfied if the interests of the non-resident class members were adequately represented and if it were clearly brought home to them that their rights could be affected in the foreign proceedings if they failed to take appropriate steps to be removed from those proceedings

[26]    In the circumstances of this case, it is not necessary for me to consider the issue of adequacy of representation in detail. I note, however, that American commentators have raised the "race-to-the-bottom" concern: see Monaghan, above. A sophisticated defendant may persuade plaintiffs' counsel to accept a sharply discounted recovery rate for non-resident (including Canadian or Ontario) plaintiffs. The foreign representative plaintiff's interests may conflict with those of the Ontario class, or not fully encapsulate the interests of the Ontario class. Recognition and enforcement rules must be attentive to these possibilities and retain sufficient flexibility to address concerns of this nature.

[27]    On the other hand, provided the interests of non-resident class members were adequately represented, recognition and enforcement of foreign class proceedings would seem desirable. Recognition of the judgment would encourage the defendant to extend the benefits of the settlement to non-residents. Non-resident class members would receive a benefit without resorting to litigation and the defendant would buy peace from further litigation.

[28]    The right to opt out is an important procedural protection afforded to unnamed class action plaintiffs. Taking appropriate steps to opt out and remove themselves from the action allows unnamed class action plaintiffs to preserve legal rights that would otherwise be determined or compromised in the class proceeding. Although she was not referring to inter-jurisdictional issues, in *Western Canadian Shopping Centres Inc. v. Dutton*, 2001 SCC 46 (CanLII), [2001] 2 S.C.R. 534 at para. 49, McLachlin C.J.C. identified the importance of notice as it relates to the right to opt out: "A judgment is binding on a class member only if the class member is notified of the suit and given an opportunity to exclude himself or herself from the proceeding." The right afforded to plaintiff class members to opt out has been found to provide some protection to out-of-province claimants who would prefer to litigate their claims elsewhere: *Webb v. K-Mart Canada Ltd.* reflex, (1999), 45 O.R. (3d) 389 at 404 (S.C.J.). It is obvious, however, that if the right to opt out is to be meaningful, the unnamed plaintiff must know about it and that, in turn, implicates the adequacy of the notice afforded to the unnamed plaintiff.

[29]    The respondent submits that recognition should be withheld absent an order requiring non-resident plaintiffs to opt in: see D.L. Bassett, "U.S. Class Actions Go Global: Transnational Class Actions and Personal Jurisdiction" (2003) 72 Fordham Law Review 41. In some provinces (Alberta: *Class Proceedings* Act, S.A. 2003, c. C-16.5, s. 17(1)(b)); British Columbia: *Class Proceedings Act*, R.S.B.C. 1996, c.50, s. 16(2); Saskatchewan: *The Class Actions Act*, S.S. 2001, c. C-12.01, s. 18(2); *Newfoundland and Labrador Class Actions Act*, SNL2001, c. C-18.1, s. 17(2)) legislation requires out of province plaintiffs opt in to class proceedings. There may well be cases where the nature of the rights and interests at stake would make such a requirement appropriate as a prerequisite to recognition and enforcement, but I do not accept the suggestion that unnamed plaintiffs should always be required to opt in as a prerequisite to recognition. In my view, the case at bar does not fall into the category where an "opt in" order should be required. Here, the interest of each individual plaintiff is nominal at best. An order requiring members of the plaintiff class to opt in would, as a practical matter, effectively negate meaningful class action relief.

[30]    In my view, provided (a) there is a real and substantial connection linking the cause of action to the foreign jurisdiction, (b) the rights of non-resident class members are adequately represented, and (c) non-resident class members are accorded procedural fairness including adequate notice, it may be appropriate to attach jurisdictional consequences to an unnamed plaintiff's failure to opt out. In those circumstances, failure to opt out may be regarded as a form of passive attornment sufficient to support the jurisdiction of the foreign court. I would add two qualifications: First, as stated by LaForest J. in *Hunt v. T&N plc.*, above at p. 325, "the exact limits of what constitutes a reasonable assumption of jurisdiction" cannot be rigidly defined and "no test can perhaps ever be rigidly applied" as "no court has ever been able to anticipate" all possibilities. Second, it may be easier to justify the assumption of jurisdiction in interprovincial cases than in international cases: see *Muscutt v. Courcelles* 2002 CanLII 44957 (ON C.A.), (2002), 60 O.R. (3d) 20 at paras 95-100 (C.A.).

[31]    The motion judge determined that the notice given to the non-resident class members was inadequate. He observed that traditional conflict of laws doctrine treats adequacy of notice as an element of natural justice that can be raised as a defence to enforcement, once the jurisdiction of the foreign court has been established. He did not find it necessary to decide, on the facts of this case, whether or not the notice issue had a bearing on jurisdiction. As I have already explained, it is my opinion that the notice issue does bear upon jurisdiction. I consider the motion judge's ruling on the adequacy of notice below and conclude that there is no basis upon which I would interfere with that ruling. I would apply it to the question of jurisdiction and hold that as the unnamed plaintiffs were not afforded adequate notice of the *Boland* proceedings, the Ontario courts should not recognize and enforce the *Boland* judgment against Currie and the non-attorning Canadian class members he seeks to represent.

[32]    I would add this observation. Even if the *Boland* judgment is not accorded recognition and enforcement, it may still have some impact upon Currie's proposed class action in Ontario because of the principle against double recovery. As a result of the *Boland* judgment, certain benefits were conferred upon Canadian McDonald's patrons. If the Currie action succeeds on the merits, then the trial judge will likely take into account the benefits already received by the plaintiff class in order to determine the appropriate remedy and prevent over-compensation.

[33]    Accordingly, I conclude that Currie and the unnamed members of the class he seeks to represent (excluding the Parsons group) are not bound by the *Boland* judgment.

2.    *Did the notice to the Canadian class members satisfy the requirements of natural justice?*

[34]    In the *Boland* action, the Illinois court ordered that notice be given in Canada by means of two advertisements in Maclean's Magazine for English Canada and in La Presse, Le Journal de Québec and Le Journal de Montréal for Quebec.  Notice was also published in three U.S. publications with circulation in Canada, People Magazine, USA Today and four copies of TV Guide.

[35]    The respondents rely upon the evidence of Todd Hilsee, an individual with experience in developing notice programs for class actions.  In Hilsee's opinion, the notice to Canadian members of the plaintiff class in Boland was inadequate.  Relying on "net-reach" analysis, he asserts that the notice had reached only 29.9% of Canadian adults who frequent burger restaurants.  The notice approved in the United States, meanwhile, would have reached 72% of American fast food patrons.

[36]    In response to Hilsee's evidence, the appellants filed the affidavit of Wayne Pines, who prepared the Boland notice plan.  He stated that Maclean's readership, in addition to circulation figures, should be considered, as should the impact of the notice in the U.S. publications with circulation in Canada.  Pines also swore that the notice to Canadians in Boland was more effective and broader than the notice approved in *Chadha v. Bayer Inc.* (1999), 43 C.P.C. (4th) 91 (Ont. S.C.J.).

[37]    The motion judge made the following findings at para. 58 with respect to the adequacy of the notice in the *Boland* action:

> I am satisfied that it would be substantially unjust to find that the
> Canadian members of the putative class in Boland had received
> adequate notice of the proceedings and of their right to opt out.
> Quite apart from the form and contents of the notice - Mr. Hilsee's
> reference to "wall to wall legalese" conveys no more than a hint of
> its eye-glazing opaqueness - I believe that its dissemination in
> Canada was so woefully inadequate that the decision should be held
> to offend the rules of natural justice recognized in this court and, on
> that ground, to be not binding on the Canadian members of the
> putative class in Boland, other than those whom I have found to
> have submitted to the jurisdiction of the court in Illinois. It would
> not, in my judgment, be at all reasonable to consider publication in
> two issues of Maclean's magazine as adequate notice to unilingual
> English-speaking Canadians - or, indeed, to French-speaking
> Canadians outside Quebec - who were customers of McDonald's.
> Nor, as the question is governed by the laws of this jurisdiction, do I
> believe it would be helpful to speculate whether the decision of
> Schiller J. on the adequacy of the notice plan would have been the
> same if, at the preliminary hearing, he had been provided with the
> true circulation of Maclean's magazine or if the mistake in the initial
> declaration had been drawn to his attention at the final hearing.

[38]    I am not persuaded that we should interfere with the motion judge's findings. They are essentially factual in nature and therefore entitled to deference on appeal to this court.

[39]    It was open on the evidence for the motion judge to conclude that the wording of the notice was so technical and obscure that the ordinary class member would have difficulty understanding the implications of the proposed settlement on their legal rights in Canada or that they had the right to opt out. As I have already indicated, that right is of vital importance to the jurisdiction of the foreign court in international class action litigation. The right to opt out must be made clear and plain to the non-resident class members and I see no basis upon which to disagree with the motion judge's assessment of this notice.

[40]    Nor would I interfere with the motion judge's finding that the mode of notice was inadequate. The appellants opted to publish the notice in a publication that is not ordinarily used in English-Canada for such purposes and there was evidence that this notice reached only a small proportion of the members of the plaintiff class. It was open on the evidence for the motion judge to conclude that such notice was inadequate.

[41]    The appellants argue that the motion judge erred in law by applying a higher standard to the notice than would be applied in an Ontario class action. They point out that under Ontario law, there is no absolute requirement for effective notice in class actions and, where the stake of an individual class member is extremely low, notice requirements may be tailored accordingly. In the present case, the individual class member could assert no more than a mathematical chance to win a prize and given the low value of such a claim, Ontario law sets a very low standard. The *Class Proceedings Act*, S.O. 1992, c. 6, ss. 17 and 20 direct the Ontario courts making directions regarding notice to consider, *inter alia*, the cost of notice, the size of the class and the nature of the relief sought. The *Act* specifically permits the court, having regard to these matters, to dispense with notice where appropriate (s. 17(2)). In consumer class actions involving large plaintiff classes asserting claims that are essentially insignificant on an individual basis, Canadian courts have approved notice arguably less effective than that approved in the case at bar: *Chadha v. Bayer*, above; *Wilson v. Servier Canada Inc.* (2002), above.

[42]    I agree that the motion judge appears not to have assessed the adequacy of the Canadian notice against the standard mandated by Ontario law for Ontario class actions. I disagree, however, that he erred is so doing. In assessing the fairness of the foreign proceedings, "the courts of this country must have regard to fundamental principles of justice and not to the letter of the rules which, either in our system, or in the relevant foreign system, are designed to give effect to those principles" (*Adams v. Cape Industries plc.* [1990] Ch. 433 at 559 (C.A.). The adequacy of the notice had to be assessed in terms of what is required in an international class action involving the assertion of jurisdiction against non-residents. While Ontario's domestic standard my have some bearing upon that issue, I do not agree that it is conclusive, particularly in light of the importance of notice to the jurisdictional issues discussed above.

[43]    In my view, the motion judge was entitled to look, as he did, to the standard the American court applied to its own residents. American and Canadian class members had similar if not identical interests at stake and there was no relevant basis upon which the Illinois court could have concluded that one standard of procedural fairness was appropriate for the American class and another for the Canadian. In the result, the Illinois court applied a different and lower standard in determining what notice should be given to the Canadian plaintiffs. I would not interfere with the motion judge's conclusion that there was a denial of natural justice. Natural

justice surely requires that similarly situated litigants be accorded equal (although not necessarily identical) treatment.

3. *Is Currie precluded by the doctrines of res judicata or abuse of process from prosecuting his claim in Ontario?*

[44]   The appellants argue that Currie should be bound by *Boland* judgment on the basis that he is in the same interest as or a privy to Parsons. Parsons did not appeal the motion judge's finding that he attorned to the jurisdiction of the Illinois court; therefore, he is bound by it. The allegations in the Currie action are the same as those advanced by Parsons. The Currie action was brought as a protective measure to preserve the right to bring an action in Canada on behalf of the same class of plaintiffs in the event of an adverse ruling against Parsons in Illinois. The same law firm that represented Parsons commenced the Currie action after Parsons' appearance in the Illinois court.

[45]   The appellants submit that the Currie action should be dismissed on the basis of *res judicata* or as an abuse of process. They argue that Currie makes essentially the same allegations as were made by Parsons and that the Currie action is nothing more than a deliberate attempt to avoid the effect of an adverse ruling against Parsons. Currie and Parsons are, the appellants submit, alter egos of each other, neither having any significant personal interest in their claims and both making the same allegations. The real plaintiff, and the only entity with a real stake in the claim, is the law firm that represents both Currie and Parsons. The appellants urge us to look to the practical realities of class actions. We are asked to focus on the centrality of the lawyers to a process in which the representative plaintiffs play what is at best a nominal role.

[46]   I am not persuaded that *res judicata* applies here or that there are grounds for this court to interfere with the motion judge's refusal to apply the abuse of process doctrine. The parties are not the same – Currie took no part in the Boland proceedings and McDonald's Canada was not named as a defendant in that action. Further, Currie's allegations specifically related to the Canadian patrons were made by Parsons in objecting to the settlement, but they did not form part of the claim advanced by the representative plaintiff in *Boland*.

[47]   The appellants say that Currie and Parsons are privies, relying on the extended definition of privity identified by Farley J. in *Bank of Montreal v. Mitchell* reflex, (1997), 143 D.L.R. (4th) 697 at 739 (Ont. Gen. Div.), aff'd reflex, (1997), 151 D.L.R. (4th) 574 (Ont. C.A.) and applied in *Banque Nationale de Paris (Canada) et al. v. Canadian Imperial Bank of Commerce et al.* 2001 CanLII 24099 (ON C.A.), (2001), 52 O.R. (3d) 161 (C.A.):

> For privity of interest to exist there must be a sufficient degree of connection or identification between the two parties for it to be just and common sense to hold that a court decision involving the party litigant that it should be binding in a subsequent proceeding upon the non-litigant party in the original proceeding ... [W]here that non-litigant party has sufficient interest in those original proceedings to intervene but instead chooses to stand by and have a battle in which he has a practical and legal concern fought by someone else, it is appropriate to have the non-litigant abide by that previous decision ...

[48]    The motion judge rejected this submission. He found that there was no evidence that Currie deliberately stood by while the battle was being fought elsewhere. There was no evidence that Currie was even aware of the proceedings in the United States until shortly before his own action was commenced. Currie refused, on his counsel's advice, to provide any information that he had received from his counsel about the *Boland* and Parsons proceedings. The motion judge found, at para. 82, that even if he were to draw from Currie's refusal the adverse inference that the Currie was tainted by Parsons' attornment, that still did not provide a basis for finding Currie to be a privy of Parsons or the Currie action to be an abuse of process. The motion judge found that protection of the interests of the putative class was a legitimate tactic:

> There is nothing to suggest that Mr. Currie's decision to commence the Currie action - and any involvement of his solicitors in that decision - was motivated by any consideration other than a desire to protect the interests of members of the putative class in the Parsons action who had not participated in the *Boland* proceedings. Such members could not then be compelled to participate in the Parsons action, I have found that Mr. Parsons had no authority to submit their rights to the jurisdiction of the court in Illinois and, in view of the inadequacy of the notice of the *Boland* proceedings given in Canada, I cannot assume that any of the members of the putative class in the Currie action, other than the objectors, were aware of the proceedings in Illinois or of the Parsons action. In these circumstances, I decline to find that they - or Mr. Currie - were privies of Mr. Parsons or that the commencement and continuation of the Currie action should be considered to be an abuse of process (at para. 83).

[49]    I agree with the motion judge and I reject the submission of the appellants that we should analyze this issue on the basis that the law firm was the real litigant, or that the link provided by the law firm to both Parsons and Currie was sufficient to make them privies. No doubt from a purely financial perspective, the law firm had a greater stake in the outcome than Parsons, Currie or any individual member of the proposed class. However, the financial stake of the class as a whole exceeded that of the law firm. In any event, I am not persuaded that the legal rights of the parties are to be assessed on the basis of their lawyers' pecuniary interest in the outcome. The legal claims that are being advanced belong to Parsons, Currie and to the members of the proposed class, not to the law firm.

[50]    Lawyers are not ordinarily considered to by in privity of interest with their clients: see *Carl Zeiss Stiftung v. Rayner and Keeler Ltd. (No. 2)*, [1957] A.C. 853 at 910 and 937. The propriety of the procedures taken in the presentation of legal claims should be assessed from the perspective of the clients' legal rights. The law firm's job was to protect the legal interests of its individual clients and the legal interests of the proposed class. Currie had no contact with Parsons; nor, it would seem, did he know anything about the Parsons action or the steps that Parsons was taking to pursue it in Ontario and in Illinois. The same can be said for the unnamed members of the class Currie proposes to represent. In that light, it is difficult to see how Currie or those unnamed class members can be said to be bound under the *Bank of Montreal v. Mitchell* principle because they have adopted a tactical "stand by" position, rather than participating in

the Illinois proceedings.

[51]    This case is distinguishable from *Shaw v. BCE Inc.*, [2004] O.T.C. 28. In *Shaw*, Farley J. struck out the statement of claim in a proposed class proceeding only to be met with another claim, substantially similar to the one he struck out, advanced by another representative plaintiff represented by the same law firm. Farley J. found that the new statement of claim failed to disclose a cause of action and he struck it out on that basis. He added that, in any event, the representative plaintiff fell within the extended definition of privity from *Bank of Montreal v. Mitchell*. An appeal to this court was dismissed on the ground that the new statement of claim failed to disclose a cause of action: 2004 CanLII 4327 (ON C.A.), (2004), 189 O.A.C. 9. This court declined to comment on the *res judicata* issue.  In *Shaw*, the case for application of *res judicata* was significantly stronger than in the present case. There had been a determination on the merits that the claim lacked validity and that the new claim did not differ in substance from the claim that had been struck out.  The merits of significant aspects of the *Parsons* claim, those specifically pertaining to Canadian customers, have never been considered. In any event, as I have already found that the expanded *Bank of Montreal v. Mitchell* definition of privity does not apply here, and as *Shaw* rests on that same principle, *Shaw* has no application here.

## Conclusion

[52]    For these reasons, I would dismiss the appeal.

[53]    If the parties are unable to agree as to the costs of this appeal, brief written submissions may be filed. Respondent's submissions to be delivered within ten days after the release of these reasons; appellants' submissions to be delivered five days thereafter.

"Robert J. Sharpe J.A."
"I agree R.P. Armstrong J.A."
"I agree R.A. Blair J.A."

**RELEASED:  February 16, 2005**

[About CanLII] [Conditions of Use] [Advanced search] [Help] [Français]
[Privacy Policy] [Mailing Lists] [Technical Library]
[Contact CanLII]

by *LexUM* _____ for the Federation of Law Societies of Canada