# Exhibit 7

63 W.W.R. 146, 67 D.L.R. (2d) 345

▷
1968 CarswellMan 5

Long v. Western Propeller Co.

Long et al (Plaintiffs) Respondents v. Western Propeller Company Ltd. et al (Defendants) Appellants

Manitoba Court of Appeal

Freedman, Guy and Monnin, JJ.A.

Judgment: January 24, 1968

Copyright © CARSWELL,

a Division of Thomson Canada Ltd. or its Licensors. All rights reserved.

Counsel:    D. C. H. McCaffrey, for plaintiffs, respondents.

K. B. Foster, for defendants, appellants Western Propeller Co. Ltd. and Bristol Aero-Industries Ltd.

F. K. Turner, for defendant, appellant Hope.

Subject: Civil Practice and Procedure; Estates and Trusts

Limitation of Actions --- Actions in tort -- Statutory limitation periods -- When statute commences to run.

Limitation of Actions  -- Airplane Crash Due to Alleged Negligent Repairs  -- Time when Cause of Action Arose -- Limitation of Actions Act.

Appeal from the judgment of Nitikman, J. (1967) 61 W.W.R. 618, allowing an appeal from an order of the referee dismissing plaintiffs' action on the ground that it was barred by The Limitation of Actions Act, RSM, 1954, ch. 145. Appeal dismissed.

The action arose out of the destruction of an airplane which crashed in November, 1964, injuring its pilot and passenger. The airplane had been overhauled and certified as airworthy by defendants in 1960, and plaintiffs alleged that their damages flowed from the negligence of defendants in carrying out the overhaul; action was commenced in November, 1966. After fully reviewing the authorities it was held, per Freedman and Guy, JJ.A., Monnin, J.A. concurring, that the appeal must be dismissed; the crux of the issue was whether the action sounded in contract or in tort; if in contract the actions of all plaintiffs were clearly barred since the cause of action must have arisen when the breach of contract occurred, namely, in 1960; if in tort the actions were maintainable since no cause of action could possibly arise until damage was suffered, namely, in November, 1964. There was no privity of contract between plaintiffs and defendants, and plaintiffs' action was necessarily based on negligence, a tort. Before a cause of action for the tort of negligence can arise there must be present three elements: (a) A duty owed; (b) A breach of that duty; and (c) Damages arising from that breach. Plaintiffs having sued within the six and two-year periods made applicable to their respective claims by sec. 3 (1) of The Limitation of Actions Act, RSM, 1954, ch. 145, their actions were maintainable: Stewart v. Maritime Electric Co. , [1952] 2 D.L.R. 217 , 6 Abr Con (2nd) 1124 (P.E.I. C.A.); Schwebel v. Telekes, [1967] 1 O.R. 541, at 544; Lewington v. Raycroft, [1935] O.R. 474, affirming ibid., at p. 440, 25 Can Abr 1030 (C.A.); Grant v. Australian Knitting Mills Ltd., [1936] A.C. 85, at 107, 105 LJPC 6; Semtex v. Gladstone, [1954] 1 W.L.R. 945, [1954] 2 All ER 206; Romford Ice & Cold Storage Co. v. Lister, [1956] 2 Q.B. 180, [1955] 3 W.L.R. 631, [1955] 3 All ER 460, affirmed [1957] AC 555, [1957] 2 W.L.R. 158, [1957] 1 All ER 125; Dufferin Paving & Crushed Stone Ltd. v. Anger, [1940] S.C.R. 174, 7 Abr Con (2nd) 41; Reeves v. Butcher, [1891] 2 Q.B. 509, 60 LJQB 619; Frind v. Sheppard, [1940] O.R. 448, 74 C.C.C. 386, reversed on different grounds [1941] S.C.R. 531, 1 Abr Con (2nd) 684; Baldwin v. Kingstone (1890-91) OAR 63, at 91, 25 Can Abr 829; British Linen Co. v. McEwan (1891-92) 8 Man. R. 99, 25 Can Abr 762 (C.A.) applied.

Freedman, J.A.:

1    On this appeal the court must determine when

63 W.W.R. 146, 67 D.L.R. (2d) 345

"the cause of action arose," as that phrase is used in sec. 3 (1) (*d*) and 3 (1) (*e*) (now substituted 1966-67, ch. 32, sec 2) of *The Limitation of Actions Act*, RSM, 1954, ch. 145, reading thus:

> 3. (1) The following actions shall be commenced within and not after the times respectively hereinafter mentioned:
>
> . . . . .
>
> (*d*) Actions for trespass to the person, assault, battery, wounding or other injury to the person, whether arising from an unlawful act or from negligence, or for false imprisonment, or for malicious prosecution, or for seduction, within two years after the cause of action arose.
>
> (*e*) Actions for trespass or injury to real property or chattels, whether direct or indirect, and whether arising from an unlawful act or from negligence, or for the taking away, conversion, or detention, of chattels, within six years after the cause of action arose.

2   Relevant dates must now be examined. In July, 1960, Midwest Aviation Ltd. (a company that is not a party to this action) delivered to the defendant Bristol Aero-Industries Ltd. a certain Piper Comanche aircraft for repairs and overhaul. Bristol in turn delivered the aircraft to its co-defendant Western Propeller Co. Ltd., for overhaul of its propeller. On July 14, 1960, after the propeller had been overhauled, the defendant Hope, on behalf of Western, certified that the propeller had been inspected and was airworthy. Subsequently, on August 6, 1960, the defendant Dzogan, on behalf of Bristol, certified that the aircraft, including the propeller, was airworthy.

3   On November 18, 1964, the Piper Comanche aircraft crashed to the ground. At the time in question the plaintiff Long was piloting the aircraft and the plaintiff Dry was a passenger. The aircraft was completely destroyed. For its destruction the plaintiff Northern Aerolease Ltd., the owner thereof, claims damages in the sum of $13,000. The plaintiffs Long and Dry claim special and general damages arising from the injuries which they sustained in the crash.

4   The action was commenced on November 8, 1966. Following issue and service of the statement of claim defendants moved before the referee for an order that the statement of claim be struck out on the grounds that it was frivolous and vexatious and an abuse of the process of the court. In fact the basis of the motion is the contention that the action, when commenced, was barred by *The Limitation of Actions Act*.

5   There is no dispute concerning the periods of time within which the respective actions must be commenced. The plaintiffs Long and Dry must bring their action within two years after the cause of action arose. The plaintiff Northern Aerolease Ltd., claiming for the destruction of the aircraft, must bring its action within six years. In both cases the question for decision is: When did the cause of action arise? If it arose at the time of the crash on November 18, 1965, the statement of claim issued on November 8, 1966, was in time for all the plaintiffs. If, on the other hand, the cause of action arose in July or August, 1960, when the overhaul was done and the certificates of airworthiness issued, the statement of claim was out of time for all the plaintiffs.

6   The learned referee took the earlier date as the crucial period when the cause of action arose and from which time should be calculated. He accordingly concluded that the action of each of the plaintiffs was barred by *The Limitation of Actions Act* and should therefore be dismissed. On appeal by the plaintiffs to Nitikman, J., in chambers (1967) 61 W.W.R. 618, that learned judge held that the cause of action did not arise until November 18, 1964. He reversed the decision of the referee and dismissed the motions of the defendants. From that decision of Nitikman, J. the defendants now appeal.

7   At this early stage of the dispute it is important to keep in mind that only the question of the statute of limitations, and nothing else, is before the court. There are allegations in the statement of claim of negligence on the part of the defendants with respect to the repairs and overhaul of the aircraft and the issuance of the certificates of airworthiness. There are further allegations that the negligent repair and overhaul rendered the aircraft uncontrollable at the crucial time in November, 1964, thereby causing it to crash. Whether these allegations can be established by the plaintiffs is a matter which at this stage does not concern the court. Questions such as causation, foreseeability, remoteness, and the like may well be relevant at the trial, if the action is permitted to proceed to trial. Our problem today is to decide whether the action should be allowed to proceed to trial or whether we should now declare that it is

63 W.W.R. 146, 67 D.L.R. (2d) 345

barred by *The Limitation of Actions Act*.

8   In my view the controlling factor in the determination of the issue before us is whether the present action sounds in contract or in tort. There is abundant authority for the view that where a negligent breach of contract occurs the cause of action based thereon arises at the time of the breach. The defendants contend that the present is such a case, that the cause of action, if any, arose in July or August, 1960, and that the claim is accordingly barred. The plaintiffs, on the other hand, assert that their action is in tort and that no cause of action existed until the crash occurred and their damage was sustained, that time must be calculated from November 18, 1964, and that accordingly the statement of claim was issued within the permitted period.

9   In my view the contention of the plaintiffs must prevail. Their action cannot properly be described as one for a breach of contract. What contract, one may ask? None of the plaintiffs was a party to any contract with any of the defendants. Their action is framed in tort and, in my view, necessarily so. The plaintiffs Long and Dry had no cause of action until they were injured in the crash. The plaintiff Northern Aerolease Ltd. had no action for the destruction of the Piper Comanche aircraft until it was destroyed in the crash. The cause of action in each case arose on November 18, 1964, and time under the statute runs from that date.

10   To hold otherwise would result in the anomaly that the cause of action of the plaintiffs Long and Dry was extinguished before it arose. Under the statute their claim for damages for personal injuries had to be brought within two years after the cause of action arose. If the crucial date is July or August, 1960, when their time ran out in July or August, 1962, but up to then neither of them had been injured and neither of them could sue anyone. I find it impossible to believe that their action could be barred before it even came into existence.

11   With respect to the claim of Northern Aerolease Ltd., a six-year period is applicable. The only basis on which its claim can be said to be outlawed is that it arose in 1960, when the repairs and overhaul were done. But Northern Aerolease was not privy to any contract for such repairs and overhaul. Its claim cannot properly be construed as one arising from a negligent breach of contract. Rather it is a claim in tort, the cause of action in respect of which arose on November 18, 1964, when the plane crashed, with resultant damages alleged to amount to $13,000.

12   The defendants place much reliance on the decision of the Ontario court of appeal in *Schwebel v. Telekes*, [1967] 1 O.R. 541. Like Nitikman, J., I distinguish that case from the present one. *Schwebel* involved an action between two contracting parties based upon an alleged negligent breach of the contract. The illuminating judgment of Laskin, J.A., for the court, very properly holds that in contract cases the limitation period runs from the occurrence of the breach. Applied to the factual situation confronting the court in the *Schwebel* case, that ruling had the effect of barring the action. But the decision does not assist the present defendants in this tort action. Indeed, Laskin, J.A., in the course of his judgment, makes an observation which has application in the context of the matter now before us. He says, at p. 544:

> No doubt, actions upon the case, mentioned in s. 45 (1) (g), may be said to comprehend tort where liability is based on negligence; and, certainly, where a claim for personal injuries is made, proof of damage would be required to complete the cause of action.

13   Here the damage which was required to complete the cause of action did not occur until November 18, 1964. Time, therefore, runs from that date.

14   In the result I would dismiss the appeal with costs.

*Guy, J.A.*:

15   This motion comes to us by way of appeal from a judgment of Nitikman, J. in chambers (1967) 61 W.W.R. 618. The nature of the motion was to strike out a statement of claim because the action had not been commenced within the time or times specified in *The Limitation of Actions Act*, RSM, 1954, ch. 145.

16   Mr. Turner, counsel for the defendant Hope, outlined chronologically the facts which, for purposes of this motion and this appeal, are the only relevant facts. Basically they are as follows:

17   (a) Pursuant to a contract Midwest Aviation Ltd., owner of an aeroplane, sent it for servicing and overhaul to the defendant Bristol Aero-Industries Ltd. Bristol Aero-Industries Ltd., not being equipped to handle propeller servicing, engaged Western

Copr. © West 2007 No Claim to Orig. Govt. Works

63 W.W.R. 146, 67 D.L.R. (2d) 345

Propeller Co. Ltd. to check the propeller of the aeroplane. The work was done by the defendant Hope pursuant to his contract of employment with Western Propeller Co. Ltd., which in turn was under contract to return the propeller in an airworthy condition to Bristol. This work was completed on July 14, 1960;

18   (b) A certificate of airworthiness was given by Western Propeller Co. Ltd. to Bristol and Bristol gave a certificate of airworthiness to the owner, Midwest Aviation Ltd., on that date;

19   (c) In the course of time, either directly or indirectly, the aeroplane became the property of plaintiff Northern Aerolease Ltd.;

20   (d) On November 18, 1964, the plaintiffs Long and Dry were operating the aeroplane in question. During a flight on this date over Alberta, Canada, according to the statement of claim, the propeller began "over-revving" causing the plane to lose altitude and crash. The aircraft was destroyed and the plaintiffs Long and Dry were injured;

21   (e) On November 8, 1966, the statement of claim was issued and this motion is to strike it out as it is out of time by reason of *The Limitation of Actions Act*.

22   The pertinent sections of *The Limitation of Actions Act* are as follows:

> 3. (1) [now substituted 1966-67, ch. 32, sec. 2] The following actions shall be commenced within and not after the times respectively hereinafter mentioned:
>
> . . . . .
>
> (*d*) Actions *for* trespass to the person, assault, battery, wounding or other *injury to the person, whether arising from an unlawful act or from negligence*, or for false imprisonment, or for malicious prosecution, or for seduction, within *two* years after the cause of action arose.
>
> (*e*) Actions for trespass or *injury to real* property or *chattels*, whether direct or indirect, and whether arising from an unlawful act or from negligence, or for the taking away, conversion, or detention, of chattels, within *six* years after the cause of action arose.
>
> (*f*) Actions for the recovery of money (except in respect of a debt charged upon land), whether recoverable as a debt or damages or otherwise, and whether on a recognizance, bond, covenant, or other specialty, or on a simple contract, express or implied, and actions for an account or for not accounting, within six years after the cause of action arose.
>
> . . . . .
>
> (*k*) Any other action not in this or any other Act specifically provided for, within six years after the cause of action arose. [Italics mine.]

23   Thus it will be seen that in so far as the actions for personal injuries are concerned, the period within which to sue is within two years after the cause of action arose. In so far as the property damage is concerned, the limitation period is six years.

24   Mr. Turner, counsel for the appellant Hope, argued that the cause of action arose out of the contract for overhaul made between Bristol, Western Propeller, and Midwest Aviation. He argued that without that contract, Hope, an employee of Western Propeller, would not have laid a hand on the propeller. As such an employee, and pursuant to the said contract for overhaul, Hope did in fact do the necessary work and authorized the issuance of the necessary certificate of airworthiness. Thus on July 14, 1960, if any negligent act had been performed by defendant Hope, it was finished by that time.

25   Mr. McCaffrey, for the plaintiffs, argued that this action arises out of negligence which is a tort, and that the cause of action does not become complete until the three essential ingredients are present, *viz*: (a) A duty owed by the defendants to the plaintiffs; (b) A breach of that duty; (c) Damages resulting from that breach.

26   The argument in basic terms was that no cause of action *arose* until all three ingredients were present; that the last of the ingredients (damages resulting from the breach of duty) did not arise until the crash; and consequently the cause of action had not arisen until the crash had occurred. If this is so, it would bring the action, commenced on November 8, 1966, well within the *six*-year limitation for property damages, as well as the *two*-year limitation for injuries to the person.

Copr. © West 2007 No Claim to Orig. Govt. Works

63 W.W.R. 146, 67 D.L.R. (2d) 345

27   There is no doubt about certain points of law important to this discussion. For instance:

28   (1) *The Limitation of Actions Act* does not destroy the *cause* of action but merely bars the remedy. Barring the remedy in itself, of course, may render the cause of action "not actionable." It is this feature which creates the real difficulty.

29   (2) The words employed by *The Limitation of Actions Act* are "within ... years after the cause of action arose."

30   (3) In cases where the act complained of is actionable, *per se*, as in breach of contract, the time limitation begins to run from the date of breach of contract.

31   (4) In an actionable negligence, which is a branch of the law of tort, there are three necessary elements: (a) A duty owed; (b) A breach of that duty; (c) Damages arising from that breach.

32   In Canadian jurisprudence, the learned judges of appeal of Prince Edward Island faced this problem in *Stewart v. Maritime Electric Co.*, [1952] 2 D.L.R. 217. Their problem there, as in the present case, was to determine *when* the cause of action arose. While the facts of that case related to injury to an employee, because of an unsafe system of work, the question of breach of the employment contract and the tort of negligence were intermingled but the principles involved were discussed by the court which upheld the two-year limitation provision on the ground that the negligence amounted to breach of a contractual duty.

33   Mr. Turner, for the appellant Hope, quite naturally put forth a prodigious effort to establish that the cause of action in the case at bar arose out of contract. This, of course, would bring him within the rule outlined in 24 *Halsbury*, 3rd ed., at p. 223:

> Where one person is employed by another to perform a duty, the failure to perform, or negligence in the performance of, that duty gives rise to a cause of action, and the statute runs from that date of the non-performance or negligence, and not from its being discovered *or from the occurring of damage* .... [Italics mine.]

34   This rule and the rule relating to negligence or tort actions were fully discussed by Laskin, J.A. in *Schwebel v. Telekes*, [1967] 1 O.R. 541.

35   I am of the view that it cannot truly be said that the actions of the plaintiffs Long and Dry and their employer, Builders Hardware Stores Ltd., arose out of the contract to repair and overhaul the aircraft in question in July, 1960. In the first place, there does not appear to be any privity of contract, by succession, or assignment, or otherwise between these plaintiffs and any of the defendants. (Whether or not such contractual entitlement existed as between the plaintiff Northern Aerolease Ltd. and the defendants cannot be determined at this stage when we only have the statement of claim before us in the pleadings. In any event, such a claim would now be outlawed, as the breach of contract was well out of time; and the question is merely academic in this particular case.)

36   Much of the difficulty arises out of the meaning of the phrase "cause of action." The main decisions to which I shall refer below, do not, with respect, come out bluntly to say that the cause of action does *not* refer to the "cause of the trouble" -- either as a *causa sine qua non* or *causa causans*. A thorough study of these cases, however, leads me to the conclusion that "cause of action" does in fact mean "cause to sue." In negligence actions, of course, there is no "cause to sue" until the third requirement of the A, B, C, rule -- i.e., the damage, has occurred.

37   *The Dictionary of English Law*, edited by The Right Honourable The Earl of Jowitt, sometime Lord High Chancellor of Great Britain, describes the phrase quite succinctly in the following words:

> Cause of action, the fact or combination of facts which give rise to a right to sue. Thus in the case of some torts (*e.g.*, trespass), the cause of action is the wrongful act; in the case of other torts (*e.g.*, negligence), the cause of action consists of two things, the wrongful act and the consequent damage. The phrase is of importance chiefly with reference to the Limitation Act, 1939, and the jurisdiction of certain courts. Thus, time begins to run when the cause of action arises (unless postponed or revived by reason of fraud, mistake, acknowledgment, etc.). It is thus necessary to determine the date upon which the cause of action arises. Again, the jurisdiction of an inferior court is frequently limited to cases where the cause of action or some part of it arises within the district of the court.

63 W.W.R. 146, 67 D.L.R. (2d) 345

38   The Ontario court of appeal in *Lewington v. Raycroft*, [1935] O.R. 474, affirming *ibid.*, at p. 440, the judgment of Rose, C.J. of the High Court of Ontario, said at p. 442:

> The requirement that an action must be commenced within six years after the cause of action arose means that it must be commenced within six years after the occurrence of all the facts which the plaintiff must prove as part of his case, that is, that the time begins to run when the plaintiff could first have brought an action and proved sufficient facts to sustain it: *Bradford Old Bank Ltd. v. Sutcliffe*, [1918] 2 K.B. 833, 88 L.J.K.B. 85.

39   Viewed in this light, it is clear that the plaintiffs did in fact sue within the limited time.

40   A considerable amount of light is thrown on the subject by a re-reading of the judgment of Lord Wright in *Grant v. Australian Knitting Mills Ltd.*, [1936] A.C. 85, at 107, 105 LJPC 6. Lord Wright, speaking on behalf of all of the then lords of the judicial committee of the Privy Council, dealt with the subject quite pointedly. In referring to an argument by Wilfrid Greene, K.C. (later Sir Wilfrid Greene, M.R.), he is quoted as follows:

> Mr. Greene further contended on behalf of the manufacturers that if the decision in *Donoghue's* case were extended even a hair's-breadth, no line could be drawn, and a manufacturer's liability would be extended indefinitely. He put as an illustration the case of a foundry which had cast a rudder to be fitted on a liner: he assumed that it I was fitted and the steamer sailed the seas for some years: but the rudder had a latent defect due to faulty and negligent casting, and one day it broke, with the result that the vessel was wrecked, with great loss of life and damage to property. He argued that if *Donoghue's* case were extended beyond its precise facts, the maker of the rudder would be held liable for damages of an indefinite amount, after an indefinite time, and to claimants indeterminate until the event. But it is clear that such a state of things would involve many considerations far removed from the simple facts of this case. So many contingencies must have intervened between the lack of care on the part of the makers and the casualty that it may be that the law would apply, as it does in proper cases, not always according to strict logic, the rule that cause and effect must not be too remote: in any case the element of directness would obviously be lacking.

41   It is true that no question of any statute of limitations was raised in this judgment, but the decision appeared to rest on the principles enunciated in *Donoghue v. Stevenson*, [1932] A.C. 562, 101 L.J.P.C. 119. The broad general principles are again enunciated by Finnemore, J. in *Semtex v. Gladstone*, [1954] 1 W.L.R. 945, [1954] 2 All ER 206, at 212, and quoted with approval by Romer, L.J. in *Romford Ice & Cold Storage Co. v. Lister*, [1956] 2 Q.B. 180, [1955] 3 W.L.R. 631, [1955] 3 All ER 460, at 480, affirmed [1957] AC 555, [1957] 2 W.L.R. 158, [1957] 1 All ER 125: "Justice, as we conceive justice in these courts, requires that the person who caused the damage is the person who must in law be called on to pay damages arising therefrom."

42   Counsel referred us to a number of authorities and texts. I have reviewed all of these and many more. To quote them *in extenso* would lengthen these reasons for judgment inordinately so I am merely listing the more important ones below. It should be pointed out that before embarking upon an examination of these authorities, care should be taken to check the exact wording of the Statute of Limitations governing the circumstances upon which each decision is based. For instance, in the Scottish case of *Watson v. Winget* [1960] SC (H.L.) headnote at p. 92, (1960) SLT 321, the Scottish Act in question reads: "... from the date of the act, neglect or default giving rise to the action ...."

43   The relevant words in the English Act are "... from the date on which the cause of action *accrued*."

44   *The Limitation of Actions Act* of Manitoba, and *The Limitation of Actions Act* of Alberta (RSA, 1955, ch. 177) (where the accident took place), are identical in that both statutes employ the phrase "cause of action arose."

45   *The Highway Traffic Act* of Manitoba (RSM, 1954, ch. 112) and *The Highway Traffic Act* of Ontario (RSO, 1960, ch. 172) both read "... from the time when the damages were sustained."

46   Also, it is important when considering phrases such as one finds in *Salmond, Underhill, Fleming*, and *Winfield*, to remember that the statement -- "if

63 W.W.R. 146, 67 D.L.R. (2d) 345

the cause of action is not the doing of something but the damage resulting therefrom the period of limitation is to be computed from the time when the party sustained the damage," is based on the decision in *Backhouse v. Bonomi* (1861) 9 HL Cas 503, 34 LJQB 181, 11 ER 825, and *Darley Main Colliery Co. v. Mitchell*, [1886] 11 App. Cas. 127, 55 LJQB 529. These are instances where mining operations had been carried on without negligence and some years later the land subsidence over the mine workings caused damage. They are quite distinguishable from the facts in the instant case.

47   The principal authorities and texts which appear to govern the situation are the following: *Underhill, Law of Torts*, 16th ed., p. 399 *et seq; Fleming, The Law of Torts*, 3rd ed., p. 108 *et seq; Winfield on Tort*, 7th ed., p. 802, *et seq; Salmond on Torts*, 14th ed., p. 773 *et seq;* 13 CED (Ont.) 2nd ed., p. 5 *et seq*, and p. 49 *et seq; Schwebel v. Telekes, supra; Darley Main Colliery v. Mitchell, supra; Dufferin Paving & Crushed Stone Ltd. v. Anger*, [1940] S.C.R. 174; *Reeves v. Butcher*, [1891] 2 Q.B. 509, 60 LJQB 619; *Frind v. Sheppard*, [1940] O.R. 448, 74 C.C.C. 386, reversed on different grounds [1941] S.C.R. 531; 24 *Halsbury*, 3rd ed., at pp. 195 and 223; *Baldwin v. Kingstone* (1890-91) OAR 63, at 91; *British Linen Co. v. McEwan* (1891-92) 8 Man. R. 99 (C.A.).

48   Having come to the conclusion that the cause of action in the instant case arose on the date the damage was sustained, I would dismiss the appeal, with costs.

*Monnin, J.A.* concurs with Guy, J.A.:

END OF DOCUMENT

Copr. © West 2007 No Claim to Orig. Govt. Works