# Exhibit 8



CanLII
Canadian Legal Information Institute

FRANÇAIS

Canada >> Supreme Court of Canada >>

**This document: 1997 CanLII 325 (S.C.C.)**
**Citation:** *Peixeiro v. Haberman*, [1997] 3 S.C.R. 549, 1997 CanLII 325 (S.C.C.)
**Parallel citations:** (1997), 151 D.L.R. (4th) 429; (1997), 103 O.A.C. 161
**Date:** *1997-09-26*
**Docket:** *24981*

[Noteup] [Cited Decisions and Legislation]


Peixeiro *v.* Haberman, [1997] 3 S.C.R. 549

**Peter Haberman**                                             *Appellant*

*v.*

**Mauricio Peixeiro and Fernanda Peixeiro**                    *Respondents*

**Indexed as:  Peixeiro *v.* Haberman**

File No.:  24981.

Hearing and judgment:  March 13, 1997.

Reasons delivered:  September 26, 1997.

Present:  L'Heureux-Dubé, Sopinka, Gonthier, Cory, McLachlin, Iacobucci and Major JJ.

on appeal from the court of appeal for ontario

> *Limitation of actions -- Motor vehicles -- Torts -- Discoverability -- Plaintiffs commencing action against defendant more than three years after motor vehicle accident -- Whether discoverability principle applies to postpone commencement of two-year limitation period -- Highway Traffic Act, R.S.O. 1990, c. H.8, s. 206(1) -- Insurance Act, R.S.O. 1990, c. I.8, s. 266(1).*

> Following a two-car accident in October 1990 in which the appellant and the respondent MP were the drivers, MP consulted his family doctor and was told that he had suffered soft tissue injuries in the form of a severe contusion to the right side of his back.  X-rays were taken but disclosed nothing unusual.  In January 1992, MP was involved in a second accident.  His resultant injuries were again diagnosed as being soft tissue in nature.  In June 1993, a CT scan was performed which revealed a disc protrusion in MP's spine.  The respondents commenced an action against the appellant in July 1994 and a motion on a question of law was brought to determine whether the claim for the injuries of October 11, 1990 was statute-barred by s. 206(1) of the Ontario *Highway Traffic Act*, which provides for a limitation period of two years from the time "when the damages were sustained".  The chambers judge held that the action was statute-barred.  The Court of Appeal allowed the respondents' appeal.

*Held*: The appeal should be dismissed.

While at common law ignorance of or mistake as to the extent of damages does not delay time under a limitation period, under Ontario's no-fault insurance scheme at the time of the accident the starting point is when the damages are known to comprise "permanent serious impairment" within the meaning of s. 266(1) of the *Insurance Act*.  Section 266 effectively bars actions for recovery in tort unless a certain level of physical injury, permanent in nature and entailing serious impairment of an important bodily function, is met.  The right of action referred to in s. 206(1) of the *Highway Traffic Act* must mean an action that is not excluded by s. 266(1) of the *Insurance Act*.  This view is strengthened by s. 266(3), which allows for a pre-trial motion on the issue of the existence of a cause of action.  Under s. 206(1) of the *Highway Traffic Act*, there is no cause of action until the injury meets the statutory exceptions to liability immunity.  The discoverability principle applies to avoid the injustice of precluding an action before the person is able to sue.  Time under s. 206(1) does not begin to run until it is reasonably discoverable that the injury meets the threshold of s. 266(1).  While the respondents knew of some injury, they did not know prior to June 1993 that the damage MP sustained as a result of the first accident was a herniated disc, and it cannot be said that they ought to have discovered the serious nature of the damage earlier.  As the action was started within two years of the time when they first learned that they had a cause of action, it is not statute-barred.

## Cases Cited

**Referred to:**  *Murphy v. Welsh*, 1993 CanLII 59 (S.C.C.), [1993] 2 S.C.R. 1069; *Bair-Muirhead v. Muirhead* reflex, (1994), 20 O.R. (3d) 744; *Grossi v. Bates* reflex, (1995), 21 O.R. (3d) 564; *Cartledge v. E. Jopling & Sons Ltd.*, [1963] A.C. 758; *July v. Neal* 1986 CanLII 149 (ON C.A.), (1986), 57 O.R. (2d) 129; *Meyer v. Bright* 1993 CanLII 3389 (ON C.A.), (1993), 15 O.R. (3d) 129; *Buffa v. Gauvin* reflex, (1994), 18 O.R. (3d) 725; *M. (K.) v. M. (H.)*, 1992 CanLII 31 (S.C.C.), [1992] 3 S.C.R. 6; *Kamloops (City of) v. Nielsen*, 1984 CanLII 21 (S.C.C.), [1984] 2 S.C.R. 2; *Central Trust Co. v. Rafuse*, 1986 CanLII 29 (S.C.C.), [1986] 2 S.C.R. 147; *Sparham-Souter v. Town & Country Developments (Essex) Ltd.*, [1976] 1 Q.B. 858; *Fehr v. Jacob* (1993), 14 C.C.L.T. (2d) 200.

## Statutes and Regulations Cited

*Highway Traffic Act*, R.S.O. 1990, c. H.8, s. 206(1), (3).

*Insurance Act*, R.S.O. 1990, c. I.8, s. 266.

*Insurance Statute Law Amendment Act, 1990*, S.O. 1990, c. 2 (Bill 68).

*Limitations Act*, R.S.O. 1990, c. L.15, s. 47.

## Authors Cited

Klar, Lewis.  "No Fault Insurance for Auto Accident Victims:  A Background Paper", prepared for the Canadian Bar Association, Alberta Branch, Fault/No Fault Insurance Task Force, April 1991.

O'Donnell, Allan.  *Automobile Insurance in Ontario*. Toronto:  Butterworths, 1991.

APPEAL from a judgment of the Ontario Court of Appeal 1995 CanLII 932 (ON C.A.), (1995), 25 O.R. (3d) 1, 127 D.L.R. (4th) 475, 85 O.A.C. 2, 42 C.P.C. (3d) 37, 16 M.V.R. (3d) 46, [1995]

O.J. No. 2544 (QL), allowing the respondents' appeal from a decision of Paisley J. of the Ontario Court (General Division) holding that the respondents' action against the appellant was statute-barred. Appeal dismissed.

> *T. H. Rachlin, Q.C.*, and *Alan L. Rachlin*, for the appellant.

> *Antonio F. Azevedo*, for the respondents.

//Major J.//

> The judgment of the Court was delivered by

> MAJOR J. --

I.        Introduction

1                  This appeal arises from a motion brought by the respondents Peixeiro to determine whether their action against the appellant Haberman was statute-barred. The appeal was heard and dismissed on March 13, 1997.

2                  The question raised was whether the discoverability principle applied to postpone the commencement of the two-year limitation period contained in s. 206(1) of the *Highway Traffic Act*, R.S.O. 1990, c. H.8 ("*HTA*"). It stipulates that actions for "damages occasioned by a motor vehicle" must be commenced within two years of the time when the "damages were sustained". The respondents commenced their action against the appellant three years and nine months after the motor vehicle accident. In that action they claimed that Mr. Peixeiro's injuries met the requirement of the exception to the general liability immunity afforded to persons involved in a motor vehicle accident by s. 266(1) of the *Insurance Act*, R.S.O. 1990, c. I.8. This liability immunity is a key feature of the statutory no-fault automobile accident compensation scheme. It operates to effectively bar causes of action in tort in all but a few cases. The resolution of the issue in this appeal requires a consideration of the liability immunity and the no-fault scheme before consideration of the applicability of the discoverability principle.

II.        Statement of Facts

3                  The application before the motions judge proceeded on agreed facts. A two-car accident occurred on October 11, 1990 at the intersection of Ossington Avenue and Harbord Street in the City of Toronto. The appellant Haberman and the respondent Mauricio Peixeiro were the drivers. Liability in the accident is disputed but it is agreed that Mr. Peixeiro knew he was injured.

4                  Mr. Peixeiro consulted his family doctor and was told that he had suffered soft

tissue injuries in the form of a severe contusion to the right side of his back. He was also referred to a specialist who recommended a course of physiotherapy. X-rays were taken at that time but disclosed nothing unusual. He was unable to work as a general contractor, from the date of the accident to November 1991, a period of over 13 months.

5          On January 7, 1992, Mr. Peixeiro was involved in a second two-car accident. Mr. Jose Silva was the other driver in this second accident. Mr. Peixeiro's resultant injuries were again diagnosed as being soft tissue in nature. Mr. Peixeiro was unable to work from the date of the second accident until May 1992. He ceased employment again in August 1992 and has not returned to work.

6          On January 15, 1993, Mr. Peixeiro consulted his family physician. As a result, a CT scan was performed in June 1993. The scan revealed a disc protrusion in the respondent's spine at L5-S1. At that time, Mr. Peixeiro was not a good candidate for surgery. However, on December 8 when he developed paresis on his right leg, he was admitted to emergency. He underwent a hemilaminectomy and a discectomy to remove the herniated disc on December 22, 1993.

7          On December 17, 1993, the respondents commenced an action against Mr. Silva. The respondents initially attempted to add the appellant as a defendant to the Silva action. By agreement, a separate action was commenced on July 27, 1994 against the appellant and a motion on a question of law was brought to determine whether the claim against him for the injuries of October 11, 1990 was statute-barred by s. 206(1) *HTA*.

8          On November 1, 1994, the chambers judge Paisley J. held that the respondents' action against Haberman was statute-barred.

9          The Court of Appeal for Ontario allowed the respondents' appeal on September 5, 1995: 1995 CanLII 932 (ON C.A.), (1995), 25 O.R. (3d) 1, 127 D.L.R. (4th) 475, 85 O.A.C. 2, 42 C.P.C. (3d) 37, 16 M.V.R. (3d) 46, [1995] O.J. No. 2544 (QL).

10          The parties agreed that the respondents first learned about a herniated disc in Mr. Peixeiro's back in June 1993.

III.          Relevant Statutory Provisions

11          *Highway Traffic Act*, R.S.O. 1990, c. H.8, s. 206(1)

**206.** — (1)  Subject to subsections (2) and (3), no proceeding shall be brought against a person for the recovery of damages occasioned by a motor vehicle after the expiration of two years from the time when the damages were sustained.

*Insurance Act*, R.S.O. 1990, c. I.8, s. 266

**266.** — (1)  In respect of loss or damage arising directly or indirectly from the use or operation, after the 21st day of June, 1990, of an automobile and despite any other Act, none of the owner of an automobile, the occupants of an automobile or any person present at the incident are liable in an action in Ontario for loss or damage from bodily injury arising from such use or operation in Canada, the United States of America or any other jurisdiction designated in the *No-Fault Benefits Schedule* involving the automobile unless, as a result of such use or operation, the injured person has died or has sustained,

(a)    permanent serious disfigurement; or

(b)    permanent serious impairment of an important bodily function caused by continuing injury which is physical in nature.

(2)    Subsection (1) does not relieve any person from liability other than the owner of the automobile, occupants of the automobile and persons present at the incident.

(3)    In an action for loss or damage from bodily injury arising directly or indirectly from the use or operation of an automobile, a judge shall, on motion made before or at trial, determine if the injured person has, as a result of the accident, died or has sustained,

(a)    permanent serious disfigurement; or

(b)    permanent serious impairment of an important bodily function caused by continuing injury which is physical in nature.

(4)    Even though a defence motion under subsection (3) is denied, the defendant may, at trial, in the absence of the jury, and following the hearing of evidence, raise the defence provided in subsection (1).

IV.    Judicial History

A.     *Ontario Court (General Division)*

12              The motions judge held that it was not open to the court to apply the discoverability principle and postpone the running of time in relation to s. 206(1)  *HTA*, since that limitation period applies in all cases from the moment the physical injury is sustained. He distinguished *Murphy v. Welsh*, 1993 CanLII 59 (S.C.C.), [1993] 2 S.C.R. 1069, on the basis the respondent here was not under a legal disability.   The motions judge held that the respondents' action was statute-barred as it was brought more than two years after the date of the accident.  A similar conclusion was reached in *Bair-Muirhead v. Muirhead* ※reflex, (1994), 20 O.R. (3d) 744 (Gen. Div.).

B.        *Court of Appeal for Ontario* 1995 CanLII 932 (ON C.A.), (1995), 25 O.R. (3d) 1

13        The Court of Appeal reversed the trial judge on the issue of the applicability of the discoverability principle to s. 206(1) *HTA*. Carthy J.A. held that the discoverability rule was not limited to narrow classes of actions but was a general rule. He assumed, as we do, for the purposes of the motion that the respondent Mr. Peixeiro had been reasonably diligent but incapable of identifying the cause of action. The Court of Appeal held that the balance between greater uncertainty, an increased burden of investigation and the continuance of potential claims against defendants remained "in favour of the discoverability rule" (p. 7).

14        The Court of Appeal stated that if the victim does not know that the injury meets the requirement of s. 266(1), then he or she is not capable of identifying the cause of action. It is no answer to say that the plaintiff could protect his or her  position by starting an action notwithstanding the fact that there was no evidence of an injury that met the threshold in s. 266(1) of the *Insurance Act*. This procedure was obviated by s. 266(3), which provided for a pre-trial motion by the defence to strike the plaintiff's claims. See *Grossi v. Bates* reflex, (1995), 21 O.R. (3d) 564 (Div. Ct.).

V.        Issues

15        There is one issue in this appeal. The question is whether the discoverability rule applies to the limitation period in s. 206(1) *HTA*. Included in a consideration of this question are issues related to the implementation of the province of Ontario's no-fault insurance scheme and rationales behind limitation periods such as s. 206(1) *HTA* as it existed in 1990.

VI.        Analysis

16        It was conceded by the respondents that Mr. Peixeiro suffered a back injury and was aware of it immediately after the first accident. It was of sufficient severity that he remained off work for a period of 13 months. After the second accident of January 1992, he only worked three months, between May 1992 and August 1992, and has not worked since.

17        While the respondents knew of some injury, they did not know within the limitation period that the damage Mr. Peixeiro sustained as a result of the first accident was a herniated disc. They did not know that it met the threshold for an action under s. 266(1) of the *Insurance Act*. He did not sue because he thought that his injuries were not serious enough to qualify for compensation in tort.

18        It was conceded that at common law ignorance of or mistake as to the extent of

damages does not delay time under a limitation period. The authorities are clear that the exact extent of the loss of the plaintiff need not be known for the cause of action to accrue. Once the plaintiff knows that some damage has occurred and has identified the tortfeasor (see *Cartledge v. E. Jopling & Sons Ltd.*, [1963] A.C. 758 (H.L.), at p. 772 *per* Lord Reid, and *July v. Neal* 1986 CanLII 149 (ON C.A.), (1986), 57 O.R. (2d) 129 (C.A.)), the cause of action has accrued. Neither the extent of damage nor the type of damage need be known. To hold otherwise would inject too much uncertainty into cases where the full scope of the damages may not be ascertained for an extended time beyond the general limitation period.

19        However, it was submitted that because of Ontario's no-fault insurance scheme at the time of the accident, the starting point of the running of time is when the damages are known to comprise "permanent serious impairment" within the meaning of s. 266 of the *Insurance Act*. The argument was that the intervention of the liability immunity, one of the mandatory features of Ontario's no-fault system, alters the time of accrual of the cause of action until the material fact of sufficient injury is reasonably discoverable.

A.        *The No-Fault Scheme in Ontario*

20        Tort law provides fault-based compensation for car accidents. Fault as the basis of liability is grounded on the fundamental proposition that a person who is injured due to the fault of another person has the right to compensation from the wrongdoer. Tort law is based on individual responsibility.

21        As the number and severity of car accidents and injuries increased, liability insurance became commonplace and the compensation of victims became the main focus of tort law.

22        Guaranteed compensation of the victim is one of the goals of a no-fault system. One of the hallmarks of a no-fault system is the limitation or abolition of liability based on fault, i.e. tort liability. No-fault systems are a reflection of the conscience of the community. Professor Lewis Klar, in "No Fault Insurance for Auto Accident Victims: A Background Paper" prepared for the Canadian Bar Association, Alberta Branch, Fault/No Fault Insurance Task Force (1991) stated, at p. 11, that the goals of fault-based accident compensation and no-fault are fundamentally different:

> First, and foremost, it must always be remembered that the two types of compensation schemes attempt to achieve different goals. The full compensation, justice, accident deterrence, safety and education goals of tort are not the aims of no fault insurance. No fault insurance is predicated upon the desire to provide accident benefits to all victims, regardless of fault, efficiently and expeditiously. It does not seek to provide full compensation, to deal with the effects of wrongdoing, or to deter accidents. If these goals are to be accomplished, they must be accomplished outside of the no fault insurance scheme, through criminal laws, traffic regulations, and so forth.

23         The no-fault scheme in place at the time of the respondent's accident was the Ontario Motorist Protection Plan (OMPP) inaugurated on June 22, 1990 with the proclamation of the *Insurance Statute Law Amendment Act, 1990*, S.O. 1990, c. 2 (Bill 68).

24         No-fault benefits were available as an alternative prior to June 22, 1990, to cover medical and rehabilitation expenses, loss of income payments, funeral expenses and death benefits. No-fault became mandatory and its complement of benefits more extensive with Bill 68. More significantly, for the purposes of this appeal, Bill 68 introduced a restriction on the right to sue in tort.

25         The Ontario Court of Appeal had the following to say with respect to the legislative intent behind s. 266 of the *Insurance Act* in *Meyer v. Bright* 1993 CanLII 3389 (ON C.A.), (1993), 15 O.R. (3d) 129, at p. 134:

> In our view, the Ontario legislature enacted s. 266 and other related amendments to the Act for the purpose of significantly limiting the right of the victim of a motor vehicle accident to maintain a tort action against the tortfeasor. The scheme of compensation provides for an exchange of rights wherein the accident victim loses the right to sue unless coming within the statutory exemptions, but receives more generous first-party benefits, regardless of fault, from his or her own insurer. The legislation appears designed to control the cost of automobile insurance premiums to the consumer by eliminating some tort claims. At the same time, the legislation provides for enhanced benefits for income loss and medical and rehabilitation expenses to be paid to the accident victim regardless of fault.

26         Since 1990, the prohibition on suing unless the party qualifies under one of the exceptions has identified the Ontario plan as a "threshold" no-fault system. See Allan O'Donnell, *Automobile Insurance in Ontario* (1991), at p. 202:

> In effect, the Ontario Legislature imposed a social contract on its citizens whereby in consideration of all injured persons receiving an indemnity for most economic losses, regardless of fault, and in consideration for saving on automobile insurance premiums, the great bulk of those injured could not sue.
>
> In very rough terms, only 8 per cent to 10 per cent of those injured will be able to meet the threshold test but since these cases will tend to be the most expensive ones in tort, about 60 per cent of the previous third-party liability bodily injury premium will be consumed in order to pay for such claims. The other 40 per cent of bodily injury dollars, when added to the previous existing No-Fault Benefits premium, will be spent on delivering No-Fault Benefits.

27        In *Meyer v. Bright*, at p. 136, the Ontario Court of Appeal characterized s. 266 as a general immunity and not a threshold:

> At the outset we wish to make a comment about the word "threshold", which has been widely used to describe the provisions of s. 266(1). We think the use of that word in such a fashion, while perhaps convenient or handy, is inaccurate and tends to lead one away from the real inquiry which should be made. Section 266(1) does not establish any general threshold which injured persons need pass before they are entitled to sue. Section 266(1) essentially does two things. First, it immunizes the owner and occupants of motor vehicles, and persons present at the incident, from actions in Ontario for loss or damage arising out of motor vehicle accidents which occur after June 21, 1990 in Canada, the United States and certain other jurisdictions. The second thing which s. 266(1) does is create an exception for certain injured persons. The real inquiry required by the legislation in each case is to determine whether "the injured person" falls within one or more of the statutory exceptions to the general immunity.

28        The Court of Appeal for Ontario set  the following standards for allegations of injuries falling under s. 266(1)(b):

> (1)    Has the person sustained permanent impairment of a bodily function caused by continuing injury which is physical in nature?
>
> (2)  Is the bodily function which is permanently impaired an important one?
>
> (3)  Is the impairment of the important bodily function serious?

Only if all three of the above questions are answered in the affirmative, they said, is the test met.

29        By whatever name it is called, s. 266 effectively bars actions for recovery in tort unless a certain level of physical injury, permanent in nature and entailing serious impairment of an important bodily function, is met.  Unlike schemes in  Michigan, New York and Florida upon which the Ontario scheme was said to be modelled, the Ontario threshold bars <u>all</u> tort claims, pecuniary and non-pecuniary, if the injury fails to pass the threshold.

30        What insight can we gain into the meaning of s. 206(1) *HTA*, given the exclusion of liability under s. 266 of the *Insurance Act*?  An action governed by s. 206(1) fails if it does not qualify under the exception provided for in s. 266(1).  The cause of action referred to in s. 206(3) does not accrue until the statutory requirement of s. 266(1) of the *Insurance Act* is met.  Under the no-fault system in place at the time of the accident, the mere happening of an injury in a car accident does not found a cause of action.  No cause of action exists until sufficient severity of injury exists.  This view is strengthened by s. 266(3), which allows for a pre-trial motion on the issue of the existence of a cause of action.  Under s. 266(3), a motion may be brought to determine whether there is a cause of action evident on the face of the record.  The onus is on the plaintiff to prove that his injuries meet the requirements in s. 266(1)(b):  *Buffa v. Gauvin* reflex, (1994), 18 O.R. (3d) 725 (Gen. Div.), and *Meyer v. Bright, supra*, at p. 146.

31        In my view, the right of action contemplated in s. 206(1) *HTA* must refer to an action that is not excluded by s. 266 of the *Insurance Act*. It cannot be otherwise. Ontario's system of mandatory automobile insurance is not a pure no-fault system; it cannot be said that the legislature intended to preclude all causes of action arising from motor vehicle accidents.


32        In this case, had the respondents started an action prior to June 1993, they would not have had evidence of a sufficient serious physical injury. They would have failed the *Meyer v. Bright* test at the first step. It is unreasonable to suggest that the respondents, given the existing knowledge of the injury, should have proceeded. It would have been futile.


B.        *Does the Discoverability Rule Apply?*


33        The cause of action under s. 206(1) does not arise unless the injury meets the statutory exceptions set out in the *Insurance Act*. The question which remains is whether the discoverability principle applies to postpone the running of time until the material facts underlying the cause of action, including extent of the injury, are known.


34        Short limitation periods indicate that the legislature put a premium on their function as a statute of repose. This is one of the three rationales which serve society and the courts' continued interest in maintaining the respect of these statutes. Whatever interest a defendant may have in the universal application of a limitation period must be balanced against the concerns of fairness to the plaintiff who was unaware that his injuries met the conditions precedent to commencing an action: *Murphy v. Welsh, supra*; *M. (K.) v. M. (H.)*, 1992 CanLII 31 (S.C.C.), [1992] 3 S.C.R. 6. All the rationales were set out in *M. (K.) v. M. (H.)*, where this Court considered the *Limitations Act*, R.S.O. 1980, c. 240 (now R.S.O. 1990, c. L.15), in order to determine the time of accrual of the cause of action in a manner consistent with its purposes (at pp. 29-30):

> There are three, and they may be described as the certainty, evidentiary, and diligence rationales. . . .
>
> Statutes of limitations have long been said to be statutes of repose. . . . The reasoning is straightforward enough. There comes a time, it is said, when a potential defendant should be secure in his reasonable expectation that he will not be held to account for ancient obligations. . . .
>
> The second rationale is evidentiary and concerns the desire to foreclose claims based on stale evidence. Once the limitation period has lapsed, the potential defendant should no longer be concerned about the preservation of evidence relevant to the claim. . . .
>
> Finally, plaintiffs are expected to act diligently and not "sleep on their rights"; statutes

of limitation are an incentive for plaintiffs to bring suit in a timely fashion.

35          *M. (K.) v. M. (H.)* applied the three rationales to the fact situation there and found that neither the guarantee of repose, the evidentiary concerns nor the expectation of diligence on the part of the plaintiff precluded the application of the discoverability principle.

36                    Since this Court's decisions in *Kamloops (City of) v. Nielsen*, 1984 CanLII 21 (S.C.C.), [1984] 2 S.C.R. 2, and *Central Trust Co. v. Rafuse*, 1986 CanLII 29 (S.C.C.), [1986] 2 S.C.R. 147, at p. 224, discoverability is a general rule applied to avoid the injustice of precluding an action before the person is able to raise it.   See *Sparham-Souter v. Town & Country Developments (Essex) Ltd.*, [1976] 1 Q.B. 858 (C.A.), at p. 868 *per* Lord Denning, M.R., citing *Cartledge v. E. Jopling & Sons Ltd., supra*:

> It appears to me to be unreasonable and unjustifiable in principle that a cause of action should he held to accrue before it is possible to discover any injury and, therefore, before it is possible to raise any action.

See also *M. (K.) v. M. (H.), supra*, at p. 32, and *Murphy v. Welsh, supra*, at pp. 1079-81.

37          In this regard, I adopt Twaddle J.A.'s statement in *Fehr v. Jacob* (1993), 14 C.C.L.T. (2d) 200 (Man. C.A.), at p. 206, that the discoverability rule is an interpretive tool for the construing of limitations statutes which ought to be considered each time a limitations provision is in issue:

> In my opinion, the judge-made discoverability rule is nothing more than a rule of construction.  Whenever a statute requires an action to be commenced within a specified time from the happening of a specific event, the statutory language must be construed. When time runs from "the accrual of the cause of action" or from some other event which can be construed as occurring only when the injured party has knowledge of the injury sustained, the judge-made discoverability rule applies.  But, when time runs from an event which clearly occurs without regard to the injured party's knowledge, the judge-made discoverability rule may not extend the period the legislature has prescribed.

38          The appellant submitted here that the general rule of discoverability was ousted because the legislature used the words "damages were sustained", rather than  the date "when the cause of action arose".  It is unlikely that by using the words "damages were sustained", the legislature intended that the determination of the starting point of the limitation period should take place without regard to the injured party's knowledge.  It would require clearer language  to displace the general rule of discoverability.  The use of the phrase "damages were sustained" rather than "cause of action arose", in the context of the *HTA*, is a distinction without a difference.  The discoverability rule has been applied by this Court even to statutes of limitation in which plain construction of the language used would appear to exclude the operation of the rule.  *Kamloops, supra*, dealt in part with s. 739 of the *Municipal Act*, R.S.B.C. 1960, c. 255, which required that notice should be given within two months "from and after the

date on which [the] damage was sustained". However, this Court applied the discoverability rule even with respect to this section; see *Kamloops, supra*, at pp. 35-40.


39          I agree with the Court of Appeal that to hold that the discoverability principle does not apply to s. 206 *HTA* would unfairly preclude actions by plaintiffs unaware of the existence of their cause of action.    In balancing the defendant's legitimate interest in respecting limitations periods and the interest of the plaintiffs, the fundamental unfairness of requiring a plaintiff to bring a cause of action before he could reasonably have discovered that he had a cause of action is a compelling consideration.    The diligence rationale would not be undermined by the application of the discoverability principle as it still requires reasonable diligence by the plaintiff.


40          The appellant submitted that as a matter of law, the discoverability principle was inapplicable to personal injury actions.  Notwithstanding *Cartledge v. E. Jopling & Sons Ltd., supra*, there is no principled reason for distinguishing between an action for personal injury and an action for property damage (see *Kamloops, Sparham-Souter* and *M. (K.) v. M. (H.)*).


41          The appellant also submitted that the natural inference from this Court's application of s. 47 of the Ontario *Limitations Act* in *Murphy v. Welsh, supra*, was that the common law discoverability rule does not apply to s. 206(1).  If this were not so, it was argued, the Court would not have had to resort to s. 47 in that case.  However discoverability played no part in the case.    There the minor's injuries were immediately identified and legal advice sought. The limitation period was missed because files were misplaced by lawyers.  As the legislature had specifically provided for the postponement of time in the case of minors and those suffering from other legal disability, it was incumbent upon the courts to apply the specific provision.  There is no conflict between the rule in s. 47 of the Ontario *Limitations Act* (which merely codifies the common law rules against allowing time to run against those under a legal disability) and the discoverability principle.


C.          *Application of the Discoverability Principle to the Facts*


42          The respondent Mr. Peixeiro was injured in October 1990 and first discovered that his injury was physical in nature, within the meaning of *Meyer v. Bright*, in June 1993.  He commenced his action against the appellant in July 1994.  Given the medical advice that Mr. Peixeiro had, and in spite of reasonable diligence by him, his injury was reasonably discoverable for the first time in June 1993.


43          As a matter of law, I do not think that the existence of a cause of action was reasonably discoverable until the respondents learned that Mr. Peixeiro had a herniated disc. Therefore, the respondents' action is not statute-barred, as it was started within two years of the time when they first learned that they had a cause of action.

VII.    Conclusion

44          Under s. 206(1) *HTA*, there is no cause of action until the injury meets the statutory exceptions to liability immunity in s. 266(1) of the *Insurance Act*. The discoverability principle applies to avoid the injustice of precluding an action before the person is able to sue. Time under s. 206(1) does not begin to run until it is reasonably discoverable that the injury meets the threshold of s. 266(1).   It was agreed that the respondents first learned of the herniated disc in June 1993.    The respondents were reasonably diligent in this respect.   It cannot be said that they ought to have discovered the serious nature of the damage earlier. As  the action was commenced in July a year later within the limitation period, it cannot be statute-barred.


45          I would dismiss the appeal, with costs.

*Appeal dismissed with costs.*

*Solicitors for the appellant:  Rachlin & Wolfson, Toronto.*

*Solicitors for the respondents:  Faust, Azevedo & Wise, Toronto.*

[About CanLII]  [Conditions of Use]  [Advanced search]  [Help]  [Français]
[Privacy Policy]  [Mailing Lists]  [Technical Library]
[Contact CanLII]

by *LexUM* _____ for the Federation of Law Societies of Canada