IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| W.R. GRACE & CO., *et al.*, | ) Case No. 01-1139 (JKF) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Objection Date: March 23, 2007 @ 5:00 p.m. (proposed) |
| | ) Hearing Date: April 2, 2007 @ 2:00 p.m. (proposed) |

**EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF
ASBESTOS PERSONAL INJURY CLAIMANTS AND DAVID T. AUSTERN,
THE COURT APPOINTED LEGAL REPRESENTATIVE FOR FUTURE
ASBESTOS PERSONAL INJURY CLAIMANTS TO COMPEL
DEBTORS' PRODUCTION OF COMPLETE NAVIGABLE DATABASE**

The Official Committee of Asbestos Personal Injury Claimants ("ACC"), and David T. Austern, the Court-appointed legal representative for future asbestos personal injury claimants (the "FCR"), by and through the undersigned counsel, hereby moves for entry of an order, pursuant to Fed. R. Bankr. P. 7037, Fed. R. Civ. P. 37(a)(2)(B) and this Court's August 29, 2005 Case Management Order for the Estimation of Asbestos Personal Liabilities ("August 2005 CMO") (as amended), compelling the debtors-in-possession ("Debtors") to (i) compile the Personal Injury Questionnaire information -- including data taken from materials attached to the Personal Injury Questionnaire forms -- into a complete navigable database, and (ii) make the complete database available to all parties on April 13, 2007. The grounds supporting this motion are as follows.

### BACKGROUND

1. The Court's August 2005 CMO approved the Personal Injury Questionnaire, set forth a process for disseminating and collecting the questionnaires, and

{D0081738.1}

directed the Debtors' claims processing agent, Rust Consulting, Inc. ("Rust"), to compile the collected information into a navigable database and make it available to the parties:

> The Debtors' claims processing agent shall compile the Questionnaire information into a navigable database and make it available to the Debtors and any parties in the estimation proceedings, including those parties' experts and advisors, on or before March 13, 2006.

August 2005 CMO at 3, ¶ 3(D). Since that Order, the date by which the claims processing agent must make the navigable database available has been extended to April 13, 2007, but the obligation is otherwise unaffected—"the Questionnaire information", i.e., *all* information collected from the questionnaires, must be collected in a database and provided to the parties.[1]

2.  Many recipients of the Personal Injury Questionnaire responded by attaching documents to the questionnaire form, such as work history sheets, deposition excerpts, and medical records, and incorporated these material by reference into their Questionnaire responses. The Debtors objected to this practice, moving that the answers to the questionnaires be provided solely on the questionnaire form itself. On October 12, 2006, the Court denied Debtors' motion and appropriately ruled that the questionnaires could be answered by attaching responsive documents. *See* October 12, 2006 Order Concerning Debtors' Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Personal Injury Questionnaire at 2, ¶ 2. The percentage of respondents who used attachments is significant. According to Rust's most recent statistics,

---

[1] Indeed, the Court's July 24, 2006 amendment to the CMO provides that "The Debtors' claims processing agent shall compile the Questionnaire information provided in *cured* responses to the Questionnaire and make it available to the Debtors . . . " Order Regarding Amended Case management Order for the Estimation of Asbestos Personal Injury Liabilities, dated July 24, 2006 (emphasis added).

approximately 65% of all questionnaires returned have attachments of more than two pages.[2]

3. At the February 26, 2007 hearing, counsel for the Debtors announced for the first time that, because of Rust's purported inability to process documents attached to the questionnaire forms, the Debtors had retained a supplemental claims processing agent to assist the Questionnaire review process and complete Rust's work

> One of the main reasons why we don't have the data before our experts is we're now having to retain yet a separate firm to go through the attachments and figure out how those attachments possibly relate to this form. That is not within Russ [sic] expertise. Russ, that has the responsibility under the order for providing the database, doesn't have the expertise to read medical records, and because the answers don't appear on the face of the questionnaire, they're buried in the attachments, it's going to take us more time.

Transcript of February 26, 2007 Proceedings, No. 01-01139 at 34-35 (Bankr. D. Del.) (Remarks of David Bernick); Debtors' Status Report Regarding the Estimation of Asbestos Personal Injury Liabilities, dated February 23, 2006 ("This situation has required extraordinary and unanticipated efforts by Grace and impacts Rust's ability to complete assembly of a navigable database. The results are a further slippage of approximately 60 days. And the attachments must be analyzed for Grace's experts by non-Rust personnel."). The Debtors did not reveal the name of the supplemental claims processing agent, but it is believed to be the Delaware Claims Processing Facility, LLC.

4. Contrary to Debtors' long-standing obligations under the CMO, however, counsel for the Debtors has since informed the Committee and the FCR that they will *not* make that portion of the navigable database derived from attachments available on April

---

[2] Rust's most recent database counts Federal Express receipts as an "attachment." Therefore, to estimate a percentage of questionnaires with substantive materials attached, questionnaires with two or fewer pages were ignored.

13, 2007. Nor have the Debtors indicated when, if ever, they will make that portion of the navigable database available.

## ARGUMENT

5. As the Court recognized in its October 12, 2006 Order, answers provided by attachment are a legitimate and integral part of the questionnaire process. Indeed, information provided by attachment constitutes basic factual information in response to the Questionnaire. It is also vital to the analysis of the results of the questionnaire process. Without the information in the attachments, the navigable database is useless, as the database would contain less than half of the responsive information actually submitted to Rust by claimants. In this case, producing half a database is equivalent to providing no navigable database at all, and completely undermines the Court's order that *all* responsive Questionnaire information be compiled and be made available to all parties. This sharing of full factual information among all parties has been the fundamental premise underlying the entire data compilation exercise ordered by the Court.

6. Grace has waived any right it may have had to object to the production of the entire database through its silence and acquiescence to this Court's various Orders dating back to August 29, 2005. Specifically, this Court's August 29, 2005 Case Management Order for the Estimation of Asbestos Personal Injury Liabilities states that the "Debtors claims processing agent shall compile the Questionnaire information into a navigable database and make it available to the Debtors and any parties in the estimation proceedings, including those parties' experts and advisors, on or before March 13, 2006." The Debtors did not object to this Order, indeed, it was the Debtors' proposal to make the

database available to all parties involved in the estimation process. Nearly identical language was included in this Court's July 24, 2006 Amended Case Management Order for the Estimation of Asbestos Personal Injury Liabilities, wherein the Court ordered that the "Debtors' claims processing agent shall compile the Questionnaire information provided in cured responses to the Questionnaire and make it available to the Debtors and any parties in the estimation proceedings, including those parties' experts and advisors . . . ."

7. If it was not clear as of that Order that the entire navigable database must be produced, including those parts of the database prepared through Questionnaire responses made by way of attachment, it was very clear after this Court's October 12, 2006 Order in which this Court appropriately ruled that the questionnaires could be answered by attaching responsive documents. Following that Order, this Court entered yet another Order requiring the Debtors' to produce the navigable database. This Order, entered on December 19, 2006, also provides that the "Debtors' Claims Agent shall compile the information contained in the supplemental Questionnaire responses into a navigable database." As a result, this Court has consistently ordered the Debtors to produce the entire navigable database and the Debtors' failure to timely object to these Orders is a waiver of any right the Debtors' otherwise had to object thereto. Indeed, this was the process set up by the Debtors, and it is entirely too late for the Debtors to be heard that they have an objection to producing the entire navigable database.

8. Aside from the Debtors' waiver of the right to object, the Debtors have no legitimate reason for refusing to provide a complete navigable database—including information the supplemental claims processing agent has collected from attachments—

on April 13, 2007 as ordered. That the Debtors' first claims agent, Rust, proved incapable of completing the task originally envisioned for it and a supplemental vendor was required to complete the task is irrelevant. Had Rust, for example, encountered a questionnaire response in French and found it necessary to retain a translator to complete its task, the Debtors would have no basis for withholding information from that questionnaire.

9. Any argument that the work of Debtors' newly-engaged claims processor is protected from disclosure as trial preparation material under Fed. R. Civ. P. 26(b)(3), is baseless.[3] First, any qualified privilege that may have attached to the supplemental claims processor's work has long since been waived. As noted in Wright & Miller, "[a]n existing privilege exemption from discovery must be raised in a proper fashion to be effective in justifying a refusal to provide discovery. Failure to assert the privilege objection correctly can mean that the privilege is waived." 8 Fed. Prac. & Proc. Civ.2d § 2016.1. See also *Meridian Trust Co. v. Provident Life and Cas. Ins. Co.*, 1992 WL 73094 (E.D. Pa.)(work-product privilege over material redacted from documents held to be waived when objection not timely asserted in response to request for production). The Debtors' failure to object to the Court's Order requiring production of the entire navigable database constitutes a waiver of the privilege under these authorities.

---

[3] Rule 26(b)(3) provides, in pertinent part: "**(3) Trial Preparation: Materials.** Subject to the provisions of section (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation . . . "

10. Second, the supplemental claims processor has been called in to assist Rust because it has certain medical claims processing expertise, which Rust allegedly does not. Its work therefore will in no way constitute mental impression work-product of the type protected from disclosure under Rule 26(b)(3). Rather, it will merely be providing factual information as reflected in the Questionnaire attachments.

11. Third, the supplemental claims processor's work cannot be shielded from discovery on the basis that it is being "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3). The Court has long since ordered Debtors to have all the Questionnaire information compiled and produced to all parties. The supplemental claims processing review is, by definition, part and parcel of that Court-ordered exercise.

12. Finally, Rule 26(b)(3) requires production of the entire navigable database because the Committee and the FCR have "a substantial need of the materials in the preparation of [its case] and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). Absent Debtors' compilation and disclosure of the complete database, the Committee and the FCR would be required at this late date to undertake their own, duplicative database creation. This would require the review of over four million pages of Questionnaire responses and attachments. Not only is there insufficient time to complete such a review, it would result in the waste of hundreds of thousands of dollars (if not more) in estate assets because the work is already being done by Debtors' claims processors. This is precisely why the Court directed Debtors' claims agent to do the task *one* time -- so that, as the starting point for any subsequent analysis and opinions, all parties and their experts would be working off the same factual compilation of Questionnaire responses.

13. Both this Court's August 2005 CMO and fundamental fairness require that the data generated by the questionnaire process be provided to all parties in a timely fashion. This Court should not permit the Debtors to hold back data now and reveal it only when —and if—it suits the Debtors' purposes.

(Remainder of Page Intentionally Left Blank)

Case 01-01139-AMC    Doc 14903    Filed 03/19/07    Page 9 of 10

## CONCLUSION

For all the reasons set forth above, the Committee and the FCR respectfully request that the Court enter an order (a) granting this motion in its entirety, (b) compelling Debtors to compile and produce a full and complete copy of the navigable database, including any information extracted from questionnaire attachments by any supplemental claims processing agent, on or before April 13, 2007, and (c) granting to the Committee and the FCR such other and further relief as this Court deems just and appropriate.

Dated: March 19, 2007

| | |
|---|---|
| ORRICK, HERRINGTON & SUTCLIFFE LLP | CAMPBELL & LEVINE, LLC |
| *Debra L. Felder* (signature) | (signature) |
| Roger Frankel<br>Richard H. Wyron<br>Raymond G. Mullady, Jr.<br>Debra L. Felder<br>3050 K Street, NW<br>Washington, DC 20007<br>Telephone: (202) 339-8400 | Marla R. Eskin (#2989)<br>Mark T. Hurford (#3299)<br>800 King Street, Suite 300<br>Wilmington, DE 19801<br>Telephone: (302) 426-1900 |
| John Ansbro<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>666 Fifth Avenue<br>New York, N.Y. 10103-0001<br>Telephone: (212) 506-5000 | Elihu Inselbuch<br>CAPLIN & DRYSDALE, CHARTERED<br>375 Park Avenue, 35th Floor<br>New York, NY 10152-3500<br>Telephone: (212) 319-7125 |
| John C. Phillips, Jr. (#110)<br>PHILLIPS, GOLDMAN & SPENCE, P.A.<br>1200 North Broom Street<br>Wilmington, DE 19806<br>Telephone: (302) 655-4200 | Peter Van N. Lockwood<br>Nathan D. Finch<br>James P. Wehner<br>CAPLIN & DRYSDALE, CHARTERED<br>One Thomas Circle, NW<br>Washington, DC 20005<br>Telephone: (202) 862-5000 |
| *Counsel for David T. Austern, Future Claimants' Representative* | *Counsel for the Official Committee of Asbestos Personal Injury Claimants* |