# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | **Chapter 11** |
| | ) | |
| W. R. Grace & Co., et al.[1], | ) | **Case No. 01-01139 (JKF)** |
| | ) | **Jointly Administered** |
| Debtors. | ) | |
| | ) | Re: Docket Nos. 14598 |
| | ) | Reply Deadline: March 23, 2007 |
| | ) | Hearing Date: April 9, 2007 |
| | ) | |
| | ) | **Claim No.: 9912** |
| | ) | **KARK-TV, Inc. – East** |
| | ) | **1401 West Capital Ave., Ste 104** |
| | ) | **Little Rock, AR 72201** |
| | ) | |
| | ) | **Claim No.: 9913** |
| | ) | **KARK-TV, Inc. – West** |
| | ) | **1401 West Capital Ave., Ste 104** |
| | ) | **Little Rock, AR 72201** |
| | ) | |
| | ) | **Claim No.: 11550** |
| | ) | **Dodge County Hospital** |
| | ) | **901 Griffin Ave.** |
| | ) | **Eastman, GA 31023** |
| | ) | |
| | ) | **Claim No.: 10789** |
| | ) | **Manor Oak** |
| | ) | **1910 Cochran Road** |
| | ) | **Pittsburgh, PA 15220** |
| | ) | |
| | ) | |
| | ) | |

---

[1] The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgracc, Inc., Coalgracc II, Ins., Creative Food `N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B 11 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

<pre>
)          Claim No.:  10962
)          Children's Hospital
)          3705 Fifth Avenue
)          Pittsburgh, PA  15213
)
)          Claim No.:  10998
)          St. Luke's Hospital
)          801 Ostrum Street
)          Bethlehem, PA  18015
)
)          Claim No.:  11106
)          Titusville Hospital
)          406 W. Oak Street
)          Titusville, PA  16354
)
)          Claim No.:  11144
)          Ferrell Hospital
)          406 W. Oak Street
)          Titusville, PA  16354
)
)          Claim No.:  11179
)          Investment Tower
)          1801 East Ninth Street
)          Cleveland, OH  44114
</pre>

## ANDERSON MEMORIAL HOSPITAL'S RESPONSE TO DEBTORS' MOTION FOR SUMMARY JUDGMENT DIRECTED TO 9 CLAIMS BASED UPON THE STATUTES OF LIMITATION OF ARKANSAS, GEORGIA AND DELAWARE

By and through Anderson Memorial Hospital and on their own behalf, Claimants KARK-TV (Claim Nos. 9912 and 9913), Dodge County Hospital (Claim No. 11550), Manor Oak (Claim No. 10789), Children's Hospital (Claim No. 10962), St. Luke's Hospital (Claim No. 10998), Titusville Hospital (Claim No. 11106), Ferrell Hospital (Claim No. 11144), Investment Tower (Claim No. 11179), respectfully submits its Response to the Debtors' Motion for Summary Judgment with respect to certain Arkansas, Georgia, Pennsylvania and Ohio Property Damage Claims.

## I.    Statement of Position

The Debtors claim that there is no genuine issue of material fact that each of these nine asbestos property damage claims are time barred because the asbestos-containing

Monokote fireproofing was installed in each of these buildings by 1973 at the latest, and that under Arkansas, Georgia and Delaware laws, that is the date the injury occurred and the statute of limitations began to run[2]. Among the problems with this argument is the fact that, with the exception of Claim Nos. 9912 and 9913, the Debtors failed to object to these claims on the basis of the actual knowledge of injury or a claim rather, Debtors rely upon what they have termed "constructive notice". Moreover, the Debtors' Exhibit A to this Court's August 31, 2006 CMO and October 13, 2006 CMO for Objection Proceedings fails to list any of these claims (excepting Claim No. 9912 and 9913) as being subject to a statute of limitations based defenses based upon the actual knowledge of the claimant. Accordingly, nine of the have not even been scheduled as part of these proceedings.

The Debtors have also offered no evidence to show that any of the claimants have suffered any damage or injury from Grace asbestos-containing products outside the limitations period.

Additionally, the Debtors' motion fails to correctly identify the applicable filing date for these claims. Instead of April 2, 2001 – the date the Debtors filed their bankruptcy petition, the actual date of commencement for statue of limitations purposes is December 23, 1992, the date that the Anderson class action was filed. Because each of these claimants have asserted that they were part of the Anderson case on their claim form, the statute of limitations was tolled as to these claimants from the commencement of the Anderson case.

Finally, the Debtors cannot rely on the concept of constructive knowledge to trigger the Arkansas, Delaware, or Georgia statute of limitations. For all of these reasons, the Debtors motion must be denied.

---

[2] The claims which Debtor asserts are barred by Delaware's statute of limitations do not originate in Delaware but rather Pennsylvania and Ohio. The Claimants do not agree with this application but in addressing Debtor's arguments can show that even applying the law as Debtor chooses, the motion is without merit.

## II.     Statement of Pertinent Facts

The Claimants hereby incorporate the Factual Background and attached document summary from their prior Response to the Debtors' Fifteenth Omnibus Objection, submitted at Docket Nos. 9912, 9913, 11550, 10789, 10962, 11106, 11144 and 11179.

## III.    Argument

### A.     Actual Knowledge is Not Part of These Proceedings with respect to 9 Claims

Pursuant to this Court's June 22, 2002 Bar Order, Claim Nos. 9912, 9913, 11550, 10789, 10962, 11106, 11144 and 11179 were filed prior to the March 31, 2003 bar date.  As stated in the notice authorized by the bar order, claimants were instructed that they must file all claims under all theories on or before March 31, 2003.

On September 2, 2005, the Debtors' filed their 15th Omnibus Objection to asbestos property damage claims, objecting to thousands of claims on various bases including these claims.  On June 16, 2006, Grace filed a Motion for a Scheduling Order Regarding Certain of the Debtors' Fifteenth Omnibus Objections to PD Claims (Substantive), which sought to establish a Case Management Order with respect to asbestos PD claims objections.

The Debtors then submitted a proposed CMO with respect to the 15th Omnibus Objection which scheduled claim objections to be heard in this Court in three proceedings (Methodology, Limitations and Product ID, and Hazard).  Attached to the Debtors proposed CMO was a list of property damage claims and specific objections prepared by the Debtors indicating the specific claims and specific objections that would be adjudicated in the PD Claims allowance proceedings.  The purpose of the attached list of claims and specific objections was to provide specific notice to the Court and the claimants of which specific objections the Debtors sought to adjudicate.

On August 31, 2006, this Court entered a CMO, and then an amended CMO on October 13, 2006 after a number of individual claimants filed objections. The October 13, 2006 Order entered by this Court and served upon all claimants specifically provided that

> Certain specific objections to PD Claims will be adjudicated on **April 23, 24 and 25, 2007, commencing at 9:00 a.m., Eastern Time,** in Pittsburgh, Pennsylvania. The objections that will be adjudicated as to these PD Claims are those asserted in the 15[th] Omnibus Objection regarding product identification and limitations periods (specifically C-1 through C-4, D-1 through D-6, F-1 and F-4 and F-5) . . .. ***These claims are listed on Exhibit A hereto.*** The pre-trial schedule for these objections is set forth in the Schedule attached as Exhibit B to this Order.

October 13, 2006 Order, ¶2 (Dk. No. 13406) (bold in original, italics supplied). Notably, Exhibit A did not list the specific Statute of Limitation Objections – Actual Notice (Objection D-4) for any of the claims subject to this motion for summary judgment except Claim No. 9684. (See Exhibit 1, excerpts from Exhibit A to August 31, 2006 CMO and October 13, 2006 Amended CMO).

**B.    Burden of Proof**

**1.    Burden of Proof in Bankruptcy Objection Proceedings**

A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). See also, Fed. R. Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. *See* Adv. Comm. Notes to Fed. R. Bankr.P. 9014.

Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." Lundell

v. Anchor Construction Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir.2000); citing, Wright

v. Holm (In re Holm ), 931 F.2d 620, 623 (9th Cir.1991); see also, Ashford v. Consolidated

Pioneer Mort., 178 B.R. 222, 226 (9th Cir. BAP 1995), aff'd, 91 F.3d 151, 1996 WL 393533

(9th Cir.1996). To defeat the claim, the objector must come forward with sufficient evidence

and "show facts tending to defeat the claim by probative force equal to that of the allegations

of the proofs of claim themselves." In re Holm, 931 F.2d at 623.  Moreover, this is especially

true where objection is based upon the affirmative defense of limitations upon which the

Debtors' bear the ultimate burden of proof. Van Buskirk v. Carey Canadian Mines, Ltd., 760

F.2d 481 (3d Cir.1985);    California Sansome v. U. S. Gypsum Co., 55 F.3d 1402 (9th

Cir.1995); Clayton Center Asso. v. W. R. Grace & Co., 861 S.W.2d 686 (Mo.App.1993).

### 2.    Standard for Summary Judgment

In reviewing a motion for summary judgment, the Court must view all facts and

inferences in the light most favorable to the non-moving party. Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 247-249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Summary Judgment

may only be granted if the record shows that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP. The

court must decide if the "evidence presents a sufficient disagreement to require submission to

the fact finder or whether it is so one-sided that one party must prevail as a matter of law."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-53, 106 S.C. 2205, 2511-12, 91 LED.2d

202 (1986).

**C.    Grace Has Not Met its Burden on Any Claim**

**1.    The Debtors Assert the Incorrect Commencement Date**

Grace claims that the "undisputed" commencement date for purposes of determining the statute of limitations is April 2, 2001, the date it filed its bankruptcy petition. This date is neither "undisputed" nor is it correct.

Each of the Arkansas, Georgia, Pennsylvania, and Ohio claimants have filed claim forms or amended claim forms that reference Anderson Memorial Hospital[3] class litigation that was filed on December 23, 1992. That litigation was ongoing at the time the Debtors bankruptcy petition was filed, and the claimants filing under that class action are entitled to have the statute of limitations tolled as of the date of filing.

Class action tolling is most often linked to the United State Supreme Court decisions American Pipe & Construction Company v. Utah, 414 U.S. 538, 554, 94 S.Ct. 756, 776, 38 L.Ed.2d 713 (1974) (holding that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action"); and Crown Cork & Seal v. Parker, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (holding that tolling applies even where the class action is dismissed so that absent class members may be permitted file and prosecute their own claims). Arkansas, Delaware and Georgia all recognize class tolling as well.

In *Ford Motor Credit Co. v. Nesheim* 287 Ark. 78, *83, 696 S.W.2d 732,**736 (Ark.,1985) (overruled on other grounds) the Court recognized the principle of class tolling stating "[t]he United States Supreme Court has held that the filing of a class

---

[3] Anderson Memorial Hospital v. W. R. Grace & Co., et al., 92-CP-25-279 (Ct.Com.Pls, Hampton County, SC) (putative international class action).

action tolls the statute of limitations as to all asserted members of the class. *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983)." In *Blaylock v. Shearson Lehman Bros., Inc.* 330 Ark. 620, *624, 954 S.W.2d 939, **941 (Ark., 1997), when addressing a statute of limitations defense, an Arkansas Court stated "The five-year statute of limitations for filing an action for securities fraud, Ark.Code Ann. § 23-42-106(f) (Supp.1995), would have run in 1991, except that the commencement of a class action tolls the running of the statute as to purported members of the class during the pendency of the litigation. *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)."

Delaware has recognized the doctrine of class tolling. *See MAXXAM, Incorporated/Federated Development Shareholders Litigation, In re* 698 A.2d 949, *958 (Del.Ch.,1996) *citing American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 553, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974) (In general, filing of class action tolls statute of limitations for class members); *Rose v. Arkansas Valley Environ. & Utility Auth.,* 562 F.Supp., 1180, 1193 (W.D.Mo.1983) (initial class certification that gave unnamed class members assurance that their interests were being protected was sufficient to toll statute of limitations); *Haas v. Pittsburgh Nat'l Bank,* 526 F.2d 1083 (3d Cir.1975). Delaware courts have extended tolling protection to plaintiffs whose claims were asserted in another state. *See Harman v. Masoneilan Intern., Inc.* 442 A.2d 487, *501 (Del., 1982) *citing American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *Haas v. Pittsburgh National Bank,* 3rd Cir., 526 F.2d 1083 (1975).

Georgia also recognizes class tolling. Though, in a case where the specific tolling requested was ultimately held not to apply, the Court stated in *State v. Private Truck Council*

*of America, Inc.* 258 Ga. 531, *533, 371 S.E.2d 378, **380 (Ga.,1988) that "[t]he doctrine

of equitable tolling provides that when a class action is filed, the statute of limitations for the

action is tolled for all asserted members of the class during the pendency of the action.

*Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1982).

The tolling of the statute of limitations permits class members to rely on the class action to

protect their rights without concern that the statute of limitations on their individual claims

will have run should class certification ultimately be denied. *Id.*"

Moreover, class action tolling has been held to apply until the denial of class

certification has been finally determined on appeal. Indeed, the United States Supreme Court

has held so held. <u>McDonald v. United Airlines</u>, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423

(1977). Moreover, numerous state appellate courts and federal district courts have reached

the same conclusion. <u>See</u>, <u>American Tierra Corp. v. City of West Jordan</u>, 840 P.2d 757

(Utah 1992); <u>Fred Meyer of Alaska v. Adams</u>, 963 P.2d 1025 (Alaska 1998); <u>Scarvey v. First

Federal Savings and Loan Ass'n of Charlotte</u>, 552 S.E.2d 655 (N.C.App.2001); <u>West Haven

School Dist. v. Owens-Corning</u>, 721 F.Supp. 1547, 1555 (D.Conn.1988) (noting in dicta that

the statute of limitations in a School's asbestos property damage case was tolled until "there

was a definitive determination of the class certification issue" which occurred "no earlier

than when the appeals on that issue ran their course."); <u>Byrd v. Travenol Laboratories, Inc.,</u>

675 F.Supp. 342 (N.D.Miss.1987); <u>Davis v. Behleham Steel</u>, 600 F.Supp. 1312 (D.Md.1985).

It is undisputed that the Anderson class action was filed on December 23, 1992 and

that it sought to certify a class that would have certainly included these claimants. Applying

these facts to the law of Arkansas, Delaware, and Georgia and these states' recognition of

class action tolling, the appropriate commencement date for the statute of limitations purposes is December 23, 1992 and not April 2, 2001.

### 2.    Accrual Standard

The statute of limitations is an affirmative defense upon which the Debtors bear the burden of proof.  It is the Debtors who bear the burden of establishing that the wrongdoing and the injury occurred outside the limitations period.  Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481 (3d Cir.1985);  California Sansome v. U. S. Gypsum Co., 55 F.3d 1402 (9th Cir.1995); Clayton Center Asso. v. W. R. Grace & Co., 861 S.W.2d 686 (Mo.App.1993).

Since the beginning of asbestos property damage litigation, Courts across the country have clearly and unambiguously held that an asbestos property damage cause of action does not accrue until a compensable injury occurs.  Stated another way, tort actions for asbestos property damage can be maintained only where plaintiffs explicitly allege and subsequent evidence demonstrates contamination of the building or other property as a result of fibers released from asbestos products.  In other words, **only asbestos contamination constitutes a physical injury compensable under tort law.**  Adams-Arapahoe School District No. 28-J v. GAF Corp., 959 F.2d 868 (10th Cir.1992) (emphasis supplied); City of Greenville v. W.R. Grace & Co., 827 F.2d 975, 976-78 (4th Cir.1987) (the release of toxic fibers from an asbestos-containing fireproofing product rendered the manufacturer liable for damages to the property owner under South Carolina tort law);    More importantly, knowledge of a "potential" future hazard  or injury is not enough. Adams-Arapahoe; MDU Resources v. W. R. Grace & Co., 14 F.3d 1274, 1279 (8th Cir.1994) ("the District Court erred when it instructed that the issue for purposes of the statute of limitations was when MDU learned of

the presence of asbestos in the building"); THS Northstar v. W. R. Grace & Co., 66 F.3d 173
(8th Cir.1995) ("the distinction between the mere presence of asbestos-containing materials in
a building and actual release and contamination is critical" because "no cause of action exists
until there has been a substantial release"); San Francisco Unified School District v. W. R.
Grace & Co., 37 Cal.App.4[th] 1318, 44 Cal.Rptr.2d 305 (Cal.App.4[th] 1995) ("the mere
presence of asbestos constitutes only a threat of future harm. . . . [c]ontamination by friable
asbestos is the physical injury and the actual, appreciable harm that must exist before a
property owner's strict liability or tort cause of action against an asbestos manufacturer
accrues and the limitations period commences."); Heider v. W. R. Grace & Co., 1992 WL
189254 (N.D.Ill.) (knowledge of the presence of asbestos is not enough to trigger the statute
of limitations because the "threat of future harm, not yet realized, is not enough").

This basic tort principle makes clear that damages may not be awarded for injuries
not yet suffered. General knowledge that a product in the building contains asbestos and
poses a risk of future injury is simply not enough.  MDU Resources v. W. R. Grace, 14 F.3d
1274 (8th Cir.1994) (rejecting Grace's argument that knowledge of the mere presence of
asbestos triggers the statute of limitations, and holding that the proper question was when
MDU could have learned, with the exercise of reasonable diligence, that its building had
been contaminated by asbestos); California Sansome v. U. S. Gypsum Co., 55 F.3d 1402 (9th
Cir.1995) (contamination must occur in the first instance in order to trigger the running of the
statute of limitations); Kansas City v. W. R. Grace & Co., 770 S.W.2d 264 (Mo.App.1989);
City of Wichita v. United States Mineral Product Co., 72 F.3d 1491 (10th Cir.1996 (holding
actual physical injury by "contamination" is an essential element of any negligence claim and
liability may not be premised upon the mere risk of future harm not yet suffered); 3250

Wilshire Blvd. Bldg. v. W.R. Grace & Co., 1989 WL 260222 at *4-8 (C.D.Cal. Jul. 24, 1989) (recognizing that allegations of actual contamination constitute valid tort damages claims, whereas tort claims for injury by virtue of mere presence of asbestos-containing products or by virtue of a potential risk of harm are invalid); Catasauqua Area School District v. Eagle-Picher Indus.,, 1988 WL 102689 (E.D.Pa. Sept. 28, 1988) (removal and replacement costs of asbestos cement constitute economic loss not recoverable under tort absent demonstration that cement contaminated other property or that it created a significant health risk to building occupants); Hebron Pub. Sch. Dist. No. 13 v. U.S. Gypsum, 690 F.Supp. 866, 870 (D. N.D.1988) (negligence claim survived motion to dismiss where plaintiffs alleged asbestos products released harmful fibers into the building); City of Manchester v. National Gypsum Co., 637 F.Supp. 646, 651- 52 (D. R.I.1986) (court denied motion to dismiss finding that allegations of contamination constituted allegations of physical harm sufficient to support a claim for negligence under New Hampshire law); Franklin County Sch. Bd. v. Lake Asbestos of Quebec, Ltd., 1986 WL 69060 at *5-6 (N.D.Ala. Feb. 13, 1986) (school board's negligence claim dismissed for failing to allege actual, present harm, i.e. contamination); Town of Hooksett Sch. Dist. v. W.R. Grace & Co., 617 F.Supp. 126, 130-31 (D.N.H.1984) (motion to dismiss denied because plaintiff alleged contamination and contamination constitutes a physical injury cognizable under tort); Kershaw County Bd. of Educ. v. U.S. Gypsum Co., 302 S.C. 390, 393, 396 S.E.2d 369, 371 (1990) (judgment against manufacturer of asbestos-containing ceiling materials on negligence claim upheld where plaintiff alleged and proved damage to other property); Banc One Bldg. Management Corp. v. W.R. Grace & Co., 157 Wis.2d 814, 461 N.W.2d 448 (1990) (unpublished disposition) (dismissal of negligence action affirmed where plaintiff failed to allege actual physical harm); Board of

Educ. of City of Chicago v. A, C & S, Inc., 131 Ill.2d 428, 443, 137 Ill.Dec. 635, 642-43, 546 N.E.2d 580, 587-88 (1989) ("dangerousness which creates a risk of harm is insufficient standing alone to award damages in ... negligence; however, allegations of asbestos release are sufficient to defeat a motion to dismiss"); School Dist. of City of Independence v. U.S. Gypsum Co., 750 S.W.2d 442, 456 (Mo.App.1988) (jury verdict upheld where school district provided evidence of contamination caused by defendant's asbestos-containing acoustical ceiling plaster).

### a.    Delaware

For the Delaware statute of three years[4] to be triggered there must be injury and discovery of the injury. The injury in asbestos removal is a continuing one and has been characterized in *E. I. du Pont de Nemours & Co. v. Admiral Ins. Co.* 1995 WL 654020, *4 (Del.Super.) (Del.Super.,1995) in the following way:

> The progressive nature of the damage caused by contamination from a polluting source is similar in nature to the progressive nature of the physical disease asbestosis. *See, e.g., Owens-Illinois, Inc v. United Ins. Co.*, N.J. Supr., 650 A.2d 974, 983 (1994) ("Property-damage cases are analogous to the contraction of disease from exposure to toxic substances like asbestos."); *New Castle County v. Continental Cas. Co.*, 725 F.Supp. 800, 809 (D.Del. 1989) ("New *Castle County II*") (The court recognized the "somewhat parallel" nature of a disease that inflicts progressive bodily injury and the slow leaching of pollutants from a landfill to adjacent properties), *aff'd in part, rev'd in part sub. nom, New Castle County v. Hartford Acc. and Indem. Co.*, 933 F.2d 1162 (3d Cir. 1991); *Lac D'Amiante Du Quebec Ltee. v. American Home Assur. Co.*, 613 F.Supp. 1549, 1561 (D.C.N.J. 1985) ("Lac *D'Amiante*") ("[W]hile property damage is not, of course, an insidious disease, many of the same considerations apply."); *Continental Ins. v. Northeastern Pharm. & Chem. Co.*, 811 F.2d 1180,

---

[4] **§ 8106. Actions subject to 3-year limitation**
No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108-8110, 8119 and 8127 of this title.

1190 (8th Cir. 1987) (analogizing hazardous waste cleanup pursuant to CERCLA to progressive physical disease), *reh'g granted* 815 F.2d 51 (8th Cir. 1987), *cert. denied,* 488 U.S. 821 (1988). Thus, while the damage caused by progressive contamination may not be readily apparent or even known to the possessor of the property, damage is nonetheless occurring, just as asbestos progressively damages the lungs before discovery.

According to Delaware law, the injury in these buildings is still occurring and therefore the statute is being refreshed anew each day. The *E. I. du Pont de Nemours & Co. v. Admiral Ins. Co.* court stated "in considering asbestos related property damage, …the continued presence of asbestos in a building constitutes property damage of a progressive nature." *citing Lac D'Amiante,* 613 F.Supp. at 1561. Understanding the nature of the injury, the question then turns to whether the injury has, in fact, been discovered.

The test for determining the applicability of the Delaware time of discovery rule is "whether the condition which is the product of the alleged negligence was inherently unknowable and if so, when plaintiff knew or should have known of the condition. *Hodges v. Smith, supra.* The watershed is not the discovery of the reason or cause of the injuries; it is the discovery of facts constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery. *Omaha Paper Stock Co. v. Martin K. Eby Constr. Co.,* 193 Neb.848, 230 N.W.2d 87, 89-90 (1975)." Because there are factual issues as to what plaintiffs might have discovered and when, the question of whether plaintiffs are entitled to application of the time of discovery rule is one for the fact finder. *See Queen Anne Pier Condominium Council v. Raley,* Del.Super., C .A. No. 85C-JA10, Lee, J. (January 26, 1988); *Harting v. Magness Construction Co.,* Del.Super., C.A. No. 84C-DE-56, Stiftel, P.J. (January 16, 1986).

The discovery rule traditionally applies in tort cases but Delaware law has also applied the rule to various contracts. "The time of discovery rule applies to breach of contract claims." *Marcucilli v. Boardwalk Builders, Inc.* 2002 WL 1038818, *4 (Del.Super.) (Del.Super.,2002) *citing Butzke v. Schaefer,* Del.Super., C.A. No. 94C-07-004, Graves, J. (April 25, 1995), *aff'd,* Del.Supr., Nos. 314, 1995, 291, 1995, Hartnett, J. (May 6, 1996); *Queen Anne Pier Condominium Council v. Raley, supra; Riley v. Williams,* Del. CCP, C.A. No.2000-05-004, Smalls, J. (January 16, 2001). The time of discovery rule applies to a claim for breach of an express warranty which is not covered by the UCC. *Marcucilli citing Council of the Dorset v. Stoltz,* Del.Super., C.A. No. 90C-10-269, Del Pesco, J. (June 19, 1996).

### b.    Arkansas

Arkansas has a three year statute of limitations for tort,[5] a three year statute for products liability actions,[6] and a five year "catch all" statute[7]. For any of these periods to begin to run, at least two essential requirements must be met: the Plaintiff must have "discovered" the injury and all of the elements of the cause of action must exist. In assessing whether these conditions exist, Arkansas law mandates "if there is any reasonable doubt as to

---

[5] **§ 16-56-105. Three year time period**
The following actions shall be commenced within three (3) years after the cause of action accrues:
(1) All actions founded upon any contract, obligation, or liability not under seal and not in writing, excepting such as are brought upon the judgment or decree of some court of record of the United States or of this or some other state;
(2) All actions for arrearages of rent not reserved by some instrument in writing, under seal;
(3) All actions founded on any contract or liability, expressed or implied;
(4) All actions for trespass on lands;
(5) All actions for libels; and
(6) All actions for taking or injuring any goods or chattels.

[6] "All product liability actions shall be commenced within three (3) years after the date on which the death, injury, or damage complained of occurs." Arkansas Code Ann. § 16-116-103.

[7] "All actions not included in §§ 16-56-104, 16-56-105, 16-56-108, and 16-56-109 shall be commenced within five (5) years after the cause of action has accrued." Arkansas Code Ann. § 16-56-115.

the application of the statute of limitations, this court will resolve the question in favor of the

complaint standing and against the challenge." *Dunlap v. McCarty,* 284 Ark. 5, 678 S.W.2d

361 (1984).

The Supreme Court of Arkansas discussed the factors which must be considered in a

products liability suit at length in *Martin v. Arthur* 339 Ark. 149, 3 S.W.3d 684 (Ark.,1999).

In this discussion the Court determined that Arkansas would indeed employ a discovery rule

in the products liability context.[8]

> Though there is not unanimity in other jurisdictions as to when the statute of
> limitations begins running in product liability cases, courts generally agree that
> when injury is suffered from a product without perceptible trauma to the plaintiff,
> no action in tort begins to accrue until the plaintiff knew, or by the exercise of
> reasonable diligence should have discovered, the cause of the injury. *See,
> generally,* Jane Massey Draper, Annotation, *Lack of Knowledge of Product's
> Defect,* 91 A.L.R.3d 991, 994-995 (1979). An illustration of this reasoning is
> found in the intrauterine device cases. Various courts have concluded that the
> cause of action accrued not at the time of manufacture of the product or when the
> device was inserted in the plaintiff, but rather when the injury was made known
> to the plaintiff. *See, e.g., Kristeller v. A.H. Robins, Inc.,* 560 F.Supp. 831
> (N.D.N.Y.1983); **690 *Fitzpatrick v. A.H. Robins, Inc.,* 99 A.D.2d 478, 470
> N.Y.S.2d 414 (1984); *Hansen v. A.H. Robins, Inc.,* 113 Wis.2d 550, 335 N.W.2d
> 578 (1983).
>
> We adopt the reasoning of the Eighth Circuit in *Mulligan* and agree with its
> analysis of the *Spickes* case. We hold that in product liability cases, the statute of
> limitations under § 16-116-103 does not commence running until the plaintiff
> knew or, by the exercise of reasonable diligence, should have discovered the
> causal connection between the product and the injuries suffered. This is the
> discovery rule, and applying it to the case at hand where there is a genuine issue
> of material fact regarding discovery, the trier of fact must determine when
> Gerlinda Martin was first made aware of the nature of the harm caused by
> Orthoblock or, alternatively, when she should have discovered the causal
> connection, for the statute of limitations to begin to run.

The Debtors, in New York claims similar to these, have denied that any injury has occurred.

If no injury has yet occurred, it is impossible for the injury to have been ascertained.  Not

only does the Debtors' denial make discovery an impossibility, it necessarily means that

---

[8] As has already been noted in this brief, the "discovery rule" and the concept of "constructive notice" are
mutually exclusive in their application.

there is an absent element of the Plaintiff's cause of action. "In ordinary tort and contract actions, the statute of limitations begins to run upon the occurrence of the last element essential to the cause of action. This is also the case under our traditional rule." *Chapman v. Alexander* 307 Ark. 87, *88, 817 S.W.2d 425, **426 (Ark.,1991); *Shelter Ins. Co. v. Arnold,* 57 Ark.App. 8, 940 S.W.2d 505 (1997) (statute of limitations for tort actions begins to run when the underlying tort is complete).

### c.    Georgia

Grace has objected to the claim of Dodge County Hospital (Claim No. 11550) on the basis that the Georgia statute of limitations bars the claim because the discovery rule does not apply to actions for property damage in Georgia. *See Corporation of Mercer v. National Gypsum Co.*, 368 S.E.2d 732 (Ga.1988). Grace's argument has three fatal flaws.

First, although the Supreme Court of Georgia dismissed the application of the continuing tort theory in *Mercer*, it has since explicitly recognized the doctrine of continuing nuisance and trespass and applied to actions for property damage. *See, Smith v. Branch,* 487 S.E.2d 35 (Ga.App.1997) (holding that contamination of property due to spilled dry cleaning chemicals are subject to the "continuing tort" theory). Under the continuing tort theory, "every continuance of a nuisance which is not permanent, *and which could and should be abated,* is a fresh nuisance for which a new action will lie. Consequently ... suit may be maintained for damages growing out of a nuisance ... *where the damages ... were inflicted within four years before the time of filing suit,* though the act which originally caused the nuisance was not done within the period of limitation of the action." *Groble v. Louisville & N. R. R.,* 200 S.E. 259 (Ga.1938). Asbestos property damage has been held to be an abateable nuisance which is subject to recover under nuisance theories. *Northridge Mall v.*

*W. R. Grace & Co.*, 556 N.W.2d 345 (Wis.App.1996). Accordingly, an asbestos property damage action in Georgia could be time under the continuing nuisance theory under developing law.

Second, *Mercer* did not address the doctrine of fraudulent concealment in Georgia. Under the doctrine of fraudulent concealment, the statute of limitations is tolled during any period in which the defendant, through fraud or concealment has "deterred or debarred" the plaintiff from bringing its action. Ga. St. §9-3-96. Here, the claimant has cited a substantial body of evidence that tends to show Grace fraudulently concealed the hazards of asbestos and concealed dangers of its products, even years after it ceased manufacturing them. *See, Response of Dodge County Hospital, ¶¶5 – 69.* Moreover, Grace has submitted no evidence to suggest that Dodge County Hospital knew or should have known that it had been injured by Grace's asbestos-containing Monokote. Accordingly, Grace's objection must fail.

Grace has provided no evidence that there has been an injury to any of these claimants, let alone that these claimants knew or should have known of their injury prior to the applicable limitations period. Indeed, the Debtors did not even object to seven of these claims on limitations based on the actual knowledge of the claimant.

### 3.    The Determination of When the Statute Ran is a Question of Fact

Grace has failed to provide any evidence that would establish the claimant was injured, let alone that the claimant knew or should have known it had been injured by its products. It has instead relied upon bald assertions of notice, for the most part only constructive notice of a claim. Indeed, Grace has denied that products release asbestos fibers into buildings once installed. As noted by the Eighth Circuit Court of Appeals in reversing a statute of limitations verdict,

> Grace argued at trial not only that the statute of limitations had run, but also that the plaintiff had suffered no injury from the asbestos Monokote.   The arguments are inconsistent:  if MDU has suffered no injury from the Monokote, then it has no cause of action--until an injury is suffered, the statute of limitations cannot begin to run.

MDU Resources Group v. W. R. Grace & Co., 14 F.3d 1274 (8th Cir.1994).

Even if they did, however, Grace's substantial efforts to conceal the hazards of asbestos or that its products even contained asbestos are sufficient to toll any statute of limitations period from running.  *See THS Northstar v. W.R. Grace & Co,* 860 F.Supp 640, 646 (D. Minn. 1994); *see also Expert Report of Jack Halliwell.*

### D.    Constructive Notice is Not Applicable

#### 1.    This Court Has Already Found Constructive Notice Inapplicable

This Court has already addressed the inappropriateness of Constructive Notice in these proceedings.   At the November 14, 2005 Omnibus Hearing, this Court refused to consider Constructive Notice globally as part of Phase I of the PD Estimation.   At that hearing, the Court stated:

> But I think Mr. Baena is correct, from limited research I've been able to do so far, I don't think you can knock out every building in California by saying that as of a certain date everybody in California knew that asbestos in a building created some property damage claim that should have been addressed by the -- should have been raised with and then addressed by the Debtor.

(Nov. 14, 2005 Omnibus Hearing Tr. p. 82).   Constructive Notice is no more appropriate now than it was in November of 2005.

#### 2.    No Basis to Apply Constructive Notice to Trigger Limitations

The application of constructive notice as a limitations trigger for limitations periods in asbestos property damage actions has been resoundingly rejected across the county. Yet Grace has utterly failed to come forward with any evidence or applicable state law to support

this position despite its obligation to do so. <u>Van Buskirk v. Carey Canadian Mines, Ltd.</u>, 760 F.2d 481 (3d Cir.1985); <u>California Sansome v. U. S. Gypsum Co.</u>, 55 F.3d 1402 (9th Cir.1995); <u>Clayton Center Asso. v. W. R. Grace & Co.</u>, 861 S.W.2d 686 (Mo.App.1993) (statue of limitations is an affirmative defense on which the burden of proof is on the defendant). More importantly, Grace's objection completely ignores literally scores of reported decisions from across the country that reject this very argument.

Notably, in <u>Kansas City v. W. R. Grace & Co.</u>, 778 S.W.2d 264, (Mo.App.1989), the Missouri Court of Appeals reversed the grant of summary judgment on the statute of limitations and specifically rejected the arguments now made the Debtors. In <u>Kansas City</u>, the appellate court correctly recognized that in order for an asbestos property damage action to accrue, there must be a "release of toxic asbestos fibers into the environment" along with "the ability to ascertain a substantial and unreasonable risk of harm form the release of the toxic asbestos fibers." 778 S.W.3d at 268. In so finding, the Appellate Court held that the type of evidence Grace now claims is sufficient to establish "constructive notice" of a property damage claim was not relevant to the statute of limitations.

Specifically, defendants in <u>Kansas City</u> made the identical claim made by the Debtors in this case: that because the city had constructive notice of NESHAPS regulations (first published in 1973) which banned the spray application of asbestos-containing fireproofing and later required that asbestos material be specially removed at great expense when disturbed by renovation or demolition, that the City's claim was barred by the statute of limitations.[9] In rejecting this argument, the appellate court aptly held that, "simply because Kansas City had notice of NESHAPS, its causes of action for negligence and strict liability

---

[9] The NESHAP regulations are the same regulations, amendments and related guidance documents cited by the Debtors in footnote 9, of their Fifteenth Omnibus Objection as evidence of "constructive knowledge."

were not caused to accrue until asbestos fibers were released into the environment of the airport buildings and Kansas City was capable of ascertaining that there was a substantial and unreasonable risk of harm from the release of the toxic asbestos fibers." Id. at 269.  Courts across the country are in accord.  See, MDU Resources v. W. R. Grace & Co., 14 F.3d 1274, 1279 (38th Cir.1994); THS Northstar v. W. R. Grace & Co., 66 F.3d 173 (8th Cir.1995); City of Wichita v. United States Mineral Product Co.. 72 F.3d 1491 (10th Cir.1996); San Francisco Unified School District v. W. R. Grace & Co., 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305 (Cal.App.4th 1995);  Heider v. W. R. Grace & Co., 1992 WL 189254 (N.D.Ill.) (citing, Prosser & Keeton on the Law of Torts, §30 at 165 (5th Ed. 1984)); Clayton Center Asso. v. W. R. Grace & Co., 861 S.W.2d 686 (Mo.App.1993).

Moreover, the Debtors' constructive notice argument is patently inconsistent with its claim that its asbestos-containing surfacing materials are not hazardous and do not cause property damage. See, Debtors' Fifteenth Omnibus Objection, ¶ 118 (alleging claimants allegedly barred because there is no "proof of hazard."); ¶175 (citing British Columbia court as holding that Monokote does not "contaminate buildings" and is therefore not hazardous). As noted by the Eighth Circuit Court of Appeals in reversing a statute of limitations verdict,

> **Grace** argued at trial not only that the statute of limitations had run, but also that the plaintiff had suffered no injury from the **asbestos** Monokote.  The arguments are inconsistent:  if MDU has suffered no injury from the Monokote, then it has no cause of action--until an injury is suffered, the statute of limitations cannot begin to run.

MDU Resources Group v. W. R. Grace & Co., 14 F.3d 1274 (8th Cir.1994).

### 3.   Inquiry Notice Still Requires Actual Knowledge

The Debtors and its expert, Mr. Morse, have spent a great deal of energy attempting to catalog every item of information about the alleged hazards of asbestos from 1970 to 1995.

Even if that information were relevant, which as explained above, it is clearly not, the Debtors and Mr. Morse have still utterly failed to link any of that information to these specific building owners.[10] Its failure to do so is fatal to its motion.

First, it is evident that the Debtors have confused the concept of "constructive notice" with "inquiry notice." As eloquently explained by the Maryland Court of Appeals over a century ago

> Notice is of two kinds: actual and constructive. Actual notice may either be express or implied. If the one, it is established by direct evidence; if the other, by the proof of circumstances from which it is inferable as a fact. Constructive notice is, on the other hand, always a presumption of law. Express notice embraces, not only knowledge, but also that which is communicated by direct information, either written or oral, from those who are cognizant of the fact communicated. Implied notice, which is equally actual notice, arises where the party to be charged is shown to have had knowledge of such facts and circumstances as would lead him, by the exercise of due diligence, to a knowledge of the principal fact. Or, as defined by the supreme court of Missouri in <u>Rhodes v. Outcalt</u>, 48 Mo. 370, "a notice is regarded in law as actual when the party sought to be affected by it knows of the particular fact, or is conscious of having the means of knowing it, although he may not employ the means in his possession for the purpose of gaining further information." It is simply circumstantial evidence from which notice may be inferred. It differs from constructive notice, with which it is frequently confounded, and which it greatly resembles, in respect to the character of the inference upon which it rests; constructive notice being the creature of positive law, resting upon strictly legal presumptions, which are not allowed to be controverted, while implied notice arises from inference of fact,

<u>Baltimore v. Whittington</u>, 78 Md. 231, 27 A. 984, 985 (1893). Citing this provision, the Maryland Court of Appeals, a century later, recognized this distinction and reaffirmed the that "constructive notice or knowledge will not suffice for inquiry notice." <u>Georgia Pacific v.</u>

---

[10] In his deposition, Mr. Morse testified that he had no expertise and training on the issue of effectively communicating through the mass medial, designing or understanding notice programs or the likelihood that any specific person would receive or read anything published in the mass media. Exhibit 3, p. 45 (Deposition of Mr. Morse, 3/1/2007). Mr. Morse freely admitted that he would have no way of knowing what a particular building owner may or may not have been reading. Id at p. 40.

Benjamin, 394 Md. 59, 904 A.2d 511, 529 (2006).  In so holding, the court reasoned that application of the discovery to a statute of limitations requires a person to "have actual notice, either express or implied. . . .    Implied notice occurs 'when a plaintiff gains knowledge sufficient to prompt a reasonable person to inquire further.'"    Id (citations omitted).  Accordingly, to begin the operation of the statute of limitations, a defendant must come forward with evidence that a plaintiff actually knew something.

After a diligent search, the claimants cannot find a single instance in Arkansas, Delaware, or Georgia where constructive knowledge is successfully asserted in a products claim.  The Debtors have not brought forward any law to support this position.

### III. Statute is Tolled due to Grace's Affirmative Acts Concealing the Claimants Rights

Arkansas, Delaware, and Georgia all recognize the premise that any fact fraudulently concealed from a potential plaintiff cannot act to trigger the statute of limitations upon a plaintiff's right to recover.  "Fraudulent concealment suspends the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers the fraud or should have discovered it by the exercise of due diligence. *Curry v. Thornsberry* 354 Ark. 631, *638, 128 S.W.3d 438, **441 (Ark., 2003) *citing Shelton v. Fiser,* 340 Ark. 89, 8 S.W.3d 557 (2000); *Martin v. Arthur,* 339 Ark. 149, 3 S.W.3d 684 (1999); *First Pyramid Life Ins. Co. v. Stoltz, supra.*  Georgia courts, applying the fraudulent concealment doctrine in *Jim Walter Corp. v. Ward* 245 Ga. 355, *357, 265 S.E.2d 7, **9 (Ga., 1980) stated to "invoke the language of Code s 3-807. Basically, Code s 3-807 consists of three elements: (1) actual fraud on the part of the defendant involving moral turpitude, (2) which conceals the existence of a cause of action from the plaintiff, and (3) plaintiff's reasonable diligence in discovering his cause of action despite his failure to do so

within the time of the applicable statute of limitations. See Jones v. Johnson, 203 Ga. 282, 46 S.E.2d 484 (1948); Frost v. Arnaud, 144 Ga. 26, 85 S.E. 1028 (1915); Anderson v. Foster, 112 Ga. 270, 37 S.E. 426 (1900); Middleton v. Pruden, 57 Ga.App. 555, 196 S.E. 259 (1938); Ponder v. Barrett, 46 Ga.App. 757, 169 S.E. 257 (1933)… However, it is also true that "it is for the jury to apply the unvarying standard of ordinary care to the facts and exigencies of each particular case . . ." Wright v. Dilbeck, 122 Ga.App. 214, 228, 176 S.E.2d 715, 727 (1970), quoting Davies v. West Lumber Co., 32 Ga.App. 460(1), 123 S.E. 757." Delaware states it more plainly. "Fraudulent concealment is the intentional nondisclosure of material facts by one owing a duty to disclose." *Allen v. Layton* 235 A.2d 261, *264 (Del.Super. 1967). "Where defendant is guilty of fraudulent concealment, the Statute of Limitations is tolled until such time as the cause of action is discovered or could have been discovered by the exercise of due diligence. See 2 Wood on Limitations, Ch. 26, p. 1358-9; 80 A.L.R.2d 401. This is a generally accepted legal principle in the Statute of Limitations context. Delaware has consistently followed this rule." *Allen citing Giordano v. Czerwinski*, 216 A.2d 874 (Del.Sup.Ct. 1966); *Bovay v. H. M. Byllesby & Co.*, 27 Del.Ch. 33, 29 A.2d 801 (Ch. 1943); *Trainer v. Deemer*, 5 W.W.Harr. 396, 35 Del. 396, 166 A. 657 (Super.Ct. 1933); *Williams v. Beltz,* 7 Boyce 360, 30 Del. 360, 107 A. 298 (Sup.Ct. 1919); *Lieberman v. First National Bank of Wilmington*, 2 Penn. 416, 8 Del.Ch. 519, 45 A. 901, 48 L.R.A. 514 (Sup.Ct. 1900).

## III.    Conclusion

The Debtors have failed to establish a lack of genuine issue of material fact and that they are entitled to summary judgment based upon the limitations periods of Arkansas, Delaware, and Georgia. The Debtors' motion should be denied.

DATED: March 19, 2007

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.[11]
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 654-0248
Facsimile:    (302) 654-0728
E-mail:    loizides@loizides.com

- and -

C. Alan Runyan (SC Fed. ID No. 4837)
Marion C. Fairey, Jr. (SC Fed. ID No. 6101)
SPEIGHTS & RUNYAN
200 Jackson Avenue, East
Post Office Box 685
Hampton, SC 29924
Telephone:    (803) 943-4444
Facsimile:    (803)943-4599

*Counsel for Anderson Memorial Hospital*

---

[11] F/K/A Loizides & Associates (Name change pending).

## Summary of Exhibits

Exhibit 1     Excerpts from Exhibit A to August 31, 2006 CMO and October 13, 2006
Amended CMO

Exhibit 2     Grace Responses to First Set of Interrogatories, First Request for Admissions
and First Request for Production of Documents to Claim Nos. 9912, 9913

Exhibit 3     Excerpts from the Deposition of Roger Morse, March 1, 2007 (p. 46-47, 52).