## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ) ) | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | ) ) | Case No. 01-01139 (JKF) Jointly Administered |
| Debtors. | ) ) ) | Related to Docket No. 14763 |

## MOTION OF BARON & BUDD, P.A., SILBER PEARLMAN, LLP, AND LEBLANC & WADDELL, LLP, TO EXTEND THE TIME FOR FILING THEIR NOTICE OF APPEAL WITH RESPECT TO THE COURT'S FINAL ORDER REGARDING THE CONSULTING EXPERT PRIVILEGE PURSUANT TO FED. R. BANKR. P. 8002(c)(2)

By this motion (the "Motion") made pursuant to FED. R. BANKR. P. 8002(c)(2),

the firms of Baron & Budd, P.C., Silber Pearlman, LLP and LeBlanc & Waddell,

LLP (collectively, the "Firms") move for an extension of time for the filing of their

notice of appeal from the "Order on Certain Asbestos Claimants' Firms' Motion to

Alter or Amend Supplemental Order Regarding Motions to Compel Claimants to

Respond to the W.R. Grace & Co. Asbestos Personal Injury Questionnaire Pursuant

to FED. R. BANKR. P. 9023 and Alternative Request for Entry of a Protective Order"

(the "Order", Dkt. No. 14763) entered of record on March 6, 2007, and would

respectfully show the Court the following:

A.    BACKGROUND AND CONTEXT

1.    Each of the Firms represents holders of personal injury claims

("Claimants") against W.R. Grace & Co. and/or one of its affiliated co-debtors

(collectively, "Grace") based on exposure to asbestos and/or asbestos-containing

products.

2.    In the administration of Grace's reorganization case, in connection

with responding to the W.R. Grace & Co. Asbestos Personal Injury Questionnaire

promulgated by Grace to tens of thousands of asbestos personal injury claimants

(including Claimants represented by the Firms), a dispute arose between Grace and

certain counsel for asbestos claimants, including the Firms, concerning the scope of

the so-called consulting expert privilege provided for in FED. R. CIV. P. 26(b)(4)(B),

made applicable adversary proceedings and contested matters in bankruptcy by

FED. R. BANKR. P. 7026 and 9014, respectively.

3.    Rule 26(b)(4)(B) prohibits discovery from consulting experts retained

before and after litigation is filed.[1]  By its terms, the rule covers (i) experts retained

---

[1]    Rule 26(b)(4)(B) provides as follows:

> A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

"in anticipation of litigation" (*i.e.*, before the litigation commences) and also (ii)
experts retained in "preparation for trial" (*i.e.*, after the litigation commences).
FED. R. CIV. P. 26(b)(4)(B).  Once an attorney is consulted and a lawsuit filed, any
examination of a claimant by a consulting medical expert is protected.  The same
protection is also available prior to the filing of suit, provided that litigation is
anticipated.

4.    The Firms, and others, have steadfastly maintained that Claimants
who had not yet been diagnosed with an asbestos-related injury but who had
nevertheless engaged counsel anticipated litigation sufficiently to trigger the
applicability of the privilege.  What better indication could there be that Claimants
anticipated litigation, the Firms argued, than their decision to consult with counsel
prior to consulting with a medical professional?

5.    After considerable discussion and argument concerning the proper
ambit of the consulting expert privilege, the Court's ruling diverged from what the
Firms, and others representing asbestos claimants, had urged.  The Court's initial
ruling on the matter, embodied in its "Supplemental Order Regarding Motions to
Compel Claimants to Respond to the W.R. Grace & Co. Asbestos Personal Injury
Questionnaire" (the "Initial Order", Dkt. No. 14150) December 22, 2006, took a
narrower view.  In the Initial Order, the Court essentially held that an undiagnosed
Claimant who consulted with counsel prior to being diagnosed with an asbestos-
related infirmity is incapable of anticipating litigation.

-3-

6.      The Firms, together with others, subsequently moved the Court to alter or amend its ruling embodied in the Initial Order,[2] which it thereafter did.  On March 6, 2007, the Court entered the Order altering and amending its prior ruling to include a protective order, but maintaining the view that undiagnosed Claimants represented by counsel were incapable of anticipating litigation so as to trigger the protections of Rule 26(b)(4)(B).

7.      Pursuant to BANKR. R. FED. P. 8002(b), the deadline for the filing of a notice of appeal with respect to the Order was ten (10) days following March 6, 2007, or March 16, 2007; provided, however, that upon a showing of excusable neglect, the deadline may be extended for up to twenty (20) more days, or April 5, 2007.  FED. R. BANKR. P. 8002(c)(2).  The Firms urge that their failure to file a notice of appeal with respect to the Order on or before March 16, 2007, is entirely attributable to excusable neglect, the circumstances of which are set forth in the attached Declaration of Alan B. Rich in Support of the Motion of Baron & Budd, P.C., Silber Pearlman, LLP and LeBlanc & Waddell, LLP to Extend the Time to Appeal March 6, 2007 Order (the "Rich Declaration") (attached as Exhibit 1).

8.      Contemporaneously with the filing of this Motion, the Firms are filing their Notice of Appeal with respect to the Order, subject to the relief sought by this Motion.  The Firms respectfully move for the entry of an order validating the filing

---

[2]    Certain Asbestos Claimants' Firms' Motion to Alter or Amend Supplemental Order Regarding Motions to Compel Claimants to Respond to the W.R. Grace & Co. Asbestos Personal Injury Questionnaire Pursuant to FED. R. BANKR. P. 9023, Alternative Request for Entry of a Protective Order, and Memorandum in Support Thereof (Dkt. No. 14203), docketed on January 2, 2007.

their Notice of Appeal on March 19, 2007, based on the Firms' showing of excusable

neglect pursuant to FED. R. BANKR. P. 8002(c)(2).

**B.    Argument.**

Rule 8002(c)(2) of the Federal Rules of Bankruptcy Procedure provides as

follows:

> **(2)**  A request to extend the time for filing a notice of appeal
> must be made by written motion filed before the time for filing
> a notice of appeal has expired, except that such a motion filed
> not later than 20 days after the expiration of the time for filing
> a notice of appeal may be granted upon a showing of excusable
> neglect.  An extension of time for filing a notice of appeal may
> not exceed 20 days from the expiration of the time for filing
> a notice of appeal otherwise prescribed by this rule or 10 days for
> the date of entry of the order granting the motion, whichever is
> later.

FED. R. BANKR. P. 8002(c)(2).

In *Pioneer Inv. Servs. v. Brunswick Assocs., Ltd. P'ship*, 507 U.S. 380, 398-99

(1993), the United States Supreme Court held that the inadvertent, mistaken or

careless failure to file a proof of claim by the bar date could constitute "excusable

neglect."  The Third Circuit has held that the determination of whether neglect is

"excusable" requires consideration of the totality of the circumstances.  *Welch &*

*Forbes, Inc. v. Cendant Corp. (In re Cendant Corp Prides Litig.)*, 233 F.3d 188, 196

(3d Cir. 2000) (involving late filing of claims to participate in a class action

settlement).

It bears noting that Grace will suffer no prejudice should the late filing of the

Firms' notice of appeal be permitted.  This is significant because prejudice is

-5-

perhaps the most important factor cited by courts as a basis for disallowing late filings. *See, e.g., In re Sacred Hear Hosp.*, 186 B.R. 891, 895 (Bankr. E.D. Pa. 1995). The present motion appending the Firms' notice of appeal is, after all, being filed on the very first business day after the 10-day deadline. *See, e.g., In re William B. Kessler, Inc.*, 29 B.R. 358, 359 (Bankr. S.D.N.Y. 1983) (excusable neglect under former Bankruptcy Rule 802(c) where counsel acted promptly after missing an appellate deadline). Prejudice to Grace is not implicated here at all.

The Rich Declaration candidly describes the events that transpired. Mr. Rich testifies as follows:

> As a result of a miscommunication and misunderstanding between me and my superiors at the … [F]irms, I believed that were an appeal desired of the … Order, I would be informed of their decision, at which point I would instruct [counsel] to file a notice of appeal. Instead, since I had recommended to my superiors that an appeal be taken, given the internal disruption and upheaval occurring at the time within the … [F]irms, it was assumed that I would instruct [counsel] to file the notice of appeal unless my recommendation was rejected, which it was not. Because of this internal misunderstanding and miscommunication, I did not instruct [counsel] to file the notice of appeal by March 16, 2007.

Rich Declaration, ¶ 3.

Mr. Rich thus acknowledges his assumption that he would receive a specific directive from his superiors to act on his recommendation that the Order be appealed. His superiors, however, assumed that Mr. Rich would instruct counsel to pursue and appeal absent a specific directive from them to Mr. Rich that no appeal

be taken.  This unfortunate miscue came to light literally hours after the March 16,

2007, deadline had passed.

Mr. Rich refers to "the internal disruption and upheaval occurring at the time

within the … [F]irms … ."  Rich Declaration, ¶ 3.  This "internal disruption and

upheaval" is a matter of public record.  A story dated March 6, 2007, attributed to

Brenda Sapino Jeffreys of *The Texas Lawyer* was published online.  Headlined

"Baron & Budd Lays Off 19 Lawyers, 100 Staffers", the article recounted significant

restructurings and personnel reductions at Baron & Budd and LeBlanc & Waddell

in March 2007.  A true copy of this article is attached hereto for the Court's

convenient reference.  Similar articles were published substantially

contemporaneously by the *Dallas Business Journal* and *The Dallas Morning News*.

True copies of these articles are also attached hereto as Exhibit 2.  The "internal

disruption and upheaval" prevailing at the Firms was thus of a unique and

extraordinary character and widely publicized.

Courts have found that office disruptions can be considered excusable

neglect, particularly in combination with other contributing factors.  *See, e.g., In re

Schlosser*, 100 B.R. 348, 349 (Bankr. S.D. Ohio 1989) (excusable neglect where a

bank was in the process of consolidating operations in two offices when it received

notice of an objection to a proof of claim and the employee who had served to

original objection resigned at about the same time as the consolidation and the

service of the objection).

## Conclusion

For the reasons stated, the Firms respectfully pray that the Court validate the filing of their Notice of Appeal on March 19, 2007, pursuant to FED. R. BANKR. P. 8002(c)(2), based upon the Firms' showing of excusable neglect.

Dated: March 19, 2007

Sander L. Esserman
Van J. Hooker
David A. Klingler
David J. Parsons
**STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,
A Professional Corporation**
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 969-4900
Facsimile:   (214) 969-4999

**COUNSEL FOR VARIOUS FIRMS
REPRSENTING ASBESTOS CLAIMANTS**


/s/ Daniel K. Hogan
Daniel K. Hogan (ID no. 2814)

**THE HOGAN FIRM**

1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone:  (302) 656-7540
Facsimile:   (302) 656-7599
E-mail:  dkhogan@dkhogan.com

**LOCAL COUNSEL FOR VARIOUS FIRMS
REPRSENTING ASBESTOS CLAIMANTS**