# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: W.R. GRACE & CO., et al.,<br><br>Debtors. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Chapter 11<br>Case No. 01-01139 (JKF)<br>(Jointly Administered) |

## CLAIMANT STATE OF CALIFORNIA, DEPARTMENT OF GENERAL SERVICES, OPPOSITION TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO F.R.B.P. 7056 DISALLOWING AND EXPUNGING CLAIMANT'S SIXTEEN (16) CLAIMS AMONG ONE HUNDRED NINE (109) CALIFORNIA ASBESTOS PROPERTY DAMAGE CLAIMS ALLEGEDLY BARRED BY THE STATUTE OF LIMITATIONS

HAHN & HESSEN LLP
COUNSEL FOR CLAIMANT STATE OF CALIFORNIA,
DEPARTMENT OF GENERAL SERVICES
488 MADISON AVENUE
NEW YORK, NEW YORK 10022
(212) 478-7200

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ) | |
| ) | Chapter 11 |
| ) | Case No. 01-01139 (JKF) |
| In re:  W.R. GRACE & CO., et al.,                    ) | (Jointly Administered) |
| ) | |
| Debtors.                    ) | |
| ) | |
| ————————————————————    ) | |

## CLAIMANT STATE OF CALIFORNIA, DEPARTMENT OF GENERAL SERVICES, OPPOSITION TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO F.R.B.P. 7056 DISALLOWING AND EXPUNGING CLAIMANT'S SIXTEEN (16) CLAIMS AMONG ONE HUNDRED NINE (109) CALIFORNIA ASBESTOS PROPERTY DAMAGE CLAIMS ALLEGEDLY BARRED BY THE STATUTE OF LIMITATIONS

### Preliminary Statement

1.      Claimant State of California, Department of General Services (the "Claimant"),

respectfully submits this response ("DGS Opposition") to the February 16, 2007 motion (the

"Motion") of the Debtors for an order pursuant to Federal Rules of Bankruptcy Procedure

("F.R.B.P.") 7056 disallowing and expunging Claimant's sixteen property damage claims (the

"DGS Claims") (among 109 claims targeted by the Motion) on the ground that they are barred by

the applicable statute of limitations under principles of judicial admission and judicial estoppel.

For the reasons discussed below, the Motion should be denied in its entirety.

### Summary of Motion's Grounds and Claimant's Response

2.      Lumping Claimant's sixteen claims together with other California claims without

any attempt to differentiate them, the Motion relies upon a single "fact" — the unsuccessful

effort over seventeen years ago to obtain U.S. Supreme Court leave to file a complaint on behalf

of twenty-nine states against Debtor W.R. Grace & Co. and more than twenty-five other

1

companies — to advance the argument that the DGS Claims are thereby barred and also foreclosed by principles of judicial admission and judicial estoppel.

    3.    But Debtors' erroneous description of a U.S. Supreme Court-denied attempt to obtain specific equitable relief and their flawed analysis of applicable law render the Motion fatally deficient for at least five reasons:

    a) Debtors mistakenly argue that the damages alleged in Claimant's sixteen property damage claims were the subject of a previous action brought by Claimant against Debtors and/or other defendants in 1990 (see I(A.));

    b) Any previous action brought by Claimant against Debtors does not constitute a binding judicial admission that Claimant knew of damages alleged in the DGS Claims before 1990 (see I(B.));

    c) Judicial estoppel does not preclude Claimant from asserting that the sixteen buildings covered by the DGS Claims sustained property damage after 1990 because the doctrine's prerequisites have not been met (see I(C.));

    d) Even if Claimant believed that it possessed a cause of action for asbestos property damage in 1990, such belief would not alter applicable state law for accrual purposes (see I(D.));

    e) Debtors have not carried their burden to demonstrate, as California law requires, that all of the elements supporting Claimant's causes of action for property damage arose in 1990 (see II).

## Pertinent Background

### A.    Prior Filings of the Parties

4.    On April 2, 2001, (the "Petition Date"), Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.

5.    In March 2003, Claimant filed the DGS Claims[1], which seek over $130 million in property damage to sixteen specific buildings.  Claimant also expressly indicated, in the Debtors-proposed proof of claim forms, that it *had not* previously filed an asbestos property damage lawsuit or claim against Debtors relating to these sixteen buildings.  See Ex. 1.[2]

6.    On September 1, 2005, Debtors filed the Fifteenth Omnibus Objection (Substantive) (the "Fifteenth Omnibus Objection") to asbestos property damage claims. Pursuant to this Court's July 19, 2004 order granting limited waiver of Del.Bankr.LR 3007-1 for the purpose of streamlining objections to certain claims, Debtors asserted omnibus objections (the "Gateway Objections") against various asbestos property damage claims, including those filed by Claimant.  Specifically, Debtors objected to the DGS Claims on the ground that they are barred by the applicable statute of limitations and laches.

---

[1]    Claimant's sixteen proofs of claim numbers (as denominated by Debtors) are 10648, 10649, 10650, 10651, 10652, 10653, 10654, 10655, 10656, 10657, 10658, 10659, 10660, 10661, 10662 and 14411.

[2]    Citations to Ex. "___" are to the exhibits attached to the Declaration of Claimant's counsel Steven J. Mandelsberg, sworn to on March 19, 2007 and submitted along with the DGS Opposition.

7.      In the Fifteenth Omnibus Objection, at 43-45, Debtors also lodged Gateway Objections against *other* California property damage claimants (referred to by Debtors as the "Speights California Claims") on statute of limitations grounds. In support of its statute of limitations objection against the Speights California Claims, but *not* against the DGS Claims, Debtors relied on a proposed complaint dated January 29, 1990 (the "Proposed Alabama Complaint") in which 29 states, including the State of California, requested equitable relief from the U.S Supreme Court under the "Public Assistance Doctrine" from numerous manufacturers and distributors of asbestos-containing products including one of the debtors, W.R. Grace & Co. See Debtors' Fifteenth Omnibus Objection, at 43-45 (especially 45 at ¶138).[3] Debtors did not make any reference to the Proposed Alabama Complaint in their Fifteenth Omnibus Objection to the DGS Claims.

8.      On October 24, 2005, Claimant filed a response to Debtors' Fifteenth Omnibus Objection (the "Response to Fifteenth Omnibus Objection") pointing out, among other things, that (a) Claimant did not discover asbestos contamination in any of its sixteen buildings and its connection to Debtors' product until 2003, see Claimant's Response to Fifteenth Omnibus Objection, at 8, and (b) its property damage claims thereby accrued, at the earliest, in 2003 and were not barred by the applicable California three-year statute of limitations. Claimant's Response to Fifteenth Omnibus Objection did not address the Proposed Alabama Complaint because Debtors' Fifteenth Omnibus Objection never contended that such proposed pleading established that the DGS Claims were time-barred.

---

[3]   The Proposed Alabama Complaint was never considered by the United States Supreme Court. Plaintiffs' petition for leave to file that complaint was denied on May 14, 1990, see Alabama et al. v. W.R. Grace & Co., et al., 495 U.S. 928 (1990); no record exists of any subsequent filing of such complaint or petition in any other court, and Debtors do not contend that the relief sought in the Proposed Alabama Complaint was ever pursued against any of the Debtors in any other forum.

4

**B.      Debtors' Motion for Summary Judgment Against Claimant**

   **1.      Debtors' Asserted Basis for Judgment That DGS Claims Are Time-Barred**

   9.      On February 16, 2007, Debtors moved for summary judgment under F.R.B.P.

7056 to disallow or expunge the DGS Claims on the grounds that such claims are barred by the

applicable statute of limitations under principles of judicial estoppel and judicial admission.

   10.      The only "previous action" by Claimant identified in the Motion is the Proposed

Alabama Complaint, see Debtor's Motion, at 3-4, in which 29 states including the State of

California (although not Claimant, the State of California's Department of General Services)

unsuccessfully petitioned the United States Supreme Court to entertain an action for equitable

restitution against more than 25 manufacturers and distributors of asbestos containing products,

including one of the Debtors.

   11.      Debtors contend that the injuries alleged in the Proposed Alabama Complaint are

"identical" to those alleged in the DGS Claims, and that the Proposed Alabama Complaint

therefore establishes that Claimant "knew of [its] claims, and of the injuries and damages, [it]

purport[s] to have suffered, by at least 1990." Motion, at 4. Debtors thus conclude that the DGS

Claims, filed in 2003, are time-barred under California's three-year statute of limitations.

   12.      Debtors also argue that Claimant (characterized by Debtors as the State of

California) could not have properly joined any petition for relief from the U.S. Supreme Court or

sought to file the Proposed Alabama Complaint unless Claimant believed, at the time of the

filing in January 1990, that it had already sustained the "compensable injuries" alleged therein.

See Motion, at 6.

13.     Debtors do not offer any evidence in support of the Motion against Claimant other
than the Proposed Alabama Complaint and a petition for leave to file such complaint. This
"evidence," Debtor concludes, warrants the application of the doctrines of judicial estoppel and
judicial admission to preclude assertion of the DGS Claims.

## 2.     The Limited Relief Sought in Proposed Alabama Complaint

14.     The Proposed Alabama Complaint did not seek damages at law for property
damage, but rather sought an "equitable remedy to address the national crisis presented by the
presence of asbestos-containing materials in public buildings." Proposed Alabama Complaint,
at 1. Nor did it identify or specify the California (or any other state's) properties as to which
such relief was being sought. Instead, the only claim alleged was for equitable restitution under
the Public Assistance Doctrine to have the asbestos companies reimburse the states for the "costs
of asbestos abatement" undertaken by them. See Proposed Alabama Complaint, at ¶7-8.

15.     In support of the equitable relief requested, the Proposed Alabama Complaint
alleged, among other things, that: (1) "[a]sbestos [c]ompanies manufactured, distributed, and
marketed asbestos-containing building products that were installed in the [s]tates' buildings and
facilities," at ¶6; (2) "[t]here is no safe level of exposure to asbestos fibers," at ¶9; (3) "the
[s]tates must act and have acted to preserve the public health and to preserve the value and utility
of state-owned properties by abating the hazards" created by the asbestos companies' products,
at ¶10; (4) "[a]batement of asbestos-containing products in the [s]tates' buildings has and will
require a great expenditure of the [s]tates' funds," at ¶11; (5) "[t]he [s]tates have acted
unofficiously and with intent to charge the [a]sbestos [c]ompanies for the expenses incurred," at
¶17; and (6) "[t]he [s]tates have no adequate remedy at law," at ¶18. See Proposed Alabama
Complaint.

16.     In seeking equitable restitution for their costs to abate the hazards created by

6

asbestos containing materials, the states were not limiting the scope of restitution sought only to those properties where asbestos fibers had been released into the air.  Rather, the "imminent danger" the states sought to address by their equitable claim was the presence of asbestos since "[a]ll asbestos-containing products eventually deteriorate and release their hazardous fibers." Proposed Alabama Complaint, at ¶19.

**APPLICABLE LEGAL STANDARDS**

**C.     Summary Judgment Standard on Statute of Limitations Grounds**

17.     In deciding a motion for summary judgment on statute of limitations grounds under Rule 56 of the Federal Rules of Civil Procedure, made applicable by F.R.B.P. Rule 7056, the Court must determine if any material factual issues must be tried.  See Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976).   As the moving party, Debtors bear the burden of demonstrating that no material facts remain in dispute, see Santana Prod., Inc. v. Bobrick Washroom Equip., Inc., 401 F.3d 123, 131 (3d Cir. 2005), with all reasonable inferences drawn in favor of Claimant, see Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan, 439 F. Supp. 2d 337, 339 (D. Del. 2006) (citing Goodman, 534 F.2d at 573).

**D.     Accrual Date for Asbestos Property Damage Claims**

18.     Under California law[4], a cause of action accrues "upon the occurrence of the last element essential to the cause of action." City of San Diego v. U.S. Gypsum Co., 30 Cal. App. 4th, 575, 582 (1994).  Specifically, a tort cause of action for damage to real property accrues when "immediate and permanent injury" is caused by defendant's wrongful conduct. Krusi v. S.J. Amoroso Constr. Co., 81 Cal. App. 4th 995, 1005 (2000) (quotation marks and internal

---

[4]     California law should be applied to asbestos property damage claims regarding buildings located in California. See The 3250 Wilshire Boulevard Bldg. v. W.R. Grace & Co., 1989 U.S. Dist. LEXIS 17287 (D. Ca. July 24, 1989) (applying California law to determine whether a building located in California sustained compensable asbestos property damage).

citations omitted). The compensable injury cannot be solely economic in nature, but must include an appreciable harm inflicted on people or property. County of Santa Clara v. Atlantic Richfield Co., 137 Cal. App. 4th 292, 318 (2006); see also The 3250 Wilshire Boulevard Bldg. v. W.R. Grace & Co., 1989 U.S. Dist. LEXIS 17287, at *12 (D. Ca. July 24, 1989)(concluding that "any reduction in the value of the plaintiffs' building due to the financial or real estate market's aversion to purchase the structure solely because ACFM [asbestos-containing friable material] was employed in its construction constitutes purely economic loss").

19.    Notwithstanding the occurrence of "immediate and permanent injury," the statute of limitations may commence on a later date under the discovery rule. Pursuant to that rule, a cause of action does not accrue until the plaintiff either discovers the injury and its cause or should have discovered the injury and its cause through reasonable due diligence. County of Santa Clara, 137 Cal. App. 4th at 317.

20.    In calculating the accrual date for an asbestos property damage claim, when the "injury" occurred - namely, when the asbestos created appreciable physical harm - must be determined. California courts have held that the mere presence of asbestos produces a *risk* of future harm only. See San Francisco Unified School District v. W.R. Grace & Co., 37 Cal. App. 4th 1318, 1335 (1995)(hereinafter "SFUSD"); see also 3250 Wilshire Boulevard Bldg., 1989 U.S. Dist. LEXIS 17287, at **10-12 (concluding that the mere presence of asbestos-containing friable material in a building and the risk of possible future release of asbestos are not legally compensable claims). On the other hand, the contamination of a building - the release of asbestos fibers into the air sufficient to comprise elevated levels - does constitute physical injury. SFUSD, 37 Cal. App. 4th at 1334-35; see California Sansome Co. v. U.S. Gypsum, 55 F.3d 1402, 1406 n.5 (9th Cir. 1995)(providing definition for asbestos contamination). Accordingly,

contamination by friable asbestos is the physical injury and the appreciable harm that must exist

before a property damage claim against an asbestos manufacturer accrues. <u>SFUSD</u>, 37 Cal. App.

4th at 1335.

**ARGUMENT**

**I.**

**THE PROPOSED ALABAMA COMPLAINT DOES NOT ESTABLISH THAT
THE DGS CLAIMS ARE TIME-BARRED**

**A.     The Proposed Alabama Complaint Does Not
Establish That the DGS Claims Accrued By 1990**

21.     The Proposed Alabama Complaint did not seek damages at law, but equitable

relief pursuant to the Public Assistance Doctrine to obtain restitution from the named asbestos

companies for then as-yet unquantified or unspecified costs of abatement of asbestos-containing

products. Proposed Alabama Complaint, at ¶11.

22.     Equitable relief in the form of restitution for the abatement of asbestos differs

from monetary damages for appreciable harm resulting in asbestos property damage. Restitution

under the Public Assistance Doctrine is intended to reimburse a party for the costs of asbestos

abatement that the party has incurred and will incur in the future. <u>Indep. Sch. Dist. No. 197 v.</u>

<u>W.R. Grace & Co.</u>, 752 F. Supp. 286, 304 (D. Minn. 1990)(concluding that plaintiff stated a

valid restitution claim despite the fact that asbestos abatement had not yet been completed).

Monetary damages, on the other hand, are intended to compensate a party for property damage

caused by the contamination of a building by friable asbestos. <u>SFUSD</u>, 37 Cal. App. 4th at 1335.

23.     A party pleading an equitable claim under the Public Assistance Doctrine must

prove that: (1) the party whose duty it was to act refused to do so through explicit or implicit

means; (2) there was a need to act immediately to protect the public health; and (3) the party who

failed to act had a duty to do so. <u>See City of St. Louis v. American Tobacco Co., Inc.</u>, 70 F.

9

Supp. 2d 1008, 1017 n.6 (D. Mo. 1999)(quoting <u>Drayton Pub. Sch. Dist. No. 19 v. W.R. Grace &
Co.</u>, 728 F. Supp. 1410, 1415 (D.N.D. 1989)).

     24.     As to the third element, some courts have held that the "duty [to act] need not be

absolute, and need not be of a type or degree that would otherwise give rise to legal liability."

<u>Hebron Pub. Sch. Dist. No. 13 of Morton County v. U.S. Gypsum</u>, 690 F. Supp. 866, 869

(D.N.D. 1988). In other words, the duty owed by one necessary to support a claim by another

against it in restitution need not be of a nature that would support a claim in contract or tort. For

example, plaintiff's general allegations "that the presence of asbestos constitute[s] a potential

health hazard and that [plaintiffs] had and would continue to expend money for asbestos

detection and abatement" have been found to state valid claims for equitable restitution. <u>Detroit
Bd. of Educ. V. Celotex Corp.</u>, 493 N.W.2d 513, 517 (Mich. Ct. App. 1992)(reversing lower

court's denial of defendants' motion for summary disposition to plaintiff's claim for equitable

restitution on statute of limitations grounds, not for failure to state a cause of action); <u>see Indep.
Sch. Dist.</u>, 752 F. Supp. at 304 (plaintiff seeking recovery of costs of abating hazards allegedly

caused by the presence of asbestos in its buildings stated a claim for restitution pursuant to the

Public Assistance Doctrine).

     25.     All jurisdictions except for two have held that a cause of action for asbestos

property damage (unlike one for equitable relief under the Public Assistant Doctrine) requires

actual contamination: the release of asbestos fibers into the air sufficient to comprise elevated

levels. <u>See SFUSD</u>, 37 Cal. App. 4th at 1334-35. Thus, while the mere presence of asbestos

may be sufficient to support a claim for restitution under the Public Assistance Doctrine, such

presence does not satisfy the appreciable harm element required to give rise to an asbestos

property damage claim. <u>Id.</u> at 1335.

26.     Since the Public Assistance Doctrine permits courts to entertain restitution claims for the costs of abating the presence of asbestos in buildings, as opposed to the award of money damages for the contamination of buildings by asbestos fibers, the proposed Alabama Complaint and the DGS Claims do not allege "identical injuries." See Motion at 1. The Proposed Alabama Complaint sought reimbursement from asbestos companies for the costs of asbestos abatement based on the presence of asbestos containing building materials. See Proposed Alabama Complaint, at ¶9 ("All asbestos-containing products eventually deteriorate and release their hazardous fibers. Accordingly, an imminent danger exists to the health and welfare not only of occupants of the [s]tates' buildings, but also of the public who visits those buildings."). In stark contrast, the DGS Claims seek to recover damages from Debtors as the result of friable asbestos contamination in sixteen buildings that was not discovered by Claimants until 2003. In short, Debtors' argument that the Proposed Alabama Complaint could have only been filed if the sixteen buildings the subject of Claimant's proofs of claim were contaminated with asbestos fibers is belied by the fact that the states were seeking equitable relief in the Proposed Alabama Complaint based only on the presence of asbestos-containing products in buildings.

27.     Accordingly, the Proposed Alabama Complaint on its face does not establish that the DGS Claims accrued by 1990.

**B.     The Proposed Alabama Complaint Does Not Constitute A
Judicial Admission That the DGS Claims Accrued by 1990**

28.     Since the Proposed Alabama Complaint does not support a conclusion that the DGS Claims accrued by 1990, this Court need not address Debtors' argument that the Proposed Alabama Complaint constitutes a *binding* judicial admission that the DGS Claims accrued by 1990. See Motion, at 5-6. The doctrine of judicial admission is, in any event, inapplicable here. See Migliori v. Boeing North American, Inc., 97 F. Supp. 2d 1001, 1009 n.9 (C.D. Ca. 2000)

11

(pleadings from a prior litigation can be used to counter allegations, "but are not judicial admissions binding upon the litigants in a different litigation").

29.     In asbestos-related property damage litigation in particular, the doctrine of judicial admission is relevant only when a party makes factual statements or allegations about *specific* buildings. See City of San Diego, 30 Cal. App. 4th at 583 (previous allegation that one thousand buildings sustained appreciable harm prior to the applicable accrual date precluded plaintiff from later arguing that its claims were not barred by the statute of limitations); see also California Sansome, 55 F.3d at 1403,1407 (plaintiff's previous allegation that two of its buildings were contaminated with asbestos as of an unspecified date did not constitute an admission that the cause of action was time-barred).

30.     Here, the Proposed Alabama Complaint does not identify *any* properties damaged by Debtors' asbestos-containing materials, let alone the sixteen buildings the subject of the DGS Claims. Nonetheless, Debtors attempt to circumvent this hurdle by arguing that the Proposed Alabama Complaint "purported to include all 'state-owned buildings and facilities,'" see Motion, at 3. No citations to the Proposed Alabama Complaint, accompanying petition or any other documentation, however, is presented to support this position.

## C.    The Proposed Alabama Complaint Does Not Warrant the Application of Judicial Estoppel

31.     Debtors further argue that judicial estoppel precludes Claimant from asserting that the sixteen buildings covered by its proofs of claim sustained asbestos-related property damage after 1990. Debtors, however, have failed to satisfy any of the requirements necessary to invoke this doctrine.

32.     Judicial estoppel "is an equitable doctrine that prevents a party from asserting inconsistent claims in different legal proceedings." Mintze v. American Gen. Fin. Serv., Inc.,

434 F.3d 222, 232 (3d Cir. 2006) (internal citations omitted). "Its purpose is to protect the judicial process by preventing parties from deliberately changing positions according to the exigencies of the moment." In re Armstrong World Indus., 432 F.3d 507, 517 (3d Cir. 2005) (internal citations and quotation marks omitted). Before a court may apply judicial estoppel, "three requirements must be met." Montrose Med. Group Participating Savings Plan v. Bulger, 243 F.3d 773, 779 (3d Cir. 2001). First, the party's later position must be "clearly inconsistent" with its earlier position. United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005) (quoting New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001)); Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001). Second, the party must have succeeded in persuading a court to accept its earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." Pelullo, 399 F.3d at 222-23; Hamilton, 270 F.3d at 782-83. Third, if not estopped, the party asserting the inconsistent position would "derive an unfair advantage or impose an unfair detriment on the opposing party." Pelullo, 339 F.3d at 223; Hamilton, 270 F.3d at 783.

33.     Debtors have not introduced any evidence to support their contention that the buildings subject to the DGS Claims were included in the Proposed Alabama Complaint. Claimant's position that it is entitled to recover property damages from Debtors for buildings that Claimant learned in 2003 were contaminated with Debtors' asbestos is not "clearly inconsistent" with the states' claim in the Proposed Alabama Complaint that they were entitled under equitable principles of restitution to be reimbursed for the costs of asbestos abatement. See Proposed Alabama Complaint, at pp. 7-8 (A-B).

34.     Even assuming a "clearly inconsistent" position between the DGS Claims in this proceeding and the claim in the Proposed Alabama Complaint, the states' position was never

adopted by the U.S. Supreme Court or any other court. Indeed, as Debtors acknowledge, the

Supreme Court denied Claimants leave to file that complaint. See <u>Alabama, et al. v. W.R. Grace</u>

<u>& Co., et al.</u>, 495 U.S. 928 (1990).

35.     Finally, Debtors do not allege, much less demonstrate, that the Proposed Alabama

Complaint somehow allowed Claimant to derive an "unfair advantage" or impose an "unfair

detriment" on Debtors.

**D.     Claimant's Subjective Beliefs in 1990 Are Immaterial**
        **to When the DGS Claims Accrued Under State Law**

36.     Even if it were assumed, for argument's sake, that the sixteen buildings the

subject of the DGS Claims were included in the Proposed Alabama Complaint and that Claimant

"could not have properly sought leave to file the [previous] lawsuit unless [it believed] at the

time of filing . . . that [it] had already sustained the compensable injuries [it] alleged," see

Motion, at 6, the DGS Claims would not be time-barred.

37.     A party's subjective belief that it possesses cognizable property damage claims

does not alter applicable state law for accrual purposes. A statute of limitations will only

commence after all elements that comprise the cause of action have occurred. <u>SFUSD</u>, 37 Cal.

App. 4th at 1335. Thus, for this Court to accept that the Claimant's sixteen asbestos property

damage claims accrued by 1990, Debtors must demonstrate that Claimant's sixteen buildings

sustained appreciable harm by 1990. Debtors have failed to make that showing. Debtors cannot

simply rely on Claimant's purported subjective belief that its claims had accrued on or before the

date a petition was filed for leave to file the Proposed Alabama Complaint in the U.S. Supreme

Court.

38.     Even assuming that Claimant intended that the sixteen buildings identified in the

DGS Claims were to be included in the Proposed Alabama Complaint, no allegations in or

14

documentation attached to the proposed pleading sufficiently addresses the appreciable harm

element.  Unlike in City of San Diego, upon which Debtors rely to argue that Claimant should be

bound by their previous complaint allegations, Claimant is not alleged to have conducted an

investigation of asbestos-containing materials in its buildings before submitting the petition for

leave to file the Proposed Alabama Complaint.  See City of San Diego, 30 Cal. App. 4th at 579

(plaintiff evaluated asbestos products manufactured by defendants before filing lawsuit).  Nor is

it alleged that Claimant tested the air in any of the sixteen buildings by 1990 to determine

whether asbestos fibers had been released in the air.  Id. at 580 (air-sampling conducted in some

of the buildings disclosed that asbestos levels fell below accepted health standards).

## II.

### DEBTORS HAVE NOT DEMONSTRATED THAT ALL OF THE ELEMENTS FOR ANY OF THE DGS CLAIMS ACCRUED BY 1990

A.    Debtors Have Failed to Sustain Its Burden of Proving That the DGS Claims Are Time-Barred

39.    Under F.R.B.P. 3001(f), "[a] proof of claim . . . constitute[s] prima facie evidence

of the validity and the amount of the claim."  A party objecting to a claim bears the initial burden

of introducing evidence to negate the claim's presumptive validity.  In re Allegheny Int'l, Inc. v.

Snyder, 954 F.2d 167, 173-74 (3d Cir. 1992).  This burden will revert back to the claimant only if

the objector produces evidence to "refute at least one of the allegations that is essential to the

claim's legal sufficiency."  Id.

40.    If the statute of limitations, or any other affirmative defense, is raised in an

objection to a proof of claim, the party invoking the defense carries the burden of establishing its

elements.  See In re Admetric Biochem, Inc., 284 B.R. 1, 16 (Bankr. D. Ma. 2002)(the objector

"has the burden of proving any affirmative defenses to [a] claim, such as . . . the statute of

limitations"); see also In the Matter of United States Lines, Inc. v. United States Lines, Inc., 2006

U.S. Dist. LEXIS 37114, at **15-17 (S.D.N.Y. June 7, 2006)(objecting party shoulders the initial burden of disproving the timeliness of a proof of claim).

41.    Because Debtors, in both their Fifteenth Omnibus Objection and the Motion, have invoked the statute of limitations as an affirmative defense to the DGS Claims, they shoulder the burden of proving that the DGS Claims are time-barred.

B.          **Under Applicable California Law, the DGS Claims are Timely**

42.    As already discussed, the statute of limitations under California law on Claimant's property damage claims does not commence "until all elements of the cause of action . . . have occurred." SFUSD, 37 Cal. App. 4th at 1335.  In asbestos-related property damage cases, "the mere presence of asbestos constitutes only a threat of future of harm.  Contamination by friable asbestos is the physical injury and the actual, appreciable harm that must exist before a property owner's strict liability or tort cause of action against an asbestos manufacturer accrues and the limitation period commences." Id.; see 3250 Wilshire Boulevard Bldg., 1989 U.S. Dist. LEXIS 17287, at **10-12 (concluding that the mere presence of asbestos-containing friable material in a building and the risk of possible future release of asbestos are not legally compensable claims; plaintiff must assert that the asbestos material contaminated the air by releasing asbestos fibers). Moreover, "[a] defendant raising the statute of limitations as an affirmative defense has the burden of proving the action is time barred." California Sansome, 55 F.3d at 1406. Accordingly, to succeed in its Motion that Claimant's asbestos property damage claims are time-barred, Debtors must show that all the elements establishing the Claimant's cause of action, including appreciable harm, occurred prior occurred on or before 1990.

43.    The factual question of when the harm occurred "must be resolved on a building-by-building basis." SFUSD, 37 Cal. App. 4th at 1336 n.6.  In SFUSD, the Court found that

because "the trial court erroneously focused on when [plaintiff] was put on notice that its [buildings] contained potentially dangerous asbestos," the case should be remanded for a determination of when appreciable harm occurred at *each* building or when plaintiff should reasonably have discovered that appreciable harm occurred at *each* building. Id. at 1336. In other words, a plaintiff's awareness that a number of unspecified buildings potentially contain dangerous asbestos is insufficient, without more, to establish appreciable harm and trigger the running of the statute of limitations.

44.    Debtors shoulder the burden of proving that appreciable harm occurred in each of the sixteen buildings prior to 1990. The introduction of evidence regarding buildings other than those specifically named in the DGS Claims in no way satisfies this burden. Debtors' Motion fails to provide any such support, instead relying purely upon their own blanket, conclusory statements that Claimant was, or should have been, aware that Debtors' asbestos products damaged each building by 1990. Accordingly, Debtors cannot establish, as California law requires, that the sixteen buildings identified in the DGS Claims sustained appreciable harm outside of the three-year statute of limitations period.

## III.

## CONCLUSION

For the foregoing reasons and such other reasons presented by other claimants which are pertinent to the DGS Opposition, Claimant State of California, Department of General Services respectfully requests that the Court deny the Motion in all respects.

Dated:    New York, New York
          March 19, 2007

                              **HAHN & HESSEN LLP**
                              Counsel for Claimant
                              State of California, Dep't of General Services

                              By: _____
                                  Steven J. Mandelsberg, Esq.
                                  John P. McCahey, Esq.
                                  Christina J. Kang, Esq.
                                  Alison M. Croessmann, Esq.

                              488 Madison Avenue
                              New York, New York 10022
                              (212) 478-7200

TO:

Katherine Phillips, Esq.
Janet S. Baer, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601
Co-Counsel for the Debtors
(via E-mail and First Class Mail)

David Carickhoff, Jr., Esq.
Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young, Jones & Weintraub P.C.
919 North Market Street, 16th Floor
Wilmington, Delaware 19899-8705
Co-Counsel for the Debtors
(via E-mail and First Class Mail)

Douglas E. Cameron, Esq.
Traci S. Rea, Esq.
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219
Co-Counsel for Debtors
(via E-mail and First Class Mail)

Scott Baena, Esq.
Jay M. Sakalo, Esq.
Bilzin Sumberg Baena Price & Axelrod LLP
200 S. Biscayne Blvd., Ste. 2500
Miami, Florida 33131-5340
Counsel for PD Committee
(Via E-mail and First Class Mail)

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: W.R. GRACE & CO., et al.,<br><br>      Debtors. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Chapter 11
Case No. 01-01139 (JKF)
(Jointly Administered)

### NOTICE OF SERVICE

PLEASE TAKE NOTICE that on March 19, 2007, counsel for Claimant State of California, Department of General Services caused copies of *Claimant State of California, Department of General Services, Opposition to Debtors' Motion for an Order Pursuant to F.R.B.P. 7056 Disallowing and Expunging Claimant's Sixteen (16) Claims Among One Hundred Nine (109) California Asbestos Property Claims Allegedly Barred by the Statute of Limitations* and *Declaration of Claimant's Counsel Steven J. Mandelsberg in Opposition to Debtor's Motion* to be served on the following in the manner indicated:

Katherine Phillips, Esq.
Janet S. Baer, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601
Co-Counsel for the Debtors
*Via E-mail and First Class Mail*

David Carickhoff, Jr., Esq.
Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young, Jones &
Weintraub P.C.
919 North Market Street, 16th Floor
Wilmington, Delaware 19899-8705
Co-Counsel for the Debtors
*Via E-mail and First Class Mail*

Douglas E. Cameron, Esq.
Traci S. Rea, Esq.
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219
Co-Counsel for Debtors
*Via E-mail and First Class Mail*

Scott Baena, Esq.
Jay M. Sakalo, Esq.
Bilzin Sumberg Baena Price & Axelrod LLP
200 S. Biscayne Blvd., Ste. 2500
Miami, Florida 33131-5340
Counsel for PD Committee
*Via E-mail and First Class Mail*

Dated: March 19, 2007

**HAHN & HESSEN LLP**
Counsel for Claimant
State of California, Dep't of General Services

By: Steven J. Mandelsberg

488 Madison Avenue
New York, New York 10022
(212) 478-7200

2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:  W.R. GRACE & CO., et al.,

     Debtors.

)
)
)
)
)
)
)
)

Chapter 11
Case No. 01-01139 (JKF)
(Jointly Administered)

### CERTIFICATE OF SERVICE

  I, Alison M. Croessmann, certify that on March 19, 2007, I caused copies of *Claimant State of California, Department of General Services, Opposition to Debtors' Motion for an Order Pursuant to F.R.B.P. 7056 Disallowing and Expunging Claimant's Sixteen (16) Claims Among One Hundred Nine (109) California Asbestos Property Claims Allegedly Barred by the Statute of Limitations* and *Declaration of Claimant's Counsel Steven J. Mandelsberg in Opposition to Debtor's Motion* to be served on the following in the manner indicated:

Katherine Phillips, Esq.
Janet S. Baer, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601
Co-Counsel for the Debtors
*Via E-mail and First Class Mail*

David Carickhoff, Jr., Esq.
Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young, Jones &
Weintraub P.C.
919 North Market Street, 16th Floor
Wilmington, Delaware 19899-8705
Co-Counsel for the Debtors
*Via E-mail and First Class Mail*

Douglas E. Cameron, Esq.
Traci S. Rea, Esq.
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219
Co-Counsel for Debtors
*Via E-mail and First Class Mail*

Scott Baena, Esq.
Jay M. Sakalo, Esq.
Bilzin Sumberg Baena Price & Axelrod LLP
200 S. Biscayne Blvd., Ste. 2500
Miami, Florida 33131-5340
Counsel for PD Committee
*Via E-mail and First Class Mail*

             _____
              Alison M. Croessmann