IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Related Docket Nos.: 14150, 14763 |

Response Date: April 4, 2007, 5:00 p.m.
Hearing Date: April 11, 2007, 1:30 p.m.[1]

## MOTION TO COMPEL COMPLIANCE WITH SUPPLEMENTAL ORDER REGARDING MOTIONS TO COMPEL CLAIMANTS TO RESPOND TO THE W.R. GRACE & CO. ASBESTOS PERSONAL INJURY QUESTIONNAIRE

On December 22, 2006, this Court issued an Order requiring the production of documents

that were being withheld on the grounds of a consulting expert privilege. On January 23, 2007,

this Court entertained a motion for reconsideration of that ruling, denied that motion, and again

ordered the production of documents being withheld. Still today, almost three months since the

Court's original ruling and two months after the Court's affirmance of that ruling, plaintiffs' law

firms have still failed to produce those documents and even refuse to provide logs describing

what documents they are withholding.[2]

By failing to comply with the Court's Order, by wrongfully withholding documents and

by failing to articulate any justification for that refusal, the plaintiffs' law firms have openly

flouted a duly-entered order of this Court. They hold the estimation process hostage. The time

---

[1] These dates are consistent with the Order Regarding Amended Case Management Order For The Estimation Of Asbestos Personal Injury Liabilities, submitted on a certification of counsel on March 13, 2007 (Docket No. 14853).

[2] The law firms with respect to whom Grace brings the instant motion are: Baron & Budd, Silber Pearlman, LeBlanc & Waddell, Edward O. Moody, Foster & Sear, Motley Rice, Williams Bailey, Cooney & Conway, Provost Umphrey, The Law Offices of Peter G. Angelos, Reaud Morgan & Quinn, Maples & Lomax, Weitz & Luxenburg, Early Ludwick & Sweeney, Kazan McLain, Waters & Kraus, Hobin Shingler, Paul Hanley & Harley, Harowitz & Tigerman, the Wartnick Law Firm, the Law Offices of Alwyn H. Luckey, Kelley & Ferraro, and the Ferraro Law Firm.

has come to require the plaintiffs' law firms -- once and for all -- to complete the supplementation of their Questionnaires and to enable Grace's medical and estimation experts to analyze the complete universe of Court-ordered data. Critically, the failure to comply is part of plaintiffs' counsel's continuing pattern of abusing the invocation of privilege in a concerted effort to prevent Grace from ascertaining the impact of the B-reading and screening process on the value of the claims generated through that process.

## BACKGROUND

A.    **Plaintiffs' Law Firms' Pattern and Practice of Obstructing Grace's Discovery Relating to Improper and Unreliable Screening Practices -- The W.R. Grace Personal Injury Questionnaire.**

The Court first ordered plaintiffs' law firms to produce medical documents that supported or contradicted the Claimants' asbestos-related disease diagnoses in August 2005 when it approved the W.R. Grace Asbestos Personal Injury Questionnaire. *See W.R. Grace Asbestos Personal Injury Questionnaire* at iv ("[T]his Questionnaire must be accompanied by copies ... of any and all documents ... that (a) support or conflict with your diagnosis ...."); 7/19/05 Hr'g Tr. at 218. Rather than comply with this Court-ordered discovery, many Claimants objected, asserting a purported "consulting expert privilege." After extensive briefing, the Court overruled this objection in part, specifically finding that:

- "[P]hysicians, B-readers, or other medical professionals who first 'screened' a Claimant (that is, prior to the time that any other diagnosis of an asbestos-related disease or injury was sought or known) are not Consulting Experts;"

- "[P]hysicians, B-readers and other medical professionals who examined a Claimant prior to the time an attorney-client relationship was established between the Claimant and the lawyer or law firm which asserts the privilege are not Consulting Experts;" and,

- "As to any information requested regarding those who are not Consulting Experts, *no privilege applies* and the responsive information with regard to such professionals *shall be provided* by Claimants."

2

*See* 12/22/06 Supplemental Order Regarding Motions to Compel Claimants to Respond to the W.R. Grace & Co. Asbestos Personal Injury Questionnaire ("Consulting Expert Order") at ¶ 1 (Docket No. 14150) (emphasis added).

Rather than comply with the Court's clear order, certain plaintiffs' firms moved for reconsideration, despite not meeting the proper legal standard for doing so. *See* 1/2/07 Motion to Alter or Amend Consulting Expert Order (Docket No. 14203); 1/5/07 Debtors' Request for Expedited Consideration and Summary Denial of Motion to Reconsider at 1 (Docket No. 14237). On January 23, 2007, the Court denied the motion, but agreed that documents produced pursuant to the Consulting Expert Order would be kept confidential by the parties, their consultants and experts and not used for purposes outside the Bankruptcy. *See* 1/23/07 Hr'g Tr. at 89-92; 3/6/07 Order on Motion to Alter or Amend Consulting Expert Order (Docket No. 14763).

Despite the Court's affirmance of the Consulting Expert Order, and since that time, the plaintiffs' firms who are the subject of this motion do not appear to have provided *any* documents that fall within the scope of the Order. For instance, since the Court's affirmance of the original Order, no law firm provided additional B-readings, x-ray reports, ILO forms, or other documents that would fall into the categories defined by the Court.[3]

Concerned with the apparent lack of compliance with the Consulting Expert Order, Grace attempted to determine whether or not the plaintiffs' law firms were continuing to withhold documents that were: (1) the result of the Claimant's first "screening"; or (2) the result of an examination prior to the time the attorney-client relationship was formed between the Claimant

---

[3] On Monday, March 19, 2007, after the time within which to do so had expired, three law firms, Baron & Budd, Silber Pearlman, and LeBlanc & Waddell, filed an untimely notice of appeal and a motion that this Court stay its order as to them while the appeal is pending. Grace believes, and will address in separate briefing, that this appeal was inappropriate because the Consulting Expert Order, as a discovery order, is non-final and, therefore, not appealable as a matter of right. The appealing firms have not sought leave of this Court to appeal the Consulting Expert Order. Accordingly, their continued non-compliance is unjustified and the stay is unwarranted. No other firm subject to this motion has timely requested leave to appeal the Consulting Expert Order.

3

and the lawyer or law firm asserting the privilege. *See* B. Harding 2/22/07 Ltr. to Counsel (attached as Ex. 1). Grace asked plaintiffs' law firms to provide, within 30 days, a log of the documents that they were continuing to withhold on privilege grounds. *Id.* Grace further asked the plaintiffs' law firms to identify any objection to such a log within seven days.

In response to Grace's request, a number of plaintiffs' law firms certified that they were not withholding documents required to be produced pursuant to the Consulting Expert Order. *See* 3/6/07 Hartley O'Brien Ltr.; 2/23/07 Wilentz Goldman & Spitzer Ltr.; 2/26/07 Odom & Elliot Ltr.; 3/5/07 David Nutt & Assocs. Ltr.; 3/1/07 Hawkins & Norris Ltr. (collectively attached as Ex. 2). However, other plaintiffs' law firms objected to producing a log and refused to confirm whether they were withholding documents that the Court had required them to produce, or to justify such a refusal. *See* 2/28/07 Law Offices of Peter G. Angelos Ltr.; 2/28/07 Provost Umphrey Ltr.; 2/27/07 Reaud, Morgan & Quinn Ltr.; 3/9/07 Maples & Lomax Ltr.; 2/28/07 Foster & Sear Ltr.; 3/2/07 N. Ramsey Ltr. (collectively attached as Ex. 3).[4] To date, only a single law firm, Bilbrey & Hylla, has provided a list of Claimants whose B-readings it was refusing to provide.[5] Numerous other firms, most notably Kelley & Ferraro, Ferraro & Associates, Motley Rice, Baron & Budd, Silber Pearlman, and LeBlanc & Waddell -- who collectively represent approximately 60,000 Claimants who have submitted proofs of claims and Questionnaires -- simply have not responded to Grace's request.

**B.      Plaintiffs' Law Firms' Pattern and Practice of Obstructing Grace's Discovery Relating to Improper and Unreliable Screening Practices -- The Subpoena Issued to Dr. James W. Ballard.**

---

[4] Ms. Ramsey responded on behalf of the following law firms: Waters & Kraus; Early Ludwick & Sweeney; Kazan McLain; Harowitz & Tigerman; Wise & Julian, Hobin Shingler; Paul Hanley & Harley; Rose Klien & Marias; Clapper Patti.

[5] Notably, Bilbrey & Hylla did not file either Questionnaires or proofs of claims on behalf of the Claimants on its privilege log. Indeed, out of the over 25 individuals listed by Bilbrey & Hylla, only one was a Claimant for whom a Questionnaire was submitted, and that Questionnaire was submitted by the Law Offices of Alwyn H. Luckey.

4

The lack of compliance here demonstrates a pattern of abusing the invocation of privilege engaged in by the plaintiffs' firms to prevent Grace from obtaining evidence regarding the medical bases for their claims. Indeed, this is not the first time that the plaintiffs' law firms have speciously asserted a claim of consulting expert privilege in order to delay or to prevent Grace from obtaining information relating to the screening process. Nor is it the first time that the plaintiffs' law firms have repeatedly refused to provide a proper privilege log to enable Grace and the courts to evaluate the substance of their claims.

In December 2005, Grace issued a subpoena out of the Northern District of Alabama to Dr. James W. Ballard seeking the production of documents related to Dr. Ballard's screening and diagnosis of Grace Claimants. Dr. Ballard moved to quash on the grounds that being required to produce documents would violate his Fifth Amendment privilege against self-incrimination. *See* 12/29/05 Motion to Quash Subpoena Issued to Dr. James W. Ballard (attached as Ex. 4).

At the hearing concerning the motion to quash, a single law firm, the Environmental Litigation Group ("ELG"), objected to Dr. Ballard's production of documents on the grounds that Dr. Ballard was a consulting expert for the Environmental Litigation Group. ELG had not moved to quash the Grace subpoena (although it had moved to quash a similar subpoena issued in the *In re Asbestos Products Liability Litigation*, MDL 875). The court ordered the production of documents over Dr. Ballard's objection, but allowed law firms who previously engaged Dr. Ballard an opportunity to raise objections based on the consulting expert privilege. Accordingly, the court set up a detailed schedule and procedure by which the law firms could lodge their consulting expert privilege claims. *See* 5/4/06 Order (attached as Ex. 5). The court required law firms making a claim of privilege to produce "a log that makes the claim of work product protection expressly and describes the nature of each document, communication or thing

5

withheld from production, in compliance with Federal Rules of Civil Procedure 26(b)(5) and 45(d)(2)." *Id.* at ¶ 8.

Litigation concerning the consulting expert privilege spanned almost six months from the time the court ordered the production of the privilege logs. On at least two occasions the Special Master had to set forth specific guidelines as to what constituted a sufficiently-detailed privilege log, as the plaintiffs' firms involved continued to rest on conclusory allegations of privilege. *See* J. Roberts 6/14/06 Ltr. to W. Gresham and B. Harding (attached as Ex. 6); 10/19/2006 Special Master's Guidance to Counsel Concerning Privilege Logs, In Camera Review of Documents, and Withdrawal of Objections (attached as Exhibit 7).

Ultimately, with the exception of a single firm, ELG, all firms either withdrew their claims on the eve of being required to produce privilege logs in compliance with the Court's May 4, 2006 Order or simply did not provide a log at all, causing the Special Master to deem their privilege claims waived. These firms include three firms subject to the present motion: Luckey & Mullins (a/k/a the Law Offices of Alwyn H. Luckey), Motley Rice, and Morris Sakalarios & Blackwell. And ELG ultimately withdrew 104 of its original 109 privilege claims, leaving only *five* individual documents at issue.[6]

---

[6] Similarly, the plaintiffs' law firms unsuccessfully attempted to interfere with the ability of Grace to obtain testimony and documents from another screening doctor. In February 2006, Grace served a subpoena seeking the production of documents by and a deposition of Dr. Philip H. Lucas, another screening physician. No formal objection or motion to quash the subpoena was filed by any plaintiffs' firm. After many months of negotiations with counsel for Dr. Lucas, Grace and Dr. Lucas agreed that Dr. Lucas's deposition would go forward. To facilitate this process, Dr. Lucas and Grace jointly petitioned for an order stating that Dr. Lucas's testimony was not covered by the Health Insurance Portability and Accountability Act ("HIPAA"). *See* 2/8/07 Agreed Motion for HIPAA Order (Docket No. 14524). It was not until this agreed motion was filed, almost a full year after service of the original subpoena, that any objection was lodged. The Official Committee of Asbestos Personal Injury Claimants ("PI Committee") and Baron & Budd both objected to the entry of the Order. The PI Committee's objection was based solely on whether proper notice had been given to Claimants potentially affected by Dr. Lucas's testimony, while Baron & Budd objected on the grounds that Dr. Lucas was covered by HIPAA and therefore should not be required to disclose information concerning his screening practice. The Court overruled both objections, finding that Grace was not the party obligated to provide notice under HIPAA and that Dr. Lucas's testimony and production of documents fall within the "litigation exception" to HIPAA. The Court found that the objections posed no valid basis

6

As a result of this pattern of abuse, Grace continues to be stymied in its attempts to demonstrate the unreliability of the screening process as it relates to the Grace Claimants. The concerted efforts of these plaintiffs' law firms have required an enormous expenditure of time and the resources of the estate to overcome these tactics and should no longer be tolerated.

## ARGUMENT

I. **THERE IS NO JUSTIFICATION FOR THE CLAIMANTS' CONTINUED REFUSAL TO PRODUCE DOCUMENTS SUBJECT TO THE CONSULTING EXPERT ORDER AND IMMEDIATE COMPLIANCE SHOULD BE REQUIRED.**

A. **The Court Should Require Immediate Compliance With the Consulting Expert Order.**

The plaintiffs' law firms' continued refusal to produce documents subject to the Consulting Expert Order is without any justification. Although the plaintiffs' law firms have not provided the documents required by the Order, with the exception of three firms, they have brought no motion seeking a stay or allowing for a delay in compliance. Instead, the firms have unilaterally decided that compliance with the Court's Order is not necessary. A party cannot simply ignore a court's order on a motion to compel. *See, e.g., Prof'l Secs. Corp. v. Nat'l Royal Corp.*, 1991 WL 276072, at *4 (E.D. Pa. Dec. 20, 1991) (finding party in contempt and assessing sanctions for unexplained and unjustified failure to comply with order on motion to compel); *see also Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 914 F. Supp. 1172, 1179-80 (E.D. Pa. 1996) (same).

The *Massachusetts School of Law* case is instructive. In that case, the defendants moved to compel the production of certain documents that, at the direction of the plaintiffs, a witness who had acted as a consultant for the plaintiffs refused to produce on the grounds of attorney-client privilege. 914 F. Supp. at 1174. The court overruled the objection and granted the motion

---

for withholding the documents and testimony at issue. *See* 2/20/07 Hr'g Tr. at 18-19. Notably, the Court found that the PI Committee's objection was "close to a bad faith objection." *Id.* at 21.

7

to compel. *Id.* The plaintiffs and witness moved for reconsideration, and the court denied the motion. *Id.* When the witness, at the direction of the plaintiffs, continued to withhold the documents subject to the court's order, defendants sought sanctions against the plaintiffs, the witness and counsel. *Id.* The witness also failed to provide a privilege log describing the documents being withheld. *Id.* at 1178-1179. The court found that, despite myriad excuses as to why compliance with the order compelling the production of documents was not required, the continued non-compliance was "inexcusable" and that sanctions against the plaintiffs' counsel were warranted. *Id.* at 1179.

As the Court is well-aware, Grace's position in this Bankruptcy has been that the B-reading process has been abused and is responsible for the generation of tens of thousands of claims. Grace already has developed substantial evidence that the screening process is unreliable and fails to meet basic medical standards. What remains to be determined, however, is the impact of the B-reading and screening process abuses on the claims at issue in this case. The only way that Grace can obtain that data is from the Claimants.

While the Claimants present the B-reading data as unequivocally supporting their claims, they are simultaneously concealing and improperly withholding inconsistent or conflicting B-reads, thereby effectively preventing Grace from showing the impact of the screening and B-reading abuse on the actual claims population. The refusal to provide discovery, including the improper and unsupported assertions of privilege, serves only to delay the litigation and thereby delay the estimation trial. Yet, in the same breath, the plaintiffs' PI Committee presses this Court for compressed schedules, short deadlines, and the premature termination of exclusivity. The plaintiffs' law firms, continuing their delay tactics, have provided no justification for their

8

failure to comply with the Consulting Expert Order. Accordingly, the plaintiffs' law firms should be required to comply immediately with the Consulting Expert Order.

**B.      The Plaintiffs' Law Firms Cannot Justify Their Failure to Comply with the Consulting Expert Order By Raising New Objections.**

To the extent that the plaintiffs' law firms purport to justify their failure to comply with the Consulting Expert Order based on new and heretofore unarticulated objections to the documents' production, those objections must fail. It is a bedrock legal tenet that a party must articulate the bases for its objections or the objections are waived. *See, e.g., Eidukonis v. Southeastern Penn. Transp. Auth.*, No. 86-5142, 1987 WL 16321, at *5 (E.D. Pa. Aug. 27, 1987) (finding that objections raised after motion to compel was resolved were "clearly afterthoughts which were waived" by the party's failure to raise them in its opposition to the motion to compel); *see also Puricelli v. Borough of Morrisville,* 136 F.R.D. 393, 396 (E.D. Pa. 1991) ("General objections without specific support may result in the waiver of the objections.") (citations omitted). It is equally fundamental that:

> [A] lawyer does not act in good faith when he tries to justify ignoring discovery requests and court orders with an objection which, to that point, he has kept to himself. Discovery is not poker where the cards are turned up one at a time.

*Mass. Sch. of Law*, 914 F. Supp. at 1178; *see also id.* at 1177 ("It is not good faith for a lawyer to frustrate discovery requests and court orders with successive objections like a magician pulling another and another and then still another rabbit out of a hat."). Having stated no other grounds for withholding the documents subject to the Consulting Expert Order, plaintiffs' law firms are barred from inventing *post hoc* justifications for that failure. The Court should deem any newly-raised objections to be waived.

## II.    THE PLAINTIFFS' LAW FIRMS MUST PROVIDE A PRIVILEGE LOG IDENTIFYING THE DOCUMENTS BEING WITHHELD.

Not only have the plaintiffs' law firms failed to provide the documents, but, remarkably, they even refuse to provide a privilege log as required by the Federal Rules. Absent agreement, when a party makes a claim of privilege, that party bears the burden of demonstrating that the privilege, in fact, applies. *See In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 187 (D.N.J. 2003) ("The party asserting the privilege bears the burden of establishing those facts that are the essential elements of the privileged relationship."); *Mass. Sch. of Law*, 914 F. Supp. at 1178 (E.D. Pa. 1996) ("[A] party who alleges privilege as a reason for not complying with a [discovery request] has the burden of proof to assert *specific facts* relating to specific documents [or communications] and cannot rely on conclusory statements.") (emphasis added). This is done through a privilege log.

Instead of meeting that burden, the plaintiffs' law firms continue to rely on vague, "because we said so" allegations that these documents are privileged. The Court repeatedly has rejected this approach and has set forth clear guidelines as to what documents fall outside the scope of the privilege. *See* 12/5/06 Hr'g Tr. at 137-38 ("[The Court]: I think the title that the law firm puts on somebody is not determinative .... You can't by virtue of putting a title on something, say that just because you put that title on it, that that's the fact of what took place."); *see also* Consulting Expert Order at ¶ 1. With those guidelines in place, the burden is on the *plaintiffs' law firms* -- who continue to withhold the documents -- to demonstrate that *each and every* document being withheld does not fall within the scope of the Consulting Expert Order. It is inconceivable that the firms who fought so hard to prevent disclosure of the screening documents simply have no documents that fall within the scope of the Court's order.

10

As such, a privilege log must be supplied in order to allow the Court to determine whether, in fact, the withheld documents fall within the scope of the Order, and must be produced. Numerous firms claim that a privilege log is not required "under the federal rules." *See* 3/9/07 Maples & Lomax Ltr.; 2/28/07 Provost Umphrey Ltr.; 3/2/07 N. Ramsey Ltr. This is not so. The privilege log requirement is explicitly stated in Federal Rule of Civil Procedure 26(b)(5):

> When a party withholds information ... by claiming that it is privileged ... the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Fed. R. Civ. P. 26(b)(5); *see also Mass. Sch. of Law*, 914 F. Supp. at 1179 ("A person who fails to provide adequate information about the privilege to the party seeking information may be ***held in contempt or be subjected to sanctions***.") (emphasis added) (citations omitted). District Courts in the Third Circuit have implemented this Rule, requiring that "the description of each document and its contents must be sufficiently detailed to allow the court to determine whether the elements of [the asserted] privilege ... have been established. Failing this, ***the documents must be produced***." *Smithkline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 475 (E.D. Pa. 2005) (emphasis added) (citations omitted).

While there is no one-size-fits-all rule for what must be contained in a privilege log, here, the Court should require sufficient information to determine whether the withheld documents must be produced under the Consulting Expert Order. In other words, whether the non-produced documents are:

- Documents created by "physicians, B-readers, or other medical professionals who first "screened" a Claimant (that is, prior to the time that any other diagnosis of an asbestos-related disease or injury was sought or known);" or

- Documents created by "physicians, B-readers and other medical professionals who examined a Claimant prior to the time an attorney-client relationship was established between the Claimant and the lawyer or law firm which asserts the privilege are not Consulting Experts."

*See* Consulting Expert Order at ¶ 1.  This is consistent with the privilege log requirements set forth by the Special Master in the Northern District of Alabama regarding Dr. Ballard's production.  *See* Exs. 6 and 7.  As the court found with respect to Dr. Ballard's documents, without this critical information, it is impossible for a court to determine whether the plaintiffs' law firms' refusal to provide the documents is justified.  Indeed, when a party fails to provide a detailed privilege log, it "waive[s] its right later to question the specificity of ... motions to compel, and [the court's] orders on those motions." *Mass. Sch. of Law*, 914 F. Supp. at 1179.

In this case it is critically important to provide the log, as the Court already has overruled the privilege claim.  Consequently, the Court must have some means of testing whether the firms have complied with Consulting Expert Order against a backdrop where it appears they clearly have not.  To the extent that the firms allege that the documents being withheld do not fall within the terms of the Consulting Expert Order -- and, thus, continue to be protected by a consulting expert privilege -- they still have not met their burden of demonstrating:  (1) that the documents do not fall within the scope of the Consulting Expert Order; or (2) that any consulting expert privilege applies.  Only the production of adequate privilege logs can allow the Court to make this determination.

What is more, without a privilege log, the Court is deprived of the information necessary to determine what sanction is appropriate for this unjustified failure.  This includes what, if any, adverse inferences may be drawn based on the nature of the documents improperly withheld or whether preclusive sanctions are warranted.  *See* Fed. R. Civ. P. 37(b) (appropriate discovery sanctions include "an order that ... designated facts shall be taken to be established for the

12

purposes of the action in accordance with the claim of the party obtaining the order" or an order dismissing the claim of the disobedient party); Fed. R. Bankr. P. 7037 (incorporating Fed. R. Civ. P. 37).

As is the case with the failure to produce documents subject to the Consulting Expert Order itself, the plaintiffs' law firms' failure to provide privilege logs is wholly unjustified. The failure to provide such logs contributes to additional and excessive delay by plaintiffs' law firms whose clear and unwavering goal has been to run out the clock and to prevent Grace from obtaining the discovery its experts need in aid of their estimation analysis. The Court must require that the plaintiffs' law firms immediately provide privilege logs containing sufficient detail to allow the Court to determine whether the withheld documents fall within the scope of the Consulting Expert Order, and if so what appropriate relief should be ordered for the plaintiffs' law firms' failure to comply.

## CONCLUSION

The plaintiffs' law firms' continued failure to comply with the Consulting Expert Order is yet another act of gamesmanship effected through the abuse of a privilege assertion. Such abuses are improper and, consequently, Grace requests that the Court order the plaintiffs' law firms to which this motion is directed to produce all documents that are subject to the Consulting Expert Order to the Court's Claims Agent, Rust Consulting, Inc., within five calendar days. To the extent that plaintiffs' law firms are continuing to withhold any documents, Grace asks the Court to require plaintiffs' law firms, within the same five calendar days, to provide adequate and sufficiently-detailed privilege logs describing *each and every* document being withheld, the grounds for withholding the document, and other information sufficient to allow the Court to determine whether the documents are within the scope of the Consulting Expert Order. Grace

13

further requests that the Court schedule a hearing to be held on the first available date after the production of the privilege logs to determine whether those documents must be produced.

To the extent that plaintiffs' law firms continue to refuse to comply with the Consulting Expert Order or to provide adequate, sufficiently-detailed privilege logs, Grace asks that the Court find that the privilege claims were raised in bad faith and are waived, and that the immediate production of documents is required.    Finally, Grace asks that the Court levy appropriate sanctions against the non-compliant law firms, up to and including allowing adverse inferences with respect to those law firms' claims or precluding such law firms' claims entirely.

Dated: March 21, 2007

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB, LLP

_____

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400

and

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Ellen Therese Ahern
Salvatore F. Bianca
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

KIRKLAND & ELLIS LLP
Barbara M. Harding
David Mendelson
Amanda C. Basta
Brian T. Stansbury
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Co-Counsel for the Debtors and Debtors in
Possession