IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**Re: Docket Nos.: 14853 and 14869**

## REPLY OF W.R. GRACE & CO., ET AL. IN SUPPORT OF PROPOSED ORDER AMENDING CASE MANAGEMENT ORDER FOR THE ESTIMATION OF ASBESTOS PERSONAL INJURY LIABILITIES

After this Court set new trial dates in the above-captioned matter, W.R. Grace & Co., *et al.* ("Debtors") conferred with The Official Committee of Asbestos Personal Injury Claimants ("ACC") and the Future Claims Representative ("FCR") to negotiate new pretrial dates and deadlines. The Libby Claimants, although represented by the ACC, were party to these negotiations and their input regarding pretrial dates was solicited. The Libby Claimants neither presented their views during the pretrial date negotiation process nor objected to the dates selected and agreed on by the Debtors and the Official Committees. After the Amended Case Management Order was proposed to this Court, the Libby Claimants expressed, for the first time, concerns about the dates negotiated by the parties in this case. For the reasons stated below, the Debtors ask this Court to reject the Libby Claimants' objection and enter the proposed Amended CMO.

### BACKGROUND

1. On December 19, 2006, the Court entered the Case Management Order for the Estimation of Asbestos Personal Injury Liabilities ("CMO"), which set various pretrial deadlines and trial dates.

2. On February 26, 2007, at the Debtors' request, the Court amended the trial dates for the Estimation of Asbestos Personal Injury Liabilities. As a result, the Debtors, the ACC, and the FCR negotiated new pretrial dates and deadlines.

3. Counsel for the ACC, the FCR, the Committee of Unsecured Creditors, the Property Damage Committee, the Ad Hoc Committee of Equity Security Shareholders, and the Libby Claimants, among others, were notified of the negotiations for new pretrial dates. A draft of the proposed CMO was circulated to these parties, including counsel for the Libby Claimants. The Debtors solicited comments from the interested parties, including the Libby Claimants.

4. On March 13, 2006, the Debtors submitted a Certification of Counsel requesting the entry of the Amended CMO. The ACC and FCR agreed to the dates and schedule included in the Amended CMO, with some limited exceptions.

5. Among the dates agreed on by the Debtors, the ACC, and the FCR, and submitted to the Court, are the following:

- May 10, 2007 -- Experts who will testify as to matters other than the number, amount, and value of present and future asbestos claims may file supplemental or rebuttal reports;
- May 17, 2007 -- All parties seeking to call one or more experts to testify as to the number, amount, and value of present and future asbestos claims shall produce and serve a report in compliance with Federal Rule of Civil Procedure 26(a)(2) from each expert;
- June 15, 2007 -- Experts who will testify as to matters other than the number, amount, and value of present and future asbestos claims may file supplemental or rebuttal reports.

6. On March 15, 2007, the Libby Claimants filed a limited objection to the proposed CMO.

7. In their objection, the Libby Claimants contend that the proposed June 15, 2007 deadline "represents an extreme hardship" for the Libby Claimants because it falls five weeks

2

after the May 10 deadline for supplemental/rebuttal reports and four weeks after the May 17 deadline for reports as to the number, amount, and value of present and future asbestos claims.

8. The Libby Claimants contend that these periods are insufficient for their experts, Drs. Whitehouse and Frank, to submit their supplemental reports. As a justification for this prospective failure, the Libby Claimants cite their experts' "other professional demands," including teaching, research, and patient care.

## DISCUSSION

The decision to modify previously entered pretrial orders is well within the discretion of the trial court, which is charged with administering all aspects of case management, including "the orderly and efficient trial of the case." *Caver v. City of Trenton*, 420 F.3d 243, 260 (3d Cir. 2005) (citing *Petree v. Victor Fluid Power, Inc.* 831 F.2d 1191, 1194 (3d Cir. 1987)). In the bankruptcy context, the trial court possesses the "inherent procedural power" to "extend a deadline or time period" as it sees fit. *In re Gunther*, 174 B.R. 700, 702 (W.D. Va. 1994). This is consistent with the general rule that the trial court "possesses inherent power over interlocutory orders, and can reconsider them" as justice dictates. *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973).

In this case, justice dictates that the time periods agreed upon by the Debtors, the ACC, and the FCR be approved by the Court. Agreements between parties to a bankruptcy proceeding are routinely approved, even over the objections of some constituents, when the parties are given appropriate notice and an opportunity to provide input. *In re Sheffer*, 350 B.R. 402, 406 (W. D. Ky. 2006); *In re ABC Auto. Prod. Corp.*, 210 B.R. 437, 444 (E.D. Pa. 1997). In *Sheffer*, a number of parties to a bankruptcy action reached an agreement; when the debtor sought the court's approval of the agreement, some of the creditors filed a limited objection. *Sheffer*, 350

3

B.R. at 405. The court held that the agreement could be approved because all parties received notice of the proposed agreement and were given the opportunity to present their views. *Id.* at 405-06. Significantly, the parties that were not in accord with the agreement were "allowed to be a part of the process and provide their input." *Id.* at 406. *See also ABC Auto.*, 210 B.R. at 444 (objection to the appointment of creditor counsel sustained when the procedure utilized in arriving at the appointment provided "no real opportunity for participation" by interested parties because, *inter alia*, there were procedural hurdles to objections by interested parties).

In the present case, the Libby Claimants were given an opportunity to raise any objections that they had to the negotiated dates. Counsel for the Libby Claimants, along with the representatives of the Official Committees, were notified that the Debtors, the ACC, and the FCR would be discussing new dates for the amended CMO. A draft of the proposed CMO was circulated among the Debtors, the Official Committees, and counsel for the Libby Claimants. The Debtors solicited comments from these interested parties, including the Libby Claimants. Because the Libby Claimants were notified of the negotiations -- and indeed, because their opinions were actively solicited -- they were certainly "allowed to be part of the process and provide their input." *Sheffer*, 350 B.R. at 406. Because the Libby Claimants could have expressed a contrary view to the dates proposed in the CMO, they were provided with a "real opportunity for participation" in the negotiation process. *ABC Auto.*, 210 B.R. at 444.

It is particularly surprising that the Libby Claimants contend that their experts will not have sufficient time to draft their reports before the June 15, 2007 proposed deadline. Contrary to the Libby Claimants' suggestion, this deadline applies not only to the Libby Claimants, but to all interested parties in this case. The Debtors, the ACC, and the FCR all will be submitting expert reports in accordance with the June 15, 2007 deadline. Indeed, the number of experts

4

retained by the Libby Claimants that must adhere to this deadline is far fewer than the number of experts retained by the Debtors and the ACC that will be submitting reports by this deadline. In particular, the ACC, which is the Official Committee representing the Libby Claimants, has agreed to the June 15th deadline although it has seven experts that may be supplementing reports by that date.

Finally, the Libby Claimants' suggestion that their experts will not be able to meet a Court-appointed deadline because of "other professional demands" is without merit. Experts from all of the interested parties have "other professional demands" that are similar to those cited by the Libby Claimants. Many of the experts who will be supplementing their reports, from both the ACC and the Debtors, have commitments that include teaching, research, and patient care. For example, Dr. David Weill is an Associate Professor, Stanford University School of Medicine, and the Medical Director, Lung and Heart - Lung Transplant Program, Stanford University. In addition, Grace's experts, Drs. Epstein, Henry, Bragg, and Garabrant all hold professorships. Grace's experts, Drs. Epstein, Henry, and Hutchins, among others, are still involved with patient care. Any suggestion that either Grace's experts or the ACC's experts are in a better position to comply with the Court's CMO than are the Libby Claimants' experts is unfounded.

## CONCLUSION

The Libby Claimants have had the same opportunity as all other interested parties to provide input into the proposed CMO. The Libby Claimants could have, but chose not to, express concerns about the negotiated dates. The burden of the Libby Claimants to respond by the June 15, 2007 deadline is not greater than, but rather is less than, the burden that will be

experienced by the other parties. For these reasons, the Libby Claimants' arguments should be rejected and the proposed CMO approved.

| | |
|---|---|
| Wilmington, Delaware<br>Dated: March 23, 2007 | Respectfully submitted,<br><br>KIRKLAND & ELLIS LLP<br>David M. Bernick, P.C.<br>Barbara Harding<br>Janet S. Baer<br>200 East Randolph Drive<br>Chicago, Illinois 60601<br>(312) 861-2000<br><br>*and*<br><br>PACHULSKI STANG ZIEHL YOUNG JONES<br>& WEINTRAUB LLP<br><br>/s/ Laura Davis Jones<br>Laura Davis Jones (Bar No. 2436)<br>James E. O'Neill (Bar No. 4042)<br>Timothy P. Cairns (Bar No. 4228)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705<br>(302) 652-4100<br><br>Co-Counsel for the Debtors and Debtors in Possession |

DOCS_DE:126080.1