IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Hearing Date: April 9, 2007 at 9:00 a.m.**
**Pittsburgh, PA**
**Related to Docket Nos. 9315, 14597, 14898**

### DEBTORS' REPLY IN SUPPORT OF THEIR MOTION FOR AN ORDER PURSUANT TO F.R.B.P. 7056 DISALLOWING AND EXPUNGING EIGHTY-EIGHT (88) TIME-BARRED CANADIAN ASBESTOS PROPERTY DAMAGE CLAIMS

Except for a handful of throwaway arguments, the Canadian claimants do not directly challenge Canadian limitations expert Graeme Mew's conclusion that their claims are time-barred. First, they first try to avoid the merits altogether by claiming, incorrectly, that Grace did not object to their claims on ultimate limitations grounds. Next, they wrongly argue that their bankruptcy claims were "commenced" in 1992, when Speights & Runyan filed the *Anderson Memorial* putative class action. The claimants' few remaining arguments—offered by U.S. counsel without the support of an expert on Canadian law—reflect a fundamental misunderstanding of Canadian legal principles. No genuine issue of material fact exists and the Court should grant Grace's motion for summary judgment ("Motion").

### ARGUMENT

1. **GRACE OBJECTED TO THE CANADIAN CLAIMS ON ULTIMATE LIMITATIONS GROUNDS IN ITS 15TH OMNIBUS OBJECTION.**

The Canadian claimants' lead argument—that Grace never lodged any "ultimate" limitations objections to their claims—is plain wrong. (Response at 2, 3-4). In its 15th Omnibus Objection, Grace specifically "object[ed] to all Canadian claims as being barred by statutes of limitations." (Dkt. No. 9315 at 56). Grace's reference to "statutes of limitations" encompasses

both ultimate and normal limitations periods.[1]  In its 15th Omnibus Objection, Grace cited

statutory provisions including both ultimate and normal limitations periods.[2]  With respect to

Alberta, for example, Graeme Mew explained in his report that "[t]he Act combines the ultimate

limitation period, discoverability, and the normal limitation period in the same section." (Mew

Rpt. (Ex. A to Motion) at 21).  Finally, Grace's November 6, 2006 witness disclosure stated that

Graeme Mew would "discuss the limitations periods, including but not limited to the 'ultimate'

limitations periods" of the Canadian provinces. (Dkt. No. 13587 at 3).

## 2.    THE *ANDERSON MEMORIAL* PUTATIVE CLASS ACTION HAD NO EFFECT ON THE RUNNING OF THE CANADIAN LIMITATIONS PERIODS.

In an effort to push back the date that their bankruptcy claims were "commenced" for

limitations purposes, the claimants next invoke class action tolling principles.  They argue that

their claims were commenced, not on April 2, 2001, when Grace filed for bankruptcy, but rather

on December 23, 1992, when Speights & Runyan filed *Anderson Memorial* in South Carolina.

(Response at 2-3, 6-8).  This argument fails for three reasons.

*First*, the Canadian claimants are not—and never could have been—*Anderson Memorial*

class members.  For more than 130 years, South Carolina's "door closing" statute has precluded

non-residents whose claims did not arise in South Carolina from suing there.  Based on the door

closing statute's "clear mandate," the *Anderson Memorial* court struck the class allegations of

---

[1]   The Bankruptcy Code imposes no requirement that a Chapter 11 debtor's objection(s) to a proof of claim be made with specificity.  Instead, the Bankruptcy Code merely states that a proof of claim is allowed unless a party in interest "objects" and, once "such an objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ..." 11 U.S.C. §§ 502 (a), (b).  By stating that the Debtors were objecting to the Canadian Claims on the basis of statutes of limitations, the Debtors' Fifteenth Omnibus Objection far exceeds this basic requirement.

[2]  In footnote 17 of its 15th Omnibus Objection, Grace cited among other things:  (1) *The Limitations Act*, R.S.A. 2000, c. L-15.1 (Alberta), (2) *The Limitations Act*, R.S.B.C. 1996, c.266 (British Columbia), and (3) *The Limitation of Actions Act*, R.S.M. 1987, c.L150 (Manitoba).  (Dkt. No. 9315 at 56, n.17).  These provisions include both ultimate and normal limitations periods. (Mew Rpt. at 17 n.29 and 21 n.36 (Alberta); 18 n.31 and 22 n.37 (British Columbia); 19 n. 33 and 25 n.41 (Manitoba)).

2

non-residents whose buildings were not located in South Carolina. Exhibit A hereto is a copy of the court's August 8, 1994 order. *See also Bell v. Monsanto Corp.*, 579 S.E.2d 325 (S.C. 2003) (holding that the South Carolina door closing statute prevents non-residents from suing in South Carolina unless their claims arose there).

***Second***, as a matter of Canadian law, *Anderson Memorial* did not toll Canadian limitations periods. Exhibit B hereto is the supplemental affidavit of Graeme Mew. As Mr. Mew explains, the Canadian class action tolling provisions that the claimants cite were not in effect when *Anderson Memorial* was filed and do not apply retroactively. (Ex. B at ¶ 7). Moreover, there is no Canadian jurisprudence stating that a *foreign* class action tolls a Canadian limitations period. (*Id.* at ¶¶ 4-6). The *Currie* case that the claimants cite (Response at 7-8) does not show otherwise; the court there held that the settlement of a class action filed in the United States did not bind unnamed Canadian class members.

***Third***, the claimants' class action tolling argument is academic. Tolling does not change the date that claims are "commenced" for limitations purposes. Instead, it postpones the running of the limitations periods for those claims. Even if the limitations periods were postponed as of December 23, 1992, the claims at issue here still would be time-barred. The claimants do not dispute that Grace stopped selling asbestos containing products in Canada before 1976. (Ex. D to Motion). All 42 Alberta claims are time-barred under Alberta's 10-year ultimate limitations period regardless of tolling. The one Manitoba building identified in Exhibit C to Grace's Motion has a 1956 installation date, and is time-barred under Manitoba's 30-year ultimate limitations period regardless of tolling. The other claims are time-barred barred under the two and six-year normal limitations periods regardless of tolling.

3

3.    **CANADIAN ULTIMATE LIMITATIONS PERIODS BAR 44 CLAIMS.**

The Canadian claimants offer two more arguments in an attempt to avoid the operation of

the ultimate limitations periods of Alberta, British Columbia, and Manitoba. First, without the

support of an expert in Canadian law, they challenge Graeme Mew's conclusion that these

ultimate limitations periods started to run upon the installation of Grace asbestos-containing

products in their buildings. (Response at 9-11). They argue that "Canadian courts consider

damage to be an essential element that must be alleged and proven in a negligence action."

(Response at 9). Pointing to Grace's responses to Requests for Admission, the claimants assert

that Grace cannot prove that their buildings were "damaged." (*Id.* at 10-11).

This argument is inconsistent with Canadian law. The Mew Report explains that, in light

of *Privest* and the Canadian Supreme Court's decision in *Winnipeg Condominium*, it is "firmly

established in Canadian law" that the asbestos-in-buildings claims asserted here are claims for

pure economic loss rather than "property damage." (Mew Rpt. at 9-10). Physical damage in the

traditional sense is not required. Economic loss claims "are rooted in the theory that there can be

recovery for the cost of removing a potentially hazardous product even though there is no

physical damage." (*Id.* at 9; *see also* Mew Dep. at 60 (noting that pure economic loss is "a form

of injury") (Ex. C)). Furthermore, nothing in Canadian law requires Grace to prove the

claimants' case in order to prevail on its limitations defense.

Second, the Canadian claimants argue that Grace "failed to address the applicable

limitations period for other asbestos property damage causes of action" such as nuisance,

warranty, conspiracy, restitution, fraud, and misrepresentation. (Response at 11-12). This

argument also fails. As Graeme Mew explains, under Canadian law, any asbestos-in-building

tort claims fall under the rubric of "pure economic loss" and therefore accrued when the Grace

products at issue were allegedly installed in the claimants' buildings. (Ex. B at ¶¶ 9-13). This is

4

91100-001\DOCS_DE:126087.1

true despite the alleged existence of a "continuing" duty to warn. (*Id.* at ¶ 13). (Contract claims, such as breach of warranty, are not viable under Canadian law without privity, and in any event accrue upon the date of the alleged breach. (*Id.* at ¶ 9 n.10)).

### 4.   CANADIAN NORMAL LIMITATIONS PERIODS BAR 88 CLAIMS.

The Canadian claimants' attempts to avoid the normal limitations bar fare no better. Their argument that Grace is not entitled to a limitations defense unless it proves "damage" (Response at 12) fails for the reasons stated above. Their argument that they did not learn until 2003 that Grace manufactured the asbestos-containing products allegedly installed in their buildings (Response at 13) fails to recognize that, in order to postpone the Canadian normal limitations periods, the claimants must establish that they *could not* have known of the existence of Grace products in their buildings despite the exercise of reasonable diligence.[3] (Mew Rpt. at 11). The claimants have offered no evidence on this point.

Finally, the claimants' argument that constructive notice is "inapplicable" and "inappropriate" (Response at 14-16) turns Canadian burden of proof principles on their head. Under Canadian law, the *claimants* must submit evidence sufficient to postpone the running of the applicable normal limitations periods. (Mew Rpt. at 11). To avoid Grace's normal limitations defense, the claimants had to establish that "the material facts upon which their cause of action is based were not discoverable with the exercise of reasonable diligence until some time after the date of the alleged wrong." (*Id.*) The claimants did not even attempt to meet their burden, much less satisfy it. Their claims are time-barred.

---

[3]   The claimants' product identification witness, Donald Pinchin, testified that he was able to identify Grace asbestos-containing fireproofing products in buildings "in the early 80's." (Pinchin Dep. at 78-79) (Ex. D). In the 1980's, Pinchin's company conducted presentations for building owners throughout Canada in which the identification and detection of asbestos in buildings, including Grace's MK-3, were discussed. (*Id.* at 82-86; *see also id.* at 41-43, 72-73, 107-08)).

5

## CONCLUSION

Grace respectfully requests that the Court enter an order disallowing and expunging the

88 time-barred claims listed in Exhibits C and E to its Motion.


Dated:  March 23, 2007

REED SMITH LLP
James J. Restivo, Jr. (Bar No. 10113)
Lawrence E. Flatley (Bar No. 21871)
Douglas E. Cameron (Bar No. 41644)
435 Sixth Avenue
Pittsburgh, PA  15219
Telephone:  (412) 288-3131
Facsimile:  (412) 288-3063

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Lisa Esayian
Samuel L. Blatnick
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL YOUNG JONES &
WEINTRAUB LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

By: _____
Co-Counsel for the Debtors and
Debtors in Possession

6