# EXHIBIT A

# TURNER, PADGET, GRAHAM & LANEY, P.A.
## ATTORNEYS AND COUNSELORS AT LAW

Steven W. Ouzts

Reply to:
Columbia

August 10, 1994

Ms. Virginia P. Harter
Clerk of Court
Hampton County Courthouse
Elm Street
Hampton, South Carolina 29924

    Re:    Anderson Memorial Hospital v. W.R. Grace & Co., et al.
            Case No. 92-CP-25-279

Dear Ms. Harter:

    Please find enclosed the original and one copy of the Memorandum Order signed by Judge William L. Howard, Sr. on August 8, 1994 granting Certain Defendants' Motion To Strike Class Action Allegations As To Non-Residents Whose Causes of Action Are Foreign To South Carolina. Please enter the original Order and return a copy to us with the entry date stamped thereon. For your convenience, we have enclosed for this purpose a self-addressed, stamped envelope.

    By copy of this letter, we are serving a copy of the enclosed Memorandum Order on counsel of record for the plaintiff and each of the defendants, as indicated on the Certificate of Service. Also, by copy of this letter to Judge Howard, we are confirming the service and filing of the Memorandum Order as directed by the court.

    With kind regards, I am

                      Yours very truly,

                      TURNER, PADGET, GRAHAM & LANEY, P.A.

                      Steven W. Ouzts

SWO/so
Enclosures
cc:    Honorable William L. Howard, Sr.
        (w/o enclosure)

COLUMBIA OFFICES:
SEVENTEENTH FLOOR, 1901 MAIN STREET
POST OFFICE BOX 1473
COLUMBIA, SOUTH CAROLINA 29202
(803) 254-2200
TELECOPY (803) 799-3957

FLORENCE OFFICES:
SOUTHERN NATIONAL BANK BUILDING
FOURTH FLOOR, 1831 WEST EVANS STREET
POST OFFICE BOX 5478
FLORENCE, SOUTH CAROLINA 29502-5478
(803) 662-9008
TELECOPY (803) 667-0828

Ms. Virginia P. Harter
August 10, 1994
Page 2

      Daniel A. Speights, Esquire
      (with enclosure)
      Defense Counsel of Record
      (with enclosure)
      Joseph B.G. Fay, Esquire
      (with enclosure)

STATE OF SOUTH CAROLINA

COUNTY OF HAMPTON

IN THE COURT OF COMMON PLEAS

FILED
CASE # 92-279
FILE 8-12-19 94
AT 10:20 am O'clock
Virginia P. Hartu
CLERK OF COURT

| | |
|---|---|
| ANDERSON MEMORIAL HOSPITAL, on behalf of itself and others similarly situated, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 92-CP-25-279 |
| W. R. GRACE & COMPANY; W. R. GRACE & COMPANY-CONNECTICUT; USG CORPORATION; UNITED STATES GYPSUM COMPANY; UNITED STATES MINERAL PRODUCTS COMPANY; DANA CORPORATION; KEENE CORPORATION; ASBESTOS PRODUCT MANUFACTURING CORPORATION; ASBESTOSPRAY CORPORATION; H & A CONSTRUCTION CORPORATION, formerly SPRAYCRAFT; T&N, plc, formerly TURNER & NEWALL, PLC, and TURNER & NEWALL, LTD., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM ORDER

This matter is before the court on Certain Defendants' Motion To Strike Class Action Allegations As To Non-Residents Whose Causes Of Action Are Foreign To South Carolina. The court has carefully considered the briefs submitted by the parties, the authorities cited therein, and the oral arguments of counsel as presented at a hearing on

July 6, 1994.[1] At the conclusion of that hearing, the court decided to grant defendants' motion. This Memorandum Order memorializes the court's ruling from the bench on July 6, 1994.[2]

## Background

Anderson Memorial Hospital ("Anderson"), a South Carolina resident, originally filed this action on December 23, 1992 against various former manufacturers of asbestos-containing products.[3] Anderson subsequently filed its First Amended Class Action Complaint ("Amended Complaint") on January 14, 1993. The Amended Complaint asserts claims for damage to its property in Anderson County due to the alleged presence in its buildings of asbestos-containing construction products allegedly manufactured, sold, or distributed by one or more of the defendants.

Apart from the claims of Anderson, the Amended Complaint also describes claims of a class[4] of "all persons, corporations, partnerships, unincorporated associations or other entities which own in whole or in part any building which contains friable asbestos-containing acoustical plaster and/or fireproofing manufactured, sold, and/or distributed by . . . defendants," with certain exceptions. Amended Complaint, ¶ 10. Anderson's proposed class would include claims by purported class members who are not residents

---

[1] The court, in its discretion, did not, at the hearing, consider the brief submitted on behalf of Amicus Curiae, South Carolina Chamber of Commerce. As of the date of the hearing, plaintiff's time to respond to the amicus brief had not yet expired.

[2] The court's order shall become effective as of the date of entry of this written order.

[3] As to defendant Dana Corporation, Anderson has stipulated that Dana, a manufacturer of automotive and transportation components, did not manufacture and sell asbestos-containing building products. Second Stipulation entered as an Order on March 15, 1994, ¶ 5.

[4] Plaintiff has not yet filed a motion for class certification.

-2-

of South Carolina and whose buildings at issue are not located in South Carolina.

The action was originally filed in state court in Hampton County, but was removed to federal court on the basis of diversity of citizenship. On July 12, 1993, Magistrate Judge Robert Carr granted the plaintiff's motion to remand the action to the South Carolina state court system, because of plaintiff's allegation that members of its proposed class have claims below the $50,000 amount necessary for diversity jurisdiction.

On March 31, 1994, several defendants[5] filed a Motion to Strike Class Action Allegations As To Non-Residents Whose Causes Of Action Are Foreign To South Carolina. The basis for defendants' motion was S.C. Code Ann. § 15-5-150 (Law. Co.-Op. 1976), commonly referred to as the "door closing" statute. The South Carolina door closing statute, which was enacted in 1870, provides as follows:

> An action against a corporation created by or under the laws of any other state, government, or country may be brought in the circuit court: (1) by any resident of this State for any cause of action; or (2) by a plaintiff not a resident of this State when the cause of action shall have arisen or the subject of the action shall be situated within this State.

S.C. Code Ann. § 15-5-150.

Defendants argue, and the court agrees, that based upon the clear mandate of the door closing statute, this court cannot assert jurisdiction over the claims of non-resident potential class members under Rule 23, SCRCP, whose claims do not arise in South Carolina or whose property at issue is not situated within this state.

---

[5] United States Gypsum Company, W. R. Grace & Co., W. R. Grace & Co.-Conn., United States Mineral Products Company, and Dana Corporation. None of these corporations are incorporated in South Carolina.

### S.C. Code Ann. § 15-5-150 Deprives The Court Of Subject Matter Jurisdiction Over Certain Claims Of Non-Residents.

Plaintiff's proposed class presents an obvious application of the door closing statute. As a purported class representative, plaintiff seeks to present and litigate the claims of non-residents with foreign causes of action against foreign corporate defendants. The General Assembly, through the door closing statute, has made it clear that South Carolina courts are not available to resolve such foreign causes of action.

Failure to meet the requirements of the door closing statute deprives the court of subject matter jurisdiction over the claims of non-resident putative class members. *E.g., Eagle v. Global Assoc.*, 292 S.C. 354, 356 S.E.2d 417 (Ct. App. 1987). As the court noted in *Eagle*, subject matter jurisdiction over claims against foreign corporations is to be determined by reference to "the law of this State as declared by the legislature," and that in the door closing statute, the legislature has "clearly limited the availability of South Carolina courts." *Id.* at 419. In cases which involve foreign parties and foreign causes of action, such as the case at hand, the court "need go no further than the plain language of § 15-5-150 to see that the circuit court clearly lacks subject jurisdiction over the action." *Parsons v. Uniroyal-Goodrich Tire Corp.*, 438 S.E.2d 238, 239 (S.C. 1993).[6]

The door closing statute divests this court of subject matter jurisdiction over foreign claims by non-resident plaintiffs against defendants organized or existing under

---

[6] Our Supreme Court has repeatedly affirmed the validity and constitutionality of S.C. Code Ann. § 15-5-150. *See, e.g., Rosenthal v. UNARCO Indus., Inc.*, 278 S.C. 420, 297 S.E.2d 638 (1982); *Central R.R. and Banking Co. v. Georgia Constr. Co.*, 32 S.C. 319, 11 S.E. 192 (1880).

the laws of a state other than South Carolina. It is undisputed that the defendants in this action are corporations created by or under the laws of states other than South Carolina. Therefore, the unambiguous language of S.C. Code Ann. § 15-5-150 requires this court to strike from plaintiff's First Amended Complaint claims of non-residents whose causes of action are foreign to South Carolina.

### There Exists No "Class Action" Exception To The Door Closing Statute.

Plaintiff's hope of pursuing this action as a class action under Rule 23, SCRCP, does not allow this court to ignore the plain language of S.C. Code Ann. § 15-5-150. Anderson argues that because it is a South Carolina resident, the language of S.C. Code Ann. § 15-5-150(1) allowing a resident to bring "any cause of action," when combined with the language of Rule 23, SCRCP, allowing a class representative to sue "on behalf of all," entitles it to represent the claims of non-residents, despite the language of S.C. Code Ann. § 15-5-150(2). The court disagrees.

If plaintiff's interpretation were correct, any non-resident could simply evade the jurisdictional strictures of the door closing statute by bootstrapping its cause of action to the cause of action of a resident willing to act as the non-resident's representative. Such an expansive reading of subsection (1) of the statute would eviscerate subsection (2) and conflict with settled South Carolina Supreme Court precedent. The South Carolina Supreme Court has repeatedly construed the door closing statute as narrowing the courts' jurisdiction, not expanding it. *See, e.g., Cox v. Lunsford*, 272 S.C. 527, 531-32, 252 S.E.2d 918, 920 (1979) (door closing statute "limits the availability of South Carolina courts"); *Central Railroad & Banking Co. v. Georgia Constr. Co.*, 38 S.C. 319, 11 S.E. 192, 203 (1890), (it is "very manifest that the object" of the statute "was, not to . . .

extend the jurisdiction of the courts of this State").

The court is persuaded that the rationale found in the South Carolina Supreme Court's holding in *Nix v. Mercury Motor Express, Inc.*,[7] requires this court to reject the core component of plaintiff's position -- that a resident plaintiff can represent the interests of a non-resident and thereby circumvent S.C. Code Ann. § 15-5-150(2). In *Nix*, a resident administrator brought a wrongful death action against a non-resident corporation on behalf of the estate of a non-resident decedent. While the named plaintiff was a resident, the court looked to the residence of the decedent and found that a suit by the decedent would have been barred by the door closing statute. *Id.* The Supreme Court held that since the administrator had no greater rights than the decedent whom he sought to represent, his claim on behalf of the decedent's estate was also barred by the statute. *Nix*, in short, holds that a circuit court must look to the residence of the person(s) on whose behalf the claims are being asserted, and cannot stop its inquiry by simply ascertaining the named plaintiff's residence.

The *Nix* court also recognized that, if the individual for whom the action was asserted had no right to maintain it in her own right in South Carolina courts, the assignment of that right to a South Carolina resident would be insufficient to create subject matter jurisdiction. *Id.* at 483, 242 S.E.2d at 685. Since an actual assignment of a claim by a non-resident to a resident is insufficient to invoke the jurisdiction of this court, the court rejects plaintiff's argument that a different result is warranted, in the absence of an assignment, where Anderson purports to represent a virtually unlimited class consisting of numerous out-of-state plaintiffs. *Cf. South Carolina Tax Commission*

---

[7] 270 S.C. 477, 242 S.E.2d 683 (1978).

*v. Union County Treasurer*, 295 S.C. 257, 368 S.E.2d 72, 76 (Ct. App. 1988) (permissive intervenors under Rule 24(b), SCRCP, must show an independent basis for subject matter jurisdiction, and cannot piggyback on the named plaintiff's jurisdiction).

Anderson has no authority to assert legal control over or take possession of the constitutionally protected property rights of others. The language of Section 15-5-150 and Rule 23, SCRCP, does not transfer the rights of absent class members to the named plaintiff. The claims that are the subject of the instant motion simply are not Anderson's to bring.

To hold otherwise would allow plaintiff's invocation of Rule 23 to open doors S.C. Code Ann. § 15-5-150 has already closed. This result would be improper, because Rules 81 and 82, SCRCP, limit the scope of the Rules, including Rule 23:

> These rules, or any of them, shall apply . . . within the limits of the jurisdiction and powers of the court provided by law.
>
> * * *
>
> These rules shall not be construed to extend or limit the jurisdiction of any court of this State.

Rules 81, 82(a), SCRCP.

Additionally, the South Carolina Constitution makes clear that procedural rules, such as Rule 23, must yield to statutory constraints such as S.C. Code Ann. § 15-5-150. "*Subject to the statutory law*, the Supreme Court shall make rules governing the practice and procedure in all such courts." South Carolina Constitution, Art. V, § 4 (emphasis added). Further, the General Assembly, in the enabling statute for the South Carolina Rules of Civil Procedure, admonished that "neither the promulgation of the rules nor this act may be construed to affect the substantive legal rights of any party to any civil

- 7 -

litigation the court of this State but shall affect only matters of *practice and procedure*." 1985 S.C. Acts No. 100, § 3 ("Act 100") (emphasis added).

Plaintiff's argument, that it be permitted as a representative to sue on behalf "of all," merely begs the question as to whom drafters of the rules intended to be included within the term "all." The language of Rule 23(a), SCRCP, makes clear that "all" refers only to members of a proper class over whose claims the court would otherwise have jurisdiction. A representative plaintiff may maintain an action only on behalf of all class members who meet the requirements of the underlying jurisdictional statutes, such as S.C. Code Ann. § 15-5-150. *Accord* 7A Wright, Miller & Kane, Federal Practice and Procedure, Civil 2nd § 1755 (1986) (under Fed. R. Civ. P. 82, a Rule 23 class action cannot be maintained unless it complies with the jurisdictional statute under which it is brought).[8]

### Federal Court Considerations

Plaintiff, in its response to defendants' motion to strike, places heavy reliance upon the decisions of the Federal District Court and the Fourth Circuit Court of Appeals in the *Central Wesleyan* case.[9] *Central Wesleyan* is not applicable here.

The only clear holding the court can glean from the *Central Wesleyan* opinions -- a case in which federal subject matter jurisdiction was based upon diversity of citizenship under 28 U.S.C. § 1332 -- is that those courts elected not to apply the door closing

---

[8] Plaintiff has not yet filed a motion for class certification and the full range of certification issues has not been addressed by either the plaintiff or the defendants. The court, therefore, does not address any other issues concerning the appropriateness of any class at this time.

[9] *Central Wesleyan College v. W. R. Grace & Co.*, 143 F.R.D. 628 (D.S.C. 1992), *aff'd*, 6 F.3d 177 (4th Cir. 1993).

- 8 -

statute as a limit on that jurisdiction. The opinions recognize a "countervailing" federal policy to centralize federal claims in one federal court. Although plaintiff argues that the *Central Wesleyan* opinions were premised on a basis other than countervailing federal considerations, the court does not agree with plaintiff's interpretation of the holdings. The analysis of the Fourth Circuit and the district court in *Central Wesleyan* was driven by the courts' evaluation of the door closing statute in light of the federal diversity jurisdiction statute, 28 U.S.C. § 1332, for which there exists no state law analogue. Moreover, it is now clear that, under South Carolina law, the door closing statute is a limit on the subject matter jurisdiction of South Carolina courts. *See Parsons*, 438 S.E.2d at 239.

This court must evaluate the door closing statute, not as it might impact federal diversity jurisdiction, but as it impacts the subject matter jurisdiction of this court. The *Central Wesleyan* opinions cannot and do not abrogate the statutory limitations the South Carolina General Assembly, through S.C. Code Ann. § 15-5-150, has placed upon the subject matter jurisdiction of the South Carolina circuit courts. Indeed, the Fourth Circuit, in an earlier decision, conceded that a South Carolina state court could not ignore the plain language of the door closing statute as could a federal court. *See Szantay v. Beech Aircraft Corp.*, 349 F.2d 60, 63 (4th Cir. 1965) ("South Carolina state courts do not have jurisdiction over a suit brought by a non-resident against a foreign corporation on a foreign cause of action").

### Plaintiff's Interpretation Of S.C. Code Ann. § 15-5-150 Would Defeat Important State Interests.

The *Central Wesleyan* courts based their conclusion on their perception of a

judicially created "federal policy in favor of consolidating asbestos litigation" that they found to be "current" in the federal system. *See, e.g., Central Wesleyan*, 6 F.3d at 187, n.3. A federal court, supported by federal resources, may view such matters from a national perspective. This court is not called upon to re-examine whether such a federal policy exists or is advisable.

Nevertheless, just as the application of S.C. Code Ann. § 15-5-150 raised policy considerations for the federal courts in *Central Wesleyan*, the application of the statute in this case likewise raises policy implications for South Carolina and the South Carolina judicial system. The South Carolina Supreme Court has recognized that South Carolina's door closing statute promotes several important state interests:

> The "door closing statute" has been noted to accomplish several legislative objectives rationally related to the State's interest. It favors resident plaintiffs over non-resident plaintiffs. . . . The statute provides a forum for wrongs connected with the State while avoiding the resolution of wrongs in which the State has little interest. . . . It encourages activity and investment within the State by foreign corporations without subjecting [them] to actions unrelated to [their] activity within the State.

*Rosenthal v. UNARCO Indus., Inc.*, 278 S.C. 420, 297 S.E.2d 638, 641 (1982) (citations omitted); *see also, Szantay v. Beech Aircraft Corp.*, 349 F.2d 60, 65 n.8 (4th Cir. 1965) ("there are manifest reasons for preferring residents in access to often overcrowded courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the courts concerned").

South Carolina's courts are established and funded to provide a forum for residents of this State to seek redress. Plaintiff asks that this court divert scarce resources and time to adjudicate claims apparently to be pursued by residents of other

states, countries, kingdoms and territories rather than those of South Carolinians. Plaintiff's attempt to broaden the jurisdiction of this court simply ignores the state's considerable interest in protecting the limited resources of the South Carolina court system as embodied in the door closing statute. This court's order protects the limited judicial resources of this State, advances South Carolina's economic development and comports with the plain and ordinary meaning of S.C. Code Ann. § 15-5-150. *See First Baptist Church v. City of Mauldin*, 417 S.E.2d 592 (S.C. 1992) (statutes should "be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation").

## Conclusion

This court has a duty to apply state law and, accordingly, has no discretion to ignore the jurisdictional dictates of the door closing statute. Claims of non-resident putative class members against these foreign defendants for claims which arise outside of South Carolina are prohibited by the door closing statute. Therefore, this court grants the defendants' motion and strikes from plaintiff's First Amended Complaint claims of non-residents where the claims do not arise in South Carolina or whose property at issue is not situated in South Carolina.

AND IT IS SO ORDERED.

_____
The Honorable William L. Howard, Sr.
Circuit Court Judge

Charleston, South Carolina
August ___8th___, 1994

|  |  |
|---|---|
| STATE OF SOUTH CAROLINA ) <br> ) <br> COUNTY OF HAMPTON ) | IN THE COURT OF COMMON PLEAS |
| ANDERSON MEMORIAL HOSPITAL, ) <br> on behalf of itself and ) <br> others similarly situated, ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> W. R. GRACE & COMPANY, et al. ) <br> ) <br> Defendants ) | C.A. No. 92-CP-25-279 |

## CERTIFICATE OF MAILING

The undersigned, an employee of Turner, Padget, Graham & Laney, P.A., hereby certifies that on this 10th day of August 1994, she served the foregoing Memorandum Order by mailing a copy of it to each of the following attorneys via United States Mail, First Class, with proper postage affixed:

Daniel A. Speights, Esquire
Speights & Rynyan
304 Lee Avenue
Post Office Box 685
Hampton, South Carolina 29924

Donald A. Cockrill, Esquire
Phillip A. Kilgore, Esquire
Ogletree, Deakins, Nash,
 Smoak and Stewart
Post Office Box 2757
Greenville, South Carolina 29602

Allen S. Joslyn, Esquire
Cahill, Gordon & Reindel
80 Pine Street
New York, New York 10005

Bruce E. Miller, Esquire
Barnwell, Whaley, Patterson & Helms
Post Office Drawer H
Charleston, South Carolina 29402

Stephen J. Imbriglia, Esquire
Peter C. Kennedy, Esquire
Hecker, Brown, Sherry and Johnson
1700 Two Logan Square
18th and Arch Street
Philadelphia, PA 19103

John DeQ. Briggs, Esquire
Marguerite Smith Boyd, Esquire
David C. Eddy, Esquire
Howrey & Simon
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2402

Michael T. Cole, Esquire
Wise & Cole
Post Office Drawer O
Charleston, South Carolina 29402

William S. Davies, Esquire
Nelson, Mullins, Riley, & Scarborough
Post Office Box 11070
Columbia, South Carolina 29211

Richard A. Koehler, Esquire
Stich, Angell, Kreidler & Muth, P.A.
The Crossings, Suite 120
250 Second Avenue South
Minneapolis, Minnesota 55401-2122

Timothy W. Bouch, Esquire
Young, Clement, Rivers & Tisdale
Post Office Box 993
Charleston, South Carolina 29402

P. Michael Duffy, Esquire
Michael Scardato, Esquire
McNair & Sanford, P.A.
Post Office Box 1431
Charleston, South Carolina 29402

David M. Elston, Esquire
Kirkland & Ellis
200 East Randolph Drive, Suite 5800
Chicago, Illinois 60601

    Dated this 10th day of August, 1994.

                                                 _____
                                                 Cheryl A. Joiner