IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Hearing Date: April 9, 2007 9:00 AM**
**Related Docket No: 9315, 14594,**
**14919, 14884, 14885**

## DEBTORS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR AN ORDER PURSUANT TO F.R.B.P. 7056 DISALLOWING AND EXPUNGING ONE HUNDRED NINE (109) TIME-BARRED CALIFORNIA ASBESTOS PD CLAIMS

Claimants State of California Department of General Services ("DGS"), California State University ("CSU") and University of California ("UC") (collectively, "Claimants") have not refuted Grace's proof that these Claimants believed their claims to have arisen by at least 1990, some thirteen years before filing their claims in these Chapter 11 proceedings. First, all of these Claimants were plaintiffs in the 1990 case of *Alabama, et al. v. W.R. Grace & Co., et al.* Second, Claimants do <u>not</u> deny that they could not have filed these previous claims against the Debtors unless they *believed* that every element of their claims (including the requisite injury) had occurred.[1] Therefore, Claimants knew of their alleged injuries at least 13 years before filing their claims here.

Rather than addressing these core issues, Claimants instead assert that although they sought to sue Grace for all of their buildings in the 1990 *Alabama v. W.R. Grace* case, the 1990 claims should be ignored because they were based on a theory of recovery that is purportedly less stringent than California law. Claimants' contention is meritless, because the *Alabama*

---

[1] Debtors are aware that pursuant to the October 13, 2006 Asbestos Property Damage Case Management Order, reply briefs for these summary judgment motions are limited to five pages. This Reply consolidates Debtors' replies to the responses filed by the State of California DGS (Dkt. 14919); CSU (Dkt. 14884); and UC (Dkt. 14885). Debtors have accordingly limited this Reply to 15 pages.

petition expressly alleges asbestos contamination of Claimants' buildings. Thus, in the 1990 case, Claimants alleged that their buildings were "contaminated by asbestos-containing products," that "each day of exposure to asbestos put the plaintiff in a position involving an immediate necessity for action," and that the States "have acted to abate the asbestos hazards." They sought to recover for "abating the asbestos contamination" in State-owned buildings. Thus, Claimants pled specific facts demonstrating that they believed contamination had occurred.

Claimants also erroneously argue that Debtors must prove Claimants' buildings were contaminated prior to the April 1998 statute of limitations cut-off date. Debtors have no such burden. In view of Claimants' admissions that they believed their buildings were contaminated in both *Alabama v. Grace* and in claims filed in the Johns-Manville bankruptcy, they are precluded from taking a contrary position in response to Debtors' motion.

Nor does California law require that Grace waive the limitations defense in order to defend the safety of its product. Claimants cite no authority which states that a defendant must admit liability, defect, or damage as a prerequisite for avoiding claims long barred by the limitations period. Instead, the existence of facts which plaintiffs allege support their cause of action are those that trigger the statute. Claimants' allegations control. Claimants allege that dust and debris from asbestos-containing materials released during routine building activities constitute contamination and do not deny that such conditions existed well before the statute date.[2]

---

[2] Debtors deny that claimants' buildings were damaged by Debtors' products. But Debtors' position on this issue is not relevant to the motion. The issue before the Court at this time is whether claimants themselves believed and alleged there was contamination of their buildings prior to April 1998. The uncontroverted facts demonstrate that they did.

Notably absent from the responses is any discussion of the Delaware statute of limitations. As stated in the Motion, this Court has already held that Delaware's conflict of laws rule applies in determining which state's statute of limitations should govern. Delaware law requires application of the shorter of California or Delaware's limitations period. By failing to address the Delaware limitations period for property damage claims, Claimants concede that their claims are barred under Delaware law.

In a last-ditch effort, Claimants attempt to misconstrue the nature of their previous claims. There was nothing vague about the detailed and lengthy petition that was filed in the *Alabama* lawsuit. Its unambiguous language indicates that it was intended to cover all state owned buildings, including the buildings at issue here. Further, such ambiguity would necessarily be construed against these Claimants, as *their claim forms specifically admit that they were included in that lawsuit.*

Put simply, the California Claimants cannot run away from the simple facts that they (1) asserted injury including "contamination" outside of the limitations period, (2) could not have asserted such claims unless they believed their actions to have accrued, and (3) have in many instances admitted as much in their claim forms. As such, the California claims are time-barred.

## I.    ARGUMENT

### A.    Debtors Do Not Concede That the California Statute of Limitations Applies.

Claimants incorrectly assume in their responses that California's statute of limitations applies to their claims. As Debtors' Motion states, the Court has already applied Delaware's conflict of laws for determining which state's statute of limitations should apply. Under Delaware law, the shorter of California or Delaware's limitations period would be applicable. Since Claimants have failed to address the Delaware limitations period, they concede it bars their claims.

Claimants' response fails to address Delaware's borrowing statute and incorrectly assumes that only the California statute of limitations could apply to the California Claims. Delaware's borrowing statute directs this Court to apply the *shorter of Delaware or California's statute of limitations* to the California Claims. *See* Order Disallowing and Expunging as Time-Barred Two Asbestos PD Claims Filed by Prudential Insurance Company on Account of Buildings Located in Georgia [Dkt. No. 13457]; 10 Del. C. § 8121 (2005). For purposes of this analysis, the Court takes into consideration both the California statute of limitation, and also "all of its accoutrements," including rules governing the time when the cause of action accrued and when the statute of limitations began to run. *Plumb v. Cottle*, 492 F.Supp. 1330, 1336 (D. Del. 1980).

For the California Claims, both Delaware and California have three-year limitations periods. Cal. Civ. Proc. Code § 338(b) (California); 10 Del. C. § 8106 (Delaware). Because Delaware's statute of limitations begins to run at the latest when claimant has actual knowledge of its alleged physical damage to its property, the Delaware statute of limitations may be shorter when applied to the California Claims. Under Delaware's discovery rule, Delaware's three-year limitations period begins to run at the time the California Claimants knew or should have known of their alleged injuries, namely the presence of asbestos in its building and the potential dangers of asbestos. *See Becker v. Hamada, Inc.*, 455 A.2d 353 (Del. 1982); *Nardo v. Guido DeAscanis & Sons, Inc.*, 254 A.2d 254 (Del. Super. Ct. 1969).

As explained in Debtors' Motion, the California Claimants' previous actions on account of the identical injuries alleged in the California Claims more than satisfies Delaware's requirement for starting the Delaware statute of limitations. Because those admissions were made in 1990 or earlier -- more than a decade before this proceeding was instituted --

Delaware's three-year limitations period had lapsed long before the California Claims were filed in this Chapter 11. Therefore, even if the California Claims were not time-barred under California's limitations period (which they are), they are proscribed under Delaware's statute of limitations, as made applicable by Delaware's borrowing statute.

**B.    Debtors Have No Obligation to Prove Claimants Substantive Case.**

Claimants cite no authority for their assertion that Debtors are required to prove all of the elements of the property damage claims. And, that is not the law. Grace bears the burden of proving only that the claims are barred by the statute of limitations. *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995). Grace can do so, and has done so, based upon Claimants' own admissions that they believed their claims had arisen at least by 1984, 1985, and 1990.

As the discovery responses filed with Claimants' responses indicate, the Debtors deny that they have caused contamination of Claimants' buildings. This denial has no bearing on whether Claimants' property damage claims are barred by their admissions in prior actions and statements that Claimants' believed themselves to be damaged well outside the limitations period.

California law does not, as Claimants imply, require Grace to prove every element of the claims against it in order to prevail on its statute of limitations defense. Statutes of limitations protect defendants from the prejudice inherent in having to defend stale claims where evidence is lost or destroyed as a result of the passage of time. This policy is designed to favor innocent defendants, who can benefit from the lost evidence, as much as those who are guilty. California courts thus recognize that the plaintiff need not have a valid claim in order for its claim to be barred by the statute of limitations. *See Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1115-18 (1988)

(plaintiff's claim was time-barred even though claim may have lacked merit had it been timely filed); *see also Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 324 (Cal. Ct. App. 1974).

Any other standard would require a defendant to prove its own liability in order to show that a plaintiff had not been diligent in pursuing its claim. Yet California courts have recognized that one of the fundamental purposes of a statute of limitations is to protect innocent defendants from meritless claims which are brought after exculpatory evidence has been lost. In *Baker*, the court noted that statutes of limitations "are intended to prevent fraud, to keep parties from asserting rights after a lapse of time has destroyed or impaired the evidence *which would show that such rights never existed,* or had been satisfied, transferred or extinguished if they ever did exist." *Baker*, 39 Cal. App. 3d at 324 (emphasis added). Because the statute is designed to protect against meritless claims, where exculpatory evidence may no longer be available, it makes no sense to deny the defendant the protection of the statute by requiring the defendant to first prove his own liability.

Claimants bear the burden of pleading and proving why they could not have brought their claims earlier. *See County of San Diego v. Sanfax Corp.*, 19 Cal. 3d 862, 885 n.11 (1977) (noting that plaintiffs bear the burden of pleading and proof when seeking to toll the statute); *Scherer v. Mark*, 64 Cal. App. 3d 834, 843 (Cal. Ct. App. 1976) (plaintiff has the burden of proof on tolling of the statute); *see also CAMSI IV v. Hunter Technology Corp.*, 230 Cal. App. 3d 1525, 1538 (Cal. Ct. App. 1991) ("The burden was on [plaintiff] to plead *facts* to show *inability* to have made earlier discovery.") (emphasis in original).

Thus, contrary to Claimants' assertion, no case requires Grace to prove its own "wrongdoing." *California Sansome* discusses only the burden of demonstrating that "the complained of wrongdoing *and* harm occurred outside the limitations period." Claimants'

"complain[t] of wrongdoing" is the installation of asbestos-containing fireproofing in their buildings. There is no dispute here that this installation occurred outside the limitations period. Nor can Claimants dispute their own admissions that the purported contamination occurred outside the limitations period as well.

**C.    Claimants' Statements in the *Alabama* Case are Admissions and Estop Them From Taking Contrary Positions in This Case.**

In 1990, the State of California (along with twenty-eight other states) filed a motion in the United States Supreme Court for leave to file a complaint against Grace seeking reimbursement for costs incurred to remedy asbestos contamination in *all* state-owned buildings. That case, titled *Alabama, et al. v. W.R. Grace & Co., et al.*, was ultimately dismissed by the United States Supreme Court. In each of their responses, Claimants ask the Court to disregard their admissions made in that case.

**1.    CSU and UC Reference the *Alabama* Case as a Prior Action Filed for the Same Injury in each of its Claims Forms.**

Each of the claim forms filed by CSU and UC references the *Alabama* case as a prior action involving the same claim. (Claims Forms at Part 4.B.1). CSU and UC cannot now take the inconsistent position that its claims were not at issue in *Alabama*. Indeed, CSU highlights its own inconsistent position in claiming that it did not discover asbestos in its buildings until 2003. Moreover, CSU ignores its 1985 campus-wide asbestos survey which it references in its 1985 Johns-Manville claim.

**2.    Claimants' Admissions in the *Alabama* Petition are Effective Whether or Not the Supreme Court Ultimately Granted the Petition.**

Claimants are bound by their own admissions that their buildings were allegedly contaminated well before the statute of limitations cut-off date. *See* Fed. R. Evid. 801(d)(2); *Williams v. Union Carbide Corp.*, 790 F.2d 552, 555 (6th Cir. 1986) (allegations in a complaint

from a prior lawsuit are admissible as evidentiary admissions in subsequent litigation); *Dugan v. EMS Helicopters, Inc.*, 915 F.2d 1428 (10th Cir. 1990) (same).

In addition, Claimants are estopped from now asserting that their alleged injuries and damages did not occur until a time later than their previous lawsuits were filed. Claimants would like to discount its admissions in the *Alabama* petition because the United States Supreme Court denied the request to file a complaint. However, the procedural history of the action or a party's lack of success has no bearing on whether the admissions are binding. *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3rd Cir. 1996) (the doctrine of judicial estoppel precludes a party from taking an inconsistent position in subsequent litigation, and it does not require the party to have been successful in the previous litigation or otherwise to have benefited from its prior position in order to be judicially estopped from subsequently asserting an inconsistent position). Similarly, Claimants' argument that the *Alabama* petition is vague is disingenuous at best; Claimants themselves have admitted that their claims were part of that suit.

### 3. UC Claimants' Improper, Last-Minute Amendments Have no Effect on UC's Admission that its Claims Were Part of the 1990 *Alabama* Lawsuit.

The UC Claimants have not contested that their original claim forms admit that their pending claims were part of the 1990 *Alabama* lawsuit. The UC Claimants instead argue that their newly-amended claim forms, which were filed on February 16, 2007 - the same date as Debtors' pending motion - fail to state that their claims were included in the 1990 *Alabama* lawsuit. Despite Claimants' unsupported assertions to the contrary, Claimants' purported amendments do not serve to amend their claims and, in any event, any such amendment would have no effect on the evidentiary effects of Claimants' prior admissions.

*First*, the "amendments" do not serve to amend their original claim forms. The Court has discretion whether to deny or allow UC's amendments. *In re Trans World Airlines, Inc.*, 145

F.3d 124, 141 (3d Cir. 1998) (noting that Rule 7015 leaves to the bankruptcy court's discretion

the decision to grant or deny leave to amend claims). In considering whether to allow an

amendment, the Court "examine[s] each fact within the case and determine[s] whether it would

be equitable to allow the amendment." *In re Enron Corp.*, 419 F.3d 115, 133 (2d Cir. 2005),

*quoting In re Integrated Resources, Inc.*, 157 B.R. 66, 70 (S.D.N.Y. 1993). Multiple factors play

a role in this analysis, but "[t]he critical consideration is whether the opposing party will be

unduly prejudiced by the amendment." *Enron*, 419 F.3d at 133, *quoting In re Integrated Res.*

*Inc.,* 157 B.R. 66, 70 (S.D.N.Y. 1993)

There is no question that UC's last-second and ill-intentioned amendments would

"unduly prejudice" Grace. These amendments represent the latest attempt by UC's counsel to

use improper gamesmanship to rewrite history for its own benefit at a particular stage in the

proceeding. A simple glance at the relevant chronology demonstrates the insincerity of, and

prejudice caused by, UC's attempted amendments:

- In March 2003, claims were filed on behalf of the UC Claimants; the claim forms state that the claims were also included in the 1990 *Alabama* lawsuit.

- On September 1, 2005, Debtors filed the Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims in which it is stated that " the face of each of these California University Claims specifically identify a prior disallowed 1990 case against Grace as related to the claim…" (Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims at ¶ 135.) (Dkt. 9315)

- UC Claimants filed amended claims on May 17, 2005, and on August 28, 2006, and those amended claims continue to reference the 1990 *Alabama* lawsuit.

- On January 23, 2007, at a pre-trial conference in this Chapter 11, Debtors' counsel outlined to the Court the motions for summary judgment that Debtors anticipated filing on February 16, 2007, the Court-imposed deadline for filing certain dispositive motions. Debtors' counsel explained that Debtors anticipated filing a motion for summary judgment on California claims, based upon Claimants' admissions of previous claims.

• On February 16, 2007, after learning of Grace's motion, UC's counsel submitted the above-referenced amendments to the UC claims, which no longer reference the 1990 *Alabama* lawsuit.

Thus, the UC Claimants waited over four years to file these amendments, and only did so in response to Debtors' representation to this Court that motions would be filed based upon Claimants' admission. Given Claimants' four-year delay before amending its claims regarding something that transpired sixteen years ago, and Claimants' transparent attempt to manufacture fact issues at the eleventh hour, it would be improper for the Court to allow Claimants' amendments.

*Second,* even if Claimants' amendments could otherwise serve to modify their claims, which they do not, those changes *would have no effect on the evidentiary impact of Claimants' previous admissions* (that their claims were included in the *Alabama* lawsuit). Those sworn statements are admissible for their truth under the Federal Rules of Evidence as (i) prior statements by a witness and (ii) prior admissions by a party-opponent. F.R.E. 801(d)(1),(2) (Hearsay). Put simply, the Federal Rules do not allow Claimants to unring a rung bell. The evidentiary impact of Claimants' previous admissions is particularly compelling, given that Claimants' admissions were made (i) before Claimants knew of Debtors' pending motion, and (ii) on claim forms that were signed by counsel under penalty of perjury.

### 4.   CSU and UC's Johns-Manville Claims Encompassed All of Their Buildings.

CSU argues that its admission in its 1984 and 1985 claims against Johns-Manville that it sustained "asbestos-related property damage" has no bearing on the running of the statute of limitations against Grace. This argument is unavailing for several reasons. First, CSU overlooks the fact that its 1985 claim in the Johns-Manville bankruptcy encompassed *all* asbestos containing materials in all CSU campuses. The fact that CSU may have been unaware of Grace's identity at the time it filed its claim does not delay the running of the statute of

91100-001\DOCS_DE:126089.1                   - 10 -

limitations, which, according to CSU's allegations in the Johns-Manville claim, was triggered when CSU purportedly sustained asbestos property damage prior to filing its 1985 claim. *City of San Diego* v. U.S. Gypsum, 30 Cal. App. 4th 575, 584 (Cal. Ct. App. 1994).

As described more fully in Debtors' Motion, UC's 1985 proof of claim in the Johns-Manville Chapter 11 bankruptcy case also makes clear that UC intended to include in that claim every building that contained asbestos. It is also clear that UC included buildings in their claim regardless of whether Johns-Manville was the manufacturer of the asbestos in the buildings.

UC filed its proof of claim in the Johns-Manville bankruptcy on January 30, 1985, *more than 18 years* before it filed its claims in this Chapter 11. Surely, the investigation that UC began prior to January 30, 1985, to identify the asbestos product source did not take 18 years to complete. Obviously, UC was aware of the presence of asbestos in its buildings and that manufacturers other than Johns-Manville were the source of that asbestos as early as 1985. Therefore, all of UC's claims in this Chapter 11 are barred under the three-year statute of limitations.

## 5.    *SFUSD* Does Not Alter Claimants' Admissions.

Claimants also argue that their admissions in *Alabama* are not relevant because the *Alabama* petition predated *SFUSD v. W.R. Grace.* But *SFUSD* is an appellate court legal decision that does not adjudicate the facts at issue here -- namely, that Claimants alleged they had a cause of action and that their buildings were contaminated as early as 1984, 1985, and 1990, when they filed claims in the Johns-Manville bankruptcy and the *Alabama* petition, and that they therefore believed they had suffered appreciable harm in 1990 -- well outside the limitations period. *SFUSD* reiterated long established California law in holding that if the last element of the cause of action to occur is damage, the statute of limitations begins to run on the occurrence of "appreciable and actual harm, however uncertain in amount," that consists of more

than nominal damages. *SFUSD v. W.R. Grace*, 37 Cal. App. 4th 1318, 1326 (Cal. Ct. App.

1995) (citing *Davies v. Krasna*, 14 Cal. 3d 502, 513-514 (1975); *City of San Diego v. United*

*States Gypsum Company*, 30 Cal. App. 4th 575, 582-583 (Cal. Ct. App. 1994); *Miller v. Lakeside*

*Village Condominium Ass'n*, 1 Cal. App. 4th 1611, 1623 (Cal. Ct. App. 1991)).

### 6.    Building by Building Expert Analysis is Not Required to Trigger the Running of the Limitations Period.

Claimants incorrectly argue that the limitations period on an asbestos property damage

claim can only begin to run after scientific analysis is done on a building by building basis. In

fact, no such analysis is necessary. Neither *City of San Diego* nor *SFUSD* so hold. Nor do *City*

*of Greenville v. W.R. Grace & Co.*, 827 F.2d 975 (4th Cir. 1987) nor *MDU Resources Group v.*

*W.R. Grace & Co.*, 14 F.3d 1274 (8th Cir. 1994) support that proposition. In *City of Greenville*,

the statute of limitations questions of when the plaintiffs' claim first accrued or when the

plaintiffs should have discovered their alleged contamination was not even before the court.

Expert testimony introduced in that case went to the question of the amount of asbestos fibers

present in the building. *City of Greenville*, 827 F.2d at 979.

While the court in *MDU Resources* did consider when the North Dakota statute of

limitations began to run in an asbestos-in-buildings case, it made no pronouncement that expert

testing and analysis was necessary to show contamination. In fact, a footnote in *MDU Resources*

indicates the opposite:

> The harm necessary to begin running the statute of limitations would certainly be
> manifest upon discovery of contamination, and possibly earlier. If, for example, MDU
> expanded or remodeled its building between May of 1980 and six years before filing suit,
> such remodeling could trigger abatement costs and would begin running the statute of
> limitations. Since the record does not demonstrate whether MDU renovated its building
> during the time period in question, we merely note this issue for purposes of the new trial.

(*MDU Resources*, 14 F.3d at 1279 n.8.)

Claimants' attempt to distinguish *City of San Diego,* but their argument actually demonstrates the relevant similarities between that case and this one. Claimants note that "*San Diego* never addressed the question of when the statute of limitations starts to run because the plaintiff had <u>admitted</u> that it had started to run." (CSU Opp'n at 18; UC Opp'n at 28.) (emphasis in original). That is precisely the case here. Claimants have already admitted in both the Johns-Manville and the Alabama claims that they believe their buildings sustained asbestos contamination by 1984, 1985 and 1990. Just as the trial and appellate courts did in *City of San Diego,* this Court may thus reject Claimants' argument that Debtors must prove contamination in each of CSU's buildings, on a building-by-building basis. The *City of San Diego* Court found: "[T]he trial court properly rejected City's argument concerning its causes of action on a building-by-building and product-by-product basis because City's admissions . . . establish appreciable and actual harm beyond the three-year limitations period." 30 Cal. App. 4th at 584 (internal quotations omitted).

**D.      The Public Assistance Doctrine Does Not Help the DGS Claimants.**

The DGS Claimants argue that because the legal theory pursuant to which they purport to have been seeking damages in the *Alabama* case is different from the legal theory under which they purport to be seeking damages in these bankruptcy proceedings, the *Alabama* claim and the current claims do not allege identical injuries. (DGS Opp'n at ¶ 26.) Claimants' argument strains logic. Regardless of what legal theory the State of California was attempting to pursue in the *Alabama* case, there is no question that California in fact expressly alleged contamination of State-owned buildings. DGS cannot hide behind any purported "theory" or "doctrine" to protect itself from its own express allegations of asbestos contamination.

DGS claims that the Public Assistance Doctrine does not require a plaintiff to plead contamination or asbestos property damage. (DGS Opp'n at ¶¶ 21-26.) Arguing that "[e]quitable relief in the form of restitution for the abatement of asbestos differs from monetary damages for appreciable harm resulting in asbestos property damage" (DGS Opp'n at ¶ 22), DGS takes the position that the *Alabama* case alleged the former but not the latter. This is simply not accurate. As set forth in Debtors' motion, the State of California clearly alleged in the *Alabama* suit that buildings owned, operated, and maintained by the State were "***contaminated by asbestos-containing products***," that "each day of ***exposure to asbestos*** put the plaintiff in a position involving an immediate necessity for action," and that the States "have acted to abate the asbestos hazards." California sought to recover damages for "abating the asbestos contamination" in State-owned buildings. In short, California alleged in the *Alabama* case that its public buildings had sustained asbestos contamination constituting a hazard, and that the State had acted to abate that hazard. Thus, even assuming the truth of DGS's argument that the requirements for stating a claim under the Public Assistance Doctrine are less stringent than they are under California law, the fact remains that the *Alabama* case expressly alleged asbestos contamination of State-owned buildings, and both the *Alabama* case and the current claims are – as Claimants characterized them in the *Alabama* case – "***asbestos property damage*** cost recovery action[s]."

**E.     The Conditions Alleged By Claimants in Their Previous Actions Constitute Injury Under Claimants' Own Theory in this Chapter 11.**

Claimants have consistently alleged that a compensable condition exists when the asbestos containing materials are disturbed or damaged. They did so in the *Alabama* proceeding and they have done so again here.

Expert witnesses testifying on the hazard issue on behalf of the CSU Claimants in this case, repeatedly assert that delamination and the presence of debris are indications of contamination. For example, William M. Ewing states in the Executive Summary of his report entitled "Application and Use of Dust Sampling For Asbestos," dated December 7, 2005, at pp. 2-3: "Dust on surfaces is widely accepted to pose a significant risk of exposure because it can be entrained into the air and must be controlled as a matter of public health," and the "presence of dust and debris is usually an indication of damage or deterioration of ACM." Similarly, in his expert report entitled "The Scientific Reliability of the ASTM D-5755-3 Dust Method for the Quantification of Asbestos Surface Contamination," dated December 8, 2005, at p. 20, William E. Longo also claims that in-place ACM releases free respirable asbestos fibers onto building surfaces. Thus, *under Claimants' own theory in this Chapter 11*, Claimants believed their allegedly compensable conditions to have existed far outside of the statutory limitations period.

## CONCLUSION

The California Claimants cannot have their cake and eat it too. The previously asserted claims alleged disturbance of Grace friable asbestos outside of the limitations period. Because Claimants could not have asserted such claims unless they believed their actions to have accrued, the statute of limitations began outside of the applicable three-year period, and the California claims are barred.

An Order expunging these One Hundred Nine (109) claims is attached hereto.

Dated: March 23, 2007

REED SMITH LLP
James J. Restivo, Jr. (Bar No. 10113)
Lawrence E. Flatley (Bar No. 21871)
Douglas E. Cameron (Bar No. 41644)
435 Sixth Avenue
Pittsburgh, PA  15219
Telephone:  (412) 288-3131
Facsimile:  (412) 288-3063

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Lisa Esayian
Samuel L. Blatnick
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

By: _____

Co-Counsel for the Debtors and
Debtors in Possession