# EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

Re: **Docket No. 14720 and 14942**
Agenda: April 2, 2007, Item No. 4

### DEBTORS' REPLY IN SUPPORT OF THEIR APPLICATION TO EMPLOY FORMAN PERRY WATKINS KURTZ & TARDY, LLP

The U.S. Trustee's objection to the Debtors' application to retain Forman Perry Watkins Kurtz & Tardy, LLP ("Forman Perry") *nunc pro tunc* should be overruled. The Court has the power and discretion to issue a *nunc pro tunc* order giving retroactive court approval to Forman Perry's employment as a regular professional under Bankruptcy Code § 327(e). Under the circumstances of these Cases, such approval is warranted and the Application should be granted.

**A.    Forman Perry Should Be Retained *Nunc Pro Tunc***

Forman Perry was retained in these Cases as one of the Debtors' ordinary course professionals to provide services with respect to third party discovery. Forman Perry had a lag time in some of its billing and thus incurred substantial fees and expenses, that now exceed the OCP cap. The Debtors were presented with two options: (1) petition the Court for an increase in the OCP cap as it pertains to Forman Perry; or (2) petition the Court for retention of Forman Perry as a professional under Section 327.

The Debtors elected to file a formal application to employ Forman Perry as special asbestos personal injury third party discovery counsel *nunc pro tunc* to April 1, 2006, when it first rendered services to the Debtors that, due to complex billing issues, were delayed as

discussed below and in the Debtors' Reply in Support of its Motion for Leave Regarding Application to Employ Forman Perry Watkins Kurtz & Tardy, LLP filed concurrently herewith. In the Application, the Debtors and Forman Perry acknowledge the large amount of unpaid fees and unreimbursed expenses outstanding to Forman Perry and provide an explanation for why a portion of the invoices for these fees and expenses were delayed for a time. Once retained as a professional under Section 327, Forman Perry's currently unpaid fees and expenses (and fees and expenses rendered thereafter) will be subject to the Court's interim compensation order requirements, including review by the committees and audit by the fee auditor appointed in these Cases.

The Court has the power and discretion to issue a *nunc pro tunc* order giving retroactive court approval to Forman Perry's employment as a regular professional under Section 327. F/S Airlease II, Inc. v. Simon, 844 F.2d 99, 103 (3d Cir. 1988), cert. denied, 488 U.S. 852 (1988); In re Ark. Co., Inc., 798 F.2d 645 (3d Cir. 1986); Indian River Homes, Inc. v. Sussex Trust Co., 108 B.R. 46 (D. Del. 1989); see also In re 222 Liberty Assocs., 110 B.R. 196 (Bankr. E.D. Pa. 1990); In re TM Carlton House Partners, Ltd., 93 B.R. 875 (Bankr. E.D. Pa. 1988); In re Hospitality Ltd., 86 B.R. 59 (Bankr. W.D. Pa. 1988).

The governing standard in the Third Circuit for such *nunc pro tunc* requests is the two-part test set forth in F/S Airlease II and Arkansas. F/S Airlease II, Inc., 844 F.2d 99; Ark. Co., 798 F.2d at 650. First, the test requires that the court determine that counsel "satisfies the disinterestedness requirement . . . and would therefore have been appointed initially" (the "Disinterestedness Requirement"). F/S Airlease II, 844 F.2d at 105. Second, the test requires that the court determine whether there are extraordinary circumstances present that would warrant retroactive approval (the "Extraordinary Circumstances Requirement"). Id.

<u>Disinterestedness Requirement</u>:   The Debtors submit that Forman Perry satisfies the Disinterested Requirement of Section 327(e).[1]  Forman Perry has been retained as an OCP since late 2005.  There were no objections to their retention as an OCP when Forman Perry filed its Affidavit of Disinterestedness on January 4, 2006.  Further, as outlined in the Application, Forman Perry does not hold any interest adverse to the Debtors or their estates with respect to the matters for which Forman Perry is to be employed.  <u>See</u> Croft Affidavit filed in support of the Application.  In short, Forman Perry does not have any connection with any creditors or other parties-in-interest, or their respective attorneys or accountants, or the United States Trustee or any of its employees, except those discussed in the affidavits.

The U.S. Trustee now contends that it may not be appropriate under Section 327 issue for Forman Perry to represent the Debtors and other clients and divide the cost of document production work among them when it can, although this benefits the Debtors.  The Debtors' cost-sharing arrangement with Forman Perry involves other similarly-situated companies, including those in Chapter 11, who are working to discover the depth and breadth of improperly screened claims in asbestos litigation.  Forman Perry shares costs among its clients when, as third party discovery counsel, Forman Perry issues identical subpoenas on behalf of more than one group of clients to various doctors and screening companies and analyzes the hundreds of the records produced by same.  Forman Perry's work for other companies in Chapter 11 is confined to the identification, determination and analysis of screened plaintiffs in order to assist the clients in their estimation of claims.  Forman Perry does not assist in the prosecution of any claims against any of its clients and is not privy to any information regarding any claims that one individual

---

[1] While the U.S. Trustee's objection cites to Section 327(a), the Applications requests entry of an order pursuant to Section 327(e), authorizing and approving the retention of Forman Perry as special asbestos personal injury third party discovery counsel for the Debtors.

3

client may have against another individual client. Forman Perry's ability to alleviate the fees and expenses otherwise borne by the Debtors by sharing costs among groups of clients does not make Forman Perry "interested" under Section 327(e) as Forman Perry does not and will not hold any interest adverse to the Debtors or their estates **with respect to the matters for which Forman Perry is to be employed**.[2]

The U.S. Trustee also contends that information regarding the cost-sharing arrangement is necessary to determine whether a fee sharing issue exists under Section 504. Section 504 says in relevant party "a person **receiving** compensation or reimbursement under §§ 503(b)(2) or 503(b)(4) of this title may not share. . . ." 11 U.S.C. § 504. Section 504 prohibits **professionals** from sharing or agreeing to share with another person any compensation or reimbursement received by either the debtor or the other person. It is the Debtors that are sharing their cost with Forman Perry's other clients. Forman Perry endeavors to ensure that costs are shared among clients, where appropriate, so as to maximize the benefit of having common projects by minimizing the costs to the individual clients. The Debtors are able to **benefit** from this cost-sharing arrangement among Forman Perry's several clients. The cost-sharing arrangement is more akin to a volume discount but is in no way sharing compensation.

<u>Extraordinary Circumstances Requirements</u>: The Debtors also submit that extraordinary circumstances clearly exist here and are of a nature warranting *nunc pro tunc* approval. See <u>Ark. Co.</u>, 798 F.2d at 650. In <u>Arkansas</u>, the court noted that it would be "unrealistic to set forth the metes and bounds of . . . extraordinary circumstances . . . ." holding that such circumstances were something beyond inadvertence that called for the exercise of the court's discretion and a

---

[2] If the Court determines that the Debtors must disclose the names of Forman Perry's other clients, the parties will need to discuss appropriate arrangements to protect the confidentiality of these names.

91100-001\DOCS_DE:126094.1

balancing of the equities. Id. The term "extraordinary" was not intended to limit circumstances to the peculiar or uncommon, but simply to exclude those cases of mere oversight or neglect by the professional who was in a position to file a timely application. Id.; see also In re United Cos. Fin., Corp., 241 B.R. 521, 526 (Bankr. D. Del. 1999). In determining whether "extraordinary" circumstances exist, the Third Circuit looked to a number of factors, including: (i) whether the applicant or some other person bore responsibility for applying for approval; (ii) whether the applicant was under time pressure to begin services without approval; (iii) the amount of delay after the applicant learned that initial approval had not been granted; (iv) the extent to which compensation will prejudice innocent third parties; and (v) any other relevant factors. Ark. Co., 798 F.2d at 650. The standard set forth in Arkansas allows room for the consideration of additional, "relevant factors" that might form the basis of an "extraordinary circumstances" finding. See Ark. Co., 798 F.2d at 650; see also In re Nat'l Forge Co., 326 B.R. 532, 554 (W.D. Pa. 2005).

The need for *nunc pro tunc* approval of Forman Perry's retention is far from mere oversight or neglect on the Debtors' part. Forman Perry was already retained as an OCP in these Cases. Initially, it was unclear if or when Forman Perry may exceed the $800,000 OCP cap. A delay ensued in the rendering of some of Forman Perry's final invoices as discussed above. The date of the first corrected invoice that the Debtors are requesting *nunc pro tunc* approval of is November 20, 2006; it was received by the Debtors sometime thereafter but includes some unpaid work from April 2006.

As soon as the Debtors became aware that Forman Perry's fees and expenses were going to rise above the court-ordered $800,000 OCP cap, the Debtors undertook the process of working with Forman Perry to prepare a retention application. As part of this application process,

Forman Perry undertook to update its conflicts analysis to analyze any new potential conflicts of interest. The Application was filed s soon as Forman Perry finished its updated conflicts analysis, the rather complicated billing issues were resolved and the Application was finalized.

Another factor to consider in evaluating whether extraordinary circumstances exist is whether the professional was under time pressure to begin service without court approval. F/S Airlease II, 844 F.2d at 105-06 (citing Ark. Co., 798 F.2d at 650). As stated above, Forman Perry was already retained as an OCP in these Cases. Forman Perry has been working at a fast pace with respect to obtaining and analyzing over 1.3 million pages of discovery from screening companies and doctors. It was under time pressure to obtain and analyze this discovery because the Debtors themselves were under tight time deadlines in connection with their trial on estimation of personal injury claims. The Debtors have issued approximately twenty-one subpoenas to litigation physicians and screening enterprises. The litigation physicians and screening enterprises have produced over 1,377,887 documents pursuant to these subpoenas. All of these documents have been analyzed by Forman Perry. The document productions took place in six different states. The larger productions required up to five copiers to be moved onsite and a team of up to twelve staff members to assess the filing system involved, prepare each file (remove all staples, paper clips and other binding), copy each file (including all notes and post-it notes placed within the file), rebuild the original file exactly as produced, build the copy of the file to match the original file produced, prepare copied files for shipment, and refile all original documents as they were produced in the filing systems for the screeners and doctors. Most physicians and screeners had their own attorney present to supervise the document production and, therefore, many productions required the attendance of a Forman Perry attorney as well.

There was no significant delay in filing the Application from the time that the Debtors realized that Forman Perry would exceed the OCP cap. As described above, as soon as the Debtors became aware of the amounts of the November and December 2006 fees and expenses, the application process was undertaken. The delay, therefore, was only a few months. Such a delay is not the type contemplated by the Third Circuit in <u>Arkansas</u> (13 months delay) and <u>F/S Airlease II</u> (more than 7 months delay). See also <u>In re ACandS, Inc.</u>, 297 B.R. 395 (Bankr. D. Del. 2003 (9 months delay); <u>In re Lewis</u>, 30 B.R. 404 (E.D. Pa. 1983) (20 months delay).

Finally, compensating Forman Perry for the services it rendered on behalf of the Debtors between April 1, 2006 and March 1, 2007 will not prejudice anyone. The Debtors and their estates have benefited from Forman Perry's diligent and exhaustive efforts. It would be an impermissible windfall for the Debtors to have the benefit of these services without compensating Forman Perry for them. In fact, pursuant to Section 507(a)(2), such services are actual, necessary costs and expenses of preserving the estate and are thus administrative expenses as defined in Section 503(b).

Based on the above factors, the Debtors respectfully request the Court authorize Forman Perry's *nunc pro tunc* retention. Further, "bankruptcy courts have traditionally been governed by equitable principles rather than by statutory technicalities." <u>Ark. Co.</u>, 798 F.2d at 648; <u>NLRB v. Bildisco & Bildisco</u>, 465 U.S. 513, 527 (1984). A familiar principal of equity is that services that were properly furnished "for the common benefit of those interested in a fund administered by the court, should be paid from the fund," and that "an expense which [the court] has permitted for the common benefit . . . in equity and good conscience, should be satisfied" before the claims of pre-existing creditors are satisfied. <u>N.Y. Dock Co. v. The Poznan</u>, 274 U.S. 117, 121-22 (1927). The Third Circuit in <u>Arkansas</u> noted that equitable concerns may "weigh in favor of

granting retroactive approval to enable deserving professionals to recover compensation for work actually done." Ark. Co., 798 F.2d at 648.[3] Further, a "court ordinarily does not wish to deny compensation to a competent professional who performs valuable service to the bankruptcy estate." In re Tidewater Mem'l Hosp., 110 B.R. 221, 225 (Bankr. E.D. Va. 1989).

Refusal to grant *nunc pro tunc* approval to Forman Perry would be inequitable and unjust under the circumstances. The Third Circuit has stated that the requirement of prior court approval acts as "a means of ensuring 'that the court may know the type of individual who is engaged in the proceeding, their integrity, their experience in connection with work of this type, as well as their competency concerning the same.'" Ark. Co., 798 F.2d at 648 (quoting In re Hydrocarbon Chems., Inc., 411 F.2d 203, 205 (3d Cir. 1969)) (en banc). None of these concerns are present here given that Forman Perry has been retained as an OCP in these Cases since late 2005. The parties in these Cases were aware that the Debtors were utilizing Forman Perry's services and no objections were made to Forman Perry's retention as an OCP. Forman Perry has performed the work requested of it by the Debtors diligently, competently, and at a cost far less than any other professional could have charged. The Debtors are merely requesting that Forman Perry now be retained as professional under Section 327(e) rather than as an ordinary course professional due to the substantial amount of services that Forman Perry has provided and is expected to provide in the near future in these Cases.

**B.   Any Objections to Forman Perry's Fees Should Be Dealt With In Context of Forman Perry's Fee Applications**

Finally, the U.S. Trustee's objection notes its concern over the amount of the unpaid legal fees and expenses. If the U.S. Trustee is objecting to the amount of Forman Perry's fees, it can

---

[3] Indeed, the Supreme Court has recognized the overriding consideration that equitable principals govern the exercise of bankruptcy jurisdiction. Bank of Marin v. England, 385 U.S. 99 (1966). This view should be adopted in cases of *nunc pro tunc* employment applications as the bankruptcy court is a court of equity.

do so upon Forman Perry's submission of its application for compensation. Those fees will also be subject to scrutiny by the Court appointed fee auditor.

WHEREFORE, the Debtors respectfully request that the U.S. Trustee's objection to the Debtors' application to employ Forman Perry be overruled.

Dated: March 23, 2007

        KIRKLAND & ELLIS LLP
        David M. Bernick, P.C.
        Janet S. Baer
        Andrea L. Johnson
        200 East Randolph Drive
        Chicago, IL 60601
        Telephone: (312) 861-2000

        and

        PACHULSKI STANG ZIEHL YOUNG JONES
        & WEINTRAUB LLP

        _____
        Laura Davis Jones (Bar No. 2436)
        James E. O'Neill (Bar No. 4042)
        Timothy P. Cairns (Bar No. 4228)
        919 North Market Street, 17th Floor
        P.O. Box 8705
        Wilmington, DE 19899-8705 (Courier 19801)
        Telephone: (302) 652-4100
        Facsimile: (302) 652-4400

        Co-Counsel for the Debtors and Debtors in Possession