# EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Re: Docket No. 14721 and 14883**
Agenda: April 2, 2007, Item No. 4

### DEBTORS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE REGARDING DEBTORS' APPLICATION TO EMPLOY FORMAN PERRY WATKINS KURTZ & TARDY, LLP

Sufficient cause exists to hear the Debtors' Application to Employ Forman Perry on April 2, 2007. The work that Forman Perry is doing for the Debtors is vital to their estimation discovery. The Application was filed only three days after the deadline. The delay in filing the Application was necessary to ensure its accuracy. Thus, in light of the circumstances and in the interest of justice and fairness to all parties, the Application should be heard on April 2, 2007.

### A.  Sufficient Cause and Exigencies Exist for the Debtors' Application to Be Heard at the April Hearing

Bankruptcy Rule 9006(c) expressly provides that the bankruptcy court, in its discretion, may "for cause shown" reduce notice periods. See Fed. R. Bankr. P. 9006(c); Del. Bankr. L.R. 9006-1(e). Such reductions are routinely granted by bankruptcy courts, including this one. See, e.g., Orders Shortening Notice Periods, Docket Nos. 1947, 9393, 14913; Hester v. NCNB Tex. Nat'l Bank (In re Hester), 899 F.2d 361, 364 n. 3 (5th Cir. 1990). In considering such a motion, courts are to balance possible prejudice to other parties against the reasons advanced for reducing the notice. See In re Grant Broad. of Phila., Inc., 71 B.R. 390 (Bankr. E.D. Pa. 1987).

The Debtors were diligently working with Forman Perry to meet the February 26, 2007 filing deadline. However, as described below, in an effort to ensure complete accuracy, there

was a delay in finalizing the disclosures regarding the amount of unpaid legal expenses and fees. These issues delayed the filing of the Application until March 1, 2007, a mere three days after the deadline. In the Motion for Leave, the Debtors also requested a corresponding extension of the objection deadline by four days to ensure that all parties in interest would have adequate time to respond to the Application. As a result, no parties were prejudiced by the three day delay in filing the Application.

The Debtors delayed filing the Application so that they could ensure that the Application contained completely accurate information with respect to paid, unpaid, billed, and incurred but unbilled fees and expenses owed to Forman Perry. Ascertaining these figures was complicated by the following issues:

        1.     Forman Perry/ Absalom Issues:

At the time of its initial retention as an OCP, Forman Perry directly paid Absalom, Inc. -- a document management vendor who works with Forman Perry in collecting documents, performing substantive coding and creating and maintaining database access -- and then billed the Debtors for reimbursement of Absalom's fees as a line item expense on their invoices. Once the Debtors realized the extent of the work being done by Absalom, the Debtors directed Absalom to bill the Debtors separately.

As a consequence, the Debtors requested that certain billed, yet unpaid, Forman Perry invoices (which included Absalom work) be reversed and regenerated to indicate only Forman Perry fees and expenses. Forman Perry then reissued the corrected invoices in November 2006. However, in the apparent confusion regarding the new payment protocol, when Forman Perry regenerated the new invoices, Forman Perry split the fees and expenses from each of the reissued invoices into three new, separate invoices based on the type of work performed by Forman Perry

2

and Absalom, rather than the entity performing the work. Some of these new invoices were then paid by the Debtors directly under the OCP order, while others were paid by Kirkland & Ellis to Absalom consistent with this Court's Order Authorizing the Retention of Experts (Docket No. 514) dated June 22, 2001. Other Forman Perry invoices remain outstanding.

It was subsequently discovered that there was also apparent confusion by Absalom regarding the new payment protocol. For example, the Debtors determined that instead of Absalom billing separately for its work, Absalom had submitted invoices which included not only its work on the document production and screening analysis projects but also Forman Perry's related work on these projects. Certain Forman Perry employees were overseen by Absalom for these projects and thus Absalom included their time on Absalom's invoices. In addition, as part of this process, Forman Perry also submitted to Grace its own invoices covering the same legal fees and expenses and Absalom work. Thus, in some instances, the Debtors received mistakenly duplicate invoices from Forman Perry and Absalom, further complicating the situation.

Once the Debtors realized the confusion, the Debtors directed Forman Perry to reverse all of its outstanding bills, yet again, and to bill all Forman Perry legal fees and expenses, including those of Forman Perry employees who have been working under Absalom, on one set of invoices to Grace. Hence, assuming approval of Forman Perry's retention application, in the future, the fees and expenses for all Forman Perry personnel will be billed directly by Forman Perry and included in the Forman Perry fee applications. Absalom-only work will be sent to Kirkland & Ellis to be billed as expert expenses as part of their fee application.

3

2.    <u>Cost-Sharing Arrangement:</u>

Certain Forman Perry invoices related to the production and analysis of documents from various screening companies and doctors are generated with a slight delay so that Forman Perry can accurately divide the relevant fees and expenses among its appropriate clients.[1]  Forman Perry's ability to divide these costs among a group of its clients greatly benefits the Debtors, allowing the Debtors to bear only a portion of the total cost for each production -- typically around 40% of the total fees and expenses.

As a result of the above-described standard delay in billing caused by cost-sharing, the Debtors' prior requests for reversal and re-billing of certain invoices, and the culling of Absalom fees and expenses, the Debtors felt compelled to take extra precautions to ensure that all of the information in their Application relating to unpaid fees and expenses owed to Forman Perry was complete and accurate.  It was this diligence that led to a mere three day delay in filing the Application on March 1, 2007, over a month in advance of the April 2, 2007 hearing.

A delay in hearing the Application will: (i) result in a further increase in the amount of outstanding Forman Perry bills prior to Forman Perry's formal retention; (ii) potentially jeopardize the Debtors' working relationship with Forman Perry; and (iii) potentially slow down the vital work that Forman Perry is performing for the Debtors.  Forman Perry's services are indispensable and critical to the preparation of the Debtors' case regarding asbestos personal injury claims estimation.  Forman Perry has extensive experience and expertise in this area and is uniquely able to provide these specialized legal services.  If the Application is not heard until the

---

[1]  The PI Committee claims that until the Debtors disclose the "several clients" and the "complex cost-sharing" arrangement between these Forman Perry clients and the Debtors, the Court will have no basis to determine whether the terms of Forman Perry's retention are appropriate. Further, the PI Committee claims that this information is needed to determine whether Forman Perry meets the disinterestedness requirements of section 327(a) of the Bankruptcy Code. These contentions are addressed in section B below.

4

May 2, 2007 hearing, it puts both Forman Perry and the Debtors at risk at a critical time in the estimation process.

In its objection, the PI Committee states that "there is no contention that the failure to hear the Application at the April 2, 2007 hearing will somehow affect other matters scheduled to be heard during that hearing." There is. The estimation process and various issues related thereto will be discussed at that hearing. By not addressing this Application at the April hearing, the Debtors' work on estimation could be adversely affected.

Finally, the PI Committee notes in its Objection that it recently served discovery on the Debtors regarding the Forman Perry invoices. It should be noted that the PI Committee waited 14 days after the Application was filed, until March 15, to request the underlying Forman Perry invoices.[2] The U.S. Trustee issued a similar request shortly thereafter. The Debtors worked diligently and expeditiously to obtain and review the invoices, redact all privileged and confidential materials, and organize and explain all such invoices to the PI Committee and the U.S. Trustee. The Debtors produced all Forman Perry invoices on March 21 and 22, 2007. The Debtors understand that the PI Committee and U.S. Trustee need sufficient time to analyze the documentation produced. However, the hearing date requested is not for another ten days. If this is not enough time to review the information produced, the Debtors request assurance that they and Forman Perry will not be harmed or prejudiced by the delay in hearing the Application.

---

[2] As authority for seeking such invoices, the PI Committee presumably relied on the Debtors' OCP Motion of April 2, 2001 (Docket No. 30) which provides that "[t]o the extent parties-in-interest have questions or concerns related to payments to any Ordinary Course Professional, the Debtors will supply such parties with additional information regarding the work performed and the fees and expenses incurred to permit such parties to reasonably evaluate such payments." The OCP statement which triggered the initial objection from the PI Committee was filed on January 17, 2007. The PI Committee's discovery request, therefore, is rather tardy when considered in light of the full record.

5

**B.    Forman Perry Should Be Retained *Nunc Pro Tunc* and Any Objections to Fees Should Be Dealt With In Context of Forman Perry's Fee Application**

The PI Committee's underlying objection appears to be related in part to the Debtors' Application to employ Forman Perry *nunc pro tunc*.    The Debtors believe that, under the circumstances of the case, such approval is warranted.  For a complete discussion regarding *nunc pro tunc* approval, please see the Debtors' Reply in Support of Application to Employ Forman Perry Watkins Kurtz & Tardy, LLP filed concurrently herewith.  Further, the PI Committee also appears to be objecting to the amount of Forman Perry's fees.  Upon retention, Forman Perry will file a formal fee application for all outstanding fees and expenses.  Those fees and expenses will be subject to scrutiny by all parties including the Court appointed fee auditor.  Filing an objection to Forman Perry's retention application is not the correct avenue to challenge the amount of such fees.

WHEREFORE, the Debtors respectfully request that the PI Committee's objection to the Debtors' Motion for Leave be overruled.


Dated:  March 23, 2007

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Andrea L. Johnson
200 East Randolph Drive
Chicago, IL  60601
Telephone:  (312) 861-2000

and

6

PACHULSKI STANG ZIEHL YOUNG, JONES
& WEINTRAUB LLP

_____

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession