# Exhibit 7

---

### WR Grace
### Personal Injury Questionnaire (PIQ)
# Final Cover Sheet



Doc ID: **62495**        Date Received: **11-14-2006**        Confirmed Form Type: **PIQ**

Firm #: **990169**      Firm Name: **MOTLEY RICE**

Attorney #: **990193**   Attorney Name: **RICE, JOSEPH F**

Page Count Information:

Verified Form Count: 20        Verified Attach. Count: 25

**Total Pages submitted Incl. Cover Sheet: 46**

Rust ID: **60288264**                    BMC Footer Number: **0**

**Other Comments:**
- Code 1 - Objections Attached
- 
- 
- Other:





# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

REC'D NOV 1 4 2006

RE:          **REDACTED**

Motley Rice LLC

P.O. Box 1792

Mount Pleasant, SC 29465



*NOT-AVAILABLE*



WR GRACE PIQ 62495-0002

[THIS PAGE INTENTIONALLY LEFT BLANK.]



WR GRACE PIQ 82486-0003

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

# W. R. Grace
# Asbestos Personal Injury
# Questionnaire

YOU HAVE RECEIVED THIS QUESTIONNAIRE BECAUSE GRACE BELIEVES THAT YOU HAD SUED ONE OR MORE OF THE DEBTORS LISTED IN APPENDIX A ATTACHED TO THIS QUESTIONNAIRE BEFORE GRACE FILED FOR BANKRUPTCY ON APRIL 2, 2001 FOR AN ASBESTOS-RELATED PERSONAL INJURY OR WRONGFUL DEATH CLAIM, AND THAT CLAIM WAS NOT FULLY RESOLVED.

IF YOU HAVE SUCH A CLAIM, YOU MUST COMPLETE AND SUBMIT THIS QUESTIONNAIRE BY JANUARY 12, 2006 TO RUST CONSULTING, INC., THE CLAIMS PROCESSING AGENT, AT ONE OF THE FOLLOWING ADDRESSES:

| IF SENT BY U.S. MAIL | IF SENT BY FEDERAL EXPRESS, UNITED PARCEL SERVICE, OR A SIMILAR HAND DELIVERY SERVICE |
|---|---|
| RUST CONSULTING, INC. | RUST CONSULTING, INC. |
| CLAIMS PROCESSING AGENT | CLAIMS PROCESSING AGENT |
| RE: W.R. GRACE & CO. BANKRUPTCY | RE: W.R. GRACE & CO. BANKRUPTCY |
| P.O. BOX 1620 | 201 S. LYNDALE AVE. |
| FARIBAULT, MN 55021 | FARIBAULT, MN 55021 |

A QUESTIONNAIRE (AND ANY AMENDMENTS OR ADDITIONAL DOCUMENTS IN SUPPORT OF THE QUESTIONNAIRE) WILL NOT BE CONSIDERED UNLESS RECEIVED BY RUST CONSULTING, INC. BY JANUARY 12, 2006.

THIS QUESTIONNAIRE IS AN OFFICIAL DOCUMENT APPROVED BY THE COURT IN CONNECTION WITH ESTIMATING GRACE'S ASBESTOS-RELATED PERSONAL INJURY AND WRONGFUL DEATH CLAIMS AS A WHOLE. THE QUESTIONNAIRE IS BEING USED BY W. R. GRACE AS A MEANS TO SEEK INFORMATION ABOUT YOUR ASBESTOS CLAIM. BY TIMELY RETURNING THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE, GRACE, THE OFFICIAL COMMITTEES, AND THE FUTURE CLAIMANTS REPRESENTATIVE WILL SEEK TO PRIORITIZE THE PROCESSING OF YOUR CLAIM UNDER ANY TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION.

THE COURT HAS ORDERED THAT, AS PART OF THE DISCOVERY PROCESS, ALL HOLDERS OF PRE-PETITION ASBESTOS PERSONAL INJURY CLAIMS MUST COMPLETE AND RETURN THIS QUESTIONNAIRE. THUS, FAILURE TO TIMELY RETURN THE QUESTIONNAIRE AS COMPLETELY AND ACCURATELY AS POSSIBLE MAY RESULT IN SANCTIONS AND/OR OTHER RELIEF AVAILABLE UNDER APPLICABLE FEDERAL RULES.

BECAUSE YOUR CLAIM WILL BE EVALUATED IN ACCORDANCE WITH THE TRUST DISTRIBUTION PROCEDURES APPROVED AS PART OF A PLAN OF REORGANIZATION, COMPLETION OF THIS QUESTIONNAIRE DOES NOT MEAN THAT YOUR CLAIM WILL EITHER BE ALLOWED OR PAID. TO THE EXTENT YOU ATTACH TO THIS QUESTIONNAIRE DOCUMENTS ALSO NEEDED BY THE TRUST TO PROCESS YOUR CLAIM, SUCH DOCUMENTS WILL BE PROVIDED TO THE TRUST AND YOU WILL NOT NEED TO RESUBMIT THEM.

i

WR GRACE PIQ 62486-0004

## INSTRUCTIONS

### A. GENERAL

1. This Questionnaire refers to any lawsuit that you filed before April 2, 2001 for an "asbestos-related personal injury or wrongful death claim." This term is intended to cover any lawsuit alleging any claim for personal injuries or damages that relates to: (a) exposure to any products or materials containing asbestos that were manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present affiliates, or any of the predecessors of any of the Debtors or any of their respective past or present affiliates), or (b) exposure to vermiculite mined, milled or processed by the Debtors (or any of their respective past or present affiliates, any of the predecessors of any of the Debtors or any of their predecessors' respective past or present affiliates). It includes claims in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law or equity, or admiralty for, relating to, or arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal injuries or other damages caused, or allegedly caused, directly or indirectly, and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors. It includes all such claims, debts, obligations or liabilities for compensatory damages such as loss of consortium, personal or bodily injury (whether physical, emotional or otherwise), wrongful death, survivorship, proximate, consequential, general, special, and punitive damages.

2. Your Questionnaire will be deemed filed only when it has been received by Rust Consulting Inc., the Claims Processing Agent, via U.S. Mail, Federal Express, United Parcel Service or a similar hand delivery service. A Questionnaire that is submitted by facsimile, telecopy or other electronic transmission will not be accepted and will not be deemed filed.

   Do not send any Questionnaire to the Debtors, counsel for the Debtors, the Future Claimants Representative, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Asbestos Property Damage Claimants, the Official Committee of Equity Security Holders, or such Committees' counsel. Questionnaires that are filed with or sent to anyone other than Rust Consulting, Inc. will be deemed not to have been submitted, and such Questionnaires will not be considered.

3. Your completed Questionnaire must (i) be written in English, and (ii) attach relevant supporting materials as instructed further below.

4. All holders of claims described on page i (and as described in further detail in Instruction A (1) above) are required to file this Questionnaire by Jan. 12, 2006. Your Questionnaire will be used in connection with the estimation hearing to be conducted by the Court pursuant to the Estimation Procedures Order (a copy of which is attached as Appendix B).

5. Any subsequent amendment to the Questionnaire will not be considered for any purpose unless received by Jan. 12, 2006.

### B. PART I — Identity of Injured Person and Legal Counsel

Respond to all applicable questions. If you are represented by a lawyer, then in Part I (b), please provide your lawyer's name and the name, telephone number and address of his/her firm. If you are represented by a lawyer, he/she must assist in the completion of this Questionnaire. Also, if you would prefer that the Debtors send any additional materials only to your lawyer, instead of sending such materials to you, then check the box indicating this in Part I (b).

All references to "you" or the like in Parts I through X shall mean the injured person. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete this Questionnaire.

### C. PART II — Asbestos-Related Condition(s)

Please indicate all asbestos-related medical conditions for which you have been diagnosed. To complete questions related to injuries, medical diagnoses, and/or conditions, please use the following categories of customarily diagnosed conditions:

- Mesothelioma
- Asbestos-Related Lung Cancer
- Other Cancer (colon, laryngeal, esophageal, pharyngeal, or stomach)
- Clinically Severe Asbestosis
- Asbestosis
- Other Asbestos Disease

If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

**Supporting Documents for Diagnosis:** This Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that support or conflict with your diagnosis.

**X-rays and B-reads:** Please attach all x-ray readings and reports. You may, but are not required to, attach chest x-rays. The court, however, has ruled that Grace may seek access to chest x-rays upon request.

**Pulmonary Function Tests:** Please attach all pulmonary function test results, including the actual raw data and all spirometric tracings, on which the results are based.

ii


WR GRACE PIQ 82406-0006

**D. PART III – Direct Exposure to Grace Asbestos-Containing Products**

In Part III, please provide the requested information for the job and site at which you were exposed to Grace asbestos-containing products. Indicate the dates of exposure to each Grace asbestos-containing product. If your exposure was a result of your employment, use the list of occupation and industry codes below to indicate your occupation and the industry in which you worked at each site. If you allege exposure to Grace asbestos-containing products at multiple sites, the Court has ordered that you must complete a separate Part III for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

Attach copies of any and all documents establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the disease.

## Occupation Codes

01. Air conditioning and heating installer/maintenance
02. Asbestos miner
03. Asbestos plant worker/asbestos manufacturing worker
04. Asbestos removal/abatement
05. Asbestos sprayer/spray gun mechanic
06. Assembly line/factory/plant worker
07. Auto mechanic/bodywork/brake repairman
08. Boilermaker
09. Boiler repairman
10. Boiler worker/cleaner/inspector/engineer/installer
11. Building maintenance/building superintendent
12. Brake manufacturer/installer
13. Brick mason/layer/hod carrier
14. Burner operator
15. Carpenter/woodworker/cabinetmaker
16. Chipper
17. Clerical/office worker
18. Construction - general
19. Custodian/janitor in office/residential building
20. Custodian/janitor in plant/manufacturing facility
21. Electrician/inspector/worker
22. Engineer
23. Firefighter
24. Fireman
25. Flooring installer/tile installer/tile mechanic
26. Foundry worker
27. Furnace worker/repairman/installer
28. Glass worker
29. Heavy equipment operator (includes truck, forklift, & crane)
30. Insulator
31. Iron worker
32. Joiner
33. Laborer
34. Longshoreman
35. Machinist/machine operator
36. Millwright/mill worker
37. Mixer/bagger
38. Non-asbestos miner
39. Non-occupational/residential
40. Painter
41. Pipefitter
42. Plasterer
43. Plumber - install/repair
44. Power plant operator
45. Professional (e.g., accountant, architect, physician)
46. Railroad worker/carman/brakeman/machinist/conductor
47. Refinery worker
48. Remover/installer of gaskets
49. Rigger/stevedore/seaman
50. Rubber/tire worker
51. Sandblaster
52. Sheet metal worker/sheet metal mechanic
53. Shipfitter/shipwright/ship builder
54. Shipyard worker (md. repair, maintenance)
55. Steamfitter
56. Steelworker
57. Warehouse worker
58. Welder/blacksmith
59. Other

## Industry Codes

001. Asbestos abatement/removal
002. Aerospace/aviation
100. Asbestos mining
101. Automotive
102. Chemical
103. Construction trades
104. Iron/steel
105. Longshore
106. Maritime
107. Military (other than U.S. Navy)
108. Non-asbestos products manufacturing
109. Petrochemical
110. Railroad
111. Shipyard-construction/repair
112. Textile
113. Tire/rubber
114. U.S. Navy
115. Utilities
116. Grace asbestos manufacture or milling
117. Non-Grace asbestos manufacture or milling
118. Other

iii

WR GRACE PIQ 62495-0008

**E.  PART IV – Indirect Exposure to Grace Asbestos-Containing Products**
In Part IV, please provide the information requested for any injury alleged to have been caused by exposure to Grace asbestos-containing products through contact/proximity with another injured person.  If you allege exposure through contact/proximity with multiple injured persons, please complete a separate Part IV for each injured person.  For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.

**F.  PART V -- Exposure to Non-Grace Asbestos-Containing Products**
In Part V, please provide the requested information for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate Part V for each party.  If exposure was in connection with your employment, use the list of occupation and industry codes in Part III to indicate your occupation and the industry in which you worked.  For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

**G.  PART VI – Employment History**
In Part VI, please provide the information requested for each industrial job you have held, other than jobs already listed in Parts III or V.  Use the list of occupation and industry codes in the instructions to Part III to indicate your occupation and the industry in which you worked for each job.  Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**H.  PART VII – Litigation and Claims Regarding Asbestos and/or Silica**
In Part VII, please describe any lawsuits and/or claims that were filed by you or on your behalf regarding asbestos or silica.

**I.  PART VIII – Claims by Dependents or Related Persons**
Part VIII is to be completed only by dependents or related persons (such as spouse or child) of an injured person who sued the Debtors before April 2, 2001 for an asbestos-related personal injury or wrongful death claim against Grace not involving physical injury to him/herself on account of his/her own exposure.  One example of such a claim would be a claim for loss of consortium.  If you are asserting such a claim, complete the entire Questionnaire, providing all information and documentation regarding the injured person.

**J.  PART IX – Supporting Documentation**
In Part IX, please mark the boxes next to each type of document that you are submitting with this Questionnaire.  As indicated in the instructions to Parts II and III, this Questionnaire must be accompanied by copies, with access to originals upon request, of any and all documents you, your counsel, or your doctors have or subsequently obtain that (a) support or conflict with your diagnosis and/or (b) establish exposure to Grace asbestos-containing products as having a substantial causal role in the development of the medical diagnoses, and/or conditions claimed.  Original documents provided to Grace will be returned within a reasonable time after its professionals and experts have reviewed the documents.

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such cost.

**K.  PART X -- Attestation that Information is True, Accurate and Complete**
By signing Part X, you, the injured person, are attesting and swearing, under penalty of perjury, that, to the best of your knowledge, all of the information in this Questionnaire is true, accurate and complete. If the injured person is deceased, then the executor of the person's will (or similar estate representative) must complete and sign Part X on behalf of the injured person.

The legal representative of the injured person must complete and sign Part X where indicated.

WR GRACE PIQ 62486-0007

## PART I: IDENTITY OF INJURED PERSON AND LEGAL COUNSEL

**a. GENERAL INFORMATION**

1. Name of Claimant:                                             **REDACTED**

2. Gender:                                                          Male

3. Race (for purposes of evaluating Pulmonary Function Test      Not Available
   results):

4. Last Four Digits of Social Security Number:

5. Birth Date:                                                   **REDACTED**

6. Mailing Address:

7. Daytime Telephone Number:

**b. LAWYER'S NAME AND FIRM**

1. Name of Lawyer:                                   Joseph F. Rice, Esquire

2. Name of Law Firm With Which Lawyer is Affiliated:  Motley Rice LLC

3. Mailing Address of Firm:                          Post Office Box 1792
                                                     Mount Pleasant, SC 29465

4. Law Firm's Telephone Number or Lawyer's Direct Line:  843-216-9000

[X]  Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in lieu of sending such materials to you.

**c. CAUSE OF DEATH (IF APPLICABLE)**

1. Is the injured person living or deceased?          Living

   If deceased, date of death:

2. If the injured person is deceased, then attach a copy of the
   death certification to this Questionnaire and complete the
   following:

   Primary Cause of Death (as stated in the Death
   Certificate):

   Contributing Cause of Death (as stated in the Death
   Certificate):

## PART II: ASBESTOS-RELATED CONDITION(S)

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire

**1. Condition being alleged:  See attached Medical Profile and attached Medical Records**

[ ] Asbestos-Related Lung Cancer          [ ] Mesothelioma

[ ] Asbestosis                            [ ] Other Cancer (cancer not related to lung cancer or
                                              mesothelioma)

[ ] Other Asbestos Disease                [ ] Clinically Severe Asbestosis

   **a. Mesothelioma:**  If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following
   (check all that apply):

   **[Objection 1]**  diagnosis from a pathologist certified by the American Board of Pathology

   **[Objection 1]**  diagnosis from a second pathologist certified by the American Board of Pathology

1

WR GRACE PIQ 62406-0008

[Objection 1] diagnosis and documentation supporting exposure to Grace asbestos-containing product substantial causal role in the development of the condition

[ ] other (please specify):

b. **Asbestos-Related Lung Cancer:** If alleging Asbestos-Related Lung Cancer, were you diagnosed with primary lung cancer based on the following (check all that apply):

[Objection 1] findings by a pathologist certified by the American Board of Pathology

[Objection 1] evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's 2000 *International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

[Objection 1] evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's 2000 *International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

[Objection 1] evidence of asbestosis determined by pathology

[Objection 1] evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

[Objection 1] evidence of asbestos-related nonmalignant disease based on a chest x-ray reading of at least 1/0 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

[Objection 1] diffuse pleural thickening as defined in the International Labour Organization's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

[Objection 2] a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the lung cancer

other (please specify):

c. **Other Cancer:**

(i) If alleging Other Cancer, please mark the box(es) next to the applicable primary cancer(s) being alleged:

[ ] colon          [ ] pharyngeal          [ ] esophageal          [ ] laryngeal          [ ] stomach cancer

[ ] other, please specify:

(ii) Were you diagnosed with the above-indicated cancer based on the following (check all that apply):

[Objection 1] findings by a pathologist certified by the American Board of Pathology

[Objection 1] evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's 2000 *International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

[Objection 1] evidence of asbestosis based on a chest x-ray reading of at least 1/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's 2000 *International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

[ ] evidence of asbestosis determined by pathology

[Objection 2] a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the cancer

[ ] other (please specify):

d. **Clinically Severe Asbestosis:** If alleging Clinically Severe Asbestosis, was your diagnosis based on the following (check all that apply):

2

WR GRACE PIQ 62496-0009

[Objection 1] diagnosis of a pulmonologist or internist certified by the American Board of Internal M

[Objection 1] a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's 2000 *International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

[Objection 1] a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's 2000 *International Classification of Radiographs of Pneumoconioses* and (b) by a second B-reader certified by the National Institute for Occupational Safety and Health

[ ] asbestosis determined by pathology .

[ ] a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating total lung capacity less than 65% predicted

[ ] a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

[Objection 2] a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

[ ] other (please specify):

e.  **Asbestosis:** If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

[Objection 1] diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

[Objection 1] a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's 2000 *International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

[Objection 1] a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's 2000 *International Classification of Radiographs of Pneumoconioses* by a second B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

[ ] asbestosis determined by pathology

[ ] a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

[Objection 2] a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

[ ] other (please specify):

f.  **Other Asbestos Disease:** If alleging any asbestos-related injuries, medical diagnoses, and/or conditions other than those above, was your diagnosis based on the following (check all that apply):

[Objection 1] diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

[ ] diagnosis determined by pathology

[Objection 1] a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's 2000 *International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

[Objection 1] a chest x-ray reading conducted in compliance with the standards set forth in the International Labour Organization's 2000 *International Classification of Radiographs of Pneumoconioses* by a second B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of*

3

*Radiographs and Pneumoconioses* (2000)

[ ] a chest x-ray reading other than those described above

[ ] a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's Lung *Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEVI/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

[ ] a pulmonary function test other than that discussed above

[Objection 2] a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

[ ] a CT Scan or similar testing

[ ] a diagnosis other than those above

[ ] other (please specify):

2. **Information Regarding Diagnosis   See Attached Medical Profile and Medical Records**

**Date of Diagnosis:**

**Diagnosing Doctor's Name:**

**Diagnosing Doctor's Specialty:** [ Objection 1]

**Diagnosing Doctor's Mailing Address:** [ Objection 2]

**Diagnosing Doctor's Daytime Telephone Number:** [ Objection 2]

**With respect to your relationship to the diagnosing doctor, check all applicable boxes:**

Was the diagnosing doctor your personal physician? [ Objection 3]

Was the diagnosing doctor paid for the diagnostic services that he/she performed? [ Objection 3]

*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the diagnosing doctor? [ Objection 3]

Was the diagnosing doctor referred to you by counsel? [ Objection 3]

Are you aware of any relationship between the diagnosing doctor and your legal counsel? [ Objection 3]

*If yes, please explain:*

Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the diagnosis? [ Objection 1]

Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis? [ Objection 1]

Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to diagnosis? **See Attached Medical Records**

Did the diagnosing doctor perform a physical examination? **See Attached Medical Records**

Do you currently use tobacco products? **See Attached Medical Profile**

Have you ever used tobacco products? **See Attached Medical Profile**

*If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco products and the dates and frequency with which such products were used:*

4

WR GRACE PIQ 02486-0011

| [] Cigarettes | Packs Per Day (half pack = .5) | Start Year | End Year |
| [] Cigars | Cigars Per Day | Start Year | End Year |

[] If Other Tobacco Products, please specify (e.g., chewing tobacco):

| | Amount Per Day | Start Year | End Year |

Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")?

*If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:* See Attached Medical Records

3. **Information Regarding Chest X-Ray   Objection 3**

Please check the box next to the applicable location where your chest x-ray was taken (check one):

[] Mobile laboratory    [] Job site    [] Union Hall    [] Doctor office    [] Hospital    [] Other:

Address where chest x-ray taken: Objection 3

4. **Information Regarding Chest X-Ray Reading   See Objection Below and Attached Medical Profile**

Date of Reading:

ILO score:

Name of Reader:

Reader's Daytime Telephone Number:       Objection 3

Reader's Mailing Address:       Objection 3

With respect to your relationship to the reader, check all applicable boxes:

Was the reader paid for the services that he/she performed       [Objection 3]

*If yes, please indicate who paid for the services performed:*

Did you retain counsel in order to receive any of the services performed by the reader?       [Objection 3]

Was the reader referred to you by counsel?       [Objection 3]

Are you aware of any relationship between the reader and your legal counsel?       [Objection 3]

*If yes, please explain:*

Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?       [Objection 2]

*If the reader is not a certified B-reader, please describe the reader's occupation, specialty, and the method through which the reading was made:*

   [Objection 2]

5. **Information Regarding Pulmonary Function Test:  See Objections Below and Attached Medical Profile or Medical Records**

Date of Test:

List your height in feet and inches when test given: _____ ft _____ inches

List your weight in pounds when test given: _____ lbs

Total Lung Capacity (TLC): _____ % of predicted

Forced Vital Capacity (FVC): _____ % of predicted

FEV1/FVC Ratio: _____ % of predicted

5

Name of Doctor Performing Test (if applicable):

Doctor's Specialty:                                              Objection 2

Name of Clinician Performing Test (if applicable):

Testing Doctor or Clinician's Mailing Address:                  Objection 2

Testing Doctor or Clinician's Daytime Telephone Number:  Objection 2

Name of Doctor Interpreting Test:

Doctor's Specialty:                                              Objection 2

Interpreting Doctor's Mailing Address:                          Objection 2

Interpreting Doctor's Daytime Telephone Number:                 Objection 2

With respect to your relationship to the doctor or clinician who performed the pulmonary function test check all applicable boxes:

If the test was performed by a doctor, was the doctor your personal physician?                                 [Objection 3]

Was the testing doctor and/or clinician paid for the services that he/she performed?                          [Objection 3]

If yes, please indicate who paid for the services performed:    [Objection 3]

Did you retain counsel in order to receive any of the services performed by the testing doctor or clinician?   [Objection 3]

Was the testing doctor or clinician referred to you by counsel?  [Objection 3]

Are you aware of any relationship between either the doctor or  [Objection 3] clinician and your legal counsel?

If yes, please explain:

Was the testing doctor certified as a pulmonologist or          [Objection 2] internist by the American Board of Internal Medicine at the time of the pulmonary function test?

With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:

Was the doctor your personal physician?                         [Objection 3]

Was the doctor paid for the services that he/she performed?     [Objection 3]

If yes, please indicate who paid for the services performed:    [Objection 3]

Did you retain counsel in order to receive any of the services  [Objection 3] performed by the doctor?

Was the doctor referred to you by counsel?                      [Objection 3]

Are you aware of any relationship between the doctor and your   [Objection 3] legal counsel?

If yes, please explain

Was the doctor interpreting the pulmonary function test         [Objection 2] results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed?

6. **Information Regarding Pathology Reports:** See Objections Below and Attached Medical Profile or Medical Records

Date of Pathology Report:

Findings:

Name of Doctor Issuing Report:

Doctor's Specialty:                                             [Objection 2]

6

| | |
|---|---|
| Doctor's Mailing Address: | [Objection 2] |
| Doctor's Daytime Telephone Number: | [Objection 2] |

With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:

| | |
|---|---|
| Was the doctor your personal physician? | [Objection 3] |
| Was the doctor paid for the services that he/she performed? | [Objection 3] |
| *If yes, please indicate who paid for the services performed:* | [Objection 3] |
| Did you retain counsel in order to receive any of the services performed by the doctor? | [Objection 3] |
| Was the doctor referred to you by counsel? | [Objection 3] |
| Are you aware of any relationship between the doctor and your legal counsel? | [Objection 3] |
| *If yes, please explain:* | [Objection 3] |
| Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis? | [Objection 2] |

7. With respect to the condition alleged, have you received medical treatment from a doctor for the condition?

*If yes, please complete the following:*

Name of Treating Doctor:

| | |
|---|---|
| Treating Doctor's Specialty: | Objection 2 |
| Treating Doctor's Mailing Address: | Objection 2 |
| Treating Doctor's Daytime Telephone number: | Objection 2 |
| Was the doctor paid for the services that he/she performed? | Objection 3 |
| *If yes, please indicate who paid for the services performed:* | Objection 3 |
| Did you retain counsel in order to receive any of the services performed by the doctor? | Objection 3 |

7

## PART III: DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS

Please complete the chart below for each site at which you allege exposure to Grace asbestos-containing products. If you allege exposure at multiple sites, the Court has ordered that you must complete a separate chart for each site. For your convenience, additional copies of Part III are attached as Appendix D to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each job listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Grace asbestos-containing products

(b) A worker who personally removed or cut Grace asbestos-containing products

(c) A worker who personally installed Grace asbestos-containing products

(d) A worker at a site where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(e) A worker in a space where Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f) If other, please specify.

Site of Exposure: See Grace Exposure Profile Attached hereto

Site Name:

Location:

Site Type: [] Residence   [] Business

Site Owner:

Employer During Exposure:

Unions of which you were a member during your employment:

| Product(s) | Basis for Identification of Each Grace Product | Dates and Frequency of Exposure (hours/day, days/year) | Occupation Code *If Code 59, specify.* | Industry Code *If Code 118, specify.* | Was exposure due to working in or around areas where product was being installed, mixed, removed, or cut? *If Yes, please indicate your regular proximity to such areas* | Nature of Exposure |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

Job N Description:



WR GRACE PIQ 62496-0014


WR GRACE PIQ 82496-0016

### PART IV: INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODU

1. Are you asserting an injury caused by exposure to Grace     [See Attached Grace Exposure Profile]
   asbestos-containing products through contact/proximity
   with another injured person?

   *If yes, complete questions 2 through 10 of this section for each injured person through which you allege exposure to Grace asbestos-containing products. For your convenience, additional copies of Part IV are attached as Appendix E to this Questionnaire.*

2. Please indicate the following information regarding the other injured person:

   Name of Other Injured Person:

   Gender:

   Last Four Digits of Social Security Number:

   Birth Date:

3. What is your Relationship to Other Injured Person:

4. Nature of Other Injured Person's Exposure to Grace
   Asbestos-Containing Products:

5. Dates Other Injured Person was Exposed to Grace          From: To:
   Asbestos-Containing Products:

6. Other Injured Person's Basis for Identification of
   Asbestos-Containing Product as Grace Product:

7. Has the Other Injured Person filed a lawsuit related to
   his/her exposure?

   *If yes, please provide caption, case number, file date, and court name for the lawsuit:*

   Caption:

   Case Number:

   File Date:

   Court Name:

8. Nature of Your Own Exposure to Grace
   Asbestos-Containing Product:

9. Dates of Your Own Exposure to Grace          From: To:
   Asbestos-Containing Product:

10. Your Basis for Identification of Asbestos-Containing
    Product as Grace Product:

9



WR GRACE PIQ 82488-0018

## PART V: EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS

See Attached Non Grace Exposure Profile

Please complete the chart below for each party against which you have filed a lawsuit and/or claim alleging exposure to asbestos-containing products other than Grace products. If you filed such lawsuits and/or claims against multiple parties, the Court has ordered that you must complete a separate chart for each party. For your convenience, additional copies of Part V are attached as Appendix F to this Questionnaire.

If exposure was in connection with your employment, use the list of occupation and industry codes in the Instructions to Part III to indicate your occupation and the industry in which you worked.

In the "Nature of Exposure" column, for each product listed, please indicate the letter(s) corresponding to whether you were any of the following during your exposure:

(a) A worker who personally mixed Non-Grace asbestos-containing products

(b) A worker who personally removed or cut Non-Grace asbestos-containing products

(c) A worker who personally installed Non-Grace asbestos-containing products

(d) A worker at a site where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others

(e) A worker in a space where Non-Grace asbestos-containing products were being installed, mixed, removed or cut by others

(f) If other, please specify.

| Party Against which Lawsuit or Claim was Filed: | | Product(s) | Dates and Frequency of Exposure (hours/day, days/year) | Occupation Code If Code 39, specify. | Industry Code If Code 118, specify. | Was exposure due to working in or around areas where product was being installed, mixed, removed, or cut? If Yes, please indicate your regular proximity to such areas | Nature of Exposure |
|---|---|---|---|---|---|---|---|
| | Job N Description: | | | | | | |
| | Job P Description: | | | | | | |
| Site of Exposure N | | | | | | | |
| Site Name: | | | | | | | |
| Address: | | | | | | | |
| City and State: | | | | | | | |
| Site Owner: | | | | | | | |

## PART VI: EMPLOYMENT HISTORY

WR GRACE PIQ 62495-0017

See Attached Exposure Profile

Other than jobs listed in Part III or V, please complete this Part VI for all of your prior industrial work experience up to and including your current employment. For each job, include your employer, location of employment, and dates of employment. Only include jobs at which you worked for at least one month. Please use the copy of Part VI attached as Appendix G to this Questionnaire if additional space is needed.

**Occupation Code:**                               If Code 59, specify:

**Industry Code:**                                 If Code 118, specify:

**Employer:**

**Beginning of Employment:**

**End of Employment:**

**Location:**

11

**PART VII: LITIGATION AND CLAIMS REGARDING ASBESTOS AND/OR SILICA**

WR GRACE PIQ 62466-0013

**a. LITIGATION**

1. Have you ever been a plaintiff in a lawsuit regarding    [Yes]
   asbestos or silica?

   *If yes, please complete the rest of this Part VII(a) for each lawsuit.  For your convenience, additional copies of Part VII are attached as Appendix G to this Questionnaire*

2. Please provide the caption, case number, file date, and court name for the lawsuit you filed:  See Attached Litigation
   Profile and Objection 4

   Caption:

   Case Number:

   File Date:

   Court Name:

3. Was Grace a defendant in the lawsuit?    ["Yes, but verification of this information can be achieved by referencing litigation documents, pleadings, and records in the Debtors' possession."]

4. Was the lawsuit dismissed against any defendant?    [Objection 4]

   *If yes, please provide the basis for dismissal of the lawsuit against each defendant:*

5. Has a judgment or verdict been entered?    [Objection 4]

   *If yes, please indicate verdict amount for each defendant(s):*

6. Was a settlement agreement reached in this lawsuit?

   *If yes and the settlement was reached on or after April 2, 2001, please indicate the following:*

   a. Settlement amount for each defendant:    [Objection 4]

   b. Applicable defendants:    [Objection 4]

   c. Disease or condition alleged:    [Objection 4]

   d. Disease or condition settled (if different than disease or    [Objection 4]
      condition alleged):

7. Were you deposed in this lawsuit?

   *If yes and Grace was not a party in the lawsuit, please attach a copy of your deposition to this Questionnaire.*

**b. CLAIMS**

1. Have you ever asserted a claim regarding asbestos and/or    [Objection 4]
   silica, including but not limited to a claim against an
   asbestos trust (other than a formal lawsuit in court)?

   *If yes, please complete the rest of this Part VII(b). If no, please skip to Part VIII.*

2. Date the claim was submitted:    [Objection 4]

3. Person or entity against whom the claim was submitted:    [Objection 4]

4. Description of claim:    [Objection 4]

5. Was claim settled?    [Objection 4]

6. Please indicate settlement amount:    [Objection 4]

7. Was the claim dismissed or otherwise disallowed or not    [Objection 4]
   honored?

   *If yes, provide the basis for dismissal of the claim:*

12

## PART VIII: CLAIMS BY DEPENDENTS OR RELATED PERSONS

**Name of Dependent or Related Person:**                N/A

**Gender:**

**Last Four Digits of Social Security Number:**

**Birth Date:**

**Financially Dependent:**

**Relationship to Injured Party:**        [ ] Spouse    [ ] Child    [ ] Other If other, please specify

**Mailing Address:**

**Daytime Telephone number:**

### PART IX: SUPPORTING DOCUMENTATION

Please use the checklists below to indicate which documents you are submitting with this form.  **See Attached Documents**

**Copies:**

[ ] Medical records and/or report containing a diagnosis

[ ] Lung function test results

[ ] Lung function test interpretations

[ ] Pathology reports

[ ] Supporting documentation of exposure to Grace asbestos-containing products

[ ] Supporting documentation of other asbestos exposure

[ ] X-rays

[ ] X-ray reports/interpretations

[ ] CT scans

[ ] CT scan reports/interpretations

[ ] Depositions from lawsuits indicated in Part VII of this Questionnaire

[ ] Death Certification

**Originals:**

[ ] Medical records and/or report containing a diagnosis

[ ] Lung function test results

[ ] Lung function test interpretations

[ ] Pathology reports

[ ] Supporting documentation of exposure to Grace asbestos' containing products

[ ] Supporting documentation of other asbestos exposure

[ ] X-rays

[ ] X-ray reports/interpretations

[ ] CT scans

[ ] CT scan reports/interpretations

[ ] Death Certification

Grace will reimburse your reasonable expenses incurred in providing (a) copies of depositions you have given in lawsuits in which Grace was not a party and/or (b) any documents you have previously provided to Grace in prior litigation.  Please indicate the documents for which you are seeking reimbursement and attach a receipt for such costs:

## PART X: ATTESTATION THAT INFORMATION IS TRUE AND ACCURATE

The information provided in this Questionnaire must be accurate and truthful. This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your Claim. The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both. 18 U.S.C. §§ 152 & 3571.

**TO BE COMPLETED BY THE INJURED PERSON. Objection 5**

I swear, <u>under penalty of perjury,</u> that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate and complete.

Signature: _____

Please Print Name: _____

Date: _____

**TO BE COMPLETED BY THE LEGAL REPRESENTATIVE OF THE INJURED PERSON.**

I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate and complete.

Signature: _____

Please Print Name: <u>Joseph F. Rice, Esquire</u>

Date: <u>11/09/2006</u>

14

# Motley Rice LLC Medical Profile



## Asbestos Related Diagnosis Information

| Disease Category | Diagnosis | Primary | DX-Date | Physician | Exam Type |
|---|---|---|---|---|---|
| Non Malignant | Asbestosis | N/A (Applies to Non-Mal Only) | 05/02/2000 | Schonfeld, Alvin J. | Physical Exam |
| Non Malignant | Asbestosis | N/A (Applies to Non-Mal Only) | 11/19/1998 | Segarra, Jay T. | Review of Data |

## Radiology Information

| Type | X-Ray/CT Scan Date | Impression | Report Date | Physician | Facility |
|---|---|---|---|---|---|

## B-Reading Information

| X-Ray Date | Date of Reading | B-Reader | FQ | Completely Negative? | CXR Profusion | Pleural | B2 or Greater? | Other Symbols |
|---|---|---|---|---|---|---|---|---|
| 11/19/1998 | 11/19/1998 | Segarra, Jay T. | 1 | No | 1/0 | | | |
| 05/02/2000 | 05/02/2000 | Schonfeld, Alvin J. | 2 | No | | Bilateral | No | |

## PFT Information

| Type | PFT-Date | PFT-Facility | FVC% | FEV1/FVC | TLC% | DLCO% |
|---|---|---|---|---|---|---|
| Pre - Rx | 05/02/2000 | Pulmonary Function Laboratory | 69.0 | 80 | 79.0 | 63.0 |

## Tobacco History

Did the individual formerly smoke? Yes
Is the individual currently smoking? Unknown
Has the individual ever used any smokeless tobacco products? Yes

| Type | Volume (Per Day) | Quantity | Start Year | End Year | Pack Years |
|---|---|---|---|---|---|
| Cigarettes | Packs | 1 | 1974 | 1999 | 25.0 |

**Motley Rice LLC -- Medical Documentation Follows**



155856.000

## Motley Rice LLC Asbestos Exposure Profile



WR GRACE PIQ 62495-0023

Exposee Name
Last 4 of SSN

**REDACTED**

### A. W.R. Grace & Company Exposure

| Job Site | Start - End Date | Employer / Union | Industry | Occupation |
|----------|------------------|------------------|----------|------------|

### B. Other Asbestos Exposure

| Job Site | Start - End Date | Employer / Union | Industry | Occupation |
|----------|------------------|------------------|----------|------------|
| Inland Steel Co. | 1/1/1972 - 1/1/2001 | Inland Steel Company / N. A. | | |

1

155856.000

## Motley Rice LLC Asbestos Litigation Profile



| Caption | Court | Civil Action Number | State Filed | Date Filed |
|---|---|---|---|---|
| | Circuit Court Of In, Marion County | 49002-9501-MI-001-536 | IN | 09/19/2000 |


WR GRACE PIQ 82485-0026

45.5856

# ALVIN J. SCHONFELD D.O., F.C.C.P., F.A.A.D.E.P.
## PULMONARY MEDICINE
## OCCUPATIONAL LUNG DISEASE

905 W. CASTLEWOOD TERRACE
CHICAGO, IL 60640-4218

PHONE: 1-773-878-6111
FAX: 1-773-878-9797

May 2, 2000

Mitchie, Hamlett, Lowry, Rasmussen & Tweel, PC
Attn: Gary Kendall, Esq.
500 Court Square, Suite 300
P.O. Box 298
Charlottesville, VA 22902-0298

RE:
SSN:            **REDACTED**
DOB:

REDACTED

Dear Mr. Kendall

This is a physician's report pertaining to the above named client who I had the pleasure of meeting with an examining on the above date.

_____ is a 51-year-old male with an 11th grade education. He is a member of Local 1010 of the United Steel Worker's Union.

OCCUPATIONAL HISTORY: Since 1972 he has worked at Inland Steel. He has worked as a grinder. He has worked in the cold mill/billet dock. He also worked in the hot mill. When working in the hot mill, he has demolished and rebuilt furnaces.

For 18 years he operated an overhead crane. On occasion he would hit the overhead asbestos covered pipes and asbestos would come down on him. He thinks there may have also been asbestos in the double wall of the crane cab.

During his various jobs at Inland Steel he has knocked asbestos off of pipes. He mixed asbestos mud. He swept up asbestos. He worked around scaffolding. He used asbestos gloves. He used air hoses. He changed brake shoes.

SMOKING HISTORY: He smoked up to a pack of cigarettes per day between 1974 and 1999. He stopped smoking pipes in 1986. He currently smokes cigars.

PAST MEDICAL HISTORY: Positive for bronchitis. Negative for asthma, emphysema, pneumonia, diabetes, gout, ulcers, hypertension, bowel or bladder problems, MI, CVA, hypercholesterolemia or history of malignancy.

MEDICATIONS: None.

DIPLOMATE-AMERICAN BOARDS OF INTERNAL MEDICINE AND PULMONARY DISEASE
NIOSH B READER
CERTIFIED AMERICAN BOARD OF INDEPENDENT MEDICAL EXAMINERS


WR GRACE PIQ 02495-0028

ALVIN J. SCHONFELD D.O., F.C.C.P., F.A.A.D.E.P.

Page 2

**REDACTED**

RESPIRATORY SYMPTOMS: He can climb a flight of stairs without stopping but is short of breath at the top. He admits to wheeze, cough and hemoptysis. He was advised to seek medical attention immediately because of this.

SURGICAL HISTORY: Back surgery and knee surgery.

FAMILY HISTORY: Negative for lung cancer, colon cancer or chronic respiratory disease.

PHYSICAL EXAMINATION: Physical examination revealed an alert, oriented male in no distress. Head and neck exam was unremarkable. Lungs were clear on auscultation. Cardiac exam revealed a regular rate and rhythm without murmurs. Abdomen was soft without scars. Extremities showed no clubbing, cyanosis or edema.

CHEST X-RAY: Chest x-ray dated 5-2-00 was read by me according to the ILO 1980 classification as a Quality 2 film. No interstitial changes were seen. Bilateral pleural thickening was noted s/1/0 bilaterally.

PULMONARY FUNCTION TEST: Complete pulmonary function studies dated 5-2-00 were performed according to ATS guidelines and showed a mild restrictive defect with mildly impaired diffusion. FVC of 3.15 liters or 69% of predicted. FEV₁ 2.51 liters or 70% of predicted. FEV₁/FVC 80%. TLC 5.11 liters or 79% of predicted. Diffusion 25.47 or 65% of predicted.

IMPRESSION:
1. Given the patient's history of significant exposure to aerosolized asbestos associated with an appropriate latency and given the roentgenographic and pulmonary function findings described above, I feel with a reasonable degree of medical certainty that            is diagnosed as having bilateral asbestos related pleural disease.

2. History of hemoptysis for which medical follow-up is mandatory.

RECOMMENDATIONS:
1. He is at increased risk of lung cancer, mesothelioma, and other non-pulmonary malignancies associated with asbestos exposure.

2. He should be advised to have yearly chest x-rays, pulmonary function tests, and screening for gastrointestinal malignancy.

3. He should be advised that his chest x-ray and pulmonary function may deteriorate in the absence of further asbestos exposure.

4. He should be advised to refrain from use of any tobacco containing products.

REDACTED

WR GRACE  PIQ  82495-0027

ALVIN J. SCHONFELD D.O., F.C.C.P., F.A.A.D.E.P.

Page 3                 **REDACTED**

I hope that the above information is useful to you.

This report serves only to establish the presence of possible asbestos related conditions and is neither intended to serve as a comprehensive evaluation of all health problems nor does it establish a doctor-patient relationship.

Sincerely;

Alvin J. Schonfeld, D.O., FCCP, FAADEP
AJS\cj/39.



WR GRACE PIQ 62495-0028



Jay I. Segarra, M.D., FACP

*Board certified in Internal Medicine, Pulmonary Diseases, & Critical Care*
Camellia Place • 2123 Government Street • Ocean Springs, Mississippi 39564
Phone/Fax (228) 872-2411

**X-RAY EVALUATION**                                    November 19, 1998

**REDACTED**                                            ECI222/

**HISTORY:** Asbestos exposure, furnace laborer/grinder operator, steel plant, 1972-present.

PA, lateral and bilateral oblique views of the chest dated 11/19/98 are reviewed for the presence of, and classification of pneumoconiosis according to the ILO (1980) classification.

Film quality is grade 1. Inspection of the lung parenchyma reveals a diffuse interstitial pattern, consisting of small, irregular linear opacities within the mid and lower lung zones bilaterally, of size and shape S/S, profusion 1/0. Examination of the pleural surfaces demonstrates no pleural plaques, pleural thickening, or pleural calcifications. No parenchymal infiltrates, nodules or masses are present. The trachea is midline. The heart size is normal and the hilar structures are unremarkable. There are no other significant intrathoracic findings. No earlier films are available for comparison.

**IMPRESSION:**

INTERSTITIAL CHANGES CONSISTENT WITH MILD PULMONARY ASBESTOSIS, GIVEN THE ENVIRONMENTAL EXPOSURE HISTORY, AND LATENT PERIOD.

Jay T. Segarra, M.D.

WR GRACE PIQ 82495-0028

PULMONARY FUNCTION LABORATORY
9003 INDIANAPOLIS BLVD., SUITE A.
HIGHLAND, INDIANA 46322

DATE: 05/02/2000 TIME: 11:56:10PT#:
A. SCHONFELD MD
PT:                                     SEX: M AGE: 51

HT: 73.0 in    WT: 205.0 lb    TECH: BILL

PRED-COLLINS3 ----- Predicted Values Have Been Race Corrected -----    RACE: B

|  |  |  | Pre-Drug* |  |
|---|---|---|---|---|
| **Spirometry** |  |  |  |  |
| FVC | (L) | 4.58 | 3.15 | 69 |
| FEV1 | (L) | 3.61 | 2.51 | 70 |
| FEV1/FVC | (%) | 79 | 80 | 101 |
| FEV3 | (L) | 4.27 | 2.95 | 69 |
| FEF25-75% | (L/S) | 3.98 | 2.33 | 59 |
| MET | (SEC) |  | 0.68 |  |
| FEF25% | (L/S) |  | 5.04 |  |
| FEF50% | (L/S) |  | 2.92 |  |
| FIF25-75% | (L/S) |  | 3.57 |  |
| TET | (SEC) |  | 6.79 |  |

|  |  |  | Pre-Drug* |  |
|---|---|---|---|---|
| **Spirometry** |  |  |  |  |
| SVC | (L) | 4.58 | 3.30 | 72 |
| IC | (L) | 3.10 | 1.81 | 58 |
| ERV | (L) | 1.45 | 1.50 | 104 |
| TV | (L) |  | 0.25 |  |
| Test Length | (SEC) |  | 15.80 |  |

|  |  |  | Pre-Drug* | Avg |
|---|---|---|---|---|
| **Lung Volumes** |  |  |  |  |
| TLC | (L) | 6.44 | 5.11 | 79 |
| FRC | (L) | 3.33 | 3.30 | 99 |
| RV | (L) | 1.89 | 1.81 | 96 |
| VC | (L) | 4.58 | 3.30 | 72 |
| IC | (L) | 3.10 | 1.81 | 58 |
| ERV | (L) | 1.45 | 1.50 | 104 |
| RV/TLC | (%) | 30 | 35 | 119 |

|  |  |  | Pre-Drug* | Avg |
|---|---|---|---|---|
| **Diffusion** |  |  |  |  |
| Dsb ml/min/mmHg | 39.00 | 25.47 | 65 |
| Dsb(adj) ml/min/mmHg | 39.00 | 25.47 | 65 |
| DCO ml/min/mmHg | 39.00 | 24.64 | 63 |
| Hb (gm/100ml) |  | 14.50 |  |
| COHb (%) |  | 0.00 |  |
| Washout Volume (L) |  | 1.00 |  |
| Sample Volume (L) |  | 0.50 |  |
| Volume Inspired (L) |  | 3.36 |  |
| BHT (S) |  | 10.73 |  |

REDACTED

THIS TEST MEETS
A.T.S. STANDARD



WR GRACE PIQ 02496-0030

**REDACTED**

Page 2





WR GRACE PIQ 82486-0051

REDACTED



| Effort | FVC | FEU1 | FEU1% | F25/75 | PEFR |
|--------|------|-------|-------|--------|------|
| Pred | 4.58 | 3.61 | 78 | 3.98 | |
| 1 | )2.22 | )1.77 | 79 | 1.69 | 3.69 |
| 2 BEST | 3.15 | 2.51 | 79 | 2.33 | 5.61 |
| 3 | 3.16 | 2.47 | 78 | 2.24 | 5.35 |
| | | | | | |
| | | | | | |



REDACTED



WR GRACE PIO 62495-0032

| -16 | -16 | -16 | -16 | -16 |
| --- | --- | --- | --- | --- |

| Effort | FUC | FEUL | FEUI% | F25/75 | FEFR |
| --- | --- | --- | --- | --- | --- |
| Pred | 4.98 | 3.61 | 78 | 3.98 | |
| 1 | )2.22 | )1.77 | 79 | 1.69 | 3.60 |
| 2 BEST | 3.19 | 2.61 | 79 | 2.39 | 5.61 |
| 3 | 3.16 | 2.47 | 78 | 2.24 | 6.35 |
| | | | | | |



WR GRACE PIQ 02496-0033

**REDACTED**





WR GRACE PIQ 82495-0034

**REDACTED**







WR GRACE PIQ 62495-0038

REDACTED

| STATE OF INDIANA | ] | IN THE MARION SUPERIOR COURT |
|---|---|---|
| | ] | CIVIL DIVISION, ROOM 2 |
| COUNTY OF MARION | ] | CAUSE NO. 49D02-9501-MI-0001-536 |

Plaintiffs,

vs.

ACandS, Inc.; A.P. Green Industries, Inc.; ASARCO, Inc.; A.W. Chesterton Co.; Abex Corp.;
Airco, Inc.; Allied Corp.; Allied-Signal, Inc.; Amchem/Rhone Poulenc, Inc.; Anchor Packing Co.;
Armstrong World Industries, Inc.; Asten-Hill, Inc.; BMW Constractors, Inc.;
The Barrett Corp.;Bechtel Corp.;Belmont Packing & Rubber Co.;
Brand Insulation, Inc.; Calumet Construction Corp.; CBS Corp./Westinghouse Electric Corp.;
CSR, Ltd.; CertainTeed Corp.; Chicago Firebrick, Co.; Combustion Engineering, Inc.;
Crown Cork & Seal Co., Inc.;Custom Packing and Seals Corp.;Dana Corp.;
Dresser Industries, Inc.;Ferodo America, Inc.;Fibreboard Corp.; Flexitallic, Inc.;
Flintkote Co.; Foseco, plc; Foster Wheeler Corp.;Freyn Brothers, Inc.;GAF Corp.; Garlock, Inc.;
General Electric Co.; General Refractories Co.; Georgia-Pacific Corp.; Grefco, Inc.;
Harbison-Walker Refractories Co.;Hobart Brothers Co.; Ingersoll-Rand;JM Foster, Inc.;
Kaiser Aluminum & Chemical Corp.;Lincoln Electric Co.;M&O Insulation Co.; Maremont Corp.;
Metropolitan Life Insurance Co.;Mobil Oil Corp.; Morrison Construction Co.;
North American Refractory Co.; OakFabCo, Inc.; Oglebay Norton Co.; Owens-Corning Corp.;
Owens-Illinois, Inc.; Paul J. Krez Co.; Pfizer, Inc.;
Pilbrico Sales and Service; Porter-Hayden Co.; Quigley Co., Inc.; D.B. Riley, Inc.;
Rust Engineering & Construction, Inc.; The Safety Corp.; Sepco Corp.;
Shook & Fletcher Insulation Co., Inc.; Starr-Davis Co.; T&N, plc;
Minnesota Mining & Manufacturing Co.; U.S. Gypsum Co.;
Union Carbide; U.S. Mineral Products Company; Uniroyal, Inc.; W.R. Grace & Co.;
Wheeler Protective Apparel, Inc.,
                    Defendants.

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiffs, by counsel, alleges as follows:

1.    This cause of action is predicated in part on theories of negligence, strict liability and conspiracy.

2.    Defendants are named as miners, manufacturers, sellers, distributors, users,  installers and/or removers of asbestos-containing products.

3.    Plaintiff, in the course of his employment, was exposed to asbestos and asbestos-containing material and asbestos fibers and asbestos products manufactured, sold, distributed, used, installed or caused to be installed, or otherwise placed into the stream of commerce by Defendants, which was a direct and proximate cause of his asbestos-related disease.

4.    Defendants failed to exercise reasonable and ordinary care and caution for Plaintiff's safety, and/or acted wantonly and willfully, when they:  Intentionally or with reckless disregard included asbestos in their products, even though it was completely foreseeable that persons such as Plaintiff would inhale, ingest or otherwise absorb great amounts of that asbestos and knew or should have known that asbestos fibers have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them; intentionally or with reckless disregard included asbestos in their products when adequate substitutes for asbestos were available; intentionally or with reckless disregard failed to provide any or adequate warnings of the dangers of inhaling, ingesting or otherwise absorbing asbestos fibers; and failed to provide any or adequate instructions concerning safe methods of working with and around products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing asbestos fibers; and/or



intentionally or with reckless disregard failed to conduct tests on asbestos-containing products manufactured sold, delivered or installed by Defendants to determine hazards of exposure.

5.    Defendants, including Metropolitan Life Insurance Company (ML) individually, as agents of one another and as co-conspirators, agreed and conspired among themselves and with other asbestos manufacturers, distributors, and trade organizations, to injure Plaintiffs.

6.    From the late 1920's, co-conspirators conducted research on asbestos-related health problems and as a result undertook a duty to inform the consuming public about any health risks.  In approximately 1929 co-conspirators, through their agents and employees, including Dr. Anthony J. Lanza, began an investigation of asbestos-related health hazards in the U.S., by studying asbestos mines in Canada and on the Eastern seaboard of the U.S.  In 1935, this study was altered by Lanza, with the full knowledge of ML, at the request of and in concert with the asbestos industry and co-conspirators in order to fraudulently influence the U.S. Public Health Service, the U.S. medical community and various state legislatures, including the New Jersey Worker's Compensation Commission. At all times mentioned herein, ML was the general medical, disability and life insurance carrier, both occupational and non-occupational, for some co-conspirators.

7.    Lanza's omission of any citation to significant English literature from his 1935 published report was a continuation of the policy of co-conspirators, to misrepresent and suppress relevant information about the hazards of asbestos disease.

8.    At least the following co-conspirators were members of the trade association known as the Quebec Asbestos Mining Association ("Q.A.M.A."):  Johns-Manville Corp., Carey Canada, individually and as successor to Quebec Asbestos Corp., National Gypsum Company and Turner & Newall, individually and as successor to Bell Asbestos. Co-conspirators, members of  Q.A.M.A., participated in material misrepresentations of the work of Dr. Leroy Gardner published by Dr. Arthur Vorwald in the AMA Archives of Industrial Health in 1951.  Evidence of Q.A.M.A.'s involvement in this misrepresentation arises from co-conspirator Johns-Manville's membership in Q.A.M.A., as well as correspondence from co-conspirators dated 10/29/47, 11/26/47, 3/6/38, 10/15/48, 3/8/49, 3/21/51 and 9/6/50 and all indicating close monitoring and editing of Gardner's work by  Q.A.M.A.'s representative Mr. Ivan Sabourin, acting on behalf of all Q.A.M.A. members, and also acting in close concert with ML and Lanza.

9.    Co-conspirators made a concerted effort to discredit and to terminate the studies and experiments of scientists who were developing data of profound importance regarding the lung cancer hazard for workers and bystanders in the asbestos industry.

10.    Because of the co-conspirators' efforts many  active scientists in the field of environmental cancer were driven out of their laboratories soon after describing their findings on cancer hazards of asbestos, including Dr. Gerritt Schepers, who had conducted in-patient studies in South Africa.  Lanza and Vandiver Brown suppressed the publication of Schepers' work while Schepers was affiliated at New York University.  These efforts wrongfully obstructed and confused the real asbestos hazard situation, and had a profound retarding effect on evaluation of the truth in asbestos and asbestos-related health and cancer research.

11.    Co-conspirators actively suppressed publications concerning asbestos in the Asbestos Magazine, a trade magazine and important source of information to the public. and  users of asbestos products.

12.    The acts of co-conspirators, constituted a fraudulent misrepresentation/concealment which proximately caused Plaintiff's injuries.

13.    Material published or caused to be published by co-conspirators was false and incomplete in that co-conspirators knowingly and deliberately deleted references to known health hazards of asbestos and asbestos-related products, which was intended to:  Maintain a favorable atmosphere for continued sale and distribution and use of asbestos and asbestos-related products; assist in continued pecuniary gain of Defendants through the sale of asbestos products to

2



WR GRACE PIQ 82495-0038

an ignorant public; fraudulently influence in co-conspirators' favor legislation to regulate asbestos exposures and limit medical and disability claims for compensation; provide a fraudulent defense in lawsuits brought for injury resulting from asbestos disease; prevent relevant medical inquiry about asbestos disease; mislead the general public, and Plaintiffs, about hazards associated with asbestos products; and induce workers and customers to use and continue to use asbestos products.

14.     As a direct and proximate result of co-conspirators' intentional publication of deceptive and misleading medical data and information, upon which data Plaintiffs reasonably relied, he inhaled or otherwise ingested hazardous asbestos dust, resulting Plaintiffs' injuries.

15.     As a direct and proximate result of the negligence, carelessness, gross negligence, willful misconduct, fraudulent concealment, misrepresentation, conspiracy and willful omissions of Defendants as described, Plaintiffs was caused to contract an asbestos-related disease.

16.     As a direct and proximate result of all of the foregoing, Plaintiff's spouse has suffered damages.

WHEREFORE, Plaintiffs demands judgment for: Special and general damages, according to the evidence; punitive damages in an amount sufficient to punish and deter such conduct, according to the evidence; costs and reasonable attorney fees; and, all other relief just and proper.

Dated this 19th day of September, 2000.

Linda George, 15744-49
W. Russell Sipes, 16972-29
Attorneys for Plaintiffs
**LAUDIG GEORGE RUTHERFORD & SIPES**
156 East Market Street, Suite 600
Indianapolis, Indiana 46204
317-637-6071/fax 685-6505

## JURY TRIAL DEMAND

Plaintiffs demands trial by jury on all issues, pursuant to Indiana Rules of Civil Procedure, Rule 38.

Linda George

3



| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE | W. R. GRACE & CO |
|---|---|
| | OF CLAIM FORM |

| Name of Debtor: In re W.R. Grace & Co., et al. | 01-01139 (JKF) |
|---|---|

NOTE: Use this form **only** if you have a Non-Settled Pre-Petition Asbestos PI Claim or a Settled Pre-Petition Asbestos PI Claim (capitalized terms are defined in the "Notice of Bar Dates for Pre-Petition Asbestos Personal-Injury Litigation Claims (Settled and Non-Settled)"). This form should not be used to file a claim for a non-asbestos claim, an asbestos property-damage claim, a property-damage claim arising from Zonolite attic insulation, an asbestos medical-monitoring claim, or any other claim.

| Name of Creditor (The injured person or other person or entity to whom the Debtor(s) owe money or property): **Hubert Aaron Sr.**<br><br>Name and address where notices should be sent:<br><br>c/o Motley Rice LLC<br>Attn: Sandra Orvig<br>P.O. Box 1792<br>Mt. Pleasant, SC 29465<br><br>**REDACTED** | [ ] Check if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>[ ] Check if you have never received any notices from the bankruptcy court in this case.<br><br>[ ] Check if the address differs from the address on the envelope sent to you by the court.<br><br>[ ] Check here if this claim amends or replaces a previously filed claim, dated _____ | THIS SPACE IS FOR COURT USE ONLY |

| Last Four Digits of Creditor's Social Security Number: 7819 | If primary party is deceased, indicate date of death: |
|---|---|

**PART I**
*(To Be Completed By Claimants Who Wish to Use the W.R. Grace Asbestos Personal Injury Questionnaire as Part of Their Proof of Claim)*

[ ]    Check here if you have completed and returned the W.R. Grace Asbestos Personal Injury Questionnaire ("Questionnaire") and elect to have the Questionnaire required by the Court's order on August 29, 2005 serve as part of your Proof of Claim. If you check this box, you do not need to complete Part II of this Proof-of-Claim Form, but you still must complete Part III if you have a Settled Pre-Petition Asbestos PI Claim. **AND, IN ANY CASE, YOU MUST STILL FILE THIS FORM ON OR BEFORE OCTOBER 16, 2006 OR NOVEMBER 15, 2006, WHICHEVER OF THESE BAR DATES IS APPLICABLE TO YOU.**

**Part II**
*(To Be Completed by Claimants Holding Non-Settled Pre-Petition Asbestos PI Claims Who Are Not Electing to Use the Questionnaire as Part of Their Proof of Claim)*

Please complete Part II if you did not elect to have the Questionnaire serve as part of your Proof of Claim in Part I. Although completion of Part II satisfies the requirements of this Proof of Claim, it does not relieve you of the obligation to answer and return a Questionnaire.

1. Provide the following information with respect to the pre-petition lawsuit or civil action for which your Non-Settled Pre-Petition Asbestos PI Claim relates:

   PLEASE SEE BELOW STATEMENT REGARDING DISCOVERY

   a.  Title of Case:
   b.  Court Where Complaint was Filed:                          Circuit Court Of In, Marion County
   c.  Court Where Case was Pending on April 2, 2001:
   d.  Case Number:                                              49002-9501-MI-001-536
   e.  Date Complaint was Filed:                                 09/19/2000
   f.  Name of Legal Counsel:                                    Motley Rice LLC
   g.  Address of Your Legal Counsel:                            P.O. Box 1792
                                                                 Mt. Pleasant, SC 29464

DUE TO THE BANKRUPTCY AUTOMATIC STAY, FOR THE PAST FIVE YEARS THIS CLAIMANT HAS BEEN PREVENTED FROM DOING SITE-SPECIFIC AND INDIVIDUAL-SPECIFIC DISCOVERY OF W.R. GRACE AND RELATED DEBTORS. HAD SUCH DISCOVERY BEEN PERMITTED, IT IS LIKELY THAT THE CLAIMANT WOULD HAVE OBTAINED EVIDENCE (OR ADDITIONAL EVIDENCE) OF SUBSTANTIAL EXPOSURE TO HAZARDOUS ASBESTOS FIBERS EMITTED FROM PRODUCTS MANUFACTURED, SOLD, OR DISTRIBUTED BY W.R. GRACE OR OTHER DEBTORS, OR TO ASBESTOS FIBERS FOR WHICH GRACE HAS LEGAL RESPONSIBILITY.

1

WR GRACE PIQ 62495-0040

2. If you have a court judgment against one or more of the W.R. Grace debtors or a settlement with one or more of the W.R. Grace debtors, obtained and amount of such judgment or settlement:

    Date of settlement or judgment:

    Amount of settlement or judgment:

3. Date of diagnosis of injury for which you are filing this proof of claim:  11/19/1998

---

### PART III
### (To be Completed By Claimants Holding Settled Pre-Petition Asbestos PI Claims)

☐ Check here if you believe that one or more of the Debtors owes you money pursuant to an enforceable settlement agreement entered into between you and one or more of the Debtors, as of the commencement of these chapter 11 cases (April 2, 2001), but as for which you have not received full payment ("Settled Pre-Petition Asbestos PI Claim).

Identify which documents you have in support of your belief that you have a Settled Pre-Petition Asbestos PI Claim and attach the described documents (check all applicable boxes):

☐ A release that is signed and executed by you and was submitted to any of the Debtors before April 2, 2001.

☐ A written settlement agreement that is signed by both you and one or more of the Debtors in which you agree to release asbestos-related claims for personal injury or wrongful death against one or more of the Debtors in exchange for Debtors' agreement to pay you a certain sum.

☐ A written settlement agreement that is signed by both your attorney or authorized agent and one or more of the Debtors in which any of the Debtors and you agree to release asbestos-related claims for personal injury or wrongful death against one or more of the Debtors in exchange for Debtors' agreement to pay you a certain sum.

☐ A transcript or court order describing the terms and conditions of an asbestos-related personal injury claims settlement made in open court and entered on the record.

☐ Other documents supporting an enforceable settlement agreement between you and the Debtors (describe below; attach a supplemental list if necessary).

---

### TO BE COMPLETED BY ALL CLAIMANTS
### ASSERTING PRE-PETITION ASBESTOS PI CLAIMS

IF YOU ARE ASSERTING A SETTLED PRE-PETITION PI CLAIM YOU MUST COMPLETE AND RETURN THIS PROOF OF CLAIM FORM TO THE CLAIMS PROCESSING AGENT, RUST CONSULTING, ON OR BEFORE THE SETTLED PRE-PETITION PI CLAIMS BAR DATE OF OCTOBER 16, 2006, OR ELSE YOUR CLAIM WILL BE BARRED.

IF YOU ARE ASSERTING A NON-SETTLED PRE-PETITION PI CLAIM YOU MUST COMPLETE AND RETURN THIS PROOF OF CLAIM FORM TO THE CLAIMS PROCESSING AGENT, RUST CONSULTING, ON OR BEFORE THE NON-SETTLED PRE-PETITION PI CLAIMS BAR DATE OF NOVEMBER 15, 2006, OR ELSE YOUR CLAIM WILL BE BARRED.

PLEASE SEE THE "NOTICE OF BAR DATES FOR PRE-PETITION ASBESTOS PERSONAL-INJURY LITIGATION CLAIMS (SETTLED AND NON-SETTLED)" FOR MORE DETAILED INSTRUCTIONS.

| Acknowledgement: Upon receipt and processing of the Proof of Claim, you will receive an acknowledgement card indicating the date of filing and your unique-claim number. If you want a file stamped copy of the Proof of Claim itself, enclose a stamped, self-addressed envelope and copy of this proof of claim. | THIS SPACE FOR COURT USE ONLY |
|---|---|
| Date:<br><br>11/09/2006 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br><br>*Joseph F. Rice*<br><br>Joseph F. Rice, Esquire |


WR GRACE P/Q 62495-0041

155856

## GENERAL POWER OF ATTORNEY

To:    Joseph F. Rice, Esq. or Motley Rice LLC Attorney

The undersigned claimant hereby authorizes Joseph F. Rice, Esq. or any Motley Rice LLC attorney, as attorney in fact for the undersigned and with full power of substitution, to vote on any questions that may be lawfully submitted to creditors of any debtors who have filed for bankruptcy in a United States Bankruptcy Court, including but not limited to:

Babcock and Wilcox Company;

Pittsburgh Corning Corporation;

Armstrong World Industries, Inc.;

Owens Corning, A Delaware Corporation;

W.R. Grace & Company;

United States Gypsum Corporation, et al a subsidiary of USG Corporation, A Delaware Corporation;

Federal Mogul Global, Inc.;

G-I Holdings, Inc.;

North American Refractories Company; and

A.P. Green Industries, Inc.

and in general to perform any act not constituting the practice of law for the undersigned in all matters arising in those cases. This Power of Attorney specifically Joseph F. Rice, Esq. or any Motley Rice LLC attorney to vote on behalf of the undersigned claimant on any Plan of Reorganization on which undersigned claimant is entitled to vote. Furthermore, the undersigned claimant intends for this authorization to extend to any current debtors not specifically identified above, or any entity against which the undersigned claimant may have an assertable claim who may at some point in the future file for bankruptcy in any United States Bankruptcy Court and become a debtor.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this _8_ day of _July_ , 20_3_.

Signed:

# REDACTED

Address:

# REDACTED

3.32.146

WR GRACE PIQ 62496-0042

REDACTED

**ALVIN J. SCHONFELD D.O., F.C.C.P., F.A.A.D.E.P.**
PULMONARY MEDICINE
OCCUPATIONAL LUNG DISEASE

WORKER'S Social Security Number          TYPE OF READING          505 W. CASTLEWOOD TERRACE
CHICAGO, ILLINOIS 60640-4728

| A | X | B | F |

**1A. DATE OF X-RAY** | **1B. FILM QUALITY** | **1C. IS FILM COMPLETELY NEGATIVE?**
05 01 92 | 1 X 3 ½ | YES □   NO X

**2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?** YES □  NO X  PROCEED TO SECTION 3

**2B. SMALL OPACITIES** | **2C. LARGE OPACITIES**
SIZE O A B C

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?** YES X  NO □

**4A. ANY OTHER ABNORMALITIES?** YES □  NO X

**5. FILM READER'S INITIALS** AJS  PHYSICIAN'S SOCIAL SECURITY NUMBER 274 44 5625  DATE OF READING 05 08 00

November 12, 2006



**MotleyRice**

<u>Via Federal Express</u>
Rust Consulting, Inc.
Claims Processing Agent
Re: W.R. Grace & Co. Bankruptcy
201 S. Lyndale Ave.
Faribault, MN 55021

RE: Motley Rice (and previous entities) Asbestos Claimants Proof of Claim Forms
And W.R. Grace Asbestos Personal Injury Questionnaires

Dear Sir/Madam:

Enclosed please find Asbestos Claimants Proof of Claim Forms and W.R. GRACE
Asbestos Personal Injury Questionnaires for 3,035 claimants in the attached list. These
claimants are pre-petition unsettled claims.

Consistent with the provisions of the Federal Rules of Civil Procedure that govern
discovery proceedings like this initiated by W.R. Grace, in our enclosed responses we
have answered many of the questions or interrogatories propounded, objected to others,
and where entirely appropriate have attached relevant documents meant to be responsive
to the questions posed. The net effect of this manner of responding is to equalize as
between the Debtors and the responding party the burden of obtaining or producing the
information sought. In this vein, be advised that we have also included in this packet a
pleading that sets forth with supporting citations the grounds, both general and specific,
for any and all objections interposed.

Finally, be advised that as counsel for the various claimants identified in the enclosed
responses, we do hereby reserve the right to supplement any response or documentation
provided on their behalf, notwithstanding any purported deadline that the Debtors have
sought to impose. We do hereby reserve as well the right to respond after the specified
due date of November 15, 2006, to any blank questionnaire that was sent to this Firm
concerning a client whom we are able subsequent thereto to identify for the first time, or
to a questionnaire that was, without notice to us, mailed directly to a claimant (or a third
party) to whom this Firm may be authorized or obligated to provide representation herein.

Any questions concerning this letter or the within responses should be directed to the
undersigned.

Yours very truly,

*Jeanette M. Gilbert*

JEANETTE M. GILBERT

JMG\sao
Encl.

| www.motleyrice.com | MT. PLEASANT | BARNWELL | PROVIDENCE | HARTFORD | ATLANTA |
|---|---|---|---|---|---|
| Motley Rice LLC | 28 BRIDGESIDE BLVD. | 1750 JACKSON ST. | 321 SOUTH MAIN ST. | ONE CORPORATE CENTER | 600 WEST PEACHTREE ST. |
| Attorneys at Law | P.O. BOX 1792 | P.O. BOX 365 | P.O. BOX 6067 | 20 CHURCH ST. 17TH FLOOR | SUITE 800 |
|  | MT. PLEASANT, SC 29465 | BARNWELL, SC 29812 | PROVIDENCE, RI 02940 | HARTFORD, CT 06103 | ATLANTA, GEORGIA 30308 |
|  | 843-216-9000 | 803-224-8800 | 401-457-7700 | 860-882-1681 | 404-201-6900 |
|  | 843-216-9450 FAX | 803-259-7048 FAX | 401-457-7708 FAX | 860-882-1682 FAX | 404-201-6959 FAX |


WR GRACE PIQ 62485-0044

As noted in their cover letter, MotleyRice attached one copy of "a pleading that sets forth with supporting citations the grounds, both general and specific, for any and all objections interposed." The original of this six page document can be located within the attachments, immediately following the original MotleyRice Cover letter with Doc ID PIQ 061174


WR GRACE PIQ 62495-0045



From: Origin ID: (843)216-9394
Sandra Ohrig
MOTLEY RICE
28 BRIDGESIDE BLVD
MT PLEASANT, SC 29464

SHIP TO: (800)961-8728      BILL SENDER
Gina Washburn
Rust Consulting, Inc.
201 S. Lyndale Ave.

Fairbault, MN 55021

Ship Date: 13NOV06
ActWgt: 0.5 LB
System: 2826569/NET2600
Account#: S *******

REF:

Delivery Address Bar Code

STANDARD OVERNIGHT

TRK# 7915 8404 2717      FORM
0201

55021   -MN-US

XH FBLA

TUE
Deliver By:
14NOV06
MSP      AA