# ATTACHMENT C

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: | . Case No. 01-01139(JKF) |
| | . Jointly Administered |
| | . |
| W.R. GRACE & CO., et al., | . 5414 USX Tower Building |
| | . Pittsburgh, PA 15222 |
| Debtors. | . |
| | . October 18, 2004 |
| . . . . . . . . . . . . . . . . . . . | . 9:00 a.m. |

TRANSCRIPT OF MOTION FOR SUMMARY JUDGMENT
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Reed Smith, LLP<br>By: JAMES J. RESTIVO, JR., ESQ.<br>JAMES W. BENTZ, ESQ.<br>DOUG CAMERON, ESQ.<br>435 Sixth Avenue<br>Pittsburgh, PA 15210 |
| For the Claimants (ZAI): | Richardson, Patrick, Westbrook and Brickman, LLC<br>By: EDWARD J. WESTBROOK, ESQ.<br>ROBERT M. TURKEWITZ, ESQ.<br>174 East Bay Street<br>Charleston, SC 29401 |
| | Buchanan Ingersoll, LLC<br>By: WILLIAM D. SULLIVAN, ESQ.<br>1007 North Orange Street<br>Wilmington, DE 19801 |
| Audio Operator: | CATHY YOUNKER |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail: jjcourt@optonline.net**

**(609)586-2311 Fax No. (609)587-3599**

Bendectin, a drug mothers took, ruled as follows -- this is at 43 F 3rd, 1311 at Page 1320. Quote, "The study must show that children whose mothers took Bendectin are more than twice as likely to develop limb reduction birth defects as children whose mothers did not." The Ninth Circuit went on to say that quote, "A relative risk of less than two actually tends to disprove causation."

With respect to the reference manual in the Court's exhibit book you also see that the scientific evidence sufficient to establish that a particular product creates an unreasonable risk or is hazardous is epidemiological studies. Epidemiological studies simply compare a group of individuals who are exposed over time to a particular product or substance to a group of individuals who were not exposed over the same period of time, and from those two groups one can determine whether or not the incidence of any disease is twice as prevalent in the exposed group. That is epidemiology.

Our motion, Your Honor, states that there is no epidemiological evidence in the record before this Court or otherwise to establish that the disturbance of ZAI in an attic doubles the risk of contracting an asbestos-related disease.

Indeed, our evidence shows that the presence or disturbance of ZAI in a home does not create an unreasonable risk.

There is one community-wide study, Your Honor. It's

the Libby Community Survey. It is not technically an epidemiological study, because it does not have the controls required for an epidemiological study. What the EPA did is they examined, through medical examination and exposure history, the exposure and the health of 6,149 present or former Libby residents. They did not have a control group of 6,149 non-Libby residents, and so in that respect it was not technically an epidemiological study.

Nonetheless, the researchers found at Libby that there were any number of exposure pathways to asbestos that arguably led to asbestos-related disease. Obviously the most prevalent was mining or milling raw ore. Another one was being a family member of someone who spent his or her career mining or milling raw ore.

For purposes of this science trial, Your Honor, the EPA study found no connection, no connection between having or using ZAI in a home in any asbestos-related disease. The documents to that effect, Your Honor, are in the record. The clearest one, and it is Grace Bench Exhibit number 5, Your Honor, that, Your Honor, is a letter from EPA administrator, Christine Todd Whitman responding to inquiries from Senator Max Bacchus with respect to the Libby medical screening and inquires as to why a decision was made not to take any action with respect to attic insulation in the homes. And as a result of the Libby study Christine Todd Whitman writes that the

study, quote, "did not show that insulation by itself could be linked with the health impacts found in Libby."

So, one needs an epidemiological study. There is none here. We do have a pretty good substitute, a 6,000-person community study that finds no adverse health connection with the use or presence of ZAI insulation in home at Libby.

Your Honor, we have supported our motion for summary judgment with affidavits and record testimony of four world-renowned scientists, Dr. Richard Lee, Dr. Morton Corn, Dr. William Hughson and Dr. Elizabeth Anderson. Their curricular vitaes are in the record.

Let me start with the opinions and scientific evidence submitted by Dr. Richard Lee. Dr. Lee truly is a world-renowned scientist. While employed as a United States steel scientist years ago in Pittsburgh he was one of the first people in the United States to be requested by the U.S. Government to analyze the rocks brought back from the moon.

He has consulted for years with various government agencies with respect to asbestos including the Occupational Safety and Health Administration, the Environmental Protection Agency and others. He has consulted with the United States Navy, the United States Army, NASA, the FBI, the State of California and countless other governmental and private organizations.

His report, Your Honor, is in Volume 2, Exhibit 6 of





X X x X X X X



I think Your Honor, with respect to dust testing, has it right. We are not attacking the ASTM protocol. We're not saying it's illegal or improper. We're simply saying it cannot be used here for the purpose they want to use it. And in my opening remarks I told you that the ASTM protocol itself says you can't use it to evaluate the safety or the habitability of buildings with ACM.

Your Honor, Mr. Westbrook did refer to some asbestos property damage cases. He did tell the Court what sort of evidence was admitted. Again, I think when the Court looks at those cases you will find that all of them or almost all of them were pre Daubert cases, and the evidence that may have been admitted pre Daubert, based upon the law we've cited to the Court, including post Daubert cases, would not be admissible today.

And then lastly, Your Honor, you asked the question, vermiculite has been mined, you know, for about 70 years. ZAI has been manufactured and sold for many years. Where, Mr. Westbrook, is the epidemiological evidence of injury? What do you have?

Mr. Westbrook says that, "Judge, no one has studied this. We don't have any data. This is a new problem."

We concede, Your Honor, as I did in my opening, that there's no technical epidemiological study. On the other hand, they have to concede that 6,149 present and former residents of

Libby who have lived there at some point throughout this period, some of them for their whole lives throughout this period, were studied to determine whether or not there was any adverse health effects from various exposures to vermiculite or with respect to residents in homes to insulation. And the results of that study of 6,149 was that they could not find any connection between having or using ZAI in the home and disease. And so while it's not technically an epidemiological study, it is true someone did look for disease, they looked at Libby, they looked at over 6,00 residents, and they didn't find any, Your Honor.

Thank you.

MR. WESTBROOK: Your Honor, first maybe we can put to bed, maybe, the counting controversy.

And it's simply this, Your Honor. Mr. Restivo talked about an 11.4 micron-long structure which was 1 micron wide. Dr. Lee does not count that. He says it's too wide, because it's not less than .3 microns.

But as the Court has heard with respect to asbestos and Tremolite in particular, fibers Tremolite, when the microscopist looks at the structure many times what he can resolve is this. That's what he can resolve. That's one micron long, let's say. What is there, Your Honor, in many instances what makes it up are bundles or clusters or matrices. So, you can have a one micron wide structure which is actually