# EXHIBIT 8

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Barbara Mack Harding
To Call Writer Directly:
202 879-5081
bharding@kirkland.com

202 879-5000

www.kirkland.com

Facsimile:
202 879-5200

September 22, 2006

**BY FIRST CLASS MAIL**
**BY FACSIMILE**

Nathan D. Finch, Esq.
Caplin & Drysdale
One Thomas Circle, N.W.
Washington, D.C. 20005

Re :    W.R. Grace & Co. Discovery Requests

Dear Nathan:

I am writing in response to your letter of January 10, 2006 and Jeffrey Liesemer's letters of August 3, 2006 and August 16, 2006, all of which relate to the status of outstanding discovery issues. In light of our subsequent status conferences conducted both in person and via telephone, I believe we are in substantial agreement. I will address the issues specifically referenced in these letters below as well as confirm the discussions that we have had in subsequent status conferences. Based on our September 6, 2006 conference, held in Kirkland & Ellis LLP's office, it is my understanding that the Debtors have satisfied their discovery obligations with respect to all matters not specifically addressed below. As much time has passed because of the stay and since our earlier meet and confer sessions, please advise if there are any outstanding disagreements that I have not addressed below. In connection with all of the agreements below, Grace reserves all objections raised in its answers to the interrogatories and document requests, except where specifically addressed.

Sealed Air Documents

Pursuant to our discussions, on February 17, 2006 I sent a chart to you and Richard Wyron that shows the Sealed Air documents for which we believed that we had a valid objection to the production and use for purposes of the bankruptcy estimation due to confidentiality. In response, you provided me with a chart indicating those documents which were turned over to the Government in response to a subpoena. After comparing your chart of previously-produced documents with our chart of potentially-privileged documents, Grace has concluded that it will no longer seek to assert privilege over the Sealed Air Documents in the chart that you provided. However, although Grace is no longer asserting privilege over these documents, Grace maintains its position that these documents are confidential and should be treated as such, pursuant to our confidentiality agreements. Moreover, as we agreed during our August 1, 2006 conference call,

Nathan D. Finch, Esq.
September 22, 2006
Page 2

Grace reserves all objections to the admissibility of the Sealed Air documents on, *inter alia*, grounds of relevance and hearsay, or any other relevant objection, until the estimation hearing.

<u>Verdict Information</u>

The PI Committee's Interrogatory 3 seeks information about payments made for asbestos-related personal injury claims that have gone to verdict. The parties are in agreement that it will be sufficient to satisfy the Debtors' obligations under this request to update the chart entitled Asbestos Bodily Injury cases with a Judgment Settlement, referenced at the September 6, 2006 meeting, with the following information: Total Verdict as to All Defendants; Verdict as to Grace; and Disposed Amount. In conformity with this obligation, Grace is currently looking for information that will be responsive to this request and will make a good faith effort to produce that information by October 10, 2006. I have spoken to Jay Hughes about this request and he is searching for the information. Originally, he believed that he could easily obtain this information by calling local counsel. However, given that much time has past since many of the cases on the list were resolved, some of the information is not readily available and requires locating the underlying litigation file and searching the file for this information.

<u>Top 10 Outside Counsel</u>

As per the agreement of the parties, the Debtors' discovery obligations under Interrogatories 2, 4, and 19 will be satisfied by the furnishing of a list of the Top 10 firms, by volume, that represented Grace in personal injury asbestos-related tort cases. In conformity with this request, Grace is enclosing with this letter a list of the Top 10 firms (Attachment A). However, to the extent that the PI Committee is considering contacting attorneys at these firms, Grace objects on the ground that the Court already has ruled that attorney discovery is not permitted. Moreover, if the PI Committee does intend to contact these firms, the PI Committee should only do so if Grace's current counsel is present, either in person or via telephone, at the conference.

<u>Jobsite Lists</u>

Interrogatories 8, 9, and 10, and Document Requests 2, 3, 4, and 5 all relate to Jobsite Lists. The parties previously agreed that it would be sufficient to satisfy these requests for the Debtors to provide a rolling production of Settled Claims Files for the PI Committee to review. *See* December 16, 2005 Letter from B. Harding to N. Finch. The Debtors have fulfilled this obligation. In addition, the PI Committee has access to database information, on CD ROMs, that includes jobsite information that Grace has relied on as a matter of practice.

The PI Committee subsequently requested, at the September 6, 2006 conference, that the Debtors also ask the Top 10 firms if they are in possession of any jobsite lists. Grace notes that

Nathan D. Finch, Esq.
September 22, 2006
Page 3

it has already sought this very information from the Top 10 firms and was told that no jobsite lists exist. However, Grace has agreed to once again make this request of the Top 10 firms. The parties are in agreement that, if Grace requests the Top 10 firms to produce any non-privileged jobsite lists in their possession, then this will satisfy Grace's obligations with respect to these Interrogatories and Document Requests. In addition, Matthew Murphy of Casner & Edwards will respond more fully to you with regard to the issue of jobsite lists, specifically addressing the concerns you raised at the September 6, 2006 meeting as to the possibility of the existence of these lists. The Debtors continue to object to the search for, and production of, documents from the files of their outside counsel and to the creation of a privilege log in connection with such searches as unduly burdensome in the context of an estimation.

Insurance Auditors' Files

Document Request 18 relates to audits of settled asbestos tort claims. The parties are in agreement that the Debtors will satisfy their obligations under this document request by producing any correspondence between the Debtors and their auditors, in the Debtors' possession, to the extent that this correspondence is not otherwise privileged, and has not already been produced in the bankruptcy. Pursuant to your September 6, 2006 request to know the approximate volume of these materials as soon as possible, an initial inquiry has disclosed that there are approximately five boxes of documents responsive to your request. Grace is currently reviewing its documents in order to produce the subset of documents that is responsive to your request. To the extent that there are documents otherwise responsive to this document request that are privileged, Grace will provide a privilege log cataloguing those documents. Grace will make a good faith effort to accomplish this by October 30, 2006.

Settled Claims Files

With respect to personal injury litigation settlement history information, pertaining to Document Requests 67 and 70, the Debtors have already begun rolling production of these materials and have shipped over 180 boxes of such materials to date. Additionally, the PI Committee has spent a total of 12 days reviewing the approximately 500 boxes of documents in the Boston repository beginning on December 19, 2005. We understand that the PI Committee has identified documents in approximately 205 of those boxes for copying and that the PI Committee has now completed its review of those documents. It has been Grace's understanding that this production is sufficient to satisfy Grace's discovery obligations under Document Requests 67 and 70. *See* December 16, 2005 Letter from B. Harding to N. Finch.

At our September 6, 2006 conference, you indicated that, in addition, the PI Committee would like Grace to specifically search for large group personal injury settlement agreements, in which 1,000 or more personal injury claimants settled with Grace at a single time. Pursuant to this request, you sent, by email, a list of large group settlement agreements. In conformity with

Nathan D. Finch, Esq.
September 22, 2006
Page 4

your request, I have inquired of Grace as to whether there are any additional large group personal injury settlement agreements that took place between January 1, 1996 and July of 2001. Grace is not aware of any large group personal injury settlements in addition to the ones which already have been produced to the PI Committee. If the PI Committee is aware of any large group personal injury settlements that Grace has inadvertently not produced, please identify these settlements and Grace will attempt to locate and produce these agreements.

<u>Interrogatories and Requests for Admission</u>

Pursuant to Document Requests 8 and 9, the PI Committee has requested responses to interrogatories and requests for admission answered in connection with asbestos tort claims. Pursuant to the agreement of the parties, it is sufficient to satisfy Grace's obligations under these requests for Grace to produce 5 interrogatories and 5 requests for admission for each year during the period 1985 through April 1, 2001. As we discussed in the September 6, 2006 conference, the interrogatories and requests for admissions identified in your letter were already sent to you by the law firm of Casner & Edwards on January 17, 2006 along with a certification from Robert Murphy regarding Grace's practice of submitting discovery responses through local counsel in the underlying tort litigation. *See* Ltr. from M. Murphy to N. Finch (Jan. 17, 2006). Matt Murphy will send the information to you again.

<u>Estimates of Aggregate Asbestos Liability</u>

Document Requests 23, 53, 68, and 69 relate to Grace's internal estimation of its aggregate asbestos liability and correspondence between Grace and its outside auditors. As we discussed at our September 6, 2006 conference, two outstanding issues remain with respect to these requests:

First, pursuant to your request, Grace currently is searching for documents relating to estimates of aggregate asbestos liability that Grace conducted after its petition for bankruptcy and will produce responsive documents that are not privileged or otherwise confidential. Grace will produce a privilege log for those documents that are privileged or otherwise confidential.

Second, with respect to correspondence between Grace and its outside auditors, as stated above, Grace will produce these documents to the extent that they exist and are not privileged. To the extent that they are privileged, Grace will provide a privilege log cataloguing those documents that are privileged. Grace will undertake to provide either the privilege log or the documents themselves by October 15, 2006.

<u>Settlement Strategies</u>

Nathan D. Finch, Esq.
September 22, 2006
Page 5

Document Requests 47 and 66 request documents related to Grace's litigation and settlement and strategies. As we discussed during our September 6, 2006 conference, we are in disagreement as to whether documents related to litigation and settlement strategies are discoverable. As I indicated during our meeting, because you seek documents relating to Grace's settlement strategy, Grace objects to the production of this information because, pursuant to the Federal Rules of Evidence, settlement strategy information is not admissible in federal court. Because this information is not admissible, and may in addition be privileged and confidential, it is outside the permissible scope of discovery because it is not likely to lead to the discovery of admissible evidence. Further, the Court previously rejected Grace's attempt to seek doctor discovery from plaintiff law firms. It is my understanding that we will not reach an agreement on the issue of whether documents relating to Grace's settlement strategies are discoverable and that you will raise this issue with the mediator.

Punitive Damages

Document Request 49 seeks information about Grace's payment of punitive damages in settlement of any tort claim. As we discussed at our September 6, 2006 conference, the PI Committee will reframe this request in the form of an Interrogatory, which it will address to Grace. As per our agreement, Grace's answer to this interrogatory will satisfy Grace's discovery obligations under this document request.

Investigations of Third Parties

Document Requests 55 and 56 request information regarding investigations by Grace or third parties of medical personnel who conducted diagnoses of individuals claiming asbestos-related conditions. The Debtors have served subpoenas, which are resulting in information that is responsive to these requests. That process is ongoing. As this information is collected, it is being transferred to a web-based repository. Grace can arrange to have the PI Committee given access to this repository. Alternatively, as per your request at the September 6, 2006 meeting, I have inquired as to whether it is practicable for Grace to have this information transferred to CD-ROM. I have not yet received an answer from the vendor as to whether this will be possible but I will inform you when I receive an answer to this request. In the meantime, the PI Committee can receive information that will allow it to obtain a password for accessing the repository through the internet by emailing wrgrace@absalominc.com and requesting such access. As discussed, this satisfies Grace's discovery obligations under this document request.

Claims Resolution History and Market Share Data

Document Request 57 requests documents related to claims resolution history of asbestos tort claimants other than claimants against Grace. Document Request 58 requests Grace's market share information. As discussed during our September 6, 2006 conference, and as stated

Nathan D. Finch, Esq.
September 22, 2006
Page 6

in Grace's Responses to Requests for Production, such materials, to the extent they exist and are not privileged, are likely to be contained in the Boston repository of documents. You have requested that we search our files again to insure that there are no additional non-privileged documents that are responsive to these requests that are not located in the Boston document repository. To the extent that Grace has such documents, they are likely in the possession of Jay Hughes. Mr. Hughes has agreed to review his files and will produce any non-privileged responsive documents. Grace has not agreed to review all its files in connection with this request as it is overly burdensome and not likely to lead to the discovery of relevant or admissible evidence.

### Pleadings or Submissions in Disputes With an Insurer

Document Request 65 requests any pleading or submission made to a court or arbitrator by Grace in any litigation or arbitration involving insurance disputes. As we agreed during our August 1, 2006 teleconference, and reconfirmed in the September 6, 2006 conference, Grace will produce responsive pleadings, briefs, and testimony on insurance coverage litigation to the extent they are in Grace's physical possession. We will begin production of these documents on a rolling basis.

### Occupational Characteristics

Document Request 61 requests documents concerning the occupational characteristics of claimants who claim exposure to Grace's asbestos-containing products. During our September 6, 2006 conference, we agreed that it would satisfy Grace's obligations under this request for Grace to produce documents relied on in conducting analyses of the employment characteristics of the Grace claimant population as represented in a slide used during oral argument during the bankruptcy litigation. On September 6, 2006, you sent me a copy of the slide to which you were referring. The information that provided the foundation for the slide is contained in a declaration executed by Daniel Rourke. This declaration contains a statistical analysis that Dr. Rourke performed of the 1997 and 2000 Grace personal injury database, using information from Grace's claim files. It was filed with the Debtors' Reply Memorandum in Support of Case Management Order on November 9, 2001. In response to your request, I am attaching Dr. Rourke's declaration to this letter (Attachment B). This satisfies Grace's obligation under this document request.

### Questionnaire Information

In your August 3, 2006 letter, you requested "a list of the asbestos personal-injury claimants (and their law firms, if applicable) who filed questionnaire responses with Rust Consulting." Grace and the PI Committee concurrently receive the names of the claimants who have responded to the Questionnaire as these names are returned to us. As we agreed at the

Nathan D. Finch, Esq.
September 22, 2006
Page 7


September 6, 2006 conference, Grace will compile this information into a list and send it to you in its current form, which currently stands at approximately 60,000 claimants. We expect to have this information by the end of the month.

Please call me if you would like to discuss any of these matters further or if I inadvertently neglected to include any other matters that were the subject of our discussions.

Sincerely,

Barbara Mack Harding

Enclosures

cc:    Richard Wyron, Esq.
        Raymond Mullady, Jr., Esq.
        Matthew I. Kramer, Esq.
        Kenneth Pasquale, Esq.
        Gary Becker, Esq.
        Daniel Cohn, Esq.
        Matthew Murphy, Esq.