# EXHIBIT 9

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (___) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

## W.R. GRACE & COMPANY'S
## INFORMATIONAL BRIEF

KIRKLAND & ELLIS
David M. Bernick
James H.M. Sprayregen
Andrew R. Running
Christopher B. Sullivan
Douglas G. Smith
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000
(312) 861-2200 (fax)

PACHULSKI, STANG, ZIEHL,
YOUNG & JONES P.C.
Laura Davis Jones
919 North Market Street, 16th Floor
Wilmington, Delaware 19801
(302) 652-4100
(302) 652-4400 (fax)

-- Co-Counsel for the Debtors and Debtors in Possession --

Dated: April 2, 2001

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

In 1977, Grace received its first claim for bodily injury arising from an asbestos product. Thereafter, during the late 1970s, Grace was sporadically named in asbestos-related bodily injury lawsuits. These lawsuits were relatively insignificant in number and were efficiently managed and resolved. In fact, by 1982 the total volume of claims against Grace was less than 100.

The landscape changed when Johns-Manville filed for bankruptcy in 1982. Thereafter, not a single month passed without Grace receiving a claim, and the claim volume grew. By the end of 1984, Grace had been served with approximately 1,000 lawsuits. By the end of 1990, this number increased to approximately 28,000, and by the end of 1995, nearly 75,000 lawsuits had been filed against Grace. To defend just these bodily injury claims, Grace had incurred cumulative defense costs of over $101 million by the end of 1995.

While Grace considered many of these claims to be meritless, out of necessity Grace implemented a program in the mid-1990s to settle rather than litigate as many claims as possible. This policy was not prompted by trial losses (as of February 28, 2001, Grace had won 44 of the 63 bodily injury claims tried to verdict. It had also obtained additional orders of dismissal for 35,698 claims prior to trial). Instead, Grace adopted an inventory settlement policy because the costs of litigating the huge number of claims being filed was simply prohibitive.

Under this process, Grace negotiated inventory settlements with individual plaintiff law firms pursuant to which it agreed to pay a certain amount of money for each defined category of alleged asbestos-related injuries (for example mesothelioma, lung cancer, other cancers and pleural thickening). For the same disease, however, claim amounts varied significantly by jurisdiction and by plaintiff law firm. Moreover, for economic reasons, Grace

29

was forced to accept a claimant's simple attestation of exposure to a Grace product. Grace could not afford to investigate the validity or reliability of the attestation, the level of exposure or determine if the claimant actually was exposed to other manufacturers' products. Likewise, on the medical side, Grace could not determine other factors that might have contributed to the diagnosed disease. Nor could it seek to contest causation by looking into the claimant's smoking history or into whether a lung cancer had spread from another, non-respiratory organ.

As noted above, Grace pursued the policy of inventory settlements into the late 1990s because it had no alternative. Moreover, this policy appeared financially feasible to Grace. Both its own claims experience and the best actuarial projections showed that new claims were on a downward slope. The following chart shows the annual number of asbestos bodily injury claims served on Grace through 1998, recorded in the year they were actually received by the company:



Asbestos Bodily Injury Claims

As depicted above, Grace's 1997 bodily injury claims fell 21.3% from the 1996 peak; 1998 registered an additional 30.8% reduction from 1997 claims volume. Grace's outside actuarial

30