## EXHIBIT B

Docket No. _____

THE COMMONWEALTH OF MASSACHUSETTS
APPELLATE TAX BOARD

W.R. GRACE & CO. - CONN.
(f/k/a W.R. Grace & Co.),

Appellant

v.

COMMISSIONER OF REVENUE,

Appellee.

PETITION UNDER FORMAL PROCEDURE

This is an appeal, pursuant to G.L. Chapter 62C, Sec. 39, of the Commissioner of

Revenue's ("Appellee" or "Commissioner") Notice of Abatement Determination, dated

September 9, 2003, denying Appellant's request for abatement of corporation excise tax,

interest and penalty in the aggregate amount of $4,710,657, including tax of $1,764,717, for

the 1991, 1992 and 1993 calendar years (the "Period in Issue").  A copy of the Notice of

Abatement Determination is annexed as Exhibit 1.

1.    The Appellant is W.R. Grace & Co.-Conn., a Connecticut corporation with its

principal place of business in Columbia, Maryland.

2.    On February 16, 1999 the Appellee issued to the Appellant a Notice of

Intention to Assess (a copy of which is annexed as Exhibit 2) corporation excise tax, interest

and penalty in the aggregate amount of $4,082,485, arising from the Commissioner's

recharacterization of certain capital gain, interest and dividends as apportionable income, which amounts the Appellant had treated in its corporation excise returns as non-apportionable income derived from non-unitary sources.

3.      Appellant requested a pre-assessment conference before the Office of Appeals.

4.      Following a conference conducted on May 17, 2000, the Office of Appeals concluded in a letter dated October 24, 2002, that the audit adjustments should be sustained, except that since it determined that the capital gains from the 1991 sale of stock in three corporations (X.L. Insurance Co., Teva Pharmaceuticals, Inc. and Teroson) constitute apportionable income, then the losses sustained from Grace's 1991 sale of Federation Chemicals Ltd., and Trinidad Nitrogen Co., similarly should be apportioned and applied as offsets to those gains. This resulted in a net gain of $2,157,240, and a net tax in the amount of $12,752. A copy of the Office of Appeals determination is annexed as Exhibit 3.

5.      In a letter dated November 4, 2002, the Audit Division advised that the proposed assessment would be revised in accordance with the determination of the Office of Appeals. A copy of the Audit Division's letter is annexed as Exhibit 4.

6.      The Appellee issued to the Appellant a Notice of Assessment dated January 18, 2003, which assessed, in part, corporation excise tax in the following amounts: 1991 - $875,318; 1992 - $547,776; and 1993 - $341,623, together with interest and penalty. A copy of the Notice of Assessment is annexed as Exhibit 5.

7.      On April 15, 2003, Applications for Abatement were timely filed with respect to the Period in Issue. Copies of the Applications for Abatement are annexed as Exhibit 6.

8.      Appellant is aggrieved by the Appellee's denial of Appellant's Applications for Abatement for the Period in Issue.

2

9.    The facts upon which the Appellant relies with respect to the Period in Issue are as follows:

(a)    During the Period in Issue, Appellant was the reporting parent in corporation excise returns filed on a consolidated basis with certain subsidiaries, pursuant to G.L. c.63, s.32B.

(b)    During the Period in Issue, Appellant was engaged in a specialty chemical business conducted both within and without Massachusetts, through divisions and subsidiaries.

(c)    During the Period in Issue, Appellant derived capital gains/losses and interest income, which it excluded from income subject to apportionment as reported on its Massachusetts Corporation Excise returns.

Capital Gains

(i)    Capital gain derived from the 1991 sale of its stock interest in X.L. Insurance Co., which had no Massachusetts activities and was not part of the businesses conducted, in part, in Massachusetts by Appellant.

(ii)    Capital gain derived from the 1991 sale of its stock interest in Teva Pharmaceuticals, Inc., which had no Massachusetts activities and was not part of the businesses conducted, in part, in Massachusetts by Appellant.

(iii)    Capital gain derived from the 1991 sale of its stock interest in Teroson, which had no Massachusetts activities and was not part of the businesses conducted, in part, in Massachusetts by Appellant.

Interest

    (i)    Interest income generated in 1991 from loans made to and associated with promissory notes issued by Del Taco Corporation, an 80%-owned corporation engaged in the fast-food business. It had no Massachusetts activities and was not part of the businesses conducted, in part, in Massachusetts by Appellant.

    (ii)    Interest income generated in 1991 from loans made to Grace Energy Corporation, an 83% owned corporation engaged in the ownership of natural resource corporations and which had no Massachusetts activities and was not part of the businesses conducted, in part, in Massachusetts by Appellant.

(d)    Appellant's subsidiary, Grace Cocoa Ventures, Inc. ("GCVI"), a Florida-based corporation, received a $700 million dividend in June, 1992 from its subsidiary NMC Holding, Inc. ("NMCH") in the form of a note ("Dividend Note"), at a time GCVI when did not have a taxable presence in Massachusetts.

In September, 1992, GCVI contributed the Dividend Note as a capital contribution to Grace Cocoa Ventures, LP ("GCVLP"), in exchange for a 99.99% interest in GCVLP. GCVLP did not have a taxable presence in Massachusetts.

On December 30, 1992, GCVLP contributed the Dividend Note to Grace Cocoa Associates, LP (the "Partnership"), in exchange for a 49% interest in the

Partnership. The Partnership, which had a physical presence in Massachusetts, was in the business of producing cocoa and chocolate products as ingredients for the bakery, confectionery and beverage industries, with domestic and foreign operations.

Dividend Note and Interest

(i)     In 1992, GCVI received interest on the Dividend Note. Both the dividend itself and interest therefrom were excluded from income subject to apportionment as reported on Appellant's Massachusetts Corporation Excise return.

The Appellee included in Appellant's 1992 combined income the nonexcluded portion of the $700 million Dividend Note received by GCVI (after statutory exclusion of 95% of dividends received), and the interest paid thereon, on the basis of GCVI's ownership on the last two days of the 1992 tax year of an interest in the Partnership which had a Massachusetts presence.

Distributive Share of Partnership Income

(ii)    In 1993, GCVI's distributive share of Partnership income, consisting of interest and operating income, was excluded from Appellant's combined Corporation Excise income subject to apportionment.

The Department included in Appellant's combined income GCVI's distributive

share of interest and operating income from the Partnership, at the

Partnership's 11.8% Massachusetts apportionment factor.

10.    The Appellant is aggrieved by the Appellee's failure to grant an abatement and

objects to the denial of its Applications for Abatement based upon the following contentions

of law:

Appellant's Capital Gains and Interest

(a)    X.L. Insurance Co., Teva Pharmaceuticals, Teroson, Del Taco Corporation,

and Grace Energy Corporation were all engaged in discrete business

enterprises which were not part of the specialty chemical business conducted

by Appellant in the Commonwealth of Massachusetts.

(b)    There was no flow of value, centralized day-to-day management, or economies

of scale from shared operations or management, between Appellant and such

companies.

(c)    The income at issue arose from discrete business enterprises which were not

part of the specialty chemical business conducted by Appellant in the

Commonwealth of Massachusetts. Under principles articulated in Mobil Oil

Corp. v. Commissioner, 445 U.S. 425 (1980), Exxon Corp. v. Wisconsin Dept.

of Revenue, 447 U.S. 207 (1980), ASARCO, Inc. v. Idaho State Tax

Commission, 458 U.S. 307 (1982), F.W. Woolworth v. Taxation & Rev. Dept.,

458 U.S. 354 (1982), Allied-Signal, Inc. v. Director, Division of Taxation, 112

S.Ct. 2251 (1992), and, most recently, W.R. Grace & Co.-Conn. v.

Commissioner, 58 Mass. App. Ct. 469, July 2, 2003, such income cannot be subjected to Massachusetts taxation.

(d)     Whether the operations giving rise to nonapportionable income are conducted by a non-unitary corporation, or a discrete division of the corporation receiving the income, taxation is precluded by the bedrock "principle that a state may not tax property earned outside its borders. . . ." (citation omitted). Central National-Gottesman v. Commissioner of Revenue, App. Tax Bd. Docket No. F232651, Sept. 4, 1998.

(e)     In the alternative, if the capital gains are determined to constitute apportionable income, the losses sustained from the sale of stock in Federation Chemicals Ltd. and Trinidad Nitrogen Co., Ltd. which Appellant allocated to non-Massachusetts sources, also should be apportioned and applied as offsets to the gains, as determined by the Office of Appeals in Exhibit 3.

GCVI's Note Dividend, Interest and Distributive Share of Partnership Income

(f)     Taxation of the nonexcludable portion of the Dividend Note, and the interest paid thereon, is inconsistent with the Commissioner's long-standing position that interest paid pursuant to a Dividend Note is nondeductible. This position has been codified in Section 31I and 31J, St. 2003, c.4, § 17. See Technical Information Release 03-19(c) 3, Ex. 5.

(g)     The imposition of approximately $650,000 in tax against GCVI on the basis that it had a taxable presence in Massachusetts in 1992 for two days, by virtue of the acquisition on December 30, 1992 of a minority interest in a non-unitary

second tier partnership, contravenes the settled constitutional principle that there must be a rational relation between the income attributed to the taxing state and the intrastate value of the corporate business. <u>Mobil Oil Corporation v. Commissioner of Taxes of Vt.</u>, 445 U.S. 425 (1980);

(h)     The Massachusetts presence of a second-tier non-unitary partnership should not be attributable to GCVI for the purpose of establishing a taxable connection to support the taxation of GCVI's Dividend Note and distributive share of interest received by the partnership.

(i)     The Dividend Note and interest thereon represent income from an investment having no relationship with Massachusetts and, accordingly, are not taxable in Massachusetts. In <u>Central National-Gottesman v. Commissioner of Revenue</u>, App. Tax Bd. Docket No. F 232651, Sept. 4, 1998, the Appellate Tax Board referred to "the bedrock principle that a state may not tax property earned outside its borders . . .," citing <u>Allied-Signal Inc. v. Director of Tax Div.</u>, 504 U.S. 768 (1992).

(j)     The Commissioner should have invoked his authority under 830 CMR 63.39(8)(d) to treat CGVI's two-day ownership of a second-tier partnership as a <u>de minimis</u> connection with Massachusetts, since imposition of a Corporate Excise of the magnitude assessed in this case, based on an indirect interest in a second-tier partnership for the last two days of 1992, would constitute an unconstitutional extension of Massachusetts' taxing jurisdiction.

(k)     The tax consequences of GCVI's receipt of the Dividend Note are determined by the facts as they existed at the time the dividend was declared. Because GCVI had no taxable connection with Massachusetts at that time, the Dividend Note and the interest thereon, are not taxable. See Koch v. Commissioner of Revenue, 416 Mass. 540 (1993).

(l)     GCVI's distributive share of 1993 Partnership income represents income from an investment having no relationship with Massachusetts and, is accordingly, not taxable by Massachusetts. See Central National-Gottesman v. Commissioner of Revenue, supra; W.R. Grace & Co.-Conn. v. Commissioner, supra.

(m)     Attributing to GCVI the Massachusetts presence of a second-tier non-unitary Partnership, for the purpose of establishing a connection to support the taxation of GCVI's distributive share of Partnership income, lacks the "minimum connection" or "definite link" between the state and the person, property or transaction it seeks to tax, as required by the Due Process Clause of the U.S. Constitution, Truck Renting and Leasing Assn., Inc. v. Commissioner, 433 Mass. 733 (2001), citing Miller Bros. v. Maryland, 347 U.S. 340 (1954), and that the "income attributed to the state . . . must be rationally related to values connected with the taxing state," citing Moorman Mfg. Inc. v. Bair, 437 U.S. 267 (1998).

(n)     The imposition of the Massachusetts Corporation Excise upon GCVI would violate the Due Process and Commerce Clauses of the U.S. Constitution,

because "the tax must be applied to an activity with a substantial nexus with the taxing state. The business must have some constitutionally sufficient degree of contact with the taxing state before the state can impose any tax on it." <u>Aloha Freightways, Inc. v. Commissioner of Revenue</u>, 428 Mass. 418 (1998).

<u>Penalties Should Be Abated For Reasonable Cause</u>

(o)     Penalties should have been abated pursuant to G.L. c. 62C, s. 33(f), which provides that penalties may be abated if the taxpayer can demonstrate that the failure to file or pay tax in a timely fashion was due to reasonable cause and not willful neglect. Appellant "exercised the degree of care that an ordinary taxpayer in [its] position would have exercised." <u>Blakeley v. Commissioner of Revenue</u>, 28 Mass. App. Ct. 499, 501, *review denied*, 407 Mass. 1103 (1990) (citation omitted).

The determination of whether an item of income derived from another entity, <u>i.e.</u>, capital gain, dividend and interest, is part of Applicant's unitary business is highly fact sensitive, and Appellant's evaluation of the facts in concluding that the income items at issue were not derived from its unitary business operations, was reasonable and not due to willful neglect.

11.     The Appellant prays that a hearing be held upon this Petition, and that the Appellee be required to abate Corporation Excise Tax in the amount of $1,767,717, together with assessed interest and penalty.

12.    The address of the Appellant is 5400 Broken Sound Blvd. N.W., Boca Raton,

FL 33487, and its telephone number is (561) 362-1306.  Service of papers in connection with

this appeal may be made to Maxwell D. Solet, Attorney for the Appellant, addressed to Mintz,

Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston,

Massachusetts 02111.

Dated:  October ___, 2003

Respectfully submitted,

_____

Maxwell D. Solet
BBO # 472440
Mintz, Levin, Cohn, Ferris, Glovsky
    and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000

Paul H. Frankel
Michael A. Pearl
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 468-8000

ATTORNEYS FOR THE APPELLANT