IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date:   May 2, 2007 at 2:00 p.m.** |

**Hearing Date:   May 2, 2007 at 2:00 p.m.**
**(in Pittsburgh, PA)**
**Responses Due: April 13, 2007 at 4:00 p.m.**

## DEBTORS' MOTION FOR AN ORDER MODIFYING THE AUTOMATIC STAY SO THAT DEBTORS MAY COMMENCE TAX COURT LITIGATION TO RESOLVE <u>CERTAIN TAX CLAIMS</u>

The Debtors respectfully move this Court (the "Motion") for entry of an order

(1) modifying the automatic stay in order to permit the Debtors to file litigation (the "Tax Suit")

in the United States Tax Court (the "Tax Court") against the Commissioner of the Internal

Revenue Service ("IRS"), with respect to certain tax claims potentially affecting Debtors' 1989

tax year and (2) authorizing Debtor W. R. Grace & Co.-Conn. ("Grace-Conn") to take such

action as is necessary to proceed with the Tax Suit.

In support of this Motion, the Debtors respectfully state as follows:

### <u>Jurisdiction</u>

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G), with the

Debtors seeking to modify the automatic stay imposed by 11 U.S.C. § 362(a)(8).  Venue of this

Motion is proper under 28 U.S.C. § 1408.

2.    The statutory predicates for this Motion are Sections 105 and 362 of the

Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

## Background

3.    On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary

petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11

Cases"). These Chapter 11 Cases have been consolidated for administrative purposes only, and,

pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate

their businesses and manage their properties as debtors in possession.

## Specified Liability Loss Carryback

4.    During its 1998 taxable year, Grace-Conn incurred a substantial net

operating loss ("NOL") for federal income tax purposes. Based upon the tax return as filed,

Grace-Conn determined that it had a specified liability loss ("SLL") of approximately $130

million that was eligible to be carried back for up to 10 years (the "Carryback"). Grace-Conn

applied the Carryback to its 1989 taxable year and timely filed Form 1139 (Corporate

Application for Tentative Refund) with the IRS to obtain a tentative refund of the resulting

overpayment of tax in the 1989 year of approximately $28 million. The IRS refunded the tax

overpayment to Fresenius Medical Care Holdings, Inc. ("Fresenius"). Pursuant to existing

agreements between Fresenius and Grace-Conn (described below), Fresenius paid the tentative

refund to Grace-Conn.

5.    After an IRS audit of Grace-Conn's 1998 tax return, and based upon an

agreement with the IRS as to the amount of SLL for that year, Grace-Conn determined that it had

an additional $30 million SLL that it could carryback to 1989. A claim for refund has been filed

2

for the additional overpayment of tax in 1989 resulting from that additional SLL carryback amount; to date the IRS has not taken action on this second carryback.

6.      On March 22, 2007, the IRS issued a notice of deficiency for 1989 to Fresenius seeking the payment of taxes determined by the IRS to be due of $32,554,061 (the "Deficiency Notice," a version of which is attached as Exhibit A hereto). The Deficiency Notice is based primarily on a disallowance of the Carryback reflected on the Form 1139. Pursuant to Sections 6211, 6212 and 6213 of the Internal Revenue Code of 1986, as amended (the "Tax Code"), the Tax Suit must be filed in U.S. Tax Court to contest the disallowed Carryback within 90 days of the date of the Deficiency Notice. If the Tax Suit is not filed in the Tax Court within 90 days, the IRS is permitted to assess and attempt to collect the deficiency reflected in that notice (plus interest thereon) from Fresenius, Grace-Conn or from any other member of the consolidated tax group included in the 1989 consolidated tax return (pursuant to the several liability under Treas. Reg 1.1502-6).

7.      As explained below, under the Tax Sharing and Indemnification Agreement dated September 27, 1996 (the "Tax Sharing Agreement"), attached as Exhibit B hereto, and the First Amended Settlement Agreement and Release of Claims (the "Settlement Agreement"), attached as Exhibit C hereto, Fresenius is entitled (subject to the terms and conditions of the Settlement Agreement) to be reimbursed by Grace-Conn for any amounts collected by the IRS from Fresenius resulting from the disallowance of the Carryback. If the Carryback is disallowed, Grace-Conn estimates that the amount of such required reimbursement will be no less than $28 million, plus interest, and that at least $16 million in other tax benefits will be lost.

3

## Tax Sharing And Indemnification Agreement

8.     As a result of a restructuring transaction entered into on or about September 27, 1996, the Debtors' specialty chemicals business and other businesses were separated from its healthcare businesses, and the healthcare businesses became part of the Fresenius group.   Fresenius and Grace-Conn then entered into the Tax Sharing Agreement.

9.     On February 6, 2003, Grace-Conn and Fresenius, along with other interested parties, entered into the Settlement Agreement approved by this Court.  The Settlement Agreement, *inter alia*, supercedes the Tax Sharing Agreement in relevant part and provides that Debtors shall be responsible for all "Indemnified Taxes," including "all Taxes for or attributable to Tax Periods ending on or before December 31, 1996," attributable to Grace-Conn.  Section 3.05 of the Settlement Agreement requires that the Debtors "indemnify, defend and hold harmless" Fresenius "from any action by any Person, including any tax authority, seeking payment by or reimbursement from" Fresenius for "any Indemnified Taxes."  Therefore, if the IRS succeeds in disallowing the Carryback to the 1989 year and seeks payment from Fresenius of the amounts in the Deficiency Notice, Grace-Conn would be liable for any resulting tax deficiency (subject to the terms and conditions of the Settlement Agreement).

10.     Section 3.03(A) of the Settlement Agreement provides that Grace-Conn "solely shall be authorized to act for [Fresenius] in its sole discretion with respect to Indemnified Taxes."  In addition, Fresenius is required to "provide to Grace-Conn and its agents from time to time Powers of Attorney with respect to Indemnified Taxes so that Grace-Conn can act as the agent of [Fresenius] with respect to Indemnified Taxes."

4

## The Automatic Stay

11.     Section 362(a)(8) of the Bankruptcy Code extends the automatic stay to

"the commencement or continuation of a proceeding before the United States Tax Court

concerning the debtor" (emphasis added).  Because any liability resulting from the disallowance

of the Carryback would be Grace-Conn's responsibility (subject to the terms and conditions of

the Settlement Agreement), any action commenced in the Tax Court either by Grace-Conn or by

Fresenius relating to the Carryback would "concern the debtor."  The automatic stay would thus

prevent Grace-Conn from commencing an action in Tax Court, in its own name or on behalf of

Fresenius, to resolve the tax matters related to the Carryback.

12.     The language of Section 362(a)(8) is substantially broader than the general

automatic stay of Section 362(a)(1), which applies only to actions "against the debtor."  Section

362(a)(8) applies to any case "concerning the debtor."  Given that Grace-Conn is a debtor and

the liability created by the Deficiency Notice would be a liability of Grace-Conn directly under

Treas. Reg. § 1.1502-6 and by indemnification under the Settlement Agreement, any litigation

commenced by Fresenius or in Fresenius' name in Tax Court regarding this issue clearly

concerns Grace-Conn and will have a significant impact on its estate.

13.     Therefore, as stated above, without the requested order, the automatic stay

will prevent Grace-Conn and Fresenius from filing suit in the Tax Court with respect to the

Deficiency Notice.  The IRS will then assess against Fresenius (and potentially Grace-Conn) the

tax and related interest alleged to be due, which in turn will create a corresponding claim by

Fresenius against Grace-Conn under the Settlement Agreement.

5

## The Tax Suit

14.    There are substantial benefits to Grace-Conn of modifying the automatic stay and having this matter litigated in the United States Tax Court. First and foremost, Grace-Conn believes its position on the Carryback is correct and desires the opportunity to seek a resolution of this issue with a branch of the IRS known as the Appeals Division, whose job it is to resolve taxpayer disputes without the need for litigation, where possible. In this particular case, the most likely route through which the Appeals Division will obtain jurisdiction to consider this dispute is by Grace-Conn's filing a petition in Tax Court. Under IRS procedures, when a case is docketed in Tax Court that has not yet had Appeals Division consideration, it is typically referred to the Appeals Division for consideration. The IRS's procedural rules do not provide a similar procedure after a notice of deficiency is issued if the taxpayer has not filed a petition. Hence, if this Court does not modify the automatic stay to permit the parties to file a petition in Tax Court, Grace-Conn will likely forfeit the opportunity to resolve the matter with the Appeals Division.

15.    Second, if a suit seeking redetermination of the amounts set forth in the Deficiency Notice is filed in the Tax Court, the IRS generally is prevented by Section 6213(a) of the Tax Code from assessing and commencing collection of such amounts until the case is resolved by the Tax Court. In turn, this means that Fresenius will have a claim against Grace-Conn under the Settlement Agreement only if and when the Tax Court issues a decision in the Tax Suit that is adverse to Grace-Conn. If Grace-Conn does not timely file a petition in Tax Court to contest the Deficiency Notice, then the IRS can initiate assessment and collection activities and Fresenius could then be forced to file a claim against Grace-Conn under the

6

Settlement Agreement.  Given that it is operating in bankruptcy, Grace-Conn does not believe

that it would be beneficial to the administration of its bankruptcy estate to be forced to address a

claim by Fresenius at this time, especially with the availability of a court with specialized

expertise that does not require pre-payment to contest the tax.

16.    Third, the Tax Court is a court with special expertise in the resolution of

matters such as the issues presented by the IRS's denial of the Carryback.  The issue at hand is

one that requires specialized knowledge of the consolidated return regulations of the Tax Code.

A summary of the issue is attached as Exhibit D.

### Relief Requested

17.    By this Motion, the Debtors seek an order (i) modifying the automatic stay

so that Grace-Conn may institute and manage the litigation of the amounts at issue in the

Deficiency Notice, and (ii) authorizing Grace-Conn to proceed with the Tax Suit.

### Statutory Authority

18.    Under Section 362(d) of the Bankruptcy Code, "[o]n request of a party in

interest and after notice and a hearing, the court shall grant relief from the stay provided under

subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such

stay," provided the Court finds adequate cause for such modification.

19.    Section 105 of the Bankruptcy Code permits a bankruptcy court to "issue

any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title."

20.    With respect to the question of whether another forum, such as the Tax

Court, is suited to adjudicate a matter, bankruptcy courts have identified various relevant factors:

7

"The analysis necessarily includes balancing the Bankruptcy Court's need to administer the bankruptcy case in an orderly and efficient manner, the complexity of the tax issues to be decided, the asset and liability structure of the debtor, the length of time required for trial and decision, judicial economy and efficiency, the burden on the Bankruptcy Court's docket, prejudice to the debtor and potential prejudice to the taxing authority responsible for collection from inconsistent assessments." In re Hunt, 95 B.R. 442, 445 (Bankr. N.D. Tex. 1989).

21.     This Court's time and attention are urgently required with respect to other aspects of Chapter 11 Cases. The tax issues involved in the Tax Suit are sufficiently technical that the expertise of a specialized tribunal would be beneficial. Finally, the Debtors' resources are best preserved by filing the Tax Suit in Tax Court rather than paying the amounts at issue in the Deficiency Notice and subsequently seeking a refund.

22.     This Motion is in the best interests of the Debtors and their creditors and should be approved by the Bankruptcy Court pursuant to Fed. R. Bankr. P. 4001.

**Notice**

23.     Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) the Internal Revenue Service; (iii) counsel to the debtor in possession lenders, (iv) counsel to each official committee appointed by the United States Trustee and the Future Claimant's Representative, and (v) those parties that requested papers under Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) modifying the automatic stay so that Grace-Conn may institute and manage the contest or

8

litigation of the amounts at issue in the Deficiency Notice, and (ii) authorizing Grace to proceed

with the Tax Suit.

Dated:  March 28,  2007

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Todd F. Maynes, P.C.
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000

and

PACHULSKI STANG ZIEHL YOUNG JONES &
WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P. O. Box 8705
Wilmington, DE  19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

9