## EXHIBIT B

## TAX SHARING AND INDEMNIFICATION AGREEMENT

This TAX SHARING AND INDEMNIFICATION AGREEMENT (this "Agreement"), dated September 27, 1996, by and among W.R. Grace & Co., a New York corporation ("Grace"), W.R. Grace & Co.-Conn., a Connecticut corporation and a wholly owned subsidiary of Grace ("Grace-Conn."), and Fresenius AG, an Aktiengesellschaft organized under the laws of the Federal Republic of Germany ("Fresenius AG").

### RECITALS

WHEREAS, Grace, Fresenius USA and Fresenius AG have entered into an Agreement and Plan of Reorganization (the "Reorganization Agreement");

WHEREAS, Grace and Grace-Conn. have entered into the Distribution Agreement;

AND WHEREAS, Grace, on behalf of itself and the NMC Group and Grace-Conn., on behalf of itself and the Grace-Conn. Group, wish to provide for the allocation between the NMC Group and the Grace-Conn. Group of all responsibilities, liabilities and benefits relating to or affecting Taxes (as hereinafter defined) paid or payable by either of them for all taxable periods, whether beginning before, on or after the Distribution Date (as hereinafter defined) and to provide for certain other matters.

NOW, THEREFORE, in consideration of the premises, and of the representations, warranties, covenants and agreements set forth herein, the parties hereto hereby agree as follows:

### ARTICLE I

### DEFINITIONS

Capitalized terms used but not defined herein shall have the respective meanings assigned to them in the Distribution Agreement or the Reorganization Agreement. As used in this Agreement, the following terms shall have the following meanings (such meanings to be equally applicable to both the singular and the plural forms of the terms defined):

"Adjusted NMC Group" means NMC and the NMC Subsidiaries.

"Grace-Conn. Tax Item" shall mean a Tax Item solely attributable to the Grace-Conn. Group, but including, for this purpose, any Tax Item solely attributable to Grace and arising with respect to a Pre-Merger Taxable Period or that portion of a Straddle Period ending on the Distribution Date, any item of income or gain, including any deferred item restored to income, any of the forgoing of which is associated with Grace's indirect interest in Grace Cocoa Associates L.P., and any Tax Item attributable solely to NMC arising with respect to the recapitalization of Grace immediately prior to the Grace Merger.

"Code" means the Internal Revenue Code of 1986, as amended, and shall include corresponding provisions of any subsequently enacted federal tax laws.

"Distribution Date" means the date on which the Distribution occurs or is deemed to occur for federal income tax purposes. For purposes of this Agreement, the Distribution shall be deemed effective as of the close of business on the Distribution Date.

"Final Determination" shall mean the final resolution of liability for any Tax for a taxable period, (i) by IRS Form 870 or 870-AD (or any successor forms thereto), on the date of acceptance by or on behalf of the taxpayer, or by a comparable form under the laws of other jurisdictions; except that a Form 870 or 870-AD or comparable form that reserves (whether by its terms or by operation of law) the right of the taxpayer to file a claim for refund and/or the right of the taxing authority to assert a further deficiency shall not constitute a Final Determination; (ii) by a decision, judgment, decree, or other order by a court of competent jurisdiction, which has become final and unappealable; (iii) by a closing agreement or accepted offer in compromise under Section 7121 or 7122 of the Code, or comparable agreements under the laws of other jurisdictions; (iv) by any allowance of a refund or credit in respect of an overpayment of Tax, but only after the expiration of all periods during which such refund may be recovered (including by way of offset) by the Tax imposing jurisdiction; or (v) by any other final disposition, including by reason of the expiration of the applicable statute of limitations or by mutual agreement of the parties.

"IRS" means the Internal Revenue Service.

"Joint Tax Return" shall mean any Tax Return that includes a member of the NMC Group and a member of the Grace-Conn. Group.

"Grace Tax Item" shall mean a Tax Item solely attributable to the NMC Group and that is not a Grace-Conn. Tax Item.

"Short Period" means the period commencing on January 1, 1996 and ending on the Distribution Date.

"Straddle Period" means a taxable period that includes but does not end on the Distribution Date.

"Tax" means any of the Taxes.

"Tax Deficiency" shall mean an assessment of Taxes, as a result of a Final Determination.

"Tax Detriment" means any item of income, gain, recapture of credit or any other Tax Item which increases Taxes paid or payable.

"Tax Item" means any item of income, gain, loss, deduction, credit, provisions for reserves, recapture of credit or any other item which increases or decreases Taxes paid or payable, including an adjustment under Code Section 481 resulting from a change in accounting method.

"Tax Refund" shall mean a refund of Taxes as the result of a Final Determination.

"Tax Return" means any return, filing, questionnaire, information return or other document required to be filed, including requests for extensions of time, filings made with estimated tax payments, claims for refund and amended returns that may be filed, for any period with any taxing authority (whether domestic or foreign) in connection with any Tax or Taxes (whether or not a payment is required to be made with respect to such filing).

"Taxes" means all forms of taxation, whenever created or imposed, and whether of the United States or elsewhere, and whether imposed by a local, municipal, governmental, state, foreign, federation or other body, and without limiting the generality of the foregoing, shall include income, sales, use, ad valorem, gross receipts, license, value added, franchise, transfer, recording, withholding, payroll, employment, excise, occupation, unemployment insurance, social security, business license, business organization, stamp, environmental, premium and property taxes, together with any related interest, penalties and additions to any such tax, or additional amounts imposed by any taxing authority (domestic or foreign) upon the

-3-

NMC Group, the Grace-Conn. Group or any of their respective
members or divisions or branches.

## ARTICLE II

### FILING OF TAX RETURNS

Section 2.01  <u>Manner of Filing</u>.  All Tax Returns
filed after the Distribution Date shall be prepared on a basis
which is consistent with the consummation of the transactions
as set forth in the Distribution Agreement, the Grace Tax Mat-
ters Certificate, the Fresenius AG Tax Matters Certificate and
the Grace Tax Opinions (in the absence of a controlling change
in law or circumstances) and shall be filed on a timely basis
(including extensions) by the party responsible for such filing
under this Agreement.  In the absence of a controlling change
in law or circumstances, all Tax Returns filed after the date
of this Agreement shall be prepared on a basis consistent with
the elections, accounting methods, conventions, and principles
of taxation used for the most recent taxable periods for which
Tax Returns involving similar Tax Items have been filed, to the
extent that a failure to do so would result in a Tax Detriment
to the other party hereto or a member of its Group.  Subject to
the provisions of this Agreement, all decisions relating to the
preparation of Tax Returns shall be made in the sole discretion
of the party responsible under this Agreement for such prepara-
tion.  Grace-Conn. will provide Grace with copies of all Tax
Returns (or appropriate portions thereof) filed after the Dis-
tribution Date to the extent such returns relate to the NMC
Group.

Section 2.02  <u>Pre-Merger Tax Returns</u>.

(a)  <u>Consolidated Returns</u>.  The Grace consolidated
federal income Tax Returns required to be filed for all taxable
periods ending on or before the Distribution Date ("Pre-Merger
Taxable Periods"), and for all Straddle Periods" shall be pre-
pared and filed by Grace-Conn., and Grace hereby irrevocably
designates, and agrees to cause each of its subsidiaries to so
designate, Grace-Conn. as its agent to take any and all actions
necessary or incidental to the preparation and filing of such
Returns.  Grace-Conn. agrees to cooperate in good faith with
Grace to determine the appropriate amount of Tax Items at-
tributable to the NMC Group to be reflected on Grace's consoli-
dated federal income Tax Return for Pre-Merger Taxable Periods
and Straddle Periods.  Grace-Conn. further agrees to provide
Grace with a copy of each such Tax Return two weeks before it
is filed, and to consider in good faith any comments thereon
provided in writing by Grace.

-4-

(b) <u>Combined, Consolidated and Unitary Returns</u>.  All state and local combined, consolidated and unitary corporate income Joint Tax Returns which are required to be filed for all Pre-Merger Taxable Periods and Straddle Periods, which have not been previously filed shall be prepared and filed by Grace-Conn., and Grace hereby irrevocably designates, and agrees to cause each of its subsidiaries to so designate, Grace-Conn. as its agent to take any and all actions necessary or incidental to the preparation and filing of such Joint Tax Returns. Grace-Conn. agrees to cooperate in good faith with Grace to determine the appropriate amount of Tax Items attributable to the NMC Group to be reflected on combined, consolidated and unitary corporate Joint Tax Returns for Pre-Merger Taxable Periods and Straddle Periods.

(c) <u>Other Returns</u>.  All other Tax Returns not described elsewhere in this Section 2.02 that are required to be filed for all Pre-Merger Taxable Periods and Straddle Periods shall be prepared and filed by the party which prepared and filed such Return for the most recent period for which such Return was filed or if no such Return was filed in such period, the party responsible under the appropriate law of the taxing jurisdiction, provided, however, that any other Tax Returns which, but for this proviso, would be prepared and filed by Grace shall be prepared and filed by Grace-Conn., and Grace hereby irrevocably designates Grace-Conn. as its agent to take any and all actions necessary or incidental to the preparation and filing of such other Tax Returns.  Grace-Conn. agrees to cooperate in good faith with Grace to determine the appropriate amount of Tax Items attributable to the NMC Business to be reflected on such Returns for Pre-Merger Taxable Periods and Straddle Periods.

Section 2.03  <u>Post-Merger Tax Returns</u>.  All Tax Returns for periods beginning after the Distribution Date ("Post-Merger Taxable Periods") shall be the responsibility of the Grace-Conn. Group if such Tax Returns relate solely to a member or members of the Grace-Conn. Group or their respective assets or businesses, and shall be the responsibility of the NMC Group if such Tax Returns relate solely to a member or members of the NMC Group or their respective assets or businesses.

-5-

ARTICLE III

PAYMENT OF TAXES

Section 3.01  Allocation of Tax Liabilities With Respect to Unfiled Returns.

(a)  Consolidated Federal Income Tax Liabilities. Except as otherwise provided in this Agreement, Grace-Conn. shall pay, on a timely basis, all Taxes due with respect to the consolidated federal income tax liability for all Pre-Merger Taxable Periods and Straddle Periods of the affiliated group of which Grace is the common parent (the "Affiliated Group"). Grace and NMC on behalf of the NMC Group hereby assume and agree to pay directly to Grace-Conn. (i) the Adjusted NMC Group's allocable share of those Taxes for all Pre-Merger Taxable Periods and Straddle Periods and (ii) Grace's allocable share of those Taxes for the portion of any Straddle Period commencing on the day after the Distribution Date.

The NMC Group's allocable share of the Affiliated Group's consolidated federal income tax liability for Pre-Merger Taxable Periods and Straddle Periods and Grace's allocable share of such tax liability for the portion of any Straddle Period beginning on the day after the Distribution Date (calculated by treating the day after the Distribution Date as the first date of a taxable period) shall be determined in accordance with the Grace Financial Accounting Policy Statements on Income Taxes (Policy 409) a copy of which is attached hereto as Exhibit I (in effect as of the date hereof, the "Prior Arrangement").

After the Distribution Date, Grace and/or NMC shall timely pay all amounts payable by Grace and the NMC Group in respect of quarterly estimated federal income tax payments for the year ended December 31, 1996 in accordance with past practice and the Prior Arrangement, such payments to be made directly to Grace-Conn. which will, to the extent Tax is owed by the consolidated group, forward such payments to the IRS.

If the calculations made pursuant to this Section 3.01(a) as compared to the amount shown as due on the appropriate Tax Return indicate that the NMC Group has either overpaid or underpaid its share of the consolidated federal income tax liability for the year ended December 31, 1995 and for the year ended December 31, 1996, respectively, within 30 days of the filing of Grace's consolidated federal income tax return for the year ended December 31, 1995, and the year ending December 31, 1996, respectively, Grace-Conn. shall pay Grace and/or NMC

-6-

the amount of any such overpayment or Grace and/or NMC shall pay Grace-Conn. the amount of any such underpayment.

All calculations and determinations required to be made pursuant to this Section 3.01(a) shall be made by Grace-Conn. on a basis reasonably consistent with prior years, whose good faith determination shall be binding upon the parties hereto in the absence of mathematical error.

(b)  <u>Combined, Consolidated and Unitary Corporate Income Taxes.</u>  Except as otherwise provided in this Agreement, Grace-Conn. or a member of the Grace-Conn. Group shall pay, on a timely basis, all Taxes due with respect to any combined, consolidated or unitary state, local and foreign corporate income tax liability for all Pre-Merger Taxable Periods and Straddle Periods with respect to Joint Tax Returns ("Combined Taxes").  Grace and NMC on behalf of the NMC Group hereby assume and agree to pay directly to Grace-Conn. (i) the Adjusted NMC Group's allocable share of those Taxes for all Pre-Merger Taxable Periods and Straddle Periods and (ii) Grace's allocable share of those Taxes for the portion of any Straddle Period commencing on the day after the Distribution Date.

The NMC Group's allocable share of the Affiliated Group's combined, consolidated and unitary income tax liability (other than federal income taxes) for Pre-Merger Taxable Periods and Straddle Periods and Grace's allocable share of such tax liability for the portion of any Straddle Period beginning on the day after the Distribution Date (calculated by treating the day after the Distribution Date as the first date of a taxable period) shall be determined in accordance with the Prior Arrangement.

After the Distribution Date, Grace and/or NMC shall timely pay all amounts payable by Grace and the NMC Group in respect of quarterly estimated income tax payments for the year ended December 31, 1996 in accordance with past practice and the Prior Arrangement, such payments to be made directly to Grace-Conn. which will, to the extent Tax is owed by the combined, unitary or consolidated group, forward such payments to the appropriate Taxing authority.

If the calculations made pursuant to this Section 3.01(b) as compared to the amount shown as due on the appropriate Tax Return indicate that Grace and/or NMC has either overpaid or underpaid its share of its Combined Tax liability within 30 days after the filing of the relevant return, Grace-Conn. shall pay Grace the amount of any such overpayment or Grace shall pay Grace-Conn. the amount of any such underpayment.  All calculations and determinations required to be made

-7-

pursuant to this Section 3.01(b) shall be made by Grace-Conn. on a basis reasonably consistent with prior years, whose good faith determination shall be binding upon the parties hereto in the absence of mathematical error.

(c)   All other Taxes for periods beginning before the Distribution Date shall be paid by the party responsible under this Agreement for filing the Tax Return pursuant to which such Taxes are due, provided that, in the case of other Taxes due with respect to Tax Returns of Grace for Straddle Periods ("Grace Straddle Returns"), Grace shall reimburse Grace-Conn. as follows:

1. The "Hypothetical Pre-Distribution Tax" shall mean the Tax that would have been due for the taxable period ending on the Distribution Date if the Distribution Date were the last day of the taxable period.  Such Tax shall be computed by determining the items of income, expense, deduction, loss or credit on a "closing of the books" basis as of the Distribution Date.

2. Thirty days prior to the relevant due date (including extensions) of any Grace Straddle Return, Grace-Conn. shall present Grace with a schedule detailing the computation of the Hypothetical Pre-Distribution Tax attributable to Grace for such Straddle Period and the total Tax due with respect to the relevant Tax Return (the "Return Amount").

3. Ten days after Grace-Conn. presents Grace with the schedule described in clause 2 above, (x) Grace shall pay Grace-Conn. the amount by which the Return Amount exceeds the sum of (i) the Hypothetical Pre-Distribution Tax plus (ii) the sum of any estimated payments, deposits or credits made or applied after the Distribution Date with respect to such Tax for the Straddle Period (which shall be made in accordance with past practice and the Prior Arrangement, such payments to be made directly to Grace-Conn. which will forward such payments to the appropriate taxing authority), or (y) Grace-Conn. shall pay Grace the amount by which the sum of (i) the Hypothetical Pre-Distribution Tax plus (ii) the sum of any estimated payments, deposits or credits made or applied after the Distribution Date with respect to such Tax for the Straddle Period exceeds the Return Amount.

4.    In the event Grace disputes Grace-Conn.'s compu-
tation of the Hypothetical Pre-Distribution Tax,
the Return Amount or any of the payments, depos-
its or credits described in clause 1 above,
Grace, or Grace-Conn., as the case may be, shall
nevertheless pay to the other party any amounts
that would be due under clause 3 pending adjust-
ment after the resolution of such dispute, which
shall be resolved by a "big six" accounting firm
that does not have an engagement relationship
with Grace, NMC or Grace-Conn. and that is mutu-
ally agreed upon by Grace and Grace-Conn.. The
accounting firm shall resolve such dispute as
expeditiously as possible and shall do so ap-
plying the applicable law and the provisions of
this Agreement, with due regard for the posi-
tions of the parties. The costs, expenses and
fees of the accounting firm shall be borne
equally by Grace and Grace-Conn..

5.    Where the Hypothetical Pre-Distribution Tax sys-
tem is not feasible in calculating the portion
of any Tax for a Straddle Period that Grace is
responsible for under this Section 3.01(c), the
amount of such Tax for which Grace is respon-
sible shall be determined by prorating the ac-
tual tax due for the Straddle Period on a daily
proration basis. The amount of such Tax borne
by Grace-Conn. shall be the amount allocated to
the portion of the Straddle Period through the
Distribution Date. The principles of clauses 1,
2, 3 and 4 shall be used to provide for payment
and reimbursement of such Tax between the par-
ties.

6.    In implementing this Section 3.01(c), the par-
ties shall make any adjustments that are neces-
sary to insure that, with respect to all Taxes
for Straddle Periods, payment and reimbursement
between the parties reflects the principle that
Grace is to bear responsibility for Taxes for
Grace (and any Affiliates) that are attributable
to the portion of Straddle Periods after the
Distribution Date.

(d)  Notwithstanding anything to the contrary, in
determining the NMC Group's allocable share of any Tax li-
ability, any increase in the Tax liability resulting from any
act or omission not in the ordinary course of business (other

than transactions contemplated by this Agreement, the Distribu-
tion Agreement, the Reorganization Agreement or the Employee
Benefits Agreement) on the part of any member of the NMC Group
occurring on the Distribution Date after the Effective Time
shall be deemed to arise in a taxable period which begins after
the Distribution Date.

(e)  Anything in Section 3.01(a) or (b) to the con-
trary notwithstanding, whenever Grace-Conn. is required to make
any of the calculations or determinations referred to therein,
Grace-Conn. shall provide Grace with (i) copies of any material
calculations or determinations as soon as is practicable after
such calculations or determinations have been made, and prior
to the applicable Tax Returns' being filed, sufficient to en-
able Grace to verify mathematical accuracy and (ii) if re-
quested by Grace, access during reasonable business hours to
copies of any Returns, reports or other statements sufficient
to enable Grace to verify reasonably consistent treatment with
prior years.

Section 3.02  <u>Redetermined Tax Liabilities</u>.

(a)  <u>Joint Tax Returns</u>.  In the case of any Final
Determination regarding a Joint Tax Return, any Tax Deficiency
shall be paid to the appropriate taxing authority by, and any
Tax Refund received from the appropriate taxing authority shall
be paid to, Grace-Conn., and Grace shall forward any such Tax
Refund to Grace-Conn. within ten days after receipt thereof;
<u>provided</u>, <u>however</u>, that whether or not there is a Tax Defi-
ciency or Tax Refund or whether or not a payment is required to
or from the appropriate taxing authority, Grace shall make pay-
ments to Grace-Conn. or receive payments from Grace-Conn. based
upon the following principles:

(i)  Grace shall make a payment to Grace-Conn.
in an amount equal to any increase in the NMC Group's allocable
share of Tax (including any applicable interest or penalties,
which is or has been imposed by any taxing authority with re-
spect to any additional Taxes resulting from such adjustments,
or any such interest that would have been imposed but for any
offsetting Grace-Conn. Tax Items) with respect to such Return
resulting from any adjustments to Grace Tax Items, less any
payments previously made by Grace to Grace-Conn. (or directly
to the appropriate taxing authority).  For this purpose, the
NMC Group's allocable share of Tax shall be determined in ac-
cordance with the Prior Arrangement.

(ii)  Grace-Conn. shall pay to Grace, to the ex-
tent not previously paid to Grace by the appropriate taxing
authority or by Grace-Conn., the amount of any decrease in the

-10-

NMC Group's allocable share of Tax with respect to such Tax Return resulting from adjustments to Grace Tax Items, as determined in accordance with the Prior Arrangement and, in addition, Grace-Conn. shall pay to Grace, to the extent not previously paid to Grace by the applicable taxing authority or by Grace-Conn., any applicable interest that is or has been paid by the taxing authority with respect to the reduction in Taxes resulting from such adjustments or such interest that would have been payable but for any offsetting Grace-Conn. Tax Items. For this purpose, the NMC Group's allocable share of Taxes shall be determined in accordance with the Prior Arrangement.

(iii)   Payments made pursuant to subsections (i) and (ii) above, shall be adjusted to take into account the amounts of any offsetting adjustments that would result in an increase or decrease in the NMC Group's allocable share of Taxes with respect to any Joint Tax Return for another period (as determined under the above principles), resulting from adjustments to Grace Tax Items in such Final Determination whether or not the offsetting adjustments are contained in a Final Determination with respect to such other Joint Tax Return.   In the event such other Joint Tax Return has been or subsequently becomes, the subject of a Final Determination, this Section 3.02 shall be applied in a manner that avoids any duplications of payments.

(b)   <u>Separate Returns</u>.   Grace-Conn. shall be liable for and shall indemnify, defend and hold harmless the Grace Indemnitees for and against all Taxes for Pre-Merger Taxable Periods and Straddle Periods with respect to Tax Returns that include only members of the Grace-Conn. Group and Grace and for Post-Merger Taxable Periods that include only members of the Grace-Conn. Group, and Grace shall be liable for and shall indemnify, defend and hold harmless the Grace-Conn. Indemnitees from and against all Taxes for Pre-Merger Taxable Periods and Straddle Periods that include only NMC and the NMC Subsidiaries and for Post-Merger Taxable Periods that include only members of the NMC Group.   Grace-Conn. shall be entitled to receive and retain all refunds of Taxes for Pre-Merger Taxable Periods and Straddle Periods with respect to Tax Returns that include only members of the Grace-Conn. Group or Grace and for Post-Merger Taxable Periods with respect to Tax Returns that include only members of the Grace-Conn. Group.   Grace shall be entitled to receive and retain all refunds of Taxes for Pre-Merger Taxable Periods and Straddle Periods with respect to Tax Returns that include only NMC and the NMC Subsidiaries and for Post-Merger Taxable Periods with respect to Tax Returns that include only members of the NMC Group.

(c)  <u>Calculation and Payment of Amounts</u>.  Except in the case of Tax Returns that include only NMC and the NMC Subsidiaries, all calculations and determinations required to be made pursuant to this Section 3.02 shall be made by Grace-Conn. in good faith and on a basis reasonably consistent with prior years.  Any payments made by the parties hereunder to each other shall be treated by each of the parties as satisfaction of liabilities of such paying party and shall not be subject to any gross-up or additional payment.

(d)  <u>Other Tax Liabilities and Refunds</u>.  Any Tax Liability or Refund with respect to a Joint Tax Return not arising from an adjustment to, or change in, a Tax Item (e.g., change in applicable law) shall be allocated by Grace-Conn. between Grace-Conn. and Grace in a manner consistent with the Prior Arrangement.

(e)  The provisions of Section 3.01(e) shall apply with respect to the calculations and allocations to be made by Grace-Conn. pursuant to Sections 3.02(c) and (d) hereof.

Section 3.03  <u>Liability for Taxes with Respect to Post-Distribution Periods</u>.  Unless otherwise provided in this Agreement, the Grace-Conn. Group shall pay all Taxes and shall be entitled to receive and retain all refunds of Taxes with respect to periods beginning after the Distribution Date which are attributable to the Grace-Conn. Business.  Unless otherwise provided in this Agreement, the NMC Group shall pay all Taxes and shall be entitled to receive and retain all refunds of Taxes with respect to periods beginning after the Distribution Date which are attributable to the NMC Business.

Section 3.04  <u>Carrybacks</u>.  Any Tax Refund resulting from the carryback by Grace-Conn. of any Tax Item arising after the Distribution Date to a Pre-Merger Taxable Period or a Straddle Period shall be for the account of Grace-Conn., and Grace shall promptly pay over to Grace-Conn. any such Tax Refund that it receives.  To the extent that the carryback by Grace-Conn. of any Tax Item does not result in a Tax Refund (or would not result in a refund if a claim were filed) solely as the result of an offsetting Grace Tax Item, Grace shall remit to Grace-Conn. the amount of any decrease in the Grace-Conn. Group's allocable share of Tax that would otherwise have resulted from such carryback as determined under the principles contained in Section 3.02(a).

Grace-Conn. shall be permitted to file, and Grace shall fully cooperate with Grace-Conn. in connection with, any refund claim.  To the extent that such refund claims do not result in a Tax Refund (or would not result in a refund if a

claim were filed) solely as the result of an offsetting Grace
Tax Item, Grace shall remit to Grace-Conn. an amount equal to
the decrease in the Grace-Conn. Group's allocable share of Tax
that would otherwise have resulted from such refund claim as
determined under the principles contained in Section 3.02(a).

## ARTICLE IV

### INDEMNITY:  COOPERATION AND EXCHANGE OF INFORMATION

Section 4.01  <u>Breach</u>.  Grace-Conn. shall be liable
for and shall indemnify, defend and hold harmless the Grace In-
demnitees from and against, and Grace shall be liable for and
shall indemnify, defend and hold harmless the Grace-Conn. In-
demnitees from and against any payment required to be made as a
result of the breach by a member of the Grace-Conn. Group or
the NMC Group, as the case may be, of any obligation under this
Agreement.  If Grace or any member of the NMC Group fails to
comply in any respect whatsoever with any of its responsibili-
ties under the Agreement relating to promptly forwarding to
Grace-Conn. any communications with and refunds received from
any taxing authority ("Forwarding Responsibilities"), then:

(a)  If such failure relates to a communication
other than a refund, Grace and NMC shall be liable for and
shall indemnify and hold Grace-Conn. and the Grace-Conn. Group
harmless from and against any costs or expenses (including,
without limitation, Taxes and lawyers' and accountants' fees)
("Indemnified Amount") incurred by or imposed upon Grace-Conn.
or any member of the Grace-Conn. Group arising out of, in con-
nection with or relating to such communication, regardless of
whether Grace-Conn. or any member of the Grace-Conn. Group is
harmed as a result of such failure, provided, that the li-
ability of Grace and NMC under this paragraph (a) with respect
to any one such failure shall be equal to the greater of X or
Y; where "X" equals the lesser of (A) $10 million or (B) the
Indemnified Amount; and "Y" equals that portion of the Indemni-
fied Amount that Grace-Conn. demonstrates is caused (directly
or indirectly) by such failure; and

(b)  If such failure relates to a refund, then
Grace and NMC shall be liable to Grace-Conn. and the Grace-
Conn. Group for the full amount of such refund, plus interest
accruing as of the date such communication is received by Grace
or any member of the NMC Group at a rate of 5% above the prime
rate as published in the Wall Street Journal, plus any costs or
expenses (including, without limitation, lawyers' and ac-
countants' fees) incurred by or imposed upon Grace-Conn. or any

-13-

member of the Grace-Conn. Group in connection with obtaining such refund:

Section 4.02  Notice of Indemnity.  Whenever a party hereto (hereinafter an "Indemnitee") becomes aware of the ex- istence of an issue which could increase the liability for any Tax of the other party hereto or any member of its Group or require a payment hereunder (hereinafter an "Indemnity Issue"), the Indemnitee shall in good faith promptly give notice to such other party (hereinafter the "Indemnitor") of such Indemnity Issue.  The failure of any Indemnitee to give such notice shall not relieve any Indemnitor of its obligations under this Agree- ment except to the extent such Indemnitor or its affiliate is actually materially prejudiced by such failure to give notice. The Indemnitor and its representatives, at the Indemnitor's expense, shall be entitled to participate (i) in all confer- ences, meetings or proceedings with any taxing authority, the subject matter of which is or includes an Indemnity Issue and (ii) in all appearances before any court, the subject matter of which is or includes an Indemnity Issue.  The party who has responsibility for filing the Tax Return under this Agreement (the "Responsible Party") with respect to which there is an increase in liability for any Tax or with respect to which a payment is required hereunder shall have the right to decide as between the parties hereto how such matter is to be dealt with and finally resolved with the appropriate taxing authority and shall control all audits and similar proceedings.  The Respons- ible Party agrees to cooperate in the settlement of any Indem- nity issue with the other party and to take such other party's interests into account.  If the Indemnitor is not the Respons- ible Party, such cooperation may include permitting the In- demnitor, at the Indemnitor's sole expense, to litigate or oth- erwise resolve any Indemnity Issue.

Section 4.03  Cooperation and Exchange of Informa- tion.  (a)  Grace shall, and shall cause each appropriate mem- ber of the NMC Group to, prepare and submit to Grace-Conn., at Grace's expense, no later than July 1, 1996, all information as Grace-Conn. shall reasonably request to enable Grace-Conn. to file the Grace consolidated federal income tax return for the taxable year ending December 31, 1995, no later than July 1, 1997 for all information as Grace-Conn. shall reasonably re- quest to enable Grace-Conn. to file the Grace consolidated fed- eral income tax return for the taxable year ending December 31, 1996, no later than August 1, 1996 for all information that Grace-Conn. shall reasonably request to enable Grace-Conn. to file any state and local combined or unitary corporate income tax returns for the taxable year ending December 31, 1995, and no later than August 1, 1997 for all information that Grace- Conn. shall reasonably request to enable Grace-Conn. to file

-14-

any state and local combined or unitary corporate income tax returns for the taxable year ending December 31, 1996.  Grace-Conn. shall be entitled to require Grace to engage a "Big Six" public accounting firm reasonably acceptable to Grace-Conn. to review the information which Grace is required to provide under this Section 4.03(a).  The expenses of such "Big Six" public accounting firm shall be borne by Grace.  Grace shall furnish to Grace-Conn. by January 31, 1997, an estimate of the Affiliated Group Taxable income or loss for the taxable year ending December 31, 1996, for use in determining the payment due with respect to the Affiliated Group on March 15, 1997, together with IRS Form 7004, "Application for Automatic Extension of Time to File Corporation Income Tax Return."

(b)  Grace, on behalf of itself and each member of the NMC Group, agrees to provide the Grace-Conn. Group, with such cooperation and information as Grace-Conn. shall reasonably request in connection with the preparation or filing of any Tax Return or claim for refund not inconsistent with this Agreement or in conducting any audit or other proceeding in respect to Taxes.  Such cooperation and information shall include without limitation designation of an officer of Grace-Conn. as an officer of Grace and NMC for the purpose of signing Tax Returns, cashing refund checks and defending audits as well as promptly forwarding copies of appropriate notices and forms or other communications received from or sent to any taxing authority which relate to the Affiliated Group or the NMC Businesses and providing copies of all relevant Tax Returns, together with accompanying schedules and related workpapers, documents relating to rulings or other determinations by taxing authorities, including without limitation, foreign taxing authorities, and records concerning the ownership and Tax basis of property, which either party may possess.  It is expressly the intention of the parties to this Agreement to take all actions necessary to establish Grace-Conn. as the sole agent for tax purposes of each member of the Affiliated Group with respect to all combined, consolidated and unitary Tax Returns of the Affiliated Group for Pre-Merger Taxable Periods and Straddle Periods as if Grace-Conn. were the common parent of the Affiliated Group, and as the sole agent for tax purposes of Grace for all Tax Returns of Grace for Pre-Merger Taxable Periods and Straddle Periods.  Grace and NMC shall make, or shall cause the members of the NMC Group to make, their employees and facilities available on a mutually convenient basis to provide explanation of any documents or information provided hereunder.

(c)  Grace and Grace-Conn. agree to retain all Tax Returns, related schedules and workpapers, and all material records and other documents as required under Section 6001 of the Code and the regulations promulgated thereunder relating

-15-

thereto existing on the date hereof or created through the Distribution Date, until the expiration of the statute of limitations (including extensions) of the taxable years to which such Tax Returns and other documents relate and until the Final Determination of any payments which may be required in respect of such years under this Agreement. Grace-Conn. and Grace agree to advise each other promptly of any such Final Determination. Any information obtained under this Section shall be kept confidential, except as may be otherwise necessary in connection with the filing of Tax Returns or claims for refund or in conducting any audit or other proceeding.

(d)  If any member of the Grace-Conn. Group or the NMC Group, as the case may be, fails to provide any information requested pursuant to this Section 4.03 by (i) the dates, specified in subsection (a) hereof or, (ii) with respect to information not requested pursuant to subsection (a) hereof, within a reasonable period, as determined in good faith by the party requesting information, then the requesting party shall have the right to engage a "Big Six" public accounting firm of its choice to gather such information. Grace and Grace-Conn., as the case may be, agree upon 24 hours' notice, in the case of a failure to provide information pursuant to subsection (a) hereof, and otherwise upon 30 days' notice after the expiration of such reasonable period, to permit any such "Big Six" public accounting firm full access to all appropriate records or other information in the possession of any member of the Grace-Conn. Group or the NMC Group, as the case may be, during reasonable business hours, and promptly to reimburse or pay directly all costs and expenses in connection with the engagement of such public accountants.

(e)  If any member of the Grace-Conn. Group or the NMC Group, as the case may be, supplies information to a member of the other Group pursuant to this Section 4.03 and an officer of the requesting party signs a statement or other document under penalties of perjury in reliance upon the accuracy of such information, then a duly authorized officer of the party supplying such information shall certify, under penalties of perjury, the accuracy and completeness of the information so supplied. Grace-Conn. agrees to indemnify and hold harmless each member of the NMC Group and its directors, officers and employees, and Grace agrees to indemnify and hold harmless each member of the Grace-Conn. Group and its directors, officers and employees from and against any cost, fine, penalty or other expense of any kind attributable to the negligence or willful misconduct of a member of the Grace-Conn. Group or the NMC Group, as the case may be, in supplying a member of the other Group with inaccurate or incomplete information.

Section 4.04  <u>Certain Post-Distribution Transactions</u>.
Grace-Conn. shall, and shall cause each Grace-Conn. Group member to, comply with and take no action inconsistent with the Grace Representation Letter.  Fresenius AG and Grace shall, and shall cause each NMC Group member to, comply with and take no action inconsistent with the Grace Representation Letter. Grace further agrees that except as specifically set forth in the Opinions or in the Grace Representation Letter, during the two-year period following the Distribution Date, neither it nor NMC shall cease to engage in the active trade or business described in the Grace Representation Letter unless pursuant to a favorable ruling letter obtained from the IRS and satisfactory to Grace-Conn. or in the opinion of Wachtell, Lipton, Rosen & Katz or other nationally recognized counsel to Grace, which opinion and which counsel shall be satisfactory to Grace-Conn., such act or omission would not adversely affect the federal income tax consequences of the Distribution to any of Grace, Grace-Conn. or the stockholders of Grace-Conn., as set forth in the Opinions.  In addition, Fresenius AG, Grace and NMC agree to indemnify and hold the Grace-Conn. Indemnitees harmless from and against the results of any Action which causes the Distribution to fail to qualify under Section 355 of the Code or the Grace Merger to fail to qualify as a reorganization under Sections 367 and 368 of the Code.  An "Action" shall mean (x) any transaction in the stock or assets, or any combination thereof, of Grace, its subsidiaries, NMC or a NMC Affiliate occurring after the Distribution Date which is inconsistent with the Grace Representation Letter or (y) any transaction or action on the part of any of Fresenius AG, Fresenius Medical Care AG, an Aktiengesellschaft organized under the laws of the Federal Republic of Germany, or any of their respective subsidiaries or affiliates, whether occurring before or after the Distribution Date (but excluding any transaction or action on the part of any member of the NMC Group), which is inconsistent with the Fresenius AG Representation Letter.  Notwithstanding the foregoing, an Action shall not include any transaction or action specifically disclosed or specifically described in the Representation Letters, the Distribution Agreement or the Reorganization Agreement (or any agreement or document included as an exhibit thereto) or of which Grace or Grace-Conn. has actual knowledge as of the date of this Agreement.  An Action shall not include any action on the part of Grace-Conn. or a Grace-Conn. Affiliate.  Grace-Conn. agrees to indemnify and hold the Grace Indemnitees harmless from and against any Tax liability and Indemnifiable Losses resulting from the failure of the Distribution to qualify under Section 355 of the Code or the Grace Merger to fail to qualify as a reorganization under Sections 367 and 368 of the Code, except where such failure is attributable to an Action.

Section 4.05  <u>Injunction</u>.  The parties hereto agree that the payment of monetary compensation would not be an adequate remedy to a breach of the obligations contained in Section 4.04 hereof, and each party consents to the issuance and entry of an injunction against the taking of any action by it or a member of its Group described in the preceding section; <u>provided</u>, <u>however</u>, that the foregoing shall be without prejudice to and shall not constitute a waiver of any other remedy either party may be entitled to at law or at equity hereunder.

## ARTICLE V

### MISCELLANEOUS

Section 5.01  <u>Expenses</u>.  Unless otherwise expressly provided in this Agreement or in the Distribution Agreement, each party shall bear any and all expenses that arise from their respective obligations under this Agreement.

Section 5.02  <u>Amendment</u>.  This Agreement may not be amended except by an agreement in writing, signed by the parties hereto.  Anything in this Agreement or the Distribution Agreement to the contrary notwithstanding, in the event and to the extent that there shall be a conflict between the provisions of this Agreement and the Distribution Agreement, the provisions of this Agreement shall control.

Section 5.03  <u>Notices</u>.  All notices and other communications hereunder shall be in writing and shall be delivered by hand including overnight business courier or mailed by registered or certified mail (return receipt requested) to the parties at the following addresses (or at such other addresses for a party as shall be specified by like notice) and shall be deemed given on the date on which such notice is received:

Group:     To Grace-Conn. or any member of the Grace-Conn.

          W.R. Grace & Co.-Conn.
          One Town Center Road
          Boca Raton, Florida  33486-1010
          Attention:  Secretary
          Fax:  (407) 362-1635

-18-

With a copy to:

Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York  10019
Attention:  Andrew R. Brownstein, Esq.
Fax:  (212) 403-2000  .

To Grace or any member of the NMC Group:

NMC
1601 Trapelo Road
Reservoir Place
Waltham, Massachusetts  02154
Attention:  General Counsel

Section 5.04  <u>Resolution of Disputes</u>.  Any disputes
between the parties with respect to this Agreement shall be
resolved by a "Big Six" public accounting firm or a law firm
satisfactory to Grace-Conn. and Grace, whose fees and expenses
shall be shared equally by Grace-Conn. and Grace.

Section 5.05  <u>Application to Present and Future Sub-
sidiaries</u>.  This Agreement is being entered into by Grace-Conn.
and Grace on behalf of themselves and each member of the Grace-
Conn. Group and NMC Group, respectively.  This Agreement shall
constitute a direct obligation of each such member and shall be
deemed to have been readopted and affirmed on behalf of any
corporation which becomes a member of the Grace-Conn. Group or
NMC Group in the future.  Grace-Conn. and Grace hereby guaran-
tee the performance of all actions, agreements and obligations
provided for under this Agreement of each member of the Grace-
Conn. Group and the NMC Group, respectively.  Grace-Conn. and
Grace shall, upon the written request of the other, cause any
of their respective group members formally to execute this Agr-
eement.  This Agreement shall be binding upon, and shall inure
to the benefit of, the successors, assigns and persons control-
ling any of the corporations bound hereby for so long as such
successors, assigns or controlling persons are members of the
Grace-Conn. Group or the NMC Group or their successors and as-
signs.

Section 5.06  <u>Term</u>.  This Agreement shall commence on
the date of execution indicated below and shall continue in
effect until otherwise agreed to in writing by Grace-Conn. and
Grace, or their successors.

Section 5.07  <u>Titles and Headings</u>.  Titles and head-
ings to sections herein are inserted for the convenience of

-19-

reference only and are not intended to be a part or to affect the meaning or interpretation of this Agreement.

Section 5.08 <u>Legal Enforceability</u>. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. Any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. Without prejudice to any rights or remedies otherwise available to any party hereto, each party hereto acknowledges that damages would be an inadequate remedy for any breach of the provisions of this Agreement and agrees that the obligations of the parties hereunder shall be specifically enforceable.

Section 5.09 <u>Governing Law</u>. This Agreement shall be governed by the laws of the State of New York.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the 27 day of September, 1996.

W.R. GRACE & CO.-CONN.

By: _____
Name: Robert B. Lamm
Title: Vice President and Secretary

W.R. GRACE & CO.

By: _____
Name: Robert B. Lamm
Title: Vice President and Secretary

FRESENIUS AG

By: _____
Name: Manfred Freund
Title: Attorney in Fact

-21-