|   |   |
|---|---|
| Date of Claims Settlement Notice: | **March 30, 2007** |
| Opposition/Responses Due: | **April 19, 2007** |

| | |
|---|---|
| In re | Case No. 01-1139 (JKF) |
| W. R. GRACE & CO., <u>et al.</u>,[1] | Chapter 11 |
| Debtors. | Jointly Administered |

## TWELFTH CLAIM SETTLEMENT NOTICE

THIS NOTICE IS PROVIDED TO YOU PURSUANT TO THAT CERTAIN ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE (THE "<u>BANKRUPTCY COURT</u>") AUTHORIZING AND APPROVING AN OMNIBUS PROCEDURE FOR SETTLING CERTAIN CLAIMS AND CAUSES OF ACTION BROUGHT BY OR AGAINST THE DEBTORS IN A JUDICIAL, ADMINISTRATIVE, ARBITRAL OR OTHER ACTION OR PROCEEDING (THE "<u>COURT ORDER</u>").  YOU MUST ADHERE TO THE TERMS OF THIS CLAIMS SETTLEMENT NOTICE IN ORDER TO PROTECT YOUR RIGHTS.  PLEASE READ THE FOLLOWING PROCEDURES CAREFULLY.

Pursuant to the Court Order, the Debtors must provide notice to the Negative Notice Parties (as defined herein) of any settlement with a value that equals or exceeds $50,000, but does not exceed $1,000,000.  Such notice must include the terms of the settlement and the Debtors' basis for belief that each settlement is fair and reasonable.  If the terms set forth in this notice are not objected to in writing by any of the Negative Notice Parties within twenty (20) days after the date of transmittal of such written notice, the Debtors may enter into, execute and consummate a written agreement of settlement that will be binding on them and their estates three (3) days after the submission to the Bankruptcy Court by the Debtors of a certificate of no objection with respect to such settlements.  **In no event, however, will a settlement executed by the Debtors in accordance with the Court Order provide for any monetary payments to be made by the Debtors from property of their estates to or on behalf of a settling party on account of any claims owing or arising prior to April 2, 2001, the date the Debtors filed their petitions for relief under title 11 of the United States Code**.  Such claims shall be satisfied in accordance with such further orders of the Bankruptcy Court or in accordance with the Debtors' plan of reorganization.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Attached hereto as <u>Exhibit A</u> is the summary of the claim (the "<u>Claim</u>") which two of the above captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") seek to settle pursuant to the procedures approved by the Court Order. This settlement comprises (i) the recoupment by Colowyo Coal Company L.P. (the "Partnership") of the sum of $717,695.15 owed by such Debtors to the Partnership, against the sum of $1,391,041 owed by the Partnership to such Debtors, and (ii) the payment to such Debtors of the balance of $673,345.90. The Partnership also will execute a withdrawal of proofs of claim filed against such Debtors and W. R. Grace & Co.

If you oppose the settlement of the Claim, you must follow the procedures delineated below. Please note that objections, oppositions or comments to the procedures set forth herein shall not be deemed an objection to the settlement of the Claim and will, therefore, not be considered.

<u>Objection Procedures</u>:

If you object to the settlement of the Claim, you **MUST** serve on the parties listed below (collectively, the "<u>Negative Notice Parties</u>") a written objection to this Claim Settlement Notice. All objections and responses must be <u>received</u> by the Negative Notice Parties at the facsimile numbers set forth below no later than twenty (20) days after the date of this notice (April 19, 2007) at 4:00 p.m. (E.D.S.T.).

If a timely objection is not received by the Negative Notice Parties and Debtors' counsel, the Claim shall be deemed resolved without further notice or hearing of the Bankruptcy Court.

If a timely objection is received by the Negative Notice Parties and Debtors' counsel and a resolution to the objection cannot be reached among the parties, the Debtors will file a copy of the Claim Settlement Notice and your objection with the Court and will schedule a hearing to consider the Claim Settlement Notice. Unless otherwise ordered by the Court, if such objection is overruled or withdrawn, the settlement of the Claim shall be deemed to have occurred on the date the Court enters an order approving the Claim Settlement Notice.

Any questions or comments regarding the foregoing procedures may be forwarded to James O'Neill of Pachulski Stang Ziehl Young Jones & Weintraub LLP at (302) 652-4100.

## DISTRIBUTION LIST/NEGATIVE NOTICE PARTIES

OFFICE OF UNITED STATES TRUSTEE

| United States Trustee's Office<br>David Klauder, Esquire<br>Office of the United States Trustee<br>844 King Street, Suite 2311<br>Wilmington, DE 19801 | **FAX: (302) 573-6497** |
|---|---|

## COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'

| Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York 10038-4982<br>Attn: Arlene G. Krieger, Esq. | **FAX: (212) 806-6006** |
|---|---|

## COUNSEL TO THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS

| Caplin & Drysdale<br>399 Park Avenue, 36th Floor<br>New York, New York 10022<br>Attn: Elihu Inselbuch | **FAX: (212) 644-6755** |
|---|---|
| Caplin & Drysdale<br>One Thomas Circle, N.W.<br>Washington, District of Columbia 20005<br>Attn: Peter Van N. Lockwood | **FAX: (202) 429-3301** |
| Campbell & Levine<br>Chase Manhattan Centre<br>15th Floor<br>1201 North Market Street<br>Wilmington, Delaware 19801<br>Attn: Matthew G. Zaleski | **FAX: (302) 426-9947** |

## COUNSEL TO THE OFFICIAL COMMITTEE OF PROPERTY DAMAGE CLAIMANTS

| Bilzin Sumberg Dunn Baena Price & Axelrod LLP<br>First Union Financial Center<br>200 South Biscayne Boulevard<br>Suite 2500<br>Miami, Florida 33131<br>Attn: Scott L. Baena | **FAX: (305) 374-7593** |
|---|---|

## COUNSEL TO THE DIP LENDER

| | |
|---|---|
| Latham & Watkins<br>Sears Tower, Suite 5800<br>Chicago, IL 60606<br>Attn:  Douglas Bacon | FAX: (312) 993-9767 |

## COUNSEL TO THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

| | |
|---|---|
| Kramer Levin Naftalis & Frankel<br>919 Third Avenue<br>New York, New York 10022<br>Attn:  Thomas Moers Mayer<br>        Gary M. Becker | FAX: (212) 715-8000 |

## CO-COUNSEL TO THE DEBTORS

| | |
|---|---|
| Kirkland & Ellis<br>200 East Randolph Drive<br>Chicago, Illinois 60601<br>Attn:  Janet Baer, Esq. | FAX: (312) 861-2200 |
| Pachulski Stang Ziehl Young<br>Jones & Weintraub LLP<br>919 N. Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, Delaware 19899-8705<br>(Courier 19801)<br>Attn:  James E. O'Neill, Esq. | FAX: (302) 652-4400 |

W. R. Grace & Co. et al.
District of Delaware, Bankruptcy Case No. 01-01139

Exhibit A

| Debtors: | Settling Parties: | Description of Settlement |
|---|---|---|
| Gracoal, Inc and Gracoal II, Inc. | Colowyo Coal Company LP (the "Partnership") and Kennecott Colorado Coal Company, the sole general partner of the Partnership (the "General Partner") <br> -and- <br> the Debtors, which are the sole limited partners of the Partnership | The Settling Parties have current obligations to each other under currently effective agreements, as to which they have reviewed backup documentation and have agreed upon the amounts owed. <br><br> They therefore wish to settle these obligations by the following transactions: <br><br> (i) the recoupment by the Partnership of the sum of $717,695.15 owed by the Debtors to the Partnership, against the sum of $1,391,041 owed by the Partnership to the Debtors, and <br><br> (ii) (ii) the payment to the Debtors of the balance of $673,345.90. <br><br> The Partnership also will execute a withdrawal of proofs of claim filed against the Debtors and W. R. Grace & Co. <br><br> These transactions will be effected pursuant to a Recoupment Agreement dated March 28, 2007, between the Partnership, the General Partner and the Debtors, a copy of which is attached hereto as Attachment 1. <br><br> The Debtors believe that because the competing obligations are not in dispute, the Partnership has a basis for recoupment under applicable law and is withdrawing its proofs of claim, and the Debtors' estates will receive a |

|  |  | substantial cash payment, the settlement is fair and reasonable in the circumstances. |
|---|---|---|
|  | 2 |  |

## RECOUPMENT AGREEMENT

**AGREEMENT** dated March 28, 2007, between **COLOWYO COAL COMPANY LP**, a Delaware limited partnership (the "Partnership"), **KENNECOTT COLORADO COAL COMPANY**, a Delaware corporation (the "General Partner"), and **GRACOAL, INC.**, a Delaware corporation, and **GRACOAL II, INC.**, a Delaware corporation (collectively, the "Limited Partners").

A.   The Partnership, the General Partner and the Limited Partners are referred to collectively herein as the "Parties."

B.   Reference is made to the following:

   (i)   Acquisition Agreement dated December 6, 1994 (the "Acquisition Agreement"), among Fresenius Medical Holdings Inc. (then named W. R. Grace & Co.), a New York corporation ("Fresenius"), the Limited Partners, the Partnership, the General Partner and Rio Tinto America Inc. (then named RTZ America, Inc.), a Delaware corporation ("Rio Tinto"), under which the General Partner acquired the general partnership interest in the Partnership.

   (ii)  Trust Indenture dated as of December 6, 1994 (the "Indenture"), among Colowyo Coal Funding Corp., a Delaware corporation, a subsidiary of the Partnership ("Colowyo Funding"), the Partnership and The Chase Manhattan Bank (National Association), as trustee (the "Trustee"), under which $192.8 million of secured bonds (the "Bonds") were issued by Colowyo Funding.

   (iii) Amended and Restated Agreement of Limited Partnership of Colowyo Coal Company LP entered into as of December 6, 1994 (the "Partnership Agreement"), between the General Partner and the Limited Partners, under which among other things the proceeds of the sale of the general partnership interest in the Partnership and the sale of the Bonds were distributed to the Limited Partners.

C.   Section 2.9 of the Partnership Agreement provides that the General Partner shall make capital calls on the Limited Partners not to exceed $150,000 per year to fund the Agent's Expenses and the Company Expenses (as such terms are defined in the Indenture).

D.   Section 6.5 of the Partnership Agreement provides that the General Partner shall distribute from time to time the amounts required to be distributed to

the Limited Partners pursuant to the terms of the Price Participation (as such term is defined in the Partnership Agreement).

E. Section 11.3(a)(iii) of the Acquisition Agreement provides among other things that Fresenius and the Limited Partners shall jointly and severally indemnify Rio Tinto, the General Partners, the Partnership and the other Divested Companies, and the other members of the Purchaser Group against any Damages which are caused by or arising out of a final determination by any Governmental Authority that royalties, rentals, severance taxes or similar items, including any interest or penalties due in connection therewith, are due from the Partnership or Colowyo for the sale of coal prior to January 1, 1994, from any properties covered by any federal or state coal lease held by the Limited Partnership or its predecessors in interest. Capitalized terms used in the preceding sentence but not otherwise defined in this Agreement are used in this Agreement with the definitions given them in the Acquisition Agreement.

F. The Limited Partners are debtors and debtors in possession in *In re: W. R. Grace & Co., et al., Debtors*, Chapter 11 Case No. 01-01139 (JKF) (Jointly Administered) (the "Proceedings") in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

The Parties agree as follows:

1. **Representations and Warranties**

    1.1 The Partnership and the General Partner hereby represent and warrant to the Limited Partners as follows:

    (a) The Limited Partners owe the Partnership $654,402.97 for Agents' Expenses and Company Expenses under Section 2.9 of the Partnership Agreement through December 31, 2006 (the "Accrued Partnership Expenses").

    (b) In connection with the transactions financed by the Bonds, the Limited Partners have an indemnity obligation to the Partnership under Section 11.3(a)(iii) of the Acquisition Agreement in connection with the transactions financed by the Bonds in the amount of $63,292.18 (the "Indemnity Expenses").

    (c) The Partnership owes the Limited Partners $1,391,041 for calendar year 2005 under Section 6.5 of the Limited Partnership Agreement pursuant to the terms of the Price Participation (the "Accrued Participation Obligations").

2. **Recoupment; Payment of Accrued Participation Balance**

    (a) The Partnership will recoup the Accrued Partnership Expenses and the Indemnity Expenses against the Accrued Participation Obligations (the "Recoupment"), and after giving effect to the Recoupment, the Partnership will

owe the Limited Partners in respect of the Accrued Participation Obligations the sum of $673,345.85 (the "Net Coal Payment").

(b)  As soon as practicable after the execution of this Agreement, the Limited Partners shall file notice of the Recoupment (the "Notice") with the Bankruptcy Court under the "negative notice" provisions applicable in the Proceedings. The Recoupment shall become effective upon the first to occur of (i) the expiration of the three days after the submission by the Debtors to the Court of a certificate of no objection with respect to the Notice or (ii) action by the Court authorizing the Recoupment. As soon as practicable after the effectiveness of the Recoupment, the Partnership shall pay the Net Coal Payment to the Limited Partners by wire transfer in immediately available funds to: J.P. Morgan Chase Bank, ABA: 021 000 021, Account No.: 016001257, Account Name: W. R. Grace & Co.-Conn.

(c)  Simultaneously with the execution and delivery of this Agreement, the General Partner is also executing and providing to the Limited Partners the attached withdrawal of claims, whereby proofs of claim numbers 9491, 9492 and 7760 shall be withdrawn. The General Partner and the Partnership represent and warrant to the Limited Partners that no other proof of claim has been filed in the Proceedings by any of their affiliates. The Limited Partners shall hold the executed withdrawal and upon the effectiveness of the Recoupment, shall file the withdrawal with the Bankruptcy Court and instruct their claims agent to mark the claims register to reflect such withdrawal.

3. **Termination**

If the Recoupment does not become effective by June 30, 2007, any Party may terminate this Agreement by notice to the other Parties. In the event of such termination, the Limited Partners shall return the withdrawal of claims to the General Partner.

4. **Miscellaneous**

(a)  **Survival; Indemnity**.  The representations and warranties contained in this Agreement shall survive the completion of the transaction contemplated hereby and the execution and delivery of this Agreement and any other instruments or documents delivered pursuant hereto or in connection herewith. Each Party shall indemnify and hold harmless the other Parties (each indemnifying Party being an "Indemnitor") from and against any and all losses, claims, damages, liabilities and expenses, including (but without limiting the generality of the foregoing) reasonable attorneys' fees and other legal expenses (collectively, "Losses") arising from or out of or with respect to the breach of any representation, warranty, covenant or agreement of the Indemnitor contained in this Agreement.

(b) **Entire Agreement**. This Agreement supersedes all prior agreements, arrangements and understandings relating hereto. No representation, promise, inducement or statement of intention relating to the transactions contemplated by this Agreement has been made by any Party or any related person which is not set forth in this Agreement.

(c) **Governing Law**. This Agreement shall be interpreted in accordance with the laws of Delaware, without application of any rule of law that would result in the application of the law of any other jurisdiction.

(d) **Successors and Assigns; Assignment**. This Agreement will be binding and inure to the benefit of the Parties and their respective successors and permitted assigns. No Party may assign this Agreement or any rights or obligations hereunder without the prior written consent of the other Parties.

(e) **Amendments and Waivers**. This Agreement may be amended, superseded or canceled, and any of the terms hereof may be waived, only by a written instrument specifically referring to this Agreement and specifically stating that it amends, supersedes or cancels this Agreement or waives any of its terms, executed by the Parties. Failure of any Party to insist upon strict compliance with any of the terms of this Agreement in one or more instances shall not be deemed to be a waiver of its rights to insist upon such compliance in the future, or upon compliance with other terms hereof.

(f) **Counterparts**. This Agreement may be executed in two or more counterparts, each of which counterparts may be signed by one or more parties. Each such counterpart shall be an original, but all such counterparts shall constitute but one agreement.

<Signature Page to Follow>

**ATTACHMENT 1 TO EXHIBIT A**

    **IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first above written.

| | |
|---|---|
| **COLOWYO COAL COMPANY LP**<br>By: KENNECOTT COLORADO<br>    COAL COMPANY<br>    General Partner | **GRACOAL, INC.** |
| By:_____<br>    Michael Barrett<br>    Chief Financial Officer | By:_____<br>    Robert M. Tarola<br>    Vice President and Treasurer |
| **KENNECOTT COLORADO**<br>**COAL COMPANY** | **GRACOAL II, INC.** |
| By:_____<br>    Michael Barrett<br>    Chief Financial Officer | By:_____<br>    Robert M. Tarola<br>    Vice President and Treasurer |