**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO.,** *et al.,* | ) | **Case No. 01-1139 (JKF)** |
| | ) | **(Jointly Administered)** |
| **Debtors.** | ) | |

## MOTION REGARDING NONCOMPLIANCE WITH X-RAY ORDER

W.R. Grace & Co. and affiliated debtors ("Grace" or "Debtor") hereby move this Court to compel compliance with the February 20, 2007 Supplemental X-ray Order ("Supplemental X-ray Order"). The Debtor has received original x-rays or copies of x-rays with certifications from approximately 41% of the Claimants subject to the order. The Debtor is now moving forward with its analysis of these x-rays. However, nearly 60% of the Claimants subject to this order have not sent x-rays to Rust or have sent x-rays to Rust but without the requisite certifications. A subset of these Claimants have asserted that the x-rays are in the possession of a third party. All Claimants whose x-rays are in the possession of a third party should be ordered to produce these x-rays by April 30, 2007 or certify that they no longer exist for purposes of the estimation proceeding. In addition, Claimants who allege that they possess x-ray evidence to support the contention that their non-mesothelioma malignancy is attributable to asbestos exposure should be precluded from introducing x-ray evidence at the estimation trial or having their experts rely on any x-ray evidence beyond what was timely produced to the Debtor by March 15, 2007, or by April 30, 2007 for x-rays in third party possession.

## I.     BACKGROUND

After receiving and reviewing the initial Questionnaire responses coded by Rust on October 12, 2006, it appeared that approximately 9,457 Claimants were alleging a non-mesothelioma malignancy claim. Upon further review of the Questionnaire responses, it

appeared that nearly 82% of the non-mesothelioma cancer Claimants who provided smoking information identified themselves as current or former smokers. Despite this, all of these Claimants allege that their cancer is attributable to asbestos exposure. Indeed, upon review of the Questionnaire responses, Grace identified approximately 5,439 Claimants who alleged that they had radiological evidence to support their contention that their cancer was attributable to asbestos. Remarkably, upon further review of the Questionnaire responses, Grace discovered that the "bad" doctors and screening companies identified in literature and by other asbestos trusts as providing "unreliable" medical data were involved in the generation of much of the so-called "radiological evidence" that allegedly demonstrates the link to asbestos.

Within a week of receiving the Rust final (at that time) database, Grace sent a letter to counsel representing non-mesothelioma cancer Claimants who alleged in their Questionnaire responses that they had "radiological evidence" to support their contention that their cancer was attributable to asbestos exposure. In the letter, Grace counsel asked the Claimants to provide the radiological evidence to Grace for review. The purpose of Grace's request is to test the Claimants' allegations that they have radiological evidence of "asbestosis."

On December 22, 2006, after negotiation among the Debtor, the Official Committee of Asbestos Personal Injury Claimants (the "ACC"), the Future Claimants' Representative ("FCR"), firms represented by Stutzman, Bromberg, Esserman & Plifka (the "Esserman Firms"), and counsel for various contingencies of personal injury law firms, this Court entered the December 22, 2006 order requiring the production of x-rays by Claimants alleging that they had radiographic evidence to support their claim that their non-mesothelioma malignancy was caused by exposure to asbestos ("December 22nd X-ray Order"). Specifically, the Court required Claimants to send to Rust copies of x-rays supporting their claims along with a "certification

2

from someone qualified in the appropriate field or a stipulation from the Claimant or his or her counsel certifying that any images in the original x-ray which are material to the Claimant's allegation that the x-ray demonstrates that his or her cancer is attributable to asbestos appear identically in the copy being provided." December 22nd X-ray Order at ¶ 2. Based on the questionnaires, there were approximately 5,500 Claimants subject to this order (firms later informed Debtor that they represented clients subject to this order, bringing the total to approximately 6,748 Claimants). Approximately 37 law firms, representing over 2,900 Claimants, informed Grace that they would be unable to send x-rays to Rust with the requisite certification and instead instructed Grace to review original x-rays at their offices, spread out over 19 different states.

Recognizing the impracticality of sending B-readers to law firms at 19 different states, on January 30, 2007, the Debtor moved this Court to modify the December 22nd X-ray Order to establish an x-ray repository for original x-rays to be administered by the Court. Grace's motion to modify the December 22nd X-ray Order was opposed by the ACC, the FCR, Cooney & Conway, Motley Rice, the Libby Claimants, firms represented by Montgomery McCracken, Walker & Rhoads, LLP (the "MMWR Firms"), and Kelley & Ferraro. On February 5, 2007, the Court, in a telephonic hearing, heard argument from all interested parties. Based on the guidance offered by the Court at that hearing, the parties negotiated and agreed upon the Supplemental X-ray Order, entered by this Court on February 20, 2007.

Under the terms of the Supplemental X-ray Order, counsel for Claimants sending in copies of x-rays to Rust must certify that "counsel is unaware of any material difference between the copy and the Claimants' original chest x-ray or best available copy of Claimant's chest x-ray. . . . no later than March 15, 2007." Supplemental X-ray Order at ¶ 2. Pursuant to the order, any

x-ray submitted to Rust with this certification would, for purposes of the estimation proceeding, "be deemed not to be materially different in any respect from the original chest x-ray . . ." *Id.* at ¶ 4. To the extent that an x-ray no longer existed, a Claimant could still comply with the x-ray order by certifying as such in writing, "[a]s to each claimant for whom no original chest x-ray or copy exists." *Id.* at ¶ 5. The Supplemental X-ray Order also permitted Grace to move this Court, on an expedited basis, to address those Claimants who failed to comply with the terms of the order, which would include the potential of establishing a court-administered repository for original x-rays. *Id.* at ¶ 6.

Based on a review of the x-rays received by March 15, 2007 and the cover letters that accompanied those x-rays, there are 2,968 Claimants of the approximately 6,748 Claimants subject to the Supplemental X-ray Order who are in compliance with the Supplemental X-ray Order. First, there are 2,763 who sent in original x-rays or copies with the requisite certification. Additionally, law firms for 205 Claimants certified in writing that a particular clients' x-rays no longer exist. *See* Firms With Claimants Whose X-rays No Longer Exist, attached as Exhibit 1; Supplemental X-ray Order at ¶ 5. All such Claimants are in compliance with the Supplemental X-ray Order.

The majority of the Claimants subject to the Order, approximately 3,771 Claimants, have not complied with the Supplemental X-ray Order. The types of noncompliance are varied but can be separated into four categories. First, the Debtor has received no response of any kind from 1,659 Claimants. *See* Firms That Failed to Respond to the Supplemental X-ray Order, attached as Exhibit 2. Thirty law firms failed to provide any responses for any of the Claimants they represent, and many others provided responses for some Claimants but not others. *See id.* Second, approximately 941 Claimants are not in compliance with the Supplemental X-ray Order

because they sent copies of x-rays to Rust without the requisite certifications. *See* Firms That

Failed to Provide Certifications For The X-rays They Submitted, attached as Exhibit 3. Third,

approximately 729 Claimants' x-rays allegedly exist but have not been sent to Rust because they

have not been located. *See* Claimants Whose X-rays Were Not Located, attached as Exhibit 4.[1]

Fourth, approximately 442 Claimants' x-rays are allegedly in the hands of third parties. *See*

Firms With Claimants' X-rays in the Hands of Third Parties, attached as Exhibit 5. Pursuant to

paragraph 6 of the Supplemental X-ray Order, those Claimants whose x-rays are in possession of

third parties should be ordered to provide them to Rust immediately or be precluded from

presenting x-ray evidence at the estimation proceeding. In addition, Claimants who allege that

they possess x-ray evidence to support the contention that their non-mesothelioma malignancy is

attributable to asbestos should be precluded from introducing any x-ray evidence at the

estimation trial in support of their claims beyond what was timely produced to the Debtor by

March 15, 2007 or by April 30, 2007 for x-rays in third party possession.

## II.    ARGUMENT

> **A.    Claimants Who Have Failed to Obtain Copies of X-rays Should Produce Them Immediately or Acknowledge That They Do not Exist For The Purposes Of The Estimation Proceeding.**

Based on a review of the x-rays received and correspondence sent to Rust and the Debtor

by the various law firms, there are 442 Claimants who allege that their x-rays are in the

possession of third parties. *See* Firms With Claimants' X-rays in the Hands of Third Parties,

attached as Exhibit 5. This does not comply with the Supplemental X-ray Order. The Order

---

[1]    In a March 14, 2007 letter, the Law Office of Peter Angelos identified 474 claimants whose x-rays were either destroyed or could not be located. There was not, however, specific identification of which Claimants' x-rays were destroyed and which ones were not located. This distinction is significant as identifying an x-ray as missing is insufficient to comply with the order, and the Supplemental X-ray Order requires counsel to certify "[as] to each Claimant for whom no original chest x-ray or copy exists." Supplemental X-ray Order at ¶ 5.

requires these Claimants to produce a copy of their x-rays or certify that the x-rays no longer exist. *See* Supplemental X-ray Order at ¶ 5. The Supplemental X-ray Order provides, however, that where an x-ray does exist but is not produced, the Court will consider "how to facilitate Grace's inspection of such chest x-ray . . . ." *Id.* at ¶ 6. Accordingly, this Court should require compliance with the Order, and thus the production of the x-rays or copies of the x-rays in third party possession by April 30, 2007. If Claimants, after further searching, conclude that such x-rays no longer exist, they shall so certify by April 30, 2007. These Claimants should be precluded from proffering any x-ray evidence at the estimation trial, or providing any x-ray evidence to their experts, that is not produced by April 30, 2007.

**B.      All Parties Should Be Limited At The Estimation Proceeding To Presenting X-ray Evidence That Was Timely Produced To The Debtor In Compliance With the Supplemental X-ray Order.**

Numerous Claimants subject to the Supplemental X-ray Order are not in compliance with the Order. Based on an inventory of all x-rays received and cover letters sent to Rust, and in some instances to the Debtor, there are 1,659 Claimants from whom no responses to the x-ray order have been received. *See* Firms That Failed to Respond to the Supplemental X-ray Order, attached as Exhibit 2. Such Claimants have not produced x-rays or notified the Debtor in writing that the x-rays do not exist, as required by the Supplemental X-ray Order. Moreover, there are 729 Claimants who have stated that the whereabouts of their x-rays' are unknown. *See* Claimants Whose X-rays Were Not Located, attached as Exhibit 4. The Supplemental X-ray Order required Claimants to certify that the x-rays no longer existed, not just to say that their whereabouts are currently unknown. Consequently, these Claimants have not complied with the Supplemental X-ray Order.

Additionally, approximately 941 Claimants who have submitted x-rays to Rust failed to provide certifications along with the copies of the x-rays. *See* Firms That Failed to Provide Certifications For The X-rays They Submitted, attached as Exhibit 3. All Claimants who sent to Rust copies of x-rays were required to make the certification contained in paragraph two of the Supplemental X-ray Order. The Order requires them to certify that "counsel is unaware of any material difference between the copy and the Claimant's original chest x-ray or best available copy of Claimant's chest x-ray." Supplemental X-ray Order at ¶ 2. It was counsel for the Claimants, not the Debtor, that advocated producing copies, and the certifications were aimed at preventing Claimants' counsel from subsequently challenging any reads of x-ray copies on the grounds that the original x-ray contained images not apparent in the copy. Debtor and Debtor's experts have articulated concerns with reading copies, but have agreed to move forward with an analysis of copies of x-rays provided that counsel for the various Claimants stipulate as to the accuracy of the x-ray copies. The certification language is critical to ensuring that Claimants cannot challenge x-ray reads on the basis that they are based on copies rather than originals.

This Court should limit the parties and their experts to introducing x-ray evidence with respect to the non-mesothelioma cancer claimants that was timely produced in response to the Supplemental X-ray Order. The Debtor has attempted since October of 2006 to obtain the x-rays that support these Claimants' allegations that their malignancies are attributable to asbestos exposure. The Debtor agreed to the terms of the Supplemental X-ray Order with the understanding that the relaxed certification language would enable all Claimants who have radiographic evidence in support of their malignancy claims to produce their x-rays. Those Claimants who failed to comply with the Supplemental X-ray Order should not be able to deprive the Debtor of the ability to evaluate the x-ray evidence that allegedly supports their

7

claims and then to introduce such evidence at the estimation proceeding. No Claimant or party to the estimation proceeding or their experts should be permitted to offer evidence or testimony in support of such claims that is based on x-ray evidence that was not produced in compliance with the Supplemental X-ray Order.

## II.    CONCLUSION

This Court's December 22nd X-ray Order and the Supplemental X-ray Order expressly require Claimants asserting malignancies other than mesothelioma to produce the x-rays that support their contention that the malignancies are attributable to asbestos exposure. The production of these x-rays permits Debtor to scientifically assess the validity of these assertions. Many Claimants, however, have failed to comply with the Court's order by not certifying copies of x-rays or not producing any x-rays at all. This Court should not permit these Claimants to introduce any x-ray evidence at the estimation trial in support of their claims beyond what was timely produced in compliance with the Supplemental X-ray Order.

Dated:  March 30, 2007

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick
Janet S. Baer
Salvatore F. Bianca
200 East Randolph Drive
Chicago, IL 60601
Telephone:     (312) 861-2000
Facsimile:     (312) 861-2200

KIRKLAND & ELLIS LLP
Barbara M. Harding
David E. Mendelson
Brian T. Stansbury
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:     (202) 879-5000
Facsimile:     (202) 879-5200

and

PACHULSKI STANG ZIEHL YOUNG JONES &
WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
Pachulski, Stang, Ziehl, Young, Jones & Weintraub LLP
919 North Market Street, 17th Floor
P. O. Box 8705
Wilmington, DE  19899-8705
(302) 652-4100

9