## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | In Proceedings for a Reorganization under Chapter 11 |
| | ) | |
| W.R. Grace & Co., *et al.,* | ) | Case No. 01-01149-JKF |
| | ) | Re: DI 14149, 14150, 14927 |
| Debtors. | ) | |
| | ) | |
| | ) | |

## MOTION OF EARLY, LUDWICK AND SWEENEY, LLC
## FOR A PROTECTIVE ORDER WITH RESPECT TO
## SUBPOENA ISSUED BY W.R. GRACE

On March 19, 2006 the law firm of Early, Ludwick & Sweeney, LLC a/k/a Early,
Ludwick, Sweeney & Strauss, LLC ("ELS"), with offices in New Haven, Connecticut, was
served at those offices with a subpoena prepared by Grace's counsel and issued from the United
States District Court for the District of Connecticut. A copy of Grace's subpoena is attached as
Exhibit A.

For the reasons set forth below, ELS, by and through its counsel, Sweeney & Griffen and
Montgomery, McCracken, Walker & Rhoads, LLP ("MMWR"), hereby moves pursuant to
Federal Rule of Bankruptcy Procedure Rule 7026 and Federal Rule of Civil Procedure 26(c) for
a Protective Order that the requested discovery "not be had." See Fed. R. Civ. P. 26(c)(1).

As required by Rule 26(c), counsel for the "movant has in good faith conferred . . . [with
counsel for Grace] in an effort to resolve the dispute without court action." The certification to
this effect as required by Rule 26(c) is attached as Exhibit B.

## I.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery only on matters that are not privileged, and that discovery requests must be reasonably calculated to lead to the discovery of admissible evidence.  Rule 26(b)(2) provides that discovery requests may not be cumulative, duplicative, or unduly burdensome (i.e. the burden of discovery outweighs its likely benefit).

Federal Rule of Civil Procedure 26(c) provides that a court may enter a protective order in response to a discovery request.  The Rule states, "Upon motion by a party or by the person from whom discovery is sought . . . the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including  . . . that the disclosure or discovery may not be had."

It is well established that the court in which a matter is already pending – namely this Court – has the right to rule on a motion for a protective order with respect to a subpoena "issued," as here, from a different Federal District Court pursuant to the provisions of Federal Rule of Civil Procedure 45.  See, e.g., Kearney v. Jandernoa, 172 F.R.D. 381, 383 (N.D. Ill. 1997 ("[A] protective order under Rule 26(c) can be sought/determined in the court where the underlying action is pending, as well as the court from which the subpoena issued . . . .").  See also, In re: Sealed Case, 141 F.3d 337, 342 (D.C.Cir. 1998) ("[A] nonparty that moves for a protective order in the court of the underlying action thereby submits to that court's jurisdiction.").[1]

---

[1] It is likewise well established that the court from which the subpoena "issued" may transfer or "remit" the matter to the court in which the underlying litigation is already pending.  See, e.g., Devlin v. Transportation Communications Int'l Union, Nos. 95-0742, 95-10838, 2000 WL 249286, *1 (S.D.N.Y. March 6, 2000) ("There is substantial support in the case law, among the commentators, and in the Advisory Committee Note to Rule 26(c) of the Federal Rules of Civil Procedure for the proposition that the court from which a subpoena has issued has the

## II.    __INTRODUCTION__

After countless hours of work by the parties and this Court over a period of almost two and a half years[2]; after years of argument by Grace that answers to its own Questionnaire were the key to its preparation for the Estimation Proceeding; after the issuance of decisive rulings by this Court on all of the objections raised by asbestos claimants and their counsel; after the submission of supplemental answers to the Grace Questionnaire; and after the submission of x-ray and other evidence of asserted asbestos disease, Grace has now embarked on a colossally irrelevant and wasteful wild goose chase with its subpoena to the ELS firm. See discussion below generally, and Section IV.A. in particular.

This attempted discovery follows the admission just this past week by Grace that its document-reviewing capabilities are already overtaxed. See Grace's Response to the Asbestos PI Committee's Emergency Motion to Compel Production of Grace's Navigable Database, docket reference 14973, ("Response to Database Motion"). In its Response to Database Motion, Grace states that at its present rate, Grace will not finish coding the Questionnaires returned to date until about eight years from now. Id. Especially in this context, the effort by Grace in its subpoena to ELS to seek even more information just makes no sense.

---

authority to transfer any motion to quash or for a protective order to the court in which the action is pending."). However, these cases regarding transfer or remission are inapplicable in light of the decision of ELS to avail itself of the jurisdiction of this Court for a ruling on its Motion for a Protective Order. Where, as here, a non-party witness "volunteers" to have the dispute heard in the court where the case is already pending, there is no reason whatsoever for the "issuing" court to have to deal with the discovery dispute. The provisions in Rule 45 that permit the non-party witness to request a ruling from the issuing court are designed to give some protection to the non-party witness from having to travel to a distant forum. Of course, ELS is already represented by MMWR in this Court and ELS believes that this Court is unquestionably the most appropriate forum for the resolution of this matter. In any event, ELS has the absolute right under Rule 26(c) to come to this Court to request relief.

[2] See, Debtors' Motion for Entry of an Order Seeking the Estimation of Asbestos Claims and Certain Related Relief, filed by Grace on November 13, 2004, which commenced debate and discovery with respect to the Estimation Proceeding.

The apparent rationale that Grace relies upon to seek the discovery is an inflammatory statement by one discredited and disqualified lawyer in an Ohio case where the ELS firm had never entered its appearance – <u>Kananian v. Lorillard Tobacco</u>, Cuyahoga Court of Common Pleas, Cuyahoga County, Ohio, Case No. CV 442750.  This one statement was made by one lawyer at a different firm, and a lawyer found by the Ohio trial court judge to have engaged in multiple, blatant falsehoods.  In the words of the trial court judge "there is simply no justification for these falsehoods."  <u>See</u> Order and Opinion of Judge Hanna, Jan. 18, 2007, at p. 16.  A copy of the Order and Opinion is attached as Exhibit C.  By contrast, although two ELS lawyers and two ELS paralegals were deposed over a period of approximately four (4) full business days in the <u>Kananian</u> case, there was never any criticism by the trial court judge (Judge Hanna) of the ELS firm in that <u>Kananian</u> case, nor has ELS been the subject of criticism in any other case involving Harry Kananian or his estate.  <u>See</u> Affidavit of James F. Early ("Early Affidavit"), attached as Exhibit D, at ¶ 10.

In short, Grace is attempting to create a scandal and taint where none exists, and thereby to bootstrap itself into an argument that it can now single out ELS, and every one of ELS's mesothelioma clients, for additional burdensome discovery and invasion of privacy.  This Court should not permit such conduct by Grace.

Moreover, Grace's unilateral issuance of its unannounced subpoena on a law firm that has submitted 114 completed claimant questionnaires violates the spirit, if not the express terms, of this Court's December 16, 2005 "Order Denying Debtors' Emergency Motion for Leave to Take Discovery of Claimants' Attorneys," which Order states in relevant part that <u>this</u> Court, and not any other court, "<u>shall retain jurisdiction to hear and determine all matters arising from or</u>

<u>relating to this Order</u>."  (Emphasis added).  A copy of the Court's December 16, 2005 Order is attached as Exhibit E.  <u>See</u> discussion at Section IV. B., below.

The Grace subpoena seeks the production of documents and deposition testimony that this Court has already expressly and explicitly ruled is privileged and not discoverable.  <u>See</u> discussion at Section IV. C., below.

The Grace subpoena seeks the production of documents and deposition testimony containing information that this Court has already expressly and explicitly ruled that Grace cannot obtain.  <u>See</u> discussion at Section IV. D., below.

The reasoning of other courts emphatically recommends against permitting Grace's attempt to obtain discovery from counsel.  <u>See</u> discussion at Section IV. E., below.

The Grace subpoena seeks discovery of information that is independently privileged as attorney-work product and by the attorney-client privilege.  <u>See</u> discussion at Section IV. F., below.

The Grace subpoena's request for documents and deposition testimony regarding claims involving Harry Kananian, or his estate, are demonstrably in bad faith, in addition to being irrelevant and burdensome.  <u>See</u> discussion at Section IV. G., below.  The fact that the Ohio <u>Kananian</u> case is a demonstrable red herring means that Grace has no basis whatsoever to demand discovery from any of the other 131 ELS clients listed in the Grace Subpoena.

Finally, the Grace subpoena is unduly burdensome and does not provide sufficient time for response.  <u>See</u> discussion at Section IV. H., below.

For any and all of these reasons, the ELS firm respectfully requests that its Motion for Protective Order be granted.

-5-

III.     **PROCEDURAL STATUS OF THE PRESENT DISPUTE**

On April 2, 2001, W.R. Grace & Co. and affiliated entities (the "Debtors") commenced a

Chapter 11 bankruptcy case (the "Grace Bankruptcy Case") in the United States Bankruptcy

Court for the District of Delaware (the "Delaware Bankruptcy Court").  The Grace Bankruptcy

Case remains pending in the Delaware Bankruptcy Court.  The Honorable Judith K. Fitzgerald

has presided over the Grace Bankruptcy Case since its filing.

Since at least November, 2004, the Debtors have been preparing for a Court estimation of

the total amount of asbestos liability that they face, including both current and future (the

"Estimation Proceeding").

The purpose for pursuing the Estimation Proceeding is to determine the level of funding

necessary to sustain an asbestos personal injury trust to be established as part of a chapter 11

plan for the purpose of paying present and future asbestos claims against the Debtors.  It is not to

determine the merits of, or fix the value of, pending claims.  Pursuant to 28 U.S.C. section

157(b)(5), the actual trial of any personal injury claims must be held in the District Court.

Since November 2004, the issues relating to the Estimation Proceeding and/or what types

of discovery were to be authorized in connection with the Estimation Proceeding have been

addressed in virtually every monthly hearing in the case.  The issues were, on at least two

occasions, referred by this Court to mediation.  A review of the docket as of this date reflects 261

submissions and 48 Orders filed in the Grace Bankruptcy Case all with respect to the Estimation

Proceeding.

The present dispute stems from the Debtors' attempt to obtain needless additional

discovery from ELS allegedly for purposes of the Estimation Proceeding.  Indeed, certain of the

issues involved in ELS's Motion have already been the subject of contentious litigation over the

-6-

last several months, and have been the subject of several Orders entered by this Court to define the scope of allowed discovery.  See, e.g., Order Regarding Motions to Compel Claimants to Respond to the W.R. Grace & Co. Asbestos Personal Injury Questionnaire, 12/22/06 ("December 22, 2006 Order"); Supplemental Order Regarding Motions to Compel Claimants to Respond to the W.R. Grace & Co. Asbestos Personal Injury Questionnaire, 12/22/06 ("Supplemental December 22, 2006 Order"); Order Regarding X-Ray Evidence, 12/22/06; and Order Concerning Debtors' Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire, 10/12/06, attached as Exhibits F, G, H and I respectively.

ELS is not itself a "party" to the Estimation Proceeding, and therefore was served with a non-party witness subpoena issued under Federal Rule of Civil Procedure 45.

## IV.    ARGUMENT

### A.    The Grace Subpoena Represents a Colossally Irrelevant and Wasteful Wild Goose Chase

#### 1.    Information Requested in the Grace Subpoena Is Irrelevant Because Already Provided in Response to the Grace Questionnaire

Grace's subpoena consists of six specific document requests and four specific categories for purposes of Federal Rule of Civil Procedure 30(b)(6).  Of the six document requests, the first three involve "asbestos exposure experienced by the Claimant" (Request No. 1), "[asbestos]

-7-

exposure information of any kind provided" (Request No. 2), and "[asbestos] exposure data submitted to an asbestos trust or asbestos defendant" (Request No. 3).  As regards the four specified categories for purposes of Rule 30 (b)(6), one of these categories is specifically directed to "the development of exposure information."

Of course, as this Court well knows, the issue of asbestos exposure was one of the most exhaustively addressed issues in the extraordinarily lengthy and contentious debate over the Grace Questionnaire.  Part V of the Grace Questionnaire is titled "EXPOSURE TO NON-GRACE ASBESTOS-CONTAINING PRODUCTS," and the Court ordered claimants to answer Part V of the Grace Questionnaire based on "information that is known to them at this time." In addition to the fact that Grace has been in bankruptcy for over 5 years and that during this period Grace has been protected from the pursuit of individual claims and discovery by the automatic stay, the bankruptcies of other asbestos manufacturers have also restricted full development of exposure data by some claimants.  See, December 22, 2006 Order, at p.1, ¶ 2.

In addition, ELS provided answers, on behalf of the 132 Claimants that it represents, to Parts III and IV of the Grace Questionnaire, titled, respectively:  "DIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS" and "INDIRECT EXPOSURE TO GRACE ASBESTOS-CONTAINING PRODUCTS."  See Early Affidavit, at ¶ 11,

All supplemental answers to questionnaires were due "no later than January 12, 2007" (see December 22, 2006 Order at p. 2, ¶ 7), and ELS timely submitted the supplemental information for the 114 questionnaires for its clients on or before the January 12, 2007 deadline. See Early Affidavit, at ¶ 11.

In short, for the 114 claimants represented by the ELS firm who have submitted questionnaires completed as directed by the Court,[3] Grace has now been provided with the best information presently available to these claimants with respect to their "DIRECT EXPOSURE" and "INDIRECT EXPOSURE" to "GRACE ASBESTOS-CONTAINING PRODUCTS" and with respect to any exposure to "NON-GRACE ASBESTOS-CONTAINING PRODUCTS."

With the benefit of all of this exposure information, plus the work history for these claimants (see Grace Questionnaire, Part VI:  "EMPLOYMENT HISTORY"), that has now been provided to Grace by the ELS firm – exposure information that Grace has consistently demanded as the *sina qua non* for Grace's presentation at the estimation hearing – it is Grace itself that is now presumably in the best position to corroborate or rebut each claimant represented by ELS because it is Grace that presumably knows all of the construction sites and other locations where it sold its own asbestos-containing products.  Grace can also undertake to verify submitted work histories by non-party discovery directed to employers.

In other words, Grace does not need any additional exposure information in order fully and fairly to prepare its own case for the estimation hearing.

For the simple and dispositive reason that Grace now has what the Court has already permitted Grace to obtain in response to Grace's own Questionnaire, and all of the information presently available to evaluate the merits of the Claimants' claims, there is no supportable basis on which Grace can be permitted to embark on this colossally irrelevant and wasteful wild goose chase.

---

[3] Exhibit 1 to the Grace Subpoena is an alphabetical listing of 186 names.  Of these 186 names, the ELS firm represents 111 claimants for all purposes – meaning state court claims and bankruptcy trust claims, and the ELS firm represents 3 claimants for purposes of bankruptcy trust claims only; the ELS firm has referred all state court claims for these 3 claimants to the firm of Brayton Purcell.  The ELS firm has also referred an additional 18 claimants to the Brayton Purcell firm for all purposes.  The remaining 54 names on Exhibit 1 are not now and have never been asbestos clients of the ELS firm.

-9-

### 2.    The Individual Document Requests and Categories Identified for Purposes of Rule 30(b)(6) are Demonstrably Irrelevant

As already noted, Grace's subpoena includes six specific document requests and four specific categories for purposes of Federal Rule of Civil Procedure 30(b)(6).  As already noted, the first three document requests all relate in one way or another to asbestos exposure.  Of the three remaining document requests, two involve documents relating to the law firm of Brayton Purcell LLP – namely documents relating to the retention of Brayton Purcell (or ELS) (Request No. 4) and documents relating to any fee sharing between the ELS and Brayton Purcell firms (Request No. 5).  The last document request relates exclusively to any litigation involving Harry Kananian or his estate (Request No. 6).

As regards asbestos exposure information, and as already discussed above, all information deemed relevant and sufficient by this Court has already been ordered to be produced in response to Grace's own Questionnaire.

Enough already.

This Court is not making findings with respect to the merits of any individual claim.  To do so would violate the express provisions of  28 U.S.C. section 157(b)(5).  To the contrary, the purpose of the Estimation Proceeding is solely to estimate Grace's aggregate liability so as to determine the level of funding that Grace must pay to any trust that results from this bankruptcy case and that will exist to pay present and future asbestos claims.  The merits of any individual claim can only be determined at a later date through agreed upon trust distribution procedures.

Indeed, Grace has repeatedly acknowledged on the record (quite correctly) that mini-trials of the merits of individual claims is not the purpose of this Estimation Proceeding.  See, e.g., Bankr. Ct. Tr., 9/11/06 Hearing, p. 122: 5-10 where Grace's counsel stated, "The whole purpose of the questionnaire process is to produce an estimation in the aggregate of the personal

-10-

injury asbestos liability of Grace.  It is not, it is not for the purpose of allowing of disallowing any individual claim.  And that distinction has been critical."

Claimants' simple due process rights forbid any decision-making body, be it this Court, or any tribunal set up under trust distribution procedures, from making substantive rulings on individual claims in the abstract, without affording each individual claimant all due process rights to which he or she is entitled under state and federal law.  Because the present Estimation Proceeding does not involve, and, as a practical matter, could not involve, determinations of the merits of individual claims, Grace cannot properly now seek to discover evidence the only possible use for which would be at individual claims allowance proceedings.

Information regarding claimants' asbestos suits/claims against other defendants or trusts is obviously irrelevant to any calculation of those claimants' claims against Grace, except to the extent necessary to determine Grace's several share of a given claim.  This Court has already provided for Grace to receive precisely such information in its December 22, 2006 Order:

> Claimants are ordered to provide only the following information in response to Part VII, Section A, Question 6 and Part VII, Section B, Question 6:  the aggregate amount of settlement monies paid to the plaintiff for asbestos or silica related injuries, the total number of defendants with whom the Claimant settled, and the disease for which each claim was settled (if different from the disease alleged in Part II, Question 1 of the Questionnaire). Further, the information may be used by Grace, its counsel, its agents, and its experts in connection with this estimation proceeding only, and is to be kept confidential and may not be used by any person other than the Claimant for any purpose other than this estimation.

See December 22, 2006 Order at ¶ 4, p 2.

-11-

2171769v1

Information regarding the other law firm of Brayton Purcell LLP and the retention agreements with ELS's clients is facially irrelevant to the Estimation Proceeding now at issue: What possible relevance is there to the present Estimation Proceeding to the terms of the retention agreements between ELS and its clients?  (See Document Request No. 4.)  What possible relevance is there to the present Estimation Proceeding to the terms of any fee sharing agreements between ELS and another law firm?  (See Document Request No. 5.)

It appears that the real purpose of the discovery sought by Grace is a wasteful and unjustified fishing expedition to try to create some taint on the asbestos bar generally, and / or on the mesothelioma claimants generally, and / or on the ELS mesothelioma clients.  Whatever the real purpose, it is a colossal waste of time and energy, and of the assets of the Debtors' Estate.

The Kananian case in Ohio did generate publicity as the result of the revocation of the *pro hac vice* admission in that one case of an attorney and his firm.  The trial court in that case found that the particular lawyer had engaged in blatant "falsehoods," albeit falsehoods that were "directed at a relatively innocuous issue."  See Order and Opinion of Judge Hanna, Jan. 18, 2007, at pp. 16 - 17.

Significantly, there was no criticism anywhere in Judge Hanna's opinion of the ELS firm; nor has there been any criticism of the ELS firm from any other Court with respect to the Kananian (or any other) representation; nor has there been any threatened or attempted reopening of any of the other Kananian claims.  See Early Affidavit, at ¶ 10.

Stated simply, and as addressed in greater detail in Section IV. G, below, there is no basis whatsoever from the Kananian case to permit Grace's extraordinary request for extensive additional discovery from the ELS firm.

As regards the four specified categories for purposes of Rule 30(b)(6), one category solely involves "Harry Kananian, or his estate"; one category relates to "the development of exposure information"; and the remaining two categories involve the "submission of claims to asbestos trusts."

Again, and for the reasons already noted, there is simply no proper basis for this additional discovery.

3.      **In Addition to Seeking Information Irrelevant to the Estimation Hearing, Grace's Conduct Is a Colossal Waste of Estate Assets**

Grace's Estimation Proceeding is now costing this Estate, assuming that the costs requested by Grace's counsel are ultimately allowed, over $2 million per month.  This cost is all being borne by the creditors of the Estate, including and particularly the Asbestos Claimants.

In addition, assuming that the estimate of Grace's aggregate liability exceeds the total value of the Grace Estate, then all of the expenses of Grace's continuing discovery and churning in the present Estimation Proceeding will reduce the ultimate recovery to all Asbestos Claimants. This is a particularly inexcusable result in the context of cancer claimants who suffer from a cancer that is directly and exclusively caused by exposure to asbestos.  Stated differently, the position of the collective group of asbestos claimants is that Grace and its counsel are spending "their" money in an ongoing exercise of unjustified and unnecessary discovery.  The present Grace subpoena is the most recent, and one of the most outrageous, examples.

Some reasonable expense to permit Grace to present its position is proper under our adversarial legal system – but, as stated above, "enough already."

-13-

**B.      The Unilateral Issuance Of The Subpoena By Grace Without The Authorization Of This Court Violated The Spirit, If Not The Express Terms And Conditions, Of This Court's December 16, 2005 "Order Denying Debtors' Emergency Motion For Leave To Take Discovery Of Claimants' Attorneys"**

The said December 16, 2005 Order states in relevant part that <u>this</u> Court, and not any other court,  "<u>shall retain jurisdiction to hear and determine all matters arising from or relating to this Order</u>."  (Emphasis added.)

The December 16, 2005 Order resulted from an earlier attempt by Grace to obtain discovery directly from counsel for asbestos claimants, which attempt was denied by this Court.

It is true that the December 16, 2006 Order references that the denial was "without prejudice to the Debtors' right to seek discovery from individual firms in accordance with the applicable Federal Rule of Civil Procedure and subject to applicability Federal Rules of Evidence."  However, in light of the context of Grace having then first asked this Court for permission to obtain discovery from "claimants' attorneys," and in light of more than a year's worth of focus after December of 2005 by Grace on getting discovery through its questionnaire, it violated the spirit, if not the express terms of the December 16, 2005 Order for Grace to act unilaterally in the issuance of a self-generated subpoena to one firm of "claimants' attorneys" for additional discovery.

Moreover, it is remarkable that after more that a year of argument by Grace as to the importance of obtaining answers to its Questionnaire to claimants, Grace has now suddenly embarked on an entirely new tangent – without ever making any request to this Court – to obtain new discovery from one law firm representing asbestos claimants.

-14-

**C.    The Grace Subpoena Seeks Production of Documents and Deposition
Testimony That This Court Has Already Expressly And Explicitly Ruled Is
Privileged And Not Discoverable**

Grace's Document Request No. 1 states in full as follows:

> With respect to any cases or claims submitted to an
> asbestos trust on behalf of the Claimants listed on Exhibit 1 of the
> CD Rom attached hereto as Attachment B, any and all documents
> related to any asbestos exposure experienced by the Claimant,
> including but not limited to, copies of any claim form submitted to
> any asbestos trust(s) and all attachments thereto.

The definitions used by Grace state that the words "related to [ . . . mean, without

limitation, to consist of, refer to, evidence, describe, reflect, memorialize or otherwise be in any

way legally, logically or factually connected with the subject matter discussed.  See Attachment

A to the Grace subpoena at p. 2.

Upon reflection it is apparent that Grace's request for "any and all documents related to

any asbestos exposure experienced by the Claimant" automatically and necessarily includes

documents already determined by this Court to be subject to protection under the terms of the

consulting expert privilege.  This Court has already ruled

> The facts known or opinions held by experts who were
> retained or specially employed in anticipation of litigation or
> preparation of trial and who are not expected to testify at trial
> ("consulting Experts") are not discoverable.  Debtors have not
> demonstrated the existence of exceptional circumstances which
> justify taking discovery of Consulting Experts at this time.

 See Supplemental December 22, 2006 Order, at p.2.  The Subpoena's discovery requests

should also be denied to the extent they exceed the scope of this Supplemental Order.

For goodness sake, what is the point of months of briefing and argument before this

Court on an important issue that this Court then decisively rules on, if Grace turns around a

-15-

couple of months later and asks for the exact same information (as well as other information) through a unilaterally self-generated subpoena to a non-party witness?

The question presumably answers itself.

Needless to say, this kind of revisiting of an already decided issue is extremely frustrating and wasteful.

D.      **The Grace Subpoena Seeks The Production Of Documents And Deposition Testimony Containing Information That This Court Has Already Expressly And Explicitly Ruled That Grace Cannot Obtain**

Grace's Document Request No. 2 states as follows:

> Any and all documents relating to exposure information of any kind provided to any defendants, except W.R. Grace, in any asbestos related lawsuit filed by each of the Claimants listed on Exhibit 1 of the CD-Rom attached hereto as Attachment B, or in connection with any settlement of an asbestos-related claim by the Claimants listed on Exhibit 1, irrespective of whether a lawsuit was filed on the Claimant's behalf.

The grammar and syntax of this request is regrettably obtuse, but ELS perceives that this request may extend to documents "relating" to "any settlement of an asbestos related claim made by the Claimants listed on Exhibit 1, irrespective of whether a lawsuit was filed on the Claimant's behalf."

To the extent that Grace seeks such documents, Grace is again attempting to circumvent this Court's existing Order to the effect that insofar as asbestos settlements with other defendants or trusts are concerned, the only discovery to be permitted is as follows (and as also noted above):

> Claimants are ordered to provide only the following information in response to Part VII, Section A, Question 6 and Part VII, Section B, Question 6: the aggregate amount of settlement

-16-

> monies paid to the plaintiff for asbestos or silica related injuries, the total number of defendants with whom the Claimant settled, and the disease for which each claim was settled (if different from the disease alleged in Part II, Question 1 of the Questionnaire). Further, the information may be used by Grace, its counsel, its agents, and its experts in connection with this estimation proceeding only, and is to be kept confidential and may not be used by any person other than the Claimant for any purpose other than this estimation.

<u>See</u> December 22, 2006 Order, at ¶¶ 4-5.

This Court properly recognized that in the context of the Estimation Proceeding, claimants' prior suits/claims against other defendants are relevant <u>only</u> to calculating Grace's several share of a claimant's total damages. In its December 22nd Order, this Court properly limited the scope of Grace's allowable discovery. Nonetheless, in its present subpoena, Grace appears to be attempting to obtain unilaterally through a self-generated subpoena to be a non-party witness, precisely what this Court has already forbidden.

### E.    The Reasoning Of Other Courts Emphatically Recommends Against Permitting Grace's Attempt To Obtain Discovery From Counsel

Notwithstanding all of the other reasons why the discovery that Grace seeks in the Subpoena is improper, Grace cannot meet the heightened standard for allowing discovery that applies when one party seeks to depose or otherwise take discovery from its adversary's attorneys. In <u>Shelton v. American Motors Corp.</u>, 805 F.2d 1232 (8th Cir. 1986), the U.S. Court of Appeals for the Eighth Circuit barred the plaintiff from deposing the in-house counsel of the defendant regarding certain matters pertinent to the case. Among other things, the court in <u>Shelton</u> observed "the increasing practice of taking opposing counsel's deposition," which the court viewed as "a negative development in the area of litigation, and one that should be

-17-

employed <u>only in limited circumstances</u>."  <u>Id</u>. at 1327 (emphasis added).  The court further

stated:

> Taking the deposition of opposing counsel not only disrupts the adversarial
> system and lowers the standards of the profession, but it also adds to the already
> burdensome time and costs of litigation.  It is not hard to imagine additional
> pretrial delays to resolve work-product and attorney-client objections, as well as
> delays to resolve collateral issues raised by the attorney's testimony.  Finally, the
> practice of deposing opposing counsel detracts from the quality of client
> representation.  Counsel should be free to devote his or her time and efforts to
> preparing the client's case without fear of being interrogated by his or her
> opponent.  Moreover, the "chilling effect" that such practice will have on the
> truthful communications from the client to the attorney is obvious.

<u>Id</u>.  The court continued:

> The harassing practice of deposing opposing counsel (unless that counsel's
> testimony is crucial and unique) appears to be an adversary trial tactic that does
> nothing for the administration of justice but rather prolongs and increases the
> costs of litigation, demeans the profession, and constitutes an abuse of the
> discovery process.

<u>Id</u>. at 1330.

The concerns articulated by the court in <u>Shelton</u> apply with equal force here.  Addressing

the issues that Grace raises in its Subpoena will prolong and increase the costs of litigating

estimation.  Moreover, pursuing discovery claimants' attorneys will likely distract them from

"devot[ing] [their] time and efforts to preparing the client's case" - which includes helping their

own clients respond to the Questionnaire.

So too, the Debtors' proposed discovery might ultimately compel attorneys to be

witnesses in the estimation or in a claims allowance proceeding, which in turn might disqualify

them from further representing their client. <u>See</u>, <u>e.g.</u>, <u>Slater v. Liberty Mut. Ins. Co</u>., No. 98-

1711, 1999 WL 46580, *1 (E.D. Pa. Jan. 14, 1999) ("[A] deposition of one's attorney by an

opposing party is inherently annoying, oppressive, disruptive and burdensome. 'Such a

deposition provides a unique opportunity for harassment, it disrupts the opposing attorney's

-18-

preparation for trial, and could ultimately lead to disqualification of opposing counsel if the attorney is called as a trial witness.'") (quoting <u>Marco Island Partners v. Oak Dev. Corp.</u>, 117 F.R.D. 418, 420 (N.D. Ill. 1987)).  In these respects, the proposed discovery of attorneys appears to be nothing more than "an adversary tactic that does nothing for the administration of justice . . . , demeans the profession, and constitutes an abuse of the discovery process."  <u>See</u>, <u>Shelton</u>, 805 F.2d at 1330.

Because of these concerns, the court in <u>Shelton</u> held that discovery of a party's attorney "should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; <u>and</u> (3) the information is crucial to the preparation of the case." <u>Id.</u> at 1327 (emphasis added & citation omitted). Other courts, including the U.S. District Court for the District of Delaware, have adopted the <u>Shelton</u> test (or a similar standard), and have denied attempts by parties to depose the opposing party's lawyer. <u>See</u>, <u>e.g.</u>, <u>Nationwide Mut. Ins. Co. v. Home Ins. Co.</u>, 278 F.3d 621 (6th Cir. 2002) (denying deposition of Nationwide's attorney to discover possible bias of the arbitrator); <u>Thiessen v. General Electric Cap. Corp.</u>, 267 F.3d 1095 (10th Cir. 2001) (affirming trial court's rejection of efforts to depose an attorney accused of destroying relevant documents to "cover up" an allegedly discriminatory policy); <u>Smith v. United States</u>, 193 F.R.D. 201 (D. Del. 2000) (adopting <u>Shelton</u> and disallowing depositions of two JAG attorneys); <u>G-I Holdings, Inc. v. Baron & Budd</u>, No. 01-0216, 2005 WL 1653623, *5 (S.D.N.Y. July 13, 2005) (holding that the party seeking attorney testimony "made no showing that (1) defendants' clients committed any act that would justify invading their privilege or (2)

that the nature of the relationship between defendants' clients and Holdings is such that invasion is warranted.").[4]

Here, the Court should similarly reject the Debtors' request to pursue discovery of Claimants' counsel.  As described in detail in this Motion, Grace has ample means to discovery the information it seeks (i.e. through the Questionnaire responses), the information Grace seeks is irrelevant to the estimation process, is largely privileged, and is certainly not "crucial to the preparation of the [estimation] case."  The fact that Grace cannot satisfy the Shelton test is yet another reason why the Court should prevent Grace from enforcing the Subpoena.

### F.    The Grace Subpoena Seeks Discovery of Information That Is Independently Privileged As Attorney-Client Communication and/or as Attorney Work Product

The attorney client privilege encourages the complete sharing of information between a client and an attorney by protecting their communications from disclosure.  The Third Circuit has adopted the formulation of the attorney-client privilege as articulated in United States v. United Shoe Machine Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950):

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c)

---

[4] A more recent decision of the Eighth Circuit, Pamida, Inc. v. E.S. Originals, Inc, 281 F.3d 726 (8th Cir. 2002), did not reject or abandon the Shelton test, even though the Eighth Circuit in Pamida permitted attorney discovery.  In the Pamida case, a retailer was named a defendant in a patent infringement case. After the patent infringement case settled, the retailer filed an action against a manufacturer seeking indemnification for the attorneys fees and costs that the retailer incurred in the concluded patent suit. The Eighth Circuit permitted discovery of the retailer's attorney because, inter alia, the retailer was seeking indemnification for attorneys' fees, which in turn put "the work of [the retailer's] attorneys directly at issue in the case." Id. at 731.  Cf. In re Subpoena Issued to Dennis Friedman, Esq., 350 F.3d 65, 72 (2d Cir. 2003) (discussing Shelton but opting for a more "flexible" approach).  Unlike Pamida, this claims estimation proceeding does not involve the indemnity or recovery of attorneys' fees that were incurred in concluded litigation. The facts of Pamida are therefore distinguishable from the situation here.

> for the purpose of securing primarily either (i) an opinion of law or
> (ii) legal services or (iii) assistance in some legal proceeding, and
> not (d) for the purpose of committing a crime or a tort; and (4) the
> privilege has been (a) claimed and (b) not waived by the client.

In re Grand Jury Investigation, 599 F.2d 1224, 1233 (3d Cir. 1979).

The work product doctrine protects from discovery materials prepared or collected by an attorney in the course of preparation for possible litigation. See In re Grand Jury Investigation, 599 F.2d at 1228. The doctrine is contained in Federal Rule of Civil Procedure 26(b)(3), which "allows a party to discover materials prepared in anticipation of litigation or for trial only upon a showing that the requesting party has a substantial need for the material and cannot obtain the material or its equivalent elsewhere without incurring a substantial hardship." See, e.g., In re Ford Motor, 110 F.3d at 966. Even where there is demonstration of a substantial need and substantial hardship, "the court shall protect against disclosure of the mental impressions, conclusions, opinion or legal theories of an attorney or other representative of a party concerning the litigation." Fed. R. Civ. P. 26(b)(3).

Of course, whether a document is produced "in anticipation of litigation is often a difficult factual matter." Rockwell Int'l, 897 F.2d at 1266. "Prudent parties anticipate litigation and begin preparation prior to the time suit is formally commenced." In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir. 1979). Thus, "litigation need not be imminent, as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." Rockwell Int'l, 897 F.2d at 1266 (quoting United States v. El Paso Co., 682 F.2d 530, 542-43 (5th Cir. 1982)). In other words, the issue is whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." In re Grand Jury

-21-

Proceedings, 604 F.2d at 803 (quoting 8C Wright and A. Miller, Federal Practice and Procedure § 2024, at 198 (1970)).

Grace has subpoenaed the client files of legal counsel.  Inevitably these files will be replete with documents entitled to privilege protection.  See discussion in Section IV. H., below.

For example Grace's Document Request No. 3 seeks "[a]ny and all communications" that are "related to materials submitted to an asbestos trust or asbestos defendants . . . including . . . communications related to exposure later submitted to an asbestos trust or asbestos defendant." In short, any internal, lawyer-generated, ELS document that deals with any asbestos trust submission is included within this request, but all of these internal ELS documents will almost certainly be privileged in one form or another, in whole or in part, thereby requiring substantial time and effort – and burden – to list on a privilege log.

It is simply ridiculous for Grace to request such facially privileged information.

 

**G.**      **The Grace's Subpoena's Request For Documents And Deposition Testimony Regarding Claims Involving Harry Kananian, Or His Estate, Are Demonstrably In Bad Faith, In Addition To Being Irrelevant And Burdensome**

 

As touched on above, the Ohio Kananian case is a huge red herring.  The Grace subpoena contains the following specific discovery requests directed solely to the Kananian matter:

Document Request No. 6:

> Any and all documents produced by or on behalf of Harry Kananian or his estate in any case in which Mr. Kananian or his estate was a Plaintiff or Claimant, including but not limited to *Kananian v. Lorillard Tobacco* and *Kananian v. Asbestos*

-22-

> *Defendants*, No. 311064 (Superior Court of California, County of
> San Francisco).

30(b)(6) Designation "1":

> Person with most knowledge of cases or claims in which
> Harry Kananian, or his estate, was a Plaintiff or Claimant,
> including but not limited to *Kananian v. Lorillard Tobacco* and
> *Kananian v. Asbestos Defendants*, No. 311064 (Superior Court of
> California, County of San Francisco)

These discovery requests directed to ELS give new meaning to the term "wild goose chase." More specifically, ELS had no direct involvement whatsoever in the Ohio <u>Kananian</u> case that generated some national publicity as the result of factual findings by the trial court judge of multiple and blatant falsehoods on the part of a lawyer in a different law firm. <u>See</u> Order and Opinion of Judge Hanna, Jan. 18, 2007.

Two lawyers and two paralegals from ELS were eventually deposed in the Ohio <u>Kananian</u> case over a period of approximately 4 full business days. <u>See</u> Early Affidavit, at ¶ 10. Despite such exhaustive discovery of the ELS firm in the Ohio <u>Kananian</u> case there was never any court criticism of the ELS firm in that <u>Kananian</u> case, or in any other case involving Harry Kananian or his estate. <u>See</u> <u>Id.</u>.

Some of the media attention generated as the result of Judge Hanna's opinion reference "double dipping. However, as Grace well knows, the fact that a claimant sues multiple asbestos defendants is neither improper nor "double dipping." When any asbestos defendant pays money to resolve an asbestos personal injury lawsuit, that defendant receives a release releasing only it from its several share of the liability and does not release the plaintiffs' claims against anyone else.

As this Court and Grace appreciate, most mesothelioma victims, and indeed most asbestos claimants, are exposed to asbestos fibers from many different defendants' products. The

-23-

medical science is clear that the cumulative dose of asbestos, and each individual dose, contributes to causing mesothelioma. The case law recognizes this, and allows asbestos claimants to recover from multiple defendants as long as there is proof that the exposure to each defendant's products (a) exists and (b) was a substantial contributing factor in causing the disease. See, e.g., Borel v. Fibreboard Paper Prods. Corp., 493 F.2d 1076, 1094-1096 (5th Cir. 1973). Whether or not a given exposure to a given defendant's asbestos products is or is not a substantial factor in causing disease is always a case and fact specific inquiry that is almost always decided only by a jury after hearing the exposure facts and expert testimony.

In short, insofar as any conduct on the part of the ELS firm on behalf of Harry Kananian or his estate, is concerned and even after extensive discovery by counsel for the Lorillard Tobacco Company the matter is, in truth, a classic non-event.

In light of the extensive cooperation between defense counsel in asbestos litigation it is reasonable to assume that Grace already knows that the ELS firm never became the subject of court criticism in any Kananian case. Nonetheless, Grace is now trying to exploit the admittedly extraordinary events described by Judge Hanna in his January 18, 2007 Opinion and Order, into the basis to go off on the proverbial "wild goose chase" after a "red hearing."[5]

Enough already.

---

[5] The information and documents requested by the subpoena regarding claims involving ELS Claimants other than Harry Kananian are equally unjustified and oppressive. These other Claimants are being unfairly singled out for additional, burdensome discovery concerning highly personal information because they are clients of ELS, without any suggestion or evidence of impropriety.

**H.**    **The Grace Subpoena Is Unduly Burdensome**

ELS has submitted original and supplemental Questionnaires for 114 of the claimants identified in the Grace subpoena; 54 of the claimants identified in the Grace subpoena are not now, and have never been, clients of ELS; 18 of the claimants identified in the Grace subpoena are clients referred by ELS to the firm of Brayton, Purcell.  See Early Affidavit, at ¶ 4.  In short, ELS represents in one form or another only 132 of the 186 claimants identified in the Grace subpoena.

Each one of these client files "typically" contains from 1 to 4 "banker's boxes" of documents.  See Id., at ¶6.

The task of reviewing 132 client files, from one to four "banker's boxes" is, of course, enormously burdensome.  See Id., at ¶¶ 7-9.  Moreover, in light of Grace having subpoenaed client files of legal counsel, many of the documents requested are subject to protection under either the attorney-client privileged or the work product doctrine.

The review of all of these files first for responsiveness, and then the logging of documents reasonably believed to be entitled to attorney-client or work product protection, is estimated to require three months.  See Id., at ¶ 7.

Document Request No. 3 is particularly outrageous in terms of burdensome.  This request states in full as follows:

> Any and all communications, including but not limited to email, related to materials submitted to an asbestos trust or asbestos defendant on behalf of each of the Claimants listed on Exhibit 1 of the CD-Rom attached hereto as Attachment B, including but not limited to communications related to exposure data submitted to an asbestos trust or asbestos defendant.

Although Grace's Document Requests 1 and 2 are arguably crafted to be limited to documents "submitted" (Request No. 1) or "provided" (Request No. 2) to third parties, and

-25-

therefore presumably not within the attorney client privilege, this Request No. 3 utterly ignores any such limitation and demands "[a]ny and all communications" that are "related to materials submitted to an asbestos trust or asbestos defendants . . . including . . . communications related to exposure later submitted to an asbestos trust or asbestos defendant."  In short, any internal, lawyer-generated, ELS document that deals with any asbestos trust submission is included within this request, but all of these internal ELS documents will almost certainly be privileged in one form or another, in whole or in part, thereby requiring substantial time and effort – and burden – to list on a privilege log.

Compounding the burden of dealing with Grace's six document requests is the independent burden imposed by Grace's four Fed. R. Civ. P. 30(b)(6) witness designations.

## V.    **CONCLUSION**

For the foregoing reasons, Early, Ludwick & Sweeney, LLC respectfully requests that the

Court issue a Protective Order that the discovery sought by Grace in its subpoena "not be had."

Dated:  April 3, 2007                    MONTGOMERY, MCCRACKEN, WALKER &
                                         RHOADS, LLP

                                         By:_____/s/ Noel C. Burnham_____
                                              Noel C. Burnham, Esquire (DE 3483)
                                              Natalie D. Ramsey, Esquire (PA only)
                                              Leonard A. Busby, Esquire (PA only)
                                              300 Delaware Avenue, Suite 750
                                              Wilmington, DE 19801
                                              (302) 504-7800
                                              (302) 504-7820 (facsimile)

                                         and

                                         123 South Broad Street
                                         Philadelphia, PA 19109
                                         (215) 772-1500
                                         (215) 772-7620 (facsimile)


                                             and


                                         SWEENEY & GRIFFEN
                                         William J. Sweeney (CT only)
                                         One Liberty Square
                                         New Britain, Ct 06051
                                         860-827-6453
                                         860-225-0626 (facsimile)
                                         Attorneys for the ELS

2171769v1