## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Related to Docket No. 14929 |
| | ) | Hrg. Date: April 13, 2007 |
| | ) | 9:00 a.m. EDT |
| | ) | |

**RESPONSE OF FIRMS REPRESENTED BY STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA IN OPPOSITION TO GRACE'S MOTION TO
COMPEL COMPLIANCE WITH SUPPLEMENTAL ORDER REGARDING
MOTIONS TO COMPEL CLAIMANTS TO RESPOND TO THE
W.R. GRACE & CO. ASBESTOS PERSONAL INJURY QUESTIONNAIRE**

On March 21, 2007, Debtors W.R. Grace & Co., *et al.*, (collectively,

"Grace") filed their "Motion to Compel Compliance with Supplemental Order

Regarding Motions to Compel Claimants to Respond to the W.R. Grace & Co.

Asbestos Personal Injury Questionnaire" (the "Motion", Dkt. No. 14929)

against 23 law firms representing personal injury claimants against Grace

whose injuries resulted from exposure to toxic asbestos.  By the Motion,

Grace seeks to compel these firms to produce documents bearing on

consultations with medical professionals that their personal injury claimant

clients may have had and also to furnish privilege logs describing documents

relating to these consultations that are being withheld from production.[1]

---

[1]    The 23 firms are listed in footnote 2 of the Motion.

Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, represents 9 of these 23 law firms (such 9 firms being referenced to herein collectively as the "Firms").  This response in opposition to the Motion is respectfully submitted on behalf of all the Firms.[2]

## I.    AS TO THE SIX FIRMS NOT APPEALING FROM THE COURT'S RULING ON THE SCOPE OF THE CONSULTING EXPERT PRIVILEGE, THE MOTION IS MOOT.

As to the 6 Firms that are not appealing the Court's ruling on the scope of the consulting expert privilege under by FED. R. CIV. P. 26(b)(4)(B),[3] the Motion is, or soon will be, moot.[4]  Counsel understands that all or most of these 6 Firms have already produced, or will have produced prior to the April 13, 2007, hearing with respect to the Motion, all documents as to which production is sought to be compelled by the Motion.[5]  Contrary to Grace's irresponsible assertion, the Firms are not "flouting" this Court's orders, but have complied or are in the process of doing so quickly.  Accordingly, as to those 6 firms the Motion is essentially moot and no order is necessary.

---

[2]    The Firms are Baron & Budd, P.C.; Foster & Sear, L.L.P.; The Law Offices of Peter G. Angelos, A Professional Corporation; LeBlanc & Waddell, LLP; Provost & Umphrey, L.L.P.; Reaud, Morgan & Quinn, L.L.P.; Silber Pearlman LLP; Weitz & Luxenberg P.C.; and Williams Bailey Law Firm L.L.P.

[3]    Rule 26(b)(4)(B) applies to bankruptcy adversary proceedings and, unless otherwise directed by a bankruptcy court, contested matters.  FED. R. BANKR. P. 7026, 9014.

[4]    The 6 Firms not appealing the subject ruling are Foster & Sear, L.L.P.; The Law Offices of Peter G. Angelos, A Professional Corporation; Provost & Umphrey, L.L.P.; Reaud, Morgan & Quinn, L.L.P.; Weitz & Luxenberg P.C.; and Williams Bailey Law Firm L.L.P.

[5]    To the extent any of the 6 Firms may be unable to complete production prior to April 13, it is anticipated that they will produce so much as is feasible prior to the hearing and complete the production with dispatch soon thereafter.

As set forth below, the other 3 Firms that are appealing (Baron &
Budd, P.C., LeBlanc & Waddell, LLP, and Silber Pearlman LLP; collectively,
the "Appellate Firms") continue to withhold documents the production of
which would moot their appeal.  Intending no disrespect for this Court, these
3 Firms seek only to exercise their lawful prerogative to appeal from a
collateral order of the Court with which they disagree.

## II. HAVING JUST ACKNOWLEDGED THAT IT IS OVERWHELMED WITH AND INCAPABLE OF MAKING USE OF DISCOVERY ALREADY OBTAINED, GRACE IS HARD-PRESSED TO EXPLAIN TO THE COURT WHY FURTHER DISCOVERY SHOULD BE COMPELLED.

Notwithstanding the imminent mootness of the Motion as to most of
the Firms, it bears noting that Grace, in a paper filed March 26, 2007,[6]
makes a dramatic but not too surprising acknowledgement:  it is
overwhelmed with information produced in response to its once vaunted and
now increasingly discredited claimant questionnaires.  In light of this
acknowledgement, the propriety of Grace requesting (or seeking to compel)
any further questionnaire-related discovery is legitimately open to question.
Grace's own words tell the story:

> … To date, Rust has received approximately 3.8
> million pages of attachments accompanying
> Questionnaires for approximately 100,000 Claimants.
> To properly capture the data from all such attachments
> requires analyzing each attachment to determine the
> question or questions for which it is being submitted and

---

[6]    W.R. Grace & Co.'s Response to Emergency Motion of the Official Committee of Asbestos
Personal Injury Claimants and David T. Austern[,] the Court Appointed Legal
Representative for Future Asbestos Personal Injury Claimants[,] to Compel Production of
Complete Navigable Database (the "Acknowledgement", Dkt. No. 14973).

then correlating each piece of substantive information with its corresponding database field. Such a task would require Grace to hire highly-trained personnel with experience coding legal and medical documents. …

But even if Grace were to hire such highly-trained medical and legal personnel, the time it would take to code all such documents could be years. For instance, as part of work undertaken at the direction of its estimation experts, Grace, using an outside vendor, has coded a sample of approximately 2,000 Questionnaire responses and their attachments. That work took 2 months and is still ongoing, as supplemental materials also must be coded. At that rate and given the approximately 100,000 Questionnaires that have been submitted to date, *it would take an estimated* 8 years to **code all information contained in all attachments submitted in connection with the Claimants' Questionnaire responses** … .

Acknowledgement at 9 (emphasis added).[7]

Grace's acknowledgement (for the first time, albeit tacitly) of the enormous burden associated with the questionnaire process must not be swept under the rug. The Court may recall Grace's initial Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire (Dkt. No. 12823). There, Grace touted the questionnaire for its "streamlined" virtue (12) and accused claimants of "exacerbating" rather than "alleviating" the associated burden (14). It would

---

[7]   Having gotten so much – apparently, too much – of what it has already demanded, Grace's plaintive candor brings to mind the wisdom of Mother Teresa, who observed that "[m]ore tears are shed over answered prayers than unanswered ones."[7]   *See* Quotations Book, http://quotationsbook.com/quote/31967/ (last visited March 30, 2007). The secularized formulation of her proverb is rather more pointed: "Be careful what you wish for, it might come true." *See* Oxymoronica, Grand Oxymoronic Themes, http://oxymoronica.com/themes/becarerfulwhat.shtml (last visited March 30, 2007).

appear that Grace is now grudgingly coming to terms with the reality that its questionnaire is not streamlined at all and the undertaking of compiling and assimilating data on more than 100,000 people into a useful format is, as the Firms have been saying all along, extremely burdensome.

Grace will undoubtedly blame asbestos claimants for the "8 years" of work that lay before it.  Grace's acknowledgement, however, is tantamount to a concession that, had claimants responded to the questionnaire as Grace intended, it would have taken claimants and their counsel, in the aggregate, 8 years to pull all the information Grace was demanding of them together. Grace cannot accentuate its own burden now without conceding the huge burden it sought, and still seeks, to shift to claimants – a burden that properly rests with Grace as the proponent of the questionnaire.[8]

In any event, almost two years after Grace inaugurated the claimant questionnaire process, the Court and parties in interest are informed that Grace's own experts have directed coding the information from only a sample – and a small one, at that – of the questionnaires received.  The notion of using a mere sample was roundly denounced as heresy by Grace's counsel in open court on *February 26, 2007 – barely a month prior to Grace's Acknowledgement.*  Now, it seems, limited analysis of a sample of

---

[8]    The Firms are not suggesting that Grace's acknowledgment that it cannot handle the discovery it has already received relieves the Firms from their obligation to comply with applicable discovery orders already entered by the Court, subject, of course, to appellate prerogatives.  However, to the extent that Grace is arguing that it needs production of more material to properly prepare its case for the forthcoming estimation proceeding, its position is entirely undercut by its inability to make use of the information it already has sought and obtained.

questionnaires is not just being entertained – it is being done as a practical

necessity.[9]

More generally, Grace itself casts doubt on the legitimacy of its

pending efforts to compel still more in the way of questionnaire-related

information, most recently by way of the Motion. How, one may fairly ask, is

"the just, speedy, and inexpensive determination"[10] of this case to be

furthered by more discovery when Grace is telling the Court it will need *8

years* to digest the information already in its possession?

"[N]o one's interests are served by needless or wasteful discovery."

*Lakehead Pipe Line Co., Inc. v. Inv. Advisors, Inc.*, 900 F. Supp. 234, 237 (D.

Minn. 1995); *see also Madrid v. Chronicle Books*, 209 F. Supp. 2d 1227, 1234

(D. Wyo. 2002) (disapproving of "pointless" discovery). This is perhaps doubly

so in the context of chapter 11, where waste hinders creditors' recoveries and

undermines or delays the reorganization process.

> Although the court concedes that counsel have the
> responsibility to make determinations of the significance
> and importance of discovery documents in the first

---

[9]    At the February 2007 omnibus, Mr. Bernick had this to say:

> The last time we actually had this kind of broad argument about what
> was enough was back in November of last year, and at that time the same
> kind of argument was made which is, Well, they've got enough. They [*i.e.*,
> Grace] can just do a sample or something like that. ***You can't create an
> unbiased sample after the fact. This was never set up to be a sampling
> process.*** This was set up to be a process to get the information from ***all***
> the claimants so we wouldn't have disputes about sampling methodology.

Dkt. No. 14760 at 30-31 (emphasis added).

[10]    Fed. R. Bankr. P. 1001.

> instance, the court nevertheless retains substantial responsibility to control and limit wasteful and useless discovery.

*In re Braniff, Inc.*, 153 B.R. 941, 945 (Bankr. M.D. Fla. 1993); *see also Jones v. Goord*, No. 95 CIV. 8026 (GEL), 2002 WL 1007614, * at 13 (S.D.N.Y. May, 16, 2002) ("… plaintiffs can only be characterized as demanding a huge volume of sensitive data, in a form that may or may not be usable for any productive purpose, on the vague hope that it will prove useful when subjected to future massage by unspecified experts.").

Grace's continuing demands for still more information must be considered in the context of Grace's acknowledged incapacity to utilize, on anything approaching a timely basis, that with which it has already been provided. A litigant's demonstrably gluttonous appetite for discovery cannot be left unchecked. In *Wappler v. Brevard*, No. 4:05-CV-90, 2007 WL 162282, at *1 (W.D. Mich. Jan. 16, 2007), the Court aptly stated:

> … Plaintiff challenges the Magistrate Judge's discretionary denial of his requests for leave to obtain additional discovery from Defendants Tucker and Dale Hulbert. … Plaintiff has already obtained much discovery and the parameters of such discovery is a matter best left to the sound discretion of the Magistrate Judge. ***This was an appropriate instance of applying judicial scrutiny to prevent excessive discovery where substantial discovery has already been provided.***

(emphasis added).

## III. Grace Has Affection for Neither Rule 26(b)(4)(B) nor the Plaintiffs' Bar.

The Motion, however, is more than just a largely mooted demand for further discovery.  It is an expression of Grace's continuing dissatisfaction with Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure, which is itself bound up in Grace's perennial diatribe against the plaintiff's bar generally. Grace is still piqued that some asbestos claimants had, in its view, the temerity to assert "a ***purported*** 'consulting expert privilege'" (Motion 2, emphasis added) even though there is nothing purported at all about the protections afforded by Rule 26(b)(4)(B).[11]

The Court's substantive ruling on the application of Rule 26(b)(4)(B) to questionnaire-related issues is embodied in the "Supplemental Order Regarding Motions to Compel Claimants to Respond to the W.R. Grace & Co. Asbestos Personal Injury Questionnaire" (the "Supplemental Order", Dkt. No. 14150, entered December 22, 2006).  There, in the context of ruling on Grace's first wave of questionnaire-related motions to compel, the Court pointedly found that exceptional circumstances – Grace's *only* avenue for discovering facts known and opinions held by claimants' consulting experts – did not exist.  Supplemental Order ¶ 1 ("Debtors have not demonstrated the

---

[11]    Rule 26(b)(4)(B) provides as follows:

> A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial ***only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.***

(emphasis added).

existence of exceptional circumstances which justify taking discovery of Consulting Experts at this time.").[12]

Grace's complaint about "plaintiff's counsel's continuing pattern of abusing the invocation of privilege" is thus colored by Grace's stubborn refusal to accept that the "purported consulting expert privilege" is real – not "purported." Derived from the rules of civil procedure, the consulting expert privilege has consequential application in this case not to Grace's liking – regardless of the eventual disposition of the Appellate Firms' appeal.

From its topical focus on the consulting expert privilege, the Motion devolves into yet another over-the-top Grace refrain against the plaintiffs' bar:

- "By failing to comply with the Court's Order, by wrongfully withholding documents and by failing to articulate any justification for that refusal, the plaintiffs' law firms have openly flouted a duly-entered order of this Court." Motion 1.

- "… the failure to comply is part of plaintiffs' counsel's continuing pattern of abusing the invocation of privilege in a concerted effort … ." Motion 2.

- "While the Claimants present the B-reading data as unequivocally supporting their claims, they are simultaneously concealing and improperly

---

[12]    The Court's later "Order on Certain Asbestos Claimants' Firms' Motion to Alter or Amend Supplemental Order Regarding Motions to Compel Claimants to Respond to the W.R. Grace & Co. Asbestos Personal Injury Questionnaire Pursuant to FED. R. BANKR. P. 9023 and Alternative Request for Entry of a Protective Order" (Dkt. No. 14763, entered of record on March 6, 2007), left its earlier finding of no exceptional circumstances undisturbed.

> withholding inconsistent or conflicting B-Reads … ."
> Motion 8.

- "The failure to provide [privilege] logs contributes to
  additional and excessive delay by plaintiffs' law
  firms whose clear and unwavering goal has been to
  run out the clock and to prevent Grace from
  obtaining the discovery its experts need in aid of
  their estimation analysis."  Motion 13.

In the face of this overblown rhetoric, Grace's penchant for hyperbole
must be borne in mind.  In late January 2007, for example, Grace filed an
expedited motion with the Court claiming that asbestos personal injury
claimants had "substantially failed to comply with the [O]rder [Regarding X-
Ray Evidence]."[13]  Dkt. No. 14441 at 1.  To the contrary, asbestos claimants
generally *had complied* with the order in question[14] – just not in the manner
that Grace preferred.  Neither at the hearing on Grace's expedited motion nor
on any occasion since has the Court found there to have been *any* non-
compliance with the Order Regarding X-Ray Evidence despite Grace's
outspoken (and flatly wrong) insistence that non-compliance had been
substantial and widespread.[15]

---

[13]  Grace even titled its motion "Expedited Motion to Modify Order Regarding Production of
X-Rays Based on Substantial Non-Compliance with Order."  Dkt. No. 14441.

[14]  Order Regarding X-Ray Evidence, Dkt. No. 14148.

[15]  As recited in the Supplemental Order Regarding Production of X-Rays By Non-
Mesothelioma Cancer Claimants (Dkt. No. 14608, entered of record on February 20,
2007), "[t]he Court declined [at the February 5, 2007 hearing on Grace's expedited
motion] to find non-compliance with the [Order Regarding X-Ray Evidence] on the part of
any person or entity."  For all the clamor about "substantial non-compliance", Grace was
crying "wolf" and knew it at the time.

Another instance of Grace's flexible approach to facts can be seen in its mischaracterization, in the Motion, of recent proceedings before the Court.  In a footnote, Grace asserts that "the plaintiffs' law firms unsuccessfully attempted to interfere with the ability of Grace to obtain testimony and documents from another screening doctor" simply by raising a concern that the doctor in question could be subject to HIPPA's confidentiality mandates. Motion 6, n.6.    Grace denounces objections raised by the Asbestos Committee and Baron & Budd, P.C. (one of the Appellate Firms) as "pos[ing] no valid basis for withholding the documents and testimony at issue." *Id.* at 6-7.  Nevertheless, the Court *did* direct Grace to redraft its proposed order to address these objections.[16]

**IV.    APART FROM THE APPELLATE FIRMS, THE FIRMS ON WHOSE BEHALF THIS RESPONSE IN OPPOSITION IS FILED ARE NOT WITHHOLDING DOCUMENTS THAT THE SUPPLEMENTAL ORDER DIRECTS BE PRODUCED.**

---

[16]    At the relevant hearing, Baron & Budd clarified its limited objection, stating that it had "the most difficulty with … the fact that [Grace was] seeking an order from the Court which seeks the Court's blessing on the legal conclusion that a person in Dr. Lucas' position, a person who is doing diagnostic tests and providing physician services, is not even covered by HIPAA, simply because it's related to litigation."  Omnibus Hr'g Tr. 18, Feb. 20, 2007 (Dkt. No. 14647).  Stating that "I don't know whether he is or isn't covered, but I don't think I need to go that far", the Court held that it would only issue an order that "protects the rights as HIPAA requires that prohibits the parties from using or disclosing this protective health information for purposes other than this litigation, and that requires either the return or the destruction of the documents at the end of the litigation."  *Id.*   The Court then ordered the Debtor to modify its proposed order accordingly, and "run it by" Baron & Budd's *(continued on the following page)* … *(continued from the prior page)* … counsel when it had done so before submitting the order to the Court.  *Id.* at 25.  This is a far cry from Grace's insistence that Baron & Budd and the Committee had officiously intermeddled.

The language with respect to which Grace now asks the Court to compel compliance is italicized in the following excerpt from the Supplemental Order:

> The facts known or opinions held by experts who were retained or specially employed in anticipation of litigation or preparation of trial and who are not expected to testify at trial ("[C]onsulting Experts") are not discoverable. Debtors have not demonstrated the existence of exceptional circumstances which justify taking discovery of Consulting Experts at this time. *However, the Court finds that physicians, B-Readers, or other medial [sic] professionals who first "screened" a Claimant (that is, prior to the time that any other diagnosis of an asbestos-related disease or injury was sought or known) are not Consulting Experts. Further, physicians, B-Readers and other medical professionals who examined a Claimant prior to the time an attorney-client relationship was established between the Claimant and the lawyer or law firm which asserts the privilege are not Consulting Experts.* As to any information requested regarding those who are not Consulting Experts, no privilege applies and the responsive information with regard to such professionals shall be provided by Claimants. Consulting Experts are those solicited by the lawyer/law firm regarding a specific Claimant or that Claimant's medical documents after the lawyer/law firm had formed an attorney-client relationship with the specific Claimant. The privilege applies to Consulting Experts who are not identified as testifying experts and will be abrogated if, as and when said Consulting Expert is identified as a testifying expert.

Dkt. No. 14150 ¶ 1 (emphasis added).  Although the Court subsequently signed an order altering or amending the Supplemental Order, the alterations and amendments did not touch upon the language quote above.[17]

    With a broad brush that does not differentiate among the 23 firms who are respondents to the Motion, Grace complains that documents required to be produced by the quoted language have not been produced and that privilege logs have not been furnished with respect to documents that have been withheld from production:  "plaintiffs' law firms have still failed to produce *those documents* and even refuse to provide logs describing what documents they are withholding."  Motion 1 (emphasis added).  "*Those documents*" presumably encompass materials that might have been generated by either of two categories of medical consultants:  (i) those who examined a claimant "prior to the time that any other diagnosis of an asbestos-related disease or injury was sought or known"; and (ii) those who examined a claimant before an attorney-client relationship was established between the claimant and the law firm asserting the privilege.  As the excerpt quoted above reflects, the Court held that these two categories of consultants were not "Consulting Experts" capable of triggering the applicability of FED. R. CIV. P. 26(b)(4)(B).

---

[17]  Order on Certain Asbestos Claimants' Firms' Motion to Alter or Amend Supplemental Order Regarding Motions to Compel Claimants to Respond to the W.R. Grace & Co. Asbestos Personal Injury Questionnaire Pursuant to Fed. R. Bankr. P. 9023, and Alternative Request for Entry of a Protective Order ("Order Altering or Amending Supplemental Order"), Dkt. No. 14763, entered of record March 6, 2007.

A.    <u>The Appellate Firms</u>.

As noted, the Appellate Firms continue to withhold documents generated by consultants who examined a claimant "prior to the time that any other diagnosis of an asbestos-related disease or injury was sought or known."[18] This is hardly surprising nor is it "openly flout[ing] a duly-entered order of this Court" (Motion 1), as the Appellate Firms filed their Notice of Appeal with respect to that portion of the Supplemental Order (and the Order Altering or Amending the Supplemental Order) on March 19, 2007. Dkt. No. 14901. Production of the documents the Appellate Firms are withholding would effectively moot their appeal. Cognizant of this, the Appellate Firms have appropriately moved for a stay of the orders from which appeal is being taken.[19] Dkt. No. 14908.

---

[18]  However, documents falling within the second category of "those documents" (*i.e.*, those generated by medical professionals who examined a claimant before an attorney-client relationship was established between the claimant and one of the Appellate Firms) are not being withheld. The Appellate Firms' appeal does not extend to that aspect of this Court's ruling.

[19]  In the Motion, Grace cites *Professional Securities Corp. v. National Royal Corp.*, Civ. A. No. 90-3951, 1991 WL 276072, at *4 (E.D. Pa. Dec. 20, 1991), where the court held a party in contempt and assessed sanctions for its unexplained and unjustified failure to comply with an order on a motion to compel. Here, both the explanation and justification for partial non-compliance are self-evident. Grace even concedes, as it must, that three plaintiffs' firms – presumably the Appellate Firms – have sought a stay or allowance for delay by bringing a motion. Motion 7. The Appellate Firms have appealed and contemporaneously sought a stay pending their appeal, a hearing as to which is pending. There had been no appeal concerning the propriety of discovery sought in *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 914 F. Supp. 1172 (E.D. Pa. 1996), another case relied upon by Grace. Subpoenas and orders compelling compliance therewith had simply been ignored, prompting the imposition of sanctions against the lawyer on whose advice and direction they were ignored. Litigants' forthright availment of appellate procedures can hardly be equated with the "intentional, inexcusable" conduct sanctioned in *Massachusetts School of Law*. *Id.* at 1179.

-14-

Grace is dismissive of the appeal, expressing in a footnote its mistaken view that the appeal "was inappropriate because the [Supplemental] Order, as a discovery order, is non-final and, therefore, not appealable as a matter of right." Motion 3, n.3. Although the Supplemental Order and the Order Altering or Amending the Supplemental Order are discovery orders, both are appealable as a matter of right based on the collateral order doctrine. *Kelly v. Ford Motor Co. (In re Ford Motor Co.)*, 110 F.3d 954, 958 (3d Cir. 1997); *see also Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 649 (B.A.P. 1st Cir. 1998).

Under that doctrine, which the Supreme Court enunciated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), a party may seek review of an interlocutory order if

> (1) the order from which the appellant appeals conclusively determines the disputed question; (2) the order resolves an important issue that is completely separate from the merits of the dispute; and (3) the order is effectively unreviewable on appeal from a final judgment.

*In re Ford Motor Co.*, 110 F.3d at 958 (citing *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 860 (3d Cir. 1994)). The Third Circuit recognizes that discovery orders compelling production of privileged material fall within the collateral order doctrine and are immediately reviewable. *Id.* at 963. Review of such orders is permitted because an appeal after final judgment could not remedy the damage "occasioned by erroneous disclosure of protected materials." *Id.*

-15-

B.    <u>The Other Firms</u>

Apart from the Appellate Firms' reasoned withholding of documents that would moot their appeal, Grace does not know that any of the Firms have withheld documents the production of which is called for by the Supplemental Order.  In fact, as noted, counsel understands that prior to the hearing on the Motion such documents will have been produced to the extent that they have not already been produced.

Grace has no evidentiary basis for its naked, one-size-fits-all, generalized allegations.  *See Cannon v. Cherry Hill Toyota, Inc.*, 190 F.R.D. 147, 155 (D.N.J. 1999) (court accepting of counsel's "word as an officer of the [c]ourt" that counsel had communicated a settlement offer to his client, notwithstanding adversary's "naked allegations" to the contrary).[20] Effectively conceding the conjectural nature of its allegation that the Firms (other than the Appellate Firms) have withheld documents, Grace interposes

---

[20]  Grace apparently included the firm of Reaud, Morgan & Quinn, L.L.P. ("RMQ") – one of the Firms – as a respondent with respect to the Motion based on RMQ's February 27, 2007, letter declining Grace's tardy request that it supply a privilege log.  Motion 4 & Exh. 3.    Grace's decision to seek relief from RMQ is particularly suspect.    The Supplemental Order resulted from proceedings on Grace's initial wave of questionnaire-related motions to compel directed to specific claimants' firms.    This initial wave consisted of nine "firm specific" motions to compel that Grace filed on November 9-10, 2006.  Dkt. Nos. 13619-13622 & 13624-13628.  By *none* of these motions did Grace seek any relief from RMQ.  It is therefore procedurally improper for Grace to seek relief against RMQ via the Motion, which seeks, in essence, to compel compliance with an order on prior motions to compel that were not asserted against RMQ.  Nevertheless, as stated above, RMQ has, or will have by the time this matter is heard, fully complied with the Supplemental Order and produced all items required thereunder.   (There are actually only two (2) claimants represented by RMQ who have items to produce as a result of the Supplemental Order.)

a demand that claimants' firms furnish Grace with privilege logs of all

documents being withheld:

> While there is no one-size-fits-all rule for what must be
> contained in privilege log, here, the Court should require
> sufficient    information    to    determine    whether    the
> withheld    documents    must    be    produced    under    the
> [Supplemental] Order.

Motion 11.

## V.    PRIVILEGE LOGS ARE NOT REQUIRED OF THE FIRMS.

There are a number of problems with Grace's very recent insistence

that the Firms provide it with privilege logs.[21]    First is the improvised nature

of the claimant questionnaire.    Grace concedes that the questionnaire "… is a

hybrid form of discovery, part fact interrogatory, part contention

interrogatory, part document request, and part deposition by written

question."[22]    Grace included extensive, irrefutably burdensome instructions

with its questionnaire, but not once is a privilege log even mentioned, let

alone required.    Indeed, counsel for the Firms has undertaken a review of the

voluminous record in this case, including transcripts of the myriad omnibus

---

[21]    Grace's demand is predicated on Fed. R. Civ. P. 26(b)(5), which provides:

> When a party withholds information otherwise discoverable under these
> rules by claiming that it is privileged or subject to protection as trial
> preparation material, the party shall make the claim expressly and shall
> describe the nature of the documents, communications, or things not
> produced or disclosed in a manner that, without revealing information
> itself privileged or protected, will enable other parties to assess the
> applicability of the privilege or protection.

[22]    Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace
Asbestos Personal Injury Questionnaire (Dkt. No. 12823) 13.

hearings where issues relating to Grace's questionnaire were raised and discussed.  From that search, counsel found not a *single* reference to any demand or expectation on the part of Grace that claimants submit a privilege log along with their questionnaire responses.

Indeed, it appears that Grace did not indicate any desire for (or expectation of) a privilege log until February 22, 2007.  That was when its counsel, Ms. Barbara Mack Harding, sent form letters to claimants' firms (including the Firms) that read, in part, as follows:

> Within 30 days of receiving this letter, please provide a log, listing all B-Reads regarding claimants you represent that you continue to withhold from production on the grounds of privilege.  If you object to providing such a log, please notify us within seven days of receiving this letter.

February 22, 2007, is a little late in the day to be asking for a privilege log – another burdensome undertaking in connection with a questionnaire process unprecedented for its burdensomeness.[23]  Grace attempts to whitewash its own inattention to the issue of privilege logs with empty rhetoric, asserting incorrectly that "… plaintiffs' law firms have repeatedly refused to provide a proper privilege log to enable Grace and the courts to evaluate the substance

---

[23]  Grace persists in its nearly total indifference to the burden of its evolving questionnaire. In the Motion, Grace suggests that the Court require plaintiffs' law firms to order the production of documents being withheld and require that "sufficiently-detailed privilege logs describing **each and every** document being with held, the grounds for withholding …, and other information sufficient to allow the Court to determine whether the documents are within the scope of the [Supplemental Order]."  Motion 13.  While the Firms maintain that no privilege log is required, a five-day period for formulating one, should the Court disagree, is far outside the bounds of reasonableness, especially considering that Grace did not even ask for logs until late February 2007.

of their claims." Motion 5.  How could the Firms have "repeatedly refused" to

provide logs when Grace did not even request them until late February 2007?

A further problem with Grace's demand for privilege logs is that logs

are not required when documents are withheld pursuant to Rule 26(b)(4)(B).

As stated in *Ludwig v. Pilkington North America, Inc.*, No. 03 C 1086, 2003

WL 22242224, at *3 (N.D. Ill. Sept. 29, 2003):

> Where documents are withheld under a claim that they
> are exempt from discovery altogether under Rule
> 26(b)(4)(B), there is no express requirement that a
> privilege log be produced.  *See, e.g., Ager v. Jane C.
> Stormont Hospital & Training School for Nurses*, 622
> F.2d 496, 502 (10th Cir. 1980).  Thus, plaintiffs'
> contention that [the] non-testifying expert information is
> subject to disclosure on a privilege log under Rule
> 26(b)(5) is simply incorrect.

(citing both the Advisory Comm. Notes accompanying Rule 26(b)(4)(B) and

*Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd. P'ship*, 154 F.R.D. 202,

208 (N.D. Ind. 1993)).  As the *Ludwig* court explains, "non-testifying expert

information is entirely exempt from discovery not on the basis of privilege

but, rather, on the basis of unfairness."  *Id.* (*citing Hartford Fire Ins. Co.*, 154

F.R.D. at 207).  The consulting expert privilege is thus more analogous to the
work product exemption than, say, the attorney-client privilege.[24]

The court's reasoning in *Netjumper Software, L.L.C. v. Google, Inc.*,
No. M19-138, 04-70366CV, 2005 WL 3046271 (S.D.N.Y. Nov. 10, 2005),
undermines Grace's insistence that it is entitled to privilege logs pursuant to
Rule 26(b)(5).  There, the court found that a Mr. Polish was a non-testifying
expert for Netjumper subject to Rule 26(b)(4)(B)'s protections.  *Id.* at *3.
Google – like Grace – had made no showing of exceptional circumstances,
thereby foreclosing it from "discovery of facts known or opinions held by
Polish while he was retained."  *Id.*  The court acknowledged that Rule
45(d)(2) governing subpoenas and a local rule did "require a party asserting
privilege to provide a description of the nature of withheld documents and
communications", but rejected Google's argument that Netjumper's failure to
produce a privilege log constituted a waiver of the privilege:  "As discovery
from Polish is not permitted under Rule 26(b)(4)(B), an analysis of the nature
of each withheld Polish document is unnecessary."  *Id.; see also Vincent v.
Mortman*, No 3:04 CV 491(JBA), 2006 WL 2349448, at *2,  n.4 (D. Conn. Aug.
11, 2006) (agreeing with the *Netjumper* court that failure to produce a log of

---

[24] "Protection for work product is not absolute, more accurately being described as a
'limited immunity' rather than a privilege, because disclosure may be ordered on a
showing of substantial need for the materials."  *Harper v. Auto-Owners Ins. Co.*, 138
F.R.D. 655, 658-59 (S.D. Ind. 1991) (internal citations omitted).  Similarly, disclosure of
matters subject to protection under FED. R. CIV. P. 26(b)(4)(B) may be ordered upon a
showing of exceptional circumstances.

discovery not permitted under Rule 26(b)(4) did not effect a waiver of the privilege).

**CONCLUSION**

For the foregoing reasons, the firms of Foster & Sear, L.L.P.; The Law Offices of Peter G. Angelos, A Professional Corporation; Provost & Umphrey, L.L.P.; Reaud, Morgan & Quinn, L.L.P.; Weitz & Luxenberg P.C.; and Williams Bailey Law Firm L.L.P., respectfully pray that Grace's Motion to Compel Compliance with Supplemental Order Regarding Motions to Compel Claimants to Respond to the W.R. Grace & Co. Asbestos Personal Injury Questionnaire be denied as moot on the issue of further production. The firms of Baron & Budd, P.C., LeBlanc & Waddell, LLP, and Silber Pearlman LLP, respectfully pray that the Motion be denied as to them so that their appeal may proceed without being mooted. Finally, all the Firms pray that Grace's demand for privilege logs be denied.

Dated: April 6, 2007

Sander L. Esserman
Van J. Hooker
David A. Klingler
David J. Parsons
**STUTZMAN, BROMBERG,**
**ESSERMAN & PLIFKA,**
**A Professional Corporation**
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 969-4900
Facsimile:  (214) 969-4999

**COUNSEL FOR VARIOUS FIRMS**
**REPRESENTING ASBESTOS**
**CLAIMANTS**

/s/ Daniel K. Hogan
Daniel K. Hogan (ID no. 2814)
**THE HOGAN FIRM**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone:  (302) 656-7540
Facsimile:   (302) 656-7599
E-mail:  dkhogan@dkhogan.com

**LOCAL COUNSEL FOR VARIOUS
FIRMS REPRESENTING ASBESTOS
CLAIMANTS**