IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | | **Docket No. 14907** |

**RESPONSE TO MOTION OF CERTAIN LAW FIRMS TO EXTEND THE TIME FOR FILING THEIR NOTICE OF APPEAL WITH RESPECT TO THE CONSULTING EXPERT ORDER**

The law firms of Baron & Budd, P.A., Silber Pearlman, LLP, and LeBlanc & Waddell, LLP (collectively, "law firms") have moved for additional time to file an appeal of the Court's March 6, 2007 Consulting Expert Order (Docket No. 14763). As an initial matter, *any* appeal of this Order is improper because it is an appeal of a non-final discovery order.[1] Moreover, the law firms have failed to establish the requisite "excusable neglect" necessary to justify their failure to timely file their notice of appeal. Their inaction and alleged communication failures do not meet the standard for "excusable neglect" under Bankruptcy Rule 8002(c)(2). The law firms are again attempting to duck compliance with the Consulting Expert Order and further delay production of their screening doctors' materials. The Court has ruled that these materials are discoverable and must be produced.

---

[1] Contemporaneously with the instant Motion, the law firms filed a Notice of Appeal. (Docket No. 14901). As discussed more fully in Grace's Response to the law firms' motion to stay discovery pending the resolution of their appeal, there is no appeal of right for a non-final discovery order of the Bankruptcy Court. Thus, the law firms' Notice of Appeal should be stricken as improper or, at most, treated as a motion for leave to appeal.

## ARGUMENT[2]

I. **THE LAW FIRMS HAVE FAILED TO ESTABLISH "EXCUSABLE NEGLECT."**

In order to obtain leave to seek an appeal after the March 16 deadline, the law firms must demonstrate "excusable neglect" for failing to file a timely notice. The law firms claim that their notice was three days late because of "administrative events" that occurred due to two of the firms (but not the third) announcing some layoffs and restructuring efforts on March 5, 2007 -- the day *before* any clock on the law firms' appeal rights began to run. According to the law firms, these administrative events at two firms caused all three firms to fail to communicate to their bankruptcy counsel their desire to appeal the Consulting Expert Order until after the time for such an appeal had expired. The law firms' explanation does not meet the standard for excusable neglect and their motion must be denied.

A. **"Excusable Neglect" Is A High Bar.**

Pursuant to Bankruptcy Rule 8002(c), the Court may grant a request to extend the time to file a notice of appeal after the deadline only upon a showing of "excusable neglect." The Bankruptcy Code and Rules do not define "excusable neglect." However, the Supreme Court, in determining what constitutes "excusable neglect" in the context of Bankruptcy Rule 9006, has ruled that four factors must be considered: (1) the danger of prejudice to the [non-movant], (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *See Pioneer Inv. Serv. Co, v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Most courts, in deciding whether a party demonstrates excusable neglect, put special emphasis on the third factor, "the reason for the delay, including whether it was within

---

[2] For the relevant background, *see* Response to Motion of Certain Law Firms to Stay Compliance with the Consulting Expert Orders, filed contemporaneously with this brief.

DOCS_DE:126413.1

the reasonable control of the movant." *See, e.g., Silvanch v. Celebrity Cruises, Inc.* 333 F.3d 355, 366 (2d Cir. 2003) (quoting *Pioneer*, 507 U.S. at 395).

Courts have strictly limited what sort of attorney error can be considered excusable neglect. *See e.g. 650 Park Ave. Corp. v. McRae*, 836 F.2d 764, 767 (2d Cir. 1988) (holding that excusable neglect "may not be based on common oversight or administrative failure by the would-be [appellant or] appellant's counsel"); *Silvanch, supra* at 363 (holding that lawyer's misplaced reliance on another lawyer's erroneous calculation of the filing deadline did not constitute excusable neglect).[3] A recent decision by the Western District of Pennsylvania is especially instructive. In *Price v. Gen. Cable Indus., Inc.*, 466 F. Supp. 2d 610 (W.D. Pa 2006), plaintiffs moved to appeal the dismissal of their complaint three days after the filing deadline expired, claiming excusable neglect based on the fact that plaintiffs' counsel had attempted to contact plaintiffs within the relevant time period but "'an interruption in Plaintiffs' phone service' prevented any communication until [after the deadline had expired]." *Id.* at 611. The *Price* court concluded that excusable neglect had not been shown.

The *Price* court, among other things, determined that "[d]ue diligence requires that an attorney at least try some alternate method of contact -- mail, for instance -- before deciding that client communications are impossible," and found that counsel's failure to anticipate the deadline and "act accordingly" by seeking an extension prior to the deadline "demonstrates an ignorance of the procedural rules and a thorough -- if not a complete -- lack of diligence." *Id.* at

---

[3] Indeed, counsel for the law firms is well-aware of the importance of complying with appellate deadlines and the high standard required to establish excusable neglect where there is a failure to meet those deadlines. *See* 5/18/06 The Asbestos Personal Injury Plaintiffs' Objection to Travelers' Motion for a One-Day Retroactive Enlargement of the Time Period Set Out in Federal Rule of Appellate Procedure 4(A), *In re Johns-Manville Corp.*, (filed by Stutzman, Bromberg, Esserman & Plifka) (attached as Ex. A); *In re Johns-Manville Corp.*, 2006 WL 1676392 (S.D.N.Y. Jun. 14, 2006) (denying motion for enlargement of time).

612. Despite finding that the plaintiffs' three-day delay was insignificant and further that there was no clear prejudice to the non-movant, the *Price* court held:

> Counsel's unreasonable failure to exercise any degree of control over the situation reflects professional incompetence and a lack of good faith effort toward compliance. Even if the Court did verify the proffered excuse, the proven facts would only confirm Counsel's negligence in foreseeing and forestalling the impending consequences. The Court cannot consider such failure excusable.

*Id.* at 612.

Failures that result from negligence, in other words, do not amount to excusable neglect. *Cf. In re Woskob*, 96 Fed. Appx. 794, 796 (3rd Cir. Mar. 26, 2004) (affirming district court's holding that attorney's miscalculation of appropriate notice of appeal deadline was not excusable neglect); *Fryer v. Enter. Bank*, 2006 WL 3052165, at *5 (W.D. Pa. Oct. 23, 2006) (finding that the plaintiff's "failure to remove correspondence from his own mailbox for several consecutive days [resulting in his not receiving the court's Order], while neglectful, does not constitute excusable neglect"); *In re Am. Metrocomm Corp.*, 328 B.R. 92, 93 (D. Del. 2005) (finding that "a party's failure to receive notice of the entry of an order does not amount to excusable neglect, because a party has an independent duty to keep informed of the progress in his or her case").

**B.    The Law Firms' Explanation For Their Late Filing Does Not Satisfy The High Bar For Excusable Neglect.**

As in *Price*, the law firms' excuse herein reflects "a lack of good faith effort toward compliance." *See* 466 F. Supp. 2d at 612. According to statements attributed to Russell Budd, managing shareholder of Baron & Budd, at the time the restructuring was announced, the reorganization "ha[d] been in the works for the past year or so." *See* Baron & Budd Lays Off 19 Lawyers, 100 Staffers, Pls. Mot. Ex. 2.[4] As a result, there is no reason to believe that Baron &

---

[4] Mr. Budd further explained that the layoffs were the result of a shift in their asbestos litigation practice, to "significantly less volume" in cases. *See* Baron & Budd Lays Off 19 Lawyers, 100 Staffers, Pls. Mot. Ex. 2; *see*

4

Budd and LeBlanc & Waddell were so overwhelmed by the announcement of their long-planned restructuring that it could excuse their failures, as they claim.

Mr. Rich's Declaration demonstrates that, during the period of time allegedly so disruptive it resulted in a missed appeal deadline, (1) the law firms were aware of the Court's 3/6/07 Consulting Expert Order, (2) Mr. Rich considered what action should be taken as a result of that Order; (3) Mr. Rich communicated his recommendations to his superiors; (4) Mr. Rich's recommendation was considered by his superiors; and (5) Mr. Rich communicated to counsel regarding whether the law firms wanted to seek further appeal. *See* 3/19/07 Rich Decl. at ¶ 3. In other words, the law firms appear to have had the time and ability to take every single step needed except for filing a timely notice of appeal. The law firms' negligence on this critical point is not excusable neglect.

The negligence of the law firms' inaction is further underscored by the firms' actual awareness of the Court's decision triggering the need to file an appeal.[5] The Court rejected their motion for reconsideration on January 23, 2007, six weeks before the two law firms' administrative events. Mr. Esserman, on behalf of the three law firms, participated in the January 23rd Hearing, argued the law firms' motion for reconsideration, and heard the Court deny the motion to amend the substance of that Order. As of that date, then, the law firms knew they would need to take further steps to prevail. Of course, the law firms could not actually appeal the Court's January 23, 2007 ruling until the Court's order entered. But whatever

---

*also* Baron & Budd Lays Off 160 Employees, Pls. Mot. Ex. 2 ("David Margulies, a spokesman for the firm, said that the reduction in case load has necessitated the reduction in lawyers and other workers.").

[5] Moreover, the law firms' motion for reconsideration itself showed that the firms already were considering further relief in the event that motion was denied. *See* 1/2/07 Certain Asbestos Claimants' Firms' Mot. to Alter or Amend Supp. Order at 2 (Docket No. 14203) ("Pursuant to Fed. R. Bankr. P. 8002(b)(2), the timely filing of this Motion suspends the running of appellate deadlines with respect to the Order until this Motion (and any other motions of the types described in Rule 8002(b)), are disposed of.").

administrative events may have been taking place, it is clear that the law firms were doing business as usual during this period between the January 23, 2007 ruling and the date when the Court's order entered, as the law firms negotiated with Grace the language of the proposed 3/6/07 Consulting Expert Order, which was filed with the Court on February 16, 2007. But, nothing prevented the law firms from deciding -- and communicating to their counsel -- whether they wanted to appeal the ruling.

Moreover, courts in this Circuit take seriously the distinction between an error of commission and an error of omission. Where the error is one of omission -- resulting from the failure to act in order to diligently pursue or protect the client's rights -- there can be no finding of excusable neglect. *See, e.g., Synalloy Corp. v. Gray*, 831 F. Supp. 351, 353 (D. Del. 1993) ("'There is a qualitative distinction between inadvertence which occurs despite counsel's affirmative efforts to comply and inadvertence which results from counsel's lack of diligence . . . .'" Thus, the court found that "[l]ocal counsel's failure to confer with out-of-state counsel regarding the status of a possible appeal shows a lack of diligence"); *see also James v. City of Jersey City*, 187 F.R.D. 512, 517 (D.N.J. 1999) (finding that the defendant's "failure to answer is not due to mistake, inadvertence, or excusable neglect within the meaning of Rule 60(b)(1). His failure is due to inaction on both his part and the part of his attorney, Ms. DiNardo. This inaction does not constitute excusable neglect."). There can be no doubt that the law firms' error was one of omission under Third Circuit precedent.

### C.    The Schlosser Case Does Not Support The Law Firms' Request.

The law firms rely on *In re Schlosser*, 100 B.R. 348 (S.D. Ohio 1989), for the proposition that "office disruptions can be considered excusable neglect, particularly in combination with other contributing factors." *See* 3/19/07 Law Firms' Mot. at 7 (Docket No. 14907). *In re Schlosser* is inapposite here for several reasons.

First, *Schlosser* concerns a default judgment. In the Third Circuit, there is a "preference that judgment be rendered on the merits rather than by default." *Logan v. Am. Contract Bridge League*, 173 Fed. Appx. 113, 116 (3rd Cir. March 9, 2006). Thus, the *Schlosser* court permitted the filing of an untimely response to debtors' objection to a claim. When a default ruling is not at issue, however, such a preference does not apply. The Third Circuit recognized in *Logan*, cases such as *Schlosser* where a default ruling are at issue "are inapposite here, where the [] Court reached the merits." *Id.*

Second, the law firms have not specified how the administrative changes at two of their offices caused all three firms to miss the filing deadline. Instead, they simply and generally claim that the "internal disruption and upheaval occurring at the time within the three law firms" (although no actual upheaval at Silber Pearlman has been alleged by the law firms) led the firms to assume that an appeal would be filed. In *Schlosser*, by contrast, Society Bank provided detailed information as to how the objection to their claim was misrouted. Neither Baron & Budd nor LeBlanc & Waddell closed any offices, nor have they made any claim (nor could they) that, as a result of their administrative events, they were unaware of the Court's Consulting Expert Order or of the deadline to file a leave to appeal. Moreover, there were no notable administrative events or, as far as they have indicated, anything other than business as usual at Silber Pearlman during this period.

Third, unlike in *Schlosser*, the law firms have not made any claim that the people responsible for handling any appeal were subject to the administrative events at two of the three firms. To the contrary, Mr. Rich has continued to be employed at Baron & Budd throughout the relevant time, as reflected in his Declaration. He makes no claim that any of his "superiors at the three law firms" left their employment during this time. In fact, not a single lawyer from Baron

& Budd or LeBlanc & Waddell who has played a prominent role in this litigation appears to have left their respective firm.[6] And, as noted, Silber Pearlman was not undergoing any type of announced reorganization during this time period, nor have the law firms offered any justification for Silber Pearlman's failure to ensure that the request for leave to appeal was filed in a timely manner.

Clearly, none of the "other contributing factors" that were present in *Schlosser* and that have been cited and relied upon by the law firms as support for their request actually exist in this case. The law firms had the time, the opportunity, and the means to anticipate and avoid any temporary internal communication problems that *may* have resulted from the reorganizations of Baron & Budd and of LeBlanc & Waddell. The law firms have demonstrated no efforts on their part to act in a reasonably diligent manner, nor have they identified *any* steps taken by *any of them or their counsel* to remedy any communication problems that were occurring and that were preventing them from reaching a final decision regarding whether to seek leave to appeal.

## II.  GRACE IS SEVERELY PREJUDICED BY ANY FURTHER DELAY IN THE LAW FIRMS' COMPLIANCE WITH THE COURT'S ORDERS.

Contrary to the law firms' claim, Grace has been, and continues to be, severely prejudiced by the law firms' ongoing refusal to produce materials created by their screening doctors, as ordered by this Court. Grace has been seeking the production of screening doctors' materials relating to its Claimants for well over two years. This information is vital to its

---

[6] A review of the service lists, pleadings, PIQ's correspondence, and 2019 Statements shows the following Baron & Budd attorneys to have played an active role in this litigation: Alan B. Rich; Natalie Duncan; Russell W. Budd; and Christina Mancuso. *See* 2002 Service List; W.R. Grace PI Questionnaire of E. King; 11/27/06 Aff. of N. Duncan. According to Baron & Budd's website, all four attorneys continue to be employed at that firm. *See* http://www.baronandbudd.com. Similarly, a review of the record in this case shows the following LeBlanc & Waddell attorneys to have played an active role in this litigation: Jena LeBlanc Duncan; and J. Burton LeBlanc, IV. *See* 3/16/07 Amended Statement of LeBlanc & Waddell (Docket No. 14874); 1/11/07 Letter re Production of X-rays. According to LeBlanc & Waddell's website, both attorneys continue to be employed at that firm. *See* http://www.leblancwaddell.com.

experts' analyses and to the preparation of its estimation. The Court has agreed that these materials are discoverable and has ordered their production *multiple times*. Yet, as of the April 2, 2007 Omnibus Hearing -- barely a month before Grace's expert reports are due -- the law firms had not produced a single document responsive to the Court's Consulting Expert Orders.[7]

After multiple rounds of objections, motions, and Court Hearings on the question of what, if any, materials produced by the Claimants' screening doctors would be produced, the matter was settled: the Court determined that such materials were not covered by any consulting expert privilege, and the Court rejected the law firms' motion for reconsideration of its decision. And, no timely appeal nor motion for leave to appeal was filed.

Grace has suffered significant prejudice from the delays in producing these materials. The law firms have vigorously opposed their production over the course of the last two years. The time has come to end this dispute. The law firms have offered no reasonable explanation for their failure to seek leave to appeal in a timely fashion, and Grace continues to suffer significant delay from their refusal to produce these materials. The motion for an extension of time should be denied.

## CONCLUSION

For the foregoing reasons, Debtors respectfully request that the Court deny the law firms' request for an extension of time to file their request for leave to appeal and order that they comply with the 12/22/06 and 3/6/07 Consulting Expert Orders immediately.

---

[7] On April 4, 2007, Baron & Budd submitted additional documents for 52 Claimants. Upon an initial review of those documents, none appear to be documents required to be produced under the terms of the Consulting Expert Orders.

9

Wilmington, Delaware
Dated: April 6, 2007

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000


KIRKLAND & ELLIS LLP
Barbara M. Harding
David Mendelson
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:   (202) 879-5000
Facsimile:    (202) 879-5200

*and*

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

10