IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**Docket No. 14908**

## RESPONSE TO MOTION OF CERTAIN LAW FIRMS TO STAY COMPLIANCE WITH THE CONSULTING EXPERT ORDERS

Certain law firms -- Baron & Budd, P.A., Silber Pearlman, LLP, and LeBlanc & Waddell, LLP (collectively, "law firms") -- improperly seek an interlocutory appeal of this Court's December 22, 2006 and March 6, 2007 discovery orders regarding the production of documents related to asbestos screening. At the same time, they have moved for a stay pending interlocutory appeal. Such a stay would be equally improper.

Because the appeal is procedurally improper, no stay "pending appeal" should issue. And, even if the appeal were not procedurally infirm, the law firms have not met the requirements for a stay.

The bottom line is this: More than three months ago, the Court ruled that the screening doctors' evaluations of the Grace Claimants are discoverable and should be produced. In hearing after hearing, and ruling after ruling, the Court has consistently ordered the production of these documents. This latest motion is just part of the continuing effort to delay production. The law has not changed. The facts have not changed. The Court's interpretation of the law and its findings of fact have been -- and continue to be -- correct. There are simply no grounds for a stay, and the motion must be denied.

## BACKGROUND

The Court first ordered plaintiffs' law firms to produce *all* medical documents that supported or contradicted the Claimants' asbestos-related disease diagnoses in August 2005 when it approved the W.R. Grace Asbestos Personal Injury Questionnaire. *See* W.R. Grace Asbestos Personal Injury Questionnaire at iv ("[T]his Questionnaire must be accompanied by copies ... of any and all documents ... that (a) support or conflict with your diagnosis ...."); 7/19/05 Hr'g Tr. at 218.

When the Questionnaire Order was reopened in 2006, many Claimants objected and withheld documents based on a "consulting expert privilege." After extensive briefing, the Court overruled Claimants' objection in part, specifically finding that:

- "[P]hysicians, B-Readers, or other medical [sic] professionals who first 'screened' a Claimant (that is, prior to the time that any other diagnosis of an asbestos-related disease or injury was sought or known) are not Consulting Experts;"

- "[P]hysicians, B-Readers and other medical professionals who examined a Claimant prior to the time an attorney-client relationship was established between the Claimant and the lawyer or law firm which asserts the privilege are not Consulting Experts;" and,

- "As to any information requested regarding those who are not Consulting Experts, *no privilege applies* and the responsive information with regard to such professionals *shall be provided* by Claimants."

*See* 12/22/06 Consulting Expert Order at ¶ 1 (Docket No. 14150) (emphasis added).

Rather than comply with the Court's clear order, certain plaintiffs' law firms moved for reconsideration (despite not meeting the proper legal standard for doing so). *See* 1/2/07 Motion to Alter or Amend Consulting Expert Order (Docket No. 14203). On January 23, 2007, the Court denied the law firms' motion for reconsideration, but agreed that documents produced pursuant to the Consulting Expert Order would be kept confidential by the parties, their consultants and experts and not used for purposes outside the Bankruptcy:

DOCS_DE:126412.1

With respect to the issue as to how the law firms conduct their business, the motion for reconsideration asks me to amend the paragraph to say that the consultant privilege applies not just to the fact of an attorney retaining a consultant after there is an attorney/client privilege established but also substantially contemporaneously with an attorney/client privilege being substantiated. Frankly, I think that is simply -- I think it's unlawful. I don't mean in a criminal sense, I just don't see how you can have a consultant privilege apply until you have an attorney/client privilege. You can't be consulting with respect to litigation until you have a client and know that you're intending to pursue some litigation. So you can't have a consultant privilege apply until you have an attorney/client privilege, and that can't be a substantially contemporaneous event. You have to have a client first. ***So, I am not going to make that amendment because I don't think, as a matter of law, that I can make that amendment ....***

See, I think the problem is that at the time that you first consult the doctor, see the doctor, at that point you don't -- the anticipation of litigation itself is contingent. It's not just the litigation that's contingent, it's the anticipation of litigation that's contingent, because you don't even know the underlying operative facts to determine whether or not you can anticipate litigation. I don't see how you can have a consulting privilege that applies until you anticipate litigation. You can't anticipate litigation until you know the facts. You don't have the facts because you don't have the diagnosis. ***And that's the basis for my ruling. So, for those reasons, I don't see a basis to amend the order except to add the limitation with respect to the use that Mr. Esserman has required.*** So I do expect that the use is only for purposes of this case, and I will amend the order to that respect.

1/23/07 Hr'g Tr. at 89-90, 92-93 (emphasis added). At the hearing, the parties agreed to submit a joint proposed order setting forth the terms of the Court's ruling. *Id.* at 93.

The parties jointly submitted the proposed order on February 16, 2007, *see* Order on Motion to Alter or Amend Consulting Expert Order (Docket No. 14589), and that Order was entered on March 6, 2007. *See* 3/6/07 Order on Certain Asbestos Claimants' Firms' Motion to Alter or Amend Supplemental Order Regarding Motions to Compel Claimants to Respond to the W.R. Grace & Co. Asbestos Personal Injury Questionnaire Pursuant to Fed. R. Bankr. P. 9023, and Alternative Request for Entry of a Protective Order ("3/6/07 Consulting Expert Order") (Docket No. 14763).

On March 19, 2007, three days after the deadline to seek further relief from the Court's 3/6/07 Consulting Expert Order had expired, the law firms filed the instant motion to stay

3

discovery pending resolution of their belatedly-filed request for leave to appeal. Through the

omnibus hearing, which was held on April 2, 2007, it appears that no law firm or individual

Claimant had provided any previously-withheld documents responsive to the Court's Consulting

Expert Orders.[1]

## ARGUMENT

### I.    NO STAY IS WARRANTED BECAUSE THE LAW FIRMS' APPEAL IS IMPROPER AND PREMATURE.

The law firms filed an improper interlocutory appeal without leave of Court. Unless and

until a proper appeal is filed, the Court should not even consider a stay of its order.

The trigger to appeal a discovery order is different for a non-party than a party. If, as

they have repeatedly argued, the law firms are not parties to this proceeding, they may not appeal

absent a finding of contempt. If they are treated as parties, they may not appeal without first

requesting and receiving leave of the Court. The law firms have met neither requirement.[2] Their

appeal is thus improper, and any related stay cannot issue.

### A.    If The Law Firms Are Non-Parties To This Estimation, Their Appeal Is Premature And Should Be Dismissed.

Throughout this litigation, the law firms have insisted that they are not parties before the

Court and that they are, instead, interested non-parties.[3] The Court has not necessarily accepted

---

[1]    On April 4, 2007, Baron & Budd submitted supplemental documents for 52 Claimants. However, after an initial review, it does not appear that any of the documents were subject to production pursuant to the Consulting Expert Orders.

[2]    To this day, the law firms have failed to identify *any* individual Claimant who is withholding documents on the basis of the privilege. The law firms' motion does nothing to elucidate this. The Motion for Stay (and the Notice of Appeal) was brought by "Baron & Budd, P.C.," "Silber Pearlman LLP," and "Leblanc & Waddell, LLC," apparently on their own behalf and not on behalf of their clients who would be subject to the Consulting Expert Orders.

[3]    *See* 8/14/06 Joint Response of Various Law Firms Representing Asbestos PI Claimants in Opposition to Debtor's Motion to Compel Asbestos PI Claimants to Respond to the W.R. Grace Asbestos PI Questionnaire (Docket No. 12960) (filed by the law firms and arguing that Grace's motion to compel "clos[es] its eyes tightly to the fact that the Claimants *are not 'parties'* to Grace's chapter 11 case in the sense that properly served

4

this characterization.[4] Nevertheless, non-parties may not appeal a discovery order unless they *first* are held in contempt by the original court for failure to comply with the discovery order. *See In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 88 (3rd Cir. 2002) ("In several instances we have held nonparty witnesses must be held in contempt before seeking appellate review.") *Id.* Accordingly, "[n]onparties challenging discovery orders requiring the production of documents allegedly protected by the attorney-work-product doctrine must stand in contempt. Because [the appellants] have failed to do so, [the court has] no jurisdiction to consider their appeals." *Id.* at 90. Thus, unless and until a contempt order has issued, the appeal is premature and no stay can even be considered by this Court.

**B.      If the Law Firms are Parties to this Estimation, then Their Notice of Appeal is Incomplete and Fails to Seek Leave to Appeal.**

Even if the law firms are treated as parties, they have failed to meet the plain requirements for seeking interlocutory review.  The rules require that with the interlocutory notice of appeal, the party seeking to appeal must file "(1) a statement of the facts necessary to an understanding of the questions to be presented by the appeal; (2) a statement of those questions and of the relief sought; (3) a statement of the reasons why an appeal should be granted; and (4) a copy of the judgment, order, or decree complained of and of any opinion or memorandum relating thereto." *See* Fed. Bankr. R. 8003(a).

The law firms have not filed any such motion.  Nor does their Motion for Stay or Notice of Appeal contain adequate allegations to be treated as a request for leave to appeal the Court's

---

defendants would be parties to an ordinary civil lawsuit") (emphasis added); *see also* 6/19/06 Hr'g Tr. at 38 ([Mr. Inselbuch]: "every claimant out in the world is not subject to this Court *other than as a third-party witness*.") (emphasis added).

4      *See* 6/19/06 Hr'g Tr. at 50 ("There is an allegation that [the Claimants] are, in quotes, 'third-party witnesses.' I don't see them as third-party witnesses.").

DOCS_DE:126412.1

interlocutory order. In short, they have not complied with the appropriate Rules and their Notice

of Appeal is improper.[5]

## II.    EVEN IF THE LAW FIRMS' APPEAL WERE ALLOWED TO PROCEED, THEY HAVE NOT ESTABLISHED GROUNDS FOR A STAY OF THE COURT'S ORDERS.

For a stay of discovery pending appeal, the law firms must demonstrate: (1) a strong

likelihood of success on the merits; (2) irreparable harm would result from the Court denying the

stay; (3) there will not be substantial harm to Grace if the stay is granted; and (4) the stay is in

the public interest. *See In re Bankr. Appeal of Allegheny Health, Educ. and Research Found.*,

252 B.R. 309, 321 (W.D. Pa. 1999). The law firms have not carried this burden.

### A.    The Law Firms Do Not Have a Strong Likelihood of Success on the Merits.

The Court's Consulting Expert Orders were soundly reasoned and supported by law.

Nevertheless, the law firms offer two arguments they believe ultimately will be successful on

appeal. First, the law firms argue that the Court incorrectly held that the initial diagnosis of a

disease cannot, by definition, be in anticipation of litigation. *See* Law Firms' Motion at 7.

Second, the law firms argue that the consulting expert privilege is not limited to any specific

litigation but applies to all litigation. *Id.* at 7-8. These arguments misread the relevant case law

as well as the Court's own ruling.

### 1.    The Court Correctly Determined That Asbestos Screenings Are Not Conducted In "Anticipation Of Litigation."

The law does not permit all medical evaluations (such as screenings) to be cloaked in the

privilege without regard to when they occurred. The Court made a number of factual findings

that supported its holding that the screenings at which the Claimants were initially diagnosed

---

5    Should the Court choose to treat the law firms' Notice of Appeal as a motion for leave to appeal and require no further briefing from them, Grace respectfully requests that it be given an opportunity to file a response to that Notice of Appeal. And if the Court considers whether interlocutory review is proper without first allowing additional briefing by Grace, the request for leave to appeal should be denied for the reasons outlined herein.

6

with an asbestos-related disease are not conducted "in anticipation of litigation." First, the Court

found that the screenings serve a diagnostic purpose and are not conducted *solely* for purposes of

litigation. *See* 12/5/06 Hr'g Tr. at 138 ("If somebody has seen a client, for 'diagnostic purposes'

... I don't see how there is a consulting privilege."); 12/19/06 Hr'g Tr. at 18 ("[M]y concern was

that the initial opportunity for the [Claimant] to try to find out whether the [Claimant] even has a

medical condition at all was not subject to a consultant privilege.")  Second, the Court found that

the Claimant has no "prospect of litigation" until he or she has been diagnosed with an asbestos-

related disease.  As the Court explained:

> I think the problem is that at the time that you first consult the doctor, see the
> doctor, at that point you don't -- the anticipation of litigation itself is contingent.
> It's not just the litigation that's contingent, it's the anticipation of litigation that's
> contingent, because you don't even know the underlying operative facts to
> determine whether or not you can anticipate litigation.  I don't see how you can
> have a consulting privilege that applies until you anticipate litigation. *You can't
> anticipate litigation until you know the facts.  You don't have the facts because
> you don't have the diagnosis.*

1/23/07 Hr'g Tr. at 92-93 (emphasis added).

The law firms nevertheless argue that the Court made an error of law because

"anticipation of litigation" exists whenever there is any "prospect of litigation," no matter how

remote.  Law Firms' Motion at 7-8.  In other words, the very doctors who, in the first instance,

will examine that individual (or his or her x-ray or PFT results) to determine *whether* that person

has any injury is *already* a consulting expert who has been specially retained for the purpose of

preparing that individual's lawsuit.  They take this position despite the fact that the individual, in

a screening, is one among hundreds whose x-rays and PFTs are being reviewed by a screening

doctor to see if he or she has a medical condition that might warrant a lawsuit.

Unlike the law firms' argument, the Court's holding is supported by well-established law.

For documents to be prepared "in anticipation of litigation," the purpose of the creation of those

documents must be solely to litigate, not to determine whether they have a disease. *See In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 184 (D.N.J. 2003) ("[The Third] Circuit has imposed an additional requirement beyond that embodied in the reasonable anticipation test. Thus, the second prong of the test is whether the material [was] produced because of the prospect of litigation and *for no other purpose*.") (citations omitted) (emphasis added); *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 483 (E.D. Pa. 2005) (same); *United States v. Ernstoff*, 183 F.R.D. 148, 156 (D.N.J. 1998) (same); *Paris v. R.P. Scherer Corp.*, 2006 WL 1982876 at * 3 (D.N.J. Jul. 13, 2006) ("A document that was prepared for other reasons that becomes useful for litigation *does not meet the 'prepared primarily for litigation' standard*.") (emphasis added) (*quoting Ernstoff*, 183 F.R.D. at 156).

Further, it is simply not the case that the consulting expert protection applies so long as litigation was a glimmer in the eyes of a Claimant when he or she first saw a doctor. *See Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983) (citations omitted) (holding that the party seeking to assert privilege fails to meet its burden of showing work was performed "in anticipation of litigation" unless it can show "that at the very least some articulable claim, likely to lead to litigation, [has] arisen"); *see also Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 235 F.R.D. 703, 705 (M.D. Fla. 2006) (finding alleged consultant "was not retained or specially employed in anticipation of litigation before August 2002 as [Plaintiffs] had no knowledge of a potential claim *until that date*") (emphasis added); *Ernstoff*, 183 F.R.D. 156 ("[A]n investigative or evaluative report shown to have been produced for litigation purposes *when the prospect of litigation is determined to be remote* is not work product.") (emphasis added) (citations omitted). For that reason, "[t]he mere fact that litigation does eventually ensue does not, by itself, cloak materials" with the imprimatur of being prepared "in anticipation of

8

litigation." *Hollinger Int'l v. Hollinger, Inc.*, 230 F.R.D. 508, 512 (N.D. Ill. 2005) (citations omitted). The determination of when and whether a claim has arisen such that there is an anticipation of litigation is question of fact. *See In re Gabapentin Patent Litig.*, 214 F.R.D. at 183.

In fact, the very case law cited by the law firms, which they misquote, flatly contradicts their position and supports the Court's ruling, when read in full. In *Hercules*, which is featured prominently in the law firms' motion, the Court found that in order for there to be an "anticipation of litigation," the "prospect of litigation [must be] identifiable because of *specific claims that have already arisen.*" *Hercules Inc. v. Exxon Corp.*, 434 F. Supp. 136, 151 (D. Del. 1977) (emphasis added); *see also In re Gabapentin*, 214 F.R.D. at 184 ("[T]he articulable claim likely to lead to litigation must pertain to this particular [defendant], not the world in general.") (citations omitted). Obviously no claim could have arisen prior to a Claimant's diagnosis, as the Court correctly found as a matter of fact.

### 2. The Court's Ruling Recognizes That The Law Firms Have Not Met Their Burden To Show that the Consulting Expert Privilege Applies.

The law firms argue that "Rule 26(b)(4)(B) does not limit itself to any specific litigation, but instead protects the work of consulting experts 'retained by a party in anticipation of any litigation.'" Law Firms' Mot. at 8 (quoting *Shipes v. BIC Corp.*, 154 F.R.D. 301, 309 (M.D. Ga. 1994)). This is not a controversial proposition, nor one that Grace disputes. But this is a "straw man." The Court placed no such limitation on the application of the privilege. The Court merely found that the law firms had not established the existence of the privilege in the first instance. *See* 1/23/07 Hr'g Tr. at 89.

Throughout the litigation, the law firms have refused to make the specific showing of privilege required under the relevant case law, instead relying on general blanket statements

9

DOCS_DE:126412.1

regarding the privilege. *See, e.g.,* 11/27/06 Aff. of N. Duncan at ¶ 2 (Baron & Budd) (***"In many***

***if not all*** of our cases pending in the tort system … medical professionals have been retained or

specially employed as experts in anticipation of litigation or preparation for trial.") (emphasis

added).[6] That is not sufficient. *See In re Gabapentin Patent Litig.,* 214 F.R.D. at 187 ("[T]he

party asserting the privilege bears the burden of establishing those facts that are the essential

elements of the privileged relationship."). The Court's ruling correctly rejects the law firms'

unsupported characterizations as insufficient to meet the law firms' burden of establishing both

the requisite attorney-client relationship and the status of their screening doctors as consulting

experts under Rule 26(b)(4)(B). *See* 12/5/06 Hr'g Tr. at 137-38 ("[The Court]: I think the title

that the law firm puts on somebody is not determinative …. You can't by virtue of putting a title

on something, say that just because you put that title on it, that that's the fact of what took

place."); *see United States ex rel. Tyson v. Amerigroup Ill., Inc.,* 230 F.R.D. 538, 547 (N.D. Ill.

2005) ("Merely describing someone as 'a non-testifying expert is not enough.").

> In so doing, the Court explained:

> You can't be consulting with respect to litigation until you have a client and know
> that you're intending to pursue some litigation. So you can't have a consultant
> privilege apply until you have an attorney/client privilege, and that can't be a
> substantially contemporaneous event. You have to have a client first.

1/23/07 Hr'g Tr. at 89. The mere fact that the attorneys may have been involved behind the

scenes, recruiting the potential Claimants and paying for the screenings, does not magically

transform these diagnostic screenings into litigation consultations. *See* 12/19/06 Hr'g Tr. at 19

("In many instances, there isn't even an attorney-client relationship at that point in time, so I

can't see how there can be an attorney-consultant relationship when there's no client as to which

---

6    *See also* 11/27/06 Aff. of Jeffrey O'Connell at ¶ 2 (Silber Pearlman) (same); 11/27/06 Aff. of Cameron Waddell
at ¶ 2 (LeBlanc & Waddell) (same).

the attorney can consult at that point."); *see also* 12/5/06 Hr'g Tr. at 124 ("The whole purpose is to determine if a client has a claim, not if the law firm has a client.") [7]

The *Shipes* case relied upon by the law firms -- albeit rejected by the District of Delaware -- is inapposite and, when placed in its proper context, demonstrates that an expert's work may not be protected under Rule 26(b)(4)(B) in the absence of the elements of the privilege being established.[8]  In *Shipes*, the plaintiff sought to discover the work of consulting experts who had been used by the defendant in previous litigation.  The court, relying on the language of Rule 26(b)(4)(B), found that work that had been protected by that Rule in one litigation does not lose the protection in subsequent litigation.  But in the *Shipes* case, there was no question that both in the prior litigation and in the present litigation, counsel had been retained at the time the outside experts whose work was at issue were consulted.  *See Shipes v. Blc Corp.*, 154 F.R.D. 301, 308 (M.D. Ga 1994) ("Shipes does not dispute that BIC's outside experts were retained in anticipation of litigation.").

Critically, the *Shipes* court found that the consulting expert privilege does not apply where the party cannot demonstrate that all elements of the privilege are satisfied.  *Id.*  The *Shipes* court found that the in-house quality assurance manager employed by the defendant was ***not*** a "consulting expert" because the defendant did not demonstrate "that [the] in-house expert ... was specially retained for litigation purposes." *Id.*

---

[7]    Even where the law firm paid for a screening, no consulting expert privilege attaches if there was no pre-existing relationship between the law firm and the client. *See Fernandez v. McDaniel Controls, Inc.*, 1998 WL 840014, at *2 (E.D. La. Dec. 3, 1998) (holding that a consultant must be hired by a "party or agent of a party" for the consulting expert privilege to apply).  Before a client retains counsel, clearly a law firm cannot be an agent of that party.

[8]    Further, the District Court of Delaware has rejected the *Shipes* ruling on the scope of Rule 26(b)(4)(B), finding that the *Shipes* court's holding that the Rule "protects expert opinions in one case from all discovery in any subsequent litigation" is a "broad reading" that is inconsistent with the "more narrow construction adopted by the majority of district courts that have addressed the issue." *Bio-Tech. Gen. Corp. v. Novo Nordisk*, 2003 WL 21057238, at *2 (D. Del. May 7, 2003).

The same is true here. The law firms failed to prove that an attorney-client relationship was in existence *at the time* the doctor saw the Claimant. Thus, the law firms do not have a strong likelihood of success on the merits of their appeal and the stay must be denied.[9]

### B.    The Law Firms Will Suffer No Irreparable Harm Without A Stay.

The law firms claim that providing the documents in question would "moot the appeal and obliterate the rights asserted hereunder" because, "[o]nce the information has been provided, the bell cannot be unrung." Law Firms' Motion at 6. The law firms do not cite a single case or rule to support their argument. Regardless, the Court already has instituted measures to mitigate any harm.

In response to the law firms' Motion for Reconsideration, the Court ordered that "[a]ny information provided pursuant to the Consulting Expert Order may be used by the parties to the proceeding to estimate Grace's liability for pending and future asbestos personal injury claims, their counsel, agents, and experts for use *in connection with this bankruptcy only and may not be used by any person for any other purpose.*" 3/6/07 Consulting Expert Order at 2 (emphasis added). Thus, the documents to be produced are allowed to be used solely by the parties to this litigation and for a limited purpose only; there is no danger that documents produced in compliance with the Consulting Expert Orders will fall into the "public domain." Even if the Court's Orders are overturned on appeal, the materials provided by these law firms pursuant to those Orders would be precluded from further use in this litigation or by Grace's experts, and the materials could not be used outside of this litigation. Thus, there is no need for further steps to

---

[9]   To the extent that a stay of the production of documents is necessary pending appeal, the law firms have offered no justification and cited no authority as to why the production of a privilege log should also be stayed. Grace respectfully requests that, in the event that the Court decide to grant the law firms' motion and stay the production of documents subject to the Consulting Expert Orders, the Court require immediate production of a privilege log that describes the documents being withheld. The most efficient way for the Court to lay to rest any doubt as to whether certain law firms have properly withheld documents as privileged, as they repeatedly claim, is for the Court to evaluate a log describing those documents.

12

be taken to protect the law firms' rights, and there is no need for additional delay in this litigation.

### C.    Grace Will Suffer Significant Harm if a Stay Is Granted.

Grace has been and continues to be severely prejudiced by the law firms' continued refusal to produce materials created by their screening doctors. Grace has been seeking the production of screening doctors' materials relating to its Claimants for almost two years. This information is vital to the preparation of its supplemental non-estimation expert reports and its estimation expert reports, which are due on May 10 and May 17. The Court has agreed that these materials are discoverable and has ordered their production *multiple* times. Yet, barely a month before Grace's expert reports are due, the law firms still have not produced a single document responsive to the Court's Consulting Expert Orders.

While the law firms argue that their materials are a "discrete class of information" and that withholding that information will not "unduly prejudice Grace's participation in its estimation process," *see* Law Firms' Motion at 6, nothing could be further from the truth. The consultant documents are at the heart of the screening debacle and are critical to Grace's core allegation in this estimation -- namely -- that the screening process generated unreliable medical data and evidence. *See* 12/05/06 Hr'g Tr. at 160-72 (describing problems with screening process). The fact that the B-reads cannot be replicated, and indeed often were contradicted by the very doctors relied upon by the plaintiffs, is a critical fact that Grace is seeking to demonstrate in this estimation. The continued withholding of these documents severely prejudices Grace's experts' ability to complete their analyses of the underlying medical evidence in the estimation. The only conceivable result of staying the law firms' compliance with the Court's Consulting Expert Orders will be a further delay of the estimation trial.

13

### D.      A Stay Is Not In The Public Interest.

The law firms claim that a stay is in the public interest because "[s]ociety has an interest in permitting parties to engage consulting experts in preparation for litigation ...." *See* Law Firms' Motion at 9.   While the public interest -- or at least the litigation system -- may be advanced through the use of consulting experts, that is not at issue here.  The Court's Orders do not preclude parties from utilizing consulting experts in preparing litigation matters nor do they find that all documents prepared by so-called "consulting experts" must be disclosed; the Court simply found that under the relevant *factual circumstances* and in certain instances, the law firms' litigation screening doctors were not consulting experts.

Society does not have an interest in facilitating a scheme by which lawyers shop for potential clients by screening, and re-screening, thousands of individuals who have shown no signs of illness and, prior to being sought out by the lawyers, were not anticipating any possibility of litigation.  As has been demonstrated in other cases and as Grace believes will be demonstrated here, this screening process is fatally infected by unreliability and fraud.  No public interest is furthered by protecting the materials generated by that process.  *See Making Sense of Rules of Privilege Under the Structural (IL) Logic of the Federal Rules of Evidence*, 105 Harv. L. Rev. 1339, 1349 (1992) ("[R]elational privileges do not protect communications that further a crime or fraud."); McCormick on Evidence ¶ 95 ("Since the policy of the privilege is that of promoting the administration of justice, it would be a perversion of the privilege to extend it to the client who seeks advice to aid him in carrying out an illegal or fraudulent scheme."); *see also* ABA Model Rules of Professional Conduct, Rule 3.3 (1984) (Claimants' lawyers have a "duty of candor" to the Court, which prohibits them from "offer[ing] evidence that the lawyer knows to be false.").

Thus the law firms cannot establish grounds for a stay of the Court's Consulting Expert

Orders and their request, to the extent even proper, must be denied.

## CONCLUSION

For the foregoing reasons, Debtors respectfully request that the Court deny the law firms'

request for a stay pending their request for appeal and order that they comply with the 12/22/06

and 3/6/07 Consulting Expert Orders immediately.  In the alternative, Grace requests that the law

firms be required to produce a proper privilege log identifying any documents they are

continuing to withhold -- excluding those documents that the law firms would produce under the

Court's Consulting Expert Orders but for their pending appeal -- and specifying the grounds for

their continued assertions of privilege.

Wilmington, Delaware
Dated:  April 6, 2007

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000


KIRKLAND & ELLIS LLP
Barbara M. Harding
David Mendelson
Brian T. Stansbury
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:    (202) 879-5000
Facsimile:    (202) 879-5200

*and*

DOCS_DE:126412.1

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

16