## RECOUPMENT AGREEMENT

**AGREEMENT** dated March 28, 2007, between **COLOWYO COAL COMPANY LP**, a Delaware limited partnership (the "Partnership"), **KENNECOTT COLORADO COAL COMPANY**, a Delaware corporation (the "General Partner"), and **GRACOAL, INC.**, a Delaware corporation, and **GRACOAL II, INC.**, a Delaware corporation (collectively, the "Limited Partners").

A.      The Partnership, the General Partner and the Limited Partners are referred to collectively herein as the "Parties."

B.      Reference is made to the following:

    (i)      Acquisition Agreement dated December 6, 1994 (the "Acquisition Agreement"), among Fresenius Medical Holdings Inc. (then named W. R. Grace & Co.), a New York corporation ("Fresenius"), the Limited Partners, the Partnership, the General Partner and Rio Tinto America Inc. (then named RTZ America, Inc.), a Delaware corporation ("Rio Tinto"), under which the General Partner acquired the general partnership interest in the Partnership.

    (ii)     Trust Indenture dated as of December 6, 1994 (the "Indenture"), among Colowyo Coal Funding Corp., a Delaware corporation, a subsidiary of the Partnership ("Colowyo Funding"), the Partnership and The Chase Manhattan Bank (National Association), as trustee (the "Trustee"), under which $192.8 million of secured bonds (the "Bonds") were issued by Colowyo Funding.

    (iii)    Amended and Restated Agreement of Limited Partnership of Colowyo Coal Company LP entered into as of December 6, 1994 (the "Partnership Agreement"), between the General Partner and the Limited Partners, under which among other things the proceeds of the sale of the general partnership interest in the Partnership and the sale of the Bonds were distributed to the Limited Partners.

C.      Section 2.9 of the Partnership Agreement provides that the General Partner shall make capital calls on the Limited Partners not to exceed $150,000 per year to fund the Agent's Expenses and the Company Expenses (as such terms are defined in the Indenture).

D.      Section 6.5 of the Partnership Agreement provides that the General Partner shall distribute from time to time the amounts required to be distributed to

the Limited Partners pursuant to the terms of the Price Participation (as such term is defined in the Partnership Agreement).

E.    Section 11.3(a)(iii) of the Acquisition Agreement provides among other things that Fresenius and the Limited Partners shall jointly and severally indemnify Rio Tinto, the General Partners, the Partnership and the other Divested Companies, and the other members of the Purchaser Group against any Damages which are caused by or arising out of a final determination by any Governmental Authority that royalties, rentals, severance taxes or similar items, including any interest or penalties due in connection therewith, are due from the Partnership or Colowyo for the sale of coal prior to January 1, 1994, from any properties covered by any federal or state coal lease held by the Limited Partnership or its predecessors in interest. Capitalized terms used in the preceding sentence but not otherwise defined in this Agreement are used in this Agreement with the definitions given them in the Acquisition Agreement.

F.    The Limited Partners are debtors and debtors in possession in *In re: W. R. Grace & Co., et al., Debtors*, Chapter 11 Case No. 01-01139 (JKF) (Jointly Administered) (the "Proceedings") in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

The Parties agree as follows:

1.    **Representations and Warranties**

1.1    The Partnership and the General Partner hereby represent and warrant to the Limited Partners as follows:

(a)    The Limited Partners owe the Partnership $654,402.97 for Agents' Expenses and Company Expenses under Section 2.9 of the Partnership Agreement through December 31, 2006 (the "Accrued Partnership Expenses").

(b)    In connection with the transactions financed by the Bonds, the Limited Partners have an indemnity obligation to the Partnership under Section 11.3(a)(iii) of the Acquisition Agreement in connection with the transactions financed by the Bonds in the amount of $63,292.18 (the "Indemnity Expenses").

(c)    The Partnership owes the Limited Partners $1,391,041 for calendar year 2005 under Section 6.5 of the Limited Partnership Agreement pursuant to the terms of the Price Participation (the "Accrued Participation Obligations").

2.    **Recoupment; Payment of Accrued Participation Balance**

(a)    The Partnership will recoup the Accrued Partnership Expenses and the Indemnity Expenses against the Accrued Participation Obligations (the "Recoupment"), and after giving effect to the Recoupment, the Partnership will

owe the Limited Partners in respect of the Accrued Participation Obligations the sum of $673,345.85 (the "Net Coal Payment").

(b)    As soon as practicable after the execution of this Agreement, the Limited Partners shall file notice of the Recoupment (the "Notice") with the Bankruptcy Court under the "negative notice" provisions applicable in the Proceedings. The Recoupment shall become effective upon the first to occur of (i) the expiration of the three days after the submission by the Debtors to the Court of a certificate of no objection with respect to the Notice or (ii) action by the Court authorizing the Recoupment.    As soon as practicable after the effectiveness of the Recoupment, the Partnership shall pay the Net Coal Payment to the Limited Partners by wire transfer in immediately available funds to:  J.P. Morgan Chase Bank, ABA: 021 000 021, Account No.: 016001257, Account Name: W. R. Grace & Co.-Conn.

(c)    Simultaneously with the execution and delivery of this Agreement, the General Partner is also executing and providing to the Limited Partners the attached withdrawal of claims, whereby proofs of claim numbers 9491, 9492 and 7760 shall be withdrawn. The General Partner and the Partnership represent and warrant to the Limited Partners that no other proof of claim has been filed in the Proceedings by any of their affiliates.   The Limited Partners shall hold the executed withdrawal and upon the effectiveness of the Recoupment, shall file the withdrawal with the Bankruptcy Court and instruct their claims agent to mark the claims register to reflect such withdrawal.

3.    **Termination**

If the Recoupment does not become effective by June 30, 2007, any Party may terminate this Agreement by notice to the other Parties. In the event of such termination, the Limited Partners shall return the withdrawal of claims to the General Partner.

4.    **Miscellaneous**

(a)    **Survival; Indemnity.**    The representations and warranties contained in this Agreement shall survive the completion of the transaction contemplated hereby and the execution and delivery of this Agreement and any other instruments or documents delivered pursuant hereto or in connection herewith. Each Party shall indemnify and hold harmless the other Parties (each indemnifying Party being an "Indemnitor") from and against any and all losses, claims, damages, liabilities and expenses, including (but without limiting the generality of the foregoing) reasonable attorneys' fees and other legal expenses (collectively, "Losses") arising from or out of or with respect to the breach of any representation, warranty, covenant or agreement of the Indemnitor contained in this Agreement.

(b) **Entire Agreement**.    This Agreement supersedes all prior agreements, arrangements and understandings relating hereto. No representation, promise, inducement or statement of intention relating to the transactions contemplated by this Agreement has been made by any Party or any related person which is not set forth in this Agreement.

(c) **Governing Law**.    This Agreement shall be interpreted in accordance with the laws of Delaware, without application of any rule of law that would result in the application of the law of any other jurisdiction.

(d) **Successors and Assigns; Assignment**. This Agreement will be binding and inure to the benefit of the Parties and their respective successors and permitted assigns. No Party may assign this Agreement or any rights or obligations hereunder without the prior written consent of the other Parties.

(e) **Amendments and Waivers**.    This Agreement may be amended, superseded or canceled, and any of the terms hereof may be waived, only by a written instrument specifically referring to this Agreement and specifically stating that it amends, supersedes or cancels this Agreement or waives any of its terms, executed by the Parties. Failure of any Party to insist upon strict compliance with any of the terms of this Agreement in one or more instances shall not be deemed to be a waiver of its rights to insist upon such compliance in the future, or upon compliance with other terms hereof.

(f) **Counterparts**.   This Agreement may be executed in two or more counterparts, each of which counterparts may be signed by one or more parties. Each such counterpart shall be an original, but all such counterparts shall constitute but one agreement.

<p style="text-align:center"><strong>&lt;Signature Page to Follow&gt;</strong></p>

**IN WITNESS WHEREOF,** the Parties have executed this Agreement as of the date first above written.

**COLOWYO COAL COMPANY LP**
By: KENNECOTT COLORADO
   COAL COMPANY
   General Partner

By:_____
   Michael Barrett
   Chief Financial Officer
**KENNECOTT COLORADO
COAL COMPANY**

By:_____
   Michael Barrett
   Chief Financial Officer

Legal Review
MDT

**GRACOAL, INC.**

By:_____
   Robert M. Tarola
   Vice President and Treasurer

**GRACOAL II, INC.**

By:_____
   Robert M. Tarola
   Vice President and Treasurer