# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: Docket No. 15089** |

## SPEIGHTS & RUNYAN'S RESPONSE TO DEBTORS' EMERGENCY MOTION TO QUASH SPEIGHTS & RUNYAN SUBPOENA OF DEPOSITION OF DR. ARTHUR LANGER AND REQUEST FOR EXPEDITED HEARING THEREON

Speights & Runyan ("S&R"), hereby responds to the Debtors' Emergency Motion to Quash Speights & Runyan Subpoena of Deposition of Dr. Arthur Langer and Request for Expedited Hearing Thereon ("Motion"), filed on April 4, 2007 (D.I. 15089) as follows:

### I. STATEMENT OF FACTS

1.    On Monday, March 26, 2007, S&R served the Debtors with a Notice of Deposition of Arthur M. Langer, Ph.D. [TAB A]. The Notice scheduled Dr. Langer's deposition at the office of the Debtors' counsel in New York City on Thursday, April 5, 2007. The Notice also provided that, "The witness is required to bring with him and produce any and all documents, writings, data and other information as referred to in the attached list, Exhibit A." Specifically, Exhibit A requested Dr. Langer to produce the following documents:

- Documents reflecting any communication of any kind and nature between the deponent and W.R. Grace or the Safe Buildings Alliance.

- Documents reflecting any work funded in whole or in part, directly or indirectly, by W.R. Grace or the Safe Buildings Alliance.

- Documents relating to any review or attempted review of data relating to asbestos exposure or the incidence of asbestos-related disease in Russia, including, but not limited to, draft reports, notes,

070412111947.doc

underlying data, correspondence, progress memos and time and billing records.

2.      On Saturday, March 31, 2007, at 2:00 p.m., S&R effectuated service of a Subpoena on Dr. Langer requiring his attendance and the production of documents as set forth in the Notice of Deposition. [TAB B].

3.      On Monday, April 2, 2007, the Debtors informed S&R that:

> We are in receipt of the Notice of Deposition of Arthur Langer that you filed last week. As you are aware, W.R. Grace has not designated Dr. Langer as an expert witness in these bankruptcy cases, nor to our knowledge has anyone else. We accordingly will not be producing Dr. Langer for deposition. [TAB C].

4.      On Tuesday, April 3, 2007, at 10:04 a.m., S&R wrote the Debtors as follows:

> In regard to your letter, I have served Dr. Langer with a subpoena requiring his attendance. I took the liberty of scheduling the deposition at your New York office. Please let me know if this is a problem. Also, I am not wedded to this date if it is inconvenient for the witness or the Grace Counsel who will be attending. [TAB D].

5.      On Wednesday morning, April 4, 2007, S&R telephoned one of the Debtors' counsel and inquired as to the person who would be covering the deposition. The Debtors' counsel stated that she did not know, and S&R requested that information so that it could discuss the deposition with that person.

6.      On Wednesday, April 4, 2007, at 1:10 p.m., S&R wrote the Debtors as follows:

> You have not responded to my email of a day or two ago asking if I could take Langer at your office. When I telephoned you this morning and told you I needed to talk with the person who is covering this deposition, you said you didn't know. I requested that you email the identity of that person but I have not heard back from you. [TAB E].

7.      On Wednesday, April 4, 2007, at 1:34 p.m., the Debtors informed S&R that:

> You evidently served a subpoena on Dr. Langer at some point within the past few days or last week. However, you did not serve a copy of the Subpoena to Grace, and therefore, the Subpoena, and the request for a deposition tomorrow, is defective.

Because you did not serve a copy of the subpoena to Grace, neither Grace nor Kirkland nor Reid Smith knew of the subpoena until two days ago. This, obviously, is insufficient notice for a deposition tomorrow.

Because you have never served a copy of the subpoena to Grace, the Langer deposition will not be proceeding tomorrow. This is a courtesy email notification to you. You will also receive a letter via facsimile and email from me, and Grace will be filing a motion to quash the deposition.

To be clear: Because of your defective subpoena, there will be no Langer deposition tomorrow. [TAB F].

8.  On Wednesday, April 4, 2007, at 1:40 p.m., S&R wrote the Debtors as follows:

I understand that the deponent will not appear tomorrow. I also assume you will have a meet and confer before you file your motion. [TAB G].

9.  On Wednesday, April 4, 2007, at 1:40 p.m., the Debtors responded as follows:

You did not have a meet and confer with us before you filed your privilege log motion (and yet you represented to the court that you did). [TAB H].

10.  On Wednesday, April 4, 2007, at 1:58 p.m., S&R responded as follows:

We did have a meet and confer. [TAB I].

11.  On Wednesday, April 4, 2007, at 2:21 p.m., the Debtors e-mailed S&R a letter as

follows:

As indicated in an email message to Dan Speights at 12:30 PM central / 1:30 PM eastern time today, the Speights and Runyan firm served a subpoena upon Arthur Langer at some point between March 26 and April 2, but did not serve a copy of that subpoena to Grace, or to its counsel at Kirkland & Ellis LLP or Reed Smith.

The subpoena purported to be for a deposition of Dr. Langer in Pittsburgh on April 5, 2007 at 10:00 AM.[1]

Because of lack of service of the subpoena to Grace and insufficient notice to Grace, as indicated in my email message to Dan Speights, there will be no deposition of Dr. Langer tomorrow.

---

[1] Neither the Notice of Deposition nor the Subpoena scheduled the deposition in Pittsburgh.

> As also indicated in my email message to Dan Speights, Grace will be filing a
> motion to quash. [TAB J].

In addition, in the cover e-mail, the Debtors stated:

> Also, if you believe that you have something to say in the context of a meet and
> confer regarding the Langer deposition, please articulate it in an email to me,
> Doug Cameron and Traci Rea. [TAB K].

On April 4, 2007, at 2:59 p.m., S&R responded as follows:

> Not only is it your obligation to initiate a meet and confer, but I do not believe the
> rules envision a meet and confer by an e-mail exchange.  I will be happy to
> discuss this matter with you anytime this afternoon or tomorrow. [TAB L].

12.    On April 4, 2007, at 5:54 pm, the Debtors served S&R with its Motion. [TAB M].

## II.    THE DEBTORS MISREPRESENT THE HISTORY OF THIS MATTER

13.    The Debtors state that the subpoena was "not served on Dr. Langer until April 2,

2007." Motion at 1.  In fact, the subpoena was served on Dr. Langer on March 31, 2007.  [TAB

B].

14.    The Debtors state that "Dr. Langer has advised counsel for the Debtors that he is

not available on Thursday April 5 for deposition and that he joins with Debtors in opposing the

Speights & Runyan firm's subpoena," and that, "Debtors' counsel informed Speights & Runyan

by email and by facsimile that Dr. Langer's deposition will not proceed tomorrow because of the

defects with respect to the lack of notice and lack of service of the subpoena." Motion at 1, 2.  In

fact, Dr. Langer appeared for his deposition on April 5, 2007, much to the embarrassment of

S&R, who had been informed by the Debtors that, "To be clear:  Because of your defective

subpoena, there will be no Langer deposition tomorrow." [TAB F].  In addition, out of an

abundance of caution, S&R had confirmed with the Debtors that, "I understand that the deponent

will not appear tomorrow." [TAB G].

15.     The Debtors also state that, "Debtors' counsel also asks the Speights & Runyan firm to provide, by way of an email meet and confer, any basis for the deposition," and that "the Speights & Runyan firm has not provided any such basis." Although it was incumbent upon the Debtors to seek a meet and confer before filing the Motion, the statement is obviously disingenuous. S&R, not the Debtors, suggested a meet and confer. [TAB G]. The Debtors then unilaterally told S&R that it had to justify its request by an e-mail. [TAB K].

16.     In response, S&R told the Debtors that it did not believe that the meet and refer requirement could be met by an e-mail exchange. S&R remains of that view, but of course will abide by such a rule in the future if the Court believes that it complies with the Court's repeated admonition to the parties to meet and confer.

### III. THE DEBTORS HAVE FAILED TO MEET THEIR BURDEN OF PROOF

17.     Although Dr. Langer has been listed as an expert witness in asbestos personal injury and property damage litigation for many years, S&R did not notice his deposition as an expert. As reflected in the request for documents in the Notice of Deposition and the Subpoena, S&R is interested in obtaining facts regarding work that Dr. Langer may have done on behalf of the Debtors. Specifically, S&R has been informed that the Debtors may have discussed funding or actually funded work in which Dr. Langer has, at least among other things, looked into the issue of the relationship between chrysotile and mesothelioma. Of course, S&R attempted to discuss this deposition with the Debtors before the Debtors filed their Motion, but the Debtors refused to do so.

18.     The Debtors argue that the Subpoena is procedurally defective because it provided only "four days notice." Motion at 1. In fact, the Debtors had ten days notice of the deposition and the request for documents. Moreover, Dr. Langer had five days notice, and

nowhere has Dr. Langer complained that this notice was insufficient.[2]    In fact, Dr. Langer appeared for the deposition.    Finally, S&R told the Debtors early on that it was not wedded to this date, and attempted for several days to discuss the deposition with the Debtors.

19.    The Debtors next argue that the Subpoena is procedurally defective because "it was not served on Grace."    Rule 916(b)(1) provides that a party only need to send a notice of the Subpoena.    Moreover, Rule 7030 provides that a Notice of Deposition that includes a request for documents need only attach a list of the documents sought.    S&R provided the Debtors with a notice of the documents it was seeking, and later told the Debtors that it had served a Subpoena on Dr. Langer.    The Debtors never requested a copy of the Subpoena.    In addition, S&R was perfectly willing to provide more time for the Debtors or Dr. Langer, and told the Debtors that.

20.    The Debtors next argue that, "Dr. Langer has not been listed by Debtors or, to Debtors' knowledge, by any party to these chapter 11 cases, as a fact or expert witness in this chapter 11 proceeding."    S&R agrees that Dr. Langer has not been listed as an expert witness, and S&R will not seek his opinions at this deposition.    S&R simply seeks discovery from Dr. Langer concerning facts which may be relevant to the so-called lack of hazard issues in this dispute.

21.    The Debtors next argue that, "Dr. Langer has no connection to the Speights & Runyan firm's Asbestos PD claims, or to any Asbestos PD claims."    S&R does not agree with this unfounded representation.    S&R is informed and believes that Dr. Langer either has been requested to perform work paid for in whole or in part by the Debtors, or has actually done such work.    Such work may be relevant to issues in the lack of hazard trial.

---

[2]LBR 7030-1(b) provides that reasonable notice under Rule 30(b) must be at least five days.    S&R complied with this rule, but again was willing to provide more time for the witness and for the Debtors.

22.    The Debtors next argue that, "The Speights & Runyan firm has not made any showing of relevance for Dr. Langer's deposition or the documents demanded to be produced." Of course, S&R does not have the burden of showing relevance in order to take a deposition. Even now that the Debtors have filed a Motion to Quash, the test is not relevance, but whether the Debtors can meet their burden of proof to show that the deposition will not lead to the discovery of relevant evidence. Again, S&R attempted to discuss this matter with the Debtors, but they have refused to do so, both before the Debtors indicated they were going to object to the deposition, and in response to S&R's suggestion that they meet and confer.

23.    Finally, the Debtors argue that S&R has not provided any basis for such a deposition in a meet and confer session. This statement is disingenuous at best. First, it is incumbent upon the party who objects to the discovery to initiate the meet and confer and explain its objection. Second, S&R attempted to discuss this matter with the Debtors before they indicated that they were going to object to the deposition and then requested a meet and confer. In response, all the Debtors finally said was to send them an e-mail and they would consider it.

## CONCLUSION

For the reasons set forth above, the Debtors should be directed to initiate a meet and confer with S&R in an effort to resolve this matter or, in the alternative, to narrow the issues in dispute.

DATED:  April 12, 2007

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE  19801
Telephone:    (302) 654-0248
Facsimile:    (302) 654-0728

- and -

Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed ID No. 6101)
SPEIGHTS & RUNYAN
200 Jackson Avenue, East
Post Office Box 685
Hampton, SC 29924
Telephone:     (803) 943-4444
Facsimile:     (803) 943-4599

*Counsel to Speights & Runyan*

## SUMMARY OF EXHIBITS

EXHIBIT A:  Notice of Deposition of Arthur. M. Langer, PhD filed on March 26, 2007 (D.I. 14979)

EXHIBIT B:  Affidavit of Service of Michael Keating for Subpoena of Arthur M. Langer, PhD dated April 3, 2007

EXHIBIT C:  Letter from Traci Rea, Esquire of Reed Smith, LLP to counsel dated April 2, 2007

EXHIBIT D:  Memorandum from Daniel Speights, Esquire to Traci Rea, Esquire dated April 3, 2007

EXHIBIT E:  Memorandum from Daniel Speights, Esquire to Traci Rea, Esquire dated April 4, 2007

EXHIBIT F:  Memorandum from Lisa Esayian, Esquire to Daniel Speights, Esquire dated April 4, 2007

EXHIBIT G:  Memorandum from Daniel Speights, Esquire to Lisa Esayian, Esquire dated April 4, 2007

EXHIBIT H:  Memorandum from Lisa Esayian, Esquire to Daniel Speights, Esquire dated April 4, 2007

EXHIBIT I:  Memorandum from Daniel Speights, Esquire to Lisa Esayian, Esquire dated April 4, 2007

EXHIBIT J:  Letter from Lisa Esayian, Esquire to Daniel Speights, Esquire and Christopher D. Loizides, Esquire dated April 4, 2007

EXHIBIT K:  Memorandum from Lisa Esayian, Esquire to Daniel Speights, Esquire and Bud Fairey, Esquire dated April 4, 2007

EXHIBIT L:  Memorandum from Daniel Speights, Esquire to Lisa Esayian, Esquire and Bud Fairey, Esquire dated April 4, 2007

EXHIBIT M:  Memorandum from Linda Ellis, Esquire to counsel dated April 4, 2007