## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.* | ) | Case No. 01-01139 (JFK) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket No. 15057** |

## THORNTON & NAUMES' OPPOSITION TO DEBTORS' MOTION REGARDING NONCOMPLIANCE WITH X-RAY ORDER

NOW COME certain asbestos personal injury claimants (each, a "Claimant"), by and through their counsel, Thornton & Naumes, LLP, and hereby oppose the Debtors' Motion regarding noncompliance with x-ray order. As grounds thereof, Claimants simply state that they in fact clearly complied with the terms of the order, and as such should not have been included in Debtors' Motion.

### I.      Claimants Have Provided Certifications for the X-rays Submitted

Debtors Motion correctly states that "under the terms of the Supplemental X-ray Order, counsel for Claimants sending in copies of x-rays to Rust must certify that 'counsel is unaware of any material difference between the copy and the Claimants' original chest x-ray or best available copy of Claimant's chest x-ray. . . no later than March 15, 2007.'" (Debtors' Motion, p. 3).

On February 6, 2007, Claimants' Counsel provided copies of x-rays to Rust Consulting, Inc. for John J. Corcoran, Thomas Horrigan, Frank Tavano, Charles Haefeli, Richard LeBeau, William J. Trainer, Sr., Harold Moan, Alfred Scorzella, Marcus G. Bennett, John F. Sullivan, and Limo Semprini. (Letter from Garrett J. Bradley to Rust Consulting, Inc., February 6, 2007,

attached hereto as **Exhibit A**).  That same day Claimants' counsel sent original certifications for

these claimants to Barbara M. Harding.  (Letter from Garrett J. Bradley to Barbara M. Harding,

February 6, 2007, attached hereto as **Exhibit B**).  As this correspondence came before the

February 20, 2007 X-ray order, the certifications that claimants attached came directly from

Massachusetts General Hospital.  These certifications were finalized after a lengthy review

process with Massachusetts General Hospital's legal department and read:

> The copies of the films that you requested for **Claimant's Name** are true
> reproductions of the images that you sent to Massachusetts General Hospital,
> Department of Radiology, Image Service Center on January 12, 2007 for
> duplication.  (An example is attached as **Exhibit C**).

Similar letters went out to Rust Consulting and Barbara Harding on February 27, 2007

for the following claimants: Daniel Donovan, Rocco DiGregorio, Rita Baglio, Albert Vozzella.

(**Exhibit D**).  The certification for these claimants also came directly from Massachusetts

General Hospital and read either the same as that referred to above or stated:

> I, Allen Flynn am the keeper of Records in the Image Service Center at
> Massachusetts General Hospital.  I hereby certify that the enclosed [CD of films
> or sheets of films] being sent radiologic films, are a true and complete copy of
> originals of those same radiologic films of **Claimant's Name** in the possession of
> the Image Service Center at Massachusetts General Hospital.  I state further that
> these records were made in good faith and are kept in the usual course of
> business.  (An example is attached as **Exhibit E**).

Claimants never heard from Debtors in regards to whether these certifications were acceptable or

not, and as such, on March 13, 2007 to ensure that they were in compliance with the terms of the

Court's X-ray order, Claimants, via counsel, sent certifications for the copies of films already

sent to Rust with additional certifications, reading "I, Garrett J. Bradley, Counsel for the

Plaintiffs, hereby certify that I am unaware that there is any material difference between the

copies sent to Rust Consulting and the original chest x-ray or best available copy of **Claimant's**

**Name**, sent to us by the Claimant and/or the facility requested from."  These additional

certifications were sent on March 13, 2007 via FedEx Priority overnight and arrived on March 14, 2007. (Letter and example certification attached as **Exhibit F**).

Thus, Claimants submitted copies of their x-rays to Rust and, not one, but two, certifications by the March 15, 2007 deadline. Yet, despite this documented history, Thornton & Naumes is listed on Debtors' Exhibit 3 – Firms that Failed to Provide Certifications for the X-rays They Submitted. At best this is an egregious oversight on the part of the Debtors, and at worst it is a blatant misrepresentation to the Court. Either way, the fact that Claimants even needed to oppose this motion is a waste of Claimants, their counsel, and the Court's time and resources. Furthermore, although Claimants timely provided copies and certifications to Rust Consulting, in the unlikely event that there was some delay unbeknownst to counsel in these documents getting to the proper individuals, Claimants received no word of this from either Debtors or Rust Consulting in the two weeks that passed between the deadline and Debtors' Motion. Ultimately, it is in the best interests of all parties that these copies and certifications are produced; therefore, it is disturbing that Debtors are requesting that Claimants not be permitted to introduce any x-ray evidence rather than requesting that this information now be produced. As demonstrated above, however, Claimants have complied with the terms of the order, both in terms of issuing proper certifications and getting these to Rust Consulting in a timely fashion and, therefore, Debtors' Motion should be denied.

## II.    Claimants Should Not be Prejudiced Because Their X-rays are in the Hands of a Third Party

Debtors further argue that "those Claimants whose x-rays are in possession of third parties should be ordered to provide them to Rust immediately or be precluded from presenting x-ray evidence at the estimation proceeding." (Debtors' Motion, p. 5). Debtors further set the arbitrary date of April 20, 2007 for claimants to produce these copies or "after further searching,

conclude that such x-rays no longer exist . . . these Claimants should be precluded from proffering any x-ray evidence at the estimation trial, or providing any x-ray evidence to their experts, that is not produced by April 30, 2007." (Debtor's Motion, p. 6).

Yet, that is simply not what the Court's Supplemental X-ray order states is the proper course of action in this situation.   On March 13, 2007, Claimants sent Rust Consulting certifications for certain Claimants reading: "I, Garrett J. Bradley, Counsel for the Plaintiffs, hereby certify that original chest x-ray film(s) or a copy of the original chest x-ray for **Claimant's Name** have been requested from the facilities listed on the attached spreadsheet and no response has been received as of this date."  (An example is attached as **Exhibit G**). According to the Court's order, in such a situation, "where a Claimant's chest x-ray exists . . . and neither such Claimant nor his or her counsel provides the original . . .the Court will consider, upon expedited motion, how to facilitate Grace's inspection of such chest x-ray and whether to order that such Claimants' chest x-ray be sent to a repository of the Court."  (Supplemental X-ray Order, ¶ 5).  Importantly, in this situation, there is no mention of Claimants having a limited time in which to produce these copies, nor is there any mention of a preclusive ban on these x-rays.  *See id.*  Indeed, if Claimants had received a response from these facilities in time they would have happily produced the copies and the required certifications, but that was not the case. As such, according the terms of the order, if Debtors would like to *inspect* these x-rays, the Court will consider a motion on how best to facilitate this *inspection*.   Claimants are willing to facilitate this inspection if they can, but what Claimants cannot do is produce copies which they do not have in their possession by an arbitrary date or lose the right to introduce this evidence at an estimation trial.

## III.    Conclusion

On a final note, this firm has spent an unbelievable amount of time complying with request after request regarding Debtors' questionnaire.  Since counsel for the Debtors has clearly run out of new requests they are simply asking for information again that they have already received.  This utter lack of respect on the part of Debtors for the great latitude this Court has given Debtors' counsel and the patience with which the Court has entertained every time delaying request is unprecedented. It begs the inevitable questions, then, how much of the Debtors' money can their counsel waste before agreeing to pay the people they injured and killed, and when will the Court's tremendous patience run out?

Given that this response on the part of Claimants is completely unnecessary as Debtors' Motion, as described above, was completely unwarranted, we ask for costs from the Debtors' attorney for having to reply.

WHEREFORE Claimants respectfully requests that this Court deny Debtors' Motion regarding compliance with x-ray order as Claimants have complied with the terms of the Court's order.

Dated: April 13, 2007

Respectfully submitted,

  /s/ Daniel K. Hogan
Daniel K. Hogan (De. Bar. No. 2814)
THE HOGAN FIRM
1311 Delaware Avenue
Wilmington, DE 19806
Phone: (302) 656-7540
Facsimile: (302) 656-7599

*and*

Garrett J. Bradley, Esq.
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA 02110
Phone: (617) 720-1333
Facsimile: (617) 720-2445

Counsel for Claimants

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al*. | ) | Case No. 01-01139 (JFK) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the, 13th day of April, 2007 a true and correct copy of the foregoing Motion and Memorandum of Law in Opposition to Debtors' Motion to Compel Asbestos Personal Injury Claimants to Respond to the W.R. Grace Personal Injury Questionnaire served via the manner indicated to all of the parties on the 2002 service list.

/s/ Daniel K. Hogan_____
Daniel K. Hogan

7