## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Related to Docket No. 15057 |
| | ) | |
| | ) | |

### RESPONSE OF VARIOUS CLAIMANT LAW FIRMS TO DEBTORS' MOTION REGARDING NONCOMPLIANCE WITH X-RAY ORDER

The law firms of Wilentz, Goldman & Spitzer, P.A. ("Wilentz Goldman"),  David Lipman, P.A. ("Lipman"), Hissey, Keintz & Herron, P.L.L.C. ("Hissey Keintz"), Williams Bailey L.L.P. ("Williams Bailey"), The Law Offices of Peter G. Angelos, P.C. ("Angelos"), Foster & Sear, L.L.P. ("Foster & Sear"), Provost & Umphrey, L.L.P. ("Provost & Umphrey"), and Weitz & Luxenberg, P.C. ("Weitz & Luxenberg") (collectively the "Respondent Claimant Firms") file this Response to Debtors' "Motion Regarding Noncompliance with X-Ray Order" (the "Motion").

### INTRODUCTION

Contrary to the rules of civil procedure applicable to discovery, the Motion seeks to compel claimants to produce X-Rays that are not in their possession, custody or control.  The Court's order does not require the claimants to achieve such a task, and Grace does not even suggest how it should be accomplished.  In addition, the Motion misrepresents to the Court

that certain Firms are not in compliance with the Court's order where in fact they are in perfect compliance, as shown below and in the attachments.  Once again, like the original X-Ray order that preceded this one, Grace is simply dissatisfied with the mechanics of an order it agreed to and seeks – again – to renege on its agreement.  There is no basis for the Court to order the claimants to produce something they don't have.  The Motion should be denied.

## <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The Order Regarding X-Ray Evidence (Dkt. No. 14148) (the "Original X-Ray Order") was entered following litigation over the most suitable procedure for facilitating production of x-ray materials supporting non-mesothelioma cancer claims asserted against W.R. Grace & Co., *et al.*, pre-petition.  The Original X-Ray Order was the product of extensive negotiations between Grace, on the one hand, and the Asbestos Claimants Committee, counsel for the Respondent Claimant Firms, and counsel for other firms representing asbestos claimants, on the other.  The Original X-Ray Order directed non-mesothelioma cancer claimants who had indicated that they had x-ray evidence in support of their claims to permit Grace access to such x-rays in one of two ways.  Claimants could provide Grace with a copy of their chest x-rays by January 30, 2007.  Original X-Ray Order, ¶ 1.  Each copy was to

> … include a certification from someone qualified in the appropriate field or a stipulation from the Claimant or

his or her counsel certifying that any images in the original x-ray which are material to the Claimant's allegation that the x-ray demonstrates that his or her cancer is attributable to asbestos appear identically in the copy being provided.

*Id.* at ¶ 2. The Original X-Ray Order also provides that, if it were not possible or reasonably practicable to obtain such a certification, the Claimant (or counsel) was to provide Grace with notice that the certification could not be obtained. That would oblige affected claimants to make original x-rays available for inspection at their counsels' offices within thirty (30) days of a demand by Grace, subject to the other terms of the Original X-Ray Order. *Id.* at ¶ 3.

Despite substantial compliance by many claimants' firms with the Original X-Ray Order, Grace was dissatisfied and sought modification of the means for producing x-ray evidence by way of its Expedited Motion to Modify Order Regarding Production of X-Rays Based on Substantial Non-Compliance with Order (Dkt. No. 14441) (the "Expedited Motion"). Ignoring the widespread compliance with the Original X-Ray Order, Grace sought an extraordinary remedy, demanding that cancer-afflicted claimants (or their survivors) relinquish to an unspecified repository control over critical, fragile, and, in many instances, irreplaceable evidence. This attempt to bypass the rules of civil procedure was met with strong opposition by the Respondent Claimant Firms and others, leading to the Supplemental Order Regarding Production of X-Rays by Non-Mesothelioma Cancer Claimants (Dkt. No.

14608) (the "Supplemental X-Ray Order") negotiated between the parties and entered by this Court on February 20, 2007.

The Supplemental X-Ray Order specifically declined to find non-compliance with the Original X-Ray Order (*Id.* at 2) but embodied an agreed modification of the mechanism for the production of x-rays. For those claimants who did not provide the certification under the Original X-Ray Order, the Court ordered a copy to be made with instructions to the copy service to make "a true and accurate copy." *Id* at ¶2. Counsel were instructed to send this copy to Rust Consulting with the less exacting certification that "counsel is unaware of any material difference between the copy and the Claimant's original chest x-ray." The Supplemental X-Ray Order further provided that "to each Claimant for whom no original chest x-ray or copy exists, written certification to this effect shall be made by such Claimant's counsel." *Id.* at ¶2. Finally, it provided that where a Claimant's chest x-ray exists and neither such Claimant nor his or her counsel provides the original (or a certified copy), the Court would consider "how to facilitate Grace's inspection of such chest x-ray and whether to order that such Claimant's chest x-ray be sent to a repository of the Court." *Id.* at ¶6.

Grace remains dissatisfied with the manner in which claimants have complied with the agreed framework for production of x-rays, and filed its latest Motion on March 30, 2007. Grace identified four categories of alleged "noncompliance" with the Supplemental X-Ray Order. Motion at 4. First,

Grace alleges that it had received no response of any kind from certain claimants.  Second, Grace alleges that certain claimants had provided x-ray copies to Rust without the requisite certification.  Third, Grace alleges that certain claimants' x-rays were reported to exist but had not been sent to Rust because they had not been located.  Finally, Grace alleges that certain claimants reported x-rays as existing but in the hands of third parties.  Grace urges that the Court order these allegedly recalcitrant claimants to provide their x-rays to Rust "immediately" or be "precluded from introducing any x-ray evidence at the estimation trial in support of their claims beyond what was timely produced to the Debtor."  Motion at 5.

ARGUMENTS AND AUTHORITIES

### A.    The Firms that Allegedly Failed to Respond to the Supplementary Order.

Grace identifies one of the Respondent Claimant Firms in this category, Wilentz Goldman.  Wilentz Goldman has collated copies of any x-rays in its possession, has been diligently working on procuring copies of the x-rays that are in the hands of third parties, and has prepared a written report on its progress to Grace, which it has either already provided to Grace, or will shortly provide.  By the hearing, Wilentz Goldman will have produced all x-rays it is able to obtain.  As set forth in Section D below, Grace is entitled to no further relief under the applicable federal rules of procedure.

B.    **The Firms that Allegedly Failed to Provide Certifications for the X-Rays They Submitted**

Grace alleges that three of the Respondent Claimant Firms (Lipman, Hissey Kientz, and Williams Bailey), provided copies of the x-rays but failed to provide the requisite certifications.  In the case of the Lipman firm, due to an administrative oversight, no certification was provided to Grace with the x-ray copies.  This omission will be rectified before the hearing on this matter.  In the other two cases, Grace's allegation is groundless:  proper certifications were, in fact, provided by both Hissey Kientz and Williams Bailey.  Hissey Kientz submitted a certification compliant with the Original X-Ray Order with each copied x-ray, [Claimant] is identical to the original x-ray/x-rays provided."  An exemplar of this Certification is attached hereto as Exhibit 1.  Williams Bailey also provided a certification with its x-rays that complies with the Supplemental X-Ray Order.  A copy of this certification is attached hereto as Exhibit 2.  In this certification, Robert Shuttlesworth, an attorney with Williams Bailey, certified that the copy service was instructed to make "true and accurate copies of the original x-rays."  *Id.* at ¶5.  The copy service, in turn, certified that "to the best of [its] ability, [the copies are] as close to the original as is possible."  *Id.*  Mr. Shuttlesworth further certified that he was "unaware of any material difference between the copies provided and the original chest x-rays."  Id. at ¶6.  This is exactly the certification required by the Supplemental X-Ray Order.  Grace's assertions to the contrary are flat wrong and are an attempt to mislead this Court.

As two of the three Respondent Claimant Firms alleged by Grace as not providing the requisite certification did, in fact, provide compliant certifications, and Lipman has undertaken to provide the omitted certification to Grace before the hearing on this matter, no further relief is warranted in respect of these three Respondent Claimant Firms.

C.    **The Firms That Represent Claimants Whose X-rays Were Not Located.**

Two of the Respondent Claimant Firms are identified by Grace as having reported certain claimant x-rays as not located (Provost & Umphrey and Angelos). Provost & Umphrey provided Grace with copies of all x-rays it retained in-house. For x-rays in the control of third parties, it has requested that the third party provide such x-rays, and has sent copies to Grace of all x-rays so obtained. Some of those third parties have advised that they cannot locate the x-rays. Provost & Umphrey has continued in its attempts to locate the missing x-rays, and will provide any further x-rays it is able to locate as and when it receives them.

Angelos has already provided a full explanation to Grace of the 474 x-rays it has been unable to locate. *See* Letter of Paul Matheny to Rust Consulting dated March 14, 2007, attached hereto as Exhibit 3 (the attachment omits exhibits to that letter that consist of claimant lists that include claimant social security numbers). In April 2003, the firm's x-ray storage facility suffered storm damage to its roof and many of the x-rays stored therein were destroyed. Angelos has written to the doctors who

provided x-ray reports for the films asking whether they may have any of the films in their possession.  As Angelos receives responses from such doctors, it will inform the Debtor, and the firm has also obtained medical releases for as many of those clients as possible and will provide those for the Debtors' use upon request.  It is entirely possible that these x-rays are forever lost, but Angelos has expended great effort to retrieve any that might exist and to provide copies to the Debtor.

Both Provost & Umphrey and Angelos are taking all reasonable measures to provide the Debtor with access to the missing x-rays, and no further relief is warranted.  It would be futile to order that these x-rays be produced immediately.  It would also be patently unreasonable to exclude such x-rays from evidence should they materialize before the estimation trial.

D.    **The Firms with Claimants' X-rays in the Hands of Third Parties.**

Grace alleges that four of the Respondent Claimant Firms (Foster & Sear, Hissey Keintz, Angelos, and Weitz & Luxenberg) have provided notice that the x-rays are in the hands of third parties and have not been retrieved, despite the efforts of the Respondent Claimant Firms.  Indifferent to the practicalities of the situation, Grace asks this Court to order that these x-rays be retrieved and either sent to Rust by April 30, 2007 or copied and the copy sent to Rust by the same deadline.[1]  If the x-rays are not provided to Rust by

---

[1] This deadline, it should be noted, occurs before the Motion is set for hearing on May 2, 2007, and provides no opportunity for this Court to opine as to the reasonableness of Grace's expectations.

this date, the Debtor asks this Court to preclude any such x-rays being offered in evidence at the estimation trial.

Apart from resorting to a subpoena – an option likewise open to Grace – retrieval of these x-rays is beyond the control of the Respondent Claimant Firms. Each Respondent Claimant Firm has requested the x-rays from the third party, and will provide copies to the Debtor if, as, and when they are received. The Respondent Claimant Firms are also willing to provide the Debtor medical releases so that the Debtor might endeavor to obtain access to the x-rays. They need not do more than this.

Grace persists in its indifference to situations where a doctor, hospital or other third party has possession of original x-rays (as opposed to the Respondent Claimant Firms) and does not cooperate in making them available to the Respondent Claimant Firms upon request. Just because the Respondent Claimant Firms may request that original x-rays be forwarded to them so that they might be copied, they cannot assure that the doctors, hospitals or other third parties will cooperate at all or on a timely basis. The Supplemental X-Ray Order provides that, in the event the x-ray exists and counsel for the claimant does not provide the original or a certified copy to the Debtor, this Court "will consider, upon expedited motion, how to facilitate Grace's inspection of such chest x-ray and whether to order such claimant's chest x-ray be sent to a repository of the Court. Supplemental Xay Order at ¶ 6. Simply ordering the Respondent Claimant Firms to produce the x-rays

without regard to the practicalities of the situation does not serve "to facilitate Grace's inspection" of the x-rays.  Grace should be either required to wait for the x-rays to be provided by the third parties in whose possession they reside, or seek a medical release in respect of the x-rays at issue and attempt to secure access to the x-rays by its own means.

## CONCLUSION

For all of the foregoing reasons, the Respondent Claimant Firms respectfully request this Court to stay deny the relief requested in the Motion and to grant the Respondent Claimant Firms such other and further relief to which they may justly be entitled.

Dated: April 13, 2007

/s/ Daniel K. Hogan
Daniel K. Hogan (ID no. 2814)
**THE HOGAN FIRM**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656-7540
Facsimile: (302) 656-7599
E-mail: dkhogan@dkhogan.com

Sander L. Esserman
Van J. Hooker
David A. Klingler
David J. Parsons
**STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,
A Professional Corporation**
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 969-4900
Facsimile: (214) 969-4999

**COUNSEL FOR
THE RESPONDENT
CLAIMANT FIRMS**