IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: ) | **Chapter 11** |
| ) | |
| W.R. Grace & Co., et al., ) | **Case No. 01-01139 (JKF)** |
| ) | **(Jointly Administered)** |
| Debtors. ) | |
| ) | Objection Deadline: April 13, 2007 |
| | Hearing Date: May 2, 2007 at 2:00 P.M. |

Re: Docket No. 15004

**DEBTORS' RESPONSE TO ZAI CLAIMANTS' MOTION
FOR DISCOVERY CONCERNING W.R. GRACE'S CONDUCT IN THE
ZAI SUMMARY JUDGMENT PROCEEDINGS**

I. **INTRODUCTION**

The ZAI Claimants' Motion charges Grace's counsel with unprofessional and perhaps unethical conduct and with "playing fast and loose with the courts." ZAI Claimants' Motion for Discovery Concerning W.R. Grace's Conduct in the ZAI Summary Judgment Proceedings ("ZAI Claimants' Motion"), at 1, 2, 8, Fn. 10. At the heart of the ZAI Claimant's attack on Grace's counsel was the introduction in the ZAI Summary Judgment Proceedings of the so-called ATSDR Study.

The ATSDR Study was admitted into evidence **without objection** by ZAI Claimants and was relied upon by **both** Grace and the ZAI Claimants. Admission of the ATSDR Study in the ZAI Summary Judgment Proceedings was never an issue. Having been the subject of summary judgment granted in favor of Grace, the ZAI Claimants have now abandoned the parts of the ATSDR Study they relied upon and have invented the theory that the ATSDR Study's admission was a matter of dispute before this Court. Under that theory, they claim that Grace's attorneys failed to advise this Court that the ATSDR Study that was undisputed in these proceedings had been the subject of a Motion In Limine in the criminal proceedings involving Grace in Montana.

Grace's counsel takes this personal attack on their professionalism and ethics personally and files this response.

## II.   THE NATURE OF EPIDEMIOLOGICAL STUDIES

Before describing the proceedings in this Court involving ZAI and the proceedings in the criminal case, a brief discussion of the nature of epidemiological studies is in order. The purpose of epidemiology is to better understand disease causation. Reference Manual on Scientific Evidence (Federal Judicial Center, 2d. ed., 2000), at 335. Epidemiological evidence identifies agents that are associated with an unreasonable risk of disease. Id., at 335-336. However, "an association is not equivalent to causation." Id., at 336.

When epidemiology is used in legal disputes, three basic issues arise: (1) Do the results of an epidemiological study reveal an association between an agent and disease?; (2) What sources of error in the study may have contributed to an inaccurate result?; and (3) If the agent is associated with disease, is the relationship causal? Id., at 337.

It follows from the foregoing that, if no association is found between an agent (e.g., an exposure pathway) and disease in response to the first question above, the study never reaches the third question above, namely, whether the exposure pathway caused the disease. On the other hand, if an association is found, then a true epidemiologic study then turns to whether the relationship between the association and disease is causal.

The ZAI Claimants' Motion exhibits a fundamental misunderstanding, or intentional distortion, of the critical distinction in science between "association" and "causation," a distinction accurately advocated by Grace's counsel and a distinction understood by both this Court and the Court in the criminal proceedings.

## III. THE CRIMINAL PROCEEDINGS IN LIBBY

We start with the criminal proceedings in the United States District Court for the District of Montana, even though those events occurred almost two years after the October 18, 2004 summary judgment arguments on ZAI in this Court.

Attachment E to the ZAI Claimants' Motion is an August 31, 2006 Order entered by District Judge Donald W. Molloy in <u>United States of America v. W.R. Grace, et al.</u>, No. CR. 05-07-M-DWM (D. Mont. 2006). Judge Molloy's Order granted the Defendants' Motion In Limine to exclude the ATSDR Study from the criminal trial because it was not an epidemiological study and not scientifically reliable to prove causation with respect to the issues in that case.

The criminal proceedings involve, *inter alia*, a charge that the defendants violated the Clean Air Act's "knowing endangerment provision." <u>Id.</u>, at 22. In a prior ruling, Judge Molloy had determined that any alleged violations that became complete **before November 3, 1999** were time-barred under the statute of limitations. Accordingly, in the criminal proceedings, the government will be required to "introduce evidence of **post-November 3, 1999 exposures** that are of sufficient duration and intensity to place another person in imminent danger of death or seriously bodily injury." <u>Id.</u>, at 22 (emphasis supplied).

Judge Molloy described the ATSDR Study. He found that the Study's eligibility rules "required that participants have lived, worked, attended school or participated in other activities in Libby **for at least 6 months prior to December 31, 1990**." <u>Id.</u>, at 2-3 (emphasis supplied). The Study sought to identify potential exposures to asbestos or vermiculite by asking participants questions about potential exposures. <u>Id.</u>, at 4. The actual Study itself provided that the Study's two main objectives were to: (1) identify possible asbestos-related plural and interstitial

abnormalities among participants; and (2) examine associations between these outcomes and the participant's exposure histories. Id., at 7.

Significantly, Judge Molloy found that it was not a goal of the ATSDR Study to establish a causal relationship between exposure to asbestos in Libby and the development of abnormalities. Rather, the purpose of the Study was to "characterize possible pathways of exposure in the community . . ." Id., at 8.

Consistent with this Court's December 14, 2006 ZAI Memorandum Opinion, Judge Molloy found that the ATSDR Study was not an epidemiological study. Id., at 8. He then held that the ATSDR Study was unreliable under Daubert to establish the causal relationship between exposures to Libby material and the development of abnormalities because the ATSDR Study was admittedly not an epidemiological study designed to determine causation. Id., at 14, 19.

In so ruling, he noted that the ATSDR Study was more of a "medical testing or screening program." Id., at 19. He then observed:

> Fundamental problems with the design of the program were acknowledged by its creators, and it pursued goals that, **while useful for other purposes**, did not lead to any information about causation." Id., at 20 (emphasis supplied).

Judge Molloy also indicated that the ATSDR Study would not "fit" under the Daubert standards in that the screening program measured "what exposure pathway's were most dangerous prior to 1991," while the criminal indictment had to focus on exposures after November 3, 1999. See Id., at 26.

Finally, Judge Molloy ruled that the potential risk for jury confusion if the ATSDR Study were admitted substantially out-weighed any potential probative value of the Study. Id., at 27-

28. He held that "the jury might fail to appreciate the scientific and statistical distinction between association and causation . . ." Id., at 27.

## IV. REFERENCES TO THE ATSDR STUDY IN THE PARTIES' ZAI SUMMARY JUDGMENT BRIEFS

Presumably to suggest that Grace's counsel was playing "fast and loose" with this Court, the ZAI Claimants' Motion selectively quotes bits and pieces of briefs and arguments Grace's counsel presented to this Court with respect to the ZAI Summary Judgment Motions. The full record on this issue belies this charge.

On July 7, 2003, Grace filed its Brief in Support of its Motion for Summary Judgment (Attachment B to ZAI Claimants' Motion). Grace's counsel made it clear in the Brief that the ATSDR Study was a medical testing program which showed that there was no association between asbestos disease and living in a home with ZAI. This is what Grace's Brief said about the ATSDR Study:

> **B.  ZAI Claimants Have No Epidemiological Evidence That Raises a Genuine Issue of Material Fact Concerning Whether ZAI Creates An Unreasonable Risk of Harm.**
>
> Principles of epidemiology, as applied in numerous lawsuits, require that to establish an unreasonable risk of disease from ZAI, it must be shown that the presence or disturbance of ZAI doubles the risk of asbestos-related disease, that is, that persons exposed to ZAI are at least twice as likely as unexposed persons to contract an asbestos-related disease. It is not enough to show that asbestos can cause disease and that ZAI has asbestos in it.
>
> In fact, ZAI Claimants have no study showing any risk from ZAI, let alone a risk that is twice the disease risk to which the general public is exposed.
>
> The only available medical testing that included a study of ZAI shows no excess risk. That study, which explicitly identified a group of Libby residents whose only known asbestos exposure was the presence of ZAI in their homes and/or the handling of

> ZAI, was sponsored by the United States Agency for Toxic Substances and Disease Registry ("ATSDR"). The ATSDR's reports found no association between asbestos disease and living in a home with ZAI or having "handled" ZAI. ATSDR, Year 2000 Medical Testing of Individuals Potentially Exposed to Asbestiform Minerals Associated with Vermiculite in Libby, Montana: A Report to the Community, (August 23, 2001) ("ATSDR Medical Testing") Appendix, Exh. A; ATSDR, Preliminary Findings of Libby, Montana, Asbestos Medical Testing [Combined Testing 2000 and 2001], (September, 2002) ("ATSDR Preliminary Findings"), Appendix, Exh. U; Whitman Letters, Appendix, Exh. K, Responses at 2; Elizabeth Anderson Report, Appendix, Exh. E at 50-51.
>
> EPA Administrator Christine Todd Whitman confirmed this finding of a lack of association in response to inquiries into EPA's action at Libby: "The [ATSDR Libby Medical Screening] study did not show that insulation [ZAI] by itself, could be linked with the health impacts found in Libby." Whitman Letters, Appendix, Exh. K, Responses at 2." (Grace's Brief, at 30)
>
> \* \* \* \*
>
> In the instant case, ZAI Claimants proffer no evidence of relative risk, let alone evidence of a doubled risk. In fact, as stated above, the ATSDR's medical testing at Libby did not find any association between asbestos disease and living with ZAI or handling ZAI. Whitman Letters, Appendix, Exh. K, Responses at 2 ("The [ATSDR Libby Medical Screening] study did not show that insulation [ZAI] by itself, could be linked with the health impacts found in Libby.") ATSDR Medical Testing, Appendix, Exh. A; Henry Anderson Dep., Appendix, Exh. T; ATSDR Preliminary Findings, Appendix, Exh. U; Elizabeth Anderson Report, Appendix, Exh. E at 50-51." (Grace's Brief, at 34).

On August 8, 2003, the ZAI Claimants responded to Grace's Motion for Summary Judgment. The ZAI Claimants primary argument was that there was no need for epidemiological evidence. However, in making that argument, **ZAI Claimants themselves, relied upon the ATSDR Study**:

> "Even the Libby ATSDR report on which Grace so heavily relies concluded that the odds ratios for those who "handled vermiculite

> insulation" showed a "statistically significantly elevation" of disease risk. The Libby ATSDR report does not exonerate ZAI from disease causation. Rather, the numerous other exposures at Libby made it impossible to isolate and study ZAI exposure with any precision." <u>ZAI Claimants' Brief</u>, at 20-21 (Exhibit A hereto).

On August 18, 2003, Grace filed a reply to ZAI's Claimants Response. Grace replied to the ZAI Claimants own reliance on the Libby study as follows:

> "Finally, Claimants contend that the Libby ATSDR Report concluded that persons who handled vermiculite insulation are at a "statistically significant elevation" of disease risk. <u>Claimants' Response</u>, at 20-21. This contention is false. Claimants rely here on what the ATSDR calls a "crude analysis" of x-ray results, an analysis that does "not account for the possible influence of confounding variables or multiple exposures, and so cannot be used to establish a causal relationship." <u>ATSDR Report</u>, Appendix to Grace's Summary Judgment Brief, Exh. A at 10-12.
>
> In fact, the ATSDR Report did not find that ZAI was linked to adverse health effects. See <u>Whitman Letters</u>, Appendix to Grace's Summary Judgment Brief, Exh. K, Responses at 2 ("The [ATSDR Libby medical testing] study did not show that insulation [ZAI] by itself, could be linked with the health impacts found in Libby.")." (<u>Grace's Reply Brief</u>, at 4) (Exhibit B hereto).

Thus, as is evident from the foregoing briefs, but not disclosed in the ZAI Claimants' Motion, **both sides relied upon the ATSDR Study**. Neither side objected to its admission. It's admission was not in dispute; only the inferences to be drawn from its conclusions were disputed.

V. **THE SUMMARY JUDGMENT ARGUMENTS BEFORE THIS COURT**

The ZAI Claimants' Motion contains a partial extract of the statements Grace's counsel made at the summary judgment argument on October 18, 2004, with respect to the ATSDR Study, such partial citations being designed to suggest that Grace's counsel was playing "fast and loose" with the Court. In fact, Grace's counsel made it clear that: (1) the ATSDR Study was not

an epidemiological study; and (2) it did not show even an association between exposures to ZAI in the home and any disease:

> Our motion, Your Honor, states that there is no epidemiological evidence in the record before this Court or otherwise to establish that the disturbance of ZAI in an attic doubles the risk of contracting an asbestos-related disease.
>
> Indeed, our evidence shows that the presence or disturbance of ZAI in a home does not create an unreasonable risk.
>
> There is one community-wide study, Your Honor. It's the Libby Community Survey. **It is not technically an epidemiological study, because it does not have the controls required for an epidemiological study.** What the EPA did is they examined, through medical examination and exposure history, the exposure and the health of 6,149 present or former Libby residents. They did not have a control group of 6,149 non-Libby residents, and so in that respect **it was not technically an epidemiological study.**
>
> Nonetheless, the researchers found at Libby that there were any number of exposure pathways to asbestos that arguably led to asbestos-related disease. Obviously the most prevalent was mining or milling raw ore. Another one was being a family member of someone who spent his or her career mining or milling raw ore.
>
> For purposes of this science trial, Your Honor, the EPA study found no connection, no connection between having or using ZAI in a home [and] any asbestos-related disease. The documents to that effect, Your Honor, are in the record. The clearest one, and it is Grace Bench Exhibit number 5, Your Honor, that, Your Honor, is a letter from EPA administrator, Christine Todd Whitman responding to inquiries from Senator Max Bacchus with respect to the Libby medical screening and inquiries as to why a decision was made not to take any action with respect to attic insulation in the homes. And as a result of the Libby study Christine Todd Whitman writes that the study, quote, "did not show that insulation by itself could be linked with the health impacts found in Libby."
>
> **So, one needs an epidemiological study. There is none here.** We do have a pretty good substitute, a 6,000-person community study that finds no adverse health connection with the use or presence of ZAI insulation in the home at Libby."

> (Transcript of Proceedings, at pages 16-18) (emphasis supplied)
> (Exhibit C hereto).

ZAI Claimants made no objection to the introduction of the ATSDR Study or to Exhibit No. 5, the Christine Todd Whitman letter.

The only other reference counsel has been able to find to the ATSDR Study in arguments before this Court was at the Omnibus Hearing on September 11, 2006, approximately two years after the ZAI summary judgment arguments, and after Judge Molloy's August 31, 2006 Opinion, but before this Court's December 14, 2006 Memorandum Opinion granting summary judgment with respect to whether ZAI posed a health hazard.

At that hearing, counsel for Grace gave a status report on the various proceedings, including ZAI and the criminal proceedings:

> "Mr. Bernick: Okay. Well, that would be very, very useful. That causes me to reflect a little bit on where the criminal case stands, and I know that that's been a matter that's been brought to Your Honor's attention before. And I'm not going to go through the details of all the different rulings that have taken place.
>
> Enough said that Judge has issued a series of rulings on In Limine motions, as well as on motions that have gone to the indictment. **And the result of that, for example, of interest in the case of Libby is of the ATSDR study, which is a study that purported to survey effects within the population, has now been excluded as not being relevant to the issue of causation because it wasn't designed for that purpose."** (Transcript of Proceedings, at 20-21) (emphasis supplied).

## VI. <u>THIS COURT'S ZAI OPINION</u>

Obviously, this Court is familiar with its own ZAI Opinion and Order granting summary judgment, which was issued on December 14, 2006. However, the ZAI Claimants' Motion again selectively quotes from that Opinion, and for purpose of completeness of the record, the full

treatment of the ATSDR Study by this Court should be repeated. This Court's Memorandum Opinion stated:

> "An epidemiological study establishing a relationship between ZAI and asbestos-related disease would be extremely useful in demonstrating an unreasonable risk of harm. However, neither party has introduced such a study or even a study involving similar vermiculite products or similar asbestos exposure levels. The evidence most similar to this case was examined in the ATSDR Libby study introduced by Grace, which included ZAI and other vermiculite sources of asbestos exposure. The project resulted from various requests to declare a public health emergency in Libby, Montana, based on the allegedly heightened threat these sources of asbestos exposure could pose to a population in Libby which was already heavily exposed because of its involvement with and proximity to the Libby Mine. The results of the study disproved the allegation and showed no heightened or aggravated risk of asbestos disease from the presence of ZAI in residents' attics. The results showed no association between ZAI and asbestos disease and the EPA subsequently rejected the requests to declare a public health emergency in Libby, Montana. However, we note that the observational study was only conducted on Libby residents. Because it lacked a control group, it is distinguishable from an experimental epidemiological study. *See Reference Manual on Scientific Evidence* at 338-47. Another difficulty encountered in conducting an epidemiological study in Libby is the difficulty in isolating one factor, such as ZAI, considering all the other potential exposure pathways. However, even in Libby, the study did not show a heightened risk from ZAI." (Id., at 34-35.)

\* \* \* \*

> "The ATSDR Libby Study introduced by Grace approximates a complete epidemiological study and it supports the Grace's contention that ZAI does not pose an unreasonable risk of harm to homeowners. **The analysis showed no heightened risk to the Libby community; however, given that the study lacked a control group the court will also look at other alternatives for assessing risk.** Because airborne asbestos is a known carcinogen, evaluations of the risk associated with the presence of ZAI in a homeowner's attic can be calculated using dose-response figures taken from animal toxicity and epidemiological studies that dealt with higher asbestos exposure rates than are present in this case. *See Reference Guide on Toxicology*, in *Reference Manual on*

>  *Scientific Evidence* at 401 (2d ed. 2000). Toxicological dose
>  response evidence is used in both regulatory standards and risk
>  assessment evaluations in tort litigation. Id., at 404." (Id., at 37)
>  (emphasis supplied).

## VII. THERE IS NOTHING INCONSISTENT BETWEEN JUDGE MOLLOY'S DECISION IN THE CRIMINAL CASE AND THIS COURT'S MEMORANDUM OPINION.

It appears that the gist of the ZAI's Claimants attack on Grace's counsel is the theory that Grace took inconsistent legal positions resulting in inconsistent judicial rulings. If this is the ZAI Claimant's position, nothing could be further from the truth. There are no inconsistencies between Judge Molloy's decision and this Court's Memorandum Opinion and there are no inconsistencies in the positions of Grace's counsel before Judge Molloy and before this Court.

First, in the criminal case, the introduction of the ATSDR Study to prove causation was objected to by the defendants. Admissibility of that study thus became a matter in dispute. Unlike the criminal proceedings, there was no objection by either side to the introduction of the ATSDR Study in the summary judgment arguments before this Court and both sides relied upon it.

Second, Judge Molloy correctly found that the ATSDR Study was in the nature of a medical testing or screening program, which did not inform the causation issues in that case, but was "useful for other purposes." Obviously, the other purposes "are irrelevant to the issues in [the criminal case]." United States of America v. W.R. Grace, supra, at 30.

Both Judge Molloy and this Court found that the ATSDR Study was not an epidemiological study, and neither side in this case argued to the contrary. Judge Molloy found that one of the objectives of the ATSDR Study was to identify possible asbestos-related abnormalities among participants. The Study itself, and this Court, concluded that the Study

found no asbestos-related abnormalities among participants whose only exposure pathway was living in a home with ZAI or handling ZAI. There is nothing inconsistent between this Court's ZAI opinion and Judge Molloy's opinion on this issue.

Third, because the ATSDR Study examined participants whose exposure occurred prior to December 31, 1990, while the criminal indictment had to focus on events occurring after November 3, 1999, Judge Molloy found that the study did not "fit" under the Daubert standards. In stark contrast, the issue before this Court was whether the presence of ZAI in homes from the date of installation to the present was associated with any disease. The ATSDR Study did not identify even an association between ZAI in the home and asbestos-related disease.

Finally, the issue before Judge Molloy was whether vermiculite caused asbestos-related disease at Libby. The ATSDR Study's medical screening found the existence of some plural abnormalities, but was not designed to determine causation. As a result, Judge Molloy ruled that it could not be used to prove the causation issues presented in the criminal case. On the other hand, this Court was not dealing with such a causation issue because the ATSDR Study found no association between asbestos-related abnormalities and participants with ZAI in the home, and therefore, there was no "causation" for the Study to even examine with respect to this potential exposure pathway.

In sum, there are no inconsistencies between the decision of this Court and the Order of Judge Molloy.

## VIII. THERE WAS NO "ADVERSE" LEGAL AUTHORITY TO BRING TO THIS COURT'S ATTENTION.

ZAI Claimants' Motion appears to suggest that Grace's counsel may have violated Rule 3.3 of the Rules of Professional Conduct. Rule 3.3(a)(3) states that a lawyer shall not knowingly

fail to disclose "legal authority in the controlling jurisdiction" known to the lawyer to be "directly adverse" to the position of the client.

Rule 3.3(a) is not applicable here for a number of reasons.

First, the Rule assumes a dispute between the parties before a legal tribunal. It assumes with respect to a particular legal issue that some authority exist that is "adverse" to the position of the client and, thus, favorable to the position of the opponent. In the instant case, both sides relied upon the ATSDR Study and neither side took the position that the study was inadmissible. As a result, there were no "adverse" positions with respect to admission of the ATSDR Study.

Second, as described above, the ZAI Claimants themselves relied upon the Study for part of their argument. If the arguments in the ZAI Claimants' Motion are taken to their logical conclusion, then the ZAI Claimants had a duty to advise this Court of Judge Molloy's decision because, in their view, that decision is inconsistent with their own reliance upon the Study.

Third, the decision of Judge Molloy is not in any way inconsistent with the Memorandum Opinion of this Court. Assuming, however, that Judge Molloy's decision is "directly adverse" to Grace's position before this Court, Judge Molloy's jurisdiction over a criminal case dealing with Libby, Montana under the Clean Air Act, it is not "legal authority in the controlling jurisdiction" with respect to whether ZAI poses a risk in this bankruptcy.

Finally, even if Rule 3.3(a)(3) created some duty of disclosure to advise this Court of adverse authority, which Grace's counsel denies, in fact, at the Omnibus Hearing on September 11, 2006, counsel for Grace reported to the Court that the ATSDR Study "has now been excluded, as not being relevant to the issue of causation because it wasn't designed for that purpose."

In sum, contrary to the ad hominem attacks in the ZAI Claimants' Motion, there has been no lack of candor on the part of Grace's counsel to this Court or to opposing counsel.

IX. **THE ATSDR STUDY WAS ADMITTED INTO EVIDENCE WITHOUT OBJECTION AND THE ZAI CLAIMANTS HAVE WAIVED ANY GROUND OF COMPLAINT AGAINST ITS ADMISSION.**

Both sides utilized the ATSDR Study. ZAI Claimants never objected to its admission. The black-letter evidentiary law is clear: the ZAI Claimants have waived any right to now object to the admission of the ATSDR Study, let alone to conduct any discovery on the activities of Grace's counsel. As summarized in the leading treatise on Evidence:

> As indicated in Section 52, a failure to make a sufficient objection to incompetent evidence waives any ground of complaint as to the admission of the evidence. But it has another equally important effect. If the testimony is received without objection, it becomes part of the evidence in the case and is usable as proof to the extent of its rational persuasive power. The fact that it was inadmissible does not prevent its use as proof so far as it has probative value. The incompetent evidence, unobjected to, may be relied on in argument, and alone or in part it can support a verdict or finding. This principle is almost universally accepted. The Federal and Revised Uniform Rules of Evidence are silent on this subject but raise no doubt as to the continued viability of the common law rule. The principle applies to any ground of incompetency under the exclusionary rules. It is most often invoked with respect to hearsay, but it has been applied to secondary evidence of writings, opinions, evidence elicited from incompetent witnesses, privileged information, and evidence subject to objection because of the lack of authentication of a writing, firsthand knowledge, or expert qualification. 1 McCormick on Evidence, Section 54, (6[th] ed.) (2006 update).

Decisional law is in accord with this hornbook law. See, e.g., Carl v. Kurtz, 386 A 2nd 577, 579 (Pa. super. 1978) ("if evidence is admitted without objection, even though it may in fact be 'incompetent,' it may be used by the fact

finder for whatever probative value it may have.") McCormick on Evidence, §54 (2006 update) (footnotes omitted).

X. **CONCLUSION**

For the reasons stated above, ZAI Claimant's Motion should be denied.

Dated: April 13, 2007

REED SMITH LLP
James J. Restivo, Jr. (Bar No. 10113)
Lawrence E. Flatley (Bar No. 21871)
Douglas E. Cameron (Bar No. 41644)
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: (412) 288-3131
Facsimile: (412) 288-3063

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Lisa Esayian
Samuel L. Blatnick
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

By: _____
Co-Counsel for the Debtors and Debtors in Possession