IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: W.R. GRACE & CO., et al.,<br><br>Debtors. | ) <br> ) Chapter 11 <br> ) Case No. 01-01139 (JKF) <br> ) (Jointly Administered) <br> ) <br> ) Hearing Dates: April 23-25, 2007 <br> ) <br> ) |

CLAIMANT STATE OF CALIFORNIA, DEPARTMENT OF
GENERAL SERVICES' TRIAL MEMORANDUM FOR THE HEARINGS
ON ADJUDICATION OF DEBTORS' PRODUCT IDENTIFICATION-
BASED OBJECTIONS TO CLAIMANT'S SIXTEEN PROOFS OF CLAIM

HAHN & HESSEN LLP
488 Madison Avenue
New York, NY 10022
(212) 478-7200
Co-Counsel for Claimant

- and -

BALLARD SPAHR ANDREWS & INGERSOLL, LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801-3034
(302) 252-4446
Co-Counsel for Claimant

# TABLE OF CONTENTS

                                                                                                         **Page**

Table of Authorities.................................................................................................  ii

Preliminary Statement............................................................................................  1

Pertinent Background............................................................................................  2

      A.     Parties' Relevant Prior Filings.................................................  2

      B.     Product Identification Proof.....................................................  3

      C.     Debtors' Fifteenth Omnibus Objection....................................  6

Argument................................................................................................................  7

      I.     Through Several Types of Product Identification Evidence,
Claimant Will Establish that the Buildings Contain Either
Monokote-3, Zonolite Acoustical Plastic or Zonolite Finish
Coat, Which Indisputably Were Manufactured by Debtors...................  7

           A.     Applicable Standards and Burdens of Proof............................  7

                1.     Burden of Proof Under F.R.B.P. 3001(f).........................  7

                2.     Applicable Standard to Sustain Burden
To Show Product Identification.................................  8

           B.     Claimant Has Established that Debtors
Manufactured the Asbestos Products In
Each of the Buildings...............................................................  10

Conclusion............................................................................................................  13

# TABLE OF AUTHORITIES

**Cases**         **Page**

*In re Allegheny Int'l, Inc. v. Snyder*, 954 F.2d 167 (3d Cir. 1992) ...................................................8

*Catasauqua Area School District v. Eagle-Picher Indus.*, 118 F.R.D. 566
    (E.D. Pa. 1988) .................................................................................................................9

*In re Cavalier Industrial, Inc.*, 2003 Bankr. LEXIS 150 (Bankr. E.D. Pa. Feb. 6, 2003) ................7

*Celotex Corp. v. AIU Ins. Co.*, 196 B.R. 973 (M.D. Fl. 1996) ......................................................10

*Garcia v. Joseph Vince Co.*, 84 Cal. App. 3d 868 (1978) ...............................................................8

*Lee v. Kaiser Gypsum Co.*, 2002 Cal. App. Unpub. LEXIS 10381 (Nov. 13, 2002) ..........8, 10, 11

*McGonnell v. Kaiser Gypsum Co., Inc.*, 98 Cal. App. 4th 1098 (2002) ..........................................9

*In re Picolli*, 2006 Bankr. LEXIS 2425 (Bankr. E.D. Pa. Sept. 27, 2006) .......................................8

*Reorganized Church of Jesus Christ of Latter Day Saints v. U.S. Gypsum Co.*,
    882 F.2d 335 (8th Cir. 1989) ........................................................................................9, 10

*School District No. 1J Mulnmah County v. Acands, Inc.*, 767 F. Supp. 1051
    (D. Or. 1991), *aff'd*, 5 F.3d 1225 (9th Cir. 1993) ........................................................8, 9

**Statutes**

F.R.B.P. 3001(f) ...............................................................................................................................7

Pursuant to the October 13, 2006 Amended Order Setting Forth Various Deadlines Regarding Objections to Asbestos Property Damage Claims and the April 11, 2007 Modified Amended Scheduling Order for Adjudication of Asbestos PD Claims, claimant State of California, Department of General Services ("Claimant" or "DGS"), respectfully submits this trial memorandum to summarize the evidence Claimant anticipates it will present at the hearings scheduled for April 23-25, 2007 to adjudicate Debtors' objections based on product identification lodged against all sixteen of DGS' proofs of claim.

### Preliminary Statement

1. Even though Claimant provided abundant supporting documentation for each of its sixteen proofs of claim, which are entitled to prima facie validity under F.R.B.P. 3001(f), demonstrating that asbestos-containing products installed in the buildings the subject of those claims were manufactured by Debtors – including (a) reports of its expert identifying Debtors as the manufacturer through well-accepted and reliable methodologies and (b) architectural plans and related documentation for such buildings that call for installation of the types of fireproofing or surfacing materials that Debtors manufactured, which are corroborated by two letters Debtors produced during discovery showing that they sold asbestos products for installation in two of such buildings – Debtors have nonetheless elected to pursue a trial of objections to these claims upon the ground that Claimant has not shown that Debtors manufactured the products involved. In support of that contention, Debtors are expected to rely solely on the expert opinion of Dr. Richard Lee, even though he did not analyze any of the bulk samples of the asbestos materials in Claimant's buildings and otherwise has no probative knowledge of the products in the buildings.

2. That expert opinion by Dr. Lee, however, will prove to be insufficient to sustain Debtors' initial burden of going forward with evidence in support of their product identification-

based objections, refuting Debtors' attempts to strip Claimant's proofs of claim of their prima facie validity. But even if the Court were to find that Debtors have carried such initial burden, Claimant, through the product identification proof discussed above and in more detail below, will establish that Debtors manufactured the asbestos-containing products in the buildings the subject of its claims.

## Pertinent Background

### A. Parties' Relevant Prior Filings

3. On April 2, 2001, Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware.

4. In March 2003, Claimant filed sixteen proofs of claim (the "DGS Claims")[1], which seek over $130 million in property damage to sixteen buildings (collectively, the "Buildings") located in California. Along with the DGS Claims proofs of claim forms, Claimant submitted supporting documentation identifying Debtors as the manufacturer of many of the asbestos-containing products in the Buildings. Among other things, Claimant submitted reports (the "MVA Expert Reports") issued by its expert, Dr. Tim Vander Wood of MVA Scientific Consultants, which conducted a constituent analysis of numerous bulk samples of the asbestos-containing materials taken from each of the Buildings and concluded that for each of the Building, samples matched either Monokote-3 fireproofing, Zonolite Acoustical Plastic or Zonolite Finish Coat, which Debtors do not dispute they manufactured.

---

[1] Claimant's sixteen proofs of claim numbers (as denominated by Debtors) are 10648, 10649, 10650, 10651, 10652, 10653, 10654, 10655, 10656, 10657, 10658, 10659, 10660, 10661, 10662 and 14411.

2

**B.     Product Identification Proof**

5.     Claimant will introduce expert testimony of Dr. Vander Wood who performed product identification analyses using numerous bulk samples of asbestos materials in the Buildings and identified Debtors as the manufacturer for samples from each of the Buildings. The process Dr. Vander Wood employed can be summarized as follows.

6.     Each sample was assigned an MVA Scientific Consultants laboratory identification number. Each sample was visually examined with the aid of a stereomicroscope at magnifications up to forty times, noting the samples' general appearance and characteristics. A portion of each sample was analyzed by polarized light microscopy (PLM) and performed selected microchemical tests. Numerous individual particles of the sample were examined at magnifications up to 1,000 times, and the identity of the particles were determined based on their shape, color and optical properties as well as observation of the results of microchemical tests conducted under a microscope. The abundances of each of the individual components identified in the sample were also determined. The components of the sample were identified (e.g., chrysotile, vermiculite, and gypsum) and concentrations estimated.

7.     Additional analyses were also performed to confirm and refine the findings of the PLM analyses. Dr. Vander Wood analyzed a portion of each asbestos containing sample by scanning electron microscopy combined with energy dispersive x-ray spectrometry ("SEM/EDS"). This method identifies the chemical elements associated with individual particles of the sample, and allows confirmation of the identity of the individual components. For example, gypsum is composed mainly of the elements calcium, sulfur and oxygen, and the detection of numerous calcium/sulfur/oxygen-rich particles by SEM/EDS would confirm a PLM finding that gypsum is a major component of a sample.

3

8. The identities of the individual components of each sample were further confirmed by analytical electron microscopy ("AEM"). This technique allows elemental analysis by EDS, as in the SEM, which provides an additional check on the identity of the components of the sample. AEM also allows measurement of the arrangements of atoms in individual particles using selected area electron diffraction ("SAED"). Many of the components of asbestos containing building materials are composed of crystals, with their atoms placed in specific arrangements relative to each other. SAED allows a measurement of that arrangement, which can be compared to the known arrangements of crystalline materials to identify the exact nature of the crystals in the sample. Since some components of some asbestos containing building materials (such as gypsum and limestone) are soluble in acids, portions of each sample were immersed in acid and the proportion that dissolved was measured in order to determine the fraction of acid soluble material present.

9. All of this data – the shape, color, optical properties, and abundance of different particle types, along with microchemical test results, elemental composition, arrangement of atoms and the solubility in acid – is collated and examined and the identity and abundance of each material making up the sample is determined.

10. After determining the components of the samples and their abundance, Dr. Vander Wood compared the samples to the formulas of asbestos products that were manufactured during the past eighty years, (including those manufactured by Debtors), which MVA Scientific Consultants maintains in a database. These database formulas were obtained through manufacturers of asbestos products, such as Debtors, who in the past were required to disclose the formulas of their products when it was discovered that asbestos poses serious and potential harm to human beings. For the large majority of the samples analyzed, Dr. Vander

Wood concluded that the samples matched the formulas of either Monokote-3, Zonolite Acoustical Plastic or Zonolite Finish Coat that were manufactured and sold by Debtors.

11. Dr. Vander Wood's findings, as detailed in the MVA Expert Reports, are summarized in the following chart:

| Claim No. | Building Address/ Name | Identification of the Product's Manufacturer |
|---|---|---|
| 10648 | 28 Civic Center Plaza<br>Santa Ana, CA 92701 | Positive match with Monokote-3 |
| 10649 | 1416 9th Street<br>Sacramento, CA 95814<br>(a/k/a Resources Building DSA 5) | Positive match with Monokote-3 |
| 10650 | 10333 El Camino Real<br>Atascadero, CA 93423<br>(a/k/a Atascadero State Hospital) | Positive match with Monokote-3 |
| 10651 | 1234 East Shaw Avenue<br>Fresno, CA 93710<br>(a/k/a Sierra S Reg HQ Shop) | Positive matches with Zonolite Acoustical Plastic and Zonolite Finish Coat |
| 10652 | 714 P Street<br>Sacramento, CA 95814<br>(a/k/a OB8) | Positive match with Monokote-3 |
| 10653 | 7650 South Newcastle Road<br>Stockton, CA 95213<br>(a/k/a DSA 1023) | Positive match with Monokote-3 |
| 10654 | 2501 Harbor Blvd.<br>Costa Mesa, CA 92626<br>(a/k/a Fairview Development Center, Building 3265) | Positive match with Zonolite Acoustical Plastic |
| 10655 | 5100 O'Bynes Ferry Fd.<br>Jamestown, CA 95327<br>(a/k/a Sierra Conservation Center) | Positive match with Monokote-3 |
| 10656 | End of Hwy 202 @ Cummings Valley<br>Tehachapi, CA 93561<br>(a/k/a California Correctional Institution – Bldg. J) | Positive match with Monokote-3 |
| 10657 | 2501 Harbor Blvd.<br>Costa Mesa, CA 92626<br>(a/k/a Fairview Development Center, Building 3234) | Positive match with Zonolite Acoustical Plastic |
| 10658 | 3100 Wright Road<br>Camarillo, CA 93010<br>(a/k/a Ventura Youth Correctional Facility) | Positive match with Monokote-3 |
| 10659 | 1234 East Shaw Avenue<br>Fresno, CA 93710<br>(a/k/a/ Sierra S Reg HQ Warehouse & Offices) | Positive matches with Zonolite Finish Coat and Zonolite Acoustical Plastic |
| 10660 | End of Hwy 202 @ Cummings Valley<br>Tehachapi, CA 93561<br>(a/k/a California Correctional Institution – Bldg. B) | Positive match with Monokote-3 |

| 10661 | 31 East Channel Street<br>Stockton, CA 95202<br>(a/k/a Stockton OB DSA 901 or 901 Stockton State Bldg.) | Positive match with Monokote-3 |
|---|---|---|
| 10662 | 744 P Street<br>Sacramento, CA 95814<br>(a/k/a OB 9) | Positive match with Monokote-3 |
| 14411 | 7650 S Newcastle Road<br>Stockton, CA 95213<br>(Building 969) | Positive match with Monokote-3 |

12. In addition to the MVA Expert Reports and anticipated opinion to be introduced in a declaration as part of its direct case, Claimant will introduce other relevant product identification evidence that corroborate Dr. Vander Wood's identification of Debtors as the manufacturer. Claimant will introduce architectural plans and related documentation for the Buildings that call for installation of the types of asbestos-containing fireproofing and/or surfacing materials products Debtors manufactured, which plans reflect the "as built" plans for the Buildings' construction.

13. Claimant also will introduce product identification proof that Debtors produced to Claimant during discovery. In November 2006, Claimant served discovery requests upon Debtors, and requested, among other things, documents concerning Debtors' sales of Monokote-3, Zonolite Acoustical Plastic and Zonolite Finish Coat, which Debtors do not dispute they manufactured. In response, Debtors produced two letters, one dated June 19, 1968 and the other dated September 30, 1966, both of which show that Debtors sold Monokote to a contractor, Pacific Plastering Corporation and V&C Plastering, respectively, for installation in two of the Buildings – Atascadero State Hospital and California Correctional Institute that are subject of two of the DGS Claims.

C. **Debtors' Fifteenth Omnibus Objection**

14. On September 1, 2005, Debtors filed the Fifteenth Omnibus Objection (Substantive) to asbestos property damage claims. Among other things, Debtors objected to the

DGS Claims on the ground that Claimant has not provided sufficient proof that Debtors manufactured and/or sold the products. Specifically, as lodged against the DGS Claims that relate to product identification, Debtors contend (without reference to a particular DGS Claim) that the DGS Claims are invalid because:

(a) they are accompanied by bulk sampling data that is inconsistent with Debtors' product, since these claims either (i) indicate that the product found at the building was missing a key ingredient that would have been there if the product was manufactured by Debtors, (ii) show that the product contains ingredients that are not found in Debtors' product, (iii) show that they contain key ingredients but in the wrong proportionality of those used by Debtors, or (iv) provide data insufficient to determine consistency with Debtors' product; and

(b) they are accompanied by some bulk sampling data that is consistent with Debtors' product and either bulk sampling data that is inconsistent with Debtors' product or bulk sampling data insufficient to determine the presence of a non-Debtors' product in addition to Debtors' product.

15. Claimant responded to the Fifteenth Omnibus Objection on or about October 24, 2005, and supplemented that response on November 30, 2005 and provided additional expert reports for two of the DGS Claims showing that Debtors manufactured and/or sold the asbestos-containing products contained in two of the Buildings. Debtors served their reply on December 22, 2005.

## ARGUMENT

I. **THROUGH SEVERAL TYPES OF PRODUCT IDENTIFICATION EVIDENCE, CLAIMANT WILL ESTABLISH THAT THE BUILDINGS CONTAIN EITHER MONOKOTE-3, ZONOLITE ACOUSTICAL PLASTIC OR ZONOLITE FINISH COAT, WHICH INDISPUTABLY WERE MANUFACTURED BY DEBTORS**

A. **Applicable Standards and Burdens of Proof**

1. **Burden of Proof Under F.R.B.P. 3001(f)**

7

16. Under F.R.B.P. 3001(f), "[a] proof of claim ... constitute[s] prima facie evidence of the validity and the amount of the claim." A party contesting the claim, such as the Debtors, bears the initial burden of "going forward with evidence in support of its objection which must be of probative force *equal* to that of the allegations of the creditor's proof of claim." In re Cavalier Indus., Inc., 2003 Bankr. LEXIS 150, at *17 (Bankr. E.D. Pa. Feb. 6, 2003) (emphasis added).

17. In other words, the objector "must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." In re Allegheny Int'l, Inc. v. Snyder, 954 F.2d 167, 174 (3d Cir. 1992). "If the objecting party succeeds in overcoming the prima facie effect of the proof of claim, the ultimate burden of persuasion then rests on the claimant." In re Picolli, 2006 Bankr. LEXIS 2425, at *6 (Bankr. E.D. Pa. Sept. 27, 2006) (citing In re Allegheny, 954 F.2d at 174). In instances where supporting documentation is attached to filed proofs of claim, courts may find that a debtor's self-serving testimony, without more, is insufficient to rebut a claim's prima facie validity. See, e.g., In re Picolli, 2006 Bankr. LEXIS 2425, at *6 (where filed proofs of claim were supported by credit card statements in debtor's name, debtor's testimony that accounts belonged solely to her deceased husband was insufficient to refute claims' legal sufficiency).

### 2. Applicable Standard to Sustain Burden to Show Product Identification

18. Under California law (which should govern since each of the Buildings was located in California), a claimant must show that the defendant produced, manufactured, sold or was in some way responsible for the product in order to impose liability upon the defendant. See Garcia v. Joseph Vince Co., 84 Cal. App. 3d 868, 874 (1978); School District No. 1J Mulnomach County v. Acands, Inc., 767 F. Supp. 1051, 1059 (D. Or. 1991), aff'd, 5 F.3d 1255, 1260-62 (9th

8

Cir. 1993) (plaintiff required to introduce evidence to counter defendants' assertion that their asbestos-containing products were not installed in specific school buildings). In determining whether a claimant has carried that burden, courts have permitted various types of product identification proof in asbestos cases, including expert opinions and factual evidence such as architectural plans or specifications. See Lee v. Kaiser Gypsum Co., 2002 Cal. App. Unpub. LEXIS 10381, at **1-5 (Nov. 13, 2002); School District No. 1J Mulnomah County, 767 F. Supp. at 1059 (product identification established through, *inter alia*, contract specifications calling for installation of defendant's asbestos product).

19.     Unless they are speculative, expert opinions are probative of product identification if they identify the defendant as the manufacturer of the product. Catasauqua Area School Dist. v. Eagle-Picher Indus., 118 F.R.D. 566, 569-571 (E.D. Pa. 1988) (expert report insufficient to establish product identification because the "report" consisted of two pages and merely stated that the samples taken from the buildings were "consistent with" a product produced by defendant manufacturer); McGonnell v. Kaiser Gypsum Co., Inc., 98 Cal. App. 4th 1098, 1106 (2002) (expert report insufficient to establish product identification because the report consisted of four paragraphs and expert "provided little explanation or reasoning for his conclusion"). In the context of scientific product identification evidence, courts accept and consider results of constituent analysis of bulk samples, such as the one conducted by Dr. Vander Wood for each of the DGS Claims and detailed in the MVA Expert Reports. See Reorganized Church of Jesus Christ of Latter Day Saints v. U.S. Gypsum Co., 882 F.2d 335, 336 (8th Cir. 1989). Thus, product identification proof that comprise of expert opinion, in addition to circumstantial evidence in the form of architectural plans or specifications, are more than

sufficient to satisfy claimant's burden of establishing that the defendant manufactured and/or sold the products.

**B.  Claimant Has Established that Debtors Manufactured
The Asbestos Products In Each of the Buildings**

20.  Claimant will establish, through both expert opinion and factual evidence, that the Buildings contain Monokote-3, Zonolite Acoustical Plastic and Zonolite Finish Coat, which Debtors manufactured and/or sold.

21.  The MVA Expert Reports, which will be introduced as part of Claimant's direct case, will be admissible, probative and reliable on the issue of product identification. First (and as reflected in his curriculum vitae), Dr. Vander Wood has the qualifications to analyze the constituents of the bulk samples of the asbestos-containing materials and render an expert product identification opinion. In addition to educational and related credentials, Dr. Vander Wood also has extensive experience in conducting such analyses to determine the products' manufacturer, and has been retained by, among others, the States of Hawaii, Illinois and Kentucky to provide product identification expertise. Dr. Vander Wood has been rendered expert opinions in other cases on the issue of product identification of asbestos-containing products.

22.  Moreover, Dr. Vander Wood's opinions are admissible, reliable and probative on the issue of product identification. See Celotex Corp. v. AIU Ins. Co., 196 B.R. 973, 990 (M.D. Fl. 1996) (product identification made through, *inter alia*, submission of report prepared by asbestos consultant linking debtor's product to specific building). It is not in dispute that constituent analyses of samples and comparison of their composition to formulas is reliable and well-accepted methodology. See Reorganized Church of Jesus Christ of Latter Day Saints, 882 F.2d at 336.

23. For example, in an asbestos personal injury case, a California jury awarded damages to the plaintiff who established defendant as the manufacturer of the asbestos product through expert opinion. Lee v. Kaiser Gypsum Co., 2002 Cal. App. Unpub. LEXIS 10381, at **1-5 (Nov. 13, 2002). In that case, the expert performed a constituent analysis of a sample showing the presence of five distinct minerals, and compared that sample's composition to formulas of asbestos-containing products. Id. at **4, 10. Through that comparison, the expert concluded that the sample matched defendant's product "to the exclusion of all others." Id. at *10.

24. Here, Dr. Vander Wood utilized the same well-accepted methods – identifying and analyzing the constituents of the numerous samples taken from the Buildings and comparing those constituents to known formulas of asbestos-containing products – finding, with reasonable degree of scientific certainty, that the materials are either Monokote-3, Zonolite Acoustical Plastic or Zonolite Finish Coat for the large majority of the asbestos materials.

25. Claimant will supplement that expert testimony with two letters produced by Debtors showing that their subsidiary sold Monokote to a contractor for installation in two of the Buildings, and architectural plans and related documentation that call for installation of the types of fireproofing or surfacing materials that Debtors manufactured – Monokote-3, Zonolite Acoustical Plastic and Zonolite Finish Coat.

26. These various types of product identification evidence is sufficient to carry Claimant's burden of persuasion, assuming that Debtors will be successful in sustaining their initial burden of going forward. Debtors' expected reliance on the expert opinion of Dr. Richard Lee – who (a) did not analyze any samples examined by Dr. Vander Wood; (b) professed to having no first-hand or personal knowledge of asbestos materials contained in any of the

11

Buildings; (c) concluded for numerous samples that, from his review of the MVA Expert Reports, he could not opine that they were not Debtors' product; and (d) relied upon incomplete and incorrect data or committed numerous errors in his review of the MVA Expert Reports – will be insufficient to sustain their initial burden of going forward in support of Debtors' objections. Dr. Lee's opinions will prove not to be of probative force equal to Claimant's product identification evidence submitted with the DGS Claims, and is only bare self-serving testimony that fails to rebut the prima facie validity of the DGS Claims.

[REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK]

## Conclusion

27. In sum, Debtors cannot sustain their initial burden of going forward with evidence in support of their product identification-based objections, and therefore, the DGS Claims are entitled to prima facie validity. Even assuming Debtors meet their initial burden, Claimant will establish through expert opinion and factual evidence establishing the presence of Monokote-3, Zonolite Acoustical Plastic or Zonolite Finish Coat that are contained in the Buildings.

Dated:  New York, New York
April 13, 2007

**HAHN & HESSEN LLP**
Co-Counsel for Claimant
State of California, Dep't of General Services

By: _____
Steven J. Mandelsberg, Esq.
John R. McCahey, Esq.
Christina J. Kang, Esq.
Alison M. Croessmann, Esq.

488 Madison Avenue
New York, New York 10022
(212) 478-7200

- and -

**BALLARD SPAHR ANDREWS & INGERSOLL, LLP**
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801-3034
(302) 252-4446
Leslie C. Heilman, Esq.
Co-Counsel for Claimant
State of California, Dep't of General Services