# EXHIBIT 5

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Barbara Mack Harding
To Call Writer Directly:
202 879-5081
bharding@kirkland.com

202 879-5000

www.kirkland.com

Facsimile:
202 879-5200

December 16, 2005

**VIA FACSIMILE**
**BY FIRST CLASS MAIL**

Nathan D. Finch, Esquire
Caplin & Drysdale
One Thomas Circle, N.W.
Washington, D.C. 20005

Re :   W.R. Grace Bankruptcy

Dear Nathan:

On November 22, 2005, representatives of the Debtors, the Official Committee of Asbestos Personal Injury Claimants ("PI Committee"), the Future Claimants Representative ("FCR"), the Official Committee of Asbestos Property Damage Claimants ("PD Committee"), and the Official Committee of Unsecured Creditors ("UCC") met to confer about discovery requests propounded by the PI Committee, dated October 14, 2005, and the Debtors' responses to these requests, served on November 14, 2005. That meeting was continued telephonically on November 30, 2005. A subsequent discussion was held on December 7, 2005, in an attempt to further narrow the remaining disputes between the Debtors and the PI Committee. This letter is intended to memorialize the agreements reached between the Debtors and the PI Committee as a result of these discussions.

**General Agreements**

1.  The Debtors object to the production of any documents that contain information falling under the attorney-client privilege or work product doctrine and none of the agreements herein contained constitute a waiver of that objection. Further, notwithstanding the production of any documents or any agreements reached herein, the Debtors reserve all rights to object to the use of any document at the estimation hearing on any relevant grounds, including, but not limited to, relevance or admissibility, and expressly do not waive such objections by the production of any document.

2.  The parties attempted to meet-and-confer in order to reach agreement with regards to the scope of the PI Committee's discovery requests. The PI Committee agrees that the agreements contained herein satisfy Debtors' obligations with

## KIRKLAND & ELLIS LLP

Nathan D. Finch, Esquire
December 16, 2005
Page 2

        respect to the enumerated discovery requests. For those discovery requests where Debtors have made an offer in good faith to narrow the scope of the dispute that but where the Debtors and the PI Committee have been unable to reach agreement, the Debtors stand on the objections articulated in their responses.

3.     Debtors agree to provide access to the materials to the FCR, PD Committee, UCC, and Official Equity Security Committee (the "Equity Committee") (collectively, the "Committees") provided that these entities agree to accept production of such documents in lieu of serving any separate and additonal requests for production on Debtors in connection with the personal injury estimation. Further, the Committees agree to enter into any such confidentiality agreements entered into by the Debtors and the PI Committee prior to the production of such documents.

4.     Debtors agreed to provide the Committees with a copy of the Grace personal injury claims database. The database was provided to the Committees on December 2, 2005, subject to the confidentiality agreement contained in the December 2, 2005 letter from Barbara Harding which accompanied the production of the database.

5.     Debtors agree to provide the "data dictionary" for the Grace personal injury claims database, subject to the confidentiality agreement contained in the December 2, 2005 letter from Barbara Harding which accompanied the production of the database. The data dictionary was provided to the Committees on December 16, 2005.

6.     Debtors agree to provide both the hard copy and electronic indexes for the document repository.[1] The electronic index is in the form of a Microsoft Access

---

[1]     As noted in our responses to the interrogatories and document requests, as well as in our subsequent discussions, Debtors have agreed to provide and our productions are limited to materials previously produced in connection with personal injury asbestos-related litigation and/or documents produced in connection with the EPA investigation of Grace's vermiculite mine and mill in Libby, Montana, as well as the various class actions relating to Zonolite Attic Insulation ("ZAI"). Further, when referring to documents contained in the "document repository," and/or "documents produced on disk in the EPA and ZAI litigations," Debtors refer to documents pertaining to the Zonolite line of products including: (1) commercial asbestos containing products (products in which asbestos was added as part of the product's formulation), manufactured by the Zonolite Company or by Grace's Construction Products Division ("CPD"); (2) vermiculite containing products manufactured by the Zonolite Company or CPD for sale to and use by consumers (such as ZAI, agricultural and horticultural products) through approximately 2000; (3) other vermiculite containing products, manufactured by the Zonolite Company or CPD through approximately 1985; and (4) certain other commercial asbestos containing products manufactured by the Horn and Servicised companies

(Continued...)

## KIRKLAND & ELLIS LLP

Nathan D. Finch, Esquire
December 16, 2005
Page 3

> database and covers approximately 80% of the boxes contained in the repository, while the hard copy index contains a listing, in one form or another, of a slightly larger percentage of the documents contained in the repository. Debtors sent the hard copy index to the PI Committee on December 13, 2005, and agree to make it available in the repository itself. The electronic index was produced to the PI Committee, the FCR and the UCC on December 15, 2005. Production of the indexes is subject to the confidentiality agreement contained in the December 2, 2005 letter from Barbara Harding which accompanied the production of the database.

7. Debtors agree to produce the disks containing the documents that were produced in the EPA and ZAI litigations. The disks were produced to the PI Committee on December 15, 2005. Pursuant to relevant statutes, Debtors were required to produce to EPA documents typically protected from disclosure on the grounds that they contain Confidential Business Information ("CBI"). Debtors will not include CBI materials on the disks produced to the PI Committee but will provide a general description of the types of documents withheld. In addition, Debtors will provide any logs of documents withheld as privileged from the productions in the EPA and ZAI litigations.

8. On December 13, 2005, the PI Committee issued a request for production of documents requesting copies of "the Claimant Questionnaire response itself and all documents attached to each Questionnaire." Document Request 72. As Debtors stated during the conversation held on December 7, 2005, Debtors believe that the Case Management Order provides for such access in the absence of a formal document request, and have suggested a meeting in early January between the parties to the estimation and Rust Consulting to determine the procedure by which such access will be provided.

### *In re Sealed Air* Materials

9. Debtors agreed to provide the PI Committee with a list of exhibits used at the depositions of certain individuals identified by the PI Committee (Robert Beber,

---

during the time such entities were operated through CPD through approximately 1985. These responses are further limited to the sale of the products described above in the United States and Canada through approximately 2000. As discussed, except to the extent agreed herein, Debtors have not undertaken to conduct a new search for or to produce documents that were not previously produced in prior Grace asbestos personal injury litigation, the EPA investigation or the ZAI litigation.

## KIRKLAND & ELLIS LLP

Nathan D. Finch, Esquire
December 16, 2005
Page 4

        Jay Hughes, Thomas Florence, Daniel Rourke, Thomas Hayes, John Port, and David Siegel). That list was provided by the Debtors to the PI Committee on December 2, 2005. The PI Committee has examined that list and has indicated that in addition to the exhibits for the individuals originally identified by the PI Committee, it wishes to use, for purposes of discovery, the exhibits used at the deposition of Jeffrey Posner, as well as certain additional documents. Those additional documents may be categorized as follows: six settlements agreements entered into between Grace and counsel for certain plaintiffs; nine sets of Grace's discovery responses that were served in the *Sealed Air* litigation, meeting minutes from the August 14, 1997 W. R. Grace Board of Directors' meeting; a memorandum from Larry Ellberger to the W.R. Grace Board of Directors, dated July 9, 1997; and, a letter from Jay W. Hughes, Jr. to Eileen T. McCabe, Esq., dated December 3, 1997. Debtors will review all identified exhibits and documents for privilege and confidentiality and indicate to the PI Committee which documents the Debtors do not object to being used for purposes of discovery on or before January 10, 2006. Debtors fully reserve all rights to object to the admissibility and relevance of any document produced in the *Sealed Air* litigation at the estimation hearing.

10. Debtors agree that the PI Committee may use the depositions of the above-identified individuals at the estimation hearing with the exception of exhibits and portions of the depositions that the Debtors deem to be privileged or confidential in accordance with paragraph 8 above. The PI Committee agrees that it will not re-depose those individuals with respect to any topics, issues, or documents discussed in their *Sealed Air* depositions, and may only re-depose those individuals with respect to topics that were not discussed during the original deposition.

11. Debtors agree that non-confidential materials produced in the *Sealed Air* litigation may be accessed by the Committees. However, the Debtors will not make available materials from the *Sealed Air* litigation that it objects to on the grounds of privilege or confidentiality.

**Interrogatory Responses**

12. With respect to Interrogatory Number 1, the PI Committee requested, and the Debtors agreed that this information will be provided within the time frame and in the manner required by paragraph 7 of the Case Management Order for the Estimation of Asbestos Personal Injury Liabilities (Docket No. 9301).

**KIRKLAND & ELLIS LLP**

Nathan D. Finch, Esquire
December 16, 2005
Page 5

13. With respect to Interrogatory Number 2, the PI Committee has agreed that it will be a sufficient response for the Debtors to identify the ten law firms who handled the most asbestos personal injury lawsuits for Grace during the requested period ("top 10 firms"), and the Debtors have agreed to make such an identification.

14. With respect to Interrogatory Number 3, the PI Committee has agreed the response to the interrogatory will be sufficient provided that Grace update a chart produced in response to an interrogatory in the *Sealed Air* litigation to include the following information where available: defense counsel, whether the case was taken to verdict, the amount of the verdict allocated to Grace (if any), the amount of punitive damages awarded for each case taken to verdict (if any), and the amount of any settlement that was allocated to punitive damages (if any). The Debtors have received the chart provided by the PI Committee and have agreed to provide the requested information to the extent the information is available to the Debtors.

15. With respect to Interrogatories 4 and 19, the PI Committee has agreed that it will be a sufficient response for the Debtors to identify the Top 10 Firms, and the Debtors have agreed to make such an identification.

16. With respect to Interrogatory 5, the PI Committee has agreed that it will be a sufficient response for the Debtors to identify the firms involved in large inventory settlements entered into by the Debtors between January 1, 2000 and December 31, 2001, and the Debtors have agreed to make such an identification.

17. With respect to Interrogatories 6 and 7, and 11 the PI Committee agrees that the Debtors responses are sufficient and that no further response is required.

18. With respect to Interrogatories 8, 9, and 10, the PI Committee has agreed that it will be a sufficient response for Debtors to make a rolling production of a representative sample of settled claims files involving the settlement or resolution of large numbers of asbestos personal injury claims entered into between January 1, 1996 and December 31, 2001. These materials comprise a large volume of documents and are believed to be representative of the settlements entered into by the Debtors prior to their filing for bankruptcy. This group of settled files are located in Boca Raton, Florida. The materials located in Boca Raton are voluminous and reviewing and producing such materials is unduly burdensome. However, the Debtors agree to produce these materials or make such materials available for inspection in Boca Raton, Florida after an appropriate review for privilege and confidentiality, subject to the Debtors obtaining permission to disclose such information from individual plaintiffs' counsel where appropriate

**KIRKLAND & ELLIS LLP**

Nathan D. Finch, Esquire
December 16, 2005
Page 6

and subject to an appropriate confidentiality agreement being executed between the parties to the estimation. Debtors agree to begin review of these settled claims files as soon as they are able to secure sufficient space for such a review and production. Debtors agree to attempt in good faith to begin to make these files available for review on or before January 16, 2006. Further, as agreed, the settled claims files are attorney files, Debtors will not produce a privilege log for documents withheld from production as such an undertaking would be unduly burdensome. Debtors also agree to inquire whether the top 10 firms, as well as Casner & Edwards have "site lists" in their possession and will produce any such list if it exists and is not privileged or attorney work product.

19. With respect to Interrogatories 12-22, Debtors have indicated that this information is equally available to both sides through the Grace personal injury claims database. The PI Committee has indicated its disagreement with this position. The PI Committee has agreed to wait until it receives and reviews the Debtors' expert reports before inquiring further in this area.

20. With respect to Interrogatories 23-28, the PI Committee has requested information relating to insurance coverage issues. Those materials are voluminous and it will be unduly burdensome for Debtors to provide all such materials. The PI Committee agrees that it will be sufficient for the Debtors to provide pleadings, affidavits and depositions of Grace personnel from a representative collection of insurance coverage files in Boca Raton, FL, on a rolling basis, to the extent that such materials are not subject to the attorney-client or work product privileges. Further, as the insurance coverage litigation files are attorney files, Debtors will not produce a privilege log for documents withheld from production as such an undertaking would be unduly burdensome.

**Document Requests**

21. With respect to Document Request 1, the PI Committee agrees that the Debtors may limit their production to those documents contained in the document repository and produced in prior asbestos personal injury litigation and/or the disks produced in the EPA and ZAI litigations. Debtors agree to make these collections of documents available for inspection beginning on December 19, 2005.

22. With respect to Document Requests 2, 3, 4, and 5, the PI Committee has agreed that it will be a sufficient response for Debtors to make a rolling production of a representative sample of settled claims files involving the settlement or resolution of large numbers of asbestos personal injury claims entered into between January

KIRKLAND & ELLIS LLP

Nathan D. Finch, Esquire
December 16, 2005
Page 7

        1, 1996 and December 31, 2001. These materials comprise a large volume of documents and are believed to be representative of the settlements entered into by the Debtors prior to their filing for bankruptcy. This group of settled files are located in Boca Raton, Florida. The materials located in Boca Raton are voluminous and reviewing and producing such materials is unduly burdensome. However, the Debtors agree to produce these materials or make such materials available for inspection in Boca Raton, Florida after an appropriate review for privilege and confidentiality, subject to the Debtors obtaining permission to disclose such information from individual plaintiffs' counsel where appropriate and subject to an appropriate confidentiality agreement being executed between the parties to the estimation. Debtors agree to begin review of these settled claims files as soon as they are able to secure sufficient space for such a review and production. Debtors agree to attempt in good faith to begin to make these files available for review on or before January 16, 2006. Further, as agreed, the settled claims files are attorney files, Debtors will not produce a privilege log for documents withheld from production as such an undertaking would be unduly burdensome. Debtors also agree to inquire whether the top 10 firms, as well as Casner & Edwards have "site lists" in their possession and will produce any such list if it exists and is not privileged or attorney work product. Further, as the settled claims files are attorney files, Debtors will not produce a privilege log for documents withheld from production as such an undertaking would be unduly burdensome. Debtors also agreed to inquire whether the fop 10 firms, as well as Casner & Edwards have "site lists" in their possession and will produce any such list if it exists and is not privileged or attorney work product.

23. With respect to Document Requests 6 and 7, the PI Committee has agreed that it is sufficient for the Debtors to produce the hard copy and electronic indexes in accordance with the provisions outlined in paragraph 6 above.

24. With respect to Document Requests 8 and 9, the PI Committee has agreed that it is sufficient for Debtors to make those responses contained in the files of Casner & Edwards available to the PI Committee subject to and without waiving its objections on the grounds of privilege and work product, and the Debtors agree to do so. Given the tens of thousands of case files maintained by Casner & Edwards, the PI Committee has agreed that it is sufficient for Casner & Edwards only to produce such discovery responses as are readily identifiable, such as those that are on Casner & Edwards' word processing system and/or in boxes of archived copies of discovery responses. Those responses are not exhaustive but are representative of the discovery responses served on behalf of Debtors in previous asbestos personal injury litigation. Because the responses were ultimately served by local counsel, they are unsigned. The PI Committee agrees

KIRKLAND & ELLIS LLP

Nathan D. Finch, Esquire
December 16, 2005
Page 8

that production of such responses is sufficient provided that they are accompanied by a certification that it was the practice of the Debtors to have Casner & Edwards (as coordinating counsel) provide the discovery responses to local counsel and that the form in which Casner & Edwards sent the responses was the form in which the responses were ultimately served (i.e., the produced responses were not interim drafts). Casner & Edwards will produce five discovery responses identified as being "as produced to local counsel" for each year from 1985 to the date of the Debtors' bankruptcy petition. Subsequently, the remainder of the located "as sent to counsel" responses for this time period will be placed into the repository after an appropriate review for privilege and confidentiality. Debtors will apprise the PI Committee when these documents become available in the document repository.

25. With respect to Document Requests 11-16, the PI Committee agrees that the Debtors may limit their production to those documents contained in the document repository and produced in prior asbestos personal injury litigation and/or the disks produced in the EPA and ZAI litigations. Debtors agree to make these collections of documents available for inspection beginning on December 19, 2005.

26. With respect to Document Request 17, the PI Committee asked for two things: the data dictionary, and the use of the Port and Hughes depositions from the *Sealed Air* litigation. The Debtors agreed to provide these in accordance with the provisions outlined in paragraphs 5, 8 and 9 above.

27. With respect to Document Request 18, the PI Committee agrees to limit the scope of its request to the time period 1996 forward. No agreement has yet been reached with respect to this request. Debtors are investigating the volume and availability of such materials and will apprise the PI Committee of the availability of such documents on or before January 10, 2006.

28. With respect to Document Requests 19-22, the PI Committee agrees that the Debtors may limit their production to those documents contained in the document repository and produced in prior asbestos personal injury litigation and/or the disks produced in the EPA and ZAI litigations. Debtors agree to make these collections of documents available for inspection beginning on December 19, 2005.

29. With respect to Document Requests 23, 53, 68 and 69, the PI Committee aggress that it will be a sufficient response for the Debtors to search for any estimate prepared prior to the date of petition to the extent that such estimates were not

## KIRKLAND & ELLIS LLP

Nathan D. Finch, Esquire
December 16, 2005
Page 9

> produced in the *Sealed Air* litigation, provided that such estimates are not subject to the attorney-client or work product privileges. Debtors will not produce any estimates that are subject to the attorney-client or work product privileges. Debtors will provide a privilege log in conformity with the requirements of the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure.

30. With respect to Document Requests 24 and 25, Debtors agree to produce the documents sought in these requests to the extent that they are contained in the document repository and produced in the prior asbestos personal injury litigation and/or the disks produced in the EPA and ZAI litigations. Debtors agree to make these collections of documents available for inspection beginning on December 19, 2005.

31. With respect to Document Requests 26-46, the PI Committee agrees that Debtors may limit their production to those documents contained in the document repository and produced in prior asbestos personal injury litigation and/or the disks produced in the EPA and ZAI litigations. Debtors agree to make these collections of documents available for inspection beginning on December 19, 2005.

32. With respect to Document Requests 47 and 66, the Debtors offered to consider entering into a stipulation with the PI Committee that would establish certain factual underpinnings of the PI Committee's request in order to narrow the scope of the dispute. During the November 30, 2005 meet-and-confer discussion, the PI Committee agreed to circulate a stipulation by Monday, December 5, 2005, for Debtors' consideration in order to narrow the scope of the dispute. On December 7, 2005, the PI Committee informed the Debtors that it withdrew its agreement and would not circulate such a stipulation. In light of the PI Committee's withdrawal, the Debtors stand on the objections articulated in W. R. Grace's Responses and Objections to Asbestos Claimants' Committee's First Set of Requests for Production of Documents, dated November 14, 2005.

33. With respect to Document Request 48, the PI Committee has agreed that it will be a sufficient response for Debtors to produce the standard list of experts that it typically produced in asbestos personal injury litigations, and the Debtors agree to produce that list.

34. With respect to Document Request 49, the PI Committee has agreed it is sufficient for Debtors to produce and Debtors agree to provide the information as outlined in paragraph 14, above.

KIRKLAND & ELLIS LLP

Nathan D. Finch, Esquire
December 16, 2005
Page 10

35. With respect to Document Request 50-52, the PI Committee agrees that Debtors may limit their production to those documents contained in the document repository and produced in prior asbestos personal injury litigation and/or the disks produced in the EPA and ZAI litigations. Debtors agree to make these collections of documents available for inspection beginning on December 19, 2005.

36. With respect to Document Request 54, the PI Committee agrees that Debtors may limit their production to those documents contained in the document repository and produced in prior asbestos personal injury litigation and/or the disks produced in the EPA and ZAI litigations. Debtors agree to make these collections of documents available for inspection beginning on December 19, 2005.

37. With respect to Document Requests 55-58, no agreement has yet been reached with respect to these requests. Debtors are investigating the volume and availability of such materials and will apprise the PI Committee of the availability of such documents on or before January 10, 2006.

38. With respect to Document Request 59, the PI Committee has agreed that it will be a sufficient response for Debtors to make a rolling production of a representative sample of settled claims files involving the settlement or resolution of large numbers of asbestos personal injury claims entered into between January 1, 1996 and December 31, 2001. These materials comprise a large volume of documents and are believed to be representative of the settlements entered into by the Debtors prior to their filing for bankruptcy. This group of settled files are located in Boca Raton, Florida. The materials located in Boca Raton are voluminous and reviewing and producing such materials is unduly burdensome. However, the Debtors agree to produce these materials or make such materials available for inspection in Boca Raton, Florida after an appropriate review for privilege and confidentiality, subject to the Debtors obtaining permission to disclose such information from individual plaintiffs' counsel where appropriate and subject to an appropriate confidentiality agreement being executed between the parties to the estimation. Debtors agree to begin review of these settled claims files as soon as they are able to secure sufficient space for such a review and production. Debtors agree to attempt in good faith to begin to make these files available for review on or before January 16, 2006. Further, as agreed, the settled claims files are attorney files, Debtors will not produce a privilege log for documents withheld from production as such an undertaking would be unduly burdensome.

39. With respect to Document Request 60, the PI Committee agrees that Debtors may limit their production to those documents contained in the document repository

## KIRKLAND & ELLIS LLP

Nathan D. Finch, Esquire
December 16, 2005
Page 11

and produced in prior asbestos personal injury litigation and/or the disks produced in the EPA and ZAI litigations. Debtors agree to make these collections of documents available for inspection beginning on December 19, 2005.

40. With respect to Document Request 61, Debtors agree to produce the non-privileged materials that formed the basis for its presentations made during this case. the PI Committee has agreed that it will be a sufficient response for Debtors to make a rolling production of a representative sample of settled claims files involving the settlement or resolution of large numbers of asbestos personal injury claims entered into between January 1, 1996 and December 31, 2001. These materials comprise a large volume of documents and are believed to be representative of the settlements entered into by the Debtors prior to their filing for bankruptcy. This group of settled files are located in Boca Raton, Florida. The materials located in Boca Raton are voluminous and reviewing and producing such materials is unduly burdensome. However, the Debtors agree to produce these materials or make such materials available for inspection in Boca Raton, Florida after an appropriate review for privilege and confidentiality, subject to the Debtors obtaining permission to disclose such information from individual plaintiffs' counsel where appropriate and subject to an appropriate confidentiality agreement being executed between the parties to the estimation. Debtors agree to begin review of these settled claims files as soon as they are able to secure sufficient space for such a review and production. Debtors agree to attempt in good faith to begin to make these files available for review on or before January 16, 2006. Further, as agreed, the settled claims files are attorney files, Debtors will not produce a privilege log for documents withheld from production as such an undertaking would be unduly burdensome.

41. With respect to Document Request 62, the PI Committee has agreed it is sufficient for Debtors to produce and Debtors agree to provide such information in response to Interrogatory Number 3, as outlined in paragraph 14 above.

42. With respect to Document Request 65, the PI Committee has requested that Debtors produce pleadings, briefs, and testimony offered by Grace in insurance coverage litigation. Those materials are voluminous and it will be unduly burdensome for Debtors to provide all such materials. Debtors do agree to provide a representative collection of such materials located in Grace's files in Boca Raton, FL, on a rolling basis, to the extent that such materials are not subject to the attorney-client or work product privileges, as outlined in paragraph 20 above. The materials located in Boca Raton are voluminous and reviewing and producing such materials is unduly burdensome. However, the Debtors agree to produce these materials or make such materials available for inspection in Boca

KIRKLAND & ELLIS LLP

Nathan D. Finch, Esquire
December 16, 2005
Page 12

> Raton, Florida after an appropriate review for privilege and confidentiality. Further, as the insurance coverage litigation files are attorney files, Debtors will not produce a privilege log for documents withheld from production as such an undertaking would be unduly burdensome.

43. With respect to Document Request 67, the PI Committee has agreed that it will be a sufficient response for Debtors to make a rolling production of a representative sample of settled claims files involving the settlement or resolution of large numbers of asbestos personal injury claims entered into between January 1, 1996 and December 31, 2001. These materials comprise a large volume of documents and are believed to be representative of the settlements entered into by the Debtors prior to their filing for bankruptcy. This group of settled files are located in Boca Raton, Florida. The materials located in Boca Raton are voluminous and reviewing and producing such materials is unduly burdensome. However, the Debtors agree to produce these materials or make such materials available for inspection in Boca Raton, Florida after an appropriate review for privilege and confidentiality, subject to the Debtors obtaining permission to disclose such information from individual plaintiffs' counsel where appropriate and subject to an appropriate confidentiality agreement being executed between the parties to the estimation. Debtors agree to begin review of these settled claims files as soon as they are able to secure sufficient space for such a review and production. Debtors agree to attempt in good faith to begin to make these files available for review on or before January 16, 2006. Further, as agreed, the settled claims files are attorney files, Debtors will not produce a privilege log for documents withheld from production as such an undertaking would be unduly burdensome.

44. With respect to Document Request 70, the PI Committee has agreed that it will be a sufficient response for Debtors to make a rolling production of a representative sample of settled claims files involving the settlement or resolution of large numbers of asbestos personal injury claims entered into between January 1, 1996 and December 31, 2001. These materials comprise a large volume of documents and are believed to be representative of the settlements entered into by the Debtors prior to their filing for bankruptcy. This group of settled files are located in Boca Raton, Florida. The materials located in Boca Raton are voluminous and reviewing and producing such materials is unduly burdensome. However, the Debtors agree to produce these materials or make such materials available for inspection in Boca Raton, Florida after an appropriate review for privilege and confidentiality, subject to the Debtors obtaining permission to disclose such information from individual plaintiffs' counsel where appropriate and subject to an appropriate confidentiality agreement being executed between the parties to the estimation. Debtors agree to begin review of these settled claims files as soon as

## KIRKLAND & ELLIS LLP

Nathan D. Finch, Esquire
December 16, 2005
Page 13

      they are able to secure sufficient space for such a review and production. Debtors agree to attempt in good faith to begin to make these files available for review on or before January 16, 2006. Further, as agreed, the settled claims files are attorney files, Debtors will not produce a privilege log for documents withheld from production as such an undertaking would be unduly burdensome.

If you have any questions or dispute any of the above agreements, please contact me.

      Sincerely,

      *Barbara M. Harding / Jacb*

      Barbara Mack Harding

Cc:    Gary Becker, Esq. (via email)
        Arlene Krieger, Esq. (via email)
        Debra Felder, Esq. (via email)
        Matthew Kraemer, Esq. (via email)
        Matthew Murphy, Esq. (via email)

# KIRKLAND & ELLIS LLP

*Fax Transmittal*

655 Fifteenth Street, N.W.
Washington, D.C. 20005
Phone: 202 879-5000
Fax: 202 879-5200

**Please notify us immediately if any pages are not received.**

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE OR COPYING IS STRICTLY PROHIBITED AND MAY BE UNLAWFUL.

IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR,
PLEASE NOTIFY US IMMEDIATELY AT:
202 879-5000.

| *To:* | *Company:* | | *Fax #:* | *Direct #:* |
|---|---|---|---|---|
| Nathan Finch | Caplin & Drysdale | | (202) 429-3301 | (202) 862-7801 |
| *From:* | *Date:* | *Pages w/cover:* | *Fax #:* | *Direct #:* |
| Amanda C. Basta | December 16, 2005 | 14 | (202) 879-5200 | (202) 879-5933 |

*Message*: