# EXHIBIT 8



Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
202-862-5000  202-429-3301 Fax
www.caplindrysdale.com

202-862-7801 Direct
ndf@capdale.com

January 10, 2006

**VIA E-MAIL AND HAND DELIVERY**

Barbara Mack Harding, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005

    Re:    In re W.R. Grace -- Discovery Requests

Dear Ms. Harding:

    This letter responds to your December 16, 2005 letter concerning the status of the Official Committee of Asbestos Personal Injury Claimants' ("ACC") outstanding discovery requests directed to the debtors. While much of your letter accurately recites our discussions to date, I disagree or have caveats with the following items from your letter. All references to paragraph numbers are to the paragraph numbers set forth in your December 16 letter; a copy of which is enclosed as Exhibit A for your reference:

Paragraph 1:

    As you know, the ACC believes the Debtor waived attorney-client privilege and work product protection with respect to documents concerning its asbestos litigation strategy, the reasons Grace chose to settle asbestos personal injury cases, and its estimate of its aggregate asbestos liability. I understand that the debtor disagrees with our position and we will ultimately have to resolve the issue through the discovery mediator or a motion to compel. We will reconsider your proposal to attempt to narrow the scope of our dispute through a set of proposed Stipulations that, if Grace agrees to them, could obviate the need for this discovery.

Paragraphs 9-11 (Relating to Sealed Air Materials)

    In general, these paragraphs accurately set forth our agreements. However, unless Grace agrees that the entirety of the Sealed Air exhibits and depositions may be used in

discovery in the estimation proceedings and will not be objected to at trial based on privilege or confidentiality grounds,[1] the ACC will have to depose Messrs. Hughes, Beber, Siegal, Rourke and Florence as part of the fact discovery in the estimation case.

In addition to the fact that in our view Grace waived whatever work product/privilege protection may have attached to the Sealed Air documents when it originally produced them to the parties to the Sealed Air litigation, the Sealed Air Documents were also produced to the United States government. When assessing any claim of continued work product/privilege protection for the materials produced in Sealed Air, I would remind the company that all documents Grace ever produced to the ACC, including the documents produced in the Sealed Air litigation, were produced by the ACC in August 2004 to the United States Government pursuant to a subpoena. Grace was duly notified of this subpoena (see attached letter, Exhibit B) and did not object on privilege or other grounds to the ACC turning over all of these documents to the Government. It is black letter law that once a document arguably protected by the attorney client privilege or work product is produced to a third party not within the ambit of the privilege, any such privilege which may have once protected the document is forever waived. There is no plausible argument that Grace's attorney client or work product privileges extend to the United States government.

Paragraphs 13-16 (Relating to Interrogatories Nos. 2, 3, 4, 5 and 19)

These paragraphs accurately reflect our agreements. Please answer these interrogatories (as modified by our agreements) by January 15.

Paragraph 18 (Relating to Interrogatories 8, 9, and 10)

The ACC cannot agree that production of the settlement agreements and the materials submitted in support of them (such as affidavits of exposure or agreed job site lists) that are located in Boca Raton is a sufficient response to Interrogatories 8 through 10 (which relate jobsite and product id information) until we have a chance to review the documents produced. It may well be that this is the case, but until we see the production we cannot agree in advance that it satisfies our requests. Please advise when you will be able to tell us whether Casner & Edwards or any of the other top 10 firms had a jobsite list.

Paragraph 19

You correctly stated that we disagree with your position on whether Grace must answer interrogatories 12-22 (relating to its past claims history). In the event that Grace's expert

---

[1] We agree Grace can reserve until trial objections based on relevance or other grounds.

witness reports do not contain the information sufficient to answer the interrogatories as posed, we will move to compel.

Document Requests

Paragraph 22 (Relating to Document Requests 2, 3, 4 and 5)

As with interrogatories 8, 9, and 10, the ACC cannot agree that production of the settlement agreements and the materials submitted in support of them (such as affidavits of exposure or agreed job site lists) that are located in Boca Raton is a sufficient response to Document Requests 2 through 5 (which relate jobsite and product id information) until we have a chance to review the documents produced. As I am sure you can understand, until we see the production we cannot agree in advance that it satisfies our requests. Please advise when you will be able to tell us whether Casner & Edwards or any of the other top 10 firms had a jobsite list.

Paragraph 24 (Relating to Grace's responses to Interrogatories and Requests for Admission)

We agree that Grace can satisfy these document requests by producing 5 interrogatories and 5 requests for admission in the form in which Grace's national counsel (Casner & Edwards) sent them to local counsel for each year from 1985 through 2001. Please advise when these documents are available in the repository.

Paragraph 27 (Relating to Document Request 18)

The ACC continues to request documents relating to audits of settled Asbestos Tort Claim files conducted at the request of any insurer from the time period 1996 through 2001. Please advise whether you will produce all documents responsive to this request.

Paragraph 29 (Relating to Document Requests 23, 53, 68 and 69)

In addition to estimates of Grace's asbestos liability prepared pre-petition, we also asked for any estimates of Grace's aggregate asbestos liability prepared after the petition date. We do not agree to limit our request to pre-petition estimates of liability; among other things Grace has filed a Plan and financial statements with the SEC subsequent to its bankruptcy petition which contain implicit or explicit estimates of asbestos liability. We do not agree that these materials are protected by any privilege; please provide us with a privilege log identifying all documents responsive to these requests which you claim are privileged as soon as possible.

Paragraph 32 (Relating to Document Requests 47 and 66)

As stated above, the ACC believes the Debtor waived attorney-client privilege and work product protection with respect to documents concerning its asbestos litigation strategy, the reasons Grace chose to settle asbestos personal injury cases, and its estimate of its aggregate asbestos liability. I understand that the debtor disagrees with our position and we will ultimately have to resolve the issue through the discovery mediator or a motion to compel. We will reconsider your proposal to attempt to narrow the scope of our dispute through a set of proposed Stipulations that, if Grace agrees to them, could obviate the need for this discovery.

Paragraph 33 (Relating to Document Request 48)

Please produce the Debtors' standard list of experts that it named in asbestos personal injury litigation.

Paragraph 34 (Relating to Document Request 49)

In addition to the information responsive to Interrogatory number 3, we also asked Grace to indicate whether it ever allocated any settlement payment or portion of a settlement payment to punitive damages. See Interrogatory Number 32, served on December 13, 2005.

Paragraph 37 (Relating to Document Requests 55-58)

The ACC stands on its existing requests and there has been no agreement reached with respect to them. Please advise on your final position as to these requests and the volume of documents responsive to same as soon as possible.

Paragraph 38 (Relating to Document Request 59)

As with interrogatories 8, 9, and 10 and Document Requests 2-5, the ACC cannot agree that production of the settlement agreements and the materials submitted in support of them (such as affidavits of exposure or agreed job site lists) that are located in Boca Raton is a sufficient response to Document Request 59 (which relate Grace's standards for accepting jobsite and product id information) until we have a chance to review the documents produced.

Paragraph 40 (Relating to Document Request 61)

Please produce all materials that form the basis for the presentations the Debtor has made to the Court concerning the occupational characteristics of its claimant population immediately.

Caplin & Drysdale
CHARTERED

- 5 -

<u>Paragraph 42 (Relating to Document Request 65)</u>

The ACC will review the representative production of insurance coverage litigation materials that you have agreed to produce. We cannot agree to limit our request to the materials produced until we have the opportunity to review them.

<u>Paragraphs 43 and 44 (Relating to Document Requests 67 and 70)</u>

As with interrogatories 8, 9, and 10 and Document Requests 2-5, 59, the ACC cannot agree that production of the settlement agreements and the materials submitted in support of them (such as affidavits of exposure or agreed job site lists) that are located in Boca Raton is a sufficient response to Document Requests 67 and 70 (which relate Grace's settlement history and standards for accepting jobsite and product id information) until we have a chance to review the documents produced.

With respect to all of the ACC's document requests, it is our understanding that Grace will produce any documents that its experts relied upon in reaching his or her opinions or conclusions set forth in their expert witness reports, regardless of whether or not such documents are covered by any our outstanding document requests. Please advise if this is the case.

Please call me at your earliest convenience to (1) discuss the areas where we are still in disagreement, (2) arrange for a date to begin review of the documents to be produced in Boca Raton and (3) tell me when we will have the debtor's final position on the Sealed Air documents and depositions, the debtors' prior estimates of asbestos liability, and the insurance audit and coverage litigation files.

Sincerely,

Nathan D. Finch

NDF/skl
Enclosures

cc:  Richard Wyron, Esq. (w/enclosures; by email and first class mail)
     Arlene Krieger, Esq. (w/enclosures; by email)
     Gary Becker, Esq. (w/enclosures; by email)
     Matthew Kramer, Esq. (w/enclosures; by email)