IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Related Docket Nos.: 13406 and 15156** |

**DEBTORS' WITNESS DISCLOSURE FOR LIVE TESTIMONY BY JAMES CINTANI AND THOMAS EGAN**

Debtors may call former Grace employees James Cintani and Thomas Egan to testify live at the April 23-25, 2007 hearing on product identification objections to certain Asbestos PD claims.

***The Witnesses' Backgrounds***

James Cintani was born in Ellwood City, Pennsylvania and now lives in Yardley, Pennsylvania. He worked for the Zonolite Company ("Zonolite") beginning in 1953 and later for W. R. Grace & Co. ("Grace"), until his retirement in 1990. For most of his thirty-seven years at Zonolite and Grace, Mr. Cintani sold those companies' construction products. Among the products he sold were Grace's asbestos-containing fireproofing product, called MonoKote-3 ("MK-3"), and Grace's asbestos-containing acoustical plaster products, especially Zonolite Acoustical Plaster, or "Plastic" ("ZAP"). Mr. Cintani's positions at Zonolite and Grace included salesman, district sales manager and regional sales manager. Throughout his career at Zonolite and Grace, Mr. Cintani was familiar with the construction products those companies sold in the United States and Canada.

Thomas Egan was born in Pittsburgh, Pennsylvania and now lives in Boothwyn, Pennsylvania. He worked for Zonolite beginning in 1960 and later for Grace, where he was

employed until 1978. For most of his eighteen years at Zonolite and Grace, Mr. Egan sold those companies' construction products, including MK-3 and ZAP. Mr. Egan's positions at Zonolite and Grace included architectural sales representative, district sales manager and regional sales manager. In addition, for nearly three years, Mr. Egan served as Corporate Product Manager for Grace's MonoKote products, especially MK-3. As MonoKote product manager, Mr. Egan was responsible for promoting the sale of MK-3 and ZAP throughout the United States and Canada. Throughout his career at Zonolite and Grace, Mr. Egan was familiar with the construction products those companies sold in the United States and Canada. Since leaving Grace in 1978, Mr. Egan has continued to work in the fireproofing industry.

As part of their duties at Zonolite and Grace, Mr. Cintani and Mr. Egan frequently attended sales meetings along with individuals who had responsibility for sales in various geographic areas within the United States and Canada. Those meetings were also regularly attended by representatives of the companies' licensees, including its Canadian licensees. For example, the witnesses routinely attended district, regional and national sales meetings and participated in the activities of the Vermiculite Institute. At such meetings, Mr. Cintani and Mr. Egan interacted with Grace sales personnel and licensees from throughout the United States and Canada. The witnesses will testify that, at such meetings and otherwise, information regarding Grace's products and sales was shared and discussed, including information on the subject of ending the manufacture and sale of asbestos-containing MK-3 and ZAP in the United States and Canada.

***The Witnesses' Substantive Testimony***

At the April 23-25, 2007 hearing, Debtors intend to call Mr. Cintani or Mr. Egan, or both of them, to testify on product identification issues. The substantive matters that will be addressed between them are described below.

The witnesses will describe the relevant Grace products, especially MK-3 and ZAP. They will testify about how those products were made, sold, applied and used on job sites and in buildings. They will outline Grace's history with those products and their formulation. In particular, the witnesses will testify that Grace's MK-3 and ZAP products were approved for fire resistance purposes by Underwriters Laboratories ("UL") and that a condition of UL's approval was that Grace's products be manufactured in accordance with the formula approved by UL, which they were. In addition, the witnesses will testify that they were present at hundreds of job sites where Grace's products were being applied and they observed Grace's products being applied.

Mr. Cintani or Mr. Egan will testify that the market for Grace's ZAP substantially declined during the 1960's and that by the early 1970's Grace had discontinued selling ZAP in the United States. The witnesses will also testify that Grace discontinued selling MK-3 in the United Sates by July, 1973, and discontinued selling MK-3 and ZAP in Canada by no later than 1975.

In large part, the witnesses' testimony will address certain documentary evidence claimants may offer in support of their product identification claims. For example, they will testify about various architects' specifications, "job lists," "bid sheets," correspondence and other secondary evidence of product identification that claimants may offer.

Mr. Cintani or Mr. Egan will testify that architects' specifications, by themselves, do not establish that the product specified was actually installed in the building described in the specifications. This is so for a variety of reasons. Architects were not Grace's customers, fireproofing or plastering subcontractors were, so the architects' product preferences frequently did not prevail over the preferences of the subcontractors. Thus, on many occasions, a product specified by an architect was not actually installed in the building. Perhaps more important, virtually all architects' specifications that identified a Grace product were phrased in terms such

as, "MK-3 or other approved material," "MK-3 or equal," or in other language that expressly permitted the substitution of another manufacturer's product for the Grace product. In the witnesses' experience, Grace "lost" the contract to supply its products for many buildings, despite having been named in the architect's specifications.

Mr. Cintani or Mr. Egan will also testify about various "bid sheets" or "job lists" offered by the claimants in support of their contentions that Grace's MK-3 or ZAP is present in particular buildings. Many of these documents reflect nothing more than that a fireproofing contractor had bid on a job using a Grace price quote. Many other documents are dated in the early 1970's, a time when inflation was a significant concern in the United States. At that time, bid sheets or job lists often reflected nothing more than action by a subcontractor to protect itself from price increases. The custom at the time was that, if a subcontractor obtained a quote on a Grace product for a project on which it was bidding, it was understood that Grace would not raise its price if the subcontractor ultimately was selected for that job. However, the practices of Grace's competitors in this regard were the same, so it was not unusual for subcontractors to have obtained quotes from more than one manufacturer. By themselves, bid sheets and job lists do not establish that MK-3 or ZAP was actually installed in a particular building.

The witnesses will also testify concerning other correspondence and documents on which claimants rely in support of their product identification claims. Many of those documents reflect nothing more than that a fireproofing or plastering subcontractor, in its bid for a particular building, anticipated using Grace's MK-3 or ZAP in the building. Grace, however, "lost" many more bids than it "won," so such documents, by themselves, do not establish that MK-3 or ZAP was actually installed in a particular building.

Finally, Mr. Cintani and Mr. Egan may address other issues, including issues raised by the documents claimants intend to offer into evidence at the product identification hearing. Because Grace does not yet know which documents of that type claimants are going to include

on the final lists of exhibits they intend to offer at the April 23-25 hearing (claimants final exhibit lists are being served on Grace contemporaneously with Grace's service on them of this witness disclosure), the witnesses' testimony may address other subjects beyond those described here.

Dated: April 13, 2007

REED SMITH LLP
James J. Restivo, Jr. (Bar No. 10113)
Lawrence E. Flatley (Bar No. 21871)
Douglas E. Cameron (Bar No. 41644)
Traci S. Rea (Bar. No. 76258)
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: (412) 288-3131
Facsimile: (412) 288-3063

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Lisa Esayian
Samuel L. Blatnick
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

By: ______________________________
Co-Counsel for the Debtors and Debtors in Possession