IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ) | |
| ) | |
| W. R. GRACE & CO., et al. ) | Chapter 11 |
| ) | |
| Debtors. ) | Case No. 01-01139 (JKF) |
| ) | (Jointly Administered) |
| ) | |
| ) | Related Docket Nos: 13406 and 15156 |

**DEBTORS' TRIAL BRIEF FOR THE APRIL 23-25, 2007
PRODUCT IDENTIFICATION HEARING ON CERTAIN
ASBESTOS PROPERTY DAMAGE CLAIMS**

Debtors ("Grace") have identified certain asbestos property damage claims for which claimants (the "Claimants") have failed to meet their burden of establishing that Grace's asbestos-containing surfacing products were installed in their buildings. Pursuant to the Court's April 11, 2007 Order, Grace's product identification objections to those claims[1] will be tried on April 23-25, 2007. Grace submits that Claimants will be unable to meet their burden of establishing product identification at the hearing. Because Claimants will be unable to prove product identification, the claims at issue should be disallowed and expunged at the conclusion of the hearing.

I. **CLAIMANTS BEAR THE BURDEN OF PROVING PRODUCT IDENTIFICATION.**

Claimants bear the initial burden of establishing facts sufficient to support a legal basis for their respective claims. *See Allegheny International, Inc.*, 954 F.2d 167, 173 (3rd Cir. 1992).

---

[1] The claims at issue in the April 23-25 hearing are specifically identified in the list of claims that is being filed contemporaneously with this brief. These claims are in addition to the eleven (11) claims filed by certain pro se claimants that were the subject of Debtor's Motion for an Order Pursuant to FRBP 7056 Disallowing and Expunging Eleven (11) Asbestos Property Damage Claims Involving Products Not Made By The Debtor [Docket No. 14593]. Because the Court has indicated that these claims will be expunged, subject to a thirty (30) day period for reconsideration, these eleven claims are not included in the April 23-25, 2007 product identification hearing.

"It is well established that product identification is an essential element of every products liability action." *In re Dow Corning Corp.*, 250 B.R. 298, 353-54 (Bankr. E.D. Mich. 2000). Accordingly, a necessary prerequisite to recovery for alleged asbestos property damage is a showing by claimants that one of Grace's asbestos-containing products was installed in the buildings for which the claims were filed. The Court recognized this burden at the April 9, 2007 arguments on Grace's motions for summary judgment.

Claimants similarly bear the ultimate burden of persuasion in establishing the validity of their claims. *Allegheny*, 954 F.2d at 174; *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991); *see also In re Harrison*, 987 F.2d 677, 680 (10th Cir. 1993) ("If objection is made to the proof of claim, the creditor has the ultimate burden of persuasion as to the validity and amount of claim."). As part of that burden, Claimants must establish by a preponderance of the evidence, that the product for which they are making their claims was manufactured by Grace. *In re Pugh*, 157 B.R. 898, 901 (9th Cir. BAP 1993); *Smith v. Sprayberry Square Holdings, Inc. (In re Smith)*, 249 B.R. 328, 333 (Bankr. S.D. Ga. 2000).

Courts routinely dismiss property damage claims for failure to provide adequate product identification. *See University of New Hampshire v. United States Gypsum Co.*, 756 F. Supp. 640, 659 (D.N.H. 1991); *Catasauqua Area Sch. Dist. v. Raymark Indus., Inc.*, 662 F. Supp. 64, 66-67 (E.D. Pa. 1987); *210 E. 86th St. Corp. v. Combustion Eng'g, Inc.*, 821 F. Supp. 125 (S.D.N.Y. 1993). This Court has disallowed asbestos property damage claims in these Chapter 11 cases for failure to prove product identification (*see, e.g.*, Claim No. 15352) and has stated that if "there's no product ID, then I don't think I have a choice but to strike the claims." (1/25/06 Tr. at 45). A claimant's unsupported allegation that building materials were manufactured by Grace is

insufficient to prevent dismissal of such claims. *See Catasauqua Area School Dist. v. Eagle-Picher Indus., Inc.*, 118 F.R.D. 566, 571 (E.D. Pa. 1988).

II. **CLAIMANTS' ASBESTOS PD CLAIMS SHOULD BE DISALLOWED AND EXPUNGED AT THE CONCLUSION OF THE HEARING BECAUSE CLAIMANTS CANNOT MEET THEIR BURDEN OF ESTABLISHING PRODUCT IDENTIFICATION.**

In support of their property damage claims, Claimants have generally submitted two types of documents relating to product identification. First, some of the Claimants have submitted laboratory test results of bulk samples purporting to show that the materials in their buildings contain asbestos. Second, several of the Claimants have submitted architects' specifications, "job lists," "bid sheets," correspondence and other secondary evidence, some of which refers to Grace's products. For the claims at issue, the laboratory data and secondary evidence submitted by the Claimants are insufficient to establish that Grace's asbestos-containing surfacing products were installed in the Claimants' buildings.

A. **Claimants' bulk sample testing is insufficient to establish product identification.**

The Grace spray-on asbestos-containing products that are at issue in these Chapter 11 cases generally fall into two categories: (1) the asbestos-containing fireproofing product called MonoKote-3 ("MK-3"); and (2) the asbestos-containing acoustical plaster products, especially Zonolite Acoustical Plaster, or "Plastic" ("ZAP"). These products were manufactured pursuant to product formulas which, like recipes, specified the ingredients (or "constituents") of the products and the amount (or "abundance") of each ingredient in the products.

MK-3 generally consisted of gypsum, vermiculite and chrysotile asbestos. Grace's formulas for ZAP varied to some degree, but in general the constituents included vermiculite, clay, chrysotile asbestos and sometimes titania. A copy of Grace's formulas for its asbestos-containing surfacing materials was included as Appendix A to the Expert Report of Richard J.

91100-001\DOCS_DE:126626.1

Lee, Ph.D. For Asbestos Property Damage Claims Product Identification dated January 17, 2007 (the "Lee Report"), which was filed with the Court [Docket No. 14351].

Dr. Richard J. Lee[2] will testify at the hearing that the products upon which Claimants' base their claims can be tested using conventional laboratory methods to compare the constituents of the product tested to the product formulas Grace used at the time the products were manufactured. Dr. Lee is familiar with the product formulas for both MK-3 and ZAP and, over the years, has compared and contrasted the results of numerous analyses of bulk building material samples with the product formulas at issue.

Dr. Lee will testify that he was retained by Grace: (1) to review and compile laboratory data for bulk samples that were submitted with the asbestos property damage claims in this matter; (2) to compare the bulk sample results with Grace formulas for asbestos-containing surfacing products; and, (3) to the extent permitted by the data, to make a determination as to whether the results are inconsistent or not inconsistent with those formulas.

Dr. Lee will also testify that Grace's product formulas are like recipes—they specify the ingredients (i.e., "constituents") and the amount (i.e., "abundance") of each ingredient to be used in the products – and that the product material can be analyzed using conventional laboratory methods and compared to the formulas used at the time of manufacture. Dr. Lee may testify concerning the analytical methods used to identify and quantify constituents in building materials samples.

---

[2]   Dr. Lee is a microscopist and materials scientist who is engaged in and specializes in materials characterization, which is the science that uses a variety of analytical techniques to determine the identity and amount of each component of a material. He earned a Ph.D. in solid state physics from Colorado State University, and held positions as a physics professor at Purdue University and a research scientist at United States Steel Corporation before starting RJ Lee Group, a firm that provides research, analytical, and consulting services relating to materials characterization.

91100-001\DOCS_DE:126626.1

Dr. Lee will also testify that in determining whether sample results are inconsistent or not inconsistent with particular product formulas, he evaluates whether the constituents named in the product formula are present or absent, whether constituents not called for in the product formulas are present and how estimated abundances of the constituents in the sample compare with the abundances specified in the product formulas (**Debtors' Pre-Marked Exhibit 2**). He will further testify that comparing bulk material sample results to product formulas is similar to comparing a list of ingredients to a recipe.

Based on his review of analyses performed by other laboratories, Dr. Lee will testify that some laboratories do not always provide sufficient data to enable one to compare the results to a product formula. For example, some laboratories issue reports for a bulk building material sample by identifying and quantifying only the asbestos component of the sample. With such limited information (i.e., the identity and quantity of only one constituent) one cannot determine to a reasonable degree of scientific certainty whether or not the material is consistent with a specific product formula (**Debtors' Pre-Marked Exhibit 3**). Another example is that some laboratories identify and quantify the asbestos component of the sample and report all other constituents as "binder" or "non-fibrous material" (**Debtors' Pre-Marked Exhibit 4**). Dr. Lee will testify that, with such limited and nonspecific information about the constituents of the sample, one cannot determine whether or not the material is consistent with a specific product formula.

Dr. Lee will also testify that he was provided with and reviewed documents filed by claimants in this matter to which laboratory data were attached. He will describe the process (**Debtors' Pre-Marked Exhibit 5**) used to review and compile the data (**Debtors' Pre-Marked Exhibit 6**) and to sort the samples into categories of: (1) samples with laboratory data

demonstrating the sample is not a Grace Surfacing Product (e.g., pipe insulation, mud, tape, floor tile, ceiling tile; glaze, mastic); (2) samples with insufficient laboratory data to render a product identification conclusion to a reasonable degree of scientific certainty; (3) samples with laboratory data inconsistent with Grace Surfacing Products (e.g., presence of component not called for in the Grace formulas such as non-chrysotile asbestos, cellulose, glass fiber, mineral wool or foam or the absence of component called for in the formulas); and (4) samples with laboratory data not inconsistent with Grace's formulas for asbestos-containing surfacing products **(Summary Spreadsheets – Debtors' Pre-Marked Exhibit 7)**

Dr. Lee's analysis shows that the laboratory data from samples taken from the buildings at issue that he has reviewed, and that are included in Debtors' exhibits, do not provide all of the information necessary to make a comparison to the Grace product formula or show that the building materials analyzed contained components that are not present in the Grace products. In either case, the claimants' laboratory data fail to satisfy the claimants' burden of establishing that Grace's products were installed in claimants' buildings.

### B.   Claimants' secondary evidence is insufficient to establish product identification.

Some of the Claimants submitted construction-related documentation ostensibly to establish that Grace's products were installed in their buildings. For example, several Claimants submitted architects' specifications, "job lists," "bid sheets," correspondence or other secondary evidence of product identification. These documents, however, do not prove that any asbestos-containing products manufactured by Grace were installed in Claimants' buildings.

While some of the secondary evidence submitted by the Claimants refers to Grace's products, as the Court will hear, these documents do not prove that Grace's products were

91100-001\DOCS_DE:126626.1

actually installed in Claimants' buildings. In this regard, Grace intends to call former Grace employees James Cintani[3] and/or Thomas Egan[4] to testify at the product identification hearing.

Mr. Cintani or Mr. Egan will testify about how MK-3 and ZAP were made, sold, applied and used on job sites and in buildings. They will outline Grace's history with those products and the products' formulation. The witnesses will testify that MK-3 and ZAP were approved for fire resistance purposes by Underwriters Laboratories ("UL") and that a condition of UL's approval was that Grace's products be manufactured in accordance with the formula approved by UL, which they were. In addition, the witnesses will testify that they were present at hundreds of job sites where Grace's products were being applied and they observed Grace's products being applied.

Mr. Cintani or Mr. Egan will testify that the market for Grace's ZAP substantially declined during the 1960's and that by the early 1970's Grace had discontinued selling ZAP in the United States. The witnesses will also testify that Grace discontinued selling MK-3 in the United Sates by July, 1973, and discontinued selling MK-3 and ZAP in Canada by no later than 1975.

Mr. Cintani or Mr. Egan will testify that architects' specifications, by themselves, do not establish that the product specified was actually installed in the building described in the

---

[3] James Cintani was born in Ellwood City, Pennsylvania and now lives in Yardley, Pennsylvania. He worked for the Zonolite Company ("Zonolite") beginning in 1953 and later for Grace until his retirement in 1990. For most of his thirty-seven years at Zonolite and Grace, Mr. Cintani sold those companies' construction products. Among the products he sold were MK-3 and ZAP. Mr. Cintani's positions at Zonolite and Grace included salesman, district sales manager and regional sales manager. Throughout his career at Zonolite and Grace, Mr. Cintani was familiar with the construction products those companies sold in the United States and Canada.

[4] Thomas Egan was born in Pittsburgh, Pennsylvania and now lives in Boothwyn, Pennsylvania. He worked for Zonolite beginning in 1960 and later for Grace, where he was employed until 1978. For most of his eighteen years at Zonolite and Grace, Mr. Egan sold those companies' construction products, including MK-3 and ZAP. Mr. Egan's positions at Zonolite and Grace included architectural sales representative, district sales manager and regional sales manager. In addition, for nearly three years, Mr. Egan served as Corporate Product Manager for Grace's MonoKote products, especially MK-3. As MonoKote product manager, Mr. Egan was responsible for promoting the sale of MK-3 and ZAP throughout the United States and Canada. Throughout his career at Zonolite and Grace, Mr. Egan was familiar with the construction products those companies sold in the United States and Canada. Since leaving Grace in 1978, Mr. Egan has continued to work in the fireproofing industry.

91100-001\DOCS_DE:126626.1

specifications. This is so for a variety of reasons. Architects were not Grace's customers, fireproofing or plastering subcontractors were, so architects' product preferences frequently did not prevail over the preferences of subcontractors. Thus, on many occasions, a product specified by an architect was not actually installed in the building. Perhaps more important, virtually all architects' specifications that identified a Grace product were phrased in terms such as, "MK-3 or other approved material," "MK-3 or equal," or in other language that expressly permitted the substitution of another manufacturer's product for the Grace product. In the witnesses' experience, Grace "lost" the contract to supply its products for many buildings, despite having been named in the architect's specifications.

Mr. Cintani or Mr. Egan will also testify about various "bid sheets" or "job lists" offered by the claimants in support of their contentions that Grace's MK-3 or ZAP is present in particular buildings. Many of these documents reflect nothing more than that a fireproofing contractor had bid on a job using a Grace price quote. Many other documents are dated in the early 1970's, a time when inflation was a significant concern in the United States. At that time, bid sheets or job lists often reflected nothing more than action by a subcontractor to protect itself from price increases. The custom at the time was that, if a subcontractor obtained a quote on a Grace product for a project on which it was bidding, it was understood that Grace would not raise its price if the subcontractor ultimately was selected for that job. However, the practices of Grace's competitors in this regard were the same, so it was not unusual for subcontractors to have obtained quotes from more than one manufacturer. By themselves, bid sheets and job lists do not establish that MK-3 or ZAP was actually installed in a particular building.

The witnesses will also testify concerning other correspondence and documents on which claimants rely in support of their product identification claims. Many of those documents reflect nothing more than that a fireproofing or plastering subcontractor, in its bid for a particular building, anticipated using Grace's MK-3 or ZAP in the building. Grace, however, "lost" many

- 9 -

more bids than it "won," so such documents, by themselves, do not establish that MK-3 or ZAP was actually installed in a particular building.

Accordingly, the secondary evidence that some of the Claimants have submitted in support of their claims is insufficient to carry Claimants' burden of establishing product identification.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

Grace submits that the Claimants will be unable to carry their burden of establishing that Grace's asbestos-containing surfacing products were installed in their buildings. Accordingly, the claims at issue should be disallowed and expunged.

Dated:  April 13, 2007

REED SMITH LLP
James J. Restivo, Jr. (#10113)
Lawrence Flatley (#21871)
Douglas E. Cameron (#41644)
Traci S. Rea (#76258)
435 Sixth Avenue
Pittsburgh, PA  15219
Telephone:  (412) 288-3131
Facsimile:  (412) 288-3063

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Lisa G. Esayian
Samuel Blatnick
Michael Dierkes
200 East Randolph Drive
Chicago, Illinois 60601
Telephone:  (312) 861-2000
Facsimile:  (312) 861-2200

and

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

By:_____
Co-Counsel for the Debtors and Debtors
in Possession

91100-001\DOCS_DE:126626.1