## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: ) <br> ) <br> W.R. Grace & Co., *et al.*, ) <br> ) <br> Debtors. ) <br> ) <br> ) | In Proceedings for a Reorganization under Chapter 11 <br><br> Case No. 01-01139-JKF (Jointly Administered) <br><br> Re: Docket No. 15057 |

**MEMORANDUM OF EARLY, LUDWICK, SWEENEY & STRAUSS, LLC,
THE WARTNICK LAW FIRM, WATERS & KRAUS, LLP,
AND WISE & JULIAN, LLP IN RESPONSE TO
DEBTORS' MOTION ALLEGING NONCOMPLIANCE WITH X-RAY ORDER**

Early, Ludwick & Sweeney, LLC ("ELS"), The Wartnick Law Firm ("Wartnick"), Waters & Kraus, LLP ("W&K") and Wise & Julian, LLP ("W&J") (collectively these four law firms are referred to herein as "Respondent Law Firms") submit this Memorandum in response and opposition to the Debtors' Motion Regarding Noncompliance with X-Ray Order ("Debtors' Motion").

**I.     INTRODUCTION**

Each of the Respondent Law Firms has complied with both the letter and the spirit of this Court's x-ray orders.

The Respondent Law Firms represent, in total, 68 claimants that are alleged not to have either delivered x-rays or certification that the x-rays no longer exist to the Debtor by March 15, 2007. The Respondent Law Firms have provided x-rays with the required certification (or certification that the x-rays no longer exist) to the Debtors for all of their other non-mesothelioma cancer clients that were required to provide x-rays under the terms of the Order

2174927v1

Regarding X-ray Evidence dated December 22, 2006, and the Supplemental Order Regarding production of X-rays by Non-Mesothelioma Cancer Claimants dated February 20, 2007 (together, the "X-ray Orders").

Of these 68 claimants that the Debtors assert have not complied with the X-ray Orders, 2 had provided certification of destruction of their x-rays by March 15, 2007. Of the remaining 66, 8 claimants were not subject to the X-ray Orders in the first place, x-rays have since (as of the date of this response) been provided to Rust for 6 claimants, and certifications that x-rays have been destroyed have since been provided to Rust for 2 claimants. See Affidavits attached as Exhibits A, B and C and correspondence attached as Exhibit D.

For each of the remaining 50 claimants for whom x-rays or certification of destruction have not been delivered to Rust, the subject x-rays w*ere not in the possession, custody or control of the law firms*[1], but were in the hands of third parties who have failed to deliver them to the Respondent Law Firms after timely request by the Respondent Law Firms. In each case, the Respondent Law Firms have made and continue to make further and substantial efforts to obtain and provide any existing x-rays to Grace. Id.

Two of the Respondent Law Firms, Wartnick and W&K, are identified on Exhibit 4 of the Debtors' Motion as law firms representing "Claimants Whose X-Rays Were Not Located." The Debtors contend that "[t]he Supplemental X-ray Order required Claimants to certify that the x-rays no longer existed, not just to say that their whereabouts are currently unknown." See Debtors' Motion, p. 6.

---

[1] See Rule 34(a) of the Federal Rules of Civil Procedure ("Any party may serve on any other party a request (1) to produce … any designated documents … which are in the possession, custody or control of the party upon whom the request is served ….")

To the contrary, the only circumstance in which a Claimant was required to certify the nonexistence of an x-ray was where "no original x-ray or copy exists." <u>See</u> Supplemental X-ray Order, ¶ 5.

The other two Respondent Law Firms, ELS and W&J, are listed on Exhibit 5 and identified as "Firms with Claimants' X-rays in the Hands of Third Parties."

As to all of these Claimants, the Debtors seek an order limiting them to "presenting x-ray evidence that was timely produced to the Debtor in compliance with the Supplemental X-Ray Order."

The preclusive remedy sought by the Debtors was not provided by the X-ray Orders (which, as detailed below, were agreed to by the Debtors following substantial motion practice and hearings before this Court); to the contrary the remedy for not providing x-rays with the required certification, or certification of destruction, by March 15 was expressly spelled out in the Supplemental X-ray Order, which permitted the Debtor to return to this Court to consider "how to facilitate Grace's inspection of such chest x-ray and whether to order that such Claimant's chest x-ray be sent to a repository of the Court." <u>See</u> Supplemental X-ray Order at ¶ 6.

The remedy sought by the Debtors is also contrary to this Court's prior rulings, and is entirely unjustified under the facts, by law and by equity.

Finally, this Motion is yet another instance of the colossal waste of the Estate's limited funds and this Court's limited time that has been the hallmark of the discovery process associated with the Estimation Proceeding.

## II. ARGUMENT

### A. The X-ray Orders Reflect Rulings by the Court and Expressly Provide the Remedy for the Circumstance Where a Claimant Did Not Deliver to the Debtors by March 15, 2007

Although the X-ray Orders primarily seek x-rays from claimants who had cases pending before the Debtor's bankruptcy case was filed, and although the Court entered a Case Management Order allowing for estimation proceeding discovery to begin in August, 2005, Grace did not begin seeking x-rays until October, 2006. A flurry of motions and responses followed, and on December 5 and December 19, 2006 the Court heard argument concerning a protocol for x-ray production.

At the hearing on December 15, 2006, in response to an argument by Debtors' counsel that the Debtors required that the x-rays be produced on a "timely basis," the Court stated:

> Mr. Bernick, they're going to be what they're going to be. If you want them timely go to the site and look at the x-rays. I can't control the world, Mr. Bernick. It's going to be what it is.

See Transcript, 12/5/06 Hearing at p. 96, lines 7-10.

At the hearing on December 19, 2006, counsel for the Respondent Firms stated:

> What we are concerned about ---and without taking up too much time – is the various types of circumstances that could arise in a mandatory order that appears to require us to do something we can't ….

See Transcript, 12/19/06 Hearing at p. 15, lines 1-4.

Subsequently, on December 22, 2006, the court entered a negotiated "Order Regarding X-Ray Evidence" (the "X-ray Order"). Grace expressly agreed to the terms of the December 22 Order, and submitted it to the Court on a Certification of Counsel.

-4-

The X-ray Order specifically set out a procedure to apply in situations where "a hospital or other third party has possession of the original x-ray and refuses or fails to timely produce it to the Claimant or his counsel after request for it has been made by the Claimant." See X-ray Order at ¶ 4:

> Upon notification that the original is unavailable pursuant to this paragraph, counsel for Claimant shall notify Grace with a Medical Authorization and Release Form that will authorize Grace to access and review the original x-ray in the custody of the third party.

Shortly after December 22, 2006, dissatisfied that the X-ray Order had not resulted in more x-rays being delivered to Grace, Grace sought to amend the X-ray Order. On January 30, 2007, Grace filed an "Expedited Motion to Modify Order Regarding Production of X-Rays Based on Substantial Non-Compliance With Order," in which Grace requested that the Court amend the December 22 Order to require all firms to either: 1) send Grace copies of all x-rays along with certifications that such copy is materially identical to the original; or else 2) submit original x-rays to a central repository.

The Court heard Grace's Expedited Motion on February 5, 2007. At this hearing, the Court again acknowledged that in some instances a claimant would be unable to produce an x-ray copy. At that time, the Court dismissed the suggestion that Grace could exclude x-ray evidence for the claimant in question. For example:

> The Court: With respect to the second part, however, of your order that if the x-ray does exist and can't be produced, that means that there is no evidence of lung disease that is tied to asbestos, I don't know if I could go there.
>
> Mr. Bernick: Well, I'll make – let me – let me really make sure I gave clear – I wouldn't advocate that. What I'm saying is that if they're not going to provide the certified copy, and they want to use – I'm sorry, if they're not going to provide the certified copy, then they at that

|              |                                                                                                                                                                                                                                                                                                                                                                                                                |
|--------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|              | point – we don't have any basis for being able to ascertain whether the original was properly read. And –                                                                                                                                                                                                                                                                                                      |
| The Court:   | Yes you do, you could go look at the originals.                                                                                                                                                                                                                                                                                                                                                                |
| Mr. Bernick: | No – well, but that – okay, that then gets back to the question that again is going to swallow –                                                                                                                                                                                                                                                                                                               |
| The Court:   | But that's your choice. I mean, you and your clients have decided the method by which you choose to do this estimation hearing. And there are costs involved in discovery. If you've chosen the method of doing discovery, this happens to be an expensive method, that's your choice. I don't think that's up to the parties to bear that expense. I don't like to see the estate using up a lot of dollars in a fashion that isn't going to be productive. But nonetheless, that's still your choice. |

See Transcript, 2/5/07 Hearing, at pp. 31-32, lines 24-22.

The February 5th hearing resulted in another agreed order, the Supplemental X-ray Order, which was also submitted to the Court by the Debtors on a Certification of Counsel.

The Supplemental X-ray Order again *expressly contemplated* that there would be circumstances where a Claimant did not deliver either the x-ray or the certification. This provision was intended to cover a variety of circumstances where the Claimant was unable or otherwise had failed to deliver the original or a certified copy of an x-ray in a timely fashion. See Supplemental X-ray Order at ¶ 6. The remedy for that circumstance was specifically outlined in advance.

Paragraph 6 of the Supplemental X-ray Order states:

> Where a Claimant's chest x-ray exists (either a copy or the original) and neither such Claimant nor his or her counsel provides the original (or a copy thereof with a certification as provided in numbered Paragraphs 1, 2 or 3 above), *the Court will consider, upon expedited motion, how to facilitate Grace's inspection of such chest x-ray* and whether to order that such Claimant's chest x-ray be sent to a repository of the Court.

Id. (emphasis added).

That is, where the Claimant failed to produce an existing x-ray, Grace was provided with the right to seek the Court's assistance, on an expedited basis, to obtain the x-ray.

.       Neither the Supplemental X-Ray Order, nor the December 22 Order provide for preclusion of x-rays that claimants have not yet been able to locate or procure from third parties.

Both of the X-ray Orders reflect and embody the Court's rulings and ultimately the Debtor's agreement with regard to the circumstance where a claimant was unable to obtain an x-ray in the hands of a third party and deliver it to the Debtor by the deadline established in the respective X-ray Orders.

"Court orders 'must ordinarily be interpreted by examination of only the 'four corners' of the document.'" Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 286 (3d Cir. 1991) (quoting United States v. Reader's Digest Ass'n, Inc., 662 F.2d 955, 961 (3d Cir. 1981). This is particularly true in the circumstance where there has already been multiple 'bites at the apple,' the arguments have been made and rejected, and the Debtors agreed to the remedy that would apply in this circumstance.

The remedy the Debtors now seek is contrary to the express terms to which the Debtors agreed as embodied in the X-ray Orders, is contrary to this Court's prior rulings on this matter, and is improper as an after-the fact effort to resurrect a position previously argued and lost.

2174927v1

B. **Each of the Respondent Firms Has Made and Continues to Make Diligent, Good Faith Efforts to Obtain Existing X-rays for the Claimants that They Represent that are Subject to the X-ray Orders**

1. Early, Ludwick, Sweeney & Strauss

ELS is listed on Exhibit 5 of the Debtors' Motion as having 6 Claimants with x-rays "in the possession of third parties." This characterization is correct. The x-rays for these Claimants were not in the possession, custody or control of ELS. Notwithstanding that fact, as of this date, only 1 Claimant has not provided either an x-ray or a certification of destruction.

Attached as Exhibit A is a copy of a Certification provided by ELS to Rust on March 14, 2007 (without attachments) reflecting transmittal of certifications that x-rays no longer exist for 2 of its Claimants (for purposes of estimation only), and an Affidavit from ELS detailing the efforts made with respect to the remaining 4 Claimants. Also attached as Exhibit A are the Certifications and transmittal letters provided to Rust for 3 of the Claimants on April 3 and 11, 2007. As set forth in the Affidavit, x-rays for the 1 remaining Claimant should be received soon by ELS and will then be promptly delivered to Rust.

As reflected in the Affidavit and the Certifications, ELS has kept Rust/Grace apprised at every step regarding its efforts to obtain x-rays and has continued to make diligent efforts to obtain and deliver x-rays to Grace.

2. The Wartnick Law Firm

Wartnick is listed on Exhibit 4 of the Debtors' Motion as having 44 Claimants whose x-rays "were not located." This characterization is not correct. The x-rays for these Claimants were not in the possession, custody or control of Wartnick.

Attached as Exhibit B is a Certification of Wartnick detailing their efforts to recover from court-appointed medical defense counsel Berry & Berry x-rays previously delivered to that firm pursuant to San Francisco General Orders. The x-rays for 53 Claimants delivered to defense counsel were not returned, and no concrete information was provided regarding their whereabouts. Moreover, this information was not provided by defense counsel until March 6, 2007, just a little over one month ago.

As reflected in the Affidavit, since that time Wartnick has gone to great efforts to locate and attempt to recover existing x-rays for these 53 Claimants. For 2 claimants, Wartnick has learned and since certified to Rust, for purposes of estimation only, that x-rays no longer exist. For the remaining 51, Wartnick is continuing to work diligently to locate and provide either those x-rays or certification of destruction as quickly as possible. It appears clear from the communications received from some of the facilities where the x-rays were taken that x-rays do exist for at least some of these Claimants.

3. Waters & Kraus, LLP

W&K is listed on Exhibit 4 of the Debtors' Motion as having 15 Claimants whose x-rays "were not located." This characterization is not correct. The x-rays for these Claimants were not in the possession, custody or control of W&K.

Attached as Exhibit C is the Affidavit of W&K that reflects that 8 of the Claimants referenced by the Debtors' Motion were not subject to the X-ray Orders, and x-rays for 1 Claimant have since been provided to Rust. Accordingly, as of this date, only 7 Claimants represented by W&K and subject to the X-ray Orders have not provided either an x-ray or a certification of destruction as of this date.

Contrary to Debtors' assertions, it is not that the x-rays were not located, but that either they were not returned by defense counsel to whom they had been entrusted despite timely demand, or that they were never in the possession of W&K and had to be obtained from the medical facilities where the x-rays were taken. W&K has made diligent and good faith efforts, and is continuing to work diligently, to locate and provide either those x-rays or certification of destruction to Rust as quickly as possible.

    4.    <u>Wise & Julian P.C.</u>

W&J is listed on Exhibit 5 of the Debtors' Motion as having 3 Claimants with x-rays "in the possession of third parties." This characterization is correct. The x-rays for these Claimants were not in the possession, custody or control of ELS. Notwithstanding that fact, as of this date, only 1 Claimant has not provided either an x-ray or a certification of destruction.

Attached as Exhibit D is redacted correspondence between W&J and Rust detailing that the x-rays for the three Claimants referenced in the Debtors' Motion had been in the custody of the Madison County Illinois Asbestos Litigation Central Records Depository, had been checked out by defense counsel and not returned. The letters also detail W&J's efforts to obtain the x-rays from defense counsel.

For 2 of the Claimants, x-rays were subsequently provided to W&J, and in turn by W&J to Rust.

For the 1 remaining Claimant, W&J continues to work diligently, to locate and provide either x-rays or a certification of destruction to Rust as quickly as possible.

### C. The X-ray Orders Require the Claimants to Provide X-rays that are not Within Their Possession, Custody and Control

While the Respondent Firms have made good faith, diligent efforts to obtain x-rays not in their possession, custody or control, and in many instances those efforts have been successful, Respondent Firms have not been able to obtain the x-rays as yet for a total of 50 claimants.

As evident from the Affidavits and Correspondence attached hereto, the inability of the Respondent Firms to obtain x-rays has not been the result of a disregard of the X-ray Orders, or a lack of attention or effort. The Respondent Firms can control their own actions, but cannot be held responsible for – and the Claimants should not be penalized for – the actions of third parties that they cannot control.

### D. Preclusion of Evidence for Purposes of Estimation is Contrary to Equity

The Debtors' effort to preclude certain evidence from being used at the Estimation Hearing does not further the goal of achieving an accurate estimate of the Debtors' asbestos liability. To the extent that the Debtors are endeavoring to reduce the present claims pool through this (and other) litigation mechanisms, then argue that their future liability should be an extrapolation of the thus-reduced present liability, they are seeking though litigation tactic to reduce the monies that will be available to pay both present and future legitimate asbestos creditors by limiting present claims for being unable to accomplish the impossible.

Section 524(g) is designed to achieve a fair balance between permitting a debtor to achieve complete resolution of its asbestos liability while ensuring fair treatment to those injured

by the Debtors' asbestos and asbestos-containing products. The goal and very foundation of 524(g) would be compromised by the Debtors' proposal.

### III.     CONCLUSION

For the foregoing reason, the Debtors' Motion should be denied.

Respectfully submitted,

Dated: April 14, 2007

MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP

By: /s/ Noel C. Burnham
    Noel C. Burnham, Esquire (DE 3483)
    Natalie D. Ramsey, Esquire (PA only)
    300 Delaware Avenue, Suite 750
    Wilmington, DE 19801
    (302) 504-7800
    (302) 504-7820 (facsimile)

and

123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500
(215) 772-7620 (facsimile)
Attorneys for the Respondent Firms