EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: ) | In Proceedings for a Reorganization under Chapter 11 |
| ) | |
| W.R. Grace & Co., *et al.*, ) | Case No. 01-01149-JKF |
| ) | |
| Debtors. ) | Re: Docket No. 15057 |
| ) | |

## CERTIFICATION OF STEPHEN M. TIGERMAN

STATE OF CALIFORNIA    )
                       )  ss.
COUNTY OF SAN FRANCISCO )

I, Stephen M. Tigerman, being duly subscribed and sworn, hereby depose and state as follows:

1. I am a shareholder with The Wartnick Law Firm ("Wartnick"), and the facts set forth herein are made to the best of my personal knowledge, information and belief.

2. Wartnick represents 75 non-mesothelioma cancer claimants that are subject to the Order Regarding X-ray Evidence dated December 22, 2006, and the Supplemental Order Regarding production of X-rays by Non-Mesothelioma Cancer Claimants dated February 20, 2007 (together, the "X-ray Orders").

3. On January 26, 2007, Wartnick sent the best available copies of x-rays for 11 of our clients to Rust Consulting, Inc. ("Rust") pursuant to the X-ray Orders. These x-

2174772v1

rays were the only x-rays in our possession, custody, or control for clients that were subject to the X-ray Orders.

4. Subsequently, we have made a good faith, diligent effort to obtain from third party sources those x-rays for our non-mesothelioma clients who had malignancies in compliance with the X-ray Orders.

5. Under the San Francisco General Orders, there is court appointed joint designated medical defense counsel, Berry & Berry, which is tasked with handling medical materials, including all x-rays of plaintiffs on behalf of all defendants. Under the same General Order, that firm is supposed to retain materials and provide them upon request. In compliance with the San Francisco General Orders, Wartnick had previously delivered x-ray records for 64 of its clients that were subject to the X-ray Orders to Berry & Berry.

6. On February 26, 2007, we sent a request to Berry & Berry requesting the return of the x-rays for those 64 clients, asking for a response no later than March 5, 2007. Berry & Berry replied on March 6, 2007, stating that they only had x-rays for 11 of the 64 clients for whom we had requested the return of the x-rays.

7. On March 9, 2007, we sent the copies of x-rays recovered from Berry & Berry for these 11 clients to Rust with the required certification.

8. On March 9, 2007, we sent a letter to Grace's counsel, Barbara Harding, via Federal Express, notifying her that we had been advised that x-rays for the other 53 clients were no longer in the possession of designated defense counsel.

9.  With respect to those 53 clients, defense counsel told us that, due to the age of the x-rays, the original films would have been returned to the medical facilities or to our office. Berry & Berry has provided no documentation to support that x-rays were delivered back to Wartnick, and Wartnick has no record of any of the subject x-rays having been delivered to this firm.

10. Because of the possibility that Berry & Berry had returned the records to medical providers, or the possibility that those providers might have additional copies of the same materials, and cognizant of our responsibilities under the X-ray Orders, we began the process of identifying the appropriate medical facilities from which to request x-rays. We simultaneously notified Grace that we were undertaking this additional effort, and that we would pursue recovery of x-rays from the facilities, but could not guarantee the availability of the x-rays from those facilities due to the fact that they were last known to exist at Berry & Berry and/or because record retention policies of many medical facilities that provide for the destruction of x-rays after 5 years.

11. Between March 14 and March 26, 2007, we called over 20 facilities in an effort to locate and/or obtain copies of x-rays for the remaining 53 clients.

12. Between March 14 and March 26, 2007, we sent requests for x-rays to facilities for 37 of those 53 clients.

13. For two (2) clients, the facilities advised us that the x-rays had been purged under their record retention policies. Certification pursuant to paragraph 5 of the Supplemental X-ray Order that no original chest x-ray or copy exists, for purposes of the estimation hearing only, was been provided to Grace by letter dated April 12, 2007.

2174772v1

14. As of the date of this Affidavit, we have not received either copies of x-rays or certification from applicable the medical facility that the x-rays have been destroyed for the remaining 35 of the 37 clients for whom record requests have been made. Follow up contacts are ongoing.[1]

15. For the remaining 16 clients (out of the 53 for whom records were not returned by Berry & Berry), there are a variety of different fact patterns. This includes death of the physician that had previously had possession of the x-rays; failure of facilities to respond to requests for information; and inability to contact facilities where the x-rays were originally taken.

16. As of the date of this Affidavit, we have not received any additional x-rays to provide to Grace despite the efforts detailed above. We continue to engage in reasonable and diligent efforts on those matters stated above and to research and x-rays for our clients to the extent available.

I declare under penalty of perjury that the foregoing is true and correct under the laws of the State of California. I understand that if any of the foregoing statements are willfully false, I am subject to punishment.

Executed this 15th day of April, 2007.

Stephen M. Tigerman

---

[1] One facility from whom we have requested x-rays for multiple clients promised a status report on Friday March 30, 2007, which status report was not forthcoming; we thereafter requested a status report on April 11, 2007. One facility sent an x-ray report, but not a copy of the x-ray, requiring us to make another request. One facility subsequently requested additional documentation, which we provided to them. One facility will only respond to requests through a local copy service; we have contacted a copy service to obtain the records. One facility informed us that the cost of copying a chest x-ray would be $250.00, which expenditure we have not made pending Grace's agreement to reimburse that cost, which exceeds the amount set forth in the Supplemental X-ray Order.

2174772v1