IN THE UNITED STATES BANKRUPTCY COURT
FOR DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ( |
| | ( |
| W.R. GRACE & CO., <u>et al.</u>, | (   Bankruptcy No. 01-01139 (JKF) |
| | (   Jointly Administered |
| | ( |
| Debtor(s) | (   Chapter 11 |
| | ( |
| | (   Related to Doc. No. 8582. |
| | ( |

**MEMORANDUM OPINION**[1]

The matter before the Court is the Motion of State of Montana For Relief From the Automatic Stay[2] so that W.R. Grace & Co. and W.R. Grace & Co.-Conn. ("Debtors") may be joined as third-party defendants in 120[3] actions currently pending against the State of Montana in Montana state courts (the "State Court Actions") which allege violations of the State's independent duty to its citizens.[4] Objections to the Motion of State of Montana were filed by the

---

[1] The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

[2] Doc. No. 8582.

[3] The State of Montana's motion, as filed, sought relief with respect to 83 pending State Court Actions. The State of Montana has since supplemented its filing to add an additional 14 actions reportedly served since April 13, 2005. Supplement to Exhibit A, Doc. No. 8672 (filed June 23, 2005). As of January 30, 2006, Debtors asserted that the number of State Court Actions has grown to 120. Debtors' Motion to Dismiss Appeal, Adversary No. A-01-771, Doc. No. 383 at 2. Nowhere in either filing has the exact number of actions or of plaintiffs who are parties to these actions been identified.

[4] Several months after the relief motion was filed, Debtors filed their Motion to Expand Their Preliminary Injunction to Include Actions Against the State of Montana (the "Expansion Motion"), which sought to expand the preliminary injunction to include State Court Actions. Adversary No. A-01-771, Doc. No. 359. The court's decision regarding the Expansion Motion

(continued...)

Official Committee of Unsecured Creditors, the Official Committee of Asbestos Property Damage Claimants, Debtors, and the Official Committee of Asbestos Personal Injury Claimants.[5]

On April 2, 2001 (the "Petition Date"), Debtors filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Soon after, the United States Trustee appointed the Property Damage Committee, the Official Committee of Asbestos Personal Injury Claimants, the Official Committee of Unsecured Creditors, and the Official Committee of Equity Holders. Debtors continue in the possession of their property and the management of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

The various State Court Actions relate to claims arising from the mining and processing of vermiculite containing asbestos within the State of Montana. Most plaintiffs allege periods of employment with Debtors and/or their predecessors ranging from 1947 through 1993. At least 21 of the 120 State Court Actions were first brought separately against Debtors and later amended, after Debtors filed bankruptcy, to include the State of Montana. The remainder were filed against the State of Montana after the bankruptcy petitions, at which time actions in state court against Debtors were precluded by the automatic stay. Plaintiffs in the State Court Actions assert the same cause of action, i.e., negligence in failing to take sufficient action to protect and to warn the plaintiffs about alleged asbestos hazards, against Debtors and the State of Montana.

According to one of the State Court Actions, *Orr v. State of Montana*, 106 P.3d 100 (Mt. 2004), Montana's State Board of Health ("BOH") inspected the Libby mine in Libby, Montana, on a regular basis beginning in 1956.

---

[4](...continued)
is addressed in a separate opinion and corresponding order.

[5] Doc. Nos. 8705, 8707, 8708, and 8747.

> During each State inspection between 1956 and 1974, the State inspectors found unsanitary and unhealthful conditions. The State notified Zonolite [a company acquired by Grace in 1963], and later Grace, of the dangerous conditions after each inspection, explaining the seriousness of asbestosis and its likely fatal outcome, but did not inform the Mine workers, including the Miners, of the dangers. With the exception of identifying the hazardous conditions and telling the Mine's owner/managers to correct the problems, the State took no steps to ensure that the Mine's owners/managers responded in a manner that provided a safe working environment.

*Id.* at 104. In the Nineteenth Judicial District Court of Montana (Lincoln County), the State of Montana obtained dismissal of the *Orr* claim on the basis that the state did not owe a duty to the plaintiffs. On appeal, the Supreme Court of Montana reversed the lower court's dismissal, concluding that the State had an independent legal duty to the Libby Mine workers, and remanded the case for the determination of whether the State of Montana breached that duty.

The State of Montana asserts in its motion that cause exists to lift the automatic stay pursuant to 11 U.S.C. §362(d)(1) which states that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay– (1) for cause. . ." The Bankruptcy Code does not provide a definition of "cause" and there is no rigid test for determining whether sufficient cause exists to modify an automatic stay. *In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993). Rather, "courts generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant" when determining whether there is sufficient cause to grant relief from the automatic stay. *Id.*

The underlying purpose of the automatic stay, as explained by the Court of Appeals for the Third Circuit, is to:

prevent certain creditors from gaining preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.

*Borman v. Raymark Industries, Inc.*, 946 F.2d 1031, 1036 (3rd Cir. 1991), citing *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982); *Matter of Rexene Products Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). The automatic stay has been described as one of the fundamental protections provided to debtors by the Bankruptcy Code. *Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection*, 474 U.S. 494, 503 (1986) (citing S. Rep. No. 95-989, p. 54 (1978); H.R. Rep. No. 95-595, p. 340 (1977)).

In considering the competing interests of the Debtors and the movant as they relate to the determination of cause, the State of Montana relied on the three factor test articulated in *Matter of Rexene Products Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992), and *In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993), by which the court is to consider:

> (1) whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;
> (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and
> (3) the probability of the creditor prevailing on the merits.

*See also In re Unidigital, Inc.*, 2000 WL 33712306 (Bankr. D. Del., Dec. 8, 2000); *In re Integrated Health Services, Inc.*, 2000 WL 33712483 (Bankr. D. Del., Aug. 11, 2000).[6]

---

[6] Courts may consider various factors beyond these three. The court in *In re Mid-Atlantic Handling Systems, LLC*, 304 B.R. 111, 130 (Bankr. D. N.J. 2003), considered the following twelve factors:
> 1) whether relief would result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves the debtors as a fiduciary; 4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; 5) whether the

(continued...)

We find, in this case, that relief from stay is not appropriate and that cause has not been established for the following reasons. Granting the State of Montana relief from the automatic stay and allowing the continuation of the claims in state court will impose substantial prejudice upon the Debtors and the estate and impede the administration of the estate.[7] It is undisputed that Debtors filed bankruptcy in order to address in a single forum and under uniform rules the thousands of asbestos claims it faced. Allowing the State of Montana to join Debtors as a defendant in suits that allege violations of the State's independent duty to its citizens and thus avoid the automatic stay circumvents this purpose and interferes with the orderly rehabilitation of the Debtors. Additionally, that action would force Debtors to duplicate defense efforts outside of the Chapter 11 process and unnecessarily deplete estate resources. Debtors would be required to litigate the issues at the very core of the chapter 11 cases in various Montana courts, repeating fact and expert witness testimony and bearing additional discovery costs in up to 120 separate trials.

---

[6](...continued)
debtor's insurer has assumed full responsibility for defending it; 6) whether the action primarily involves third parties; 7) whether litigation in another forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; 10) the interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the parties are ready for trial in the other proceeding; and 12) impact of the stay on the parties and the balance of the harms.

[7] "The most important factor in determining whether to grant relief from the automatic stay to permit litigation to proceed against a debtor in another forum is the effect on such litigation on the administration of the estate. Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit." *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984).

Granting the State of Montana's motion would also be a distraction from the reorganization process. Discovery in the bankruptcy case is proceeding on both estimation of personal injury liabilities and liquidation of property damage claims. Trial dates are set. These actions are needed so that the plan process can get underway. Litigation of the State Court Actions would require the time and commitment of a number of Debtors' key personnel, most of whom are crucial to the reorganization process.[8] *See A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 988 (4th Cir. 1986), cert. denied, 479 U.S. 876 (1986)(describing one of the purposes of §362 of the Bankruptcy Code as giving debtor and its executives a respite from litigation in order to formulate plan of reorganization).

Furthermore, there is no certainty that a judgment will be entered against the State. Thus, Debtors would be required to participate in trials before any alleged contribution or indemnity claim against them is even ripe. Moreover, even if the claims were ripe, granting the motion creates the risk that the outcomes reached in the State Court Actions could significantly differ from the treatment of similar claims within the chapter 11 proceeding. This result would offend the Bankruptcy Code's principle that similarly situated creditors be treated similarly. *See In re Combustion Engineering, Inc.*, 391 F.3d 190, 239 (3d Cir. 2004).

The State of Montana bears "the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief." *In re Micro Design,*

---

[8] Debtors assert that Mark Shelnitz (General Counsel), Jay Hughes, Richard Finke, and William Sparks (Senior Litigation Counsel), Fred Festa (CEO), Paul Norris (current Chairman of the Board and ex-CEO), and David Siegel (ex-General Counsel and now a consultant for the Debtors) would be required to assist counsel in preparation of the Debtors' defense in the Montana Actions. These employees all play an integral role in the current estimation proceedings, negotiations, and management of the jointly administered chapter 11 case.

*Inc.*, 120 B.R. 363, 369 (E.D. Pa. 1990).  The State presented no compelling evidence that the balance of the hardships is in its favor.  The State of Montana has filed the State Proof of Claim in this bankruptcy case and, therefore, its indemnification/contribution claims are preserved as against Debtors and will be resolved in due course in the chapter 11 cases.  There is no indication that the state court claims are in any way unique, or that, if proven, Debtors' liability to the State, if any, will be distinguishable from liability for any of the other hundreds of thousands of asbestos claims asserted against Debtors.  The State of Montana is in no different position than any other creditor claiming an injury by the Debtor entities based on asbestos.

      Upon application of the three factor test from *Continental* and *Rexene* in conjunction with consideration of the policies underlying the automatic stay, we find that the State of Montana failed to demonstrate that relief from the automatic stay is appropriate.  The prejudice to the Debtors, the estate, and the other creditors is substantial and far outweighs any hardship placed upon the State of Montana.  Accordingly, the State of Montana's motion for relief from the automatic stay will be denied.

An appropriate order will be issued.

DATE: April 13, 2007

*Judith K. Fitzgerald*
Judith K. Fitzgerald
United States Bankruptcy Judge

jmd

CC: