UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |   |   |
|---|---|---|
| In re: | : | HON. JUDITH K. FITZGERALD |
|  | : | Chapter 11 |
| W. R. Grace & Co., et al., |  |  |
| Debtors. | : | Case No. 01-01139 (JKF) |
|  |  | (Jointly Administered) |

_____

BRIEF IN SUPPORT OF MOTION SEEKING ORDER

TO FILE A LATE PROOF OF CLAIM

_____

STUART RABNER
ATTORNEY GENERAL OF NEW JERSEY
Richard J. Hughes Justice Complex
25 Market Street
PO Box 093
Trenton, NJ 08625-0093
(609)984-6640

Rachel Jeanne Lehr
Deputy Attorney General
   On the Brief

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT.. . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LEGAL ARGUMENT

      THE STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, SHOULD BE ALLOWED TO FILE A LATE PROOF OF CLAIM BECAUSE IT WAS IMPOSSIBLE FOR THE STATE TO HAVE KNOWN IT HAD A CLAIM BEFORE THE BAR DATE.. . . . . . . . . . . . . . 6

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**TABLE OF AUTHORITIES**

**PAGE**

CASES CITED

In re Enron Corp, No. 01-16034, 2003 Bankr. LEXIS 2113,
    (Bankr. S.D.N.Y., September 23, 2003). . . . . . . . . . . . 7

Pioneer Investment Services Co. v. Brunswick Associates
    Limited Partnership, 507 U.S. 380 (1993).. . . . . . . . . 6

STATUTES CITED

N.J.S.A. 13:1K-6 et seq.. . . . . . . . . . . . . . . . . . . 2

N.J.S.A. 13:1K-8. . . . . . . . . . . . . . . . . . . . . . . 2

N.J.S.A. 58:10-23.11 et seq.. . . . . . . . . . . . . . . . . 5

REGULATIONS CITED

N.J.A.C. 7:26E. . . . . . . . . . . . . . . . . . . . . . . . 3

RULES CITED

Fed. R. Bankr. P. 9006(b)(1). . . . . . . . . . . . . . . . . 6

Preliminary Statement

It was impossible for the State of New Jersey, Department of Environmental Protection ("State" or "Department") to file a timely proof of claim in this bankruptcy case, because the State did not know, nor could it have reasonably contemplated, that W. R. Grace had sworn to false information on its submissions to the Department, and therefore was in violation of the law. Whether it is "excusable neglect" or some other factor upon which permitting a late proof of claim can be based, this claim for penalties resulting from Grace's fraudulent assertions about hazardous substances that posed a grave threat to the public health and welfare and the environment, should be allowed.

Statement of Facts

         W.R. Grace's ("Grace") former plant, located in Hamilton Township, Mercer County, New Jersey ("the Plant"), is an "industrial establishment" as that term is defined at N.J.S.A. 13:1K-8. The Industrial Site Recovery Act ("ISRA"), N.J.S.A. 13:1K-6 et seq., was enacted in 1983 (as the Environmental Cleanup Responsibility Act) for the express purpose of preventing private businesses from forcing the public to bear the expense of cleaning up abandoned plant sites contaminated with hazardous substances. In order to achieve this goal, ISRA provides that, upon the closure, sale or transfer of an industrial establishment, the owner or operator of the industrial establishment must either submit a cleanup plan to the Department detailing the measures necessary to detoxify the property, or obtain a "negative declaration" from DEP that there has been no discharge of hazardous substances or wastes or that any such discharge has been cleaned up in accordance with procedures approved by the Department and there remain no hazardous substances or wastes on the property. N.J.S.A. 13:1K-8.

        In June 1995, the Department approved W. R. Grace's Negative Declaration. This approval was based on information submitted and certified to by Grace in a Preliminary Assessment/Site Investigation (PA/SI) and a Negative Declaration filed with the Department pursuant to ISRA in June 1995.

The Plant was in operation for approximately 44 years (1950 to 1994). For many of those years, the Plant manufactured asbestos-containing insulating material and soil supplements made from a concentrated, asbestos-laden vermiculite ore primarily mined from Grace's Libby, Montana mine. The insulating material and soil supplements were made by expanding (exfoliating) the concentrated vermiculite ore. Grace also manufactured other asbestos-containing products at the Plant, including, but not necessarily limited to, a fire protection product known as Monokote 1, which, prior to 1970, contained 13 percent asbestos by weight.

Despite the history of asbestos usage at the Hamilton Plant, the PA/SI required by ISRA to be submitted to the Department essentially declared that no sampling of the soil was necessary because Grace did not use asbestos-containing materials at the Plant. In that regard, Grace represented that the vermiculite processed at the Plant did not have an asbestos content of more than one percent by weight, which is the regulatory threshold for asbestos-containing materials. The Negative Declaration stated that any hazardous substances that had been discharged at the Plant had been remediated in accordance with the Department's Technical Requirements for Site Remediation, N.J.A.C. 7:26E. Both the PA/SI and the Negative Declaration were certified by Defendants Bettacchi and Burrill, who were Grace employees at the time, as accurate.

As a result of the representations made by Grace and certified by Bettacchi and Burrill, the Department issued No Further Action letters, which meant no cleanup was necessary, for the Plant in August and November 1995. Nothing further occurred at the Plant until the United States Environmental Protection Agency ("USEPA") began to investigate certain vermiculite exfoliation plants across the United States that had received large amounts of concentrated vermiculite ore from the Libby, Montana mine. In or about October 2000, the USEPA sampled the Plant and its surroundings. An analysis of soil samples revealed significant concentrations of asbestos in the soil at the Plant and its environs. Though the EPA sampling took place in 2000, the Department did not become aware of the contamination until in or about the Fall of 2003, when it was asked by the New Jersey Department of Health and Senior Services to comment on a Health Assessment for the Plant. By 2003, the extent of the contamination, which in some samples was as high as 40 percent by weight, was delineated and excavation activities began. Approximately 9,000 tons of asbestos-contaminated soil have been removed from the plant environs, with approximately 6,000 tons more slated for removal in the summer of 2006.

On June 1, 2005, the Department filed suit against W.R. Grace & Co. and W.R. Grace Co.-Conn. ("Grace"), Bettacchi, and Burrill (collectively, "Defendants") seeking civil penalties pursuant to ISRA and the New Jersey Spill Compensation and Control

Act ("Spill Act"), N.J.S.A. 58:10-23.11 et seq. The State action seeks civil penalties against the Defendants for false statements and misleading information contained in the PA/SI and the Negative Declaration filed with the Department. By the time Grace's violations of the law were discovered by the State, the bar date for filing a proof of claim, which had been March 31, 2003, had passed.

In the meantime, ever since it initiated this action against W. R. Grace, the State has been attempting to reach an amicable conclusion to this matter. This has recently proved to be impossible because we could not reach a meeting of the minds as to what the penalty should be. When the State realized that, this motion for a late Proof of Claim became inevitable.

LEGAL ARGUMENT

THE STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, SHOULD BE ALLOWED TO FILE A LATE PROOF OF CLAIM BECAUSE IT WAS IMPOSSIBLE FOR THE STATE TO HAVE KNOWN IT HAD A CLAIM BEFORE THE BAR DATE.

Fed. R. Bankr. P. 9006(b)(1) provides that when an act is required to be done within a certain amount of time:

> the Court for cause shown can at any time in its discretion....(1) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of "excusable neglect."

The leading case on the issue of "excusable neglect" is Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993). In Pioneer, a lawyer representing a group of creditors filed a motion seeking an Order allowing him to file a late proof of claim. The attorney's excuse was that there had been upheaval in his law firm, he left the firm and did not have the file with the correspondence notifying him of the bar date in it. He had other excuses, which the Court gave much more weight to, like the fact that the notice of the bar date was included in the letter announcing the date and time of the Section 341 meeting, instead of in a separate document, thereby easier to overlook. The motion was granted and appealed and reversed and appealed until it reached the Supreme Court where the Court upheld the motion to file a late proof of claim under the excusable neglect criteria.

The Court found that Congress, by empowering the courts to accept late filings "where the failure to act was the result of excusable neglect," Rule 9006(b)(1), plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control. 507 U.S. at 389. The determination of what kind of neglect would be considered "excusable" is an equitable one, the Court opined, taking account of all relevant circumstances surrounding a party's omission. These include the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for delay, including whether it was within the reasonable control of the creditor, and whether the creditor acted in good faith. Id.

It hardly seems to be "neglect" when there was no way that the Department could have known of the claim before the bar date, since the Department did not know of the violation at that time. Perhaps "intervening circumstances" beyond the State's control would be more to the point.

In re Enron Corp, No. 01-16034, 2003 Bankr. LEXIS 2113, (Bankr. S.D.N.Y., September 23, 2003) is an unpublished decision but the case is directly on point. In Enron, the creditors claimed that they failed to file timely claims before the bar date because the information necessary to determine they had any claim against the debtors regarding meter reading data errors was withheld by the

debtors until after the bar date.  This is much like the Department's case here, where the Department was unaware that Grace had submitted false information until well after the bar date.

The Enron Court found that the creditor was entitled to file late proofs of claim based on excusable neglect, pursuant to Fed. R. Bankr. P. 9006(b)(1).  The court found that there was no significant prejudice to the debtors because the debtors had not filed a disclosure statement or plan of reorganization, and that allowing the late claim would not have a disruptive effect upon the debtors' proposed plan.  Id at *22.  Citing Pioneer Inv. Services, supra, the Enron Court found that in permitting a creditor's late filing under Bankruptcy Rule 9006(b)(1), the Supreme Court explained that Congress, by empowering the courts to accept late filings where the failure to act was the result of excusable neglect, plainly contemplated that courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

Grace clearly falls within the four corners of the Enron case.  Grace has submitted its First Amended Plan of Reorganization but it has not been confirmed, there is no date set for a confirmation hearing, and there has been no Disclosure Statement as yet.  Most of the factors regarding whether there will be prejudice to the debtor depend on how near a plan of reorganization is to

confirmation. Id. at *20.  Although not absolutely certain, the State believes that estimation hearings for asbestos claims have not been completed as yet, so debtors do not know the sum total of the claims in any event.  Debtors have known about our claim since June 1, 2005, so there is not any undue surprise.

In Enron, there was no disclosure statement filed yet nor a plan.  The court also found that allowing that claim would not open the flood gates for similar claims, since the circumstances were unique. Id.  So too are the facts here: there has been no disclosure statement, the plan has not been confirmed, and the facts are unique.

CONCLUSION

          For the foregoing reasons, the State of New Jersey, Department of Environmental Protection, respectfully requests that this Court grant its motion to file a Proof of Claim for $31,XXX,000 in this matter.

                                      Respectfully submitted,

                                      STUART RABNER
                                      ATTORNEY GENERAL OF NEW JERSEY

                         By: /S/ Rachel Jeanne Lehr
                              Rachel Jeanne Lehr
                              Deputy Attorney General

Dated: April 26, 2007