**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 11 |
| W.R. GRACE & CO., *et al.*, | : Case No. 01-1139 (JKF) |
| | : Jointly Administered |
| Debtors. | : Related Docket Numbers: 15295, 15412 |

**RESPONSE AND OPPOSITION OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS ("ACC") AND DAVID T. AUSTERN, LEGAL REPRESENTATIVE FOR FUTURE ASBESTOS PERSONAL INJURY CLAIMANTS ("FCR") TO THE DEBTORS' MOTION FOR LEAVE TO FILE STATUS REPORT IN FURTHER SUPPORT OF MOTION REGARDING NONCOMPLIANCE WITH X-RAY ORDER AND RESPONSE TO THE "STATUS REPORT" OF COMPLIANCE WITH X-RAY ORDER FILED BY W.R. GRACE & COMPANY**

The Official Committee of Asbestos Personal Injury Claimants ("ACC") and David T. Austern, Legal Representative for Future Asbestos Personal Injury Claimants ("FCR"), hereby respond and oppose Debtor W.R. Grace Company, et al. ("Grace" or "Debtors")'s Motion for Leave to File Status Report In Further Support of Motion of Compliance with X-ray Order [Docket # 15295].

The ACC and FCR would have no objection to Grace filing a Status Report that actually sets forth Grace's view of compliance with the Court's Supplemental X-Ray Order. But Grace's proposed submission is not a status report at all. Rather, it is an improper attempt to obtain an in limine evidentiary ruling, and also incorrectly attempts to cast this estimation proceeding as a claims allowance proceeding, which it simply is not.

The Court should deny Grace's motion for at least three basic reasons. First, it prematurely seeks to limit the evidence offered at the estimation hearing -- in effect a discovery sanction against the ACC and FCR -- without filing a motion, thus depriving the ACC and FCR

an opportunity to be heard. The motion therefore violates this Court's procedural rules, and asks the Court for a ruling that would deny the ACC and FCR their fundamental rights to due process. Second, the motion is fundamentally misplaced because it assumes that in this estimation proceeding, individual asbestos claimants will be required to prove their cases against Grace as though at a jury trial. Yet the Bankruptcy Code and controlling Third-Circuit precedent make clear that that is <u>not</u> what this estimation hearing is about. Indeed, the individual claimants are not even parties to this proceeding, much less will they bear the burden in this proceeding of proving their right to compensation. Finally, Grace's motion runs directly counter to its own proposed Plan of Reorganization.

## ARGUMENT

### I. Grace Cannot Obtain In Limine Rulings or What Amounts to Discovery Sanctions Against the ACC and FCR Through the Guise of a "Status Report"

Grace's so-called "Status Report," requests that "this Court limit the parties to the estimation trial to relying on evidence that was produced in a timely manner and in compliance with the Supplemental X-ray Order." Grace Proposed Status Report at 6. In effect, Grace asks the Court to sanction the ACC and FCR by way of an in limine ruling that excludes evidence from the estimation proceeding. Yet Grace has made no allegation of failure by the ACC or FCR to comply with the Court's Orders, because the ACC and FCR are in full compliance. Moreover, having failed to notice and file its sanctions motion in accordance with this Court's long-standing motion procedures, any grant of Grace's request would deprive the ACC and FCR of their rights to properly brief the issues and be heard. In short, by masquerading its sanctions motion as a "status report," Grace hopes to sidestep the rules, and seeks an order that would deprive the ACC and FCR of their fundamental due process rights.

While the ACC and FCR have no intention of relying on any "x-ray evidence" that was not also provided in compliance with this Court's Orders, whether or not any particular piece was "timely" produced is not an open and shut question. Ultimately, the question of what evidence should be admitted at the Estimation Hearing is a matter which should be addressed in a properly noticed Motion in Limine or Motion to Exclude Expert Testimony, not in the guise of a "Status Report." Again, a blanket ruling at this juncture that has the effect of an evidentiary ruling or discovery sanction against the ACC and FCR when no motion has been filed against them amounts to a denial of due process.

## II. Grace's Requested Relief Against Claimants in the "Status Report" Is Premised Upon Faulty Assumptions Concerning the Estimation Hearing and Grace's Plan

Grace asks for the following relief which evidences a fundamental misunderstanding of both the Estimation Hearing and the Plan of Reorganization that it filed:

> Law firms that, at this juncture, claim that x-rays exist, but they cannot get them, must produce the x-rays within the next 10 days or be precluded from introducing such evidence at the estimation proceeding.

Grace Proposed Status Report at 6. This statement, and the purported relief sought, is premised upon three faulty and misleading assumptions: (1) that during the Estimation Hearing the asbestos personal injury claimants are required to "prove" the merits of their individual claims, (2) that the Questionnaire/Bar Date process is intended to and could elicit the evidence (including any expert testimony) from claimants that they would proffer as evidence at a trial involving their claim, and that in such a trial claimants would be limited to whatever evidence they had in their files which was produced in response to the Questionnaire, and (3) that the Court can disallow or estimate at zero claims or groups of claims from persons who are not parties to the Estimation Hearing and who have no right to or intention of offering any evidence (x-ray or otherwise) in support of their individual claims at the Estimation Hearing. None of

these assumptions are true and the relief Grace seeks is simply improper in the context of this proceeding.

Prior to its bankruptcy petition, Grace was a defendant in tens of thousands of pending individual asbestos personal injury cases, and was receiving tens of thousands of new claims each year. In asbestos litigation, like any civil litigation, the only time the plaintiff was able or required to "prove" Grace's "real liability" and the amount of his damages for which Grace was responsible was following a trial by jury to judgment and the conclusion of any appeals. Such trials were conducted at the conclusion of a discovery process which included scheduling orders that required the plaintiff to identify his testifying experts for trial and produce "expert witness reports" for same, and to identify the witnesses and exhibits he would use in trial to support his claim.

In most jurisdictions however, neither the plaintiff nor the defendant can proceed with any discovery after an asbestos personal injury case is filed until the case is moved onto the "trial docket." See February 22, 2007 Deposition Testimony of Jay Hughes, at 51-52 (excerpt attached as Exhibit 1). This meant that as a practical matter usually only a small percentage of the claims pending against Grace or any other asbestos defendant were in the process of being actively discovered and prepared for trial at any one time.

Asbestos defendants and plaintiffs, like most parties in civil litigation, resolved the vast majority of the claims before trial by voluntary arm's length settlement, with each defendant requiring whatever evidence or proof it (or its insurers) deemed sufficient to justify paying money to resolve the claim and the plaintiff in turn agreeing to resolve the claim short of trial for an amount which was typically much less than what he or she could recover against that particular defendant if the case were tried and the plaintiff prevailed. Grace, like most asbestos

defendants, chose to try some of the cases against it but settled the vast majority of the claims provided the plaintiff could provide ***some*** evidence of: (a) exposure to a product formerly manufactured by the Company; and (b) the presence of an asbestos-related injury. It is axiomatic that the evidence parties may agree upon to be required to settle a claim (i.e., affidavit of exposure, letter from a doctor) is in most instances far less detailed and voluminous than the evidence that the plaintiff would put forward in his case at trial (e.g., live testimony or prior deposition from co-workers concerning exposure, live testimony from medical and industrial hygiene experts, etc.). In essence, a settlement is both parties' "hedging their bets" as to what might happen if the case where to proceed further in the discovery and trial process.[1]

Grace's bankruptcy filing in April 2001 ended the normal litigation and settlement process, staying all claims prosecution and discovery efforts against it, as well as stopping the normal claims settlement process in its tracks. After several years of dithering, Grace filed a Plan of Reorganization which contains an 11 U.S.C. § 524(g) channeling injunction which provides that all of its pending and future asbestos personal injury claims will be channeled to a trust and considered and resolved by the trust post-bankruptcy. Under Grace's Plan ***none*** of its asbestos personal injury claimants are required to "prove" their claims during the pendency of the bankruptcy case; claims review and resolution will occur only after plan confirmation and be conducted by the § 524(g) trust. Because Grace proposes a section 524(g) plan which is opposed

[1] The resultant settlement agreement however, created a contractual obligation of the company to pay money to the claimant that is just as much of a liability as is Grace's contractual obligations to its bondholders or bank creditors. Until it entered bankruptcy and hired a new set of lawyers, Grace's practice in estimating liability, like that of every other asbestos defendant and court which has attempted to estimate a company's asbestos liability, was to measure the liability by (1) attempting to predict how many such settlement contracts the company would enter into in the future, and what the likely cost would be for all such contracts and (2) adding to that the cost of any predicted unfavorable judgments.

by its asbestos creditors on the grounds that (1) the Plan allows shareholders to retain their ownership interest even if all present and future asbestos creditors are not paid in full, which would be a violation of the “absolute priority rule” and (2) the Plan allocates too little value to the 524(g) trust and thus "unfairly discriminates" against the asbestos creditors within the meaning of 11 U.S.C. § 1129(b), an estimate of the aggregate asbestos liability is necessary to determine whether the Plan can survive these particular confirmation objections.[2] See, e.g., In re Armstrong World Indus., Inc., 348 B.R. 111, 114-15 (D. Del. 2006) (Robreno, J.).

This Court has repeatedly stated (and Grace has agreed) that the Estimation Hearing is for the purpose of determining Grace’s aggregate liability for pending and future asbestos personal injury claims, and not for the purpose of evaluating or estimating the claims for purposes of individual allowance or disallowance. See, e.g., Hr’g Tr. of Sept. 25, 2006 at 166 (“This process is to help anybody’s expert that the information that they need to try to convince me of what the existing and future asbestos personal injury claims will be, and how much it’s going to cost to resolve them. That’s what this is for. And nothing else.”) and 194 (“The point was that this is for estimation purposes, not for allowance and disallowance purposes.”) (excerpt attached as Exhibit 2). The claimants to whom Grace has issued questionnaires are not parties to the estimation proceeding, but merely third-party discovery respondents. Grace has not joined any of the individual claimants or their attorneys as parties. Indeed, at a hearing on September 11, 2006, counsel for the Debtors specifically asked for a ruling from the Court that the ACC and only the ACC be the party that would be litigating the estimation on behalf of the present claimants:

---

[2] Grace’s Plan is patently unconfirmable for other reasons, including its inclusion of a § 524(g) injunction without allowing asbestos personal injury claimants to vote on the Plan.

> MR. BERNICK: … So we've been dealing with the ACC as the organization that's going to be litigating the estimation on behalf of these claimants. And I just want to make sure that when it comes to the estimation that we're not going to have a whole bunch of other law firms who are going to come in and say, well, gee, we'd like to participate in the estimation, too, because then it's just not workable. We ought to have - -
>
> THE COURT: I believe that the estimation process, it belongs to the creditors' committee.
>
> MR. BERNICK: Yes.

Hr'g Tr. of Sept. 11, 2006, at 262 (excerpt attached as Exhibit 3).

As part of the discovery for the Estimation Hearing, the Court allowed Grace to propound its Asbestos Personal Injury Questionnaires to all asbestos personal injury claimants with pending claims that were not settled as of the Petition Date. The Questionnaire on its face does not contain any questions which require the plaintiff to (1) identify any of the experts upon whose testimony he will rely at trial, (2) provide Fed. R. Civ. P. 26(a)(2) expert witness reports for any testifying expert, (3) identify all fact witnesses the plaintiff will call at trial to support his case, or (4) identify the documents on which he will rely as exhibits at trial. Nor has the bar date process or any subsequent order entered by the Court required the individual claimants to identify their testifying experts, fact witnesses or documents upon which they will rely at trial. As the Court is well aware, filing a proof of claim form in response to a Bar Date Order is merely the equivalent of filing a complaint and thus the start of a litigation process if the claim is objected to by the debtor. If an individual contingent asbestos personal injury claim were going to be allowed or disallowed (or even estimated) for purposes of distribution during the

bankruptcy case in a Federal District Court,[3] that Court would enter a scheduling order which would, among other things, allow the plaintiff to continue his discovery against Grace, which has been precluded by the automatic stay and which would also require the plaintiff whose claim was being tried to identify the experts upon whose testimony he or she will rely at trial, and produce a report pursuant to Fed. R. Civ. P. 26(a)(2) for each such expert and to produce whatever documents the plaintiff intends to rely upon as exhibits at a trial.

The fact that a lung cancer plaintiff indicated in response to Questionnaire discovery that he or she had at one time undergone an x-ray which the plaintiff believed is supportive of his or her claim that the cancer was asbestos related does not in any way indicate whether (a) the claimant would rely on that x-ray or something else to prove his or her claim at trial or (b) obligate the plaintiff to produce something in discovery which either no longer exists or is not within his or her own or his or her counsel's possession.

It is well established among experts in asbestos disease that lung cancer can be caused by asbestos exposure even without an x-ray showing underlying asbestosis. Scandanavian Journal of Work, Environment and Health, Volume 23, Number 4, August 1997 (the"Helsinki Criteria") at 314 (attached as Exhibit 4). Indeed, the American Thoracic Society has noted that among individuals whose asbestosis was confirmed by pathology, 15-20% of these asbestos victims had x-rays which appeared to be normal. 2004 American Thoracic Society Official Statement

[3] 28 U.S.C. § 157(b)(1) precludes a bankruptcy court from liquidating or estimating contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution. Indeed, the claims liquidation process would not even have to occur in a federal court at all. One option available to the District Court would be to abstain from hearing the matter, lift the automatic stay, and allow the personal injury claim to proceed to trial and judgment in the state court in which it was pending prior to the bankruptcy petition.

"Diagnosis and Initial Management of Nonmalignant Diseases Related to Asbestos, 170 Amer. J. Respir. Crit. Care Med. 691 at 696 (attached as Exhibit 5).

Given this authoritative medical literature it is not surprising that many lung cancer claimants and their experts do not rely at trial on an x-ray to prove that the cancer is asbestos-related, but instead rely upon the plaintiffs' occupational history of exposure to asbestos and the well-documented link between asbestos exposure and cancer. Indeed, even where the claimant's expert is relying in part upon an x-ray to support his conclusion that the cancer is asbestos-related, in many instances the x-ray is never produced at trial if it is owned by a third party but instead is reviewed by both the claimant's and the defendant's experts at the site where it is located.

As noted above, nothing in the Questionnaire or in this Court's prior Orders has required any claimant to identify the expert witnesses that they will use in a trial of their claim, nor required any such individual claimant expert to produce an expert report and whatever documents (including x-rays) the expert will rely upon at trial. The fact that at one time a plaintiff had an x-ray but said x-ray is no longer available would not preclude the plaintiff from getting a new x-ray (assuming he were still alive) or obtaining pathology reports to support the claim. Given this, it would be extremely unfair, a violation of the Bankruptcy Code and Rules, and recognized notions of due process for this Court, in response to the Questionnaire discovery motions practice, to disallow the claim of a claimant who has been unable to obtain his x-ray, which is in the hands of a third party, or to make an adverse inference finding for purposes of Estimation that the claimant would be unable to obtain other evidence (including other x-ray evidence) to support the claim.

**CONCLUSION**

Grace's motion should be denied.

Dated: April 26, 2007

Respectfully submitted,

CAMPBELL & LEVINE, LLC

*/s/ Mark T. Hurford*
Marla R. Eskin (#2989)
Mark T. Hurford (#3299)
800 King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 426-1900

- and –

Elihu Inselbuch
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, NY 10152-3500
Telephone: (212) 319-7125

Peter Van N. Lockwood
Nathan D. Finch
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, NW
Washington, DC 20005
Telephone: (202) 862-5000

*Counsel for the Official Committee of Asbestos Personal Injury Claimants*

PHILLIPS, GOLDMAN & SPENCE, P.A.

*/s/ John C. Phillips, Jr.*
John C. Phillips, Jr. (#110)
1200 North Broom Street
Wilmington, DE 19806
Telephone: (302) 655-4200

- and -

Roger Frankel
Richard H. Wyron
Raymond G. Mullady, Jr.
Debra L. Felder
ORRICK, HERRINGTON & SUTCLIFFE LLP
3050 K Street, NW
Washington, DC 20007
Telephone: (202) 339-8400

John Ansbro
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, N.Y. 10103-0001
Telephone: (212) 506-5000

*Counsel for David T. Austern, Future Claimants' Representative*