# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | * | |
| W.R. GRACE & CO., et al., | * | Chapter 11 |
| Debtor. | * | Case No. 01-01139 (JKF) (Jointly Administered) |
| ------------------------------------------------x | | |
| W.R. GRACE & CO., et al. | * | |
| Claimants, | * | |
| -against- | * | Adversary No. A-01-771 |
| MARGARET CHAKARIAN, et al. and JOHN DOES 1-1000, | * | Ref. Nos. 398, 413, 414, 417 |
| Defendants. | | Hearing Date: May 2, 2007 @ 2:00 p.m. |
| ------------------------------------------------x | | |

**OMNIBUS REPLY OF CONTINENTAL CASUALTY COMPANY (I) TO VARIOUS RESPONSES TO DEBTORS' MOTION TO EXPAND THE PRELIMINARY INJUNCTION TO INCLUDE ACTIONS AGAINST BNSF, AND (II) IN SUPPORT OF DEBTORS' MOTION TO EXPAND THE PRELIMINARY INJUNCTION <u>TO INCLUDE ACTIONS AGAINST BNSF</u>**

Continental Casualty Company ("CCC") hereby files this reply (a) to the (i) *Response of BNSF to Debtors' Motion to Expand the Injunction to Include Actions Against BNSF* (Docket No. 413) ("BNSF Response"), (ii) *Opposition of the Official Committee of Asbestos Personal-Injury Claimants to Debtors' Motion to Expand the Injunction to Include Actions Against BNSF* (Docket No. 414) (the "PI Opposition"), and (iii) *Opposition of Libby Claimants to Debtors' Motion to Expand the Injunction to Include Actions Against BNSF* (Docket No. 417) (the "Libby Opposition"), and (b) in support of the *Debtors' Motion to Expand the Injunction to Include Actions Against BNSF* (Docket No. 398) (the "Expansion Motion") and states as follows:

**Introduction**

1. On March 26, 2007, W.R. Grace & Co., *et al.* ("Grace" or the "Debtors") filed the Expansion Motion seeking to expand the Injunction to include the Montana Actions pending against BNSF.[1] The Expansion Motion is currently pending before this Court. All the papers submitted to the Court in response to the Expansion Motion do nothing but make clear that the Montana Actions directly implicate Grace and should be stayed.

2. The BNSF response, the PI Opposition and the Libby Opposition inaccurately and incompletely state the facts presented by the Expansion Motion and subject their version of the facts to a flawed analysis of the jurisdictional requirements and legal standards. The Debtors have addressed these legal and factual inaccuracies in the *Debtors' Reply In Support Of Their Motion To Expand The Preliminary Injunction To Include Actions Against BNSF* (the "Debtors' Reply"). CCC generally joins and supports the Debtors' Reply. Notwithstanding the inaccuracies, the BNSF and other responses to the Expansion Motion confirm the following:

(a) BNSF has not, in any of its papers, waived its right to contractual indemnification from the Debtors, and thereby refuses to concede that there will not be any impact on the Debtors' estates;

(b) BNSF does not waive any rights of insurance coverage under the Debtors' policies or under policies that were part of the Debtors' insurance program. CCC has advised the Debtors that it is CCC's position that under the terms of the Debtors' insurance program, any BNSF claims under that coverage will ultimately be a liability of the estate. There is no evidence before the Court that *any insurer has accepted coverage of all of the Libby claims and has done so without a reservation of rights.* Accordingly, without the completion (with appeals) of a

---

[1] All terms not otherwise defined herein shall have the meanings as set forth in the Expansion Motion.

lengthy and complex coverage action involving the Debtors and resolution of claims by the insurers against the Debtors, the Court cannot know and cannot find that the Debtors' estate will not be impacted by BNSF's claims of indemnification against the Debtors. It is of no consequence that BNSF asserts coverage – the issue for purposes of the injunction is whether coverage has been accepted for all of the cases without limitation, thus ensuring that the Debtors' estate will not incur liability. That is simply not the case. Moreover, none of the insurers have waived any rights of indemnity or other rights against the Debtors that render them responsible for claims under the policies.

3.   In explaining the basis for the Court's subject matter jurisdiction to enjoin the Montana Actions, Grace identifies "four distinct avenues by which the Debtors' estates may be directly impacted by the Montana Actions filed against BNSF." (Debtors' Reply, p. 2). CCC notes that none of the opposition papers defeat or eliminate those avenues: (i) as noted, BNSF has not given up its claim for contractual indemnification and there is no evidence that conclusively establishes that all of the claims will be entirely covered with no claims against the Debtors; (ii) BNSF has not conceded or waived its claim for coverage under the Debtors' insurance; (iii) BNSF has not waived its defense that the Libby Claimants' injuries arose from the Debtors' products or operations; and (iv) BNSF has not waived other claims of indemnification. Only if BNSF is willing to concede that the torts alleged were solely its responsibility, and not that of the Debtors, and BNSF waives its claims that the Debtors or insurance for which the Debtors are responsible must pay for these claims, can BNSF then assert that the Montana Actions do not impact the Debtors' estates.

4.   CCC further notes that the Libby Claimants made the same arguments to this Court regarding the *Gerard* matter. The Court rejected those arguments and the Court's views of

3

LIBC/2971080.2

the potential impact on the Debtors' estates were upheld by the Third Circuit Court of Appeals. Although the Debtors were not named in the Montana Actions, it is clear that the Debtors' conduct would be very much at issue, just as it was in *Gerard*. *Gerard v. W.R. Grace & Co.*, 115 Fed. Appx. 565, 569 (3d Cir. 2004) ("*Gerard*") ("Grace's absence [from the litigation] would disadvantage both MCC and Grace as a practical and legal matter.") Underlying the claims against BNSF are central questions of whether the Debtors' actions in mining, transporting and loading vermiculite ore from the Debtors' mining operations caused actionable harm to the claimants. If the Montana Actions are allowed to proceed against BNSF, there is a real danger that a record may be developed concerning the Debtors' conduct that would be detrimental to the Debtors in other proceedings.

5. Specifically, as this Court recognized in the *Gerard* proceeding, statements made, testimony heard or evidence submitted during a case against one of the Debtors' agents (there MCC) could later be used against the Debtors:

> How's Maryland Casualty going to defend that action, except to show that in fact it wasn't Maryland Casualty, it's the debtor's conduct. I mean, it seems to me that one way or the other you're implicating something on behalf of the debtor. Either the debtor is going to defend an action by Maryland Casualty, which is kind of the equivalent of the liability over theory, I didn't do it, you did, or I did it but I did it because you told me to do it kind of policy.

Transcript of May 20, 2002 Hearing, page 35, lines 8-14.

The Libby Claimants steadfastly assert, however, that the Montana Actions are separate and independent actions against BNSF. Assuming *arguendo* that BNSF's liability is based on a potentially independent cause of action, that liability is still solely derivative of the Debtors' product or mining operations.

4

LIBC/2971080.2

6.      The Libby Claimants' allegations in the Montana Actions make abundantly clear that Grace's Libby mine operations and Grace's underlying conduct relating to the vermiculite mined though those operations are factually interwoven with claims now pending against BNSF and the other defendants named in the Montana Actions. The complaints in the Montana Action are replete with allegations concerning the asbestos contamination allegedly caused by the Debtors. For example, the complaint in *Arnold Kelly et al., v. Burlington Northern Santa Fe Railway Company, et al.*, Montana Eighth Judicial District Court, Cascade County, cause no. DDV-03-835 ("*Kelly* Complaint") stated:

> At all times relevant to this action, the defendants had actual knowledge that vermiculite, originating from the business activities of Zonolite Company [a predecessor of the Debtors] and W.R. Grace & Company (Grace) in Lincoln County, was contaminated with asbestos. The defendants had actual knowledge that asbestos was extremely hazardous and that exposure to asbestos causes potentially fatal diseases, including asbestosis, lung cancer and mesothelioma.

*Kelly* Complaint at ¶ 25.

Further, the Debtors' own pleadings make clear that BNSF activities in Libby simply cannot be separated from the Debtors' actions because, among other things, the Debtors and BNSF were jointly involved in transferring the Debtors' vermiculite ore onto BNSF trains. Expansion Motion at ¶ 1. As is evident from the Libby Claimants' own allegations and the Debtors' factual references, the intertwined nature of BNSF and the Debtors' operations in Libby requires that any factual determinations in the Montana Actions concerning BNSF's role in transferring or transporting allegedly contaminated vermiculite necessarily consider the Debtors' underlying or joint role in the mining, handling and transfer of that vermiculite.

7.      The Libby Claimants and BNSF's ongoing attempts to seek discovery from the Debtors' insurers, including CCC, will also affect the Debtors' estates by wasting estate resources and potentially interfering with the Debtors' reorganization efforts. In response to

5

LIBC/2971080.2

those discovery requests, CCC believes that Debtors would be the likely source of any information regarding Grace's relationship with BNSF, Grace's operations on BNSF property, any alleged insurance Grace purchased for BNSF and the costs to Grace of any recourse to the insurance. Consequently, the Debtors are necessary parties to any issues arising out of insurance coverage that they allegedly purchased for BNSF.

8.  Discovery and disputes over coverage allegedly purchased by the Debtors through their own insurance program in New York are complex and simply cannot proceed without the Debtors, whether BNSF claims to be a named or additional insured. Similarly, to the extent the Libby Claimants and BNSF require discovery as to the contractual agreements between it and the Debtors, that discovery clearly implicates the Debtors. Indeed, the Third Circuit specifically noted Grace's potential discovery obligations if the litigation were allowed to proceed as a reason for expanding the Injunction to include MCC. *Gerard*, 115 Fed. Appx. at 569. The Debtors presently have pressing matters to address in this bankruptcy and should not become embroiled in collateral litigation and discovery involving a small subset of the claimant universe.

For all of the above reasons, CCC submits that the record establishes that the Expansion Motion has to be granted and motion for discovery denied.

Dated: April 27, 2007

        Respectfully Submitted,

        ROSENTHAL, MONHAIT, & GODDESS, P.A.

        _/s/ Edward B. Rosenthal_
        Edward B. Rosenthal (Del. Bar No. 3131)
        919 Market Street
        Mellon Bank Center, Suite 1401
        Wilmington, Delaware 19899-1070
        (302) 656-4433

           -and-

        GOODWIN PROCTER LLP
        Daniel M. Glosband (pro hac vice)
        Brian H. Mukherjee (pro hac vice)
        Exchange Place
        Boston, MA 02109
        (617) 570-1930

           -and-

        FORD MARRIN ESPOSITO WITMEYER
         & GLESER, L.L.P.
        Elizabeth DeCristofaro (pro hac vice)
        Wall Street Plaza, 23rd Floor
        New York, New York 10005-1875
        (212) 269-4900

        Counsel for Continental Casualty Company