IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| W.R. GRACE & CO., et al. ) | Case No. 01-01139 (JKF) |
| ) | (Jointly Administered) |
| Debtors. ) | |
| | **Docket Ref. No. 15084** |

**DEBTORS' RESPONSE TO MOTION OF EARLY, LUDWICK
AND SWEENEY, LLC FOR A PROTECTIVE ORDER WITH
RESPECT TO SUBPOENA ISSUED BY W. R. GRACE**

Since filing these Chapter 11 cases, Grace has maintained that many of the asbestos personal injury claims that required Grace to file for Chapter 11 protection were based on unreliable medical evidence. More recently, and in particular during the nine months since most individuals purporting to hold pre-petition litigation claims against Grace have returned the Personal Injury Questionnaires, a new phenomenon, and one which casts even further doubt on the reliability and validity of the claims, has come to light. This phenomenon -- known as "double dipping" -- occurs when a Claimant alleges certain facts concerning his or her exposure when prosecuting claims against certain asbestos defendants or trusts, and alleges a different set of facts concerning that exposure when prosecuting claims against other defendants or trusts. *See* Kimberley A. Strassel, Op-Ed., *Trusts Busted*, Wall St. J., Dec. 5, 2006. Significantly, the double dipping issue appears to taint mesothelioma claims, which are the most serious asbestos-related claims and those traditionally having the highest settlement value.

At the heart of the allegations surrounding double dipping are two law firms: Brayton Purcell LLP ("Brayton Purcell") and Early, Ludwick & Sweeney LLC ("Early Ludwick"). Since the double dipping problem has come to light, Grace has obtained evidence that Early Ludwick manipulated, manufactured, or otherwise altered the exposure history of at least one of its

Claimants (who also has a claim in this case) when asserting claims against asbestos trusts. Based on that evidence, Grace seeks targeted discovery from Early Ludwick to determine whether other Early Ludwick Claimants' exposure histories suffer from the same deficiencies. This Court already has ruled that Claimants' exposure histories are relevant to the Estimation Proceeding. 9/11/06 Hr'g Tr. at 206, 251. And, there is no source for the information regarding Early Ludwick clients other than Early Ludwick itself. Notwithstanding, Early Ludwick has moved for a protective order under Fed. R. Civ. P. 26(c) and Federal Rule of Bankruptcy Procedure 7026 in an attempt to bar this discovery in its entirety. Because the discovery that Grace seeks is relevant and Early Ludwick has not established good cause for a protective order, Early Ludwick's motion should be denied.[1]

## BACKGROUND

Grace continues to work diligently to prepare for the Estimation Proceeding. Early Ludwick agrees that the purpose of the Estimation Proceeding is "to determine the level of funding necessary to sustain an asbestos personal injury trust." Early Ludwick's Motion for Protective Order re Debtor's Subpoena (Apr. 3, 2007) (Docket No. 15084) ("Early Ludwick Mot.") at 6. Of course, the whole of the "level of funding" depends upon the sum of its parts, that is, the number of individual Claimants and the value of their potential claims against the trust. The value of those claims, in turn, depends upon individual Claimants' exposure histories. Thus, in order to determine the appropriate "level of funding," Grace's medical and estimation

---

[1] Early Ludwick's latest attempt to thwart Grace's legitimate discovery efforts threatens to undermine the completeness, integrity, and timeliness of the upcoming Estimation Proceeding. Accordingly, Grace separately has moved for expedited consideration of Early Ludwick's motion in an effort to resolve this matter without disrupting the most recently established schedule.

experts must have access to complete and accurate data regarding individual Claimants' exposure histories.

Through discovery and an Order and Opinion of an Ohio court, *Kananian v. Lorillard Tobacco Co.,* No. 442750 (Ohio Misc. filed Jan. 19, 2007) ("Ohio Court Order"), attached as Ex. C to Early Ludwick Mot., Grace has evidence that data regarding at least one of Early Ludwick's Claimants -- Harry Kananian -- has been manipulated (at best) by both Early Ludwick and Brayton Purcell. Although Brayton Purcell prepared Mr. Kananian's Questionnaire, Early Ludwick prepared and submitted earlier claim forms on Mr. Kananian's behalf to other asbestos trusts. Many of those trust claim forms require similar information about asbestos exposure as the Questionnaire. There is ample evidence that Early Ludwick communicated information concerning Mr. Kananian's asbestos exposure to Brayton Purcell, which appears to have relied upon that information in other litigation, including the Lorillard Tobacco Company Ohio state court lawsuit. *See,* generally e-mails regarding Kananian case, attached as Ex. 1.

Grace has learned, however, that the Kananian claim forms that Early Ludwick prepared for other asbestos trusts (and were then relied upon by Brayton Purcell), may be *"fictional."* 3/13/06 E-mail chain, from C. Andreas at 9:34 AM, attached as Ex. 2 (emphasis added). Evidently, Mr. Kananian and his son "filled out info form(s) sent to them by ELS [Early Ludwick] and then ELS took that info and prepared and submitted some ***horribly misleading*** BK [bankruptcy] forms. There is no way what [Mr. Kananian and his son] sent them [Early Ludwick] matches what they [Early Ludwick] put in these forms." 3/13/06 E-mail chain, from C. Andreas at 3:27 PM, attached as Ex. 2 (emphasis added). To the contrary, the Early Ludwick claim form for Mr. Kananian is "rife with ***outright fabrications*** regarding the decedent Harry

Kananian's exposure to asbestos." 3/22/06 E-mail from C. Andreas to A. Brayton, attached as Ex. 3 (emphasis added).

An attorney who reviewed depositions from Mr. Kananian and his son, as well as the questionnaire they jointly prepared, described the Early Ludwick claim forms based upon those materials as "crap" that are "seriously jeopardizing the [Ohio] case" and also could implicate "[a] serious concern regarding malpractice." 3/10/06 E-mail from C. Andreas to Group Partners, attached as Ex. 4. The questionnaire, for example, "does not describe [Harry Kananian's] past history in any way, shape or form as that set forth in most of the claim forms ELS ultimately submitted." 3/22/06 E-mail from C. Andreas to A. Brayton, attached as Ex. 3. The bottom line is that "ELS took great liberties with this info [from the questionnaire] in filing BK forms" and was "bullshi**ing the trusts." 3/13/06 E-mail chain, from C. Andreas to B. Carter at 1:44 PM (expletive revised), attached as Ex. 5.

In evaluating the impact of the Early Ludwick claim form inaccuracies on Brayton Purcell's case against Lorillard, Mr. Andreas indicated that he intended to "explain them away [at trial] as mistakes by clerks or attys," but that "[a] jury is going to look down on this type of *fabrication by lawyers*." 3/10/06 E-mail from C. Andreas to Group Partners, attached as Ex. 4 (emphasis added). In this attorney's opinion, the Early Ludwick inaccuracies regarding Mr. Kananian were serious enough to lead to "some sort of federal investigation and/or prosecution involving *bankruptcy fraud*." 3/22/06 E-mail from C. Andreas to A. Brayton, attached as Ex.3 (emphasis added).

As a result of the evidence that Brayton Purcell developed regarding Early Ludwick's inaccurate claim forms, Mr. Andreas filed a motion with the Ohio court "so that [his firm] could demonstrate to the Court that it would be *highly misleading to let in the ELS forms*." Id.

4

(emphasis added). According to Mr. Andreas, the Ohio court was sufficiently concerned with the described inaccuracies regarding Mr. Kananian that the court advised Mr. Kananian's son to "consult with appropriate counsel":

> In essence, what he [the Ohio court] was getting at was that if the trial proceeds and [Mr. Kananian's son's] testimony from deposition and/or live testimony is introduced, Jack may be subjecting himself to future potential criminal or other liability and should be appropriately advised in advance.

*Id.* The Ohio court also allowed discovery into the preparation of the original trust claim forms as well as into the coordination between Early Ludwick and Brayton Purcell on the matter, leading to the depositions of attorneys and paralegals from Early Ludwick as well as from Brayton Purcell. *See* 4/5/06 E-mail from C. Andreas to Early Ludwick, attached as Ex. 6 ("We should coordinate our response to the discovery that is forthcoming from Lorillard. I expect to start seeing it in the next several weeks. Depositions of folks from both our offices to follow.").

Critically, Mr. Kananian is a Grace Claimant. With no evidence to the contrary, there is every reason to believe that the original "horribly misleading" trust claim form that Early Ludwick prepared is echoed in Mr. Kananian's Questionnaire. *See* 3/13/06 E-mail chain, from C. Andreas at 3:27 PM, attached as Ex. 2 (characterizing Early Ludwick's claim form as "horribly misleading."). Even a cursory review of Mr. Kananian's Questionnaire demonstrates glaring inconsistencies. For instance, in an attachment titled "W.R. Grace & Company PIQ," Kananian claims exposure to unspecified Grace products at the Hunters Point Naval Shipyard in San Francisco, California from January 1, 1943 to December 31, 1974 (nearly 30 years). Questionnaire of H. Kananian at WR GRACE PIQ 39406-0019, attached as Ex. 7 However, interrogatory responses attached to the Questionnaire reflect that Mr. Kananian was at the Hunter's Point Shipyard from March 1945 to April 1945 (only *one month*). *Id.* at WR GRACE PIQ 39046-0080--39046-0082.

Moreover, there is no evidence that the factual problems that infect Mr. Kananian's claims are unique to this Claimant. Early Ludwick represents more than 100 other mesothelioma Claimants in this bankruptcy litigation. Brayton Purcell represents an additional 70 mesothelioma Claimants. In an effort to discover whether Early Ludwick either alone, or in association with Brayton Purcell, prepared and submitted other "horribly misleading" Questionnaires in this litigation, Grace issued a subpoena covering the exposure histories of the Early Ludwick Claimants. *See* 3/16/07 Early Ludwick Subpoena, attached as Ex. A to Early Ludwick Mot.[2]

Grace's discovery on this point is narrowly tailored, as this Court earlier has indicated that any request for attorney discovery should be. *See, e.g.,* 10/24/05 Hr'g Tr. at 82 ("If you've got need for specific discovery [from attorneys], focused on a specific area, you can take it and we'll deal with it piecemeal."). Specifically, Grace requests a 30(b)(6) witness from Early Ludwick who can testify to, *inter alia,* Mr. Kananian's case and claims, Early Ludwick's practices and procedures regarding the submission of claim forms to asbestos trusts, and exposure evidence for other Early Ludwick Claimants in this litigation. *See* Early Ludwick Subpoena at 2. Grace also seeks any "back-up" documents for the Kananian Questionnaire to the extent Early Ludwick has such historical information regarding Claimant Kananian, as well as documents that will allow Grace to understand Early Ludwick's involvement with the preparation of Kananian's Questionnaire. All of this information is directly relevant to determining "what claims are legitimate and what claims are not legitimate." *See* 10/24/05 Hr'g

---

[2] Indeed, there appears to be at least one other mesothelioma Claimant who Early Ludwick and Brayton Purcell jointly represent in some fashion. Brayton Purcell submitted a proof of claim for a Thomas Kearns but no Questionnaire. It appears that Early Ludwick submitted the Questionnaire on behalf of Mr. Kearns.

Tr. at 85 (In discussing attorney discovery, Court indicated that such discovery must be relevant to Grace experts' preparation for Estimation Proceeding.). Rather than embarking on "a colossally irrelevant and wasteful wild goose chase," Early Ludwick Mot. at 3, Grace has limited its discovery request to information concerning only the most serious of the approximately 500 claims submitted by Early Ludwick. Without the Early Ludwick discovery, Grace will go into the Estimation Proceeding without knowing which of Early Ludwick's and/or Brayton Purcell's Questionnaires other than Mr. Kananian's are "horribly misleading," and which, if any, are accurate.

## ARGUMENT

Early Ludwick moves for a protective order under Fed. R. Civ. P. 26(c). But the motion fails on its face because Early Ludwick, which relies exclusively on general and conclusory statements, has not made the requisite showing of good cause. *See Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786 (3rd Cir. 1994) ("[I]t is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection."); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" are insufficient to support a good cause showing under Rule 26(c)), *cert. denied,* 484 U.S. 976 (1987); *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3rd Cir. 1995) (same). Grace seeks information that is squarely within the scope of Fed. R. Civ. P. 26(b), and Early Ludwick has not proffered specific examples demonstrating any applicable privilege nor articulated its reasoning for seeking a protective order. Accordingly, Early Ludwick has failed to establish the requisite good cause and its motion should be denied.

I.  **THE DISCOVERY GRACE SEEKS IS RELEVANT UNDER FED. R. CIV. P. 26(a).**

The discovery that Grace seeks -- evidence of Claimants' exposure histories, and the extent to which those exposure histories affect Grace's potential liability -- already has been deemed relevant by this Court. *See, e.g.,* 9/11/06 Hr'g Tr. at 251 ("[I]n looking at relevance I am looking at what the experts may need, and it still seems to me that your – the exposure history may be relevant to an expert in terms of figuring out what the funding for a trust may be."); *id.* at 206 ("[T]hat's why they [experts] want to see the other exposure information, and that seems to me to be relevant."). As the Court has recognized, Grace's experts need individual Claimants' exposure history to figure out at what level the entire trust should be funded. To the extent other documents bear on that exposure history, they also are relevant. Grace's discovery seeks exactly that type of information.

Early Ludwick's "argument" for the "irrelevance" of the requested information, in fact, demonstrates its relevance. Pointing to the Grace requests that seek exposure information, Early Ludwick admits that "the issue of asbestos exposure was one of the most exhaustively addressed issues" in recent proceedings, and that the Court already has ordered Claimants to provide certain exposure information to Grace. Early Ludwick Mot. at 8. *See also id.* at 9 (indicating that Early Ludwick previously has produced to Grace exposure information). Thus, Early Ludwick cannot mean that the subpoenaed information is not relevant in the Rule 26(b) sense. Instead, Early Ludwick must mean that the subpoenaed information is not relevant because it "[a]lready [was] [p]rovided in [r]esponse to the Grace [q]uestionnaire." *Id.* at 7. The test for relevance under Rule 26(b) is not, of course, whether related or similar information already has been produced, but whether the subject discovery "appears reasonably calculated to lead to the

8

discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Early Ludwick has made no other attempt to support its "irrelevance" argument, thus, it fails.

Further, and contrary to Early Ludwick's insinuations otherwise, the Court has never restricted Grace's discovery of the materials underlying the Claimants' claims to information obtained through the Questionnaire responses. Indeed, the Court has explicitly condoned Grace's seeking information related to the medical bases for individual claims from the doctors and screening companies responsible for generating those claims. 10/24/05 Hr'g Tr. at 75-76 ("[T]ake the depositions of the doctors. Because they're the ones who got paid and gave the diagnosis. And it's their testimony you're trying to challenge."); *id.* at 78. In fact, the Court expressly left open the possibility that discovery may be taken of the law firms to the extent that they had relevant information that Grace could not obtain from the Claimants themselves. *See id.* at 82 ("If you've got need for specific discovery [from attorneys], focused on a specific area, you can take it and we'll deal with it piecemeal."), 85.

Therefore, Early Ludwick's claim that it already has given to Grace certain of the requested categories of information -- while immaterial to any argument about Rule 26(b) relevance -- smacks of disingenuousness. It has been admitted and established in an Ohio court that certain Early Ludwick materials have been concealed in other litigation and that materials already in the production chain may not be truthful. Early Ludwick cannot now duck discovery into whether there are similar inaccuracies regarding other Claimants by directing Grace to the very materials that might themselves be inaccurate. As this Court has recognized, "if there is going to be some challenge to a proof of claim, if the debtor disputes it, that's relevant information for the experts to know." 7/24/06 Hr'g Tr. at 53. Without the subpoenaed information, Grace cannot determine whether there will be a challenge to the Early Ludwick

proofs of claim, thus demonstrating -- as the Court previously has indicated -- the relevance of this discovery.

Finally, Early Ludwick cannot seriously dispute that information it may have regarding Brayton Purcell -- the law firm that discovered, described, and exposed Early Ludwick's fabrications in Mr. Kananian's asbestos trust claim form -- is anything other than directly relevant to Grace's defense against Mr. Kananian's claim, and potentially against the claims of other Early Ludwick and Brayton Purcell clients, in this litigation. It is undisputed that there is at least some overlap in Early Ludwick and Brayton Purcell's inventories of mesothelioma Claimants. It is similarly undisputed that, for those individuals, Brayton Purcell and Early Ludwick communicated with respect to the contents of claims forms and discovery responses. *See e.g.,* 3/13/06 E-mail chain, from C. Skubic at 9:10 AM, attached as Ex. 2 ("[C]an you call Early and find out what docs they have re intake for BK forms."); 3/13/06 E-mail chain, from F. Jimmink to C. Andreas and C. Skubic at 12:40 PM, attached as Ex. 2 ("Please see attached. This is the [question]aire from ELS . . . they are FED EX'ing their file to me today."); 3/13/06 E-mail chain, from C. Andreas at 9:34 AM, attached as Exhibit 2 ("I would like to see that form [that Mr. Kananian and his son filled out and sent to ELS] if ELS still has it."); 4/5/06 E-mail from C. Andreas to Early Ludwick, attached as Ex. 6 ("***We should coordinate our response to the discovery*** that is forthcoming from Lorillard. I expect to start seeing it in the next several weeks. Depositions of folks from both our offices to follow.") (emphasis added). To the extent that Early Ludwick has in its possession, custody, or control documents and information related to the exposure histories of Brayton Purcell mesothelioma Claimants that were not submitted with those Claimants' Questionnaires, that information is certainly relevant to the estimation of the value of those claims.

In a perfect world, of course, Brayton Purcell would not be relevant, because in a perfect world Early Ludwick would not have submitted claim forms only tangentially related to the supporting facts, and both Brayton Purcell and Early Ludwick would have provided all documents relevant to the Claimants' histories of asbestos exposure. Having chosen a different path, however, Early Ludwick has made Brayton Purcell, and the firms' relationship with each other, directly relevant to this bankruptcy litigation. Just as the Ohio court deemed Early Ludwick (which had not appeared in that litigation) relevant to resolving the concerns with Mr. Kananian's claim form there, Brayton Purcell (and information Early Ludwick may have regarding Brayton Claimants) is relevant here.

## II. EARLY LUDWICK'S CLAIM THAT THE GRACE SUBPOENA SEEKS PRIVILEGED INFORMATION FAILS ON ITS FACE.

### A. Early Ludwick's Privilege Claims Fail On Their Face Because The Law Firm Cannot Rely On Conclusory Statements To Sustain Them.

As the party claiming a privilege, the burden is on Early Ludwick to demonstrate that the discovery Grace seeks is privileged. *See In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 187 (D.N.J. 2003) ("[T]he party asserting the privilege bears the burden of establishing those facts that are the essential elements of the privileged relationship."). When a party asserts privilege as a basis for not complying with a discovery request, such as Early Ludwick has here, that party "has the burden of proof to assert *specific facts* relating to *specific documents* and cannot rely on conclusory statements." *Mass. Sch. of Law v. Am. Bar Ass'n*, 914 F. Supp. 1172, 1178 (E.D. Pa. 1996) (emphasis added). Specificity is required so that "a party whose discovery is constrained by a claim of privilege [will be provided] with information sufficient to evaluate the claim and to resist it. *The party claiming the privilege cannot decide the limits of his entitlement.*" *Id.* (emphasis added) To prevail in its claim that the requested discovery is

11

privileged, then, Early Ludwick is required to point to *specific* documents and to provide *details* as to the nature of the privileged relationship.

Early Ludwick's privilege assertion is no more than the barest of conclusory statements. For example, Early Ludwick asserts: "Grace has subpoenaed the client files of legal counsel. Inevitably these files will be replete with documents entitled to privilege protection." Early Ludwick Mot. at 22. The firm later claims that "many of the documents requested [*i.e.,* not all] are subject to protection under either the attorney-client privileged [sic] or the work product doctrine." *Id.* at 25. Early Ludwick does not point to a single document, nor does it describe a single privileged communication or relationship, in support of these bald assertions. *See generally,* Early Ludwick Mot.

Early Ludwick resorts to conclusory statements because it appears that the firm did not even take the time to accurately scope -- let alone substantively review -- *any* materials subject to Grace's subpoena. *See generally,* Early Ludwick Mot. (no mention of the volume or specific types of documents responsive to Grace's subpoena); *id.* at 25 (Early Ludwick asserts that "client files 'typically' contain[] from 1 to 4 'banker's boxes' of documents" but does not provide an exact number based on any actual review of the material.). Because Early Ludwick's privilege claim is utterly devoid of the requisite detail and specificity, their privilege claim fails on its face.

> B. **Early Ludwick Has Not Demonstrated That The Discovery Grace Seeks Is Subject To This Court's Ruling On The Consulting Expert Privilege.**

Early Ludwick bases part of its privilege assertion on prior rulings of this Court concerning the consulting expert privilege. Early Ludwick does not, however, describe a *single* document subject to the Grace subpoena as the basis for its claim under the consulting expert privilege, nor does it provide any facts to support its claim that any -- let alone all -- of the requested discovery is protected by such a privilege. Early Ludwick says only that "[t]he

12

Subpoena's discovery requests should also be denied to the extent they exceed the scope" of the Court's Supplemental December 22, 2006 Order." Early Ludwick Mot. at 15.

Early Ludwick's effort is facially insufficient to support a claim under the consulting expert privilege for the reasons described in Part (II)(A), *supra*. This Court has rejected this kind of *"because we said so"* approach, and has set forth guidelines as to what documents fall outside the scope of the [consulting expert] privilege. *See* 12/05/06 Hr'g Tr. at 137-38 ("[The Court]: I think that the title that the law firm puts on somebody is not determinative . . . . You can't by virtue of putting a title on something, say that just because you put that title on it, that that's the fact of what took place."); *see also* 12/22/06 Supplemental Order re Motions to Compel (Docket No. 14148) ("Consulting Expert Order") at ¶1. Notably, Early Ludwick has not *even* put a title, *i.e.* litigation consultant, (accurate or not) on someone here, let alone established that the consulting expert privilege applies. At a minimum, Early Ludwick has to demonstrate that specific documents that are subject to Grace's request are or are not within the scope of the Consulting Expert Order. Because the firm has not pointed to a single document period, it goes without saying that Early Ludwick has failed to show that any documents sought by Grace here are protected under the Court's Consulting Expert Order.

C. **Early Ludwick Has Not Demonstrated That The Discovery Grace Seeks Is Independently Privileged.**

Early Ludwick also claims that the documents subject to the Grace subpoena are independently privileged as attorney-client communications and/or as attorney work product. Early Ludwick Mot. at 20-21. Once again, Early Ludwick relies on generalized and conclusory mantra, such as "Grace has subpoenaed the client files of legal counsel. Inevitably these files will be replete with documents entitled to privilege protection." *Id.* at 22. As set forth in Part (II)(A), *supra,* such statements are insufficient to sustain Early Ludwick's privilege claims.

13

Early Ludwick does not provide any description of the materials that are routinely contained within Early Ludwick client files (let alone the materials that are within the specifications set forth in Grace's subpoena), necessary to establish the requisite specificity for a privilege claim. Further, Early Ludwick's promise that the files are "replete" with privileged documents is an empty one, since Early Ludwick apparently has not reviewed those files (they do not even have an exact count of how many boxes they are talking about, as they would if they had reviewed the files).

What is more, Early Ludwick does not even attempt to explain how numerous documents sought by the subpoena could be privileged: many subpoenaed items were submitted to non-parties and thus *cannot be privileged.* This includes, *e.g.,* "copies of any claim form *submitted to any asbestos trust(s)* and all attachments thereto"; "documents relating to exposure information of any kind *provided to any defendants*, except W.R. Grace, in any asbestos-related lawsuit"; and "*documents produced* by or on behalf of Harry Kananian or his estate." Early Ludwick Subpoena at Request Nos. 1, 2, 6 (emphasis added).

Even if Early Ludwick had demonstrated that there were particular documents within its responsive files that were privileged, it is undisputed that the attorney-client privilege "extends only to communications and not to facts." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (emphasis original) (citations omitted); *Synalloy Corp. v. Gray*, 142 F.R.D. 266, 268 (D. Del. 1992) (same). Similarly, the work product doctrine protects the documents or opinions created in anticipation of litigation, but that doctrine also "does not protect the *facts* that underlie the opinions." *Leonen v. Johns-Manville*, 135 F.R.D. 94, 96 (D.N.J. 1990) (emphasis added). As these cases make clear, requests for factual information do not fall with the scope of either the attorney-client privilege or the work product doctrine and must be produced.

14

Because Early Ludwick has made no attempt to describe the types of materials that are responsive to Grace's subpoena, or to state what the actual basis of any privilege objection would be, Early Ludwick has foreclosed Grace's ability to test the limits of Early Ludwick's privilege assertion. This is precisely why Early Ludwick bears the burden of establishing the existence of any privilege in the first place. *See In re Gabapentin*, 214 F.R.D. at 187 ("[T]he party asserting the privilege bears the burden of establishing those facts that are the essential elements of the privileged relationship."). Early Ludwick simply cannot "decide the limits of [its] entitlement." *Mass. Sch. of Law*, 914 F. Supp. at 1178. Because Early Ludwick has tried to do just that, its privilege claims fail as a basis for a protective order under Rule 26(c)

## III. THE ONLY WAY FOR GRACE TO OBTAIN THIS CRITICAL AND RELEVANT INFORMATION IS FROM EARLY LUDWICK THROUGH THE TAILORED SUBPOENA ALREADY SERVED.

Early Ludwick argues that Grace cannot meet "the heightened standard for allowing discovery that applies when one party seeks to depose or otherwise take discovery from its adversary's attorneys." Early Ludwick Mot. at 17 (*citing Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)). Grace meets the standard for attorney discovery articulated on several occasions by this Court, because there is no source other than Early Ludwick for the discovery that Grace seeks from that firm. *See, e.g.,* 10/24/05 Hr'g Tr. at 35 (indicating that attorney discovery is not appropriate if Grace has "access to this information elsewhere" than from attorneys); *id.* at 82, 85 (leaving door open for attorney discovery if Grace had "need for specific discovery" and could "substantiate that the discovery [Grace is] trying to get to is going to enhance" the effort to identify legitimate and illegitimate claims).

Even leaving to one side that the *Shelton* test has not been adopted in the Third Circuit, and without conceding that it governs here, Grace also easily meets the *Shelton* standard as set

forth by Early Ludwick. According to Early Ludwick, the heightened *Shelton* standard limits discovery of another party's attorney when:

(1) no other means exist to obtain the information than to depose opposing counsel;

(2) the information sought is relevant and non-privileged; and

(3) the information is crucial to the preparation of the case.

Early Ludwick Mot. at 19 (*citing Shelton*, 805 F.2d at 1327). Each prong of the *Shelton* test calls for a detailed factual inquiry, thus, Early Ludwick's list of several cases, Early Ludwick Mot. at 19, that denied discovery from attorneys based on the facts of those cases, are irrelevant to any inquiry here.[3] What is relevant here is that the subpoenaed information meets *each* prong of the test that Early Ludwick, in opposing the subpoena on this basis, suggests should govern. Because the second prong, that the requested information is relevant and non-privileged, has already been discussed in Sections I and II above, only the first and third prongs are discussed below.

The best evidence that "no other means exist to obtain the information" is that Brayton Purcell and Lorillard *both* went to Early Ludwick in order to get to the bottom of the erroneous Mr. Kananian trust claim forms, recognizing that, as the preparer of the initial trust claim forms, Early Ludwick would have certain information that no one else would.

Emails produced in the Ohio court show that Brayton Purcell immediately went to Early Ludwick in an attempt to sort through its confusion over the factual inaccuracies in Mr.

---

[3] That said, Grace notes the following about the one case Early Ludwick cites from within the Third Circuit that references *Shelton*, *Smith ex rel. v. United States*, 193 F.R.D. 201 (D. Del. 2000). While Early Ludwick is correct that the request there to depose two attorneys was denied, Early Ludwick conveniently fails to mention that the court's decision in this regard turned on the fact that "the in camera records reviewed do not indicate that either attorney ever possessed or had access to" the information on which they were to be deposed. *Smith*, 193 F.R.D. at 216. *Smith* is not useful, then, for any kind of general rule against deposing attorneys who do possess critical information.

16

Kananian's claim form. Although the emails that Grace has are significantly redacted, they show repeated efforts by the attorneys at Brayton Purcell to get information from Early Ludwick. *See, e.g.,* 3/13/06 E-mail chain, from C. Skubic at 9:10 AM, attached as Ex. 2 ("[C]an you call Early and find out what docs they have re intake for BK forms?"); 3/13/06 E-mail chain, from C. Andreas at 3:27 PM, attached as Ex. 2 ("I want to see exactly what the clients submitted to ELS. Can we get a copy of their file regarding BK submissions asap?"); 3/13/06 E-mail chain, from F. Jimmink to C. Andreas and C. Skubic at 12:40 PM, attached as Ex. 2 ("Please see attached. This is the [question]aire from ELS . . . they are FED EX'ing their file to me today."); 3/13/06 E-mail chain, from C. Andreas at 9:34 AM, attached as Ex. 2 ("I would like to see that form [that Mr. Kananian and his son filled out and sent to ELS] if ELS still has it.").

Lorillard, also, went to Early Ludwick for discovery into Mr. Kananian's claim form and related issues. Lorillard sought depositions as well as written discovery, as detailed in a status report that Lorillard submitted to the Ohio Court. *See* 6/22/06 Lorillard Tobacco Company's Status Report re Early, Ludwick & Sweeney, attached as Ex. 8 (without attachments). The Ohio court allowed Lorillard's request for attorney discovery; four Early Ludwick depositions were taken, and documents were produced. As the actions of Brayton Purcell and Lorillard (and the Ohio court) reflect, Early Ludwick is *the* party with access to the detailed information about their clients' exposure histories, claims submitted to trusts on behalf of those clients, and any related activities, even where such Claimants have also pursued aspects of their claims through Brayton Purcell. Thus, Grace meets the first *Shelton* prong.

As for the third *Shelton* prong, the Court's September 11, 2006 ruling, that exposure history may be relevant to an expert in terms of figuring out what the funding for a trust may be demonstrates that the requested information is crucial to the preparation of the case. Evidence

17

that Early Ludwick may have altered or misrepresented exposure history, as well as the "back-up" for the exposure history, is critical if Grace's experts are to "figure out what the funding for a trust may be," since the revelations about Early Ludwick, Brayton Purcell and Mr. Kananian's claim forms demonstrate that Grace's experts cannot rely on the claim forms that have been submitted to date, at least not without verifying their accuracy. Grace easily meets the test that Early Ludwick claims governs whether this discovery is allowable.[4]

## CONCLUSION

For the reasons set forth above, Early Ludwick's Motion for a Protective Order With Respect To Subpoena Issued by W.R. Grace should be denied.

Dated: April 27, 2007

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Ellen Therese Ahern
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

And

---

[4] Early Ludwick cannot seriously claim that Grace's discovery request violates either the "[s]pirit" or the "[e]xpress [t]erms and [c]onditions" of the Court's December 16, 2005 Order. Early Ludwick Mot. at 14. That Order explicitly states that, although the Court *at that time* was denying Grace's request for attorney discovery, that denial was "without prejudice to the Debtors' right to seek discovery from *individual firms* in accordance with the applicable [rules]." Order Denying Debtors' Emergency Motion for Leave to Take Discovery of Claimants' Attorneys (Dec. 16, 2005) (Docket No. 11356) at 2 (emphasis added). Indeed the Court instructed that "if [Grace] want[s] evidence from a specific firm, then you *do the formal discovery* according to the Rules of [Civil Procedure]." 10/24/05 Hr'g Tr. at 81 (emphasis added). By serving a duly issued subpoena pursuant to Federal Rule of Civil Procedure 45 that is precisely what Grace did. Early Ludwick does not claim – nor could it – that Grace's subpoena somehow is not in accordance with the applicable rules; thus, it appears that Early Ludwick is claiming that, in taking the steps expressly contemplated and permitted by the Court's 12/16/05 Order Grace has violated the "spirit" or "express terms and conditions" of the Order. Accordingly, Early Ludwick's pejorative characterization of Grace's actions as being "in bad faith" are simply nonsensical.

KIRKLAND & ELLIS LLP
Barbara M. Harding
David E. Mendelson
Amanda C. Basta
Brian T. Stansbury
655 Fifteenth Street, NW
Washington, D.C. 20005
(202) 879-5000

And

PACHULSKI STANG ZIEHL YOUNG
JONES & WEINTRAUB LLP

/s/ Laura Davis Jones

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors-in-Possession

DOCS_DE:126982.1