# <u>EXHIBIT 1</u>

# Index of Key Players and Key Terms

## Players

Chris Andreas – Junior Partner at Brayton Purcell (Counsel for Plaintiffs in Ohio)
Alan Brayton – Partner at Brayton Purcell
Gil Purcell -- Partner at Brayton Purcell
David Donadio -- Junior Partner at Brayton Purcell
Lloyd "Butch" LeRoy – Junior Partner at Brayton Purcell
Christina Skubic – Associate at Brayton Purcell, Head of Bankruptcy Dept.
Clara Vipond – Former Administrative Assistant at Brayton Purcell
Felicia Jimmink -- Paralegal at Brayton Purcell
Joseph Ryan ("Ryan") Poole – Supervisor of Bankruptcy Dept. at Brayton Purcell
James ("Jim") Early – Partner at Early Ludwick
Ethan Early – Attorney at Early Ludwick
Christopher Meisenkothen – Attorney at Early Ludwick
Eric Mudry – (Unknown Job Title) at Early Ludwick
Kim Curnane – Paralegal at Early Ludwick
Nicole Salato -- Paralegal at Early Ludwick
Maya MacAlpine - Paralegal at Early Ludwick
Teresa Oberempt -- Paralegal at Early Ludwick
Bruce Carter – Attorney at Law Offices of Bruce Carter (Counsel for Plaintiffs in Ohio)

Harry Kananian -- Decedent
Jack Kananian – Decedent's son / Administrator of Estate (Plaintiff)
Ann Kananian – Decedent's wife (Plaintiff)
Karen Kananian – Decedent's daughter
Mary Bruno – Decedent's daughter

## Terms

JM – Johns Manville
Manville Trust – Claims Resolution Management Corporation ("CRMC")
WMAC -- Western MacArthur
ELS – Early, Ludwick & Sweeney (CT law firm representing Plaintiffs)
BP -- Brayton Purcell (CA law firm representing Plaintiffs)
BETH – Bethlehem Steel
BETHST – Bethlehem Steel
PID – Product Identification
BK -- Bankruptcy
GLP – Gil Purcell
CEA – Chris Andreas
ARB -- Alan Brayton
JRP -- Ryan Poole

# Content of E-Mails Produced By Brayton Purcell

**SECTION 2:**

3/10/06 E-Mail from Andreas to Group Partners at 7:16 p.m.:

- Refers to ELS forms as **"the most troublesome."**
- Describes all of the reasons why the ELS forms are allegedly inaccurate.
- States, **"The UNR BK form (also prepared by ELS) is the absolute worst of the bunch!!!** They describe Harry Kananian as unloading Unarco Unibestos off ships in Japan. **Mr. Kananian supervised Japanese workers unloading ships for a short time at the end of the war.** He was rarely on ship and there is absolutely no evidence that anyone shipped or unloaded Unibestos on any of ship [sic] he was involved with during this period, least of all Mr. Kananian himself. This gives their experts ammo to blame amosite exposure." States, **"I believe we also overstate Mr. Kananian's exposure by indicating he was exposed as some type of shipyard worker at HPNSY** (he was there for one day to pick up his ship). We have a JM [Johns Manville] connection in this case by virtue of JM insulation used at HPNSY and installed on the General John Pope, the transport ship he was on to the Phillipines. He slept below insulated pipes in his berthing quarters. We nailed WMAC for the same connection."
- Refers to this type of conduct as a **"type of fabrication by lawyers"**
- Indicates that Plaintiffs received "about $150,000 or so" from the bankruptcy trusts to which they submitted claim forms. Also states, "I believe BP may have brought in about $20,000."
- Asks, "Does ELS have a piece of this case still? Their actions are seriously jeopardizing the case."
- States, **"A serious concern regarding malpractice is also implicated and a potential conflict in going forward."**

3/10/06 E-Mail from Carter to Andreas at 2:15 p.m.:

- States, **"I think we should give the money back.** It can come from your firm, partially reimbursed from Early Ludwig [sic] or taken from any cut they get from the verdict."

**SECTION 4:**

3/13/06 E-Mail from Andreas to Skubic (and possibly Jimmink) at 9:34 a.m.:

- Refers to ELS forms as **"'fictional' claims"**

3/12/06 E-Mail from Andreas to Skubic (and possibly Jimmink) at 3:27 p.m.:

- States "Clients filled out info form(s) sent to them by ELS and then ELS took that info and prepared and submitted some **horribly misleading** forms. There is no way what our client sent them matches what they put in these forms."
- Asks, "Can we get a copy of their [ELS'] file regarding BK submissions asap?"

## SECTION 5:

3/13/06 E-Mail from Andreas to Carter at 1:44 p.m.:

- Attaches ELS questionnaire and states, **"As you can see ELS took great liberties with this info in filing BK forms.** We can get Jack to authenticate this thing and use it as a backdrop to the BK forms. **Blame ELS for bullshitting the trusts."**
- States, **"Cannot hold [the Kananians] to false information that ELS employees put down."**

## SECTION 7:

3/14/06 E-Mail from Andreas to Skubic (and possibly Poole/Jimmink) at 1:51 p.m.:

- Referring to the ELS questionnaire and stating, "This is good stuff. **Shows ELS played fast and loose."**

## SECTION 8:

3/22/06 E Mail from Andreas to Brayton at 9:52 a.m.:

- States, "I advised at that time that the **ELS claim forms are rife with outright fabrications** regarding the decedent Harry Kananian's exposure to asbestos. The JM form we submitted is not as bad, but also inaccurate, describing Harry Kananian as a laborer and a shipyard worker during certain periods of WWII, when in reality he was a US Army rifleman."
- States, "ELS, by way of example, in their UNR form claims that Mr. Kananian was unloading Unibestos in Yokohama. They claim he was involved as a teenager at a Cleveland plant with 'tools of asbestos', [sic] when in reality he was involved in the manufacture and lathing of metal tools. **The Celotex claim form is completely fabricated** with exposures alleged to occur to insulation products at some of his places of employment after the war where he worked as a payroll accountant and clerk. It goes on and on."
- States, "I obtained a copy of the ELS questionnaire . . . . It was prepared in Jack's handwriting in February of 2000. It is factually accurate and in accord with all of the sworn testimony in this case. **It does not describe his father's past history in any way, shape or form as they set forth in most of the claim forms ELS ultimately submitted.** It certainly has no product ID."
- States, "I was willing to deal with an accept the JM and BETH forms we prepared at trial. Again, I never claimed that the ELS forms were 'false' or 'fraudulent', [sic] only inaccurate in certain respects."
- States, **"Jack's options at this point, if we take Lorillard's threats seriously, would be to drop the suit, or go forward, with the option of taking the Fifth with regard to the claim form information or testifying as he so chooses, understanding that this could come back to haunt him."**

- States, "**There is also the potential conflict between our firm and Jack if we all eventually end up embroiled in some sort of federal investigation and/or prosecution involving bankruptcy fraud.**"
- Butch LeRoy, Dave Donadio, and Gil Purcell were all copied on this e-mail.

## SECTION 9:

3/21/06 E-Mail from Nicole Salato (ELS) to Ryan Poole at 9:35 a.m.

- Indicating that ELS got a call from the Celotex Trust indicating that Lorillard had served the trust with a subpoena for Harry Kananian's claim and asking BP how it wished to proceed.

3/21/06 E-Mail from Carter to Andreas at 2:26 p.m.

- In response to this query, stating, "I would not file a motion to quash. I would respond to them via phone requesting that they resist, pursuant to the trust procedures that the forms are confidential."

3/21/06 E-Mail from Andreas to Skubic at 2:59 p.m.

- Forwarding Carter's e-mail from 2:26 p.m. and asking Ms. Skubic to "handle this."

## SECTION 10:

3/23/06 E-Mail from Carter to Andreas and Purcell at 4:01 a.m.

- States, "I have suggested to Chris and Mr. Kananian that Mr. Kananian instruct Early Ludwig [sic] to immediately file amended claim forms with correct information with the bankruptcy courts."
- States, "I don't know what your firm's deal is with Early Ludwig [sic] on fee sharing for the proceeds from this case, should we succeed. If Early Ludwig [sic] is entitled to any attorneys' fees from the verdict, a failure to follow the directive of the client would also jeopardize their right to any future fees."

3/22/06 E-Mail from Purcell to Andreas at 7:28 p.m.

- States, "I heard Al spoke with Jim Early."

## Section 11:

3/23/06 E-Mail from Brayton to Andreas at 5:27 p.m.

- States, "There is a limit to how far we can push Jim. He is taking it seriously, and working from the deposition and information we gave him."

3/23/06 E-Mail from Andreas to Brayton at 5:20 p.m.

- Referring to the amended ELS forms and stating, "I hope you are getting it before anything is sent to one of these trusts. We need to review these for accuracy."

3/23/06 E-Mail from Early to Brayton at 8:45 a.m.

- States, "Al, you can tell them that today we started the process of filing amended claims forms with every trust we submitted claims forms to. The claims forms will only be based on the deposition testimony taken in this case which your office email [sic] to me yesterday. I do not need a directive from Mr. Kananian to do this."

**SECTION 12:**

3/23/06 E-Mail from Poole to Brayton, et al. at 9:53 a.m.

- States, "Luckily we also now know that that ship was built at FESHI, where we have Mr. Cerka on record as having distributed MANVLL products to workers working on the ships at the shipyard."

3/22/06 E-Mail from Andreas to Poole, et al. at 8:57 p.m.

- Shows that Andreas received the draft amended Johns Manville claim form that Ryan Poole e-mailed him on March 22, 2006 and responded to that e-mail that same night.

3/22/06 E-Mail from Brayton to Poole, et al. at 7:22 p.m.

- Shows that Brayton approved amended JM claim form on the night of March 22.

3/22/06 E-Mail from Poole to Brayton, et al. at 7:19 p.m.

- Attaches the draft amended Johns Manville claim form.

3/22/06 E-Mail from Skubic to Poole, et al. at 4:10 p.m.

- States, "Our best shot is to use the Cohen reentrainment declaration but there is no guarantee it will work. I want to confirm that you want to proceed w/ the amended claim or consider withdrawing."

3/22/06 E-Mail from Brayton to Skubic, et al. at 12:51 p.m.

- States, "I want to do an amended claim form for JM and BETHST that is painstakingly accurate, send it to the Trusts, and tell them that if it changes their analysis or award we will remit any excess payment."
- Also, "Jim Early is going to do the same thing."

3/22/06 E-Mail from Skubic to Brayton, et al. at 12:45 p.m.

- States, "**All BK staff have been extensively briefed on drafting job descriptions since the defendants began obtaining these claim forms last year. No one is making descriptions up and the 'generic' language that was incorporated into claim forms in the past is no longer used.**"

3/22/06 E-Mail from Brayton to Skubic, et al. at 11:37 a.m.

- States, "Please let me know, if you can, how the inaccurate information got into the claim forms that we prepared, and where it came from."
- States, "Immediately brief all personnel preparing claim forms or deficiency responses that they are not to 'make up' information to make a claim qualify. . . . I know it was probably someone just trying to help . . ."

3/22/06 E-Mail from Andreas to Brayton at 9:52 a.m.

- States, "I advised at that time that **the ELS claim forms are rife with outright fabrications** regarding the decedent Harry Kananian's exposure to asbestos. The JM form we submitted is not as bad, but also inaccurate, describing Mr. Kananian as a laborer and shipyard worker during certain periods of WWII, when in reality he was a US Army rifleman."
- States, "In mid-1946, Mr. Kananian was in Japan during the occupation and was statione [sic] for a few months at the Yokohama port. He supervised Japanese dock workers unloading vessels, more in a clerical way than hands on, rarely boarding a vessel."
- States, "I tended to agree with GLP [Gil Purcell] that there was no guarantee the judge would do what he said and even if he did it created huge error to keep those claim forms out and deprive Lorillard of this evidence."

## Section 14:

3/24/06 E-Mail from Poole to MacAlpine (ELS) at 1:30 p.m.

- Apparently attaches a document, possibly titled "White, James Dec."
- Asks whether ELS is amending claim forms in the Kananian case.

3/24/06 E-Mail from MacAlpine (ELS) to Poole at 11:03 a.m. (presumably EST)

- Indicates that the ELS bankruptcy department is currently working on amending claim forms in the Kananian case.

3/24/06 E-Mail from Poole to Andreas, Skubic at 11:32 a.m.

- Forwarding "FYI" regarding the status of the ELS amended claim forms in the Kananian case.

**Section 18:**

3/24/06 E-Mail from Jimmink to Early, MacAlpine (ELS) at 6:43 p.m.

- States, "Today, the attorneys advised me that your office is preparing revised bankruptcy claim forms and you will be forwarding them to us in pdf format next week."

3/27/06 E-Mail from MacAlpine (ELS) to Jimmink at 6:25 a.m.

- Indicates that ELS was working on the amended claim forms and will forward them to BP as soon as they are finished.

**Section 19(A):**

3/27/06 E-Mail from Poole to MacAlpine (ELS) at 12:02 p.m.

- States, "Maya, per Chris Andreas, the attorney trying Mr. Kananian's case in Ohio, we would like to see the amended claim forms before you sent them to the trust(s). Is this possible? I guess he is already getting some guff from defense counsel over the amended JM claim form that we filed last week, which I have attached hereto."

3/27/06 E-Mail from MacAlpine (ELS) to Poole at 12:30 p.m.

- Attaches all of the draft amended ELS claim forms.
- States, "We'll submit them once you review them and give us the go ahead."

3/27/06 E-Mail from Poole to Andreas at 12:39 p.m.

- Forwards MacAlpine e-mail with draft amended ELS claim forms to Andreas.

**Section 19(D):**

3/31/06 E-Mail from Skubic to Andreas at 2:09 p.m.

- States, "Clara Vipond prepared the JM claim and ARB [Alan Brayton] signed it. JRP [Ryan Poole] prepared the amended claim form and I signed it."

3/31/06 E-Mail from Poole to Skubic at 12:57 p.m.

- States, "Clara Vipond filed the claim. I can only speculate that she used the documents attached to the packet I've included."

**Section 19(F):**

4/3/06 E-Mail from Jimmink to Andreas at 12:21 p.m.

- Asks whether ELS was "given the go ahead to submit" the amended claim forms.

4/3/06 E-Mail from Andreas to Jimmink, Poole at 12:26 p.m.

- States, "Yes.... Both Bruce and I communicated our suggestions to Jim Early on Friday and he was going to send them out."

## Section 20:

3/29/06 E-Mail from Andreas to Skubic at 3:54 p.m.

- States, "I think we need to make it clear that we were simply correcting some clerical errors. There is going to be some discovery done in Kananian at this point that may involve the JM trust. I don't want it to look like we simply sent this thing in and never clarified why we were doing it. May look bad to my judge in OH."

3/29/06 E-Mail from Skubic to Andreas at 5:32 p.m.

- States, "We can send a quick note to Ms. Jones and let her know we were correcting some clerical errors contained in the original claim, but she will inevitably ask what we want them to do with it. **I need a response without looking like we are trying to play games here.**"

3/29/06 E-Mail from Andreas to Brayton at 8:29 p.m.

- States, "Talked w/ Al briefly on this issue. The tentative proposal is to send a letter to the Trust stating: We identified a clerical error in the claim form when reviewing the claim in response to subpoena. . . . Depending on how you think your OH judge would react to this, let me know if you want us to send a similarly drafted letter or discuss further."

## Section 21:

3/30/06 E-Mail from Andreas to Skubic at 5:12 p.m.

- States, "Lorillard is going to get some limited discovery on this issue. They are going to want to depose whoever filled it out to try to show that the box checking was intentional [sic] (i.e. to ramp up the payment from the trust) vs. inadvertent mistake. If we cannot track who did it, then they will want to depose the head of our BK department. That is you, right? They will want your depo anyway given that you prepared the BETH form and were responsible for the amended form being sent."
- States, "**Finally, do we have any former BK department people that you would describe as 'disgruntled'?** [sic] Lorillard is going to be looking for any such person in an effort to paint our procedures as 'fraudulent' or otherwise suspect."

## Section 26:

4/5/06 E-Mail from Andreas to Early (ELS) at 10:31 a.m.

- **Requests that Mr. Early remit payment for half of Jack Kananian's bill for legal services provided by criminal defense attorney, Timothy J. Potts.**
- States, "We should coordinate our response to the discovery that is forthcoming from Lorillard. I expect to start seeing it in the next several weeks. Depositions of folks from both our offices to follow."

# Content of Early Ludwick Documents

### Harry Kananian's Asbestos Exposure

2/25/00 E-Mail from Ethan Early to Kim Curnane, James Early at 12:48 p.m.

- This e-mail contains a detailed account of a meeting with the Kananians that took place on February 24, 2000.
- It provides a detailed account of Harry Kananian's asbestos exposure, including military, occupational, and home exposure.
- Does not reference Kent cigarettes.

### Settlements

3/3/06 E-Mail from Jimmink to Kim Curnane, Theresa Oberempt at 1:45 p.m.

- Asks for total amount Kananians have received in settlement from various trusts.
- Identifies two new trusts, Babcock & Wilcox and Raytech. Plaintiffs have not produced any claim forms or other information about these trusts.

3/3/06 E-Mail from MacAlpine to Jimmink at 5:58 p.m.

- Provides settlement amounts for the trusts.

### Early Ludwick's Files on Kananian

3/13/06 E-Mail from Jimmink to MacAlpine at 3:05 p.m.

- Requests "all your files, but specifically, we are looking for the information sheets sent by your firm to the clients to fill out."

3/13/06 E-Mail from MacAlpine to Jimmink at 4:00 p.m.

- States, "Also, for the future, I'm the main contact for Brayton cases at our firm now, so anytime you need information you can just contact me directly."

3/13/06 E-Mail from MacAlpine to Eudry at 4:34 p.m.

- States, "I've already faxed the client questionnaire, but in terms of the entire file, we have some original pictures, attorney's notes and of course correspondence, etc. Is it ok to really make a copy of the entire file to send to them, minus the bankruptcy claims since they already have them."

### Lorillard's Efforts to Obtain Claim Forms from the Trusts

3/20/06 E-Mail from Salato to Poole at 8:23 a.m.

- States, "I am not sure what the procedure is, but I got a phone call from the Celotex Trust this morning regarding the above named case. I know that your firm is handling the trial [indecipherable] of this so I am hoping you will help. The defense counsel has served a subpoena for Mr. Kananian's claim and wanted to know how we'd like to proceed. Please let me know at your earliest convenience-Thanks!"

3/20/06 E-Mail from Poole to Skubic, et al. at 9:35 a.m.

- States, "Can one of you please let her know what to do? Thanks."

3/21/06 E-Mail from Skubic to Andreas, et al. at 10:49 a.m.

- States, "Chris needs to know about this and tell us/Early how to proceed. I thought they already did this and the claim was already produced but maybe not. CEA- please advise and we can get back to Nicole at Early."

3/21/06 E-Mail from Andreas to Skubic, Carter, et al. at 4:59 p.m.

- States, "Bruce- do you see any reason to file a motion to quash? I guess it would have to be filed out here. It would only delay things and Judge Hanna would probably not be too happy. **We could urge Celotex to resist I guess.**"

3/21/06 E-Mail from Carter to Andreas, et al. at 2:26 p.m.

- States, "I would not file a motion to quash. **I would respond to them via phone requesting that they resist,** pursuant to the trust procedures that the forms are confidential."

3/21/06 E-Mail from Andreas to Skubic at 2:59 p.m.

- States, "Christina- can you handle this?"

3/22/06 E-Mail from Skubic to Salato, et al. at 1:21 p.m.

- States, "I spoke with Amy Hirsch at the Celotex Trust and requested that they send their usual form letter citing the confidentiality section of the Claims Resolution Procedures."

3/22/06 E-Mail from Salato to MacAlpine at 1:26 p.m. (forwarding 1:21 p.m. e-mail from Skubic referenced above)

- States, "OK-They are working on it. Any advice I get from her would help us to quash future requests!"

3/22/06 E-Mail from Andreas to Skubic, et al. at 1:27 p.m.

- States, **"I would love if Celotex gave these assholes a hard time."**

**Redacted Documents**

3/22/06 E-Mail from Brayton to Early at 2:10 p.m.

- This is a 3-page e-mail, and all of it has been redacted.
- Attaches Lorillard's Response to Motion to File Document Under Seal and a document called "Lorillard Bankruptcy Claims Form Status.pdf"

3/22/06 E-Mail from Ludwick to Early, et al. at 2:57 p.m.

- This is a 3-page e-mail, and nearly all of it has been redacted.

3/23/06 E-Mail from Brayton to Early at 10:24 a.m.

- This is a 3-page e-mail, and all of it has been redacted.

3/23/06 E-Mail from Early to Brayton at 11:46 a.m.

- This appears to be a response to the e-mail discussed above from Brayton to Early at 10:24 a.m.  It has been redacted in its entirety.

3/23/06 E-Mail from Brayton to Early at 12:03 p.m.

- This appears to be a response to the e-mail discussed above from Early to Brayton at 11:46 a.m.  It has been redacted in its entirety.
- This string of e-mails shows that Brayton was in discussions with Early about the claim forms by March 22 at the latest.

3/23/06 E-Mail from Brayton to Early at 7:23 a.m.

- This is a one-line e-mail that has been redacted in its entirety.

3/27/06 E-Mail from Andreas to Early, et al. at 5:05 p.m.

- This one-page e-mail has been redacted in its entirety.

3/31/06 E-Mail from Carter to Early, Andreas, et al. at 1:57 p.m.

- This e-mail has been redacted in its entirety.

3/31/06 E-Mail from Andreas to Carter, Early, et al. at 3:13 p.m.

- This 3-page e-mail has been redacted almost in its entirety.

3/31/06 E-Mail from Early to Carter et al. at 4:55 p.m.

- This is a response to the 3/31/06 e-mail from Carter to Early, Andreas, et al. at 1:57 p.m. (discussed above), and it has been redacted in its entirety.

3/31/06 E-Mail from Andreas to Carter, Early, et al. at 5:43 p.m.

- This 3-page e-mail has been redacted in its entirety.

**Coordination Between Early Ludwick & Brayton Purcell**

3/22/06 E-Mail from Brayton to Skubic, Early at 3:53 p.m.

- States, "Please send Jim Early the deposition transcript, and anything else we have that would assist him in doing amended claim forms. Thanks."

3/22/06 E-Mail from Poole to Early, et al. at 4:07 p.m.

- States, "Jim, attached are documents that should help. Let me know if you need anything else."

3/24/06 E-Mail from Jimmink to MacAlpine at 12:16 p.m.

- States, "Here are the depositions of Harry Kananian," and attaches 4 documents. These appear to be the same documents attached to the 3/22/06 e-mail from Poole to Early at 4:07 p.m. (discussed above).

3/24/06 E-Mail from Jimmink to Early, et al. at 7:43 p.m.

- States, "As you may know, I am the paralegal working with attorneys Chris Andreas and Bruce Carter on the Harry Kananian trial in Ohio. Today, the attorneys advised me that your office if preparing revised bankruptcy claim forms and you will be forwarding them to us in pdf format next week."

3/27/06 E-Mail from Early to Jimmink, et al. at 11:55 a.m.

- In response to the 3/24/06 E-Mail from Jimmink to Early at 7:43 p.m. (discussed above), states, "By copy of this email to the people in my office handling this matter I am asking them [to] be sure to have these done and emailed to you by Tuesday morning. Hopefully they will [be] done today and I will review them this afternoon."

3/27/06 E-Mail from MacAlpine to Poole, et al. at 4:30 p.m.

- States, "Attached are the revised (& not yet submitted) CX, EP, 48, AM, UNR & HKP claim forms for the Harry Kananian matter. We'll submit them once you review them and give us the go ahead. Thanks."

3/28/06 E-Mail from MacAlpine to Salato at 10:21 a.m.

- Including text of 3/27/06 E-Mail from MacAlpine to Poole at 4:30 p.m. (discussed above), and stating, "He didn't get back to me about this yesterday. I guess we'll wait to submit them until we get a response."

3/31/06 E-Mail from Early to Andreas, et al. at 5:04 p.m.

- In response to redacted e-mails from Carter and Andreas, states, "We will change accordingly."

3/31/06 E-Mail from Early to Mudry, et al. at 4:06 p.m.

- States, "Let's make those changes as well." .

3/31/06 E-Mail from Early to Mudry, Rinaldi at 4:03 p.m.

- States, "Guys, can we get these worked on quickly incorporating Bruce Carter's helpful comments and suggestions?" "

4/3/06 E-Mail from MacAlpine to Jimmink at 10:21 a.m.

- Asks, "Could someone send me Jack Kananian's social security number for the amended claim forms? We have Ann's but since Jack is the administrator, we need his."

4/3/06 E-Mail from MacAlpine to Mudry at 10:53 a.m.

- E-mail string includes Early's request to incorporate Carter's comments and states, "[I] have made all the requested edits. I've emailed Brayton's office because [we] don't have Jack's SS#. We need it since he is the administrator for the estate."

4/3/06 E-Mail from Mudry to MacAlpine, et al. at 11:07 a.m.

- States, "Can you leave them with me to review with JFE [James Early] this afternoon. Please mark the claim with post it ms [sic] where you added the suggested modifications from each email. Please print our [sic] each email as well so that we can easily review what was asked to be added with what you actually did."

3/31/06 E-Mail from Andreas to Carter, Early, et al. at 5:43 p.m.

- States, "Great….. [sic] and I agree that you should send a letter to the trusts with the amended forms. This is what we put in ours to JM….. [sic] We identified a clerical error in the claim form when reviewing the claim in response to subpoena. The amended claim form is being submitted so the Trust has the correct data with regard to this claimant. Please advise if this in any way affects the prior disposition of the claim."

## Early Ludwick's Amendment of Forms

3/24/06 E-Mail from Early to Salato at 12:24 p.m.

- States, "Nicole, as you know this is a priority matter. However we must be precise in the product I.d. [sic] Data we submit."
- States, "As I will have to review all the submissions, you will have to keep a list of page and line designations from the depo to which I can refer to verify every pid [product identification] claim we make. Please work diligently on this stuff so we can correct it quickly and accurately. Please review it with Eric [Mudry] before I see it."

3/24/06 E-Mail from Salato to Early, et al. at 2:22 p.m.

- This is a response to the above referenced e-mail from Early.
- States, "I absolutely will do my best-Jack's depo was not very informative, but Maya got 4 depos [of] Harry's that I will read over the weekend and I will have everything to Eric 1st thing Monday morning."

3/27/06 E-Mail from Salato to MacAlpine, Mudry, et al. at 9:05 a.m.

- States, "All depos were reviewed this weekend and forms will be to Eric hopefully within the next hour. Eric-one issue. Mr. Kannanian's [sic] depos were very in depth as far as his jobsites and duties and exposure to asbestos, however, he could not identify any products- I will give you all the revised forms (Except Manville, we did not do that one), but the products will be blank, unless you tell me otherwise when you review them."

3/27/06 E-Mail from Salato to MacAlpine at 9:09 a.m.

- States, "I'm freaking out about all this-Jim is scrutinizing everything at the moment!!!!!!!!"

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

Jack Kananian, et al.,         2006 AUG -7 P 1: 42    Case No. 442750

        Plaintiffs,    GERALD E FUERST
                        CLERK OF COURTS    Judge Harry Hanna
                        CUYAHOGA COUNTY

vs.                               **Lorillard Tobacco Company's
Motion for In Camera Review of
Lorillard Tobacco Company,          Documents Produced by Early,
Ludwick & Sweeney**

        Defendant.

    Defendant Lorillard Tobacco Company ("Lorillard") moves this Court to conduct

an in camera review of the documents produced by Early, Ludwick & Sweeney ("Early

Ludwick") to determine whether Early Ludwick's redactions are proper.   A brief in

support of this motion is attached.

                        Respectfully submitted,

                        *Anthony R. Petruzzi*

                        Patrick M. McLaughlin (0008190)
                        Anthony R. Petruzzi   (0069102)
                        McLAUGHLIN & McCAFFREY, LLP
                        1111 Superior Avenue, Suite 1350
                        Cleveland, Ohio  44114-2500
                        (216) 623-0900 (Telephone)
                        (216) 623-0935 (Facsimile)

                          -and-

                        Terrence J. Sexton
                        SHOOK, HARDY & BACON, LLP
                        2555 Grand Boulevard
                        Kansas City, Missouri  64108
                        (816) 474-6550 (Telephone)
                        (816) 421-2708 (Facsimile)

                        Attorneys for Defendant
                        Lorillard Tobacco Company

## BRIEF

On August 2, 2006, Early Ludwick produced a number of documents pursuant to Lorillard's subpoenas. Early Ludwick's production consisted of numerous e-mails, many of which were heavily redacted. After reviewing Early Ludwick's production, Lorillard has learned that at least some of these redactions were improper. In response to Lorillard's meet and confer efforts, Early Ludwick's counsel, Robert Sweeney, agreed to produce complete copies of these documents to the Court for *in camera* review. Lorillard expects the complete documents to arrive at the Court sometime in the very near future. Once the documents arrive, Lorillard requests that the Court conduct an *in camera* review to determine whether Lorillard is entitled to unredacted copies of Early Ludwick's documents.

## Background

By subpoenas issued to the Early Ludwick attorneys, James Early and Chris Meisenkothen (the "Subpoenas"), Lorillard commanded the witnesses to produce, *inter alia*, certain documents of relevance to this case. The Subpoenas commanded the production of documents "relating to Harry Kananian's . . . alleged exposure to asbestos." These included, but were not limited to, documents "used to complete claim forms filed with asbestos company bankruptcy trusts on behalf of Harry Kananian or the current plaintiffs"; documents "relating to Harry Kananian's alleged asbestos exposures"; documents "regarding the decision to file claim forms or amended claim forms with asbestos company bankruptcy trusts on behalf of Harry Kananian or the current Plaintiffs"; documents "containing information regarding the identities of individuals who have prepared or filed claim forms on behalf of Harry Kananian or the

2

current Plaintiffs"; and documents "referring in any way to Harry Kananian's alleged asbestos exposures at civilian or military work sites." In short, the Subpoenas requested documents substantially similar to the documents Lorillard requested, and ultimately received, from Brayton Purcell.

Early Ludwick and Brayton Purcell each produced sets of e-mails purported to be responsive to Lorillard's Subpoenas and document requests. While the Court made several redactions to the Brayton Purcell documents before producing them to Lorillard, the redactions in the e-mails produced by Early Ludwick were far more extensive than those in the e-mails produced by Brayton Purcell. A complete copy of the e-mails produced by Early Ludwick are attached collectively hereto as Exhibit A. A complete copy of the e-mails produced by Brayton Purcell are attached collectively hereto as Exhibit B.

It would appear that Early Ludwick claims an unidentified blanket privilege over the redacted e-mails, even though there is no applicable privilege protecting the firm's attorney-attorney communications regarding the issues addressed in the Subpoenas. Moreover, as discussed below, a comparison of the two sets of e-mails indicates that at least some of the text that was redacted by petitioners should not have been redacted. Finally, petitioners should not be permitted to unilaterally determine which e-mails or portions of e-mails they choose to redact. Indeed, as the Court has ruled, Lorillard is:

> . . . not required to accept representation that [plaintiffs' counsel] did not know anything, without being allowed to explore the circumstances leading up to March 23rd. So, in this instance, the work product privilege will not be – will be invaded, and these questions will be answered.

See Tr. of 6/29/06 Proceedings Before Judge Hanna at 7:10-16, Exhibit C.

3

During "meet and confer" discussions with Early Ludwick's counsel, Robert Sweeney, on August 4, 2006, Mr. Sweeney agreed to produce unredacted copies of the Early Ludwick's e-mails to Mr. Chester, the clients Ohio counsel, for transmittal promptly to this Court for *in camera* inspection. Once the Court receives the documents, Lorillard respectfully requests that the Court conduct an *in camera* review to determine whether Early Ludwick's redactions were proper.

### Discussion

The Ohio Supreme Court has held that an *in camera* review of documents claimed to be covered under the attorney-client privilege <u>shall</u> be conducted to determine whether such privilege applies. *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, syllabus at paragraph 2. The Ohio Eighth District Court of Appeals has extended this ruling to include assertions of the work product doctrine. *Jerome v. A-Best Products Co.* (2002), Cuyahoga App. Nos. 79139-79142, 2002 Ohio 1824, citing *Stelma v. Juguilon* (1992), Cuyahoga App. No. 73 Ohio App. 3d 377. In fact, in *Jerome*, the Eighth District specifically stated that *in camera* review of privileged documents is not discretionary. *Jerome*, at *P31.

It is readily apparent that Early Ludwick improperly redacted e-mails that should not have been redacted. For example, the unredacted e-mails produced by Brayton Purcell at Exhibit B includes an exchange between James Early and Al Brayton of the Brayton Purcell law firm regarding Early Ludwick's "process of filing amended claim forms" — a subject that is squarely within the scope of the Subpoenas. Exhibit <u>D</u>. The exchange includes an e-mail sent by Alan Brayton at 7:11 a.m. on March 23, 2006, and a reply by James Early at 8:45 a.m. the same day. *Id.* This Court ordered these

4

documents from Brayton Purcell's files to be produced without redaction. Nevertheless, Early Ludwick redacted the entire exchange from the e-mail chain they produced to Lorillard. See Exhibit E. Based upon this Court's July 27, 2006 Order and the Court's review and ultimate production of the aforementioned e-mail chain in its entirety, Early Ludwick's redaction cannot be proper. Another example of improper redactions is found by comparing Exhibit F (Brayton Purcell e-mails ordered produced without redaction) with Exhibit G (redacted e-mails produced by petitioners).

The Court's July 27, 2006 Order makes it clear that Lorillard is entitled to unredacted e-mails responsive to the Subpoenas. A comparison of Early Ludwick's production with that of Brayton Purcell raises a reasonable, good-faith belief that an *in camera* review will reveal evidence to establish that Early Ludwick's redactions are improper.

**CONCLUSION**

For the foregoing reasons, Lorillard respectfully requests that the Court conduct an *in camera* review of the Early Ludwick documents to determine whether Early Ludwick's redactions are improper. In the event that the Court finds the redactions to any of the documents to be improper, Lorillard respectfully requests that the Court produce unredacted copies of the applicable documents to Lorillard.

Respectfully submitted,

Patrick M. McLaughlin (0008190)
Anthony R. Petruzzi    (0069102)
McLAUGHLIN & McCAFFREY, LLP
1111 Superior Avenue, Suite 1350
Cleveland, Ohio 44114-2500
(216) 623-0900 (Telephone)
(216) 623-0935 (Facsimile)

5

-and-

Terrence J. Sexton
SHOOK, HARDY & BACON, LLP
2555 Grand Boulevard
Kansas City, Missouri 64108
(816) 474-6550 (Telephone)
(816) 421-2708 (Facsimile)

Attorneys for Defendant
Lorillard Tobacco Company

## Certificate of Service

I hereby certify that a copy of the foregoing Motion for In Camera Review of Documents Produced by Early, Ludwick & Sweeney was sent by e-mail, facsimile and Federal Express delivery to Bruce Carter, 5458 Yosemite Drive, Fairfield, Ohio 45014; Christopher E. Andreas, Brayton Purcell, 222 Rush Landing Road, Novato, California 94948-6169; William J. Sweeney, Jr., Sweeney & Griffin, One Liberty Square, New Britain, Connecticut 06051; and John J. Chester, Jr., Chester, Willcox & Saxbe LLP, 65 East State Street, Suite 1000, Columbus, Ohio 43215 this 7th day of August, 2006.

Anthony R. Petruzzi

Page 1

THE STATE OF OHIO, )

                     )  SS:   HARRY HANNA, J.
COUNTY OF CUYAHOGA.)
                IN THE COURT OF COMMON PLEAS
                     CIVIL DIVISION

JACK KANANIAN, ET AL,        )
                             )
                Plaintiff,   )
                             )
       -v-                   )  Case No. 442750
                             )
LORILLARD TOBACCO COMPANY,   )
                             )
                Defendant.   )

                     - - - -

              EXCERPT OF PROCEEDINGS

                     - - - -

        Whereupon the following proceedings were had in
Courtroom No. 4-B, Lakeside Court House, Cleveland,
Ohio, before the Honorable Harry Hanna, Judge, on
Thursday, June 29th, 2006, by telephone conference.

                     - - - -

APPEARANCES:

     CHRISTOPHER ANDREAS, ESQ.
     BRUCE CARTER, ESQ.

          On behalf of the Plaintiff.

     PATRICK M. MC LAUGHLIN,ESQ.,
     WILLIAM BOGGS, ESQ.
     ANTHONY R. PETRUZZI, ESQ.

     DAVID THORNE, ESQ.

          On behalf of the Defendant.

Anita L. Moose, RPR
Official Court Reporter

EXHIBIT

C

1    that I may have had or may not have had, or others

2    had in my office, on the subject.

3        So, that was what we were objecting to,

4    responding to, because, I think, it is very

5    clearly work product protected, was the subject of

6    the in camera review, as well.

7        THE COURT:    I had previously ruled

8    that the defense has not shown the exceptional

9    need for invading the work product privilege.

10   However, they're not required to accept

11   representation that you did not know anything,

12   without being allowed to explore the circumstances

13   leading up to March 23rd.

14       So, in this instance, the work product

15   privilege will not be -- will be invaded, and

16   these questions will be answered.

17       MR. ANDREAS:    So it will be very clear,

18   it will be the questions that I refused to answer

19   on the record there?

20       THE COURT:    Correct.

21       MR. BOGGS:    This is Boggs again. I

22   think I would request not only those questions,

23   but if there should be a legitimate follow-up

24   question, I ought to be able to ask those,

25   obviously.

From:      Al Brayton
To:        Chris Andreas
Date:     Thu, Mar 23, 2006 5:27 PM
Subject:  RE: Re: Kennanian

There is a limit to how far we can push Jim. He is taking it seriously, and working from the deposition and information we gave him.

>>> Chris Andreas 3/23/2006 5:20:55 PM >>>
I hope you are getting it before anything is sent to one of these trusts. We need to review these for accuracy.

>>> "Al Brayton" <ABrayton@braytonlaw.com > 3/23/2006 9:03:12 AM >>>
Send everything to me and please copy Chris. He will get it to Bruce Carter who is our local counsel.

Dealing with the trusts will be a little awkward. We are going to prepare the amended claim on old forms and fax, or scan and email, to the trust, and leave it to them on how they want to handle it. At the same time, we are offering to remit any overpayment.

>>> "James F. Early ESQ." <jfe@elslaw.com > 3/23/2006 8:45 AM >>>
Al, you can tell them that today we started the process of filing amended claims forms with every trust we submitted claims forms to. The claims forms will only be based on the deposition testimony taken in the case which your office email to me yesterday. I do not need a directive from Mr. Kennanian to do this. One technical issue with which we must deal is that the trusts now operate electronically so we will not be able to electronically submit the amended claims forms as they will be rejected "on-line". We will have to contact each trust and ascertain the method in which they prefer the claims forms be submitted. To whom should we send a copy of the amended forms other than the trusts? (You, Bruce Carter, others?)

-----Original Message-----
From: Al Brayton [mailto:ABrayton@braytonlaw.com]
Sent: Thursday, March 23, 2006 10:24 AM
To: James F. Early ESQ.
Subject: Fwd: Re: Kennanian

Current status.

>>> Gil Purcell 3/23/2006 7:11 AM >>>
Thanks Bruce - well reasoned approach. Sounds sensible to me - and I think the right and prudent thing to do given all these circumstances. I can't see any other approach. Let me know if I can help.

>>> "Bruce Carter" < BruceCarterEsq@cincl.rr.com > 3/23 4:01 am >>>
Gil;

EXHIBIT
D

Additionally, we are bolstered by the opinion of Judge Ron Barliant who
was the judge in the 48 bankruptcy. His view is that the trust documents
are not judicial documents. A Trust is not a part of the bankruptcy
court. A Trust is established as part of the confirmation plan to end
the bankruptcy.
Generally individual claims submitted to a Trust are not reviewable by
the court. This is supported by every Trust claim handling procedure
plan I have reviewed. As an example, in Manville, if you disagree with
the denial of a claim you cannot appeal to the bankruptcy court you can
arbitrate in binding arbitration. If you lose that it is over.

Returning to the idea of giving the money back, I am unaware of any
trust procedure that allows the simple return of a check. I have
suggested to Chris and Mr. Kananian that Mr. Kananian instruct Early
Ludwig to immediately file amended claim forms with correct information
with the bankruptcy trusts. They would ask the trusts whether upon a
review of the amended claim forms would have any impact on the prior
decisions of the trust. If the trust's review requires the return of the
money, they would advise Early Ludwig how to accomplish that return.
Mr. Kananian would advise Early Ludwig that the failure to do this
seriously jeopardizes the trial of this case. That would alert Early
Ludwig to potential malpractice claims should a jury find against the
Kananians based upon the admission of the other exposure statements in
the claim forms. I don't know what your firm's deal is with Early Ludwig
on fee sharing for the proceeds from this case, should we succeed. If
Early Ludwig is entitled to any attorneys' fees from the verdict, a
failure to follow the directive of the client would also jeopardize
their right to any future fees.

That is my advice on how to proceed and the impact a review and return
should have on these claim forms.

Bruce

This email message is for the sole use of the intended recipient(s) and
may contain confidential and privileged information. Any unauthorized
review, use, disclosure or distribution is prohibited. Recipients are
requested not to disclose, share or forward this e-mail without
permission of the sender.
If you are not the intended recipient, please contact the sender by
reply email and destroy all copies of the original message.

Bruce Carter, Esq.
5458 Yosemite Drive
Fairfield, OH 45014
Phone (513) 829-7553
Fax (513) 829-4579
E-Mail: BruceCarterEsq@cincl.rr.com
Licensed in Ohio, West Virginia, Texas and Pennsylvania

-----Original Message-----
From: Chris Andreas [mailto:CAndreas@braytonlaw.com]
Sent: Wednesday, March 22, 2006 11:58 PM
To: Gil Purcell
Cc: BruceCarterEsq@cinci.rr.com
Subject: Re: Kannanian

Bruce- can you give your take to Gil?

>>> Gil Purcell 3/22/2006 7:28 PM >>>
Give me a buzz when you get a chance - I heard Al spoke with Jim Early.

I am having difficulty - focusing on your trial - in understanding how
impugning plaintiff's counsel is relevant to the case - and these
missives, which I understand were not verified by the plaintiff nor ever
seen by him even, reflect on his counsel, not himself. Maybe thats
where the judge is on why giving the "ill gotten gains" back would make
it clear that this is not relevant and excludable - and if thats the
case, that may be correct and bullet proof on appeal.

James F. Early ESQ.

From:           Al Brayton [ABrayton@braytonlaw.com]
Sent:           Thursday, March 23, 2006 10:24 AM
To:             James F. Early ESQ.
Subject:        Fwd: Re: Kannanian

Current status.



>>> "Bruce Carter" <BruceCarterEsq@cinci.rr.com> 3/23 4:01 am >>>





1

EXHIBIT

E



Bruce

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. Recipients are requested not to disclose, share or forward this e-mail without permission of the sender.
If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Bruce Carter, Esq.
5458 Yosemite Drive
Fairfield, OH 45014
Phone (513) 829-7553
Fax (513) 829-4579
E-Mail: BruceCarterEsq@cinci.rr.com
Licensed in Ohio, West Virginia, Texas and Pennsylvania

-----Original Message-----
From: Chris Andreas [mailto:CAndreas@braytonlaw.com]
Sent: Wednesday, March 22, 2006 11:58 PM
To: Gil Purcell
Cc: BruceCarterEsq@cinci.rr.com
Subject: Re: Kannanian

Bruce- can you give your take to Gil?

>>> Gil Purcell 3/22/2006 7:28 PM >>>

2



Bruce

This email message is for the sole use of the intended recipient(s) and may contain
confidential and privileged information. Any unauthorized review, use, disclosure or
distribution is prohibited. Recipients are requested not to disclose, share or forward
this e-mail without permission of the sender.
If you are not the intended recipient, please contact the sender by reply email and
destroy all copies of the original message.

Bruce Carter, Esq.
458 Yosemite Drive
Fairfield, OH 45014
Phone (513) 829-7553
Fax (513) 829-4579
E-Mail: BruceCarterEsq@cinci.rr.com
Licensed in Ohio, West Virginia, Texas and Pennsylvania


-----Original Message-----
From: Chris Andreas [mailto:CAndreas@braytonlaw.com]
Sent: Wednesday, March 22, 2006 11:58 PM
To: Gil Purcell
Cc: BruceCarterEsq@cinci.rr.com
Subject: Re: Kannanian

Bruce- can you give your take to Gil?

>>> Gil Purcell 3/22/2006 7:28 PM >>>



James F. Early ESQ.

| | |
|---|---|
| **From:** | Chris Andreas [CAndreas@braytonlaw.com] |
| **Sent:** | Monday, March 27, 2006 5:05 PM |
| **To:** | James F. Early ESQ. |
| **Cc:** | Al Brayton; Gil Purcell; BruceCarterEsq@cinci.rr.com |
| **Subject:** | Conference call re Kananian |



Thanks,

Chris Andreas

EXHIBIT

G

1

Brayton Purcell E-Mails
Exhibit B in Motion

# Section One

| | |
|---|---|
| From: | Christina Skubic |
| To: | Chris Andreas |
| Date: | Mon, Feb 27, 2006 10:03 AM |
| Subject: | Fwd: RE: Lorillard answer |

we don't have an order, we have the copy of their Claim Resolution Procedures that were approved by
the court that says "All materials, records and information submitted by claimants, including that provided
with regard to medial audits under Section 7.3, are confidential, submitted sorely for settlement
purposes." It's attached at p. 19.

>>> Chris Andreas 2/25/2006 1:49 PM >>>
Did you ever get a copy of the order from the Celotex judge saying that the claim forms are not to be
used?

>>> "Bruce Carter" <BruceCarterEsq@cinci.rr.com> 2/25/2006 1:05:09 PM >>>
You need to send Harry a copy of the Celotex order. We need to research the
adoptive admissions as it applies to attorneys and clients to put on record
an opposition to their motion to get the claim forms into evidence.

Bruce

This email message is for the sole use of the intended recipient(s) and may
contain confidential and privileged information. Any unauthorized review,
use, disclosure or distribution is prohibited. Recipients are requested not
to disclose, share or forward this e-mail without permission of the sender.
If you are not the intended recipient, please contact the sender by reply
email and destroy all copies of the original message.

Bruce Carter, Esq.
5458 Yosemite Drive
Fairfield, OH 45014
Phone (513) 829-7553
Fax (513) 829-4579
E-Mail: BruceCarterEsq@cinci.rr.com
Licensed in Ohio, West Virginia, Texas and Pennsylvania

-----Original Message-----
From: Chris Andreas [mailto:CAndreas@braytonlaw.com]
Sent: Saturday, February 25, 2006 2:17 PM
To: Bruce Carter
Cc: Felicia Jimmink
Subject: Re: Lorillard answer

I'm sure we do.

FMJ- Do we have Lorillard's answer in the OH case? Also their answers in
both the PI and WD cases in CA?

>>> "Bruce Carter" <BruceCarterEsq@cinci.rr.com> 2/24/2006 5:31:21 AM

>>>
Does your firm have Lorillard's answer in this case?  Some times I use it to
show some of the absurd positions they take.

In thinking over the claim form vs.. paid claim issue, filing a place holder
claim form is like Lorillard asserting lack of personal jurisdiction,
doctrine of laches and product misuse as affirmative defenses.

Bruce


This email message is for the sole use of the intended recipient(s) and may
contain confidential and privileged information. Any unauthorized review,
use, disclosure or distribution is prohibited. Recipients are requested not
to disclose, share or forward this e mail without permission of the sender.
If you are not the intended recipient, please contact the sender by reply
email and destroy all copies of the original message.

Bruce Carter, Esq.
5458 Yosemite Drive
Fairfield, OH 45014
Phone (513) 829-7553
Fax (513) 829-4579
E-Mail: BruceCarterEsq@cinci.rr.com
Licensed in Ohio, West Virginia, Texas and Pennsylvania

# Section Two

From:        "Chris Andreas" <CAndreas@braytonlaw com>
To:          <jfe@elslaw.com>
Date:        Mon, Mar 27, 2006 2:06 PM
Subject:     Conference call re Kananian

Jim,

I thought it would be a good idea to get in touch with you on this case
after the latest chapter today.

After we served the defense with a copy of our amended JM claim form on
Friday, they came in today crying bloody murder.  Tried to get me
disqualified from the case, charged with fraud on the court and/or to
get the case dismissed

Bruce and I were able to dodge that bullet, however, the judge is
concerned enough about the evolving landscape of bankruptcy claim forms
in this case, understanding that your firm will be filing some amended
forms as well, that he is not comfortable starting the trial at this
point.  He is continuing it likely to June or July.

I am getting a copy of the transcript from this afternoon in which the
judge indicated about 10 areas or so that he wants to get clarified
regarding the bankruptcy trust issue.  This will involve some limited
discovery with our firm and yours regarding the preparation of the
original forms and whether as a matter of law these forms were submitted
to a "court" or not. Our research and discussions with Ron Barliant
(former bankruptcy judge on 48 Insulations) indicates that the claim
forms are not submitted to a "court" in the traditional sense and that
the trusts are not considered to be a part of the bankruptcy court
itself.

We have a further conference tomorrow morning in court to set a new
trial date and refine the discovery plan to address the issues outlined
by Judge Hanna.

Please let me know if you can be reached tonight and, if so, a time and
place you can be reached   I can try to conference in Al and Gil as
well

Thanks,

Chris Andreas

CC:          "Al Brayton" <ABrayton@braytonlaw com>, "Gil Purcell" <GPurcell@braytonlaw com>,
<BruceCarterEsq@cinci rr com>



EXHIBIT

F



From:        Chris Andreas
To:          Group Partners
Date:        Fri, Mar 10, 2006  7:16 PM
Subject:     Bankruptcy Claim Forms- Kananian  BIG ISSUE

I just argued more motions today in Kananian with Judge Hanna.

Perhaps the biggest bone of contention in this case is the admissibility of unverified BK forms submitted for Harry (Deceased) or the WD heirs.  We already argued this issue when I was in Cleveland and more argument occurred today.

Judge Hanna is going to allow the 6 or so claim forms (attached) into evidence, although they will be redacted to remove settlement info. Lorillard and its experts are using these to show causative exposure from sources other than Kent cigarettes and to make plaintiffs' counsel look slimy

Almost all of the BK forms were prepared by Early Ludwick & Sweeney.  These are the most troublesome.

1. The 48 Insulations BK form (prepared by ELS) indicates under job code and duration of exposure that Harry Kananian (deceased) was exposed in a shipyard for 24 months to block insulation.  Harry Kananian was a rifleman in the US Army, who shipped out on a troop transport ship from HPNSY to the Phillipines and after the war, shipped back on another troop transport ship from Japan.  That is the extent of his shipboard exposure.

2.  The Eagle Picher BK form (also prepared by ELS) makes things worse describing Mr. Kananian as a shipyard welder or worker in SF, Phillipines and Japan during WWII.  The description of his work as a payroll clerk at various plants overstates any possible exposure he might have had to insulation.

3. The UNR BK form (also prepared by ELS) is the absolute worst of the bunch!!! They describe Harry Kananian as unloading Unarco Unibestos off ships in Japan.  Mr. Kananian supervised Japanese workers unloading ships for a short time at the end of the war. He was rarely on ship and there is absolutely no evidence that anyone shipped or unloaded Unibestos on any of ship he was involved with during this period, least of all Mr. Kananian himself.  This gives their experts ammo to blame amosite exposure.

4. The Celotex BK form (also prepared by ELS) is not as bad as the others, but repeats the inane description of Mr. Kananian working with "tools of asbestos", whatever the hell that is, while working for one of his early employers.

5. The Bethlehem BK form (prepared by BP) is not a problem.

6.  Defense also has the JM claim form which I have not seen recently. It is not as bad as the ELS stuff, but I believe we also overstate Mr. Kananian's exposure by indicating he was exposed as some type of shipyard worker at HPNSY (he was there for one day to pick up his ship).  We have a JM connection in this case by virtue of JM insulation used at HPNSY and installed on the General John Pope, the transport ship he was on to the Phillipines.  He slept below insulated pipes in his berthing quarters.  We nailed WMAC for the same connection.

Bruce Carter is understandably concerned about this situation, as am I.  These innacurate claim forms are now going into evidence at trial. I am forced to try to explain them away as mistakes by clerks or attys.  A jury is going to look down on this type of fabrication by lawyers and can use this information to dump plaintiffs by finding that

Judge Hanna said today that he would not admit them if plaintiffs gave all the monies they received from

these trusts back before trial. This amounts to about $150,000 or so, the majority of which was obtained by ELS. I think BP may have brought in about $20,000.

I am not as concerned about the BP submissions (BETH and JM) as I am about the ELS crap.

Does ELS have a piece of this case still?    Their actions are seriously jeopardizing the case.

A serious concern regarding malpractice is also implicated and a potential conflict in going forward.

What do you want to do?

1. Give the money back and improve our chances at trial in a joint and several jurisdiction with pain and suffering surviving?  This would involve getting ELS to pay back their share. The clients already received their share so both firms would have to suck it up.  Amended claims could be submitted later to try to recoup something from the trusts.

2. Go forward at trial and try to explain these things away to a jury.....I.e.  they are mistaken....focus on sworn depos and rog responses, not unsworn claim forms that were just used to pry money out of a bankrupt.

Please advise.

>>> "Bruce Carter" <brucecarteresq@cinci.rr.com> 3/10/2006 2:15 PM >>>
I think we should give the money back. It can come from your firm, partially reimbursed from Early Ludwig or taken from any cut they get from the verdict.

We can get deduct the monies paid back from any recovery in this case.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. Recipients are requested not to disclose, share or forward this e-mail without permission of the sender. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Bruce Carter, Esq.
5458 Yosemite Drive
Fairfield, OH 45014
Phone (513) 829-7553
Fax (513) 829-4579
E-Mail: BruceCarterEsq@cinci.rr.com
Licensed in Ohio, West Virginia, Texas and Pennsylvania

# Section Three

From:        Gil Purcell
To:          Chris Andreas
Date:        Sat, Mar 11, 2006 11:22 AM
Subject:     Re: Bankruptcy Claim Forms- Kananian  BIG ISSUE

This is very odd.  For starters, even assuming a money give back, how can you be sure he will keep the forms and all related assertions by defs out?

>>> Chris Andreas 3/10 7:16 pm >>>
I just argued more motions today in Kananian with Judge Hanna.

Perhaps the biggest bone of contention in this case is the admissibility of unverified BK forms submitted for Harry (Deceased) or the WD heirs. We already argued this issue when I was in Cleveland and more argument occurred today.

Judge Hanna is going to allow the 6 or so claim forms (attached) into evidence, although they will be redacted to remove settlement info. Lorillard and its experts are using these to show causative exposure from sources other than Kent cigarettes and to make plaintiffs' counsel look slimy.

Almost all of the BK forms were prepared by Early Ludwick & Sweeney. These are the most troublesome.

1. The 48 Insulations BK form (prepared by ELS) indicates under job code and duration of exposure that Harry Kananian (deceased) was exposed in a shipyard for 24 months to block insulation. Harry Kananian was a rifleman in the US Army, who shipped out on a troop transport ship from HPNSY to the Phillipines and after the war, shipped back on another troop transport ship from Japan. That is the extent of his shipboard exposure.

2. The Eagle Picher BK form (also prepared by ELS) makes things worse describing Mr. Kananian as a shipyard welder or worker in SF, Phillipines and Japan during WWII. The description of his work as a payroll clerk at various plants overstates any possible exposure he might have had to insulation.

3. The UNR BK form (also prepared by ELS) is the absolute worst of the bunch!!! They describe Harry Kananian as unloading Unarco Unibestos off ships in Japan. Mr. Kananian supervised Japanese workers unloading ships for a short time at the end of the war. He was rarely on ship and there is absolutely no evidence that anyone shipped or unloaded Unibestos on any of ship he was involved with during this period, least of all Mr. Kananian himself. This gives their experts ammo to blame amosite exposure.

4. The Celotex BK form (also prepared by ELS) is not as bad as the others, but repeats the inane description of Mr. Kananian working with "tools of asbestos", whatever the hell that is, while working for one of his early employers.

5. The Bethlehem BK form (prepared by BP) is not a problem.

6. Defense also has the JM claim form which I have not seen recently. It is not as bad as the ELS stuff, but I believe we also overstate Mr. Kananian's exposure by indicating he was exposed as some type of shipyard worker at HPNSY (he was there for one day to pick up his ship). We have a JM connection in this case by virtue of JM insulation used at HPNSY and installed on the General John Pope, the transport ship he was on to the Phillipines. He slept below insulated pipes in his berthing quarters. We nailed WMAC for the same connection.

Bruce Carter is understandably concerned about this situation, as am I.  These inaccurate claim forms are now going into evidence at trial. I am forced to try to explain them away as mistakes by clerks or

attys.  A jury is going to look down on this type of fabrication by lawyers and can use this information to dump plaintiffs by finding that

Judge Hanna said today that he would not admit them if plaintiffs gave all the monies they received from these trusts back before trial.  This amounts to about $150,000 or so, the majority of which was obtained by ELS.  I think BP may have brought in about $20,000.

I am not as concerned about the BP submissions (BETH and JM) as I am about the ELS crap.

Does ELS have a piece of this case still?    Their actions are seriously jeopardizing the case.

A serious concern regarding malpractice is also implicated and a potential conflict in going forward.

What do you want to do?

1. Give the money back and improve our chances at trial in a joint and several jurisdiction with pain and suffering surviving?  This would involve getting ELS to pay back their share. The clients already received their share so both firms would have to suck it up.  Amended claims could be submitted later to try to recoup something from the trusts.

2.  Go forward at trial and try to explain these things away to a jury.....i.e.  they are mistaken....focus on sworn depos and rog responses, not unsworn claim forms that were just used to pry money out of a bankrupt.

Please advise.

>>> "Bruce Carter" <brucecarteresq@cinci.rr.com> 3/10/2006 2:15 PM >>>
I think we should give the money back. It can come from your firm, partially reimbursed from Early Ludwig or taken from any cut they get from the verdict.

We can get deduct the monies paid back from any recovery in this case.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. Recipients are requested not to disclose, share or forward this e-mail without permission of the sender. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Bruce Carter, Esq.
5458 Yosemite Drive
Fairfield, OH 45014
Phone (513) 829-7553
Fax (513) 829-4579
E-Mail: BruceCarterEsq@cinci.rr.com
Licensed in Ohio, West Virginia, Texas and Pennsylvania

# Section Four



| | |
|---|---|
| From: | Felicia Jimmink |
| To: | Chris Andreas; Christina Skubic |
| Date: | Mon, Mar 13, 2006 12:40 PM |
| Subject: | Re: We need to get the complete file ..... |

Please see attached. This is the ?aire from ELS, although I'm not sure if this is what you are looking for, they are FED EX'ing their file to me today, so I'll have more info tomorrow.

>>> Chris Andreas 3/13/2006 10:45 AM >>>
Thanks

>>> Felicia Jimmink 3/13/2006 10:33 AM >>>
I've got an email into ELS office, will advise and f/u with a phone call.. ..

>>> Chris Andreas 3/13/2006 9:34 AM >>>
We already have the "fictional" claims from ELS. Jack Kananian said in his depo at page 9 that he and his father filled out some sort of info sheet for ELS and sent it in. When asked about the claim form information at his depo he said he could only guess that it was transcribed from the info sheet they sent in. I would like to see that form if ELS still has it.

>>> Christina Skubic 3/13/2006 9:10 AM >>>
FMJ, can you call Early and find out what docs they have re intake for BK claims? I can get the BK claims themselves, but I think CEA already has them.

>>> Chris Andreas 3/12/2006 3:27 PM >>>
for the Kananian case from Early Ludwick & Sweeney. Clients filled out info form(s) sent to them by ELS and then ELS took that info and prepared and submitted some horribly misleading BK forms. There is no way what our client sent them matches what they put in these forms.

I want to see exactly what the clients submitted to ELS.

Can we get a copy of their file regarding BK submissions asap? In particular the info form(s) filled out by Harrry and/or Jack and Ann Kananian?

Thanks


CC:        Jacqueline Loveless

# Section Five

| From: | "Bruce Carter" <brucecarteresq@cinci.rr.com> |
|---|---|
| To: | "Chris Andreas'" <CAndreas@braytonlaw.com> |
| Date: | Mon, Mar 13, 2006  1:50 PM |
| Subject: | RE: Re: We need to get the complete file .... |

A quick motion to file under seal this document is in order. You can fax the motion only to Lorillard and the motion with the document stamped "filed under seal" to Judge Hanna. That is the way to get it to him.  Send the filing to the clerk by regular mail, for the record, with a separate envelope for the document filed under seal attached to the motion.

I agree that we need to make a record about how this directly conflicts with his sworn testimony.  We may need to supplement with an affidavit from Jack merely authenticating it and not saying anything about the content.

Bruce

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. Recipients are requested not to disclose, share or forward this e-mail without permission of the sender. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Bruce Carter, Esq.
5458 Yosemite Drive
Fairfield, OH 45014
Phone (513) 829-7553
Fax (513) 829-4579
E-Mail: BruceCarterEsq@cinci.rr.com <mailto:BruceCarterEsq@cinci.rr.com>
Licensed in Ohio, West Virginia, Texas and Pennsylvania

-----Original Message-----
From: Chris Andreas [mailto:CAndreas@braytonlaw.com]
Sent: Monday, March 13, 2006 1:44 PM
To: brucecarteresq@cinci.rr.com
Subject: Fwd: Re: We need to get the complete file ....

This is the questionnaire that Jack and Harry filled out when Harry was still alive.  As you can see ELS took great liberties with this info in filing BK forms.

We can get Jack to authenticate this thing and use it as a backdrop to the BK forms.  Blame ELS for bullshitting the trusts.

Alternatively, we can give it to Judge Hanna this afternoon and let him review it.  Might bear on his decision to let these misleading claim forms into evidence.  Given that none were signed by Jack or Harry, there is a strong argument to be made that they never saw them before they were submitted.  Cannot hold them to false information that ELS employees put down.

>>> Felicia Jimmink 3/13/2006 12:40 PM >>>

Please see attached. This is the ?aire from ELS, although I'm not sure if
this is what you are looking for, they are FED EX'ing their file to me
today, so I'll have more info tomorrow.

>>> Chris Andreas 3/13/2006 10:45 AM >>>
Thanks

>>> Felicia Jimmink 3/13/2006 10:33 AM >>>
I've got an email into ELS office, will advise and f/u with a phone
call.....

>>> Chris Andreas 3/13/2006 9:34 AM >>>
We already have the "fictional" claims from ELS. Jack Kananian said in his
depo at page 9 that he and his father filled out some sort of info sheet for
ELS and sent it in. When asked about the claim form information at his depo
he said he could only guess that it was transcribed from the info sheet they
sent in. I would like to see that form if ELS still has it.

>>> Christina Skubic 3/13/2006 9:10 AM >>>
FM.I, can you call Early and find out what docs they have re intake for BK
claims? I can get the BK claims themselves, but I think CEA already has
them.

>>> Chris Andreas 3/12/2006 3:27 PM >>>
for the Kananian case from Early Ludwick & Sweeney. Clients filled out info
form(s) sent to them by ELS and then ELS took that info and prepared and
submitted some horribly misleading BK forms. There is no way what our
client sent them matches what they put in these forms

I want to see exactly what the clients submitted to ELS.

Can we get a copy of their file regarding BK submissions asap? In
particular the info form(s) filled out by Harrry and/or Jack and Ann
Kananian?

Thanks

# Section Six

Chris Andreas - Fwd: Kananian MANVILLE Claim Re: We need to get the complete file .....

| | |
|---|---|
| From: | Felicia Jimmink |
| To: | Chris Andreas |
| Date: | Tue, Mar 14, 2006 3:30 PM |
| Subject: | Fwd: Kananian MANVILLE Claim Re: We need to get the complete file ..... |

attached.

>>> Ryan Poole 3/14/2006 9:13:58 AM >>>
attached.

>>> Christina Skubic 3/13/2006 2:10 PM >>>
Do we have a copy of the Manville BK form submitted in Kananian? If not, JRP, please e-mail Heather
Seitzer at the trust and get a copy ASAP?

>>> Chris Andreas 3/13/2006 1:51:37 PM >>>
Please print and scan to PDF and send to me. This is good stuff. Shows ELS played fast and loose.

Please also send me a PDF copy of the Manville BK form our office submitted. Thanks

>>> Felicia Jimmink 3/13/2006 12:40 PM >>>
Please see attached. This is the ?aire from ELS, although I'm not sure if this is what you are looking for,
they are FED EX'ing their file to me today, so I'll have more info tomorrow.

>>> Chris Andreas 3/13/2006 10:45 AM >>>
Thanks

>>> Felicia Jimmink 3/13/2006 10:33 AM >>>
I've got an email into ELS office, will advise and f/u with a phone call......

>>> Chris Andreas 3/13/2006 9:34 AM >>>
We already have the "fictional" claims from ELS. Jack Kananian said in his depo at page 9 that he and
his father filled out some sort of info sheet for ELS and sent it in. When asked about the claim form
information at his depo he said he could only guess that it was transcribed from the info sheet they sent
in. I would like to see that form if ELS still has it.

>>> Christina Skubic 3/13/2006 9:10 AM >>>
FMJ, can you call Early and find out what docs they have re intake for BK claims? I can get the BK
claims themselves, but I think CEA already has them.

>>> Chris Andreas 3/12/2006 3:27 PM >>>
for the Kananian case from Early Ludwick & Sweeney. Clients filled out info form(s) sent to them by ELS
and then ELS took that info and prepared and submitted some horribly misleading BK forms. There is no
way what our client sent them matches what they put in these forms.

I want to see exactly what the clients submitted to ELS.

Can we get a copy of their file regarding BK submissions asap? In particular the info form(s) filled out by
Harrry and/or Jack and Ann Kananian?

Thanks

# Section Seven

| | |
|---|---|
| From: | Ryan Poole |
| To: | Chris Andreas;  Felicia Jimmink |
| Date: | Tue, Mar 14, 2006  4:28 PM |
| Subject: | Fwd: Kananian MANVILLE Claim Re: We need to get the complete file ..... |

attached

>>> Felicia Jimmink 3/14/2006 4:07 PM >>>
Is this already scanned in PDF format?  If not, can you please have this done this week?  Please advise -
thanx

>>> Chris Andreas 3/14/2006 3:51:24 PM >>>
Thanks.

Can we get this scanned at some point?  I would like it in a PDF format.


>>> Felicia Jimmink 3/14/2006 3:30 PM >>>
attached.

>>> Ryan Poole 3/14/2006 9:13:58 AM >>>
attached.

>>> Christina Skubic 3/13/2006 2:10 PM >>>
Do we have a copy of the Manville BK form submitted in Kananian?  If not, JRP, please e-mail Heather
Seitzer at the trust and get a copy ASAP?

>>> Chris Andreas 3/13/2006 1:51:37 PM >>>
Please print and scan to PDF and send to me. This is good stuff.  Shows ELS played fast and loose.

Please also send me a PDF copy of the Manville BK form from our office submitted. Thanks

>>> Felicia Jimmink 3/13/2006 12:40 PM >>>
Please see attached.  This is the ?aire from ELS, although I'm not sure if this is what you are looking for,
they are FED EX'ing their file to me today, so I'll have more info tomorrow.

>>> Chris Andreas 3/13/2006 10:45 AM >>>
Thanks

>>> Felicia Jimmink 3/13/2006 10:33 AM >>>
I've got an email into ELS office, will advise and f/u with a phone call.....

>>> Chris Andreas 3/13/2006 9:34 AM >>>
We already have the "fictional" claims from ELS. Jack Kananian said in his depo at page 9 that he and
his father filled out some sort of info sheet for ELS and sent it in.  When asked about the claim form
information at his depo he could only guess that it was transcribed from the info sheet they sent
in  I would like to see that form if ELS still has it.

>>> Christina Skubic 3/13/2006 9:10 AM >>>
FMJ, can you call Early and find out what docs they have re intake for BK claims?  I can get the BK
claims themselves, but I think CEA already has them.

>>> Chris Andreas 3/12/2006 3:27 PM >>>
for the Kananian case from Early Ludwick & Sweeney.  Clients filled out info form(s) sent to them by ELS
and then ELS took that info and prepared and submitted some horribly misleading BK forms. There is no

way what our client sent them matches what they put in these forms.

I want to see exactly what the clients submitted to ELS.

Can we get a copy of their file regarding BK submissions asap? In particular the info form(s) filled out by Harrry and/or Jack and Ann Kananian?

Thanks

# Section Eight

From:        Chris Andreas
To:          Al Brayton
Date:        Wed, Mar 22, 2006  9:52 AM
Subject:     URGENT MATTER- KANANIAN CASE

Al,

I need to speak with you asap about Kananian.

Some weeks back, I advised that the bankruptcy claim forms submitted by Early Ludwick & Sweeney, as well as the JM and BETH claim forms submitted by BP were coming into evidence in this case as adoptive admissions. I sent a lengthy e-mail on the subject attaching the claim forms at issue.

I advised at that time that the ELS claim forms are rife with outright fabrications regarding the decedent Harry Kananian's exposure to asbestos. The JM form we submitted is not as bad, but also inaccurate, describing Mr. Kananian as a laborer and shipyard worker during certain periods of WWII, when in reality he was a US Army rifleman.

He shipped out on a troop transport ship (JOHN POPE) from HPNSY in March of 1945 to the Phillipines, spending no time in the shipyard and certainly doing no work on the ship. He was exposed to insulation on the ship by virtue of sleeping below insulated pipes that rattled. The voyage to the Phillipines was 10 days in duration.

While in the Phillipines he was billeted for a couple weeks aboard an unnamed Liberty ship. Our rog responses indicate he did some welding work on the ship, although this is not borne out by any testimony from Harry Kananian.

In mid- 1946, Mr. Kananian was in Japan during the occupation and was statione for a few months at the Yokohama port. He supervised Japanese dock workers unloading vessels, more in a clerical way than hands on, rarely being aboard a vessel. This comes from his testimony. He did not recall what was unloaded.

Mr. Kananian shipped back stateside aboard the ADMIRAL MAYO, another troop transport ship in mid-1946, and had similar insulation exposure to that described above on the POPE.

ELS, by way of example, in their UNR form claims that Mr. Kananian was unloading Unibestos in Yokohama. They claim he was involved as a teenager at a Cleveland plant with "tools of asbestos", when in reality he was involved in the manufacture and lathing of metal tools. The Celotex claim form is completely fabricated with exposures alleged to occur to insulation products at some of his places of employment after the war where he worked as a payroll accountant and clerk. It goes on and on.

During Jack Kananian's deposition (son) in January of 2005, Lorillard attys shoved these claim forms at him and asked him if he thought they were "materially misleading and false", to which he said no, not to his knowledge. He did repeatedly point out that his Dad was never a shipyard worker, a laborer or many of the other outlandish descriptions in the claim forms. He also described a questionnaire that he and his father had filled out for ELS with back in 2000, which he surmised was the source of at least some of the information contained in the claim forms.

In arguing to keep these things out, I pointed out to the judge that they were neither executed, nor verified by either Harry Kananian or Jack Kananian. Plaintiffs never saw the claim forms before they were submitted. Most were not even executed by an attorney, although the JM claim form bears your



signature. I also argued that they were inaccurate and misleading, as was evident from Harry Kananian's video deposition, which would at some poitn be published to the jury. I never characterized them as "false" or "fraudulent".

I obtained a copy of the ELS questionnaire, referenced by Jack at his depo. last week to see what was in it. It was prepared in Jack's handwriting in February of 2000. It is factually accurate and in accord with all of the sworn testimony in this case. It does not describe his father's past history in any way, shape or form as that set forth in most of the claim forms ELS ultimately submitted. It certainly has no product ID.

Bruce Carter and I filed this questionnaire in a motion under seal with Judge Hanna last Friday so that we could demonstrate to the Court that it would be highly misleading to let in the ELS forms. I was willing to deal with and accept the JM and BETH forms we prepared at trial. Again, I never claimed that the ELS forms were "false" or "fraudulent", only inaccurate in certain respects. The questionnaire was not provided with the copy of the motion served on Lorillard. At the very least, I wanted to alert the Court and counsel that we would seek to use this form at trial to counter and defuse the obvious tactic of Lorillard to call Jack, Harry and our firm liars.

Judge Hanna was concerned enough to have Jack at court today. He requested that Jack confer with Bruce Carter and I to determine if he wanted to independently consult with another attorney before proceeding with trial. His concern was that Jack may be facing "ramifications in the future" in proceeding and might want to consult with appropriate counsel. In essence, what he was getting at was that if the trial proceeds and Jack's testimony from deposition and/or live testimony is introduced, Jack may be subjecting himself to future potential criminal or other liability and should be appropriately advised in advance.

Jack's options at this point, if we take Lorillard' threats seriously, would be to drop the suit, or go forward, with the option of taking the Fifth with regard to the claim form information or testifying as he so chooses, understanding that this could come back to haunt him.

There is also the potential conflict between our firm and Jack if we all eventually end up embroiled in some sort of federal investigation and/or prosecution involving bankruptcy fraud.

We agreed to take the day off and start jury selection tomorrow so that Jack could consult with appropriate counsel this afternoon.

In that regard, we have a phone conference set for 2:30 EST with Ron Barliant of Chicago, someone you may be familiar with as he was formerly the bankruptcy judge on the 48 Insulation bankruptcy and who is now in private practice. Ironically, one of the ELS forms is a 48 Instulations submission. The discussion will revolve around the bankruptcy issues implicated in this case.

We are also trying to get a meeting set up for later today with a prominent criminal defense atty here in Cleveland so that we can get him up to speed on all of this and have him counsel Jack directly.

Attached are the opposition papers filed by Lorillard today and some of the BK forms I sent you last month, although this time they are part of a separate pleading filed by Lorillard to apprise the court of the

status of their effort to get confirmation that the forms were actually filed and received by the trusts.

I would dearly like to discuss all of this with you asap!

Chris


CC:            Butch LeRoy;  Dave Donadio;  Gil Purcell

# Section Nine

| | |
|---|---|
| From: | Christina Skubic |
| To: | BruceCarterEsq@cinci.rr.com; Chris Andreas; Felicia Jimmink; Jacqueline Loveless; nsalato@elslaw.com |
| Date: | Wed, Mar 22, 2006 10:20 AM |
| Subject: | RE: Fwd: Harry Kananian |

I spoke with Amy Hirsch at the Celotex Trust and requested that they send their usual form letter citing the confidentiality section of the Claims Resolution Procedures. This letter will go out, but she also wanted to touch bases with Dan Donaldson, Celotex general counsel, because the defense counsel is being so aggressive (calling her 2-3 times a day requesting the documents). I told her I would be happy to speak with Don. I will let you know what comes of that conversation.
Christina

>>> Chris Andreas 3/21/2006 2:59 PM >>>
Christina- can you handle this?

>>> "Bruce Carter" <BruceCarterEsq@cinci.rr.com> 3/21/2006 2:26 PM >>>
I would not file a motion to quash. I would respond to them via phone requesting that they resist, pursuant to the trust procedures that the forms are confidential.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. Recipients are requested not to disclose, share or forward this e-mail without permission of the sender. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Bruce Carter, Esq.
5458 Yosemite Drive
Fairfield, OH 45014
Phone (513) 829-7553
Fax (513) 829-4579
E-Mail: BruceCarterEsq@cinci.rr.com
Licensed in Ohio, West Virginia, Texas and Pennsylvania

-----Original Message-----
From: Chris Andreas [mailto:CAndreas@braytonlaw.com]
Sent: Tuesday, March 21, 2006 4:59 PM
To: Christina Skubic; Jacqueline Loveless; Ryan Poole; BruceCarterEsq@cinci.rr.com
Cc: Felicia Jimmink
Subject: Re: Fwd: Harry Kananian

>>> Christina Skubic 3/21/2006 10:49 AM >>>
Chris needs to know about this and tell us/Early how to proceed.  I thought
they already did this and the claim was already produced but maybe not.
CEA- please advise and we can get back to Nicole at Early.

>>> Ryan Poole 03/21/06 9:35 AM >>>
Can one of you please let her know what to do?  Thanks.

>>> "Nicole Salato" <nsalato@elslaw.com> 3/20/2006 8:23:14 AM >>>
Dear Ryan:

I am not sure what the procedure is, bu I got a phone call from the Celotex
Trust this morning regarding the above named case.  I know that your firm is
handling the trial end of this so I am hoping you will help.  The defense
counsel has served a subpoena for Mr. Kananian's claim and wanted to know
how we'd like to proceed.  Please let me know at your earliest
convenience-Thanks!

Nicole L. Salato
Early, Ludwick & Sweeney, LLC
265 Church Street
PO Box 1866
New Haven, CT 06508-1866
(203) 777-7799
(203) 785-1785 (f)

# Section Ten

Chris Andreas - RE: Kannanian

From:        "Bruce Carter" <BruceCarterEsq@cinci.rr.com>
To:          "'Chris Andreas'" <CAndreas@braytonlaw.com>, "'Gil Purcell'"
<GPurcell@braytonlaw.com>
Date:        Thu, Mar 23, 2006  4:01 AM
Subject:     RE: Kannanian

Gil;

Additionally, we are bolstered by the opinion of Judge Ron Barliant who was the judge in the 48 bankruptcy. His view is that the trust documents are not judicial documents. A Trust is not a part of the bankruptcy court. A Trust is established as part of the confirmation plan to end the bankruptcy. Generally individual claims submitted to a Trust are not reviewable by the court. This is supported by every Trust claim handling procedure plan I have reviewed. As an example, in Manville, if you disagree with the denial of a claim you cannot appeal to the bankruptcy court you can arbitrate in binding arbitration. If you lose that it is over.

Returning to the idea of giving the money back, I am unaware of any trust procedure that allows the simple return of a check. I have suggested to Chris and Mr. Kananian that Mr. Kananian instruct Early Ludwig to immediately file amended claim forms with correct information with the bankruptcy trusts. They would ask the trusts whether upon a review of the amended claim forms would have any impact on the prior decisions of the trust. If the trust's review requires the return of the money, they would advise Early Ludwig how to accomplish that return. Mr. Kananian would advise Early Ludwig that the failure to do this seriously jeopardizes the trial of this case. That would alert Early Ludwig to potential malpractice claims should a jury find against the Kananians based upon the admission of the other exposure statements in the claim forms. I don't know what your firm's deal is with Early Ludwig on fee sharing for the proceeds from this case, should we succeed. If Early Ludwig is entitled to any attorneys' fees from the verdict, a failure to follow the directive of the client would also jeopardize their right to any future fees.

That is my advice on how to proceed and the impact a review and return should have on these claim forms.

Bruce

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. Recipients are requested not to disclose, share or forward this e-mail without permission of the sender. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Bruce Carter, Esq.
5458 Yosemite Drive
Fairfield, OH 45014
Phone (513) 829-7553
Fax (513) 829-4579
E-Mail: BruceCarterEsq@cinci.rr.com
Licensed in Ohio, West Virginia, Texas and Pennsylvania

-----Original Message-----
From: Chris Andreas [mailto:CAndreas@braytonlaw.com]
Sent: Wednesday, March 22, 2006 11:58 PM
To: Gil Purcell
Cc: BruceCarterEsq@cinci.rr.com
Subject: Re: Kannanian

Bruce- can you give your take to Gil?

>>> Gil Purcell 3/22/2006 7:28 PM >>>
Give me a buzz when you get a chance - I heard Al spoke with Jim Early.

I am having difficulty - focusing on your trial - in understanding how impugning plaintiff's counsel is relevant to the case - and these missives, which I understand were not verified by the plaintiff nor ever seen by him even, reflect on his counsel, not himself.  Maybe thats where the judge is on why giving the "ill gotten gains" back would make it clear that this is not relevant and excludable - and if thats the case, that may be correct and bullet proof on appeal.

# Section Eleven

| | |
|---|---|
| From: | Al Brayton |
| To: | Chris Andreas |
| Date: | Thu, Mar 23, 2006  5:27 PM |
| Subject: | RE: Re: Kannanian |

There is a limit to how far we can push Jim. He is taking it seriously, and working from the deposition and information we gave him.

>>> Chris Andreas 3/23/2006 5:20:55 PM >>>
I hope you are getting it before anything is sent to one of these trusts. We need to review these for accuracy.

>>> "Al Brayton" < ABrayton@braytonlaw.com > 3/23/2006 9:03:12 AM >>>
Send everything to me and please copy Chris. He will get it to Bruce Carter who is our local counsel.

Dealing with the trusts will be a little awkward. We are going to prepare the amended claim on old forms and fax, or scan and email, to the trust, and leave it to them on how they want to handle it. At the same time, we are offering to remit any overpayment.

>>> "James F. Early ESQ." < jfe@elslaw.com > 3/23/2006 8:45 AM >>>
Al, you can tell them that today we started the process of filing amended claims forms with every trust we submitted claims forms to. The claims forms will only be based on the deposition testimony taken in the case which your office email to me yesterday. I do not need a directive from Mr. Kannanian to do this. One technical issue with which we must deal is that the trusts now operate electronically so we will not be able to electronically submit the amended claims forms as they will be rejected "on-line". We will have to contact each trust and ascertain the method in which they prefer the claims forms be submitted. To whom should we send a copy of the amended forms other than the trusts? (You, Bruce Carter, others?)

-----Original Message-----
From: Al Brayton [mailto:ABrayton@braytonlaw.com]
Sent: Thursday, March 23, 2006 10:24 AM
To: James F. Early ESQ.
Subject: Fwd: Re: Kannanian

Current status.

>>> Gil Purcell 3/23/2006 7:11 AM >>>
Thanks Bruce - well reasoned approach. Sounds sensible to me - and I think the right and prudent thing to do given all these circumstances. I can't see any other approach. Let me know if I can help.

>>> "Bruce Carter" < BruceCarterEsq@cinci.rr.com > 3/23 4:01 am >>>
Gil;

Additionally, we are bolstered by the opinion of Judge Ron Barliant who was the judge in the 48 bankruptcy. His view is that the trust documents are not judicial documents. A Trust is not a part of the bankruptcy court. A Trust is established as part of the confirmation plan to end the bankruptcy.
Generally individual claims submitted to a Trust are not reviewable by the court. This is supported by every Trust claim handling procedure plan I have reviewed. As an example, in Manville, if you disagree with the denial of a claim you cannot appeal to the bankruptcy court you can arbitrate in binding arbitration. If you lose that it is over.

Returning to the idea of giving the money back, I am unaware of any trust procedure that allows the simple return of a check. I have suggested to Chris and Mr. Kananian that Mr. Kananian instruct Early Ludwig to immediately file amended claim forms with correct information with the bankruptcy trusts. They would ask the trusts whether upon a review of the amended claim forms would have any impact on the prior decisions of the trust. If the trust's review requires the return of the money, they would advise Early Ludwig how to accomplish that return. Mr. Kananian would advise Early Ludwig that the failure to do this seriously jeopardizes the trial of this case. That would alert Early Ludwig to potential malpractice claims should a jury find against the Kananians based upon the admission of the other exposure statements in the claim forms. I don't know what your firm's deal is with Early Ludwig on fee sharing for the proceeds from this case, should we succeed. If Early Ludwig is entitled to any attorneys' fees from the verdict, a failure to follow the directive of the client would also jeopardize their right to any future fees.

That is my advice on how to proceed and the impact a review and return should have on these claim forms.

Chris Andreas - RE: Re: Kannanian

Bruce

This email message is for the sole use of the intended recipient(s) and
may contain confidential and privileged information. Any unauthorized
review, use, disclosure or distribution is prohibited. Recipients are
requested not to disclose, share or forward this e-mail without
permission of the sender.
If you are not the intended recipient, please contact the sender by
reply email and destroy all copies of the original message.

Bruce Carter, Esq.
5458 Yosemite Drive
Fairfield, OH 45014
Phone (513) 829-7553
Fax (513) 829-4579
E-Mail: BruceCarterEsq@cinci.rr.com
Licensed in Ohio, West Virginia, Texas and Pennsylvania

-----Original Message-----
From: Chris Andreas [mailto:CAndreas@braytonlaw.com]
Sent: Wednesday, March 22, 2006 11:58 PM
To: Gil Purcell
Cc: BruceCarterEsq@cinci.rr.com
Subject: Re: Kannanian

Bruce- can you give your take to Gil?

>>> Gil Purcell 3/22/2006 7:28 PM >>>
Give me a buzz when you get a chance - I heard Al spoke with Jim Early.

I am having difficulty - focusing on your trial - in understanding how
impugning plaintiff's counsel is relevant to the case - and these
missives, which I understand were not verified by the plaintiff nor ever
seen by him even, reflect on his counsel, not himself. Maybe thats
where the judge is on why giving the "ill gotten gains" back would make
it clear that this is not relevant and excludable - and if thats the
case, that may be correct and bullet proof on appeal.