# EXHIBIT 3

From:       Chris Andreas
To:         Al Brayton
Date:       Wed, Mar 22, 2006 9:52 AM
Subject:    URGENT MATTER- KANANIAN CASE

Al,

I need to speak with you asap about Kananian.

Some weeks back, I advised that the bankruptcy claim forms submitted by Early Ludwick & Sweeney, as well as the JM and BETH claim forms submitted by BP were coming into evidence in this case as adoptive admissions. I sent a lengthy e-mail on the subject attaching the claim forms at issue.

I advised at that time that the ELS claim forms are rife with outright fabrications regarding the decedent Harry Kananian's exposure to asbestos. The JM form we submitted is not as bad, but also inaccurate, describing Mr. Kananian as a laborer and shipyard worker during certain periods of WWII, when in reality he was a US Army rifleman.

He shipped out on a troop transport ship (JOHN POPE) from HPNSY in March of 1945 to the Phillipines, spending no time in the shipyard and certainly doing no work on the ship. He was exposed to insulation on the ship by virtue of sleeping below insulated pipes that rattled. The voyage to the Phillipines was 10 days in duration.

While in the Phillipines he was billeted for a couple weeks aboard an unnamed Liberty ship. Our rog responses indicate he did some welding work on the ship, although this is not borne out by any testimony from Harry Kananian.

In mid- 1946, Mr. Kananian was in Japan during the occupation and was statione for a few months at the Yokohama port. He supervised Japanese dock workers unloading vessels, more in a clerical way than hands on, rarely being aboard a vessel. This comes from his testimony. He did not recall what was unloaded.

Mr. Kananian shipped back stateside aboard the ADMIRAL MAYO, another troop transport ship in mid-1946, and had similar insulation exposure to that described above on the POPE.

ELS, by way of example, in their UNR form claims that Mr. Kananian was unloading Unibestos in Yokohama. They claim he was involved as a teenager at a Cleveland plant with "tools of asbestos", when in reality he was involved in the manufacture and lathing of metal tools. The Celotex claim form is completely fabricated with exposures alleged to occur to insulation products at some of his places of employment after the war where he worked as a payroll accountant and clerk. It goes on and on.

During Jack Kananian's deposition (son) in January of 2005, Lorillard attys shoved these claim forms at him and asked him if he thought they were "materially misleading and false", to which he said no, not to his knowledge. He did repeatedly point out that his Dad was never a shipyard worker, a laborer or many of the other outlandish descriptions in the claim forms. He also described a questionnaire that he and his father had filled out for ELS with back in 2000, which he surmised was the source of at least some of the information contained in the claim forms.

In arguing to keep these things out, I pointed out to the judge that they were neither executed, nor verified by either Harry Kananian or Jack Kananian. Plaintiffs never saw the claim forms before they were submitted. Most were not even executed by an attorney, although the JM claim form bears your



signature. I also argued that they were inaccurate and misleading, as was evident from Harry Kananian's video deposition, which would at some poitn be published to the jury. I never characterized them as "false" or "fraudulent".

I obtained a copy of the ELS questionnaire, referenced by Jack at his depo. last week to see what was in it. It was prepared in Jack's handwriting in February of 2000. It is factually accurate and in accord with all of the sworn testimony in this case. It does not describe his father's past history in any way, shape or form as that set forth in most of the claim forms ELS ultimately submitted. It certainly has no product ID.

Bruce Carter and I filed this questionnaire in a motion under seal with Judge Hanna last Friday so that we could demonstrate to the Court that it would be highly misleading to let in the ELS forms. I was willing to deal with and accept the JM and BETH forms we prepared at trial. Again, I never claimed that the ELS forms were "false" or "fraudulent", only inaccurate in certain respects. The questionnaire was not provided with the copy of the motion served on Lorillard. At the very least, I wanted to alert the Court and counsel that we would seek to use this form at trial to counter and defuse the obvious tactic of Lorillard to call Jack, Harry and our firm liars.

Judge Hanna was concerned enough to have Jack at court today. He requested that Jack confer with Bruce Carter and I to determine if he wanted to independently consult with another attorney before proceeding with trial. His concern was that Jack may be facing "ramifications in the future" in proceeding and might want to consult with appropriate counsel. In essence, what he was getting at was that if the trial proceeds and Jack's testimony from deposition and/or live testimony is introduced, Jack may be subjecting himself to future potential criminal or other liability and should be appropriately advised in advance.

Jack's options at this point, if we take Lorillard' threats seriously, would be to drop the suit, or go forward, with the option of taking the Fifth with regard to the claim form information or testifying as he so chooses, understanding that this could come back to haunt him.

There is also the potential conflict between our firm and Jack if we all eventually end up embroiled in some sort of federal investigation and/or prosecution involving bankruptcy fraud.

We agreed to take the day off and start jury selection tomorrow so that Jack could consult with appropriate counsel this afternoon.

In that regard, we have a phone conference set for 2:30 EST with Ron Barliant of Chicago, someone you may be familiar with as he was formerly the bankruptcy judge on the 48 Insulation bankruptcy and who is now in private practice. Ironically, one of the ELS forms is a 48 Instulations submission. The discussion will revolve around the bankruptcy issues implicated in this case.

We are also trying to get a meeting set up for later today with a prominent criminal defense atty here in Cleveland so that we can get him up to speed on all of this and have him counsel Jack directly.

Attached are the opposition papers filed by Lorillard today and some of the BK forms I sent you last month, although this time they are part of a separate pleading filed by Lorillard to apprise the court of the

status of their effort to get confirmation that the forms were actually filed and received by the trusts.

I would dearly like to discuss all of this with you asap!

Chris

CC:         Butch LeRoy;  Dave Donadio;  Gil Purcell