UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                            . Case No. 01-01139(JKF)
                                  . Chapter 11
                                  . Jointly Administered
  W.R. GRACE & CO., et al.,       .
                                  . 824 Market Street
                                  . Wilmington, Delaware  19801
                  Debtors.    .
                                  . April 25, 2007
. . . . . . . . . . . . . . . . . 10.04 a.m.


TRANSCRIPT OF MOTION HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtors:              Reed Smith, LLP
                              By:  JAMES J. RESTIVO, JR., ESQ.
                                   DOUGLAS E. CAMERON, ESQ.
                              435 Sixth Avenue
                              Pittsburgh, PA  15219


For the Debtors:              Pachulski, Stang, Ziehl, Young,
                               Jones & Weintraub, P.C.
                              By:  TIMOTHY CAIRNS, ESQ.
                                   JAMES E. O'NEILL, ESQ.
                              919 Market Street
                              16th Floor
                              P.O. Box 8705
                              Wilmington, DE  19899
                              (Telephonic Appearances)


Audio Operator:               Cathy Younker


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

APPEARANCES (Cont'd.):

For Allstate Insurance          Cuyler Burk, LLP
Company:                        By:  ANDREW K. CRAIG, ESQ.
                                Parsippany Corporate Center
                                Four Century Drive
                                Parsippany, NJ  07054
                                (Telephonic Appearance)

For David T. Austern, Future    Orrick, Herrington & Sutcliffe
Claimants Representative:        LLP
                                By:  DEBRA FELDER, ESQ.
                                Washington Harbour
                                3050 K Street, N.W.
                                Washington, DC  20007
                                (Telephonic Appearance)

For David T. Austern, Future    Phillips, Goldman & Spence, P.A.
Claimants Representative:       By:  JOHN C. PHILLIPS, JR., ESQ.
                                1200 North Broom Street
                                Wilmington, DE  19806
                                (Telephonic Appearance)

For Asbestos Property           Richardson, Patrick, Westbrook
Damage Claimants:                & Brickman, LLC
                                By:  EDWARD J. WESTBROOK, ESQ.
                                1037 Chuck Dawley Boulevard
                                Building A
                                Mount Pleasant, SC  29464
                                (Telephonic Appearance)

For Asbestos Property           Speights & Runyan
Damage Claimants:              By:  DANIEL A. SPEIGHTS, ESQ.
                                200 Jackson Avenue East
                                Hampton, SC  29924

For Asbestos Property           Speights & Runyan
Damage Claimants:              By:  MARION C. FAIREY, JR., ESQ.
                                200 Jackson Avenue East
                                Hampton, SC  29924
                                (Telephonic Appearance)

For Committee of Unsecured      Kramer, Levin, Naftalis &
Claim Holders:                   Frankel, LLP
                                By:  GARY M. BECKER, ESQ.
                                919 Third Avenue
                                New York, NY  10022
                                (Telephonic Appearance)

**J&J COURT TRANSCRIBERS, INC.**

APPEARANCES (Cont'd.):

```
For Official Committee of        Scott Law Group
Asbestos Property Damage         By: DARRELL W. SCOTT, ESQ.
Claimants:                       926 W Sprague Ave
                                 Spokane, WA 99201
                                 (Telephonic Appearance)


For Official Committee of        Dies & Hile, LLP
Asbestos Property Damage         By:  MARTIN DIES, ESQ.
Claimants:                       1601 Rio Grande St
                                 Austin, TX 78701
                                 (Telephonic Appearance)


For Fireman's Fund Insurance     Stevens & Lee
Company:                         By:  DAVID R. BEANE, ESQ.
                                 111 North Sixth Street
                                 P.O. Box 679
                                 Reading, PA  19603
                                 (Telephonic Appearance)


For Ad Hoc Committee of          Weil, Gotshal & Manges LLP
Equity Secured Creditors:        By:  M. JARRAD WRIGHT, ESQ.
                                 1300 Eye Street, NW
                                 Suite 900
                                 Washington, DC  20005
                                 (Telephonic Appearance)


For Official Committee of        Stroock & Stroock & Lavan, LLP
Unsecured Creditors:             By:  ARLENE G. KRIEGER, ESQ.
                                 180 Maiden Lane
                                 New York, NY  10038
                                 (Telephonic Appearance)


For the Asbestos Personal        Campbell & Levine, LLC
Injury Committee:                By:  MARK T. HURFORD, ESQ.
                                 800 N. King Street
                                 Suite 300
                                 Wilmington, DE  19801
                                 (Telephonic Appearance)


For Official Committee of        Ferry, Joseph & Pearce, P.A.
Asbestos Property Damage         By:  Theodore J. TACCONELLI, ESQ.
Claimants:                       824 Market Street
                                 Suite 904
                                 P.O. Box 1351
                                 Wilmington, DE  19899
                                 (Telephonic Appearance)
```

APPEARANCES (Cont'd.):

| For Official Committee of Asbestos Property Damage Claimants: | Bilzin Sumberg Baena Price & Axelrod LLP<br>By:  JAY M. SAKALO, ESQ.<br>SCOTT L. BAENA, ESQ.<br>MATTHEW I. KRAMER, ESQ.<br>Wachovia Financial Center<br>200 South Biscayne Boulevard<br>Suite 2500<br>Miami, FL  33131<br>(Telephonic Appearances) |
|---|---|

1          THE CLERK:  All rise.

2          THE COURT:  Good afternoon.  Please be seated.  This

3  is the matter of W.R. Grace, Bankruptcy Number 01-1139.  This

4  is the time set for an argument concerning a waiver issue with

5  regard to debtors' objection to certain proofs of claim.  On

6  the phone I have Dan Hood, Glenn Connor, Mark Hurford, Kenneth

7  Thomas, John Phillips, Edward Westbrook, Gary Becker, Jarrad

8  Wright, Jay Sakalo, Scott Baena, Marion Fairey, David Beane,

9  Alan Madian, Timothy Cairns, James O'Neill, Andrew Craig,

10  Debroah Felder, Matthew Kramer, Ted Tacconnelli, Arlene

11  Krieger, Darrell Scott and Martin Dies.  I'll take entries in

12  court, please.

13          MR. RESTIVO:  James Restivo and Douglas Cameron for

14  the debtors, Your Honor.

15          MR. SPEIGHTS:  Dan Speights for the Speights & Runyon

16  claimants, Your Honor.

17          THE COURT:  Mr. Restivo?

18          MR. RESTIVO:  Good morning, Your Honor.  At Document

19  Number 15172 is Anderson Memorial Hospital's motion to extend

20  deadlines, which was filed by Mr. Speights on April 13, 2007,

21  and Mr. Speights and I have agreed that since it's his motion I

22  have to let him go first, which I will.  When we received that

23  motion, rather than attempt to resolve that in advance of the

24  product I.D. hearings that took place yesterday and the day

25  before, Mr. Speights and I agreed we would simply defer these

1  claims, bring this matter to the Court's attention for

2  guidance, and if the debtor is correct that they need to --

3  that we have not waived product I.D. objections, it will

4  probably take one day to try these cases, and we would attempt

5  to do that on one of the days the Court has set aside for

6  property damage, and so that is how we get here today.

7         The only other comment I would make is that Mr.

8  Speights has been extremely professional, both with respect to

9  extending this motion so we could argue it today, and, as the

10 Court knows, he and I were able to make some progress in

11 cutting down the list of claims, and I have promised him and I

12 think he's promised me, once we get a breather, he and I are

13 going to look at these 26 claims, assuming they're still in

14 play, and see whether or not we can't use the same process we

15 used on some of the other claims.  And so I think the

16 discussions has been very professional and wanted to the Court

17 to know that.

18        THE COURT:  All right.  Thank you.  Mr. Speights.

19        MR. SPEIGHTS:  May it please the Court, the only

20 pleading before Your Honor today is our motion to extend

21 deadlines, which, as I understand the rules in Delaware, would

22 provide a bridge order.  And I lead off with that statement

23 because I think it's significant what is not before you today,

24 Your Honor, and I say what's not before you because, first of

25 all, there are no objections on product I.D. to these 26 claims

1  before Your Honor.  The debtors want to object to them.  I

2  suspect they will argue that later on in one of their reports

3  some or all of these claims were addressed, but I think it is

4  undisputed that these claims, these 26 claims, were not

5  objected to in their original fifteenth omnibus objection filed

6  on September 1 or 2, 2005, or attached in the Schedule A to the

7  Court's October 2006 CMO, and as I will discuss in a few

8  minutes, Speights & Runyon relied on the absence of these

9  objections.

10        In addition, Your Honor, I point out that there is no

11  motion before you by the debtors, and I raise that not because

12  I'm trying to be a technical lawyer or not because I'm trying

13  to get another trip to Pittsburgh, but because --

14        THE COURT:  Such beautiful weather, Mr. Speights.

15        MR. SPEIGHTS:  I understand I'm supposed to move --

16  talk quickly to try to beat the bad weather coming in.  I say

17  that because -- not to be technical, but because I think it's

18  important that we sit back and say how should this be properly

19  teed up, and I think it should properly be teed up by the

20  debtors making some sort of motion, a motion to amend their

21  objections, a motion to amend Your Court's scheduling order, a

22  motion to further -- for further relief of the local Delaware

23  rule which requires all of the claims to be filed -- all of the

24  objections to be filed at one time, subject to your order

25  allowing some deviation from that rule.  But there should be

1 something that the debtor comes forward with which makes it

2 clear that, number one, they have the burden of proof, and,

3 number two, that puts cause before you.  I mean, Mr. Restivo or

4 Mr. Cameron, whichever one will argue the motion, will be very

5 articulate in arguing that they should be allowed to proceed

6 with objections on these claims which they never filed.  But

7 the fact is on a motion they would attach something, an

8 affidavit or a deposition or something in support of their

9 argument.  It may be there was -- and, of course, we all

10 understand in the room that the original objections were filed

11 by Kirkland & Ellis, and the schedule was filed by Kirkland &

12 Ellis, at least I believe that's the case, and they might not

13 even know why these objections were not made, but certainly

14 we're entitled to know whether they're seeking relief because

15 of some excusable neglect or some tactical decision that they

16 now disagree with, et cetera, et cetera.

17         So, my first statement, Your Honor, is while I'm

18 going to -- while I have the podium argue some on the merits, I

19 really think it's premature to be arguing this before they file

20 in some form some motion which seeks some relief for the fact

21 that they did not object on product identification grounds to

22 these claims.

23         The second thing I would say at the outset, though,

24 Your Honor, is that in reality Your Honor has already ruled on

25 this.  If you haven't ruled, at least you have made it clear

1  what your view of this issue is.  The last time I was in

2  Pittsburgh, Your Honor, arguing the statute of limitations

3  summary judgment motions, the same issue came up with respect

4  to I believe it was the New York claims in which the debtors

5  had objected on constructive notice, but not on actual notice,

6  and I made the statement and went through the history at that

7  time, and I see Your Honor's nod, so I'm not going to go

8  through the history again, but my word was painstaking, which

9  Your Honor adopted, and what you said in unmistakable terms

10  that the debtor had gone through with claimants a painstaking

11  process to produce this objections and it was the debtors'

12  responsibility to make sure they objected correctly, and,

13  therefore, you were not, and with an exception not applicable

14  here, going to permit the debtors in that proceeding, I believe

15  there is no written order yet, to come along later and change

16  their statute of limitations objection when the claimants were

17  on notice only of constructive notice and now allow them to

18  come forward with actual notice.

19         So, number one, there is no motion before by the

20  debtors and, number two, I believe Your Honor has already

21  advised the parties what its view is on this matter, and, Your

22  Honor, I think Your Honor is correct on that view because as

23  Your Honor well knows, without again reciting the history, but

24  making the point, it was the debtors which sought relief from

25  the local rule in this court which otherwise would have had me

1  up here for some extended period of time arguing all of my

2  objections to all of my claims.  The debtors convinced Your

3  Honor, and I understand the ruling, that they could proceed in

4  a certain way provided they jumped over all the hurdles in

5  front of them, and they filed this objections back in September

6  2005, and from that date until today, they have not sought the

7  amendment of the objections and they have not sought to amend

8  this Court's order.

9          Now, Your Honor, we relied on that.  First of all,

10 when Your Honor -- and I have citations if there's any question

11 about it, but I have discussed these matters so many times with

12 Your Honor I think you know them by heart, as I keep citing

13 them to you.  Your Honor will recall when we had the

14 transformation in August of 2006 from an estimation to a claims

15 objections proceeding that I stood up and something to the

16 effect, well, Your Honor, I have now been invited to the party

17 -- I think those were my exact words -- and I just want to make

18 sure I'm on notice as to everything that's going on here

19 because thus far it's been a committee matter.  And Your Honor

20 said, I'm not going to require them to serve you with some

21 special paper, Your Honor -- Mr. Speights, but, if you want to

22 know the basis of these objections, send them contention

23 interrogatories, and that's exactly what my law firm did.

24          My law firm went through the objections, and for

25 those objections which they made in their fifteenth omnibus

1 objection, and by then in the Schedule A attached to the

2 October CMO, we filed contention interrogatories and Grace

3 responded to those contention interrogatories.  We did not file

4 contention interrogatories as to those I don't believe, unless

5 there is something I don't understand about -- we did not file

6 contention interrogatories as to those which they didn't object

7 to.  And then we took Dr. Lee's deposition, and when we took

8 Dr. Lee's deposition, we asked him -- Mr. Fairey actually took

9 the deposition.  I was not there.  Mr. Mr. Fairey asked him

10 about the claims that had been objected to and did not ask him

11 about the claims which had not been objected to.

12        So, Your Honor, we have relied on the absence of

13 objections and we have relied on the court orders, and we

14 didn't hide the ball.  Back in March, Your Honor -- excuse me

15 one moment.  Back in March, Your Honor, I think it was March

16 19, the debtors' -- in response to the debtors' motions for

17 summary judgment on statute of limitations, we raised this

18 precise issue, as, I believe, our first argument in response to

19 their motions for summary judgment, that as to certain claims

20 they had not filed objections on statute of limitations grounds

21 or on the particular statute of limitations ground that they

22 were proceeding with or wanted to proceed with before the

23 Court.

24        Now, I'm not sure what the debtors' answer is to all

25 of this, but I will address one or two things which Mr. Restivo

1  mentioned the other day when we got off track just a little

2  bit.  I think I got us off track before Mr. Restivo did in

3  getting a little bit on the merits of this matter when we were

4  simply trying to schedule it, but suggested something that,

5  well, Mr. Speights was not surprised because Dr. Lee addressed

6  these issues in his report.  I assume that's the case.  Dr. Lee

7  issued a report back in 2006.  Many of those claims have gone

8  beyond -- to the wayside.  Some have been withdrawn by me.

9  Some the objections have been withdrawn, et cetera, et cetera.

10        The fact of the matter is, though, that the fact that

11  Dr. Lee put in a report, in a lengthy, lengthy report, some

12  commentary on claims which Grace did not object to is neither

13  here nor there.  It means nothing.  They've got to have an

14  objection.  It's like if there's an automobile wreck out here

15  and I don't bring a lawsuit and later an expert files a report

16  on a bunch of wrecks and comments on the lawsuit that was never

17  brought before Your Honor.  There was no objection.  The fact

18  that Dr. Lee may have discussed something is neither here nor

19  there.  Nor did we question Dr. Lee because we relied on the

20  court orders and the objections that were on file.  If

21  anything, it shows that we didn't question him about those and

22  we only served discovery as to those that objected, which would

23  have put the debtors on notice.  And, in fact, the debtors

24  never raised that.  They did not even raise that in discussions

25  after receiving our brief on statute of limitations.  I raised

1 it when Mr. Restivo forwarded me, pursuant to the Court's

2 order, a list of the claims that they wanted to go forward with

3 and the order they wanted to go forward with them.

4         So, I think it's basically a simple issue, Your

5 Honor.  They didn't object, and they should file a motion, and

6 I will argue strenuously that's it too late when they file

7 their motion and that Your Honor shouldn't amend it at that

8 time.

9         Lastly, Your Honor, I would point out the

10 inconsistency of what I perceive to be the debtors' position.

11 Your Honor just entered an order recently striking 71 Speights

12 & Runyon claims because you found that there was no relation

13 back, that the authority signed after the bar date did not

14 ratify the authority we asserted before the bar date.  I

15 understand the Court's ruling.  It was issued at -- upon motion

16 by Grace.  And here is Grace now sitting in this courtroom, and

17 maybe legally there's some distinction to be made.  I'm not

18 arguing that.  But it certainly appears to me to be very

19 inconsistent for Grace to try to argue that, well, Lee's report

20 somehow ratifies our failure to object to the claims later.

21 They simply did not object, and they should suffer the

22 consequences.  Thank you, Your Honor.

23         THE COURT:  Mr. Restivo?

24         MR. RESTIVO:  I'm going to put our position, Your

25 Honor, in context.  On September 1, 2005, the debtor filed its

1   fifteenth omnibus objection to property damage claims.  In

2   retrospect and with Monday morning quarterbacking, and I admit

3   I'm doing that, that may have been too ambitious a filing.  In

4   the fifteenth omnibus objection, the debtor attempted as best

5   it could to describe and list its objections to thirty-nine

6   hundred and fifty of the remaining forty-two hundred original

7   property damage claims using a process of going through the

8   mountain of information that was being continually submitted by

9   claimants, not just Speights & Runyon, in lieu of answers to

10  the specific questionnaire.

11          I suggest this may have been too ambitious because in

12  an effort to disclose the objections -- by my count there were

13  at least 26 separate objection categories that Grace attempted

14  to put the claims into, many of those falling into multiple

15  subcategories.  Perhaps Grace was a little surprised by the

16  influx of forty-two hundred property damage claims because at

17  the time of the bankruptcy there were only seven property

18  damage claims pending.  In any event, as of the fifteenth

19  omnibus objection, there were 3,950 pending property damage

20  claims, of which 3,000 of those were Speights & Runyon claims.

21          THE COURT:  Well, I mean, I appreciate all that, Mr.

22  Restivo, but this was still the debtor's choice.  Nobody forced

23  the debtor into this.  This is what the debtor asked to do.

24          MR. RESTIVO:  I appreciate that, Your Honor, and

25  Objection C, Your Honor, was a product identification

1  objection.  Okay.  There is in Objection C objection to the

2  claims Mr. Speights is talking about, at least to 22 of the 24

3  claims.  The difficulty, I believe, and, again, with Monday

4  morning category (sic), is that the product I.D. objections

5  were then subdivided into further categories.  Category C-1

6  were objections that generally were based upon incomplete

7  information, either missing information about the building,

8  about the claimant, about the address, asserting multiple

9  claims.  C-2 was insufficient documentation.  Either you didn't

10  attach the documents or referred to the documents and you

11  didn't attach them, or you referred to some documents but not

12  all documents, or the documents were inconsistent.  Category

13  C-3 were objections generally that you failed to identify a

14  Grace product, and there there were reference to subcategories

15  of backup documentation inconsistent with the formula, the

16  failure to attach the documentation, inconsistent.  And

17  Objection C-4 was failing to rule out other products.  And so

18  there was a product identification objection to all but five of

19  these claims.  I will concede that whether or not a particular

20  objection was C-2D versus C-1B is not entirely clear and people

21  were a little overambitious.

22          In any event, Your Honor, the Court may recall I

23  became involved in this aspect of the case, more active, in

24  around August of 2006, when the Kirkland & Ellis attorney

25  responsible for this went on to other opportunities.  On

1  October 13, this Court issued a case management order.  Under

2  that case management order, there were different time frames

3  for different things.  With respect to product identification,

4  claimants were required to go first on expert reports, and they

5  needed to file an expert report on December 21, 2006.

6        I have handed up to the Court the Speights & Runyon

7  filing on that date of the designation of expert reports

8  relating to product identification.  You will see, Your Honor,

9  that they are dealing here with, among others, the expert

10 report of Dr. Donald Pinshen.  You will see, Your Honor -- and

11 I have highlighted it, I have marked-up this document with my

12 own highlighting -- that Dr. Pinshen submitted expert reports

13 on product identification for many of these claims which we had

14 objected to, and they are noted, again, in yellow, and I'm not

15 going to read them all in the record.  And so before Dr. Lee

16 ever submitted his report, Speights & Runyon and Dr. Pinshen

17 knew we were objecting on product identification grounds to

18 these claims and Pinshen filed reports with respect to all the

19 ones I've highlighted here.  I should have counted up the

20 number, Your Honor.  I don't know whether it's 20 or 22 or --

21 but it's most of the claims, and so a suggestion that something

22 was done or not done in reliance upon the specific subsection

23 of a C objection isn't entirely accurate because clearly they

24 had their expert file product I.D. reports on these claims.

25       On January 17, 2007, under the Court's case

1 management order, we had to file our expert report.

2                          (Pause)

3          MR. RESTIVO:  As a result of the hearing over the

4 last two days, the Court is well aware of the fact that Dr.

5 Richard Lee filed a report on that date.  I have handed up to

6 the Court and to counsel Appendix B of that report, and I have,

7 again, highlighted those claims we are talking about in which

8 Dr. Lee reported on either insufficient information, wrong

9 components, insufficient -- not a Grace product.  Most of those

10 -- I haven't done a check -- are not different than the ones

11 Dr. Pinshen filed a report on.  And so based both upon the

12 Pinshen report and the Lee report, clearly these claims were

13 objected to on product identification, and everyone knew it.

14          It is true, as Mr. Speights concedes, that on

15 February 14 Bud Fairey of Speights & Runyon took the deposition

16 of Dr. Lee, had Dr. Lee's report.  He started at 9:05.  He

17 ended at 1:36 p.m.  We took a 45 minute lunch break.  And Dr.

18 Lee was available to answer any questions about any claims in

19 his report.

20          On March 14, 2007, my partner, Mr. Cameron, took the

21 deposition of Dr. Pinshen.  Mr. Cameron generally examined Dr.

22 Pinshen about his reports, all of which are basically the same,

23 the only difference is the building, and specifically

24 questioned Mr. Pinshen about building Numbers 12309, 12314,

25 12368, 12395 and 12396, all covered by what Mr. Speights is

1 talking about.  So, again, everyone knew these buildings were

2 in play.

3            Lastly, Your Honor --

4                      (Pause)

5            MR. RESTIVO:  -- Mr. Speights made reference to

6 discovery that he served.  He correctly stated he did not serve

7 this discovery for these buildings.  I have handed up to the

8 Court and highlighted what the discovery was like as to each

9 building, and I think it's true that the questions were the

10 same.  Just the building was different.  I don't believe with

11 respect to the Canadian buildings there was any difference in

12 the questions.

13            If Your Honor turns to Page 8, you will see that

14 there is a single, relatively simple question, "Do you contend

15 that Grace did not manufacture any asbestos-containing material

16 installed in the building, and, if so, tell us why you say

17 that."  As a result of the Dr. Rich Lee report, they already

18 have this information, and so there's been no intentional

19 waiver of a product I.D. defense.  Indeed a product I.D.

20 defense, in fact, was raised and listed.  I concede a

21 subcategory of that defense may not have been updated, but

22 product I.D. as a defense was raised.

23            My suggestion for moving this forward is that we

24 would, by the end of next week, answer Interrogatory Number 5

25 that says they already know the information, but we'll put it

1  in an interrogatory answer, that we contend that this is not a

2  Grace product and, if so, why.  We will tell him what the Rich

3  Lee bulk samples show and why we say that.  I think that has

4  the same effect of filing more paper to amend what at this

5  point is kind of a stale objection because it deals with so

6  many claims.  And we will have a piece of paper that, in

7  effect, answers his interrogatory, which, again, wasn't served

8  on these buildings, so that we have a record of what our

9  objection is on these 26 claims, and then we ought to try those

10 26 claims.

11        Mr. Speights and I -- if I'm correct, we haven't

12 intentionally waived an objection -- believe that can be done

13 in one day.  Mr. Speights and I talked about, if we haven't

14 waived, taking one day on May 7, May 8 or May 9.  The Court

15 observed yesterday, and my partners subsequently observed to me

16 after the hearing, that it might be time for a breather.  We're

17 all going pretty hard.  I had mentioned that to Mr. Speights

18 this morning.

19        And so assuming we haven't intentionally waived a

20 product I.D. defense because we didn't put in the C-1

21 subcategory, my suggestion is we take either May 30 or May 31,

22 which right now I think we have set aside for the no hazard

23 hearing, but the scheduling of no hazard and we're going on

24 that, subject to rulings on summary judgment, are all going to

25 be a subject for discovery on May 2, I believe it is.  And so

1  debtor's suggestion is that we not attempt to cram into May 7,

2  8 or 9 one day of product I.D. trial on these 26 buildings,

3  that instead we take either the 30th or the 31st, which long

4  ago was set aside for no hazard, but events have kind of caught

5  up with us and my guess is we're not going to do no hazard on

6  that date, and handle product I.D. of whatever is remaining on

7  these 26 buildings.  And, again, Mr. Speights and I have agreed

8  we're going to use the same process we've already used, so

9  hopefully there won't 26, but, whatever there is, we try it in

10 one day after we create a piece of paper that creates a record

11 as to why they don't have sufficient evidence that it's a Grace

12 product in these buildings.

13        THE COURT:  Mr. Speights?

14        MR. SPEIGHTS:  I'm not going to respond to Mr.

15 Restivo's argument about what we could do if Your Honor does

16 not agree with my position, because I think my position, first

17 of all, is absolutely correct, but number two is I still don't

18 think there's an objection before Your Honor.  I really don't

19 think we have a waiver issue here.  I think we have a no

20 objection issue.

21        Now, if they filed a motion and sought to amend their

22 objection, then I might well come in and say they waived that,

23 but as we sit here there's no product I.D. objection, and what

24 I've heard is -- and I want to -- and I want to deal with why

25 there is no product I.D. objection in just a second -- but what

1  I really heard was Mr. Restivo say that somebody just messed

2  up.  Well, I've messed up a few times in my life.  No lawyers

3  are perfect.  My question would be, well, when did they

4  discover they messed up?  And if that happened a year ago or

5  six months ago or three months ago, it was incumbent upon them

6  at that time to file a motion to say, Your Honor, we messed up,

7  let us add these objections.  And that's not before Your Honor.

8         Then Mr. Restivo suggested that somehow the fact that

9  on maybe some of these claims they filed C-1 and C-2 objections

10 that might bootstrap -- I won't use the word ratify -- that

11 might bootstrap the product I.D. objections.  Well, C-1 and C-2

12 were not product I.D. objections.  They were documentation

13 objections, and if they want to argue documentation objections

14 they can put that down.  I assume that they filed documentation

15 objections.  In fact, I believe on all of these, or almost all

16 of them, the product I.D. was attached to the initial -- to the

17 initial claim and was not -- did not -- was not buried in all

18 these other documents that Mr. Restivo suggested came in later.

19        But what's really telling to me, Your Honor, is in a

20 pleading filed very recently that Your Honor apparently now is

21 going to hear on May 2 -- I just have one copy of it, but I'll

22 share it with Mr. Restivo -- the debtors have filed a motion

23 for order concerning the amendment or supplementation of

24 asbestos PD claims.  They want to -- the debtors want to enjoin

25 property damage claimants from further amending their claims in

1 this bankruptcy, and Your Honor has issued an order shortening

2 the time to respond, and I believe the committee has filed a

3 response and that's coming up at the May omnibus.  But attached

4 to the motion that the debtors filed, presumably Kirkland &

5 Ellis, was a proposed order, and in the proposed order, in

6 Paragraph 2, which after I show it to Mr. Restivo I'll hand up

7 to the Court, in Paragraph 2 -- Paragraph 1 is the motion is

8 granted, and Paragraph 2, asbestos PD claimants and their

9 counsel enjoined from amending or supplementing asbestos PD

10 claim forms and/or the related supporting documentation in any

11 way that is related to or has any bearing on adjudication of

12 debtors' objection in the fifteenth omnibus objection based on

13 product identification, and here's the key, (Categories C-3A

14 through F).

15       The debtors -- and I understand Mr. Restivo inherited

16 this problem.  The debtors acknowledge to you that product I.D.

17 objections are what Speights & Runyon and other claimants say

18 they are.  They are C-3A through F objections and not C-2F

19 objections, which Grace is now attempting to use to bootstrap

20 PID (sic) objections in this case.  Do you want to see that?

21       THE COURT:  Somewhere in this record, but I don't

22 recall where, is a copy of the fifteenth omnibus.  Does anyone

23 happen to know where?  Was it in the -- I don't know if it was

24 in the State of California or was it in the Grace supplemental

25 binder?

1          MR. CAMERON:  I --

2          THE COURT:  It was --

3          MR. CAMERON:  I think, Your Honor, what you're

4   recalling is I think the State of California's response to the

5   fifteen omnibus objection is in the bound volume --

6          THE COURT:  Oh.

7          MR. CAMERON:  -- you're looking at there.  I don't

8   believe that the fifteenth omnibus objection itself is there.

9          THE COURT:  I have it printed somewhere.  I don't --

10  I just wanted to see what the categories were because I just

11  don't recall and I don't have it here in front of me to see it.

12  Do we -- does anybody have a copy of it with them?

13         MR. RESTIVO:  Your Honor --

14         MR. SPEIGHTS:  I have it on --

15         MR. RESTIVO:  I have --

16         MR. SPEIGHTS:  -- the computer, but I don't have a

17  hard copy.

18         MR. RESTIVO:  I do have a copy.  There are some

19  stickers on it and there is some highlighting on it, but I

20  don't know why I highlighted it, so that won't -- if you ignore

21  my highlighting and the stickers --

22         THE COURT:  Would you show it to Mr. Speights?  I

23  just want to -- all I want to do is see the categories, Mr.

24  Speights.  If there's nothing offensive to you in my looking at

25  Mr. Resivo's copy, that's all I'm trying to take a look at.

1          MR. SPEIGHTS:  Number one, I don't have a problem

2    with Mr. Restivo's highlighting, okay.  Apparently what he has

3    is a copy of the omnibus objection without the attachments.

4          MR. RESTIVO:  No, because --

5          MR. SPEIGHTS:  Right, I understand --

6          MR. RESTIVO:  (indiscernible; simultaneous speech)

7    more than just --

8          MR. SPEIGHTS:  So, I have no problem with Your Honor

9    looking at it for what it is.

10          THE COURT:  It's not going to show me the categories,

11    though --

12          MR. SPEIGHTS:  Well, I think it does discuss the

13    categories, but I think also the categories are shown on the

14    attachments as well.  So it's incomplete, but I --

15          THE COURT:  As long as it --

16          MR. SPEIGHTS:  Your Honor has available to you --

17          THE COURT:  As long as it tells me the categories,

18    that's the part that I'm -- I don't care whether it's the

19    categories by the chart or the categories by the objection.  I

20    just want to know what the categories are because I don't have

21    a recall of the categories.

22          MR. RESTIVO:  Your Honor, I believe it does show

23    categories.  It looks like what -- some of my highlighting

24    appears to be categories dealing with C.  I starting

25    highlighting on Page 21.  I'm not suggesting that's where you

1  have to look, but I think the -- what you're looking for is

2  somewhere around Page 21 --

3          THE COURT:  All right.

4          MR. RESTIVO:  -- Paragraph 51.

5          THE COURT:  If I could just borrow it for a minute,

6  please?  Thank you.

7                     (Pause)

8          THE COURT:  No, I think Mr. Speights is correct from

9  this, that it is Category C-3 that talks about the fact that it

10 is lack of product identification in Category C-3.  In fact,

11 even the lead-in paragraph that's discussing the property

12 damage claims starting on Page 21, and then it picks up with

13 this again further, but if I just look, for example, at

14 Paragraph 51 that starts on Page 21, it says, "The PD claims

15 identified on Exhibits C-1 through C-3 fail to provide even the

16 most basic information needed to support an asbestos PD claim

17 and should be disallowed and expunged.  Specifically, the

18 claims listed on Exhibit C-1 are invalid because their proofs

19 of claim are facially incomplete.  Claims on Exhibit C-2 are

20 invalid because the claimant provided insufficient supporting

21 documentation, and claims on Exhibit C-3 are invalid because

22 the claimant failed to establish Grace product identification

23 for the building at issue."  And then it goes on, but at the

24 moment I want to pass that.

25          Then if you go down to Paragraph 71 that begins on

1  Page 27, that is where under Category 3 the Grace objections

2  start with respect to claims failing to identify a Grace

3  product and goes on at length with respect to a variety of

4  product identification problems that Grace picks out from there

5  for the next several pages.  So, I think Mr. Speights is

6  correct that this document does not identify the claims, unless

7  the chart then, which is not attached, does put these 26 claims

8  into Category C-3, and that I don't know because I don't have

9  the chart here.  But if the debtor is agreeing that these

10 claims are not listed on C-3, then I do not think that they're

11 identified in the fifteenth omnibus as having been objected to

12 based on product identification.  Kathy, would you give this

13 back to Mr. Restivo, please?

14         MR. RESTIVO:  Your Honor, insufficient information

15 under C-2 I think is broad enough to cover you haven't proven

16 product identification.  But in answer to the Court's question,

17 by my notes, I believe the objections listed on the attachment

18 to the fifteenth omnibus objection were C-2 objections.  We're

19 not contesting that.  We are not saying they were C-3

20 objections.  I don't have the document, but they were C-2

21 objections.

22         THE COURT:  Okay.

23         MR. SPEIGHTS:  And, Your Honor, not only has Your

24 Honor indicated agreement with me on that point, Your Honor has

25 indicated an agreement with Grace on that point because, as I

1 was saying, that's exactly what they have said to you in the

2 last week or two in the motion before the Court.  Does Your

3 Honor want a copy of this proposed order?

4        THE COURT:  No, I don't need that order, Mr.

5 Speights.  I haven't even seen the motion yet, so -- I know

6 it's been filed.  I just haven't seen it yet.

7        MR. SPEIGHTS:  Well, it's a matter of record, and

8 that's the correct position, because, as Your Honor said, in

9 essence C-1 and C-2 were gateway-type objections and the rest

10 were product I.D. objections.

11        The only other point I want to make, Your Honor,

12 because I think it's clear and unmistakable and undisputed that

13 there were no product I.D. objections to these claims and still

14 are no product I.D. objections to these claims, is a statement

15 about serving reports in connection with Canada, Dr. Pinshen.

16 Clearly in December 2003 in response to -- 2006 in response to

17 a deadline, my office filed a bunch of reports, which were

18 attached to the claim form.  I think our discovery went out in

19 February, and clearly in conducting our discovery perhaps it

20 was then that we realized that these had not -- objected to or

21 whatever.  We conducted our discovery both in written discovery

22 and in Dr. Lee's deposition and in responses to our motions for

23 summary judgment, et cetera, based upon what the objections

24 were, and they did not object to product I.D., and I think,

25 again, our position is absolutely correct.  Thank you, Your

1  Honor.

2       MR. RESTIVO:  I would note, Your Honor, that in the

3  case management order at Paragraph 2 where the Court is talking

4  about specific objections to PD claims and when they will be

5  adjudicated, the second sentence says, "The objections that

6  will be adjudicated as to these PD claims are those asserted in

7  the fifteenth omnibus objection regarding product

8  identification and limitations period -- periods (specifically

9  C-1 through C-4, D-1 through D-6, F-1, F-4 and F-5."  D and F I

10  think go to statute of limitations.  It's -- I think there's a

11  fair inference in that order that -- in that paragraph -- that

12  when we were talking at that time about product identification

13  we were talking about specifically C-1 through C-4.

14       THE COURT:  Oh, I don't disagree, Mr. Restivo.  I

15  think the issue is really due process issue.  I mean, the

16  problem with the omnibus objections, especially the fifteenth,

17  is what you pointed out earlier.  It did try to encompass

18  within it thirty-two hundred claims, and it was the method by

19  which -- or whatever was left of the thirty-two hundred --

20  forty-two hundred, actually -- claims.

21       MR. RESTIVO:  Thirty-nine hundred and fifty were left

22  at the time, Your Honor.

23       THE COURT:  And the problem was that the debtor

24  wanted to do -- I'm not sure it's a problem.  The structure was

25  that the debtor wanted to do the gateway objections first so

1 that it could winnow down the host of claims to a manageable

2 number that would actually have to be litigated, and that made

3 perfect sense.  It still makes perfect sense.

4        The difficulty in doing that is that you have to give

5 notice to the specific claimants who are actually going to be

6 faced with litigation as to what the nature of the objection is

7 so that they can prepare for trial, and that's what I was

8 attempting to get the debtor to do.  That's the reason I forced

9 the categories on the debtor in the first place, because it

10 seems to me that the Delaware local rule is you can -- you must

11 put everything in to one objection so that claimants have to

12 face this issue only once.

13        I was willing, under the circumstances of this case,

14 to bifurcate that process.  I think it makes sense to bifurcate

15 the process, but there has to be a reasoned and principle way

16 to do that so that claimants are not forced to come back before

17 the Court too many times and at the same time the debtor has an

18 opportunity to do something logically to get the case moved

19 from A to Z.

20        I thought this was the way to do it, but in the

21 process the claimants still have a right to know what the

22 debtor is objecting to, and putting something into a category

23 that says you haven't given us enough information is not -- on

24 the documentation side is not necessarily the same thing as

25 saying, and, oh, by the way, regardless of your documentation,

1 we're going to trial on product I.D.  Yes, they can be the same

2 thing, but they're not necessarily the same thing, and I think

3 there is a problem.  Otherwise, the debtor wouldn't have two

4 specific categories for that.

5         MR. RESTIVO:  My suggestion, Your Honor, on the due

6 process concerns, although my argument is they clearly

7 understood of objection because of the Pinshen report, and

8 maybe I'm trying to make things too simplified and too easy, is

9 to, in effect, answer the interrogatories that they sent on

10 product I.D., because we're going to have a statute of

11 limitations question --

12         THE COURT:  But there's no objection raised.  If you

13 haven't raised a C-3 objection -- I think Mr. Speights is

14 correct, if you answer the interrogatory, there's still no

15 objection, and that means, as a matter of bankruptcy law, that

16 the prima facie proof of claim is allowed.  So, I think the

17 debtor has to do something to raise an objection, and, you

18 know, the concept that you're going to force somebody forever

19 not to amend an objection, at a certain point in time I think

20 you're going to cut off objections because that's what the law

21 says.  The debtor has to get out of bankruptcy, and to do that,

22 you're going to cut off objections, and at some point in time

23 you're going to cut off proofs of claim for the same reason.  I

24 think the debtor needs to do something to get these objections

25 raised.  I really do think it's a due process matter.

1          MR. RESTIVO:  Then I guess my next suggestion is we

2  will file, by the end of next week, an amended fifteenth

3  omnibus objection.  I'll talk to --

4          THE COURT:  Well --

5          MR. RESTIVO:  -- co-counsel as to whether that's an

6  amended fifteenth or whether we make it the --

7          THE COURT:  Well --

8          MR. RESTIVO:  -- eighty-fifth objection.  I --

9          THE COURT:  Yes, I would -- if Mr. Speights doesn't

10 object to this process, rather than trying to amend the

11 fifteenth, which involves notice to a host of people -- you're

12 dealing with 26 claims.

13         MR. RESTIVO:  Correct, Your Honor.

14         THE COURT:  It would seem to me that as a matter of

15 logic, Mr. Speights is going to have the same objections.

16 Whether you call you this, you know, a brand new objection to

17 claim -- 26 claims of the Speights & Runyon claimants or

18 whether you call it an amended fifteenth objection, his

19 responses will be the same.  Mr. Speights, would you have an

20 objection to the debtor just filing an objection to your

21 clients' claims, whatever they're going to be, without waiving

22 any arguments that you may have raised if this were called an

23 amended fifteenth, so that we don't have to give notice to all

24 of those other folks who really don't care about what the

25 objections to your clients' claims will be?

1        MR. SPEIGHTS:  I don't care what the debtor calls it,

2   Your Honor.  Of course, I take the position it's too late.  But

3   whatever they call it -- they can call it whatever they want to

4   tee it up.  I'm the one who said they need to tee it up

5   somehow.

6        THE COURT:  Yes, I just think, you know, we're just

7   going to cause mass confusion and a whole host of additional

8   expenses to have to notify hundreds more people when it's just

9   not necessary when you're dealing with 26 of Mr. Speights's

10  clients.

11       MR. RESTIVO:  We will do that, Your Honor.  And I

12  think he's argued his objection.  I appreciate that his

13  technical argument is it's not time for argument until we file

14  the motion.  I'm wondering whether or not if we file this

15  motion -- he knows what his arguments are, we know what they

16  are -- we can have this argument on May 2 or whether we have to

17  lose more time.

18       THE COURT:  I think I understand the arguments.

19  Unless there's something else you want to brief on the subject,

20  I'm okay with doing it whenever you want to do it, or if you

21  want to use that May 7th date, I don't know how -- May 2, Mr.

22  Restivo, is going to be a very jumbled and jammed day because I

23  have all of my Delaware cases that day.  So if you really do

24  need an argument day, May 7, since it's free, may be a better

25  time, and it can be by phone.  It's just an argument.  Both of

1 you can appear by phone.  You don't need to be here for that

2 purpose.

3         MR. SPEIGHTS:  Well, first of all, Your Honor, I am

4 going to be here on May 2, so my only question is when will the

5 debtor file its motion, whatever it's called, and then let me

6 think from there.  You would think that I have thought of all

7 the arguments and Mr. Restivo has thought of all the arguments,

8 but by the time he runs it through that maze of great lawyers,

9 they may have some things in the brief that he hadn't thought

10 of before, or I want to address, or we may have some factual

11 information in there.  I don't have any problem with expediting

12 the process.  I just don't know when he's going to file his

13 brief and how much time I'll have to deal with it.

14         MR. RESTIVO:  Well, I'm going to file an objection.

15 I don't intend to have much in the way of the law in it.  I'm

16 going to identify as a due process matter what our objections

17 are to the claims, and so, you know -- we know what the 26

18 claims are.  We know what the objections are.  It's simply a

19 matter of creating a piece of paper that makes sense.  If I

20 don't have it filed by Friday, I'd have it filed by Monday.

21         MR. SPEIGHTS:  Well, let me suggest this.  Why don't

22 -- if Your Honor could just put it down for status on May 2.

23 By then he will have filed it and I'll be able to say whether I

24 need some time for briefing or I'm ready to argue it on the

25 7th, whether I want to do it by telephone.  Just put it down

1  for status on May 2.  We're all going to be here anyway.

2         THE COURT:  Well, yes, because Monday is already

3  April 30th, so if it's not filed till Monday that doesn't allow

4  for any time for a -- and I do need a response to it.

5         MR. RESTIVO:  I will do my best to file it Friday or

6  Monday.  I appreciate Mr. Speights may need a little bit of

7  time to do a response and the Court may need a little bit of

8  time.  And we'll just see how it goes.  I don't want to push

9  this too fast.  The reason our side of the table is pushing is

10 that clearly, while we aren't there yet, we have gone with

11 assistance of the Court and all the parties from 620 down to

12 about 240.  Without any deadlines or things set, I truly

13 believe we would still be at 627, and so I think the process is

14 a healthy one and it forces myself and people like Mr. Speights

15 to actually talk about the 26 claims, and to the extent we can

16 get them off the board, we can do it.  And so that's why we're

17 pushing on our side for short deadlines, but --

18        THE COURT:  Well --

19        MR. RESTIVO:  -- there's only so many days in a week,

20 and I appreciate that.  We will file our amendment Friday or

21 Monday, and if you need more time and we can't argue it on May

22 2nd or the Court needs more time, we'll just deal with it.

23        THE COURT:  All right.  Well, so you understand, the

24 Third Circuit judicial conference is Monday and Tuesday, next

25 Sunday, Monday and Tuesday.  So, whatever you file Monday and

1  Tuesday I am not going to see.  So, I understand what your

2  objection is.  I think I understand what Mr. Speights' response

3  is going to be.  I doubt very much there are going to be any

4  surprises, but you're going to -- I'm going to be hearing about

5  it for the first time at whatever the status conference is on

6  Monday.  My staff will take a look at your -- at the pleadings

7  that are filed, and they'll give me notes, but this is one of

8  those instances where I am not going to have seen it in

9  advance.  So, I think it may be better to do a little status

10 report Monday and then tell me if you need an argument when you

11 prefer to do it.  I think the next omnibus is going to be May

12 22nd, after May 2nd.  So -- I think that's correct.  So we --

13            MR. RESTIVO:  I think that is correct, Your Honor.

14            THE COURT:  We have all kinds of choices for -- I

15 mean, you've got -- Grace has my life tied up for the next

16 three months.  So, you know, there are all kinds of choices of

17 dates to do this argument.  You know, pick one.  It's --

18            MR. RESTIVO:  That's all we have.  Thank you, Your

19 Honor.

20            MR. SPEIGHTS:  Thank you, Your Honor.

21            MR. CAMERON:  Your Honor, one question.  You

22 mentioned a status on Monday.  Do you mean a status on --

23            THE COURT:  On May 2nd.  I'm sorry.

24            MR. CAMERON:  Okay.  On May 2nd, okay.

25            THE COURT:  Yes.  All right.  So the objection will

1  be filed by Monday, Mr. Speights.  I'll put this on for status,

2  because I don't even know whether you will have a chance to

3  respond to it by May 2nd.  We'll just find out how much time

4  you need and what schedule makes sense.  But please, before

5  court on May 2nd, please do talk so that you do have a schedule

6  that you can propose.

7           MR. RESTIVO:  We will do so, Your Honor.

8           THE COURT:  All right.  Thank you.  We adjourned.

9  Thanks.

10                        * * * * *

11               C E R T I F I C A T I O N

12           I, DENISE M. O'DONNELL, court approved transcriber,

13  certify that the foregoing is a correct transcript from the

14  official electronic sound recording of the proceedings in the

15  above-entitled matter, to the best of my ability.

16

17  /s/ Denise M. O'Donnell

18  DENISE M. O'DONNELL

19  J&J COURT TRANSCRIBERS, INC.      Date: May 1, 2007

20

21

22

23

24

25