IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*[1], | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Re: Docket Nos. 9315, 15445, 15511** |
| | ) | |
| | ) | **Hearing Date: May 9, 2007 @ 3:00 p.m.** |
| | ) | **Objection Deadline: May 8, 2007** |

<u>**ANDERSON MEMORIAL HOSPITAL'S MOTION TO STRIKE DEBTORS'
UPDATED OBJECTION TO CERTAIN SPEIGHTS & RUNYAN
ASBESTOS PROPERTY DAMAGE CLAIMS**</u>

Anderson Memorial Hospital ("Anderson"), by and through counsel, Speights & Runyan

("S&R"), on behalf of the USA and Canada Claimants it represents, hereby moves the Court for

an Order striking Debtors' Updated Objections to Certain Speights & Runyan Asbestos Property

Damage Claims ("Updated Objections").

## I. INTRODUCTION

On April 13, 2007, the Debtors provided S&R with an amended list of claims which

would be the subject of the April 23-25, 2007 product identification trial. The list included 26

---

[1] The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgracc II, Ins., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B 11 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Anderson claims which were not subject to the Debtors' product identification objections.[1] Anderson promptly filed a Motion to Extend Deadlines.[2] The parties then agreed that, without prejudice to either side's position, those claims would not be tried at that time.

Anderson's Motion to Extend was heard by the Court on April 25, 2007. The Court agreed that the Debtors had not raised product identification objections to these claims and scheduled a status conference for May 2, 2007. The Debtors then filed their Updated Objections on Monday night, April 30, 2007.[3]

The Court conducted a status conference on May 2, 2007. At that time, S&R had not been served with the Debtors' Updated Objections (the Debtors chose to serve S&R by regular mail, which would not arrive until Friday, May 4, 2007). The Debtors requested an immediate hearing. S&R pointed out that it had not been served, but that it had received an e-mail the evening before indicating that the Debtors' had not filed a motion but Updated Objections. The Court made the following observation:

> THE COURT: All right. With respect to the waiver argument on May 7th, I can address that one. Mr. Restivo, I thought the debtor was going to be filing some motion that would get a response by Mr. Speights too. If that's not what's filed and I haven't seen it either, so if that's not what's filed then we have to start the process by a motion from Mr. Speights.[4]

At the time of the status conference, Anderson did not realize that the Debtors had not limited their Updated Objections to the 26 claims subject to Anderson's Motion to Extend. Nor

---

[1] *See,* Anderson Memorial Hospital's Motion to Extend Deadlines (April 13, 2007) at 3, n. 3. [Doc. 15172].

[2] *Id.*

[3] Debtors' Updated Objections to Certain Speights & Runyan Asbestos Property Damage Claims (April 30, 2007). [Doc. 15445].

[4] Hearing (May 4, 2007) at 107-108.

2

did S&R have any idea that the Debtors, in response to S&R's Motion to Extend product identification deadlines, had expanded its objections to other grounds as well. Only after it received the Debtors' Updated Objections did S&R learn that *Debtors had added, without prior Court approval, 127 new objections to approximately 63 claims on a host of grounds, including product identification and statutes of repose.*

Because of the short amount of time, S&R has not had a full opportunity to examine the details of the Debtors' Updated Objections. But S&R certainly knows enough to protest.

## II. ARGUMENT

### A.     The Debtors Have No Legal Right to Update Objections Without Prior Court Approval Following a Rule 15 Motion and the Showing of Cause

Rule 3007-1(f)(iii) of the Local Rules for the United States Bankruptcy Court for the District of Delaware provides that, "An Objection based on substantive grounds shall include all objections to each claim on substantive grounds. Under Fed. R. Bankr. 7015, an Objection can be amended."[5]  In turn, Rule 7015 of the Federal Rules of Bankruptcy provides that, "Rule 15 F.R.Civ.P. applies in adversary proceedings." Rule 15 of the Federal Rules of Civil Procedure provides that except in circumstances not applicable here,[6] "a party may amend the party's

---

[5]The rule goes on to provide an exception where "an Objection to a particular claim is based upon insufficient documentation and is deemed substantive by virtue of Local Rule 3007-1(d)(vi), and the claimant filed a response to the Objection and provided additional documentation or other information, then the Objection (solely as it relates to the claimant's additional documentation or other information) may be amended without written consent or leave of Court. Leaving aside that Debtors would bear the burden of proving the exception, in this instance, S&R does not believe that any of the objections at issue deal with additional documentation.

[6]The exceptions are that, "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served." In this case, S&R filed responses in 2005.

3

pleading only by leave of court or by written consent of the adverse party."[7]    The Debtors'

efforts to circumvent the Rules by simply filing Updated Objections should and must be stricken.

**B.**    **The Debtors Have Failed to Provide "New Information" as Required by this Court's Initial Case Management Order**

On August 29, 2005, the Court entered its initial Case Management Order for the

Adjudication of Asbestos Property Damage Claims Objections.[8]    The Court ruled, *inter alia,*

"This order shall be without prejudice to the Debtors' rights to file additional PD Objections

subsequent to the dates outlined herein *based upon new information.*"[9]    Not only did the Debtors

fail to file a Rule 15 motion and obtain permission to amend its Objections, but the Debtors have

not shown any information, much less "new information," in support of their Updated

Objections.    In fact, it would be impossible for the Debtors to meet the burden imposed upon

them by the Court because most, if not all, of their Updated Objections are based on product

identification evidence attached to the Claims and legal authorities upon which the Debtors rely.

**C.**    **The Debtors Have Failed to Move the Court to Modify the Court's Amended Scheduling Order Setting Various Deadlines**

On October 13, 2006, the Court entered its Amended Order Setting Various Deadlines

Regarding Objections to Asbestos Property Damage Claims ("Amended Scheduling Order").[10]

The Amended Scheduling Order listed those claims to be adjudicated in this objections

---

[7]Rule 15 also provides that "leave shall be freely given when justice so requires."    Again, it is the Debtors' burden to meet that standard.    They have not even attempted to do so in this case.

[8]Case Management Order for the Adjudication of Asbestos Property Damage Claims Objections (August 29, 2005) [Doc. 9300].

[9]*Id.* at 4 (emphasis supplied).

[10]Amended Order Setting Various Deadlines Regarding Objections to Asbestos Property Damage Claims (October 13, 2006) [Doc. 13120].

proceeding on Exhibit A attached thereto. The pretrial schedule for these objections was set forth in Exhibit B. The objections that the Debtors now attempt to insert into this litigation were not listed on Exhibit A. Consequently, they have not been subject to the litigation to date. If the Debtors wish to revise the Amended Scheduling Order, it is incumbent upon them to file a Motion. Again, the Debtors have no right to simply change this Court's Scheduling Order by filing unauthorized objections.

**D.**   **The Debtors Have Waived Their Right to Further Object to Claims**

On December 22, 2003, the Debtors filed their Motion of Debtors For Limited Waiver of Del.Bank.LR 3007-1 For The Purpose of Streamlining Objections to Certain Claims Filed Pursuant to the Bar Date Order ("Limited Waiver Motion").[11]   In their Motion, the Debtors specifically recognized the applicability of Rule 3007 and the fact that they would waive their objections if they did not comply with its provisions:

> Specifically, the Debtors request that this Court waive: (i) Local Rule 3007-1's limitations concerning the number of claims that may be subject to a substantive omnibus objection and (ii) the requirement in Local Rule 3007-1 that the Debtors file all substantive objections to a particular Claim in a single objection. Rather than raising all substantive objections with respect to each claim in the first instance, the Debtors seek authority to file initial omnibus objections to groups of claims according to certain "gateway" deficiencies, while maintaining their right to raise subsequent, substantive objections with respect to these claims.

> * * * *

> *If the Debtors were forced to comply with Local Rule 3007-1(f)(iii)* at this time (when they are uncertain as to the fundamental nature of many of the Claims), *the Debtors will likely waive valuable defenses and claims otherwise available.*[12]

---

[11]Motion of Debtors For Limited Waiver of Del.Bank.LR 3007-1 For The Purpose of Streamlining Objections to Certain Claims Filed Pursuant to the Bar Date Order. (December 22, 2003) [Doc. 4853].

[12]*Id.* at 1-2, 6 (emphasis supplied).

The Court granted the Motion at a hearing on March 22, 2004, and memorialized its ruling in a July 19, 2004 Order ("Limited Waiver Order").[13]  Notwithstanding the relief they obtained, however, the Debtors did not file their objections until September 1, 2005.[14]  Shortly thereafter, the Court entered its December 19, 2005 Modified Scheduling Order listing the specific objections and when they would be tried.[15]

Based upon the record before the Court today, the Debtors clearly have waived their right to further object to claims.  The Debtors have failed to amend their objections for almost two years.  The Debtors have failed to ask the Court to further modify the December 19, 2005 Modified Scheduling Order.  The Debtors have failed to seek an amendment to Exhibit A to the October 13, 2006 Amended Scheduling Order.  The Debtors have failed to explain why they did not move to amend their objections after S&R's March 19, 2007 responses to the Debtors' multiple Motions for Summary Judgment.[16]  The Debtors have failed to file a motion seeking the amendment to their objections after S&R filed its Motion to Extend Deadlines because of the

---

[13] Order Granting Limited Waiver of Del.Bankr. LR 3007-1 for the Purpose of Streamlining Objections to Certain Claims Filed Pursuant to the Bar Date Order (July 19, 2004) [Doc. 4853].

[14] Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims (September 1, 2005) [Doc. 9315].

[15] Modified Scheduling Order Regarding Certain of Debtors' Fifteenth Omnibus Objections To Claims (Substantive) (December 19, 2005) [Doc. 9315 and 9311].

[16] S&R filed four briefs in which it argued that the Debtors had failed to raise claim objections: Anderson Memorial Hospital's Response to Debtors' Motion for Summary Judgment Directed to 88 Claims from Canada Based Upon the Statute of Limitations (March 19, 2007) [Doc. 14898]; Anderson Memorial Hospital's Response to Debtors' Motion for Summary Judgment Directed to 9 Claims Based upon the Statutes of Limitation of Arkansas, Georgia, and Delaware (March 19, 2007) [Doc. 14904]; Anderson Memorial Hospital's Response to Debtors' Motion for Summary Judgment directed to 10 Claims from The State of New York (March 19, 2007) [Doc. 14894]; Anderson Memorial Hospital's Memorandum in Opposition to Debtors' Motion for an Order Pursuant to F.R.B.P. 7056 Disallowing and Expunging Claim Nos. 12315 and 12395 on Product Identification (March 19, 2007) [Doc. 14895].

Debtors' failure to file objections. Lastly, the Debtors have failed to file a motion seeking to amend objections after two recent hearings before the Court.

Simply stated, there is nothing in the record to refute this overwhelming evidence of waiver. If the Debtors had attempted to justify their inaction, S&R would have insisted upon a factual presentation, as opposed to lawyer talk. For all we know today, the Debtors may well have made a conscious decision not to pursue the objections they now want to add. Alternatively, for all we know, the Debtors may have discovered their failure to make certain objections months or years ago and decided that rather than bringing this omission to the Court's attention by an appropriate motion they would try and slip these objections into the proceedings under the radar screen. In any event, it is simply too late now for the Debtors to assert new objections.

**E.    The Debtors Cannot Meet their Burden Because They Are the Authors of Their Own Undoing**

At the time the Debtors filed their Petition for Reorganization, they filed an Informational Brief, in which they placed their spin on their substantial asbestos personal injury ("PI") and property damage ("PD") liabilities.[17] The Debtors' PD liabilities included filed and unfiled lawsuits on behalf of building owners with present claims for the recovery of costs associated with the abatement of the Debtors' asbestos-containing fireproofing and ceiling products ("Traditional PD Claims") and a new group of claims seeking relief in connection with the Debtors' asbestos-containing Zonolite Attic Insulation product ("ZAI Claims"). Although the Debtors then (and later) recognized that Traditional PD Claims are mature[18]–they hardly could

---

[17]The Debtors' Informational Brief (April 2, 2001) [Doc. 6].

[18]*Id.*

say otherwise inasmuch as before the bankruptcy, they had paid Traditional PD Claims approximately $800 million in judgments and settlements (more than they paid to all PI claimants)[19]– they emphasized (incorrectly) that at the time they filed their Petition, there were only seven such cases (*as distinguished from buildings or claims*) filed against them, and none had been filed since 1998.[20]  At the same time, the Debtors sabotaged any statute of limitations defense as to unfiled claims by unequivocally asserting that the cementitious products they manufactured do "not pose a health hazard."[21]

According to the Debtors, S&R's clients, Anderson and Pacific Freeholds, the owner of a large commercial building located at 100 Pine Street in San Francisco, California ("100 Pine"), were the only PD Plaintiffs actively engaged in discovery against the Debtors at the time of their Petition.[22]  In fact, Anderson and its counsel had invested millions of dollars in time and expenses litigating against the Debtors since late 1992, and the Debtors had repeatedly tried to get S&R to enter into an unethical bargain to settle Anderson as a class action even before the case was certified as to the Debtors in early 2001.[23]  Similarly, 100 Pine, which had executed a tolling agreement with the Debtors in 1988, vigorously litigated against the Debtors since 1998. Both Anderson and 100 Pine were seeking 2001 trial dates.

---

[19]*Id.*

[20]Upon information and belief, the Debtors conveniently "omitted" a Texas class action that had been filed against them in early 2001.

[21]Informational Brief at 61-62.

[22]*Id.* According to the Debtors, only three of these cases were active at the trial court level, and only a few days after filing their Petition, the Court dismissed the claims of one of these Plaintiffs against the Debtors' co-defendant.

[23]At that time, S&R would not settle with the Debtors because it believed it was unethical to do so in exchange for the Debtors' withdrawal of their attack on its adequacy. *See* Order (June 29, 2001); Transcript (September 5, 2000).

Notwithstanding the limited number of Traditional PD cases filed against them, the Debtors recognized that – as in all previous bankruptcies – there were an undefined number of unfiled Traditional PD Claims.  For that reason, the Debtors insisted upon a bar date and proof of claim form in an effort to extinguish those liabilities.  As the Debtors later admitted to the Court, "We've got seven cases and we've reserved on the seven cases.  And if we're only here to talk about the seven cases, we can probably resolve the seven cases.  The question is, what else is out there?"[24]  More recently, even the Debtors admitted that they expected a hundred or more such claims.

On June 27, 2001, the Debtors rolled out their first Case Management Motion for the disposition of all asbestos claims.[26]  Subsequently, the Court directed the Debtors to bifurcate their Motion between PI and PD, and on February 12, 2002, the Debtors filed their Revised Case Management Motion.[27]  In both their original and revised Motions, the Debtors proposed that the Court establish a bar date applicable to all present asbestos claims.    The Debtors then represented that sixty days after the Bar Date, they would provide the Court with a preliminary claims report ("Claims Report") in which they would identify: "(1) already pending cases that could continue to be litigated in other courts, subject to regular reporting to the court; (2) claims subject to statute of limitations defenses; (3) claims subject to *res judicata* defenses; and (4)

---

[24]Hearing (February 25, 2002) at 65-66.

[26]Motion for Entry of Case Management Order, Motion to Establish Bar Date, Motion to Approve Claim Forms, and Motion to Approve Notice Program (June 27, 2001) [Doc. 587];and Memorandum in Support of Motion for Entry of Case Management Order, Motion to Establish Bar Date, Motion to Approve Claim Forms, and Motion to Approve Notice Program and Memorandum In Support  (June 27, 2001) [Doc. 587].

[27]Revised Motion as to All Non-Asbestos Claims, Asbestos Property Damage and ZAI Claims for Entry of Case Management Order, Establishment of a Bar Date, Approval of the Proof of Claim Forms and of the Notice Program on February 12, 2002. [Doc. 1665].

9

claims subject to a *Daubert* motion, based upon the lack of a reliable scientific basis for the alleged product risk. Appropriate omnibus objections would be filed."[28]

On April 22, 2002, this Court entered its Bar Date Order requiring all Traditional PD Claims to be filed file their claims by March 31, 2003.[29]   S&R filed claims on behalf of Anderson and 100 Pine. In addition, S&R was retained by a number of other building owners, including the Board of Regents for the University of California and the California State University System (collectively "California Colleges"), and filed a large number of individual claims for their buildings. Finally, S&R filed Class Proofs of Claim and claims on behalf of members of the certified and putative classes on whose behalf it had filed its 1992 lawsuit. Even though another Bankruptcy Court had recognized Anderson and given it the maximum number of votes in connection with plan confirmation,[30] S&R took the extra precaution of obtaining an ethical opinion before filing these claims. As this Court knows, the ethicist told S&R that it not only had the right but a fiduciary duty to seek recovery for these building owners.[31]

Contrary to the relief it obtained, the Debtors did not file a Claims Report within sixty days of the Bar Date – indeed they never filed a Claims Report. (While S&R can hear the Debtors excusing themselves because there were more Traditional PD Claims than they had predicted, the reality is that there were far less asbestos claims than the Debtors had anticipated

---

[28]Memorandum in Support of Motion for Entry of Case Management Order, Motion to Establish Bar Date, Motion to Approve Claim Forms, and Motion to Approve Notice Program and Memorandum In Support (June 27, 2001) [Doc. 587] at 47.

[29]Order as to All Non-Asbestos Claims, Asbestos Property Damage Claims, and Medical Monitoring Claims: (i) Establishing Bar Date, (II) Approving Proof of Claim Forms and (III) Approving Notice Program (04-22-02) [Doc. 1963].

[30][TAB A].

[31][TAB B].

when they proposed this Claims Report because at that time they were going to report on hundreds of thousands of PI claims and perhaps even more ZAI claims). The reality is that for whatever reason – pursuing PI issues before Judge Wolin, trying to pass legislation, or other priorities -- the Debtors simply chose to abandon that process.

As noted above, on December 22, 2003, the Debtors filed their Limited Waiver Motion. According to the Debtors, at the time they filed their Limited Waiver Motion, there were 3950 traditional asbestos property damage claims against the Debtors.[32] Indeed, that was the Debtors' justification for the relief they sought. The Court granted the Motion at a hearing on March 22, 2004, and memorialized its ruling in its July 19, 2004 Limited Waiver Order.[33]

---

[32]Hearing (April 25, 2007) at 14.

[33]Order Granting Limited Waiver of Del.Bankr. LR 3007-1 for the Purpose of Streamlining Objections to Certain Claims Filed Pursuant to the Bar Date Order (July 19, 2004) [Doc. 4853]. The Court explained its ruling at a recent hearing as follows:

> THE COURT: . . . [T]he problem with the omnibus objections, especially the fifteenth, is what you pointed out earlier. It did try to encompass within it thirty-two hundred claims, and it was the method by which -- or whatever was left of the thirty-two hundred -- forty-two hundred, actually -- claims.

> MR. RESTIVO: Thirty-nine hundred and fifty were left at the time, Your Honor.

> THE COURT: And the problem was that the debtor wanted to do -- I'm not sure it's a problem. The structure was that the debtor wanted to do the gateway objections first so (28) that it could winnow down the host of claims to a manageable number that would actually have to be litigated, and that made perfect sense. It still makes perfect sense.

> The difficulty in doing that is that you have to give notice to the specific claimants who are actually going to be faced with litigation as to what the nature of the objection is so that they can prepare for trial, and that's what I was attempting to get the debtor to do. That's the reason I forced the categories on the debtor in the first place, because it seems to me that the Delaware local rule is you can -- you must put everything in to one objection so that claimants have to face this issue only once.

> I was willing, under the circumstances of this case, to bifurcate that process. I think it makes sense to bifurcate the process, but there has to be a reasoned and principle way to do that so that claimants are not forced to come back before the Court too many times

11

Additionally, in 2004, the Court directed counsel for multiple asbestos claimants to file Bankruptcy Rule 2019 Statements setting forth, *inter alia*, the basis of the representatives' authority to file multiple claims. Pursuant to this Order, S&R filed its 2019 Statement in late 2004, which specifically provided the Anderson putative class complaint as the authority for a number of its claims. In addition, S&R provided its retainer agreements for a large number of other claims, including its retainer agreements with the California Colleges for almost 1300 claims. S&R did not hide the ball.

In early 2005, S&R and the Debtors' in-house counsel met and worked out an agreement concerning S&R's claims. Although conspiracy claims apparently are not covered by this Court's Bar Date Order, S&R had filed a large number of claims, not only because they have been recognized and paid in other bankruptcies, but also because it wanted its claimants to be protected in the event that PI claimants would be paid without having to prove exposure to the Debtors' products. The Debtors' in-house counsel suggested and S&R agreed that the parties would enter into a Stipulation under which all of S&R's conspiracy claims would be "put on the shelf," which would dramatically reduce the issues in dispute. The parties would then engage in a process to reduce if not eliminate questions about the remaining claims (a process not unlike what S&R and Reed Smith would undertake two years later). Grace's in-house counsel drafted the Stipulation, and S&R returned it on March 17, 2005.[34] After not hearing back, S&R

---

and at the same time the debtor has an opportunity to do something logically to get the case moved from A to Z.

Hearing (April 25, 2007) at 28-29.

[34]TAB C.

12

followed-up on April 7, 2005.[35]  Unknown to S&R, the Debtors' outside counsel had changed the game plan and decided to repudiate this agreement and commence litigation against S&R.

On June 27, 2005, the Debtors served eight notices of depositions of Anderson claimants located all over America, providing as little as three days notice, for the ostensible purpose of challenging S&R's authority to file the claims.  S&R then filed a Motion for Protective Order, which under Delaware local rules, automatically stayed the discovery.  S&R suggested a meet and confer.

On July 13, 2005, S&R (Messrs. Speights, Runyan, and Solomons) met in Washington with the Debtors' counsel (Mr. Bernick and Ms. Browdy).  Mr. Speights explained that, as reflected in its 2019 Statement, S&R's authority to file a significant subset of our claims was the Anderson putative class.  S&R offered to stipulate the basis of its authority was for each of the deponents.  The Debtors had no choice but to accept that stipulation with respect to the eight claimants.  The Stipulation was executed,[36] but apparently the Debtors chose not to file it.  As a result, there were no S&R matters on the agenda for the July 19, 2005 omnibus hearing.  Mr. Speights told the Debtors that he was not going to be at that hearing because he was traveling to California for a long-standing vacation trip.

S&R then offered to make the same stipulation with respect to all of Anderson claims, to wit: S&R would provide the written authority that it had with respect to those claims and stipulate that Anderson was the basis of authority on many claims for which it did not have written authority.

---

[35]TAB D.

[36]Stipulation (July 13, 1005) [TAB E].

That very night after S&R's lawyers left Mr. Bernick's office, the Debtors prepared and filed a proposed CMO in the proposed estimation proceeding, which it emailed to the PD Committee Counsel (but not to S&R which was not a party to the estimation proceeding). In this brief, the Debtors stated that they were going to object to all of S&R's claims on the basis of lack of authority.

On July 19, 2005, at a hearing which S&R was not invited to attend, and while Mr. Speights was on his way to California, Mr. Bernick made an all out attack on S&R for approximately an hour. He based his argument on a Motion dated July 18, 2005 (the day before) asking the Court to allow it to challenge the authority of S&R to file all of its claims (even the 1300 California claims under contract and the claim on behalf of 100 Pine which S&R had been litigating against the Debtors for years before the Bankruptcy.)[38]   Many of Mr. Bernick's statements were demonstrably false, but, not surprisingly, the Court expressed concern regarding those uncontradicted charges.  As the Court knows, S&R then appeared at the August 29, 2005 hearing and made a full response to the Debtors' attacks.  S&R also joined in the Debtors' request to hear all the authority objections, and  Court then established a process for dealing with the authority objections.

While the authority objections proceeded down one track, the Debtors filed their Fifteenth Omnibus Objections on September 1, 2005.[39]  The Debtors objected to all PD claims, including Anderson's Class Proofs of Claim.[40]  Thereafter, on December 19, 2005, the Court

---

[38]Again the motion was for relief from Delaware local bankruptcy rule 3007-1 which requires all objections to be brought together and restricts objections to no more than 150 claims at a time.

[39][Doc. 9315].

[40]Under settled case law, the objection triggered Anderson's obligation to file a Motion to Certify. In re: American Reserve Corp., 840 F.2d 487 (7th Cir.1988); In re: Charter Co., 876 F.2d 866 (11th Cir.1989).

14

entered its Modified Scheduling Order Regarding Certain of Debtors' Fifteenth Omnibus

Objections to Claims (Substantive).[41]  The Court set forth a specific schedule for resolving the

PD objections (modifying a previous scheduling Order entered by the Court on November 10,

2005).  Under this Order, product identification and statute of limitations objections would be

heard beginning January 26, 2006.  The Court specifically ruled that:

> ORDERED that if any claim in respect of which an Objection is heard pursuant to this
> Order is subject of an additional Objection(s) as set forth in the Fifteenth Omnibus
> Objection, such additional Objection(s) shall be set for hearing by a future scheduling
> order, provided, absent consent of the claimant, no claim, other than potentially an S&R
> claim [dealing with the authority objections], *shall be subjected to more than two*
> *hearings on Objections thereto*;[42]

By January, 2006, it was abundantly clear that the Debtors had engaged in serious

overreaching and had drastically overstated their lack of authority objections.  First, the Court

rejected the Debtors' authority objections to over 1300 claims where S&R had written retainer

agreements as reflected on the December 2019 Statement (including one S&R claimant who had

been litigating against the Debtors for a number of years).  Second, S&R quickly withdrew

approximately 1500 conspiracy claims which it had previously agreed to "put on the shelf" in a

Stipulation with the Debtors in-house counsel.  Third, the Court dismissed those claims where

S&R's sole authority was the filing of the Anderson putative class action – the same group of

claims that would have been the subject of the Stipulation S&R offered to enter into with the

Debtors so that matter could have been resolved months earlier with substantial savings of time

for the Court, the Debtors' estate, and the claimants.  Finally, the claims were reduced because of

an accounting error which the Debtors revealed in January, 2006:

---

[41][Doc. 11408].

[42]*Id.* at 3-4.

One thing is we actually have fewer claims than we thought we did because if we have 20 California claims that have been supplemented twice, those may be in our files as reflecting as many as 60 claims. So one thing we need to do is go back retrospectively and fix that, find where the duplicates are or the amendments and collapse them down so, for example, if there's three claims numbers given to a single property, we want to collapse those down, get rid of two of the claims and have it all under one and hopefully we can come up with a mechanism and do this by agreement of counsel and get that in place.[43]

Notwithstanding these developments, however, the Debtors have continued at almost every hearing to claim credit for what happened more than a year ago – before commencement of the litigation on the Fifteenth Objections – which could have been accomplished by shortly after the bar date (S&R does not recall the Debtors ever announcing how many claims have been at issue since the present litigation began in October 2006). The point with respect to the present Motion is that if the Debtors have in any way been overwhelmed by this process, it is a direct result of their own creation, and that in any event, the Debtors have known since at least January 2006 that they were really dealing with a discreet group of objections. Nevertheless they chose to go forward with their same game plan after the mediation did not result in a consensual plan . Specifically, until the last week, after being exposed by S&R, the Debtors never suggested any amendments to their 2005 objections.

Moreover, on August 31, 2006, at the Debtors' request, the Court changed the proceeding from an estimation to claims objections and directed that the Scheduling Order be served on all PD claimants. Thereafter, on October 13, 2006, the Court entered its Amended Order setting various deadlines regarding objections to asbestos property damage claims. While S&R has expressed serious reservations about this process, the Debtors, who chose objections over estimation, cannot be heard to complain or to unilaterally change the rules.

---

[43]Hearing (January 26, 2006) at 6-7.

**F.    Permitting The Debtors to Litigate Updated Objections Would Be Prejudicial to Claimants**

Because the Debtors have not attempted to justify their efforts to add 127 objections, S&R should not have to explain all the reasons why such a process would result in substantial prejudice to S&R's claimants.    Indeed, it would be unreasonable to force S&R to make a showing, not only because the burden rests with the Debtors, but also because it was served with the Debtors' Updated Objections only one business day before its brief is due and has not had adequate time to review exactly what objections the Debtors are attempting to make in light of the historical record in this case.    In the event that the Debtors should ever overcome all of the obstacles they face in order to amend their objections, S&R reserves the right to file a detailed memorandum of the prejudice it would suffer if such relief is granted.[44]

DATED: May 7, 2007

Christopher D. Loizides (#3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728

SPEIGHTS & RUNYAN
Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed ID No. 6101)
200 Jackson Avenue, East
Post Office Box 685
Hampton, SC 29924
Telephone: (803) 943-4444
Facsimile: (803) 943-4599

Counsel to Speights & Runyan

---

[44]As S&R has explained at previous hearings, it has been fully engaged in discovery and motions practice based upon the objections that the Debtors filed.  In the event that the Debtors obtain relief, S&R would have no choice but to move to reopen discovery, modify the Case Management Order to permit briefing, and file Motions for Protective Order as to any outstanding discovery.

17