# TAB B

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Case No. 01-1139 (JJF) |
| | ) | (Jointly-Administered) |
| Debtors. | ) | |

**AFFIDAVIT OF JOHN P. FREEMAN**

PERSONALLY APPEARED BEFORE ME, John P. Freeman, who deposes and states:

1. I am the Campbell Professor of Business and Legal Ethics at the University of South Carolina Law School. I am a member of the Ohio and South Carolina Bars.

2. Following graduation from the University of Notre Dame, Law School in 1970, I worked at the Jones, Day, Reavis and Pogue Law Firm (then known as Jones, Day, Cockley, and Reavis). I left Jones, Day in 1972 to take a fellowship at the University of Pennsylvania Law School's Center for Study of Financial Institutions. I subsequently received my LL. M. from Penn Law School. In 1973, I joined the faculty of the University of South Carolina Law School. Besides teaching at USC, I have taught at the University of Texas Law School and Loyola Law School in Chicago. I have also worked for the Securities and Exchange Commission as a special counsel. As a law professor I have specialized in business courses and legal ethics. I have taught Legal Ethics at USC Law School, at numerous Continuing Legal Education Programs, and at several Judicial Continuing Legal Education Programs. I have lectured on the topic of Attorney-Client Privilege to Lawyers at CLE programs numerous times. I am familiar with Lawyer disciplinary proceedings, having participated in the litigation of discipline cases as a lawyer and as an expert witness on various occasions. I have served as a member of the South Carolina

Bar's Ethics Advisory Committee and have written various Ethics Opinions published by the Bar. I have taught Legal Ethics for over twenty-five (25) years at USC Law School. I have lectured on the standards of attorney conduct many times, and have written extensively about this topic. I have served as an expert witness on such issues as class actions, attorney ethics, attorney standard of care, agency principles, and the behavior of class counsel. A copy of my resume is attached as Exhibit 1.

3. As an attorney, I have brought and prosecuted complex cases, including class actions. I have also opposed class actions as counsel for defendants. I have settled class action law suits, and I have tried class actions and handled appeals of same. I have testified in various class actions as an expert witness, including asbestos-related class actions such as Georgine v. Amchem Products, Inc., 878 F.Supp.716, vacated, 83 F.3d 610 (3d Cir.1996); aff'd sub. nom., Amchem Products, Inc., et al. v. Windsor. 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d. 689 (1997) and Anderson Memorial Hospital v. W. R. Grace & Co., et al., Case No. 92-CP-25-253 (Ct. Com. Pleas, Hampton, South Carolina). From 1970-the Present, I estimate that I have spent over 10,000 (ten-thousand) hours in dealing with class actions, either as legal counsel for the class, as counsel for a class action defendant, or as an expert witness in connection with settlement, ethical or fee issues.

4. Prior to filing claims in the Celotex Bankruptcy, Dan Speights of Speights & Runyan consulted me regarding whether it was appropriate for his law firm as Anderson class counsel to file claims in the Celotex Bankruptcy proceeding on behalf of those non-South Carolina members of the putative class whose claims had been stricken by the lower Court based upon its interpretation of the South Carolina Door Closing Statute in an interlocutory Order

2

which had not yet been appealed. I advised Mr. Speights that not only was it appropriate for him to file such claims, but that, in my opinion, he had a fiduciary duty to do so in order to protect putative class members' interests.

5.    In 1998, I was retained by Anderson Memorial Hospital through the Law Firm of Speights & Runyan to thoroughly review the record in the <u>Anderson</u> case and other pending cases and to give my expert opinion on the adequacy of Speights & Runyan to serve as class counsel and the adequacy of Anderson Memorial Hospital to serve as Class Representative.

6.    As part of my preparation and review, I interviewed members of the Law Firm of Speights & Runyan, and reviewed hundreds of documents including pleadings, correspondence, affidavits, and court orders, including documents not just from the Anderson Memorial matter, but also generated in other matters including, <u>In Re: Celotex Corporation and Carey Canada</u>, Consolidated Case Nos.:90-10016-8B1 and 90-10017-8B1 (Asbestos Bankruptcy); <u>In re: National Gypsum Co.</u>, Case No. 390-37213-SAF-11(Asbestos Bankruptcy); <u>In re: Schools Asbestos Litigation</u>, Master File No. 83-0268 (E.D.Pa.) (Asbestos property damage class action); and <u>Central Wesleyan College v. W. R. Grace & Co., et al.</u>, C/A No. 2:87-1860-8 (D.S.C.) (Asbestos property damage class action).

7.    As part of my assignment as an expert witness in the <u>Anderson</u> case, I was asked to review a specific charge raised by attorney's for W.R. Grace and the other defendants in the Anderson action who were attacking the adequacy of counsel and Anderson as a class representative. These parties, led primarily by the Grace and its Counsel, claimed *inter alia* that Speights & Runyan was unfit to serve as class counsel because they had allegedly filed claims in the Celotex Bankruptcy on behalf of putative class members without authority and in dereliction

3

of Federal Rules of Bankruptcy and the Orders of the Bankruptcy Court. After extensive review of the facts, the law, and the Orders of the Bankruptcy Court in the Celotex matter, I came to the conclusion that the allegations were utterly unfounded and unsupported by the record.

8. More specifically, I came to or reaffirmed the following conclusions or opinions[1]:

- As class counsel for a putative class action that had not been certified, Speights & Runyan had a fiduciary duty to putative class members to protect their claims and prevent them from becoming extinguished in the Celotex Bankruptcy.

- At the time the bar date was set in the Celotex matter, the Anderson Memorial Action was pending and the fiduciary duties of Speights & Runyan had attached.

- By filing claims in the Celotex Bankruptcy matter on behalf of Anderson Memorial Hospital and all putative class members, Speights & Runyan fulfilled its fiduciary duty and duty of loyalty to the absent class members.

- Had Speights & Runyan not filed a claim through Anderson Memorial Hospital on behalf of all building owners known to counsel for Anderson to have a claim, they could well have been subject to charges of malpractice and breach of fiduciary duty. Based on my extensive experience as an expert in the duty of care owed by class counsel, I believe such a claim would have presented a genuine issue of material fact for a jury in a legal malpractice case in South Carolina.

---

[1] Since my opinions were rendered in September of 2000, I have learned that through the efforts of Speights & Runyan fifty-three (53) putative class members have had asbestos property damage claims allowed by the property damage claims administrator in the Celotex Bankruptcy and in accordance with the Celotex Plan of Reorganization in the amount of $274,515,457.37, resulting in a judgement against the Celotex Asbestos Settlement Trust of over thirty-one million ($31,000,000) dollars with interest, all for the benefit of putative class members. Had Speights & Runyan not acted to protect these claims, the claimants would have received nothing and their claims would have been barred.

4

- That through the action of Speights & Runyan as class counsel and Anderson Memorial as class representative, many building owners who had not filed individual proofs of claim prior to the bar date in the Celotex matter were nevertheless allowed to participate through the representation of Speights & Runyan and Anderson Memorial Hospital. Had Speights & Runyan not acted to preserve the claims of these building owners, they would have been extinguished. It was and is my opinion that the action of Speights & Runyan in preserving these claims was required by the applicable standard of care and the fiduciary duty owed by Speights & Runyan as class counsel to a putative class.

9. These facts and opinions were expressed by me under oath and in open court subject to cross examination by Grace's Counsel at the Evidentiary Hearing on Class Certification in <u>Anderson Memorial Hospital v. W. R. Grace & Co. et. al</u> Case No. 92-CP-25-253.

10. Shortly after the class was certified and over six months after I stated these opinions against W. R. Grace & Co. in <u>Anderson Memorial Hospital v. W. R. Grace & Co. et.al</u>, Grace filed its petition for Bankruptcy. Subsequently, Dan Speights of Speights & Runyan met with me and asked me to confirm that my advice and opinion regarding his obligation to file proofs of claim to preserve every putative class claim of which he or his firm was aware. I advised Mr. Speights that it was my opinion that he still had a fiduciary duty to actual and putative class members of the <u>Anderson Memorial Hospital</u> action and that he should file the claims.

FURTHER, THE AFFIANT SAYETH NOT.

By: *John Freeman*
John P. Freeman

Sworn to me, this 11th day of August, 2005

Notary Public for the State of South Carolina
My Commission expires: 7/1/2012

# RESUME
## Professor John P. Freeman

| | |
|---|---|
| Address and phone numbers: | 2329 Wilmot Avenue<br>Columbia, South Carolina 29205<br>803-254-4667 (home)<br>803-777-7224 (Law School) |
| Education history: | LL.M., 1976, University of Pennsylvania Law School; J.D., 1970, University of Notre Dame Law School; B.B.A., 1967, University of Notre Dame (Accounting) |
| Employment history: | 1970-72, Attorney, Jones, Day Law Firm, Cleveland, Ohio<br><br>1972-73, Fellow, University of Pennsylvania Law School Center for the Study of Financial Institutions<br><br>1973-75, Assistant Professor of Law, University of South Carolina<br><br>1974 and 1975 (Summers), Special Counsel, Division of Investment Management, SEC, Washington, D.C.<br><br>1975-78, Associate Professor of Law, University of South Carolina; Visiting Associate Professor of Law at Loyola Law School (Chicago) Spring 1977<br><br>1978-Present, Professor of Law, University of South Carolina; Visiting Professor of Law at University of Texas Law School, Summer 1978 |
| Honors and Awards: | Undergraduate: Member Beta Alpha Psi (Honorary Accounting Fraternity)<br>Law School: Executive Editor, Notre Dame Lawyer; Distinguished Military Graduate |
| Professional: | At University of South Carolina Law School: Senior Class Annual Outstanding Faculty Award of 1975, 1976, 1977, 1984; Winston Churchill Award, South Carolina Jury Trial Foundation 1995; Distinguished Service Award, South Carolina Trial Lawyers Association 2000; Appointed Member, South Carolina Judicial Merit Selection Commission (presently serving) |

1

| | |
|---|---|
| Admitted to Practice: | Ohio; South Carolina |

Teaching History
Courses Taught:  Professional Responsibility, Legal Accounting, Business Associations, Corporations, Agency-Partnership, Securities Regulation, Corporate Finance, Business Planning, Legal Research and Writing, Business Crime, Legal Malpractice Component of Advanced Legal Profession Seminar

Scholarly and Professional Publications

    Author, Regular Legal Ethics Column for South Carolina Lawyer.

    Article, It's the Conflict of Interest, Stupid, Money Mgm't Exec., May 17, 2004, at 14.

    Chapter on Legal Opinion Liability in Legal Opinion Letters A Comprehensive Guide to Opinion Letter Practice (M. John Sterba, Jr., ed. 2003) (plus annual updates).

    Chapter in South Carolina Damages Treatise on Damages in Securities Cases (2004)

    Article, The Ethics of Using Judges to Conceal Wrongdoing, 55 S.C.L. Rev. 829 (2004).

    Article (with Stewart Brown), Mutual Fund Advisory Fees: The Cost of Conflicts of Interest, 26 J. Corporation Law 610 (2001).

    Article, Liens, Fees and Taxes, South Carolina Trial Lawyer, Summer 2000, at 26.

    Article, A Business Lawyer Looks at the Internet, 49 S.C.L. Rev. 903 (1998).

    Article, Payments to Medical Care Providers: What Are the Lawyer's Obligations? South Carolina Lawyer, September-October 1994, at 39.

    Article, Current Developments in Lawyer Liability: Coping with the Fraudulent Client, Delaware Lawyer, Winter 1993, at 27.

    Article, Treble Damage Statutes Can Increase Trust Recoveries, 4 Probate Practice Reporter, June 1992, at 1.

    Article (with Nathan Crystal), Scienter in Professional Liability Cases, 42 S.C.L. Rev. 783 (1991).

    Article, How Computerized Databases Are Redefining Due Diligence, Carolina Lawyer (July-August 1991).

2

Article, When Are Lawyers' Gifts to Judges Improper? <u>Carolina Lawyer</u> (November-December 1990).

Article, Current Developments in Legal Opinion Liability, 1989 <u>Col. J. Bus. L.</u> 235.

Article, Understanding the Joint Client Exception to the Attorney-Client Privilege, <u>Carolina Lawyer</u> (July-August 1989).

Article, A RICO Primer, 1985 <u>Small Business Counselor</u> No. 4.

Article, *The Use of Mutual Fund Assets to Pay Marketing Costs*, 9 <u>Loy. Chi. L.J.</u> 553 (1978).

Article, Marketing Mutual Funds and Individual Life Insurance, 28 <u>S.C.L. Rev.</u> 1-124 (1976), reprinted in <u>Nat'l Ins. L. Rev. Serv.</u> (1977).

Article, Opinion Letters and Professionalism, 1973 <u>Duke L.J.</u> 371-439, reprinted in <u>Securities Law Review 1974</u> (E. Folk, III, ed.).

Co-author, Multi-student Survey, <u>The Mutual Fund Industry: A Legal Survey</u>, 44 <u>Notre Dame Lawyer</u> 732-983 (1969).

Case Comment, <u>Escott v. BarChris Constr. Corp.</u>, 44 <u>Notre Dame Lawyer</u>, 122-40 (1968).

<u>Other Scholarly Activities</u>

Speeches (with accompanying outlines) presented at numerous CLE courses sponsored by various entities including the South Carolina Bar, University of South Carolina Law School and the South Carolina Supreme Court.

CLE Presentations 2001-05: Greenville County Solicitor's Office, Prosecutorial Ethics, May 9, 2005; Mass Tort Seminar, NYC, Discovery Abuse Issues, March 18, 2005; S.C. Ass'n of Counties, Legal Ethics, Dec. 10, 2004; Federal Bar Ass'n, S.C., Ethics CLE, Dec. 10, 2004 ½ hr.; S.C. Bar Construction Law Section, Ethics CLE on the new Oath; Dec. 3, 2004; NASAA, Salt Lake City, Legal Ethics for Securities Enforcement Lawyers, Dec. 4, 2004; DSS Ethics Training, Dec. 3, 2004; (2-hr. lecture); PIABA, Ethics for Securities Lawyers, and Comments on the Mutual Fund Mess, Oct. 20, 2004 (2 hrs.); Commercial Law League of America, Southern Region Members' Ass'n, Ethical Issues in Commercial Law, Oct. 1, 2004; S.C. Bar, Annual Probate Bench/Bar, Ethics in Probate Court, Sept. 17, 2004; Charleston Bar Ass'n, Lawyer's Oath Seminar, August 27, 2004; S.C. Government Lawyers, Legal Ethics for Government Attorneys, August 20, 2004; S.C. Judiciary, Judicial Ethics Lecture, August 19, 2004; S.C. Bar, Accounting for Non-tax Lawyers, May 2, 2004; Palmetto Land Title Ass'n, Ethics for Closing Attorneys, April, 24, 2004; Richardson, Patrick Law Firm, CLE on Legal Issues Concerning the

3

Mutual Fund Mess, March 26, 2004; S.C. Bar, An Update on Ethical Considerations for the Guardian, March 5, 2004; S.C. Prof. Society on the Abuse of Children, Ethics and Child Abuse, Feb. 26, 2004; National Ass'n of State Boards of Accountancy, Professionalism, Accountability and the Accounting Profession, Feb. 9, 2004; Fidelity Nat'l Title, Ethical Duties of Closing Attorneys, Feb. 5, 2004; S.C. Bar, Annual Convention, Ethical Issues in Handling the Appeal, Jan. 22, 2004 (co-presenter); National Ass'n of State Securities Administrators, Ethics for State Securities Enforcement Officials, Dec. 13, 2003 (2-hr. lecture.); DSS Ethics Training, Dec. 12, 2003; (2-hr. lecture); S.C. Ass'n of Counties, Legal Ethics, Dec. 12, 2003 South Carolina Trial Lawyers Ass'n, Legal Ethics, Dec. 6, 2003; South Carolina Bar, The Ethics of Using Judges to Conceal Wrongdoing, Oct. 24, 2003; South Carolina Bar, Everyday Ethics, Judicial and Attorney, Oct. 17, 2003; Federal Bar Ass'n, Ethics for Social Security Law Practitioners, Oct. 24, 2003 (panel discussion); South Carolina Court of Appeals, Ethics for Court Employees, Sept. 30, 2003; John Belton O'Neall Inn of Court, Dealing with Recurring Civility Problems in Practice (panel moderator), Sept. 23, 2003; South Carolina Bar, Ethics for Family Law Lawyers, Sept. 19, 2003 (only 12 mins.); North Carolina-South Carolina Construction Law Section, Hot Topics for Construction Lawyers, Sept. 13, 2003; South Carolina Bar, New Ethics Issues, Aug. 22, 2003 (videotape lecture); Motley Rice Law Firm, Criminal Law for the Plaintiff's Lawyer, August 16, 2003; South Carolina Defense Lawyers' Assoc., Hot Topics for the Defense Bar; Confidentiality Including HIPAA Problems, July 25, 26, 2003; John Belton O'Neall Inn of Court, Ethical Lessons from Enron, Feb. 25, 2003; S.C. Bar, Ethics Lessons from Lawyers Drawn from Recent Corporate Misbehavior, Jan. 24, 2003; S.C. Bar, Ethics for the Guardian ad Litem, Jan. 10, 2003; DSS Ethics Training, Dec. 13, 2002; (2-hr. lecture) S.C. Ass'n of Counties, Legal Ethics, Dec. 13, 2002; Lexington County Bar Ass'n, Legal Ethics, December 11, 2002 (2-hr. lecture); SCTLA, Legal Ethics, December 7, 2002; Haynsworth Baldwin Law Firm In-house Ethics CLE, Nov. 8, 2002 (2-hour lecture); S.C. Bar, Ethics for Prosecutors and Defense Counsel (Panel Member) Nov. 8, 2002; National Justice Center, Ethics for Criminal Lawyers, Oct. 4, 2002; S.C. Bar, Ethics Lessons Lawyers Can Learn from Corporate America, Sept. 27, 2002; S.C. Administrative and Regulatory Law Ass'n, Learning from Bad Examples--Ethics Lessons Drawn from Others' Mishaps, Sept. 20, 2002; S.C. Bar, Lawyer Trust Account Duties, June 2002 (videotape lecture); S.C. Probate Judge, Legal Ethics, May 10, 2002; U.S.C. Law School Class of 1992 Reunion, Ethical Problems Under Rule 4.2, April 12, 2002; S.C. Bar, Pitfalls You Want to Avoid, April 19, 2002; S.C. Bar, Ethical Dilemmas in Trial and Pre-trial Practice, March 1, 2002; S.C. Bar, Criminal Ethics Update, Jan. 25, 2002 (panel member); John Belton O'Neall Inn of Court, Ethical Issues in Dealings with Medical Care Providers and the Other Side's Former Employees, Jan. 14, 2002 (½ hour lecture); S.C. Ass'n of Counties, Confidentiality and You, Dec. 7, 2001; SCTLA, When They Say It's Not About Money . . . ., Dec. 1, 2001; S.C. Bar, Securities Regulation Primer, Nov. 2, 2001, S.C. Attorney General, Ethics For Government Lawyers, Oct. 27, 2001 (45 mins.); Stewart Title CLE, Ethics for Closing Attorneys, Oct. 17, 2001; S.C. Workers' Compensation Educational Ass'n, Ethics for Workers Compensation Attorneys, Oct. 15, 2001 (2 hrs); S.C. Insurance Reserve Fund, Ethics for Taxpayer-Paid Lawyers, Oct. 5, 2001; Farm Credit System District Attorneys' Conf., Ethics Tips for Business Lawyers, Oct. 2, 2001; N.C. Bar Ass'n, Ethics Issues for the Construction Lawyer, Sept. 28. 2001; S.C. Bar, Thou-Shalt-Nots for the Ethical Family Law Lawyer, Sept. 21, 2001 (15 mins.)

4

S.C. Appellate Courts, Ethics for Law Clerks and Staff Attorneys, August 27, 2001; SCTLA, The Lien Menace, August 3, 2001 (½ hr. lecture); Judicial Merit Selection Comm., Some Key Rules Judges Need to Follow, July 31, 2001, S.C. Ass'n of Counties, Twelve Steps to Solving Conflicts Problems by Lawyers Representing Government Agencies, July 26, 2001; Association of SC Claimant Workers' Comp. Atty's, Dealing with Off-beat Ethical Situations, May 4, 2001 (1 hr. Lecture; 1 hr. Ethics Panel Moderator); Legal Counsel Conference of National Ass'n of State Boards of Accountancy, Accountants, Regulatory Authority and the Internet, Feb. 5, 2001; S.C. Bar Annual Meeting, Learning from Bad Ethical Behavior in the New Millennium, Jan. 29, 2001; S.C. Masters In Equity, Lose Weight Without Dieting or Exercise: 30 Sure-Fire Ways to Attract Grievances, Jan. 5, 2001; S.C. Department of Social Services, What Rules that Good and Honest Lawyers Need to Know to Stay Out of Trouble, Dec. 15, 2000 (2 hrs.); S.C. Gov't Attorneys, Ethics and the Government Lawyer, Dec. 13, 2000; Lexington County Bar Ass'n, What Rules that Good and Honest Lawyers Need to Know to Stay Out of Trouble, Dec. 11, 2000 (2 hrs.); S.C. Comm'n on Lawyer Discipline, What Rules that Good and Honest Lawyers Need to Know to Stay Out of Trouble, Dec. 7, 2000 (2 hrs.); SCTLA: Ethics Rules You Didn't Learn in Law School, Dec. 2, 2000; Appellate Judges Conf., Seattle, WA, Lose Weight Without Dieting or Exercise: 30 Sure-Fire Ways to Attract Grievances, Nov. 18, 2000 (1 3/4 hr.); Stewart Title CLE, Ethical Duties of the Closing Attorney, Nov. 16, 2000; S.C. Alliance of Legal Ass't Ass'ns, What Every Law Office Employee Should Know About Legal Ethics, Oct. 13, 2000; S.C. Bar, Limiting Taxation of Your Client's Recovery, Sept. 29, 2000 (½ hr.); S.C. Bar, Ethics Videotape Course for Pilot Distance Learning Program, Sept. 26, 2000 (1 hr. Family Law); Sept. 27, 2000 (1 hr. Criminal Law); South Carolina Ass'n of Criminal Defense Lawyers, Participation on Ethics Panel (2 hrs.) Sept. 22, 2000; SC Supreme Court Commission on Lawyer Discipline, Introduction to ABA Proposed Changes in Rules of Lawyer Discipline and Professional Conduct (2hrs; with Prof. Wilcox) Sept. 20, 2000; York County Bar Ass'n, Ethical Pitfalls You Need to See Coming, (2 hrs.) Sept. 19, 2000; S.C. Bar, Ethical Pitfalls for the Office Lawyer, July 14, 2000; S.C. Bar Annual Meeting, Rules that Good and Honest Lawyers Need to Follow to Stay Out of Trouble (2 hours) June 17, 2000; S.C. Bar, Departing Lawyers' Duties, How to Handle Money, and Bench and Bar Relationships (panel), April 14, 2000; Haynsworth, Baldwin Law Firm, Ethics and Labor Lawyers (2 hours), April 13, 2000; U.S.C. School of Engineering, Colloquium on the Ethics of Whistle Blowing, March 1, 2000; U.S.C. Law School, Ethics Update for Alumni (2 hrs), March 24, 2000; S.C. Bar, Developments in Legal Ethics, the Past Year's Top Ten, Jan. 7, 2000.

Member, ABA Section of Business Law Task Force on Legal Opinions
Participant in Conference on Legal Opinions at Silverado, California, May 31-June 3 (1989).

> University and Community Service
> Author, Report on Tax Sheltered Annuities to USC Faculty and Staff (1976).
> Faculty Senate (1996-98)
>
> University Committees
> Promotion and Tenure

5

Faculty Welfare
Annuities and Insurance
Budget Committee

Law School Committees
Faculty Selection
Academic Standing (currently serving)
Minority Student Affairs
Executive Committee
Dean Evaluation Committee
Dean Search Committee

Chairman, Supreme Court Commission on Continuing Lawyer Competence (1980-83)

President, Leaphart Elementary School PTO (1983)
Chairman, Irmo Middle School-School Improvement Council (1985)
Member, Irmo Middle School-School Improvement Council (1985-89),
President, Irmo High School Parent, Teacher, Student Association (1988-89, 1992-93)
Member Executive Board (1988-93)
Member, Irmo High School-School Improvement Council (1988-93)
Founder and Past-president, University of Notre Dame Club of South Carolina
Lexington District Five and South Carolina State School Volunteer of the Year 1993