IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | Chapter 11 |
| | ) | |
| In re: | ) | Case No. 01-1139 (JKF) |
| | ) | |
| W. R. GRACE & CO., et al., | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Re: Docket Nos. 9315, 15445, 15617 and |
| | ) | 15625 |
| | ) | Response Deadline: May 18, 2007 |
| | ) | Hearing Date: May 30, 2007 |

**OBJECTION OF THE OFFICIAL COMMITTEE OF ASBESTOS PROPERTY
DAMAGE CLAIMANTS TO DEBTORS' MOTION FOR LEAVE TO AMEND
THEIR OBJECTIONS TO CERTAIN PROPERTY DAMAGE CLAIMS**

The Official Committee of Asbestos Property Damage Claimants (the "PD Committee"),

by and through its undersigned counsel, hereby objects (the "Objection") to the *Debtors' Motion*

*for Leave to Amend Their Objections to Certain Property Damage Claims* (the "Motion"). In

support of its Objection,[1] the PD Committee respectfully represents as follows:

**PRELIMINARY STATEMENT**

By the Motion, the Debtors seek to continue the game of "follow the bouncing ball" with

respect to their objections to asbestos property damage claims ("PD Claims") that they have

played since these cases were filed. First, not satisfied with the Delaware Local Rules that

prescribe detailed procedures for omnibus claims objections, the Debtors sought significant

accommodations from Del.Bankr.LR 3007-1 (the "Local Rule"), which the Court granted in part.

---

[1] Although the Motion on its face relates to the Debtors' "updated" objections to certain PD Claims filed by clients of the law firm of Speights & Runyan (the "S&R Claims"), the PD Committee interjects itself by way of this Objection because the issue framed by the Motion is an overarching one that the Debtors may seek to apply to all extant PD Claims. At the July 24, 2006 omnibus hearing, the Court stated that the PD Committee can weigh in on such issues. Tr. of Hr'g 166, July 24, 2006. By this Objection, the PD Committee refrains from addressing the litigation history in respect of the Debtors' objections to the S&R Claims recounted by the Debtors in the Motion.

1

Then, when those modifications did not fit into their revised game plan, the Debtors' obtained a case management order governing objections to PD Claims which set out the process by which the Debtors were to bring all objections (substantive or otherwise) to PD Claims. However, after now realizing that their carefully crafted objections program, which holders of PD Claims have been subjected to for the past 18 months, has gaping holes, the Debtors once again seek to change the rules of engagement to facilitate their crusade against holders of PD Claims.

It is undisputed that (a) this Court, through the entry of a sequence of orders, previously required the Debtors to raise all of their objections to PD Claims; (b) for the past 18+ months, the Debtors have continually represented to the Court that all of their objections to PD Claims were lodged through the 15th Omnibus Objection; (c) the Debtors have been vigorously prosecuting the 15th Omnibus Objection; and (d) holders of PD Claims have been defending against the objections raised in the 15th Omnibus Objection, including framing discovery, identifying expert and fact witnesses and arguing dispositive motions for the last 18 months. The Debtors' attempt to "amend" objections - - which in reality are new objections that were never asserted and not amendments to existing objections - - at this stage in the litigation should not be tolerated and the Motion should be denied.

## OBJECTION

### A.    The Court's Prior Orders Required the Filing of All Objections to PD Claims *in toto*

1.     On April 25, 2002, the Court established a bar date of March 31, 2003 (the "Bar Date") for the filing of PD Claims.[2]  Thereafter, on December 22, 2003, in response to the substantial number of PD Claims filed by the Bar Date, the Debtors filed their Motion for

---

[2] Dkt. No. 1960.

Limited Waiver of Del.Bankr.LR 3007-1 for the Purpose of Streamlining Objections to Certain

Claims Filed Pursuant to the Bar Date Order (the "Local Rule Waiver Motion").[3]

2.      Through the Local Rule Waiver Motion, the Debtors principally sought relief

from the requirements of the Local Rule that (a) all substantive objections to a claim be raised at

the same time and (b) the number of claims subject of an omnibus objection be limited to 150

claims.[4]

3.      The PD Committee objected to the Local Rule Waiver Motion, arguing, among

other things, that the holders of PD Claims should not be subjected to piecemeal, *in seriatim*

objections, truncated discovery and numerous court appearances.[5]  After a lengthy hearing on the

Local Rule Waiver Motion, the Court entered an order (the "3007 Order")[6] which, although it

granted certain of the relief sought by the Debtors, contained significant restrictions on the

Debtors' ability to file multiple rounds of objections to PD Claims.

4.      Specifically, pursuant to Del.Bankr.LR 1001-1(c),[7] the 3007 Order provided that:

> (i) the Debtors may file Gateway Omnibus Objections
> asserting all Gateway Objections[8] to a particular claim
> without asserting or waiving any other substantive
> objections (that are not Gateway Objections) to such claim;
> and (ii) the Debtors may file one subsequent substantive
> objection to each of the Claims for which a Gateway
> Omnibus Objection was filed.

3007 Order, p.3

---

[3] Dkt. No. 4853.
[4] Local Rule Waiver Motion, p.2.
[5] Dkt. No. 4908.
[6] Order Granting Limited Waiver of Del.Bankr.LR 3007-1 for the Purpose of Streamlining Objections to Certain Claims Filed Pursuant to the Bar Date Order, dated July 19, 2004 [Dkt. No. 6009].
[7] Del.Bankr.LR 1001-1(c) provides that "the application of these Local Rules in any case or proceeding may be modified by the Court in the interest of justice."
[8] Gateway Objections consisted of the following: (i) Claims with substantially incomplete Proof of Claim Forms; (ii) Claims that contain materially insufficient supporting information; (iii) Claims that fail to include any product identification information; (iv) Claims that are barred by applicable statutes of limitation or repose; (e) [sic] Claims that are barred by laches; and (v) [sic] Claims that are barred by prior settlements.

5.      Thus, as a result of the entry of the 3007 Order, the Debtors were authorized to file a maximum of two objections to PD Claims - - one in respect of Gateway Objections and a second for all remaining objections.  Despite the Court's partial grant of the relief sought in the Local Rule Waiver Motion, the Debtors failed to assert any objections - - Gateway or otherwise - - from mid-2004 through August 2005.

6.      Indeed, by August 29, 2005, the Debtors changed course yet again and, in lieu of first filing Gateway Objections and then the remaining substantive objections, the Debtors sought to file one omnibus objection that included all objections to PD Claims - - Gateway and non-Gateway.  In order to accomplish filing one single omnibus substantive objection to all PD Claims, the Debtors requested that the Court enter a case management order permitting them to make such a filing.  On August 29, 2005, the Court entered the Case Management Order for the Adjudication of [sic] Asbestos Property Damage Claims Objections (the "August 29, 2005 Objections CMO").[9]

7.      Pursuant to the August 29, 2005 Objections CMO, the Court modified the relief previously granted by the 3007 Order and ordered the Debtors to have on file all of their objections to PD Claims, including any Gateway Objections, by September 1, 2005.  *August 29 Objections CMO* at 4.  Accordingly, on September 1, 2005, the Debtors filed their Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims [Dkt. No. 9315] (the "15th Omnibus Objection") and asserted all of their substantive objections to PD Claims.[10]

8.      The scope and breadth of the 15th Omnibus Objection was nothing short of breathtaking.  The Objection exceeded 65 pages in length, included over 1000 pages of exhibits

---

[9]   Dkt. No. 9300.
[10]  Separately, by and through the Fourteenth Omnibus Objection (Non-Substantive) to Claims, the Debtors raised their non-substantive objections to PD Claims, which were limited to late-filed PD Claims and those with no

and matrices that indicated which of the PD Claims were subject to the particular categories of objections contained in the 15th Omnibus Objection and identified 41 separate categories of objections to Claims. Without exception, every PD Claim was subject to multiple categories of objections.

9.     Thereafter, the Court entered two interim orders with respect to scheduling hearings on certain of the objections raised in the 15th Omnibus Objection. As a result of the Debtors' multi-tiered objection process, these interim scheduling orders would have caused holders of PD Claims to appear at multiple hearings (possibly as many as six!) to defend against the Debtors' objections. The PD Committee vehemently opposed this process as it would clearly have been unduly burdensome and prejudicial to holders of PD Claims. The Court agreed with the PD Committee and ultimately vacated these two interim orders through the entry of the Modified Scheduling Order Regarding Certain of Debtors' Fifteenth Omnibus Objections to Claims (Substantive), dated December 19, 2005 [Dkt. No. 11408] (the "December 19, 2005 Scheduling Order"). By the December 19, 2005 Scheduling Order, the Court recognized that all objections had been filed and set in a place a process by which no claimant, other than potentially an S&R claim, would be subject to more than two hearings in respect of the 15th Omnibus Objection.[11] See December 19, 2005 Scheduling Order, pp. 3-4.

---

supporting documentation at all. See Dkt. No. 9314.

[11]     Indeed, at a recent hearing in which the Court and the Debtors' counsel were discussing the history of the objections to PD Claims, the Court clearly explained its rationale for the claims objections process it established as follows:

> "That's the reason I forced the categories [under the 15[th] Omnibus Objection] on the debtor in the first place, because it seems to me that the Delaware local rule is you can - - you must put everything in to one objection so that claimants have to face this issue only once.

10.     Thus, by virtue of the Court's orders that resulted in the filing of the 15th Omnibus Objection and the subsequent scheduling orders, it is unquestionable that the Debtors were required to raise all of their objections to PD Claims over 18 months ago.  Nevertheless, the Debtors have argued that Fed.R.Bankr.P. 7015 provides relief for them to amend their objections to PD Claims at issue in their Motion.[12]

11.     The Debtors' reliance on Rule 7015 is entirely misplaced.  First, Although Rule 7015 may be generally applicable to amendments to objections pursuant to Del.Bankr.LR 3007-1(f)(iii), the local rules may be modified when justice so requires.[13]  In this case, that is exactly what happened when the Court tacitly and implicitly proscribed any further amendments by virtue of the August 29, 2005 Objections CMO which required the Debtors to raise all objections to PD Claims at one time.  Second, the Debtors are seeking not just to amend, but to add new objections.  This simply is not permitted at this point.  Moreover, the December 19, 2005 Scheduling Order makes it abundantly clear that claimants would subjected to no more than two hearings on the 15th Omnibus Objections.  To allow an amendment under Rule 7015 at this stage would certainly undermine the efficacy of the process established by the Court and relied upon by claimants.

---

I was willing under the circumstances of the case, to bifurcate the process.  I think it makes sense to bifurcate the process, but there has to be reasoned and principle way to do that so that claimants are not forced to come back before the Court too many times and at the same time the debtor has an opportunity to do something logically to get the case moved from A to Z.

April 25, 2007 H'rg Tr. at 28-29.
[12]   The PD Committee submits that Rule 7015 is inapposite in this situation.  However, if the Court were to determine that Rule 7015 applies to the Debtors' attempt to amend their objections to particular PD Claims, it is beyond the scope of the PD Committee's objection to the Motion to argue the prejudice that exists with respect to proposed amendments to any particular PD Claim.  With that caveat, it requires mentioning that in the Motion the Debtors do not even attempt to address why "justice so requires" the proposed amendments.
[13]   See fn 7.

**B.      The Debtors Have Unequivocally Represented to the Court and All PD Claimants That the 15th Omnibus Objection Contained All of the Debtors' Objections to PD Claims**

12.      Moreover, if there was any doubt (we, of course, do not believe any exists) that the Court ordered that all objections be lodged at one time, without further amendments or new objections, the Debtors have represented to this Court and PD Claimants on numerous occasions and behaved as if the 15th Omnibus Objection contained <u>all</u> of their objections to PD Claims. It is patently clear that the Debtors intended their 15th Omnibus Objection to serve as the "end all and be all" with respect to objections to PD Claims and claimants have been defending the objections as such ever since.

13.      To begin, in the 15th Omnibus Objection, the Debtors acknowledged that their objections were being lodged in accordance with the August 29, 2005 Objections CMO[14] which, as explained above, required that all objections be filed at one time. In fact, the only reservation the Debtors made in the 15th Omnibus Objection was to bring additional objections if the information included in the proof of claim was untrue or inaccurate.[15] <u>See</u> Fifteenth Omnibus Objection at 65. Clearly, the "amended" objections subject of the Motion are not based on untrue or inaccurate information contained in the respective proof of claim forms.

14.      Thereafter, the Debtors and the PD Committee unsuccessfully attempted to negotiate a consensual order regarding the scheduling of the "first round" of objections. As a result, each of the Debtors and the PD Committee submitted proposed orders and a hearing was scheduled for December 12, 2005 to address the competing proposals. During that hearing, the

---

[14]   The 15th Omnibus Objection provides "[a] set out in the [August 29, 2005 Objections CMO], the Debtors hereby object as follows to [PD Claims]." <u>See</u> 15th Omnibus Objection at 1.

[15]   In another attempt to slip something into a document filed with the Court, just yesterday, the Debtors filed the *List of Claims to be Tried on June 26, 2007* [Dkt. No. 15686]. In their "List," the Debtors inappropriately attempt to "preserv[e] all applicable defenses to all of the asbestos property damage claims remaining in these Chapter 11 proceedings." The PD Committee stridently opposes the Debtors' illicit attempt to restate their position with respect

Debtors' counsel made several illuminating statements regarding the scope and reach of the 15th Omnibus Objection.   The Debtors' counsel made it abundantly clear that the Debtors had foregone the process of first filing the Gateway Objections and then another substantive objection.   Instead, counsel repeatedly informed the Court and the parties that the Debtors filed all of their objections in the 15th Omnibus Objection and that holders of PD Claims knew which objections they needed to defend against.

15.     First, counsel stated:

> When the case management order on objections [the August 29, 2005 Objections CMO] went into effect, by then we had a better handle on the claims, and essentially the Court permitted us to raise all objections, and that is, in fact, what the 15th omnibus does.

December 12, 2005 H'rg Tr. at 4 (emphasis added).

16.     The Debtors' counsel continued:

> As I mentioned, I believe that order [the 3007 Order] was entered in 2004, but when we got the case management order entered to go forward in August of 2005 [the August 29, 2005 Objections CMO], the Court expressly permitted us to raise all objections.

Id. at 8 (emphasis added).

17.     Lastly, the Debtors' counsel represented to the Court that:

> Well, here's what we did, Your Honor.   We got the case management order [the August 29, 2005 Objections CMO] on objections entered that allowed us to raise all gateway and all substantive objections [at one time].   So for all these claimants, everyone knows all the objections that we're making to them. . .

Id. at 18.

18.     If those representations were not clear enough, seven months later, in June of 2006, the Debtors reiterated that the 15th Omnibus Objection contained all of the Debtors'

---

to the claims objections process.

objections to PD Claims.  In their *Motion for a Scheduling Order Regarding Certain of the Debtors' Fifteenth Omnibus Objections to PD Claims (Substantive)* [Dkt. No. 12679] (the "Debtors' Scheduling Motion"), the Debtors repeatedly conceded that the 15th Omnibus Objection included all objections.

19.    Indeed, the Debtors' stated:

> [T]his Court will necessarily be asked to address core liability issues, including statutes of limitations, product identification and proof of hazard . . .These exact objections, . . .have already been lodged as to these very buildings through the 15th Omnibus Objection.

*Debtors' Scheduling Motion* at 4 (emphasis added).

20.    The Debtors continued: "[b]y virtue of the notice and bar date process, all PD claims are currently before this Court.  Through the 15th Omnibus Objection, all substantive objections to these claims have already been raised and claimants have been on notice of these objections for months." *Id.* at 6 (emphasis added).

21.    At the hearing on the Debtors' Scheduling Motion, in discussing the purpose of the 15th Omnibus Objection, the Debtors' counsel acknowledged that "we tried to register all of our substantive objections to all property damage claims." See July 24, 2006 H'rg Tr. at 80.

22.    As these examples amply demonstrate, it is unmistakable that the Debtors have continually represented to the Court and holders of PD Claims that the 15th Omnibus Objection contained all of the Debtors' objections to PD Claims.  At this juncture, there is simply no justification to being the PD Claims objection process anew.

**WHEREFORE**, the PD Committee respectfully requests that this Court (a) deny the

Motion in its entirety; and (b) enter such other and further relief as is just and proper.

Dated: Wilmington, Delaware
May 18, 2007

Respectfully submitted,


BILZIN SUMBERG BAENA
   PRICE & AXELROD LLP
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131-2336
Telephone: (305) 374-7580

Scott L. Baena (Admitted Pro Hac Vice)
Jay M. Sakalo (Admitted Pro Hac Vice)

-and-

FERRY, JOSEPH & PEARCE, P.A.

/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899
Telephone: (302) 575-1555

CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF ASBESTOS PROPERTY
DAMAGE CLAIMANTS