IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 01-01139 (JKF) |
| W.R. Grace & Co., et al., | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

Re: Docket No. 15625
Objection deadline: May 18, 2007
Hearing Date: May 30, 2007 at 9 AM (Pittsburgh)

### CANADIAN CLAIMANTS' RESPONSE TO DEBTORS' MOTION FOR LEAVE TO AMEND THEIR OBJECTIONS TO CERTAIN PROPERTY DAMAGE CLAIMS

This matter is before the Court on the Debtors' May 8, 2007 Motion for Leave to Amend their Objections to Certain Property Damage Claims filed on September 1, 2005 ("Motion for Leave"). The Canadian Claimants whose claims are subject to the Motion for Leave ("Canadian Claimants"), by and through their counsel, Speights & Runyan ("S&R"), object to the Debtors attempt to add 125 additional product identification ("PID") and statute of repose objections to their claims ("Claims"). As discussed below, while styled as a request for permission to amend their 2005 objections, in reality, as to the Canadian Claimants, the Debtors seek to file new objections to the Claims as they were filed in 2003.

In support of this Response, the Canadian Claimants incorporate by reference Anderson Memorial Hospital's Motion to Strike Debtors' Updated Objection ("Motion to Strike");[1] the Canadian Claimants also adopt the Objection of The Official Committee of Asbestos Property Damage Claimants to Debtors' Motion to be filed later this date ("PD Committee's Objection").[2]

---

[1] Anderson Memorial Hospital's Motion to Strike Debtors' Updated Objection to Certain Speights & Runyan Asbestos Property Damage Claims (May 7, 2007). [Doc. 15617].

[2] Objection of The Official Committee of Asbestos Property Damage Claimants Objection to Debtors' Motion for Leave to Amend their Objections to Certain Property Damage Claims (May 18, 2007). [Doc. 15697].

## I. **STATEMENT OF FACTS**

Over four years ago, the Canadian Claimants filed their Claims in response to this Court's April 22, 2002 Bar Date Order. The Canadian Claimants based their PID upon reports by Dr. Donald Pinchin.

On December 22, 2003, the Debtors filed their Motion of Debtors For Limited Waiver of Del.Bank.LR 3007-1 For The Purpose of Streamlining Objections to Certain Claims Filed Pursuant to the Bar Date Order ("Limited Waiver Motion").[3] The Debtors specifically recognized the applicability of Rule 3007 and the fact that they would waive their objections if they did not comply with its provisions.[4] The Court granted the Motion at a hearing on March 22, 2004, and memorialized its ruling in a July 19, 2004 Order ("Limited Waiver Order").[5]

On August 29, 2005, the Court entered its initial Case Management Order for the Adjudication of Asbestos Property Damage Claims Objections.[6] The Court ruled, *inter alia,* "This order shall be without prejudice to the Debtors' rights to file additional PD Objections subsequent to the dates outlined herein *based upon new information.*"[7]

On September 1, 2005, the Debtors filed their Fifteenth Omnibus Objection ("15th

---

[3] Motion of Debtors For Limited Waiver of Del.Bank.LR 3007-1 For The Purpose of Streamlining Objections to Certain Claims Filed Pursuant to the Bar Date Order. (December 22, 2003) [Doc. 4853].

[4] Modified Scheduling Order Regarding Certain of Debtors' Fifteenth Omnibus Objections to Claims (Substantive) (December 19, 2005). [Doc. 11408].

[5] Order Granting Limited Waiver of Del.Bankr. LR 3007-1 for the Purpose of Streamlining Objections to Certain Claims Filed Pursuant to the Bar Date Order (July 19, 2004) [Doc. 4853].

[6] Case Management Order for the Adjudication of Asbestos Property Damage Claims Objections (August 29, 2005). [Doc. 9300].

[7] *Id.* at 4 (emphasis supplied).

Objection").[8] The Debtors have represented on numerous occasions that they filed all objections to PD claims in their 15th Objection.[9] The Debtors did not object to the Canadian Claimants' claims on PID or repose grounds. As noted below, certainly the Debtors had time to get it right because their filing occurred twenty nine months after the expiration of the Bar Date and seventeen months after they obtained a ruling on their Limited Waiver Motion. In fact, the Debtors recently told the Court that it "parsed through claims for weeks trying to determine what the specific objection should be for each of those."[10]

On December 19, 2005, the Court entered its Modified Scheduling Order listing the specific objections and when they would be tried.[11] The Court did not schedule any PID or repose objections as to the Canadian Claimants – again, no such objections had been filed.

On June 19, 2006, the Debtors filed another Motion for a Scheduling Order regarding their 15th Objections.[12] The Debtors asked the Court to send the Canadian claims to be adjudicated "so that this bankruptcy court will have rulings it can take into account in time for the Phase 2 estimation proceeding."[13] The primary basis of the Debtors argument was that the Canadian Court would find

---

[8] Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims (September 1, 2005) [Doc. 9315].

[9] *See, e.g.*, Hearing (December 12, 2005) at 4, 8, 18; Motion for a Scheduling Order Regarding Certain of the Debtors' Fifteenth Omnibus Objections to PD Claims (Substantive) (June 19, 2006) at 1,2,6, 26. [Doc. 12679].

[10] Hearing (April 9, 2007) at 165.

[11] Modified Scheduling Order Regarding Certain of Debtors' Fifteenth Omnibus Objections To Claims (Substantive) (December 19, 2005) [Doc. 9315 and 9311].

[12] Motion for a Scheduling Order Regarding Certain of the Debtors' Fifteenth Omnibus Objections to PD Claims (Substantive). [Doc. 12679].

[13] *Id.* at 5.

that the asbestos property damage claims would not survive scrutiny under *Privest Properties Ltd. V. Foundation Co. of Canada* (1995), 11 B.C.L.R. (3d) 1 (S.C.), *aff'd* (1997) 31 B.C.L.R. (3d) 114 (C.A.), *leave to appeal to the Supreme Court of Canada refused* (1997) S.C.C.A. No. 216 ["*Privest*"].[14] Significantly, while the Court of Appeals, expressly limiting itself to the facts presented, affirmed a judgment in favor of the Debtors on several grounds which the Debtors herein raised against the Canadian Claimants, ***Privest* did not involve a PID or repose defense.**

On August 4, 2006, the Debtors filed their Supplemental Memorandum in Support of Protocol for Disposition of Canadian Property Damage Claims.[15] The Debtors represented that, "Through the 15th Omnibus Objection, all substantive objections to these claims have already been raised and claimants have been on notice of these objections for months."[16] According to the Debtors, at that point, still months away from the commencement of the PD litigation, there were no more than 707 PD claims to be litigated, including 97 Canadian claims.[17] The Debtors "asked this Court to authorize it to seek an order from the Canadian Court" adopting a protocol under which, "Any and all objections to the Canadian PD claims identified at Exhibit A shall be addressed by the C.C.A.A. Court pursuant to this Protocol."[18] Again, the Debtors did not list any PID or repose

---

[14]*Id.* at 14-15.

[15]Supplemental Memorandum in Support of Protocol for Disposition of Canadian Property Damage Claims (August 4, 2006). [Doc. 12941].

[16]Motion for a Scheduling Order Regarding Certain of the Debtors' Fifteenth Omnibus Objections to PD Claims (Substantive) (June 19, 2006) at 6. [Doc. 12679].

[17]In its Motion for a Scheduling Order, *supra* at 2, the Debtors said there were 901 PD claims, including 291 Canadian claims. In its Supplemental Memorandum, *supra* at 1, n.1, the Debtors said there were only 97 Canadian claims.

[18]Motion for a Scheduling Order Regarding Certain of the Debtors' Fifteenth Omnibus Objections to PD Claims (Substantive) (June 19, 2006) at 3, n. 5. [Doc. 12679].

4

objections to the Canadian Claimants' claims in Exhibit A. What the Debtors did argue was that:

> As Grace makes clear in the *Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims* [Dkt. No. 9315] (Grace's Canadian PD Claims Objection") filed September 1, 2005, at 52-57, the Canadian PD Claims are not enforceable against Grace under applicable Canadian law and, therefore, should be disallowed pursuant to Section 502(b)(1) of the Bankruptcy Code. In particular, the Canadian PD Claims fail because of applicable statutes of limitation and also underlying principles of Canadian tort law that reject the strict liability principles adapted the United States. *See Privest Properties Ltd. V. Foundation Co. of Canada* (1995), 11 B.C.L.R. (3d) 1 (S.C.), *aff'd* (1997) 31 B.C.L.R. (3d) 114 (C.A.), *leave to appeal to the Supreme Court of Canada refused* (1997) S.C.C.A. No. 216.

**Again, while the trial Court ruled in favor of the Debtors on limitations and tort law, neither PID or repose were at issue in *Privest.***

On October 13, 2006, the Court entered its Amended Order Setting Various Deadlines Regarding Objections to Asbestos Property Damage Claims ("Amended Scheduling Order").[19] The Amended Scheduling Order listed those claims to be adjudicated in this objection proceeding on Exhibit A attached thereto. The pretrial schedule for these objections was set forth in Exhibit B. Again, the Debtors did not list any PID or repose objections to the Canadian Claimants' claims.

On February 5, 2007, S&R served contention interrogatories, requests for production and requests for admission on all of its pending claims that were subject to the objection proceeding. This discovery was tailored by claimant to address only those objections that had been made by the Debtors in the 15th Objection and scheduled on Exhibit A to the October 13, 2006 scheduling order. None of the Canadian Claimants sought discovery related to PID or repose because there were no

---

[19]Amended Order Setting Various Deadlines Regarding Objections to Asbestos Property Damage Claims (October 13, 2006) [Doc. 13120].

PID or repose objections pending against them.[20]

On February 16, 2007, the Debtors filed a number of motions for summary judgment, including a Motion for Summary Judgment challenging PID for Carlton University, located in Ottawa, Ontario, Canada;[21] and a Motion for Summary Judgment seeking to dismiss all Canadian claims as being time-barred both under the various Canadian statutes of limitations and statutes of repose.[22] Earlier, the Debtors had filed a Motion for Summary Judgment seeking to dismiss certain New York claims as being time-barred by reason of actual and constructive notice.[23]

On March 19, 2007, S&R filed responses to all of these Motions for Summary Judgment in which it pointed out as a first argument that the Debtors had not objected to the claims on a number of grounds set forth in their Motions. Specifically, S&R argued that the Debtors had not filed a PID objection to Carlton University; the Debtors' had not filed repose objections to the Canadian Claimants' Claims; and the Debtors had not filed actual notice objections to 9 of the New York claims.[24]

---

[20]As an exemplar, see, First Set of Interrogatories, First Request for Admission and First Request for Production for Carlton University, Claim No. 12395.

[21]Motion and Memorandum for an Order Pursuant to F.R.B.P. 7056 Disallowing and Expunging Eleven (11) Asbestos Property Damage Claims Involving Products Not Made By The Debtors (February 16, 2007). [Doc. 14593].

[22]Motion and Memorandum for an Order Pursuant to F.R.B.P. 7056 Disallowing and Expunging Eighty-Eight (88) Time-Barred Canadian Asbestos Property Damage Claims (February 16, 2007). [Doc. 14597].

[23]Motion for an Order Pursuant to F.R.B.P. 7056 Disallowing and Expunging 10 Time-Barred Asbestos Property Damage Claims Filed on Account of Buildings in the State of New York (November 17, 2006). [Doc. 13701].

[24]Anderson Memorial Hospital's Memorandum in Opposition to Debtors' Motion for an Order Pursuant to F.R.B.P. 7056 Disallowing and Expunging Claim Nos. 12315 and 12395 on Product Identification (March 19, 2007) [Doc. 14895]; Anderson Memorial Hospital's Response to Debtors' Motion for Summary Judgment Directed to 88 Claims from Canada Based Upon the Statute of

On April 9, 2007, the Court heard arguments on the Debtors' Motions for Summary Judgment. At that time, the Debtors abandoned their PID Motion as to Carlton University, and the Court continued their limitations Motion as to the Canadian Claims until after S&R could conduct discovery as to their filing of a Supplemental Affidavit of their expert witness. However, the Court heard arguments on the New York claims and ruled that the Debtors could not make actual knowledge objections that they had not specifically set forth in their 15th Objection.[25]

On April 13, 2007, the Debtors provided S&R with an amended list of claims which would be the subject of the April 23-25, 2007 PID trial. The list included 24 Canadian claims which were not subject to the Debtors' PID objections.[26] S&R promptly filed a Motion to Extend Deadlines.[27] The parties then agreed that, without prejudice to either side's position, those claims would not be tried at that time.

On April 25, 2007, the Court heard arguments on S&R's Motion to Extend. The Court agreed that the Debtors had not raised PID objections to these claims and scheduled a status conference for May 2, 2007. The Court thought the Debtors would then file a motion seeking permission to raise these objections.[28]

On Monday night, April 30, 2007, the Debtors filed Updated Objections which not only

---

Limitations (March 19, 2007) [Doc. 14898]; Anderson Memorial Hospital's Response to Debtors' Motion for Summary Judgment directed to 10 Claims from The State of New York (March 19, 2007) [Doc. 14894].

[25] Hearing (April 9, 2007) at 179-181.

[26] *See,* Anderson Memorial Hospital's Motion to Extend Deadlines (April 13, 2007) at 3, n. 3. [Doc. 15172].

[27] *Id.*

[28] Hearing (May 2, 2007) at 107-108.

raised PID objections which they had not made in their 15th Objection but also added repose objections to all of the Canadian Claims.[29] The Debtors chose this path despite what the Court had envisioned when it ruled on the Motion to Strike.

On May 2, 2007, the Court conducted a status conference on what turned out to be the Debtors Updated Objections. At that time, S&R had not been served with the Debtors' Updated Objections (the Debtors chose to serve S&R regular mail, which would not arrive until Friday, May 4, 2007), but had glanced at the pleading on a computer screen the night before. Because the Debtors had not filed a Motion, the Court set a schedule for S&R to file a Motion to Strike and the Debtors to file a Response so that the matter could be heard the following week. S&R did not realize at that time that the Debtors had added, without prior Court approval, 127 new objections to approximately 63 claims on a host of grounds, including PID and repose.

On May 7, 2007, S&R filed its Motion to Strike, primarily on the ground that the Debtors were required to file a Motion seeking permission to file additional objections.[30] The night before the hearing, the Debtors timely filed their Response, but did so in the form of their present Motion for Leave to Amend their Objections.

On May 8, 2007, the Court conducted a hearing on S&R's Motion to Strike. In light of the Debtors' Motion for Leave filed the night before, the Court set a briefing schedule on the Motion for Leave. The matter is scheduled to heard on May 30, 2007.

---

[29] Debtors' Updated Objections to Certain Speights & Runyan Asbestos Property Damage Claims (April 30, 2007). [Doc. 15445].

[30] Anderson Memorial Hospital's Motion to Strike Debtors' Updated Objection to Certain Speights & Runyan Asbestos Property Damage Claims (May 7, 2007). [Doc. 15617].

## II. ARGUMENT

**A.    The Debtors Represented That All Objections Were Set Forth in their 15th Objection**

As set forth above, and in the Motion to Strike and the PD Committee's Objection, the Debtors, in support of their argument that the local rule should be waived, and that they could efficiently manage this objections process, repeatedly represented that all PD objections would be and later were set forth in their 15th Objection. Now, while the Debtors suggest they want to amend their objections, the reality is that they want to file new PID objections to the information the Canadian Claimants attached to their 2003 Claims and new repose objections based upon the Canadian law as it existed at the time the Canadian Claimants filed their Claims. There is no basis in law or fact to grant the Debtors a "do-over."

**B.    The Debtors Have Failed to Provide "New Information" as Required by this Court's Initial Case Management Order**

Although the Debtors represented that they would file and had filed all of their objections, the Court gave them a little wiggle room. In its August 29, 2005, Case Management Order for the Adjudication of Asbestos Property Damage Claims Objections,[31] the Court ruled, *inter alia,* "This order shall be without prejudice to the Debtors' rights to file additional PD Objections subsequent to the dates outlined herein *based upon new information.*"[32] The Debtors have not shown any information, much less "new information," in support of their Motion for Leave. In fact, it would be impossible for the Debtors to meet the burden imposed upon them by the Court because their proposed new objections are based on PID attached to the Claims and legal authorities that were

---

[31] Case Management Order for the Adjudication of Asbestos Property Damage Claims Objections (August 29, 2005). [Doc. 9300].

[32] *Id.* at 4 (emphasis supplied).

9

known to the Debors before they filed their original objections.[33] Finally, the Debtors chose not to avail themselves of this provision when, as discussed above, they chose to file all of their objections at one time.

C.  **The Debtors Have Not Met Their Burden**

Assuming *arguendo* that the Debors were really seeking to amend their objections as opposed to filing new objections – which the Canadian Claimants dispute – then they must deal with a number of insurmountable roadblocks. Rule 7015 of the Federal Rules of Bankruptcy provides that, "Rule 15 F.R.Civ.P. applies in adversary proceedings." *See also In the Matter of Los Angeles Trust Deed & Mortgage Exchange*, 464 F.2d 1136, (C.A. 9th 1972) *cert. denied* 93 S.Ct. 558, 409 U.S. 1964. Courts recognize that Rule 15 does not operate in a vacuum. When amendment is requested in a case where a scheduling order governs the prosecution of issues, any amendment requested after a scheduled deadline or incongruous with the Court's determined schedule must first be analyzed pursuant to the standard demanded by F.R.Civ. P. 16.

> District courts are required to "enter a scheduling order that limits the time to ... join other parties and to amend the pleadings ..." Fed.R.Civ.P. 16(b). Such orders "control the subsequent course of the action unless modified by a subsequent order," Fed.R.Civ.P. 16(e), and may be modified only "upon a showing of good cause." Fed.R.Civ.P. 16(b). This good cause standard precludes modification unless the schedule cannot "be met despite the diligence of the party seeking the extension." Fed.R.Civ.P. 16 advisory committee's note; *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992) ("If [a] party was not diligent, the [good cause] inquiry should end.")." *Sosa v. Airprint Systems, Inc.* 133 F.3d 1417, 1418 (C.A.11 (Fla.),1998).

---

[33]The Debtors argue in their Motion to Vacate that they already raised repose in their 15th Objection. The Canadian Claimants will address that argument at the appropriate time (and the obvious response that if the Debtors had done so, they would not be seeking an amendment now). What is important at this point is that the Debors have admitted they knew the repose law in 2005 when they filed their original objections.

At the Debtors insistence and after several hearings regarding scope, this Court entered a scheduling order intended to assist in the orderly resolution of claims. This order was entered upon the Debtors' promises of increased efficiency and delivered procedural torpor. It contained specific deadlines for discovery, disclosures and summary judgment practice, and set very short time frames to accomplish these objectives. Nevertheless, after discovery had closed on PID and 10 days prior to the scheduled trial of those objections, the Debtors disclosed its intention to try 26 PID objections it had never raised. The Debtors could have raised these objections in a timely fashion. They inexplicably did not.

To compound this problem, when the Debtors were called on this issue, rather than seeking permission to file new objections, or filing a motion for leave to amend their objections, or, more appropriately, to amend the court's scheduling order to allow for discovery and proper motions practice on these new objections, the Debtors simply filed updated objections and asked the Court to accept them *nunc pro tunc*. Moreover, the Debtors further "updated" almost 100 additional objections involving statues of repose in Canada. When the Debtors finally got around to moving the Court for permission to file amended objections, they failed to offer any explanation or "cause" for their tardiness. They failed to do so, even though the deadline for claimants to file expert reports or even name experts to deal with these new objections had expired; the deadline for propounding or completing discovery had expired; and the deadline for dispositive motions had expired. The Debtors' omission is fatal to their current motion. As explained in *Odyssey Travel Center, Inc. v. RO Cruises, Inc.*, 262 F.Supp.2d 618, 631 (D.Md.,2003):

> "While a motion to amend a complaint after the deadline in a scheduling order triggers Rule 15(a) concerning liberal amendment of pleadings, it also triggers Rule 16(b) governing modifications to a scheduling order. *See also Daso v. The Grafton Sch., Inc.*, 181 F.Supp.2d

11

485, 488 (D.Md.2002). The court recently noted in *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 373 (D.Md.2002) that the standards for satisfying Rule 15(a) and Rule 16(b) are at odds. While Rule 15(a) states that "leave shall be given freely when justice so requires," Rule 16(b) states that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge...." Noting that neither the Supreme Court nor the Fourth Circuit has dealt decisively with the interplay of the two rules when a motion to amend is filed after the deadline set in a scheduling order has passed, the court followed the two-step analysis set forth in *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W.Va.1995). *See Rassoull*, 209 F.R.D. at 373. Under that framework, once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b); if the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under 15(a). *Id., citing Marcum*, 163 F.R.D. at 254."

It is the recognition that a Court must be able to control its docket and not be subject to the whims of one of the parties frustrating the process which has led Courts to view actions contrary to scheduling deadlines with skepticism. Without the exercise of this power, controversies could drag on and on without end, becoming wars of attrition. An objection filed inexplicably tardy creates a three fold problem. First, allowance of this practice rewards the tardy, inattentive or devious litigant. Second, it creates a notice and due process issue for the adversary who is forced to fully prepare for trial on new matters in a greatly compressed time-frame. Third it creates an unpredictable docket for the Court. This realization shaped the Court's opinion in stating "The better interpretation of Federal Rule 16(b) and 56 is that a party may file a motion for summary judgment "at any time" until the time limit for filing motions under a district court's Federal Rule 16(b) scheduling order expires. This approach is consistent with other decisions holding that Federal Rule 16(b) requires courts to set and enforce deadlines for the filing of summary judgment motions". *Julian v. Equifax Check Services, Inc.* 178 F.R.D. 10, 15 (D.Conn.,1998). *See, e.g., Dedge v. Kendrick*, 849 F.2d 1398 (11th Cir.1988), *Kennedy v. City of Cleveland*, 797 F.2d 297, 301 & n. 6 (6th Cir.1986); *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir.1985); *Chiropractic Alliance*

*of New Jersey v. Parisi,* 164 F.R.D. 618, 621-22 (D.N.J.1996); *Tyler v. City of Manhattan,* 849 F.Supp. 1429, 1434 (D.Kan.1994), *Bradford v. State of Hawaii,* 846 F.Supp. 1411, 1415 (D.Haw.1994); *Kinberg v. Colorforms,* Nos. 89 Civ. 1156 & 89 Civ. 1292, 1991 WL 285621, at 3-4 (S.D.N.Y.1991); *Busse v. Gelco Express Corp.,* 678 F.Supp. 1398, 1402-03 (E.D.Wis.1988).

However, even if we analyze the tardy objections under a strict Rule 15 analysis, the law mandates exclusion of the objections. The types of reasons that might justify denial of permission to amend a pleading include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party." *Computer Acceleration Corp. v. Microsoft Corp.* 2007 WL 974232, *5 (E.D.Tex.) (E.D.Tex.,2007) citing *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 598 (5th Cir.1981). A court may deny a motion to amend under Rule 15(a) when the record demonstrates that amendment would be, among other reasons, futile, made in bad faith, the product of undue delay, or a dilatory tactic on the part of the movant. *Hatch v. Dep't for Children, Youth & Their Families,* 274 F.3d 12, 19 (1st Cir.2001). The record reveals ample argument that all of these may apply. Moreover, the debtor's objections are in disaccord with the most important aspect of any Rule 15 analysis.

"The most important factor the Court must consider when deciding whether to grant a motion for leave to amend is the possibility of prejudice to the opposing party." Wright, Miller & Kane, *supra,* § 1487 (citing, e.g., *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971)). Where "the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial.'" *Djourabchi v. Self* 240

13

F.R.D. 5, 13 (D.D.C.,2006). The "prejudice to the opposing party, not the diligence of the moving party, is the crucial factor in determining whether or not to grant leave to amend." *Smith v. Costa Lines, Inc.* 97 F.R.D. 451, 453 (D.C.Cal.,1983) *citing Jordan v. County of Los Angeles,* 669 F.2d 1311, 1324 (9th Cir.), *vacated on other grounds,* 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982).

Courts have recognized that as time progresses, the ability to amend must be curtailed. As a case progresses and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting." *Steir v. Girl Scouts of the USA,* 383 F.3d 7, 12 (1st Cir.2004). Indeed, the "standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Id.* As a general rule "the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Steir,* 383 F.3d at 12 *(citing Acosta-Mestre v. Hilton Int'l of P.R., Inc.,* 156 F.3d 49, 52-53 (1st Cir.1998)). Motions to amend are disfavored when the "timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy.' " *Steir,* 383 F.3d at 12 *(quoting Acosta-Mestre,* 156 F.3d at 52)." *Feliciano Caceres v. Landfill Technologies Corp.* 239 F.R.D. 46, 50 (D.Puerto Rico,2006).

**D.    The Debtors Have Waived Their Right to Further Object to Claims**

On December 22, 2003, the Debtors filed their Motion of Debtors For Limited Waiver of Del.Bank.LR 3007-1 For The Purpose of Streamlining Objections to Certain Claims Filed Pursuant to the Bar Date Order ("Limited Waiver Motion").[34] In their Motion, the Debtors specifically

---

[34] Motion of Debtors For Limited Waiver of Del.Bank.LR 3007-1 For The Purpose of Streamlining Objections to Certain Claims Filed Pursuant to the Bar Date Order. (December 22, 2003) [Doc. 4853].

recognized the applicability of Rule 3007 and the fact that they would waive their objections if they did not comply with its provisions:

> Specifically, the Debtors request that this Court waive: (i) Local Rule 3007-1's limitations concerning the number of claims that may be subject to a substantive omnibus objection and (ii) the requirement in Local Rule 3007-1 that the Debtors file all substantive objections to a particular Claim in a single objection. Rather than raising all substantive objections with respect to each claim in the first instance, the Debtors seek authority to file initial omnibus objections to groups of claims according to certain "gateway" deficiencies, while maintaining their right to raise subsequent, substantive objections with respect to these claims.
>
> * * * *
>
> *If the Debtors were forced to comply with Local Rule 3007-1(f)(iii)* at this time (when they are uncertain as to the fundamental nature of many of the Claims), *the Debtors will likely waive valuable defenses and claims otherwise available.*[35]

The Court granted the Motion at a hearing on March 22, 2004, and memorialized its ruling in a July 19, 2004 Order ("Limited Waiver Order").[36] Notwithstanding the relief they obtained, however, the Debtors did not file their objections until September 1, 2005.[37] Shortly thereafter, the Court entered its December 19, 2005 Modified Scheduling Order listing the specific objections and when they would be tried.

Based upon the record before the Court today, the Debtors clearly have waived their right to further object to claims. The Debtors have failed to amend their objections for almost two years.

---

[35] *Id.* at 1-2, 6 (emphasis supplied).

[36] Order Granting Limited Waiver of Del.Bankr. LR 3007-1 for the Purpose of Streamlining Objections to Certain Claims Filed Pursuant to the Bar Date Order (July 19, 2004) [Doc. 4853].

[37] Debtors' Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims (September 1, 2005) [Doc. 9315].

The Debtors have failed to ask the Court to further modify the December 19, 2005 Modified Scheduling Order. The Debtors have failed to seek an amendment to Exhibit A to the October 13, 2006 Amended Scheduling Order. The Debtors have failed to explain why they did not move to amend their objections after S&R's March 19, 2007 responses to the Debtors' multiple Motions for Summary Judgment.[38] The Debtors have failed to file a motion seeking the amendment to their objections after S&R filed its Motion to Extend Deadlines because of the Debtors' failure to file objections. Lastly, the Debtors have failed to file a motion seeking to amend objections after two recent hearings before the Court.

Simply stated, there is nothing in the record to refute this overwhelming evidence of waiver. If the Debtors had attempted to justify their inaction, S&R would have insisted upon a factual presentation, as opposed to lawyer talk. For all we know today, the Debtors may well have made a conscious decision not to pursue the objections they now want to add. Alternatively, for all we know, the Debtors may have discovered their failure to make certain objections months or years ago and decided that rather than bringing this omission to the Court's attention by an appropriate motion they would try and slip these objections into the proceedings under the radar screen. In any event, it is simply too late now for the Debtors to assert new objections.

---

[38]S&R filed four briefs in which it argued that the Debtors had failed to raise claim objections: Anderson Memorial Hospital's Response to Debtors' Motion for Summary Judgment Directed to 88 Claims from Canada Based Upon the Statute of Limitations (March 19, 2007) [Doc. 14898]; Anderson Memorial Hospital's Response to Debtors' Motion for Summary Judgment Directed to 9 Claims Based upon the Statutes of Limitation of Arkansas, Georgia, and Delaware (March 19, 2007) [Doc. 14904]; Anderson Memorial Hospital's Response to Debtors' Motion for Summary Judgment directed to 10 Claims from The State of New York (March 19, 2007) [Doc. 14894]; Anderson Memorial Hospital's Memorandum in Opposition to Debtors' Motion for an Order Pursuant to F.R.B.P. 7056 Disallowing and Expunging Claim Nos. 12315 and 12395 on Product Identification (March 19, 2007) [Doc. 14895].

F.  **The Debtors Cannot Meet their Burden Because They Are the Authors of Their Own Undoing**

As set forth in the Motion to Strike and the PD Committee's Objection, the Debtors cannot be heard to complain or seek a change in the rules because they are the authors of their own undoing.

G.  **Permitting The Debtors to Litigate Updated Objections Would Be Prejudicial to Claimants**

The Canadian Claimants have set forth some of the prejudice that would enure to them if the Debtors are permitted to introduce new objections into this proceeding after the entry of scheduling orders, the retention of expert witnesses, discovery, and legal motions and oral arguments. However, because the Debtors have not attempted to justify their efforts to add 125 objections, the Canadian Claimants should not have to explain all the reasons why such a process would result in substantial prejudice to S&R's claimants. Indeed, it would be unreasonable to force Claimants to make a showing unless and until the Debtors at least attempt to meet their burden and explain why they have come in at this late date with a request to change the rules they championed when they convinced the Court to modify the rules and permit them to proceed down this path.

Respectfully submitted:

Christopher D. Loizides (#3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728
E-mail: loizides@loizides.com

                                      SPEIGHTS & RUNYAN
                                      Daniel A. Speights (SC Fed. ID No. 4252)
                                      Marion C. Fairey, Jr. (SC Fed ID No. 6101)
                                      200 Jackson Avenue, East
                                      Post Office Box 685
                                      Hampton, SC 29924
                                      Telephone: (803) 943-4444
                                      Facsimile: (803) 943-4599

                                      Counsel to Speights & Runyan

May 18, 2007