IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |

**Objection Deadline: June 8, 2007 at 4:00 p.m.**
**Hearing Date: June 25, 2007 at 1:00 p.m.**
**(in Pittsburgh, PA)**

## DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO MAKE LEGALLY REQUIRED MINIMUM CONTRIBUTIONS TO DEFINED BENEFIT PENSION PLANS COVERING DEBTORS' EMPLOYEES

The above-captioned debtors and debtors in possession (collectively, the

"Debtors") respectfully move this Court for the entry of an order authorizing the Debtors to

make the minimum contributions to the defined benefit retirement plans covering the Debtors'

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch Nest Coal Company, H-G Coal Company.

employees in the United States (the "Grace Retirement Plans" or "Plans") required under

federal law during the period July 15, 2007 to April 15, 2008 inclusive (the "07-08 Funding

Period"). The total of the legally required minimum contributions for the 07-08 Funding Period

under current law will be approximately $72 million. In support of this Motion, the Debtors

respectfully state as follows:

<h3 style="text-align:center">Jurisdiction</h3>

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C.

§§ 157(b)(2)(A) and (O). Venue of this proceeding and this Motion is proper in this district

pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is

§§ 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code").

<h3 style="text-align:center">Background</h3>

2.      On April 2, 2001 (the "Petition Date"), each of the Debtors in these

chapter 11 cases (collectively, the "Chapter 11 Cases") filed a voluntary petition for relief

under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases have been consolidated for

administrative purposes only, and, pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code,

the Debtors continue to operate their businesses and manage their properties as debtors in

possession.

3.      Since 2003, the Debtors have requested and received Court permission to

make contributions to the Grace Retirement Plans pursuant to five prior funding motions

(collectively, the "Prior Funding Motions"). With respect to each such motion, prior to the

applicable hearing date, the management of the Debtors have discussed the applicable motion

with the Official Committee of Unsecured Creditors, the Official Committee of Property

Damage Claimants, the Official Committee of Personal Injury Claimants and the Official

Committee of Equity Security Holders  (collectively, the "Committees") and the Future

Claimants' Representative (the "FCR"), as requested.

4.      The Court entered orders approving the requests under each Prior

Funding Motion (as modified).  In accordance with those orders, the Debtors contributed

approximately $48.5 million to the Grace Retirement Plans in 2003[2], approximately $20

million in 2004, approximately $24.1 million in 2005[3], approximately $101.4 million in 2006[4],

approximately $16.3 million in January and $20.6 million in April 2007.[5]

5.      In this Motion, the Debtors are seeking to continue funding the Grace

Retirement Plans by timely making the legally required minimum contributions, which is

consistent with the funding approach that was initially articulated in the Prior Funding Motion

submitted on May 23, 2005 (Docket No. 8484) (the "2005 Funding Motion") and the Court's

order dated June 22, 2005 (Docket No. 8667).  The Debtors believe that this approach has had

a beneficial impact on the Debtors' estate and its creditors, and that the continuation of this

approach continues to be in the best interest of the Debtors' estate and its creditors.

---

[2]  This amount includes a contribution in 2003 of approximately $8.5 million for the Curtis Bay union pension plan, based on a separate motion and court order dated March 3, 2003 (Docket No. 3445).

[3]  This amount includes a contribution in 2005 of approximately $7.9 million to two union pension plans covering union employees at its Lake Charles, Louisiana and its Chattanooga, Tennessee plants, based on a separate motion and court order dated June 22, 2005 (Docket No. 8666).

[4]  This amount includes a contribution in 2006 of approximately $1.1 million to one union pension plan covering union employees at its Chicago Dewey & Almy Plant.

[5]  See Exhibit C hereto for a list of the actual contributions to the Grace Retirement Plans for each calendar year from 2005 until 2007, as well as estimated annual contributions through 2008.

6.    The Debtors have provided each of the Committees and the FCR with a prior draft of this Motion and have discussed the Motion with them and their representatives who have requested such discussions.

### Grace Retirement Plans

7.    The Prior Funding Motions included considerable background regarding the Grace Retirement Plans and the importance of maintaining those Plans and supporting their financial viability. That background continues to be valid. In summary, following is a review and update of some of the information noted originally in the Prior Funding Motions:

8.    The Grace Retirement Plans currently consist of thirteen funded, defined benefit pension plans, each of which is qualified under section 401(a) of the Internal Revenue Code (the "Code").

- The most significant Grace Retirement Plan is the W. R. Grace & Co. Retirement Plan for Salaried Employees (the "Grace Salaried Plan"), which comprises approximately 80% of the assets and 82% of the liability of the Grace Retirement Plans in the aggregate (depending on the measure of liability).

- The Debtors have a long history of providing employees with defined benefit pension plans.

- Many of the Grace Retirement Plans are maintained pursuant to collective bargaining agreements.

- The employers that are considered competitors or peers of the Debtors' businesses generally maintain defined benefit pension plans for their employees.[6]

- The "plan year" of each Grace Retirement Plan is a calendar year.

---

[6]    In 2006, the Debtors retained Watson Wyatt to provide updated information regarding the utilization of defined benefit plans by competitors. The Debtors have made that information available to the Committees.

## Funded Status of the Grace Retirement Plans

9.      Exhibit A to this motion updates several different calculations to measure the liabilities and assets of the Grace Retirement Plans, which were originally used in the Prior Funding Motions. All amounts on Exhibit A have been calculated by the actuary of the Grace Retirement Plans.

10.     As indicated on Exhibit A, the funded status of the Grace Retirement Plans has improved. The Plans, however, are still underfunded by most accepted measures (except for the "economic obligation" measure). As of January 1, 2007, the amount by which the Plans were funded ranges from $+17 million to $-230 million, depending on the measure used.[7]

11.     As specified on Exhibit A, the total market value of assets as of January 1, 2007 was approximately $737 million. This is an increase of approximately $92 million from January 1, 2006 (when the market value was approximately $645 million). The increase in the asset value during 2006 was the result of the Debtors' contribution of approximately

---

[7]    Another recognized measure of the funded status of defined benefits plans, like the Grace Retirement Plans, is the basis required by the Pension Benefit Guaranty Corporation ("PBGC") for filings under ERISA section 4010. As a result of the underfunded status of the Grace Retirement Plans, the Debtors were required to make an ERISA section 4010 filing for the 2006 plan year. That filing reported that the Plans were underfunded by approximately $286 million as of December 31, 2006 (calculated on the basis required by the PBGC for such filing), which represents a decrease in underfunding when compared to the prior year's filing. For the 2005 plan year, the ERISA Section 4010 filing reported the Plans were underfunded by approximately $572 million. (The relatively large decrease in the liability from 2005 to 2006 is the result of the higher interest rate that the PBGC mandated to calculate the 2006 liability, in addition to the effects of the contributions and rate of return summarized in Paragraph 10.) The Debtors were also required to make an ERISA section 4010 filing for previous years. As of the end of 2003 and 2004 the filing reported that Grace Retirement Plans were underfunded by approximately $394 million and $487 million.

$101.4 million to the Grace Retirement Plans and asset returns of approximately 12.3% during 2006; offset by approximately $87.5 million that was paid out of the Plans during the year.[8]

### Employees Covered by the Grace Retirement Plans

12.     Virtually all of the Debtors' current employees are covered by one of the Grace Retirement Plans.  The Grace Salaried Plan alone covers over 1,900 active, salaried employees (of a total U.S. workforce of approximately 3,100 employees), or over 60% of the Debtors' U.S. workforce.

13.     The Debtors' employees continue to consider ongoing benefit accruals under the Grace Retirement Plans and the financial viability of those Plans as among the most important aspects of their employment relationship with the Debtors.

14.     The Debtors' employees continue to closely monitor the financial viability of the Grace Retirement Plans through the Debtors' ERISA and SEC disclosures, as well as other research techniques.

15.     The Debtors' employees continue to emphasize to the Debtors' management the importance of the Grace Retirement Plans.

16.     The Debtors' management and employees continue to be motivated to work towards successfully creating value for the Debtors' estates by growing the revenues and profits of the Debtors' businesses, with the expectation that at least a portion of the cash

---

[8]    During 2005, approximately $80.6 million was paid out of the Grace Retirement Plans.  The Debtors project that in 2007 approximately $80 to $100 million will be paid out of the Plans.

generated by those efforts would be used to provide the funding necessary to assure the long-term viability of the Grace Retirement Plans.

17.     The Debtors' management believes that continuing to make at least the legally required minimum contributions to each of the Grace Retirement Plans is essential to maintaining the morale of the Debtors' workforce and its confidence in management, and thereby the productivity and long-term profitability of the Debtors' businesses.  The employees are vital to maintaining and enhancing the value of the Debtors' estate and to the Debtors' successful reorganization.

<h3 style="text-align:center"><b>Prior Funding Motions</b></h3>

18.     Each of the Prior Funding Motions was tailored to recognize the concerns of the Debtors' employees regarding the financial viability of the Grace Retirement Plans, and the value of the employees to the Debtors' estates and their vital role in a successful reorganization of the Debtors.  In addition, those Motions considered the concerns voiced by the Committees and their advisors - some of which expressed concern regarding the conservation of the Debtors' cash, while others expressed an interest in maintaining the morale of the Debtors' workforce.

19.     In the 2005 Funding Motion, the funding approach was simplified to satisfy the single most important goal of the multiple objectives previously considered in the 2003 and 2004 funding motions – i.e., making only the legally required minimum contributions for a 12-month period commencing July 2005. As specified in that Motion, the Debtors' management believed that simplifying the funding approach in this manner recognized the concerns of the Committees regarding the continued conservation of the Debtors' cash, while

addressing employee concerns regarding the continued viability of the Grace Retirement Plans.

The Court signed the order approving that funding approach of the 2005 funding motion on

June 22, 2005.

### 07-08 Funding Approach

20.    Consistent with the funding approach initially established by the 2005

Funding Motion and the related Court Order, the funding approach for the 07-08 Funding

Period (the "07-08 Funding Approach") is to make only those contributions to the Grace

Retirement Plans that are necessary to satisfy the minimums that are legally required by

applicable law.[9] Each such contribution shall be made no sooner than 1 month before the

deadline imposed by federal law (unless a significant corporate income tax advantage may be

achieved by making a contribution of the same amount earlier).

21.    The legally required minimum contributions to the Grace Retirement

Plans for the 07-08 Funding Period are specified in the following schedule (the "Schedule"):

---

[9]    Consistent with the most recent Prior Funding Motions, the 07-08 Funding Approach does not include the objective of eliminating the requirement of the Grace Retirement Plans to pay PBGC variable rate premiums. It is estimated that the Grace Retirement Plans will be required to pay approximately $1.2 million in PBGC variable rate premiums for 2007.  In order to avoid the requirement to pay all such premiums for 2006, the Debtors would be required to contribute approximately $109 million to the Plans by September 15, 2007, in addition to the legally required minimums.

| Payment Due Date[10] | Contributions[11] | Plan Year |
|---|---|---|
| **2007** | | |
| July 15 | $8,982,359[12] | 2007 |
| September 15 | 15,343,157 | 2006 |
| October 15 | 14,830,385 | 2007 |
| **2008** | | |
| January 15 | $14,830,385 | 2007 |
| April 15 | 17,873,596 | 2008 |
| Total | **$71,859,882** | |

22.     The contributions listed on the Schedule for the 2006 and 2007 plan years have been finalized, and are not subject to change as a result of future market performance of the assets of the Grace Retirement Plans or any anticipated changes in applicable law.

23.     The April 15, 2008 contribution listed on the Schedule is the first quarterly contribution required for the 2008 plan year.[13] The actual minimum contributions for

---

[10]  Funding Period to maximize tax benefits, as well as to minimize required PBGC variable rate premiums for the Grace Retirement Plans.

[11]  All contributions specified in this motion and the exhibits hereto have been calculated by the actuary of the Grace Retirement Plans.

[12]  The most recent prior estimate of the July 2007 minimum contribution for the 2007 plan year was $5.1 million, and the subsequent 2007 plan year quarterly contributions (payable in October 2007 and January 2008) were estimated at approximately $12.9 million. These estimates were included in the motion submitted to the Court on January 22, 2007. The principal reason why the actual contributions are greater than the prior estimates is the application of a new mortality table, published by the IRS on February 2, 2007 (72 FR 4955), which is required to be used to calculate 2007 minimum contributions (as well as subsequent minimum contributions). See footnote 2 on Exhibit A for more information.

[13]  The listed contribution amount for April 15, 2008. which is the first quarterly contribution for the 2008 plan year, is equal to 25% of the actual required minimum contribution for the 2007 plan year without regard to any credit balance, with respect to each of the Grace Retirement Plans that require quarterly contributions. This is the maximum amount that would be required as the first quarterly contribution for the 2008 plan year, under Internal Revenue Code section 412, regardless of the results of the 2008 actuarial valuation report. If, on the

the 2008 plan year will not be finalized until the 2008 actuarial valuation report is completed in late April or May 2008. Any portion of the April 15, 2008 contribution that, in accordance with the 2008 actuarial valuation report, is in excess of the actual quarterly minimum contributions required for the 2008 plan year will be used to reduce the second quarterly contribution required for the 2008 plan year due July 15, 2008.

24.     Unlike the 2006 Prior Funding Motion, there are no anticipated changes in applicable federal law that could affect the amount of the minimum contributions required to be made to the Grace Retirement Plans during the 07-08 Funding Period, except with respect to the first quarterly contribution for the 2008 plan year due April 15, 2008, to the extent that any regulations issued under the Pension Protection Act affect the calculation of contributions for that plan year.

25.     It is necessary to secure Court approval for the payment of legally required minimum contributions for the 07-08 Funding Period at this time because the first due date with respect to such contributions is July 15, 2007, less than 1 month after the hearing date for this motion.

26.     The Debtors request the Court approve payment of the legally required minimum contributions due during the full period encompassed by the 07-08 Funding Period. If the Court approves the Debtors' motion to fund the legally required minimums for the 07-08 Funding Period, then the Debtors do not anticipate filing another Grace Retirement Plan

---

other hand, the 2008 actuarial valuation report concludes that the required 2008 quarterly contributions are less than the April 15 contribution, then the excess of the April 15 contribution will be used to offset the second required 2008 quarterly contribution due July 15, 2008.

funding motion for approximately 1 year, in order to secure approval to make legally required minimum contributions for a subsequent period. The first such contribution would be due in July, 2008, as specified in Exhibit B.

### Addressing Employees' and Creditors' Concerns

27.     The Debtors believe that the legitimate concerns of their employees will be addressed if management can report to the employees both the recent improvement in the Plans' funded status, and with the Court's approval for the Debtors to make all of the legally required minimum contributions to the Grace Retirement Plans for the entire 07-08 Funding Period.

28.     The Debtors also believe that the legitimate concerns regarding the Debtors' conservation of cash will continue to be addressed by the 07-08 Funding Approach because cash will only be used to satisfy the minimum contribution requirements imposed by applicable law, and not to make any additional contributions to satisfy any other objective.

29.     In addition, the Debtors' annual funding obligations to the Grace Retirement Plans are decreasing to a level that is more sustainable, as indicated in Exhibit C, which lists all contributions made (and estimates of contributions to be made) during each calendar year from 2005 to 2008.

### Relief Requested

30.     By this Motion, the Debtors seek authority to make the minimum contributions required by applicable federal law to one or more of the Grace Retirement Plans for the period July 15, 2007 to April 15, 2008 (inclusive).

## Basis for Relief

31.     Section 105(a) of the Bankruptcy Code "permits the court to issue any order that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business property of the estate." 11 U.S.C. § 363(b). A court has the statutory authority to authorize a debtor to use property of the estate pursuant to § 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Lionel Corp., 722 F.2d 1063, 1071(2d Cir. 1983), see also In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); Fulton State Bank v. Schipper, 993 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by "some articulated business justification"); Stephen Indus., Inc. v. McClun, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b); In re Ernst Rome Ctr Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

32.     Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. See Lionel Corp., 722 F.2d at 1070-71. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Res., Inc., 147 B.R. 654, 656 (S.D.N.Y. 1992). A

party in interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." Montgomery Ward, 242 B.R. at 155.

### The Proposed Transactions Are Supported by Sound Business Judgment

33.     The Debtors respectfully submit that implementing the 07-08 Funding Approach is the least costly approach to funding the Grace Retirement Plans in accordance with the requirements imposed by applicable federal law.  Such implementation will also allow for the funding of the Grace Retirement Plans in a manner that helps to maintain the morale and productivity of the Debtors' employees throughout the United States, and that maintains competitive employee benefits vis-à-vis the Debtors' competitors and peers, which is key to continuing to maintain a dedicated, motivated and loyal work force.  Such a work force is a vital component of the Debtors' estates and restructuring efforts.

34.     The Debtors have determined in their business judgment that implementing the 07-08 Funding Approach is in the best interests of the Debtors' estates and creditors.  As specified above, clear business reasons exist to justify, under section 363(b) of the Bankruptcy Code, such implementation.

### Notice

35.     Notice of this Motion has been given to (i) of the Office of the United States Trustee, (ii) counsel to the Debtor-In-Possession lenders, (iii) counsel to each Official Committee appointed by the United States Trustee, and (iv) those parties that requested papers under Fed.R.Bankr.P.2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

36.     No prior Application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order substantially in the form attached hereto (i) authorizing the Debtors to make the minimum contributions to the Grace Retirement Plans for the 07-08 Funding Period required by federal law, and (ii) granting such other and further relief as the Court deems just and proper.

Dated: May 21, 2007

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Andrea L. Johnson
200 East Randolph Drive
Chicago, ILL 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P. O. Box 8705
Wilmington, Delaware 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors-In-Possession