IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

Objection Deadline: June 8, 2007 at 4:00 p.m. (ET)
Hearing Date: June 25, 2007 at 2:00 p.m. (ET)
(in Pittsburgh, PA)

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING SETTLEMENT OF AN ASBESTOS PROPERTY DAMAGE CLAIM FILED BY TRUMBULL MEMORIAL HOSPITAL AND PROTECTING CONFIDENTIALITY OF CERTAIN PORTIONS THEREOF

The Debtors have negotiated an agreement (the "Settlement") with Trumbull Memorial Hospital (the "Claimant") settling Claimant's asbestos property damage claim number 7028 (the "Claim"). Debtors and Claimant have negotiated in good faith to reach the Settlement and have determined it is in the best interests of the estate to approve the Settlement.

By this motion the Debtors hereby move this Court, pursuant to Bankruptcy Code section 107(b) and Bankruptcy Rules 9018 and 9019, for the entry of an order approving the terms of the Settlement with Claimant and granting certain related relief. In support of this motion (the "Motion"), the Debtors respectfully represent as follows:

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

1. On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2. By order dated April 25, 2002, this Court set March 31, 2003, as the last date for filing proofs of claim for all pre-petition claims relating to asbestos property damage, non-asbestos claims (including all governmental claims), and medical monitoring claims [Docket No 1960] (the "Bar Date").

3. On or prior to the Bar Date, Claimant filed the Claim against the Debtors on a W. R. Grace & Co. Asbestos Property Damage Proof of Claim Form.

4. On September 1, 2005, the Debtors filed their *15th Omnibus Objection (Substantive)* [Docket No. 9315] objecting to the Claim on various grounds. Claimant responded to the objection on or about October 21, 2005 [Docket No. 9735]. Thereafter, Debtors and Claimant engaged in extensive negotiations regarding a final resolution of the Claim. As a result of those negotiations, the parties have reached an agreement memorialized in the Settlement which liquidates and resolves all outstanding issues related to the Claim.

## The Settlement

5. After good faith negotiations the Debtors and the Claimant reached the Settlement, which represents a compromise that is in the best interest of the estates. The salient terms of the Settlement are as follows:[1]

- The Settlement Amount represents a final liquidation of the Claim.

---

[1] This summary and the terms and conditions of the Settlement described in this Motion are qualified in their entirety by the terms and conditions of the Settlement, a copy of which, without Exhibit B thereto describing the Settlement Amount, is attached hereto as Exhibit A. Capitalized terms used in the summary but not defined therein shall have the meaning ascribed to them in the Settlement.

2

- For purposes of voting with respect to a proposed plan of reorganization, Claimant shall be entitled to one vote and the amount of Claimant's claim for voting purposes shall equal the Settlement Amount.

- The Claimant releases all claims against Grace.

- In the event that either: (i) the chapter 11 plan of reorganization ultimately confirmed in the Bankruptcy does not provide Claimant a distribution on its claim equal to 100% of the Settlement Amount; or (ii) the Bankruptcy is converted to a case under Chapter 7 of the Bankruptcy Code, the Claimant may void the Agreement and reassert its Claim as presently filed as if the Agreement had never been entered into. In the event that the chapter 11 plan of reorganization ultimately confirmed in this Bankruptcy is confirmed over the objection of the Debtors to confirmation of such plan in its entirety, Grace may void the Agreement. If the Claimant or Grace voids the Agreement, Grace or any successor Trustee may assert any claims or defenses it has under applicable law as if the Agreement was never entered into, including, but not limited to, reviving any objections to the Claim.

- The Parties agree to seek entry of a Court order that the Agreement, the Settlement provided for therein (whether or not consummated), and any actions taken pursuant to the Agreement shall not be construed, offered or received by anyone for any purpose whatsoever, including, but not limited to:

  - an estimation proceeding under section 502(c) of the Bankruptcy Code,

  - as, or deemed to be, evidence of a presumption, concession or an admission by Grace of the truth of any fact alleged or the validity or value of any of the Claim or any other claims asserted against Grace or of the deficiency of any defense which has or could have been asserted to the Claim, or of any liability, fault, or wrongdoing on the part of Grace with respect to the Claim or any other claims asserted against Grace (other than in such proceedings as may be necessary to effectuate the provisions of this Agreement), or

  - as any admission by Grace that its products are to be found or have been identified as present the Claimant's building or other facilities.

### Request for Approval of the Settlement

6. By this Motion, the Debtors seek authority, pursuant to Bankruptcy Code section 107(b) and Bankruptcy Rules 9018 and 9019(a), to enter into the Settlement and thereby

3

settle and resolve all issues pertaining to the Claim as may be set forth in the Settlement, and to maintain the confidentiality of the Settlement Amount with respect to the general public and other asbestos property damage claimants.

### A.   Approval of the Settlement

#### 1.   Bankruptcy Rule 9019(a)

7.   Bankruptcy Rule 9019(a) provides, in relevant part, that: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Compromises and settlements are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)).

8.   The standard that determines whether a settlement should be approved is whether the settlement is in the best interests of the estate. In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997); In re Genesis Health Ventures, Inc., 266 B.R. 591, 620 (Bankr. D. Del. 2001). The Third Circuit has adopted a balancing test incorporating four enumerated factors that the bankruptcy court should consider in determining whether to approve a particular compromise or settlement because it is in the best interests of the estate:  (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors. In re Martin, 91 F.3d 389, 393 (3rd Cir. 1996). The Third Circuit has recently held that the Martin factors apply in settling claims against the debtor's estate as well as those held by the estate. In re Nutraquest, Inc., 434 F.3d 639, 644 (3d Cir. 2006) ("[Objector's] primary argument is that Martin is only useful when analyzing a settlement of a claim belonging to the debtor, not a claim against the debtor. We disagree.").

DOCS_DE:127674.1

9. In determining if a compromise or settlement is in the best interests of the estate, bankruptcy courts defer to the debtor's business judgment and approve the settlement as long as it settlement falls above the lowest point in the range of reasonableness. <u>In re Key3Media Group, Inc.</u>, 336 B.R. 87, 93 (Bankr. D. Del 2005); <u>In re Neshaminy Office Building Associates</u>, 62 B.R. 798, 803 (E.D. Pa. 1986); <u>In re Eastwind</u>, 303 B.R. 743, 750 (Bankr. E.D. Pa. 2004). The rationale behind the deference to the debtors' business judgment is the Third Circuit's holding that, "[t]o minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" <u>In re Martin</u>, 91 F.3d at 393 (quoting 9 <u>Collier on Bankruptcy</u> 9019.03[1] (15th Ed. 1993)).

### 2. The Settlement is in the Best Interests of the Estate

10. The <u>Martin</u> standards are met in this case and the Court should approve the Settlement as being in the best interests of the estate.

#### a. Probability of Success

11. Debtors believe they have meritorious defenses that would result in disallowance or substantial reduction of the Claim if it were adjudicated. However, litigation always involves risks and, despite the Debtors' strong track record of having PD Claims disallowed and expunged or significantly reduced, there is the possibility that adjudicating the Claim would result in a decision adverse to the Debtors. Additionally, a large number of complicated legal and factual issues would be at issue, and the Claimant would strenuously contest each one, making the final outcome uncertain.

#### b. Complexity and Expense of Litigation

12. Litigation surrounding asbestos property damage claims (the "PD Claims") tends to be complex and driven by a "war of experts" that is costly and lengthy.

Litigating the Claim would inevitably involve a variety of disputes regarding both the applicable legal standards and the factual issues.

13.     Indeed, the complex legal issues have already required extensive motion practice and discovery in these cases. And, certain factual issues are unique to each case and have required extensive discovery that has been costly and time consuming. Issues include analyzing the building and the alleged asbestos-containing surfacing material, expert evaluation of the alleged hazards, and <u>Daubert</u> hearings on expert testimony. Thus, it is possible that the cost of litigating the Claim could approach or exceed the actual value of the Claim, as well as the Settlement Amount. Additionally, litigating the Claim would further burden the resources of the Court, the Debtors and various creditors.

### c.     Paramount Interests of the Creditors

14.     Additionally, resolving the Claim is, as the Court knows, part of an ongoing effort by the Debtors to either settle or disallow PD Claims, and thereby to remove a contentious body of claimants from the reorganization. Dealing with all of the PD Claims, either by dismissal or settlement, is necessary to complete the reorganization and will assist the Debtors and the Court in concentrating on other critical issues on the path towards a confirmable plan of reorganization. Therefore, settling the Claim is in the interest of all creditors.

15.     In light of the Debtors' experience in litigating PD Claims, the Settlement is fair and reasonable and in the estates' best interests, given the expected litigation costs, the opportunity to move the reorganization forward and the risks that the Claim would or would not be disallowed if adjudicated. For these reasons, the Settlement should be approved.

### B. The Settlement Amount Should Remain Confidential.

16. The Debtors also request the Court's permission to maintain the confidentiality of the Settlement Amount.[2] Given the current state of the PD Claims and ongoing negotiations to settle a variety of PD Claims, disclosing the amount of the Settlement to the general public as well as to other PD claimants with pending claims would not be in the Debtors' best interest. Making the Settlement Amount public could hamper the Debtors' efforts to bring parties to the negotiating table and to complete current negotiations, even if the facts of the various claims were substantially different.

17. Specifically, the Debtors are in the process of negotiating and entering into settlement agreements similar to the Settlement with a variety of asbestos property damage claimants. It could impede those negotiations if the Settlement Amount were made public as parties may improperly attempt to use the Settlement Amount as some sort of precedent for settling other PD claims.

18. Section 107(b) of the Bankruptcy Code provides bankruptcy courts with the power to issue orders to protect entities from potential harm that may result from the disclosure of certain confidential information. Bankruptcy Rule 9018 defines the procedures by which a party may move for relief under section 107(b) of the Bankruptcy Code, providing that "[o]n motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information...." Fed. R. Bankr. P. 9018.

---

[2] The Debtors will disclose the Settlement Amount to the Court *in camera* if so requested. The Debtors will also disclose the Settlement Amount to counsel for the Official Committees appointed in these cases and the Future Claimants' Representative pursuant to the confidentiality arrangements which exist among the parties, upon request. Also, after approval of the Settlement, the Claimant and/or the Debtor may disclose the Settlement Amount to any tax preparer, governmental agency, insurer and/or legal or financial professional, as necessary.

And, Local Rule 5003-1(b) provides that "[a]ny party who seeks to file documents under seal must file a motion to that effect with the Clerk." Del. Bankr. L.R. 5003-1(b).

19. Bankruptcy courts have found that it is appropriate to protect the confidentiality of information where disclosure would reveal confidential material related to litigation. See In re 50-Off Stores, Inc., 213 B.R. 646 (Bankr. W.D. Tex. 1997) (sealing court documents when they would give the litigants hostile to the debtor an unfair advantage that would not exist outside of bankruptcy). Since debtors in bankruptcy have limitations on their ability to conduct litigation, such as having to request a court order to retain counsel and having to file motions to approve settlement agreements, it is appropriate to protect the confidentiality of information if disclosure could be harmful. Id. at 654-55.

20. In non-bankruptcy cases, product liability settlements often include confidentiality clauses. Indeed, Debtors have previously entered into confidentiality clauses, including clauses covering solely the settlement amount, when settling PD Claims. In analogous situations, courts have held that, even under Fed. R. Civ. P. 26(c) (which has a stricter standard for a protective order than Bankruptcy Rule 9018),[3] the amount of a settlement can be sealed. See Gambale v. Deutsch Bank A.G., 377 F.3d 133 (2nd Cir. 2004).

## Conclusion

21. The Settlement has been negotiated in good faith and in the Debtors' business judgment is a fair and full resolution of the Claim. Therefore, the Settlement should be approved as it is in the best interests of the estates to liquidate the Claim. Additionally, the Settlement Amount should remain confidential from the general public and other asbestos property damage claimants in order to protect the Debtors' interest in settling other PD Claims.

---

[3] Fed. R. Civ. P. 26(c) allows protective orders only "for good cause shown."

## Notice

22.     A copy of this Motion has been provided to: (i) the U.S. Trustee; (ii) counsel to each of the official creditors' committees in these chapter 11 cases and the Future Claimants Representative; (iii) counsel to the Claimant; (iv) counsel for all PD Claimants represented by counsel (and claimants themselves if not represented by counsel); (iv) counsel to the Debtors' postpetition lenders; and (v) all parties that have requested special notice pursuant to Bankruptcy Rule 2002.

23.     No previous motion for the relief sought herein has been made to this or any other Court.

*[Remainder of page intentionally blank]*

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto as Exhibit "B," approving the terms of the Settlement, which is attached hereto as Exhibit "A," maintaining the confidentiality of certain parts thereof, and granting such other and further relief as the Court may deem just and proper.

Dated: May 22, 2007

KIRKLAND & ELLIS LLP
David M. Bernick
Janet S. Baer
Lisa G. Esayian
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

/s/ Laura Davis Jones

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession