IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 01-01139 (JKF) |
| W.R. Grace & Co., et al., | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Objections Deadline: May 29, 2007 at 4 pm |
| | ) | Hearing Date: May 30, 2007 at 9 am (Pittsburgh) |

**ANDERSON MEMORIAL HOSPITAL'S MOTION TO STRIKE THE DEBTORS'
DECEMBER 13, 2006 RESPONSES AND OBJECTIONS TO ANDERSON MEMORIAL
HOSPITAL'S OCTOBER 30, 2006 AMENDED REQUESTS FOR PRODUCTION AND
ANDERSON MEMORIAL HOSPITAL'S MOTION TO COMPEL THE DEBTORS
TO PROVIDE FULL AND COMPLETE RESPONSES TO ANDERSON MEMORIAL
HOSPITAL'S OCTOBER 30, 2006 AMENDED REQUESTS FOR PRODUCTION**

Pursuant to the Court's directive near the end Omnibus Hearing on May 21, 2007, Anderson

Memorial Hospital ("Anderson") hereby moves the Court for an Order seeking the relief set forth

herein with respect to the Debtors' Responses and Objections to Anderson's Amended Requests for

Production ("Amended Requests").[1] While Anderson understands the Court's desire to resolve these

discovery issues once and for all, in preparing this 48 hour brief, it must regrettably adopt the

apology attributed to Mark Twain: "Forgive the length of this letter, I did not have time to write a

shorter one."[2] Having said that, Anderson believes that the recitation below will demonstrate how

the Debtors' have been trying to run out the clock on Anderson's discovery for over a year.

---

[1]Anderson's Amended Requests and the Debtors Responses and Objections are attached hereto.
[TABS A and B].

[2]This quote was presented to the Court in the USG bankruptcy by Edward J. Westbrook, Esquire,
in commenting upon the length of the Debtors' Objections to certain claims. Response of the College
Class Action to Debtor's Seventh Omnibus Objection to and Motion to Disallow Asbestos Property
Damage Proofs of Claim Filed by Central Wesleyan College and Others (March 30, 2006) at 2.
[Doc.10747]. According to Mr. Westbrook, "Like many quotes attributed to Mark Twain, this one
appears to have originated from another, in this case the Frenchman, Blaise Pascal. *Id.* at n. 1.

# I. BACKGROUND

On September 1, 2005, the Debtors initiated a contested proceeding against Anderson with the filing of the its Fifteenth Omnibus Objection (Substantive) [Doc. 9315].  Pursuant to In Re Charter Co., 876 F.2d 866 (11th Cir. 1989), Anderson then timely filed a Motion for Class Certification. [Doc. 10014].[3]  In response, the Debtors filed a Brief in Opposition [Doc. 11245].  The Debtors argued, *inter alia*:

- The class certification that was granted to South Carolina Plaintiffs in *Anderson Memorial* was awarded under circumstances and procedures that are so suspect and improper that they should not be credited by this Court. Id. at 27.

- The burden is on the claimant seeking class certification to establish each element [of Rule 23]. Id. at 27.

- The Speights' proposed class action cannot claim to be superior in any way to the case management plans that the Court has already enunciated for the estimation of claims in these cases. Id. at 27.

- Even if 23(b) were satisfied, however, the criteria under Rule 23(a) - numerosity, commonality, typicality and adequacy of representation – cannot be met. Id. at 27.

- [Certifying a class] will create a group of creditors that is unknown, and largely unknowable, in its size and complexity. Id. at 29.

- With respect to adequate representation and adequate protection of the proposed class, there is no showing that Anderson Memorial Hospital and its counsel will adequately represent other members of the proposed class. Quite the opposite is true. Id. at 30.

---

[3]As explained by the Eleventh Circuit:

[A]bsent an adversary proceeding, the first opportunity a claimant has to move under Bankruptcy Rule 9014, to request application of Bankruptcy Rule 7023, occurs when an objection is made to a proof of claim.   Prior to that time, invocation of Rule 23 procedures would not be ripe, because there is neither an adversary proceeding nor a contested matter. *Id*. at 874.

Anderson promptly served a Motion to Partially Lift the Stay so that it could obtain the South Carolina record to refute what the Debtors said as well as to use the evidence presented to the South Carolina Court in support of its Motion to Certify. Amazingly, Grace opposed the Motion. [Doc. 11520, 13236]. As the Court knows, this one narrow issue seeking to be able to use the South Carolina record was thereafter addressed at numerous hearings over the next nine months. The Court agreed to lift the stay by Order dated October 11, 2006. [Doc. 13388].

Also in December 2005, Anderson served very limited discovery directed at the Debtors' arguments. The Debtors filed a Motion for Protective Order on December 19, 2005 ("First Motion for Protective Order") [Doc. 11365]. The First Motion for Protective Order was then deferred while the Court considered a discreet issue regarding notice and later while all parties participated in a plan mediation. Thereafter, on October 13, 2006, on the eve of the October omnibus hearing, the Debtors filed a Reply in support of their First Motion for Protective Order [Doc. 13412]. *Significantly, neither in its First Motion for Protective Order nor in its Reply in Support of Motion for Protective Order did the Debtors argue that the discovery was overly broad or that Rule 408 was implicated.*

The Debtors' First Motion for Protective Order then came to be heard at the October 23, 2006 omnibus hearing. The Court recognized that Anderson should be allowed to go forward with certain parts of its discovery, but thought its requests were overly broad. As explained by the Court:

> THE COURT: All right. Well, I think that request, to the extent it's a document request, is too broad. Asking somebody to give them -- to give you everything they have related to a topic, I think, is simply a fishing expedition. And even the rules of discovery don't give you that much. I think you need to narrow this topic. With respect to a deposition of a person knowledgeable, I'll ask the Debtor to identify a person. You can take your deposition. And to the extent that you get a discovery request in that is more limited in scope and the

3

documents are claimed to be privileged by the Debtor, then they'll have to produce a privilege log in advance of the deposition if in fact that's what they intend to do. But that request, Mr. Speights, I think, is just overly broad. It would require the Debtor to go through every document in the Debtor -- in every file that the Debtor ever had since 1992. Hearing (October 23, 2006) at 75-76.

The Court directed Anderson to serve the Debtors with revised discovery by October 30, 2006. Id.

at 88. As explained by the Court:

> THE COURT: Well, okay. There are an awful lot of assumptions that are being made that I'm not sure are valid or invalid at this point in time. Mr. Speights, I want you to recast the deposition notice and the discovery request , tying the class of documents -- or the nature of the deposition testimony you're looking to an element of Rule 23, so that when I get an objection -- *and Mr. Bernick, I want you to raise every objection you intend to argue. I am not going to have another proceeding like this where I hear objections to relevance and delay but when I get here, I've got Rule 408 and settlement issues and over breadth argued.* Id. at 80 (emphasis supplied).

Pursuant to this directive, Anderson served the Debtors with three distinct discovery pleadings as

follows:

- Notice of Deposition of the Records Custodian(s) for all documents which refer to or relate to Anderson Memorial Hospital's lawsuit prior to the date the debtors filed their Petition for Reorganization" ("Custodian Notice");

- Amended Requests for Production to the Debtors seeking all documents except pleadings relating to sixteen specific topics; and

- Amended Notice of Rule 30(b)(6) Deposition(s) dealing with eleven subject matters.

When Anderson served this revised discovery, it was mindful of the Court's view that it should be

related to Rule 23, and it attempted to comply with that directive. For the reasons discussed below,

Anderson believes that all of its revised discovery fits within this framework. Anderson never

interpreted the Court's ruling to require it to "annotate" its discovery requests. In Anderson's mind,

such a requirement would have been akin to requiring Anderson to file a Motion to Produce, which

placed the burden on the party seeking the discovery, and which was abolished as unworkable when

4

the drafters amended the rules in 1970 to create the Request to Produce. Apparently, neither did the Debtors believe that is what the Court meant when they again sought a protective order.

On November 6, 2006, the Debtors filed their "Motion for Protective Order Against Anderson Memorial's October 30, 2006 Requests for 30(b)(6) Depositions and Documents" ("Second Motion for Protective Order") [Doc. 13588]. Aside from their standard refrain that no discovery should be allowed, the Debtors objected on four specific grounds: the requests seek information that is irrelevant and not reasonably calculated to lead to the discovery of information relevant to Anderson class certification; the requests are extremely burdensome and overly broad; the requests seek information subject to privileges; and the requests exceed the requirements or permissible scope of discovery. Id. at 4-5. *Significantly, the Debtors never suggested that Anderson should have annotated its discovery requests; in fact, while the Debtors quoted from other parts of the transcript, they never referred to this Courts instructions to Anderson and Mr. Bernick quoted above.*

On November 13, 2006, Anderson filed its Response to the Debtors' Second Motion for Protective Order. [Doc. 13651]. Anderson argued that the Court already had ruled that Anderson may take its depositions, and, subject to the Rule 408 issue being separately briefed, may proceed with its request for documents pursuant to an amended request which is not overly broad. Id. at. 4. Anderson also argued that:

> The Debtors have the burden of proof to show that Anderson's discovery is overly broad. Mere lawyer talk in a pleading does not make the request "overly broad" such that "[it] would require the Debtor to go through every document . . . in every file that the Debtor ever had since 1992." Hearing (October 23, 2006) at 75-76. Prior to the bankruptcy, Grace's defense of asbestos PD cases in general and Anderson's lawsuit in particular was managed by its in-house counsel. Whether those documents exist, and the extent of the documents, may well be known by persons currently employed

by Grace, and those persons may well know that their documents are limited in nature. There is no basis to conclude that Anderson's request is overly broad. Furthermore, to the extent that the Debtors have any legitimate objection on this point (and again they never raised it for almost a year in their multiple briefs), they can produce the documents they can identify and include an objection in the response to the request to produce. Id.

The Court heard the parties again at the November 14, 2006 Omnibus Hearing. While Anderson was prepared to argue the connection of its discovery to Rule 23, it suggested that the better way to proceed was for the Debtors' to file specific item by item objections to the discovery. However, despite the Court's express admonition at the previous hearing (*Mr. Bernick, I want you to raise every objection you intend to argue. I am not going to have another proceeding like this where I hear objections to relevance and delay but when I get here, I've got Rule 408 and settlement issues and over breadth argued*), once again Debtors argued something not in their Motion. Specifically, the Debtors asserted (with a demonstrative exhibit already prepared) that Anderson should have annotated its discovery. Had the Debtors said this in their Motion, as required by the Court, Anderson would have been prepared to address that issue at, and more importantly, before the hearing. In any event, following lengthy argument, the Court suggested to Anderson that it should tell the Debtors how each of its discovery requests is reasonably calculated to lead to evidence relevant to class certification. Hearing (November 20, 2006) at 54-55.

On November 21, 2006, the day after the Omnibus Hearing, Anderson was prepared to take the deposition of the Debtors Records Custodian, as noticed, in Wilmington, Delaware. During the November omnibus hearing, Anderson confirmed its understanding that the custodian deposition was "set for tomorrow. I don't believe, and I don't construct the debtors' brief to say that it has objected to that deposition. There's no document request in connection with it. It's just try to get

a hold of what these documents are, or might exist." Hearing (November 20, 2006) at 37.

Significantly, Grace did not contest Anderson's understanding during the ensuing 72 pages of

argument regarding Anderson's discovery. If the Debtors had objected, presumably this narrow

dispute involving only one Custodian Deposition could have been resolved at that time, thus

obviating the necessity for this Motion to Compel and a further hearing. However, the Debtors

waited until after the hearing to inform Anderson that they would not be producing any witness the

following day because, they said, the Custodian Notice was subject to their Second Motion for

Protective Order.

On November 27, 2006, Anderson sent the Debtors a detailed thirteen page letter explaining

how each of its discovery requests is reasonably calculated to lead to evidence  relevant to class

certification.[4]  In other words, what the Court requested Anderson to file today in response to the

Debtors recent complaints is exactly what Anderson sent to the Debtors almost six months ago at

the Court's direction.

On December 4, 2006, Anderson also sent the Debtors a letter requesting a meet and confer,

in which it stated:

> At the November hearing, the Court stated, *inter alia:*
>
> > [N]umber one, the rules require that you two get together and have a
> > discovery colloquy before anybody files any motions. So, that's the first
> > thing that's going to happen. You are going to get together and see if you can
> > resolve discovery issues, or you're not getting before the Court, neither of
> > you, on any of these matters, because that's what the rule requires. There's
> > a good reason for it. It's because you can generally work out a lot of issues

---

[4][TAB C].  At that time, the transcript of the November Omnibus Hearing had not arrived, and
Anderson mistakenly recalled that the Court wanted it to send this explanation to the Court. The
Debtors' quickly objected to this process and Anderson pulled the filing of the letter. However, the
Debtors had been fully notified of Anderson's position.

> when you talk. And the lack of talking is not going to be helpful. But on the general point as to what element you're attempting to get to, it seems to me that it's not inappropriate to get some direction, especially since some of this information is apparently under seal, or the debtor is going to claim its privileged. I don't know what defenses may be raised, if any. I do agree that they will have to raise the defenses in the context of the discovery that you have propounded. But I do think it's appropriate, based on the last hearing, for you to articulate what it is that you're trying to do with each of these requests. Hearing (November 20, 2006) at 53-54.

> On November 27, 2006, we served you with a detailed articulation of what it is that we are trying to do with each of our discovery requests.

> Please advise me whether you are willing to get together and see if we can resolve these discovery issues. I am available anytime today to discuss these matters.[5]

In response, Anderson and the Debtors met and conferred by telephone on December 6, 2006. The Debtors agreed to withdraw their adequacy attack ( which they had launched almost exactly a year earlier) and to provide Anderson with an item by item response to Anderson's Amended Requests for Production. The Debtors did not agree to produce a documents custodian for deposition.

On December 7, 2006, Anderson filed a Motion for an Order compelling the Debtors to produce their "Records Custodian(s) for all documents which refer to or relate to Anderson Memorial Hospital's lawsuit prior to the date the debtors filed their Petition for Reorganization," as set forth in Anderson's Notice of Deposition dated October 30, 2006. [Doc. 13980]. The next day, December 8, 2006, Anderson filed a Motion for Expedited Consideration of its Motion to Compel Deposition of Debtors' Records Custodian(s) so that it could be heard on December 18, 2006. [Doc. 13981]. The Debtors informed Anderson on December 12, 2006 that Anderson's Motion had not been granted and, "Accordingly your Motion to Compel cannot be on the agenda for the December 18 hearing." [TAB E]. Subsequently the Court entered its December 15, 2006 Order denying

---

[5][TAB D].

Anderson's Motion for Expedited Consideration and setting the matter for the January 23, 2007

Omnibus Hearing. [Doc. 14029].

On December 13, 2006, the Debtors served their Responses and Objections to Anderson's

October 30, 2006 Amended Requests for Production which are the subject of the present Motion.

Although the Debtors had agreed to provide Anderson with an item by item response, the Debtors

first set forth more than 6 pages of qualifications before getting to their responses, including the

following: Preliminary Statement; Factual Background Regarding Anderson's Discovery Requests;

Factual and Legal Bases for Grace's Responses and Objections; and General Objections (collectively

referred to herein as "Blanket Objections"). In addition, as to each paragraph response, the Debtors

included boiler plate objections, such as unsupported statements that the request was vague,

ambiguous, overly broad, unduly burdensome, irrelevant, immaterial, etc. Grace also specifically

objected to each request "to the extent it seeks any information or documents protected from

disclosure by the attorney-client privilege and/or the attorney work product doctrine."

On January 23, 2007, the parties argued Anderson's Motion to Compel the deposition of

Grace's custodian of records. The Court took the matter under advisement and directed Grace to

produce a book of the pleadings at issue. Thereafter, on February 7, 2007, the Court entered an

Order finding that the discovery was "appropriate" and providing that the Debtors "shall produce

their records custodian(s) pursuant to Anderson's Notice of Deposition dated October 30, 2006."

[Doc. 14504].

On February 23, 2007, the Debtors produced Mollie K. Sprinkle for deposition. Ms. Sprinkle

testified that all records relating to Anderson's requests had been maintained by the Debtors national

counsel, Cahill Gordon, & Reindel; by the Debtors' South Carolina counsel, Ogletree Deakins, Nash

Smoak & Stewart; and by the Debtors' in-house counsel. Ms. Sprinkle testified that she was in possession of all the documents other than those maintained in South Carolina by the Ogletree firm, and that, excluding pleadings, all of the documents in her possession would fit into 4-5 bankers boxes. She also testified that she recently had spoken to Donald A. Cockrill, Esquire of the Ogletree firm, and he was working on gathering those documents. Anderson suspended the deposition with the request that it be allowed to continue Ms. Sprinkle's or to take Mr. Cockrill's deposition when that process was completed.

On March 19, 2007, after the Debtors refused to produce a custodian of the Ogletree documents, Anderson served a new notice of deposition. Anderson did so even thought it was clear that the Debtors were in violation of this Court's order (obviously the Debtors' have control over documents in the possession of their lawyers),[6] but it just seemed more efficient to subpoena a South Carolina witness rather than to file a Motion for Sanctions. Ultimately, Anderson took Mr. Cockrill's deposition on April 30, 2007, which established that all of the Ogletree documents Anderson seeks probably would fit into less than one bankers box.

On March 30, 2007, Anderson filed a Motion to Compel the Debtors to produce a privilege log with respect to their December 13, 2006 Responses to Anderson's October 30, 2006 Amended Request for Production. [Doc. 15058]. As noted above, the Court had told the Debtors that they must do so at the October 23, 2006 Omnibus Hearing.

On May 21, 2007, this Court heard arguments on Anderson's Motion to Compel the privilege

---

[6]Rule 34 requires that the responding party produce documents within its "possession, custody or control." This means Debtors must produce requested documents it has the "legal right to obtain . . . on demand." *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984); *Alexander v. F.B.I*, 194 F.R.D. 299 (D.D.C. 2000).

log. Anderson explained that it had tried to deal with the Debtors' plethora of objections by establishing through its custodian depositions – which Anderson took seven months after they were noticed and only then after it obtained a Court Order following numerous briefs and hearings – that despite the Debtors' constant howling, the total universe of documents at issue could fit into less than six bankers boxes. Anderson thought by placing the matter in context, the Debtors could quickly produce a privilege log, and then Anderson could decide what, if any, additional Motions to Compel to file. However, the Court explained that it wanted Anderson first to explain the relevancy of its discovery before dealing with the privilege log. Thus, Anderson files the present Motion.

## II. **MOTION TO STRIKE**

Rule 26 of the Federal Rules has been broadly construed to permit a party to fully investigate the merits of the opposing party's case. A request for discovery should be considered relevant under Rule 26, if there is **any possibility** that the information sought may have some relevance to any subject matter that has been raised in the action. 8 *Wright, Miller & Marcus*, Federal Practice and Procedure, §2008, p. 108-109 (2d ed.1994) (citations omitted, emphasis supplied).

The immediate problem presented by the Debtors' Blanket Objections is that there is no explanation of what, if anything, is being withheld. This leaves Anderson and the Court to guess what additional information might be available. Chubb Integrated Systems, Ltd. v. National Bank of Washington, 103 F.R.D. 52, 58 (D.D.C. 1984) ("General objections are not useful to the court ruling on a discovery motion. Nor does a general objection fulfill [a party's] burden to explain its objection"). As explained by the District Court in Athridge v. Aetna Cas. and Surety Co., 184 F.R.D. 181, 190 (D.D.C.1998), this type of response "hides the ball" because it leaves the Plaintiff

wondering what information is being provided and what information is being withheld, and leaves the Defendant as the sole arbiter of that decision. As the Court aptly explained:

> [t]he defendant, having no incentive to err on the side of disclosure, has arrogated to itself the authority to decide the question of relevance which is unquestionably the decision of the judge. . . . Asserting a relevance objection, then proceeding to agree to produce "relevant, non-privileged" documents "[s]ubject to and without waiving" that objection, serves only to obscure potentially discoverable information and provides no mechanism for either plaintiffs or the Court to review defendant's decisions.

Id. at 190. The Court went on to hold that the Defendant had waived its general objections. Id.

On top of its General Objections, Debtors have further used individual boilerplate objections described above. This type of response is likewise improper and only serves to "hide the ball." Athridge v. Aetna Casualty and Surety Co., 184 F.R.D. 181 (D.D.C. 1998); see also, St. Paul Reinsurance Co. v. Commercial Financial Corp., 198 F.R.D. 508 (N.D. Iowa 2000) (describing these types of objections as a "textbook example" of what federal courts have routinely deemed improper objections. The district court issued sanctions *sua sponte*). These objections should be stricken and the Debtors compelled to provide full and accurate responses, including specific information about the scope of its search for responsive documents. Moreover, as with the General Objections discussed above, this Court is justified in finding that Debtors had waived these boilerplate objections. Athridge v. Aetna Surety & Casualty Co., 184 F.R.D. 181, 190 (D.D.C.1998).

Finally, the Debtors dismissive objection to the production of privileged documents does not begin to comport with the rules or the case law. Initially, the Debtors have not provided any log to support their numerous claims of privilege or other reasons for non-disclosure. Debtors' failure to a produce privilege log contemporaneously with its documents not only violates this Court's October 23, 2006 rulings as well as Rule 26(b)(5) (requiring identification of privileged documents "**when**

**a party withholds information**" – not some months afterwards) (emphasis supplied), but it has prevented Plaintiffs from scrutinizing the log within the context of the document production. Debtors must produce a log.

Filing a privilege log is only the first step – the Debtors must then establish that the documents are, in fact, privileged. That is so because the burden of establishing the attorney-client privilege always rests upon the party asserting it. Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146, 1161 (D.S.C. 1975), aff'd 540 F.2d 1215 (4th Cir. 1976). "The adversary party, by virtue of the obvious fact that it has not seen the documents, cannot be expected to bear the burden of establishing a lack of privilege." Duplan, 397 F.Supp. at 1161. It is likewise the proponent of the work product claim that has the burden of proving that the documents are indeed work product. Apparently unanimous decisions hold that "the party asserting a work product privilege as a bar to discovery must prove the doctrine is applicable." Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995). See also Binks Mfg. Co. v. National Presto Ind., Inc., 709 F.2d 1109, 1119 (7th Cir. 1983)("the party seeking to assert the work product privilege has the burden of demonstrating that "at the very least some articulable claim, likely to lead to litigation, [has] arisen."); Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 865 (D.C. Cir. 1980)(same); Hawkins v. District Court, 638 P.2d 1372, 1379 (Colo. 1982)(it is the "party resisting discovery" who must "demonstrate[] that the document was prepared or obtained in contemplation of specific litigation."); First Security Savings v. Kansas Bankers Surety Co., 115 F.R.D. 181, 183 (D.Neb. 1987)(applying and citing decisions which hold that the burden is on the party seeking work product protection to demonstrate the applicability of the claim); Compagnie Francaise D'Assurance v. Phillips Petroleum Co., 105 F.R.D. 16, 41 (S.D.N.Y. 1984)(same).

Moreover, because the attorney-client privilege is an exception to the duty to disclose, it is strictly construed to protect only confidences disclosed within the attorney-client relationship and is confined within the narrowest possible limits consistent with the logic of its purpose. State v. Doster, 276 S.C. 218, 284 S.E.2d 218, 219 (1981), cert. denied 454 U.S. 1030 (1981). Stated in more detail, the essential elements are:

> (1) Where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) except the protection may be waived.

Id at 219-20. Some of the limits on this narrowly construed privilege follow.

First, "a party "may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." Upjohn Co. v. United States, 449 U.S. 383, 396 (1981). Significantly, this lack of protection also applies to the underlying facts contained in documents. Duplan, 397 F.Supp. at 1168 ("It is axiomatic that if a document is not privileged in the hands of the client it does not become privileged merely because it is given to an attorney."). Also, like the attorney-client privilege, work product immunity likewise fails to protect the underlying facts contained within the work product. Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995).

Second, courts apply "special scrutiny" to communications involving in-house counsel[7] because the privilege does not apply unless the communication involves "a matter peculiarly within the province of an attorney at law." Twitty v. Harrison, 230 S.C. 174, 94 S.E.2d 879, 884

---

[7] Annot, What Corporate Communications are Entitled to Attorney-Client Privilege - Modern Cases, 27 A.L.R.5th 76 § 2 at 99 (1995) (noting that courts evaluating privilege claims have applied "special scrutiny" on corporate communications involving in-house counsel).

14

(1956).  See also Marshall v. Marshall, 282 S.C. 534,  320 S.E.2d 44, 47 (Ct.App. 1984)("It must

also appear that   the attorney was acting, at the time, as a legal advisor" and not "only  as an

informant of  the current state of [the] lawsuit."). In-house counsel normally  perform  many

unprotected roles within a company, such as business advisor and  investigator. See Simon v.

G.D. Searle &  Co., 816 F.2d 397, 402-404 (8th Cir.), cert. denied  484 U.S. 917 (1987)("risk

management" documents conveyed to in-house counsel on the costs of litigation are non-privileged

business documents); In Re: Grand Jury Subpoena Dated Dec. 19, 1978, 599 F.2d 504, 510-511 (2d

Cir. 1979)(documents on the results of in-house counsel's internal investigation are discoverable).

Third, a communication from an attorney (rather than a client) is not  privileged  unless

it reveals confidential information the client previously provided the attorney. Marshall at 47.

Lastly, the  privilege does  not  protect  communications expected  to  be  shared  with

strangers. "The mere existence of an attorney-client relationship does  not  raise  a  presumption of

[this] confidentiality," Duplan, 397  F.Supp. at  1161, and, even  where  the attorney-client

relationship exists, "only confidential communications are protected by the privilege." Cloniger v.

Cloniger, 261 S.C. 603, 193 S.E.2d 647, 652 (1973).  Documents forwarded  to an  attorney, with

the expectation that the attorney will incorporate the matter into a disclosure to governmental

agencies or other third parties, are thus not protected. United States v. El Paso, 682 F.2d 530, 539-

541 (5th Cir. 1982)(documents given to independent auditors to complete financial audit are not

privileged); Permian Corp. v. United States, 665 F.2d 1214, 1219-1222 (D.C.Cir. 1981)(documents

given to SEC to complete registration of securities offering are not privileged).  The significance of

this point is, moreover, highlighted because any  voluntary disclosure to a third-party precludes the

privilege for "all" communications between the same attorney and client regarding the same subject

matter. <u>Marshall</u> at 45-46.

## III. <u>MOTION TO COMPEL</u>

Anderson pointed out at a previous hearing that it would like the Debtors to answer its Amended Requests before taking the Rule 30(b)(6) deposition(s). Consequently, Anderson will focus on the Requests for Production with secondary references to the deposition notice.

### 1.   **Request for Production 1 and Deposition Notice 1, 4, 5, 6, and 7[8]**

By this discovery, Anderson seeks documents and testimony about Anderson's South Carolina lawsuit against the Debtors; actual or potential members of the actual and putative class; evaluations of Anderson's lawsuit and the orders entered by the South Carolina court; the prerequisites for class certification; and the potential effects of delay in the South Carolina

---

[8]Anderson's Request to Produce seeks:

1.   All documents generated prior to the date the debtors filed their Petition for Reorganization, except pleadings served and filed, which refer to or relate to Anderson's lawsuit, including, but not limited to, all documents which refer or relate to Anderson's Motion to Certify; members or potential members of the putative statewide and worldwide classes; any evaluation of Anderson's lawsuit, including its request for class certification; any order entered by the South Carolina Circuit Court; any damage estimates; the prerequisites for class certification, including commonality, typicality, numerosity, and adequacy; and the potential effects of a delay in the certification proceedings.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding:

1.   Anderson's South Carolina lawsuit.

4.   Anderson's Motion to Certify in South Carolina.

5.   The certification hearing in South Carolina.

6.   Any efforts to delay the South Carolina certification.

7.   The circumstances surrounding the South Carolina Circuit Court's certification of a statewide class as to W.R. Grace.

certification proceedings. This information relates to the prerequisites of class certification: numerosity, commonality, typicality and adequacy, all of which were litigated before the South Carolina Court. Additionally, Grace's evaluations of Anderson's case as well as Grace's evaluations of delay in the South Carolina proceedings (Grace voluntarily postponed the class certification proceedings in 1998 until 2000, and then sought and obtained an additional delay to provide further briefing over a six month period and ended immediately prior to its petition for bankruptcy) and whether Grace sought delay in the South Carolina proceedings because it anticipated filing its bankruptcy petition. Additionally, this information will make a record of the extensive proceedings in South Carolina, Grace's analysis of them, all of which could be used to rebut Grace's arguments made to this Court that the Anderson South Carolina proceedings were "fly by night" and that Speights & Runyan manipulated the South Carolina court system to obtain a class certification at the last minute before Grace filed for bankruptcy.

2. **Request for Production 2 and Deposition Notice 1 and 8[9]**

By this discovery, Anderson seeks documents and information related to Anderson's request to be appointed to the Official Committee of Property Damage Claimants shortly after the bankruptcy petition was filed. Shortly after the Debtors filed for bankruptcy, Anderson sought to

---

[9]Anderson's Request to Produce seeks:

2.    All documents which refer to or relate to Anderson's request to be included on the Official Committee of Asbestos Property Damage Claimants.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding::

1.    Anderson's South Carolina lawsuit.

8.    Any position the debtors took with respect to Anderson's request to be included on the Official Committee of Asbestos Property Damage Claimants.

17

be appointed to the Official PD committee. Anderson was, at first, kept off of the committee at the urging of Grace's counsel, based upon the exact same arguments that Grace had raised to the South Carolina Court to avoid class certification. This discovery is relevant for the same reasons that the underlying class certification proceedings from South Carolina are relevant. This discovery may also show that Grace internally acknowledged the strength of the Anderson class and the need to devise a strategy to discredit that certified class action before the bankruptcy court that was not familiar with the South Carolina proceedings. This discovery may also rebut Grace's contentions made to this Court regarding the adequacy of Anderson and its counsel and that the Anderson South Carolina proceedings were "fly by night" and that Speights & Runyan manipulated the South Carolina court system to obtain a class certification at the last minute before Grace filed for bankruptcy.

    **3.      Requests for Production 3, 4, and 5 and Deposition Notice 1, 4, 5, 6, and 7[10]**

---

[10]Anderson's Request to Produce seeks:

3.      All documents generated from the date the debtors filed their Petition for Reorganization until October 1, 2001, which refer to or relate to any proceedings in Anderson's lawsuit from the date the debtors filed their Petition for Reorganization until October 1, 2001.

4.      All documents generated from the date the debtors filed their Petition for Reorganization until September 1, 2005, which refer to or relate to Anderson's lawsuit from the date the debtors filed their Petition for Reorganization until September 1, 2005.

5.      All documents generated prior to September 1, 2005, which refer to or relate to Anderson's individual and class claims in this bankruptcy.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding:

1.      Anderson's South Carolina lawsuit.

4.      Anderson's Motion to Certify in South Carolina.

5.      The certification hearing in South Carolina.

6.      Any efforts to delay the South Carolina certification.

By this discovery, Anderson seeks information and testimony about proceedings in South Carolina prior to the Debtors' petition for bankruptcy; immediately after the Debtors' petition; and the ensuing four years prior to the Debtors' attack on Speights & Runyan's authority to file claims on behalf of absent class members. This information not only relates to the prerequisites for class certification due to the South Carolina Court's certification orders, but it also may rebut the Debtors' arguments to this Court that the South Carolina proceedings were suspect and not based upon a substantial record. This information may show that the Debtors' recognize internally that some of the major prerequisites for certification, including commonality and typicality, are easily satisfied by the Anderson case because of the history of asbestos property damage cases. This information may also show that the Debtors internally recognize the inconsistency between fighting Anderson's class certification motion before this Court, but at the same time advocating "common issues" trials on hazard, statute of limitations, product identification and methodology. This information may show that the Debtors' were clearly aware of the class certification orders entered both before and after their petition for bankruptcy, and therefore rebut Grace's contention that it was "surprised" by the fact that Anderson sought a class action in this bankruptcy and sought to protect the claims of absent class members. This information may also show that the Debtors' were aware of the substantial record upon which the class certification order was entered in South Carolina and decided that it would improve their interest and be worth the risk to undermine the South Carolina proceedings in this Court by repeating the same factual allegations about Speights & Runyan's adequacy that were so thoroughly rejected by the South Carolina Court.

---

7. The circumstances surrounding the South Carolina Circuit Court's certification of a statewide class as to W.R. Grace.

19

4.     **Request for Production 6 and Deposition Notice 9[11]**

By this discovery, Anderson seeks information and testimony regarding Anderson's standing

to bring suit against Grace and whether it would be a good class representative.  This information

is relevant to class certification because of the Debtors' contentions that Anderson is not an adequate

representative and that Anderson's claims may not be typical of other class members' claims based

upon product identification (Grace has objected to Anderson's claims on product identification

grounds).  This information would be used to rebut contentions made by the Debtors' in opposition

to class certification that Anderson does not have a strong likelihood of success in its property

damage claims against the Debtors.

5.     **Request for Production 7 and Deposition Notice 2 and 3[12]**

By this discovery, Anderson seeks documents and testimony about Grace's knowledge of the

---

[11]Anderson's Request to Produce seeks:

6.     All documents except pleadings served and filed which refer to or relate to the identity of
       any asbestos-containing surface treatment in any building owned or operated by
       Anderson.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding:

9.     Any evaluation of Anderson's individual or class claims prior to the debtors filing their
       Petition for Reorganization.

[12]Anderson's Request to Produce seeks:

7.     All documents except pleadings served and filed which refer to or relate to or discuss the
       potential membership of Anderson's putative class, including buildings located in South
       Carolina and outside of South Carolina.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding:

2.     Members or potential members of the putative statewide and worldwide classes whom
       Anderson purports to represent.

3.     Any damage estimates of Anderson's individual and class claims.

number and location of actual and potential class members who have Grace ACM in their buildings and the value of their claims. This information can be used by Anderson to rebut the Debtors' product identification objections and will also demonstrate that there are a large number of property damage claimants with Grace's products, whose claims are similar. This information may also show that these class members' claims are substantial, thus demonstrating that the use of the class action is superior to other methods of adjudication.

6.     **Request for Production 8 and Deposition Notice 4 and 9[13]**

By this discovery, Anderson seeks documents and testimony related to Grace's communications with expert and lay witnesses regarding the South Carolina certification proceedings. This information will be used to show that Grace's challenges to Anderson's adequacy in South Carolina and in this Court were based upon erroneous information. This information may also show that Grace's counsel knew that the factual assertions it made in the South Carolina proceedings and in this Court were factually incorrect. Additionally, this information may show that Grace's own expert and lay witnesses recognized that the other pre-requisites for class certification (numerosity, commonality, and typicality) were met.

---

[13] Anderson's Request to Produce seeks:

8.     All documents which reflect or refer to any communication made with any lay or expert witnesses involving any issues in Anderson's efforts to obtain class certification.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding:

4.     Anderson's Motion to Certify in South Carolina.

9.     Any evaluation of Anderson's individual or class claims prior to the debtors filing their Petition for Reorganization (paragraph 9).

7.    **Request for Production 9 and Deposition Notice 4, 5, and 9[14]**

By this discovery, Anderson seeks documents and testimony related to the Debtors'

knowledge concerning the facts asserted by Anderson in support of class certification. This

information could be used to rebut the positions taken by the Debtors' in opposition to class

certification, and also will relate to facts directly relevant to the issues surrounding class certification.

8.    **Requests for Production 10, 11, and 12 and Deposition Notice 3 and 9[15]**

By this discovery, Anderson seeks documents and testimony related to the Debtors'

communications with its insurers, co-defendants in the South Carolina action and internal

---

[14]Anderson's Request to Produce seeks:

9.    All documents which refer or relate to the debtors' knowledge concerning the facts or factual assertions relating to Anderson's putative class action.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding:

5.    The certification hearing in South Carolina.

9.    Any evaluation of Anderson's individual or class claims prior to the debtors filing their Petition for Reorganization.

[15]Anderson's Request to Produce seeks:

10.    All documents which refer to any amount that could or should be set aside for the resolution of Anderson's claim, including any insurance reserve.

11.    All documents which refer to or relate to communications between the debtors and any insurance carrier relating to Anderson, including its individual and putative class claims.

12.    All documents which refer to or relate to communications between the debtors and any other person or entity, including any other defendant, relating to Anderson, including its individual and putative class claims.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding:

3.    Any damage estimates of Anderson's individual and class claims.

9.    Any evaluation of Anderson's individual or class claims prior to the debtors filing their Petition for Reorganization.

evaluations regarding the strengths and merits of Anderson's class certification motion as well as any reserves set aside. This information relates to every facet of class certification (numerosity, commonality, typicality and adequacy) because it is directly related to Grace and its insurer's evaluations of Anderson's class action and the merits of its class certification motion. This information will also relate to the merits of Anderson's claims and will tend to show by the amounts of any reserve set aside, that the class is numerous and the claims of individual class members can be substantial. This information will also rebut the Debtors' contentions that the class device is not superior because it will show the potential for evaluation and resolution of a large number of claims in a single proceeding. Additionally, this information may be used to rebut the Debtors' contention that the Anderson proceedings were "fly by night" and not based upon a substantial record, and may show that the Debtors' were well aware, from communications from insurers or co-defendants, that the South Carolina court not only upheld its certification order after he Debtors filed for bankruptcy, but that the South Carolina court refused to set aside part of its order which suggested that counsel for the defendants in South Carolina had made factual assertions which they should have known were false. Of course, theses factual assertions had previously been made by the Debtors.

9.      **Request for Production 13 Deposition Notice 11**[16]

By this discovery, Anderson seeks information and testimony regarding the Debtors'

---

[16]Anderson's Request to Produce seeks:

13.     All documents generated prior to the date the debtors filed their Petition for Reorganization, except pleadings served and filed, which reflect any evaluation of Anderson's individual or class claims.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding:

11.     Knowledge prior to September 1, 2005, of Anderson's individual and class proofs of claim.

knowledge of the South Carolina proceedings prior to filing their objections to the claims of

Anderson and Anderson class members. This information will be used to rebut the erroneous factual

assertions the Debtors have made to this Court in opposition to class certification. Specifically, this

information will show that the Debtors were well aware of the final certification order by the South

Carolina court, that the Debtors were well aware that the South Carolina court had certified the class

based upon a substantial factual record, and that the number and type of claims in the South Carolina

class were substantial. This information will rebut the Debtors' arguments to this Court that the

South Carolina certification issued as to Grace was "fly by night." It will rebut the Debtors'

contentions that the certification order entered against Grace in South Carolina was "ex parte." It

will also rebut the Debtors' contentions that Anderson's ability to appeal the dismissal of non-South

Carolina buildings from the Anderson class had ended long before it filed its petition for bankruptcy.

It will also rebut the Debtors' position that it was surprised in 2005 to learn that Anderson had made

a class claim and had filed claims on behalf of absent class members.

### 10.    Request for Production 14 and Deposition Notice 10[17]

By this discovery, Anderson seeks documents and information regarding Grace's settlement

discussions with Anderson. This information is relevant because the Debtors would have had to

have acknowledged as part of any settlement discussions that it agreed the pre-requisites for class

---

[17]Anderson's Request to Produce seeks:

14.    All documents except pleadings served and filed which refer to or relate to any
       prepetition efforts the debtor made to settle or compromise Anderson's lawsuit.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding:

10.    Any settlement discussions with Anderson or its counsel.

24

certification would have to be present in order to have a settlement class certified, consistent with

Georgine. This information would also tend to show the number of absent class members the

Debtors believed had viable claims, and thus help establish numerosity.

**11.     Request for Production 15[18]**

By this discovery, Anderson seeks information about the Debtors or their counsel's attempts

to contact absent class members. This information is relevant to show that the Debtors' made

attempts to contact absent class members without informing them that they might have potential

property damage claims against the Debtors. This would be relevant to numerosity and would also

tend to show the Debtors' deliberate efforts to extinguish its liability without adequately informing

holders of potential claims of the nature and value of their potential claim.

**12.     Request for Production 16[19]**

This request seeks an index of catalog of documents relating to Anderson and the class it

seeks to represent. The request simply seeks to provide Anderson access to the same information

available to the Debtors.

### III. CONCLUSION

For the foregoing reasons, the Debtors' objections to Anderson's Amended Requests should

be stricken and the Debtors should be required to file full and complete responses to Anderson's

---

[18]Anderson's Request to Produce seeks:

15.     All documents which refer or relate to any communications with any building owners
        regarding any proofs of claim filed by Anderson's counsel.

[19]Anderson's Request to Produce seeks:

16.     Any partial or complete list or index of documents relating to Anderson and any putative
        class which it purports to represent.

Amended Requests and a privilege log without further delay.

DATED: May 23, 2007

Christopher D. Loizides (#3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728
E-mail: loizides@loizides.com

SPEIGHTS & RUNYAN
Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed ID No. 6101)
200 Jackson Avenue, East
Post Office Box 685
Hampton, SC 29924
Telephone: (803) 943-4444
Facsimile: (803) 943-4599

Counsel to Speights & Runyan