# TAB C

## SPEIGHTS & RUNYAN

ATTORNEYS AT LAW
200 JACKSON AVENUE, EAST
POST OFFICE BOX 685
HAMPTON, SOUTH CAROLINA 29924
(803) 943-4444

DANIEL A. SPEIGHTS
dspeights@speightsrunyan.com

TELECOPIER
(803) 943-4599

November 27, 2006

Via UPS Overnight & E-Mail

The Honorable Judith K. Fitzgerald
United States Bankruptcy Court
Western District of Pennsylvania
5490 U.S. Steel Tower
600 Grant Street
Pittsburgh, PA 15219

> Re:    In Re: W.R. Grace & Co., et al.
> Case No. 01-01139 (JKF)

Dear Judge Fitzgerald:

Pursuant to the directive of the Court at the November omnibus hearing, I am herewith providing specific comments connecting our discovery requests to the Rule 23 issues raised in Anderson's Motion to Certify and the Debtors' various responses thereto.

## I. BACKGROUND

On September 1, 2005, the Debtors initiated a contested proceeding against Anderson with the filing of the its Fifteenth Omnibus Objection (Substantive) [Doc. 9315]. Pursuant to In Re Charter Co., 876 F.2d 866 (11th Cir. 1989), Anderson then timely filed a Motion for Class Certification. [Doc. 10014].[1]  In response, the Debtors filed a Brief in Opposition [Doc. 11245].  The Debtors argued, *inter alia*:

---

[1] As explained by the Eleventh Circuit:

> [A]bsent an adversary proceeding, the first opportunity a claimant has to move under Bankruptcy Rule 9014, to request application of Bankruptcy Rule 7023, occurs when an objection is made to a proof of claim.  Prior to that time, invocation of Rule 23 procedures would not be ripe, because there is neither an adversary proceeding nor a contested matter. Id. at 874.

- The class certification that was granted to South Carolina Plaintiffs in *Anderson Memorial* was awarded under circumstances and procedures that are so suspect and improper that they should not be credited by this Court. Id. at 27.

- The burden is on the claimant seeking class certification to establish each element [of Rule 23]. Id. at 27.

- The Speights' proposed class action cannot claim to be superior in any way to the case management plans that the Court has already enunciated for the estimation of claims in these cases. Id. at 27.

- Even if 23(b) were satisfied, however, the criteria under Rule 23(a) - numerosity, commonality, typicality and adequacy of representation – cannot be met. Id. at 27.

- [Certifying a class] will create a group of creditors that is unknown, and largely unknowable, in its size and complexity. Id. at 29.

- With respect to adequate representation and adequate protection of the proposed class, there is no showing that Anderson Memorial Hospital and its counsel will adequately represent other members of the proposed class. Quite the opposite is true. Id. at 30.

Anderson promptly served limited discovery directed at the Debtors' arguments. The Debtors filed a Motion for Protective Order on December 19, 2005 ("First Motion for Protective Order") [Doc. 11365]. The First Motion for Protective Order was then deferred while the Court considered a discreet issue regarding notice and later while all parties participated in an unsuccessful plan mediation. Thereafter, on October 13, 2006, on the eve of the October omnibus hearing, the Debtors filed a Reply in support of their First Motion for Protective Order [Doc. 13412]. *Significantly, neither in its First Motion for Protective Order nor in its Reply in Support of Motion for Protective Order did the Debtors argue that the discovery was overly broad or that Rule 408 was implicated.*

The Debtors' First Motion for Protective Order then came to be heard at the October 23, 2006 omnibus hearing. The Court recognized that Anderson should be allowed to go forward with certain parts of its discovery, but thought its requests were overly broad. As explained by the Court:

THE COURT: All right. Well, I think that request, to the extent it's a document request, is too broad. Asking somebody to give them -- to give you everything they have related to a topic, I think, is simply a fishing expedition. And even the rules of discovery don't give you that much. I think you need to narrow this topic. With respect to a deposition of a person knowledgeable, I'll ask the Debtor to identify a person. You can take your deposition. And to the extent that you get a discovery request in that is more limited in scope and the documents are claimed

> to be privileged by the Debtor, then they'll have to produce a privilege log in advance of the deposition if in fact that's what they intend to do. But that request, Mr. Speights, I think, is just overly broad. It would require the Debtor to go through every document in the Debtor -- in every file that the Debtor ever had since 1992. Hearing (October 23, 2006) at 75-76.

The Court directed Anderson to serve the Debtors with revised discovery by October 30, 2006. Id. at 88. As explained by the Court:

> THE COURT: Well, okay. There are an awful lot of assumptions that are being made that I'm not sure are valid or invalid at this point in time. Mr. Speights, I want you to recast the deposition notice and the discovery request , tying the class of documents -- or the nature of the deposition testimony you're looking to an element of Rule 23, so that when I get an objection -- *and Mr. Bernick, I want you to raise every objection you intend to argue. I am not going to have another proceeding like this where I hear objections to relevance and delay but when I get here, I've got Rule 408 and settlement issues and over breadth argued.* Id. at 80 (emphasis supplied).

Pursuant to this directive, Anderson served the Debtors with three distinct discovery pleadings as follows:

- Notice of Deposition of the Records Custodian(s) for all documents which refer to or relate to Anderson Memorial Hospital's lawsuit prior to the date the debtors filed their Petition for Reorganization" ("Custodian Notice") [TAB A];

- Amended Requests for Production to the Debtors seeking all documents except pleadings relating to sixteen specific topics [TAB B]; and

- Amended Notice of Rule 30(b)(6) Deposition(s) dealing with eleven subject matters  [TAB C].

When Anderson served this revised discovery, it was mindful of the Court's view that it should be related to Rule 23, and it attempted to comply with that directive. For the reasons discussed below, Anderson believes that all of its revised discovery fits within this framework. Anderson never interpreted the Court's ruling to require it to "annotate" its discovery requests. In Anderson's mind, such a requirement would have been akin to requiring Anderson to file a Motion to Produce, which placed the burden on the party seeking the discovery, and which was abolished as unworkable when the drafters amended the rules in 1970 to create the Request to Produce. Apparently, neither did the Debtors believe that is what the Court meant when they again sought a protective order.

On November 6, 2006, the Debtors filed their "Motion for Protective Order Against Anderson Memorial's October 30, 2006 Requests for 30(b)(6) Depositions and Documents" ("Second Motion for Protective Order") [Doc. 13588].  Aside from their

standard refrain that no discovery should be allowed, the Debtors objected on four specific grounds: the requests seek information that is irrelevant and not reasonably calculated to lead to the discovery of information relevant to Anderson class certification; the requests are extremely burdensome and overly broad; the requests seek information subject to privileges; and the requests exceed the requirements or permissible scope of discovery. Id. at 4-5. *Significantly, the Debtors never suggested that Anderson should have annotated its discovery requests; in fact, while the Debtors quoted from other parts of the transcript, they never referred to this Courts instructions to Anderson and Mr. Bernick quoted above.*

The Court heard the parties again at the November omnibus. While Anderson was prepared to argue the connection of its discover to Rule 23, it suggested that the better way to proceed was for the Debtors' to file specific item by item objections to the discovery. However, once again Debtors argued something not in their Motion. Specifically, the Debtors asserted (with a demonstrative exhibit already prepared) that Anderson should have annotated its discovery. Had the Debtors said this in their Motion, as required by the Court, Anderson would have been prepared to address that issue at, and more importantly, before the hearing.

In any event, following lengthy argument, the Court directed Anderson to write the Court and explain how each of its discovery requests is reasonably calculated to lead to evidence relevant to class certification. This letter follows.

## II. ANDERSON'S DISCOVERY

### A.    Notice of Deposition

In addition to amending its 30(b)(6) discovery following the October omnibus hearing (see below), Anderson served its Custodian Notice in an effort to narrow the discovery dispute before the Court. Despite the Debtors' repeated suggestions that Anderson is seeking a huge number of documents located in a large number of locations, Anderson wants the opportunity to show that in reality it is seeking a discreet number of documents maintained at locations already known to the Debtors.

The Deposition was schedule in Wilmington on November 21, 2006 (the day after the November omnibus hearing). Although the Debtors filed a Motion for Protective Order against Anderson's "Requests for 30(B)(6) Depositions and Documents," it did not refer to Anderson's Custodian Notice in the caption or discuss it in the body of its Motion for Protective Order. Indeed, even the Debtors' would be hard pressed to suggest that a deposition of a records custodian could ever be over broad. However, because the Debtors attached a copy of the Custodian Notice with the other discovery, Anderson confirmed on the record that it was of the view that this deposition would go forward as scheduled the next day in Wilmington. The Debtors did not respond during the hearing, but after the hearing informed Anderson that no witness would be produced.

While Anderson understands that the Court wants to examine Anderson's Amended 30(b)(6) discovery in light of the over broad concerns it has expressed, it would respectfully request that the Debtors be directed to produce the subject records custodian before the next omnibus hearing. The Court has repeatedly ruled that Anderson is entitled to some discovery, this deposition cannot be considered over broad, and getting this small sliver of discovery out of the way before the next hearing will at least put some definition on the scope of Anderson's document requests. If nothing else, it will test the Debtors' assertion that Anderson's other requests are "extremely burdensome and overly broad." Debtors' Second Motion for Protective Order at 4.

## B.    Amended Requests for Production and Notice of Rule 30(b)(6) Depositions

Anderson pointed out at the last hearing that when it served its amended discovery, it severed its original 30(b)(6) requests for production and depositions. The outstanding Request for Production is a Rule 34 request which, as Anderson explained at the hearing, it would like the Debtors to answer before taking the Rule 30(b)(6) deposition(s). Consequently, Anderson will focus on the Requests for Production with secondary references to the deposition notice.

### 1.    Request for Production 1 and Deposition Notice 1, 4, 5, 6, and 7[2]

---

[2]Anderson's Request to Produce seeks:

1.      All documents generated prior to the date the debtors filed their Petition for Reorganization, except pleadings served and filed, which refer to or relate to Anderson's lawsuit, including, but not limited to, all documents which refer or relate to Anderson's Motion to Certify; members or potential members of the putative statewide and worldwide classes; any evaluation of Anderson's lawsuit, including its request for class certification; any order entered by the South Carolina Circuit Court; any damage estimates; the prerequisites for class certification, including commonality, typicality, numerosity, and adequacy; and the potential effects of a delay in the certification proceedings.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding:

1.      Anderson's South Carolina lawsuit.

4.      Anderson's Motion to Certify in South Carolina.

5.      The certification hearing in South Carolina.

6.      Any efforts to delay the South Carolina certification.

7.      The circumstances surrounding the South Carolina Circuit Court's certification of a statewide class as to W.R. Grace.

By this discovery, Anderson seeks documents and testimony about Anderson's South Carolina lawsuit against the Debtors; actual or potential members of the actual and putative class; evaluations of Anderson's lawsuit and the orders entered by the South Carolina court; the prerequisites for class certification; and the potential effects of delay in the South Carolina certification proceedings. This information relates to the prerequisites of class certification: numerosity, commonality, typicality and adequacy, all of which were litigated before the South Carolina Court. Additionally, Grace's evaluations of Anderson's case as well as Grace's evaluations of delay in the South Carolina proceedings (Grace voluntarily postponed the class certification proceedings in 1998 until 2000, and then sought and obtained an additional delay to provide further briefing over a six month period and ended immediately prior to its petition for bankruptcy) and whether Grace sought delay in the South Carolina proceedings because it anticipated filing its bankruptcy petition. Additionally, this information will make a record of the extensive proceedings in South Carolina, Grace's analysis of them, all of which could be used to rebut Grace's arguments made to this Court that the Anderson South Carolina proceedings were "fly by night" and that Speights & Runyan manipulated the South Carolina court system to obtain a class certification at the last minute before Grace filed for bankruptcy.

### 2.    Request for Production 2 and Deposition Notice 1 and 8[3]

By this discovery, Anderson seeks documents and information related to Anderson's request to be appointed to the Official Committee of Property Damage Claimants shortly after the bankruptcy petition was filed. Shortly after the Debtors filed for bankruptcy, Anderson sought to be appointed to the Official PD committee. Anderson was, at first, kept off of the committee at the urging of Grace's counsel, based upon the exact same arguments that Grace had raised to the South Carolina Court to avoid class certification. This discovery is relevant for the same reasons that the underlying class certification proceedings from South Carolina are relevant. This discovery may also show that Grace internally acknowledged the strength of the Anderson class and the need to devise a strategy to discredit that certified class action before the bankruptcy court that was not

---

[3] Anderson's Request to Produce seeks:

> 2.    All documents which refer to or relate to Anderson's request to be included on the Official Committee of Asbestos Property Damage Claimants.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding::

> 1.    Anderson's South Carolina lawsuit.
>
> 8.    Any position the debtors took with respect to Anderson's request to be included on the Official Committee of Asbestos Property Damage Claimants.

familiar with the South Carolina proceedings. This discovery may also rebut Grace's contentions made to this Court regarding the adequacy of Anderson and its counsel and that the Anderson South Carolina proceedings were "fly by night" and that Speights & Runyan manipulated the South Carolina court system to obtain a class certification at the last minute before Grace filed for bankruptcy.

### 3.    Requests for Production 3, 4, and 5 and Deposition Notice 1, 4, 5, 6, and 7[4]

By this discovery, Anderson seeks information and testimony about proceedings in South Carolina prior to the Debtors' petition for bankruptcy; immediately after the Debtors' petition; and the ensuing four years prior to the Debtors' attack on Speights & Runyan's authority to file claims on behalf of absent class members. This information not only relates to the prerequisites for class certification due to the South Carolina Court's certification orders, but it also may rebut the Debtors' arguments to this Court that the South Carolina proceedings were suspect and not based upon a substantial record. This information may show that the Debtors' recognize internally that some of the major

---

[4]Anderson's Request to Produce seeks:

3.    All documents generated from the date the debtors filed their Petition for Reorganization until October 1, 2001, which refer to or relate to any proceedings in Anderson's lawsuit from the date the debtors filed their Petition for Reorganization until October 1, 2001.

4.    All documents generated from the date the debtors filed their Petition for Reorganization until September 1, 2005, which refer to or relate to Anderson's lawsuit from the date the debtors filed their Petition for Reorganization until September 1, 2005.

5.    All documents generated prior to September 1, 2005, which refer to or relate to Anderson's individual and class claims in this bankruptcy.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding:

1.    Anderson's South Carolina lawsuit.

4.    Anderson's Motion to Certify in South Carolina.

5.    The certification hearing in South Carolina.

6.    Any efforts to delay the South Carolina certification.

7.    The circumstances surrounding the South Carolina Circuit Court's certification of a statewide class as to W.R. Grace.

prerequisites for certification, including commonality and typicality, are easily satisfied by the Anderson case because of the history of asbestos property damage cases. This information may also show that the Debtors internally recognize the inconsistency between fighting Anderson's class certification motion before this Court, but at the same time advocating "common issues" trials on hazard, statute of limitations, product identification and methodology. This information may show that the Debtors' were clearly aware of the class certification orders entered both before and after their petition for bankruptcy, and therefore rebut Grace's contention that it was "surprised" by the fact that Anderson sought a class action in this bankruptcy and sought to protect the claims of absent class members. This information may also show that the Debtors' were aware of the substantial record upon which the class certification order was entered in South Carolina and decided that it would improve their interest and be worth the risk to undermine the South Carolina proceedings in this Court by repeating the same factual allegations about Speights & Runyan's adequacy that were so thoroughly rejected by the South Carolina Court.

### 4.    Request for Production 6 and Deposition Notice 9[5]

By this discovery, Anderson seeks information and testimony regarding Anderson's standing to bring suit against Grace and whether it would be a good class representative. This information is relevant to class certification because of the Debtors' contentions that Anderson is not an adequate representative and that Anderson's claims may not be typical of other class members' claims based upon product identification (Grace has objected to Anderson's claims on product identification grounds). This information would be used to rebut contentions made by the Debtors' in opposition to class certification that Anderson does not have a strong likelihood of success in its property damage claims against the Debtors.

### 5.    Request for Production 7 and Deposition Notice 2 and 3[6]

---

[5]Anderson's Request to Produce seeks:

> 6.    All documents except pleadings served and filed which refer to or relate to the identity of any asbestos-containing surface treatment in any building owned or operated by Anderson.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding:

> 9.    Any evaluation of Anderson's individual or class claims prior to the debtors filing their Petition for Reorganization.

[6]Anderson's Request to Produce seeks:

> 7.    All documents except pleadings served and filed which refer to or relate to or discuss the potential membership of Anderson's putative class, including buildings located in South Carolina and outside of South Carolina.

By this discovery, Anderson seeks documents and testimony about Grace's knowledge of the number and location of actual and potential class members who have Grace ACM in their buildings and the value of their claims. This information can be used by Anderson to rebut the Debtors' product identification objections and will also demonstrate that there are a large number of property damage claimants with Grace's products, whose claims are similar. This information may also show that these class members' claims are substantial, thus demonstrating that the use of the class action is superior to other methods of adjudication.

### 6.    Request for Production 8 and Deposition Notice 4 and 9[7]

By this discovery, Anderson seeks documents and testimony related to Grace's communications with expert and lay witnesses regarding the South Carolina certification proceedings. This information will be used to show that Grace's challenges to Anderson's adequacy in South Carolina and in this Court were based upon erroneous information. This information may also show that Grace's counsel knew that the factual assertions it made in the South Carolina proceedings and in this Court were factually incorrect. Additionally, this information may show that Grace's own expert and lay witnesses recognized that the other pre-requisites for class certification (numerosity, commonality, and typicality) were met.

### 7.    Request for Production 9 and Deposition Notice 4, 5, and 9[8]

---

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding:

> 2.    Members or potential members of the putative statewide and worldwide classes whom Anderson purports to represent.

> 3.    Any damage estimates of Anderson's individual and class claims.

[7]Anderson's Request to Produce seeks:

> 8.    All documents which reflect or refer to any communication made with any lay or expert witnesses involving any issues in Anderson's efforts to obtain class certification.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding:

> 4.    Anderson's Motion to Certify in South Carolina.

> 9.    Any evaluation of Anderson's individual or class claims prior to the debtors filing their Petition for Reorganization (paragraph 9).

[8]Anderson's Request to Produce seeks:

> 9.    All documents which refer or relate to the debtors' knowledge concerning the

By this discovery, Anderson seeks documents and testimony related to the Debtors' knowledge concerning the facts asserted by Anderson in support of class certification. This information could be used to rebut the positions taken by the Debtors' in opposition to class certification, and also will relate to facts directly relevant to the issues surrounding class certification.

### 8.  Requests for Production 10, 11, and 12 and Deposition Notice 3 and 9[9]

By this discovery, Anderson seeks documents and testimony related to the Debtors' communications with its insurers, co-defendants in the South Carolina action and internal evaluations regarding the strengths and merits of Anderson's class certification motion as well as any reserves set aside.  This information relates to every facet of class certification (numerosity, commonality, typicality and adequacy) because it is directly related to Grace and its insurer's evaluations of Anderson's class action and the merits of its class certification motion.  This information will also relate to the merits of Anderson's claims and will tend to show by the amounts of any reserve set aside, that the class is numerous and the claims of individual class members can be substantial.  This

---

facts or factual assertions relating to Anderson's putative class action.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding:

5.    The certification hearing in South Carolina.

9.    Any evaluation of Anderson's individual or class claims prior to the debtors filing their Petition for Reorganization.

[9]Anderson's Request to Produce seeks:

10.    All documents which refer to any amount that could or should be set aside for the resolution of Anderson's claim, including any insurance reserve.

11.    All documents which refer to or relate to communications between the debtors and any insurance carrier relating to Anderson, including its individual and putative class claims.

12.    All documents which refer to or relate to communications between the debtors and any other person or entity, including any other defendant, relating to Anderson, including its individual and putative class claims.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding:

3.    Any damage estimates of Anderson's individual and class claims.

9.    Any evaluation of Anderson's individual or class claims prior to the debtors filing their Petition for Reorganization.

information will also rebut the Debtors' contentions that the class device is not superior because it will show the potential for evaluation and resolution of a large number of claims in a single proceeding. Additionally, this information may be used to rebut the Debtors' contention that the Anderson proceedings were "fly by night" and not based upon a substantial record, and may show that the Debtors' were well aware, from communications from insurers or co-defendants, that the South Carolina court not only upheld its certification order after he Debtors filed for bankruptcy, but that the South Carolina court refused to set aside part of its order which suggested that counsel for the defendants in South Carolina had made factual assertions which they should have known were false. Of course, theses factual assertions had previously been made by the Debtors.

**9.      Request for Production 13 Deposition Notice 11**[10]

By this discovery, Anderson seeks information and testimony regarding the Debtors' knowledge of the South Carolina proceedings prior to filing their objections to the claims of Anderson and Anderson class members. This information will be used to rebut the erroneous factual assertions the Debtors have made to this Court in opposition to class certification. Specifically, this information will show that the Debtors were well aware of the final certification order by the South Carolina court, that the Debtors were well aware that the South Carolina court had certified the class based upon a substantial factual record, and that the number and type of claims in the South Carolina class were substantial. This information will rebut the Debtors' arguments to this Court that the South Carolina certification issued as to Grace was "fly by night." It will rebut the Debtors' contentions that the certification order entered against Grace in South Carolina was "ex parte." It will also rebut the Debtors' contentions that Anderson's ability to appeal the dismissal of non-South Carolina buildings from the Anderson class had ended long before it filed its petition for bankruptcy. It will also rebut the Debtors' position that it was surprised in 2005 to learn that Anderson had made a class claim and had filed claims on behalf of absent class members.

**10.      Request for Production 14 and Deposition Notice 10**[11]

---

[10]Anderson's Request to Produce seeks:

> 13.    All documents generated prior to the date the debtors filed their Petition for Reorganization, except pleadings served and filed, which reflect any evaluation of Anderson's individual or class claims.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding:

> 11.    Knowledge prior to September 1, 2005, of Anderson's individual and class proofs of claim.

[11]Anderson's Request to Produce seeks:

By this discovery, Anderson seeks documents and information regarding Grace's settlement discussions with Anderson. This information is relevant because the Debtors would have had to have acknowledged as part of any settlement discussions that it agreed the pre-requisites for class certification would have to be present in order to have a settlement class certified, consistent with <u>Georgine</u>. This information would also tend to show the number of absent class members the Debtors believed had viable claims, and thus help establish numerosity.

### 11.    Request for Production 15[12]

By this discovery, Anderson seeks information about the Debtors or their counsel's attempts to contact absent class members. This information is relevant to show that the Debtors' made attempts to contact absent class members without informing them that they might have potential property damage claims against the Debtors. This would be relevant to numerosity and would also tend to show the Debtors' deliberate efforts to extinguish its liability without adequately informing holders of potential claims of the nature and value of their potential claim.

### 12.    Request for Production 16[13]

This request seeks an index of catalog of documents relating to Anderson and the class it seeks to represent. The request simply seeks to provide Anderson access to the same information available to the Debtors.

## III. CONCLUSION

Anderson would respectfully request that it be permitted to proceed with the Custodian deposition before the next omnibus hearing and that Grace be directed to file specific responses to each of the 30(b)(6) discovery requests.

---

14.    All documents except pleadings served and filed which refer to or relate to any prepetition efforts the debtor made to settle or compromise Anderson's lawsuit.

Anderson's 30(b)(6) Notice of Deposition asks the Debtors to produce a person to testify regarding:

10.    Any settlement discussions with Anderson or its counsel.

[12]Anderson's Request to Produce seeks:

15.    All documents which refer or relate to any communications with any building owners regarding any proofs of claim filed by Anderson's counsel.

[13]Anderson's Request to Produce seeks:

16.    Any partial or complete list or index of documents relating to Anderson and any putative class which it purports to represent.

Please accept my high regards.

Sincerely yours,

*Daniel A. Speights*

Daniel A. Speights

DAS/stm
cc: David M. Bernick, Esquire (via UPS overnight and E-mail)

# TAB A

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. Grace & Co., et al.[1], | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

### NOTICE OF DEPOSITION

**PLEASE TAKE NOTICE** that, pursuant to the Federal Rules of Bankr. Procedure, counsel for Anderson Memorial Hospital will take the deposition of the Records Custodian(s) for all documents which refer to or relate to Anderson Memorial Hospital's lawsuit prior to the date the debtors filed their Petition for Reorganization.

---

[1] The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Ins., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B 11 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

The deposition will take place on Tuesday, November 21, 2006, at 10:00 a.m. at the offices of Loizides & Associates, Legal Arts Building, 1225 King Street, Suite 800, Wilmington, DE 19801, before a notary public or other officer duly authorized to administer oaths. The deposition shall continue on successive business days thereafter, as necessary, until completion.

Christopher D. Loizides (#3968)
Michael J. Joyce (#4563)
Legal Arts Bldg.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728 (fax)
E-mail: loizides@loizides.com

SPEIGHTS & RUNYAN
Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed. ID No. 6101)
200 Jackson Avenue, East
P.O. Box 685
Hampton, SC 29924
Telephone: (803) 943-4444
Facsimile: (803) 943-4599

October 30, 2006                         By:_____

# TAB B

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. Grace & Co., et al.[1], | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

## AMENDED REQUESTS FOR PRODUCTION TO THE DEBTORS

TO: THE DEBTORS AND THEIR ATTORNEYS, KIRKLAND & ELLIS

Pursuant to Federal Rule of Bankruptcy Procedure 7034 and Rule 34 of the
Federal Rules of Civil Procedure, Anderson Memorial Hospital ("Anderson") hereby
propounds and serves the following written Requests for Production to be answered

---

[1] The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty
Chemicals, Inc.), W. R. Grace & Co.-Conn., A-I Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife
Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc.,
Coalgrace, Inc., Coalgrace II, Ins., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco
Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five
Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C
Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN
Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace A-B Inc.,
Grace A-B 11 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling
Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace H-G Inc.,
Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a
Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace
Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace
Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc.,
Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation,
Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management,
Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises,
Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation),
MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing
Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C
Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street
Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch
West Coal Company, H-G Coal Company.

separately and fully in writing under oath within thirty (30) days from date of service hereof.

These Requests for Production shall be deemed continuing so as to require supplemental production when additional information with respect to these requests is obtained by you or your counsel. Such supplemental responses should be served within a reasonable time after such information is discovered.

## I. INSTRUCTIONS AND/OR DEFINITIONS

A. Any objections should be made seriatim, setting forth the specific objection, the specific basis of the objection, and a description with particularity of the information which you object to producing.

B. When used in these Requests, the term Debtors includes "you" or "your" or any synonym thereof, whether singular or plural, and is intended to and shall embrace and include present and former counsel for the Debtors, all agents, servants, employees, representatives and others who are in possession of or who may have obtained information for or on behalf of the Debtors, and shall include all present and former subsidiaries, divisions, affiliates, and predecessor entities.

C. The term "document" means any written or graphic matter or other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, without limitation, correspondence, memoranda, analysis, notes, messages, letters, telegrams, teletypes, telefaxes, bulletins, meetings or other communications, interoffice and intraoffice telephone calls, diaries, chronological data, minutes, books,

reports, studies, summaries, pamphlets, bulletins, printed matter, charts, ledgers, invoices, work-sheets, workpapers, reconciliations, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (and any and all drafts, alterations and modifications, changes and amendments of any of the foregoing), graphic or aural records or representations of any kind (including microfilm, videotape, recordings, motion pictures) and electronic, mechanical or electric recordings or representations of any kind (including without limitation tapes, cassettes, discs and records). The term "document" includes all computer-generated and computer-stored information, including electronic mail and information stored as "back-up."

## REQUESTS FOR PRODUCTION

1.      All documents generated prior to the date the debtors filed their Petition for Reorganization, except pleadings served and filed, which refer to or relate to Anderson's lawsuit, including, but not limited to, all documents which refer or relate to Anderson's Motion to Certify; members or potential members of the putative statewide and worldwide classes; any evaluation of Anderson's lawsuit, including its request for class certification; any order entered by the South Carolina Circuit Court; any damage estimates; the prerequisites for class certification, including commonality, typicality, numerosity, and adequacy; and the potential effects of a delay in the certification proceedings.

2.      All documents which refer to or relate to Anderson's request to be included on the Official Committee of Asbestos Property Damage Claimants.

3.      All documents generated from the date the debtors filed their Petition for Reorganization until October 1, 2001, which refer to or relate to any proceedings in Anderson's lawsuit from the date the debtors filed their Petition for Reorganization until October 1, 2001.

4.      All documents generated from the date the debtors filed their Petition for Reorganization until September 1, 2005, which refer to or relate to Anderson's lawsuit from the date the debtors filed their Petition for Reorganization until September 1, 2005.

5.      All documents generated prior to September 1, 2005, which refer to or relate to Anderson's individual and class claims in this bankruptcy.

6.    All documents except pleadings served and filed which refer to or relate to the identity of any asbestos-containing surface treatment in any building owned or operated by Anderson.

7.    All documents except pleadings served and filed which refer to or relate to or discuss the potential membership of Anderson's putative class, including buildings located in South Carolina and outside of South Carolina.

8.    All documents which reflect or refer to any communication made with any lay or expert witnesses involving any issues in Anderson's efforts to obtain class certification.

9.    All documents which refer or relate to the debtors' knowledge concerning the facts or factual assertions relating to Anderson's putative class action.

10.    All documents which refer to any amount that could or should be set aside for the resolution of Anderson's claim, including any insurance reserve.

11.    All documents which refer to or relate to communications between the debtors and any insurance carrier relating to Anderson, including its individual and putative class claims.

12.    All documents which refer to or relate to communications between the debtors and any other person or entity, including any other defendant, relating to Anderson, including its individual and putative class claims.

13.    All documents generated prior to the date the debtors filed their Petition for Reorganization, except pleadings served and filed, which reflect any evaluation of Anderson's individual or class claims.

14.    All documents except pleadings served and filed which refer to or relate to any prepetition efforts the debtor made to settle or compromise Anderson's lawsuit.

15.    All documents which refer or relate to any communications with any building owners regarding any proofs of claim filed by Anderson's counsel.

16.    Any partial or complete list or index of documents relating to Anderson and any putative class which it purports to represent.

Christopher D. Loizides (#3968)
Michael J. Joyce (#4563)
Legal Arts Bldg.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728 (fax)

SPEIGHTS & RUNYAN
Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed. ID No. 6101)
200 Jackson Avenue, East
P.O. Box 685
Hampton, SC  29924
Telephone: (803) 943-4444
Facsimile:  (803) 943-4599

October 30, 2006                    By:

# TAB C

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. Grace & Co., <u>et al.</u><sup>1</sup>, | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

## <u>AMENDED NOTICE OF RULE 30(b)(6) DEPOSITION(S)</u>

**PLEASE TAKE NOTICE** that, pursuant to Rules 26, 30(b)(5) and 30(b)(6) of

the Federal Rules of Civil Procedure and Rules 9014, 7026, 7030(b)(5), and 7030(b)(6)

of the Federal Rules of Bankr. Procedure, Anderson Memorial Hospital ("Anderson")

will take the deposition of the debtors, who shall designate one or more persons to testify

---

<sup>1</sup> The Debtors consist of the following 62 entities: W. R Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Ins., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Ins., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp, Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B 11 Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe. Inc., Grace H-G Inc., Grace H-G II Inc,, Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Ins., MICA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Curving, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

as to what is known or reasonably available to the organization regarding the following subjects:

1.  Anderson's South Carolina lawsuit.

2.  Members or potential members of the putative statewide and worldwide classes whom Anderson purports to represent.

3.  Any damage estimates of Anderson's individual and class claims.

4.  Anderson's Motion to Certify in South Carolina.

5.  The certification hearing in South Carolina.

6.  Any efforts to delay the South Carolina certification.

7.  The circumstances surrounding the South Carolina Circuit Court's certification of a statewide class as to W.R. Grace.

8.  Any position the debtors took with respect to Anderson's request to be included on the Official Committee of Asbestos Property Damage Claimants.

9.  Any evaluation of Anderson's individual or class claims prior to the debtors filing their Petition for Reorganization.

10.  Any settlement discussions with Anderson or its counsel.

11.  Knowledge prior to September 1, 2005, of Anderson's individual and class proofs of claim .

The deposition will take place on Thursday, November 30, 2006, at 11:00 a.m. at the offices of Loizides & Associates, Legal Arts Building, 1225 King Street, Suite 800, Wilmington, DE 19801, before a notary public or other officer duly authorized to administer oaths. The deposition shall continue on successive business days thereafter, as necessary, until completion.

Christopher D. Loizides (#3968)
Michael J. Joyce (#4563)
Legal Arts Bldg.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728 (fax)
E-mail: loizides@loizides.com


SPEIGHTS & RUNYAN
Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed. ID No. 6101)
200 Jackson Avenue, East
P.O. Box 685
Hampton, SC  29924
Telephone: (803) 943-4444
Facsimile:  (803) 943-4599


October 30, 2006                         By:_____