## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **W.R. Grace & Co., et al.** | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |

**TWENTY-FOURTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK & LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM JANUARY 1, 2007 THROUGH MARCH 31, 2007**

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **January 1, 2007 – March 31, 2007** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$331,950.50** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$10,690.15** |
| Fees and Expenses of the Asbestos Issues Expert | **$272,450.52** |

This is an: ☒ interim ☐ final application

This is the twenty-third quarterly application filed.

**Attachment A**

## Monthly Interim Fee Applications

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01-7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02-04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| July 2, 2002 D.I.2324 | 05/01/02 – 05/31/02 | $74,910.75 | $2,9154.43 (Stroock) $43,190.69 (Chambers) | $59,928.60 | $46,105.12 |
| August 5, 2002 D.I.2495 | 06/01/02 – 06/30/02 | $73,096.75 | $2,054.05 (Stroock) $114,666.72 (Chambers) | $58,477.4011 | $116,720.77 |
| September 20, 2002 D.I.2720 | 07/01/02 – 07/31/02 | $90,903.27 | $1,250.79 (Stroock) $11,996.25 (Chambers) | $72,722.61 | $13,274.04 |
| October 29, 2002 D.I.2898 | 08/01/02 – 08/31/02 | $93,151.25 | $11,539.51 (Stroock) $5,046.70 (Chambers) | $74,521.00 | $16,586.21 |
| November 14, 2002 D.I.2981 | 09/01/02 - 09/30/02 | $96,613.25 | $15,567.77 (Stroock) $771.50 (Chambers) | $77,290.60 | $16,339.27 |
| December 10, 2002 D.I.3129 | 10/1/02 – 10/31/02 | $68,404.00 | $2,956.54 (Stroock) $1,780.75 (Chambers) | $54,723.20 | $4,737.29 |
| January 28, 2003 D.I.3286 | 11/1/02 – 11/30/02 | $75,345.50 | $8,712.16 (Stroock) | $60,276.40 | $8,712.16 |
| February 7, 2003 D.I.3349 | 12/1/02 – 12/31/02 | $27,683.50 | $13,332.14 (Stroock) | $22,146.80 | $13,332.14 |
| March 26, 2003 D.I.3552 | 1/1/03 – 1/31/03 | $88,139.00 | $1,210.11 (Stroock) | $70,511.20 | $1,210.11 |
| April 7, 2003 D.I.3626 | 2/1/03 – 2/28/03 | $76,313.00 | $2,022.78 (Stroock) $1,077.80 (Chambers) | $61,050.40 | $3,100.58 |
| April 29, 2003 D.I.3718 | 3/1/03 – 3/31/03 | $60,163.50 | $6,191.15 (Stroock) | $48,130.80 | $6,191.15 |
| June 2, 2003 D.I. 3850 | 4/1/03 – 4/30/03 | $60,269.00 | $814.02 (Stroock) $2,043.00 (Chambers) | $48,215.20 | $2,857.02 |
| July 1, 2003 D.I. 3983 | 5/1/03 – 5/31/03 | $111,990.50 | $691.84 (Stroock) $3,830.50 (Chambers) | $89,592.40 | $10,522.34 |
| August 5, 2003 D.I. 4152 | 6/1/03 – 6/30/03 | $43,824.00 | $1,220.42 (Stroock) $61,755.00 (Chambers) | $35,059.20 | $62,975.42 |
| September 4, 2003 D.I. 4381 | 7/1/03 – 7/31/03 | $79,090.50 | $2,301.33 (Stroock) $14,274.25 (Chambers) | $63,272.40 | $16,575.58 |

SSL-DOCS1 1806036v2

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 30, 2003 D.I. 4512 | 8/1/03 – 8/31/03 | $69,927.00 | $1,164.19 (Stroock) $12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003 D.I. 4625 | 9/1/03 – 9/30/03 | $69,409.50 | $1,076.94 (Stroock) $10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2003 D.I. 4843 | 10/1/03 – 10/31/03 | $96,980.50 | $3,800.45 (Stroock) $42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2004 D.I. 4976 | 11/1/03 – 11/30/03 | $66,428.50 | $1,225.38 (Stroock) $30,463.00 (Navigant f/k/a Chambers) | $53,142.80 | $31,688.38 |
| February 4, 2004 D.I. 5056 | 12/1/03 – 12/31/03 | $52,321.50 | $924.99 (Stroock) $27,005.00 (Navigant f/k/a Chambers) | $41,857.20 | $27,929.99 |
| March 17, 2004 D.I. 5309 | 1/1/04 – 1/31/04 | $65,980.50 | $1,917.93 (Stroock) $47,654.57 (Navigant f/k/a Chambers) | $52,784.40 | $49,572.50 |
| April 6, 2004 D.I. 5406 | 2/1/04 – 2/29/04 | $90,421.50 | $3,636.48 (Stroock) $35,492.50 (Navigant f/k/a Chambers) | $72,337.20 | $39,128.98 |
| April 28, 2004 D.I. | 3/1/04 – 3/31/04 | $103,524.00 | $5,567.34 (Stroock) | $82,819.20 | $5,567.34 |
| June 14, 2004 D.I. 5803 | 4/1/04 – 4/30/04 | $99,136.00 | $3,518.96 (Stroock) $1,515.00 (Navigant February) $49,667.00 (Navigant March) $80,307.11 (Navigant April) | $79,308.80 | $135,008.07 |
| July 2, 2004 D.I. 5917 | 5/1/04 – 5/31/04 | $134,324.50 | $2,409.97 (Stroock) $78,360.05 (Navigant May) | $107,459.60 | $80,770.02 |
| August 2, 2004 D.I. 6105 | 6/1/04 – 6/31/04 | $120,501.00 | $1,831.49 (Stroock) $62,625.00 (Navigant June) | $96,400.80 | $64,456.49 |

3

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 9, 2004<br>D.I. 6341 | 7/1/04 –<br>7/31/04 | $72,394.00 | $3,461.84 (Stroock)<br>$40,427.50 (Navigant July) | $57,915.20 | $43,889.34 |
| September 23, 2004<br>D.I. 6444 | 8/1/04 –<br>8/31/04 | $70,457.00 | $1,764.40 (Stroock) | $56,365.60 | $1,764.40 |
| October 14, 2004<br>D.I 6625 | 9/1/04 –<br>9/30/04 | $83,903.50 | $1,535.61 (Stroock)<br>$27,142.00 (Navigant August) | $67,122.80 | $28,677.61 |
| December 3, 2004<br>D.I. 7086 | 10/1/04 –<br>10/31/04 | $200,155.50 | $1,368.18 (Stroock)<br>$ 24,659.00 (Navigant September) | $160,124.40 | $26,027.18 |
| January 7, 2005<br>D.I. 7481 | 11/1/04 –<br>11/30/04 | $218,608.50 | $14,019.09 (Stroock)<br>$25,102.80 (Navigant October)<br>$27,972.34 (Navigant November) | $174,886.80 | $67,094.23 |
| February 2, 2005<br>D.I. 7667 | 12/1/04 –<br>12/31/04 | $235,503.70 | $10,442.92 (Stroock)<br>$62,687.97 (Navigant December) | $188,402.96 | $73,130.89 |
| March 15, 2005<br>D.I. 8026 | 1/1/05 –<br>1/31/05 | $187,168.00 | $4,411.55 (Stroock)<br>$15,686.00 (Navigant January) | $149,734.40 | $20,097.55 |
| April 1, 2005<br>D.I. 8155 | 2/1/05 –<br>2/28/05 | $108,180.25 | $8,102.85 (Stroock)<br>$18,303.37 (Navigant February) | $86,544.20 | $26,406.22 |
| April 29, 2005<br>D.I. 8305 | 3/1/05~ –<br>3/31/05 | $56,941.25 | $287.23 (Stroock)<br>$6,114.86 (Navigant March) | $45,553.00 | $6,402.09 |
| June 6, 2005<br>D.I. 8562 | 4/1/05-<br>4/30/05 | $127,695.00 | $3,531.45 (Stroock)<br>$20,129.06 (Navigant April) | $102,156.00 | $23,660.51 |
| June 28, 2005<br>D.I. 8704 | 5/1/05-<br>5/31/05 | $98,569.00 | $4,871.74 (Stroock) | $78,855.20 | $858.21 |

4

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| August 3, 2005 D.I. 9135 | 6/1/05- 6/30/05 | $114,903.75 | $4,871.74 (Stroock) $34,075.28 (Navigant June) | $91,923.00 | $38,947.02 |
| September 8, 2005 D.I. 9356 | 7/1/05 – 7/31/05 | $117,780.75 | $2,088.44 (Stroock) $2,211.00 (Navigant) | $94,224.60 | $4,299.44 |
| October 4, 2005 D.I. 9565 | 8/1/05 – 8/31/05 | $106,796.25 | $5,046.99 (Stroock) $18,550.00 (Navigant) | $85,437.00 | $23,596.99 |
| November 1, 2005 D.I. 10951 | 9/1/05 – 9/30/05 | $67,697.50 | $1,399.68 (Stroock) $11,197.50 (Navigant) | $54,158.00 | $12,597.18 |
| November 29, 2005 D.I. 11202 | 10/1/05 – 10/31/05 | $98,216.75 | $1,611.30 (Stroock) $11,582.50 (Navigant) | $78,573.40 | $13,193.80 |
| January 9, 2006 D.I. 11507 | 11/1/05 – 11/30/05 | $104,348.00 | $2,847.45 (Stroock) $71,598.50 (Navigant) | $83,478.40 | $74,445.95 |
| January 30, 2006 D.I. 11655 | 12/1/05 – 12/31/05 | $96,855.00 | $1,379.53 (Stroock) $20,317.49 (Navigant) | $77,484.00 | 21,697.02 |
| March 1, 2006 D.I. 11921 | 1/1/06 – 1/31/06 | $73.383.00 | $1,810.85 (Stroock) $14,124.01 (Navigant) | $58.706.40 | $15,934.86 |
| March 28, 2006 D.I. 12134 | 2/1/06 – 2/28/06 | $105,083.75 | $1,434.62 (Stroock) $25,971.70 (Navigant) | $84.067.00 | $27,406.32 |
| May 2, 2006 D.I. 12354 | 3/1/06 – 3/31/06 | $145,189.50 | $2,512.81 (Stroock) $25,838.37 (Navigant) | $116,151.60 | $28,351.18 |
| May 31, 2006   DI. 12558 | 4/1/2006 – 4/30/2006 | $116,817.00 | $2,141.42 (Stroock) $7,425.00 (Navigant) | $93,453.60 | $9,566.42 |
| July 6, 2006 D.I. 12748 | 5/1/2006 – 5/31/2006 | $121,304.50 | $1,838.71 (Stroock) $17,493.75 (Navigant) | $97,043.60 | $19,332.46 |
| August 1, 2006 D.I. 12899 | 6/1/2006 – 6/30/2006 | $94,856.50 | $1,869.66 (Stroock) $38,548.75 (Navigant) | $75,885.20 | $40,418.41 |
| August 30, 2006 D.I. 13117 | 7/1/2006 – 7/31/2006 | $97,397.25 | $496.76 (Stroock) $30,280.00 (Navigant) | $77,917.80 | $30,776.76 |
| October 2, 2006 D.I. 13336 | 8/1/2006 – 8/31/2006 | $131,856.25 | $98.34 (Stroock) $98,317.50 (Navigant) | $105,485.00 | $98,415.84 |

5

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| November 2, 2006 D.I. 13559 | 9/1/2006 – 9/30/2006 | $150,960.00 | $4,147.01 (Stroock) $91,179.11 (Navigant) | $120,768.00 | $95,326.12 |
| November 29, 2006 D.I. 13838 | 10/1/06 - 10/31/06 | $196,223.50 | $915.14 (Stroock) $147,374.20 (Navigant) | $156,978.89 | $148,289.34 |
| January 12, 2007 D.I. 14292 | 11/1/06 11/30/06 | $188,638.00 | $3,370.16 (Stroock) $133,438.70 (Navigant) | $150,910.40 | $136,808.86 |
| January 29, 2007 D.I. 14415 | 12/1/06 – 12/31/06 | $99,832.00 | $5,752.89 (Stroock) $55,245.22 (Navigant) | $79,865.60 | $60,998.11 |
| March 8, 2007 D.I. 14810 | 1/1/07 1/31/07 | $77,582.00 | $962.06 (Stroock) $90,474.74 (Navigant) | $62,065.60 | $91,436.80 |
| April 10, 2007 D.I. 15132 | 2/1/07 2/28/07 | $119,140.50 | $3,092.88 (Stroock) $77,301.25 (Navigant) | $95,312.40 | $80,394.13 |
| May 1, 2007 D.I. 15457 | 3/1/07 3/31/07 | $135,228.00 | $6,635.25 (Stroock) $104,674.53 (Navigant) | $108,182.40 | $111,309.78 |

6

**Quarterly Fee Applications**

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 (First) | 4/12/01- 6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 (Second) | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 (Third) | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43* | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 (Fourth) | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60* | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 (Fifth) | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78* | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 (Sixth) | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45* | $224,534.21[1] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 (Seventh) | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75* | $136,886.40[2] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |

---

* These amounts relate to the Committee's Asbestos Issues Expert.

[1] Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[2] Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

7

|  |  | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 20, 2003 D.I. 3815 (Eighth) | 1/1/03 – 3/31/03 | $224,358.50 | $9,424.04 $1,077.80* | $224,615.50[3] | $9,424.04 (Stroock)[3] $1,077.80 (Chambers)[3] |
| August 29, 2003 D.I. 4357 (Ninth) | 4/1/03 – 6/30/03 | $215,903.50 | $2,726.28 $67,628.50* | $215,903.50[4] | $2,726.28 (Stroock)[4] $67,628.50 (Chambers)[4] |
| December 5, 2003 D.I. 4778 (Tenth) | 7/1/03 – 9/30/03 | $218,222.00 | $4,339.46 $36,865.19* | $218,222.00[5] | $4,339.46 (Stroock)[5] $36,865.19 (Chambers)[5] |
| March 2, 2004 D.I. 5212 (Eleventh) | 10/1/03 – 12/31/03 | $215,718.50 | $5,950.82 $100,349.50* | $215,718.50[6] | $5,922.67 (Stroock)[6] $100,349.50 (Chambers)[6] |
| May 18, 2004 D.I. 5597 (Twelfth) | 1/1/04 – 3/31/04 | $254,857.00 | $9,965.36 $83,147.07* | $254,857.00[7] | $9,965.36 (Stroock)[7] $83,147.07 (Navigant)[7] |
| August 26, 2004 D.I. 6269 (Thirteenth) | 4/1/04 – 6/30/04 | $353,629.50 | $7,760.42 $272,474.16* | $353,629.50[8] | $7,760.42 (Stroock)[8] $272,474.16 (Navigant)[8] |

---

[3]  Court Order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

[4]  Amended Court Order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

[5]  Court Order dated April 26, 2004 approved fees in the amount of $218,222.00 and expenses in the amount of $41,204.65.

[6]  Court Order dated June 16, 2004 approved fees in the amount of $215,718.50 and expenses in the amount of $106,272.17.

[7]  Court Order dated September 27, 2004 approved fees in the amount of $254,857.00 and expenses in the amount of $93,011.96.

[8]  Court Order dated January 25, 2005 approved fees in the amount of $353,629.50 and expenses in the amount of $280,234.58.

8

|  | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| November 10, 2004<br>D.I. 6871<br>(Fourteenth) | 7/1/04 – 9/30/04 | $226,702.50 | $6,705.08<br>$67,569.50* | $226,702.50[9] | $6,705.08<br>(Stroock)[9]<br>$67,569.50<br>(Navigant)[9] |
| February 22, 2005<br>D.I. 7851<br>(Fifteenth) | 10/1/04 – 12/31/04 | $653,133.20 | $25,830.19<br>$140,422.11* | $648,355.70[10] | $25,830.19<br>(Stroock)[10]<br>$140,422.11<br>(Navigant)[10] |
| May 16, 2005<br>D.I. 8468<br>(Sixteenth) | 1/1/05-3/31/05 | $352,289.50 | $12,746.23<br>$40,104.23* | $349,644.00 | $12,746.23<br>(Stroock)[11]<br>$40,104.23<br>(Navigant) |
| August 19, 2005<br>D.I. 9225<br>(Seventeenth) | 4/1/-5 – 6/30/05 | $340,821.25 | $9,261.40<br>$54,204.34* | $340,096.25[12] | $9,261.40<br>(Stroock)<br>$54,204.34<br>(Navigant) |
| November 18, 2005<br>D.I. 11118<br>(Eighteenth) | 7/1/05 – 9/30/05 | $291,843.50 | $8,534.71<br>$31,958.50* | $291,843.50[13] | $8,534.71<br>(Stroock)<br>$31,958.50<br>(Navigant) |
| February 15, 2006<br>D.I. 11798<br>(Nineteenth) | 10/1/05 – 12/31/05 | $299,419.75 | $5,838.28<br>$103,498.49* | $299,419.75[14] | $5,838.69<br>(Stroock<br>$103,498.49<br>(Navigant) |

[9] Court Order dated March 22, 2005 approved fees in the amount of $226,702.50 and expenses in the amount of $74,274.58.

[10] Court Order dated June 29, 2005 approved fees in the amount of $648,335.70 and expenses in the amount of $166,252.30.

[11] Court Order dated September 27, 2005 approved fees in the amount of $349,644.00 and expenses in the amount of $52,850.46.

[12] Court Order dated December 19, 2005 approved fees in the amount of $340,096.25 and expenses in the amount of $63,465.74.

[13] Court Order dated March 24, 2006 approved fees in the amount of $291,843.50 and expenses in the amount of $40,493.21.

[14] Court Order dated June 16, 2006 approved fees in the amount of $299,419.75 and expenses in the amount of $109,337.18.

9

|  | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 26, 2006<br>D.I. 12533<br>(Twentieth) | 1/1/2006 –<br>3/31/2006 | $323,566.25 | $5,758.28<br>$65,934.98* | $323,451.25[15] | $5,758.28<br>(Stroock)<br>$64,810.58<br>(Navigant) |
| August 17, 2006<br>D.I. 13006<br>(Twenty-First) | 4/1/2006 –<br>6/30/2006 | $332,978.00 | $5,849.79<br>$63,467.50* | $332,978.00[16] | $5,849.70<br>(Stroock)<br>$63,467.50<br>(Navigant) |
| November 29,<br>2006<br>D.I. 13835<br>(Twenty-Second) | 7/1/2006 –<br>9/30/2006 | $380,213.50 | $4,742.11<br>$219,776.61* | $380,213.50[17] | $4,742.11<br>(Stroock)<br>$219,776.61<br>(Navigant) |
| March 1, 2007<br>D.I. 14717<br>(Twenty-Third) | 10/1/2007 –<br>12/31/07 | $484,693.50 | $10,038.19<br>$336,058.12 | | |

---

[15]  Court Order dated September 25, 2006 approved fees in the amount of $323,451.25 and expenses in the amount
of $71,130.16.

[16]  Court Order dated December 18, 2006 approved fees in the amount of $332,978.00 and expenses in the amount
of $69,317.29. .

[17]  Court Order dated May 3, 2007 approved fees in the amount of $380,213.50 and expenses in the amount of
$224,518.72.

SSL-DOCS1 1806036v2

**WR GRACE & CO**
**ATTACHMENT B**
**JANUARY 1, 2007 - MARCH 31, 2007**

|  | Hours | Rate | Amount | Years in Position |
|---|---|---|---|---|
| **Partners** | | | | |
| Greenberg, Mayer | 2.0 | $ 760 | $ 1,520.00 | 9 |
| Kruger, Lewis | 72.8 | 860 | 62,608.00 | 37 |
| Pasquale, Kenneth | 95.2 | 720 | 68,544.00 | 8 |
| | | | | |
| **Associates** | | | | |
| Eichler, Mark | 5.6 | 605 | 3,388.00 | 9 |
| Gutierrez, James S. | 26.9 | 420 | 11,298.00 | 4 |
| Krieger, Arlene G. | 249.1 | 605 | 150,705.50 | 22 |
| Papir, Ryan M. | 5.6 | 465 | 2,604.00 | 2 |
| Pearsall, Alison | 5.8 | 380 | 2,204.00 | 3 |
| | | | | |
| **Paraprofessionals** | | | | |
| Holzberg, Ethel H. | 65.7 | 255 | 16,753.50 | 35 |
| Davidson, Andrew S. | 0.5 | 165 | 82.50 | 1 |
| Mohamed, David | 135.2 | 165 | 22,308.00 | 17 |
| | | | | |
| **Sub Total** | **664.4** | | **$ 342,015.50** | |
| **Less 50% Travel** | **(13.2)** | | **(10,065.00)** | |
| **Total** | **651.2** | | **$ 331,950.50** | |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| W. R. GRACE & CO., et al.[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## TWENTY-FOURTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., et al., FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JANUARY 1, 2007 THROUGH MARCH 31, 2007

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

accordance with the Administrative Fee Order (defined below) for interim allowance of

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc.,  Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA  Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents as follows:

## INTRODUCTION

1.     By this application (the "Application"), Stroock seeks (i) an interim allowance of compensation for the professional services rendered by Stroock as counsel for the Committee for the period from January 1, 2007 through March 31, 2007 (the "Compensation Period") in the aggregate amount of $331,950.50 representing 463.0 hours of professional services and 201.4 hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Stroock during the Compensation Period in connection with the rendition of such professional services and paraprofessional services in the aggregate amount of $10,690.15, as well as the fees and expenses of the asbestos issues expert employed by the Committee pursuant to the Court's June 22, 2001 Order Authorizing the Retention of Experts (the "Asbestos Issues Expert") in respect of services rendered in the months of January, February and March of 2007 in the aggregate amount of $272,450.52.

2.     Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

## BACKGROUND

3.     On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code and has continued in the management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

2

Bankruptcy Code.  Pursuant to an order of the Court, the Debtors' chapter 11 cases have been procedurally consolidated and are being jointly administered.

4.      The Debtors operate a worldwide specialty chemicals and materials business and employ approximately 3860 full and part-time employees.  On a consolidated basis, for the fiscal year 2000, Grace reported a net loss of $89.7 million[2] from $1.59 billion in net revenues.  The Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor subsidiaries and affiliates.

5.      On April 12, 2001, the United States Trustee formed the Committee.  During the first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter 11 cases.  The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP (n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel.  On December 3, 2003, a second amended notice of appointment of the Committee was filed by the United States Trustee. On July 10, 2006, a third amended notice of appointment of the Committee was filed by the United States Trustee.

6.      The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims and asbestos-related property damage claims against the Debtors (collectively, the "Asbestos Claim

---

[2]     The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related charge to earnings recorded in the fourth quarter of 2000.

3

Committees"). On June 18, 2001, the United States Trustee appointed an official committee to represent the interests of equity security holders of the Debtors (the "Equity Committee").

7.      By order dated May 24, 2004, the Court authorized the appointment of a legal representative for future asbestos claimants (the "Futures Representative").

8.      By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001. The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

9.      This is the twenty-fourth quarterly interim application Stroock has filed with the Court for an allowance of compensation and reimbursement of expenses for services rendered to the Committee. This Application is submitted pursuant to the terms of the Administrative Order Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, approved by the Court on May 3, 2001 as amended by order dated April 19, 2002 (collectively, the "Administrative Fee Order").

10.     In accordance with the procedures established by the Administrative Fee Order, Stroock had, at the time of filing this Application, received payment from the Debtors for 80% of the fees and 100% of Stroock's expenses requested, and not objected to, in the January 2007, the February 2007 and the March 2007 fee statements encompassed within this Compensation Period. In addition, Stroock has received payment from the Debtors representing the fees and expenses of Navigant Consulting, Inc. ("Navigant"), formerly known as Chambers Associates, the Asbestos Issues Expert for the Committee, for the month of January 2007 in the amount of

4

$90,474.74, for the month of February 2007 in the amount of $77,301.25 and for the month of

March 2007 in the amount of $104,674.53. Applicant has received no other payments and no

promises for payment from any source for services rendered in connection with these cases for

the months encompassing this Compensation Period other than as immediately set forth above.

There is no agreement or understanding between the Applicant and any other person (other than

members of Stroock) for the sharing of compensation to be received for the services rendered in

these cases.

11.    As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit

"A," all of the services for which interim compensation is sought herein were rendered for and

on behalf of the Committee solely in connection with these cases.

## SUMMARY OF SERVICES RENDERED

12.    Since being retained by the Committee, Stroock has rendered professional

services to the Committee as requested and as necessary and appropriate in furtherance of the

interests of the unsecured creditors of the Debtors' estates. The variety and complexity of these

cases and the need to act or respond on an expedited basis in furtherance of the Committee's

needs have required the expenditure of substantial time by personnel from several legal

disciplines, on an as-needed basis, including in certain instances, working into the evening and

on weekends.

13.    Stroock maintains written records of the time expended by attorneys and

paraprofessionals in the rendition of their professional services to the Committee. Such time

records were made contemporaneously with the rendition of services by the person rendering

such services and in the ordinary course of Stroock's practice, and are presented in compliance

5

with Delaware Local Rule 2016-2(d) amended effective as of February 1, 2006. A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Compensation Period is annexed hereto as Exhibit "B". In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

14.    Stroock also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection. A schedule of the categories of expenses and amounts for which payment is requested is annexed hereto as Exhibit "D".

15.    Stroock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

16.    The following summary of the services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is merely an attempt to highlight certain of these areas in which services were rendered to the Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

6

### Claim Analysis Objection, Resolution & Estimation (Asbestos) -- Category 0003

17.      As reflected in prior compensation applications, in mid-November 2004, the

Debtors filed a reorganization plan and numerous related pleadings including their motion

seeking the estimation of asbestos claims and the establishment of a schedule and procedures for

carrying out the estimations (the "Estimation Motion"), and their motion to establish post-

confirmation litigation protocols for liquidating asbestos claims (the "Case Management

Motion").

18.      During prior compensation periods, the Court approved a form of case

management order ("CMO") to govern the pre-confirmation estimation of asbestos personal

injury claims (the "PI CMO") and the related form of questionnaire (the "Questionnaire") to be

used by asbestos personal injury claimants who had commenced pre-petition litigation against

the Debtors (the "PI Pre-Petition Litigation Claimants") and two case management orders for

property damage claims the ("PD CMOs"); one to govern the Debtors' claims objection process

and the other to govern the pre-confirmation estimation of property damage claims ("PD

claims"). July 12, 2006 was the deadline set for Pre-Petition Litigation Claimants to return

completed Questionnaires. November 15, 2006 was the deadline set for PI-Pre-Petition

Litigation Claimants to file proofs of claim.

19.      During this Compensation Period, Stroock attended to numerous estimation and

related discovery matters including (i) the numerous pleadings filed in connection with the

Court's 12/22/06 and 3/6/07 orders regarding the discovery of x-ray, B-reads and other related

medical materials and application of the consulting expert privilege to those materials, including

7

(a) certain law firms motions to alter or amend the 12/22/06 order, (b) certain law firms pleadings seeking to extend the firms' time to appeal the 3/6/07 order and staying compliance thereof and (c) the Debtors responses to all such pleadings; (ii) the Debtors' subsequent motion seeking to compel compliance with the 3/6/07 order and the objections filed separately by the asbestos personal injury committee("ACC") and the certain claimants in opposition thereto; (iii) testimony and depositions previously given in connection with the Sealed Air litigation; (iv) the Debtors' status report proposing a modification of the PI CMO schedule, the opposition thereto filed by the Asbestos PI Committee and future claimants' representative ("Futures Representative") and the conference calls among the parties to discuss modifying the schedule; (iv) the Debtors' motions and supplemental pleadings seeking to compel certain Pre-Petition Litigation Claimants to respond to the Questionnaire and/or supplement PIQs previously filed, and the numerous objections and responses filed in opposition to the Debtors' motions, (v) the Asbestos PI Committee's and Futures Representative's motions to (a) compel the Debtors' production of a navigable database that includes information from the attachments to the PIQs and (b) compel the production of certain actuarial studies referenced in the Debtors' SEC filings and Debtors' motions for a protective order and to quash such discovery; (vi) the Debtors' emergency motion seeking to modify the protocol to obtain original x-rays from non-mesothelioma malignant cancer claimants and the objections and responses filed in opposition thereto by the Asbestos PI Committee and certain claimants' counsel; and (vii) the motion filed by BNSF Railway Company seeking to either clarify the scope of the preliminary injunction extant in these cases as applied to the asbestos personal injury actions commenced against BNSF or, alternatively, modify that injunction to take discovery of certain insurance carriers, the separate responses filed by the insurers, the Libby Claimants and the Debtors, and the Debtors'

8

motion to extend the preliminary injunction to encompass these asbestos claim actions against BNSF and responses filed thereto.

20.    Also, during this Compensation Period, Stroock attended to various PD claims-related matters, including the numerous summary judgment motions filed by the Debtors and responses filed thereto by PD claimants in connection with Debtors' objections to PD claims on the grounds of statutes of limitations and product identification, and pleadings filed on behalf of Anderson Memorial.

21.    Further, during this Compensation Period, Stroock prepared for and attended four depositions, including the depositions of Robert Beber and Jay Hughes, attended to expert estimation issues and materials and participated in a number of estimation-related discussions with Navigant, the Committee's asbestos-issues consultant and, as applicable, with representatives for the Debtors and the Equity Committee.

22.    At the close of the prior compensation period, Judge Fitzgerald issued a memorandum decision and order (the "ZAI Decision") on the ZAI-related cross-motions for summary judgment previously filed by the Debtors and the ZAI Claimants, and the ZAI Claimants appealed the ZAI Decision to the District Court. During this Compensation Period, Stroock completed its review of the ZAI Claimants' motion for leave to appeal and related appellate filings and documentation, reviewed the Debtors' response and prepared for and attended the hearing before the District Court. Thereafter, Stroock attended to Judge Buckwalter's order denying the ZAI Claimants motion. Stroock has expended 182.4 hours on this category for a fee of $122,455.50.

9

## Sales/Uses and Leases (Section 363) – Category 0009

23.    During this Compensation Period, Stroock reviewed Capstone's report on the
Debtors' sale of a business unit and communicated with Capstone regarding this matter.  Some
of the services rendered during this Compensation Period with respect to this proposed sale are
included in Category 0013 (Business Operations).  Stroock has expended 1.3 hours on this
category for a fee of $863.00.

## Business Operations -- Category 0013

24.    During this Compensation Period, Stroock communicated with Capstone
regarding the status of an acquisition the Debtors had been considering and the sale of a business
unit, Capstone's review of the Debtors' 2007 business plan, and information regarding the
Debtors' motions seeking to make minimum contributions to the Debtors' pension plan in April
2007 and to commence tax-related litigation.  In addition, Stroock reviewed the Debtors' 10K for
the period ended December 2006.  Stroock has expended 9.1 hours on this category for a fee of
$5,702.00.

## Case Administration -- Category 0014

25.    As reported in prior monthly compensation applications, these chapter 11 cases
were reassigned to District Court Judge Alfred Wolin in November 2001 and referred to
Bankruptcy Court Judge Judith Fitzgerald, and then reassigned to District Court Judge Ronald L.
Buckwalter following Judge Wolin's recusal from these cases.

26.    During this Compensation Period, Stroock continued to closely monitor the items
on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each

10

of the pending adversary proceedings and appeals, to ensure that the Committee was fully

informed about all pending motions, adversary proceedings and appeals and that Stroock would

be ready to timely respond on behalf of the Committee, as might be applicable. Stroock

continued to engage the Debtors' counsel and Capstone on an on-going basis with respect to

pending matters and information requests. In addition, during this Compensation Period,

Stroock and the Debtors' representatives engaged in a number of conference calls during which

pending motions, Court hearings and upcoming matters were discussed, as were various

estimation-related issues. Some of those services are in this Category, and others are in Category

0017 (Committee, Creditors) or Category 0037 (Hearings). Also, during this Compensation

Period, Stroock prepared a response to the Fee Auditor's initial report on Stroock's Twenty-

Second Quarterly Fee Application. Stroock has expended 175.2 hours on this category for a fee

of $43,825.00.

### Claims Analysis, Objection and Resolution (Non-Asbestos) -- Category 0015

27.    During this Compensation Period, the Debtors filed separate objections to a

number of pending claims including to (i) the Del Taco & Baker claims, (ii) the A. Volovsek

claim, (iii) the Circle Bar Ranch claim, and filed their twenty-first omnibus objection to claims.

In addition, the Debtors filed a number of stipulations including several addressing the multiple

claims filed by the Sealed Air Corp., Fresenius Medical Care Holdings and other claimants that

were the subject of the 21st Claims Objection, and a stipulation addressing the claims of

JPMorgan Chase. Stroock reviewed each of these pleadings and, as applicable, communicated

with Debtors' counsel regarding these matters. Stroock has expended 7.4 hours on this category

for a fee of $4,477.00.

11

**Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017**

28.    During this Compensation Period, Stroock communicated with the members of

the full Committee through memoranda and telephone calls.  In order to keep the Committee

fully informed of all of the pending matters in these cases, and thus enable the Committee to take

informed positions on those issues, Stroock reviewed and summarized the motions, other

pleadings and notices filed by the Debtors and other parties in interest in these cases and the

objections and responses filed, raised issues the Committee should be aware of, made

recommendations to the Committee concerning appropriate actions to be taken with regard to the

pleadings and communicated with members of the Committee regarding the positions to be

taken.  In addition, Stroock engaged counsel and other representatives for the Debtors, and other

parties and movants, as applicable, with the Committee's questions, concerns and comments,

negotiated whenever and to the extent possible consensual resolutions of outstanding issues and

acceptable forms of proposed orders, stipulations and settlement agreements and advised the

Committee of the Court's hearings and rulings.

29.    In addition, during this Compensation Period, Stroock prepared memoranda to the

Committee discussing the hearings held before Judge Fitzgerald, and addressing many of the

pleadings and other materials considered by the Court, including the discovery and estimation-

related pleadings identified in Category 0003-Claims Analysis Objection, Resolution and

Estimation (Asbestos), the appeals taken from the Court's Exclusivity Extension Order by the

Asbestos Claim Committees and the Futures Representative, and the Committee's participation

with the Debtors and the Equity Committee in responding thereto, the appeal taken from the

Court's ZAI Decision by the ZAI Claimants and the decisions issued and the status of those

12

appeals. Further during this Compensation Period, Stroock continued to discuss with the Committee, Navigant and the Debtors' representatives various PI Estimation and plan-related matters.

30.     Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions and express the Committee's views regarding the issues which arise in these cases, to support the establishment of appropriate processes for the estimation of the Debtors' asbestos liabilities, and participate in the estimation proceedings and in the preparation of a plan providing appropriate treatment for the creditors represented by the Committee. Stroock has expended 89.4 hours on this category for a fee of $53,457.00.

### Fee Application, Applicant -- Category 0018

31.     During this Compensation Period, Stroock prepared its fee statements for the months of November 2006, December 2006, and January 2007, and related notices, affidavits of service and certifications of no objection. Stroock also prepared its Twenty-Third Quarterly Fee Application covering the period from October 1, 2006 through December 31, 2006 (the "Prior Compensation Application"), including a narrative section summarizing the services rendered during that period by Stroock and numerous fee and expense schedules, as required by the Administrative Fee Order entered by the Court. Stroock has expended 71.7 hours on this category for a fee of $25,806.50.

### Creditor Inquiries -- Category 0019

32.     During this Compensation Period, Stroock responded to inquiries from unsecured creditors with respect to the status of these cases, the estimation of asbestos liabilities and related

13

issues, the appeal taken from the Court's Exclusivity Extension Order and other plan-related matters, the Court's ZAI Decision and the results of and matters addressed during the hearings held during this Compensation Period. Stroock has expended 2.2 hours on this category for a fee of $1,624.50.

### Fee Application, Others -- Category 0020

33.     During this Compensation Period, Stroock prepared notices, affidavits of service and certifications with respect to Capstone's monthly fee statements for the months of October 2006, November 2006 and December 2006. Stroock also attended to the fee applications of other professionals retained in these cases. Stroock has expended 10.4 hours on this category for a fee of $3,960.00.

### Employee Benefits, Pension -- Category 0021

34.     As reported in a prior compensation application, the Debtors filed a motion seeking authorization to make minimum funding contributions in aggregate amounts in excess of $100.00 million to their defined benefit plans during the period from July 15, 2006 through April 15, 2007 (the "Pension Funding Motion"). The major parties-in-interest agreed to the relief sought in the Pension Funding Motion other than authorizing the Debtors to make April 15, 2007 minimum funding payments in respect of their pension plans. During this Compensation Period, the Debtors filed a motion for authority to make the April 2007 minimum funding payments. Stroock communicated with the Committee and with counsel for the Debtors and the Futures Representative regarding the parties' positions on the motion and reviewed the final form of agreed order authorizing the payment to be made. Stroock has expended 6.0 hours on this category for the fee of $4,012.50.

14

## Travel – Non Working -- Category 0035

35.      Stroock's fees in this category during this Compensation Period relate to Stroock attorneys traveling (i) from New York for the hearing before District Judge Buckwalter on January 22, 2007 on the Asbestos Claim Committee' and Futures Representative's appeal from the Court's Exclusivity Extension Order, (ii) from New York for the omnibus hearing before Judge Fitzgerald on January 23, 2007 in Wilmington, DE, (iii) from and to New York for the depositions of Robert Beber and Jay Hughes in Boca Raton, FL in February 2007, (iv) from and to New York for the omnibus hearing before Judge Fitzgerald on February 26, 2007 in Wilmington, DE, and (v) from and to New York for the hearing before District Judge Buckwalter in March 2007 on the ZAI Claimants' motion for leave to appeal Judge Fitzgerald's ZAI Decision.  Stroock has expended 26.5 hours on this category for a fee of $20,130.0 for which Stroock is seeking payment in the amount of $10,065.00.

## Plan and Disclosure Statement -- Category 0036

36.      As reported in prior compensation applications, Judge Fitzgerald issued an order (the "Exclusivity Extension Order") extending the Debtors' exclusive period to file a plan through the July 24, 2007 omnibus hearing, and an appeal was taken by the Asbestos Claim Committees and the Futures Representative to the Court's order.  During the prior compensation period, Stroock attended to the appellants' pleadings including appellants' brief on appeal.

37.      Stroock conferred with counsel for the Debtors and the Equity Committee prior to the hearing before the District Court on the appeal and prepared for the hearing.  Subsequently, the appellants' appealed to the Third Circuit from the District Court's Memorandum and Order affirming the Court's Exclusivity Extension Order and filed a motion with the Court of Appeals

15

seeking expedited consideration of the appeal. Stroock reviewed appellants' motion, and

attended to the preparation of the appellees' brief with counsel for the Debtors and the Equity

Committee by reviewing and providing comments on the drafts of the brief circulated. Prior to

the end of the Compensation Period, the Third Circuit issued an order denying appellants'

motion to expedite the appeal.

38.     Further during this Compensation Period, Stroock continued to discuss plan-

related information with the Committee and Capstone. Stroock expended 19.8 hours on this

category for a fee of $13,846.50.

### Hearings -- Category 0037

39.     During this Compensation Period, Judge Fitzgerald held two omnibus hearings in

Wilmington, DE and a number of additional hearings, which as described elsewhere in this

Compensation Application addressed a variety of PI Estimation and PD litigation-related matters

and issues. Stroock reviewed each of the agenda notices and all relevant pleadings, orders,

stipulations and other documentation in advance of these hearings and the omnibus hearing to be

held on April 2, 2007, and participated in a number of conference calls with representatives for

the Debtors discussing these matters. Stroock prepared for and attended the hearings, and

advocated the Committee's positions, as appropriate. After the hearings, Stroock, as reflected

elsewhere in the Application, prepared memoranda informing the Committee of the arguments

made at, and the results of, the hearings. During this Compensation Period, the District Court

also held two hearings; one related to the appeal taken by the ZAI Claimants to the Court's ZAI

Decision and the other taken by the Asbestos Claim Committees and the Futures Representative

16

to the Exclusivity Extension Order.  Stroock expended 45.3 hours on this category for a fee of $30,837.50.

### Employment Applications - Others – Category 0040

40.    During this Compensation Period, the Debtors filed motions seeking to retain special immigration counsel and special asbestos counsel.  Objections were filed by the Asbestos PI Committee and the U.S. Trustee to the special asbestos counsel motion.  Stroock reviewed the motions and objections filed thereto.  Stroock expended 7.1 hours on this category for a fee of $4,295.50.

### Tax Issues – Category 0047

41.    During this Compensation Period, Stroock was informed that the Debtors' were considering repatriating additional cash from overseas.  In connection with this matter, Stroock participated in a conference call with Capstone and the Debtors' representatives.  Stroock expended 10.6 hours on this category for a fee of $6,723.00.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

42.    The factors to be considered in awarding attorneys fees have been enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547 F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts.  Stroock respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

> The Time and Labor Required.  The professional services rendered by Stroock on behalf of the Committee have required the expenditure of

17

substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the complex issues encountered by the Committee with skill and dispatch. Occasionally, Stroock has been required to perform these services under significant time constraints requiring work late into the evening and on weekends. The services rendered by Stroock were performed efficiently, effectively and economically.

The Novelty and Difficulty of Questions. Novel and complex issues have already arisen in the course of these Chapter 11 cases, and it can be anticipated that other such issues will be encountered. In this case, as in many others in which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

The Skill Requisite to Perform the Legal Services Properly. Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the resolution of issues, are and will continue to contribute to the maximization of the distributions to the Debtors' unsecured creditors.

The Preclusion of Other Employment by Applicant Due to Acceptance of the Case. Due to the size of Stroock's insolvency department, Stroock's

18

representation of the Committee has not precluded its acceptance of new clients. However, the volume of the matters needing attention on a continuing basis has required several of the attorneys to commit significant portions of their time to these cases.

The Customary Fee. The fee sought herein is based upon Stroock's normal hourly rates for services of this kind. Stroock respectfully submits that the fee sought herein is not unusual given the magnitude and complexity of these cases and the time expended in attending to the representation of the Committee, and is commensurate with fees Stroock has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

Whether the Fee is Fixed or Contingent. Pursuant to §§ 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed under § 1103 of the Code are contingent pending final approval by this Court, and are subject to adjustment dependent upon the services rendered and the results obtained.

Time Limitations Imposed by Client or Other Circumstances. As already indicated, Stroock has attended to the various issues arising in these cases. Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

19

The Amount Involved and Results Obtained. Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

The Experience, Reputation and Ability of the Attorneys. Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including: Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The Charter Company, Federated Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc., Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation, Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc., Flushing Hospital and Medical Center, Planet Hollywood International, Anchor Glass Container Corporation, Beloit Corporation in the Harnischfeger Industries Chapter 11 Cases, RSL COM U.S.A. Inc, USG Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings. Stroock's experience enables it to perform the services described herein competently and expeditiously. In addition to its expertise in the area of corporate reorganization, Stroock has already frequently called upon the

20

expertise of its partners and associates in the litigation, ERISA, tax, environmental and intellectual property law areas to perform the wide ranging scope of the legal work necessitated by these cases.

The "Undesirability" of the Case.  These cases are not undesirable, but as already indicated, have required a significant commitment of time from several of the attorneys assigned hereto.

Nature and Length of Professional Relationship.  As described above, Stroock has been actively rendering services on behalf of the Committee as necessary and appropriate from April 12, 2001 through to the present.

## ALLOWANCE OF COMPENSATION

43.    The professional services rendered by Stroock required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort.  It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole and the Debtors' estates.

44.    With respect to the level of compensation, § 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person (including attorneys for a creditors' committee): "Reasonable compensation for actual necessary services rendered by [such] . . . professional person.  11 U.S.C. § 330.  Section 330 further states that the

21

court should take into consideration, inter alia, the nature, extent, and value of services performed, as well as the cost of comparable services other than in a case under this title. Id. The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

45.     The total time spent by Stroock attorneys and paraprofessionals during the Compensation Period for which Stroock seeks payment was 664.4 hours. Such services have a fair market value of $331,950.50. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

46.     As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit "C" are summaries of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

47.     In addition, Stroock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $10,690.15 for which Stroock respectfully requests reimbursement in full. The disbursements and expenses have been incurred in accordance with Stroock's normal practice of charging clients for expenses clearly related to and required by particular matters. Such expenses were often incurred to enable Stroock to devote time beyond normal office hours to matters, which imposed extraordinary time demands. Stroock has endeavored to minimize these expenses to the fullest extent possible.

22

Attached hereto as Exhibit "D" is a summary chart reflecting each category of disbursement for which Stroock seeks reimbursement.

48.     Stroock's billing rates do not include charges for photocopying, telephone and telecopier toll charges, computerized research, travel expenses, "working meals", secretarial overtime, postage and certain other office services, because the needs of each client for such services differ.  Stroock believes that it is fairest to charge each client only for the services actually used in performing services for it.  Stroock has endeavored to minimize these expenses to the fullest extent possible.

49.     Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions.  Stroock does not charge for incoming facsimiles.

50.     Further, in accordance with the Court's June 22, 2001 Order Authorizing the Retention of Experts, this Application seeks payment in the aggregate amount of $272,450.52, for the fees and expenses of Navigant, the asbestos issues expert engaged by the Committee, for the services rendered on behalf of the Committee in the months of January through March of 2007 and the expenses incurred in connection with the rendition of those services and certain services that were rendered earlier.[3].

---

[3]    As reflected in the disbursement statements attached as Exhibit "E" hereto, certain of the expenses sought by Navigant in its October 2006 were incurred in connection with services rendered for the Committee during the months of July and August 2006.

23

51.    No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

52.    Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

53.    No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order and the Court's June 22, 2001 Order Authorizing the Retention of Experts:

> the allowance of compensation for professional services rendered to the Committee during the period from January 1, 2007 through and including March 31, 2007 in the amount of $331,950.50;
>
> the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from January 1, 2007 through and including March 31, 2007 in the amount of $10,690.15;
>
> the payment of the fees and expenses of the asbestos issues expert employed by the Committee for the months of January, February and March 2007 in the aggregate amount of $272,450.52;

24

authorizing and directing the Debtors to pay to Stroock each of the amounts set

forth in (a) (b) and (c) of this WHEREFORE clause (to the extent not already paid

pursuant to the Administrative Fee Order); and

granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      June 1, 2007

                      STROOCK & STROOCK & LAVAN LLP


                      Lewis Kruger
                      Kenneth Pasquale
                      Members of the Firm
                      180 Maiden Lane
                      New York, New York 10038-4982
                      (212) 806-5400

                      Co-Counsel for the Official Committee of
                      Unsecured Creditors of W. R. Grace & Co., et al.