## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ————————————————————) | |
| ) | |
| **IN RE:** ) | **Chapter 11** |
| ) | |
| **W.R. GRACE & CO.,** *et al.*, ) | **Case No. 01-01139 (JKF)** |
| ) | **Jointly Administered** |
| ) | |
| **Debtors.** ) | |
| ) | **Related to Docket Nos. 15719** |
| ) | **Objection Deadline:  June 14, 2007 @ 4:00 p.m.** |
| ) | **Hearing Date:  June 21, 2007 @ 8:30 a.m.** |
| ————————————————————) | |

## MEMORANDUM IN SUPPORT OF MOTLEY RICE LLC'S
## MOTION FOR PROTECTIVE ORDER

COMES NOW, Motley Rice LLC, (hereinafter "Motley Rice") a law firm representing various asbestos personal injury claimants, and hereby files this Brief in Support of its Motion for a Protective Order in response to a Notice of Deposition filed by W.R. Grace & Co. (hereinafter "Debtor").  In support of its Motion for a Protective Order, Motley Rice states as follows:

## INTRODUCTION

Notwithstanding previous pronouncements from this Court, case law emanating from respected jurists throughout this country, and Federal discovery rules, Debtor continues down an interminable and costly path with an eye toward taking unnecessary and improper discovery of the law firms that represent its victims.  The latest salvo comes in the form of a Rule 30(b)(6) Notice of Deposition directed to Motley Rice.  Exhibit "A", Deposition Notice.[1]  (Docket No. 15719).  As ever, the timing of this Notice belies Debtor's earnestness.

_____

[1] Motley Rice notes that Debtor subsequently filed a Notice of Suspended Depositions.  Exhibit "B", Notice, May 31, 2007.  This Notice does not cancel Motley Rice's noticed deposition and cavalierly states that the "depositions shall be rescheduled, as appropriate, after the June 21, 2007 hearing and you will be notified of the new dates."  *Id.*

In order to appreciate the impropriety and irrelevance of Debtor's latest discovery request, perspective is needed. The questionnaire portion of this case alone is lumbering toward a two year anniversary—a hearing was held on July 19th, 2005 in which the language of Debtor's Questionnaire was dissected at length. Despite opposition from claimants and precedent from other asbestos bankruptcy cases (in which estimation proceedings where conducted without individual discovery), Debtor was allowed to formulate and submit its personal injury questionnaire to claimants on a grand scale.

Perhaps emboldened by the sanctioning of the initial questionnaire, Debtor took the unprecedented step of proposing to serve discovery on claimant's law firms. The information Debtor claimed to be seeking concerned the alleged "shopping" for positive B-reads of law firms and on October 24th, 2005 this Court considered Debtor's request. Exhibit "C", October 24, 2005 Transcript at p. 80. Following a lengthy argument by Debtor's counsel, this Court rejected Debtor's proposed second questionnaire, stating flatly, "Whether made up or not, this is going far afield of what an estimation hearing's all about." Exhibit "C" at p. 81. The Court continued, "I'm not permitting the [law firm] questionnaire…. There may be attorney-client privilege. There may be work product. There could be all sorts of problems. There are definitely with respect to the financial relationships and how firms transfer clients or share clients among one another, proprietary information involved. There are all sorts of problems with this questionnaire. So, I'm not going to approve it…. This is not enhancing [the estimation] process." Exhibit "C" at pp. 81-82.

On cue, Debtor's counsel inquired, "Can I try one more time?" The Court answered, "One more." Exhibit "C" at p. 82. After additional argument by Debtor's counsel, the Court again concluded, "This evidence about relationships between the law firms is too tangential."

2

Exhibit "C" at p. 85.  Ultimately, an order was entered that denied Debtor's Motion to conduct discovery of law firms on December 16th, 2005.  Exhibit "D", Order, December 16, 2005.  .

Debtor's "one more time" occurred over a year and a half ago.  Nevertheless, Debtor, with a single-mindedness and misplaced tenacity reminiscent of Inspector Javert (or maybe Clouseau), continues to pursue discovery long since dismissed by this Court as improper.  Now, Debtor has disguised its earlier request as one seeking information as to the length firms went in complying with an Order concerning provision of B-read medical information generated prior to the involvement of a law firm in a claimant's case.  Exhibit "E" at pp. 43-44, 50, Transcript of Hearing, May 8th, 2007.  The true aim of Debtor, however, was made manifest when its counsel remarked, in discussing proposed interrogatories to law firms, "We are now conducting discovery to determine what has been done to produce evidence of the shopping."  Exhibit "E" at p. 50.[2]  Incredibly, this was the precise aim of the previous questionnaire that had already been rejected by this Court.

The primary reason Debtor claims to seek this information is that Debtor's "experts need it."  Exhibit "E" at p. 43.  Debtor's "shopping" contention, it should be remembered, is that certain law firms "shopped" for a positive B-read prior to referring a case to another law firm. Exhibit "C", Transcript of Hearing, October 24, 2005 at p. 80.  Even if one accepts Debtor's theory, the B-reads that were procured in this manner would still be protected under the prior rulings of this Court.  The Order entered on December 22, 2006 required production of B-reads that resulted from examinations that occurred **before** the retention of counsel, not after.  Exhibit "F", Order, December 22, 2006.  Notwithstanding the Court's finding that post-retention

---

[2] Interestingly, the Notice of Deposition contains no such limitation of scope.  Instead, Debtor seeks to depose the person most knowledgeable "concerning the activities undertaken by the firm to respond to the W.R. Grace Asbestos Personal Injury Questionnaire on behalf of the claimants listed on Exhibit A hereto."  Exhibit "A", Notice of Deposition at p. 1.  The reference Exhibit A consists of a list of claimants spanning 92 pages.  *See* Exhibit "A".

materials are protected, Debtor, apparently, has subpoenaed medical records from physicians and is in possession of these records, many of which may be protected work product. Exhibit "G", Transcript May 2, 2007 at p. 159; Exhibit "E", Transcript May 7, 2007 at p 29. Thus, regardless of any additional discovery, Debtor possesses a substantial body of information that would, if Debtor is to be believed, support its "shopping" contention and that Debtor has likely supplied to its valuation experts already.[3]

Furthermore, even assuming that the depositions would even lead to the discovery of relevant, non-cumulative evidence, the recently amended Case Management Order indicates that Debtor's experts will not have time to incorporate any newly discovered information into their estimates. Debtor's expert reports are due June 11th and June 18th. Exhibit "H", Newly Amended Case Management Order at p. 1. Presently, all depositions have been suspended pending the hearing on the propriety of the depositions on June 21, 2007. Exhibit "B", Notice of Suspended Depositions at p. 1. It is impossible for Debtor's experts to have this coveted information prior to the time their reports are due. Of course, whether Debtor's experts even require any additional evidence to perform their respective estimates remains to be seen.

## ARGUMENT

I.    Debtor's Failure to Subpoena Motley Rice Prohibits the Taking of Motley Rice's Deposition.

Debtor's Notice of Deposition is procedurally defective and without effect. Motley Rice's only involvement with this case has been serving as legal counsel to certain claimants. Motley Rice is not now and has never been a party in this case. In order to secure the attendance of a non-party at a deposition, Debtor is required to serve the non-party, here Motley Rice, with a

---

[3] Motley Rice expressly reserves the right to challenge Debtor's use, procurement, and possession of materials produced by physicians on the grounds that such materials are protected by the work product doctrine, the attorney-client privilege, or are otherwise protected or not subject to discovery.

subpoena from a court of competent jurisdiction. *Application of Johnson & Johnson*, 59 F.R.D. 174, 178 (D.Del. 1973) ("The attendance of a non-party witness at a deposition can only be compelled in accordance with Rule 45.); *Spearman v. Tom Wood Pontiac-GMC, Inc*., 2002 WL 31854892 at *10 (S.D.Ind. 2002) (Although "Rule 30(a)(1) of the Federal Rules of Civil Procedure provides that a party may depose any person by deposition, the attendance of non-party witnesses can be compelled only by subpoena as provided in Rule 45."); *see also Highland Tank & Mfg. Co. v. PS Int'l, Inc*., 227 F.R.D. 374, 379 (W.D.Pa. 2005) ("Rule 45 is the only discovery method whereby information may be obtained from a nonparty to the suit."); *Municipal Revenue Services, Inc. v. Xspand, Inc.*, Slip Copy, 2007 WL 1074140 at *4 (M.D.Pa. 2007) (accord).

Moreover, Rule 30 of the Federal Rules of Civil Procedure, applicable in this matter pursuant to Federal Rule of Bankruptcy Procedure 7030, states specifically that for a corporate representative deposition, as noticed in this case, "**A subpoena shall advise a non-party organization of its duty to make such a designation**."  Fed. R. Civ. P. 30(b)(6) (emphasis added).  Motley Rice has not been served with a subpoena by Debtor.  Thus, the deposition of Motley Rice noticed for June 22, 2007 is wholly without legal effect.  Motley Rice is entitled to a protective order that quashes the deposition noticed by Debtor for June 22, 2007 of Motley Rice and prohibits Debtor from otherwise pursuing this currently suspended deposition.[4]

II.    Debtor's Deposition of Motley Rice, and other Plaintiff Law Firms, would Exceed the Deposition Limit Imposed by Rule 7030.

Even were Debtor to serve Motley Rice with a subpoena from a court of competent jurisdiction for a deposition, Federal Rule of Bankruptcy Procedure 7030 provides that leave of

---

[4] Motley Rice expressly reserves its right to challenge, on any ground, any subpoena issued to it on behalf of Debtor in a court of competent jurisdiction pursuant to Federal Rules of Bankruptcy Procedure 7026 and 9016 and Federal Rules of Civil Procedure 26 and 45.

court must be obtained for a party to exceed the ten deposition limit. Fed. R. Bankr. P. 7030; Fed. R. Civ. P. 30(a)(2)(A). Debtor has already exceeded the ten deposition limit in this case. If the Debtor proceeds to take the Motley Rice's deposition, together with the other twenty-six other depositions that were noticed of plaintiff law firms, the ten deposition limit would be obliterated. The Debtor has not obtained the requisite leave of court prior to noticing Motley Rice's deposition, or the depositions of the other plaintiff law firms.

Moreover, Debtor has failed to demonstrate the need for the excessive number of depositions as required by the discovery rules. *See, e.g., Bell v. Fowler*, 99 F.3d 262, 271 (8th Cir. 1996) (district court did not abuse its discretion in denying additional depositions when party "presented no good reason why additional depositions were necessary"); *Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota*, 187 F.R.D. 578, 586 (D.Minn. 1999) (accord). Even presuming subsequent service of a subpoena, the federal rules of discovery do not permit the taking of Motley Rice's deposition in this case. Motley Rice's Motion for Protective Order should be granted on this independent ground as well.

III.    Debtor has Failed to Establish that the Motley Rice Deposition is Proper Under the Applicable Case Law.

 Case law also supports Motley Rice's Motion for a Protective Order. The seminal case pertaining to depositions of opposing counsel is *Shelton v. American Motors Corporation*. 805 F.2d 1323 (8th Cir. 1986). In *Shelton*, counsel for plaintiff sought to depose defendant's in-house counsel, who had been working on the case, about whether certain liability documents existed. *Id*. at 1325. In reversing the district court, the Eighth Circuit observed, "We view the increasing practice of taking opposing counsel's deposition as a negative development in the area of litigation, and one that should be employed only in limited circumstances." *Id*. at 1327. The court further noted,

The practice of forcing trial counsel to testify as a witness, however, has long been discouraged and recognized as disrupting the adversarial nature of our judicial system. **Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation.** Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.

*Id.* (internal citations omitted) (emphasis added). Ultimately, the court concluded that depositions of opposing counsel should take place only "where the party seeking to take the deposition has shown that: (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id.* (internal citation omitted). Numerous other circuits have adopted this approach. *See, e.g., Nationwide Mut. Ins. Co. v. Home Ins. Co*., 278 F.3d 621, 628-30 (6th Cir. 2002); *Thiessen v. GE Capital Corp*., 267 F.3d 2095, 1112 (10th Cir. 2001); *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999), *cert. denied*, 529 U.S. 1129 (2000); *Boughton v. Cotter Corp*., 65 F.3d 823, 830 (10th Cir. 1995); *see also Allergan Inc. v. Pharmacia Corp*., 2002 WL 1268047 at *1 (D.Del. 2002) (applying *Shelton* and granting protective order to preclude deposition of opposing counsel).

The burden that the proponent of the deposition, here Debtor, must meet is onerous. In *Pamida, Inc. v. E.S. Originals, Inc*., the Eighth Circuit noted that the standard is "a difficult burden . . . intended to guard against the 'harassing practice of deposing opposing counsel … that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process.'" 281 F.3d 726, 729-30 (quoting *Shelton*, 805 F.2d at 1330).

In the present case, the Debtor has done nothing to demonstrate that it can meet its burden and fulfill any, much less all, of the three elements necessary for the deposition of opposing counsel.  In fact, each of the three elements weighs against the taking of Motley Rice's deposition.  First, as Debtor apparently has obtained a substantial amount of information from its subpoenaing of physicians already, the information sought not only is available but has been obtained from another source.  Second, as recognized by this Court in its earlier rulings, much, if not all, of the information Debtor is attempting to discover is privileged or otherwise protected from discovery.  Third, the information is far from crucial to the presentation of the estimation case.  Debtor's expert reports are due imminently.  Even presuming that the estimation was further delayed, however, there is no reason to suspect that Debtor's experts could not factor in the effect of any alleged "shopping" of experts in their valuation of current and future claims.  As Debtor claims to have information supporting its "shopping" theory, there is every reason to believe that the experts already have considered that factor in arriving at their conclusions.  Furthermore, Debtor is only using a sample of the claims submitted for estimation purposes.  If allowed to pursue the depositions of 27 claimants' firms, an overwhelming percentage of the information collected would not be used at all.  Debtor has not and cannot meet its burden with respect to showing the necessity of deposing Motley Rice.  Motley Rice's Motion for a Protective Order should be granted on this basis.


IV.    The Deposition of Motley Rice would violate Rule 7026.

While Rule 26, made applicable to this proceeding through Federal Rule of Bankruptcy Procedure 7026, provides that the discovery request must be calculated to lead to the discovery of admissible evidence, the Rule also provides for the curtailing of discovery if the information

sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

First, the deposition of Motley Rice would not lead to the discovery of admissible evidence. As this Court recognized in late October 2005 and again in December 2006, attorney-client privilege, the consulting expert privilege, and work product protection (together with other proprietary concerns) guarantees that any deposition on the proposed topic would be both useless and improper. Debtor has not demonstrated any exceptional circumstances sufficient to overcome the protections enshrined in Rule 26 and applicable case law. *See* Fed. R. Civ. P. 26(b)(3), (4); *Hickman v. Taylor*, 329 U.S. 495, 510-12 (1947); *Sporck v. Peil*, 759 F.2d 312, 315 (3d Cir. 1985); *cert. denied* 474 U.S. 903 (1985); *Dominguez v. Syntex Laboratories, Inc.*, 149 F.R.D. 158, 163 (S.D.Ind. 1993), *superseded on other grounds*, *Simon Property Group L.P. v. mySimon, Inc.*, 194 F.R.D. 644, 647 n.1 (S.D.Ind. 2000); *Ager v. Jane C. Stormont Hospital & Training*, 622 F.2d 496, 502 (10th Cir. 1980). Therefore, the deposition is not reasonably calculated to lead to the discovery of admissible evidence.

Second, as Debtor already has at least some of the sought-after evidence, by way of obtaining certain medical records from physicians, any information gleaned from the deposition of Motley Rice would be cumulative and unreasonably duplicative. This assumes, of course, that some evidence would be obtainable from Motley Rice's deposition. Given this Court's previous

rulings on applicability of the attorney-client privilege and work product doctrines, any evidence uncovered would be minimal if extant whatsoever.

Third, it is apparent that the burden, inconvenience, and expense dictate that Motley Rice's deposition should not go forward.  The proposed deposition is also wasteful because even if the information sought does exist, almost all of it would not be used by Debtor.  Debtor has noticed depositions concerning claim filed for thousands of individuals.  Yet, Debtor only intends, apparently, on using a sample of approximately two thousand (2,000) claimants for estimation purposes.  Motley Rice, and other claimants' law firms, would have to expend considerable resources to prepare for and attend the proposed deposition.  It should be noted, that although Debtor claims only to seek information concerning shopping for B-Reads, the Notice of Deposition is not so limited.  Instead, the broad language of the Notice—"activities undertaken by the firm to respond to the … Questionnaire" contemplates inquiry into communications that are necessarily privileged or protected from disclosure and would lead to a lengthy and contentious deposition and likely, subsequent motions practice.  To require Motley Rice to endure such a burden on its time and resources, in addition to the further depletion of estate funds, is illogical.  This Court should enter a Protective Order pursuant to Rule 26.

V.      The Deposition of Motley Rice would Contravene Rule 1001.

Federal Rule of Bankruptcy Procedure 1001 provides:  "These rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding."  Fed. R. Bankr. P. 1001.  Creditors, just as much as debtors, are entitled to a justice that is neither overly expensive nor unreasonably delayed.  In discussing the dictates of Rule 1001, the bankruptcy court in *In re Shank* noted,

> A bankruptcy case imposes burdens on creditors.  The obvious economic loss through total or partial discharge of debt, of course, is a necessary and expected consequence of

the relief that the Bankruptcy Code provides for debtors.  But that injury need not be compounded by imposing unnecessary costs on creditors who desire to participate fairly in the process.

315 B.R. 799, 812 (Bankr.N.D.Ga. 2004).

In this case, the creditors are not financial institutions waiting for the return of collateral for a debt.  The creditors here are individuals who either have suffered or had a loved one suffer with an asbestos-related disease.  In some cases, death was the price one paid for encountering products for which the Debtor is responsible.  These creditors are not seeking to recoup money so that stock prices may rise or that bonuses may be paid.  These creditors are seeking the only remuneration this country's tort system allows for injuring another.  As mentioned in *Shank*, these creditors have already experienced an undue burden.  An entity responsible for their injuries cannot fully compensate them.  Now, with Debtor's continued delay tactics, couched as ceaseless discovery requests and subsequent battles, these creditors have to wait even longer for justice.  In the meanwhile, Debtor's legal fees continue to consume the assets of the estate and further diminish any recovery for individual creditors.

By use of its Questionnaire, Debtor has sought and procured mountains of data to be used by its experts in the estimation process.  By its own admission, Debtor has "millions" of pages of claim information currently.  Exhibit "E", May 8th Transcript at p. 17.  This does not include the vast amount of information Debtor already had obtained concerning claims resolved prior to its bankruptcy filing.  Insatiate, Debtor demands even more information.  What is astounding is that Debtor already admits that it cannot process the information it already has.  Debtor has reviewed and coded a mere 2,000 of the 118,000 Questionnaires that it received.  Exhibit "I", Grace Reply to ACC/FCR Motion to Compel Creation of Complete Navigable Database, March 26, 2007 at p. 9.  It cannot and does not intend to finish that task.  Instead, Debtor will rely on the sample that it

has coded.  Any information about claimants that are not within this sample would be of no use to Debtor's experts.  Even if it could be used by these Experts, the imminent deadline for expert reports, June 11th and 18th precludes analysis of the data.  Heedless of this inherent constraint, Debtor presses on.

Motley Rice would be remiss if it failed to mention that, at least in the context of the Owens-Corning bankruptcy, the estimation and valuation took into account the contentions of problems inherent in the mass-screening process and that "Certain pro-plaintiff B-readers were so biased that their readings were simply unreliable." *Owens-Corning v. Credit Suisse First Boston*, 322 B.R. 719, 723 (D.Del. 2005).  This was all in the context of a bankruptcy conducted without individual discovery.  There is no reason to suspect currently that Debtor's experts could not similarly take into account the effect of any alleged "shopping" for positive B-reads in arriving at their conclusions.   The burdens that the proposed depositions would impose on Motley Rice along with the uselessness of the deposition, discussed elsewhere in this Memorandum, need not be repeated again.  Rule 1001 also mandates that Motley Rice's Motion for a Protective Order be granted.

## <u>CONCLUSION</u>

As demonstrated by the forgoing discussion, the proposed deposition of Motley Rice would violate numerous rules of procedure, is not designed to lead to the discovery of admissible evidence, is unreasonably burdensome, expensive and inconvenient, and would unnecessarily delay this case.  For the reasons stated herein and the reasons stated in the Motions for Protective Orders filed by or on behalf of other law firms similarly situated, Motley Rice's Motion for a Protective Order should be granted.

Dated:  June 4, 2007.

RESPECTFULLY SUBMITTED,


/s/ John E. Herrick_____
JOHN E. HERRICK
MOTLEY RICE LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mount Pleasant, SC 29465
Tel. (843) 216-9000
Fac. (843) 216-9440
Email:  jherrick@motleyrice.com

COUNSEL FOR VARIOUS
ASBESTOS PERSONAL INJURY
CLAIMANTS