# EXHIBIT E

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                               .       Case No. 01-1139(JKF)
                                     .
                                     .
W. R. GRACE & CO.,                   .
                                     .       5414 USX Tower Building
                                     .       Pittsburgh, PA   15222
                                     .
             Debtor.   .
                                     .       May 8, 2007
. . . . . . . . . . . ..                     9:17 a.m.

TRANSCRIPT OF HEARING
ARGUMENT ON DISCOVERY
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:               Kirkland & Ellis, LLP
                              By: DAVID. M. BERNICK, P.C., ESQ.
                                  AMANDA BASTA, ESQ.
                                  JANET BAER, ESQ.
                              Aon Center
                              200 East Randolph Drive
                              Chicago, IL   60601

For "The MMWR" firms:         Montgomery, McCracken, Walker
                                & Rhoads, LLP
                              By:   LEONARD A. BUSBY, ESQ.
                              300 Delaware Avenue
                              Suite 750
                              Wilmington, DE   19801

For Asbestos Creditors':      Caplin & Drysdale, Chartered
                              By: NATHAN D. FINCH, ESQ.
                                  MARC HURFORD, ESQ.
                              One Thomas Circle, NW
                              Washington, DC   20005


Audio Operator:               Janet Heller

 Proceedings recorded by electronic sound recording, transcript
           produced by transcription service
_____
               J&J COURT TRANSCRIBERS, INC.
                   268 Evergreen Avenue
                Hamilton, New Jersey 08619
              E-mail:   jjcourt@optonline.net

       (609) 586-2311    Fax No. (609) 587-3599

1     As a consequence, Your Honor then entered an order
2 that said very specifically, the response must reference
3 clearly -- this is the order entered at Paragraph 2 -- must
4 represent clearly the specific pages of the document so that
5 the debtor understands which pages of the attachment provides
6 the answer to a specific question on the questionnaire. Cases
7 that do not include an answer should not be referenced.
8     So we then went through the process of actually
9 determining, well, there are millions of pages of attachments,
10 who actually supplied an attachment that complied with Your
11 Honor's order. And this all played out in the last few weeks.
12 As it turns out, they then make a request that the Russ
13 database be supplemented by all those answers. And then it
14 turns out that there about -- there's only one firm that
15 actually did something that was even close to complying with
16 the attachment requirements, and that information that was
17 supplied was so minimal, that the folks here on the other side
18 of the room said don't even bother, it's not worth it.
19     So now when you combine these two things, that is
20 they didn't answer the question directly, they didn't comply
21 with the attachment order. What that then means that if you
22 take this chart, there literally are only 1200 people, the same
23 people that are on Exhibit 2 at the end, who actually provided
24 by way of answering the question or by way of submitting an
25 attachment in compliance with Your Honor's order. There are

1       Exhibits 9 and 10, these are just the same law firms.
2  Remember our original Category 1 when we said all kinds of good
3  things about these people have given us the certification of
4  compliance?  The certification of compliance didn't match what
5  Mr. Kazan told me over the phone.  He said, we don't have
6  anything -- it's all been produced, it's all been produced,
7  nothing is being withheld.
8       Well, what actually happened though, was that the
9  certification that was supplied to us didn't go that far.  They
10 said our firm has not withheld.  Our firm.  So what they're
11 really saying is, we don't know -- just like Mr. Herrick -- no
12 search has been made.  He may have looked at his own files, but
13 no search has been made for what was happening at the time of
14 the original screen.  We're only making representation with
15 respect to the screens that were done while it was on our
16 watch.  That's not compliant with the order as we're going to
17 talk about in a minute and is massively -- it undercuts the
18 entire process that we're dealing with him.
19      Now we know, we know that there are documents that
20 are out there that do fall within the scope of your order
21 relating to these firms that have not been produced to us.  And
22 the only reason we even know about these is that we were
23 successful after unbelievable efforts in getting some discovery
24 of some of the doctors.  And some of those doctors happen to
25 have the files relating to some of the same claimants that

1 we're talking about here.  So we're kind of going out there and
2 we got lucky with respect to certain of these things because it
3 actually -- take for example, this would be Group Exhibit 11.
4         This is from the PIQ for an individual with the last
5 social security numbers 5621.  It is a report by Dr. Graziano
6 dated August 28th of 2000 with respect to this individual.  It
7 says, I took a look at an x-ray dated August 10th of 2000.  He
8 says, my opinion, reason to believe are due to asbestos pleural
9 disease.  He makes a positive finding.  The B-read -- the PIQ
10 also -- and this is in connection with Baron and Budd -- that
11 also on July 30, 2001 confirms that with respect to this
12 individual, chest x-ray of 8/10/00, that's the same one, and
13 basically gives another report that says this guy -- this
14 individual has got evidence on x-ray or asbestos pleural
15 disease.
16         So this is what was produced to us as part of the
17 PIQ.  It turns out the same doctor that -- this is an
18 individual where -- that can't be a consulting expert anymore.
19 He's the guy that they're relying on for their PIQ.
20         The same doctor, Dr. Graziano, on August 28th of 2000
21 -- I'm sorry, that's the wrong one -- on December 19 of 1999, a
22 few months before, saw exactly the same individual's x-ray, an
23 earlier x-ray dated November 16 of 1999 could just the prior
24 year, a few months before, and this is a
25 79-year-old individual -- he is seen by the same doctor who

1  firm.  Not what the doctor said as custodians or people under
2  the control or agents of the individual claimants.
3        We're entitled to know, Your Honor, the full extent
4  of what the record is with respect to the compliance for two
5  purposes.  One, the Court is going to be required to ask to
6  determine what inferences should be drawn from the failure of
7  the claimants to come forward and satisfy their obligation.
8  The other side is going to say, oh, gee, Judge, this process
9  was no good, we always told you it was no good, just stick with
10 the settlements that they did while they were out in the tort
11 system, that everybody recognizes has got a lot of problems.
12 Forget about all this stuff, forget about learning what the
13 real deal is.  The fact of the matter is that they have made a
14 self fulfilling prophesy, the difficulty of this process
15 because we now know what their approach has been in purporting
16 complying with the Court's order.
17       But there's another separate purpose of why this
18 information's key.  The experts need it.  The experts need to
19 know, is it really true that there isn't anything else out
20 there.  Did anyone look for it?  The experts are going to be
21 taking a look at all of the data that's being provided in this
22 case and the experts are going to be drawing inferences from
23 the data.
24       So what is the data? We know some of what the data
25 is, but we don't have sufficient -- we don't have all of the

1  facts that are required and reasonably should be required in
2  order to have the expert be fully informed about what actually
3  has been searched for.
4          Are we entitled to these interrogatories?  I believe
5  we're clearly entitled to these interrogatories.  These
6  interrogatories go right to the question of the basis for the
7  assertion of privilege.  They go right to the question of
8  whether there's been compliance with the Court's order, and
9  they go through the details, and I would urge the Court to
10 consider the following.  We're going to hear, oh my goodness,
11 if we have to go back and actually provide this kind of
12 information, what a burden.
13         With respect to most of these questions, there's not
14 going to be a burden because they don't have the information.
15 They're going to say they don't have it or they're going to say
16 they didn't do it.  With respect to the ones that actually have
17 to go back and do, in a sense, the logging, or providing the
18 information on which documents privileged, et cetera, et
19 cetera, I'll take the worst case that I heard.
20         Mr. Esserman represented that with respect to his two
21 firms, there were 2,000 such documents that had been withheld.
22 Of course, they've never been identified, but 2,000.
23 Two-thousand documents.  Well, in 30 days, he keeps saying 30
24 days divided by 30, so they'd have to do 70 documents a day.
25 That's going to be a terrible burden to record the information

1          The Court specifically preserved the privilege, that
2   was what the order said and we've recited that previously to
3   the Court, and provided for protection.  So for purposes of
4   that case and that case only, documents that were recognized to
5   be privileged and work product would be very sensitive
6   documents going to the financial planning of the company who
7   was engaged in, those documents maintained their status, but
8   were made available for purposes of litigation that case.
9          We have a very, very similar situation here.  We have
10  a situation where we're trying to find the evidence of the
11  shopping.  We are now conducting discovery to determine what
12  has been done to produce the evidence of the shopping.  That's
13  all that we -- if we eliminate that one, all that we're going
14  to learn -- it's not insignificant -- is what has been done or
15  has not been done to assert privilege or to conduct a review.
16  But they will still have succeeded unless we can ask that
17  question, they'll still have succeeded with insulating from
18  review everything that they now have acknowledge they didn't
19  look at.  That is, it will still be them who is in the position
20  to exercise say so over what's going on here.  They've
21  succeeded.  They've won.  They've pushed us all the way to the
22  end, our expert reports are due in days as it stands now, and
23  we still don't know the full extent of the shopping.
24         All we have now are two firms that have come forward
25  and actually -- and they haven't even certified that that's it