## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br>W.R. GRACE & CO., *et al.*,<br>Debtors. | ) Chapter 11<br>)<br>)<br>) Case No. 01-1139 (JKF)<br>) Jointly Administered<br>)<br>) **Objection Deadline: June 14, 2007 @ 4:00 p.m.**<br>) **Hearing Date: June 21, 2007 @ 8:30 a.m. in Pittsburgh, PA**<br>) **Related Docket Nos.: 15703, 15705, 15707, 15709, 15711,**<br>) **15713, 15715, 15717, 15719, 15721, 15723, 15730, 15732,**<br>) **15734, 15735, 15738, 15740, 15741, 15744, 15746, & 15748** |

### MOTION OF OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS AND DAVID T. AUSTERN, LEGAL REPRESENTATIVE FOR FUTURE ASBESTOS PERSONAL INJURY CLAIMANTS, FOR PROTECTIVE ORDER

The Official Committee of Asbestos Personal Injury Claimants (the "ACC") and

David T. Austern, David T. Austern, the Court-appointed legal representative for future

asbestos personal injury claimants (the "Future Claimants' Representative" or "FCR"),

(collectively, with the ACC, the "Movants"), by and through their undersigned counsel,

hereby move (the "Motion") this Court for the entry of a protective order quashing 21

notices of deposition issued by Debtor W.R. Grace & Co. to counsel for asbestos

claimants and further ordering that such depositions not be had.

On May 18, 2007, the Debtors filed notices of deposition directed to 21 law firms

representing individual asbestos claimants.[1]  These notices purport to require the law

firms to designate witnesses on the subject of "activities undertaken" by the firms in

responding to the Personal Injury Questionnaire for tens of thousands of their clients.

This latest discovery scheme of the Debtors—representing several additional months of

depositions—violates the Federal Rules of Civil Procedure, ignores this Court's previous

---

[1] The Notices of Deposition are attached as Exhibit 1.

orders, serves no proper purpose connected with the estimation of W.R. Grace's asbestos liability, and wastes the estate's money. It is designed, instead, to harass the asbestos claimants' lawyers, burden the Official Committee of Asbestos Personal Injury Claimants ("ACC") and the Future Claimants' Representative ("FCR") with duplicative and needless depositions, and postpone the conclusion of this bankruptcy proceeding. Pursuant to Rules 1, 26(c) and 30(a)(2)(A) of the Federal Rules of Civil Procedure, the ACC and FCR hereby request that the Court preclude the Debtors from conducting this discovery.

Rule 1 of the Federal Rules of Civil Procedure requires the rules to be applied to secure the "just, speedy, and inexpensive determination of every action." Permitting these depositions to go forward would result in discovery that is unjust, interminable, and costly. The Court should stop them.

## I. THESE 21 NOTICES FAR EXCEED THE NUMBER OF DEPOSITIONS PERMITTED UNDER THE FEDERAL RULES.

### A. The Debtors are Limited to 10 Depositions Without a Written Stipulation or an Order from the Court.

Federal Rule of Civil Procedure 30 limits the number of depositions available to the Debtors to 10:

> A party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2) . . . if, without written the stipulation of the parties,
>
> (A) a proposed deposition would result in more than ten depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by third-party defendants.

Fed. R. Civ. P. 30(a)(2)(A). When parties send out deposition notices in violation of this rule, the Court may prohibit the depositions. *See, e.g.*, Harry A. v. Duncan, 223 F.R.D.

536, 538-539 (D. Mont. 2004) (quashing 85 deposition notices issued without leave of court to exceed Rule 30 limits). Here, Debtors have already taken 13 depositions in this estimation proceeding, primarily of doctors and B-readers, three in excess of the limits. Thus, under the rule, the Debtors have already used up their depositions. Even setting aside those already taken, this latest batch of notices is more than double the total number allowed under the Rule. The Debtors have not sought this Court's leave to take these depositions and there is no stipulation to exceed the limits. The deposition notices, therefore, are invalid under Rule 30.

B.    The Debtors Must Make a Particularized Showing of Why Depositions in Excess of Rule 30 Limits are Necessary.

A party who wants to exceed the numerical limits imposed by Rule 30 must move the Court to do so. That party must also make a particularized showing why the depositions are necessary. Archer Daniels Midland Co. v. Aon Risk Servs., Inc., 187 F.R.D. 578, 586 (D. Minn. 1999) (party seeking leave to take more depositions must make a "particularized showing of why the discovery is necessary"); General Elec. Co. v. Indemnity Ins. Co. of N. Am., 2006 WL 1525970 (D. Conn. May 25, 2006) at *2 (same). *See also* Barrow v. Greenville Indep. Sch. Dist., 202 F.R.D. 480, 484 (N.D. Tex. 2001) (a party must explain in more than "general and conclusory terms" the necessity of each deposition in excess of the limit). Here, if the Debtors truly want to undertake a deposition program of this magnitude, they must make a showing of particularized need for each such deposition in a motion to this Court. They have failed to do any such thing.

## II.    THE COURT HAS ALREADY BARRED WHOLESALE DISCOVERY OF CLAIMANTS' ATTORNEYS.

In addition to violating the Federal Rules, this latest discovery foray attempts to repeat a scheme that this Court has already considered and barred.  In September 2005, citing the ruling made that year by Judge Janis Jack in the silica litigation, Debtors sought permission to serve a questionnaire on the claimants' attorneys.  Specifically, the Debtors sought to obtain

> information relating to direct or indirect financial relationships between the lawyers, screening companies, doctors or other law firms.

September 9, 2005 Debtors' Emergency Motion for Leave to Take Discovery of Claimants' Attorneys at 16 [Docket # 9382].  In that motion, and at the October 24, 2005 hearing, the Debtors speculated about relationships between law firms and doctors that, in their view, impugned the validity of the asbestos claimants' claims.

The Court denied the Debtors permission to take such discovery from the claimants' attorneys on the grounds that it implicated privilege issues and that a massive search for unknown and unspecified improprieties was irrelevant to the estimation proceeding.

> I'm not permitting the questionnaire. . . . There may be attorney-client privilege.  There may be work product. There could be all sorts of problems. . . .  If you've got need for specific discovery, focused on a specific area, you can take it and we'll deal with it piecemeal.  But overall, I am not going to permit these broad-based questions.  I didn't permit them with the individuals.  I'm not going to permit them with the lawyers. . . .  So tailor your questions if you have some need to this specific whatever it is that you're looking for so that when I say, what's the relevance, you can tell me how it fits to a particular strategy, theory, piece of evidence, whatever in the estimation hearing, because this doesn't.  This is not enhancing that process.

October 24, 2005 Transcript of Omnibus Hearing before Hon. J. Fitzgerald at 81:18 -

82:19 [excerpt attached as Exhibit 2]. *See also* December 16, 2005 Order Denying

Debtors' Emergency Motion for Leave to Take Discovery of Claimants' Attorneys at 2

[attached as Exhibit 3].

The current deposition program repeats the themes of the prohibited

questionnaires, this time dressed up as inquiries about discovery. The alleged purpose of

this renewed discovery, explained counsel for Debtors at the May 8, 2007 hearing, is to

determine

> whether they [the claimants' law firms] made contact with
> other counsel for other firms, whether they obtained
> documents with the possession, custody and control of the
> other firm. Did they go to the doctors, did they or did they
> not?

May 8, 2007 Transcript of Hearing before Hon. J. Fitzgerald at 185:13-16 [excerpt

attached at Exhibit 4].[2] Again, the Debtors are launching massive, indiscriminate

discovery regarding the relationship among law firms and doctors in an effort that will

result in nothing relevant to an estimate of Grace's aggregate asbestos liability. For the

same reasons the Court disapproved such discovery in 2005—the privileges implicated,

the considerable burden, and the lack of relevance to the estimation proceeding—the

Court should disallow this discovery again.

III.    **THE BURDEN OF DEPOSING OVER TWENTY LAW FIRMS ABOUT
        TENS OF THOUSANDS OF INDIVIDUAL CLAIMANTS OUTWEIGHS
        ANY CONCEIVABLE USEFULNESS OF THIS DISCOVERY.**

Even setting aside the procedural flaws and ignoring the previous rulings of the

Court, the proposed deposition program should be reined in on the independent grounds

---

[2] The notices are in substance the same as the proposed "Interrogatory No. 6" requested
by the Debtors at the May 8, 2007 hearing.

of burden and relevancy.  Under Federal Rule of Civil Procedure 26, this Court may limit

discovery if

> the burden or expense of the proposed discovery outweighs
> its likely benefit, taking into account the needs of the case,
> the amount in controversy, the parties' resources, the
> importance of the issues at stake in the litigation, and the
> importance of the proposed discovery in resolving the
> issues.

Fed. R. Civ. P. 26(b)(2)(C).  Here, the proposed depositions would impose significant

burdens.  The benefit of this discovery to the estimation case is nil.

A.     The Depositions Would Impose a Significant Burden on the ACC, the
       FCR and the Estate.

The burden of the proposed depositions is enormous, in terms of both cost and

delay.  Each of the 21 proposed depositions would need to be attended by counsel for the

ACC, the FCR and likely by other parties in this proceeding.  The depositions would be

scattered across the nation.  Apart from the burdens imposed on the claimants' law firms,

the estate could easily pay $1 million in fees and costs for this unnecessary exercise.

Additionally, the depositions would take months, even at the unlikely rate of several per

week.  The estimation proceeding would inevitably be delayed again, resulting in further,

escalating expenses.

B.     The Depositions Will Not Advance the Estimation Proceeding

The deposition notices seek testimony about "activities undertaken" by the

claimants' lawyers in the course of responding to the Personal Injury Questionnaire.

Such testimony is neither relevant in the estimation proceeding nor likely to be

admissible.

1.    The Depositions Do Not Seek Relevant Information

The activities the claimants' lawyers undertook to complete thousands of individual questionnaires are simply not relevant. The questionnaire responses themselves already contain whatever factual information the claimants were able to provide about their claims. How the information for each of thousands of questionnaires came to be inscribed on, or attached to, the questionnaire is not important to estimating asbestos liability.

The Debtors have suggested that this discovery is somehow necessary so that the claimants are held "accountable." *E.g.*, May 8, 2007 Transcript of Hearing before Hon. J. Fitzgerald at 176:7-10, 177:8-12 [excerpt attached at Exhibit 4]. This argument ignores that the Debtor-authored questionnaire form already contains an attestation section that the Court and the parties spent considerable time debating. Moreover, the questionnaires are complete. Over 100,000 have been returned, and preliminary analysis suggests that they confirm, rather than undercut, significant asbestos liability estimates. The Debtors' zeal to discover some error on the part of the claimants is simply an effort to undercut on procedural grounds results that the Debtors now find unsatisfactory. It is neither fair nor productive for Debtors to concoct retroactive procedural requirements for the claimants, or troll endlessly for alleged failings on the part of claimants' attorneys. The Debtors insisted on this questionnaire process. They should not now be permitted to spend months constructing arguments to quibble with the results.

Alternatively, the Debtors have suggested that they need this information for their experts. "So, our experts need to know what it is they're actually being provided by way of data in order to be able to be confident of what it is that they're analyzing and receiving." May 8, 2007 Transcript of Hearing before Hon. J. Fitzgerald at 202:14-17

[excerpt attached at Exhibit 4]. This rationale fails in several ways. <u>First</u>, the Debtors have already revealed that they are looking at the complete records of only about 2000 claimants. See March 26, 2007 Grace Response to ACC/FCR Motion to Compel Production of Complete Navigable Database at 9 [Docket # 14973]. They are seeking deposition discovery about many times that number of claimants. This makes clear the Debtors' intention once again to extend pre-trial deadlines and postpone the estimation hearing. <u>Second</u>, expert reports will be served June 11 and June 18, long before this discovery becomes available. Given this, Grace's experts obviously do not "need" this discovery to estimate its liability. <u>Third</u>, no information these depositions produce will change the facts already available in black and white on the questionnaire responses. <u>Finally</u>, B-reads and x-rays are already the subject of other, more detailed discovery orders addressing the Debtors' previously expressed concerns. Additional discovery is simply cumulative.

2.   <u>The Depositions Will Not Produce Admissible Evidence</u>

Aside from the lack of relevance, the depositions are unlikely to generate admissible evidence. As a threshold matter, the information sought by the proposed depositions is likely protected by the work product doctrine. The Third Circuit has recognized that the activities of counsel in responding to discovery are covered by the work product doctrine because revealing such activities would disclose counsel's mental impressions and legal opinions. <u>Sporck v. Peil</u>, 759 F.2d 312, 315 (3d Cir. 1985). *See also* <u>Schwarzkof Techs. Corp. v. Ingersoll Cutting Tool Co.</u>, 142 F.R.D. 420, 422-23 (D. Del. 1992). In the present proceeding, the "activities undertaken" by the claimants' lawyers in the course of responding to the personal injury questionnaire are similarly protected by the work product doctrine.

Work product may be discovered

> only upon a showing that the party seeking discovery has
> substantial need of the materials in the preparation of the
> party's case and that the party is unable without undue
> hardship to obtain the substantial equivalent of the
> materials by other means. In ordering discovery of such
> materials when the required showing has been made, the
> court shall protect against disclosure of the mental
> impressions, conclusions, opinions, or legal theories of an
> attorney or other representative of a party concerning the
> litigation.

Fed. R. Civ. P. 26(b)(3). Here the Debtors have made no such showing. Even if they were able to do so, the attorneys' testimony would be sharply limited by the Rule 26(b)(3) prohibition of discovery of the mental impressions, conclusions, and legal theories of the attorney.

## IV.    THE COURT'S LATEST EXTENSION OF THE SCHEDULE IS NOT A LICENSE TO HARASS THE CLAIMANTS.

Finally, this proposed discovery expedition is an improper attempt to repurpose an extension granted by this Court for an entirely different reason. Last February, the Debtors represented to this Court that they needed additional time to complete the analysis of discovery already taken – the over 100,000 Personal Injury Questionnaires completed and returned by Asbestos Personal Injury Claimants. *See* February 23, 2007 Grace Status Report at 7 [Docket # 14668] ("An effective analysis of the attachments requires additional time that simply is not accounted for in the current CMO"). This Court granted the Debtors this additional time over the objections of the ACC and FCR. Then, only weeks after receiving the extension, the Debtors admitted for the first time that they have decided to ignore the bulk of the questionnaire responses, instead analyzing only a tiny sample:

> For instance, as part of work undertaken at the direction of its estimation experts, Grace, using an outside vendor, has coded a sample of approximately 2,000 Questionnaire responses and their attachments. That work took 2 months and is still ongoing, as supplemental materials also must be coded. At that rate and given the approximately 100,000 Questionnaires that have been submitted to date, it would take an estimated 8 years to code all information contained in all attachments submitted in connection with the Claimants' Questionnaire responses . . . .

March 26, 2007 Grace Response to ACC/FCR Motion to Compel Production of Complete Navigable Database at 9 [Docket # 14973] [excerpt attached as Exhibit 5]. Thus, the enormous expense and two-year effort expended by the Claimants to respond to over 100,000 questionnaires was revealed to be nothing more than a scheme for harassment and delay.

This set of deposition notices is the latest chapter in this tale. After having represented to this Court that they needed the extension to analyze the questionnaires, the Debtors decided instead to use the time to burden the claimants' attorneys with even more unnecessary discovery. Ironically, this discovery is directed at thousands of claimants that the Debtors have admitted they will not use in their statistical sample. Specifically, they are seeking discovery about tens of thousands of questionnaire responses while only analyzing about 2000 questionnaires completely. The Court should call the Debtors to task for misrepresenting the purpose of the delay they sought and for using that delay to harass the claimants rather than complete the analysis of the discovery they already have.

## V.   CONCLUSION

For the foregoing reasons, the Court should grant the motion and enter a protective order quashing the 21 depositions.

Dated: June 4, 2007

Respectfully submitted,

CAMPBELL & LEVINE, LLC

Marla R. Eskin (#2989)
Mark T. Hurford (#3299)
800 King Street, Suite 300
Wilmington, DE 19801
Telephone:  (302) 426-1900

- and –

Elihu Inselbuch
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, NY 10152-3500
Telephone:  (212) 319-7125

Nathan D. Finch
Walter B. Slocombe
James P. Wehner
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, NW
Washington, DC 20005
Telephone:  (202) 862-5000

*Counsel for the Official Committee of
Asbestos Personal Injury Claimants*

PHILLIPS, GOLDMAN & SPENCE, P.A.

John C. Phillips, Jr. (#110)
1200 North Broom Street
Wilmington, DE 19806
Telephone: (302) 655-4200

- and -

Roger Frankel
Richard H. Wyron
Raymond G. Mullady, Jr.
Debra L. Felder
ORRICK, HERRINGTON & SUTCLIFFE
LLP 3050 K Street, NW
Washington, DC 20007
Telephone:  (202) 339-8400

John Ansbro
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, N.Y.  10103-0001
Telephone:  (212) 506-5000

*Counsel for David T. Austern,
Future Claimants' Representative*