# EXHIBIT 4

{D0015845:1 }

```
                  UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF DELAWARE

IN RE:                          .    Case No. 01-1139(JKF)
                                .
                                .
W. R. GRACE & CO.,              .
                                .    5414 USX Tower Building
                                .    Pittsburgh, PA  15222
                                .
           Debtor.              .
                                .    May 8, 2007
. . . . . . . . . . . . . ..         9:17 a.m.

                       TRANSCRIPT OF HEARING
                       ARGUMENT ON DISCOVERY
                BEFORE HONORABLE JUDITH K. FITZGERALD
                 UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:                 Kirkland & Ellis, LLP
                                By: DAVID. M. BERNICK, P.C., ESQ.
                                    AMANDA BASTA, ESQ.
                                    JANET BAER, ESQ.
                                Aon Center
                                200 East Randolph Drive
                                Chicago, IL  60601

For "The MMWR" firms:           Montgomery, McCracken, Walker
                                  & Rhoads, LLP
                                By:  LEONARD A. BUSBY, ESQ.
                                300 Delaware Avenue
                                Suite 750
                                Wilmington, DE  19801

For Asbestos Creditors':        Caplin & Drysdale, Chartered
                                By: NATHAN D. FINCH, ESQ.
                                    MARC HURFORD, ESQ.
                                One Thomas Circle, NW
                                Washington, DC  20005


Audio Operator:                 Janet Heller

  Proceedings recorded by electronic sound recording, transcript
               produced by transcription service
```

---

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@optonline.net

(609) 586-2311    Fax No. (609) 587-3599

1  ruled on that, it's completely in accord with Third Circuit
2  law, there's nothing that says that this interrogatory has got
3  to be limited to the B reads. This is related to the B reads
4  but it goes beyond the B reads, and it goes beyond the B reads
5  because the B read experience has now provided us with a very
6  clear indication of exactly what's taking place here.
7  　　　　So, there's all this profession of outrage over
8  simple requests for accountability of what these folks did in
9  responding to the questionnaire that has consumed the attention
10 of this Court for the better part of two years. The
11 questionnaire was the keystone of our discovery effort. We
12 believe that that has been thwarted. All we're asking for is
13 the information that will confirm the facts or deny the facts
14 that are out there with respect to responding to the
15 questionnaire.
16 　　　　I would say by way of responding editorially, in
17 order to get this done, because it seems relatively
18 straightforward, we would amend the lead in so that it's all
19 pegged to the questionnaire, and it simply says, in responding
20 to the W.R. Grace asbestos personal injury questionnaire, and
21 to the Courts orders regarding B reads: so, there's no or any
22 other materials, so people can't speculate there's some
23 nefarious purpose. That's very specific yet is confined to the
24 heavily negotiated ruled upon questionnaire and the heavily
25 negotiated ruled upon order. So, we would say in responding to

1  W.R. Grace personal injury questionnaire and to the orders
2  entered by this court with respect to B reads:  state, or
3  state:  and then A would remain as it is, B would remain as it
4  is, and we can add on a phrase that says, to the extent that
5  the doctor is claimed to be a consulting expert, identify the
6  doctor by letter, consistent with the Court's prior guidance to
7  us.
8         So, there's nothing -- we don't need a motion for
9  this, we're asking for the approval of this interrogatory so
10 that it gets done and it gets done right and we're asking for
11 accountability in discovery in this case.  It's just that
12 simple.
13        THE COURT:  Mr. Busby?
14        MR. BUSBY:  Thank you, Your Honor.  With all due
15 respect to Mr. Bernick, a motion is needed on this.  We had a
16 motion for a privilege log.  We had the Court recommend the
17 creation of interrogatories to cut through that and provide the
18 information that a privilege log would require.  This goes
19 completely into new territory.  It has nothing to do with a
20 privilege log, it has to do with revisiting the whole
21 questionnaire and years worth of discovery orders and years
22 worth of negotiation and balancing, and it just runs roughshod
23 over that with a sudden, last minute -- this was proposed
24 three days before the hearing last week, without any motion,
25 without any case law, without any justification to show that

1  MR. BERNICK: Because they've already -- they've as
2 much as told us that they didn't do it, that's why they've
3 complained about the burden of compiling the information about
4 privilege, is they say, oh, well, we didn't have to go ahead
5 and do that. These lawyers have gotten up there and said, all
6 that they can attest to is what their firm has within its
7 possession, custody or control.
8  So, we're not talking about somebody parsing through
9 every one of a thousand claims, we're talking about somebody
10 saying, oh, well, here's what we did, we had our own files and
11 we looked through our own files and did we make inquiry of
12 other counsel from other firms, maybe they did, maybe they
13 didn't. They can talk about whether they made contact with
14 other counsel for other firms, whether they obtained documents
15 within the possession, custody and control of the other firm.
16 Did they go to the doctors, did they or did they not?
17  Now, they've had a standard procedure, they didn't
18 sit there and handcraft this with respect to every single
19 claimant that they had.
20  THE COURT: Maybe they did it for one out of 1200 and
21 have to search through 1200 files to find the one.
22  MR. BERNICK: Well, then they can tell us that. The
23 whole purpose of the questionnaire, Your Honor, they had to
24 fill out this questionnaire for every single claimant --
25  THE COURT: And they have to fill out this

202

1 and asbestosis, and asbestotic conditions unless you get the
2 replication and the reason that you ask for three is that there
3 happens to be a standard called the ILO standard, it says
4 three. So, if our expert sees that there are three positive B
5 readings and they say oh, well, that's probably pretty
6 reliable, if by contrast from these doctors they see only one
7 positive B read, then they say, well, we don't know. If they
8 see positives and negatives and they're 1/0 and less, they're
9 going to say these are not reliable, they're not replicable,
10 and we're going to say they don't need a downward standard,
11 they would never make it in a federal proceeding. And we are
12 dealing with the liquidation of these claims in the context of
13 a federal proceeding.
14         So, our experts need to know what it is that they're
15 actually being provided by way of data in order to be able to
16 be confident of what it is that they're analyzing and
17 receiving. That's why we asked the questions, we didn't ask
18 the questions in order to kind of say, oh, let's spend more
19 time and money, we needed it because it goes to what this data
20 stands for and means.
21         Well, I'm now told that we're going to have to
22 reserve the interrogatories. What we will do is serve the
23 interrogatories, we'll probably notice up custodial depositions
24 for the top 23 firms which are the firms that we're really
25 talking about here, take very short depositions to find out