IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | [Related to Docket Nos. 15705, |
| | ) | 15713, 15740, 15721, 15730, 15744, |
| | ) | 15734, 15734, 15723] |
| | ) | |
| | ) | Hearing Date: June 21, 2007 |

## MOTION OF CERTAIN LAW FIRMS TO QUASH DEPOSITION NOTICES AND FOR A PROTECTIVE ORDER

Baron & Budd, P.C., Foster & Sear, L.L.P., The Law Offices of Peter G. Angelos, P.C., LeBlanc & Waddell, L.L.P., Provost Umphrey, L.L.P., Reaud Morgan & Quinn, L.L.P., Silber Pearlman, LLP, Weitz & Luxenberg, P.C., and Williams Bailey, L.L.P. (collectively, the "Certain Law Firms") hereby file this Motion to Quash Deposition Notices and for a Protective Order ("Deposition Notices") ("Motion") and would respectfully show as follows.

### I.  SUMMARY

The procedurally defective Deposition Notices are insufficient, under applicable rules of procedure, to compel the attendance of the Certain Law Firms at any deposition suggested therein. The Certain Law Firms have been served with the Deposition Notices in their individual capacities –the Deposition Notices *have not* been served on their clients as claimants in this case. The Certain Law Firms

-1-

are not parties to the estimation hearing, or to this case generally and are, inarguably, non-party witnesses. The attendance at deposition of such witnesses can only be compelled by subpoena, issued in the district where the deposition is to be taken, and no such subpoenas were sought or served by the Debtors.

Even if the fundamental procedural infirmities were rectified, this Court should issue a protective order preventing any depositions of the Certain Law Firms from taking place. This Court has long since ruled that general, broad and unfocused discovery *may not* be taken from counsel such as the Certain Law Firms, roundly rejecting a questionnaire proposed to be sent to each law firm. The depositions proposed by the Debtors will be no more targeted or narrowed than this prior proposed discovery, and will fail to meet the standards of specificity laid down by this Court. Furthermore, the depositions would be an exercise in sheer, unmitigated futility, as the likely topics of the questions posed are firmly within the realm of the work product privilege and not proper subject for depositions. Indeed, the very threshold command of the Debtors – to identify the attorney most knowledgeable concerning responses to the questionnaires – is expressly precluded under the work product privilege.

Discovery sought of counsel for one's adversary is heavily discouraged and viewed as a negative development in civil litigation. It is seldom allowed, and then only in carefully limited circumstances. No genuine or legitimate need has been demonstrated by the Debtors here, and the motives behind the Deposition Notices are questionable at best. The Debtors appear intent to use every means at their

disposal to harass and badger their adversaries. This attempt to gain discovery from counsel, set in flagrant disregard of the rules of procedure and the law of privilege, is but another skirmish in the Debtors' ongoing plan to wage war against the victims of its tortious acts. This Court should nip this blatant discovery abuse in the bud, and allow the estimation trial to proceed without further hindrance.

## II.     FACTUAL BACKGROUND

In September 2005, the Debtors sought to serve questionnaires upon law firms representing claimants with personal injury claims against the Debtor (this questionnaire was separate and distinct from the discovery served upon claimants themselves). This Court denied this motion by Order dated December 16, 2005. In a hearing upon the motion, the Court refused to permit such "broad-based questions" of claimant law firms. *See* Hr'g Tr. 81-82, October 24, 2005 (Docket No. 10949).

In May 2007, the Debtors again sought information from claimants' law firms, this time by way of broad interrogatories addressed to the law firms included in a set of interrogatories directed towards individual claimants and designed to elicit information about a specific, narrow subject matter (b-reads withheld by claimants on consulting expert privilege grounds).

On May 8, 2007, this Court refused to approve the interrogatory directed towards the firms. *See* Hr'g Tr. 196, May 8, 2007 (Docket No. 15786). Debtors responded by claiming that they might seek to depose law firms.

On May 18, 2007, Debtors served the Deposition Notices on some 27 law firms representing individual asbestos claimants, including the Certain Law Firms.[1]

No subpoenas were issued in connection with these depositions, and leave of this Court to seek depositions of the third-party law firms was neither sought nor obtained.

The Deposition Notices purport to require the law firms to designate witnesses on the subject of "activities undertaken" by the firms in responding to the personal injury questionnaires served upon their clients.

### III.  ARGUMENT

1. **The Deposition Notices are procedurally defective.  Non-parties must be served with a subpoena to compel their participation in a deposition and a notice will not suffice.**

The Deposition Notices are styled "Notice of Deposition," are addressed to the respective law firms and state that

> pursuant to Rule 30 of the Federal Rules of Civil Procedure, made applicable by Rule 7030 of the Federal Rules of Bankruptcy Procedure, the Debtors will take the deposition upon oral examination of the attorney at [Law Firm] most knowledgeable concerning the activities undertaken by the firm to respond to the W.R. Grace Asbestos Personal Injury Questionnaire.

Deposition Notice.  This peremptory command is procedurally inadequate and stands without legal force.  The mere issuance of a notice might be acceptable when

---

[1] Notice of Deposition of Baron & Budd, P.C. (docket No. 15705), Notice of Deposition of Foster & Sear, L.L.P. (Docket No. 15713), Notice of Deposition of The Law Offices of Peter G. Angelos, P.C. (Docket No. 15740), Notice of Deposition of LeBlanc & Waddell, L.L.P. (Docket No. 15721), Notice of Deposition of Provost Umphrey, L.L.P. (Docket No. 15730), Notice of Deposition of Reaud Morgan & Quinn (Docket No. 15744), Notice of

a deposition of a party to litigation is sought, but more is required when a party seeks to depose a non-party witness.  The claimants themselves are not parties to the estimation proceeding (in support of which this discovery is sought) and no claim objection has been filed by the Debtors that would initiate a contested matter to which the claimants could be parties.  Regardless, *counsel* for those claimants are clearly and without question non-party witnesses, and the Deposition Notices were served to counsel themselves, not upon the claimants whom they represent.

Under Federal Rule of Civil Procedure 30(a), a non-party witness cannot be compelled to attend a deposition unless a subpoena is issued and served under Federal Rule of Civil Procedure 45.  Unless a non-party deponent has consented to the taking of his deposition, "his attendance can be compelled only by a subpoena issued under Federal Rule of Civil Procedure 45." *Trans Pacific Ins. Co. v. Trans-Pacific Ins. Co.*, 136 F.R.D. 385, 392 (E.D. Pa. 1991); *See also Chem. Specialties Co. v. CIBA Pharm. Prods., Inc.*, 10 F.R.D. 500, 503 (D.N.J. 1950); *Farmers & Merchants State Bank v. Eaton (In re Eaton)*, 359 B.R. 661, 664 (Bankr. N.D. Ohio 2007).

According to Rule 45(a)(2) a subpoena for attendance at a deposition must be issued "from the court for the district where the deposition is to be taken, stating the method for recording the testimony." Fed. R. Civ. P. 45(a)(2)(B).  Proper service of a subpoena on a non-party requires personal delivery of the subpoena and "tendering of the witness fee and a reasonable mileage allowance." *Robertson v.*

---

Deposition of Silber Pearlman, LLP (Docket No. 15734), Notice of Deposition of Weitz & Luxenberg, P.C. (Docket No. 15734), Notice of Deposition of Williams Bailey, L.L.P. (Docket No. 15723).

*Dennis (In re Dennis)*, 330 F.3d 696, 704 (5th Cir. 2003). The subpoena may be served "at any place within the district of the court by which it is issued, or at any place [outside the district] that is within 100 miles of the place of the deposition...." Fed. R. Civ. P. 45(b)(2). Thus, in order to compel the attendance of a non-party witness at a deposition, the party seeking to take the deposition must comply with the deposition notice requirements under Rule 30 and the subpoena requirements under Rule 45.

The Debtors bypassed all of these requirements and, instead of complying with the regime imposed by the Federal Rules for the protection of non-party witnesses, high-handedly issued a defective "notice" purporting to require attendance at a deposition. The Deposition Notices lack legal effect, and depositions cannot be compelled in the absence of a subpoena. However, for avoidance of doubt, this Court may therefore quash the notices and enter an order declaring them to be what they are: null and void.

> 2. **This Court has already held that general, non-specific discovery of claimant's attorneys is impermissible. These depositions are no different.**

This is not the first time that the Debtors have sought to obtain discovery from counsel representing personal injury claimants in this case. In the fall of 2005, the Debtors sought approval of a questionnaire directed towards the claimants' law firms (including the Certain Law Firms) designed to elicit a broad range of information in support of their fanciful conspiracy theories. This Court fully considered this questionnaire and unequivocally rejected it, roundly

condemning the Debtors' attempts to propound broad discovery requests to the law firms. This Court stated, on the record:

> I'm not permitting the questionnaire … if you want evidence from a specific firm, then you do the formal discovery according to the Rules of Evidence … If you've got need for specific discovery, focused on a specific area, you can take it and we'll deal with it piecemeal. But overall, I am not going to permit these broad-based questions … So tailor your questions if you have some need to this specific whatever it is that you're looking for so that when I say, what's the relevance, you can tell me how it fits to a particular strategy, theory, piece of evidence, whatever in the estimation hearing, because this doesn't. This is not enhancing that process.

Hr'g Tr. 81-81, October 24, 2005 (Docket No. 10949). The depositions proposed by the Debtors are no more specific, tailored or targeted than the broad based questionnaires. Indeed, given free rein in a deposition, there is no telling over which topics the Debtors might range, what information they may seek. The request that the law firms provide a representative knowledgeable of the Firm's work in response to the personal injury questionnaire is no limitation and is not sufficiently specific to comply with the Court's prior instructions to seek only narrowly defined and relevant discovery. The simple fact of the matter is that the Debtors would be free to ask any questions they might wish to pose in any deposition, and it is impossible to predict, in advance, the scope of the examination. It is extremely probable that the questioner at these depositions will stray into most of the subject areas from the discarded and discredited attorney questionnaires that this Court said it would not allow. Just as this Court denied the Debtors' prior

attempts to obtain broad discovery from claimants' counsel, and for the same reasons, it should deny this latest attempt.

>   3.  **The proposed depositions are an exercise in futility: The inevitable subject matter of the depositions is clearly within the realm of privileged work product.**

One of the concerns that motivated the Court's earlier rejection of the Debtors' discovery of the law firms was the inherent intrusion into privileged matters. As noted by the Court "There may be attorney-client privilege. There may be work product. … There are all sorts of problems with this questionnaire. So, I'm not going to approve it." Hr'g Tr. 81, October 24, 2005. Although the precise scope of the depositions is impossible to pin down, it is inevitable that many of the questions will concern the manner in which the firms responded, on behalf of their clients, to the Debtors' questionnaire. The internal processes by which a law firm responds to discovery requests is a paradigmatic example of privileged work product to which the Debtors are not entitled.

The doctrine of the attorney work product privilege provides a safe haven within which an attorney may consider how best to advance a client's interests through the initiation and prosecution of litigation. *Hickman v. Taylor,* 329 U.S. 495 (1947), (the attorney work product privilege protects written statements and mental impressions contained in the mind of the attorney). All U.S. jurisdictions maintain some form of the attorney work product privilege. The Federal rules provide that:

> a party may obtain discovery of documents and tangible
> things otherwise discoverable under subdivision (b)(1) of

-8-

> this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) *only upon a showing that the party seeking discovery has substantial need* of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. *In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.*

FED. R. CIV. P. 26(b)(3) (emphasis added).

The rationale for the rule is clear: It enables an attorney to effectively represent his client by allowing him to prepare for the initiation and prosecution (or defense) of a case away from the prying eyes of his adversaries. As the Supreme Court has held:

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

*Hickman*, 329 U.S. at 510-11; *see also In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661-62 (3d. Cir. 2003). There can be fewer examples more clearly within the realm of attorney work product than the preparation of discovery responses, and the

Debtors may not depose an attorney on such matters without invading the area protected by that doctrine.

Indeed, the Deposition Notices intrude upon the work product doctrine from the very start. The Debtors' request that Certain Law Firms designate and provide for deposition the attorney "most knowledgeable concerning the activities undertaken by the firm to respond to the W.R. Grace Asbestos Personal Injury Questionnaire" is impermissible as the identity of such a person lies within the realm of protected attorney work product and is privileged. *Weiss v. Nat'l Westminster Bank, PLC*, No. 05-CV-4622 (CPS)(KAM), 2007 W.L. 1460933, at *33 (E.D.N.Y. May 14, 2007) (refusing to compel the answer to an interrogatory that sought "information regarding individuals who assisted plaintiffs' counsel with the preparation of their interrogatory responses, which is protected work product"); *see also United States v. Nat'l Steel Corp.*, 26 F.R.D. 599, 600 (S.D. Tex. 1960); *Hopkinson Theatre, Inc. v. RKO Radio Pictures, Inc.*, 18 F.R.D. 379, 383 (S.D.N.Y. 1956); *Maple Drive-In Theatre Corp. v. Radio-Keith-Orpheum Corp.*, 153 F. Supp. 240, 244 (S.D.N.Y. 1956). Thus the very threshold instruction of the Deposition Notices is contrary to the attorney work product privilege and subject to an insurmountable objection.

Given the fact that Grace wants to depose the attorney at each law firm most knowledgeable about what the law firm did in preparing responses to the questionnaires for its clients, it is expected that the deposition questions will inquire into that very subject matter, including, for example, what documents the

attorneys looked at and who the attorneys spoke to or contacted in completing the questionnaire. This type of examination of your opposing counsel is clearly an intrusion into the attorney's work product. Inquiry into an attorney's "pattern of investigation and exploration" is "a direct violation of the principles announced in *Hickman* [*v. Taylor*]." *Uinta Oil Refining Co. v. Continental Oil Co.,* 226 F. Supp. 495, 506 (D. Utah 1964). This is very different from asking for the names of persons with knowledge of relevant facts, an inquiry allowed under Rule 26. It is completely improper to ask an attorney to identify who he contacted or interviewed concerning the issues in a case or to inquire as to the efforts the attorney has made to locate evidence. *Commonwealth of Massachusetts v. First National Supermarkets, Inc.*, 112 F.R.D. 149, 152-53 (D. Mass. 1986) ("[There is a] distinction between asking the identity of persons with knowledge, which is clearly permissible, and asking the identity of persons contacted and/or interviewed …, which is not [and which] is protected against discovery from an adverse party."); *Besley-Welles Corp. v. Balax,* 43 F.R.D. 368, 371 (E.D. Wisc. 1968) (asking for a statement detailing the efforts made to locate witnesses "goes to the attorney's preparation of his case for trial and therefore comes under the rule of *Hickman v. Taylor*"). To make such inquiries "is to give [the opposing party] no more knowledge of substantive relevant facts, but rather to afford them the potential for significant insights into the [ ] lawyers' preparation of their case (and thus their mental processes)." *Board of Education v. Admiral Heating,* 104 F.R.D. 23, 32 (N.D. Ill. 1984)

By the Debtors' insistence upon an attorney with knowledge of the preparation of responses to the questionnaires, they candidly admit that they are seeking information concerning the internal processes of the law firm in its conduct of litigation. It is difficult to conceive of any question the Debtors might ask of such a person that would not be countered by an objection on the grounds of work product. Each and every action undertaken by an attorney in responding to discovery involves, at a basic and fundamental level, the mental processes and opinion of such attorney. This is, paradigmatically, the kind of information that receives the highest level of protection under work product doctrine. The Third Circuit has considered this issue and held that the process by which an attorney selects documents in preparation of pretrial discovery is afforded the highest level of protection under the work product doctrine. *Sporck v. Peil*, 759 F.2d 312, 315 (3rd Cir. 1985) ("We believe that the selection and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product."). The protected nature of the likely subject matter of the proposed depositions renders the entire process an exercise in sheer futility, because the vast bulk of questions will be answered by a legitimate, insuperable objection from deponent's counsel. This Court should nip such a fool's errand in the bud and enter a protective order in favor of Certain Law Firms.

    4.    **The seeking of discovery from counsel for one's adversary is heavily disfavored and should not be permitted here.**

Although the Federal Rules provide for, oftentimes, broad and liberal discovery, *Pacitti v. Macy's*, 193 F.3d 766, 777 (3rd Cir. 1999), the scope of

permissible discovery is not unlimited. *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3rd Cir. 1999) ("Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed."). And while it is true that the Federal Rules of Civil Procedure do not <u>expressly</u> prohibit taking discovery of opposing counsel, federal courts have evinced an unambiguous disfavor for the "taking of the deposition of a party's attorney," except in extremely limited circumstances. *See e.g.*, *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999), *cert. denied*, 529 U.S. 1129. The Eighth Circuit has even called the practice a "negative development in the area of litigation" and pointed out that "[c]ounsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent". *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987).

The inherent dangers in allowing the depositions of counsel are well-recognized by the courts. It has been noted that such a deposition "provides a unique opportunity for harassment; it disrupts the opposing attorney's preparation for trial, and could ultimately lead to disqualification of opposing counsel if the attorney is called as a trial witness." *Prevue Pet Prods., Inc. v. Avian Adventures, Inc.*, 200 F.R.D. 413, 418 (N.D. Ill. 2001) (quoting *Marco Island Partners v. Oak Dev. Corp.*, 117 F.R.D. 418, 420 (N.D. Ill. 1987)). In addition, courts have expressed the concern that depositions of opposing counsel could lead to collateral litigation over peripheral issues, such as privilege, immunity, and harassment claims, and place additional burdens on both the court and the parties. *Kaiser v. Mutual Life*

*Ins. Co. of New York*, 161 F.R.D. 378, 381 (S.D. Ind. 1994). Such a concern is well placed here, because there is no question that Debtor will be back to this Court moving to compel answers to depositions questions when met with the privilege and work product objections that are certain to be made in every one of the attorney's depositions.

In this District, whether a party is permitted to take discovery of opposing counsel is determined by examining whether "(1) no other means exist to obtain the information; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Smith v. United States*, 193 F.R.D. 201, 215 (D. Del. 2000) (Thynge J.) (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987)); *see also, Allergan, Inc. v. Pharmacia Corp.*, No. Civ.A.01-141-SLR, 2002 WL 1268047, at *1 (D. Del. May 17, 2002). The Debtors have not even attempted to satisfy these criteria in this case.

Without knowing precisely what questions the Debtors seek to ask at the proposed depositions, it is difficult to opine over whether any other means exist to obtain such information. In any event, the information sought is inevitably firmly protected under the work product privilege, its relevance is likely to be dubious at best, and the information is hardly crucial to the preparation of the Debtor's case. It is, rather, a sideshow with no more than a tenuous connection to the value of the Debtors' asbestos liability and a transparent attempt to further prolong the delay of the estimation trial the Debtors seem to crave. This Court should deny the Debtors

the opportunity to pursue discovery of adverse counsel in such a blatant and unwarranted manner.

## IV.  JOINDER

In the event other law firms or parties to the bankruptcy case such as the Asbestos Claimants' Committee file motions to quash the Deposition Notices, or otherwise seek protection from the depositions sought thereby, the Certain Law Firms join in those motions and adopt the arguments set forth therein to the extent applicable to and consistent with this Motion.

## IV.  CONCLUSION AND PRAYER FOR RELIEF

The Deposition Notices evidence the Debtors' flagrant disregard of proper procedure and this Court's prior rulings on discovery from claimants' law firms and stand as nothing but more gamesmanship.  A party is not entitled to depose its opposing counsel on the subject of how such counsel prepared its case.  That subject area is off limits under the protection of the work product doctrine, and the Debtors know it.  Accordingly, the Court should quash the deposition notices before this pointless exercise gets any further out of hand.

WHEREFORE, the Certain Law Firms pray that the Court quash the Deposition Notices served by the Debtors upon the Certain Law Firms, enter a protective order precluding depositions from being taken of the Certain Law Firms and for such other and further relief to which the Certain Law Firms may be entitled.

Dated: June 5, 2007                        /s/ Daniel K. Hogan
Daniel K. Hogan (ID no. 2814)
**THE HOGAN FIRM**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone:  (302) 656-7540
Facsimile:   (302) 656-7599
E-mail:  dkhogan@dkhogan.com

Sander L. Esserman
Van J. Hooker
David A. Klingler
David J. Parsons
**STUTZMAN, BROMBERG, ESSERMAN & PLIFKA,**
**A Professional Corporation**
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 969-4900
Facsimile:   (214) 969-4999

**COUNSEL FOR**
**THE CERTAIN LAW FIRMS**