**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF**
**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ**
<u>**FOR THE TWENTY-THIRD INTERIM PERIOD**</u>

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Interim Fee Application of Baker Donelson Bearman Caldwell & Berkowitz, P. C. for the Twenty-Third Interim Period</u> (the "Application").

**BACKGROUND**

1. Baker Donelson Bearman Caldwell & Berkowitz, P. C. ("Baker Donelson") was retained as advisor for legislative affairs to the Debtors. In the Application, Baker seeks approval of fees totaling $90,000.00 and costs totaling $15,629.70 for its services from October 1, 2006, through December 31, 2006.

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2006, and the United States Trustee Guidelines for Reviewing

Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served on Baker Donelson an initial report based on our review, and received a response from Baker Donelson, portions of which response are quoted herein.

### DISCUSSION

3.	In our initial report, we noted that the firm states that by the Court order dated June 16, 2004, the Debtors were authorized to retain Baker Donelson to advise the Debtors, their counsel, and their Board of Directors with respect to legislative affairs and current pending and future legislative affairs ("Legislative Affairs Services") and such other related services as the Debtors may deem necessary or desirable, effective as of April, 2001 (the "Retention Order"). The Retention Order authorizes Debtors to compensate Baker Donelson on a flat rate in the amount of $17,000.00 per month for services rendered, plus reimbursement of actual and necessary expenses incurred by Baker Donelson. The Debtors, on or about January, 24, 2005 filed a motion seeking authorization to modify and expand the scope of services provided by Baker Donelson. Specifically, the motion sought the approval of retention of Baker Donelson to assist Debtors in connection with the Debtors' business operations in China and with respect to the Chinese governmental authorities at the national, provincial and local levels ("China Assistance Services"). The expanded scope of work of Baker Donelson was approved by order entered on March 15, 2005, effective January 1, 2005 ("Order Modifying and Expanding Services"). Compensation of Baker Donelson for the China Assistance Services was approved on a flat rate in the amount of $35,000.00 per month for services

Case 01-01139-AMC    Doc 16002    Filed 06/08/07    Page 3 of 19

rendered, plus reimbursement of actual and necessary expenses incurred by Baker Donelson. The Order Modifying and Expanding Services also increased the flat rate for compensation for Legislative Affairs Services to an amount of $20,000.00 per month effective March, 2005 for services rendered plus reimbursement of actual and necessary expenses incurred by Baker Donelson. Pursuant to Order entered on February 23, 2006, *nunc pro tunc* to October 1, 2005, the China Assistance Services continue. Under this Order, the Debtor agreed as compensation to Baker Donelson to pay a fixed basic retainer fee of $10,000.00 each month, plus reimbursement of expenses with the provision for compensation to Baker Donelson in an additional amount not to exceed $10,000.00 each month (which would be in addition to the basic retention fee specified above) for additional services the Debtor may request in China.

4.      We noted that Baker Donelson lists 139.5 hours for services rendered from October 1, 2006, through December 30, 2006. This computes to an effective hourly rate of $645.16.

5.      We noted that according to the expense detail for Joan McEntee, W.R. Grace was to be billed 34% of her total expenses for October 2006, 10% of her total expenses for November 2006, and 34% of her total expenses for December 2006. We asked the firm to explain how this percentage breakout was derived. Further, it appears that W.R. Grace was charged 100% of her expenses in December except for airfare, for which it was charged 44% of the fare. We asked the firm to explain these discrepancies. Baker Donelson response is provided as Response Exhibit 1. We appreciate the response.

6.      We noted four airfare entries that appear excessive. The entries are provided below.

Oct. 27 - $8,555.50 (W.R. Grace billed 10%)
Nov. 5 - $5,963.90 (W.R. Grace billed 10%)
Dec. 3 - $6,005.00 (W.R. Grace billed 44%)

Dec. 9 - $8,874.50 (W.R. Grace billed 44%)

Paragraph II.E.1.of the Guidelines states, ". . .[f]actors relevant to a determination that the expense is proper include the following: 1. Whether the expense is reasonable and economical. For example, first class and other luxurious travel mode or accommodations will normally be objectionable." This issue has been raised in prior Baker applications, with recommended reductions for first and/or business class airfares. We asked Baker Donelson to respond with flight information for all fares, showing at what class the fares were booked as well as departure and destination points. The firm's response is provided as Response Exhibit 2. We appreciate the response. Dealing with this same issue in our final report for Baker Donelson in the Twentieth Interim Period, we stated,"...Consistent with prior reports, we recommend a reduction in this airfare expense equal to the difference between the actual cost of the airfare ($14,128.19) and the upper range of an economy fare ($6,500.00) gathered from our research, with the percentage of that fare (66%) charged to W.R. Grace then applied." While we are cognizant of the difficulties involved in such long flights, this Court has held that the same general standards apply to foreign travel as to domestic travel. We found comparable upper-range economy fares for this interim period as in the Twentieth Interim Period. By applying the $6,500.00 next-day economy-fare benchmark to the airfares cited above, we would make the following recommendations. For the October 27, 2006 airfare, we recommend a reduction of $255.05 ($8,555.50 minus $6,500.00 times 10%). For the December 9, 2006 airfare, we recommend a reduction of $1,044.78 ($8,874.50 minus $6,500.00 times 44%). Thus for the cited airfares, we recommend a total reduction of $1,299.83.

      7.      We noted a number of lodging expenses that appear to be excessive. The entries are provided below.

Lodging

| | | | | | |
|---|---|---|---|---|---|
| Sept. 14[1] | $473.09 | Oct. 28[2] | $608.40 | Dec. 4[3] | $390.26 |
| Sept. 15 | $473.09 | Oct. 29 | $608.50 | Dec. 5 | $390.26 |
| Sept. 16 | $473.09 | Oct. 30 | $608.50 | Dec. 6 | $390.26 |
| Sept. 17 | $473.09 | Oct. 31 | $608.50 | Dec. 7 | $450.79 |
| Sept. 18 | $473.09 | Nov. 1 | $563.22 | Dec. 8 | $450.79 |
| | | Nov. 2 | $563.22 | | |
| | | Nov. 3 | $563.22 | | |
| | | Nov. 4 | $563.22 | | |

We recommend a reasonable ceiling of $250.00 per day plus applicable taxes for lodging ($350.00 for New York and selected other cities). We asked Baker Donelson to identify all hotels and cities of stay for the cited entries. We also asked the firm to forward all applicable tax information for each cited lodging expense. Baker Donelson's response is provided as Response Exhibit 3. We appreciate the response, and, again, we are sensitive to the arguments made for special circumstances in China resulting in these higher costs. However, in our role as auditor, we can only recommend guidelines that appear reasonable in light of Court rulings, United States Trustee' recommendations and our own research. As such, we suggest that the $350.00 per-day lodging ceiling, plus applicable taxes, should apply to the cited entries. Our research indicates single room-rates ranging from $212.00 (Dec.-Feb.) to $357.00 (June) per night for the Grand Hyatt and the St. Regis, both five-star hotels in Beijing. We obtained similar rates for Grand Hyatt and the Inter Continental Pudong, both five-star hotels in Shanghai. Using the $350.00 figure, we offer the following recommendations for reduction. For the five lodging charges totaling $473.09 each, we calculate a pre-tax (15%) lodging

---

[1] W.R. Grace was billed 34% of each lodging expense September 14 through September 18, 2006.

[2] W.R. Grace was billed 10% of each lodging expense October 28 through November 4, 2006.

[3] The December expense detail states that W.R. Grace was to be billed 34% of each lodging expense December 3 through December 9; however, it appears from the December totals that W.R. Grace was billed 100% of lodging totals.

**FEE AUDITOR'S FINAL REPORT** - Page 5
wrg FR Baker 23int 10-12.06.wpd

rate of $401.19, resulting in a difference of $51.19 each ($401.19 minus $350.00) from our recommended allowance. The total difference for five nights is $255.95. We thus recommend a reduction of $87.02 ($255.95 times 34%) for these five September lodging charges. For the four lodging charges billed at $608.50 each, we calculate a pre-tax (15%) lodging rate of $517.22, resulting in a difference of $167.22 each ($517.22 minus $350.00) from our recommended allowance. The total difference for four nights is $668.88. We thus recommend a reduction of $66.89 ($668.88 times 10%) for these four October charges. For the four lodging charges billed at $563.22 each, we calculate a pre-tax (15%) lodging rate of $478.74, resulting in a difference of $128.74 each ($478.74 minus $350.00) from our recommended allowance. The total difference for four nights is $514.96. We thus recommend a reduction of $51.50 ($514.96 times 10%) for these November charges. For the two lodging charges billed at $450.79 each, we calculate a pre-tax (15%) lodging rate of $383.17, resulting in a difference of $33.17 each ($383.17 minus $350.00) from our recommended allowance. The total difference for two nights is $66.34. We thus recommend a reduction of $66.34 ($66.34 times 100%) for these December charges. We recommend a total reduction of $271.75 for the cited lodging expenses.

8. We noted the following meal charges which require additional information.

| Breakfast | | Lunch | | Dinner | |
|---|---|---|---|---|---|
| Sept. 15[4] | $52.11 | Sept. 14 | $62.30 | Sept. 13 | $242.40 |
| Sept. 16 | $33.48 | Sept. 23 | $42.56 | Sept. 24 | $79.77 |
| Sept. 17 | $37.84 | Sept. 25 | $56.77 | Oct. 30 | $333.69 |
| Sept. 18 | $37.84 | Nov. 2 | $46.58 | Dec. 4 | $89.39 |
| Sept. 19 | $37.84 | Dec. 4 | $40.03 | Dec. 5 | $546.75 |
| Nov. 2[5] | $63.75 | Dec. 5 | $40.03 | | |

---

[4] W.R. Grace was billed 34% of each meal expense September 13 through September 25, 2006.

[5] W.R. Grace was billed 10% of each meal expense between October 27 and November 5, 2006.

**FEE AUDITOR'S FINAL REPORT** - Page 6
wrg FR Baker 23int 10-12.06.wpd

| | |
|---|---|
| Nov. 3 | $37.84 |
| Nov. 4 | $139.89 |
| Nov. 5 | $37.84 |
| Dec. 5[6] | $37.84 |
| Dec. 6 | $37.84 |
| Dec. 7 | $37.84 |

We recommend reasonable ceilings of $15 per person for breakfast, $25 per person for lunch and $50 per person for dinner. We asked Baker Donelson to provide more information for each of the cited entries. Baker Donelson's response is provided as Response Exhibit 4. We appreciate the response. We generally concur that the listed meal expenses fall within the guidelines, in that Ms. McEntee did not bill for both breakfast and lunch on the same day except on November 2, when she was accompanied by a client at lunch. For the November 4 breakfast meeting (seven diners totaling $139.89), we calculate an overage, from our guidelines, of $34.89 ($139.89 minus $105.00). For the December 5 dinner meeting (10 diners totaling $546.75), we calculate an overage of $46.75 ($546.75 minus $500.00). Thus we recommend a total reduction of $81.64 for the cited meal expenses.

        9.      We noted four entertainment expenses that may not be reimbursable. The entries are provided below.

| | | |
|---|---|---|
| Entertainment | Sept. 23 | $209.50 |
| Entertainment | Sept. 24 | $201.13 |
| Entertainment | Oct. 29 | $ 44.30 |
| Entertainment | Dec. 6 | $ 69.97 |

The W.R. Grace percentage was 34% for the first two entries, 10% for the third, and apparently

---

[6]The December expense detail states that W.R. Grace was to be billed 34% of each meal expense December 3 through December 9; however, it appears from the December totals that W.R. Grace was billed 100% of meal totals.

**FEE AUDITOR'S FINAL REPORT** - Page 7
wrg FR Baker 23int 10-12.06.wpd

100% of the fourth, totaling $227.64 charged to the estate. We asked Baker Donelson to explain why these expenses should be viewed as reimbursable. The firm's response is provided as Response Exhibit 5. We appreciate the response and offer no objection to these expenses.

10. We noted laundry charges of $63.90, with the W.R. Grace percentage totaling $21.73. The entries are provided below.

| | | |
|---|---|---|
| Laundry | Sept. 23 | $26.20 |
| Laundry | Oct. 29 | $37.70 |

The U.S. Trustee's office has consistently recommended disallowance of laundry charges. We asked Baker Donelson to explain why these expenses should be reimbursable. The firm's response is provided as Response Exhibit 6. We appreciate the response; however, we defer to the Trustee's position on the disallowance of laundry charges, either domestic or foreign, and thus recommend a reduction of $21.73 in expenses.

11. We noted miscellaneous expenses of $250.00, with the W.R. Grace percentage totaling $20.00 for the first entry and $50.00 for the second. The entries are provided below.

| | | |
|---|---|---|
| Miscellaneous | Oct. 31 | $200.00 (W.R. Grace billed 10%) |
| Miscellaneous | Dec. 5 | $ 50.00 (W.R. Grace billed 100%) |

We asked Baker Donelson to provide all relevant detail regarding this expense, explaining why it should be reimbursable. The firm's response is provided as Response Exhibit 7. We appreciate the response and offer no objection to these expenses.

## CONCLUSION

12. Thus we recommend approval of fees totaling $90,000.00 and costs totaling $13,954.75 ($15,629.70 minus $1,674.95) for Baker Donelson's services from October 1, 2006, through December 31, 2006.

**FEE AUDITOR'S FINAL REPORT** - Page 8
 wrg FR Baker 23int 10-12.06.wpd

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
      Warren H. Smith
      Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1275
Dallas, Texas 75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 8th day of June, 2007.

_____
      Warren H. Smith

## SERVICE LIST
<u>Notice Parties</u>

**The Applicant**
E. Franklin Childress
James Range
Baker, Donelson, Bearman, Caldwell & Berkowitz
165 Madison Avenue
Suite 200
Memphis, Tennessee 38103

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
399 Park Avenue, 36th Floor
New York, NY 10022

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**
Thomas M. Mayer, Esq.
Kramer Levin Naftalis & Frankel
919 Third Avenue
New York, NY 10022

Teresa K.D. Currier, Esq.
Buchanan Ingersoll
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
844 King Street, Suite 2311
Wilmington, DE 19801

Response Exhibit 1

1. In paragraph 5, the Fee Auditor seeks an explanation of the break down of percentages charged for expenses charged for selective trips to China on behalf of W.R. Grace ("Grace" or "W.R. Grace"). For the months of October and November, Ms. McEntee was able to split some of her travel, time, and expenses to and while in China among several clients. This is all prorated on amount of services rendered per client. This included time for meetings, meals, travel, within China, etc. She has tried diligently to partition these costs among clients who have been so informed. In contrast to the two previous trips, the December trip was exclusively at the behest of Grace. In fact, Grace was in dire straits due to China's abrupt limitation of a substance critical to Grace, the element, Rare Earth. In fact, because of Ms. McEntee's intervention, Grace was given substantial more Rare Earth, and indeed was introduced to a critical China entity that may resolve this issue for the future by additional cooperation and supplies. The Grace participants as well as the Chairman of Grace, acknowledged her crucial help in resolving this immediate issue by laying groundwork previously, and accomplishing this mission which saved the company large amounts of money by ability to meet performance.

Ms. McEntee can not allocate fees and expenses to others if in fact she does not perform such.

Response Exhibit 2

1. In paragraph 6, the Fee Auditor questions the amount charged for air fare to China and sights U. S. Trustee ("UST") guidelines, stating that First Class would normally be objectionable. Baker Donelson objects to any reduction for the air fare allocated for Ms. McEntee. As the Fee Auditor may be aware, the flights to China from the United States are in excess of eighteen (18) hours. To the extent possible, Ms. McEntee plans trips to divide charges for flight and other expenses among various clients in order to keep expenses at a minimum level. However, in order to be able to represent her clients upon arrival in China, Ms. McEntee flies First Class in order to sleep on the plane before she arrives to be prepared for work upon arrival. Ms. McEntee does not drink or participate in other such opportunities on the trip. Her selection of First Class is a necessity in order to be properly rested to represent her clients upon arrival in China. In December, Ms. McEntee had planned to travel at the request of two other companies in addition to Grace, and so booked the tickets as such. Immediately prior to departure, both of the CEO's had to pull out of the trip because of respective company business issues. As a result, both agreed that they would cover their "part" of the airfare, and in fact, she did some work for each during the plane trip with regard to strategic planning. Therefore, even though the December trip was totally for Grace alone in the end, the other companies split some of the air costs as their plans caused a great deal of trouble to rearrange, as well as needing her help on the plane itself. The amount of time spent on the plane focusing on Grace issues as well as trying to remain within UST guidelines, comes to 44%.

Below is a breakdown of air fares paid by Ms. McEntee for travel to China and the amounts for which Grace was charged:

Oct. 27 - $8,555.50 (W.R. Grace billed 10%) 8,555.50 *.10 = 855.55

Nov. 5 - $5,963.90 (W.R. Grace billed 10%) 5963.90 *.10 = 596.39

W.R. Grace was charged 1,451.94 for the airfare for the October/ November Trip.

Dec. 3 - $6,005.00 (W.R. Grace billed 44%) 6005.00 *.44= 2642.20

Dec. 9 - $8,874.50 (W.R. Grace billed 44%) 8874.50 * .44 = 3904.78

W.R. Grace was charged 6,546.98 for the airfare for the December trip.

| Month/ Dates of trip | Class | Departure/Destination Points |
|---|---|---|
| Oct 28- Nov. 5, 2006 | First | Washington, Beijing, Shanghai, Washington |
| Dec. 3 - Dec. 9, 2006 | First | Washington, Shanghai, Washington |

Response Exhibit 3

We have never received any comments regarding lodging costs; however, as in the past the hotels are the same ones she always stayed in- - in fact, these are the same as the Grace company officials stay in, recommended to her, and indeed, stayed in with her during the December trip as well as prior trips.

Hotels in Beijing and Shanghai are very expensive especially the Western hotels. Unlike in an expensive U.S. city such as New York where there are many good, English-speaking, safe hotels for Westerners, and often single women Western travelers, in China that is not the case; safety comes first, and having a business savvy, a safe hotel is critical.  Finally, as I am sure all would appreciate, in most cities - - whether the East or West, hotels seem to charge more during the more "popular" months– Sept, Oct, Nov, and sometimes even December are usually more costly than mid- August !! Ms. McEntee cannot control these costs, but usually stays where her clients stay – for late night consultations, arrangements and safety.  As the time difference is 12 hours, it is often necessary to be on a conference call with the client late in China and early in the US so traveling to a different hotel - - is not practical.

We will also provide the tax information along with each night's base charge, as it is very high in China, as it still is a "Market Socialistic" country, and the government charges high taxes, especially on Western goods.  We have listed the hotel names and tax information for each night below in their appropriate entries.

* Rates are subject to availability and will fluctuate accordingly.

Lodging

Sept. 14         $473.09 - St Regis Hotel in Beijing, China (15% tax charge)

Sept. 15        $473.09 - St Regis Hotel in Beijing, China (15% tax charge)

Sept. 16        $473.09 - St Regis Hotel in Beijing, China (15% tax charge)

Sept. 17        $473.09 -St Regis Hotel in Beijing, China (15% tax charge)

Sept. 18        $473.09 - St Regis Hotel in Beijing, China (15% tax charge)

Oct. 28         $608.40- The Portman Ritz - Carlton in Shanghai, China (15% tax charge)

Oct. 29         $608.50- The Portman Ritz - Carlton in Shanghai, China (15% tax charge)

Oct. 30         $608.50- The Portman Ritz - Carlton in Shanghai, China (15% tax charge)

Oct. 31         $608.50 - The Portman Ritz -Carlton in Shanghai, China (15% tax charge)

Nov. 1          $563.22 - St Regis Hotel in Beijing, China (15% tax charge)

Nov. 2          $563.22- St Regis Hotel in Beijing, China (15% tax charge)

Nov. 3          $563.22- St Regis Hotel in Beijing, China (15% tax charge)

Nov. 4          $563.22- St Regis Hotel in Beijing, China (15% tax charge)

Dec. 4          $390.26 - St Regis Hotel in Beijing, China (15% tax charge)

Dec. 5          $390.26 - St Regis Hotel in Beijing, China (15% tax charge)

Dec. 6          $390.26 - St Regis Hotel in Beijing, China (15% tax charge)

Dec. 7          $450.79 -The Portman Ritz - Carlton in Shanghai, China (15% tax charge)

Dec. 8          $450.79 -The Portman Ritz - Carlton in Shanghai, China (15% tax charge)

Response Exhibit 4

1. In paragraph 8, the Fee Auditor requests additional information concerning meal charges. We disagree with the proposed ceilings for breakfast, lunch and dinner for travel in China, particularly since on most meal opportunities; the same are business meetings which are conducted with clients.  In an attempt to respond to the Fee Auditor's previous objections, Ms. McEntee has attempted to follow the suggested food guidelines and as a result, combines her breakfast and lunch costs.  Because of the guidelines, she asks for a "to go" box at breakfast and takes a roll and cheese for lunch in order to not exceed the suggested guidelines.  Grace officers can attest to this fact as witnesses.  Even the Fee Auditor will note there are no breakfast or lunches, per say, she has combined the cost into a brunch in order to follow guidelines and try to eat a little of both for one cost.  Any meal over the allotment is due to having others present as well, mostly Chinese as guest, who Grace needs in conducting business.

The following is a listing of the costs and numbers participating in the meal for particular dates:

| Breakfast/Lunch | | Lunch/ Breakfast | |
|---|---|---|---|
| Sept. 15 | $52.11 – 2 diners | Sept. 14 | $62.30-3 diners |
| Sept. 16 | $33.48– 1 diners | Sept. 23 | $42.56 - 1 diners |
| Sept. 17 | $37.84 - 1 diners | Sept. 25 | $56.77 - 2 diners |
| Sept. 18 | $37.84 - 1 diners | Nov. 2 | $46.58 - 2 diners |
| Sept. 19 | $37.84 - 1 diners | Dec. 4 | $40.03 - 1 diners |

| Breakfast/Lunch | | Lunch/Breakfast | |
|---|---|---|---|
| Nov. 2 | $63.75 -5 diners (meeting) | Dec. 5 | $40.03 - 2 diners |
| Nov. 3 | $37.84 -3 diners | | |
| Nov. 4 | $139.89 - 7 diners (breakfast meeting) | | |
| Nov. 5 | $37.84 -1 diners | | |

| | |
|---|---|
| Dec. 5 | $37.84 -2 diners |
| Dec. 6 | $37.84 - 1diners |
| Dec. 7 | $37.84 - 1 diners |

Dinner

| | |
|---|---|
| Sept. 13 | $242.40 - 5 diners (dinner meeting) |
| Sept. 24 | $79.77- 2 diners |
| Oct. 30 | $333.69 - 7 diners (hosted dinner meeting) |
| Dec. 4 | $89.39 - 2 diners |
| Dec. 5 | $546.75 - 10 diners (hosted dinner meeting) |

Response Exhibit 5

1. In paragraph number 9 the Fee Auditor questions reimbursement of entertainment expenses. Below is a breakdown of the entertainment expenses and the amounts for which Grace was charged and the basis for such expenses:

| | | |
|---|---|---|
| Entertainment | Sept. 23 | $209.50 - W.R. Grace was charged = 71.23 |
| Entertainment | Sept. 24 | $201.13 - W.R. Grace was charged = 68.38 |
| Entertainment | Oct. 29 | $ 44.30 - W.R. Grace was charged = 4.43 |
| Entertainment | Dec. 6 | $ 69.97 - W.R. Grace was charged = 69.97 |

These represent small tokens given out to over 28 people as remembrances of their meetings. These include items such as: Chinese pens, key chains, and eye glass cases- purchased at the Chinese market.

Response Exhibit 6

1. In paragraph 10, the Fee Auditor objects to laundry expenses incurred by Ms. McEntee. Baker Donelson asserts that the laundry expenses should be allowed due to extended term of foreign travel on behalf of Grace. Any one who has traveled extensively in China is aware that spending several days in China results in unbearable dirt, grime and other things. Ms. McEntee asserts that the accumulation of such dirt, grime and other things is unavoidable. During Ms. McEntee's helping Grace in China, she has experienced all of these, and after several days, even though she packs a substantial amount of necessities, she sometimes needs her undergarments laundered. She has only sent socks and undergarments that were unwearable to be laundered in order to represent the client during an extended stay.

Unlike hotels in other countries, including the United States, it is very hard to dry undergarments, if they are hand washed in the hotel due to the dampness of air conditioning and humidity, especially in Shanghai.

Response Exhibit 7

   1. Finally, in paragraph 11, the Fee Auditor requests details as to miscellaneous expenses for which Grace was billed a total of $70.00. The miscellaneous expenses should be deemed reimbursable as they were gifts consisting of six (6) hard covered books containing the U.S. Constitution which were handed out to lower level Chinese officials who were helpful in arranging meetings for Grace as a "thank you" gesture.