IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-1139 (JKF) |
|  | Jointly Administered |
| Debtors-in-possession. |  |

**STATEMENT OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS AND DAVID T. AUSTERN, FUTURE CLAIMANTS REPRESENTATIVE, CONCERNING THE CASE MANAGEMENT ORDER FOR ASBESTOS ESTIMATION**

The Official Committee of Asbestos Personal Injury Claimants ("ACC"), and David T. Austern, Future Claimants Representative ("FCR"), hereby submit this Statement in advance of the June 26, 2007 Status Conference on the Schedule as contemplated by the Court's Newly Amended Case Management Order For the Estimation of Asbestos Personal Injury Liabilities (the "CMO")[docket # 15923].

Other than purely logistical questions (e.g. the exact date that pretrial binders must be submitted to the Court; the exact date the hearing begins) the only two matters relating to the schedule for the asbestos PI estimation hearing (the "Estimation Hearing") which are still the subject of disagreement between the parties are (1) whether fact discovery should end prior to the cut off for expert discovery and (2) whether two days or more of valuable Court time should be devoted to a separate hearing at the outset of the Estimation Hearing for the Court to hear and decide *Daubert* challenges to the admissibility of expert testimony or instead whether such challenges should be briefed prior to the Estimation Hearing but considered and argued as part of the post-hearing written submission and argument process.  For the reasons set forth below, the ACC and FCR believe that discovery directed at individual claimants should end now, and that any other fact discovery should close two months prior to the close of expert discovery.  This is

{D0088113.1 }

so that the parties can focus on expert discovery and depositions rather than continue Grace's apparently endless quest for discovery from the claimants over the Questionnaire process. The ACC and FCR also believe that because this is a bench trial any *Daubert* challenges to expert testimony can best be argued by the parties and addressed by the Court in the course of post-hearing submissions and closing argument. This was the approach followed for *Daubert* challenges in the prior asbestos estimation cases in this Circuit, all of which were bench trials before experienced Federal District Court judges.

### Cut-off for Fact Discovery

The ACC and FCR would not object to a simultaneous cutoff for expert and fact discovery if Grace had not continuously used every extension in the schedule to abuse the discovery process and launch yet another round of needless discovery at the individual claimants or other third parties. Enough is enough and discovery directed at claimants should end forthwith.

The Questionnaire and other discovery directed at individual claimants was authorized by the Court solely based on Grace's representations that its experts "needed" this information to do an estimate of the total amount of money it will cost Grace to resolve pending and future asbestos personal injury claims. As the Court noted at a hearing last year:

> This process is to help anybody's expert [get] the information that they need to try to convince me of what the existing and future asbestos personal injury claims will be, and how much it's going to cost to resolve them. That's what this is for. And nothing else . . . The point was that this is for estimation purposes, not for allowance and disallowance purposes.

September 25, 2006 Hearing Transcript at 166, 194 (Excerpt attached as Exhibit 1). At another hearing, the Court stated:

> [T]he reason [the Court] permitted the questionnaires was to try to get the – what the Debtor said the Debtor needed for its experts to evaluate in terms of the

current mass of claims _**and it was only ever supposed to be a sample.  Nobody ever expected that every claimant was going to answer the questionnaire, at least I certainly didn't**_.

November 14, 2005 Hearing Transcript at 140 (Excerpt attached as Exhibit 2).

Earlier this week Grace served supplemental expert witness reports from 11 different expert witnesses relating to asbestos personal injury claims.  On June 18, the parties are required by the CMO to exchange expert witness reports from the experts who will quantify the amount of Grace's asbestos liability.  Neither Grace nor any other party has sought a further extension of those deadlines on the grounds that its experts "needed" any additional information from the individual claimants to do their estimates.

Indeed, Grace has not even been able to process or analyze up to 98% of the information it requested from the claimants.  As the Court will recall, in a pleading Grace filed in March, Grace admitted, for the first time, that it was not analyzing all the questionnaires, but instead that it is only working with a sample:

> *For instance, as part of work undertaken at the direction of its estimation experts, Grace, using an outside vendor, has coded a sample of approximately 2,000 Questionnaire responses and their attachments.  That work took 2 months and is still ongoing, as supplemental materials also must be coded.  At that rate and given the approximately 100,000 Questionnaires that have been submitted to date, it would take an estimated 8 years to code all information contained in all attachments submitted in connection with the Claimants' questionnaire responses . . .*

March 26, 2007 Grace Reply to ACC/FCR Motion to Compel Creation of Complete Navigable Database [Docket # 14973] at 9 (Excerpt attached as Exhibit 3).  Yet despite this, Grace seeks even more discovery from claimants in any orgy of excess including:

* Interrogatories about the process followed to answer the Questionnaires

* 21 depositions of claimant law firms about the processes followed to answer the Questionnaires

  * Interrogatories designed to elicit the information that would be contained in a privilege log for consulting experts.

Grace has also served subpoenas on numerous § 524(g) asbestos claims settlement trusts, other asbestos defendants, and physicians which generally seek claimant specific information that at best would be relevant only for use in cross examining a plaintiff or plaintiff witnesses in a trial of that individual case. Grace has already exceeded the 10 deposition per side limit found in Fed. R. Civ. P. 30(a)(2),[1] and its entire discovery program to date makes a mockery of the Rule 1 of the Federal Rules of Civil Procedure, which provides that the Rules of Civil Procedure (which obviously include the rules governing discovery) "shall be construed and administered to secure the just, speedy and inexpensive determination of every action."

Enough is enough. None of this individual claimant related discovery is needed by Grace's experts to estimate its liability; they have already (or will soon) submit their reports. Grace's only real purpose is to harass claimants and other third parties and delay the Estimation Hearing even further.

The Court should end all discovery directed at the claimants right now, and end the remainder of fact discovery (e.g. the depositions of any persons remaining on each side's fact witness list who have not yet been deposed or the discovery directed at the other trusts) well in advance of expert discovery so that the parties can concentrate on each others' expert witness reports and expert depositions rather than continuing to waste the estate's resources on tangential and irrelevant followup discovery relating to the Questionnaires or individual claimants. The Court should also make clear in its order that whatever the status of open discovery directed at third parties, when the fact discovery cut-off date arrives, fact discovery ends.

---

[1] Fed. R. Civ. P. 30(a)(2) applies to contested matters in bankruptcy proceedings pursuant to Fed. Rs. Bnkr. P. 7030 and 9014.

{D0088113.1 } 4

**Daubert**

While there is no legitimate *Daubert* challenge to the methodology for estimating claims and liability followed by the ACC and FCR, which has been repeatedly accepted and relied upon by Federal District Courts and bankruptcy courts in this and other Circuits[2] (sometimes overruling *Daubert* challenges in the process) we believe that Grace's estimation methodology flies in the face of *Daubert* and the case law from this Circuit concerning how estimation of asbestos liabilities should be conducted. The ACC and FCR are certainly going to file *Daubert* or similar motions in limine against Grace's experts and are amenable to doing so on some schedule prior to the Estimation Hearing.

However, this is a bench trial. We believe that rather than tying up valuable trial days with testimony or lawyer argument in a pretrial "*Daubert* Hearing," the better process is for the Court to hear all of the expert's testimony during the course of the Estimation Hearing, and then have argument concerning whether any or all of the expert testimony should be stricken on *Daubert* or similar grounds as part of the post-hearing submission and closing argument process. This was the approach followed for *Daubert* challenges in the Owens Corning, Federal Mogul and Armstrong asbestos estimation cases (all of which were bench trials before experienced Federal District Judges) and we believe the same process makes the most sense here. The Court can disregard any testimony it finds unreliable after hearing all of the evidence.

---

[2] Testimony from the ACC's estimation expert, Dr. Mark Peterson, on asbestos estimation matters using the same basic methodology he and the FCR's estimation expert apply here has been admitted and relied upon by the courts in, among other cases, the Babcock & Wilcox, Armstrong, Federal Mogul, Western Asbestos, Eagle Picher bankruptcy proceedings, the Fibreboard class action and the Fuller Austin insurance litigation. Dr. Peterson's testimony has never been precluded on *Daubert* grounds despite past challenges and indeed his methodology is typically followed by the Debtors' expert, Thomas Florence, in any case in which he is not working for Grace.

**CONCLUSION**

For these reasons, the Committee respectfully requests that this Court amend the CMO to provide that (1) discovery directed at individual claimants must end immediately (2) other fact discovery shall end August 31, 2007 and expert discovery will end October 31, 2007, and (3) that *Daubert* motions shall be filed prior to the Estimation Hearing but will not be addressed or argued until the closing argument after the close of all the evidence.

Dated:  June 14, 2007

| | |
|---|---|
| CAMPBELL & LEVINE, LLC | PHILLIPS, GOLDMAN & SPENCE, P.A. |
| */S/ Mark Hurford* | */S/ John Phillips* |
| Marla R. Eskin (#2989) | John C. Phillips, Jr. (#110) |
| Mark T. Hurford (#3299) | 1200 North Broom Street |
| 800 King Street, Suite 300 | Wilmington, DE 19806 |
| Wilmington, DE 19801 | Telephone: (302) 655-4200 |
| Telephone:  (302) 426-1900 | |
| | - and - |
| - and – | |
| | Roger Frankel |
| Elihu Inselbuch | Richard H. Wyron |
| CAPLIN & DRYSDALE, CHARTERED | Raymond G. Mullady, Jr. |
| 375 Park Avenue, 35th Floor | Debra L. Felder |
| New York, NY 10152-3500 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| Telephone:  (212) 319-7125 | 3050 K Street, NW |
| | Washington, DC 20007 |
| | Telephone:  (202) 339-8400 |
| Peter Van N. Lockwood | |
| Nathan D. Finch | John Ansbro |
| CAPLIN & DRYSDALE, CHARTERED | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| One Thomas Circle, NW | 666 Fifth Avenue |
| Washington, DC 20005 | New York, N.Y.  10103-0001 |
| Telephone:  (202) 862-5000 | Telephone:  (212) 506-5000 |
| *Counsel for the Official Committee of Asbestos Personal Injury Claimants* | *Counsel for David T. Austern, Future Claimants' Representative* |