# **EXHIBIT D**

```
            UNITED STATES BANKRUPTCY COURT
                DISTRICT OF DELAWARE


IN RE:                          .   Chapter 11
                                .
W.R. GRACE & CO., et al.,       .   Case No. 01-01139(JKF)
                                .   Jointly Administered
        Debtors.                .
                                .   June 19, 2006 (1:56 p.m.)
                                .   (Wilmington)
```

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

```
 1   property where we've done the calculation, and we've told
 2   them what the calculation is.  And no one's said that our
 3   calculation is wrong.  To the contrary, they've said that
 4   they don't have any reason to disagree with that calculation,
 5   which makes unpacking the package become so critical.  But
 6   still, as Mr. Inselbuch indicates, and he's basically telling
 7   Your Honor not only a prophecy, but he's basically laying
 8   down the law here in the case, none of it's going to do any
 9   good.  And why is none of it going to do any good?  Because
10   his constituency is not prepared to negotiate along the lines
11   of an actual calculation of personal injury liabilities,
12   which means that we have to go ahead and gather information.
13   Now, if Your Honor will take a look at page 1 on the
14   questionnaires.  We've received approximately 10,000
15   questionnaires back for personal injury.  They have been -
16   about 7,000 of them have been processed.  There are three
17   major deficiencies - I'll call them deficiencies, problems,
18   issues, whatever, that are visible on the face of the
19   answered questionnaires.  One, there are objections that have
20   been made instead of answers given.  Approximately 59/60
21   percent of the questionnaires contained objections in lieu of
22   answers, and I can go through the individual numbers, but
23   that's a figure that applies to a questionnaire where there
24   is one question that has been objected to rather than
25   answered, but I'll give Your Honor a figure, almost half of
```

1    the questionnaires that have been process, the objection
2    means that the entire section of the questionnaire is
3    objected to.  Not just one question, but the entire section
4    of the questionnaire.  For example, exposure to non-Grace
5    asbestos containing products, that is products other than
6    Grace.  We went through and litigated this whole thing, it
7    should be on the questionnaire.  Thirty-two hundred
8    questionnaires are returned to answer not one of those
9    questions.  They're all objected to.  Information regarding
10   the pulmonary function test, 1,268, which is roughly, you
11   know, it's roughly a quarter of the claims, an entire section
12   objected to.  Information regarding the diagnostic process,
13   904, no questions answered.  They're just all objected to.
14   So that's problem one, is, people just decided, well, you're
15   supposed to answer what the questionnaire says, but we're
16   going to object instead.  Attachments, as opposed to
17   answering, where they don't answer, but they just say, the
18   information is somewhere or they produce a volume of
19   documents and they say the answer is somewhere.  Sixty-seven
20   percent of the questionnaires have attachments or make
21   reference to attachments either there or elsewhere rather
22   than answer, and again, this is not a situation where it is
23   just one.  The 67 percent is where there's at least one, but
24   you have for example, claims regarding asbestos and/or
25   silica, other claims being maintained against others.  The

1    entire section is objected to by 1,064, one-seventh of all of
2    the answers.  Exposures to non-Grace asbestos containing
3    products.  In case of 1,500 questionnaires, the entire
4    section is - they simply say, here's the attachment.  So, I
5    could go on and on, but these are major, major deficiencies.
6    And then here's the last statistic that's of relevance.
7    Beyond the problems that we had with the face of the answers,
8    over 43 percent of the questionnaires that have been
9    processed to date, name one or more doctors that Grace
10   suspects of using unreliable and medically unsupportable
11   diagnostic procedures, and Your Honor says, Well, you know,
12   isn't that really a technical matter, et cetera, et cetera.
13   Your Honor, the outside world for the last three years really
14   is a consequence of the Fair Act, is all over the question of
15   the medical diagnoses - so-called medical diagnoses that have
16   been used to sponsor these claims, and it's not just Judge
17   Jack anymore, it's not just Judge Jack, in fact, the trusts
18   that have been created in years past to process asbestos
19   claims have now started to reject, refuse to accept so-called
20   diagnoses that come from a list of doctors, including the
21   Manville trust, a full -
22              THE COURT:  But other plans have fixed - in quotes,
23   "fixed that problem" by simply requiring that more than one
24   diagnosis come in in the event that the diagnosis is from
25   that doctor.  I mean there is a way around those problems.