# EXHIBIT E

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          .    Case No.  01-1139 (JKF)
                                .
                                .
W.R. GRACE & CO.,               .    USX Tower - 54th Floor
et al.,                         .    600 Grant Street
                                .    Pittsburgh, PA 15219
                Debtors.   .
                                .    April 13, 2007
. . . . . . . . . . . . ..            9:16 a.m.


TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtors:                Kirkland & Ellis LLP
                                By:  DAVID M. BERNICK, ESQ.
                                     JANET S. BAER, ESQ.
                                200 East Randolph Drive
                                Chicago, IL  60601

                                Kirkland & Ellis LLP
                                By:  AMANDA C. BASTA, ESQ.
                                655 Fifteenth Street, N.W.
                                Washington, DC  20005-5793

For the Official               Caplin & Drysdale
Committee of Asbestos          By:  NATHAN D. FINCH, ESQ.
Personal Injury                One Thomas Circle, N.W.
Claimants:                     Washington, DC  20005

Audio Operator:                Cathy Younker


Proceedings recorded by electronic sound recording, transcript
produced by transcription service

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@optonline.net

(609) 586-2311    Fax No. (609) 587-3599

1  claimants they -- there's a blanket objection, and we now have

2  heard somewhat candid testimony from their counsel that well,

3  gee, you got to do that because otherwise you might waive

4  something.  It's true that if you actually have a privilege and

5  you don't assert it, you waive it.  It is not true that if you

6  don't have a privilege you assert it so that you won't waive

7  it.  You have to have a privilege that you believe is there in

8  good faith to make a filing before this Court that complies

9  with Rule 11.

10         So if you have an objection, it's not a proper

11 objection.  You don't make it for the sake of preserving the

12 opportunity to make a bad objection.  You don't make the

13 objection.  And we now know that effectively these folks never

14 looked.  They never looked to all the individual cases.  They

15 just filed a blanket objection and came here to litigation it,

16 and today it looks like they still haven't looked.  And why do

17 we say that is because they still can't tell us who the

18 particular claimants are who are asserting this versus who are

19 not.

20         THE COURT:  Well, that's what --

21         MR. BERNICK:  And --

22         THE COURT:  -- your interrogatory though -- I think

23 we should just cut through this.  Your idea about getting

24 interrogatories together that will identify the claimants and

25 what is it that they're asserting a privilege for I think is a

1 good one.

2          MR. BERNICK:  I want to -- but I want to get -- I

3 mean what I'm really kind of getting to is that the remarks

4 that have been made today underscored the need for that, but

5 then also counsel that in framing the interrogatory we have to

6 be clear now it's very apparent not only the particular pieces

7 of information that are relevant, but where they're going to go

8 to get that information.  I went back and took a look at the

9 Waters & Kraus affidavit and it's different from what Mr. Kazan

10 told me.  And Mr. Kazan's from a different firm, but I had

11 thought and when we put these folks in category one and were

12 lavishing all kinds of love and praise for their

13 responsiveness, I guess I had missed the boat a little bit.

14          Mr. Kazan told me over the telephone, and I say this

15 not because it's somehow a formal record, but it does frame our

16 approach here today, that not only was there not anything being

17 withheld improperly under the order, there wasn't anything

18 being withheld, period.  That is, the -- we had all that there

19 was.  The B reads were all there.  We didn't have to worry

20 about whether there's compliance with the order or not because

21 we had it all.  And boy, that's an easy thing to respond to if

22 you've given us that all.  That's what the questionnaires asked

23 for.  There's nothing more to be said, and all we needed when I

24 said the verification is the verification that we've got all

25 the B reads, nothing is being withheld.

**J&J COURT TRANSCRIBERS, INC.**

106

1          In the case of Waters & Kraus in listening to Ms.

2   Ramsey's remarks today, they were much more careful.  This

3   says, "The only B readings that Waters & Kraus has withheld

4   from Grace represent facts known or opinions held by experts

5   who were retained specifically in anticipation" dah dah dah

6   "who are not presently" -- none of the B readings Waters &

7   Kraus has withheld were made by -- says, "All specific to

8   Waters & Kraus" and then the representation at the end.  "None

9   of the B readings that Waters & Kraus has withheld were made by

10  B readers who examined a claimant prior to the time that an

11  attorney client relationship was established between that

12  claimant and Waters & Kraus."

13          So we now know that Waters & Krause, which is a very

14  well-known and extremely highly regarded firm, gets matters on

15  referral.  So the only representation that's been made with

16  respect to these people are representations A, that there's

17  been compliance with the order, which is a conclusion of law.

18  It is not a statement of the predicate facts that we would get

19  through an interrogatory and it's confined to Waters & Kraus.

20          Well, we're not just focused on Waters & Kraus.

21  Waters & Kraus is counsel for these people, although Waters &

22  Kraus has not submitted a 2019 statement before this Court.  So

23  we want to get the information from the clients and if there's

24  negative B reads like we got the story about how people's B

25  reads changed over -- if it's all so simple and they changed

107

1 over time, then geez, I guess they'll have a pretty good answer

2 to the question of why the first B read was negative and the

3 next one was positive.  But until we know what the -- they both

4 are, we can't assess that.  We just have to take it on their

5 say so.

6           So the interrogatories need to get the information

7 that is possessed by these firms and goes back with respect to

8 other firms that relate to these claims.  Otherwise, we're

9 going to continue to have -- any company that got this

10 discovery would have the obligation to make inquiry and to --

11 we wouldn't have this hiding the -- these law firms are

12 companies.  They're businesses.  They should do business on the

13 same basis --

14           THE COURT:  All right.  Look, I think we -- I just

15 have to cut through this because number one, I have <u>Federal-</u>

16 <u>Mogul</u> starting and you've made these arguments and I'm ruling

17 your way.

18           MR. BERNICK:  Yes, I --

19           THE COURT:  So there isn't any point to doing this

20 anymore.

21           MR. BERNICK:  -- I got that.

22           THE COURT:  Okay.

23           MR. BERNICK:  So here's what we would suggest the

24 Court is that we have an order that says, just like we had with

25 respect to the questionnaires, that as of today, Rust need not

**J&J COURT TRANSCRIBERS, INC.**

108

1  process further B reads that come in and that B reads that come

2  in after today are not timely filed.

3         THE COURT:  Well --

4         MR. BERNICK:  Otherwise, there is -- you know --

5         THE COURT:  I --

6         MR. BERNICK:   -- Rust will not have it, but we'll

7  still hear arguments about them.

8         THE COURT:  I think what we should do is have Rust

9  process B reads that are coming in through today for purpose of

10 preparing the initial expert report, have you prepare the

11 interrogatories that you choose to prepare to identify the

12 clients, what objections are being raised on behalf of those

13 clients, and whatever other information it is that you're going

14 to ask for in the interrogatories that we're going to discuss

15 on May 2nd, and see at that time whether or not this motion to

16 compel additional information should or should not be granted.

17        I understand that if I grant additional information

18 that that means that Rust will have to add information to the

19 database, that a supplemental expert report will be necessary,

20 and that the trial dates will be pushed back.  I understand all

21 that, but that is something that I want to consider and I'm

22 going to consider in May.

23        MR. BERNICK:  That's fine.

24        THE COURT:  But for today, it seems to me that we

25 should keep to the discovery schedule.  Rust obviously can't