IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | |
| | ) | Case no. 01-01139 (JFK) |
| W.R. GRACE & CO., *et al.*, | ) | Jointly Administered |
| | ) | |
| Debtors | ) | Related Docket Nos,: 15703, 15705, 15707, 15709, |
| | ) | 15711, 15713, 15715, 15717, 15719, 15721, |
| | ) | 15723, 15730, 15732, 15734, 15735, 15738, |
| | ) | 15740, 15741, 15744, 15746, 15748, 15950, |
| | ) | 15955, 15959, 15966, & 15987 |
| | ) | |
| | ) | Hearing Date:  June 26, 2007 @ 9:00 a.m. in |
| | ) | Pittsburgh, PA |
| | ) | |
| | ) | Agenda Item Nos. 1-5 |
| | ) | |

**DEBTORS' COMBINED RESPONSE TO MOTIONS FOR PROTECTIVE ORDERS
PRECLUDING NOTICES OF DEPOSITIONS OF 21 LAW FIRMS**

Nearly two years have passed since the Court first approved the Personal Injury

Questionnaire as a discovery device carefully tailored to elicit information crucial to arriving at a

scientifically reliable and legally sound estimate of Grace's asbestos liabilities.    Extensive

hearings were held regarding the implementation of this decision, and intensively litigated and

negotiated orders were entered.    The pattern, frequency, scope, and depth of non-compliance

with these orders now has been established beyond doubt -- all in the face of the Court's repeated

and unequivocal instructions.    The motions now before the Court[1] are designed to add insult to

---

[1] This response addresses the following five motions for protective orders: The *Memorandum in Support of Motley Rice LLC's Motion for Protective Order* dated June 4, 2007 [Docket No. 15950] ("Motley Rice Mot."); *Motion of Official Committee of Asbestos Personal Injury Claimants and David T. Austern, Legal Representative For Future Asbestos Injury Claimants, For Protective Order* dated June 4, 2007 [Docket No. 15955] ("ACC & FCR Mot."); *Motion of Certain Law Firms to Quash Deposition Notices and for a Protective Order* dated June 5, 2007 [Docket No. 15966] ("Certain Law Firms Mot."); *Motion of the MMWR Cancer Firms for a Protective Order with Respect to Notices of Deposition Served on Them by W. R.. Grace* dated June 7, 2007 [Docket No. 15987] ("MMWR Mot."); *Memorandum in Support of Cooney and Conway's Motion for Protective Order* dated June 4, 2007 [Docket No. 15950] ("Cooney & Conway Mot.").

injury, as the law firms[2] now want to make their non-compliance non-reviewable by foreclosing even the simplest, most direct inquiry into the facts of non-compliance.

Notwithstanding the law's clear rejection of this blanket objection approach, Grace has heeded the Court's admonitions that the parties find common ground and expressly invited the law firms to engage in good-faith efforts to resolve their objections to the deposition notices. These, too, have come to naught, as the firms have simply insisted that there be no depositions at all. Through this response, Grace unilaterally offers to limit its own requests in order to facilitate the Court's resolution of this discovery dispute. In particular, Grace offers to limit the deposition notices both in subject matter and number.[3] *First*, Grace proposes that the notices cover the following topics:

> (1) processes used by the law firm to provide information regarding B-Reads performed for each Claimant who filed a response;
>
> (2) processes used by the law firm to provide information responsive to Parts III and IV of the PIQ: "Direct" and "Indirect" "Exposure to Grace Asbestos-Containing Products"; and

---

[2] The Deposition Notice was served on the following law firms: Alwyn H. Luckey, P.A. [Docket No. 15703]; Baron & Budd, PC [Docket No. 15705]; Cooney & Conway [Docket No. 15707]; Edward O. Moody, P.A. [Docket No. 15709]; Early Ludwick & Sweeney [Docket No. 15711]; Foster & Sear, LLP [Docket No. 15713]; Ferraro & Associates, P.A. [Docket No. 15715]; Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, PC [Docket No. 15717]; Motley Rice LLC [Docket No. 15719]; LeBlanc & Waddell [Docket No. 15721]; Williams Bailey Law Firm, LLP [Docket No. 15723]; Provost Umphrey LLP [Docket No. 15730]; Maples & Lomax [Docket No. 15732]; Silber Pearlman, LLP [Docket No. 15734]; Weitz & Luxenburg, P.C. [Docket No. 15735]; Waters & Kraus, LLP [Docket No. 15738]; Law Offices of Peter G. Angelos, PC [Docket No. 15740]; Paul, Hanley & Harley, LLP [Docket No. 15741]; Reaud Morgan & Quinn [Docket No. 15744]; The Wartnick Law Firm [Docket No. 15746]; and Kelley & Ferraro, LLP [Docket No. 15748].

[3] This proposed limitation relates solely to the Notice of Depositions at issue in the Movants' motions. Grace previously served a subpoena on Early, Ludwick & Sweeney (seeking a deposition as well as other discovery), and the Court granted in part, and denied in part Early Ludwick's motion for a protective order. Critically, the Court did not quash the requested depositions. *See* 5/21/07 Hr'g Tr. at 207-10.

(3) processes used by the law firm to provide information responsive to Part V of the PIQ: "Exposure To Non-Grace Asbestos-Containing Products."

*Second*, Grace will withdraw the deposition notices as to all but the following law firms: Baron & Budd, P.C.; Early Ludwick & Sweeney; Kelley & Ferrero, LLP;[4] Motley Rice LLC; Law Offices of Peter G. Angelos, PC; and Weitz & Luxenberg, P.C.

## BACKGROUND

**A.      Long Ago The Court Recognized That Some Discovery Of The Law Firms Might Become Appropriate.**

The need for the law-firm discovery at issue here was predictable and predicted. As the Court will recall, Grace initially sought law firm discovery but was turned down as the Court encouraged alternative discovery paths. Critically, however, the Court never foreclosed the possibility of law-firm discovery. To the contrary, the Court took pains to explain that its denial was predicated on its failure to find that the requests were "calculated to lead to relevant and admissible evidence with respect to overall estimation." *See* 10/24/05 Hr'g Tr. at 69. In so

---

[4] Kelley & Ferrero has filed no response or objection to the deposition notice, and consequently has waived any rights to do so under the Court's scheduling orders. Although the ACC and FCR have objected to the deposition notices, they do not have standing to so on behalf of Kelley & Ferraro or other law firms. Courts have held that "[i]n the absence of a claim of privilege[,] a party usually does not have standing to object to a subpoena directed to a non-party witness." *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975); *see also Sneirson v. Chemical Bank*, 108 F.R.D. 159, 160 n. 2 (D. Del. 1985) ("Ordinarily, a party has no standing to object to discovery of a nonparty. However, an exception exists where a party claims 'some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a nonparty.'") (quoting *Dart Industries, Inc. v. Liquid Nitrogen Proc. Corp. of Cal.*, 50 F.R.D. 286, 291 (D. Del. 1970)).

This Court has recognized the ACC's lack of standing to object to discovery requests that are directed at information concerning the individual claimants and the materials underlying their allegations of asbestos-related disease caused by Grace and has admonished the ACC for interposing objections where the affected claimants (and their counsel) have not. *See* 2/20/07 Hr'g Tr. at 20-21 (I'm not sure what the ACC's standing is. You keep telling me you don't represent these individuals .... This comes as close to a bad faith objection as I have seen the ACC behave in this case, and I hope not to see this type of action again.")

3

holding, however, the Court left room for law firm discovery -- denying only what it perceived to be "broad-based" questions. The Court explained:

> If you've got a need for specific discovery, focused on a specific area, you can take it and we'll deal with it piecemeal. But overall, I am not going to permit these broad-based questions. I didn't permit them with the individuals. I'm not going to permit them with the lawyers. . . So tailor your questions if you have some need for this specific [to] whatever it is that you're looking for so that when I say, what's the relevance, you can tell me how it fits to a particular strategy, theory, piece of evidence, whatever in the estimation hearing, because this doesn't.

*Id.* at 82. Tellingly, in its order denying Grace's motion for law firm discovery, the Court specified that its denial was "without prejudice to the Debtors' right to seek discovery from individual firms in accordance with the applicable Federal Rules of Civil procedure and subject to applicable Federal Rules of Evidence." 12/16/05 *Order Denying Debtors' Emergency Motion for Leave To Take Discovery of Claimants' Attorneys* [Docket No. 11356] at 2. And the Court further "retain[ed] jurisdiction to hear and determine all matters arising from or relating to" the law firm discovery order. *Id.*

### B. As Grace Continued To Catalogue Claimants' Attorneys Repeated Failures To Comply With Their Discovery Obligations, The Need For Law Firm Discovery Became Manifest.

At the May 8, 2007 Hearing, counsel for Grace canvassed the mounting evidence that certain counsel had indeed been "less than forthcoming" in providing information directly responsive to the PIQ's. *See generally* 5/8/07 Hr'g Tr. at 29-40. Grace highlighted the following:

- Only 1200 claimants (about one percent) actually answered all of the PIQ questions; the remainder only attached self-serving, unreferenced documents;

- Law firms evidently have failed to search beyond their own files for B-reads and other medical information from before the attorney-client relationship had developed, as required by the Court's supplemental attachment order;

4

- Claimants have failed to disclose and describe all diagnoses obtained before or after the one for which the claim has apparently been filed, as required by the PIQ;

- Claimants have failed to disclose all exposures to asbestos-containing materials, as required by the PIQ; and

- Of the 6,740 claimants who rely upon x-ray evidence to support their allegations of asbestos-related lung-cancer, only 3,101 submitted materials complying with the Court's x-ray order.

Recognizing that law firm discovery had been warranted, the Court reflected:

> [T]his goes back at least a year and a half. We had this discussion before the questionnaire was developed. The issue at the time was whether or not the Debtor could seek discovery directly from lawyers versus doctors, from the clients. *The lawyers were very adamant about the fact that they should not be subject to the Debtors' discovery. I told the Debtors to take another path before they attempted to go down this route, and the Debtors did so, now it's coming home to haunt me.*

5/8/07 Hr'g Tr. at 141-42 (emph. added). To that end, the Court agreed that discovery of claimants' attorneys geared toward determining "what efforts have been undertaken to find out where the documents are" and "to obtain documents in the possession and control of other counsel, or in the possession, custody and control of the doctors" was proper and not "overly burdensome." The Court recognized "[i]f there have been efforts made, it shouldn't be that difficult to say what they are in global terms. If there were no efforts, then none is pretty easy to add." *Id.* at 171-72.

## C. The Deposition Notices To Certain Law Firms And The Instant Motions For Protective Orders.

The deposition notices at issue here simply request the production of the attorney "most knowledgeable concerning the activities undertaken by the firm to respond to the W.R. Grace Asbestos Personal Injury Questionnaire." Despite the Movants' professed outrage at the scope of the deposition notice, the record reveals that the discovery served is just what was previously described to and approved in concept by the Court. In April, the Court approvingly cited Grace

counsel's "concept of asking for the interrogatory and to get to what claimants actually are withholding what information" as "probably the way to proceed." *See* 4/13/07 Hr'g Tr. at 101. In May, the Court specifically recognized that "maybe . . the thing to ask," is, "[i]n general, what have [the law firms] done to answer the [questionnaires]" (*see* 5/8/07 Hr'g Tr. at 135) -- language that parrots the subject of the deposition notices to which Movants now object.

And that the discovery would be sought though depositions in addition to written discovery was also expressly raised before the Court. Grace's counsel referred to its anticipated 30(b)(6) deposition notices:

> What we will do is serve the interrogatories, we'll probably notice up custodial depositions for the top 23 firms which are the firms that we're really talking about here, take very short depositions to find out what those firms did and that'll be on a parallel track.

> \*\*\*

> we'll just notice up these 30(b)(6) depositions and find out what it is that was done and we can do that relatively promptly and have no slippage in the trial schedule. . . . I think that in this case, if we get a person who is responsible for the production of these attachments and the answering the questionnaire from each firm, we'll get sworn testimony and it'll be relatively prompt and we'll find out whether they went and contacted other doctors and other lawyers because I don't think that that takes any rocket science.

*See* 5/8/07 Hr'g Tr. at 202-03, 205-07.

### D.    The Law Firms Filed Blanket Objections And Declined To Suggest Any Path To Resolving The Issues.

Despite the specific contemplation of law-firm deposition notices designed to elicit testimony concerning precisely these issues, Movants have levied wholesale objections to the straightforward discovery requests and have flouted this Court's repeated warnings that counsel abide by the Local Rule for the District of Delaware requiring that parties meet-and-confer. The Court has previously instructed:

> I want the record to reflect that the Delaware Local Rule does have
> in place a conference process. So, folks, you're ordered to comply
> with the local rule, and I don't want to see hide nor hair of any
> discovery disputes until you meet and confer with respect to every
> single question, sub-question, answer, non-answer, document,
> missing document, whatever so that I know that in fact you've
> made a *good faith effort* to try to get this resolved.

3/27/06 Hr'g Tr. at 46-47 (emph. added); *see also* D. Del. Local Rule 7.1.1. Most recently --

exasperated after wrangling over discovery disputes for five hours -- the Court reiterated the

importance of the meet-and-confer obligation. *See 5/8/07* Hr'g Tr. at 194 (discovery issues are

"going to be submitted on the papers in the future and before they're submitted you're going to

have meet and confers").

Despite the Court's crystal-clear directives, counsel for at least two of the Movants -- the

ACC & FCR and Motley Rice -- *failed to engage in any meet-and-confer whatsoever before*

*filing their motions*. And, although counsel for the remaining Movants "participated" in a meet-

and-confer, Grace's requests for good faith proposals to resolve the dispute without need for

further Court intervention were met with silence -- literally.

## ARGUMENT

### I.    The Movants Have Failed To Meet Their Burden Of Making A "Particularized" Showing That A Protective Order Is Warranted.

It is axiomatic that, as the parties seeking a protective order, Movants bear the burden of

demonstrating "a particularized need for protection." Rule 26(c) provides: "Upon motion by a

party ... and for good cause shown, the court ... may make any order which justice requires to

protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense...." Good cause is shown "by demonstrating a particularized need for protection."

*Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). The party seeking a

protective order bears the burden of persuasion and "[b]road allegations of harm, unsubstantiated

by specific examples or articulated reasoning do not satisfy the Rule 26(c) test." *Id. Cf. U.S. EEOC v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006) ("The party seeking the [protective] order must point to specific facts that support the request, as opposed to conclusory or speculative statements about the need for a protective order and the harm which would be suffered without one.") (citations and quotations omitted).

Movants attempt to meet this burden by questioning the relevance of the discovery and raising the specter that the depositions may impinge on the work product doctrine or the attorney-client communication privilege. As discussed below, as a matter of fact and law, Movants' reliance on these contentions does not come close to meeting their burden.

### A.     The Requested Discovery Is Reasonably Calculated To Lead To The Discovery of Admissible Evidence.

The Court has made clear that discovery regarding what the law firms did or did not do in culling and providing information responsive to the PIQs is reasonably calculated to lead to the discovery of admissible evidence. As the Court observed:

> I believe what the debtor is asking is for firms that, in the debtor's view, have not certified that there is not something clear in the record to the debtor that in fact information is fully disclosed. And the problem for the debtor, of course, is that in -- down the road, that information may somehow be used to, I guess, to counteract the debtor's expert reports and *the debtor has, I think, the right to know that there might be some additional evidence out there and to know that it doesn't have the whole universe of data.*

4/13/07 Hr'g Tr. at 99 (emph. added). Indeed, the Court's recognition of the import of such discovery is evidenced by its *sua sponte* indication that it would be willing to delay the estimation trial so "the debtor gets the full scope of the information." *See id.* at 101.

The Movants attempt to downplay the relevance of and need for the law firm discovery by claimant that "the Debtors have already revealed that they are looking at the complete records of only about 2000 claimants." *See* ACC & FCR Mot. at 8. In particular, they argue that the

depositions are improper because they seek information about more than these specific claimants, information that Grace and its experts will never use. This argument should be rejected.

As the citations relied upon by the ACC and FCR reveal, the Debtors have ***never*** claimed that they are looking at, using, or relying upon the records of only 2,000 claimants. Instead, in response to the ACC's and FCR's motion to compel Grace to code ***all*** of the attachments to PIQs that had been submitted, Grace explained that it was incapable of undertaking such a massive task without delaying the estimation by years.[5] To illustrate the amount of work that would be involved in such an effort, Grace explained that, "as ***part*** of work undertaken at the direction of its estimation experts, Grace, using an outside vendor, has coded a sample of approximately 2,000 Questionnaire responses and their attachments," a process that took more than 2 months to complete. *Id.* (emph. added).

But the fact that Grace had an outside vendor code a sample of the attachments as *part* of its experts' work has no bearing on the scope of the experts' work as a whole. As counsel for Grace made clear at the May 8, 2007 Hearing, "[t]he experts are going to be taking a look ***at all the data that's being provided in this case*** and the experts are going to be drawing inferences from the data." 5/8/07 Hr'g Tr. at 43 (emph. added). Clearly, Grace's experts have not limited their work to a 2,000-claimant sample, and the fact that there is a sample of PIQs with fully coded attachments is irrelevant to the issue before the Court.

---

[5] Grace Resp. to Emer. Mot. to Compel Complete Navigable Database at 9 [Dkt. No. 14973].

**B.     The Deposition Notices Do Not Seek Protected Information Or Privileged Communications.**

     **1.     Movants' Blanket Privilege Assertions Are Defective As A Matter Of Law.**

Movants resist the law firm depositions based on broad-brushed speculation that the questions may implicate information protected from discovery by the work product doctrine or the attorney-client communication privilege.[6]    However, it is axiomatic that "[t]he mere possibility that such [privilege] issues may arise does not merit the drastic relief of quashing these subpoenas before a single question has been asked." *See Nakash v. U.S. Dept. of Justice*, 128 F.R.D. 32, 35 (S.D.N.Y. 1989); *see also Carlson v. Smith*, Nos. 85-3634, 85-3630, 1986 WL 644, *1 (E.D. Pa. Jan. 7, 1986) ("The appropriate procedures is for the deponents to appear at the deposition and to assert the privilege in response to specific questions.").

As the ACC and the FRC reminded the Court in advocating their own discovery of Grace's attorneys, the party seeking a protective order based on privilege bears the "burden to establish that any of the information requested is privileged attorney work product or privileged attorney/client communication." *See* 1/23/07 Hr'g Tr. at 11; *see also id.* at 20 ("Grace bears the burden of establishing the facts that demonstrate the existence of the attorney/client privilege or the work product privilege. It is their burden.").

---

[6] *See, e.g.,* Certain Law Firms Mot. at 8-12. These generalized privilege objections also contravene the Court's recent warning that parties lodging "general objections" to discovery "can be assured that they will be overruled forthwith, without any further consideration by the Court . . . " *See* 5/8/07 Hr'g Tr. at 194.

2.    **The Work Product Doctrine "Furnishes No Shield Against Discovery By Depositions Of Facts" Learned By An Adverse Party.**

Not only have Movants failed to provide specific bases for their privilege claims,[7] but they have also levied blanket privilege assertions that fly in the face of the overwhelming weight of authority that holds that inquiry into the *factual* predicates underlying a party's discovery responses (including its sources for such facts) are subject to neither the work product doctrine nor the attorney-client communication privilege. As courts in the Third Circuit have recognized, the work product doctrine "furnishes no shield against discovery by . . . depositions of the facts that the adverse party has learned *or the persons from whom such facts were learned*." *Eoppolo v. Nat'l R.R. Passenger Corp.*, 108 F.R.D. 292, 293 (E.D. Pa. 1985) (emph. added); *see also D'Alonzo v. J.B. Hunt*, No. 06-1997, 2006 WL 3511712, at *3 (E.D. Pa. Dec. 4, 2006) (same, denying motion for protective order precluding deposition of investigator hired in anticipation of litigation, noting that work product privilege "cannot be used to bar questions about [the investigator's] knowledge of the facts of this litigation"); *United States. v Dentsply Int'l, Inc.*, 187 F.R.D. 152, 155-56 (D. Del. 1999) ("The general rule is that one party may discover relevant facts known or available to the other party, even though such facts are contained in documents that are not discoverable.").[8]    This Court has echoed this sound legal principle, stating:

---

[7] It is "noteworthy" that Movants have objected to the deposition notices as seeking "protected or privileged information," but do not argue that the interrogatories served contemporaneously with the depositions notices would "be similarly inappropriate." *See Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 29, 34 (D. Conn. 2003). "As courts have held contention interrogatories seeking the factual bases for allegations would not encroach on protected information, . . . it is not apparent how the same information would be otherwise unavailable through questions posed to a deponent in the course of a deposition." *See id.*

[8] *See also Alexander v. F.B.I.*, 192 F.R.D. 12, 19-20 (D.D.C. 2000) (rejecting claim that work-product doctrine precluding deposition questions of private investigator hired by party's attorney to reveal to whom he spoke or with whom he had contact or reasonable follow up); *AMP, Inc. v. Fujitsu Microelectronics, Inc.*, 853 F. Supp. 808, 831 (M.D. Pa. 1994) (compelling corporate defendant to produce 30(b)(6) witness to answer questions regarding the contentions and affirmative defenses detailed in defendants' answer and counterclaim); *Security Ins. Co. of Hartford*, 218 F.R.D. at 34 (granting motion to compel company to provide corporate representative with the most
(Continued...)

> I don't see . . . what his communication with the law firm -- I
> don't see how that as a non-testifying expert is discoverable, but
> his opinion on the factual evidence that supports the claim, to the
> client, is discoverable. If he makes a report that indicates that there
> is -- you know, asbestosis in case, that's -- why is that not
> discoverable? If the plaintiff is suing to recover, based on the fact
> that he has asbestosis.

*See* 12/5/06 Hr'g Tr. at 138-39.

## C. Under Any Reasonable Standard, The Deposition Of Claimants' Attorneys Is Proper Here.

### 1. Movants Are Not Insulated From Deposition Merely Because They Are Claimants' Attorneys.

As an initial matter, neither the Rules of Civil Procedure nor other authority automatically exempts "a party's attorney from being subject to a deposition." *See* Fed.R.Civ.P. 30(a) (a party may take the deposition of "any *person*") (emph. added); *Dowd v. Calabrese*, 101 F.R.D. 427, 439 (D.D.C. 1984); *see also In re Subpoena Issued to Dennis Friedman*, 350 F.3d

---

knowledge of its denials in its answer to a third-party complaint, despite claims of privilege where company "was not asked to disclose its work product but was rather required to produce a witness capable of providing facts in support of the allegations within its answer."); *Caesars Entm't., Inc.*, 237 F.R.D. 428 at 432-33 (attorney-client privilege and work-product doctrine did not preclude deposition question regarding factual bases for employer's position statements in response to employment discrimination charges); *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 516 (N.D. Iowa 2000) (holding that a court should test the signer's certification under an objective standard of reasonableness, "except that it may inquire into the signer's actual knowledge and motivation to determine whether a discovery request, response or objection was interposed for an improper purpose.").

Movants' reliance on *Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985), does not lead to a different conclusion. In *Sporck*, a divided Third Circuit determined that attorney discovery is protected as opinion work product only if it will reveal the opposing side's strategy. *Plan Genetic Systems, N.V. v. Northrup King Co.*, 174 F.R.D. 330, 331-332 (D. Del. 1997). This concern is not implicated by Grace's limited requests, because the requested discovery does not go to the claimants' strategy, but rather the process used to complete the questionnaire (*i.e.*, *what* was done by the law firms to complete the questionnaires; not *why* the law firms did or did not take any steps). This information is necessary to determine whether the claimants and/or their attorneys have complied with the Court's orders concerning the PIQs. Further, the unique circumstances attending the discovery in this case -- most notably the law firms' nearly exclusive control over the revelation of available information responsive to the PIQs and related discovery -- have evidenced Grace's "substantial need of the materials" and is inability "without undue hardship to obtain the substantial equivalent of the materials by other means." In this manner, even otherwise protected work product would be discoverable under Fed.R.Civ.P. 26(b)(3).

65, 72 (2d Cir. 2003) ("[T]he fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered."). Indeed, in this case, counsel for the ACC & FCR have deposed Grace's former and current in-house counsel. *See* 1/23/07 Hr'g Tr. at 11.

Courts in the Third Circuit have repeatedly recognized that there is no general prohibition against obtaining the deposition of opposing counsel with regard to relevant, non-privileged information, stating that, "[t]he fact that the proposed deponent is an attorney for one of the parties in the case is ***clearly not enough***, by itself, to justify granting in full the motion for a protective order." *In re Arthur Teacher's Franchise Litigation*, 92 F.R.D. 429, 437 (E.D. Pa. 1981) (emph. added); *Frazier v. Se. Pennsylvania Transp. Auth.*, 161 F.R.D. 309, 313 (E.D. Pa. 1995) ("The cases make it clear that Ms. Frazier is not entitled to a protective order merely because SEPTA seeks to depose her attorney.").

> **2.    Under Either The "Flexible" Approach To Attorney Depositions Or The Eighth Circuit's More "Rigid" *Shelton* Rule, Depositions Of Claimants' Attorneys Are Appropriate Here.**

Courts have followed different approaches in addressing objections to depositions of attorneys. On the one hand, some have recommended "a flexible approach to lawyer depositions" which would take into account considerations such as the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *See, e.g., In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 672 (2d Cir. 2003). In *Frazier*, the district court considered the identical issue that is before the Court and applied the flexible approach to lawyer depositions. 161 F.R.D. 309.

13

Like Grace, the *Frazier* defendant sought to depose plaintiff's attorney, and plaintiff moved for a protective order quashing the deposition. In ordering plaintiff's counsel to appear for deposition, the *Frazier* court held that a protective order quashing the deposition of plaintiff's counsel is *only appropriate if claimants have established* "undue burden or oppression measured by (1) the extent to which the proposed deposition promises to focus on central factual issues, rather than peripheral concerns; (2) the availability of the information from other sources, viewed with an eye toward avoiding cumulative or duplicative discovery; and (3) the harm to the party's representational rights . . . " *Frazier*, 161 F.R.D. at 313.

On the other hand, come courts have applied the more "rigid" approach to attorney depositions announced by the Eighth Circuit in *Shelton v. Amer. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986).[9] Under the *Shelton* doctrine, lawyer depositions may proceed only when the party seeking to take the deposition has shown that "(1) no other means exist to obtain the information than to depose opposing counsel . . .; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id.* at 1327 (citations omitted). Even under the *Shelton* approach, the propriety of the attorney depositions requested here is clear.

*First,* discovery to date makes clear that the claimants' attorneys are uniquely in control and the sole holders of information pertaining to the gathering of information regarding the completeness of responses to the Questionnaires.[10]   *Second,* as outlined above, the requested

---

[9] *See* Certain Law Firms Mot. at 14; Motley Rice Mot. at 6-7.   Although the Third Circuit has not adopted *Shelton*, at least some district courts within this Circuit have applied it in considering attorney depositions. *See, e.g., Allergan inc. v. Pharmacia Corp.*, No. Civ.A.01-141-SLR, 2002 WL 1268047, at *1 (D. Del. May 17, 2002) (applying *Shelton* standards in considering motion for protective order precluding discovery of attorney).

[10] *See, e.g.,* 10/18/06 Gaziano Dep. at 197-99 (testifying that all material are mailed back to the attorney who requested the examination, and that no one else, including the claimant, receives a copy of those materials);
(Continued...)

14

information is both relevant and non-privileged. *Third*, the requested depositions go to the process by which the Court-mandated PIQ was completed by claimants and/or claimants' counsel -- information "crucial" to the preparation of Grace's case. As such, the deposition testimony is narrowly tailored to determining whether claimants have fully complied with the Court's orders and whether the parties and their experts can rely upon the questionnaires for purposes of the estimation proceeding. These are *the* central factual issues in the estimation of Grace's asbestos PI liabilities. Consequently, even under the *Shelton* approach, the deposition notices are proper, and the motions for protective orders should be denied.

II.    **Movants' Attempt To Quash The Deposition Notices Under the Guise Of Procedural Defects Should Be Rejected.**

    A.    <u>Rule 45 Subpoena</u>:  **The Contention That Claimants' Attorneys, Who Have Served As Officers Of -- And Repeatedly Have Been In Front Of -- This Court Fall Outside This Court's Jurisdiction To Compel Their Attendance At A Deposition Is Without Merit.**

With the sole the exception of the ACC and FCR, all Movants urge that the deposition notices are improper because the law firms are not parties to these proceedings, and, thus, a subpoena is required to compel their attendance at a deposition in this case under Fed.R.Civ.P.

---

12/18/2006 Schonfeld Dep. at 12-13, 36-37, 45-46 (testifying that he either shreds or returns all materials to the attorney or screening company that requested the examination and that no one besides the law firms or screening companies would have maintained the materials); Answers of Non-Party Richard B. Levine, M.D., to Debtors' and Official Committee's Deposition by Written Questions, at 83-84 ("I have not retained copies of ILO and/or B-read reports from my Non-Hospital Based B-Reading Practice as you have defined it.  I returned the reports without making copies to the source or to the person or entity designated by the source … I have not retained copies of any correspondence involving lawyers, law firms, Claimants' Firms and/or screening companies, as you have defined them, related to my Non-Hospital Based B-Reading Practice as you have defined it, concerning asbestos PI Pre-Petition Litigation Claims or Claimants."); 6/26/07 Ltr. from K. Bronson to D. Mendelson at 1 ("With respect to litigation related materials … it was not Dr. Lucas's practice to retain any files provided to him by the law firms that retained him.  Rather, it was his practice to return all files relating to the possible plaintiffs to the law firm following the conclusion of his work.").

45.[11]  That these law firms -- who have served (and continue to serve) as officers of the Court

and have repeatedly appeared before it concerning the precise issues raised by the law-firm

discovery -- now contend that this Court is without jurisdiction to compel their attendance at a

deposition in this case strains credulity.[12]  This Court has voiced disbelief over claims that it

lacks jurisdiction to compel claimants' attorneys to comply with its discovery orders:

> Well, I'm not sure exactly why the Court doesn't have authority
> over a law firm who is an officer of this court to direct that if your
> client has information and you happen to have it in your possession

---

[11]  *See* Motley Rice Mot. at 4-5; Certain Law Firms Mot. at 4-6; MMWR Mot. at 2; Cooney & Conway Mot. at 4-5. That the ACC & FCR's declined to join in this bases for objection is not surprising where counsel for the ACC, Peter Lockwood, had previously voiced his skepticism that claimants' counsel would somehow suggest they were not subject to the jurisdiction of this Court concerning PIQ-related issues. In referencing the requirement that the law firms sign PIQs, Mr. Lockwood intimated that such a position was sanctionable, stating:

> Your Honor, I don't believe Mr. Bernick identified at any point in his status
> report that people were sending back letters to him saying, I'm not going to
> answer your questionnaire because the Court doesn't have jurisdiction over me.
> If that's a problem, I suppose it can be presented with respect to those people,
> and Your Honor can consider what sort of sanction. . . .

3/27/06 Hr'g Tr. at 35.

[12]  The Movants' position is also flatly at odds with the actions of certain law firms who have invoked the procedural stance of parties when it suits their needs. For example, Baron & Budd, P.C., Leblanc & Waddell, LLP, and Silber Pearlman, LLP (collectively, "Baron & Budd"), in asserting there was appellate jurisdiction over their appeal of the Court's Consulting Expert Orders, argued "[u]nder the collateral order doctrine enunciated by the Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), a *party* may seek review of an interlocutory order." *Motion of Baron & Budd, P.C., Leblanc & Waddell, LLP, and Silber Pearlman, LLP to for Expedited Consideration of (i) Motion to Extend Time for Filing Notice of Appeal, and (ii) Motion to Stay Compliance with the Order on Motion to Compel* dated March 26, 2007 [Docket No. 14981] at 3, n.3 (the "Motion to Expedite") (emph. adde). Revealingly, Baron & Budd filed the appeal on behalf of *itself*, apparently without consulting *any* of its clients. *See* 4/13/07 Hr'g Tr. at 44 (Mr. Esserman: "There's nothing in the record about any client communications [regarding the decision to file an appeal], nor would there necessarily be in a situation like this.")  As the Court noted, "this order [compelling discovery] isn't against the law firms, *who are the appellants*[?]" *Id.* at 42-43 (emph. added).

Further, Baron & Budd appealed the Consulting Expert Orders without first being held in contempt, despite the fact that Third Circuit law makes clear non-parties to an action can appeal an interlocutory order only after being cited for contempt. *In re Flat Glass Antitrust Litig.*, 288 F.3d 83 (3rd Cir. 2003) ("Under the collateral order doctrine. . . we have required a nonparty to stand in contempt in order to bring an interlocutory appeal.") Additionally, all of the authority relied upon to support review of the Consulting Expert Orders in the Motion to Expedite addressed the standards for parties to obtain interlocutory review. *See* Motion to Expedite at 3, n.3 (*citing In re Ford Motor Co.*, 110 F.3d 954, 958 (3rd Cir. 1997) (discussing the standards for parties to obtain interlocutory review); *In re Bank of New England Corp.*, 218 B.R. 643, 649 (B.A.P 1st Cir. 1998) (same).

as an agent of your client that you can't be ordered to compel that information. Frankly, *I've never heard that assertion before*.

4/13/07 Hr'g Tr. at 88 (emph. added).

The Court's position is supported by a wealth of cases recognizing court's jurisdiction over the attorneys who practice before it. *See, e.g., Stein v. KPMG, LLP*, No. 06-4358-cv, -- F.3d--, 2007 WL 1487822, at *6 (2d Cir. May 23, 2007) (discussing exercise of court's ancillary jurisdiction over attorney functioning as an officer of the court in litigation over which the court has jurisdiction); *In re Goldstein*, 430 F.3d 106 (2d Cir. 2005) ("A federal court posses certain inherent powers 'to discipline attorneys who appear before it,'" including "the powers to 'police the conduct of attorneys as officers of the court' and to impose sanctions for attorney misconduct.") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000)); *Schlesinger v. Teitelbaum*, 475 F.2d 137, 141 (3d Cir. 1973) ("[I]n its supervisory power over the members of its bar, a court has jurisdiction of certain activities of such members . . .").

These holdings are fully consistent with the Supreme Court's recognition that the attorney and client share identical interests and should be treated as one entity in certain circumstances -- including in discovery. *Cf. Cunningham v Hamilton County*, 527 U.S. 198, 206 (1999) (holding that an attorney could not appeal a discovery sanctions order directed at the attorney until a final order was issued against the client because of the "identity of interests between attorney and client."); *see also Stuart I. Levin & Assoc., P.A. v. Rogers*, 156 F.3d 1135, 1140-42 (11th Cir. 1998) (holding an attorney can be sanctioned for a client's discovery violations).

Moreover, given the Movants' purported concerns about expense, burden, and delays in this case, Grace it at a loss to discern why they would hang an objection on a procedural nicety

17

that, in any event, could be cured -- at additional expense to the Debtors' estate -- via the time

consuming Rule 45 subpoena process. In this manner, Movants' position stands in stark contract

to Federal Rule of Bankruptcy Procedure 1001's mandate that the bankruptcy rules be

interpreted to "secure the just, speedy, and inexpensive determination of every case and

proceeding."[13]

In *New York Marine & Gen'l Ins. Co. v. Tradeline (L.L.C.)*, 186 F.R.D. 317 (S.D.N.Y.

1999), the district court faced a similar situation and lamented on the absurdity of engaging in an

exercise of procedural gymnastics for no apparent reason. The court observed:

> [Movants] argue[s] that the subpoenas are "unenforceable"
> because the relationship between [deponent and the party] is so
> interwoven that [the deponent] "can be treated as a party" and
> therefore Deepak should have proceeded under Rules 30 and 34
> and not under Rule 45. *So why didn't [the parties] simply treat
> the subpoenas as Rule 34 requests (rule 30 deposition notices)?
> Why force the Court to read a motion to quash the subpoenas so
> they can be relabeled?"*

*Id.* at 321 (emph. added). In a similar vein, in this case the question of why the Movants have

forced this Court to read a motion to quash the deposition notices so that they can be relabeled

with the trappings of Rule 45 subpoenas remains unanswered.

Finally, under the Federal Rules of Procedure, "[s]ervice of notice on an attorney for a

party is sufficient to make it incumbent upon that party to appear for a deposition." *See Marriott

Homes, Inc. v. Hanson*, 50 F.R.D. 396, 399-400 (W.D. Mo. 1970); *see also* Fed.R.Civ.P. 5(b).

The implausibility that service on the law firms would be sufficient to compel their clients to

---

[13] Ironically, Movants Motley Rice and the ACC & FCR specifically invoked this very Rule in support of their
motions for protective orders. *See* Motley Rice Mot. at 10-11; ACC & FCR Mot. at 2.

appear for a deposition, ***but not the law firms themselves***, is manifest and offers yet another
reason to reject Movants' Rule 45 argument as a basis for precluding the depositions to proceed.

**B.    Rule 30 Ten-Deposition Limit: Discovery Exceeding The Base-Line Ten
Deposition Limit Is Appropriate Here.**

Movants also invoke Federal Rule of Bankruptcy Procedure 7030(a)(2)(A) in an effort to
stymie Grace's efforts to obtain lawful discovery of the law firms.[14]  This position misconstrues
both the law and the specific facts of this case.  In fact, the Federal Rules are not so limited; the
Court has broad discretion to modify the Federal Rules' base-line deposition limit.  The Court
should do so in this instance, because the requested depositions represent the most efficient -- if
not only -- manner for Grace to obtain discovery directed towards the completeness and
reliability of the ***over 100,000 PIQs*** that have been filed in this case.

The Court has wide discretion to grant a party leave to exceed this limit, upon a
"particularized showing of why the discovery is necessary." *Archer Daniels Midland Co. v.. Aon
Risk Services, Inc.* 187 F.R.D. 578, 586 (D. Minn. 1999); *Whittingham v. Amherst College*, 163
F.R.D. 170, 171-72 (D. Mass. 1995) (holding Federal Rules require a party to make a specific
showing of necessity to take depositions in excess of limit provided).  In deciding whether to
grant leave to exceed this limit, the Court's determination is guided by the principles set forth in
Rule 26(b)(2), which provides that discovery should be limited if it is "unreasonably cumulative
or duplicative," or "the burden or expense of the proposed discovery outweighs its likely benefit"
taking into consideration the needs of the case, the amount in controversy, other methods of
obtaining the information, the importance of the issues to the litigation, and the importance of

---

[14] *See* ACC & FCR Mot. at 2-3; Motley Rice Mot. at 5-6; Certain Law Firms Mot. at 4; Cooney & Conway
Mot. at 4.

this particular discovery tool in resolving the issues. *Commodity Futures Trading Comm'n v. Commodity Inv. Group, Inc.*, No. 05 Civ. 5741(HB) 2005 WL 3030816, at *1 (S.D.N.Y. Nov. 10, 2005), *quoting* F.R.C.P. 26(b)(2).

As outlined above, the necessity, benefits, and import of the discovery sought by these depositions is manifest. Consequently, Grace respectfully requests that the Court grant it leave from Rule 7030(a)(2)(A)'s limits to take these depositions.

## CONCLUSION

For all of the foregoing reasons, Grace respectfully requests this Court deny the Motions for Protective Orders in their entirety.


Dated:  June 15, 2007                           Respectfully submitted,


                                                KIRKLAND & ELLIS LLP
                                                David M. Bernick, P.C.
                                                Ellen Ahern
                                                Janet S. Baer
                                                200 East Randolph Drive
                                                Chicago, IL 60601-6636
                                                Telephone:  (312) 861-2000
                                                Facsimile:  (312) 861-2200

                                                Barbara M. Harding
                                                Amanda Basta
                                                655 Fifteenth Street, NW
                                                Washington, DC 20005
                                                Telephone:  (202) 879-5000
                                                Facsimile:  (202) 879-5200

                                                *and*

                                                PACHULSKI, STANG, ZIEHL, YOUNG, JONES
                                                & WEINTRAUB LLP

                                                ___/s/ James E. O'Neill_____
                                                Laura Davis Jones (Bar No. 2436)
                                                James E. O'Neill (Bar No. 4042)
                                                Timothy P. Cairns (Bar No. 4228)
                                                919 North Market Street, 17th Floor
                                                P.O. Box 8705
                                                Wilmington, DE 19899-8705
                                                (302) 652-4100

                                                Co-Counsel for the Debtors and Debtors in Possession

21