IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**Objection Deadline: July 6, 2007.**
**Hearing Date:  July 23, 2007 at 2:00 pm (ET).**

### DEBTORS' TENTH MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING DEBTORS' EXCLUSIVE PERIODS IN WHICH TO FILE A CHAPTER 11 PLAN AND TO SOLICIT VOTES THEREON

On September 11, 2006, this Court extended the Debtors' exclusive right to file a plan for at least three important reasons, all of which apply today.  First, the Court reasoned that the Debtors could propose a feasible plan within a reasonable time.  Second, the Court understood that all parties agreed that estimation and valuation must be considered prior to any plan being confirmed.  Third, the Court acknowledged that at this point in the case, it is more important for the parties to focus their efforts on resolving the issues of estimation, rather than creating additional fees, expenses, and delay by filing competing plans.[1]  Accordingly, this Court extended exclusivity to the July 2007 omnibus hearing date, or July 23, 2007.[2]

While time has passed, and the Debtors are now before the Court seeking a further extension of exclusivity, nothing has happened to warrant allowing exclusivity to terminate.

---

[1]  9/11/06 Hrg. Tr. at 112 (Dkt. No. 13283).

[2]  Order Pursuant to Bankruptcy Code Section 1121(d) Extending Debtors' Exclusive Periods In which to File a Chapter 11 Plan and To Solicit Votes Thereon dated October 3, 2006 ("Debtors' exclusive filing and solicitation periods for a chapter 11 plan are extended through and including the date of the Court's Omnibus Hearing in July 2007, at which time the Debtors may be heard with respect to a request for a further extension of such periods.") (Dkt. No. 13345).

Indeed, the facts remain largely the same as when this Court last considered the issue: the Debtors can propose a feasible plan within a reasonable time; estimation and valuation must be considered in order to confirm such a plan; and competing plans in advance of the estimation trial will do nothing but add additional fees and expenses and otherwise distract the parties and the Court from the estimation proceedings and related discovery (discovery which has already taken an incredible amount of the parties' and the Court's time and effort). Furthermore, the facts that have changed since September 2006 all weigh in favor of extending exclusivity.

Significantly, the District Court upheld this Court's prior decision to extend exclusivity, holding that this Court did not abuse its discretion in extending exclusivity and finding that cause existed to extend exclusivity for the aforementioned reasons -- reasons which still exist today. In addition, the Debtors have made significant progress in resolving asbestos property damage claims and non-asbestos claims, which is critically important for the plan of reorganization, and which progress weighs in favor of extending exclusivity. Finally, while the estimation trial has been delayed and will not commence until January 2008, such delay is mainly as a result of non-compliance by the plaintiffs' firms in discovery requests and the firms' failure to follow this Court's orders related to same, as opposed to an effort by the Debtors to slow the process. The Debtors have done everything in their power to keep the case focused and moving forward toward the estimation trial. In addition, the Debtors have continued to discharge their obligations to facilitate discussions among the various constituents regarding a consensual resolution of these cases. While the Debtors remain hopeful, there is no further progress to report at this time with regard to a consensual resolution.

Accordingly, the Debtors' request at this time for an extension of the exclusive periods is reasonable and should be granted.

2

## Relief Requested

By this Motion, the Debtors request that this Court (a) extend the exclusive right to file a chapter 11 plan of reorganization under Section 1121(d) of the Bankruptcy Code (the "Exclusive Filing Period") through and including the 90th day after a final order is issued after the personal injury claims estimation trial (the "PI Estimation Trial"), and (b) extend the exclusive right to solicit acceptances of a plan of reorganization under Section 1121(c)(3) of the Bankruptcy Code through and including an additional 60 days thereafter (the "Exclusive Solicitation Period" and together with the Exclusive Filing Period, the "Exclusive Periods.").

## Argument

**I.    This Court Previously Held That Cause Existed To Extend The Exclusive Periods, The District Court Affirmed, And The Facts At This Time Warrant A Further Extension Of The Exclusive Periods.**

Section 1121(d) of the Bankruptcy Code grants this Court authority to extend the Debtors' Exclusive Periods "for cause" after notice and a hearing.[3]  Although Section 1121(d) does not define "cause," the following factors, among others, have been identified by courts as being relevant in determining whether "cause" exists:

- the size and complexity of the case;

---

[3]  Although the term "cause" is not defined by the Bankruptcy Code, the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement." H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1997); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) (quoting H.R. Rep. No. 595, 95th Cong., 2d Sess. 231 (1978), reprinted in 1978, U.S.C.C.A.N. 5963, 6190); and *In re Public Serv. Co. of New Hampshire*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("legislative intent . . . [is] to promote maximum flexibility").

To facilitate this legislative intent, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors. *See, e.g., McLean Indus.*, 87 B.R. at 833-34; *In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987). The decision to extend a debtor's exclusive periods is committed to the sound discretion of the bankruptcy court based upon the facts and circumstances of each particular case. *See, e.g., First Am. Bank of New York v. Southwest Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986).

- the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

- the existence of good faith progress toward reorganization;

- the fact that the debtor is paying its bills as they become due;

- whether the debtor has demonstrated reasonable prospects for filing a viable plan;

- whether the debtor has made progress in negotiations with its creditors;

- the amount of time which has elapsed in the case;

- whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

- whether an unresolved contingency exists.

*See In re Adelphia Commc'ns.*, No. 02-41729, 2006 Bankr. LEXIS 2348 (Bankr. S.D.N.Y. Sept. 19, 2006); *In re Friedman's Inc.*, 336 B.R. 884 (Bankr. S.D. Ga. 2005); *In re Cent. Jersey Airport Servs.*, 282 B.R. 176 (Bankr. D.N.J. 2002); *In re Express One, Int'l.*, 194 B.R. 98 (Bankr. E.D. Tex. 1996).  Courts may also disregard these nine factors altogether and simply determine whether terminating exclusivity will move the case forward.  In *Adelphia*, 2006 Bankr. LEXIS 2348, at *30-32, the court, after applying the nine factors, also stated, "It has been held that the primary consideration for the court in determining whether to terminate the debtor's exclusivity is whether its termination will move the case forward, and that this 'is a practical call that can override a mere toting up of the factors.'"  *Id.* (citing *In re Dow Corning, Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997)).

The choice of pertinent factors depends largely upon the factual nature of the case before the court.  It is within the discretion of a bankruptcy court to decide which factors are relevant and give the appropriate weight to each.  As long as a bankruptcy court does not abuse its discretion, its decision will be affirmed.  *In re Hoffinger Indus., Inc.*, 292 B.R. 639 (B.A.P. 8th Cir. 2003).  Thus, a bankruptcy court faced with the issue of whether the necessary "cause"

4

exists to extend the exclusivity period has a high degree of flexibility in fashioning the appropriate test to be applied, and is not required to apply any particular set of factors, or number of factors in every case. *See In re The Elder-Beerman Stores, Corp.*, No. C-3-97-175, 1997 U.S. Dist. LEXIS 23785 (S.D. Ohio June 23, 1997).

In the prior hearing on exclusivity, this Court recognized that, while these cases are old, "age, in and of itself, is not the only factor that this Court has to consider, especially given the complexities of the case . . ."[4]  This Court then explained some of the complexities of the case that demonstrate cause for an extension of exclusivity:

> the very different ideas of how to resolve the case that have been articulated on the record of various hearings by different parties, the uncertainties that have arisen post-petition, such as the criminal indictment, the New Jersey environmental claim that is a decade old or longer, and the other matters that have added layers of complexity beyond those that have existed in some of the other asbestos bankruptcies even.[5]

The Court also focused on "what's the current lay of the land" and whether it appears that "the debtor can propose a plan that is feasible and within a reasonable time."[6]  The Court answered "yes;"[7] that is, it recognized that the Debtors will be able to file a feasible plan in a reasonable time once the PI Estimation Trial is concluded.

In addition, the Court understood that the key to resolving the chapter 11 cases still lies ahead: "[a]s all parties have articulated and agreed, the major issues of estimation and valuation

---

[4]    9/11/06 Hrg. Tr. at 111.

[5]    *Id.*

[6]    *Id.* at 112.

[7]    *Id.*

must be considered by all parties prior to any plan being confirmed by the Court."[8]  Furthermore, this Court then considered whether competing plans would add value and concluded that "[a]t this point in this case it is more important for all parties to focus their efforts on resolving the outstanding issues, than in creating additional fees and expenses for the estate by requiring the filing or redoing or doing of competing plans."[9]  In short, the Court carefully reasoned that exclusivity should be extended to allow the parties to negotiate, and to allow solvency and estimation issues to be resolved.  The Court understood, and all of the parties agreed, that no plan filed without such issues resolved could be confirmed, absent consensual resolution between all constituents.

Moreover, the District Court agreed and affirmed this Court's order extending the Debtors' Exclusive Periods.[10]  The District Court held that this Court's findings related to the PI Estimation Trial, the complexity of the cases, and the negative effects of a competing plan process constituted good cause to extend exclusivity,[11] and the District Court found no abuse of discretion by this Court in extending the Exclusive Periods.

## A.    The PI Estimation Trial Is Still The Key To Resolving These Chapter 11 Cases

The PI Estimation Trial remains the key event in these chapter 11 cases, and the following points are undisputed:

---

[8]    *Id.*

[9]    *Id.*

[10]   1/23/07 District Court Order Affirming 10/3/06 Bankruptcy Court Order Extending Exclusivity.

[11]   *Id.* at 2.

6

- Estimation of the personal injury claims is required for the confirmation of any contested plan;

- While a completely consensual plan is always the most desirable alternative, extensive negotiations thus far have foundered on disagreements over the extent of the estimated asbestos liability; and

- The work necessary to conduct the estimation is far advanced.

Absent a consensual deal among all constituents, this Court must decide what has always been a fundamental issue in these cases -- the extent of the Debtors' actual legal liability on account of asbestos claims.  The Debtors have urged from the very beginning of the cases that a merits-based assessment of the asbestos-related personal injury claims must take place, and the estimation of the asbestos-related personal injury claims will assist the Debtors in determining their liability and formulating a confirmable plan.

### B.    Competing Plans Will Not Advance Resolution Of The Chapter 11 Cases

Competing plans will only distract the parties and the Bankruptcy Court and, additionally, create yet more litigation.[12]  For example, in *Babcock & Wilcox*,[13] another recent asbestos-related chapter 11 case, competing plans were filed in May through July 2002,[14] yet the case did not confirm until January 17, 2006, nearly three and a half years after the competing plans were filed, and the confirmed plan did not resemble any of the plans filed in 2002.[15]  The

---

[12]  As discussed below, even in the absence of competing plans, there were *24* hearings held before this Court after the last exclusivity hearing in September 2006, which required countless hours of this Court's and the parties' time and effort.

[13]  *In re The Babcock & Wilcox Co.*, Case No. 00-10992 (Bankr. E.D. La. Feb. 22, 2000).

[14]  *In re The Babcock & Wilcox Co.*, Case No. 00-10992 (Bankr. E.D. La. Feb. 22, 2000), Dkt. Nos. 3148 and 3316 (Debtors' 2002 Plans) and Dkt. No. 3320 (asbestos constituents' plan).

[15]  *In re The Babcock & Wilcox Co.*, Case No. 00-10992 (Bankr. E.D. La. Feb. 22, 2000), Dkt. No. 7059 (Confirmed Plan dated September 28, 2005 as modified).

Debtors suspect that various other constituents including the PI Committee and FCR want to file a competing plan that presumes the Debtors' insolvency, in order to send a message to the marketplace that the Debtors appear substantially insolvent, thereby eroding the Debtors' stock price and, in turn, possibly weakening the equity holders' ability to negotiate effectively. However, the argument that the Debtors are insolvent, without more, does not suffice. Rather, it is through the PI Estimation Trial and other asbestos claims litigation that this issue will be resolved.

Lifting exclusivity will not advance formulation of a confirmable plan of reorganization and a quicker exit from Chapter 11. The other constituents in these cases could not confirm a plan without incorporating the results from the PI Estimation Trial. Indeed, the parties in these cases cannot dispute that an estimation proceeding is, in all events, necessary.[16] The PI Committee even conceded that "absent consent, a plan cannot be confirmed without a determination of the Debtors' solvency."[17] There has been no insolvency determination, and a plan that purported to eliminate the interests of the equity holders could not be confirmed unless or until such insolvency determination is made. The PI Estimation Trial that will commence in early 2008 is at the core of any solvency determination. Accordingly, exclusivity should be extended to allow the results from the PI Estimation Trial to be incorporated into a plan of reorganization.

---

[16]  9/11/06 Hrg. Tr. at 67, 112.

[17]  Supplemental Objection of FCR, PI Committee, and PD Committee to Debtors' Ninth Motion For Order Extending Exclusivity, dated July 7, 2006, at 3 (Dkt. No. 12756).

**II.    The Debtors Have Made Significant Progress On Various Fronts In The Cases, Which Weighs In Favor Of Extending The Exclusive Periods.**

In addition to the unchanged facts above, it is significant to note the changed facts that weigh in favor of extending the Exclusive Periods, namely, that the Debtors are making progress in these cases on various fronts.

**A.    Property Damage Claims**

One such front in which the Debtors have made significant progress recently involves the property damage "PD" claims.

From the beginning of these cases, the Debtors sought to define the scope of any liability for asbestos property damage claims. This Court set March 31, 2003 as the last date for filing proofs of claim for all pre-petition claims relating to (i) asbestos property damage; (ii) non-asbestos claims and (iii) medical monitoring claims (the "Non-PI Bar Date Order"). Pursuant to the Non-PI Bar Date Order, 4,042 asbestos property damage claims were filed, 2975 of them by one firm, Speights & Runyan.

On September 1, 2005, the Debtors filed objections to 4002 property damage claims on various grounds. This Court conducted a series of hearings over the course of the next year, and focused on adjudicating the property damage claims objections sequentially. The number of claims ultimately was reduced to 656 by August 2006. Thereafter, the Court entered a series of PD case management orders setting deadlines for fact and expert discovery and summary judgment motions, for the 656 then-pending PD claims.

In October and December 2006, certain PD claims were withdrawn. From December 2006 through February 2007, the parties submitted expert reports and deposed experts. On February 16, 2007, Debtors filed several motions for summary judgment on more than 300 then-pending PD claims on the basis, *inter alia*, of the expiration of applicable limitations periods,

9

statutes of repose, lack of product identification and certain matters specific to claims in Libby, Montana. In March 2007, claimants responded to these motions, and the Debtors filed replies.

Also in March 2007, the Debtors announced to the Court settlements-in-principle for approximately 265 PD claims, and since that time, a number of additional settlements-in-principle have been reached, so that there are now approximately 270 PD claims settled in principle. The Debtors filed the first motions for approval of some of these settlements in May, and these approval motions are scheduled to be heard by the Court at the June 25, 2007 omnibus hearing.

The Court heard arguments on Debtors' summary judgment motions on April 9, 2007. As a result of the April 9th summary judgment arguments, shortly thereafter the Court expunged approximately 70 PD claims. On April 17, 2007, the Court expunged 71 PD claims filed by the Speights & Runyan firm without authority from the claimants. On June 11, 2007, the Court approved stipulations withdrawing additional claims. The net result of all of the withdrawals and expungements of PD claims from August 2006 to the present is that there are 483 remaining, active PD claims, of which 268 are subject to settlements-in-principle and 215 are not -- a substantial decrease in PD claims from the 656 active claims in August 2006.

In sum, the Debtors made significant progress in resolving the great majority of the PD claims. Progress of this magnitude illustrates how hard the Debtors are working to move the case forward and take the necessary steps to file a feasible, confirmable plan.

**B.    ZAI Claims**

As part of the original June, 2001 CMO request, the Debtors sought approval of a detailed proof of claim form and bar date notice program for property damage claims involving one of the Debtors' specific products: Zonolite Attic Insulation ("ZAI"). The Debtors' approach

10

was opposed by the ZAI claimants, who favored class-certification. The matter was litigated in this Court. Since no ZAI claims had ever been tried to judgment and the whole theory of ZAI liability was relatively new at the time the Debtors filed their chapter 11 cases, the Court decided that the first order of business should be to receive scientific evidence on whether ZAI creates any unreasonable risk of harm.[18]

On December 14, 2006, the Court issued its Memorandum Opinion and Order granting in part the Debtors' Motion for Summary Judgment, finding that ZAI poses no unreasonable risk of harm.[19] Specifically, the Court found that there is no dispute regarding the fact that ZAI is contaminated with asbestos and can release asbestos fibers when disturbed during foreseeable homeowner activities. However, the Court went on to find that any such contamination was not sufficient to constitute an unreasonable risk of harm. The ZAI claimants filed a notice of appeal[20] and a motion for leave to appeal this Court's December 14th Order.[21] The District Court denied the ZAI claimants' motion for leave to appeal.[22] Subsequently, the ZAI claimants filed a motion for reconsideration, which was also denied.[23]

---

[18]  3/18/02 Hrg. Tr. at 84-88, 116-118 (Dkt. No. 1912), 4/22/02 Hrg. Tr. at 11-17 (Dkt. No. 2057).

[19]  12/14/06 Memorandum Opinion (Dkt. No. 14014) and Order (Dkt. No. 14015).

[20]  Notice of Appeal, dated December 22, 2006 (Dkt. No. 14140).

[21]  Motion for Leave to Appeal Bankruptcy Court's Order Resolving Motions for Partial Summary Judgment, Cross Motions for Summary Judgment, and Scheduling a Status Conference, Entered in these Cases on December 14, 2006 (Dkt. No. 14147).

[22]  District Court Order Denying Leave to Appeal, dated March 27, 2007 (as entered on Bankr. Ct. Dkt. No. 14985).

[23]  District Court Order Denying Motion for Reconsideration, dated April 19, 2007, Case No. 07-MC-0005 (District Ct. Dkt. No. 16).

### C.    Non-Asbestos Claims

Pursuant to the Non-PI Bar Date Order, approximately 14,900 proofs of claim were filed timely and approximately 800 additional claims were filed untimely.    Of these claims, approximately 5,500 were asbestos-related and approximately 7,000 were non-asbestos, protective claims filed by the Debtors' employees and former employees.[24]    To date, the Debtors have filed a total of 23 Omnibus Objections to large groups of claims and several other objections to specific claims.    Of these omnibus objections, 21 were aimed at the approximately 3,200 non-employee, non-asbestos claims and two were aimed at the PD Claims.

The Debtors have been making progress adjudicating these claims over time.    Since September 2006, the Debtors have made significant progress in adjudicating these claims.    As of June 1, 2007, approximately 2,900 non-asbestos claims have been resolved leaving only approximately 348 open and unresolved non-asbestos claims, some of which are duplicate claims filed against more than one Debtor.

### III.    Progress With Respect To Asbestos PI Claims Was Stalled Due to Plaintiffs' Firms' Failure To Answer The Questionnaires, Provide X-Rays, And Otherwise Comply With Court-Ordered Discovery.

Exclusivity should not be terminated simply because the estimation trial was adjourned from June 2007 to January 2008.    The adjournments were largely the result of the failure of the pending asbestos personal injury claimants and their attorneys to comply with court-ordered

---

[24]    Pursuant to the Debtors' Amended Plan that has previously been filed, the Debtors' various pension plans and related employee benefit plans will be assumed by the Debtors and passed through to the reorganized entities for payment as the obligations become due.  The Debtors do not anticipate changing this treatment under any subsequently filed amended plan of reorganization.  As a result, these claims will be disallowed under a confirmed plan.

discovery that is central to the estimation process.[25]  In November of 2004, the Debtors first

moved this Court for an order authorizing the Debtors to serve questionnaires on asbestos

personal injury claimants.  After extensive litigation, on August 29, 2005, the Court ordered that

all holders of *pre-petition* asbestos personal injury litigation claims complete the questionnaire.[26]

By the adjusted July 12, 2006 deadline, approximately 60,500 of 179,000 questionnaires had

been returned.[27]

Regretfully, the great majority of the questionnaires returned merely recited broad

objections rather than providing information requested; this, despite the fact that this Court had

already examined each and every one of the questions and ruled that they were all appropriate

and relevant.[28]  Thus began several more rounds of litigation over the questionnaires, this time

with additional claimants' counsel joining in.

On August 24, 2006, this Court entered an order setting a bar date for the filing of proofs

of claims[29] by all holders of asbestos personal injury claims who (1) had commenced suit against

---

[25]   In addition, at a May 8, 2007 hearing, the Court expressed concern that if the trial commenced in September, as
proposed by the parties, it could run into the holidays; thus the Court suggested that the trial commence in early
2008. *See* 5/8/07 Hrg. Tr. at 209-210 ("I am hesitant to get stuck over the Thanksgiving, Christmas, New Year
holiday, because I know what will happen, some or all of us won't be available for major periods of time over
that time frame) (Dkt. No. 15786).  Accordingly, the PI Estimation Trial commences on January 14, 2008.  The
dates continue in March and conclude in April 2008.

[26]   Case Management Order for Estimation of Asbestos Personal Injury Liabilities, dated August 29, 2005 (Dkt.
No. 9301).

[27]   After the bar date and supplementation processes were completed, approximately 30,000 additional
questionnaires were received.  In the aggregate, there were questionnaires for 79,100 claims that matched the
Debtors' historical database and for which the claimants also submitted proofs of claim.

[28]   4/17/06 Hrg. Tr. at 26-28 (Dkt. No. 12299).

[29]   Order as to All Prepetition Asbestos PI Litigation Claims, Including Settled Claims, (I) Establishing Bar Dates;
(II) Approving Proof of Claim Form; and (III) Approving Notice of Prepetition Asbestos Personal Injury
Claims Bar Date, dated August 24, 2006 (Dkt. No. 13061).

the Debtors prior to the filing of the chapter 11 case or (2) held asbestos personal injury claims against the Debtors that had been settled prior the petition date but remained unpaid.

The Court also conducted two hearings on September 11, 2006 and September 25, 2006 to again resolve the issues raised by the objections to the questionnaires. Thereafter, guided by the Court's suggestions, the Debtors filed motions to compel with respect to over 50,000 claimants represented by approximately a dozen law firms, in order to frame for decision problems found universally in almost all of the responses to the questionnaires. The Court held a hearing on all such motions on December 5, 2006, and on December 22, 2006, it ordered that all questionnaires be appropriately supplemented by January 12, 2007, one year exactly after the original due date for the return of the questionnaires as set forth in the original PI CMO.[30]  Thus, it seemed as though the prospect of receiving properly completed questionnaires finally was in immediate sight, although at least some firms sought extensions beyond the January deadline for submitting the questionnaires.[31]

The plaintiffs' bar, however, continued to openly flout duly entered orders from this Court, and failed to answer various questions set forth on the questionnaires. For example, in the questionnaires, each claimant was asked to provide their B-reads, but for thousands of claimants, no B-reads were provided.[32]   At a April 13, 2007 hearing before this Court, the Debtors explained that they had to file motions to compel on each individual claim, and what they

---

[30]  Order Regarding Motions to Compel Claimants to Respond to the W.R. Grace & Co. Asbestos Personal Injury Questionnaire, Dec. 22, 2006 (Dkt. No. 14149); Supplemental Order Regarding Motions to Compel Claimants to Respond to the W.R. Grace & Co. Asbestos Personal Injury Questionnaire, Dec. 22, 2006 (Dkt. No. 14150).

[31]  *See, e.g.,* 12/18/06 Hrg. Tr. at 39 (granting extension to end of February for Litman firm) (Dkt. No. 14205).

[32]  4/13/07 Hrg. Tr. at 39 (Dkt. No. 15270).

14

received were blanket objections with no individual objections.[33]   In addition, at that time, a number of firms failed to produce any responses whatsoever for claimants whom they represented.[34]   Indeed, this Court observed that "this has been going on for a year . . . and by now, frankly, they should have been produced."[35]

Another issue that arose with the questionnaires was the use of attachments.  Very few claimants were answering key questions on the face of the questionnaire.  Instead, they were referring to attachments which included documents such as voluminous medical records and discovery responses from other cases.  As a result, as early as February 6, 2006, only a couple of weeks after the original deadline for submitting questionnaires, the Debtors sent a letter to all claimants' counsel indicating that supporting documentation may not be submitted in lieu of answering the questions on the face of the questionnaire.  The Debtors also brought the attachment problem to the Court's attention on numerous occasions including their March 20, 2006 Status Report;[36] the June 19, 2006 omnibus hearing;[37] and their July 17, 2006 Motion to Compel,[38] which was extensively briefed.

On October 12, 2006, the Court issued an Order (the "Attachment Order") indicating that claimants could submit responses by means of attachments *only if* very strict requirements were

---

[33]   *Id.* at 39-40; 54-55.

[34]   *Id.* at 60.

[35]   4/13/07 Hrg. Tr. at 74-75.

[36]   Debtors' Status Report Regarding Completion of the W.R. Grace Personal Injury Questionnaire, dated March 20, 2006 (Dkt. No. 12093).

[37]   6/19/06 Hrg. Tr. at 27-29 (Dkt. No. 12717).

[38]   Motion to Compel Asbestos Personal Injury Claimants to Respond to Questionnaire, dated July 17, 2006 (Dkt. No. 12823).

91100-001\DOCS_DE:128397.1

followed, including that all responses reference clearly the specific page of the attachment where a specific answer was located.[39]   The Court provided all claimants until January 12, 2007 to supplement their responses to the questionnaires to comply with the Attachment Order.[40] Despite the Attachment Order, only one firm made any attempt to comply.   That was the Motley Rice firm who provided excel spreadsheets that attempted to tie its voluminous attachments to the questionnaire responses.   However, the information was so minimal that the PI Committee told the Debtors to not bother inputting it into the navigable database prepared for the PI Estimation Trial.   Accordingly only 1,208 claimants of the approximately 79,000 relevant questionnaires that were returned actually complied with the Court's Orders and provided clearly ascertainable answers to the questions on the face of the questionnaires.[41]   As a result of this non-compliance, the Debtors had to hire other experts for the purpose of coding attachments.   And, due to the way the attachment information was provided, it has been very difficult to ascertain whether responses to key questions were actually provided in many instances.   Thus, the Debtors' ability to review this information and provide relevant and responsive information to their estimation experts was greatly slowed.

Law firms' non-compliance continued, and the Debtors were back before this Court in May 2007 seeking the information that was contained in the questionnaires.   The Debtors emphasized that they had been trying to get the information from law firms for approximately *20*

---

[39]   Order Concerning Debtors' Motion to Compel Asbestos PI Claimants to Respond to the W.R. Grace Asbestos Personal Injury Questionnaire, dated October 12, 2006 (Dkt. No. 13393).

[40]   *Id.*

[41]   5/8/07 Hrg. Tr. at 16-17 (Dkt. No. 15786)

*months*, without success in many instances.[42]  In fact, as of May 8, 2007, only approximately 1 -

2% of the questionnaires were completed properly.[43]

On a parallel track, certain claimants were ordered to provide original or certified copies

of chest x-rays.  After receiving and reviewing the initial questionnaires, it appeared that

approximately 9,457 claimants were alleging non-mesothelioma malignancy claims.  The

Debtors identified approximately 5,439 claimants who alleged that they had radiological

evidence to support their contention that their cancer was attributable to asbestos.  The Debtors

sent a letter to counsel for such claimants requesting the claimants provide the radiological

evidence to Grace for review.  On December 22, 2006, this Court entered an Order requiring the

production of this x-ray evidence.[44]  Supplemental Orders were entered on February 20, 2007[45]

and June 6, 2007.[46]  The Debtors were never able to obtain all of the x-rays requested.

Ultimately, the Court set a cut-off for the submission of such materials which prohibits the use

by either side at trial of x-ray evidence not produced by the cutoff.[47]  The Debtors and their

experts are completing the x-ray review of the material submitted.  While the orders were clear,

again and again the Debtors had to come before this Court to seek compliance with the Court's

orders.  As of May 8, 2007, only half of the claimants who were required to supply x-rays

---

[42]   *Id.* at 18.

[43]   *Id.*

[44]   Order Regarding X-Ray Evidence, dated December 22, 2006 (Dkt. No. 14148).

[45]   Order (Supplemental) Regarding Production of X-Rays by Non-Mesothelioma Cancer Claimants, dated February 20, 2007 (Dkt. No. 14608).

[46]   Order (Supplemental) Regarding Production of X-Rays by Non-Mesothelioma Cancer Claimants, dated June 6, 2007 (Dkt. No. 15968).

[47]   *Id.*

actually supplied their x-rays and answered that asbestos caused their cancer -- a required response.[48]

In addition, the Debtors have faced resistance on many occasions involving third party discovery.  Beginning in November, 2005, the Debtors embarked on an aggressive discovery schedule to obtain information from diagnosing doctors, screening companies and other asbestos trusts regarding the methods by which diagnoses were performed, the veracity of the doctors and screeners who submitted information in support of the claimants' claims, the existence of information about the claimants not otherwise provided in the questionnaires and other relevant information about the claimants and their claims alleged against the Debtors.  Like their efforts with respect to obtaining full responses to the questionnaires, this discovery has also been met with extreme resistance from the PI Committee, claimant's counsel and the third party discovery targets, necessitating litigation over several motions for protective orders.  In addition, in some instances the deponents have asserted their Fifth Amendment rights against self incrimination.  To date, most of the discovery from the doctors and screeners is complete.  The other asbestos trust discovery, however, is ongoing, and the Debtors expect they will have to file motions to compel since some trusts have not been cooperative.

In short, instead of providing real, empirical evidence of the Debtors' asbestos liabilities, the PI Committee and claimants' counsel resisted the Debtors' discovery at every turn even where this Court ordered certain discovery be provided.  From the time of the last exclusivity hearing to June 2007, the Debtors appeared at *24* hearings before this Court, which resulted in *over 3,300 pages of transcripts* -- a substantial portion of which relate to failure to comply with

---

[48]   5/8/07 Hrg. Tr. at 19-20.

18

discovery requests.  Suffice to say, these parties held the estimation process hostage for nearly two years, forcing the Debtors to fight to get discovery that they will need in order to prepare for the PI Estimation Trial.  Terminating exclusivity would reward the plaintiffs' bar for its obstreperous behavior.  Such gamesmanship should not be rewarded.  Furthermore, irrespective of the reasons for the short delay in commencing the PI Estimation Trial, the parties are on track to commence in January 2008, and terminating exclusivity prior to that time will not get this case to the finish line any faster for the reasons discussed above.

**Notice**

Notice of this Motion has been given to (a) the Office of the United States Trustee, (b) counsel to the debtor-in-possession lenders, (c) counsel to the committees appointed by the United States Trustee, and (d) those parties that requested papers under Fed. R. Bankr. P. 2002.

WHEREFORE, the Debtors respectfully request that the Court enter an order: (a) extending the Debtors' Exclusive Filing Period through and including the 90th day after a final order is issued in the PI Estimation Trial; (b) extending the Debtors' Exclusive Solicitation Period through and including an additional 60 days thereafter; and (c) granting such other relief as may be fair and equitable.

Dated:  June 18, 2007

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Theodore L. Freedman
Janet S. Baer
Deanna D. Boll
153 East 53rd Street
New York, NY 10022
Telephone: (212) 446-4800
Facsimile:  (212) 446-4900

and

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP


Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, DE  19801
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400


Co-counsel for Debtors and Debtors in Possession