# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**ORDER (A) APPROVING THE AGREEMENT BY AND BETWEEN W. R.
GRACE & CO.-CONN. AND RHODIA INC.; (B) AUTHORIZING THE SALE
OF CERTAIN ASSETS OF W. R. GRACE & CO.-CONN.'S WASHCOAT BUSINESS
TO RHODIA INC. FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES
AND OTHER INTERESTS; (C) AUTHORIZING THE ASSUMPTION AND
ASSIGNMENT TO RHODIA INC. OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES; AND (D) GRANTING CERTAIN RELATED RELIEF**

This matter coming on to be heard on the motion[2] dated June 18, 2007 [Docket

No. _____ ] (the "Sale Motion") of W. R. Grace & Co.-Conn., as debtor and debtor in

possession (the "Selling Debtor" and together with the other above-captioned debtors, the

---

[1]  The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.),
W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon,
Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc.,
Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC
(f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a
Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC
Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities
Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary
Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe,
Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc.
(f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace
Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc.,
W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-
Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai
Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH,
Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings
Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA
Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental
Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin &
Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country
Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]  Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the
Agreement (as defined below) and the Sale Motion, and to the extent of any inconsistency, the Agreement shall
govern.

"Debtors") for entry of an order (i) approving the Washcoat Sale Agreement, dated June ___, 2007 between the Selling Debtor and Rhodia Inc. (the "Buyer") appended hereto as Exhibit A (the "Agreement" and, together with all related exhibits, attachments and ancillary agreements, the "Sale Documents");[3] (ii) authorizing the sale of certain assets (the "Acquired Assets") to the Buyer free and clear of all Liens, claims, and other interests in accordance with the terms and conditions set forth in the Agreement; (iii) authorizing the assumption by the Selling Debtor and the assignment to the Buyer of certain related executory contracts and unexpired leases including the Real Property Lease (the "Transferred Contracts"); (iv) taking effect immediately by virtue of this Court waiving the 10-day stay under Bankruptcy Rules 6004(h) and 6006(d); and (v) granting certain related relief (collectively, the "Sale Order"); the Selling Debtor having executed the Agreement; a hearing on the Sale Motion having been held on July 23, 2007 (the "Sale Hearing"); all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; and it appearing that the Court has jurisdiction over this matter; the Court having reviewed and considered (i) the Sale Motion, (ii) the objections thereto, if any, and (iii) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; it appearing that the relief requested in the Sale Motion and approval of the Sale to Buyer of the Acquired Assets, including the Selling Debtor's assumption and assignment to Buyer of the Transferred Contracts, is in the best interests of the Selling Debtor, its affiliates, their estates, creditors and other parties in interest; and based on the Sale Motion, the statements of counsel, the record of the Sale Hearing and the record in these cases; and after due deliberation thereon; and good cause appearing therefore, it is hereby

---

[3]     Due to their voluminous and/or confidential and proprietary nature, the exhibits and schedules to the Agreement are intentionally omitted from Exhibit A.

FOUND AND DETERMINED THAT:[4]

## Jurisdiction, Final Order and Statutory Predicates

A.      This matter is a core proceeding within the meaning of 28 U.S.C.

§ 157(b)(2) and this Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 over the Sale

Motion and each of the transactions contemplated by the Sale Documents (collectively, the

"Sale").  Venue of this proceeding and the Sale Motion in this district is proper under 28 U.S.C.

§§ 1408 and 1409.

B.      This Sale Order constitutes a final and appealable order within the

meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to

any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil

Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is

no just reason for delay in the implementation of this Sale Order, and expressly directs entry of

judgment as set forth herein.

C.      The statutory predicates for the relief requested in the Sale Motion are

sections 105(a), 363(b), (f), (m) and (n), and 365 of the United States Bankruptcy Code,

11 U.S.C. §§ 101 *et seq.* as amended (the "Bankruptcy Code"), Rules 2002(a)(2), 6004(a), (b),

(c), (e), (f) and (h), 6006(a), (c) and (d), 9006 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rules 2002-1(b) and 9006-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware.

---

[4]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

### Notice of the Sale and Cure Amounts

D.    Actual written notice of the Sale Hearing, the Sale Motion, the Sale and the assumption and assignment of the Transferred Contracts, and a reasonable opportunity to object or to be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested parties and entities, including, but not limited to:  (i) the U.S. Trustee; (ii) counsel to the Committees and the FCR; (iii) counsel to the administrative agents for the Debtors' prepetition secured lenders; (iv) counsel to the Debtors' postpetition lenders; (v) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (vi) the Buyer and its counsel; (vii) all persons or entities known or reasonably believed to have asserted a Lien on any of the Acquired Assets; (viii) federal, state and local taxing authorities who have a reasonably known interest in the relief requested by this Motion; (ix) the counterparty to each of the Transferred Contracts; (x) all persons or entities known or reasonably believed to have expressed an interest in acquiring assets of the Selling Debtor that are used in its Washcoat business unit (the "Washcoat Business"); and (xi) the United States Attorneys for the Districts of Delaware, Ohio and Maryland.

E.    As evidenced by the affidavits of service and publication previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate and sufficient notice of the Sale Motion, the Sale Hearing, and the Sale, including, without limitation, the assumption and assignment of the Transferred Contracts, has been provided in accordance with sections 102(1), 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Bankruptcy Rules, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Sale Motion, the Sale Hearing or the Sale, including, without limitation, the assumption

and assignment of the Transferred Contracts and the proposed cure amounts, is or shall be required.

F.    The Selling Debtor published notice of the Sale Motion, the Sale, and the time and place of the Sale Hearing in the National Edition of <u>The Wall Street Journal</u> and <u>Cincinnati Enquirer</u> on June ___, 2007.

G.    The Selling Debtor has served notice of the Cure Amounts (as such term is defined below) upon each non-debtor counterparty to the Transferred Contracts that the Selling Debtor seeks to assume and assign to the Buyer on the Closing Date.  The service of such notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing a Cure Amount for the respective Transferred Contracts.  Non-debtor counterparties to the Transferred Contracts have had an opportunity to object to the Cure Amount set forth in the notice.

H.    The disclosures made by the Selling Debtor concerning the Sale Documents, the Sale, and the Sale Hearing were good, complete and adequate.

### Good Faith of Buyer

I.    The Buyer is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

J.    The Agreement and each of the other Sale Documents were negotiated, proposed and entered into by the Selling Debtor and the Buyer without collusion, in good faith, and from arm's length bargaining positions.  Neither the Selling Debtor nor the Buyer has engaged in any conduct that would cause or permit all or any part of the Sale or any obligation of the Selling Debtor under the Sale Documents to be avoided under section 363(n) of the Bankruptcy Code.

K.      The Buyer is a good faith Buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (a) the Buyer recognized that the Selling Debtor was free to deal with the other potential party interested in acquiring the Acquired Assets; (b) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (c) Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (d) no common identity of directors or controlling stockholders exists between the Buyer and the Selling Debtor; and (e) the negotiation and execution of the Agreement and other Sale Documents related thereto was at arm's-length and in good faith.  The Buyer will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Sale.

### Highest and Best Offer

L.      The Selling Debtor has thoroughly and effectively marketed the Washcoat Business for sale in an appropriate manner that was designed to maximize the value received by the Selling Debtor for its Washcoat Business.

M.      The consideration provided by the Buyer pursuant to the terms of the Sale Documents:  (i) is fair and reasonable, (ii) is the highest and otherwise best offer for the Acquired Assets, and (iii) will provide a greater recovery for the Selling Debtor's estate than would be provided by any other available alternative.

N.      The Selling Debtor's determination that the Sale Documents constitute the highest and best offer for the Acquired Assets, including the Transferred Contracts, constitutes a valid and sound exercise of the Selling Debtor's business judgment pursuant to section 363(b) of the Bankruptcy Code.

O.    Approval of the Sale Motion and the Sale Documents and the consummation of the Sale contemplated thereby at this time are in the best interests of the Selling Debtor, its affiliates, their creditors, their estates and other parties in interest.

P.    The Selling Debtor has demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

Q.    No consents or approvals, other than those expressly provided for in the Agreement, are required for the Selling Debtor to consummate such Sale.

### No Fraudulent Transfer

R.    The Purchase Price constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state territory, possession or the District of Columbia.

### Validity of Transfer

S.    The Sale has been duly and validly authorized by all necessary corporate action of the Selling Debtor, who has full corporate power and authority to execute and deliver the Agreement and each of the other Sale Documents.  Except as expressly set forth therein, no further consents or approvals are required for the Selling Debtor to consummate the Sale contemplated by the Sale Documents.

T.    On the date of closing of the Agreement (the "Closing Date"), the Selling Debtor's transfer of the Acquired Assets, including its assumption and assignment to the Buyer of the Transferred Contracts, will be a legal, valid and effective transfer that, except for the Transferred Liabilities and any Permitted Exceptions, will vest the Buyer with all of the Selling Debtor's rights, title, and interests free and clear of all Liens, claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and

matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Interests"), including but not limited to those (i) arising under doctrines of successor liability, (ii) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal or termination of the Selling Debtor's or the Buyer's interest in such assets or contracts, or any similar rights and/or (iii) that relate to taxes arising under or out of, in connection with, or in any way relating to the operation of the Washcoat Business prior to the Closing Date.

   U. The Buyer would not have entered into the Agreement and would not consummate the Sale contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if the transfer of the Acquired Assets were not, except for the Transferred Liabilities and any Permitted Exceptions, free and clear of all Interests of any kind or nature whatsoever, or if the Buyer would, or in the future could, be liable for any of the Interests.

**Section 363(f) is Satisfied**

   V. The Selling Debtor may sell the Acquired Assets free and clear of all Interests (other than Permitted Exceptions and Transferred Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those nondebtor parties with Interests in the Acquired Assets who did not object, or who withdrew their objections, to the Agreement, the Sale or the Sale Motion are deemed to have consented pursuant to sections 363(f)(2) and 365 of the Bankruptcy Code. Those nondebtor parties with Interests in the Acquired Assets who did object fall within one or more of the other subsections of sections 363(f) and 365 of the Bankruptcy Code and are not entitled to adequate protection or are adequately protected by having their Interests, if any, attach to the

cash proceeds of the Sale ultimately attributable to the property against or in which they claim an interest.

W.     Except as expressly set forth in the Agreement, the transfer of the Acquired Assets to the Buyer shall in no way impose any liability or obligation upon the Buyer for Interests related to the Selling Debtor's operation of the Washcoat Business or use of the Acquired Assets. The Buyer shall not be deemed, as a result of any action taken in connection with the purchase of the Acquired Assets or the assignment of the Transferred Contracts, to: (i) be a successor (or other such similarly situated party) to any of the Debtors (other than with respect to the Transferred Liabilities and any obligations arising under the Transferred Contracts from and after the Closing Date as expressly stated in the Agreement); or (ii) have, *de facto* or otherwise, merged with or into any of the Debtors. The Buyer is not acquiring or assuming any liability, warranty or other obligation of the Debtors, except as expressly set forth in the Agreement with respect to the Transferred Liabilities.

X.     Except for the Transferred Liabilities, the transfer of the Acquired Assets to the Buyer, including the Selling Debtor's assumption and assignment to the Buyer of the Transferred Contracts will not subject the Buyer to any liability whatsoever with respect to the operation of the Washcoat Business prior to the Closing Date or by reason of such transfer under the laws of the United States, any state, territory or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity, including, without limitation, any theory of antitrust, successor or transferee liability.

### Assumption and Assignment of the Transferred Contracts

Y.     The Selling Debtor has demonstrated that it is an exercise of their sound business judgment to assume and assign the Transferred Contracts in connection with the consummation of the Sale, and the Selling Debtor's assumption and assignment to the Buyer of

the Transferred Contracts is in the best interests of the Selling Debtor, its affiliates, their estates and their creditors.  The Transferred Contracts being assigned to the Buyer are an integral part of the Washcoat Business purchased by the Buyer and, accordingly, the assumption and assignment of the Transferred Contracts is reasonable, enhances the value of the Selling Debtor's estate and does not constitute unfair discrimination.

Z.    Pursuant to and in accordance with the Agreement, the Buyer has (i) cured any default existing prior to the date hereof under each of the Transferred Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Transferred Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code; and (iii) provided adequate assurance of its future performance of and under the Transferred Contracts, within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

### Compelling Circumstances for an Immediate Sale

AA.    To maximize the value of the assets of the Washcoat Business and preserve the viability of the Washcoat Businesses as a going concern, it is essential that the Sale occur within the time constraints set forth in the Agreement.  Time is of the essence in consummating the Sale.

### Other

BB.    The Sale does not constitute a *de facto* plan of reorganization or liquidation or an element of such a plan for any of the Debtors, as it does not and does not propose to:  (i) impair or restructure existing debt of, or equity interests in, the Debtors, (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtors; (iii) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of

the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies or

extend debt maturities.

### NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

#### General Provisions

1.    The relief requested in the Sale Motion is granted and approved, and the

Sale contemplated thereby is approved as set forth in this Sale Order.

2.    All objections to the entry of this Sale Order or the relief provided herein

that have not been withdrawn, waived, or settled, and all reservations of rights included therein,

are hereby denied and overruled on the merits, or the interests of such objections have been

otherwise satisfied or adequately provided for.

#### Approval of the Sale Documents

3.    The Sale Documents, and all of the terms and conditions thereof, are

hereby approved.

4.    Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Selling

Debtor is authorized and directed to consummate the Sale in accordance with the terms and

conditions of the Sale Documents.

5.    The Selling Debtor is authorized and directed to execute and deliver, and

empowered to perform under, consummate and implement the Sale Documents, including all

instruments and documents that may be reasonably necessary or desirable to implement the Sale

as contemplated by the Agreement, and to take all further actions as may be reasonably requested

by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the

Buyer or reducing to possession, the Acquired Assets, including the Transferred Contracts, or as

may be necessary or appropriate to the performance of the obligations as contemplated by the

Agreement.  Any amounts that become payable by the Selling Debtor pursuant to the Sale

Documents shall (a) constitute superpriority administrative expenses of the Selling Debtor's

estates that, except for claims of the Debtors' postpetition lenders, shall be senior to all other

administrative expenses in the Selling Debtor's chapter 11 case or in any subsequent case under

chapter 7 of the Bankruptcy Code; (b) be paid by the Selling Debtor without further order of this

Court and in the time and manner provided for in the Sale Documents; and (c) not be discharged,

modified, or otherwise affected by any plan of reorganization or liquidation for the Debtors.

      6.     The terms and provisions of this Sale Order shall be binding in all respects

upon the Selling Debtor, its affiliates, their estates, all creditors of, and holders of equity interests

in, the Selling Debtor or Debtors (whether known or unknown), any holders of Interests against,

in or on all or any portion of the Acquired Assets, all non-Debtor parties to the Transferred

Contracts, the Buyer and all successors and assigns of the Buyer, and any trustees, if any,

subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7

under the Bankruptcy Code of any of the Debtors' cases.  This Sale Order and the Sale

Documents shall inure to the benefit of the Selling Debtor, its affiliates, their estates, their

creditors, the Buyer, all interested parties and their respective successors and assigns.  The Sale

Documents shall not be subject to rejection.

### Transfer of the Acquired Assets

      7.     Pursuant to sections 105(a), 363(f) and 365 of the Bankruptcy Code, the

Selling Debtor is authorized to transfer the Acquired Assets on the Closing Date.  Such assets

shall be transferred to the Buyer, and upon consummation of the Sale (the "Closing"), such

transfer shall constitute a legal, valid, binding and effective transfer of such assets of the

Washcoat Business and, upon the Selling Debtor's receipt of the Purchase Price, shall be, free

and clear of all Interests (other than Permitted Exceptions and Transferred Liabilities), with all

such Interests of any kind or nature whatsoever to attach to the net proceeds of the Sale ultimately attributable to the property against or in which such Interests are held with the same validity, priority, force and effect that they now have, subject to any claims and defenses the Selling Debtor may possess with respect thereto.

8.       Except as expressly permitted or otherwise specifically provided by the Agreement or this Sale Order, all persons and entities holding Interests in the Acquired Assets (other than Permitted Exceptions and Transferred Liabilities), arising under or out of, in connection with, or in any way relating to, the Selling Debtor, the assets of the Washcoat Business, the Transferred Contracts, the operation of the Washcoat Business prior to the Closing Date, or the transfer of the Washcoat Business or the Transferred Contracts to the Buyer, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyer, its successors or assigns, property or assets, such persons' or entities' Interests.  On the Closing Date, each creditor is authorized to execute such documents and take all other actions as may be necessary to release Interests (other than Permitted Exceptions and Transferred Liabilities) on the Acquired Assets, if any, as provided for herein.

9.       The transfer of the Acquired Assets, including the Transferred Contracts, to the Buyer pursuant to the Agreement constitute a legal, valid and effective transfer of such assets and contracts, and shall vest the Buyer with all right, title and interest of the Selling Debtor in and to such assets and contracts free and clear of all Interests of any kind or nature whatsoever.

### Assumption by Selling Debtor and Assignment to the Buyer of the Transferred Contracts

10.       Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Selling Debtor's assumption and assignment to the

Buyer of the Transferred Contracts, is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

11.     The Selling Debtor is hereby authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to the Buyer, effective upon the Closing, the Transferred Contracts free and clear of all Interests of any kind or nature whatsoever, and (b) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Transferred Contracts to the Buyer.

12.     The Transferred Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Transferred Contract that prohibits, restricts or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Selling Debtor shall be relieved from any further liability with respect to the Transferred Contracts after such assignment to and assumption by the Buyer.

13.     The Selling Debtor may assume and assign each of the Transferred Contracts in accordance with sections 363 and 365 of the Bankruptcy Code and any provisions in any of the Transferred Contracts that prohibits, restricts or conditions the assignment of such Transferred Contract, or allow the party to such Transferred Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assumption or assignment of such Transferred Contract constitute unenforceable anti-assignment provisions which are void and of no force and effect.

14.     All other requirements and conditions under section 363 and 365 of the Bankruptcy Code for the assumption and assignment to the Buyer of each of the Transferred Contracts have been satisfied.  Upon Closing, in accordance with sections 363 and 365, the

Buyer shall be fully and irrevocably vested in all right, title and interest of each of the Transferred Contracts.

15. As of the Closing Date, each of the Transferred Contracts will be in full force and effect and not subject to termination or cancellation by the non-Debtor party thereto based upon any act, omission or failure that may have occurred or arisen prior to the Closing.

16. All defaults or other obligations of the Selling Debtor under any Transferred Contract arising or accruing prior to the date of this Sale Order (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by the Buyer upon payment by the Buyer at the Closing of the Sale or as soon thereafter as practicable of the cure amount set forth on **Exhibit B** hereto with respect to those Transferred Contracts set forth on **Exhibit B** (the "Cure Amounts"). After the payment of the relevant Cure Amounts, neither the Selling Debtor nor the Buyer shall have any further liabilities to the non-Debtor parties to the Transferred Contracts other than the Buyer's obligations under the Transferred Contracts that become due and payable on or after the Closing Date. There shall be no rent accelerations, assignment fees, increases (including advertising rates) or any other fees charged to Buyer or the Selling Debtor as a result of the assumption and assignment of the Transferred Contracts.

17. Except for the obligation of the Buyer and Selling Debtor to pay the Cure Amounts, each nondebtor party to a Transferred Contract hereby is forever barred, estopped and permanently enjoined from asserting against the Selling Debtor or the Buyer, or the property of any of them, any default existing as of the date of the Sale Hearing; or, against the Buyer, any counterclaim, defense, setoff or any other claim asserted or assertable against the Selling Debtor. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all parties to the Transferred

Contracts are forever barred and permanently enjoined from raising or asserting against the Selling Debtor or the Buyer any assignment fee, default, breach or claim or pecuniary loss or condition to assignment, arising under or related to the Transferred Contracts existing as of the Closing Date or arising by reason of the Closing.

### Additional Sale Provisions

18. On the Closing Date of the Sale, each of the Selling Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests, if any, in the Acquired Assets, including the Transferred Contracts, as such Interests may have been recorded or may otherwise exist.

19. This Sale Order (a) shall be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing with respect to the Selling Debtor, the Acquired Assets or the Transferred Contracts prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who say be required to report or insure any title or state of title in or to any of such assets or contracts.

20. Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

21.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Liens with respect to the Selling Debtor, the Acquired Assets or the Transferred Contracts shall not have delivered to the Selling Debtor and the Buyer prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens which the person or entity has with respect to the Selling Debtor, the Acquired Assets, the Transferred Contracts, or otherwise, then (a) the Selling Debtor is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such assets and contracts and (b) the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens in the Acquired Assets and Transferred Contracts of any kind or nature whatsoever.

22.    All entities who are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Buyer on the Closing Date.

23.    Except for the Transferred Liabilities, the Buyer shall have no liability or responsibility for any liability or other obligation of the Selling Debtor arising under or related to the Washcoat Business or the Transferred Contracts. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Agreement, the Buyer shall not be liable for any claims against the Selling Debtor or any of its predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Selling Debtor or any obligations of the Selling Debtor

arising prior to the Closing Date, including, but not limited to, (1) liabilities on account of any

taxes arising, accruing or payable under, out of, in connection with or in any way relating to the

operation of the Business prior to the Closing Date and (2) liabilities based on any theory of

antitrust, environmental, successor or transferee liability, labor law, de facto merger or

substantial continuity.

        24.     Under no circumstances shall the Buyer be deemed a successor of or to the

Debtors for any Interest against or in the Selling Debtor or the Washcoat Business or Transferred

Contracts of any kind or nature whatsoever.  Except for the Transferred Liabilities, the sale,

transfer, assignment and delivery of the Acquired Assets, including the Transferred Contracts,

shall not be subject to any Interests, and Interests of any kind or nature whatsoever shall remain

with, and continue to be obligations of, the Selling Debtor.  Except for persons holding

Transferred Liabilities, all persons holding Interests against or in the Selling Debtor or the

Acquired Assets or Transferred Contracts of any kind or nature whatsoever (including, but not

limited to, the Selling Debtor and/or its successors (including any trustee)), creditors, employees,

unions, former employees and shareholders, administrative agencies, governmental units,

secretaries of state, federal, state and local officials, including those maintaining any authority

relating to any environmental, health and safety laws, and the successors and assigns of each of

the foregoing) shall be, and hereby are, forever barred, estopped and permanently enjoined from

asserting, prosecuting, or otherwise pursuing such Interests of any kind or nature whatsoever

against the Buyer, its property, its successors and assigns or the Acquired Assets or Transferred

Contracts, as an alleged successor or otherwise, with respect to any Interest of any kind or nature

whatsoever such person or entity had, has or may have against or in the Selling Debtor, its estate,

officers, directors, shareholders or the Acquired Assets or Transferred Contracts.  Following the

Closing Date, no holder of an Interest in the Selling Debtor shall interfere with the Buyer's title to or use and enjoyment of the Washcoat Business or the Transferred Contracts based on or related to such Interest, or any actions that the Selling Debtor may take in its chapter 11 case.

### Additional Provisions

25.     This Court retains exclusive jurisdiction over any matter or dispute arising from or relating to the implementation of this Sale Order as well as to enforce and implement the terms and provisions of the Sale Documents, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Acquired Assets to the Buyer, (b) resolve any disputes arising under or related to the Sale Documents, except as otherwise provided therein, (c) interpret, implement, and enforce the provisions of this Sale Order and (d) protect the Buyer against any Interest in the Selling Debtor, the Acquired Assets or the Transferred Contracts, of any kind or nature whatsoever, attaching to the proceeds of the Sale.

26.     Nothing contained in any plan confirmed in these cases or any order of this court confirming such plan shall conflict with or derogate from the provisions of the Agreement or the terms of this Sale Order.

27.     The transactions contemplated by the Agreement are undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale as to the Buyer, except to the extent such authorization is duly stayed pending such appeal prior to such consummation. The Buyer is a Buyer in good faith of the Acquired Assets, including the Transferred Contracts, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

28. The consideration provided by the Buyer for the assets of the Washcoat Business under the Agreement (a) constitutes, and shall be deemed to constitute, reasonably equivalent value and fair consideration, and (b) is fair and reasonable and may not be avoided under section 363(n) or any other provision of the Bankruptcy Code, or otherwise.

29. The terms and provisions of the Sale Documents and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Selling Debtor, its affiliates, their estates and their creditors, the Buyer and its affiliates, successors and assigns, and shall be binding in all respects upon any affected third parties including, but not limited to, all persons asserting Interests in such assets and contracts to be sold or assigned to the Buyer pursuant to the Sale Documents, notwithstanding any subsequent appointment of any trustee(s) or similar party under any chapter of the Bankruptcy Code, as to which trustee(s) or similar party such terms and provisions likewise shall be binding.

30. The failure specifically to include any particular provision of a Sale Document in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement and each of the Sale Documents be authorized and approved in their entirety. Likewise, all of the provisions of this Sale Order are nonseverable and mutually dependent.

31. The Agreement and any other Sale Document may be modified, amended or supplemented by the parties thereto, in a writing signed by all parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates. In the event that a motion is filed to add additional contracts (the "Additional Contracts") to the list of Transferred Contracts pursuant to Section 2.07 of the Agreement, upon entry of an order

approving the assumption and assignment of the Additional Contracts and payment of the related cure amounts, such Additional Contracts shall be considered Transferred Contracts for all purposes under this Order.

32.    Notwithstanding Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Sale Order shall not be stayed for 10 days after the entry of the Sale Order and shall be effective and enforceable immediately upon entry.

Dated: _____, 2007

 

                               _____
                               UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

**Agreement**

# See Exhibit B to Motion for Asset Purchase Agreement

## EXHIBIT B

### Transferred Contracts and Cure Amounts

## LIST OF TRANSFERRED CONTRACTS

| Counter Party | Name of the Contract | Date of the Contract | Service | Cure Amount |
|---|---|---|---|---|
| Duke Realty Limited Partnership 4555 Lake Forest Drive, Suite 400 Cincinnati, OH 45242 | Agreement dated August 18, 1997 by and between Duke Realty Limited Partnership, and Grace Logistics Services, Inc. (predecessor in interest to Seller), as amended on November 20, 1997 and May 2, 2002. | 8/18/1997 as amended on November 20, 1997 and May 2, 2002. | Warehouse lease | $0.00 |
| USALCO 1120 Middle River Road Baltimore, MD 21220 | Supply Agreement (contract under negotiation as of June 12, 2007) | | Supplier of liquid sodium aluminate and liquid sodium sulfate | $0.00 |
| Alpine Valley 10341 Julian Dr. Cincinnati, OH 45215 | Commercial Service Agreement | 7/17/06 | Coffee and tea supplies | $0.00 |
| Beckman Coulter, Inc. Mail Station E-31-B, 4300 North Harbor Blvd. P.O. Box 3100 Fullerton, CA 92834-3100 | Total Plus Support Agreement | 10/1/06 | Lab instrumentation maintenance & calibration | $0.00 |
| Bethesda Healthcare, Inc. 11129 Kenwood Road Cincinnati, OH 45242 | SHARE: Occupational Health Program | 12/31/05 | Occupational health and medical services | $0.00 |
| Cingular Wireless 5020 Ash Grove Road Springfield, IL 62711-6329 | Wireless Line | Varies (multiple cell phones with contract dates of 10/20/05, 11/1/05, 2/7/03 [4 phones], 6/28/06,10/20/05, and 3/29/07) | Cell phones | $0.00 |
| Cintas Corp. 5570 Ridge Ave Cincinnati, OH 45213 | Standard Uniform Rental Service Agreement | 2/1/02 | Uniform rental service | $0.00 |
| Cintas Corp. 5570 Ridge Ave Cincinnati, OH 45213 | SANIS Ultraclean Service Agreement | 3/29/07 | Cleaning locker rooms | $0.00 |
| Cummins Bridgeway, LLC 5400 Rialto Road, West Chester, O 45089 | Planned Equipment Maintenance Agreement | 7/14/06 | Back-up generator service | $0.00 |
| Davey Commercial Grounds Management 6065 Guinea Pike Milford, OH 45150 | 2006-2007 Snow & Ice Management Specifications and Contract | 9/25/06 | Snow removal and grass cutting | $0.00 |
| Engineering Excellence, Inc. 10 Knollcrest Drive Cincinnati, OH 45237 | Maintenance Agreement | 1/22/07 | HVAC service | $0.00 |
| Honeywell International, Inc. 1232 Dayton-Yellow Springs Road, Fairborn, OH 45324 | Industrial Control Services Agreement No. CMS #9018 | 9/25/01 | DCS and PLC Software and hardware service | $0.00 |
| Hunter Associates Laboratory, Inc. 11491 Sunset Hills Road Reston, VA 20190-5280 | Annual Preventive Maintenance Agreement | 12/19/06 | Lab instrumentation maintenance & calibration | $0.00 |
| Jani-King of Cincinnati, Inc. 144 Merchant Street, Suite 255 Cincinnati, OH 45246 | Maintenance Agreement | 7/26/99 | Janitorial services | $0.00 |
| KCI Konecranes Group 9879 Crescent Park Drive West Chester, OH 45069 | Inspection and Preventive Maintenance Program | 1/19/06 | Crane inspection | $0.00 |
| LensCrafters Inc. 8650 Governor's Hill Drive Cincinnati, OH 45249-3303 | Safety Eyewear Authorization Form | 1/5/07 | Prescription safety glasses | $0.00 |
| Lowry Computer Products, Inc. 9420 Maltby Road Brighton, MI 48116 | W8306 Three Year Maintenance Contract | 9/9/04 | Label printer service contract | $0.00 |

## LIST OF TRANSFERRED CONTRACTS

| Counter Party | Name of the Contract | Date of the Contract | Service | Cure Amount |
|---|---|---|---|---|
| Malvern Instruments, Inc.<br>10 Southville Road<br>Southborough, MA  01772 | Diffraction Service Agreement | 10/23/06 | Lab instrumentation maintenance & calibration | $0.00 |
| Micromeritics<br>One Micromeritics Drive<br>Norcross, GA  30093-1877 | Renewal of Service Agreements and Maintenance Plans | 1/22/07 | Lab instrumentation maintenance & calibration | $0.00 |
| PANalytical Inc.<br>12 Michigan Drive<br>Natick, MA  01760 | Customer Support Maintenance Agreement | 8/28/06 | Lab instrumentation maintenance & calibration | $0.00 |
| Quench USA<br>4812 Peter Place<br>Cincinnati, OH  45246 | Rental Agreement | 1/23/02 | Coffee brewers | $0.00 |
| Rockwell Automation<br>6680 Beta Drive<br>Mayfield Village, OH  44143 | TechConnect Support Agreement | 3/06 | PLC software license tech support | $0.00 |
| SPECTRO Analytical Instruments, Inc.<br>450 Donald Lynch Blvd.<br>Marlborough, MA  01752 | Preventive Maintenance Contract | 8/28/06 | Lab instrumentation maintenance & calibration | $0.00 |
| Ace Exterminating Co.<br>1920 Losantiville Avenue<br>Cincinnati, OH  45237 | Pest Control | No date provided on the available documentation | Extermination service | $0.00 |
| Alpha-Liberty Co.<br>P.O. Box 276<br>West Chester, OH  45071-0276 | Purchase Order | 1/15/02 | Lab instrumentation maintenance & calibration | $0.00 |
| Associated Scale<br>4473 State Route 108<br>Cleves, OH  45002 | Purchase Order | 10/5/01 | Scale calibration | $0.00 |
| BGR, Inc.<br>6392 Gano Road<br>West Chester, OH  45069 | Work Order | 12/4/06 | Stretch wrap machine service | $0.00 |
| Cardinal Laboratories, Inc.<br>622 Buttermilk Pike,<br>Covington, KY  41017 | Purchase Order | 4/2/03 | Sewer sampling and analysis | $0.00 |
| C.W. Brabender Instruments, Inc.<br>50 East Wesley Street<br>P.O. Box 1227<br>South Hackensack, NJ  07608 | Invoice | 3/5/07 | Lab instrumentation maintenance & calibration | $0.00 |
| Dayton Water Systems<br>430 Leo Street<br>Dayton, OH  45404 | Purchase Order | 2/4/04 | Ultra pure and deionized water | $0.00 |
| EHS Technology Group, LLC<br>P.O. Box 3040,<br>Miamisburg, OH  45343-3040 | Purchase Order | 3/9/01 | Environmental consultants | $0.00 |
| Environmental Enterprises, Inc.<br>10163 Cincinnati-Dayton Road<br>Cincinnati, OH  45241 | Purchase Order | 9/26/03 | Hazardous and universal waste disposal | $0.00 |
| Global Dosimetry Solutions<br>2652 McGaw Avenue<br>Irvine, CA  92614 | Invoice | 1/31/07 | Radiation monitoring service | $0.00 |
| HOK Ltd, c/o Seibert Enterprises<br>P.O. Box 75228<br>Fort Thomas, KY  41075-0228 | Purchase Order | 10/26/01 | Calciner parts storage | $0.00 |
| McCormick Equipment Co.<br>P.O. Box 631504<br>Cincinnati, OH  45263-1504 | Planned Maintenance Program | 101/10/06 | Dock leveler service | $0.00 |
| Murphy Transportation<br>6720 Kilby Road<br>Harrison, OH  45030 | Blanket Purchase Order | 10/12/05 | Trucking shuttle service to warehouse | $0.00 |

## LIST OF TRANSFERRED CONTRACTS

| Counter Party | Name of the Contract | Date of the Contract | Service | Cure Amount |
|---|---|---|---|---|
| Portman Equipment Co.<br>4331 Rossplain Road<br>Cincinnati, OH 45236 | Blanket Order | 10/17/00 | Forklifts | $0.00 |
| Quality Battery Service & Industrial Supply, LLC<br>5854 Lynch Lane, Suite 1,<br>Liberty Township, OH 45044 | Invoice - Planned Maintenance | 2/8/07 | Battery charger service | $0.00 |
| Rumpke Sanitary Landfill<br>10795 Hughes Road<br>Cincinnati, OH 45247 | Purchase Order | 3/14/01 | Trash removal (dumpster service) | $0.00 |
| Tennant Sales and Services Company<br>P.O. Box 71414<br>Chicago, IL 60694-1414 | Invoice | 11/28/06 | Floor sweeper service | $0.00 |
| USA Lamp & Ballast<br>7806 Anthony Wayne Avenue<br>Cincinnati, OH 45216 | Purchase Order | 1/30/2006 | Recycling of bulbs, ballasts, and batteries | $0.00 |
| ProSource Leasing<br>4720 Glendale-Milford Road<br>Cincinnati, OH 45242 | Purchase Order | 1/17/2005 | Copier repairs | $0.00 |
| Veterans Security<br>P.O. Box 73223<br>Bellevue, OH 41073 | Purchase Order | 1/15/2007 | Guard service | $0.00 |
| Hodges Warehouse<br>PO Box 470028<br>Tulsa, OK 74147 | Warehouse Agreement | 6/1/07 | Warehouse use | $0.00 |

## LIST OF TRANSFERRED CONTRACTS

**Active Confidentiality Agreements**

| Counter Party | Contract Type | Org. Date | Contract ID | Cure Amount |
|---|---|---|---|---|
| *Confidentiality obligations require that the counter party's name be withheld[1]* | Confidentiality Agreement | Signed 5/31/2007, Active 6/6/2006 | To be determined | $0.00 |
| Catalytic Solutions, Inc.<br>1640 Fiske Place<br>Oxnard, CA93033 | Confidentiality Agreement | 4/12/2001 | 01-3169 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld[1]* | Confidentiality Agreement | 10/23/2002 | 02-3803 | $0.00 |
| Honeywell International Inc.<br>28399 Cedar Park Boulevard<br>Perrysburg, OH43551 | Proprietary Information Agreement | 2/12/2004 | 04-4208 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld[1]* | Confidentiality Agreement | 6/2/2004 | 04-4330 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld[1]* | Confidentiality Agreement | 8/2/2004 | 04-4399 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld[1]* | Non-Disclosure Agreement | 5/1/2004 | 04-4537 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld[1]* | Non-Disclosure Agreement | 5/1/2004 | 04-4539 | $0.00 |
| Delphi Energy and Chassis Systems<br>5820 Delphi Drive<br>Troy, MI48098 | Confidentiality Information Agreement | 5/2/2005 | 05-4882 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld[1]* | Confidentiality Agreement | 11/8/2005 | 05-5085 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld[1]* | Confidentiality Agreement | 4/18/2006 | 06-5225 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld[1]* | Confidentiality Agreement | 5/15/2006 | 06-5243 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld[1]* | Confidentiality Agreement | 6/9/2006 | 06-5292 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld[1]* | Confidentiality Agreement | 10/25/2006 | 06-5415 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld[1]* | Confidentiality Agreement | 12/20/2006 | 07-5483 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld[1]* | Confidentiality Agreement | 4/19/2007 | 07-5644 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld[1]* | Confidentiality Agreement | 4/19/2007 | 07-5646 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld[1]* | Confidentiality Agreement | Signed 5/31/2007; Active 6/6/2006 | 07-5671 | $0.00 |

---

[1] Obligation not to disclose to others the fact that information was received from the other party

## LIST OF TRANSFERRED CONTRACTS

**Deal Confidentiality Agreements**

| Counter Party | Contract Type | Org. Date | Cure Amount |
|---|---|---|---|
| *Confidentiality obligations require that the counter party's name be withheld* | Confidentiality Agreement | 11/21/2006 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld* | Confidentiality Agreement | 2/16/2007 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld* | Confidentiality Agreement | 10/31/2006 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld* | Confidentiality Agreement | 11/14/2006 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld* | Confidentiality Agreement | 11/14/2006 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld* | Confidentiality Agreement | 11/1/2006 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld* | Confidentiality Agreement | 11/16/2006 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld* | Confidentiality Agreement | 11/1/2006 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld* | Confidentiality Agreement | 11/3/2006 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld* | Confidentiality Agreement | 11/1/2006 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld* | Confidentiality Agreement | 10/31/2006 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld* | Confidentiality Agreement | 6/30/2006 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld* | Confidentiality Agreement | 3/32/07 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld* | Confidentiality Agreement | 10/31/2006 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld* | Confidentiality Agreement | 11/2/2006 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld* | Confidentiality Agreement | 11/20/2006 | $0.00 |
| *Confidentiality obligations require that the counter party's name be withheld* | Confidentiality Agreement | 11/22/2006 | $0.00 |