# EXHIBIT B

**Expert Report of Joseph J. Radecki, Jr.**

**Regarding Inflation and Discount Rates for the
Estimation of Asbestos Personal Injury Liabilities**

**In re: W.R. Grace & Co.,** *et al.*

**June 18, 2007**

## Expert Report of Joseph J. Radecki, Jr.

## I. PROFESSIONAL QUALIFICATIONS / PRIOR TESTIMONY / FEES / RELIANCE MATERIALS

I am a Managing Director and the Group Head of the Restructuring Group at Piper Jaffray & Co. ("Piper Jaffray"). I have worked in investment banking for twenty-seven (27) years, and have focused on restructuring and recapitalizations for the last twenty (20) years. I joined Piper Jaffray in February 2006. Prior to that date, I was head of the Financial Restructuring Group at CIBC World Markets Corp. for eight years, and was head of the financial restructuring advisory practice at Jefferies & Company, Inc. ("Jefferies") for the eight years before that. Prior to Jefferies, I was a First Vice President in the International Capital Markets Group at Drexel Burham Lambert, Incorporated. For the past six years, I have been named as one of the Outstanding Investment Bankers by Turnarounds & Workouts, a restructuring and bankruptcy periodical.

Exhibit I includes a further description of my professional qualifications, a list of my prior testimony and a description of Piper Jaffray's fees. Such fees are not contingent on the outcome of this matter.

Exhibit II contains a list of materials and data I relied upon in forming my opinions and conclusions in this report.

## II. SCOPE OF ENGAGEMENT

Counsel for the Future Claimants' Representative has asked me to render opinions regarding the appropriate inflation and discount rates to calculate the present value of the future asbestos personal injury liabilities of W.R. Grace & Co. ("Grace"). In this regard, Jennifer L. Biggs of Towers Perrin / Tillinghast ("Tillinghast"), the asbestos estimation expert retained by

1

the Future Claimants' Representative, provided me with Tillinghast's undiscounted estimation of

Grace's future asbestos personal injury liability and I understand that Ms. Biggs is relying on my

determination of the discount rate.  Dr. Mark A. Peterson of Legal Analysis Systems ("LAS"),

the asbestos estimation expert retained by the Official Committee of Asbestos Personal Injury

Claimants, has also provided me with the timing and proportional amounts of his future liability

projections and I understand that Dr. Peterson is relying on my determination of the discount

rate.

## III. SUMMARY OF OPINIONS

1.    The appropriate inflation rate to be used for estimating future asbestos personal
      injury claims in the Grace claims estimation proceeding is 3.0%.

2.    The nominal value of the future asbestos personal injury claims should be
      discounted at a risk-free rate correlated to the weighted average duration of the
      claims and Grace's bankruptcy petition date.

3.    Based upon the work of Jennifer L. Biggs of Tillinghast, the weighted average
      duration of Tillinghast's "Best Estimate" of future asbestos personal injury claims
      against Grace, will be 18.49 years.  The appropriate discount rate for claims of
      this duration is 5.20%.

4.    Based upon the work of Dr. Mark A. Peterson of LAS, the weighted average
      duration of future asbestos personal injury claims against Grace will be 15 years.
      The appropriate discount rate for claims of this duration is 5.11%.

## IV. BASIS OF OPINIONS

In bankruptcy, the claims of banks, bondholders and other commercial creditors,

regardless of when they can be presented for payment, are accelerated and valued at their full

contractual amounts at the petition date. Asbestos personal injury claims, by contrast, may be asserted currently or in the future. In order to compare current and potential future claims on an equal footing, two adjustments must be made to the estimated nominal claim amounts of Grace's future asbestos personal injury liability. These adjustment factors are (1) an inflation rate, to reflect the anticipated increase in future indemnity awards as price levels rise over time; and (b) a discount rate, to convert the future inflation-adjusted claims back to present value.

## 1. INFLATION RATE

Inflation represents an increase in general price levels, or conversely a decrease in purchasing power, over time. Indemnity claims generally act like other products in the economy, rising in nominal value over time as purchasing power decreases. Specifically, indemnity claims increase over time due to inflationary pressures on their primary drivers including, but not limited to, healthcare costs, defense costs and wages. Accordingly, the calculation of the nominal stream of future claims for asbestos personal injury liability needs to be inflated to represent the declining value of the dollar.

The Congressional Budget Office ("CBO"), the analysis and research office of the U.S. Congress, provides independent economic analyses. Their estimates are generally regarded as unbiased and authoritative, and are generally within the range of other estimators. The CBO's Consumer Price Index ("CPI") is a generally accepted indicator of inflation. The CBO's long-term estimate of the percentage change in the Consumer Price Index as of the petition date was 2.5% per year.[1]

The U.S. Department of Labor, Bureau of Labor Statistics (the "Labor Department") publishes CPI's for various segments of the economy. CPI rates for medical care and services

---

[1] The Congress of the United States, Congressional Budget Office, "The Budget and Economic Outlook: Fiscal Years 2002-2011", Table E-1, p. 134.

3

have historically materially exceeded the general CPI.  According to the Labor Department, the
CPI rates for medical care and services have averaged over 60% higher than the general CPI over
the last decade or over 4% per year on average.[2]

The future inflation for asbestos personal injury claims must consider these factors.
Accordingly, in my opinion, the best estimate of the future inflation rate for asbestos personal
injury claims asserted against Grace is 3% per year.

## 2. DISCOUNT RATE

In order to properly allocate the value of Grace among its diverse creditor constituencies,
future asbestos claims must be valued on the same basis as current asbestos claims and the
claims of other non-asbestos creditors.  An asbestos personal injury that will be asserted as a
claim in the future has less value than a similar claim of the same amount that is payable today.
Putting aside the effect of inflation, which requires a separate adjustment, dollars paid or
received today are worth more than dollars paid or received in the future.

In order to reduce, or discount, Grace's nominal inflation-adjusted future asbestos claims
to their present value, it is necessary to determine the proper discount rate for the present value
calculation.  Discount rates, generally, have three components:

(1) an impatience factor, reflecting the preference to have funds available for
consumption now, rather than in the future,

(2) an inflation factor, reflecting that dollars paid in the future are expected to be
worth less than dollars paid today, and

(3) a risk premium, reflecting the risk that an obligation will not be paid when
due.

_____

[2] U.S. Department of Labor, Bureau of Labor Statistics, data published at http://data.bls.gov.

The first two factors, together, comprise the "risk free" rate because they represent the pure time value of money without consideration of creditworthiness or default risk. The third factor is generally referred to as the "risk of default." The nominal inflation-adjusted future asbestos claims of Grace should be reduced to present value using a risk free rate without consideration of default risk.

All non-asbestos claims in bankruptcy are valued at their contractual amount without regard to default risk. Similarly, current asbestos personal injury claims are also valued without regard to default risk. Accordingly, the discounting of Grace's future asbestos claims to present value must only take into account the time value of money (the impatience factor and the inflation factor) and not the risk of default.

The appropriate proxy for a "risk free" rate has historically been represented by the market interest rate on U.S. Treasury securities due to their "riskless" creditworthiness. The interest rates on U.S. Treasury securities vary by the duration of the subject security. In turn, these interest rates continually vary over time due to economic, market and other factors. The appropriate risk free rate, representing the discount rate in the instant case, must correlate to the weighted average duration of the cash flows constituting the estimation of future claims. Additionally, the rate must correlate to the conditions in effect at the time at which the claim is determined for bankruptcy purposes to exist; in this case, the bankruptcy petition date of Grace.

In her "Best Estimate," Jennifer L. Biggs of Tillinghast calculated Grace's post-petition future asbestos claim values over a sixty-two (62) year period. The weighted average duration of this pool of claims approximates 18.49 years. At the petition date, the approximate interest rate on U.S. Treasury securities with an interpolated maturity comparable to this weighted average

5

duration was 5.20%. This is the appropriate rate for discounting Tillinghast's estimation of future asbestos claims to be asserted against Grace to present value.[3]

Dr. Mark A. Peterson of LAS calculated Grace's post-petition future asbestos claim values over a forty-one (41) year period. The weighted average duration of this pool of claims approximates 15 years. At the petition date, the approximate interest rate of U.S. Treasury securities with an interpolated maturity comparable to this weighted average duration was 5.11%. This is the appropriate rate for discounting LAS' estimation of future asbestos claims to be asserted against Grace to present value.

Joseph J. Radecki, Jr.
Managing Director
Piper Jaffray & Co.

---

[3] Tillinghast also produced a "Low Estimate" and a "High Estimate" with weighted average durations of 18.32 and 19.0 years respectively. These durations correlate to discount rates of 5.19% and 5.21%, respectively, which are immaterially different from the discount rate of 5.20% assigned to the "Best Estimate."

# EXHIBIT 1

**Exhibit I(a)**

**CURRICULUM VITAE OF JOSEPH J. RADECKI, JR.**

Joseph J. Radecki, Jr. is a Managing Director and head of the Restructuring Group at Piper Jaffray & Co.  He has 27 years experience in investment banking and 20 years in financial restructuring and recapitalizations.

Prior to joining Piper Jaffray, Radecki was head of the Financial Restructuring Group at CIBC World Markets Corp. and, prior to CIBC, he held the same position at Jefferies & Company.  Prior to that, he was first vice president in the International Capital Markets Group at Drexel Burnham Lambert, Inc., where he specialized in financial restructurings and recapitalizations.  Over the past 20 years, Radecki has been integrally involved in more than 120 transactions totaling nearly $50 billion in recapitalized securities.  He has also previously served as chairman of the board of American Rice, Inc., an international rice miller and marketer and as a member of the board of directors of Service America Corporation, a national food service management firm, Bucyrus International, Inc., a mining equipment manufacturer, Wherehouse Entertainment, Inc., a music, video and games specialty retailer, RBX Corporation, a manufacturer of rubber, plastic foam and other polymer products, Southwest Royalties, Inc., a Permian Basin oil and gas exploration and production company and ECO-Net, a non-profit engineering related network firm.

Radecki graduated magna cum laude from Georgetown University in 1980 with a bachelor's degree in Government.

**Exhibit I(b)**

**TESTIMONY OF JOSEPH J. RADECKI, JR. WITHIN THE PAST FOUR YEARS**

1.  In re Combustion Engineering, Inc., Case No. 03-10495 (Bankr. D. Del) (declarations and testimony)

2.  In re: ACR Management, L.L.C., Case No. 04-027848 (Bankr. W.D Pa.) (declaration)

3.  In re: Congoleum Corp., Case No. 03-51524 (Bankr. D. N.J.) (certification and testimony)

4.  In re: Sleepmaster Finance Corp., Case No. 01-11341 (Bankr. D.Del) (testimony)

5.  In re: W.R.Grace & Co., et al., Case No. 01-1139 (Bankr. D.Del) (declarations)

6.  In re: Radio Unica Communications Corp., Case No. 03-16837 (Bankr. S.D.N.Y) (declaration)

7.  In re: Condor Systems, Inc., Case No. 01-55472 (Bankr. N.D. Cal) (declarations)

8.  In re: Armstrong World Industries, Inc., Case No. 00-4471 (Bankr. D. Del) (expert report)

## Exhibit I(c)

## COMPENSATION

Piper Jaffray & Co. fee:

As described in the Agreement between David T. Austern, the Future Claimants'
Representative and Piper Jaffray & Co. ("Piper Jaffray"), the fees payable to Piper
Jaffray are as follows:

a.    for the initial twelve (12) months of this engagement, starting upon
      February 13, 2006, the effective date of this letter agreement, a fee of
      $100,000.00 per month, payable monthly in arrears;

b.    following the initial twelve (12) month period, a fee to be negotiated that
      is mutually acceptable to the Future Representative and Piper Jaffray,
      subject to Bankruptcy Court approval, for each month thereafter up
      through the month of the effective date of a plan of reorganization or
      termination of this letter agreement, whichever first occurs; and

c.    reimbursement of reasonable and necessary expenses;

subject to potential adjustments mutually acceptable to the Future Claimants'
Representative and Piper Jaffray attributable to the monthly activity level and Bankruptcy
Court approval.

**Exhibit I (d)**

**PUBLICATION HISTORY**

No publication history

# EXHIBIT 2

**Exhibit II**

**RELIANCE MATERIALS**

1.      The Congress of the United States, Congressional Budget Office, "The Budget and Economic Outlook: Fiscal Years 2002-2011"

2.      U.S. Department of Labor, Bureau of Labor Statistics, data published at http://data.bls.gov.

3.      Daily Treasury Yield Curves, data published at http://www.ustreas.gov