EXHIBIT I

**DII INDUSTRIES, LLC ASBESTOS PI TRUST**

**SECOND AMENDED TRUST DISTRIBUTION PROCEDURES**

**(MARCH 12, 2007)**

016923.00010:1027978.01

Definitive

# DII INDUSTRIES, LLC ASBESTOS PI TRUST

# SECOND AMENDED TRUST DISTRIBUTION PROCEDURES

## TABLE OF CONTENTS

SECTION 1 Introduction..................................................................................................1

    1.1    Purpose .............................................................................................................1

    1.2    Interpretation ....................................................................................................1

SECTION 2 Overview.....................................................................................................1

    2.1    Asbestos PI Trust Goals ...................................................................................1

    2.2    Asbestos PI Trust Claim Liquidation Procedures.............................................2

    2.3    Asbestos PI Trust Application of the Payment Percentage ...............................4

    2.4    Asbestos PI Trust's Determination of the Maximum Annual Payment and Maximum Available Payment .............................................................................5

    2.5    Asbestos Unsecured PI Trust Claims Payment Ratio and Reduced Payment Option ..............................................................................................................5

    2.6    Asbestos PI Trust Indemnity and Contribution Claims......................................6

SECTION 3 TDP Administration......................................................................................6

    3.1    Asbestos TAC and Legal Representative .........................................................6

    3.2    Consultation and Consent Procedures ..............................................................7

SECTION 4 Payment Percentage; Periodic Estimates.....................................................7

    4.1    Uncertainty of the Halliburton Entities' and the Harbison-Walker Entities' Asbestos Personal Injury Liabilities..................................................................7

    4.2    Payment Percentage..........................................................................................7

    4.3    Applicability of the Payment Percentage .........................................................8

SECTION 5 Resolution of Asbestos Unsecured PI Trust Claims......................................9

i

Definitive

5.1     Ordering, Processing, and Payment of Claims ........................................................9

        5.1(a)  Ordering of Claims ...................................................................................9

5.1(b)  Payment of Claims........................................................................................10

5.1(c)  Adjusting Payments Option...........................................................................11

5.2     Resolution of Liquidated Asbestos Unsecured PI Trust Claims. ........................12

        5.2(a)  Qualifying Settled Asbestos PI Trust Claims. ...........................................12

        5.2(b)  Asbestos Final Judgment Claims...............................................................12

5.3     Resolution of Unliquidated Asbestos PI Trust Claims .........................................12

        5.3(a)  Expedited Review Process.........................................................................13

        5.3(a)(1) In General ............................................................................................13

        5.3(b)  Individual Review Process .......................................................................18

        5.3(c)  Review and Adjustment of Scheduled Values, Average Values and
                Maximum Values ...................................................................................21

5.4     Categorizing Claims as Extraordinary and/or Exigent Hardship .........................22

5.5     Secondary Exposure Claims...............................................................................23

5.6     Indirect Asbestos PI Trust Claims .....................................................................23

        5.6(a)  In General ...............................................................................................23

        5.6(b)  Certain Indemnification Claims.................................................................24

5.7     Evidentiary Requirements .................................................................................25

        5.7(a)  Medical Evidence .....................................................................................25

        5.7(b)  Exposure Evidence ...................................................................................27

        5.7(c)  Company Exposure....................................................................................28

5.8     Claims Audit Program .......................................................................................28

5.9     Second Disease (Malignancy) Claims.................................................................29

5.10    Arbitration .......................................................................................................29

        5.10(a) Establishment of Alternative Dispute Resolution Procedures ................29

016923.00010:1027978.01

Definitive

       5.10(b)  Claims Eligible for Arbitration ................................................30

       5.10(c)  Limitations on and Payment of Arbitration Awards ................30

  5.11    Litigation ...................................................................................30

SECTION 6  Claims Materials ..................................................................30

  6.1    Claims Materials .......................................................................30

  6.2    Content of Claims Materials ......................................................31

  6.3    Withdrawal or Deferral of Claims ..............................................31

  6.4    Filing Requirements and Fees ...................................................32

SECTION 7  General Guidelines for Liquidating and Paying Claims .........32

  7.1    Showing Required .....................................................................32

  7.2    Costs Considered ......................................................................32

  7.3    Discretion to Vary the Order and Amounts of Payments in Event of Limited
       Liquidity ..................................................................................32

  7.4    Punitive Damages .....................................................................33

  7.5    Interest .....................................................................................33

  7.6    Suits in a Judicial Forum ...........................................................34

  7.7    Payment of Judgments for Money Damages ...............................34

  7.8    Releases ...................................................................................35

  7.9    Third-Party Services .................................................................35

  7.10    Asbestos PI Trust Disclosure of Information ..............................35

SECTION 8  Miscellaneous .....................................................................35

  8.1    Amendments ............................................................................35

  8.2    Severability ..............................................................................35

  8.3    Governing Law .........................................................................36

  8.4    Confidentiality of Claimant Submissions ...................................36

016923.00010:1027978.01

Definitive

## DII INDUSTRIES, LLC ASBESTOS PI TRUST
## SECOND AMENDED TRUST DISTRIBUTION PROCEDURES

The DII Industries, LLC Asbestos PI Trust Second Amended Trust Distribution Procedures ("TDP") contained herein provide for resolving all Asbestos Unsecured PI Trust Claims (including so-called "premises liability" claims) for which a Halliburton Entity or a Harbison-Walker Entity has legal responsibility, as provided in and required by the Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code ("Plan") and the DII Industries, LLC Asbestos PI Trust Agreement (the "Asbestos PI Trust Agreement"). The Plan and Asbestos PI Trust Agreement establish the DII Industries, LLC Asbestos PI Trust (the "Asbestos PI Trust"). The Trustees shall implement and administer this TDP in accordance with the Asbestos PI Trust Agreement. Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Definitive Uniform Glossary of Defined Terms for Plan Documents filed of record with the Bankruptcy Court on November 22, 2004 [Docket # 2086].

### SECTION 1
### Introduction

**1.1     Purpose**

This TDP has been adopted pursuant to the Asbestos PI Trust Agreement. It is designed to provide fair, equitable, and substantially similar treatment for all Asbestos Unsecured PI Trust Claims that may presently exist or may arise in the future.

**1.2     Interpretation**

Except as may otherwise be provided below, nothing in this TDP shall be deemed to create a substantive right for any claimant.

### SECTION 2
### Overview

**2.1     Asbestos PI Trust Goals**

The goal of the Asbestos PI Trust is to treat all claimants equitably and in accordance with the requirements of section 524(g) of the Bankruptcy Code. This Asbestos TDP furthers that goal by setting forth procedures for processing and paying claims generally on an impartial, first-in-first-out ("FIFO") basis, with the intention of paying all claimants over time as equivalent a share as possible of the value of their claims based on historical values for substantially similar

016923.00010:1027978.01

claims in the tort system.[1]  To this end, the Asbestos TDP establishes a single schedule of eight asbestos-related diseases ("Disease Levels"), seven of which have presumptive medical and exposure requirements ("Medical/Exposure Criteria") and specific liquidated values ("Scheduled Values"), and five of which have both anticipated average values ("Average Values") and caps on their liquidated values ("Maximum Values").  The Disease Levels, Medical/Exposure Criteria, Scheduled Values, Average Values, and Maximum Values, set forth in sections 5.3 and 5.4 below, have been selected and derived with the intention of achieving a fair allocation of the Asbestos PI Trust funds as among claimants suffering from different disease processes in light of the best available information considering the settlement history of the Halliburton Entities and the Harbison-Walker Entities and the rights claimants would have in the tort system absent the Reorganization Cases.

A claimant may assert separate Asbestos Unsecured PI Trust Claims against the Asbestos PI Trust based on exposure to asbestos or asbestos-containing products manufactured or distributed by more than one of the Halliburton Entities or the Harbison-Walker Entities (the "Multiple Exposure Claims"); *provided however*, that all such Multiple Exposure Claims must be filed by the claimant at the same time.  To the extent that the Asbestos PI Trust has separate liabilities to a single claimant based on Multiple Exposure Claims, the Asbestos PI Trust shall pay the claimant its several share of the liquidated value of each of the separate claim or claims for which it is liable, subject to the applicable Payment Percentage and Maximum Annual Payment, and Claims Payment Ratio limitations, if any, set forth below.  Under no circumstances, however, shall any claimant receive more than the full liquidated value of each of one Harbison-Walker Asbestos PI Trust Claim and one Non-Harbison-Walker Asbestos PI Trust Claim (as defined in section 5.3(a)(3) below) as such value(s) is (are) determined under this TDP.

### 2.2    Asbestos PI Trust Claim Liquidation Procedures

Asbestos Unsecured PI Trust Claims shall be processed based on their place in the FIFO Processing Queues to be established pursuant to section 5.1(a) and section 5.2 below.  The Asbestos PI Trust shall take all reasonable steps to resolve Asbestos Unsecured PI Trust Claims as efficiently and expeditiously as possible at each stage of claims processing and arbitration, which steps may include conducting settlement discussions with claimants' representatives of more than one claim at a time; provided, however, that the claimants' respective positions in the FIFO Processing Queue are maintained and each claim is individually evaluated pursuant to the valuation factors set forth in section 5.3(b)(2) below.  The Asbestos PI Trust also shall make every effort to resolve each year at least that number of Asbestos Unsecured PI Trust Claims required to exhaust the Maximum Annual Payment and the Maximum Available Payment, as those terms are defined below.

---

[1]  As used in this Asbestos TDP, the phrase "in the tort system" shall include only claims asserted by way of litigation and not claims asserted against a trust established pursuant to section 524(g) and/or section 105 of the Bankruptcy Code or any other applicable law.

Definitive

The Asbestos PI Trust shall process and liquidate all Asbestos Unsecured PI Trust Claims, other than Qualifying Settled Asbestos Unsecured PI Trust Claims and Asbestos Final Judgment Claims, pursuant to the relevant provisions of this TDP. Qualifying Settled Asbestos Unsecured PI Trust Claims shall be processed and paid solely pursuant to the Plan, the Asbestos PI Trust Funding Agreement, and section 5.2(a) below. Asbestos Final Judgment Claims shall be processed and paid pursuant to section 5.2(b) below.

Asbestos Unsecured PI Trust Claims, other than foreign claims, that meet the presumptive Medical/Exposure Criteria of Disease Levels I-V, VII, and VIII shall be processed and paid under the Expedited Review process described in section 5.3(a) herein. Asbestos Unsecured PI Trust Claims involving Disease Levels I-V, VII, and VIII that do not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level may undergo the Asbestos PI Trust's Individual Review process described in section 5.3(b). In the case of Disease Levels I – III, notwithstanding that the claim does not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level, the Asbestos PI Trust can offer the claimant an amount up to the Scheduled Value of that Disease Level, if the Asbestos PI Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system.

Asbestos Unsecured PI Trust Claims involving Disease Levels IV-VIII tend to raise more complex valuation issues than the Asbestos Unsecured PI Trust Claims in Disease Levels I-III. Accordingly, claimants holding claims involving these Disease Levels may alternatively seek to establish a liquidated value for the claim that is greater than its Scheduled Value by electing the Asbestos PI Trust's Individual Review process. However, the liquidated value of a more serious Disease Level IV, V, VII, or VIII claim that undergoes the Individual Review process for valuation purposes may be determined to be less than its Scheduled Value and, in any event, shall not exceed the Maximum Value for the relevant Disease Level set forth in sections 5.3(b)(3) and 5.3(b)(4) below, unless the claim qualifies as an Extraordinary Claim as defined in section 5.4(a) below, in which case its liquidated value cannot exceed the maximum value specified in that provision for such claims. Disease Level VI (Lung Cancer 2) claims and all foreign claims may be liquidated only pursuant to the Asbestos PI Trust's Individual Review process.

Based upon the Halliburton Entities' and the Harbison-Walker Entities' claims settlement history in light of applicable tort law, and current projections of present and future unliquidated claims, the Scheduled Values and Maximum Values set forth in sections 5.3(b)(3) and 5.3(b)(4) have been established for each of the (5) five more serious Disease Levels that are eligible for Individual Review of their liquidated values. The Trustees shall use their reasonable best efforts to ensure that the Asbestos PI Trust processes claims such that over time the average Liquidated Amount of all Asbestos Unsecured PI Trust Claims in each of the (5) five more serious Disease Levels that are paid by the Asbestos PI Trust approximate the "Average Value" set forth in sections 5.3(b)(3) and 5.3(b)(4) for each such Disease Level.

All unresolved disputes over a claimant's medical condition, exposure history, and/or the liquidated value of the Asbestos PI Trust Claim shall be subject to binding or nonbinding arbitration as set forth in section 5.10 below, at the election of the claimant, under the ADR Procedures that are provided in Attachment A hereto. Disputes over whether an Asbestos PI Trust Claim is an Asbestos Final Judgment Claim shall also be resolved pursuant to the ADR

016923.00010:1027978.01

Definitive

Procedures attached hereto. Asbestos Unsecured PI Trust Claims that are the subject of a dispute with the Asbestos PI Trust which cannot be resolved by such ADR Procedures, including nonbinding arbitration, may enter the tort system as provided in sections 5.11 and 7.6 below. However, if and when a claimant obtains a judgment in the tort system, the judgment shall be payable (subject to the Payment Percentage, Maximum Available Payment, and Claims Payment Ratio provisions set forth below) as provided in section 7.7.

Disputes over whether an Asbestos PI Trust Claim is a Qualifying Settled Asbestos PI Trust Claim shall be resolved solely pursuant to the terms of the applicable Asbestos Claimant Settlement Agreement and the Plan.

### 2.3    Asbestos PI Trust Application of the Payment Percentage

After the Liquidated Amount of an Asbestos PI Trust Claim, other than a claim involving Other Asbestos Disease (Disease Level 1) as defined in section 5.3(a)(3), is determined pursuant to the procedures set forth herein for Expedited Review, Individual Review, arbitration, litigation in the tort system, or by settlement, the claimant shall ultimately receive a pro-rata share of that value based on the Payment Percentage described in section 4.2.

As defined in the Plan, the Payment Percentage (a) shall be the Initial Payment Percentage with respect to all Qualifying Settled Asbestos Unsecured PI Trust Claims and Asbestos Final Judgment Claims and (b) the Payment Percentage selected by the Trustees of the Asbestos PI Trust with consent of the Asbestos TAC and the Legal Representative with respect to all claims liquidated under the Asbestos TDP (other than claims paid as claims for Disease Level I (Other Asbestos Disease)); provided, however, that the Payment Percentage shall not exceed the Initial Payment Percentage prior to the first (1st) anniversary of the Effective Date. The Payment Percentage for Disease Level I shall be 100%. The Payment Percentage may thereafter be adjusted upwards or downwards from time to time by the Asbestos PI Trust with the consent of the Asbestos TAC and the Legal Representative to reflect then-current estimates of the Asbestos PI Trust's assets and its liabilities, as well as the estimated value of then-pending and future claims. The Trustees shall calculate the Payment Percentage based on the assumption that the Average Values set forth in sections 5.3(b)(3) and 5.3(b)(4) will be achieved by the Asbestos PI Trust with respect to existing present claims and projected future claims involving Disease Levels IV-VIII. However, any adjustment to the Payment Percentage shall be made only pursuant to section 4.2. If the Payment Percentage is increased over time, claimants (i) whose claims are subject to the Payment Percentage, (ii) whose claims were liquidated under the Asbestos TDP or who hold Asbestos Final Judgment Claims, and (iii) who were paid in prior periods under the Asbestos TDP, shall not receive additional payments except as provided in section 4.2, relating to circumstances in which the Asbestos PI Trust has received additional contributions under the Asbestos PI Trust Additional Funding Agreement, or section 5.1(c), relating to the Asbestos PI Trust's adjusting payment options. Because there is uncertainty in the prediction of both the number and severity of future claims and the amount of the Asbestos PI Trust's assets, no guarantee can be made of the Payment Percentage that will be applied to a particular Asbestos PI Trust Claim.

016923.00010:1027978.01

Definitive

### 2.4    Asbestos PI Trust's Determination of the Maximum Annual Payment and Maximum Available Payment

The Asbestos PI Trust shall estimate or model the amount of cash flow anticipated to be necessary over its entire life to ensure that funds will be available to treat all present and future claimants in a substantially similar manner. In each year, the Asbestos PI Trust shall be empowered to pay out all of the interest earned during the year, together with a portion of its principal, calculated so that the application of Asbestos PI Trust funds over its life shall correspond with the needs created by the anticipated flow of claims (the "Maximum Annual Payment") taking into account the Payment Percentage provisions set forth in sections 2.3 above and 4.2 below. The Asbestos PI Trust's distributions to all claimants for that year shall not exceed the Maximum Annual Payment determined for that year; provided, however, that the Maximum Annual Payment limitation shall not apply to any Qualifying Settled Asbestos Unsecured PI Trust Claims as defined in section 5.2(a).

In distributing the Maximum Annual Payment, the Asbestos PI Trust shall first allocate the amount in question to Asbestos Final Judgment Claims and to liquidated Asbestos Unsecured PI Trust Claims involving Disease Level I (Cash Discount Payment). Asbestos Final Judgment Claims and liquidated Disease Level I claims for which there are insufficient funds shall be carried over to the next year and placed at the head of the FIFO Payment Queue. In any given year, after payment of all outstanding Asbestos Final Judgment Claims and Disease Level I Claims, the remaining portion of the Maximum Annual Payment (the "Maximum Available Payment"), if any, shall then be allocated and used to satisfy all other liquidated Asbestos Unsecured PI Trust Claims, subject to the Claims Payment Ratio, if any, set forth in section 2.5 below.

### 2.5    Asbestos Unsecured PI Trust Claims Payment Ratio and Reduced Payment Option

In the event the Payment Percentage is less than 100%, the Asbestos PI Trust shall implement a payment ratio (the "Claims Payment Ratio") to control the distribution of Asbestos PI Trust funds between Category A claims, which consist of Asbestos Unsecured PI Trust Claims involving severe asbestosis and malignancies (Disease Levels IV-VIII), that were unliquidated as of the DII Industries Petition Date, and Category B claims, which are Asbestos Unsecured PI Trust Claims involving non-malignant Asbestosis or Pleural Disease (Disease Levels II and III) that were similarly unliquidated as of the DII Industries Petition Date. Based on the Halliburton Entities' and the Harbison-Walker Entities' settlement history and analysis of present and future claims, the Claims Payment Ratios initially established by the Asbestos PI Trust shall be 60% for Category A claims and 40% for Category B claims. In no event shall the Claims Payment Ratio apply to any Qualifying Settled Asbestos PI Trust Claim, to any Asbestos Final Judgment Claim, or to any claims for Other Asbestos Disease (Disease Level I).

In the event the Asbestos PI Trust implements a Claims Payment Ratio in each year, after the annual determination of the Maximum Available Payment described in section 2.4 above, the Claim Payment Ratio shall be applied to determine the proportion of the Maximum Available Payment that is available for Category A and Category B Claims.

5

Definitive

In the event the Asbestos PI Trust implements a Claims Payment Ratio and there are insufficient funds in any year to pay the liquidated claims within either or both of the Categories, the available funds allocated to the particular Category shall be paid to the maximum extent to claimants in that Category based on their place in the FIFO Payment Queue described in section 5.1(b) below based upon the date of claim liquidation. Claims for which there are insufficient funds allocated to the relevant Category shall be carried over to the next year where they shall be placed at the head of the FIFO Payment Queue. If there are excess funds in either or both Categories, because there is an insufficient amount of liquidated claims to exhaust the respective Maximum Available Payment amount for that Category, then the excess funds for either or both Categories shall be rolled over and remain dedicated to the respective Category to which they were originally allocated.

Except to the extent the Payment Percentage is adjusted upward to 100% (in which case the Trustees may suspend the use of the Claims Payment Ratio), the 60%/40% Claims Payment Ratio and its rollover provision shall not be amended until the fifth anniversary of the Effective Date. Thereafter, both the Claims Payment Ratio and its rollover provision shall be continued absent circumstances, such as a significant change in law or medicine, necessitating amendment to avoid a manifest injustice. However, the accumulation, rollover and subsequent delay of claims resulting from the application of the Claims Payment Ratio, shall not, in and of itself, constitute such circumstances. Nor may an increase in the numbers of Category B claims beyond those predicted or expected be considered as a factor in deciding whether to reduce the percentage allocated to Category A claims.

In considering whether to make any amendments to the Claims Payment Ratio and/or its rollover provisions, the Trustees shall also consider the reasons for which the Claims Payment Ratio and its rollover provisions were adopted, the settlement history that gave rise to its calculation, and the foreseeability or lack of foreseeability of the reasons why there would be any need to make an amendment. In that regard, the Trustees should keep in mind the interplay between the Payment Percentage and the Claims Payment Ratio as it affects the net cash actually paid to claimants. In any event, no amendment to the Claims Payment Ratio may be made without the consent of the Asbestos TAC and the Legal Representative. However, the Trustees at any time may offer the option of a reduced payment percentage to either Category A or Category B in return for prompter payment (the "Reduced Payment Option").

## 2.6    Asbestos PI Trust Indemnity and Contribution Claims

Indirect Asbestos Unsecured PI Trust Claims based on indemnity, contribution, or other theory of reimbursement, if any, shall be subject to the provisions of section 5.6 below.

## SECTION 3
## TDP Administration

### 3.1    Asbestos TAC and Legal Representative

Pursuant to the Plan and the Asbestos PI Trust Agreement, the Asbestos PI Trust and this TDP shall be administered by the Trustees in consultation with the Asbestos TAC and the Legal Representative. The Trustees shall obtain the consent of the Asbestos TAC and the Legal

6

Definitive

Representative on any amendments to this TDP pursuant to section 8.1 below, and on such other matters as are otherwise required below and in section 2.2(f) of the Asbestos PI Trust Agreement. The Trustees shall also consult with the Asbestos TAC and the Legal Representative on such matters as are provided below and in section 2.2(e) and (f) of the Asbestos PI Trust Agreement. The initial members of the Asbestos TAC and the initial Legal Representative are identified in the Asbestos PI Trust Agreement.

### 3.2    Consultation and Consent Procedures

In those circumstances in which their consultation or consent is required, the Trustees shall provide written notice to the Asbestos TAC and the Legal Representative of the specific amendment or other action that is proposed. The Trustees shall not implement such amendment nor take such action unless and until the parties have engaged in the Consultation Process described in sections 5.7(a) and 6.6(a), or the Consent Process described in sections 5.7(b) and 6.6(b) of the Asbestos PI Trust Agreement, respectively.

## SECTION 4
### Payment Percentage; Periodic Estimates

### 4.1    Uncertainty of the Halliburton Entities' and the Harbison-Walker Entities' Asbestos Personal Injury Liabilities

As discussed herein, there is inherent uncertainty regarding the Halliburton Entities' and the Harbison-Walker Entities' total asbestos-related tort liabilities, as well as the total value of the assets available to the Asbestos PI Trust to pay Asbestos Unsecured PI Trust Claims. There is also uncertainty surrounding the totality of the Asbestos Unsecured PI Trust Claims to be paid over time as well as the extent to which changes in applicable law could affect the Asbestos PI Trust's liabilities under this TDP. Consequently, there is inherent uncertainty regarding the amounts that holders of those Asbestos Unsecured PI Trust Claims will receive. To seek to ensure substantially equivalent treatment of all present and future Asbestos Unsecured PI Trust Claims, the Trustees shall determine from time to time the percentage of full liquidated value that holders of present and future Asbestos Unsecured PI Trust Claims will be likely to receive from the Asbestos PI Trust, i.e., the "Payment Percentage" described in section 2.3 above and section 4.2 below.

### 4.2    Payment Percentage

The Payment Percentage (as defined in the Plan) shall apply to all payments made from the Asbestos PI Trust, other than payments made on account of claims involving Other Asbestos Disease (Disease Level I), to assure that such Asbestos PI Trust will be in a financial position to pay holders of present and future Asbestos Unsecured PI Trust Claims in substantially the same manner. Any subsequent changes to the Payment Percentage shall require the consent of the Asbestos TAC and the Legal Representative. The Payment Percentage shall be subject to change pursuant to the terms of this Asbestos TDP and the Asbestos PI Trust if the Trustees determine that an adjustment is required. No less frequently than once every three (3) years, but no more frequently than annually (unless the requesting party can demonstrate the occurrence of a materially adverse change warranting greater frequency), commencing with the first day of

7

January occurring after the Plan is consummated, the Trustees shall reconsider the then-applicable Payment Percentage to assure that it is based on accurate, current information and may, after such reconsideration, change the Payment Percentage, if necessary, with the consent of the Asbestos TAC and the Legal Representative. The Trustees also shall reconsider the then-applicable Payment Percentage at shorter intervals if they deem such reconsideration to be appropriate or if requested to do so by the Asbestos TAC or the Legal Representative. The Trustees must base their determination of the Payment Percentage on current estimates of the number, types, and values of present and future Asbestos Unsecured PI Trust Claims, the value of the assets then available to the Asbestos PI Trust for their payment, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of Asbestos PI Trust funds to pay a comparable percentage of full value to all holders of Asbestos Unsecured PI Trust Claims. When making these determinations, the Trustees shall exercise common sense and shall flexibly evaluate all relevant factors. However, the Payment Percentage applicable to Category A or Category B claims may not be reduced to alleviate delays in payments of claims in the other Category; both Categories of claims shall receive the same Payment Percentage, but the payment may be deferred as needed, and a Reduced Payment Option may be instituted as described in Section 2.5 above.

The uncertainty surrounding the amount of the Asbestos PI Trust's future assets is due in part to the fact that the Asbestos PI Trust may receive additional contributions under the Asbestos PI Trust Additional Funding Agreement. Any additional contributions shall be used first to maintain the then-applicable Payment Percentage.

In determining the Payment Percentage, it shall be reasonable, so long as there has been no default in the Asbestos PI Trust Funding Agreement, for the Trustees to disregard the payment of Qualifying Settled Asbestos Claims, which claims are to be paid solely from funds provided through the Asbestos PI Trust Funding Agreement. In determining the Payment Percentage, it shall also be reasonable for the Trustees to disregard amounts which may be due under the Asbestos PI Trust Additional Funding Agreement until any amounts due under that Agreement become known and payable to the Trust.

However, if the additional contributions exceed the amount estimated to be reasonably necessary to maintain the Payment Percentage then in effect, the Asbestos PI Trust, with the consent of the Asbestos TAC and the Legal Representative, shall adjust the Payment Percentage upward to reflect the increase in available assets and shall also make supplemental payments to claimants who previously liquidated their claims against the Asbestos PI Trust and received payments based on a lower Payment Percentage. The amount of any such supplemental payment shall be the liquidated value of the claim in question times the newly adjusted Payment Percentage, less all amounts previously paid the claimant with respect to the claim. In no event shall the Asbestos PI Trust make such supplemental payments to holders of Qualifying Settled Asbestos Unsecured PI Trust Claims.

### 4.3    Applicability of the Payment Percentage

Except as otherwise provided in section 5.1(b) below for Asbestos Unsecured PI Trust Claims involving deceased or incompetent claimants for which approval of the Asbestos PI Trust's offer by a court or through a probate process is required, no holder of any other Asbestos

Definitive

PI Trust Claim, other than an Asbestos PI Trust Claim for Other Asbestos Disease (Disease Level I), shall receive from the Asbestos PI Trust a payment that exceeds the Liquidated Amount of the claim times the Payment Percentage in effect at the time of payment unless a Reduced Payment Option applies. Asbestos Unsecured PI Trust Claims involving Other Asbestos Disease (Disease Level 1) shall not be subject to the Payment Percentage, but shall instead be paid the full amount of their Scheduled Value as set forth in section 5.3(a)(3) below.

If a redetermination of the Payment Percentage has been proposed in writing by the Trustees to the Asbestos TAC and the Legal Representative but has not yet been adopted, the claimant shall receive the lower of the current Payment Percentage or the proposed Payment Percentage. However, if the proposed Payment Percentage was the lower amount but is not subsequently adopted, the claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount. Conversely, if the proposed Payment Percentage was the higher amount and is subsequently adopted, the claimant shall thereafter receive the difference between the lower current amount and the higher adopted amount.

### SECTION 5
### Resolution of Asbestos Unsecured PI Trust Claims

### 5.1    Ordering, Processing, and Payment of Claims

#### 5.1(a)  Ordering of Claims

##### 5.1(a)(1)  Establishment of the FIFO Processing Queue

Other than Qualifying Settled Asbestos Unsecured PI Trust Claims, which are addressed in section 5.2, the Asbestos PI Trust shall order claims that are sufficiently complete to be reviewed for processing purposes on a FIFO basis, except as otherwise provided herein (the "FIFO Processing Queue"). For all claims filed between November 9, 2005, (the "Claims Acceptance Date") and before May 9, 2006, a claimant's position in the FIFO Processing Queue shall be determined as of the earlier of (i) the date prior to December 16, 2003 (the "DII Industries Petition Date") that the specific claim was either filed against one or more of the Halliburton Entities or the Harbison-Walker Entities in the tort system or was actually submitted to one or more of the Halliburton Entities or the Harbison-Walker Entities pursuant to an administrative settlement agreement, (ii) the date before the DII Industries Petition Date that a claim was filed against another defendant in the tort system if at the time the claim was subject to a tolling agreement with one or more of the Halliburton Entities or the Harbison-Walker Entities, or (iii) the date after the DII Industries Petition Date (if any) but before the Claims Acceptance Date that the claim was filed against another defendant in the tort system. Following May 9, 2006, the claimant's position in the FIFO Processing Queue shall be determined by the date the claim is filed with the Asbestos PI Trust. If any claims are filed on the same date, the claimant's position in the FIFO Processing Queue shall be determined by the date of the diagnosis of the asbestos-related disease. If any claims are filed and diagnosed on the same date, the claimant's position in the FIFO Processing Queue shall be determined by the claimant's date of birth, with older claimants given priority over younger claimants.

016923.00010:1027978.01

Definitive

### 5.1(a)(2)  Effect of Statutes of Limitations and Repose

Except as otherwise provided in this subsection below, all Asbestos PI Trust Claims must meet either (i) for claims first filed in the tort system against one or more of the Halliburton Entities or the Harbison-Walker Entities prior to the DII Industries Petition Date (December 16, 2003), the applicable federal, state, and foreign statute of limitation and repose that was in effect at the time of the filing of the claim in the tort system or (ii) for claims not filed against one or more of the Halliburton Entities or the Harbison-Walker Entities in the tort system prior to the DII Industries Petition Date, the applicable statute of limitation that was in effect at the time of the filing with Asbestos PI Trust.

However, the running of the relevant statute of limitation shall be tolled as of the earliest of (A) the actual filing of the claim against one or more of the Halliburton Entities or the Harbison-Walker Entities prior to the DII Industries Petition Date, whether in the tort system or by submission of the claim to one or more of the Halliburton Entities or the Harbison-Walker Entities pursuant to an administrative settlement agreement; (B) the filing of the claim against another defendant in the tort system prior to the DII Industries Petition Date if the claim was tolled against one or more of the Halliburton Entities or the Harbison-Walker Entities at the time by an agreement or otherwise; (C) the occurrence of the DII Industries Petition Date if the claim is the result of exposure to asbestos-containing products for which only a Halliburton Entity or a Harbison-Walker Entity has legal responsibility; and (D) the filing of a claim after the DII Industries Petition Date but prior to the Claims Acceptance Date against another defendant in the tort system. .

If an Asbestos PI Trust Claim meets any of the tolling provisions described in the preceding sentence and the claim was not barred by the applicable federal, state, or foreign statute of limitation at the time of the tolling event, it shall be treated as timely filed if it is actually filed with the Asbestos PI Trust within three (3) years after the Claims Acceptance Date.  In addition, any claims that were first diagnosed after the DII Industries Petition Date, irrespective of the application of any relevant federal, state, or foreign statute of limitation or repose, may be filed with the Asbestos PI Trust within three (3) years after the date of diagnosis or within three (3) years after the Claims Acceptance Date, whichever occurs later. However, the processing of any Asbestos PI Trust Claim by the Asbestos PI Trust may be deferred at the election of the claimant pursuant to section 6.3.

### 5.1(b)  Payment of Claims

Asbestos Unsecured PI Trust Claims that have been liquidated by the Asbestos Trust's Expedited Review process ("Expedited Review") as provided in section 5.3(a) below, by the Asbestos Trust's Individual Review process ("Individual Review") as provided in section 5.3(b) below, by arbitration as provided in section 5.10 below, or by litigation in the tort system provided in sections 5.11 and section 7.6 below shall be paid in FIFO order based on the date their liquidation became final (the "FIFO Payment Queue"), all such payments being subject to the applicable Payment Percentage, the Maximum Annual Payment, the Maximum Available Payment, and, if any, the Claims Payment Ratio, except as otherwise provided herein. Qualifying Settled Asbestos Unsecured PI Trust Claims shall be paid solely pursuant to the Plan,

016923.00010:1027978.01

Definitive

the Asbestos PI Trust Funding Agreement, and section 5.2(a) below. Asbestos Final Judgment Claims shall be paid solely pursuant to section 5.2(b) below.

Where the claimant is deceased or incompetent, and the settlement and payment of his or her claim must be approved by a court of competent jurisdiction or through a probate process prior to acceptance of the claim by the claimant's representative, an offer made by the Asbestos PI Trust on the claim shall remain open so long as proceedings before that court or in that probate process remain pending, provided that the Asbestos PI Trust has been furnished with evidence that the settlement offer has been submitted to such court or in the probate process for approval. If the offer is ultimately approved by the court or through the probate process and accepted by the claimant's representative, the Asbestos PI Trust shall pay the claim in the amount so offered, multiplied by the Payment Percentage in effect at the time the offer was first made.

If any claims are liquidated on the same date, the claimant's position in the FIFO Payment Queue shall be determined by the date of the diagnosis of the claimant's asbestos-related disease. If any claims are liquidated on the same date and the respective holders' asbestos-related diseases were diagnosed on the same date, the position of those claims in the FIFO Payment Queue shall be determined by the Asbestos PI Trust based on the dates of the claimants' birth, with older claimants given priority over younger claimants.

### 5.1(c)  Adjusting Payments Option

At the sole discretion of the Trustees (with the consent of the Asbestos TAC and the Legal Representative), the Asbestos PI Trust may authorize supplemental payments, on account of any future increase in the Payment Percentage, to any or all previously allowed Asbestos Unsecured PI Trust Claims (other than Qualifying Settled Asbestos PI Trust Claims) in an amount equal to the Liquidated Value multiplied by the then-current Payment Percentage less the amount of any previous payments on account of such Claims (other than payments on account of interest under section 7.5 below); provided, however, that the Asbestos PI Trust shall not be obligated, under this paragraph, to make a supplemental payment on account of any allowed Asbestos Unsecured PI Trust Claim and shall not make any supplemental payment to the extent that the amount of such supplemental payment would be less than $100.

In addition, at the sole discretion of the Trustees (with the consent of the Asbestos TAC and the Legal Representative), the Asbestos PI Trust may authorize supplemental payments, on account of any future increase of any Scheduled Value, Average Value or Maximum Value under section 5.3(c) of this Asbestos TDP, to any or all previously allowed Asbestos Unsecured PI Trust Claims (other than Qualifying Settled Asbestos PI Trust Claims) in the affected Disease Level. The amount of any such supplemental payments shall be determined by the Trustees (with the consent of the Asbestos TAC and the Legal Representative) at the time of any such future increase under section 5.3(c); provided, however, that in no event shall the Asbestos PI Trust be obligated, under this paragraph, to make a supplemental payment on account of any allowed Asbestos Unsecured PI Trust Claim to the extent that the amount of such supplemental payment would be less than $100.

016923.00010:1027978.01

Definitive

**5.2    Resolution of Liquidated Asbestos Unsecured PI Trust Claims.**

### 5.2(a)  Qualifying Settled Asbestos PI Trust Claims.

Qualifying Settled Asbestos PI Trust Claims shall be paid by the Asbestos PI Trust pursuant to the terms of the Plan and the Asbestos PI Trust Funding Agreement. Any dispute concerning whether a Settled Asbestos PI Trust Claim is a Qualifying Settled Asbestos PI Trust Claim shall be resolved between the claimant and the Debtors or Reorganized Debtors solely in accordance with the applicable Asbestos Claimant Settlement Agreement and the Plan. The Asbestos PI Trust shall not participate in such dispute and shall have no responsibility to pay a Settled Asbestos PI Trust Claim that has not been determined in accordance with the terms of the applicable Asbestos Claimant Settlement Agreement and the Plan to be a Qualifying Settled Asbestos PI Trust Claim; provided, however, that nothing in this section 5.2(a) shall preclude the holder of an alleged Settled Asbestos PI Trust Claim that is determined not to be a Qualifying Settled Asbestos PI Trust Claim from submitting an Asbestos Unsecured PI Trust Claim to the Asbestos PI Trust. Qualifying Settled Asbestos PI Trust Claims shall not be subject to the Payment Percentage, Maximum Annual Payment, Maximum Available Payment or Claims Payment Ratio, if any, limitations provided above.

### 5.2(b)  Asbestos Final Judgment Claims

Asbestos Final Judgment Claims as defined in the Plan shall be processed by the Asbestos PI Trust based on their place in a separate FIFO queue to be established for such claims. The placement of such claims in the FIFO queue shall be based on the date on which the claim was liquidated by a final judgment in the tort system. The Liquidated Amount of such claims shall be the unpaid amount of the judgment plus any interest on the claim that has accrued under applicable state law. All payments of Asbestos Final Judgment Claims shall be subject to the applicable Payment Percentage and the Maximum Annual Payment provisions set forth above. Such claims, however, shall not be subject to the Maximum Available Payment or Claims Payment Ratio, if any, limitations.

**5.3    Resolution of Unliquidated Asbestos PI Trust Claims**

Within six months after the establishment of the Asbestos PI Trust, the Trustees, with the consent of the Asbestos TAC and the Legal Representative, shall adopt procedures for reviewing and liquidating all unliquidated Asbestos Unsecured PI Trust Claims, which shall include deadlines for processing such claims. Such procedures shall also require that claimants seeking resolution of unliquidated Asbestos Unsecured PI Trust Claims first file a proof of claim form, together with the required supporting documentation, in accordance with the provisions of sections 6.1 and 6.2 below. It is anticipated that the Asbestos PI Trust shall provide an initial response to the claimant within six months of receiving the proof of claim form.

The proof of claim form shall require the claimant to assert his or her claim for the highest Disease Level for which the claim qualifies at the time of filing. Irrespective of the Disease Level alleged on the proof of claim form, all claims shall be deemed to be a claim for the highest Disease Level for which the claim qualifies at the time of filing, and all lower Disease

016923.00010:1027978.01

Levels for which the claim may also qualify at the time of filing or in the future shall be treated as subsumed into the higher Disease Level for both processing and payment purposes.

Upon filing of a valid proof of claim form with the required supporting documentation, the claimant shall be placed in the FIFO Processing Queue in accordance with the ordering criteria described in section 5.1(a) above. If a claim has been pending in the FIFO Processing Queue for more than 270 days, the Asbestos PI Trust shall provide the claimant with reasonable notice of the date by which it expects to reach the claim in the FIFO Processing Queue, following which the claimant shall promptly (i) advise the Asbestos PI Trust whether the claimant wishes to change his or her initial election as between Expedited Review and Individual Review; (ii) provide the Asbestos PI Trust with any additional medical and/or exposure evidence that was not provided with the original claim submission; and (iii) advise the Asbestos PI Trust of any change in the claimant's Disease Level. If a claimant fails to respond to the Asbestos PI Trust's notice on a timely basis, the Asbestos PI Trust shall process and liquidate the claim under the review process initially elected based upon the medical/exposure evidence previously submitted by the claimant. Claimants may supplement or otherwise update information submitted with claims filed with the Asbestos PI Trust at any time before the Asbestos PI Trust issues a notice of determination with respect to the claim.

### 5.3(a)  Expedited Review Process

### 5.3(a)(1) In General

Expedited Review is designed primarily to provide an expeditious, efficient, and inexpensive method for liquidating all Asbestos Unsecured PI Trust Claims (except those involving Lung Cancer 2-Disease Level VI and all Foreign Claims as defined below, which shall be liquidated only pursuant to the Asbestos PI Trust's Individual Review process) where the claim can easily be verified by the Asbestos PI Trust as meeting the presumptive Medical/Exposure Criteria for the relevant Disease Level. Expedited Review thus provides claimants with a substantially less burdensome process for pursuing Asbestos Unsecured PI Trust Claims than does the Individual Review process described in section 5.3(b) below. Expedited Review is also intended to provide qualifying claimants a fixed and certain claims payment.

Thus, claims that undergo Expedited Review and meet the presumptive Medical/Exposure Criteria for the relevant Disease Level shall be paid the Scheduled Value for such Disease Level set forth in section 5.3(a)(3) below. However, except for claims involving Other Asbestos Disease (Disease Level I-Cash Discount Payment), all claims liquidated by Expedited Review shall be subject to the applicable Payment Percentage, the Maximum Available Payment, and, if any, the Claims Payment Ratio limitations set forth above. Claimants holding claims that cannot be liquidated by Expedited Review because they do not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level may elect Individual Review set forth in section 5.3(b) below.

Further, the claimant's eligibility to receive the Scheduled Value for his or her Asbestos Unsecured PI Trust Claim pursuant to the Expedited Review Process shall be determined by

13

Definitive

reference to the Medical/Exposure Criteria set forth below (rather than by reference to the law of the Claimant's Jurisdiction) for each of the Disease Levels eligible for Expedited Review.

### 5.3(a)(2)  Claims Processing under Expedited Review

All claimants seeking liquidation of their claims pursuant to Expedited Review shall file the Asbestos PI Trust's proof of claim form provided in Attachment B hereto.  As a proof of claim form is reached in the FIFO Processing Queue, the Asbestos PI Trust shall determine whether the claim described therein meets the Medical/Exposure Criteria for one of the seven Disease Levels eligible for Expedited Review and shall advise the claimant of its determination. If a Disease Level is determined, the Asbestos PI Trust shall tender to the claimant an offer of payment of the Scheduled Value for the relevant Disease Level multiplied by the applicable Payment Percentage, together with a form of release approved by the Asbestos PI Trust.  If the claimant accepts the Scheduled Value and returns the release properly executed, the claim shall be placed in the FIFO Payment Queue, following which the Asbestos PI Trust shall disburse payment subject to the limitations of the Maximum Available Payment and Claims Payment Ratio, if any.

### 5.3(a)(3)  Disease Levels, Scheduled Values, and Medical/Exposure Criteria

The eight Disease Levels covered by this TDP, together with the Medical/Exposure Criteria for each and the separate Scheduled Values for the unliquidated Asbestos Unsecured PI Trust Claims for which any of the Harbison-Walker Entities have legal responsibility (the "Harbison-Walker Asbestos Unsecured PI Trust Claims") and for the unliquidated Asbestos Unsecured PI Trust Claims for which any of the Halliburton Entities or their predecessors other than Harbison-Walker Entities have legal responsibility (the "Non Harbison-Walker Asbestos Unsecured PI Trust Claims") for the seven Disease Levels eligible for Expedited Review, are set forth below.  For those claimants who (i) vote to accept or reject the plan and (ii) file their claims with the Asbestos PI Trust on or before six months after the Claims Acceptance Date provided in section 5.1 above, these Disease Levels, Scheduled Values, and Medical/Exposure Criteria shall apply to all Asbestos Unsecured PI Trust Claims (except Qualifying Settled Asbestos Unsecured PI Trust Claims) for which the claimant elects Expedited Review.  Thereafter for purposes of administering Expedited Review and with the consent of the Asbestos TAC and the Legal Representative, the Trustees may add to, change, or eliminate Disease Levels, Scheduled Values, or Medical/Exposure Criteria, develop subcategories of Disease Levels, Scheduled Values, or Medical/Exposure Criteria, or determine that a novel or exceptional asbestos personal injury claim is compensable even though it does not meet the Medical/Exposure Criteria for any of the then-current Disease Levels.

**[remainder of page intentionally left blank]**

016923.00010:1027978.01

Definitive

### Schedule I-Non-Harbison-Walker Asbestos Unsecured PI Trust Claims and Harbison-Walker Asbestos Unsecured PI Trust Claims

| Disease Level | Non-Harbison-Walker Asbestos Unsecured PI Trust Claims/ Harbison-Walker Asbestos Unsecured PI Trust Claims | Medical/Exposure Criteria |
|---|---|---|
| Mesothelioma (Level VIII) | $21,500/$51,300 | (1) Diagnosis[2] of mesothelioma and (2) credible evidence of Company Exposure[3] as defined in section 5.7(c). |
| Lung Cancer 1 (Level VII) | $3,500/$16,900 | (1) Diagnosis of a primary lung cancer plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease,[4] (2) six months |

[2]  The requirements for a diagnosis of an asbestos-related disease that may be compensated under the provisions of this TDP are set forth in section 5.7 below.

[3]  The term "Company Exposure" is defined in section 5.7(c) below.

[4]  Evidence of "Bilateral Asbestos-Related Nonmalignant Disease" for purposes of meeting the criteria for establishing Disease Levels I, II, III, V, and VII, means either (i) a chest X-ray read by a qualified B reader of 1/0 or higher on the ILO scale or (ii)(x) a chest X-ray read by a qualified B reader or other Qualified Physician, (y) a CT scan read by a Qualified Physician, or (z) pathology, in each case showing either bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification. Solely for claims filed against the Halliburton Entities and/or the Harbison-Walker Entities or another asbestos defendant in the tort system prior to the DII Industries Petition Date, if an ILO reading is not available, either (i) a chest X-ray or a CT scan read by a Qualified Physician, or (ii) pathology, in each case showing bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification consistent with or compatible with a diagnosis of asbestos-related disease, shall be evidence of a "Bilateral Asbestos-Related Nonmalignant Disease" for purposes of meeting the presumptive medical requirements of Disease Levels I, II, III, V, and VII. Pathological evidence of asbestosis may be based on the pathological grading system for asbestosis described in the Special Issue of the Archives of Pathology and Laboratory Medicine, "Asbestos-Associated Diseases," Vol. 106, No. 11, App. 3 (October 8, 1982).  For all purposes of this TDP, a "Qualified Physician" is a physician who is board-certified (or in the case of Canadian claims or Foreign Claims, a physician who is certified or qualified under comparable medical standards or criteria of the jurisdiction in question) in one or more relevant specialized fields of medicine such as pulmonology, radiology, internal medicine or occupational medicine; provided, however,

[Footnote continued on next page]

016923.00010:1027978.01

Definitive

| Disease Level | Non-Harbison-Walker Asbestos Unsecured PI Trust Claims/ Harbison-Walker Asbestos Unsecured PI Trust Claims | Medical/Exposure Criteria |
|---|---|---|
| | | Company Exposure prior to December 31, 1982, (3) Significant Occupational Exposure[5] to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. |
| Lung Cancer 2 (Level VI) | N/A | (1) Diagnosis of a primary lung cancer, (2) Company Exposure prior to December 31, 1982, and (3) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. Lung Cancer 2 (Level VI) claims are claims that do not meet the more stringent medical and/or exposure requirements of Lung Cancer (Level VII) claims. All claims in this Disease Level shall be individually evaluated. The estimated likely average of the individual evaluation awards for this category is $1,500 (Non-Harbison-Walker Asbestos Unsecured PI Trust Claims)/$7,200 (Harbison-Walker Asbestos Unsecured PI Trust Claims), with such awards capped at $5,000 (Non-Harbison-Walker Asbestos Unsecured PI Trust Claims)/ $24,000 (Harbison-Walker Asbestos Unsecured PI Trust Claims) unless the claim qualifies for Extraordinary Claim treatment. Level VI claims that show no evidence of either an underlying Bilateral Asbestos-Related Non-malignant Disease or Significant Occupational Exposure may be individually evaluated, although it is not expected that such claims will be treated as having any significant value, especially if the claimant is also a Smoker.[6] In any event, no presumption of validity shall be available for any claims in this category. |

---

[Footnote continued from previous page]
that the requirement for board certification in this provision shall not apply to otherwise qualified physicians whose X-ray and/or CT scan readings are submitted for deceased holders of Asbestos PI Trust Claims.

[5] The term "Significant Occupational Exposure" is defined in section 5.7(b)(2) below.

[6] There is no distinction between Non-Smokers and Smokers for either Lung Cancer I (Level VII) or Lung Cancer 2 (Level VI), although a claimant who meets the more stringent requirements of Lung Cancer 1 (Level VII) (evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease plus Significant Occupational Exposure), and who is also a Non-Smoker, may wish to have his or her claim individually evaluated by the PI Trust. In such a case, absent circumstances that would otherwise reduce the value of the claim, it is anticipated that the liquidated value of the claim might well exceed the Scheduled Value for Lung Cancer I (Level VII) shown above. "Non-Smoker" means a claimant who either

[Footnote continued on next page]

016923.00010:1027978.01

Definitive

| Disease Level | Non-Harbison-Walker Asbestos Unsecured PI Trust Claims/ Harbison-Walker Asbestos Unsecured PI Trust Claims | Medical/Exposure Criteria |
|---|---|---|
| Other Cancer (Level V) | $3,000/$9,000 | (1) Diagnosis of a primary colo-rectal, laryngeal, esophageal, pharyngeal, or stomach cancer, plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease, (2) six months Company Exposure prior to December 31, 1982, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the other cancer in question. |
| Severe Asbestosis (Level IV) | $3,500/$11,000 | (1) Diagnosis of asbestosis with ILO of 2/1 or greater, or asbestosis determined by pathological evidence of asbestosis[7], plus (a) TLC less than 65% or (b) FVC less than 65% and FEVl/FVC ratio greater than 65%, (2) six (6) months Company Exposure prior to December 31, 1982, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
| Asbestosis/ Pleural Disease (Level III) | $900/$2,700 | (1) Diagnosis of Bilateral Asbestos-Related Nonmalignant Disease, plus (a) TLC less than 80% or (b) FVC less than 80% and FEVl/FVC ratio greater than 65%, (2) six months Company Exposure prior to December 31, 1982, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
| Asbestosis/ Pleural Disease (Level II) | $400/$1,400 | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease, (2) six months Company Exposure, and (3) five years cumulative occupational exposure to asbestos. |
| Other Asbestos Disease (Level I) | $100/$300 | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease or an asbestos-related malignancy other than mesothelioma and (2) Company Exposure prior to December 31, 1982. |

---

[Footnote continued from previous page]
    (a) never smoked or (b) has not smoked during any portion of the twelve (12) years immediately prior to the diagnosis of the lung cancer.

[7] [Intentionally deleted.]

016923.00010:1027978.01

Definitive

### 5.3(b)  Individual Review Process

### 5.3(b)(1) In General

Subject to the provisions set forth below, an Asbestos PI Trust claimant may elect to have his or her Asbestos Unsecured PI Trust Claim reviewed for purposes of determining whether the claim would be compensable in the tort system even though it does not meet the presumptive Medical/Exposure Criteria for any of the Disease Levels set forth in section 5.3(a)(3) above. In addition, or alternatively, an Asbestos PI Trust claimant may elect to have a claim involving Disease Levels IV-VIII undergo the Individual Review process for purposes of determining whether the liquidated value of the claim exceeds the Scheduled Value for the relevant Disease Level also set forth in said provision. However, until such time as the Asbestos PI Trust has made an offer on a claim pursuant to Individual Review, the claimant may change his or her Individual Review election and have the claim liquidated pursuant to the Asbestos PI Trust's Expedited Review process. In the event of such a change in the processing election, the claimant shall nevertheless retain his or her place in the FIFO Processing Queue.

The liquidated value of all Foreign Claims payable under this Asbestos TDP shall be established pursuant to the Asbestos PI Trust's Individual Review process. Because Asbestos Unsecured PI Trust Claims of individuals exposed in Canada who were resident in Canada when such claims were filed were routinely litigated and resolved in the courts of the United States, and because the resolution history of these claims has been included in developing the Expedited Review Process, such claims shall not be considered Foreign Claims hereunder and shall be eligible for liquidation under the Expedited Review Process. Accordingly, a "Foreign Claim" is an Asbestos PI Trust Claim with respect to which the claimant's exposure to an asbestos-containing product for which any Halliburton Entity or Harbison-Walker Entity has legal responsibility occurred outside of the United States and its Territories and Possessions, and outside of the Provinces and Territories of Canada.

In reviewing Foreign Claims, the Asbestos PI Trust shall take into account all relevant procedural and substantive legal rules to which the claims would be subject in the Claimant's Jurisdiction as defined in section 5.3(b)(2) below. The Asbestos PI Trust shall determine the liquidated value of Foreign Claims based on historical settlements and verdicts in the Claimant's Jurisdiction as well as the other valuation factors set forth in section 5.3(b)(2) below.

For purposes of the Individual Review process, the Trustees, with the consent of the Asbestos TAC and the Legal Representative, may develop separate Medical/Exposure Criteria and standards, as well as separate requirements for physician and other professional qualifications, which shall be applicable to Foreign Claims; provided, however, that such criteria, standards, or requirements shall not effectuate substantive changes to the claims-eligibility requirements under this Asbestos TDP, but rather shall be made only for the purpose of adapting those requirements to the particular licensing provisions and/or medical customs or practices of the foreign country in question.

At such time as the Asbestos PI Trust has sufficient historical settlement, verdict, and other valuation data for claims from a particular foreign jurisdiction, the Trustees, with the

consent of the Asbestos TAC and the Legal Representative, may also establish a separate valuation matrix for such claims based on that data.

### 5.3(b)(1)(A)  Disease Levels I-III

Individual Review provides a claimant with an opportunity for individual consideration and evaluation of an Asbestos Unsecured PI Trust Claim that fails to meet the presumptive Medical/Exposure Criteria for Disease Levels I-III, in such a case, the Asbestos PI Trust shall either deny the claim, or, if the Asbestos PI Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system, the Asbestos PI Trust can offer the claimant a liquidated value amount up to the Scheduled Value for that Disease Level, unless the claim qualifies as an Extraordinary Claim as defined in section 5.4(a) below, in which case its liquidated value cannot exceed the maximum value for such a claim set forth in that provision.

### 5.3(b)(1)(B)  Disease Levels IV-VIII

Claimants holding claims in the five more serious Disease Levels IV-VIII shall be eligible to seek Individual Review of the liquidated value of their claims, as well as of their medical/exposure evidence. The Individual Review process is intended to result in payments equal to the full liquidated value for each claim multiplied by the Payment Percentage; however, the liquidated value of any Asbestos Unsecured PI Trust Claim that undergoes Individual Review may be determined to be less than the Scheduled Value the claimant would have received under Expedited Review. Moreover, the liquidated value for a claim involving Disease Levels IV-VIII shall not exceed the Maximum Value for the relevant Disease Level set forth in section 5.3(b)(3) below, unless the claim meets the requirements of an Extraordinary Claim described in section 5.4(a) below, in which case its liquidated value cannot exceed the maximum value set forth in that provision for such claims. Because the detailed examination and valuation process pursuant to Individual Review requires substantial time and effort, claimants electing to undergo the Individual Review process may be paid the liquidated value of their Asbestos Unsecured PI Trust Claims later than would have been the case had the claimant elected the Expedited Review process.

### 5.3(b)(2)  Valuation Factors to be Considered in
### Individual Review

The Asbestos PI Trust shall liquidate the value of each Asbestos Unsecured PI Trust Claim that undergoes Individual Review based on the historic liquidated values of other similarly situated claims in the tort system for the same Disease Level. The Asbestos PI Trust shall thus take into consideration all of the factors that affect the severity of damages and values within the tort system including, but not limited to: (i) the degree to which the characteristics of a claim differ from the presumptive Medical/Exposure Criteria for the Disease Level in question; (ii) factors such as the claimant's age, disability, employment status, disruption of household, family, or recreational activities, dependencies, special damages, and pain and suffering; (iii) evidence that the claimant's damages were (or were not) caused by asbestos exposure, including Company Exposure as defined in section 5.7(c) below prior to December 31, 1982 (for example, alternative causes and the strength of documentation of injuries); (iv) the industry of

016923.00010:1027978.01

exposure; and (v) settlements, verdicts, and the claimant's and other law firms' experience in the Claimant's Jurisdiction for similarly situated claims.

The "Claimant's Jurisdiction" is the jurisdiction in which the claim was filed (if at all) against one or more of the Halliburton Entities or the Harbison-Walker Entities in the tort system prior to the DII Industries Petition Date. If the claim was not filed against one or more of the Halliburton Entities or the Harbison Walker Entities in the tort system prior to the DII Industries Petition Date, the claimant may elect as the Claimant's Jurisdiction either (i) the jurisdiction in which the claimant resides at the time of diagnosis or when the claim is filed with the Asbestos PI Trust or (ii) a jurisdiction in which the claimant experienced exposure to an asbestos-containing product or to conduct for which any of the Halliburton Entities or the Harbison-Walker Entities has legal responsibility. With respect to the "Claimant's Jurisdiction" in the event a personal representative or authorized agent of a deceased claimant makes a claim under this TDP for wrongful death with respect to which the governing law of the Claimant's Jurisdiction would only be the Alabama Wrongful Death Statute, the Claimant's Jurisdiction for such claim shall be Commonwealth of Pennsylvania, and such claimant's damages for purposes of Individual Review shall be determined pursuant to the statutory and common laws of the Commonwealth of Pennsylvania without regard to its choice of law principles.

### 5.3(b)(3) Scheduled, Average, and Maximum Values
### (Non-Harbison-Walker Asbestos PI Trust Claims)

The Scheduled, Average, and Maximum Values for all Asbestos Unsecured PI Trust Claims, other than Harbison-Walker Asbestos Unsecured PI Trust Claims, are the following:

| Scheduled Disease | Scheduled Value | Average Value[8] | Maximum Value |
|---|---|---|---|
| Mesothelioma (Level VIII) | $21,500 | $28,700 | $95,700 |
| Lung Cancer 1 (Level VII) | $3,500 | $4,500 | $15,000 |
| Lung Cancer 2 (Level VI) | N/A | $1,500 | $5,000 |
| Other Cancer (Level V) | $3,000 | $3,700 | $12,300 |
| Severe Asbestosis (Level IV) | $3,500 | $3,700 | $15,000 |
| Asbestosis/Pleural Disease (Level III) | $900 | N/A | N/A |
| Asbestosis/Pleural Disease (Level II) | $400 | N/A | N/A |
| Other Asbestos Disease (Level I) | $100 | N/A | N/A |

The Asbestos PI Trust, with the consent of the Asbestos TAC and the Legal Representative pursuant to sections 5.7(b) and 6.6(b) of the Asbestos PI Trust Agreement, may change these valuation amounts for good cause in accordance with section 5.3(c) below.

---

[8]  [Intentionally deleted.]

Definitive

## 5.3(b)(4)  Scheduled, Average, and Maximum Values
## (Harbison-Walker Asbestos PI Trust Claims)

The Scheduled, Average, and Maximum Values for all Harbison-Walker Asbestos Unsecured PI Trust Claims are the following:

| Scheduled Disease | Scheduled Value | Average Value[9] | Maximum Value |
|---|---|---|---|
| Mesothelioma (Level VIII) | $51,300 | $68,400 | $228,000 |
| Lung Cancer 1 (Level VII) | $16,900 | $21,700 | $72,300 |
| Lung Cancer 2 (Level VI) | N/A | $7,200 | $24,000 |
| Other Cancer (Level V) | $9,000 | $10,900 | $36,300 |
| Severe Asbestosis (Level IV) | $11,000 | $11,600 | $47,000 |
| Asbestosis/Pleural Disease (Level III) | $2,700 | N/A | N/A |
| Asbestosis/Pleural Disease (Level II) | $1,400 | N/A | N/A |
| Other Asbestos Disease (Level I) | $300 | N/A | N/A |

The Asbestos PI Trust, with the consent of the Asbestos TAC and the Legal Representative pursuant to sections 5.7(b) and 6.6(b) of the Asbestos PI Trust Agreement, may change these valuation amounts for good cause in accordance with section 5.3(c) below..

## 5.3(c)  Review and Adjustment of Scheduled Values, Average
## Values and Maximum Values

Before the end of 2010, and no later than every five years thereafter, the Asbestos PI Trust shall review the Scheduled Values, Average Values and Maximum Values set forth for each Disease Level in this Asbestos TDP to determine whether such values should be adjusted either upwards of downwards, including in relationship to one another. The Trustees also may review the then-applicable values if requested to do so by the Asbestos TAC or the Legal Representative, except that no review may be requested until at least one year after the last such review (unless the requesting party can demonstrate the occurrence of a material change warranting a review on a shorter interval). In such review, the Asbestos PI Trust may consider all factors that the Trustees, in their discretion, deem appropriate, including, but not limited to: i) the latest projections of future claims; ii) the Asbestos PI Trust's available assets; iii) the Asbestos PI Trust's past claims experience (including, among other things, the number of claims filed, the percentage of claimants electing Individual Review and Expedited Review, and the mix of Disease Levels asserted) in relation to what was projected when the Scheduled Values, Average Values and Maximum Values were originally established; and iv) the values being awarded relative to claims with similar characteristics outside of the Asbestos PI Trust process. The actual timing of such review, within the guidelines established above, shall be in the Trustees' discretion. The Asbestos PI Trust may implement its proposed adjustments, if any, to the Scheduled Values, Average Values and Maximum Values with the consent of the Asbestos TAC  and the Legal Representative pursuant to sections 5.7(b) and 6.6(b) of the Asbestos PI

---

[9]  [Intentionally deleted.]

016923.00010:1027978.01

Definitive

Trust Agreement.

### 5.4    Categorizing Claims as Extraordinary and/or Exigent Hardship

#### 5.4(a)(1) Extraordinary Claims

"Extraordinary Claim" means an Asbestos Unsecured PI Trust Claim that otherwise satisfies the Medical Criteria for Disease Levels II-VIII and that is held by a claimant whose exposure to asbestos (i) occurred primarily as a result of working in manufacturing facilities of one or more of the Halliburton Entities or the Harbison-Walker Entities or their predecessors during a period in which they were manufacturing asbestos-containing products at the facility, provided that the claim is a tort claim that is not otherwise barred by an applicable statutory workers' compensation program, or (ii) was at least 75% the result of Company Exposure as defined in section 5.7(c) below, and there is little likelihood of a substantial recovery elsewhere. All such Extraordinary Claims shall be presented for Individual Review and, if valid, shall be entitled to an award of up to (i) for Disease Levels II-V, VII, and VIII, five (5) times the Scheduled Value for such claims and (ii) for Disease Level VI, five (5) times the Average Value for such claims, multiplied by the applicable Payment Percentage.

Any dispute as to Extraordinary Claim status shall be submitted to a special Extraordinary Claims Panel established by the Asbestos PI Trust with the consent of the Asbestos TAC and the Legal Representative. All decisions of the Extraordinary Claims Panel shall be final and not subject to any further administrative or judicial review.

An Extraordinary Claim, following its liquidation, shall be placed in the FIFO Payment Queue ahead of all other Asbestos Unsecured PI Trust Claims except Exigent Hardship Claims, Disease Level I (Other Asbestos Disease) Claims, and Asbestos Final Judgment Claims, which shall be first in said queue and shall be paid in that order, based on its date of liquidation, subject to the Maximum Available Payment and Claims Payment Ratio described above.

#### 5.4(a)(2) Exigent Hardship Claims

At any time the Asbestos PI Trust may liquidate and pay Asbestos Unsecured PI Trust Claims that qualify as Exigent Hardship Claims as defined below. Such claims may be considered separately no matter what the order of processing otherwise would have been under this TDP. An Exigent Hardship Claim, following its liquidation, shall be placed first in the FIFO Payment Queue ahead of all other liquidated Asbestos Unsecured PI Trust Claims, except Asbestos Final Judgment Claims and Disease Level I (Other Asbestos Disease) Claims, which shall be first in said queue and shall be paid first in that order, subject to the Maximum Available Payment and Claims Payment Ratio described above. An Asbestos Unsecured PI Trust Claim qualifies for payment as an Exigent Hardship Claim if the claim meets the Medical/Exposure Criteria for Severe Asbestosis (Disease Level IV) or an asbestos-related malignancy (Disease Levels V-VIII) and the Asbestos PI Trust, in its sole discretion, determines (a) that the claimant needs financial assistance on an immediate basis based on the claimant's expenses and all sources of available income and (b) that there is a causal connection between the claimant's dire financial condition and the claimant's asbestos-related disease ("Exigent Hardship Claims").

016923.00010:1027978.01

Definitive

### 5.5    Secondary Exposure Claims

If a claimant alleges an asbestos-related disease resulting solely from exposure to an occupationally exposed person, such as a family member, the claimant may seek Individual Review of his or her claim pursuant to section 5.3(b) above. In such a case, the claimant must establish that the occupationally exposed person would have met the exposure requirements under this TDP that would have been applicable had that person filed a direct claim against the Asbestos PI Trust. In addition, the claimant with secondary exposure must establish (a) that he or she is suffering from one of the eight Disease Levels described in section 5.3(b)(3) above or an asbestos-related disease otherwise compensable under this TDP, (b) that his or her own exposure to the occupationally exposed person occurred within the same time frame as the occupationally exposed person experienced Company Exposure as defined in section 5.7(c)(1) below, and (c) that such secondary exposure to such occupationally exposed person was a cause of the claimed disease. The proof of claim form included in Attachment B hereto contains an additional section for such secondary exposure claims. All other liquidation and payment rights and limitations under this TDP shall be applicable to such claims.

### 5.6    Indirect Asbestos PI Trust Claims

#### 5.6(a)  In General

Except as provided in section 5.6(b) below, Indirect Asbestos PI Trust Claims that are asserted against the Asbestos PI Trust based upon theories of contribution or indemnification under applicable law may not be processed or paid by the Asbestos PI Trust unless the holder of such claim (the "Indirect Asbestos Claimant") establishes to the satisfaction of the Trustees that (a) the Indirect Asbestos Claimant has paid in full obligations that the Asbestos PI Trust otherwise would have had to an individual claimant (the "Direct Asbestos Claimant"), (b) the Asbestos PI Trust has been or shall be forever and fully released from all liability to both the Direct Asbestos Claimant and the Indirect Asbestos Claimant, and (c) the claim is not otherwise barred by a statute of limitation, repose, or other applicable non-bankruptcy law. In no event shall any Indirect Asbestos Claimant have any rights against the Asbestos PI Trust superior to the rights of the related Direct Asbestos Claimant against the Asbestos PI Trust, including any rights with respect to the timing, amount, or manner of payment; provided, however, that, in addition, no Indirect Asbestos PI Trust Claim may be liquidated and paid in an amount that exceeds the lesser of (a) the amount the Direct Asbestos Claimant would have been entitled to recover from the Asbestos PI Trust or (b) the amount that the Indirect Asbestos Claimant has actually paid the related Direct Asbestos Claimant. Except as may be permitted after individual review, the Asbestos PI Trust shall not pay any Indirect Asbestos Claimant unless and until the Indirect Asbestos Claimant's aggregate liability for the Direct Asbestos Claimant's claim has been fixed, liquidated, and paid by the Indirect Asbestos Claimant by settlement (with an appropriate full release in favor of the Asbestos PI Trust) or a Final Order provided that such claim is valid under the applicable non-bankruptcy law. In any case where the Indirect Asbestos Claimant has satisfied the claim of a Direct Asbestos Claimant against the Asbestos PI Trust under applicable law by way of a settlement, the Indirect Asbestos Claimant shall obtain for the benefit of the Asbestos PI Trust a release in form and substance satisfactory to the Trustees. The liquidated value of any Indirect Asbestos PI Trust Claim paid by the Asbestos PI Trust to an Indirect Asbestos Claimant shall be treated as an offset to or reduction of the full liquidated value

016923.00010:1027978.01

Definitive

of any Asbestos Unsecured PI Trust Claim that might be subsequently asserted by the Direct Asbestos Claimant against the Asbestos PI Trust.

If an Indirect Asbestos Claimant cannot meet the presumptive requirements set forth above, including the requirement that the Indirect Asbestos Claimant provide the Asbestos PI Trust with a full release of the Direct Asbestos Claimant's claim, the Indirect Asbestos Claimant may request that the Asbestos PI Trust review the Indirect Asbestos PI Trust Claim under its Individual Review Process to determine whether the Indirect Asbestos Claimant can establish under applicable law that the Indirect Asbestos Claimant has paid a liability or obligation that the Asbestos PI Trust would otherwise have to the Direct Asbestos Claimant as of the effective date of this Asbestos TDP. If the Indirect Asbestos Claimant can show that it has paid such a liability or obligation, the Asbestos PI Trust shall reimburse the Indirect Asbestos Claimant the amount of the liability or obligation so satisfied subject to the terms and provisions of the Asbestos TDP. However, in no event shall such reimbursement to the Indirect Asbestos Claimant be greater than the amount to which the Direct Asbestos Claimant would have otherwise been entitled.

Any dispute between the Asbestos PI Trust and an Indirect Asbestos Claimant over whether the Indirect Asbestos Claimant has a right to reimbursement for any amount paid to a Direct Asbestos Claimant shall be subject to the ADR procedures provided in section 5.10 below and set forth in Attachment A hereto. If such dispute is not resolved by said ADR procedures, the Indirect Asbestos Claimant may litigate the dispute in a judicial forum pursuant to sections 5.11 and 7.6 below. The Trustees may develop and approve a separate proof of claim form for such Indirect Asbestos PI Trust Claims.

Indirect Asbestos PI Trust Claims shall be processed in accordance with procedures to be developed and implemented by the Trustees, which procedures (a) shall determine the validity and enforceability of such claims and (b) shall otherwise provide the same liquidation and payment procedures and rights to the holders of such claims as the Asbestos PI Trust would have afforded the holders of the underlying valid Asbestos Unsecured PI Trust Claims. Nothing in this Asbestos TDP is intended to preclude a trust to which asbestos-related liabilities are channeled from asserting an Indirect Asbestos PI Trust Claim against the Asbestos PI Trust subject to the requirements set forth herein.

### 5.6(b)  Certain Indemnification Claims.

In the case of a claim for indemnification that has been channeled to the Asbestos PI Trust pursuant to Article 10.3(a) of the Plan and that involves an underlying liability that is asserted by current or past employee of a Halliburton Entity or a Harbison-Walker Entity against an indemnitee that is not directly assertable by the direct claimant against a Halliburton Entity or Harbison-Walker Entity, the rights of the indemnitee Indirect Asbestos Claimant shall be coextensive with both the rights the employee would have had against the Asbestos PI Trust had the underlying related claim been compensable under this Asbestos TDP and with the limitations to which such claim would have been subject under this Asbestos TDP concerning the time, amount and manner of its processing and payment. `

Notwithstanding anything to the contrary in this section 5.6, the Asbestos PI Trust shall not assert as a defense to an Indirect Asbestos PI Trust Claim brought by an indemnitee covered

016923.00010:1027978.01

Definitive

by this provision that the Asbestos PI Trust does not have liability to such indemnitee on the grounds that the current or former employee of a Halliburton Entity or Harbison-Walker Entity would have been precluded from asserting the underlying related claim against the Asbestos PI Trust.

### 5.7    Evidentiary Requirements

#### 5.7(a)  Medical Evidence

##### 5.7(a)(1)  In General

All diagnoses of a Disease Level shall be accompanied by either (i) a statement by the physician providing the diagnosis that at least ten (10) years have elapsed between the date of first exposure to asbestos or asbestos-containing products and the diagnosis or (ii) a history of the claimant's exposure sufficient to establish a ten (10)year latency period. A finding by a physician that a claimant's disease is "consistent with" or "compatible with" asbestosis shall not alone be treated by the Asbestos PI Trust as a diagnosis.

##### 5.7(a)(1)(A)  Disease Levels I-IV

Except for claims filed against the Halliburton Entities and/or the Harbison-Walker Entities or another asbestos defendant in the tort system prior to the DII Industries Petition Date, all diagnoses of a non-malignant asbestos-related disease (Disease Levels I-IV) shall be based, in the case of a claimant who was living at the time the claim was filed, upon a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease. All living claimants must also provide: (i) for claims involving Disease Levels I-III, evidence of Bilateral Asbestos-Related Nonmalignant Disease (as defined in Footnote 4 above); (ii) for claims involving Disease Level IV,[10] an ILO reading of 2/1 or greater or pathological evidence of asbestosis; and (iii) for claims involving either Disease Level III or IV, pulmonary function testing.[11] In the case of a claimant who was deceased at the time the claim was filed,

---

[10] All diagnoses of Asbestos/Pleural Disease (Disease Levels II and III) not based on pathology shall be presumed to be based on findings of bilateral asbestosis or pleural disease, and all diagnoses of Mesothelioma (Disease Level VIII) shall be presumed to be based on findings that the disease involves a malignancy. However, the Asbestos PI Trust may rebut such presumptions.

[11] "Pulmonary Function Testing" shall mean testing that is in material compliance with the quality criteria established by the American Thoracic Society ("ATS") and is performed on equipment that is in material compliance with ATS standards for technical quality and calibration. The Asbestos PI Trust may presume that these ATS criteria and standards were satisfied if the Pulmonary Function Testing was performed in an accredited JCAHO hospital or performed, reviewed or supervised by a Board Certified Pulmonologist. If the Pulmonary Function Testing was not performed in an accredited JCAHO hospital or performed,

[Footnote continued on next page]

016923.00010:1027978.01

Definitive

all diagnoses of a non-malignant asbestos-related disease (Disease Levels I-IV) shall be based upon either: (i) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease; or (ii) pathological evidence of the non-malignant asbestos-related disease; or (iii)(a) in the case of Disease Levels I-III, evidence of Bilateral Asbestos-Related Nonmalignant Disease (as defined in Footnote 4 above) or (b) for Disease Level IV, either an ILO reading of 2/1 or greater or pathological evidence of asbestosis; and (iv) for either Disease Level III or IV, pulmonary function testing.

### 5.7(a)(1)(B)  Disease Levels V-VIII

All diagnoses of an asbestos-related malignancy (Disease Levels V-VIII) shall be based upon either (i) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease or (ii) a diagnosis of such a malignant Disease Level by a board-certified pathologist.

### 5.7(a)(1)(C)  Exception to the Exception for Certain Pre-Petition Claims

If the holder of an Asbestos Unsecured PI Trust Claim that was filed against a Halliburton Entity or a Harbison-Walker Entity or another defendant in the tort system prior to the Petition Date has not provided the Asbestos PI Trust with a diagnosis of the asbestos-related disease by a physician who conducted a physical examination of the claimant described in section 5.7(a)(1)(A), but the claimant has available such a diagnosis by an examining physician engaged by the claimant or his or her law firm, or the claimant has filed such a diagnosis with another asbestos-related personal injury settlement trust that requires such evidence without regard to whether the claimant or the law firm engaged the diagnosing physician, the claimant shall provide such diagnosis to the Asbestos PI Trust notwithstanding the exception in section 5.7(a)(1)(A).

### 5.7(a)(2)  Credibility of Medical Evidence

Before making any payment to a claimant, the Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is competent medical evidence of an asbestos-related injury and is consistent with recognized medical standards. The Asbestos PI Trust may require the submission of X-rays, CT scans, detailed results of pulmonary function tests, laboratory tests, tissue samples, results of medical examination, or reviews of

---

[Footnote continued from previous page]

    reviewed or supervised by a Board Certified Pulmonologist, then the full testing report (as opposed to a summary report) must be submitted to the Asbestos PI Trust.  If the full report is required by the foregoing sentence, the Pulmonary Function Testing was conducted prior to November 1, 2005, and the full Pulmonary Function Testing report is not available, the claimant may submit a signed declaration in the form provided by the Asbestos PI Trust certifying that the Pulmonary Function Testing was conducted in material compliance with ATS standards.

016923.00010:1027978.01

other medical evidence and may require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods, and procedures to assure that such evidence is reliable.

Medical evidence (i) that is of a kind shown to have been received in evidence by a state or federal judge at trial, (ii) that is consistent with evidence submitted to the Halliburton Entities or the Harbison Walker Entities to settle for payment similar disease cases prior to the Reorganization Cases, or (iii) that is a diagnosis by a physician shown to have previously qualified as a medical expert with respect to the asbestos-related disease in question before a state or federal judge, is presumptively reliable, although the Asbestos PI Trust may seek to rebut the presumption. In addition, claimants who otherwise meet the requirements of this Asbestos TDP for payment of an Asbestos Unsecured PI Trust Claim shall be paid without regard to the results of any litigation at anytime between the claimant and any other defendant in the tort system. However, any relevant evidence submitted in a proceeding in the tort system, other than any findings of fact, a verdict, or a judgment, involving another defendant may be introduced by either the claimant or the Asbestos PI Trust in any Individual Review proceeding conducted pursuant to 5.3(b) or any Extraordinary Claim proceeding conducted pursuant to 5.4(a).

### 5.7(b)  Exposure Evidence

### 5.7(b)(1)  In General

As set forth in section 5.3(a)(3), to qualify for any Disease Level, the claimant must demonstrate by credible evidence a minimum exposure to an asbestos-containing product manufactured or distributed by one or more of the Harbison-Walker Entities or the Halliburton Entities or their predecessors. Claims based on conspiracy theories that involve no exposure to an asbestos-containing product produced by the Halliburton Entities or the Harbison-Walker Entities or their predecessors are not compensable under this TDP. To meet the presumptive exposure requirements of Expedited Review set forth in section 5.3(a)(3) above, the claimant must show by credible evidence (i) for all Disease Levels, Company Exposure as defined in section 5.7(c) below prior to December 31, 1982; (ii) for Asbestos/Pleural Disease Level II, six months Company Exposure prior to December 31, 1982, plus five years cumulative occupational asbestos exposure; and (iii) for Asbestosis/Pleural Disease (Disease Level III), Severe Asbestosis (Disease Level IV), Other Cancer (Disease Level V), or Lung Cancer 1 (Disease Level VII), six months Company Exposure prior to December 31, 1982, plus Significant Occupational Exposure to asbestos as defined in section 5.7(b)(2) below. If the claimant cannot meet the relevant presumptive exposure requirements for a Disease Level eligible for Expedited Review, the claimant may seek Individual Review of his or her claim.

### 5.7(b)(2)  Significant Occupational Exposure

"Significant Occupational Exposure" means employment for a cumulative period of at least five years, with a minimum of two years prior to December 31, 1982, in an industry and an occupation in which the claimant (a) handled raw asbestos fibers on a regular basis; (b) fabricated asbestos-containing products so that the claimant in the fabrication process was exposed on a regular basis to raw asbestos fibers; (c) altered, repaired, or otherwise worked with an asbestos-containing product such that the claimant was exposed on a regular basis to asbestos

fibers; or (d) was employed in an industry and occupation such that the claimant worked on a regular basis in close proximity to workers engaged in the activities described in (a), (b), and/or (c).

### 5.7(c)  Company Exposure

Company Exposure means meaningful and credible exposure, which occurred prior to December 31, 1982, to asbestos or asbestos-containing products supplied, specified, used, installed, or manufactured by one or more of the Halliburton Entities or the Harbison-Walker Entities or for which a Halliburton Entity or Harbison-Walker Entity is otherwise liable, in accordance with the exposure requirements described in sections 5.7(b)(1) and (2) above. Working at a Documented Site (as defined below) shall constitute presumptive evidence of Company Exposure. That meaningful and credible exposure evidence must be established by:

- an affidavit or other credible evidence that establishes by credible evidence that asbestos or asbestos-containing products supplied, specified, used, installed, or manufactured by a Halliburton Entity and/or a Harbison-Walker Entity or for which a Halliburton Entity as Harbison-Walker Entity is otherwise liable, were present at the time of the alleged exposure, or

- sales, construction, employment, or other contemporaneous records that establishes by credible evidence that asbestos or asbestos-containing products supplied, specified, used, installed, or manufactured by a Halliburton Entity and/or a Harbison-Walker Entity or for which a Halliburton Entity or Harbison-Walker Entity is otherwise liable, were present at the time of the alleged exposure.

A "Documented Site" means an exposure location identified to the Asbestos PI Trust where there is clear and convincing evidence that asbestos or asbestos-containing products supplied, specified, used, installed, or manufactured by a Halliburton Entity and/or a Harbison-Walker Entity or their predecessors, successors, and assigns were present at the time of the alleged exposure.

The Asbestos PI Trust shall make available a non-exclusive list of Documented Sites. Not less than annually, the Asbestos PI Trust shall review the list of Documented Sites. To the extent the Trustees deem necessary, upon consultation with the Asbestos TAC and the Legal Representative, the Trustees shall supplement such non-exclusive list of Documented Sites.

### 5.8    Claims Audit Program

The Asbestos PI Trust, with the consent of the Asbestos TAC and the Legal Representative, may develop methods for auditing the reliability of medical evidence, including additional reading of x-rays, CT scans, and verification of pulmonary function tests, as well as the reliability of evidence of exposure to asbestos, including exposure to asbestos-containing products manufactured or distributed by the Halliburton Entities or Harbison Walker Entities prior to December 31, 1982. In the event that the Asbestos PI Trust reasonably determines that any individual or entity has engaged in a pattern or practice of providing unreliable medical

Definitive

evidence to the Asbestos PI Trust, it may decline to accept additional evidence from such provider in the future. Further, in the event that an audit reveals that fraudulent information has been provided to the Asbestos PI Trust, the Asbestos PI Trust may penalize any claimant or claimant's attorney by disallowing the Asbestos Unsecured PI Trust Claim or by other means including, but not limited to, requiring the source of the fraudulent information to pay the costs associated with the audit and any future audit or audits, reordering the priority of payment of all affected claimants' Asbestos Unsecured PI Trust Claims, raising the level of scrutiny of additional information submitted from the same source or sources, refusing to accept additional evidence from the same source or sources, seeking the prosecution of the claimant or claimant's attorney for presenting a fraudulent claim in violation of 18 U.S.C. § 152, and seeking sanctions from the Bankruptcy Court.

### 5.9    Second Disease (Malignancy) Claims

The holder of an Asbestos Unsecured PI Trust Claim (including a holder of a Qualifying Settled Asbestos PI Trust Claim) involving a non-malignant asbestos-related disease (Disease Levels I-IV) may file a new Asbestos Unsecured PI Trust Claim against the Asbestos PI Trust for a malignant disease (Disease Levels V-VIII) that is subsequently diagnosed; provided, however, that, with respect to a holder of a Qualifying Settled Asbestos PI Trust Claim, the Asbestos PT Trust may assert as a defense to such second disease claim any release made pursuant to the applicable Asbestos/Silica PI Trust Claimant Settlement Agreement. Any additional payments to which such claimant may be entitled with respect to such malignant asbestos-related disease shall not be reduced by the amount paid for the nonmalignant asbestos-related disease, provided that the malignant disease had not been diagnosed by the time the claimant was paid with respect to the original claim involving the non-malignant disease.

### 5.10    Arbitration

#### 5.10(a)   Establishment of Alternative Dispute Resolution Procedures

The Asbestos PI Trust, with the consent of the Asbestos TAC and the Legal Representative, shall institute binding and nonbinding arbitration procedures in accordance with the Alternative Dispute Resolution ("ADR") Procedures included in Attachment A hereto to attempt to resolve whether the Asbestos PI Trust's outright rejection or denial of a claim was proper or whether the claimant's medical condition or exposure history meets the requirements of this TDP for purposes of categorizing a claim involving Disease Levels I-VIII. Disputes of whether an Asbestos Unsecured PI Trust Claim is a Qualifying Settled Asbestos PI Trust Claim shall be resolved pursuant to the terms of the applicable Asbestos Claimant Settlement Agreement and the Plan. Binding and nonbinding arbitration shall also be available for resolving disputes over the liquidated value of a claim involving Disease Levels IV-VIII, as well as disputes over the validity of Indirect Asbestos PI Trust Claims. In all arbitrations, the arbitrator shall consider the same medical and exposure evidentiary requirements that are set forth in section 5.7 above. In the case of an arbitration involving the liquidated value of a claim involving Disease Levels IV-VIII, the arbitrator shall consider the same valuation factors that are set forth in section 5.3(b)(2) above. With respect to all claims eligible for arbitration, the claimant, but not the Asbestos PI Trust, may elect either nonbinding or binding arbitration. The

016923.00010:1027978.01

ADR Procedures set forth in Attachment A hereto may be modified by the Asbestos PI Trust with the consent of the Asbestos TAC and the Legal Representative. Such amendments may also include adoption of mediation procedures as well as establishment of an Extraordinary Claims Panel to review such claims pursuant to section 5.4(a) above.

### 5.10(b)  Claims Eligible for Arbitration

In order to be eligible for arbitration, the claimant must first complete the Individual Review process with respect to the disputed issue as well as either the Pro Bono Evaluation or the Mediation processes set forth in the ADR Procedures.  Individual Review shall be treated as completed for these purposes when the claim has been individually reviewed by the Asbestos PI Trust, the Asbestos PI Trust has made an offer on the claim, the claimant has rejected the liquidated value resulting from the Individual Review, and the claimant has notified the Asbestos PI Trust of the rejection in writing.  Individual Review also shall be treated as completed if the Asbestos PI Trust has rejected the claim.  The claimant must send the Asbestos PI Trust a written request for ADR pursuant to the ADR Procedures within 180 days after Individual Review is treated as complete, or else the claimant shall be deemed to have waived ADR and all of the claimant's rights under section 7.6 below.

### 5.10(c)  Limitations on and Payment of Arbitration Awards

In the case of a non-Extraordinary Claim involving Disease Levels I-III, the arbitrator shall not return an award in excess of the Scheduled Value for such claim.  In the case of a non-Extraordinary Claim involving Disease Levels IV-VIII, the arbitrator shall not return an award in excess of the Maximum Value for the appropriate Disease Level as set forth in section 5.3(a)(3) above, and for an Extraordinary Claim involving one of those Disease Levels, the arbitrator shall not return an award greater than the maximum value for such a claim as set forth in section 5.4(a) above.  A claimant who submits to arbitration and who accepts the arbitral award shall receive payments in the same manner as one who accepts the Asbestos PI Trust's original valuation of the claim.

### 5.11    Litigation

Claimants who elect nonbinding arbitration and then reject their arbitral awards retain the right to institute a lawsuit in a judicial forum against the Asbestos PI Trust pursuant to section 7.6 below.  However, a claimant shall be eligible for payment of a judgment for monetary damages obtained in a judicial forum from the Asbestos PI Trust's available cash only as provided in section 7.7 below.

### SECTION 6
### Claims Materials

### 6.1    Claims Materials

The Asbestos PI Trust shall prepare suitable and efficient claims materials ("Claims Materials"), for all Asbestos Unsecured PI Trust Claims, and shall provide such Claims Materials upon a written request for such materials to the Asbestos PI Trust.  The proof of claim form to be submitted to the Asbestos PI Trust shall require the claimant to assert the highest Disease Level

Definitive

for which the claim qualifies at the time of filing and shall require the claimant to identify the Halliburton Entities or the Harbison Walker Entities his or her claim alleges liability against. The proof of claim form shall also include a certification by the claimant or his or her attorney sufficient to meet the requirements of Rule 11(b) of the Federal Rules of Civil Procedure. In developing its claim-filing procedures, the Asbestos PI Trust shall make every reasonable effort to provide claimants with the opportunity to utilize currently available technology at their discretion, including filing claims and supporting documentation over the internet and electronically by disk or CD-rom. A copy of the proof of claim form to be used by the Asbestos PI Trust for unliquidated Asbestos Unsecured PI Trust Claims is included in Attachment B hereto. The proof of claim form may be changed by the Asbestos PI Trust with the consent of the Asbestos TAC and the Legal Representative.

### 6.2    Content of Claims Materials

The Claims Materials shall include a copy of this TDP, such instructions as the Trustees shall approve, and a detailed proof of claim form. If feasible, the forms used by the Asbestos PI Trust to obtain claims information shall be the same or substantially similar to those used by other asbestos claims resolution organizations. Instead of collecting some or all of the claims information from a claimant or the claimant's attorney, the Asbestos PI Trust may also obtain such information from electronic data bases maintained by any other asbestos claims resolution organization. However, the Asbestos PI Trust shall inform the claimant that it plans to obtain information as available from such other organizations and may do so unless the claimant objects in writing or provides such information directly to the Asbestos PI Trust. If requested by the claimant, the Asbestos PI Trust shall accept information provided electronically. The claimant may, but shall not be required to, provide the Asbestos PI Trust with evidence of recovery from other asbestos defendants and claims resolution organizations.

### 6.3    Withdrawal or Deferral of Claims

A claimant can withdraw an Asbestos Unsecured PI Trust Claim at any time upon written notice to the Asbestos PI Trust and file another claim subsequently without affecting the status of the claim for statute of limitations purposes, but any such claim filed after withdrawal shall be given a place in the FIFO Processing Queue based on the date of such subsequent filing. A claimant can also request that the processing of his or her Asbestos Unsecured PI Trust Claim by the Asbestos PI Trust be deferred for a period not to exceed three (3) years without affecting the status of the claim for statute of limitation purposes, in which case the claimant shall also retain his or her original place in the FIFO Processing Queue. Except for Asbestos Unsecured PI Trust Claims held by representatives of deceased or incompetent claimants for which court or probate approval of the Asbestos PI Trust's offer is required, or an Asbestos Unsecured PI Trust Claim for which deferral status has been granted, a claim shall be deemed to have been withdrawn if the claimant neither accepts, rejects, nor initiates arbitration within six months of the Asbestos PI Trust's offer of payment or rejection of the claim. Upon written request and good cause, the Asbestos PI Trust may extend the withdrawal or deferral period for an additional six months.

Definitive

**6.4     Filing Requirements and Fees**

The Trustees shall have the discretion to determine, with the consent of the Asbestos TAC and the Legal Representative, (a) whether a claimant must have previously filed an asbestos-related personal injury claim in the tort system to be eligible to file an Asbestos Unsecured PI Trust Claim with the Asbestos PI Trust and (b) whether a filing fee should be required for any Asbestos Unsecured PI Trust Claims.

**SECTION 7**
**General Guidelines for Liquidating and Paying Claims**

**7.1     Showing Required**

To establish a valid Asbestos Unsecured PI Trust Claim, a claimant must meet the requirements set forth in this TDP. The Asbestos PI Trust may require the submission of X-rays, CT scans, laboratory tests, medical examinations or reviews, other medical evidence, or any other evidence to support or verify the claim and may further require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods, and procedures to assure that such evidence is reliable.

**7.2     Costs Considered**

Notwithstanding any provisions of this TDP to the contrary, the Trustees shall always give appropriate consideration to the cost of investigating and uncovering invalid Asbestos Unsecured PI Trust Claims so that the payment of valid Asbestos Unsecured PI Trust Claims is not further impaired by such processes with respect to issues related to the validity of the medical evidence supporting an Asbestos PI Trust Claim. The Trustees shall also have the latitude to make judgments regarding the amount of transaction costs to be expended by the Asbestos PI Trust so that valid Asbestos Unsecured PI Trust Claims are not unduly further impaired by the costs of additional investigation. Nothing herein shall prevent the Trustees, in appropriate circumstances, from contesting the validity of any claim against the Asbestos PI Trust whatever the costs or declining acceptance of medical evidence from sources that the Trustees have determined to be unreliable pursuant to the Claims Audit Program described in section 5.8 above.

**7.3     Discretion to Vary the Order and Amounts of Payments in Event of Limited Liquidity**

Consistent with the provisions hereof and subject to the FIFO Processing and Payment Queues, the Maximum Annual Payment, the Maximum Available Payment, and the Claims Payment Ratio requirements set forth above, the Trustees shall proceed as quickly as possible to liquidate valid Asbestos Unsecured PI Trust Claims and shall make payments to holders of such claims in accordance with this TDP promptly as funds become available and as claims are liquidated, while maintaining sufficient resources to pay future valid claims in substantially the same manner. Because the Asbestos PI Trust's income and value over time remains uncertain and decisions about payments must be based on estimates that cannot be done precisely, they may have to be revised in light of experiences over time, and there can be no guarantee of any specific level of payment to claimants. However, the Trustees shall use their best efforts to treat

32

Definitive

similar claims in substantially the same manner, consistent with their duties as Trustees, the purposes of the Asbestos PI Trust, and the practical limitations imposed by the inability to predict the future with precision. In the event that the Asbestos PI Trust faces temporary periods of limited liquidity, the Trustees may, with the consent of the Asbestos TAC and the Legal Representative, suspend the normal order of payment and may temporarily limit or suspend payments altogether and may offer a Reduced Payment Option as described in section 2.5 above.

### 7.4    Punitive Damages

In determining the value of any claim, punitive damages shall not be considered or allowed, notwithstanding their availability in the tort system. Similarly, no punitive or exemplary damages shall be payable with respect to any claim litigated against the Asbestos PI Trust in the tort system pursuant to sections 5.11 above and 7.6 below. The only damages that may be awarded pursuant to this TDP to Alabama claimants who are deceased and whose personal representatives pursue their claims only under the Alabama Wrongful Death Statute shall be compensatory damages determined pursuant to the statutory and common law of the Commonwealth of Pennsylvania, without regard to its choice of law provision.

### 7.5    Interest

7.5(a)  In General.  Except for an Asbestos Unsecured PI Trust Claim involving Other Asbestos Disease (Disease Level I) and subject to the limitations set forth below, interest shall be paid on all liquidated Asbestos Unsecured PI Trust Claims with respect to which the claimant has had to wait a year or more for payment after the later of the DII Industries Effective Date or the date the claim was placed in the FIFO Payment Queue; provided, however, that no claimant shall receive interest for a period in excess of seven (7) years. Interest shall be simple and accrue at the one-year Treasury Bond rate in effect on January 1 of the year in which interest begins to accrue on the claim, and the rate to be adjusted each January 1 to correspond to the one-year Treasury Bond rate. The applicable interest shall be calculated based on the liquidated value of the claim, subject to the Payment Percentage. Notwithstanding the foregoing, the Asbestos PI Trust shall not be obligated to pay interest on Qualifying Settled Asbestos Unsecured PI Trust Claims.

7.5(b)  Unliquidated Asbestos Trust Claims.  Interest shall be payable on the Scheduled Value of any unliquidated Asbestos Unsecured PI Trust Claim that meets the requirements of Disease Levels II – V, VII and VIII, whether the claim is liquidated under Expedited Review, Individual Review, or by arbitration. No interest shall be paid on any claim liquidated in the tort system pursuant to section 5.11 above and 7.6 below. Interest on an unliquidated Asbestos Trust Claim that meets the requirements of Disease Level VI shall be based on the Average Value of such a claim. Interest on all such unliquidated claims shall be measured from 30 days after the date of the Notice of Determination – Allowance letter back to the earlier of the date that is one year after the date on which (i) the claim was filed against a Halliburton or Harbison-Walker Entity prior to the Petition Date; (ii) the claim was filed against another defendant in the tort system on or after the Petition Date but before the Claims Acceptance Date; or (iii) the claim was filed with the Asbestos PI Trust after the Claims Acceptance Date.

016923.00010:1027978.01

Definitive

### 7.6    Suits in a Judicial Forum

If the holder of a disputed claim disagrees with the Asbestos PI Trust's determination regarding the Disease Level of the claim, the claimant's exposure history, or the liquidated value of the claim, and if the holder has first submitted the claim to nonbinding arbitration as provided in section 5.10 above, the holder may file a lawsuit against the Asbestos PI Trust in the Claimant's Jurisdiction as defined in section 5.3(b)(2) above or, in the case of the holder of an Indirect Asbestos PI Trust Claim, in a court of competent jurisdiction in the United States.  Such lawsuit must be commenced within 180 days after the claimant receives an authorization to commence litigation pursuant to the Alternative Dispute Resolution Procedures.  Any such lawsuit must be filed by the claimant in his or her own right and name and not as a member or representative of a class, and no such lawsuit may be consolidated with any other lawsuit.  All defenses (including, with respect to the Asbestos PI Trust, all defenses that could have been asserted by a Halliburton Entity or Harbison-Walker Entity) shall be available to both sides at trial; however, the Asbestos PI Trust may waive any defense and/or concede any issue of fact or law.  If the claimant is an individual who was alive at the time the initial pre-petition complaint was filed or on the date the proof of claim was filed with the Asbestos PI Trust, the case shall be treated as a personal injury case with all personal injury damages to be considered even if the claimant has died during the pendency of the claim.

### 7.7    Payment of Judgments for Money Damages

A claimant whose claim was liquidated in a judicial forum pursuant to sections 5.11 and 7.6 above after the DII Industries Effective Date shall receive from the Asbestos PI Trust an initial payment (subject to the Payment Percentage, the Maximum Annual Payment, the Maximum Available Payment, and, if any, the Claims Payment Ratio provisions set forth above) of an amount equal to one-hundred percent (100%) of the greater of (i) the Asbestos PI Trust's last offer to the claimant or (ii) the award that the claimant declined in nonbinding arbitration. Subject to the limitations set forth herein, the claimant shall receive the balance of the judgment, if any, in five equal installments in years six (6) through ten (10) following the year of the initial payment (also subject to the Payment Percentage, the Maximum Available Payment, and, if any, the Claims Payment Ratio provisions above).  In the case of non-Extraordinary Claims involving Disease Levels I, II, and III, the total amounts paid with respect to such claims shall not exceed the relevant Scheduled Value for such Disease Levels as set forth above. In the case of claims involving a nonmalignant asbestos-related disease that does not attain classification under Disease Levels I, II, or III, the amount payable shall not exceed the Scheduled Value for the Disease Level most comparable to the disease proven.  In the case of non-Extraordinary Claims involving severe asbestosis and malignancies (Disease Levels IV-VIII), the total amounts paid with respect to such claims shall not exceed the Maximum Values for such Disease Levels set forth in sections 5.3(b)(3) and 5.3(b)(4).  In the case of Extraordinary Claims, the total amounts paid with respect to such claims shall not exceed the maximum value for such claims set forth in section 5.4(a) above.  Except as provided in section 7.4 above with respect to Asbestos Unsecured PI Trust Claims arising under the Alabama Wrongful Death Statute, neither punitive damages nor interest shall be paid on any judgments obtained in a judicial forum after the Petition Date.

016923.00010:1027978.01

Definitive

### 7.8    Releases

The Trustees shall have the discretion to determine the form and substance of the releases to be provided to the Asbestos PI Trust in order to maximize recovery for claimants against other tortfeasors without increasing the risk or amount of claims for indemnification or contribution from the Asbestos PI Trust. As a condition to making any payment to a claimant, the Asbestos PI Trust shall obtain a general, partial, or limited release as appropriate in accordance with the applicable state or other law. Such release shall include language evidencing the assignment to the applicable Reorganized Debtor of any Direct Action that may be assertable on account of such Asbestos Unsecured PI Trust Claims. If allowed by state law, the endorsing of a check or draft for payment by or on behalf of a claimant shall constitute such a release.

### 7.9    Third-Party Services

Nothing in this TDP shall preclude the Asbestos PI Trust from contracting with another asbestos claims resolution organization to provide services to the Asbestos PI Trust so long as decisions about the categorization and liquidated value of Asbestos Unsecured PI Trust Claims are based on the relevant provisions of this TDP, including the Disease Levels, Scheduled Values, Average Values, Maximum Values, and Medical/Exposure Criteria set forth above.

### 7.10    Asbestos PI Trust Disclosure of Information

Periodically, but not less often than once a year, the Asbestos PI Trust shall make available to claimants and other interested parties the number of claims by Disease Levels that have been resolved both by Individual Review and by arbitration as well as by litigation in the tort system indicating the amounts of the awards and the averages of the awards by jurisdiction.

## SECTION 8
## Miscellaneous

### 8.1    Amendments

Except as otherwise provided herein, the Trustees may amend, modify, delete, or add to any provisions of this TDP (including, without limitation, amendments to conform this TDP to advances in scientific or medical knowledge or other changes in circumstances), provided they first obtain the consent of the Asbestos TAC and the Legal Representative pursuant to the Consent Process set forth in sections 5.7(b) and 6.6(b) of the Asbestos PI Trust Agreement, except that the right to amend the Claims Payment Ratio is governed by the restrictions in section 2.5 above and the right to adjust the Payment Percentage is governed by section 4.2 above. Whenever consent of the Asbestos TAC or the Legal Representative is required in these Trust Distribution Procedures, the consent process of Section 5.7(b) and 6.6(b) of the Asbestos PI Trust Agreement apply.

### 8.2    Severability

Should any provision contained in this TDP be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this TDP. Should any provision contained in this TDP be determined to be

35

Definitive

inconsistent with or contrary to any of the Harbison-Walker Entities' or the Halliburton Entities' obligations to any insurance company providing insurance coverage to any of the Harbison-Walker Entities or the Halliburton Entities in respect of claims for personal injury based on Company Exposure, the Asbestos PI Trust with the consent of the Asbestos TAC and the Legal Representative may amend this TDP and/or the Asbestos PI Trust Agreement to make the provisions of either or both documents consistent with the duties and obligations of any of the Halliburton Entities or the Harbison-Walker Entities to said insurance company.

### 8.3    Governing Law

Except for purposes of determining the Liquidated Amount of any Asbestos Unsecured PI Trust Claim by the Trust, administration of this TDP shall be governed by, and construed in accordance with, the laws of the Commonwealth of Pennsylvania. Except for Asbestos PI Trust Claims arising under the Alabama Wrongful Death Statute as provided in section 7.4 above, the law governing the liquidation of Asbestos Unsecured PI Trust Claims in the case of Individual Review, arbitration, or litigation in the tort system shall be the law of the Claimant's Jurisdiction as determined in accordance with section 5.3(b)(2) above.

### 8.4    Confidentiality of Claimant Submissions

All submissions to the Asbestos PI Trust by a holder of an Asbestos PI Trust Claim of a proof of claim form and materials related thereto shall be treated as made in the course of settlement discussions between the holder and the Asbestos PI Trust, and such submissions and all communications related thereto are intended by the parties to be confidential and to be protected by all applicable state and federal privileges, including but not limited to those directly applicable to settlement discussions. Absent the claimant's written consent authorizing the release of information to a particular party, the Asbestos PI Trust shall preserve the confidentiality of such claimant submissions and communications, and shall disclose the contents thereof only in response to a valid order issued by the Bankruptcy Court. The Asbestos PI Trust shall on its own initiative or upon request of the claimant in question take all necessary and appropriate steps to preserve said privileges in the Bankruptcy Court and on any appeal from the Bankruptcy Court.

50209316_12.DOC

016923.00010:1027978.01