IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Objection Deadline: TBD** |
| | | **Hearing Date: TBD** |

## MOTION TO COMPEL THE CELOTEX ASBESTOS SETTLEMENT TRUST TO PRODUCE DOCUMENTS AND APPEAR FOR DEPOSITION

Debtors W.R. Grace & Co. and its affiliated companies (collectively, "Grace" or "Debtors") respectfully request that this Court enter an order compelling non-party Celotex Asbestos Settlement Trust (the "Trust") to produce documents and designate a representative to sit for deposition in response to a subpoena issued to the Trust pursuant to Fed. R. Civ. P. 30(a) and 45.

## INTRODUCTION

On February 2, 2007, Grace served a subpoena upon the Trust seeking document production and the designation of one or more trust representatives to sit for deposition. *See* Subpoena Duces Tecum (Ex. A). The subpoena requested, *inter alia*, the following:

- Information submitted to the Trust by Grace claimants, including occupation, dates of first and last exposure to asbestos-containing products, disease type, date of diagnosis, and name of diagnosing doctor.

- Documents relating to the suspension of acceptance of reports from any doctor, screening company, or B-reader.

- Documents sufficient to identify the top 25 B-readers, primary diagnosing doctors, and individuals writing reports in support of claims against the Trust.

- Documents related to the Trust's criteria for allowing or disallowing claims.

- Any documents relating to Grace claimants' exposure to asbestos-containing products.

The Trust responded to the subpoena by letter on February 16, 2007 asserting formal objections based on (1) burden due to the alleged ability of Grace to obtain the information elsewhere and due to the number of claimants at issue, (2) the proprietary nature of the trust's electronic database, and (3) claimant confidentiality concerns. *See* D. Donnellon 2/16/07 Letter to D. Mendelson (Ex. B). Noting these concerns, Grace's counsel conferred with the Trust's counsel on several occasions by phone and written correspondence, hoping to resolve these issues and agree to a schedule for document production. *See, e.g.*, E. Ahern 3/14/07 Letter to D. Donnellon (Ex. C).[1] These negotiations were unsuccessful. *See* 6/22/07 E. Ahern Electronic Communication to D. Donnellon (Ex. F).

The Celotex Trust has no legitimate basis for failing to produce the subpoenaed materials. The information sought by Grace is plainly relevant to the estimation proceeding and related expert work. The Court has recognized the relevance of such materials and affirmatively urged Grace to obtain this discovery from asbestos claims trusts such as the Celotex Trust. *See* 9/11/06 Hr'g Tr. at 259-61; *see also* 5/21/07 Hr'g Tr. at 209-10. Indeed, the Court has already noted that the fact that the various trusts store claimant information in electronic form makes it particularly appropriate for discovery here. 9/11/06 Hr'g Tr. at 261. Grace has offered to enter into a reasonable

---

[1] *See also* E. Ahern 5/21/07 Letter to D. Donnellon (Ex. D); D. Donnellon 6/7/07 Letter to E. Ahern (Ex. E).

2

protective order to guard against any possible unwarranted dissemination of Trust materials.  Other trusts, like the Manville/CRMC and Congoleum trusts, subpoenaed by Grace, have negotiated in good faith and have (or shortly will) produce portions of their electronic databases related to Grace claimants pursuant to the same or very similar confidentiality agreements as Grace proposed to the Celotex Trust.  Unlike Manville and Congoleum, however, the Celotex Trust refuses to agree to produce electronic data, and refuses to enter into a reasonable protective order. Instead, the Celotex Trust has continued to drag out negotiations with meritless objections and cumbersome proposals (expensive, time-consuming, inefficient hard copy production of claimant data; onerous proposed protective order provisions; etc.) suggesting it has no intention of ever reaching a compromise regarding the production of information, let alone timely production of information for use in this estimation proceeding.  Because there is no valid basis for withholding the clearly relevant Grace claimant data, the Celotex Trust should be compelled to produce the subpoenaed materials, including the portions of its electronic database related to Grace claimants under Grace's proposed protective order, without further delay and without the imposition of expensive, inefficient and cumbersome procedural or confidentiality restrictions that other trusts have not required and that are not necessary.

## ARGUMENT

**I.    THE DOCUMENT DISCOVERY SOUGHT FROM THE CELOTEX TRUST IS UNQUESTIONABLY RELEVANT TO GRACE'S ESTIMATION PROCEEDING.**

The scope of discovery is broad under the federal rules and requests for documents or information should be deemed relevant so long as there is any possibility

3

that the information sought may be relevant to the subject matter of the action. *See Breeze v. Royal Indem. Co.*, 202 F.R.D. 435, 436 (E.D. Pa. 2001) (information is relevant for the purposes of discovery if it "appears reasonably calculated to lead to the discovery of admissible evidence"); *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*, 211 F.R.D. 658, 663 (D. Kan. 2003) ("A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." (citation omitted)). The broad definition of relevance for purposes of discovery extends to discovery of third parties. *See Breeze*, 202 F.R.D. at 436; *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 541 fn. 2 (N.D. Ill. 2004) ("Rule 45 draws no distinction between parties and non-parties concerning the scope of discovery.")

Critically, this Court has already determined that information submitted to other trusts by Grace claimants is relevant to the estimation proceeding. *See* 9/11/06 Hr'g Tr. at 260-61, *In re W.R. Grace, et al.*, 01-01139 (JKF) (Ex. G). During the September 11, 2006 hearing concerning claimant PIQ data supplementation, this Court suggested that, in order to get exposure information, Grace should "subpoena[] some of this information from the trust." 9/11/06 Hr'g Tr. at 259. In addition, this Court suggested that discovery from the trusts would be *less burdensome* than from the individual claimants, as the trusts maintain the information "in an electronic format." *Id.* at 261. The relevance of this information is implicit in the Court's questions.

Since many Grace claimants also apparently claimed against the Trust, Grace wants to find out whether those claimants submitted additional, conflicting, or different information to the Trust. For the purposes of the estimation proceeding, this information is relevant on its face. As such, the burden is on the Trust to come forward with specific

4

reasons why the information sought is not relevant. *See Graham v. Casey's Gen. Stores, Inc.*, 206 F.R.D. 251, 254 (S.D. Ind. 2002) (the burden is on the objecting party to show that "the discovery is overly broad, unduly burdensome, or not relevant"). Given the clear relevance of this information to the estimation, it is doubtful that the Trust can meet this burden.

## II.    THE PRODUCTION OF DOCUMENTS REQUESTED OF THE CELOTEX TRUST POSES NO UNDUE BURDEN.

The Celotex Trust next objects on the ground that production of the requested materials will be burdensome. The relevant inquiry, however, is not whether the production would be burdensome, but rather, whether the burden would be undue. *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 407 (D.C. Cir. 1984) ("A reasonable inconvenience must be borne to further the goals of discovery - the making available to litigants all relevant and available information.") In analyzing whether a burden is undue for the purposes of Rule 45, Third Circuit courts consider relevance, need, scope, the particularity with which requested documents were described, the burden imposed, and the subpoena target's status as a non-party. *See In re Autom. Refinishing Paint Antitrust Litigation*, 229 F.R.D. 482, 495 (E.D. Pa. 2005); *Lady Liberty Trans. Co. v. Philadelphia Parking Auth.*, Civil No. 05-1322, 2007 WL 707372 (E.D. Pa. March 1, 2007).

Taking these factors into consideration, the burden to the Trust would not be undue. As discussed above, the requested materials are plainly relevant to the estimation proceeding. Moreover, Grace's need for the requested materials is substantial. The Trust materials will aid Grace's estimation by providing a benchmark against which Grace's experts can compare exposure data and other material facts. Perhaps more importantly,

5

the Trust materials will also help Grace uncover conflicting or questionable claims asserted against it. This Court recognized Grace's need for the Trust's materials when it suggested that Grace seek such information from the various trusts. *See* 9/11/06 Hr'g Tr. at 259.

The principal justification for seeking this information directly from the trusts is the incredible difficulty of obtaining it directly from Grace's claimants.   Grace has endured over a year of extensive litigation over the Personal Injury Questionnaires and still received poor compliance at best.  Grace should not have to embark upon a similar process to obtain exposure and other information from tens of thousands of individuals that it could obtain from the Trust wholesale in electronic form.

Next, the scope of requested materials is reasonable.  In fact, the overwhelming majority of Grace's requests would be satisfied if the Trust produced a portion of its claims database.  For example, Grace's requests seeking the top 25 B-readers, doctors, and experts utilized by Trust claimants could easily be answered by reference to queries of the Trust's database.  Production of the Trust's claims database would also minimize the burden to the Trust.  As Daniel Donnellon, on behalf of the Celotex Trust, made clear in a transcript provided to counsel for Grace, the Trust claims database could be downloaded with considerable ease.  *See* 12/7/06 Hr'g Tr. at 13-14, *In re Asbestos Litigation*, 06M-10-061 MMJ (Ex. H).  In response to a question from the Delaware Superior Court about how the Trust handles documents submitted to it, counsel for the Trust responded that documents received by the trust are "all stored electronically by the trust. And the claimant's law firms, the vast majority of them...have the ability to go on and confirm that the trust has received, assigned a claim number, and what documents the

6

trust has, and they can view them. The trust scans them. They can view what we have."
(*Id.*)[2]

So far, the Trust has steadfastly refused to produce any information from its database, alleging that it is proprietary, and thus not even subject to discovery. As will be discussed in more detail in section III below, the Trust's objection to producing its claims database is without merit. The alternative to the Trust's production of its claims database is the production of the hard copy files used to create it. Given the number of claimants at issue, a production of the hard copy files would impose a significantly greater burden on the Trust. The Trust has stated that it is willing to produce hard copy files, but only if Grace bears the cost of hard copy production, including laborious physical review, expensive retrieval, copying, and refiling charges estimated to be over $150,000 for what Grace believes to be only a small portion of the actual number of overlapping claimants. Expecting Grace to bear the costs of this cumbersome, time-consuming, and unduly expensive process seems entirely unwarranted where the vast majority of the information sought by the subpoena is otherwise available to the Trust in ***electronic form*** in the ***existing Trust database.*** Thus, to the extent that the production of hard copy files is more burdensome than the production of the claims database, the additional burden

---

[2] Furthermore, any burden involved in determining the actual number of matches between the Trust's claimants and Grace claimants is minimal and should be borne by the Trust. To date, the Trust has agreed to match claimants only based on full social security numbers, resulting in roughly 13,000 matches. Grace believes this significantly understates the number of matches because it does not have access to full social security numbers for the overwhelming majority of its claimants. *See* E. Ahern 6/22/07 Electronic Communication to D. Donnellon (Ex. F). When Grace's counsel requested that the Trust undertake to match claimants based on name and the last four digits of the social security number, the Trust refused. *See* D. Donnellon 6/15/07 Letter to E. Ahern ("[W]e have not undertaken that task and do not desire to do so.") (Ex. S).

7

should be borne by the Trust because Grace has sought to minimize the burden to the Trust by seeking information in electronic form.

Finally, the fact that the Trust is a non-party to the estimation is of little moment. Grace has already sought exposure data directly from the claimants (*see, e.g.*, Motion to Compel Compliance with Supplemental Order Regarding Motions to Compel Claimants to Respond to the W.R. Grace & Co. Asbestos Personal Injury Questionnaire), and has attempted to supplement this discovery through subpoenas to law firms of counsel for claimants. *See, e.g.*, 3/07 Subpoena to Early Ludwick (Ex. I); 6/20/07 B. Harding Letter to S. Esserman attaching subpoena to Brayton Purcell (Ex. J). In response, this Court has urged Grace to obtain this discovery directly from the Trusts. *See* 5/21/07 Hr'g Tr. at 209-10; *see also* 9/11/06 Hr'g Tr. at 259-61.[3]

## III.    THE TRUST'S REMAINING OBJECTIONS ARE MERITLESS.

In addition to its relevance and burden objections, the Trust also raises objections on the grounds that (1) information submitted by its claimants is confidential; (2) its electronic database is proprietary and confidential; and (3) notice must be given to every Trust claimant prior to the production of any documents. The Trust's remaining objections are wholly lacking in merit and present no obstacle to the production of the requested materials.

---

[3] What is more, the Celotex Trust is a significant asbestos trust and, as such, has an interest in the outcome of this estimation. Not only could the outcome of the estimation affect claims made against the Trust, but the outcome of the estimation could also provide a substantial systemic benefit. One of Grace's intended uses of the Trust materials is to uncover and hopefully curtail the false or misleading claim filings that have become endemic to the asbestos claims system. If Grace is successful, the Trust will reap significant benefits, including the ability to pay more to those that are truly injured because it will pay less to those whose claims are a sham.

**A.    The Trust's Minimal Confidentiality Statement Is Not A Bar To Subpoena Production.**

The Trust's Trust Distribution Procedures (TDPs) contain only one short, passing reference to confidentiality -- stating that claimants' materials are considered "confidential" and acknowledging that materials are submitted to the Trust "for settlement purposes." *See* Celotex Trust Distribution Procedures (Ex. N); Celotex Claims Submission Form (Ex. O). However, TDP provisions such as this do not guarantee that claimant submissions are immune from disclosure. In fact, other Trusts, with broader confidentiality provisions than Celotex[4] nevertheless recognize in their TDPs that trusts are required to "disclose the contents [of the trust submissions] . . . *in response to a valid subpoena of such materials issued by the Bankruptcy Court.*" *See, e.g.*, B & W TDPs at § 6.5 (emphasis added). Such an exception is necessary because the position that the mere existence of a confidentiality provision bars discovery is without legal merit.

**1.    Settlement Materials Are Not Immune From Discovery.**

It is axiomatic that "there is no absolute privilege for ... confidential information." *Federal Open Market Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979) (quoting 8 C. Wright & A. Miller *Federal Practice and Procedure* § 243, p. 300 (1970)). Accordingly, the law does not bar the discovery of settlement agreements, nor the information contained within such agreements. Indeed, settlement-related information and agreements may be discovered if it is relevant to the "subject matter involved in the pending action ... [or it] appears reasonably calculated to lead to

---

[4] In contrast, other asbestos trusts frequently employ broader confidentiality and privilege provisions, invoking state and federal privacy laws. *See, e.g.,* Babcock & Wilcox Trust Distribution Procedures at § 6.5 (Ex. P).

the discovery of admissible evidence." *Griffin v. Mashariki*, No. 96 CIV 6400 (DC), 1997 WL 756914, at *1 (S.D.N.Y. Dec. 8, 1997) (collecting cases).

Courts have found that "litigants cannot shield a settlement agreement from discovery *merely because it contains a confidentiality provision*." *Cleveland Constr., Inc. v. Whitehouse Hotel, Ltd. P'ship.*, No. Civ.A. 01-2666, 2004 WL 385052, at *1 (E.D. La. Feb. 25, 2004) (*quoting ABF Capital Mgmt. v. Askin Capital*, Nos. 96 Civ. 2978 (RWS), et al., 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000)). This Court agreed with this very point when this issue arose in connection with its consideration of the Questionnaire during the July 2005 omnibus hearing. The PI Committee, acting on behalf of the interests of the Personal Injury Claimants, objected to questions regarding the amounts of settlements with various defendants on the grounds that such settlements contain confidentiality agreements. 7/19/05 Hr'g Tr. at 282-83 (Ex. Q). Over the PI Committee's objection, the Court ordered that the claimants "identify the defendants with whom [the claimants] settled, the amount, and for what disease," and stated that a defendant "can come in and contest it if [a claimant] violates their agreements." *Id.*

Other courts considering whether discovery sought from an asbestos trust invaded confidentiality or privacy interests have similarly found that such information is not immune from discovery. The case of *Volkswagen of America, Inc. v. Superior Court*, 139 Cal. App. 4th 1481 (Cal. App. 1 Dist. 2006), is instructive. In *Volkswagen*, the plaintiff had filed suit against 67 separate manufacturers of asbestos-containing products. *Id.* at 1485-86. Volkswagen requested the production of all documents submitted by the plaintiff to any bankruptcy trusts. *Id.* at 1486. Despite having submitted documents to the Kaiser, Johns-Manville and Western MacArthur trusts, the plaintiff refused to

10

produce the documents to Volkswagen on the grounds that "the requests invaded protected privacy interests." *Id.* The materials at issue included "information and possibly supporting documentation describing a claimant's history of asbestos exposure and medical condition." *Id.* at 1489. The *Volkswagen* Court rejected the argument that privacy interests were sufficient to prevent the discovery, noting that such restrictions on discovery were "concerned primarily with protecting particularly sensitive matters, such as sexual or psychiatric histories, or the privacy interests of third parties." *Id.* at 1492. The Court stated:

> In contrast, what is at issue here is information bearing on the very injury for which [plaintiff] himself is suing Volkswagen. No third party interests are at stake. ***There is no reason to provide heightened protection for information concerning [plaintiff's] work history, which is plainly relevant and not confidential***, or concerning his medical condition which is directly at issue and undoubtedly substantially disclosed in materials that have already been produced during the course of discovery.

*Id.* (emphasis added). As all the information sought by Grace's subpoena relates solely to information provided to the Trust by individual claimants concerning their claims, there can be no conceivable privacy interest at stake. The claimants have squarely put their medical conditions, asbestos exposures, and settlement history with Celotex (and other asbestos defendants) for the same claims at issue.

### 2. A Properly Tailored Protective Order Will Alleviate Any Confidentiality Concerns.

To the extent that the Court believes that such information needs protection from disclosure outside the bankruptcy proceedings, the proper course is not to deny Grace access to the information, but to issue a protective order that restricts the use of the information obtained in response to these questions to the estimation proceedings. Federal Rule of Civil Procedure 26(c)(7) explicitly provides that a protective order

11

limiting the use or disclosure of confidential or trade secret information may be entered to allow the production of such materials. Fed. R. Civ. P. 26(c)(7). As the Third Circuit made clear, "The [C]ourt, in its discretion, is authorized by this subsection to fashion a set of limitations that *allows as much relevant material to be discovered as possible*, while preventing unnecessary intrusions into the legitimate interests — including . . . confidentiality interests — that might be harmed by the release of the material sought." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) (emphasis added); *see also Schrieber v. Society for Sav. Bancorp, Inc.*, 11 F.3d 217 (D.C. Cir. 1993) (finding that concerns over chilling effect of producing confidential bank information could be "alleviated if the Court could fashion a practical protective order"). This Court has already found that certain settlement information could be provided subject to an adequate protective order. *See* 12/22/06 Order re Motions to Compel at ¶ 4 (ordering provision of certain settlement information and providing that the parties' use of such information was limited to the estimation proceedings).

### B.    The Fact That The Trust Treats Its Database As Proprietary And Confidential Does Not Shield It From Discovery.

The Trust has refused to produce its claims database because it alleges that the database is "a valuable and proprietary trade secret." D. Donnellon 6/7/07 Letter to E. Ahern. (Ex. E). The Trust takes the position that because it views its database as proprietary, the database is thereby immunized from discovery. The Trust's position, however, has no basis in fact or in law. Non-secret data simply complied into a database should not, in and of itself, constitute a trade secret. Certainly, the data itself should not be considered a trade secret merely because a company such as the Trust has stored it in electronic format. Thus, the purportedly confidential information at issue here may not

12

even qualify as a trade secret. Nevertheless, courts have long held that trade secrets are subject to discovery. *See Cash Today of Texas, Inc. v. Greenberg*, No. Civ.A. 02-MC-77-GMS, 2002 WL 31414138, at *2 (D. Del. Oct. 23, 2002) ("It is well established, however, that trade secrets are not absolutely privileged from discovery in litigation." (citation omitted)).

In determining whether to grant discovery of information claimed as confidential, a court must balance relevance, need, confidentiality and harm. *See Mannington Mills, Inc. v. Armstrong World Industries, Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002). As discussed above, the relevance of and Grace's need for the requested materials is beyond dispute. Because relevance and need have been established, "the court must balance the need for the information with the harm that would be caused if disclosure is ordered." *See Cash Today of Texas*, No. Civ.A. 02-MC-77-GMS, 2002 WL 31414138, at *3. Potential harm must be considered in light of any protective order than would accompany the material to be produced. *See id.* at *2 ("In determining if disclosure would be harmful, the court must consider not the injury that would be caused by public disclosure, but the injury that would result from disclosure under an appropriate protective order." (internal citations omitted)). Both Grace and the Celotex Trust agree that a form of protective order is appropriate to govern any materials that maybe produced pursuant to the subpoena.

*Coca-Cola Bottling Co. v. Coca-Cola Co.*, 107 F.R.D. 288 (D. Del. 1985), is instructive as to extent that proprietary material may be subject to discovery. In *Coca-Cola Bottling Co.*, bottling companies brought suit against Coca-Cola to determine whether Diet Coke was covered by an agreement setting the price of the syrup used to

13

bottle Coca-Cola. 107 F.R.D. at 289-90. At issue was whether the court would order discovery of the Coca-Cola secret formula, what the court describes as "one of the best-kept trade secrets in the world." *Id.* at 289. The court found that the protections surrounding the secret formula are impressive: only two persons within the Coca-Cola Company know the formula, and the only written record of it is kept in an Atlanta bank vault that can only be opened upon a resolution from the Coca-Cola Board. *See id.* But, "even the legendary barriers erected by The Coca-Cola Company to keep its formulae from the world must fall if the formulae are needed to allow plaintiffs and the Court to determine the truth in these disputes." *Id.* at 290. The bottling companies argued that they required discovery of the secret formula in order to determine whether Diet Coke was similar enough to regular Coca-Cola to fall under the terms of a bottling syrup price agreement. *See id.* In balancing the need for the secret formula against the harm caused by its production, the court found that "virtually all of that harm can be eliminated with stringent protective orders and other safeguards." *Id.* at 299. The court then held that Coca-Cola must disclose the secret formula. *See id.* at 300.

Though the Trust claims that its database is a proprietary trade secret, the database deserves no more protection than that afforded to the Coca-Cola secret formula. The Trust faces a significantly lower risk of harm than that faced by Coca-Cola. If Coca-Cola competitors obtained the secret formula, the market could potentially be flooded by generic versions of Coca-Cola. This would undoubtedly pose a substantial threat to the continued vitality of the Coca-Cola Company. The Trust's survival as a trust, however, does not hinge on the maintenance of the absolute secrecy of the claims database. In fact,

14

no actual showing of harm to the Trust by the production of selected database information pursuant to Grace's subpoena has been made.

Moreover, the entry of an appropriate protective order should alleviate any concerns that the Trust may have about widespread disclosure of its claims database. Grace recently sought, and this Court will likely soon enter, a protective order governing the production of Claims Resolution Management Corporation's ("CRMC") claims database. CRMC agreed to produce its claims database in response to a subpoena served by Grace.[5] *See* 2/1/07 Subpoena to CRMC (Ex. L). The protective order covering this database prohibits, *inter alia*, any use of the CRMC database outside of Grace's bankruptcy. *See* CRMC Protective Order (Ex. M). A similar protective order would protect the Trust from any potential harm flowing from the production of information contained in its claims database. Grace has proposed the use of just such a protective order here. *See* 3/14/07 E. Ahern Letter to D. Donnellon with attachment (Ex. K). [6]

Given the low risk of harm to the Trust and the substantial and undue cost and delay of alternative discovery of claimants, law firms, or hard copy file production of Trust data, Grace's need for discovery of the Celotex electronic database information substantially outweighs any conceivable risk of harm to the Trust. As such, the Court

---

[5] The fact that CRMC makes commercial use of its database and the Celotex Trust does not is immaterial. The fact that Celotex does not sell its data does not make the Celotex Trust database immune from subpoena discovery. Courts routinely allow Rule 45 discovery of information that is not commercially available. Indeed, if commercial use of information were a necessary precursor to Rule 45 discovery, the discovery mechanism would be of limited value.

[6] The Celotex Trust rejected this proposed protective order in favor of an entirely different draft agreement, and the parties have been unable to reach a compromise on terms. *See* 6/22/07 E. Ahern Electronic Communication to D. Donnellon (Ex. F).

15

should compel the Trust to produce its claims database subject to the entry of an appropriate protective order.

### C.    The Trust's Notice Argument Is A Red Herring.

#### 1.    Notice To The Claimants Is Not Required.

The Trust argues that because the information provided to it is "confidential," it cannot be produced absent the consent of each and every claimant for whom it possesses responsive information. This argument is absurd. As noted above, even if the information were considered confidential, the Court may order its production pursuant to a properly-tailored protective order pursuant to Fed. R. Civ. P. 26(c). *See Pearson*, 211 F.3d at 65. There is simply no legal requirement under Rules 26, 34 or 45 that the subpoenaing party be required to give notice to the person who might have provided the allegedly confidential information to the subpoenaed party.

#### 2.    To The Extent Any Party Be Required To Give Notice To The Claimants, It Is The Trust.

Here, it would be impossible for Grace to notify the parties whose trust submissions the subpoena might reach. Grace provided the Trust with a list of persons who have made claims against Grace. As it does not have access to the Trust's records, Grace has no way to know which of those claimants have also made claims against the Trust.

The Court has recognized the impractibility of requiring Grace to contact each and every person whose records might be implicated by a subpoena issued by Grace in the bankruptcy when it determined that HIPAA's judicial exception allowed for a doctor to offer certain testimony related to certain claimants' claims. *See* 2/20/07 Hr'g Tr. at 17. The Official Committee of Asbestos Personal Injury Claimants objected to the provision

16

of such testimony on the grounds that Grace did not provide individual notice to each and every claimant whose medical information might be implicated. The Court flatly rejected such an argument -- finding that to the extent that the burden of notice fell on any party, it fell on the subpoenaed doctor. *Id.* ("[I]f the claimants are entitled to notice, they're entitled to it from Dr. Lucas, not from the debtor .... How can the debtor possibly know who Dr. Lucas's patients are before they even get the discovery? That doesn't make any sense."). Here too, Grace has no way of knowing which of the persons who brought claims against Grace have also submitted medical and exposure information to the Celotex Trust. Accordingly, to the extent that there is a notice requirement, such notice should be provided by the Trust, not Grace.

However, Grace did attempt to make the best practicable notice of the issuance of the subpoena and Celotex's impending production of documents and information by serving the bankruptcy's Rule 2002 list, which includes various law firms representing the majority of Grace claimants. At least one law firm, upon receiving notice of the subpoena, registered an informal objection and Grace agreed to limit the scope of its requests to information provided by Grace claimants and not to request information from plaintiffs who had no claims against Grace. *See* Email String between A. Basta and Baron & Budd (Ex. R). To the extent that the Court is inclined to find that Grace is required to attempt to notify its claimants of this subpoena, the notice provided to the Rule 2002 list should be deemed sufficient.

17

## CONCLUSION

For the reasons outlined above, Grace respectfully requests that the Celotex Asbestos Settlement Trust be compelled to produce relevant documents and to designate a representative to sit for deposition.

Dated: June 27, 2007

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB, LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:     (302) 652-4100
Facsimile:     (302) 652-4400

and

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Ellen Therese Ahern
200 E. Randolph Drive
Chicago, IL 60601
Telephone:     (312) 861-2000
Facsimile:     (312) 861-2200

and

KIRKLAND & ELLIS LLP
Barbara M. Harding
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:     (202) 879-5000
Facsimile:     (202) 879-5200