EXHIBIT C

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Ellen Therese Ahern
To Call Writer Directly:
(312) 861-2335
eahern@kirkland.com

(312) 861-2000

www.kirkland.com

Facsimile:
(312) 861-2200
Dir. Fax: (312) 861-2200

March 14, 2007

**BY FEDERAL EXPRESS**

Daniel J. Donnellon
Keating Meuthing and Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, OH 45202

Re:    W.R. Grace & Co. -- Celotex Subpoena

Dear Daniel:

I am writing in response to your February 16 and 23, 2007 letters to David Mendelson regarding the subpoena served by W.R. Grace & Co. on the Celotex Asbestos Settlement Trust ("the Trust") in connection with the above-captioned litigation and our conversation of March 12, 2007. I am hopeful that we will be able to reach an amicable resolution to the outstanding issues. This letter is intended to memorialize the agreements regarding the issues that we discussed during our March 12 conversation. I will also address and clarify the issues you raise in your March 13 letter to the extent Grace disagrees with your characterization of our conversation or there was any apparent misunderstanding.

### Amended Subpoena and Notice of Deposition

Per our conversation, we have revised the attachment to the subpoena to correct the technical errors that you noted. We enclose a copy of the original subpoena with the corrected attachment appended. Per our agreement, you have said you will accept service on behalf of the Trust. I trust that this will resolve any confusion your client may have had and will provide clarity.

### Protective Order

Per your request, Grace has drafted a protective order that we believe will meet your needs, which I enclose for your review. If the enclosed order is acceptable, let us know, and we will file an agreed motion for its entry with the Bankruptcy Court in order to facilitate the Trust's production of documents.

## KIRKLAND & ELLIS LLP

Daniel J. Donnellon
March 14, 2007
Page 2

### General Objections Regarding Relevance and Burden

We discussed certain objections raised by the Trust regarding Grace's efforts to obtain discovery from the Trust as opposed to (or in addition to) direct discovery from the Grace claimants. We expressed our position that Grace is entitled to seek discovery regarding whether claimants had submitted additional, different or conflicting data and information to the Trust than what was produced in connection with the Bankruptcy. We noted that the subpoena was issued out of the Delaware Bankruptcy Court, and also noted that this Court had allowed Grace to pursue various non-party discovery for such purposes. Thus, as we noted, Grace's position is that such discovery is relevant and would not pose an undue burden. We disagree with the characterization in your March 13 letter that we "contend[ed that] Judge Fitzgerald authorized Grace to pursue redundant discovery, regardless of the burden on a third party." We agreed to provide certain pleadings and transcript references shedding light on the prior positions taken by the Court on such non-party discovery. We will transmit the portions of the transcripts that we referenced under separate cover in the next few days.

### Confidentiality Issues and Notice

In our March 12 conversation, you raised the issue of potential claimant confidentiality concerns regarding the materials in the Trust's possession and possible notice to the claimants of the discovery sought by the subpoena in order to provide them with an opportunity to object. We noted that in a somewhat similar context -- non-party discovery sought of a physician from whom many claimants have submitted reports or otherwise identified in their questionnaire responses -- the parties briefed a similar notice issue. There Grace argued that, by serving the subpoena on the parties listed on the Bankruptcy Rule 2002 service list, which includes various law firms representing Grace claimants, Grace provided the best practicable notice of the discovery it sought. In that context, the Court allowed the discovery and entered an order finding that HIPAA did not apply to the discovery at issue in the motion. We have enclosed copies of the pleadings related to this issue and a transcript of the hearing where the HIPAA motion was discussed. Here too, we served the instant subpoena on the Rule 2002 list. The only formal or informal objection Grace received in response to the subpoena was the concern of Baron & Budd discussed below about the scope of Document Request Number 1. No claimant nor any claimant's counsel raised confidentiality objections to the subpoena. (*See* attached email with Baron & Budd noting objection.)

### Narrowing Dataset Requests

In response to the concerns raised by the Baron & Budd firm over the breadth of Request Number 1, Grace agrees to limit Request Number 1 to Grace claimants. I enclose a CD-Rom identifying such Claimants by name, social security number and date of birth (where available to Grace) in a machine-readable format as you requested. Please let us know if there is any

**KIRKLAND & ELLIS LLP**

Daniel J. Donnellon
March 14, 2007
Page 3

difficulty with the format of this information to aid in your attempts to determine matches to the Trust data. To the extent a definitive match cannot be ascertained from the information provided, we would like to continue to work cooperatively with you to determine what additional information can be provided to assist in the matching process.

### Cost of Compliance with the Subpoena

As discussed, Grace is willing to reimburse the Trust for its reasonable cost of compliance with the subpoena consistent with the provisions and limitations of Federal Rule of Civil Procedure 45.

### Objections to Specific Requests

*Document Request Numbers 2 and 6*

We discussed Document Request Number 2 regarding information related to the Trust's decision to suspend or ban certain physician or screening companies from submitting reports to the Trust. While Grace did note that it would seek to obtain foundation and authenticity testimony regarding any materials produced pursuant to this request, Grace also expressly noted that this might be an area where Grace may desire to ask deposition questions of a corporate representative to follow up on the materials that were produced. To the extent that the scope of any such deposition could be narrowed, Grace agreed that the parties should discuss the matter further following any document production. Grace also agreed to consider the possibility of exploring the viability of proceeding with a deposition by written question. Similar discussions were also held regarding Document Request Number 6 seeking information related to the review and evaluation of claims by the Trust. Further, in both instances, Grace indicated that it would expect any document withheld from production on privileged grounds to be identified on a privilege log. However, at no time did Grace agree that the requests could be satisfied merely by the authentication of publicly-available documents alone or that substantive, non-privileged testimony would not be required to supplement any publicly-available materials. To the extent that your March 13 letter suggests differently, we disagree with your characterization of the March 12 communications and seek to clarify any misunderstanding that may have occurred.

*Document Requests Number 3-5*

With respect to the concerns you have expressed regarding Document Requests 3-5, you have agreed that you will confer with your client to determine whether, and in what format, the Trust maintains this information. Once we receive that feedback from you, Grace is willing to have further discussions regarding any production of this information. In addition, with respect to these requests, in the spirit of compromise, Grace is willing to limit the request to the period 1995 to the present if that would facilitate or aid your ability to provide such information.

**KIRKLAND & ELLIS LLP**

Daniel J. Donnellon
March 14, 2007
Page 4

We disagree with the statement in your March 13 letter that Grace "acknowledged that the Trust is not obligated to produce anything that would take significant manpower to create or produce." Your representation unfairly overstates Grace willingness to seek amicable resolution of this request in a way that would not unduly burden the Trust. Again, while we are willing to discuss narrowing the scope of the requests based on your feedback regarding the manner in which such information is maintained or alternative means of obtaining such information, such as via written or live deposition testimony under Rule 30(b)(6), Grace expects that the Trust will fulfill its obligations under Rule 45 and will devote the manpower necessary to meet such obligations.

*Document Request Number 7*

With respect to the concerns you have expressed regarding Document Request 7, we hope that we can reach an amicable resolution. In response to your concern regarding the burden associated with matching the Trust database to the hard copy lists previously provided, the enclosed CD-Rom contains electronic, machine-readable versions of the exhibits that originally comprised Attachment B to the original subpoena. Again, in the spirit of compromise, Grace is willing to limit the period of time covered by this request to the period of 1995 to the present.

**Trust Representative Deponent**

Grace agreed to work cooperatively with the Trust to assess and potentially narrow the scope of any necessary Trust representative deposition in light of materials that may be produced. While we expressed a desire to establish foundation and authenticity for the documents produced by the Trust, Grace expressly stated that it may also desire to ask substantive questions of a corporate witness related to the Trust's production. We hope to be able to reach an amicable and satisfactory resolution of the scope of any such deposition. We agreed to continue the dialogue on this issue and to consider whether a deposition by written question, in whole or in part, may prove to be a viable alternative approach. But Grace did not commit to any specific limitation on the scope of the deposition sought by its subpoena and its Rule 30(b)(6) deposition notice. We did, however, agree to schedule any such deposition on a mutually-convenient date and in a mutually-convenient location.

## KIRKLAND & ELLIS LLP

Daniel J. Donnellon
March 14, 2007
Page 5



      I hope this letter clarifies Grace's position on these issues. We hope to continue to work with you amiably and to continue the positive dialogue on these matters. If you have any further questions, please feel free to contact either me or Amanda Basta.

                                      Sincerely,

                                      Ellen Therese Ahern

ETA/acb

Enclosures

cc:    Amanda Basta
       David Mendelson