EXHIBIT D

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Ellen Therese Ahern
To Call Writer Directly:
312 861-2335
eahern@kirkland.com

(312) 861-2000

www.kirkland.com

Facsimile:
(312) 861-2200

May 21, 2007

**VIA FEDERAL EXPRESS AND
ELECTRONIC DELIVERY**

Daniel J. Donnellon
Keating Meuthing and Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, OH 45202

Re:    *W.R. Grace & Co. -- Celotex Subpoena*

Dear Daniel:

This letter is intended to follow up on my March 14 letter and is in further response to your March 13 letter and emails.

### General Objections Regarding Relevance and Burden

On March 12, we discussed certain objections raised by the Trust regarding Grace's efforts to obtain discovery from the Trust as opposed to (or in addition to) direct discovery from the Grace claimants. We expressed our position that Grace is entitled to seek discovery regarding whether claimants had submitted additional, different or conflicting data and information to the Trust than what was produced in connection with the Bankruptcy. We noted that the subpoena was issued out of the Delaware Bankruptcy Court, and also noted that this Court had allowed Grace to pursue various non-party discovery for such purposes. Thus, as we noted in March, Grace's position is that such discovery is relevant and would not pose an undue burden.

As we discussed during our meet and confer call on March 12, the Court has allowed discovery into the basis of the asbestos-personal injury claims that had been brought against W.R. Grace & Co. at the time it filed for bankruptcy protection in April 2001. This discovery has not been limited to the direct discovery of the claimants, but instead has included broader evidence that may be used to support personal injury and estimation expert opinions. *See, e.g.,* 7/24/06 Hr'g Tr. at 52-53; *see also* 6/19/06 Hr'g Tr. at 87. The Court has articulated its guiding principles as to what discovery it will allow, stating:

> ...in looking at relevance I am looking at what the experts may need, and it still seems to me that your -- the exposure history may be relevant to an expert in

## KIRKLAND & ELLIS LLP

Daniel J. Donnellon
May 21, 2007
Page 2

> terms of figuring out what the funding for a trust may be. And since I can't at this point opine what the experts are going to want to know and discovery is reasonable, if it is calculated to lead to relevant, admissible evidence, and this may be relevant and admissible evidence, I have to determine that it's relevant. 9/11/06 Hr'g Tr. at 251
>
> [T]hey [experts] want to see the other exposure information, and that seems to me to be relevant. *Id.* at 206.

Likewise, the test for relevance under Federal Rule 26(b) is not, of course, whether related or similar discovery has been produced from other sources, but whether the subject of the request "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Grace's subpoena requests easily meet this standard.

Consistent with these principles, the Court has not only allowed non-party discovery, but has encouraged it as an alternative means of obtaining information related to the claimants. The issue has been raised on several occasions before the Court. The Court has explicitly condoned Grace's seeking non-party discovery of information related to the medical bases for individual claims from the doctors and screening companies responsible for generating those claims. 10/24/05 Hr'g Tr. at 75-76 ("[T]ake the depositions of the doctors. Because they're the ones who got paid and gave the diagnosis. And it's their testimony you're trying to challenge."); *id.* at 78. The Court acknowledged the possibility that discovery may be taken of the law firms to the extent that they had relevant information that Grace could not obtain from the Claimants themselves. *See id.* at 82 ("If you've got need for specific discovery [from attorneys], focused on a specific area, you can take it and we'll deal with it piecemeal."), 85.

Discovery of asbestos claim trusts such as Celotex should be no different, and would in fact, likely pose fewer potential confidentiality, privilege and burden issues than law firm discovery. In fact, some of these observations were made in the express context of non-party discovery of trusts. The Court suggested that, in order to get exposure information, Grace should "subpoena[] some of this information from the trust." 9/11/06 Hr'g Tr. at 259. Indeed, the Court suggested that discovery from the trusts would be *less burdensome* than from the individual claimants, as the trusts maintain the information "in an electronic format." *Id.* at 261.

In sum, the Court has preferred to allow claimant-specific discovery from non-parties within the context of an appropriate protective order rather than to foreclose discovery on relevance, privacy or privilege grounds. *See* 12/19/06 Hr'g Tr. at 19-20; 2/13/07 Hr'g Tr. at 18, lines 13-21 ("The reality is this is litigation. The debtor needs this discovery. The debtor's going to get the discovery . . ."). Given this context, we believe the Court would allow the trust discovery Grace seeks here.

KIRKLAND & ELLIS LLP

Daniel J. Donnellon
May 21, 2007
Page 3

### Confidentiality Issues and Draft Protective Order

On March 14, we sent you a draft protective order for your review and offered to file an agreed motion for its entry with the Bankruptcy Court in order to facilitate the Trust's production of documents. We never heard back from you with comments on the draft. We believe the draft protective order that we sent should resolve your concerns regarding confidentiality. Please let us know if you have comments or revisions.

### Notice Issue

During our March 12 conversation, you raised the issue of possible notice to the claimants of the discovery sought by the subpoena in order to provide them with an opportunity to object. At that time, we noted that in a somewhat similar context -- non-party discovery sought of a physician from whom many claimants have submitted reports or otherwise identified in their questionnaire responses -- the parties briefed a similar notice issue. We explained that there Grace had argued that, by serving the subpoena on the parties listed on the Bankruptcy Rule 2002 service list, which includes various law firms representing Grace claimants, Grace provided the best practicable notice of the discovery it sought. We also explained that, in that context, the Court allowed the discovery and entered an order finding that HIPAA did not apply to the discovery at issue in the motion. On March 14, I sent to you copies of the pleadings related to this issue and a transcript of the hearing where the HIPAA motion was discussed.

On March 12 and again on March 14, I noted that, here too, we had served the instant subpoena on the Rule 2002 list. The only formal or informal objection Grace received in response to the subpoena was the concern of Baron & Budd about the scope of Document Request Number 1. I sent you a copy of the email communications discussing that issue on March 14, and also noted that no claimant nor any claimant's counsel raised confidentiality objections to the subpoena.

I have not heard back from you on this issue since my March 14 letter. I trust that the matter is now resolved and you have no further objection on this subject.

### Narrowing Dataset Requests

As has been explained to you previously, in response to the concerns raised by the Baron & Budd firm over the breadth of Request Number 1, Grace agreed to limit Request Number 1 to Grace claimants. On March 14, I sent to you a CD-Rom identifying such claimants by name, social security number and date of birth (where available to Grace) in a machine-readable format as you requested. I did not hear back from you in any way. I trust that you had no difficulty with the format of this information to aid in your attempts to determine matches to the Trust data. Given that two months have now passed, you have had sufficient time to conduct your analysis. To the extent a definitive match cannot be ascertained from the information provided, we would like to continue to work with you to determine what additional information can be provided to

## KIRKLAND & ELLIS LLP

Daniel J. Donnellon
May 21, 2007
Page 4


assist in the matching process. Please let us know where this effort at matching stands. In light of the months that have passed since we sent you the CD Rom, we expect that your matching analysis is now completed.

### Cost of Compliance with the Subpoena

Grace remains willing to reimburse the Trust for its reasonable cost of compliance with the subpoena consistent with the provisions and limitations of Federal Rule of Civil Procedure 45. You have not given us any feedback on what the actual or estimated costs are related to subpoena compliance.

### Objections to Specific Requests

#### Document Request Numbers 2 and 6

On March 12 and again in my March 14 letter, we discussed Document Request Number 2 regarding information related to the Trust's decision to suspend or ban certain physician or screening companies from submitting reports to the Trust and Document Request Number 6 seeking information related to the review and evaluation of claims by the Trust. While, during the course of those discussion, Grace did note that it would seek to obtain foundation and authenticity testimony regarding any materials produced pursuant to this request, Grace also expressly noted that this might be an area where Grace may desire to ask deposition questions of a corporate representative to follow up on the materials that were produced. That continues to be the case. To the extent that the scope of any such deposition can be narrowed, Grace has agreed that the parties should discuss the matter further following any document production. In our March discussions and communications, Grace also agreed to consider the possibility of exploring the viability of proceeding with a deposition by written question.

I have heard nothing back from you on this subject, nor any feedback whether this approach is acceptable to your client. Please let us know when we can expect product of materials responsive to request nos. 2 and 6.

#### Document Requests Number 3-5

You also raised certain concerns regarding Document Requests 3-5, but you agreed to confer with your client to determine whether, and in what format, the Trust maintains this information. In the last two months, I assume you have had ample opportunity to investigate this issue with your client. Yet, we have received no feedback from you at all on this subject. Please get back to us on this point as soon as possible. We remain willing to discuss narrowing the scope of the requests based on your feedback regarding the manner in which such information is maintained, assuming such feedback is ever forthcoming. We are also willing to explore alternative means of obtaining such information, such as via written or live deposition testimony

KIRKLAND & ELLIS LLP

Daniel J. Donnellon
May 21, 2007
Page 5

under Rule 30(b)(6). But we want to resolve this issue and thereby obtain whatever discovery is possible now.

*Document Request Number 7*

In response to your concern regarding the burden associated with matching the Trust database to the hard copy lists previously provided, on March 14 we sent to you a CD-Rom containing electronic, machine-readable versions of the exhibits that originally comprised Attachment B to the original subpoena. This should have resolved your burden issues. Please let us know when we can expect to receive responsive information.

**Trust Representative Deponent**

In March, Grace agreed to work cooperatively with the Trust to assess and potentially narrow the scope of any necessary Trust representative deposition in light of materials that may be produced. While we expressed a desire to establish foundation and authenticity for the documents produced by the Trust, Grace also expressly stated that it may desire to ask substantive questions of a corporate witness related to the Trust's production. Our interest in this deposition is on-going. We had hoped to be able to reach an amicable and satisfactory resolution of the scope of any such deposition. Absent production of responsive materials from the Trust, Grace is not in a position to narrow the scope of any corporate representative deposition, and we will seek to compel the deposition if we must.

Grace has sought to resolve your objections to the subpoena in good faith. In response, you promised us additional substantive feedback in many areas. We have not heard back from you about the various issues raised by the subpoena in more than two months. Please let us know immediately whether you intend to produce information and material responsive to the subpoena and provide me with scheduling information related to the corporate representative deposition. If we do not hear back from you, we move to compel the discovery.

Sincerely,

Ellen Therese Ahern

ETA/nf

cc: Amanda Basta