# EXHIBIT E



**KMK** | Keating Muething & Klekamp PLL
ATTORNEYS AT LAW

DANIEL J. DONNELLON
DIRECT DIAL: (513) 579-6408
FACSIMILE: (513) 579-6457
E-MAIL: DDONNELLON@KMKLAW.COM

June 7, 2007

Ellen T. Ahern, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636

    RE: *W.R. Grace & Co., et al.*
      *United States Bankruptcy Court*
      *For the District of Delaware*
      *Case No.: 01-01139 (JFK)*
      <u>*Chapter 11*</u>

Dear Ellen:

   I write in response to your letter dated May 21, 2007, and our follow-up conference on June 5, 2007. As I indicated in my e-mail response of May 21, I am surprised that we received no follow-up from Grace counsel for almost ten weeks from the letter indicating that the Celotex Trust objected to the subpoena in its entirety and our discussions relating to those objections. Nonetheless, it continues to be our desire to engage in cooperative discussions with you, and we hope to reach an amicable resolution of this matter that both protects the interests of the Trust and Trust beneficiaries, and allows you appropriate access to information that you seek. We share the sentiment you expressed during yesterday's conference that as a result of a miscommunication, we were each waiting to hear back from the other. We also appreciate your statement recognizing that we have made a concerted effort to help you obtain the information you want if it can be done in a manner that resolves our numerous serious objections to your subpoena. In an effort to continue our dialogue, I will take this opportunity to memorialize our conference and outline a proposed resolution to the areas that continue to be in dispute.

   Although we are presently cooperating in an effort to reach a mutually agreeable resolution, we continue to object to the subpoena and deposition notice in their entirety. Accordingly, any offer of compromise relating to resolution of this discovery dispute is a negotiation for settlement purposes and is not intended to be used as an admission by the Celotex Trust that it has any responsibility to produce any documents in response to the subpoena. Presently, we object to the subpoena in its entirety and will produce no documents or electronic information in response unless we do so on terms that are acceptable to the Celotex Trust in connection with the final resolution of this dispute and an agreement that Grace will not seek additional discovery from the Trust in connection with the bankruptcy proceedings.

Ellen T. Ahern, Esq.
June 7, 2007
Page 2

## PROTECTIVE ORDER

I enclose our mark-up to the draft protective order you sent us previously. As I indicated, these revisions are based upon a protective order I used in another mass tort matter. We await your comments. This draft is for discussion purposes only, and our agreement to such a protective order is contingent upon a resolution of the other issues in dispute. Once the other issues have been resolved, we will be prepared to submit a joint motion to the Court. Accordingly, please contact me before any filing of the protective order with the Court.

## DEPOSITION NOTICE

You requested a deposition pursuant to Rule 30(b)(6) for topics that include many privileged, proprietary, and confidential areas of potential inquiry. You stated it was not your intention to seek privileged or proprietary information and the purpose of the deposition would be more to authenticate the materials produced in response to the subpoena. We suggested this be done via deposition upon written examination. We appreciate your statement that you do not have a "vested interest" in live depositions and believe the deposition can most appropriately proceed through written questions. In the interests of being cooperative, however, we would be willing provide a live witness on narrowly tailored topics at a mutually convenient time and place. We welcome preliminary discussions regarding potential dates and parameters of any live depositions, should they become necessary. With that said, I will go through the individual deposition topics in an attempt to narrow those areas of inquiry.

(1) *Suspension of the Acceptance of Reports from any Provider of Medical or Screening by the Celotex Trust.*

With the exception of Dr. Gregory Nayden (and AMT), the suspended doctors and screening companies for asbestos and silica claims are set forth in a Notice of Trust Policy Regarding Acceptance of Medical Reports sent from John L. Mekus, Executive Director of the Celotex Trust on October 20, 2005. The substance of that notice letter is readily available to the public on the website www.celotextrust.com under the "News" page. Any information beyond that contained in the letter notice is a subject of privileged communications between the Trust and its counsel. At a deposition, we would authenticate the letter notice and/or the information available on the website and preclude inquiry into the reasons behind those suspensions or similar other privileged communications. As noted below, the Trust may have some additional, non-privileged documents relating to these suspensions that are public record and likely already in your possession. To the extent those are produced, we would permit similar limited inquiry relating to them. The Trust may have some very limited, non-privileged documents relating to the suspension of Dr. Nayden. To the extent you deem those relevant, then we will produce them and allow similar limited inquiry.

Ellen T. Ahern, Esq.
June 7, 2007
Page 3

    (2)    ***The Criteria Used for the Acceptance or Disallowance of Claims Submitted to the Celotex Trust.***

During all of our conversations, I have indicated that the criteria are clearly defined in the Third Amended and Restated Asbestos Personal Injury Claims Review Procedures, which is publicly available on the www.celotextrust.com website. Also available for download from the website are Instructions for Filing a Claim and a User's Manual. During some of the time period that may be applicable to the subpoena, the Trust processed claims under the Second Amended and Restated Asbestos Personal Injury Claims Review Procedures.

Any deposition relating to the Claims Review Procedures will be extremely limited. Any inquiry into the manner or practices used by the Celotex Trust to review and process claims under the Claims Review Procedures is proprietary information that is not subject to discovery. If there is a live deposition, we will permit inquiry into the authentication of the documents and differences between the Second and Third Amendments, but we will not permit inquiry into reasons for the changes. Any follow-up discovery of a live witness will be extremely limited under the parameters we have discussed and as outlined above.

    (3)    ***Electronic Databases Containing Data Submitted by Persons Seeking Compensation from the Trust for an Asbestos-Related Disease.***

This topic appears to seek only the technical details of how the data is gathered and maintained by the Celotex Trust. We can make a witness available to discuss these technical details which may help Grace understand why the Trust cannot produce a database in the form of the documents, materials and information specified by Grace in the subpoena for Production of Documents and Things. We will, however, instruct the witness not to answer questions, as necessary, to protect against privileged, proprietary, or confidential areas of inquiry.

## DOCUMENTS

*Request No. 1*

This request essentially targets the production of data and opinions generated by the Trust's trained employees collected over nearly a decade relating to hundreds of thousands of claims. The Trust does not sell, license, or distribute such information and opinions, and, in fact, considers such to be highly confidential and proprietary. The items requested seek the confidential work product of the Trust. For example, requests "u) Evaluated Injury and v) Summary Injury," among others, target judgment calls made by the Trust and collected by it in extensive and proprietary data tables.

You stated that the subpoena to the Trust was motivated by your belief that Grace Claimants are holding out on you and not giving you information to which you are entitled. We do not believe this is sufficient justification to put the non-party Trust to the substantial burden that your requests entail. You, of course, have an obligation to obtain discovery from your own

Ellen T. Ahern, Esq.
June 7, 2007
Page 4

Claimants before seeking such materials from the non-party Trust. Any failure to appropriately respond to discovery by Claimants in the Grace proceeding should be taken up with the court in that action. With that said, we will proceed to additional reasons why the Trust is not able to provide the database you seek.

You agreed that the Trust's database is proprietary to the Trust. As you are aware, the Manville Trust licenses similar data relating to asbestos claims for tens of thousands of dollars per year and has generated hundreds of thousands of dollars of revenue since it began doing so. However, Manville limits the use of its materials to statistical matching only. It does not, to our understanding, permit licensees to use Manville's data for individual claim processing. In the protective order entered by the Court relating to the Manville production in this case, the Court found, and you agreed, that the database created by the Manville Trust is proprietary and commercially confidential. Thus, it is beyond reasonable debate that the Celotex Trust's database has significant commercial value. Rather than license access to the database, like Manville, the Celotex Trust has chosen to keep that information, gathered over many years by experienced reviewers, as a valuable and proprietary trade secret. In addition, although some of the information maintained in the Celotex data tables consists of completely objective names and dates, etc., the specialized compilation in which Celotex created its data tables resulted from a great expenditure of time and money and gives the Celotex Trust a competitive advantage in processing new asbestos-related claims for other trusts or qualified settlement funds seeking to process and pay asbestos-related personal injury claims. Finally, because of the unique nature of Celotex's Claims Resolution Procedures, the data is only of marginal relevance to the Grace proceedings and far from a necessity in the estimation of Grace's asbestos liabilities.

The information you obtained from Manville is more than adequate for you to perform any statistical analysis necessary for Grace's aggregate claims estimation. As you confirmed in our telephone conference, the numerous experts involved in the Grace estimation of asbestos personal injury liabilities all have access to the Manville data and have paid for the Manville licenses. Thus, Grace would be obtaining largely duplicative information from the Celotex Trust, and there is no reason to force the Celotex Trust to surrender proprietary data that it chooses not to license for valid business reasons simply to respond to this subpoena. Further, while discussing this topic, you indicated that Grace is primarily interested in obtaining Claimant work and exposure histories. As we discussed, the Celotex data might not be as useful to Grace as you believe. The Trust does not extensively track work history or alternate exposure data. The Trust does not consider alternative exposures when reviewing a claim. The Trust tracks only exposure to Celotex products. At your request, I will consult with the Claims Facility to confirm the limited nature of this data in our possession.

You indicated that you are secondarily interested in medical histories. The Trust does not track medical information in a way useful to Grace. For example, you'll note in the Celotex Claims Resolution Procedures that individually reviewed claims have only two categories for the non-malignant disease commonly referred to as "asbestosis": "Non-Disabling Bilateral Interstitial Lung Disease (NBILD)" and "Disabling Bilateral Interstitial Lung Disease (DBILD)."

Ellen T. Ahern, Esq.
June 7, 2007
Page 5

The Celotex procedures do not require a "B-read" *per se*. The only difference between NBILD and DBILD is in pulmonary function testing. A 20% decrement in lung performance in any one or more of the following distinguishes the claim as DBILD: "Total Lung Capacity, Forced Vital Capacity or Diffusing Capacity." Most other asbestos trusts apply different definitions for asbestosis and many claims settled in the tort system do not apply this nomenclature and protocol for distinguishing between severity levels of asbestosis claims. Accordingly, even if the Celotex Trust were willing to produce its electronic database—which it is not—the "Evaluated Injury, Summary Injury and Disease" requested by Grace would not necessarily correspond to Grace's own claim constructs or the data Grace is obtaining from other sources. Therefore, Grace's need for this proprietary information from the Celotex Trust is minimal or non-existent.

### *Request No. 2*

As previously indicated, the communication to Claimants and their counsel relating to the suspension of doctors is available on the Trust's website. Internal documents relating to the suspension of the doctors are privileged and not subject to discovery. It is possible, however, that the Trust *may have* some publicly available information relating to the suspension of doctors, such as the Opinion and Order of Judge Janis Graham Jack in the Silica MDL, transcripts of proceedings in the Silica MDL, depositions taken in the Silica MDL, transcripts of congressional hearings, etc. To the extent you wish to have Trust employees search for such documents, we would be willing to discuss a process by which that can be done, but we see no reason to burden the Trust with the time and expense to produce such documents otherwise publicly available to Grace and highly likely already in its possession.

### *Request No. 3*

The Trust does not maintain a so-called "Top twenty-five" list of individuals who authored B-read reports in support of claims. The law is clear that the Trust has no obligation to create for you documents that do not exist. In the interests of resolving this dispute and subject to you agreement on the other terms outlined, the Trust would be willing to query its proprietary database and create a document potentially identifying the most prolific B-readers associated with such claims. We would be willing to do so, however, only upon Grace's agreement that the production of such a list would not waive the Trust's right to protect its confidential, proprietary database nor would be used against it in any future proceedings as any waiver of the proprietary nature of that database.

### *Request No. 4*

The Trust does not maintain a so-called "Top twenty-five" list of individuals who are considered the primary diagnosing doctor on reports submitted in support of claims the Trust would be willing to query its proprietary database and create a document potentially identifying the most prolific diagnosticians associated with such claims. We would be willing to do so, however, only upon Grace's agreement that the production of such a list would not waive the

Ellen T. Ahern, Esq.
June 7, 2007
Page 6

Trust's right to protect its confidential, proprietary database nor would be used against it in any future proceedings as any waiver of the proprietary nature of that database.

*Request No. 5*

As we discussed, this request is vague and ambiguous. If the generic identification of "individuals who authored reports" is considered to be different from the B-reader request and diagnostician request, then, as we discussed, the Trust does not maintain such a top twenty-five list. You clarified that this request seeks the "Top twenty-five" doctors across all of the categories where we track doctor identities. The Trust does not maintain a so-called "Top twenty-five" list of individuals who authored reports in support of claims. The law is clear that the Trust has no obligation to create for you documents that do not exist. In the interests of resolving this dispute and subject to you agreement on the other terms outlined, the Trust would be willing to query its proprietary database and create a document potentially identifying the most prolific diagnosticians associated with such claims. We would be willing to do so, however, only upon Grace's agreement that the production of such a list would not waive the Trust's right to protect its confidential, proprietary database nor would be used against it in any future proceedings as any waiver of the proprietary nature of that database.

*Request No. 6*

You previously indicated, and confirmed during our discussion, that Request No. 6 does not seek the Trust's proprietary claims review materials. Accordingly, all non-proprietary information relating to the criteria used to determine allowance or disallowance of claims is set forth in the Third Amended Claims Resolution Procedures. There are, in addition, instructions and memoranda to Claimants relating to submission of claims which arguably could relate to this request and there may be additional non-proprietary documents sent to Claimants in connection with that review process. As we discussed, we would consider producing information beyond the Claims Resolution Procedures themselves only to the extent that Grace would agree that such production was not a waiver of the right to object to any inquiry of documents or testimony that the Trust considers proprietary in connection with its claims review process. The documents that might be produced under this agreement include the form letters the Trust uses to deny claims.

*Request No. 7*

This request initially involved the proposed production of files relating to more than 50,000 individual Claimants. The original request was not in machine readable form. When you provided machine readable data to analyze and identify those Claimants, we identified 13,176 individual claim files in the Celotex Trust's possession that could reasonably be determined to be matches to files requested by Grace. Unfortunately, since many provided only the last four digits of their social security number, we could not obtain reasonable certainty for any matches beyond that 13,176. In addition, sixteen of those individual Claimants are *pro se* and 6,501 of those claim files are archived in an off-site storage facility that will charge a retrieval and re-filing fee

Ellen T. Ahern, Esq.
June 7, 2007
Page 7

to obtain the documents. Obviously the production of files of this magnitude would be extremely burdensome upon the Trust and expensive. Moreover, consistent with the ruling of the Delaware Asbestos MDL and other court's standard case management orders, the best source of this information is from the Claimant/plaintiff pursuing the claim against the party seeking production from the Trust. Therefore, with such a readily available source with no burden on the Trust whatsoever, the documents should first be sought from the Claimants. Any failure of the Claimants to adequately respond should be taken up with the bankruptcy court in the Grace bankruptcy.

Despite these valid objections, we are willing to discuss the production of a reasonable number of Claimant files by the Trust. But, before we reach any conclusions on this matter, we must resolve four separate issues:

    (1)    Burdensomeness of the Request;

    (2)    Protection of the Claimants' confidentiality;

    (3)    Cost neutrality to the Trust; and

    (4)    Identification of the relevant portions, if any, to be copied and produced.

***Burden upon the Trust and its Claims Facility.***

As we discussed, the Trust's claims are processed through the Delaware Claim Processing Facility—an entity that the Trust does not control. Approximately half of the 13,176 Claimant files and records are maintained on site at the Claims Facility. The remainder are in offsite storage. Retrieving the Claimant files and records from either location, combing each file for responsive documents, and ensuring proprietary information is excluded from the production will be a substantial undertaking. My initial conversations with the Claims Facility indicate that it does not have personnel resources available to complete the process in an expeditious manner. I believe that a staff of temporary paralegals and document reviewers may need to be employed to complete the production. Even with temporary employees, the production of 13,176 Claimant files will be extremely burdensome. Accordingly, Grace should strongly consider reducing the scope of the request.

***Protecting Claimant Confidentiality.***

As we discussed, the Trust's Claims Resolution Procedures specify that the Trust and the Claimants consider all submissions to the Trust to be confidential for settlement purposes only. Such materials are entitled to protection, both pursuant to state and federal privileges related to communications made in the course of settlement negotiations and pursuant to various state law privileges relating to the protection of medical records. Furthermore, the Trust has a fiduciary

Ellen T. Ahern, Esq.
June 7, 2007
Page 8

obligation to the Claimants to protect the confidences of those Claimants because these materials were submitted pursuant to Procedures whereby the Trust agreed that it would keep such submissions confidential. We believe the law requires you to first seek these claims materials from the individual Claimants — most, if not all, of whom are creditors in your bankruptcy — prior to burdening the Trust with this request.

In an effort to be cooperative, however, the Trust would be willing (subject to the other conditions set forth herein) to produce a reasonable number of individual Claimant files, provided that you simply obtain a signed authorization from the individual Claimant or his legal representative authorizing the Trust to produce such materials. Since most, if not all, of these Claimants are apparently creditors in your bankruptcy who have already been ordered to submit detailed questionnaires in your bankruptcy, we trust that it will be little burden for you to obtain such authorizations; and, certainly, the court can adequately resolve any issues that might arise if Claimants are unwilling to provide such releases. Accordingly, we expect for you either to seek to obtain the claim forms from the Claimants' counsel, or to obtain consent of the Claimant for the Trust to release the claim forms. We reject your contention that notice to the Grace notice list is sufficient. You must obtain affirmative consent from the Claimants. We will not resolve any issues relating to the potential production until the confidentiality and consent issues are resolved.

*Cost Neutrality to the Trust.*

We discussed that this entire process must be cost neutral to the Trust. This means, W.R. Grace will pay the entire cost of copying the Claimant files and records and the retrieval and re-filing cost from the outside vendor. In addition, the Delaware Claims Processing Facility will charge its own retrieval and re-filing cost on a time and materials basis for retrieval and copying of files at its facility. In the event that there are any portions of the files that are segregated, Grace will compensate Trust paralegals, at reasonable market rates, to review those files and segregate the portions to be copied and produced to Grace.

*Identifying the Relevant Portions, If Any, To Be Copied and Produced.*

As we discussed, the request seeks information from the claim forms relating to the Claimants' exposure to asbestos-containing products, including work histories, product identification affidavits, screening intake forms, product invoices or construction records. We explained, however, that the Celotex Trust does not require a Claimant to produce an entire work history or to recite exposure to all asbestos-containing products throughout their career. Rather, the Celotex Trust focuses only upon the Claimants' exposure to Celotex's and/or Carey Canada's products. Nor does the Celotex Trust have a significant occupational exposure requirement for any particular disease that may require the Claimant to identify exposure beyond the Celotex and/or Carey Canada products. Accordingly, the information in the Claimant files may be of little or no value to comparing Claimant work histories to social security records or work histories identified in the Grace bankruptcy questionnaires.

Ellen T. Ahern, Esq.
June 7, 2007
Page 9

## CONCLUSION

      We believe this letter sets forth a reasonable and good faith manner in which to deal with our objections to your subpoena and to amicably resolve this matter. We have enclosed a revised proposed protective order. We will provide you with a scope of work description and a cost estimation of the retrieval, copying and re-filing our Claimant files. We will also confirm the unavailability of work and exposure histories in our data and Claimant files.

      You agreed to reconsider the scope of the subpoena in light of our discussions. We request that you provide us with a copy of the May 21 hearing transcript you said supports your contention that Judge Fitzgerald ordered you to obtain Claimant information from us. We also request that you provide an explanation of exactly how you intend to use any Claimant data or documents that the Trust might provide. You indicated in our telephone call that you would be responsible for scheduling the next conference.

      We made it clear during our discussion that any offer to compromise relating to this subpoena is a negotiation for settlement purposes in resolving this discovery dispute and is not intended to be used as an admission by the Celotex Trust that it has any responsibility to produce any documents in response to the subpoena. Presently, we object to the subpoena in its entirety and will produce no documents or electronic information in response, unless we do so on terms that are acceptable to the Celotex Trust in connection with the resolution of this dispute. To the extent that we are not able to resolve issues relating to the subpoena on terms acceptable to the Trust, then we intend to object to the entire production and force Grace to move to compel.

      Very truly yours,

      KEATING MUETHING & KLEKAMP PLL

By: _____
      Daniel J. Donnellon

DJD:meb

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Re: Docket No. ____ |

## STIPULATION AND PROTECTIVE ORDER

1. This Stipulation and Protective Order (the "Order") establishes limits on the use in this litigation of electronic datasets, clamant information, claims processing information and other materials maintained by Celotex Asbestos Trust ("the Celotex Trust"). The Celotex Trust's comprehensive electronic datasets that it maintains and other related materials are of significant proprietary value to the Celotex Trust. The Celotex Trust treats claimant submissions to the Celotex Trust as confidential and endeavors to maintain the confidentiality of such materials. Further, information submitted to the Celotex Trust may contain personal identifying information, the disclosure of which could expose claimants to the risk of "identity theft." Pursuant to Fed. R. Civ. P. 45(c)(3)(B)(i), this Court may order specified conditions regarding production of such confidential and proprietary information.

2. The parties to this order ("the Parties," or individually "the Party") are the Celotex Trust and the parties to the estimation proceeding in the above-captioned bankruptcy. A complete list of the Parties is set forth at Exhibit A.

3. This Order shall apply to any electronic datasets, claimant information, claims processing information or other information that the Celotex Trust provides, pursuant to subpoena or otherwise, in the above-captioned action, *In re W.R. Grace &*

*Co.,* 01-01139 (JKF) (the "Bankruptcy") that the Celotex Trust indicates, upon production, is being produced subject to this Order (the "Protected Information"). As a precautionary measure, but not as a precondition to protection, all materials designated as Protected Information shall be stamped as "CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER." This shall not prejudice the right of any claimant who has submitted materials to the Trust or any third party to object to the production or use of such information or to the production of any other related information. Such information is produced for the sole purpose of use in the proceeding for the estimation of Debtor's aggregate asbestos liability ("the Estimation Proceeding") in the above-captioned matter and any other use of such information for any other purpose is strictly prohibited.

4.  Any compilation or database of information to which Protected Information is added or onto which Protective Information is merged shall itself thereby become Protected Information and shall henceforth be subject to all provisions of this Stipulation and Protective Order.

5.  It is the responsibility of the party issuing a subpoena commanding production of the Protected Information in the Bankruptcy to provide prior notice served on each Party pursuant to Fed. R. Civ. P.45(b)(1).

6.  The Protected Information shall be maintained by the parties in a confidential manner, and shall be made available only to "Authorized Individuals." Authorized Individuals are: (1) counsel of record to a Party including attorneys, secretaries and legal assistants and paralegals in the regularly employment of the counsel of record who are personally involved in rendering services to a Party in the Estimation Proceeding, (2) officers, directors, agents and employees of a Party who are personally

involved in rendering services to the Party in the Estimation Proceeding, (3) outside consultants or experts who are retained professionals in the above-captioned bankruptcy case or retained by a counsel of record for the purpose of assisting in the estimation proceeding, and (4) witnesses, and their counsel, in preparation for deposition or trial, or in preparation for testimony, for the Estimation Proceeding. Before disclosure of any Protected Information is made to any person described in paragraphs 2-4 above, the person shall sign an undertaking in the form attached as exhibit B and attached hereto, and such form shall have been returned to counsel for the Celotex Trust. The Parties and the Authorized Individuals are prohibited from using the Protected Information for any purpose not directly related to the Estimation Proceeding. A list of presently known authorized individuals is attached as Exhibit C; any addition to the list of Authorized Individuals will be provided to the Celotex Trust no later than seven days prior to such person's access to Protected Information.

7.  The attorneys of record are responsible for employing reasonable measures to control duplication of, access to, and distribution of the Protected Information consistent with this Order. Protected Information shall not be copied or reproduced except for purposes of the Estimation Proceeding, and all such copies or reproductions shall be subject to the terms of this stipulation. The attorneys of record shall be responsible for ensuring that all materials that have been copied or reproduced maintain the "CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER" stamp in clearly visible form. Protected Information shall be kept in a secure location so as to exclude access by all individuals who are not Authorized Individuals.

8.     In testimony and filings with the Court, the Parties and Authorized Individuals may not divulge information regarding individually identifiable Celotex Trust claimants derived from the Protected Information except when the following conditions are met: (1) such information is directly relevant to the Estimation Proceeding, (2) there is no reasonable manner to provide such directly relevant information without identifying individual Celotex Trust claimants, and (3) at least fourteen days prior notice has been provided to any individually identifiable claimant and to the Celotex Trust. Social security numbers must be kept strictly confidential and in no circumstances may be revealed in any filing, in testimony or otherwise.

9.     Any filing containing, disclosing or revealing any Protected Information shall be filed separately in a sealed envelope or container on which shall be endorsed a general description of the envelope's contents and a statement in the following form:

> **Filed Under Seal Pursuant to Stipulation and Protective Order:** This envelope [or container] is sealed pursuant to an order of this Court, and contains protected information and is not to be opened or its contents thereof displayed or revealed except by order of the Court or pursuant to the written permission of the Celotex Trust.

Such envelope or container shall not be opened without further order of this Court or pursuant to the written consent of the Celotex Trust.

10.    No Protected Information may be used, revealed or inquired about at any deposition unless the Trust has been given at least seven (7) days prior written notice of the time and place of such deposition and the Protected Information to be used, revealed or inquired about has been specifically identified to the Trust. The initial transcript of any deposition, and any exhibits thereto, of (1) any employee or agent of the Celotex Trust or (2) in which Protected Information is used, revealed or inquired about shall

4


constitute Protected Information and shall be stamped "CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER" by the court reporter. The Party conducting such deposition shall be responsible for insuring that the terms of this paragraph are complied with and shall provide the Trust a copy of such deposition within seven (7) days after the court reporter delivers the initial transcript. Within twenty-one (21) days after the court reporter delivers the initial transcript, the deponent and the Parties may designate the transcript of the deposition and any exhibits thereto as Protected Information in whole or in part. Such designation shall be made by written notice to the court reporter and to Lead Counsel for the Parties. At the conclusion of the twenty-one (21) day period, the court reporter shall prepare the final version of the transcript (unless the Parties agree that no final version is necessary), in which pages and exhibits designated as Protected Information shall be bound separately from pages and exhibits not so designated. All pages of the transcript and exhibits designated as Protected Information shall be stamped "CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER."

11. In the event any Protected Information is sought to be used in open court, whether in the form of document or testimony, counsel for the Party seeking to use such Protected Information shall give the Trust fourteen (14) days advance notice. If the Trust objects to the use of such information, it shall be given an opportunity to raise objections to the Court and to have the objection ruled upon prior to the use of such information.

12. The termination of the Bankruptcy shall not terminate this Order, nor shall it relieve any person who received or was given access to the Protected Information pursuant to this Order from the continuing obligation of maintaining the Protected Information in a confidential manner.

13. Within sixty days of the conclusion of the Estimation Proceeding, including any rehearing or appeals, the Parties must return all copies of Protected Information to the Trust, or at the option of the Trust, destroy them.

SO ORDERED AND ADJUDGED this the _____ day of _____, 2007.

_____
UNITED STATES DISTRICT COURT JUDGE

## EXHIBIT "A" TO STIPULATION AND PROTECTIVE ORDER REGARDING CONFIDENTIALITY

### ACCESS STATEMENT

As an individual and on behalf of _____, I may be given access to certain confidential and protected information in connection with the claims estimation proceeding in the bankruptcy case of In re W.R. Grace & Co., et al., No. 01-01139 (Bankr. D. Del.).

In connection therewith and in consideration of further performing my duties to _____, I have read the attached Stipulation and Protective Order entered by the United States Bankruptcy Court for the District of Delaware in the above-referenced matter on March ___, 2007 (the "Confidentiality Order"), understand the conditions and obligations of confidentiality, and the other provisions described therein, and hereby accept and agree to be bound and abide by them under the Confidentiality Order.

I will not disclose any Protected Information, as defined in the Confidentiality Order, to any person not authorized by the Confidentiality Order to receive, disclose, or use such discovery or Protected Information.

I will not use the Protected Information except as permitted under the Confidentiality Order.

I consent to the jurisdiction of the United States Bankruptcy Court for the District of Delaware for any action to enforce the terms of the Confidentiality Order and this Access Statement. I also consent to such injunctive and legal relief as may be necessary or appropriate to enforce the terms of the Confidentiality Order and this Access Statement.

**ACCEPTED AND AGREED TO:**

6

By: _____
Name: _____
Title: _____
Company: _____
Address: _____
Relationship to Recipient: _____
*(e.g., Employee/Officer/Director, Outside Consultant, Accountant, Attorney, Advisor)*