EXHIBIT N

**EXHIBIT A**

**ANNEX B**

**THIRD AMENDED AND RESTATED**
**ASBESTOS PERSONAL INJURY CLAIMS RESOLUTION PROCEDURES**

These Asbestos Personal Injury Claims Resolution Procedures (the **"Claims Procedures"**) were prepared in connection with the Modified Joint Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code for the Celotex Corporation and Carey Canada Inc., as such plan was amended, modified or supplemented, (the **"Plan"**) filed in the reorganization cases of The Celotex Corporation (**"Celotex"**) and Carey Canada Inc. (**"Carey Canada"**) pending in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the **"Court"**) and styled In re Celotex Corporation and Carey Canada Inc., Case Nos. 90-10016-8B1 and 90-10017-8B1 (the **"Chapter 11 Cases"**). These Claims Procedures were first amended and restated as of January 15, 1998; a second amendment and restatement was effective as of June 17, 1999, and this third amendment and restatement is effective as of July 1, 2005.

The Claims Procedures provide for processing, liquidating, paying, and satisfying all valid Asbestos Personal Injury Claims as provided in and required by the Plan and the Settlement Trust Agreement (the **"Trust Agreement"**). The trustees of the Trust (the **"Trustees"**) shall implement and administer these Claims Procedures in accordance with the Trust Agreement.

**SECTION I**

**Definitions**

Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Plan.

**SECTION II**

**Purpose and Interpretation**

**2.1** **Purpose**. The Claims Procedures are adopted pursuant to the Trust Agreement. They are designed to provide prompt payment to valid Asbestos Personal Injury Claims and provide reasonable assurance that the Trust will value and be in a financial position to pay similar present Asbestos Injury Claims and Future Asbestos Injury Demands in substantially the same manner.

**2.2** **Interpretation**. Nothing in these Claims Procedures shall be deemed to create a substantive right for any claimant. The Claims Procedures are procedural and may be amended, deleted, or added to pursuant to the terms of the Trust Agreement and the terms of these Claims Procedures.

## SECTION III

### Consultation and Consent

**3.1**    **Trust Advisory Committee.**

The Trustees shall consult with the Trust Advisory Committee ("**TAC**") on the issues enumerated in Article 3.2(e) of the Trust Agreement. The Trustees shall obtain the consent of the TAC for those matters identified in Article 3.2(f) of the Trust Agreement.

**3.2**    **Legal Representative.**

The Trustees shall consult with the Legal Representative on the issues enumerated in Article 3.2(e) of the Trust Agreement. The Trustees shall obtain the consent of the Legal Representative for those matters identified in Article 3.2(f) of the Trust Agreement.

## SECTION IV

### Payment Percentage

**4.1**    **Periodic Estimates.**

There is inherent uncertainty regarding Celotex's and Carey Canada's total liabilities to holders of Asbestos Personal Injury Claims as well as the total value of the Trust's assets available to pay valid Asbestos Personal Injury Claims. Consequently, there is inherent uncertainty whether or not amounts paid to claimants can be paid to all similar present and future valid Asbestos Personal Injury Claims. To ensure substantially equivalent treatment, the Trustees must determine the percentage of full liquidated value that all valid present and future Asbestos Personal Injury Claims would be likely to receive ("**Payment Percentage**") prior to making distributions to claimants, other than those who have elected the discounted cash payment described in Section 5.3. Payments other than those under Option 1 shall not exceed the Trust's most recent determination of the Payment Percentage times the liquidated value of the claim and shall be subject to Section 5.4(k). The Trustees must base this determination, on the one hand, on estimates of the number, types, and values of present and expected future Asbestos Personal Injury Claims and, on the other hand, on the value of the Trust's assets, the liquidity of those assets, the Trust's expected future expenses, and other material matters that are reasonable and likely to affect the sufficiency of funds to pay a comparable percentage of full value to all holders of Asbestos Personal Injury Claims. Periodically, after the second anniversary of the Effective Date, but no less frequently than once every two years, the Trustees shall consider their determination of the Payment Percentage to assure that it is based on credible, current information and forecasts, and may, after such consideration, change the Payment Percentage. When making these determinations, the Trustees shall recognize that both present and future claimants bear a risk that the Payment Percentage will be incorrect, either too low or too high respectively. In setting the payment percentage, the Trustees shall not prefer

- 2 -

either present or future claimants by giving greater protection from such risks to either. Rather, the Trustees shall determine the recalculation of the payment percentage based on the best and most likely available estimates of total liabilities and assets.

### 4.2    Initial Payment Percentage.

During the first two years of operation, the Trustees would have difficulty in calculating the Payment Percentage because of uncertainties in the total number, quality and value of property damage and personal injury claims and the actual value of the Trust's assets. During the first two years following the Effective Date, while these matters are particularly uncertain, the Trust can and shall rely upon the calculation of the Initial Payment Percentage, as described in the Plan and use the Initial Payment Percentage in paying Prepetition Liquidated Claims or claims under the Individualized Review Process. If the Trustees conclude that use of the Initial Payment Percentage will adversely affect the interests of future claimants or present claimants who have not yet been paid, the Trustees shall either suspend payments under Individualized Review until they are able to determine an appropriate Payment Percentage, or exercise their powers under Section 7.4(c).

### SECTION V

### Claims Types; Processing and Payment

### 5.1    Alternative Methods for Establishing Payments.

The Claims Procedures provide alternative methods for establishing the amount that a claimant will receive. Any Claimant can elect discounted cash payment or individualized review of his or her claim. A claimant may defer processing of the claim in accordance with Section 7.13 and need not elect discounted cash payment or individualized review until the claimant wishes the deferral to end and processing to commence..

(a)    Prepetition Liquidated Claims.  Liquidated Values were established by prior final and nonappealable judgment or by settlement approved by the Bankruptcy Court. Claimants receive the Payment Percentage of the Liquidated Values or of such other claim value as is determined by the Trust pursuant to Section 5.2(a).

(b)    Discounted Cash Payments.  The discounted cash payment method allows claimants to elect a single, cash payment that will be paid rapidly and that requires minimal documentation for pursuing claims. Claimants electing discounted payments will be considered and paid before claimants filing at the same time who elect individualized review. Claimants who filed claims in the bankruptcy prior to the bar date and who elect discounted cash payment shall be paid within 15 months of the Effective Date if at all practicable. Because discounted cash payments are certain, paid sooner, and require a less burdensome application process, the amount of discounted cash payments may be less than the expected amount of payments for similar Claims through individualized review.

FIRST AMENDED AND RESTATED ASBESTOS SETTLEMENT TRUST AGREEMENT
ANNEX B – THIRD AMENDED AND RESTATED PERSONAL INJURY
CLAIMS RESOLUTION PROCEDURES

The discounted cash payment election is designed primarily for claimants who easily can be determined by the Trust to have valid Asbestos Personal Injury Claims and who desire to have a fixed and certain payment made expeditiously rather than wait for individualized review, which might result in no payment or a payment that could be either less or greater than the discounted cash payment.

To preserve the Trust's assets for payment to claimants with valid Asbestos Personal Injury Claims, discounted cash payments will be made only when there is reasonable probability of the validity of a claim. The limited review that will be given to claims electing discounted payment may be insufficient to determine the validity of some claims, such as those whose novel, unusual or unexpected combinations of asbestos exposures and claimed medical findings can be more appropriately considered through individualized review. In such circumstances, the Trustees can refuse to allow such claims election of discounted cash payments. To assure that only valid claims receive discounted cash payment, a claimant must meet eligibility requirements for exposure to Celotex or Carey Canada asbestos and for credible medical evidence of an asbestos-related disease.

(c)    Individualized Process. The individualized review provides a claimant with an individual consideration and evaluation of his or her claim. Individualized review is intended to result in payments equal to the full liquidated value for each claim times the Payment Percentage, payments which could be either greater or lesser than the discounted cash payment that a claimant might have received. Because the detailed examination and individualized valuation of Asbestos Personal Injury Claims require greater time and effort, claims electing individualized review will be processed and paid after claims filed at the same time electing discounted cash payments.

Individualized review is designed for claimants with serious or fatal asbestos-related injuries whose Asbestos Personal Injury Claims require the added effort and expense of individualized evaluation.

The Claims Procedures establish a Schedule of Asbestos-Related Disease Categories, Values and Criteria that Asbestos Personal Injury Claims must meet to receive payment through the individualized review election for seven Scheduled Diseases: Bilateral Pleural Disease; Non-disabling Bilateral Interstitial Lung Disease; Disabling Bilateral Interstitial Lung Disease; Other Cancers; Lung Cancer One; Lung Cancer Two; and Malignant Mesothelioma. Trustees may add to or change the Asbestos-Related Disease Categories or Values or Criteria with consent of the TAC and the Legal Representative, develop subcategories or determine that a novel or exceptional Asbestos Personal Injury Claim is compensable even though it does not meet the Criteria for any of the Scheduled Diseases.

The Trust will offer to liquidate the value of each individualized review claim based on the liquidated values of other similar claims for the same Scheduled Disease. Unless an Asbestos Personal Injury Claim has been determined to be an Extraordinary Claim, the liquidated value cannot exceed the Maximum Value for the Disease Category that applies to the

- 4 -

claim or the Disease Category that is most similar to claims that cannot be placed in any of the Scheduled Disease Categories. All unresolved disputes over categorization or valuation of claims will be subject to arbitration under procedures described below and claimants whose valuation disputes are not resolved by nonbinding arbitration may enter the tort system.

### 5.2     Prepetition Liquidated Claims.

(a)     Processing and Payment. As soon after the Effective Date as possible, the Trustees shall pay Asbestos Personal Injury Claims that were liquidated by settlement agreement entered into prior to October 12, 1990 or by verdict or judgment entered prior to October 12, 1990 that had become final and nonappealable, or by settlement approved by the Bankruptcy Court ("**Prepetition Liquidated Claims**"), unless a claimant forgoes such liquidated value and elects discounted payment, deferral, or individualized review under the terms of these procedures. These claims require no processing other than verification of the holder's identity, payment, and release of the Trust.

The Trust shall review all settlements, judgments or verdicts entered prior to October 12, 1990 that were not final as of that date and may, at its discretion, after notice to the Legal Representative, appeal, compromise, accept or reject the judgment, verdict or settlement as the liquidated value of the claim.

(b)     Payment Percentage. The Trust shall pay the Payment Percentage in Article 4.1 of the Plan times the liquidated value to Prepetition Liquidated Claims that are not secured. A claimant with a Prepetition Liquidated Claim may elect to receive installment payments under the terms of Section 5.4(k) dealing with payments during the first two years of the Trust. Nothing in these Claims procedures shall reduce obligations of entities other than the Trust to pay the full amount of liquidated value to claims that are secured by letters of credit, appeal bonds, or other security or securities.

### 5.3     Discounted Cash Payment Election.

(a)     Election. Claimants can elect a discounted cash payment. Those holders of valid Asbestos Personal Injury Claims who so elect shall make a full and final settlement with the Trust (except as provided in Section 5.3(d) herein) in exchange for a single cash payment in the amounts shown below for each disease category:

| | |
|---|---|
| Mesothelioma | $8,500 |
| Lung Cancer | $2,500 |
| Other Cancer | $1,500 |
| Non-Malignancy: Asbestosis | $1,000 |
| Non-Malignancy: Bilateral Pleural Disease | $500 |

- 5 -

(b)    Eligibility.  To be eligible for a discounted cash payment, a claimant must provide:

(1)    Evidence that the claim establishes a valid cause of action;

(2)    convincing evidence of exposure to a Celotex or Carey Canada asbestos product;

(3)    convincing evidence of an asbestos-related disease including the following:

Diagnosis of the claimed disease by an internal medicine or pulmonary medicine specialist or other appropriate specialist based on either a physical examination of the claimant by that doctor, a physical examination by another doctor whose physical examination and findings are reliable or a pathologist examination for a deceased claimant; and

For a non-malignancy claim, chest x-ray evidence of asbestos-related disease, or

For a malignancy claim, other than malignant mesothelioma, either evidence that the claimant also had a non-malignant disease that qualifies under categories I, II or III of Section 5.4(b) or a medical report that exposure to asbestos was a substantial cause of the cancer.

(c)    Processing and Payment.  If at all practicable, within fifteen (15) months after the Effective Date, the Trustees shall process and pay the holders of Asbestos Personal Injury Claims who elect as part of the vote on the Celotex Reorganization Plan to receive a discounted cash payment and who provide prior to the Effective Date information required to establish eligibility for such payment.  For claimants who elect discounted cash payment or provide required information subsequently, the Trustees shall attempt to process and pay claimants within fifteen (15) months of receipt of all information required to establish eligibility for such payment.  The Trustees shall enforce the eligibility requirements of this section and requirements for credible medical evidence of Section 7.2 herein and shall determine other appropriate procedures for ensuring that only holders of valid Asbestos Personal Injury Claims are paid under the discounted cash payment election.  These procedures for ensuring payment only to holders of valid Asbestos Personal Injury Claims under the discounted cash payment election may be based upon the guidelines set forth in Sections 5.3, 7.1 and 7.2 herein.  If a claimant who has elected discounted cash payment is subject to an audit under Section 7.3 or

- 6 -

other procedures for ensuring that discounted cash payments are made only to holders of valid Asbestos Personal Injury Claims, the Trustees may be unable to pay within fifteen (15) months of receipt of information. The Trustees shall pay such claims as quickly as practicable after determining with reasonable certainty that a claim is valid.

(d)     Subsequent Malignancy.  The holder of a valid Asbestos Personal Injury Claim based upon a non-malignant asbestos injury or condition who elects to receive a discounted cash payment as provided herein may file a new Asbestos Personal Injury Claim for an asbestos-related malignancy that is subsequently diagnosed and any additional payments to which such claimant may be entitled shall not be reduced by the amount of the discounted cash payment.

(e)     No Review.  The Trustees' decision that the holder of an Asbestos Personal Injury Claim should not receive a discounted cash payment is not reviewable. However, after consultation with the TAC, the Trustees may establish procedures to review denials of discounted payment and, if so, shall inform persons who are denied discounted payment of such procedures. The Trustees shall charge a review fee of $100 or such other amount as determined by the Trustees. A person who receives discounted payment after a review shall receive reimbursement of the review fee.

(f)     Future Discounted Payment Elections.  The Trustees may continue to offer claimants discounted cash payments for valid Asbestos Personal Injury Claims that are filed after the Effective Date. With consent of the TAC and the consent of the Legal Representative, the Trustees may terminate discounted cash payments or change the amounts, requirements and procedures for such future discounted cash payments so long as they ensure that only holders of valid Asbestos Personal Injury Claims are paid under the discounted cash payment election.

## 5.4     Individually Reviewed Claims; Claims Categories.

(a)     Election.  A claimant whose claim states a valid cause of action and who elects individualized review shall have his or her Asbestos Personal Injury Claim reviewed, based upon an examination of exposure to asbestos and Celotex or Carey Canada asbestos or asbestos containing products, loss, damages, injury causation, and other factors determinative of claim value according to applicable tort law, subject to the limitations of Section 7.7. The Trust will be liable for and claims values will be based on only the several liability of Celotex or Carey Canada, whichever is greater. Liability will not be based on theories of conspiracy or concerted action.

(b)     Schedule of Asbestos-Related Disease Categories and Values.  The Trust shall use the Schedule of Asbestos-Related Diseases Categories and Values listed in this section to resolve Asbestos Personal Injury Claims that elect individualized review as expeditiously and economically as possible. Using the Criteria stated for each Disease Category, the Trust will

- 7 -

place a claim in the most serious applicable Disease Category (i.e., the category with the highest values).

The Scheduled Values are based on current tort litigation values and the amounts paid historically by Celotex and Carey Canada to resolve Asbestos Personal Injury Claims and represent equitable settlement values for most claims that meet the criteria of a corresponding Scheduled Disease. Because the Scheduled Values reflect current values of claims within the tort system, in order to assure the substantially equivalent treatment of all claimants the Trustees shall periodically consider and, if necessary, change the Scheduled Values to reflect any changes in the nature of claims or the way that the tort system values claims.

The Liquidated Value for most claims should be near the Scheduled Value for the Disease Category and, in general, if a claim qualifies for categorization, the claimant will be offered the Scheduled Value for the Disease Category as the Liquidated Value of the claim. However, the Trust shall value and offer to settle a claim for a liquidated amount less than the Scheduled Value if the claim is less serious or the credibility of evidence of injuries or asbestos exposure is less than for most claims or the causal relationship between injuries and asbestos exposure is in greater dispute than most claims. The Trust shall value and offer to settle a claim for a liquidated amount in excess of the Scheduled Value if a higher value is clearly justified.

A claimant can reject the Scheduled Value and negotiate the liquidated value of the claim. The Liquidated Value for a claim cannot exceed the Maximum Value for the applicable Disease Category, unless the claim is determined to be an extraordinary claim. Maximum Values for each disease category will be paid only to those claimants with highly credible evidence of each of the following: the most serious injuries and damages within the Disease Category, definite and severe exposure to Celotex and/or Carey Canada asbestos-containing products, and a clear causal connection of injuries and damages to asbestos exposure.

| Category | Scheduled Disease | Scheduled Value | Maximum Value |
|----------|-------------------|-----------------|---------------|
| I | Bilateral Pleural Disease | $6000 | $15,000 |
| II | Nondisabling Bilateral Interstitial Lung Disease | $12,500 | $20,000 |
| III | Disabling Bilateral Interstitial Lung Disease | $25,000 | $150,000 |
| IV | Other Cancer | $20,000 | $100,000 |
| V | Lung Cancer (One) | $30,000 | $200,000 |
| VI | Lung Cancer (Two) | $45,000 | $200,000 |
| VII | Malignant Mesothelioma | $100,000 | $250,000 |

- 8 -

(c)    Categorization Criteria.  To receive an offer for the Scheduled Value for one of the seven Scheduled Disease categories, a claim must meet the Eligibility Requirements of Section 5.3(b) as well as the following criteria:

### Category I:  Bilateral Pleural Disease
(Scheduled Value: $6,000)

1.    The claimant must document bilateral pleural disease (plaques or thickening) diagnosed on the basis of x-ray, CT scan, HRCT scan or pathological evidence; and

2.    The proof of claim must establish a 10-year latency period between the date of first exposure to asbestos and the date of diagnosis of bilateral pleural disease.

### Category II:  Nondisabling Bilateral Interstitial Lung Disease
(Scheduled Value: $12,500)

1.    The claimant must document bilateral interstitial lung disease diagnosed on the basis of x-ray, CT scan, HRCT scan or pathological evidence, and submit either:

   a.    A medical report stating that a causal relationship exists between asbestos exposure and the bilateral interstitial lung disease; or

   b.    Documentation of the presence of either unilateral or bilateral pleural disease accompanying the bilateral interstitial lung disease; and

2.    The proof of claim must establish a 10-year latency period between the date of first exposure to asbestos and the date of diagnosis of bilateral interstitial disease.

### Category III:  Disabling Bilateral Interstitial Lung Disease
(Scheduled Value: $25,000)

1.    The claimant must document bilateral interstitial lung disease diagnosed on the basis of x-ray, CT scan, HRCT scan or pathological evidence; and

2.    The claimant must document disability or impairment evidenced by pulmonary function tests (PFTs), total lung capacity (TLC),

- 9 -

forced vital capacity (FVC), or diffusing capacity (DLCO) of less than 80%; and

3.　The claimant must submit a medical report stating that a causal relationship exists between asbestos exposure and the bilateral interstitial lung disease; and

4.　The proof of claim must establish a 10-year latency period between the date of first exposure to asbestos and the date of diagnosis of bilateral interstitial disease.

Category IV: Other Cancers
(Scheduled Value: $20,000)

1.　The claimant must demonstrate by medical report the existence of primary asbestos-related cancer of one of the following sites:

　　a.　Colo-rectal;
　　b.　Laryngeal;
　　c.　Esophageal; or
　　d.　Pharyngeal; and

2.　The claimant must demonstrate by medical report the existence of one of the following:

　　a.　Bilateral interstitial lung disease;
　　b.　Bilateral pleural disease (thickening or plaques); or
　　c.　Pathological evidence of asbestosis; and

3.　The proof of claim must establish occupational exposure to asbestos during an aggregate of three (3) years or twelve (12) quarters of employment[1] and 10-year latency period between the date of first exposure to asbestos and the date of diagnosis of the cancer.

Category V: Lung Cancers (One)
(Scheduled Value: $30,000)

1.　The claimant must demonstrate by medical report the existence of primary asbestos-related cancer of the lung; and

---

[1]　Daily exposure during such period of time is not required.

- 10 -

2. The claimant must demonstrate at least 15 years of occupational exposure to asbestos-containing materials in employment regularly requiring work in the immediate area of visible asbestos dust; and

3. The proof of claim must establish a 10-year latency period between the date of first exposure to asbestos and the date of diagnosis of the cancer.

Category VI: Lung Cancers (Two)
(Scheduled Value: $45,000)

1. The claimant must demonstrate by medical report the existence of primary asbestos-related cancer of the lung; and

2. The proof of claim must establish a 10-year latency period between the date of first exposure to asbestos and the date of diagnosis of the cancer; and

3. The claimant must:

   a. Be a nonsmoker (has not smoked cigarettes for at least 15 years prior to diagnosis) and demonstrate by documentation such as Social Security records or a medical report with claimant's work history, occupational exposure to asbestos during an aggregate of three years or 12 quarters of employment[2]; or

   b. Demonstrate by medical report the existence of one of the following:

      i. Bilateral interstitial lung disease;

      ii. Bilateral pleural disease (thickening or plaques); or

      iii. Pathological evidence of asbestosis.

Category VII: Malignant Mesothelioma
(Scheduled Value: $100,000)

1. The claimant must demonstrate by medical report referencing pathological findings of the existence of malignant mesothelioma; and

---

[2]    Daily exposure during such period of time is not required.

- 11 -

2.  The proof of claim must establish a 10-year latency period between the date of first exposure to asbestos and the date of diagnosis of the cancer.

(d)  <u>Failure to Meet Criteria for a Scheduled Disease</u>. There are no criteria that could fairly include or compensate all meritorious claims involving asbestos-related diseases. A claimant's right to assert a valid claim for the liquidated value of an asbestos-related disease is not prejudiced by failure to meet the Categorization Criteria for a Scheduled Disease and, despite such failure, the Trust should provide compensation if the Trust determines that the claimant has suffered injury or damages from exposure to Celotex or Carey Canada asbestos or asbestos containing products. In such cases, the Trust should be guided by the Scheduled Value and the liquidated damages for other claims in the Scheduled Disease Category most similar to the evidence presented by the claim, but liquidated damages shall not exceed the Maximum Value for the most similar Scheduled Disease Category.

The Trust may determine that although a particular requirement in the Criteria for a Scheduled Disease Category has not been met, in an exceptional claim other factors and evidence satisfy the objective of that requirement and, therefore, the claim should be considered to be within the Scheduled Disease Category.

Because the Trust must assure the substantially equivalent treatment of similar claims, if the Trust finds that more than an occasional exceptional claim either (a) deserves compensation despite failure to meet the Criteria for any Scheduled Disease or (b) merits waiver of a particular requirement in the Criteria for a Scheduled Disease, then the Trust should add additional Scheduled Disease Categories or modify the Criteria for existing Scheduled Diseases.

(e)  Valuation of Non-Standard Claims.

(1)  The Trust may be presented with claims involving new or different causation and valuation factors not reflected in the Schedule of Asbestos-Related Diseases and Values developed by the Trustees. Such claim(s) will not be eligible for valuation under the Schedule of Asbestos-Related Disease Categories and Values. Instead, such claims will be individually evaluated in accordance with the evaluation factors when they come up for processing. In evaluating such claims, the Trust may gather or request the claimant(s) to provide supplementary information, including the nature of the disease and the tort law, and liquidated values currently experienced in settlements and verdicts for similar claims in the jurisdiction in which the claim arose. The Trust, after consultation with the TAC, may also use such information to develop separate Schedule Values and new Disease Categories for such Non-Standard Claims.

- 12 -

(2)    Claims filed on behalf of claimants whose asbestos exposure took place outside the United States may be determined by the Trust either to be Non-Standard Claims or claims that are appropriately within the Schedule of Asbestos-Related Diseases and Values.

(f)    <u>Processing and Liquidation</u>. The Trust shall process individually reviewed claims and make offers to establish liquidated values, pursuant to the following schedule, if at all practicable:

(1)    substantially all the claims whose holders had filed claims or lawsuits against Celotex or Carey Canada prior to October 10, 1990, and who provide all required claims information within 12 months after the Effective Date shall be processed, liquidated and paid their first installment no later than 36 months after the Effective Date;

(2)    substantially all the claims whose holders had not filed claims or lawsuits against Celotex or Carey Canada prior to October 10, 1990 but who filed claims in the bankruptcy prior to the bar date shall be processed, liquidated and paid in whole or in part no later than 48 months after the Effective Date;

(3)    claims not described in subsections (1) and (2) above, shall be processed, liquidated and paid in whole or in part as soon as possible but not before the claims described in subsections (1) and (2) above.

(g)    <u>Ordering of Claims</u>. Within groups (1) and (2) specified in Section 5.4(f) and within claims filed in the same year for claims in group (3) specified in Section 5.4(f), claims will be ordered for processing by seriousness of Disease Categories (or the most similar Disease Category) on a FIFO basis within each category or year. As a general practice, the Trust will review its claims files on a regular basis and notify all claimants whose claims are likely to come up for processing in the near future. A claimant's position in the FIFO queue will be determined by the date of receipt by the Trust of an acceptable proof of claim form.

(h)    <u>Categorizing of Claims by Disease</u>. As a proof of claim is reached in the specified schedule, the Trust shall evaluate it to determine whether the claim meets the Categorization Criteria for a Scheduled Disease and advise the claimant of its determination and offer the Scheduled Value for the disease. If the Trust determines that a claim does not meet the Categorization Criteria for a Scheduled Disease and is not compensable, or determines the claim is a Non-Standard Claim as defined in Section 5.4(e), or if a claimant disagrees with the Scheduled Disease determination made by the Trust, the claimant may dispute the determination. Upon receipt of written advice from the claimant of such a dispute, the Trust shall reevaluate the claim in light of the claimant's written statement of the basis for the dispute, any supporting

- 13 -

documentation and all then available documentation and advise the claimant of its determination. If on reevaluation the Trust determines that the claim qualifies for placement in a Scheduled Disease Category or in a different Scheduled Disease Category than the Trust originally determined, the Trust shall place the claim in the Scheduled Disease Category so determined. If the claimant still disputes the Trust's categorization of the claim or denial of categorization, the claimant may elect arbitration of the categorization.

(i)    Evaluation Factors For Negotiated Claims.    Individual evaluations of claims can vary depending on factors that affect the severity of damages and values within the tort system including: the degree to which the features of a claim differ from the medical and exposure Criteria for a Disease Category, whether the claimant is living or dead (as of the earlier of the filing of the claim or a lawsuit involving the claim), disability, employment status, disruption of household, family or recreational activities, dependencies, special damages, pain and suffering, evidence that the claimant's damages were (or were not) caused by asbestos exposure (for example, alternative causes, strength of documentation of injuries), current settlements and verdicts in the tort system, and industry of exposure. In evaluating claims the Trustees will be guided by amounts paid by the Trust to resolve past, similar claims.

(j)    Extraordinary Claims.    If Celotex's and/or Carey Canada's asbestos containing products constituted an exceptionally large portion of a claimant's asbestos exposure or a claimant's damages are exceptionally large and well beyond the normal range, then claimant's Asbestos Personal Injury Claim may be classified as an Extraordinary Asbestos Personal Injury Claim and such Asbestos Personal Injury Claim may be liquidated in an amount that exceeds the Maximum Value for any given injury category or subcategory, but such a classification shall not increase the Payment Percentage. The Trustees shall determine the basis for classifying claims as extraordinary consistently with this Section 5.4(j).

(k)    Payment.    The Trustees shall have complete discretion to determine the timing and the appropriate method for making payments, subject to the requirements of Sections 5.4(f) and 5.4(g). Such methods may include, in the discretion of the Trustees, a method for the payment on an installment basis, in which case each installment payment shall be subject to the Payment Percentage in effect at the time such installment payment is made, except that the last installment will be in an amount that would produce a total payment to the claimant equal to the liquidated value of the Claim times the Payment Percentage in effect at the time of such last payment. Because of the initial uncertainties about assets and liabilities, during the first two years after the Effective Date, the Trustees shall pay claimants electing individualized review only on an installment basis with an initial payment determined by the Initial Payment Percentage in Article 1 of the Plan times fifty (50%) percent of the liquidated value of the claim. The Trust will make a second payment to such claimants after the later of the second anniversary of the Effective Date or after the Trustees have considered and, if necessary redetermined, the Initial Payment Percentage, so that the total amount received by the claimant is equal to the liquidated value times the then current Payment Percentage.

(l)    <u>Disputes Over Individualized Review</u>. Claimants who reject the Trustees' offer after negotiated, individualized review and who wish to dispute their eligibility for payment, their categorization, or the amount of the Trustee's offer under individualized review, must initiate one of the alternative dispute resolution procedures established by the Trustees pursuant to Section 7.8. After such alternative dispute resolution procedures have been exhausted, claimants who still reject the Trust's offer must initiate arbitration pursuant to procedures set forth in Section 7.10. Only after claimants have rejected any non-binding arbitration award pursuant to procedures set forth in Section 7.10 may they file suit against the Trust.

(m)    <u>Releases</u>. Holders of Asbestos Personal Injury Claims who receive payment for a nonmalignancy shall execute and deliver to the Trustees a limited release in a form satisfactory to the Trustees and may thereafter file a new Asbestos Personal Injury Claim for an asbestos related malignancy that is subsequently diagnosed. Any additional payments to which such claimant may be entitled would not be reduced by the amount of the prior payment for a nonmalignant disease. Holders of Asbestos Personal Injury Claims who receive payment for malignancies shall execute and deliver to the Trustees in a form satisfactory to the Trustees releases and other documents pursuant to Section 7.11.

(n)    <u>Modifications to Assure Substantial Equivalency</u>. In order to assure the substantially equivalent treatment of Asbestos Personal Injury Claims the Trust may, with the consent of the TAC and the Legal Representative, change, add or delete Asbestos-Related Disease Categories, change Criteria, Scheduled Value or Maximum value for any Disease Category. From time to time, the Trust shall adjust Scheduled and Maximum Values for inflation, using an appropriate index.

(o)    <u>Exigent Health Claims; Extreme Hardship Claims</u>. The Trustees shall individually evaluate and pay Exigent Health Claims and Extreme Hardship Claims, as defined in this Section 5.4(o). These claims may be considered separately no matter what the order of processing otherwise would have been under any other section of these procedures.

A claim qualifies as an Exigent Health Claim if the claim qualifies as mesothelioma and the claimant was alive when the claim was filed or the claimant provides: (i) documentation that a physician has diagnosed the claimant as having an asbestos-related illness and (ii) a declaration or affidavit made under penalty of perjury by a physician who has examined or treated the claimant within one hundred twenty (120) days of the date of the declaration or affidavit in which the physician states there is substantial medical certainty that the asbestos-related disease is terminal. A claim will continue to be an Exigent Health Claim even if a claimant dies after having applied for Exigent treatment.

A claim qualifies for payment as an Extreme Hardship Claim if the Trustees, in their complete discretion, determine the claimant needs exceptional financial assistance on an immediate basis based on the claimant's expenses and all sources of available income.

5.5    **Asbestos Indemnification Claims.**  Indirect Asbestos Claims asserted against the Trust based upon theories of indemnification (as opposed to contribution), including the Indirect Asbestos Claims of Rapid-American, shall be disallowed by the Trust unless and until the holder of such Indirect Claim (the "**Indirect Claimant**") establishes to the satisfaction of the Trustees that (a) the Indirect Claimant(s) has paid in full the liability and obligations of the Trust to the direct Claimant to whom the Trust would otherwise have had a liability or obligation under these Asbestos Bodily Injury Claims Resolution Procedures, and (b) the Direct Claimant and Indirect Claimant(s) have forever released the Trust from all liability to the direct Claimant.  In no event shall any Indirect Claimant have any rights against the Trust superior to the rights of the related direct Claimant, including any rights with respect to the timing, amount or manner of payment. The Trust shall not pay any Indirect Claimant unless and until the Indirect Claimant's aggregate liability for the Claimant's claim has been fixed, liquidated and paid by the Indirect Claimant by settlement (with an appropriate release in favor of the Trust) or a Final Order.  In any case where the Indirect Claimant has satisfied the claim of a Claimant against the Trust by way of a settlement, the Indirect Claimant shall obtain for the benefit of the Trust a release in form and substance satisfactory to the Trustees.  The Trustees may develop and approve a separate Proof of Claim Form for Indirect Claims.

## SECTION VI

## Claims Material

As soon as reasonably practicable, but not later than six months following the Effective Date, the Trust shall mail claims materials ("**Claims Materials**") to each person with an Asbestos Personal Injury Claim who has filed a proof of claim in the Court or has pending a lawsuit against Celotex or Carey Canada or otherwise has been identified to the Trustees as holding an Asbestos Personal Injury Claim that is neither a Prepetition Liquidated Claim defined in Section 5.2 nor an Asbestos Personal Injury Claim for which a discounted cash payment election has been made as set forth in Section 5.3 nor deferral as set forth in Section 5.3(d).  For any person holding an Asbestos Personal Injury Claim who is first identified to Celotex or Carey Canada or the Trustees any time subsequent to the Effective Date, the Trust shall mail the Claims Materials no later than six months following such identification.  The Trust may send Claims Materials to a claimant care of an attorney representing the claimant and the requirements of this paragraph will be satisfied if the Trust mails to an attorney a list of all claims covered by this paragraph plus one copy of claims materials.

The Claims Materials will include descriptions of these Claims Procedures, instructions, and a claim form.  If feasible, the forms used by the Trust to obtain claims information shall be the same or substantially similar to those used by other asbestos claims resolution facilities.  The Trust may obtain such information from electronic data bases maintained by any other asbestos claims resolution organization, provided that the Trust informs the claimant that it plans to obtain information as available from such other organizations unless the claimant objects in writing or provides such information directly to the Trust.  If it obtains information about a claim from

- 16 -

another asbestos claims resolution organization, the Trust may use such information to determine independently the value of the claim.

Nothing in this Section shall preclude the Trust from contracting with another asbestos claims resolution organization to provide services to the Trust so long as decisions about the validity and value of claims are based on the provisions of these Claims Procedures, the Schedule of Asbestos-Related Disease Categories and Values and the eligibility requirements for claims electing Discounted Cash Payment.

In order to be eligible for payment under these Claims Procedures, a claimant must return all claims' information requested by the Trust within the six month period following his or her receipt of the Claims Materials. An Asbestos Personal Injury Claim shall be disallowed automatically if a claimant required to provide claims information fails to provide such information within this period, unless the claimant demonstrates to the satisfaction of the Trustees that such a failure should be excused. Claims disallowed under this paragraph can be refiled, but the FIFO date and date of filing for purposes of Section 5.4(g) of these procedures shall be determined by the date of such refiling. Claims will not be disallowed under this paragraph if a claimant has provided substantially all requested information and promptly provides additional information requested by the Trustees.

All materials, records and information submitted by claimants, including that provided with regard to medical audits under Section 7.3, are confidential, submitted solely for settlement purposes.

## SECTION VII

### General Guidelines for Liquidating and Paying Individually Reviewed Claims

**7.1    Showing Required**. In order to establish a valid Asbestos Personal Injury Claim, a claimant must make a demonstration of exposure to Celotex or Carey Canada asbestos-containing products. The Trust may require the submission of sufficient evidence of exposure to a Celotex or Carey Canada asbestos-containing product and may audit claims and evidence of such exposures.

**7.2    Credibility of Medical Evidence**. Before making any payment to a claimant, the Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards. The Trust may require the submission of x-rays, detailed results of pulmonary function tests, laboratory tests, tissue samples, results of medical examination or reviews or other medical evidence and require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods and procedure to assure that such evidence is reliable.

- 17 -

The Trust may assume that medical evidence supporting a claim for discounted payment that complies with Section 5.3(b) satisfies these requirements, except that the Trust shall use its medical audit program as described in Section 7.3 to verify that medical doctors, laboratories or facilities whose evidence supports a discounted claim reliably provide the Trust with credible medical evidence that is consistent with recognized medical standards, if:

the claim is supported by a medical report from a doctor or medical facility that provided an exceptionally large number of reports within a limited time period,

or the Trust has cause for concern about such medical evidence.

**7.3    Auditing, Monitoring and Verifying.** The Trustees shall conduct random or other audits to verify information submitted in connection with these Claims Procedures. The Trust shall develop methods for auditing information about exposures to Celotex or Carey Canada asbestos and other asbestos products and for auditing the reliability of medical evidence, including independent reading of x-rays, tissue samples or other laboratory tests, review of complete pulmonary function test data, or requiring a claimant to submit to an independent medical examination which may include a physical examination or further x-rays or pulmonary function tests. The purpose of the medical audits is to identify possible sources of information that are not sufficiently reliable. If its audits show an unacceptable level of reliability for medical evidence submitted by specific doctors, laboratories or medical facilities, the Trust shall refuse to accept medical evidence from such doctors or facilities. Furthermore, the Trustees may seek sanctions from the District Court including, but not limited to, payment of the costs associated with the audit and any future audit or audits, reordering the priority of payment of the affected claimants' Asbestos Personal Injury Claims, raising the level of scrutiny of additional information submitted from the same source or sources, or prosecuting the claimant or claimant's attorney for presenting a fraudulent Asbestos Personal Injury Claim in violation of 18 U.S.C. § 152 or applicable state law. The existence of differing medical opinions in individual cases is expected and anticipated. The fact that qualified physicians may differ on the existence or extent of a claimant's asbestos-related disease is not by itself grounds for the Trust to disallow the claim, unless the claim is based on information from a source shown to be generally unreliable by medical audits.

**7.4    Discretion To Alter Order Of Processing Or Suspend Payments.**

(a)    Provided it is consistent with Section 524(g)(2)(B)(ii)(V) of the Bankruptcy Code, in order to reduce transaction costs the Trustees may process, liquidate, and pay valid Asbestos Personal Injury Claims in groups of claims no matter what the order of processing otherwise would have been under Section 5.4(g), provided that the Trust reviews and values each individual claim within the group.

(b)    In the event that the Trustees determine it is advisable, they may suspend their normal order of processing or payment in favor of claimants who elect discounted cash payment under any future discounted cash payment election programs offered by the Trust.

- 18 -

(c)    In the event that the trust faces temporary periods of limited liquidity or the Trustees conclude that use of the current payment percentage will adversely affect the interests of future claimants or present claimants who have not yet been paid, the Trustees may temporarily limit or suspend payments altogether.

7.5    **Costs Considered**. Notwithstanding any provision of these Claims Procedures to the contrary, the Trustees shall always give appropriate consideration to the cost of investigating and uncovering invalid Asbestos Personal Injury Claims so that the payment of valid Asbestos Personal Injury Claims is not further impaired by such processes. In issues related to the validity of Asbestos Personal Injury Claims, e.g., exposure to Celotex or Carey Canada asbestos or asbestos-containing products and medical evidence of injury, the Trustees shall have the latitude to make judgments regarding the amount of transaction costs to be expended by the Trust so that valid Asbestos Personal Injury Claims are not further impaired by the costs of additional investigation. Nothing herein shall prevent the Trustees, in appropriate circumstances, from contesting the validity of any Asbestos Personal Injury Claim whatever the costs. The Trustees may require that a reasonable filing fee (which may be refundable or non-refundable at the Trustees discretion) be paid by all claimants or any subset of claimants whose claims impose exceptional costs, such as claims of exposure to Debtors' products that are not consistent with the timing and location of claims previously paid by Debtors or the Trust or claims whose medical evidence or evidence of asbestos exposure is from a source that provided invalid or unreliable evidence in claims previously audited by the Trust.

7.6    **Discretion to Vary Payments**. Consistent with the provisions hereof, the Trustees shall proceed as quickly as possible to liquidate claims, and they shall make payments to holders of valid Asbestos Personal Injury Claims promptly as funds become available and as Asbestos Personal Injury Claims are liquidated, while maintaining sufficient resources to pay future valid Asbestos Personal Injury Claims in substantially the same manner. Because decisions about payments must be based on estimates and cannot be done precisely, they may have to be revised in light of experience over time, and a claimant who receives payment early in the life of the Trust may receive a smaller or larger percentage of the value of his Asbestos Personal Injury Claim than a claimant who receives payment in the middle of or late in the life of the Trust. Therefore, there can be no guarantee of any specific level of payment to claimants. However, the Trustees shall use their best efforts to treat similar, valid Asbestos Personal Injury Claims in a substantially equivalent manner, consistent with their duties as Trustees in these circumstances, the purposes of the Trust, and given the practical limitations imposed by the inability to predict the future with precision.

7.7    **Punitive Damages; Interest**. In determining the value of any Asbestos Personal Injury Claim, punitive damages shall not be considered or allowed, notwithstanding their availability in the tort system. Pre-judgment interest, post-judgment interest, interest on deferred payments, or any other type of interest, delay damages, or similar damages associated with Asbestos Personal Injury Claims, shall not be paid or allowed. The limitations of this Section 7.7 do not apply to Prepetition Liquidated Claims to the extent secured by letters of credit, appeal

bonds or other security or securities. In addition, the limitations on punitive damages of this Section 7.7 will not apply to unsecured Prepetition Liquidated Claims, but only if such payments do not violate Section 524(g) and are not otherwise contrary to bankruptcy or other law.

**7.8    Alternative Dispute Resolution.**  The Trustees shall establish an appropriate alternative dispute resolution process so that the claimants and the Trust shall have a full range of alternative dispute resolution devices available for their use in the individualized review process, including reviews by specialized panels, mediation and arbitration.  If compensation of an alternative dispute resolution provider becomes necessary, the Trustee shall pay such compensation.  A claimant shall otherwise bear his/her own costs.

**7.9    Settlement Favored.**  Settlements shall be favored over all other forms of Asbestos Personal Injury Claim resolution.  The lowest feasible transaction costs for the Trust should be incurred in order to conserve resources and ensure funds to pay all valid Asbestos Personal Injury Claims.

**7.10    Arbitration; Jury Trials.**  Holders of Asbestos Personal Injury Claims may elect to submit their Asbestos Personal Injury Claims to binding or non-binding arbitration only after other alternative dispute resolution procedures established by the Trustees have been exhausted.

If arbitration becomes necessary, arbitrators shall (i) return awards no greater than the Maximum Value for the Asbestos-Related Disease Category in which the Asbestos Personal Injury Claim properly falls, (ii) determine that the Asbestos Personal Injury Claim falls in a higher or lower category and determine an appropriate award no greater than the Maximum Value for that category, or (iii) in cases involving an extraordinary Asbestos Personal Injury Claim, return awards in excess of category limits.  Arbitrators shall deem the asbestos containing products of Celotex and Carey Canada to be defective products capable of causing asbestos-related diseases.  Arbitrators shall not consider the Payment Percentage in determining the value of any Asbestos Personal Injury Claim.  If a claimant submits to binding arbitration or accepts an award after non-binding arbitration, the award will establish the liquidated value of the Asbestos Personal Injury Claim, which will be multiplied by the then current Payment Percentage in order to determine the amount that the claimant will receive.  The claimant will then receive payments and execute and deliver a release in the same manner as a claimant who had accepted a valuation of his Asbestos Personal Injury Claim by the Trust.

As an alternative, the Trust may offer a claimant the choice of "baseball arbitration," in which the arbitrator's award will be limited to either the Trust's latest offer or the claimant's latest demand.  If the claimant's latest demand is greater than the Maximum Value, the arbitrator can award the claimant the amount of the latest offer only if the arbitrator explicitly determines that the claim is an extraordinary claim.

Only claimants who opt for non-binding arbitration and then reject their arbitration awards retain the right to a jury trial to determine the liquidated value of their Asbestos Personal Injury Claims against the Trust.  All other claimants shall and shall be deemed to have

irrevocably waived any right to a jury trial and any and all notices with respect to the filing or liquidation of Asbestos Personal Injury Claims shall contain a provision that clearly and conspicuously explains such jury trial waiver. A holder of an Asbestos Personal Injury Claim desiring to file suit against the Trust may do so only after the rejection of a non-binding arbitration award. In all cases, applicable statutes of limitations or similar limitations periods will be tolled as of the date the claimant filed an Asbestos Personal Injury Claim with the Trust as provided in Section 7.12, and the right to a jury trial shall be preserved with the defendant being solely the Trust. To the extent the statute of limitations or similar limitations periods has been tolled, it shall commence running 30 days after entry of a non-binding arbitration award.

The Chapter 11 Cases and the Claims Procedures shall have no effect on trial venue or choice of laws. All claims and defenses (including, with respect to the Trust, all claims and defenses which could have been asserted by Celotex and Carey Canada) that exist under applicable law shall be available to both sides at trial; provided, however, that the death of claimant while his/her Asbestos Personal Injury Claim is pending against the Trust shall not reduce pain and suffering, wage loss or other elements of value of the deceased claimant's Asbestos Personal Injury Claim, notwithstanding applicable law to the contrary. The Trust may waive any defense or concede any issue of fact or law. The award of an arbitrator or the recommendation of a mediator and the positions and admissions of the parties during the compliance with alternative dispute resolution procedures shall not be admissible for any purpose at trial by any party or third party and they are expressly determined not to be admissions by either party. The Trustees may develop a statement, whose wording must be approved by the TAC, describing the nature and purposes of the Trust and the Claims Distribution Procedures which shall be read and provided as an exhibit to the trier of fact in any trial and claimants will consent to admission of such statement.

If necessary, the Trustees may obtain an order from the U.S. District Court for the Middle District of Florida, Tampa Division ("**District Court**") incorporating an offer of judgment to liquidate the amount of the claim, scheduling discovery and trials in such a fashion as not to create an undue burden on the Trust, limiting the number of claimants for any trial, or containing any other provisions, in order to ensure that the Trust fulfills its obligations in accordance with the principles set forth in the Trust Agreement.

A claimant who, in accordance with the Claims Procedures, elects to resort to the legal system and obtains a judgment for money damages shall have an Asbestos Personal Injury Claim with a liquidated value equal to the judgment amount, less the amount of any prejudgment interest or punitive damages contained therein, and no post-judgment interest shall accrue on such judgment amount. A judgment creditor with a final, nonappealable judgment in excess of the highest amount in the range of values for his/her injury category or subcategory as determined by the Trustees will be paid the appropriate Payment Percentage of Maximum Settlement Value for that injury category or subcategory; provided, however, that a holder of an extraordinary Asbestos Personal Injury Claim who obtains a final, nonappealable judgment in excess of the Trust's last offer or the arbitrator's award will be paid, when funds are reasonably

- 21 -

available, the appropriate Payment Percentage of the Trust's last offer or the arbitrator's award, whichever is greater. The appropriate Payment Percentage for the excess of the Judgment above the foregoing amounts will be paid no later than five (5) years after the date of the Trust's last pretrial offer, unless the Trustees determine that such payment will adversely affect payment to other claimants, in which event such payment shall be made in five (5) equal annual installments beginning five (5) years after the date the judgment becomes final and nonappealable. The Trustees shall not be required to post a judgment bond.

7.11    <u>Releases</u>. The Trustees shall have the discretion to determine the form and nature of the releases given to the Trust in order to maximize recovery for claimants against other tortfeasors without increasing the risk or amount of claims for indemnification or contribution from the Trust. If allowed by state law, the endorsing of a check or draft for payment by or on behalf of a claimant shall constitute such a release. In addition, and as a prerequisite, the claimant shall execute any documents necessary (i) for the Trust to perfect its claims, if any, against insurers of Celotex, Carey Canada, or any related company to receive indemnity for payments, (ii) to release any Asbestos Personal Injury Claim the claimant may have against the insurer, and (iii) for the Trust to receive and keep any and all payments made by such insurer for payment of such claim.

7.12    <u>Effect of Statutes of Limitations or Similar Limitations Periods</u>.

(a)    In order to be considered a valid personal injury claim eligible for payment by the Trust, the claimant must timely file a claim form with the Trust in accordance with the limitations periods prescribed in this section, subject to Section 7.13. The Trust shall disallow claims not meeting these requirements.

(b)    In all cases, statutes of limitations or similar limitations periods shall be deemed to have been tolled as of October 12, 1990. For those claimants holding direct claims, any such claims whose statutory period for filing would have otherwise expired on or after October 12, 1990 shall be deemed to have an extension of that filing time for the full period provided under the applicable statute of limitations in the claimant's jurisdiction, commencing February 1, 1998. No portion of the statute will be deemed to have run before February 1, 1998 for direct claimants.

(c)    For all direct claims filed with the Trust before July 1, 2005, in order to be considered timely filed, a claimant must file an Asbestos Personal Injury Claim with the Trust prior to the expiration of the limitations period of the applicable statute of limitations in claimant's jurisdiction. The Trust shall calculate the limitations period as commencing to run on the date of first diagnosis of the asbestos-related injury of the Disease Category for which the claim qualifies for payment. For example, non-malignant disease and subsequently diagnosed malignant disease will have two different diagnosis dates for determination of commencement of the limitations period.

- 22 -

(d)    For all direct claims filed with the Trust on or after July 1, 2005, in order to be considered timely filed, a claimant must file an Asbestos Personal Injury Claim with the Trust within three years after the first date of diagnosis of the asbestos-related injury of the Disease Category for which the claim qualifies for payment. As in sub-section 7.12(c) above, the Trust shall calculate the limitations period as commencing to run on the date of first diagnosis of the asbestos-related injury of the Disease Category for which the claim qualifies for payment.

(e)    For those claimants holding "Indirect Asbestos Claims" for indemnification as described in Section 5.5 and those claimants holding "Indirect Asbestos Claims" for contribution as described in Section 9.1, any such claims whose statutory period for filing would have otherwise expired on or after October 12, 1990, shall be deemed to have an extension of that filing time for the full period provided under the applicable statute of limitations in the claimant's jurisdiction, commencing July 1, 1999. No portion of the statute will be deemed to have run before July 1, 1999 for indirect claimants.

(f)    In addition, the limitations period for determining the timely filing of an Asbestos Personal Injury Claim under this section shall be deemed to have been extended for a period of sixty (60) days beyond the applicable limitations period under Section 7.12(b) as herein prescribed. The extensions provided herein shall have no application, however, to any applicable claims bar date set by an order of the Court.

**7.13    Deferral.** A claimant may elect to have the processing of a claim deferred, at the sole discretion of the claimant. To properly effect processing deferral of a claim, the claimant must notify the Trust, in writing, of the claimant's name and social security number along with a request that processing of the claim be deferred within the applicable limitations period under Section 7.12. The claimant need not use a claim form to communicate the request for processing deferral as long as the name, social security number and deferral request are clearly communicated in writing. A request for processing deferral properly made under this section shall be deemed to toll the running of the applicable limitations period for timely filing of a claim under Section 7.12 as of the date the Trust receives the processing deferral written request. This section 7.13 provides the only method the Trust shall accept for a claimant to elect processing deferral. The deferral period will terminate upon the claimant's filing of a claim form with the Trust.

**7.14    Withdrawal of Claim.** A claimant can withdraw a claim at any time upon written notice to the Trustees and file another claim subsequently, but any claim filed after such withdrawal shall be given a FIFO date based on such subsequent filing. A claim will be deemed to have been withdrawn if the claimant does not accept a discounted cash payment within six months of the Trustees' offer of such payment or if the claimant neither accepts, rejects, nor initiates dispute resolution within six months of the Trustees' offer of individualized payment. Upon written request and good cause, the Trustees may extend this period for an additional six months.

- 23 -

**7.15**   <u>Waiver of Single Satisfaction/Election of Remedies Laws</u>.   Because these procedures alter the timing in which claims can be pursued, the Trustees shall, except for good cause, waive their rights under single satisfaction or election of remedies laws or similar laws or that would foreclose claimants who have previously tried cases to judgment against other asbestos defendants from proceeding with claims against the Trust.   In valuing claims the Trustees shall nevertheless take into account payments made by other defendants in determining Celotex's and/or Carey Canada's liability for a claim, and after taking such payments into account shall not pay an amount that would result in a payment of more than the full value of such claim, injury or damage.   This waiver shall not apply to Indirect Asbestos and Non-Asbestos Claims.   Neither this waiver nor any other provision of these Personal Injury Claims Resolution Procedures creates a substantive right to recovery.   In no event shall any claimant recover more than once from the Trust for the same claim, injuries or damages except as permitted in Section 5.4(m).

## SECTION VIII

### Miscellaneous

**8.1**   <u>Amendments</u>.   The Trustees may amend, modify delete, or add to any of these Claims Procedures (including, without limitation, amendments to conform these procedures to advances in scientific or medical knowledge or other changes in circumstances) by a majority vote of the Trustees, provided they first consult with and obtain the consent of the TAC and Legal Representative, as required by Articles 3.2(e) and 3.2(f) of the Trust Agreement. Notwithstanding anything contained herein to the contrary, these Claims Procedures shall not be modified or amended in any way that would jeopardize the validity or enforceability of the Permanent Channeling Injunction.

**8.2**   <u>Severability</u>.   Should any provision contained in the Claims Procedures be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Claims Procedures.

**8.3**   <u>Governing Law</u>.   The Claims Procedures shall be governed by and construed in accordance with, the laws of the State of Florida.

## SECTION IX

### Indirect Asbestos Claims

**9.1**   <u>Asbestos Contribution Claims</u>.   Indirect Asbestos Claims, which claims are asserted under theories of contribution (as opposed to indemnification), shall be processed, liquidated, Allowed paid and satisfied in accordance with the procedures set forth in this subsection.   As described below, Indirect Asbestos Claims shall be divided into two general categories: those claims based on verdicts, judgments or settlements returned, entered or reached up to and including February 27, 1998 (the **"Contribution Date"**) and those arising thereafter.

- 24 -

Without enlarging any rights accorded them by the Trust Agreement or these Claims Procedures, Indirect Asbestos Claimants shall have such procedural rights (relating to procedural issues not expressly dealt with by the Claims Procedures) reasonably necessary to pursue or defend rights accorded them by the Claims Procedures. An overarching principle of the Trust and these Claims Procedures is that the Trust shall in no circumstance make a payment to an Indirect Asbestos Claimant in respect of the Direct Claimant's (as defined below) joint, or joint and several, claim against the Trust (or Celotex (the term "Celotex" shall mean the Debtors when referred to in this Section IX), to which the Trust is successor in interest for all liabilities to Indirect Asbestos Claimants) that (i) alone, or (ii) in combination with payment to the relevant Direct Claimant,  and other Indirect Asbestos Claimants, exceeds the amount equal to the applicable Payment Percentage times the Maximum Value for the relevant Direct Claimant's Asbestos Disease Category. A "Direct Claimant" is a holder of an Asbestos Personal Injury Claim that through theories of contribution gives rise to a Claim against the Trust by an Indirect Asbestos Claimant. The Asbestos Claim of such Direct Asbestos Claimant is a "Direct Claim." An Indirect Asbestos Claimant is a holder of an Indirect Claim. The Trust, Direct Claimants and Indirect Asbestos Claimants are bound by the terms of this Section and must abide by the following procedures in processing, evaluating, Allowing and paying Indirect Asbestos Claims and in connection with suits by Direct Claimants for asbestos-related injury or disease against Indirect Asbestos Claimants (the **"Underlying Litigation"**).

**9.2    Pre-Contribution Date Claims**. Certain Indirect Asbestos Claims are based on (i) settlement by the Indirect Asbestos Claimant of the Direct Claim (regardless of the amount paid) entered into in the absence of a verdict, judgment or fact-finding against the Indirect Claimant regarding the Direct Claimant's injury and entitlement to compensatory damages and prior to the Contribution Date, which included a release either generally or specifically extinguishing under Applicable Law (as hereafter defined) liability of the Trust (or Celotex) share (which in this Section IX shall mean the collective share of Celotex, Carey Canada and entities liable through Celotex and Carey Canada) and liability to the Direct Claimant; or (ii) a compensatory verdict or judgment based on joint, or joint and several liability, in the Underlying Litigation, which was returned prior to the Contribution Date and (a) where, pursuant to the verdict or judgment, the liability of the Trust, or Celotex in its stead, was explicitly assigned or transferred to the Indirect Claimant, regardless of the amount paid by the Indirect Claimant, and the Direct Claimant did not explicitly retain his or her claims against Celotex; (b) where the Indirect Claimant paid at least 70%, as defined below, of the amount (reduced by set-offs for settled defendants) of the compensatory damages verdict or judgment entered against it (**"Pre-Contribution Date Claims"**); or (c) where the Indirect Asbestos Claimant entered into a post-verdict or post-judgment settlement, which specifically or generally extinguished the liability of the Trust (or Celotex).

(a)    Validity of Pre-Contribution Date Claims. Because of the long absence of Celotex from the Underlying Litigation, during which most pre-Contribution Claims arose, and in conjunction with Section 7.15 of these Claims Procedures, notwithstanding any contrary provisions of the law of the forum in which the Direct Claim was tried, or any other potentially

- 25 -

applicable law ("**Applicable Law**"), or any contrary provision of the Trust Agreement or these Claims Procedures, and subject to the limitations set forth in Section 9.2(c) and 9.2(d), below, a Pre-Contribution Date Claim pursued under this Section 9.2 shall not be lost or extinguished by virtue of the Indirect Asbestos Claimant's settlement with the Direct Claimant, reached after a contested trial resulting in a verdict, judgment or fact-finding (by court or jury) regarding at a minimum the individual Direct Claimant's injury and his or her entitlement to compensatory damages.

(b)     Calculation of Value.   In the situations described in Section 9.2(i) and (ii)(a) and (c) and in situations described in Section 9.2(ii)(b), to the extent that the Indirect Asbestos Claimant paid at least 100% of the compensatory verdict or judgment against it (as calculated pursuant to Section 9.2(d), below), Pre-Contribution Date Claims shall be Allowed, liquidated, Allowed and paid by the Trust at the lesser of (i) the Maximum Value for the applicable disease category multiplied by the Payment Percentage; or (ii) the following formula:

**Amount paid  by Indirect Claimant x 15% x Payment Percentage = Value ("V")**

The 15% figure represents a negotiated estimate of the Celotex liability share in the Underlying Litigation, and the same percentage Celotex share is to be applied to all Pre-Contribution Date Claims, except for Bonded Claims. This 15% figure is not to be used for any other purpose than that set forth in this Section IX.

(c)     Factors used in evaluating certain Pre-Contribution Date Claims.   If the Indirect Asbestos Claimant has paid less than 100% but 70% or more of the amount of verdict or judgment (reduced by set-offs for settled defendants) against it (as calculated pursuant to Section 9.2(d), below), the Trustees (and, if necessary, the Arbitrator(s)), shall first evaluate the claim based on the calculation set forth in Section 9.2(b), above, reduced as follows, based on the percentage of the verdict or judgment paid by the Indirect Asbestos Claimant:

**90-99%:  V x 80%**

**80-89%:  V x 70%**

**70-79%:  V x 60%**

After this calculation, the Trustees (or Arbitrator) shall also take into account the following additional factors in arriving at the value of a Pre-Contribution Date claim:  the absolute amounts paid by the Indirect Asbestos Claimant in connection with the compensatory damage award, as well as the amounts paid by other parties (including other judgment and settled defendants) to the Direct Claimant; the proportion of the compensatory verdict or judgment (reduced by set-offs for settled defendants) paid by the Indirect Asbestos Claimant and the total number of verdict or judgment defendants; and the unsatisfied portion, if any, of the compensatory verdict or judgment (reduced by set-offs for settled defendants), and the reasons therefor.  Where the Indirect Asbestos Claimant has paid less than 100% of the verdict or judgment against it and/or

- 26 -

more than one Indirect Asbestos Claim is asserted in respect of a single Direct Claimant, payment shall be apportioned among the Indirect Asbestos Claimant(s) and/or Direct Claimant based on the factors set forth above, as well as whether the asbestos-related condition(s) of the Direct Claimant has changed significantly since the time of trial, and whether the Direct Claimant retains a "second disease" Claim against the Trust under Applicable Law.

(d)    Calculation of the percentage paid. For purposes of determining the percentage of a compensatory verdict or judgment against it which an Indirect Asbestos Claimant has paid under this Section 9.2, punitive damages, pre- or post-judgment interest, court costs or any costs or damages of the type listed at Section 7.7, shall be disregarded; rather, the percentage calculation shall take into account only the compensatory verdict or judgment (reduced by set-offs for settled defendants) against the indirect Asbestos Claimant and the amount paid by it, without reference to such interest, costs or damages as described above.

(e)    Notification. By September 30, 1999, Indirect Asbestos Claimants shall notify the Trust of those verdicts or judgments, entered as of the Contribution Date, whether or not satisfied or settled as of that date, in favor of a Direct Claimant on which they may base Pre-Contribution Date Claims. The notice required under this subsection shall be effective if the Indirect Asbestos Claimant has provided the name of the Direct Claimant, or the person whose asbestos exposure serves as the basis for the Direct Claim, and the social security number of that person; the jurisdiction in which the case was tried; and the date of verdict or judgment. Thereafter, the Indirect Asbestos Claimant shall provide whatever additional information may be called for pursuant to the Claims Procedures or by the Trustees for resolution of such Indirect Asbestos Claims. However, if an Indirect Asbestos Claimant fails to notify the Trust regarding a particular Pre-Contribution Date Claim, the Indirect Asbestos Claimant's right to be paid with respect to that Claim (but no other) shall be deemed waived, provided, however, that if, prior to September 30, 1999, a Direct Claimant accepts a payment in respect of Trust settlement, having obtained a verdict establishing the amount of the claimants' compensatory damages and one or more of Indirect Asbestos Claimant's liability therefor, or a judgment against Indirect Asbestos Claimant(s), and thereafter it is determined that a valid pre-Contribution Date Claim exists, the Direct Claimant shall be liable to the Indirect Asbestos Claim holder(s) to the extent of such valid claim. [Procedures to be developed.]

(f)    Bonded Indirect Asbestos Claims. Notwithstanding any contrary provision of the Claims Procedures, Trust Agreement or Applicable Law, Indirect Asbestos Claims arising out of Bonded Asbestos Personal Injury Claims shall be treated in the same manner under the Plan, Trust Agreement and Claims Procedures as the underlying Direct Claims, provided, however that nothing in this subsection shall require the Trust to liquidate, Allow or pay a larger aggregate amount in respect of any Bonded Claim than if such related Indirect Asbestos Claim did not exist.

**9.3    Indirect Asbestos Claims Arising Out of Post-Contribution Date Verdicts or Judgments.** Indirect Asbestos Claims based on verdicts or judgments returned in the

- 27 -

Underlying Litigation after the Contribution Date (**"Post-Contribution Date Claims"**) shall be treated as set forth below, depending on whether the Direct Claim against the Trust has been liquidated and Allowed prior to the close of plaintiff's case in the phase of the trial establishing injury and damages as to the individual Direct Claimant (the **"Election Trigger"**) in the Underlying Litigation.

**9.4    Post-Contribution Indirect Asbestos Claims Based on Unliquidated Direct Claims.**  If a Direct Claimant continues in trial in the Underlying Litigation past the Election Trigger without having liquidated and Allowed his or her Direct Claim liquidated and Allowed against the Trust, the Direct Claimant forever waives and releases the joint, or joint and several, portion of his or her Direct Claim against the Trust, and the Indirect Asbestos Claimant(s) remaining at verdict shall succeed, as described below, to all rights to that joint, or joint and several, portion of the Direct Claim against the Trust.

(a)    Mechanics of Direct Claim Waiver.  No later than February 27, 1998, the Trust, in consultation with the TAC, Legal Representative and the Representative Indirect Asbestos Claimant, shall develop a mechanism for (i) alerting the Trust regarding cases that may be going to trial in the Underlying Litigation; (ii) providing a Direct Claimant who has not yet liquidated his or her claim against the Trust with an opportunity to receive individual review of such claim prior to the Election Trigger; and (iii) if the Direct Claimant elects to retain his or her claim against the Trust, liquidating and Allowing (but not paying) that Direct Claim.  Absent a timely election, the Direct Claimant shall be presumed to have waived the joint, and joint and several portion, of his or her Asbestos Claim against the Trust.  Within a reasonable time after the Election Trigger, it shall be the responsibility of the Indirect Asbestos Claimant(s) to notify the Trust of the Direct Claimant's waiver of his or her Direct Claim against the Trust.

(b)    Payment of Verdict or Judgment.  Upon payment by satisfaction or settlement of a verdict or judgment returned after the Contribution Date, as to which the Direct Claimant has waived his or her Direct Claim against the Trust pursuant to this Section 9.4, the Indirect Asbestos Claimant(s) shall succeed in all respects to the joint, or joint and several, portion of the Direct Claim against the Trust and may pursue such Direct Claim in accordance with these Claims Procedures.  Notwithstanding any contrary provisions of Applicable Law, an Indirect Asbestos Claim pursued under this Section 9.4 shall not be limited, lost or extinguished in any fashion by virtue of an Indirect Claimant's settlement with a Direct Claimant reached after a contested trial in the Underlying Litigation resulting in at a minimum a verdict or jury or court fact-finding regarding an individual Direct Claimant's injury and entitlement to compensatory damages.

(c)    Indirect Claimant to Stand in Direct Claimants' Stead.  In pursuing an Indirect Asbestos Claim under this Section 9.4, except as set forth to the contrary in Section 9.6, (i) the Indirect Asbestos Claimant shall stand in the stead of the Direct Claimant in whose favor the verdict or judgment was returned; and (ii) the Indirect Asbestos Claim shall be processed and evaluated on the same basis as if the Direct Claimant directly presented the claim to the Trust,

- 28 -

without any enhancement, discount or limitation because the claim is asserted by an Indirect Asbestos Claimant, provided, however, that Indirect Asbestos Claimants are not required to provide information unavailable to them because such information is solely within the control of the Direct Claimant.

(d)     Retention of Several Liability Claim.     Notwithstanding any other provision of this Section 9.4, where the Trust's liability to a Direct Claimant would be several only, or where the Trust's liability as to a particular category of damages (for example, non-economic damages) would be several only, the Direct Claimant shall retain that several-only aspect of his or her claim against the Trust, but no more, even if the Direct Claimant goes to judgment or verdict against an Indirect Asbestos Claimant without having liquidated his or her Direct Claim.  Should the Trust thereafter settle with the Direct Claimant based only on the Trust's several liability, the release shall state that Indirect Asbestos Claims based on joint, or joint and several, liability are not barred by virtue of the several liability settlement and may be pursued in accordance with the provisions of the Claims Procedures.  A Direct Claimant shall only be deemed to have waived his or her Claims against the Trust for the specific Disease in the Underlying Litigation, and the Indirect Claimant's Claim shall be limited to the same Disease.

(e)     Notification of Indirect Asbestos Claims.  Indirect Asbestos Claimants shall notify the Trust within 120 days of the return of a verdict or a judgment in favor of a Direct Claimant on which they may base a Post-Contribution Date Claim.  Thereafter, the Indirect Asbestos Claimant shall provide whatever additional information may be called for pursuant to the Claims Procedures for resolution of such Indirect Claims.  If an Indirect Asbestos Claimant fails to notify the Trust of the existence of a potential claim within the 120-day period, the Indirect Asbestos Claimant's right to be paid with respect to that Indirect Asbestos Claim only is waived, provided, however, (x) such waiver shall not, however, revive any portion of the claim previously waived by the Direct Claimant; and (y) should the Trust pay the Direct Claimant in respect of the joint, or joint and several portion of the Direct Claim during the 120-day period, the Direct Claimant shall be liable to the Indirect Asbestos Claimant to the extent a valid Post-Contribution Date Claim exists.

**9.5     Post-Contribution Date Claims Based on Liquidated Direct Claims**.  If a Direct Claim against the Trust is liquidated and Allowed (whether in the ordinary course or pursuant to Section 9.4(a), above) prior to trial in the Underlying Litigation, any joint, or joint and several, judgment obtained by the Direct Claimant against the Indirect Claimant(s) shall be reduced or offset by the dollar amount of the Direct Claimant's settlement with the Trust, as further described below in Section 9.5(a).

(a)     Calculation of Set-Off Amount.  Notwithstanding any contrary provision of these Claims Procedures the Trust Agreement, or Applicable Law, no joint, or joint and several, liability share shall be assigned under Applicable Law to the Trust or Celotex in entering or molding a verdict or judgment in the Underlying Litigation.  Rather, in the manner set forth in Findley v. Falise, 929 F. Supp. 1, ___ (E.& S.D.N.Y. 1996), the amount paid or agreed to be paid

- 29 -

by the Trust to the Direct Claimant, multiplied by the current Payment Percentage, shall be deducted from that amount of the verdict or judgment for which nonsettling defendants would be responsible, without regard to the existence or potential liability of the Trust and/or Celotex.

(b)    Status of Trust (or Celotex).    The Direct Claimant and the Trust shall consent to any procedures reasonably required in order to enable a trial court in the Underlying Litigation to reduce any judgment in the Indirect Litigation in respect of the Trust's settlement of a Direct Claim according to the terms of these Claims Procedures. Solely to the extent necessary to obtain the verdict reduction described in this Section 9.5, the Trust (itself or in Celotex's stead) shall be deemed to be (x) a settled defendant within the meaning of the Applicable Law, and (y) a legally responsible joint tortfeasor under Applicable Law, without introduction of further proof. Should a trial court require that the Trust or Celotex be a party in order to effect such reduction, no objection shall be made by the Trust or the Direct Claimant to the filing at any stage of the proceedings (including, but not limited to, the verdict-molding stage) by Indirect Claimant(s) of a third-party complaint or to the joinder of the Trust, for itself or in Celotex's stead, as a party for this limited purpose only. The Trust, if made a party, shall not be required to enter an appearance, be subject to discovery as a party, or be subject to default or other trial court process or procedure.

(c)    Partial Resolution of Direct Claim.    Where a judgment in the Underlying Litigation against the Indirect Asbestos Claimant(s) resolves only a portion of the Direct Claim or potential Direct Claim previously settled with the Trust (for example, personal injury as distinct from wrongful death claims), the dollar amount of any verdict reduction or set-off shall reflect any apportionment made by the Trust and the Direct Claimant reasonably and in good faith with regard to rights of the Indirect Asbestos Claimants under these Claims Procedures, provided (x) that Indirect Asbestos Claimants shall retain any rights available to them under Applicable Law to challenge such apportionment, and (y) that whatever Applicable Law calls for apportionment of economic and non-economic damages, the value assigned to the Trust's settlement of a Direct Claim shall be allocated between economic and non-economic damages in the same proportion that the actual judgment or underlying verdict against Indirect Asbestos Claimant(s) allocates such damages, notwithstanding any apportionment set forth in the settlement documents.

9.6    **General Provisions Regarding Indirect Claims**.    Except as explicitly set forth to the contrary in these Claims Procedures, the following provisions shall apply to all Indirect Asbestos Claims, as shall the other provisions of the Claims Procedures, including without limitation, Section VII.

(a)    Resolution of Claims.    Section 7.9 of the Claims Procedures establishing that settlement shall be the favored method of Claims resolution, shall apply to Indirect Asbestos Claims with no less force than as to Direct Claims. If a negotiated resolution of an Indirect Asbestos Claim cannot be reached, such Indirect Asbestos Claim shall be decided by binding arbitration under Section 7.10 of these Claims Procedures. However, no Indirect Asbestos Claim

- 30 -

shall exit to the tort system. By no later than September 30, 1999, the Trust and the Representative Indirect Asbestos Claimant shall agree to one or more arbitrators who shall be acceptable to both parties for disputes involving Indirect Asbestos Claims. In such arbitrations and in its negotiations with Indirect Claimants, the Trust shall not assert any Celotex defenses based on the state of the art, or failure to show negligence or product defect (whether based upon design, manufacture or failure to warn), except in those circumstances (as set forth in the Claims Procedures) under which the Trust would also have asserted those defenses in respect of the underlying Direct Claim. In particular, the provision of Section 7.10, that "[a]rbitrators shall deem the asbestos containing products of Celotex and Carey Canada to be defective products capable of causing asbestos-related disease," shall apply with equal force to Indirect Asbestos Claims.

(b)    Proof required for Indirect Claim. The Indirect Asbestos Claimant shall provide the Trust with proof of the verdict and judgment returned or entered against it, and of payment by the Indirect Asbestos Claimant to the Direct Claimant, as well as with medical reports introduced by the Direct Claimant at trial. The Indirect Asbestos Claimant shall also submit evidence of exposure, which shall be judged according to the principles set forth at Sections 7.1 and 7.5; provided, however, that in any event the following shall be considered sufficient demonstration of exposure to establish the validity of an Indirect Asbestos Claim: (i) interrogatory or other sworn discovery responses of the Direct Claimant, describing exposure to asbestos or asbestos-containing products made by Celotex, provided, however, that any such description is consistent with the type of product known to be made or distributed by Celotex; (ii) testimony relating to the Direct Claim or other asbestos personal injury claims describing in a manner meeting the Lohrmann standard the presence of Celotex asbestos or asbestos-containing materials at the Direct Claimant's worksite(s), regardless of whether such testimony would be admissible at trial of the Direct Claim and (iii) payment by the Trust of claims asserted by other Direct Claimants with the same or similar exposure at the same worksite. In evaluating Indirect Asbestos Claims, the Trust shall consider as a factor an Indirect Asbestos Claimant's potentially limited access to certain information regarding the Direct Claim. In order to reduce transaction costs, the Trust, in consultation with the Representative Indirect Asbestos Claimant, may develop claim form(s) specifically addressing Indirect Asbestos Claims.

(c)    Classification of Indirect Asbestos Claims by Disease Category.

(1)    As to Disease Category. Except as to Pre-Contribution Date Claims described at Section 9.2(i) ("Settlement Claims"), and except as to Post-Contribution Date Claims involving only alleged asbestos-related non-malignancies, the disease category to be used by the Trust for purposes of evaluating an Indirect Asbestos Claim for resolution shall be as follows:

(i)    If the Direct Claimant claimed at trial that the disease was malignant mesothelioma, Category VII.

- 31 -

(ii)    If the Direct Claimant claimed at trial that the disease was lung cancer, Category VI.

(iii)    If the Direct Claimant claimed at trial that the disease was other cancer, Category IV.

(iv)    If the Direct Claimant claimed at trial that the disease was a non-malignant condition caused by asbestos, Category III.

In the event the Direct Claimant claimed two diseases at trial in the Underlying Litigation, the categorization shall be that of the disease with the higher Maximum Value, unless the fact-finder specifically found that the Direct Claimant does not have that disease. The Trust may, on good cause, reclassify a Post-Contribution Date Claim based solely on a claim of asbestos-related non-malignancy to Category I or Category II. The applicable disease category for Settlement Claims shall be determined pursuant to Section 5.4 of the Claims Procedures, regarding individualized review.

(2)    <u>As to Value</u>. Except as to Settlement Claims, the valuation of Pre-Contribution Date Claims is governed by Section 9.2. In evaluating Settlement Claims a Post-Contribution Date Claim, there shall be a rebuttable presumption that the Claim be classified by the Trust at the Maximum Value for the disease category established pursuant to Section 9.6(c)(1).

(d)    <u>Processing and Payment of Claims</u>. Indirect Asbestos Claims shall be included in the FIFO queue established pursuant to these Claims Procedures in the same position and manner as the underlying Direct Claim.

(e)    <u>Discovery and Informational Issues</u>. The Trust shall comply with the rules of discovery under Applicable Law concerning requests by an Indirect Asbestos Claimant for product exposure and disease information provided by the Direct Claimant pertaining to such Direct Claim. In response to an Indirect Asbestos Claimant request, the Trust and the Direct Claimant shall promptly verify, no later than the start of jury selection in trial of the Underlying Litigation, (x) the filing of such Direct Claim, or (y) the fact of the settlement of such Direct Claim; and in accordance with Applicable Law, also shall provide information regarding the amount and terms of any such settlement of a Direct Claim. Without waiver by the Trust or Direct Claimants of their rights to object to discovery of such information, neither product exposure nor disease information provided pursuant to this subsection shall be considered inadmissible at trial based on Rule 408 of the Federal Rules of Evidence or any of its state law counterparts.

(f)    <u>Litigation Between Indirect Claimants and Direct Claimants</u>. In any Underlying Litigation, Indirect Asbestos Claimants and Direct Claimants shall retain their respective rights under Applicable Law to introduce evidence at trial. In cases where the Direct

- 32 -

Claimant has waived his or her right to proceed against the Trust, introduction by the Direct Claimant of evidence of his or her exposure to Celotex asbestos or asbestos-containing material shall create a rebuttable presumption of exposure sufficient under Section 7.1 to establish a valid claim when the Indirect Asbestos Claim is presented to the Trust.

(g)     Trust Not to be Treated as Bankrupt.  From and after the Contribution Date, and for procedural purposes only, under no circumstances (other than the commencement by the Trust of formal bankruptcy or insolvency proceedings) shall the Trust (or Celotex) be treated in the Underlying Litigation as a bankrupt or insolvent defendant, nor shall the Trust (or Celotex) be considered, in the Underlying Litigation, a Person who cannot be made a party for lack of personal jurisdiction, or otherwise a party over whom a Direct Claimant is unable to obtain jurisdiction.  Notwithstanding anything to the contrary herein, nothing in these Claims Procedures shall affect the Injunctions under the Plan.  Between the Effective Date and the Contribution Date, the Trust (or Celotex) shall be treated in the Underlying Litigation as if the Effective Date had not yet occurred.

(h)     Tort System Direct Claims Against the Trust.  Should a Direct Claimant proceed to litigation against the Trust pursuant to Section 7.10 of these Claims Procedures, no objection shall be made in such tort system cases by the Trust or the Direct Claimant to the filing by Indirect Asbestos Claimant(s) of a third-party or cross-complaint against the Trust (in Celotex's stead).  Without in any way waiving or affecting the provision of these Claims Procedures limiting the Trust's liabilities with respect to Direct Claims and Indirect Asbestos Claims when a Direct Claim proceeds to litigation against the Trust in the tort system, Indirect Asbestos Claimants and the Trust shall retain against each other whatever rights of contribution and/or indemnification they otherwise would have had against Celotex under Applicable Law. In the event that the Indirect Asbestos Claimant in such a case is determined to have such a valid contribution claim or indemnity claim, the Direct Claimant's verdict or judgment against the Indirect Asbestos Claimant shall be reduced or set off in the amount necessary under Applicable Law to satisfy such Indirect Asbestos Claimant's claim for contribution or indemnity against Celotex or the Trust.

9.7     No Modification Without Consent.  Neither the terms of this Section IX nor the provisions of these Claims Procedures as to arbitration (as they apply to Indirect Asbestos Claimants) may be modified without the written concurrence of the Representative Indirect Asbestos Claimant or Bankruptcy Court Order.  Other provisions of the Claims Procedures may be modified (after prior notice to the Representative Indirect Asbestos Claimant) without the concurrence of the Representative Indirect Asbestos Claimant unless the modification (i) has an adverse effect on Indirect Asbestos Claimants and (ii) discriminates against them vis-a-vis Direct Claimants, in which case the modification shall require the written concurrence of the Representative Indirect Asbestos Claimant or Bankruptcy Court Order.

457306.7

- 33 -