EXHIBIT P

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

# THE BABCOCK & WILCOX COMPANY

## ASBESTOS PERSONAL INJURY SETTLEMENT TRUST
## DISTRIBUTION PROCEDURES

EXHIBIT B TO PLAN -- ASBESTOS PI TDP

## THE BABCOCK & WILCOX COMPANY

## ASBESTOS PERSONAL INJURY SETTLEMENT TRUST DISTRIBUTION PROCEDURES

## TABLE OF CONTENTS

Page

SECTION I — Introduction ........................................................................................ 1

    1.1    Purpose ........................................................................................... 1
    1.2    Interpretation ................................................................................. 2


SECTION II — Overview ......................................................................................... 2

    2.1    PI Trust Goals ............................................................................. 2
    2.2    Claims Liquidation Procedures ................................................... 3
    2.3    Application of the Payment Percentage ..................................... 5
    2.4    PI Trust's Determination of the Maximum Annual Payment
        and Maximum Available Payment ............................................. 7
    2.5    Claims Payment Ratio ................................................................. 8
    2.6    Indirect PI Trust Claims .............................................................. 10

SECTION III — TDP Administration ...................................................................... 10

    3.1    Trust Advisory Committee and Future Claimants' Representative ........ 10
    3.2    Consent and Consultation Procedures ...................................... 11


SECTION IV — Payment Percentage; Periodic Estimates ............................................ 11

    4.1    Uncertainty of B&W's Personal Injury Asbestos Liabilities .................. 11
    4.2    Computation of Payment Percentage ........................................ 11
    4.3    Applicability of the Payment Percentage ................................. 14

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

SECTION V — Resolution of PI Trust Claims ................................................................ 15

| | | | | |
|---|---|---|---|---|
| 5.1 | | Ordering, Processing and Payment of Claims ......................................... | 15 |
| | (a) | Ordering of Claims ....................................................... | 15 |
| | | (1) | Establishment of the FIFO Processing Queue ................. | 15 |
| | | (2) | Effect of Statutes of Limitations and Repose ................. | 16 |
| | (b) | Processing of Claims...................................................... | 17 |
| | (c) | Payment of Claims ....................................................... | 17 |
| 5.2 | | Resolution of Pre-Petition Liquidated PI Trust Claims ......................... | 19 |
| | (a) | Processing and Payment ................................................ | 19 |
| | (b) | Marshalling of Security ................................................. | 20 |
| 5.3 | | Resolution of Unliquidated PI Trust Claims ........................................ | 21 |
| | (a) | Expedited Review Process ............................................. | 22 |
| | | (1) | In General ........................................................ | 22 |
| | | (2) | Claims Processing Under Expedited Review ................. | 23 |
| | | (3) | Disease Levels, Scheduled Values | |
| | | | and Medical/Exposure Criteria ......................... | 23 |
| | (b) | Individual Review Process ............................................. | 28 |
| | | (1) | In General ........................................................ | 28 |
| | | | (A) | Review of Medical/Exposure Criteria ............... | 30 |
| | | | (B) | Review of Liquidated Value ............................. | 30 |
| | | (2) | Valuation Factors to Be Considered in | |
| | | | Individual Review ..................................... | 31 |
| | | (3) | Scheduled, Average and Maximum Values ................... | 32 |
| 5.4 | | Categorizing Claims as Extraordinary and/or Exigent Hardship............. | 34 |
| | (a) | Extraordinary Claims ................................................... | 34 |
| | (b) | Exigent Hardship Claims .............................................. | 34 |
| 5.5 | | Secondary Exposure Claims ........................................................ | 35 |
| 5.6 | | Indirect PI Trust Claims ........................................................... | 36 |
| 5.7 | | Evidentiary Requirements .......................................................... | 38 |
| | (a) | Medical Evidence ....................................................... | 38 |
| | | (1) | In General ........................................................ | 38 |
| | | | (A) | Disease Levels I – IV ...................................... | 39 |
| | | | (B) | Disease Levels V – VIII ................................... | 40 |
| | | | (C) | Exception to the Exception for Certain | |
| | | | | Pre-Petition Claims ...................................... | 40 |
| | | (2) | Credibility of Medical Evidence ............................. | 40 |
| | (b) | Exposure Evidence...................................................... | 41 |
| | | (1) | In General ........................................................ | 41 |
| | | (2) | Significant Occupational Exposure ........................... | 42 |
| | | (3) | B&W Exposure ................................................ | 43 |
| 5.8 | | Claims Audit Program ............................................................... | 44 |
| 5.9 | | Second Disease (Malignancy) Claims ............................................. | 44 |

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

|  |  |  |  |
|---|---|---|---|
| 5.10 | Arbitration | ........................................................................ | 45 |
|  | (a) | Establishment of ADR Procedures ............................................. | 45 |
|  | (b) | Claims Eligible for Arbitration................................................. | 46 |
|  | (c) | Limitations on and Payment of Arbitration Awards.................... | 46 |
| 5.11 | Litigation | ........................................................................ | 47 |

| SECTION VI — Claims Materials | ................................................ | 47 |
|---|---|---|

|  |  |  |  |
|---|---|---|---|
| 6.1 | Claims Materials | ........................................................................ | 47 |
| 6.2 | Content of Claims Materials | ...................................................... | 47 |
| 6.3 | Withdrawal or Deferral of Claims | ............................................. | 48 |
| 6.4 | Filing Requirements and Fees | .................................................... | 49 |
| 6.5 | Confidentiality of Claimants' Submissions | .............................. | 49 |

| SECTION VII — General Guidelines for Liquidating and Paying Claims | ................... | 49 |
|---|---|---|

|  |  |  |  |
|---|---|---|---|
| 7.1 | Showing Required | ..................................................... | 49 |
| 7.2 | Costs Considered | ....................................................... | 49 |
| 7.3 | Discretion to Vary the Order and Amounts of Payments in Event of Limited Liquidity | ....................................................... | 50 |
| 7.4 | Punitive Damages | ...................................................... | 51 |
| 7.5 | Interest | ....................................................................... | 51 |
|  | (a) | In General........................................................... | 51 |
|  | (b) | Unliquidated PI Trust Claims ......................................... | 52 |
|  | (c) | Liquidated Pre-Petition Claims....................................... | 52 |
| 7.6 | Suits in the Tort System................................................... | 53 |
| 7.7 | Payment of Judgments for Money Damages | ........................... | 53 |
| 7.8 | Releases | ...................................................................... | 54 |
| 7.9 | Third-Party Services | ................................................... | 55 |
| 7.10 | PI Trust Disclosure of Information....................................... | 55 |

| SECTION VIII — Miscellaneous | ............................................... | 55 |
|---|---|---|

|  |  |  |  |
|---|---|---|---|
| 8.1 | Amendments | ............................................................... | 55 |
| 8.2 | Severability | .................................................................. | 56 |
| 8.3 | Governing Law | ........................................................... | 56 |

EXHIBIT B TO PLAN -- ASBESTOS PI TDP

## THE BABCOCK & WILCOX COMPANY

## ASBESTOS PERSONAL INJURY SETTLEMENT TRUST DISTRIBUTION PROCEDURES

The Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust Distribution Procedures (this "TDP") contained herein provide for resolving all asbestos-related personal injury and death claims caused by conduct of, and/or exposure to products for which, The Babcock & Wilcox Company ("B&W"), and its predecessors, successors, and assigns, have legal responsibility (hereinafter for all purposes of this TDP defined as "PI Trust Claims"), as provided in and required by The Joint Plan of Reorganization as of September 28, 2005, filed on September 29, 2005 ("Plan"), as such Plan may be amended, modified or supplemented from time to time, and The Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust Agreement (the "PI Trust Agreement"). The Plan and PI Trust Agreement establish The Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust ("PI Trust"). The Trustees of the PI Trust ("Trustees") shall implement and administer this TDP in accordance with the PI Trust Agreement. Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Plan and the PI Trust Agreement.

## SECTION I

### Introduction

**1.1**    **Purpose.** This TDP has been adopted pursuant to the PI Trust Agreement. It is designed to provide fair, equitable and substantially similar treatment for all PI Trust Claims that may presently exist or may arise in the future in substantially the same manner.

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

    **1.2**    **Interpretation.** Except as may otherwise be provided below, nothing in this TDP shall be deemed to create a substantive right for any claimant.

## SECTION II

### Overview

    **2.1**    **PI Trust Goals.** The goal of the PI Trust is to treat all claimants equitably. This TDP furthers that goal by setting forth procedures for processing and paying B&W's several share of the unpaid portion of the liquidated value of PI Trust Claims generally on an impartial, first-in-first-out ("FIFO") basis, with the intention of paying all claimants over time as equivalent a share as possible of the value of their claims based on historical values for substantially similar claims in the tort system.[1] To this end, the TDP establishes a schedule of eight asbestos-related diseases ("Disease Levels"), seven of which have presumptive medical and exposure requirements ("Medical/Exposure Criteria") and specific liquidated values ("Scheduled Values"), and five of which have both anticipated average values ("Average Values") and caps on their liquidated values ("Maximum Values"). The Disease Levels, Medical/Exposure Criteria, Scheduled Values, Average Values and Maximum Values, which are set forth in Sections 5.3 and 5.4 below, have all been selected and derived with the intention of achieving a fair allocation of the PI Trust funds as among claimants suffering from different disease processes in light of the best available information considering the settlement history of B&W and the rights claimants would have in the tort system absent the bankruptcy.

---

[1]    As used in this TDP, the phrase "in the tort system" shall include only claims asserted by way of litigation and not claims asserted against a trust established pursuant to section 524(g) and/or section 105 of the Bankruptcy Code or any other applicable law.

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

    **2.2**    **Claims Liquidation Procedures.** PI Trust Claims shall be processed based on their place in the FIFO Processing Queue to be established pursuant to Section 5.1(a) below. The PI Trust shall take all reasonable steps to resolve PI Trust Claims as efficiently and expeditiously as possible at each stage of claims processing and arbitration, which steps may include conducting settlement discussions with claimants' representatives with respect to more than one claim at a time, provided that the claimants' respective positions in the FIFO Processing Queue are maintained and each claim is individually evaluated pursuant to the valuation factors set forth in Section 5.3(b)(2) below. The PI Trust shall also make every effort to resolve each year at least that number of PI Trust Claims required to exhaust the Maximum Annual Payment and the Maximum Available Payment for Category A and Category B claims, as those terms are defined below.

    The PI Trust shall liquidate all PI Trust Claims except Foreign Claims (as defined below) that meet the presumptive Medical/Exposure Criteria of Disease Levels I – V, VII and VIII under the Expedited Review Process described in Section 5.3(a) below. Claims involving Disease Levels I – V, VII and VIII that do not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level may undergo the PI Trust's Individual Review Process described in Section 5.3(b) below. In such a case, notwithstanding that the claim does not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level, the PI Trust can offer the claimant an amount up to the Scheduled Value of that Disease Level if the PI Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system.

    PI Trust Claims involving Disease Levels IV - VIII tend to raise more complex valuation issues than the PI Trust Claims in Disease Levels I – III. Accordingly, claimants

- 3 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

holding claims involving these Disease Levels may in addition or alternatively seek to establish

a liquidated value for the claim that is greater than its Scheduled Value by electing the PI

Trust's Individual Review Process. However, the liquidated value of a more serious Disease

Level IV, V, VII or VIII claim that undergoes the Individual Review Process for valuation

purposes may be determined to be less than its Scheduled Value, and in any event shall not

exceed the Maximum Value for the relevant Disease Level set forth in Section 5.3(b)(3) below,

unless the claim qualifies as an Extraordinary Claim as defined in Section 5.4(a) below, in

which case its liquidated value cannot exceed the Maximum Value specified in that provision

for such claims. Level VI (Lung Cancer 2) claims and all Foreign Claims may be liquidated

only pursuant to the PI Trust's Individual Review Process.

Based upon B&W's claims settlement history in light of applicable tort law, and current

projections of present and future unliquidated claims, the Scheduled Values and Maximum

Values set forth in Section 5.3(b)(3) have been established for each of the five more serious

Disease Levels that are eligible for Individual Review of their liquidated values, with the

expectation that the combination of settlements at the Scheduled Values and those resulting

from the Individual Review Process shall result in the Average Values also set forth in that

provision.

All unresolved disputes over a claimant's medical condition, exposure history and/or

the liquidated value of the claim shall be subject to binding or non-binding arbitration as set

forth in Section 5.10 below, at the election of the claimant, under the ADR Procedures that are

provided in Attachment A hereto. PI Trust Claims that are the subject of a dispute with the PI

Trust that cannot be resolved by non-binding arbitration may enter the tort system as provided

in Sections 5.11 and 7.6 below.  However, if and when a claimant obtains a judgment in the tort

- 4 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

system, the judgment shall be payable (subject to the Payment Percentage, Maximum Available Payment, and Claims Payment Ratio provisions set forth below) as provided in Section 7.7 below.

    **2.3**    **Application of the Payment Percentage.** After the liquidated value of a PI Trust Claim other than a claim involving Other Asbestos Disease (Disease Level I – Cash Discount Payment), as defined in Section 5.3(a)(3) below, is determined pursuant to the procedures set forth herein for Expedited Review, Individual Review, arbitration, or litigation in the tort system, the claimant shall ultimately receive a pro-rata share of that value based on a Payment Percentage described in Section 4.2 below. The Payment Percentage shall also apply to all Pre-Petition Liquidated Claims as provided in Section 5.2 below.

    The Initial Payment Percentage has been set at 34 percent (34%), and shall apply to all PI Trust Voting Claims accepted as valid by the PI Trust, unless adjusted by the PI Trust pursuant to the consent of the PI Trust Advisory Committee ("TAC") and the Legal Representative for Future Asbestos-Related Claimants ("Future Claimants' Representative") (who are described in Section 3.1 below) pursuant to Section 4.2 below, and except as provided in Section 4.2 below with respect to supplemental payments in the event the Initial Payment Percentage is changed.. The term "PI Trust Voting Claims" includes (i) Pre-Petition Liquidated Claims as defined in Section 5.2(a) below; (ii) claims filed against B&W in the tort system or actually submitted to B&W pursuant to an administrative settlement agreement prior to the Petition Date of February 22, 2000; and (iii) all claims filed against another defendant in the tort system prior to the date the Plan was filed with the Bankruptcy Court (the "Plan Filing Date"); provided, however, that (1) the holder of a claim described in subsection (i), (ii) or (iii) above, or his or her authorized agent, actually voted to accept or reject the Plan pursuant to the voting procedures established by

- 5 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

the Bankruptcy Court, unless such holder certifies to the satisfaction of the Trustees that he or she was prevented from voting in this proceeding as a result of circumstances related to Hurricanes Katrina, Rita, Wilma, or other event resulting in a state of emergency in the relevant jurisdiction that affected the claimant or his or her law firm, (2) the claim was subsequently filed with the PI Trust pursuant to Section 6.1 below by the Initial Claims Filing Date defined in Section 5.1(a) below. The Initial Payment Percentage has been calculated on the assumption that the Average Values set forth in Section 5.3(b)(3) below shall be achieved with respect to existing present claims and projected future claims involving Disease Levels IV – VIII.

The Payment Percentage may thereafter be adjusted upwards or downwards from time to time by the PI Trust with the consent of the TAC and the Future Claimants' Representative to reflect then-current estimates of the PI Trust's assets and its liabilities, as well as then-estimated value of then-pending and future claims. However, any adjustment to the Initial Payment Percentage shall be made only pursuant to Section 4.2 below. If the Payment Percentage is increased over time, claimants whose claims were liquidated and paid in prior periods under the TDP shall receive additional payments only as provided in Section 4.2 below. Because there is uncertainty in the prediction of both the number and severity of future PI Trust Claims, and the amount of the PI Trust's assets, no guarantee can be made of any Payment Percentage of a PI Trust Claim's liquidated value.

2.4    **PI Trust's Determination of the Maximum Annual Payment and Maximum Available Payment.** The PI Trust shall estimate or model the amount of cash flow anticipated to be necessary over its entire life to ensure that funds shall be available to treat all present and future B&W claimants as similarly as possible. In each year, the PI Trust shall be empowered to pay out all of the interest earned during the year, together with a portion of its

EXHIBIT B TO PLAN -- ASBESTOS PI TDP

principal, calculated so that the application of PI Trust funds over its life shall correspond with

the needs created by the anticipated flow of claims (the "Maximum Annual Payment"), taking

into account the Payment Percentage provisions set forth in Sections 2.3 above and 4.2 below.

The PI Trust's distributions to all claimants for that year shall not exceed the Maximum Annual

Payment determined for that year.

In distributing the Maximum Annual Payment, the PI Trust shall first allocate the amount

in question to outstanding Pre-Petition Liquidated Claims and to liquidated PI Trust Claims

involving Disease Level I (Cash Discount Payment), in proportion to the aggregate value of each

group of claims. The remaining portion of the Maximum Annual Payment (the "Maximum

Available Payment"), if any, shall then be allocated and used to satisfy all other liquidated PI

Trust Claims, subject to the Claims Payment Ratio set forth in Section 2.5 below. In the event

there are insufficient funds in any year to pay the total number of outstanding Pre-Petition

Liquidated Claims and/or previously liquidated Disease Level I Claims, the available funds

allocated to that group of claims shall be paid to the maximum extent to claimants in the

particular group based on their place in their respective FIFO Payment Queue. Claims in either

group for which there are insufficient funds shall be carried over to the next year, and placed at

the head of their FIFO Payment Queue.

2.5    **Claims Payment Ratio.** Based upon B&W's claims settlement history and

analysis of present and future claims, a Claims Payment Ratio has been determined which, as of

the Effective Date, has been set at 62% for Category A claims, which consist of PI Trust Claims

involving severe asbestosis and malignancies (Disease Levels IV – VIII) that were unliquidated

as of the Petition Date, and at 38% for Category B claims, which are PI Trust Claims involving

non-malignant Asbestosis or Pleural Disease (Disease Levels II and III) that were similarly

- 7 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

unliquidated as of the Petition Date. However, the Claims Payment Ratio shall not apply to any Pre-Petition Liquidated Claims or to any claims for Other Asbestos Disease (Disease Level I - Cash Discount Payment).

In each year, after the determination of the Maximum Available Payment described in Section 2.4 above, 62% of that amount shall be available to pay Category A claims and 38% shall be available to pay Category B claims that have been liquidated since the Petition Date. In the event there are insufficient funds in any year to pay the liquidated claims within either or both of the Categories, the available funds allocated to the particular Category shall be paid to the maximum extent to claimants in that Category based on their place in the FIFO Payment Queue described in Section 5.1(c) below, which shall be based upon the date of claim liquidation. Claims for which there are insufficient funds allocated to the relevant Category shall be carried over to the next year where they shall be placed at the head of the FIFO Payment Queue. If there are excess funds in either or both Categories, because there is an insufficient amount of liquidated claims to exhaust the respective Maximum Available Payment amount for that Category, then the excess funds for either or both Categories shall be rolled over and remain dedicated to the respective Category to which they were originally allocated.

The 62%/38% Claims Payment Ratio and its rollover provision shall apply to all PI Trust Voting Claims as defined in Section 2.3 above (except Pre-Petition Liquidated Claims and Other Asbestos Disease claims (Disease Level I – Cash Discount Payment)), and shall not be amended until the fifth anniversary of the Effective Date. Thereafter, both the Claims Payment Ratio and its rollover provision shall be continued absent circumstances, such as a significant change in law or medicine, necessitating amendment to avoid a manifest injustice. However, the accumulation, rollover and subsequent delay of claims resulting from the application of the

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

Claims Payment Ratio shall not, in and of itself, constitute such circumstances. In addition, an increase in the numbers of Category B claims beyond those predicted or expected shall not be considered as a factor in deciding whether to reduce the percentage allocated to Category A claims.

In considering whether to make any amendments to the Claims Payment Ratio and/or its rollover provisions, the Trustees shall consider the reasons for which the Claims Payment Ratio and its rollover provisions were adopted, the settlement history that gave rise to its calculation, and the foreseeability or lack of foreseeability of the reasons why there would be any need to make an amendment. In that regard, the Trustees should keep in mind the interplay between the Payment Percentage and the Claims Payment Ratio as it affects the net cash actually paid to claimants.

In any event, no amendment to the Claims Payment Ratio may be made without the consent of the TAC and the Future Claimants' Representative pursuant to the consent process set forth in Sections 5.7(b) and 6.6(b) of the PI Trust Agreement. However, the Trustees, with the consent of the TAC and the Future Claimants' Representative, may offer the option of a reduced Payment Percentage to holders of claims in either Category A or Category B in return for prompter payment (the "Reduced Payment Option").

    **2.6**    **Indirect PI Trust Claims.**  As set forth in Section 5.6 below, PI Trust Claims for indemnity and contribution ("Indirect PI Trust Claims"), if any, shall be subject to the same categorization, evaluation, and payment provisions of this TDP as all other PI Trust Claims.

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

## SECTION III

### TDP Administration

    **3.1**    **Trust Advisory Committee and Future Claimants' Representative.** Pursuant to the Plan and the PI Trust Agreement, the PI Trust and this TDP shall be administered by the Trustees in consultation with the TAC, which represents the interests of holders of present PI Trust Claims, and the Future Claimants' Representative, who represents the interests of holders of PI Trust Claims that shall be asserted in the future. The Trustees shall obtain the consent of the TAC and the Future Claimants' Representative on any amendments to these Procedures pursuant to Section 8.1 below, and on such other matters as are otherwise required below and in Section 2.2(f) of the PI Trust Agreement. The Trustees shall also consult with the TAC and the Future Claimants' Representative on such matters as are provided below and in Section 2.2(e) of the PI Trust Agreement. The initial members of the TAC and the initial Future Claimants' Representative are identified in the PI Trust Agreement.

    **3.2**    **Consent and Consultation Procedures.** In those circumstances in which consultation or consent is required, the Trustees shall provide written notice to the TAC and the Future Claimants' Representative of the specific amendment or other action that is proposed. The Trustees shall not implement such amendment nor take such action unless and until the parties have engaged in the Consultation Process described in Sections 5.7(a) and 6.6(a), or the Consent Process described in Sections 5.7(b) and 6.6(b), of the PI Trust Agreement, respectively.

EXHIBIT B TO PLAN -- ASBESTOS PI TDP

SECTION IV

**Payment Percentage; Periodic Estimates**

**4.1      Uncertainty of B&W's Personal Injury Asbestos Liabilities.**  As discussed above, there is inherent uncertainty regarding B&W's total asbestos-related tort liabilities, as well as the total value of the assets available to the PI Trust to pay PI Trust Claims. Consequently, there is inherent uncertainty regarding the amounts that holders of PI Trust Claims shall receive.  To seek to ensure substantially equivalent treatment of all present and future PI Trust Claims, the Trustees must determine from time to time the percentage of full liquidated value that holders of present and future PI Trust Claims shall be likely to receive, i.e, the "Payment Percentage" described in Section 2.3 above and Section 4.2 below.

**4.2      Computation of Payment Percentage.** As provided in Section 2.3 above, the Initial Payment Percentage shall be 34 percent (34%), and shall apply to all PI Trust Voting Claims as defined in Section 2.3 above, unless the Trustees, with the consent of the TAC and the Future Claimants' Representative, determine that the Initial Payment Percentage should be changed to assure that the PI Trust shall be in a financial position to pay holders of unliquidated and/or unpaid PI Trust Voting Claims and present and future PI Trust Claims in substantially the same manner.

In making any such adjustment, the Trustees, the TAC and the Future Claimants' Representative shall take into account the fact that the holders of PI Trust Voting Claims voted on the Plan relying on the findings of experts that the Initial Payment Percentage represented a

- 11 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

reasonably reliable estimate of the PI Trust's total assets and liabilities over its life based on the

best information available at the time, and shall thus give due consideration to the expectations

of PI Trust Voting Claimants that the Initial Payment Percentage would be applied to their PI

Trust Claims.

Except with respect to PI Trust Voting Claims to which the Initial Payment Percentage

applies, the Payment Percentage shall be subject to change pursuant to the terms of this TDP and

the PI Trust Agreement if the Trustees determine that an adjustment is required. No less

frequently than once every three years, commencing with the first day of January occurring after

the Plan is consummated, the Trustees shall reconsider the then applicable Payment Percentage

to assure that it is based on accurate, current information and may, after such reconsideration,

change the Payment Percentage if necessary with the consent of the TAC and the Future

Claimants' Representative. The Trustees shall also reconsider the then applicable Payment

Percentage at shorter intervals if they deem such reconsideration to be appropriate or if requested

to do so by the TAC or the Future Claimants' Representative.

The Trustees must base their determination of the Payment Percentage on current

estimates of the number, types, and values of present and future PI Trust Claims, the value of the

assets then available to the PI Trust for their payment, all anticipated administrative and legal

expenses, and any other material matters that are reasonably likely to affect the sufficiency of

funds to pay a comparable percentage of full value to all holders of PI Trust Claims. When

making these determinations, the Trustees shall exercise common sense and flexibly evaluate all

relevant factors. The Payment Percentage applicable to Category A or Category B claims may

not be reduced to alleviate delays in payments of claims in the other Category; both Categories

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

of claims shall receive the same Payment Percentage, but the payment may be deferred as needed, and a Reduced Payment Option may be instituted as described in Section 2.5 above.

The uncertainty surrounding the amount of the PI Trust's future assets is due in significant part to the fact that the estimates of those assets do not take into account the possibility that the PI Trust may receive substantial additional funds from successful recoveries of insurance proceeds that have been assigned to the PI Trust with respect to which the coverage is presently in dispute or the solvency of the carrier is in doubt. There is also uncertainty surrounding the totality of the PI Trust Claims to be paid over time as well as the extent to which changes in existing federal and/or state law could affect the PI Trust's liabilities under this TDP. If the PI Trust successfully resolves an insurance coverage dispute or otherwise receives a substantial recovery of insurance proceeds, the PI Trust shall use those proceeds first to maintain the Payment Percentage then in effect.

If the Trustees, with the consent of the TAC and the Future Claimants' Representative, determine to increase the Payment Percentage due to a material change in the estimates of the PI Trust's future assets and/or liabilities, the Trustees shall also make supplemental payments to claimants who previously liquidated their claims against the PI Trust and received payments based on a lower Payment Percentage. The amount of any such supplemental payment shall be the liquidated value of the claim in question times the newly adjusted Payment Percentage, less all amounts previously paid to the claimant with respect to the claim.

If the Trustees, with the consent of the TAC and the Future Claimants' Representative, determine to increase the Payment Percentage, including the Initial Payment Percentage applicable to PI Trust Voting Claims, due to a material change in the estimates of the PI Trust's future assets and/or liabilities, the Trustees shall also make supplemental payments to all

- 13 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

claimants who previously liquidated their claims against the PI Trust and received payments based on a lower Payment Percentage. The amount of any such supplemental payment shall be the liquidated value of the claim in question times the newly adjusted Payment Percentage, less all amounts previously paid to the claimant with respect to the claim.

The Trustees' obligation to make a supplemental payment to a claimant shall be suspended in the event the payment in question would be less than $100.00, and the amount of the suspended payment shall be added to the amount of any prior supplemental payment/payments that was/were also suspended because it/they would have been less than $100.00. However, the Trustees' obligation shall resume and the Trustees shall pay any such aggregate supplemental payments due the claimant at such time that the total exceeds $100.00.

**4.3    Applicability of the Payment Percentage.** No holder of a PI Trust Voting Claim, other than a PI Trust Voting Claim for Other Asbestos Disease (Disease Level I - Cash Discount Payment) as defined in Section 5.3(a)(3) below, shall receive a payment that exceeds the Initial Payment Percentage times the liquidated value of the claim. Except as otherwise provided in Section 5.1(c) below for PI Trust Claims involving deceased or incompetent claimants for which approval of the PI Trust's offer by a court or through a probate process is required, no holder of any other PI Trust Claim, other than a PI Trust Claim for Other Asbestos Disease (Disease Level I - Cash Discount Payment), shall receive a payment that exceeds the liquidated value of the claim times the Payment Percentage in effect at the time of payment. PI Trust Claims involving Other Asbestos Disease (Disease Level I - Cash Discount Payment) shall not be subject to the Payment Percentage, but shall instead be paid the full amount of their Scheduled Value as set forth in Section 5.3(a)(3) below.

- 14 -

EXHIBIT B TO PLAN -- ASBESTOS PI TDP

If a redetermination of the Payment Percentage has been proposed in writing by the Trustees to the TAC and the Future Claimants' Representative but has not yet been adopted, the claimant shall receive the lower of the current Payment Percentage or the proposed Payment Percentage. However, if the proposed Payment Percentage was the lower amount but was not subsequently adopted, the claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount.  Conversely, if the proposed Payment Percentage was the higher amount and was subsequently adopted, the claimant shall thereafter receive the difference between the lower current amount and the higher adopted amount.

## SECTION V

### Resolution of PI Trust Claims.

**5.1     Ordering, Processing and Payment of Claims**.

**5.1(a)   Ordering of Claims.**

**5.1(a)(1)   Establishment of the FIFO Processing Queue.** The PI Trust shall order claims that are sufficiently complete to be reviewed for processing purposes on a FIFO basis except as otherwise provided herein (the "FIFO Processing Queue"). For all claims filed on or before the date six months after the date that the PI Trust first makes available the Proof of Claim forms and other claims materials required to file a claim with the PI Trust (the "Initial Claims Filing Date"), a claimant's position in the FIFO Processing Queue shall be determined as of the earlier of (i) the date prior to February 22, 2000 (the "Petition Date") (if any) that the specific claim was either filed against B&W in the tort system or was actually submitted to B&W pursuant to an administrative settlement agreement; (ii) the date before the Petition Date that a claim was filed against another defendant in the tort system if at the time the claim was subject to a tolling agreement with B&W; (iii) the date after the Petition Date (if any)

- 15 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

but before the Initial Claims Filing Date that the claim was filed against another defendant in the

tort system; (iv) the date the claim was filed in the Bankruptcy Court pursuant to the Court's bar

date order in this Chapter 11 proceeding; or (v) the date a ballot was submitted on behalf of the

claimant for purposes of voting to accept or reject the Plan pursuant to the voting procedures

approved by the Bankruptcy Court.

Following the Initial Claims Filing Date, the claimant's position in the FIFO Processing

Queue shall be determined by the date the claim is filed with the PI Trust. If any claims are filed

on the same date, the claimant's position in the FIFO Processing Queue shall be determined by

the date of the diagnosis of the asbestos-related disease. If any claims are filed and diagnosed on

the same date, the claimant's position in the FIFO Processing Queue shall be determined by the

claimant's date of birth, with older claimants given priority over younger claimants.

### 5.1(a)(2)   Effect of Statutes of Limitation and Repose. All

unliquidated PI Trust Claims must meet either (i) for claims first filed in the tort system against

B&W prior to the Petition Date, the applicable federal, state and foreign statute of limitation and

repose that was in effect at the time of the filing of the claim in the tort system, or (ii) for claims

not filed against B&W in the tort system prior to the Petition Date, the applicable federal, state or

foreign statute of limitation that was in effect at the time of the filing with the PI Trust. However,

the running of the relevant statute of limitation shall be tolled as of the earliest of (A) the actual

filing of the claim against B&W prior to the Petition Date, whether in the tort system or by

submission of the claim to B&W pursuant to an administrative settlement agreement; (B) the

filing of the claim against another defendant in the tort system prior to the Petition Date if the

claim was tolled against B&W at the time by an agreement or otherwise; (C) the filing of a claim

after the Petition Date but prior to the Initial Claims Filing Date against another defendant in the

- 16 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

tort system; (D) the filing of a proof of claim pursuant to the bar date order of the Bankruptcy Court; (E) the filing of the claim for voting purposes in this Chapter 11 proceeding; or (F) the filing of a proof of claim with the requisite supporting documentation with the PI Trust after the Initial Claims Filing Date.

If a PI Trust Claim meets any of the tolling provisions described in the preceding sentence and the claim was not barred by the applicable federal, state or foreign statute of limitation at the time of the tolling event, it shall be treated as timely filed if it is actually filed with the PI Trust within three (3) years after the Initial Claims Filing Date. In addition, any claims that were first diagnosed after the Petition Date, irrespective of the application of any relevant federal, state or foreign statute of limitation or repose, may be filed with the PI Trust within three (3) years after the date of diagnosis or within three (3) years after the Initial Claims Filing Date, whichever occurs later. However, the processing of any PI Trust Claim by the PI Trust may be deferred at the election of the claimant pursuant to Section 6.3 below.

       **5.1(b)  Processing of Claims.** As a general practice, the PI Trust shall review its claims files on a regular basis and notify all claimants whose claims are likely to come up in the FIFO Processing Queue in the near future. However, claims that were not filed (i) against B&W in the tort system or actually submitted to B&W pursuant to an administrative settlement agreement prior to the Petition Date, or (ii) against another defendant in the tort system prior to the Plan Filing Date, shall not be processed until after the Initial Claims Filing Date.

       **5.1(c)  Payment of Claims.** PI Trust Claims that have been liquidated by the Expedited Review Process as provided in Section 5.3(a) below, by the Individual Review Process as provided in Section 5.3(b) below, by arbitration as provided in Section 5.10 below, or

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

by litigation in the tort system provided in Section 5.11 below, shall be paid in FIFO order based on the date their liquidation became final (the "FIFO Payment Queue"), all such payments being subject to the applicable Payment Percentage, the Maximum Available Payment, and the Claims Payment Ratio, except as otherwise provided herein. Pre-Petition Liquidated Claims, as defined in Section 5.2 below, shall be subject to the Maximum Annual Payment and Payment Percentage limitations, but not to the Maximum Available Payment and Claims Payment Ratio provisions set forth above.

Where the claimant is deceased or incompetent, and the settlement and payment of his or her claim must be approved by a court of competent jurisdiction or through a probate process prior to acceptance of the claim by the claimant's representative, an offer made by the PI Trust on the claim shall remain open so long as proceedings before that court or in that probate process remain pending, provided that the PI Trust has been furnished with evidence that the settlement offer has been submitted to such court or in the probate process for approval. If the offer is ultimately approved by the court or through the probate process and accepted by the claimant's representative, the PI Trust shall pay the claim in the amount so offered, multiplied by the Payment Percentage in effect at the time the offer was first made.

If any claims are liquidated on the same date, the claimant's position in the FIFO Payment Queue shall be determined by the date of the diagnosis of the claimant's asbestos-related disease. If any claims are liquidated on the same date and the respective holders' asbestos-related diseases were diagnosed on the same date, the position of those claims in the FIFO Payment Queue shall be determined by the PI Trust based on the dates of the claimants' birth, with older claimants given priority over younger claimants.

- 18 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

    **5.2**    **Resolution of Pre-Petition Liquidated PI Trust Claims.**

        **5.2(a)**   **Processing and Payment.** As soon as practicable after the Effective Date, the PI Trust shall pay, upon submission by the claimant of the applicable PI Trust proof of claim form together with all documentation required thereunder, all PI Trust Claims that were liquidated by (i) a binding settlement agreement for the particular claim entered into prior to the Petition Date that is judicially enforceable by the claimant, (ii) a jury verdict or non-final judgment in the tort system obtained prior to the Petition Date, or (iii) by a judgment that became final and non-appealable prior to the Petition Date (collectively "Pre-Petition Liquidated Claims").

        The liquidated value of a Pre-Petition Liquidated Claim shall be the unpaid portion of the amount agreed to in the binding settlement agreement, the unpaid portion of the amount awarded by the jury verdict or non-final judgment, or the unpaid portion of the amount of the final judgment, as the case may be, plus interest, if any, that has accrued on that amount in accordance with the terms of the agreement, if any, or under applicable state law for settlements or judgments as of the Petition Date; however, except as otherwise provided in Section 7.4 below, the liquidated value of a Pre-Petition Liquidated Claim shall not include any punitive or exemplary damages. In addition, the amounts payable with respect to such claims shall not be subject to or taken into account in consideration of the Claims Payment Ratio and the Maximum Available Payment limitations, but shall be subject to the Maximum Annual Payment and Payment Percentage provisions. In the absence of a Final Order of the Bankruptcy Court determining whether a settlement agreement is binding and judicially enforceable, a dispute between the claimant and the PI Trust over this issue shall be resolved pursuant to the same procedures in this TDP that are provided for resolving the validity and/or liquidated value of a PI

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

Trust Claim (i.e., arbitration and litigation in the tort system as set forth in Sections 5.10 and 5.11 below).

Pre-Petition Liquidated Claims shall be processed and paid in accordance with their order in a separate FIFO queue to be established by the PI Trust based on the date the PI Trust received a completed proof of claim form with all required documentation for the particular claim; provided, however, the amounts payable with respect to such claims shall not be subject to or taken into account in consideration of the Claims Payment Ratio, but shall be subject to the Maximum Annual Payment and Payment Percentage provisions set forth above. If any Pre-Petition Liquidated Claims were filed on the same date, the claimants' position in the FIFO queue for such claims shall be determined by the date on which the claim was liquidated. If any Pre-Petition Liquidated Claims were both filed and liquidated on the same dates, the position of the claimants in the FIFO queue shall be determined by the dates of the claimants' birth, with older claimants given priority over younger claimants.

5.2(b)    **Marshalling of Security**. Holders of Pre-Petition Liquidated Claims that are secured by letters of credit, appeal bonds, or other security or sureties shall first exhaust their rights against any applicable security or surety before making a claim against the PI Trust. Only in the event that such security or surety is insufficient to pay the Pre-Petition Liquidated Claim in full shall the deficiency be processed and paid as a Pre-Petition Liquidated Claim.

5.3    **Resolution of Unliquidated PI Trust Claims**. Within six months after the establishment of the PI Trust, the Trustees, with the consent of the TAC and the Future Claimants' Representative, shall adopt procedures for reviewing and liquidating all unliquidated PI Trust Claims, which shall include deadlines for processing such claims. Such procedures shall

- 20 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

also require that claimants seeking resolution of unliquidated PI Trust claims must first file a proof of claim form, together with the required supporting documentation, in accordance with the provisions of Sections 6.1 and 6.2 below. It is anticipated that the PI Trust shall provide an initial response to the claimant within six months of receiving the proof of claim form.

The proof of claim form shall require the claimant to assert his or her claim for the highest Disease Level for which the claim qualifies at the time of filing. Irrespective of the Disease Level alleged on the proof of claim form, all claims shall be deemed to be a claim for the highest Disease Level for which the claim qualifies at the time of filing, and all lower Disease Levels for which the claim may also qualify at the time of filing or in the future shall be treated as subsumed into the higher Disease Level for both processing and payment purposes.

Upon filing of a valid proof of claim form with the required supporting documentation, the claimant shall be placed in the FIFO Processing Queue in accordance with the ordering criteria described in Section 5.1(a) above. The PI Trust shall provide the claimant with six-months notice of the date by which it expects to reach the claim in the FIFO Queue, following which the claimant shall promptly (i) advise the PI Trust whether the claim should be liquidated under the PI Trust's Expedited Review Process described in Section 5.3(a) below or, in certain circumstances, under the PI Trust's Individual Review Process described in Section 5.3(b) below; (ii) provide the PI Trust with any additional medical and/or exposure evidence that was not provided with the original claim submission; and (iii) advise the PI Trust of any change in the claimant's Disease Level. If a claimant fails to respond to the PI Trust's notice prior to the reaching of the claim in the FIFO Queue, the PI Trust shall process and liquidate the claim under the Expedited Review Process based upon the medical/exposure evidence previously submitted

- 21 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

by the claimant, although the claimant shall retain the right to request Individual Review as described in Section 5.3(b) below.

       **5.3(a)**    **Expedited Review Process.**

       **5.3(a)(1)**    **In General.** The PI Trust's Expedited Review Process is designed primarily to provide an expeditious, efficient and inexpensive method for liquidating all PI Trust Claims (except those involving Lung Cancer 2 - Disease Level VI and all Foreign Claims (as defined below)), which shall only be liquidated pursuant to the PI Trust's Individual Review Process, where the claim can easily be verified by the PI Trust as meeting the presumptive Medical/Exposure Criteria for the relevant Disease Level. Expedited Review thus provides claimants with a substantially less burdensome process for pursuing PI Trust Claims than does the Individual Review Process described in Section 5.3(b) below. Expedited Review is also intended to provide qualifying claimants a fixed and certain claims payment.

       Thus, claims that undergo Expedited Review and meet the presumptive Medical/Exposure Criteria for the relevant Disease Level shall be paid the Scheduled Value for such Disease Level set forth in Section 5.3(a)(3) below. However, except for claims involving Other Asbestos Disease (Disease Level I), all claims liquidated by Expedited Review shall be subject to the applicable Payment Percentage, the Maximum Available Payment, and the Claims Payment Ratio limitations set forth above. Claimants holding claims that cannot be liquidated by Expedited Review because they do not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level may elect the PI Trust's Individual Review Process set forth in Section 5.3(b) below.

EXHIBIT B TO PLAN -- ASBESTOS PI TDP

Further, the claimant's eligibility to receive the Scheduled Value for his or her PI Trust Claim pursuant to the Expedited Review Process shall be determined solely by reference to the Medical/Exposure Criteria set forth below for each of the Disease Levels eligible for Expedited Review.

5.3(a)(2)  **Claims Processing Under Expedited Review.**  All claimants seeking liquidation of their claims pursuant to Expedited Review shall file the PI Trust's proof of claim form. As a proof of claim form is reached in the FIFO Processing Queue, the PI Trust shall determine whether the claim described therein meets the Medical/Exposure Criteria for one of the seven Disease Levels eligible for Expedited Review, and shall advise the claimant of its determination. If a Disease Level is determined, the PI Trust shall tender to the claimant an offer of payment of the Scheduled Value for the relevant Disease Level multiplied by the applicable Payment Percentage, together with a form of release approved by the PI Trust. If the claimant accepts the Scheduled Value and returns the release properly executed, the claim shall be placed in the FIFO Payment Queue, following which the Trust shall disburse payment subject to the limitations of the Maximum Available Payment and Claims Payment Ratio, if any.

5.3(a)(3)   **Disease Levels, Scheduled Values and Medical/Exposure Criteria.**  The eight Disease Levels covered by this TDP, together with the Medical/Exposure Criteria for each and the Scheduled Values for the seven Disease Levels eligible for Expedited Review, are set forth below. These Disease Levels, Scheduled Values, and Medical/Exposure Criteria shall apply to all PI Trust Voting Claims filed with the PI Trust (except Pre-Petition Liquidated Claims) on or before the Initial Claims Filing Date provided in Section 5.1 above for which the claimant elects the Expedited Review Process. Thereafter, for purposes of

- 23 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

administering the Expedited Review Process and with the consent of the TAC and the Future

Claimants' Representative, the Trustees may add to, change, or eliminate Disease Levels,

Scheduled Values, or Medical/Exposure Criteria; develop subcategories of Disease Levels,

Scheduled Values or Medical/Exposure Criteria; or determine that a novel or exceptional

asbestos personal injury claim is compensable even though it does not meet the

Medical/Exposure Criteria for any of the then current Disease Levels.

| Disease Level | Scheduled Value | Medical/Exposure Criteria |
|---|---|---|
| Mesothelioma (Level VIII) | $90,000 | (1) Diagnosis[2] of mesothelioma; and (2) credible evidence of B&W Exposure as defined in Section 5.7(b)(3). |
| Lung Cancer 1 (Level VII) | $35,000 | (1) Diagnosis of a primary lung cancer plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease[3], (2) |

---

[2]     The requirements for a diagnosis of an asbestos-related disease that may be compensated under the provisions of this TDP are set forth in Section 5.7 below.

[3]     Evidence of "Bilateral Asbestos-Related Nonmalignant Disease," for purposes of meeting the criteria for establishing Disease Levels I, II, III, V, and VII, means a report submitted by a Qualified Physician stating that the claimant has or had either (i) a chest X-ray read by a qualified B reader of 1/0 or higher on the ILO scale or (ii)(x) a chest X-ray read by a qualified B reader or other Qualified Physician, (y) a CT scan read by a Qualified Physician, or (z) pathology, in each case showing either bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification. Solely for claims filed against B&W or another asbestos defendant in the tort system prior to the Petition Date, if an ILO reading is not available, either (i) a chest X-ray or a CT scan read by a Qualified Physician, or (ii) pathology, in each case showing bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification consistent with or compatible with a diagnosis of asbestos-related disease, shall be evidence of a Bilateral Asbestos-Related Nonmalignant Disease for purposes of meeting the presumptive medical requirements of Disease Levels I, II, III, V and VII. Pathological proof of asbestosis may be based on the pathological grading system for asbestosis described in the Special Issue of the Archives of Pathology and Laboratory Medicine, "Asbestos-associated Diseases," Vol. 106, No. 11, App. 3 (October 8,

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

|  |  |  |
|---|---|---|
|  |  | six months B&W Exposure prior to December 31, 1982, (3) Significant Occupational Exposure[4] to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. |
| Lung Cancer 2 (Level VI) | None | (1) Diagnosis of a primary lung cancer; (2) B&W Exposure prior to December 31, 1982, and (3) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. |
|  |  | Lung Cancer 2 (Level VI) claims are claims that do not meet the more stringent medical and/or exposure requirements of Lung Cancer 1 (Level VII) claims. All claims in this Disease Level shall be individually evaluated. The estimated likely average of the individual evaluation awards for this category is $15,000, with such awards capped at $50,000 unless the claim qualifies for Extraordinary Claim treatment. |
|  |  | Level VI claims that show no evidence of either an underlying Bilateral Asbestos-Related Non-malignant Disease or Significant Occupational Exposure may be individually evaluated, although it is |

---

1982). For all purposes of this TDP, a "Qualified Physician" is a physician whose is board-certified (or in the case of Canadian claims or Foreign Claims, a physician who is certified or qualified under comparable medical standards or criteria of the jurisdiction in question) in one or more relevant specialized fields of medicine such as pulmonology, radiology, internal medicine or occupational medicine; provided, however, that the requirement for board certification in this provision shall not apply to otherwise qualified physicians whose X-ray and/or CT scan readings are submitted for deceased holders of PI Trust Claims.

[4]     The term "Significant Occupational Exposure" is defined in Section 5.7(b) below.

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

not expected that such claims shall be treated as having any significant value, especially if the claimant is also a Smoker. [5] In any event, no presumption of validity shall be available for any claims in this category.

Other Cancer (Level V)    $18,500

(1) Diagnosis of a primary colo-rectal, laryngeal, esophageal, pharyngeal, or stomach cancer, plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease, (2) six months B&W Exposure prior to December 31, 1982, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the other cancer in question.

Severe Asbestosis (Level IV)    $35,000

(1) Diagnosis of asbestosis with ILO of 2/1 or greater, or asbestosis determined by pathological evidence of asbestos, plus (a) TLC less than 65%, or (b) FVC less than 65% and FEV1/FVC ratio greater than 65%, (2) six months B&W Exposure prior to December 31, 1982, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing

---

[5]    There is no distinction between Non-Smokers and Smokers for either Lung Cancer 1 (Level VII) or Lung Cancer 2 (Level VI), although a claimant who meets the more stringent requirements of Lung Cancer 1 (Level VII) (evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease plus Significant Occupational Exposure), and who is also a Non-Smoker, may wish to have his or her claim individually evaluated by the PI Trust. In such a case, absent circumstances that would otherwise reduce the value of the claim, it is anticipated that the liquidated value of the claim might well exceed the $35,000 Scheduled Value for Lung Cancer 1 (Level VII) shown above. "Non-Smoker" means a claimant who either (a) never smoked or (b) has not smoked during any portion of the twelve (12) years immediately prior to the diagnosis of the lung cancer.

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

|  |  |  |
|---|---|---|
|  |  | asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
| Asbestosis/ Pleural Disease (Level III) | $10,000 | (1) Diagnosis of Bilateral Asbestos-Related Nonmalignant Disease, plus (a) TLC less than 80%, or (b) FVC less than 80% and FEV1/FVC ratio greater than or equal to 65%, and (2) six months B&W Exposure prior to December 31, 1982, (3)  Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
| Asbestosis/ Pleural Disease (Level II) | $5,000 | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease, and (2) six months B&W Exposure prior to December 31, 1982, and (3) five years cumulative occupational exposure to asbestos. |
| Other Asbestos Disease (Level I - Cash Discount Payment) | $250 | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease or an asbestos-related malignancy other than mesothelioma, and (2) B&W Exposure prior to December 31, 1982. |

### 5.3(b)    Individual Review Process.

**5.3(b)(1)  In General.** Subject to the provisions set forth below, a B&W claimant may elect to have his or her PI Trust Claim reviewed for purposes of determining whether the claim would be compensable in the tort system even though it does not meet the presumptive Medical/Exposure Criteria for any of the Disease Levels set forth in

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

Section 5.3(a)(3) above. In addition or alternatively, a B&W claimant may elect to have a claim undergo the Individual Review Process for purposes of determining whether the liquidated value of claim involving Disease Levels IV, V, VII or VIII exceeds the Scheduled Value for the relevant Disease Level also set forth in said provision. However, until such time as the PI Trust has made an offer on a claim pursuant to Individual Review, the claimant may change his or her Individual Review election and have the claim liquidated pursuant to the PI Trust's Expedited Review Process. In the event of such a change in the processing election, the claimant shall nevertheless retain his or her place in the FIFO Processing Queue.

The liquidated value of all Foreign Claims payable under this TDP shall be established only under the PI Trust's Individual Review process. Because PI Trust Claims of individuals exposed in Canada who were resident in Canada when such claims were filed were routinely litigated and resolved in the courts of the United States, and because the resolution history of these claims has been included in developing the Expedited Review Process, such claims shall not be considered Foreign Claims hereunder and shall be eligible for liquidation under the Expedited Review Process. Accordingly, a "Foreign Claim" is a PI Trust Claim with respect to which the claimant's exposure to an asbestos-containing product for which B&W has legal responsibility occurred outside of the United States and its Territories and Possessions, and outside of the Provinces and Territories of Canada.

In reviewing such Foreign Claims, the PI Trust shall take into account all relevant procedural and substantive legal rules to which the claims would be subject in the Claimant's Jurisdiction as defined in Section 5.3(b)(2)(B) below. The PI Trust shall determine the liquidated value of Foreign Claims based on historical settlements and verdicts in the Claimant's Jurisdiction as well as the other valuation factors set forth in Section 5.3(b)(2)(B) below.

- 28 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

For purposes of the Individual Review process for Foreign Claims, the Trustees, with the consent of the TAC and the Future Claimants' Representative, may develop separate Medical/Exposure Criteria and standards, as well as separate requirements for physician and other professional qualifications, which shall be applicable to all Foreign Claims channeled to the PI Trust; provided however, that such criteria, standards or requirements shall not effectuate substantive changes to the claims eligibility requirements under this TDP, but rather shall be made only for the purpose of adapting those requirements to the particular licensing provisions and/or medical customs or practices of the foreign country in question.

At such time as the PI Trust has sufficient historical settlement, verdict and other valuation data for claims from a particular foreign jurisdiction, the Asbestos Trustees, with the consent of the TAC and the Future Claimants' Representative, may also establish a separate valuation matrix for any such Foreign Claims based on that data.

**5.3(b)(1)(A)  Review of Medical/Exposure Criteria.** The PI Trust's Individual Review Process provides a claimant with an opportunity for individual consideration and evaluation of a PI Trust Claim that fails to meet the presumptive Medical/Exposure Criteria for Disease Levels I – V, VII or VIII.  In such a case, the PI Trust shall either deny the claim or, if the PI Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system, the PI Trust can offer the claimant a liquidated value amount up to the Scheduled Value for that Disease Level.

**5.3(b)(1)(B) Review of Liquidated Value.**  Claimants holding claims in the five more serious Disease Levels IV – VIII shall also be eligible to seek Individual Review of the liquidated value of their claims, as well as of their medical/exposure evidence. The Individual

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

Review Process is intended to result in payments equal to the full liquidated value for each claim

multiplied by the Payment Percentage; however, the liquidated value of any PI Trust Claim that

undergoes Individual Review may be determined to be less than the Scheduled Value the

claimant would have received under Expedited Review. Moreover, the liquidated value for a

claim involving Disease Levels IV – VIII shall not exceed the Maximum Value for the relevant

Disease Level set forth in Section 5.3(b)(3) below, unless the claim meets the requirements of an

Extraordinary Claim described in Section 5.4(a) below, in which case its liquidated value cannot

exceed the Maximum Value set forth in that provision for such claims. Because the detailed

examination and valuation process pursuant to Individual Review requires substantial time and

effort, claimants electing to undergo the Individual Review Process shall ordinarily be paid the

liquidated value of their PI Trust Claims later than would have been the case had the claimant

elected the Expedited Review Process.

           **5.3(b)(2)    Valuation Factors to Be Considered in Individual Review.**

The PI Trust shall liquidate the value of each PI Trust Claim that undergoes Individual Review

based on the historic liquidated values of other similarly situated claims in the tort system for the

same Disease Level. The PI Trust shall thus take into consideration all of the factors that affect

the severity of damages and values within the tort system including, but not limited to, (i) the

degree to which the characteristics of a claim differ from the presumptive Medical/Exposure

Criteria for the Disease Level in question; (ii) factors such as the claimant's age, disability,

employment status, disruption of household, family or recreational activities, dependencies,

special damages, and pain and suffering; (iii) evidence that the claimant's damages were (or

were not) caused by asbestos exposure, including exposure to an asbestos-containing product or

- 30 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

to conduct for which B&W has legal responsibility prior to December 31, 1982 (for example, alternative causes, and the strength of documentation of injuries); (iv) the industry of exposure; and (v) settlements, verdicts and the claimant's and other law firms' experience in the Claimant's Jurisdiction for similarly situated claims.

For these purposes, the "Claimant's Jurisdiction" is the jurisdiction in which the claim was filed (if at all) against B&W in the tort system prior to the Petition Date. If the claim was not filed against B&W in the tort system prior to the Petition Date, the claimant may elect as the Claimant's Jurisdiction either (i) the jurisdiction in which the claimant resides at the time of diagnosis or when the claim is filed with the PI Trust; or (ii) a jurisdiction in which the claimant experienced exposure to an asbestos-containing product or to conduct for which B&W has legal responsibility.

With respect to the "Claimant's Jurisdiction" in the event a personal representative or authorized agent makes a claim under this TDP for wrongful death with respect to which the governing law of the Claimant's Jurisdiction could only be the Alabama Wrongful Death Statute, the Claimant's Jurisdiction for such claim shall be the Commonwealth of Pennsylvania, and such claimant's damages shall be determined pursuant to the statutory and common laws of the Commonwealth of Pennsylvania without regard to its choice of law principles. The choice of law provision in Section 7.4 below applicable to any claim with respect to which, but for this choice of law provision, the applicable law of the Claimant's Jurisdiction pursuant to Section 5.3(b)(2) is determined to be the Alabama Wrongful Death Statute, shall only govern the rights between the PI Trust and the claimant, and, to the extent the PI Trust seeks recovery from any

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

entity that provided insurance coverage to B&W, the Alabama Wrongful Death Statute shall govern.

    **5.3(b)(3)**  **Scheduled, Average and Maximum Values.** The Scheduled, Average and Maximum Values for claims involving Disease Levels I – VIII are the following:

| Scheduled Disease | Scheduled Value | Average Value | Maximum Value |
| --- | --- | --- | --- |
| Mesothelioma (Level VIII) | $90,000 | $120,000 | $400,000 |
| Lung Cancer 1 (Level VII) | $35,000 | $ 45,000 | $150,000 |
| Lung Cancer 2 (Level VI) | None | $ 15,000 | $ 50,000 |
| Other Cancer (Level V) | $18,500 | $ 22,500 | $ 75,000 |
| Severe Asbestosis (Level IV) | $35,000 | $ 37,000 | $150,000 |
| Asbestosis/Pleural Disease (Level III) | $10,000 | None | None |
| Asbestosis/Pleural Disease (Level II) | $ 5,000 | None | None |
| Other Asbestos Disease – Cash Discount Payment (Level I) | $   250 | None | None |

   These Scheduled Values, Average Values and Maximum Values shall apply to all PI Trust Voting Claims other than Pre-Petition Liquidated Claims filed with the PI Trust on or before the Initial Claims Filing Date as provided in Section 5.1 above.  Thereafter, the PI Trust, with the consent of the TAC and the Future Claimants' Representative pursuant to Sections 5.7(b) and 6.6(b) of the PI Trust Agreement, may change these valuation amounts for good cause and consistent with other restrictions on the amendment power.

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

### 5.4    Categorizing Claims as Extraordinary and/or Exigent Hardship

5.4(a)    **Extraordinary Claims**. "Extraordinary Claim" means a PI Trust Claim that otherwise satisfies the Medical Criteria for Disease Levels IV - VIII, and that is held by a claimant whose exposure to asbestos was at least 75% the result of exposure to an asbestos-containing product or to conduct for which B&W has legal responsibility, and in either case there is little likelihood of a substantial recovery elsewhere. All such Extraordinary Claims shall be presented for Individual Review and, if valid, shall be entitled to an award of up to a Maximum Value of five (5) times the Scheduled Value set forth in Section 5.3(b)(3) for claims qualifying for Disease Levels IV -V, VII and VIII, and five (5) times the Average Value for claims in Disease Level VI, multiplied by the applicable Payment Percentage.

Any dispute as to Extraordinary Claim status shall be submitted to a special Extraordinary Claims Panel established by the PI Trust with the consent of the TAC and the Future Claimants' Representative. All decisions of the Extraordinary Claims Panel shall be final and not subject to any further administrative or judicial review. An Extraordinary Claim, following its liquidation, shall be placed in the FIFO Queue ahead of all other PI Trust Claims except Pre-Petition Liquidated Claims, Disease Level I Claims and Exigent Hardship Claims, which shall be paid first in that order in said Queue, based on its date of liquidation, subject to the Maximum Available Payment and Claims Payment Ratio described above.

5.4(b)    **Exigent Hardship Claims.** At any time the PI Trust may liquidate and pay PI Trust Claims that qualify as Exigent Hardship Claims as defined below. Such claims may be considered separately no matter what the order of processing otherwise would have been under this TDP. An Exigent Hardship Claim, following its liquidation, shall be placed first in the FIFO Payment Queue ahead of all other liquidated PI Trust Claims except Pre-Petition

- 33 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

Liquidated Claims, and Disease Level I Claims, subject to the Maximum Available Payment and Claims Payment Ratio described above. A PI Trust Claim qualifies for payment as an Exigent Hardship Claim if the claim meets the Medical/Exposure Criteria for Severe Asbestosis (Disease Level IV) or an asbestos-related malignancy (Disease Levels V-VIII), and the PI Trust, in its sole discretion, determines (i) that the claimant needs financial assistance on an immediate basis based on the claimant's expenses and all sources of available income, and (ii) that there is a causal connection between the claimant's dire financial condition and the claimant's asbestos-related disease.

     **5.5**    **Secondary Exposure Claims.** If a claimant alleges an asbestos-related disease resulting solely from exposure to an occupationally exposed person, such as a family member, the claimant may seek Individual Review of his or her claim pursuant to Section 5.3(b) above. In such a case, the claimant must establish that the occupationally exposed person would have met the exposure requirements under this TDP that would have been applicable had that person filed a direct claim against the PI Trust. In addition, the claimant with secondary exposure must establish that he or she is suffering from one of the eight Disease Levels described in Section 5.3(a)(3) above or an asbestos-related disease otherwise compensable under this TDP, that his or her own exposure to the occupationally exposed person occurred within the same time frame as the occupationally exposed person was exposed to an asbestos-containing product or to conduct for which B&W has legal responsibility, and that such secondary exposure was a cause of the claimed disease. All other liquidation and payment rights and limitations under this TDP shall be applicable to such claims.

     **5.6**    **Indirect PI Trust Claims.** Indirect PI Trust Claims asserted against the PI Trust based upon theories of contribution or indemnification under applicable law shall be treated as

- 34 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

presumptively valid and paid by the PI Trust subject to the applicable Payment Percentage if (a) such claim satisfied the requirements of the Bar Date for such claims established by the Bankruptcy Court, if applicable, and is not otherwise disallowed by Section 502(e) of the Code or subordinated under Section 509(c) of the Code, and (b) the holder of such claim (the "Indirect Claimant") establishes to the satisfaction of the Trustees that (i) the Indirect Claimant has paid in full the liability and obligation of the Trust to the individual claimant to whom the PI Trust would otherwise have had a liability or obligation under these Procedures (the "Direct Claimant"), (ii) the Direct Claimant and the Indirect Claimant have forever and fully released the Trust from all liability to the Direct Claimant, and (iii) the claim is not otherwise barred by a statute of limitation or repose or by other applicable law. In no event shall any Indirect Claimant have any rights against the PI Trust superior to the rights of the related Direct Claimant against the PI Trust, including any rights with respect to the timing, amount or manner of payment. In addition, no Indirect Claim may be liquidated and paid in an amount that exceeds what the Indirect Claimant has actually paid the related Direct Claimant.

To establish a presumptively valid Indirect PI Trust Claim, the Indirect Claimant's aggregate liability for the Direct Claimant's claim must also have been fixed, liquidated and paid fully by the Indirect Claimant by settlement (with an appropriate full release in favor of the PI Trust) or a Final Order (as defined in the Plan) provided that such claim is valid under the applicable state law. In any case where the Indirect Claimant has satisfied the claim of a Direct Claimant against the PI Trust under applicable law by way of a settlement, the Indirect Claimant shall obtain for the benefit of the PI Trust a release in form and substance satisfactory to the Trustees.

- 35 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

If an Indirect Claimant cannot meet the presumptive requirements set forth above, including the requirement that the Indirect Claimant provide the PI Trust with a full release of the Direct Claimant's claim, the Indirect Claimant may request that the PI Trust review the Indirect PI Trust Claim individually to determine whether the Indirect Claimant can establish under applicable state law that the Indirect Claimant has paid all or a portion of a liability or obligation that the PI Trust had to the Direct Claimant as of the Effective Date of this TDP. If the Indirect Claimant can show that it has paid all or a portion of such a liability or obligation, the PI Trust shall reimburse the Indirect Claimant the amount of the liability or obligation so paid, times the then applicable Payment Percentage. However, in no event shall such reimbursement to the Indirect Claimant be greater than the amount to which the Direct Claimant would have otherwise been entitled. Further, the liquidated value of any Indirect PI Trust Claim paid by the PI Trust to an Indirect Claimant shall be treated as an offset to or reduction of the full liquidated value of any PI Trust Claim that might be subsequently asserted by the Direct Claimant against the PI Trust.

Any dispute between the PI Trust and an Indirect Claimant over whether the Indirect Claimant has a right to reimbursement for any amount paid to a Direct Claimant shall be subject to the ADR procedures provided in Section 5.10 below and set forth in Attachment A hereto. If such dispute is not resolved by said ADR procedures, the Indirect Claimant may litigate the dispute in the tort system pursuant to Sections 5.11 and 7.6 below.

The Trustees may develop and approve a separate proof of claim form for Indirect PI Trust Claims. Indirect PI Trust Claims that have not been disallowed, discharged, or otherwise resolved by prior order of the Bankruptcy Court shall be processed in accordance with

- 36 -

EXHIBIT B TO PLAN -- ASBESTOS PI TDP

procedures to be developed and implemented by the Trustees consistent with the provisions of

this Section 5.6, which procedures (a) shall determine the validity, allowability and

enforceability of such claims; and (b) shall otherwise provide the same liquidation and payment

procedures and rights to the holders of such claims as the PI Trust would have afforded the

holders of the underlying valid PI Trust Claims.  Nothing in this TDP is intended to preclude a

trust to which asbestos-related liabilities are channeled from asserting an Indirect Asbestos Trust

Claim against the PI Trust subject to the requirements set forth herein.

  **5.7 Evidentiary Requirements**

   **5.7(a) Medical Evidence.**

    **5.7(a)(1) In General.**  All diagnoses of a Disease Level shall be

accompanied by either (i) a statement by the physician providing the diagnosis that at least 10

years have elapsed between the date of first exposure to asbestos or asbestos-containing products

and the diagnosis, or (ii) a history of the claimant's exposure sufficient to establish a 10-year

latency period. A finding by a physician after the Petition Date that a claimant's disease is

"consistent with" or "compatible with" asbestosis shall not alone be treated by the PI Trust as a

diagnosis.

    **5.7(a)(1)(A) Disease Levels I-IV.**  Except for claims filed

against B&W or any other asbestos defendant in the tort system prior to the Petition Date, all

diagnoses of a non-malignant asbestos-related disease (Disease Levels I-IV) shall be based in the

case of a claimant who was living at the time the claim was filed, upon a physical examination of

the claimant by the physician providing the diagnosis of the asbestos-related disease.  All living

claimants must also provide (i) for Disease Levels I-III, evidence of Bilateral Asbestos-Related

- 37 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

Nonmalignant Disease (as defined in Footnote 3 above); (ii)for Disease Level IV,[6] an ILO

reading of 2/1 or greater or pathological evidence of asbestosis, and (iii) for Disease Levels III

and IV, pulmonary function testing.[7]

       In the case of a claimant who was deceased at the time the claim was filed, all

diagnoses of a non-malignant asbestos-related disease (Disease Levels I-IV) shall be based upon

either (i) a physical examination of the claimant by the physician providing the diagnosis of the

asbestos-related disease; or (ii)pathological evidence of the non-malignant asbestos-related

disease; or (iii) in the case of Disease Levels I-III, evidence of Bilateral Asbestos-Related

Nonmalignant Disease (as defined in Footnote 3 above), and for Disease Level IV, either an ILO

reading of 2/1 or greater or pathological evidence of asbestosis; and (iv) for either Disease Level

III or IV, pulmonary function testing.

---

[6]     All diagnoses of Asbestos/Pleural Disease (Disease Levels II and III) not based on pathology shall be presumed to be based on findings of bilateral asbestosis or pleural disease, and all diagnoses of Mesothelioma (Disease Level VIII) shall be presumed to be based on findings that the disease involves a malignancy. However, the PI Trust may rebut such presumptions.

[7]     "Pulmonary Function Testing" or "PFT" shall mean testing that is in material compliance with the quality criteria established by the American Thoracic Society ("ATS") and is performed on equipment which is in material compliance with ATS standards for technical quality and calibration. PFT performed in a hospital accredited by the JCAHO, or performed, reviewed or supervised by a board certified pulmonologist or other Qualified Physician shall be presumed to comply with ATS standards, and the claimant may submit a summary report of the testing. If the PFT was not performed in an JCAHO-accredited hospital, or performed, reviewed or supervised by a board certified pulmonologist or other Qualified Physician, the claimant must submit the full report of the testing (as opposed to a summary report); provided however that if the PFT was conducted prior to the Effective Date of the Plan, and the full PFT report is not available, the claimant must submit a signed declaration in the form provided by the PI Trust certifying that the PFT was conducted in material compliance with ATS standards.

EXHIBIT B TO PLAN -- ASBESTOS PI TDP

**5.7(a)(1)(B). Disease Levels V – VIII.** All diagnoses of an asbestos-related malignancy (Disease Levels V – VIII) shall be based upon either (i) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease, or (ii) on a diagnosis of such a malignant Disease Level by a board-certified pathologist.

**5.7(a)(1)(C). Exception to the Exception for Certain Pre-Petition Claims.** If the holder of a PI Trust Claim that was filed against B&W or any other defendant in the tort system prior to the Petition Date has available a report of a diagnosing physician engaged by the holder or his or her law firm who conducted a physical examination of the holder as described in Sections 5.7(a)(1)(A), or if the holder has filed such medical evidence with another asbestos-related personal injury settlement trust that requires such evidence without regard to whether the claimant or the law firm engaged the diagnosing physician, the holder shall provide such medical evidence to the Trust notwithstanding the exception in Section 5.7(a)(1)(A).

**5.7(a)(2)     Credibility of Medical Evidence.** Before making any payment to a claimant, the PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards. The PI Trust may require the submission of X-rays, CT scans, detailed results of pulmonary function tests, laboratory tests, tissue samples, results of medical examination or reviews of other medical evidence, and may require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods and procedures to assure that such evidence is reliable. Medical evidence (i) that is of a kind shown to have been received in

- 39 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

evidence by a state or federal judge at trial, (ii) that is consistent with evidence submitted to

B&W to settle for payment similar disease cases prior to B&W's bankruptcy, or (iii) that is a

diagnosis by a physician shown to have previously qualified as a medical expert with respect to

the asbestos-related disease in question before a state or federal judge, is presumptively reliable,

although the PI Trust may seek to rebut the presumption.  In addition, claimants who otherwise

meet the requirements of this TDP for payment of a PI Trust Claim shall be paid irrespective of

the results in any litigation at anytime between the claimant and any other defendant in the tort

system. However, any relevant evidence submitted in a proceeding in the tort system, other than

any findings of fact, a verdict, or a judgment, involving another defendant may be introduced by

either the claimant or the PI Trust in any Individual Review proceeding conducted pursuant to

5.3(b) or any Extraordinary Claim proceeding conducted pursuant to 5.4(a).

### 5.7(b)   Exposure Evidence.

**5.7(b)(1)**      **In General.** As set forth above in Section 5.3(a)(3), to

qualify for any Disease Level, the claimant must demonstrate a minimum exposure to an

asbestos-containing product or to conduct for which B&W has legal responsibility. Claims

based on conspiracy theories that involve no such B&W exposure or conduct are not

compensable under this TDP. To meet the presumptive exposure requirements of Expedited

Review set forth in Section 5.3(a)(3) above, the claimant must show (i) for all Disease Levels,

B&W Exposure as defined in Section 5.7(b)(3) below prior to December 31, 1982; (ii) for

Asbestos/Pleural Disease Level II, six months B&W Exposure prior to December 31, 1982, plus

five years cumulative occupational asbestos exposure; and (iii) for Asbestosis/Pleural Disease

(Disease Level III), Severe Asbestosis (Disease Level IV), Other Cancer (Disease Level V) or

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

Lung Cancer 1 (Disease Level VII), the claimant must show six months B&W Exposure prior to

December 31, 1982, plus Significant Occupational Exposure to asbestos. If the claimant cannot

meet the relevant presumptive exposure requirements for a Disease Level eligible for Expedited

Review, the claimant may seek Individual Review pursuant to Section 5.3(b) of his or her claim

based on exposure to an asbestos-containing product or to conduct for which B&W has legal

responsibility.

> **5.7(b)(2)    Significant Occupational Exposure.** "Significant

Occupational Exposure" means employment for a cumulative period of at least five years with a

minimum of two years prior to December 31, 1982, in an industry and an occupation in which

the claimant (a) handled raw asbestos fibers on a regular basis; (b) fabricated asbestos-containing

products so that the claimant in the fabrication process was exposed on a regular basis to raw

asbestos fibers; (c) altered, repaired or otherwise worked with an asbestos-containing product

such that the claimant was exposed on a regular basis to asbestos fibers; or (d) was employed in

an industry and occupation such that the claimant worked on a regular basis in close proximity to

workers engaged in the activities described in (a), (b) and/or (c).

> **5.7(b)(3)    B&W Exposure.** The claimant must demonstrate

meaningful and credible exposure, which occurred prior to December 31, 1982, to asbestos or

asbestos-containing products (including boilers) supplied, specified, manufactured, installed,

maintained, or repaired by B&W and/or any entity, including a B&W contracting unit, for which

B&W has legal responsibility. Working at a site prior to December 31, 1982, in the proximity of

a B&W boiler during a time period in which the PI Trust has established the presence of a B&W

boiler, or in the proximity of the performance of services by a B&W entity, including a B&W

EXHIBIT B TO PLAN -- ASBESTOS PI TDP

contracting unit, shall constitute presumptive evidence of exposure. For other sites, the PI Trust

shall consider meaningful and credible evidence, including an affidavit of the claimant, by an

affidavit of a co-worker or the affidavit of a family member in the case of a deceased claimant

(providing the PI Trust finds such evidence reasonably reliable), by invoices, employment,

construction or similar records, or by other credible evidence. The PI Trust can also require

submission of other or additional evidence of exposure when it deems such to be necessary. The

specific exposure information required by the PI Trust to process a claim under either Expedited

or Individual Review shall be set forth on the proof of claim form to be used by the PI Trust. The

PI Trust can also require submission of other or additional evidence of exposure when it deems

such to be necessary.

    **5.8**   **Claims Audit Program.** The PI Trust, with the consent of the TAC and the

Futures Claimants Representative, may develop methods for auditing the reliability of medical

evidence, including additional reading of X-rays, CT scans and verification of pulmonary

function tests, as well as the reliability of evidence of exposure to asbestos, including exposure to

asbestos-containing products manufactured or distributed by B&W prior to December 31, 1982.

In the event that the PI Trust reasonably determines that any individual or entity has engaged in a

pattern or practice of providing unreliable medical evidence to the Trust, it may decline to accept

additional evidence from such provider in the future.

    Further, in the event that an audit reveals that fraudulent information has been provided

to the PI Trust, the PI Trust may penalize any claimant or claimant's attorney by disallowing the

PI Trust Claim or by other means including, but not limited to, requiring the source of the

fraudulent information to pay the costs associated with the audit and any future audit or audits,

- 42 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

reordering the priority of payment of all affected claimants' PI Trust Claims, raising the level of

scrutiny of additional information submitted from the same source or sources, refusing to accept

additional evidence from the same source or sources, seeking the prosecution of the claimant or

claimant's attorney for presenting a fraudulent claim in violation of 18 U.S.C. §152, and seeking

sanctions from the Bankruptcy Court.

     **5.9**    **Second Disease (Malignancy) Claims**.  The holder of a PI Trust Claim involving

a non-malignant asbestos-related disease (Disease Levels I through IV) may assert a new PI

Trust Claim against the PI Trust for a malignant disease (Disease Levels V – VIII) that is

subsequently diagnosed. Any additional payments to which such claimant may be entitled with

respect to such malignant asbestos-related disease shall not be reduced by the amount paid for

the non-malignant asbestos-related disease, provided that the malignant disease had not been

diagnosed by the time the claimant was paid with respect to the original claim involving the non-

malignant disease.

     **5.10**    **Arbitration**.

     **5.10(a)**    **Establishment of ADR Procedures.**  The PI Trust, with the consent of

the TAC and the Future Claimants' Representative, shall institute binding and non-binding

arbitration procedures in accordance with the Alternative Dispute Resolution ("ADR") Procedures

included in Attachment A hereto for resolving disputes concerning whether a Pre-Petition

settlement agreement with B&W is binding and judicially enforceable in the absence of a Final

Order of the Bankruptcy Court determining the issue, whether the PI Trust's outright rejection or

denial of a claim was proper, or whether the claimant's medical condition or exposure history

meets the requirements of this TDP for purposes of categorizing a claim involving Disease Levels

I – VIII.  Binding and non-binding arbitration shall also be available for resolving disputes over

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

the liquidated value of a claim involving Disease Levels IV – VIII, as well as disputes over

B&W's share of the unpaid portion of a Pre-Petition Liquidated PI Trust Claim described in

Section 5.2 above and disputes over the validity of an Indirect PI Trust Claim.

In all arbitrations, the arbitrator shall consider the same medical and exposure evidentiary

requirements that are set forth in Section 5.7 above. In the case of an arbitration involving the

liquidated value of a claim involving Disease Levels IV – VIII, the arbitrator shall consider the

same valuation factors that are set forth in Section 5.3(b)(2) above. With respect to all claims

eligible for arbitration, the claimant, but not the PI Trust, may elect either non-binding or binding

arbitration. The ADR Procedures set forth in Attachment A hereto may be modified by the PI

Trust with the consent of the TAC and the Future Claimants' Representative.

      **5.10(b)   Claims Eligible for Arbitration.**  In order to be eligible for arbitration,

the claimant must first complete the Individual Review Process with respect to the disputed issue

as well as either the Pro Bono Evaluation or the Mediation processes set forth in to the ADR

Procedures. Individual Review shall be treated as completed for these purposes when the claim

has been individually reviewed by the PI Trust, the PI Trust has made an offer on the claim, the

claimant has rejected the liquidated value resulting from the Individual Review, and the claimant

has notified the PI Trust of the rejection in writing. Individual Review shall also be treated as

completed if the PI Trust has rejected the claim.

      **5.10(c)   Limitations on and Payment of Arbitration Awards.**  In the case of a

non-Extraordinary claim involving Disease Levels I - III, the arbitrator shall not return an award in

excess of the Scheduled Value for such claim. In the case of a non-Extraordinary Claim involving

Disease Levels IV – VIII, the arbitrator shall not return an award in excess of the Maximum Value

for the appropriate Disease Level as set forth in Section 5.3(a)(3) above, and for an Extraordinary

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

Claim involving one of those Disease Levels, the arbitrator shall not return an award greater than the maximum value for such a claim as set forth in Section 5.4(a) above. A claimant who submits to arbitration and who accepts the arbitral award shall receive payments in the same manner as one who accepts the Trust's original valuation of the claim.

     **5.11**   **Litigation.** Claimants who elect non-binding arbitration and then reject their arbitral awards retain the right to institute a lawsuit in the tort system against the PI Trust pursuant to Section 7.6 below. However, a claimant shall be eligible for payment of a judgment for monetary damages obtained in the tort system from the PI Trust's available cash only as provided in Section 7.7 below.

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

## SECTION VI

### Claims Materials

**6.1** **Claims Materials.** The PI Trust shall prepare suitable and efficient claims materials ("Claims Materials") for all PI Trust Claims, and shall provide such Claims Materials upon a written request for such materials to the PI Trust. The proof of claim form to be submitted to the PI Trust shall require the claimant to assert the highest Disease Level for which the claim qualifies at the time of filing. The proof of claim form shall also include a certification by the claimant or his or her attorney sufficient to meet the requirements of Rule 11(b) of the Federal Rules of Civil Procedure. In developing its claim filing procedures, the PI Trust shall make every effort to provide claimants with the opportunity to utilize currently available technology at their discretion, including filing claims and supporting documentation over the internet and electronically by disk or CD-rom. The proof of claim form may be changed by the PI Trust with the consent of the TAC and the Future Claimants' Representative.

**6.2** **Content of Claims Materials.** The Claims Materials shall include a copy of this TDP, such instructions as the Trustees shall approve, and a detailed proof of claim form. If feasible, the forms used by the PI Trust to obtain claims information shall be the same or substantially similar to those used by other asbestos claims resolution organizations. Instead of collecting some or all of the claims information from a claimant or the claimant's attorney, the PI Trust may also obtain such information from electronic data bases maintained by any other asbestos claims resolution organization. However, the PI Trust shall inform the claimant that it plans to obtain information as available from such other organizations and may do so unless the claimant objects in writing or provides such information directly to the PI Trust. If requested by the claimant, the PI Trust shall accept information provided electronically. The claimant may,

EXHIBIT B TO PLAN -- ASBESTOS PI TDP

but shall not be required to, provide the PI Trust with evidence of recovery from other asbestos defendants and claims resolution organizations.

      **6.3**     **Withdrawal or Deferral of Claims**. A claimant can withdraw a PI Trust Claim at any time upon written notice to the PI Trust and file another claim subsequently without affecting the status of the claim for statute of limitations purposes, but any such claim filed after withdrawal shall be given a place in the FIFO Processing Queue based on the date of such subsequent filing. A claimant can also request that the processing of his or her PI Trust Claim by the PI Trust be deferred for a period not to exceed three (3) years without affecting the status of the claim for statute of limitation purposes, in which case the claimant shall also retain his or her original place in the FIFO Processing Queue. Except for PI Trust Claims held by representatives of deceased or incompetent claimants for which court or probate approval of the PI Trust's offer is required, or a PI Trust Claim for which deferral status has been granted, a claim shall be deemed to have been withdrawn if the claimant neither accepts, rejects, nor initiates arbitration within six months of the PI Trust's offer of payment or rejection of the claim. Upon written request and good cause, the PI Trust may extend the withdrawal or deferral period for an additional six months.

      **6.4**     **Filing Requirements and Fees**. The Trustees shall have the discretion to determine, with the consent of the TAC and the Futures Representative, (a) whether a claimant must have previously filed an asbestos-related personal injury claim in the tort system to be eligible to file the claim with the PI Trust and (b) whether a filing fee should be required for any PI Trust claims.

      **6.5**     **Confidentiality of Claimants' Submissions**. All submissions to the PI Trust by a holder of a PI Trust Claim of a proof of claim form and materials related thereto shall be treated

- 47 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

as made in the course of settlement discussions between the holder and the PI Trust, and intended by the parties to be confidential and to be protected by all applicable state and federal privileges, including but not limited to those directly applicable to settlement discussions. The PI Trust will preserve the confidentiality of such claimant submissions, and shall disclose the contents thereof only in response to a valid subpoena of such materials issued by the Bankruptcy Court. The PI Trust shall on its own initiative or upon request of the claimant in question take all necessary and appropriate steps to preserve said privileges before the Bankruptcy Court and before those courts having appellate jurisdiction related thereto.

## SECTION VII

### General Guidelines for Liquidating and Paying Claims

**7.1    Showing Required.**  To establish a valid PI Trust Claim, a claimant must meet the requirements set forth in this TDP. The PI Trust may require the submission of X-rays, CT scans, laboratory tests, medical examinations or reviews, other medical evidence, or any other evidence to support or verify the claim, and may further require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods, and procedures to assure that such evidence is reliable.

**7.2    Costs Considered.**  Notwithstanding any provisions of this TDP to the contrary, the Trustees shall always give appropriate consideration to the cost of investigating and uncovering invalid PI Trust Claims so that the payment of valid PI Trust Claims is not further impaired by such processes with respect to issues related to the validity of the medical evidence supporting a PI Trust Claim.  The Trustees shall also have the latitude to make judgments regarding the amount of transaction costs to be expended by the PI Trust so that valid PI Trust

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

Claims are not unduly further impaired by the costs of additional investigation. Nothing herein shall prevent the Trustees, in appropriate circumstances, from contesting the validity of any claim against the PI Trust whatever the costs, or to decline to accept medical evidence from sources that the Trustees have determined to be unreliable pursuant to the Claims Audit Program described in Section 5.8 above.

      **7.3    Discretion to Vary the Order and Amounts of Payments in Event of Limited Liquidity.** Consistent with the provisions hereof and subject to the FIFO Processing and Liquidation Queues, the Maximum Annual Payment, the Maximum Available Payment and the Claims Payment Ratio requirements set forth above, the Trustees shall proceed as quickly as possible to liquidate valid PI Trust Claims, and shall make payments to holders of such claims in accordance with this TDP promptly as funds become available and as claims are liquidated, while maintaining sufficient resources to pay future valid claims in substantially the same manner.

      Because the PI Trust's income over time remains uncertain, and decisions about payments must be based on estimates that cannot be done precisely, they may have to be revised in light of experiences over time, and there can be no guarantee of any specific level of payment to claimants. However, the Trustees shall use their best efforts to treat similar claims in substantially the same manner, consistent with their duties as Trustees, the purposes of the PI Trust, the established allocation of funds to claims in Categories A and B, and the practical limitations imposed by the inability to predict the future with precision.

      In the event that the PI Trust faces temporary periods of limited liquidity, the Trustees may, with the consent of the TAC and the Future Claimants' Representative, suspend the

EXHIBIT B TO PLAN -- ASBESTOS PI TDP

normal order of payment and may temporarily limit or suspend payments altogether, and may

offer a Reduced Payment Option as described in Section 2.5 above.

      **7.4    Punitive Damages.**  Except as provided below for claims asserted under the

Alabama Wrongful Death Statute, in determining the value of any liquidated or unliquidated PI

Trust Claim, punitive or exemplary damages, i.e., damages other than compensatory damages,

shall not be considered or allowed, notwithstanding their availability in the tort system.

      Similarly, no punitive or exemplary damages shall be payable with respect to any claim

litigated against the PI Trust in the tort system pursuant to Sections 5.11 above and 7.6 below.

The only damages that may be awarded pursuant to this TDP to Alabama Claimants who are

deceased and whose personal representatives pursue their claims only under the Alabama

Wrongful Death Statute shall be compensatory damages determined pursuant to the statutory and

common law of the Commonwealth of Pennsylvania, without regard to its choice of law

principles.  The choice of law provision in Section 7.4 herein applicable to any claim with

respect to which, but for this choice of law provision, the applicable law of the Claimant's

Jurisdiction pursuant to Section 5.3(b)(2) is determined to be the Alabama Wrongful Death

Statute, shall only govern the rights between the PI Trust and the claimant including, but not

limited to, suits in the tort system pursuant to Section 7.6, and to the extent the PI Trust seeks

recovery from any entity that provided insurance to B&W, the Alabama Wrongful Death Statute

shall govern.

      **7.5    Interest.**

      **7.5(a)    In General.**  Except for any PI Trust Claim involving Other Asbestos

Disease (Disease Level I – Cash Discount Payment) and subject to the limitations set forth

below, interest shall be paid on all PI Trust Claims with respect to which the claimant has had to

EXHIBIT B TO PLAN -- ASBESTOS PI TDP

wait a year or more for payment, provided, however, that no claimant shall receive interest for a period in excess of seven (7) years. The initial interest rate shall be six percent (6%) simple interest per annum for each of the first five (5) years after the Effective Date; thereafter, the PI Trust shall have the discretion to change the annual interest rate with the consent of the TAC and the Future Claimants' Representative.

        **7.5(b)**      **Unliquidated PI Trust Claims.**  Interest shall be payable on the Scheduled Value of any unliquidated PI Trust Claim that meets the requirements of Disease Levels II – V, VII and VIII, whether the claim is liquidated under Expedited Review, Individual Review, or by arbitration. No interest shall be paid on any claim involving Disease Level I or on any claim liquidated in the tort system pursuant to Section 5.11 above and Section 7.6 below. Interest on an unliquidated PI Trust Claim that meets the requirements of Disease Level VI shall be based on the Average Value of such a claim. Interest on all such unliquidated claims shall be measured from the date of payment back to the earliest of the date that is one year after the date on which (a) the claim was filed against B&W prior to the Petition Date; (b) the claim was filed against another defendant in the tort system on or after the Petition Date but before the Effective Date; (c) the claim was filed with the Bankruptcy Court during the pendency of the Chapter 11 proceeding; or (d) the claim was filed with the PI Trust after the Effective Date.

        **7.5(c)**      **Liquidated Pre-Petition Claims.**  Interest shall also be payable on the liquidated value of all Pre-Petition Liquidated Claims described in Section 5.2(a) above.  In the case of Pre-Petition Liquidated Claims liquidated by verdict or judgment, interest shall be measured from the date of payment back to the date that is one year after the date that the verdict or judgment was entered.  In the case of Pre-Petition Liquidated Claims liquidated by a binding,

- 51 -

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

judicially enforceable settlement, interest shall be measured from the date of payment back to the
date that is one year after the Petition Date.

      **7.6**     **Suits in the Tort System.** If the holder of a disputed claim disagrees with the PI
Trust's determination regarding the Disease Level of the claim, the claimant's exposure history
or the liquidated value of the claim, and if the holder has first submitted the claim to non-binding
arbitration as provided in Section 5.10 above, the holder may file a lawsuit in the Claimant's
Jurisdiction as defined in Section 5.3(b)(2) above. Any such lawsuit must be filed by the
claimant in her or her own right and name and not as a member or representative of a class, and
no such lawsuit may be consolidated with any other lawsuit. All defenses (including, with
respect to the PI Trust, all defenses which could have been asserted by B&W) shall be available
to both sides at trial; however, the PI Trust may waive any defense and/or concede any issue of
fact or law. If the claimant was alive at the time the initial pre-petition complaint was filed or on
the date the proof of claim form was filed with the PI Trust, the case shall be treated as a
personal injury case with all personal injury damages to be considered even if the claimant has
died during the pendency of the claim.

      **7.7**     **Payment of Judgments for Money Damages.** If and when a claimant obtains a
judgment in the tort system, the claim shall be placed in the FIFO Payment Queue based on the
date on which the judgment became final. Thereafter, the claimant shall receive from the PI Trust
an initial payment (subject to the applicable Payment Percentage, the Maximum Available
Payment, and the Claims Payment Ratio provisions set forth above) of an amount equal to one-
hundred percent (100%) of the greater of (i) the PI Trust's last offer to the claimant or (ii) the
award that the claimant declined in non-binding arbitration. The claimant shall receive the
balance of the judgment, if any, in five equal installments in years six (6) through ten (10)

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

following the year of the initial payment (also subject to the applicable Payment Percentage, the Maximum Available Payment and the Claims Payment Ratio provisions above).

In the case of non-Extraordinary claims involving Disease Levels I, II and III, the total amounts paid with respect to such claims shall not exceed the relevant Scheduled Value for such Disease Levels as set forth in Section 5.3(b)(3) above. In the case of claims involving a non-malignant asbestos-related disease that does not attain classification under Disease Levels I, II or III, the amount payable shall not exceed the Scheduled Value for the Disease Level most comparable to the disease proven. In the case of non-Extraordinary claims involving severe asbestosis and malignancies (Disease Levels IV – VIII), the total amounts paid with respect to such claims shall not exceed the Maximum Values for such Disease Levels set forth in Section 5.3(b)(3). In the case of Extraordinary Claims, the total amounts paid with respect to such claims shall not exceed the Maximum Value for such claims set forth in Section 5.4(a) above. Under no circumstances shall interest be paid pursuant to Section 7.5 or under any statute on any judgments obtained in the tort system.

    **7.8    Releases.** The Trustees shall have the discretion to determine the form and substance of the releases to be provided to the PI Trust in order to maximize recovery for claimants against other tortfeasors without increasing the risk or amount of claims for indemnification or contribution from the PI Trust. As a condition to making any payment to a claimant, the PI Trust shall obtain a general, partial, or limited release as appropriate in accordance with the applicable state or other law. If allowed by state law, the endorsing of a check or draft for payment by or on behalf of a claimant shall constitute such a release.

    **7.9    Third-Party Services.** Nothing in this TDP shall preclude the PI Trust from contracting with another asbestos claims resolution organization to provide services to the PI

EXHIBIT B TO PLAN -- ASBESTOS PI TDP

Trust so long as decisions about the categorization and liquidated value of PI Trust Claims are

based on the relevant provisions of this TDP, including the Disease Levels, Scheduled Values,

Average Values, Maximum Values, and Medical/Exposure Criteria set forth above.

      **7.10**    **PI Trust Disclosure of Information.**  Periodically, but not less often than once a

year, the PI Trust shall make available to claimants and other interested parties, the number of

claims by Disease Levels that have been resolved both by the Individual Review Process and by

arbitration as well as by litigation in the tort system indicating the amounts of the awards and the

averages of the awards by jurisdiction.

**SECTION VIII**

**Miscellaneous**

      **8.1**    **Amendments**.  Except as otherwise provided herein, the Trustees may amend,

modify, delete, or add to any provisions of this TDP (including, without limitation, amendments

to conform this TDP to advances in scientific or medical knowledge or other changes in

circumstances), provided they first obtain the consent of the TAC and the Future Claimants'

Representative pursuant to the Consent Process set forth in Sections 5.7(b) and 6.6(b) of the PI

Trust Agreement, except that the right to amend the Claims Payment Ratio is governed by the

restrictions in Section 2.5 above, and the right to adjust the Payment Percentage is governed by

Section 4.2 above.

      **8.2**    **Severability.**  Should any provision contained in this TDP be determined to be

unenforceable, such determination shall in no way limit or affect the enforceability and operative

effect of any and all other provisions of this TDP. Should any provision contained in this TDP be

determined to be inconsistent with or contrary to B&W's obligations to any insurance company

providing insurance coverage to B&W in respect of claims for personal injury based on exposure

**EXHIBIT B TO PLAN -- ASBESTOS PI TDP**

to an asbestos-containing product or to conduct for which B&W has legal responsibility, the PI

Trust with the consent of the TAC and the Future Claimants' Representative may amend this

TDP and/or the PI Trust Agreement to make the provisions of either or both documents

consistent with the duties and obligations of B&W to said insurance company.

     **8.3**     **Governing Law.**  Except for purposes of determining the liquidated value of any

PI Trust Claim, administration of this TDP shall be governed by, and construed in accordance

with, the laws of the State of Delaware.  The law governing the liquidation of PI Trust Claims in

the case of Individual Review, arbitration or litigation in the tort system shall be the law of the

Claimant's Jurisdiction as described in Section 5.3(b)(2) above.