# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 01-1139 (JKF) |
|  | ) |  |
|  | ) | Chapter 11 |
| W. R. GRACE & CO., *et al.,* | ) |  |
|  | ) | (Jointly Administered) |
|  | ) |  |
| Debtors. | ) |  |

**<u>DECLARATION OF DANIEL J. DONNELLON</u>**

Daniel J. Donnellon, pursuant to 17 U.S.C. § 1746, hereby declares as follows:

1.       I am a partner in the law firm of Keating Muething & Klekamp PLL and in that capacity serve as counsel to the Celotex Asbestos Settlement Trust (the "Celotex Trust"). I am over eighteen (18) years of age.  I have first-hand knowledge of the facts contained in this Declaration and am competent to testify about them.

2.       On February 5, 2007, the Celotex Trust received from Debtors' counsel a subpoena to compel the Celotex Trust to produce someone to testify on its behalf and to produce several categories of documents set forth in an attachment.  Among other items, the subpoena requested over 56,000 claims files, including confidential medical and settlement information, and access to the Trust's proprietary claims database.

3.       On February 16, 2007, I wrote to Debtors' counsel setting forth the formal written objection pursuant to Rule 45 of the Federal Rules of Civil Procedure.  (*See* letter from Daniel J. Donnellon to David E. Mendelson, February 16, 2007, Attachment 1).  This timely written objection suspended any obligation of the Celotex Trust to produce documents in response to the subpoena until after the objections were resolved.  In addition, the written

objection placed upon the Debtors the obligation to exhaust extrajudicial means to resolve the discovery dispute before moving the court to compel production in response to the subpoena.

4.    Debtors' counsel did not immediately respond substantively.  After several weeks, Debtors' requested, and the parties arranged, for a telephone conference among counsel scheduled for March 12, 2007.  During that telephone conference, counsel for Debtors agreed to provide transcripts which they claimed suggested the Court had already authorized discovery from various asbestos trusts.  Debtors' counsel also agreed to correct certain errors in the subpoena attachment, including that the subpoena sought documents from a completely different trust.  Debtors' counsel further clarified that they are not seeking internal claims processing materials and were limiting their information to W. R. Grace claimants.  We agreed to produce a number of documents responsive to their request provided that the other objections could be amicably resolved.  Counsel debated the other objections set forth in the February 16, 2007 letter without resolution.

5.    I confirmed the discussions in the March 12, 2007 conference call in a letter dated March 13, 2007 sent to Debtors' counsel as an email attachment.  (*See* letter from Daniel J. Donnellon to Amanda Basta and Ellen Ahern, March 13, 2007, Attachment 2).

6.    Other than correcting the errors in the subpoena, providing some transcripts, and sending a draft protective order, Debtors' counsel took no action to enforce the subpoena and engaged in no follow-up conversations to resolve the objections for over ten weeks.  On May 21, 2007 the subpoena issued to the Celotex Trust suddenly gained the attention of Debtors' counsel.  Debtors' counsel sent a letter dated May 21, 2007 to counsel for the Celotex Trust.  (*See* letter from Ellen Ahern to Daniel J. Donnellon, May 21, 2007, sent via email Attachment 3).

7.      That same day, May 21, 2007, I responded to Debtors' counsel stating that I was puzzled by the sudden renewed interest in the information from the Celotex Trust and suggesting another conference call to attempt to resolve the still-pending objections and concerns.  (*See* email correspondence from Daniel J. Donnellon, May 21, 2007, Attachment 4).

8.      On June 5, 2007 counsel for the Celotex Trust and Debtors' counsel engaged in a conference call in which we suggested a number of compromise positions that would provide Debtors' counsel with sufficient relevant information without imposing undue burden on the Celotex Trust or risking the dissemination of proprietary information.  Debtors' counsel promised to consider the Trust's proposals to amicably resolve the matter.

9.      On June 7, 2007, I confirmed the discussions on the conference call via another letter to Debtors' counsel.  I enclosed a draft protective order slightly different from Debtors' draft and based upon a protective order used in another asbestos-related bankruptcy case.  I also offered to produce certain information that could be gleaned from the database, that is relevant to the W.R. Grace estimation of asbestos personal injury claims, without risking dissemination of proprietary information.  We also agreed to produce certain claim information provided to the Celotex Trust by W.R. Grace claimants with the assumption that Debtors would pay the cost of the production and obtain sufficient notice or consent from the individual claimants to release their records.  (*See* letter from Daniel J. Donnellon to Ellen Ahern and Amanda Basta, June 7, 2007, Attachment 5).  The letter reiterated the Celotex Trust's  proposal to amicably resolve the outstanding issues with respect to the subpoena.

10.     On June 15, 2007, I again wrote to Debtors' counsel.  I explained technical issues associated with the Celotex Trust's compliance with the subpoena.  I also explained the very limited nature of the information that could be extracted from the Celotex Trust's database.

(*See* letter from Daniel J. Donnellon to Ellen Ahern and Amanda Basta, June 15, 2007, Attachment 6).

11.     Debtors' counsel did not respond to either my June 7 or June 15 letter. Instead, over two weeks after the last phone call, Debtors' counsel sent a cursory email on June 22, 2007, while I was out of the office.  In that email, Debtors' counsel abandoned any effort to negotiate a compromise on the outstanding issues.  Remarkably, Debtors counsel completely refused to address any of the substance of the objections discussed during the June 5, 2007 conference call and confirmed in my June 7, 2007 letter and made no effort to explain why the offer to compromise the production was somehow deficient for Debtors' purposes.  (*See* email from Ellen Ahern to Daniel J. Donnellon, June 22, 2007, Attachment 7).   The email further stated that the draft protective order that we had provided was unsatisfactory, but failed to detail Debtors' concerns with the protective order.

12.      When I returned to the office on July 2, 2007, I promptly responded to Ms. Ahern's email, suggesting another conference call to address the differences in the protective order and expressing disappointment that Debtors' counsel would not respond to the substance of any of the other objections.  (*See* email Daniel J. Donnellon to Ellen Ahern, July 2, 2007, Attachment 8).  Later that same day I was served with a large packet of documents via regular US mail, including the motion to compel against the Celotex Trust and the request to shorten the otherwise expedited briefing schedule.

13.     In light of the Independence Day holiday, several attorneys who are directly and integrally involved in this matter for the Celotex Trust, are out of the office this week and will not be able to participate in the briefing if the expedited schedule is granted. In addition, counsel's office was closed half the day July 3rd and all day July 4th. Because of the

lack of any exigency for immediate consideration of this motion, any shortening of the Celotex

Trust's time to respond to the motion will be prejudicial to the Celotex Trust.

I declare under penalty of perjury that the foregoing is true and correct.  Executed

this 5th day of July, 2007.


_____/s/ Daniel J. Donnellon_____
Daniel J. Donnellon

**ATTACHMENT 1**

# KMK | Keating Muething & Klekamp PLL

ATTORNEYS AT LAW

**DANIEL J. DONNELLON**
DIRECT DIAL: (513) 579-6408
FACSIMILE: (513) 579-6457
E-MAIL: DDONNELLON@KMKLAW.COM

February 16, 2007

Via Facsimile and U.S. Mail

David E. Mendelson, Esquire
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005

      Re:    **W.R. Grace & Co., et al.**
                **United States Bankruptcy Court**
                **For the District of Delaware**
                **Case No.: 01-01139 (JFK)**
                **Chapter 11**

Dear Mr. Mendelson:

      I write in response to your inquiry of the Celotex Asbestos Settlement Trust (the "Trust") in the form of a federal subpoena served upon the Trust on February 5, 2007 from the Delaware Bankruptcy Court. The subpoena seeks to compel the Trust to produce someone to testify on its behalf and to produce the categories of documents set forth in Attachment "A". Attachment "A", however, does not relate in any way to the Celotex Trust and the Trust, therefore, is not in possession of any documents responsive to the subpoena.

      Assuming the erroneous definitions in the attachment can be corrected to apply to the Trust, I will address other issues with the subpoena. The subpoena states that it was issued under authorization of the Federal Rules of Civil Procedure, specifically Rule 45(c) (2) (B). Pursuant to the terms of that rule as set forth in the subpoena, the Trust submits this "written objection" to the command to produce any documents that may be responsive for the reasons set forth below.

      First, the court presiding over the Delaware Asbestos MDL, the Delaware Superior Court (New Castle County) has ruled on whether the Trust should be compelled to produce documents that are readily available from other sources, namely the parties in the underlying litigation. *In Re Asbestos Litigation, Chester Link v. Ahlstrom Pumps, L.L.C.* 06M-10-061, (December 7, 2006). For convenience, I attach the transcript of that proceeding, which serves as the court's opinion denying a motion to compel the trust to produce the claimant file. In that matter, the Court denied Owens Illinois' motion to compel the Trust to produce a claimant file relating to a

David E. Mendelson, Esquire
February 16, 2007
Page 2

subpoena virtually identical, but much narrower in scope, to the one referenced above. The Court plainly stated that Delaware Civil Rule 26, identical in material respects to the federal rule, provides protection against duplicative discovery readily available without burdening the innocent third party and a subpoena such as this should not be enforced against the Trust when the subpoenaing party can get the documents elsewhere. We expect that the Bankruptcy Court would agree with this reasoning.

Second, the subpoena also makes a broad request for certain claim information that may be stored electronically. The Trust must resist such wholesale requests for access to its claims data base. The Advisory Committee Notes to the 2006 "e-discovery" amendment to Rule 45 specifically states that the ability to subpoena electronic information "is not meant to create a routine right of direct access to a person's electronic information system. . . . Courts should guard against undue intrusiveness resulting from inspecting or testing such systems." In addition, the collection, sorting and storing of data relating to claims is proprietary information belonging to the Trust. Unlike some other claims processing facilities, the Celotex Trust has never licensed or sold its data and it should not be the subject to access by way of subpoena.

Third, the only documents or data in the possession of the Trust relating to the claimants are documents or data submitted to the Trust by claimants for settlement purposes only. The express terms of the Trust's Claims Resolution Procedures require the Trust to keep this information confidential.

Fourth, the subpoena is overly burdensome. The CD-Rom attached to the subpoena purporting to list more than 56,000 claimants contains only first name and four digits of a social security number and is in a Portable Document File ("PDF") format. The Trust is not able to use a PDF file to electronically search its database and would have to have an employee manually enter the name to query the database to determine whether a claim exists and the location of any responsive document. To simply input the data to determine whether a claim exists would require many man-hours. Thereafter, once the Trust determined the existence and location of the files, retrieval could take many more man hours.

Finally, you should be aware of the injunctions issued by the United States Bankruptcy Court for the Middle District of Florida as part of the Celotex Plan of Reorganization. On December 6, 1996 that court entered the Order Confirming the Plan of Reorganization for The Celotex Corporation and Carey Canada Inc. (the "Confirmation Order"), which confirmed the Modified Joint Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code for The Celotex Corporation and Carey Canada Inc. Thereafter, by order dated March 4, 1997, the United States District Court for the Middle District of Florida affirmed and issued the Confirmation Order. The injunctions included in the Confirmation Order specifically limits "the employment of process" against the Trust. The Trust hereby reserves all its rights under those injunctions.

David E. Mendelson, Esquire
February 16, 2007
Page 3


     In light of this written objection, W.R. Grace & Company will not be permitted to inspect and copy the documents or other information requested by the subpoena. I would like to speak with you about the deposition you request and our concerns about the data base and confidential claims resolution processes you seek to inquire about. At that time I would be glad to explain further the legal and practical difficulties for the Trust in responding to these document requests.

     Please notify me of your withdrawal of the subpoena.

Very truly yours,

KEATING MUETHING & KLEKAMP PLL

By: _____
Daniel J. Donnellon

DJD:kdt

# ATTACHMENT 2



**KMK** | **Keating Muething & Klekamp** PLL
ATTORNEYS AT LAW

**DANIEL J. DONNELLON**
DIRECT DIAL: (513) 579-6408
FACSIMILE: (513) 579-6457
E-MAIL: DDONNELLON@KMKLAW.COM

March 13, 2007

<u>Via Email & U.S. Mail</u>

Amanda Basta, Esq.                    Ellen Ahern, Esq.
Kirkland & Ellis                      Kirkland & Ellis
655 Fifteenth Street, N.W.            200 East Randolph Drive
Washington, D.C. 20005-5793           Chicago, Illinois 60601-6636

     Re:    **W.R. Grace & Co., et al.**
            **United States Bankruptcy Court**
            **For the District of Delaware**
            **Case No.: 01-01139 (JFK)**
            **Chapter 11**

Dear Counselors:

We appreciate your participation in yesterday's teleconference regarding the subpoena W.R. Grace & Co., ("Grace") served upon the Celotex Trust (the "Trust"). For our very first discussion of any kind relating to this subpoena, I was pleased with the progress, although we remain some distance away from an agreement to produce any documents or information responsive the request. This letter memorializes the substance of the discussion.

We first addressed our objections relating to the confusing definitions and instructions that render the subpoena defective. You agreed to re-serve the subpoena with the appropriate corrections. I will accept the service of process for the Trust. As part of the process of clarifying that confusion, you confirmed that Grace does not seek information pertaining to the Trust's specific claim evaluation process, decisions to pay a claim, or the amount of any payment.

We then discussed the manner in which the supporting data for the subpoena is provided and the ability to convert it to machine readable form. You agreed to provide the detain a form that would be machine readable to the Trust, and I suggested a .txt or .sql format. Once we receive the information in an appropriate format, we will determine whether we can match up any claim requests. Until we can match up the data electronically, there is obviously nothing we can produce with respect to claimant information. Once again, having only a name and partial social security number could prove problematic, but we cannot know this until we have machine readable data because the current format would require prohibitively burdensome manual data entry.

We next discussed our objection relating to burden on the trust in light of this information being readily available from other sources. You contend Judge Fitzgerald authorized Grace to

Amanda Basta, Esq.
Ellen Ahern
March 13, 2007
Page 2

pursue redundant discovery, regardless of the burden on a third party, in order to test the veracity of Grace claimants. I have reviewed many of the Grace transcripts and I am unfamiliar with such a ruling. We stand by our objection that such a position is at odds with federal case law and the persuasive authority of the Delaware Asbestos MDL in the Link transcript of we previously provided to you. You agreed to provide us a copy of the transcript of which you spoke and we agreed to review it and revisit the objection.

If we can match requests to claims made against the Trust, we then must evaluate whether and to what extent the Trust can produce claimant information. I specifically stated that the Trust does not intend to produce its entire claims database. You agreed that the Trust's databases are proprietary and confidential, but you contend it is not immune to discovery. We both concurred that we could not resolve that question at the present time without knowing the extent, if any, of relevant claimant information the Trust has. Once we have analyzed the machine readable data, we will revisit this question as well. You also agreed that Request Number One would be limited to information about Grace claimants only.

Even if we can come to some consensus on the burden and confidentiality issues, I raised another potential hurdle we must overcome. As part of its claim analysis process, the Trust has committed to its beneficiaries to preserve the confidentiality of claimant information. The Trust indicated its concern that simple compliance with the subpoena, without consent of or notice to the claimants or their counsel, could violate that commitment. You stated that Judge Fitzgerald ruled upon a similar issue relating to medical records subpoenaed directly from medical doctors. You directed us to the February 20, 2006 hearing where Judge Fitzgerald heard arguments on this matter relating to a subpoena served on a physician. You contend Judge Fitzgerald found that notice to the service list in the proceeding constituted sufficient notice to the claimants such that silence would equate to tacit consent. I requested that you supply copies of all briefs, objections, and orders relating to that issue.

We next turned to Document Request Two which seeks information pertaining to the Trust's decision to suspend or ban certain physicians from submitting reports. To the extent the request seeks publicly available information, Grace is asking only that the documents be authenticated. To the extent there are any privileged documents withheld, Grace will expect the Trust to produce a privilege log. Similarly, the request pertaining to the review and evaluation of claims seeks the publicly available Third Amended Asbestos Personal Injury Claims Resolution Procedures. The Trust can provide a witness to authenticate this document. In this respect, you anticipate any 30(b)(6) deposition would be limited in scope and you left open the possibility of conducting the deposition in written form.

We then addressed requests three through five which target information that might be gleaned from the totality of information in the Trust's resources relating to all Trust claimants, not just those claimants who also submitted claims to Grace. This information relates to your

Amanda Basta, Esq.
Ellen Ahern
March 13, 2007
Page 3

request for "top 25" lists of the most prolific diagnosticians, B-readers and the like. I informed you that I do not believe the Trust routinely generates such information and sees no need to create reports not maintained in the ordinary course of business for the sole purpose of responding to a subpoena. You maintained that if "top 25" doctor lists can be easily generated, then you would expect the Trust to comply with your request and create such a list for your review. We do not believe that a third party has an obligation to create documents that do not already exist in order to respond to a subpoena no matter how facile the requesting party views the task. Nonetheless, we committed to researching whether the Trust maintains such "top 25" lists. You acknowledged that the Trust is not obligated to produce anything that would take significant manpower to create or produce.

You stated that Grace will be responsible for reasonable costs and expenses the Trust incurs responding to the subpoena. But, you acknowledged the Trust has not agreed to produce any documents, tangible things, or deponent in response to the subpoena at this time. The Trust will further consider its response to Grace's requests based upon a review of the additional information you have agreed to provide and consideration of the immediate and prospective burdens compliance might engender. Grace and the Trust agreed to resume the dialogue once Grace submits the above information to the Trust and the Trust has had the opportunity to fully assess the burden of complying with the subpoena.

Finally, while we address these issues, you also expressed your willingness to enter into a protective order and agreed to provide me with a draft protective order for my review and mark up and to provide a copy of the objections, formal or informal, that Grace has received from claimants regarding the subpoena issued to the Trust

Very truly yours,

KEATING MUETHING & KLEKAMP PLL

By: _____
        Daniel J. Donnellon

DJD:kdt

cc:    R. Patrick DeWine
        Charles M. Miller

**ATTACHMENT 3**

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Ellen Therese Ahern
To Call Writer Directly:
312 861-2335
eahern@kirkland.com

(312) 861-2000

www.kirkland.com

Facsimile:
(312) 861-2200

May 21, 2007

**VIA FEDERAL EXPRESS AND
ELECTRONIC DELIVERY**

Daniel J. Donnellon
Keating Meuthing and Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, OH  45202

Re:     *W.R. Grace & Co. -- Celotex Subpoena*

Dear Daniel:

This letter is intended to follow up on my March 14 letter and is in further response to
your March 13 letter and emails.

### General Objections Regarding Relevance and Burden

On March 12, we discussed certain objections raised by the Trust regarding Grace's
efforts to obtain discovery from the Trust as opposed to (or in addition to) direct discovery from
the Grace claimants.  We expressed our position that Grace is entitled to seek discovery
regarding whether claimants had submitted additional, different or conflicting data and
information to the Trust than what was produced in connection with the Bankruptcy.  We noted
that the subpoena was issued out of the Delaware Bankruptcy Court, and also noted that this
Court had allowed Grace to pursue various non-party discovery for such purposes.  Thus, as we
noted in March, Grace's position is that such discovery is relevant and would not pose an undue
burden.

As we discussed during our meet and confer call on March 12, the Court has allowed
discovery into the basis of the asbestos-personal injury claims that had been brought against
W.R. Grace & Co. at the time it filed for bankruptcy protection in April 2001.  This discovery
has not been limited to the direct discovery of the claimants, but instead has included broader
evidence that may be used to support personal injury and estimation expert opinions.  *See, e.g.,*
7/24/06 Hr'g Tr. at 52-53; *see also* 6/19/06 Hr'g Tr. at 87.  The Court has articulated its guiding
principles as to what discovery it will allow, stating:

> ...in looking at relevance I am looking at what the experts may need, and it still
> seems to me that your -- the exposure history may be relevant to an expert in

**KIRKLAND & ELLIS LLP**

Daniel J. Donnellon
May 21, 2007
Page 2

> terms of figuring out what the funding for a trust may be. And since I can't at this
> point opine what the experts are going to want to know and discovery is
> reasonable, if it is calculated to lead to relevant, admissible evidence, and this
> may be relevant and admissible evidence, I have to determine that it's relevant.
> 9/11/06 Hr'g Tr. at 251

> [T]hey [experts] want to see the other exposure information, and that seems to me
> to be relevant. *Id.* at 206.

Likewise, the test for relevance under Federal Rule 26(b) is not, of course, whether related or
similar discovery has been produced from other sources, but whether the subject of the request
"appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P.
26(b)(1). Grace's subpoena requests easily meet this standard.

Consistent with these principles, the Court has not only allowed non-party discovery, but
has encouraged it as an alternative means of obtaining information related to the claimants. The
issue has been raised on several occasions before the Court. The Court has explicitly condoned
Grace's seeking non-party discovery of information related to the medical bases for individual
claims from the doctors and screening companies responsible for generating those claims.
10/24/05 Hr'g Tr. at 75-76 ("[T]ake the depositions of the doctors. Because they're the ones
who got paid and gave the diagnosis. And it's their testimony you're trying to challenge."); *id.* at
78. The Court acknowledged the possibility that discovery may be taken of the law firms to the
extent that they had relevant information that Grace could not obtain from the Claimants
themselves. *See id.* at 82 ("If you've got need for specific discovery [from attorneys], focused
on a specific area, you can take it and we'll deal with it piecemeal."), 85.

Discovery of asbestos claim trusts such as Celotex should be no different, and would in
fact, likely pose fewer potential confidentiality, privilege and burden issues than law firm
discovery. In fact, some of these observations were made in the express context of non-party
discovery of trusts. The Court suggested that, in order to get exposure information, Grace should
"subpoena[] some of this information from the trust." 9/11/06 Hr'g Tr. at 259. Indeed, the Court
suggested that discovery from the trusts would be *less burdensome* than from the individual
claimants, as the trusts maintain the information "in an electronic format." *Id.* at 261.

In sum, the Court has preferred to allow claimant-specific discovery from non-parties
within the context of an appropriate protective order rather than to foreclose discovery on
relevance, privacy or privilege grounds. *See* 12/19/06 Hr'g Tr. at 19-20; 2/13/07 Hr'g Tr. at 18,
lines 13-21 ("The reality is this is litigation. The debtor needs this discovery. The debtor's going
to get the discovery . . ."). Given this context, we believe the Court would allow the trust
discovery Grace seeks here.

## KIRKLAND & ELLIS LLP

Daniel J. Donnellon
May 21, 2007
Page 3


### Confidentiality Issues and Draft Protective Order

On March 14, we sent you a draft protective order for your review and offered to file an agreed motion for its entry with the Bankruptcy Court in order to facilitate the Trust's production of documents. We never heard back from you with comments on the draft. We believe the draft protective order that we sent should resolve your concerns regarding confidentiality. Please let us know if you have comments or revisions.

### Notice Issue

During our March 12 conversation, you raised the issue of possible notice to the claimants of the discovery sought by the subpoena in order to provide them with an opportunity to object. At that time, we noted that in a somewhat similar context -- non-party discovery sought of a physician from whom many claimants have submitted reports or otherwise identified in their questionnaire responses -- the parties briefed a similar notice issue. We explained that there Grace had argued that, by serving the subpoena on the parties listed on the Bankruptcy Rule 2002 service list, which includes various law firms representing Grace claimants, Grace provided the best practicable notice of the discovery it sought. We also explained that, in that context, the Court allowed the discovery and entered an order finding that HIPAA did not apply to the discovery at issue in the motion. On March 14, I sent to you copies of the pleadings related to this issue and a transcript of the hearing where the HIPAA motion was discussed.

On March 12 and again on March 14, I noted that, here too, we had served the instant subpoena on the Rule 2002 list. The only formal or informal objection Grace received in response to the subpoena was the concern of Baron & Budd about the scope of Document Request Number 1. I sent you a copy of the email communications discussing that issue on March 14, and also noted that no claimant nor any claimant's counsel raised confidentiality objections to the subpoena.

I have not heard back from you on this issue since my March 14 letter. I trust that the matter is now resolved and you have no further objection on this subject.

### Narrowing Dataset Requests

As has been explained to you previously, in response to the concerns raised by the Baron & Budd firm over the breadth of Request Number 1, Grace agreed to limit Request Number 1 to Grace claimants. On March 14, I sent to you a CD-Rom identifying such claimants by name, social security number and date of birth (where available to Grace) in a machine-readable format as you requested. I did not hear back from you in any way. I trust that you had no difficulty with the format of this information to aid in your attempts to determine matches to the Trust data. Given that two months have now passed, you have had sufficient time to conduct your analysis. To the extent a definitive match cannot be ascertained from the information provided, we would like to continue to work with you to determine what additional information can be provided to

## KIRKLAND & ELLIS LLP

Daniel J. Donnellon
May 21, 2007
Page 4

assist in the matching process.  Please let us know where this effort at matching stands.  In light of the months that have passed since we sent you the CD Rom, we expect that your matching analysis is now completed.

### Cost of Compliance with the Subpoena

Grace remains willing to reimburse the Trust for its reasonable cost of compliance with the subpoena consistent with the provisions and limitations of Federal Rule of Civil Procedure 45.  You have not given us any feedback on what the actual or estimated costs are related to subpoena compliance.

### Objections to Specific Requests

#### Document Request Numbers 2 and 6

On March 12 and again in my March 14 letter, we discussed Document Request Number 2 regarding information related to the Trust's decision to suspend or ban certain physician or screening companies from submitting reports to the Trust and Document Request Number 6 seeking information related to the review and evaluation of claims by the Trust.  While, during the course of those discussion, Grace did note that it would seek to obtain foundation and authenticity testimony regarding any materials produced pursuant to this request, Grace also expressly noted that this might be an area where Grace may desire to ask deposition questions of a corporate representative to follow up on the materials that were produced.  That continues to be the case.  To the extent that the scope of any such deposition can be narrowed, Grace has agreed that the parties should discuss the matter further following any document production.  In our March discussions and communications, Grace also agreed to consider the possibility of exploring the viability of proceeding with a deposition by written question.

I have heard nothing back from you on this subject, nor any feedback whether this approach is acceptable to your client.  Please let us know when we can expect product of materials responsive to request nos. 2 and 6.

#### Document Requests Number 3-5

You also raised certain concerns regarding Document Requests 3-5, but you agreed to confer with your client to determine whether, and in what format, the Trust maintains this information.  In the last two months, I assume you have had ample opportunity to investigate this issue with your client.  Yet, we have received no feedback from you at all on this subject.  Please get back to us on this point as soon as possible.  We remain willing to discuss narrowing the scope of the requests based on your feedback regarding the manner in which such information is maintained, assuming such feedback is ever forthcoming.  We are also willing to explore alternative means of obtaining such information, such as via written or live deposition testimony

# KIRKLAND & ELLIS LLP

Daniel J. Donnellon
May 21, 2007
Page 5

under Rule 30(b)(6). But we want to resolve this issue and thereby obtain whatever discovery is possible now.

### *Document Request Number 7*

In response to your concern regarding the burden associated with matching the Trust database to the hard copy lists previously provided, on March 14 we sent to you a CD-Rom containing electronic, machine-readable versions of the exhibits that originally comprised Attachment B to the original subpoena. This should have resolved your burden issues. Please let us know when we can expect to receive responsive information.

### **Trust Representative Deponent**

In March, Grace agreed to work cooperatively with the Trust to assess and potentially narrow the scope of any necessary Trust representative deposition in light of materials that may be produced. While we expressed a desire to establish foundation and authenticity for the documents produced by the Trust, Grace also expressly stated that it may desire to ask substantive questions of a corporate witness related to the Trust's production. Our interest in this deposition is on-going. We had hoped to be able to reach an amicable and satisfactory resolution of the scope of any such deposition. Absent production of responsive materials from the Trust, Grace is not in a position to narrow the scope of any corporate representative deposition, and we will seek to compel the deposition if we must.

Grace has sought to resolve your objections to the subpoena in good faith. In response, you promised us additional substantive feedback in many areas. We have not heard back from you about the various issues raised by the subpoena in more than two months. Please let us know immediately whether you intend to produce information and material responsive to the subpoena and provide me with scheduling information related to the corporate representative deposition. If we do not hear back from you, we move to compel the discovery.

Sincerely,

Ellen Therese Ahern

ETA/nf

cc:    Amanda Basta

**ATTACHMENT 4**

## Donnellon, Daniel J.

**From:** eahern@kirkland.com
**Sent:** Monday, May 21, 2007 6:27 PM
**To:** Donnellon, Daniel J.
**Cc:** ABasta@kirkland.com
**Subject:** RE: Letter re W.R.Grace Subpoena to Celotex

   

ALTERNATIV ENVELOPE.T
E.HTM (6 KB)   XT (1 KB)

           I will have full versions of all transcripts cited sent to you.
When we spoke in March, we did agree to send you certain transcripts and materials.  We
sent a portion of those transcripts and record materials to you on March 14.  Other
transcripts were cited in my letter of this morning.  In any event, there were several
matters on which you owed us a response or further feedback from your client based on our
March 12 conversation and/or further material provided in my March 14 letter -- not simply
the draft protective order.  We never heard anything from you following on the materials
provided in my March 14 letter.  The most significant one that comes to mind is the
matching analysis with the machine readable electronic claimant data.  We sent that
material to you on CD-Rom on March 14.  We expected that you would get back to us about
whether the format was acceptable, whether you could thus conduct your matching analysis,
how long that would take and ultimately what the results might be.

Whatever the reason for your delay in response,  we are still interested in pursuing this
discovery.  I propose giving you a chance to work through the letter, the draft protective
agreement and to undertake the matching analysis.  I propose that we try to talk on the
afternoon of June 5. Perhaps then we can have a substantive discussion about what it is
you believe your client will produce.   If that date does not work, then we have some
availability for a call in the afternoon of May 30 or June 1.


DDONNELLON@KMKLAW.com 05/21/2007 01:26 PM

To
eahern@kirkland.com
cc
ABasta@kirkland.com
Subject
RE: Letter re W.R.Grace Subpoena to Celotex




I am puzzled by the sudden urgency of this subpoena after hearing nothing from you for 10
weeks.  With the exception of the protective order, I viewed the ball as in your court on
all the issues of narrowing the scope and possibly accepting deposition by interrogatory.
You promised to send me many of the transcripts that you were relying on and never did,
other than minor excerpts.

Although it may be possible to turn around a revised protective order shortly, most of the
other items will take tremendous time.  We have not spent the last two months marshalling
evidence for a subpoena that we objected to under the rules, had a good faith conference
about, and then heard absolutely nothing from the issuing party for months.

I suggest you give us an opportunity to review and discuss your letter and then set up a
follow up conference call later in the week or early next week.

-----Original Message-----
From: eahern@kirkland.com [mailto:eahern@kirkland.com]
Sent: Monday, May 21, 2007 1:57 PM
To: Donnellon, Daniel J.
Cc: ABasta@kirkland.com
Subject: Letter re W.R.Grace Subpoena to Celotex

Daniel:

Please see the attached letter regarding W.R. Grace's subpoena to the Celotex trust.

--Ellen Ahern


Ellen Therese Ahern
KIRKLAND & ELLIS LLP
200 E. Randolph Chicago, IL  60601
Phone: 312-861-2335
Fax: 312-861-2200
eahern@kirkland.com

************************************************************
The information contained in this communication is confidential, may be attorney-client
privileged, may constitute inside information, and is intended only for the use of the
addressee.  It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International
LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is
strictly prohibited and may be unlawful.  If you have received this communication in
error, please notify us immediately by return e-mail or by e-mail to
postmaster@kirkland.com, and destroy this communication and all copies thereof, including
all attachments.
************************************************************

************************************************************
Daniel J. Donnellon
Keating Muething & Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, OH  45202
Tel: 513-579-6505
Fax: 513-579-6457
Internet Address: ddonnellon@kmklaw.com
Website: www.kmklaw.com

          --- CONFIDENTIALITY STATEMENT ---
This e-mail transmission contains information that is
intended to be privileged and confidential.  It is in-
tended only for the addressee named above.  If you re-
ceive this e-mail in error, please do not read, copy
or disseminate it in any manner.  If you are not the
intended recipient, any disclosure, copying, distri-
bution or use of the contents of this information is prohibited.  Please reply to the
message immediately by informing the sender that the message was misdirected. After
replying, please erase it from your computer system.  Your assistance in correcting this
error is appreciated.
************************************************************

************************************************************
The information contained in this communication is confidential, may be attorney-client
privileged, may constitute inside information, and is intended only for the use of the
addressee.  It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International
LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is
strictly prohibited and may be unlawful.  If you have received this communication in

error, please notify us immediately by return e-mail or by e-mail to
postmaster@kirkland.com, and destroy this communication and all copies thereof, including
all attachments.
***********************************************************

# ATTACHMENT 5

# KMK | Keating Muething & Klekamp PLL
### ATTORNEYS AT LAW

**DANIEL J. DONNELLON**
DIRECT DIAL: (513) 579-6408
FACSIMILE: (513) 579-6457
E-MAIL: DDONNELLON@KMKLAW.COM

June 7, 2007

Ellen T. Ahern, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636

> **RE:**  *W.R. Grace & Co., et al.*
> *United States Bankruptcy Court*
> *For the District of Delaware*
> *Case No.: 01-01139 (JFK)*
> <u>*Chapter 11*</u>

Dear Ellen:

I write in response to your letter dated May 21, 2007, and our follow-up conference on June 5, 2007. As I indicated in my e-mail response of May 21, I am surprised that we received no follow-up from Grace counsel for almost ten weeks from the letter indicating that the Celotex Trust objected to the subpoena in its entirety and our discussions relating to those objections. Nonetheless, it continues to be our desire to engage in cooperative discussions with you, and we hope to reach an amicable resolution of this matter that both protects the interests of the Trust and Trust beneficiaries, and allows you appropriate access to information that you seek. We share the sentiment you expressed during yesterday's conference that as a result of a miscommunication, we were each waiting to hear back from the other. We also appreciate your statement recognizing that we have made a concerted effort to help you obtain the information you want if it can be done in a manner that resolves our numerous serious objections to your subpoena. In an effort to continue our dialogue, I will take this opportunity to memorialize our conference and outline a proposed resolution to the areas that continue to be in dispute.

Although we are presently cooperating in an effort to reach a mutually agreeable resolution, we continue to object to the subpoena and deposition notice in their entirety. Accordingly, any offer of compromise relating to resolution of this discovery dispute is a negotiation for settlement purposes and is not intended to be used as an admission by the Celotex Trust that it has any responsibility to produce any documents in response to the subpoena. Presently, we object to the subpoena in its entirety and will produce no documents or electronic information in response unless we do so on terms that are acceptable to the Celotex Trust in connection with the final resolution of this dispute and an agreement that Grace will not seek additional discovery from the Trust in connection with the bankruptcy proceedings.

Ellen T. Ahern, Esq.
June 7, 2007
Page 2

### PROTECTIVE ORDER

I enclose our mark-up to the draft protective order you sent us previously. As I indicated, these revisions are based upon a protective order I used in another mass tort matter. We await your comments. This draft is for discussion purposes only, and our agreement to such a protective order is contingent upon a resolution of the other issues in dispute. Once the other issues have been resolved, we will be prepared to submit a joint motion to the Court. Accordingly, please contact me before any filing of the protective order with the Court.

### DEPOSITION NOTICE

You requested a deposition pursuant to Rule 30(b)(6) for topics that include many privileged, proprietary, and confidential areas of potential inquiry. You stated it was not your intention to seek privileged or proprietary information and the purpose of the deposition would be more to authenticate the materials produced in response to the subpoena. We suggested this be done via deposition upon written examination. We appreciate your statement that you do not have a "vested interest" in live depositions and believe the deposition can most appropriately proceed through written questions. In the interests of being cooperative, however, we would be willing provide a live witness on narrowly tailored topics at a mutually convenient time and place. We welcome preliminary discussions regarding potential dates and parameters of any live depositions, should they become necessary. With that said, I will go through the individual deposition topics in an attempt to narrow those areas of inquiry.

**(1)**   *Suspension of the Acceptance of Reports from any Provider of Medical or Screening by the Celotex Trust.*

With the exception of Dr. Gregory Nayden (and AMT), the suspended doctors and screening companies for asbestos and silica claims are set forth in a Notice of Trust Policy Regarding Acceptance of Medical Reports sent from John L. Mekus, Executive Director of the Celotex Trust on October 20, 2005. The substance of that notice letter is readily available to the public on the website www.celotextrust.com under the "News" page. Any information beyond that contained in the letter notice is a subject of privileged communications between the Trust and its counsel. At a deposition, we would authenticate the letter notice and/or the information available on the website and preclude inquiry into the reasons behind those suspensions or similar other privileged communications. As noted below, the Trust may have some additional, non-privileged documents relating to these suspensions that are public record and likely already in your possession. To the extent those are produced, we would permit similar limited inquiry relating to them. The Trust may have some very limited, non-privileged documents relating to the suspension of Dr. Nayden. To the extent you deem those relevant, then we will produce them and allow similar limited inquiry.

Ellen T. Ahern, Esq.
June 7, 2007
Page 3

**(2)** *The Criteria Used for the Acceptance or Disallowance of Claims Submitted to the Celotex Trust.*

During all of our conversations, I have indicated that the criteria are clearly defined in the Third Amended and Restated Asbestos Personal Injury Claims Review Procedures, which is publicly available on the www.celotextrust.com website. Also available for download from the website are Instructions for Filing a Claim and a User's Manual. During some of the time period that may be applicable to the subpoena, the Trust processed claims under the Second Amended and Restated Asbestos Personal Injury Claims Review Procedures.

Any deposition relating to the Claims Review Procedures will be extremely limited. Any inquiry into the manner or practices used by the Celotex Trust to review and process claims under the Claims Review Procedures is proprietary information that is not subject to discovery. If there is a live deposition, we will permit inquiry into the authentication of the documents and differences between the Second and Third Amendments, but we will not permit inquiry into reasons for the changes. Any follow-up discovery of a live witness will be extremely limited under the parameters we have discussed and as outlined above.

**(3)** *Electronic Databases Containing Data Submitted by Persons Seeking Compensation from the Trust for an Asbestos-Related Disease.*

This topic appears to seek only the technical details of how the data is gathered and maintained by the Celotex Trust. We can make a witness available to discuss these technical details which may help Grace understand why the Trust cannot produce a database in the form of the documents, materials and information specified by Grace in the subpoena for Production of Documents and Things. We will, however, instruct the witness not to answer questions, as necessary, to protect against privileged, proprietary, or confidential areas of inquiry.

## DOCUMENTS

*Request No. 1*

This request essentially targets the production of data and opinions generated by the Trust's trained employees collected over nearly a decade relating to hundreds of thousands of claims. The Trust does not sell, license, or distribute such information and opinions, and, in fact, considers such to be highly confidential and proprietary. The items requested seek the confidential work product of the Trust. For example, requests "u) Evaluated Injury and v) Summary Injury," among others, target judgment calls made by the Trust and collected by it in extensive and proprietary data tables.

You stated that the subpoena to the Trust was motivated by your belief that Grace Claimants are holding out on you and not giving you information to which you are entitled. We do not believe this is sufficient justification to put the non-party Trust to the substantial burden that your requests entail. You, of course, have an obligation to obtain discovery from your own

Ellen T. Ahern, Esq.
June 7, 2007
Page 4

Claimants before seeking such materials from the non-party Trust. Any failure to appropriately respond to discovery by Claimants in the Grace proceeding should be taken up with the court in that action. With that said, we will proceed to additional reasons why the Trust is not able to provide the database you seek.

You agreed that the Trust's database is proprietary to the Trust. As you are aware, the Manville Trust licenses similar data relating to asbestos claims for tens of thousands of dollars per year and has generated hundreds of thousands of dollars of revenue since it began doing so. However, Manville limits the use of its materials to statistical matching only. It does not, to our understanding, permit licensees to use Manville's data for individual claim processing. In the protective order entered by the Court relating to the Manville production in this case, the Court found, and you agreed, that the database created by the Manville Trust is proprietary and commercially confidential. Thus, it is beyond reasonable debate that the Celotex Trust's database has significant commercial value. Rather than license access to the database, like Manville, the Celotex Trust has chosen to keep that information, gathered over many years by experienced reviewers, as a valuable and proprietary trade secret. In addition, although some of the information maintained in the Celotex data tables consists of completely objective names and dates, etc., the specialized compilation in which Celotex created its data tables resulted from a great expenditure of time and money and gives the Celotex Trust a competitive advantage in processing new asbestos-related claims for other trusts or qualified settlement funds seeking to process and pay asbestos-related personal injury claims. Finally, because of the unique nature of Celotex's Claims Resolution Procedures, the data is only of marginal relevance to the Grace proceedings and far from a necessity in the estimation of Grace's asbestos liabilities.

The information you obtained from Manville is more than adequate for you to perform any statistical analysis necessary for Grace's aggregate claims estimation. As you confirmed in our telephone conference, the numerous experts involved in the Grace estimation of asbestos personal injury liabilities all have access to the Manville data and have paid for the Manville licenses. Thus, Grace would be obtaining largely duplicative information from the Celotex Trust, and there is no reason to force the Celotex Trust to surrender proprietary data that it chooses not to license for valid business reasons simply to respond to this subpoena. Further, while discussing this topic, you indicated that Grace is primarily interested in obtaining Claimant work and exposure histories. As we discussed, the Celotex data might not be as useful to Grace as you believe. The Trust does not extensively track work history or alternate exposure data. The Trust does not consider alternative exposures when reviewing a claim. The Trust tracks only exposure to Celotex products. At your request, I will consult with the Claims Facility to confirm the limited nature of this data in our possession.

You indicated that you are secondarily interested in medical histories. The Trust does not track medical information in a way useful to Grace. For example, you'll note in the Celotex Claims Resolution Procedures that individually reviewed claims have only two categories for the non-malignant disease commonly referred to as "asbestosis": "Non-Disabling Bilateral Interstitial Lung Disease (NBILD)" and "Disabling Bilateral Interstitial Lung Disease (DBILD)."

Ellen T. Ahern, Esq.
June 7, 2007
Page 5

The Celotex procedures do not require a "B-read" *per se*. The only difference between NBILD and DBILD is in pulmonary function testing. A 20% decrement in lung performance in any one or more of the following distinguishes the claim as DBILD: "Total Lung Capacity, Forced Vital Capacity or Diffusing Capacity." Most other asbestos trusts apply different definitions for asbestosis and many claims settled in the tort system do not apply this nomenclature and protocol for distinguishing between severity levels of asbestosis claims. Accordingly, even if the Celotex Trust were willing to produce its electronic database—which it is not—the "Evaluated Injury, Summary Injury and Disease" requested by Grace would not necessarily correspond to Grace's own claim constructs or the data Grace is obtaining from other sources. Therefore, Grace's need for this proprietary information from the Celotex Trust is minimal or non-existent.

### Request No. 2

As previously indicated, the communication to Claimants and their counsel relating to the suspension of doctors is available on the Trust's website. Internal documents relating to the suspension of the doctors are privileged and not subject to discovery. It is possible, however, that the Trust *may have* some publicly available information relating to the suspension of doctors, such as the Opinion and Order of Judge Janis Graham Jack in the Silica MDL, transcripts of proceedings in the Silica MDL, depositions taken in the Silica MDL, transcripts of congressional hearings, etc. To the extent you wish to have Trust employees search for such documents, we would be willing to discuss a process by which that can be done, but we see no reason to burden the Trust with the time and expense to produce such documents otherwise publicly available to Grace and highly likely already in its possession.

### Request No. 3

The Trust does not maintain a so-called "Top twenty-five" list of individuals who authored B-read reports in support of claims. The law is clear that the Trust has no obligation to create for you documents that do not exist. In the interests of resolving this dispute and subject to you agreement on the other terms outlined, the Trust would be willing to query its proprietary database and create a document potentially identifying the most prolific B-readers associated with such claims. We would be willing to do so, however, only upon Grace's agreement that the production of such a list would not waive the Trust's right to protect its confidential, proprietary database nor would be used against it in any future proceedings as any waiver of the proprietary nature of that database.

### Request No. 4

The Trust does not maintain a so-called "Top twenty-five" list of individuals who are considered the primary diagnosing doctor on reports submitted in support of claims the Trust would be willing to query its proprietary database and create a document potentially identifying the most prolific diagnosticians associated with such claims. We would be willing to do so, however, only upon Grace's agreement that the production of such a list would not waive the

Ellen T. Ahern, Esq.
June 7, 2007
Page 6

Trust's right to protect its confidential, proprietary database nor would be used against it in any future proceedings as any waiver of the proprietary nature of that database.

### Request No. 5

As we discussed, this request is vague and ambiguous. If the generic identification of "individuals who authored reports" is considered to be different from the B-reader request and diagnostician request, then, as we discussed, the Trust does not maintain such a top twenty-five list. You clarified that this request seeks the "Top twenty-five" doctors across all of the categories where we track doctor identities. The Trust does not maintain a so-called "Top twenty-five" list of individuals who authored reports in support of claims. The law is clear that the Trust has no obligation to create for you documents that do not exist. In the interests of resolving this dispute and subject to you agreement on the other terms outlined, the Trust would be willing to query its proprietary database and create a document potentially identifying the most prolific diagnosticians associated with such claims. We would be willing to do so, however, only upon Grace's agreement that the production of such a list would not waive the Trust's right to protect its confidential, proprietary database nor would be used against it in any future proceedings as any waiver of the proprietary nature of that database.

### Request No. 6

You previously indicated, and confirmed during our discussion, that Request No. 6 does not seek the Trust's proprietary claims review materials. Accordingly, all non-proprietary information relating to the criteria used to determine allowance or disallowance of claims is set forth in the Third Amended Claims Resolution Procedures. There are, in addition, instructions and memoranda to Claimants relating to submission of claims which arguably could relate to this request and there may be additional non-proprietary documents sent to Claimants in connection with that review process. As we discussed, we would consider producing information beyond the Claims Resolution Procedures themselves only to the extent that Grace would agree that such production was not a waiver of the right to object to any inquiry of documents or testimony that the Trust considers proprietary in connection with its claims review process. The documents that might be produced under this agreement include the form letters the Trust uses to deny claims.

### Request No. 7

This request initially involved the proposed production of files relating to more than 50,000 individual Claimants. The original request was not in machine readable form. When you provided machine readable data to analyze and identify those Claimants, we identified 13,176 individual claim files in the Celotex Trust's possession that could reasonably be determined to be matches to files requested by Grace. Unfortunately, since many provided only the last four digits of their social security number, we could not obtain reasonable certainty for any matches beyond that 13,176. In addition, sixteen of those individual Claimants are *pro se* and 6,501 of those claim files are archived in an off-site storage facility that will charge a retrieval and re-filing fee

Ellen T. Ahern, Esq.
June 7, 2007
Page 7

to obtain the documents.   Obviously the production of files of this magnitude would be extremely burdensome upon the Trust and expensive.  Moreover, consistent with the ruling of the Delaware Asbestos MDL and other court's standard case management orders, the best source of this information is from the Claimant/plaintiff pursuing the claim against the party seeking production from the Trust.  Therefore, with such a readily available source with no burden on the Trust whatsoever, the documents should first be sought from the Claimants.  Any failure of the Claimants to adequately respond should be taken up with the bankruptcy court in the Grace bankruptcy.

Despite these valid objections, we are willing to discuss the production of a reasonable number of Claimant files by the Trust.  But, before we reach any conclusions on this matter, we must resolve four separate issues:

> (1)    Burdensomeness of the Request;
>
> (2)    Protection of the Claimants' confidentiality;
>
> (3)    Cost neutrality to the Trust; and
>
> (4)    Identification of the relevant portions, if any, to be copied and produced.

### Burden upon the Trust and its Claims Facility.

As we discussed, the Trust's claims are processed through the Delaware Claim Processing Facility—an entity that the Trust does not control.  Approximately half of the 13,176 Claimant files and records are maintained on site at the Claims Facility.  The remainder are in offsite storage.  Retrieving the Claimant files and records from either location, combing each file for responsive documents, and ensuring proprietary information is excluded from the production will be a substantial undertaking.  My initial conversations with the Claims Facility indicate that it does not have personnel resources available to complete the process in an expeditious manner. I believe that a staff of temporary paralegals and document reviewers may need to be employed to complete the production.  Even with temporary employees, the production of 13,176 Claimant files will be extremely burdensome.  Accordingly, Grace should strongly consider reducing the scope of the request.

### Protecting Claimant Confidentiality.

As we discussed, the Trust's Claims Resolution Procedures specify that the Trust and the Claimants consider all submissions to the Trust to be confidential for settlement purposes only. Such materials are entitled to protection, both pursuant to state and federal privileges related to communications made in the course of settlement negotiations and pursuant to various state law privileges relating to the protection of medical records.  Furthermore, the Trust has a fiduciary

Ellen T. Ahern, Esq.
June 7, 2007
Page 8

obligation to the Claimants to protect the confidences of those Claimants because these materials were submitted pursuant to Procedures whereby the Trust agreed that it would keep such submissions confidential. We believe the law requires you to first seek these claims materials from the individual Claimants — most, if not all, of whom are creditors in your bankruptcy — prior to burdening the Trust with this request.

In an effort to be cooperative, however, the Trust would be willing (subject to the other conditions set forth herein) to produce a reasonable number of individual Claimant files, provided that you simply obtain a signed authorization from the individual Claimant or his legal representative authorizing the Trust to produce such materials. Since most, if not all, of these Claimants are apparently creditors in your bankruptcy who have already been ordered to submit detailed questionnaires in your bankruptcy, we trust that it will be little burden for you to obtain such authorizations; and, certainly, the court can adequately resolve any issues that might arise if Claimants are unwilling to provide such releases. Accordingly, we expect for you either to seek to obtain the claim forms from the Claimants' counsel, or to obtain consent of the Claimant for the Trust to release the claim forms. We reject your contention that notice to the Grace notice list is sufficient. You must obtain affirmative consent from the Claimants. We will not resolve any issues relating to the potential production until the confidentiality and consent issues are resolved.

### Cost Neutrality to the Trust.

We discussed that this entire process must be cost neutral to the Trust. This means, W.R. Grace will pay the entire cost of copying the Claimant files and records and the retrieval and re-filing cost from the outside vendor. In addition, the Delaware Claims Processing Facility will charge its own retrieval and re-filing cost on a time and materials basis for retrieval and copying of files at its facility. In the event that there are any portions of the files that are segregated, Grace will compensate Trust paralegals, at reasonable market rates, to review those files and segregate the portions to be copied and produced to Grace.

### Identifying the Relevant Portions, If Any, To Be Copied and Produced.

As we discussed, the request seeks information from the claim forms relating to the Claimants' exposure to asbestos-containing products, including work histories, product identification affidavits, screening intake forms, product invoices or construction records. We explained, however, that the Celotex Trust does not require a Claimant to produce an entire work history or to recite exposure to all asbestos-containing products throughout their career. Rather, the Celotex Trust focuses only upon the Claimants' exposure to Celotex's and/or Carey Canada's products. Nor does the Celotex Trust have a significant occupational exposure requirement for any particular disease that may require the Claimant to identify exposure beyond the Celotex and/or Carey Canada products. Accordingly, the information in the Claimant files may be of little or no value to comparing Claimant work histories to social security records or work histories identified in the Grace bankruptcy questionnaires.

Ellen T. Ahern, Esq.
June 7, 2007
Page 9

## **CONCLUSION**

We believe this letter sets forth a reasonable and good faith manner in which to deal with our objections to your subpoena and to amicably resolve this matter. We have enclosed a revised proposed protective order. We will provide you with a scope of work description and a cost estimation of the retrieval, copying and re-filing our Claimant files. We will also confirm the unavailability of work and exposure histories in our data and Claimant files.

You agreed to reconsider the scope of the subpoena in light of our discussions. We request that you provide us with a copy of the May 21 hearing transcript you said supports your contention that Judge Fitzgerald ordered you to obtain Claimant information from us. We also request that you provide an explanation of exactly how you intend to use any Claimant data or documents that the Trust might provide. You indicated in our telephone call that you would be responsible for scheduling the next conference.

We made it clear during our discussion that any offer to compromise relating to this subpoena is a negotiation for settlement purposes in resolving this discovery dispute and is not intended to be used as an admission by the Celotex Trust that it has any responsibility to produce any documents in response to the subpoena. Presently, we object to the subpoena in its entirety and will produce no documents or electronic information in response, unless we do so on terms that are acceptable to the Celotex Trust in connection with the resolution of this dispute. To the extent that we are not able to resolve issues relating to the subpoena on terms acceptable to the Trust, then we intend to object to the entire production and force Grace to move to compel.

Very truly yours,

KEATING MUETHING & KLEKAMP PLL

By:_____
Daniel J. Donnellon

DJD:meb

# ATTACHMENT 6

**Donnellon, Daniel J.**

| | |
|---|---|
| **From:** | eahern@kirkland.com |
| **Sent:** | Friday, June 22, 2007 11:48 AM |
| **To:** | Donnellon, Daniel J. |
| **Cc:** | ABasta@kirkland.com |
| **Subject:** | GRACE Celotex Subpoena Communications |

   

ALTERNATIV X-ALTERNAT 2007061514 ENVELOPE.T
E.HTM (9 KB)VE.HTM (5 KB7759.pdf (112 I  XT (1 KB)

Dan:

We've had a chance to review your recent letters, including the one below.

As an initial matter, we cannot agree to your proposed form of protective order.  The
acknowledgement provision, and the notice provisions -- among others -- simply are not
workable given the complexity of the Grace bankruptcy and other issues.  I would again
urge you to consider the proposed draft protective order we sent to you following our
initial call.  But it seems you have already rejected Grace's proposed draft in favor of
your own.  While we both agree that a form of protective order is appropriate to govern
any materials that are produced pursuant to the subpoena, we are so very far apart in
terms of the actual provisions of such an agreement, that it appears we will not be able
to resolve this point.

On the matching analysis, we are disappointed that you will not endeavor to attempt a
match with anything less than full social security numbers. We believe the true matching
of Grace claimants to Celotex Trust claimants is vastly in excess of the figure you have
from your present matching efforts.

It seems that on these two issues, as with so many of the issues we have discussed
previously (including confidentiality, notice to claimants, burden, relevance and the
complete refusal to make available electronic/database information) we are at an impasse.
As we discussed on our last call, the time has probably come to seek court intervention to
help resolve some of these issues.

--Ellen Ahern


----- Forwarded by Ellen Ahern/Chicago/Kirkland-Ellis on 06/22/2007 10:32 AM -----

mjtrue@KMKLAW.com 06/15/2007 02:33 PM

To
eahern@kirkland.com, abasta@kirkland.com
cc

Subject
FW: GRACE 5/21 Hearing Transcript




The attached is sent at the request of Dan Donnellon.


-----Original Message-----
From: eahern@kirkland.com [mailto:eahern@kirkland.com]

1

Sent: Friday, June 15, 2007 3:08 PM
To: Donnellon, Daniel J.
Subject: RE: GRACE 5/21 Hearing Transcript


Thanks.  Email is fine.


DDONNELLON@KMKLAW.com 06/15/2007 01:59 PM

To
eahern@kirkland.com
cc
ABasta@kirkland.com
Subject
RE: GRACE 5/21 Hearing Transcript




Thanks.  I am just finishing up a letter to you about the exposure issues.  I can ask my
assistant to send it via email if you wish.

-----Original Message-----
From: eahern@kirkland.com [mailto:eahern@kirkland.com]
Sent: Friday, June 15, 2007 2:48 PM
To: Donnellon, Daniel J.
Cc: ABasta@kirkland.com
Subject: GRACE 5/21 Hearing Transcript


Dan:

Here is the 5/21 hearing transcript.  Judge Fitzgerald mentions discovery of the trusts
for exposure information (including outstanding subpoenas0 toward the end of the portion
dealing with Early Ludwick's motion for a protective order, which comes toward the very
end of this transcript.

You were going to get back to me about matching issues, and if the number of matches would
go up if Celotex matched to name plus 4 social security numbers.  I'd like to get a sense
of what sort of numbers we might have on a match if we went about it that way.  I
understand that, even if you give me numbers, Celotex might not be willing to conclude
that  a name plus 4 social security numbers would constitute a confirmed match.  But to
know what that number might be would be helpful given the things we are weighing here on
the scope of discovery.

--Ellen Ahern

*********************************************************
The information contained in this communication is confidential, may be attorney-client
privileged, may constitute inside information, and is intended only for the use of the
addressee.  It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International
LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is
strictly prohibited and may be unlawful.  If you have received this communication in
error, please notify us immediately by return e-mail or by e-mail to
postmaster@kirkland.com, and destroy this communication and all copies thereof, including
all attachments.
*********************************************************

*************************************************
Daniel J. Donnellon
Keating Muething & Klekamp PLL

One East Fourth Street
Suite 1400
Cincinnati, OH  45202
Tel: 513-579-6989
Fax: 513-579-6457
Internet Address: ddonnellon@kmklaw.com
Website: www.kmklaw.com


              --- CONFIDENTIALITY STATEMENT ---
This e-mail transmission contains information that is
intended to be privileged and confidential.  It is in-
tended only for the addressee named above.  If you re-
ceive this e-mail in error, please do not read, copy
or disseminate it in any manner.  If you are not the
intended recipient, any disclosure, copying, distri-
bution or use of the contents of this information is prohibited.  Please reply to the
message immediately by informing the sender that the message was misdirected. After
replying, please erase it from your computer system. Your assistance in correcting this
error is appreciated.
***************************************************

***********************************************************
The information contained in this communication is confidential, may be attorney-client
privileged, may constitute inside information, and is intended only for the use of the
addressee.  It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International
LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is
strictly prohibited and may be unlawful.  If you have received this communication in
error, please notify us immediately by return e-mail or by e-mail to
postmaster@kirkland.com, and destroy this communication and all copies thereof, including
all attachments.
***********************************************************

***************************************************
Maryjoy True
Legal Assistant
Keating Muething & Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, OH  45202
Tel: 513-579-6989
Fax: 513-579-6457
Internet Address: mjtrue@kmklaw.com
Website: www.kmklaw.com


              --- CONFIDENTIALITY STATEMENT ---
This e-mail transmission contains information that is
intended to be privileged and confidential.  It is in-
tended only for the addressee named above.  If you re-
ceive this e-mail in error, please do not read, copy
or disseminate it in any manner.  If you are not the
intended recipient, any disclosure, copying, distri-
bution or use of the contents of this information is prohibited.  Please reply to the
message immediately by informing the sender that the message was misdirected. After
replying, please erase it from your computer system.  Your assistance in correcting this
error is appreciated.
***************************************************

***********************************************************
The information contained in this communication is confidential, may be attorney-client
privileged, may constitute inside information, and is intended only for the use of the
addressee.  It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International
LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is
strictly prohibited and may be unlawful.  If you have received this communication in
error, please notify us immediately by return e-mail or by e-mail to
postmaster@kirkland.com, and destroy this communication and all copies thereof, including
all attachments.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ATTACHMENT 7**

## Donnellon, Daniel J.

| | |
|---|---|
| **From:** | Donnellon, Daniel J. |
| **Sent:** | Monday, July 02, 2007 9:14 AM |
| **To:** | 'eahern@kirkland.com' |
| **Cc:** | ABasta@kirkland.com |
| **Subject:** | RE: GRACE Celotex Subpoena Communications |

I just returned to the office from vacation. Can I suggest another phone conference to try to reach a middle ground on the protective order? I am also disappointed that you choose not to address any of the substantive issues I raised and instead suggest it may be time for the court to become involved. I highly regard the duty to resolve discovery through extrajudicial means and don't believe a party should run to the court simply because they are not getting their way. Finally, I understand your concern about the 9 digit SSN, but you have to understand that I cannot ask the Delaware Claims Processing Facility to have an employee spend hours looking through "possible" claim matches on thousands of claims. If you can come up with a better way, then we will consider it.

-----Original Message-----
From: eahern@kirkland.com [mailto:eahern@kirkland.com]
Sent: Friday, June 22, 2007 11:48 AM
To: Donnellon, Daniel J.
Cc: ABasta@kirkland.com
Subject: GRACE Celotex Subpoena Communications


Dan:

We've had a chance to review your recent letters, including the one below.

As an initial matter, we cannot agree to your proposed form of protective order. The acknowledgement provision, and the notice provisions -- among others -- simply are not workable given the complexity of the Grace bankruptcy and other issues. I would again urge you to consider the proposed draft protective order we sent to you following our initial call. But it seems you have already rejected Grace's proposed draft in favor of your own. While we both agree that a form of protective order is appropriate to govern any materials that are produced pursuant to the subpoena, we are so very far apart in terms of the actual provisions of such an agreement, that it appears we will not be able to resolve this point.

On the matching analysis, we are disappointed that you will not endeavor to attempt a match with anything less than full social security numbers. We believe the true matching of Grace claimants to Celotex Trust claimants is vastly in excess of the figure you have from your present matching efforts.

It seems that on these two issues, as with so many of the issues we have discussed previously (including confidentiality, notice to claimants, burden, relevance and the complete refusal to make available electronic/database information) we are at an impasse. As we discussed on our last call, the time has probably come to seek court intervention to help resolve some of these issues.

--Ellen Ahern


----- Forwarded by Ellen Ahern/Chicago/Kirkland-Ellis on 06/22/2007 10:32 AM -----

mjtrue@KMKLAW.com 06/15/2007 02:33 PM

To
eahern@kirkland.com, abasta@kirkland.com
cc

Subject
FW: GRACE 5/21 Hearing Transcript

1

The attached is sent at the request of Dan Donnellon.


-----Original Message-----
From: eahern@kirkland.com [mailto:eahern@kirkland.com]
Sent: Friday, June 15, 2007 3:08 PM
To: Donnellon, Daniel J.
Subject: RE: GRACE 5/21 Hearing Transcript


Thanks.  Email is fine.


DDONNELLON@KMKLAW.com 06/15/2007 01:59 PM

To
eahern@kirkland.com
cc
ABasta@kirkland.com
Subject
RE: GRACE 5/21 Hearing Transcript




Thanks.  I am just finishing up a letter to you about the exposure issues.  I can ask my
assistant to send it via email if you wish.

-----Original Message-----
From: eahern@kirkland.com [mailto:eahern@kirkland.com]
Sent: Friday, June 15, 2007 2:48 PM
To: Donnellon, Daniel J.
Cc: ABasta@kirkland.com
Subject: GRACE 5/21 Hearing Transcript


Dan:

Here is the 5/21 hearing transcript.  Judge Fitzgerald mentions discovery of the trusts
for exposure information (including outstanding subpoenas0 toward the end of the portion
dealing with Early Ludwick's motion for a protective order, which comes toward the very
end of this transcript.

You were going to get back to me about matching issues, and if the number of matches would
go up if Celotex matched to name plus 4 social security numbers.  I'd like to get a sense
of what sort of numbers we might have on a match if we went about it that way.  I
understand that, even if you give me numbers, Celotex might not be willing to conclude
that  a name plus 4 social security numbers would constitute a confirmed match.  But to
know what that number might be would be helpful given the things we are weighing here on
the scope of discovery.

--Ellen Ahern


***********************************************************
The information contained in this communication is confidential, may be attorney-client

privileged, may constitute inside information, and is intended only for the use of the addressee.  It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful.  If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
*******************************************************

*************************************************
Daniel J. Donnellon
Keating Muething & Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, OH  45202
Tel: 513-579-6989
Fax: 513-579-6457
Internet Address: ddonnellon@kmklaw.com
Website: www.kmklaw.com

          --- CONFIDENTIALITY STATEMENT ---
This e-mail transmission contains information that is
intended to be privileged and confidential.  It is in-
tended only for the addressee named above.  If you re-
ceive this e-mail in error, please do not read, copy
or disseminate it in any manner.  If you are not the
intended recipient, any disclosure, copying, distri-
bution or use of the contents of this information is prohibited.  Please reply to the message immediately by informing the sender that the message was misdirected. After replying, please erase it from your computer system. Your assistance in correcting this error is appreciated.
*******************************************************

************************************************************
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee.  It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful.  If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
*******************************************************

*************************************************
Maryjoy True
Legal Assistant
Keating Muething & Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, OH  45202
Tel: 513-579-6989
Fax: 513-579-6457
Internet Address: mjtrue@kmklaw.com
Website: www.kmklaw.com

          --- CONFIDENTIALITY STATEMENT ---
This e-mail transmission contains information that is
intended to be privileged and confidential.  It is in-
tended only for the addressee named above.  If you re-
ceive this e-mail in error, please do not read, copy
or disseminate it in any manner.  If you are not the
intended recipient, any disclosure, copying, distri-
bution or use of the contents of this information is prohibited.  Please reply to the
message immediately by informing the sender that the message was misdirected. After
replying, please erase it from your computer system.  Your assistance in correcting this

error is appreciated.
****************************************************

***********************************************************
The information contained in this communication is confidential, may be attorney-client
privileged, may constitute inside information, and is intended only for the use of the
addressee.  It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International
LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is
strictly prohibited and may be unlawful.  If you have received this communication in
error, please notify us immediately by return e-mail or by e-mail to
postmaster@kirkland.com, and destroy this communication and all copies thereof, including
all attachments.
***********************************************************