IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| W. R. GRACE & CO., *et al.*, | : | Case No. 01-01139 (JKF) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | **Objection Deadline: July 6, 2007 at 4:00 p.m.,** |
| | : | **Hearing Date: July 23, 2007 at 2:00 p.m.** |
| | : | |
| | : | **Re: Docket No. 16083** |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' TENTH MOTION
FOR AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING DEBTORS'
EXCLUSIVE PERIODS IN WHICH TO FILE A CHAPTER 11 PLAN AND
TO SOLICIT VOTES THEREON**

The United States Trustee, by and through her counsel, hereby files the following objection to the motion of the Debtors seeking its tenth extension of the exclusive period in which to file a Chapter 11 Plan and to solicit votes thereon (the "Motion"), and represents as follows:

**Introduction**

1.      Kelly Beaudin Stapleton is the United States Trustee ("UST") for Region 3.

2.      Pursuant to 28 U.S.C. § 586, the UST is charged with the administrative oversight of cases commenced pursuant to Title 11 of the United States Bankruptcy Code. This duty is part of the UST's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas System, Inc. (In re Columbia Gas System, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

3.      Pursuant to 11 U.S.C. § 307, the UST has standing to be heard with regard to the

1

above-referenced Objection.

## Background

4.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing these chapter 11 cases (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

5.      Numerous committees representing various constituents have been appointed in this case. On April 13, 2001, the UST appointed the Official Committee of Unsecured Creditors (the "Creditors Committee"). Also on April 13, 2001, the UST appointed the Official Committee of Asbestos Personal Injury Claimants (the 'PI Committee) and the Official Committee of Asbestos Property Damage Claimants (the "PD Committee"). On June 18, 2001, the UST appointed the Official Committee of Equity Holders (the "Equity Committee'). Finally, on May 24, 2004, the Court appointed David Austern as the Future Claimants Representative (the "FCR").

6.      On June 18, 2007, the Motion was filed pursuant to section 1121(d) of the Bankruptcy Code, whereby the Debtors seek a further extension of the exclusive period to both file a plan of reorganization and to solicit acceptances for such plan. Specifically, the Debtors are seeking an extension of the exclusive period to file a plan through and including the 90th day after a final order is issued after the asbestos personal injury claims estimation trial (the "Estimation Proceeding"), with the exclusive right to solicit acceptances of a plan extended an additional 60 days thereafter.

7.      The focus of the Debtors' arguments in support of another exclusivity extension revolve around the Estimation Proceeding, which the Debtors label as the key event to resolving these

cases.  The Estimation Proceeding has been permeating in this case for some time.  Recently, a consistent barrage of litigation among the parties has ensued.  The trial in the Estimation Proceeding has been continued a few times, but it is currently scheduled to begin in January 2008 and continue into April 2008.  As such, the exclusivity extension requested by the Debtors is effectively at least a one year extension request, and more than likely further because of the probability that the court will not a render decision immediately after the trial is completed.[1]

### **Grounds/Basis for Relief**

8.      The Bankruptcy Court analyzed and approved the Debtors' most recent exclusivity extension request because the Debtors made the proper showing that they could propose a feasible plan within a reasonable time.  The Court made that ruling, however, with one very important caveat: that the parties would meet and confer on a regular basis to attempt to resolve their differences and develop a consensual plan.  Specifically, the Court stated as follows:

> "this Court expects that having heard those articulated views all parties will now meet and continue to meet and confer on a regular basis in an effort to try to resolve those differences of opinion and put together a confirmable and consensual plan. . . And Mr. Bernick. . . I'm holding you responsible for taking the laboring oar to make sure it gets done this time."

> "However, the Court cautions that this order is entered to permit all parties to continue to negotiate so that estimation and valuation decisions can be incorporated into a plan that is filed within 30 days after the issues of estimation and solvency are resolved, either consensually or by court order."

Transcript of Hearing on September 11, 2006, pp. 112-113.

9.      Based on statements made by various counsel in court and the increasing amount of litigation that has been pursued in this case, it does not appear that any negotiations have been

---

[1] The Motion references the requested extension period as the 90th day after a final order is issued in the Estimation Proceeding.  It is not entirely clear what that means.  Specifically, there is no mention as to whether appeals of the estimation decision are implicated.

recently conducted.  It has to be concerning to the Court that the parties do not appear to have attempted in a meaningful manner to bridge their divide, especially in light of the Court's above-referenced directives that extending exclusivity is conditioned on the parties at least attempting to negotiate.  The Court's previous directives were well reasoned and appropriate and certainly serve as an important backdrop when considering Debtors' request to again extend exclusivity.

10.     The status quo in this case is simple: litigation.  This current case status runs counter to the Court's hope for potential settlement when the last exclusivity extension was granted.  Yet, through this latest exclusivity extension request, this Court has the ability to eliminate a request of the Debtors to essentially extend the status quo.  Denying exclusivity may very well foster the negotiations that have essentially eluded the parties.  While that is certainly an unknown, it is known that negotiations have not been fostered in this current state.  If the Court feels that the status quo is appropriate and is the best way to lead to a plan being confirmed in a reasonable period, then so be it, but it needs to be stressed that this case is no closer to confirmation now than ten months ago when the last exclusivity extension was granted.

11.     When rendering the decision regarding the last request to extend exclusivity, the Court generally asked, what is the "current lay of the land" in this case.  At that time, the Court felt it was appropriate to extend exclusivity because a feasible plan in a reasonable time was possible.  Perhaps now, though, the Court should reassess that decision and find that the time is ripe for the "lay of the land" to change.  At this point, there are no guarantees that a plan can be proposed in a reasonable time, and no likelihood that negotiations will resume.  With that being the case and in light of the Court's previous ruling on this issue, it seems appropriate to then conclude that another extension of exclusivity is not warranted.

12.     One of the more distressing realities of this case is that creditors have not been paid,

4

while professional fees have risen to significantly high levels.  A review of the most recent interim period for fee applications approved by the Court (23rd Interim Period, October-December, 2006) reveals that retained professionals were allowed over $17 million in fees and expenses during that three month interval.  The professional fee burn rate in this case has increased since the beginning stages and has reached very high proportions in the last twelve (12) months.  Unfortunately, the wrong people are being paid in this case.  Creditors continue to wait for money while professionals get paid on a consistently high basis.  There is no question that professional fees will continue to be incurred at these exorbitant amounts if this case remains in its current posture.  Something may need to be done because this case could crash under the weight of this extreme administrative expense burden.  While denying exclusivity may not be the absolute cure, it at least stands as a change to the status quo and marks a step forward in attempting to get this case closer to confirmation by allowing other parties the ability to resolve this case.

13.    In the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress expressed its preference that Chapter 11 reorganizations move expeditiously to conclusion.  The amendments to section 1121 provide a finite 18 month extension period for exclusivity.  In other words, the debtor has 18 months to get its plan together or filing a plan is open to any party in interest.  While the amendments are not binding on this case, they are instructive in presenting the Congressional mandate of Chapter 11 cases and should present a persuasive argument against continually extending exclusivity, even in cases filed before the amendments.  Repeated extensions of exclusivity are not what Congress wants and that directive should serve as guide for this Court when analyzing this tenth request to extend exclusivity.

14.    Debtors continue to grasp and hold onto the exclusivity right with extreme vigor.  Exclusivity, whether granted or not, is not the end of the case.  This is not a drastic measure, such as

5

dismissal or conversion.  What is being discussed here is changing the status quo with an eye toward expeditiously resolving the case.  The UST believes that some type of change is needed in a case that remains in bankruptcy without resolution over six (6) years from when it was filed.  A denial of another extension to exclusivity will not cause the death knell to these cases that the Debtors want everyone to believe will happen.  Instead, the ability for other parties to submit plans may act to foster the consensus that has been so difficult to obtain in this case.  Most importantly, the UST supports the process that will lead this case to an expeditious resolution, but it does not appear that granting another exclusivity extension is the best means to accomplish that goal.

WHEREFORE the UST requests that this Court issue an order denying the Motion and/or granting such other relief as this Court deems appropriate, fair and just.

Respectfully submitted,

KELLY BEAUDIN STAPLETON
United States Trustee, Region Three


BY:      /s/ David M. Klauder
         David M. Klauder
         Trial Attorney
         Office of the United States Trustee
         J. Caleb Boggs Federal Building
         844 King Street, Suite 2207, Lockbox 35
         Wilmington, DE 19801
         (302) 573-6491
         (302) 573-6497 fax machine

Dated: July 6, 2007