IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| W. R. GRACE & CO.,  et al., | : | Case No. 01-01139 (JKF) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | **Objection Deadline: July 6, 2007 at 4:00 p.m.** |
| | : | **Hearing Date: July 23, 2007 at 2:00 p.m.** |
| | : | |
| | : | **Re: Docket No. 16084** |

**UNITED STATES TRUSTEE'S LIMITED OBJECTION TO DEBTOR'S MOTION FOR AN ORDER (A) APPROVING THE AGREEMENTS BY AND BETWEEN W. R. GRACE & CO.-CONN. AND RHODIA INC., (B) AUTHORIZING THE SALE OF CERTAIN ASSETS OF W.R. GRACE & CO.-CONN.'S WASHCOAT BUSINESS TO RHODIA INC. FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT TO RHODIA INC. OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVING A POTENTIAL BREAK-UP FEE; AND (E) GRANTING CERTAIN RELATED RELIEF**

The United States Trustee, by and through her counsel, hereby files the following limited

objection to the Debtor's Motion For an Order (a) approving the agreements by and between W. R.

Grace & Co.-Conn. and Rhodia, Inc., (b) authorizing the sale of certain assets of W. R. Grace & Co.-

Conn.'s Washcoat Business to Rhodia Inc. free and clear of all liens, claims, encumbrances and

other interests; (c) authorizing the assumption and assignment to Rhodia Inc. of certain executory

contracts and unexpired leases; (d) approving a potential Break-Up Fee; and (e) granting certain

related relief (the "Motion"), and represents as follows:

**Introduction**

1.      Kelly Beaudin Stapleton is the United States Trustee ("UST") for Region 3.

2.      Pursuant to 28 U.S.C. § 586, the UST is charged with the administrative oversight

of cases commenced pursuant to Title 11 of the United States Bankruptcy Code.  This duty is part

of the UST's overarching responsibility to enforce the bankruptcy laws as written by Congress and

interpreted by the courts.  *See United States Trustee v. Columbia Gas System, Inc. (In re Columbia*

*Gas System, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest

standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v.*

*Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as

a "watchdog").

3.      Pursuant to 11 U.S.C. § 307, the UST has standing to be heard with regard to the

above-referenced Objection.

### Background

4.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition

for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")

commencing these chapter 11 cases (collectively, the "Chapter 11 Cases").  The Chapter 11 Cases

have been consolidated for administrative purposes only and, pursuant to sections 1107(a) and 1108

of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their

properties as debtors in possession.

5.      Numerous committees representing various constituents have been appointed in this

case.  On April 13, 2001, the UST appointed the Official Committee of Unsecured Creditors (the

"Creditors Committee"). Also on April 13, 2001, the UST appointed the Official Committee of

Asbestos Personal Injury Claimants (the 'PI Committee) and the Official Committee of Asbestos

Property Damage Claimants (the "PD Committee").  On June 18, 2001, the UST appointed the

Official Committee of Equity Holders (the "Equity Committee').  Finally, on May 24, 2004, the

Court appointed David Austern as the Future Claimants Representative (the "FCR").

6.     The Motion requests authority for the Debtors to sell their Washcoat Business, and various assets related to that business, to Rhodia, Inc. (the "Buyer") for approximately $21.9 million. The proposed sale is a private sale and will not be subject to a public auction.  Also through the Motion, the Debtors request authority to potentially pay a break-up fee of $547,500 (2.5% of the purchase price) to the Buyer if the Debtors enter into an alternative sale (the "Break-Up Fee").  It appears that the Break-Up Fee is meant to protect the Buyer in case the Debtors receive a last-minute, unexpected sale offer.

### Basis for Relief Requested

7.     The Third Circuit previously addressed the issue of break-up fees in the bankruptcy context and found that break-up fees can only be awarded after the court has determined that the fee was an actual and necessary cost and expense of preserving the estate.  *See Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.)*, 181 F.3d 527 (3d Cir. 1999).

8.     In *O'Brien*, the Third Circuit Court of Appeals stated that ". . . the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees *were* actually necessary to preserve the value of the estate." *O'Brien*, 181 F.3d at 535 (emphasis added).  The burden is on the Debtors to prove the necessity of, and benefit to the estate from, the proposed breakup fee.  Moreover, although "the considerations that underlie the debtor's judgment may be relevant to the Bankruptcy court's determination on a request for break-up fees and expenses," "the business judgment rule should not be applied as such in the bankruptcy context." *O'Brien*, 181 F.3d at 535.

9.      The UST files this Limited Objection because there are concerns that the Break-Up Fee proposed in this transaction may not meet the standard as set out in *O'Brien*. At the outset though, it should be noted that this issue may become moot by the time of the hearing on the Motion. If the sale with the Buyer is being offered for approval, with no other potential purchasers in play, then there is no payment of the Break-Up Fee and no reason to address this issue. This Objection is filed simply to preserve the UST's arguments if approval of the Break-Up Fee is sought.

10.     This is not a public auction sale, whereby the Buyer's initial bid will be held up against potential purchasers. Break-up fees are common for stalking horse purchasers in that context. In this instance, there is no evidence that the Break-Up Fee has encouraged bidding or attracted other potential bidders to an auction. *See O'Brien*, 181 F.3d at 536. In fact, the opposite is true here. There is no market for bidding on these assets. There is no auction. It appears that the Break-Up Fee is not serving as inducement for the Buyer's bid, but rather another protection to favor the Buyer and increase the cost of acquisition of these assets for other potential purchasers. The Third Circuit has found that to be an impermissible purpose for a break-up fee, *see O'Brien*, 181 F.3d at 535, therefore, the Break-Up Fee should not be approved.

11.     The UST leaves the Movants to its burden and reserves any and all of her rights to, *inter alia*, conduct discovery and to modify, amend, supplement or augment this objection and take whatever other actions are deemed necessary and appropriate.

WHEREFORE, the United States Trustee respectfully requests this Court issue a ruling commensurate with the above referenced objection, and award such other relief as this Court deems

appropriate under the circumstances.

Respectfully submitted,

KELLY BEAUDIN STAPLETON
United States Trustee, Region Three


BY:     _/s/ David M. Klauder_____
David M. Klauder
Trial Attorney
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 fax machine

Dated: July 6, 2007