IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case no. 01-01139 (JFK) |
| | ) | Jointly Administered |
| Debtors | ) | |
| | ) | Related Docket Nos,: 15950, 15955, 15959, 15966, 15987, 16059 & 16250 |

June 26, 2007 Agenda Items 1 through 5

**CERTIFICATION OF DEBTORS' COUNSEL REGARDING PROTECTIVE ORDER ON DEBTORS' THIRD SET OF INTERROGATORIES TO CERTAIN ASBESTOS PERSONAL INJURY PRE-PETITION LITIGATION CLAIMANTS' LAW FIRMS AND REQUEST FOR TELEPHONIC HEARING**

The undersigned hereby certifies that:

1. On May 18, 2007, Debtors served notices of deposition on 21 law firms requesting the production of the attorney "most knowledgeable concerning the activities undertaken by the firm to respond to the W.R. Grace Asbestos Personal Injury Questionnaire."[1] Several law firms, as well as the ACC and the FCR, filed motions to quash (or for protective orders regarding) the deposition notices.[2]

---

[1] The Deposition Notice was served on the following law firms: Alwyn H. Luckey, P.A. [Docket No. 15703]; Baron & Budd, PC [Docket No. 15705]; Cooney & Conway [Docket No. 15707]; Edward O. Moody, P.A. [Docket No. 15709]; Early Ludwick & Sweeney [Docket No. 15711]; Foster & Sear, LLP [Docket No. 15713]; Ferraro & Associates, P.A. [Docket No. 15715]; Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, PC [Docket No. 15717]; Motley Rice, LLC [Docket No. 15719]; LeBlanc & Waddell [Docket No. 15721]; Williams Bailey Law Firm, LLP [Docket No. 15723]; Provost Umphrey, LLP [Docket No. 15730]; Maples & Lomax [Docket No. 15732]; Silber Pearlman, LLP [Docket No. 15734]; Weitz & Luxenburg, P.C. [Docket No. 15735]; Waters & Kraus, LLP [Docket No. 15738]; Law Offices of Peter G. Angelos, PC [Docket No. 15740]; Paul, Hanley & Harley, LLP [Docket No. 15741]; Reaud Morgan & Quinn [Docket No. 15744]; The Wartnick Law Firm [Docket No. 15746]; and Kelley & Ferraro, LLP [Docket No. 15748]

[2] *See Motley Rice LLC's Motion for Protective Order* dated June 4, 2007 [Docket No. 15950]; *Motion of Official Committee of Asbestos Personal Injury Claimants and David T. Austern, Legal Representative For Future Asbestos Injury Claimants, For Protective Order* dated June 4, 2007 [Docket No. 15955]; *Motion of Certain Law Firms to Quash Deposition Notices and for a Protective Order* dated June 5, 2007 [Docket No. 15966]; *Motion of the MMWR Cancer Firms for a Protective Order with Respect to Notices of Deposition Served on Them by W. R.. Grace* dated June 7, 2007 [Docket No. 15987]; *Memorandum in Support of Cooney and Conway's Motion for*

(Continued...)

2.	On June 26, 2007, the Court heard argument concerning these motions. (A copy of the relevant portions of the June 26th hearing transcript [Docket No. 16208], is attached hereto as Exhibit A.) At the hearing, Debtors agreed to withdraw the deposition notices as to all but the following four law firms (subject to a reservation that Debtors may, at a later date, seek depositions of other law firms): Baron & Budd, P.C.; Kelley & Ferrero, LLP; Motley Rice LLC; and the Law Offices of Peter G. Angelos, P.C. (6/26/07 Hrg. Tr. at 32, 67-68)

3.	At that hearing, movants repeatedly voiced their objections to any depositions of the law firms whatsoever and, instead, suggested proceeding by way of written interrogatories, provided that the Court would enter an order that responses to such interrogatories would not waive the attorney-client communication or work product privileges.[3]

4.	The Court agreed to enter an order ruling that responses to the written interrogatories would not waive the work-product or attorney-client privileges. However, as the following exchange makes clear, the Court did not indicate that all information gleaned from the discovery would be entitled to automatic protection from disclosure:

> THE COURT: . . . [I]t appears to me that the appropriate way to begin this process is by a ruling from the Court that any responses will not waive the

---

*Protective Order* dated June 4, 2007 [Docket No. 15959]; Debtors' Combined Response to Motions for Protective Orders Precluding Depositions of 21 Law Firms dated June 15, 2007 [Docket No. 16059]

[3] *See, e.g.* 6/26/06 Hrg. Tr. at 18 (N. Finch (on behalf of Asbestos Claimants' Committee): "The firms will describe how they would respond to those [written interrogatories], provided there is some order from the Court that the responses do not constitute a waiver of the attorney/client privilege o[r] the work product doctrine. That's what I think a lot of the resist[a]nce relates to."); *id.* at 20 (N. Ramsey (on behalf of MMWR law firms): "If we could obtain a ruling by the Court that to the extent that the firms were prepared to provide responses to a limited number of questions . . . , that any response would not waive the work product or attorney/client privilege"); *id.* at 56 (N. Finch (on behalf of Asbestos Claimants' Committee): "[A]s long as there is an order from the Court that says if the answers don't consist of a waiver of the attorney client privilege o[r] the work product doctrine, . . . .[The law firms] would give them the information without the need for the depositions."); *id.* at 61 (N. Ramsey (on behalf of MMWR law firms): "[W]hat we are proposing is that if the firms. . . respond to the four questions . . . and the Court will enter an order providing that information does not waive the privileges, then there does not appear to be any reason to depose counsel.").

attorney client privilege or the work product for which that the responses will be available for uses by any and all experts in this case in the Grace bankruptcy case and for no other purpose *consistent with the other rulings that I've made in this proceeding*. I take it Mr. Bernick that will not cause any problem for the debtor and the use of the information that the debtor expects to make in this proceeding. Is that correct?

MR. BERNICK: That's correct. I think we've been very systematic about not displaying individual identifying information of any kind during the course of this process. *Obviously the statistics that come out of this are then -- do become used...*

THE COURT: ...The *statistics shouldn't cause a problem for work product or attorney client information*. So all right, so that is the ruling of the Court. Responses will not constitute a waiver of the attorney client privilege of the work product privilege to the extent that responses are provided.

(6/26/07 Hrg. Tr. at 72-73 (emph. added)).

5. The Court also emphasized its expectation that the responses to the interrogatories be full and complete:

I'm going to order as to these four firms all of whom are represented here today and all of whom have said on this record that they will produce the responses to the interrogatories provided that the Court issued the non-waiver order *which I had just issued on this order* [referring to the exchange recited in paragraph 4 above] that they will produce full and complete responses. I will hold them to this. I expect full and complete responses. If you don't get it, I'm continuing this motion and then your will get your depositions.

(6/26/07 Hrg. Tr. at 82 (emph. added)).

6. The Court further indicated that it would protect movants' privileges "to the maximum extent that the this Court can offer that protection." (6/26/07 Hrg. Tr. at 110). In response to this offer, the movants reiterated their position that they wanted an order stating that any responses to the interrogatories would not waive the attorney-client or the work-product privileges. (*Id.* at 111 ("MR. FINCH: Your Honor, I think the people would like an order that say[s] responses to interrogatories shall not constitute a waiver of the attorney client privilege and the work product doctrine.")).

7.    On June 27, 2007, Debtors served their Third Set of Interrogatories to Certain Asbestos Personal Injury Pre-Petition Litigation Claimants' Law Firms. Subsequently, the four law firms provided a proposed protective order that not only contained the non-privilege waiver provision, but also a provision requiring blanket sealing of information provided in the responses:

> The Debtors and all participants in this discovery shall maintain the answers in the manner required pursuant to 11 U.S.C. § 107(b) for papers filed under seal with the Court and such answers when served shall be considered under seal in accordance with such statute. Any and all information provided to the Debtors in response to the Third Set of Interrogatories must be maintained in the strictest confidence and not disclosed to any entity or individual not expressly authorized under this Order.

8.    Debtors indicated their objection to this sealing language,[4] and the law firms responded that removing such language would be "unacceptable." The law firms further stated that, unless Debtors agreed to their proposed form of order, they would file the proposed order with the Court upon certification of counsel.

9.    As a result, the law firms have prepared and submitted to the Court a Joint Certification of Counsel [Docket No. 16250] and draft order which, among other things, includes the broad sealing provisions to which Debtors objected.

10.   Debtors believe that the law firms' proposed form of order is inconsistent with the Court's prior protective orders in this case (including protective orders governing the disclosure of information produced over claims of privilege) and that the proposed blanket "sealing" requirement finds no statutory basis in Section 107(b) of the Bankruptcy Code (nor any other applicable Code provision or Bankruptcy Rule).

---

[4] Debtors also sought minimal word changes to other portions of law firms' proposed form of order, none of which Debtors believe are disputed by the law firms.

11.    Under Section 107(b), sealing is proper only in limited circumstances. That Section provides:

> (b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may--
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

12.    The information requested in the Third Set of Interrogatories is not a "trade secret or confidential research, development, or commercial information" nor is it "scandalous or defamatory" matter.[5]  Consequently, Section 107(b) is inapplicable.[6]

13.    As the parties seeking "the sealing of part of the judicial record," the law firms "bear[] the burden of showing that the material is the kind of information that courts will protect

---

[5] Section 107(c) provides additional protection against the disclosure of certain individual identifying information "to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property . . ."  Debtors have no objection to redacting and filing under seal portions of briefs that would disclose such individual identifying information.

[6] The law firms' Certification of Counsel contends that Debtors' objection to portions of their proposed form of order is "unfathomable given the Debtors' recent filing of an agreed motion for a protective order in conjunction with Congoleum Corporation with respect to a third party subpoena served upon Congoleum." (*See* Jt. Certification of Counsel [Docket No. 16520] at 3-4, ¶ 6.) However, the Congoleum protective order, unlike the one at issue here, specifically contemplates limits on the use "of electronic datasets, information, and materials maintained by the Congoleum Corporation." (*See* 7/3/07 Agreed Mot. for Protective Order [Docket No. 16226], Proposed Stipulation and Protective Order ¶ 1.) As the Congoleum agreed Motion makes clear, the predicate for protecting the disclosure of such materials is specifically found in Fed.R.Civ.P 45(c), which authorizes a court to enter an appropriate protective order in response to a subpoena if the subpoena "requires the disclosure of a trade secret or other confidential research, development, or commercial information." *See* Agreed Mot. for Protective Order at 1; Fed.R.Civ.P. 45(c)(3)(B)(i). And, as discussed above, this protection of "commercial information" through sealing is explicitly permitted by 11 U.S.C. 107(b), unlike the broad sealing provision requested by law firms here.

In addition, although not advanced by the law firms as basis for the automatic sealing provision, Bankruptcy Rule 9018 (and Local Rule of the United States Bankruptcy Court for the District of Delaware 9018-1(b)) similarly fails to provide a basis for blanket sealing of all material provided in responses to the Third Set of Interrogatories. *See* Rule 9018 (" . . . the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation.").

DOCS_DE:129017.1

and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (citations and quotations omitted). The law firms have not made such a showing here.

14. As a result of the disagreement regarding the scope of the protective order, the Debtors have prepared the order attached hereto as Exhibit B (the "Order"), which is substantially similar to the proposed form of order advanced by the law firms, except: (i) it removes the broad sealing language; and (ii) it, instead, provides that briefs or other filed pleadings containing confidential information about individual claimants will be filed in redacted form, with an unredacted version filed under seal.

15. Debtors believe that the Order accurately reflects the intention of the Court as evidenced at the June 26th hearing. The protective order proposed by Debtors is "consistent" (*see* 6/26/07 Hrg. Tr. at 72) with the Court's previous protective orders entered in this case, including protective orders issued following concerns about producing materials over privilege objections. *See, e.g.*, 1/2/07 Certain Asbestos Claimants' Firms' Motion to Alter or Amend Supplemental Order Regarding Motions to Compel Claimants to Respond to The W.R. Grace & Co. Asbestos Personal Injury Questionnaire Pursuant to Fed. R. Bankr. P. 9023 and Alternative Request for Entry of a Protective Order; 3/6/07 Order on same [Docket Nos. 14203, 14763] (granting request for protective order regarding information ordered produced over objections that such material was protected from discovery by the "consulting expert privilege"); 5/9/07 Order Denying Baron & Budd, P.C., LeBlanc & Waddell, LLP, and Silber Perlman, LLP, Request to Stay Compliance with the Consulting Expert Order Pending Appeal [Docket No. 15627].

16. Time is critical to entry of the Order. The law firms have indicated they will not respond to the Third Set of Interrogatories on July 13th (as agreed to by the parties), until a protective order is entered. Consequently, Debtors request an immediate telephonic hearing to consider entry of the Order.

Dated: July 9, 2007

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Lisa G. Esayian
Samuel Blatnick
Michael Dierkes
200 East Randolph Drive
Chicago, IL 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

–and–

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession