# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Case No. 01-01139 JKF |
| | . | |
| W. R. GRACE & CO., | . | |
| et al., | . | USX Tower - 54th Floor |
| | . | 600 Grant Street |
| | . | Pittsburgh, PA 15219 |
| Debtors. | . | |
| | . | June 26, 2007 |
| . . . . . . . . . . . . . . | . | 8:54 a.m. |

TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Asbestos Claimants Committee: | Campbell & Levine, LLC<br>By: MARK T. HURFORD, ESQ.<br>1700 Grant Building<br>Pittsburgh, PA 15219 |
| For the Asbestos Claimants Committee: | Caplin & Drysdale<br>By: NATHAN D. FINCH, ESQ.<br>One Thomas Circle, N.W.<br>Washington, DC 20005 |
| Audio Operator: | Cathy Younker |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail: jjcourt@optonline.net**

**(609)586-2311 Fax No. (609) 587-3599**

discovery period. And if they want to play that game, we can do it, too. We can start noticing depositions of co-defendants and Grace's defense counsel. But, that's not what this is about.

This is about expert estimates of Grace's liability. And I think the experts have what they need to do their job. You've got our expert reports. You'll get Grace's, presumably today.

So, I don't think these depositions are the right way to get this information that Grace says it needs. And although I dispute whether it really needs it, I think that there is a better way to do it. And I think the same basic information that they're describing on Page 2 and 3 of their papers can be elicited in responses to properly tailor interrogatories that I believe that you'll hear from Mr. Esserman and Mr. -- excuse me -- Mr. Esserman and Ms. Ramsey.

The firms will describe how they would respond to those, provided there is some order from the Court that the responses do not constitute a waiver of the attorney/client privilege of the work product doctrine. That's what I think a lot of the resistence relates to.

And so, with that, Your Honor, that's my -- on behalf of the ACC, my position on this. I don't think any depositions should go forward. I think the information can be obtained in other ways. And I will turn the podium over to my counsel --

those same types of concerns.

For example, in the debtor's response to the 21 motions, the debtor identifies three topics that it would like to cover in the depositions. Those three topics all involve the processes used by the law firms to identify and respond to various types of questions.

Any time a question is asked concerning the processes of a law firm, the law firms -- or product privileges necessarily implicated. If we could obtain a ruling by the Court that to the extent that the firms were prepared to provide responses to a limited number of questions which I'll identify in a moment, that that would not violate -- that any response would not waive the work product or attorney/client privilege.

The firms are generally prepared, and I say generally because our proposal would be that any firm that was willing to do this and would do it within the time frame that I'm about to provide, would request that the Court enter an order ordering that the depositions of those firms not be had at least with respect to the current topics identified.

What we would propose, Your Honor, is that the debtor has served a -- in its second set of interrogatories, four questions. One of the questions asks, "What steps were taken by the law firm to find any and all responsive documents or information in the possession or control of other law firms or

Luxenberg off the chart and I said we'll hold that in suspense, as well.

So, we come down to four different firms that we're talking about here today; Kelly and Ferraro, Motley Rice, Baron and Budd and the Angelos firm. And with respect to -- I'm now going to go through each one in terms of what they said on the privilege interrogatories, compliance interrogatories and depositions.

With respect to the Angelos firm, the Angelos firm did comply -- they actually -- affidavit of compliance with their -- establishing the predicates for the consultant's privileges. They have produced over 500 plus negative B reads that previously were being withheld. It would've been nice to know that before, but at least we have those now.

So, I provided a notice to Mr. Esserman that we would not be pursuing the deposition with respect to the predicates or the assertion of the consultants privileges. We weren't going to be doing that.

What did the Angelos firm do with respect to compliance -- the compliance interrogatory? What did you do to respond. They objected. What did they do with respect to the deposition? They objected. What about Baron and Budd? Baron and Budd, as a response to the privilege predicate interrogatories we're going to go through, with respect to the how to comply with the PIQ object deposition, object.

don't seem to be particularly effective.

MR. FINCH: May I move to the chart here? There are two, I call them first set of interrogatories, second set of interrogatories and depositions. First set of interrogatories related to basically the privilege law on the B reads. That's not what we're talking about here. Second set of interrogatories relating to the compliance and the depositions go to the compliance with -- not so much compliance what processes did you use to respond to the questionnaires.

What I'm saying is in addition to the number of depositions the same information about how it is you responded to the questionnaires can be and has been asked in the compliance interrogatories which thus far have been objected to. But my understanding of the proposal I just heard from Mr. Ramsey -- excuse me, Mrs. Esserman and Ms. Ramsey and I believe the Motley Rice firm, although they didn't speak will be on board with this as well is they would answer information, interrogatories, designed to elicit that information in the second category. That as long as there is an order from the Court that says if the answers don't consist of a waiver of the attorney client privilege of the work product doctrine. And so therefore they would give them the information without the need for the depositions.

You know, in all of what he said he said nothing about the fact that he's exceeded the number of fact witness

good faith basis to believe that person was exposed to Grace asbestos. That implicates for product privilege. It may implicate the attorney client privilege. We can't answer the interrogatories in the second set on the basis of the way that they are asked without this Court ordering that if we are prepared to answer them, if we do answer them, that we do not waive the privilege.

So the first point that I wanted to respond to is we're not trying to engage in a negotiation. We simply cannot answer the questions the way they are asked. To my knowledge, there have only been two sets of interrogatories that have been served on the law firms. With respect to the five firms that I represent, responses were provided to the first set. With respect to the second, they were not because of the way that the questions were phrased.

What we're proposing today is, and I've still not heard any additional information, factual information that the debtor has identified that we have not said and I don't represent all the firms. So I can't represent that the firms will do this. But what we are proposing is that if the firms do by two weeks from Friday respond to the four questions that I identified before which appear to give the debtor what it wants and the Court will enter an order providing that information does not waive the privileges, then there does not appear to be any reason to depose counsel.

answer it so we don't have all these inferences and speculation on what the facts are with respect to this population of people. We've come very far in gathering a lot of the data but again and again and again the law firms to talk about money here is absurd in the case of these firms. They are going to have tens of millions, hundreds of millions of dollars coming out of this case, even more. They won't give us the basic answers to the basic questions so we know what it is that our experts can count on and they won't be cross examined on the basis of speculation, Your Honor. Thank you.

MR. FINCH: We would just like a ruling, Your Honor.

THE COURT: Okay, well with respect to the issue that the debtor is only moving as to four firms now, I think the problem is that the debtor has served the notices of deposition on 21 firms. I don't know whether the debtor has formerly withdrawn the rest or not.

MR. BERNICK: Yes, we have formerly withdrawn the request for all but the six, not to say that we won't make a request in the future but we are not pursuing that and with respect to the six we have taken two off that is Early Ludwick and Weitz and Lutzenberg. Early Ludwick because it's a more complicated case and Weitz and Lutzenberg because we have yet to receive their interrogatory answers. So the only notices that we were told constantly to make motions to go after particular firms so that is exactly what we did. We're only

and whipped by their able counsel. So we would like to get this discovery finalized.

I know counsel thinks we're trying to hide the ball or whatever but Your Honor what we're trying to do is avoid spending all the time, effort and money needed to respond to Grace's voluminous requests.

I conferred with counsel including Mr. Esserman and Ms. Ramsey last night and I concur with what they have said and we would also rest on our papers. Thank you very much.

THE COURT: All right. Then as to the four firms that are involved, number one it appears to me that the appropriate way to begin this process is by a ruling from the Court that any responses will not waive the attorney client privilege or the work product for which that the responses will be available for use by any and all experts in this case in the Grace bankruptcy case and for no other purpose consistent with the other rulings that I've made in this proceeding.

I take it Mr. Bernick that will not cause any problem for the debtor and the use of the information that the debtor expects to make in this proceeding. Is that correct?

MR. BERNICK: That's correct. I think we've been very systematic about not displaying individual identifying information of any kind during the course of this process. Obviously the statistics that come out of this are then -- do become used. So --

THE COURT: The statistics shouldn't cause a problem for work product or attorney client information. So all right, so that is the ruling of the Court. Responses will not constitute a waiver of the attorney client privilege or the work product privilege to the extent that responses are provided.

Secondly, with respect to, and I'll call it Ms. Ramsey's proffer because she's the person who articulated it, it seems to me that by beginning with either and I at this point am not making rulings, I'm throwing this out for discussion. By starting a deposition or interrogatories, whichever, with the four areas that Ms. Ramsey has identified Mr. Bernick it seems to me that that is getting to the guts of what the debtor is attempting -- the information the debtor is attempting to get.

Frankly, I'm not totally convinced that this discovery is going to advance the ball forward but I have been also consistent in this proceeding in letting the debtor attempt to prove its case, its way. If the debtor wants to get this information we are very close to the end of this process and I'm going to let the debtor get this information. But it does seem to me that an effort to minimize the cost and the inconvenience and the hassle and whatever other negative words you want to put on this process ought to be advanced by the debtor. If it can be done by written interrogatory, I suggest

asked for. I'm not sure I'm going to permit beyond these four, Mr. Bernick. I mean, enough is enough.

MR. BERNICK: I haven't gotten anything by way of answers to any of these things.

THE COURT: I understand. And I'm going to order as to these four firms all of whom are represented here today and all of whom have said on this record that they will produce the responses to the interrogatories provided that the Court issued the non-waiver order which I had just issued on this order that they will produce full and complete responses. I will hold them to this. I expect full and complete responses. If you don't get it, I'm continuing this motion and then you will get your depositions.

MR. BERNICK: Then I at this point, Your Honor, again I don't mean to show any disrespect to the Court but I don't know what it is that we are going to get in two weeks. If the question was this imposes well what did you do to comply with the interrogatory answers, that is a classic open-ended question that the counsel for the respondent would ask.

THE COURT: I have a nice conference room Mr. Bernick and I suggest that at the end of this next motion when we set the schedule, you folks may go use it and you can work out the specific interrogatory questions. I'll be here so if there are any objections you can come in and get me. We'll go back on the record and I'll make rulings and by the end of the day

in a position on behalf of their clients to make an offer of that waiver right now. To the extent that the firms are prepared to answer these questions provided that the Court enters an order that says your attorney client privileges and your work product privileges are preserved and not waived by answering these questions in whatever format they are eventually transmitted by the debtor to your firms, to the firms that you represent. I am so ordering.

So those answers will be protected. The questions in whatever format and in whatever format the answers come to those questions will not constitute a waiver of either the attorney client or the work product privilege. The debtor has so agreed, correct Mr. Bernick?

MR. BERNICK: Correct.

THE COURT: Anybody on behalf of the plan proponents, plan supporters, disagree with that prospect?

MR. BENTLEY: No, Your Honor.

MR. PASQUALE: No, Your Honor.

THE COURT: All right. So everyone is in agreement and the Court is so ordering. How about the committees and the ACC and the FCR, any disagreement?

MR. FINCH: No, Your Honor.

MR. MULLADY: No.

THE COURT: Okay. So your clients are protected to the maximum extent that this Court can offer that protection.

Your clients are protected and whatever form of order you wish me to sign, you may prepare and I will sign. If you want it simply added to the interrogatories, this part of the court order, then I'll have Mr. Bernick add a statement to that effect on the interrogatories. However you want to work it out is fine with me.

MR. FINCH: Your Honor, I think people would like an order that say responses to interrogatories shall not constitute a waiver of the attorney client privilege and the work product doctrine.

THE COURT: Fine.

MR. FINCH: And I would ask that the interrogatories be served out by close of business tomorrow if that is doable.

MR. BERNICK: Well wait a minute. I didn't understand that the Court was finished. I raised a question which is what these are going to be answered and I heard again from Mr. Esserman a very careful statement that was not a commitment that these questions would be answered. Rather that they believe that they will provide the information they believe (a) we need and (b) we're entitled to. And we have to wait to see what that is.

We have put down on paper exactly what it is that Your Honor's order required on December 22nd with respect to B reads and what exactly, we actually crafted this by looking at the questionnaire and basically saying did you answer the