```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE

IN RE:                    .    Case No. 01-01139(JKF)
                          .
W. R. GRACE & CO.,        .
et al.,                   .    USX Tower - 54th Floor
                          .    600 Grant Street
                          .    Pittsburgh, PA 15219
          Debtors.        .
                          .    June 29, 2007
. . . . . . . . . . . ..        10:55 a.m.
```

```
                     TRANSCRIPT OF HEARING
             BEFORE HONORABLE JUDITH K. FITZGERALD
              UNITED STATES BANKRUPTCY COURT JUDGE
```

TELEPHONE APPEARANCES:

```
For the Debtors:        Kirkland & Ellis LLP
                        By:  AMANDA BASTA, ESQ.
                             DAVID M. BERNICK, ESQ.
                             SAM BLATNICK, ESQ.
                             RENEE SMITH, ESQ.
                             JANET BAER, ESQ.
                        Aon Center
                        200 East Randolph Drive
                        Chicago, IL 60601

For the Asbestos        Stroock & Stroock & Lavan, LLP
Property Damage         By:  ARLENE KRIEGER, ESQ.
Claimants Committee:    180 Maiden Lane
                        New York, NY 10038-4982


Audio Operator:         Cathy Younker
```

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609)586-2311      Fax No. (609) 587-3599**

TELEPHONE APPEARANCES (CONT'D):

```
For Official Committee      Bilzin, Sumberg, Baena, Price &
Asbestos Property              Axelrod, LLP
Damage Claimants:           By:  MATTHEW KRAMER, ESQ.
                            200 South Biscayne Boulevard
                            Suite 2500
                            Miami, FL 33131

For the Asbestos            Campbell & Levine, LLC
Claimants Committee:        By:  MARK T. HURFORD, ESQ.
                            1700 Grant Building
                            Pittsburgh, PA 15219

For the Official            Anderson, Kill & Olick, P.C.
Committee of Asbestos       By:  ROBERT HORKOVICH, ESQ.
Claimants:                  1251 Avenue of the Americas
                            New York, NY 10020-1182

For the Asbestos            Caplin & Drysdale
Claimants Committee:        By:  WALTER SLOCOMBE, ESQ.
                                 NATHAN FINCH, ESQ.
                            One Thomas Circle, N.W.
                            Washington, DC 20005

For Various Claimants:      Stutzman, Bromberg, Esserman & Plifka
                            By:  SANDER L. ESSERMAN, ESQ.
                                 VAN J. HOOKER, ESQ.
                                 DAVID J. PARSONS, ESQ.
                            2323 Bryan Street, Suite 2200
                            Dallas, TX 75201

For Certain Cancer          Montgomery, McCracken, Walker & Rhoads
Claimants:                  By:  LEONARD A. BUSBY, ESQ.
                                 NATALIE D. RAMSEY, ESQ.
                            123 South Broad Street
                            Avenue of the Arts
                            Philadelphia, PA 19109

For Official Committee      Speights & Runyan
Asbestos Property           By:  DANIEL SPEIGHTS, ESQ.
Damage Claimants:           200 Jackson Avenue, East
                            Hampton, SC 29924
```

1          THE CLERK:  This is Cathy calling from the courtroom.

2  I want to remind the parties to please identify yourself each

3  and every time you speak.  Please shut off any blackberries or

4  any such devices.  No cell phones, no speaker phones.  The

5  judge is also participating from the Virgin Islands.  She

6  will -- so she'll be on the telephone, also.  Please keep your

7  voice up and speak directly into your receivers.  Judge will be

8  with us in a few minutes.  Hold on, please.

9                      (Pause)

10          THE OPERATOR:  Your Honor, this is the operator.  Can

11  you hear me?

12          THE COURT:  Yes, sir.  Thank you.

13          THE OPERATOR:  Uh-huh.  And we are connected with the

14  court, as well.

15          THE CLERK:  Judge, we're ready to go whenever you

16  are.

17          THE COURT:  Are the parties on?

18          THE CLERK:  Yes, Judge.

19          THE COURT:  Okay.  Thank you.  This is the matter of

20  W.R. Grace.  This is Judge Fitzgerald.  I am sitting in today

21  in the Virgin Islands and this hearing is being recorded in

22  Pittsburgh.  I really don't have an agenda letter, so I do not

23  know who is participating or even what the issue is.  And so if

24  I could first, I guess, get entries of appearance from

25  everyone, and then perhaps the debtor's counsel can explain

1 what we're going to do today.  That would be helpful.  So,

2 could I get entries of appearance, please?

3          MS. BAKER:  Judge, this is Mona.  We do have a court

4 call list, which I forwarded, but I guess you didn't get it.

5 We could read it into the record from here or you can have

6 folks identify themselves.  It's up to you.

7          THE COURT:  Save some time.  Mona?

8          MS. BAKER:  I didn't hear what you said.

9          THE COURT:  If you could just read it, Mona, please,

10 that would save some time.

11          MS. BAKER:  All right.  Amanda Basta, David Bernick,

12 Sam Blatnick, Renee Smith, Arlene Krieger, Matthew Kramer, Mark

13 Hurford, Robert Horkovich, Walter Slocombe, Nathan Finch,

14 Sander Esserman, Van Hooker, David Parsons, Leonard Busby,

15 Natalie Ramsey, Daniel Speights, Janet Baer.

16          THE COURT:  All right.  Thank you.  Who -- Mr.

17 Bernick?

18          MR. BERNICK:  Yes, Your Honor.

19          THE COURT:  Can you tell me what we're going to be

20 doing today, please?

21          MR. BERNICK:  Yes.  I believe that the

22 interrogatories that we're seeking to propound on the four

23 firms -- Your Honor is familiar with who those firms are -- we

24 had a meet and confer yesterday that was very productive and

25 the firms have agreed to answer those interrogatories by the

1  13th of July.  So, I think that the specific purpose for this

2  call, which was to resolve any objections that there were going

3  to be to those interrogatories, that has been booted by virtue

4  of the meet and confer process.

5        There's still an outstanding carryover issue which,

6  as Your Honor will recall, discussing the need, I guess, in

7  response to the concern for the law firms the need for

8  confidentiality, and there was to be an order entered on that.

9  And in my discussion with Mr. Esserman last night, my

10 understanding, at least, is that we're going to see something

11 on that coming from the law firms and then I think it'll be put

12 before Your Honor.  And, obviously, that should be done before

13 the interrogatory answers are provided.

14       But I think that that matter is resolved for now.

15 I -- there are only two comments that I would have to make sure

16 that we're all reading off the same page.  One is that this --

17 although Your Honor has indicated that you want a process that

18 could be followed with respect to these kinds of issues going

19 forward, we only do have these four law firms before us now.

20 There continued to be developments, interrogatory answers being

21 received by other firms or the failure to answer

22 interrogatories by other firms.

23       There also are further responses that we've received

24 from these four firms, so I don't want Your Honor to have the

25 impression that the agreement that we've reached with respect

1 to the interrogatories that we were working on the other day,

2 (a) applies to all firms, and/or (b) somehow resolves all

3 issues.  I think that Your Honor indicated that this was a very

4 important step, and I think that we've reached agreement on

5 this step with respect to these firms recognizing that Your

6 Honor then will want to achieve consistency when it comes to

7 the other firms.

8        The second point that I think in retrospect probably

9 wasn't completely clear because our draft didn't include this.

10 We were just trying to get it out the door.  But I then sent an

11 email follow-up on it, is that we need to have these

12 interrogatory answers verified by the firm.  They don't have to

13 be verified by the claimant, but they have to be verified by

14 the firm.  I think that's where we came out the other day.  But

15 with those statements, I think that, unless others disagree,

16 that's at least my understanding of where we ended up yesterday

17 at the end of the day.

18        THE COURT:  All right.  Anyone else wish to be heard

19 on the matter of the interrogatories?  Okay.  Then if we don't

20 have anything to address with respect to the interrogatories,

21 what are we going to be addressing, if anything?

22        MR. BERNICK:  Right.  Yeah, well, there's a house --

23 there's a fairly important housekeeping matter, and that

24 pertains to the Anderson Memorial argument which is scheduled

25 on class certification for the 5th of July, next week.  Your

1  Honor will recall that there was dialog between Mr. Speights

2  and I about the need to have the exhibits exchanged.  So there

3  was an agreement reached that the exhibits would be exchanged

4  on Monday, noon.  Mr. Speights called me a couple days ago.  I

5  think we spoke yesterday and indicated that the volume of

6  documents was much greater than he originally had anticipated,

7  as there were literally boxes of documents, and that as a

8  consequence we were going to get a very substantial volume of

9  documents on Monday.

10      We had a discussion about whether they could be

11 categorized or whether there's a way to deal with it

12 efficiently.  Obviously, we have people -- a lot of people

13 working on this, and we can spend our time going through them.

14 But the real -- the ultimate burden, I know, is on the Court.

15 And we've decided that the best idea -- well, I'll take

16 responsibility.  I thought it was important enough to bring

17 before the Court now because it will have a significant impact,

18 unless we can figure out some answer to it, on the feasability

19 of just proceeding.

20      I -- you know, our position is that this is a class

21 certification hearing.  It's been known about forever.  It was

22 indeed pushed back repeatedly and then even most recently it

23 was rescheduled to be at a later date.  So none of this can be

24 a surprise -- exhausted briefs.  I mean, I don't have to go

25 through the whole thing and point it.  I think it's fairly

1 simple, which is there's been more than adequate opportunity to

2 have this focus, moreover, because it's class certification.

3 This is not a hearing on the merits, doesn't require extensive

4 fact development.  Typically class certification discovery and

5 the factual submissions that are made in connection with class

6 certification are quite limited.  And we just don't see why we

7 have to be dealing with boxes and boxes of exhibits.

8        However, we do not want to have this hearing

9 postponed.  It -- you know, our experience, we would submit,

10 Your Honor, is that the more time that passes the more takes

11 place.  And Your Honor's been generous to the other side in

12 allowing the hearing to take a day.  So, there's no question

13 but that all that needs to be said can be said.  But to have

14 this all kind of degenerate into a huge paper process is

15 just -- I don't think it's contemplated by the rules.

16        So we would ask that Mr. Speights be limited to no

17 more than 200 exhibits, which is overwhelming in number.  And

18 if there are certain kinds of exhibits as to which there are

19 voluminous other examples, there's no reason why that can't be

20 specified.  And we don't have to deal with all the voluminous

21 other examples.  We can have a look at them if they're

22 segregated.  And we can stipulate that there are many, many

23 other examples.  But to have to deal with each one of these

24 things as an individual piece of paper and be at risk for what

25 each one of those pieces of paper might or might not say, and

1  to have it run into the thousands of pages would, again, we

2  just think it is completely inconsistent with the process.

3          So we would ask that the limitation be imposed of 200

4  exhibits, and that they be exchanged per the schedule that we

5  had contemplated before, that we proceed according on the 5th

6  to finally get this thing argued.

7          MR. FINCH:  Your Honor, this Nathan Finch for the

8  P.I. Committee.  May I be excused?  As fascinating as the

9  Anderson Memorial issue is, I don't think there's any more P.I.

10  issues involved in today's call.

11          THE COURT:  I'll -- if you're not going to

12  participate in the hearing on Anderson Memorial, yes.

13          MR. FINCH:  Thank you, Your Honor.

14          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.  I'm

15  going to disconnect, also.

16          MR. BUSBY:  Your Honor, this is Leonard Busby.  I'm

17  going to disconnect in light of the fact that I understand

18  there are no more personal injury matters to be addressed --

19          MR. BERNICK:  Yeah, Jan, I don't think that are any,

20  are there?  Was there anything else that we thought we might

21  discuss that was personal injury related?

22          MR. BLATNICK:  Sam here.  I think that was it.

23          THE COURT:  Folks, anybody's free to disconnect, but

24  the stipulation is that whatever matters we get into, we get

25  into.  So you may disconnect at your pleasure, but whatever we

1  talk about, we talk about.  As far as I'm concerned, the only

2  issue at this point that I intend to discuss are documents

3  related to Anderson Memorial.  But these hearings have a way of

4  going far afield, and if they do, they do.  So you disconnect

5  at your own risk.  Anybody who chooses to disconnect may do so.

6  Mr. Speights, what is it that's going to be -- that is going to

7  -- of exhibit.

8          MR. SPEIGHTS:  Your Honor, I do not think we have any

9  significant problem.  Let me explain, (1) we're not seeking a

10 continuance of the hearing on July 5; (2) we are doing our best

11 to comply with Your Honor's directive about the exchange of

12 documents and I might in a moment go over that to make sure

13 we're all on the same wavelength portion, and we do now have a

14 transcript of the hearing last Monday.  Thirdly, Your Honor, I

15 told Mr. Bernick by email several days ago that I now thought

16 the number of documents would consist of a number of boxes

17 which I'm about to explain to you and I suggested a meet and

18 confer on that, and we did have a meet and confer.

19         Your Honor, I'm sorry that at the hearing last Monday

20 I could not give you an accurate estimate of the number of

21 documents, but frankly, not only had that issue not come up in

22 discovery, it had not come up in the previous week when we had

23 the telephone conference and nobody spoke to me about it at the

24 hearing.  My guess, and I call it a guess, was wrong, but I

25 think it's very manageable.

**J&J COURT TRANSCRIBERS, INC.**

1          What we have, Your Honor, are probably 15 banker's
2  boxes of sales records that consist -- and many of which, I
3  might add, were provided to the claims agent.  I can't figure
4  out what was provided to the claims agent, and what was not
5  provided to the claims agent.  But, in any event, we are
6  prepared to serve Mr. Bernick with those boxes either in
7  electronic form or in hard copy, or maybe some combination,
8  before noon on Monday, as Your Honor has directed, so that
9  those are one group of documents pertaining to sales of Grace's
10 products primarily consisting of either invoices or what we
11 call billing registers.  And I might add, most of those
12 documents, the vast majority of those documents, were produced
13 by Grace in the litigation and maintained by Grace somewhere.

14         Now, that's a discrete set.  I'm perfectly aware that
15 Mr. Bernick objects to any of those documents coming in.  I
16 will offer him -- I think Mr. Bernick does not have to sit down
17 or any members of his staff and review each piece of paper in
18 that category of boxes and that category of documents one by
19 one.  That's what consists of the massive number of documents
20 that Mr. Bernick has expressed concern about.

21         So, Your Honor, we have -- I can go back to square
22 one.  We have full buckets.  One bucket is the Anderson
23 documents that Your Honor has numbered and which we are listing
24 on the exhibit list by number that Your Honor placed on them
25 when you had them in your chambers.  Bucket Number 2, Your

1 Honor, are those documents that are Grace documents from this

2 proceeding.  I would think all of those on the docket, perhaps

3 a transcript is not on the docket, but all of those we will

4 identify on the exhibit list.

5 　　　　Bucket Number 3 will be that group of documents I'll

6 call everything else, everything other than the foregoing and

7 the sales documents.  And, again, those are a manageable number

8 of documents.  I estimated at the last hearing -- I guessed was

9 my technical word -- eight inches.  I'm not sure if it'll be 16

10 inches or 7 inches, but some manageable group of documents

11 which we will serve by noon on Monday.  And the huge volume of

12 documents -- and, again, I'm estimating those others, too, Your

13 Honor.

14 　　　　We are working -- Mr. Fairey and I and those within

15 my office are working to try and identify those documents.  But

16 the huge volume of documents consist entirely of sales records

17 or sales related information, and I don't think that's going to

18 present a problem.  But I'm prepared to give Mr. Bernick all

19 those boxes in electronic and hard form by noon on Monday.  And

20 all I can say, whatever is is and that's what it is, and we're

21 doing the best to comply with Your Honor's directive.

22 　　　　MR. BERNICK:  Your Honor, just briefly.  This is not

23 proper process by any stretch of the imagination.  Because of

24 the briefing, any and all pieces of paper, facts, evidence --

25 that's the whole idea of a briefing schedule.  If you have

1  briefs and they should have been referenced long, long ago.

2  And we now have a document dump.  And even setting aside the 15

3  boxes of invoices, I hear about what might now be 16 inches of

4  documents in one category.  God knows how many in other

5  categories.  It's just a document dump.

6          That's not -- that doesn't show proper respect for

7  the Court, doesn't show proper respect for this proceeding.

8  You don't just have a document dump on the eve of a class

9  certification hearing and say, well, then you'll be able to

10 take a look at it and figure out what it is that's going to

11 happen.  And there's been no showing, zero showing, in any of

12 this that Mr. Speights has a particularized need for departing

13 from basic process in preparing for a hearing.  There's been no

14 demonstration that somehow new evidence has been uncovered or

15 there's some other excuse or that he's been caught by surprise.

16          This is all a function of his preference to dump a

17 lot of documents on us and on the Court because he wants to

18 "make a record."  Well, the rules set out how to make a record.

19 And this is not in accordance with the rules or any kind of

20 proper process.  Still haven't heard any demonstration of what

21 particular documents or kinds are documents would necessitate

22 having over 200 exhibits.  I picked 200 because I think as a

23 practical matter I cannot fairly, including working with my

24 people, go through more than 200 exhibits a couple days before

25 a hearing, including a holiday, and figure out exactly how

1  we're going to respond to it and pull the documents that are

2  necessary to respond to it.  And I don't think I should have to

3  do anything more than that.  I mean, that's just a basic

4  assurance of due process.

5           So, the exhibits, the boxes of invoices, they don't

6  serve any -- what does that attempt to establish, that there

7  are lots of invoices.  Everybody knows that there are lots of

8  invoices.  Doesn't establish numerosity.  We don't know that

9  the invoices actually represent product that was installed or

10 that it's still in place, or that those lawsuits, if there were

11 lawsuits about those buildings, haven't already been resolved,

12 or whether those people are represented already in connection

13 with claims that are pending in this case.

14          So he says, I got 15 boxes, and establishes

15 numerosity.  It may be tendered for that purpose, but it

16 doesn't do anything of the kind.  It imposes an incredible

17 burden on us.  We're then at risk of somebody after the fact

18 saying, okay, well, I've now parsed it all out and there were x

19 buildings and y -- no, I think as a matter of law, Your Honor's

20 already ruled on this.  But if these documents come in, they're

21 then part of the record.  If they don't come in, then I don't

22 have to worry about them, but I have to worry about them now is

23 if they may come in.

24          So I don't think that there has been any

25 demonstration here of some need for some extraordinary

1 procedure.  He should have 200 documents.  And if he wants then

2 to ask for permission to extend that number to include some

3 particular documents, some limited number of particular

4 documents, then I'm totally amenable to considering those

5 additional documents.  But I think that presumptively 200

6 documents is more than enough here.

7          MR. SPEIGHTS:  Your Honor, respectfully, Grace is the

8 one abusing the process.  There was no pre-trial before we were

9 going the first time.  Mr. Fairey's surgery caused us to

10 postpone it.  At that point, Mr. Bernick calls and said can we

11 have a pre-trial.  We were on a telephone call two weeks ago

12 that no request was made like we normally do.  Your Honor,

13 yourself, said you thought later that, well, we should have had

14 something on the standing of documents.  Mr. Bernick raised

15 that for the first time last Monday, and I said we are going

16 to -- this is the process response.  I said that, you know, we

17 will comply with the order and give you all these documents.

18          Now, Your Honor is not deciding today what's

19 admissible and what's not admissible.  Your Honor may not allow

20 me to put in certain documents in evidence, but I am exchanging

21 the documents with Mr. Bernick that he requested.  He's going

22 to object to all of these documents and that's for the reasons

23 he just said.  I'm just trying to comply with the process, Your

24 Honor, by which I am to provide him with documents by Monday.

25 And I regret that we didn't do this a month or three months ago

1  if there had been a pre-trial.  But Mr. Bernick was the one

2  that did not want to do it, or did not appear two weeks ago and

3  suggest we do it two weeks ago.

4          MR. BERNICK:  I --

5          MR. SPEIGHTS:  Excuse me, David, but let me finish.

6  That's just a process question.  The reality is, Your Honor,

7  he's going to get these sales invoices and object to them.  I'm

8  going to offer them, he's going to object to them, again, and

9  Your Honor is going to rule on them.  There has been no motion

10 to limit exhibits to 200.  Your Honor, as I've said now for

11 almost two years, we want an opportunity to make an evidentiary

12 record.  Your Honor will either allow them, or Your Honor will

13 disallow them.  If Your Honor disallows them, I probably will

14 have them marked for identification only and they will be part

15 of the record in the event that there's a later appeal.  I just

16 want to make my record and I've complied with everything Your

17 Honor has said to do, and I intend to comply by providing the

18 documents by Monday.

19         MR. BERNICK:  Your Honor, just one thing, not that it

20 really matters an awful lot.  The statement that somehow we've

21 been dilatory in raising this issue is false.  I had discussion

22 with Mr. Speights less than four weeks ago where we

23 specifically talked about the question both of witnesses and of

24 exhibits.  And at no time were we furnished any kind of notice

25 that somehow we would be dealing with boxes of documents.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. SPEIGHTS:  I'm not going to respond to that, Your

2 Honor.  Mr. Bernick and I have a different recollection

3 about --

4          THE COURT:  All right.  Well --

5          MR. SPEIGHTS:  -- he's always been concerned about

6 witnesses and I'm not calling live witnesses.

7          THE COURT:  Oh, I did ask about documents in court

8 last week and I was told, as I recall, that there were

9 essentially three sets of South Carolina documents.  There were

10 the documents that were of record in the bankruptcy case.  And

11 there was anther group of documents that would be

12 approximately, as my recollection is, six inches, but maybe it

13 was eight inches and my recollection is wrong.  There was

14 nothing about 16 banker's boxes full of sales invoices.

15 Nothing was mentioned to that effect.

16          And I would not, had there been 16 banker's boxes

17 full of documents, agreed to an exchange of documents three

18 days before a hearing because this Court can't possibly go

19 through 16 banker's boxes full of documents three days before a

20 hearing.  And I would not have permitted that.  So, it seems to

21 me that with respect to sales invoices, Mr. Speights, you can

22 certainly send them over to the debtor.  You can certainly send

23 them to the Court.  But before they're offered into evidence,

24 they have to be offered in a context that will show that they

25 are related to a claim that's been filed in this case.

**J&J COURT TRANSCRIBERS, INC.**

1          I'm not going to have just willy-nilly 16 banker's

2    boxes full of documents offered in some group exhibit form.  I

3    want to know what claim they're related to in the case and what

4    relevance they're going to have with respect to the motion to

5    certify because, otherwise, I don't have any basis on which to

6    judge whether or not they're going to be admissible.  So, you

7    can turn them over, but for purposes of offering them into

8    evidence, I want them aggregated in some fashion that's going

9    to tell me how they're related to the motion to certify and

10   what claim they're related to in the case.  Otherwise, I just

11   don't see what bearing they're going to have in this case at

12   this time.

13          So, fine.  Turn them over, but for purposes of

14   introduction into evidence, I want them in some fashion that is

15   going to show me what they're related to.  And I will not be

16   going through 16 banker's boxes full of documents between July

17   2nd and when the hearing starts on July 5th.  It will be

18   impossible.  And so I will attempt to get through the six to

19   eight inches.  I certainly hope it's not 16 inches because I

20   would not have permitted that to be filed three days before the

21   hearing either.  But if it is, that's what it will be.  I'll

22   hear whatever objections, if there are any objections to the

23   exhibits, when they arrive.

24          But the 16 banker's boxes is simply not within the

25   contemplation of this Court.  It was not mentioned on the

**J&J COURT TRANSCRIBERS, INC.**

1  record.  And I think that's taking advantage of the Court's

2  good offices in saying that the documents could be produced

3  three days in advance of the hearing.  So that is not within

4  the contemplation of the Court.  You may certainly turn them

5  over.  I think I'm made my position clear with respect to how

6  they have to be offered into evidence.  Mr. Bernick, you're

7  going to get a lot of documents, but they're -- before they are

8  offered, they're going to have to be aggregated in some fashion

9  that will show what they're related to having to do with the

10 class certification, and specifically to a claim that's been

11 filed in this case.

12       MR. BERNICK:  Thank you, Your Honor.  The -- I guess

13 the only other thing that I would ask, Your Honor, is that --

14 and maybe I shouldn't have to, but I -- just to be -- make sure

15 that we're, again, going to have a process that's meaningful.

16 Could we have it that when we get these documents on Monday,

17 that the 15 boxes of invoices are in some fashion clearly

18 segregated from the other exhibits so that we don't have a

19 problem with searching through what will be a huge number of

20 documents to try to ferret out, which are the 15 boxes of

21 invoices and which is the stuff that we really should be

22 focused on.

23       THE COURT:  Yes, that's fair enough, because I'd like

24 that myself.  So, yes, Mr. Speights, please make sure that

25 these banker's boxes of sales invoices and sales related

1 documents are totally segregated from the rest of the

2 information that you're filing so that the debtor and the Court

3 both know what the sales invoice documents are and what the

4 other however many inches of documents are that are going to be

5 produced.

6          I think with respect to the other documents, Mr.

7 Speights, it would be preferable to have them pre-numbered for

8 identification purposes anyway so that there's an index that we

9 can go back and forth to look at.  That would certainly help

10 both for pre-trial and trial examination.  To the extent the

11 debtor is going use documents, I want the debtor's pre-marked

12 for identification, as well.

13          That's not so much an issue for the South Carolina

14 documents or for the bankruptcy documents that are filed of

15 record because there's a docket number or the Court added -- in

16 the case of the South Carolina documents, the Court added

17 number, but for any other document, I want an exhibit, a

18 pre-trial exhibit number that is added so that we have an

19 identification sticker that's already on.  I do not want to

20 take time during the hearing to have to have exhibits marked.

21 So have them pre-marked for identification and have a list of

22 them made, please.

23          MR. SPEIGHTS:  Yes, Your Honor.  And I understand you

24 don't want beforehand the 15 boxes of sales documents?

25          THE COURT:  No, you might as well just bring them to

 1 court.  I'm not going to have the opportunity --

 2          MR. SPEIGHTS:  Fine.

 3          THE COURT:  -- to look at them in advance of the

 4 hearing.  So you can just bring them to court with you.

 5          MR. BERNICK:  So, Your Honor, what you do want in

 6 advance excludes the 15 boxes, but there -- is any other

 7 exhibit that will be offered?

 8          THE COURT:  Yes, I want all the other exhibits that

 9 will be offered pre-marked for identification.  I think I told

10 both of you that if you're going to use the South Carolina

11 documents or the bankruptcy documents --

12          MR. BERNICK:  Right.

13          THE COURT:  -- you only need to give me a list.

14          MR. BERNICK:  Right.

15          THE COURT:  But any other documents that are not

16 included within the South Carolina or bankruptcy files, I

17 actually need the exhibits pre-marked for identification.

18          MR. BERNICK:  So I think that what that really means

19 as far as we're concerned is that we should just be getting the

20 same copy set of the incremental non-fifteen box, non-South

21 Carolina numbered documents.  We should be getting the same

22 copy as Your Honor has of those.

23          THE COURT:  That makes sense, yes.

24          MR. BERNICK:  Yeah.

25          THE COURT:  You, also, would be getting a list of the

1  South Carolina --

2          MR. BERNICK:  Correct.

3          THE COURT:  -- and bankruptcy documents.

4          MR. BERNICK:  Right.

5          THE COURT:  And 15 or however many banker's boxes of

6  sales invoices.

7          MR. BERNICK:  Right.  Okay.  Well, I think that

8  that's clear, Your Honor.  I appreciate your taking the time

9  for it.

10          THE COURT:  All right --

11          MR. SPEIGHTS:  I appreciate it, too, Your Honor.  And

12  I might, when we get together on Thursday explain a little bit

13  more of what we're dealing with these documents and clarify.

14  But I appreciate Your Honor's patience on it.  I did have one

15  more small matter, Your Honor.  It's not directly related to

16  certification.

17          Your Honor heard the other day our motion to alter or

18  amend by adding three relating to the authority issue.  And

19  Grace had objected to three of our authority issues being

20  untimely, and Your Honor took it under advisement.  I assume

21  that it's still under advisement and no order has been filed.

22  Your Honor, I wanted to make you aware that sometime later

23  today we will be filing a motion to supplement the record

24  regarding that because we believe that at least two of those

25  documents were supplied to Grace before that hearing back in

1  2006.  I'm not asking you to comment or rule upon it, but I

2  just want to let you know that I am going to file that motion

3  to supplement the record today and hopefully Your Honor will

4  consider that before ruling on the matter before you.

5           MR. BERNICK:  Well, I can't tell Mr. Speights not to

6  file a motion, but obviously we'd want to have the opportunity

7  to object to that before Your Honor decides the matter.

8           THE COURT:  All right.  Just -- Mr. Bernick, if

9  that's the case, that matter is not going to, I think, tie up

10 this case in terms of confirmation anyway.  So if Mr. Speights

11 is going to file that motion and you need an opportunity to

12 object to it, then just put the whole matter back on to

13 whatever next agenda is appropriate so that when the motion's

14 filed and you have your opportunity to respond, I can hear

15 whatever this motion to supplement the record is in connection

16 with the --

17          MR. BERNICK:  Sure.

18          THE COURT:  -- whole matter.  And I simply will not

19 issue any rulings until I have an opportunity to see his motion

20 and your response.  So --

21          MR. BERNICK:  That's fine.

22          THE COURT:  -- just put it back on whatever the next

23 appropriate agenda is.

24          MR. BERNICK:  That's fine.  We'll do that, Your

25 Honor.

**J&J COURT TRANSCRIBERS, INC.**

1           THE COURT:  All right.  Mona, can you make a note

2  somehow to -- so that we make sure that that issue -- just take

3  it off the matters under advisement list and say that it's been

4  continued until the next agenda, and then we'll put the two

5  matters back on.  I don't want to consider it piecemeal.

6           MS. BAKER:  Right, Judge, I'll make a note.

7           THE COURT:  Okay.  Thank you.

8           MR. SPEIGHTS:  Thank you, Your Honor.

9           THE COURT:  Anything more?

10          MR. BERNICK:  I don't think so.  I don't know -- I

11  think I'm the only person from my firm on, but if I've missed

12  something, that's my fault.  So, I don't have anything further.

13          THE COURT:  Okay.  Do you, Mr. Speights?

14          MR. SPEIGHTS:  No, Your Honor.

15          THE COURT:  Okay, then, we're adjourned.  Thank you.

16          MR. BERNICK:  Thank you.

17                       * * * * *

18

19

20

21

22

23

24

25

## C E R T I F I C A T I O N

I, KELLI R. PHILBURN, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Kelli R. Philburn                    DATE:  JULY 4, 2007

J&J COURT TRANSCRIBERS, INC.

**J&J COURT TRANSCRIBERS, INC.**