**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | |
| | ) | Case No. 01-01139 (JFK) |
| W.R. GRACE & CO., *et al.,* | ) | Jointly Administered |
| | ) | **Response Due: 7/13/07, 5:00 PM EDT** |
| Debtors | ) | **via electronic mail** |

**Resonse of Kelley & Ferraro, LLP. To DEBTORS' THIRD SET OF
INTERROGATORIES TO CERTAIN ASBESTOS
PERSONAL INJURY PRE-PETITION LITIGATION CLAIMANTS' LAW FIRMS**

**GENERAL OBJECTIONS**

1.  Kelley & Ferraro, LLP ("Kelley & Ferraro") objects to the definitions and instructions contained in the Debtors' Third Set of Interrogatories to Certain Personal Injury Pre-Petition Litigation Claimants' Law Firms ("Debtors' Third Set of Interrogatories") to the extent that said definitions and instructions purport to impose discovery obligations beyond those required by Fed. R. Civ. P. 26 and 34 and Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure.

2.  Kelley & Ferraro objects to the Debtors' Third Set of Interrogatories to the extent it seeks information beyond the permissible scope of discovery or impose burdens beyond those permitted by the Federal Rules of Civil Procedure.

3.  Kelley & Ferraro objects to the Debtors' Third Set of Interrogatories as overly broad, unduly burdensome, irrelevant, immaterial, and not reasonably calculated to lead to admissible evidence relevant to the legal requirements for the upcoming estimation proceedings.

4.  Kelley & Ferraro objects to the Debtors' Third Set of Interrogatories to the extent that they ask Kelley & Ferraro to disclose confidential, trade secret, competitively sensitive, or commercial information that could irreparably harm Kelley & Ferraro if disclosed to competitors.

5.  Kelley & Ferraro's response to any Interrogatory is not a waiver of its objection or right to object to any additional, supplemental, or further Interrogatory.

6.  Kelley & Ferraro objects to the Debtors' Third Set of Interrogatories to the extent they seek information or identification of documents in the possession of third parties and/or not presently in Kelley & Ferraro's possession, custody, or control on the grounds that such requests are beyond the scope of permissible discovery and are unduly burdensome. Kelley & Ferraro further objects to all Interrogatories on the grounds that they are overbroad, oppressive, and unduly burdensome, to the extent they purport to require Kelley & Ferraro to provide information or identify documents of other parties to this action, or of third parties, or from publicly available sources.

7.  Neither the fact that Kelley & Ferraro has responded to Debtors' Third Set of Interrogatories (or any other discovery request) nor the responses themselves shall constitute an admission or acknowledgement that such Debtors' Third Set of Interrogatories (or any other discovery request) are proper, that the information sought is relevant, material, or otherwise within the proper bounds of discovery, or that other discovery requests will be treated in a similar fashion in this or any other proceedings. Further, no response by Kelley & Ferraro to any discovery request shall be deemed to constitute an admission of any fact or matter set forth or assumed in any discovery request.

8.  Kelley & Ferraro reserves the right to make future motions and objections relating to Debtors' Third Set of Interrogatories at any subsequent stage of this action, including, but not limited to, the right to object to the use of any responses, or the subject matter thereof, on any ground (including materiality and relevance) in any proceedings in any action. Kelley & Ferraro reserves the right to modify, supplement, revise, correct, clarify, or otherwise amend its responses in accordance with the Federal Rule of Civil Procedure 26(e).

9.  The above-stated General Objections shall be deemed applicable and are incorporated by reference into each response set forth below even if not specifically referred to in such responses.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Have you determined the first B-read performed for each Claimant? If yes, state:

a)  What steps did you follow to determine the first B-read performed for each claimant?

b)  Did you contact all doctors known to the Claimant (or his or her representatives) to determine the first B-read performed?

c)  Did you contact all counsel who have represented the Claimant in connection with asbestos issues to determine the first B-read performed?

      d)      Did you verify the first B-read with the Claimant or Claimant's representative?

      e)      Have you obtained the first B-read performed for each Claimant?

      f)      Have you withheld the first B-read performed for each Claimant?

      g)      Have you identified to W.R. Grace all such B-reads in response to its First Set of Interrogatories?

**RESPONSE TO INTERROGATORY NO. 1:**

Kelley & Ferraro objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence relating to the legal requirements for the estimation proceedings and the issues the Court must resolve as to the estimation proceedings. Without waiving this objection, Kelley & Ferraro responds as follows:

Yes, in order to respond to the W.R. Grace Personal Injury Questionnaires ("Questionnaires"), Kelley & Ferraro determined the date of the first B-read performed for each Claimant.

      a)      In order to determine the date of the first B-read for any Claimant, a review of the Kelley & Ferraro database would take place. At that time, information contained within the database, setting forth the date of the B-read, would be merged into the appropriate answer(s) on the W.R. Grace Questionnaire.

      b)      No, as Kelley & Ferraro originally responded to over 18,000 Questionnaires, to contact each and every doctor known to the Claimant to determine the date of the first B-read would have been an impossible task and would have required Kelley & Ferraro to not only contact each Claimant but due to the age and/or status as living or deceased, contact the surviving spouse and/or children of the Claimant to obtain the names, addresses and other pertinent information on all doctors. Next, the information would have had to be updated and new addresses determined. Then, HIPAA authorizations would have had to been obtained and sent to each Doctor. Finally, any information received on behalf of the over 18,000 Claimants would have had to have been reviewed. Such a massive undertaking, in and of itself, clearly falls outside of the requirements of the Federal Rules of Civil Procedure. Lastly, Kelley & Ferraro believes that the information contained within its database sets forth the first B-read performed for each Claimant.

      c)      No, the information contained within the Kelley & Ferraro database constitutes the best information available on issues concerning B-reads.

      d)      No, due to the length of time that has elapsed since the initial B-read occurred, an individual Claimant generally relies upon the date set forth on the B-read itself to refresh his/her recollection of the date of the B-read.

      e)      Yes, that is the information contained within the Kelley & Ferraro database and is the date provided to W.R. Grace.

    f)      Not to my knowledge; the B-reads provided to W.R. Grace with the Questionnaires or the Supplemental Responses to the Questionnaires constitute all of a Claimant's B-reads.

    g)      Copies of the B-reads were provided to W.R. Grace with either the Responses to the Questionnaires or the Supplemental Responses to the Questionnaires.

### INTERROGATORY NO. 2:

Have you determined the date on which each Claimant was diagnosed with an asbestos-related disease? If yes, state:

    a)      How you determined that date?

    b)      Did you contact all doctors known to the Claimant (or his or her representatives, your firm, or prior counsel) to determine the date of the Claimant's first diagnosis?

    c)      Did you contact all counsel who have represented the Claimant in connection with asbestos issues to determine the date of the Claimant's first diagnosis?

    d)      Did you verify the date of the first diagnosis with the Claimant?

    e)      Did you verify the date of the Claimant's first diagnosis through contemporaneous medical documentation reflecting the diagnosis?

    f)      Have you told W.R. Grace in response to its First Set of Interrogatories the date of the Claimant's first diagnosis?

    g)      Have you obtained all B-reads performed for each Claimant on or before the date of first diagnosis?

    h)      Have you produced to W.R. Grace all B-reads performed for each Claimant on or before the date of the Claimant's first diagnosis?

    i)      Have you withheld any B-reads performed before the date of the first diagnosis?

    j)      Have you identified to W.R. Grace all such B-reads performed on or before the date of the Claimant's first diagnosis in response to its First Set of Interrogatories?

**RESPONSE TO INTERROGATORY NO. 2:**

Kelley & Ferraro objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence relating to the legal requirements for the estimation proceedings and the issues the Court must resolve as to the estimation proceedings. Without waiving this objection, Kelley & Ferraro responds as follows:

Yes, the date upon which a Claimant was diagnosed with an asbestos-related disease was obtained and provided to W.R. Grace in the appropriate answers to the Questionnaire.

a) The date of diagnosis is set forth in the Kelley & Ferraro database and is initially obtained by reviewing the medical information obtained on behalf of a Claimant and which is contained within the Kelley & Ferraro database. This medical information and appropriate medical documentation was provided to W.R. Grace in response to the Questionnaires or the Supplemental Responses.

b) No, as Kelley & Ferraro originally responded to over 18,000 Questionnaires, to contact each and every doctor known to the Claimant to determine the date of diagnosis would have been an impossible task and would have required Kelley & Ferraro to not only contact each Claimant but due to the age and/or status as living or deceased, to contact the surviving spouse and/or children of the Claimant to obtain the names, addresses and other pertinent information on all doctors. Next, the information would have to be brought up to date. Then, HIPAA authorizations would have had to been obtained and sent to each Doctor. Finally, any information received on behalf of the over 18,000 Claimants would have had to have been reviewed. Such a massive undertaking clearly falls outside of the requirements of the Federal Rules of Civil Procedure. Lastly, Kelley & Ferraro believes that the information contained within its database sets forth the date of diagnosis for each Claimant.

c) No, the information contained within the Kelley & Ferraro database constitutes the best information available on issues concerning date of diagnosis.

d) No, due to the length of time that has elapsed since the diagnosis occurred, an individual Claimant generally relies upon the date set forth on the medical documentation itself to refresh his/her recollection of the date of diagnosis.

e) The date of a Claimant's first diagnosis of an asbestos related disease is obtained from contemporaneous medical documentation which was provided to W.R. Grace in responding to the Questionnaire or in the Supplemental Response.

f) The date of a Claimant's first diagnosis of an asbestos-related disease was provide to W.R. Grace in Response to the Questionnaire or in the Supplemental Response to the Questionnaire.

**INTERROGATORY NO. 3:**

Have you determined the date on which you were retained by each Claimant? If yes, state:

- a) How did you determine the date on which you were retained by each Claimant?

- b) Did you verify that date with the Claimant or Claimant's representative?

- c) Is there contemporaneous documentation verifying the date of retention?

- d) Have you obtained all B-reads performed for each Claimant before the date your firm was retained? How?

- e) Have you produced to W.R. Grace all B-reads performed for each Claimant on or before the date your law firm was retained?

- f) Have you withheld any B-reads performed for each Claimant on or before the date your law firm was retained?

- g) Have you identified any such B-reads withheld in response to its First Set of Interrogatories?

**RESPONSE TO INTERROGATORY NO. 3:**

Kelley & Ferraro objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence relating to the legal requirements for the estimation proceedings and the issues the Court must resolve as to the estimation proceedings. Without waiving this objection, Kelley & Ferraro responds as follows:

Yes, the date a client is retained by Kelley & Ferraro has been determined by Kelley & Ferraro.
- a) The date is contained on the retainer agreement which is contained within the Kelley & Ferraro data base.
- b) No, as Kelley & Ferraro originally responded to over 18,000 Questionnaires. To contact each and every Claimant to determine the date the client was retained would have been an impossible task and would have required Kelley & Ferraro to contact each Claimant and due to age and/or status as living or deceased, contact the surviving spouse and/or children of the Claimant to obtain information requested. Finally, any information received on behalf of the over 18,000 Claimants would have had to have been reviewed. Such an undertaking clearly falls outside of the requirements of the Federal Rules of Civil Procedure. Lastly, Kelley & Ferraro believes that the information contained on the retainer itself sets forth the date Kelley & Ferraro was retained.
- c) Yes, the client retainer.

- d) If the claimant was originally retained by Kelley & Ferraro then no prior B-reads exist. If the claimant was referred by co-counsel, then at the time Kelley & Ferraro was retained as co-counsel, the standard procedure was to have the entire client file transferred to Kelley & Ferraro for inclusion into the Kelley & Ferraro database.
- e) Yes, all documentation in the Kelley & Ferraro data base relating to B-reads was provided to W.R. Grace with the Responses to the Questionnaire or the Supplemental Response.
- f) No, the procedure employed by Kelley & Ferraro in responding to the Questionnaires required all documentation in the Kelley & Ferraro database relating to B-reads be provided to W.R Grace with the Reponses to the Questionnaire or the Supplemental Response.
- g) Not applicable, see above.

**INTERROGATORY NO. 4:**

For each Claimant as to whom any B-read is being withheld, have you determined whether B-readers were retained specifically to act as litigation consultants for that Claimant? If yes, state:

- a) How did you determine whether a B-reader was retained to act as a litigation consultant specifically for a Claimant?

- b) For each Claimant, was there contemporaneous documentation stating that the B-reader was retained to act as a litigation consultant only?

- c) Did you verify with the Claimant that the B-reader was acting as a litigation consultant for him or her?

- d) For any Claimants, was the B-reader was ever stated to be a testimonial expert? If yes, for each such Claimant did you ever disclose that fact to W.R. Grace?

**RESPONSE TO INTERROGATORY NO. 4:**

Kelley & Ferraro objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence relating to the legal requirements for the estimation proceedings and the issues the Court must resolve as to the estimation proceedings. Without waiving this objection, Kelley & Ferraro responds as follows:
As B-reads were provided to W.R. Grace with the Responses to the Questionnaires or the Supplemental Response, this Interrogatory is not applicable.

**INTERROGATORY NO. 5:**

For each B-read withheld on the grounds of the litigation consulting privilege, have you determined whether the B-read was transmitted to any third party not in privity with the Claimant, including, but not limited to, other litigants, trusts, and claims processing facilities? If yes, state whether for each Claimant you have disclosed this information to W.R. Grace?

**RESPONE TO INTERROGATORY NO. 5:**

Kelley & Ferraro objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence relating to the legal requirements for the estimation proceedings and the issues the Court must resolve as to the estimation proceedings. Without waiving this objection, Kelley & Ferraro responds as follows:
As B-reads were provided to W.R. Grace with the Responses to the Questionnaires or the Supplemental Response, this Interrogatory is not applicable.

**INTERROGATORY NO. 6:**

In answering the Questionnaire for each Claimant, did you contact any doctors who have rendered Medical Services in connection with each Claimant's Asbestos-Related Disease in order to obtain documents that either support or conflict with the diagnosis supporting the Claimant's claim? If yes, state:

a)   Did you try to identify all such doctors? How?

b)   Did you try to identify any such doctors? How?

c)   Did you try to obtain medical records from any or all such doctors? How?

d)   Did you provided with the Claimant's Questionnaire all such documents in your or the Claimant's possession, custody or control that either support or conflict with the diagnosis supporting the claim?

**RESPONSE TO INTERROGATORY NO. 6:**

Kelley & Ferraro objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence relating to the legal requirements for the estimation proceedings and the issues the Court must resolve as to the estimation proceedings. Without waiving this objection, Kelley & Ferraro responds as follows:

No, as Kelley & Ferraro originally responded to over 18,000 Questionnaires, to contact each and every doctor known to the Claimant to obtain this information would have been an impossible task and would have required Kelley & Ferraro to not only contact each Claimant but due to age and/or status as living or deceased, contact the surviving spouse and/or children of the Claimant to obtain information on all doctors. Next the information would have had to be updated to reflect the current location of the doctor. Then, HIPAA authorizations would have had to been obtained and sent to each Doctor. Finally, any information received on behalf of the over 18,000 Claimants would have had to have been reviewed. Such an undertaking clearly falls outside of the requirements of the Federal Rules of Civil Procedure.

### **INTERROGATORY NO. 7:**

In answering the Questionnaire for each Claimant, did you contact any other counsel who have represented each Claimant in connection with their claim? If yes, state:

- a) Did you try to identify any and all such counsel? How?

- b) Did you try to obtain from any and all such counsel any documents relating to the claim? How?

- c) Were all documents obtained from other counsel at any time – that either supported or conflicted with the diagnosis supporting the claim – furnished with the Claimant's completed Questionnaire?

- d) Were all documents obtained from other counsel an any time that reflected exposure to W.R. Grace asbestos-containing products or other asbestos-containing products provided with the Claimant's completed Questionnaire?

### **RESOPNSE TO INTERROGATORY NO. 7:**

Kelley & Ferraro objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence relating to the legal requirements for the estimation proceedings and the issues the Court must resolve as to the estimation proceedings. Without waiving this objection, Kelley & Ferraro responds as follows:

No, as Kelley & Ferraro originally responded to over 18,000 Questionnaires. To contact each Claimant to determine all prior counsel would have been an impossible task and would have required Kelley & Ferraro to not only contact each Claimant but due to age and/or status as living or deceased, contact the surviving spouse and/or children of the Claimant to obtain this information. Finally, any information received on behalf of the over 18,000 Claimants would have had to have been reviewed. Such an undertaking clearly falls outside of the requirements of

the Federal Rules of Civil Procedure. Lastly, Kelley & Ferraro believes that the information contained within its database sets forth the information from any prior counsel as it was the standard practice and procedure for Kelley & Ferraro to obtain the entire client file from prior counsel.

**INTERROGATORY NO. 8:**

In answering the Questionnaire for each Claimant, did you review all attachments to determine whether, in fact, the attachments completely and accurately answered each question on the Questionnaire where the answer given referred to the attachments? If yes, where the attachments did NOT specifically, completely, and accurately answer a question, did you disclose this to W.R. Grace in the Claimant's completed Questionnaire?

**RESPONSE TO INTERROGATORY NO. 8:**

Kelley & Ferraro objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence relating to the legal requirements for the estimation proceedings and the issues the Court must resolve as to the estimation proceedings. Without waiving this objection, Kelley & Ferraro responds as follows:

The general form of each of the documents provided as attachments were reviewed to determine if the answers were apparent from the document as was required by the Court's prior rulings both written and made from the bench during hearings on the matter. As Kelley & Ferraro originally responded to over 18,000 Questionnaires, to review each and every document provided by Kelley & Ferraro would have been a massive undertaking not required by the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 9:**

Did you determine for each Claimant whether the Claimant was actually exposed to a W.R. Grace asbestos-containing product? If yes, state:

    a)     Whether all documentation of that exposure in your or the Claimant's possession, custody or control was provided in or with the Claimant's completed Questionnaire?

    b)     Whether all other evidence of that exposure in your or the Claimant's possession, custody or control was provided in or with the completed Questionnaire?

    c)     Whether exposure to a Grace asbestos-containing product was verified at any time by: (i) a statement made by each Claimant; or (ii) a statement of a percipient witness? If yes, state whether all such statements in yours or the Claimant's possession, custody or control were provided with the completed Questionnaire?

**RESPONSE TO INTERROGATORY NO. 9:**

Kelley & Ferraro objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence relating to the legal requirements for the estimation proceedings and the issues the Court must resolve as to the estimation proceedings. Without waiving this objection, Kelley & Ferraro responds as follows:

To determine a claimant's exposure to an asbestos-containing product manufactured or supplied by an asbestos-related Defendant such as W.R. Grace, the procedure is as set forth below. Initially, it is determined that a Kelley & Ferraro client has a claim or potential claim against an asbestos defendant such as W. R. Grace by reviewing an individual's work history at facilities which historically are supplied with Grace asbestos-containing products. This preliminary determination is based on years of information from lawsuits against Grace in the tort system, Kelley & Ferraro's knowledge of the type of people that were exposed to Grace products, their occupation and the person's individual work history. When Kelley & Ferraro received the Questionnaire, Kelley & Ferraro provided to Grace whatever information Kelley & Ferraro had on exposure in its database at that point in time. However, this preliminary information is incomplete and is very different then what Kelley & Ferraro would have obtained if called upon to (1) prepare a case for trial or (2) if Kelley & Ferraro were going to prepare a case to settle with Grace. For example, for the past six and a half years Kelley & Ferraro has been unable to obtain any discovery from W.R. Grace, nor has it accessed information from Grace's repository. Specific site information would have been available in the State Court litigation on a case by case basis. Historically, Kelley & Ferraro has always been able to prove exposure to Grace's product through a variety of means that go far beyond what the individual client would know at the time Kelley & Ferraro responds to discovery. Often exposure and product ID is proved through co-worker testimony or from testimony from other third parties, e.g. abatement records obtained from local Health Departments. However, generally, that testimony and information is not sought or obtained in the particular client's case until the case is set for trial and the focus centers on case specific job sites. Kelley & Ferraro has given the information it had at the time Grace filed for Chapter 11 protection in response to the Questionnaire. No further case preparation would have occurred in regard to Grace during the time since Grace filed for bankruptcy. However, at the time Kelley & Ferraro would have actually been preparing a case up for trial, Kelley & Ferraro would (a) do case specific discovery from Grace and (b) Kelley & Ferraro would contact other people who may have had cases against Grace to obtain documents or testimony to try to prove exposure, as well as (c) obtain information from other third party sourced.

**INTERROGATORY NO. 10:**

Did you determine for each Claimant the dates and duration of any exposure to a Grace asbestos-containing product? If yes, provide statements regarding the dates and duration of exposure parallel to those required in Interrogatories 9(a)-(c) above.

**RESPONSE TO INTERROGATORY NO. 10:**

Kelley & Ferraro objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence relating to the legal requirements for the estimation proceedings and the issues the Court must resolve as to the estimation proceedings. Without waiving this objection, Kelley & Ferraro responds as follows:

To determine a claimant's exposure to an asbestos-containing product manufactured or supplied by an asbestos-related Defendant such as W.R. Grace, the procedure is as set forth below. Initially, it is determined that a Kelley & Ferraro client has a claim or potential claim against an asbestos defendant such as W. R. Grace by reviewing an individual's work history at facilities which historically are supplied with Grace asbestos-containing products. This preliminary determination is based on years of information from lawsuits against Grace in the tort system, Kelley & Ferraro's knowledge of the type of people that were exposed to Grace products, their occupation and the person's individual work history. When Kelley & Ferraro received the Questionnaire, Kelley & Ferraro provided to Grace whatever information Kelley & Ferraro had on exposure in its database at that point in time. However, this preliminary information is incomplete and is very different then what Kelley & Ferraro would have obtained if called upon to (1) prepare a case for trial or (2) if Kelley & Ferraro were going to prepare a case to settle with Grace. For example, for the past six and a half years Kelley & Ferraro has been unable to obtain any discovery from W.R. Grace, nor has it accessed information from Grace's repository. Specific site information would have been available in the State Court litigation on a case by case basis. Historically, Kelley & Ferraro has always been able to prove exposure to Grace's product through a variety of means that go far beyond what the individual client would know at the time Kelley & Ferraro responds to discovery. Often exposure and product ID is proved through co-worker testimony or from testimony from other third parties, e.g. abatement records obtained from local Health Departments. However, generally, that testimony and information is not sought or obtained in the particular client's case until the case is set for trial and the focus centers on case specific job sites. Kelley & Ferraro has given the information it had at the time Grace filed for Chapter 11 protection in response to the Questionnaire. No further case preparation would have occurred in regard to Grace during the time since Grace filed for bankruptcy. However, at the time Kelley & Ferraro would have actually been preparing a case up for trial, Kelley & Ferraro would (a) do case specific discovery from Grace and (b) Kelley & Ferraro would contact other people who may have had cases against Grace to obtain documents or testimony to try to prove exposure, as well as (c) obtain information from other third party sourced.

**INTERROGATORY NO. 11:**

Did you determine the place and job description of each exposure to a Grace asbestos-containing product? If yes, provide statements regarding the place and job description parallel to those required in Interrogatories 9(a)-(c) above.

**RESPONSE TO INTERROGATORY NO. 11**

Kelley & Ferraro objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence relating to the legal requirements for the estimation proceedings and the issues the Court must resolve as to the estimation proceedings. Without waiving this objection, Kelley & Ferraro responds as follows:

To determine a claimant's exposure to an asbestos-containing product manufactured or supplied by an asbestos-related Defendant such as W.R. Grace, the procedure is as set forth below. Initially, it is determined that a Kelley & Ferraro client has a claim or potential claim against an asbestos defendant such as W. R. Grace by reviewing an individual's work history at facilities which historically are supplied with Grace asbestos-containing products. This preliminary determination is based on years of information from lawsuits against Grace in the tort system, Kelley & Ferraro's knowledge of the type of people that were exposed to Grace products, their occupation and the person's individual work history. When Kelley & Ferraro received the Questionnaire, Kelley & Ferraro provided to Grace whatever information Kelley & Ferraro had on exposure in its database at that point in time. However, this preliminary information is incomplete and is very different then what Kelley & Ferraro would have obtained if called upon to (1) prepare a case for trial or (2) if Kelley & Ferraro were going to prepare a case to settle with Grace. For example, for the past six and a half years Kelley & Ferraro has been unable to obtain any discovery from W.R. Grace, nor has it accessed information from Grace's repository. Specific site information would have been available in the State Court litigation on a case by case basis. Historically, Kelley & Ferraro has always been able to prove exposure to Grace's product through a variety of means that go far beyond what the individual client would know at the time Kelley & Ferraro responds to discovery. Often exposure and product ID is proved through co-worker testimony or from testimony from other third parties, e.g. abatement records obtained from local Health Departments. However, generally, that testimony and information is not sought or obtained in the particular client's case until the case is set for trial and the focus centers on case specific job sites. Kelley & Ferraro has given the information it had at the time Grace filed for Chapter 11 protection in response to the Questionnaire. No further case preparation would have occurred in regard to Grace during the time since Grace filed for bankruptcy. However, at the time Kelley & Ferraro would have actually been preparing a case up for trial, Kelley & Ferraro would (a) do case specific discovery from Grace and (b) Kelley & Ferraro would contact other people who may have had cases against Grace to obtain documents or testimony to try to prove exposure, as well as (c) obtain information from other third party sourced.

**INTERROGATORY NO. 12:**

Did you determine the proximity of each Claimant to a Grace asbestos-containing product during each such exposure, as required in Section III of the Questionnaire? If yes, provide statements regarding the proximity of each Claimant to a Grace asbestos-containing product parallel to those required in Interrogatories 9(a)-(c) above.

**RESPONSE TO INTERROGATORY NO. 12:**

Kelley & Ferraro objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence relating to the legal requirements for the estimation proceedings and the issues the Court must resolve as to the estimation proceedings. Without waiving this objection, Kelley & Ferraro responds as follows:

To determine a claimant's exposure to an asbestos-containing product manufactured or supplied by an asbestos-related Defendant such as W.R. Grace, the procedure is as set forth below. Initially, it is determined that a Kelley & Ferraro client has a claim or potential claim against an asbestos defendant such as W. R. Grace by reviewing an individual's work history at facilities which historically are supplied with Grace asbestos-containing products. This preliminary determination is based on years of information from lawsuits against Grace in the tort system, Kelley & Ferraro's knowledge of the type of people that were exposed to Grace products, their occupation and the person's individual work history. When Kelley & Ferraro received the Questionnaire, Kelley & Ferraro provided to Grace whatever information Kelley & Ferraro had on exposure in its database at that point in time. However, this preliminary information is incomplete and is very different then what Kelley & Ferraro would have obtained if called upon to (1) prepare a case for trial or (2) if Kelley & Ferraro were going to prepare a case to settle with Grace. For example, for the past six and a half years Kelley & Ferraro has been unable to obtain any discovery from W.R. Grace, nor has it accessed information from Grace's repository. Specific site information would have been available in the State Court litigation on a case by case basis. Historically, Kelley & Ferraro has always been able to prove exposure to Grace's product through a variety of means that go far beyond what the individual client would know at the time Kelley & Ferraro responds to discovery. Often exposure and product ID is proved through co-worker testimony or from testimony from other third parties, e.g. abatement records obtained from local Health Departments. However, generally, that testimony and information is not sought or obtained in the particular client's case until the case is set for trial and the focus centers on case specific job sites. Kelley & Ferraro has given the information it had at the time Grace filed for Chapter 11 protection in response to the Questionnaire. No further case preparation would have occurred in regard to Grace during the time since Grace filed for bankruptcy. However, at the time Kelley & Ferraro would have actually been preparing a case up for trial, Kelley & Ferraro would (a) do case specific discovery from Grace and (b) Kelley & Ferraro would contact other people who may have had cases against Grace to obtain documents or testimony to try to prove exposure, as well as (c) obtain information from other third party sourced.

**INTERROGATORY NO. 13:**

Did you determine the specific Grace asbestos-containing product involved in each exposure? If yes, provide statements regarding the specific Grace asbestos-containing product parallel to those required in Interrogatories 9(a)-(c) above.

**RESPONSE TO INTERROGATORY NO. 13:**

Kelley & Ferraro objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence relating to the legal requirements for the estimation proceedings and the issues the Court must resolve as to the estimation proceedings. Without waiving this objection, Kelley & Ferraro responds as follows:

To determine a claimant's exposure to an asbestos-containing product manufactured or supplied by an asbestos-related Defendant such as W.R. Grace, the procedure is as set forth below. Initially, it is determined that a Kelley & Ferraro client has a claim or potential claim against an asbestos defendant such as W. R. Grace by reviewing an individual's work history at facilities which historically are supplied with Grace asbestos-containing products. This preliminary determination is based on years of information from lawsuits against Grace in the tort system, Kelley & Ferraro's knowledge of the type of people that were exposed to Grace products, their occupation and the person's individual work history. When Kelley & Ferraro received the Questionnaire, Kelley & Ferraro provided to Grace whatever information Kelley & Ferraro had on exposure in its database at that point in time. However, this preliminary information is incomplete and is very different then what Kelley & Ferraro would have obtained if called upon to (1) prepare a case for trial or (2) if Kelley & Ferraro were going to prepare a case to settle with Grace. For example, for the past six and a half years Kelley & Ferraro has been unable to obtain any discovery from W.R. Grace, nor has it accessed information from Grace's repository. Specific site information would have been available in the State Court litigation on a case by case basis. Historically, Kelley & Ferraro has always been able to prove exposure to Grace's product through a variety of means that go far beyond what the individual client would know at the time Kelley & Ferraro responds to discovery. Often exposure and product ID is proved through co-worker testimony or from testimony from other third parties, e.g. abatement records obtained from local Health Departments. However, generally, that testimony and information is not sought or obtained in the particular client's case until the case is set for trial and the focus centers on case specific job sites. Kelley & Ferraro has given the information it had at the time Grace filed for Chapter 11 protection in response to the Questionnaire. No further case preparation would have occurred in regard to Grace during the time since Grace filed for bankruptcy. However, at the time Kelley & Ferraro would have actually been preparing a case up for trial, Kelley & Ferraro would (a) do case specific discovery from Grace and (b) Kelley & Ferraro would contact other people who may have had cases against Grace to obtain documents or testimony to try to prove exposure, as well as (c) obtain information from other third party sourced.

Case 01-01139-AMC    Doc 16282    Filed 07/13/07    Page 16 of 19

**INTERROGATORY NO. 14:**

Did you determine for each Claimant whether they were exposed to any other asbestos-contained product? If so, provide a statement regarding the Claimant's exposure to any other asbestos-containing product parallel to those required in Interrogatories 9(a)-(c) above.

**RESPONSE TO INTERROGATORY NO. 14:**

Kelley & Ferraro objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence relating to the legal requirements for the estimation proceedings and the issues the Court must resolve as to the estimation proceedings. Without waiving this objection, Kelley & Ferraro responds as follows:

To determine a claimant's exposure to an asbestos-containing product manufactured or supplied by an asbestos-related Defendant such as W.R. Grace, the procedure is as set forth below. Initially, it is determined that a Kelley & Ferraro client has a claim or potential claim against an asbestos defendant such as W. R. Grace by reviewing an individual's work history at facilities which historically are supplied with Grace asbestos-containing products. This preliminary determination is based on years of information from lawsuits against Grace in the tort system, Kelley & Ferraro's knowledge of the type of people that were exposed to Grace products, their occupation and the person's individual work history. When Kelley & Ferraro received the Questionnaire, Kelley & Ferraro provided to Grace whatever information Kelley & Ferraro had on exposure in its database at that point in time. However, this preliminary information is incomplete and is very different then what Kelley & Ferraro would have obtained if called upon to (1) prepare a case for trial or (2) if Kelley & Ferraro were going to prepare a case to settle with Grace. For example, for the past six and a half years Kelley & Ferraro has been unable to obtain any discovery from W.R. Grace, nor has it accessed information from Grace's repository. Specific site information would have been available in the State Court litigation on a case by case basis. Historically, Kelley & Ferraro has always been able to prove exposure to Grace's product through a variety of means that go far beyond what the individual client would know at the time Kelley & Ferraro responds to discovery. Often exposure and product ID is proved through co-worker testimony or from testimony from other third parties, e.g. abatement records obtained from local Health Departments. However, generally, that testimony and information is not sought or obtained in the particular client's case until the case is set for trial and the focus centers on case specific job sites. Kelley & Ferraro has given the information it had at the time Grace filed for Chapter 11 protection in response to the Questionnaire. No further case preparation would have occurred in regard to Grace during the time since Grace filed for bankruptcy. However, at the time Kelley & Ferraro would have actually been preparing a case up for trial, Kelley & Ferraro would (a) do case specific discovery from Grace and (b) Kelley & Ferraro would contact other people who may have had cases against Grace to obtain documents or testimony to try to prove exposure, as well as (c) obtain information from other third party sourced.

**INTERROGATORY NO. 15:**

For each Claimant submitting a Questionnaire, did the Claimant (or a representative of the Claimant if the Claimant was deceased) review the Questionnaire prior to its submission? If yes, state:

a) Were all Claimants required to affirm the accuracy and completeness of the completed Questionnaires?

b) Is there any documentation that reflects such an attestation or process of document review?

**RESPONSE TO INTERROGATORY NO. 15:**

Kelley & Ferraro objects to this Interrogatory as vague, ambiguous, overly broad, unduly burdensome, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence relating to the legal requirements for the estimation proceedings and the issues the Court must resolve as to the estimation proceedings. Without waiving this objection, Kelley & Ferraro responds as follows:

No, the information provided in response to the Questionnaires was obtained from the Kelley & Ferraro data base.

Respectfully submitted,

KELLEY & FERRARO LLP


_____/s/  Thomas M. Wilson_____
Thomas M. Wilson, Esq.
2200 Key Tower
127 Public Square
Cleveland,  OH  44114
(216) 575-0777
Fax (216) 575-0799

## VERIFICATION

I, Thomas M. Wilson, an attorney in the law firm of Kelley & Ferraro, LLP, declare under penalty of perjury that I have read the foregoing statement and that it is true and correct to the best of my knowledge, information and belief.

KELLEY & FERRARO, LLP

/s/ Thomas M. Wilson
Thomas M. Wilson, Esq.
2200 Key Tower
127 Public Square
Cleveland, OH 44114
(216) 575-0777

The foregoing objections have been made by the undersigned counsel for Plaintiff.

/s/ Thomas M. Wilson
Thomas M. Wilson, Esq.

i:\TMW\Bankruptcies\W.R. Grace\Third Set of Interrogatories 7-3-07