**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| W.R. GRACE & CO., | : | Case No. 01-01139(JKF) |
| | | (Jointly Administered) |
| Debtors, | : | |

Hearing Date:
July 23, 2007
2:00 P.M.

**RESPONSE TO DEBTOR'S OBJECTION TO THE STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION'S MOTION FOR LEAVE TO FILE A LATE PROOF OF CLAIM.**

This Court should grant the motion of the State of New Jersey, Department of Environmental Protection, for leave to file a late proof of claim because debtors' objections lose all credibility in their very first paragraph when they assert that "nowhere has the NJDEP asserted neglect for its failure to file a timely proof of claim, let alone excusable neglect." See Grace's Objections at 1. One can only wonder if debtors read the State's brief at all before objecting to the motion to file a late proof of claim. The State's entire argument was based upon excusable neglect. Debtors' objections, on the other hand, are based on neither the facts of this matter nor the law that governs it, nor are their arguments at all relevant. Their objections should be should be overruled.

1. At the time of the bar date, the State did not know that the debtors had falsely and knowingly certified to the Department in the 1995 Preliminary Assessment/Site Investigation Report that no asbestos containing materials were used at the site and in the accompanying Negative Declaration that "any discharges" of hazardous substances or hazardous wastes on or from the industrial establishment have been remediated in accordance with N.J.A.C. 7:26E (Technical Requirements for Site Remediation ) and approved by the Department. No penalty had been assessed against the debtors at the time of the bar date because the State did not know of the violation. The debtors owed the Department no money, the Department had no claim that it knew of, and the EPA had taken over the investigation and sampling of the site.

2. Debtors attempt to get around the facts by saying that the receipt by an assistant director in charge of emergency response at the Department, who was one among twenty individuals copied on a memorandum from one EPA official to another, requesting EPA money for a study and removal of possible contamination at the Grace Hamilton site, was notification to the Department of Grace's violations of the law in 1995. That argument must fail.

3. Grace asserts in its very first paragraph of its objection that the state court penalty action filed against Grace by the State in 2005 was an attempt to circumvent the automatic stay issued by the court in this matter. That is not true. The state court action against the debtors was not in violation of the

automatic stay, but was exempt from the stay pursuant to 11 U.S.C. 362(b)(4). The law is long settled as to the exemption from the automatic stay of a government unit when enforcing its police power. See 11 U.S.C. 362 (b)(4) and the Legislative History, which provides in relevant part:

> [11 U.S.C. §362](b)(4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police and or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay. [Senate Report at 5838; cited in Penn Terra Ltd. v. Dept. of Environmental Resources("DER"), 733 F.2d 267, 272 (3d Cir. 1984)].

4. This court has indicated in previous proceedings that it was not sure that a penalty enforcement action initiated by a governmental unit is exempt from the automatic stay provision (see Objection, page 6, paragraphs 17 and 19). A review of the relevant case law should resolve any uncertainty the Court may have on this issue.

5. In State of New Jersey, Department of Environmental Protection and Energy v. Madison Industries, Inc., 161 B.R. 363 (D.N.J. 1993), the Honorable Garret Brown, Chief Judge of the District of New Jersey, found that the filing by the State of New Jersey, Department of Environmental Protection, in state court, of an order to show cause and verified complaint seeking injunctive relief and statutory penalties for a Chapter 11 debtor's violation

of New Jersey's environmental laws was exempt from the automatic stay as an exercise of the state's power to protect health, safety, and welfare of the public.  Although an injunction would force debtor to expend funds to clean up the site, the State's action was not tantamount to enforcement of a monetary judgment.  Judge Brown wrote that rather than the penalty aspect of the enforcement action constituting an action to collect a "money judgment" (and thus not exempt from the automatic stay), he found that the Department's "statutory penalties merely give 'teeth' to New Jersey's environmental laws."

6.   A penalty action is no less exempt from the automatic stay than a cost recovery action, where the State is suing a responsible party to recover the costs of cleaning up a site.  In a penalty action, just like a cost recovery action, the State is fixing liability.  See City of New York v. Exxon Corp., 932 F.2d 1020 (2d Cir. 1991)(cost recovery actions not subject to automatic stay); In re Commonwealth Companies (U.S. v. Commonwealth Companies, Inc.), 913 F.2d 518 (8th Cir. 1990)(finding that regulatory actions are not limited to public health or safety concerns; there need be no showing of imminent harm or urgent public necessity; where punishment of fraud as well as compensation is part of goal of statute, it was a permissible government regulatory statute and allowing the government to merely proceed with liquidating its claim would not give it any advantage over other creditors); In re Family Vending, Inc., 171 B.R. 907 (Bankr.

N.D. Ga. 1994) (state action to "enforce governmental regulatory powers and stop consumer fraud" as well as consumer protection in general exempt from stay). In Re Perez, 61 B.R. 367, 368 (Bankr. E.D. Cal. 1986) (government administrative enforcement action for back wages and penalties under Fair Labor Standards Act of 1938 not stayed).

       7.   In United States v. Nicolet, Inc., 857 F.2d 202 (3d Cir. 1988) the 3d Circuit held that the automatic stay does not apply to cost recovery actions; that by simply permitting the government's claim to be reduced to a judgment, no seizure of property takes place. Moreover, that Congress carefully made only enforcement of a money judgment subject to the automatic stay indicates strongly that mere entry of the judgment was not intended to be proscribed. This implication is entirely consistent with the legislative history. Id. at 209. The Nicolet court also recognized that the entry of a money judgment, even without enforcement of that judgment, interjects "a valuable deterrence element" into a statutory scheme, making it plain that such actions fall within the category related to police or regulatory powers of the State. Id. at 210. "[E]nforcement of environmental protection laws merits a higher priority than a debtor's rights to a 'cease fire' or the creditors' rights to an orderly administration of the estate." Id. at 207.

       8.   Debtor spends much time and energy writing about the bar date. The Department has never asserted that it was not

notified of the bar date. The Department has never asserted that it did not know that W.R. Grace was in bankruptcy. It does assert that before March 31, 2003, the bar date, it did not know that Grace had certified to the truth of false information. There was no reason for the Department to have suspected such a thing.

9. Debtors point to an EPA document (Debtors' Objection, Exhibit B) that was copied to the Department's Robert Van Fossen, among several others, dated November 6, 2002. The document is a memo from the EPA's Michael Ferriola, On-Scene Coordinator, Response and Prevention Branch, EPA, to George Pavlou, Director, Response and Prevention Branch of the EPA. The memo was a request for approval to expend up to $1,924,000 to conduct a removal action at the W.R. Grace site in Hamilton Township. EPA had taken over the responsibility for cleanup of the site. Mr. Van Fossen was one of twenty others copied on this document. He was the Assistant Director of the Emergency Planning and Response Element. It does not follow from his seeing EPA's funding request that it would give him reason to think that the State had a claim for the submittal of false information committed by Grace in 1995. Indeed, he had no reason to think that in 1995 Grace submitted false information to the Department. He had no reason to know this or that Grace had submitted any information at all in 1995.

10. What the debtor would have this court believe is that the Department's receipt of a copy of a 2002 internal EPA memo concerning the cleanup of the Hamilton site equates with knowledge

of the 1995 submission of false information. That is not the case. They are distinct events. The Department receives information concerning the remediation of thousands of contaminated sites. It does not have the time or resources to check the files of each site to determine the history of the site. Indeed, that, in part, is why the New Jersey Legislature enacted ISRA. The Department does not have the resources to discover and address all of the contaminated sites in New Jersey. Thus, owners and operators of industrial establishments are required to provide relevant and accurate information to the Department to ensure the timely and efficient remediation of sites. The debtor as the operator of an industrial establishment, therefore, was obligated to provide true and accurate information about the Hamilton site to the Department. That obligation remains today. Thus, it was not the Department's duty to root through its files to determine if the debtor had accurately described the generation, use, transport, or storage of hazardous substances at the site in the 1995 PA/SI report and the Negative Declaration, but the debtor's obligation to certify only accurate information as true.

      11. In sum, the facts of this case are similar to those of the Enron matter where the claimant did not know of the billing irregularities or that Enron owed it money until after the bar date. Compliance with ISRA is not a claim. There was no reason to think about the bar date at all. The State did not know that Grace had violated the law until six months after the bar date.

12. At best, the State first learned of this possible violation in the fall of 2003, when the Department of Health and Human Services asked Department staff to comment on a draft health assessment of the site. This was six months after the bar date. The funding document back in 2002 did not ring any bells with anyone who might have seen it—nor should it have made anyone think that in 1995 Grace certified to the truth of the false information it had submitted to the Department. It was only in the fall of 2003, when asked to comment on a report, that someone looked up Grace's ISRA history to see what had been done there–why a contaminated site had eluded remedial action at that time. This investigation resulted in a complaint being filed 18 months later. This is not an inordinate amount of time considering the volume of cases handled by the Department and the Attorney General's office. As far as the present motion to file a late proof of claim, there was no need to file one if the Department were going to litigate to establish liability as was the purpose of the complaint. But because of the actions of the debtor to stop the litigation, and the refusal of the courts involved to even issue an appealable order, the matter is in limbo. Thus, the filing of the proof of claim without further delay.

13. Debtors point to various dates along the way when they apparently believe a "late" proof of claim would have been more timely. One of those dates was at the time the State filed the complaint in State Court. Since that complaint clearly gave debtors

notice as to the State's claim and the grounds for the claim, it could be considered an informal proof of claim. See Wilbert Winks Farm, Inc., 114 B.R. 95 (E.D. Pa. 1990), finding that the validity of an informal proof of claim must be recognized in the 3d Circuit. The court further held that the filing must be in the form of a pleading that shows that a demand is made against the estate and the creditor's intention to hold the estate liable.

14. ISRA imposes a "self executing duty to remediate." In re Adoption of N.J.A.C. 7:26B, 128 N.J. 442, 448 (1992), citing Superior Air Products Co. v. N.L. Industries, Inc., 216 N.J. Super. 46, 63-65 (App. Div. 1987), certif. dismissed, 126 N.J. 308 (1991). The success of the ISRA program and its effectiveness in protecting the State's environment rests with the reliability of the reports filed by the owners and operators. The success of this program depends upon the Department's ability to rely on those certifications. Grace's violations are serious violations.

15. Throughout their brief debtors are constantly confusing knowing about the contamination with knowing about the violation of law committed by W.R. Grace (Objection, paragraph 23). It did not immediately jump into one's mind that if the site is contaminated, Grace must have sworn to false information. This is quite irrational. By May 3, 2005, when the Department rescinded the No Further Action letter----the Department knew that the submissions were false and the complaint was then filed weeks later, not at all the time frames asserted by debtors. Grace's contention that the

Department consciously decided to ignore the bar debt is absurd. The facts here, rather, constitute a perfect example of excusable neglect. The Department clearly did not make a conscious decision not to file a claim for a penalty that it did not know about at the time of the bar date. The debtor is making up its own facts. The State did not have a claim for past costs, it was not pursuing Grace to compel a remediation (which would not have been a claim in any event), and it did not know of Grace's serious violation of law at the time of the bar date. To allow Grace to benefit by its wrongful actions would be unconscionable. One can just violate the law and if the regulatory authority does not discover the violation by the bar date it is out of luck and the wrongdoer succeeds? And as for debtor's contention that the State itself said it is hardly neglect—yes, Grace has proven that it is excusable neglect according to their interpretation of the facts, the State says it was impossible to file a claim that it had no way of knowing that it had. But if the standard is excusable neglect, rather than impossibility, excusable neglect certainly fits. This was not a chosen course of action. This was not a calculated decision.

      16. The circumstances here are the same as those of the creditor in In re Enron Corp, No. 01-16034, 2003 Bankr. LEXIS 2113, (Bankr. S.D.N.Y., September 23, 2003) an unpublished decision directly on point. In Enron, the creditors claimed that they failed to file timely claims before the bar date because the information necessary to determine they had any claim against the debtors

regarding meter reading data errors was withheld by the debtors until after the bar date. This is much like the Department's case here, where the Department was unaware that Grace had submitted false information until well after the bar date.

17. The Enron Court found that the creditor was entitled to file late proofs of claim based on excusable neglect, pursuant to Fed. R. Bankr. P. 9006(b)(1). The court found that there was no significant prejudice to the debtors because the debtors had not filed a disclosure statement or plan of reorganization, and that allowing the late claim would not have a disruptive effect upon the debtors' proposed plan. Id at *22. Citing Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993), the Enron Court found that in permitting a creditor's late filing under Bankruptcy Rule 9006(b)(1), the Supreme Court explained that Congress, by empowering the courts to accept late filings where the failure to act was the result of excusable neglect, plainly contemplated that courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

18. As recently as June 18, 2007, debtor moved for yet another extension (its tenth such motion) of the period of exclusivity, during which only the debtor had the right to produce a plan of reorganization, so it surely is not even close to having a confirmed plan and cannot be prejudiced in any way. What claims

will be allowed have not been determined yet at all. Estimation hearings on the asbestos claims have not been held. There can be no prejudice to the debtor or the creditors by adding one more claim when the asbestos claims are no where near being settled nor a plan submitted let alone confirmed.

19. As in Enron, granting this motion will not open the "flood gates" for similar "tardy" claims as debtor predictably asserts. Unless, of course, there is a multitude of other presently undiscovered infractions of the law committed by the debtor, the facts of this case are unique.

20. Debtors harp incessantly on the fact that the State waited four years after learning of its claim to file its proof of claim. That is a distortion of the facts. Eighteen months after discovering the violation, the State filed a complaint to fix liability and damages that would presumably result in a proof of claim or maybe even a settlement. The State was not avoiding the jurisdiction of this court by filing a state police power enforcement action in state court, the correct court in which to file such an action. It was not foreseeable that the debtor would improperly remove the action from State court to Federal court and then the Court would stay all action, refusing even to issue a final appealable order. It was at that point that the State decided to move to file a late proof of claim. It is rather frustrating how debtors ignore the facts.

21. The debtors would leave no time for even an investigation by the Department of the suspected violation after Fall, 2003, before filing the complaint. "Where, as here, a party has induced a governmental body to render a favorable decision by withholding critical information, it is in a poor position to complain when its misdeeds are later discovered and the administrative determination changed." In the Matter of Cadgene Family Partnership, 286 N.J.Super. 270, 277 (App. Div. 1995).

## **CONCLUSION**

For the forgoing reasons, the State of New Jersey, Department of Environmental Protection, requests the Court to grant its motion to file a late proof of claim.

> Respectfully submitted,
>
> ANNE MILGRAM
> ATTORNEY GENERAL OF NEW JERSEY
>
> By: /S/ Rachel Jeanne Lehr
>     Rachel Jeanne Lehr
>     Deputy Attorney General
>     Richard J. Hughes Justice Complex
>     25 Market Street
>     PO Box 093
>     Trenton, New Jersey 08625-0093
>     Attorney for Movants
>     (609) 984-6640

Dated:    July 16, 2007

**<u>CERTIFICATE OF SERVICE</u>**

    I, Rachel Jeanne Lehr, certify that I am not less than 18 years of age, and that service of this amended notice of motion was made by overnight mail on July 16, 2007 upon the following:

David M. Bernick, P.C.
Janet S. Baer, Esquire
Steven A. Engel, Esquire
KIRKLAND & ELLIS, LLP
200 East Randolph Drive
Chicago, Illinois 60601
 Attorneys for Debtors and
 Debtors in Possession

Laura Davis Jones, Esquire
James E. O'Neill, Esquire
PACHULSKI, STANG, ZIEHL, YOUNG,
  JONES & WEINTRAUB, P.C.
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705
  Attorneys for Debtors and
  Debtors in Possession

Anthony J. Marchetta, Esquire
Day Pitney, LLP
Attorneys for Defendants W.R. Grace & Co &
W.R. Grace & Co. - Conn.
200 Campus Drive
Florham Park, New Jersey 07932

Edward F. McTiernan, Esquire
Gibbons P.C.
Attorneys for Defendant Jay H. Burrill
One Gateway Center
Newark, New Jersey 07102-5310

Thomas C. Frongillo, Esq.
Weil, Gotshal & Manges LLP
100 Federal Street, Floor 34
Boston, Massachusetts  02110

U.S. Trustee
Frank J. Perch III
Office of the U.S. Trustee
844 King Street, Suite 2207
Lock Box 35
Wilmington, DE 19801

Under penalty of perjury, I declare that the foregoing is true and correct.

      /S/Rachel Jeanne Lehr
Rachel Jeanne Lehr
Deputy Attorney General

Date: July 16, 2007