IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| W. R. GRACE & CO., et al., ) | Case No. 01-01139 (JKF) |
| ) | Jointly Administered |
| Debtors. ) | |

**DEBTORS' LIMITED REPLY TO OBJECTIONS TO TENTH MOTION FOR AN ORDER EXTENDING DEBTORS' EXCLUSIVE PERIODS**

Debtors' file this limited reply to address two specific aspects of the Asbestos Constituents' Opposition[1] to the Debtors' Exclusivity Motion. The first is the factually incorrect and misleading description of the state of settlement discussions and negotiations. The second is the supposed "new idea" for briefing on the Debtors' 2005 plan of reorganization -- a wasteful and very distracting suggestion that will have no bearing on a "quicker exit from Chapter 11."[2]

I.  **While Grace is Always Willing to Engage in Global Negotiations, the Past Months Have Demonstrated the Efficacy of More Focused Settlement Discussions.**

The Asbestos Constituents argue stridently that no plan discussions have occurred because no "global negotiations" have been taking place recently. Not only is this wrong factually, but they fail even to acknowledge that an alternative approach is being pursued successfully. The reality is that global negotiations in this case have failed to date, whereas individual negotiations with key constituents have proven to be effective.

As the Court will recall, in the fall of 2004, the Debtors engaged in settlement discussions aimed at a consensual plan. These negotiations did not involve Debtors' counsel or generally

---

[1] Asbestos Constituents' Opposition to Debtors' Tenth Motion for An Order Pursuant to 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods In Which to File a Chapter 11 Plan and to Solicit Votes Thereon [Dkt. No. 1683] (the "Opposition").

[2] Opposition at 2.

committee counsel. They took place directly between Debtors' in-house counsel and certain executives and key attorneys for certain claimants. Because these negotiations appeared to be progressing so well, the parties encouraged the Debtors to seek an extension of time to file their plan[3] so that discussions could continue. Within a month, unfortunately, negotiations stalled.

In the fall and winter of 2005, settlement discussions were revived. These discussions were primarily led by certain asbestos attorneys. Again, they did not involve Debtors' counsel or committee counsel. These discussions led to postponement of the due date for the personal injury questionnaires. But these efforts too, unfortunately, also stalled.

The Debtors then agreed to the appointment of a mediator to mediate "global" settlement discussions. The introductory meeting, attended by well over 25 parties including the Debtors and committee counsel, was no more than a posturing session among constituents, and it was an utter failure. The Asbestos Constituents declined to engage the Debtors or the Equity Committee in *any* settlement discussions. Instead, the Asbestos Constituents used the time to negotiate a collusive and illegal agreement among themselves on how they would divide up the available assets.[4]

---

[3] Order Pursuant to 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods In Which to File A Chapter 11 Plan and to Solicit Votes Thereon, dated 6/16/2004 [Dkt. No. 5820].

[4] This is the "85/15" agreement that dictates the percentage of funds that will go to pay PI and PD claims regardless of merit, regardless of the Court's rulings on ZAI Claims, the disallowance of other PD claims, or the ultimate PI estimation. Such an agreement (i) is in direct conflict with the Bankruptcy Code's explicit claims allowance and distribution rules; (ii) contemplates an unconfirmable plan; and (iii) is against public policy. After this Court pressed that if the deal paid value to claims that the Court determined would have no value, the deal would be unconfirmable, Mr. Frankel conceded that the deal "would fall apart" if the Court determined the plan to be unconfirmable on that basis (9/11/06 Hrg. Tr. at 49-50). However, notwithstanding (1) this Court's subsequent ZAI Opinion and Order, which substantially impacts whether ZAI claims have any merit, and (2) the substantial reduction and disallowance of PD claims, the Asbestos Constituents still have not changed their negotiating position.

2

The fact is that global negotiations have been attempted repeatedly and have failed. This is not to say that such an approach will not become useful at some point -- perhaps in the immediate future. But experience has directed Grace to pursue another path in the hope that some progress could be made.

## II. The Debtors Have Been Engaged In Meaningful Negotiations With Various Parties And Have Achieved Successful Results Over the Last Ten Months.

Over the past months, settlement has been pursued on two paths, one involving global settlement of both property damage and personal injury claims, and the other involving settlement of property damage claims prior to the settlement of personal injury claims. Both paths have been active, and the General Counsel of Grace is prepared to submit an affidavit listing dates and participants.

Negotiations now have resulted in settlement agreements on PD claims with the majority of law firms representing PD claimants. These negotiations have not generally involved Debtors' outside counsel, nor have they involved counsel for the PD Committee. Instead, they have involved the individual law firms representing PD claimants and the Debtors' in-house counsel, who are most familiar with the claims. Indeed, agreements have been executed or settlements in principle have been reached with all but two firms -- the Speights & Runyan firm and the Motley Rice firm.

Mr. Baena, on behalf of the PD Committee, has recently argued that "he has been kept out of the process."[5] He is correct only in that he has not been involved. Yet, without PD Committee involvement, nearly all of the PD claims have been resolved. Simply put, Mr. Baena has "no dog in the fight" if individual PD counsel want to negotiate with the Debtors

---

[5] 6/25/07 Hrg. Tr. at 80.

individually. The results speak for themselves. In addition, Mr. Baena has argued that settlements regarding claims are "totally different" from the plan process.[6] The Debtors disagree. If all or most of the PD claims are settled, the plan process and how such claims are treated under the plan are significantly impacted.

The discussions that have occurred on the PI and ZAI side are similar, albeit not nearly as advanced. The Debtors have been engaging in individualized negotiations with counsel for ZAI claimants regarding how to address these potential claims in the chapter 11 cases and under a plan. With respect to PI claims, primarily the Debtors' in-house counsel and representatives for equity have had discussions with key counsel representing large numbers of asbestos PI claimants regarding settlement positions, structure, and economics. It is the Debtors' belief, based on past history in this case, that success with respect to resolving how to treat PI claims under a Plan will only occur if the discussions involve the key attorneys representing PI claimants, not Committee counsel, and the case continues to advance toward the estimation trial.

### III. The Asbestos Constituents "New" Argument in Favor of A Briefing Schedule Was Earlier Rejected and Promises Only Distraction That Will Not Result In A Quicker Exit From Chapter 11.

The Asbestos Constituents have used bold typeface, at this Court's direction,[7] to signal an alleged "new" argument they have in opposition to exclusivity. The Asbestos Constituents' argument, however, is not new. The Asbestos Constituents have argued again and again that they disagree with impairment and voting issues in the Debtors' 2005 filed plan.[8] Now they

---

[6] *Id.*

[7] 6/25/07 Hrg. Tr. at 90.

[8] *See, e.g.*, 9/11/06 Hrg. Tr. at 51.

4

91100-001\DOCS_DE:129187.1

want to argue it again, in advance of the estimation trial, by burdening the Court with academic briefing. As this Court has already observed, "the debtor and the plan proponents could also modify the existing plan to cure that issue [impairment]... that's a pretty easy amendment to make."[9] It simply makes no sense for this Court to spend more time on matters that put the proverbial cart before the horse when the estimation results, which will drive how the plan is to be amended, are not yet available.

For the foregoing reasons and for the reasons articulated in the Debtors' Exclusivity Motion, the Debtors respectfully request that the Court overrule the objections and grant a further extension of the Debtors' exclusive periods to file a chapter 11 plan and solicit votes thereon as set forth more fully in the Debtors' Exclusivity Motion.

---

[9] *Id.* at 51-52.

Dated: July 13, 2007

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Theodore L. Freedman
Janet S. Baer
Deanna D. Boll
Citigroup Center
153 East 53rd Street
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB LLP

_/s/ James E. O'Neill_
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession