IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al. | ) | |
| | ) | |
| Debtors. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | **Trial Date: July 30-31, 2007** |
| | ) | **Related Docket Nos. 9315, 16149** |

**CLAIMANTS' TRIAL BRIEF FOR THE JULY 30-31, 2007 STATUTE OF LIMITATIONS HEARING ON CERTAIN MOTLEY RICE CLAIMANTS' ASBESTOS PROPERTY DAMAGE CLAIMS**

Debtors' ("Grace") erroneously assert that ten (10) claims filed by Motley Rice LLC on behalf of Washington State University (WSU),[1] Edmonds Community College (Edmonds),[2] CHP Associates, Inc (CHP)[3] and the Port of Seattle (Port)[4] are barred by the respective statutes of limitations. Pursuant to the Court's June 25, 2007 Scheduling Order [Docket No. 16149], these claims will be tried on statute of limitations grounds at the July 30 and July 31 hearing in these Chapter 11 cases.[5]

The record at the July 30-31 hearing will establish that Washington State University, Edmonds Community College, and the Port of Seattle are not subject to statute of limitations under the doctrine of *nullum tempus*. Under Washington state law,

---

[1] Claim No. 6939 (WSU-Kruegal), Claim No. 6940 (WSU-Johnson), Claim No. 6942 (WSU-Dana), Claim No. 6943 (WSU-Beasley), Claim No. 6944 (WSU-McCoy)

[2] Claim No. 6938 (Edmonds Community College)

[3] Claim No. 2977 (Cherry Hill Plaza)

[4] Claim Form No. 9645 (Port of Seattle-Main Terminal), Claim No. 9646 (Port of Seattle-North Satellite Bldg.), Claim No. 9647 (Port of Seattle-South Satellite Bldg.)

[5] Debtors' Trial Brief does not assert statute of repose arguments as to these claims. Under the respective statutes of repose, these claims are not barred. 10 Del.C. § 8127(a)(4) (Delaware statute would not apply to manufacturer and should not apply because the borrowing statute of Delware should not be applied to these claims); Cinnaminson Tp. Bd. of Educ. v. U.S. Gypsum Co., 552 F.Supp. 855, 862-63 (D.C.N.J. 1982); R.W.C. 4.16.300 (2006). Furthermore, Debtors' trial brief does not assert the equitable doctrine of laches. Claimants exhibits 19-32 which provide background on W.R. Grace and demonstrate that this doctrine should not be applied.

1

"no claim of right predicated upon the lapse of time shall ever be asserted against the state."   R.C.W. 4.16.160.   Washington State University and Edmonds Community College act as agents of the State of Washington and as such receive the protections of *nullum tempus*.   The Port of Seattle is a municipal corporation of the State of Washington.   R.C.W. 53.04.010 et seq.   The Port of Seattle and the SeaTac airport operate for the benefit of the State of Washington.   As such, the Ports claims are protected under the doctrine of *nullum tempus*.

CHP's claim is simply not barred by the New Jersey statute of limitations.[6]   The record will show that CHP Associates, Inc. had no knowledge and could not reasonably have had knowledge that CHP contained asbestos prior to 1997.   As New Jersey recognizes a six (6) year statute of limitations for property damage claims the discovery rule tolled this claim until 1997.

Additionally, it is broadly recognized that a cause of action for asbestos property damage does not accrue merely because of the presence of asbestos in a building.   Rather, the claim accrues when defendant's product is discovered to have contaminated the building.   Grace fails to present evidence of contamination at Cherry Hill Plaza and numerous Washington State University claims.

## I.   The Debtor has the Burden of Establishing the Affirmative Defense of Statute of Limitations

A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a).   Additionally, the proof of claim form constitutes "prima facie evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f).   See also Fed. R. Bankr.P. 3007.   The filing of an objection to a proof of claim "creates a dispute

---

[6] Claimants explain that the Delaware Statute of Limitations does not apply to these claims under Delaware law in Section II. B. below.

which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. See Adv. Comm. Notes to Fed. R. Bankr.P. 9014.

The proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." Lundell v. Anchor Construction Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir.2000); (citing Wright v. Hoim (In re Hoim), 931 F.2d 620, 623 (9th Cir.1991); see also Ashford v. Consolidated Pioneer Mort., 178 B.R. 222, 226 (9th Cir. BAP 1995), aff'd, 91 F.3d 151, 1996 WL 393533 (9th Cir.1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." In re Holm, 931 F.2d at 623. Moreover, this is especially true where objection is based upon the affirmative defense of limitations upon which the Debtors' bear the ultimate burden of proof. Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481 (3d Cir.1985); California Sansome v. U. S. Gypsum Co., 55 F.3d 1402 (9th Cir.1995); Clayton Center Asso. v. W. R. Grace & Co., 861 S.W.2d 686 (Mo.App.1993).

## II.    Delaware Conflict of Law Requires that the Washington Statute of Limitations Apply to the Washington Claims and that the New Jersey Statute of Limitations Apply to the New Jersey Claim

### A. General Application

On claims arising out of state law, U.S. bankruptcy courts apply the conflicts of law analysis of the state in which the court sits. In re Lois/USA, Inc., 264 B.R. 69, 90 (Bkrtcy. S.D.N.Y. 2001) (citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Delaware employs the "most significant

relationship" choice of law doctrine.  <u>Travelers Indem. Co. v. Lake</u>, 594 A.2d 38, 46-47

(Del. 1991).

    Under the most significant relationship test there can be little doubt that the law of

the states in which the properties are located, the actual *situs* of the properties, has the

most significant relationship to these claims.  This position is bolstered by a presumption

created by the Restatement 2d Conflicts of Law § 147 that injuries to property will be

governed by the law of state in which the damage occurs.  This section states that:

> In an action for an injury to land or other tangible thing, the local law of
> the state where the injury occurred determines the rights and liabilities of
> the parties unless, with respect to the particular issue, some other state has
> a more significant relationship under the principles stated in § 6 to the
> occurrence, the thing and the parties, in which event the local law of the
> other state will be applied. RESTATEMENT 2D CONFLICTS OF LAW § 147
> (1971).

As such, the New Jersey claim should be governed by New Jersey law including the six

(6) year statute of limitations and the Washington claims should be governed by

Washington law including the three (3) year statute of limitations.  N.J. Stat. Ann. §

2A:14-1 (2006); R.C.W. 4.16.080(2).

    **B. Delaware Borrowing Statute**

    In deciding if the Delaware borrowing statute should be applied to these claims,

the Court should consider the statute in the context of Delaware courts' application of this

law.   Delaware court decisions interpreting and applying the borrowing statute

demonstrate that the borrowing statute should not apply to these Grace property damage

claimants.

    The Delaware borrowing statute states that:

> Where a cause of action arises outside of this State, an action cannot be
> brought in a court of this State to enforce such cause of action after the

expiration of whichever is shorter, the time limited by the law of this
State, or the time limited by the law of the state or country where the cause
of action arose, for bringing an action upon such cause of action. Where
the cause of action originally accrued in favor of a person who at the time
of such accrual was a resident of this State, the time limited by the law of
this State shall apply.  18 Del. C. § 8121 (2005).

The application of this borrowing statute to these claims would be contradictory to the
holdings of the Delaware Supreme Court.  The judicially recognized purpose of this
statute is to "prevent forum shopping…"  <u>Saudi Basic Industries Corp. v. Mobil Yanbu
Petrochemical Co., Inc</u>., 866 A.2d 1, 17 (Del. 2005) (citing <u>Pack v. Beech Aircraft Corp</u>.,
132 A.2d 54, 58 (Del. 1957).  Delaware courts interpreting this statute, have repeatedly
and consistently refused to apply the borrowing statute in circumstances which
undermine or fail to support this purpose.  <u>Saudi Basic Industries Corp.</u>, 866 A.2d at 17;
<u>Pack v. Beech Aircraft Corp</u>., 132 A.2d at 58; <u>B. Lewis Productions, Inc. v. Bean</u>, 2005
WL 273298, Civ. No. 02-93-KAJ (D.Del. 2005); <u>Air Prod. & Chem., Inc. v. Lummus
Co</u>., 252 A.2d 543 (Del. 1969).

The decision <u>Saudi Basic Industries Corp</u>. affirmatively demonstrates that the
Delaware borrowing statute should not apply to these cases.  In this decision, the
Delaware Supreme Court faced the question of whether the borrowing statute should bar
a counterclaim.

The trial court in <u>Saudi Basic Industries Corp</u>. found that "to apply the borrowing
statute and [conclude] that Delaware's statute of limitation[s] would apply would
basically turn the borrowing statute on its head for the purpose for which it was enacted."
<u>Saudi Basic Industries Corp</u>., 866 A.2d at 17.

The Delaware Supreme Court agreed writing:

"[T]he bottom line is: Our legislature intended to prevent people out of state,

foreign plaintiffs, from coming into this forum and getting the benefit of a statute of limitations that really ought not to apply given the fact that the substantive law is interwoven with the procedural right." *Id.* at 15.

The court found that applying the statute against a party who did not choose the forum and adopting a "literal construction . . . would subvert the statute's underlying purpose." *Id.* at 16. As with <u>Saudi Basic Industries Corp</u>. decision, property damage claimants in the Grace bankruptcy did not "bring suit in Delaware as plaintiff[s] to enforce [these] claims." *Id.* at 17. Rather it was W.R. Grace that chose Delaware as a forum.

Federal court decisions similarly support the position that the Delaware borrowing statute should not apply. In <u>B. Lewis Productions, Inc. v. Bean</u>, the United States District Court, District of Delaware found that a borrowing statute should not apply against a party who did not chose the forum. 2005 WL 273298, Civ. No. 02-93-KAJ (D.Del. 2005). The district court noted that permitting a borrowing statute to apply against a party who did not choose the forum "would effectively encourage the forum shopping denounced by the Delaware Supreme Court, and it would unfairly deprive [Plaintiff] of rights to which he may otherwise be entitled." *Id.*

To apply the Delaware borrowing statute to the Washington claims and the New Jersey claim would directly subvert the purpose of the borrowing statute and would be contrary to the holdings of the Delaware Supreme Court and the Delaware U.S. District Court. These claimants had no choice in filing their bankruptcy claims in Delaware bankruptcy court. In fact, applying the borrowing statute to these claims would have the perverse effect of permitting debtors to forum shop for bankruptcy courts in states with borrowing statutes and short statutes of limitations.

**III.    The Washington Claimants are not subject to Statute of Limitations under the Doctrine of *Nullum Tempus Occurrit Regi***

As was discussed in the *Washington Claimants Supplemental Response to Debtors' Objection* [Docket No. 15122], Washington claimants are not subject to statute of limitations, statutes of repose, or the doctrine of laches under the doctrine of *nullum tempus occurrit regi* (*nullum tempus*) recognized under Washington law.  Bellevue Sch. Dist. No. 405 v. Brazier Constr. Co., 103 Wash.2d 111, 114, 691 P.2d 178 (1984); R.C.W. 4.16.160 (2006).  Washington has long recognized the doctrine of *nullum tempus*. This doctrine holds that "the sovereign is exempt from the consequences of its laches, and from the operations of its statutes of limitations."  Costello v. United States, 365 U.S. 265, 281 (1961).

Washington courts have consistently and actively applied the doctrine of *nullum tempus* stating that "[t]he State, acting in its sovereign capacity, is immune from the application of limitation periods to action brought for the benefit of the State."  Bellevue Sch. Dist. No. 405 v. Brazier Constr. Co., 103 Wash.2d 111, 114, 691 P.2d 178 (1984).

In fact, the Washington Legislature has codified the doctrine of *nullum tempus*. Revised Code of Washington 4.16.160 (2006) reads:

> … except as provided in RCW 4.16.310,[7] **there shall be no limitation to actions brought in the name or for the benefit of the state, and no claim of right predicated upon the lapse of time shall ever be asserted against the state** . . .

---

[7] Revised Code Washington 4.16.300-320 creates a six year statute of repose for claims against "person[s] having constructed, altered or repaired any improvement upon real property, or having performed or furnished any design, planning, surveying, architectural or construction or engineering services, or supervision or observation of construction, or administration of construction contracts for any construction, alteration or repair of any improvement upon real property."  R.C.W 4.16.300 (2006).  These statutes only apply to parties "registered or licensed under R.C.W. 18.08.310 (architects), 18.27.020 (contractor), 18.43.040 (engineers), 18.96.020 (landscape architect), or 19.28.041 (electricians)."  R.C.W. 4.16.300 (2006).  As Grace does not fall under these categories, no such protection applies to W.R. Grace.

The record will show that under Washington law, these claims are brought for the "benefit of the [State]" and as such are protected under *nullum tempus*.

**A. Port of Seattle-Sea-Tac Airport Claims[8]**

Motley Rice represents the Port of Seattle for claims related to the municipalities buildings at the Seattle Tacoma International Airport (SeaTac). Ex. 1, 2 & 3.

"The [Port of Seattle] is a political subdivision of the state [of Washington] and a municipal corporation." Port of Seattle v. International Longshoremen's & Warehouse Union, 324 P.2d 1099, 1100 (1958). R.C.W. 14.08.010(2) defines a municipality to include, "any county, city, town, airport district, or port district of this state. . ." Under Washington law a municipality is protected by the doctrine of *nullum tempus* when operating "for the benefit of the state." R.C.W. 4.16.160 (2006). The Port of Seattle owns Seattle-Tacoma International Airport (SeaTac). Ex. 4.

The key determination of whether a municipality's actions are "for the benefit of the state" is whether that entity is operating in the states sovereign capacity or in a proprietary capacity. City of Moses Lake v. United States of America, 430 F.Supp.2d 1164, 1171-72 (E.D. Wash. 2006) "When a municipal corporation assists in the government of the state as an agent of the state to promote the *public welfare generally*, the municipal corporation acts in a sovereign capacity. When, however, it regulates and administers the local and internal affairs of the territory which is incorporated, for the special benefit and advantage of the urban community embraced within the boundaries of the municipal corporation, it acts in a proprietary capacity." Id. (internal quotes and citations omitted, emphasis added).

---

[8] Sea-Tac Main Terminal Building (Claim No. 9645), Sea-Tac North Satellite Building (Claim No. 9646), Sea-Tac South Satellite Building (Claim No. 9647)

Bellevue School District No. 405 v. Brazier Construction is a prominent case in Washington state *nullum tempus* jurisprudence.  103 Wash.2d 111, 691 P.2d 178 (1984). In Bellevue, the Washington Supreme Court determined that *nullum tempus* permitted a school district to bring a claim for breach of construction contract against the builder of a high school in which the work was completed 20 years prior.

The court found that educating students was a sovereign function and thus claims against the construction company of a school were protected by *nullum tempus*.  Id. at 114 (citing Wash. Const. Art 9 §§ 1,2).  There can be little doubt that Sea-Tac Aiport serves a similar sovereign function.   RCW 14.08.020 definitively demonstrates this:

> **14.08.020: Airports a public purpose**
>
> The acquisition of any lands for the purpose of establishing airports or other air navigation facilities; the acquisition of airport protection privileges; **the acquisition, establishment, construction, enlargement, improvement, maintenance, equipment and operation of airports and other air navigation facilities, and the exercise of any other powers herein granted to municipalities, are hereby declared to be public, governmental, county and municipal functions, exercised for a public purpose, and matters of public necessity**, and such lands and other property, easements and privileges acquired and used by such municipalities in the manner and for the purposes enumerated in this chapter shall and are hereby declared to be acquired and used for public, governmental, county and municipal purposes and as a matter of public necessity (emphasis added).

Furthermore, the Washington legislature has reiterated the value of civil aviation to Washington by establishing the Washington Aviation Council.   R.C.W. 47.68.410 (2006).  In granting these powers and this recognition to municipal airports, the State of Washington has recognized that entities such as Sea-Tac airport serve a public and sovereign function broader then simply benefiting the "community embraced within the boundaries."   City of Moses Lake, 430 F.Supp.2d at 1171-72.

Furthermore, the court in the <u>Bellevue</u> case noted that school districts are, by law, municipal corporations with direct authority to establish and operate public schools including the power to erect and maintain buildings for that purpose. <u>Id.</u> at 114. Similarly, R.C.W. 14.08.120 grants to the municipalities operating an airport the power, "To vest authority for the construction, enlargement, improvement, maintenance, equipment, operation, and regulation thereof in an officer, a board, or body of the municipality by ordinance or resolution that prescribes the powers and duties of the officer, board, or body; and the municipality may also vest authority for industrial and commercial development in a municipal airport commission."  The Port of Seattle is operated by a commission of five individuals elected at large by the citizens of King County, Washington.  <u>Ex.</u> 4.

Just like the school district described in <u>Bellevue</u>, Port of Seattle Airport is a municipality which functions for the good of the State of Washington rather then simply for the benefit of the municipality itself.  The Port of Seattle Airport is therefore entitled to the protections of *nullum tempus*, therefore, the claims against W.R. Grace cannot be barred by statutes of limitations or laches.

## B. Washington State University Claims and the Edmond's Community College Claim[9]

Motley Rice represents five (5) Washington State University claims and a claim on behalf of Edmonds Community College.  <u>Ex.</u> 5-10.  As identified in the previous section, Washington recognizes the doctrine of *nullum tempus* meaning that "[t]he State,

---

[9] Washington State University-Krueger McAllister Central (Claim No. 6939), Washington State University-Johnson Hall and Annex (Claim No. 6940), Washington State University-Dana Hall (Claim No. 6942), Washington State University-Beasley Performing Arts Center/Pullman Coliseum  (Claim No. 6943), Washington State University-McCoy Hall (Claim No. 6944), Edmonds Community College (Claim No. 6938),.

acting in its sovereign capacity, is immune from the application of limitation periods to action brought for the benefit of the State." <u>Bellevue Sch. Dist. No. 405 v. Brazier Constr. Co.</u>, 103 Wash.2d 111, 114, 691 P.2d 178 (1984). Furthermore, R.C.W. 4.16.160 reads that "no claim of right predicated upon the lapse of time shall ever be asserted against the state."

The question of whether a state institution of higher education benefits from *nullum tempus* depends on whether that institution is considered an agency of the state. This question was considered in a 1993 New Jersey case. <u>See</u> <u>Rutgers, State University of New Jersey v. Grad Partnership</u>, 269 N.J.Super. 142, 634 A.2d 1053 (1993). The *Rutgers* case stemmed from a claim against a construction company whose faulty work resulted in environmental damage that had to be cleaned up by the University. *Id* at 145. In the <u>Rutgers</u> case, the court recognized that Rutgers was a state agency and was therefore protected by the doctrine of *nullum tempus*. *Id.* at 149.

The relationship of Rutgers University to New Jersey is indistinguishable from the relationship between Washington State University and the State of Washington. Both Washington State University and Rutgers are public universities. <u>Ex.</u> 11. Both universities were created by statute. R.C.W. 28B.30.010; N.J.S.A. 18A:65-1. The leadership of both universities is selected by the Governor of the state and with consent of the state senate. R.C.W. 28B.30.100; N.J.S.A. 18A:65-14, 15, 65-24.

Similarly, Edmonds Community College is a state community college. 132Y WAC. Edmonds is regulated by the State Board for Community and Technical Colleges, a board responsible for community and technical colleges such as Edmonds Community College which is appointed by the Governor. R.C.W. 28B.50.070 & 28B.50.090.

Washington statutes recognize the public function of Washington State University. "The aim and the purpose of Washington State University shall be to provide a higher education in such fields as may be established therein from time to time by the board of regents or by law, including instruction in agriculture or other industrial pursuits, mechanical arts and the natural sciences." R.C.W. 28B.30.015.

Similarly, the public function of Washington State community colleges such as Edmonds is recognized by Washington statutes. The purpose of Washington State Community Colleges is to "[e]nsure that each college district shall offer thoroughly comprehensive educational, training and service programs to meet the needs of both the communities and students served by combining high standards of excellence in academic transfer courses; realistic and practical courses in occupational education, both graded and ungraded; community services of an educational, cultural, and recreational nature; and adult education, including basic skills and general, family, and work force literacy programs and services." R.C.W. 28B.50.020 (2006). Furthermore the statutes recognize that the community colleges are a "vital section of our state's higher education system." R.C.W. 28B.50.020 (2006).

Washington case law has specifically recognized in *nullum tempus* cases that "Education is one of the paramount duties of the state. The duty and power to educate the people are not only inherent qualities of sovereignty but are expressly made an attribute of sovereignty in the state of Washington by the state constitution." Bellevue Sch. Dist. No. 405, 103 Wash.2d at 115, 691 P.2d at 182 citing Wash. Const. art. 9, §§ 1, 2.

Furthermore, Washington statutes delegate literally dozens of advisory and administrative functions to Washington State University just like any other state agency.

<u>See e.g.</u> R.C.W. 15.08.025 (delegating to Washington State University the power to set certain specific rules relevant to agricultural products).

Washington case and statutory law strongly support the position that *nullum tempus* should protect these claims. As such, the doctrine of *nullum tempus* prevents the application of statutes of limitations, repose, and the doctrine of laches to claims brought by Washington State University and Edmonds Community College against W.R. Grace.

## IV.  Property Damage Claims Do Not Accrue Until the Claimant Could have known through Reasonable Diligence that the Building had been Contaminated with Asbestos

The statute of limitations is an affirmative defense upon which the Debtors bear the burden of proof. It is the Debtors who bear the burden of establishing that the wrongdoing and the injury occurred outside the limitations period. <u>Van Buskirk v. Carey Canadian Mines, Ltd.</u>, 760 F.2d 481 (3d Cir.1985); <u>California Sansome v. U. S. Gypsum Co.</u>, 55 F.3d 1402 (9th Cir. 1995); <u>Clayton Center Asso. v. W. R. Grace & Co.</u>, 861 S.W.2d 686 (Mo.App. 1993).

The position of the vast majority of jurisdictions is that only asbestos contamination constitutes a physical injury compensable under tort law. <u>E.g.</u>, <u>MDU Resources Group v. W.R. Grace & Co.</u>, 14 F.3d 1274, 1279 (8th Cir. 1994) (injury is the contamination of building, not mere presence of asbestos).[10]  Knowledge of a "potential"

---

[10] <u>See also</u> <u>Adams-Arapahoe Sch. Dist. v. GAF Corp.</u>, 959 F.2d 868, 872 (10th Cir. 1992) ("[o]nly asbestos contamination constitutes a physical injury compensable under tort law."); <u>City of Greenville v. W.R. Grace & Co.</u>, 827 F.2d 975, 977-78 (4th Cir. 1987) (injury is contamination, not mere presence of asbestos); <u>San Francisco Unified Sch. Dist. v. W.R. Grace & Co. - Conn.</u>, 44 Cal. Rptr. 305, 306 (Cal. Ct. App. 1995) ("[w]e hold – consistent with the vast majority of other jurisdictions that have considered this issue – that the owner of a building containing asbestos cannot state a cause of action in tort against an asbestos manufacturer until contamination occurs."); <u>Board of Educ. v. A, C and S, Inc.</u>, 546 N.E.2d 580, 587 (Ill. 1989) (ruling that physical harm, not mere dangerousness that creates a risk of harm, is required to support an award of damages); <u>Kansas City v. W.R. Grace & Co.</u>, 778 S.W.2d 264, 268 (Mo. Ct. App. 1989) (statute does not run until release of toxic asbestos fibers into the environment and there is the ability to ascertain a substantial and unreasonable risk of harm from the release of the toxic asbestos fibers).

future hazard or injury is not enough.[11]   This basic tort principle makes clear that

damages may not be awarded for injuries not yet suffered. General knowledge that a

product in the building contains asbestos and poses a risk of future injury is insufficient

for a claim to accrue.[12]   Indeed, Grace admits this in its very objections.  "The mere

presence of asbestos-containing material in a building or on a property does not create a

---

[11] Adams-Arapahoe, 959 F.2d at 872; MDU Resources, 14 F.3d at 1279 (8th Cir.1994) ("the District Court erred when it instructed that the issue for purposes of the statute of limitations was when MDU learned of the presence of asbestos in the building"); THS Northstar v. W. R. Grace & Co., 66 F.3d 173 (8th Cir.1995) ("the distinction between the mere presence of asbestos-containing materials in a building and actual release and contamination is critical" because "no cause of action exists until there has been a substantial release"); San Francisco Unified School District v. W. R. Grace & Co., 37 Cal.App.4th 1318,44 Cal.Rptr.2d 305 (Cal.App.4 1995) ("the mere presence of asbestos constitutes only a threat of future harm. . . . [ by friable asbestos is the physical injury and the actual, appreciable harm that must exist before a property owner's strict liability or tort cause of action against an asbestos manufacturer accrues and the limitations period commences."); Heider v. W. R. Grace & Co., 1992 WL 189254 (N.D.Ill.) (knowledge of the presence of asbestos is not enough to trigger the statute of limitations because the "threat of future harm, not yet realized, is not enough").

[12] MDU Resources v. W. R. Grace, 14 F.3d 1274 (8th Cir.1994) (rejecting Grace's argument that knowledge of the mere presence of asbestos triggers the statute of limitations, and holding that the proper question was when MDU could have learned, with the exercise of reasonable diligence, that its building had been contaminated by asbestos); California Sansome v. U. S. Gypsum Co., 55 F.3d 1402 (9th Cir.1995) (contamination must occur in the first instance in order to trigger the running of the statute of limitations); Kansas City v. W. R. Grace & Co., 770 S.W.2d 264 (Mo.App.1989); City of Wichita v. United States Mineral Product Co., 72 F.3d 1491 (10th Cir.1996) (holding actual physical injury by "contamination" is an essential element of any negligence claim and liability may not be premised upon the mere risk of future harm not yet suffered); 3250 Wilshire Blvd. Bldg. v. W.R. Grace & Co., 1989 WL 260222 at *48 (C.D.Cal. Jul. 24, 1989) (recognizing that allegations of actual contamination constitute valid tort damages claims, whereas tort claims for injury by virtue of mere presence of asbestos-containing products or by virtue of a potential risk of harm are invalid); Catasaugua Area School District v. Eagle Picher Indus., 1988 WL 102689 (E.D.Pa. Sept. 28, 1988) (removal and replacement costs of asbestos cement constitute economic loss not recoverable under tort absent demonstration that cement contaminated other property or that it created a significant health risk to building occupants); Hebron Pub. Sch. Dist. No. 13 v. U.S. Gypsum, 690 F.Supp. 866, 870 (D. N.D.1988) (negligence claim survived motion to dismiss where plaintiffs alleged asbestos products released harmful fibers into the building); City of Manchester v. National Gypsum Co., 637 F.Supp. 646, 651- 52 (D. R.I.1986) (court denied motion to dismiss finding that allegations of contamination constituted allegations of physical harm sufficient to support a claim for negligence under New Hampshire law); Franklin County Sch. Bd. v. Lake Asbestos of Quebec, Ltd., 1986 WL 69060 at *56 (N.D.Ala. Feb. 13, 1986) (school board's negligence claim dismissed for failing to allege actual, present harm, i.e. contamination); Town of Hooksett Sch. Dist. v. W.R. Grace & Co., 617 F.Supp. 126, 130-31 (D.N.H.1984) (motion to dismiss denied because plaintiff alleged contamination and contamination constitutes a physical injury cognizable under tort); Kershaw County Bd. of Educ. v. U.S. Gypsum Co., 302 S.C. 390, 393, 396 S.E.2d 369, 371 (1990) (judgment against manufacturer of asbestos-containing ceiling materials on negligence claim upheld where plaintiff alleged and proved damage to other property); Banc One Bldg. Management Corp. v. W.R. Grace & Co., 157 Wis.2d 814, 461 N.W.2d 448 (1990) (unpublished disposition) (dismissal of negligence action affirmed where plaintiff failed to allege actual physical harm); Board of Educ. of City of Chicago v. A. C & S, Inc., 131 Ill.2d 428, 443, 137 Ill.Dec. 635, 642-43, 546 N.E.2d 580, 587-88 (1989) ("dangerousness which creates a risk of harm is insufficient standing alone to award damages in ... negligence; however, allegations of asbestos release are sufficient.)

health hazard." (Debtors' Fifteenth Omnibus Obj. (Substantive) to Asbestos Property Damage Claims ¶ 119.)

### A. Debtors Fail to Establish Contamination at Numerous Washington Statute University buildings prior to 2001

While the doctrine of *nullum tempus* applies to Washington State and Edmonds Community College, thus preventing the application of the statutory bar, evidence will show that Washington State University decided, based upon the building materials and the environmental conditions, to contain and monitor asbestos-containing building materials (ACBM's) unless the circumstances called for abatement.  Ex. 11.  The only evidence of contamination offered by Debtor, pertains to the Beasley Performing Arts Center/Coliseum at Washington State University.  Furthermore, Debtors rely heavily on evidence of contamination from products other then Monokote 3 or Zonolite acoustical plaster.  Debtors fail to produce evidence of the respective claimant's knowledge of contamination by Grace products in the other Washington State buildings.

### B.  Debtor Fail to Establish Contamination at Cherry Hill Plaza prior to 1999.

Motley Rice represents CHP Associates claim stemming from the presence of Monokote in Cherry Hill Plaza. Ex. 12.  The Delaware statute of limitations should not apply to the Cherry Hill Plaza claim, but even if the Delaware three (3) year statute of limitation did apply, the claim is not barred.  Debtors have failed to provide any evidence of actual contamination or claimant's knowledge of contamination prior to 1999.  Ex. 12. The 1997 environmental site assessment states that "Since there is no reasonable method to conduct abatement of the spray-on fire proofing due to the size of the affected area and

tenant occupancy, TTI recommends that an Operations and Maintenance (O&M) program be developed and implemented." <u>Ex.</u> 13 at 22.

In response to this recommendation, Fred Berlinksy, owner of CHP initiated air monitoring. <u>Ex.</u> 14. There is no indication however that the Grace fireproofing in the CHP building had been disturbed or released asbestos prior to 1999. <u>Ex.</u> 14. As such, the CHP claim does not violate the Delaware statute of limitations for property damage claims. 10 Del.C. § 8106 (2006).

### C.  Grace has Directed Property Owners Not to Abate Asbestos

W.R. Grace has historically directed property owners not to abate asbestos unless there has been contamination. In their standard answer to questions about MK-3 W.R. Grace told customers:

> … MONOKOTE-3 should not be confused with those products which were formulated with high asbestos contents (up to 90%) and were air sprayed to form a low density, fluffy, lighty-bound mat. By contrast MONOKOTE-3 contained approximately 12-13% chrysotile asbestos and was combined with water on the job site to produce a dense, cementitious, plaster-type mixture which firmly bonded to the surface to which it was applied. The asbestos fibers are encapsulated in the plaster matrix, and **if undamaged, are not subject to release into the environment**. <u>Ex.</u> 15, <u>see also</u> 16-17.

Similarly, W.R. Grace told customers in reference to Zonolite Acoustical Plaster:

> Because of the "setting" characteristics of these plaster-type materials, we believe that the asbestos fibers are encapsulated in the matrix, and therefore, <u>are not subject release into the environment.</u> <u>Ex.</u> 18.

Because of Debtors' statements to property owners, they should be estopped from claiming that a cause of action can accrue prior to contamination.

**V.      Asbestos was discovered at CHP within the 6 year statute of limitations of New Jersey.**

New Jersey recognizes a six (6) year statute of limitations for property damage claims.   N.J. Stat. Ann. § 2A:14-1; <u>See also</u> <u>Cinnaminson Tp. Bd. of Educ. v. U.S. Gypsum Co.</u>, 552 F.Supp. 855 (D.C.N.J. 1982). The question becomes when the New Jersey statute of limitation accrues.  <u>Cinnaminson</u>, 552 F.Supp. at 862.  In <u>Cinnaminson</u>, the U.S. District Court for New Jersey found in an asbestos property damage case that the discovery rule should apply to "this type of case."   *Id.*   This decision is part of a long history of New Jersey fully embracing the "discovery rule" for statute of limitation questions.

> New Jersey courts have consistently applied the "discovery rule" with respect to statute of limitations issues. The discovery rule is an equitable principle by which an accrual of a cause of action is delayed until the injured party discovers, or by the exercise of reasonable diligence and intelligence, should have discovered, that he or she may have a basis for an actionable claim. *Terrace Condominium Ass'n v. Midatlantic National Bank*, 268 N.J.Super. 488, 633 A.2d 1060 (1993).

The question becomes when CHP Associates owners should have reasonably discovered that they had a claim for property damage.  Cherry Hill Plaza was purchased by CHP Associates on April 8, 1998. <u>Ex</u>. 14.  The owners first became aware of the presence of asbestos in 1997 when they completed the due diligence phase of their purchase agreements. <u>Ex</u>. 14.  A report dated November 13, 1997 indicated asbestos was present in the fireproofing.   Ex. 13.   As W.R. Grace declared bankruptcy on April 2, 2001, claims against Grace were automatically stayed pursuant to 11 U.S.C. § 362(a).  As such, 11 U.S.C. §108(c) makes the date the bankruptcy is filed, the commencement date of any actions against Debtors.  As the CHP did not expire until November 13, 2003, CHP's

claim is within the New Jersey statute of limitations.  As described in Section II. B. of this trial brief, applying the Delaware borrowing statute against a claimant whose claim is good in the state in which the property is located is contrary to Delaware case law and the purpose underlying of the borrowing statute.

**VI.**    **Conclusion**

Based on the foregoing evidence, which the Debtors will be unable to refute at the July 30-31, 2007 hearing, the Claimants property damage claims are not barred by statute of limitations.  These property damage claims should not be disallowed or expunged.

Mt. Pleasant, SC
July 16, 2007

Respectfully Submitted by:

JASPAN SCHLESINGER HOFFMAN LLP

*/s/ Laurie Schenker-Polleck*
Laurie Schenker Polleck, Esquire (No. 4300)
913 N. Market Street, 12th Floor
Wilmington, Delaware 19801
Telephone: (302) 351-8000
Facsimile: (302) 351-8010

And

MOTLEY RICE LLC

/s/ Anne McGinness Kearse_____
Anne McGinness Kearse
MOTLEY RICE LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mount Pleasant, SC 29465
Telephone: (843) 216-9140
Facsimile: (843) 216-9440
E-mail: akearse@motleyrice.com