# Exhibit "A"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | |
| | ) | Case no. 01-01139 (JFK) |
| W.R. GRACE & CO., *et al.*, | ) | Jointly Administered |
| | ) | |
| Debtors | ) | Related Docket Nos.: : 15703, 15705, 15707, |
| | ) | 15709, 15711, 15713, 15715, 15717, 15719, |
| | ) | 15721, 15723, 15730, 15732, 15734, 15735, |
| | ) | 15738, 15740, 15741, 15744, 15746, 15748, |
| | ) | 15950, 15955, 15959, 15966, 15987 & 16059 |
| | ) | |
| | ) | Hearing Date:  July 23, 2007 @ 2:00 p.m. in |
| | ) | Wilmington, Delaware |
| | ) | |
| | ) | Agenda Item No. 19 |
| | ) | |

### DEBTORS' BRIEF IN FURTHER SUPPORT OF OPPOSITION TO
### MOTIONS FOR PROTECTIVE ORDERS TO PRECLUDE LAW FIRM DEPOSITIONS

As the Court directed during the June 26th Omnibus Hearing, Grace served its Third Set of Interrogatories on four law firms as a first step in the process set by the Court for deciding on the need for law firm depositions.  The Court issued an unequivocal warning that the law firms' failure to provide "full and complete" responses to the Interrogatories would result in the denial of the motions for protective orders and an order directing the depositions to proceed.  *See* 6/26/07 Hrg. Tr. at 82 [Dkt. No. 16208].

Grace has now received and reviewed the law firms' responses, and has also continued its review of outstanding discovery responses from other law firms initially served with the deposition notices.[1]  Pursuant to these reviews (and as contemplated during the June 26th

---

[1] The Deposition Notice was served on the following law firms:  Alwyn H. Luckey, P.A. [Docket No. 15703]; Baron & Budd, PC [Docket No. 15705]; Cooney & Conway [Docket No. 15707]; Edward O. Moody, P.A. [Docket No. 15709]; Early Ludwick & Sweeney [Docket No. 15711]; Foster & Sear, LLP [Docket No. 15713]; Ferraro & Associates, P.A. [Docket No. 15715]; Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, PC [Docket No. 15717]; Motley Rice, LLC [Docket No. 15719]; LeBlanc & Waddell [Docket No. 15721]; Williams
(Continued...)

hearing), Grace respectfully submits this Brief to apprise the Court of its position regarding the need to depose three of the four law firms. *See* 6/26/07 Hrg. Tr. at 101-02.   With respect to three of the four law firms, the responses to the Third Set of Interrogatories have identified specific areas where further inquiries by way of focused depositions are necessary.  In addition, the responses have highlighted the need for two of the three law firms to produce responses to the First Set of Interrogatories in advance of these depositions.

This brief also addresses the discovery necessary to apply to the remaining law firms the template created by the Court with respect to these four firms.  The Court will recall that, pursuant to non-compliance reports made during the April 13th and May 8th hearings, the need for law firm interrogatories was introduced and approved.  Today, we also know that some law firms responded to the First Set of Interrogatories, and no law firms provided substantive responses to the Second Set.   Accordingly, Grace also asks that a prompt deadline be set for additional law firms to respond to the Third Set of Interrogatories.[2]

Finally, Grace notes that this brief does not address the impact of non-compliance and the problems with the underlying data that have been admitted or confirmed by the law firms' responses to the Third Set of Interrogatories.  Grace anticipates addressing these issues at a later date.

---

Bailey Law Firm, LLP [Docket No. 15723]; Provost Umphrey, LLP [Docket No. 15730]; Maples & Lomax [Docket No. 15732]; Silber Pearlman, LLP [Docket No. 15734]; Weitz & Luxenburg, P.C. [Docket No. 15735]; Waters & Kraus, LLP [Docket No. 15738]; Law Offices of Peter G. Angelos, PC [Docket No. 15740]; Paul, Hanley & Harley, LLP [Docket No. 15741]; Reaud Morgan & Quinn [Docket No. 15744]; The Wartnick Law Firm [Docket No. 15746]; and Kelley & Ferraro, LLP [Docket No. 15748].

[2] As discussed during the June 26th Omnibus Hearing, any issues regarding depositions or discovery of the Early Ludwick & Sweeney or Brayton Purcell law firms have been deferred to a later date. *See* 6/26/07 Hrg. Tr. at 104-06.  Consequently, any relief requested or referred to in this brief is not currently addressed to these firms. However, Grace expressly reserves the right to seek such relief (as well as other discovery) as to these two law firms at a later date, if appropriate.

I.      **The Need For These Depositions Arose Out Of Clear Evidence Of The Law Firms'
        Non-Compliance With The Court's Discovery Orders.**

There has been a long history of non-compliance with the Court's discovery orders, and
Grace will take up the implications of this non-compliance and its impact on the merits of the
estimation case as separate matter at a later date. But the immediate need for depositions of
certain law firms arises out of the events presented to the Court on April 13th and crystallized
during the May 8th hearing.

A.      **The April 13th Hearing: Grace Presents Extensive And Uncontroverted
        Evidence Of Non-Compliance.**

During the April 13th hearing, and following Grace's review and analysis of the law
firms' supplemental PIQ submissions, Grace introduced clear and unrebutted evidence of the
firms' violations of the Court's Consulting Expert Order,[3] as well as other discovery directives.
*See* 4/13/07 Hrg. Tr. at 55-61 [Dkt. No. 15270]. Emphasizing that these violations occurred
against the backdrop of increasing evidence that the "mass screening" debacle was prevalent in
the Grace claims,[4] (*id.* at 57-59), Grace proposed that the Court require the law firms to provide a
privilege log to create a record of withheld B-reads and further contemplated submitting
proposed interrogatories regarding the same issue for the Court's review and approval. *See id.* at
64-69. In response, the Court commented approvingly on the "concept" of asking interrogatories
"to get to what claimants actually are withholding what information" as "probably the way to
proceed." *See id.* at 101.

---

[3] 12/22/06 Supp. Order re Mots. to Compel Claimants to Resp. to PIQ [Dkt. No. 14150].

[4] As Grace pointed out, even well-known plaintiffs' attorney, Steven Kazan, has testified regarding the
deleterious impact of mass screening racket on claimants with actual asbestos-related impairments. *See* 4/13/07
Hrg. Tr. at 57-59.

**B.    The May 8th Hearing:  The Extent Of Non-Compliance Issues Is Further Crystallized And The Court Reviews The Proposed Interrogatories Line-By-Line.**

At the subsequent May 8th Hearing, counsel for Grace canvassed additional evidence that certain counsel had indeed been "less than forthcoming" in providing information directly responsive to the PIQ's.  *See generally* 5/8/07 Hrg. Tr. at 29-40 [Dkt. No. 15786].  Grace highlighted the following:

- Only 1200 claimants (about one percent) actually answered all key PIQ questions; the remainder only attached self-serving, undifferentiated documents that failed to specifically answer the questions;

- Law firms evidently have failed to search beyond their own files for B-reads and other medical information from before the attorney-client relationship had developed, as required by the Court's Consulting Expert Order;

- Claimants have failed to disclose and describe all diagnoses obtained before or after the one for which the claim has apparently been filed, as required by the PIQ;

- Claimants have failed to disclose all exposures to asbestos-containing materials, as required by the PIQ; and

- Of the 6,740 claimants who rely upon x-ray evidence to support their allegations of asbestos-related lung-cancer, only 3,101 submitted materials complying with the Court's x-ray order.

Following this presentation, the Court proceeded line-by-line through the proposed interrogatories regarding B-read compliance issues.  *See generally id.* at 77-169.  Following the hearing, the Debtors served the resulting Court-approved First Set of Interrogatories on 21 law firms.

During the same hearing, Grace also addressed general PIQ non-compliance issues, including "what efforts have [been] undertaken to obtain documents" and "to obtain documents . . . in the possession, custody or control of all other counsel," or "in the possession, custody and control of all doctors."  The Court specifically found that such inquiries were proper and not "overly burdensome" and recognized "[i]f there have been efforts made, it shouldn't be that

4

difficult to say what they are in global terms. If there were no efforts, then none is pretty easy to add." *Id.* at 171-72. Indeed, the Court explicitly noted that "maybe . . . the thing to ask," is, "[i]n general, what have [the law firms] done to answer the [questionnaires]." *See id.* at 135; *see also id.* at 202-03, 205-06 (counsel for Grace indicated it would serve interrogatories and seek depositions on PIQ compliance issue). The ensuing PIQ-compliance discovery was served in the form of the Deposition Notices at issue here, as well as via Debtors' Second Set of Interrogatories.[5]

### C. Many Law Firms Simply Ignored The Court-Approved Interrogatories; Others Responded Only In Part.

The law firms' failure to completely respond (or in some cases to respond at all) to the First and Second Set of Interrogatories was widespread. Indeed, to date, three firms -- Kelley & Ferraro, Ferraro & Associates, and Alwyn Luckey -- have not provided *any* response to the First Set of Interrogatories whatsoever. Kelley & Ferraro's continuing failure to respond to the First Interrogatories is particularly perplexing since counsel for the firm expressly assured the Court that the law firm would provide responses to those interrogatories by the close of business on Monday, July 2. *See* 6/26/07 Hrg. Tr. at 119 ("Again, on behalf of Kelley & Ferraro, we will have them [Responses to the First Set of Interrogatories] by the end of business day on the 2nd via email."). In addition, Motley Rice's "responses" to the First Set of Interrogatories contained no substantive answers whatsoever, and, instead consisted of broad privilege assertions.[6]

---

[5] For a more detailed discussion of the events leading to law-firm discovery, *see* 6/15/07 Debtors' Combined Response to Motions for Protective Orders Precluding Depositions of 21 Law Firms dated [Dkt. No. 16059].

[6] *See* 6/22/07 Motley Rice LLC's Objs. & Resp. to Debtors' 1st Set of Interrog. (attached as Ex. 1).

And the responses to the Second Set of Interrogatories (regarding PIQ compliance issues) were even worse. Not one single firm provided any substantive response to these Interrogatories -- instead, each and every firm stood on broad privilege assertions and refused to answer any of the questions posed. And, again, the same three law firms referenced above failed to respond at all.

**D.    Grace's Request For Depositions Then Followed, And 21 Law Firms Were Served With Deposition Notices.**

The vast majority of the 21 law firms served with deposition notices filed motions for protective orders to prevent the depositions.[7] Prior to and during the hearing, Grace agreed to focus its initial inquiries on the following four firms in order to advance the process: Baron & Budd, P.C.; Kelley & Ferraro, LLP; Motley Rice, LLC; and the Law Offices of Peter G. Angelos, P.C. *See* 6/26/07 Hrg. Tr. at 32, 67-68.

Grace's efforts to focus the issue merely encouraged the law firms' continued insistence that no depositions proceed and that written interrogatories be used instead. The Court agreed to this suggestion as the "first step" in the process for deciding whether depositions should go forward, but importantly said that the interrogatory answers were to be "full and complete" and that law firms who did not provide such responses would do so at their own peril:

> I'm going to order as to these four firms all of whom are represented here today and all of whom have said on this record that they will produce the responses to the interrogatories provided that the Court issued the non-waiver order which I had just issued

---

[7] *See* 6/4/07 Motley Rice LLC's Motion for Protective Order [Dkt No. 15950]; 6/4/07 Motion of Official Committee of Asbestos Personal Injury Claimants and David T. Austern, Legal Representative For Future Asbestos Injury Claimants, For Protective Order [Dkt No. 15955]; 6/5/07 Motion of Certain Law Firms to Quash Deposition Notices and for a Protective Order [Dkt. No. 15966]; 6/7/07 Motion of the MMWR Cancer Firms for a Protective Order with Respect to Notices of Deposition Served on Them by W. R.. Grace [Dkt. No. 15987]; 6/4/07 Memorandum in Support of Cooney and Conway's Motion for Protective Order [Dkt. No. 15959]. Notably, Kelley & Ferraro, Ferraro & Assocs. & the Luckey Law Firm did not move for protective orders.

on this order that they will produce full and complete responses. *I will hold them to this. I expect full and complete responses. If you don't get it, I'm continuing this motion and then you will get your depositions.*

6/26/07 Hrg. Tr. at 82 (emph. added).   The Court thus indicated that it would continue the hearing on the law firm depositions subject to Grace's review of the Interrogatory responses.   As represented by Grace's counsel, following that review, it would "appri[s]e the Court of [its] view about whether [it] need[ed] to go forward with the depositions" of the four law firms, as well as to bring to the Court's attention its position regarding further discovery (including depositions) of the other law firms initially served with the deposition notices. *See id.* at 101-02.

In addition, although recognizing that its rulings on the law firm depositions would necessarily be specific to the four law firms at issue, the Court anticipated that its rulings would "essentially set the tone by which [it] expects [it] will continue to make appropriate or similar rulings in similar circumstances." *Id.* at 70.

On June 27, 2007, Grace served its Third Set of Interrogatories to Certain Asbestos Personal Injury Pre-Petition Litigation Claimants' Law Firms.   As agreed to during the Omnibus Hearing, the four law firms responded to the Interrogatories on July 13, 2007.

**II.    The Answers To The Third Set Of Interrogatories Have Now Confirmed The Need For Focused Depositions With Respect To Three Of The Four Law Firms.**

**A.    Specific Problems Require Focused Depositions On Certain Topics.**

In many instances, the responses to Third Set of Interrogatories have provided Grace with material information concerning the PIQ compliance process.   However, responses from three of the four law firms are plagued by inconsistencies, conflicts, and studied vagueness.   These

problems are specifically detailed in Appendix A, attached hereto.[8]  This, plainly, now confirms the need for focused depositions.  Far from using the non-compliance as an excuse for seeking broad deposition testimony, Grace has studied the responses and has carefully charted focused areas of inquiry.  *See* Appendix A.  Grace requests that Court order the following law firms produce an attorney to appear for depositions on these topics within 21 days:  Motley Rice, Kelley & Ferraro and Baron & Budd.

In the case of Motley Rice and Kelley & Ferraro, the first step in the assuring that these depositions are meaningful is for the firms to ***answer*** the First Set of Interrogatories, which requests the facts necessary to determine the scope of the law firms' withholding B-reads and the appropriateness thereof.  Other law firms have responded to this First Set of Interrogatories, and there is no reason why these two firms should be exempted.  Grace further requests the Court to direct Motley Rice and Kelley & Ferraro to provide answers to the First Set of Interrogatories within 14 days.

**B.     Other Problems That Have Surfaced Demonstrating The Need For Further Discovery.**

In addition to the failure to provide "full and complete" responses to the Third Set of Interrogatories, evidence of further violations of this Court's discovery orders have surfaced that confirm the need for law firm depositions.

**1.     Violations of The "Attachment Order"**

In October 2006 the Court placed strict limitations on the manner in which claimants could respond to PIQ questions by way of attachment, stating:

---

[8] Baron & Budd, Motley Rice, and Kelley & Ferraro's Responses to the Third Set of Interrogatories are attached hereto as Appendix B.

[I]f a response is made by way of an attachment, the attachment must have the answer to the question, must be in a recognizable, legible format that are either numbered (whether by Bates number or some other appropriate numbering system or method) or otherwise identified (such as behind an exhibit tab) and the response must reference clearly the specific page(s) of the attachment so that the Debtors understand which page(s) of the attachment provides the answer to a specific Question in the Questionnaire. Pages that do not contain the answer should not be referenced.[9]

As the examples show below, despite the unequivocal language in this Order, the law firms at issue here have failed to cure their submissions that violate (and often to make new submissions that continue to violate) this Attachment Order.

- **Motley Rice**: Motley Rice's initial and supplemental PIQ submissions demonstrate repeated and flagrant violations of the Attachment Order. For example, in its initial submissions, the law firm vaguely referenced attached medical and exposure documents stating "see attached medical profile and attached medical record" or referencing "Grace Exposure Profile attached hereto" and an "Attached Non-Grace Exposure Profile."[10] But a review the actual submissions shows that these "attachments" were either non-existent or inapplicable to the question at issue. And Motley Rice's PIQ references to a "CD that sets forth Product Identification Evidence" offered nothing more than an undifferentiated mass of 4,342 pages of documents, many of which appear not to even relate to persons for whom Motley Rice submitted Questionnaires. Even after the Court expressly prohibited of these "attachment" practices, Motley Rice failed to cure it violations through supplemental submissions or by any other means.

- **Kelley & Ferraro**: Kelley & Ferraro submitted Questionnaires for over 34,000 individuals, and supplemental materials for approximately 28,000 claimants. In their initial PIQ responses, Kelley & Ferraro directed Grace to a variety of attached documents, but -- in direct contravention to the Attachment Order, failed to (i) "number" or "otherwise identif[y]" which attachment contains the responsive information or (ii) direct Grace to the "page(s) of the attachment [that] provide[] the answer to a specific Question in the Questionnaire."[11] Instead, Kelley & Ferraro simply answered questions regarding all Claimants' medical information by stating "[s]ee ILO, PFT, Causal Report attached to original questionnaire."

---

[9] 10/12/06 Order Concerning Debtors' Mot. to Compel Asbestos PI Claimants to Respond to PIQ ¶ 2 ("Attachment Order") [Dkt. No. 13393].

[10] *See, e.g.*, PIQ of R.K., at W.R. Grace PIQ 51792-0023 9 (attached as Ex. 2).

[11] *Id.*

## 2.    Violations of The "Consulting Expert Order"

Preliminary reviews of PIQs, as well as responses to Grace's motions to compel responses to the PIQs, raised the specter that significant numbers of B-read reports -- including reports that would tend to contradict or conflict with the diagnosis underlying the diagnosis of an asbestos-related injury -- were being withheld under the guise of Fed. R. Civ. P. 26(b)(4)(B)'s "consulting expert" privilege.[12] After considering extensive briefing and oral argument on the scope and applicability of the consulting expert privilege,[13] the Court entered an order specifically delineating the parameters of and the applicability of that privilege to the claims at issue.[14]  The Court ruled:

- "[P]hysicians, B-readers, or other medical professionals who first 'screened' a Claimant (that is, prior to the time that any other diagnosis of an asbestos-related disease or injury was sought or known) are not Consulting Experts;"

- "[P]hysicians, B-readers, or other medical professionals who examined a Claimant prior to the time an attorney-client relationship was established between the Claimant and the lawyer or law firm which asserts the privilege are not Consulting experts;" and

- "As to any information requested regarding those who are not Consulting experts, *no privilege applies* and the responsive information with regard to such professionals *shall be provided* by Claimants."[15]

---

[12] *See, e.g.,* 8/4/06 Motley Rice Gen'l Objs to PIQ and Resp. to Mot. to Compel ¶ 1[Dkt. No. 12927].

[13] *See, e.g.,* 12/01/06 Consol. Reply in Supp. of Mot. to Compel Asbestos PI Claimants to Resp. to PIQ at 9-15 [Dkt. No. 13886]; 12/12/06 (Corrected) Add'l Br. in Supp. of Mot. to Compel Asbestos PI Claimants to Resp. to PIQ at 3-12 [Dkt. No. 13999].

[14] 12/22/06 Supp. Order re Mots to Compel Claimants to Resp. to PIQ ("Consulting Expert Order") [Dkt. No. 14150].

[15] *Id.* at ¶ 1 (emph. added). The Court also entertained and denied subsequent motions to reconsider the Consulting Expert Order. *See* 1/23/07 Hrg. Tr. at 89-92 [Dkt. No. 14465]; 3/6/07 Order on Mot. to Alter or Amend Consulting Expert Order [Dkt. No. 14763].  In so doing, the Court clarified that "you can't have a consultant privilege apply *until you have an attorney/client privilege, and that can't be a substantially contemporaneous event.* You have to have a client first.  1/23/07 Hrg. Tr. at 89 (emph. added).  The Court also confirmed that a consulting expert privilege could not be properly asserted for testing done *prior* to an initial diagnosis. *See id.* at 92-93.

Again, evidence adduced to date indicates that certain law firms subject to the deposition notices at issue here continue to violate this Court's Consulting Expert Order.

- **Motley & Rice and Kelley & Ferraro:** Motley Rice and Kelley & Ferraro have deprived Grace of any meaningful opportunity to discover or document the extent of violations of the Consulting Expert Order through their outright refusals to provide substantive answers to Interrogatories regarding withheld B-reads and reports. And, although Grace is hindered by these law firms' failures to respond to discovery, preliminary reviews indicate that both law firms have withheld B-read reports in direct contravention of the Court's orders. For example, Grace has uncovered evidence to show that Motley Rice has withheld documents over which it cannot possibly assert a consulting expert privilege. [16] Similarly, although Kelley & Ferraro has contended that it has withheld no B-reads, Grace continues to discover documentary evidence that belies this assertion. [17]

- **Baron & Budd:** Baron & Budd's responses to the First Set of Interrogatories confirm its continued improper withholding of non-privileged B-reads in violation of the Consulting Expert Order.[18] Indeed, the log provided by Baron & Budd in response to these Interrogatories reveals that at least one-third of its 900-plus withheld B-reads fail to satisfy the requirements for the application of the Consulting Expert privilege as set forth in this Court's Order.[19]

---

[16] *See, e.g.,* PIQ of R.G. at WR GRACE PIQ 62884-0020 (listing medical diagnosis for Claimant as including B-read by Dr. Ballard on January 10, 2000 and including report from Dr. McGee relying on Dr. Ballard's B-read, but failing to produce Dr. Ballard's report) (attached as Ex. 3)

[17] *See, e.g.,* PIQ of D.W. at WR GRACE PIQ 014486-0025, 014486-0029 -014486-0031 (producing June 2004 report of Dr. Venizelos referencing and reviewing previous reports from Drs. Lucas, Zellers, and Holmes provided to him by Kelley & Ferraro, but failing to include reports of Drs. Zellers and Holmes in PIQ) (attached as Ex. 4)

[18] Fewer than two days before Baron & Budd's responses to the Third Set of Interrogatories were due, it (along with LeBlanc & Waddell and Silber Pearlman), mysteriously withdrew approximately 650 asbestos PI claims. Although Grace has not yet determined the common nexus among these claims that led to their abrupt withdrawal, the volume and timing of such withdrawals raise more than an eyebrow of suspicion regarding the motives and driving forces behind this action.

[19] For example, 304 of the entries are dated either prior to or contemporaneously with the date of the initial diagnosis, and 318 are dated prior to or contemporaneously with the date that Baron & Budd claims to have been retained as counsel. Moreover, 229 of these withheld reports are dated prior to or contemporaneously with *both* the date of initial diagnosis *and* the date that Baron & Budd was retained. Further, 90 of these withheld reports are dated prior to or contemporaneously with *both* the date of the initial diagnosis and the date that *any* law firm was retained.

**III.    The Need For Prompt Answers To The Third Set Of Interrogatories By Other Law Firms.**

    **A.    The Other Law Firms Should Respond To The Third Set of Interrogatories Within Ten Days.**

This process has now demonstrated that much can be accomplished by following the process of eliciting responses to the Third Set of Interrogatories as a "first step" in identifying focused areas for deposition inquiry.   This Court expressly anticipated during the June 26th hearing that this process -- initially made applicable to only four firms-- would "essentially set the tone by which [it] expects [it] will continue to make appropriate or similar rulings in similar circumstances." 6/26/07 Hrg. Tr. at 70.  The Court explained:

> [W]hatever these rulings are unless there is a significantly different issue that pops up at some point in the future, these rulings will undoubtedly be the same unless somebody can show me why they should not apply to other circumstances.  This law of the case will apply to other firms. (*Id.*)

Since the completion of the June 26th hearing, Grace has confirmed that not a single law firm has provided substantive responses to the Second Set of Interrogatories -- but instead each firm has either filed no response at all or has filed a response consisting solely of blanket privilege objections without any substantive responses whatsoever.   Because this Second Set of Interrogatories pertains to the PIQ compliance process that is also addressed in the Third Set of Interrogatories, it is clear now that directing these additional law firms to complete the Third Set of Interrogatories is appropriate.  Consequently -- and consistent with the Court's successful template -- Grace respectfully requests that the Court direct the remaining law firms to promptly respond to Third Set of Interrogatories.

In particular, Grace proposes serving the Third Set of Interrogatories on the remaining law firms and requests that the Court direct the law firms to serve their responses within 10 days -- precisely the same amount of time in which the four law firms were able to respond to the

same Interrogatories. Indeed, none of the four law firms originally served with the Third Set of Interrogatories requested (or even suggested) it would need more than the 10-day window of time originally agreed to in order to complete its responses. Following Grace's review of the responses of the additional law firms, it will then apprise the Court of what additional discovery (including depositions, if appropriate) it intends to pursue.

**B.      The Discovery Violations Are Not Limited To The Three Law Firms.**

Any attempts to resist this discovery path based on a suggestion that the non-compliance problems outlined in Section II.B above are limited the three law firms should be rejected. As briefly sampled below, other law firms have engaged in similar discovery violations.

- **LeBlanc & Waddell**: Like Motley & Rice and Kelley & Ferraro, LeBlanc & Waddell's PIQ submissions also reflect flagrant and continuing violations of the Attachment Order. Among other things, the law firm's submissions often directed Grace to a purportedly attached "Claimant's affidavit," but in its reviews thus far, Grace has been unable to locate any such affidavit in the supplemental PIQ or anywhere else for either the cited Claimant and or for any of the other 279 Claimants referencing this mystery affidavit. And the law firm's violations of the Consulting Expert Order echoes those perpetrated by Baron & Budd. Indeed, at least half of the B-reads included on LeBlanc & Waddell's privilege log appear to be withheld in direct contravention of this Court's Order.[20]

- **Silber Pearlman**: Silber Pearlman's privilege log raises similar issues as those implicated by LeBlanc & Waddell and Baron & Budd logs discussed above and, as a result, similarly reflects continuing violations of the Consulting Expert Order. For instance, according to its log, Silber Pearlman has withheld hundreds of *negative* b-read reports that were created just *after* Silber Pearlman was retained as counsel and just weeks or months *before* any positive diagnosis of asbestos-related disease -- a blatant violation of the Consulting Expert Order.

---

[20] For example, of the law firm's 625 logged B-read reports, 287 are dated prior to or contemporaneously with the dates of initial diagnosis on the privilege log -- again in direct contravention of the Court's orders. In addition, LeBlanc & Waddell's log does not clearly establish that the withheld B-reads and reports also predate or are contemporaneous with the dates that LeBlanc & Waddell was retained. Instead, for almost 300 entries on LeBlanc & Waddell's log, the date that the law firm was retained is listed as "Unknown." In addition, where LeBlanc & Waddell did provide any date information regarding its initial retention, that information is vague and ambiguous. In these instances -- approximately 322 of the withheld B-reads and reports -- the date of retention is listed simply as "before" a particular date. *See id.*

## IV.    ISSUES THIS BRIEF DOES NOT ADDRESS.

Grace will address at a later date the significance and impact of the information that has now emerged regarding exposure to Grace products; continued concealment of medical records, and false and misleading representations to the Court. Beyond confirming the failures to comply with the Court's discovery orders, the responses to the Third Set of Interrogatories have revealed material shortcomings in evidence directly relevant to the estimation proceedings. Grace will address these issues separately at a later date.

In addition, as discussed during the June 26th Omnibus Hearing, any issues regarding depositions or discovery of the Early Ludwick & Sweeney or Brayton Purcell law firms have been deferred to a later date. *See* 6/26/07 Hrg. Tr. at 104-06. Consequently, any relief requested or referred to in this brief is not currently addressed to these firms.

Dated:  July 19, 2007                    Respectfully submitted,


                                         KIRKLAND & ELLIS LLP
                                         David M. Bernick, P.C.
                                         Ellen Ahern
                                         Janet S. Baer
                                         200 East Randolph Drive
                                         Chicago, IL 60601-6636
                                         Telephone:  (312) 861-2000
                                         Facsimile:  (312) 861-2200

                                         Barbara M. Harding
                                         Amanda Basta
                                         655 Fifteenth Street, NW
                                         Washington, DC 20005
                                         Telephone:  (202) 879-5000
                                         Facsimile:   (202) 879-5200

                                         *and*

                                         PACHULSKI, STANG, ZIEHL, YOUNG, JONES
                                         & WEINTRAUB LLP

                                          /s/ James E. O'Neill
                                         Laura Davis Jones (Bar No. 2436)
                                         James E. O'Neill (Bar No. 4042)
                                         Timothy P. Cairns (Bar No. 4228)
                                         919 North Market Street, 17th Floor
                                         P.O. Box 8705
                                         Wilmington, DE 19899-8705
                                         (302) 652-4100

                                         Co-Counsel for the Debtors and Debtors in Possession

Appendices A and B Filed Under Seal

# Exhibit 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | ) ) ) | Chapter 11 |
| W.R. GRACE & CO., et al., | ) ) | Case No. 01-01139 (JKF) |
| Debtors. | ) ) ) ) ) ) | Jointly Administered |

## CERTIFICATE OF SERVICE

I, Judy Scolnik, hereby certify that I caused a true and correct copy of the within

MOTLEY RICE LLC'S OBJECTIONS AND RESPONSES TO DEBTORS' FIRST SET OF

INTERROGATORIES TO CERTAIN ASBESTOS PERSONAL INJURY PRE-PETITION

LITIGATION CLAIMANTS' LAW FIRMS to be sent on June 22, 2007 to:

**Via U.S. Mail, Postage Prepaid**

David Bernick, Esquire
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022

Judy Scolnik, Secretary
Motley Rice LLC
28 Bridgeside Blvd
P.O. Box 1792
Mt. Pleasant, SC 29465
(843) 216-9000
(843) 216-9440 (fax)
jscolnik@motleyrice.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **W.R. GRACE & CO.**, *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| | ) | Related to Docket No. _____ |
| | ) | |
| | ) | |
| | ) | |

_____

## MOTLEY RICE LLC'S OBJECTIONS AND RESPONSES TO DEBTORS' FIRST SET OF INTERROGATORIES TO CERTAIN ASBESTOS PERSONAL INJURY PRE-PETITION LITIGATION CLAIMANTS' LAW FIRMS

### PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

The discovery propounded by W.R. Grace & Co. (hereinafter "Debtor"), in this instance, Debtor's First Set of Interrogatories to Certain Asbestos Personal Injury Pre-Petition Litigation Claimants' Law Firms, on Motley Rice LLC (hereinafter "Motley Rice") is wholly improper. The impropriety of this attempted discovery is detailed in the following objections:

1. Motley Rice objects to the definitions and instructions contained in Debtors' First Set of Interrogatories to Certain Asbestos Personal Injury Pre-Petition Claimants' Law Firms (hereinafter "Interrogatories") to the extent that these definitions and instructions purport to impose discovery obligations beyond those required by Fed. R. Civ. P. 26 and 33 and Federal Rules of Bankruptcy Procedure 7026 and 7033. Motley Rice further objects specifically to the definitions numbered 4, 5, 10, 12, and 13, as the terms, as employed by Debtor, do not comport to their understood and customary meaning.

1

2. Motley Rice objects to each and every Interrogatory as each seeks information or identification of documents beyond the scope of discovery mandated by the Federal Rule of Civil Procedure 26 and Federal Rule of Bankruptcy Procedure 7026.

3. Motley Rice objects to each and every Interrogatory as each is overly broad, unduly burdensome, seeks irrelevant information, seeks immaterial information, and is not reasonably calculated to lead to the discovery of admissible evidence.

4. Motley Rice objects to each and every Interrogatory as each seeks information or identification of documents in the possession of third parties and/or not presently in Motley Rice's possession, custody, or control on the grounds that such requests are beyond the scope of permissible discovery and are unduly burdensome. Motley Rice further objects to each and every Interrogatory on the grounds that they are overbroad, oppressive, and unduly burdensome, to the extent they purport to require Motley Rice to provide information and/or identify documents of other parties to this action, or of third parties, or from publicly available sources.

5. Motley Rice objects to producing and/or identifying documents already in Debtor's possession, custody, or control or otherwise publicly available.

6. Motley Rice objects to each and every Interrogatory to the extent any of the Interrogatories call for or may be construed to call for the disclosure of information or the identification of documents subject to a claim of privilege against disclosure, including, without limitation, the attorney-client privilege, the work product doctrine, the consulting expert privilege, and/or are otherwise protected by applicable common-law or statutory privileges or are otherwise immune from discovery (hereinafter "privileged information"). Motley Rice objects to the production of privileged information and will

2

not produce such information or documentation. Inadvertent production of such documents or information shall not constitute a waiver of any privilege or protection on any grounds.

7. Motley Rice objects to each and every Interrogatory as improper discovery directed at a non-party to the present litigation. The Interrogatories propounded on Motley Rice violate the Federal Rules of Bankruptcy Procedure 7026, 7033 and 7034 and Federal Rules of Civil Procedure 26, 33 and 34 and applicable case law interpreting these rules.

8. Motley Rice objects to each and every Interrogatory on jurisdictional grounds. Motley Rice has submitted to the limited jurisdiction of this Court only to the extent that it acts as counsel for individuals who have filed a Proof of Claim against Debtor. Motley Rice's acting as counsel has not and does not operate to grant this Court general or specific jurisdiction over Motley Rice as a non-party.

9. The above-stated General Objections shall be deemed applicable and are incorporated by reference into each and every Interrogatory response regardless of whether referenced specifically in each such response.

## INTERROGATORIES

### INTERROGATORY NO. 1:

For each of the Claimants identified on Exhibit C (attached) have you or the Claimant withheld any B-reads within the Claimants' possession custody or control?

### RESPONSE TO INTERROGATORY NO. 1

Motley Rice objects to Interrogatory No. 1 and incorporates General Objections numbered 1 through 8 into this response as if fully set forth herein. Motley Rice further objects on the grounds that Interrogatory No. 1 is overly broad; unduly burdensome; vague; irrelevant; immaterial; not reasonably calculated to lead to the discovery of admissible evidence; seeks information or identification of documents that are protected by the attorney-client privilege, work product doctrine, the consulting expert privilege or are otherwise protected as discussed above; is an improper discovery request not authorized by the Federal Rules of Bankruptcy

Procedure and/or the Federal Rules of Civil Procedure; and on the grounds that the discovery request seeks information or identification of information already in Debtor's possession, custody, or control or otherwise publicly available.

## INTERROGATORY NO. 2

If you answered yes to Interrogatory No. 1, identify the Claimants for whom B-reads have been withheld and the number of B-reads withheld with respect to each Claimant.

## RESPONSE TO INTERROGATORY NO. 2

Motley Rice objects to Interrogatory No. 2 and incorporates General Objections numbered 1 through 8 into this response as if fully set forth herein. Motley Rice further objects on the grounds that Interrogatory No. 2 is overly broad; unduly burdensome; irrelevant; vague; immaterial; not reasonably calculated to lead to the discovery of admissible evidence; seeks information or identification of documents that are protected by the attorney-client privilege, work product doctrine, the consulting expert privilege or are otherwise protected as discussed above; is an improper discovery request not authorized by the Federal Rules of Bankruptcy Procedure and/or the Federal Rules of Civil Procedure; and on the grounds that the discovery request seeks information or identification of information already in Debtor's possession, custody, or control or otherwise publicly available.

## INTERROGATORY NO. 3

For each B-read document withheld, identify the following:

a)      the Claimant for whom the B-read is being withheld;

b)      the date of the document;

c)      the author of the document;

d)      the recipient of the document;

e)      the doctor or doctors who performed the B-read, including those who prepared the narrative report;

f)      a general description of the document (e.g., letter) with as much information about the nature of the document as can be provided without waiving the privilege. If the document is multiple documents or contains attachments, describe the attachments;

g)      whether the document or a portion thereof was produced in any litigation or produced in connection with seeking payment of a claim;

4

h)    who paid for the B-read or provided reimbursement for the B-read;

i)    whether the result of the B-read was negative and/or included a reading of less than 1/0;

j)    the basis on which you or the Claimant are withholding the document;

k)    if the document is being withheld on a ground of privilege, what privilege is being asserted: attorney-client, attorney-work product, consulting-expert privilege, other?

l)    the Claimant's initial date of diagnosis;

m)    the date upon which the Claimant formed an attorney-client relationship with your law firm or any other law firm;

n)    a list of all others to whom the document has been provided, with a sufficient description so that the Court can determine whether those persons are attorneys for the Claimant discussed in the document or not;

o)    if a document is being withheld on the grounds of privilege, state whether the document has been retrieved and reviewed by you or by Claimant for purposes of asserting at any time such claim of privilege and identify who currently has possession of the document.

## RESPONSE TO INTERROGATORY NO. 3

Motley Rice objects to Interrogatory No. 3 and incorporates General Objections numbered 1 through 8 into this response as if fully set forth herein.   Motley Rice further objects on the grounds that Interrogatory No. 3 is overly broad; unduly burdensome; irrelevant; immaterial; vague; not reasonably calculated to lead to the discovery of admissible evidence; seeks information or identification of documents that are protected by the attorney-client privilege, work product doctrine, the consulting expert privilege or are otherwise protected as discussed above; is an improper discovery request not authorized by the Federal Rules of Bankruptcy Procedure and/or the Federal Rules of Civil Procedure; and on the grounds that the discovery request seeks information or identification of information already in Debtor's possession, custody, or control or otherwise publicly available.

## INTERROGATORY NO. 4

For each Claimant for whom you are responding to these interrogatories, please provide a verification from the Claimant or authorized by the Claimant that the responses provided herein

are true, complete and accurate and a thorough search has been made of documents in the Claimant's possession, custody and control in responding to these Interrogatories.

## RESPONSE TO INTERROGATORY NO. 4

Motley Rice objects to Interrogatory No. 4 and incorporates General Objections numbered 1 through 8 into this response as if fully set forth herein. Motley Rice further objects on the grounds that Interrogatory No. 4 is overly broad; unduly burdensome; irrelevant; immaterial; not reasonably calculated to lead to the discovery of admissible evidence; vague; seeks information or identification of documents that are protected by the attorney-client privilege, work product doctrine, the consulting expert privilege or are otherwise protected as discussed above; is an improper discovery request not authorized by the Federal Rules of Bankruptcy Procedure and/or the Federal Rules of Civil Procedure; and on the grounds that the discovery request seeks information or identification of information already in Debtor's possession, custody, or control or otherwise publicly available.

## INTERROGATORY NO. 5

Provide a verification from you that the responses provided herein are true, complete and accurate and a thorough search has been made of documents in the possession, custody and control of your firm, any other firm previously or subsequently representing Claimant and any doctors who have rendered services or reviewed information in connection with Claimant's claim, in responding to these Interrogatories.

## RESPONSE TO INTERROGATORY NO. 5

Motley Rice objects to Interrogatory No. 5 and incorporates General Objections numbered 1 through 8 into this response as if fully set forth herein. Motley Rice further objects on the grounds that Interrogatory No. 5 is overly broad; unduly burdensome; irrelevant; immaterial; not reasonably calculated to lead to the discovery of admissible evidence; vague; seeks information or identification of documents that are protected by the attorney-client privilege, work product doctrine, the consulting expert privilege or are otherwise protected as discussed above; is an improper discovery request not authorized by the Federal Rules of Bankruptcy Procedure and/or the Federal Rules of Civil Procedure; and on the grounds that the discovery request seeks information or identification of information already in Debtor's possession, custody, or control or otherwise publicly available.

## INTERROGATORY NO. 6

In responding to the W.R. Grace Asbestos Personal Injury Questionnaire and in providing B-reads or any other materials in connection with Claimant's claim:

(a) what efforts have you taken to obtain documents (i) in the possession, custody or control of all other counsel who previously or subsequently represented Claimant; and (ii) in the

possession, custody or control of all doctors who have rendered services or reviewed information in connection with Claimant's claim?;

(b) state the identify [sic] of (i) all other counsel who previously or subsequently represented Claimant whose records you did not seek to obtain, and (ii) state the identity of any doctors who have rendered services or reviewed information in connection with Claimant's claim whose records you did not seek to obtain.

## RESPONSE TO INTERROGATORY NO. 6

Motley Rice objects to Interrogatory No. 6 and incorporates General Objections numbered 1 through 8 into this response as if fully set forth herein. Motley Rice further objects on the grounds that Interrogatory No. 6 is overly broad; unduly burdensome; irrelevant; immaterial; not reasonably calculated to lead to the discovery of admissible evidence; vague; seeks information or identification of documents that are protected by the attorney-client privilege, work product doctrine, the consulting expert privilege or are otherwise protected as discussed above; is an improper discovery request not authorized by the Federal Rules of Bankruptcy Procedure and/or the Federal Rules of Civil Procedure; and on the grounds that the discovery request seeks information or identification of information already in Debtor's possession, custody, or control or otherwise publicly available.

Date: June 22, 2007.

RESPECTFULLY SUBMITTED,

/s/ John E. Herrick
JOHN E. HERRICK
MOTLEY RICE LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mount Pleasant, SC 29465
Tel. (843) 216-9000
Fac. (843) 216-9440
Email: jherrick@motleyrice.com

COUNSEL FOR VARIOUS
ASBESTOS PERSONAL INJURY
CLAIMANTS

7

# Exhibit 2

## PART I: IDENTITY OF INJURED PERSON AND LEGAL COUNSEL

**a. GENERAL INFORMATION**

1. Name of Claimant:

2. Gender:                                                                Male

3. Race (for purposes of evaluating Pulmonary Function Test    Not Available
   results):

4. Last Four Digits of Social Security Number:

5. Birth Date:

6. Mailing Address:

7. Daytime Telephone Number:

**b. LAWYER'S NAME AND FIRM**                                          REDACTED

1. Name of Lawyer:                                    Joseph F. Rice, Esquire

2. Name of Law Firm With Which Lawyer is Affiliated:  Motley Rice LLC

3. Mailing Address of Firm:                           Post Office Box 1792
                                                      Mount Pleasant, SC 29465

4. Law Firm's Telephone Number or Lawyer's Direct Line:  843-216-9000

   [X]  Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in lieu of sending such materials to you.

**c. CAUSE OF DEATH (IF APPLICABLE)**

1. Is the injured person living or deceased?          Living

   If deceased, date of death:

2. If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete the following:

   Primary Cause of Death (as stated in the Death Certificate):

   Contributing Cause of Death (as stated in the Death Certificate):

## PART II: ASBESTOS-RELATED CONDITION(S)

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire

1. **Condition being alleged:**  See attached Medical Profile and attached Medical Records

[ ] Asbestos-Related Lung Cancer        [ ] Mesothelioma

[ ] Asbestosis                          [ ] Other Cancer (cancer not related to lung cancer or
                                            mesothelioma)

[ ] Other Asbestos Disease              [ ] Clinically Severe Asbestosis

    a. **Mesothelioma:**  If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following (check all that apply):

    [Objection 1] diagnosis from a pathologist certified by the American Board of Pathology

    [Objection 1] diagnosis from a second pathologist certified by the American Board of Pathology

1

123822.000

## Motley Rice LLC Asbestos Exposure Profile



WR GRACE PIQ 51792-0023

Exposee Name
Last 4 of SSN

### REDACTED

**A. W.R. Grace & Company Exposure**

| Job Site | Start - End Date | Employer / Union | Industry | Occupation |
|----------|------------------|------------------|----------|------------|

**B. Other Asbestos Exposure**

| Job Site | Start - End Date | Employer / Union | Industry | Occupation |
|----------|------------------|------------------|----------|------------|

1

003027141-200024

# Exhibit 3

PART I: IDENTITY OF INJURED PERSON AND LEGAL COUNSEL

WR GRACE PIQ 62684-0006

### a. GENERAL INFORMATION

1. Name of Claimant:

2. Gender:

3. Race (for purposes of evaluating Pulmonary Function Test  Not Available
   results):                                                          **REDACTED**

4. Last Four Digits of Social Security Number:

5. Birth Date:

6. Mailing Address:

7. Daytime Telephone Number:

### b. LAWYER'S NAME AND FIRM

1. Name of Lawyer:                                      Joseph F. Rice, Esquire

2. Name of Law Firm With Which Lawyer is Affiliated:    Motley Rice LLC

3. Mailing Address of Firm:                             Post Office Box 1792
                                                        Mount Pleasant, SC 29465

4. Law Firm's Telephone Number or Lawyer's Direct Line:  843-216-9000

   [X]  Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in lieu of
   sending such materials to you.

### c. CAUSE OF DEATH (IF APPLICABLE)

1. Is the injured person living or deceased?            Living

   If deceased, date of death:

2. If the injured person is deceased, then attach a copy of the
   death certification to this Questionnaire and complete the
   following:

      Primary Cause of Death (as stated in the Death
   Certificate):

      Contributing Cause of Death (as stated in the Death
   Certificate):

### PART II: ASBESTOS-RELATED CONDITION(S)

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions
to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests
relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous
or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional
copies of Part II are attached as Appendix C to this Questionnaire

1. Condition being alleged:  See attached Medical Profile and attached Medical Records

[ ] Asbestos-Related Lung Cancer        [ ] Mesothelioma

[ ] Asbestosis                          [ ] Other Cancer (cancer not related to lung cancer or
                                            mesothelioma)

[ ] Other Asbestos Disease              [ ] Clinically Severe Asbestosis

   a. Mesothelioma:  If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following
      (check all that apply):

      [Objection 1]  diagnosis from a pathologist certified by the American Board of Pathology

      [Objection 1]  diagnosis from a second pathologist certified by the American Board of Pathology

1

## Motley Rice LLC Medical Profile



WR GRACE PIQ 02084-0020

**Asbestos Related Diagnosis Information**

| Disease Category | Diagnosis | Primary | DX-Date | Physician | Exam Type |
|---|---|---|---|---|---|
| Non Malignant | Asbestosis | N/A (Applies to Non-Mal Only) | 01/10/1997 | Harron, Ray A. | Review of Data |
| Non Malignant | Asbestosis | N/A (Applies to Non-Mal Only) | 01/10/2000 | Ballard, James W. | Review of Data |
| Non Malignant | Asbestosis | N/A (Applies to Non-Mal Only) | 05/10/2005 | Castiglioni, Leo J. | Review of Data |
| Non Malignant | Bilateral Pleural Plaques | N/A (Applies to Non-Mal Only) | 01/10/2000 | Ballard, James W. | Review of Data |
| Non Malignant | Asbestosis | Yes | 03/12/2000 | Von McGee, Robert | Review of Data |

**Radiology Information**

| Type | X-Ray/CT Scan Date | Impression | Report Date | Physician | Facility |
|---|---|---|---|---|---|

**B-Reading Information**

| X-Ray Date | Date of Reading | B-Reader | FQ | Completely Negative? | CXR Profusion | Pleural | B2 or Greater? | Other Symbols |
|---|---|---|---|---|---|---|---|---|
| 11/01/1999 | 01/10/2000 | Ballard, James W. | 2 | No | 1/0 | Bilateral | Yes | |
| 01/10/1997 | 01/10/1997 | Harron, Ray A. | 1 | No | 1/1 | | | |

**PFT Information**

| Type | PFT-Date | PFT-Facility | FVC% | FEV1/FVC | TLC% | DLCO% |
|---|---|---|---|---|---|---|
| Pre - Rx | 09/21/1999 | Healthscreen/Dr. Jackson | 84.0 | 81 | 142.0 | 86.0 |
| Pre - Rx | 01/10/1997 | N&M, Inc. | 86.0 | 79 | 75.0 | 82.0 |

**Tobacco History**

Did the individual formerly smoke? No
Is the individual currently smoking? No
Has the individual ever used any smokeless tobacco products? Unknown

| Type | Volume (Per Day) | Quantity | Start Year | End Year | Pack Years |
|---|---|---|---|---|---|

15

060282194-200021

# Exhibit 4

## PART I: IDENTITY OF INJURED PERSON AND LEGAL COUNSEL



WR GRACE PIQ 014488-0009

### a. GENERAL INFORMATION

1. Name of Claimant: _____

   First        MI        Last

2. Gender: ☐ Male ☐ Female

3. Race (for purposes of evaluating Pulmonary Function Test results): .................................... ☐ White/Caucasian

   ☐ African American

### REDACTED

   ☐ Other

4. Last Four Digits of Social Security Number: _____    5. Birth Date: _____

6. Mailing Address:

   Address        City        State/Province        Zip/Postal Code

7. Daytime Telephone Number: ..................................................................... ( __ __ __ ) __ __ __ - __ __ __ __

### b. LAWYER'S NAME AND FIRM

1. Name of Lawyer: Thomas M. Wilson, Esq

2. Name of Law Firm With Which Lawyer is Affiliated: Kelley & Ferraro LLP

3. Mailing Address of Firm: 1300 E. 9th Street, Suite 1901 Cleveland, OH  44114

   Address        City        State/Province        Zip/Postal Code

4. Law Firm's Telephone Number or Lawyer's Direct Line: .......................................... ( 216 ) 575 - 0777

   X   Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in
   lieu of sending such materials to you.

### c. CAUSE OF DEATH (IF APPLICABLE)

1. Is the injured person living or deceased? ..................................................................... X Living ☐ Deceased

   If deceased, date of death:..................................................................... __ __ / __ __ / __ __ __ __

2. If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete
   the following:

   Primary Cause of Death (as stated in the Death Certificate):  If deceased, see attached death certificate

   Contributing Cause of Death (as stated in the Death Certificate): _____

## PART II: ASBESTOS-RELATED CONDITION(S)

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the
instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and
diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis
and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your
convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1. Please check the box next to the condition being alleged:

   X Asbestos-Related Lung Cancer          ☐ Mesothelioma

   ☐ Asbestosis                           ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)

   ☐ Other Asbestos Disease               ☐ Clinically Severe Asbestosis

   a. **Mesothelioma:** If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the
      following (check all that apply):

      ☐ diagnosis from a pathologist certified by the American Board of Pathology

      ☐ diagnosis from a second pathologist certified by the American Board of Pathology

      ☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial
         causal role in the development of the condition

      ☐ other (please specify):  Objection: See attached medical information

1



WR GRACE PIQ 014486-0026

# PHILLIP H. LUCAS, M. D.
RADIOLOGY·INTERNAL MEDICINE·NIOSHI B-READER

1734 Madison Avenue
Memphis, Tennessee 38104
ph. (901) 726-0208  fx.(901) 726-0210

220 Winged Foot Circle
Jackson, Mississippi 39211
(601) 957-2262

REDACTED

-9445

PA chest radiograph dated 01/24/96 was evaluated for the presence and classification of asbestos related pneumoconiosis, utilizing the ILO 1980 guidelines.

The film quality is 1. Round and irregular interstitial opacities are found throughout both lungs, the size and shape of which are classified as p/t and the profusion is 2/2. There are two large opacities in the left upper lung zone and both classified as A and a single large opacity is observed in the right upper lung zone, classified as A. I cannot entirely rule out the possibility of a solid lesion such as a neoplasm and therefore the patient should seek his physician's advice regarding additional evaluation. There is volume loss in both upper lung zones. Bullae are found in the both upper lung zones. Pleural thickening is found along the right lateral thoracic wall with a width A and extent 1 and along the left lateral thoracic wall with a width B and extent 1, extending into and blunting the left costo-phrenic angle.  No other defects are found.

OPINION:    1. Pleural and interstitial fibrotic changes consistent with mixed pneumoconiosis including asbestosis and silicosis in a patient who has had an adequate exposure history and latent period.
2. Possible right and/or left upper lobe masses which should be investigated by the patient's physician.

Phillip H. Lucas, M.D.
rh: 01/29/96

# PAUL C. VENIZELOS, MD FCCP FAASM

WR GRACE PIQ 014488-0029

## Pulmonary Medicine Associates, Inc.

Board Certified in Internal Medicine, Pulmonary Disease and Sleep Medicine
NIOSH "B" READER

June 8, 2004

John A. Sivinski
Kelley and Ferraro, LLP
Attorneys and Counselors at Law
1300 East Ninth Street, #1901
Cleveland, Ohio 44114

RE: :
SS#:        9445

Dear Mr. Sivinski,

REDACTED

The medical records supplied on :                              were reviewed.  They
include Mr. Woodbridge's death certificate, medical records from Forum Health
Southside Medical Center, and the Veteran's Affairs Medical Center.  Also reviewed are
reports from Phillip H. Lucas, M.D., Gordon Zellers, M.D., and Edward H. Holmes, M.D.
                        . expired on September 24, 1997 from respiratory failure, aspiration
pneumonia, and disseminated carcinoma of the lung.

At the age of seventy, :...        . was admitted with right-sided chest pain and
progressive dyspnea.  A PPD was placed and was noted to be positive.  Chest
radiograph revealed diffuse reticular nodular infiltrates, and the chest radiograph and
CT scan of the thorax were felt to be consistent with silicosis.  There was also a concern
of superimposed infection from mycobacterium tuberculosis.  He was treated
empirically with pyrazinamide, isoniazid and rifampin.  The is some reference to
positive acid fast bacilli cultures, but this are not documented in the records supplied.

            : underwent a chest radiograph and B read interpretation by Dr. Lucas
who found pleural and interstitial changes consistent with asbestosis, silicosis and
asbestos associated pleural fibrosis.  There was also a concern for upper lobe masses.
He was later evaluated by Dr. Zellers, who obtained pulmonary function studies that
revealed a significant restrictive abnormality and a defect in diffusion measurement.
Edward H. Holmes, M.D. evaluated :                      _ in May of 1996 and concluded that
he had asbestosis, silicosis, asbestos associated pleural fibrosis, and evidence for a
possible lung neoplasm.

---

Page 2 of 3
RE:



WR GRACE PIQ 014466-0030

REDACTED

In July of 1997 :                    ) presented with progressive dyspnea, weight loss and hemoptysis. A new left lower lobe lesion was appreciated on chest radiograph and he underwent a bronchoscopy that revealed an endobronchial polypoid lesion in the right upper lobe. There were also other lesions noted in the lingula and left lower lobe. A bronchial biopsy and cytology were non-diagnostic. In September of 1997 Mr. suffered a seizure and was admitted with confusion. A CT scan of the brain revealed metastatic lesions. He was treated with Decadron and Dilantin but further deteriorated. He expired September 24, 1997 and death certificate lists the immediate cause of death to be cardiac arrest and respiratory failure with aspiration pneumonia and carcinoma of the lung with brain metastases.

Autopsy was performed and gross examination of the lung revealed a necrotic mass of the left lower lobe, emphysema and anthracosis. Sections of the left lung showed bizarre tumor cells, and the same tumor cells were noted in the brain sections. Final diagnostic conditions listed as the cause of death indicate pulmonary carcinoma with metastases to the brain.

The medical record documents significant exposure to cigarette smoke with an eighty pack-year cigarette smoking history. These records also document work in the coal mines. Your correspondence shows that                    was occupationally exposed to asbestos dust in his employment as a steelworker (planerman) for Valley Mold in Hebron, Ohio from 1967 to 1990.

            · presents with a significant smoking history and a significant occupational exposure history to both asbestos and silica dust. Multiple chest radiographs and interpretations reveal interstitial lung disease consistent with both silicosis and asbestosis. There are also pleural abnormalities consistent with asbestos associated pleural disease. On the basis of these findings, the diagnoses of asbestosis, silicosis and asbestos associated pleural fibrosis are established within a reasonable degree of medical certainty.

A diagnosis of lung carcinoma, stage IV with brain metastases, was definitively established by autopsy. Cigarette smoke, asbestos dust are known causative factors of lung carcinoma. When both asbestos dust and cigarette smoke exist in the same individual, there is an incidence of lung carcinoma greater than would be expected on the basis of independent exposures. Thusly, there is a synergistic reaction between these two agents as they relate to lung cancer causation.

Page 3 of 3
RE:


WR GRACE PIQ 014499-0031

REDACTED

Additionally, available data reveal that exposure to silica dust in doses high enough to cause silicosis produce an increased risk for bronchogenic carcinoma. The risk may also be increased by smoking and exposure to other carcinogens such as asbestos dust.

Therefore, it would be my opinion that asbestos and silica dust exposure, in this individual, would be considered to be significant contributing causes for the development of this lung carcinoma. Furthermore, it would be my opinion that asbestos dust and silica dust would be contributing causes of the death of :

Please inform me if you require further information or evaluation.

Very Truly Yours,

Paul C. Venizelos, M.D.,FCCP,FAASM

PCV/GA-016
DD: 06/08/2004
DT: 06/09/2004

# Exhibit 5

REDACTED

**PART I: IDENTITY OF INJURED PERSON AND LEGAL COUNSEL**

WR GRACE PIQ 28491-0009

### A. GENERAL INFORMATION

1. Name of Claimant: _____

      First         MI         Last

2. Gender: ☐ Male ☐ Female

3. Race (for purposes of evaluating Pulmonary Function Test results): ...................................
☐ White/Caucasian
☐ African American
☐ Other

4. Last Four Digits of Social Security Number: _____

5. Birth Date:

6. Mailing Address: _____

     Address         City        State/Province    Zip/Postal Code

7. Daytime Telephone Number: ......................................( _ _ _ ) _ _ _ - _ _ _ _

### B. LAWYER'S NAME AND FIRM

1. Name of Lawyer: Thomas M. Wilson, Esq

2. Name of Law Firm With Which Lawyer is Affiliated: Kelley & Ferraro LLP

3. Mailing Address of Firm: 1300 E. 9th Street, Suite 1901 Cleveland, OH 44114

     Address         City        State/Province    Zip/Postal Code

4. Law Firm's Telephone Number or Lawyer's Direct Line: ...............................( 216 ) 575 - 0777

   X Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in lieu of sending such materials to you.

### C. CAUSE OF DEATH (IF APPLICABLE)

1. Is the injured person living or deceased? ...................................................... X Living ☐ Deceased
If deceased, date of death: ................................................................... _ _ / _ _ / _ _ _ _

2. If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete the following:
Primary Cause of Death (as stated in the Death Certificate): If deceased, see attached death certificate
Contributing Cause of Death (as stated in the Death Certificate): _____

**PART II: ASBESTOS-RELATED CONDITION(S)**

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1. Please check the box next to the condition being alleged:
☐ Asbestos-Related Lung Cancer
☐ Mesothelioma
X Asbestosis
☐ Other Cancer (cancer not related to lung cancer or mesothelioma)
☐ Other Asbestos Disease
☐ Clinically Severe Asbestosis

  a. Mesothelioma: If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following (check all that apply):
    ☐ diagnosis from a pathologist certified by the American Board of Pathology
    ☐ diagnosis from a second pathologist certified by the American Board of Pathology
    ☐ diagnosis and documentation supporting exposure to Grace asbestos-containing products having a substantial causal role in the development of the condition
    X other (please specify): Objection: See attached medical information

1

001739572-200010



**Internal Medicine & Diseases of the Chest**



WR GRACE PIQ 28491-0026

REDACTED

Laxminarayana C. Rao, MD, FCCP

Neal C. Chadnick, MD, FCCP

Paul C. Venizelos, MD, FCCP

Timothy N. Taylor, DO

Libas F. Vaitkus, MD, FCCP

Gregory G. Hickey, DO, FCCP

Babu M. Eapen, MD, FCCP

Prasadarao G. Konixpalli, MD, FCCP

CITY:  CLE-YNST       NO.  557       DATE OF FILM: 5/22/97

NAME: _____  SS# _____

CHEST X-RAY

The soft tissues and bony thorax are normal. There is no hilar prominence or mass. Cardiomegaly is present. The lung fields show calcified granuloma at right base. There are irregular opacities present in both middle and lower lung fields. Diaphragm plaque formation is noted over both diaphragms.

PULMONARY FUNCTION TEST:

CONCLUSION:

With a significant history of exposure to asbestos dust, these findings would be consistent with asbestosis and asbestos associated pleural fibrosis.

DOCTOR: L. C. Rao, M.D., F.C.C.P., F.A.C.P.       DATE:  8/27/97

_Laxminarayanarao M.D._
(Signature)

15805 Puritas Avenue
Cleveland, OH 44135
(216) 267-5139
(216) 267-5133 FAX

001739572-200027

## LAXMINARAYANA C. RAO, M.D., F.C.C.P., F.A.C.P

**Pulmonary Medicine Associates, Inc.**
*Board Certified in Internal Medicine and Pulmonary Diseases*
NIOSH "B" Reader

WR GRACE PIQ 28491-0027

REDACTED

PATIENT NAME _____    Social Security Number _____    TYPE OF READING [B]

| 1A. DATE OF X-RAY | 1B. FILM QUALITY | 1C. IS FILM COMPLETELY NEGATIVE? |
|---|---|---|
| `0 3 2 2 9 7` | `1` 2 3 % | YES ☐  NO ☐ |

**2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**    YES ☐  COMPLETE 2B and 2C    NO ☐  PROCEED TO SECTION 3

**2B. SMALL OPACITIES**

a. SHAPE/SIZE
PRIMARY   SECONDARY

| p | s | p | s |
| q | t | q | t |
| r | u | r | u |

b. ZONES
R   L

c. PROFUSION

| 0/- | 0/0 | 0/1 |
| 1/0 | 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/4 |

**2C. LARGE OPACITIES**    SIZE `O` A B C

PROCEED TO SECTION 3

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**    YES ☐  COMPLETE 3B, 3C and 3D    NO ☐  PROCEED TO SECTION 4

**3B. PLEURAL THICKENING**
a. DIAPHRAGM (plaque)
SITE `O` R L
b. COSTOPHRENIC ANGLE
SITE `O` R L

**3C. PLEURAL THICKENING — Chest Wall**
a. CIRCUMSCRIBED (plaque)

|  | SITE O R | SITE O L |
|---|---|---|
| IN PROFILE | O A B C | O A B C |
| L. WIDTH | 0 1 2 3 | 0 1 2 3 |
| R. EXTENT | 0 1 2 3 | 0 1 2 3 |
| FACE ON |  |  |
| IL. EXTENT | 0 1 2 3 | 0 1 2 3 |

b. DIFFUSE

|  | SITE O R | SITE O L |
|---|---|---|
| IN PROFILE | O A B C | O A B C |
| L. WIDTH | 0 1 2 3 | 0 1 2 3 |
| R. EXTENT | 0 1 2 3 | 0 1 2 3 |
| FACE ON |  |  |
| IL. EXTENT | 0 1 2 3 | 0 1 2 3 |

**3D. PLEURAL CALCIFICATION**

|  | SITE O R EXTENT | SITE O L EXTENT |
|---|---|---|
| a. DIAPHRAGM | 0 1 2 3 | 0 1 2 3 |
| b. WALL | 0 1 2 3 | 0 1 2 3 |
| c. OTHER SITES | 0 1 2 3 | 0 1 2 3 |

PROCEED TO SECTION 4

**4A. ANY OTHER ABNORMALITIES?**    YES ☐  COMPLETE 4B and 4C    NO ☐  PROCEED TO SECTION 6

**4B. OTHER SYMBOLS (OBLIGATORY)**

| O | ax | bu | ca | cn | co | cp | cv | di | ef | em | es | fr | M | ho | id | th | kl | pi | px | rp | th |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Report items which may be of present clinical significance in this section.    (SPECIFY od)  `OD`    Date Personal Physician notified?    MONTH DAY YR

**4C. OTHER COMMENTS**
Evidence of calcified granuloma at right lower lung field.
_____
_____

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C.    YES ☐ NO ☐    PROCEED TO SECTION 6

| 6. FILM READER'S INITIALS | PHYSICIAN'S SOCIAL SECURITY NUMBER* | DATE OF READING |
|---|---|---|
| `L C R` | `5 1 5 7 0 6 8 3 1` | `0 8 2 7 9 7` |

Old Oak Medical Pavilion
7255 Old Oak Blvd.
Suite #104
Middleburg Hts., OH 44130
(440) 826-5050

L. C. RAO, M.D. (BOM), F.A.C.E.(MAN)
F.A.C.P., F.C.C.P., F.A.C.I.P., F.A.A.D.E.P., F.A.C.F.E.
B-READER NIOSH
EXAM EXPIRES JANUARY 1999

*Laxminarayana Rao M.D.*

Business & Insurance Office
15805 Puritas Avenue
Cleveland, OH 44135
(216) 267-5139
(800) 260-8054

001739572-200028

# ALVIN J. SCHONFELD D.O., F.C.C.P., F.A.A.D.E.P.
PULMONARY MEDICINE
OCCUPATIONAL LUNG DISEASE



905 W. CASTLEWOOD TERRACE
CHICAGO, IL 60640-4218

PHONE: 1-773-878-6111
FAX: 1-773-878-9797

September 9, 1999
mcCov

REDACTED

RE: :
SSN: :
DOB:

This is a physician's report pertaining to the above named client.

PAST MEDICAL HISTORY:  Cough and dyspnea for between 4 and 15 years.  He has history of prostate cancer for which he has had radiation therapy treatments.  He had back problems from degenerative disc disease.  He has history of an appendectomy and has hypertension.

MEDICATIONS:  Tenoretic.

SMOKING HISTORY:  He smoked 1 pack of cigarettes a day between ages 18 and 41.

OCCUPATIONAL HISTORY: From 1940 to 1987 he worked at Crucible Steel on an on an off basis as a brick layer as well as other jobs.  Intermittently during the same interval, he worked as other steel mills as a brick layer.  During all work locations he indicates exposure to aerosolized asbestos.

PHYSICAL EXAMINATION:  Physical exam revealed an alert, oriented male in no distress.  Head and neck exam is unremarkable.  Lungs were clear on auscultation.  Cardiac exam revealed a regular rate and rhythm without murmurs.  Abdomen was soft without masses.  Extremities show no clubbing, cyanosis, or edema.

CHEST X-RAY:  Chest x-ray dated 5-22-97 was read by Dr. Venizelos according to the ILO 1980 classification and showed interstitial changes bilaterally consistent with asbestosis as well as bilateral pleural thickening.

SPIROMETRY:  Spirometry dated 9-24-99 was performed and met ATS guidelines and was normal.

IMPRESSION:
1.  On the basis of the medical history review which is inclusive of a significant exposure to asbestos dust, the physical examination and the chest radiograph, the diagnosis of asbestosis as well as asbestos related pleural disease is established within a reasonable degree of medical certainty.

DIPLOMATE-AMERICAN BOARDS OF INTERNAL MEDICINE AND PULMONARY DISEASE
NIOSH B READER
CERTIFIED, AMERICAN BOARD OF INDEPENDENT MEDICAL EXAMINERS

001739572-200029

**ALVIN J. SCHONFELD D.O., F.C.C.P., F.A.A.D.E.P.**



WR GRACE PIQ 28491-0029

Page 2                          REDACTED

RECOMMENDATIONS:

1. He is at increased risk of lung cancer, mesothelioma, and other non-pulmonary malignancies associated with asbestos exposure.

2. He should be advised to have yearly chest x-rays, pulmonary function tests, and screening for gastrointestinal malignancy.

3. He should be advised that his chest x-ray and pulmonary function may deteriorate in the absence of further asbestos exposure.

4. He should be advised to refrain from use of any tobacco containing products.

I hope that the above information is useful to you.

This report serves only to establish the presence of asbestos related conditions and does not establish a doctor-patient relationship.

Sincerely,

Alvin J. Schonfeld, D.O., FCCP, FAADEP
AJS\cj/18

001739572-200030

# Exhibit 6

REDACTED



WR GRACE SDA  010410-0007

## PART I: IDENTITY OF INJURED PERSON AND LEGAL COUNSEL

### GENERAL INFORMATION

1. **Name of Claimant:** _____

      First           MI           Last

2. **Gender:** ☐ Male ☐ Female
   X See medical diagnosis attached to original questionnaire.

3. **Race (for purposes of evaluating Pulmonary Function Test results):**....................................... ☐ White/Caucasian

                                                                  ☐ African American

                                                                  X Unknown

4. **Last Four Digits of Social Security Number:** ____

5. **Birth Date:** _____

6. **Mailing Address:** _____

    Address                  City             State/Province       Zip/Postal Code

7. **Daytime Telephone Number:**...................................................................... ( __ __ ) __ __ __ - __ __ __ __

### LAWYER'S NAME AND FIRM

1. **Name of Lawyer:** <u>Thomas M. Wilson, Esq</u>

2. **Name of Law Firm With Which Lawyer is Affiliated:** <u>Kelley & Ferraro LLP</u>

3. **Mailing Address of Firm:** <u>1300 E. 9th Street, Suite 1901  Cleveland, OH  44114</u>

                        Address                  City                 State/Province       Zip/Postal Code

4. **Law Firm's Telephone Number or Lawyer's Direct Line:**.......................................... ( 216 ) 575 - 0777

   X  Check this box if you would like the Debtors to send subsequent material relating to your claim to your lawyer, in lieu of sending such materials to you.

### CAUSE OF DEATH (IF APPLICABLE)

1. **Is the injured person living or deceased?**.................................................................. X Living   ☐ Deceased

   **If deceased, date of death:**............................................................................... __ __ / __ __ / __ __ __ __

2. **If the injured person is deceased, then attach a copy of the death certification to this Questionnaire and complete the following:**

    **Primary Cause of Death (as stated in the Death Certificate):** <u>If deceased, see death certificate attached to original questionnaire.</u>

    **Contributing Cause of Death (as stated in the Death Certificate):** <u>If deceased, see death certificate attached to original questionnaire.</u>

## PART II: ASBESTOS-RELATED CONDITION(S)

Mark the box next to the conditions with which you have been diagnosed and provide all information required in the instructions to this Questionnaire. If you have been diagnosed with multiple conditions and/or if you received diagnoses and diagnostic tests relating to the same condition by multiple doctors, please complete a separate Part II for each initial diagnosis and any previous or subsequent diagnoses or diagnostic tests that change or conflict with the initial diagnosis. For your convenience, additional copies of Part II are attached as Appendix C to this Questionnaire.

1. **Please check the box next to the condition being alleged:**

   ☐ Asbestos-Related Lung Cancer           ☐ Mesothelioma

   X Asbestosis                             ☐ Other Cancer (cancer not related to lung cancer or mesothelioma)

   ☐ Other Asbestos Disease               ☐ Clinically Severe Asbestosis

   a.  **Mesothelioma:** If alleging Mesothelioma, were you diagnosed with malignant mesothelioma based on the following (check all that apply):

        ☐ diagnosis from a pathologist certified by the American Board of Pathology

        ☐ diagnosis from a second pathologist certified by the American Board of Pathology

{D0050647;1 }

WR GRACE SDA   010410-0009

## PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

**d.  Clinically Severe Asbestosis:** If alleging Clinically Severe Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a B-reader certified by the National Institute for Occupational Safety and Health

☐ a chest x-ray reading of at least 2/1 on the ILO grade scale (a) conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* and (b) by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating total lung capacity less than 65% predicted

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating forced vital capacity less than 65% predicted and a FEV1/FVC ratio greater than or equal to 65% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

☐ other (please specify):_____

**e.  Asbestosis:** If alleging Asbestosis, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a <u>second</u> B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ asbestosis determined by pathology

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEV1/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the asbestosis

X  other (please specify): <u>See ILO, PFT, Causal Report attached to original questionnaire</u>

3

001739572-300013

WR GRACE SDA   010410- 0010

PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

f.  **Other Asbestos Disease:** If alleging any asbestos-related injuries, medical diagnoses, and/or conditions other than those above, was your diagnosis based on the following (check all that apply):

☐ diagnosis of a pulmonologist or internist certified by the American Board of Internal Medicine

☐ diagnosis determined by pathology

☐ a chest x-ray reading   conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading   conducted in compliance with the standards set forth in the International Labour Organization's *2000 International Classification of Radiographs of Pneumoconioses* by a second B-reader certified by the National Institute for Occupational Safety and Health, with one of the following: (i) at least 1/0 on the ILO grade scale, or (ii) diffuse pleural thickening as defined in the ILO's *Guidelines for the Use of the ILO International Classification of Radiographs and Pneumoconioses* (2000)

☐ a chest x-ray reading  other than those described above

☐ a pulmonary function test, conducted in accordance with the standards set forth in the American Thoracic Society's *Lung Function Testing; Selection of Reference Values and Interpretive Strategies,* demonstrating a FEVI/FVC ratio greater than or equal to 65% predicted with either (a) total lung capacity less than 80% predicted or (b) forced vital capacity less than 80% predicted

☐ a pulmonary function test other than that discussed above

☐ a supporting medical diagnosis and supporting documentation establishing that exposure to Grace asbestos-containing products had a substantial causal role in the development of the condition

☐ a CT Scan or similar testing

☐ a diagnosis other than those above

☐ other (please specify):_____

[REMAINDER OF PAGE INTENTIONALLY BLANK]

4

001739572-300014

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE SDA  010410-0011

2. **Information Regarding Diagnosis**

   **Date of Diagnosis:** See ILO, PFT, and causal report attached to original questionnaire.....................5/22/1997

   **Diagnosing Doctor's Name:**  See ILO, PFT, and causal report attached to original questionnaire.

   **Diagnosing Doctor's Specialty:** See ILO, PFT, and causal report attached to original questionnaire.

   **Diagnosing Doctor's Mailing Address:** See ILO, PFT, and causal report attached to original questionnaire.
   <br>Address

   ---
   City                                   State/Province                        Zip/Postal Code

   **Diagnosing Doctor's Daytime Telephone Number:** See ILO, PFT, and causal report attached to original questionnaire.

   **With respect to your relationship to the diagnosing doctor, check all applicable boxes:**

   Was the diagnosing doctor your personal physician?.................................................................☐ Yes  **X** No

   Was the diagnosing doctor paid for the diagnostic services that he/she performed?......................**X** Yes  ☐ No

   *If yes, please indicate who paid for the services performed:*  Claimant.

   Did you retain counsel in order to receive any of the services performed by the
   diagnosing doctor?.....................................................................................................................☐ Yes  **X** No

   Was the diagnosing doctor referred to you by counsel?  ..........................................................**X** Yes  ☐ No

   Are you aware of any relationship between the diagnosing doctor and your
   legal counsel?  .........................................................................................................................**X** Yes  ☐ No

   *If yes, please explain:* Diagnosing doctor has worked with legal counsel in the past.


   **Was the diagnosing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine
   at the time of the diagnosis?** See ILO, PFT, and causal report attached to original questionnaire ..........☐ Yes  ☐ No

   **Was the diagnosing doctor certified as a pathologist by the American Board of Pathology at the time of the
   diagnosis?** See ILO, PFT, and causal report attached to original questionnaire......................................☐ Yes  ☐ No

   **Was the diagnosing doctor provided with your complete occupational, medical and smoking history prior to
   diagnosis?** See ILO, PFT, and causal report attached to original questionnaire......................................☐ Yes  ☐ No

   **Did the diagnosing doctor perform a physical examination?** See ILO, PFT, and causal report attached to original
   questionnaire ..........................................................................................................................☐ Yes  ☐ No

   **Do you currently use tobacco products?** See ILO, PFT, and causal report attached to original questionnaire ☐ Yes  ☐ No

   **Have you ever used tobacco products?** See ILO, PFT, and causal report attached to original questionnaire ☐ Yes  ☐ No

   *If answer to either question is yes, please indicate whether you have regularly used any of the following tobacco
   products and the dates and frequency with which such products were used:*

   **X**  Cigarettes          Packs Per Day (half pack = .5) _____     Start Year ___ ___ ___   End Year  ___ ___ ___

   See causal report attached to original questionnaire.

   ☐  Cigars              Cigars Per Day _____             Start Year ___ ___ ___   End Year  ___ ___ ___

   ☐  If Other Tobacco Products, please specify (e.g., chewing tobacco): _____
   Amount Per Day _____           Start Year ___ ___ ___   End Year  ___ ___ ___

   **Have you ever been diagnosed with chronic obstructive pulmonary disease ("COPD")?** See causal report attached
   to original questionnaire ..........................................................................................................☐ Yes  ☐ No

   *If yes, please attach all documents regarding such diagnosis and explain the nature of the diagnosis:*

   ---

3. **Information Regarding Chest X-Ray**

   **Please check the box next to the applicable location where your chest x-ray was taken (check one):**

   ☐  Mobile laboratory  ☐ Job site  ☐ Union Hall  ☐ Doctor office  ☐ Hospital  **X** Other: X-ray was taken by
   mobile x-ray machine.

   5

001739572-300015

**Address where chest x-ray taken:**  <u>Unknown</u>
                                        Address

City                                    State/Province                    Zip/Postal Code

WR GRACE SDA  010410- 0012

001739572-300016

WR GRACE SDA  010410- 0013

| City | State/Province | Zip/ |
|---|---|---|

4. **Information Regarding Chest X-Ray Reading** See ILO and Causal Report attached to original questionnaire.

Date of Reading:  __ __ / __ __ / __ __ __ __          ILO score: _____

Name of Reader: _____

Reader's Daytime Telephone Number:..........................................( __ __ __ ) __ __ __ - __ __ __ __

Reader's Mailing Address:  _____
                           Address

| City | State/Province | Zip/Postal Code |
|---|---|---|

**With respect to your relationship to the reader, check all applicable boxes:**

Was the reader paid for the services that he/she performed ......................................................**X** Yes ☐ No

*If yes, please indicate who paid for the services performed:* Claimant

Did you retain counsel in order to receive any of the services performed

by the reader? ............................................................................................................☐ Yes **X** No

Was the reader referred to you by counsel? ...........................................................**X** Yes ☐ No

Are you aware of any relationship between the reader and your legal counsel? ...........................**X** Yes ☐ No

*If yes, please explain:* Reader worked with legal counsel in the past.

**Was the reader certified by the National Institute for Occupational Safety and Health at the time of the reading?**

..............................................................................................................................**X** Yes ☐ No

*If the reader is not a certified B-reader, please describe the reader's occupation, specialty, and the method through which the reading was made:* _____

5. **Information Regarding Pulmonary Function Test:** See PFT and Causal Report attached to original questionnaire.
Date of Test:  __ __ / __ __ / __ __

List your height in feet and inches when test given: See PFT and Causal Report attached to original questionnaire.

_____ ft _____ inches

List your weight in pounds when test given:  See PFT and Causal Report attached to original questionnaire......____ lbs

Total Lung Capacity (TLC): See PFT and Causal Report attached to original questionnaire..._____ % of predicted

Forced Vital Capacity (FVC): See PFT and Causal Report attached to original questionnaire. _____ % of predicted

FEV1/FVC Ratio: See PFT and Causal Report attached to original questionnaire. ..................._____ % of predicted

Name of Doctor Performing Test (if applicable): See PFT and Causal Report attached to original questionnaire.

Doctor's Specialty:  See PFT and Causal Report attached to original questionnaire.

Name of Clinician Performing Test (if applicable): See PFT and Causal Report attached to original questionnaire.

Testing Doctor or Clinician's Mailing Address:  _See PFT and Causal Report attached to original questionnaire._
                                                Address

| City | State/Province | Zip/Postal Code |
|---|---|---|

**Testing Doctor or Clinician's Daytime Telephone Number:** See PFT and Causal Report attached to original questionnaire.  __ __ __

Name of Doctor Interpreting Test:  _See PFT and Causal Report attached to original questionnaire._

Doctor's Specialty: See PFT and Causal Report attached to original questionnaire.

Interpreting Doctor's Mailing Address:  See PFT and Causal Report attached to original questionnaire.
                                         Address

| City | State/Province | Zip/Postal Code |
|---|---|---|

6

001739572-300017

WR GRACE SDA  010410- 0014

**Interpreting Doctor's Daytime Telephone Number:** <u>See PFT and Causal Report attached to original questionnaire.</u>

— —˙— — — —

001739572-300018

**PART II: ASBESTOS-RELATED CONDITION(S) (Continued)**

WR GRACE SDA  010410- 0015

With respect to your relationship to the doctor or clinician who performed the pulmonary f applicable boxes:

If the test was performed by a doctor, was the doctor your personal physician? .......................................... ☐ Yes  **X** No

Was the testing doctor and/or clinician paid for the services that he/she performed?................................... **X** Yes  ☐ No

*If yes, please indicate who paid for the services performed:* <u>Claimant</u>..................................................................

Did you retain counsel in order to receive any of the services performed by the testing doctor

or clinician? ................................................................................................................................................☐ Yes  **X** No

Was the testing doctor or clinician referred to you by counsel?.................................................................. **X** Yes  ☐ No

Are you aware of any relationship between either the doctor or clinician and your legal

counsel? ................................................................................................................................................... **X** Yes  ☐ No

*If yes, please explain* <u>  Doctor worked with legal counsel in the past.  </u>

Was the testing doctor certified as a pulmonologist or internist by the American Board of Internal Medicine at the time of the pulmonary function test? <u>See PFT and causal report attached to original questionnaire</u> ......☐ Yes  ☐ No

With respect to your relationship to the doctor interpreting the results of the pulmonary function test check all applicable boxes:

Was the doctor your personal physician? .................................................................................................☐ Yes  **X** No

Was the doctor paid for the services that he/she performed? .................................................................... **X** Yes  ☐ No

*If yes, please indicate who paid for the services performed:* ..................................... <u>  Claimant  </u>

Did you retain counsel in order to receive any of the services performed by the

doctor? ☐ Yes  **X** No

Was the doctor referred to you by counsel? ............................................................................................. **X** Yes  ☐ No

Are you aware of any relationship between the doctor and your legal counsel?.......................................... **X** Yes  ☐ No

*If yes, please explain* <u>        Doctor worked with legal counsel in the past.  </u>

Was the doctor interpreting the pulmonary function test results certified as a pulmonologist or internist by the American Board of Internal Medicine at the time the test results were reviewed?.............................☐ Yes  ☐ No <u>See PFT and Causal report attached to original Questionnaire.</u>

6. **Information Regarding Pathology Reports:**

**Date of Pathology Report:** <u>See pathology report if applicable attached to original questionnaire.</u> __ / __ / __ __ __ __

**Findings:** <u>See pathology report if applicable attached to original questionnaire.</u>

**Name of Doctor Issuing Report:** <u>See pathology report if applicable attached to original questionnaire.</u>

**Doctor's Specialty:** <u>See pathology report if applicable attached to original questionnaire.</u>

**Doctor's Mailing Address:** <u>See pathology report if applicable attached to original questionnaire.</u>
        Address

_____
City                                                    State/Province                          Zip/Postal Code

**Doctor's Daytime Telephone Number:** <u>See pathology report if applicable attached to original questionnaire.</u>( __ __ __ ) __ __ __ - __ __ __ __

With respect to your relationship to the doctor issuing the pathology report, check all applicable boxes:

Was the doctor your personal physician? .................................................................................................☐ Yes  **X** No

Was the doctor paid for the services that he/she performed? .................................................................... **X** Yes  ☐ No

*If yes, please indicate who paid for the services performed:* <u>  Claimant  </u>

Did you retain counsel in order to receive any of the services performed by the

doctor? ................................................................................................................................................... ☐ Yes  **X** No

Was the doctor referred to you by counsel? ............................................................................................. **X** Yes  ☐ No

Are you aware of any relationship between the doctor and your legal counsel?.......................................... **X** Yes  ☐ No

{D0050647:1 }

001739572-300019

*If yes, please explain:* ...........___Doctor worked with legal counsel in the past._____

WR GRACE SDA  010410-0016

**Was the doctor certified as a pathologist by the American Board of Pathology at the time of the diagnosis?**

See pathology report, if applicable, attached to original questionnaire.......................................................☐ Yes  ☐ No

7

001739572-300020

PART II: ASBESTOS-RELATED CONDITION(S) (Continued)

WR GRACE SDA  010410-0017

7.  **With respect to the condition alleged, have you received medical treatment from a doctor for the condition?**

See ILO, PFT and causal report attached to original questionnaire. ...................................................☐ Yes ☐ No

*If yes, please complete the following:*

**Name of Treating Doctor:** See ILO, PFT and causal report attached to original questionnaire.

**Treating Doctor's Specialty:** See ILO, PFT and causal report attached to original questionnaire.

**Treating Doctor's Mailing Address:**  See ILO, PFT and causal report attached to original questionnaire.
Address

City                          State/Province                    Zip/Postal Code

**Treating Doctor's Daytime Telephone number:** See ILO, PFT and causal report attached to original questionnaire.

—  — - — — —

**Was the doctor paid for the services that he/she performed?** See ILO, PFT and causal report attached to original questionnaire.................................................................................................☐ Yes ☐ No

*If yes, please indicate who paid for the services performed:* See ILO, PFT and causal report attached to original questionnaire.

**Did you retain counsel in order to receive any of the services performed by the doctor?** No.......................................

[REMAINDER OF PAGE INTENTIONALLY BLANK]

8

001739572-300021

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |

**Related Docket Nos**: 15703, 15705, 15707, 15709, 15711, 15713, 15715, 15717, 15719, 15721, 15723, 15730, 15732, 15734, 15735, 15738, 15740, 15741, 15744, 15746, 15748, 15950, 15955, 15959, 15966, 15987 & 1605⁹

## ORDER CONCERNING DISCOVERY OF LAW FIRMS THAT SUBMITTED ASBESTOS PI QUESTIONNAIRES

Upon consideration of the *Motion of Official Committee of Asbestos Personal Injury Claimants and David T. Austern, Legal Representative For Future Asbestos Injury Claimants, For Protective Order* dated June 4, 2007 [Docket No. 15955]; *Memorandum in Support of Motley Rice LLC's Motion for Protective Order* dated June 4, 2007 [Docket No. 15950]; *Motion of Certain Law Firms to Quash Deposition Notices and for a Protective Order* dated June 5, 2007 [Docket No. 15966]; *Motion of the MMWR Cancer Firms for a Protective Order with Respect to Notices of Deposition Served on Them by W. R.. Grace* dated June 7, 2007 [Docket No. 15987]; and *Memorandum in Support of Cooney and Conway's Motion for Protective Order* dated June 4, 2007 [Docket No. 15950] (collectively, the "Motions"); and having heard argument relating to the Motions on May 26, 2007 and July 23, 2007; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and it appearing that venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that good and sufficient notice of the Motion having been given and that no other or further notice of

the Motion need be provided; and after due deliberation and sufficient cause appearing therefore, the Court hereby orders as follows:

1.      The Motions are denied.

2.      The law firms of Motley Rice LLC; Kelley & Ferraro LLP; and Baron & Budd, P.C. shall each produce for deposition their attorney most-knowledgeable concerning the activities undertaken by the firm to respond to the W.R. Grace Asbestos Personal Injury Questionnaire.  Such depositions may cover the topics identified in Debtors' Brief in Further Support of Opposition to Motions for Protective Orders to Preclude Law Firm Depositions and shall take place at a time and place that is mutually convenient for all affected parties. Notwithstanding, these depositions shall conclude within 21 (twenty-one) days form entry of this Order.

3.      Before their respective depositions, and, in any event, within 14 (fourteen) days following entry of this Order, the law firms of Kelley & Ferraro LLP and Motley Rice LLC shall each serve Debtors with responses to Debtors First Set of Interrogatories to Certain Asbestos Personal Injury Pre-Petition Litigation Claimants' Law Firms, including Interrogatory No. 5, which requires each firm to provide a verification that its responses are true, complete, and correct.

4.      Within 1 (one) day following entry of this Order, the Debtors may serve Debtors' Third Set of Interrogatories to Certain Asbestos Personal Injury Pre-Petition Litigation Claimants' Law Firms (the "Third Set of Interrogatories") to Certain Asbestos Personal Injury Pre-Petition Litigation Claimants' Law Firms on the following law firms: Alwyn H. Luckey, P.A.; Cooney & Conway; Edward O. Moody, P.A.; Foster & Sear, LLP; Ferraro & Associates,

2

P.A.; Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, PC; LeBlanc &

Waddell; Williams Bailey Law Firm, LLP; Provost Umphrey, LLP; Maples & Lomax; Silber

Pearlman, LLP; Weitz & Luxenburg, P.C.; Waters & Kraus, LLP; Paul, Hanley & Harley, LLP;

Reaud Morgan & Quinn; and The Wartnick Law Firm.  On or before 11 (eleven) days following

entry of this Order, each of these law firms shall serve Debtors with their responses to the Third

Set of Interrogatories and file a certificate of such service with the Court.

   5.    This Court shall retain sole jurisdiction over any disputes or other matters arising

from or related to this Order, which is a final order.

Dated:    July__, 2007

                                        _____
                                        United States Bankruptcy Judge