IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | |
| | ) | Case no. 01-01139 (JFK) |
| W.R. GRACE & CO., *et al.*, | ) | Jointly Administered |
| | ) | |
| Debtors | ) | Related Docket Nos.: : 15703, 15705, 15707, |
| | ) | 15709, 15711, 15713, 15715, 15717, 15719, |
| | ) | 15721, 15723, 15730, 15732, 15734, 15735, |
| | ) | 15738, 15740, 15741, 15744, 15746, 15748, |
| | ) | 15950, 15955, 15959, 15966, 15987 & 16059 |
| | ) | |
| | ) | Hearing Date: July 23, 2007 @ 2:00 p.m. in |
| | ) | Wilmington, Delaware |
| | ) | |
| | ) | Agenda Item No. 19 |
| | ) | |

**DEBTORS' BRIEF IN FURTHER SUPPORT OF OPPOSITION TO
MOTIONS FOR PROTECTIVE ORDERS TO PRECLUDE LAW FIRM DEPOSITIONS**

As the Court directed during the June 26th Omnibus Hearing, Grace served its Third Set of Interrogatories on four law firms as a first step in the process set by the Court for deciding on the need for law firm depositions. The Court issued an unequivocal warning that the law firms' failure to provide "full and complete" responses to the Interrogatories would result in the denial of the motions for protective orders and an order directing the depositions to proceed. *See* 6/26/07 Hrg. Tr. at 82 [Dkt. No. 16208].

Grace has now received and reviewed the law firms' responses, and has also continued its review of outstanding discovery responses from other law firms initially served with the deposition notices.[1] Pursuant to these reviews (and as contemplated during the June 26th

---

[1] The Deposition Notice was served on the following law firms: Alwyn H. Luckey, P.A. [Docket No. 15703]; Baron & Budd, PC [Docket No. 15705]; Cooney & Conway [Docket No. 15707]; Edward O. Moody, P.A. [Docket No. 15709]; Early Ludwick & Sweeney [Docket No. 15711]; Foster & Sear, LLP [Docket No. 15713]; Ferraro & Associates, P.A. [Docket No. 15715]; Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, PC [Docket No. 15717]; Motley Rice, LLC [Docket No. 15719]; LeBlanc & Waddell [Docket No. 15721]; Williams
(Continued...)

1

hearing), Grace respectfully submits this Brief to apprise the Court of its position regarding the need to depose three of the four law firms. *See* 6/26/07 Hrg. Tr. at 101-02. With respect to three of the four law firms, the responses to the Third Set of Interrogatories have identified specific areas where further inquiries by way of focused depositions are necessary. In addition, the responses have highlighted the need for two of the three law firms to produce responses to the First Set of Interrogatories in advance of these depositions.

This brief also addresses the discovery necessary to apply to the remaining law firms the template created by the Court with respect to these four firms. The Court will recall that, pursuant to non-compliance reports made during the April 13th and May 8th hearings, the need for law firm interrogatories was introduced and approved. Today, we also know that some law firms responded to the First Set of Interrogatories, and no law firms provided substantive responses to the Second Set. Accordingly, Grace also asks that a prompt deadline be set for additional law firms to respond to the Third Set of Interrogatories.[2]

Finally, Grace notes that this brief does not address the impact of non-compliance and the problems with the underlying data that have been admitted or confirmed by the law firms' responses to the Third Set of Interrogatories. Grace anticipates addressing these issues at a later date.

---

Bailey Law Firm, LLP [Docket No. 15723]; Provost Umphrey, LLP [Docket No. 15730]; Maples & Lomax [Docket No. 15732]; Silber Pearlman, LLP [Docket No. 15734]; Weitz & Luxenburg, P.C. [Docket No. 15735]; Waters & Kraus, LLP [Docket No. 15738]; Law Offices of Peter G. Angelos, PC [Docket No. 15740]; Paul, Hanley & Harley, LLP [Docket No. 15741]; Reaud Morgan & Quinn [Docket No. 15744]; The Wartnick Law Firm [Docket No. 15746]; and Kelley & Ferraro, LLP [Docket No. 15748].

[2] As discussed during the June 26th Omnibus Hearing, any issues regarding depositions or discovery of the Early Ludwick & Sweeney or Brayton Purcell law firms have been deferred to a later date. *See* 6/26/07 Hrg. Tr. at 104-06. Consequently, any relief requested or referred to in this brief is not currently addressed to these firms. However, Grace expressly reserves the right to seek such relief (as well as other discovery) as to these two law firms at a later date, if appropriate.

I. **The Need For These Depositions Arose Out Of Clear Evidence Of The Law Firms' Non-Compliance With The Court's Discovery Orders.**

There has been a long history of non-compliance with the Court's discovery orders, and Grace will take up the implications of this non-compliance and its impact on the merits of the estimation case as separate matter at a later date. But the immediate need for depositions of certain law firms arises out of the events presented to the Court on April 13th and crystallized during the May 8th hearing.

A. **The April 13th Hearing: Grace Presents Extensive And Uncontroverted Evidence Of Non-Compliance.**

During the April 13th hearing, and following Grace's review and analysis of the law firms' supplemental PIQ submissions, Grace introduced clear and unrebutted evidence of the firms' violations of the Court's Consulting Expert Order,[3] as well as other discovery directives. *See* 4/13/07 Hrg. Tr. at 55-61 [Dkt. No. 15270]. Emphasizing that these violations occurred against the backdrop of increasing evidence that the "mass screening" debacle was prevalent in the Grace claims,[4] (*id.* at 57-59), Grace proposed that the Court require the law firms to provide a privilege log to create a record of withheld B-reads and further contemplated submitting proposed interrogatories regarding the same issue for the Court's review and approval. *See id.* at 64-69. In response, the Court commented approvingly on the "concept" of asking interrogatories "to get to what claimants actually are withholding what information" as "probably the way to proceed." *See id.* at 101.

---

[3] 12/22/06 Supp. Order re Mots. to Compel Claimants to Resp. to PIQ [Dkt. No. 14150].

[4] As Grace pointed out, even well-known plaintiffs' attorney, Steven Kazan, has testified regarding the deleterious impact of mass screening racket on claimants with actual asbestos-related impairments. *See* 4/13/07 Hrg. Tr. at 57-59.

3

**B.    The May 8th Hearing: The Extent Of Non-Compliance Issues Is Further Crystallized And The Court Reviews The Proposed Interrogatories Line-By-Line.**

At the subsequent May 8th Hearing, counsel for Grace canvassed additional evidence that certain counsel had indeed been "less than forthcoming" in providing information directly responsive to the PIQ's. *See generally* 5/8/07 Hrg. Tr. at 29-40 [Dkt. No. 15786]. Grace highlighted the following:

- Only 1200 claimants (about one percent) actually answered all key PIQ questions; the remainder only attached self-serving, undifferentiated documents that failed to specifically answer the questions;

- Law firms evidently have failed to search beyond their own files for B-reads and other medical information from before the attorney-client relationship had developed, as required by the Court's Consulting Expert Order;

- Claimants have failed to disclose and describe all diagnoses obtained before or after the one for which the claim has apparently been filed, as required by the PIQ;

- Claimants have failed to disclose all exposures to asbestos-containing materials, as required by the PIQ; and

- Of the 6,740 claimants who rely upon x-ray evidence to support their allegations of asbestos-related lung-cancer, only 3,101 submitted materials complying with the Court's x-ray order.

Following this presentation, the Court proceeded line-by-line through the proposed interrogatories regarding B-read compliance issues. *See generally id.* at 77-169. Following the hearing, the Debtors served the resulting Court-approved First Set of Interrogatories on 21 law firms.

During the same hearing, Grace also addressed general PIQ non-compliance issues, including "what efforts have [been] undertaken to obtain documents" and "to obtain documents . . . in the possession, custody or control of all other counsel," or "in the possession, custody and control of all doctors." The Court specifically found that such inquiries were proper and not "overly burdensome" and recognized "[i]f there have been efforts made, it shouldn't be that

4

difficult to say what they are in global terms. If there were no efforts, then none is pretty easy to add." *Id.* at 171-72. Indeed, the Court explicitly noted that "maybe . . . the thing to ask," is, "[i]n general, what have [the law firms] done to answer the [questionnaires]." *See id.* at 135; *see also id.* at 202-03, 205-06 (counsel for Grace indicated it would serve interrogatories and seek depositions on PIQ compliance issue). The ensuing PIQ-compliance discovery was served in the form of the Deposition Notices at issue here, as well as via Debtors' Second Set of Interrogatories.[5]

### C. Many Law Firms Simply Ignored The Court-Approved Interrogatories; Others Responded Only In Part.

The law firms' failure to completely respond (or in some cases to respond at all) to the First and Second Set of Interrogatories was widespread. Indeed, to date, three firms -- Kelley & Ferraro, Ferraro & Associates, and Alwyn Luckey -- have not provided *any* response to the First Set of Interrogatories whatsoever. Kelley & Ferraro's continuing failure to respond to the First Interrogatories is particularly perplexing since counsel for the firm expressly assured the Court that the law firm would provide responses to those interrogatories by the close of business on Monday, July 2. *See* 6/26/07 Hrg. Tr. at 119 ("Again, on behalf of Kelley & Ferraro, we will have them [Responses to the First Set of Interrogatories] by the end of business day on the 2nd via email."). In addition, Motley Rice's "responses" to the First Set of Interrogatories contained no substantive answers whatsoever, and, instead consisted of broad privilege assertions.[6]

---

[5] For a more detailed discussion of the events leading to law-firm discovery, *see* 6/15/07 Debtors' Combined Response to Motions for Protective Orders Precluding Depositions of 21 Law Firms dated [Dkt. No. 16059].

[6] *See* 6/22/07 Motley Rice LLC's Objs. & Resp. to Debtors' 1st Set of Interrog. (attached as Ex. 1).

And the responses to the Second Set of Interrogatories (regarding PIQ compliance issues) were even worse. Not one single firm provided any substantive response to these Interrogatories -- instead, each and every firm stood on broad privilege assertions and refused to answer any of the questions posed. And, again, the same three law firms referenced above failed to respond at all.

### D.     Grace's Request For Depositions Then Followed, And 21 Law Firms Were Served With Deposition Notices.

The vast majority of the 21 law firms served with deposition notices filed motions for protective orders to prevent the depositions.[7] Prior to and during the hearing, Grace agreed to focus its initial inquiries on the following four firms in order to advance the process: Baron & Budd, P.C.; Kelley & Ferraro, LLP; Motley Rice, LLC; and the Law Offices of Peter G. Angelos, P.C. *See* 6/26/07 Hrg. Tr. at 32, 67-68.

Grace's efforts to focus the issue merely encouraged the law firms' continued insistence that no depositions proceed and that written interrogatories be used instead. The Court agreed to this suggestion as the "first step" in the process for deciding whether depositions should go forward, but importantly said that the interrogatory answers were to be "full and complete" and that law firms who did not provide such responses would do so at their own peril:

> I'm going to order as to these four firms all of whom are represented here today and all of whom have said on this record that they will produce the responses to the interrogatories provided that the Court issued the non-waiver order which I had just issued

---

[7] *See* 6/4/07 Motley Rice LLC's Motion for Protective Order [Dkt No. 15950]; 6/4/07 Motion of Official Committee of Asbestos Personal Injury Claimants and David T. Austern, Legal Representative For Future Asbestos Injury Claimants, For Protective Order [Dkt No. 15955]; 6/5/07 Motion of Certain Law Firms to Quash Deposition Notices and for a Protective Order [Dkt. No. 15966]; 6/7/07 Motion of the MMWR Cancer Firms for a Protective Order with Respect to Notices of Deposition Served on Them by W. R.. Grace [Dkt. No. 15987]; 6/4/07 Memorandum in Support of Cooney and Conway's Motion for Protective Order [Dkt. No. 15959]. Notably, Kelley & Ferraro, Ferraro & Assocs. & the Luckey Law Firm did not move for protective orders.

> on this order that they will produce full and complete responses. *I will hold them to this. I expect full and complete responses. If you don't get it, I'm continuing this motion and then you will get your depositions.*

6/26/07 Hrg. Tr. at 82 (emph. added). The Court thus indicated that it would continue the hearing on the law firm depositions subject to Grace's review of the Interrogatory responses. As represented by Grace's counsel, following that review, it would "appri[s]e the Court of [its] view about whether [it] need[ed] to go forward with the depositions" of the four law firms, as well as to bring to the Court's attention its position regarding further discovery (including depositions) of the other law firms initially served with the deposition notices. *See id.* at 101-02.

In addition, although recognizing that its rulings on the law firm depositions would necessarily be specific to the four law firms at issue, the Court anticipated that its rulings would "essentially set the tone by which [it] expects [it] will continue to make appropriate or similar rulings in similar circumstances." *Id.* at 70.

On June 27, 2007, Grace served its Third Set of Interrogatories to Certain Asbestos Personal Injury Pre-Petition Litigation Claimants' Law Firms. As agreed to during the Omnibus Hearing, the four law firms responded to the Interrogatories on July 13, 2007.

## II. The Answers To The Third Set Of Interrogatories Have Now Confirmed The Need For Focused Depositions With Respect To Three Of The Four Law Firms.

### A. Specific Problems Require Focused Depositions On Certain Topics.

In many instances, the responses to Third Set of Interrogatories have provided Grace with material information concerning the PIQ compliance process. However, responses from three of the four law firms are plagued by inconsistencies, conflicts, and studied vagueness. These

7

problems are specifically detailed in Appendix A, attached hereto.[8] This, plainly, now confirms the need for focused depositions. Far from using the non-compliance as an excuse for seeking broad deposition testimony, Grace has studied the responses and has carefully charted focused areas of inquiry. *See* Appendix A. Grace requests that Court order the following law firms produce an attorney to appear for depositions on these topics within 21 days: Motley Rice, Kelley & Ferraro and Baron & Budd.

In the case of Motley Rice and Kelley & Ferraro, the first step in the assuring that these depositions are meaningful is for the firms to *answer* the First Set of Interrogatories, which requests the facts necessary to determine the scope of the law firms' withholding B-reads and the appropriateness thereof. Other law firms have responded to this First Set of Interrogatories, and there is no reason why these two firms should be exempted. Grace further requests the Court to direct Motley Rice and Kelley & Ferraro to provide answers to the First Set of Interrogatories within 14 days.

### B.  Other Problems That Have Surfaced Demonstrating The Need For Further Discovery.

In addition to the failure to provide "full and complete" responses to the Third Set of Interrogatories, evidence of further violations of this Court's discovery orders have surfaced that confirm the need for law firm depositions.

#### 1.  Violations of The "Attachment Order"

In October 2006 the Court placed strict limitations on the manner in which claimants could respond to PIQ questions by way of attachment, stating:

---

[8] Baron & Budd, Motley Rice, and Kelley & Ferraro's Responses to the Third Set of Interrogatories are attached hereto as Appendix B.

8

> [I]f a response is made by way of an attachment, the attachment must have the answer to the question, must be in a recognizable, legible format that are either numbered (whether by Bates number or some other appropriate numbering system or method) or otherwise identified (such as behind an exhibit tab) and the response must reference clearly the specific page(s) of the attachment so that the Debtors understand which page(s) of the attachment provides the answer to a specific Question in the Questionnaire. Pages that do not contain the answer should not be referenced.[9]

As the examples show below, despite the unequivocal language in this Order, the law firms at issue here have failed to cure their submissions that violate (and often to make new submissions that continue to violate) this Attachment Order.

- <u>Motley Rice</u>: Motley Rice's initial and supplemental PIQ submissions demonstrate repeated and flagrant violations of the Attachment Order. For example, in its initial submissions, the law firm vaguely referenced attached medical and exposure documents stating "see attached medical profile and attached medical record" or referencing "Grace Exposure Profile attached hereto" and an "Attached Non-Grace Exposure Profile."[10] But a review the actual submissions shows that these "attachments" were either non-existent or inapplicable to the question at issue. And Motley Rice's PIQ references to a "CD that sets forth Product Identification Evidence" offered nothing more than an undifferentiated mass of 4,342 pages of documents, many of which appear not to even relate to persons for whom Motley Rice submitted Questionnaires. Even after the Court expressly prohibited of these "attachment" practices, Motley Rice failed to cure it violations through supplemental submissions or by any other means.

- <u>Kelley & Ferraro</u>: Kelley & Ferraro submitted Questionnaires for over 34,000 individuals, and supplemental materials for approximately 28,000 claimants. In their initial PIQ responses, Kelley & Ferraro directed Grace to a variety of attached documents, but -- in direct contravention to the Attachment Order, failed to (i) "number" or "otherwise identif[y]" which attachment contains the responsive information or (ii) direct Grace to the "page(s) of the attachment [that] provide[] the answer to a specific Question in the Questionnaire."[11] Instead, Kelley & Ferraro simply answered questions regarding all Claimants' medical information by stating "[s]ee ILO, PFT, Causal Report attached to original questionnaire."

---

[9] 10/12/06 Order Concerning Debtors' Mot. to Compel Asbestos PI Claimants to Respond to PIQ ¶ 2 ("Attachment Order") [Dkt. No. 13393].

[10] *See, e.g.*, PIQ of R.K., at W.R. Grace PIQ 51792-0023 9 (attached as Ex. 2).

[11] *Id.*

## 2. Violations of The "Consulting Expert Order"

Preliminary reviews of PIQs, as well as responses to Grace's motions to compel responses to the PIQs, raised the specter that significant numbers of B-read reports -- including reports that would tend to contradict or conflict with the diagnosis underlying the diagnosis of an asbestos-related injury -- were being withheld under the guise of Fed. R. Civ. P. 26(b)(4)(B)'s "consulting expert" privilege.[12] After considering extensive briefing and oral argument on the scope and applicability of the consulting expert privilege,[13] the Court entered an order specifically delineating the parameters of and the applicability of that privilege to the claims at issue.[14] The Court ruled:

- "[P]hysicians, B-readers, or other medical professionals who first 'screened' a Claimant (that is, prior to the time that any other diagnosis of an asbestos-related disease or injury was sought or known) are not Consulting Experts;"

- "[P]hysicians, B-readers, or other medical professionals who examined a Claimant prior to the time an attorney-client relationship was established between the Claimant and the lawyer or law firm which asserts the privilege are not Consulting experts;" and

- "As to any information requested regarding those who are not Consulting experts, *no privilege applies* and the responsive information with regard to such professionals *shall be provided* by Claimants."[15]

---

[12] *See, e.g.*, 8/4/06 Motley Rice Gen'l Objs to PIQ and Resp. to Mot. to Compel ¶ 1[Dkt. No. 12927].

[13] *See, e.g.*, 12/01/06 Consol. Reply in Supp. of Mot. to Compel Asbestos PI Claimants to Resp. to PIQ at 9-15 [Dkt. No. 13886]; 12/12/06 (Corrected) Add'l Br. in Supp. of Mot. to Compel Asbestos PI Claimants to Resp. to PIQ at 3-12 [Dkt. No. 13999].

[14] 12/22/06 Supp. Order re Mots to Compel Claimants to Resp. to PIQ ("Consulting Expert Order") [Dkt. No. 14150].

[15] *Id.* at ¶ 1 (emph. added). The Court also entertained and denied subsequent motions to reconsider the Consulting Expert Order. *See* 1/23/07 Hrg. Tr. at 89-92 [Dkt. No. 14465]; 3/6/07 Order on Mot. to Alter or Amend Consulting Expert Order [Dkt. No. 14763]. In so doing, the Court clarified that "you can't have a consultant privilege apply *until you have an attorney/client privilege, and that can't be a substantially contemporaneous event.* You have to have a client first. 1/23/07 Hrg. Tr. at 89 (emph. added). The Court also confirmed that a consulting expert privilege could not be properly asserted for testing done *prior* to an initial diagnosis. *See id.* at 92-93.

Again, evidence adduced to date indicates that certain law firms subject to the deposition notices at issue here continue to violate this Court's Consulting Expert Order.

- <u>Motley & Rice and Kelley & Ferraro</u>: Motley Rice and Kelley & Ferraro have deprived Grace of any meaningful opportunity to discover or document the extent of violations of the Consulting Expert Order through their outright refusals to provide substantive answers to Interrogatories regarding withheld B-reads and reports. And, although Grace is hindered by these law firms' failures to respond to discovery, preliminary reviews indicate that both law firms have withheld B-read reports in direct contravention of the Court's orders. For example, Grace has uncovered evidence to show that Motley Rice has withheld documents over which it cannot possibly assert a consulting expert privilege.[16] Similarly, although Kelley & Ferraro has contended that it has withheld no B-reads, Grace continues to discover documentary evidence that belies this assertion.[17]

- <u>Baron & Budd</u>: Baron & Budd's responses to the First Set of Interrogatories confirm its continued improper withholding of non-privileged B-reads in violation of the Consulting Expert Order.[18] Indeed, the log provided by Baron & Budd in response to these Interrogatories reveals that at least one-third of its 900-plus withheld B-reads fail to satisfy the requirements for the application of the Consulting Expert privilege as set forth in this Court's Order.[19]

---

[16] *See, e.g.*, PIQ of R.G. at WR GRACE PIQ 62884-0020 (listing medical diagnosis for Claimant as including B-read by Dr. Ballard on January 10, 2000 and including report from Dr. McGee relying on Dr. Ballard's B-read, but failing to produce Dr. Ballard's report) (attached as Ex. 3)

[17] *See, e.g.*, PIQ of D.W. at WR GRACE PIQ 014486-0025, 014486-0029 -014486-0031 (producing June 2004 report of Dr. Venizelos referencing and reviewing previous reports from Drs. Lucas, Zellers, and Holmes provided to him by Kelley & Ferraro, but failing to include reports of Drs. Zellers and Holmes in PIQ) (attached as Ex. 4)

[18] Fewer than two days before Baron & Budd's responses to the Third Set of Interrogatories were due, it (along with LeBlanc & Waddell and Silber Pearlman), mysteriously withdrew approximately 650 asbestos PI claims. Although Grace has not yet determined the common nexus among these claims that led to their abrupt withdrawal, the volume and timing of such withdrawals raise more than an eyebrow of suspicion regarding the motives and driving forces behind this action.

[19] For example, 304 of the entries are dated either prior to or contemporaneously with the date of the initial diagnosis, and 318 are dated prior to or contemporaneously with the date that Baron & Budd claims to have been retained as counsel. Moreover, 229 of these withheld reports are dated prior to or contemporaneously with *both* the date of initial diagnosis *and* the date that Baron & Budd was retained. Further, 90 of these withheld reports are dated prior to or contemporaneously with *both* the date of the initial diagnosis and the date that *any* law firm was retained.

### III. The Need For Prompt Answers To The Third Set Of Interrogatories By Other Law Firms.

#### A. The Other Law Firms Should Respond To The Third Set of Interrogatories Within Ten Days.

This process has now demonstrated that much can be accomplished by following the process of eliciting responses to the Third Set of Interrogatories as a "first step" in identifying focused areas for deposition inquiry. This Court expressly anticipated during the June 26th hearing that this process -- initially made applicable to only four firms -- would "essentially set the tone by which [it] expects [it] will continue to make appropriate or similar rulings in similar circumstances." 6/26/07 Hrg. Tr. at 70. The Court explained:

> [W]hatever these rulings are unless there is a significantly different issue that pops up at some point in the future, these rulings will undoubtedly be the same unless somebody can show me why they should not apply to other circumstances. This law of the case will apply to other firms. (*Id.*)

Since the completion of the June 26th hearing, Grace has confirmed that not a single law firm has provided substantive responses to the Second Set of Interrogatories -- but instead each firm has either filed no response at all or has filed a response consisting solely of blanket privilege objections without any substantive responses whatsoever. Because this Second Set of Interrogatories pertains to the PIQ compliance process that is also addressed in the Third Set of Interrogatories, it is clear now that directing these additional law firms to complete the Third Set of Interrogatories is appropriate. Consequently -- and consistent with the Court's successful template -- Grace respectfully requests that the Court direct the remaining law firms to promptly respond to Third Set of Interrogatories.

In particular, Grace proposes serving the Third Set of Interrogatories on the remaining law firms and requests that the Court direct the law firms to serve their responses within 10 days -- precisely the same amount of time in which the four law firms were able to respond to the

same Interrogatories. Indeed, none of the four law firms originally served with the Third Set of Interrogatories requested (or even suggested) it would need more than the 10-day window of time originally agreed to in order to complete its responses. Following Grace's review of the responses of the additional law firms, it will then apprise the Court of what additional discovery (including depositions, if appropriate) it intends to pursue.

### B. The Discovery Violations Are Not Limited To The Three Law Firms.

Any attempts to resist this discovery path based on a suggestion that the non-compliance problems outlined in Section II.B above are limited the three law firms should be rejected. As briefly sampled below, other law firms have engaged in similar discovery violations.

- LeBlanc & Waddell: Like Motley & Rice and Kelley & Ferraro, LeBlanc & Waddell's PIQ submissions also reflect flagrant and continuing violations of the Attachment Order. Among other things, the law firm's submissions often directed Grace to a purportedly attached "Claimant's affidavit," but in its reviews thus far, Grace has been unable to locate any such affidavit in the supplemental PIQ or anywhere else for either the cited Claimant and or for any of the other 279 Claimants referencing this mystery affidavit. And the law firm's violations of the Consulting Expert Order echoes those perpetrated by Baron & Budd. Indeed, at least half of the B-reads included on LeBlanc & Waddell's privilege log appear to be withheld in direct contravention of this Court's Order.[20]

- Silber Pearlman: Silber Pearlman's privilege log raises similar issues as those implicated by LeBlanc & Waddell and Baron & Budd logs discussed above and, as a result, similarly reflects continuing violations of the Consulting Expert Order. For instance, according to its log, Silber Pearlman has withheld hundreds of *negative* b-read reports that were created just *after* Silber Pearlman was retained as counsel and just weeks or months *before* any positive diagnosis of asbestos-related disease -- a blatant violation of the Consulting Expert Order.

---

[20] For example, of the law firm's 625 logged B-read reports, 287 are dated prior to or contemporaneously with the dates of initial diagnosis on the privilege log -- again in direct contravention of the Court's orders. In addition, LeBlanc & Waddell's log does not clearly establish that the withheld B-reads and reports also predate or are contemporaneous with the dates that LeBlanc & Waddell was retained. Instead, for almost 300 entries on LeBlanc & Waddell's log, the date that the law firm was retained is listed as "Unknown." In addition, where LeBlanc & Waddell did provide any date information regarding its initial retention, that information is vague and ambiguous. In these instances -- approximately 322 of the withheld B-reads and reports -- the date of retention is listed simply as "before" a particular date. *See id.*

## IV. ISSUES THIS BRIEF DOES NOT ADDRESS.

Grace will address at a later date the significance and impact of the information that has now emerged regarding exposure to Grace products; continued concealment of medical records, and false and misleading representations to the Court. Beyond confirming the failures to comply with the Court's discovery orders, the responses to the Third Set of Interrogatories have revealed material shortcomings in evidence directly relevant to the estimation proceedings. Grace will address these issues separately at a later date.

In addition, as discussed during the June 26th Omnibus Hearing, any issues regarding depositions or discovery of the Early Ludwick & Sweeney or Brayton Purcell law firms have been deferred to a later date. *See* 6/26/07 Hrg. Tr. at 104-06. Consequently, any relief requested or referred to in this brief is not currently addressed to these firms.

Dated: July 19, 2007

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Ellen Ahern
Janet S. Baer
200 East Randolph Drive
Chicago, IL 60601-6636
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

Barbara M. Harding
Amanda Basta
655 Fifteenth Street, NW
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*and*

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB LLP

/s/ James E. O'Neill
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession