## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Case No. 01-1139 (JKF) |
| W. R. GRACE & CO., *et al.,* | ) | Chapter 11 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: Docket No. 16174** |

### DII INDUSTRIES, LLC ASBESTOS PI TRUST'S RESPONSE TO DEBTORS' MOTION TO COMPEL THE DII INDUSTRIES, LLC ASBESTOS PI TRUST TO PRODUCE DOCUMENTS AND APPEAR FOR DEPOSITION

The DII Industries, LLC Asbestos PI Trust (the "Trust"), in support of its Response to Debtors' Motion to Compel the DII Industries, LLC Asbestos PI Trust to Produce Documents and Appear for Deposition[1] (the "Motion to Compel") [D.I. 16174], states as follows:

### INTRODUCTION

The Trust arose out of the Chapter 11 Bankruptcy proceeding styled *In re: Mid-Valley, Inc., et al.*, Case No. 03-35592-JKF, in the United States Bankruptcy Court for the Western District of Pennsylvania, and was established to pay qualified asbestos claims, liabilities and obligations of certain Halliburton and Harbison-Walker Entities. The Trust was formed pursuant to Section 524(g) of the United States Bankruptcy Code and began accepting, processing and paying asbestos-related claims in late 2005.

Debtors in this proceeding are in the process of estimating the amount of money needed to pay asbestos-related claims against the W.R. Grace entities via a similar Section 524(g) trust (the "Estimation Proceeding"). The Trust has learned, through its communication with Debtors during this process and by reading portions of the record attached to Debtors' Motion to Compel,

---

[1] Neither the March 30, 2007, nor the June 12, 2007, subpoenas served by Debtors on the Trust request that the Trust appear for deposition. To the extent Debtors now seek to depose the Trust, the Trust objects for the reasons set forth in this Response.

**DII Trust's Response to Debtors' Motion to Compel – Page 1**

that Debtors have sought discovery from numerous W.R. Grace claimants ("Grace Claimants") and their lawyers for over a year without great success. According to the hearing transcripts attached to the Motion to Compel, Debtors are not satisfied with the asbestos exposure information provided to them by the Grace Claimants and their lawyers. Debtors have now turned to the DII Trust, and other asbestos trusts, to attempt to obtain exposure data about the Grace Claimants.

To that end, Debtors served the Trust with a subpoena issued to produce documents related to some 2100 Grace Claimants on March 30, 2007 (the "Subpoena").[2] Rather than narrowly-tailor the discovery requests to the Trust to cover exposure information only, however, Debtors asked the Trust to produce all documents related to each of the 2100 Grace Claimants that also filed claims with the Trust. However, the seemingly simple request for claim forms and attachments is, in reality, a request for years' worth of an individual's medical records, often accompanied by the individual's death certificate, family history, and personal financial information. Moreover, Debtors' Subpoena can be construed to request information concerning certain of the Trust's decisions related to claims processing – decisions that are not only highly confidential and proprietary, but reflect work product, privileges and matters of Trustee discretion. Such overbroad requests far exceed the boundaries of "exposure information" and appear to be clearly irrelevant to the Debtors' Estimation Proceeding.

The Trust's concerns regarding the production of such information is exacerbated by the fact that the Trust is precluded from producing confidential medical information without the Trust Claimants' written consent and the express order of this Court. Privacy considerations raised by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), in

---

[2] The March 30, 2007 Subpoena was issued out of the Northern District of Texas. By agreement of the Parties, an identical Subpoena was reissued by this Court on June 12, 2007.

**DII Trust's Response to Debtors' Motion to Compel – Page 2**

addition to the express confidentiality provision of the Trust's Trust Distribution Procedures ("TDP") make it impossible for the Trust to comply with the document requests in their current form.

Moreover, producing the documents requested would place an undue burden on the Trust, as a non-party to this proceeding. Debtors assume that because the Trust maintains claim information in electronic databases, producing the requested data would be relatively simple. Debtors fail to recognize that it would take a considerable amount of employee time just to input the 2100 names or social security numbers into the Trust's system to determine the universe of Claimants that overlap between Debtors and the Trust. Once that initial task is completed, significant additional time and money would be required to contain claimants and their counsel for consent, gather the electronic data and comply with the production requests.

Thus, the Trust seeks guidance from the Court regarding compliance with the Subpoena. As the Court is likely aware, the Trust is concerned about the implications and ramifications of disclosing confidential material in this case and in response to similar subpoenas in the future. To date, the Trust has asserted objections to all attempts to subpoena Trust information and has not yet been ordered to produce Trust information to any third party. This Court's decision in connection with the Subpoena will impact the Trust's policies about information sharing going forward. For the reasons discussed below, the Trust requests that the Court deny the Motion to Compel.

## **ARGUMENT**

For multiple reasons, the issues at stake in the Motion to Compel are more complicated than the Motion suggests. First, the scope of the document requests is much broader and more burdensome than what would reasonably satisfy the stated need for the discovery. Second, the

Subpoena seeks confidential, proprietary and (in some instances) privileged data, for which Debtors cannot make a heightened showing of need. Third, Debtors have failed to consider the logistical burden the Subpoena places on the Trust as well. As a non-party to this bankruptcy proceeding, the Trust should not be forced to expend its own resources to comply with Debtors' expedited discovery schedule. Fourth, the Court's decision on the Motion to Compel is likely to extend beyond this Subpoena and these Debtors. Because of the far-reaching implications the Subpoena, the Trust seeks the Court's guidance and suggests that the Motion to Compel be denied.

### A. The Document Requests Are Overly Broad and Not Relevant to Debtors' Estimation Proceeding

In the Motion to Compel, Debtors state that the discovery sought from the Trust is "unquestionably relevant" to the estimation proceeding. Motion at 3. Indeed, Debtors treat the threshold question of relevance as a given, boldly declaring that the Court has "already determined" that "information submitted to other trusts" is relevant. *Id.* Debtors cite to various hearing transcripts where counsel for Debtors discussed obtaining discovery from other asbestos trusts. As a non-party to this bankruptcy, the Trust is obviously unfamiliar with these hearing transcripts and the Court's prior statements regarding discovery. However, it appears from the cited transcripts that the scope of needed discovery from the trusts is only the Grace Claimants' **exposure** to asbestos, namely "what the exposure is, how much it was, when it was." Debtors' Exhibit E to Motion to Compel,[3] at 260; *see also* Debtors' Exhibit F, at 209-10.

What Debtors seek from the Trust far exceeds the narrow scope of "exposure information." The Subpoena requests three categories of documents: (1) all claim forms and

---

[3] Unless otherwise indicated, all references to "Debtors' Exhibit __" refer to the exhibits attached to Debtors' Motion to Compel.

**DII Trust's Response to Debtors' Motion to Compel – Page 4**

attachments submitted by the 2100 Grace Claimants to the Trust; (2) any additional information related to those claimants' exposure to asbestos; and (3) all documents relating to the Trust's consideration of the suspension or acceptance of reports from doctors, screening companies, or B-readers. *See* Debtors' Exhibit A.

The first category of documents – claim forms and attachments – are not merely simple submissions regarding asbestos exposure. A typical claim form may include a Trust Claimant's detailed medical history, including doctor's reports, diagnoses, medications, and oftentimes reveal other medical conditions unrelated to asbestos exposure. *See* Trust Exhibit A, Affidavit of Marcellene Malouf, at ¶ 2. Trust Claimants are also asked to submit information regarding economic damages, such as personal financial documents, and information about their dependents' financial and personal history. *Id.* Besides implicating numerous privacy concerns, which will be discussed below, this extraneous information bears no relevance to the Debtors' Estimation Proceeding. Indeed, medical diagnosis information, a substantial part of all claim submission, would be irrelevant in this context, as all 2100 Grace Claimants are identified by Debtors as mesothelioma claimants. Likewise, an individual Trust Claimant's financial status or family history has no bearing on Debtors' ability to estimate claims in a global setting.

The second category of documents, comprised of "other information" related to each claimant's exposure to asbestos, is also extremely broad and can be interpreted to request the Trust's own internal work product and evaluation of certain exposure sites and products. These analyses are not only privileged and confidential, they are unique to the Trust and wholly unrelated to WR Grace products or work sites.. Moreover, this information would be duplicative of that information included on the exposure portion of a claimants' claim forms. This category of documents should be excluded from production in its entirety.

The third category of documents, information regarding the Trust's consideration of the suspension or acceptance of doctor's reports, is not even addressed by Debtors in the Motion to Compel. These documents are clearly privileged work product of the Trust and appear to be totally unrelated to the Estimation Proceeding. Because Debtors cannot state why these documents are relevant or why the privilege would not apply, the Trust should not be compelled to produce them.

Debtors suggest that they would use discovery from the Trust to determine whether overlapping claimants were submitting "additional, conflicting, or different information" to the Trust that was not provided to Debtors. Motion at 3-4. The Trust shares in Debtors' stated concern that preventing inconsistent or fraudulent claims is beneficial. For this reason, the Trust takes precautions in processing its own claims to prevent fraud against the system. However, Debtors' claims estimation procedure is not the forum for uncovering fraud. Indeed, the Court noted this at the May 21, 2007 hearing. When Debtors insinuated the lack of credibility of a law firm representing many of its Claimants, the Court warned Debtors against seeking discovery that would be better suited in individual claims litigation and reminded them that "this is still an estimation." Debtors' Exhibit F, at 206. The Court went on to state that nothing about the law firm's representation of the Grace Claimants was "inherently suspect" and that any doubts as to the credibility of a particular Claimant should be pursued with the Claimant individually after the Estimation Proceeding. *Id*. at 208. This same rationale applies here and negates this stated justification for the subpoenaed information.

**B.    The Subpoena Requests Confidential and Proprietary Information Protected From Discovery**

There are several objections to the Subpoena based on the confidential and proprietary nature of the information. **First**, the Subpoena calls for the production of confidential

information in the form of both individual claimant data *and* proprietary trust processes. However, the Trust's process of analyzing and settling asbestos claims is kept strictly confidential. Trust Exhibit A at ¶3. While its general guidelines and requirements are published in the TDP, the Trust's internal discretionary, decision-making processes are proprietary and subject to work product protection. *Id.* In many instances, decisions involve privileged communications with counsel and the Trustees. *Id.* Information relating to the Trust's considerations of the acceptance or rejection of reports from medical professionals is clearly proprietary and should remain confidential to protect the integrity of the process. *See* Trust Exhibit A, Affidavit of Marcellene Malouf, at ¶ 4. Even information relating to the Trust's treatment of certain exposure sites, requested in the second document category, is developed to assist the Trust's in claims processing and involves internal work product and privileged communications. *Id.* ¶ 4. Therefore, the document requests, as currently drafted, encompass information that must be protected from release to other trusts. As such, the Trust should be protected from disclosing its confidential processes. *See* Fed. R. Civ. P. 26(c)(7).

**Second**, the TDP dictates that all submissions by Trust Claimants and communications between the Trust and the Trust Claimants are made in the course of settlement discussions and are protected from discovery by a confidentiality provision and other applicable protections. Debtors' Exhibit I § 8.4. Thus, the Trust is required under the TDP to keep Trust Claimants' submissions and communications confidential unless and until the Court issues a valid order requiring production. Such information is submitted by Trust Claimants in the context of settling their personal injury and/or wrongful death claims with the Halliburton and Harbison-Walker entities. Debtors' Exhibit I § 8.4.

Debtors cite several cases in the Motion to Compel holding that the mere existence of a confidentiality agreement cannot shield settlement documents from discovery. Motion at 7. However, these cases do not stand for the proposition that a confidentiality provision in a protective order or a settlement agreement is meaningless. In fact, a recent case out of the Western District of Pennsylvania found that **no court** having addressed the issue of whether a confidentiality provision could protect information from discovery had "blithely permitted discovery, but rather [all] require[d] some heightened showing of relevance or need." *Sippel Dev. Co., Inc. v. Western Surety Co.*, 2007 WL 1115207, at *2 (W.D. Pa. April 13, 2007) (citing *Doe v. Methacton Sch. Dist.,* 164 F.R.D. 175, 176 (E.D. Pa. 1995)).

Here, as discussed above, Debtors have made no "heightened showing of relevance or need" for either the Trust Claimants' full claim submissions to the Trust or data created and used by the Trust in the process of valuing claims. Broad assertions such as "this information is relevant on its face" (Motion to Compel at 4) and "given the clear relevance of this information to the estimation" (*Id.*) without any detail or analysis are insufficient to prove relevance. *Doe*, 164 F.R.D. at 176-77.

Debtors attempt to compare the present situation to a prior discovery dispute in this bankruptcy when Debtors sought to compel production of settlement agreements between Grace Claimants and various other asbestos defendants. Motion at 7. The PI Committee, on behalf of the Grace Claimants, argued that the settlement agreements were protected from discovery because they contained confidentiality provisions. In Debtors' short recap of the dispute on page 7 of the Motion, they neglect to mention that the Court actually refused to order production of the settlement agreements themselves, which were sought in their entirety by Debtors. Debtors' Exhibit J at 282. Instead, the Court narrowly tailored the discovery by requiring the Grace

Claimants to disclose only the identity of the defendant(s), the settlement amount, and the disease claimed. *Id*. In addition, the Court limited the time period for required settlement disclosures based on Debtors actual need. *Id*. at 281. If here, as in the prior dispute, the Court finds a need to grant discovery from the Trust, it should be narrowly-tailored to protect the sensitive information subject to the TDP's confidentiality provision.

**Third**, other federal laws, such as HIPAA, may be implicated by the requests for production of Trust Claimants' medical records. Much of the information submitted by Trust Claimants to the Trust is private medical and personal information. The privacy interests implicated by Debtors' request for claim forms and attachments belong to third parties and not the Trust. As such, the Trust has an obligation under the TDP, HIPAA, and other federal laws to protect the privacy interests of its Claimants. To acknowledge this obligation, the TDP prohibits the Trust from releasing this confidential information without written consent from each affected Trust Claimant and a valid order from the Court.[4] *Id.*

Debtors cite to *Volkswagen of America, Inc. v. Superior Court*, 139 Cal. App. 4th 1481 (Cal. Ct. App. 2006), as an "instructive" case in which the defendant in an asbestos personal injury claim sought discovery of plaintiff's submissions to various asbestos bankruptcy trusts. The *Volkswagen* case is inapposite to the circumstances presented by Debtors' Motion here, because the discovery in *Volkswagen* was sought from the plaintiff himself and not from the trusts.

Debtors emphasize the *Volkswagen* court's reliance on the lack of third party privacy interests in ordering the production. Motion at 7-8. However, this argument only strengthens the

---

[4] Section 8.4 of the TDP states that the Trust may not release confidential submissions and communications absent an order from the Bankruptcy Court. The "Bankruptcy Court" is defined elsewhere in the TDP as the United States Bankruptcy Court for the Western District of Pennsylvania. However, because Judge Fitzgerald presides over both the Trust's bankruptcy proceeding and Debtors' bankruptcy proceeding, the Trust has consented to the jurisdiction of this Court and will abide by this Court's ruling on the Motion to Compel.

**DII Trust's Response to Debtors' Motion to Compel – Page 9**

Trust's position that heightened protection is needed in this case to protect the privacy interests of the Trust Claimants. The *Volkswagen* court actually stated in dicta that the request for discovery from the plaintiff "might implicate the third party privacy interests of the trusts to which [plaintiff] submitted his claims." 139 Cal. App. 4th at 1492, n.9. The court did not perceive a need to complete the analysis, however, as neither party addressed it in briefing and California law is unclear as to whether business entities could have privacy interests. *Id.* The mere mention of the theory is significant to the Court's analysis here, though. Debtors are seeking discovery of confidential medical and personal information relating to *third-party* Trust Claimants *from the Trust*. Because third-party privacy rights are implicated, the Trust seeks protection from disclosing confidential information that has little to no bearing on Debtors' estimation proceeding.

**C.     Compliance With the Subpoena Would Place an Undue Burden on the Trust**

Finally, complying with the Subpoena would subject the Trust to significant undue burden and expense. Debtors correctly identify the factors the Court should consider in analyzing whether the Trust's burden is undue: relevance, the need of the party for the documents, the breadth of the document request, the particularity with which the documents are described, the burden imposed, and the Trust's status as a non-party. *In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 495 (E.D. Pa. 2005). Contrary to Debtors' assertions in the Motion, however, each of these factors points to the conclusion that the Trust's burden is undue.

First, Debtors have not been able to clearly state the relevance for these broad categories of documents to the estimation process or a heightened need for discovery from the Trust, as discussed above. Second, as was also shown above, the Subpoena categories are overbroad relative to the Debtors stated need of "exposure information." Rather than describing the

requested documents with particularity, Debtors essentially requested the entirety of the Trust's confidential and proprietary database regarding certain claimants.

Third, the burden imposed on the Trust is substantial. The Trust segregates claim information by entity – one for Harbison-Walker claims and one for Non-Harbison-Walker (Halliburton) claims. Additionally, the Trust has a completely separate database for approximately 12,000 claims that were filed prior to November 20, 2006 and which have been processed manually. In order to determine which of the 2100 Grace Claimants may also be Trust Claimants would require searching each of these databases. Trust Exhibit A at ¶5. The Trust estimates that the process of entering names or social security numbers of these 2100 individuals would likely take a dedicated worker multiple, full work-days to complete. *Id.* If the search were to be conducted in the Trust's Dallas office, the Trust would be at a significant disadvantage since there are only four full time and two part time employees. *Id.* Due to a recent departure, the Trust is currently short staffed, and it would be a hardship to perform this work. Trust Exhibit A at ¶5. The Trust claims are processed by the Delaware Claims Processing Facility. If the Facility were to perform the work, it would require substantial time, and the Trust would be billed for the project. *Id.* At this time, the Trust has 6 reviewers and a claims manager that perform work at the Facility. To require any of those individuals to perform the project would take them away from processing claims, which would work to the detriment of the Trust's own claimants. *Id.*

Moreover, after the initial search identifies the parameters of the production, the Trust would then be tasked with notifying and obtaining consent from each of the affected Trust Claimants. *Id.* at ¶6. Such a proposition could be expensive and could also prove time consuming, especially if any of the Trust Claimants are not represented by counsel. *Id.* In

addition, this process could be lengthy, as the Trust's experience is that obtaining information from Claimants upon request is often a difficult and a drawn-out process. *Id.*

Moreover, although the Trust is a non-party, it understands that Debtors are attempting to complete the estimation process in the very near future. The Trust, as a non-party, should not be expected to expend its resources for expedited or burdensome discovery. Federal Rule of Civil Procedure 45(c) provides that "an order to compel production shall protect any person who is not a party...from significant expense resulting from the inspection and copying commanded." Fed. R. Civ. P. 45(c)(2)(B); see also *id.* Advisory Committee Note ("A non-party required to produce documents or materials is protected against significant expenses resulting from involuntary assistance to the court."). Based on this rule, "[a] nonparty's legal fees, especially where the work benefits the requesting party, have been considered a cost of compliance reimbursable." *First Am. Corp. v. Price Waterhouse LLP*, 184 F.R.D. 234, 241 (S.D.N.Y. 1998). At a minimum, the Trust requests that any costs associated with compliance with the Subpoena, including internal data entry and collection efforts be borne by the Debtor.

### D.  **Alternatively, the Court Should Narrowly Tailor the Production to Exposure Information Only**

Although the Trust believes that denying the Motion to Compel would be appropriate, if the Court orders discovery from the Trust, it should be narrowly tailored to information related to the affected Trust Claimants' exposure to asbestos only. Moreover, the Trust suggests that the Court order compliance in three phases: (1) Debtors should pay the hourly rate of a Trust employee or representative to perform the name searches on the Trust databases; (2) the Court should allow a reasonable time for the Trust to contact and obtain consent from the affected Trust Claimants; and (3) Debtors should reimburse the Trust for employee time, copying costs, and other expenses involved in notifying claimants and producing the limited exposure

information. In addition, any production by the Trust should be kept strictly confidential used only for the Estimation Proceeding and not for any other purpose by Debtors.

## CONCLUSION

The Trust respectfully requests that this Court enter an order denying Debtors' Motion to Compel, or alternatively, narrowly tailoring the discovery to exposure data only and requiring Debtors to reimburse the Trust for any fees and expenses incurred in complying with such discovery. The Trust further requests that the Court grant it such other and further relief to which it may be entitled.

Dated: July 20, 2007
      Wilmington, DE

**CROSS & SIMON, LLC**

By: /s/ Christopher P. Simon
Christopher P. Simon (No. 3697)
913 North Market Street, 11th Floor
Wilmington, Delaware 19899-1380
(302) 777-4200
(302) 777-4224 (Facsimile)

-and-

**HUGHES & LUCE, L.L.P.**
Beth W. Bivans (TX Bar No. 00797664)
Craig W. Budner (TX Bar No. 03313730)
1717 Main Street, Suite 2800
Dallas, Texas 75201
(214) 939-5500
(214) 939-6100 (Facsimile)

**ATTORNEYS FOR THIRD-PARTY DII INDUSTRIES, LLC ASBESTOS PI TRUST**