IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Trial Date:  July 30-31, 2007** |
| | ) | |
| | | **Related Docket No. 16149, 16251** |
| | | **16298 and 16353** |

## DEBTORS' REPLY BRIEF FOR THE JULY 30-31, 2007 STATUTE OF LIMITATIONS HEARING ON CERTAIN MOTLEY RICE CLAIMANTS' ASBESTOS PROPERTY DAMAGE CLAIMS

The Motley Rice claimants do not dispute the overwhelming evidence from their own claim submissions that conclusively shows they knew or should have known of their claims against Grace more than three years before Grace's Chapter 11 filing.  Implicitly recognizing that their claims are time-barred under the applicable three-year limitations periods, the Motley Rice claimants now assert that they are exempt from application of that law.  Specifically, the Washington Claimants assert that they are exempt from any statute of limitations and CHP asserts that Delaware's borrowing statute does not apply to its claim.  The Motley Rice claimants are wrong on both counts.

**I.     The *Nullum Tempus* Doctrine Does Not Apply To The Washington Claimants' Time-Barred Claims.**

For the reasons set forth in Debtors' Motion in Limine To Exclude Testimony and Evidence of *Nullum Tempus* Status at the July 30 and 31, 2007 Statute of Limitations Hearing on Certain Motley Rice Claimants' Asbestos Property Damage Claims [Docket No. 16353], which are incorporated herein by reference, the Washington Claimants waived any *nullum tempus*

protection to which they might otherwise have been entitled.[1]  Even if the Washington Claimants

had not waived that protection, however, their claims still would be time-barred because the

*nullum tempus* doctrine, as construed by the Washington courts, does not apply to their claims.

Under Washington law, a governmental entity is only entitled to *nullum tempus*

protection if its actions, which led to the litigation, were taken in a sovereign, as opposed to a

proprietary, capacity.  *See Washington Public Power Supply Sys. v. General Electric Co*

*("WPPSS"),* 778 P.2d 1047, 1051 (Wash. 1989) (en banc).  Governmental entities can and often

do engage in both capacities.  *See City of Moses Lake v. United States of America,* 430 F. Supp.

2d 1164, 1176 (E.D. Wash. 2006).

Actions are brought in a sovereign capacity when the action arises out of the exercise of

powers traceable to the sovereign powers of the State which have been delegated to the entity.

*See WPPSS,* 778 P.2d at 1049.  In determining whether the claimant's action is sovereign or

proprietary, the court "may look to the constitutional or statutory provisions indicating the

sovereign nature of the power, and . . . may consider . . . traditional notions of powers which are

inherent in the sovereign."  *Id.* at 1051.  Thus, it is the "character or nature of the conduct" of

the entity, not the effect of that conduct, which determines whether the *nullum tempus* doctrine

applies.  *Id.* at 1049-50.  As a result, each case turns upon its own facts.  *Id.* at 1051.

Under this standard, the Washington courts have taken a very narrow view of *nullum*

*tempus* protection.  In *WPPSS,* for example, the Washington Supreme Court held that the

Washington Public Power Supply System (the "WPPSS") was not entitled to *nullum tempus*

protection for its breach of contract claim relating to a nuclear power system.  The Court

recognized that:  (1) the State created WPPSS by statute for the specific purpose of generating

electric energy; (2) the Governor had certain appointment and removal power over WPPSS's

---

[1]    Specifically, the Washington Claimants' waived *nullum tempus* protection by failing to
       timely raise it as a defense in these proceedings.  *See, e.g., Township of Indiana v.*
       *Acquisitions & Mergers, Inc.* 770 A.2d 364, 370-373 (Pa. Commw. 2001).  In addition,
       sovereign immunity principles like *nullum tempus* have no place in evaluating proofs of
       claims.  *See Central Virginia Community College v. Katz,* 126 S.Ct. 990 (2006).

executive board; (3) the State regulated and facilitated WPPSS; and (4) the Legislature declared the development of resources to be "in the public interest and for a public purpose." *Id.* at 1052-53. The Court nevertheless held that the WPPSS does not exercise a delegated sovereign power in providing energy to the citizens of the State of Washington because supplying electric energy is not a sovereign function of the State. *Id.* at 1054.[2]

Under the exacting standard adopted by the Washington courts, the Washington Claimants are not entitled to the benefit of *nullum tempus* because their claims are proprietary in nature and do not relate to their exercise of a sovereign power that has been delegated to them by the State of Washington.

A.    **The Claims Of WSU and Edmonds Do Not Arise From Their Exercise Of A Sovereign Power.**

Washington State University ("WSU") and Edmonds Community College ("Edmonds") do not exercise sovereign functions; they are commercial institutes of higher education. The Washington Constitution does not mandate the creation of institutes for higher education by the State which, historically, has been a private rather than a public undertaking. *Bowen v. City University of New York*, 294 A.D.2d 322, 322 (N.Y.A.D. 2002) ("[T]he ownership and operation of a college campus is a proprietary function.").

In fact, Washington statutes make clear that state colleges and universities are commercial entities that compete with private businesses providing the same services. RCW 28B.63.010 ("in providing goods and services for fees, [institutes of higher education] may be competing with local private businesses."). Recognizing that state colleges and universities are not created to serve the state's broad public interests, Washington has created a separate higher education coordinating board to "[r]epresent the broad public interest ***above the interests of the***

_____

2    Similarly, in *City of Algona v. City of Pacific*, 667 P.2d 1124 (Ct. App. Wash. 1983), a Washington court held that *nullum tempus* had no application to a City's claim for breach of a sewer maintenance and operation agreement because furnishing sewer facilities is not a sovereign function. *City of Algona*, 677 P.2d at 1126; *see also City of Moses Lake*, 430 F. Supp. 3d at 1176 (city's operation of its municipal water supply was voluntary and proprietary and accordingly not subject to *nullum tempus* protection).

*individual colleges and universities*." RCW 28B.76.030 (emphasis supplied). WSU and

Edmonds accordingly were established for the purpose of exercising a strictly proprietary

function rather than a delegated state sovereign function and are not entitled to *nullum tempus*

protection.

### 1.    WSU's Asbestos Property Damage Claims Do Not Arise Out Of Its Exercise Of A Sovereign Power.

WSU is governed exclusively by a Board of Regents that functions independently from

the State of Washington. RCWA 28.B.30.095. The Board is charged with the management of

WSU as well as "the care and preservation of all property of which the institution shall become

possessed" and "the erection and construction of all buildings necessary for the use of said

university . . . ." *Id.* The Board has the right "to cause all things to be done necessary" for the

operation of WSU. *Id.* The Board has "full control of the university and its property . . . ."

RCWA 28B30.150.[3]

The Board of Regents is vested with the exclusive authority to "direct the disposition of

all money" belonging to WSU. *Id.* The Board specifically is empowered to contract for the

construction and improvement of WSU buildings. RCWA 28B.30.720. To finance these

activities, the Board is authorized to issue bonds which are secured by the pledge of revenue

received from WSU student tuition. *Id.; see also* RCWA 28B.15.025; 28B.15.310. The bonds,

however, are *not* an obligation, either general or special, of the State. RCWA 28B30.730.

The purpose of WSU is to "provide higher education in such fields as may be established

therein from time to time by the board of regents or by law . . . ." RCWA 28B.30.015. In this

capacity, WSU competes with private universities that offer the same educational opportunities

to their students. RCWA 28B.63.010. There is no indication in the Washington State

Constitution or statutory law that WSU exercises any delegated sovereign function.

---

3    The Board of Regents consists of private citizens appointed by the governor. As the
Washington Supreme Court recognized in *WPPSS*, the governor's appointment of the
Board of Regents does not bear on the inquiry as to whether it exercises a sovereign
function in the maintenance of WSU buildings. *See WPPSS*, 112 Wn.2d at 299.

Moreover, the buildings for which WSU has submitted claims in these proceedings are predominately dining and residence halls. WSU is not required by constitution or statute to provide student housing, but does so purely to generate revenue for WSU. Any claims relating to these buildings are proprietary in nature and do not relate to any state-delegated sovereign power.

### 2. Edmonds Similarly Does Not Exercise A Sovereign Power Of The State In The Maintenance of Lynnwood Hall.

As a part of an "independent system of community and technical colleges," Edmonds is governed by a Board of Trustees under the supervision of an independent board for community and technical colleges (the "College Board"), both of which are separate and distinct from the State. RCWA 28B.50.020, 28B.50.050, 28B.50.100. The Board of Trustees is charged with the management of Edmonds. RCWA 28B.50.140. The Board of Trustees also controls all fees and other income generated by Edmonds. RCWA 28B.50.320.

As a community college, Edmonds' purpose is to meet the needs of the local community and students it serves. RCWA 28B50.020. Edmonds directly competes with private institutions that offer educational services to the local community. RCWA 28B.63.010. Like WSU, there is no indication in the Washington Constitution or statutory law that Edmonds exercises any state-delegated sovereign function.

Lynnwood Hall, the building for which Edmonds has submitted its claim, is an administrative building used, *inter alia*, for the collection of student tuitions. As such, Lynnwood Hall is dedicated to the generation of revenue for Edmonds rather than directly for the provision of higher education. Edmonds' asbestos property damage claims relating to Lynnwood Hall are proprietary rather than sovereign in nature.

In light of the foregoing, the asbestos property damage claims of WSU and Edmonds arise out of purely commercial rather than sovereign activities. The State of Washington is not required to provide its citizens with a college education which has traditionally been a private function. The maintenance of university buildings, particularly residence and dining halls, is not

the delegation of a sovereign function to which the *nullum tempus* doctrine might apply. Thus, neither of these claimants are entitled to invoke the *nullum tempus* doctrine to avoid the clear running of the applicable statutes of limitations.

The claims of WSU and Edmonds are distinguishable in this respect from the school board's claims at issue in *Bellevue Sch. Dist. No. 405 v. Brazier Constr. Co.,* 103 Wn.2d 111, 114 (1984), upon which the Washington Claimants rely. Under Washington's Constitution, the State is required to provide public education for the States' children. Specifically, the Washington Constitution provides that *"[i]t is the paramount duty of the state to make ample provision for the education of all children* residing within its boarders, without distinction or preference on account of race, color, caste or sex." Washington State Constitution, Article IX, Section 1 (emphasis supplied).

Given that the State is constitutionally charge with providing primary and secondary education, it is not surprising that the courts have extended *nullum tempus* protection to school boards' claims for asbestos property damage in primary and secondary schools. *See Bellevue,* 103 Wn.2d at 114.

The state constitution, however, does *not* charge the State of Washington with the "paramount" duty of providing a college education to all Washington citizens. WSU and Edmonds are not exercising sovereign functions by competing with private universities to provide a college education in exchange for the payment of substantial tuitions. Because WSU and Edmonds are not exercising a sovereign function in connection with their asbestos property damage claims, they are not entitled to *nullum tempus* protection for those claims. *See WPPSS,* 778 P.2d at 1049.

The Washington Claimants point to no Washington authority granting WSU, Edmonds or any state-related university *nullum tempus* protection. That is because, under Washington's specific and restrictive *nullum tempus* jurisprudence, neither WSU nor Edmonds qualifies for such protection for their asbestos property damage claims.

Implicitly recognizing that Washington law provides them no safe harbor in the context

of *nullum tempus* law, WSU and Edmonds rely upon a single case from New Jersey in claiming *nullum tempus* protection. The court's decision in *Rutgers, State University of New Jersey v. Grad Partnership*, 634 A.2d 1053 (N.J. Super. 1993), however, is inapposite in determining application of Washington's *nullum tempus* doctrine.

The *Rutgers* court did not analyze *nullum tempus* using the sovereign/proprietary dichotomy adopted by Washington; instead, it based its analysis on whether Rutgers was a state agency. *Id.* at 149-50.[4] Because the *Rutgers* court applied a different test than that adopted by Washington courts, *Rutgers* is inapposite to the analysis of whether WSU and Edmonds are entitled to *nullum tempus* protection.[5] Under Washington jurisprudence, they are not.

**B.     The Port of Seattle's Claims For The Seattle-Tacoma Airport Are Not Entitled To *Nullum Tempus* Protection**

The Port of Seattle's claims for alleged asbestos property damage in its Seattle-Tacoma Airport ("Sea-Tac Airport") similarly are not entitled to *nullum tempus* protection.

The Port of Seattle is a municipal corporation created by statute to develop commercial transportation facilities in its respective county. *See* RCW 53.04.010(1). It is governed by a Commission that is elected solely by the citizens of King County. *See* Motley Rice Trial Brief at 10. The Port of Seattle, accordingly, is designed to serve local rather than state sovereign interests.

The Port of Seattle was not required, by Constitution, statute or otherwise, to construct the Sea-Tac Airport. Because the attack on Pearl Harbor increased the military's needs to use existing airports, the federal government offered a $1 million grant to a local authority that

---

4       Other courts have found that the operation of a college is a proprietary function and not entitled to *nullum tempus* protection. *See Northhampton County Area Cmty. Coll. v. Dow Chemical, U.S.A.*, 566 A.2d 591 (Pa. Super. Ct. 1989); *Bd. of Tr. of Bergen Cmty. Coll. v. J.P. Fyfe, Inc.*, 471 A.2d 38, 40 (N.J. Super. 1983); *Bd. of Tr. of Bergen Cmty. Coll. v. J.P. Fyfe, Inc.*, 457 A.2d 83, 88 (N.J. Super. 1982); *State v. Sergent, Hauskins & Beckwith, Inc.*, 556 P.2d 23 (Ct. App. Az. 1976).

5       The New Jersey Supreme Court ultimately abrogated *nullum tempus* all together with respect to contractual matters. *New Jersey Educ. Facilities Auth. v. Gruzen P'ship*, 592 A.2d 559, 561 (N.J. 1991). *Rutgers* therefore is an aberration in *nullum tempus* law.

would undertake the development of a new regional airport. The Port of Seattle accepted the federal grant and completed construction of the Sea-Tac Airport in 1944.

The creation and operation of airports is not required by the Washington State Constitution and is not a traditional sovereign function. In fact, even the Washington statute upon which the Port of Seattle relies makes clear that *the operation of airports is a county and municipal function, not a state sovereign function*. *See* RCWA 14.08.020. There is no constitutional or statutory authority for the proposition that the Port of Seattle is exercising a sovereign function of the State of Washington in electing to construct and operate an airport with the aid of federal funding.

The Sea-Tac Airport is *not* owned by the State of Washington. *See* Motley Rice Trial Brief at 8. It is operated as a commercial enterprise with private companies paying a premium to operate on the premises. There is no constitutional provision for the establishment of the Sea-Tac Airport and the Port of Seattle undertook that project voluntarily. Under these circumstances, the Port of Seattle is not entitled to *nullum tempus* protection for its asbestos property damage claims. *See City of Moses Lake*, 430 F. Supp. 2d at 1176 (city not entitled to *nullum tempus* protection in operation of water supply that was not constitutionally required but that city chose to operate voluntarily).

This conclusion is further supported by the position that the Port of Seattle has taken in prior litigation. In *Port of Seattle v. Lexington Ins. Co.*, 48 P.3d 334 (Wash. Ct. App. 2002), for example, the Port of Seattle did not raise the *nullum tempus* doctrine in fully litigating a statute of limitations defense to its computer-related insurance claim. As even the Port of Seattle implicitly recognized in *Lexington*, its commercial and proprietary activities, such as the operation of the Sea-Tac Airport, are not entitled to *nullum tempus* protection.

## II.    CHP's Claims Are Subject To Delaware's Three-Year Statute Of Limitations.

CHP's assertion that the Delaware borrowing statute does not apply to its claim ignores the clear language of the statute, the reasoning of *Saudi Basic,* and this Court's prior rulings. Specifically, this Court has already found that asbestos property damages claims brought in these

Chapter 11 proceedings are subject to Delaware's borrowing statute.[6]

While the *Saudi Basic* court declined to apply the Delaware borrowing statute to a compulsory counter-claim where it would allow the plaintiff to benefit from its own forum shopping, there is no reason to depart from the clear language of the Delaware borrowing statute here. There is no evidence that Grace (a Delaware corporation) engaged in forum shopping when it filed its Chapter 11 petition in Delaware. More importantly, it was not Grace that chose this forum. Rather, the Motley Rice claimants chose this forum by: (1) failing to file their claims pre-bankruptcy in another forum; and (2) deciding to file proofs of claims with the Court rather than to seek relief from the stay to initiate an action in a different forum.

The Motley Rice claimants have offered no basis for the Court to ignore the plain language of the Delaware borrowing statute and the law of this case. Under the Delaware borrowing statute, Delaware's three-year statute of limitations – not New Jersey's six-year statute of limitations – applies to CHP's claims. *See* Grace's Trial Brief at 15.

### III.    Grace Need Not Show "Contamination" To Establish That The Motely Rice Claims Are Time-Barred.

Much of Motley Rice's trial brief is premised on the faulty assumption that Grace must show "contamination" to start the running of the applicable statutes of limitations. None of the jurisdictions that are even potentially at issue (Washington, New Jersey or Delaware) have adopted a "contamination" standard with respect to asbestos property damage claims. Instead, the applicable statutes of limitations begin to run when the claimant knew or should have known of their claims. *See* RCWA § 7.72.060 (3); *Becker v. Hamada, Inc.*, 455 A.2d 353 (Del. 1982).

Here, based on the information in their own claims files – including substantial asbestos surveys, removal projects, and prior litigation – there can be no dispute that the Motely Rice claimants knew or should have known of their claims well before the applicable three-year

---

6      *See* Order Disallowing and Expunging as Time-Barred Two Asbestos PD Claims Filed by Prudential Insurance Company on Account of Building Located in Georgia [Docket No. 13456] at 1.

limitations periods ran. *See* Grace's Trial Brief at 3-11, 15. Under these circumstances, their claims are time-barred and should be disallowed and expunged.

## CONCLUSION

In light of the foregoing, the Motley Rice claimant's time-barred asbestos property damage claims should be disallowed and expunged following the July 30-31 hearing.

Dated:  July 23, 2007

REED SMITH LLP
James J. Restivo, Jr., Esq. (#10113)
Lawrence Flatley, Esq. (#21871)
Douglas E. Cameron, Esq. (#41644)
Traci S. Rea, Esq. (#76258)
435 Sixth Avenue
Pittsburgh, PA  15219
Telephone:  (412) 288-3131
Facsimile:  (412) 288-3063

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
Telephone:  (312) 861-2000
Facsimile:  (312) 861-2200

And

PACHULSKI STANG ZIEHL YOUNG JONES &
WEINTRAUB LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Michael R. Seidl (Bar No. 3889)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

By: _____
Co-Counsel for the Debtors and Debtors
in Possession