**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br>W.R. GRACE & CO., *et al.*,<br>Debtors. | ) Chapter 11<br>)<br>) Case No. 01-1139 (JKF)<br>) Jointly Administered<br>)<br>) **Objection Deadline: July 27, 2007 @ 5: 00 p.m.**<br>) **Hearing Date: August 1, 2007 @ 8:30 a.m. (Pittsburgh, PA)**<br>**Related Docket Nos.: 15703, 15705, 15707, 15709, 15711,<br>15713, 15715, 15717, 15719, 15721, 15723, 15730, 15732,<br>15734, 15735, 15738, 15740, 15741, 15744, 15746, 15748,<br>15950, 15955, 15959, 15966, 15987, 16059, 16322, & 16323** |

**OPPOSITION OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY
CLAIMANTS AND DAVID T. AUSTERN, LEGAL REPRESENTATIVE FOR FUTURE
ASBESTOS PERSONAL INJURY CLAIMANTS, TO GRACE'S RENEWED REQUEST
<u>FOR ATTORNEY DEPOSITIONS</u>**

Here we go again.  W.R. Grace now seeks to depose three law firms which have fully

answered its "Questionnaire Response Process" Interrogatories, and states that it now wants to

send the same interrogatories to at least 17 more firms.  The request should be denied because it

violates the Federal Rules and is completely baseless, unnecessary and wasteful of estate

resources.

Indeed, if for no other reason, denial of Grace's motion is required in view of the

unambiguous words of Grace's own estimation expert, Thomas Florence.  At the outset of his

June 18 estimation expert report, Mr. Florence states:

> In a typical asbestos bankruptcy estimation, the information necessary for
> determining which claims would meet these criteria [*i.e.* the medical and exposure
> criteria Grace directed him to assume] would not be available.  However, in this
> case the Court approved the use of a Personal Injury Questionnaire ("PIQ") for
> the purpose of gathering demographic, medical and exposure information
> concerning all claims pending against Grace at the time of the bankruptcy
> ("pending claims").  The Court also required all pending claimants to file a timely
> Proof of Claim ("POC") or the claim would be forever barred from being filed
> against a Trust in the future.  <u>The data gleaned from these two requirements</u>
> <u>allowed the estimation of valid Grace claims based on the above criteria.</u>

(Florence June 2007 Expert Witness Report at 2-3 (excerpt attached as Exhibit 1) (emphasis added)).  Having said that, Mr. Florence's report sets forth his estimation opinions of Grace's asbestos personal injury liabilities, with no ifs, ands or buts.  Nowhere does Mr. Florence —  nor any other Grace expert — even suggest that he needed the discovery now sought by Grace's counsel in order to prepare his June 18 estimation report; nor does Mr. Florence or any other Grace expert allege that they need more information in order to supplement their reports.  Far from it, Grace's estimation expert reports were complete as of June 18, and Mr. Florence took the opportunity to state affirmatively that he had all the PIQ and POC information that he needed.  The Florence report alone is dispositive of this motion and provides ample basis for this Court to finally end Grace's crusade for unnecessary and irrelevant discovery from the claimants' law firms.

In addition to the Florence report, the Court can and should preclude the depositions and additional interrogatories for the following reasons:

- Grace has far exceeded the 10 fact witness deposition limit permitted under the Federal Rule 30 and should not get any more depositions beyond those it has already taken.

- The Court long ago ruled that discovery directed to claimant law firms was generally not permissible.

- There is no provision in the federal rules to send interrogatories to non-parties such as the law firms that represent claimants.  The four firms that agreed to answer such interrogatories did so as a substitute for depositions, not a precursor.

## I.    THE EXPERT ESTIMATES HAVE BEEN FILED; MORE CLAIMANT DISCOVERY IS UNNECESSARY AND WASTEFUL.

The discovery directed at claimants was permitted by this Court solely because Grace said its experts "needed" the discovery to estimate the total amount of money it will cost Grace to resolve present and future claims.  Specifically, the Court explained that:

> This process [the Questionnaire Process] is to help anybody's expert [get] the information that they need to try to convince me of what the existing and future asbestos personal injury claims will be, and how much it's going to cost to resolve them. That's what this is for. And nothing else . . . . <u>The point was that this is for estimation purposes, not for allowance and disallowance purposes</u>.

September 25, 2006 Hearing Transcript at 166, 194, emphasis added (excerpt attached as Exhibit 2).

The estimation experts have now provided expert witness reports containing their estimates of Grace's liability for asbestos personal injury claims. As shown above, Grace's expert, Mr. Florence, never stated anywhere in his report that he was lacking any information from claimants needed to make an estimate using Grace's assumptions and methodology about what constituted a "valid" claim. To the contrary, his report demonstrates that no more claimant discovery is necessary: "<u>The data gleaned from these two requirements allowed the estimation of valid Grace claims based on the above criteria</u>." Florence June 2007 Expert Witness Report at 2-3 (Exhibit 1) (emphasis added). Mr. Florence's words directly belie the arguments of Grace's counsel that additional discovery is somehow needed. According to Grace's estimation expert, there is no need whatsoever. The Court's inquiry can end right here.

Indeed, the Court should recall that Grace has already taken massive discovery from claimants that it ultimately did not use. Long before the Court ever entered its Order regarding attachments to the PIQ, Grace's PIQ specifically required claimants to attach medical reports, exposure affidavits, work histories, interrogatory answers, and other materials they had in their possession relevant to an asbestos personal injury lawsuit. In response, the claimants duly produced over 4 million pages of documents. Yet in March, Grace admitted that it could never hope to read all of the documents produced for more than a small sample of PIQ responses, as follows:

> "For instance, as part of work undertaken at the direction of its estimation experts, Grace, using an outside vendor, has coded a sample of approximately 2,000 Questionnaire responses and their attachments.  That work took 2 months and is still ongoing, as supplemental materials also must be coded.  At that rate and given the approximately 100,000 Questionnaires that have been submitted to date, it would take an estimated 8 years to code all information contained in all attachments submitted in connection with the Claimants' questionnaire responses . . ."

March 26, 2007 Grace Reply to ACC/FCR Motion to Compel Creation of Complete Navigable Database at 9 (excerpt attached as Exhibit 3).  Three months later, Mr. Florence specified that only 3,217 PIQs with attachments (less than 4% of over 100,000 PIQs returned) were ever reviewed in their entirety.  *See* Florence June 2007 Expert Witness Report at 4 (excerpt attached as Exhibit 1).

Now Grace is again initiating wasteful discovery in the guise of "Questionnaire Response Process" Interrogatories and depositions of claimant law firms.   Indeed, while Grace apparently found the interrogatory responses it already has unhelpful, it wants to send the interrogatories to more law firms, presumably so the cycle can begin again.  Whether Grace has in mind some kind of iterative process, with each round of interrogatories and depositions spawning revised expert reports, is unclear.  But the Court should take the word of Grace's own estimation expert that he needs nothing more, and shut down Grace's counsel's unending and improper harassment of claimants' law firms.

## II.    GRACE HAS ALREADY FAR EXCEEDED THE NUMBER OF DEPOSITIONS PERMITTED UNDER THE FEDERAL RULES.

### A.    Grace is Limited to 10 Depositions Without a Written Stipulation or an Order from the Court.

Federal Rule of Civil Procedure 30 limits the number of depositions available to Grace to 10 absent leave of court or written stipulation of the parties:

> A party must obtain leave of court, which shall be granted to the extent
> consistent with the principles stated in Rule 26(b)(2) . . . if, without the written
> stipulation of the parties,
>
> (A) a proposed deposition would result in more than ten depositions being
> taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by
> third-party defendants.

Fed. R. Civ. P. 30(a)(2)(A).  When parties send out deposition notices in violation of this rule,

the Court may prohibit the depositions.  *See, e.g.*, Harry A. v. Duncan, 223 F.R.D. 536, 538-539

(D. Mont. 2004) (quashing 85 deposition notices issued without leave of court to exceed Rule 30

limits).  In this estimation proceeding, Grace has already taken or noticed 18 depositions,

primarily of doctors and B-readers.  This is eight in excess of the limit.  Under Rule 30, Grace

may not take any more depositions absent agreement of the parties or leave of Court.

At the June 26, 2007 Hearing the Court made clear that it would set a "hard cap" on the

number of fact witness depositions, as follows:

> Yes, I am going to set a cap on the number of depositions on all sides, yes. The
> rules of civil procedure have already set them and to the extent they've been
> exceeded nobody has asked for authority to vary them. This case is not that
> unusual, it's just another case. There is no reason in this Court's view why
> massive numbers need to be taken. So yes, I think that is appropriate.

Hearing Transcript, June 26, 2007 at 80 (excerpt attached as Exhibit 4).

We respectfully submit that a cap of 15 fact witness depositions per side is sufficient for

the Estimation Proceeding, and Grace has already exceeded that cap.  Even if the Court were

inclined to double the number of fact witness depositions from the number permitted under the

Rule to 20 depositions per side, the taking of these three depositions would cause the debtor to

exceed even a 20 deposition limit.

## III.    THE COURT HAS ALREADY BARRED DISCOVERY OF CLAIMANTS' ATTORNEYS.

In addition to violating the Federal Rules, this latest discovery foray attempts to repeat a scheme that this Court has already considered and barred. In September 2005, citing the ruling made that year by Judge Janis Jack in the silica litigation, Grace sought permission to serve a questionnaire on the claimants' attorneys to obtain "information relating to direct or indirect financial relationships between the lawyers, screening companies, doctors or other law firms." *See* September 9, 2005 Debtors' Emergency Motion for Leave to Take Discovery of Claimants' Attorneys at 16 [Docket # 9382]. The Court appropriately denied Grace's motion because it implicated a host of privilege issues. The Court also ruled that a massive search for unknown and unspecified alleged improprieties was irrelevant to the estimation proceeding:

> I'm not permitting the questionnaire. . . . There may be attorney-client privilege. There may be work product. There could be all sorts of problems. . . . If you've got need for specific discovery, focused on a specific area, you can take it and we'll deal with it piecemeal. But overall, I am not going to permit these broad-based questions. I didn't permit them with the individuals. I'm not going to permit them with the lawyers. . . . So tailor your questions if you have some need to this specific whatever it is that you're looking for so that when I say, what's the relevance, you can tell me how it fits to a particular strategy, theory, piece of evidence, whatever in the estimation hearing, because this doesn't. This is not enhancing that process.

October 24, 2005 Transcript of Omnibus Hearing before Hon. J. Fitzgerald at 81:18 - 82:19 (excerpt attached as Exhibit 5). *See also* December 16, 2005 Order Denying Debtors' Emergency Motion for Leave to Take Discovery of Claimants' Attorneys at 2 (attached as Exhibit 6).

Grace's instant request to depose the law firms is nothing more than a repeat of the barred questionnaires, this time dressed up as inquiries about the firms' internal procedures in responding to discovery. According to Grace's counsel, the purpose of this renewed discovery, is to inquire

> whether they [the claimants' law firms] made contact with other
> counsel for other firms, whether they obtained documents with the
> possession, custody and control of the other firm.  Did they go to
> the doctors, did they or did they not?

May 8, 2007 Transcript of Hearing before Hon. J. Fitzgerald at 185 (excerpt attached at

Exhibit 7).  The Court should deny this request for the same reasons it rejected Grace's

law firm questionnaire in 2005.  First, the privilege implications are obvious.  Second, the

relationship among law firms and doctors is completely irrelevant to an estimate of

Grace's asbestos personal injury liability.  It should also be rejected because of the undue,

and wholly unnecessary burden it would place on the law firms and the estate.

## IV.    INTERROGATORIES MAY NOT BE DIRECTED AT NON-PARTIES, AND THE AGREEMENT BY FOUR FIRMS TO ANSWER INTERROGATORIES WAS AS A SUBSTITUTE FOR DEPOSITIONS, NOT A PRECURSOR.

There is no provision in the Federal Rules of Civil Procedure for interrogatories directed

to non-parties.  Whatever the status of individual claimants with regard to the Estimation

Proceeding, it is clear that the lawyers for those claimants are neither parties to the Estimation

nor parties to the Grace bankruptcy case.  Thus, if Grace wants to ask those lawyers questions, it

can do so (absent agreement from the lawyers) only through depositions.

As noted above, even though interrogatories are not permissible discovery devices when

directed to non-parties, and even though Grace has exceeded the number of depositions

permitted to it under the Federal Rules, four law firms – Baron & Budd, Motley Rice, the Law

Offices of Peter Angelos, and Kelly & Ferraro – agreed to answer Grace's "Questionnaire

Response Process" Interrogatories as a substitute for sitting for a deposition, not as a preliminary

to the deposition.

The four firms fully responded to Grace's Interrogatory answers – none refused to answer the questions.[1] Now, Grace seeks depositions to "follow up" on things it says are unclear or incomplete from the responses. What started as a process to obtain information which Grace's counsel asserted could be obtained "in five minutes" from a lawyer from one of firms has now morphed into yet another round of discovery – depositions of three firms and interrogatories to 17 others. There is no provision in the Federal Rules to permit Grace to serve interrogatories on these other firms, and as noted above it has exceeded the number of depositions permitted to it under the Rules.

(REMAINDER OF PAGE INTENTIONALLY LEFT BLANK)

---

[1] Despite the fact that the interrogatories Grace actually served were far more numerous and burdensome to answer than the handwritten version distributed in Court on June 26, none of the firms refused to answer the revised set.

## CONCLUSION

Enough is enough.  Grace, the ACC and FCR have exchanged expert witness reports

from over 30 expert witnesses.  The estimation experts have provided competing estimates of

Grace's asbestos liability.  The parties now need to focus on expert discovery, and not waste

another minute on discovery directed to claimants and claimants' law firms.  The Court should

deny both Grace's request to depose the three law firms and its stated request to serve the

"Questionnaire Response Process" Interrogatories on numerous other firms.

Dated: July 27, 2007

Respectfully submitted,

CAMPBELL & LEVINE, LLC                     PHILLIPS, GOLDMAN & SPENCE, P.A.

*/s/ Mark T. Hurford*                          */s/ James P. Hall*
Marla R. Eskin (#2989)                     John C. Phillips, Jr. (#110)
Mark T. Hurford (#3299)                    James P. Hall (#3293)
800 King Street, Suite 300                 1200 North Broom Street
Wilmington, DE 19801                       Wilmington, DE 19806
Telephone:  (302) 426-1900                 Telephone: (302) 655-4200

- and –                                    - and -

CAPLIN & DRYSDALE, CHARTERED                ORRICK, HERRINGTON & SUTCLIFFE LLP
Elihu Inselbuch                            Roger Frankel
375 Park Avenue, 35th Floor                Richard H. Wyron
New York, NY 10152-3500                    Raymond G. Mullady, Jr.
Telephone:  (212) 319-7125                 Debra L. Felder
                                           3050 K Street, NW
Nathan D. Finch                            Washington, DC 20007
Walter B. Slocombe                         Telephone:  (202) 339-8400
James P. Wehner
One Thomas Circle, NW                      John Ansbro
Washington, DC 20005                       666 Fifth Avenue
Telephone:  (202) 862-5000                 New York, N.Y.  10103-0001
                                           Telephone:  (212) 506-5000

*Counsel for the Official Committee of*
*Asbestos Personal Injury Claimants*          *Counsel for David T. Austern,*
                                           *Future Claimants' Representative*

Doc #288025 v2                        {D0090030.1 }9