# Exhibit 1

# Estimation of the Number and Value of Pending and Future Asbestos-Related Personal Injury Claims: W.R. Grace

Prepared for WR Grace
By B. Thomas Florence, Ph.D.
ARPC
June 18, 2007

filed against Grace from 2001-2039. As with all of ARPC's pre-petition estimates on behalf of Grace, this estimate was also based solely on Grace's tort system experience.

### *1.2 Current*

ARPC has now been asked to estimate the Grace pending and future asbestos personal injury claim liability under a specific set of assumptions. These assumptions are based on the premise that only claimants whose claims met the following criteria would be able to sustain their burden of proof that their claims against Grace are valid, and therefore, their claims should be valued as part of the estimation process:

1. A Proof of Claim ("POC")
2. Minimum exposure criteria:
   - Nature of exposure to Grace asbestos containing products must be one of the following types (as described in Part 3 of the Personal Injury Questionnaire ("PIQ")):
     - a worker who personally mixed Grace asbestos-containing products
     - a worker who personally installed Grace asbestos-containing products
3. Minimum causation criteria for Lung Cancer claims of:
   - Diagnosis of asbestosis based on the B-Reader report of a reliable B-Reader
   - Reproducible ILO score of 1/0 or greater
4. Minimum medical criteria for Other Cancer claims of:
   - Diagnosis of laryngeal cancer
5. Minimum medical criteria for all Nonmalignant claims of:
   - Diagnosis of asbestosis or diffuse pleural thickening based on the B-Reader report of a reliable B-Reader
   - ILO score of 1/0 or greater for asbestosis
6. Minimum impairment criteria for Severe Asbestosis claims of:
   - Diagnosis of asbestosis based on the B-Reader report of a reliable B-Reader
   - ILO score of 2/1 or greater and
   - Pulmonary Function Test ("PFT") results of TLC <65% or (FVC<65% and FEV1/FVC ratio >=65%) complying with American Thoracic Society ("ATS") standards
7. Minimum impairment criteria for Asbestosis claims of:
   - Diagnosis of asbestosis or diffuse pleural thickening based on the B-Reader report of a reliable B-Reader
   - ILO score of 1/0 or greater (for asbestosis) and
   - PFT results of TLC <80% or (FVC<80% and FEV1/FVC ratio >=65%) complying with ATS standards

In a typical asbestos bankruptcy estimation, the information necessary for determining which claims would meet these criteria would not be available. However, in this case the Court approved the use of a Personal Injury Questionnaire ("PIQ") for the purpose of gathering demographic, medical and exposure information concerning all claims pending against Grace at the time of the bankruptcy ("pending claims"). The Court also required all pending claimants to file a timely Proof of Claim ("POC") or the claim would be forever barred from being filed

2

against a Trust in the future. The data gleaned from these two requirements allowed the estimation of valid Grace claims based on the above criteria.

## 2.0 Opinion

ARPC estimated the Grace pending and future asbestos personal injury claim liability under the specified assumptions. The estimated value of the pending claims that met the evidentiary criteria ranges from $83 million to $173 million with a median value of $128 million. The estimated present value of the future claims that would meet the evidentiary criteria ranges from $303 million to $1,141 million with a median value of $585 million. The total estimated present value of the pending and future claims ranges from $385 million to $1,314 million, with a median value of $712 million. The basis for these opinions is described below.

## 3.0 Data on Which Analyses Were Based

ARPC's analyses of Grace's pending and future liability for asbestos personal injury claims were based on the following sources of data:

1. Grace's historical claims database as of June 14, 2002,
2. Grace's Personal Injury Questionnaire and Proof of Claim database prepared by Rust Consulting as of April 30, 2007,
3. A random sample of pending claims for which information gathered from attachments to the Personal Injury Questionnaires was entered into a database by the Celotex Asbestos Settlement Trust,
4. A random sample of claims closed by Grace prior to the bankruptcy for which available claims information was entered into a database by the Celotex Asbestos Settlement Trust,
5. Manville Trust Claims Database as of September 30, 2006,
6. A random sample of Lung Cancer and Other Cancer claims for which x-rays were reviewed, and
7. A random sample of Nonmalignant claims for which pulmonary function test ("PFT") results were reviewed for adherence to ATS standards.

### 3.1 Grace Historical Database as of June 14, 2002

The initial data source provided by Grace was the June 14, 2002 database of claims maintained by Grace's legal department in a Claims Management System ("CMS") and used by the department for administrative and management purposes.

3

### *3.2 Grace Personal Injury Questionnaire ("PIQ") and Proof of Claim ("POC") Data*

#### *3.2.1 Proof of Claim Data*

In August 2006, the Court ordered that each claimant with a pending asbestos-related personal injury claim against Grace at the time of the bankruptcy was required to file a Proof of Claim with the Court by the Bar Date. The information in the returned POCs was entered into a database by Rust Consulting, Inc. and made available to all of the parties along with images of the POCs.

#### *3.2.2 Personal Injury Questionnaire Data*

The Court approved the use of a Personal Injury Questionnaire ("PIQ") for the purpose of gathering information concerning the claims pending against Grace at the time of the bankruptcy. A fourteen-page questionnaire was developed and approved by the Court and sent to all claimants who had an asbestos-related personal injury claim pending against Grace at the time of the bankruptcy. Questionnaires were sent out in September of 2005 and after several extensions of the deadline for returning questionnaires, a deadline was set: July 12, 2006. Approximately 60,000 questionnaires were returned by the July 12th deadline.

After many of the PIQs submitted were not fully completed and many had objections or stated "See attached", the Court ordered in October 2006 that the claimants must supplement their PIQs. The deadline for supplementation of the PIQs was January 12, 2007 and Rust received approximately 30,000 additional PIQs and over 100,000 supplemental submissions. Also, several plaintiff law firms again asked for extensions on behalf of their claimants and their supplemental information was received through the end of February 2007. The information in the returned questionnaires was entered into a database by Rust Consulting, Inc. and made available to all of the parties along with images of the PIQs.

### *3.3 PIQ Attachment Sample Data*

Even after the Court's orders, many of the claimants did not fill out their PIQs, but instead continued to respond "See attached" and submitted attachments. Due to time constraints and the volume of responses, it was not feasible to have all the data coded in the attachments. However, a random sample of over 5,000 claims was selected from the approximately 120,000 claims pending at the time of the bankruptcy (see Appendix A for a description of the sampling protocol). These sample claims were then matched to the PIQs that were submitted.

For the PIQs that matched to a claim in the sample (3,217), all of the attachments and supplemental attachments were sent to the Celotex Asbestos Settlement Trust ("Celotex Trust" – now the Delaware Claims Processing Facility) for data entry. Experienced Celotex Trust claim reviewers entered information in the attachments for each claim (not the PIQ form itself). The information captured in this manner included demographics, medical information, and exposure information. See Appendix B for a description of the data entry system.