# Exhibit 3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Related Docket Nos.: 14903** |

**W.R. GRACE & CO.'S RESPONSE TO EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS AND DAVID T. AUSTERN THE COURT APPOINTED LEGAL REPRESENTATIVE FOR FUTURE ASBESTOS PERSONAL INJURY CLAIMANTS TO COMPEL PRODUCTION OF COMPLETE NAVIGABLE DATABASE**

The Official Committee of Asbestos Personal Injury Claimants ("PI Committee") and the Future Claimants' Representative ("FCR") have come to the Court seeking "emergency" relief. There is no "emergency." The PI Committee and the FCR offer no rationale for why this motion must be given emergency status -- nor could they, as they have known for at least a year that the Court-appointed claims agent, Rust Consulting, Inc. ("Rust"), has not coded the attachments to the W.R. Grace Asbestos Personal Injury Questionnaire responses.

And on it merits, the motion is no less perverse. At bottom, the motion seeks relief for a problem that, as this Court well knows already, is of the Claimants' own creation. No one, at this point, can forget how strenuously Grace sought an Order requiring all answers to be marked on the face of the Questionnaire, rather than being buried in a mass of undifferentiated attachments. The PI Committee turned a deaf ear to Grace's statements that it could not code all of these attachments into an objective database. The PI Committee *opposed* all requests that the Questionnaire be filled out, insisting instead that the Claimants be permitted to submit attachments without restriction.

Ultimately, the Court ordered that, to the extent the law firms wished to submit answers to the questions contained in the Questionnaire by attachment, they had to clearly cite the precise

As an initial matter, the practical impossibility of coding all attachments is evident when measured in terms of the sheer volume of documents involved. To date, Rust has received approximately 3.8 million pages of attachments accompanying Questionnaires for approximately 100,000 Claimants. To properly capture the data from all such attachments requires analyzing each attachment to determine the question or questions for which it is being submitted and then correlating each piece of substantive information with its corresponding database field. Such a task would require Grace to hire highly-trained personnel with experience coding legal and medical documents. The PI Committee's own estimation expert has recognized this, stating that to render the information from the Questionnaires:

> [T]he parties would have to retain expensive medical coders and doctors to help analyze hundreds of thousands of pages of medical records.

9/6/01 Affidavit of Mark Peterson at ¶ 30. This is why Grace requested that the Questionnaire be filled out -- a request that the Committee opposed.

But even if Grace were to hire such highly-trained medical and legal personnel, the time it would take to code all such documents could be years. For instance, as part of work undertaken at the direction of its estimation experts, Grace, using an outside vendor, has coded a sample of approximately 2,000 Questionnaire responses and their attachments. That work took 2 months and is still ongoing, as supplemental materials also must be coded. At that rate and given the approximately 100,000 Questionnaires that have been submitted to date, it would take an estimated 8 years to code all information contained in all attachments submitted in connection with the Claimants' Questionnaire responses -- a timeframe plainly incompatible with the Court's current schedule.

9