IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | **Re: Docket Nos. 16174, 16175, 16336,** |
| | | **16344 and 16337** |

**REPLY IN SUPPORT OF DEBTOR'S MOTIONS TO COMPEL
DISCOVERY FROM THE CELOTEX ASBESTOS TRUST
AND THE DII INDUSTRIES, LLC ASBESTOS PI TRUST**

Grace submits this joint reply to the both Celotex and DII Industries.[1] Nothing in the responses filed by these Trusts establishes a sufficient basis to deny Grace's motions to compel or justifies the Trusts' complete failure to provide discovery in response to Grace's subpoenas.

Celotex admits that over 73,000 Grace claimants have submitted claims against the Celotex Trust. (Celotex Resp. at 2) Nevertheless, in response to Grace's subpoena, Celotex has refused to produce any *electronic data* relating to Grace claimants whatsoever based on specious claims that such information is immune from discovery under Rule 45. On the other hand, Celotex refuses to produce *paper files* for these claimants because it says, among other things, that the burden inherent in such production would be too great -- informally estimating the cost to obtain paper discovery at a million or more dollars -- and demands that Grace obtain individual consent from claimants before production. *See id.* Thus, Celotex's position, when viewed in its entirety, is that Grace is entitled to no claimant-specific discovery relating to the over 73,000 Grace claimants who submitted claims to Celotex for substantially the same injury as they have asserted against Grace. Celotex's "Heads-I-Win; Tails-You-Lose" negotiating

---

[1] Because Grace submits one reply to both motions, it has combined the page limits for these briefs.

position is the very thing that brought these issues before the Court.[2] Grace is entitled to reasonable discovery of claimants' exposure data held by the Trusts.

DII Industries likewise refuses to produce any of the subpoenaed materials relying on baseless medical confidentiality and Health Insurance Portability and Accountability Act ("HIPAA") concerns, frivolous burden assertions[3] and manufactured issues regarding the purported scope of Grace's subpoena requests. Like Celotex, DII Industries also unnecessarily demands individualized claimant consent before production.

The positions of Celotex and DII Industries are without merit and should be rejected, and the Court should compel the narrowly tailored discovery Grace seeks from these Trusts.

## ARGUMENT

### A. THE DISCOVERY GRACE SEEKS IS RELEVANT TO THE ESTIMATION AND ITS REQUESTS ARE NOT OVERLY BROAD.

In an attempt to distract the Court from the clear relevance of the information sought by Grace to the estimation proceedings, both Trusts resort to misinformation. Grace does not intend (and has never indicated that it sought) to create a "super-database" of claimant data to get some kind of commercial advantage that would enable it to compete with Celotex's Delaware processing facility. (*See* Celotex Resp. at 16) Grace is not interested in, and does not seek to compel, materials related to the Trust internal claimant-specific decision-making processes,

---

[2] Grace filed this motion after months of negotiating (*see* Grace Celotex Mot. at 1-3, 7, n.2) and only after Celotex made clear that it would not produce any electronic data at all. While Celotex now seeks to characterize its efforts as cooperative, Grace has been routinely confronted with just the opposite from Celotex. (*See, e.g.,* D. Donnellon 6/15/07 Letter to E. Ahern, Ex. S to Motion ("we have not undertaken that task and do not desire to do so"); D. Donnellon 7/13/07 Email to E. Ahern and A. Basta ("there is no area for compromise").)

[3] Grace's subpoena of DII Industries is narrower than the subpoena served upon Celotex. With regard to DII, Grace seeks discovery of only approximately 2100 claimants (those individuals asserting mesothelioma in their claims against Grace), and Grace does not seek a deposition of any DII representative.

"internal [trust] work product" or the Trust "evaluation of certain exposure sites."[4] (*Id.* at 12, 16; DII Resp. at 5) And Grace does not seek discovery of information possessed by the Trusts related to claimant personal financial history. (DII Resp. at 5) These issues are straw men.

Instead, the focus of Grace's subpoenas and its motions are on claimant-originating data, particularly exposure history materials, in the Trusts' possession.[5] The scope of the discovery Grace seeks to compel is narrowly tailored to enable Grace to evaluate and value the claims being made here, for estimation purposes. Grace seeks to assess the accuracy and impact of claimants' purported Grace exposure, and to determine whether it is a significant causative factor in their alleged disease. Courts in the Third Circuit have deemed third-party discovery as an appropriate tool for achieving this goal. *See, e.g., New Park Entertainment LLC v. Electric Factory Concerts, Inc.*, 2000 WL 62315 (E.D. Pa. 2000). In the *New Park Entertainment* case, refusing to quash the subpoena, the court stated:

> Defendants have moved to quash the subpoena [of a third party witness] because many of the documents plaintiff seeks from the third parties have allegedly been supplied previously to plaintiffs by the defendants. This objection is meritless....[P]laintiff asserts that defendants have not produced all the documents it requested. Thus, plaintiff claims it needs the third parties' documents, not only as a supplement to defendants' productions, but also to *test the veracity* of defendants' assertions that they have produced all the documents they were required to produce.

*Id.* (emphasis added).[6] Hence, Grace has an interest in what Grace claimants have reported to the Trusts regarding their exposure to ***Celotex/Carey and DII products***, information the Trusts

---

[4] Grace does seek information regarding whether the Trusts have, as a procedural or policy matter, banned or suspended any doctors or screening companies from providing materials in support of claims, and any documents evidencing the rationale for any such decisions. However, Grace does not seek attorney-client or attorney work product privileged materials in this request, merely information related to non-privileged business decisions.

[5] As discussed in Grace's motion papers, this Court has already determined that information submitted to Trusts by Grace claimants is relevant to the estimation proceeding. (*See* 9/11/06 Hr'g Tr. at 260-61)

[6] Celotex argues that "the mere hope that records sought might render a claims [sic] suspect is not of itself sufficient to constitute good cause for production of such records from third parties." (Celotex Resp. at 21) In support of its argument, Celotex cites to a single case, *EI du Pont v. Phillips Petroleum, Co.*, 24 F.R.D. 416 (D. Del. 1959). This

acknowledge that they possess. *(See, e.g.,* Celotex Resp. at 13-14) Grace seeks this type of discovery so it can put any purported Grace exposure into context, and so it can more fully evaluate what claimants have asserted to Grace regarding alternative exposure.[7]

Additionally, in many instances here, all that Grace claimants have provided in response to the Grace Questionnaire ("PIQ") is work history, not exposure history -- let alone product specific exposure history.[8] Consequently, Grace is seeking to gather exposure data provided to the Trusts that was withheld from Grace. If these same claimants have made prior representations related to their exposure history to one or more of the asbestos trusts, that information is relevant to Grace assessing (and estimating the value of) the claims here, particularly where the non-Grace exposure information demonstrates that the potential for significant asbestos exposure from Grace products is extraordinarily low.

---

case does not stand for the proposition for which it is cited. Aside form the fact that it is nearly fifty years old, *du Pont* dealt with expert discovery. *See du Pont*, 24 F.R.D. at 421. The defendants sought, for purposes of impeachment, all documents relating to any work ever done by the plaintiffs' experts for the purposes of determining whether any products infringed on patents. *See id.* The court held that impeachment, or as the court put it, "statements on the part of the scientists which would be inconsistent with some of their conclusions as to infringement," did not justify the scale of the requested discovery. *See id.* at 422. The court did not decide whether such discovery would have been allowed had it gone to the validity of claims at issue in the case. Grace does not seek materials from Celotex merely to impeach witnesses, but rather, Grace seeks this discovery -- among other reasons -- to test the very validity of the claims at issue in the estimation. More recent decisions in the Third Ciruit have allowed discovery propounded to test the completeness of a party's production. *See New Park Entertainment*, 2000 WL 62315.

[7] Contrary to Celotex's position, this discovery cannot be supplanted by any forthcoming subpoena production from Manville/CRMC, or Congoleum. (Celotex Resp. at 14-15, 21) Manville's discovery response will likely reveal information about claimants' Manville exposure, Congoleum's response about Congoleum exposure. However, Grace seeks to obtain discovery about all of Grace claimants' significant non-Grace exposure (not just Manville and Congoleum). If a claimant has previously represented that he has extensive exposure to Celotex or Carey products, for example, this would serve to put any asserted Grace exposure in context in terms of valuing the claim. Grace also seeks to assess what claimants have told these other Trusts about their exposure and how those representations may differ from how claimants have characterized that data to Grace.

[8] Such evidence is necessary for valid claims. *See Georgia Pacific v. Stephans*, Docket No. 01-05-00132-CV (Tex. 1st. App. Jul. 26, 2007)(plaintiff must provide evidence of specific causation in asbestos personal injury cases).

4

DOCS_DE:129489.1

**B. NO VALID BARRIERS PREVENT SUBPOENA PRODUCTION.**

**1. Discovery Of The Trusts' Electronic Databases Are Not Barred.**

As discussed in greater length in Grace's motion papers, proprietary and confidential materials (including settlement materials) are discoverable. (*See* Grace Celotex Mot. at 9-15; Grace DII Mot. at 6-10) Celotex and DII Industries fail to effectively rebut the law and reasoning set forth in Grace's motion papers on these issues.[9] The solution to concerns over confidential and proprietary information, if any, sought by the subpoena is an appropriate Protective Order such as that proposed by Grace here. (*See* Grace Celotex Mot. at 11-12, 15)

Furthermore, Grace is not seeking to misappropriate trade secrets or proprietary information. Grace does not desire to compete with the Delaware processing center, nor is it seeking to obtain any competitive advantage through the information it seeks. Grace does not seek the production of either Trusts' entire database. (*See* DII Resp. at 10-11; Celotex Resp. at 10) Rather Grace has requested only information in the possession of the Trusts that originated with the claimants and that would shed light on exposure history and other Grace claimant-specific facts relevant to the estimation.[10] In negotiations, Grace described the sort of information it sought in general terms, while consistently disclaiming interest in the internal decision making process or determination rendered by the Trusts.[11]

---

[9] The *Federal Mogul* case cited by Celotex (Celotex Resp. at 13) does not change this analysis. In that case, discovery of electronic database materials was permitted. The issue before the Court was merely whether the materials had to be produced in a searchable format.

[10] That Grace has proposed draft protective orders limiting the use of any material obtained by the subpoena to the estimation and the bankruptcy proceeding further underscores that Grace is not seeking to use this information to create a "super-database" or some other vehicle to obtain a competitive advantage over asbestos trusts such as Celotex and DII. (*See* Ex. K to Grace's Celotex Motion (attaching proposed protective order).)

[11] While it is true that Grace did not name specific database fields it sought through its subpoena (Celotex Resp. at 22-23 and 23, n.7), that is because the database fields maintained by trusts such as Celotex are uniquely known to Trusts. Grace expressly asked Celotex to identify what fields it maintains in its database in order to determine which fields would be of interest to Grace in the estimation in an effort to further narrow the dispute, but Celotex declined to identify even the titles of the fields contained in its database. Accordingly, Grace's inability to further specify the information it seeks is a direct result of Celotex's conduct.

5

## 2. There Is No Undue Burden Caused By The Discovery Grace Seeks.

Both DII and Celotex base their burden arguments on the proposition that Grace should obtain the information it seeks from the claimants themselves. The Trusts suggest that Grace has not exhausted efforts to obtain this information directly from parties to the litigation. (*See, e.g.,* Celotex Resp. at 15, 19) This ignores entirely that Grace has been seeking this very information from the claimants and their counsel for years through the Questionnaire and various motions to compel, with astonishingly little progress. While the Grace Questionnaire does not expressly seek submissions made to trusts in those terms, it does seek: "any and all documents . . . that support or conflict with [the claimant's] diagnosis" (*see* Part II of the PIQ) and information specifically relating to the claimant's non-Grace asbestos exposure, including exposure to Celotex/Carey products (*see* Part V of the PIQ and 12/22/06 Order Concerning Motions to Compel (overruling burden objections to providing Non-Grace Exposure information and ordering that claimants are required "to provide information that is known to them at this time")). Accordingly, the claimants were required to provide the information and documents that the claimant would have submitted to the Trusts. It was only upon Grace's receiving and reviewing the Questionnaire responses and supplemental materials, that it became clear that in the vast majority of cases, information concerning non-Grace exposures were still not being provided, despite the Questionnaire's clear requests, and the Court's clear rulings. For instance, despite indicating claims that were made against the Celotex Trust, claimants frequently provided no information or documents relating to their alleged Celotex/Carey exposures.[12]

---

[12] Celotex's citation of the *Link* case does not advance its position. (Celotex Resp. at 20-21) In *Link*, Owens-Illinois sought to authenticate copies of actual submissions to the trust that had been produced by plaintiffs. That is, Owens-Illinois already had the plaintiffs' submission to the Celotex trust. It merely sought to confirm that what it received was identical to what the plaintiff filed with the trust. In fact, the Ohio court before which the *Link* case was actually pending, had issued an order compelling the plaintiff to produce the materials sought by Owens-Illinois only days earlier. The timing of this order was a significant factor in the Delaware court's decision. What is more, it is highly doubtful that the *Link* case has the same scale and history of noncompliance with discovery as the Grace

DOCS_DE:129489.1

In fact, in light of the difficulty of obtaining exposure information and past Trust submission materials from the tens of thousands of claimants themselves, during the September 11, 2006 hearing concerning claimant PIQ data supplementation, the Court itself suggested that, in order to get exposure information, Grace should "subpoena[] some of this information from the trust." 9/11/06 Hr'g Tr. at 259. The Court went on to explain that discovery from the trusts would be *less burdensome* than from the individual claimants, as the trusts maintain the information "in an electronic format." *Id.* at 261.

Under these circumstances, the burden (including any related cost) of electronic production from the Trusts would not be undue. Celotex is previously on record candidly describing the ease with which the trust could make available the information contained in its electronic database. (*See* Grace Celotex Mot. at 6-7 and Ex. H thereto) DII's claims are processed by the same Delaware processing facility as Celotex. (*See* Celotex Resp. at 4; DII Resp. at 11) Moreover, the scope of the DII subpoena is modest, Grace remains willing to work with DII to minimize any clerical staffing issues related to the production, and the Delaware Processing Facility, contrary to DII's assertion, should be well-positioned to facilitate the production, given Celotex's representations in that regard. Putting Grace to the excessive expense of cumbersome paper discovery is unwarranted where any discovery burden related to the hardcopy production could be immediately resolved with relatively minimal cost or burden by production of electronic data for these claimants from a few existing database fields.[13]

---

estimation. Thus, the only salient point made in the *Link* opinion was made by Daniel Donnellon, counsel for the trust, when he admitted the ease with which the trust could make available the information contained in its electronic database. (*See* Grace Celotex Mot. at 6-7 and Ex. H thereto)

[13] Grace also has sought documents related to the Top 25 doctors submitting supporting documents to the Trusts. Celotex maintains that it does not have a obligation to create documents that do not already exist. (Celotex Resp. at 26) However, as Grace has repeatedly pointed out, if no documents exist, Grace could still inquire about such matters at the Celotex corporate representative deposition it also seeks. To the extent the Committees have objected

Any burden inherent in the purported need to provide claimant's with notice or to obtain claimant consent is addressed below conjunction with privilege and confidentiality issues.

### 3.     Privilege Concerns Raised By The Trusts Do Not Bar Discovery.

Celotex and DII both argue that confidentiality and privilege concerns prevent discovery of claimant medical information. The argument that the disclosure of the claimants' medical records is barred by the physician-patient privilege or other similar confidentiality concerns, and that accordingly, such documents cannot be produced by the Trusts without individual claimant consent, is spurious at best and, at worst, has been interposed in bad faith. It is beyond cavil that when a person brings litigation placing his or her medical condition "at issue," he or she waives the physician-patient privilege as to records concerning that condition. *See, e.g., McNerney v. Sec'y Dept. Health & Human Servs.*, 1992 WL 120345 (Cl. Ct. May 5, 1992)("Even in States which recognize a physician-patient privilege, the privilege is often considered waived with respect to medical conditions which are the subject of a lawsuit filed by the patient."); *Williams v. Rene*, 72 F.3d 1096, 1103 (3d Cir. 1995)("[B]y putting his physical condition at issue, plaintiff waived the physician-patient privilege with respect to the injuries claimed to have been incurred in the accident.").[14] Thus, the claimants whose records are being sought from the Trusts by Grace waived their physician-patient first when they brought suit or claims against Celotex (or DII) alleging an asbestos related personal injury, and then a second time, when these same

---

to Grace taking this deposition based on deposition limits currently under discussion with the Court, Grace would defer any such Celotex deposition until the issue of deposition limits is clarified.

[14] *See also Helsabeck v. Fabyanic*, 173 Fed. Appx. 251, 257 (4th Cir. 2006); *In re Medtronic, Inc.* 184 F.3d 807, 811 (8th Cir.1999); *Johnson v. Hathcock Truck Lines,* 162 F.3d 1173 (10th Cir. 1998); *Rankin v. Liberty Mutual Ins. Co.*, 50 F.3d 1 (1st Cir. 1995)("[I]f a patient puts his or her mental or physical condition at issue at trial, the patient is considered to have waived the privileged communication with [his or her] doctor."); *Hulse v. Suburban Mobile Home Supply Co.*, 2006 WL 2927519 (D. Kan. Oct. 12, 2006)("In making claims for personal injury, Plaintiff has clearly placed her medical condition at issue. Therefore, Plaintiff cannot claim that her treating physicians are prevented from disclosing information concerning her medical condition by the physician-patient privilege.").

claimants brought suit against Grace for the same or substantially-similar injuries.[15]

Faced with a clear waiver, the Trusts suggest that, because the Trust procedures assure that applicable privileges will be maintained, the act of submitting medical documents to the Trusts somehow reinstates the already-waived privilege. Neither DII nor Celotex cites any support for this remarkable proposition. Nor could they, as it is fundamental that disclosure of medical records to a third party operates as a waiver of the physician-patient privilege. *See, e.g., In re Zuniga*, 714 F.2d 632, 640 (6th Cir. 1983)("The patients in the case at bar have already disclosed their identities to a third party...In so doing they have waived the privilege to the extent of their disclosure.").Where the privilege has been waived, individual consent is not needed.[16]

Moreover, even under the HIPAA restraints on the disclosure of medical information, no individual patient consent is needed when a valid subpoena has been issued, as is the case here. *See, e.g., Bayne v. Provost*, 359, F. Supp. 2d 234, 237 (N.D.N.Y. 2005)("[HIPAA] unequivocally permits health care providers and other covered entities to disclose protected health information without patient consent in judicial proceedings.")(emphasis added).

## **CONCLUSION**

For the reasons outlined above, Grace respectfully requests that both the Celotex Asbestos Trust and the DII Industries, LLC Asbestos PI Trust be compelled to produce relevant

---

[15] Grace limited its claimant-specific requests to information related to Grace claimants. Accordingly, contrary to DII's suggestion (DII Resp. at 9-10), the claimants about whom Grace seeks information from the Trusts are parties to this bankruptcy litigation. The subpoenas do not implicate "third-party privacy rights".

[16] The issue of notice to claimants of Grace's discovery requests to the Trusts was dealt with fully in Grace's opening papers. (*See* Grace Celotex Mot. at 16-17; Grace DII Mot. at 9-11) There is no requirement that Grace provide the individual claimants with notice of its subpoenas. Nevertheless, Grace provide notice of its subpoenas to the bankruptcy's Rule 2002 list, which includes various law firms representing the majority of Grace claimants. No further notice should be necessary.

9

documents sought by Grace's subpoenas and that the Celotex Asbestos Trust be compelled to produce a corporate representative for deposition in accordance with Grace's subpoena.

Dated: July 27, 2007

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB, LLP

*/s/ James E. O'Neill*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

and

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Ellen Therese Ahern
200 E. Randolph Drive
Chicago, IL 60601
Telephone:  (312) 861-2000
Facsimile:  (312) 861-2200

and

KIRKLAND & ELLIS LLP
Barbara M. Harding
Amanda C. Basta
655 Fifteenth Street, NW
Washington, D.C. 20005
Telephone:  (202) 879-5000
Facsimile:  (202) 879-5200