IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| ) | Case No. 01-01139 (JKF) |
| W.R. Grace & Co., et al., ) | |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | Re Docket Nos.: 15209, 15210, 15421 and 16220 |
| ) | |

### SPEIGHTS & RUNYAN'S SUMMARY OF RECORD RE MOTION TO ALTER OR AMEND THE COURT'S ORDER AND MEMORANDUM OPINION DISALLOWING AND EXPUNGING 71 CLAIMS ENTERED ON APRIL 17, 2007 (DOC NOS. 15209, 15210) AND MOTION TO SUPPLEMENT RECORD REGARDING MOTION TO ALTER OR AMEND THE COURT'S ORDER AND MEMORANDUM OPINION DISALLOWING AND EXPUNGING 71 CLAIMS ENTERED ON APRIL 17, 2007 (DOC NOS. 15209, 15210)

In accordance with this Court's directive at the July 23, 2007 omnibus hearing, Speights & Runyan ("S&R") hereby submits this Summary of Record with respect to the Motion to Alter or Amend the Court's Order and Memorandum Opinion Disallowing and Expunging 71 Claims Entered on April 17, 2007 (Doc. Nos. 15209, 15210) [the "Motion to Amend" ( Doc. No. 15421)] and Motion to Supplement Record Regarding the Motion to Alter or Amend the Court's Order and Memorandum Opinion Disallowing and Expunging 71 Claims Entered on April 17, 2007 (Doc Nos. 15209, 15210) [the "Motion to Supplement" (Doc. No. 16220)] [collectively the "Motions"].

## I. INTRODUCTION

Prior to the Bar Date, S&R submitted Proofs of Claim ["Claims"] on behalf of Bayshore Community Hospital (Claim No. 6901) ["Bayshore Hospital"]; Children's Hospital of Pittsburgh of UPMC Health System (Claim No. 10962) ["Children's Hospital"]; and Jameson Memorial Hospital (Claim No. 14410) ["Jameson Hospital"] [collectively "Claimants"]. After all is said and done, as set forth in the attachments to the Motion to Amend, and as explained in the Motion to Supplement,

and without reference to any privileged communications,[1] before filing the Claims, S&R had written authority from each of these Claimants as follows:

(a) <u>Bayshore Hospital</u>. On March 14, 2003, and again on March 24, 2003, S&R received a duly executed authorization from Bayshore Hospital;

(b) <u>Children's Hospital</u>. On March 25, 2003, S&R received a duly executed authorization from Children's Hospital; and

(c) <u>Jameson Hospital</u>. On March 24, 2003, S&R received a duly executed authorization from Jameson Hospital.

## II. SUMMARY OF RECORD

1. On December 20, 2004, S&R filed its Verified Statement of Multiple Representation Pursuant to Fed.R.Bankr.P. 2019. (Doc. No. 7221). In accordance with this Court's 2019 Order, S&R provided exemplar copies of written authorizations empowering S&R to act on behalf of the Claimants.

2. On September 1, 2005, the Debtors filed their Thirteenth Omnibus Objection. (Doc. No. 9311). The Debors specifically objected to the subject Claims as follows:

(a) <u>Bayshore Hospital</u>. The Debtors objected on the sole ground that the Claim lacked a Claimant signature. [TAB 1][2]

---

[1] S&R is in possession of the cover letters for all of these written authorizations, which predate the Bar Date Order, and which S&R will provide the Court for an in-camera inspection, if that is necessary, as it offered to do with other authorizations which were specifically discussed at the January 25-26, 2006 hearing. See Hearing (January 26, 2006) at 9-10. As S&R has repeatedly pointed out, it has never been heard on the specific objections to the three Claims because the parties first proceeded to argue ratification as a threshold issue.

[2] There was no signature because, pursuant to the 2019 Order, S&R attached an exemplar.

2

(b) <u>Children's Hospital</u>. The Debtors objected on the sole ground that the Claim lacked a Claimant signature. [TAB 2][3]

(c) <u>Jameson Hospital</u>. The Debtors objected on the sole ground that the Claim was not listed in the 2019 statement. [TAB 3][4]

3. On September 21, 2005, S&R supplied the Debtors with written authorizations for these three Claims. Motion to Supplement at Exhibit 1.

4. On September 30, 2005, the Debtors filed their brief in support of their Thirteenth Objection. (Doc. No. 9546). The Debtors did not assert that S&R's written authorizations for these three Claims were undated or received after the Bar Date.

5. On October 26, 2005, the Debtors filed their Reply Brief in Support of the Disallowance and Expungement of Improper Claims Filed by Speights & Runyan. (Doc. No. 10837). The Debtors did not assert that S&R's written authorizations for these three Claims were undated or received after the Bar Date.

6. On December 22, 2005, Debtors served their Reply in Support of Their Fifteenth Omnibus Objection (Substantive) to Asbestos Property Damage Claims. (Doc. No. 11428). The Debtors stated "[T]he Debtors submit this Reply Brief in support of certain objections made to certain of those claims which are set to be heard on January 24 and 26, 2006. Specifically, as set out in the Scheduling Order, the Debtors file this reply on certain dispositive objections to claims which require little or no evidentiary record development for adjudication." <u>Id</u>. at 1. Notwithstanding that the Debtors' Reply related to their Fifteenth Omnibus Objection (Substantive) and not their

---

[3] There was no signature because, pursuant to the 2019 Order, S&R attached an exemplar.

[4] The Debtors incorrectly referred to the claimant as "Jamestown" rather than Jameson.

3

Thirteenth Omnibus Objection (Authority), and notwithstanding that the Debtors' Thirteenth Objection did not raise the date of S&R's authorization to file these Claims, the Debtors asserted in their brief that:

> For the 71 claims identified on Schedule 5, Speights produced express written authorization that was either (i) undated or (ii) dated after the Bar Date. For certain of these authorization, the face of the form itself is undated, but the fax line shows that Speights did not receive them until well-after the Bar Date. *Id.* at 18-19.

7.    On January 20, 2006, S&R filed its Sur-Reply in Opposition to the Debtors' Thirteenth and Fifteenth Omnibus Objections. (Doc. No. 11594). S&R argued, *inter alia*:

> There is no requirement under the Bankruptcy Code, and Grace has cited none, that requires counsel to obtain express written authority prior to filing a claim. It simply does not follow that because a client faxed a written authorization to its lawyer after the bar date, that the filing of the claim in the first place was unauthorized. Indeed, such an artificial requirement would circumvent Rule 3001(b), F.R.Bankr.P. which presumes the validity of a proof of claim executed by a claimant's attorney. *See In Re Garner*, 246 Br. 617 (9th Cir. BAP 2000).
>
> Moreover, even if the Bankruptcy Rules required every attorney representing a claimant to obtain express written authorization prior to filing a claim on their clients behalf, the seventy-one (71) claims objected to by Grace would still be valid and authorized under the doctrine of ratification.

*Id.* at 4-5.

8.    On January 24, 2006 (the day before the hearing on the Authority Objections), the Debtors filed their Sur-Reply in Support of the Disallowance of 71 Claims for Which Speights & Runyan Has Not Established Authority to File as of the March 31, 2003 Bar Date. (Doc. No. 11621). The Debtors argued that ratification should not be applied in this instance.

9.    On January 25-26, 2006, this Court heard all of Debtors' outstanding authority objections. S&R had the basis of its authority for each of the claims at issue organized in individual file folders, which it provided the Court as those claims were argued. Motion to Supplement at

Exhibit 1. However, with respect to the 71 Claims, the Court never considered the claims on an individual basis because, at S&R's suggestion, it first considered the issue of ratification. As reflected in the relevant portions of the transcript which this Court has requested S&R to identify:

> MR. SPEIGHTS: Well, Your Honor, like the last question, there are several different ways we could approach this issue. Let me make one historical statement, and one statement to try to cut to where we are on authority. We've come a long way since last July on the authority issue, and just by way of history, as Ms. Browdy understandably always is going to cite the number of cases Grace has gotten rid of, I emphasize again that the largest bulk of the cases we've gotten rid of voluntarily by me deciding to abandon the conspiracy claims in this bankruptcy including a large number of California claims with written contracts, etcetera, etcetera, and not to be used against me and all that other stuff I always mention.
>
> * * *
>
> Now we are left with several different buckets of claims with several different factual situations. Grace doesn't dispute it. I don't dispute it. There are some claims that there was oral authority, which I -- as far as I understand the cases, is sufficient, but the written authority came later. There are probably some cases like the Anderson group of 600 that later gave authority. There are written authorities which are course of dealing with or in e-mails, etcetera, etcetera, and we can, if we have to, sit down and go through those now less than one hundred claims one by one and try to figure out, you know, what's the proper disposition.
>
> I suggest, Your Honor, there are two legal issues that will take care of this and could take care of everything left on authority. The first legal issues is the legal issue of ratification which Ms. Browdy just referred to. If our clients could, in fact, ratify -- we're dealing now almost entirely of clients who have retained us but retained us after the bar date, and if those clients could do so and ratify the earlier filing of the claim form, okay, that subset -- and again some gave authority before. That takes care of the situation they criticize the most.
>
> If ratification is the law dealing with the claim form, if I'm right on ratification, and Ms. Browdy is wrong, we can put this issue behind us, because I think all of them go. And I want to address ratification. Hearing (January 25, 2006) at 26-28.

After S&R argued ratification, the following exchange took place:

> THE COURT: Yes, but I think that's a whole lot different from an individual filing a proof of claim. In the class action rules and processes are different, simply because you don't even know at the time you file a class action who all the class members are in most instances. But that's not true here. These individuals are creditors of the estate. They have notice, either

5

actual or constructive, of a bar date, and they have an obligation to file a valid proof of claim. I don't think if they -- I think had they called and said file this for me, fine. You're their agent.

But I don't think you can set up an attorney-client relationship nunc pro tunc and have that agent -- or I'm sorry -- that principal ratify an act that you didn't have the authority to do at the outset, because you weren't their attorney. So that's the problem I have with the ratification theory. If you want to see if I'm wrong, because I haven't done a lot of research on this area, but that's how -- that's my gut instinct with respect to ratification.

MR. SPEIGHTS: Well, and I would, Your Honor, for this reason. I think you have cut through the one issue that bothers me. We got their brief last night. I don't even believe -- I'm sure Ms. Browdy might find some support somewhere in the United States Supreme Court for the proposition you've identified. The Supreme Court case to me -- and I read it. That's the only one I read. I didn't have time to read five, but I read Chief Justice Rehnquist. I think that dealt with the situation where by law this agency couldn't file an appeal. It was a jurisdictional issue --

THE COURT: It did.

MR. SPEIGHTS: -- whether you got certiorari, etcetera, etcetera, etcetera, which I don't think is applicable at all, and I think the Fourth Circuit cases are. But given that we just got the brief last night, and given that the issue has just come up, I would request a few days to give you a supplemental brief on this issue.

THE COURT: I'll a take a supplemental brief. I'm not convinced that the Supreme Court case that did deal with a specific statutory authority is on all fours with this. I understand the application of the principle, but I don't think that the holding itself is on all fours with this case, and I agree with you there. But I'm not sure that's going to save this batch of claims. Those that you did -- for whom you did not represent the client at the time their proof of claim was filed, I do not think those entities can ratify the proof of claim.

MR. SPEIGHTS: And my -- as I was headed down the track, I was telling you that I think there are two ways I win, and the first way is if I win ratification. I would like to brief that a little further and address it as soon as you're ready to address it again. I'm not trying to delay this, because I'd like these authority objections resolved, as I'm sure you would.

The second way that it goes away, also -- and I'm not getting into tomorrow's argument, and I'm not sure how far we'll go tomorrow on class certification, but certainly if there's class certification that resolves these issues, too, because they would be in the class, and we wouldn't have that. So my request is that you allow us to brief the ratification. If we cannot convince you on ratification, I honestly believe that we could sit down and get a stipulation on what the facts are as to those particular 20/30/40, so we don't have to have a hearing on

6

each individual claim. I know -- I mean the truth is truth. If they call us beforehand, that's fine. If they never call us, some of them didn't like I told the 600. I did tell them that. These are the six fact situations.

Either they'll agree or won't agree as to authority. They may take to heart what you've said today about the telephone call, and we can almost see it up on a stipulation if you decide as to those who don't agree. I just don't see us bogging down when ratification resolves everything or certification resolves everything.

THE COURT: Well, the class certification issue may resolve it. The ratification I guess will if, in fact, you can ratify under these circumstances. And maybe it does take some fact specific production from you, Mr. Speights, to say what clients you did represent, who you had oral authority from. If there was oral authority, even though it's not written authority, I'm not so convinced that that's not authority. Authority is authority. It may not be literally in compliance with the proof of claim form.

But I think to that extent the claim form could be amended, I don't think you could amend a claim form to satisfy the ratification issue. I think that's not going to be appropriate. In that instance those claimants would have to show what excusable neglect led them to file a late claim, and I think they have to get some -- if they have a claim at all, then it has to come in that kind of a venue process. I don't think this will work, but I'd be happy to read some cases if you can give me some.

MR. SPEIGHTS: I appreciate that, Your Honor. And if we do have to go down the track, in fairness to Grace -- I'm being mighty fair to Grace today. I don't know what's come over me. But in fairness to Grace, they don't have the facts about who called whom and that, and I don't want to go through discovery. I just want to tell them. I mean they've been asking the question. I'll tell them if we need to go there, and I'd like to resolve ratification right away, and I'm glad for you to put the shortest leash on getting a brief.

THE COURT: Well, tell me how much time you'd like to brief this issue. In fact, can both of you do it at the same time? I mean you've had a chance at this point to see each other's papers.

MR. SPEIGHTS: Seven days.

THE COURT: A week, Ms. Browdy?

MS. BROWDY: Yes, Your Honor. I think we had that other brief, oh, in Prudential due February 3rd. Maybe make this due February 3rd as well.

MR. SPEIGHTS: That would be good. It's a Friday, Your Honor.

7

THE COURT: All right. That's fine. And I'll just take them -- I think -- hopefully, you can do this in ten pages or less. I really don't think there is going to be that much case law out there, but --

MR. SPEIGHTS: And the brief is just going to be focused on the points you raised, as I understand it, Your Honor.

THE COURT: That's -- at this point that's all I'm looking for on this issue. Now maybe we'll have to address other issues as we go. I don't know. But on ratification that's the only issue I'm concerned about at the moment.

MS. BROWDY: That's fine.

(Pause)

MS. BROWDY: Your Honor, we don't anticipate a problem getting that brief in, and I'm more than happy to keep it less than ten pages. **The only thing that I would add at this point, if we do then have to further down to get development of additional facts to figure out when these conversations took place, I appreciate that we can start with some kind of a stipulation or representation by the Speights firm, but we may well need and ask for discovery.** That's the way we got -- that's really the only way we started to learn about these authority problems in the first place, which we started to notice things.

THE COURT: **Well, that's okay. Let's just get the briefs in, put this on to the February agenda, and we'll do a status conference to see whether or not you need additional discovery. I think with respect to this, if you can file the briefs by February 3rd, I can read the cases and hopefully have an opinion for you on this limited issue at least by that date. So if you need discovery, we'll address it then.** Hearing (January 25, 2006) at 31-37 (emphasis supplied).

10. On February 3, 2006, the parties filed their additional memorandum regarding ratification. See Anderson Memorial Hospital's Further Memorandum in Opposition to the Debtors' 13th Omnibus Objection: Ratification of Authority by Claimants (February 3, 2006) (Doc. No. 11709); and Debtors' Brief in Further Support of the Disallowance of 71 Claims Where Speights Lacked Authorization as of the Bar Date (February 3, 2006) (Doc. No. 11712). The matter was then stayed while the parties participated in an unsuccessful Plan Mediation.

11. On August 21, 2006, the Court conducted oral argument on the ratification issue. At

that time, S&R emphasized at the beginning of its argument that:

> MR. SPEIGHTS: . . . These are clients who have retained Speights & Runyan, giving us authority to act, and the only issue here is with respect to some of them, is whether that actual authority had to be prior to the bar date. They have given authority now, and I'm going to argue ratification in a few minutes, and I just point out that it's reflected, I think in the previous transcript, there are some of those we claim we have old authority from and ratified later, and there's some which I would concede that we didn't have any authority from until after the bar date, other than the putative class action and then they gave us authority. And at the last hearing, as I recall, you said, Well, we can work that issue out once we deal with the gist of the issue we're dealing with now. Id. at 231.

DATED: August 1, 2007

/s/ Christopher D. Loizides
Christopher D. Loizides (#3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728
E-mail: loizides@loizides.com

SPEIGHTS & RUNYAN
Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed ID No. 6101)
200 Jackson Avenue, East
Post Office Box 685
Hampton, SC 29924
Telephone: (803) 943-4444
Facsimile: (803) 943-4599

Counsel to Speights & Runyan