IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

**CERTIFICATION OF JAMES P. SINCLAIR IN SUPPORT OF APPLICATION OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS FOR AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF CHARTER OAK FINANCIAL CONSULTANTS, LLC, AS FINANCIAL ADVISOR**

JAMES P. SINCLAIR, pursuant to 28 *U.S.C.* § 1746, hereby states as follows:

1. I am a Member of Charter Oak Financial Consultants, LLC ("Charter Oak").

2. I make this Certification in support of the Application of the Official Committee of Asbestos Personal Injury Claimants (the "Committee") to retain Charter Oak as financial advisor to the Committee in the chapter 11 case of W.R. Grace & Co., *et al.*, and related proceedings (the "W.R. Grace Case").

3. The three Members of Charter Oak are the undersigned, Bradley Rapp, and Robert Lindsay. Each of the three Members of Charter Oak was formerly employed by L Tersigni Consulting, P.C. ("LTC"). I resigned from LTC on June 7, 2007. Upon information and belief, Mr. Rapp and Mr. Lindsay also resigned from LTC on or about June 7, 2007.

DOC# 288136

4. I am informed and believe that the sole owner of LTC during all the relevant time periods was Loreto (Larry) Tersigni. I have never held any stock or other equity position in LTC.

5. Mr. Tersigni died on May 30, 2007. In the days immediately prior to Mr. Tersigni's death, when it was my understanding that his death was imminent, I was advised by Bradley Rapp that he had reason to believe that Mr. Tersigni, in preparing LTC fee applications, had increased the time entries submitted to him by LTC personnel. Prior to that time, I had no knowledge of, or reason to suspect that there were, any billing irregularities in connection with fee applications submitted by LTC in the W.R. Grace Case or in any other Bankruptcy Case in this District or any other District.

6. I have never been a corporate officer of LTC. Although I was nominally a "Senior Managing Director" of LTC, I had no corporate authority at LTC nor did I have access to LTC's financial information, financial statements or financial books and records. I did not engage in activities relating to the internal administration of LTC nor did I have any check-signing authority. It is my understanding that Mr. Rapp and Mr. Lindsay are submitting certifications attesting that their respective roles, activities, and legal capacity in LTC were likewise limited.

7. I did not prepare any fee applications of LTC. On or about May 24, 2007, I signed a fee application prepared by others in the bankruptcy of G-I Holdings, Inc., *In re G-I Holdings, Inc.*, 01-30135 (Bankr. D.N.J.). That fee application was for the period commencing April 1, 2007, through April 30, 2007. I was asked by Dottie Collins, a Manager at LTC, to sign the application because Mr. Tersigni was incapacitated. It was the only fee application I ever signed for LTC in any case. It was executed prior to my being advised by Bradley Rapp of the

problems with prior LTC fee applications. I had no reason to believe at the time I signed the fee application that there were any irregularities with regard to prior bills, and I am not aware at this point in time of any impropriety with respect to the single application I signed.

8. LTC compensated me at an hourly rate based upon my actual hours worked, not on the basis of any marked-up hours reported by Mr. Tersigni in the fee applications. The payments I received were consistent with actual time spent by me and in no way put me on notice of any billing irregularities. I never received any payments, distributions, or bonuses tied to the profitability of the company. It is my understanding that LTC paid its other professional employees in the same way it paid me, *i.e.*, as hourly employees on the basis of actual hours worked.

9. I can state categorically that I was not aware, and had no reason to be aware, of any billing irregularities until I was so advised by Bradley Rapp as set forth in paragraph 5 above, and had no reason to suspect any irregularities in connection with the billing by LTC. It is my understanding that Mr. Rapp and Mr. Lindsay will be submitting similar Certifications as to their lack of involvement in the misreporting of hours in LTC fee applications.

10. I believe that LTC owes me $36,616 in hourly compensation for past services. $7,990 of that unpaid compensation relates to work performed in connection with W.R. Grace matters, based on a *pro rata* allocation taking into account both W.R. Grace hours and the total number of hours associated with the unpaid amount. I make no claims, directly or indirectly, against the Debtors or the estate with respect to services performed or disbursements made during LTC's engagement by the Committee.

4

Pursuant to 28 *U.S.C.* §1746, I certify under penalty of perjury that the foregoing is true and correct.

Executed on August 2, 2007

                                                  James P. Sinclair