IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| W.R. GRACE & CO., *et al.*, | ) Case No. 01-1139 (JKF) |
| Debtors. | ) Jointly Administered |

**CERTIFICATION OF ROBERT H. LINDSAY IN SUPPORT OF APPLICATION OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS FOR AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF CHARTER OAK FINANCIAL CONSULTANTS, LLC, AS FINANCIAL ADVISOR**

ROBERT H. LINDSAY, pursuant to 28 *U.S.C.* §1746, hereby states as follows:

1. I am a Member of Charter Oak Financial Consultants, LLC ("Charter Oak").

2. I make this Certification in support of the Application of the Official Committee of Asbestos Personal Injury Claimants (the "Committee") to retain Charter Oak as financial advisor to the Committee in the chapter 11 case of W.R. Grace & Co., *et al.*, and related proceedings (the "W.R. Grace Case").

3. The three Members of Charter Oak are the undersigned, Bradley M. Rapp, and James P. Sinclair. Each of the three Members of Charter Oak was formerly employed by L Tersigni Consulting, P.C. ("LTC"). I resigned from LTC on June 7, 2007. Upon information and belief, Mr. Rapp and Mr. Sinclair also resigned from LTC on or about June 7, 2007.

4. I am informed and believe that the sole owner of LTC during all the relevant time periods was Loreto (Larry) Tersigni. I have never held any stock or other equity position in LTC.

DOC# 288138

5.  Mr. Tersigni died on May 30, 2007. I was advised shortly after Mr. Tersigni's death of reason to believe that Mr. Tersigni, in preparing LTC fee applications, had increased the time entries submitted to him by LTC personnel. Prior to that time I had no knowledge of, or reason to suspect that there were, any billing irregularities in connection with fee applications submitted by LTC in the W.R. Grace Case or in any other Bankruptcy Case in this District or any other District.

6.  I have never been a corporate officer of LTC. Although I was nominally a "Director", I had no corporate authority at LTC nor did I have access to LTC's financial information, financial statements or financial books and records. I did not engage in activities relating to the internal administration of LTC nor did I have any check-signing authority. I did not prepare any LTC fee applications. It is my understanding that Mr. Rapp and Mr. Sinclair are submitting Certifications attesting that their respective roles, activities, and legal capacity in LTC were likewise limited.

7.  LTC compensated me at an hourly rate based upon my actual hours worked, not on the basis of any marked-up hours reported by Mr. Tersigni in the fee applications. The payments I received were consistent with actual time spent by me and in no way put me on notice of any billing irregularities. I never received any payments, distributions, or bonuses from LTC that were tied to the profitability of the company. It is my understanding that LTC paid its other professional employees in the same way it paid me, *i.e.*, as hourly employees on the basis of actual hours worked.

8.  I can state categorically that I was not aware, and had no reason to be aware, of any billing irregularities. Until I received, after Mr. Tersigni's death, the information set forth in paragraph 5 above, I had no reason to suspect irregularities in connection with the billing by

LTC. It is my understanding that Mr. Rapp and Mr. Sinclair will be submitting similar Certifications as to their lack of involvement in the misreporting of hours in LTC fee applications.

9. I do not believe that LTC owes me any unpaid compensation for past services. I make no claims, directly or indirectly, against the Debtors or the estate with respect to services performed or disbursements made during LTC's engagement by the Committee.

Pursuant to 28 U.S.C. §1746, I certify under penalty of perjury that the foregoing is true and correct.

Executed on August 2, 2007

Robert H. Lindsay

3