# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          . Case No. 01-1139(JKF)
                                .
                                .
W.R. GRACE & CO.,               . 5414 USX Tower Building
                                . Pittsburgh, PA  15222
                                .
             Debtor.            .
                                . January 25, 2006
. . . . . . . . . . . . . . . . . 2:12 p.m.


TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Property Damage          Bilzin Sumberg Baena Price
Committee:                        & Axelrod LLP
                                 By:  SCOTT L. BAENA, ESQ.
                                      MATTHEW KRAMER, ESQ.
                                 Wachovia Financial Center
                                 200 South Biscayne Boulevard
                                 Suite 2500
                                 Miami, FL  33131


Audio Operator:                  Janet Heller


Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

1          THE COURT:  I can't hear you, Ms. Browdy.  I'm sorry.

2          MS. BROWDY:  We should set a status for the March

3   27th omnibus on where things stand on the Canadian product I.D.

4   claimants.

5          THE COURT:  Yes, I think that's right.

6          MS. BROWDY:  Thank you, Your Honor.

7          THE COURT:  Now, that's just with respect to the

8   Canadian product I.D. claims.  There are still U.S. product

9   I.D. claims to deal with.

10          MS. BROWDY:  Correct, Your Honor.

11          THE COURT:  All right.

12          MS. BROWDY:  Okay.  Well, with that background then,

13  that takes us back to again the basic agenda, and what we

14  thought we would do, Your Honor, is to start out with the

15  unauthorized claims.  And then I thought after we do the

16  argument on the unauthorized claims, we actually probably

17  should move up G, the U.S. no product I.D. claims, because

18  given how we essentially lost a good chunk of yesterday to

19  argue, I hate to take up time on, you know, one- and two-

20  claimant arguments and risk not having the chance to deal with

21  51 U.S. claims.  So --

22          THE COURT:  We'll do them in whatever order you want

23  to do them.

24          MS. BROWDY:  Thank you, Your Honor.  Then again

25  moving to the issue of unauthorized claims.  These authority

                **J&J COURT TRANSCRIBERS, INC.**

1  objections, Your Honor, were set out in the debtor's 13th

2  omnibus objection, which is docket 9311, filed on September

3  1st.  We also started to deal with the issue of the authority

4  objections really in the context of dealing with the Anderson

5  Memorial claims that we argued here on October 31st, because as

6  part of dealing with those Anderson claims it became apparent,

7  even by Speights own admission, that he had signed and

8  submitted claim forms for claimants that he had never met and

9  didn't have authority from.

10        As part of dealing with the Anderson Memorial issue,

11  Your Honor, the Court ordered Speights and Runyon -- and when I

12  refer to Speights, I'm referring to the law firm not ad hominem

13  comment.  But Speights was ordered to produce evidence of the

14  authority that the firm had to file all of its claims, and that

15  was reflected in docket 9501, which was entered by this Court

16  on September 23rd.

17        So we now have the benefit of what the Speights firm

18  has produced to us, which is supposedly the basis for their

19  authority.  And to put into perspective our 13th omnibus

20  objection initially objected to 2,937 of his claims, which is

21  all but one of them, because they lack authority.  The Speights

22  firm is now down to roughly 525 claims, and we are retaining

23  our authority objection to roughly a hundred of those.  At the

24  time we filed our reply in December we were complaining that 38

25  of the claimants there was no authority to file, and that 71

**J&J COURT TRANSCRIBERS, INC.**

22

1 hadn't shown a timely authority to file.  And as you can see

2 from the demonstrative that we handed up, we're now down to 23

3 that we think lack authority and 68 that were not timely -- did

4 not timely receive authorization.  And I think, Your Honor, I'm

5 actually going to start out with argument on the timeliness.

6          We attached as exhibits F, G, and H to our reply on

7 the 15th omnibus, which was docket 11428, three different lists

8 of claims that either were signed late, that is some time

9 April, 2003 to the present, authorizations that were undated,

10 or authorizations that they themselves had no date, but there

11 was a fax line that we could interpret to say it was faxed at

12 some time after the date.  That was the only indication of

13 anything regarding the timeliness of those signatures.  And

14 none of those authorizations, which is what the Speights firm

15 provided in response to the Court's order -- we don't think any

16 of those authorizations establish that the firm had authority

17 to file those claims as of the bar date.

18          Now, when you look at the Speights surreply, the firm

19 argues that there's a presumption of validity when a claim form

20 is filed, and there was no obligation to get express authority

21 before the filing date.  I think there are a number of problems

22 with that argument, Your Honor.  First, as the 13th and 15th

23 omnibus objections and accompanying attachments and pleadings

24 and the like show, there really is not a presumption with

25 respect to the Speights filed claims, that they were authorized

**J&J COURT TRANSCRIBERS, INC.**

1 when filed.  We just have too much of a track record of claims

2 being filed and signed without authority.  We have claims that

3 were submitted for claimants that were represented by other

4 parties.  We have claims submitted for building owners that the

5 Speights attorney had never met.  They've admitted they could

6 never locate them.  We had claims submitted for claimants who

7 had previously settled or litigated these claims using other

8 counsel.  And again, just there were a number of problems.  I

9 think there's a good discussion of those in our reply brief

10 filed on October 26th of 2005, which was docket 10837, along

11 with the accompanying exhibits.

12      What that really leads us to though is to the legal

13 question that this Court needs to decide, which is does it

14 matter when Speights received authority to file these claims.

15 Again, for the 68 claims that we're still objecting to he's got

16 a signature, but the question is still open when he was

17 authorized to file those claims.  There's a Supreme Court case,

18 Your Honor, that we cited in that short surreply we put on file

19 yesterday that we really think is directly on point.  It's

20 Federal Election Commission vs. NRA Political Victory Fund 513

21 US 88 at 98, Supreme Court decision from 1994.

22      And in that the Supreme Court analyzes basic

23 principles of agency law and points out that the action of an

24 agent cannot be ratified after a deadline.  Again, the Supreme

25 Court at page 98, "If an act to be effective in creating a

1  right against another or to deprive him of a right must be

2  performed before a specific time.  An affirmance is not

3  effective against the other unless made before such time."  And

4  there are a couple other quotes like that.  It cites to the

5  restatement of agency law which again makes clear that while in

6  certain circumstances a principal can ratify the actions of an

7  agent after the fact.  You can't do that to do harm to a

8  deadline -- a bar date, something where authority had to be

9  given as of the time.

10         We've also cited, Your Honor, in the that short

11  surreply to some cases like the First Plus decision, 248 BR 60,

12  and I don't have a specific page cite, although it's just

13  before footnote 11.  This is from the U.S. Bankruptcy Court for

14  the Northern District of Texas from 2000.  It says, "To put it

15  another way, Rule 3001 be allows a creditor to decide to file a

16  proof of claim and to instruct an agent to do so.  It does not

17  allow an agent to decide to file a proof of claim and then

18  inform a creditor after the fact."  That's exactly what we're

19  dealing with here, Your Honor.  And interestingly, a couple of

20  the cases we cited like the First Plus decision were courts

21  looking in the context of whether or not you could have a class

22  proof of claim.

23         And before the American Reserve decision and its

24  progeny really parsed out what the rules permitted with respect

25  to class proofs of claim, a number of these District Court or

**J&J COURT TRANSCRIBERS, INC.**

1 Bankruptcy Court decisions were looking at it from the concept
2 of agency law. Gee, how can someone put in a proof of claim on
3 behalf of someone that hasn't authorized them to do it. So
4 while the specific details of some of these cases are in a
5 different context, it's in the analysis of agency law, which is
6 directly on point.

7 And, Your Honor, I submit that the decision of the
8 Supreme Court in the <u>Federal Election Commission</u> case and these
9 other cases that show that a -- the action in this context
10 can't be ratified after the fact is very much consistent with
11 the proof of claim form itself.

12 (Pause)

13 MS. BROWDY: And again this is -- there's nothing
14 special about this particular signature page. As the Court has
15 gathered, we have thousands like this. But that when a claim
16 form is submitted on a particular date, it's signed, and it
17 says, "All claims must be signed by the claiming party." And
18 in the signature box it indicates the signature of the claimant
19 and the date, and if the claimant, here Mr. Speights -- all of
20 the forms were signed either by him or one of his colleagues.
21 If they didn't actually have authority at the time, they
22 couldn't sign for the claimant. They weren't representing the
23 claimant, and the claim form requires it. And that's again
24 consistent with the courts that are interpreting 3001(b) that
25 says you need to have an authorized -- you need authority at

**J&J COURT TRANSCRIBERS, INC.**

1  the time you're signing this.

2       So it can't be, Your Honor, that an attorney can sign
3  for a claimant without authority,  misrepresent under penalties
4  of perjury, but they actually authority to do it, and then
5  later get authorization after the fact.  So we think that these
6  principles all come together and confirm the notion that again
7  you had to have authority as of the time the claim form was
8  filed for it to be valid.

9       So getting back to where we started, these 68 claims,
10 we've challenged them.  We put the burden back to the claimant,
11 and the Speights firm has not established that it had authority
12 as of the time, so that we would ask these 68 claims be
13 disallowed.

14       THE COURT:  All right.

15       MR. SPEIGHTS:  Well, Your Honor, like the last
16 question, there are several different ways we could approach
17 this issue.  Let me make one historical statement, and one
18 statement to try to cut to where we are on authority.  We've
19 come a long way since last July on the authority issue, and
20 just by way of history, as Ms. Browdy understandably always is
21 going to cite the number of cases Grace has gotten rid of, I
22 emphasize again that the largest bulk of the cases we've gotten
23 rid of voluntarily by me deciding to abandon the conspiracy
24 claims in this bankruptcy including a large number of
25 California claims with written contracts, etcetera, etcetera,

1  and not to be used against me and all that other stuff I always

2  mention.

3           And the largest number of authority claims were

4  dismissed, Your Honor, after we had a long hearing -- I'm not

5  even sure which courtroom -- in which you decided that the

6  cases did not give me authority to file claims on behalf of

7  people under the Anderson definition of the class action, for

8  that was the sole basis of authority -- sole basis of claim of

9  authority.  And I understand your decision on that, and we've

10 moved on from that, but that obviously formed the basis of a

11 large number of claims, and when you ruled several months ago

12 on that, I think there were approximately 600 claims, but

13 that's still all they had.

14          Now we are left with several different buckets of

15 claims with several different factual situations.  Grace

16 doesn't dispute it.  I don't dispute it.  There are some claims

17 that there was oral authority, which I -- as far as I

18 understand the cases, is sufficient, but the written authority

19 came later.  There are probably some cases like the Anderson

20 group of 600 that later gave authority.  There are written

21 authorities which are course of dealing with or in e-mails,

22 etcetera, etcetera, and we can, if we have to, sit down and go

23 through those now less than one hundred claims one by one and

24 try to figure out, you know, what's the proper disposition.

25          I suggest, Your Honor, there are two legal issues

1 that will take care of this and could take care of everything

2 left on authority.  The first legal issues is the legal issue

3 of ratification which Ms. Browdy just referred to.  If our

4 clients could, in fact, ratify -- we're dealing now almost

5 entirely of clients who have retained us but retained us after

6 the bar date, and if those clients could do so and ratify the

7 earlier filing of the claim form, okay, that subset -- and

8 again some gave authority before.  That takes care of the

9 situation they criticize the most.

10      If ratification is the law dealing with the claim

11 form, if I'm right on ratification, and Ms. Browdy is wrong, we

12 can put this issue behind us, because I think all of them go.

13 And I want to address ratification.

14      THE COURT:  Okay.  My question though is in order to

15 ratify something you had to have had an agent-principal

16 relationship beforehand, and the agent had to have done

17 something that the principal didn't specifically authorize in

18 advance but did authorize later, however, the relationship had

19 to have existed before the ratification.  And I think where I'm

20 losing the ratification argument is if you didn't represent the

21 clients before the proof of claim form was filed, then I can't

22 see how there can be a ratification, because you weren't their

23 agent.  You weren't their attorney.  So even though they may

24 hire you later, they could maybe now ask you to file a proof of

25 claim form for them and, you know, see where that goes, but I

**J&J COURT TRANSCRIBERS, INC.**

1  don't see how that ratifies something that couldn't have been

2  done, because there was no agent -- couldn't have been done

3  with authority, because there was no agent-principal

4  relationship at the time.

5          MR. SPEIGHTS:  And I'll stop there and answer the

6  Court's question -- at least try to answer the Court's

7  question.  And I think -- I say again the reason that we had no

8  authority on some of them, not all of them, before was because

9  of Your Honor's ruling that we have no authority, and that

10  ruling is the law of this case as we sit here.  I accept the

11  ruling as being the law of the case.

12          However, Your Honor, I don't believe that's the law,

13  and, you know, it's sort of crazy.  We've been arguing about

14  authority since July, and now you've gotten two briefs in the

15  last seven days, and I got their brief after I arrived in

16  Pittsburgh last night.  I quickly read the U.S. Supreme Court

17  case.  I haven't read the other cases, and I haven't even

18  shepherdized the U.S. Supreme Court case much less looked at

19  everything.  I certainly have read our cases in support of

20  ratification.  And ratification seemed to me -- it's a

21  principle I never argued before -- a pretty straightforward

22  thing.

23          You know, you can ratify a previous act even though

24  if you had not given authority for that previous act once you

25  establish that relationship.  And the best case in there is a

1  1997 case of the United States Court of Appeals for the Fourth

2  Circuit.  I think it's called <u>Hagereth</u> in my notes back at the

3  desk.  I cite it in the brief along with other Court of Appeals

4  and a bunch of decisions from around the country.  But in that

5  case it dealt with the filing of a petition for bankruptcy.

6  And in that case the law required both owners of this company

7  to file the petition for bankruptcy to be a valid filing.  And

8  in that situation one signed the petition, and the other

9  didn't, and a year, a year and a half went along, and the

10  second person, while not very pleased with what was going on

11  with the bankruptcy, never signed it.  And the Court held,

12  well, although he or she did not sign it, he or she ratified

13  the act by not doing anything in that instance by inference.

14  Here we've got a contract, hired you, ratified.  Yes, thank you

15  for filing that claim.

16           THE COURT:  But there's a difference.  I mean I had

17  that same issue come up with respect to a petition in

18  bankruptcy that was filed, and I think it was the <u>I.D. Craig</u>

19  <u>Services</u> case, and the problem in that case was that the people

20  who were involved, i.e., the shareholders, the creditors, all

21  knew about the bankruptcy and could have done something to take

22  an act before the Court that said this is filed without

23  authority but decided to wait and see what happened before

24  acting.

25           Now, in <u>I.D. Craig</u>, a year or two down the road, the

**J&J COURT TRANSCRIBERS, INC.**

1 principal came in and said, oops, I never got my board to

2 ratify or to agree to this, and so you can't -- you don't have

3 jurisdiction anymore, because even though we've sold all the

4 assets and all this has been done, it wasn't proper.  I don't

5 think that's what the principle of ratification is all about.

6 But even -- but at least in that case there was an agent-

7 principal relationship.

8          The problem I think is -- and I don't disagree that

9 you can ratify the acts of an agent after the fact, but I do

10 disagree that you can ratify the acts of somebody who wasn't

11 your agent at the time that the acts were taken.

12          MR. SPEIGHTS:  Well, Your Honor, I frankly haven't

13 focused on that issue, but I would go back to the cases.  I

14 would say that that is -- I believe I would find that in many

15 of the cases that that would occur.  That you are now in a

16 relation by principal even though you didn't authorize somebody

17 to do something, so they were not your agent at the time.  You

18 later authorized them to do it.  Indeed in the class action

19 cases, as they talk about, there are such things as punitive

20 authorization when you file initially, and then the

21 authorization if the Court certifies the class.

22          THE COURT:  Yes, but I think that's a whole lot

23 different from an individual filing a proof of claim.  In the

24 class action rules and processes are different, simply because

25 you don't even know at the time you file a class action who all

1 the class members are in most instances.  But that's not true

2 here.  These individuals are creditors of the estate.  They

3 have notice, either actual or constructive, of a bar date, and

4 they have an obligation to file a valid proof of claim.  I

5 don't think if they -- I think had they called and said file

6 this for me, fine.  You're their agent.

7       But I don't think you can set up an attorney-client

8 relationship nunc pro tunc and have that agent -- or I'm sorry

9 -- that principal ratify an act that you didn't have the

10 authority to do at the outset, because you weren't their

11 attorney.  So that's the problem I have with the ratification

12 theory.  If you want to see if I'm wrong, because I haven't

13 done a lot of research on this area, but that's how -- that's

14 my gut instinct with respect to ratification.

15       MR. SPEIGHTS:  Well, and I would, Your Honor, for

16 this reason.  I think you have cut through the one issue that

17 bothers me.  We got their brief last night.  I don't even

18 believe -- I'm sure Ms. Browdy might find some support

19 somewhere in the United States Supreme Court for the

20 proposition you've identified.  The Supreme Court case to me --

21 and I read it.  That's the only one I read.  I didn't have time

22 to read five, but I read Chief Justice Rehnquist.  I think that

23 dealt with the situation where by law this agency couldn't file

24 an appeal.  It was a jurisdictional issue --

25       THE COURT:  It did.

1          MR. SPEIGHTS:   -- whether you got  certiorari,

2   etcetera, etcetera, etcetera, which I don't think is applicable

3   at all, and I think the Fourth Circuit cases are.  But given

4   that we just got the brief last night, and given that the issue

5   has just come up, I would request a few days to give you a

6   supplemental brief on this issue.

7          THE COURT:  I'll a take a supplemental brief.  I'm

8   not convinced that the Supreme Court case that did deal with a

9   specific statutory authority is on all fours with this.  I

10  understand the application of the principle, but I don't think

11  that the holding itself is on all fours with this case, and I

12  agree with you there.  But I'm not sure that's going to save

13  this batch of claims.  Those that you did -- for whom you did

14  not represent the client at the time their proof of claim was

15  filed, I do not think those entities can ratify the proof of

16  claim.

17         MR. SPEIGHTS:  And my -- as I was headed down the

18  track, I was telling you that I think there are two ways I win,

19  and the first way is if I win ratification.  I would like to

20  brief that a little further and address it as soon as you're

21  ready to address it again.  I'm not trying to delay this,

22  because I'd like these authority objections resolved, as I'm

23  sure you would.

24         The second way that it goes away, also -- and I'm not

25  getting into tomorrow's argument, and I'm not sure how far

                    **J&J COURT TRANSCRIBERS, INC.**

1  we'll go tomorrow on class certification, but certainly if

2  there's class certification that resolves these issues, too,

3  because they would be in the class, and we wouldn't have that.

4  So my request is that you allow us to brief the ratification.

5  If we cannot convince you on ratification, I honestly believe

6  that we could sit down and get a stipulation on what the facts

7  are as to those particular 20/30/40, so we don't have to have a

8  hearing on each individual claim.  I know -- I mean the truth

9  is truth.  If they call us beforehand, that's fine.  If they

10  never call us, some of them didn't like I told the 600.  I did

11  tell them that.  These are the six fact situations.

12          Either they'll agree or won't agree as to authority.

13  They may take to heart what you've said today about the

14  telephone call, and we can almost see it up on a stipulation if

15  you decide as to those who don't agree.  I just don't see us

16  bogging down when ratification resolves everything or

17  certification resolves everything.

18          THE COURT:  Well, the class certification issue may

19  resolve it.  The ratification I guess will if, in fact, you can

20  ratify under these circumstances.  And maybe it does take some

21  fact specific production from you, Mr. Speights, to say what

22  clients you did represent, who you had oral authority from.  If

23  there was oral authority, even though it's not written

24  authority, I'm not so convinced that that's not authority.

25  Authority is authority.  It may not be literally in compliance

1  with the proof of claim form.

2           But I think to that extent the claim form could be

3  amended,  I don't think you could amend a claim form to satisfy

4  the ratification issue.  I think that's not going to be

5  appropriate.  In that instance those claimants would have to

6  show what excusable neglect led them to file a late claim, and

7  I think they have to get some -- if they have a claim at all,

8  then it has to come in that kind of a venue process.  I don't

9  think this will work, but I'd be happy to read some cases if

10 you can give me some.

11          MR. SPEIGHTS:  I appreciate that, Your Honor.  And if

12 we do have to go down the track, in fairness to Grace -- I'm

13 being mighty fair to Grace today.  I don't know what's come

14 over me.  But in fairness to Grace, they don't have the facts

15 about who called whom and that, and I don't want to go through

16 discovery.  I just want to tell them.  I mean they've been

17 asking the question.  I'll tell them if we need to go there,

18 and I'd like to resolve ratification right away, and I'm glad

19 for you to put the shortest leash on getting a brief.

20          THE COURT:  Well, tell me how much time you'd like to

21 brief this issue.  In fact, can both of you do it at the same

22 time?  I mean you've had a chance at this point to see each

23 other's papers.

24          MR. SPEIGHTS:  Seven days.

25          THE COURT:  A week, Ms. Browdy?
                    **J&J COURT TRANSCRIBERS, INC.**

1       MS. BROWDY:  Yes, Your Honor.  I think we had that

2  other brief, oh, in Prudential due February 3rd.  Maybe make

3  this due February 3rd as well.

4       MR. SPEIGHTS:  That would be good.  It's a Friday,

5  Your Honor.

6       THE COURT:  All right.  That's fine.  And I'll just

7  take them -- I think -- hopefully, you can do this in ten pages

8  or less.  I really don't think there is going to be that much

9  case law out there, but --

10      MR. SPEIGHTS:  And the brief is just going to be

11 focused on the points you raised, as I understand it, Your

12 Honor.

13      THE COURT:  That's -- at this point that's all I'm

14 looking for on this issue.  Now maybe we'll have to address

15 other issues as we go.  I don't know.  But on ratification

16 that's the only issue I'm concerned about at the moment.

17      MS. BROWDY:  That's fine.

18                    (Pause)

19      MS. BROWDY:  Your Honor, we don't anticipate a

20 problem getting that brief in, and I'm more than happy to keep

21 it less than ten pages.  The only thing that I would add at

22 this point, if we do then have to further down to get

23 development of additional facts to figure out when these

24 conversations took place, I appreciate that we can start with

25 some kind of a stipulation or representation by the Speights

**J&J COURT TRANSCRIBERS, INC.**

1  firm, but we may well need and ask for discovery.  That's the

2  way we got -- that's really the only way we started to learn

3  about these authority problems in the first place, which we

4  started to notice things.

5          THE COURT:  Well, that's okay.  Let's just get the

6  briefs in, put this on to the February agenda, and we'll do a

7  status conference to see whether or not you need additional

8  discovery.  I think with respect to this, if you can file the

9  briefs by February 3rd, I can read the cases and hopefully have

10  an opinion for you on this limited issue at least by that date.

11  So if you need discovery, we'll address it then.

12          MS. BROWDY:  Thank you, Your Honor.  That would then

13  take us to the question of the remaining 23 claims for which

14  there's no authority, and the surreply brief at pages 3 to 4

15  contends that for 17 of those there was written authority, and

16  the bottom line is we just disagree.

17                         (Pause)

18          MS. BROWDY:  And what I'm handing up, Your Honor, to

19  the Court is the collection of what we received from the

20  Speights firm for these 14 claimants that are addressed in the

21  surreply at page 3 and 4.  There's the supposed authority for

22  the Carlton University claims.  Eight claims are in a single

23  little packet -- two Ispko claims, one Hyatt Vancouver claim,

24  an Eden claim, a Lafayette claim, and a Glenn Oaks claim.  I

25  would note for the Carlton, Ispko, and the Hyatt Vancouver

**J&J COURT TRANSCRIBERS, INC.**

1 claims, those weren't even on the 2019 statement. But the

2 bottom line is these are the authorities we received. We don't

3 think that they show any indicia of client approval. It shows

4 that the Speights firm has files on these claimants, but again

5 we don't think that there's been any authority that's been

6 given in these pieces of paper. And I'm happy to again just to

7 hand those up to the Court and have the Court take it under

8 advisement versus walk them through individually. I mean

9 whatever the Court's preference would be on that.

10         THE COURT: No, I think you'd better walk me through

11 these, because I want to make sure I understand with respect to

12 each one. You know, I have to do a claims allowance and

13 disallowance as to each claim.

14         MS. BROWDY: Okay. Well, if --

15         MR. SPEIGHTS: Just before you start, just to -- have

16 you checked these versus the withdrawals of the last 24 hours?

17         MS. BROWDY: Yes, I believe that we have. I believe

18 that we have. Yes. We'll double check, but I don't believe

19 that any of these are still active.

20         MR. SPEIGHTS: The only reason --

21         MS. BROWDY: I believe they are all still active.

22         MR. SPEIGHTS: Your Honor, I'm not trying to seize

23 the podium from Ms. Browdy. I wouldn't do that, but -- and if

24 you want to do that, that's perfectly fine. I'll tell you that

25 a man who would know about these was writing that brief that

**J&J COURT TRANSCRIBERS, INC.**

39

1  was sent to you this morning and class certification.  And if

2  we are having to go over tomorrow anyway, we may be able to

3  resolve some of these overnight.  If we could defer this group

4  of how many?

5          MS. BROWDY:  Yes, 14.

6          MR. SPEIGHTS:  Fourteen.  We may save you a little

7  time --

8          THE COURT:  All right.

9          MR. SPEIGHTS:  -- and may not.  I mean I just -- I

10 don't know.

11         THE COURT:  All right, so these will be deferred

12 until tomorrow.  That's 14 of the 23?

13         MS. BROWDY:  Yes, Your Honor.  For another three,

14 there are two claims that are duplicates, and one that we

15 believe now has the problem that it's undated rather than

16 unauthorized, so there shouldn't be a problem with those three.

17 So that just leaves six claims that we don't think there's

18 authority for, and essentially they're the six claims that we

19 objected to on authority grounds that the surreply paper

20 doesn't even address.

21         Those are claims for the Hyatt Corporation at 5

22 Embarcadero, the Rackrose site, the Ruden job, Ruden

23 Management, and Ruden Building, and then one more Carlton

24 University claim.  Those are six claims again that we have no

25 record of authority for, and the surreply brief doesn't address

**J&J COURT TRANSCRIBERS, INC.**

40

1  our objection.

2          MR. SPEIGHTS:  And again, Your Honor, Ms. Browdy can

3  just send me an e-mail with that list this evening.  I could

4  quickly resolve them with her.  I'll go right through them

5  tomorrow, and we can tee up the issue very easily of what it

6  is, however you want some other evidence of it.  One of them

7  she named in my mind was one that was withdrawn, but I don't

8  want to say that on the record without checking with Mr. Ferry.

9          THE COURT:  All right.  Okay.  All of the

10 unauthorized claims then are -- will be addressed tomorrow.

11         MS. BROWDY:  Okay.  Thank you, Your Honor.  What I'm

12 going to suggest now is that we move to item G on the agenda

13 which are no product I.D. claims, and specifically in light of

14 the rulings earlier today, we're only going to deal with the 51

15 U.S. claims that have no product I.D., and my colleague, Mr.

16 Bianca, is going to address those.

17         THE COURT:  What ruling?

18         MS. BROWDY:  Oh, on the Canadian claims that he's

19 going to get additional information on, Canadian, so we're only

20 dealing --

21         THE COURT:  Oh.  Oh.

22         MS. BROWDY:  -- with U.S.

23         THE COURT:  Okay.  I'm sorry.  All right.  Thank you.

24         MR. BIANCA:  Good afternoon, Your Honor.  Salvatore

25 Bianca on behalf of the debtors.  I have four charts breaking

**J&J COURT TRANSCRIBERS, INC.**

1  out the 51 U.S. claims I'd like to hand up.

2        THE COURT:  All right.  Thank you.

3        MR. BIANCA:  The debtors object to this category of

4  claims due to their failure to provide any evidence indicating

5  the presence of a Grace asbestos-containing product on the

6  properties.  As my colleague, Ms. Browdy, has mentioned, it's

7  the burden of the claimant to demonstrate a valid basis for the

8  claim before a claimant can be presumed to have any kind of

9  prima facia validity.  The claimant must demonstrate facts

10 sufficient to bring a claim under applicable substantive law.

11 A necessary prerequisite to recovery for alleged property

12 damage is a showing that one of the debtors manufactured or

13 sold the product for which the claim is made.  This is a

14 fundamental requirement across courts, and the fact that the

15 debtors are in bankruptcy doesn't change the requirement.

16        Indeed, as we indicated in our briefs, the Bankruptcy

17 Code clearly provides that a claim not recoverable outside of

18 bankruptcy isn't recoverable in bankruptcy.  Accordingly, the

19 failure to provide documentation identifying a Grace product is

20 fatal to these claims.  It should be kept in mind that these no

21 product identification documentation objections are also

22 separate from our insufficient product identification

23 objections which will be heard at a later date.

24        Those objections address instances where some type of

25 product identification was provided, but it was insufficient to

**J&J COURT TRANSCRIBERS, INC.**

42

1   show that a Grace product was present on the property.  For

2   example, a list of jobs proposing to use MK-3 could've been

3   attached, and the issue in dispute is whether or not that's

4   sufficient to show that the product was actually used and

5   placed on the property.  Here we're talking about the easier

6   case where no product identification documentation is provided.

7   Speights simply has failed to meet the burden of proving

8   product identification -- of providing identification

9   documentation.

10          Although he has provided a number of documents, he

11  hasn't provided a factual basis for these claims.  Rather, he

12  just dumped the documents on us and essentially said, okay,

13  Grace, find out if I have a claim, and this isn't the manner in

14  which the validity of the claim is established.  Unless

15  Speights can come here and demonstrate to this Court that a

16  Grace product was present, his claims must be denied.  Speights

17  attempts to destroy the burden of proof in his briefs by

18  arguing that the debtor should be required to prove a negative.

19  That is that a Grace product cannot possibly have been used on

20  the property, which is contrary to case law which places the

21  burden on the same party that it would have been had the claim

22  been litigated outside of bankruptcy.

23          Nevertheless, we've spent countless hours sifting

24  through the documents provided and found that the claims still

25  lacked any product identification evidence.  The lack of

**J&J COURT TRANSCRIBERS, INC.**

43

1  product identification is particularly egregious, since it's

2  been almost three years since the bar date's passed, and we

3  still have not seen any evidence that a Grace product was used.

4          Moving on to the substance of each of the claims, I

5  refer you to the four charts I handed up.  The claims are

6  easily divided in to four categories.  We also have available

7  for Your Honor a binder for each of these categories which

8  include the claims and all the documentation provided.  Should

9  Your Honor wish to review them as they're discussed, we've also

10  made a copy for Mr. Speights if he wishes to take a look at

11  them as well.

12          THE COURT:  Yes, I think it would be helpful.  We

13  might as well just put it in, and if there's any issue, we can

14  address it.

15          MR. BIANCA:  We'll provide that right now.

16                      (Pause)

17          MR. BIANCA:  The first set of claims are 29 claims --

18  and this is binder one -- without any supporting documentation

19  whatsoever.  These claims just simply do not provide any

20  evidence that an asbestos product was present generally or a

21  Grace asbestos-containing product in particular.  These are all

22  the documents that have been provided by Mr. Speights.

23  Accordingly, we seek these claims to be disallowed.

24          THE COURT:  Do you want, Mr. Speights, to address

25  these one -- sheet by sheet, or would you prefer that the

**J&J COURT TRANSCRIBERS, INC.**

44

1 debtor go through all four sheets and then respond to all of

2 them?

3        MR. SPEIGHTS:  Your Honor, I'd like -- I could just

4 sit here and watch you go through this, but I think the debtor

5 is clearly in error about something -- honestly in error about

6 something, and I would be glad to point it out.

7        THE COURT:  All right.  Go ahead.

8        MR. SPEIGHTS:  I believe that we have product I.D.

9 for all of the California State University buildings that are

10 listed here which are a great majority of buildings.  We filed

11 amended claim forms a long time ago and attached constituent

12 analysis of Dr. Longo for all of those buildings.  I haven't

13 checked every number, but I just pulled the first one -- the

14 second out -- 009988, and I have a constituent analysis report,

15 March 22, 2004, which I believe is attached to the amended

16 claim form which has a number 1 -- maybe they gave a new --

17 this is a -- the -- I've got a 9988.

18        UNIDENTIFIED ATTORNEY:  Different building.

19        MR. SPEIGHTS:  Well, I don't believe it is.  I mean

20 I've done my job and brought that to their attention.  I think

21 they need to look at that, because I think -- it was not my

22 intention to have any California State University building by

23 product I.D., and it's not -- I believe -- I may be wrong --

24 that all of them have constituent analysis, and the error is

25 between filing the original claim forms and the amended claim

**J&J COURT TRANSCRIBERS, INC.**

45

1   forms.  The facility may have assigned new claim numbers, so,

2   therefore, they have two claim forms floating out there.  But

3   if they don't want to check, and they want to proceed, that's

4   fine, and when I get up here, by then maybe I'll have

5   straightened it out.

6        MR. BIANCA:  Actually, we have checked.  These are --

7   these things were pulled off of -- these are from what was

8   submitted to Russ, consulting courts claims agent, and all the

9   documentation that was provided with the claims was reviewed.

10  I believe that, you know, some of these buildings are different

11  -- are buildings that perhaps Mr. Speights believes that there

12  are analyses for, but there just weren't.

13        THE COURT:  Okay.  I don't know.  Mr. Speights, if

14  you've got this analysis, and you think it's been submitted to

15  the claims agent, if you've got some transmittal record, maybe

16  I should give you time to check.  Because if the analysis is

17  there, I don't want to strike claims.  If the analysis isn't

18  there, and, in fact, there's no product I.D., then I don't

19  think I have a choice but to strike claims.  And if it's a

20  mixup somehow or other in claim I.D. numbers, although I doubt

21  -- I mean the claims agent hopefully can track the proof of

22  claim and the amended claim, but I mean he's human.  He/she is

23  -- they're both human.  They can make mistakes, too, I suppose

24  in reporting numbers.

25        MR. SPEIGHTS:  Well, Your Honor, I certainly -- it's

**J&J COURT TRANSCRIBERS, INC.**

46

1  still 3:15 in South Carolina.  I certainly can have the claims

2  electronically sent up here, so in the morning, if not tonight,

3  I can show him here are the claims, here's the product I.D.  We

4  went through this several months ago, and I withdrew all the

5  California conspiracy claims, and we went through them.  We

6  were very careful to sort out between the conspiracy and non-

7  conspiracy, and I have some of the product I.D. reports back

8  here.  I didn't bring the whole amended claim forms.  You know,

9  I don't say I'm a hundred percent right any time, but I am very

10  confident I'm right on these California State buildings.  There

11  are a few without product I.D., not California State buildings

12  but the great majority are California State buildings.

13          THE COURT:  Well, okay.  I think to the extent it

14  exists, we ought to find it.  If it doesn't exist, then the

15  claims probably have to be stricken.  So at this point I think

16  I probably should just continue this issue until tomorrow, too,

17  so you can see whether it does or doesn't exist, whether

18  there's a mixup in the filing.  You know, who knows?  If

19  there's a mixup in the filing, I think it can be straightened

20  out.

21     MR. BIANCA:  Thank you, Your Honor.  Moving to the second

22  category of claims, there are six claims that lack any kind of

23  documentation indicating either the presence of asbestos

24  generally or any kind of product identification.  These all

25  were filed on behalf of Coca Cola Enterprises, and the

**J&J COURT TRANSCRIBERS, INC.**

47

1    supporting documentation for the first two, claim number 12370

2    and 12372, both include documents that where the claimant

3    states that it doesn't have any product identification

4    documentation or any other documentation, because it no longer

5    owns the property.  It sold the property and just didn't have

6    that information.

7            THE COURT:  So is this claim form filed on behalf of

8    Coca Cola?

9            MR. BIANCA:  Yes.

10           THE COURT:  I need to check this, gentlemen.  At one

11   point in time one of my children owned Coca Cola stock.  I

12   don't know if they still do.  I may have a conflict.  I simply

13   have to check this.  Why don't we at least hear your argument,

14   Mr. Speights.  If it's something that can be resolved, it may

15   not be an issue.  If it is -- if my children own the stock,

16   then I'm going to have to not adjudicate the Coca Cola issues.

17   So it may be a different Coca Cola enterprise or Coca Cola

18   subsidiary or something, too.  I just don't know.  I have to go

19   look.  I don't manage any of the stocks, but -- so I generally

20   don't know, but since we're getting dividend statements in at

21   this point in time, this one just came to my attention, so I

22   think I need to check this.  So the issue that Coca -- the

23   claimant doesn't -- for whom the claim was filed said it

24   doesn't have a claim, because it doesn't own the building.

25           MR. BIANCA:  And said the property was sold, and it

**J&J COURT TRANSCRIBERS, INC.**

48

1  doesn't have any documentation.

2         THE COURT:  And that -- the person -- the entity that

3  filed that response is Coca Cola?

4         MR. BIANCA:  Correct.

5         THE COURT:  Okay, so, Mr. Speights, what's the issue

6  with respect to the authority for Coca Cola?

7         MR. SPEIGHTS:  I don't think there's an authority

8  issue with Coca Cola, specifically a product I.D. issue.

9         THE COURT:  Product I.D. issue.  Okay.

10        MR. BIANCA:  The issue is that the claimant doesn't

11 have any documents indicating product identification, because

12 the claimant doesn't own the property anymore.

13        THE COURT:  Well, then how does it have a claim?

14        MR. SPEIGHTS:  Well, it --

15        MR. BIANCA:  It's my question.

16        MR. SPEIGHTS:  Does this microphone work?

17        THE COURT:  It does.  You can stay seated if you

18 like, Mr. Speights.

19        MR. SPEIGHTS:  Thank you.  It would have a claim if

20 it suffered a loss by reason of the sale of the property to

21 somebody else.  If it got less money because of the asbestos,

22 it would be its claim.

23        THE COURT:  Well, yes, except that it's apparently

24 not taking that position.

25        MR. BIANCA:  It's also taking the position that it

**J&J COURT TRANSCRIBERS, INC.**

49

1 doesn't have any kind of documentation to support a claim.

2 MR. SPEIGHTS: I'm not sure if you want me to respond
3 or not, Your Honor. I came here knowing that Coca Cola did not
4 have product I.D. I also came here knowing that California
5 State did have product I.D. I think Coca Cola is in that
6 position of not having product I.D. as of this moment, and Your
7 Honor will have to make a decision whether to give it the 30-
8 day period of time or to strike the claim or defer it because
9 of what other situation if --

10 THE COURT: Well, if I can make a ruling, which I
11 have to go see if I can, it seems that if they're acknowledging
12 that they don't have product I.D., because they don't have the
13 documentation, it's not an issue of giving them 30 days.
14 They're not going to have that product I.D. They're apparently
15 not filing a claim based on either some diminution in property
16 value or anything else, based on the fact that they're not
17 making an effort to get the documentation. So I'm not sure
18 where there is a claim at all.

19 MR. SPEIGHTS: Well, I think, you know, they might
20 have a claim, but I have a feeling that if we wrote them and
21 said they had 30 days, that would be the cleanest way to deal
22 with the situation. But I do not have product I.D. for the
23 Coca Cola buildings, however, there may well be some samples
24 from that building that were taken that we could track down and
25 have analyzed, and the Coca Cola building is represented by the

**J&J COURT TRANSCRIBERS, INC.**

1 industrial hygienist, the same person who did the Canadian

2 buildings, and in fairness, I would like to see them have 30

3 days for one last shot.  We've gone from 3,000 claims down to

4 five or six down here.  I would --

5          MR. BIANCA:  Your Honor, with all due respect, this

6 should've been done by the bar date in 2003, and even the

7 documents that are submitted, the claimant acknowledges that

8 there are no documents that will demonstrate product I.D.

9          THE COURT:  Okay.  If I can make a ruling on this --

10 and I'll try to let you know tomorrow -- then my ruling with

11 respect to this is this is a big company.  To the extent that

12 it had notice of a bar date, and its claim was filed in 2003,

13 it's had almost three years -- two and a half years to be able

14 to get the product I.D.  I don't think 30 more days is going to

15 make a difference.  So I will disallow those claims.  But I

16 don't know if I can do that, so I'll try to let you know

17 tomorrow.

18          And if I can't -- if I do not have the jurisdiction

19 to address this issue, none of you may use this transcript in

20 front of any other court.  It is not going to be collaterally

21 estopped.  It's not going to be res judicata.  It's not going

22 to be the law of the case.  It's not going to be anything,

23 because I don't have -- I have a conflict in addressing it.  Is

24 that clear?  No one will make use of this preliminary ruling on

25 -- that I am making if I don't have the ability to enter this

51

1  because of a conflict.

2        MS. BROWDY:  Yes, Your Honor.

3        MR. BIANCA:  That's clear, Your Honor.

4        THE COURT:  Mr. Speights?

5        MR. SPEIGHTS:  Yes, ma'am.

6        THE COURT:  Okay.

7        MR. SPEIGHTS:  I won't use it.

8        MR. BIANCA:  Now, in this category we have four

9  remaining Coca Cola claims.  Do you want me to discuss those,

10 or can --

11       THE COURT:  You might as well, because I'm making the

12 same ruling in advance with respect to whatever I do.  If I

13 can't -- if I have a conflict, it can't be used by anybody

14 else.  So I will find out tonight.

15       MR. BIANCA:  All right.  The next claim is claim

16 number 12374.  This actually included an asbestos summary

17 report, but it was redacted, and the unredacted portions do not

18 indicate the presence of any asbestos on the property.

19       MR. SPEIGHTS:  I lost the claim number.

20       THE COURT:  Which one is this?  I'm sorry.

21       MR. BIANCA:  It's claim 12374.

22       THE COURT:  All right, and what's the problem with

23 this one?

24       MR. BIANCA:  This includes a summary report regarding

25 asbestos, but it's redacted, and the unredacted portions of the

**J&J COURT TRANSCRIBERS, INC.**

52

1  report do not indicate the presence of any asbestos and, in

2  particular, not a Grace asbestos-containing product.

3           THE COURT:  Okay.  Well, that -- if that's -- if you

4  agree with that, Mr. Speights, that one sort of sounds like

5  there's no claim either if there's no asbestos.

6           MR. SPEIGHTS:  I don't agree with that, but I agree

7  that there's no product I.D. --

8           THE COURT:  All right.

9           MR. SPEIGHTS:  -- for the Coca Cola buildings.

10          THE COURT:  All right, so you agree with that for all

11 of the Coca Cola buildings.

12          MR. SPEIGHTS:  For all of the Coca Cola buildings.

13 My understanding is -- I'll check again tonight, just so I can

14 say wait a minute.  I slipped up.  But my understanding when I

15 came in today was we didn't have product I.D. for these Coca

16 Cola buildings.

17          THE COURT:  Okay, then I'm going to make the same

18 ruling with respect to all Coca Cola claims regarding the

19 buildings in the event that I don't have a conflict.  So I'll

20 -- as I said, I'll address that tomorrow.

21          MR. BIANCA:  Okay.  Fine.  And just to note the last

22 three claims that we have for the Coca Cola buildings only --

23 the only documentation provided was a letter indicating the

24 date in which the property was built.

25          THE COURT:  Okay.  Well, I think Mr. SPeights has

                    **J&J COURT TRANSCRIBERS, INC.**

53

1   already agreed that as to all Coca Cola claims, there is no

2   product I.D.

3           MR. BIANCA:   The next category of claims are 11

4   claims that attach documents that generally refer to the

5   presence of asbestos but do not indicate any kind of product

6   identification.   The claim for Methodist Hospital, which is

7   6697, just attaches a proposed abatement and waste removal

8   description without any other documentation.   This simply does

9   not indicate that the asbestos that was removed was due to a

10  Grace-containing product.

11          The same can be said for the Bayshore Community

12  Hospital claim which is 6901 that also includes asbestos

13  abatement or removal documents.   The California State

14  University claims here merely attach an asbestos management

15  plan indicating how the university would plan on going about

16  handling the discovery of asbestos, generally.   It doesn't

17  indicate that any analysis was done, that it's detected

18  asbestos, and this was due to a Grace asbestos-containing

19  product.   It just is what it purports to be, which is a

20  management plan.

21          The St. Vincent's Hospital addition claim, which is

22  claim number 11193, attaches a one-page article merely saying

23  that acoustical plaster was used on the addition.   It doesn't

24  include any other information.   It's the only documentation

25  provided for the claim, and that just doesn't establish that,

**J&J COURT TRANSCRIBERS, INC.**

1 you know, the acoustical plaster was asbestos containing.  It

2 doesn't establish that it was plaster was a Grace asbestos-

3 containing product.  Accordingly, this claim must also be

4 denied.

5 And the final category of claims were two California

6 State University claims which are claims number 11957 and

7 11962, which attached an asbestos -- containing a material

8 survey which only indicates that asbestos was present on the

9 property.  Again, no product identification was provided.

10 THE COURT:  Okay.  Mr. Speights.

11 (Pause)

12 MR. SPEIGHTS:  I think what we have here are three

13 buckets, Your Honor.  The California State bucket, which I

14 believe I have product I.D. on, the Coca Cola, which I do not

15 believe I have product I.D. on, and I believe he -- although

16 another one's on his list, I only picked up three additional

17 claimants that do not fall under the California or Coca Cola

18 umbrella.

19 Let me say the obvious at the outset, and then try to

20 get to the heart of the matter.  The obvious is that the debtor

21 has the burden of proof on these objections, and it should be

22 the one -- although I'm happy tonight to try to pull those

23 claim forms.  It should be the one to present what was

24 presented in the claim forms and to show you why that is

25 insufficient rather than a summary piece of paper.  But we have