# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | . Case No. 01-1139 |
| | . |
| W. R. GRACE, | . |
| | . 5414 USX Tower Building |
| Debtor | . Pittsburgh, PA 15222 |
| | . January 26, 2006 |
| . . . . . . . . . . . . . . | . 9:15 a.m. |

TRANSCRIPT OF HEARING ON DEBTORS' FIFTEENTH OMNIBUS OBJECTION
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Kirkland & Ellis LLP |
| | By:  MICHAEL T. DIERKES, ESQ. |
| | SALVATORE BIANCA, ES. |
| | MICHELLE H. BROWDY, ESQ. |
| | 200 East Randolph Drive |
| | Chicago, IL 60601 |
| | |
| | W. R. Grace Legal Department |
| | By: RICHARD C. FINKE, ESQ. |
| | 7500 Grace Drive |
| | Columbia, MADE 21066 |
| | |
| For the FAI Claimants: | The Scott Law Group |
| | By:  DARRELL SCOTT, ESQ. |
| | 2712 Middleburg Dr. |
| | P. O. Box 2665 |
| | Columbia, SC 29206 |
| | |
| Audio Operator: | Janet Kozloski |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

---

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-Mail:  jjcourt@optonline.net

(609) 586-2311   Fax No.  (609) 587-3599

1  that, find where the duplicates are or the amendments and
2  collapse them down so, for example, if there's three claims
3  numbers given to a single property, we want to collapse those
4  down, get rid of two of the claims and have it all under one
5  and hopefully we can come up with a mechanism and do this by
6  agreement of counsel and get that in place.  Otherwise we may
7  need to come back to the Court.  But my expectation is it's
8  going to be a mechanical task.
9       And then the second thing we're going to need to do
10 obviously is to work with the claims processing agent to make
11 sure they're prepared to deal with this issue going forward.
12 But I think that explains what we had stumbled into yesterday.
13      THE COURT:  All right.
14      MS. BROWDY:  In terms of our agenda for today, Your
15 Honor, I'm just going to hand up a little chart for the Court.
16                           (Pause)
17      MS. BROWDY:  What we thought we would do, Your Honor,
18 is first just clean up a couple items from yesterday that we
19 continued over to today and then again that should go pretty
20 quickly we expect, and then we'd go into the class
21 certification.
22      THE COURT:  All right.
23      MS. BROWDY:  The first issue up would be the
24 unauthorized claims.  You may recall we initially objected to
25 38 claims for which we said that there was no authority.

8

1  Fifteen of those were withdrawn.  We still have a dispute with
2  the Speights firm as to 20 of those and my colleague, Mr.
3  Dierkes is going to be address those.  We apparently attempted
4  to meet and confer with Mr. Speights on these unsuccessfully.
5  So the parties still don't agree whether or not there's been
6  authorization shown.
7         THE COURT:  All right.  All right.
8         MR. DIERKES:  Good morning, Your Honor.  Michael
9  Dierkes on behalf of debtors.  As Ms. Browdy has stated, I'm
10 going to be addressing the 20 remaining Speights and Runyon
11 claims for which we believe the firm didn't have authority to
12 file them.  But this -- this started -- this process started
13 last summer back in July when we originally filed our motion
14 for leave to file our 13th omnibus objection.  Our objections
15 are set out in detail in the 13th omnibus which is docket
16 number 93-11.
17        THE COURT:  We covered this yesterday.  Tell me what
18 the issue is today.
19        MR. DIERKES:  Right.  Well the specific issue is we
20 still have 20 claims where we contend that there's no
21 authority.  Mr. Speights contends there is authority.  There is
22 a court order entered back on September 23rd of 2005 which
23 required Mr. Speights to identify the claims for which he
24 believes he has authority and proof that he has authority and
25 it's four months later and he still hasn't given us that proof.

1    THE COURT: All right. What are you looking for that
2 he hasn't produced?
3    MR. DIERKES: We're looking for solid evidence that
4 he was actually authorized to file these specific claims. He
5 hasn't given that to us.
6    THE COURT: All right. What does solid evidence
7 mean?
8    MR. DIERKES: Something signed by the claimant that
9 says that they authorize Mr. Speights to file the claim and
10 when they authorized him to file the claim.
11    THE COURT: All right. Mr. Speights?
12    MR. SPEIGHTS: Maybe the short answer would be we
13 could agree on a two-sentence form and I could send it to these
14 remaining ones and get it signed and maybe that's -- if that
15 would expedite it and that would be agreeable I'll do it. But
16 I have an explanation. And let me just give you one example.
17 It's the first one on their list. It may not be the best, but
18 it's certainly not the worst example of what we have here. The
19 first one is the Hyatt in San Francisco. I personally can talk
20 about it because I personally dealt with the Hyatts before the
21 bar date and I dealt with a lawyer representing the Hyatts in-
22 house named Stephanie Fields I believe in the great city of
23 Chicago. And I have a series of e-mails with Ms. Fields saying
24 do you have this, do you have that signed, give us this
25 information, I need that information, all of which are

1  attorney-client privilege.  Clearly I had authority from Ms.
2  Fields.  She told me I had authority.  I know I had authority.
3  There was not a contract signed, retainer agreement signed for
4  Grace at that time before the bar date, but I was operating
5  with her express authority, express permission and with a lot
6  of exchange of information and I'd be happy to share these e-
7  mails with the Court if I don't waive attorney-client
8  privilege.  It can be done in-camera.
9        THE COURT:  Do you want me -- a retainer agreement?
10       MR. SPEIGHTS:  No, Your Honor.  I don't believe so.
11  I mean that's --
12       THE COURT:  There's nothing under state law that says
13  that you have to have a retainer agreement.
14       MR. SPEIGHTS:  I don't believe so.  However I tell
15  you that, for example, I've represented the Hampton Schools, my
16  hometown is 3,000 people, for years without a retainer
17  agreement.  It's certainly customary.  And in fairness, may I
18  say a couple of things about these e-mails without their being
19  deemed a waiver of the privilege?
20       THE COURT:  Yes, I guess, so that I can understand
21  what the issue is.  I mean it seems to me that maybe I'm just
22  unfamiliar with a state court practice that doesn't require a
23  written retainer agreement.  But I don't know how you represent
24  somebody without a written retainer agreement.
25       MR. SPEIGHTS:  I can explain that if I can refer to

11

1  the e-mails without waiving the privilege.

2  MS. BROWDY: Actually, Your Honor, I have no problem
3  with that at this point, but let me -- if we're going to talk
4  about privilege, we've asserted he didn't have authority to
5  file the claims. He gave us information that doesn't assert --
6  the data he gave us doesn't show that he had authority to file
7  the claims. He's now saying I have it in confidential
8  attorney-client communications. You can not use privilege as a
9  sword and a shield saying I had authority from these clients
10 but I'm not going to disclose to you how I got it. So if he
11 puts at issue these attorney-client communications, he has to
12 waive privilege because -- and I have a line of cases. It
13 didn't occur to me to bring them here today.

14 THE COURT: Well I understand that line of cases. It
15 seems to me, however, the issue is this. If you have the
16 authority and the only issue is the ministerial act of getting
17 somebody to put it in writing, then I'm going to give him time
18 to do it, although I don't know why, Mr. Speights, we're here
19 today without your having done that. I really don't understand
20 that. You know what the objections are. You know, this has
21 been going on for a long time and it seems to me that if the
22 authority's there, it's not that hard to call your client and
23 say look, I need you to sign a two sentence letter that says I
24 have the authority to do it.

25 MR. SPEIGHTS: I appreciate that, Your Honor, and --

1    MS. BROWDY: And Your Honor, and both the authority
2 and when authority was given because of the issues raised
3 yesterday.
4    THE COURT: Well I understand.
5    MR. SPEIGHTS: And that's fine and I should -- I've
6 been doing this too long to say anything else now that I accept
7 the Court's ruling. But I think we've gotten down to just a
8 few and we all have our bureaucracies. I've been trying, but I
9 realize now with the voice of the Court saying it's now or
10 never to put this in writing what these e-mails reflect, I
11 think I'll get it done.
12    THE COURT: Well it was now or never at the bar date.
13    MR. SPEIGHTS: Well --
14    THE COURT: So if there are any other cases coming up
15 in which there's a bar date, this latitude isn't going to
16 happen in those other cases. Let me just explain that. I
17 understand that, you know, there's a learning curve in dealing
18 with lawyers and judges back and forth. But my learning curve
19 is if I put a date on record, I expect it to be honored unless
20 the parties come forward with evidence before that date and
21 tell me why they need an extension. I'm pretty liberal about
22 extensions for the most part until it gets to a point where I
23 think it's abusive and then I'm not. So it's just the way I'm
24 --
25    MR. SPEIGHTS: Thank you.

```
                                                                    13
 1              THE COURT:  -- accustomed to practicing that way in
 2   this District and the Western District of Pennsylvania.  That's
 3   generally how people behave here.  That's the way I generally
 4   behave.  But I don't expect to have something come up in Court
 5   at the last minute when you've had two years to get it done and
 6   I'm not going to be liberal about it in the future.
 7              MR. SPEIGHTS:  Thank you, Your Honor.
 8              THE COURT:  All right.  I'll give you two weeks to
 9   get these documents signed and show when you got the authority,
10   who gave it to you and the method by which it was communicated.
11              MR. SPEIGHTS:  Thank you, Your Honor.
12              THE COURT:  What else do you need, Ms. Browdy?
13              MS. BROWDY:  I think that would do it on these 20
14   unauthorized claims.
15              THE COURT:  All right.
16              MS. BROWDY:  On the product I.D. --
17              THE COURT:  Wait.  I need to catch up with my notes.
18   Just a minute, please.
19                          (Pause)
20              THE COURT:  Okay, Ms. Browdy.  Thank you.
21              MS. BROWDY:  Thank you, Your Honor.  On the product
22   I.D. I believe we've resolved everything except for Coca-Cola
23   Enterprises.  The Court was going to tell us I think today
24   whether or not --
25              THE COURT:  Oh, and I forgot.  I'm so sorry.  I
```

1  totally forgot to look last night when I got home.
2        MS. BROWDY: We understand the Court has a lot on
3  Your Honor's plate. We are going to be before the Court again
4  Monday for the omnibus hearing.
5        THE COURT: Okay. Yes. What I will do, if we have a
6  recess, I will make a phone call to my husband. If I can get
7  him at work, then it shouldn't be an issue. I ought to be able
8  to be able to tell you that today. I just simply totally
9  forgot. I'm so sorry.
10       MS. BROWDY: No, that's fine, Your Honor.
11       THE COURT: Okay. So let's move to this -- on to
12 something else and I'll get back to this one later.
13                       (Pause)
14       MS. BROWDY: The last item then that we have up this
15 morning, Your Honor, before moving to class certification is
16 the follow up on what Speights is going to be obligated to do
17 to get true responses from his clients as to their date of
18 knowledge. You'll recall we dealt with that at some length
19 yesterday. I've given out proposal to Mr. Speights. I'll hand
20 up a copy to the Court.
21       THE COURT: All right.
22       MS. BROWDY: Again, all of the other claimants in
23 this bankruptcy by order of this Court after extensive briefing
24 and hearings on what ought to be in the proof of claim form,
25 everyone was responsible for answering questions 18 and 20

15

1  which reflected date of knowledge of presence of asbestos in
2  the property and specifically date of knowledge of Grace
3  product.  Mr. Speights put in false information for his
4  clients, indicated 2003, without ever asking the clients.  And
5  what we would now ask is that Mr. Speights be ordered to go
6  back to each of the clients for whom he still has a live claim,
7  then it's about 500 claims -- fewer clients because, for
8  example, California State may be, you know, 50 claims or so.
9         But for each claimant we need to know when the
10 claimant first learned of the presence of asbestos in the
11 property for which the claim is being asserted.  Second, when
12 did the claimant first learn that the property for which the
13 claim is being asserted contained a Grace asbestos containing
14 product.  And finally consistent with what the intention of the
15 claim form was, we want that statement signed under oath not by
16 Mr. Speights, but by a corporate representative that has
17 authority to bind the claim that he's making the claim.  Again,
18 we think it's fully consistent with what the claim form
19 required everyone else to do by March of 2003.  We can't do
20 anything with the 2003 date that Speights gave us.  We need
21 this information to go ahead with our objections process.
22        THE COURT:  Okay.  Well you're not asking for
23 anything other than what the claim form asks for.
24        MS. BROWDY:  Yes, Your Honor.
25        THE COURT:  Okay.  Mr. Speights.

**J&J COURT TRANSCRIBERS, INC.**

1   MR. SPEIGHTS: Your Honor, I thought we'd heard this
2   matter yesterday and you had ruled. I didn't even bring the
3   file back with me today. And I thought your ruling which I
4   completely understood was that Grace had a choice and they
5   wanted to think overnight, they either -- you would either
6   require me to send the claim form to my clients and make them
7   sign it, the appropriate person, or they could send an
8   interrogatory, one or the other.
9   THE COURT: Right.
10  MR. SPEIGHTS: And if that's the issue, then I don't
11  -- this is something a Court order, you directing me to do some
12  special questions, et cetera. I think this is -- I think Ms.
13  Browdy had a choice of A or B and she came back with C.
14  THE COURT: Well, no, I believe that this is the same
15  information that's already on the claim form. It's stated
16  differently in this exhibit that she's handed up. But I think
17  she handed up an exhibit a little earlier that is the claim
18  form that had questions 18 and 20 which asks for the dates when
19  the claimant knew about asbestos in the property first and then
20  asked about the date that they knew of Grace's product in the
21  property second. And that's the same thing that this form is
22  asking for.
23  MR. SPEIGHTS: Well, Your Honor, I respectfully
24  disagree although I will need first to admit that reasonable
25  people can disagree on the interpretation of the claim form

1  because I and other people have read the first question. The
2  only one they've objected to is the answer to question 18 and I
3  don't have the file with me with the claim form in front of me.
4          THE COURT: Could you put the claim form back up, Ms.
5  Browdy, please?
6          MS. BROWDY: Certainly, Your Honor.
7          THE COURT: Okay. Question 18 is when did you first
8  know of the presence of asbestos in the property of the Grace
9  products --
10         MR. SPEIGHTS: Yes.
11         THE COURT: -- in which you are making this claim?
12 And then the second one is when did you first know that the
13 Grace product for which you are making this claim contained
14 asbestos? So I think it should be when did you know of the
15 presence of asbestos in the property, yeah, of the Grace
16 product for which you are making the claim? So the first
17 question is still asking about in the property of the Grace
18 product -- it's still asking for Grace -- the Grace product
19 date not just general knowledge of asbestos in the property.
20 And the second question, which is question 20, is when did you
21 know that that product had asbestos? So the first one just
22 wants to know when did you know -- well they're asking the same
23 question. They're both asking the same thing.
24         MS. BROWDY: Wait --
25         MR. SPEIGHTS: I think it is. And it's -- we can

**J&J COURT TRANSCRIBERS, INC.**

1  spend a lot of time arguing about what they mean.  I think it's
2  ambiguous.  I think she wants to -- she wants to clear up the
3  ambiguity.
4      THE COURT:  Well I mean I don't think it's ambiguous.
5  I think they're both asking for the same thing.
6      MR. SPEIGHTS:  I think --
7      THE COURT:  The first question should have asked when
8  did you know about asbestos but it doesn't ask that.  It asks
9  for Grace products.  They both --
10     MR. SPEIGHTS:  And I think that's why our answer at
11 the time was made in good faith and was correct, and they don't
12 like it because they asked the same question twice.
13     THE COURT:  They did ask the same question twice, Ms.
14 Browdy.
15     MS. BROWDY:  Your Honor, there's -- there can be no -
16 - you can't argue with the straight face that the 2003 date was
17 given in good faith.  The 2003 date was given for properties
18 that didn't have Grace product in it, that were withdrawn
19 because they lacked product identification.
20     THE COURT:  Regardless, you've asked the same
21 question and you got an answer.  You may not like that answer.
22 You can take depositions of the claimants.  I'm sympathetic to
23 your assertion that the claim form should be signed by the
24 claimant under these circumstances and I'm going to have Mr.
25 Speights return it to the clients and get them to sign it.  And

```
                                                                19
 1  if they don't agree that 2003 is the right date, then I'll
 2  order them to amend it.  I don't want a false proof of claim
 3  form filed.  But if in fact that's the date in which they knew
 4  that Grace products were in the property and that's the
 5  asbestos containing product, then that's the information and
 6  whether you like it or not, that's what they're going to tell
 7  you.
 8            MS. BROWDY:  Okay.  So he's going to get ordered to
 9  go back to each of his clients and answer questions 18 and 20
10  on the claim for by a client signed under oath.
11            THE COURT:  The one that -- the ones that you've
12  objected to that are still at issue, yes.  I'm not going to
13  have them go back -- their clients, yes.
14            MS. BROWDY:  Okay.  And again, everyone else in this
15  bankruptcy had to do that by March of 2003.  It's two years
16  later.  I mean I think he should have to do that within --
17            THE COURT:  He had the authority to sign the claim
18  form.  Assuming he had the authority then you've got a proper
19  claim form.  Just because you don't like the information
20  doesn't mean that it's false.
21            MS. BROWDY:  But it's -- again, it's -- we don't like
22  it because it's false.  It's --
23            THE COURT:  You're making a giant leap, Ms. Browdy,
24  which I really would appreciate your not doing.  An assertion
25  that an attorney is falsely presenting information is not
```

1  something this Court takes lightly. And if in fact you prove
2  that, there's going to be a reference to the Department of
3  Justice for criminal prosecution as a result. So, please, do
4  not use those words in this Court lightly.
5       MS. BROWDY: Your Honor, those words are not offered
6  lightly. That was spelled out factually in our objection, the
7  13th omnibus, claim 9311 that has evidentiary record. It has
8  affidavits attached. It has letters attached.
9       THE COURT: We're talking, Ms. Browdy, don't expand
10 the subject, about the claims that are at issue right now where
11 I'm going to order Mr. Speights to take these back to his
12 clients and get them to sign under oath the answers to the --
13 pardon me, to the questions on the proof of claim form. That's
14 what's going to happen. They're going to answer it. If the
15 answer comes back 2003 just because you don't like that answer
16 doesn't mean it's false.
17      MS. BROWDY: Fair enough, from the client. We need
18 the answer from the client.
19      THE COURT: From the client. Yes. Mr. Speights, how
20 much time do you need?
21      MR. SPEIGHTS: Well I don't know what the short
22 answer is, but more than a short amount of time. I mean I need
23 -- I don't need but a week to go out to clients, but -- I'm
24 cognizant of the fact that a large of number of these are
25 California buildings and these people are going to answer the

1 question based on the best of their knowledge. We have been
2 supplying them, by the way, documents along which in some
3 instances clarifies the situation. But are you telling -- I
4 hate to even ask this question. If the answer is to give you
5 the best good faith answer they can, 30 days. If you're
6 telling them to question everybody who's ever worked in the
7 building, look at every piece of paper both at that institution
8 and within the state hierarchy of the State of California, et
9 cetera, et cetera, I don't know how long it would take. It may
10 be an initial answer and a supplementation.
11         THE COURT: They've had since 2003 when the claim
12 forms came down. So hopefully they've got this process
13 underway. If they intend a proof of claim, then they know that
14 they've got a burden of proof and that is going to be part of
15 their burden of proof when it's objected to. So I don't expect
16 it's going to take another six months to contact everybody in
17 the state if that's what's required. If you need more than a
18 month, okay. But it's not going to be a six-month long
19 process. They've had plenty of time to get this together.
20         MR. SPEIGHTS: I understand it, Your Honor.
21         THE COURT: You want 60 days, I'll give you 60 days.
22 But I expect at the end of that time if the claim form is not
23 signed by an authorized representative and they have to
24 undertake whatever investigation is appropriate for either the
25 state or the corporation, whatever it is, to get that

22

1  information, you know, back.  There are state laws that govern
2  when a corporation is alleged to have knowledge of its
3  employees and sometimes when it isn't alleged to have that
4  knowledge.  So --
5       MR. SPEIGHTS:  Let me say, just so the record is
6  clear and people on the phone as well.  We have continued to
7  gather documents and get information and the 2003 is the date
8  we identified, our clients identified Grace is consistently the
9  right date.  Will we find a situation where on further
10 investigation we don't find some document else way, I'm
11 confident that will probably happen.  But I don't think you're
12 going to see any wholesale change of the 2003 date as you and I
13 interpret the question.  Thank you, Your Honor.
14      THE COURT:  Okay.  The proofs -- the signed proof of
15 claim forms are to be submitted to the claims agent with copies
16 to Ms. Browdy, I want copies sent to her so that she knows that
17 in fact this information has been appropriately filed by --
18 when's the April omnibus?
19      MS. BROWDY:  April 17th, Your Honor.
20      THE COURT:  Okay.  If I have them filed two months
21 from now, March 24th, that should be sufficient time to put
22 these back on the April agenda if there are still any other
23 issues left and for you to work out the terms of an order if in
24 fact this satisfies whatever objection the debtor has at that
25 point to this issue.

**J&J COURT TRANSCRIBERS, INC.**

1      MS. BROWDY:  Thank you, Your Honor.  That would bring
2 us to the Anderson motion for class certification.
3      MR. BAENA:  Your Honor.
4      THE COURT:  Yes, sir.
5      MR. BAENA:  May I say something before you move onto
6 the next subject.
7      THE COURT:  Yes.
8      MR. BAENA:  Judge, I only rise because of the
9 implication of something you said in respect of the estimation
10 which we are principally responsible for.  A moment ago you
11 alluded to the burden of proof that claimants have in respect
12 of when contamination -- when contamination occurred.
13      THE COURT:  No, that wasn't the question.  The
14 question is when did they know that there was a Grace product
15 that had asbestos in the building?
16      MR. BAENA:  You referred to it as their burden of
17 proof.  And respectfully, Judge, I reserve the right to
18 disagree with that interpretation of the law at another time
19 because that's not our view.
20      THE COURT:  The claimant doesn't have to prove when
21 they had a claim accrue?
22      MR. BAENA:  No.  The claimant has to prove that they
23 have a claim.
24      THE COURT:  Right.
25      MR. BAENA:  They have -- in many states, most states,