IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Re: Docket No. 10014 |

## THE WORLDWIDE CLASS: ANDERSON'S FINAL BRIEF IN SUPPORT OF CLASS CERTIFICATION OF THE PUTATIVE NON-SOUTH CAROLINA CLASS

The Debtors ("Grace"), were involved in the manufacture of asbestos-containing surfacing treatment from 1938 through 1978 (See, 55 FR 5144, §28, February 13, 1990), and have been a defendant in asbestos property damage litigation since the early 1980's. *See e.g., In re Asbestos School Litigation*, 104 F.R.D. 422 (E.D.Pa.1984), *aff'd in relevant part*, 789 F.2d 996 (3d Cir.), *cert. den'd*, 479 U.S. 852 (1986); *City of Greenville v. W. R. Grace & Co.*, 640 F.Supp. 559 (D.S.C.1986), aff'd, 827 F.2d 975 (4th Cir.1987). On December 23, 1992, Anderson Memorial Hospital filed a Class Action against Grace and a number of other former manufacturers of asbestos-containing surfacing materials on behalf of certain building owners. (Cl. Ex. 44)[1]. The class action, as originally filed, did not have geographical boundaries. The parties litigated the putative class action in State and Federal Court for almost nine years prior to the Debtors' Chapter 11 Petition.

---

[1] The Original Anderson Class excluded (1) any public and private elementary school within the Class Action, *In Re Asbestos School Litigation*, 104 F.R.D. 422 (E.D. Pa. 1984), *aff'd in part and vacated in part*, 789 F. 2d 996 (3rd Cir. 1986), *cert. denied*, 479 U.S. 852, 915 (1986); (2) any public and private college or university within the Class Action, *Central Wesleyan College v. W.R. Grace & Co.*, C/A No. 2:87-1860-8 (D.S.C.); (3) any commercial building leased in any part to the United States Government on or after May 30, 1986, within the Class Action, *Prince George Center, Inc. v. United States Gypsum Company, et al.*, C/A No. 5388 (Phil. C.P. Court); or (4) any building owned by Federal or State Government.

070810143335.RTF

In 1994, South Carolina circuit court issued an order striking out-of-state class members from the Anderson Complaint based upon the South Carolina "Door Closing Statute." (S.C.Code Anno. §15-5-150). (Cl. Ex. 71). In 1995, the Court denied reconsideration of that order. (*Id*). Because that order did not conclude the case, it was not immediately appealable under South Carolina law. (Cl. Ex. 94, p. 2). Anderson could only reserve its position for appeal at the conclusion of the case before the circuit court. (Id). Until that appeal could be resolved, based upon both legal authorities and a opinion from a class action ethics expert, Anderson and its counsel were under a fiduciary duty to all absent class members to take steps to preserve known claims held by out-of-state class members, even after the litigation was stayed by the Debtors' Bankruptcy. (Cl. Ex. 150, pp. 249 (Sept. 5, 2000 Hearing).

After Grace filed for Bankruptcy, it eventually sought to impose a claims bar date. The Bankruptcy Court partially agreed, and entered an Order setting a bar date of March 31, 2003 for traditional asbestos-property damage claimants, but not other asbestos claimants. (Doc. No. 1960). The Order adopted in large part the Debtors' Notice Plan, but did not require that Grace provide direct notice to buildings or building owners with asbestos property damage claims who could be identified through the Grace's sales records and documents relating to the asbestos-containing surfacing materials it previously manufactured. (Doc. 10014, pp. 2-5). Grace later conceded that no effort had been made to identify asbestos-property damage claimants from its sales records, but argued that such an effort would have been "unreasonable." (Doc. 11574, pp. 2-5). The Court prohibited discovery on that issue.

As class representative, Anderson, and class counsel, Speights & Runyan, sought to fulfill their fiduciary duties to absent class members by filing both a Class Proof of Claim and Proof of Claim forms for each claimant/class member it could identify through the Debtors' sales records. (Doc. No. 9067, at p. 4). Before the bar date, Anderson, through its counsel, filed Proof

of Claim forms and attempted to contact and notify hundreds of claimant/class members identified in the Debtors' sales records, including each of the forty-four appellants, of the Grace Bankruptcy proceedings. (Id). Anderson also sought to preserve these claims of claimant/class members by filing a class Proof of Claim.

In September 1, 2005, Grace filed its Thirteenth and Fifteenth Omnibus Objections to Property Damage claims which raised substantive legal and factual objections to these claims and the class Proof of Claim. (Doc. 9311, 9315). The filing of these objections created a "contested matter" and, for the first time, implicated Rule 9014, F.R.Bankr.P. which permits bankruptcy courts to apply Rule 7023, F.R.Bankr.P. and certify class actions in bankruptcy.

October 21, 2005, Anderson, through its counsel, filed a Motion for Class Certification under Rules 9014 and 7023, Fed.R.Bankr.P seeking to certify an asbestos property damage class that included all of the claimant/class members for which it had filed Proofs of Claim. (Doc. No. 10014).

**Discussion**

Unlike Rule 23, FRCP, class actions are authorized in Bankruptcy only in "contested matters" which are procedurally governed by Rule 9014, FRBP. Rule 9014 provides that, "the court may at any stage in a particular matter direct that one or more of the other rules of Part VII [including Rule 7023] shall apply." The decision to make Rule 7023, FRBP applicable to the "contested matter" in the Bankruptcy proceeding is within the sound discretion of the bankruptcy judge. *In re American Reserve,* 840 F.2d 487, 488 (7th Cir.1987) ("Rule 23OLE_LINK1 may apply throughout a bankruptcy case at the bankruptcy judge's discretion.") Therefore, there are two points of analysis that a Court will undertake in certifying a class action in a bankruptcy proceeding: 1) whether Rule 7023, FRBP should be applied to a particular bankruptcy case; and 2) are the pre-requisites of Rule 23, FRCP satisfied such that class treatment is appropriate.

A number of courts have combined the analysis and have held that if the pre-requisites of Rule 23 have been met, then application of Rule 7023, is appropriate. *See, In re Kaiser*, 278 B.R. 58 (D.Del.2002); *In re United Companies*, 276 B.R. 368 (D.Del.2002); *In re Interregional Equity Corp.*, 227 B.R. 358 (D.N.J.1998). Other courts, however, have undertaken a separate review of the effects certification would have on the bankruptcy. Apart from the Rule 23 factors, this analysis focuses on factors such as the status and history of the class litigation prior to the bankruptcy petition, the relative equities of class certification between to the parties. *See, American Reserve*, 840 F.2d 487 (7th Cir.1988); *In re Charter*, 876 F.2d 866 (11th Cir.1989); *In re Sacred Heart*, 177 B.R. 16 (E.D.Pa.1995); *In re Craft*, 321 B.R. 189 (N.D.Tex.2005); *In re First Alliance Mortgage*, 269 B.R. 428 (C.D.Cal.2001).

A.   **Rule 23 Factors**

The application of Rule 23 to asbestos property damage cases has been thoroughly vetted by trial and appellate courts including the third circuit. *In re Asbestos School Litigation*, 104 F.R.D. 422 (E.D.Pa.1984), *aff'd in relevant part*, 789 F.2d 996 (3d Cir.), *cert. den'd*, 479 U.S. 852 (1986); *Central Wesleyan College v. W. R. Grace & Co.*, 143 F.R.D. 628 (D.S.C.1992), *aff'd*, 6 F.3d 177 (4th Cir.1993); *Detroit Board of Education v. The Celotex Corporation*, Case No. 84-429634 (Cir.Ct., Wayne County, MI, Sept. 6, 1985) (Doc. 10014, Ex. C at p. 15); *National Gypsum co. v. Kirbyville Independent School District*, 770 S.W.2d 621 (Tex.App.1989); *Dayton Independent School District, et al. v. U. S. Mineral Products Company*, 1989 WL 237732 (E.D.Tex., Feb. 14, 1989); *Prince George Center, Inc. v. U. S. Gypsum Co., et al.*, No. 5388 (Pa.Ct.Com.Pls. April 16, 1992). More recently, the Third Circuit again discussed the propriety of class certification in asbestos property damage actions, noting that these cases presented "vastly fewer individualized questions" than asbestos personal injury classes. *Georgine v. Amechem Products, Inc.*, 83 F.3d 610, 627 and n. 13 (3d Cir.1996), *aff'd sub nom.*,

*Amchem v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Appellate courts from other courts have similarly distinguished asbestos property damage actions as uniquely appropriate for class certification. *Castano v. American Tobacco Co.*, 84 F.3d 734, 742 (5th Cir.1996) (citing *School Asbestos Litigation* to note that property damage cases involved fewer individualized questions that personal injury cases); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1232 (9th Cir.1996) (citing *School Asbestos Litigation* class "as much more manageable than a personal injury case would be because, in essence, the effect of asbestos in different buildings is the same where the effect of asbestos on different people is not").

### B.    Rule 9014, F.R.Bankr.P. Considerations

Despite Grace's suggestion that Bankruptcy Courts are loathe to invoke Rule 7023, a number of courts have certified class actions or allowed them to proceed through the bankruptcy process[2]. One of the factors is the pre-petition status of the litigation. *In re Sacred Heart*, 177 B.R. 16, 20-21 (E.D.Pa.1995). In *Sacred Heart*, the court reasoned

> we believe that the class proof of claim device may be utilized in appropriate contexts, but that such contexts should be chosen most sparingly. The situation where a class has been certified pre-petition by a non-bankruptcy court and the representative files a claim on behalf of a class of parties the adequacy of the representation of whose interests is uncertain, **or where a class action has been filed a considerable time pre-petition and allowed to proceed as a class action in a non-bankruptcy forum, are the best candidates for such treatment.** In these cases, it is very likely that certain procedures for notifying the unnamed class members about the class issue and the members' rights have been devised and followed pre-petition. In fact, it can be convincingly argued that it would be wasteful for the bankruptcy court, in its claims process, to either replicate any notice procedures already utilized in the court class-action process, or for the bankruptcy court to undertake to provide for different notices which could very well confuse unnamed class members to their unfair prejudice. *Id* (emphasis supplied).

Here, the Anderson putative class was filed almost nine years prior to Grace's Chapter 11 filing, and although the circuit court struck the non-South Carolina class members in 1996, the

---

[2] Anderson has attached a Summary of Decisions which have allowed certified class in bankruptcy as Exhibit A.

issue was preserved for appeal as of the petition date. (Cl. Ex. 94, p.2). Although the non-South Carolina class was not certified, it was clearly the subject of considerable time and effort pre-petition.

Another consideration is whether the grant or denial of certification would inflict any prejudice to the Debtors other creditors. For example, in *In re Craft*, 321 B.R. 189 (N.D.Tex.2005), the court noted that it would prejudice the Debtor and other creditors to "delay the plan process and claim objection process to conduct a Rule 7023 hearing." *Id* at p. 199.

Here, there is no danger that a certification of the Anderson Putative class would delay plan resolution or slow down the bankruptcy. First, this bankruptcy is at a different stage than in *Craft*. The only plan currently on file is Grace's, which is hopelessly unconfirmable. This Court just recently ended exclusivity to allow the submission of alternative plans, and hopefully, jump start a new round of plan negotiations between the various constituencies. (Doc.16396). Moreover, even if the case continues down its current track, there is no doubt that the driving issue will be Bodily Injury estimation which has now been pushed back into 2008. Finally, upon information and belief, the Speights & Runyan/Anderson claimants appear to be one of two groups of property damage claimants who have not settled their claims with Grace. Accordingly, there is little doubt that the remaining property damage litigation will be dominated by the Speights & Runyan claimants litigating the issues of hazard and, if applicable, constructive notice, which Grace has already conceded are common issues appropriate for Rule 42, F.R.C.P. consolidation. There is simply no reason to believe that the certification of the Anderson putative class would disrupt these bankruptcy proceedings.

Another consideration identified by the cases is the competing prejudice considerations between Debtors and other Creditors. As the court in *Sacred Heart* explained:

> Known claimants of all kinds who have received actual notice of the bar date must proceed through the claims process on a level playing field. Tinkering with an established bar date may raise due process claims of parties who have timely filed claims by originally-established bar dates, since it gives late filers a second bite at an apple which is likely to be less than fully satisfying, and thus effect unfair diminution of the timely filer's share of a distribution. On the other hand, bar dates are generally not binding on known creditors who have not received appropriate notice of bar dates, and they may not be binding on unnotified unknown creditors. Therefore, a class claim and motion which has the effect of expanding the bar date for unnotified creditors is often appropriate to comport with due process of law and expand the scope of a debtor's bankruptcy discharge. On the other hand, an action which expands the bar date for notified creditors may itself violate due process. *Id.*

While these factors are appropriate for consideration, they are often overstated. Other cases go a long way to dispel these concerns of "dilution" of the claims of timely filers. In *In re American Reserve*, 840 F.2d 487, n. 3 (7th Cir.1987), the court noted that "other creditors have no right to the higher share of the debtors' assets they achieve by excluding rival creditors at the threshold." *See also, In re First Alliance*, 269 B.R. 428, 446 (C.D.Cal.2001). In any event, the claims of the putative class members Anderson seeks to certify were all timely filed, albeit by class counsel. Accordingly, neither Grace nor any other creditor (not one of whom have come forward to object to Anderson's class claims or its motion for class certification) can claim they had no notice that these claims existed or that the putative class members might be creditors in this case. Finally, by definition there is not competition between creditors where, as Grace claims here, there will be a 100% plan.

Any perceived prejudice to the debtors and other creditors, however, must be weighed against the prejudice to absent class members should certification not be permitted. These considerations largely turn on the due process/notice rights of class creditors that arise when the Debtors seek to discharge claims and emerge from bankruptcy with a fresh start, but have failed to give direct or adequate notice to claimants. Without appropriate notice, the claimants run the risk of being barred without ever getting to present a claim.

Courts have also determined that the class device can also serve the bankruptcy goals of debtors. As the court in *Craft* recognized, the class device can be utilized to minimize the Debtors' risk of emerging from bankruptcy, only to face the non-discharged claims of class members. *Craft*, 321 B.R. at 194. "While allowing a class claim may not wholly eliminate that exposure, it may foreclose the option of unnoticed members of a putative class commencing their own class action post-discharge." *Id* at 195. The class device in a Bankruptcy setting serves to protect the Debtor from post-confirmation claims that have not been discharged due to the failure of the Debtor to provide direct notice. To this end, the class device in Bankruptcy has been recognized "as a necessary device to ensure that the relief afforded by the [Bankruptcy] Code is as complete as possible." *In re Craft*, 321 (B.R. 189, 194 (N.D.Tex.2005) (recognizing that the inability "to present claims by a class may be detrimental to the debtor" because problems with individual notice might "complicate the debtors effort to resolve all of its debts."). Indeed, a class claim may "foreclose the option of unnoticed members of a putative class commencing their own class action post-discharge." *Id*. "If the unnamed class members are largely a group which the debtor has refused to notify individually, . . . or if they are in large part what this court referred to as "unknown creditors" then the class device may provide the only form of notice to such parties and be advisable to utilize." *In re Sacred Heart*, 177 B.R. 16, 21 (E.D.Pa.1995).

Even with notice, claimants who hold individual claims but face the prospect of limited or diminished recovery are unlikely to pursue those claims on their own behalf. As noted in *American Reserve*, "that [a claimant] would not learn of the bankruptcy and the need to file proof-of-claim forms is not a good reason why the other creditors should receive" the class' share. *American Reserve*, 840 F.2d at 492. *See also, In re Charter Communications*, 876 F.2d 866, 871 (11th Cir.1989) ("permitting the prosecution of small claims which would not be economical to prosecute individually" is a goal policy goal of applying Rule 23 to bankruptcy

proceedings."). *In re Charter* went even further down this line: "Bankruptcy also seeks to achieve equitable distribution of the estate. Persons holding small claims, who absent class procedures might not prosecute them, are no less creditors under the Code than someone with a large, easily filed claim." *In re Charter*, 876 F.2d at 871. *See also, In re First Alliance*, 269 B.R. 428 (C.D.Cal.2001). Thus, the "application of class filing procedure would be particularly appropriate to vindicate the purpose of the bankruptcy statute." *In re Charter*, 876 F.2d at 871.

**Conclusion**

This Court should grant Anderson's Motion and certify the non-South Carolina putative class.

DATED: August 10, 2007

    /s/ Christopher D. Loizides
Christopher D. Loizides (#3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 654-0248
Facsimile:    (302) 654-0728
Email:    loizides@loizides.com

- and -

Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed ID No. 6101)
SPEIGHTS & RUNYAN
200 Jackson Avenue, East
Post Office Box 685
Hampton, SC 29924
Telephone:    (803) 943-4444
Facsimile:    (803) 943-4599

*Counsel for Anderson Memorial Hospital*