IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Re: Docket No. 10014 |

**THE SOUTH CAROLINA CLASS: ANDERSON'S FINAL BRIEF IN
SUPPORT OF CLASS CERTIFICATION OF THE SOUTH CAROLINA CLASS**

The primary issue before the Court with respect to the South Carolina class is whether this Court will recognize the pre-petition certification Order establishing an asbestos property damage class of South Carolina residents against the Debtors ("Grace"). Anderson respectfully submits that the class should be recognized and that failure to do so would be a serious injustice to the South Carolina class members. In contrast, Grace argues the only South Carolina claimant in this bankruptcy is Anderson, and that all other South Carolina property damage claimants had no right to rely upon the Anderson class action to preserve their claims and that they are foreclosed by this Court's Bar Order and attendant Notice of Bar Date (Doc. No. 1963). Grace makes this argument despite the fact that the Notice of Bar Date approved in this Court's Bar Order is silent both as to class Proofs of Claim and absent class member's right to rely on the Certified Class Action to protect its claims. The absence of these instructions is both significant and telling because Grace's original and revised proposed Notices of Bar Date (Doc. No. 1664) contained explicit instructions to property damage claimants notifying them that the Anderson class action was pending prior to the bankruptcy, that class certification had been requested or granted, but further **warning them that Class Proofs of Claim would not be allowed and that claimants could not rely on a**

070810155543.rtf

**pending class action to preserve its claim.**[1] In other words, Grace now claims that the Anderson Class should now barred consistent with the explicit instructions it previously proposed in its Notice of Bar Date, but which were conspicuously removed from the Notice of Bar Date approved by the Court and actually published and served.

## I. Background of the South Carolina Certified Class

On February 9, 2001, the South Carolina Circuit Court entered an Order certifying a state-wide class action against W. R. Grace & Company ("Grace"). (Cl. Ex. 93). This Order was entered after nine years of contentious litigation, which included protracted procedural and discovery proceedings and two procedurally defective trips to the South Carolina Supreme Court (both instigated by the defendants) for review of interlocutory orders. (See, Court's Certified Copy of South Carolina record). This Order was entered after more than three years of litigation directed primarily at the class certification issue. (Cl. Exs. 72-86, 101-108, 112-115). This Order was entered after several delays and postponements entered at the request of Grace's counsel. (Cl. Exs. 72, 73 and 150, pp. 226-231 (Sept. 6, 2000 Transcript)-. This order was entered after two days of hearings before the South Carolina Court in which its former general counsel appeared and its local and national counsel prominently participated. (Cl. Ex. 150). At the time this Order was entered, Grace had filed four separate briefs in opposition to class certification (Cl. Exs. 78, 101, 105, 108); participated in a two day evidentiary hearing (Cl. Ex. 150); and requested and received

---

[1] Specifically, the Notice of Bar Date proposed by Grace provided:
   **7. CLASS ACTION PROOFS OF CLAIM**
   Several class action lawsuits (that is, lawsuits involving a class . . .) involving Asbestos Property Damage Claims . . . have been initiated against the Debtors. Certification of classes have been requested and/or occurred in the following matters: . . . (10) <u>Anderson Memorial Hospital et al.</u> v. <u>W. R. Grace & Co.</u>, Case No. 92-CP-25-279 (Ct. of Common Pleas, Hampton Co., S.C.) . . ..
   If you are a member of any of the classes which hold Claims against the Debtors, including but not limited to the classes referred to in the Class Actions outlined above, you <u>must</u> file an **INDIVIDUAL** proof of claim before the applicable Bar Date if you intend to assert a claim. Please take notice that class proofs of claim will <u>not</u> be allowed and you may not rely on any such class proof of claim. Unless you file an <u>individual</u> proof of claim before the applicable Bar Date, you will be forever barred from asserting a claim against the Debtors.
(Doc. 1664) (emphasis in original).

permission to file a post-hearing brief **five months** after the evidentiary hearing (Doc. 9307, p. 54). After the Order was entered, Grace served two additional briefs in opposition to the February 9, 2001 Class Certification Order and was afforded an additional hearing on March 9, 2001 at which its local and national counsel again appeared and presented argument. (Cl. Ex. 151). And in spite of all of this, the South Carolina Court kept the certification Order in effect (Cl. Ex. 151) which was state of the record when, as predicted by Anderson's counsel in the South Carolina Proceedings, Grace filed a voluntary Petition for Bankruptcy in this Court on April 2, 2001. (Cl. Ex. 89). The Court informed the parties of its final decision on May 7, 2001(Debt. Ex.25), five weeks after Grace's Chapter 11 filing, and entered its final Order of Certification on June 29, 2001. (Cl. Exs. 93, 94).

There is no doubt that the only reason the final certification Order entered by the South Carolina Court did not precede Grace's Bankruptcy Petition was the extreme patience and latitude that Grace was afforded in postponing class certification and submitting additional briefs. There is also no doubt that, had Grace not placed itself within the protection of the Bankruptcy Code and the automatic stay of §362, the final certification Order would have been applicable to it as well. (Cl. Exs. 93, 94; *see also,* Doc. 9307, p. 58). Yet, Grace now urges this Court disregard nine years of extensive proceedings in South Carolina on the suggestion that the certification Order entered against it is "suspect." In the name of expediency to this **six year old** bankruptcy proceeding, Grace would have this Court simply wipe away the legitimate and long litigated claims of hundreds[2] of South Carolina building owners in one fell swoop (and with it, a substantial property damage liability), not because no Proof of Claim was filed on their behalf, but because the Proof of Claims filed on their behalf by class counsel should be disregarded.

---

[2]That there are, at a minimum, hundreds of building owners in South Carolina with Grace asbestos-containing surfacing materials is beyond dispute. (Cl. Ex. 112, ¶¶ 3-10; *see also,* Cl. Ex. 94, p. 7 ).

## II. The South Carolina Class Proof of Claim should be Recognized

Class Proof's of Claim have been recognized as appropriate and beneficial to the Bankruptcy Code by virtually every court to address the issue since *In re: American Reserve Corp*, 840 F.2d 487 (7th Cir.1988).[3] Class Proof of Claims have specifically been permitted in this district. *In re: Kaiser Group International, Inc.*, 278 B.R. 58 (D.Del.2002); *In re: United Companies Financial Corp.*, 276 B.R. 368 (D.Del.2002). Therefore, the threshold question is whether this Court should apply Rule 7023.

### A. This Case Has Already Been Certified

In considering the request for class certification[4], the Courts have weighed various factors depending upon the procedural posture and specific nature of the bankruptcy and creditors. First and foremost, the most frequently cited factor, and most applicable to the Anderson South Carolina class is whether the class was certified pre-petition. *In re: Trebol Motors Distributor Corp.*, 220 B.R. 500 (1st Cir.BAP 1998) (holding that a class certified against a debtor pre-petition may file a class proof of claim); *Sacred Heart Hospital*, 177 B.R. 16, 22 (E.D.Pa1995) (noting that a class that has been certified pre-petition or that was filed a considerable time prior to the bankruptcy petition "are the best candidates" for class treatment under Rule 7023 and that "the [Rule 23] may even be deemed *res judicata*") (emphasis supplied). Indeed, the Court in *In re: Craft*, 321 B.R. 189, n. 4 (N.D.Tex.2005) held that "[a]bsent extraordinary circumstances, this court will accept a prior judicial determination of Rule 23 issues. The court also does not see the need to first make Rule 23 applicable simply to allow filing of a claim by fiduciary class

---

[3] *In re: Birting Fisheries, Inc.* 92 F3d 939 (9th Cir.1996); *In re: Charter Co.*, 876 F.2d 866 (11th Cir.1989); *In re: Trebol Motors Dist. Corp.*, 220 B.R. 500 (BAP 1st Cir.1998); *Reid v. White*, 886 F.2d 1462 (6th Cir.1989); *In re: First Interregional Equity Corp.*, 227 B.R. 358 (D.N.J.1998) (Gambardella, J.); *In re: Amdura Corp.*, 170 B.R. 445 (D.Colo.1994); *In re: Craft*, 321 B.R. 189 (N.D.Tex.2005); *In re: Woodward & Lothrup*, 205 B.R. 365 (S.D.N.Y.1997); *In re: Chauteaugay Corp.*, 104 B.R. 626 (S.D.N.Y.1989); *Wilson v. Valley Electric Membership Corp.*, 141 B.R. 309 (E.D.La.1992) (Sear, J.).

[4] A Summary of Bankruptcy Class Action Citations is attached as Exhibit A.

representatives already named by a certifying class action court." As this Court has already recognized:

> THE COURT: Okay. Well, the issue that is pending before me is not whether Judge Hayes is an honorable Judge. I have no reason to suspect that he is anything but an honorable Judge, and I have no assertion on this record to the contrary, nor would I credit one. And even if I credited it, it would be irrelevant. He's issued an order. His order, to the extent that it was issued, is an order that is entitled to full faith and credit, and I will give it such, but I don't know that it's entitled to res judicata effect because it is, in fact, a conditional order, not a final order. So, when I talk about faith and credit what I mean is I will consider it as an order of the Court. He had a hearing. He issued an order. I understand the process. I understand what he went through to get to that. And I respect the order that he entered. So, if you want to argue that I should have some – give some weight to that order, I think you can do that without the need for discovery . . . (Doc. 13894, p. 93).

Apart from comity, the application of "full faith and credit" (see, Doc. 9607) and *res judicata* (*see In re: Sacred Heart*, 177 B.R. at 22) there are strong policy reasons for this result in cases certified pre-petition. The class certification proceedings from the pre-petition court represents a significant investment in both time and money by the parties involved. Experts have been retained and paid, transcripts ordered, depositions taken, documents gathered, reviewed and produced, written discovery propounded and answered on behalf of the class. Moreover, these costs are not merely limited to the parties. The record from the South Carolina case represents a significant investment of the judicial resources of the state court as well. There would have to be "extraordinary circumstances" for a bankruptcy court to simply disregard the results of the parties and the court's work prior to the Chapter 11 filing. *In re: Craft*, 321 B.R. 189, n.4 (N.D.Tex.2005).

Additionally, while the class is pending in the state court system, class members have the right to rely upon the class action to protect their interests. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Once bankruptcy is filed, and without the protection of a class proof of claim, these absent class members (assuming they got notice of the bar date) are suddenly dispossessed of the role of passive litigant in class proceedings to an active

creditor who must, within a very short period of time, hire counsel, and sometimes (as is true in Delaware) hire another local counsel when an objection is filed, complete a sometimes complicated proof of claim form and submit documentary evidence, and appear in a court that is often in another part of the country. This was recognized in *In re: American Reserve Corp.*, 840 F.2d 487, 489 (7th Cir.1987): "the combination of contingent claims (which many people may not identify as something they are entitled to pursue) and the effort needed to decide whether to pursue an identified claim means that for many small claims, it is class actions or nothing."

In the context of holding that opt-out classes comport with due process, the United State Supreme Court has weighed in on this issue, highlighting the problems facing class litigants who are forced to actively participate in the class action. In *Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), the Supreme Court recognized that "requiring a plaintiff to affirmatively request inclusion would probably impede the prosecution" and result in "freezing out" the claims of people – especially small claims held by small people – who for one reason or another, ignorance, timidity, unfamiliarity with business or legal matters, will simply not take the affirmative step . . . It seems fair for the silent to be considered as part of the class." *Id* at 812-813. Consistent with this view, the Court went on to recognize that "an absent class-action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection." *Id* at 810-811. Without the protection of a class proof of claim for the certified South Carolina class, many South Carolina residents with valid property damage claims against Grace will simply be "frozen out."[5]

---

[5] Grace's argument that South Carolina residents who failed to file individual claims prior to the bar date should be "frozen out" ignores the policy considerations espoused in *Shutts*. The practical effect of this result is that the class of passive litigants in the "opt-out" state court class action who have the right to participate by simply remaining silent are now saddled, based upon bankruptcy procedures, with the duty to "opt-in" to preserve their rights without any notice that the nature of their duty has changed.

In *In re: Charter Co.*, 876 F.2d 866 (11th Cir.1989), the court held that in this regard, class actions were "consistent with the goals of the bankruptcy statute." Id. at 871. Finding that "[p]ersons holding small claims, who absent class procedures might not prosecute them, are no less creditors under the [Bankruptcy] Code ..." the Eleventh Circuit held that class procedures will "bring all claims forward, as contemplated by the Bankruptcy Code." Id. at 871 and that 'application of a class filing procedure would be particularly appropriate to vindicate the purpose of the bankruptcy statute." Id. at 872. Indeed, complete disregard to pre-petition class certification of the South Carolina class would "contravene the policy of the Bankruptcy Code to bring all claims forward, particularly where a class has already been certified." *In re: Amdura Corp.*, 170 B.R. 445, 449 (D.Colo.1994), citing, *In re: Charter Co.*, 876 F.2d 866, 871 (11th Cir.1989).

However, in the case of a case certified pre-petition, when a bankruptcy case refuses to recognize a pre-petition certification order, due process requires that the members of the class be notified by direct mail of their right to file a claim and that a new bar date be set for such individual claims. *In re: Amdura*, 170 B.R. 445, 452 (D.Colo.1994) ("notice by mail is required where the trustee has actual knowledge of the existence of a claim and the name and address of the claimant is easily ascertainable."); *In re: Allegheny International, Inc.*, 94 B.R. 877 (W.D.Pa.1988) (ordering absent class members be given 60 additional days to file a proof of claim after the class proof of claim was disallowed). In *In re: Entergy*, 353 B.R. 474 (E.D.La.2006), the court expressed concerns that "the debtor has the capability of sending actual notice to putative class members if the filing of individual claims is to be required, that those individual claimants should receive actual notice, especially if a class proof is not allowed."

**B.    Fairness to the Debtors, Class Claimants and Other Creditors**

A second factor that courts consider is fairness: whether allowing the class proof of claim would prejudice debtors and other creditors, or conversely, whether refusing it is fair to absent

class members. *In re: Sacred Heart*, 177 B.R. 16 (E.D.Pa.1995). These considerations largely turn on the due process/notice rights of class creditors that arise when the Debtors seek to discharge claims and emerge from bankruptcy with a fresh start, but have failed to give direct or adequate notice to claimants. Without appropriate notice, the claimants run the risk of being barred without ever getting to present a claim. Where this risk exists, class certification is more appropriate. *In re: Sacred Heart*, 177 B.R. 16 (E.D.Pa.1995).

Illustrative of this point in this case is the property damage Proof of Claim filed by Speights & Runyan as class counsel on behalf of Byars Machine Company of Laurens, South Carolina. [Cl. Ex. 167].[6] It is not disputed that Byars Machine Company falls within the definition of the certified South Carolina class or that Byars Machine Company did not receive actual notice of the bar date. However, because Byars Machine Company failed to file a Proof of Claim of its own or expressly authorize class counsel to do so prior to the bar date, their only chance to participate in this bankruptcy is though the Anderson class. However, if the Anderson class is not recognized, there is a real risk that under these circumstances, the property damage claim of Byars Machine will not be discharged by this bankruptcy. *In re: Amdura*, 170 B.R. 445, 452 (D.Colo.1994); *In re Sacred Heart*, 177 B.R. 16, 21 (E.D.Pa.1995); *Bailey v. Jamesway Corp.*, 1997 WL 327105 (Bankr.S.D.N.Y.).

Based upon this very problem, Courts have determined that the class device can serve the bankruptcy goals of debtors. As the court in *Craft* recognized, the class device can be utilized to minimize the Debtors' risk of emerging from bankruptcy, only to face the non-discharged claims of class members. *Craft*, 321 B.R. at 194. "While allowing a class claim may not wholly eliminate that exposure, it may foreclose the option of unnoticed members of a putative class commencing

---

[6]This Proof of Claim was expunged by the Court based upon the ruling that a class representative of a certified class did not have the authority to file individual Proof of Claims on behalf of class members without express authority from the class member. (Doc. 11080)

their own class action post-discharge." *Id* at 195. The class device in a Bankruptcy setting serves to protect the Debtor from post-confirmation claims that have not been discharged due to the failure of the Debtor to provide direct notice. To this end, the class device in Bankruptcy has been recognized "as a necessary device to ensure that the relief afforded by the [Bankruptcy] Code is as complete as possible." *In re Craft*, 321 (B.R. 189, 194 (N.D.Tex.2005) (recognizing that the inability "to present claims by a class may be detrimental to the debtor" because problems with individual notice might "complicate the debtors effort to resolve all of its debts."). "If the unnamed class members are largely a group which the debtor has refused to notify individually, . . . or if they are in large part what this court referred to as "unknown creditors" then the class device may provide the only form of notice to such parties and be advisable to utilize." *In re Sacred Heart*, 177 B.R. 16, 21 (E.D.Pa.1995). In the later instance, if there is some question as to the notice to the class members, then class certification is more appropriate. As noted in *Bailey v. Jamesway Corp.*, 1997 WL 327105 (Bankr.S.D.N.Y.),

> Bar dates are generally not binding on known creditors who have not received appropriate notice of bar dates, and they may not be binding on unnotified unknown creditors. Therefore, a class claim and motion which has the effect of expanding the bar date for unnotified creditors is often appropriate to comport with due process of law and expand the scope of a debtor's bankruptcy discharge.

*See also, In re: Sacred Heart*, 177 B.R. at 23.

The reasoning behind this inquiry is that with or without adequate notice, putative class members, who are no less claimants than any other creditor, may never learn of the bar date or the necessity of filing a Proof of Claim and, therefore, may only be able to pursue a claim as a class member as part of a certified class or, have complete knowledge of the bar date but due to the expense, time contingent nature of their claim or inconvenience, be foreclosed from filing a claim as a practical matter. This, of course, is in contrast to the argument that creditors who have filed

claims pursuant to the bar date are somehow harmed by a class certification that permits class members a so-called "second bite at the apple."

This suggestion was explicitly rejected in *In re: American Reserve Corp.*, 840 F.2d 487 (7th Cir.1987). There, the court reasoned that

> If on the day before filing its petition American Reserve had, say, $10 million in assets and was facing a class suit in state court with a probable value of $2 million, its other creditor's interests were worth $8 million. They should receive that payoff in bankruptcy. That most policyholders would not learn of the bankruptcy and the need to file a proof-of-claim form is not a good reason why the other creditors should receive $10 million in the bankruptcy.

840 F.2d at 492. Likewise, in *In re: First Interregional Equity Corp.*, 227 B.R. 358, 371 (D.N.J.1998), Judge Gambardella rejected this argument, holding that the class certification entered after the bar date had passed would not be limited to "those individual claimants who had filed individual proofs of claim within the bar date."

Another consideration is the timing in relation to the overall progress of the bankruptcy and fairness to the debtors and creditors. Some courts have rejected class certification out of hand because the class motion was not made until the conclusion of the bankruptcy was imminent, *see, In re: Computer Learning Centers*, 344 B.R. 79 (E.D.Va.2006) or the case was at some "critical juncture" inhospitable to the infusion of class claims into the bankruptcy. *See, In re: Craft*, 321 B.R. 189 (N.D.Tex.2005). Putting aside that this analysis should be governed by *In re: Charter*, 876 F.2d 866 (11th Cir.1989) (holding that the proper time to file a motion for class certification is **after** the class proof of claim is objected to), all points of consideration applied by courts in evaluating whether the infusion of a class claim favor recognizing certification in this case.

First, this case is not in imminent danger of disclosure, solicitation or confirmation. The only plan proposed by Grace to date is hopelessly unconfirmable. Moreover, this Court has just

ended exclusivity opening the door for the presentation and solicitation of more reasonable plans by other constituencies.

Second, as a practical matter, allowing the South Carolina certified class to go forward will do nothing to slow down the claims objection process now underway. Indeed, the claim of Anderson Memorial Hospital, as class representative, will still be tried on the issues of hazard and, if applicable, constructive notice. As the class representative, the Court's determinations as to Anderson on these common questions would be simply applicable to the remainder of the class.[7] Moreover, even if these issues are decided in Anderson's favor, the only remaining step in the process is estimation of claims. Anderson submits that the estimation of the claims of the South Carolina class would not be any more complicated than the estimation of the balance of property damage claims remaining after the completion of the common issues trial.

Third, Anderson's class claims and, indeed, those remaining property damage claims are certainly not driving this bankruptcy. Bodily Injury estimation has been pushed back until next year and each issue presented continues to be hotly contested and exhaustively litigated. Recognition of the Anderson State Class will do nothing to upset the procedural posture or timing of this case.

Moreover, Grace can hardly complain that the infusion of this class claim at this point in time would cause it disruption or "frustrate [its] logical assumptions regarding the amounts of total claims." *In re: Sacred Heart*, 177 B.R. at 23. Grace was fully aware that the Anderson class action had been pending for nine years when it filed for bankruptcy. Indeed, Grace was familiar enough

---

[7] As by the late Professor Newberg:

> The fundamental effect of a properly certified class action is straightforward. When adequate representation is present, then the essential adjudicatory characteristic of representative litigation can be realized, to wit, the adjudication of common questions, whether favorable or not, will be binding on class members. The class representative stands in judgment of the class.

Newberg on Class Actions, §1:7 (4th Ed.2002).

with the claims of the class to solicit settlement discussions with class counsel in 1997. (Cl. Ex. 76, 110). Moreover, Grace was fully aware of the individual Proof of Claims that were filed on behalf of many South Carolina class members by class counsel. *See, In re: American Reserve Corp.*, 840 F.2d 487, 493 (7th Cir.1987) ("the representative in a class action is an agent for the missing"). Neither the debtors nor the other creditors can complain that they had no notice of the class members' claims or that they were surprised late in the proceedings.[8]

Even if class proceedings were to add a layer of complexity, this should not serve as a deterrent to allowing the Anderson state class to proceed. As the Eleventh Circuit noted, the argument that "contrary to bankruptcy policies, allowing class proofs of claim will lead to inexpeditious resolution of claims." is "not well founded." *In re: Charter Co.* 876 F.2d 866, 872 (11th Cir.1989). "The bankruptcy courts are well used to the estimation procedures outside the class action context, even in highly complex cases. There is no reason to expect that the experience of the bankruptcy courts would be any different when dealing with class claims." *Id* at 872-873 (citations omitted). This logic was aptly stated in *In re: Chauteaugay,* 104 B.R. at 633:

> [T]here is no reason to think that permitting the filing of class claims will cause special delay or uncertainty in settling the debtor's estate. Even if it were so, however, any potential marginal delay or in (sic) difficulty of valuation of claims would be justified in order to protect the right of small claimants (who might not otherwise be aware of the existence of or be able to process their claims) to be represented by the filing of a class proof of claim.

C.  **Numerosity**

Anderson submitted records that show 1652 shipments of asbestos-containing surfacing materials[9] into South Carolina. (Cl. Ex. 112). Under any test, this sheer number shows that joinder of all class members would be impracticable. *Stemmermann v. Lilienthal,* 54 S.C. 440, 32 S.E. 535

---

[8]To Anderson's knowledge, no other creditor or constituency has joined in Grace's objection to the Anderson State claim.

[9]These records include installations of Zonolite Vermiculite products. Even without Zonolite Vermiculite, there were still approximately 1000 documented shipments of undisputed surfacing material. [Cl. Ex. 112].

(1899); Newberg on Class Actions §3.05 (3d Ed. 1992). Impracticability of joinder has been held to exist for classes as few as fourteen plaintiffs, *see Grant v. Sullivan*, 131 F.R.D. 436 (M.D.Pa.1990), and a finding of numerosity was upheld in an asbestos property damage action where only 67 building owners were class members. *National Gypsum v. Kirbyville Independent School District*, 770 S.W.2d 621 (Tex.App. 1989). *See also, Arkansas Education Asso. v. Board of Education*, 446 F.2d 763 (8th Cir.1971)(17 members); *Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d 648 (4th Cir.1967) (18 members); *MacNeal v. Columbine Exploration Corp.*, 123 F.R.D. 181 (E.D.Pa.1988) (36 members); *Dameron v. Sinai Hospital*, 595 F.Supp. 1404 (D.Md.1984)(25-30 members); *Pabon v. McIntosh*, 546 F.Supp. 1328 (30-40 members); *Republic National Bank of Dallas v. Denton & Anderson Co.*, 68 F.R.D. 208 (N.D.Tex.1975) (excess of 40 members); *Sharon Steel Corp. v. Chase Manhattan Bank*, 88 F.R.D. 38 (S.D.N.Y.1980) (87 members); *Polich v. Burlington N, Inc.*, 116 F.R.D. 258 (D.Mont.1987)(60 members sufficient to raise the presumption that joinder is impracticable).

Nevertheless, Grace argues that the only relevant consideration is how many South Carolina class members have filed a Proof of Claim, as, in Grace's view, these are the only claimants who may now participate in the Anderson Class should it be recognized by this Court. This argument was expressly rejected by Judge Gambardella in *In re: First Interregional Equity Corp.*, 227 B.R. 358, 371 (D.N.J.1998). There, the Court reasoned

> the movants suggest that this Court could define the class as limited to those individual claimants who had filed individual proofs of claim within the bar date. In response to these arguments, this Court will not place such limitation on the defined class. This Court agrees with the analysis of the bankruptcy court in *In re: Wang Laboratories, Inc.*, 164 B.R. 401, 403 (D.Mass.1994) which court noted that the Eleventh Circuit has called "the requirement for individual claims 'illogical and contrary to the important class action policy considerations.'"

### III. Conclusion

This Court and the Bankruptcy Code are governed by the principles of equity. The Anderson South Carolina class action represents nine years of contentious litigation in the South Carolina courts and another six years in this Court on behalf of hundreds of South Carolina building owners. To allow Grace simply wash its hands of these claims would be a perversion of equity for the sake of expediency. This Court should recognize the Anderson State class action certified by Judge Hayes on February 9, 2001.

DATED: August 10, 2007

/s/ Christopher D. Loizides
Christopher D. Loizides (#3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:   (302) 654-0248
Facsimile:    (302) 654-0728
Email:          loizides@loizides.com

- and -

Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed ID No. 6101)
SPEIGHTS & RUNYAN
200 Jackson Avenue, East
Post Office Box 685
Hampton, SC 29924
Telephone:   (803) 943-4444
Facsimile:    (803) 943-4599

*Counsel for Anderson Memorial Hospital*