IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 01-01139 (JKF) |
| W. R. GRACE & CO., et al. | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | **Re: Docket No. 16356** |
| | ) | |
| | ) | |
| | ) | |

## DEBTORS' OBJECTION TO THE IOWA DEPARTMENT OF REVENUE'S MOTION SEEKING PERMISSION TO FILE A LATE PROOF OF CLAIM

This Court should deny the motion filed by the Iowa Department of Revenue ("IDR") for leave to file a late proof of claim.[1]  The IDR failed to file a timely claim although it had actual and adequate notice of the Bar Date.  Debtors, as a group, constitute a taxpayer with nearly $3 billion in annual revenue.  The IDR should have known that the Debtors are continuously under federal tax audit as a result thereof.  Bankruptcy courts have recognized that sophisticated entities with knowledge of the bankruptcy and tax laws -- such as the IDR -- cannot be excused from filing, at minimum, contingent claims to protect their rights to make a claim upon the resolution of a federal audit.  Since the IDR did not file such a contingent claim, it has not demonstrated "excusable neglect" permitting it to file a late claim.  For these reasons, the Motion should be denied.

### FACTS, BACKGROUND AND PROCEDURAL HISTORY

1.    On April 2, 2001, W. R. Grace & Co.-Conn. ("Grace") and its debtor affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

---

[1]    Motion Seeking Order to File a Late Proof of Claim filed on July 23, 2007 (Docket No. 16356) (the "Motion").

2.      The Debtors' schedules filed in June, 2001 listed the IDR as having contingent, unliquidated and disputed tax claims (the "Schedules").[2]  The Schedules also listed the IRS as having contingent, unliquidated and disputed tax claims associated with various open tax audits.[3]

3.      By order dated April 22, 2002 (the "Bar Date Order"), this Court set March 31, 2003 as the last date for filing proofs of claim for all pre-Petition Date claims relating to (i) asbestos property-damage, (ii) non-asbestos claims (including all governmental claims) and (iii) medical monitoring claims (the "Bar Date").

4.      The Bar Date Order provides that "notice of entry of this Order and of the Bar Date shall be deemed good, adequate and sufficient notice of the Bar Date and all procedures and requirements in connection therewith if served together with the Bar Date Notice Package . . . ." Bar Date Order at 4.

5.      The notice (the "Bar Date Notice") that was sent to all known claimants and published in several national newspapers put the IDR on notice that it had an obligation to check the Debtors' Schedules and to file a proof of claim if necessary or forever forfeit its claim.

6.      The Bar Date Notice states in Section 2, **"WHO DOES NOT NEED TO FILE A PROOF OF CLAIM"**:

> The Bar Date and the need to file a Proof of Claim applies only to holders of pre-petition Non-Asbestos Claims against the Debtors .... You do not need to file a proof of claim if you have any of the following types of claims:  (B) A claim that (i) is listed on the Debtors' Schedules (as defined below), (ii) **is not described in the Schedules as "disputed," "contingent," or "unliquidated,"** and (iii) is in the same amount and of the same classification as set forth in the Schedules;

Bar Date Notice at § 2(B) (emphasis added).

---

[2]   Copies of the relevant pages of the Debtors' Schedules are attached as Exhibit A hereto.

[3]   Copies of the relevant pages of the Debtors' Schedules are attached as Exhibit B hereto.

7.    The Bar Date Notice also makes it abundantly clear that the failure to file a claim

by the Bar Date will result in a forfeiture of such a claim against any of the Debtors' estates.  The

Bar Date Notice states in Section 9, **"EFFECT OF NOT FILING A CLAIM"**:

> ANY HOLDER OF A [CLAIM] . . . WHO FAILS TO FILE A PROOF
> OF CLAIM ON OR BEFORE THE BAR DATE . . . , **SHALL BE
> FOREVER BARRED, ESTOPPED AND ENJOINED** FROM
> ASSERTING ANY SUCH CLAIMS (OR FILING A PROOF OF
> CLAIM WITH RESPECT TO SUCH CLAIMS) AGAINST ANY OF
> THE DEBTORS, THEIR PROPERTY OR THEIR ESTATES . . . .

Bar Date Notice at § 9 (emphasis added).

8.    Finally, the Bar Date Notice clearly explains how to obtain and review a copy of

the Schedules in Section 10, **"THE DEBTORS' SCHEDULES AND ACCESS THERETO"**:

> You may be listed as the holder of a claim against one of more Debtors
> in the Debtors' Schedules of Assets and Liabilities and/or Schedules of
> Executory Contracts and Unexpired Leases (collectively, the
> "Schedules").  Copies of the Schedules may be examined by interested
> parties between the hours of 9:00 a.m. and 4:00 p.m., Eastern Time, at
> the office of the Clerk of the Bankruptcy Court, United States
> Bankruptcy Court for the District of Delaware, Sixth Floor, 824 Market
> Street, Wilmington, Delaware 19801 or you may request a copy of the
> portion of the Schedules that pertains to your claim from the Claims
> Processing Agent at P.O. Box 1620, Faribault, MN 55021-1620.

Bar Date Notice at § 10.

9.    Once the detailed proof of claim forms were approved and the Bar Date Order

was entered, the Debtors spent over $4 million to serve and publish the Bar Date Notice.

10.    The Bar Date Notice was served upon the IDR on June 14, 2002, a full nine

months prior to the Bar Date.[4]

---

[4]    See service report record from BMC, attached hereto as Exhibit C.

Case 01-01139-AMC    Doc 16535    Filed 08/10/07    Page 4 of 8

11.    Nearly four years after the Bar Date Notice, the IDR has filed the Motion, asking that it be permitted to assert a claim for Iowa state income taxes of $62,575.58 in penalties and interest for Grace's 1986 year.[5]

## ARGUMENT

12.    Despite the IDR's assertions that it was unaware that it had a claim before the Bar Date, the IDR, as outlined above, was given notice of its potential claim before the Bar Date by being listed on the Schedules as a contingent, unliquidated and disputed creditor. In addition, a review of the Schedules would also have shown contingent, unliquidated and disputed claims by the IRS due to ongoing federal audits.

13.    The IDR cannot justify its failure to file a contingent claim prior to the Bar Date, preserving its right to review the results of a federal audit and file a corresponding state claim. The "excusable neglect" standard does not cover the IDR's failure to do anything to protect its interests when it is aware or should have been aware that it may have a claim.

**I.    The IDR Was Aware or Should Have Been Aware of Its Potential Claim.**

14.    Section 101(5)(A) of the Bankruptcy Code defines "claim" as: "a right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

15.    The IDR is a sophisticated taxing authority. It is well known in the tax world that large multinational corporations such as the Debtors with billions of dollars in revenue are nearly always under federal tax audit. Additionally, the Schedules list several ongoing federal audits.

---

[5]    The IDR previously filed a Motion for Leave to File a Late Claim on June 15, 2006 (Docket No. 12644), asserting penalties and interest claims of $77,484.55 for 1990 and $772.12 for 1994. Debtors did not oppose that motion.    The Court entered an order granting the motion (Docket No. 12851).

4

K&E 12023415.6

Given the extremely broad definition of "claim" and its expertise as a governmental entity with knowledge of the tax and bankruptcy laws, the IDR should have known that an adjustment resulting from an ongoing federal tax audit could result in a state tax adjustment. Any attempt to deny such knowledge is disingenuous on the part of the IDR.

16.    The IDR received notice of the Bar Date. If it did not want to forfeit the right to file a timely claim, the IDR was obligated to check the Debtors' Schedules for the Debtors' treatment of the IDR, and accordingly file a claim, even if contingent.

## II.    The IDR's Failure to File a Timely Proof of Claim Was Not the Result of "Excusable Neglect."

17.    Bankruptcy courts have recognized that sophisticated entities with knowledge of the bankruptcy and tax laws -- such as the IDR -- cannot be excused from filing, at minimum, contingent claims to protect their rights to make a claim upon the resolution of a federal audit. In re Circle K Stores is a case dealing with very similar facts to the instant situation, and held that a state tax agency's inaction was inexcusable when it had knowledge of its potential claim resulting from a federal tax audit adjustment. In re Circle K Stores, 198 B.R. 784 (Bankr. D. Ariz. 1996).

18.    In that case, the Montana State Department of Revenue attempted to assert a state tax liability based on the results of a federal tax audit adjustment, where the audit was completed two years after the claims bar date. Id. at 787. The debtors filed their chapter 11 cases in May 1990, and Montana received notice of the claims bar date of January 15, 1991, but failed to file a claim. Id. The federal audit was completed in April 1993, and the debtors' plan of reorganization was confirmed in June 1993. Id. In January 1994. Montana received notice of a federal tax adjustment based on the federal audit. Id. In August 1995, Montana asserted a state tax deficiency based on the results of the federal audit. Id. When attempting to collect the

5

asserted state tax liability, Montana argued that it had not received adequate notice that the federal audit was in process, and further that the debtors had violated state law by "failing to timely notify defendant [Montana] within 90 days of the redetermined audit amount." Id.

19.    The Circle K court rejected both of Montana's arguments. First, the court noted that Montana had adequate notice -- even from what the state called "an obscure reference to a federal statute of limitations waiver" on a state corporation tax return. Id. Despite this allegedly "obscure" notice, Montana knew of the federal audit's pendency and could have filed a contingent claim to preserve its right to any resulting state tax adjustment:

> The Montana authority is a sophisticated taxing entity, presumably versed in bankruptcy. When apprised it has an unliquidated claim in a pending bankruptcy, and must act by a date certain, it should do so. At a minimum, the department could have filed a contingent tax claim, reserving the right to amend when it completed its own review or heard concerning audit results.

Id. at 790.  The court went on to observe, "Montana had an obligation to do something . . . . *Assuming debtor failed to list the tax obligation in complete detail*, creditor had notice of the filing, the bar date and ample opportunity to file a claim." Id. (emphasis added). It was sufficient for the debtors to have listed all similarly-situated taxing authorities as having contingent, unliquidated claims without specifying particular tax years because it was possible a taxing agency might claim contingent, unliquidated claims covering many years. Id. The taxing agencies were "required to review their files." Id. Had Montana filed a contingent claim, "[a]fter the claim became liquidated following the audit, an amended claim could have been filed, superseding a timely original claim." Id.

20.    The Circle K court also rejected Montana's claim of inadequate notice based on state law, which required debtors to inform the state of a redetermined audit amount within 90 days. Montana "complains debtor failed to fully comply with state law in reporting the IRS

6

audit. That may be true. Regardless, for bankruptcy purposes, it is federal, not state, law which defines the requisite notice to be afforded creditors." Id. As a result, debtors had provided adequate notice to Montana. Just as in Circle K, this Court should reject the IDR's attempt to claim that it did not have notice of a federal tax audit, and that state law requiring notice was not met. The IDR had notice of the Bar Date, was scheduled as a contingent, unliquidated and disputed creditor, and should have known that the Debtors are continuously under federal tax audit. It cannot now be excused from its obligation to have filed, at a minimum, a contingent claim to protect its rights to make a claim upon resolution of a federal audit.

## **CONCLUSION**

21.     Having chosen not to file a contingent claim when it had more than adequate knowledge of ongoing federal tax audits that could lead to state tax adjustments, the IDR has foregone any right it may have had to file a late claim now and has failed to demonstrate "excusable neglect." Accordingly, the Motion should be denied.

WHEREFORE, for the foregoing reasons, the Debtors respectfully request that this Court

deny the Motion.

Dated:  August 10, 2007

> KIRKLAND & ELLIS LLP
> David M. Bernick, P.C.
> Janet S. Baer
> Lori Sinanyan
> Todd F. Maynes
> 200 East Randolph Drive
> Chicago, IL  60601
> (312) 861-2000
>
> and
>
> PACHULSKI, STANG, ZIEHL, YOUNG,
> JONES & WEINTRAUB LLP
>
> Laura Davis Jones (Bar No. 2436)
> James E. O'Neill (Bar No. 4042)
> Timothy P. Cairns (Bar No. 4228)
> 919 North Market Street, 17th Floor
> P.O. Box 8705
> Wilmington, DE  19899-8705
> (302) 652-4100
>
> Co-Counsel for the Debtors and Debtors in
> Possession

8