IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

Re: Docket No. 10014, 11245, 11547

Hearing Date: July 5, 2007 at 8:30 a.m.

## DEBTORS' POST-HEARING BRIEF IN OPPOSITION TO
## ANDERSON MEMORIAL'S CLASS CERTIFICATION MOTION

In the nearly two years since Speights & Runyan ("S&R") filed its motion for class

certification on behalf of Anderson Memorial Hospital, it has become even clearer that

certification of a putative class of current and future Asbestos PD claimants is utterly without

merit. Adjudication of Asbestos PD claims against Grace is mature, and the Court has

repeatedly re-affirmed the appropriateness and breadth of the Bar Date notice program. And,

certification of the class that S&R has revealed it truly seeks -- a class of future claimants -- has

no basis in law or in the record in this case. On the law and this record, it must be rejected.

## I.    Facts

### A.    Anderson Memorial

In 1992, S&R filed *Anderson Memorial Hospital v. W.R. Grace et al.*, in the South

Carolina Court of Common Pleas, seeking certification of a nationwide class of private building

owners. (Grace Exh. 1)[1] After the state court struck the non-residents' class claims under the

state's "door-closing" statute,[2] in 1996 S&R filed a second amended complaint limited to

buildings in South Carolina (Grace Exh. 10), which remains operative.

---

[1] Citations to "Grace Exh. __" are references to Grace's exhibits for the July 5, 2007 class certification hearing, provided to the Court and to counsel for Anderson Memorial on July 2, 2007. For the convenience of the Court and parties, a copy of Grace's exhibit list is attached hereto as Exhibit A.

[2] Grace Exh. 5, Mem. Order Granting Certain Defs.' Motion to Strike Class Allegations as to Non-Residents.

On February 9, 2001, S&R filed an "Emergency Petition For A Rule To Show Cause Why A Conditional Class Should Not Be Certified Against W.R. Grace." As the basis for this "emergency" action in a ten year old case, S&R wrote "[o]nce Grace files for bankruptcy, this Court may be deprived of jurisdiction to do anything against Grace -- including issuing a certification order on the merits."[3] In the accompanying Verification, Daniel Speights testified: "Absent conditional certification prior to bankruptcy filing, a bankruptcy court may not grant the South Carolina building owners the preferential class treatment this Court may determine they deserve." *Id.* at Ex. A, p. 3. That day, the South Carolina court granted S&R's petition for emergency relief *ex parte*, conditionally certifying the South Carolina class.[4]

Critically, the ex parte order was not only conditional on its face, but, in addition, the South Carolina court specifically rejected any notion that a final certification was inevitable:

> I will address, up front, one concern that W.R. Grace had; and that's what I call the inertia factor. I assure you -- assure everyone that I have not come close to making a decision in this because -- a final decision, because I have not had a chance to digest, again, the quite voluminous matter, nor have I reviewed the transcript. So there are still issues out there.

> And the fact that the Court has taken the action it has at this point, I, in my mind and personally find that to have no precedential value as to what I'll ultimately find and can tell you, each side, that, to the extent it is humanly possible, I feel that it would have absolutely no influence on me, again, having been issued only in what I considered exigent circumstances.

(Anderson Mem. Exh. 151, 3/9/01 *Anderson Memorial* hearing transcript at 6.)

The conditional order was then superceded by the state court's final order certifying a class of South Carolina building owners in July 2001 (Grace Exh. 26), after Grace's chapter 11 filing. The South Carolina judge directed Dan Speights that "The Order should specifically state that the Order affects only the three remaining Defendants, due to the stay as to W.R. Grace."

---

[3] Grace Exh. 19, Emergency Petition at 1-2, *Anderson Memorial* (2/9/01).

[4] Grace Exh. 20, Order, *Anderson Memorial* (2/9/01).

(Grace Exh. 25 at 1.)  The text of the final Order shows, the Court has recognized, and counsel

for Anderson has admitted (11/20/06 Tr. at 80) that it did not apply to Grace.[5]  Thus there is no

Anderson Memorial class, of any kind, certified as to Grace.

### B.    The Asbestos Property Damage Bar Date And Grace's Court-Approved $4 Million Notice Program.

On June 27, 2001, the Debtors filed their Bar Date Motion [Dkt. 586] seeking a claims

bar date for all Asbestos PD claims.  For the following ten months, the Debtors worked with

every official committee and the Court to craft the Bar Date Notice, the Bar Date Notice Package

and a comprehensive system of publication of the Bar Date Notice (collectively, the "Notice

Program").  Grace filed successive versions of the Bar Date Motion, and the Court considered

multiple responses from the official committees.  Each version of the motions and Notice

Program reflected the Debtors' concerted effort to incorporate any expressed concerns.

The details of the Notice Program and Notice Package were discussed at several omnibus

hearings.  The Court stated that the forms of notice were comprehensive:

> I'm not sure that even this notice program is necessary, but based on the fact that
> Ms. Kinsella and Mr. Hilsee both seem to think that it is, I'm certainly not going
> to stand in the way of doing all this.  This is a very wide, very broad-based media
> program . . . It seems to me that this is designed to cover the universe of plaintiffs
> who could be out there with property damage."  4/22/02 Tr. at 97.

By order dated April 22, 2002 (the "Bar Date Order", Grace Exh. 29), the Court approved

the Notice Program, set March 31, 2003 as the "Bar Date" for Asbestos PD Claims and stated

that Asbestos PD Claims must be filed by the Bar Date and that the Notice Program constitutes

legally sufficient notice to all unknown claimants (*Id.* at 5):

> ORDERED that notice of the entry of this Order and of the Bar Date to unknown
> claimants pursuant to the Debtors' Bar Date Notice Plan for Asbestos Property
> Damage Claims and Other Claims (the "Notice Plan"), as modified, and filed on

---

[5] "On March 30, 2001, Grace filed for bankruptcy which automatically stayed all further proceedings in this case against Grace."  Grace Exh. 26 at 5.

April 12, 2002, shall be deemed good, adequate and sufficient notice of the Bar
Date...

The Bar Date Order originally required all counsel of record for Asbestos PD Claimants

either to (1) certify to Grace that they had contacted or attempted to contact all of their clients,

provide them with the Bar Date Package and advise them of their rights to assert a claim against

the Debtors and the need to file proofs of claim by the Bar Date; or (2) provide Grace with the

names and addresses of clients who have claims against Grace, so that Grace could mail them

copies of the Bar Date Notice Package. (*Id.*)

In June 2002, the Asbestos PD Committee -- of which Dan Speights is a member and the

co-chairman -- filed a motion asking the Court to *abate* the requirement that counsel of record

for Asbestos PD Claimants either notify their clients of the Bar Date or provide the names and

addresses to Grace. (Grace Exh. 31)  When the Committee argued its motion, the Court noted:

> THE COURT:  Well, look.  They -- the attorneys are the ones at risk, not the
> Debtor, because if they blow a bar date and their clients don't file one, the
> excusable neglect standard is undoubtedly not going to say, 'I didn't get the notice
> from my attorney,' and undoubtedly I'm going to say, 'too bad, your attorneys got
> the notice, go contact their malpractice carrier.'  I think it's for the attorneys'
> safety. (7/22/02 Tr. at 103-104)

The PD Committee responded: "The attorneys don't need the safety net . . . And so we would

ask that they be relieved of that obligation. (*Id.*)  And, the Court abated this requirement from

the Bar Date Order. (Grace Exh. 32)  In light of this record, the Court has recognized that Grace

did all that it could on this issue of actual notice. (1/26/06 Tr. at 76; 7/5/07 Tr. at 59-60)

Neither S&R nor anyone else appealed the orders approving the Notice Program.  The

orders became final and represent law of the case.

### C.    S&R's Failure To Comply With The Court's Orders Regarding Filing Of Class Claims.

Even though Dan Speights appeared at the February 25, 2002 omnibus hearing, at which

the Court called for motions to be filed prior to filing class proofs of claim (2/25/2002 Tr. at

110), S&R never sought authority to file a class proof of claim. Instead, without leave of court, S&R filed two class proofs of claim on behalf of "worldwide" and "statewide" *Anderson Memorial* building owners. Not until October 2005 did S&R request class certification.[6]

### D. Grace's Objections To S&R's Unauthorized Claims And Speights' Withdrawals.

Of the approximately 4,000 PD claims filed in response to the Notice and Bar Date, S&R filed approximately 3,000. In addition to filing class proofs of claim, S&R filed an 787 claims on behalf of *Anderson Memorial* in-state claimants and 59 claims on behalf of so-called *Anderson Memorial* out-of-state claimants. In June and September 2005, Grace filed its 12th and 13th omnibus objections to claims [Dkt. 8640 and 9311], which contested S&R's claims on multiple bases, including lack of authorization for filing these *Anderson Memorial* claims. In response, S&R withdrew approximately 2,300 claims.

During the October 31, 2005 hearing, the Court determined that S&R lacked authority to file individual claims on behalf of purported *Anderson Memorial* class claimants, and the Court ordered S&R to withdraw 552 out-of-state claims and 52 in-state so-called *Anderson Memorial* claims. (10/31/05 Tr. at 90). In November 2005, the Court expunged these claims. [Dkt. 11080]. S&R did not appeal. As a result of S&R's withdrawals and these expungements, of the 65 South Carolina claims originally filed by S&R in this case, only one -- Anderson Memorial -- remains. (A depiction of this history is attached hereto as Exhibit B).

### E. The Filing of Anderson Memorial's Class Certification Motion

It was not until October 22, 2005 -- over two and a half years after the Bar Date -- that S&R filed the Motion of Anderson Memorial Hospital for Class Certification. S&R also sought extensive discovery on multiple topics having no bearing on class certification. After ignoring

---

[6] [Dkt. 10014]. Speights also ignored other procedural requirements, as discussed in Debtors' Brief in Opposition to Motion of Anderson Memorial Hospital for Class Certification [Grace Exh. 41, Dkt. 11245, 12/2/05].

repeated directions from the Court to narrow his discovery (*see, e.g.*, 10/23/06 Tr. at 75-78), the

Court narrowed S&R's discovery in April 2007.

In August 2006, the Court entered a case management order that called for discovery and

adjudication of the Debtor's statute of limitations, product identification and lack of hazard

objections.  As a direct result, there are now only 194 active PD claims, 158 of which are S&R

claims (of which 157 are subject to pending summary judgment motions).  All other PD claims

have been resolved on the merits, withdrawn, or settled by other claimants' counsel.

### F.    Class Definition

Anderson Memorial's Second Amended Complaint seeks a class of:

> all persons, corporations, partnerships, unincorporated associations or other
> entities which own in whole or in part any building in South Carolina which
> contains asbestos-containing surfacing materials; these buildings have suffered or
> will suffer asbestos contamination caused by the release of asbestos fibers from
> asbestos-containing surfacing materials manufactured, sold and/or distributed by
> defendants or for which Defendants are otherwise liable.  (Grace Exh. 10, ¶ 3).

But in this bankruptcy case, Anderson has broadened its class definition to include non-South

Carolina claimants:

> Anderson seeks to certify an opt-out class action on behalf of itself and the class
> of other property owners whose buildings were, are or will be contaminated with
> asbestos fibers released from asbestos-containing surfacing materials for which
> the Debtors are legally responsible including, but not limited to, those claims
> identified in Exhibit A.  The class would explicitly exclude any building for
> which a property damage claim is currently pending in this bankruptcy not listed
> on Exhibit A. (Dkt. 10014, Anderson Mem. 10/21/05 Class Certification Motion)

In both definitions, Anderson specifically excludes from the putative class schools, colleges and

certain government buildings.  *See also* 7/5/07 Tr. at 11.  And while the class sought in this

bankruptcy case includes non-South Carolina claimants, it explicitly excludes claimants

represented by other counsel.  (*Id*. at 176)  Of the remaining active Asbestos PD claims, Dan

Speights is sole counsel for only 78 claims.  (*Id*. at 32), and only one claim (Anderson Memorial)

is for a South Carolina building.

## II.     Legal Standards

### A.      Established Law Directs the Bankruptcy Court to Follow A Two-Step Process To Determine Whether A Class Should Be Certified.

To certify a class of claimants, a bankruptcy court must undertake a two-step analysis.

*First*, the court must determine whether a class action "makes sense" and will advance the interests of the bankruptcy, including whether: (1) the class was certified pre-petition; (2) there was a bar date; and (3)  certification will adversely affect the administration of the case. *In re Musicland Holding Corp.*, 362 B.R. 644, 654 (Bankr. S.D.N.Y. 2007); *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22-24 (Bankr. E.D. Pa. 1995); *see also In re Jamesway Corp.*, 1997 WL 327105, *4 (Bankr. S.D.N.Y. June 12, 1997).  The latter often centers on the timing of certification motion.  *See In re Computer Learning Centers, Inc.*, 344 B.R. 79, 89 (Bankr. E.D. Va. 2006) ("A Rule 7023 motion should be filed as soon as practicable and should be denied if it comes so late as to prejudice any party"); *Sacred Heart*, 177 B.R. at 23 ("The most propitious time for filing a motion for class recognition is before a bar date is established, since the bar date is effectively uprooted in part by an extension of the bar date for a favored class of creditors.")

*Second*, claimants must also satisfy the elements of Fed. R. Civ. P. 23, in the same manner as any other potential class in a federal court.  *In re Musicland*, 362 B.R. at 652; *In re First Interregional Equity Corp.*, 227 B.R. 358 (Bankr. D.N.J. 1998).  The importance of these factors in a bankruptcy case is discussed in detail in Debtors' Brief in Opposition to Anderson Memorial's Class Certification Motion at pages 13-17.  (Grace Exh. 41)

### B.      Bankruptcy Courts Have Certified Class Actions Only Sparingly.

While class certification is available, determining whether class treatment is appropriate in a particular case is firmly within the bankruptcy court's discretion. *In re Kaiser*, 278 B.R. at 62; *In re Musicland*, 362 B.R. at 650 (same).  If certification fails to advance the bankruptcy's progress or is otherwise not appropriate under the circumstances, the Court need look no further.

*See In the Matter of American Reserve Corp.*, 840 F.2d 487, 493 (7th Cir. 1988)(bankruptcy judges must "consider the features, which we have discussed, that may make class certification less desirable in bankruptcy than in ordinary civil litigation."); *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005) ("Bankruptcy significantly changes the balance of factors to be considered in determining whether to allow a class action and . . . certification may be 'less desirable in bankruptcy than in ordinary civil litigation.'"), quoting *American Reserve*; *Sacred Heart*, 177 B.R. at 22 ("Even if [the requirements of Fed. R. Civ. P. Rule 23] are met, the bankruptcy court must weigh the issues of whether it is appropriate to give the class members what may amount to an additional opportunity to meet an otherwise applicable bar date.").

Where the first two required elements -- pre-petition certification and a bar date -- do not favor certification, in reality the bankruptcy court has little discretion because the effect of allowing the class claim would be to violate due process, by treating claimants unequally, and to exceed the scope of the Rules Enabling Act, by allowing Rule 23 to create substantive rights that would not otherwise exist. Here, the class was not certified pre-petition and there has been a bar date, a court-approved non-appealed Notice Program and extensive winnowing of PD claims. Therefore, the first two required elements cannot be met and class certification must be denied.

Because all of these requirements can rarely be met, one bankruptcy court has noted that "the class proof of claim device may be utilized in appropriate contexts," but "such contexts should be chosen most sparingly." *Sacred Heart*, 177 B.R. at 22; *see also In re FirstPlus Financial, Inc.*, 248 B.R. 60, 73 (Bankr. N.D. Tex. 2000) ("In the bankruptcy context, class actions should be rare."). Not surprisingly, therefore, bankruptcy courts are highly cautious about certifying classes, and rarely do so in mature bankruptcy proceedings. *In re First Interregional*, on which S&R relies heavily, was not a mature case and is limited to its facts. As the Court has recognized, *First Interregional* was a securities case (7/5/07 Tr. at 185) and thus

class certification was not surprising because there was no alternative. 2,000 identified claimants unrepresented by counsel had purchased lease interests from the broker-dealer debtor and filed claims as of the Bar Date; the chapter 11 case was filed in March 1997, and the certification motion was fully briefed and argued by June 1998. 227 B.R. at 362-64. The records in *First Interregional* and Grace are not remotely similar.[7]

The rarity of certified classes in mature bankruptcy cases is demonstrated by the many courts that have denied class certification. *See, e.g., In re Musicland*, 362 B.R. at 657 (denying class certification); *In re Computer Learning Centers,*, 344 B.R. at 94 (denying motion to file class proof of claim); *In re Ephedra*, 329 B.R. 1; *In re Craft Fin. Inc.*, 321 B.R. 189 (Bankr. N.D. Tex. 2005)(striking class proof of claim); *In re FirstPlus,* 248 B.R. 60 (denying certification); *In re Jamesway Corp.*, 1997 WL 327105 (same); *In re Sacred Heart*, 177 B.R. 16 (same). This result is not surprising, because "class proofs of claim are unnecessary in a bankruptcy proceeding . . . 'since the bankruptcy court has complete control over the bankrupt's estate, there really is little reason to fear multiple or repetitious litigation.'" *In re Standard Metals Corp.*, 817 F.2d 625, 632 (10th Cir. 1987), quoting 7A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1754, at 56 (1986).

### III.    Argument

Anderson Memorial's class certification motion fails both stages of the two-step analysis. It fails to satisfy the factors unique to bankruptcy proceedings: the absence of a certified pre-petition class and the presence of a bar date are dispositive. And it fails to meet Rule 23's requirements because of the minimal number of claims still at issue encompassed by the class

---

[7] *In re First Alliance Mortgage Co.*, 269 B.R. 428 (C.D. Cal. 2001), on which S&R also relied at the July 5, 2007 hearing (Tr. at 186), is similar. Borrowers allegedly injured by a lender's predatory practices filed class proofs of claim. *Id.* at 432-33. The court held that certification was appropriate in this "liquidation" case because the class claimants sought to certify "limited fund" claims and there was a single uniform misrepresentation by the Debtor in its sales practices. *Id.* at 447.

definition and the fact that any common issues are already being addressed. If granted, this motion would allow S&R to pursue claims on behalf of individuals that have already had the opportunity to decide for themselves whether to file claims in these Chapter 11 cases and individuals whose claims do not presently exist. Nothing would be gained, and much lost, by proceeding as a class action here.

### A.     The Class Was Not Certified Pre-Petition.

As described above, a primary consideration in whether to permit certification is whether the class was certified pre-petition.[8] Here, it was not, for two reasons.

*First*, as this Court has repeatedly recognized, the February 2001 conditional certification did not become final as to Grace before Grace's April 2001 chapter 11 filing. (*See, e.g.*, 7/5/07 Tr. at 87-88) At the March 9, 2001 hearing, the state court judge stated that he had "not come close" to deciding whether class certification was appropriate and that his conditional order had "no precedential value as to what I'll ultimately find." (*See* Section I.A above.) The state court's final certification order, issued in July 2001 after Grace's April 2001 chapter 11 filing, expressly did not apply to Grace because of the automatic stay in these bankruptcy cases.[9] Thus, as to Grace there is no certification of any *Anderson Memorial* class of any kind or scope.

*Second*, the pre-petition Anderson class is not even the same as the class S&R seeks here. The operative Anderson state court complaint sought only a South Carolina class, and made no distinctions between S&R clients and claimants represented by other counsel. Here, the class definition is nationwide but excludes claimants represented by counsel other than S&R and claimants for whom Dan Speights is not sole counsel.

---

[8] A principal reason that bankruptcy courts look at whether a class has been certified prior to the bankruptcy petition is because such classes may already have procedures in place that will assist with efficiently giving notice to claimants and handling of the filing of claims. *See In re Musicland*, 362 B.R. at 656; *In re Sacred Heart*, 177 B.R. at 22. However, no such procedures were put in place in the South Carolina case.

[9] *See* Dkt. 9546 at 6-9.

It is undisputed that the pre-petition conditionally-certified *Anderson Memorial* class included only South Carolina plaintiffs; the state court rejected all attempts to further expand the class (Grace Exhs. 5 and 9).[10] Thus, as in *Sacred Heart* where class certification was denied, here, "the putative class and its representatives has never been certified as appropriate by a nonbankrutpcy court." 177 B.R. at 23; *see also In re Jamesway*, 1997 WL 327105 at *10 (in the absence of pre-petition certification, class members lacked "reasonable expectation" that they did not have to comply with the bar date).

Moreover, non-South Carolina residents never could have been *Anderson Memorial* class members. In 1994, the *Anderson Memorial* court held, pursuant to the "clear mandate" of South Carolina's door closing statute, S.C. Code Ann. § 15-5-150, that it had no subject matter jurisdiction over the claims of non-resident putative class members whose buildings were not located in South Carolina. (Grace Exh. 5 at p. 3) The court struck such claims, and S&R filed an amended complaint limited to South Carolina residents. (7/5/2007 Tr. at 19; Grace Exh. 10) Nine years later, in another S&R case, the state Supreme Court confirmed that the state's door-closing statute prohibits nonresidents from participating in a class action against a foreign corporation. *Farmer v. Monsanto Corp.*, 579 S.E.2d 325, 328 (S.C. 2003).

Though S&R has maintained that it "could not appeal" the "interlocutory" door closing order (7/5/2007 Tr. at 22), this is incorrect. Under South Carolina law, certain interlocutory orders are "immediately appealable." *Doe v. Howe*, 607 S.E.2d 354, 356 (S.C. Ct. App. 2004); *see also Brunson v. American Koyo Bearings*, 623 S.E.2d 870, 872 (S.C. Ct. App. 2005). South Carolina Code § 14-3-330(2), in particular, permits immediate appeal of an order "affecting a substantial right when such order (a) in effect determines the action and prevents a judgment

---

[10] These facts are set forth in further detail in Debtors' Brief in Support of the Disallowance and Expungement of 1,900 Improper Claims Filed By the Law Firm Speights & Runyan at 4-5 [Dkt. 9546].

from which an appeal might be taken or discontinues the action, (b) grants or refuses a new trial

or (c) strikes out an answer or any part thereof or any pleading in any action." Thus, Anderson

could have immediately appealed the "door closing" order, but elected not to. *See Murphy v.

Owens-Corning Fiberglass Corp.*, 550 S.E.2d 589, 593 (S.C. Ct. App. 2001) (order dismissing

claims against pursuant to the door closing statute is "directly appealable under Section 14-3-

330(2) because it affects a substantial right and strikes out part of a pleading"), *overruled on

other grounds* in *Farmer*, 579 S.E.2d 325; *see also Lebovitz v. Mudd*, 347 S.E.2d 94, 96 (S.C.

1986) ("An order granting a Rule 12(b) motion as to one of multiple claims is directly appealable

under 14-3-330(2) because it affects a substantial right and strikes out part of a pleading.").

### B.    There Was A Bar Date and Court-Approved, Unappealed Notice Program.

S&R acknowledges the existence of the Bar Date and Notice Program. Their only

response is to question the adequacy of notice. But that matter was decided -- finally -- when the

notice was issued. That decision is law of the case. The Court long ago recognized that the

Debtors' notice program was extensive and that any issues regarding notice to putative PD

claimants cannot be re-examined because: "I do not believe at this point it's appropriate to look

outside the proofs of claim that were filed -- proofs of claim that were filed because we had a bar

date that I found to be appropriate. So the universe of claims is going to be the proofs of claim

filed in the Court." (10/23/06 Tr. at 67). And, the Court has recognized that the PD Committee,

including Dan Speights, prevented assurance of direct notice to their claimants:

> [T]he debtor had asked that the attorneys provide some certificate that indicated
> that they, in turn, had forwarded the proof of claim form and the notice on to their
> clients, and the -- the property damage committee balked at that, asserting that
> they were officers of the Court, they didn't have to do that, and they basically
> took great umbrage with that suggestion, and so, I didn't demand it. . . . That's
> the property damage committee on which Anderson sits. (7/5/07 Tr. at 59-60).

In these circumstances, bankruptcy courts do not permit nullification of the Bar Date and

further recruitment of claimants. In *Jamesway*, the debtor argued that only 243 of 800

employees filed timely claims alleging violations of worker training laws. Certifying the class would have "effectively . . . extended the Bar Date to putative class members who failed timely to file claims." 1997 WL 327105 at *4. In denying certification, the court held this was "not a case justifying an exception to the enforcement of the Bar Date Order in accordance with its express and unequivocal terms. To do so would be 'unwarranted, unfair, and possibly violate the due process rights of other creditors.'" *Id.* (quoting *Sacred Heart*, 170 B.R. at 24); *see also In re Craft*, 321 B.R. 189 (denying certification because it would "prejudice [debtor] and its creditors to delay the plan process and claim objection process to conduct a Rule 7023 hearing," and the class "waited too long to seek invocation of Rule 7023.")

### 1.    Unwinding the Bar Date Program Would Violate Due Process and Exceed the Scope of the Rules Enabling Act.

Granting class certification here would not just supplement the Bar Date, as Dan Speights tried to suggest at the July 5 hearing: it would retroactively eradicate it. Such backward-looking alteration of the rules would be patently unfair to claimants who filed in a timely manner and would create rather than resolve due process problems. *Sacred Heart*, 177 B.R. at 23 ("Tinkering with an established bar date may raise due process claims of parties who have timely filed claims by originally-established bar dates, since it gives late filers a second bite at an apple which is likely to be less than fully satisfying, and thus effect unfair diminution of the timely filer's share of a distribution.")

Due process requires notice that is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To determine legally-adequate notice for a bar date, bankruptcy law divides creditors into two groups. "Known" creditors are entitled to actual notice of a bar date; publication notice constitutes legally sufficient notice to "unknown" creditors. *Chemetron Corp. v. Jones*, 72 F.3d

341, 344 (3rd Cir. 1995); *DePippo v. Kmart Corp.*, 335 B.R. 290, 296 (S.D.N.Y. 2005). The distinction between these two types of creditors, and the "reasonable diligence" that is required in ascertaining the identity of "unknown" creditors," are described in detail in Debtors' January 13, 2006 Brief Describing the Purposes that Publication Notice Served in the Debtors' Bar Date Notice Program. (Dkt. 11547) In light of the principles and precedents discussed in that brief, this Court has already recognized the fallacy of Anderson Memorial's assertion that Grace should have sent Bar Date Notices to all buildings -- not claimants, or even building owners, but *buildings* -- to which Grace sold asbestos-containing surface treatment many decades ago. (7/5/07 Tr. at 55-58): "Buildings aren't claimants. They have no standing to raise a claim in a bankruptcy case . . . And the fact that the debtor has some indication that it's product was shipped to a specific building is totally irrelevant with respect to giving notice to claimants." (Grace Exh. 44 at 82-83). Thus, this Court declined to "admit a wholesale group of several thousand documents and billing records without knowing specifically what those documents are and what the relevance is to a particular issue in class certification" and noted that "[t]o the extent that you're offering them with respect to an element in the class certification motion, then the ruling I made on the record last week still stands." *Id.* at 81.[11]

These rulings make sense: Over the course of three decades, buildings are demolished and change names and ownership, often repeatedly. That is exactly why *publication notice*, rather than actual notice, is held to be legally adequate for these types of potential claimants.

Indeed, in these bankruptcy proceedings, this Court and the District Court have already recognized that when the link between Debtors and potential claimants is so "highly attenuated,"

---

[11] "[W]ith respect to sales invoices, Mr. Speights, you can certainly send them over to the debtor. You can certainly send them to the Court. But before they're offered into evidence, they have to be offered in a context that will show that they are related to a claim that's been filed in this case. I'm not going to just willy-nilly 16 banker's boxes full of documents offered in some group exhibit form." (6/29/07 Tr. at 17-18).

the putative claimant is an unknown creditor and actual notice is not required. *See Pacificorp and Vancott Bagley Cornwall & McCarthy, v. W.R. Grace*, 2006 WL 2375371, *10 (D. Del. Aug. 16, 2006). In *Pacificorp*, this Court addressed issues concerning Grace's notice to the current and former owners of a property to which Grace shipped vermiculite for processing decades ago. The current and former owners alleged that they had not received timely notice of Grace's Bar Date. This Court denied their motion to file a late proof of claim. *Id*. at *3. In affirming, the District Court, applying *Mullane* and *Chemetron*, specifically found that Grace had no direct relationship with the late claimants and "did not know the identities of those current and prior owners." *Id*. at *10 and n. 19. Likewise, here, the thousands of Grace shipping records merely indicate names of buildings to whom Grace sold product more than 30 years ago -- not names or addresses of current building owners.

S&R is estopped from demanding additional notice to building owners for another reason. To the extent that any of the proposed class members did not receive actual notice of the Bar Date, this Court has already determined that S&R, rather than the Debtors, is responsible. S&R signed and filed individual PD claims for every single claimant on its list of potential claimants at Exhibit A to Anderson Memorial's October 2005 class certification motion [Dkt. 10014], hundreds of which were then either withdrawn or disallowed by this Court. Thus, the Court's concern regarding potential lack of notice to putative Anderson Memorial South Carolina class members (7/5/07 Tr. at 144) cannot be charged against the Debtors.

The Federal Rules of Civil and Bankruptcy Procedure do not afford claimants any rights that they do not otherwise have. The Rules Enabling Act precludes the use of class certification to allow a law firm to resuscitate claims that were filed with no authority and with no support or claims that have been dismissed or withdrawn based on statutes of limitation or repose or lack of product identification. *See Standard Metals*, 817 F.2d at 632 ("Class action procedures can be

employed in a bankruptcy proceeding only to consolidate claims that have already been properly

filed."); *Sacred Heart*, 177 B.R. at 24.  A case that Dan Speights relied on at the July 5 hearing

confirms this:  "The Bankruptcy Rules Enabling Act gives the Supreme Court authority to

promulgate rules of procedure in the bankruptcy courts, provided that they do not 'abridge,

enlarge, or modify any substantive right.'"  *In re First Alliance Mortgage Co.*, 269 B.R. 428, 439

(C.D. Cal. 2001), *citing* 28. U.S.C. § 2075.

    The Supreme Court in *Amchem* said it best:  "Rule 23's requirements must be interpreted

in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that

rules of procedure 'shall not abridge, enlarge or modify any substantive right, 28 U.S.C.

§ 2072(b)."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *see also Chevron*

*USA, Inc. v. Vermilion Parish Sch. Bd.*, 215 F.R.D. 511, 515-16 (W.D. La. 2003) ("[T]o allow

the certification of a class action under the facts of this case would result in Rule 23 supplying a

substantive right where one is now lacking, and such result a is prohibited by the Rules Enabling

Act."); *Leonard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 64 F.R.D. 432, 434-35

(S.D.N.Y. 1974)("Rule 23, of course, may not 'abridge, enlarge or modify any substantive

right'"); *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 694 (E.D. Pa. 1973)("[T]he

Federal Rules of Civil Procedure do not create substantive rights which do not otherwise exist.").

    **C.**    **S&R's Motion For Class Certification Would Adversely Affect Case Administration, Was Not Timely Filed, and Violates This Court's Orders.**

    Based upon the first two factors addressed above -- absence of a certified pre-petition

class and presence of a bar date -- the Court need not proceed beyond these first two factors.

But, if the Court does proceed to further examine the impact of the class claim here, the analysis

of the third factor shows that certification will adversely affect administration of the case.

    First, the impact of class certification would be entirely negative.  Class members would

have to have the opportunity to opt out, and the opt-out notification would cause confusion

among putative class members.  There would be an appeal, and this entire bankruptcy case would be paralyzed during the appeal.  If the class were certified and sustained on appeal, the Bankruptcy Court would have to decide how its prior substantive rulings on PD claims apply to the class members.  And, plan negotiations would be nearly impossible, because no one would know the composition of the class.

Second, S&R's class proofs of claim violated of this Court's earlier directives that claimants must seek leave of court before filing any class claims.  (2/25/02 Tr. at 107-108)  S&R also ignored other important steps that bankruptcy courts have required to initiate a request for class certification.[12]  S&R's disregard of bankruptcy rules warrants denial of its motion for class status.  *Reid v. White Motor Corp.*, 886 F.2d 1462, 1472 (6th Cir. 1989) ("[Petitioner] blatantly failed to comply with the bankruptcy procedure to commence a class action.  As a result, the bankruptcy court did not abuse its discretion in denying [the] class proof of claim.")

## D.    The Proposed Class Does Not Meet Rule 23's Requirements.

Even if the Court determines that a class action might serve some function in the context of the record here, the court must still make another key determination before certifying a class: the potential class must meet the criteria of Fed. R. Civ. P. 23.  And, the burden is on the claimant seeking class certification to establish each element.  *In re Kaiser*, 278 B.R. at 64.

### 1.    Numerosity

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable."  That is not the case here.  In response to the Notice and Bar Date, all timely individual claims have already been filed.  While nearly 4,000 claims were filed, only 158 S&R claims remain (and, 82 are California universities not part of the Anderson class) (7/5/07 Tr. at

---

[12] These procedural defects with S&R's motion are discussed in detail in Debtors' Brief in Opposition to Anderson's Motion for Class Certification (Grace Exh. 41).

176).[13]  Thus, only 78 claims remain in S&R's putative class (Anderson Exh. 141), and only one

of them is a South Carolina claim.  On this record, the Court has already recognized that

numerosity is a threshold problem.  (1/26/06 Tr. at 75; 10/23/06 Tr. at 69-70).

Nor would adding future claimants resolve the numerosity problem, because, as

discussed above, applicable limitations periods have barred so many of their claims.  The one

asbestos bankruptcy case -- U.S. Minerals -- relied on by Anderson Memorial proves this point.

Although the reorganization plan allowed for the possibility for future Asbestos PD Claims, the

Asbestos Claimants Committee -- one of the plan proponents -- stated in the Disclosure

Statement that it "*does not believe there are any such claims in this case.*  The PD

representatives on the Asbestos Claimants Committee, moreover, believe that all Asbestos PD

Claims against the Debtor are covered by proofs of claim that were filed in the case."  (Excerpt

from U.S. Minerals Discl. St., at 70, attached hereto as Exh. C)(emphasis added).  Anderson

Memorial, represented by Dan Speights, was a PD member of the ACC.  (See Exh. D hereto).

Anderson Memorial argues that certification of a class of future claimants is necessary

because Grace's Bar Date Order did not cover future claims.  (7/5/07 Tr. at 37, 47)  For all of the

reasons discussed above, the time to raise such an argument was in 2002, when the Bar Date

Notice was being extensively litigated -- not three years later.  Regardless, the premise

underlying this argument -- that certification of a class of future Asbestos PD claims is

appropriate and necessary -- is faulty for at least three reasons.

*First*, through the extensive Notice Program, all potential PD claimants received actual or

constructive notice of the Bar Date and were obligated to inquire into whether they had a claim --

regardless of whether or not the Bar Date notice covered "future" claims.  *Benak v. Alliance*

---

[13] 82 remaining S&R claims are at issue in Grace's pending California statute of limitation motions [Dkt. 14594]; 55 S&R claims are at issue in Grace's pending Canadian limitations period motion [Dkt. 14597]; and 20 S&R claims are at issue in other pending summary judgment motions.  [Dkt. 13701, 14598]

*Capital Management L.P.*, 435 F.3d 396, 399 (3rd Cir. 2006)(newspaper reports placed

investment fund shareholders on "inquiry notice" of potential claims); *Prudential Ins. Co. v. U.S.*

*Gypsum Co.*, 359 F.3d 226, 238 (3rd Cir. 2004)(government regulations and other public

information placed building owner on "inquiry notice" of potential claims).

     *Second*, certification of a class of "future" Asbestos PD claimants would violate

fundamental due process. In *Amchem*, with respect to a putative class of future asbestos

claimants, the Supreme Court noted "the gravity of the question of whether class action notice

sufficient under the Constitution and Rule 23 could ever be given to legions so unselfconscious

and amorphous." 521 U.S. at 595. *See also Meachem v. Wing*, 227 F.R.D. 232, 235-37

(S.D.N.Y. 2005) (denying certification of a class of claimants not presently eligible for public

assistance but who might become eligible in the future, because of due process concerns).

     ***Third***, Anderson Memorial argues that because of the Eighth Circuit's 1994 ruling in

*MDU Resources Group v. W.R. Grace & Co.*, 14 F.3d 1274 (8th Cir. 1994), a large number of

putative claimants may have claims against Grace that do not even exist yet. *MDU* held that,

with respect to an office building in North Dakota, that state's six-year statute of limitations for

property damage claims did not begin to run until the building owner knew or should have

known of injury or contamination caused by asbestos. *Id.* at 1279.

     But *MDU* is not controlling law. This Court has already held that determining the

appropriate state's statute of limitations to apply to a property damage claim requires considering

Delaware's choice of law rules, as this Court has already done in the context of determining that

certain Asbestos PD claims against Grace were time-barred. *See* Order Disallowing Prudential

Georgia Claims. [Dkt. 13457] Those rules direct the Court to apply the limitations period of the

state where the claim at issue arose, including any accrual provisions, unless Delaware's

limitations period is shorter. *See* 10 Del. C. § 8121 (2005). Thus, for states like New York,

which has adopted a statute of limitations that begins to run when the product is installed, all Asbestos PD claims against Grace were time-barred well before the Bar Date, and there are no future claims. *See MRI Broadway Rental, Inc. v. U.S. Mineral Products Co.*, 704 N.E.2d 550 (N.Y. Ct. App. 1998). And for states like Louisiana, Michigan and Wisconsin, where the limitations period begins to run at the time the claimant knew or should have known of the presence of asbestos in the building -- even if actual contamination has not occurred -- claims not filed as of the Bar Date against Grace are now time-barred.[14]

With respect to the Canadian claims that S&R seeks to incorporate in its class, the fact that future Asbestos PD claims is a "null set" is even clearer. There are both "normal" and -- in four of the provinces -- "ultimate" limitations periods. The provinces' normal periods range from two to six years, and the ultimate limitations periods of Alberta, British Columbia, Manitoba, and Newfoundland and Labrador range from 10 to 30 years. Because the claims at issue here are characterized under Canadian law as claims in negligence for pure economic loss, rather than claims for property damage, *see Winnipeg Condominium Corporation No. 36 v. Bird Construction Co.*, [1995] 1 S.C.R. 85 (S.C.C.), the applicable normal and ultimate limitations periods began to run upon the installation of a Grace asbestos-containing product. Though discoverability principles can in theory postpone the running of normal limitations periods, the court in the leading Canadian asbestos-in-buildings case found that all of the factors necessary to bring a claim existed upon the installation of an asbestos-containing product in the building at issue. *See Privest Properties Ltd. v. Foundation Co. of Canada Ltd.*, [1995] 10 W.W.R. 385 (B.C.S.C.) at para. 198 ("The plaintiffs were aware of the controversies surrounding asbestos and, in my opinion, they either knew or ought to have known that MK-3 contained asbestos. All

---

[14] *See Trizec Properties, Inc. v. U.S. Mineral Products Co.*, 974 F.2d 602 (5th Cir. 1992)(applying Louisiana law); *Warren Consolidated Schools v. W.R. Grace & Co.*, 518 N.W.2d 508 (Mich. Ct. App. 1994); *Banc One Building Management Corp. v. W.R. Grace*, 565 N.W.2d 154 (Wisc. Ct. App. 1997).

of the factors necessary to an action regarding the MK-3 existed as of the date of completion of its installation.") Moreover, ultimate limitations periods are not subject to discoverability principles; they run upon the installation of an allegedly defective product regardless of whether a claim was discoverable at that time.[15]

Thus, the vast majority of U.S. and Canadian building owners whose buildings still have Grace asbestos-containing materials but who did not file claims as of the Bar Date will never be able to pursue claims against Grace because their claims are barred by statutes of limitations.

S&R also resorts to masonry fill claims in a last-ditch effort to augment the size of its class. But, masonry fill is not and never has been considered to be "surfacing material," and the Anderson class is expressly limited to building containing surfacing material.[16]

###    2.    Commonality and Predominance

Common issues related to Grace's PD claims are already being well handled under the August 2006 case management order. Knowing that, and understanding that "The predominance analysis under Rule 23(b)(3) is much more demanding than the general commonality test under Rule 23(a)(2)," *In re United Companies Fin. Corp.*, 277 B.R. 596, 605 (D. Del. 2002), citing *Amchem*, 521 U.S. at 624, S&R resorts to conspiracy as a purported common issue meriting class certification. (7/5/07 Tr. at 39) But a class premised on a purported conspiracy between Grace and other manufacturers cannot be certified, because the Bar Date Notice covers all claims directly or indirectly related to Grace's asbestos products and sounding in any legal theory. (Grace Exh. 58, definition of Asbestos Property Damage Claim).

---

[15] *See* Grace's pending Canadian limitations motion, Dkt. 14597, and 12/21/2006 G. Mew "Opinion re Canadian Limitation Issues," Dkt. 14136, at 4, 8.

[16] Grace Exh. 10, ¶ 3 (class definition in Second Am. Cplt); *see also* Grace Exh. 18 at p. 21.

In addition, the Third Circuit has already rejected precisely such a class conspiracy claim -- premised on much of the same type of evidence that S&R would seek to use here -- against another asbestos manufacturer in *In re Asbestos Schools Litigation*, 46 F.3d 1284, 1286-88 (3d. Cir. 1994). The Third Circuit is not alone. *See, e.g.*, *Chavers v. Gatke Corp.*, 107 Cal. App. 4th 606, 617 (2003) (applying a concert of action theory of collective liability in such industry-wide circumstances "would expand the [concert of action] doctrine far beyond its intended scope and would render virtually any manufacturer liable for the defective products of an entire industry, even if it could be demonstrated that the product which caused the injury was not make by the defendant."), *quoting Sindell v. Abbott Laboratories*, 163 Cal. Rptr. 132 (Cal. 1980).

### 3.    Class Treatment for PD Claims Is Not Superior.

In a bankruptcy case, a class action will rarely be "superior to other available methods for the fair and efficient adjudication of the controversy" simply because the very purpose of many bankruptcy procedures is to consolidate and efficiently dispose of large number of claims. *In re Thomson McKinnon Securities, Inc.*, 150 B.R. 98, 101 (Bankr. S.D.N.Y. 1992). Here, PD claims have already been thoroughly litigated and extensively winnowed through the objection process and the CMO, and all but one of the remaining S&R claims are subject to pending dispositive motions. Future claims are unlikely and will be impossible to deal with on a class basis because of due process issues. Here, class action is not only inferior to the existing litigation as a method for dealing with the remaining PD claims, *see In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995), but the existing litigation specifically addresses common issues. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1019-1021 (7th Cir. 2002).

Beyond not being a superior method for dealing with the PD claims here, certifying a class would move these cases *backward* by nullifying the Bar Date and creating a group of creditors that is unknown, and largely unknowable, in its size and complexity; raising due

process concerns and questions of unfairness to creditors who have already filed claims in conformity with the original Bar Date; and requiring negotiation, drafting, approval, execution and funding of a new notice program and bar date and allowing for opt outs. The delays and uncertainties inherent in this scheme are manifest. In short, there is *nothing* to be gained here by proceeding as a class action.

## IV.    Three Evidentiary Issues

During the July 5, 2007 hearing (Tr. at 219), the Court directed the parties to address these three evidentiary issues:

### A.    <u>South Carolina Class Certification Hearing Transcripts</u>

Anderson's counsel indicated that he intends to offer some or all of two transcripts from the *Anderson Memorial* South Carolina class certification hearings. (7/5/07 Tr. at 115) First, it is not clear whether Anderson intends to offer these transcripts in whole or in part. Second, Anderson has made no proffer as to the relevance of these transcripts. The class sought in the South Carolina case is not the same as the class sought here; these two specific transcripts focus largely on adequacy of counsel issues which are not relevant here; and the transcripts are out-of-court statements which Anderson seeks to use against Grace and are therefore hearsay. On the present record, the transcripts are not admissible.

### B.    <u>Sealed Settlement Materials</u>

At the July 5 hearing, S&R offered into evidence various materials filed in the *Anderson Memorial* South Carolina litigation. Grace objected to one such document -- a reply brief filed by Anderson attaching various settlement communications that were filed under seal, which is Anderson's Exhibit 76. (7/5/07 Tr. at 104).[17] This Court has already ruled that these specific

---

[17] The law regarding Rule 408 and the inadmissibility of these settlement communications is described in detail at Debtors' Supplemental Brief re Federal Rule of Evidence 408 in Support of their Motion for Protective Order against Anderson Memorial's Requests for 30(b)(6) Depositions and Documents.

settlement communications between Grace and Anderson Memorial are inadmissible under Rule 408. (5/30/07 Tr. at 127-28)("I am sustaining an objection to Rule 408 with respect to settlement discussions." Thus, they cannot now be admitted.

### C.    PD Committee Statements Regarding the Individual Nature of PD Claims

At the July 5, 2007 hearing, the parties disagreed over whether a statement by a PD Committee member -- that PD claims do not involve common issues -- binds Anderson Memorial, which is also a Committee member.  There is no need for the Court to decide this issue, because the PD Committee as a whole, including S&R on behalf of its claimants, is on record on this very issue.  In opposing Debtors' Motion for a Scheduling Order Regarding Certain of the Debtors' Fifteenth Omnibus Objections to PD Claims, the PD Committee -- of which S&R is a member -- filed an objection [Dkt. 12753] that S&R specifically joined [Dkt. 12762], where they argued that each PD claim involves "unique facts and circumstances":

> In large part, these defenses [i.e. statute of limitations and product identification], and are more complex because their application is dependent upon the *unique facts and circumstances of each remaining PD Claim* and are not susceptible to common application among PD Claims generally.  As a result, the liquidation of PD Claims based upon these defense must be strictly confined to the PD Claims Objection process, which is specifically designed - unlike PD Estimation - to provide a merits-based adjudication of each PD Claim based upon *the unique facts and circumstances of each PD Claim* and with each PD Claimant present before the Court.  [Dkt. 12763 at p. 4]

Thus, S&R squarely argued that PD claims do not involve common issues.

## V.    Conclusion

Anderson Memorial's class certification motion was untimely when filed two years ago, would nullify the Bar Date, is unfair to existing creditors and does not meet the criteria for certification. Accordingly, the motion should be denied.

Dated:  August 10, 2007

KIRKLAND & ELLIS LLP
David M. Bernick
Lisa G. Esayian
Michael T. Dierkes
Samuel L. Blatnick
200 East Randolph Drive
Chicago, IL  60601
Telephone:  (312) 861-2000
Facsimile:   (312) 861-2200

-and-

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession