# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>UNITED STATES MINERAL PRODUCTS COMPANY, d/b/a ISOLATEK INTERNATIONAL,<br><br>Debtor. | Chapter 11<br><br>Case No. 01-2471 (JKF) |

DISCLOSURE STATEMENT
RELATING TO THE FIFTH AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY THE CHAPTER 11 TRUSTEE AND THE OFFICIAL
COMMITTEE OF ASBESTOS BODILY INJURY AND PROPERTY DAMAGE
CLAIMANTS FOR UNITED STATES MINERAL PRODUCTS COMPANY

PRYOR CASHMAN SHERMAN & FLYNN LLP
Richard Levy, Jr.
410 Park Avenue
New York, New York 10022
(212) 421-4100

- and -

MORRIS, JAMES, HITCHENS & WILLIAMS LLP
Stephen M. Miller (ID No. 2610)
Carl N. Kunz, III (ID No. 3201)
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, Delaware 19899
(302) 888-6800

Attorneys for Anthony R. Calascibetta, as Chapter 11 Trustee for United States Mineral Products Company

JOHN J. PREEFER
60 East 42d Street, Suite 1201
New York, New York 10165
(212) 490-9524

- and -

JASPAN SCHLESINGER & HOFFMAN LLP
Frederick B. Rosner (No. 3995)
913 N. Market Street, 10th Floor
Wilmington, Delaware 19801
(302) 351-8000

Attorneys for the Official Committee of Asbestos Bodily Injury and Property Damage Claimants of United States Mineral Products Company

September 20, 2005

Contribution and any appreciation in the equity value of the Reorganized Debtor after the Effective Date is not likely to yield a recovery exceeding approximately one to two percent of the aggregate of all asbestos liabilities channeled to the Asbestos Trusts. The amount of recovery on any claims allowed against the Asbestos Trusts will depend on the terms and conditions of the Asbestos Claims Resolution and Distribution Procedures to be administered by the Asbestos Trusts.

The Trust Agreement for each Trust will contain provisions governing the circumstances under which reserves may be established, adjusted, or liquidated, and under which the trust may be terminated and its remaining assets distributed to holders of allowed claims.

In October 2001, the Debtor's actuarial experts, Tillinghast/Towers Perrin, estimated the Debtor's exposure on those pending asbestos personal injury claims at between $333.7 and $515.4 million, based on the Debtor's recent prepetition settlement history. See Appendix E. Tillinghast/Towers Perrin also projected the exposure on asbestos personal injury claims filed after May 2001 in a range from approximately $1.349 billion to approximately $2.63 billion. According to the projections, the combined exposure for both existing Asbestos PI Claims and projected future claims is approximately $1.68 billion to $3.15 billion, all of which will be channeled to and administered by the PI Asbestos Trust pursuant to the Plan.

In addition to unliquidated Asbestos PI Claims, Class 5 includes Settled Asbestos Claims, which are any Asbestos-Related Personal Injury Claims that existed on or before the Petition Date and that were listed by the Debtor in its schedules filed with the Bankruptcy Court on September 5, 2001 as having been fixed and liquidated in the scheduled amount but which was unpaid as of the Petition Date. As of the Petition Date, the Debtor's records reflected that there were more than 4,000 Settled Asbestos Claims, with an aggregate settlement value of approximately $10,000,000, for which the Debtor and the affected claimants had entered into and exchanged definitive settlement documents and releases, but which the Debtor or its insurance carriers had not funded as of the Petition Date. As a result of updating of the Debtor's records after the Petition Date in light of additional documentation received, USM's management believes that the actual number of Settled Asbestos Claims is approximately 3,650, with an aggregate liquidated settlement value of approximately $9,547,800. Each Settled Asbestos Claim will be entitled to receive liquidated amounts specified in the Claims Resolution and Distribution Procedures for the PI Asbestos Trust.

Numerous Asbestos PD Claims were also asserted against the Debtor. Proofs of claim were filed on account of liquidated claim damages alleged to be approximately $277 million for proofs of claims asserting liquidated amounts. Other proofs of claim assert unliquidated amounts for claims arising from certain class actions and proceedings in which the complaints did state any specific amounts of damages in the prayers for relief.. The PD representatives on the Asbestos Claimants Committee believe that the damages sought by those claims exceed $500 million and ultimately could exceed $1 billion. All of those liabilities, will be channeled to and administered by the PD Asbestos Trust pursuant to the Plan.[5]

The actual recovery on claims allowed against the Asbestos Trusts will depend on a number of factors including, without limitation, the number of claims filed (and, in the case of claims against the PI Asbestos Trust, the diseases and symptoms asserted by the claimants); the value of the assets of the Asbestos Trusts available for distribution including, in particular, the value of the New Common Stock

---

[5]  In April 2005, the Legal Representative filed objections to approximately 300 Asbestos PD Claims. At or about that time, approximately 75 of the claims were voluntarily withdrawn by the claimants' counsel. The objections to the remaining claims were subsequently adjourned or withdrawn without prejudice, pending the completion of negotiations that resulted in the Plan and in the prosecution of the plan confirmation proceedings.

and the amount of Excess Cash received by the Trusts, if any, based on the business results of New USM over time; and each Trust's respective costs of administration. With respect the PI Asbestos Trust, in particular, based on forecasts of projected asbestos personal injury liabilities relating to USM over the life of the Trust and on the assumption that all allowed asbestos-related personal injury claims will receive a distribution from the PI Asbestos Trust, regardless of the disease category underlying each allowed claim, the Proponents believe that it is unlikely that the PI Asbestos Trust will be able to make payments of even $1,000 to mesothelioma claimants holding currently unliquidated or unresolved claims, $400 to lung cancer claimants holding currently unliquidated or unresolved claims, and $100 to other claimants holding currently unliquidated or unresolved claims.

With respect to the PD Asbestos Trust, allowed asbestos property damage claims could be as much as $1 billion (according to representatives of certain PD claimants). Based on the assumption that the PD Asbestos Trust receives assets from the Asbestos Trust Contribution worth approximately $8 million on the Effective Date, the Proponents believe that distributions from the PD Asbestos Trust likely will not exceed one to two percent on the aggregate property damage claims against the Debtor. Distributions from the PD Asbestos Trust to holders of Asbestos PD Claims may be affected and reduced by the filing of additional PD claims against the trust pursuant to its Asbestos Claims Resolution and Distribution Procedures, although the Asbestos Claimants Committee does not believe that there any such claims in this case. The PD representatives on the Asbestos Claimants Committee, moreover, believe that all Asbestos PD Claims against the Debtor are covered by proofs of claim that were filed in the case. The PD Asbestos Trust will establish a reserve to address the possibility that additional claims may be filed against that trust in the future.

5. Non-Asbestos-Related Products Liability Claims and Other Non-Insider Litigation Claims (Class 6)

Class 6 Claims are impaired. Non-Asbestos-Related Product Liability Claims and Other Non-Insider Litigation Claims are (i) any unsecured claims scheduled or timely filed in the Chapter 11 Case with respect to which a lawsuit, action, arbitration or other proceeding was pending as of the Petition Date to determine the Debtor's liability (if any) or with respect to which a summons and complaint (or their legal equivalents), or a request or demand to arbitrate had been served on the Debtor prior to the Petition Date, and which was not finally adjudicated against, paid by or settled by the Debtor prior to the Confirmation Date, and (ii) prepetition claims asserted in proofs of claim against the Debtor that are predicated upon alleged injury to a person or property by reason of product liability, product defect or product installation defect, breach of contract, or any equivalent legal theory; *provided, however*, that Non-Asbestos-Related Product Liability Claims and Other Non-Insider Litigation Claims do not include any pre-petition claims, causes of action, lawsuits, actions, arbitrations or other proceedings alleged, asserted, commenced or pending against the Debtor prior to the Effective Date (x) to recover for or on account of any Asbestos-Related Claim; or (y) by an Insider (or a Related Party of an Insider) or an Excluded Person, or to recover on account of or for the benefit of an Insider (or a Related Party of an Insider) or an Excluded Person.

Upon the later of (i) forty-five (45) days after the Effective Date, (ii) entry of a Final Order fixing and allowing or estimating, for distribution purposes under the Plan, or approving a compromise of, the amount of such claim, or (iii) entry of a Final Order by a court of competent jurisdiction adjudicating or compromising any litigation against the Debtor or confirming any arbitration award against the Debtor (which, for purposes of allowance of Claims in this class, shall mean a judgment that has become "final" as in a Final Order), which determines the amount of any Class 6 Claim against the Debtor, each holder of an Allowed Class 6 Claim shall receive: (a) the proceeds of any insurance that covers such Claim; and (b) a Cash payment from New USM equal to four percent (4%) of the uninsured amount, if any, of the Allowed Claim. The automatic stay shall be lifted as of the Effective Date to permit the relevant courts or