IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Objection Deadline: September 7, 2007, at 4:30 p.m.** |
| | ) | **Hearing Date: September 24, 2007, at 2:00 p.m.** |

### MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING SETTLEMENT OF BP PRODUCTS NORTH AMERICA, INC. CLAIM NO. 6356 PURSUANT TO FED. R. BANKR. P. 9019

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby move this Court, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), for entry of an order approving the terms of the stipulation resolving

Claim No. 6356 filed by BP Products North America, Inc. (the "Claimant") against the Debtors

(the "Stipulation," attached hereto as Exhibit A). In support of this motion (the "Motion"), the

Debtors respectfully represent as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

91100-001\DOCS_DE:130171.1

### Jurisdiction

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and of this matter in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

2.    From 1996 until at least 1999, W. R. Grace & Co.-Conn. ("Grace") sold formulations of a fireproofing product known as Monokote®, PK 140, PK 150 and Z146 ("Fireproofing Product") for use in projects in the United States and outside of the United States. After Grace's customer Occidental Chemical Corp. ("OxyChem") notified Grace of evidence of corrosion where Fireproofing Product had been installed, Grace concluded that its Fireproofing Product could accelerate corrosion and that it would be prepared to participate in the costs to repair sites on which the Fireproofing Product was used and such accelerated corrosion was found.

3.    OxyChem made a claim against Grace in 1997 during the period of Continental Casualty Company ("CCC") Policy Number CCP 1 66800 586 (the "Applicable Policy").[2] The Applicable Policy has a $5,000,000 deductible. In early 2000, Grace asked CCC to fund a $4,773,122 settlement of the OxyChem claim. CCC advised that it had no objection to the settlement and that it would fund it subject to a reservation of all of its rights concerning the OxyChem settlement and any other fireproofing claims under the Applicable Policy and all other insurance policies and agreements. Prior to the Petition Date, Grace then reimbursed CCC the

---

[2]    The Applicable Policy explicitly excludes asbestos liability. Therefore, any payments under the Applicable Policy do not reduce the amount of insurance available to satisfy asbestos related claims.

full $4,771,122 paid under the OxyChem settlement, as required under the Applicable Policy. This left a remaining deductible of $228,878.

4.    In 1998 and 1999 Claimant contracted with Grace to install Fireproofing Product at Claimant's Toledo, Ohio refinery.  Fireproofing Product was installed directly at the Facility and to off site steel structures that were later installed at the Facility.  Subsequently, corrosion developed to steel lath and underlying metal substrate where the Fireproofing Product was applied, allegedly due to defects caused by the Fireproofing Product.

5.    In March 2001, Grace and Claimant entered into settlement discussions that would compensate Claimant for costs associated with remediation work related to the corrosion. However, before an agreement could be finalized, on April 2, 2001 (the "Petition Date"), the Debtors, including W. R. Grace & Co-Conn., filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").   Due to the bankruptcy filings, Grace was unable to consummate the settlement at that time.

6.    On March 26, 2003, Claimant filed a timely proof of claim, Claim No. 6356, (the "BP Claim"), against the Debtors asserting an unsecured, non-priority claim for $4,230,442.  The BP Claim alleged that Grace was liable to Claimant for costs incurred remedying the corrosion at the Facility allegedly caused by the Fireproofing Product.  The BP Claim included costs related to removing the Fireproofing Product, remedying corrosion, and reinstalling new fireproofing material.

### The Agreement

7.    In 2006, settlement discussions recommenced.  Grace and Claimant have now agreed to settle all claims relating to the installation of Fireproofing Product at the Facility.  To that end, Grace and Claimant negotiated the Stipulation, which provides for the resolution and

3

allowance of Claim No. 6356 as an unsecured, pre-petition, non-priority claim in the amount of $3,900,000. However, as discussed below, Grace's insurers have agreed to pay the vast majority of the BP Claim. Thus, the ultimate result is that Claimant will receive a prepetition non-priority unsecured claim for $211,246.10.

8.      The BP Claim is only one of three claims outstanding related to alleged corrosion caused by the Fireproofing Product. All three claims are covered by the Applicable Policy. The Applicable Policy covers product liability, excluding asbestos related claims, and has a remaining deductible of $226,878. Since the Applicable Policy only covers non-asbestos product liability claims, payments made under the Applicable Policy do not reduce the assets available to creditors as a whole.

9.      The three outstanding product liability claims related to the Fireproofing Product and covered under the Applicable Policy are: (a) the BP Claim discussed herein; (b) Claim No. 585 filed by First Chemical Texas for $159,096; and (c) Claim No. 3344 filed by Akzo Nobel Surface Chemistry for $129,500 (the "Fireproofing Claims"). Thus, the total amount of the Fireproofing Claims, after effectuating the BP Stipulation, is $4,188,596.

10.      Grace submitted the Stipulation to CCC for approval under the Applicable Policy. To that end, Grace and CCC have reached an agreement where CCC has agreed to pay all three claims subject to the claimants submitting information verifying remediation costs and damages. The agreement with CCC provides that the remaining deductible of $226,878 will be split pro rata among the Fireproofing Claims. The BP Claim, at $3,900,000, constitutes 93.1% of the $4,188,596 in Fireproofing Claims outstanding, and is therefore allocated $211,246.10 of the remaining deductible (93.1% of 226,878).

4

11.    To date, CCC has verified the remediation costs associated with the BP Claim and agreed, on July 2, 2007, to pay $3,688,753.90 on the BP Claim.  This represents the full $3,900,000 allowed claim outlined herein less $211,246.10, the portion of the remaining deductible allocable to the BP Claim.  CCC's agreement to pay is subject to Bankruptcy Court approval of: 1) a settlement agreement between Grace and CCC regarding CCC's remaining coverage obligations (the "CCC Settlement Agreement")[3]; and 2) the Stipulation.  Claimant has agreed, and the Stipulation requires, the Claimant to file an amended claim within 30 days of receipt of the funds from CCC reflecting a dollar for dollar reduction in the BP Claim for amounts received from CCC related to the Settled Matters, defined below.  Thus, Claimant will ultimately have a non-priority unsecured claim of $211,246.10 against the Debtors.

12.    Under the Stipulation, all other amounts outlined in or related to Claim No. 6356 will be disallowed and expunged and Claimant will be forever barred from asserting any additional pre-petition or post-petition claims against the CCC and the Debtors including all past, present and future costs of investigation, repair or remediation at the Facility relating to the Fireproofing Product and any damages alleged to have been caused thereby including, but not limited to, those matters contained in the BP Claim (the "Settled Matters").  Claimant further agrees to defend, indemnify and hold harmless CCC and the Debtors against any and all claims by any party at any time solely with respect to Claimant's investigation, repair or remediation at the Facility and any deficiency or failure of such investigation, repair or remediation to address

---

[3]    The Debtors are seeking bankruptcy court approval of the CCC Settlement Agreement through their *Motion for an Order Approving a Settlement Agreement with Continental Casualty Company* filed within a reasonable time hereafter.

91100-001\DOCS_DE:130171.1

and correct the corrosion at the Facility, including, but not limited to, such claims by any present or future owner, lessee or other occupant of the Facility or any portion thereof.

13.    If the Bankruptcy Court does not approve the Stipulation or the CCC Settlement Agreement, this Stipulation is rendered null and void. In the event that this Stipulation becomes null and void for any reason, then the preceding paragraphs do not apply, and the Claim shall be deemed fully reinstated, subject, however, to the Debtors' defenses, counterclaims and offsets, if any, and credits for payments Claimant has received, if any. However, neither the Stipulation nor its nullification shall create a right that does not presently exist for Claimant or any other party to file additional claims with respect to these matters, nor waive any defense that the Debtors may have against such claims.

14.    As discussed below, the Debtors believe that the Stipulation is in the best interests of their estates.

**Relief Requested**

15.    By this Motion, the Debtors seek authority, pursuant to Bankruptcy Rule 9019(a), to enter into the Stipulation attached hereto as Exhibit A, thereby allowing Claim No. 6356 and settling and resolving all issues pertaining to such claim.

**Basis for Relief**

16.    Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed.R.Bankr.P. 9019(a). Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed settlement is in the best interests of the debtor's estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination,

6

courts assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. *See Martin*, 91 F.3d at 393.

17.     The standard by which courts evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*; *see also Depositor v. Mary M. Holloway Found.*, 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order approving a compromise and settlement of claims against the estate where it was "unlikely" that the debtor would succeed on the claim, litigation of the claims would involve considerable expense, and the claimant would withdraw all claims upon approval of the settlement). Settlements should be rejected only if they fall "below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (*citing Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

18.     The standards set forth above have been met in this case. The Stipulation will allow the Debtors to resolve the disputes with Claimant that currently exist or may arise in the future with respect to the remediation at the Facility, while avoiding litigation expenses. Because disposition of the claim through contested matters would result in increased expenditures, both in terms of human and financial resources, the savings to the Debtors' estates resulting from this resolution inures to the benefit of all of the Debtors' creditors and, therefore, is in the best interest of the Debtors and their estates. Additionally, Claimant is an important customer of the Debtors and maintaining an amicable relationship is crucial to maintaining the

7

business relationship.    The Stipulation resolves the BP Claim without unnecessary contentiousness that could erode the Claimant's goodwill.

19.    The settlement amount of $3,900,000 is reasonable under the circumstances.  It accurately tracks the costs incurred by Claimant in remediating the corrosion at the Facility. Additionally, it has been evaluated and approved by CCC, the Debtors' insurer and the party that will ultimately bear the majority of the costs associated with the Stipulation.    Further, as discussed above, the ultimate amount of the BP Claim will be reduced to $211,246.10 after CCC has remitted payment under the Applicable Policy pursuant to the CCC Settlement Agreement. Since the Applicable Policy only covers products liability claims that meet certain criteria, paying the BP Claim out of the insurance proceeds does not reduce the assets available to satisfy asbestos related claims or other general unsecured claims and does reduce the total outstanding claims against the estates.

20.    For all of the foregoing reasons, the Debtors submit that the Stipulation is fair and reasonable and in the best interest of the Debtors, their creditors and their estates, and thus the Debtors should be authorized to enter into the Stipulation.

## NOTICE

21.    Notice of this Motion has been given to: (i) the Office of the United States Trustee, (ii) counsel to the debtor-in-possession lenders, (iii) counsel to the official committees appointed by the United States Trustee and counsel to the Future Claimants' Representative, (iv) counsel to Claimant and CAN; and (v) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

8

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached as Exhibit B, approving the terms of the Stipulation and granting such other and further relief as the Court may deem just and proper.

Dated: August 20, 2007

KIRKLAND & ELLIS LLP
David M. Bernick
Janet S. Baer
Samuel Gross
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

and

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  302 652-4100
Facsimile:   302-652-4400

Co-Counsel for the Debtors and Debtors in Possession

9

91100-001\DOCS_DE:130171.1