IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | **Objection Deadline: September 7, 2007** |
| | ) | **Hearing Date: September 24, 2007 at 2:00 p.m.** |

## MOTION TO AMEND THE OCP ORDERS TO: (I) INCREASE THE TOTAL EXPENDITURE CAP, AND (II) PERMIT APPROPRIATE OCP'S TO SEEK COMPENSATION FOR FEES AND EXPENSES IN EXCESS OF THE MONTHLY CAP

The Debtors hereby move the Court for entry of an order further amending the OCP

Orders[2] to: (i) increase the Total Expenditure Cap (as defined below) to $1,200,000, and (ii) to

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] The OCP Orders include that certain Order Pursuant to 11 U.S.C. §§ 1107(a) and 1108 Authorizing the Debtors to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Business dated May 3, 2001 (the "Original Order") (Docket No. 197) which was further amended on December 10, 2002 (Docket No. 3126) and July 24, 2006 (Docket No. 12855).

permit certain OCPs (as defined below) to exceed the $50,000 monthly OCP cap from time to time as appropriate and seek compensation for fees and expenses in excess thereof. In support of this Motion, the Debtors respectfully state as follows:

### Jurisdiction

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this motion is proper under 28 U.S.C. § 1408.

The statutory predicate for this Motion is section 363(b) of the Bankruptcy Code and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure.

### Background

1. On May 3, 2001, this Court entered the Original Order authorizing the Debtors to continue to utilize certain professionals, including attorneys, accountants, actuaries and consultants, in their day-to-day business operations (collectively, the "OCPs"). The Original Order authorized the Debtors to pay OCPs up to $50,000 per month (the "Monthly Cap") but stated "[t]he Debtors cannot pay more than [the Monthly Cap] for services rendered without an order of this Court authorizing such higher amount." Original Order at 2.

2. The Original Order also authorized the Debtors to pay OCPs up to $300,000 in total per professional during these Chapter 11 Cases (the "Total Expenditure Cap"). The Total Expenditure Cap was increased to $600,000 by the Court's December 10, 2002 Order and to $800,000 by the Court's July 24, 2006 Order. Contemplating that a further increase in the Total Expenditure Cap may become necessary, both orders provided that they "shall be without

prejudice to the Debtors' rights to seek additional increases to the amounts they are authorized to pay Ordinary Course Professionals in the future . . ."

### Relief Requested

3.      The Debtors respectfully request entry of an order (i) increasing the Total Expenditure Cap from $800,000 to $1,200,000, and (ii) permitting OCPs when appropriate to seek compensation for fees and expenses which exceed the Monthly Cap (the "Excess OCP Fees") in accordance with the Court's interim compensation order requirements,[3] including review by the committees and audit by the fee auditor appointed in these Chapter 11 Cases, and other applicable rules and orders of the Court.

### Basis for Relief

4.      The uninterrupted services of the OCPs are vital to the Debtors' continuing operations and their ultimate ability to reorganize. The operation of the Debtors' businesses and these Chapter 11 Cases would be hindered if OCPs were either (a) unable to be paid for their services, or (b) required to submit to the Court formal applications for employment as professionals and subsequent monthly and quarterly fee applications for all fees and expenses billed. Requiring every OCP to file retention pleadings and follow the usual fee application process could flood the Clerk's office, the Court, the U.S. Trustee and the fee examiner with unnecessary fee applications from professionals who bill extremely modest amounts. Moreover,

---

[3] Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Professionals and Official Committee Members (Docket No. 198) and Amended Administrative Order under 11 U.S.C. §§ 105(a) and 331 Establishing Revised Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members (Docket No. 1949).

the unnecessary cost associated with these retention and fee applications would ultimately be borne by the Debtors' estates.

**Total Expenditure Cap**

5.     The Debtors hereby request an increase of the Total Expenditure Cap to $1,200,000. As reflected in the Debtors' Statement of Amounts Paid to Ordinary Course Professionals from April 1, 2007 through June 30, 2007 (Docket No. 16255), certain OCPs' fees and expenses since the start of the Chapter 11 Cases are nearing the current Total Expenditure Cap.[4]

6.     An increase of the Total Expenditure Cap is necessary essentially due to the length of these Chapter 11 Cases. The need for the increase is neither the result of increases in the OCP's monthly fees nor generally of any OCP's increased activity. As the Court is well aware, the Debtors have been in Chapter 11 and operating under the current Total Expenditure Cap for over six years. Applied over that extended period of time, the payment of $800,000 in fees to an Ordinary Course Professional amounts to an average monthly expenditure of approximately $10,000. An average per month this low was never contemplated, as is clear from the fact that the Monthly Cap was set at $50,000 per month. However, by the sheer unexpected length of these Chapter 11 Cases, this has turned out to be the case. As a result, there is a need once again to increase the Total Expenditure Cap to preserve the Ordinary Course Professional character of numerous professionals billing very modest amounts to the Debtors.

---

[4]  The Court previously authorized Forman Perry Watkins Krutz & Tardy LLP ("Forman Perry") to exceed the Monthly Cap and the Total Expenditure Cap and seek compensation for fees and expenses in excess thereof. Forman Perry has since exceeded the Total Expenditure Cap and now files fee applications for all fees and expenses.

7. While the Debtors have made significant progress in resolving asbestos PD claims and non-asbestos claims, the estimation trial on asbestos PI claims has been delayed and will not commence until January 2008. It is thereafter scheduled to take place over 18 trial days between January 14, 2008 and April 16, 2008. With an increase of $400,000, the Debtors should be able to prevent the need for any further increases in the Total Expenditure Cap for the time period between the filing of this Motion and the conclusion of the PI estimation proceedings and hopefully the Chapter 11 Cases.

8. Increasing the Total Expenditure Cap will not eliminate the oversight function of the Court and other parties-in-interest. Pursuant to the Original Order, the Debtors will still be required to file quarterly statements disclosing how much they pay each OCP.

**Excess OCP Fees**

9. The OCP Orders also require court approval for fees and expenses of OCPs which exceed the $50,000 Monthly Cap. By this Motion, the Debtors also request approval for applicable OCPs to seek compensation for their Excess OCP Fees by simply filing fee applications without the need to first seek permission of the Court to do so. This Motion does not seek to increase the Monthly Cap. It simply seeks to establish a more simplified procedure for OCPs when the Monthly Cap is exceeded. The Debtors will continue to pay each OCP a maximum of $50,000 per month until the Court approves any fee application for Excess OCP Fees.

10. The Debtors previously filed similar and separate motions for certain OCPs, including Forman Perry Watkins Krutz & Tardy LLP, Perkins Coie LLP and Socha, Perczak, Setter & Anderson, P.C., who exceeded or anticipated exceeding the Monthly Cap. The

Court entered orders permitting each of these OCPs to seek compensation for their Excess OCP Fees and these OCPs now file fee applications, as appropriate, which are subject to the applicable rules and orders of the Court, for those months in which they exceed the Monthly Cap.

11.     At this time, instead of continuing to file separate motions as described above, the Debtors request blanket authority for applicable OCPs to seek compensation for their Excess OCP Fees by filing fee applications. The Debtors believe that such authority was contemplated by the OCP Orders and will save the Debtors, their estates and all parties-in-interest time and expense. Further, permitting applicable OCPs to file fee applications for Excess OCP Fees will not eliminate the oversight function of the Court and other parties-in-interest. Such fee applications will be subject to the Court's interim compensation orders which provide the Court, the fee examiner and other parties-in-interest an opportunity to object and be heard on the reasonableness of such fees and expenses.

12.     Numerous courts, including courts in this district, have approved ordinary course professional retention and compensation procedures which allow professionals to seek compensation in excess of a compensation cap by filing fee applications. See, e.g., In re Mortgage Lenders Network USA, Inc., Case No. 07-10146 (PJW) (Bankr. D. Del. March 1, 2007; Docket No. 189); In re Global Home Prods. LLC, et al., Case No. 06-10340 (Bankr. D. Del. May 5, 2006; Docket No. 193); In re Pliant Corp., Case No. 06-10001 (Bankr. D. Del. February 2, 2006; Docket No. 182).

## Reservation of Rights

13.     The Debtors reserve the right to request authority to increase the amounts that they are authorized to pay OCPs in the future if the need arises.

## Notice

14.     Notice of this Motion has been given to: (i) the Office of the United States Trustee, (ii) the debtor-in-possession lenders, (iii) counsel to the official committees appointed by the United States Trustee and the Future Claimants' Representative, and (iv) all those parties that requested services and notice of papers in accordance with Fed R. Bankr. P. 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

15.     No prior application for the relief requested herein has been made to this or any other Court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter an order (1) increasing the Total Expenditure Cap to $1,200,000, and (2) permitting OCPs in appropriate circumstances who exceed the Monthly Cap to seek compensation for fees and expenses in excess thereof by filing fee applications, and (3) granting such other and further relief as the Court deems just and proper.

Dated: August 20, 2007

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Andrea L. Johnson
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

and

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB LLP

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession