APR. 2.2007   7:01PM   ON TIME DELIVERY                    NO.375   P.2/3

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF  Minnesota

In re W.R. GRACE & CO., et al.

V.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 01-1139

Pending in United States
Bankruptcy Court for the
District of Delaware

.TO: Rust Consulting, Inc.
625 Marquette Ave., Suite 800
Minneapolis, MN 55402

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION<br>Robins, Caplan, Miller & Ciresi LLP, 2800 LaSalle Plaza, 800 LaSalle Avenue,<br>Minneapolis, MN 55402.  To be recorded by stenographic means, as well as<br>audio/videotape.  For 30(b)(6) deposition topics, see Attachment A. | DATE AND TIME<br>04/27/2007 9:00 a.m.CDT |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See Attachment A.

| PLACE<br>Robins, Caplan, Miller & Ciresi LLP, 2800 LaSalle Plaza, 800 LaSalle Avenue,<br>Minneapolis, MN 55402. | DATE AND TIME<br>04/13/2007 5:00 p.m.CDT |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>3-29-07 |
|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

AO88 (Rev. 12/06) Subpoena in a Civil Case

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
John Ansbro
Orrick, Herrington & Sutcliffe LLP
666 5th Avenue
New York, New York 10103
(212) 506-5000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

¹ If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

APR. 2.2007(MON) 7:01PM ON TIME DELIVERY                    NO.375   P.3/3

## PROOF OF SERVICE

| | DATE | | PLACE | |
|---|---|---|---|---|
| SERVED | 3/30/07 1:30 PM | | | CORPORATE SERVICE COMPANY 380 JACKSON STREET ST PAUL, MN 55101 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| VERA ROSALEZ | CUSTOMER SERVICE REP |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| DEAN LILLEMOE | PROCESS SERVER |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on   4/2/07
                   DATE

*Dean Lillemoe*
SIGNATURE OF SERVER

CHARLES C. SMITH
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan 31 2010

1050 W 94TH STREET
ADDRESS OF SERVER

BLOOMINGTON, MN  55420

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(C) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(D) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

American LegalNet, Inc.
www.FormsWorkflow.com

## ATTACHMENT A

## DEFINITIONS

The following are specially defined terms for which the meanings specified below shall apply:

1.    The term "ALL" shall mean "ANY" and visa versa, and both terms shall be construed inclusively to bring information within the scope of a specific request.

2.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

3.    "ASBESTOS" as used herein shall include all ASBESTOS or asbestiform minerals of either the amphibole or serpentine group, and shall include chrysotile, amosite, crocidolite, tremolite, anthophyllite and actinolite.

4.    An "ASBESTOS CLAIMANT" is anyone who asserts or has asserted an ASBESTOS TORT CLAIM against GRACE, its parent or subsidiary corporations, or any of its predecessors or successors in interest.

5.    The words "ASBESTOS-RELATED DISEASE" shall include, but not be limited to: Asbestosis, mesothelioma, pleural plaques, pleural thickening, pleural effusion, lung cancer, laryngeal cancer, gastro-intestinal cancers, or any other condition associated with, or allegedly associated with, exposure to ASBESTOS or ASBESTOS-CONTAINING PRODUCTS.

6.    "ASBESTOS TORT CLAIM" means any lawsuit, workers' compensation claim, civil action, legal notice of claim, or proof of claim asserted by an individual (or an individual's personal representative) against GRACE alleging bodily injuries or wrongful

death allegedly caused by exposure to ASBESTOS or ASBESTOS-CONTAINING PRODUCTS, including without limitation any claim or demand ever asserted against GRACE regardless of how, or whether, such claim was resolved (by settlement, dismissal, or otherwise) and regardless of whether such claim resulted in the filing of a civil lawsuit by the claimant.

7.    "ATTACHMENT" refers to any DOCUMENT accompanying or supplementing a PERSONAL INJURY QUESTIONNAIRE RESPONSE or a POC RESPONSE, regardless of whether such DOCUMENT was received simultaneously with the PERSONAL INJURY QUESTIONNAIRE RESPONSE or POC RESPONSE.

8.    "CMS" refers to GRACE'S Case Management System database.

9.    "COMMUNICATION" or "COMMUNICATIONS" include, without limitation, any oral communication, whether transmitted in meetings, by telephone, telegraph, telex, cable, tape recordings, voice-mail or otherwise, and all written communications, including communications by e-mail or other internet based communications systems.

10.    "CORRESPONDENCE" means any DOCUMENT that either constitutes a COMMUNICATION between two or more entities or persons, or that records, memorializes, or reflects said COMMUNICATION, whether made directly to the author of the DOCUMENT or otherwise.

11.    "DOCUMENT" is defined as broadly as permitted under Rule 34 of the Federal Rules of Civil Procedure, and includes all materials and things, in whatever form recorded or maintained, subject to production under that Rule, including all drafts, originals and non-identical copies of writings, recordings, printed, typed or otherwise

2

recorded matter, including copies upon which notations or additional writings have been made, however produced or reproduced (including without limitation, by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording or other form of data compilation) of every kind and description that are in RUST'S actual or constructive possession, custody or control, including but not limited to drawings, graphs, charts, tables, video tapes, audio tapes, photographs, slips, cover notes, binders, treaties, agreements, wordings, books, pamphlets, bulletins, periodicals, letters, memoranda, telegrams, e-mails, voice-mails, reports, records, studies, handwritten notes, working papers, indices, tapes, computer disks or other electronic storage media, data sheets, computer generated documents, data processing cards, or any other tangible things which constitute or contain matters within the scope of Rule 34 of the Federal Rules of Civil Procedure.

12.    "GRACE" means the currently existing W.R. Grace & Co. and all its parents, subsidiaries, affiliates, or divisions and its merged or acquired predecessors-in-interest, whether or not Debtors and whether or not successorship is admitted; its and their present or former officers, representatives, agents, servants, counsel, employees, investigators, consultants, and all other persons acting on its or their behalf. Subsidiaries or divisions of GRACE include, but are not limited to, any entity listed as an affiliate on any GRACE Form 10-K.

13.    "PERSONAL INJURY QUESTIONNAIRES" refers to the Asbestos Personal Injury Questionnaires and any related materials sent to ASBESTOS CLAIMANTS.

14.    "PERSONAL INJURY QUESTIONNAIRE RESPONSES" are those

3

PERSONAL INJURY QUESTIONNAIRES that were returned by or on behalf of ASBESTOS CLAIMANTS to RUST.

15.     "PETITION DATE" refers to April 2, 2001.

16.     "PRE-PETITION" refers to the time period before and including April 1, 2001.

17.     "POC" refers to the Proof of Claim form and related materials sent to ASBESTOS CLAIMANTS.

18.     "POC RESPONSES" are those POCs that were returned by or on behalf of ASBESTOS CLAIMANTS to RUST.

19.     "RELATE TO" or "RELATING TO," and/or "REFER TO" or "REFERRING TO," and/or "PERTAIN TO" or "PERTAINING TO" mean recording, summarizing, digesting, referring to, commenting upon, describing, reporting, listing, analyzing, studying or otherwise discussing or mentioning in any way a subject matter identified herein.

20.     "RUST" means the currently existing Rust Consulting, Inc. and all its parents, subsidiaries, affiliates, or divisions and its merged or acquired predecessors-in-interest, whether or not successorship is admitted; its and their present or former officers, representatives, employees, agents, servants, counsel, investigators, consultants, and all other persons acting on its or their behalf.

21.     The "RUST DATABASE" is the navigable electronic repository in which RUST EMPLOYEES have entered and stored information contained in PERSONAL INJURY QUESTIONNAIRE RESPONSES.

22.     "RUST EMPLOYEE" refers to anyone working in any capacity for, with or

4

on behalf of RUST, including without limitation anyone on RUST'S payroll and all independent contractors and sub-contractors hired by RUST.

## INSTRUCTIONS

1.     All responsive documents that are in your possession, custody or control, or in the possession, custody or control of your attorneys, agents or other representatives, must be produced, except that you need not produce a document that is an identical copy of another document you are producing.  Documents are not identical for this purpose if they differ in any respect, including by the addition of handwritten notations, or if one document is a draft of the other.

2.     Documents shall be produced either as they are maintained in the ordinary course of business or else organized and labeled by the request to which they respond.

3.     If you refuse to produce any documents on the ground of privilege, including work product doctrine, you must furnish a list identifying each document for which a privilege is claimed, together with the following information and sufficient details so as to permit the Court to adjudicate the validity of the claim of privilege: date, sender, recipient(s), type (e.g., letter, memorandum, fax, chart, photograph, etc.), subject matter of the document, the basis on which a privilege is claimed, and the paragraph or paragraphs of this request to which the document responds.

4.     If you claim privilege as to only one portion of a document, you must redact that portion and produce the remainder of the document.  All redactions must be clearly identifiable from the face of the document.  All redactions must be included in a detailed log containing the information described in Instruction No. 3, above.

5

## SUBJECT MATTERS OF TESTIMONY

1.    The work performed by RUST RELATING TO the PERSONAL INJURY QUESTIONNAIRES and POCs.

2.    RUST'S analysis of PERSONAL INJURY QUESTIONNAIRE RESPONSES and POC RESPONSES.

3.    RUST'S claims processing procedures used in connection with PERSONAL INJURY QUESTIONNAIRE RESPONSES and POC RESPONSES.

4.    Protocols, policies, coding criteria, guidelines, or instructions, whether written, spoken, formal, or informal, utilized by RUST in connection with PERSONAL INJURY QUESTIONNAIRE RESPONSES and POC RESPONSES.

5.    ALL COMMUNICATIONS between RUST and ASBESTOS CLAIMANTS and/or their representatives, including without limitation, RELATING TO GRACE, the PERSONAL INJURY QUESTIONNAIRES and/or the POCs.

6.    The criteria used by RUST for classifying ASBESTOS-RELATED DISEASES from the PERSONAL INJURY QUESTIONNAIRE RESPONSES and/or POC RESPONSES, including without limitation, the procedures followed where conflicting ASBESTOS-RELATED DISEASE information (if any) was present in either the PERSONAL INJURY QUESTIONNAIRE RESPONSES, the POC RESPONSES and/or the ATTACHMENTS thereto.

7.    The extent to which, after ASBESTOS TORT CLAIMS were initially entered into the RUST DATABASE, RUST removed, changed or revised information regarding ASBESTOS TORT CLAIMS, and the reason(s) for doing so.

6

8.      The extent to which information from ATTACHMENTS to PERSONAL
INJURY QUESTIONNAIRE RESPONSES and POC RESPONSES was (i) entered into
the RUST DATABASE, and (ii) taken into account when inputting data into the RUST
DATABASE.

9.      The criteria used by RUST for determining what information contained in
the POCs, PERSONAL INJURY QUESTIONNAIRE RESPONSES, and
ATTACHMENTS thereto was not included in the RUST DATABASE.

10.     Bases for the data contained in the RUST DATABASE.

11.     The total number of (i) PERSONAL INJURY QUESTIONNAIRE
RESPONSES received by RUST, (ii) POC RESPONSES received by RUST; (iii)
ASBESTOS PERSONAL INJURY CLAIMS now reflected in the RUST DATABASE,
and (iv) claimants for whom two or more PERSONAL INJURY QUESTIONNAIRE
RESPONSES and/or POC RESPONSES were received by RUST and/or entered into the
RUST DATABASE.

12.     Bases for the identification and selection of individuals and/or law firms to
which PERSONAL INJURY QUESTIONNAIRES and POCs were sent.

13.     Procedures relating to PERSONAL INJURY QUESTIONNAIRE
RESPONSES and POC RESPONSES received by RUST from claimants who may not
have a current ASBESTOS TORT CLAIM.

14.     The tracking or cross-referencing of ASBESTOS CLAIMANT
information between the RUST DATABASE and CMS.

15.     Procedures relating to the mailing of PERSONAL INJURY
QUESTIONNAIRES and POCs to ASBESTOS CLAIMANTS.

7

16.    Staffing of RUST EMPLOYEES who processed PERSONAL INJURY QUESTIONNAIRE RESPONSES and POC RESPONSES, including, without limitation (i) the qualifications of RUST EMPLOYEES who processed PERSONAL INJURY QUESTIONNAIRE RESPONSES and POC RESPONSES, and (ii) the number of RUST EMPLOYEES who processed PERSONAL INJURY QUESTIONNAIRE RESPONSES and POC RESPONSES.

17.    Changes in the RUST DATABASE information contained in the iterations of the RUST DATABASE that were produced to the parties prior to April 13, 2007.

## DOCUMENTS REQUESTED

1.      ALL DOCUMENTS RELATED TO the creation and use of the RUST DATABASE and/or the processing of PERSONAL INJURY QUESTIONNAIRE RESPONSES and POC RESPONSES.

2.      ALL COMMUNICATIONS between and among GRACE and RUST and/or their representatives regarding the PERSONAL INJURY QUESTIONNAIRES, PERSONAL INJURY QUESTIONNAIRE RESPONSES, POCs and/or POC RESPONSES.

3.      ANY instructions, protocols, mandates or the like regarding the PERSONAL INJURY QUESTIONNAIRES and/or POCs.

4.      ANY engagement letter, contract, or other DOCUMENT describing RUST'S duties and objectives with regard to the PERSONAL INJURY QUESTIONNAIRE RESPONSES and/or POC RESPONSES.

5.      ALL COMMUNICATIONS between RUST and ASBESTOS CLAIMANTS and/or their representatives.

6.      ALL DOCUMENTS RELATING TO the identification and selection of individuals and/or law firms to which PERSONAL INJURY QUESTIONNAIRES and POCs were sent.

9