# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

Objection Deadline (Requested): September 10, 2007 at 4:00 p.m.
Hearing Date (Requested): September 24, 2007, at 2:00 p.m.

## MOTION FOR AN ORDER APPROVING A STIPULATION
## WITH CONTINENTAL CASUALTY COMPANY

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached as Exhibit A, approving a stipulation (the "CCC Settlement Agreement") by and between the Debtors and Continental Casualty Company ("CCC"), a copy of which is attached as Exhibit B. In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this Motion is proper under 28 U.S.C. § 1408.

2.  The statutory predicates for this Motion are sections 105 and 363(b)(l) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background.

3.  On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4.  From 1996 until at least 1999, W. R. Grace & Co.-Conn. ("Grace") sold formulations of a fireproofing product known as Monokote®, PK 140, PK 150 and Z146 ("Fireproofing Product") for use in projects in the United States and outside of the United States. After Grace's customer Occidental Chemical Corp. ("OxyChem") notified Grace of evidence of corrosion where Fireproofing Product had been installed, Grace concluded that its Fireproofing Product could accelerate corrosion and that it would be prepared to participate in the costs to repair sites on which the Fireproofing Product was used and such accelerated corrosion was found.

5. OxyChem made a claim against Grace in 1997 during the period of Continental Casualty Company ("CCC") Policy Number CCP 1 66800 586 (the "Applicable Policy").[2] The Applicable Policy has a $5,000,000 deductible. In early 2000, Grace asked CCC to fund a $4,773,122 settlement of the OxyChem claim. CCC advised that it had no objection to the settlement and that it would fund it as permitted by the Applicable Policy, subject to a reservation of all of its rights concerning the OxyChem settlement and any other fireproofing claims under the Applicable Policy and all other insurance policies and agreements. Prior to the Petition Date, Grace then reimbursed CCC the full $4,771,122 paid under the OxyChem settlement, as required under the Applicable Policy, leaving a remaining deductible of $228,878.

6. Thereafter, Grace and CCC agreed that CCC would provide coverage for claims, unrelated to asbestos, involving corrosion allegedly caused by Fireproofing Product (the "Fireproofing Claims"). Subsequent to the bankruptcy filing, Grace and CCC negotiated and ultimately reached an agreement outlined in the CCC Settlement Agreement, which determined the exact scope of CCC's obligations under the relevant insurance policies for the Fireproofing Claims.

7. The key elements of the CCC Settlement Agreement are as follows:

    (a)    All damages arising from Fireproofing Claims arise out of a single occurrence which was a known loss prior to April 1, 1998;

    (b)    Because the loss became known during the period of the Applicable Policy, no other CCC policies are applicable and all Fireproofing Claims arising from United States locations will be paid pursuant to the Applicable Policy;

    (c)    No CCC policy provides coverage for Fireproofing Claims arising from locations outside of the United States;

---

[2] The Applicable Policy explicitly excludes asbestos liability. Therefore, any payments under the Applicable Policy do not reduce the amount of insurance available to satisfy asbestos related claims.

91100-001\DOCS_DE:130334.1

(d) All Fireproofing Claims will be subject to a single occurrence limit of $10,000,000; a $5,000,000 deductible applies to this limit and CCC's payment obligations are limited to $5,000,000 plus defense costs.

(e) After Grace reimbursed CCC for the OxyChem settlement in the amount of $4,773,122, the remaining deductible under the Applicable Policy is $226,878.

8. Grace has asked CCC to approve and fund the settlement of three additional Fireproofing Claims, the: (a) Claim Number 6356 of BP Products North America for the agreed amount of $3,900,000 (The "BP Claim", attached as Exhibit B); (b) Claim Number 585 of First Chemical Texas, L.P. for $159,096 (the "First Chemical Claim", attached as Exhibit C); and (c) Claim Number 3344 of Akzo Nobel Surface Chemistry LLC for $129,500 (the "Akzo Claim," attached as Exhibit D).

9. The BP Claim arose from corrosion to steel lath and underlying substrate allegedly caused by the installation of Fireproofing Product in BP's Toledo, Ohio refinery during 1998 and 1999. The First Chemical Claim arose from corrosion to steel lath and underlying substrate allegedly caused by the installation of Fireproofing Product in a First Chemical Texas plant. The Akzo Claim arose from corrosion to steel lath and underlying substrate allegedly caused by the installation of Fireproofing Product at a chemical manufacturing facility in Morris, Illinois during 1998. The BP, First Chemical Texas, and Akzo Claims are the only Fireproofing Claims asserted in Grace's Chapter 11 Cases.

10. The CCC Settlement Agreement provides that CCC will pay all the Fireproofing Claims less the remaining $226,878 deductible. To date, CCC has approved the payment of the BP Claim subject to bankruptcy court approval of a stipulation allowing the BP Claim for $3.9 million.[3]

---

[3] A motion to approve the BP Claim has been filed by the Debtors substantially contemporaneously herewith at Docket No. 16598.

4

91100-001\DOCS_DE:130334.1

Additionally, CCC has agreed to approve the payment of the Akzo Nobel and First Chemical Claim upon the submission of commercially reasonable documentation verifying the respective remediation costs and bankruptcy court approval of stipulations allowing the respective claims.

11. The $226,878 deductible will be apportioned pro rata among the Fireproofing Claims according to the respective claim size. The total amount owed under the Fireproofing Claims is $4,188,596. Therefore, pursuant to the CCC Settlement Agreement, the BP Claim is allocated 93.1% (i.e. $211,246.10) of the $226,878 deductible.[4] The First Chemical Claim is allocated 3.8% (i.e. $8,616.83) of the $226,878 deductible.[5] Finally, the Akzo Claim is allocated 3.1% (i.e. $7,015.07) of the $226,878 deductible.[6]

12. Thus, subject to approval by this Court of the CCC Settlement Agreement and a proposed stipulation resolving the BP Claim for $3,900,000, CCC will pay $3,688,753.90 ($3,900,000 less the pro rata portion of the remaining deductible of $211,246.10) on the BP Claim. Additionally, subject to the submission of documentation to satisfy, in CCC's commercially reasonable judgment, remediation costs incurred by Akzo Nobel and First Chemical Texas CCC will then pay: (a) $150,479.17 ($159,096 less the pro rata portion of the remaining deductible of $8,616.83) for the First Chemical Texas claim; and (b) $122,484.93 ($129,500 less the pro rata portion of the remaining deductible of $7,015.07) for the Akzo Nobel Claim.

---

[4] $3,900,000, the BP Claim, divided by $4,188,596, the total amount of the Fireproofing Claims, multiplied by the remaining deductible of $226,878 equals $211,246.

[5] $159,096, the First Chemical Claim, divided by $4,188,596, the total amount of the Fireproofing Claims, multiplied by the remaining deductible of $226,878 equals $8,616.83.

[6] $129,500, the Akzo Claim, divided by $4,188,596, the total amount of the Fireproofing Claims, multiplied by the remaining deductible of $226,878 equals $7,015.07.

91100-001\DOCS_DE:130334.1

13. After payment of the three Fireproofing Claims outlined herein, the remaining maximum coverage obligations of CCC shall be reduced to $1,038,282. ($5,000,000 less the amount paid on account of the three Fireproofing Claims.) The Bar Date for filing Fireproofing Claims against Grace was March 31, 2003. Thus, absent a new creditor obtaining permission to file a late proof of claim for Fireproofing Claims despite the Bar Date, and except for the obligations created by the CCC Settlement Agreement, CCC should have no further obligations to Grace or to any holders of Claims against Grace in respect of insurance coverage for the defense or indemnification of Fireproofing Claims. The Debtors will not consent to any request by a new creditor to file a late proof of claim for Fireproofing Claims and CCC reserves all of its rights and defenses with respect to any such request.

14. In the event any new Fireproofing Claims are permitted to be filed against Grace or are otherwise submitted to Grace, Grace shall submit such claims to CCC for handling, including adjustment, compromise, settlement, litigation and/or payment but CCC's responsibilities with respect to such claim will terminate when it has paid the $1,038,282 balance of its total $5,000,000 payment obligation. CCC reserves all of its rights and defenses with respect to any claim so tendered.

15. Except as expressly provided herein, the parties shall be subject to all of their rights and obligations under the Applicable Policy and the CCC Settlement Agreement. Nothing contained herein shall alter, modify, impair, enlarge, reduce or affect in any way the parties' rights and duties under the Applicable Policy and the CCC Settlement Agreement.

### Relief Requested

16. The Debtors seek an order approving the CCC Settlement Agreement, which has been executed by the parties, and, by its terms, will become effective upon the approval of this Court.

## Basis for Relief

17.     This Court has statutory authority to authorize and approve the Debtors' entry into the CCC Settlement Agreement pursuant to sections 105 and 363(b)(l) of the Bankruptcy Code. A settlement of claims and causes of action by a debtor in possession constitutes a use of property of the estate. *See Northview Motors. Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See id.*

18.     Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed.R.Bankr.P. 9019(a). Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed settlement is in the best interests of the debtor's estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination, courts assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. *See Martin*, 91 F.3d at 393.

19.     The standard by which courts evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*; *see also Depositor v. Mary M. Holloway Found.*, 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order approving a compromise and settlement of claims against the estate where it was "unlikely" that the debtor would succeed on the claim, litigation of the claims would involve considerable expense, and the claimant would withdraw

7

all claims upon approval of the settlement). Settlements should only be rejected if they fall "below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W. T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The standards set forth above are plainly met in this case.

20. The CCC Settlement Agreement is in the best interests of the Debtors, their estates, and their creditors because it resolves a coverage dispute while avoiding litigation expenses. If the CCC Settlement Agreement is not approved, the Debtors would need to pursue their claims against CCC under the Applicable Policy. This process would subject the Debtors to risk concerning the ultimate amount of recovery, and the Debtors believe their recovery is unlikely to be greater than the $3,961,718 pursuant to the CCC Settlement Agreement. Further, pursuing claims against CCC would involve significant litigation costs that would likely outweigh any potential benefits.

21. For all of the foregoing reasons, the Debtors submit that the CCC Settlement Agreement is fair and reasonable and in the best interest of the Debtors, their creditors and their estates, and thus the Debtors should be authorized to enter into the Settlement.

## Notice

22. Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee and the Future Claimants Representative, (iv) counsel to CCC and BP Products North America, and (v) those parties that requested papers under Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the CCC Settlement Agreement, and granting such other and further relief as the Court deems just and proper.

Dated: August 23, 2007

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Samuel Gross
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession

9