IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| W. R. GRACE & CO., *et al.*, | : | Case No. 01-01139 (JKF) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | Proposed Objection Deadline: September 10, 2007 at 4:00 p.m., |
| | : | Proposed Hearing Date: September 24, 2007 at 2:00 p.m. |

**MOTION OF THE UNITED STATES TRUSTEE FOR APPOINTMENT OF
AN EXAMINER PURSUANT TO 11 U.S.C. § 1104(c) RELATED TO THE
CONDUCT OF L. TERSIGNI CONSULTING, P.C.**

Kelly Beaudin Stapleton, United States Trustee for this District ("UST"), by and through her counsel, hereby files this Motion for entry of an order, pursuant to 11 U.S.C. § 1104 (c), directing the appointment of an examiner to investigate the conduct of L. Tersigni Consulting, P.C, and determine whether the Debtors or the estate have any causes of actions against L. Tersigni Consulting, P.C. as a result of that conduct (the "Motion"), and in support thereof, respectfully represents as follows:

**Introduction**

1. Pursuant to 28 U.S.C. § 586, the UST is charged with the administrative oversight of cases commenced pursuant to Title 11 of the United States Bankruptcy Code. This duty is part of the UST's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

1

2.  The UST has standing to be heard regarding this matter. 11 U.S.C. § 307.

3.  On April 2, 2001 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing these chapter 11 cases (collectively, the "Chapter 11 Cases"). On April 13, 2001, the UST appointed the Official Committee of Asbestos Personal Injury Claimants (the "ACC").

4.  On June 13, 2001, this Court approved the retention of L. Tersigni Consulting, P.C. ("LTC") as financial advisor to the ACC. LTC has acted in that capacity since that time.

5.  Although the Debtors currently have a disclosure statement and plan on file with the Court[1], confirmation of a plan is not anticipated to occur for some time. On July 26, 2007, the Court terminated Debtors' exclusive period to file a plan and solicit votes thereon. The trial for estimation of asbestos personal injury claims is scheduled to begin in January 2008 and continue through April 2008. It is the consensus of the parties that confirmation of a plan cannot occur until the estimation proceeding is completed.

**Preliminary Statement**

6.  A preliminary investigation of LTC's billing practices in this case has revealed that LTC improperly billed this estate for time that it did not work. It appears that LTC engaged in a systematic effort to improperly increase its bills in not only this case, but in many other bankruptcy cases in which LTC was employed. While the preliminary investigation uncovered improper billings as it related to certain former employees of LTC, the total scope, extent and effect of LTC's actions has not been determined. As such, the UST asserts that an examiner is needed to investigate LTC's

---

[1] The disclosure statement and plan were originally filed on November 13, 2004 and subsequently amended on January 13, 2005. No confirmation hearing has ever been held on that plan.

conduct and billing practices in this case and to determine what causes of action the Debtors and/or the estate may have against LTC.

7. This issue is of vital importance as it involves allegations of a professional who has violated its fiduciary obligation to the estate and its duty of candor to the court. The appointment of an independent fiduciary to investigate these serious allegations of fraud and dishonesty related to the affairs of the Debtors is both warranted and necessary. The appointment of an examiner is a benefit to all creditors and the estate because it serves to uncover the extent of LTC's conduct and determine, among other things, the causes of action for this estate that exist against LTC.

**Facts**

8. In April 2006, it came to the attention of the Office of the United States Trustee (the "OUST") that Loreto Tersigni, the sole owner and principal of LTC, was allegedly improperly marking up the time charges on LTC's fee applications filed in not only this case, but numerous bankruptcy cases in which LTC was employed. Specifically, it was alleged that prior to filing fee applications with the court, Mr. Tersigni would receive internal time records from employees at LTC who worked on the case. It was also alleged that when preparing LTC's fee applications, Mr. Tersigni would subsequently add on time for services that were not performed by employees of LTC. These actions would have the effect of improperly raising the fees of LTC in their filed fee applications and causing the estates to pay fees to LTC that were not earned.

9. After this information was initially discovered, a preliminary investigation was initiated of LTC and its billing practices. Through this preliminary investigation, it was discovered that the fee applications filed by LTC in the asbestos cases since at least 2002 were improper because time that was not worked was added to those fee applications. Through a sample review of three

professionals at LTC, it was uncovered that the internal invoices for those professionals had time improperly added to them by Mr. Tersigni when the fee applications were filed.

10.     On May 31, 2007, counsel for the ACC sent a letter addressed to Debtors' counsel. The OUST also received a copy of that letter on that date. The letter advised that "fee applications filed in this case by LTC over the past several years may have included improperly and artificially increased hours" and that both the OUST and the United States Attorney's Office had been conducting an investigation related to these actions since April 2006.  The letter further advised of the recent death of Mr. Tersigni, the sole owner of LTC.  Attached as *Exhibit 1* is a copy of that letter.

11.     A complete investigation of these actions by LTC, and more specifically Mr. Tersigni, has not been completed.  While an analysis was conducted as it related to three specific professionals formerly employed by LTC, the total scope, extent and effect of this conduct has yet to be determined.

12.     On August 7, 2007, the ACC filed its Application to Retain Charter Oak Financial Consultants, LLC ("Charter Oak") as its financial advisor to replace LTC.  That Application will be heard by the Court at the August 29, 2007 hearing.  While no parties have objected to the retention of Charter Oak, the Debtors filed a Response that requests the Court enter an order "directing a formal investigation of the potential LTC over billings".  As this Motion notes, the UST agrees that a formal investigation of LTC's actions must be conducted.

### Relevant Law

13.     Pursuant to 11 U.S.C. § 1104(c), the court shall order the appointment of an examiner:

to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if –

(1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

(2) the debtor's fixed, liquidated, unsecured debts, other than debtors for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

14. There are two alternative grounds for appointment of an examiner. First, there is the discretionary appointment of an examiner, pursuant to section 1104(c)(1), if the appointment is in the best interests of creditors and the estate.

15. Second, there is the mandatory appointment of an examiner if the debts exceed $5 million. Section 1104(c)(2) vests the Court with "discretion to direct the examiner's investigation, including its nature, extent and duration," but not to decline appointment once the section 1104(c)(2) threshold has been satisfied. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 501 (6th Cir. 1990); *see also, In re Schepps Food Stores, Inc.*, 148 B.R. 27, 30 (S.D. Tex. 1992)("as is appropriate" language modifies "investigation" rather than limiting the meaning of "shall"; "The statute allows the Court to determine the scope, length and conduct of the investigation, rather than the appointment itself."

### Grounds/Basis for Relief

16. The UST asserts that grounds exist for the appointment of an examiner. The sustained improper billing as reflected in a sample of LTC's filed fee applications represents a flagrant violation of LTC's fiduciary obligation to the estate and constitutes an egregious breach of LTC's duty of candor to this Court. *See, e.g., In re Columbia Plastics, Inc.*, 251 B.R. 580, 590

(Bankr. W.D. Wash. 2000) (counsel for Chapter 7 trustee was required to disgorge all fees for improper and fraudulent billing); *Matter of Futuronics Corp.*, 655 F.2d 463 (2d Cir. 1981) (finding that a flagrant breach of fiduciary obligations to the bankruptcy court warranted no less than a total denial of compensation). Yet, the extent and subsequent effect of LTC's fraudulent and improper billing is currently unknown. An examiner is needed to investigate LTC's conduct and billing practices in this case and determine what causes of action the Debtors and/or the estate may have against LTC.

17. The facts support either the discretionary or mandatory appointment of an examiner for this issue. There are serious allegations of fraud, dishonesty and misconduct lodged against LTC. It is likely that the Debtors and/or this estate will have causes of action against LTC as a result of its actions. Yet, an independent fiduciary is needed to investigate these allegations. A situation like this is exactly the reason why the Bankruptcy Code allows for the appointment of an examiner, namely to investigate fraud related to the affairs of the debtor. Moreover, there is no question that the appointment of an examiner is in the best interest of the creditors and this estate because the proposed examiner investigation is meant to protect the estate by uncovering the extent and depth of the fraud and misconduct committed by LTC and determine what actions need to be taken against LTC for the benefit of the Debtors and this estate.

18. It cannot be disputed that the Debtors reach the debt threshold level of $5 million for the mandatory appointment of an examiner. For that reason alone, this Court must direct the appointment of an examiner. This request, however, is not simply based on the fact that the Debtors reach a certain debt level. As noted, there are serious allegations of fraud against a professional of this estate that have numerous ramifications for this estate, not the least of which is potential causes

of action for this estate. An examiner is needed to conduct a proper and thorough investigation of LTC's conduct as it relates to billing and fee applications. For these reasons, the UST argues that there is ample justification for the appointment of examiner and such appointment can be made pursuant to either sections 1104(c)(1) or (c)(2).

**WHEREFORE**, for the foregoing reasons, the United States Trustee respectfully requests that this Court enter an order directing the appointment of an examiner to investigate the conduct of L. Tersigni Consulting, P.C. and determine whether the Debtors or the estate have any causes of actions against L. Tersigni Consulting, P.C. as a result of that conduct.

        Respectfully submitted,

        KELLY BEAUDIN STAPLETON
        United States Trustee, Region Three

        BY:    /s/ David M. Klauder
        David M. Klauder
        Trial Attorney
        Office of the United States Trustee
        J. Caleb Boggs Federal Building
        844 King Street, Suite 2207, Lockbox 35
        Wilmington, DE 19801
        (302) 573-6491
        (302) 573-6497 fax machine

Dated: August 24, 2007