# Exhibit B

# Stipulation

# and

# Claim No. 6356

# **Stipulation**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| W.R. GRACE & CO., et al., | ) | Chapter 11 |
| | ) | Case No. 01-01139 (JKF) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## STIPULATION RESOLVING INSURANCE COVERAGE ISSUES FOR FIREPROOFING CLAIMS

This stipulation ("Stipulation") is entered into this 2nd day of August 2007 between W.R. Grace & Co. and its affiliates (collectively, the "Debtors") and Continental Casualty Company ("CCC").

WHEREAS, on April 2, 2001 (the "Petition Date"), the Debtors commenced their respective reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

WHEREAS, prior to the Petition Date, the Debtors manufactured and sold Monokote PK 140, PK 150 and Z146 fireproofing products ("Fireproofing Products").

WHEREAS, certain customers of the Debtors asserted that Fireproofing Products produced during the period January 1, 1996 through December 31, 1998 that they had purchased from the Debtors, caused corrosion that necessitated repairs and those customers made claims against the Debtors for the costs of the repairs ("Fireproofing Claims").

WHEREAS, prior to the Petition Date, CCC had issued Policy # 1 66800586 for the benefit of certain of the Debtors (the "Applicable Policy") for the term of June 30, 1997 to April 1, 1998.

WHEREAS, in early 2000 the Debtors requested that CCC fund the $4,773,122 settlement of a Fireproofing Claim made in 1997 by Occidental Chemical Corp. ("OxyChem") for damages caused by Fireproofing Products.

WHEREAS, CCC raised several coverage issues with respect to the Fireproofing Claims and the Debtors and CCC thereafter reached an understanding of the terms on which CCC would provide coverage for the OxyChem settlement and other Fireproofing Claims (the "Fireproofing Settlement").

WHEREAS, prior to the Petition Date, pursuant to this understanding, CCC funded the OxyChem settlement as permitted by the Applicable Policy and the Debtors reimbursed CCC pursuant to the $5,000,000 deductible provision of the Applicable Policy; the other Fireproofing Claims were stayed by the commencement of these reorganization cases.

WHEREAS, certain fireproofing customers who had asserted problems with the fireproofing products have filed timely Proofs of Claim and the Debtors have requested that CCC fund the settlement of those claims so as to permit the resolution of remaining Fireproofing Claims;

WHEREAS, CCC has agreed to do so on the terms and conditions set forth herein

NOW, THEREFORE, for good and valuable consideration, the parties hereby stipulate as follows:

1.      Subject to the terms and conditions of this Stipulation, CCC will fund (a) the allowed amounts of the timely-filed Fireproofing Claims as outlined in paragraph 3 below, upon receipt of evidence reasonably satisfactory to it that the claimants incurred and expended at least the amounts claimed less (b) a remaining deductible of $226,878

2

split pro rata among the Fireproofing Claims.  CCC acknowledges the receipt of satisfactory evidence in respect of the BP Claim identified in paragraph 2(a) below.

2.    CCC agrees to pay $3,688,753.90, representing the allowed amount of the BP Claim of $3,900,000, less the BP Claim's pro rata share of the remaining deductible, $211,246.10, within thirty (30) days of Bankruptcy Court approval of this Stipulation.

3.    The Debtors represent that the only Fireproofing Claims filed by the March 31, 2003 Bar Date set by the Court's April 22, 2002 Bar Date Order are:

a.    Claim Number 6356 of BP Exploration & Oil, Inc. now d/b/a BP Products North America, Inc.  for $3,900,000 (the "BP Claim");

b.    Claim Number 585 of First Chemical Texas, L.P. for $159,096 (the "First Chemical Claim"); and

c.    Claim Number 3344 of Akzo Nobel Surface Chemistry LLC for $129,500 (the "Akzo Claim").

4.    All other Fireproofing Claims should be barred by the Bar Date Order.

5.    In exchange for CCC's agreement to fund the three Fireproofing Claims, at issue as outlined herein, the Debtors agree as follows:

a.    All Fireproofing Claims together will be treated as a single occurrence, which was a known loss prior to April 1998, to be paid only under the Applicable Policy. The Debtors acknowledge that no other CCC policy provides coverage for Fireproofing Claims.

b.    The Applicable Policy has a $5,000,000 deductible, as to which $226,878 remains with respect to the Fireproofing Claims.

3

c.    The Applicable Policy applies only to Fireproofing Claims arising from locations in the United States and no CCC policy provides coverage for Fireproofing Claims arising from locations outside of the United States.

6.    After payment of the three Fireproofing Claims outlined herein, the remaining maximum coverage obligations of CCC shall be reduced to $1,038,282. ($5,000,000 less the amount paid on account of the three Fireproofing Claims.) The Bar Date for filing Fireproofing Claims against Grace was March 31, 2003. Thus, absent a new creditor obtaining permission to file a late proof of claim for Fireproofing Claims despite the Bar Date, and except for the obligations created by the CCC Settlement Agreement, CCC should have no further obligations to Grace or to any holders of Claims against Grace in respect of insurance coverage for the defense or indemnification of Fireproofing Claims. The Debtors will not consent to any request by a new creditor to file a late proof of claim for Fireproofing Claims and CCC reserves all of its rights and defenses with respect to such request and any claim so tendered. Notwithstanding this Stipulation, however, no coverage obligations under policies issued by CCC prior to July 30, 1997 are released by this Stipulation other than any coverage obligations for Fireproofing Claims in excess of the remaining maximum coverage obligations of $1,038,282.

7.    Nothing contained herein shall be deemed to constitute an admission with respect to the obligations of the Debtors or CCC under any policy nor a waiver of any legal position which the Debtors or CCC might assert in any context other than the interpretation or enforcement of this Stipulation nor to alter, modify, impair, enlarge, reduce or affect in any way the parties' rights and duties under the Applicable Policy,

4

other policies, agreements and undertakings between the parties except with respect to the Fireproofing Claims. The parties reserve all rights, remedies, claims and defenses against each other to the fullest extent possible except with respect to the Fireproofing Claims.

8.    In the event any new Fireproofing Claims are permitted to be filed against Grace or are otherwise submitted to Grace, Grace shall submit such claims to CCC for handling, including adjustment, compromise, settlement, litigation and/or payment but CCC's responsibilities with respect to such claim will terminate when it has paid the $1,038,282 balance of its total $5,000,000 payment obligation.  CCC reserves all of its rights and defenses with respect to any claim so tendered.

9.    This Stipulation is subject to the approval of the Court and shall not become effective unless and until an approval order has been entered by the Court and such order has become a final order.

10.    This Stipulation may be executed in counterpart signature pages and via facsimile with original copies to follow by regular mail.

11.    Each party executing this Stipulation represents that such party has authority and power to do so.

12.    The Court shall retain jurisdiction over this Stipulation and all matters relating thereto including any dispute concerning the adequacy of evidence submitted pursuant to paragraph 1 hereof by First Chemical and Akzo.

5

STIPULATED AND AGREED:

Dated:  Chicago, Illinois
      August __, 2007

Continental Casualty Company

By: _____
     Michael J. Sehr
     Senior Vice President
CNA Center
333 S. Wabash Avenue
Chicago, Illinois 60685
(312) 822-1357(Telephone)
(312) 755-3088 (Facsimile)

Dated:  Chicago, Illinois
     ·  August 22, 2007

KIRKLAND & ELLIS LLP

By: _____
     Janet S. Baer
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000 (Telephone)
(312) 861-2000 (Facsimile)

and

PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB PC
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware
19899-8705
(302) 652-4100 (Telephone)
(302) 652-4400 (Facsimile)

Co-Counsel for the Debtors and
Debtors-in-Possession

6

STIPULATED AND AGREED:

Dated: Chicago, Illinois
      August 23, 2007

Continental Casualty Company

By: _Michael J. Sehr_

    Michael J. Sehr
    Senior Vice President
CNA Center
333 S. Wabash Avenue
Chicago, Illinois 60685
(312) 822-1357 (Telephone)
(312) 755-3088 (Facsimile)

Dated: Chicago, Illinois
      August __, 2007

KIRKLAND & ELLIS LLP

By: _____
    Janet S. Baer
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000 (Telephone)
(312) 861-2000 (Facsimile)

and

PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB PC
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware
19899-8705
(302) 652-4100 (Telephone)
(302) 652-4400 (Facsimile)

Co-Counsel for the Debtors and
Debtors-in-Possession

6

K&K 12649612

# Claim No. 6356

# WR Grace

Bankruptcy Form 10

Index Sheet

SR00000497

Claim Number:  00006356

Receive Date:  03/26/2003

## Multiple Claim Reference

Claim Number _____

☐ MMPOC   Medical Monitoring Claim Form
☐ PDPOC   Property Damage
☐ NAPO   Non-Asbestos Claim Form
☐   Amended

Claim Number _____

☐ MMPOC   Medical Monitoring Claim Form
☐ PDPOC   Property Damage
☐ NAPO   Non-Asbestos Claim Form
☐   Amended

## Attorney Information

Firm Number:                          Firm Name:

Attorney Number:                      Attorney Name:

Zip Code:

Cover Letter Location Number:

| Attachments Medical Monitoring | Attachments Property Damage | Non-Asbestos |
|---|---|---|
| ☐ TBD | ☐ TBD | ☒ Other Attachments |
| ☐ TBD | ☐ TBD | |
| ☐ TBD | ☐ TBD | |
| ☐ TBD | ☐ TBD | |
| ☐ TBD | ☐ TBD | |
| | ☐ Other Attachments | |
| **Other** | ☐ Non-Standard Form | |
| | ☐ Amended | |
| | ☐ Post-Deadline Postmark Date | |

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF Delaware | | **GRACE NON-ASBESTOS PROOF OF CLAIM FORM** |
|---|---|---|

Name of Debtor:[1] W.R. GRACE + CO. - CONN.      Case Number O1- 1179

NOTE: Do not use this form to assert an Asbestos Personal Injury Claim, a Settled Asbestos Claim or a Zonolite Attic Insulation Claim. Those claims will be subject to a separate claims submission process. This form should also not be used to file a claim for an Asbestos Property Damage Claim or Medical Monitoring Claim. A specialized proof of claim form for each of these claims should be filed.

Name of Creditor (The person or other entity to whom the Debtor owes money or property): BP Exploration + Oil, Inc.
now d.b.a. BP Products North America Inc

Name and address where notices should be sent:
BP Products North America, Inc.
Toledo Refinery
PO BOX 696          Attn:
Toledo, OH 43697-0696      R.E. Schrag

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check box if you have never received any notices from the bankruptcy court in this case.
☒ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies Debtor:
NONE

Check here ☐ replaces
if this claim ☐ amends a previously filed claim, dated:_____

Corporate Name, Common Name, and/or d/b/a name of specific Debtor against whom the claim is asserted:
W.R. GRACE + CO. - CONN., Grace Construction Products

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Environmental liability
☐ Money loaned
☐ Non-asbestos personal injury/wrongful death
☐ Taxes
☒ Other Product purchased was defective and claim made.

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)

Your SS #:_____
Unpaid compensation for services performed
from _____ to _____ (date)

**2. Date debt was incurred:** 1998-2001 - See Summary

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ 3,900,000.00
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Classification of Claim.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured Nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME CASE FILED.

☐ SECURED CLAIM (check this box if your claim is secured by collateral, including a right of setoff.)

Brief Description of Collateral:

☐ Real Estate      ☐ Other (Describe briefly)

Amount of arrearage and other charges at time case filed included in secured claim above, if any: $_____

Attach evidence of perfection of security interest

☒ UNSECURED NONPRIORITY CLAIM

A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM - Specify the priority of the claim.

☐ Wages, salaries, or commissions (up to $4650), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(7).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

This Space is for Court Only

**7. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Acknowledgement:** Upon receipt and processing of this Proof of Claim, you will receive an acknowledgement card indicating the date of filing and your unique claim number. If you want a file stamped copy of the Proof of Claim form itself, enclose a self addressed envelope and copy of this proof of claim form.

WR Grace    BF.27.107.5326
00006356
SR=497

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|
| 3/24/03 | R E Schrag  Robert E Schrag - Global Sourcing Manager |

REC'D MAR 26 2003

# SPECIFIC INSTRUCTIONS FOR COMPLETING
# GRACE NON-ASBESTOS PROOF OF CLAIM FORMS

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, there may be exceptions to these general rules.*

This Proof of Claim form is for Creditors who have Non-Asbestos Claims against any of the Debtors. Non-Asbestos Claims are any claims against the Debtors as time immediately preceding the commencement of the Chapter 11 cases on April 2, 2001 other than Asbestos Personal Injury Claims, Asbestos Property Damage Claims, Zonolite Attic Insulation Claims, Settled Asbestos Claims or Medical Monitoring Claims, as defined on the enclosed General Instructions. More specifically Non-Asbestos Claims are those claims against one or more of the Debtors, whether in the nature of or sounding in tort, contract, warranty or any other theory of law, equity or to any other right, directly or indirectly, any injury, damage or economic loss caused or allegedly caused directly or indirectly by any of the Debtors or any products or materials manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors arising or allegedly arising directly or indirectly, from acts or omissions of one or more of the Debtors, including, but not limited to, all claims, debts, obligations or liabilities for compensatory and punitive damages.

**Administrative Expenses:** Those claims for, among other things, the actual, necessary costs and expenses of preserving the estate as defined in Section 503 of the Bankruptcy Code that arose after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to Section 503 of the Bankruptcy Code. This form should not be used to make a claim for an administrative expense.

**Secured Claim:** A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid that property before creditors who do not have liens on the property. Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right to setoff), the creditor's claim may be a secured claim. (See also Unsecured Claim.)

**Unsecured Claim:** If a claim is not a secured claim, it is an unsecured claim. Unsecured claims are those claims for which a creditor has no lien on the debtor's property or the property on which a creditor has a lien is not worth enough to pay the creditor in full.

**Unsecured Nonpriority Claim:** Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as Unsecured Nonpriority Claims.

**Information about Creditor:** Complete this section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the court which sent notice, or if this proof of claim replaces or amends a proof of claim that was already filed, check the appropriate box on the form.

1.     **Basis for Claim:** Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe type of debt. If you were an employee of the debtor, fill in your social security number and the dates of work for which you were not paid.

2.     **Date Debt Incurred:** Fill in the date the debt was first owed by the debtor.

3.     **Court Judgments:** If you have a court judgment for this debt, state the date the court entered the judgment.

4.     **Amount of Claim:** Insert the amount of claim at the time the case was filed in the appropriate box based on your selected Classification of Claim in item If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization the interest and charges.

5.     **Classification of Claim:** Check either Secured, Unsecured Nonpriority or Unsecured Priority as appropriate. (See Definitions above.)

    **Unsecured Priority Claim:** Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See Definitions, above). A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

6.     **Credits:** By signing this proof of claim, you are stating under oath that in calculating the amount of your claim, you have given the debtor credit for all payments received from the debtor.

7.     **Supporting Documents:** You must attach to this proof of claim form, copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

*Be sure to date the claim and place original signature of claimant or person making claim for creditor where indicated at the bottom of the claim form. Please or print name of individual under the signature. Be sure all items are answered on the claim form. If not applicable, insert "Not Applicable".*

RETURN CLAIM FORM (WITH ATTACHMENTS, IF ANY) TO THE FOLLOWING CLAIMS AGENT FOR THE DEBTORS:

        Claims Processing Agent
        Re: W. R. Grace & Co. Bankruptcy
        P.O. Box 1620
        Faribault, MN 55021-1620

**The Bar Date for filing all NON-ASBESTOS CLAIMS against the Debtors is March 31, 2003 at 4:00 p.m. Eastern Time.**

bp



March 24, 2003

Claims Processing Agent
RE: W. R. Grace & Co. Bankruptcy
PO Box 1620
Faribault, MN 555021-1620

Dear Sir of Madam:

Enclosed is our claim in the amount of Four Million, Two Hundred Thirty Thousand,
Four Hundred Forty-two dollars ($4,230,442.00) in the W. R. Grace Bankruptcy.

If you have any questions or need additional information please call me at 419-698-6226.

If there is any way that we can track the progress of this claim, please let me know at the
above telephone number or at my address shown below.  Thank you.

R E Schrag

Robert E. Schrag
Global Sourcing Manager

BP Products North America, Inc.
Toledo Refinery
PO Box 696
Toledo, Ohio 43697-0696

**Summary for Supporting Documents for BP Exploration & Oil, Inc, in
W.R. Grace& Co. –Conn. Case 01-1179
United States Bankruptcy Court for the State of Delaware**

During 1998 and 1999, W. R. Grace & Co. – Conn., Grace Construction Products,
(Grace) supplied a product to BP Exploration & Oil (BP) at BP's Toledo Refinery. The
product was Monokote Type PK-150 fireproofing material. The material was installed
directly at the Toledo Refinery and also applied off-site to steel structures subsequently
installed at the Refinery.

After installation BP and Grace determined that there was corrosion of metal lath and
underlying substrate where the fireproofing was installed. Essentially the material was
holding water and the water was causing degradation of the material and corrosion of the
metal structures on which the material had been applied.

Grace and BP entered negotiations for replacement of the material and
maintenance/repair of the metal structures in July of 2000. Grace was in discussion with
a number of other end users as the material had failed across the board. Grace made
settlement with, and payments to, a number of other companies prior to April of 2001.

On March 28, 2001 Grace and BP agreed on the monetary value for our claim. The
agreed amount was $3,900,000.00. We had started to negotiate the written terms of the
settlement on March 23, 2001 and agreed on the terms May 15, 2001.

The bankruptcy was filed on April 2, 2001. Because of the filing, Grace was unable to
sign the settlement agreement and pay our claim and said that we would have to pursue
recovery for the claim with the Bankruptcy Court.

The $3.9MM was based on finishing the work in 2001 and 2002. Because we had to self-
fund the replacement program, the program was changed to four years and extended
through 2004. These additional two years will lead to increases in material, labor,
mobilization/demobilization and internal costs. Our estimated cost for completion of the
project is now $4,230,442 and this is the amount that we are claiming under this
bankruptcy claim.

The attached table lists the documents included and their general description.

**List of Supporting Documents for BP Exploration & Oil, Inc, in**
**W.R. Grace& Co. –Conn. Case 01-1179**
**United States Bankruptcy Court for the State of Delaware**

| | |
|---|---|
| E-Mail , R. Schrag (BP), July 11, 2000 | Note summarizing first negotiation session with W. R. Grace and BP |
| E-Mail, T. Crossley (MKA), Sep. 18, 2000 | Agree on getting bids to replace defective material |
| E-Mail, M. Jaksetic (BP), | Outlines initial bids before scope rationalization |
| Letter, M. Jaksetic (BP), March 19, 2001 approx. | Summarizes monetary settlement basis after bid rationalization and discussions with Grace and MKA |
| E-Mail, P. Korenberg (Grace), March 23, 2001 | Comments on receiving monetary settlement basis and on proceeding after resolving a detail or two.  Also proposes settlement agreement form. |
| E-Mail, P. Korenberg, (Grace), March 26, 2001 | Proposes a more customized settlement agreement form.  Asks to proceed quickly when MKA agrees to monetary settlement basis. |
| E-Mail, M. Jaksetic (BP), March 28, 2001 | States that the Monetary settlement basis has been agreed. |
| E-Mail and Release, R. Schrag (BP), April 10, 2001 | BPs suggestions on the Release document and question around effect of bankruptcy filing |
| E-Mail, P. Korenberg (Grace), April 10, 2001 | Acknowledges Release document and advises that court approval is needed for settlement. |
| E-Mail, P. Korenberg (Grace), May 15, 2001 | Agree on final form of Release document and agreement to proceed as soon as direction received from court. |
| Fireproofing Replacement Costs | Updates current cost of replacement and repair based on extending program from two to four years.  Takes claim from $3,900,000.00 to $4,230,442.00.  Uses actual numbers for 2001 and 2002, planned cost based on bids for 2003 and estimated cost to complete for 2004. |

## Schrag, Robert E

| From: | Schrag, Robert E |
| --- | --- |
| Sent: | Tuesday, July 11, 2000 4:17 PM |
| To: | Moroni, Tom E; Simons, Dave M |
| Cc: | Johns, Jeanne M; Panozzo, Ken P (Toledo); Anderson, John C (Toledo); Spidle, Ted D |
| Subject: | W. R. Grace Meeting - Summary Notes and Thoughts 7/11/00 |

Below are summary notes and thoughts from today's meeting.

Paul Korenberg, W.R. Grace's Director of Technology Transfer for Fire Protection Products, said that he and their consultant, Trevor Crossley of Madsen, Kneppers & Associates, have been touring all of their sites where PK 140/150 was installed and assessing the situation. Where appropriate, they have made deals to pay for removal and replacement of the product in exchange for them having no liability for the new installation or future claims on the old installation.

After a physical review of the site, the consultant recommended removal and replacement of all the fireproofing and remediation of any underlying steel to a condition suitable for fireproofing replacement. This involves Coker 3.

Tom Moroni will develop a scope, probably using Carboline 241 as the replacement, about July 13. AC&S, the original installing contractor, will develop a proposal to do the work about July 27. Grace and their consultant will review the proposal for acceptable pricing and sometime in early August we will agree on a settlement.

The most likely outcome is that Grace will offer us a check for the cost of doing the removal, remediation and replacement. In return we would give Grace a complete release from any liability and we would look to the new installer/supplier for any future guarantee, warranty or claim. They have asked that we look at providing as much "internal" service as we can to lower costs for everybody - such as project management, permits, potentially using some of our crafts for ancillary work.

We would be free to schedule the repair at whatever pace we want, even up to deciding not to do certain areas at all.

A concern would be to make sure that the proposal/check would cover the cost if we significantly differ from an efficient one-mobilization project in a relatively short and soon period of time. Another concern is what do we do to minimize liability (which would now be assumed by us) before we do the replacement.

Grace is behaving very professionally and ethically in trying to resolve this matter without resorting to the contracts or the courts.

## Schrag, Robert E

| | |
|---|---|
| **From:** | tcrossley@mkainc.com |
| **Sent:** | Monday, September 18, 2000 4:14 PM |
| **To:** | SchragRE@bp.com; jaksetmf@bp.com |
| **Cc:** | Paul.E.Korenberg@grace.com |
| **Subject:** | Re: RE: W.R. Grace/OxyChem |

Bob,
The letter attachment in your e-mail was the same as the letter I faxed over.  I will have my assistant figure out the problem with opening the e-mail attachments.

I believe Mike and I are in agreement that obtaining 2 more bids would certainly provide a basis for settling the issue of scope and cost.  Do you have a target date that we might expect receiving the bids?  Once we have those bids I suggest we arrange a time to discuss and review the scope and cost.

Please request that the bidders provide the following information:

1. Wage rates
2. Number of bags of material
3. Square footage of application
4. Demolition labor
5. Material and labor breakdown for treatment and painting of steel
6. New fireproofing material costs
7. Other material costs such as lath etc etc
8. Labor costs for new fireproofing
9. Scaffolding costs
10. Equipment costs
11. Project duration

I appreciate your assistance in this matter

TREVOR A. CROSSLEY
MADSEN, KNEPPERS AND ASSOCIATES
1855 OLYMPIC BLVD,
SUITE 310,
WALNUT CREEK, CA 94596

TEL: 925-934-3235
FAX: 925-934-3894
E-MAIL: tcrossley@mkainc.com

## Schrag, Robert E

| | |
|---|---|
| **From:** | Jaksetic, Mike F |
| **Sent:** | Tuesday, December 19, 2000 9:51 AM |
| **To:** | Schrag, Robert E |
| **Cc:** | Spidle, Ted D; Panozzo, Ken P (Toledo) |
| **Subject:** | TRP Fireproofing |



**trpfireproofing.doc**

Copy of letter to WR Grace is attached.

The three estimates are as follows:

Schad Refractory  - $4.1MM
Empire Refractory - $4.5MM
AC&S           - $5.1MM

Please note that these are order of magnitude estimate.  Schad and Empire and a lot longer time to put together their figures.  AC&S did a very fast estimate back when Tom Moroni was still here.

I will be interesting what WR Grace will counter with.  Hopefully I can put together smaller bid packages out 1Q01 and start the replacement process.

Mike


**bp**

Mike Jaksettic, Project Engineer
BP Amoco Oil
Toledo Refinery
4001 Cedar Point Road    P.O. Box 696
Oregon, OH  43616    Toledo, OH 43697
Telephone 419-698-6405
Fax 419-698-6548
email - jaksetmf@bp.com

Paul Korenberg

Director of Technology Transfer

W.R.Grace & Co. Conn.

62 Whittemore Avenue

Cambridge, MA 02140

Trevor Crossley

Regional Manager

Madsen, Kneppers & Associates, Inc.

1855 Olympic Boulevard, Suite 310

Walnut Creek, CA 94596-5028

Gentlemen,

With regards to the replacement of the Grace PK-150 fireproofing material at our Toledo Refinery, we are proposing a cash settlement of $3.9MM for release of liability from W.R Grace. The $3.9MM assumes that work will begin in May 1, 2001. If an agreement cannot be reached to facilitate this schedule, than a 5% escalation cost would be added. The project schedule is based on working May – Nov 2001 and likewise in 2002. The cost breakdown is based on information that has been provided previously, but is itemized below.

| | | |
|---|---|---|
| Lump Sum Bid Coker 3 & ISO 2 units | | $2,670,654 |
| Remaining 20% of scope @ $500/bag | | 560,000 |
| Disposal Costs 50 boxes @ $500/box | | 25,000 |
| Labor of handling above boxes 100 mhs/ $50/hr | | 5,000 |
| Contract Field Coordinator 2000 mhs @ %50/hr | | 100,000 |
| | Subtotal | 3,360,654 |

The fact that Coker 3 and ISO 2 units were competitive bid and comprise 80% of the scope the above numbers are pretty solid. That brings use to interference considerations. We are proposing the costs for one man-year for an electrician and pipe fitter to handle this part of the scope.

| | | |
|---|---|---|
| Electrician - 2000 mhs @ $66.18/hr | | 132,300 |
| Pipe fitter  - 2000 mhs @ 61.08/hr | | 122,160 |
| | Subtotal | 3,615,114 |

We have included a contingency of 8%.  Based on the magnitude and confidence level of this type of project we feel that this is fair percentage.

| | | |
|---|---|---|
| 8% Contingency | | 289,209 |
| | Totals | 3,904,323 |
| | **Say** | **3,900.000** |

Please advise as to how we can proceed to a successful solution to this situation.


Sincerely,



Mike Jasketic

Project Engineer

## Schrag, Robert E

| | |
|---|---|
| **From:** | Paul.E.Korenberg@grace.com |
| **Sent:** | Friday, March 23, 2001 2:09 PM |
| **To:** | JaksetMF@bp.com |
| **Cc:** | SchragRE@bp.com; SpidleTD2@bp.com |
| **Subject:** | RE: BP-TOLEDO |



BP Blank.doc

          Mike,
Returned from Australia in one piece. I have received your letter
detailing the refined bids and the note  about an 01 May start. I spoke
to Trevor and he indicated that he would have a further discussion with
you about a detail or two and pending resolution on that we would
proceed. I have attached an agreement that was used on another job with
the names and amounts removed. I added BP and show the applicator as YY
but I do understand that the inclusion of an applicator in the BP case
is likely not to be appropriate. I expect that the actual agreement
would be just between BP and Grace. This is sent just to give your
legal staff a basic look at the type of structure that we have been
using in these settlements.

Thanks,
Paul

## Schrag, Robert E

| | |
|---|---|
| **From:** | Paul.E.Korenberg@grace.com |
| **Sent:** | Monday, March 26, 2001 5:01 PM |
| **To:** | JaksetMF@BP.COM |
| **Cc:** | tcrossley@mkainc.com; Thomas.E.Murray@grace.com; SchragRE@BP.COM; SpidleTD2 @BP.COM |
| **Subject:** | BP Amoco Blank |

Mike,

After I sent the previous Email with the "blank" I marked up, I asked the legal department to prepare an official and complete draft for BP with the applicator removed and in the exact form that we propose but leaving the $ amount blank. I do not know if Trevor and you have discussed an agreed number but this can be easily added.

Please review the attached and ask your legal department to make any proposed changes for us to review. Please send their marked up copy to me via Email and I will review any changes here so we can proceed quickly as soon as we have an agreed number.

Thanks,
Paul

## Schrag, Robert E

| | |
|---|---|
| **From:** | Jaksetic, Mike F |
| **Sent:** | Wednesday, March 28, 2001 12:25 PM |
| **To:** | Schrag, Robert E; Spidle, Ted D; Spidle, Ted D |
| **Subject:** | FW: Attachment: BP Amoco Blank |



BPAmoco Cohan
official blank.d...

Gentleman,

I just got off the phone with Trevor Crossley and he is going to endorse the $3.9MM cost for the replacement work!

Mike

-----Original Message-----
From: Paul.E.Korenberg@grace.com [mailto:Paul.E.Korenberg@grace.com]
Sent: Tuesday, March 27, 2001 3:32 PM
To: JaksetMF@bp.com
Cc: tcrossley@mkainc.com; SchragRE@bp.com; SpidleTD2@bp.com
Subject: Attachment: BP Amoco Blank


The attachment!
Thanks,
Paul

-----Original Message-----
From: Korenberg, Paul E.
Sent: Monday, March 26, 2001 5:01 PM
To: 'JaksetMF@BP.COM'
Cc: 'SpidleTD2@BP.COM'; 'SchragRE@BP.COM'; tcrossley@mkainc.com; Murray, Thomas E.
Subject: BP Amoco Blank


Mike,

After I sent the previous Email with the "blank" I marked up, I asked the legal department to prepare an official and complete draft for BP with the applicator removed and in the exact form that we propose but leaving the $ amount blank. I do not know if Trevor and you have discussed an agreed number but this can be easily added.

Please review the attached and ask your legal department to make any proposed changes for us to review. Please send their marked up copy to me via Email and I will review any changes here so we can proceed quickly as soon as we have an agreed number.

Thanks,
Paul

## Schrag, Robert E

| | |
|---|---|
| From: | Schrag, Robert E |
| Sent: | Tuesday, April 10, 2001 8:58 AM |
| To: | 'Paul.E.Korenberg@grace.com' |
| Cc: | tcrossley@mkainc.com; Jaksetic, Mike F |
| Subject: | BP Release for Grace Fireproofing |



GraceReleaseMarke
dUp.doc

          Attached is amended version of the release. The changes we want are
highlighted. Let me know if you have any questions or comments before we print the final
version for signature.

Where do we stand in authorization of this deal by Grace?  Will the recent bankruptcy
filing have and effect on this deal?




-----Original Message-----
From: Paul.E.Korenberg@grace.com [mailto:Paul.E.Korenberg@grace.com]
Sent: Tuesday, March 27, 2001 3:32 PM
To: JaksetMF@bp.com
Cc: tcrossley@mkainc.com; SchragRE@bp.com; SpidleTD2@bp.com
Subject: Attachment: BP Amoco Blank


The attachment!
Thanks,
Paul

-----Original Message-----
From: Korenberg, Paul E.
Sent: Monday, March 26, 2001 5:01 PM
To: 'JaksetMF@BP.COM'
Cc: 'SpidleTD2@BP.COM'; 'SchragRE@BP.COM'; tcrossley@mkainc.com; Murray,
Thomas E.
Subject: BP Amoco Blank


Mike,

After I sent the previous Email with the "blank" I marked up, I asked
the legal department to prepare an official and complete draft for BP
with the applicator removed and in the exact form that we propose but
leaving the $ amount blank. I do not know if Trevor and you have
discussed an agreed number but this can be easily added.

Please review the attached and ask your legal department to make any
proposed changes for us to review. Please send their marked up copy to
me via Email and I will review any changes here so we can proceed
quickly as soon as we have an agreed number.

Thanks,
Paul

## **RELEASE**

This Release is entered into and effective as of _____, 2001.

### A.    **THE PARTIES**

W. R. GRACE & CO.-CONN., GRACE CONSTRUCTION PRODUCTS, a Connecticut corporation with offices at 62 Whittemore Avenue, Cambridge, Massachusetts 02140 ("Grace"); and

BP Exploration & Oil, Inc., an Ohio corporation with an office ~~BP Amoco Oil, a _____ corporation with offices~~ at 4001 Cedar Point Road, Oregon, Ohio 43616 ("BP").

### B.    **THE FACILITY**

BP' s Toledo Refinery in Oregon, ~~Refinery petrochemical manufacturing facility in Toledo,~~ Ohio (the "Facility").

### C.    **RECITALS**

1.    During 1998 and 1999 Monokote® Type PK-150 fireproofing material ("Fireproofing Material") supplied by Grace was installed directly at the Facility and also applied off-site to steel structures subsequently installed at the Facility.

2.    Grace and BP have determined that there is evidence of corrosion of metal lath and underlying substrate where the Fireproofing Material has been applied.

3.    The causes of the aforementioned corrosion have not been definitively determined, however BP desires to remediate the problems by removing all the Fireproofing Material on the Facility and replacing it with other material.

4.      Grace is willing to contribute to the cost of the work referred to in Paragraph C.3.

5.      Grace and BP desire to resolve and settle all claims with respect to the Fireproofing Material used at the Facility.

NOW, THEREFORE, the parties hereto, intending to be legally bound, covenant and agree as follows:

### D.      **PAYMENT**

Simultaneously with the execution hereof, Grace shall pay to BP, the sum of _____Dollars ($_____) ("Grace's Settlement Payment") the receipt of which BP hereby acknowledges.

### E.      **RELEASE**

In consideration of Grace's Settlement Payment, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, BP, does hereby for itself and its officers, directors, partners, principals, agents, representatives, predecessors, successors and assigns and all others claiming by or through it, including insurers and sureties, release and forever discharge Grace and its officers, directors, partners, principals, agents, representatives, predecessors, successors and assigns and all persons and entities connected with it who are or may ever become liable to it, including its insurers and sureties, of and from any and all past, present or future claims, demands, obligations, actions, causes of action, damages, losses, costs and expenses of every kind and nature whatsoever, known or unknown, in law or equity which BP may now have or

may hereafter have against Grace arising from, out of or in any way related to the design, purchase or use of the Fireproofing Material at the Facility.

## F.    INDEMNITY

In further consideration of Grace's Settlement Payment, BP agrees to defend, indemnify and hold Grace harmless from and against any claims, demands or actions made or brought against Grace by third parties ("Primary Claimant"), whether in the nature of contribution, indemnity or otherwise, arising from, out of or related to any claims, demands or actions made or brought by BP against such Primary Claimant in respect to the design, purchase or use of the Fireproofing Material on the Facility.  For the avoidance of doubt, this indemnity does not pertain to any claims for personal injury or bodily injury to any person or persons,  including without limitation any claims for death, sickness, injury, illness or disease to any person or persons associated with the installation or removal of the Fireproofing Material.

## G.    COVENANT NOT TO SUE

BP covenants and agrees never to commence or prosecute against Grace any legal action or other proceeding based in whole or in part upon the claims, demands, causes of actions, obligations, damages, and liabilities released in this Release.

## H.    WAIVER

BP acknowledges that there is a risk that subsequent to the execution of this Release it may incur injury, loss, damages, costs, attorneys' fees, expenses, or any of these, which are in some way caused by or connected with the matters referred to herein, or which are unknown or unanticipated at the time this Release is signed, or which are presently incapable of being ascertained.  Nevertheless, BP acknowledges that this Release has been

negotiated and agreed upon in light of those realizations and BP hereby expressly waives all rights it may have in such unsuspected claims.

### I.    **WARRANTY OF AUTHORIZATIONS**

BP represents and warrants, that it is authorized to enter into this Release and that all necessary authorizations, actions and approvals, if any, required to authorize its entering into this Release have been taken or obtained and the signatory hereto warrants and represents that he or she is competent and fully authorized to enter into this Release on behalf of BP.

### J.    **COMPROMISE**

This Release is the result of a compromise among the parties hereto and the payment of any sum of money in consideration for the execution of this Release shall never at any time or for any purpose be considered as an admission of liability or responsibility by Grace.

### K.    **CONFIDENTIALITY**

This Release and its terms and conditions shall be confidential, and neither party ~~BP~~ shall ~~not to~~ divulge said terms and conditions to the news media or any other person or group, except insofar as required by law, ~~or except~~ as required in any legal action to enforce the terms and conditions of this Release, or as permitted by the prior written consent of the other party.

### L.    **GOVERNING LAW**

This Release shall be interpreted in accordance with and governed in all respects by the laws of the State of Ohio.

### M.    **BINDING EFFECT**

This Release shall be binding upon and inure to the benefit of Grace and BP and their respective predecessors, successors, assigns, partners, partnerships, parent, subsidiary, affiliated and related entities, officers,

directors, principals, agents, servants, employees, representatives, and all persons, firms associations, and other entities connected with them, including without limitation, their insurers, sureties, and attorneys.

### N.    **BENEFIT OF COUNSEL**

The advice of legal counsel has been obtained by BP prior to entering into this Release.

### O.    **ENTIRE AGREEMENT**

This Release constitutes the entire understanding between Grace and BP with regard to the matters herein set forth.  There are no representations, warranties, agreements, arrangements, undertakings, oral or written relating to the subject matter of this Release which are not fully expressed herein.  This Release cannot be modified in any way except by written modification executed by both Grace and BP.

### P.    **SEVERABILITY**

If any provision or any part of any provision of this Release is for any reason held to be invalid, unenforceable or contrary to any public policy, law, statute or ordinance, then the remainder of this Release shall not be effected thereby and shall remain valid and fully enforceable.

IN WITNESS WHEREOF, BP has caused this Release to be executed as a sealed instrument by its authorized representative, effective the day and year first above written.

BP Exploration & Oil, Inc.Amoco Oil.

By:_____

Witness: _____

Title:_____

MBC/contract/const/release/BP/mbc/2001

## Schrag, Robert E

| | |
|---|---|
| From: | Paul.E.Korenberg@grace.com |
| Sent: | Tuesday, April 10, 2001 10:01 AM |
| To: | SchragRE@BP.COM |
| Cc: | JaksetMF@BP.COM; tcrossley@mkainc.com |
| Subject: | RE: BP Release for Grace Fireproofing |

Bob and Mike,
Thanks for the revised agreement. I have sent it to legal for review
and comment.

With respect to the Chapter 11 filing, it does have an effect. We must
now have all these issues reviewed and approved by the court before
taking any action. Our legal department is seeking clarification on the
petrochemical claims as a separate issue from other liabilities and we
do hope that they will allow us to proceed. As of now I have been
advised that I need to wait for that court decision before actually
processing any claims or signing any new agreements.

I will continue to follow this and advise you as soon as I know what we
should do.

Thanks,
Paul


-----Original Message-----
From: SchragRE@BP.COM [mailto:SchragRE@BP.COM]
Sent: Tuesday, April 10, 2001 8:58 AM
To: Korenberg, Paul E.
Cc: tcrossley@mkainc.com; JaksetMF@BP.COM
Subject: BP Release for Grace Fireproofing


Attached is amended version of the release.  The changes we want are
highlighted.  Let me know if you have any questions or comments before
we ·
print the final version for signature.

Where do we stand in authorization of this deal by Grace?  Will the
recent
bankruptcy filing have and effect on this deal?




-----Original Message-----
From: Paul.E.Korenberg@grace.com [mailto:Paul.E.Korenberg@grace.com]
Sent: Tuesday, March 27, 2001 3:32 PM
To: JaksetMF@bp.com
Cc: tcrossley@mkainc.com; SchragRE@bp.com; SpidleTD2@bp.com
Subject: Attachment: BP Amoco Blank


The attachment!
Thanks,
Paul

-----Original Message-----
From: Korenberg, Paul E.
Sent: Monday, March 26, 2001 5:01 PM
To: 'JaksetMF@BP.COM'

## Schrag, Robert E

| | |
|---|---|
| From: | Paul.E.Korenberg@grace.com |
| Sent: | Tuesday, May 15, 2001 6:03 PM |
| To: | SchragRE@BP.COM |
| Cc: | JaksetMF@BP.COM |
| Subject: | BP Release for Grace Fireproofing |

Bob,
I followed up with legal and there is no problem with the changes you
made in the agreement. We are now in a position to proceed as soon as I
can get some direction from the carrier and legal department as to
where this stands with the court. I will contact you immediately when I
know what we should do.

One note on the corrosion issue: There is an extensive NACE (National
Association of Corrosion Engineers) report which speaks directly to the
corrosion issue of steel coated with cementitious fireproofing in
petrochemical environments. It is dated 1996 and is listed as item #
24130, NACE International Publication 6H189. It is extremely clear as
to what systems work and which ones are doomed to early failure. I
found their website but did not find this specific report.

http://www.nace.org/naceframes/Papers/papersindex.htm

Hope this helps and again, thanks again for your patience,
Paul

# Fireproofing Replacement Costs

- Actual 2001          $  246,564
- Actual 2002          $1,190,519
- Planned 2003         $1,856,359
- Estimated to         $  937,000
  Complete in 2004
- TOTAL                $4,230,442