## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

**W.R. Grace & Co., et al.**

Debtors.

Chapter 11

Case No. 01-01139 (JKF)

Jointly Administered

**TWENTY-FIFTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK
& LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
FROM APRIL 1, 2007 THROUGH JUNE 30, 2007**

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **April 1, 2007 – June 30, 2007** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$609,233.75** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$13,150.79** |
| Fees and Expenses of the Asbestos Issues Expert | **$536,163.29** |

This is an: ☒ interim ☐ final application

This is the twenty-fifth quarterly application filed.

**Attachment A**

## Monthly Interim Fee Applications

| Date Filed | Period Covered | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01-7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02-04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

|  |  | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| July 2, 2002<br>D.I.2324 | 05/01/02 –<br>05/31/02 | $74,910.75 | $2,9154.43 (Stroock)<br>$43,190.69 (Chambers) | $59,928.60 | $46,105.12 |
| August 5, 2002<br>D.I.2495 | 06/01/02 –<br>06/30/02 | $73,096.75 | $2,054.05 (Stroock)<br>$114,666.72 (Chambers) | $58,477.4011 | $116,720.77 |
| September 20, 2002<br>D.I.2720 | 07/01/02 –<br>07/31/02 | $90,903.27 | $1,250.79 (Stroock)<br>$11,996.25 (Chambers) | $72,722.61 | $13,274.04 |
| October 29, 2002<br>D.I.2898 | 08/01/02 –<br>08/31/02 | $93,151.25 | $11,539.51 (Stroock)<br>$5,046.70 (Chambers) | $74,521.00 | $16,586.21 |
| November 14, 2002<br>D.I.2981 | 09/01/02 -<br>09/30/02 | $96,613.25 | $15,567.77 (Stroock)<br>$771.50 (Chambers) | $77,290.60 | $16,339.27 |
| December 10, 2002<br>D.I.3129 | 10/1/02 –<br>10/31/02 | $68,404.00 | $2,956.54 (Stroock)<br>$1,780.75 (Chambers) | $54,723.20 | $4,737.29 |
| January 28, 2003<br>D.I.3286 | 11/1/02 –<br>11/30/02 | $75,345.50 | $8,712.16 (Stroock) | $60,276.40 | $8,712.16 |
| February 7, 2003<br>D.I.3349 | 12/1/02 –<br>12/31/02 | $27,683.50 | $13,332.14 (Stroock) | $22,146.80 | $13,332.14 |
| March 26, 2003<br>D.I.3552 | 1/1/03 –<br>1/31/03 | $88,139.00 | $1,210.11 (Stroock) | $70,511.20 | $1,210.11 |
| April 7, 2003<br>D.I.3626 | 2/1/03 –<br>2/28/03 | $76,313.00 | $2,022.78 (Stroock)<br>$1,077.80 (Chambers) | $61,050.40 | $3,100.58 |
| April 29, 2003<br>D.I.3718 | 3/1/03 –<br>3/31/03 | $60,163.50 | $6,191.15 (Stroock) | $48,130.80 | $6,191.15 |
| June 2, 2003<br>D.I. 3850 | 4/1/03 –<br>4/30/03 | $60,269.00 | $814.02 (Stroock)<br>$2,043.00 (Chambers) | $48,215.20 | $2,857.02 |
| July 1, 2003<br>D.I. 3983 | 5/1/03 –<br>5/31/03 | $111,990.50 | $691.84 (Stroock)<br>$3,830.50 (Chambers) | $89,592.40 | $10,522.34 |
| August 5, 2003<br>D.I. 4152 | 6/1/03 –<br>6/30/03 | $43,824.00 | $1,220.42 (Stroock)<br>$61,755.00 (Chambers) | $35,059.20 | $62,975.42 |
| September 4, 2003<br>D.I. 4381 | 7/1/03 –<br>7/31/03 | $79,090.50 | $2,301.33 (Stroock)<br>$14,274.25 (Chambers) | $63,272.40 | $16,575.58 |

2

|  | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 30, 2003<br>D.I. 4512 | 8/1/03 –<br>8/31/03 | $69,927.00 | $1,164.19 (Stroock)<br>$12,488.94 (Chambers) | $55,941.60 | $13,653.13 |
| October 29, 2003<br>D.I. 4625 | 9/1/03 –<br>9/30/03 | $69,409.50 | $1,076.94 (Stroock)<br>$10,102.00 (Chambers) | $55,527.60 | $11,178.94 |
| December 19, 2003<br>D.I. 4843 | 10/1/03 –<br>10/31/03 | $96,980.50 | $3,800.45 (Stroock)<br>$42,881.50 (Chambers) | $77,584.40 | $46,681.95 |
| January 23, 2004<br>D.I. 4976 | 11/1/03 –<br>11/30/03 | $66,428.50 | $1,225.38 (Stroock)<br>$30,463.00 (Navigant<br>f/k/a Chambers) | $53,142.80 | $31,688.38 |
| February 4, 2004<br>D.I. 5056 | 12/1/03 –<br>12/31/03 | $52,321.50 | $924.99 (Stroock)<br>$27,005.00 (Navigant<br>f/k/a Chambers) | $41,857.20 | $27,929.99 |
| March 17, 2004<br>D.I. 5309 | 1/1/04 –<br>1/31/04 | $65,980.50 | $1,917.93 (Stroock)<br>$47,654.57 (Navigant<br>f/k/a Chambers) | $52,784.40 | $49,572.50 |
| April 6, 2004<br>D.I. 5406 | 2/1/04 –<br>2/29/04 | $90,421.50 | $3,636.48 (Stroock)<br>$35,492.50 (Navigant<br>f/k/a Chambers) | $72,337.20 | $39,128.98 |
| April 28, 2004<br>D.I. | 3/1/04 –<br>3/31/04 | $103,524.00 | $5,567.34 (Stroock) | $82,819.20 | $5,567.34 |
| June 14, 2004<br>D.I. 5803 | 4/1/04 –<br>4/30/04 | $99,136.00 | $3,518.96 (Stroock)<br>$1,515.00 (Navigant<br>February)<br>$49,667.00 (Navigant<br>March)<br>$80,307.11 (Navigant<br>April) | $79,308.80 | $135,008.07 |
| July 2, 2004<br>D.I. 5917 | 5/1/04 –<br>5/31/04 | $134,324.50 | $2,409.97 (Stroock)<br>$78,360.05 (Navigant<br>May) | $107,459.60 | $80,770.02 |
| August 2, 2004<br>D.I. 6105 | 6/1/04 –<br>6/31/04 | $120,501.00 | $1,831.49 (Stroock)<br>$62,625.00 (Navigant<br>June) | $96,400.80 | $64,456.49 |

3

|  |  | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 9, 2004<br>D.I. 6341 | 7/1/04 –<br>7/31/04 | $72,394.00 | $3,461.84 (Stroock)<br>$40,427.50 (Navigant<br>July) | $57,915.20 | $43,889.34 |
| September 23, 2004<br>D.I. 6444 | 8/1/04 –<br>8/31/04 | $70,457.00 | $1,764.40 (Stroock) | $56,365.60 | $1,764.40 |
| October 14, 2004<br>D.I 6625 | 9/1/04 –<br>9/30/04 | $83,903.50 | $1,535.61 (Stroock)<br>$27,142.00 (Navigant<br>August) | $67,122.80 | $28,677.61 |
| December 3, 2004<br>D.I. 7086 | 10/1/04 –<br>10/31/04 | $200,155.50 | $1,368.18 (Stroock)<br>$ 24,659.00 (Navigant<br>September) | $160,124.40 | $26,027.18 |
| January 7, 2005<br>D.I. 7481 | 11/1/04 –<br>11/30/04 | $218,608.50 | $14,019.09 (Stroock)<br>$25,102.80 (Navigant<br>October)<br>$27,972.34 (Navigant<br>November) | $174,886.80 | $67,094.23 |
| February 2, 2005<br>D.I. 7667 | 12/1/04 –<br>12/31/04 | $235,503.70 | $10,442.92 (Stroock)<br>$62,687.97 (Navigant<br>December) | $188,402.96 | $73,130.89 |
| March 15, 2005<br>D.I. 8026 | 1/1/05 –<br>1/31/05 | $187,168.00 | $4,411.55 (Stroock)<br>$15,686.00 (Navigant<br>January) | $149,734.40 | $20,097.55 |
| April 1, 2005<br>D.I. 8155 | 2/1/05 –<br>2/28/05 | $108,180.25 | $8,102.85 (Stroock)<br>$18,303.37 (Navigant<br>February) | $86,544.20 | $26,406.22 |
| April 29, 2005<br>D.I. 8305 | 3/1/05~ –<br>3/31/05 | $56,941.25 | $287.23 (Stroock)<br>$6,114.86 (Navigant<br>March) | $45,553.00 | $6,402.09 |
| June 6, 2005<br>D.I. 8562 | 4/1/05-<br>4/30/05 | $127,695.00 | $3,531.45 (Stroock)<br>$20,129.06 (Navigant<br>April) | $102,156.00 | $23,660.51 |
| June 28, 2005<br>D.I. 8704 | 5/1/05-<br>5/31/05 | $98,569.00 | $4,871.74 (Stroock) | $78,855.20 | $858.21 |

4

| | | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|---|
| August 3, 2005 D.I. 9135 | 6/1/05-6/30/05 | $114,903.75 | $4,871.74 (Stroock) $34,075.28 (Navigant June) | | $91,923.00 | $38,947.02 |
| September 8, 2005 D.I. 9356 | 7/1/05 – 7/31/05 | $117,780.75 | $2,088.44 (Stroock) $2,211.00 (Navigant) | | $94,224.60 | $4,299.44 |
| October 4, 2005 D.I. 9565 | 8/1/05 – 8/31/05 | $106,796.25 | $5,046.99 (Stroock) $18,550.00 (Navigant) | | $85,437.00 | $23,596.99 |
| November 1, 2005 D.I. 10951 | 9/1/05 – 9/30/05 | $67,697.50 | $1,399.68 (Stroock) $11,197.50 (Navigant) | | $54,158.00 | $12,597.18 |
| November 29, 2005 D.I. 11202 | 10/1/05 – 10/31/05 | $98,216.75 | $1,611.30 (Stroock) $11,582.50 (Navigant) | | $78,573.40 | $13,193.80 |
| January 9, 2006 D.I. 11507 | 11/1/05 – 11/30/05 | $104,348.00 | $2,847.45 (Stroock) $71,598.50 (Navigant) | | $83,478.40 | $74,445.95 |
| January 30, 2006 D.I. 11655 | 12/1/05 – 12/31/05 | $96,855.00 | $1,379.53 (Stroock) $20,317.49 (Navigant) | | $77,484.00 | 21,697.02 |
| March 1, 2006 D.I. 11921 | 1/1/06 – 1/31/06 | $73.383.00 | $1,810.85 (Stroock) $14,124.01 (Navigant) | | $58.706.40 | $15,934.86 |
| March 28, 2006 D.I. 12134 | 2/1/06 – 2/28/06 | $105,083.75 | $1,434.62 (Stroock) $25,971.70 (Navigant) | | $84.067.00 | $27,406.32 |
| May 2, 2006 D.I. 12354 | 3/1/06 – 3/31/06 | $145,189.50 | $2,512.81 (Stroock) $25,838.37 (Navigant) | | $116,151.60 | $28,351.18 |
| May 31, 2006    DI. 12558 | 4/1/2006 – 4/30/2006 | $116,817.00 | $2,141.42 (Stroock) $7,425.00 (Navigant) | | $93,453.60 | $9,566.42 |
| July 6, 2006 D.I. 12748 | 5/1/2006 – 5/31/2006 | $121,304.50 | $1,838.71 (Stroock) $17,493.75 (Navigant) | | $97,043.60 | $19,332.46 |
| August 1, 2006 D.I. 12899 | 6/1/2006 – 6/30/2006 | $94,856.50 | $1,869.66 (Stroock) $38,548.75 (Navigant) | | $75,885.20 | $40,418.41 |
| August 30, 2006 D.I. 13117 | 7/1/2006 – 7/31/2006 | $97,397.25 | $496.76 (Stroock) $30,280.00 (Navigant) | | $77,917.80 | $30,776.76 |
| October 2, 2006 D.I. 13336 | 8/1/2006 – 8/31/2006 | $131,856.25 | $98.34 (Stroock) $98,317.50 (Navigant) | | $105,485.00 | $98,415.84 |

5

SSL-DOCS1 1837214v2

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| November 2, 2006<br>D.I. 13559 | 9/1/2006 –<br>9/30/2006 | $150,960.00 | $4,147.01 (Stroock)<br>$91,179.11 (Navigant) | $120,768.00 | $95,326.12 |
| November 29, 2006<br>D.I. 13838 | 10/1/06 -<br>10/31/06 | $196,223.50 | $915.14 (Stroock)<br>$147,374.20 (Navigant) | $156,978.89 | $148,289.34 |
| January 12, 2007<br>D.I. 14292 | 11/1/06<br>11/30/06 | $188,638.00 | $3,370.16 (Stroock)<br>$133,438.70 (Navigant) | $150,910.40 | $136,808.86 |
| January 29, 2007<br>D.I. 14415 | 12/1/06 –<br>12/31/06 | $99,832.00 | $5,752.89 (Stroock)<br>$55,245.22 (Navigant) | $79,865.60 | $60,998.11 |
| March 8, 2007<br>D.I. 14810 | 1/1/07<br>1/31/07 | $77,582.00 | $962.06 (Stroock)<br>$90,474.74 (Navigant) | $62,065.60 | $91,436.80 |
| April 10, 2007<br>D.I. 15132 | 2/1/07<br>2/28/07 | $119,140.50 | $3,092.88 (Stroock)<br>$77,301.25 (Navigant) | $95,312.40 | $80,394.13 |
| May 1, 2007<br>D.I. 15457 | 3/1/07<br>3/31/07 | $135,228.00 | $6,635.25 (Stroock)<br>$104,674.53 (Navigant) | $108,182.40 | $111,309.78 |
| June 22, 2007<br>D.I. 16136 | 4/1/07<br>4/30/07 | $177,646.00 | $815.81 (Stroock)<br>$173,437.45 (Navigant) | $142,116.80 | $174,253.26 |
| July 17, 2007<br>D.I. 16309 | 5/1/07<br>5/31/07 | $205,937.25 | $6,405.01 (Stroock)<br>$162,431.03 (Navigant) | $164,749.80 | $168,836.04 |
| August 10, 2007<br>D.I. 16528 | 6/1/07<br>6/30/07 | $225,650.50 | $5,929.97 (Stroock)<br>$200,294.81 (Navigant) | | |

6

## Quarterly Fee Applications

| Date Filed | Period Covered | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 (First) | 4/12/01– 6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 (Second) | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 (Third) | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43[*] | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 (Fourth) | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60* | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 (Fifth) | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78* | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 (Sixth) | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45* | $224,534.21[1] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 (Seventh) | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75* | $136,886.40[2] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |

---

[*]   These amounts relate to the Committee's Asbestos Issues Expert.

[1]   Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[2]   Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

7

|  | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 20, 2003<br>D.I. 3815<br>(Eighth) | 1/1/03 –<br>3/31/03 | $224,358.50 | $9,424.04<br>$1,077.80* | $224,615.50[3] | $9,424.04<br>(Stroock)[3]<br>$1,077.80<br>(Chambers)[3] |
| August 29, 2003<br>D.I. 4357<br>(Ninth) | 4/1/03 –<br>6/30/03 | $215,903.50 | $2,726.28<br>$67,628.50* | $215,903.50[4] | $2,726.28<br>(Stroock)[4]<br>$67,628.50<br>(Chambers)[4] |
| December 5, 2003<br>D.I. 4778<br>(Tenth) | 7/1/03 –<br>9/30/03 | $218,222.00 | $4,339.46<br>$36,865.19* | $218,222.00[5] | $4,339.46<br>(Stroock)[5]<br>$36,865.19<br>(Chambers)[5] |
| March 2, 2004<br>D.I. 5212<br>(Eleventh) | 10/1/03 –<br>12/31/03 | $215,718.50 | $5,950.82<br>$100,349.50* | $215,718.50[6] | $5,922.67<br>(Stroock)[6]<br>$100,349.50<br>(Chambers)[6] |
| May 18, 2004<br>D.I. 5597<br>(Twelfth) | 1/1/04 –<br>3/31/04 | $254,857.00 | $9,965.36<br>$83,147.07* | $254,857.00[7] | $9,965.36<br>(Stroock)[7]<br>$83,147.07<br>(Navigant)[7] |
| August 26, 2004<br>D.I. 6269<br>(Thirteenth) | 4/1/04 –<br>6/30/04 | $353,629.50 | $7,760.42<br>$272,474.16* | $353,629.50[8] | $7,760.42<br>(Stroock)[8]<br>$272,474.16<br>(Navigant)[8] |

---

[3]  Court Order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

[4]  Amended Court Order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

[5]  Court Order dated April 26, 2004 approved fees in the amount of $218,222.00 and expenses in the amount of $41,204.65.

[6]  Court Order dated June 16, 2004 approved fees in the amount of $215,718.50 and expenses in the amount of $106,272.17.

[7]  Court Order dated September 27, 2004 approved fees in the amount of $254,857.00 and expenses in the amount of $93,011.96.

[8]  Court Order dated January 25, 2005 approved fees in the amount of $353,629.50 and expenses in the amount of $280,234.58.

8

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| November 10, 2004<br>D.I. 6871<br>(Fourteenth) | 7/1/04 – 9/30/04 | $226,702.50 | $6,705.08<br>$67,569.50* | $226,702.50[9] | $6,705.08 (Stroock)[9]<br>$67,569.50 (Navigant)[9] |
| February 22, 2005<br>D.I. 7851<br>(Fifteenth) | 10/1/04 – 12/31/04 | $653,133.20 | $25,830.19<br>$140,422.11* | $648,355.70[10] | $25,830.19 (Stroock)[10]<br>$140,422.11 (Navigant)[10] |
| May 16, 2005<br>D.I. 8468<br>(Sixteenth) | 1/1/05- 3/31/05 | $352,289.50 | $12,746.23<br>$40,104.23* | $349,644.00 | $12,746.23 (Stroock)[11]<br>$40,104.23 (Navigant) |
| August 19, 2005<br>D.I. 9225<br>(Seventeenth) | 4/1/-5 – 6/30/05 | $340,821.25 | $9,261.40<br>$54,204.34* | $340,096.25[12] | $9,261.40 (Stroock)<br>$54,204.34 (Navigant) |
| November 18, 2005<br>D.I. 11118<br>(Eighteenth) | 7/1/05 – 9/30/05 | $291,843.50 | $8,534.71<br>$31,958.50* | $291,843.50[13] | $8,534.71 (Stroock)<br>$31,958.50 (Navigant) |
| February 15, 2006<br>D.I. 11798<br>(Nineteenth) | 10/1/05 – 12/31/05 | $299,419.75 | $5,838.28<br>$103,498.49* | $299,419.75[14] | $5,838.69 (Stroock<br>$103,498.49 (Navigant) |

[9]  Court Order dated March 22, 2005 approved fees in the amount of $226,702.50 and expenses in the amount of $74,274.58.

[10]  Court Order dated June 29, 2005 approved fees in the amount of $648,335.70 and expenses in the amount of $166,252.30.

[11]  Court Order dated September 27, 2005 approved fees in the amount of $349,644.00 and expenses in the amount of $52,850.46.

[12]  Court Order dated December 19, 2005 approved fees in the amount of $340,096.25 and expenses in the amount of $63,465.74.

[13]  Court Order dated March 24, 2006 approved fees in the amount of $291,843.50 and expenses in the amount of $40,493.21.

[14]  Court Order dated June 16, 2006 approved fees in the amount of $299,419.75 and expenses in the amount of $109,337.18.

9

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 26, 2006<br>D.I. 12533<br>(Twentieth) | 1/1/2006 –<br>3/31/2006 | $323,566.25 | $5,758.28<br>$65,934.98* | $323,451.25[15] | $5,758.28<br>(Stroock)<br>$64,810.58<br>(Navigant) |
| August 17, 2006<br>D.I. 13006<br>(Twenty-First) | 4/1/2006 –<br>6/30/2006 | $332,978.00 | $5,849.79<br>$63,467.50* | $332,978.00[16] | $5,849.70<br>(Stroock)<br>$63,467.50<br>(Navigant) |
| November 29,<br>2006<br>D.I. 13835<br>(Twenty-Second) | 7/1/2006 –<br>9/30/2006 | $380,213.50 | $4,742.11<br>$219,776.61* | $380,213.50[17] | $4,742.11<br>(Stroock)<br>$219,776.61<br>(Navigant) |
| March 1, 2007<br>D.I. 14717<br>(Twenty-Third) | 10/1/2007 –<br>12/31/07 | $484,693.50 | $10,038.19<br>$336,058.12* | $484,693.50[18] | $10,038.19<br>(Stroock)<br>$336,058.12<br>(Navigant) |
| June 4, 2007<br>D.I. 15949<br>(Twenty-Fourth) | 1/1/07 -<br>3/31/07 | $331,950.50 | $10,690.15<br>$272,450.52* | | |

---

[15]  Court Order dated September 25, 2006 approved fees in the amount of $323,451.25 and expenses in the amount of $71,130.16.

[16]  Court Order dated December 18, 2006 approved fees in the amount of $332,978.00 and expenses in the amount of $69,317.29.

[17]  Court Order dated May 3, 2007 approved fees in the amount of $380,213.50 and expenses in the amount of $224,518.72.

[18]  Court Order dated June 20, 2007 approved fees in the amount of $484,693.50 and expenses in the amount of $346,096.31.

10

WR GRACE & CO
ATTACHMENT B
APRIL 1, 2007 - JUNE 30, 2007

|  | Hours | Rate | Amount | Years in Position |
|---|---|---|---|---|
| **Partners** | | | | |
| DiBernardo, Ian G. | 3.80 | $ 660 | $      2,508.00 | 2 |
| Greenberg, Mayer | 3.70 | 760 | 2,812.00 | 9 |
| Kruger, Lewis | 84.00 | 860 | 72,240.00 | 37 |
| Pasquale, Kenneth | 208.60 | 720 | 150,192.00 | 8 |
| Speiser, Mark A. | 1.30 | 815 | 1,059.50 | 20 |
| Wintner, Mark | 2.50 | 805 | 2,012.50 | 26 |
| | | | | |
| **Associates** | | | | |
| Berg, Madelaine | 3.00 | 605 | 1,815.00 | 17 |
| Eichler, Mark | 8.90 | 605 | 5,384.50 | 9 |
| Gutierrez, James S. | 46.90 | 420 | 19,698.00 | 4 |
| Holob, Marissa J. | 0.80 | 495 | 396.00 | 2 |
| Krieger, Arlene G. | 498.20 | 605 | 301,411.00 | 23 |
| Papir, Ryan M. | 3.30 | 465 | 1,534.50 | 2 |
| Pearsall, Alison | 10.80 | 380 | 4,104.00 | 3 |
| | | | | |
| | | | | |
| **Paraprofessionals** | | | | |
| Davison, Andrew S. | 2.60 | 165 | 429.00 | 2 |
| Holzberg, Ethel H. | 68.10 | 255 | 17,365.50 | 35 |
| Jones, Margaret | 5.00 | 175 | 875.00 | 6 |
| Luo, Vivian | 27.90 | 210 | 5,859.00 | N/A |
| Mohamed, David | 183.50 | 165 | 30,277.50 | 17 |
| | | | | |
| **Sub Total** | 1162.90 | | $ 619,973.00 | |
| **Less 50% Travel** | -15.25 | | (10,739.25) | |
| **Total** | 1147.65 | | $ 609,233.75 | |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| W. R. GRACE & CO., <u>et al.</u>[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## TWENTY-FIFTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., <u>et al.,</u> FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED <u>DURING THE PERIOD FROM APRIL 1, 2007 THROUGH JUNE 30, 2007</u>

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

accordance with the Administrative Fee Order (defined below) for interim allowance of

---

[1]    The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc.,  Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA  Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents as follows:

## INTRODUCTION

1.      By this application (the "Application"), Stroock seeks (i) an interim allowance of compensation for the professional services rendered by Stroock as counsel for the Committee for the period from April 1, 2007 through June 30, 2007 (the "Compensation Period") in the aggregate amount of $609,233.75 representing 875.8 hours of professional services and 286.8 hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Stroock during the Compensation Period in connection with the rendition of such professional services and paraprofessional services in the aggregate amount of $13,150.79, as well as the fees and expenses of the asbestos issues expert employed by the Committee pursuant to the Court's June 22, 2001 Order Authorizing the Retention of Experts (the "Asbestos Issues Expert") in respect of services rendered in the months of April, May and June of 2007 in the aggregate amount of $536,163.29.

2.      Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

## BACKGROUND

3.      On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code and has continued in the management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

2

Bankruptcy Code.  Pursuant to an order of the Court, the Debtors' chapter 11 cases have been procedurally consolidated and are being jointly administered.

4.      The Debtors operate a worldwide specialty chemicals and materials business and employ approximately 3860 full and part-time employees.  On a consolidated basis, for the fiscal year 2000, Grace reported a net loss of $89.7 million[2] from $1.59 billion in net revenues.  The Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor subsidiaries and affiliates.

5.      On April 12, 2001, the United States Trustee formed the Committee.  During the first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter 11 cases.  The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP (n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel.  On December 3, 2003, a second amended notice of appointment of the Committee was filed by the United States Trustee. On July 10, 2006, a third amended notice of appointment of the Committee was filed by the United States Trustee.

6.      The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims and asbestos-related property damage claims against the Debtors (collectively, the "Asbestos Claim

---

[2]    The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related charge to earnings recorded in the fourth quarter of 2000.

3

Committees"). On June 18, 2001, the United States Trustee appointed an official committee to represent the interests of equity security holders of the Debtors (the "Equity Committee").

7.     By order dated May 24, 2004, the Court authorized the appointment of a legal representative for future asbestos claimants (the "Futures Representative").

8.     By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001. The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

9.     This is the twenty-fifth quarterly interim application Stroock has filed with the Court for an allowance of compensation and reimbursement of expenses for services rendered to the Committee. This Application is submitted pursuant to the terms of the Administrative Order Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, approved by the Court on May 3, 2001 as amended by order dated April 19, 2002 (collectively, the "Administrative Fee Order").

10.     In accordance with the procedures established by the Administrative Fee Order, Stroock had, at the time of filing this Application, received payment from the Debtors for 80% of the fees and 100% of Stroock's expenses requested, and not objected to, in the April 2007 fee statement encompassed within this Compensation Period. Stroock has not yet received payment for the fees and expenses requested in the May 2007 fee statement for which a certificate of no objection has been filed, or for the June 2007 fee statement. In addition, Stroock has received payment from the Debtors representing the fees and expenses of Navigant Consulting, Inc.

4

("Navigant"), formerly known as Chambers Associates, the Asbestos Issues Expert for the Committee, for the month of April 2007 in the amount of $173,437.45, but has not received payment in respect of the fees and expenses of the Asbestos Issues Expert for the months of May 2007 and June 2007.  Applicant has received no other payments and no promises for payment from any source for services rendered in connection with these cases for the months encompassing this Compensation Period other than as immediately set forth above.  There is no agreement or understanding between the Applicant and any other person (other than members of Stroock) for the sharing of compensation to be received for the services rendered in these cases.

11.     As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit "A," all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

## SUMMARY OF SERVICES RENDERED

12.     Since being retained by the Committee, Stroock has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtors' estates.  The variety and complexity of these cases and the need to act or respond on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by personnel from several legal disciplines, on an as-needed basis, including in certain instances, working into the evening and on weekends.

13.     Stroock maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee.  Such time records were made contemporaneously with the rendition of services by the person rendering

5

such services and in the ordinary course of Stroock's practice, and are presented in compliance with Delaware Local Rule 2016-2(d) amended effective as of February 1, 2006. A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Compensation Period is annexed hereto as Exhibit "B". In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

14.     Stroock also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection. A schedule of the categories of expenses and amounts for which payment is requested is annexed hereto as Exhibit "D".

15.     Stroock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

16.     The following summary of the services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is merely an attempt to highlight certain of these areas in which services were rendered to the Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

6

### Claim Analysis Objection, Resolution & Estimation (Asbestos) -- Category 0003

17.      As reflected in prior compensation applications, in mid-November 2004, the Debtors filed a reorganization plan and numerous related pleadings including their motion seeking the estimation of asbestos claims and the establishment of a schedule and procedures for carrying out the estimations (the "Estimation Motion"), and their motion to establish post-confirmation litigation protocols for liquidating asbestos claims (the "Case Management Motion").

18.      During prior compensation periods, the Court approved a form of case management order ("CMO") to govern the pre-confirmation estimation of asbestos personal injury claims (the "PI CMO") and the related form of questionnaire (the "Questionnaire") to be used by asbestos personal injury claimants who had commenced pre-petition litigation against the Debtors (the "PI Pre-Petition Litigation Claimants") and two case management orders for property damage claims the ("PD CMOs"); one to govern the Debtors' claims objection process and the other to govern the pre-confirmation estimation of property damage claims ("PD claims"). July 12, 2006 was the deadline set for Pre-Petition Litigation Claimants to return completed Questionnaires. November 15, 2006 was the deadline set for PI-Pre-Petition Litigation Claimants to file proofs of claim.

19.      During this Compensation Period, Stroock prepared for and attended five depositions, including the depositions of David Siegel and Fred Zaremby, attended to PI Estimation issues and PI expert issues, participated in a number of estimation-related discussions with Navigant, the Committee's Asbestos Issues Expert and, as applicable, with representatives

7

for the Debtors and the Equity Committee, attended to expert rebuttal reports filed on issues other than valuation and to expert reports filed on the issue of valuation and related back-up materials and attended to PIQ data and third party discovery.

20.    In addition, during this Compensation Period, Stroock attended to numerous PI estimation and related discovery matters including (i) the numerous pleadings filed in connection with the Court's supplemental orders regarding the discovery of x-rays, B-reads and other related medical materials and application of the consulting expert privilege to those materials, including the Debtors' subsequent motions seeking to compel compliance with those orders and the objections filed separately by the Asbestos PI Committee and certain law firms representing PI Pre-Petition Litigation Claimants thereto; (ii) the motions for protective orders filed by the Asbestos PI Committee and the future claimants' representative (the "FCR") and counsel for certain law firms representing PI Pre-Petition Litigation Claimants; (iii) the Debtors' motions to compel certain post-confirmation asbestos trusts to produce documents and the oppositions filed thereto; and (iv) the  Asbestos PI Committee's and FCR's motion to compel the Debtors' to produce documents providing information in respect of the Debtors' pre-petition estimates of their potential asbestos personal injury liabilities and Debtors' motions for a protective order and to quash such discovery.

21.    Further, as reported in the prior compensation application,  BNSF Railway Company ("BNSF") filed a motion seeking to either clarify the scope of the preliminary injunction extant in these cases as applied to the asbestos personal injury actions commenced against BNSF or, alternatively, modify that injunction to take discovery of certain insurance carriers, and the Debtors filed a motion to extend the preliminary injunction to encompass those

8

asbestos claim actions against BNSF, which motions were the subject of responses filed by a number of parties. These matters were argued before the Court during this Compensation Period, as were the separate motions for reconsideration filed by the Debtors and the State of Montana ("Montana") to the Court's April 2007 Memorandum Opinion and Order denying the Debtors' motion to expand the preliminary injunction to encompass the over 100 asbestos personal injury state court actions brought against Montana, and the motion for reconsideration filed by Montana to the Court's April 2007 Memorandum Opinion and Order denying Montana's motion for relief from the automatic stay to join the Debtors as defendants in those asbestos personal injury actions. Stroock reviewed the Court's Memorandum Opinions and Orders and all the related pleadings filed thereto and communicated with the Committee about these matters.

22.     Also, during this Compensation Period, Stroock attended to various PD claims-related matters, including the pre-trial memoranda filed in connection with the evidentiary hearings held on the Debtors' objections to PD claims on the grounds of lack of product identification, the several settlements of PD claims filed by the Debtors, and pleadings filed on behalf of Anderson Memorial in connection with and in opposition to the discovery it sought from the Debtors and such party's motion for class certification.

23.     As reported in the prior compensation applications, Judge Fitzgerald issued a memorandum decision and order (the "ZAI Decision") on the ZAI-related cross-motions for summary judgment previously filed by the Debtors and the ZAI Claimants. During this Compensation Period, the District Court issued a Memorandum Decision and Order (the "SJ Opinion") denying the ZAI Claimants' motion for leave to appeal the ZAI Decision and the ZAI Claimants moved for reconsideration of Judge Buckwalter's SJ Opinion and also moved before

9

Judge Fitzgerald for authorization to conduct discovery of the Debtors in respect of the Debtors'

conduct during the summary judgment proceedings before that Court. Stroock attended to the

ZAI Claimants' motions, the Debtors' responses in opposition, and to Judge Buckwalter's

subsequent order denying the ZAI Claimants' reconsideration motion. Stroock has expended

349.6 hours on this category for a fee of $234,073.00.

## Sales/Uses and Leases (Section 363) – Category 0009

24.     During this Compensation Period, the Debtors concluded their negotiations with

potential purchasers of the Debtors' Washcoat business, and filed a motion seeking approval to

sell the property. Stroock reviewed the sale motion and proposed form of order, the Asset

Purchase Agreement and other related documents and agreements, raised and discussed issues of

concern with Debtors' counsel and with Capstone and attended to Capstone's memorandum to

the Committee discussing the proposed sale. Stroock has expended 28.3 hours on this category

for a fee of $17,506.50.

## Business Operations -- Category 0013

25.     During this Compensation Period, Stroock attended to Capstone's reports on the

Debtors' 2007 business plan and first quarter 2007 operations and discussed those reports with

Capstone. Stroock has expended 6.2 hours on this category for a fee of $3,802.00.

## Case Administration -- Category 0014

26.     As reported in prior monthly compensation applications, these chapter 11 cases

were reassigned to District Court Judge Alfred Wolin in November 2001 and referred to

10

Bankruptcy Court Judge Judith Fitzgerald, and then reassigned to District Court Judge Ronald L. Buckwalter following Judge Wolin's recusal from these cases.

27.     During this Compensation Period, Stroock continued to closely monitor the items on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each of the pending adversary proceedings and appeals, to ensure that the Committee was fully informed about all pending motions, adversary proceedings and appeals and that Stroock would be ready to timely respond on behalf of the Committee, as might be applicable.  Stroock continued to engage the Debtors' counsel and Capstone on an on-going basis with respect to pending matters and information requests.  In addition, during this Compensation Period, Stroock and the Debtors' representatives engaged in a number of conference calls during which pending motions, Court hearings and upcoming matters were discussed, as were various estimation-related issues.  Some of those services are in this Category, and others are in Category 0017 (Committee, Creditors) or Category 0037 (Hearings).  Also, during this Compensation Period, Stroock prepared a response to the Fee Auditor's initial report on Stroock's Twenty-Third Quarterly Fee Application.  Stroock has expended 208.1 hours on this category for a fee of $46,394.50.

### Claims Analysis, Objection and Resolution (Non-Asbestos) -- Category 0015

28.     During this Compensation Period, the Debtors filed pleadings seeking to settle a number of non-asbestos claims and actions including the proposed settlement with (i) Colowyo Coal Company, over amounts owing to the Debtors under the parties' partnership and other related agreements, (ii) the Minnesota Pollution Control Agency ("MPCA"), in respect of the Debtors' alleged liability for certain environmental remediation costs, and (iii) TrizecHahn-Swig

11

and Tahari resolving the parties' lease-related claims against one another.  In addition, during

this Compensation Period, the New Jersey Department of Environmental Protection ("NJDEP")

filed a motion for leave to file a late proof of claim in an amount in excess of $30.0 million.

Stroock reviewed each of the proposed settlements and NJDEP's motion and all related

agreements and documentation, discussed these matters with Debtors' counsel raising questions

where necessary, reviewed applicable case law, discussed these matters with the Committee and,

with respect to the NJDEP's motion, prepared pleadings in opposition to the motion.  Stroock

has expended 66.2 hours on this category for a fee of $40,553.50.

### Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017

29.     During this Compensation Period, Stroock communicated with the members of

the full Committee through numerous memoranda and telephone calls.  In order to keep the

Committee fully informed of all of the pending matters in these cases, and thus enable the

Committee to take informed positions on those issues, Stroock reviewed and summarized the

motions, other pleadings and notices filed by the Debtors and other parties in interest in these

cases and the objections and responses filed, raised issues the Committee should be aware of,

made recommendations to the Committee concerning appropriate actions to be taken with regard

to the pleadings and communicated with members of the Committee regarding the positions to be

taken.  In addition, Stroock engaged counsel and other representatives for the Debtors, and other

parties and movants, as applicable, with the Committee's questions, concerns and comments,

negotiated whenever and to the extent possible consensual resolutions of outstanding issues and

acceptable forms of proposed orders, stipulations and settlement agreements and advised the

Committee of the Court's hearings and rulings.

12

30.    In addition, during this Compensation Period, Stroock prepared memoranda to the

Committee discussing the over a dozen hearings held before Judge Fitzgerald and the opinions

and orders entered by the Court and addressing the many pleadings and other materials

considered by the Court, including the discovery and PI Estimation-related pleadings, the ZAI

and other PD Claims-related pleadings identified in Category 0003-Claims Analysis Objection,

Resolution and Estimation (Asbestos), the NJDEP's motion for leave to file a substantial late

claim, and the Debtors' motion to further extend their exclusive periods.  Further during this

Compensation Period, Stroock continued to discuss with the Committee and Navigant, and with

the Debtors' representatives, various PI Estimation and plan-related matters.

31.    Through its correspondence and communication with the Committee, Stroock has

assisted the Committee in fulfilling its statutory duties to make informed decisions and express

the Committee's views regarding the issues which arise in these cases, to support the

establishment of appropriate processes for the estimation of the Debtors' asbestos liabilities, and

participate in the estimation proceedings and in the preparation of a plan providing appropriate

treatment for the creditors represented by the Committee.  Stroock has expended 186.2 hours on

this category for a fee of $97,112.00.

### Fee Application, Applicant -- Category 0018

32.    During this Compensation Period, Stroock prepared its fee statements for the

months of February 2007, March 2007, April 2007, and May 2007 and related notices, affidavits

of service and certifications of no objection where applicable.  Stroock also prepared its Twenty-

Fourth Quarterly Fee Application covering the period from January 1, 2007 through March 31,

2007 (the "Prior Compensation Application"), including a narrative section summarizing the

13

services rendered during that period by Stroock and numerous fee and expense schedules, as required by the Administrative Fee Order entered by the Court. Stroock has expended 77.6 hours on this category for a fee of $26,123.50.

### Creditor Inquiries -- Category 0019

33.     During this Compensation Period, Stroock responded to inquiries from unsecured creditors with respect to the status of these cases, the upcoming estimation of asbestos liabilities and related plan issues, and the results of and matters addressed during the hearings held during this Compensation Period. Stroock has expended 4.0 hours on this category for a fee of $2,881.00.

### Fee Application, Others -- Category 0020

34.     During this Compensation Period, Stroock prepared notices, affidavits of service and certifications with respect to Capstone's monthly fee statements for the months of January 2007, February 2007, March 2007 and April 2007 and with respect to Capstone's Twelfth Quarterly Fee Application. Stroock also attended to fee applications of other professionals retained in these cases, and to final reports issued by the Fee Auditor. Stroock has expended 17.7 hours on this category for a fee of $6,836.50.

### Employee Benefits, Pension -- Category 0021

35.     During this Compensation Period, the Debtors filed a motion seeking authorization to make minimum funding contributions in an aggregate amount in excess of $70 million to their defined benefit plans during the period from July 15, 2007 through April 15, 2008 (the "Pension Funding Motion"). Stroock reviewed the Pension Funding Motion and additional actuarial and other pension-related information received, communicated with the

14

Committee and with counsel for the Debtors and reviewed the proposed final form of order authorizing all but the April 2008 payment to be made. Stroock has expended 7.2 hours on this category for the fee of $4,768.00.

## Environmental Matters/Regulations/Litigation -- Category 0022

36.     As reflected elsewhere in this Application, during this Compensation Period, the Debtors sought approval for the sale of their Washcoat business and the proposed settlement of certain environmental-related claims and issues. Services in this category relate to Stroock's attention to (i) the indemnification and environmental liability provisions of the asset purchase agreement for the Washcoat sale, (ii) environmental issues in respect of the proposed MPCA settlement, and (iii) environmental documentation and issues in respect of evaluating the NJDEP's motion to file a late claim. Stroock has expended 13.4 hours on this category for fee of $6,172.00.

## Investigations -- Category 0031

37.     During this Compensation Period, Stroock attended to opinions issued in the United States Government 's Libby-related civil action against the Debtors' pending in the State of Montana. Stroock has expended 0.50 hours on this category for fee of $360.00.

## Travel -- Non Working -- Category 0035

38.     Stroock's fees in this category during this Compensation Period relate to Stroock attorneys traveling (i) from and to New York for the omnibus hearing before Judge Fitzgerald on April 2, 2007 in Wilmington, DE, (ii) from and to New York for the depositions of Fred Zaremby and David Siegel in Washington, DC in April 2007 and May 2007, respectively, (iii) from and to New York for the omnibus hearings before Judge Fitzgerald on May 21, 2007 in

15

Wilmington, DE, and on June 26, 2007 in Pittsburgh and the additional PI Estimation-related hearing on June 25, 2007 in Pittsburgh. Stroock has expended 30.6 hours on this category for a fee of $21,478.50 for which Stroock is seeking payment in the amount of $10,739.25.

### Plan and Disclosure Statement -- Category 0036

39.    As reported in prior compensation applications, Judge Fitzgerald issued an order (the "Exclusivity Extension Order") extending the Debtors' exclusive period to file a plan through the July 24, 2007 omnibus hearing, and an appeal was taken by the Asbestos Claim Committees and the Futures Representative to the Court's order. Subsequently, the appellants' appealed to the Third Circuit from the District Court's Memorandum and Order affirming the Court's Exclusivity Extension Order and filed a motion with the Court of Appeals seeking expedited consideration of the appeal, which the Third Circuit denied just prior to the end of the prior compensation period.

40.    During this Compensation Period, the Debtors filed a motion seeking to further extend their exclusive periods and Stroock attended to the motion and communicated with the Committee about this matter. In addition, during this Compensation Period, Stroock continued to attend to plan-related information and analyses. Stroock expended 7.6 hours on this category for a fee of $4,853.00.

### Hearings -- Category 0037

41.    During this Compensation Period, Judge Fitzgerald held three omnibus hearings and approximately ten additional hearings and PD trial dates, in Pittsburgh, PA and Wilmington, DE, which as described elsewhere in this Compensation Application addressed typical chapter 11 case matters and numerous PI Estimation and PD litigation-related matters and issues.

16

Stroock reviewed each of the agenda notices and all relevant pleadings, orders, stipulations, pre-trial motions and other documentation in advance of these hearings and participated in a number of conference calls discussing these matters. Stroock prepared for and attended the hearings, and advocated the Committee's positions, as appropriate. After the hearings, Stroock, as reflected elsewhere in this Application, prepared memoranda informing the Committee of the arguments made at, and the results of, the hearings. Stroock expended 141.9 hours on this category for a fee of $95,665.50.

### Employment Applications - Others – Category 0040

42.     During this Compensation Period, several retention-related applications were filed including the Equity Committee's motion seeking to amend the Court's prior order approving its retention of an asbestos consulting expert. Stroock reviewed the motions and objections filed thereto. Stroock expended 0.6 hours on this category for a fee of $363.00.

### Tax Issues – Category 0047

43.     During this Compensation Period, the Debtors filed a motion seeking to have the automatic stay modified so that they could contest in the United States Tax Court a deficiency notice they received for over $30.0 million issued by the IRS. Stroock reviewed and analyzed the tax rules raised by the motion and prepared a memorandum for the Committee discussing the motion and the tax rules. Stroock expended 17.2 hours on this category for a fee of $11,031.50.

### FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

44.     The factors to be considered in awarding attorneys fees have been enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547 F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts. Stroock

17

respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

The Time and Labor Required.  The professional services rendered by Stroock on behalf of the Committee have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the complex issues encountered by the Committee with skill and dispatch.  Occasionally, Stroock has been required to perform these services under significant time constraints requiring work late into the evening and on weekends.  The services rendered by Stroock were performed efficiently, effectively and economically.

The Novelty and Difficulty of Questions.  Novel and complex issues have already arisen in the course of these Chapter 11 cases, and it can be anticipated that other such issues will be encountered.  In this case, as in many others in which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

The Skill Requisite to Perform the Legal Services Properly.  Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the

18

resolution of issues, are and will continue to contribute to the

maximization of the distributions to the Debtors' unsecured creditors.

The Preclusion of Other Employment by Applicant Due to Acceptance of
the Case. Due to the size of Stroock's insolvency department, Stroock's
representation of the Committee has not precluded its acceptance of new
clients. However, the volume of the matters needing attention on a
continuing basis has required several of the attorneys to commit
significant portions of their time to these cases.

The Customary Fee. The fee sought herein is based upon Stroock's
normal hourly rates for services of this kind. Stroock respectfully submits
that the fee sought herein is not unusual given the magnitude and
complexity of these cases and the time expended in attending to the
representation of the Committee, and is commensurate with fees Stroock
has been awarded in other cases, as well as with fees charged by other
attorneys of comparable experience.

Whether the Fee is Fixed or Contingent. Pursuant to §§ 330 and 331 of
the Bankruptcy Code, all fees sought by professionals employed under
§ 1103 of the Code are contingent pending final approval by this Court,
and are subject to adjustment dependent upon the services rendered and
the results obtained.

19

Time Limitations Imposed by Client or Other Circumstances.  As already
indicated, Stroock has attended to the various issues arising in these cases.
Occasionally, Stroock has had to perform those services under significant
time constraints requiring attorneys assigned to these cases to work
evenings and on weekends.

The Amount Involved and Results Obtained.  Through the efforts of
Stroock, the Committee has been an active participant in these Chapter 11
cases from the very first days of its formation, and its assistance, as well as
constructive criticism, has greatly contributed to the efficient
administration of these cases.

The Experience, Reputation and Ability of the Attorneys.  Stroock has one
of the largest and most sophisticated insolvency practices in the nation and
has played a major role in numerous cases of national import including:
Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel
Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation,
Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The
Charter Company, Federated Department Stores, G. Heileman Brewing
Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc.,
Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation,
Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc.,
Flushing Hospital and Medical Center, Planet Hollywood International,
Anchor Glass Container Corporation, Beloit Corporation in the

20

Harnischfeger Industries Chapter 11 Cases, RSL COM U.S.A. Inc, USG
Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings.
Stroock's experience enables it to perform the services described herein
competently and expeditiously.  In addition to its expertise in the area of
corporate reorganization, Stroock has already frequently called upon the
expertise of its partners and associates in the litigation, ERISA, tax,
environmental and intellectual property law areas to perform the wide
ranging scope of the legal work necessitated by these cases.

The "Undesirability" of the Case.  These cases are not undesirable, but as
already indicated, have required a significant commitment of time from
several of the attorneys assigned hereto.

Nature and Length of Professional Relationship.  As described above,
Stroock has been actively rendering services on behalf of the Committee
as necessary and appropriate from April 12, 2001 through to the present.

## ALLOWANCE OF COMPENSATION

45.     The professional services rendered by Stroock required a high degree of
professional competence and expertise so that the numerous issues requiring evaluation and
determination by the Committee could be addressed with skill and dispatch and have, therefore,
required the expenditure of substantial time and effort.  It is respectfully submitted that the
services rendered to the Committee were performed efficiently, effectively and economically,
and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole
and the Debtors' estates.

21

46.     With respect to the level of compensation, § 330 of the Bankruptcy Code
provides, in pertinent part, that the Court may award to a professional person (including
attorneys for a creditors' committee): "Reasonable compensation for actual necessary services
rendered by [such] . . . professional person.  11 U.S.C. § 330.  Section 330 further states that the
court should take into consideration, inter alia, the nature, extent, and value of services
performed, as well as the cost of comparable services other than in a case under this title.  Id.
The clear Congressional intent and policy expressed in this statute is to provide for adequate
compensation in order to continue to attract qualified and competent bankruptcy practitioners to
bankruptcy cases.

47.     The total time spent by Stroock attorneys and paraprofessionals during the
Compensation Period for which Stroock seeks payment was 1162.6 hours.  Such services have a
fair market value of $609,233.75.  The work involved, and thus the time expended, was carefully
assigned in light of the experience and expertise required for a particular task.

48.     As shown by this Application and supporting documents, Applicant spent its time
economically and without unnecessary duplication of time.  Attached hereto as Exhibit "C" are
summaries of the hours expended by the attorneys and paraprofessionals during the
Compensation Period, their normal hourly rates, and the value of their services.

49.     In addition, Stroock incurred actual out-of-pocket expenses in connection with the
rendition of the professional services to the Committee in the sum of $13,150.79 for which
Stroock respectfully requests reimbursement in full.  The disbursements and expenses have been
incurred in accordance with Stroock's normal practice of charging clients for expenses clearly

22

related to and required by particular matters. Such expenses were sometimes incurred to enable

Stroock to devote time beyond normal office hours to matters, which imposed extraordinary time

demands. Stroock has endeavored to minimize these expenses to the fullest extent possible.

Attached hereto as Exhibit "D" is a summary chart reflecting each category of disbursement for

which Stroock seeks reimbursement.

50.     Stroock's billing rates do not include charges for photocopying, telephone and

telecopier toll charges, computerized research, travel expenses, "working meals", secretarial

overtime, postage and certain other office services, because the needs of each client for such

services differ. Stroock believes that it is fairest to charge each client only for the services

actually used in performing services for it. Stroock has endeavored to minimize these expenses

to the fullest extent possible.

51.     Stroock charges $.10 per page for in-house photocopying services, with respect to

computerized research services Stroock charges the actual cost from the vendor, and $1.00 per

page for out-going facsimile transmissions. Stroock does not charge for incoming facsimiles.

52.     Further, in accordance with the Court's June 22, 2001 Order Authorizing the

Retention of Experts, this Application seeks payment in the aggregate amount of $536,163.29,

for the fees and expenses of Navigant for the extensive PI Estimation-related services rendered

on behalf of the Committee in the months of April through June of 2007.

53.     No agreement or understanding exists between Stroock and any other person for

the sharing of any compensation to be received for professional services rendered or to be

rendered in connection with these cases.

23

54.     Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

55.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order and the Court's June 22, 2001 Order Authorizing the Retention of Experts:

> the allowance of compensation for professional services rendered to the Committee during the period from April 1, 2007 through and including June 30, 2007 in the amount of $609,233.75;
>
> the reimbursement of Stroock's out-of-pocket expenses incurred in connection with the rendering of such services during the period from April 1, 2007 through and including June 30, 2007 in the amount of $13,150.79;
>
> the payment of the fees and expenses of the asbestos issues expert employed by the Committee for the months of April, May and June 2007 in the aggregate amount of $536,163.29;
>
> authorizing and directing the Debtors to pay to Stroock each of the amounts set

24

forth in (a) (b) and (c) of this WHEREFORE clause (to the extent not already paid

pursuant to the Administrative Fee Order); and

granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
     August 30, 2007

                    STROOCK & STROOCK & LAVAN LLP

                    Lewis Kruger
                    Kenneth Pasquale
                    Members of the Firm
                    180 Maiden Lane
                    New York, New York 10038-4982
                    (212) 806-5400

                    Co-Counsel for the Official Committee of
                    Unsecured Creditors of W. R. Grace & Co., et al.

25