APPENDIX A

The Manitoba authorities as to when a Cause of Action shall be deemed to "arise",
for the purposes of the Limitations Act, R.S.M. 1987 c. L150.

- An excerpt from Osborne, P.H., "Manitoba Tort Cases Since the Turn of the Century,"
(2005) 31 Manitoba Law Journal 25.

Ninth: in recent years, the Manitoba Court of Appeal has performed well in terms of appeals from its decisions to the Supreme Court of Canada. In previous decades, the Manitoba Court was among the more frequently reversed courts; now, the affirmation rate of its decisions is comparable to that of the Ontario Court of Appeal. Appeals from the Court are almost exclusively criminal law cases.

Tenth: the Manitoba Court of Appeal is not often cited by higher court; there is no indication that the Court has staked out any kind of leadership role within specific areas of law, either for the Court as a whole or for specific individuals.

The Manitoba Court of appeal remains an interesting point of access for a study of the "complex and delicate" role of a provincial appellate court in Canada. These courts are sometimes said to be the "prisoners" of the fact-finding trial courts on one side and the law-finding Supreme Court on the other,[48] but the shrinking of the Supreme Court caseload in recent years suggests that they are not in fact being squeezed particularly hard, and they still have some scope for dealing with important issues in a novel way that can ripple further—K.L.W.[49] and Blais[50] are possible examples from the terms under consideration. Statistical studies such as this one provide the foundation for a further consideration of the creative albeit contained role of intermediate courts of appeal in a hierarchical system, and elucidate an important part of the broader judicial role in this the age of judicial power.

[48] Comments are from Robert J. Sharpe & Kent Roach, Brian Dickson: A Judge's Journey (Toronto: University of Toronto Press, 2003) at 115.

[49] Winnipeg Child & Family Services v. K.L.W. [1998] M.J. No. 254 (Q.L.)—dealing with the apprehension without prior judicial approval of a child at risk.

[50] 2001 MBCA 55—dealing with status of Métis people under the constitution.

# Manitoba Tort Cases Since the Turn of the Century

PHILIP H. OSBORNE *

## I. INTRODUCTION

This article comments on some of the tort cases decided in Manitoba between 1 January 2000 and 1 July 2004[1] and on an important tort-related amendment of the Limitation of Actions Act.[2] The cases discussed have been selected on the basis of the importance and interest of the issues involved rather than the level of the Court. The article begins with an analysis of a line of Court of Appeal decisions dealing with the applicability of the limitation of actions legislation to economic negligence actions. This is followed by a consideration of a Court of Appeal decision that led to an amendment of the limitation legislation in the field of sexual and physical abuse claims. A series of cases dealing with the application of the tort of negligence to pure economic loss, to psychiatric harm, to school accidents and to a number of medically related issues are then discussed. The article ends by reviewing a case dealing with the rejuvenated tort of misfeasance in public office and a case that reaches an important lesson about the tort of defamation.

## II. ECONOMIC NEGLIGENCE AND THE LIMITATION OF ACTIONS

In 1964 the decision of the House of Lords in Hedley Byrne & Co., Ltd. v. Heller & Partners, Ltd.[3] established that liability may be imposed for a negligent mis-

* Professor, Faculty of Law, University of Manitoba. Professor Osborne gives his thanks to colleagues Professors John Irvine and Trevor Anderson who read a draft of this article and made helpful comments. The views contained herein and any errors are solely his.

[1] Two earlier cases are included because of their importance to a number of the post-2000 cases: Raria v. Maxwell (1998), 131 Man. R. (2d) 184 (C.A.) and Winnipeg Condominium Corp. No. 36 v. Bird Construction Co. (1999), 131 Man. R. (2d) 283 (C.A.).

[2] S.M. 2002, c. 5, s. 2.

[3] [1964] A.C. 495 (H.L.).

representation causing pure economic loss. Since then, a much wider scope of responsibility for negligently inflicted pure economic loss has been recognized. It is now established that there are at least five categories of cases where pure economic loss may be recoverable. They are *negligent misrepresentation*, *negligent performance of a service*, *defective products or buildings*, *relational economic loss* and the *negligent exercise of governmental powers*. A great deal of judicial time and effort has been spent defining the legal requirements of liability in each of these categories and there is still much to be done. Less attention has been paid to the attendant practical and procedural issues that inevitably arise in any expansion of tortious liability. One important issue that the Court of Appeal has spent a considerable amount of time addressing is the application of Manitoba's *Limitation of Actions Act*[4] to economic negligence claims. Some of the issues have arisen because of disagreements about the application of first principles to economic negligence cases. Others have arisen because of the unusual nature of the pertinent provisions of the *Limitation of Actions Act*.

## A. The Cause of Action in Negligence

In order to appreciate fully the issues that have arisen in respect of the interpretation of the *Limitation of Actions Act* it is useful to recall some common law principles relating to the completion of the cause of action in negligence and limitation periods.

In the tort of negligence, the cause of action is not complete until the plaintiff has suffered *harm*. This is in contrast to the position in the law of contract where the cause of action is complete on breach of the contractual obligation, whether or not harm has been suffered. One consequence of this rule is that there may be a significant time lag between the negligent act or omission and the completion of the tortious cause of action. Thus, the negligent design of an aircraft may cause an aircraft to crash with a consequent loss of life many years after its manufacture; the negligent exposure of persons to carcinogenic substances may cause illness decades later. In these situations the cause of action is not complete until the adverse consequences caused by the negligent conduct have occurred.

This rule is of special significance in the context of limitations of actions because many provisions of limitation statutes, including those of Manitoba, use the *completion of the cause of action* as the moment from which time runs. There are good reasons for this. A plaintiff should not lose a compensatory remedy before the need for compensation has arisen. Furthermore, the quantum of damages can only be calculated with some certainty when the harm has occurred.

Some situations present an additional complication. The plaintiff may not be aware of the harm and, furthermore, may not have been in a position to dis-

---

[4] R.S.M. 1987, c. L150.

cover the harm through the exercise of reasonable diligence before the limitation period expired. The loss of a right of action before the plaintiff is aware of its existence is an injustice that courts seek to avoid. The common law solution in those jurisdictions where there is no legislative guidance on the point has been found in the development of a judicial rule of interpretation known as the "discoverability" principle. In Canada it was established by the Supreme Court in *Kamloops (City of) v. Nielsen*[5] (*Kamloops*) and confirmed in *Central Trust Co. v. Rafuse*.[6] In the latter case Le Dain J., speaking for the Court, held that for the purposes of the limitations of actions the cause of action is deemed to arise "when the material facts on which it is based have been *discovered or ought to have been discovered* by the plaintiff by the exercise of reasonable diligence". This rule sometimes results in a very significant time lag between the negligent act and the completion of the cause of action.

## B. The Manitoba *Limitation of Actions Act*

The limitation period for economic negligence claims in Manitoba is not immediately apparent from a reading of the *Limitation of Actions Act*. The limitation period for actions in negligence depends upon whether the harm suffered is personal injury,[7] damage to land,[8] or damage to chattels.[9] Time runs in each case from the completion of the cause of action. There is no reference to actions in negligence for pure economic loss since such actions were not recognized when the Act was drafted. Consequently resort must be had to s. 2 (1)(n) of the Act which states that where no statutory provision is made for the action under consideration the limitation period is six years after the *cause of action arose*.

This provision is complemented by statutory discoverability rules which are applicable where the plaintiff has missed the limitation period because of a lack of knowledge of the harm. The rules are found in Part II of the *Limitation of Actions Act*. This Part contains a very detailed slate of provisions but its central proposition is that a plaintiff may make an *ex parte application* to the court for leave to commence an action if not more than twelve months have elapsed be-

---

[5]   [1984] 2 S.C.R. 2.

[6]   [1986] 2 S.C.R. 147.

[7]   *Limitation of Actions Act*, s. 2(1)(e) actions for malicious prosecution, seduction, false imprisonment, trespass to the person, assault, battery, wounding or other injuries to the person, whether caused by misfeasance or nonfeasance and whether the action be founded on a tort or on a breach of contract or any breach of duty, within two years after the *cause of action arose* [emphasis added].

[8]   *Ibid*, s. 2(1)(f) actions for trespass or injury to real property, whether direct or indirect, within six years after the *cause of action arose* [emphasis added].

[9]   *Ibid*, s. (2)(1)(g) actions for trespass or injury to chattels, whether direct or indirect, within two years after the *cause of action arose* [emphasis added].

tween the date on which the applicant first knew or ought to have known of all the material facts of a decisive character upon which the action is based, and the bringing of the application to extend time.[10] The applicant must support this application with evidence that in the absence of any evidence to the contrary is sufficient to establish the cause of action on which the action is to be founded.[11] There is also a final long-stop provision: leave to commence an action cannot be given more than 30 years after the occurrence of the *acts or omissions* that gave rise to the cause of action.[12]

In a series of cases the Court of Appeal has addressed two contentious issues that arise in the context of economic negligence claims. The first is the relationship between the common law discoverability rule and the statutory discoverability rule. The second is when does "harm" arise for the purpose of completing the cause of action in the various categories of economic negligence claims.

## C. The Relationship between the Statutory and Common Law Discoverability Rules: *Rarie v. Maxwell*

In *Rarie v. Maxwell*[13] (*Rarie*) the Court of Appeal (Scott C.J.M., Philp J.A. and Twaddle J.A.) considered the statutory discoverability rule and its relationship to the common law discoverability rule. The case dealt with a lawyer's *negligent performance of services* which caused pure economic loss to the plaintiff. The plaintiff had two complaints. First the defendant lawyer missed a limitation period for an action in damages for injuries to the plaintiff arising out of a motor vehicle accident that took place on 21 January 1985. Secondly, the defendant failed to carry out instructions given by the plaintiff in April 1986 to secure the transfer of title to land owned by a debtor of the plaintiff to the plaintiff. It was intended that the land would be sold and the debt repaid to the plaintiff with the balance of the proceeds to be shared between the debtor and the plaintiff. After some delay the transfer of title was submitted for registration in July 1987. It was not accepted because another creditor had registered a certificate of judgment against the land in question on 5 September 1986.The property was ultimately sold under a judicial sale of which the plaintiff was informed on 24 September 1987. The plaintiff failed to recover the amount of the debt and other associated costs. The plaintiff alleged that the defendant had failed to protect his interest by not filing a caveat against the title to the property and not registering a transfer of the property prior to the registration of the certifi-

---

10   *Ibid*, s. 14(1).

11   *Ibid*, s. 15(3).The evidentiary burden on the applicant is discussed in *Johnson v. Johnson*, [2001] M.J. No. 542. (C.A.).

12   *Ibid*, s. 14(4).

13   *Supra* note 1.

cate of judgment. The action against the defendant lawyer was commenced on 16 August 1993. The trial judge held that both actions were brought within the limitation period.

The Court of Appeal allowed the appeal. Philp and Twaddle JJ.A. wrote concurring judgments. They held that the cause of action in respect of the defendant's failure to bring the action for damages for personal injuries was complete on 21 January 1987, the date on which the two-year limitation period expired. At that date the claim was barred and economic harm equal to the value of the claim was suffered. The cause of action against the defendant expired six years later on 21 January 1993 eight months before the action under consideration was brought. The cause of action in respect of the real estate transaction was held to be complete on 5 September 1986 when the certificate of judgment was registered against the property by another creditor. The plaintiff's claim, which was brought more than six years later on 16 August 1993, was also out of time.[14]

The Court considered the applicability of the common law "discoverability" rule which, it will be remembered, affects the date upon which the *cause of action* arises. Under that rule it was argued that the plaintiff was not aware that the defendant had failed to institute the personal injury action until October 1987 (within six years of commencing an action against the defendant lawyer). In respect of the land transaction it was argued that the plaintiff was not aware, and could not reasonably be expected to be aware, of the judicial sale proceedings until 24 September 1987 (less than six years before the action against the defendant lawyer was commenced). The Court, however, held unanimously that in light of the "comprehensive and detailed code" of statutory discoverability provisions found in Part II of the *Limitation of Actions Act*, the common law rule of discoverability in *Kamloops* was *inapplicable* in Manitoba. In support of that conclusion the Court opined that the statutory provisions provide a reasonable solution to the potential injustice arising from the plaintiff's lack of knowledge of harm before the limitation period expires. In the Court's view the provisions of Part II of the *Limitation of Actions Act* address the certainty, evidentiary and diligence rationales that underline limitation legislation and provide an appropriate balance between the conflicting interests of plaintiffs and defendants. While *leave* to commence an action is required, the evidentiary burden, in the Court's opinion, is not severe. There was, consequently, every reason to defer to the supremacy of the legislature and recognize that Part II is an exclusive code. The correct course of action, therefore, was for the plaintiff to make a s. 14(1) application to extend time within twelve months of becom-

---

14   One could argue that the harm was not suffered until the completion of the judicial sale that irreversibly thwarted the plaintiff's plans for debt repayment but that issue was not explored by the Court.

ing aware of the harm he had suffered as a consequence of the defendant's negligence.

## D. Economic Harm and the Completion of the Cause of Action

The second issue, which takes on added importance given the inapplicability of the common law discoverability principle in Manitoba, is when, in the variety of economic negligence cases, does harm arise for the purpose of completing the cause of action? There is no suggestion in *Rarie* that this created any particular difficulty or called for any special consideration. Twaddle J.A. in his judgment merely referred to the conventional rule.

> In the present case, as my brother Philp so well points out, the legislature has made it clear by enacting Part II of the Limitation of Actions Act ... that the words "cause of action accrues" used in Part I were intended to refer to *the completion of the cause of action by the occurrence of damage.*[15]

Since *Rarie*, however, there has been a line of decisions of the Court of Appeal indicating that there is considerable difficulty in resolving this question in the economic negligence cases. The result has been some uneven decision making and a degree of confusion. A consideration of the cases in chronological order will identify the contentious issues and the evolution of the Court's thinking on this important matter.

The first case, *Winnipeg Condominium Corporation No. 36 v. Bird Construction Co.,*[16] (*Winnipeg Condo II*) dealt with a limitation issue arising after the well-known decision of the Supreme Court of Canada,[17] who refused to strike out an action in negligence brought by the second owner of a high-rise apartment block against a builder for the cost of repairing defects in the building which gave rise to a real and substantial danger to its occupants. The claim was characterized as one for *economic loss arising in a dangerous or shoddy building.*

In subsequent pre-trial proceedings the defendant argued that the claim was out of time. There were a number of critical dates. The building was completed in 1974. In 1982, some minor flaws in the exterior stone cladding arose and some remedial work was done. A large piece of the cladding fell off the premises on 8 May 1989. The statement of claim was issued in April 1990. The motion, seeking to have the action dismissed on the grounds that the limitation period had expired, was brought in July 1998.

The defendant asserted that the cause of action was complete in 1974 because the premises contained a dangerous latent defect at that time. The limitation period consequently expired in 1980. The appropriate course of action, in

---

15  *Supra* note 1 at 7 [emphasis added].

16  (1998), 131 Man. R. (2d) 283 (C.A.).

17  *Winnipeg Condominium Corp. No. 36 v. Bird Construction Co*, [1995] 1 S.C.R. 85.

the defendant's view, would have been for the plaintiff to apply for leave to bring an action under s. 14(1) of the *Limitation of Actions Act* within 12 months of either 1982 (the discovery of minor flaws) or 1989 (the discovery of a more serious problem).

Oliphant A.C.J.Q.B. rejected this argument.[18] He held that the cause of action was not complete until 8 May 1989 when the piece of cladding fell off. That was when the damage occurred and the claim was clearly in time.

The Court of Appeal was unwilling to subscribe fully to the view of either the defendant or the motions judge. Huband J.A., speaking for the Court (Huband, Twaddle and Monnin JJ.A.), stated:

> At this stage we do not know the nature of the flaws in the wall or who was responsible for them. We do not know who knew what when. We do not know if the work done in 1982 was of significance or not.[19]

Consequently the Court dismissed the appeal leaving the question to be resolved on a full consideration of proved facts at trial. It may be argued that the Court implicitly rejected 1974 as the date when the cause of action was complete since further evidence would not be needed if the critical date was the completion of a building with a latent dangerous defect.[20] This interpretation would avoid a further complication that would arise if the cause of action was complete in 1974. On that date the plaintiff corporation was not in existence; it was created to take title to the condominium in 1978. This might suggest that the the choice left to the trial judge was between when the initial problems with the cladding arose in 1982, in which case the action was brought out of time, or when a portion of the cladding fell off in 1989, in which case the action was brought in time. That question was not resolved before the case was settled.

The second case is *Burke v. Greenberg*[21] (*Burke*). This case was characterized by the Court (Kroft, Monnin and Steele JJ.A.) as one involving the *negligent performance of a service causing economic loss.* The defendant lawyer was retained in 1979 to plan, advise, structure and prepare legal documents to allow plaintiffs to secure title to investment properties in Florida. The faulty manner in which the transactions were structured permitted a third party to commit a fraud which led to the loss of their investments. The legal work was completed by 31

---

18  *Winnipeg Condominium Corp. No. 36 v. Bird Construction Co.* (1998), 130 Man. R. (2d) 203 (Q.B.).

19  *Supra* note 16 at para. 13.

20  See also the subsequent decision of Wright J. in *Winnipeg Condominium Corp. No. 266 v. 3333 Silver Developments Ltd.*, [2000] M.J. No. 600 (Q.B.) at para. 11. The Court clearly rejected the date of completion of the defective building as the time when the cause of action was complete. It was necessary to determine at trial when it could be said that a level or degree of damage had been reached that was more than minimal or nominal.

21  (2003), 177 Man. R. (2d) 213 (C.A.).

December 1981. The fraudulent mortgage of the Florida properties engineered by the third party and his receipt of the fraudulently obtained proceeds occurred on December 1984. Title to the properties was lost when the Florida mortgagee foreclosed on the properties on 14 October 1986. The action against the defendant was commenced on 19 July 1988.[22] The issue is clear. If the cause of action was complete in December 1981 the cause of action expired six months before the action was commenced. If, on the other hand, the cause of action was not complete until the harm occurred, at either the time of the fraudulent mortgage or at the time of the foreclosure, the action against the lawyer was in time. The defendant brought a motion to have the action dismissed as being statute-barred. The decision of the Master[23] allowing the motion was reversed by the motions judge[24] who took the intuitively correct position that the cause of action was complete when the properties were foreclosed in 1984.

The Court of Appeal, however, in a judgment written by Monnin J.A., allowed the appeal and held that the loss to the plaintiffs occurred not when the fraud occurred nor when the foreclosure took place but at the time when the legal services were provided.[25] The cause of action arose at the end of 1981. The correct course of action was for the plaintiff to make an application under s. 14(1) of the Limitation of Actions Act when the fraud was discovered.

The next case, Sentinel Self-Storage Corp. v. Dyregrov,[26] (Sentinel) dealt with negligent advice of a professional soils consultant and a structural engineer in relation to the proposed construction of a self-storage facility. The advice was given in 1987. The work was substantially completed by 15 December 1988. It was alleged that the professional services provided by the defendants were deficient and caused instability in the foundations. The statement of claim was filed on 31 May 1996. On 8 December 2000 the Master granted a motion to dismiss the statement of claim on the ground that the limitation period had expired before the statement of claim was issued. Ironically, the plaintiff failed to file a notice of appeal within the appointed time period. An application to extend time to file an appeal raised, inter alia, the question of whether there was "an arguable ground of appeal." The defendant argued that there was no arguable ground of appeal because the original claim was clearly statute-barred. A mo-

---

22   The action was solely in negligence. Claims for breach of contract and breach of fiduciary duty were abandoned.

23   Burke v. Heaton, [2001] M.J. No 318 (Q.B.).

24   Burke v. Heaton, (2002) 180 Man. R. (2d) 85 (Q.B.).

25   If the action had been brought within six years following the provision of the services the plaintiff would have recovered nominal damages, a very unusual remedy in the tort of negligence.

26   (2003), 180 Man. R (2d) 85 (C.A.).

tions judge dismissed the application[27] and the Court of Appeal dismissed the appeal.

The judgment of the majority (Monnin and Freedman JJ.A.) was delivered by Monnin J.A. He treated the claim as one for the negligent performance of a service causing economic loss and, following Burke, held that the cause of action was complete at the time the service was provided.[28] When the plaintiff realized that there was a problem with the foundations an application should have been made under s. 14(1) of the Limitation of Actions Act for leave to bring an action. Steele J.A. persuasively characterized the claim as a one for economic loss arising in a dangerous or shoddy product calling for an application of the principles in Winnipeg Condominium. She held that in the absence of proof that the defect caused a real and substantial danger to its occupants no liability could arise. Consequently, the limitation issue need not be addressed. Nevertheless, she made the point that if the case were analyzed as one involving the negligent performance of a service causing economic loss she would agree with the majority that the cause of action arose on the completion of the services and, furthermore if it were analyzed as a negligent advice (negligent misrepresentation) case the cause of action would be complete "when the construction work itself was executed."[29] Her Ladyship continued, "The damage is inflicted when the negligent design is relied upon to its detriment by the plaintiff."[30] The obiter statement of Steele J.A. in respect of the completion of the cause of action for negligent misrepresentation is significant. Her Ladyship's words suggest, for example, that time will run as soon as an investor acts in reliance on negligent financial advice not when the investment turns sour.

The final case is Valley Agricultural Society v. Behlen Industries Inc.[31] (Valley Agriculture). This was a case of economic loss arising from a shoddy or defective building which all parties agreed called for the application of the principles in Winnipeg Condominium. The defendants were the designers of the Morris curling club and exhibition hall. The two buildings were joined at a concrete block firewall. The roof of the exhibition hall collapsed in 1996. There was no discernible weakness of the roof before its collapse. The collapse was caused by the uneven elevations of the roofs of the two

---

27   [2001] M.J. No. 490 (Q.B.).

28   Supra note 26 at para. 18.

29   Ibid. at para. 40.

30   Ibid. [emphasis added]. MacInnes J. who heard the motion to extend time categorized the case as a negligent misrepresentation case and held that the cause of action was complete when the plaintiff relied on the advice to its detriment which on the facts was when the building was constructed.

31   [2004] M.J. 204 (C.A.).

buildings, an unusually large accumulation of snow on the roof of the exhibition hall, and the use of inadequate pin-bolts securing the roof of the hall to the firewall. The defendants Behlen Industries Inc, who designed and provided the components for the building, and Deniset, a professional engineer who certified the plans, sought summary judgment on the grounds that the claim was barred under s. 2(1)(n) of the *Limitation of Actions Act*. The central issue was, once again, when did the harm that completed the cause of action arise? Was it on completion of the building with a latent dangerous defect, on its collapse or at some intermediate point? The Courts at all levels agreed that the cause of action was complete when the dangerous defect "manifested itself".

The Master held that the dangerous defect became *manifest* when there was some external indication of the defect.[32]   Since there was no evidence that the defect in the building was manifest before its collapse the defendant's motion for summary judgment was dismissed.

Justice Schulman reversed the Master.[33] He held that the dangerous defect was *manifest* as soon as the building was completed, not when the defect became apparent nor when it collapsed. The action was out of time. An application under s. 14(1) of the *Limitation of Actions Act* to extend time should have been brought within twelve months of the building collapsing.

These competing views presented the Court of Appeal with an opportunity to resolve not only when a defect becomes "manifest" for the purposes of *shoddy and defective buildings* cases but also to provide some explanation and synthesis of its recent decision making determining when the cause of action is complete in other economic negligence cases.

The Court (Scott C.J.M., Twaddle and Steele JJ.A.) chose not to take advantage of these opportunities. Scott C.J.M. delivered a short judgment for the Court. His Lordship acknowledged the difference of opinion in the Courts below on the meaning of the word "manifest" but he did not offer an opinion on the point. He chose to follow *Winnipeg Condominium II* holding that this was not an appropriate case for summary judgment because of "a lack of evidence to establish the essential background to decide the *complex and unresolved point of law* that this case raises".[34] The Court noted that there was no evidence of the state of the building between the time it was built until its collapse and there was no evidence as to when the building could be considered dangerous. Jurisprudence in other Commonwealth jurisdictions suggesting that the cause of action arises when defects become known and apparent was not adopted because

---

32   (2002), 164 Man R. (2d) 156 (Q.B.).

33   (2003), 172 Man R. (2d) 248 (Q.B.).

34   *Supra* note 31 at para. 12 [emphasis added].

---

of the "uniqueness" of the decision in *Winnipeg Condominium*.[35] No reference was made to the judgments of Monnin J.A. in *Burke* or the judgments of Monnin and Steele JJ.A. in *Sentinel*.[36]

This judgment must have been a considerable disappointment to the litigants in particular and civil litigators in general. Both the Master and Schulman J. had provided clear reasons for their competing views on what was in the express opinion of the Court of Appeal a question of law. After four months of deliberation the Court concluded that the matter must be resolved by the trial judge. Expensive and time consuming pre-trial procedures left the parties where they began.

There are a number of conclusions that may be drawn from this line of cases.

First, the interpretation of the concept of harm or loss sufficient to complete a cause of action in a negligence action for pure economic loss is, in Manitoba, in a state of great uncertainty and is often counter-intuitive. In claims for negligent performance of a service causing economic loss the cause of action is complete when the services have been performed (*Burke* and *Sentinel*). In claims for economic loss arising from a negligent misrepresentation the cause of action may be complete on reliance albeit that actual loss may arise in the future (*Sentinel* per Steele J.A.). The cause of action for dangerous premises causing economic loss is complete when the dangerous defect "manifests itself". On two occasions (*Winnipeg Condominium* and *Valley Agriculture*) the Court has declined to provide guidance on the meaning of that phrase. The cause of action may be complete on the completion of the building, at the first sign of some dangerous defect or when such a defect has manifested itself in tangible adverse consequences. This creates severe difficulties for any practitioner whose client seeks a remedy for economic loss suffered more than six years after the negligent conduct of the defendant. In some situations the loss will complete the cause of action from which time runs. In other cases a s. 14(1) application is called for. This uncertainty is exacerbated by a lack of consistency in the classification of economic negligence cases. *Winnipeg Condo II*, *Sentinel* and *Valley Agriculture*

---

35   The Court also observed without comment that the danger or loss may need to be imminent to establish a claim under *Winnipeg Condominium*. There is, however, little support for that view in the Supreme Court decision and the authorities relied upon declare that "it is only where a defect poses a real and substantial danger or there is an imminent possibility of such danger that the cause of action is complete".

36   Of particular relevance was the following passage of Steele J.A.'s judgment in *Sentinel* at para.70: "If this action is characterized as one of economic loss due to defective structure, the damage is not inflicted until the building is found to contain defects which pose a real and substantial danger to the occupants of the building or other property. It is only when a defect poses a real and substantial danger or there is an imminent possibility of such danger that the cause of action is complete."

would appear to be the same kind of cases (defective buildings). *Sentinel*, was, however, treated by a majority of the Court as a case of negligent performance of a service.

Secondly, the recent decisions of the Court of Appeal, particularly in *Burke* and *Sentinel* and possibly in *Winnipeg Condo II* and *Valley Agriculture*, have diluted the conventional view that there is a significant difference between the time when the cause of action arises in contract and when it arises in negligence. It is difficult to discern the policy foundations for this trend other than a judicial distaste for the long-tail actions that may arise in economic negligence cases. Such a concern, however, would appear to be met by the need to prove that the loss was caused by a wrongful act and by the long stop provisions of the *Limitation of Actions Act*.

Thirdly, the interpretation of when the harm arises in these cases suggests that it will not be uncommon in economic negligence cases for the cause of action to have lapsed before the plaintiff is aware of the consequences of the negligent conduct. In these cases recourse must be made to the statutory discoverability rules found in Part II of the *Limitation of Actions Act*. This need for reliance on applications to extend time under Part II of the *Limitation of Actions Act* gives rise to a number of problems. It will be remembered that the one-year period will begin when the *applicant* – not his or her lawyer – knows or ought to know of the material facts upon which the action is based. It may be assumed that a plaintiff will not seek legal advice immediately but will attempt to resolve the matter informally with the defendant, who will have an incentive to drag his feet and consume some of the twelve months. If so, the plaintiff's lawyer will have much less than twelve months to investigate the claim, evaluate its merit (which may require the services of professional consultants) and prepare legal strategy, evidence and legal arguments sufficient to satisfy the burden under s. 15(2) to bring evidence which is, in the absence of evidence to the contrary, sufficient to establish the cause of action on which the action is to be founded.[37] This situation is fraught with risk for even the most conscientious of busy legal practitioners unless they are ever mindful of the unexpected time constraints of this kind of litigation. An increase in s. 14 applications also adds to the delay, complexity and expense of a litigation system that is already subject to criticism on all of those grounds.

In the absence of legislative reform these difficulties can only be lessened by a return to first principles. The cause of action in *Donoghue v. Stevenson*[38] did not arise when the ginger beer was manufactured. It arose when the plaintiff became ill as a consequence of drinking it. Harm arises when there are tangible

37  See *Johnson v. Johnson*, *supra* note 11, for the burden resting on the applicant.

38  [1932] A.C. 562 (H.L.).

adverse consequences arising from the negligent conduct. There is no reason to question or depart from that rule in economic negligence cases.

It is submitted that the cause of action in *Winnipeg Condo II* was complete when the large section of cladding fell off the building, in *Burke* when the bank foreclosed on the investment properties, in *Sentinel* when the foundations became unstable and in *Valley Agriculture* when the building fell down. The plaintiff then had six years to file their statements of claim. A s. 14(1) application should be required only when the plaintiff was unaware of such adverse consequences for more than six years.

## III. RESIDENTIAL SCHOOL CLAIMS AND THE LIMITATION OF ACTIONS

The decision of the Court of Appeal in *M.M. v. Roman Catholic Church of Canada*[39] is of particular significance because it triggered an important legislative amendment to the *Limitation of Actions Act*.[40] In that case the respondents alleged that they had suffered physical and emotional harm as a consequence of tortious conduct when they were students at a Indian Residential School run by the appellants. The appellants sought to have the various actions dismissed on the grounds that they were barred by the long stop provision of the *Limitation of Actions* legislation. The alleged abuse ended when the respondents left the school which was well over thirty years before the Statement of Claim was filed. The Court of Appeal undertook an exhaustive and comparative analysis of the 1931 *Limitation of Actions Act*,[41] which was in force at the time of the tortious conduct, and the current legislation. The Court concluded that the actions were barred by the long stop provision of the 1931 Act. Under that Act no action may be brought more than thirty years after the right to take proceedings accrued. Since the right to take proceedings arose prior to the respondents leaving school,[42] the claims were barred.

This decision negated a significant number of potential claims for historic abuse in the residential school system in Manitoba. The government responded quickly. It amended the current Act to insure the continued viability of these claims and others arising from similar circumstances. The amendment is set out in full here.

s. 2.1(1)  In this section "assault" includes trespass to the person and battery.

39  (2001), 160 Man. R. (2d) 265 (C.A.).

40  *Supra* note 4.

41  S.M. 1931, c. 30, as am. by S.M. 1932, c. 24.

42  The language of the thirty-year long stop provision of the current Act is somewhat different but the result would be no different.