IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date: September 10, 2007** |
| | ) | **Related Docket No: 9315, 14597, 14898, 14965** |

## DEBTORS' SUPPLEMENTAL SUBMISSION IN SUPPORT OF THEIR MOTION AND MEMORANDUM FOR AN ORDER PURSUANT TO F.R.B.P. 7056 DISALLOWING AND EXPUNGING WHAT ARE NOW FIFTY-FIVE (55) TIME-BARRED CANADIAN ASBESTOS PROPERTY DAMAGE CLAIMS

Debtors' original Motion and Memorandum for an Order Pursuant to F.R.B.P. 7056 Disallowing and Expunging Eighty-Eight (88) Time-Barred Canadian Asbestos Property Damage Claims ("Debtors' Motion") sought an Order expunging 88 Canadian claims filed by the Speights & Runyan law firm because those claims are time-barred by either the ultimate or normal limitation periods in Canada.  Of the 88 claims, 33 have been voluntarily withdrawn or expunged.  Debtors' Motion now covers 55 remaining property damage claims, 35 of which are barred by the ultimate limitation periods in Alberta, British Columbia and Manitoba and all of which are barred by the normal limitation periods in the Canadian provinces in which the properties are located.  Debtors submit this Supplemental Submission in support of Debtors' Motion on these 55 time-barred Canadian claims.

In support of Debtors' Motion, Debtors presented the expert report and testimony

of Mr. Graeme Mew, the leading expert on Canadian limitation periods.[1]  Debtors submitted Mr.

Mew's expert report as Exhibit A to Debtors' Motion and Mr. Mew's affidavit as Exhibit B to

Debtors' Reply in Support of Debtors' Motion ("Debtors' Reply").  Mr. Mew has been deposed

twice by Speights & Runyan in connection with Debtors' Motion.  To address the Court's

concerns expressed at the April 9, 2007 hearing that Mr. Mew's report may constitute hearsay,

Debtors conducted a direct examination of Mr. Mew at his second deposition and have included

that sworn testimony in the Appendix to Debtors' Supplemental Submission ("Appendix" or

"App.") that is being submitted herewith.[2]

In response, Speights & Runyan retained Professor John C. Irvine, purportedly to

rebut Mr. Mew's affidavit relating to class action tolling issues and to address the Canadian

---

[1]      Mr. Mew is the Office Managing Partner of the law firm of Nicholl Paskell-Mede, has written and spoken extensively on the subject of the Canadian law of limitations, is the author of the only national textbook dealing with Canadian limitation periods, and has been regularly cited by Canadian courts on limitations law.

[2]      For the Court's convenience and in order to have all of the operative Canadian legal authority in one Court binder, Debtors have included in the Appendix previously submitted materials addressing the relevant legal issues (such as the Mew Report and Mew Affidavit) as well as certain Canadian authority cited herein.  The Appendix is organized as follows:

- Tab A is the Expert Report of Mr. Mew ("Mew Rpt.") previously submitted as Tab A to Debtors' Motion;
- Tab B is the Affidavit of Mr. Mew ("Mew Aff.") previously submitted as Tab B of Debtors' Reply;
- Tab C is the May 11, 1007 Deposition of Mr. Mew ("Mew Dep.");
- Tab D is the Original Report of John C. Irvine, Speights & Runyan's proffered expert on Canadian law ("Irvine Rpt.");
- Tab E is excerpts from the August 22, 2007 deposition of John C. Irvine ("Irvine Dep. I");
- Tab F is excerpts from the August 31, 2007 deposition of John C. Irvine ("Irvine Dep. II");
- Tab G includes all of the Canadian cases cited in this submission organized alphabetically;
- Tab H includes all of the Canadian statutes cited in this submission organized alphabetically by province;
- Tab I is excerpts of the Alberta Institute of Research and Reform, Litigations: Report for Discussion No. 4; and
- Tab J is excerpts of Alberta Law Reform Institute, Report No. 55.

ultimate limitation periods. Professor Irvine readily admits that he is not qualified to testify as an expert on class action tolling, conflicts of law, or American law and knows nothing of asbestos. App. Tab E, Irvine Dep. I at 42-43, 82-83, 99-100, 174, 185, 188.

Professor Irvine further candidly conceded the limit of his "expertise" on Canadian limitations law. *Id.* at 88 ("You are lucky in securing the services of Mr. Mew . . . I don't think people would be easy to find anywhere else in Canada who have spent so much of their time on the limitations periods . . . my claim to expertise in this area would be a very difficult one . . . .").[3]

In fact, Professor Irvine has never offered an expert opinion on Canadian limitation periods before his retention by Speights & Runyan in connection with these proceedings. *Id.* at 94. According to Professor Irvine, "it is not [his] job . . . to say what the law [in Canada] is." *See* App. Tab F, Irvine Dep. II at 49. Rather, he was merely trying to raise issues for the Court's consideration. *Id.* at 124-126 (admitting that he is simply raising issues and that "if the Court thinks that's a load of nonsense, that is entirely the Court's privilege and I think that's a very proper procedure.").

## I.  Canadian Ultimate Limitation Periods Bar 35 Claims.

Thirty-Five (35) of the remaining Canadian claims are barred by the ultimate limitation periods in British Columbia, Alberta and Manitoba. As explained by Mr. Mew, ultimate limitation periods are ultimate cut off points within which time a claim must be brought

---

[3]    Professor Irvine has never taught Civil Procedure, the course where Canadian limitation periods would normally be covered. Id. at 93-94. That course is often taught by practitioners rather than professors. Id. Professor Irvine has never practiced law. Id. at 80-81, 102, 168.

3

***regardless*** of when the claims were or ought to have been discoverable. *See* App. Tab C, Mew

Dep. at 28 (discoverability principles do not apply to ultimate limitation periods); App. Tab A,

Mew Rpt. at 8, 15; *see also* App. Tab E, Irvine Dep. I at 204, 220 (ultimate limitation periods

"guillotine limitations periods because discoverability would otherwise potentially drag on

forever, which is a social evil.").

As one Canadian court explained, putative defendants "should not be compelled

to have the sword of Damocles hanging over their heads forever," and consequently, the

relatively long time limits provided for in ultimate limitation periods must apply "***no matter***

***what***, even in the face of ongoing and continuing disability or in the absence of knowledge

despite reasonable efforts." *M.(M.) v. Roman Catholic Church of Canada*, 2001 MBCA 148, at

¶ 41) (emphasis supplied).

It is undisputed that three Canadian provinces -- Alberta, British Columbia, and

Manitoba -- have ultimate limitation periods that apply to the pending claims in those provinces.

Alberta's ultimate limitation period is 10 years, and the ultimate limitation periods of British

Columbia and Manitoba are 30 years. As set forth in more detail below, and as Mr. Mew has

made clear in his report and in his testimony, under the governing Canadian authority, these

ultimate limitation periods began to run upon the ***installation*** of Grace's asbestos-containing

products in claimants' buildings. *See Privest Properties Ltd. v. Foundation Co. of Canada Ltd.*,

[1995] 10 W.W.R. 385 (B.C.S.C.), *aff'd* [1997] 5 W.W.R. 265 (B.C.C.A.), *leave to appeal to the*

*Supreme Court of Canada dismissed*, [1997] S.C.C.A. No. 216 (S.C.C.); *Emms v. Prince George*

*(City)*, [1999] B.C.J. No. 1627, *aff'd* [2004] B.C.J. NO. 396, 2001 BCCA 120; *410727 B.C. Ltd.*

*v. Dayhu Investments, Ltd.*, (2004) 241 D.L.R. (4th) 467, 2004 BCCA 379, *rev'ing* [2003] B.C.J.

No. 1878; 2003 BCSC 1142, *leave to appeal to the Supreme Court of Canada dismissed,* (2003),

334 N.R. 194, 219 B.C.A.C. 320; *Armstrong v. West Vancouver (District)*, [2003] B.C.J. No. 303

(B.C.C.A) (Q.L.); *accord* App. Tab C, Mew Dep. at 17; *see also* App. Tab A, Mew Rpt. at 4, 15.

## A. One British Columbia Claim Is Barred By British Columbia's 30-Year Ultimate Statute of Limitations.

British Columbia's ultimate limitation period provides that no action may be

brought "after the expiration of 30 years from the date on which the right to do so arose." *See*

British Columbia *Limitations Act*, R.S.B.C. 1996, c. 266, s. 8(c).  The British Columbia court in

*Privest* construed mirror language concerning normal limitations in British Columbia's statute

and held that, for purposes of an asbestos-in-building case, the cause of action arises upon

installation of the asbestos-containing product. *See Privest, supra* at ¶¶ 158, 184-185 (". . . it is

clear that all the elements necessary to the plaintiffs' cause of action came into existence during

the period 1973 to 1975, when the MK-3 was installed in the Building.").

There is no dispute that *Privest* is the *only* Canadian opinion that has addressed

the appropriate trigger for limitation periods for asbestos property damage claims. *See* App. Tab

E, Irvine Dep. I at 121-122, 177.  The *Privest* decision, which was upheld on appeal, adopted an

installation trigger as a matter of law and has *never* been challenged on this issue. *Id.* at 29-30,

65, 176-177 (Irvine concedes that *Privest's* adoption of an installation trigger was "very much an

issue of law" and that *Privest* "unequivocally" held that the alleged damage was done when the

Monokote was installed).[4]  Under *Privest*, there is no question that British Columbia's ultimate limitation period began to run from the date of installation of Grace's products.[5]

*Privest's* reasoning has been consistently followed by the British Columbia courts in subsequent *Winnipeg Condo*-type economic loss cases. *See, e.g., Emms, supra; Dayhu, supra; Armstrong, supra.*[6]  As recently explained by the British Columbia Court of Appeals, British Columbia's ultimate limitations period "was intended to act as a 'longstop' on the indefinite postponement of actions by the operation of statutory discoverability rules, and represents a 'balance' between the interest of society in finality on the one hand, and on the other hand, the interests of plaintiffs in being able to pursue longstanding claims only recently discovered . . . ." *Dayhu, supra* at ¶ 39.

---

[4]    Irvine also agrees that Judge Drost "carefully and skillfully evaluated the evidence" in Privest and that the judgment "is lengthy, careful and elaborate." Id. at 162-163.

[5]    In fact, the original reports of both of the parties' Canadian law experts opined that the limitation periods for asbestos property damage cases begin to run in British Columbia from the date of installation of the asbestos-containing product. See App. Tab A, Mew Rpt. at 18; App. Tab D, Irvine Rpt. at 25 (when the cause of action arose in British Columbia "would be identified upon ample first instance authority, as the time when the MK-3 was installed in each of the affected buildings."); App. Tab D, Irvine Rpt, Appendix B at 2-3 ("Hence on authority, one must conclude that in British Columbia: (a) [t]he cause of action in this class of case arises not when damage becomes discoverable, but as soon as it is inflicted; and (b) [i]n economic loss cases, founded ultimately on [Winnipeg Condo], it will be deemed to have been inflicted as soon as the defective element is incorporated in the building, whether or not at that time it threatens danger").

    Professor Irvine, however, arrived at his August 22 deposition with a "new" report that purports to modify this conclusion. Professor Irvine admitted that the law had not changed from the time he wrote his initial report until he issued his revised theories. See App. Tab E, Irvine Dep. I at 214. Interestingly, at his deposition on his "new" report, Professor Irvine offered that "I was on the cusp of making another amendment friendly to [Debtors'] interest, but then having spoken to [Mr. Fairey from Speights & Runyan] about this and told him I was trying to produce a final clean copy, he said words to the effect, that for God's sake, don't change it anymore, even if you think it's wrong in some details." See App. Tab F, Irvine Dep. II at 57-58.

[6]    While Professor Irvine initially suggested that Emms was distinguishable, he eventually conceded that Emms was on "all fours" with Privest and that both cases made findings as a matter of law that the trigger for the normal limitations period under the British Columbia statute was the date of installation. App. Tab F, Irvine Dep. II at 71-72, 101. He further agreed that there is a "good case" for the proposition that the British Columbia ultimate limitations period in this type of case commences with installation. Id. at 100.

As the court further remarked, the ultimate limitation period "applies expressly notwithstanding the fact that the cause of action in question may not be discoverable" and "mandates that there be a point after which such prospective defendants may not be sued." *Id.*; *see also Emms*, *supra* at ¶¶ 10-11 (relying on *Privest* and holding that negligent inspection and negligent construction claims were time-barred because more than six years had passed since the building's construction); *see also* App. Tab D, Irvine Rpt. Appendix B at 2 (noting that the Court of Appeals in *Armstrong* applied a date of construction trigger to an economic loss claim and that *Armstrong* "sees eye to eye with Drost J. in *Privest* case . . ." on this issue).\

One British Columbia claimant (Claim No. 11632) provided documentation in support of its claim reflecting that the acoustical plaster alleged to be a Grace product was installed in its building prior to April 2, 1971. *See* Debtors' Motion, Ex. C at Columns 4, 5. British Columbia's 30-year ultimate limitation period accordingly ran on this claim prior to the Debtor's filing of its Chapter 11 petition on April 2, 2001. Under this undisputed record, Claim No. 11632 is time-barred as matter of Canadian law. *Accord* App. Tab C, Mew Dep. at 18-19 (claims in British Columbia where the product was installed before April 2, 1971 are barred by British Columbia's 30 year ultimate limitation period).

## B. All Thirty-Three (33) Remaining Alberta Claims Are Barred By Alberta's 10-Year Ultimate Limitation Period.

Alberta has a 10-year ultimate limitation period that begins to run, like the British Columbia statute, "after the claim arose." Alberta, *Limitations Act*, R.S.A. 2000, c.L-12, Section 3(1), paragraph (b). The Alberta ultimate limitation statute provides that in a breach of duty case such as this, the phrase "after the claim arose" means that the claim "arises when the conduct, act

or omission occurs." *Id.* at Section 3(b). Based on the plain language of the Alberta *Limitations*

*Act*, Alberta's ultimate limitation period began to run when Debtors' conduct occurred, *i.e.,* no

later than when Grace's products were installed. *Accord* App. Tab C, Mew Dep. at 17; App. Tab

A, Mew Rpt. at 15-17. The issue of when "damages" occur for purposes of these claims is

wholly irrelevant to the determination of when the ultimate limitation period starts to run.

*Accord* App. Tab B, Mew Aff. at ¶¶ 10-13.

        This conclusion unequivocally is confirmed by reference to the legislative history

of Alberta's limitation statute. The drafters of Alberta's ultimate limitation period, the Alberta

Law Reform Institute (formerly the Alberta Institute of Law Research and Reform ("ALRI"))

made it abundantly clear that, for good policy reasons, the ultimate limitation period should

*commence with the alleged negligent conduct, and not with the result or consequence of that*

*conduct*. In its 1986 report on limitations, ALRI stated:

> However, if the ultimate period is to achieve its objective of securing
> repose for the society of potential defendants, this period must begin at the
> time of a defendant's negligent conduct, even though that conduct will not
> be legally wrongful unless it produces damage at some time, perhaps
> many years later. We recognize that, under our recommendation, the
> ultimate period for a claim based on the breach of a duty of care may
> expire before the claim has even accrued, for the damage may not have
> occurred by that time, and even if it has, the claim may not have accrued
> under the discovery rule enunciated in the *Kamloops* case. This problem of
> legal principle was also recognized by the Law Reform Committee in its
> 24th Report. Nevertheless, as we pointed out in paragraph 2.164, this
> Committee reached the same conclusion we had come to, because there is
> no feasible alternative consistent with limitations policy. The Committee
> recommended that the long stop limitation period for a claim based on
> negligence should begin at the time of the breach of duty, which the
> Committee equated with the time of the negligent conduct.

App. Tab I, Alberta, Institute of Law Research and Reform, *Limitations: Report for Discussion*

*No. 4* (Edmonton: Institute of Law Research and Reform, September 1986) at 159-160.

In its 1989 report on limitations, the ALRI set out its annotated Model Limitations

Act, which included the present language of section 3(3)(b) – " a claim based on a breach of duty

arises when the conduct, act or omission occurred." The ALRI commented on this section as

follows:

> 44. *The ultimate period commencement rule.* C1. 3(3)(b) provides that the
> ultimate period for a claim based on the breach of a duty begins *when the*
> *conduct, act or omission occurred*. The rule applies to any claim which
> includes damage as a constituent element. It is immaterial whether the
> duty was based on tort, contract, statutory duty or otherwise.
>
>     *            *            *
>
> 47. The ultimate period for a claim based on the breach of a duty may
> expire before the claim has even accrued, for the damage may not have
> occurred by that time, and even if it has, the claim may not have accrued
> under the discovery rule. This problem of legal principle is inescapable
> because there is no feasible alternative consistent with limitations policy.

App. Tab J, Alberta Law Reform Institute, *Report No. 55: Limitations* (Edmonton, Alberta Law

Reform Institute, December 1989) at 70 (emphasis supplied); *see also Meek (Trustee of) v. San*

*Juan Resources Inc.*, [2005], 52 Alta. L.R. (4th) 1, 2005 ABCA 448, *rev'ing on this point*

[2005], 37 Alta. L.R. (4th) 23, 2005 ABQB 9 at ¶¶ 42-43 (ultimate limitation period begins to

run even if damage has not yet been discovered); *Bowes v. Edmonton (City),* 2005 ABQB 502

(same); *Stachniak v. Thorhild (County No. 7)*, 2006 ABPC 182 (same); App. Tab F, Irvine Dep.

II at 36-38 (agreeing that "the intendment of" the statute is that acts omissions commence the

ultimate limitation period and damage is irrelevant).

        This conclusion is consistent with the holding in *Privest*, the only Canadian

decision that has applied Canadian limitations law to an asbestos property damage claim. As set

forth previously, *Privest* held that, for limitation periods that are triggered when "the cause of

action arises," the period begins to run upon installation of the asbestos-containing material. The

language and legislative history of the Alberta ultimate limitation statute is even clearer on this point than its British Columbia counterpart; the Alberta ultimate limitation period begins to run no later than upon the last act of the defendant, *i.e.*, the installation of the product.

Contrary to Speights & Runyan's assertions, the label the claimants attach to their claims would not alter this conclusion. As set forth in Debtors' Motion and as conceded by Speights & Runyan's own proffered Canadian law expert, the asbestos property damage claims at issue here are *only* cognizable under Canadian law as "negligence claims for pure economic loss." *See Winnipeg Condominium Corp. No. 36 v. Bird Construction Co.*, [1995] 1 S.C.R. 85 (S.C.C.) ("*Winnipeg Condo*"); *Privest, supra* at ¶ 213; *see also* App. Tab E, Irvine Dep. I at 142-144 (conceding that, under Canadian law, all the claims in this litigation are negligence claims for pure economic loss).

The import of this characterization is two-fold. First, because these claims are for the anticipated damages to remove the material and no physical damage to the property is necessary to maintain the claim, the limitation periods begin to run from installation of the product. *See* App. Tab A, Mew Rpt. at 9-10; *Winnipeg Condo*, [1995] 1 S.C.R. 85 (S.C.C.); *Privest*, [1995] 10 W.W.R. 385 (B.C.S.C.). Second, no matter what title the claimants attempt to attach to the claims, the trigger remains installation due to special nature of a pure economic loss claim. *See* App. Tab B, Mew Aff. at ¶¶ 9-13.

Moreover, the date of installation trigger adopted by *Privest* is the only trigger that is faithful to the intent and purpose of Canadian ultimate limitation periods. Those laws were adopted to settle stale claims definitively after a time certain regardless of anyone's state of

knowledge about the claim. *See Meek, supra* at ¶ 36; *Bowes, supra* at ¶155.[7]  In order to

accomplish this goal, it is incumbent upon the courts, as the *Privest* court recognized, to

commence these periods from the concrete date of the defendant's last potentially culpable act,

which, in asbestos property damage cases, is the installation of the asbestos-containing product.

***No Canadian court has ever held to the contrary.***

For these reasons, Alberta's 10-year ultimate limitation period bars all 33

remaining property damage claims in that province.  As the record demonstrates, all 33 Alberta

claims involve installations before April 2, 1991 (*i.e.*, 10 years before the filing of Debtors'

Chapter 11 petition).  Eight Alberta claimants admitted on their claim forms that Grace products

were installed in their buildings prior to 1976, more than 25 years before the filing of Debtors'

Chapter 11 petition.[8]  In addition, it is undisputed that Grace stopped selling asbestos-containing

products in Canada by 1976.  *See* Debtors' Motion, Ex. D.

Alberta's ultimate limitation period accordingly barred all of the Alberta claims

by at least 1986, fifteen years before Debtors filed their Chapter 11 petition.  *Accord* App. Tab C,

Mew Dep. at 17-18 (any Alberta claims where the product was installed before April 2, 1991

would be barred by Alberta's 10 year ultimate limitation period); *see also* App. Tab A, Mew Rpt.

at 16-17, *Limitations Act*, R.S.A. 2000, c. L-12; *Meek, supra* at ¶ 36; *Bowes, supra* at ¶155.

---

7    As Alberta Law Reform Institute, Report No. 55: Limitations states "The 2-year discovery period does not
begin until the claimant discovered, or should have discovered, the damage and further relevant information.
However, to achieve its objective of securing repose for the society of potential defendants, the ultimate period must
begin at the time of a defendant's negligent conduct, even though that conduct will not be legally wrongful unless it
produces damages at some time, perhaps many years later."  App. Tab J, AIRR Report at 70 (emphasis supplied).

8    Claim numbers 12388, 12421, 12422, 12423, 12454, 12489, 12496, and 12576.  See Debtors' Motion, Ex.
C.

C. **The One Remaining Manitoba Claim Is Barred By
Manitoba's 30-Year Ultimate Statute of Limitations.**

Manitoba has a 30-year ultimate limitations period that, like the Alberta statute, begins to run from "the acts or omissions that gave rise to the cause of action." Manitoba, *The Limitations of Action Act*, C.C.S.M. c.L150, subsection 14(4). As with the Alberta and British Columbia ultimate limitation periods, Manitoba's 30-year period begins to run from the date of installation of Debtors' products. *Accord* App. Tab C, Mew Dep. at 17; App. Tab A, Mew Rpt. at 19.

For the Manitoba claim (Claim No. 11620), it is undisputed that Grace's product was installed in the building in 1956. Debtors' Motion, Ex. C. Manitoba's 30-year ultimate limitation period ran on this claim by 1986, more than 15 years before Debtors' filed their Chapter 11 Petition. This claim is time-barred. *Accord* App. Tab C, Mew Dep. at 18-19; *see also* App. Tab E, Irvine Dep. I at 234-235 (claimant's expert concedes that "in those circumstances it is very, very likely that the ultimate limitation period would cut short this action.").

II. **TWENTY ADDITIONAL CANADIAN CLAIMS ARE
BARRED BY CANADIAN NORMAL LIMITATIONS PERIODS.**

In addition to the foregoing 35 claims that are barred by Canadian ultimate limitation periods, an additional 20 remaining Canadian claims are barred by Canadian normal limitation periods. While normal limitation periods generally are subject to discoverability principles similar to those in the United States, under Canadian law, *it is the claimants' burden to show that, not only did they not know of the facts that form the basis of their claims, but that they could not have known of those facts before the normal limitation periods ran.* *See*

App. Tab C, Mew Dep. at 36, 38-39, 40-41 (claimants would have to show "that they had not discovered or could not with the exercise of reasonable diligence have discovered the existence of a claim or a cause of action."); Tab F, Irvine Dep. II at 11 ("Nowadays it appears the burden of proof is on the plaintiff . . . to show a prima facia case that he has brought his action in a timely fashion . . . .).[9] Claimants have failed to come forth with *any* such evidence, much less to present evidence sufficient to satisfy their burden.

Canadian courts apply a burden-shifting approach to determine whether a claim is time-barred under the applicable normal limitation period. To establish a limitation defense, the defendant only has to show that the claim was brought after the limitation period expired. *See* App. Tab C, Mew Dep. at 29-31; App. Tab A, Mew Rpt. at 11-12; *see also* Graeme Mew, The Law of Limitations, 2nd ed. (Markham, On: Butterworths, 2004) at 95. Then, if the plaintiff's claim is presumptively time-barred, *the burden shifts to the plaintiff to prove that running of the limitation period should be postponed until some time after the date of the alleged wrong.* *Id.*; *see also* Alberta, *Limitations Act*, R.S.A. 2000, c. L-12, s.3(3)(a)(burden on plaintiff to show discoverability); British Columbia, *Limitation Act*, R.S.B.C. 1996, c. 266, s. 6(7) (same); Manitoba, *Limitations Action Act*, C.C.S.M. c. L150, s. 7(6) (same); *Ford Motor Co. of Canada, Ltd. v. Ontario Municipal Employees Retirement Board*, (2004), 41 B.L.R. (3d) 74, [2004] I.J. No. 19. ¶ 272 (burden on plaintiff to show discoverability under Ontario normal limitations act).

---

9    The 6-year normal limitation period in Manitoba is not automatically subject to discoverability principles. Instead, a claimant must petition the Manitoba courts for leave to begin an action once the 6-year period has expired and within one year of when the claimant discovered the cause of action. Manitoba, Limitations of Action Act, C.C.S.M. cL150, subsection 14(1). The Manitoba claimant here filed no such petition in Canada. See App. Tab D, Irvine Rpt. at 21. Accordingly, there is no dispute that the Manitoba claim is barred by both Manitoba's ultimate and normal limitations periods.

To sustain this burden, the plaintiff must establish that "the material facts upon which its cause of action is based *were not discoverable with the exercise of reasonable diligence* until some time after the date of the alleged wrong." *Id.* As one court explained, the plaintiff cannot simply wait until he or she has an expert report in hand which supports the claim before being deemed to have discovered the existence of a claim. *See* App. Tab A, Mew Rpt. at 11 (*citing Soper v. Southcott* (1998), 39 O.R. (3d) 737 (Ont. C.A.)).

There is no dispute that the normal limitation periods implicated by Debtors' Motion are either two or six years.[10] It is similarly undisputed that Grace stopped selling asbestos-containing products in Canada by 1976. *See* Debtors' Motion, Ex. D. Accordingly, as a matter of law, there can be no dispute that the normal limitation periods presumptively ran on these claims by no later than 1982. Under Canadian law, the burden has shifted to the claimants to show this Court that their claims are not time-barred.

For the 55 remaining Canadian claims subject to Debtors' Motion, the claimants cannot, and have not, come forth with any evidence that they could not have discovered the basis for their claims before April 2, 1995, six years before Debtors' filed their Chapter 11 petition.[11] Because claimants have come forth with no evidence that they could not have discovered their

---

[10]    British Columbia, Manitoba, Newfoundland and Labrador, Nova Scotia, and Ontario have a six-year normal limitations period. See generally App. Tab H. Alberta's normal limitation period is two years. Id. Although all of the Alberta claims are barred by Alberta's 10-year ultimate limitations period (see pages 7-11 supra), they are also barred by Alberta's two-year normal limitation period.

[11]    In fact, claimants' product identification "expert," Donald Pinchin, testified that he was able to identify Grace asbestos-containing fireproofing products in buildings "in the early 1980s." See Debtors' Reply, Ex. D at 78-79. In the 1980s, Pinchin's company conducted presentations for building owners throughout Canada in which the identification and detection of asbestos-containing products in buildings, including Grace's MK-3, were discussed. Id. at 82-83; see also id. at 41-43, 72-73. 107-108. There accordingly is no record evidence that claimants could not, with the exercise of reasonable diligence, have discovered their claims before 1995.

claims by April 2, 1995, Debtors are entitled to summary judgment on those claims as a matter of law.[12]

Moreover, given the notoriety of asbestos issues in Canada, the Canadian claimants would be unable to submit any evidence to this Court that would successfully postpone the running of the normal limitation periods. Canadian courts have held that "the alleged health hazards of asbestos were of 'public character and notoriety' in Canada in the late 1960's and early 1970's." *See Canadian Indemnity Co. v. Johns-Manville Co. Ltd.*, (1988), 54 D.L.R. (4th) 468 (Que. C.A.); (1990) 72 D.L.R. (4th) 478 (S.C.C.); *see also Privest, supra* at ¶¶ 86-126 (relying on the *Johns-Mansville* decision in holding that claimants could not meet their burden of establishing that they could not have known of their claims within the normal limitations period).[13]

In addition, pervasive Canadian legislation, enacted prior to 1990, made it a statutory duty for building owners to know whether asbestos products were contained in their buildings. *See* App. Tab A, Mew Rpt. at Ex. D.[14] Finally, the Canadian and American media

---

[12]    In claimant's response to Debtors' Motion, claimants point to allegations in their claim forms that they did not know that Debtors' asbestos-containing products were in their buildings until 2003. As an initial matter, at the summary judgment stage, claimants may not rest on their allegations but must come forth with admissible evidence to meet their burden of proof. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Even if claimants' allegations were taken as true, however, those allegations are insufficient to meet claimants' burden of proving that they could not, through the exercise of reasonable diligence, have discovered the basis for their claims before April 2, 1995.

[13]    Professor Irvine agrees that in Privest, Judge Drost applied the Supreme Court of Canada's holding on constructive knowledge in Johns-Manville to building owners as a matter of law. See App. Tab F, Irvine Dep. II at 120-121. He further conceded that he has no basis to disagree with that holding. Id.

[14]    In addition, in response to concerns regarding asbestos containing materials, the Royal Commission on Matters of Health and Safety Arising from the Use of Asbestos in Ontario ("RCA") was established in 1980 to investigate and inform the public about asbestos hazards. See Debtors' Motion, Ex. F at 13-14. The RCA's 1984 final report provided the Canadian public with a detailed analysis of issues surrounding asbestos in buildings. Id.

bombarded the Canadian claimants with information about the alleged hazards of asbestos containing materials well before the mid-1990s. *See* Debtors' Motion, Ex. F.

There is a very good reason why claimants have failed to come forth with any evidence demonstrating that they could not have known of the facts that form the basis of their claims by April 2, 1995. In light of the *Privest* and *Johns-Manville* decisions, the Canadian legislation requiring building owners to know whether asbestos-containing products were in their buildings, and the notoriety in Canada of the controversy surrounding asbestos in buildings, the Canadian claimants cannot successfully invoke discoverability principles in the Canadian courts to postpone the running of the normal limitations periods. *Accord* App. Tab C, Mew Dep. at 31-33 ("It seems highly unlikely that a tenable argument could be made [on discoverability] given the notoriety . . . [and] legislation . . . that dealt with the use of asbestos . . . . It would be very difficult to ignore the existence of that widely available and disseminated information.").

Accordingly, not only have the Canadian claimants failed to come forth with any evidence to meet their burden of proving that they could not have known of their claims before 1995, but, according to renowned Canadian limitations expert Graeme Mew, it is "highly unlikely" that they would ever be able to meet that burden under Canadian law. Debtors are entitled to summary judgment on all 55 Canadian claims based on the undisputed record and the law.

## III.  THE *ANDERSON MEMORIAL* ACTION FILED IN A STATE COURT IN SOUTH CAROLINA IS IRRELEVANT TO DEBTORS' MOTION.

Speights & Runyan would casually brush aside the foregoing Canadian limitations law by invoking a putative tolling effect supposedly created by the *Anderson*

16

*Memorial* action that they filed in South Carolina in 1992. Try as they might to create diversion

with this red herring, *Anderson Memorial* provides no escape from Canadian law for the

Canadian claimants.

As an initial matter, while several Canadian provinces have recently enacted class

proceedings legislation containing tolling provisions for putative class actions, ***by their terms,***

***those acts do not apply to actions begun prior to their effective dates***. *See* App. Tab B, Mew

Aff. at ¶ 7; *see, e.g.,* British Columbia *Class Proceedings Act ("BCCPA")*, Part 6, s.41 ("This

Act does not apply to . . . a representative proceeding commenced before this Act comes into

force"). Class proceedings acts were enacted in Ontario in 1992 (with an effective date in 1993),

in British Columbia in 1995, in Newfoundland in 2002, in Manitoba in 2003, and in Alberta in

2004. *Id.* Each of these acts became effective *after* 1992 when *Anderson Memorial* was filed.

Accordingly, *Anderson Memorial* could not, and indeed did not, toll any of the Canadian

claimants' claims.[15]

In addition, the tolling provisions of the respective Canadian class proceedings

acts, by their terms, only apply to actions commenced within their particular Canadian province

and do not apply to actions begun outside of Canada. *See* App. Tab B, Mew Aff. at ¶¶ 5-6;

*Pardy v. Bayer, Inc.*, [2003] N.J. No. 182 (Sup.Ct.T.D.); *see also* App. Tab E, Irvine Dep. I at

---

[15]     While Professor Irvine's report implies that Anderson Memorial may have tolled the Canadian claimants'
claims, he admits that he is not a class action expert, is not rendering an opinion on whether Anderson Memorial
tolled the Canadian claims and has not analyzed the language of the Class Action Proceedings Acts to determine
their retroactive application. See App. Tab E, Irvine Dep. I at 181, 186-188, 192-197. He conceded that his basis
for the tolling proposition in his report is "very fragile." Id. at 187-188. Irvine's musings concerning Anderson
Memorial and its potential tolling effect are accordingly unreliable. Even Professor Irvine seems to implicitly
recognize, however, that the Canadian claims are time-barred under Canadian law if Anderson Memorial provides
no tolling effect. See App. Tab D, Irvine Rpt. at 28 ("[t]he fate of all the Canadian litigants depends in large
measure on whether they are still to be considered as participants in the Anderson Memorial Hospital class action . .
. [i]f they are not . . . their claims seem less likely of success.").

198 (Canadian class action proceeding acts apply only to proceeding commenced in the

appropriate court in the Canadian provinces); Côté, *The Interpretation of Legislation in Canada*

(3rd ed., 2000) at 200 (unless they explicitly or implicitly provide otherwise, Canadian statutes

are interpreted to apply only to acts within their territorial boundaries).[16]  Accordingly, even if

the Canadian class proceedings acts could be applied retroactively – which by their clear terms

they cannot – they would still not recognize any tolling effect from the filing of *Anderson*

*Memorial* in a state court in South Carolina.

      As a further hurdle, under South Carolina's door closing statute, the Canadian

claimants could never have been members of the *Anderson Memorial* putative class.  *See* S.C.

Code Ann. § 15-5-150.  In applying that statute, the *Anderson Memorial* court made clear in

1994 that *Anderson Memorial* could not include non-South Carolina residents.  *See* Debtors'

Reply, Ex. A (*Anderson Memorial* 8/9/94 Memorandum Opinion); *see also Bell v. Monsanto*

*Corp.*, 579 S.E.2d 325, 328 (S.C. 2003)(confirming effect of South Carolina's door closing

statute).  There accordingly can be no tolling of the Canadian claims through *Anderson*

*Memorial* as a matter of South Carolina law.

      Furthermore, as explained by Mr. Mew, any ephemeral tolling through *Anderson*

*Memorial* would, in no event, operate to toll Canadian ultimate limitation periods.  *See* App. Tab

---

16     The class proceedings acts themselves are drafted to be applicable only to actions within their respective
Canadian provinces.  For example, the British Columbia Class Proceedings Act tolls limitation periods for a
"proceeding" in which "application is made for an order certifying a proceeding as a class proceeding."  The Act
defines the term "class proceeding" as "a proceeding certified as a class under Part 2".  BCCPA, Part 1. s.1.  Part 2
provides that only a "class of persons who are resident in British Columbia may commence a proceeding in the court
on behalf of members of the class."  Id. at Part 2(1).  The Act further defines the term "court" to be exclusively the
Supreme Court of British Columbia.  Id. at Part 1. s.1.  In addition, by its terms, the Act does not apply to "a
proceeding that may be brought in a representative capacity under another act."  Id. at Part 6, s. 41.

B, Mew Aff. at ¶ 8.  It would be inconsistent with the purpose and intent of the ultimate limitation laws to apply class action tolling principles to eviscerate their effect.  ***There is no Canadian jurisprudence that holds otherwise.***

In any event, the 33 Alberta claims and one Manitoba claim at issue here were barred by those provinces' respective ultimate limitation periods even before 1992 when *Anderson Memorial* was filed.  The Alberta claims were barred under Alberta's 10-year ultimate limitation period no later than 1986.[17]  The Manitoba claim was similarly barred under Manitoba's 30 year ultimate limitation period by 1986.

In short, Speights & Runyan's invocation of *Anderson Memorial* in an attempt to resurrect the 55 time-barred Canadian claims subject to Debtors' Motion is nothing more than a red herring that is irrelevant to Debtors' Motion as a matter of Canadian (and South Carolina) law.

---

[17]     Speights & Runyan appear to argue that because Anderson Memorial was begun before the Alberta ultimate limitation statute was enacted, the Alberta claimants' claims are not barred by Alberta's ultimate limitation period.  As set forth previously, however, the Canadian claimants were never, and never could have been, part of the Anderson Memorial putative class.  The Alberta ultimate limitation statute specifically applies "where a claimant seeks a remedial order in a proceeding commenced on or after March 1, 1999, whether the claim arises before, on or after March 1, 1999."  Alberta, Limitations Act, s. 2(1).  Because the Canadian claimants were not part of Anderson Memorial and because their claims are deemed to have been filed in this proceeding when Debtors filed their Chapter 11 petition on April 2, 2001, the Alberta ultimate limitation period applies to and bars their claims.

## CONCLUSION

Debtors respectfully request that the Court enter the attached order disallowing

and expunging the remaining 55 time-barred Canadian claims that are subject to Debtors'

Motion.

Dated: September 5, 2007

REED SMITH LLP
James J. Restivo, Jr. (Bar No. 10113)
Lawrence E. Flatley (Bar No. 21871)
Douglas E. Cameron (Bar No. 41644)
Traci S. Rea (Bar No. 76258)
435 Sixth Avenue
Pittsburgh, PA  15219
Telephone:  (412) 288-3131
Facsimile:  (412) 288-3063

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Lisa Esayian
Michael Dierkes
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and
Debtors in Possession