# TAB B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) |
| W. R. GRACE & CO., et al. | ) Chapter 11 |
| | ) |
| Debtors. | ) Case No. 01-01139 (JKF) |
| | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |
| | ) |

### AFFIDAVIT OF GRAEME MEW IN SUPPORT OF
### DEBTORS' MOTION FOR SUMMARY JUDGMENT DIRECTED TO 88 CLAIMS
### FROM CANADA BASED UPON THE STATUTE OF LIMITATIONS

Graeme Mew, being duly affirmed, states as follows:

1. I am a practising lawyer in Toronto and a specialist in the law of limitations. I have written and spoken extensively on the subject of the law of limitations in various Canadian provinces and territories. In particular, I am the author of The Law of Limitations (2nd ed. 2004), published by the Butterworths division of LexisNexis, which I believe to be the most widely-used Canadian textbook on the law of limitations and which is the only limitations text of national scope currently in print in Canada. My qualifications are set forth in more detail in my *Opinion on Canadian Limitations Issues*.

2. I submit this affidavit (the "Affidavit") in connection with the Debtors' Motion for Summary Judgment (the "Motion") directed to 88 claims from Canada based upon the law of limitations in Canada, which was filed by the debtors in the above-captioned chapter 11 case (the "Debtors"). The 88 claims (the "Claims"), which are the subject of the Motion, are based on allegations of asbestos-related property damage to properties located in Alberta, British Columbia, Manitoba, Newfoundland, Nova Scotia, Ontario and Saskatchewan.

3. I have been asked by counsel representing W. R. Grace and Co. ("Grace") to assist the court by providing an affidavit outlining my opinion on the operation of the law of

limitations in certain Canadian provinces and specifically as to (a) the effect of limitations "tolling" provisions in Canadian class proceedings legislation and (b) the significance, for limitation purposes, of specific causes of action arising in Canadian tort law.

I. CLASS PROCEEDINGS LEGISLATION AND TOLLING PROVISIONS

4. Many Canadian provinces have enacted legislation that governs class proceedings. The Ontario[1], Manitoba[2], British Columbia[3], Alberta[4], Newfoundland[5] and Saskatchewan[6] statutes governing class proceedings contain provisions which operate to suspend, or "toll", the running of the limitation period in specific circumstances.

5. The class proceedings statutes do not state that the tolling provisions apply to postpone the running of a limitation period pending a class action commenced in foreign jurisdiction. Furthermore, there is no Canadian jurisprudence that stands for the proposition that a tolling provision in a class proceeding statute can be triggered by a class proceeding in a foreign jurisdiction. There is only one Canadian case that touches on the issue, and it implies that a class proceeding act's tolling provision is not triggered by a class proceeding in a foreign jurisdiction.

6. That case, *Pardy v. Bayer Inc.*[7], a decision of the Supreme Court of Newfoundland and Labrador, ruled on an application by the defendant to dismiss or permanently stay a proposed class action in that province as an abuse of process. The plaintiffs also had a pending class action in the province of Manitoba. Mercer J. dismissed the application. In so doing, he considered that the Newfoundland action conferred on the plaintiffs the protection of the tolling provision of the Newfoundland class proceedings statute. Mercer J. expressed the concern that if he dismissed the Newfoundland action, the putative class

---

[1] *Class Proceedings Act*, 1992, S.O. 1992, c. 6, which came into force on January 1, 1993.
[2] *Class Proceedings Act*, C.C.S.M. c. C130, which came into force on January 1, 2003.
[3] *Class Proceedings Act*, R.S.B.C. 1996, c.50, which came into force on August 1, 1995.
[4] *Class Proceedings Act*, S.A. 2003, c. C-16.5, which came into force on April 1, 2004.
[5] *Class Actions Act*, S.N.L. 2001, c. C-18.1, which came into force on April 1, 2002.
[6] *Class Actions Act*, S.S. 2001, c. C-12.01, which came into force on January 1, 2002.
[7] [2003] N.J. No. 182 (Sup.Ct.T.D.)

members in Newfoundland would risk the expiry of limitation periods in Newfoundland. In declining to dismiss the Newfoundland action, it would appear that Mercer J. concluded that, despite the existence of a class proceeding in a foreign jurisdiction, if there was no representative proceeding in Newfoundland, the putative class members in Newfoundland would not have the benefit of the tolling provision. By implication, the reasons of Mercer J. suggest that a province's tolling provision is not triggered by the existence of a class proceeding in a foreign jurisdiction.

7. Furthermore, all of the provinces' class proceedings statutes, by express provision, do not apply to class proceedings commenced prior to the date that the statutes came into force. As such, the statutory "tolling" provision in the Alberta class proceedings legislation does not apply to class proceedings commenced prior to April 1, 2004. The tolling provision in the British Columbia class proceedings legislation does not apply to class proceedings commenced prior to August 1, 1995. The tolling provision in the Manitoba class proceedings legislation does not apply to class proceedings commenced prior to January 1, 2003. The tolling provision in the Newfoundland class proceedings legislation does not apply to class proceedings commenced prior to April 1, 2002. The tolling provision in the Ontario class proceedings legislation does not apply to class proceedings commenced prior to January 1, 2003. The tolling provision in the Saskatchewan class proceedings legislation does not apply to class proceedings commenced prior to January 1, 2002. For the purposes of what constitutes "commencement" of class proceedings, the Canadian jurisprudence instructs us that "commencement" means the date of commencement of the action, not the date of certification.[8]

8. Even if one were to assume that the class proceeding act tolling provisions do apply with respect to class proceedings commenced in a foreign jurisdiction, and the class proceeding was commenced prior to the enactment of the pertinent class proceedings act, the ultimate limitation periods in the provinces' limitations acts are still the ultimate "final word" when it comes to limitation periods. There is no Canadian jurisprudence standing for the proposition that tolling provisions in class proceedings statutes can

---

[8] *Logan v. Canada (Minister of Health)* (2004), 71 O.R. (3d) 451 (Ont.C.A.).

3

postpone an ultimate limitation period. For the many reasons already put forth in my *Opinion on Canadian Limitations Issues*, a limitation act's ultimate limitation period is the "final stop" for all claims, unless otherwise specifically provided for in the limitations statute.

## II. CAUSES OF ACTION

9. In the present situation, I understand that the claimants allege that someone else's wrongdoing has resulted in their financial detriment, and, despite the absence of contractual or fiduciary rights, they seek compensation. Their claims sound in tort[9], whether the specific cause of action alleged is the tort of negligence (including the breach of a duty to warn), the tort of nuisance, or the tort of deceit. Anglo-Canadian law tends to place less emphasis on the labels used to describe wrongs that are alleged to have been committed. Thus the late Professor Fleming commented[10]:

> "... tortious liability is constantly expanding and there is ample evidence that a plaintiff's claim is not necessarily prejudiced because he is unable to find a specific label for the wrong of which he complains. New and innominate torts have been constantly emerging in the long course of our history and the courts have shown no inclination at any stage to disclaim their creative functions, if considerations of policy pointed to the need for recognising a new cause of action. The most obvious illustration is the ever-expanding concept of tortuous negligence, saliently revealed in the recent admission of liability for negligent misrepresentation and for purely pecuniary [economic] loss."

10. As stated in my *Opinion on Canadian Limitations Issues*, when considering the date upon which a limitation period starts to run, it is my opinion that Canadian courts would follow the leading decision on liability for the installation of asbestos containing products (and the limitation issues that arise), which is *Privest Properties Ltd. v. Foundation Co. of*

---

[9] A contract claim generally requires privity. In contract cases, the cause of action accrues and the limitation period begins running on the date of the breach of the contract, that is, the date upon which a party bound by the contract failed to do what the contract required.

[10] John G. Fleming, *The Law of Torts*, 8th ed., (The Law Book Company: 1992) at 5.

4

*Canada Ltd.*[11] *Privest* was the first asbestos property damage claim to reach trial in a Canadian Court. Mr. Justice Drost's decision in *Privest* was later upheld on appeal.[12]

11. In *Privest*, the plaintiffs made allegations that the manufacturer of the impugned asbestos-containing product, MK-3, was negligent in that it knew or ought to have known that MK-3 was a dangerous product, capable of causing harm to others either in the course of its application or by its continued use or existence in the building at issue in that case, and that it breached a common law duty to warn them of the dangers "inherent" in that product. The plaintiffs also alleged that the manufacturer negligently misrepresented the product as being a superior one, without disclosing that it contained asbestos, and that other, asbestos-free, products then available could achieve the same purpose. Moreover, the plaintiffs alleged that, by using the term "cementitious" to describe their product, the manufacturer actively sought to convey the impression that there was no concern about the asbestos in their product.

12. Despite the allegations of breach of a duty to warn and negligent misrepresentation, Drost J. stated that the real "gist" of the plaintiffs' claim was for the recovery of the costs and loss of revenue associated with the removal and replacement of a product alleged to be inherently defective and was thus a claim for pure economic loss. Specifically, in the context of the characterisation of the plaintiffs claims in tort in that case Drost J. stated:

> "In my view, the issues which arise out of these facts, at least so far as the plaintiffs' claims in tort are concerned, have been rendered academic by the Supreme Court of Canada's decision in *Winnipeg Condominium*[13], *supra*. Those who take part in the design and construction of a building owe a duty in tort to subsequent purchasers of the building to take reasonable care in its construction."[14]

---

[11] (1995), 128 D.L.R. (4th) 577, aff'd (1997), 143 D.L.R. (4th) 635 (B.C.C.A), *leave to appeal dismissed*, [1997] S.C.C.A. No. 216 (S.C.C.).

[12] (1997), 143 D.L.R. (4th) 635 (B.C.C.A.).

[13] In *Winnipeg Condominium Corporation No. 36 v. Bird Construction Co.*, [1995] 1 S.C.R. 85 the court conclusively stated that pure economic loss can be recoverable in tort where there is no privity of contract between the owner and general contractor.

[14] *Privest*, supra note 15.

5

13. Thus regardless of the nominate tort alleged, the claimants' allegations fall in line with what the leading author on Canadian tort law describes as recovery for pure economic loss.[15] As set out in my *Opinion on Canadian Limitations Issues*, Drost J. ruled in *Privest* that all of the elements necessary to the plaintiff's cause of action for recovery of pure economic loss came into existence when the MK-3 was installed. Furthermore, even where a continuing duty to warn is alleged, a new cause of action does not arise for every day that passes that a warning is not given.[16]

## IV. SUMMARY

14. It remains my opinion that all of the Claims are time-barred as a result of the provincial limitations acts' ultimate limitation periods and normal limitation periods. The provincial class proceedings statutes do not permit tolling of the limitation period for individuals who seek to join class proceedings that commenced prior to the date that the class proceedings legislation in those provinces came into force. Furthermore, there is no Canadian authority for the proposition that a foreign jurisdiction's class action proceeding is able to trigger the tolling provision in a class proceeding statute. If anything, the Canadian jurisprudence suggests the opposite; that a foreign jurisdiction's class proceeding does not trigger the tolling provision in a province's class proceeding statute. Furthermore, my *Opinion on Canadian Limitations Issues* explains my opinion that the provinces' ultimate limitation periods operate as a longstop provision barring all claims after the expiry of the ultimate limitation period unless specifically provided for in the limitations statute. In addition, it is my opinion that the claims being alleged by the plaintiff for financial compensation, based on allegations that someone else's negligence has resulted in their financial detriment, in the absence of contractual or fiduciary rights,

---

[15] Lewis N. Klar, Q.C., *Tort Law*, 3rd ed., (Thomson Carswell: 2003) at 201.
[16] See *Day v. Central Okanagan (Regional District)*, [2000] B.C.J. No. 1417 (B.C.S.C.) as an example of how the limitations analysis is conducted in a duty to warn case. There is no new cause of action accruing each successive day that goes by without a warning being given. It is also worth repeating that, in *Privest*, although the allegations included breach of a continuing duty to warn, the claim was ultimately for damages for pure economic loss, and the resulting limitation period applied, being the date of the installation of the MK-3.

fall under the category of recovery for pure economic loss and, therefore, the cause of action accrued upon installation of the product.

SWORN before me at the City of Toronto, )
in the Province of Ontario, )
on 23 March 2007 )
)
)
_____ )    _____
ANNA CASEMORE                     GRAEME MEW
Commissioner for Taking Oaths

-7-