# TAB I


LAWSON LUNDELL
LIBRARY

INSTITUTE OF LAW RESEARCH AND REFORM

EDMONTON, ALBERTA

LIMITATIONS

Report for Discussion No. 4

September 1986

138

hence that an extension is justified. Nevertheless, we believe that because of the procedure established by the statutes, which requires the applicant to apply for an extension of the limitation period, a court would impose the burden of proof on the applicant.

2.161 Neither the 1973 Scottish Act nor the 1980 English Act provide for either a postponement or an extension of an otherwise controlling limitation period beginning at accrual. Rather, for a claim subject to a discovery rule, the limitation period begins at discovery. Neither of these Acts resolves the burden of proof issue, and we are unwilling to speculate as to how a court would resolve it.

(8) Need for an ultimate limitation period

2.162 A limitations system usually contains provisions extending or suspending an applicable limitation period for a person under disability. However, a provision establishing an ultimate or maximum period of time limiting the duration of extensions or suspensions based on disability is also common. For example, subsection 46(3) of the present Alberta Act bars an action 30 years after the accrual of the claim, notwithstanding that the claimant was under disability when the claim arose. We will discuss the subject of persons under disability in Chapter 6 of this report.

2.163 When the beginning of a limitation period is governed by a discovery rule, a problem is created which is similar to that caused by the extension or suspension of a limitation period for a person under disability. A claimant may not be able to

139

discover the facts required to activate the limitation period until decades after the occurrence of the events upon which his claim is based. Without an overriding ultimate limitation period, cases of this kind would prevent a limitations system which utilizes a discovery rule from achieving its objectives. Section 8 of the B.C. Act relies on a 30-year ultimate limitation period to solve this problem. Under section 8 no claim may be brought more than 30 years after its accrual, whether or not it could have been discovered with reasonable diligence during this period. Although we agree that a claim governed by a discovery rule should also be subject to an ultimate limitation period, usually beginning at accrual, we believe that a 30-year period is excessive when evaluated in terms of the reasons which require a limitations system.

2.184 In its 24th Report, the Law Reform Committee recommended that a discovery rule with a three-year limitation period be applied to claims for damages for property damage and economic loss, when the claim is based on negligence and involves a latent defect. Because a claimant might not acquire the requisite knowledge until many years after the negligent conduct, the Committee concluded that an ultimate limitation period, which they referred to as a "long stop", was required. The Committee recommended that the long stop period be 15 years. However, the Committee was concerned only with negligence claims involving latent defects. Under English law it is now clear that a negligence claim does not arise until the damage has occurred, and if there is a latent defect, the damage may not occur until many years after the negligent conduct. If the long stop period were to begin at the accrual of a claim, in delayed damage cases

140

defendants would be vulnerable to stale claims for a virtually indefinite period, notwithstanding the long stop. Hence the Committee recommended that the long stop period begin at the time of a defendant's breach of duty, which they assumed was the time of the negligent conduct.

2.165 For us the need for a conclusive ultimate limitation period is not a difficult issue. Rather, we believe the crucial issues are the time of commencement and the duration of such a period. We will discuss these issues and state our recommendations in paragraphs 2.194-213.

E. The Institute Recommendations Regarding Limitation Periods

2.166 We have discussed the two historic limitation strategies at length. It is now clear that a new strategy, utilizing design elements from both of the classic models, is evolving through the current reform movement. Although we believe that the Alberta Limitations Act (hereafter the "new Alberta Act") should continue to combine elements from both the legal and equitable systems, in terms of its basic orientation, which depends on the operation of the limitation periods, we believe that it should rely to a much more significant degree on the equitable strategy. At this point we will provide a very brief overview of the strategy we have selected.

2.167 In Chapter 3 we will recommend which categories of claims should not be subject to any limitation provision, and which could, therefore, be brought at any time. Because of these claims, there would still be some characterization and categorization problems in the new Alberta Act.

154

(a) against a successor owner of a claim when either a predecessor owner or the successor owner of the claim first acquired or ought to have acquired the requisite knowledge,

(b) against a principal when either

(i) the principal first acquired or ought to have acquired the requisite knowledge, or

(ii) an agent with a duty to communicate the requisite knowledge to the principal first actually acquired that knowledge, and

(c) against a personal representative of a deceased person as a successor owner of a claim, at the earliest of the following times:

(i) when the deceased owner first acquired or ought to have acquired the requisite knowledge, if more than two years before his death,

(ii) when the representative was appointed, if he actually had the requisite knowledge at that time, or

(iii) when the representative first acquired or ought to have acquired the requisite knowledge, if after his appointment.

(3) Ultimate limitation period

(a) Basic ultimate rule

2.194 We discussed the question of the need for an ultimate limitation period in paragraphs 2.162-165. We believe that any limitations system which utilizes a discovery rule should also have an ultimate limitation period. There are two fundamental issues: (1) when should the ultimate period begin, and (2) how long should it extend.

2.195 We will recommend that, for most claims, the ultimate period should begin with the accrual of the claim. This period is defendant oriented: its objective is to benefit the entire society of potential defendants by cleansing the slate as to any alleged breach of duty at some fixed point in time after it occurred. A breach of duty will be based on some act or omission of the defendant. A potential defendant can only begin counting at the time of his conduct, and he will frequently have no knowledge that particular conduct may have breached a duty owed to someone. Thus, in order to achieve its objective as a provision of repose, the ultimate period must begin when a person did, or failed to do, something. As most claims will accrue at the time of the defendant's conduct, beginning the ultimate period at the accrual of a claim will usually be quite functional. However, this will not always be so.

2.196 We discussed the accrual rule problems at some length in paragraphs 2.79-103. In some cases beginning a limitation period at the accrual of a claim produces an unsatisfactory result insofar as limitations policy is concerned. In some cases the uncertainty of the accrual rules produces problems. Because the limitations system we propose will subject all claims to a discovery period, and because this will be the relevant limitation period for the great majority of claims, the accrual rule problems will be greatly diminished in practice. We will subsequently make recommendations designed to resolve the accrual rule problems with respect to specific types of claims where they have been most troublesome.

156

2.197 The crucial issue is the duration of the ultimate limitation period. In Chapter 1 we presented a considered discussion of the reasons for a limitations system. Within ten years after the occurrence of the events on which the overwhelming majority of claims are based, these claims will have been either abandoned, settled, litigated or become subject to a limitations defence under the discovery rule. The class of remaining potential claimants will have become very small, but without an ultimate period, the entire society of potential defendants will remain subject to a tiny group of claims. The reasons for a limitations system based only on peace and repose, and economies, would in our judgment justify an ultimate period of ten years. Insofar as alleged human transgressions are concerned, the slate should be cleaned at this time for the peace and repose of the collective society and its individual members. By this time the cost burden imposed on potential defendants, and through them on the entire society, of maintaining records and insurance to secure protection from a few possible claims will have become higher than can reasonably be justified relative to the benefits which might be conferred on a narrow class of possible claimants.

2.198 It is, however, the evidentiary reasons for a limitations system which compel us to select an ultimate period of ten years. We recognize that any ultimate period will result in the denial of a remedy to some claimants with meritorious claims which could not with reasonable attention have been discovered before the expiration of this period. Obviously, more claims will be caught by a period of ten years than by one of 30 years, although we think that the difference will be exceedingly

157

n ten

ll have
t to a
f
but
I
The
epose,
eriod

e peace
rs,
ts, and
and
will
ve to


eriod
result
us

y, more
30
dingly

slight. We have little doubt that it was sensitivity to the plight of meritorious claimants which led to the choice of 30 years in the B.C. Act. But, with the greatest respect to those who made this judgment, we do not think that it gives proper weight to the interests of defendants. Many claimants do not prevail in litigation because many claims are not meritorious. The judicial system must, insofar as possible, ensure that the adjudicative process secures justice for claimants and defendants. By the time that ten years have passed after the occurrence of the events on which a claim is based, we believe that the evidence of the true facts will have so deteriorated that it will not be sufficiently complete and reliable to support a fair judicial decision. At this point adjudication will as likely result in a judicial remedy for a claimant with a spurious claim as one with a meritorious claim. Adjudication under these circumstances can only detract from the credibility of the judicial system and undermine its effectiveness. The judicial system is a human system, and we think it is counterproductive for a society to require it to attempt to do what it cannot do properly. We quote from the opinion of Laycraft, J.A. in the *Ruzicka* case:[26]

> Every trial judge is aware that stale claims with stale testimony produce bad trials and poor decisions.

### Recommendation 5

> We recommend that the new Alberta Act provide that, unless a claim subject to this Act is brought within ten years after the claim arose, the defendant, upon pleading this Act as a defence, is entitled to immunity from liability under the claim.

---

[26] 54 A.R. 385, at 392.

158

### (b) Ultimate rule for specific claims

2.199 Most claims will accrue, as a matter of law, at the time of the defendant's conduct: when he did, or failed to do, something. However, some claims will accrue at a different time, and when this happens the accrual rule does not serve the objectives of limitations law. In addition, sometimes the general law does not clearly establish when a claim does accrue. We have identified five types of claims for which the accrual rules have been particularly troublesome in the context of limitations law. We believe that specific provisions should be made stating when the ultimate period should begin for each of these claims. We emphasize that we will not recommend provisions stating when these claims accrue, for when a claim should accrue under the general law will frequently depend on a different set of policy considerations than those which should dictate when a limitation period should commence. We will make our formal recommendation at the conclusion of our discussion of these five types of claims.

### (i) Duty of care

2.200 The limitation problems which result from the accrual rules applicable to claims based on the breach of a duty of care were examined in paragraphs 2.90-102. We believe that the ultimate period for a claim based on the breach of a duty of care should begin when the careless (negligent) conduct occurred, and that for this purpose it is immaterial whether the duty of care was based on tort, contract, statutory duty or otherwise. This rule should apply to any claim which includes damage as a constituent element. Damage is a constituent element of a claim

159

based on the breach of a duty of care, and hence careless (negligent) conduct is not legally wrongful unless it results in harm. Under the general law it is now clear that a claim based on the breach of a duty of care does not accrue until there is damage, and it may accrue at a later time. In the *Kamloops* case the Supreme Court of Canada appears to have held that such a claim does not arise until the claimant first discovered the damage, or could with reasonable diligence have discovered it. As the law evolves the claim may not arise until the claimant discovered, or ought to have discovered, even more information about the claim. The two-year discovery period which we have recommended will not begin until the claimant discovered, or should have discovered, the damage and further relevant information. However, if the ultimate period is to achieve its objective of securing repose for the society of potential defendants, this period must begin at the time of a defendant's negligent conduct, even though that conduct will not be legally wrongful unless it produces damage at some time, perhaps many years later. We recognize that, under our recommendation, the ultimate period for a claim based on the breach of a duty of care may expire before the claim has even accrued, for the damage may not have occurred by that time, and even if it has, the claim may not have accrued under the discovery rule enunciated in the *Kamloops* case. This problem of legal principle was also recognized by the Law Reform Committee in its 24th Report. Nevertheless, as we pointed out in paragraph 2.164, this Committee reached the same conclusion we had come to, because there is no feasible alternative consistent with limitations policy. The Committee recommended that the long stop limitation

160

period for a claim based on negligence should begin at the time of the breach of duty, which the Committee equated with the time of the negligent conduct.

### (ii) Course of conduct

2.201 We believe that the ultimate period for any number of claims against a defendant, based on any number of breaches of duty, resulting from a continuing course of conduct or a series of related acts or omissions, should begin when the conduct terminated or the last act or omission occurred. Normally the ultimate period begins when a claim accrues, and the concept of a claim for a cause of action is fundamental to the common law. Nevertheless, and in spite of profound efforts by jurists and academics for decades, the common law has never accepted a definition of a claim of general and functional application. This most frequently creates problems in the law of civil procedure. In this area both courts and legislatures have attempted to solve these problems pragmatically in the specific contexts in which they have arisen.

2.202 The lack of a generally applicable definition of a claim creates problems in limitations law which are particularly acute when the legally wrongful conduct consists of a continuing course of conduct or a series of acts or omissions so closely related as to constitute a course of conduct. The problems come in two basic variants, which can be discussed in two examples. (1) D's factory emitted fumes which continuously drifted over C's farm and which, in the course of time, harmed both him and his fruit trees. (2) D exposed C, an employee, to nuclear radiation periodically (daily, weekly, or monthly) which, in the course of

161

time, harmed him. In example (1) there could be three breaches of duty, based respectively on trespass, negligence and a statute; there could be three distinct claims; and they could accrue at different times. Or, focusing on C's harm rather than the basis of legal liability, there could be two claims, one for personal injury and one for property damage. Or, focusing on D's conduct, there could be one claim based on his continuous wrongful conduct. Example (2) lends itself to similar but more difficult analysis because of the periodic acts. Each exposure of C to radiation could be considered a separate breach of a particular duty producing multiple claims. Moreover, because of changing government safety regulations in the nuclear industry, D's wrongful conduct might have consisted of different acts or omissions at different times, which violated different regulations and hence different duties, and which produced multiple claims.

2.203 Insofar as the objectives of limitations law are concerned, it doesn't matter how many breaches of duty there were, how many different duties were breached, how many claims there are, or when they accrued, if the claims all resulted from a continuing course of conduct or a series of related acts or omissions. In this situation the policy issue is when should the ultimate period begin: when the legally wrongful conduct began or when it ended. Assume that, in both examples in the preceding paragraph, D's conduct stopped exactly ten years from the date that it started. If the ultimate period begins when the conduct started, D will be entitled to assert his immunity from liability under C's claims a moment after D's conduct stopped. The reasons for a limitations system based on evidence and repose do not

162

require this harsh result. Stale evidence should not present a significant problem, for the evidence will have continually renewed itself with D's repetitive conduct. Justice does not require giving D repose for wrongful conduct which just stopped. Hence we believe that the ultimate period should begin when the conduct ended.

### (iii) Demand obligation

2.204 We discussed the accrual rule for a claim based on a demand debt in paragraph 2.86. We believe that the ultimate period for a claim based on a demand obligation should begin when a default in performance occurred after a demand for performance was made. As a demand obligation will usually be a promise to pay a debt on demand, that example will be used. For technical historical reasons a claim based on a demand debt accrues when the debt arose rather than when a demand for payment was made. Consequently, if the ultimate period began at the accrual of this claim, and if C (the creditor) demanded payment of the debt more than ten years from the date the debt arose, D (the debtor) would already be entitled to assert his immunity from liability under C's claim. Insofar as limitations law is concerned, we do not think that it makes sense to consider D as having breached a duty to pay a demand debt before a demand for payment was ever made. The practical result of our proposal is that the ultimate period will probably never run against a demand obligation, for when C demands payment, if D fails to pay, C will know that he is being harmed and the two-year discovery period will begin to run.

### (iv) Fatal Accidents Act