# TAB J

ALBERTA LAW REFORM INSTITUTE

EDMONTON, ALBERTA

# LIMITATIONS

Report No. 55

December 1989

ISSN 0317-1604
ISBN 0-8886-4159-1

## ALBERTA LAW REFORM INSTITUTE

The Alberta Law Reform Institute was established January 1, 1968, by the Government of Alberta, the University of Alberta and the Law Society of Alberta for the purposes, among others, of conducting legal research and recommending reforms in the law. Funding of the Institute's operations is provided by the Government of Alberta, the University of Alberta and the Alberta Law Foundation.

The Institute's office is at 402 Law Centre, University of Alberta, Edmonton, Alberta, T6G 2H5. Its telephone number is (403) 492-5291.

The members of the Institute's Board of Directors are A.D. Hunter, Q.C. (Chairman); A.C.L. Sims; Professor P.J. Lown (Director); M.B. Bielby; Professor E. E. Dais; J.L. Foster, Q.C.; W.H. Hurlburt, Q.C.; H.J.L. Irwin; Professor D.P. Jones, Q.C.; The Honourable Mr. Justice D. Blair Mason; Dr. J.P. Meekison; The Honourable Madam Justice B.L. Rawlins; C.G. Watkins; and H. Wineberg.

The Institute's legal staff consists of Professor P.J. Lown (Director); R. Bowes; B.R. Burrows; C. Gauk; J.E. Henderson-Lypkie; M.A. Shone. W.H. Hurlburt, Q.C. is a consultant to the Institute.

## ACKNOWLEDGMENTS

This report contains recommendations for the enactment of a general limitations statute that takes a new approach to limitations law. Credit for conceptualizing and developing the new approach belongs to Thomas W. Mapp, now Professor Emeritus Faculty of Law, University of Alberta and formerly counsel to this Institute. Mr. Mapp authored the Institute's *Report for Discussion No. 4*, the precursor to this report, in which the idea was first proposed.

Institute Counsel Margaret A. Shone carried the project to completion by producing the final report. She was assisted by an Institute Committee composed of Mr. Alan Hunter, Chairman of the Institute Board; Professor Peter J. Lown, Director; Ms. Myra Bielby and Mr. Lyndon Irwin, members of the Board; and Professor Richard Bauman, now of the University of Alberta Faculty of Law and formerly an Institute counsel assigned to the limitations project.

i

## HOW TO READ THIS REPORT

This report is divided into four parts.

Part I is a Summary.

Part II sets forth a Model Limitations Act based on our recommendations. The Act is, we think, logically organized and written in language which is both plain and legally accurate. The Model Act contains 12 sections in 8 pages in this report, a reduction from the 61 sections in 21 pages in the current Act. Because the approach is new, so is the choice of terminology. An attempt has been made to avoid the use of words that have technical meanings under the current law and to substitute in their stead generic language that can be read in an open fashion and interpreted creatively.

Part III is the Report proper. It provides an abbreviated description of the existing law, problems, need for reform and recommendations. Readers looking for a more detailed analysis should consult our *Report for Discussion No. 4* on Limitations. Copies are available from the Institute on request.

Part IV consists of the Model Act annotated to assist legal practitioners and other persons using it. For the convenience of the reader, each section of the Model Act commences on a new page. The headers on the pages containing commentary identify the section that is being discussed.

The net result is that the contents of the Report are presented in four variations. The reader can work either from the summary (Part I), from the textual discussion in the main body of the report (Part III), from the statute alone (Part II) or from the statute annotated (Part IV), as he or she prefers.

# LIMITATIONS

## Table of Contents

PART I - SUMMARY ............................................ 1

PART II - MODEL LIMITATIONS ACT ............................. 5

PART III - REPORT ........................................... 13

    CHAPTER 1 - INTRODUCTION ............................... 13

A.    Reason for Institute Project ............................... 13
B.    Meaning of Limitations Law ............................... 13
C.    Conduct of Project ...................................... 13
D.    Principal Recommendation ................................ 14
E.    Caveat on Scope of Principal Recommendation ................ 14

    CHAPTER 2 - THE LIMITATIONS SYSTEM ...................... 15

A.    The Present Alberta Act ................................. 15
B.    Reasons for a Limitations System ......................... 16
    (1)    Evidentiary Reasons ............................... 17
    (2)    Reasons Based on Peace and Repose ................... 17
    (3)    Economic Reasons ................................ 17
    (4)    Judgmental Reasons .............................. 18
C.    Two Limitations Strategies .............................. 19
    (1)    The Strategy at Law - the Conventional Approach ......... 20
        (a)    Description ................................ 20
            (i)    Categorization of claims ................... 20
            (ii)    Different limitation periods of fixed duration ... 20
            (iii)    Commencement at time of accrual ........... 20
        (b)    Advantages ................................ 21
        (c)    Disadvantages .............................. 21
    (2)    The Strategy in Equity ............................ 22
        (a)    Description ................................ 22
            (i)    Measurement by judicial discretion .......... 22
            (ii)    Commencement at time of discovery ......... 22
        (b)    Advantages ................................ 23
        (c)    Disadvantages .............................. 23

    CHAPTER 3 - NEED FOR REFORM ........................... 24

A.    Problems With the Existing Law .......................... 24
    (1)    Unreasonable .................................... 24
    (2)    Inefficient ...................................... 24
    (3)    Unduly Technical and Complex ...................... 24
    (4)    Time of Accrual at Variance with Time of Discovery ....... 25

iv

|  | (5) | Incomprehensible to Litigants | 25 |
| B. | | Trends in Reform | 25 |
|  | (1) | Judicial Interpretation of Existing Statutes | 25 |
|  | (2) | Recent Reports and Statutes in Other Jurisdiction | 28 |
| C. | | Options for Reform | 28 |
|  | (1) | Amend the Present Alberta Act | 28 |
|  | (2) | Adopt a Conventional Modern Model | 29 |
|  | (3) | Enact Legislation Based on the Strategy in Equity | 29 |
| D. | | Decision to Recommend a New Act | 30 |

**CHAPTER 4 - RECOMMENDATIONS FOR REFORM** ..... 32

| A. | | | | Principal Recommendation | 32 |
| B. | | | | Discussion of Core Recommendations | 32 |
|  | (1) | | | Limitation Periods | 32 |
|  | | (a) | | The Discovery Rule | 33 |
|  | | | (i) | Commencement of discovery period | 33 |
|  | | | (ii) | Length of the discovery period | 34 |
|  | | | (iii) | Knowledge required | 34 |
|  | | | (iv) | Claims subject to discovery rule | 34 |
|  | | | (v) | Special cases | 35 |
|  | | (b) | | The Ultimate Rule | 35 |
|  | | | (i) | The Rule | 35 |
|  | | | (ii) | Special cases | 35 |
|  | | (c) | | Raising defence | 35 |
|  | | (d) | | Comment | 35 |
|  | (2) | | | Acquiescence or Laches | 36 |
|  | | (a) | | In general | 36 |
|  | | (b) | | Breach of trust | 36 |
|  | (3) | | | Application of Act | 37 |
|  | | (a) | | Remedial orders | 37 |
|  | | (b) | | Inherent exclusions | 38 |
|  | | (c) | | Express exclusions | 38 |
|  | | | (i) | Declarations | 38 |
|  | | | (ii) | Enforcement orders | 38 |
|  | | | (iii) | Judicial review | 39 |
|  | | | (iv) | *Habeas corpus* | 39 |
|  | | | (v) | Possession of real property | 39 |
|  | | | (vi) | Adverse possession of real property owned by the Crown | 40 |
|  | | | (vii) | Limitations provisions in other enactments | 40 |
|  | (4) | | | Concealment | 40 |
|  | (5) | | | Persons under Disability | 41 |
|  | (6) | | | Claims Added to a Proceeding | 41 |
|  | (7) | | | Agreement | 42 |
|  | (8) | | | Acknowledgment and Part Payment | 42 |
|  | (9) | | | Conflict of Laws | 42 |
|  | (10) | | | Judgment for the Payment of Money | 42 |
| C. | | | | Other Matters | 44 |
|  | (1) | | | Transitional | 44 |
|  | (2) | | | Interpretation | 44 |
|  | (3) | | | Consequential Amendments | 44 |

v

    (a)    Prescription of light  . . . . . . . . . . . . . . . . . . . . . . . . . .   44
    (b)    Repeal of the present Alberta Act . . . . . . . . . . . . . . .   45

PART IV - ANNOTATED MODEL LIMITATIONS ACT . . . . . . . . . . . . . . . . . . . .   46

    Section 1 - Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   49
    Section 2 - Application  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   56
    Section 3 - Limitation Periods . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   61
    Section 4 - Acquiescence or Laches . . . . . . . . . . . . . . . . . . . . . . . . . . . .   75
    Section 5 - Concealment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   77
    Section 6 - Persons Under Disability  . . . . . . . . . . . . . . . . . . . . . . . . . . .   78
    Section 7 - Claims Added to a Proceeding . . . . . . . . . . . . . . . . . . . . . . .   80
    Section 8 - Agreement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   90
    Section 9 - Acknowledgment and Part Payment  . . . . . . . . . . . . . . . . . . .   91
    Section 10 - Persons Affected by Exceptions for Agreement,
        Acknowledgment and Part Payment . . . . . . . . . . . . . . . . . . . . . . . . .   95
    Section 11 - Judgment for Payment of Money . . . . . . . . . . . . . . . . . . . . .   97
    Section 12 - Conflict of Laws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   98
    Section 13 - Transitional  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   100
    Section 14 - Consequential  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   101

APPENDIX A - TABLE OF REFERENCES . . . . . . . . . . . . . . . . . . . . . . . . . . . .   102

APPENDIX B - LIMITATION OR NOTICE PROVISIONS IN SPECIALIZED
    ALBERTA ACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   105

<div align="center">PART I - SUMMARY</div>

Background to Limitations Law

The purpose of limitations law is to encourage the timely resolution of legal controversies, and in so doing to strike a proper balance between the interests of potential claimants, potential defendants and society at large.

Limitations law has been growing piecemeal for over three and a half centuries. During this time, the basic approach to limitations law has remained unchanged. There has, however, been substantial change in the characteristics of society and consequential enlargement of legal rights and remedies. As a result of this change and enlargement, limitations law has become unduly technical and complex. It is badly in need of rethinking, of rationalization.

Recommendation for a New Approach

The Alberta Law Reform Institute has formed recommendations for a new, rational, unified approach to general limitations law. In so doing, it has taken the strong points of each of two separate strategies at work under the existing law: the limitations strategy at law - the predominant strategy under the existing law in which Alberta limitations law is firmly rooted - and the limitations strategy in equity.

The new approach continues the direction of the reform movement currently evident in judicial and statutory reforms.

(1)    Basic Principles

The recommendations are founded on two basic principles.

**The first basic principle is knowledge.** It is derived from the limitations strategy in equity and serves the interests of claimants. The principle of knowledge involves building in discovery by the claimaint to set the limitations clock ticking. The limitation period does not begin to run until the claimant knows of of the claim, that is, until he has "discovered" or "ought to have discovered" (i) that the injury had occurred, (ii) that it was to some degree attributable to the conduct of the defendant, and (iii) that it was sufficiently serious to have warranted commencing a proceeding. After discovery, the claimant has 2 years within which to seek redress in a civil judicial proceeding. This 2-year period constitutes the "**discovery limitation period**".

**The second basic principle is repose.** It incorporates the certainty of the fixed periods used in the limitations strategy at law, and serves the interests of defendants by

<div align="center">1</div>

2

providing an absolute cut off date of 15 years within which the claimant must seek a remedial order. The 15-year period applies irrespective of whether the claimant has knowledge of the claim. The principle of repose facilitates longterm planning by persons subject to potential claims. As well, at a certain stage evidence and adjudication becomes defective because of the passage of time. This 15-year period constitutes the "ultimate limitation period".

The defendant is entitled to a limitations defence when either the discovery limitation period or the ultimate limitation period expires, whichever occurs first. The defence must be pleaded, as the traditional approach in the limitations strategy at law currently requires. A successful defence gives the defendant immunity from liability under the claim. Immunity from liability is not conferred automatically and a successful limitations defence does not expunge legal rights.

Together, in the context of the scheme proposed, these dual principles - knowledge and repose - provide a fair balance between the interests of claimants and defendants, both individually and collectively, and satisfy the interests of society at large.

(2)    Special Circumstances

Special provisions modify the operation of the basic limitation periods in certain circumstances. For example, both the discovery limitation period and the ultimate limitation period are suspended during any period of time that the claimant was under disability. "Person under disability" is defined to mean either a minor, or an adult who is unable to make reasonable judgments in respect of matters relating to the claim.

The ultimate limitation period is suspended during any period of time that the defendant fraudulently concealed the fact that the injury had occurred. In the case of a claim or any number of claims based on any number of breaches of duty, resulting from a continuing course of conduct or a series of related acts or omissions, the ultimate period begins to run when, *and not before*, the conduct terminated or the last act or omission occurred. Special provisions also apply to claims added to a proceeding, an agreement between the claimant and defendant, and acknowledgment or part payment by the defendant of a claim for the recovery of an accrued liquidated pecuniary sum.

One member of the Board argued strenuously for the retention of an equitable approach to claims for the wrongful retention or conversion of trust property by a trustee. However, after much discussion and careful consideration, the majority of the Board concluded that claims at law and in equity should be subject to the same general principles that underlie the new Act.

3

## Scope of Recommendations

The recommendations are for a general limitations scheme. If adopted, the new scheme will apply generally to all claims coming within the scope of the general limitations scheme, regardless of whether the claim originated at law or in equity. That is to say, all claims subject to the Act are governed by the same two concurrent limitation periods except where special provisions modify their effect.

The key to the new system is what it covers. Although it is generally comprehensive in its coverage, the scheme does not embody the entire limitations system. One must go to the definitions of "claim" and "remedial order" to get to unlock the door to our tight and precise approach.

A "claim" is defined as a matter giving rise to a civil proceeding in which a claimant seeks a "remedial order".

A "remedial order" is defined as a judgment or an order made by a court in a civil proceeding requiring a defendant to comply with a duty or to pay damages for the violation of a right. The definition expressly excludes declarations, orders for the enforcement of a remedial order, judicial review of the exercise of powers conferred on administrative bodies by statute, and *habeas corpus*. Declarations are excluded because they merely define and recognize existing rights. It should be recognized, however, that declarations represent a growth area in law. Their exclusion from the operation of the general limitations scheme leaves room for creative play by lawyers and courts.

Limitation provisions in specialized statutes dealing with particular types of claim are also excluded, as is a remedial order based on adverse possession of real property owned by the Crown.

Possessory remedies, including adverse possession of land owned by persons other than the Crown, are included.

## Proposed Model Limitations Act

The report translates the recommendations into a Model Limitations Act. The Act is, we think, logically organized and written in language which is both plain and legally accurate. The Model Act contains 12 sections in 8 pages in this report, a reduction from the 61 sections in 21 pages in the current Act.

Because the Model Act adopts a new approach it adopts a new terminology. The words are used in a generic, non-technical sense. The Act speaks of a "claim" (rather than a cause of action) to denote the substantive right that may entitle a person to receive a

4

remedy in a civil proceeding before a court, of a "claimant" (rather than a plaintiff or applicant) who seeks a "remedial order" in respect of a "claim", and of a "defendant" (which may include a third party) as the person against whom a remedial order is sought.

Because the approach is new, upon its introduction into force the Act will require lawyers and judges to grapple with its scope and specific applications. Definitive answers to questions about the application of the Act to given fact situations will not always be possible. Until issues regarding interpretation are settled, the Act will provide lawyers with a unique and challenging opportunity to present creative arguments based on principle.

## PART II - MODEL LIMITATIONS ACT

**[Definitions]**

1    In this Act,

    (a)    "claim" means a matter giving rise to a civil proceeding in which a claimant seeks a remedial order;

    (b)    "claimant" means the person who seeks a remedial order;

    (c)    "defendant" means a person against whom a remedial order is sought;

    (d)    "enforcement order" means an order or writ made by a court for the enforcement of a remedial order;

    (e)    "injury" means

        (i)    personal injury,

        (ii)    property damage,

        (iii)    economic loss,

        (iv)    non-performance of an obligation, or

        (v)    in the absence of any of the above, the breach of a duty;

    (f)    "law" means the law in force in the Province, and includes

        (i)    statutes,

        (ii)    judicial precedents, and

        (iii)    regulations;

    (g)    "limitation provision" includes a limitation period or notice provision that that has the effect of a limitation period;

    (h)    "person under disability" means

        (i)    a minor, or

        (ii)    an adult who is unable to make reasonable judgments in respect of matters relating to the claim;

    (i)    "remedial order" means a judgment or an order made by a court in a civil proceeding requiring a defendant to comply with a duty or to pay damages for the violation of a right, and excludes

5

6

    (i)    a declaration of rights and duties, legal relations or personal status,

    (ii)   the enforcement of a remedial order,

    (iii)  judicial review of the decision, act or omission of a person, board, commission, tribunal or other body in the exercise of a power conferred by statute, or

    (iv)  *habeas corpus*;

    (j)    "right" means any right under the law and "duty" has a correlative meaning;

    (k)   "security interest" means an interest in property that secures the payment or other performance of an obligation.

**[Application]**

2(1)    Except as provided in subsection (2), this Act is applicable to any claim, including a claim to which this Act can apply arising under any law that is subject to the legislative jurisdiction of the Parliament of Canada, if

    (a)    the remedial order is sought in a proceeding before a court created by the Province, or

    (b)   the claim arose within the Province and the remedial order is sought in a proceeding before a court created by the Parliament of Canada.

(2)    This Act does not apply where a claimant seeks:

    (a)    a remedial order based on adverse possession of real property owned by the Crown, or

    (b)   a remedial order the granting of which is subject to a limitation provision in any other enactment of the Province.

(3)    The Crown is bound by this Act.

**[Limitation Periods]**

3(1)    Subject to section 11, if a claimant does not seek a remedial order within

    (a)    2 years after the date on which the claimant first knew, or in his circumstances ought to have known,

       (i)     that the injury for which he seeks a remedial order had occurred,

       (ii)    that the injury was to some degree attributable to conduct of the defendant, and

       (iii)   that the injury, assuming liability on the part of the defendant, was sufficiently serious to have warranted bringing a proceeding,

or

(b)    15 years after the claim arose,

whichever period expires first, the defendant, upon pleading this Act as a defence, is entitled to immunity from liability in respect of the claim.

(2)    The limitation period provided by clause (1)(a) begins

(a)    against a successor owner of a claim when either a predecessor owner or the successor owner of the claim first acquired or ought to have acquired the knowledge prescribed in clause (1)(a);

(b)    against a principal when either

       (i)     the principal first acquired or ought to have acquired the knowledge prescribed in clause (1)(a), or

       (ii)    an agent with a duty to communicate the knowledge prescribed in clause (1)(a) to the principal first actually acquired that knowledge;

and

(c)    against a personal representative of a deceased person as a successor owner of a claim, at the earliest of the following times:

       (i)     when the deceased owner first acquired or ought to have acquired the knowledge prescribed in clause (1)(a), if he acquired the knowledge more than 2 years before his death,

       (ii)    when the representative was appointed, if he had the knowledge prescribed in clause (1)(a) at that time, or

       (iii)   when the representative first acquired or ought to have acquired the knowledge prescribed in clause (1)(a), if he acquired the knowledge after his appointment.

8

(3)    For the purposes of clause (1)(b),

    (a)    a claim or any number of claims based on any number of breaches of duty, resulting from a continuing course of conduct or a series of related acts or omissions arises when the conduct terminated or the last act or omission occurred;

    (b)    a claim based on a breach of a duty arises when the conduct, act or omission occurred;

    (c)    a claim based on a demand obligation arises when a default in performance occurred after a demand for performance was made;

    (d)    a claim in respect of a proceeding under the Fatal Accidents Act arises when the conduct which caused the death, upon which the claim is based, occurred;

    (e)    a claim for contribution arises when the claimant for contribution was made a defendant in respect of, or incurred a liability through the settlement of, a claim seeking to impose a liability upon which the claim for contribution could be based, whichever first occurs.

(4)    The limitation period provided by clause 3(1)(a) does not apply where a claimant seeks a remedial order for possession of real property, including a remedial order under section 60 of the *Law of Property Act*.

(5)    Under this section,

    (a)    the claimant has the burden of proving that a remedial order was sought within the limitation period provided by clause (1)(a), and

    (b)    the defendant has the burden of proving that a remedial order was not sought within the limitation period provided by clause (1)(b).

[Acquiescence or Laches]

4    Nothing in this Act precludes a court from granting a defendant immunity from liability under the equitable doctrines of acquiescence or laches, notwithstanding that the defendant would not be entitled to immunity pursuant to this Act.

9

**[Concealment]**

5(1)    The operation of the limitation period provided by clause 3(1)(b) is suspended during any period of time that the defendant fraudulently concealed the fact that the injury for which a remedial order is sought had occurred.

(2)    Under this section, the claimant has the burden of proving that the operation of the limitation period provided by clause 3(1)(b) was suspended.

**[Persons under Disability]**

6(1)    The operation of the limitation periods provided by this Act is suspended during any period of time that the claimant was a person under disability.

(2)    Under this section, the claimant has the burden of proving that the operation of the limitation periods provided by this Act was suspended.

**[Claims Added to a Proceeding]**

7(1)    Notwithstanding the expiration of the relevant limitation period, when a claim is added to a proceeding previously commenced, either through a new pleading or an amendment to pleadings, the defendant is not entitled to immunity from liability in respect of the added claim if the requirements of either subsection (2), (3) or (4) are satisfied.

(2)    When the added claim

    (a)    is made by a defendant in the proceeding against a claimant in the proceeding, or

    (b)    does not add or substitute a claimant or a defendant, or change the capacity in which a claimant sues or a defendant is sued,

the added claim must be related to the conduct, transaction or events described in the original pleading in the proceeding.

(3)    When the added claim adds or substitutes a claimant, or changes the capacity in which a claimant sues,

    (a)    the added claim must be related to the conduct, transaction or events described in the original pleading in the proceeding,

    (b)    the defendant must have received, within the limitation period applicable to the added claim plus the time provided by law for the service of process, sufficient knowledge of the added claim

10

<div style="margin-left: 4em;">

that he will not be prejudiced in maintaining a defence to it on the merits, and

(c)   the court must be satisfied that the added claim is necessary or desirable to ensure the effective enforcement of the claims originally asserted or intended to be asserted in the proceeding.

</div>

(4)   When the added claim adds or substitutes a defendant, or changes the capacity in which a defendant is sued,

<div style="margin-left: 4em;">

(a)   the added claim must be related to the conduct, transaction or events described in the original pleading in the proceeding,

(b)   the defendant must have received, within the limitation period applicable to the added claim plus the time provided by law for the service of process, sufficient knowledge of the added claim that he will not be prejudiced in maintaining a defence to it on the merits.

</div>

(5)   Under this section,

<div style="margin-left: 4em;">

(a)   the claimant has the burden of proving

<div style="margin-left: 4em;">

(i)   that the added claim is related to the conduct, transaction or events described in the original pleading in the proceeding, and

(ii)   that the requirement of clause (3)(c), if in issue, has been satisfied,

and

</div>

(b)   the defendant has the burden of proving that the requirement of clause (3)(b) or 4(b), if in issue, was not satisfied.

</div>

**[Agreement]**

8    Subject to section 10, if an agreement provides for the reduction or extension of a limitation period provided by this Act, the limitation period is altered in accordance with the agreement.

**[Acknowledgment and Part Payment]**

9(1)   In this section, "claim" means a claim for the recovery, through the realization of a security interest or otherwise, of an accrued liquidated pecuniary sum, including, but not limited to a principal debt, rents, income, a share of estate property, and interest on any of the foregoing.

11

(2)     Subject to subsections (3) and (4) and section 10, if a person liable in respect of a claim acknowledges the claim, or makes a part payment in respect of the claim, before the expiration of the limitation period applicable to the claim, the operation of the limitation periods begins anew at the time of the acknowledgment or part payment.

(3)     A claim may be acknowledged only by an admission of the person liable in respect of it that the sum claimed is due and unpaid, but an acknowledgment is effective

(a)     whether or not a promise to pay can be implied from it, and

(b)     whether or not it is accompanied by a refusal to pay.

(4)     When a claim is for the recovery of both a primary sum and interest thereon, an acknowledgment of either obligation, or a part payment in respect of either obligation, is an acknowledgment of, or a part payment in respect of, the other obligation.

**[Persons Affected by Exceptions for Agreement, Acknowledgment and Part Payment]**

10(1)   An agreement and an acknowledgment must be in writing and signed by the person adversely affected.

(2)     (a)     An agreement made by or with an agent has the same effect as if made by or with the principal, and

(b)     an acknowledgment or a part payment made by or to an agent has the same effect as if made by or to the principal.

(3)     A person has the benefit of an agreement, an acknowledgment or a part payment only if it is made

(a)     with or to him,

(b)     with or to a person through whom he derives a claim, or

(c)     in the course of proceedings or a transaction purporting to be pursuant to the Bankruptcy Act (Canada).

(4)     A person is bound by an agreement, an acknowledgment or a part payment only if

(a)     he is a maker of it, or

(b)     he is liable in respect of a claim

(i)     as a successor of a maker, or

12

         (ii)     through the acquisition of an interest in property from or through a maker

        who was liable in respect of the claim.

**[Judgment for Payment of Money]**

**11**    If, within 10 years after the claim arose, a claimant does not seek a remedial order in respect of a claim based on a judgment or order for the payment of money, the defendant, upon pleading this Act as a defence, is entitled to immunity from liability in respect of the claim.

**[Conflict of Laws]**

**12**    The limitations law of the Province shall be applied whenever a remedial order is sought in this Province, notwithstanding that, in accordance with conflict of law rules, the claim will be adjudicated under the substantive law of another jurisdiction.

**[Transitional]**

**13**(1)    *Subject to subsection (2), this Act applies where a claimant seeks a remedial order in a proceeding commenced after the date the Act comes into force.*

(2)    *A defendant is not entitled to immunity from liability in respect of a claim of which the claimant knew, or in his circumstances ought to have known before this Act came into force and in respect of which a remedial order is sought*

        (a)     *in time to satisfy the provisions of law governing the commencement of actions which would have been applicable but for this Act, and*

        (b)     *within 2 years after the date this Act comes into force.*

**[Consequential]**

**14**(1)    *Section 60 of the Law of Property Act is amended by adding the following:*

        (3)     No right to the access and use of light or any other easement, right in gross or *profit a prendre* shall be acquired by a person by prescription, and it shall be deemed that no such right has ever been so acquired.

(2)    *The Limitation of Actions Act is repealed.*

**PART III - REPORT**

**CHAPTER 1 - INTRODUCTION**

A.    Reason for Institute Project

Alberta limitations law is firmly rooted in the traditional English statutory approach. That approach has remained unchanged for more than three and a half centuries. Changes in the formation of society over this period (e.g. the growing complexity of industrial, commercial and governmental institutions since the industrial revolution, and the dramatic growth in populations) have led to a larger, more intricate body of law, the recognition of additional rights and the enlargement of the battery of remedies available for the infringement of rights. As a result of these changes limitations law has grown unduly technical and complex. The undue technicality and complexity has spurred a current limitations law reform movement, of which the recommendations in this report form a part, in jurisdictions that have adopted the traditional English approach.

B.    Meaning of Limitations Law

What is limitations law?  Limitations law consists of a body of rules, applied in civil judicial proceedings, which limits the time available to a person (a claimant) to bring a claim against another (a defendant) requesting a judicial remedy for the alleged violation of a legal right. The object of the limitations system is to encourage the timely resolution of legal controversies, and in so doing to strike a proper balance among the interests of potential claimants, potential defendants and society at large.

Conventional limitations statutes operate by limiting the time available to a claimant for bringing a claim seeking a judicial remedy. The time available is limited by giving the defendant a defence to any claim which is not brought within the limitation period specified for that particular type of claim. The defence, which the defendant must request, gives the defendant complete immunity from any liability under a claim, regardless of the merits of that claim.

C.    Conduct of Project

In September 1986, following a lengthy history of work on the project, the Institute published *Report for Discussion No. 4* (hereafter "the Report for Discussion").  In the Report for Discussion, we stated our view that the traditional English statutory approach to limitations is obsolescent and made tentative recommendations for a new approach to general limitations law.  Our purpose in publishing our recommendations in tentative form was to stimulate discussion and elicit constructive comments on the proposed reform.

13

14

We conducted consultation on the Report for Discussion in the months following publication. In December 1987, we held an invitational workshop to which we invited representatives of the judiciary, academics and leading members of the litigation bar. The consultation satisfied us that widespread support exists for the new approach to general limitations law contained in our tentative recommendations.

D.    Principal Recommendation

Our principal recommendation in this report is that Alberta enact a completely new limitations statute embodying the new approach to general limitations law that we proposed in the Report for Discussion. We believe that the specific recommendations in this report can, if accepted, result in a new Alberta Act which will be not only fairer for all persons than the present Act, but simpler and more comprehensible as well.

E.    Caveat on Scope of Principal Recommendation

Our recommendation is for the introduction, in civil judicial proceedings, of a general limitations scheme that would replace the one now in effect. The recommendation does not embrace the entire limitations system. In addition to the general limitations statute that applies to civil judicial claims, the limitations system includes specific limitations provisions in other legislation, as well as a multitude of time-limited notice provisions that take effect, functionally, as limitations periods.

## CHAPTER 2 - THE LIMITATIONS SYSTEM

A.    The Present Alberta Act

Alberta limitations law is based on the traditional English approach to limitations law, which is statutory. Statutory measures that limit the period within which an action must be commenced or else be barred have a history that stretches back to an English statute of 1623, the *Limitation Act, 1623* (U.K.).[1]    This statute of James I was the first relatively comprehensive English limitations act.

The central statute in the current Alberta limitations system is the *Limitation of Actions Act*[2] (hereafter the "present Alberta Act"), enacted in 1935.[3]  It is based on the *Uniform Limitation of Actions Act* (hereafter the "1931 Uniform Act"), which was adopted by the Conference of Commissioners on Uniformity of Legislation in Canada (now the Uniform Law Conference of Canada) in 1931. The 1931 Uniform Act consolidated the *Limitations Act, 1623* with several other English limitations statutes,[4] modernized them and combined them with some new initiatives. With minor local variations, the 1931 Uniform Act is also currently in force in Manitoba,[5] Prince Edward Island,[6] Saskatchewan,[7] the Yukon Territory[8] and the Northwest Territories.[9]

The most significant amendments to the present Alberta Act, made in 1966,[10] eliminated certain short limitation periods and consolidated a number of limitation provisions formerly found in other statutes into the present Alberta Act. Although the 1931

---

[1]    21 Jac. 1, c. 16.

[2]    R.S.A. 1980, c. L-15.

[3]    S.A. 1935, c. 8.

[4]    The most notable of these were the *Real Property Limitation Acts* of 1833 (3 & 4 Will. 4, cs. 27 and 42), 1837 (7 Will. 4 & 1 Vict., c. 28), and 1874 (37 & 38 Vict., c. 57).  A complete list is given by the Ontario Law Reform Commission, *Report on Limitation of Actions*, 11 (1969).

[5]    The *Limitation of Actions Act*, C.C.S.M., c. L150.

[6]    *Statute of Limitations*, R.S.P.E.I. 1974, c. S-7.

[7]    The *Limitation of Actions Act*, R.S.S. 1978, c. L-15.

[8]    *Limitation of Actions Ordinance*, R.O.Y.T. 1978, c. L-7.

[9]    *Limitation of Actions Ordinance*, R.O.N.W.T. 1974, c. L-6.

[10]    *An Act to Amend the Law Respecting Limitation of Actions in Tort*, S.A. 1966, c. 49.

15

16

Uniform Act, and hence the present Alberta Act, significantly improved the limitations system embodied in their predecessor English statutes, the modern Canadian acts remain based on a limitations strategy formulated in England over three and a half centuries ago.

As stated in chapter 1, in addition to the general limitations statute that applies to civil judicial claims, the limitations system includes specific limitations provisions in other legislation, as well as a multitude of time-limited notice provisions that take effect, functionally, as limitations periods. Appendix ? to this report contains a list of specialized statutes in Alberta with limitation or notice provisions which we believe are within the scope of the limitations system, but which are not embraced by our recommendations in this report. The list, which is reproduced from Appendix C to the Report for Discussion, was compiled from the comprehensive list of limitation provisions in specialized statutes in the *Alberta Limitations Manual* published by Butterworths (1983).

B.     Reasons for a Limitations System

The objective of a limitations system is to encourage the timely resolution of controversies.

The limitations system seeks to give defendants as much protection as is reasonably possible without unduly jeopardizing the broader goal of the judicial system. That goal is to protect the legal rights recognized by our legal system by providing judicial remedies for claimants whose rights have been violated. The judicial system must give a claimant an adequate opportunity to bring a claim for the recognition of a right and for a judicial remedy for its infringement. The limitations system, which is subsidiary to the judicial system, limits the time available to a claimant for bringing a claim seeking a judicial remedy. If a claim is not brought within the applicable limitation period, the defendant is, upon his request, given a defence to the claim. The defence gives the defendant complete immunity from any liability under a claim, regardless of the merits of that claim. As such, a limitations system inevitably prevents some claimants from having the validity of their claims adjudicated on the merits.

Simply put, in encouraging the timely resolution of disputes, a limitations system must strike a proper balance among the interests of potential claimants, potential defendants and society at large. Potential claimants have an interest in obtaining a remedy for injury from legally wrongful conduct; potential defendants have an interest in being protected from endless claims; and society at large has an interest in providing a range of remedies for injury from wrongful conduct and an orderly and fair process for determining when it is appropriate to award them.

The rationale for the first limitation law, enacted in the United Kingdom in 1623, remains very much alive. Then, as now, legislators identified three categories of reasons

17

for maintaining a limitations system: providing adequate evidence, obtaining eventual peace and repose, and serving economic interests.

(1)    Evidentiary Reasons

The determination of a dispute depends on the application of law to facts which must be proved. With the passage of time after events have been alleged to have occurred, the evidence necessary to prove the facts will deteriorate. Over time the memories of witnesses will fade, witnesses will die or leave the jurisdiction, and written records will be lost or destroyed.

Defendants are more vulnerable to deteriorated evidence than are claimants. The claimant who sustained the harm may have a better recollection of the facts. The claimant controls the timing of his claim, and can hold back his claim, yet preserve and augment his evidence by collecting statements, affidavits and documents while the defendant's evidence is deteriorating. The defendant, on the other hand, may be unaware of which precise act or omission in his many daily activities might constitute a breach of duty owed to someone else. This is particularly so for defendants who are in the business of providing goods and services for others (e.g. manufacturers of products, persons in professions).

(2)    Reasons Based on Peace and Repose

Individuals and the larger society both have an interest in the eventual securement of peace and repose. With respect to individual peace, the defendant is entitled to have the legal issue resolved in a timely manner. At some point in time after the occurrence of conduct which might have been legally wrongful, a defendant should gain peace of mind. With respect to societal peace, there is a need for a time when, insofar as human transgressions are concerned, society is freed from stale conflicts and the slate is wiped clean. In assisting in the orderly resolution of conflicts, the the judicial system should therefore shelter itself from old conflicts which could reasonably have been submitted for litigation in the past.

(3)    Economic Reasons

While a defendant is vulnerable to possible liability of uncertain magnitude under a claim, his ability to enter into business transactions may be adversely affected. If the defendant's potential liability is significant, he may be reluctant to make new business commitments until the legal issues are resolved. A claimant who threatens, but delays bringing a claim, can sometimes extract an unreasonable settlement from a defendant caught in this situation.

18

Persons who are regularly engaged in providing goods and services for others in the course of their occupations and who are therefore particularly vulnerable to claims, frequently preserve records of their activities and usually maintain costly liability insurance. The expenses of records maintenance and insurance are generally passed on to the consuming society. Within one or two decades after the occurrence of the events upon which a group of claims could be based, most of these claims will have been either abandoned, settled or litigated. At this point the result of peace denied can become excessive cost incurred, for the cost burden on the entire society is too high relative to any benefits which might be conferred on a tiny group of claimants by keeping defendants exposed to claims.

In short, limitations law encourages potential defendants to make considered business decisions without having the spectre of future claims loom past a reasonable date, and this further allows actuarial risks to be calculated, so that a potential defendant can take steps to insure an enterprise against possible claims as well as make the most beneficial or socially useful allocation of the enterprise's resources.

(4)    Judgmental Reasons

The three reasons enumerated above constitute the traditional justification of a limitations system. To them might be added a fourth, which is enabling fair judicial decision, or "judgmental reasons".[11]

---

[11]    Some persons argue that there is a fifth reason, which is that a limitations system can be used to constrain the impact of man-made disasters on the legal system by screening out some of them. We do not accept this reason but record it here in the interests of the fullness of our account.

The argument for including reasons based on the magnitude of damage rests on the conclusion is that the legal system cannot adequately cope with the sheer magnitude of losses resulting from man-made disasters made possible by technological development (e.g. nuclear explosion, faulty drug). Although a judge can grant money judgments directing defendant to pay huge damages to hundreds of claimants to compensate them for the injuries suffered in a disaster, the defendant will seldom have the financial resources, even with insurance, to pay more than token fractions of the money awarded. The legal costs involved in the litigation required to produce the money judgments will frequently consume a significant percentage of the money which would otherwise be available for payments. It is argued therefore that manmade disasters should be withdrawn from the legal system and left to the political system. Manmade disasters would then be treated as natural disasters.

In our opinion, the financial consequences described reflect the insufficient strength of a private economic system, not a defect in the legal system. Even if withdrawing man-made disasters from the legal system were sound public policy,

(continued...)

19

Judgmental reasons fall into two areas, one having to do with proof of facts and the other with the application of law to the facts. With respect to proof of facts, the accuracy of a judge's factual determinations depends on the adequacy of the evidence available to prove the true facts. As has been seen, evidence is likely to become increasingly incomplete and unreliable with the passage of time. The relative vulnerability of the defendant to the deterioration of evidence has a serious adverse effect on the ability of the adversarial judicial system to do justice between the claimant and defendant. When a point in time has been reached when evidence has become too unreliable to furnish a sound basis for a judicial decision, out of fairness to the defendant, public policy dictates that a claim should not be adjudicated at all.

With respect to the application of law, the continual evolution of the law to reflect current socio-economic values makes questions of law as it stood at the time of the alleged breach of duty more difficult to determine fairly and accurately with the passage of time, especially where the law is judge-made. It is often very difficult for a judge of a current generation to weigh the reasonableness of conduct which occurred many years ago as a judge of an earlier generation would have weighed it. Because cultural values change, conduct which was acceptable even 20 years ago is unacceptable today. The relative inability of one generation to judge the reasonableness of conduct of members of an older generation could lead to injustice in some cases. When human ability to judge the reasonableness of past conduct has seriously diminished, society must insist that the court stay its hand. Limitations law ensures that conduct giving rise to an action will be judged according to more or less current cultural standards.

C.   Two Limitations Strategies

The English legal system developed two radically divergent strategies for a limitations system. The two strategies may be described as "the strategy in equity" and "the strategy at law". The primary objective of both strategies is to provide a limitations system which is fair and efficient.

---

[11](...continued)
   we do not believe that a limitations system should be used to promote this
   objective. Our reason is that a limitations system would operate too capriciously
   to be either effective or fair, that claims would be screened too unevenly.

20

(1)    <u>The Strategy at Law - the Conventional Approach</u>

(a)    <u>Description</u>

The limitations system at law continues to follow the strategy that was first formulated in the *Limitations Act, 1623* (U.K.). The strategy has always been embodied in legislation. The present Alberta Act is representative.

The strategy involves three main elements: (1) the assignment of claims to different categories; (2) the use of different limitation periods of fixed duration for different categories of claim; and (3) the commencement of limitation periods at time of accrual of claim. Each of these elements is discussed below. If the claimant does not bring a claim before the expiration of the applicable limitation period, the claim is barred if the defendant asserts a limitations defence. The legal limitations system also provides for the suspension of the limitation period for a person under disability, and variation of the limitation period because of agreement or admission.

(i)    <u>Categorization of claims</u>

This system divides claims into a number of different categories. For purposes of its assignment to the appropriate category, the court must first characterize the claim according to principles of the general law (e.g. tort, contract, trust, property). It must then determine which category in the limitations act was intended to apply to the claim.

(ii)    <u>Different limitation periods of fixed duration</u>

Each category of claim is matched with one of several fixed limitation periods, each of a different duration. The present Alberta Act utilizes four basic fixed limitation periods of one, two, six and ten years. For example, for most tort claims the limitation period is 2 years beginning with the accrual of the claim, and for most contract claims the period is 6 years beginning with the accrual of the claim.

(iii)    <u>Commencement at time of accrual</u>

The beginning of the limitation period is normally determined by objective facts - whether or not certain events took place, and the circumstances under which they took place - coupled with a rule of law fixing the time of accrual of the claim. The determination of the precise date of accrual is a technical legal issue that depends on how the claim is characterized for purposes of its assignment to the appropriate category under the Act.

21

(b)    Advantages

The limitations system at law is designed to operate as mechanically as possible under fixed rules of law. It attempts to provide limitation periods which are not only reasonable, but which will expire at times which can be predicted by the parties with a high degree of certainty.

(c)    Disadvantages

In theory, this limitations strategy is simple, it should be easily understood by the public, and it should operate with almost mechanical efficiency. However, it suffers from inherent problems which raise grave doubts that it has produced a limitations system which is sufficiently fair, efficient and predictable.

Not infrequently the general law leaves it uncertain as to how a claim should properly be characterized, and the limitations act does not clearly establish the category applicable to the claims that form part of an increasingly large and complex body of law. These characterization and categorization problems involve issues of law which are often quite technical, and which are seldom very comprehensible to the litigants. Because they create uncertainty as to which of several possible limitation periods applies to some claims, they leave the time of expiration of the limitation period applicable to these claims uncertain.

As previously stated, most claims are covered by a limitation period that begins to run when the claim accrues. The boundaries of the statutory categories that underlie the determination of the date of accrual are neither rigid nor indisputable. Consequently there will be in many cases a serious degree of uncertainty over which date is the proper one for determining when an action must be started.

Which fixed limitation period is applicable to a specific claim depends on the category into which the claim falls, and that depends on the descriptions used for different types of claims. Many different methods can be used to describe a type of claim, and usually several of these methods are used for a particular type of claim. This frequently results in overlapping descriptions. For example, a lawyer can often mount a credible argument that a specific claim could be either a type A claim (subject to a 2-year limitation period), a type B claim (subject to a 6-year limitation period), or a type C claim (subject to no limitation period). Whether or not a limitations defence is available to a defendant thus often depends on how a specific claim before the court is characterized as to type. When this occurs, neither the litigation nor its result can be explained to the litigants in terms which have anything to do with the common sense issue of whether or not the claim was brought as soon as it reasonably could and should have been brought.

22

In a significant minority of cases there is a substantial gap between the time of accrual of a claim and the time of its discovery. This gap varies widely depending on the categorization of the claim and the facts unique to each case. All too frequently the relevant limitation period will expire before the claimant could reasonably discover enough information to warrant a conclusion that he should bring a claim. This we believe is unfair to claimants.

Probably even more frequently a claimant will have acquired all the information he needs to justify bringing a claim long before the expiration of the applicable limitation period. For this reason the present system gives defendants less protection than we think it should.

    (2)    The Strategy in Equity

        (a)    Description .

The limitations system in equity uses a strategy which was developed by English equity judges. It is known as the doctrine of laches. The strategy is judge-made, not statutory, in origin, and the dominant theme is judicial discretion. Although there has been a movement in common law jurisdictions since the nineteenth century to subject equitable claims to statutes of limitations, the doctrine of laches remains applicable to equitable claims which are not governed by a limitations act.

The doctrine of laches involves two main elements: first, the duration of the limitation period is measured by judicial discretion and, second, the operation of the limitation period commences at the time of discovery.

            (i)    Measurement by judicial discretion

Judicial discretion governs the duration and hence the time of expiration of the limitation period. The duration of the limitation period is ascertained by the discretionary process of balancing the claimant's justification for delay against the prejudicial consequences to the defendant caused by the delay.

            (ii)    Commencement at time of discovery

The limitation period begins at the time of discovery. Because it determines the amount of knowledge which will serve to activate the limitation period, judicial discretion strongly affects the time of commencement of this period.

23

(b)    <u>Advantages</u>

The primary advantage of the equitable limitations system is fairness. It guards against the denial of a remedial claim until the claimant has had a reasonable opportunity to determine that he is probably entitled to a judicial remedy and to request that remedy.

A second important advantage is that the system is comprehensible. It can be readily understood by the litigants, for it is based on two simple equitable rules which, collectively, articulate the functional objectives of a limitations system in sensible terms. The application of these rules depends upon judicial determinations of questions of fact which are relevant to the litigants. Consequently, litigation under the equitable system is not technical, and it rarely produces expensive appeals. A lawyer representing a claimant can tell his client that his remedy is barred because, on the facts established by the evidence, he either discovered or should have discovered a breach of duty but did nothing to enforce his rights for an excessive length of time. Although this may be a bitter pill for the claimant, it can at least be understood as the application of a common-sense policy in the light of the proven facts.

(c)    <u>Disadvantages</u>

A serious disadvantage of the equitable system is that the flexibility made possible by judicial discretion leaves the time of expiration of the limitation period relatively uncertain in all cases. In a relatively few cases, the claimant will not obtain the knowledge required to activate the limitation period until decades after the conduct for which the defendant is responsible took place (e.g. adverse consequences to health from workplace pollution). Because of the possibility of these cases, as a practical matter, potential defendants can never be certain that they will be entitled to immunity from liability under a claim at some reasonable time after the occurrence of their conduct; the slate is never wiped clean. In most cases claimants will obtain the requisite knowledge soon enough to permit defendants to rely justifiably on the system to give them reasonable protection from the hazards inherent in defending themselves from stale claims. However, even in these cases, the exact time of expiration of the limitation period will remain uncertain until the claim is brought and the court determines whether or not the defendant is entitled to immunity for limitations reasons.

## CHAPTER 3 - NEED FOR REFORM

### A.    Problems With the Existing Law

Five principal problems with the existing limitations system are that:  (1) all too often it operates unreasonably; (2) the limitation periods are not sufficiently predictable; (3) the outcome depends on the application of legal rules that are unnecessarily complex and technical; (4) in a significant minority of cases, the time of accrual varies widely from the time of discovery; and (5) it can seldom be understood by litigants.

### (1)    Unreasonable

The limitations strategy at law results in limitation periods which are too often unreasonable, either to claimants or defendants. A limitations period may be unreasonable if does not provide an adequate discovery period, or an adequate negotiation period within which to avoid legal action by settling differences.  It should prevent a claimant from bringing a claim unduly late, but it should not require him to bring one with undue haste. A limitations system should not encourage unnecessary civil proceedings or unnecessary legal costs. All three of the essential elements on which the strategy at law is based - the commencement of the limitation period at the time of accrual, the use of different limitation periods of fixed duration, and the assignment of different limitation periods to different categories of claims - contribute to the unreasonable results.

### (2)    Inefficient

The limitations strategy at law produces a limitations system which does not offer sufficiently predictable limitation periods, and which does not, therefore, operate efficiently. The heavy reliance on judicial accrual rules and the need for characterization and categorization of claims are responsible for this uncertainty.

### (3)    Unduly Technical and Complex

Accrual rules, characterization rules, and the need to categorize claims produce a highly legalistic system. As law, with its rights and remedies, has grown more complex, the unusual has become more usual, and claims cannot be placed into categories with any reliable relevance to their discovery periods, economic importance, or vulnerability to deteriorated evidence. For most claims, the limitation period beings to run when the claim accrued.  Unfortunately, when some types of claims accrue is a technical legal issue. Moreover, the limitation period which has been assigned to a particular category of claims has varied in different jurisdictions. If the present practice were sound, we doubt that the diversity of treatment of a category of claims would be so prevalent.  We think that it is proper to ask what, if anything, accrual, characterization and categorization rules have to

24

do with whether or not a claim was brought in a timely fashion. Sound justification for the use of different rules is hard to find.

(4)    Time of Accrual at Variance with Time of Discovery

The critical problem with the present Alberta Act is that in a significant minority of cases there is a substantial gap between the time of accrual of a claim and the time of its discovery, a gap that varies widely depending on the facts of each case. A fixed limitation period which is reasonable for the majority of cases will operate harshly upon a claimant who did not discover the necessary information within that period. However, if the fixed limitation period is lengthened, it will give claimants in the typical cases an unnecessarily long period of time, to the possible prejudice of defendants.

(5)    Incomprehensible to Litigants

The outcome of litigation under a limitations system produced by the strategy at law does not depend on factual issues related to limitations policy which can be understood by the litigants. Whether or not a limitations defence is available to a defendant often depends on how a specific claim before the court is characterized as to type. When this occurs, neither the litigation nor its result can be explained to the litigants in terms which have anything to do with the common sense issue of whether or not the claim was brought as soon as it reasonably could and should have been brought.

B.    Trends in Reform

The body of rules which makes up limitations law includes both statutory provisions and case law.

(1)    Judicial Interpretation of Existing Statutes

Beginning in England in 1976, with the judgment of the Court of Appeal in the case of *Sparham-Souter* v. *Town and Country Developments (Essex) Ltd.*,[12] courts in England and Canada have looked at the idea that discovery of the damage by the claimant should start time running under limitation periods in traditional limitation statutes. Although in England, in 1983, the House of Lords subsequently rejected the employment of the discovery principle,[13] in Canada, in 1984, the Supreme Court affirmed it in the case of the *City of Kamloops* v. *Nielsen*.[14]  The adoption by the Supreme Court of Canada of a

---

[12]    [1976] 1 Q.B. 858, [1976] 2 All E.R. 65 (C.A.).

[13]    *Pirelli General Cable Works Ltd.* v. *Oscar Faber & Partners* [1983] 2 A.C. 1 (H.L.).

[14]    [1984] 2 S.C.R. 2, 10 D.L.R. (4th) 641.

26

discoverability principle, at least for claims founded in tort, was reinforced by the 1986 judgment of the majority of the Court in *Central and Eastern Trust Co.* v. *Rafuse*.[15]

In Alberta, the Court of Appeal has resisted the introduction of the discoverability principle. In *Costigan* v. *Ruzicka*, a case decided nearly contemporaneously with the Supreme Court's decision in *Kamloops* v. *Nielsen*, the Alberta Court of Appeal held to the principle that the limitation period runs from the accrual of the cause of action, regardless of whether the claimant could have discovered the existence of facts material to a cause of action, and regardless of the fact that this approach may "often be harsh in its application". In *Fidelity Trust Company* v. *Weiler*,[16] a case decided after the judgment of the Supreme Court of Canada in *Central Trust* v. *Rafuse*, the Alberta Court of Appeal concluded that the discoverability rule laid down in the *Kamloops* and *Central Trust* cases does not apply to actions in contract in Alberta. The Court distinguished *Central Trust*, saying that the fact that there was concurrent tort liability in that case was critical to the decision.

Generally, Alberta courts have interpreted the Supreme Court of Canada judgment in *Kamloops* v. *Nielsen* narrowly on its facts, which relate to property damage, and on the law in British Columbia on which it originated. Some cases where the issue of the application of the discoverability principle might have been considered have been decided on other points.[17]

---

15  [1986] 2 S.C.R. 147, 31 D.L.R. (4th) 481.

16  [1988] 6 W.W.R. 428 (Alta. C.A.) at 436.

17  In the case of *Costello* v. *City of Calgary*, unreported judgment delivered July 4, 1989 in Appeal #19837, the Court of Appeal determined that the claim was brought within the limitation period on either of the arguments made by the City of Calgary about when "the cause of action arose". It therefore did not address the discoverability question. The trial judge had expressed the view that *Costigan* v. *Ruzicka* is no longer good law in Alberta on the limitations point:  *Costello* v. *City of Calgary*, (1987) 55 Alta. L.R. (2d) 97 (Q.B.).

In the case of the case of *Photinopoulos* v. *Photinopoulos* [1989] 2 W.W.R. 56, the Alberta Court of Appeal declined to decide whether s. 57 of the present Alberta Act, on fraudulent concealment of the existence of a cause of action, embodies the discoverability rule enunciated by the Supreme Court of Canada in *Rafuse*, saying:

> As the same result is reached under either test, no decision between them need be made. It is appropriate to leave the question of the application of the discoverability rule to s. 57 for another day.

The Court of Appeal was also explicit about the fact that it was not determining the discovery issue in the case of *Huston Estate* v. *Registrar of the North Alberta*
(continued...)

Courts in other provinces, notably the Ontario Court of appeal in the *Consumers Glass* case[18] and the British Columbia Court of Appeal in the *Gladwin Square Jewellers* case,[19] have applied the discoverability principle more broadly.

The net result of recent judicial interpretation is that the scope of application of the discovery principle to commence time running for existing limitation periods is fairly uncertain. A wide divergence of views exists about the categories of claim to which the discovery principle should apply. A major shortcoming of the discovery principle being formulated by the judiciary is that it does not provide an ultimate cut-off point after which a claim can no longer be sustained. Judges in a number of cases have offered the opinion that legislatures are better equipped than courts to develop new limitations rules. An example is provided by Mr. Justice Laycraft (now C.J.A.) who stated, in his judgment in the case of *Costigan* v. *Ruzicka*, that:

> That balance of competing interests must, in my respectful opinion, be accomplished by legislation of general import and not in response to the hard case.[20]

---

[17](...continued)
*Land Registration District* (1989) 96 A.R. 300 (Alta. C.A.):

> We want to make it very clear that we are not agreeing or disagreeing with the learned chambers judge when he found a discoverability rule inside the limitation period. That issue is not reached in this case.

In *Boorman* v. *Red Deer Ski & Recreation Area Ltd.*, judgment of the Court of Queen's Bench of Alberta delivered July 19, 1989 in Action No. 8901-02711, Forsyth J., held that sections 51 and 52 of the present Alberta Act deal expressly with personal injury cases in which there is concurrent liability in contract and tort, and a 2-year period applies.

[18] *Consumer Glass Co. Ltd.* v. *Foundation Co. of Canada Ltd.* (1985) 10 D.L.R. (4th) 126 (Ont. C.A.). *See also July v. Neal* (1986) 44 M.V.R. 1 (Ont. C.A.).

[19] *Gladwin Square Jewellers Ltd.* v. *Chubb Industries Limited* 1985 68 B.C.L.R. 74 (C.A.).

[20] (1985) 13 D.L.R. (4th) 368 at 377 (Leave to appeal to the Supreme Court of Canada refused: (1985) 58 A.R. 1).

28

### (2)    Recent Reports and Statutes in Other Jurisdiction

During the twentieth century, the limitations statutes in much of the common law world have been seen as defective. Because of this a reform movement has occurred which has resulted in a number of significant reform reports and new statutes.[21]

These new statutes, whether enacted or recommended, are all designed in terms of a basic initial commitment to the strategy at law. That is to say, they utilize a set of fixed limitation periods, beginning when the claim arose, with different limitation periods matched to different categories of claims. However, they all also combine features of the strategy in equity. That is to say, they all adopt a discovery rule to trigger the running of the limitation period applicable to more claims than in traditional limitations statutes like the present Alberta Act. The use of a discovery rule protects the claimant from being barred from a remedy before he could reasonably have discovered his claim. As well, some of them utilize more judicial discretion.

In short, each of these statutes represents an amalgamation of the two historic strategies. However, the fit between the two strategies is not entirely comfortable and the problems with the strategy at law remain.

### C.    Options for Reform

Limitations law is not an area in which the basic policies are in dispute. The real problem for reform in this area arises out of inquiries into how the law should be moulded so as to reflect a balanced concern for the interests of all those parties who might launch or defend actions, who might be drawn into actions already begun, or who might be unaware of a cause of action or be unable by reason of some disability to pursue it.

We have considered three different approaches we might take to the reform of limitations law in Alberta. First, we could recommend the amendment of the present Alberta Act. Second, we could recommend the use of one of the more modern acts that combines an initial commitment to the strategy at law with features of the strategy in equity, with such amendments as we think beneficial. Third, we could recommend a completely new statute.

### (1)    Amend the Present Alberta Act

The present Alberta Act is based on the 1931 Uniform Act. The Uniform Law Conference of Canada adopted and recommended a new act, the Uniform Limitations Act (hereafter the "1982 Uniform Act") in 1982. Although no jurisdiction has yet enacted the

---

[21]    *See* Appendix A.

1982 Uniform Act, we believe that it is a significant improvement over the present Alberta Act. Indeed, the 1982 Uniform Act is largely based on a report prepared by the Alberta Commissioners to the Uniform Law Conference. As between these two Acts, we would therefore use the 1982 Uniform Act as our preferred starting point.

### (2)    Adopt a Conventional Modern Model

The two modern acts we considered most actively are the 1982 Uniform Act referred to in the previous paragraph and the *British Columbia Limitation Act* (hereafter the "B.C. Act") enacted in 1975. We believe that, of the two, the B.C. Act is the more modern model. It is shorter, it is relatively well organized and drafted, and it accomplishes, from a substantive point of view, what is required. Although the B.C. Act was enacted in 1975, and the Uniform Act was not adopted until 1982, the B.C. Act is based upon the *Report on Limitations*; *Part 2 General* of the Law Reform Commission of British Columbia, issued in 1974 (hereafter the "B.C. Report"), and that Commission had access to the report of the Alberta Commissioners on which the 1982 Uniform Act is based. We reproduced the B.C. Act as an appendix to the Report for Discussion.

In our view, the importation, in conventional modern statutes, of features of the strategy in equity into a limitations system based on the strategy at law does not answer many of the categorization, classification and accrual problems that make the existing law unsatisfactory. Although the conventional modern statutes improve upon the present Alberta Act, they do not provide a complete solution. We have grave reservations about the adequacy of a limitations system based on the strategy at law to properly balance the interests of claimants, defendants and society.

### (3)    Enact Legislation Based on the Strategy in Equity

We believe that the comprehensibility of the equitable limitations system gives it a decided advantage over a system which requires the result to be explained in terms of such highly technical legal rules as those determining the time of accrual of a cause of action, and the characterization and categorization of a remedial claim for the purpose of assigning to it one of a number of fixed limitation periods.

Although the guidelines within which equity operates make it possible for lawyers to predict the approximate length of the period which will be allowed in equity for bringing a claim, nevertheless, we do consider this residual uncertainty surrounding the time of expiration of the limitation period in equity a serious disadvantage.

30

D.    <u>Decision to Recommend a New Act</u>

We do not think that the present Alberta limitations system operates with sufficient fairness, for either claimants or defendants. Our conclusion is that there is neither a sound theoretical nor practical foundation for the practice of assigning different fixed limitation periods to different categories of claims.

We have discussed the two historic limitation strategies at length. It is now clear that a new strategy, utilizing design elements from both of the classic models, is evolving through the current reform movement. Although we believe that the Alberta limitations statute should continue to combine elements from both the legal and equitable systems, in terms of its basic orientation, which depends on the operation of the limitation periods, we believe that it should rely to a much more significant degree on the equitable strategy. Changing and clarifying limitations law so that all participants in the legal process might grasp the requisite procedural elements is a key factor influencing our opinion.

We believe that the best course is for us to recommend a completely new limitations statute. The new statute would incorporate ideas from our own deliberations, from the 1982 Uniform Act, from the B.C. Act, and from many other modern limitation provisions enacted in common law jurisdictions which, looked at collectively, recombine the two basic limitations strategies into a distinctly new limitations strategy based on the strategy in equity.

We have reached our decision knowing that the experience of three centuries has shown that it is a formidable task to design a limitations system that will deal adequately with both the significant minority of cases in which the gap between accrual and discovery is relatively long and unpredictable and the majority of cases in which that gap is relatively short and predictable. Our recommendations simply reflect a continuing law reform process; they build on the experiments and experiences of other jurisdictions. We hope that the Model Limitations Act (hereafter the "new Alberta Act") we recommend will contribute to reform in Alberta, and that other jurisdictions will choose to adopt and build on it, thus continuing the process of ongoing reform.

In developing the specific recommendations incorporated in the new Alberta Act we have been guided by seven general principles. They are:

(i)    Fairness. The Act should strike as fair a balance between the interests of claimants and defendants as is possible.

(ii)   Comprehensiveness. The primary element in the Alberta limitations system should be an Act which includes, insofar as feasible, all limitation provisions in force in Alberta.

31

(iii)    Comprehensibility.  The Act should be as comprehensible as possible for all persons, laymen and lawyers, who will be affected by it.

(iv)    Clarity.  Each provision of the Act should, insofar as possible, express its purpose, scope and method of operation unambiguously.

(v)    Organization.  The provisions of the Act should be organized in a logical sequence in order enhance their clarity and to eliminate redundancy.

(vi)    Plain language.  The Act should be drafted in contemporary plain language.

(vii)    Simplicity.    The Act should contain provisions expressing fundamental principles designed to be applicable in most cases, and it should not be burdened with technical solutions for rare cases.

### CHAPTER 4 - RECOMMENDATIONS FOR REFORM

A.    Principal Recommendation

Our principal recommendation is that Alberta enact a completely new limitations statute.

The philosophy underlying the new Alberta Act essentially continues the objectives that underlie the present Alberta Act. The limitations system must strike an appropriate balance between the interests of claimants, defendants and society. That is to say, in fashioning a limitations system it is necessary to be mindful of the injustice which will be done to either claimants or defendants by an improper balance, and to attempt to strike the balance which will achieve the most justice with the least injustice. The crucial differences that arise between the current and the proposed measures reflect how complex the current scheme has become and how difficult it is for a claimant or defendant to predict how the current limitations law will affect the rights of the parties to bring or defeat an action.

B.    Discussion of Core Recommendations

We have developed the new Alberta Act from two general conclusions that we have reached from our analysis of limitations law. The first conclusion is that all claims should be brought as soon as reasonably possible. The limitations period should not, however, be unduly short. A limitations system must give claimants a reasonable period of time after the occurrence of events to discover whether or not their rights have been violated by the conduct of others, to negotiate settlements and, if need be, to seek remedies. The second conclusion is that an absolute or ultimate limitation period applicable to all claims, one which is not subject to uncontrolled exceptions, and which is not unduly long, is required to achieve the objectives of a limitations system. The limitations system must require that claims be brought within a period of time which is reasonable in terms of the interests of both society and defendants. In particular, it must not tolerate an excessive risk that claimants advancing stale claims will obtain remedies when their rights have not been violated by defendants who have lost the capacity to defend themselves.

(1)    Limitation Periods

With one exception,[22] all claims subject to the new Alberta Act will be governed by two limitation periods, one known as the "discovery period" and the other as the "ultimate period". The defendant will be entitled to a limitations defence, when whichever of these

---

[22]    The exception, for a claim based on a judgment or order for the payment of money, is discussed at pp. 41-42.

32

periods expired first. Because all claims subject to the new Alberta Act will be governed by both periods, problems of characterization and categorization will be eliminated for these claims.

<div align="center">

(a)    The Discovery Rule

</div>

The discovery limitation period will begin when the claimant either discovered, or ought to have discovered, specified knowledge about his claim, and will extend for 2 years. We believe that, for the great majority of claims, this period will expire first. Because this period will depend on a discovery rule, the problems associated with accrual rules will be tremendously reduced.

<div align="center">

(i)    Commencement of discovery period

</div>

The discovery period will begin when the claimant discovers

(1)    that the injury for which he seeks a remedial order had occurred,

(2)    that the injury was to some degree attributable to conduct of the defendant, and

(3)    that the injury, assuming liability on the part of the defendant, was sufficiently serious to have warranted bringing a proceeding.

As to the first requirement, the discovery period will commence not at the time of the event, but at the time of discovery of the injury. Therefore, it may begin at different times for different injuries for which remedial orders are sought. It is possible that there will be separate claims based on different injuries arising from the same event.

As to the second requirement, the discovery period will not begin until the claimant first knew that his injury was to some degree attributable to the conduct of the defendant. In other words, the discovery period may begin at different times against different defendants.

As to the third requirement, the discovery period will not begin until the claimant first knew that his injury was sufficiently serious to have warranted bringing a proceeding, that is, there must be relatively serious harm. This criterion will protect litigants from incurring unnecessary legal expenses, and bringing unnecessary legal action. The discovery rule will, in effect, invite the judge to put himself in the claimant's shoes, to consider what knowledge he had at the relevant time, and to make the cost-benefit analysis which would be reasonable for the actual claimant.

34

### (ii)    Length of the discovery period

The discovery rule is claimant oriented, for it is designed to adjust to the circumstances of a particular claimant and to give him a reasonable period of time to bring a specific claim. We think that a 2-year discovery period is quite reasonable. The discovery period will not even begin to run until the claimant knew or should have known the three basic facts which trigger its operation, and he will be given 2 more years to consult a lawyer, to investigate the law and facts, to conduct settlement negotiations with the defendant, and to bring an action if necessary.

### (iii)    Knowledge required

The discovery rule incorporates a constructive knowledge test which charges the claimant with knowledge of facts which, in his circumstances, he ought to have known. This is the reasonable man standard. In the Report for Discussion, we related constructive knowledge to the knowledge which the claimant, in his circumstances and with his abilities, ought to have known, and rejected the reasonable man standard. We have since changed our view.

### (iv)    Claims subject to discovery rule

We believe that the discovery rule should be applicable to all claims governed by the new Alberta Act. Our principal reason is based on justice to the claimant. If the primary concern for categorizing claims under the traditional limitations approach is the claim which the claimant could not reasonably have discovered, as we think it is, we do not believe that a statute can fairly discriminate simply because there will be more claims in one possible category than another.

Another extremely important reason is that the new Alberta Act should be as simple and comprehensible as reasonably possible. If only some claims were subject to a discovery rule, these claims would have to be defined. This would present categorization problems in drafting the legislation, and characterization problems for lawyers and the courts in applying it. In addition, the claims which are not subject to a discovery rule would have to be governed by fixed limitation periods beginning with the accrual of the particular claim. As to these claims the problems associated with the accrual rules, categorization and characterization would remain. It is these problems which have been primarily responsible for making limitations law so complex and which we wish to avoid in the new Alberta Act.

35

(v)    Special cases

The new Alberta Act specifically defines when the discovery rule will begin to run against a successor owner of a claim, a principal, and a personal representative of a deceased person as a successor owner of a claim.

(b)    The Ultimate Rule

(i)    The Rule

The second of the two basic limitation periods, the ultimate period, will extend for 15 years, usually from the accrual of a claim. In the Report for Discussion we recommended an ultimate period of 10 years. We now think that a 10-year period is too short and would operate unfairly against claimants. Although we do not believe that the ultimate period will strike down many claims, when it is the applicable period there may be accrual rule problems.

(ii)    Special cases

The new Alberta Act specifies when the ultimate period will begin for a claim or claims resulting from a continuing course of conduct or a series of related acts or omissions, a claim based on the breach of a duty of care, a claim based on a demand obligation, a claim under the Fatal Accidents Act, and a claim for contribution.

(c)    Raising defence

The defendant will be required to assert his limitations defence; it will not take effect automatically. The expiration of the limitation period will not ordinarily expunge the legal right. The expiration of this time will simply give the defendant immunity from liability by providing him with a defence to a claim, as it does under the existing law.

(d)    Comment

We believe that a new Alberta Act based on our recommendations will be much fairer to claimants because all claims to which the Act applies will be subject to a discovery rule. However, the discovery rule will also benefit defendants, for in many cases claimants will have to bring claims sooner than under the present system if they have acquired the required knowledge. The ultimate period will benefit defendants. We believe that an ultimate period is essential for the achievement of the objectives of a limitations system.

36

### (2)  Acquiescence or Laches

#### (a)  In general

The courts will be authorized to deny equitable relief to a claimant even when the applicable limitation period under the Act has not expired. However, the courts will not be granted any other discretion to shorten or lengthen an applicable limitation period.

#### (b)  Breach of trust

The present Alberta Act, in ss. 40 and 41, specifically excepts certain claims based on breach of trust from its application. We considered whether to except claims based on breach of trust from the new Alberta Act, with the result that doctrines of laches and acquiescence would continue to apply to claims against a person who owes a fiduciary duty to another.

Our rule of thumb has been to include claims within the general limitations scheme unless there is convincing reason to make an exception. One of our members argued strongly that to apply fixed limitations periods to claims based in equity that are excepted from the present Alberta Act would be to effect a fundamental policy change that goes further than we should recommend. His argument is based on the acceptance of a difference in kind between claims originating at law and claims, or at least certain claims, originating in equity. In his words:

> Repose clearly warrants statutory limitation of claims at law. Such claimants should not be permitted endlessly to threaten litigation. In this context, it is only just to 'balance' the so-called strategies at law and in equity so that the defendant receives repose and the claimant is denied the right to litigate only after a reasonable time from the discovery of the claim.

> But to 'balance' such strategies for the parties in equity so that laches is retained for the defendant by s. 4 of the new Act but denied the claimant by the omission of s. 41(2) of the present Act is to do injustice to the claimant. His right to litigate is denied for no good reason. The repose deserved by the defendant in equity is fully served by the defence of laches. Equity does not arbitrarily end rights by mere delay. Thus, 'balancing' in this context gives the defendant in equity a windfall immunity at the expense of the claimant in equity whose property is unjustly retained by the defendant.

> Such defendant can easily end disturbance of his repose by threats of litigation, before laches applies, by undoing the unjust enrichment he enjoys. Only a philosophy of mere utility would suggest that a trustee in breach of the duty of loyalty deserves peace of mind in wrongly retaining trust property before laches gives him a defense, and then give him that repose by giving him the trust property.

The majority of us have not been persuaded that this argument should prevail. We do not see any fundamental difference between, for example, a breach of promises made under contract, and a breach of conditions imposed by trust. The discovery limitations period we propose is based on the discovery limitations principle that comes from equity and applies to breach of trust cases under the existing law. It will give trust beneficiaries a reasonable period of time within which to pursue their claims.    True, our recommendations impose a fixed period of 2 years from discovery on the application of this principle. We do not think that this will unduly burden trust beneficiaries any more than it will persons entitled to a remedy for other reasons. The ultimate limitation period we recommend will give trustees the same protection that it gives to other potential defendants. It will protect them from the prejudicial risks of stale evidence, guard them from incurring unreasonable economic costs, help assure them of legal decisions based on current socio-economic values, and enable them to look forward to eventual peace and repose.

The special provisions recommended in the new Alberta Act will cover a good many cases that are the subject of exception from the present Alberta Act. Where the trustee has fraudulently concealed the fact of the injury the ultimate limitation period would be suspended indefinitely. Furthermore, a breach of fiduciary duty that is continuous would give rise to successive claims. Again, the effect would be to suspend the ultimate limitation period indefinitely. Room exists for counsel to argue that the facts of a particular case bring it within one or another of the special provisions in the new Act.

    (3)    <u>Application of Act</u>

        (a)    <u>Remedial orders</u>

In a civil proceeding, a court is engaged in three distinct processes. They are: remedial orders, declarations and enforcement orders. The limitations periods in the new Alberta Act apply when a claimant seeks a remedial order in respect of a claim. The Act defines a "remedial order" to mean a judgment or an order made by a court in a civil proceeding requiring a defendant to comply with a duty to pay damages for the violation of a right.[23] Declarations and enforcement orders are expressly excluded.

---

[23]    A remedial order is either performance-oriented or substitutionary in nature. That is to say, it either compels a defendant to comply with his duty to the claimant or to compensate the claimant, in money, for the violation of his right by the defendant. The court order creates a new right-duty relationship between the claimant and defendant. Granting civil judicial remedies is one of the most important functions of the courts under the judicial system.

38

(b)     Inherent exclusions

Some types of claim should not be subject to any limitation provision. Such claims are excluded from the application of the new Alberta Act, either inherently or expressly, and could therefore be brought at any time. Because of these claims, there would still be some characterization and categorization problems in the new Alberta Act.

The exclusion of some claims is implicit in the definition of a remedial order. Examples of inherently excluded claims are: claims that are not subject to the legislative jurisdiction of Alberta, claims made in criminal proceedings, claims made in administrative proceedings, and claims made in interlocutory proceedings taken after a claim for a remedial order is before the court.

(c)     Express exclusions

Several types of claim are expressly excluded from the application of the Act.

(i)     Declarations

A declaration defines right-duty relationships, clarifies them and may recognize the existence of a right-duty relationship sufficient to justify granting a remedy. Declarations should not be subject to a limitations system. In the Report for Discussion, we excepted them on the basis that a declaration merely declares rights. While we continue to recommend this exception, we think it only fair that we do so recognizing the potential of the declaration for use to circumvent the limitation periods set out in the Act. Declarations constitute a growth area in the law, rendering the effect of their exception from the Act something of an unknown factor. For example, what would be the result were a claimant to seek remedial relief that is ancillary to a declaration? The definition of "remedial order" in s. 1(i) of the Act is the control mechanism.

(ii)     Enforcement orders

A remedial order is not self-executing. A court may therefore be required to issue further orders and writs for the purpose of enforcing the remedial order. Enforcement orders are excluded from the application of the new Alberta Act, although the Act does provide a limitation period within which proceedings must be brought to renew a judgment for the payment of money for the purpose of enforcement.[24]

---

[24]     For discussion, *see* pp. 41-42.

### (iii)    Judicial review

Claims requesting judicial review are expressly excluded for two reasons: first, because they are declaratory rather than remedial in effect and, second, because, unlike claims in ordinary civil proceedings, they have a public law character.

### (iv)    *Habeas corpus*

To impose a time limitation curtailing access to the court for the purpose of determining the legality of a person's detainment by another would be utterly offensive to this ancient and renowned remedy. The exclusion is stated independently from the exclusion of claims for judicial review because, unlike other relief available against a public authority, the remedy of *habeas corpus* lies against anyone.

### (v)    Possession of real property

The new Alberta Act specifically excepts claims based on the adverse possession of land from the operation of the 2-year discovery limitation period. However, the 15-year ultimate limitation period will still apply. The *Law of Property Act*, s. 60, will be subject to the same exception. In the Report for Discussion we recommended that claims, whether legal or equitable, for the possession of property, whether real or personal, be excluded from the coverage of the new Alberta Act, for we wished to eliminate the acquisition of ownership through adverse possession. We continue to be of the view that the substantive law governing adverse possession is in need of reform. However, we now think that that reform should be addressed in the context of another project, and have withdrawn the recommendation for an exception in the context of this report.

In the Report for Discussion, we also recommended that claims with respect to certain other possessory interests in property, real or personal, be excepted from the new Alberta Act. We are no longer satisfied that the reasons given provide a sufficient basis for recommending exceptions for these claims. The claims excepted were:

1.    adverse possession of personal property - we now see no reason why the owner of personal property should not be required to claim it before the expiration of the discovery period or the ultimate period, whichever first expires;

2.    the realization of a security interest by a security party in rightful possession of secured property - as it would be uncommon for a security holder to hold on to the security, and more uncommon still for the security holder to need the court to help him dispose of it, no exception is required;

40

3.   redemption of secured property by a debtor - the right to redeem is protected by our recommendations for claims added to a proceeding;

4.   compliance with a duty based on an easement, a *profit a prendre*, a utility interest, or a restrictive covenant attached to and running with land - the ultimate period would not apply because the rights described are continuous such that breach of the duty to comply would give the complainant a continuous succession of claims; and

5.   the revision of a register under the *Land Titles Act* - we see no reason to single out this particular administrative function for exception from the Act, especially when judicial review of administrative action is included as a general exception.

(vi)   Adverse possession of real property owned by the Crown

At common law, the right to take title to land by adverse possession cannot be claimed with respect to land owned by the Crown. Because the new Alberta Act expressly binds the Crown, it stipulates an exception for this situation.

(vii)   Limitations provisions in other enactments

We have noted a distinction between the coverage of the general limitations statute and the many limitations provisions in specialized statutes dealing with particular types of claim that also form part of the limitations system. Limitations provisions in specialized statutes are excepted from the new Alberta Act.

(4)   Concealment

The ultimate period will be suspended for fraudulent concealment by the defendant of the fact that the injury had occurred. The recommendation in the Report for Discussion referred to knowing and wilful concealment. We have substituted fraudulent concealment to avoid the problems of proof which would accompany the use of the words "knowing and wilful". We have also narrowed the scope of the recommendation by restricting to fraudulent concealment by the defendant to the fact "that the injury had occurred". The recommendation in the Report for Discussion would have suspended the ultimate period for concealment by the defendant of the fact that the injury had occurred, that it was to some degree attributable to the defendant's conduct, or that it was sufficiently serious to have warranted action by the claimant. In our view a provision framed in the wider terms of the Report for Discussion would place an undue burden on the defendant to anticipate the state of mind and knowledge of potential claimants.

(5)    Persons under Disability

The limitation periods will not operate while a person is under disability, whether the person is under disability when his claim accrues (prior disability) or came under disability after his claim accrued (subsequent disability). In making this recommendation, we depart from the present Alberta Act which suspends the operative limitations period for a prior disability but not for a subsequent disability.

We also recommend that there should be no time limit on the operation of the suspension, that is, the period of suspension should match the period of disability. Here, we depart from the recommendation in the Report for Discussion which would have limited the period of suspension of the ultimate period to a maximum of 10 years. The result would have been that the discovery period would never expire while a person is under disability, but the ultimate period would have been limited to 20 years from the accrual of a claim; it would have had 10 years of normal operation and a possible suspension of 10 years.

We have modified the definition of a "person under disability" where the person is an adult. In the Report for Discussion, we recommended adoption of the definition, in s. 25 of the *Dependent Adults Act*, that an adult under disability is an adult who is "unable to make reasonable judgments in respect of matters relating to all or any part of his estate". The definition we now recommend employs the words "unable to make reasonable judgments in respect of matters relating to the claim". In connecting the disability to the particular claim, the new definition recognizes, as does the common law, that a person may be competent for one purpose (e.g. to marry), but not for another (e.g. to make a will).[25] It opens the way to flexible interpretations appropriate to specific facts and circumstances (e.g. where sexual assault in childhood is alleged by an adult whose memory of the incident or incidents has been psychologically blocked for many years).

(6)    Claims Added to a Proceeding

When a proceeding has been started by a timely claim, the parties will often wish to add further claims which are subject to a limitations defence. If the added claims are related to the conduct, transaction or events described in the original pleading in the proceeding, it will often be desirable, for reasons of justice and efficiency, to have them tried in a single proceeding with the original claims. The new Alberta Act will deprive a defendant of a limitations defence he would normally have to an added claim in the

---

[25]    The *Dependent Adults Act* recognizes the same concept by requiring orders of partial guardianship, separate from trusteeship, where a person is unable to make reasonable judgments in respect of matters relating to his or her person.

42

situation we have described, but only if requirements designed to give the defendant alternative limitations protection have been satisfied.

### (7) Agreement

Variation of the limitation provisions by agreement between the persons themselves will be permitted in accordance with normal contract law. That is to say, whatever limitation period is used, if the parties are in fact conducting settlement negotiations, or if a creditor wishes to allow a debtor additional time for payment, the parties will be able to use an agreement, with minimal cost, to avoid unnecessary litigation.

### (8) Acknowledgment and Part Payment

The law that applies to acknowledgments and part payments under the present Alberta Act will not change. Rather, the new Alberta Act attempts to restate that law in a more organized and comprehensible manner, and hence to clarify it.

### (9) Conflict of Laws

The limitations law of Alberta will apply when a claim is brought in Alberta, notwithstanding that the Alberta court will decide the claim according to the substantive law of another jurisdiction.

### (10) Judgment for the Payment of Money

In the only limitation period specified that is unrelated to the discovery and ultimate limitation periods, the new Act requires a claimant to seek a remedial order in respect of a claim based on a judgment or order for the payment of money within 10 years after the claim arose. If he does not, the new Act gives the defendant immunity from liability in respect of the claim. As in the case of the main limitation provisions, the defendant must plead the defence to obtain the immunity. The effect is to continue the requirement, in s. 4(1)(f) of the present Alberta Act, that action on a judgment or order for the payment of money be brought within 10 years after the cause of action on the judgment arose.

Our final recommendation differs from the tentative recommendation made in the Report for Discussion. There, we recommended that the new Act should not specify any limitation period within which action on a judgment for the payment of money must be brought. Our reasons were that:

(i) the objectives of the limitations system are satisfied if the claim that leads to the original judgment is brought within the appropriate limitation period; and

43

    (ii)    the renewal of a judgment has to do with its enforcement, the limitation of enforcement is a procedural matter and it should thus be in the Rules of Court.

We departed from our general principle that time limits associated with enforcement lie outside the limitations system, and recommended that:

    (i)    there should be only one method of renewing a judgment for purposes of enforcement,

    (i)    that method should be provided in modified Alberta Rules 331, 355 and 356, and

    (ii)    the common law action on a judgment should be abolished.

Under the tentative recommendations, the Rules would have been amended to provide that a judgment could be enforced provided that the enforcement procedure is commenced within 10 years after the date of the judgment.

Having reconsidered our position, we are now of the view that:

    (i)    collecting on a judgment (which is procedural) should not be confused with pursuing the cause of action created by a judgment (which is what the limitations statute deals with),

    (ii)    it may be that one method of renewing a judgment (either under the Rules of Court or by action on a judgment) for the purpose of enforcing it is to be preferred to the other and that one should be abolished, but this is a matter for consideration at another time,

    (iii)    abolishing the common law action on a judgment would interfere with the enforcement of judgments or orders granted in jurisdictions that are not recognized under reciprocal enforcement legislation in Alberta.[26]

---

[26]    *Reciprocal Enforcement of Judgments Act*, R.S.A. 1980, c. R-6; *Reciprocal Enforcement of Maintenance Orders Act*, R.S.A. 1980, c. R-7.1. These Acts do not provide a sufficient enforcement mechanism because their application is restricted to judgments granted in reciprocating jurisdictions. In fact, judgments granted by courts in some Canadian provinces are not recognized. Moreover, the conditions that must be met for registration can be difficult to satisfy.

44

C.    Other Matters

    (1)    Transitional

The new Alberta Act will apply to a claim made in a proceeding commenced after the Act comes into force. A defendant will be deprived of his immunity where a claim is commenced in time to satisfy the present Alberta Act and is also commenced within 2 years from the date the new Alberta Act comes into force. The effect is to give the claimant 2 years, the period allowed by the discovery rule, after the commencement of the new Alberta Act within which to bring a known claim.

This is a departure from the recommendations in the Report for Discussion. Under those recommendations, a claim that arose under the present Alberta Act would have been protected if the proceeding was commenced in time to satisfy the later of the limitation provisions in the present Act or the new Act. A defendant would have been protected if he would have been entitled to an immunity to a claim under the present Alberta Act.

    (2)    Interpretation

The new Alberta Act is silent on matters of interpretation. The Report for Discussion made recommendations for the inclusion of two provisions on the interpretation of the new Act. One provision would have expressly permitted the court to consider the Institute report in ascertaining the meaning of any provision in the Act. The second provision would have directed the court to adopt an interpretation which promotes the general legislative purpose of the Act. We no longer see any efficacy in the inclusion of these provisions which merely require restate established rules of statutory interpretation.

    (3)    Consequential Amendments

        (a)    Prescription of light

The new Alberta Act provides that section 50 of the present Alberta Act be transferred to the Law of Property Act.[27] Section 50 provides that, although Alberta received the common law, it never received the doctrine of prescription insofar as the rights described in that section could have been acquired by prescription.

---

[27]    Section 50 says:

> No right to the access and use of light or any other easement, right in gross or profit a prendre shall be acquired by a person by prescription, and it shall be deemed that no such right has ever been so acquired.

45

The doctrine of prescription has its origin in the common law. It is extremely complex, and although it is not properly part of limitations law, it operates in much the same way. We do not wish to consider this subject, on the merits, in this report, for we believe the issues which would be raised concern substantive property law rather than limitations law.

(b)    Repeal of the present Alberta Act

The new Alberta Act introduces an entirely new approach to limitations law. As such it replaces the present Alberta Act. The new Act therefore provides for the repeal of the present Act.

M. B. BIELBY                    E.E. DAIS
H. WINEBERG                     J.L. FOSTER, Q.C.
A.D. HUNTER, Q.C.              W.H. HURLBURT, Q.C.
H.J.L. IRWIN                    D.P. JONES, Q.C.
P.J.M. LOWN                     B.L. RAWLINS
J.P. MEEKISON                   C.G. WATKINS
A.C.L. SIMS

CHAIRMAN

DIRECTOR

December 1989

**PART IV - ANNOTATED MODEL LIMITATIONS ACT**

**Contents**

| | | |
|---|---|---|
| Section 1 | - | **Definitions** |
| Section 2 | - | **Application** |
| Section 3 | - | **Limitation Periods** |
| Section 4 | - | **Acquiescence or Laches** |
| Section 5 | - | **Concealment** |
| Section 6 | - | **Persons under Disability** |
| Section 7 | - | **Claims Added to a Proceeding** |
| Section 8 | - | **Agreement** |
| Section 9 | - | **Acknowledgment and Part Payment** |
| Section 10 | - | **Persons Affected by Exceptions for Agreement, Acknowledgment and Part Payment** |
| Section 11 | - | **Judgment for Payment of Money** |
| Section 12 | - | **Conflict of Laws** |
| Section 13 | - | **Transitional** |
| Section 14 | - | **Consequential** |

<u>Note</u>

<u>A Model Act</u>

1.    This Act is a "model" limitations act because it develops a new approach to limitations law. Specific references in the annotation are to the law of Alberta because we are an Alberta Law Reform Institute and our recommendations are intended primarily for enactment in Alberta.

<u>Terminology</u>

2.    Because the Model Act adopts a new approach it adopts a new terminology. The words are used in a generic, non-technical sense. The Act speaks of a "claim" (rather than a cause of action) to denote the substantive right that may entitle a person to receive a remedy in a civil proceeding before a court, of a "claimant" (rather than a plaintiff or applicant) who seeks a "remedial order" in respect of a "claim", and of a "defendant" (which may include a third party) as the person against whom a remedial order is sought.

<u>Scope</u>

3.    The Act is a general limitations statute. Although it is generally comprehensive in its coverage, it does not embody the entire limitations system, and limitation provisions in specialized statutes dealing with particular types of claim are excluded. A comprehensive list of those provisions is contained in the *Alberta Limitations Manual* published by Butterworths (1983). A list of those provisions in other statutes in Alberta that apply to civil judicial claims is included as Appendix B to this report.

46

4.      The concept of a "remedial order" is central to the application of the Act.  A "remedial order" is, by definition, restricted to a claim requesting the *enforcement* of a right-duty relationship.  This is because the purpose of the Act is to limit the time available to a claimant for bringing a claim that requires a defendant to do something.  Certain exclusions are implicit in the definition.  For example, declarations are excluded because they merely define and recognize existing rights.

A New Limitations Strategy

5.      The Act introduces a new limitations strategy.  The new strategy relies to a significant degree on the limitations strategy in equity in which the limitation period commences at the time of the discovery of a claim by the claimant.  In this, it departs from the approach traditionally taken in general limitations statutes which is based on the strategy at law.  The new strategy continues the direction of the reform movement currently evident in judicial and statutory reforms.

Two Limitation Periods

6.      All claims subject to the Act are governed by the same two concurrent limitation periods.  This is a departure from the traditional approach to limitations law which expressly describes and assigns a limitation period in the statute to certain types of claim (e.g. in tort, in contract, against hospital boards).

7.      One limitation period (the "discovery period") begins when the claimant either discovered, or ought to have discovered, specified knowledge about his claim and extends for 2 years.

8.      The other limitation period (the "ultimate period") extends for 15 years, usually from the date of accrual of a claim.

9.      Because all claims subject to the Act are governed by both periods, problems of characterization and categorization associated with the traditional approach to limitations law under the strategy at law are eliminated for these claims.

10.     Some characterization and categorization problems will exist under the Act because some categories of claim are excepted from it.  Not being subject to any limitation provision, claims in the excepted categories can be brought at any time.

11.     In some cases the general rule must be followed through particular applications, for example, the special limitation commencement rules in ss. 3(2) and (3), fraudulent concealment in s. 5, and persons under disability in s. 6.

Effect of Limitation Periods

12.     The defendant is entitled to a limitations defence when whichever of the two limitation periods expires first.  A successful defence gives the defendant immunity from liability under the claim.  It does not expunge legal rights.

13.     The defence must be pleaded.  Immunity from liability is not conferred automatically.

48

Interpretation

14.    Because the approach is new, upon its introduction into force the Act will require
lawyers and judges to grapple with its scope and specific applications.  Definitive answers
to questions about the application of the Act to given fact situations will not always be
possible.  Until issues regarding interpretation are settled, the Act will provide lawyers with
a unique and challenging opportunity to present creative arguments based on principle.

[Section 1 - Definitions]

1    In this Act,

    (a)    "claim" means a matter giving rise to a civil proceeding in which a claimant seeks a remedial order;

    (b)    "claimant" means the person who seeks a remedial order;

    (c)    "defendant" means a person against whom a remedial order is sought;

    (d)    "enforcement order" means an order or writ made by a court for the enforcement of a remedial order;

    (e)    "injury" means

        (i)    personal injury,

        (ii)    property damage,

        (iii)    economic loss,

        (iv)    non-performance of an obligation, or

        (v)    in the absence of any of the above, the breach of a duty;

    (f)    "law" means the law in force in the Province, and includes

        (i)    statutes,

        (ii)    judicial precedents, and

        (iii)    regulations;

    (g)    "limitation provision" includes a limitation period or notice provision that that has the effect of a limitation period;

    (h)    "person under disability" means

        (i)    a minor, or

49

50                                          [Section 1 - Definitions]

     (ii)    **an adult who is unable to make reasonable judgments in respect of matters relating to the claim;**

   (i)    **"remedial order" means a judgment or an order made by a court in a civil proceeding requiring a defendant to comply with a duty or to pay damages for the violation of a right, and excludes**

     (i)    **a declaration of rights and duties, legal relations or personal status,**

     (ii)    **the enforcement of a remedial order,**

     (iii)    **judicial review of the decision, act or omission of a person, board, commission, tribunal or other body in the exercise of a power conferred by statute, or**

     (iv)    *habeas corpus*;

   (j)    **"right" means any right under the law and "duty" has a correlative meaning;**

   (k)    **"security interest" means an interest in property that secures the payment or other performance of an obligation.**

### Comment

**Clause 1(a) - Claimant**

1.    The word "claim", defined in cl. 1(a), is substantive in meaning, not procedural. That is to say, it refers to the facts and circumstances which give rise to the alleged right to a remedy, not to the process by which the claim is made.

**Clause 1(ab - Claimant**

1.    The word "claimant", defined in cl. 1(b), would include a plaintiff suing for monetary damages. It would also include a plaintiff suing for specific performance or any other order for non-monetary relief to enforce a duty owed by a defendant in respect of the right of a claimant, as can be seen from the definition of "remedial order" in cl. 1(i). *See* the comments on cl. 1(i) and s. 3 for a discussion of the exceptions from the application of the Act.

**Clause 1(c) - Defendant**

2.    The word "defendant", defined in cl. 1(c), would include third party defendants.

### Clause 1(d) - Enforcement order

3.    Functionally, an enforcement order, defined in cl. 1(d), is made during the fourth of four distinct processes in which a court is engaged in a civil proceeding. The first three processes are:  (1) the identification and definition of the right-duty relationship upon which the claim is based; (2) the determination whether a breach of a relevant duty has occurred; and (3) the selection of an appropriate remedy and grant of a remedial order.

4.    No further definition of an enforcement order has been attempted because:   (1) the types and specific characteristics of these orders may be varied over time; (2) they are the subject of extensive provisions in the Alberta Rules of Court; and (3) the general reference to a claim for the enforcement of a remedial order offers an adequate and practical solution.

### Clause 1(e) - Injury

5.    Cl. 1(e) defines "injury" broadly, in keeping with the generic meanings to be attributed to words used in the Act. "Injury" is defined for purposes of the discovery limitation rule stated in cl. 3(1)(a), and ss. 5(1) on fraudulent concealment.

### Clause 1(f) - Law

6.    Cl. 1(f) defines "law" for purposes of the definition of "right" in cl. 1(j), ss. 2(1) on the application of the Act, cl. 7(3)(b) and cl. 7(4)(b) on claims added to a proceeding, s. 12 on conflict of law rules, and the transitional provision in ss. 13(2).

### Clause 1(g) - Limitation Provision

7.    Cl.    1(g)    defines    "limitation provision" for purposes of the express exlusion from the application of the Act stated in cl. 2(2)(b).

### Clause 1(h) - Person under Disability

8.    Cl. 1(h) defines the category of "persons under disability" to include all minors and some adults. The Act gives persons under disability the benefit of a suspension of the specified limitations periods:  see ss. 3, 6.  In the case of the discovery limitation period this is because the assumption that the claimant has the ability to make reasonable judgments is not accurate for all claimants.

9.    *Minors.* The general policy with respect to minors is carried forward from the *Limitations of Actions Act*, R.S.A. 1980, c. L-15, cl. 1(c) (hereafter "the present Alberta Act").    (A minor is defined in the *Age of Majority Act*, R.S.A. 1980, c. A-4, as a person under 18 years of age.)

10.    *Adults under disability.* The general policy with respect to adults is also carried forward from the present Alberta Act. However, "unsoundness of mind" has been redefined and the suspension now applies to "an adult who is unable to make reasonable judgments in respect of matters relating to the claim". The words "unable to make reasonable judgments", describing the condition, are borrowed from the *Dependent Adults Act*, R.S.A. 1980, c. D-32, s. 25. The words of further qualification, "in respect of matters relating to the claim", connect the disability to the particular claim. The concept is similar to the concept, at common law, of mental incompetence (or incapacity), and to the concept, in the *Dependent    Adults    Act*,    of    partial guardianship separate from trusteeship. Both the common law and the *Dependent Adults Act* recognize that a disability may affect some but not all aspects of a person's ability to function mentally.

11.    Adoption of the language in the *Dependent Adults Act* helps to ensure the maintenance of an appropriate definition that will be reviewed from time to time in