the light of revised social and medical standards.

## Clause 1(i) - Remedial order

12.    Three features of the definition of "remedial order", in cl. 1(i), should be noted. First, the word "order" includes a judgment or an order. Second, the order must be made by a court in a civil proceeding. Third, the order must *enforce* a duty owed by a defendant in respect of a right of the claimant.

13.    Remedial orders fall into two categories.    The order may be performance    oriented,    requiring    a defendant to comply either with an affirmative duty to do something, or with a negative duty to refrain from doing something. Alternatively, the order may be substitutionary in nature, requiring a defendant to pay damages for the violation of a right in substitution for the performance of a duty which is no longer either possible or feasible. There is no difference between the two categories as a matter of application. That is, the two categories are treated in exactly the same way.

14.    The definition contains four express exclusions.

## Subclause 1(i)(i) - Express Exclusion of Declarations

15.    Subcl. 1(i)(i) expressly excludes a claim for a declaration of rights and duties, legal relations or personal status from the coverage of the Act.    The exclusion of a claim for a declaration is stated explicitly because of the critical importance of the exclusion.

## Function of Declaration

16.    A declaration is excluded because, strictly speaking, it has no creative effect: it does not order anyone to do, or to refrain from doing, anything. Rights and duties, legal relations and personal status

exist under the law without any necessary reference to the courts, and persons usually comply with their duties without judicial coercion.    A claim for a declaration may be brought where persons have a genuine dispute as to the scope of their respective rights and duties, legal relations or personal status.    The interested persons may leave the court in peace and comply with their duties as defined in the declaration without further resort to the judicial process.    A declaration simply recognizes and defines rights and duties, legal relations or personal status that already exist.

## Types of Declaration Excluded

17.    *Declaration of Rights and Duties.* The Act does not apply where the claimant seeks a declaration of rights and duties based on contract, trust, restitution, property or statute, e.g. the interpretation of a legal document such as a mortgage, a lease, a contract, a will or a trust; or a declaration of the priority of interests in land under the Land Titles Act.    Rights and duties based on contract, trust, restitution, property and statute

18.    *Declaration of Legal Relations.* The Act does not apply where a claimant seeks a declaration of legal relations (e.g. the relationship between a person with a power (an agent) and a person under a liability to have his rights and duties altered if the power is exercised (the principal); or the relationship between a person who has gained an immunity from liability under a power and a person under a disability to exercise the power).

19.    *Declaration of Personal Status.* The Act does not apply where a claimant seeks a declaration of personal status (e.g. a declaration of personal status resulting from marriage, divorce or parentage).

## Effect of Exclusion

20.    The precise scope and effect of the exclusion of declarations from the

application of the new Act is a matter to be determined through experiment and experience. Used creatively, the declaration may provide an avenue by which to avoid the limitations periods in the Act. That is because, strict legal theory notwithstanding, a declaration often yields practical benefits.

21.    Courts have repeatedly observed, "the scope of a declaratory proceeding is a wide legal remedy" that is particularly to be valued for the opportunity it gives to courts to award appropriate forms of consequential relief: *Sommers* v. *City of Edmonton* [1978] 5 W.W.R. 205 at 221, *per* Haddad J.A. According to the Supreme Court of Canada, the action for declaratory relief is "neither constrained by form nor bounded by substantive content": *Solosky* v. *The Queen* [1980] 1 S.C.R. 821, *per* Dickson J. (now C.J.C.). (The judgment in *Solosky* reviews what is meant by a "real dispute".)

22.    A declaration may affect the ordering of affairs and have other potential and remedial effects - hence the expression "declaratory relief". The disputes giving rise to traditional actions for declaration (partition of property, marital status, cloud on title) are real, present disputes that call for judicial settlement. Threats to social disequilibrium can be staved off by making rights of property or status secure before any breach has actually occurred. A purchaser of land in Alberta has been granted a declaration that he is the owner of mines and minerals and, as a result, the effect of an intervening transaction has been negated. An insured person under a policy has successfully sought a declaration that the policy was in full force and that the insurer's refusal to accept a renewal premium was wrongful. A declaration of the invalidity of assessments has had the effect of substantially reducing the applicant's assessment.

23.    It will be a question to be decided in the particular case whether relief supplementary to a declaration comes within the definition of "remedial order", and hence within the scope of the new Alberta Act. S. 11 of the *Judicature Act*, R.S.A. 1980, c. J-1, refers to the possibility, though not the necessity, of relief consequential to a declaration, thereby suggesting that the court's declaratory powers are more extensive than simply the issuance of judgments that, strictly speaking, are only assertive and not coercive. The section provides that:

> 11. No proceeding is open to objection on the ground that a judgment or oder sought is declaratory only, and the Court may make binding declarations of right whether or not any consequential relief is or could be claimed.

24.    The only time constraints on a declaratory application seem to fall under general equitable principles, although there is some scholarly controversy about whether the discretionary bars to equitable relief apply to declaratory actions. Courts have expressly sanctioned the use of declaration as an alternative, more general procedure in the face of a time-barred, specific one: *see* e.g. *Sommers* v. *City of Edmonton*.

## Subclause 1(i)(ii) - Express Exclusion of Enforcement Orders

25.    Subcl. 1(i)(ii) expressly excludes a claim for an enforcement order from the coverage of the Act. As in the case of a claim for a declaration, the exclusion is stated explicitly because of its critical importance.

26.    There are two reasons for the exclusion. First, an enforcement order will not be issued unless the initial claim was brought within the prescribed limitation period. The objective of the Act, which is to ensure that claims requesting remedial orders are brought

54

within a reasonable time, will therefore have been satisfied. Second, an enforcement order is procedural in nature. As such, any limitation of the time available to a claimant to request an enforcement order is a matter for the Rules of Court.

### Subclause 1(i)(iii) - Express Exclusion of Judicial Review of Administrative Proceedings

27. Subcl. 1(i)(iii) expressly excludes a claim requesting judicial review of the decision, act or omission of a public authority (i.e. a person, board, commission, tribunal or other body in the exercise of a power conferred by statute) from the Act.

28. The exclusion embraces claims for relief brought by an application for judicial review under Part 56.1 of the Alberta Rules of Court. An application for judicial review may include a claim for any relief that the applicant would be entitled to in any one or more of proceedings for an order in the nature of mandamus, prohibition, certiorari, quo warranto or habeas corpus, or for declaration or injunction. A claim for relief by way of an order in the nature of *habeas corpus* is excluded specifically in subcl. 1(i)(iv).

29. There are two reasons for excluding claims for judicial review. The first reason is that the remedies used in judicial review are declaratory rather than remedial in effect in that a claim for judicial review is brought for the purpose of testing the "legality" of the conduct of the public authority whose decision, act or omission is the subject of complaint. In other words, the claim is brought to determine whether conduct was within the jurisdiction conferred by statute and whether the power was exercised without abuse.

30. The second reason is that, unlike claims in ordinary civil proceedings, claims for judicial review have a public law character. The powers exercised by public authorities frequently affect large segments of the public and the remedies granted on judicial review may result in a realignment of rights and duties of many persons. The value judgments which must be made in developing limitations provisions applicable to claims requesting judicial review are therefore significantly different from the value judgments which a limitations statute reflects in connection with claims for remedial orders in ordinary civil litigation. A limitations systems for claims requesting judicial review of the decision, act or omission of a public authority should therefore be developed separately and contained in either the Rules of Court or a specialized statute.

### Subclause 1(i)(iv) - *Habeas corpus*

31. Subcl. 1(i)(iv) expressly excludes a claim requesting *habeas corpus* from the Act.

32. The ancient remedy of *habeas corpus* lies to compel the production of the body of a person detained by another to determine the legality of the confinement. It has been described as "the most renowned contribution of the English common law to the protection of human liberty" (S.A. deSmith, *Judicial Review of Administrative Action* 4th ed. J.M. Evans ed. 1980, at 596). The right to claim the remedy is protected by section 11 of the *Canadian Charter of Rights and Freedom (Constitution Act, 1982)* which provides that

> ... everyone has the right on arrest or detention . . . to have the validity of the detention determined by way of habeas corpus and to be released if the detention is not lawful.

33. The reason for the exclusion is obvious: any time limitation would be utterly offensive to *habeas corpus*.

[Section 1 - Definitions]                                       55

34. The exclusion is stated independently from the exclusion of claims for judicial review because, unlike other relief available against a public authority, the remedy of *habeas corpus* lies against anyone.

Clause 1(j) - Right

35. Cl. 1(j) defines the word "right" for the purposes of the definition of "remedial order" in cl. 1(i).

Clause 1(k) - Security Interest

36. Cl. 1(k) defines "security interest" for purposes of s. 9(1) as an interest in property that secures the payment or other performance of an obligation, that is, property that serves as an auxiliary security for a personal obligation. The definition is based on the definition of "security interest" in the *Personal Property Security Act*, R.S.A. 1988, c. P-4.05, cl. 1(1)(qq).

**[Section 2 - Application]**

2(1)   Except as provided in subsection (2), this Act is applicable to any claim, including a claim to which this Act can apply arising under any law that is subject to the legislative jurisdiction of the Parliament of Canada, if

   (a)   the remedial order is sought in a proceeding before a court created by the Province, or

   (b)   the claim arose within the Province and the remedial order is sought in a proceeding before a court created by the Parliament of Canada.

(2)   This Act does not apply where a claimant seeks:

   (a)   a remedial order based on adverse possession of real property owned by the Crown, or

   (b)   a remedial order the granting of which is subject to a limitation provision in any other enactment of the Province.

(3)   The Crown is bound by this Act.

Comment

Subsection 2(1) - Scope of Application

In General

1.   Ss. 2(1) describes the coverage of the Act.  As is usual in conventional limitations statutes, the coverage is generally comprehensive.

Claims Included

2.   *Alberta Jurisdiction*.  The claim must be subject to the legislative jurisdiction of Alberta. That jurisdiction includes any claim which arose under the substantive law of Alberta and which is brought before an Alberta court.

3.   *Federal Jurisdiction*.  Sometimes provincial limitations law can apply to claims arising under federal legislation or to matters brought before a federal courts, that is a court created by the Parliament of Canada.

   a.   *Federal law*.  Any claim which arose under substantive federal law and which is brought before an Alberta court is, by express reference, subject to the Act to the extent that the Act can be made applicable to it.  The result is that no limitations hiatus can exist because Alberta has failed to assert a legislative power over a claim which is not in fact subject to limitation provisions under federal law.  (Some areas of law are subject to exclusive federal jurisdiction. Although Parliament can subject claims in these areas to applicable provincial limitations law, the extent to which it has

[Section 2 - Application]

done this is sometimes uncertain. In other areas of law there may be dual legislative jurisdiction, with federal jurisdiction paramount. Federal legislation on a subject would preempt that subject area. However, the extent to which federal legislation on a subject actually occupies an entire subject area, and hence preempts provincial legislation, is sometimes uncertain.)

    b. *Federal courts.* Similarly, any claim which arose within Alberta and which is brought before a federal court is, by express reference, subject to the Act to the extent that the Act can be made applicable to it. Again, the result is that a claim which arose in Alberta and which is brought before a federal court will not be in a limitations void because neither jurisdiction applied limitation provisions to it. This is in accordance with the legislative power granted by Parliament to a province in this situation in s. 38(1) of the *Federal Court Act*, R.S.C. 1970 (2nd Supp.), c. 10, which provides:

> 38.(1) Except as expressly provided by any other Act, the laws relating to prescription and the limitation of actions in force in any province between subject and subject apply to any proceedings in the Court in respect of any cause of action arising in such province. ...

(For this purpose the crucial point is that the claim arose in Alberta; it makes no difference whether the claim arose under federal substantive law or Alberta substantive law, or whether the claim is brought before a federal court in Alberta or somewhere else in Canada.)

Claims Excluded By Definition of "Remedial Order"

4.    Certain categories of claim are excluded from the application of the Act. Some are excluded, either inherently or expressly, by the definition of "remedial order".

Inherent Exclusions

5.    The statement, in ss. 2(1), that the Act is applicable whenever a claimant seeks a "remedial order" involves the inherent exclusion of the following four claims.

6.    *Claims not subject to the legislative jurisdiction of Alberta.* There is no point in making a law which other jurisdictions will ignore. Where a claim is brought before a court created by another province or by a foreign state, the jurisdictional reality is that the claim is not subject to the legislative jurisdiction of Alberta. Therefore, the Act does not apply.

7.    The issue whether or not the Act should apply to a claim that arose under the substantive law of another province or of a foreign state and that is brought before an Alberta court is a conflict of laws issue dealt with in s. 12.

8.    *Civil (not criminal) claims.* The Act applies to civil claims. It does not apply to criminal proceedings.

9.    *Judicial (not administrative) claims.* The Act applies to claims brought in judicial proceedings before courts. It does not apply to claims in ministerial or administrative proceedings. (The policy considerations relevant to limiting the time available to a claimant for seeking ministerial or administrative action frequently differ from those relevant to judicial claims and are therefore reserved to specific limitations in other statutes.)

10.    *Post-claim time periods.* The Act imposes time constraints only to the bringing of claims. Unless a claim subject to the new Alberta Act is *brought* within the applicable limitation period, the defendant will be entitled to assert his immunity from liability under the claim. Time constraints governing procedures to be followed in the course of litigation *after* a judicial action is begun (e.g. time

58                                                         [Section 2 - Application]

constraints applicable to interlocutory motions and appeals) are not affected. These procedural time constraints are relevant to the conduct of litigation of a claim already before a court. As such, they do not limit the time available for bringing a claim.

### Express Exclusions

11. Four types of proceeding are expressly excluded by the definition of "remedial order": *see* s. 1, comments #15-34.

12. This is a change from the present Alberta Act from which certain claims against trustees are the only ones expressly described and excluded although many claims are probably not intended to be covered.

13. The exclusions do not change the limitations law of Alberta. The new Act simply excludes categories of claims which the courts have customarily held to be beyond the appropriate and intended scope of limitations law in terms of its policy objectives.

14. As to breach of trust, *see* s. 4, comments #4-10.

### Section 2(2) - Claims for Remedial Orders Specifically Excluded

15. Two categories of claim are excluded specifically in ss. 2(2).

### Clause 2(2)(a) - Adverse Possession of Real Property Owned by the Crown

16. Under the doctrine of adverse possession, an owner of land or a thing loses his right to a remedial order for possession against someone whom the owner has permitted to adversely possess it longer than the prescribed limitation period. The doctrine is not applied against the Crown.

17. The exception of a claim for adverse possession of property owned by the Crown from the Act is needed because of the Act, in ss. 2(3), stipulates that the Crown is bound.

### Clause 2(2)(b) - Express Exclusion of Limitation Provisions in Other Alberta Acts

#### Limitation periods

18. Claims that are subject to limitation periods in other Alberta statutes are expressly excluded from the Act. That is to say, a distinction should be noted between the coverage of the Act as the central statute within the Alberta limitations system and the inclusion of limitations provisions in specialized statutes dealing with particular types of claim.

19. Lawyers and non-lawyers dealing with limitations periods should be wary of problems - or "traps" - that may arise because of the existence of special limitation periods in other statutes. Because the Act is wide (but not exhaustive) in scope, lawyers and claimants may focus on the general limitations provisions in the Act and overlook the relevant provision when it is located in a specialized statute. Conversely, persons relying on statutes which create unique new rights, duties and remedies may focus on the specialized act as the source of all law with respect to a newly created claim and overlook the relevant limitations provision when it is included in the general limitations act.

20. A comprehensive list of limitation provisions in specialized statutes in Alberta is contained in the *Alberta Limitations Manual* published by Butterworths (1983). Most of the limitation provisions listed in the *Manual* are not within the scope of the Act because they have to do with limitation provisions related to: the time of commencement of prosecutions for

[Section 2 - Application]

59

provincial offences, proceedings before administrative and ministerial authorities acting under powers conferred by statute, claims requesting judicial review of the decision, act or omission of a public authority, and litigation proceedings after the commencement of a civil judicial action.

21.     A list of those limitations provisions in specialized statutes in Alberta that apply to civil judicial claims requesting remedial orders is included as Appendix B. The list was compiled using the *Alberta Limitations Manual* as the primary source.

### Notice provisions

22.     Lawyers and non-lawyers dealing with limitations periods should also be wary of problems - or "traps" - that may arise because of the existence of notice provisions in other statutes. For example, several Alberta statutes contain provisions requiring a claimant to give a defendant notice of some event as a condition precedent to bringing an action; if the notice is not given within the time and in the form prescribed, and if the claimant cannot satisfy any available exception provisions, the claimant's action will be barred. Notice provisions have the effect of limiting the time for the commencement of an action. As such, they are distinguishable from provisions establishing time limits for procedural steps after an action has been commenced. Where they operate to limit the time available for the commencement of an action they form (and should be treated as) part of the Alberta limitations system.

23.     The list of specialized statutes in Alberta included as Appendix B contains the statutes with notice provisions that apply to civil judicial claims requesting remedial orders.

### Subsection 2(3)

#### In General

24.     Ss. 2(3) entitles the Crown as defendant to enjoy the benefits of the defence created by the Act, and subjects the Crown as claimant to all of the limitations provisions in the Act.

25.     "Crown" means the Crown in all of its capacities.

#### The Crown as defendant

26.     The position of the Crown in right of Alberta as defendant is protected by the *Proceedings Against the Crown Act*, R.S.A. 1980, c. P-18, cl. 1(b) and ss. 21(1). "Crown" is defined to mean Her Majesty the Queen in right of Alberta under cl. 1(b) of this Act and under ss. 21(1) the Crown may rely on any defence that would be available if the proceedings were between persons.

27.     The position of the Crown in right of Canada or of another province is protected by the basic application rule, as is any governmental entity including a foreign state which does not regard the Crown as the Sovereign.

#### The Crown as claimant

28.     The provision expressly binding the Crown is necessary to satisfy s. 14 and cl. 25(1)(i) of the *Interpretation Act*, R.S.A. 1980, c. I-7. Pursuant to cl. 25(1)(i), "the Crown" means, in substance, the Crown in any capacity, and under s. 14 no enactment is binding on the Crown unless it expressly states that intention. (The Alberta Law Reform Institute is currently considering the immunity conferred on the Crown by s. 14 of the *Interpretation Act*, and may recommend the reversal of the provision to provide that the Crown is bound unless an enactment specifically states that the Crown it does not bind the Crown.)

60                                                    [Section 2 - Application]

29.    Ss. 2(3) will also prevail over the Crown prerogative described in the maxim *nullum tempus occurrit regi* that exists apart from s. 14, ss. 2(3): *Alberta v. Buys*, (1989) 59 D.L.R. (4th) 677 (Alta. C.A.).

30.    The wording in ss. 2(3) is that of the standard Canadian binding clause used in legislative drafting. Constitutionally, this clause will bind the Crown in right of Alberta, and it will bind the Crown in any other capacity insofar as the legislative power of Alberta permits.

31.    The provision is also consistent with s. 38 of the *Federal Court Act*, R.S.C. 1970 (2nd Supp.), c. 10, which appears to subject any claim brought by the federal Crown, which arose in Alberta, to the Alberta limitations system, whether the claim was brought in the Federal Court or a provincial court in Alberta, and whether the claim is based on federal or provincial law. S. 38 provides:

> (2) Except as expressly provided by any other Act, the laws relating to prescription and the limitation of actions referred to in subsection (1) [those in force in any province between subject and subject in respect of any cause of action arising in such province] apply to any proceedings brought by or against the Crown [in right of Canada].

[Section 3 - Limitation Periods]

3(1)   Subject to section 11, if a claimant does not seek a remedial order within

    (a)   2 years after the date on which the claimant first knew, or in his circumstances ought to have known,

        (i)   that the injury for which he seeks a remedial order had occurred,

        (ii)   that the injury was to some degree attributable to conduct of the defendant, and

        (iii)   that the injury, assuming liability on the part of the defendant, was sufficiently serious to have warranted bringing a proceeding,

        or

    (b)   15 years after the claim arose,

whichever period expires first, the defendant, upon pleading this Act as a defence, is entitled to immunity from liability in respect of the claim.

(2)   The limitation period provided by clause (1)(a) begins

    (a)   against a successor owner of a claim when either a predecessor owner or the successor owner of the claim first acquired or ought to have acquired the knowledge prescribed in clause (1)(a);

    (b)   against a principal when either

        (i)   the principal first acquired or ought to have acquired the knowledge prescribed in clause (1)(a), or

        (ii)   an agent with a duty to communicate the knowledge prescribed in clause (1)(a) to the principal first actually acquired that knowledge;

    and

61

(c)   against a personal representative of a deceased person as a successor owner of a claim, at the earliest of the following times:

    (i)   when the deceased owner first acquired or ought to have acquired the knowledge prescribed in clause (1)(a), if he acquired the knowledge more than 2 years before his death,

    (ii)   when the representative was appointed, if he had the knowledge prescribed in clause (1)(a) at that time, or

    (iii)   when the representative first acquired or ought to have acquired the knowledge prescribed in clause (1)(a), if he acquired the knowledge after his appointment.

(3)   For the purposes of clause (1)(b),

(a)   a claim or any number of claims based on any number of breaches of duty, resulting from a continuing course of conduct or a series of related acts or omissions arises when the conduct terminated or the last act or omission occurred;

(b)   a claim based on a breach of a duty arises when the conduct, act or omission occurred;

(c)   a claim based on a demand obligation arises when a default in performance occurred after a demand for performance was made;

(d)   a claim in respect of a proceeding under the Fatal Accidents Act arises when the conduct which caused the death, upon which the claim is based, occurred;

(e)   a claim for contribution arises when the claimant for contribution was made a defendant in respect of, or incurred a liability through the settlement of, a claim seeking to impose a liability upon which the claim for contribution could be based, whichever first occurs.

(4)   The limitation period provided by clause 3(1)(a) does not apply where a claimant seeks a remedial order for

possession of real property, including a remedial order under section 60 of the *Law of Property Act*.

(5)    **Under this section,**

   (a)    **the claimant has the burden of proving that a remedial order was sought within the limitation period provided by clause (1)(a), and**

   (b)    **the defendant has the burden of proving that a remedial order was not sought within the limitation period provided by clause (1)(b).**

## Comment

### Subsection 3(1) - Basic Limitation Provisions

1.    Ss. 3(1) contains the general limitations provision. It defines the two limitations periods - the discovery period and the ultimate period - and requires the defendant to activate the defence by pleading it.

### Clause 3(1)(a) - Discovery Rule

2.    Cl. 3(1)(a) answers five central issues involved in the formulation of a discovery rule:    (i) the relationship between the accrual of a claim and a discovery rule; (ii) the amount of knowledge which should be required; (iii) the length of the discovery limitation period; (iv) the constructive knowledge test; and (v) the claims that should be subject to the discovery rule.

3.    *Relationship between the accrual of a claim and the discovery rule.* The Act states clearly and directly that the discovery period begins when the claimant acquires the requisite knowledge. It does not provide for the postponement or extension of a limitation period otherwise beginning with the accrual of a claim, as legislation in some jurisdictions has done.

4.    *Amount of knowledge required.* The discovery period begins with the discovery by the claimant of three matters:

(1)    that the injury for which he seeks a remedial order had occurred (subcl. 3(1)(a)(i)),

(2)    that the injury was to some degree attributable to conduct of the defendant (subcl. 3(1)(a)(ii)), and

(3)    that the injury, assuming liability on the part of the defendant, was sufficiently serious to have warranted bringing a proceeding (subcl. 3(1)(a)(iii)).

5.    *Example of the impact of subcl. 3(1)(a)(i).* The example is based on a 2-year discovery period. The claimant, Myra's, car was struck at the rear by a car driven by the first defendant, Oliver. Myra immediately discovered that the tail light on her car was broken. She also felt the jolt of the impact and a slight twinge to her spine. Over the following 2 years she felt pains in her back, but attributed them to sore muscles caused by routine exercising. Three years after the accident Myra discovered that she had a serious spinal injury caused by the accident, and she could not reasonably have discovered this fact sooner. She promptly brought an

action against Oliver requesting a remedial order for damages for the spinal injury and for the broken tail light. It is quite possible that a court would conclude that Myra's request included two separate claims: one (claim 1) based on the serious spinal injury, and the other (claim 2) based on the damage to the tail light. As Myra sought a remedial order in respect of claim 1 immediately after she discovered that she had a serious spinal injury, this proceeding was brought within the 2-year discovery period. However, the 2-year discovery period would have run against claim 2.

6.      *Comment on and example of impact of subcl. 3(1)(a)(ii).* Just as the discovery period may begin at different times for different injuries for which remedial orders are claimed, so the discovery period may begin at different times against different defendants. It would not be reasonable for the discovery period to begin before the claimant discovered any causal link between his harm and the defendant's conduct. Continuing the previous example, assume that Myra learned, shortly after she brought her action against Oliver, that the accident had been caused, at least in part, by a failure of new brakes negligently installed in Oliver's car by Mark. The discovery period applicable to a claim against Mark would not begin until Myra knew that his injury was to some degree attributable to conduct of Mark.

7.      *Comment on subcl. 3(1)(a)(iii).* Potential claimants rarely seek the advice of lawyers until they perceive that they have suffered relatively serious harm. Even if a potential claimant does seek the advice of a lawyer, the lawyer will rarely recommend the expense of bringing a proceeding unless he is reasonably certain that the harm suffered by the claimant will justify it. A limitation provision that failed to recognize these realities and which encouraged proceedings to be brought prematurely would serve neither claimants nor the legal system.

8.      When was harm sufficiently serious to have warranted bringing a proceeding? The circumstances may vary enormously from one specific situation to another. The Act does not attempt to list considerations common to many cases because a statutory list would be of dubious benefit to experienced judges, to whom the considerations are patently obvious, and might unnecessarily constrain their judgment. Experienced trial judges are well equipped to answer such a judgmental question. Clause (iii) of s. 3(1)(a) invites the judge to put himself in the claimant's shoes, to consider what knowledge he had at the relevant time, and to make the analysis of the advantages and disadvantages of bringing a legal proceeding which would be reasonable for the actual claimant.

9.      *Length of the discovery limitation period.* The discovery period is 2 years. Two years gives the claimant a reasonable period of time from discovery to bring a specific claim. The period will not begin to run until the claimant knew or should have known the three basic facts which trigger its operation, and he will be given 2 more years to consult a lawyer, to investigate the law and facts, to conduct settlement negotiations with the defendant, and to bring a proceeding if necessary.

10.     *Constructive knowledge test.* The constructive knowledge test charges the claimant with knowledge of facts which in his circumstances he ought to have known. This is the standard of the reasonable man.

11.     *Claims subject to the discovery rule.* The discovery rule is applicable to all claims governed by the Act. The principal reason for the broad application of the rule is based on justice. Most of the hardship cases which have arisen in the past have concerned undiscovered claims based on personal injury or property damage caused by negligent conduct. But there have also been undiscovered claims

based on personal injury, property damage and other economic loss caused by intentional conduct, whether tortious or in breach of contract. If the primary concern is the claim which the claimant could not reasonably have discovered, a statute ought not to discriminate simply because there will be more claims in one possible category than another.

12.    Another important reason for applying the discovery rule across the board is to make the Act as simple and comprehensible as reasonably possible. Restricting the application of the discovery rule to only some claims would present categorization problems in drafting the legislation, and characterization problems for lawyers and the courts in applying it. In addition, the claims which are not subject to a discovery rule would have to be governed by fixed limitation periods beginning with the accrual of the particular claim. As to these claims, the accrual rule problems would remain. One fixed limitation period beginning with the accrual of any claim cannot adjust to the different discovery periods which might be considered reasonable for different categories of claims. Therefore, different categories of claims would have to be defined and matched to different fixed limitation periods. This would present further categorization problems in drafting the legislation and characterization problems for lawyers and courts in applying it. Under the Act, the incidence of these problems, which have been primarily responsible for making limitations law so incredibly complex, will be significantly reduced.

#### Clause 3(1)(b) - Ultimate Rule

13.    Subcl. 3(1)(b) answers two central issues involved in the formulation of an ultimate limitation rule: (i) the time of commencement of the ultimate limitation period, and (ii) the length of the ultimate limitation period.

14.    *Commencement of the ultimate limitation period.* For most claims, the ultimate period begins with the accrual of the claim. Most claims will accrue at the time of the defendant's conduct, that is, when the defendant did, or failed to do, something. (This is not always the case. Ss. 3(3) therefore specifies commencement times designed to resolve the accrual rule problems with respect to specific types of claim where they have been most troublesome, either because beginning the ultimate limitation period at the accrual of a claim produces an unsatisfactory result or because of problems produced by the uncertainty of the accrual rules.)

15.    *Length of the ultimate limitation period.* The length of the ultimate limitation period is 15 years. Within 15 years after the occurrence of the events on which the overwhelming majority of claims are based, the claims will have been either abandoned, settled, litigated or become subject to a limitations defence under the discovery rule. The class of remaining potential claimants will have become very small. However, without an ultimate period, the entire society of potential defendants would remain subject to a tiny group of claims.

16.    An ultimate period of 15 years is justified by reasons based on the peace and repose of the collective society and its individual members. It wipes the slate clean as to any alleged breach of duty insofar as human transgressions are concerned.

17.    An ultimate period of 15 years is also justified by reasons based on economics. By this time the cost burden imposed on potential defendants, and through them on the entire society, of maintaining records and insurance to secure protection from a few possible claims will have become higher than can reasonably be justified relative to the benefits which might be conferred on a narrow class of possible claimants.

18.    An ultimate period of 15 years is further justified by evidentiary reasons. Any ultimate period will result in the denial of a remedy to some claimants with meritorious claims which could not with reasonable attention have been discovered before the expiration of this period. Obviously, more claims will be rendered sterile by a period of 15 years than by one of 30 years (the period chosen in the *B.C. Act*, s. 8), although the difference will be exceedingly slight. By the time that 15 years have passed after the occurrence of the events on which a claim is based, the evidence of the true facts is likely to have so deteriorated that it will not be sufficiently complete and reliable to support a fair judicial decision. At this point adjudication will as likely result in a judicial remedy for a claimant with a spurious claim as one with a meritorious claim. Adjudication under these circumstances can only detract from the credibility of the judicial system, and undermine its effectiveness. As Laycraft, J.A. observe in the case of *Costigan v. Ruzicka*, (1984) 13 D.L.R. (4th) 386 (Alta. C.A.):

> Every trial judge is aware that stale claims with stale testimony produce bad trials and poor decisions.

### Raising Defence

19.    To acquire the immunity from liability provided by the limitations defence from any liability under the claim, the defendant must plead it. The defence is not self-activating. This requirement is consistent with Rule 109 of the Alberta Rules of Court which specifically requires a defendant to raise any statute of limitations defence.

20.    The defence produces consequences that are procedural and consequences that are substantive.

21.    *Procedural consequences.* The direct consequences of raising the defence are procedural. As is stated directly at the end of ss. 3(1): if a claim subject to the Act is not brought within the applicable limitation period, "the defendant, upon pleading this Act as a defence, is entitled to immunity from liability under the claim." The Act does not preclude a claimant from bringing a proceeding after the expiration of an applicable limitation period. Rather, a claimant is free to bring a proceeding when he chooses, and the defendant is given a defence to a tardy claim which he can assert or not, at his option.

22.    The limitations defence does not challenge the claim on its merits. No policy issue is involved here, for limitations statutes have, over the centuries, been uniformly interpreted as intended to create a defence for a defendant who successfully asserts such a statute.

23.    In this way, the Act avoids the problem raised by limitations statutes in common law jurisdictions that have typically contained a provision drafted similarly to ss. 4(1) of the *Limitations Act*, R.S.A. 1980, c. L-15, which prescribes that "The following actions shall be commenced within and not after the time respectively hereinafter mentioned . . . " Literally, this provision expresses a public policy that a proceeding *must* be commenced within the stated limitation period, with the consequence that the court should dismiss a tardy action even if the defendant does not raise a limitations defence.

24.    *Substantive consequences.* The procedural consequences may have substantive effect. When a defendant obtains an immunity from liability under the remedy the claimant requests, the issue of whether the claimant even had the alleged right will not have been determined, and if there is another remedy available, the claimant will remain

free to assert it. Usually, however, the claimant will request that the court grant him one or more remedies selected from a group comprised of all of the possible remedies available under the law. If the defendant obtains a limitations defence to such a claim, procedurally, the claimant will no longer be able to enforce the alleged right at all relative to the particular alleged violation. However, if the claimant actually had the alleged right, it will remain intact. Frequently the right will be a one-time right, such as a right that the defendant perform a contract. If the defendant breached the contract, but obtains a limitations defence against any remedies available to the claimant under law to enforce the contract, the claimant will be left with a sterile right.

25.    Although a limitations statute can prescribe substantive as well as procedural consequences by providing for the extinguishment of an unenforceable right, the Act does not contain any general provision extinguishing rights.    That is because the objective of a limitations system is to force the timely litigation of suits if there is to be litigation. The objective is not the extinguishment of rights.

Subsection 3(2) - Commencement of Discovery Period - Special Circumstances

26.    Ss.    3(2)    prescribes    whose knowledge will trigger the operation of the discovery period in three special circumstances:

(1)    when the claimant is a successor owner of a claim,

(2)    when the claimant deals through an agent, and

(3)    when the claimant is a successor owner of a claim as a personal representative of a deceased person.

27.    *Successor owner.* Where there is a successor owner of a claim who is not a personal representative of a deceased person the discovery period begins when *either* a predecessor owner or the successor owner of the claim first acquired or ought to have acquired the requisite knowledge. This is the most common of the three special situations.

28.    The rule applies when the successor owner has acquired the claim in *either* a commercial or a donative transaction, and it draws no distinction between a successor owner who holds beneficially and one who holds in trust.

29.    The discovery period begins if a predecessor owner first acquires the requisite knowledge.    In a donative transaction the predecessor should be responsible for conveying any knowledge he has to his successor. In a commercial transaction the successor should ensure that he has obtained any knowledge possessed by his predecessor or obtained appropriate guarantees.

30.    The discovery period also begins if the successor owner first acquires the requisite knowledge. The operation of this basic rule is not conditioned on either the predecessor or the successor owner having acquired the requisite knowledge while the owner of the claim.

31.    *Principal/agent.*    Where the claimant (the principal) has an agent, the discovery period begins when the agent first actually (but not constructively) acquired the requisite knowledge, if he had a duty to communicate that knowledge to his principal. This rule is based on the principle that if an owner of a claim chooses to deal through an agent, and if the agent has a duty to communicate certain knowledge to his principal, then the principal should be bound by the knowledge of his agent.

32.    *Personal representative.* Where the claimant is a successor owner of a claim

68

as the personal representative of a deceased predecessor owner, the limitation period begins against the personal representative at the earliest of three possible times (*see* comments #8, #9 and #10). The policy objective here is to give either the deceased owner of a claim or his personal representative a full discovery period.

33.   Subcl. 3(2)(c)(i) deals with the earliest point in time. It will occur when the deceased owner of a claim acquired or ought to have acquired the requisite knowledge more than 2 years before his death, but failed to bring a proceeding. In this case the full discovery period would have run, and the defendant would have become entitled to immunity from liability under the claim, before the deceased died. Because limitations law does not bar claims, the claim would pass to the personal representative. However, in this case the discovery period should begin against the representative when it began against the deceased. The representative could bring a proceeding seeking a remedial order in respect of the claim, and the defendant could assert his immunity, as they respectively choose.

34.   Subcl. 3(2)(c)(ii) deals with the intermediate point in time. It will occur when the personal representative actually had the requisite knowledge at the time of his appointment. Assume this example. The deceased acquired the requisite knowledge and promptly discussed it fully with her daughter, who later became her personal representative. During the next 20 months the deceased visited a lawyer and he began an investigation of the facts and law. At the end of this 20 months the deceased was killed in an accident. One month later the daughter was appointed the personal representative of her mother's estate. If the discovery period began against the representative when either she or the deceased first acquired the requisite knowledge, the representative would have only three months left to bring a proceeding.

Indeed, if it had taken four months for the daughter to obtain the appointment, the discovery period would have expired before she even became the representative. Legally, one who may become a personal representative has no duty to do anything in that capacity until the appointment. Therefore, the personal representative should have a full discovery period beginning with the appointment even if he had the requisite knowledge before the appointment. However, the discovery period should begin against a personal representative at the time of appointment only if he actually had the requisite knowledge then; it would be quite inappropriate to attribute constructive knowledge, knowledge which one would have discovered through reasonable investigation, to one who has neither the duty nor the authority to make any investigation.

35.   Subclause 3(2)(c)(iii) deals with the last of the three possible times when the discovery period could begin against a personal representative. It will occur when he acquired or ought to have acquired the requisite knowledge after his appointment. In this case the discovery period either never began to run against the deceased, or did not run for 2 full years before the date of death. Assume that the discovery period began to run against the deceased one year before his death, and that the personal representative was a trust company named as Executor in the last Will. If the death were accidental, the deceased would almost certainly not have discussed the claim with the named Executor. Even a person who anticipated death from illness would seldom have the combination of strength and inclination required to perform such a business chore. If the discovery period began against the personal representative when it began against the deceased in this case, it would reflect a conclusion that the estate of a deceased, and hence his beneficiaries, should suffer the possible loss of a claim because the deceased failed to

communicate knowledge to a named Executor when few persons could reasonably have been expected to do so, and when the named Executor had neither the right nor the duty to take any action based on the knowledge.

36.    The situation where there is an involuntary transfer of a claim when an order for a person under disability is made under the Dependent Adults Act is analogous to the situation where there is an involuntary transfer of a claim to a personal representative because of the death of the owner. The former situation is discussed in conjunction with s. 6.

Subsection 3(3) - Commencement of Ultimate Period - Special Circumstances

37.    Ss. 3(3) specifies when the ultimate period begins for five types of claims for which the accrual rules have been particularly troublesome in the context of limitations law. The provisions in ss. 3(3) do not affect the general law with respect to accrual, for when a claim should accrue under the general law will frequently depend on a different set of policy considerations than those which dictate when a limitation period should commence. (Most claims will accrue, as a matter of law, at the time of the defendant's conduct: when he did, or failed to do, something. However, some claims will accrue at a different time, and when this happens the accrual rule does not serve the objectives of limitations law. In addition, sometimes the general law does not clearly establish when a claim does accrue.)

Clause 3(3)(a) - Course of conduct

38.    *The ultimate period commencement rule.*    Cl. 3(3)(a) provides that the ultimate period for a claim or any number of claims based on any number of breaches of duty, resulting from a continuing course of conduct or a series of related acts or omissions, begins when the conduct terminated or the last act or omission occurred.

39.    *The ordinary accrual rule.* Normally the ultimate period begins when a claim accrues. However, the lack of a generally applicable definition of a claim creates problems in limitations law which are particularly acute when the legally wrongful conduct consists of a continuing course of conduct or a series of acts or omissions so closely related as to constitute a course of conduct.

40.    The problems come in two basic variants, which can be discussed in two examples.

41. *Example #1.*    The defendant, Smith's, factory emitted fumes which continuously drifted over the claimant, MacIntyre's, farm and which, in the course of time, harmed both him and his fruit trees.

In this example, there could be three breaches of duty, based respectively on trespass, negligence and a statute; there could be three distinct claims; and they could accrue at different times.  Or, focusing on MacIntyre's harm rather than the basis of legal liability, there could be two claims, one for personal injury and one for property damage. Or, focusing on Smith's conduct, there could be one claim based on his continuous wrongful conduct.

42. *Example #2.*    The defendant, Kennedy, exposed the claimant, Edwards, an employee, to nuclear radiation periodically (daily, weekly, or monthly) which, in the course of time, harmed him.

This example lends itself to similar but more difficult analysis because of the periodic acts.  Each exposure of Edwards to radiation could be considered a separate breach of a particular duty producing multiple claims.  Moreover, because of changing government safety

regulations in the nuclear industry, Kennedy's wrongful conduct might have consisted of different acts or omissions at different times, which violated different regulations and hence different duties, and which produced multiple claims.

43.    *Discussion.*    Insofar as the objectives of limitations law are concerned, it doesn't matter how many breaches of duty there were, how many different duties were breached, how many claims there are, or when they accrued, if the claims all resulted from a continuing course of conduct or a series of related acts or omissions. The policy issue is when should the ultimate period begin: when the legally wrongful conduct began or when it ended. Assume that, in both *Example #1* and *Example #2*, the defendant's conduct stopped exactly 15 years from the date that it started. If the ultimate period were to begin when the conduct started, the defendant would be entitled to assert his immunity from liability under the claimant's claims a moment after the defendant's conduct stopped. The reasons for a limitations system based on evidence and repose do not require this harsh result. Stale evidence should not present a significant problem, for the evidence will have continually renewed itself with the defendant's repetitive conduct. Justice does not require giving the defendant repose for wrongful conduct which just stopped. Hence cl. 3(3)(b) provides that the ultimate period begins when the conduct has ended.

### Clause 3(3)(b) - Breach of a duty

44.    *The ultimate period commencement rule.*    Cl. 3(3)(b) provides that the ultimate period for a claim based on the breach of a duty begins when the conduct, act or omission occurred.    The rule applies to any claim which includes damage as a constituent element. It is immaterial whether the duty was based on tort, contract, statutory duty or otherwise.

45.    *The ordinary accrual rule.*    Under the general law a claim based on the breach of a duty does not accrue until there is damage, and it may accrue at a later time. In the case of the *City of Kamloops* v. *Nielsen,* (1984) 10 D.L.R. (4th) 641, the Supreme Court of Canada appears to have held that such a claim does not arise until the claimant first discovered the damage, or could with reasonable diligence have discovered it. As the law evolves the claim may not arise until the claimant discovered, or ought to have discovered, even more information about the claim.

46.    *Discussion.* The 2-year discovery period does not begin until the claimant discovered, or should have discovered, the damage and further relevant information. However, to achieve its objective of securing repose for the society of potential defendants, the ultimate period must begin at the time of a defendant's negligent conduct, even though that conduct will not be legally wrongful unless it produces damage at some time, perhaps many years later.

47.    The ultimate period for a claim based on the breach of a duty may expire before the claim has even accrued, for the damage may not have occurred by that time, and even if it has, the claim may not have accrued under the discovery rule. This problem of legal principle is inescapable because there is no feasible alternative consistent with limitations policy.

### Clause 3(3)(c) - Demand obligation

48.    *The ultimate period commencement rule.* Cl. 3(3)(c) provides that the ultimate period for a claim based on a demand obligation begins when a default in performance occurred after a demand for performance was made.

49.    *The ordinary accrual rule.*    A demand obligation will usually be a promise to pay a debt on demand. For

technical historical reasons a claim based on a demand debt accrues when the debt arose than when a demand for payment was made.

50.    *Discussion.* If the ultimate period began at the accrual of this claim, and if the creditor, Woodstock, demanded payment of the debt more than 15 years from the date the debt arose, the debtor, Brown, would already be entitled to assert his immunity from liability under Woodstock's claim. Insofar as limitations law is concerned, it does not make sense to consider Woodstock as having breached a duty to pay a demand debt before a demand for payment was ever made. The practical result is that the ultimate period will probably never run against a demand obligation, for when Woodstock demands payment, if Brown fails to pay, Woodstock will know that he is being harmed and the 2-year discovery period will begin to run.

### Clause 3(3)(d) - Fatal Accidents Act

51.    *The ultimate limitation commencement rule.* Cl. 3(3)(d) provides that the ultimate period for a claim under the *Fatal Accidents Act*, R.S.A. 1980, c. F-5, begins upon the occurrence of the conduct which caused the death upon which the claim is based.

52.    *The existing law.* Under ss. 3(1) of the *Fatal Accidents Act*, the court may award damages to claimants appropriate to the injuries they suffered resulting from the death. Consistent with this, s. 54 of the *Limitations Act*, R.S.A. 1980, c. L-15, imposes a 2-year limitation period beginning with the death of the person upon whose death the claim is based. The problem is that, just as careless conduct may have occurred many years before it results in damage, and the possible accrual of a claim, so the conduct which eventually causes a death may have occurred more than a decade before the resulting death.    The policy issue is therefore similar to the one discussed in

comments #44 to #47 in connection with a claim based on the breach of a duty.

53.    *Discussion.* If the ultimate period is to give meaningful protection to defendants, it must begin at the time of a defendant's conduct. Under s. 54 of the *Limitations Act*, any defendant whose conduct contributed to the injury of a person is vulnerable to a claim, for 2 years after the death of the person and possibly many years after the conduct in question, alleging that the injury, and hence the defendant's conduct, contributed to the death.

54.    When there is a causal link between a defendant's conduct and the death of a person, the death will, in the overwhelming majority of cases, occur within 15 years of the defendant's conduct. However, because of s. 54, a large group of possible defendants will be exposed to undue risk unless they maintain protective records and insurance coverage for very prolonged periods.    This result is not consistent with limitations policy.

### Clause 3(3)(e) - Contributions

55.    *The ultimate period commencement rule.* Cl. 3(3)(e) provides that the ultimate period for a claim for contribution begins when the claimant for contribution was made a defendant under, or incurred a liability through the settlement of, a claim seeking to impose a liability upon which the claim for contribution could be based.

56.    *The existing law.* The reasons for and the operation of this proposal can be best discussed in terms of an example. Al was injured in an automobile accident, and the tortious conduct of three persons, Peter, Lyndon and Richard, contributed equally to cause the injury. Al could obtain a judgment for his full damages against any one or all of these tort-feasors. However, under the common law rule, if any one of them, say Peter, satisfied the judgment, he could not

require either of the others to reimburse him for, or contribute, their fair one-third share of the damages. The *Alberta Tort-Feasors Act*, R.S.A. 1980, c. T-6, gives any tort-feasor who has been held liable for the damages a right to recover contribution from any other tort-feasor who has been or could be held liable for the same damages. However, the *Tort-Feasors Act* does not expressly state when a claim for contribution accrues.

57.    *Discussion.* When the ultimate period for a claim for contribution should begin raises a complex and difficult issue. Any one of three different times could have been selected:

(1)    when the injured claimant's claim accrued against a given tort-feasor;

(2)    when liability upon which a claim for contribution is based is imposed on a claimant for contribution; or

(3)    when the claimant for contribution was made a defendant under a claim seeking to impose a liability upon which the claim for contribution could be based.

58.    *When the injured claimant's claim accrued against a given tort-feasor.* This is the earliest possible commencement time for the ultimate period. In the preceding example, assume the following facts. The accident occurred on January 1, 1965; Al's claims against Peter, Lyndon and Richard accrued at that time; Al discovered the requisite facts required by the discovery rule as to Peter roughly 14 years later, and Al could not reasonably have discovered them sooner; Al brought a claim against Peter in late December 1979; Peter was completely surprised by the claim; Peter hired a lawyer and factual investigations were begun; in July 1980 Peter discovered that Lyndon's conduct contributed to Al's injury; and at that time Lyndon remained unaware that either Al or Peter had any claim against him. Peter would like to join Lyndon to

the proceeding previously commenced by Al, and to bring a claim for contribution against Lyndon. But to what avail? If the ultimate period against Peter's contribution claim against Lyndon began when Al's claim against Peter accrued, 15 and 1/2 years would have passed and Lyndon would be entitled to assert his immunity from liability under Peter's claim.

59.    This option would be unduly harsh on a claimant for contribution if the original tort claim were brought near the end of the ultimate period applicable to that claim.

60.    Section 5 on claims added to a proceeding previously commenced contains a provision under which Lyndon would lose his limitations defence against Peter's claim if Lyndon obtained certain specified knowledge of Peter's claim during the limitation period applicable to that claim. As the assumed facts state that Lyndon was unaware that either Al or Peter had a claim against him, Lyndon would not lose his limitations defence.

61.    *When liability upon which a claim for contribution is based is imposed on a claimant for contribution.* This is the latest possible commencement time for the ultimate period. Continuing the preceding example, assume that Al's claim against Peter, which was brought in December 1979, went to trial in July 1982; that a judgment imposing liability upon Peter was granted; and that Peter's liability became final under an appellate decision given in July 1983. The ultimate period on Peter's claim for contribution against Lyndon would begin in July 1983, when liability to Al was finally imposed on Peter. A strong argument can be made, based on sound legal theory, that a claim for contribution cannot accrue until the liability upon which it is based has been imposed, and that the limitation period applicable to the claim should begin then. How could Lyndon have a duty to contribute to the satisfaction of Peter's

liability before any liability has been imposed on Peter in favor of Al? Clause 3(1)(c) of the *Tort-Feasors Act* supports this argument, for it says

> (c) any tort-feasor liable in respect of that damage may recover contribution from any other tort-feasor who is or would, if sued, have been liable in respect of the same damage ...

In short, Peter has a right to contribution only if he *is* liable to Al, but if that condition is met, Lyndon will have a duty to contribute merely because he *would be* liable to Al if sued. Nevertheless, under this option the ultimate period applicable to Peter's claim for contribution against Lyndon would not even begin until July 1983, 3 and 1/2 years after Al brought the original claim against Peter in December 1979.

62.     This option would unnecessarily extend the operation of the ultimate period.

63.     *When the claimant for contribution was made a defendant under a claim seeking to impose a liability upon which the claim for contribution could be based.* Relative to options (1) and (2), this is an intermediate commencement time for the ultimate period, and it is the option selected in the Act. Under this option the ultimate period on Peter's claim for contribution against Lyndon would begin in December 1979, when Al brought his claim against Peter.     The theoretical defect inherent in this solution was discussed in the preceding paragraph; the limitation period applicable to Peter's claim for contribution from Lyndon will begin before Peter's claim accrued, for unless and until Peter is liable to Al, Peter will have no right to contribution from Lyndon. However, paragraph (a) as to negligence claims tolerates the same theoretical impurity, for the ultimate period applicable to a negligence claim can begin before the damage has occurred

and hence before that claim accrued. Nevertheless, as a practical matter, once Peter becomes a defendant under any claim he will begin to investigate the facts, and if it is a tort claim he will have a strong incentive to learn whether or not there are any other tort-feasors who would in the future have a duty to contribute and hence to reduce his ultimate economic loss. In short, option (3) gives a claimant for contribution ample time to take steps to find other persons to share the potential liability.

64.     This option is the fairest and most practical compromise.

65.     There are frequently a string of defendants in a tort situation.     In the example under consideration, assume that Peter was the negligent driver whose car struck Al's car; that Lyndon was a repair garage which was negligent in repairing the brakes on Peter's car before the accident;     that     Richard     was     the manufacturer of defective parts which Lyndon installed in Peter's car in connection with the repair job; and that Peter brought a claim for contribution against Lyndon in December 1980. It is Lyndon, rather than Al or Peter, who is most likely to discover that Richard's conduct contributed to Al's injury. Under the third option the ultimate period applicable to Lyndon's claim for contribution against Richard would begin when Lyndon was made a defendant under Peter's claim for contribution in December 1980, and would not expire until 15 years later.     As a matter of practical reality this problem is more a matter of sound than fury.     When any tort-feasor is made a defendant in a civil proceeding which originated with a tort claim, it is in his interest to make all reasonable efforts to discover all other tort-feasors liable for the damages, to join them to the proceeding, and to bring claims for contribution as soon as possible. Consequently, if a claimant for contribution does not bring a timely claim for contribution, it is most probable that

the 2-year discovery period will strike the claim long before the expiration of the ultimate period.

66.    Cl. 3(3)(e) also covers the situation when a claimant for contribution incurred a liability through the settlement of a claim. Of course there is no right of contribution unless it is created by the *Tort-Feasors Act*, and no right is presently created in this situation. Nevertheless, most modern statutes on this subject do create a right of contribution based on a settlement, and it is reasonable to assume that Alberta will adopt this change at some time. When it does, an applicable limitation provision will be available, and in the meantime the provision will do no harm.

Subsection 3(4) - Exception from Discovery Rule of Claim for Remedial Order for Possession of Property

67.    The effect of ss. 3(4) is to make adverse possession subject to the ultimate rule, but not the discovery rule. The result is that the true owner must reclaim her property within 15 years from the time at which the adverse possession began. In other words, a flat 15-year limitation period, measured from the date of accrual of the claim, would apply.

Subsection 3(5) - Burden of Proof that Claim Brought Within Limitation Period

68.    Ss. 3(5) specifies two burdens of proof where the defendant pleads a limitations defence - one for the discovery period and the other for the ultimate period.

Clause 3(5)(a) - Burden of proof under the discovery rule

69.    Cl. 3(5)(a) departs from the requirement under the existing law. Under cl. 3(5)(a), the claimant carries the burden of proving that his claim was brought within the discovery period. There are three reasons for placing the

burden of proof under the discovery rule on the claimant. First, when a claimant first knew something is based on his state of mind, and is a subjective matter peculiarly within his own knowledge. Second, the objective written or oral evidence of what a claimant was told will usually be more available to him than to the defendant. Third, the objective evidence about when a claimant ought to have discovered the requisite knowledge will also probably be more readily available to the claimant.

70.    This provision is consistent with the law under other modern limitations statutes (*see e.g.*, the 1982 Uniform Act, ss. 13(4) and the B.C. Act, s. 6(5)) although with some the issue is not free from doubt (*see Report for Discussion No. 4* at p. 137).

Clause 3(5)(b) - Burden of proof under the ultimate rule

71.    Cl. 3(5)(b) places the burden of proving that a claim was not brought within the ultimate period on the defendant. This burden is consistent with the rule of judicial origin under the existing law under which the defendant is required to prove that a claim *was not* brought within a limitation period. Limitation periods under the existing law, like the ultimate period under the Act, begin with the accrual of the claim.

72.    A claim will normally accrue when the defendant's conduct breached a duty owed to the claimant, and if the time of occurrence of the defendant's conduct is in issue the defendant will, on balance, be in as good a position as the claimant to prove the relevant facts. Moreover, there is some legal logic in the principle that a defendant should carry the burden of proof as to a defence.

73.    The burden is expressly stated in the Act to avoid any ambiguity arising from the provision in cl. 3(5)(a) with respect to the discovery period.

[Section 4 - Acquiescence or Laches]

4    **Nothing in this Act precludes a court from granting a defendant immunity from liability under the equitable doctrines of acquiescence or laches, notwithstanding that the defendant would not be entitled to immunity pursuant to this Act.**

## Comment

### Judicial Discretion Regarding Equitable Claims

1.    S. 4 makes an exception from the general policy that the courts should not be authorized to either shorten or extend a limitation period specified in the Act. (No such discretion is included in the Act with respect to either the discovery period or the ultimate period.)

2.    The exception applies to proceedings in respect of claims based in equity requesting equitable remedies. It authorizes a court to deny a claimant an equitable remedy under the equitable doctrines of acquiescence or laches, notwithstanding that the defendant would not be entitled to a defence under either the discovery or ultimate periods.

3.    The exception does not permit the court to extend a limitation period.

### Breach of Trust Cases

4.    The Act does not continue the exception, expressly stated in s. 41(2) of the present Alberta Act, of certain claims against trustees. That is because the new Act balances the limitations principles embodied in the strategies at law and in equity.

5.    The exception, in s. 41(2) of the present Act, of a claim founded on a fraud or fraudulent breach of trust to which the trustee was party or privy is protected by s. 5 which suspends the ultimate period during any period of fraudulent concealment by the defendant.

6.    The exception, in s. 41(2) of the present Act, of a claim for the recovery of property or proceeds still retained by the trustee, or a claim based on the conversion of property or proceeds by the trustee is protected, in part, by s. 3(3)(a) which, for purposes of the measurement of the long-stop period, extends the time of commencement of a claim or claims based on continuous or repeated breaches of duty.

7.    Three examples will illustrate the operation of the Act on claims based on breach of trust.

8.    Example #1:  The beneficiary is induced to wait more than 15 years by the promises of the defendant to make good the fraud or retention of trust property.

In this example, the promises supplying the inducement would push back the ultimate period by triggering the operation operation of s. 3(3)(a).

9.    Example #2:  The trustee, in breach of the terms of the trust, wrongfully retains trust property, and

(a) the beneficiary has or ought to have knowledge of the breach but simply waits more than 2 years to litigate, or

75

76    [Section 4 - Acquiescence or Laches]

(b) the beneficiary does not find out about the breach until after the expiration of 15 years from the date the wrongful retention commenced.

In neither case is the defendant entitled to a laches defence in equity.

Example #2(a) illustrates a case where the discovery limitation period would apply. The beneficiary would not be permitted to sit on his or her rights for more than 2 years.

In Example #2(b), the result would depend on the precise terms of the trust. Arguments based, for example, on fraudulent concealment or on continuous breach, might be open to the claimant. However, if such arguments fail then the the defendant, upon pleading the applicable limitations defence under s. 3(1), would be entitled to protection in the form of an immunity. The defendant trustee would be provided with an immunity for the same reasons defendants in other circumstances are provided with an immunity from claims falling outside the 15-year ultimate limitation period - reasons based on repose, stale evidence, deficits in the adjudicative process with the passage of time, and the like. Absent the success of arguments based on one or other of the special provisions, this example illustrates precisely the situation where repose is important.

10. Example #3: A brother is left monies by his mother in trust through a joint bank account with him for the benefit of himself and his brothers and sisters equally. The brother spends all the monies within days after his mother died. No one learns of the trust duty until more than 15 years later.

Example #3 provides another illustration of the merits of the principle of repose, and the defendant would be entitled to immunity under the 15-year ultimate period, when pleaded.

**[Section 5 - Concealment]**

5(1)  **The operation of the limitation period provided by clause 3(1)(b) is suspended during any period of time that the defendant fraudulently concealed the fact that the injury for which a remedial order is sought had occurred.**

(2)  **Under this section, the claimant has the burden of proving that the operation of the limitation period provided by clause 3(1)(b) was suspended.**

<u>Comment</u>

1.  Ss. 5(1) suspends the operation of the ultimate limitation period indefinitely on the grounds that the fraudulent concealment by a defendant of the fact that the injury had occurred should not be rewarded by a limitations defence. (The word "injury" has the broad meaning given in s. 1(e).)

2.  The effect of ss. 5(1) is to suspend the operation of the limitation period until the time of discovery. No exception from the operation of the discovery limitation period is required because the discovery period will not begin to operate until the claimant has the requisite knowledge.

3.  Because there is no ultimate limitation period, a defendant will always be subject to an allegation of fraudulent concealment and can never be certain that he will be entitled to a limitations defence to a claim. Defendants in some vulnerable categories would therefore be well advised to retain defensive files for an indefinite period of time.

4.  Ss. 5(2) imposes the burden of proving fraudulent concealment on the claimant. Placing the burden here is intended to protect defendants against spurious allegations by claimants. The practice of courts of requiring fraud to be established by more than a mere preponderance of the evidence, and often by clear and convincing evidence, will give substantial protection to defendants.

77

**[Section 6 - Persons Under Disability]**

**6(1)  The operation of the limitation periods provided by this Act is suspended during any period of time that the claimant was a person under disability.**

**(2)  Under this section, the claimant has the burden of proving that the operation of the limitation periods provided by this Act was suspended.**

<u>Comment</u>

<u>S. 6(1) - Suspension of Limitation Periods</u>

<u>General</u>

1.  Ss. 6(1) suspends the operation of both the discovery limitation period and the ultimate limitation period for a person under disability. "Person under disability" is defined in clause 1(h) to mean (i) a minor, or (ii) an adult who is unable to make reasonable judgments in respect of matters relating to the claim:  *see* s. 1, comments #8-11.

2.  The operation of the discovery limitation period is suspended for the reason that follows.  The discovery period is designed to give a claimant sufficient opportunity after discovery to conduct further investigations, to attempt to negotiate a settlement, and to bring a proceeding seeking a remedial order if necessary.  As such, it is based on the assumption that a person who obtains the requisite knowledge has the ability to make reasonable judgments in decisions relating to a claim. This assumption does not fit an adult under disability who is deemed unable to make reasonable judgments in respect of matters relating to his estate, and that applies to decisions relating to a claim.

3.  The operation of the ultimate period is suspended notwithstanding that the ultimate period operates against a claimant even if he could not, after reasonable investigation, discover the requisite knowledge about his claim within 15 years and, indeed, whether or not he even ought to have discovered it.  That is because the situation of a person under disability is significantly different from that of a person not under disability: while the person not under disability is able to make investigations and reasonable decisions, a person under disability is deemed not to have this capacity, no matter how much knowledge he may have obtained.

4.  The suspension under ss. 6(1) applies irrespective of whether the person under disability has a guardian or committee and irrespective of whether the guardian or committee has the capacity to commence a proceeding on behalf of the person under disability.

5.  The operation of the limitation provisions is suspended for persons under "prior disability", and for persons under "subsequent disability".  The suspension for persons under "prior disability" is in conformity with conventional limitation statutes (*see* e.g. the present Alberta Act, ss. 8, 46 and 59); the suspension for persons under "subsequent disability" represents a departure.

78

[Section 5 - Concealment]                                          79

### Suspension of Discovery Limitation Period

6.    *Prior Disability*. Where the discovery limitation period would otherwise apply, the suspension gives a person who is under disability when his claim arises at least 2 years from the time of his recovery in which to bring a proceeding. If an adult obtains the requisite knowledge while he was under disability, the discovery period will be suspended from the moment when it could have become operative and will remain suspended until the disability ceases. The adult claimant will then have a full 2 years in which to bring a proceeding. A minor will be under disability whenever he obtains the requisite knowledge, the discovery period will be suspended until he reaches age 18, and hence it could not possibly expire before he reaches age 20.

7.    *Subsequent Disability*. An example will illustrate the operation of the

suspension on the discovery limitation period for a person who comes under subsequent disability. Assume that an adult obtains the knowledge that activates the discovery rule one year before he comes under disability. One year of the discovery period will have run before the disability began. The suspension will give the claimant one year after the disability has ceased in which to bring a proceeding. Without the suspension, the period would expire one year later during the disability.

### Subsection 6(2) - Burden of Proof

8.    Ss. 6(2) gives the claimant the burden of proving that the operation of the limitation periods was suspended. This is appropriate because it is the claimant who will benefit from the suspension and it is the claimant who will be in possession of the factual information required to prove that he was under disability.

**[Section 7 - Claims Added to a Proceeding]**

**7(1)** Notwithstanding the expiration of the relevant limitation period, when a claim is added to a proceeding previously commenced, either through a new pleading or an amendment to pleadings, the defendant is not entitled to immunity from liability in respect of the added claim if the requirements of either subsection (2), (3) or (4) are satisfied.

**(2)** When the added claim

    **(a)** is made by a defendant in the proceeding against a claimant in the proceeding, or

    **(b)** does not add or substitute a claimant or a defendant, or change the capacity in which a claimant sues or a defendant is sued,

the added claim must be related to the conduct, transaction or events described in the original pleading in the proceeding.

**(3)** When the added claim adds or substitutes a claimant, or changes the capacity in which a claimant sues,

    **(a)** the added claim must be related to the conduct, transaction or events described in the original pleading in the proceeding,

    **(b)** the defendant must have received, within the limitation period applicable to the added claim plus the time provided by law for the service of process, sufficient knowledge of the added claim that he will not be prejudiced in maintaining a defence to it on the merits, and

    **(c)** the court must be satisfied that the added claim is necessary or desirable to ensure the effective enforcement of the claims originally asserted or intended to be asserted in the proceeding.

**(4)** When the added claim adds or substitutes a defendant, or changes the capacity in which a defendant is sued,

80

      (a)    **the added claim must be related to the conduct, transaction or events described in the original pleading in the proceeding,**

      (b)    **the defendant must have received, within the limitation period applicable to the added claim plus the time provided by law for the service of process, sufficient knowledge of the added claim that he will not be prejudiced in maintaining a defence to it on the merits.**

(5)    **Under this section,**

      (a)    **the claimant has the burden of proving**

            (i)    **that the added claim is related to the conduct, transaction or events described in the original pleading in the proceeding, and**

            (ii)    **that the requirement of clause (3)(c), if in issue, has been satisfied,**

          **and**

      (b)    **the defendant has the burden of proving that the requirement of clause (3)(b) or 4(b), if in issue, was not satisfied.**

## Comment

1.  S. 7 stipulates exceptions to the basic limitations provisions in s. 3 where a claim is added to the proceedings.

2.  The exceptions address issues arising from differences of approach in procedural policy and limitations policy toward the addition of claims. Whereas limitations policy seeks to secure eventual peace and repose for defendants, the rules of civil procedure take a liberal approach to the addition of claims through new and amended pleadings because, for reasons of just adjudication and judicial efficiency, it is desirable to have all of the claims which result from related conduct, transactions and events adjudicated in a single civil proceeding.

3.  Where an exception is operative, the defendant under a claim added in a proceeding is denied a limitations defence he would otherwise have. The exceptions are therefore restricted to the situations in which they are most needed to accommodate the civil procedure objective of permitting the adjudication of related claims in a single proceeding.

4.  The content of the exceptions in s. 7 is based, in substance, on model rules of court proposed by Professor Garry D. Watson in "Amendment of Proceedings After Limitations Periods" (1975) *Can. Bar Rev.* 237. However, s. 7 deviates on some technical drafting points. It also deviates on the broad issue of strategy:

whereas under the Act the exceptions are expressly stipulated, under Professor Watson's solution the court would be given a broadened amendment power which would enable it to override a limitations statute, notwithstanding the expiration of a relevant limitation period, when alternate requirements providing limitations protection are satisfied.

5. The exceptions remove the uncertainty about the current ambit of application of the traditional rule laid down in *Weldon* v. *Neal* (1887) 19 Q.B.D. 394. Under the traditional rules, the courts lacks power to permit an amendment of proceedings or pleadings if the amendment would result in a claim subject to a limitations defence. The rule has been relaxed in more recent cases such as *Cahoon* v. *Franks* [1967] S.C.R. 445.

Subsection 7(1) - Exception for Claims Added to a Proceeding

6. Ss. 7(1) establishes the threshold requirement that, for an exception to apply, the claim must be added in a proceeding previously commenced. The claim may be added either through new pleadings or an amendment to pleadings. It may be added either directly or indirectly, by an amendment which changes the substance of or the parties to a prior claim in such a way as to create a new claim. The procedural situation in which a claim is added (e.g. "counterclaim", "cross claim", "set-off" and "third party proceeding") is not relevant, and dispute on this type of issue is eliminated.

7. Ss. 7(1) does not relieve a court from the task of deciding the legal issue, frequently difficult to determine, of whether a change in the pleadings would produce an added claim if an added claim would be subject to a limitations defence. Instead it gives the court an additional option. The court may, as it does now, decide that a limitations defence is not

available to the defendant because a pleading amendment did not produce an added claim. Alternatively, it may decide that, even if an added claim were produced, an exception provision applies and eliminates the limitations defence. The significance of a decision under the Act about whether a claim is a new claim therefore will, in many cases, be substantially reduced from the significance under the traditional approach.

8. Untimely claims, being fatally defective and a nullity, are not included in the exception provisions. Examples of untimely claims include an action purportedly brought (1) by a claimant (through a lawyer) a few days after the claimant died, (2) by a claimant against a defendant a few days after the defendant died, or (3) by a claimant as a personal representative before his appointment. In these cases, there is no valid pleading which is capable of being amended and there is no proceeding to which a claim can be added.

Subsections 7(2), (3) and (4) - Protective Requirements for Defendant

9. The limitations defence is denied only under conditions giving the defendant alternate limitations protection. The protective requirements vary depending on whether the added claim makes any change with respect to a party, and if so, whether the change involves the claimant or defendant (*see* ss. 7(2), (3) and (4)).

Subsection 7(2) - No change of party

10. Ss. 7(2) deprives the defendant of the immunity to which he would otherwise be entitled where there is no change of party. That is to say, both parties to the added claim must already have been parties to the proceeding, and no change can have been made with respect to their description.

### Relationship Requirement

11. The only protection for the defendant is the imposition of a "relationship requirement" on the exception: the added claim must be related to the conduct, transaction or events described in the original pleading in the proceeding.

12. The relationship requirement is designed to serve at least three purposes. First, it gives the courts ample latitude to adjudicate claims in a single proceeding whenever this is desireable under objectives of procedural policy. Second, it assists the claimant to exercise some control over the eventual size of the civil proceeding which he commenced. The conduct, transaction or events which the claimant describes in his original pleading will operate as a screen determining which added claims may remain subject to a limitations defence notwithstanding the exception provisions. Third, it prevents any possible prejudice to a defendant because of surprise by the addition of a claim after the expiration of the limitation period applicable to the added claim. Because the defendant (unless the original claimant) must have been made a party to the action under a timely claim, he will know of the conduct, transaction or events described in the original pleading in the action, and he will be able to gather and preserve evidence as to any possible claims against him based on the described conduct, transaction or events.

13. The exception could apply in the following ways. Where the "relationship requirement" is satisfied, the claimant, Connie, could add a further claim against the defendant, Dan, by a pleading amendment. The claim might be defined as an added (or new) claim because it (1) pleaded a new legal theory in support of a claim previously made, (2) requested a different remedy for an injury previously alleged, (3) alleged a distinct new injury, or (4) alleged an increase in the magnitude of the damage resulting from an injury previously alleged. Dan could

bring a claim against Connie, by way of counterclaim or set-off, and this claim could be brought in either Dan's first pleadings or by amended pleadings. If either Connie or Dan were to add a second defendant, Rodney, *through a timely claim*, Rodney could add a claim against his claimant by way of counterclaim or set-off. Dan and Rodney could continue to add claims, just as Connie could, as long as the added claim satisfied the relationship requirement.

### Subsection 7(3) - Change of Claimant

14. Ss. 7(3) deprives the defendant of the immunity to which he would otherwise be entitled where there is a change of claimant.

15. The change may consist of the addition or substitution of a claimant, or a change in the capacity in which the claimant sues.

### Situations Creating Change of Claimant

16. The added claim may result from an amendment to a claim seeking to correct the description of the claimant, or it may seek to add a true stranger to the proceeding as a claimant.

17. *Misdescription of claimant.* Ss. 7(3) permits the addition or substitution of the proper claimant in any misdescription case, and thus avoids the highly conceptual distinction attempted by the courts between the misdescription of a claimant by "misnomer", and the misdescription of a claimant named intentionally but mistakenly, that is a "wrong claimant".

a. *Misnomer.* Here, an intended claimant was misnamed by mistake. For example, the intended claimant, properly described as John C. Doe, Junior, was known, but because of a failure in communication between the claimant and his lawyer, the modifying "Junior" was omitted in the claim, which

84

thus misnamed the claimant and accurately described his Father. In cases of this type, the courts have held that an amendment of the claim will not add or substitute a new claimant so as to create a new claim, but will merely correct the misnomer of the claimant already before the court. When a court can apply the misnomer doctrine, no claim will be added to the proceeding, and an exception provision is not relevant.

b.      *Wrong claimant.* Here, the wrong claimant was named, intentionally but mistakenly. Often the case will have involved a choice between two possible corporate claimants, and the incorrect choice was made: for example, a parent corporation was incorrectly named in lieu of a subsidiary, or a residual corporate shell was named in lieu of a new corporation created in a merger. Technically, an amendment in cases of this type will add or substitute a new claimant and will thus create a new and added claim.

18. *Addition of true stranger as claimant.* There are two types of cases in which a stranger may wish to add himself as a claimant in an action: "true strangers" and "other claimants". Ss. 7(3) permits the addition of a claimant who is necessary if the original claim asserted is to be enforced effectively. It does not deprive a defendant of a limitations defence to the untimely claim of an added claimant who is a "true stranger".

a.      *True strangers.* In this type of case a nondiligent claimant will be attempting to slip his untimely claim into an action in which his defendant is already a party. For example, assume that the original claimant, Tom, brought a timely claim against the defendant, Alice, to recover for personal injuries suffered in an automobile accident, and that later a second claimant, Dave, a copassenger in the car driven by Tom, sought to add an untimely claim against Alice to recover for Dave's, personal injuries. Dave's claim

would probably satisfy the relationship requirement, and it might satisfy the knowledge to prevent prejudice requirement. However, Dave's claim would be based on a different injury from that suffered by Tom, and Dave's added claim would not be necessary to ensure the effective enforcement of the original claim brought by Tom.

b.      *Other claimants.* In this type of case the added claimant will be necessary if the original claim asserted is to be enforced effectively. The claimant is unlikely to be a "true" stranger. A common example is the case in which a married woman or a child requested damages in a personal injury action based on expenses for items which a husband or a parent was responsible for providing. If the married woman or child suffered no damage because of the expenses, only the husband or parent could suffer damage and recover damages.

19. *Effect of discovery rule.* The discovery rule is not of assistance to claims seeking to add claimants, for the commencement of the discovery limitation period will not be delayed until someone, whether client or lawyer, discovers who the proper claimant is or should be.

Protective Requirements

20. For the exception to be operative, the added claim must satisfy three requirements designed to protect the defendant: a "relationship requirement", a "knowledge to avoid prejudice requirement", and an "enforcement of original claims requirement".

Relationship Requirement

21. Clause 7(3)(a) protects the defendant by imposing a "relationship requirement" on the exception from the limitations provisions in s. 3 of a claim adding a claimant. The relationship requirement, discussed in paras. #11-13 above, will provide a defendant with sufficient

protection in most cases within this category. Because the added claim will have made no change with respect to the defendant, he will have been made a party under a prior claim, and within the limitation period applicable to that claim, whether it was the discovery period or the ultimate period. The defendant will be aware of the conduct, transaction or events described in the original claim against him. Although a claim against the defendant may be added after the expiration of the limitation period for that claim, if the only change is with respect to the claimant, the internal substance of the added claim will remain the same as in the prior claim. Even if the added claim contains internal substantive changes as well, it still must be related to the described conduct, transaction or events the defendant will already know about.

### Knowledge to Avoid Prejudice Requirement

22. Clause 7(3)(b) protects the defendant by imposing a "knowledge to avoid prejudice requirement. The protection is required because the defendant may be prejudiced by a change with respect to the claimant if he does not learn of his vulnerability to a claim by the "new" claimant until *after* he would have received this knowledge had the added claim been timely. The clause contains two elements designed to safeguard the defendant.

a.         First, it provides that the defendant must have received sufficient knowledge of the added claim that he will not be prejudiced in maintaining a defence to it on the merits. This element will clearly require the court to exercise judicial discretion, but the objective of the provision is so clearly and simply stated that the courts should not experience problems of interpretation.

b.         Second, it specifies that the defendant must have received the sufficient knowledge within the limitation

period applicable to the added claim plus the time provided by law for the service of process. For example, assume that the discovery period expired on December 31, 1985 and that the time provided by law for the service of process is one year. Because of the one year allowed by law for the service of process, the original claim need not have been served on the defendant, Georgina, until December 31, 1986. Georgina will therefore not be prejudiced insofar as limitations policy is concerned if the resulting added claim is served within the same time. Now, suppose that Georgina was served with the added claim on April 9, 1986, and hence received full knowledge of the claim before she might have received this knowledge had the added claim been timely and had service on her been delayed. In this example, Georgina received the substnative benefits of the limitations system. However, if Georgina had not been served with the added claim until after December 31, 1986, and if she had not received the required sufficient knowledge of it in some other manner by this date, then the issue of whether or not she was prejudiced in maintaining a defence to it would be relevant.

23. The "knowledge to avoid prejudice" requirement satisfies the evidentiary reasons which demand a limitations system. If a potential defendant has received sufficient knowledge of a potential claim that he will not be prejudiced in maintaining a defence to it on the merits, it is not unreasonable to expect him to recognize that he is vulnerable to the potential claim, that it may be brought after the expiration of the limitation period applicable to it in a proceeding previously commenced, and that he should gather and preserve the evidence necessary for a defence to it on the merits.

86

### Enforcement of Original Claims Requirement

24. Clause 7(3)(c) protects the defendant by imposing an "enforcement of original claims requirement". To meet this requirement, the court must be satisfied that the added claim is necessary or desirable to ensure the effective enforcement of the claims originally asserted or intended to be asserted in the proceeding.

25. Clause 7(3)(c) is designed to exclude the addition of a "true stranger" to the proceeding. It permits the addition or substitution of a claimant, or a change in the capacity in which a claimant sues, because of an amendment required to correct a misdescription of the claimant, the added claim will be necessary or desirable to ensure the effective enforcement of the claims originally asserted in the proceeding. It also permits the addition of a claimant who is not a "true" stranger. Any remaining cases are screened out.

### Subsection 7(4) - Change of Defendant

26. Ss. 7(4) deprives the defendant of the immunity to which he would otherwise be entitled where there is a change of defendant.

27. The change may consist of the addition or substitution of a defendant, or a change the capacity in which a defendant is sued,

### Situations Creating Change of Defendant

28. As in the case of a change of claimant, the added claim may result from an amendment of a claim correcting the description of the defendant, or it may seek to add a true stranger as a defendant.

29. *Misdescription of defendant.* As in cases in which the claimant was misdescribed, ss. 7(4) permits the addition

or substitution of the proper defendant in any misdescription case and thus avoids the highly conceptual distinction attempted by the courts between the misdescription of a defendant by "misnomer" and the misdescription of a defendant named intentionally but mistakenly.

a.    *Misnomer.* Here, the defendant under an added claim will have been connected with the action in fact if not in law, will have had knowledge of the action, and will have been misdescribed in the claimant's original claim. In theory a misnomer case is based on a factual finding that the claimant "knew" that the defendant was John C. Doe, Junior, but misnamed him as his Father, John C. Doe. Many of the cases involve situations in which the claimant "knew" the particular governmental entity he wanted to sue, but did not "know" the proper legal name for the entity, and hence misnamed it. In these cases the courts have held that an amendment to pleadings will not add or substitute a new defendant so as to create a new claim. Rather, it will merely correct the misnomer of the defendant before the court. Because the courts have solved the misnomer cases, an exception provision is not necessary for this purpose.

b.    *Wrong defendant.* Here, it is assumed that the claimant misdescribed the defendant because he did not "know" who the defendant really was. For example, she thought the defendant was Snowdon, a sole proprietor, when the defendant should have been Snowdon, Ltd., a corporation. Technically, an amendment in these cases adds or substitutes a new defendant, and creates a new claim. Although courts have sometimes applied the misnomer doctrine to these cases, it is difficult to predict when they will do so.

### Effect of Discovery Rule

30. To an extent, the discovery rule will assist claimants in bringing timely added

claims, and will, therefore, reduce the need for an exception provision. Note, however, that the discovery rule will be of no assistance for the category of true added claimants, for the commencement of the discovery limitation period will not be delayed until someone, whether client or lawyer, discovers who the proper claimant is or should be.

a.    *Misnomer.* The discovery rule is not likely to assist a claimant in a "misnomer" case. The discovery period will not begin until the claimant knew, or ought to have known, that his injury was to some degree attributable to conduct of the defendant, which presupposes knowledge of the identity of the defendant. If the claimant "knew" who the defendant was, but misnamed him, the discovery period could have begun, and if it expired before the claimant amended his claim, only the judicial doctrine that the amendment merely corrected the name of the defendant, and did not add or substitute a new defendant, would salvage the claim. Without the misnomer doctrine an exception provision would be necessary.

b.    *Wrong defendant.* The discovery rule will usually salvage a "wrong defendant" case, for the discovery period will not begin before the claimant knew, or should have known, the identity of the defendant. The claimant will already have brought a claim attempting to describe the proper defendant. When he discovers his error, and hence the proper defendant, it can reasonably be assumed that he will make an amendment promptly, and that the resulting added claim will be brought within the discovery period. The exception provision will probably be necessary only when the ultimate limitation period is applicable.

31. *Addition of true stranger as defendant.* An added claim will frequently add a true stranger as a defendant in a proceeding. Assume that the claimant, Elsa, brought a timely claim alleging that the defendant,

Penelope's, negligence caused an automobile accident; that Penelope brought a timely counterclaim against Elsa alleging that Elsa's negligence caused the accident; that Elsa and Penelope believe that the negligence of a second defendant, Mike, at least contributed to the accident; and that both Elsa and Penelope wish to add two claims against Mike. Each has a claim for damages based on the injury which he sustained in the accident, and each may have a claim for contribution from Mike should either Elsa or Penelope be held liable to the other.

a.    *Claims against a second defendant for damages.* It is possible that the discovery period had expired against Penelope's claim because Penelope acquired the requisite knowledge as to Mike's possible liability through investigations made shortly after the accident, long before Elsa began the proceeding, but that the discovery period had not expired against Elsa's claim. If Mike were negligent, Elsa could obtain a judgment against Mike, but Mike would have a limitations defence against Penelope's claim. It is also possible that Mike received the sufficient knowledge as to Penelope's claim required by the knowledge to avoid prejudice requirement during Penelope's earlier investigation. If so, Mike would lose his limitations defence under the exception provision.

b.    *Claim for contribution.* Clause 3(3)(e) provides that, in a claim for contribution, the ultimate limitation period begins when the claimant for contribution (here Elsa or Penelope) was made a defendant under a claim (that of the other) seeking to impose a liability upon which a claim for contribution (a claim against Mike) could be based. The discovery limitation period for a claim cannot begin until the claimant knew, or ought to have known, that the injury for which he claims a remedial order had occurred. Until either Elsa or Penelope is held liable to the other, Mike could have no duty of contribution, and hence neither

88

Elsa nor Penelope could be injured by a failure of Mike to contribute to satisfy the liability. For example, although D1 could anticipate injury if Mike failed to contribute to satisfy a liability which might be imposed on Penelope, Penelope could not know of his injury until it occurred when liability was imposed on him and Mike failed to contribute to satisfy it. If Penelope knew that Mike's negligence contributed to the accident before liability to Elsa was imposed on Penelope, the discovery period for Penelope's claim for contribution from Mike would probably begin when the liability to Elsa was imposed on Penelope. Otherwise, the discovery period for the claim for contribution could not begin until Penelope discovered, or ought to have discovered, Mike's negligence, and that could be some time after liability to Elsa was imposed on Penelope. In short, the discovery period for a claim for contribution will not begin until a liability is imposed on the claimant and until he also knows that there is a defendant who might be liable to contribute. Once a claimant for contribution knows these facts, he will almost certainly bring a claim within the 2-year discovery period. In practice, therefore, the exception provided in ss. 7(4) will be relevant to a claim for contribution only when the applicable limitation period is the ultimate period.

### Protective Requirements

32. For the exception to be operative, the added claim must satisfy two requirements designed to protect the defendant: the "relationship requirement", and the "knowledge to avoid prejudice requirement".

### Relationship Requirement

33. Ss. 7(4)(a) protects the defendant by imposing the relationship requirement. The only protective function this requirement performs is to restrict the scope of the exception provision. Unless the added claim satisfies the relationship requirement, the exception provision will not be applicable at all, and the defendant will retain his limitations defence to the added claim. Where the relationship requirement is satisfied, the defendant should not be vulnerable to surprise because the added claim must not introduce matters which are unrelated to the conduct, transaction or events the defendant will have knowledge of.

### Knowledge to Avoid Prejudice Requirement

34. Ss. 7(4)(b) also protects the defendant by imposing the "knowledge to avoid prejudice requirement". This requirement must be relied on to give a defendant substantive limitations protection. Under this requirement, a defendant must have received sufficient knowledge of the added claim that he will not be prejudiced in maintaining a defence to it on the merits, and he must have acquired this knowledge within the limitation period applicable to the added claim plus the time provided by law for the service of process, which means that he must have acquired this knowledge no later than he might have acquired it had the addition of the claim been timely and had he been served at the latest time permitted by law.

### Two Effects of Subsection 7(4)

35. Two effects of ss. 7(4) are noteworthy: (1) the effect of the discovery rule on an added claim that makes a change with respect to the defendant, and (2) the effect of the exception provision on the ultimate limitation period.

36. *Effect of Discovery Rule.* When an added claim makes a change with respect to the defendant, it will frequently be a timely claim because of the discovery rule, and this will reduce the need to use ss. 7(4).

[Section 7 - Claims Added to a Proceeding]                    89

37. *Effect on Ultimate Limitation Period.* Although the "knowledge to avoid prejudice" requirement satisfies the evidentiary reasons for a limitations system, it does not satisfy either the economic reasons for a limitations system or those based on peace and repose. Insofar as protection for defendants is concerned, the central element in the Act is the ultimate limitation period. Under the exception provision, a defendant may be brought into a proceeding previously commenced under a claim added after the expiration of the limitation period applicable to the claim, and the applicable period can be the ultimate period. Until the termination of the proceeding previously commenced, a potential defendant will be vulnerable to being drawn into it, he will enjoy neither peace nor repose, his economic mobility will be threatened by a potential liability of uncertain magnitude, he will have to continue protective insurance and he will have to retain his defensive evidence. A potential defendant will not be secure until the proceeding previously commenced has been terminated. Because of the knowledge to avoid prejudice requirement, in all probability a potential defendant will have knowledge of the proceeding into which he might be drawn, and he will be able to monitor its progress. But this is not necessarily so.

Subsection 7(5) - Burden of proof

38. Ss. 7(5) deals with the burden of proof in claims added to a proceeding.

Clause 7(5)(a) complies with normal civil litigation theory by giving the claimant the burden of proving that his claim satisfies the "relationship requirement" and the "enforcement of original claims requirement" where one or both of these requirements apply.

39. Clause 7(5)(b) departs from normal civil litigation theory by giving the defendant the burden of proving that he did not receive knowledge during the period allowed where the "knowledge to avoid prejudice requirement" applies. Two reasons justifying the departure from normal civil litigation theory are: (1) that the defendant who has received sufficient knowledge of an added claim is in the best position to prove the facts which establish that he will be prejudiced in maintaining a defence to it on the merits; and (2) that the defendant should carry the burden of proving that he did not receive this knowledge during the period allowed by an exception provision if this requirement is in issue. As under the other exception provisions, the claimant carries the burden of proving that his claim satisfies the "relationship requirement" and the "enforcement of original claims requirement".

**[Section 8 - Agreement]**

8    **Subject to section 10, if an agreement provides for the reduction or extension of a limitation period provided by this Act, the limitation period is altered in accordance with the agreement.**

<u>Comment</u>

1.  S. 8 expressly provides for the alteration of the limitation period applicable to any claim in accordance with an agreement reducing or extending it. By expressly sanctioning agreements made, within the framework of accepted contractual doctrines, by persons respecting limitation provisions applicable to their actual or potential legal controversies, s. 8 resolves any ambiguity about the enforceability of such agreements.

2.  *Reduction of Limitation Period.* Potential parties to an action may make an agreement reducing an applicable limitation period for the benefit of the potential defendant.   An agreement reducing a limitation period will usually be made before a contemplated transaction, which may result in a breach of duty, has taken place. For example, persons supplying goods or services, such as building contractors or medical doctors, might refuse to enter into a transaction without an agreement providing for a shorter limitation period than provided by

statute.    Where contracts are unconscionable or otherwise contrary to public policy, the courts can utilize contractual doctrines proscribing the enforcement of contracts in appropriate cases.

3.  *Extension of Limitation Period.* Potential parties to an action may also make an agreement extending an applicable limitation period for the benefit of the potential claimant and defendant. An agreement extending a limitation period will usually be made after an alleged breach of duty has occurred. The effect of such an agreement may be to relieve the claimant from the necessity of bringing an action which, in the course of events, may prove to be unnecessary. It will frequently be mutually advantageous to the parties if more time is available for settlement negotiations or if the defendant is granted additional time to perform his obligations, with litigation expenses postponed until they become essential. S. 8 will encourage agreements extending limitation periods for the convenience of the parties.

90

**[Section 9 - Acknowledgment and Part Payment]**

9(1)   In this section, "claim" means a claim for the recovery, through the realization of a security interest or otherwise, of an accrued liquidated pecuniary sum, including, but not limited to a principal debt, rents, income, a share of estate property, and interest on any of the foregoing.

(2)   Subject to subsections (3) and (4) and section 10, if a person liable in respect of a claim acknowledges the claim, or makes a part payment in respect of the claim, before the expiration of the limitation period applicable to the claim, the operation of the limitation periods begins anew at the time of the acknowledgment or part payment.

(3)   A claim may be acknowledged only by an admission of the person liable in respect of it that the sum claimed is due and unpaid, but an acknowledgment is effective

     (a)   whether or not a promise to pay can be implied from it, and

     (b)   whether or not it is accompanied by a refusal to pay.

(4)   When a claim is for the recovery of both a primary sum and interest thereon, an acknowledgment of either obligation, or a part payment in respect of either obligation, is an acknowledgment of, or a part payment in respect of, the other obligation.

Comment

1. S. 9 clarifies and simplifies the common law doctrines of acknowledgment and part payment. Like agreements, acknowledgments and part payments are actions of persons which may alter the normal operation of a limitations system. The basic rules of law governing these doctrines of judicial origin have been legislated in limitations statutes in most common law jurisdictions. The provisions in the Act do not provide a complete codification of the two doctrines. The courts will therefore still have to develop specific rules for unique cases. Where a claim is subject to a limitation period under the Act, the doctrines of acknowledgment and part payment are applicable to the same claims as they are under the *Limitation of Actions Act.*

Restricted Meaning of "Claim

2. Ss. 9(1) restricts the meaning of the word "claim", for the purposes of this section, to a claim for the recovery of an accrued liquidated pecuniary sum (*see also* comments #6 and #13 below).

91

92                                        [Section 9 - Acknowledgment and Part Payment]

Acknowledgment

3. Ss. 9(2) continues the policy
established at common law under which
the acknowledgment by a debtor of a debt
resulted in a deemed reaccrual of the
claim, a policy subsequently legislated in
typical limitations statutes in the form of
a renewed limitation period. Where a
claim is subject to a limitation period
under the Act, the doctrine of
acknowledgment is applicable to the same
claims as it under the *Limitation of
Actions Act*.

4. There are two policy reasons for the
common law doctrine of acknowledgment:
(1) If a debtor has admitted his
indebtedness and his legal duty to pay the
debt, he has, by this conduct, renounced
his need for the protection afforded by a
limitations system. If he has admitted his
legal liability, the reasons for limitations
protection based on stale evidence, peace
and repose, and economic cost are so
reduced that a renewed limitation period
is justified. (2) The second reason is
based on estoppel. If the debtor has
promised to pay a debt, the creditor
should be permitted to rely on this new
promise without bringing an action for a
renewed limitation period.

5. To be effective, the acknowledgment
must be made before the expiration of the
applicable limitation period. This
provision in ss. 9(2) provides the
defendant with a limitations shield to the
claimant's allegation of acknowledgment.

6. An inherent constraint on the scope
of the acknowledgment doctrine is
embodied in ss. 9(1): it does not apply to
a claim for unliquidated damages, whether
based on tort or contract, because until a
duty to pay a certain or ascertainable sum
has been imposed on a person, he will
have no legal duty to admit, much less to
promise to perform by payment.

7. Ss. 9(3) continues the policy
introduced in relatively recent limitations
statutes of eliminating the common law
requirement that for an acknowledgment
to be effective, in addition to the
admission of a debt or other readily
quantifiable liquidated amount
outstanding and unpaid, the admission had
to contain an express or implied promise
to pay the debt: *see e.g. Limitation of
Actions Act*, clause 9(2)(a); *B.C. Act*,
subclause 5(2)(b)(i). Such statutes have
provided that an acknowledgment is
effective even if it is accompanied by a
refusal to pay: *see Limitation of Actions
Act*, clause 9(2)(b); *B.C. Act*, subclause
5(2)(b)(ii). A renewed limitation period
remains justified because of the debtor's
reduced need for limitations protection
when he has admitted his duty to pay a
debt.

8. Acknowledgments may be
encountered in connection both with
unsecured debts and other liquidated
pecuniary claims, and with secured debts.

  a.    *Unsecured Debts*. If a debt
is unsecured, the creditor's claim will be
for a personal remedial order directing
the debtor to pay the debt. S. 9(2)
provides that if an obligor of a liquidated
pecuniary sum, as a debt or otherwise,
admits his duties with respect to the
obligation on which the claim is based,
the limitation period applicable to the
claim will begin anew at the date of the
admission.

  b.    *Secured Debts*. If a debt is
secured, the creditor's claim may be for a
remedial order for the collection of the
debt through the realization of the
security interest in the secured property.
If the debtor admits his duty to pay the
debt and the creditor's right to collect the
debt through the realization of a security
interest, the limitation period applicable
to this claim begins anew at the date of
the admission. As in the case of the
unsecured obligation, this rule extends to
a security interest for any obligation with

respect to a liquidated pecuniary sum. The same result would be achieved under the *Limitation of Actions Act*: *see* ss. 35(2) (acknowledgment of mortgage of real or personal property); cl. 37(2)(b) (acknowledgment of right of vendor under agreement for sale of land); and cl. 39(2)(b) (acknowledgment of right of vendor under conditional sale of goods).

9. *Estate Personal Property*. Read with ss. 10(4), ss. 9(2) covers a claim against a personal representative for a share of estate personal property where a claim seeks to obtain a liquidated pecuniary sum.

## Part Payment

10. Ss. 9(2) continues to give effect to the doctrine of part payment which gives the claimant creditor a renewed limitation period from the time of the last part payment. It carries forward the policy in the *Limitation of Actions Act*, subclause 9(1)(b)(iii) (part payment of principal or interest on a debt); clause 14(2)(a) (part payment of a share of estate personal property); clause 15(2)(a) (part payment of arrears of rent or interest on a monetary estate share); ss. 35(1) (part payment of principal or interest on a debt secured by a mortgage of real or personal property); clause 36(2)(a) (part payment of purchase money under an agreement for sale of land, claim by purchaser); clause 37(2)(a) (part payment of purchase money under an agreement for sale of land, claim by vendor); and clause 39(2)(a) (part payment of price or interest under a contract for the conditional sale of goods).

11. The doctrine permits the claimant creditor to bring and to maintain an action many years after the limitation period applicable to the first arrears has expired. It is justified under limitations policy because the limitations system is not designed to force creditors to bring claims when the circumstances indicate that this is unnecessary. If the defendant

debtor has made a part payment, this will induce the creditor to believe that prompt litigation is not necessary, and it will also support an inference that the debtor does not need the protection of a limitations system until the expiration of a new limitation period. In short, the doctrine of part payment is convenient for a creditor, and may not jeopardize a debtor.

12. As in the case of an acknowledgment, the part payment, to be effective, must be made before the expiration of the applicable limitation period. Without this limitations shield, the defendant would be particularly vulnerable to a part payment allegation, for which there is no writing requirement for proof, brought by a claimant after the expiration of the normal limitation period.

13. Like acknowledgment, by ss. 9(1) and (2), the part payment must be made by a person under a duty to pay a liquidated pecuniary sum, as a debt or otherwise. Read with ss. 10(4), this will apply to a claim against a personal representative.

14. Like acknowledgment, ss. 9(3) continues to eliminate the common law requirement that a promise to pay the debt be inferred from the part payment: *see* the present Alberta Act, clause 9(2)(a).

## Subsection 9(4) - Interest on Debt

15. Ss. 9(4) resolves any doubt about the effect of a part payment of interest in renewing a limitation period for interest then due that may otherwise exist in the interpretation of s. 9. Such doubt exists with respect to the interpretation of the *Limitation of Actions Act*, s. 9(1). The reason for doubt is explained as follows. When a debt carries interest, as it usually will, a part payment of principal will give a renewed limitation period for interest then due because principal and interest constitute one demand: *Halsbury's Law of England* (4th ed. 1979) para. 902. Similarly, a part payment of interest will

94

give a renewed limitation period for principal then due, again because a payment of interest is treated as a payment against the principal debt. However, a part payment of interest, because it is treated as a payment against principal, will not give a renewed limitation period for interest then due.

The rule is inconsistent with the basic principle that principal and interest constitute one demand. If a part payment of interest is treated as a part payment of principal, and if a part payment of principal gives a renewed limitation period for interest then due, then of necessity a part payment of interest should give a renewed limitation period for interest then due.

[Section 9 - Acknowledgment and Part Payment]                                       95

**[Section 10 - Persons Affected by Exceptions for Agreement, Acknowledgment and Part Payment]**

**10(1)**  **An agreement and an acknowledgment must be in writing and signed by the person adversely affected.**

**(2) (a)**  **An agreement made by or with an agent has the same effect as if made by or with the principal, and**

**(b)**  **an acknowledgment or a part payment made by or to an agent has the same effect as if made by or to the principal.**

**(3) A person has the benefit of an agreement, an acknowledgment or a part payment only if it is made**

**(a)**  **with or to him,**

**(b)**  **with or to a person through whom he derives a claim, or**

**(c)**  **in the course of proceedings or a transaction purporting to be pursuant to the Bankruptcy Act (Canada).**

**(4) A person is bound by an agreement, an acknowledgment or a part payment only if**

**(a)**  **he is a maker of it, or**

**(b)**  **he is liable in respect of a claim**

**(i)**  **as a successor of a maker, or**

**(ii)**  **through the acquisition of an interest in property from or through a maker**

**who was liable in respect of the claim.**

Comment

1. <u>Subsection 10(1) - Writing Requirement</u>

2. Ss. 10(1) provides, as does the *Limitation of Actions Act*, that an acknowledgment must be in writing and

signed by the debtor or his agent. This permits some confidence to be based on the written document and an inference to be drawn from the admission of liability that the debtor did not need the

95

[Section 10 - Persons Affected by Exceptions for Agreements, Acknowledgment and Part Payment]

protection of a limitations system for a renewed limitation period.

3. Ss. 10(1) further provides that an agreement reducing or extending an applicable limitation period must be in writing and signed by the person adversely affected. In any case in which an acknowledgment would be intentional, an agreement would provide an easier, clearer, and more flexible solution. A debtor who is willing to incur the consequences of the doctrine of acknowledgment would therefore be well advised to avoid the technical requirements and inflexibility of that doctrine, and to make an agreement with his creditor providing directly for the precise limitation results which they desire.

4. There is no requirement that a part payment be proved by a writing signed by the debtor. Whereas there is usually written evidence to prove the existence and amount of a debt, and the fact of a part payment, this is not always the case. Under the part payment doctrine, the creditor can bring a claim after the expiration of the normally applicable limitation period and maintain it with oral evidence of a part payment where, in reality, the debtor may have done nothing which could support an inference that he did not need limitations protection.

Subsection 10(2) - Agency

5. Conventional limitations statutes give an acknowledgment or a part payment made by or to an agent the same effect as one made by or to the principal. Clause 10(2)(a) extends the policy to an agreement reducing or extending a limitation period. Clause 10(2)(b) continues the policy with respect to an acknowledgment or part payment.

Subsections 10(3) and (4) - Benefit and Burden

6. *Benefit.* Ss. 10(3) continues the policy in place under conventional limitations statutes which do not permit either an acknowledgment or a part payment to be effective if made to a stranger to the claim. An acknowledgment or part payment has to be made to the claimant or his agent. No exception is made for an acknowledgment of a specialty debt to a third party.

7. *Burden.* Ss. 10(4) provides that a person is bound *only* if he is the maker, or if his liability under a claim is derived as a successor from that of a predecessor maker. There are two situations in which a person will be liable under a claim as a successor of a predecessor who was liable under the claim. In the first situation, a successor may assume the personal liabilities of a predecessor by contract, or, in some cases, those liabilities may be imposed on him by law. In the second situation, a person will be liable under a claim as a successor as a matter of law because he has acquired an interest in property from or through a predecessor who was liable under the claim. In this situation the liability is imposed on a person only through the acquired property interest, and not personally.

8. When joint obligors are severally liable, only the maker will be bound and not his joint obligors. This policy is conforms with the present Alberta Act, ss. 10 and 11, which include personal representatives as well as joint obligors.

**[Section 11 - Judgment for Payment of Money]**

**11**   **If, within 10 years after the claim arose, a claimant does not seek a remedial order in respect of a claim based on a judgment or order for the payment of money, the defendant, upon pleading this Act as a defence, is entitled to immunity from liability in respect of the claim.**

<u>Comment</u>

1.   S. 11 excepts a claim based on a judgment or order for the payment of money from the 2-year discovery and 5-year ultimate limitation periods set out in s. 3, and substitutes a fixed limitation period of 10 years.

2.   In effect, s. 11 continues the requirement, in s. 4(1)(f) of the present Alberta Act, that an action on a judgment or order for the payment of money be brought within 10 years after the cause of action on the judgment arose.

3.   S. 11 has to do with the renewal of a judgment, whether domestic or foreign, for the purpose of enforcing it.   The procedure for collecting on the judgment is a matter lying outside the realm of a general limitations statute. (Enforcement orders are expressly excluded from the scope of application of the new Alberta Act by the definition of remedial order: *see* cl. 1(i), comments #25-26.)

4.   As with the main limitation provisions, the defendant must plead the limitations defence.   It is not self-activating, and s. 11 does not extinguish rights.

97

**[Section 12 - Conflict of Laws]**

**12    The limitations law of the Province shall be applied whenever a remedial order is sought in this Province, notwithstanding that, in accordance with conflict of law rules, the claim will be adjudicated under the substantive law of another jurisdiction.**

## Comment

1.    S. 12 provides for the application of Alberta limitations law where a claim brought in Alberta (the forum jurisdiction) will be adjudicated under the substantive law of another jurisdiction (the foreign jurisdiction) in accordance with the applicable principles of private international law (conflict of law rules).

2.    In mandating the application of Alberta limitations law irrespective of how the limitations law of the foreign jurisdiction is classified, s. 12 eliminates the classification problem that is present under the traditional approach.    Under that approach, where the relevant limitation provisions of the forum and the foreign jurisdictions differ, the court must classify the limitations law of the foreign jurisdiction as either procedural or substantive.  The limitations law is usually classified as procedural if it merely bars a remedy and as substantive if it also extinguishes the underlying right.  Where the limitations law of the foreign jurisdiction is classified as procedural, the forum court will apply its own limitations law to the claim; where it is classified as substantive, the forum court will apply the limitations law of the foreign jurisdiction. The question whether only the remedy is barred, or whether the right is also extinguished, is often technical and the inquiry can be very complex if the foreign law is not based on the English common law.

3.    S. 12 is based on two underlying policy determinations:    first,    that limitations law is properly classified as

procedural law; and second, that courts should, as a general proposition, apply local procedural law.

4.    *Limitations law is procedural.*  One of the most important reasons for a limitations system is to protect defendants from the injustice which can flow from litigation based on stale evidence.  Rules of evidence are classified as procedural law, and an Alberta court will apply Alberta evidence rules in litigation before it.    This is a potent reason for a jurisdiction to apply its own limitations law to claims before its courts, even if the substantive law being applied is that of another jurisdiction.

5.    *Courts should apply local procedural law.*    Limitations law is based on a foundation of legal philosophy and concepts of fairness.    Applying the limitations law of Alberta ensures the application of a just limitations system in accordance with accepted Alberta principles because the Alberta law reflects what Alberta believes is the fairest balance between the conflicting interests of claimants and defendants.    This is preferable to the alternatives of requiring the forum court to assess limitations laws in other jurisdictions, particularly those having a different foundation, for fairness; and of opting to apply the limitations law of the jurisdiction whose substantive law will control a claim whether or not it achieves the public policy objectives represented in the local limitations system. It is also preferable to the confusion and unwarranted litigation likely to be

98

[Section 12 - Conflict of Laws]                                    99

produced by a solution using judicial discretion to ensure that just limitation provisions are applied to claims.

6.    S. 12 is open to two criticisms: first, that it does not achieve the policy objective of promoting comity between the forum jurisdiction and the foreign jurisdiction (mutual respect among jurisdictions is enhanced if forum courts defer to and apply laws of other jurisdictions in appropriate cases); and second, that it may encourage forum shopping. As to the first criticism, under accepted conflict of laws principles, jurisdictions are free to apply their own procedural law to cases before their courts, limitations law has generally been considered procedural law and s. 12 is premised on it being so classified.

Applying Alberta limitations law is therefore unlikely to have an erosive effect on comity among jurisdictions. As to the second criticism, that fact that the claimant may be able to look for a jurisdiction whose limitations law has not run out against his claim appears to present a greater difficulty in theory than in actual practice. For many years now a large percentage of Alberta's commercial transactions have been international transactions and this has not yet bred serious conflicts problems in limitations law.

7.    S. 12 applies to the entire Alberta limitations system.    That is to say, although the basic application rule defines only the coverage of the Act, s. 12 applies as well to limitation provisions in other Alberta acts.

**[Section 13 - Transitional]**

13*(1) Subject to subsection (2), this Act applies where a claimant seeks a remedial order in a proceeding commenced after the date the Act comes into force.*

*(2)    A defendant is not entitled to immunity from liability in respect of a claim of which the claimant knew, or in his circumstances ought to have known before this Act came into force and in respect of which a remedial order is sought*

*(a)    in time to satisfy the provisions of law governing the commencement of actions which would have been applicable but for this Act, and*

*(b)    within 2 years after the date this Act comes into force.*

<u>Comment</u>

1.  Ss. 13(1) will benefit defendants in those cases in which the time available to a claimant to commence a proceeding under the present Alberta Act is reduced.

2.  Ss. (2) makes a countervailing concession to claimants. It assures that every claimant whose claim would be within time under the present Alberta Act will have no less than 2 years after the new Alberta Act takes effect within which to seek a remedial order in respect of the claim. That is to say, where the claimant knows or ought to know of a claim, the coming into force of the Act will trigger a 2-year limitation period. The coming into force will operate like discovery.

3.  By way of illustration, assume that the new Act takes effect on January 1,

1991, that the defendant, Neil, was in breach of his contract with Harriet on July 1, 1989, and that Harriet knew or should have known of the breach on that date. The limitation period under the present Alberta Act is 6 years from the date of breach. Under that Act, Harriet would have until July 1, 1995 within which to commence proceedings against Neil. As of January 1, 1991, Harriet would still have 4 and 1/2 years left within the limitation period. The limitation period under the new Alberta Act is 2 years from the date the Act comes into force. Under it, Harriet has until January 1, 1993 to commence proceedings within the limitation period. The new Act reduces the time available to Harriet by 2 and 1/2 years, from July 1, 1995 to January 1, 1993.

100

**[Section 14 - Consequential]**

**14**(1) *Section 60 of the Law of Property Act is amended by adding the following:*

> **(3)    No right to the access and use of light or any other easement, right in gross or** *profit a prendre* **shall be acquired by a person by prescription, and it shall be deemed that no such right has ever been so acquired.**

(2)    *The Limitation of Actions Act is repealed.*

Comment

Section 15(1) - Prescription of Light

1.    S. 15(1) transfers s. 50 of the present Alberta Act to the *Law of Property Act.* S. 50 provides that, although Alberta received the common law, it never received the doctrine of prescription insofar as the rights described in s. 50 could have been acquired by prescription. The doctrine of prescription has its origin in the common law, is extremely complex, and although it is not properly part of limitations law operates in much the same way, which explains the inclusion of s. 50 in the present Alberta Act.

Section 15(2) - Repeal of the Present Alberta Act

2.    The new Alberta Act introduces an entirely new approach to limitations law. As such it replaces the present Alberta Act, and s. 15(2) therefore provides for the repeal of the present Act.

101

## APPENDIX A

### TABLE OF REFERENCES

#### Studies and Statutes

<u>England</u>

Law Revision Committee, *Fifth Interim Report (Statutes of Limitation)*, (Cmnd. 5534, 1936)

*Limitation Act 1939*, c. 21

*Law Reform (Limitation of Actions, etc.) Act, 1954*, 2 & 3 Eliz. 2, c. 36

*Report of the Committee on Limitation of Actions in Cases of Personal Injury* (Cmnd. 1829, 1962)

*Limitation Act 1963*, c. 47; The Law Commission, *Limitation Act, 1963* (Law Com. No. 35, 1970)

*Law Reform (Miscellaneous Provisions) Act 1971*, c. 43

Law Reform Committee, *Twentieth Report (Interim Report on Limitation of Actions: In Personal Injury Claims)* (Cmnd. 5630, 1974

*Limitation Act 1975*, c. 54

Law Reform Committee, *Twenty-First Report (Final Report on Limitations of Actions)* (Cmnd. 6923), 1977; *Limitation Amendment Act 1980*, c. 24

Law Reform Committee, *Twenty-Fourth Report (Latent Damage)* (Cmnd. 9390, 1984)

*Limitation Act 1980*, c. 58

<u>Scotland</u>

Scottish Law Commission, *Reform of the Law Relating to Prescription and Limitation of Actions* (Scot. Law Com. No. 15, 1970)

Scottish Law Commission, *Report on Prescription and Limitation of Actions (Latent Damage and Other Related Issues)* (Scot. Law Com. No. 122, 1989)

*Prescription and Limitation (Scotland) Act 1973*, c. 52

<u>Uniform Law Conference of Canada</u>

*Uniform Limitation of Actions Act* (1931)

*Uniform Limitations Act* (1982)

102

Alberta

*Limitation of Actions Act*, R.S.A. 1980, c. L-15

Institute of Law Research and Reform, *Working Paper: Limitation of Actions* (June, 1977)

*An Act to Amend the Limitations of Actions Act (No. 1)*, Bill 210, First Session, 22nd Legislature, 38 Elizabeth II

*An Act to Amend the Limitations of Actions Act (No. 2)*, Bill 238, First Session, 22nd Legislature, 38 Elizabeth II

*An Act to Amend the Limitations of Actions Act (No. 3)*, Bill 248, First Session, 22nd Legislature, 38 Elizabeth II

British Columbia

Law Reform Commission of British Columbia, *Report on Limitations; Part 2 General* (L.R.C. 15, 1974)

*Limitation Act*, R.S.B.C. 1979, c. 236

Manitoba

*An Act to amend the Limitation of Actions Act and to amend Certain Provisions of Other Acts relating to Limitation of Actions*, S.M. 1967, c. 32

Manitoba Law Reform Commission, *Report on Limitation of Actions: Time Extensions for Children, Disabled Persons and Others* (Report No. 27, 1979)

New Brunswick

Office of the Attorney General, Law Reform Branch, *Limitations Act, Discussion Paper* (1988)

Newfoundland

Newfoundland Law Reform Commission, *Report on Limitation of Actions* (Report No. 1, 1986)

Ontario

Ontario Law Reform Commission, *Report on Limitation of Actions* (1969)

Department of the Attorney General, *Discussion Paper on Proposed Limitations Act* (1977)

Saskatchewan

Law Reform Commission of Saskatchewan, *Tentative Proposals for Changes in Limitations Legislation. Part I: The Effect of Limitations on Title to Real Property* (1981)

104

Law Reform Commission of Saskatchewan, *Tentative Proposals for Changes in Limitations Legislation. Part II: The Limitation of Actions Act* (May 1986)

Law Reform Commission of Saskatchewan, *Proposals for a New Limitation of Actions Act, Report to the Minister of Justice* (1989)

Australia

The Law Reform Commission, *Federal and Territory Choice of Law Rules* (Issues Paper No. 8, 1989)

New South Wales

Law Reform Commission, *First Report on the Limitation of Actions* (L.R.C. 3, 1967)

*Limitation Act, 1969*

South Australia

Twelfth Report of the Law Reform Committee of South Australia, *Law Relating to Limitation of Time for Bringing Actions* (1970)

*Limitation of Actions Act Amendment Act, 1975*

New Zealand

New Zealand Law Commission, *The Limitation Act 1950: A Discussion Paper* (Preliminary Paper No. 3)

New Zealand Law Commission, *Limitation Defences in Civil Proceedings* (Report No. 6, 1988)

## APPENDIX B

### LIMITATION OR NOTICE PROVISIONS
### IN SPECIALIZED ALBERTA ACTS

Appendix B is reproduced from Appendix C in the Report for Discussion. It contains a list, prepared in 1986, of the specialized statutes in Alberta which we believe contain limitation or notice provisions which are within the scope of the limitations system but are excepted from the general limitations statute recommended in this report. We have attempted to exclude limitation and notice provisions which are related to: (1) the time of commencement of prosecutions for provincial offences; (2) proceedings before administrative and ministerial authorities exercising statutory powers; (3) claims requesting judicial review of the exercise of statutory powers; and (4) proceedings after the commencement of a civil judicial action.

Appendix B is organized in a columnar form, with columns 1 to 4 running from left to right. Column 1 contains the name of the Act, column 2 contains the chapter designation for the Act in the Revised Statutes of Alberta 1980, and column 3 contains the section or subsection number of the limitation or notice provisions. Column 4 contains letters indicating whether the provisions are, in our view, limitation or notice provisions, and if the latter, the type of notice provisions. In column 4 the letter or letters have the following meanings:

| | |
|---|---|
| L | Limitation |
| NAE | Notice after event |
| NBA | Notice before action |
| MN | Miscellaneous notice. |

| Name of Act | Chapter | Section | Type |
|---|---|---|---|
| Administration of Estates | A-1 | 39 | MN |
| | | 42 | L |
| | | 50(2) | L |
| Age of Majority | A-4 | 12 | L |
| Alberta Income Tax | A-31 | 44.1(4) | L |
| Bulk Sales | B-13 | 12 | L |

105

106

| Name of Act | Chapter | Section | Type |
|---|---|---|---|
| Business Corporations | B-15 | 35(5) | L |
| | | 113(9) | L |
| | | 114(4) | L |
| | | (125(2) | L |
| | | 219(2) | L |
| | | 219(4) | L |
| Chattel Securities Registries | C-7.1 | 12(2) | L |
| Companies | C-20 | 14(5) | L |
| | | 45(5) | L |
| | | 47(3) | L |
| | | 91 | L |
| | | 100(2) | L |
| Co-operative Marketing Association and Rural Utilities Guarantee | C-25 | 12(6) | L |
| Credit Union | C-31 | 105(2) | L |
| | | 105(3) | L |
| Defamation | D-6 | 13(1) | NAE |
| | | 13(1) | NBA |
| Dower | D-38 | 11(4) | L |
| Election | E-2 | 207(1) | L |
| | | 207(2) | L |
| Expropriation | E-16 | 63(4) | NAE |
| Family Relief | F-2 | 15(1) | L |
| Fraudulent Preferences | F-18 | 3 | L |
| Individual Rights Protection | I-2 | 6(6) | L |

| Name of Act | Chapter | Section | Type |
|---|---|---|---|
| Insurance | I-5 | 165(2) | L |
| | | 171(2) | L |
| | | 210 | NBA |
| | | 275(1) | L |
| | | 299 | NAE |
| | | 299 | L |
| | | 320(2) | L |
| | | 332 | L |
| | | 357 | NAE |
| | | 357 | L |
| | | 395 | NAE |
| | | 414 | NAE |
| | | 414 | L |
| Irrigation | I-11 | 172(1) | NAE |
| | | 181(2) | NAE |
| Land Titles | L-5 | 122(3) | L |
| | | 164 | NBA |
| | | 168(1) | L |
| | | 168(2) | L |
| Maintenance and Recovery | M-2 | 14(1) | L |
| Masters and Servants | M-8 | 9 | L |
| Matrimonial Property | M-9 | 6(1) | L |
| | | 6(2) | L |
| | | 6(3) | L |
| Motor Vehicle Accident Claims | M-21 | 6(1) | MN |
| | | 9(2) | NAE |
| | | 9(3) | L |
| | | 9(7) | L |
| Municipal Goverment | M-26 | 188(9) | NAE |
| | | 188(9) | L |
| | | 190 | L |
| | | 402(1) | NAE |
| | | 404 | NAE |
| | | 405 | NAE |
| Public Highways Development | P-28 | 38(8) | NAE |
| | | 39(3) | NAE |
| Reciprocal Enforcement of Judgments | R-6 | 2(1) | L |

108

| Name of Act | Chapter | Section | Type |
|---|---|---|---|
| Securities | S-6.1 | 175 | L |
| Trust Companies | T-9 | 45(2) | L |
|  |  | 77(2) | L |
| Ultimate Heir | U-1 | 6 | L |
| Water, Gas, Electric and Telephone Companies | W-4 | 15 | NAE |
| Woodmen's Lien | W-14 | 9(1) | L |