## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| **Debtors.** | § | |
| | § | |

### FEE AUDITOR'S FINAL REPORT REGARDING
### FEE APPLICATION OF CAPLIN & DRYSDALE,
### CHARTERED FOR THE TWENTY-FOURTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fee Application of Caplin & Drysdale, Chartered for the Twenty-Fourth Interim Period</u> (the "Application").

### BACKGROUND

1.      Caplin & Drysdale, Chartered ("Caplin") was retained as national counsel to the Official Committee of Asbestos Personal Injury Claimants.  In the Application, Caplin seeks approval of fees totaling $913,856.50 and costs totaling $150,481.47 for its services from January 1, 2007, through March 31, 2007.

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2006, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued

January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served on Caplin an initial report based on our review and received a response from Caplin, portions of which response are quoted herein.

## DISCUSSION

3.      In our initial report, we noted a conference on January 25, 2007 and a  meeting on March 29, 2007 at which four or more professionals participated.  The entries are provided as Exhibit A.  We asked Caplin to examine the exhibit and explain the need for multiple professionals, as well as defining each professional's role in each meeting.  Caplin's response is provided as Response Exhibit 1.  We appreciate the response and offer no objection to these fees.

4.      We noted  two travel entries billed at normal rates when no work appears to have been done.  The entries are provided below.

| 01/25/07 | WBS | 5.00 | 3425.00 | Travel to and from NYC for meeting with FCR counsel. |
|----------|-----|------|---------|------------------------------------------------------|
| 03/29/07 | JPW | 9.10 | 3867.50 | ...........; travel to New York to DC (2.0). |

According to Delaware Local Rules, non-working travel is be charged at 50% of normal billing rates. We asked Caplin to explain why the time in question should not be reduced by 50%.  Caplin responded as follows:

> You inquire in paragraph 4 of the Initial Report regarding time entries for five hours of travel time to and from New York City on January 25, 2007 by Caplin & Drysdale attorney Walter B. Slocombe and two hours of travel time from New York City to Washington, D.C. on March 29, 2007 by Caplin & Drysdale attorney James P. Wehner, respectively.  The referenced time was non-working travel and should have been charged at 50% of Caplin & Drysdale's normal billing rates. Caplin & Drysdale

apologizes for the error and will accept a reduction regarding these time entries.

We appreciate the response and thus recommend a reduction of $3,646.25 in fees.

5.      We noted that during the application period DKG spent a total of 131.5 hours for a

total fee of $42,080.00 on research and memorandum preparation regarding a 15-state survey about

the standard of liability.  (See Exhibit B.)  We asked the firm to explain why this research required

so many hours to complete.  Caplin's response is provided below.

> You inquire in paragraph 5 of the Initial Report regarding services provided by Caplin & Drysdale attorney Danielle K. Graham in researching and writing a memorandum surveying the standard applied by fifteen states in assessing asbestos liability.  This project was an extensive analysis of current tort law in fifteen states in which claimants against Grace have filed asbestos claims, including statutes of limitation, tolling provisions, recently passed statutes, and recently amended statutes. Such new or amended statutes will apply to all claims that have matured in the relevant states during the post-petition period, as well as to all future claims against the trusts for liabilities arising in such states.  Moreover, Ms. Graham's research entailed, not merely a review of relevant statutes and case law, but also the examination of the legislative history of new statutes or amendments.  Her extensive research was incorporated into a lengthy, detailed memorandum of law that has been and will continue to be drawn upon by Caplin & Drysdale attorneys in preparing for the Grace estimation hearing and in formulating a TDP and reorganization plan.

We appreciate the response and offer no objection to these fees.

6.      We noted that during the application period, ALV spent a total of 14.20 hours for a

total fee of $3,905.00 on reviewing documents and transcripts for relevance and use in future

pleadings.  The entries are provided below.

| 03/01/07 | ALV | 3.90 | 1072.50 | Review documents and transcripts for relevance and use in future pleadings. |
| 03/02/07 | ALV | 4.60 | 1265.00 | Review documents and transcripts for relevance and use in future pleadings. |
| 03/03/07 | ALV | 1.20 | 330.00 | Review documents and transcripts for relevance and use in future pleadings. |

| 03/06/07 | ALV | 5.40 | 1485.00 | Review documents produced by debtor and transcripts for relevance and use in future pleadings (4.5);................ |

We asked Caplin to specify the reviewed documents and to explain their specific relevance to this bankruptcy action, as well as their intended use in future pleadings.  Caplin's response is provided below.

> You inquire in paragraph 6 of the Initial Report regarding services provided by Caplin & Drysdale attorney Adam L. VanGrack regarding a document and transcript review.  Mr. VanGrack performed a review of documents and deposition transcripts to identify those documents and that testimony that might be employed in the Grace estimation hearing.  Due to the numerous legal and factual issues relating to estimation, as well as the voluminous discovery that has been obtained regarding that proceeding, Mr. VanGrack's assignment was both necessary and time intensive.  The documents and testimony that he identified were and will continue to be employed in preparing legal filings and strategy both in the estimation hearing and other proceedings relating to these cases.

We appreciate the response and offer no objection to these fees.

> 7.    We noted three hotel charges that appear to be excessive.  The entries are provided

below.

| 2048297 | NDF; travel expenses to Wilmington for court appearance on 1/22-23 for Hotel Dupont (room 429.00, state tax 34.32 city tax 8.58) | $471.90 |
| 2060058 | DBS; Travel expenses to Boca Raton, FL for Beber and Hughes depositions on 2/20-23 for Marriott hotel | $1,301.22 |
| 2060068 | NDF; Travel expenses to Boca Raton, FL for Beber and Hughes depositions on 2/21-22 for Marriott hotel (room 389.00, tax 44.74) | $1,301.22 |

We recommend a reasonable lodging ceiling of $250.00 per day for most cities.  We asked Caplin to explain why the cited lodging expenses should not be reduced to that figure.  Caplin responded as follows:

You inquire in paragraph 7 of the Initial Report regarding hotel costs incurred by Caplin & Drysdale attorney Nathan D. Finch and paralegal David B. Smith.  We believe that such costs were reasonable considering the cities -- Wilmington, DE and Boca Raton, FL -- in which the hotels were located.  Caplin & Drysdale makes every effort to obtain reduced, corporate rates for attorney travel.  Where such rates are not available, however, Caplin & Drysdale attorneys must nonetheless stay at hotels that are convenient to courts or meeting places and provide full business services, including high-speed Internet access.  In major cities, the cost of such lodging and services may exceed the Fee Auditor's $250.00 per day recommendation, and we believe that we should be fully reimbursed for such expenses.

We appreciate the response but maintain that our recommended ceilings remain reasonable.  Thus, we recommend a reduction of $1,013.00 for the cited lodging expenses.

8.    We noted two meal charges that appear excessive.  The entries are provided below.

| 2044264 | EI; Conference dinner while in Dallas on 1/8 with Weitz, Cooney, Ferraro, Budd, Bush, Baron | $527.18 |
| 2060067 | NDF; Travel expenses to Boca Raton, FL for Beber and Hughes depositions on 2/21-22 for dinner with ALB, DBS, J. Ansbro, D. Felder (Other counsel) | $639.48 |

We recommend a reasonable ceiling of $50.00 per person for dinner.  We asked Caplin to explain why the cited entries should not be reduced to that level.  Caplin responded as follows:

You ask in paragraph 8 of the Initial Report about two charges for conference dinners attended by Caplin & Drysdale attorneys.  Caplin & Drysdale will accept a voluntary reduction regarding the January 8, 2007 conference, which was attended by 7 people, at a cost of $527.18.

The second charge, however, in the amount of $639.48, represents two separate dinner conferences, the first held on February 20, 2007, and the second on February 21, 2007, at respective costs of $246.08 and $393.40.  Five persons attended each dinner conference. Therefore, while Caplin & Drysdale will accept a $143.40 reduction regarding the February 21 dinner conference, the cost of the February 20 dinner conference is within the recommended parameters and should be fully reimbursed.

We appreciate the response.  For the January 8, 2007 dinner conference, we recommend a reduction

of $277.18.  For the , February 21, 2007 dinner conference, we recommend a reduction of $143.40.

Thus, for the cited dinner expenses, we recommend a total reduction of $420.58.

       9.      We noted a laundry expense that may not be reimbursable.  The entry is provided

below.

| 2060070 | NDF; Travel expenses to Boca Raton, FL for Beber and Hughes depositions on 2/21-22 for laundry expense at hotel | $44.74 |

The U.S. Trustee's office has consistently recommended that laundry expenses associated with travel

not be reimbursed.  We asked Caplin to explain why the cited expense should be reimbursable.  The

firm responded as follows:

> The laundry expense referenced in paragraph 9 of the Initial Report was charged to the estates in error and should be deleted from Caplin & Drysdale's reimbursement request.

We appreciate the response and thus recommend a reduction of $44.74 in expenses.

## CONCLUSION

       10.     Thus we recommend approval of fees totaling $910,210.25 ($913,856.50 minus

$3,646.25) and costs totaling $149,003.15 ($150,481.47 minus $1,478.32) for Caplin's services from

January 1, 2007, through March 31, 2007.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
          Warren H. Smith
          Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1275
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

        **FEE AUDITOR**


## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 7th day of September, 2007.


_____
          Warren H. Smith

**SERVICE LIST**
Notice Parties

**The Applicant**
Elihu Inselbuck
Peter Van N. Lockwood
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, NY 10152-3500

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
375 Park Avenue
New York, NY 10152-3500

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**
Gary M. Becker
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

Teresa K.D. Currier, Esq.
Buchanan Ingersoll
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
844 King Street, Suite 2311
Wilmington, DE 19801

## Exhibit A

1.      On January 25, 2007, four firm Members attended a conference in New York. The total time spent including any preparation and non-working travel time was 43.00 hours[1] for a total fee of $24,935.50.

| | | | | |
|---|---|---|---|---|
| 01/25/07 | PVL | 4.30 | 3440.00 | .............; confer Frankel, Wyron, Mullady, Abdno, EI, WBS, NDF (3.2);................. |
| 01/24/07 | WBS | 3.10 | 2123.50 | Prep for meeting in NYO on strategy and coordination with EI and FCR counsel. |
| 01/24/07 | NDF | 6.80 | 3944.00 | Review of entire estimation case file in prep. for strategy meeting with FCR lawyers. |
| 01/25/07 | WBS | 5.00 | 3425.00 | Travel to and from NYC for meeting with FCR counsel. |
| 01/25/07 | WBS | 5.60 | 3836.00 | Prep for conference (1.4); meeting with Orrick people on trial strategy, exclusivity issues, allocation of work (3.8);.............. |
| 01/25/07 | EI | 3.10 | 2712.50 | ........; conf. Frankel, Wyron, Mullady, Ansbrow, PVNL, WBS, NDF to plan for est. hearing positions (3.0). |
| 01/25/07 | NDF | 5.70 | 3306.00 | Conf. w/PVNL re: meeting w/FCR lawyers (.50); meeting w/FCR lawyers and EI to discuss case strategy and approaches to estimation (3.5);......... |
| 01/25/07 | PVL | 6.30 | 2520.00 | Travel to/from NY. |
| 01/25/07 | NDF | 3.00 | 870.00 | Travel to NY for meeting w/FCR lawyers |
| 01/25/07 | NDF | 3.40 | 986.00 | Travel back to DC from NY. |

2.      On March 29, four firm members (three Members and one Of Counsel) attended a meeting in New York.  The total time spent including any preparation and non-working travel

---

[1] Time for this entry was located in the following project categories - (i) Claim Analysis Objection & Resolution (Asbestos), (ii) Litigation and Litigation Consulting and (iii) Travel - Non Working.

time was 28.60 hours[2] for a total fee of $16,708.50.

| 03/29/07 | WBS | 7.50 | 5137.50 | Prep for meeting (2.3); meeting in NYO with EI, NDF and FCR counsel (4.8);............... |
| 03/29/07 | EI | 5.60 | 4900.00 | Conf. NDF to prepare (.2); conf. NDF, WBS, JPW, Frankel, Wyron, Mullady, Ansbro to review status of estimation work (5.0);.......... |
| 03/29/07 | NDF | 8.10 | 4698.00 | Meet with EI and FCR lawyers re estimation case strategy (4.5);........... |
| 03/29/07 | JPW | 9.10 | 3867.50 | ...........; meeting with FCR attorneys in New York regarding estimation issues (5.8); travel to New York to DC (2.0). |
| 03/29/07 | WBS | 4.00 | 1370.00 | Travel time to and from NYC meeting. |

---

[2] Time for this entry was located in the following project categories - (i) Litigation and Litigation Consulting and (ii) Travel - Non Working.

Exhibit B

| 02/06/07 | DKG | 1.00 | Attention to state survey re standard of liability |
| 02/07/07 | DKG | 2.30 | ...........; attention to state survey re standard of liability (1.8). |
| 02/08/07 | DKG | 5.00 | Attention to 15 state survey re liability standards |
| 02/09/07 | DKG | 7.00 | Conduct research re 15 state survey on liability issues. |
| 02/12/07 | DKG | 7.50 | Read and analyze case law re 15 state survey |
| 02/13/07 | DKG | 8.00 | Draft memo re 15 state survey; read and analyze case law re same. |
| 02/14/07 | DKG | 7.80 | Draft memo re 15 state survey; read and analyze case law re same. |
| 02/15/07 | DKG | 6.70 | Draft 15 state survey re liability; read and analyze case law re same. |
| 02/16/07 | DKG | 7.50 | Draft 15 state survey re liability; read and analyze case law re same. |
| 02/20/07 | DKG | 3.50 | Draft 15 state survey re liability; read and analyze case law re same. |
| 02/21/07 | DKG | 5.30 | Draft 15 state survey re liability; read and analyze case law re same. |
| 02/22/07 | DKG | 8.20 | Continue research re 15 state survey; read and analyze case law re same. |
| 02/23/07 | DKG | 7.80 | Continue research re 15 state survey; read and analyze case law re same. |
| 02/24/07 | DKG | 4.20 | Read and analyze case law re 15 state survey; draft memo re the same. |
| 02/26/07 | DKG | 8.00 | Read and analyze case law re 15 state survey. |
| 02/27/07 | DKG | 7.50 | ....................; continue drafting memo re 15 state survey |

(6.3).

| | | | | |
|---|---|---|---|---|
| 02/28/07 | DKG | 7.60 | | Continue drafting memo re 15 state survey |
| 03/01/07 | DKG | 6.50 | 2080.00 | Draft memo re 15 state survey, read and analyze case law re the same. |
| 03/02/07 | DKG | 8.20 | 2624.00 | Draft 15 state survey memo re causation |
| 03/05/07 | DKG | 1.30 | 416.00 | Read and analyze case law re 15 state survey |
| 03/06/07 | DKG | 2.80 | 896.00 | Draft memo re 15 state survey |
| 03/07/07 | DKG | 1.50 | 480.00 | Draft memo re 15 state survey |
| 03/08/07 | DKG | 5.00 | 1600.00 | Draft memo re 15 state survey |
| 03/09/07 | DKG | 3.00 | 960.00 | Draft memo re 15 state survey |

Response Exhibit 1

You inquire in paragraph 3 of the Initial Report regarding the participation of four members of the firm in a conference held in New York City on January 25, 2007, attended by the Future Claims Representative ("FCR") and his professionals, to plan for the Grace estimation hearing, a proceeding that will determine the value of potentially billions of dollars of the Debtors' asbestos liabilities. The Caplin & Drysdale attorneys who attended this meeting were those responsible for planning the strategy and conducting discovery for this proceeding.

Elihu Inselbuch, the Committee's lead attorney and chief negotiator, attended to coordinate overall planning for estimation. Peter Van N. Lockwood, who coordinates day-to-day matters in these bankruptcy cases and supervises the drafting of plan documents, discussed the impact of various estimation scenarios on both these cases and a potential reorganization plan. Walter B. Slocombe and Nathan D. Finch, between whom Caplin & Drysdale has divided the responsibility for coordinating estimation discovery and, during the hearing, presenting the Committee's case, including by examining and cross-examining witnesses, attended to plan strategy and discuss potential evidence. Such a division of responsibilities was necessary due to the volume of evidence in this matter, so that there was no duplication of services regarding the efforts of Messrs. Slocombe and Finch.

## II.   March 29, 2007 Meeting

You additionally inquire in paragraph 3 of the Initial Report regarding a meeting held on March 29, 2007 in New York City with the FCR and his counsel regarding the estimation proceeding. This meeting was a strategy meeting attended by four Caplin & Drysdale attorneys. As stated above, the Grace estimation proceeding is large and complicated and will determine the extent of what the Committee believes is potentially billions of dollars of the Debtors' liability and, therefore, the outcome of these cases.

Attending for the Committee were Elihu Inselbuch, the Committee's chief negotiator, Nathan D. Finch and Walter B. Slocombe, the coordinators of discovery and litigation, and Caplin & Drysdale attorney James P. Wehner. Mr. Wehner, who had conducted document discovery, depositions and testimony review regarding estimation, reported to the FCR regarding such efforts. Based on Mr. Wehner's report, all four Caplin & Drysdale attorneys and the FCR and his professionals further developed their strategy for estimation. As stated above, the importance of estimation to the outcome of these cases cannot be overstated. Therefore, it was essential for all four Caplin & Drysdale attorneys, each of whom has made a separate and required contribution to planning the proceeding, to attend the March 29 meeting, hear Mr. Wehner's report, and participate in the discussion that followed.