IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | |
| W.R. GRACE & CO., et al | ) | Case No. 01-1139(JKF) |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

<u>PLAINTIFF'S ANSWERS TO DEBTORS' THIRD SET OF INTERROGATORIES TO CERTAIN ASBESTOS PERSONAL INJURY PRE-PETITION LITIGATION CLAIMANTS' LAW FIRMS</u>

## INTERROGATORIES

### <u>INTERROGATORY NO. 1:</u>

Have you determined the first B-read performed for each Claimant? If yes, state:

a) What steps did you follow to determine the first B-read performed for each Claimant?

b) Did you contact all doctors known to the Claimant (or his or her representatives) to determine the first B-read performed?

c) Did you contact all counsel who have represented the Claimant in connection with asbestos issues to determine the first B-read performed?

d) Did you verify the first B-read with the Claimant or Claimant's representative?

e) Have you obtained the first B-read performed for each Claimant?

f) Have you withheld the first B-read performed for each Claimant?

g) Have you identified to Grace all such B-reads in response to its First Set of Interrogatories?

### <u>RESPONSE TO INTERROGATORY NO. 1:</u>

Yes, where applicable to the disease process.

a) Reviewed medical records. Not in cases of mesothelioma.

    b)    Yes.

    c)    N/A.

    d)    Yes.

    e)    Yes.

    f)    No.

    g)    Yes.

**INTERROGATORY NO. 2:**

Have you determined the date on which each Claimant was diagnosed with an asbestos-related disease? If yes, state:

    a)    How you determined that date?

    b)    Did you contact all doctors known to the Claimant (or his or her representatives, your firm, or prior counsel) to determine the date of the Claimant's first diagnosis?

    c)    Did you contact all counsel who have represented the Claimant in connection with asbestos issues to determine the date of the Claimant's first diagnosis?

    d)    Did you verify the date of the first diagnosis with the Claimant?

    e)    Did you verify the date of the Claimant's first diagnosis through contemporaneous medical documentation reflecting the diagnosis?

    f)    Have you told Grace in response to its First Set of Interrogatories the date of the Claimant's first diagnosis?

    g)    Have you obtained all B-reads performed for each Claimant on or before the date of first diagnosis? How?

    h)    Have you produced to Grace all B-reads performed before the date of first diagnosis?

    I)    Have you withheld any B-reads performed before the date of first diagnosis?

    j)    Have you identified to Grace all such withheld B-reads performed on or before the date of the Claimant's first diagnosis in response to its First Set of Interrogatories?

## RESPONSE TO INTERROGATORY NO. 2:

Yes.

a) Reviewed medical records.

b) Yes.

c) N/A.

d) Yes.

e) Yes, see answer to question # 2 (a) above.

f) Yes.

g) Yes, where applicable to the disease.

h) Yes, where in our or claimant's possession.

I) No.

j) Yes.

## INTERROGATORY NO. 3:

Have you determined the date on which you were retained by each Claimant? If yes, state:

a) How did you determine the date on which you were retained by each Claimant?

b) Did you verify that date with the Claimant or Claimant's representative?

c) Is there contemporaneous documentation verifying the date of retention?

d) Have you obtained all B-reads performed for each Claimant before the date your firm was retained? How?

e) Have you produce to Grace all B-reads performed for each Claimant on or before the date your law firm was retained?

f) Have you withheld any B-reads performed for each Claimant on or before the date your law firm was retained?

g) Have you identified any such withheld B-reads in response to its First Set of

Interrogatories?

**RESPONSE TO INTERROGATORY NO. 3:**

Yes.

a) Reviewed client file.

b) Yes.

c) Yes.

d) Yes. Through medical authorization requests sent to physicians.

e) Yes.

f) No.

g) Not applicable. No B-reads were withheld.

**INTERROGATORY NO. 4:**

For each Claimant as to whom any B-read is being withheld, have you determined whether B-readers were retained specifically to act as litigation consultants for that Claimant? If yes, state:

a) How did you determine whether a B-reader was retained to act as a litigation consultant specifically for a Claimant?

b) For each Claimant, was there contemporaneous documentation stating that the B-reader was retained to act as a litigation consultant only?

c) Did you verify with the Claimant that the B-reader was acting as a litigation consultant to him or her?

d) For any Claimants, was the B-reader ever stated to be a testimonial expert? If yes, for each such Claimant did you ever disclose that fact to Grace?

**RESPONSE TO INTERROGATORY NO. 4**:

This interrogatory is not applicable. Cooney & Conway has not withheld any B-reads.

## INTERROGATORY NO. 5:

For each B-read withheld on the grounds of the litigation consulting privilege, have you determined whether the B-read was transmitted to any third party not in privity with the Claimant, including, but not limited to, other litigants, trusts, and claims processing facilities? If yes, state whether for each Claimant you have disclosed this information to Grace?

## RESPONSE TO INTERROGATORY NO. 5:

This interrogatory is not applicable. Cooney & Conway has not withheld any B-reads.

## INTERROGATORY NO. 6:

In answering the Questionnaire for each Claimant, did you contact any doctors who have rendered Medical Services in connection with each Claimant's Asbestos-Related Disease to obtain documents that either support or conflict with the diagnosis supporting the Claimant's claim? If yes, state:

a)  Did you try to identify all such doctors? How?

b)  Did you try to identify any such doctors? How?

c)  Did you try to obtain medical records from any or all such doctors? How?

d)  Did you provide with the Claimant's Questionnaire all such documents in your or the Claimant's possession, custody or control that either support or conflict with the diagnosis supporting the claim?

## RESPONSE TO INTERROGATORY NO. 6:

Yes.

a)  Yes. Client interview and review of hospital records.

b)  Yes. Client interview and review of hospital records.

c)  Yes. Written requests for records.

d)  Yes.

## INTERROGATORY NO. 7:

In answering the Questionnaire for each Claimant, did you contact any other counsel who have represented each Claimant in connection with their claim? If yes, state:

a) Did you try to identify any and all such counsel? How?

b) Did you try to obtain from any and all such counsel any documents relating to the claim? How?

c) Were all documents obtained from other counsel at any time--that either supported or conflicted with the diagnosis supporting the claim--furnished with the Claimant's completed Questionnaire?

d) Were all documents obtained from other counsel at any time that reflected exposure to Grace asbestos-containing products or other asbestos-containing products provided with the Claimant's completed Questionnaire?

## RESPONSE TO INTERROGATORY NO. 7:

No.

## INTERROGATORY NO. 8:

In answering the Questionnaire for each Claimant, did you review all attachments to determine whether, in fact, the attachments completely and accurately answered each question on the Questionnaire where the answer given referred to the attachments? If yes, where the attachments did NOT specifically, completely, and accurately answer a question, did you disclose this to Grace in the Claimant's completed Questionnaire?

## RESPONSE TO INTERROGATORY NO. 8:

Yes.

## INTERROGATORY NO. 9:

Did you determine for each Claimant whether the Claimant was actually exposed to a Grace asbestos-containing product? If yes, state:

a) Whether all documentation of that exposure in your or the Claimant's possession, custody or control was provided in or with the Claimant's completed Questionnaire?

b) Whether all other evidence of that exposure in your or the Claimant's possession, custody or control was provided in or with the completed Questionnaire?

    c)      Whether exposure to a Grace asbestos-containing product was verified at any time by: (I) a statement made by each Claimant; or (ii) a statement of a percipient witness? If yes, state whether all such statement in yours or the Claimant's possession, custody or control were provided with the completed Questionnaire?

## RESPONSE NO. 9:

Objection. Claimant's exposures to Grace asbestos-containing products resulted from their work at jobsites where Grace products were used, (or in the case of take-home exposure, where their family members were working). In each claim, adequate proof of exposure to Grace products was produced by the claimant. This proof consisted of prior depositions, affidavits or answers to interrogatories.

However, Grace, as is it's right pursuant to the Bankruptcy Code, has not been subject to tort discovery for many years. "Actual exposure" in tort cases is usually proven through extensive discovery, including requests to admit tendered by the plaintiff to defendants seeking admission that the Defendant's product was used at the individual plaintiff's jobsite or jobsites. Additionally, depositions of co-workers and distributors or contractors are taken in each disputed case once it is set for trial. Thus, much of the tangible discovery work that would necessarily be done on an active tort case has not yet occurred because of W.R. Grace's bankruptcy.

In further answer to the question, claimants have provided proof of the plaintiff's exposure to Grace asbestos-containing products through the depositions, answers to interrogatories and work history records. Where voluminous and repetitive testimony relating to Grace asbestos-products being used at a claimant's worksite exists, we have attempted to provide the most complete evidence, however, there are undoubtedly additional references to Grace products at worksites that we did not provide, because it is duplicative of testimony already provided.

Additionally, and in response to part c), each claimant attested to his or her claim and such attestations were provided to Grace.

For further response to this question, please see the documents attached to and specified in claimant's questionnaires.

## INTERROGATORY NO. 10:

Did you determine for each Claimant the dates and duration of any exposure to a Grace asbestos-containing product? If yes, provide statements regarding the dates and duration of exposure parallel to those required in Interrogatories 9(a)-(c) above.

**RESPONSE TO NO. 10:**

Such determination was made based upon the claimant's work history and recollections. If the claimant was deceased, co-workers and family members provided additional information. All information as to the date of exposure available at the time was provided to Grace with the response to the questionnaire, however, it is predictable that the discovery and counter-discovery normally taking place in tort litigation would result in additional information.

**INTERROGATORY NO. 11:**

Did you determine the place and job description of each exposure to a Grace asbestos-containing product? If yes, provide statements regarding the place and job description parallel to those required to Interrogatories 9(a)-(c) above:

**RESPONSE TO NO. 11:**

Such determination was made based upon the claimant's work history and recollections. If the claimant was deceased, co-workers and family members provided additional information. All information as to jobsite exposure available at the time was provided to Grace with the response to the questionnaire, however, it is predictable that the discovery and counter-discovery normally taking place in tort litigation would result in additional information.

**INTERROGATORY NO. 12:**

Did you determine the proximity of each Claimant to a Grace asbestos-containing product during each such exposure, as required in Section III of the Questionnaire? If yes, provide statements regarding the proximity of each Claimant to a Grace asbestos-containing product parallel to those required in Interrogatories 9(a)-(c) above.

**RESPONSE TO NO. 12:**

Such determination was made based upon the claimant's work history and recollections. If the claimant was deceased, co-workers and family members provided additional information. All information as to the proximity to Grace products available at the time was provided to Grace with the response to the questionnaire, however, it is predictable that the discovery and counter-discovery normally taking place in the tort litigation would result in additional information.

## INTERROGATORY NO. 13:

Did you determine the specific Grace asbestos-containing product involved in each exposure? If yes, provide statements regarding the specific Grace asbestos-containing product parallel to those required in Interrogatories 9(a)-(c) above.

## RESPONSE TO NO. 13:

Such determination was made based upon the claimant's work history and recollections. If the claimant was deceased, co-workers and family members provided additional information. All information as to the specific Grace product, either Monokote or Zonolite, available at the time was provided to Grace with the response to the questionnaire, however, it is predictable that the discovery and counter-discovery normally taking place in tort litigation would result in additional information.

## INTERROGATORY NO. 14:

Did you determine for each Claimant whether they were exposed to any other asbestos-contained product? If so, provide a statement regarding the Claimant's exposure to any other asbestos-containing product parallel to those required in Interrogatories 9(a)-(c) above.

## RESPONSE TO INTERROGATORY NO. 14:

Objection. Information about exposure to other manufacturers is irrelevant to claimant's claim against Grace. Notwithoutstanding said objection, the interrogatory answers and depositions attached to each claimant's questionnaire detail each claimant's exposure to asbestos from Grace and other manufacturers.

## INTERROGATORY NO. 15:

For each Claimant submitting a Questionnaire, did the Claimant (or a representative of the Claimant if the Claimant was deceased) review the Questionnaire prior to its submission? If yes, state:

(a) Were all Claimants required to affirm the accuracy and completeness of the completed Questionnaires?

(b) Is there any documentation that reflects such an attestation or process of document review?

**RESPONSE TO INTERROGATORY NO. 15:**

Yes.

(a)  Yes

(B)  Each claimant, or claimant's representative if deceased, signed their questionnaire after receiving the information contained therein. A letter requesting their signature and review was sent to each claimant.

Respectfully submitted,
COONEY & CONWAY

_____
By one of its attorneys

KATHY BYRNE
COONEY & CONWAY
120 N. LaSalle St, Suite 3000
Chicago, IL 60602
(312) 236-6166
Firm ID #90200