## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | **Hearing Date:  September 24, 2007** |

## RESPONSE TO FINAL REPORT OF FEE AUDITOR REGARDING
## FEE APPLICATION OF FORMAN PERRY WATKINS KRUTZ & TARDY LLP
## FOR THE TWENTY-FOURTH INTERIM PERIOD

Forman Perry Watkins Krutz & Tardy LLP ("Forman Perry") appreciates the work of the

Fee Auditor in the final report (the "Final Report"), filed with the Court on August 22, 2007,

regarding Forman Perry's Fee Application for the Twenty-Fourth Interim Period (the "Fee

Application").  However, Forman Perry has responses to two related recommendations of the

Fee Auditor.[2]  Indeed, the Fee Auditor's approach to, and assessment of, Forman Perry's

---

[1]      The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]      In paragraph seven (7) of the Final Report, the Fee Auditor questions the time and fees associated with the deposition of a third-party screening doctor. Due to the additional work billed by other firms, the Fee Auditor determined that the fees and expenses incurred by Forman Perry should be reduced by one-half – a reduction of $65,019.75. Forman Perry prepared for this deposition and was the lead firm for all activities associated with this deposition. Though Forman Perry disagrees with the Fee Auditor's assessment of this work, this reduction is respectfully accepted.

practices on this first fee application is significant because the work criticized is central to what the Debtors retained Forman Perry to do – in fact, as discussed below, it is the **only thing** the Debtors retained Forman Perry to do.  Therefore, any reduction in the fees associated with this type of work on this first fee application directly and dramatically affects all future fee applications filed by Forman Perry.  As such, Forman Perry respectfully requests this Court deny the two recommendations discussed herein and allow the full amount of fees requested by Forman Perry with respect to these two categories of work.  In support of this Response, Forman Perry states as follows:

1.      The fees for the time entries in question total $1,495,559.42.  The Fee Auditor has recommended a 25% reduction of those fees totaling $373,889.85.

2.      The Debtors retained Forman Perry to perform three basic tasks with respect to discovery from third parties involved in the screening and diagnosis of Debtors' asbestos personal injury plaintiffs: (1) identify and obtain the documents; (2) analyze the documents and place them in a searchable electronic format; and, (3) determine whether the documents and materials contain indicators of fraudulent and suspect activities and practices.

3.      Due to the limited scope of Forman Perry's retention, the tasks completed on the Debtors' behalf, and thus the time entries describing those tasks, are repetitive in nature.  It is this repetitive nature of the Forman Perry time descriptions that is the source of the Fee Auditor's objections.

---

In paragraph eight (8) of the Final Report, the Fee Auditor identified an error in the fees associated with the travel time of a paraprofessional.  Forman Perry appreciates the Fee Auditor's correction of this error and agrees that the charged should be reduced by $498.75.

In paragraph nine (9) of the Final Report, the Fee Auditor requested additional information regarding expenses associated with a deposition and was satisfied with the additional information provided.

In paragraph ten (10) of the Final Report, the Fee Auditor requested additional information regarding flights purchased for seven (7) attorneys for $10,100.  Forman Perry suggested, and the Fee Auditor recommends, a reduction in $705.49 in connection with these flights.

4.    It is critical to note that the Fee Auditor acknowledges in his Final Report that "just one of Forman Perry's time entries, if evaluated on an individual basis, provides much of the information required by the Local Rules and is, thus, not totally deficient in a technical sense." The key issue identified in the Final Report is that the subject entries are "repeated verbatim" by multiple timekeepers on a daily and weekly basis. The Fee Auditor surmises that this is "at the very least, an indication of inaccurate timekeeping" and that "[t]he repetition of identical time entries makes it impossible to determine which tasks are performed on any given day, and how long each task took."

5.    There is a critical disconnect between the Final Report's criticism of the time descriptions as "vague" and "repetitious" and the actual nature of the work Forman Perry was hired to perform for the Debtors. Indeed, the repetitive nature of Forman Perry time descriptions is not due to the inaccuracy or "sloppiness" of the time entries. Instead, it is simply due to the inherent nature of the tasks performed by Forman Perry. In other words, because Forman Perry was only hired to perform essentially three types of tasks for the Debtors (plan logistics and strategy for document productions, collect documents during document productions, and analyze the documents received via document productions), the vast majority of the Forman Perry time descriptions are going to use these descriptions. In fact, the only part of the Forman Perry work that varies is the actual doctor or screening company on which the work is being performed.

As of the date of the first fee application, Forman Perry had issued thirty-four (34) subpoenas on behalf of the Debtors and collected, normalized, and analyzed over 1.5 million documents produced by third party screening companies and doctors. Debtors have used this material to assess the patterns of practice and methodology employed in the diagnoses of tens of

thousands of their asbestos personal injury claimants and to depose over eighteen (18) witnesses at issue in their estimation process.

6.    Forman Perry conducted document productions to gather, organize, scan, disassemble, and re-assemble over 1.5 million documents on behalf of Debtors in over six states. The work performed at these document productions (along with the logistics and strategy for conducting and completing same so that the overall goal of collection and analysis is best served) is to some extent proprietary in nature as recognized by the Fee Auditor. However, on a basic level, each document production requires coordination with the subpoenaed party, its attorney, local copying/scanning services, and multiple paraprofessionals to determine the best location for the production, the resources necessary to complete the production, the current level of organization and condition of the files and materials produced, the resources necessary to disassemble, organize, and re-assemble all materials, requisite quality control procedures, and a myriad of other production-specific tasks that are required when organizing and planning for the production of hundreds of thousands of documents and materials. This work is typically described by Forman Perry professionals as "Continue to strategize and determine logistics and necessary procedure for document production..." by [insert name of screening company/screening doctor/person] in [insert name of City, State]" on Forman Perry invoices. Attendance and participation in the document production itself is often described in just that way - "Attend and participate in the production of documents and materials by [insert entity] in [insert City, State]." This time description is used when paraprofessionals and attorneys are physically present at the off-site location at which documents and materials are being produced and those professionals are gathering, organizing, dis-assembling, copying, scanning, re-assembling, and returning documents and materials to their proper location. Attorneys are

present at the documents production and though they are primarily present because typically

counsel for the screener/doctor is also present, they also conduct reviews of the materials as they

are stored and produced prior to production which, we have found, is often a key component in

uncovering fraudulent patterns.  Depending upon the volume and condition of the documents and

materials produced, this process can take a matter of days for only a few paraprofessionals or a

matter of weeks for a number of paraprofessionals.  It is vital to the ultimate review and analysis

of these materials, however, that they are collected, organized, and scanned in a very precise and

very specific manner for, in our experience, the very nature of the condition in which they are

discovered and produced may reveal important clues as to their ultimate legitimacy.

7.    Finally, the actual review and analysis of the 1.5 million documents produced to

the Debtors is described by Forman Perry professionals as "[Individual, detailed review and

analysis of hundreds of records and documents, produced by various third party screening

companies and screening doctors subpoenaed by client, in order to examine the screening and

diagnosis of Debtors' asbestos claimants."  Forman Perry has a department consisting of over

sixty paraprofessionals who have been trained in the art of reading and analyzing each type of

screening/diagnostic report and document for indicia of fraudulent or suspect screening activity.

(Typically, each document has more between 10 and 25 potential indicators of fraudulent activity

that must be reviewed and considered.)  Assuming each of the sixty paraprofessionals trained in

this type of analysis worked only on the documents and materials produced by the Debtors

during this time period, each paraprofessional would have had to individually analyze over

21,600 documents each in order to complete only the initial step in our review of the discovery

produced to the Debtors.  Obviously, not all of our screening-analyst paraprofessionals worked

on the review and analysis of the documents produced to Debtors all day every day during this

time period, so the actual ratio of documents to paraprofessionals is much more that 21,600 to one. Given the deadline under which this third party screening discovery had to take place and the amount of material produced by each entity, Forman Perry had no choice but to allocate an appropriate number of paraprofessionals and other resources to the completion of Debtors discovery in a timely manner. The collection, review, and initial analysis of over 1.5 million documents in such a short time period required the resources of a majority of our paraprofessionals trained in that area. Each month, the total number of hours worked by these paraprofessionals on documents and material produced to the Debtors was summarized by paraprofessional by month in the Forman Perry fee application. The daily document review rates for these paraprofessionals by day by month are provided as Exhibit "A" attached hereto.

8.      The Fee Auditor cites *In re Commonwealth Avenue Corp.* to support his assertion that the types of entries described in Paragraphs 6 and 7 above "make[] it impossible to determine which tasks are performed on any given day, and how long each task took." Final Report at p. 4 (citing 204 B.R. 284, 301 (Bankr. D. Mass. 1997)). In *Commonwealth*, the hours at issue were reported by one attorney who used "lengthy entries" that "contained numerous items" that were "copied verbatim from earlier entries." *Id.* Numerous items are not contained in each entry of the Forman Perry fees at issue and they are copied verbatim because, as discussed above, only very few tasks are done by Forman Perry professionals – though they are done repeatedly for various collections of documents and materials. Further, the timekeeper at issue in *Commonwealth* voluntarily reduced the fee request in recognition of the poor quality of the descriptions. Forman Perry, in contrast, is vigorously challenging the Fee Auditor's assessment and, as acknowledged by the Fee Auditor, the time entries "taken alone, do provide sufficient information."

The Fee Auditor's reliance on *In re Office Products of America, Inc.* is also misplaced. 136 B.R. 964, 976 (Bankr. W.D. Tex. 1992). As required by *Office Products*, time entries must "provide sufficient detail for the court to determine what work was done, by whom it was done, how long it took to do, whether there was any duplication of effort, and what results were achieved." *Id.* at 976. The Fee Auditor asserts that Forman Perry's time entries fail to do so "because of the vagueness and repetition of the time entries." In *Office Products*, the Court used examples such as phone calls and conferences to show why the descriptions were insufficient if they did not include the purpose, the length, and the names of the persons involved. *Id.* This case is not applicable because the nature of Forman Perry's work is simply different from other professionals involved in bankruptcy litigation. The scope and purpose of Forman Perry's work is always the collection, examination, and analysis of discovery from third parties involved in the screening and diagnosis of Debtors' claimants. Thus, copying, scanning, and analyzing these types of documents is qualitatively different from telephone calls and conferences where without a description of what was said and who was present, the Fee Auditor is unable to determine if this task was unnecessarily duplicative.

Similarly, in *In re Finlasen*, cited by the Fee Auditor, the qualitative nature of the work at issue is completely different. 250 B.R. 446, 448 (Bankr. S.D. Fla. 2000). The time entries at issue in *Finlasen* involved actions like: "consultation[s]," "dictat[ion of] letter[s]," "review of questionnaire[s]," "preparation of petition[s], schedule[s] and statement[s] of financial affair[s]," "pay stub[s]," and, among other things, "attendance at hearing[s]." *Id.* This work is the type of work handled by a firm representing a debtor in a broad range of capacities – most unlike Forman Perry who only completes the three basic tasks on behalf of the Debtors. Further, for the professionals completing the tasks like those identified in *Finlasen*, they are often unable to

provide for the Court evidence of what was completed.  Fortunately, Forman Perry can document

for the Court precisely what its professionals accomplished in each time entry.  Further, the Fee

Auditor did not cite, nor was Forman Perry able to find, any case law that discusses "vague" or

"repetitive" time entry descriptions regarding document production or review.

9.    Given the inherently limited scope of Forman Perry's representation of the

Debtors, the time expended by the firm's professionals can only be described in what *prima facie*

appear as repetitive time entries.  The work described by these entries is anything but repetitive,

however, as described above.  Identifying, collecting, obtaining, and analyzing over 1.5 million

documents from over 30 different sources in the short time period allowed by the Debtors'

schedule has strained the resources of Forman Perry.  To allow a 25% reduction in the fees

associated with this work simply because the way in which the activity can be described is

limited is patently unfair and prejudicial.  Forman Perry has worked to serve the needs of the

Debtors and the estate.  The three fundamental tasks the firm was retained to perform are being

accomplished efficiently and economically.  Furthermore, because there are only three basic

functions to our representation of the Debtors, the Fee Auditor's assessment of the Forman Perry

time entries as "repetitive" and requiring reduction is erroneous.

WHEREFORE, PREMISES CONSIDERED, Forman Perry Watkins Krutz & Tardy LLP

respectfully requests that this Court deny the two recommendations of the Fee Auditor discussed

herein (a reduction of $373,889.85) and allow the full amount of fees requested by Forman Perry

with respect to these two categories of work.

Dated: September 14, 2007          Respectfully submitted,

FORMAN PERRY WATKINS KRUTZ & TARDY, LLP

Marcy Bryan Croft

_____

200 South Lamar Street, Suite 100
Jackson, Mississippi 39201
Telephone: 601690-8600
Facsimile: 601-960-8613