IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

Objection Deadline: October 5, 2007 at 4:00 p.m.
Hearing Date: October 25, 2007 at 2:00 p.m., at Pittsburgh, Pa.

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING SETTLEMENT OF ASBESTOS PROPERTY DAMAGE CLAIMS FILED BY OREGON HEALTH & SCIENCE UNIVERSITY, REPRESENTED BY DIES & HILE, LLP**

The Debtors have negotiated an agreement (the "Settlement") with Oregon Health & Science University (the "Claimant"), an asbestos property damage claimant represented by Dies & Hile, LLP (the "Claimant's Counsel"), which will settle all of the Claimant's asbestos property damage claims against the Debtors on the terms and conditions set forth in the Settlement. A copy of the Settlement is attached hereto as Exhibit 1, and includes a list of the settled claims, by claim numbers, on Exhibit A to the Settlement (the "Claims"). Debtors and Claimant negotiated in good faith to reach the Settlement, and submit that it is in the best interests of the estate for the Court to approve the Settlement in an order substantially in the form attached hereto as Exhibit 2.

By this motion the Debtors respectfully move this Court, pursuant to Section 105(a) of Title 18, United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy rules"), for the entry of an order approving the terms of the Settlement, and authorizing the settling parties to perform in accordance with the

1

terms of the Settlement.[1] In support of this motion (the "Motion"), the Debtors respectfully represent as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This motion is a core proceeding under 28 U.S.C. § 157(b)(2).

### Background

2. On April 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

3. By order dated April 25, 2002, this Court set March 31, 2003, as the last date for filing proofs of claim for all pre-petition claims relating to asbestos property damage, non-asbestos claims (including all governmental claims), and medical monitoring claims [Docket No 1960] (the "Bar Date").

4. The Claimant is a governmental entity. On or prior to the Bar Date, Claimant, directly or through Claimant's Counsel, filed the Claims against the Debtors using the approved W. R. Grace & Co. Asbestos Property Damage Proof of Claim Forms.

5. On September 1, 2005, the Debtors filed their *15th Omnibus Objection (Substantive)* [Docket No. 9315], in which the Debtors objected to the Claims on various grounds ("Claims Objections"). Claimant filed responses to the objections in October 2005, January 2006 and February 2006, and with regard to such objections set forth various affirmative

---

[1] The Debtors sought to preserve the confidentiality of certain terms in several asbestos property damage settlements previously submitted to the Court. That relief is not sought here, however, in as much as the Settlement contains a provision that provides for confidentiality of its terms only until the filing of this Motion.

defenses. After various litigation proceedings relating to the Claims Objections, Debtors and Claimant engaged in extensive negotiations regarding final resolutions of the Claims. As a result of those lengthy negotiations, the parties reached the agreements memorialized in the Settlement, which liquidates and resolves all outstanding issues related to the Claims on the terms and conditions of the Settlement.

### The Settlement

6.  After good faith negotiations, the Debtors and the Claimant agreed on the terms and conditions of the Settlement, which represents compromises that are in the best interest of the estates. The salient terms of the Settlement are:[2]

- Subject to Court approval of the Settlement, and the Parties' respective rights of termination, the Settlement Amounts represent a final liquidation and allowance of the respective Claims. *See* Settlement, ¶ 1.

- For purposes of voting on a proposed Chapter 11 plan of reorganization or plan of liquidation, to the extent that the Claims as settled are eligible to vote, each Claim constitutes a separate allowed claim, and the amount of each Claim is the respective Settlement Amount of the Claim as indicated on Exhibit A to the Settlement. *See* Settlement, ¶ 1.[3]

- The Settlement is predicated on Grace's intention for the Settlement Amounts to be paid in full, in cash, without any deduction, proration, condition or offset, not later than 30 days after the Effective Date of the Chapter 11 plan, with such payment to made, as the case may be, by an asbestos trust (including a qualified settlement trust) established by the plan, the reorganized Debtors, or a paying agent designated or appointed under the plan. This treatment of the Claims, as further detailed in the Settlement, is defined in the Settlement as "Claimant's Recovery." *See* Settlement, ¶ 2.

- The Claims Objections asserted against Claimant are held in suspense, without prejudice, subject to termination of the Settlement, if ever, according to its terms. *See* Settlement, ¶ 4.

---

[2] This summary and the terms and conditions of the Settlement are qualified in their entirety by the actual terms and conditions of the Settlement, a copy of which is attached hereto as <u>Exhibit A</u>. Capitalized terms used in the summary but not defined therein have the meanings ascribed to them in the Settlement.

[3] The Settlement is without prejudice to the Claimant's right to seek a determination that it is entitled to vote the Claims on any particular Chapter 11 plan proposed in the bankruptcy case. *See* Settlement, ¶ 1.

- The Claimant and the Debtors release all asbestos-related claims against each other, but each specifically reserves claims and defenses relating to tax obligations of the Debtors to the Claimant, and refunds or credits that may be due or available to the Debtors. In addition, with the exceptions set forth in Paragraph 7 of the Settlement, the Debtors, on behalf of their bankruptcy estates, release all claims that could be asserted against the Claimant under Sections 542-553 of the Bankruptcy Code. *See* Settlement, ¶¶ 6-7.

- The Settlement will terminate if it is not ultimately approved by the Court, or either party exercises its right of termination. *See* Settlement, ¶ 14.

- Claimant may terminate the Settlement and reassert the Claims as presently filed as if the Settlement had never been entered into in the event that either: (a) the Chapter 11 plan ultimately confirmed in the Bankruptcy does not provide each Claimant with Claimant's Recovery; (b) the Bankruptcy is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code; (c) the Court approves the solicitation of acceptances of any Chapter 11 plan pursuant to Section 1125 of the Bankruptcy Code where (i) such plan does not provide Claimant with the Claimant's Recovery, *or* (ii) the Claimant reasonably concludes that such plan will not provide Claimant with the Claimant's Recovery; or (d) Debtors breach the Settlement. *See* Settlement, ¶ 15.

- The Debtors may terminate the Settlement in the event that (a) the Chapter 11 plan of reorganization ultimately confirmed in the Bankruptcy: (i) is not proposed, supported or otherwise endorsed by Grace, *and* (ii) provides Claimant with treatment of its Claims that is materially more favorable than the Claimant's Recovery; (b) the Court approves the solicitation of acceptances of any Chapter 11 plan pursuant to Section 1125 of the Bankruptcy Code where (i) the Debtors formally oppose or file an objection to confirmation of such plan, *and* (ii) the Debtors reasonably conclude that such plan will provide Claimant with treatment of the Claims that is materially more favorable than the Claimant's Recovery; or (c) Claimant breaches the Settlement. *See* Settlement, ¶ 16.

- If the Settlement is terminated according to its terms: (a) the Settlement thereupon will be null and void and have no further force and effect for any purpose (except as stated herein with respect to the survival of certain terms and rights of the Parties following termination), (b) the Settlement, its contents, and all negotiations and proceedings of any nature connected therewith shall be without prejudice to the rights of the Parties which accrued on or before April 15, 2007; (c) Claimant may take any and all actions in the Bankruptcy to allow and enforce the Claims (including the estimation or adjudication of the Claims in amounts greater than the Settlement Amounts), and Grace may renew its prosecution of the Claims Objections (or may prosecute an estimation proceeding respecting the Claims), in each case as if the Settlement never existed; and (d) the Settlement shall not constitute or be admissible as evidence in any respect, in any action or proceeding in the Bankruptcy or in any forum, of the allowable amount or of the maximum amount of the Claims. Upon termination of the Settlement, neither

Party shall be deemed in any way to have waived, released, compromised, discontinued, dismissed or otherwise settled any claims, rights, entitlements or defenses of any nature relating to the Claims or the Claims Objections as they existed on April 15, 2007. In any further litigation in the Bankruptcy between the Parties relating to the Claims or the Claims Objections, the Parties will confer regarding the necessary pre-trial procedures including, among other things, the resumption of discovery. *See* Settlement, ¶ 17.

- The Settlement (whether or not consummated), and any actions taken pursuant to the Settlement shall not be construed, offered or received by anyone for any purpose whatsoever, including, but not limited to:

  ➢ in an estimation proceeding under section 502(c) of the Bankruptcy Code,

  ➢ as, or deemed to be, evidence of a presumption, concession or an admission concerning, or as evidence of, any point of fact or law, of any alleged fault, wrongdoing or liability whatsoever, or of the truth of any allegations or statements made in the Claims Objections filed by the Debtors, responses filed by the Claimant, or in any other pleadings, papers or documents filed with respect to the Claims, any objections to the Claims, or any other claims asserted against Grace or objections thereto; or

  ➢ as, or deemed to be, a presumption, concession or admission by Grace, or as evidence, that Grace's products are to be found or have been identified as present in the Claimant's building or other facilities.

   However, as stated in the Settlement, the Debtors and the Claimant acknowledge that the Official Committee of Asbestos Property Damage Claimants and asbestos property damage claimants who have not settled all of their asbestos property damage claims against the Debtors have agreed to defer, and thus have reserved, the right to challenge the provisions in Paragraph 23 of the Settlement that do not allow for the Settlement to be used, construed, offered or received by any person or entity for any purpose whatsoever, including, but not limited to, an estimation proceeding under Section 502(c) of the Bankruptcy Code or in respect of confirmation of a Chapter 11 plan. Notwithstanding the deferral and reservation of rights by those persons or entities, the Debtors and the Claimant specifically reserve their respective rights to object to any such use, construction, offer or receipt by any person or entity. *See* Settlement, ¶ 23.

## Request for Approval of the Settlement

7. By this Motion, the Debtors seek authority, pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 9019(a), to enter into and perform the Settlement and thereby settle and resolve all issues pertaining to the Claim on the terms and conditions set forth in the Settlement.

8. As stated in the Settlement, Claimant is a governmental unit which, in turn, is subject to certain "open records" statutory requirements and/or administrative procedures respecting approval of the Settlement. The Debtors understand from Claimant that all such procedures and requirements have been completed and fulfilled, such that Claimant will be able to perform the Settlement according to its terms upon approval by this Court.

### A.    Bankruptcy Rule 9019(a)

9. Bankruptcy Rule 9019(a) provides, in relevant part, that: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Compromises and settlements are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)).

10. The standard for approval of a settlement is whether the settlement is in the best interests of the estate. In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997); In re Genesis Health Ventures, Inc., 266 B.R. 591, 620 (Bankr. D. Del. 2001). The Third Circuit has adopted a balancing test of four enumerated factors that the Court should consider in determining whether to approve a particular compromise or settlement: (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors. In re Martin, 91 F.3d 389, 393 (3rd Cir. 1996). These factors apply in considering

the settlement of claims against the debtor's estate as well as claims held by the estate. In re Nutraquest, Inc., 434 F.3d 639, 644 (3d Cir. 2006) ("[Objector's] primary argument is that Martin is only useful when analyzing a settlement of a claim belonging to the debtor, not a claim against the debtor. We disagree.").

11.     In determining if a compromise or settlement is in the best interests of the estate, bankruptcy courts defer to the debtor's business judgment and approve the settlement as long as it falls above the lowest point in the range of reasonableness. In re Key3Media Group, Inc., 336 B.R. 87, 93 (Bankr. D. Del. 2005); In re Eastwind, 303 B.R. 743, 750 (Bankr. E.D. Pa. 2004); In re Neshaminy Office Building Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986). The rationale for deference to the debtor's business judgment is, as formulated by Third Circuit; "[t]o minimize litigation and expedite the administration of a bankruptcy estate, [because] '[c]ompromises are favored in bankruptcy.'" In re Martin, 91 F.3d at 393 (quoting 9 Collier on Bankruptcy 9019.03[1] (15th ed. 1993)).

**B.     The Settlement is in the Best Interests of the Estate**

12.     The Martin standards are met in this case. Accordingly, the Court should approve the Settlement as being in the best interests of the estate.

**a.     Probability of Success**

13.     The Debtors believe that they have meritorious defenses that could result in disallowance or reduction of some or all of the Claims if they were adjudicated. However, litigation always involves risks and, despite the Debtors' recent success in having asbestos property damage claims (the "PD Claims") disallowed, expunged or significantly reduced, there is the possibility that adjudicating the Claims would result in decisions adverse to the Debtors, and allowance of the Claims in amounts significantly greater than the Settled Amount.

14. Additionally, a contested adjudication of the Claims would involve a large number of complicated legal and factual issues. The Claimant would strenuously contest each issue, thereby making the final outcome uncertain and unpredictable.

### b. **Complexity and Expense of Litigation**

15. Litigation surrounding PD Claims tends to be complex and driven by a "war of experts" that is costly and lengthy. Litigating the Claims would inevitably involve a variety of disputes regarding both the applicable legal standards and the factual issues, at considerable expense to the parties and with a substantial likelihood of an appeal by either party from any determination by this Court.

16. Indeed, the complex legal issues involving property damage claims have already required extensive motion practice and discovery in these cases. Certain factual issues require extensive discovery that has been costly and time consuming. Such issues include Claimant's product identification evidence, expert evaluation of the alleged hazards, and Daubert hearings on expert testimony.

17. Prior to entering into the Settlement, Claimant and Grace conducted some discovery and investigation into the facts of the Claims and the Claims Objections. Grace has had an opportunity to review, analyze and assess the Claims, and Claimant has provided Grace with information and documents regarding the Claims. Although Claimant contends, and Grace denies, that the monetary value of the Claims, separately and/or collectively, far exceeds the Settlement Amounts, separately and/or collectively, Grace recognizes that the aggregate allowed amount of the Claims, if liquidated by contested proceedings before the Bankruptcy Court, could significantly exceed the Settlement Amount.

18. Additionally, litigating the Claims would further burden the resources of the Court, the Debtors and various creditors, and could potentially result in delays in the plan solicitation and confirmation processes, as well as additional, costly legal proceedings on appeal or in further Bankruptcy Court estimation or adjudication proceedings.

### c.   Paramount Interests of the Creditors

19. The resolution of the Claims is, as the Court knows, part of an ongoing effort by the Debtors either to settle or disallow PD Claims and thereby to remove a contentious body of claimants from the reorganization. Dealing with all of those claims, either by dismissal, adjudicated liquidation, or settlement, is necessary to complete the reorganization and will assist the Debtors and the Court in concentrating on other critical issues on the path towards confirmation of a Chapter 11 plan. Therefore, settling the Claim is in the interest of all creditors.

20. In light of the Debtors' experience in litigating and resolving PD Claims, the Settlement is fair and reasonable and in the estates' best interests, given the expected litigation costs, the opportunity to move the reorganization forward, and the risks that the Claims would or would not be disallowed if adjudicated. For these reasons, the Settlement should be approved.

### Conclusion

21. The Settlement was negotiated in good faith. In the Debtors' business judgment, the Settlement is a fair and full resolution of the Claims on the terms and conditions of the parties' agreement. Therefore, the Settlement should be approved as being in the best interests of the estates.

### Notice

22. A copy of this Motion has been provided to: (i) the U.S. Trustee; (ii) counsel to each of the official creditors' committees in these chapter 11 cases and the Future

Claimants Representative; (iii) counsel to the Claimants; (iv) counsel for all holders of PD Claims represented by counsel; (v) counsel to the Debtors' postpetition lenders; and (vi) all parties that have requested special notice pursuant to Bankruptcy Rule 2002.

23. No previous motion for the relief sought herein with respect to the Claimant has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto as Exhibit 2, approving the terms of the Settlement.

Dated: September 17, 2007

KIRKLAND & ELLIS LLP
David M. Bernick
Janet S. Baer
Lisa G. Esayian
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

and

PACHULSKI STANG ZIEHL & JONES LLP

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession