UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE


IN RE:                          . Case No. 01-1139 (JKF)
                                .
                                .
W.R. GRACE & CO.,               .
                                . 824 Market Street
                                . Wilmington, Delaware  19801
                                .
                Debtor.   .
                                . September 24, 2007
. . . . . . . . . . . . . . . . 2:16 p.m.


TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:            Kirkland & Ellis, LLP
                           By:  JANET BAER, ESQ.
                                LISA ESAYIAN, ESQ.
                                DAVID M. BERNICK, P.C., ESQ.
                                BARBARA HARDING, ESQ.
                                DAVID MENDELSON, ESQ.
                                ELLEN AHERN, ESQ.
                           Aon Center
                           200 East Randolph Drive
                           Chicago, IL  60601

                           Pachulski, Stang, Ziehl, Young,
                           Jones & Weintraub, P.C.
                           By:  JAMES E. O'NEILL, ESQ.
                           919 Market Street
                           17th Floor
                           Wilmington, DE  19899

Audio Operator:            Al Lugano

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

**APPEARANCES** (Cont'd.):

For the Debtors:                    Kirkland & Ellis, LLP
                                   By:  AMANDA BASTA, ESQ.
                                   655 15th Street, N.W.
                                   Suite 1500
                                   Washington, DC  20005

                                   Kirkland & Ellis, LLP
                                   By:  LORI SINANYAN, ESQ.
                                   777 South Figueroa Street
                                   Los Angeles, CA  90017

                                   Kirkland & Ellis, LLP
                                   By:  THEODORE FREEDMAN, ESQ.
                                   Citigroup Center
                                   153 East 53rd Street
                                   New York, NY  10022

                                   Forman, Perry, Watkins, Krutz
                                   & Tardy LLP
                                   By:  MARCY B. CROFT, ESQ.
                                   200 South Lamar Street, St. 100
                                   Jackson, Mississippi  39201

Unsecured Creditors'               Stroock & Stroock & Lavan, LLP
Committee:                         By:  ARLENE KRIEGER, ESQ.
                                   180 Maiden Lane
                                   New York, NY  10048-4982

For Equity Committee:              Kramer, Levin, Naftalis & Frankel
                                   By: GARY BECKER, ESQ.
                                   1177 Avenue of the Americas
                                   New York, NY  10036

For David T. Austern,              Phillips, Goldman & Spence, P.A.
Future Claimants Rep:              By: JOHN C. PHILLIPS, ESQ.
                                   1200 North Broom Street
                                   Wilmington, DE  19806

For Asbestos Creditors'            Caplin & Drysdale, Chartered
                                   By: PETER LOCKWOOD, ESQ.
                                   One Thomas Circle, NW
                                   Washington, DC  20005

                                   Campbell & Levine, LLC
                                   By:  MARK T. HURFORD, ESQ.
                                   800 N. King Street
                                   Suite 300
                                   Wilmington, DE  19801

**APPEARANCES** (Cont'd):

```
For Official Committee of      Bilzin Sumberg Baena Price
Property Damage Claimants:       & Axelrod LLP
                               By:  SCOTT L. BAENA, ESQ.
                                    JAY M. SAKALO, ESQ.
                               Wachovia Financial Center
                               200 South Biscayne Boulevard
                               Suite 2500
                               Miami, FL  33131

For Reaud, Morgan & Quinn      Stutzman, Bromberg, Esserman,
and ELG:                         & Plifka, PC
                               By:  SANDER L. ESSERMAN, ESQ.
                                    VAN J. HOOKER, ESQ.
                                    DAVID PARSONS, ESQ.
                               2323 Bryan Street, Suite 2200
                               Dallas, TX  75201

For Ad Hoc Committee           Weil, Gotshal & Manges, LLP
of Equity Security-Holders:    By:  JUDY G. Z. LIU, ESQ.
                                    M. JARRAD WRIGHT, ESQ.
                                    DAVID HICKERSON, ESQ.
                               1300 Eye Street, NW, Suite 900
                               Washington, DC 20005

For the FAI Claimants:         The Scott Law Group
                               By:  DARRELL SCOTT, ESQ.
                               2712 Middleburg Dr.
                               P. O. Box 2665
                               Columbia, SC 29206

For National Union Fire        Zeichner Ellman & Krause LLP
Company:                       By:  MICHAEL S. DAVIS, ESQ.
                                    ROBERT GUTTMANN, ESQ.
                               575 Lexington Avenue
                               New York, NY  10022

For Official Committee of      Ferry, Joseph & Pearce, P.A.
Asbestos Property Damage       By:  THEODORE J. TACCONELLI, ESQ.
Claimants:                     824 Market Street
                               Suite 904
                               P.O. Box 1351
                               Wilmington, DE  19899

                               Scott Law Group
                               By: DARRELL J. SCOTT, ESQ.
                               Santa Rosa, CA
```

**APPEARANCES** (Cont'd):

| | |
|---|---|
| For Ad Hoc Committee of Equity Security Holders: | The Bayard Firm<br>By:  NEIL B. GLASSMAN, ESQ.<br>     STEVEN M. YODER, ESQ.<br>222 Delaware Avenue, Suite 900<br>P.O. Box 25130<br>Wilmington, DE  19899 |
| For David T. Austern, Future Claimants Rep: | Phillips, Goldman & Spence, P.A.<br>By:  RICHARD Y. WYRON, JR., ESQ.<br>     JOHN PHILLIPS, ESQ.<br>     ALEX VENEGAS, ESQ.<br>1200 North Broom Street<br>Wilmington, DE  19806 |
| For Future Claimants Rep: | Orrick, Herrington & Sutcliffe<br>By:  RAYMOND G. MULLADY, JR. ESQ.<br>     DEBRA FELDER, ESQ.<br>     JOHN ANSBRO, ESQ.<br>3050 K Street, NW<br>Washington, DC  20007 |
| For Libby Claimants: | Landis, Rath & Cobb, LLP<br>By:  KERRI K. MUMFORD, ESQ. |
| For Fireman's Fund Insurance Company: | Stevens & Lee, P.C.<br>By:  DAVID R. BEANE, ESQ.<br>1107 North Market St., 7th Floor<br>Wilmington, DE  19801 |
| For Hartley & O'Brien, Luckey & Millins: | Heiman, Gouge & Kaufman, LLP<br>By:  SUSAN E. KAUFMAN, ESQ. |
| For Latigo Partners: | Latigo Partners<br>By:  STEPHEN BLAUNER, ESQ. |
| For Royal Insurance: | Wilson, Elser, Moskowitz Edelman & Dicker, LLP<br>By:  SARAH J. EDWARDS, ESQ.<br>150 E. 42nd Street<br>New York, NY  10017-5639 |
| For Property Damage Claimants: | Speights & Runyan<br>By:  DANIEL A. SPEIGHTS, ESQ.<br>     ALAN RUNYAN, ESQ.<br>     MARION FAIREY, ESQ.<br>200 Jackson Avenue East<br>Hampton, SC  29924 |

**APPEARANCES** (Cont'd):

| | |
|---|---|
| Roman Catholic Church Archdiocese of New Orleans: | Dies, Henderson & Carona<br>By:  MARTIN DIES, ESQ.<br>1009 Green Avenue<br>Orange, TX  77630 |
| For Tennenbaum Capital: | Tennenbaum Capital Partners, LLC<br>By:  STEPHEN MOYER, ESQ. |
| For Federal Insurance Co.: | Cozen O'Connor<br>By:  DAVID J. LIEBMAN, ESQ.<br>     JACOB C. COHN, ESQ.<br>1900 Market Street<br>Philadelphia, PA  19103 |
| For Linden Advisors, LP: | Linden Advisors, LP<br>By:  CRAIG GILBERG |
| For Everest Reinsurance Co. & McKinley Ins. Co.: | Crowell & Moring, LLP<br>By:  MARK D. PLVEIN, ESQ.<br>     LESLIE A. EPLEY, ESQ.<br>1001 Pennsylvania Avenue, NW<br>Washington, DC  20004 |
| For Everest Reinsurance Co. & McKinley Ins. Co.: | Marks, O'Neill, O'Brien &<br>  Courtney, P.C.<br>By:  BRIAN KASPRZAK, ESQ.<br>913 North Market St., Suite 800<br>Wilmington, DE  19801 |
| For Halcyon Asset Management, LLC: | Halcyon Asset Management, LLC<br>By:  OSCAR MOCKRIDGE, ESQ. |
| Co-Counsel to Libby Claimants: | Cohn, Whitesell & Goldberg, LLP<br>By:  CHRISTOPHER CANDON, ESQ.<br>101 Arch Street<br>Boston, MA  02110 |
| For the State of Montana: | Monzack and Monaco, P.A.<br>By:  FRANCIS MONACO, ESQ.<br>1201 North Orange St., Suite 400<br>P.O. Box 2031<br>Wilmington, DE  19899 |

**APPEARANCES** (Cont'd):

| | |
|---|---|
| For Grace Certain Cancer Claimants: | Montgomery, McCracken, Walker & Rhoads, LLP<br>By:  NOEL C. BURNHAM, ESQ.<br>     NATALIE RAMSEY, ESQ.<br>300 Delaware Avenue, Suite 750<br>Wilmington, DE  19801-1607 |
| For Asbestos Plaintiffs: | Wallace & Graham, PA<br>By:  WILLIAM MARC GRAHAM, ESQ.<br>North Carolina |
| For ACE Insurance Co.: | White & Williams, LLP<br>By:  MARC S. CASARINO, ESQ.<br>824 N. Market Street, Suite 902<br>P.O. Box 709<br>Wilmington, DE  19899-0709 |
| For Continental Casualty: | Ford, Marrin, Esposito, Witmeyer & Gleser, LLP<br>By:  ELIZABETH DeCRISTOFARO, ESQ.<br>Wall Street Plaza, 23rd Floor<br>New York, NY  10005-1875 |
| U.S. Trustee: | Office of the U.S. Trustee<br>By:  DAVID M. KLAUDER, ESQ.<br>     MITCHELL HAUSMAN, ESQ.<br>601 Walnut Street<br>Room 950W<br>Philadelphia, PA  19106 |
| For Claimants: | Goldberg, Perksy & White PC<br>By:  MARK MEYER, ESQ.<br>1030 Fifth Avenue<br>Pittsburgh, PA  15219 |
| For PD Claimants: | Richardson Patrick Westbrook & Brickman, LLC<br>By:  EDWARD WESTBROOK, ESQ.<br>1037 Chuck Dawley Blvd., Bldg. A<br>Mount Pleasant, SC  29464 |
| For George & Sipes: | George & Sipes<br>By:  KATHLEEN FARINAS, ESQ.<br>156 East Market Street, Suite 600<br>Indianapolis, IN  46204 |

**APPEARANCES** (Cont'd):

Official Committee of            Duane Morris, LLP
Unsecured Creditors:             By:  MICHAEL R. LASTOWSKI, ESQ.
                                 1100 North Market St., Suite 1200
                                 Wilmington, DE  19801-1246

For London Market Companies:     Mendes & Mount, LLP
                                 By:  ALEXANDER MUELLER, ESQ.
                                 750 Seventh Avenue
                                 New York, NY  10019-6829

For Asbestos Claimants           Wellborn Houston, LLP
& Wellborn Houston, LLP:         By:  PAUL L. SADLER, ESQ.
                                 300 West Main
                                 P.O. Box 1109
                                 Henderson, TX  75653-1109

For Campbell, Cherry,            Frank/Gecker, LLP
Harrison, Davis, Dove:           JOSEPH D. FRANK, ESQ.
                                 325 N. LaSalle, Suite 625
                                 Chicago, IL  60610

For Christopher Grell:           Law Office of Christopher Grell
                                 By:  RICHARD F. RESCHO, ESQ.
                                 360 22nd Street, Suite 320
                                 Oakland, CA  94612

For Asbestos Property Damage
Claimants:                       The Brandi Law Firm
                                 By:  TERENCE D. EDWARDS, ESQ.
                                 44 Montgomery Street, Ste. 1050
                                 San Francisco, CA  94104

                                 Bilzin Sumberg Baena Price
                                 & Axelrod LLP
                                 By:  MATTHEW I. KRAMER, ESQ.
                                 Wachovia Financial Center
                                 200 South Biscayne Boulevard
                                 Suite 2500
                                 Miami, FL  33131

                                 Anderson Kill & Olick, P.C.
                                 By:  ROBERT M. HORKOVICH, ESQ.
                                 1251 Avenue of the Americas
                                 New York, NY  10020

**APPEARANCES** (Cont'd):

For Asbestos Property Damage
Claimants:                        Pryor Cashman Sherman & Flynn LLP
                                  By: RICHARD LEVY, ESQ.
                                  410 Park Avenue
                                  New York, NY  10022


For Prudential Ins. Co.           Riker, Danzig, Scherer, Hyland
                                  & Perretti, LLP
                                  By: CURTIS PLAZA, ESQ.
                                  One Speedwell Avenue
                                  P.O. Box 1981
                                  Morristown, NJ  07962


For State of California:          Hahn & Hessen LLP
                                  By:  STEVEN MANDELSBERG, ESQ.
                                  488 Madison Avenue
                                  14th and 15th Floor
                                  New York, NY  10022


For CNA Insurance:                Goodwin Proctor LLP
                                  By:  DANIEL M. GLOSBAND, ESQ.
                                  Exchange Place
                                  Boston, MA  02109


For Travelers Insurance Co.       Simpson, Thacher & Bartlett, LLP
                                  By:  SUNG CHOI, ESQ.
                                  425 Lexington Avenue
                                  New York, NY  10017


For Allstate Insurance Co.:       Cuyler Burk LLP
                                  By:  ANDREW K. CRAIG, ESQ.
                                  Four Century Drive
                                  Parsippany, NJ  07054


For Scotts Company:               Vorys, Sater, Seymour and Pease
                                  LLP
                                  By:  TIFFANY COBB, ESQ.
                                  52 East Gay Street
                                  P.O. Box 1008
                                  Columbus, OH  43216


For Pittsburgh Corning:           Reed Smith, LLP
                                  By:  JAMES J. RESTIVO, JR., ESQ.
                                       DAVID ZIEGLER, ESQ.
                                       DOUGLAS CAMERON, ESQ.
                                  435 Sixth Avenue
                                  Pittsburgh, PA  15219

1            THE COURT:  Good afternoon, please be seated.  This

2    is the matter of W.R. Grace, Bankruptcy Number 01-1139.  The

3    participants I have listed by phone Chelsea Clinton, Andrew

4    Hain, Sung Choi, Sean Walsh, Martin Dies, Guy Baron, Walter

5    Slocombe, Daniel Speights, Arlene Krieger, Warren Smith, Edward

6    Westbrook, Alan Runyan, Michael Davis, Robert Guttmann, Tiffany

7    Cobb, John Phillips, David Ziegler, Darrell Scott, Jay Sakalo,

8    Andrew Craig, Barbara Hardin, David Beane, Christopher Candon,

9    Marion Fairey, John Ansbro, John O'Connell, Richard Wyron,

10   Jonathan Brownstein, Paul Norris, Ellen Ahern, Amanda Basta,

11   Mark Shelnitz, Marti Murray, Jason Solganick, Curtis Plaza,

12   Douglas Cameron, Banjamin Blaustein, Steven Mandelsberg,

13   Matthew Kramer, Tim McArdle, Robert Horkovich, Beau Harbour,

14   Jarrad Wright, Theodore Freedman. David Hickerson, Igor

15   Volshteyn, Alex Mueller, Janet Baer, David Bernick, Van Hooker,

16   Sander Esserman, David Parsons, James Restivo, Andrew Chan,

17   Daniel Chandra, Debra Felder, Richard Levy, Peter Shawn,

18   Elizabeth DeCristofaro, Terence Edwards, John Ku, Lori Sinayan.

19           MR. LOCKWOOD:  Your Honor, this is Peter Lockwood.

20   I'm sitting in on this call in lieu of Walter Slocombe.

21           THE COURT:  All right.

22           MR. MULLADY:  Good afternoon, Your Honor, this is Ray

23   Mullady for the FCR.  I'm also listening in on the call.

24           THE COURT:  All right

25           MR. BECKER:  Good afternoon, Your Honor, this is Gary

1  Becker for the Equity Committee.

2          MR. GUTTMANN:  Good afternoon, Your Honor, this is

3  Robert Guttmann, sitting on behalf of Michael Davis for

4  National Union.

5          THE COURT:  Okay.  I'll take entries in court.

6          MS. BAER:  Good afternoon, Your Honor, Janet Baer on

7  behalf of W.R. Grace.

8          MR. O'NEILL:  Good afternoon, Your Honor, James

9  O'Neill on behalf of Grace.

10          MR. KLAUDER:  Good afternoon, Your Honor, David

11  Klauder and Mitchell Hausman for the United States Trustee.

12          MR. HURFORD:  Good afternoon, Your Honor, Mark

13  Hurford, Campbell & Levine for the ACC.

14          MR. TACCONELLI:  Good afternoon, Your Honor, Timothy

15  Tacconelli for the Property Damage Committee.

16          MR. GLOSBAND:  Good afternoon, Your Honor, Daniel

17  Glosband, Goodwin Proctor for CNA Insurance.

18          MR. LASTOWSKI:  Good afternoon, Your Honor, Michael

19  Lastowski here today for the Official Committee of Unsecured

20  Creditors.

21          THE COURT:  Ms. Baer.

22          MS. BAER:  Thank you, Your Honor.  Today, Your Honor,

23  we actually have a pretty quick agenda of contested matters,

24  and so I'm going to take them, unusually in order this time.

25          Your Honor, the first four matters on the agenda are

1  claims matters.  The first two of those are being continued,

2  the third one by this order is being resolved and the fourth

3  one is being continued, and I'll just hand up all four of those

4  claims orders.

5          THE COURT:  All right.  Thank you.  I will sign these

6  after court, Ms. Baer, but they will be signed today.

7          MS. BAER:  Thank you, Your Honor.  Your Honor, the

8  fifth matter on the agenda is the application of Forman Perry

9  for compensation.  There have been -- there's a report by

10 Warren Smith, and there have been some responses to the Warren

11 Smith application.  And I'm going to turn the podium over to

12 Marcy Croft from Forman Perry who will be addressing this

13 matter.

14         THE COURT:  All right, thank you.  Good afternoon.

15         MS. CROFT:  Good afternoon, Your Honor, Marcy Croft

16 with Forman Perry.  As Ms. Baer said, we're here on our

17 response to the final report of the fee auditor with respect to

18 the fee application of Forman Perry for the 24th interim

19 period.

20         First, we appreciate the hard work of the fee auditor

21 on the application and the work he put into his final report.

22 Although we disagree with some of the fee auditor's

23 assessments, we respectfully accept the recommended reductions

24 with only one major exception.

25         As the Court is aware, Forman Perry was retained by

1  the Debtors to perform three basic but essential tasks that all

2  relate to the discovery of third party screening companies and

3  screening doctors that would have screened and diagnosed the

4  Debtor's asbestos personal injury claimants.  We were retained

5  to do three basic things, identify and obtain the documents

6  from the screening companies and the screening doctors, analyze

7  those documents and then determine whether there were any

8  indicators of suspect activity or patterns and practice that

9  could be used by the Debtors in their estimation hearing.

10         Based on that mandate, we issued over 30 subpoenas to

11  screening companies and screening doctors on behalf of the

12  Debtors and have collected normalized and continue to analyze

13  over 1.5 million documents on behalf of the Debtors from

14  different screening companies and doctors in six different

15  states.  These documents have been provided to the parties and

16  used by the Debtors to depose over 18 witnesses and used by the

17  experts to prepare for the estimation process.

18         I think I can safely say that no one disputes that

19  Forman Perry has done the work for which it is asking to be

20  compensated.  Even the fee auditor noted the necessity of the

21  services we performed and the complicated nature and the

22  magnitude of the task that we faced.  So, the dispute before

23  the Court is really in how those services were described in our

24  fee application.

25         Not surprisingly, and rather appropriately,

1  repetitive time entries are often frowned upon by the Court, by

2  the fee auditor, by clients, by insurance companies and they

3  should be and that's typically in the case where a firm is

4  engaged in the general and broad representation of a client and

5  repetitive time entries in that instance are indications of

6  sloppy work or sloppy timekeeping.  And, they're often reduced

7  and rejected as is the case in the case law cited by the fee

8  auditor in his report to the Court.

9          Trying to apply that case law to Forman Perry in this

10  instance, however, is like trying to fit a square peg in a

11  round hole.   It just doesn't work.  Our representation of the

12  Debtors is extremely limited in scope.  We do three things.  We

13  collect the documents, we analyze the documents, we assist in

14  identifying any sort of activity or practices that may be

15  evidenced by the documents.  And that's it.  So, by the

16  inherent nature of our work, our time descriptions are going to

17  be repetitive and I'll give the Court an example.  Dr. Dominic

18  Gaziano, in Charleston, West Virginia, produced to the Debtors

19  over 300,000 documents in response to his subpoena.  It took

20  about eight weeks, we had four or five paralegals there.  They

21  copied and collected about 40,000 documents per week, which is

22  pretty fast for that few amount of people.  Each day they were

23  there, they were there all day, they were working on the

24  document production and each one of them would have described

25  their time as attend and participate in the document production

1  of third party screening doctor in Charleston, West Virginia.

2  And so -- and each of them were there, for each of those days.

3  So, on the Forman Perry fee application, the fee auditor would

4  see four or five entries with that exact same time description

5  for each of those days during that eight week period.

6        And while the fee auditor noted that any one of those

7  time entries take alone is sufficient, it was the repetitive

8  nature of the time entries, the fact that they were repeated

9  over and over that caused him to suggest a 25 percent reduction

10 in the fees.

11        The same issue holds true for the analysis of the

12 documents, when we get them back in the office.  Obviously, we

13 object to the suggestion that any of those fees should be

14 reduced.  We were there, we did the work, we did it well, we

15 did it timely, we did it efficiently and while we understand

16 that the fee auditor is limited in his review of our bills, I

17 guess based on the general rules applied and the general

18 representation for larger firms that do all kinds of things, we

19 think with respect to our situation, that this repetitive

20 nature of our time entries, they shouldn't be rejected just

21 because they are repetitive.  So, we're asking the Court today

22 for guidance, for us and for the fee auditor, and it simply

23 can't be that we're asked, we're retained to do repetitive work

24 and then told we can't be paid because we've done repetitive

25 work.

1          So, we are asking the Court to deny the

2    recommendation of the fee auditor as it relates to the types of

3    entries that we're talking about, which amounts to about a

4    $373,000 reduction and to allow Forman Perry the full amount of

5    the fees that we have requested for this work.

6          THE COURT:  Mr. Smith?

7          MR. SMITH:  Thank you, Your Honor.  Well, Your Honor,

8    I have no quarrel with the assertion that the work done by

9    Forman Perry is different than the work done by others, but the

10   fact remains that the compensation is based on the same sort of

11   compensation as others.  In other words, they are seeking to be

12   paid on an hourly basis but are seeking to basically be freed

13   of the constraints that are imposed on other parties, to

14   provide a detailed description of the services performed so

15   that third parties, the U.S. Trustee's Office and myself, can

16   discern whether or not there's been over staffing or other

17   problems associated with these time entries.

18          I don't have any grudge against Forman Perry, but it

19   seems to me that they are making the arguments that yes, they

20   should be a paid on the hourly basis, but because they are

21   different, they need not be constrained by the specificity of

22   time descriptions that apply to all other professionals.

23          THE COURT:  Well, I guess the question is based on

24   the nature of the work they're describing, what type of

25   specificity you think might be able to be added, Mr. Smith,

1  because I think this is an issue that, perhaps, is just one

2  matter that ought to be able to be worked out.  If it is not an

3  objection about the fact that the services were, in fact,

4  performed but it is really something, you know, I sometimes

5  have trouble, for example, reviewing tax accountants work

6  because what they say is, I reviewed records for eight hours a

7  day.  Well, that's probably what they did for eight hours a day

8  but that doesn't help much when you're looking at a fee

9  application and you don't know exactly what they're doing

10  reviewing records all day, but you know sometimes I review

11  pleadings for eight hours a day and getting ready for omnibus

12  hearings.  Sometimes I review pleadings for 16 hours a day, for

13  days on end, that I'm not exactly sure what more specificity

14  than that I could put in, except to say I reviewed a particular

15  pleasing for an hour, and another particular pleading for two

16  hours.  So, what is it specifically that you think would be

17  helpful?

18          MR. SMITH:  Well, that would be what the Court just

19  suggested, would be helpful, Your Honor.  We don't know of

20  these professionals were performing their job efficiently

21  because we don't know whether they're looking at one document

22  the whole day, or whether or not how many -- for example, if

23  they say reviewed 10,000 documents in one day, we could say,

24  wow, that's an efficient professional.  If they say, well, we

25  took a -- I took a day to -- I was reading very fast, I took a

1 day to read a document, you can take a look at that and say

2 that professional is not very efficient.  Some more guidance

3 than what is given here, I think would be very useful, Your

4 Honor.

5      THE COURT:  Okay.  Well, I'm snot sure at this point

6 in time we can go back and have people assess specifically what

7 they're doing, but I don't think there are any attorney/client

8 issues involved if what you're doing is analyzing documents

9 that are coming in from third parties so, perhaps, additional

10 description in terms of the types of documents that are being

11 reviewed, such as, you know, medical records, work histories,

12 whatever it is, that they are and I guess numbers of pages.

13      MS. CROFT:  And we did in your response, Your Honor,

14 try to provide the number of unique sort of indicators that we

15 look at by the timekeeper, by day, by hour, so in our response

16 we tried to provide some additional information to give the fee

17 auditor something else to base his assessment on and we're

18 happy to do that.  Unfortunately, there are thousands of types

19 of documents that we collect so you know, in some -- if you get

20 too descriptive, it would take more time to write down their

21 time than it would to look at the documents, especially like in

22 the case of Dr. Gaziano, we've got 300,000 documents.  I just

23 need some guidance as to how he wants us to describe that,

24 other than, we're collecting, you know, a team of five people

25 are collecting 300,000 documents.

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  Well, I think maybe be best thing for me

2    to do is suggest that the two of you have, you know, a 20

3    minute conversation.  I think in a 20 minute conversation you

4    can probably come up with categories of documents that would

5    satisfy that inquiry.  It's one thing, perhaps, to review, if

6    you're actually reviewing documents, it's one thing to take a

7    look at a medical history that might take a whole longer than

8    it does, you know, an employment history where somebody worked

9    at a particular plant for two years, you can read that in less

10   time than it takes you to say it out loud, but reading medical

11   records, is a lot more complex.  So, perhaps you and Mr. Smith

12   can come up with, you know, half a dozen categories.  I'm not

13   prejudging the number of categories, any number of categories

14   that would make sense so that you can fit them in and so that

15   within that number of categories, Mr. Smith may be able to

16   determine whether what he said earlier, looking at three

17   documents in an hour is reasonable as opposed to look at 10,000

18   documents in an hour being reasonable.  So, why don't I propose

19   that, Mr. Smith, would that be satisfactory to you?

20          MR. SMITH:  Yes, I think, Your Honor, we might be

21   able to come up with something that would be workable for both

22   sides.

23          THE COURT:  All right.  I don't think anybody other

24   than Mr. Smith has raised this objection to this fee

25   application, is that correct?

1          MR. SMITH:  Well, Your Honor, there was a prior

2   objection by the U.S. Trustee's Office.  I don't know if that

3   objection is still outstanding or not.

4          THE COURT:  Okay.  I'M not sure.  Mr. Klauder?

5          MR. KLAUDER:  That's been resolved.

6          THE COURT:  It was.  It was not the same type of

7   objection.

8          MR. KLAUDER:  It was not, no.

9          THE COURT:  Okay.  All right.  Mr. Smith, I think

10  based on the fact that this is somewhat unique in the fee

11  application process, I'm going to permit the fees for this

12  round, but I will expect more detail in the next.  And if there

13  is no more detail, that will permit you to do you job in a

14  better and more, I guess, easy fashion the next time, then I

15  will impose a reduction the next round.  So, I'll permit the

16  fees this time without a reduction, based on the fact that

17  you're going to get together and see how you can improve on

18  this process for the next round.

19          MS. CROFT:  Yes, Your Honor, thank you.

20          MR. SMITH:  Thank you, Your Honor.

21          THE COURT:  Okay.

22          MS. CROFT:  Your Honor, that's all I have, may we be

23  excused?

24          THE COURT:  Yes.  Anybody interested in just this

25  issue is excused.  That's the only objection to the fees?

1          MR. SMITH:  Yes, Your Honor.

2          MS. CROFT:  Yes, Your Honor.

3          THE COURT:  Okay.  Do you have an order?

4          MS. BAER:  Your Honor, I do have an order on the fees

5  and on this particular order it had the cut that Mr. Smith had

6  recommended for Forman Perry, so what I would suggest is, if

7  Your Honor would enter this order, we will then file a

8  subsequent or an additional order that gives Forman Perry the

9  additional 25 percent that Mr. Smith had recommended not be

10 paid.  That way all the other professionals will have an order

11 entered allowing their fees today.

12          THE COURT:  Don't we know that amount to just add it

13 in?

14          MR. SMITH:  Well, Your Honor, we had already --

15 excuse me, Your Honor, we had some additional reductions for

16 Forman Perry that apparently they have agreed to.

17          THE COURT:  Oh, that's right, so you'll still have to

18 work the number out.

19          MR. SMITH:  Yes, Your Honor.

20          MR. O'NEILL:  Your Honor, Mr. Smith knows the number

21 -- James O'Neill for the record.  Perhaps we could

22 interlineate the order if the number has been agreed upon.

23          THE COURT:  I'm not -- has it been agreed on, Mr.

24 Smith?  Do you know the exact number?  If you do I'll just have

25 the order changed now.  If not, them a supplemental one will

1 do.

2       MR. SMITH:  Well, Your Honor, we had also recommended

3 reduction for travel, let's see here, Your Honor.  We had

4 recommended a reduction of $705.49 in expenses for Forman

5 Perry, an additional reduction of $498.75 in fees, that I

6 believe Forman Perry did not object to.

7       MS. BAER:  That's correct, Your Honor.  What it turns

8 out is the way the order was drafted, it had a reduction -- it

9 had those reductions in it and those pertain and are still

10 appropriate and then it had the additional reduction of

11 $373,889.85, which was this 25 percent.  We can interlineate

12 that back in and that will, in fact,  give us the total amount.

13       THE COURT:  That's fine.

14       MS. BAER:  Then we will do that, Your Honor, and

15 before we're done today, we'll submit the order with the

16 interlineation.

17       THE COURT:  All right, that's fine.  If that's all

18 you have, Mr. Smith, and anyone else who is interested only in

19 fees, you're excused.  Thank you.

20       MR. SMITH:  Thank you, Your Honor.

21       MS. BAER:  Thank you, Your Honor.  That takes care of

22 agenda items five and six.  Agenda item seven, Your Honor, is

23 our motion to approve a settlement of the claim of BP Amoco.

24 Your Honor, certificate of no objection was filed on that, but

25 we have not yet seen an order entered.

1      THE COURT:  I actually had not had a chance to take a

2  look at that motion and that's the reason why.  Can you just

3  tell me what that settlement is?

4      MS. BAER:  I sure can.  Your Honor BP filed a claim

5  against the Grace Estate for approximately $4.3 million

6  dollars.  It relates to some work they had to do repairing

7  their premises due to a deterioration of the steel, having to

8  do with a certain MK product being on that steel.  It's a

9  products liability claim.  Grace has insurance of $10 million

10  dollars for these types of claims.  No asbestos is implicated,

11  whatsoever.

12      Almost the entire deductible of $5 million dollars,

13  prepetition was paid.  There was a small amount remaining that

14  had not yet been paid by Grace.  BP has agreed to reduce their

15  claim to $3.9 million dollars, which Grace is agreeable to.  In

16  fact, they had agreed to that number prepetition, but because

17  of the filing and implications of insurance, it never got done.

18      Of the $3.9 million dollars, Your Honor, most of it

19  is covered by insurance and, in fact, once the insurance is

20  paid by CNA, which relates to the next motion that's up before

21  you, there will simply be an unsecured claim of $211,246.10

22  against Grace.  That's the remaining Grace deductible owed on

23  the BP claim.

24      So, in other words, Your Honor, by this order, BP's

25  claim will be allowed in the amount of $3.9 million dollars,

1 and BP will agree that once it is paid by CNA, who has agreed

2 to pay the claim, CNA will be paying $3.6 million -- or

3 $3,688,754, then BP will amend its claim to be for $211,246

4 which is the remaining amount of the deductible.

5          THE COURT:  All right, that's fine.

6          MS. BAER:  I have an order, Your Honor.

7          THE COURT:  I'll take it.  Thank you.  All right,

8 that order is entered.

9          MS. BAER:  Thank you, Your Honor.  Your Honor, agenda

10 item eight is our motion to approve the settlement agreement

11 with CNA.  This is the agreement by which CNA and the Debtors

12 agree that CNA has a $5 million dollar policy limit left on

13 these types of claims.  CNA is agreeing that it will pay the

14 amount owing on the BP claim and it will have other amounts

15 that are reserved for payment of two other claims that have

16 been filed in this case that have not yet been allowed.  When

17 and if those claims are allowed in the amounts, we have

18 determined how much of the deductible is attributable to that

19 which will be an unsecured claims against the estate and how

20 much CNA will be paying.

21          This order, Your Honor, simply -- this order permits

22 that settlement agreement which is the settlement agreement

23 that outlines how CNA will be paying these claims.

24          THE COURT:  All right.  And I think there was a CNO

25 filed as to this one, too, correct?

1          MS. BAER:  Yes, there was, Your Honor.

2          THE COURT:  All right.  I'll take the order on that

3    one, too, please.  Thank you.  Okay.

4          MS. BAER:  Thank you, Your Honor.  Agenda item number

5    nine, Your Honor, is the Debtors motion to permit Morrison and

6    Forrester, one of its ordinary course professionals to file fee

7    applications in excess of the $50,000 per month limit on

8    ordinary course professionals when and if necessary.  They are

9    special tax counsel to the Debtor and have, in fact, exceeded

10   the amount of the $50,000 per month limit for a couple of

11   months and anticipate doing it, perhaps, for a few more because

12   of some litigation that they are involved in.  Your Honor, a

13   CNO was also filed on this motion.

14         THE COURT:  I did instruct staff to enter an order on

15   that one.  I don't know whether it's been done yet.  It will be

16   done today, but that one should hit the docket, so that one, I

17   don't want to take another order because I did instruct staff

18   to do so.  If it's not on the docket by tomorrow afternoon,

19   then the day after call chambers and we'll make sure that it's

20   done.

21         MS. BAER:  Thank you, Your Honor.  That takes us to

22   agenda item number ten, which is the Debtors motion for an

23   increase in the ordinary course professional cap.  The cap,

24   Your Honor, right now is at $800,000.  We're asking that it be

25   increased to $1.2 million.  We are not asking for an increase

1  in the $50,000 per month, the increase is necessary because

2  we've been in bankruptcy so long.

3        Your Honor, it also does one other thing and that's

4  that instead of each time a professional exceeds $50,000 a

5  month, filling a separate application.  By this order it says

6  when a professional exceeds $50,000 a month, they have to file

7  a fee application and they may do so.  So, it just makes it so

8  we don't have to file so much paper.

9        THE COURT:  That's fine.

10       MR. BAER:  And, Your Honor, I do have an order, a CNO

11 was filed in that, too, and I don't know if you've instructed

12 your staff.

13       THE COURT:  I have not.  I wanted to hear more about

14 this.  Thank you.  And I need just a second to get my notes

15 caught up here.  Okay, that order is signed, thank you.

16       MS. BAER:  Thank you, Your Honor.  Agenda item number

17 11 is the U.S. Trustee's motion to appoint an examiner with

18 respect to the Tersigni matter and I'll turn the matter over to

19 the U.S. Trustee.

20       MR. KLAUDER:  Good afternoon, Your Honor, David

21 Klauder for the United States Trustee.  I also want to

22 introduce Mitchell Hausman, who is a trial attorney in our

23 Newark, New Jersey office.  And Mr. Hausman has primary

24 attorney responsibilities for what I'll refer to as the New

25 Jersey asbestos cases.

1          THE COURT:  Thank you.

2          MR. KLAUDER:  Your Honor, before getting to the

3    substantive motion, I don't want to be too presumptuous, we did

4    file this on a shortened notice period.  We filed it on August

5    24th.  I don't believe that that order shortening notice was

6    entered.  I checked the docket again this morning and I did not

7    see that being ordered and I just wanted to bring that to Your

8    Honor's attention.

9          THE COURT:  Okay.  I will try to check and see what

10   happened. Let me make a note, Mr. Klauder, just a minute,

11   please.  Yes, it should be entered.  Okay.  If it hasn't been

12   entered today, Mr. Klauder, I'll try to make sure that it is.

13         MR. KLAUDER:  Okay.

14         THE COURT:  Okay, thank you.

15         MR. KLAUDER:  Thank you, Your Honor.  I'll turn to

16   the substantive motion, which as Ms. Baer indicated, was our

17   motion to appoint an examiner under Section 1104(c),

18   specifically related to the conduct of the former financial

19   adviser for the Asbestos Claimants Committee, L. Tersigni

20   Consulting, PC.

21         As the motion notes, there's been allegations of

22   fraudulent billing against the Tersigni firm.  What we are

23   intending to do by this motion and by this examiner concept is

24   to have an examiner investigate the billing conduct of

25   Tersigni.  The intent behind that motion is that the examiner

1  will ultimately determine what causes of action exist for the

2  Debtors and this estate.

3         As we noted in the motion, a small sample of the

4  billing records of Tersigni has revealed the potential for

5  pervasive, improper billing practices in many, if not all, of

6  the cases that Tersigni was involved in.  Therefore, we need

7  someone to delve into the matter on a much more detailed basis

8  and determine the impact caused by Tersigni's actions.

9         Your Honor, we're dealing with a professional of the

10  estate who very well may have violated its fiduciary obligation

11  to this estate and in duty of candor to the Court, these are

12  serious allegations that need to be investigated immediately.

13         THE COURT:  Well, then what took 17 months from the

14  time that the U.S. Trustee first found out about it until now?

15         MR. KLAUDER:  Well, Your Honor, unfortunately, I

16  can't comment on what happened with regard to any criminal

17  investigation that was or was not occurring, I can't comment

18  upon that, we're just looking at it on a civil basis.

19         THE COURT:  Criminal investigation doesn't stop a

20  civil investigation from going forward.  And I agree with you,

21  to the extent that there is a breach of fiduciary duty of this

22  nature, especially when this man was also a trustee for one of

23  the asbestos trusts not just a financial advisor to some of the

24  committees, this does need to be investigated immediately, but

25  immediately doesn't mean 17 months after you get word of the

1  fact that this conduct is going on.  This is really troubling.

2  This is a violation, I think, of the Department of Justice's

3  obligation to be the watch dog, which it likes to say that it

4  is, of the conduct of what's going on in the bankruptcy

5  community.  This is really troubling.

6         MR. KLAUDER:  Your Honor, once again, I can't comment

7  upon that, the criminal side, but we're looking at it now from

8  a civil side and this case and all the other cases, and what is

9  the best procedure to move forward and this is -- everybody

10 agrees we've got to do something here on the civil side to

11 determine the impact of what Tersigni's actions have bene.

12        THE COURT:  Have motions been filed in the other

13 cases?  I don't recall having seen any in any of the other

14 cases that I'm handling and I've got all of them.  In this

15 district and in -- I don't think he was appointed in the

16 Pittsburgh cases.  Maybe some.

17        MR. KLAUDER:  I think actually the Tersigni firm was

18 appointed.  The ACC's response is actually helpful in the sense

19 that it gives a breakdown of the pending and closed cases in

20 which Tersigni was retained and it does have the three Western

21 District of Pennsylvania cases as well.

22        We have a pending motion in the GI Holdings case up

23 in Newark, which will be heard, I believe in two weeks, and we

24 are intending to move forward with other motions immediately.

25 Your Honor, we brought this one on behalf -- in this case, to

1  get the issue in front of Your Honor, in this case and then

2  seeing that if we can get the appointment, the concept approved

3  by the Court, we then can move forward forthwith in the other

4  cases and we have a detailed plan to do that, to get motions

5  filed in the other cases immediately.  So, that is the

6  procedure going forward and the concept here, and to move

7  forward and determine what causes of action exist for not only

8  this estate but for the other estates that Tersigni was

9  involved in and determine the impact of the alleged billing

10 conduct by the Tersigni firm.

11         Your Honor, for this particular motion, there have

12 been no objections received.  The only actual response was by

13 the ACC, which was a support of the concept of an

14 investigation.  I'm not sure if they have any comments.  We've

15 also spoken to Debtors' counsel on the best way to handle this

16 going forward and will certainly be in consultation with them

17 as we move forward and determine if Your Honor signs the order

18 allowing us to appoint the examiner, how to best move forward

19 and consult with them and to do so going forth.

20         THE COURT:  Well, I think the committee's comment has

21 a little bit of merit, which is that to the extent there is

22 going to be an examiner, it probably ought to be one examiner

23 who is going to be taking a look at the same set of books and

24 records in all these estates, so that it can minimize the

25 expenses to all of the estates.  So, although I don't know why

1  we necessarily need an examiner if there's been a full scale

2  criminal investigation going on for 17 months, and the target

3  of that investigation is now deceased, I'm not sure why one arm

4  of the Department of Justice has to hold the records hostage

5  when the other arm of the Department of Justice needs them.

6  I've never heard of such a thing, so why can't the U.S. Trustee

7  go to you other counterpart in the Department of Justice and

8  get the records?  I mean, what's preventing that at this point?

9  This was a sole owner, correct?  Mr. Tersigni was the sole

10 owner of LTC.

11          MR. KLAUDER:  I believe so.

12          THE COURT:  That's what the allegation is.  So, I

13 mean, and he's dead, so nobody is going to be doing too much to

14 hurt him in any kind of capacity, so what's the big issue?  Why

15 can't -- to the extent that there's been 17 months of

16 investigation going on already, where are the records?  Why

17 can't they be obtained simply by, you know, calling your

18 counterpart at Justice and saying, I need the records.

19          Now, that may not be the means all and end all.  I

20 recognize that fact, but isn't that a good start, and how do

21 you even know if you need an examiner until you see what's

22 there?

23          MR. KLAUDER:  Your Honor, that's certainly

24 consideration.  Again, I don't want to sound evasive to your

25 questions, because you indicate some very good points.  Again,

1  I can't comment upon the criminal investigation on that side.

2         THE COURT:  Okay.  But well, why not?  Is there a

3  target still?  You're certainly permitted to say that, surely,

4  because the U.S. Attorney's Office, if it still has -- and if

5  it still has an investigation open, has to have a target.  And

6  surely if there is an investigation open, we ought to know

7  that, and if there is, that's a different position in this case

8  than if there isn't.  If they've shut down their investigation,

9  then why is the report of whoever the investigating officer was

10 not available, because the target is now deceased.

11        So it seems to me that that is a legitimate question

12 that all the parties in these cases have a right to know first,

13 because I don't know whether there is an examiner that's even

14 necessary.  And yes, I wholly agree that when the obligations

15 of the company exceed $5 million dollars and somebody asks for

16 an examiner, the Court has to put one in.  So, fine, we'll

17 create the expense to this estate, and we'll put an examiner

18 in, but that examiner is not going to have a single duty until

19 I find out what the duties are that that examiner is required

20 to undertake.  So, what's available to this entity, first?

21        MR. KLAUDER:  Well, Your Honor, I don't know.  Again,

22 I'm not really in a position to comment upon that today.  I

23 think that is certainly consideration we have to discuss.

24        THE COURT:  Well, then I think we need a continuance

25 of this motion till you are in a position or till you have

1  somebody here who is in a position to answer those questions

2  because I don't know what information this Court can possibly

3  base an order on until we know what's going on.

4         MR. KLAUDER:  Your Honor, can I have a moment to

5  consult with my colleagues on this?

6         THE COURT:  Sure.

7         MR. KLAUDER:  Thank you.

8                        (Pause)

9         THE COURT:  Mr. Klauder?

10        MR. KLAUDER:  Thank you, Your Honor.  Once again, I

11 cannot comment upon criminal investigation, whether there is or

12 is not a target.

13        THE COURT:  Well, is there a criminal investigation?

14 Let's start with that?

15        MR. KLAUDER:  Again, I cannot -- I'm not permitted to

16 comment about it.

17        THE COURT:  Well then bring somebody here who can

18 because if there is a criminal investigation, then I think

19 there is a different issue for this Court to figure out than if

20 there is not one.

21        MR. KLAUDER:  If I may, Your Honor, you indicated

22 that the threshold for appointing an examiner has been met

23 here.

24        THE COURT:  Sure.

25        MR. KLAUDER:  And because of that we would ask that

1  you order that we do the appointment --

2          THE COURT:  Fine, I'll order the appointment of an

3  examiner with absolutely not one single duty until I get the

4  other answers to these questions, because I don't know whether

5  an examiner has any function, whatsoever, until I have a clue

6  what's gone on for the past 17 months and I want to know the

7  answer to that question.  From the U.S. Trustee's Office's side

8  not from the criminal side.  From the U.S. Trustee's Office's

9  side.  You're a civil Department of Justice agency, not

10 criminal and you, your office, not you Mr. Klauder, your

11 office, has known about this since apparently April of 2006.

12 What's been going on?  You tell me you need an immediate

13 investigation.  Seventeen months has gone by.  What's happened?

14 I haven't had a request for an examiner, not in one of these

15 cases and I've confirmed multiple plans in that time, with Mr.

16 Tersigni having been paid and awarded final fees, without a

17 single comment by the U.S. Trustee in this whole time.

18         MR. KLAUDER:  Your Honor, again, there's a

19 distinction between the civil and criminal.

20         THE COURT:  I understand that.

21         MR. KLAUDER:  And on the civil side, it's -- there

22 was no -- again, I -- there's that distinction, I'll just leave

23 it at that, and Your Honor understands that and I won't harp on

24 that point, but as far as going on the other side, I can't

25 comment upon that and I've been instructed not to.

1        THE COURT:  I don't -- I'm not asking for any

2   comments about a criminal investigation.  My question was

3   directed to what the United States Trustee's Office does, which

4   is on the civil side.

5        My understanding from the pleadings, unless I'm

6   misreading the pleadings, and if I am then please straighten me

7   out because if I am, I have a serious misunderstanding of the

8   pleadings.  My understanding of the pleadings is, that

9   somewhere around April of 2006, the United States Trustee was

10  made aware of the fact that there may be this billing problem.

11  The United States Trustee's Office is charged, under the

12  bankruptcy code, with monitoring these estates, with taking a

13  look at fee applications, with reporting billing practices to

14  the Court, with watch dogging the cases, with supervising the

15  professionals, with asking the tough questions.  There is a fee

16  auditor in almost every one of these cases who is doing the

17  same thing.  I never heard word one from the U.S. Trustee, in

18  any of these cases, with respect to the fact that there may be

19  a billing problem.  I did in a couple of cases get from the

20  U.S. Trustee a request not to order fees for the Tersigni firm

21  without any explanation, except that there was an issue.  I

22  didn't push issue at this point in time.  There was nothing

23  about an investigation, nothing about billing practices,

24  nothing about potential fraud, nothing.  So, I assume that

25  since the U.S. Trustee's Office came in and said, please don't

1   award fees at least in a couple of cases, that there must have

2   been some U.S. Trustee's Office investigation, because you've

3   been asking me to hold up awarding fees while some

4   investigation goes on.

5        MR. KLAUDER:  I'm not sure what you're pointing to, I

6   don't recall actual filing pleadings that noted some issues.

7        THE COURT:  I'm not sure they were pleadings, I

8   believe there were just continuances from a fee hearing, but

9   Mr. Klauder, okay, and even if I'm incorrect and I've got the

10  wrong professional, even if I'm incorrect in that, I'm not

11  incorrect, I believe, about my reading  of the pleading that

12  says that the U.S. Trustee's Office knew about this for the

13  past 17 months, so what investigation has been going on and why

14  am I getting a request for an examiner now?  I mean, what

15  happened 17 months ago?  What do I need an examiner now for

16  that I didn't need one for 17 months ago?  And why has 17

17  months more billing practices been allowed to elapse?

18       MR. KLAUDER:  Your Honor, perhaps we can -- can we

19  push this off for a couple minutes.  Again --

20       THE COURT:  Yes.

21       MR. KLAUDER:  -- I -- and I hate to, again, I'm not

22  trying to be evasive, but there's certain things I can and

23  cannot say and I'm trying to best handle your questions, not to

24  mislead you, and to give you the information you want but also

25  not say too much, or stuff that I'm not permitted to divulge in

1  open court.  So, I wanted to be careful on that issue.

2           THE COURT:  I don't want you to violate whatever your

3  superiors have instructed you not to say.  What I'm trying to

4  find out is, why on earth I am not being permitted to be given

5  information concerning matters that affect the administration

6  of these estates, from the entity that is charged with

7  supervising the administration of these estates.  That is of

8  concern to this Court.

9           It appears that the watchdog needs watch dogging, and

10 that is very troubling.  So, yes, you may have whatever time

11 you need, Mr. Klauder.  Let me know when you're ready.

12          MR. KLAUDER:  Thank you.

13          THE COURT:  Ms. Baer.

14          MS. BAER:  Thank you, Your Honor.  We'll move on to

15 agenda item number 12.   Your Honor, this was the motion of the

16 State of Iowa to file a late proof of claim.  They have

17 withdrawn this motion, so that is no longer before you.

18          Your Honor, item number 13 is a status on the RMQ

19 National Union adversary order.  As you will recall, back in

20 July we had a hearing.  The outcome of that hearing was that

21 certain prepetition claims that were filed by the RMQ and ELG

22 firms should, in fact, be paid through the surety bond posted

23 by National Union and we were directed to negotiate the order

24 and come up with the answers with respect to the exact amounts.

25          We have been in discussions with RMQ and ELG, we're

1  close on the amounts of the principle, but we still have a

2  couple of issues and people have been in and out of vacations

3  and the like and we were not able to come to that resolution

4  today.

5        In addition, Your Honor, RMQ and ELG raised an issue

6  with respect to pre-judgment interest.  That is a significant

7  issue where there are some legal questions.  We believe it

8  makes sense as we try to discuss the numbers and move this

9  along to actually get a briefing schedule set by the Court for

10  the -- to take up the legal issues with respect to pre-judgment

11  interest.

12        Your Honor, if you could give us a date when you

13  could hear an hour or an hour and a half of argument, we can

14  then work backwards from there into a briefing schedule.  And I

15  don't know if you're in a position where you can give us a date

16  now, or if I should just contact your chambers to try to get

17  that.

18        THE COURT:  I think it would probably make sense to

19  contact chambers when we have the full calendar available,

20  because I actually can't access it from here.  When, about when

21  are you looking for an argument?

22        MS. BAER:  In the first part of November, Your Honor.

23  We had talked about whether we could make it and have the

24  argument at the next omnibus hearing.  The problem with that

25  is, to get a motion, a response and a reply done in 30 days is

1    just not really reasonable.

2        THE COURT:  Well, I believe you've got that November

3    1st, I think --

4        MS. BAER:  We have -- we do.

5        THE COURT:  -- reserved for the PI issues.  Are you

6    going to be using that day?

7        MS. BAER:  Currently, we do not have anything

8    scheduled for November 1st, on the PI issues.  Now, something

9    could come up between now and then, we're in the midst of

10   discovery,  but currently we do not have anything scheduled.

11       THE COURT:  Well, you can have some time on that day

12   then.

13       MS. BAER:  I think we can do that.  I guess we'd be

14   guided by -- when would be the last date you would need a

15   pleading in order to prepare for the hearing?

16       THE COURT:  Well, what are you going to be filing?

17       MS. BAER:  Your Honor, RMQ, ELG will be filing a

18   motion for the pre-judgment interest or some sort of pleading

19   in support of pre-judgment interest.  They did, in fact, ask

20   for it in their counterclaim.  We would then be filing a

21   response and they'd be filing a reply.

22       THE COURT:  And with the motion will come the briefs?

23       MS. BAER:  Yes, Your Honor.  So, we would be

24   contemplating here three briefs.

25       THE COURT:  See, this is terrible, I don't even have

1  a calendar here.  My calendar didn't get --

2          MS. BAER:   I can pull out mine.

3          THE COURT:  The 1st is a Thursday?

4          UNIDENTIFIED MALE SPEAKER:  Yes, that's right.

5          THE COURT:  How about the week before, the Thursday

6  of the week before, for the final --

7          MS. BAER:  The final reply then due on the 25th of

8  October?

9          THE COURT:  Yes, does that work?

10          MS. BAER:  I believe so, Your Honor.  I know counsel

11  for RMQ is here.

12          THE COURT:  You could work out the other dates.

13          MS. BAER:  Right.  Right.  That's what I was

14  thinking.

15          MR. HOOKER:  All we need is the -- Your Honor,  Van

16  Hooker on behalf of RMQ and ELG.  I think all we need is the

17  hearing date and I know we can work out our own briefing

18  schedule, if we just know when you need the final pleading.

19          THE COURT:  If I can get the final pleading at least

20  a week before, then I'm in pretty good shape, I think, for this

21  issue.

22          MS. BAER:  I think we can then work backwards from

23  there, Your Honor, and come up with a briefing schedule on this

24  issue.

25          THE COURT:  Okay.  Do you want to start -- Mona, I'm

1  correct, right, it's is the 1st that is --

2          UNIDENTIFIED FEMALE SPEAKER:  It is.

3          THE COURT:  Okay.

4          MS. BAER:  And what time, Your  Honor, on the 1st

5  would you --

6          THE COURT:  Well, that's what I was going to ask you.

7  Do you want to do this first, so that if there are any PI

8  matters, they'd follow this?

9          MS. BAER:  I think that would be the popular answer,

10  yes.

11          MR. HOOKER:  Your Honor, the only caveat is, Mr.

12  Esserman may be arguing that.  And I haven't checked with im as

13  to his availability on that date.  But if he is available that

14  would be fine.

15          THE COURT:  Okay.

16          MR. HOOKER: I'd like to pencil it in on that day.  My

17  client is very interested in getting the order entered.

18          THE COURT:  All right, that's fine.  The matter is

19  continued to November 1st at nine o'clock, in Pittsburgh.  The

20  parties are to work out a briefing schedule.  I guess a motion

21  and briefing schedule.

22          MR. HOOKER:  Your Honor, technically, I don't know

23  that it's a motion, it's really just a brief on whether pre --

24          THE COURT:  Oh, because you've got the counterclaim

25  filed.

1          MS. BAER:  In support, yeah.

2          MR. HOOKER:  Whether pre-judgment interest can be

3 awarded against the bonding company.

4          THE COURT:  So, just a briefing schedule.

5          MS. BAER:  And, Your Honor, I believe counsel for

6 National Union is on the phone and if he could just confirm

7 that that date would work for them.  I know that Mr. Davis was

8 not available to attend but I believe his colleague is on the

9 phone and this actually is an issue that involves pre-judgment

10 interest against National Union, although it may come back to

11 the Debtor on an indemnity claim.

12          MR. GUTTMANN:  Your Honor, Robert Guttmann for

13 National Union.  Mr. Davis apologizes, he had a funeral to

14 attend this afternoon and he couldn't be here.  November 1st is

15 perfectly fine for a hearing date.

16          THE COURT:  Okay.  Are you going to be issuing

17 briefing, too

18          MR. GUTTMANN:  I am uncertain at this point.  We'll

19 have to work that out with the Debtors.

20          THE COURT:  Okay.

21          MS. BAER:  Your Honor, I would expect that National

22 Union and the Debtors would be on the same schedule.  I did

23 talk with Mr. Davis briefly earlier.  In other words, RMQ would

24 file their brief and then we would each be filing a response.

25          THE COURT:  Okay, that's fine.  Then just include

1  National Union in the schedule that you draft up and as I said,

2  as long as I have the final pleading a week before, I'm fine.

3          MS. BAER:  Thank you, Your Honor, we'll do that.

4          THE COURT:  Are you going to submit an order then

5  that will lay the schedule out?

6          MS. BAER:  Yes, we'll do that.  Then it will be

7  clear.

8          THE COURT:  Okay.  Thank you.

9          MR. HOOKER:  Thank you.

10          MR. GUTTMANN:  Thank you.

11          MS. BAER:  Your Honor, agenda item number 14 was a

12  motion by the Future Claimants Representative with respect to a

13  confidentiality order.  That order was entered.

14          THE COURT:  Yes.

15          MS. BAER:  Your Honor, number 15 was the motion of

16  the Official Committee of Unsecured Creditors to amend a

17  confidentiality or protective order that you entered with

18  respect to third party discovery, or discovery of the law

19  firms.  I know a certification of counsel was filed with an

20  amended order, but we do not believe the order was entered.

21          THE COURT:  Okay.  I thought I instructed staff to

22  enter the order on 15 as well, so would you also just check on

23  that when -- in two days, Ms. Baer and make sure that it has

24  been and if not, then I'll try to find out where that order is.

25          MS. BAER:  I will do so, Your Honor.  Your Honor,

1  agenda item number 16 is the status conference on personal

2  injury estimation issues, and I'm happy to say that we have no

3  issues to address today, with the Court, unless something --

4          THE COURT:  Be still my beating heart.

5          MS. BAER:  I know.  I did speak with both counsel for

6  the PI Committee and counsel for the FCR last Friday and at

7  that point in time, nobody had any issues to address which is

8  why people did not have to travel here today.

9          THE COURT:  Okay.  That's fine.

10         MS. BAER:  Your Honor, agenda item number 17 is a

11 status conference on property damage claims.  Your Honor, I can

12 report that with respect to settlements of property damage

13 claims, we filed for the October hearing 21 motions for

14 approval of settlements with Martin Dies' related clients,

15 various clients I should say.  We also filed a motion for

16 approval of the settlement with Prudential and that essentially

17 leaves only one large grouping left that we have settled with

18 and that is the Mottley Rice firm and we are talking with them.

19 I think there was on remaining issue about one paragraph and we

20 hope to file that, then for the November hearing.

21         And that, essentially, takes care of all of the

22 non-Dan Speights related claims, other than a couple where

23 there are outstanding summary judgment motions that are pending

24 before you.

25         THE COURT:  That one, Ms. Baer, we actually were

1  talking -- I was actually talking earlier today with my staff

2  about those because we're in the process of writing opinions

3  and I just want to refresh my own recollection.  I believe that

4  the Arkansas claim, the Clark TD claim was part of the Mottley

5  Rice settlement, is that correct?

6          MR. RESTIVO:  Jim Restivo, Your Honor, good

7  afternoon.

8          THE COURT:  Good afternoon.

9          MR. RESTIVO:  The two Arkansas cases under the rubric

10  other statute of limitations, are not Mottley Rice and those

11  are two cases the Court needs to decide.

12          THE COURT:  Okay.

13          MR. MANDELSBERG:  Your Honor, this is Steven

14  Mandelsberg, from Hahn & Hessin.  We represent the State of

15  California, Department of General Services which you may recall

16  has 16 claims totaling over $130 million dollars, as to which

17  Your Honor in April overruled certain product ID objections.

18  Those claims are also subject to pending motions for summary

19  judgment.  They haven't yet been resolved, we're awaiting

20  decisions on the motions and depending on how the Court rules,

21  or even before the court rules, we will probably seek leave to

22  file an additional expert report on hazard issues, if that

23  becomes relevant, similar to recent motion that W.R. Grace

24  filed some time ago.  But I just want to make clear that there

25  has been on resolution of the State of California's claims nor

1   at the moment any attempt to resolve them.  My assumption is

2   that that's because the parties are waiting for the Court to

3   decide the summary judgment motions.

4           THE COURT:  Yes, I understand that I'm not close on

5   the California claims yet.  We're still working on that.  I'm

6   closer on Arkansas and closer on the Minnesota claims and Mr.

7   Restivo, the Minnesota claims are still open, too, correct?

8           MR. RESTIVO:  No, Your Honor, the Minnesota claims

9   are statute of repose objections.  Those are with Mottley Rice

10  and those the Court need not spend any time on because the are

11  subject to the settlement with Mottley Rice.

12          THE COURT:  Okay.  I had them flip flopped.  Thanks.

13          MR. RESTIVO:  Yes, you did.

14          THE COURT:  All right, thank you, I'm glad I asked

15  that.

16          MR. RESTIVO:  And California has been discussed.  You

17  have four statute of limitations left out of New York.  On

18  Canada, the parties owe you post argument briefs, I think.

19  Claimants', I believe, is due, I think October 12, ours is due

20  October 26th and so on Canada, the briefing before Your Honor

21  is not yet closed.

22          The only other item on property damage was, we were

23  going to discuss with the Court today when the claimants needed

24  to file a rebuttal expert report to the Dr. Elizabeth Anderson

25  risk assessment report that we filed.  Mr. Baena and I have

1  agreed that we ought to pass that and deal with that at the

2  October 25 omnibus and everyone seems to be agreeable to

3  passing it for today.

4          THE COURT:  Okay, that's fine,  We can put that on

5  the October agenda.

6          MR. RESTIVO:  The only other thing on traditional

7  property damage, Your Honor, is that I believe the Court's

8  calendar clerk was still holding for us if we needed it,

9  September 27 from nine o'clock to eleven o'clock a.m., and at

10 least from the Debtors perspective, we have no need for that,

11 there's nothing to be done then.  So, to the extent the Court

12 was holding nine o'clock to eleven o'clock on September 27, we

13 can release it back to the Court.

14         THE COURT:  Okay, thank you.

15         MR. RESTIVO:  With respect -- and that's the report

16 on property damage.  With respect to ZAI, Mr. Westbrook and I

17 have continued to dialogue, we would like to dialogue further

18 and we would also like to move a report on ZAI to the October

19 25 omnibus.

20         THE COURT:  That's fine.

21         MR. RESTIVO:  And that's all I have to report, Your

22 Honor.

23         THE COURT:  Okay.  Mr. Restivo, with respect to what

24 Mr. Mandelsberg was saying about California, I didn't mean to

25 cut either of you off on the California claims.  I know that

**J&J COURT TRANSCRIBERS, INC.**

1  that's under advisement and I am -- I have someone working on a

2  draft, but I'm not as close on that, so Mr. Mandelsberg and Mr.

3  Restivo, is there anything else you needed to report on those?

4           MR. RESTIVO:  Not from the Debtors point of view,

5  Your Honor.  Mr. Mandelsberg did talk about the no hazard

6  hearing.  That, of course, has been deferred until there are

7  rulings and so, I think that California is fully briefed and

8  the parties are simply waiting for the Court to turn to it and

9  rule on it.

10          MR. MANDELSBERG:  Yes, Your Honor.  I agree with

11 that.  The only thing I would add is that Your Honor may

12 remember that at the end of the April trial, there was some

13 mention about possible dialogue or settlement conference and at

14 the time Mr. Restivo mentioned that the motions for summary

15 judgment were pending and since they're still pending, I gather

16 that the decision on those motions may influence scheduling any

17 dialogue, but I just want to report that the State of

18 California claims are still alive and well, until someone tells

19 me otherwise, and that we have not yet had any discussions with

20 counsel for W.R. Grace about resolution as of yet.

21          THE COURT:  Okay.  Well, I wish you folks would

22 not hold up trying to decide to settle things, pending these

23 decisions.  If you're able to settle, that would be very

24 helpful.  The Court has lots of other things that I could work

25 on and would be very joyous to bypass the few that you could

1  settle if you can.  So, please don't hold up settlement

2  discussions awaiting these rulings, if there's some basis on

3  which you can get together.

4          MR. RESTIVO:  Very well, Your Honor, we will at least

5  attempt to do that.

6          THE COURT:  Okay, thank you.

7          MS. BAER:  Your Honor, that then completes the

8  numbered matters on the agenda.  I have two orders to deal with

9  and I think we'll then go back to the U.S. Trustee.

10         THE COURT:  All right.

11         MS. BAER:  Your Honor, I have the order with respect

12 to the fees, quarterly fees and we have amended the Forman

13 Perry number.  The fees allowed on an interim basis is being

14 changed.  The amount with the 25 percent has been added back

15 in, so that number is now $1,697.634.  I have the page with the

16 interlineation marked and I'd like to hand up the order.

17         THE COURT:  All right, I'll take it.  Thank you.  All

18 right, that order is signed.

19         MS. BAER:  Thank you, Your Honor.  One matter not on

20 the agenda, but pending before Your Honor is, the Debtor had

21 filed a motion for entry of a protective order with respect to

22 the production of certain documents from Nyash.  There was a

23 limited objection filed by the Asbestos Creditors Committee,

24 they wanted to make sure that whatever documents were produced

25 were, in fact, provided to them.  It was always our intention

1  of doing so, Your Honor.  We have amended the protective order

2  to add the language in that the Asbestos Creditors Committee

3  asked for.  I understand that the creditors committee for the

4  asbestos personal injury claimants, as well as the Libby

5  claimants are agreeable to the form of this order.  We did also

6  send it to the Future Claimants Representative, but we did not

7  hear back form them as to whether this was agreeable to them,

8  but again, they had joined with the ACC in terms of the

9  language added and we have added that language.

10          THE COURT:  Okay.  Is someone here from the FCR who

11  can take a look at this order?

12          MR. MULLADY:  Your Honor, this is Ray Mullady for the

13  FCR.  We are fine with the form of the order.

14          THE COURT:  All right, thank you.

15          MR. MULLADY:  Thank you.

16          THE COURT:  Thank you.

17          MS. KRIEGER:  Your Honor, this is Arlene Krieger from

18  Stroock & Stroock & Lavan.  Does that form of order, I'm afraid

19  I haven't seen it, does that provide for whatever information

20  to go to the Creditors committee as well?

21          MS. BAER:  The order adds the language that was

22  requested, which specifically names the Asbestos Creditors

23  Committee and specifically names the Future Claimants

24  Representative and then also indicates that it will -- the

25  documents will also be available to other parties to the

1  estimation proceeding which absolutely includes the Unsecured

2  Creditors Committee.

3              MS. KRIEGER:  Thank you for the clarification.

4              MS. BAER:  Sure.  Your Honor, that's everything that

5  the Debtor has on the agenda.  I don't see the U.S. Trustee and

6  perhaps we should take a recess and find out where that stands?

7              THE COURT:  All right.  Why don't we take a five

8  minutes recess.  I would like to get finished with this agenda,

9  unless they're coming back in?  Are they coming Mr. O'Neill?

10             MS. BAER:  I see them coming, so we can take this up.

11             THE COURT:  Are you ready, Mr. Klauder?

12             MR. KLAUDER:  Your Honor, can we just have a few more

13 minutes?  I apologize.

14             THE COURT:  I'm sorry, I couldn't hear you.

15             MR. KLAUDER:  Can we just have a couple minute

16 recess:

17             THE COURT:  Yes, we'll take a ten minutes recess.

18             MR. KLAUDER:  Okay, thank you.

19             THE COURT:  Thank you.

20                  (Short break in proceedings)

21             THE COURT:  All right.  We're back on the record in

22 W.R. Grace.  Mr. Klauder.

23             MR. KLAUDER:  Your Honor, I just want to -- David

24 Klauder for the United States Trustee.  I just want to make a

25 couple statements for the record, to correct any

1    misapprehensions Your Honor may have with regard to any of the

2    statements or the pleadings.

3              I want to make it clear that those, those being those

4    people in the United States Trustee's Office, who were working

5    on the Chapter 11 cases, had no knowledge of the potential

6    improper conduct by Tersigni 17 months ago, or whatever that

7    date was.  It wasn't until those specific letters came out from

8    ACC counsel that those who were working on the eleven cases in

9    our office knew about the issue with Tersigni.

10             The other thing is, in response to Your Honor's

11   comments about us filing pleadings or making statements with

12   regard to previous fee application of Tersigni, I've spoken

13   with Mr. Schepacarter and myself have both handled the Chapter

14   11 cases.  Those did not involve any of the conduct that is

15   alleged here.

16             THE COURT:  All right.

17             MR. KLAUDER:  Those were specific issues that are

18   different than the alleged conduct that is at issue here.  And

19   I just want to make sure that Your Honor is clear on that.

20             THE COURT:  All right.  Well, I appreciate that, but

21   you know, but here's the thing.  The U.S. Trustee's Office is

22   an arm of the Department of Justice.  Unfortunately, you don't

23   get to isolate one person within that agency.  When the agency

24   has knowledge that some fraudulent conduct is alleged, the

25   whole agency has that knowledge.  You know, you don't isolate

1  a specific person from the entities who are working on a

2  particular case.  So, I really, I fail to understand why and

3  that's what I'm looking for, why if the U.S. Trustee's Office

4  got this information 17 months ago, we're basically hearing

5  about it for the first time, not from the U.S. Trustee's

6  Office, but from counsel for the committee who finds out about

7  it after the alleged perpetrator of this fraud dies.  Now,

8  there is something wrong with that process and now I'm being

9  told that an examiner, who is going to cost this estate even

10 more money, that the estates lost because nobody divulged this

11 fraud for the last 17 months, assuming that there is some

12 fraud, but at least some alleged billing misconduct, in any

13 event, if it's not fraud, so the estates are probably out a

14 whole lot of money as a result of the fact that there is this

15 duplicate billing, padding billing, whatever the conduct is

16 going to substantiate, now they're going to have to pay for an

17 examiner to get to the bottom of it, which -- none of which

18 would have happened, at least through the last 17 months, had

19 somebody stepped up to the plate and said there's a problem and

20 gone looking for it 17 months ago.

21         And on top of that, there is another investigating

22 arm of the Department of Justice, the FBI or some other

23 criminal investigating agency, that apparently has already

24 taken a look at these records, apparently has done some kind of

25 a report, and if there is no longer a criminal case open, if

1  that's the case, which I don't know, must have some sort of a

2  report which would be a darned good start, if not end, for

3  somebody to look at.  So, I don't know why the estates have to

4  be charged with additional money to do an investigation that

5  may already be complete.

6       So, why do we need an examiner if, in fact, the

7  investigation is either complete or nearly complete?  There are

8  creditors in these cases who deserve at some point in time to

9  get whatever little money they're going to get out of these

10  cases and to the extent that this work has already been done,

11  they shouldn't be charged with duplicating that work.  So, I

12  think before the Court, in advisably, requires yet another

13  expense to be added onto this estate, that an answer to that

14  question is owed to these creditors by the entity that started

15  this process in the first place, the United States Department

16  of Justice.

17       MR. KLAUDER:  Your Honor, we understand your issues

18  and, therefore, we'll request a continuance of this matter and

19  take your comments, your questions back and hopefully be able

20  to address them and will make you more comfortable at a

21  subsequent hearing.  But at this point, it's appropriate that

22  we continue the matter and then deal with it at the next

23  hearing, I guess, which would be in October.

24       THE COURT:  Okay.  And while we're at it, I think

25  that some plan, not just for this estate, but for all of the

1 other estates --

2          MR. KLAUDER:  Absolutely.

3          THE COURT:  -- should be put in place, because to the

4 extent that, you know, the series, the combination of records

5 is going to have to be accessed, it would seem that one

6 enterprise ought to be in charge of looking at some of these

7 documents because it would make sense to at least minimize the

8 expense to the extent that it's possible.  And the next

9 question is, where are the records?  There has been a criminal

10 investigation going on, does the FBI have them or some criminal

11 investigating agency and if so, are they going to be released

12 to an examiner, because that's the next issue.  If, in fact,

13 some department or some criminal investigating agency has them

14 and are not going to make copies available, then there's no

15 point to having an examiner because the examiner is not going

16 to get very far looking at records.

17          So, whether or not there is a criminal investigation

18 and where it is in the process is really relevant to this

19 issue, whether you, Mr. Klauder, are permitted to comment on it

20 or not.  Somebody is.  So, find that somebody and let's find

21 out what the status is.  I'm not asking if there is an ongoing

22 investigation for disclosure of the minutia of that

23 investigation, but I do want to know how it's going to affect

24 whatever this Court has to do with respect to appointing an

25 examiner.

1              MR. KLAUDER:  Understood.

2              THE COURT:  All right.  Till October, continued till

3    October?

4              MR. KLAUDER:  Yes, that's the next omnibus date, I

5    suppose would be the appropriate date.

6              THE COURT:  All right.  Do you have in mind a

7    particular examiner?  The reason I'm asking, is because if

8    you're looking for one examiner and you mentioned the number 11

9    estates, that person may have a lot of conflict checking to do.

10             MR. KLAUDER:  Right.

11             THE COURT:  And, since it's three different

12   jurisdictions as well, if it's New Jersey, Western

13   Pennsylvania, and Delaware, you may need to start talking to

14   the parties about that person to make sure that -- or entity,

15   whatever it's going to be, as well, so that that conflict

16   checking process might be able to be looked at in a fairly

17   comprehensive way, too.

18             MR. KLAUDER:  There has been some informal interest

19   that's been expressed to us, so we will certainly get on that

20   and deal with those issues.

21             THE COURT:  All right.  Okay, this matter is

22   continued till the October omnibus.

23             MR. KLAUDER:  Thank you.

24             THE COURT:  Thank you.

25             MS. BAER:  Your Honor, that concludes the agenda for

1  today.

2          THE COURT:  All right, we're adjourned, thank you.

3          MS. BAER:  Thank you.

4                        *****

5                    **CERTIFICATION**

6

7      I, ELAINE HOWELL, court approved transcriber, certify that

8  the foregoing is a correct transcript from the official

9  electronic sound recording of the proceedings in the

10  above-entitled matter and to the best of my ability.

11

12

13

14  /s/ Elaine Howell              Date:  October 2, 2007

15  ELAINE HOWELL

16  J&J COURT TRANSCRIBERS, INC.

17

18

19

20

21

22

23

24

25

**J&J COURT TRANSCRIBERS, INC.**