IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Hearing Date: October 25, 2007, at 2:00 p.m.
Related to Docket No. 16640

## DEBTORS' OBJECTION TO PRETE'S MOTION TO LIFT AUTOMATIC STAY AND/OR OBTAIN RELIEF FROM PRELIMINARY INJUNCTION

The Debtors object to Prete's Motion to Lift Automatic Stay and/or Obtain Relief from Preliminary Injunction (the "Motion") and request the Motion be denied. Roberta J. Prete and Frank Falco (the "Plaintiffs") have not stated any basis for treating them differently than any other claimants in these chapter 11 cases whose litigation is stayed. Further, Plaintiffs' request that they simply be permitted to proceed against the Debtors' insurance does not alter the situation. Due to the Debtors' deductible obligation, proceeding against Debtors' insurance will create an immediately due obligation to the Debtors' insurer and thereby detrimentally affect the Debtors. Granting the Motion would inappropriately allow the Plaintiffs to complete an end run

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

around the bankruptcy process and obtain a preference over all of the Debtors other creditors who are affected by the automatic stay and preliminary injunction.

## BACKGROUND

1. In 1999, the Plaintiffs filed a lawsuit in Pinella County, Florida Circuit Court against the Debtors and two former employees (the "Employees") of the Debtors asserting the Debtors' and Employees' negligence caused personal injury, lost earnings, and pain and suffering damages in excess of $15,000 arising out of an automobile collision on March 20, 1995. (Frank Falco and Roberta J. Prete v. W. R. Grace & Co. et al., Case No 99-1178-CI-20 (Cir. Ct. Pinella County, Florida)) (the "Prete Action").

2. The Debtors listed the Plaintiffs' claims under the Prete Action as contingent, unliquidated claims in their chapter 11 schedules.

3. On January 22, 2002, the Court entered a Modified Preliminary Injunction (Docket No. 87) which enjoins actions against Debtors' current and former directors, officers, and employees that arise out of such officer's, employee's or director's employment or relationship with the Debtors. Accordingly, the Plaintiffs have not proceeded with the Prete Action against the Debtors or the Employees.

4. Pursuant to this Court's order, the bar date for filing non-asbestos, asbestos property damage, and medical monitoring claims was set for March 31, 2003. Plaintiffs' counsel was served with notice of the bar date. Despite this fact, the Plaintiffs failed to file any claims in the Debtors' chapter 11 cases.

5. The Prete Action is covered by an insurance policy (the "Policy") issued to the Debtors by Continental Casualty Company (the "Insurer") covering, among other things: (a) employees for liability incurred within the scope of their employment; and (b) the Debtors for

any indemnification obligations the Debtors owe to the Employees for the one year period from June 1994 to June 1995. The Policy has a deductible of $2.5 million (the "Deductible").

6. Only a few claims were made under the Policy and a very large Deductible obligation remains.

7. Under the Policy, the Debtors are required to reimburse the Insurer for any payments the Insurer makes up to the Deductible. Additionally, the Debtors are required to maintain a letter of credit to satisfy its obligations to reimburse the Insurer. Thus, if the Insurer is forced to make a payment on the Policy and the Debtors fail to pay the deductible, the Insurer may draw on the letter of credit.

## ARGUMENT

### THE PLAINTIFFS FAILED TO SHOW SUFFICIENT CAUSE TO MODIFY THE AUTOMATIC STAY OR PRELIMINARY INJUNCTION.

8. The Plaintiffs seek modification of both the automatic stay and the preliminary injunction to pursue their claims against the Debtors and the Employees. The underlying relief requested by Plaintiffs is to recover from the Debtors' insurance for the Debtors' and Employees' liability.

9. Plaintiffs should be prohibited from attempting to recover against any estate property. The insurance is clearly property of the estate and subject to the automatic stay. See Matter of Vitek, Inc., 51 F.3d 530, 535 (5th Cir. 1995) ("where a debtor corporation owns an insurance policy that covers its own liability *vis-à-vis* third parties, we - like almost all other courts that have considered the issue - declare or at least imply that both the policy *and the proceeds* of that policy are property of the estate." (emphasis in original)); MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 92 (2nd Cir. 1988) (same); Tringali v. Hathaway Mach. Co.,

796 F.2d 553, 560-61 (1st Cir. 1986) (same); In re Allied Digital Tech., Corp., 306 B.R. 505, 509 (Bankr. D. Del. 2004) ("Generally, a debtors liability insurance policy is property of the estate.").

10. Plaintiffs' arguments for lifting the preliminary injunction are identical to their arguments for lifting the automatic stay and the elements that Plaintiffs must establish to justify either are essentially the same. Thus, both will be addressed together herein.

11. The automatic stay is one of the most fundamental protections provided to a debtor under the Bankruptcy Code. See Midatlantic Nat. Bank v. New Jersey Dept. of Envtl. Prot., 474 U.S. 494, 503 (1986). In particular, the Third Circuit has held that the purpose of the automatic stay is to:

> prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtors' assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.

Borman v. Raymark Indus., Inc., 946 F.2d 1031, 1036 (3rd Cir. 1991); In re Rexene Products Co., 141 B.R. 574, 576 (Bankr. D. Del. 1992).

12. Pursuant to section 362(d) of the Bankruptcy Code, a movant must demonstrate sufficient cause to justify the lifting or modification of the automatic stay. Although the Bankruptcy Code does not define what constitutes cause, "courts generally consider the policies underlying the automatic stay [and] . . . the competing interests of the debtor and the movant." In re Continental Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993). In particular, Delaware courts consider the following three factors in balancing the competing interests of the parties:

(a) whether any great prejudice to either bankrupt estate or the debtors will result from continuation of the civil suit;

(b) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and

(c) the probability of the creditor prevailing on the merits.

In re W. R. Grace & Co., 2007 WL 1129170, *2 (Bankr. D. Del. 2007); Continental, 152 B.R. at 424. The Plaintiffs have not demonstrated sufficient cause to warrant the lifting or modification of the automatic stay or the preliminary injunction and the Motion should be denied.

### A. Substantial Prejudice Would Be Incurred By The Debtor If The Automatic Stay Or Preliminary Injunction Were Modified.

13. Courts have recognized that in mass tort cases, there is a critical need to stay all collateral litigation in order to allow the Debtors an opportunity to develop comprehensive litigation and reorganization plans.

> The purpose of this section [362] by its various subsections is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor.

A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins & Co., Inc.), 788 F.2d 994, 998 (4th Cir. 1986). Indeed, "the automatic stay is designed to preclude the rush to the courthouse." See In re Flores, 291 B.R. 44 (Bankr. S.D.N.Y. 2003).

14. The most important factor in determining whether to grant relief from the automatic stay to allow litigation to proceed against a debtor in another forum is the effect of such litigation on the administration of the estate. See, e.g., Grace, 2007 WL 1129170 at n.7 citing In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984); see also In re Penn-Dixie Indus., Inc., 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980). If the automatic stay is lifted to allow the Prete Action to proceed, the Debtors' ability to administer their estates and these chapter 11 cases will be adversely impacted.

15. This Court has repeatedly recognized that granting litigation claimants relief from the automatic stay would be detrimental to the administration of the estates because it would

undermine the goal of resolving all the Debtors' claims through a comprehensive plan of reorganization. See Grace, 2007 WL 1129170 at 3 ("Granting [relief from the automatic stay] would also be a distraction from the reorganization process."); see also *Order Denying David Slaughter's Motion to Lift Automatic Stay* dated November 11, 2004 [Case No. 01-1139, Docket No. 6852] (denying a similar motion to lift the automatic stay). Further, this Court has held that the defense costs associated with collateral litigation are detrimental to the Debtors' estates. Grace, 2007 WL 1129170 at 3 (noting that lifting the automatic stay would "force the Debtors to duplicate defense efforts outside the chapter 11 cases and unnecessarily deplete estate resources.")

16.  Despite having been notified of the bar date, the Plaintiffs did not file claims against the Debtors. Thus, the Plaintiffs' claims against the Debtors are now barred absent their showing of excusable neglect for their failure to file.

17.  While the Plaintiffs' claims against the Employees are not barred, the preliminary injunction prohibits Plaintiffs from proceeding against the Employees. And, despite Plaintiff's claims against the Debtors being barred, the Debtors still have potential obligations to the Employees and the Insurers for their liability under the Prete Action. Specifically, in the event that the Prete Action is allowed to proceed, the Debtors would have to reimburse any payment made by the Insurer up to the Deductible. Therefore, granting the Motion would merely replace the Plaintiffs' claims, with those of the Insurer or the Debtors' Lenders and additionally burden the Debtors with defense costs.

18.  Finally, it would be inequitable to allow the Plaintiffs, who have not participated in the bankruptcy process, to liquidate and have their claim paid when thousands of other claimants are unable to do the same. This would reward the Plaintiffs who failed to file a timely

claim and who now attempt to circumvent the bankruptcy process, while at the same time penalize claimants who have followed the appropriate procedures and filed claims against the Debtors. Granting the Motion would violate the policy of collective action underlying the bankruptcy code, as stated in In re Cardillo, 172 B.R. 146, 152 (Bankr. N.D. Ga. 1994) "[a] major premise underlying the framework of rights and restraints in the Bankruptcy Code is that collective action promotes efficiency. . . Implicit in the collective approach to a resolution of disputes concerning the disposition of assets, claims, priorities is that in an absence of an explicit Congressional directive, a restraint on one creditor must apply to all creditors."

### B. The Balance Of Hardships Weighs Significantly In Favor Of The Debtors.

19. The above-described burdens forced upon the Debtors far outweigh any inconvenience encountered by the Plaintiffs.

20. The Plaintiffs rely solely on the Debtors' insurance coverage to support modification of the automatic stay and preliminary injunction. As discussed above, however, the end result of allowing the Prete Action to proceed would be to allow the Plaintiffs to circumvent the bankruptcy process and gain an advantage by having their claim liquidated and possibly paid sooner than the thousands of other claimants who have followed the appropriate bankruptcy procedures. This is exactly the result that the automatic stay was intended to avoid. See Borman 946 F.2d at 1036 ("The automatic stay was designed 'to prevent certain creditors from gaining a preference for their claims against the debtors[.]'"); see also Mann v. Chase Manhattan Mortgage Corp., 316 F.3d 1, 3 (1st Cir. 2003) ("Generally speaking, the automatic stay prescribed in Bankruptcy Code § 362(a) serves the salutary purpose of deterring creditors from jockeying for advantage[.]"). Granting the Motion would violate these principals.

21. Essentially, the Plaintiffs' contention that it will be harmed if the Motion is denied boils down to the Plaintiffs' desire to have their claims adjudicated immediately. This is a

desire, however, that the Debtors suspect is not uncommon among all of the Debtors' claimants. As discussed above, this Court has repeatedly held that the Debtors' obligations, including collateral litigation such as the Prete Action, should be resolved through a comprehensive plan of reorganization. The Plaintiffs fail to produce any valid reason as to why their claims should be given preferential treatment over other similarly situated creditors.

22. The burden to show harm is on the Plaintiffs. It is the Plaintiffs that "bear the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the debtor in denying relief." In re Micro Design, Inc., 120 B.R. 363, 369 (E.D. Pa. 1990). Since the Plaintiffs utterly fail in their burden to demonstrate sufficient harm worthy of modifying the automatic stay or preliminary injunction, the Motion should be denied.

### C. The Plaintiffs Have Demonstrated No Likelihood Of Success On The Merits.

23. Finally, the Motion should be denied because the Plaintiffs have not demonstrated, nor can they demonstrate, any likelihood of success on the merits. In the Motion, the Plaintiffs merely attach their complaint alleging certain negligence claims under Florida state and common law. A mere assertion or restatement of their cause of action does not demonstrate a likelihood of success on the merits. Cf. In re Daly & Sinnott Law Center PLLC, 292 B.R. 796, 801-802 (Bankr. D. Vt. 2003) (sufficient evidence, as opposed to allegations, required to show likelihood of success on the merits). Nor do the Debtors concede that the Plaintiffs have a valid tort claim against them. Therefore, the Plaintiffs have not met the burden of showing that they are likely to succeed on the merits of their alleged claims.

## **CONCLUSION**

Plaintiffs' Motion is just another attempt by yet another party in these Chapter 11 cases to end run the bankruptcy process and obtain a preference for themselves. For the very same reasons the Court has denied similar attempts in the past, the Court must deny the Plaintiffs' Motion.

Dated: October 5, 2007

                                                KIRKLAND & ELLIS
David M. Bernick, P.C.
Janet S. Baer
Lori Sinanyan
Samuel Gross
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
(302) 652-4100

Co-Counsel for Debtors and Debtors in Possession