## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 ) |
| W.R. GRACE & CO., et al., | ) Case No. 01-01139 (JKF) ) Jointly Administered |
| Debtors. | ) ) Objection Deadline: November 13, 2007 at 4:00 p.m. ) Hearing Date: November 26, 2007 @ 2:00 p.m. ) ) Re Docket Nos. 13406 and 15272 |

### CLAIMANT STATE OF CALIFORNIA, DEPARTMENT OF GENERAL SERVICES' MOTION FOR LEAVE TO FILE THE EXPERT REPORT OF DR. TIM VANDER WOOD

Claimant State of California, Department of General Services ("DGS"), by and through its undersigned counsel, respectfully submits this motion requesting leave of Court to file the expert report of Dr. Tim Vander Wood of MVA Scientific Consultants in connection with the adjudication of Debtors' "lack of hazard" gateway objection to DGS' property damage claims.

### Dr. Vander Wood's Report

1.  In connection with the adjudication of the lack of hazard objection, DGS seeks leave of Court to file the report of its expert, Dr. Tim Vander Wood (the "Report"), a true copy of which is attached hereto as Exhibit A.

2.  Dr. Vander Wood was retained by DGS in July 2007 to analyze samples of settled dust collected from the various buildings the subject of DGS' claims to determine whether the asbestos-containing products pose a health hazard to the buildings' occupants or workers. To make this determination, Dr. Vander Wood, through reliable and accepted scientific methods, examined the settled dust samples to assess their asbestos concentration levels and to determine the source of the dust.

3. Dr. Vander Wood's analyses demonstrate that the asbestos-containing products in the buildings poses a health hazard to their occupants or maintenance or other building workers. Analyses of the dust show that they contain asbestos at elevated levels and that the source of dust's constituents is the Debtors. Given the elevated asbestos concentration levels in the dust and the ability of the dust to become re-entrained into the air, allowing the asbestos fibers to be inhaled, the asbestos-containing products in DGS' buildings pose a health hazard.

## Procedural Background

4. The most recent case management order for the adjudication of Debtors' gateway objections to property damage claims was entered on October 13, 2006 (Docket No. 13406) (the "CMO"). That CMO provided deadlines relating to Debtors' three gateway objections – (a) lack of product identification, (b) expiration of the statute of limitations, and (c) lack of hazard.

5. With respect to DGS, the Court held the trial on the product identification-based objections on April 23-24, 2007 (Docket Nos. 15470 and 15471). On June 13, 2007, the Court entered an order overruling Debtors' product identification-based objections to DGS' claims (Docket No. 16039), which was subsequently amended on August 29, 2007 (Docket No. 16682).

6. As for the statute of limitations-based objections, Debtors filed motions for summary judgment against numerous claims, including against all sixteen of DGS' claims (Docket Nos. 14592, 14593, 14594, 14595, 14596, 14597, 14598 and 14599). DGS opposed the motion (Docket No. 14919), and the Court held oral argument on April 9, 2007 (Docket No. 15229). The motion is presently *sub judice*.

7. In light of the pendency of the summary judgment motions, the Court stayed all deadlines in the CMO applicable to the statute of limitations-based objections (Docket No. 15156). Moreover, at the April 19, 2007 hearing, the Court stayed also all deadlines relating to

the lack of hazard objection (Docket No. 15272), including the trial dates of May 30 and 31, 2007.

8. Prior the Court's stay of certain deadlines in the CMO, Debtors and DGS exchanged various information, including the report of another one of DGS' experts, Franco Seif of Clark Seif Clark, on January 16, 2007 (Docket No. 14362), who was deposed by Debtors on March 26, 2007.

9. On June 12, 2007, Debtors filed a motion for leave to belatedly file the expert report of Dr. Elizabeth Anderson relating to Debtors' lack of hazard objection (Docket No. 16026). Given the lack of any scheduling order applicable to the hazard trial and in the spirit of cooperation, DGS did not object to the motion, nor did any other interested party. On July 24, 2007, the Court granted Debtors' motion (Docket No. 16367).

10. Given the late filing of Dr. Anderson's report, DGS has not yet submitted any rebuttal expert report or deposed Dr. Anderson. At the July 2007 omnibus hearing, the Court recognized claimants' right to submit rebuttal expert reports and stated that it would visit the issue of the deadline by which claimants must file any such reports at a later time:

> MR. BAENA: ... Your Honor, just to give you a little context, as I understand it, Dr. Anderson's report has been submitted in respect of the lack of hazard issue, which as you know, has not even been schedule as of yet for hearing. The report is accompanied by the motion because the debtor didn't file the report by the deadline that was set by the existing CMO. I suspect that nobody's objected in large part because it hasn't been scheduled yet and for that same reason we don't see the rush for the requirement of rebuttal reports. In addition I'd add that at this juncture requiring those who are embroiled in claims objections based upon the other sorts of claims or objections that have been asserted, this is a real distraction for them to now go out, get an expert of their own, and file a rebuttal. Moreover, as the motion itself points out, if any of the objections that are asserted other than lack of hazard are successful, those claimants won't even get to that next stage. So, in addition to everything else, we're exposing them to the incremental expense of other witnesses when they may not even need it. And so, for all

3

these reasons, we think that the Court ought to put off that deadline as far into the future to accommodate a resolution of the other objections in respect of those claimants who are implicated by this report.

THE COURT: Well, okay. I guess the question is how to facilitate that because I agree, to the extent that we haven't gotten though the statute of limitations issues, but I'm sure an order to tee up the lack of hazard issues, some of these have to work in tandem to a certain extent, I am working at the moment on two of the opinions, Minnesota and Arkansas, and I hope to have Arkansas done shortly. Minnesota's maybe going to take a little bit longer for reasons that I, at the moment, can't go into, but I hope at least to get those two opinions out soon, but that's not going to help with the bulk of these issues. If I can get to California next, that should take care of the larger bulk of claims, but you still have Canada and some other issues to deal with, so, you know, it's still going to be a while.

MR. BAENA: What if we – You allowed the late filing of the report. Nobody has objected. You reserve on when the rebuttal report is due. We have another status report – another omnibus, excuse me, August 29. Let's revisit that issue then.

THE COURT: That's fine. I think it could probably even safely be revisited in September and maybe even in October, frankly. ... What I'm saying is that the PD claimants shall have until a date to be determined to file rebuttal reports and a status conference will be held at the September omnibus on this issue.

See Transcript of the 7/23/07 Omnibus Hearing at pp. 132-35 (Docket No. 16445).

11.    Thus, the Court clearly contemplated and expects that there will be additional discovery (i.e., deposition of Dr. Anderson) or filings at a later time, which has not yet been addressed by the Court.

## DGS' Motion Should Be Granted

12.    DGS' motion for leave should be granted because, in addition to the lack of any prejudice to Debtors, the Report addresses a significant issue relating to the hazard issue that would be helpful to the Court at any trial.

4

13. At trial that has not yet been scheduled, the Court will address the issue of whether the asbestos-containing products pose a health hazard to the buildings' occupants or workers. As reflected in the Report, Dr. Tim Vander Wood analyzed samples of settled dust collected from the various buildings to determine the asbestos concentration levels in the dust and found that the samples had elevated asbestos concentration levels. Dr. Vander Wood also was able to link the dust to Debtors' asbestos-containing products. Thus, the dust's elevated asbestos concentration levels pose a health risk to the buildings' occupants or workers because the dust can be re-suspended into the air through routine activities and thus inhaled by people.

14. In light of the significance of the Report's findings, no meritorious basis exists to deny DGS' motion, especially since Debtors will not suffer any prejudice. As provided above, there presently are no deadlines applicable to or trial dates for the lack of hazard objection, mainly due to the pendency of Debtors' summary judgment motions, which the Court indicated might take some time before decisions are issued due to the Court's demanding schedule (Docket No. 16445 at p. 132-133).

15. Moreover, additional discovery on the hazard issue appears will be reopened at a later time given its necessity. Because Debtors have chosen to belatedly submit Dr. Anderson's report, even though they knew since January 2007, at the latest, see Debtors' Motion for Leave to File Expert Report of Dr. Elizabeth Anderson in Connection with the Lack of Hazard Hearing Relating to Asbestos Property Damage Claims at ¶¶ 12-13 (Docket No. 16026), that they would be retaining Dr. Anderson as an expert, claimants have not had an opportunity to depose Dr. Anderson or prepare or submit any rebuttal reports, which the Court stated that it would permit claimants to do at a later as-yet undetermined time.

16. Given the present lack of a scheduling order governing the lack of hazard objection, Debtors' summary judgment motions that are *sub judice*, Debtors' belated service of

5

Dr. Anderson's report that necessitates further discovery and filings, and the Court's demanding schedule, it appears that earliest any trial can take place is the beginning of next year. That will provide Debtors with plenty of time to prepare any rebuttal reports or to depose Dr. Vander Wood in connection with the Report.

## Conclusion

17. For the foregoing reasons, Claimant State of California, Department of General Services respectfully requests the Court to grant it leave to file the expert report of Dr. Tim Vander Wood.

Dated: October 16, 2007

> BALLARD SPAHR ANDREWS & INGERSOLL, LLP
>
> By: /s/ Leslie C. Heilman
> Tobey Marie Daluz, Esq. (No. 3939)
> Leslie C. Heilman, Esq. (No. 4716)
> 919 North Market Street, 12th Floor
> Wilmington, Delaware 19801
> Telephone: (302) 252-4465
> Facsimile: (302) 252-4466
> Email: daluzt@ballardspahr.com
>     heilmanl@ballardspahr.com
>
> -and-
>
> HAHN & HESSEN LLP
> Steven J. Mandelsberg, Esq. (admitted pro hac)
> Christina J. Kang, Esq. (admitted pro hac)
> 488 Madison Avenue
> New York, New York 10022
> Telephone: (212) 478-7200
> Facsimile: (212) 478-7400
> Email: smandelsberg@hahnhessen.com
>     ckang@hahnhessen.com
>
> Counsel for Claimant
> State of California, Dep't of General Services

## Summary of Exhibit to Claimant State of California, Department of General Services' Motion for Leave to File the Supplemental Expert Report of Dr. Tim Vander Wood

Pursuant to Rule 2 of the chambers procedures of the Honorable Judith K. Fitzgerald, the following is a summary of Exhibit A to Claimant State of California, Department of General Services' Motion for Leave to File the Expert Report of Dr. Tim Vander Wood.

Exhibit A is a compendium of the eleven supplemental reports prepared by Dr. Tim Vander Wood in connection with the adjudication of Debtors' "lack of hazard" objection to Claimant's proofs of claim seeking recovery for property damage. The compendium report reflects Dr. Tim Vander Wood's recent analysis of settled dust samples collected from the various buildings to determine the asbestos concentration levels in the dust, which Dr. Vander Wood was able to link to Debtors' product, and his finding that the samples had elevated asbestos concentration levels.