IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) ) ) | Case No. 01-01139 (JFK) Jointly Administered |
| Debtors | ) ) ) | Related Docket Nos: 16468, 16907, 16904, 17104 and 17106 |
| | ) ) ) ) | [REQUESTED] Omnibus Hearing Date: October 25, 2007, 2:00 p.m., Pittsburgh, PA [REQUESTED] Objection Deadline: October 23, 2007, at 12:00 noon |

## DEBTORS' EXPEDITED MOTION FOR RELIEF FROM THE OCTOBER 31st DISCOVERY CUT-OFF DATE FOR DEPOSING CERTAIN LAWYERS NAMED AS FACT WITNESSES

As this Court is well aware, the Asbestos Claimants Committee and law firms representing certain asbestos personal injury claimants have fought tooth-and-nail to prohibit every attempt by Debtors to obtain law firm discovery in general, and attorney depositions in particular. At the same time, the ACC has vigorously pursued discovery of Grace's own attorneys and their internal files under "subject-matter waiver" theories to the extent that Debtors affirmatively named Grace's own counsel as potential testifying witnesses at the Estimation Hearing. Through its September 24th non-expert witness disclosures and ensuing discovery conferences, however, the ACC has now made 180 degree turns on both counts.

*First*, as the close of fact discovery nears, it is the ACC itself that -- at the eleventh hour -- has squarely attempted to invoke lawyer testimony as a sword in the estimation proceeding. In particular, the ACC has disclosed at least five attorneys as affirmative fact witnesses from whom

it expects to elicit testimony during the Estimation Hearing, in addition to the three attorneys it had previously disclosed as "expert" witnesses. (*See* Section I, below).

*Second*, despite the fact that the ACC and Debtors have expressly contemplated that all fact witnesses would be subject to deposition prior to the Estimation Hearing, and despite the fact that the ACC has voluntarily offered these attorneys as affirmative witnesses at the Hearing, the ACC and the named attorney-witnesses' counsel continue to stonewall against pre-deposition discovery regarding these very attorneys. Inexplicably, the ACC and the lawyer-witnesses now reprise the same jurisdictional and blanket privilege objections levied in response to Debtors' discovery proffered months ago. These objections were groundless before, but they are untenable now.

In particular, the ACC's attempt to shield the attorneys or their files from discovery under the guise of privilege is directly countermanded by the Committee's own refusals to honor such privilege claims when Grace's own attorneys' internal files were at stake. Remarking that the privilege "protection is foregone when a party affirmatively introduces a factor or legal issue into a case that, in fairness, requires an examination of privileged communications or attorney work-product,"[1] the ACC had previously urged that "parties to this estimation must be allowed to find out if it is really true that Grace settled claims" on the bases proffered by its own attorney witnesses.[2] The ACC now attempts to foreclose Debtors from making precisely the same inquiries that also, in fairness, require an examination of otherwise-privileged materials. This

---

[1] 11/7/06 Motion of the Official Committee of Asbestos Personal Injury Claimants to Compel the Production of Documents [Dkt. No.13598] at 18.

[2] *See id.* at 3.

radical change in position directly contravenes classic "subject matter" waiver principles and should be rejected. (*See* Section II, below.)

Finally, the ACC's attempt to assuage the problems discussed above through post-meet-and-confer undertakings has failed to resolve the inherent inconsistencies and inequities in its approach. The Committee's generic descriptions of expected testimony regarding settlement history fail to offer Debtors material to adequately prepare a cross-examination.[3] This settlement history spans over two decades and covers a multitude of topics that may hold some relevance to the Estimation proceeding. It would literally be impossible for Debtors to meaningfully narrow this all-encompassing subject-matter description for cross-examination purposes without more specificity. In addition, the Committee's untested and untestable assurances that its direct examinations of these witnesses will not implicate "privileged" matters do not provide a basis for avoiding the reasonable discovery requested by Debtors. This is evidenced by the ACC's own position when it sought privileged materials in connection with its depositions and discovery of Grace's own counsel. (*See* Section III, below.)

***

The timing of the ACC's unexpected positions on these issues has placed Debtors in the inequitable position of either: (i) deposing the lawyer-fact witnesses without access to relevant documents in order to meet the discovery cut-off deadline; or (ii) postponing the depositions until document discovery issues are resolved at the risk of foregoing the opportunity to depose the witnesses after October 31st.

---

[3] During the course of meet-and-confer negotiations on this issue, counsel for the ACC agreed to provide some information regarding the testimony expected from these witnesses. However, the ACC refused to provide more than general, broad descriptions of subject areas, such as "settlement negotiations."

3

Rather than sit tight with this looming uncertainty, and pursuant to the Expedited Motion Protocol provided in the Third Newly Amended Case Management Order [Dkt. No. 16468], Debtors respectfully file this Motion seeking an Order:

- relieving Debtors from the pretrial schedule as to the following five attorneys: John Cooney, Peter Kraus, Ted Goldberg, Robert Horkovich, and Stephen Snyder; and

- directing the ACC to provide Debtors with specific descriptions of the subject-matters of these witnesses' expected testimony, including particular cases, discussions, and related documents; and

- to the extent that any materials are withheld under privilege claims, directing the withholding party to provide a privilege log documenting such withheld documents.

In further support of this Motion, Debtors state:

I. **ACC About-Face Number One: One Month Before The Close Of Fact Discovery The ACC -- Which Has Vehemently Opposed Lawyer Discovery At Every Turn -- Revealed Its Intention To Solicit Affirmative Testimony From At Least Five Attorney "Fact" Witnesses At The Estimation Hearing.**

1. The ACC and certain personal injury claimants' attorneys (including at least three of whom are expected to provide voluntary testimony at the Estimation Hearing) have steadfastly rallied against law firm depositions in any circumstance, vehemently opposing such discovery on privilege, jurisdictional, and other grounds.[4] The law firms (including John Cooney's firm (Cooney & Conway) and Peter Kraus's firm (Waters & Kraus)) repeatedly lodged or joined in the ACC's blanket privilege objections even as to the most generic inquiries about the lawyers' processes for responding to Personal Injury Questionnaires and otherwise complying with the

---

[4] *See* Motley Rice LLC's Motion for Protective Order dated June 4, 2007 [Dkt. No. 15950]; Motion of Official Committee of Asbestos Personal Injury Claimants and David T. Austern, Legal Representative For Future Asbestos Injury Claimants, For Protective Order dated June 4, 2007 [Dkt. No. 15955]; Motion of Certain Law Firms to Quash Deposition Notices and for a Protective Order dated June 5, 2007 [Dkt. No. 15966]; Motion of the MMWR Cancer Firms for a Protective Order with Respect to Notices of Deposition Served on Them by W. R. Grace dated June 7, 2007 [Dkt. No. 15987]; Memorandum in Support of Cooney and Conway's Motion for Protective Order dated June 4, 2007 [Dkt. No. 15959]; Debtors' Combined Response to Motions for Protective Orders Precluding Depositions of 21 Law Firms dated June 15, 2007 [Dkt. No. 16059]

Court's discovery orders.[5] And these same law firms similarly challenged deposition notices, claiming that the law firms are not parties to these proceedings, and, thus, a subpoena is required to compel their attendance at a deposition in this case under Fed.R.Civ.P. 45.[6]

2. Following extensive briefing and argument on the issue,[7] the law firms proposed (and the Court agreed to allow) that the law firms answer Interrogatories as a first step before ordering depositions to proceed.[8] Based on the law firms' representations that such Interrogatories would be answered completely and fully[9] (and as specifically further directed by the Court during the August 1 hearing),[10] Debtors forestalled additional law firm discovery.

3. To date, Debtors continue to work with law firms on garnering full and complete responses to this outstanding discovery and otherwise "cleaning up" issues related to same. However, as Debtors' review of responses continues, it is apparent that many law firms still have failed to heed the Court's admonishments and specific directives regarding responding to this discovery.[11] For example, certain firms continue to refuse to answer certain questions on the basis of privilege, fail to follow the Court's clarifying instructions given at the August 1 hearing, and -- despite admitting to withholding certain responsive, non-privileged information -- refuse

---

[5] *See, e.g.,* 6/4/07 ACC Mot. [Dkt No. 15955] at 8; 6/4/07 Mem. in Support of Cooney & Conway Mot. [Dkt. No. 15959]; 6/7/07 Mot. of MMWR Firms [Dkt. No. 15987] (The MMWR Firms include Waters & Kraus).

[6] *See* 6/4/07 Motley Rice Mem. [Dkt. No. 15950] at 4-5; 6/5/07 Certain Law Firms Mot. [Dkt. No. 15966] at 4-6; 6/7/07 MMWR Mot. [Dkt. No. 15987] at 2; 6/4/07 Cooney & Conway Mot. [Dkt. No. 15959] at 4-5.

[7] *See* briefing referred to in footnote 1, *supra*.

[8] 6/26/07 Hrg. Tr. at 82 [Dkt. No. 16208].

[9] *See generally* 6/26/07 Hrg. Tr.

[10] *See generally* 8/1/07 Hrg. Tr. [Dkt. No. 16518].

[11] As directed by the Court, Debtors intend to raise issues concerning responses to this outstanding law-firm discovery during the October 25 Omnibus Hearing. *See* 8/1/07 Hrg. Tr. at 113.

to provide such information when Grace has requested its production. (For instance, Brayton Purcell has refused Grace's compromise offer to accept Brayton Purcell's production of trust claim forms filed on behalf of the claimants and exposure information that may have been contained on claimants' intake forms in lieu of all evidence relating to exposure, despite the fact that there is no privilege preventing the production of such materials.)

4. As it considered extensive briefing and heard oral arguments on lawyer-discovery issues, the Court has repeatedly voiced its desire to close out the law-firm discovery disputes, noting, for example, that "[t]here has to be an end at some point."[12] However, for all their complaints regarding the problems with lawyer testimony, neither the ACC nor the claimants' law firms suggested that, in fact, the "end" was not near, and that issue of lawyer testimony would soon raise its head again through their own voluntary solicitation of "fact witness" testimony from several lawyers during the Estimation Hearing.

5. Indeed, it is only as the contentious chapter of law firm discovery comes to a close that the ACC itself has opened up its own new chapter -- naming no fewer than seven attorneys as affirmative Estimation Hearing witnesses, including three expert witnesses who purport to testify on legal history and the personal injury litigation process,[13] as well as five "fact" witnesses.[14] Two of these attorney-fact witnesses (Cooney and Horkovich) were named for the first time on September 24th.

---

[12] 6/26/07 Hrg. Tr. at 68; *see also id.* at 73 ("[W]e are very close to the end of this process.").

[13] The three attorneys disclosed as expert witness are: Mark Peterson, Marshall Shapo, and Stephen Snyder.

[14] *See* 9/24/07 Official Committee of Asbestos Personal Injury Claimants' Designations of Non-Expert Witnesses [Dkt. No. 16907] (naming John Cooney, Ted Goldberg, Peter Kraus, Robert Horkavich, and Stephen Snyder as "individuals likely to be called by the ACC as non-expert witnesses at the Asbestos PI Estimation Hearing"). The Future Claimants' Representative has cross-designated Mssrs. Goldberg and Kraus as fact witnesses
(Continued...)

6. That the ACC may have named some of these attorney-fact witnesses in previous disclosures is of no moment. For the ACC and the Debtors have repeatedly recognized that previous fact witness disclosures were preliminary in nature. Counsel for the ACC expressed his anticipation that the September 24th disclosures would be reflective of the "real" fact witness likely to be called at trial.[15] As recounted by counsel for Debtors, both Grace and the ACC agreed:

> [T]he date for the exchange of final lists of fact witnesses to be called at trial is September 24th and as a consequence *we don't yet know, no side really knows, exactly what the final list is going to look like*. I think, again, there's a shared desire to have lists that are real lists as opposed to, you know, well here's who we might call. There are lists of who we really will call.
>
> But to the extent that the lists include people whose depositions have not been taken, we want to make sure that we can take depositions of those people and I'm sure that they feel the same way.[16]

7. What is more, the ACC's inclusion of five attorney-fact witnesses on its final disclosure followed on the heels of its repeated privilege objections to Grace's attempts to elicit testimony from claimants' attorneys on the same subjects. This provides another basis to reject any suggestion by the ACC that Debtors should have been on notice that the ACC would proceed

---

"who may be called by the FCR." *See* 9/24/07 Future Claimants' Representative's Designation of Non-Expert Witnesses [Dkt No. 16904].

[15] A comparison of previous disclosures with the September 24th lists confirms this intent. For example, the ACC's September 24th disclosures are different from and more complete than the preliminary lists it had previously filed with the Court. *Compare* 9/24/07 Official Committee of Asbestos Personal Injury Claimants' Designations of Non-Expert Witnesses [Dkt. No. 16907] *with* 2/3/06 Official Committee of Asbestos Personal Injury Claimants' Designations of Non-Expert Witnesses [Dkt. No. 11710].

[16] 8/29/07 Hrg. Tr. [Dkt. No. 16747] at 108 (emph. added). Moreover, the ACC was well aware that there would only be a limited period to resolve issues relating to such depositions. *See, e.g.,* 7/23/07 Hrg. Tr. [Dkt. No. 16445] at 126 (Mr. Finch: stating he had no objection to extending the "deadline for identification of fact witnesses who would testify at the hearing" to September 24th).

to designate some of these very same attorneys as affirmative trial witnesses before the September 24th disclosures.[17]

8.  Incredibly, despite the ACC's injection of lawyer testimony directly into the Estimation Hearing, both the ACC and the lawyer-witnesses themselves continue to resist pre-deposition document discovery at every turn -- levying broad privilege challenges to discovery requests and asserting jurisdictional challenges to this Court's ability to hear and decide discovery disputes as to witnesses which the ACC *affirmatively designated* to testify at the Estimation Hearing.  The ACC further disclaims any power to facilitate these attorneys' attendance at deposition or compliance with document discovery requests.

9.  In addition, at least one lawyer-witness's attorney has suggested that this Court does not have jurisdiction to hear discovery disputes concerning these witnesses, and that Debtors would have to bring such disputes to other courts throughout the country for resolution.  By orchestrating these roadblocks and otherwise delaying the discovery process, the ACC and counsel for the lawyer-witnesses have forced Debtors into the Hobbesian choice of either abandoning appropriate discovery requests or risking violating this Court's pretrial schedule.

II.  **ACC About-Face Number Two: The ACC Now Invokes The Same Privileges That It Had Previously Contended Debtors Could Not Assert When Debtors Designated Attorneys As Fact Witnesses To Testify Regarding Historical Settlement Practices.**

10.  When Debtors disclosed Grace in-house counsel as witnesses that may testify regarding Grace's historical settlement practices, the ACC argued that Grace could not present such testimony without affording the Committee an opportunity to review documents that "might

---

[17] Debtors' designation of Steven Kazan (claimants' attorney) as a potential fact witness is a readily distinguishable situation. Debtors have named Kazan primarily as an authentication witness who (if necessary) may be called to provide the appropriate foundation for the introduction of his Congressional testimony and other public statements into the record.

8

undermine" such testimony.[18]  To allow Debtors to proceed in such fashion, the ACC urged, would constitute "a classic use of privilege as both sword and shield."[19] The ACC emphasized:

> Grace has, in this case, offered statements from its lawyers about their view of the validity of the claims against it. But *even if it had not thus directly invoked the legal advice it received, affirmative disclosure of an otherwise privileged communication is not required for a waiver*. The protection is foregone when a party affirmatively introduces a *factual or legal issue* into a case that, in fairness, requires an examination of privileged communications or attorney work-product.[20]

11.     The ACC's current position thus stands starkly at odds with these and other prior representations to the Court. The ACC urged:

> It would be manifestly unfair to deny the asbestos claimants the opportunity to discover the legal advice Grace received and yet permit Grace to advance self-serving assertions about the content of precisely that advice. Denying the ACC the opportunity to discover the full facts about these issues would be unfair not only to the asbestos claimants, but to this Court. The only possible way for this Court to judge the merits of Grace's factual assertion is to hear evidence on the legal advice Grace received, and for that to happen, the asbestos claimants must be able to discover that advice.[21]

12.     Similarly, the ACC had exclaimed that Grace could not "offer[] its version of its lawyers' views to justify its approach to estimation," while, "at the same time . . . refuse[] to produce documents that might undermine that justification,"[22] yet that is precisely what it tries to do here.[23]

---

[18] *See, e.g.,* 11/7/06 Motion of the Official Committee of Asbestos Personal Injury Claimants to Compel the Production of Documents [Dkt. No. 13598] at 19.

[19] *See id.*

[20] *See id.* at 18 (emph. added).

[21] *See id.* at 23.

[22] *See id.* at 19.

[23] With the aid of the Court, the parties reached a "Stipulation and Order" permitting the production of certain documents relating to the "evaluation . . . conducted or criteria they used . . . and the reasons why" Grace counsel
(Continued...)

9

13.     The only conceivable reason for the ACC calling these asbestos personal injury lawyers as fact witnesses would be to counter the factual testimony of Grace's counsel and to support the ACC's experts' position on the usefulness of Grace's past settlement practices in this estimation. Given that purpose, Grace must be provided access to the same discovery the ACC previously declared to be so essential to its analysis of the same topic.

### III. Meet-And-Confer Does Not Resolve The Issue: The ACC's Vague Descriptions Of Expected Subject Matters Of Testimony Do Not Provide Debtors Adequate Information To Prepare Cross-Examinations Of The Lawyer-Witnesses.

14.     Pursuant to Local Rule 7.1.1 and this Court's orders, Debtors have engaged in good-faith meet-and-confer negotiations with the ACC, as well as counsel for the some of the attorney-witnesses. These efforts have been to no avail.

15.     In particular, the ACC (and certain attorney-witnesses' counsel) refused to agree to Debtors' suggestions that the dispute be resolved (or at least narrowed) by agreeing to modify the deadline for depositions of these five attorney-witnesses and also refused to provide detailed disclosures of the subject matters of these witnesses' expected testimony.

16.     Instead, the ACC provided only vague descriptions of the expected areas of attorney-fact-witness testimony and offered its unilateral assertion that it will not ask the lawyers questions regarding privileged matters. These "disclosures" and assurances do not cure the problem. "Limiting" the areas of testimony to a settlement history that spans over 20 years provides no reasonable basis on which Debtors counsel can effectively prepare a cross-examination.

---

chose to settle certain pre-petition asbestos personal injury claims. *See* 12/21/06 Stipulation and Order [Dkt. No. 14101] at 1.

DOCS_DE:132050.2

17.    And the ACC's representation that it will not elicit testimony concerning privileged matters similarly fails to advance the ball. Regardless of what testimony the ACC intends to elicit, it simply cannot choose to place settlement negotiations and discussions at issue and then refuse to allow Debtors to discover impeachment evidence on the same subject matter under the guise of privilege.[24]

18.    Finally, any contention that Debtors could revisit privilege issues depending on what evidence is actually presented at the Hearing should be rejected. As the ACC commented on the same issue in the context of Grace's attorneys:

> Because the ACC and FCR have to assume, based on Grace's counsel's statements, that Grace intends to make this assertion, the ACC and FCR must be given the opportunity for discovery geared to producing evidence relevant to determining the truth of that factual contention. *Waiting for evidence which Grace will advance at trial will be too late.*[25]

***

19.    The question of whether the attorney "expert" or "fact" testimony that the ACC seeks to elicit is proper and admissible is for another day. Today, the issue is whether these lawyer witnesses can voluntarily step forward to testify at the Hearing and yet simultaneously: (i) object to basic factual inquiries on the basis of privilege; (ii) take the position that this Court lacks jurisdiction to entertain discovery disputes concerning these witness; and (iii) delay the

---

[24] *Cf.* 12/1/06 Reply Motion of the Official Committee of Asbestos Personal Injury Claimants to Compel the Production of Documents [Dkt. No. 13873] at 3-4 ("The ACC and FCR are entitled to prepare for the possibility that, having raised the issue of settling non-meritorious cases, Grace will offer some evidence in support of it, and to do that preparation the ACC and FCR must undertake discovery that will lead to evidence appropriate to refute the claim.").

[25] *See* 11/7/06 Motion of the Official Committee of Asbestos Personal Injury Claimants to Compel the Production of Documents [Dkt. No. 13598] at 3 (emph. added).

discovery process such that taking depositions within the Court's specified timeframe is all but impossible.

20.    As fact discovery closes pursuant to the current pretrial schedule, time is critical to a ruling on this Motion. Consequently, Debtors request (and the ACC has agreed) that this issue may be raised at the October 25, 2007 Omnibus Hearing. Debtors further request that after hearing on this matter, the Court order: 1) that the fact discovery period is held open to the extent required to complete the discovery of the attorneys listed on the ACC's fact witness list; 2) that the ACC provide Debtors with specific descriptions of the subject-matters of these witnesses' expected testimony, including particular cases, discussions, and related documents; and 3) that, to the extent that any materials are withheld under privilege claims, the withholding party provide a privilege log documenting such withheld documents.

Dated: October 19, 2007

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick
Janet S. Baer
200 East Randolph Drive
Chicago, IL 60601-6636
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

and

*[signature]*

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession