IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| W.R. GRACE & CO., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | Jointly Administered |
| | **Hearing Date:** November 26, 20097 @ 2:00 PM |
| | **Objections Deadline:** November 19, 2007 @ 4:00 PM |

## LIBBY CLAIMANTS' MOTION IN LIMINE
## CONCERNING ESTIMATION PROCEEDING EVIDENCE

Claimants injured by exposure to asbestos from Grace's operations in Lincoln County, Montana[1] (the "Libby Claimants"), by and through their counsel, Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP, hereby move this Court to enter the attached form of order excluding from this Court's proceeding (the "Estimation Proceeding") to estimate Grace's aggregate liability for pending and future asbestos personal injury claims ("Aggregate Liability") all evidence concerning medical issues regarding Libby Claimants ("Libby Asbestos Disease").

The sole purpose of the Estimation Proceeding is to estimate Aggregate Liability, as may be determined from the evidence prepared in the case. Here, with the submission of all expert reports it has become clear that neither Grace and its allies nor the asbestos constituencies can or will offer into evidence a separate figure representing an estimate of Grace's liability for asbestos claims arising from Grace's operations in Lincoln County, Montana ("Libby Claims"). Despite the absence of statistical evidence that differentiates Libby Claims, Grace proposes to consume at least two weeks of this Court's and the parties' time in the Estimation Proceeding by submitting evidence that relates solely to medical issues concerning the Libby Claimants. This

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [Docket No. 15692], as it may be amended and restated from time to time.

medical evidence does not tie to statistical evidence concerning the number and value of Libby Claims and should be excluded from the Estimation Proceeding without risk to this Court's ability to estimate Aggregate Liability. It would be improper as well as wasteful for this Court to indulge Grace's hope of obtaining from this Court some kind of advisory opinion concerning Libby Claims or other rulings that Grace will incorrectly contend are binding on particular holders of Libby Claims in other contexts.[2]

In support of this Motion, the Libby Claimants state:

## Background

1. On November 13, 2004, W.R. Grace & Co. and certain of its affiliates (collectively, "Grace") filed their Chapter 11 Plan of Reorganization and proposed form of Disclosure Statement[3] and their Motion for Entry of an Order Seeking the Estimation of Asbestos Claims and Certain Related Relief (the "Estimation Motion").[4] At the hearing on objections to the Disclosure Statement and Estimation Motion held on January 21, 2005, the Court ordered the Official Committee of Asbestos Personal Injury Claimants (the "ACC"), the Futures Claimants' Representative (the "FCR"), other official committees in the case, and Grace to negotiate a case management order to govern the Estimation Proceeding.

2. On August 29, 2005, the Court entered the Case Management Order for the Estimation of Asbestos Personal Injury Liabilities,[5] which has subsequently been amended

---

[2] It is axiomatic that this Court's estimate of Aggregate Liability, along with any subsidiary determinations of fact or law in the Estimation Proceeding, will not bind any party concerning the allowance of any particular asbestos personal injury claim (or future claim) or its entitlement to a distribution from any trust established under a Chapter 11 plan.

[3] [Docket Nos. 6895, 6896].

[4] [Docket No. 6899].

[5] [Docket No. 9301].

393.001-18292

several times, most recently on August 2, 2007 (the "PI CMO").[6] Pursuant to the PI CMO, the Estimation Proceeding is guided by various discovery deadlines, culminating in a trial currently scheduled to begin in January 2008. The PI CMO did not attempt to resolve a fundamental issue articulated by Grace, the ACC, and the FCR, namely, whether the personal injury claims estimation would (as proposed by the ACC and FCR) be on the basis of past verdicts and settlements or would (as proposed by Grace) include placing lower values (including zero) on some or all claims based on Grace's assertion of legal/medical criteria.

3. Despite the competing estimation methodologies, all parties agree—and in any event this Court has consistently stated—that the sole purpose of the Estimation Proceeding is to estimate Aggregate Liability, and that the Estimation Proceeding is not and cannot be the equivalent of a claims allowance proceeding. See 8/29/07 Hr'g Tr. at 69 ("[T]his is an aggregate estimation process."); 4/13/07 Hr'g Tr. at 21("[T]his is not individual claims litigation. It's an estimation process.").

4. In accordance with the PI CMO, Grace submitted expert witness disclosures[7] (collectively, the "Grace Expert Witness Disclosure") and non-expert witness disclosures[8] (collectively, the "Grace Non-Expert Witness Disclosure"). By the Grace Expert Witness Disclosure, Grace designated 26 experts for the Estimation Proceeding. Of the 20[9] that

---

[6] [Docket No. 16468].

[7] Parties to the Estimation Proceeding were required to submit their expert and supplemental expert witness disclosures on or before August 21, 2006. Grace submitted its preliminary expert witness disclosure on December 19, 2005 [Docket No.11378] and its supplemental expert witness disclosure on August 21, 2006 [Docket No. 13032].

[8] The parties to the Estimation Proceeding were also required to submit their non-expert disclosures on or before September 24, 2007. Grace submitted its preliminary non-expert witness disclosure on February 3, 2006 [Docket No. 11718] and its final non-expert witness disclosure on September 24, 2007 [Docket No. 16906].

[9] Grace has subsequently withdrawn Drs. Paul E. Epstein, David H. Garabrant, Herman Gibb, and Bertram Price, as experts in the Estimation Proceeding.

393.001-18292

ultimately served expert reports, four address issues solely related to Libby while another 13 address Libby as well as non-Libby issues. The Libby focus is no less in the Grace Non-Expert Witness Disclosure, where the preliminary[10] and final[11] designations include many individuals whose testimony is expected to address Libby-specific issues. All told, Grace has designated more than 19 expert and non-expert witnesses to testify on issues related to Libby. Attached hereto, (i) as Exhibit A, is a list of Grace expert witnesses that will testify only to Libby-specific issues, (ii) as Exhibit B, a list of Grace expert witnesses whose testimony may, in part, concern Libby-specific issues, and (iii) as Exhibit C, is a list of Grace non-expert witnesses whose testimony may, in part, concern Libby-specific issues.

5.  Because the ACC declined to designate witnesses on Libby-specific issues,[12] the Libby Claimants were effectively compelled to participate in the Estimation Proceeding, lest Grace's expert and non-expert witnesses concerning Libby Claims would go unanswered. The Libby Claimants do not constitute an official committee and are only a subset of the holders of Libby Claims. Other Libby Claims consist of future claims which almost certainly will be

---

[10] Grace's preliminary designation included: Brad Black, M.D. (physician and director of the Center for Asbestos Related Disease in Libby); Sharon Campolucci (director of the Agency for Toxic Substances and Disease Registry (ATSDR), who has worked on various Libby projects); Mary Kay Collins (Dr. Whitehouse's respiratory therapist who performed pulmonary function tests in Dr. Whitehouse's office); James Jay Flynn, M.D. (administrator of the Grace Libby Medical Program); Vikas Kapil (author of one or more publications on Libby); Jeffrey Lybarger (ATSDR director and an author of one or more publications on Libby); Dan Middleton (ATSDR official who has worked on Libby issues); Aubrey Miller (toxicologist and/or public health officer for the EPA who has done work on Libby); Christopher Weis (toxicologist with the EPA and has done work on Libby); and Alan Whitehouse, M.D. (pulmonologist and physician with the Center for Asbestos Related Disease in Libby).

[11] Grace's final designation of non-expert witnesses dropped many of the individuals designated in the preliminary designation, but added Patricia A. Sullivan (National Institute for Occupational Safety and Health employee that authored the Libby Cohort Mortality Study) and still included James Jay Flynn, M.D. and Alan Whitehouse, M.D.

[12] While the Libby Claimants have certain interests in common with the ACC and for those purposes can and have been adequately represented by the ACC's professionals—Grace, as shown by their list of witnesses, raised significant issues specific to Libby which the ACC informed the Libby Claimants that the ACC did not and does not plan to address. For a thorough discussion concerning the ACC's decision not to designate witnesses on Libby-specific issues, see Libby Claimants' Motion for Payment of Certain Expenses In Connection with Claims Estimation and Plan Process dated February 20, 2006 [Docket No. 11865], which motion was denied without prejudice.

393.001-18292

asserted for injuries caused by Grace's Montana operations as well as present claims not represented by Libby Claimants' counsel. There was no other party willing to address what appeared to be Grace's effort to single out Libby Claims for attack in the context of the Estimation Proceeding. Accordingly, the Libby Claimants designated Alan Whitehouse, M.D. and Arthur Frank, M.D., PhD, as expert witnesses to address medical issues specific to the Libby Claimants. Recently, on September 24, 2007, the Libby Claimants designated non-expert witnesses that they may call to testify at the Estimation Proceeding.[13]

      6.      The PI CMO provided for three rounds of reports by non-statistical (primarily medical) experts (the "Medical Experts") and two rounds of reports by statistical experts (the "Statistical Experts")—those who would testify about the number, amount and value of present and future asbestos claims. As Medical Experts, Drs. Whitehouse and Frank each filed an initial report and two rounds of supplemental or rebuttal reports to respond to the numerous Grace Medical Experts who filed reports raising medical issues specific to the Libby Claimants.[14] Many of Grace's Medical Experts had already done extensive reports for the criminal case of U.S. v. Grace, CR-05-07-M-DWM (D. Mont.), so Grace chose to lob the very same reports (sometimes with a different cover page) into the Estimation Proceeding. For the Libby Claimants, the requirement to respond to the Grace reports created an extraordinary burden, especially for Dr. Whitehouse, whose primary responsibility is to care for the patients with Libby Asbestos Disease. Dr. Whitehouse is not an expert witness for hire, who can devote extensive time to litigation matters. The Libby Claimants are the only party to the Estimation Proceeding

---

[13] [Docket No. 16905].

[14] Generally, by the Medical Expert reports, the Libby Claimants assert, and Grace denies, that Libby Asbestos Disease has different characteristics from asbestos disease caused by other Grace asbestos.

393.001-18292

not funded by the Grace estate, but nevertheless had little choice but to respond to Grace's expert reports.

7. While the Medical Experts primarily focused on medical issues, the Statistical Experts were charged with actually providing an opinion on Grace's Aggregate Liability. The Libby Claimants did not designate a Statistical Expert, relying instead on the aggregate value methodology and Statistical Expert reports filed by the ACC and the FCR. In presenting an estimation methodology consistent with actuarially-based estimations accepted in various courts, the ACC and FCR present data based on all verdicts and settlements of asbestos claims against Grace, which data subsume verdicts and settlements of Libby Claimants. Grace abandoned the traditional estimation methodology, used uniformly in other asbestos bankruptcy cases, and has prepared an estimation methodology primarily based on medical criteria devised by Grace to delineate what Grace considers valid asbestos claims. Consistent with Grace's assertion that Libby Claims are subject to the same medical criteria as any other asbestos claim, the Statistical Expert reports produced by Grace and its allies present no separate quantification of Libby Claims.

8. In sum, with the submission of final Statistical Expert reports on September 25, 2007, it became clear that *no party to the Estimation Proceeding will present to this Court a separate estimate for Libby Claims (including unasserted and future claims)*.[15]

9. This development raises the question: of what relevance is the two to three weeks of expert testimony concerning issues specific to Libby, given that the Court will not be provided a basis to translate any conclusions into dollars of Aggregate Liability? The Libby Claimants

---

[15] In addition to the obvious point that under the PI CMO, the Statistical Experts are limited to the opinions and data they have presented in their reports, the scope of work performed by the Statistical Experts would not likely permit a reliable estimate of Libby Claims as a separate group, given the relatively small number of Libby Claims and factors peculiar to Libby Claims concerning timing of exposures, diagnoses, and so on—totally apart from disputed medical issues such as the progressivity of Libby Asbestos Disease.

393.001-18292

have sufficient confidence in the case assembled by the ACC and the FCR—to the effect that Grace's novel estimation methodology is incorrect and that Grace's proposed medical criteria are incorrect as they relate to *any asbestos disease*—that they are willing to forego a separate attack on the Grace medical criteria as applied to Libby. Paring down the issues in the Estimation Proceeding so as to eliminate Libby-only evidence will provide a benefit to all parties and to this Court by saving perhaps two to three weeks of trial time, never mind the complexity of this Court addressing additional issues not germane to the estimate of Aggregate Liability. In order to confer this benefit, however, the Libby Claimants need to be protected, through entry of the proposed form of order, from being blindsided through the presentation at the Estimation Proceeding, in the Libby Claimants' absence, of any evidence relating to Libby Claims separately from asbestos claims as a whole.

10. To achieve the exclusion of evidence concerning Libby Asbestos Disease in connection with the Estimation Proceeding, the attached proposed form of order recognizes that there will be no need for (a) any testimony by the expert witnesses listed in Exhibit A (the "Libby-only" experts), (b) testimony concerning Libby Asbestos Disease by the expert witnesses listed in Exhibit B (experts testifying about Libby and non-Libby issues), (c) testimony by any non-expert witness listed as such by the Libby Claimants, (d) testimony by any other non-expert witness concerning Libby Asbestos Disease, including any testimony by the witnesses listed in Exhibit C, or (e) any further participation in the Estimation Proceeding by counsel to the Libby Claimants. Accordingly, the proposed order provides that (i) no evidence shall be received on Libby Asbestos Disease, (ii) the expert witnesses listed in Exhibit A shall not testify or be subject to further discovery in the Estimation Proceeding, and their reports are stricken from the record, (iii) the expert witnesses listed in Exhibit B shall not testify or be subject to further

discovery in the Estimation Proceeding concerning Libby Asbestos Disease, and their reports are hereby stricken from the record to the extent that they address Libby Asbestos Disease, (iv) the persons listed by the Libby Claimants as potential fact witnesses in connection with the Estimation Proceeding shall not testify or be subject to further discovery in the Estimation Proceeding, (v) the non-expert witnesses listed in Exhibit C shall not testify or be subject to further discover in the Estimation Proceeding concerning Libby Asbestos Disease, and (vi) the Libby Claimants shall not appear in, or in connection with, the Estimation Proceeding as a separate party from the ACC.

11.    Because this Motion only relates to the Estimation Proceeding, the rights of all parties are reserved on all issues – including but not limited to (other than in the Estimation Proceeding) the medical criteria for Libby Asbestos Disease, the extent (if any) to which Libby Asbestos Disease has separate characteristics from other asbestos disease, and whether and in what amount any particular claim based on Libby Asbestos Disease should be allowed – as they might arise in any other context. It is likely that judicial determination of Libby medical criteria will never become necessary, but even if this issue were to prove relevant to a future adversary proceeding or contested matter, it would not serve the interests of the estate, the parties or this Court to elongate and complicate the Estimation Proceeding through the premature consideration of Libby issues.

12.    Without entry of the proposed order, there will be virtually no chance of this Court being able to complete trial of the Estimation Proceeding within the 18 days that this Court has set aside from January 14, 2008 to April 16, 2008.

393.001-18292

### Notice and No Prior Motion

13.     The Libby Claimants have provided notice of this Motion to: (a) the Office of the United States Trustee for this district; (b) counsel to the parties to the Estimation Proceeding, including Grace and all official committees appointed in this case; and (c) all parties on the regular service list including all parties that have requested notice and service of pleadings in this case. The Libby Claimants submit that, given the nature of the relief requested herein, no other or further notice is necessary.

14.     No previous request for the relief sought herein has been made to this or any other Court.

### Conclusion

WHEREFORE, the Libby Claimants respectfully request that this Court: (a) enter an order granting the Motion in substantially the form attached hereto; and (b) grant such other and further relief as this Court may deem just and proper.

*[Remainder of page left blank intentionally.]*

393.001-18292

Dated: October 22, 2007

                    LIBBY CLAIMANTS

                    By their attorneys,

                    */s/ Kerri Mumford*
                    Adam G. Landis (DE No. 3407)
                    Kerri Mumford (DE No. 4186)
                    LANDIS RATH & COBB LLP
                    919 Market Street, Suite 600
                    P.O. Box 2087
                    Wilmington, DE  19801
                    (302) 467-4400 (Phone)
                    (302) 467-4450 (Fax)

                    and

                    Daniel C. Cohn
                    Christopher M. Candon
                    COHN WHITESELL & GOLDBERG LLP
                    101 Arch Street
                    Boston, MA  02110
                    (617) 951-2505 (Phone)
                    (617) 951-0679 (Fax)