IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hearing Date: November 26, 2007 |
| | ) | Responses Due: November 9, 2007 at 4:00 p.m. |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
AUTHORIZING THE EMPLOYMENT AND RETENTION OF
DELOITTE FINANCIAL ADVISORY SERVICES LLP
TO PROVIDE CERTAIN DUE DILIGENCE SERVICES
<u>NUNC PRO TUNC TO OCTOBER 1, 2007</u>**

The above-captioned debtors and debtors in possession (the "Debtors") hereby submit this Application (this "Application") for Entry of an Order Authorizing the Employment and Retention of Deloitte Financial Advisory Services LLP ("Deloitte FAS") to Provide Certain Due Diligence Services *Nunc Pro Tunc* to October 1, 2007. Attached hereto as <u>Exhibit B</u> is the affidavit of Timothy Hurley filed in support of this Application (the "Hurley Affidavit").

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein are sections 327(a) and 328(a) of the Bankruptcy Code and Fed. R. Bank. P. 2014(a) and 5002.

## Background

2. On April 2, 2001 (the "Petition Date"), the Debtors each commenced with the Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and such cases have been ordered jointly administered. The Debtors continue to be authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. Certain affiliates of Deloitte FAS have previously been approved by the court to provide various professional services to the Debtors in these Chapter 11 cases. Specifically, the application of the Debtors seeking authority to employ and retain Deloitte & Touche LLP ("Deloitte & Touche") as customs services providers, and tax and compensation advisors to the Debtors *nunc pro tunc* to February 4, 2003 was filed by the Debtors on April 25, 2003. The affidavit of Larry D. Ishol (the "Deloitte & Touche Retention Affidavit") was filed in support of the Deloitte & Touche Retention Application. The order approving the Deloitte & Touche Retention Application was signed by the Court on June 17, 2003. On July 19, 2004, the Court entered an order authorizing the expansion of the scope of services permitted to be provided by Deloitte & Touche to the Debtors to include certain lease consulting services.

4. Following the retention of Deloitte & Touche in these Chapter 11 cases, Deloitte & Touche implemented a reorganization of some of its business units. Consistent with this

2

reorganization, Deloitte Consulting LLP ("Deloitte Consulting") sought to be retained as compensation advisors and to provide certain lease consulting services to the Debtors in these Chapter 11 cases. On September 27, 2004 the Court entered an order approving the retention of Deloitte Consulting *nunc pro tunc* to July 1, 2004. Similarly, Deloitte Tax LLP ("Deloitte Tax") sought to be retained as tax services providers to the Debtors in these Chapter 11 cases. On December 24, 2004 the Court entered an order approving the retention of Deloitte Tax *nunc pro tunc* to August 22, 2004.

### Relief Requested

5.  By this Application, the Debtors request the entry of an order authorizing them to separately employ Deloitte FAS to serve the Debtors in these Chapter 11 cases by providing certain due diligence services in accordance with the terms of this Application, the Affidavit and the engagement letter entered into between Deloitte FAS and the Debtors dated September 27, 2007, attached to this Application as Exhibit A hereto (the "Engagement Letter").

### Qualifications of Deloitte FAS and Scope of the Due Diligence Services

6.  The Debtors have requested Deloitte FAS provide services to the Debtors relating to a limited due diligence investigation in connection with a proposed transaction relating to the disposition and settlement of certain environmental liabilities of the Debtors. The scope of the services is more fully described in the Engagement Letter (the "Due Diligence Services").[2]

7.  Deloitte FAS personnel have considerable experience in providing clients, both in and out of bankruptcy, with the scope of services it anticipates providing to the Debtors in these Chapter 11 cases. In particular, personnel of Deloitte FAS routinely assist clients in transactional

---

[2] The name(s) of the party(ies) being reviewed is confidential and has been redacted from the Engagement Letter.

matters by providing various accounting and financial assessment services, and transaction structure analysis services, similar in scope to the Due Diligence Services hereunder. Further, as a result of the services provided to the Debtors in these Chapter 11 cases by Deloitte & Touche, Deloitte Consulting and Deloitte Tax, Deloitte FAS has considerable institutional knowledge of the Debtors at is disposal. Because of (a) the experience and knowledge of the personnel of Deloitte FAS in providing services of the nature for which its retention is sought in these Chapter 11 cases, and (b) the familiarity of such personnel with the Debtors' business and affairs, the Debtors' management believes that Deloitte FAS is well-qualified to serve the Debtors in these Chapter 11 cases in an efficient and cost-effective manner.

8. The Debtors believe that the Due Diligence Services are necessary to enable the Debtors to maximize the value to their estates as a result of the potential transaction for which Deloitte FAS is providing the Due Diligence Services. The Debtors also believe that the Due Diligence Services will not duplicate the services that other professionals may provide to the Debtors in these Chapter 11 cases, nor can any other professionals currently retained provide such services. Furthermore, Deloitte FAS will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

### Deloitte FAS's Disinterestedness

9. Based on the representations contained in the Hurley Affidavit, the Debtors believe that Deloitte FAS and the Deloitte FAS Engagement Partners/Principals/Directors (as defined in the Hurley Affidavit) are disinterested as such term is defined pursuant to Section 101(14) of the Bankruptcy Code.

10. As set forth in the Hurley Affidavit, because Deloitte FAS is a nationwide firm with thousands of personnel, and because the Debtors are a large enterprise, Deloitte FAS is unable to state with certainty that every client relationship or other connection has been

disclosed. In this regard, Deloitte FAS has represented in the Hurley Affidavit that if Deloitte FAS discovers additional information that it determines requires disclosure, Deloitte FAS will file a supplemental disclosure with the Court promptly.

11. Deloitte FAS provided no services to the Debtors prior to the Petition Date. Additionally, Deloitte FAS is not aware of any pre-petition claims held by Deloitte FAS against the Debtors for fees and expenses in respect of services rendered; however, to the extent such claims exist, Deloitte FAS agrees not to seek or accept any recovery thereon. Further, Deloitte FAS has received no post-petition retainers from the Debtors in respect of any services it may in the future provide to the Debtors.

12. Deloitte FAS has received no promises regarding compensation in the case other than in accordance with the Bankruptcy Code and as set forth in the Hurley Affidavit. With respect to the services to be provided to the Debtors as described herein, Deloitte FAS has no agreement with any non-affiliated entity to share any revenues earned in these Chapter 11 cases.

### Compensation and Expense Reimbursement

13. Subject to the Court's approval and pursuant to the terms and conditions of the Engagement Letter the Debtors propose to compensate Deloitte FAS at its customary transactional fees for services rendered, plus reimbursement of actual, necessary expenses incurred by Deloitte FAS. Deloitte FAS seeks to be retained pursuant to the Application at the following hourly rates by personnel classification:

| Personnel Classification | Hourly Billing Rates |
| --- | --- |
| Partner, Principal, or Director | $875 |
| Senior Manager | $725 |
| Manager | $625 |
| Senior Staff | $470 |
| Staff | $375 |

91100-001\DOCS_DE:132096.1

14.     The hourly billing rates set forth above reflect, among other things, differences in experience levels within classifications, geographic differentials and differences between types of services being provided. In the normal course of business, Deloitte FAS revises its regular hourly billing rates to reflect changes in responsibilities, increased experience, and increased costs of doing business. Accordingly, the Debtors request that Deloitte FAS be permitted to revise the aforementioned rates to the hourly billing rates that will be in effect from time to time. Changes in regular hourly billing rates will be noted by Deloitte FAS on the invoices for the first time period in which the revised rates became effective.

15.     The professional fees charged for Deloitte FAS's services are calculated from the actual hours expended in providing the services multiplied by the regular hourly billing rates for the specific personnel involved. In addition, reasonable expenses, including travel, report production, delivery services, and other expenses incurred in providing the services, will be included in the total amount billed. Deloitte FAS will maintain reasonably detailed records of any costs and expenses incurred in connection with its provision of the Due Diligence Services.

16.     Deloitte FAS will seek compensation and reimbursement of expenses for the provision of the Due Diligence Services in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules and any orders of the Court.

17.     All payments rendered pursuant to Deloitte FAS's retention by the Debtors must be approved by an order of this Court and based upon the filing by Deloitte FAS of appropriate interim, if applicable, and final applications for allowance of compensation and reimbursement of expenses.

## Notice

18. Notice of this Application has been given to: (i) the United States Trustee, (ii) the debtor-in-possession lenders, (iii) counsel to Chase Manhattan Bank as agent to prepetition lenders, (iv) counsel to all official committees appointed by the United States Trustee; (v) counsel to the Future Claimants' Representative, and (vi) all those parties that requested service and notice of papers in accordance with Fed R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

19. No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto, authorizing the employment and retention of Deloitte FAS as due diligence service provider pursuant to the terms of this Application, the Hurley Affidavit and the Engagement Letter *nunc pro tunc* to October 1, 2007 and grant such further relief as is just and proper.

Dated: October 22, 2007

Respectfully submitted,

KIRKLAND & ELLIS LLP
Janet S. Baer
Lori Sinanyan
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

PACHULSKI, STANG, ZIEHL & JONES LLP

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession