# EXHIBIT A

# Deloitte.

Deloitte Financial Advisory Services
LLP
200 Berkeley Street
Boston, MA 02116-5022
USA

Tel: +1 617 437 2000
Fax: +1 617-437-2111
www.deloitte.com

September 27, 2007

William Dockman
Vice President, Finance
W.R. Grace & Co.
Corporate Headquarters
7500 Grace Drive
Columbia, MD 21044

Re:

Dear Mr. Dockman:

## UNDERSTANDING OF ROLE

This letter (hereinafter called the "Agreement") sets forth the understanding between Deloitte Financial Advisory Services LLP ("Deloitte FAS"), and W.R. Grace & Co. – Conn. (the "Company"), whereby Deloitte FAS will provide the services described herein. The Company hereby engages Deloitte FAS, and Deloitte FAS hereby accepts the engagement, to conduct a limited due diligence investigation of the Subject, in order to assist the Company in connection with its due diligence efforts (the "Services") on the terms and conditions set forth herein. The data collected will be summarized in a report to the Company (the "Deloitte FAS Report"). The parties acknowledge that this Agreement pertains only to the limited due diligence investigation described above and does not apply to any other services that Deloitte FAS may provide to the Company. The specific procedures to be performed by Deloitte FAS will be established based on discussions with the Company as its investigation of the Subject progresses and additional information is obtained during the course of the engagement.

Deloitte FAS may provide the following Services, as may be mutually agreed to by Deloitte FAS and the Client:

## REORGANIZATION SERVICES:

Deloitte FAS' Reorganization Services Group ("RSG") will provide assistance to the Company in connection with the Services as described below. RSG will perform such Services which may include, but may not be limited to the following:

### Historical Financial Statements

The following steps will be conducted through discussions with        management to assist the Company in:
- Obtaining a high-level understanding of the basis of accounting (e.g. GAAP, Cash or some combination of the two)

William Dockman
W.R. Grace & Co.
September 27, 2007

- Obtaining a high-level understanding of how _____ segregates individual projects in their accounting system and for banking and cash management purposes
- Obtaining a high-level understanding of the Revenue Recognition policies
- Obtaining a high-level understanding of how costs associated with land, property, and inventory are determined when sales are made; including an understanding of how these transactions are booked
- Obtaining a high-level understanding of where the environmental liabilities are booked on the balance sheet

The following steps will be conducted through discussions with management and may include assessment of a limited sample of accounts:

- Assist the Company in its analysis of the Subject's unaudited financials for FY 2005, FY 2006 and YTD 2007 and provide commentary regarding our observations and findings including:
  o Comparing the latest available financial statement's cash balances to bank statements
  o Obtaining an understanding of major investments and obtain supporting documentation (e.g. broker statements, custodian's statements) from _____ where available. Also obtain an understanding of how cash and investments are managed and allocated among the individual entities
  o Obtaining a high-level understanding of the flow of intercompany transactions
  o Preparing a comparative analysis of the 2005, 2006 and YTD 2007 Income Statements
  o Assisting the Company in connection with its evaluation of non-cash items and identify depreciation and amortization methodologies
  o Obtaining a high-level understanding of the source of dividend income
  o Assisting the Company in the analysis of the Equity Section of the Balance Sheet, including an understanding of balances and how changes to equity accounts are determined and booked
  o Obtaining a high-level understanding of the intangibles on the balance sheet and the fluctuation between 2005 and 2006
  o Obtaining an understanding of how developed land and undeveloped land are valued on the Balance Sheet
  o Obtaining an understanding of the major assets within the inventory line and identify the manner in which they are valued

<u>Grace Transaction</u>

- Assist the Company in understanding how _____ will structure the Grace transaction.
  o Obtain an understanding of how the Grace properties will be managed and placed within the legal structure
  o Obtain an understanding of how the cash escrow will be managed and through which legal entity
  o Determine _____'s estimate for the timing completion of the environmental remediation of these properties
  o Obtain an understanding of how _____ will finance the projects associated with the Grace projects. Including an overview as to how _____ intends to insure the Grace related projects
  o Assist the Company in understanding which _____ or _____ entities would provide guarantees and how this has been handled in the past for other companies.

William Dockman
W.R. Grace & Co.
September 27, 2007

The Company acknowledges and agrees that the performance of the Services does not constitute (i) a recommendation regarding the acquisition or financing of any business, assets, liabilities or securities or (ii) an examination or compilation of prospective financial information in accordance with standards established by the American Institute of Certified Public Accountants. The Services and the Deloitte FAS Report are not intended to be, and shall not be construed to be, "investment advice" within the meaning of the Investment Advisers Act of 1940. It is understood that Deloitte FAS will not provide, nor will it be responsible for providing, legal advice hereunder. Company agrees that it will look to its counsel for legal advice concerning any contemplated transactions or other matters relating to the Services.

The scope of our RSG Services, as well as the complexity and duration of this engagement, can vary greatly due to the circumstances which may not be anticipated. Our fees and expenses are not contingent upon the final resolution of the matters that are the subject of this engagement. The Company agrees that Deloitte FAS assumes no responsibility for the accuracy of information provided by      and      , or the Company and its affiliates, that cost/benefit and other considerations will preclude Deloitte FAS from pursuing every conceivable source of information about the Subject, that we will use our professional judgment to identify the information sources to be searched, and that if other professionals undertook similar limited due diligence investigations of the same subjects, such professionals might provide different findings than Deloitte FAS. Accordingly, Deloitte FAS will not provide assurance that it has identified all information that might be available in the public or private domains about a particular subject. Deloitte FAS assumes no responsibility to update the Deloitte FAS Report for events or circumstances occurring after the date on which the Deloitte FAS Report is first furnished to the Company.

The Company has requested that Deloitte FAS perform the services described herein. Deloitte FAS has agreed to perform such services, subject to the terms and conditions of this engagement letter. While we do not anticipate the need to do so, Deloitte FAS may, in its sole discretion and without any liability arising therefrom, terminate this engagement. Should it become necessary for Deloitte FAS to exercise its termination rights, we will work cooperatively with the Company and /or its advisors to transition and maintain the value of any services provided up to such date. Conversely, the Company may terminate Deloitte FAS; (a) with two weeks notice of termination and (b) by tendering full payment for services provided, and reimbursement of expenses incurred up to and including the termination date.

The Company agrees that any written reports, schedules, other materials, or documents prepared or provided by Deloitte FAS are to be used only for the purpose of the above-entitled matter and will not be disclosed, quoted, or referenced, or used, in whole or in part, by the Company for any other purpose without Deloitte FAS' prior written permission. This Engagement shall not create privity between Deloitte FAS and any third party. Neither the Deloitte FAS Report nor the Services provided hereunder are intended for the express or implied benefit of any third party; provided however that Deloitte FAS will meet with the representatives of WR Graces' bankruptcy constituents for the purpose of communicating our results of our work.

Deloitte FAS, its affiliates and related entities may have provided, may currently provide, and may in the future provide, other services, such as audit, tax and consulting services, (including services in connection with the transaction and related financing arrangements), to the Company and its affiliates, and the Company acknowledges that the Deloitte FAS Report will be based solely on the limited inquiries to be made by Deloitte FAS as specified herein, and the Company agrees that Deloitte FAS and its personnel shall have no responsibility to the Company to use or disclose information that Deloitte FAS, its affiliates or related entities

William Dockman
W.R. Grace & Co.
September 27, 2007

possess by reason of such other services, whether or not such information might be considered material to the Company's evaluation of the transaction.

On April 2, 2001 (the "Petition Date"), the Debtors filed in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtor has requested that Deloitte FAS perform the services described herein and Deloitte FAS has agreed to perform such services, subject to the terms and conditions of this engagement letter. This engagement letter, and Deloitte FAS's obligations and responsibilities relating to this engagement, shall be effective as of September 19, 2007, subject to obtaining Bankruptcy Court approval in the matters *In re: W. R. Grace Co. Case No. 01-01139-JKF (Jointly Administered)* (collectively, the "Case"); provided, however, that, in addition to Deloitte FAS's other rights or remedies, Deloitte FAS may, in its sole discretion and without any liability arising therefrom, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte FAS reasonably believes that a third party may object, prior to an order approving the retention of Deloitte FAS in the form of an objection or otherwise, to Deloitte FAS's retention by the Debtor in the Case on the terms and conditions set forth in this engagement letter, (b) a final order authorizing the employment of Deloitte FAS in connection with the Services is not issued by the Bankruptcy Court in the Case on or before sixty (60) days from the date hereof on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to Deloitte FAS, or (c) the application of the Debtor seeking such order is denied by the Bankruptcy Court in the Case. In such event, the Debtor hereby agrees to withdraw, promptly upon Deloitte FAS's request, any application filed or to be filed with the Bankruptcy Court to retain Deloitte FAS's services in the Case.

## CONFLICTS

We have undertaken an internal search for any potential client conflicts (the "Conflicts Search") based upon the names of the parties that you have provided (the "Involved Parties"). Nothing has come to our attention that, in our judgment, would impair our ability to objectively serve you in this engagement. Except for the Conflicts Search, we have not undertaken any process to identify any other relationships with the Involved Parties. The Company agrees that it will inform us promptly of additional parties to this matter or of name changes for those parties whose names were provided by the Company.

As you know, Deloitte FAS and its affiliates have many clients and we are engaged by new clients every day. Therefore, we cannot assure that, following the completion of our Conflicts Search, an engagement relating to one or more of the Involved Parties will not be accepted. Should any potential conflict come to the attention of our Engagement Principal we will endeavor to resolve such potential conflict and will determine what action needs to be taken.

Any counsel representing parties involved in this matter may have in the past engaged, represented or opposed, and may currently or in the future engage, represent or oppose, Deloitte FAS, its affiliates or their respective personnel in connection with matters unrelated to this Engagement. Also, any insurance carrier providing coverage to parties involved in this matter may have provided, may currently be providing, or may in the future provide coverage to a party, or may itself be a party, involved in a matter unrelated to this Engagement where

William Dockman
W.R. Grace & Co.
September 27, 2007

Deloitte FAS and/or its affiliates have provided, are currently providing, or may in the future provide consultation or other services, or where Deloitte FAS or its affiliates may be a party.

### ENGAGEMENT STAFFING AND FEES

I will participate as Engagement Principal, maintaining overall responsibility for the engagement on behalf of Deloitte FAS.

We bill on a time and expense basis, with our fees determined by the tasks required and the related time spent. Our per-hour billing rates are as follows:

| | |
|---|---|
| Partner, Principal, Director | $825 |
| Senior Manager | $725 |
| Manager | $625 |
| Senior Associate | $470 |
| Associate | $375 |

Engagement-related expenses, such as travel, lodging, meals, subcontractor and database charges, will be billed in addition to the fees. Expenses will be stated separately on the invoices.

We estimate that total fees and expenses for this engagement will be approximately $100,000 If at any time during this engagement this estimate changes, we will notify you immediately.

We also will be compensated for any time and expenses (including, without limitation, reasonable legal fees and expenses) that we may incur in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings, as a result of Deloitte FAS' performance of these services.

\* \* \* \* \*

This Engagement is subject to the General Business Terms attached hereto. If you agree to the terms of this letter and the attached General Business Terms, please sign the enclosed copy of this letter in the space provided and return it to me. If you have any questions, please call me at (617) 437-3854. We appreciate the opportunity to work for you and look forward to your prompt response.

William Dockman
W.R. Grace & Co.
September 27, 2007

Yours truly,

**DELOITTE FINANCIAL ADVISORY SERVICES LLP**

By:

*Timothy R. Hurley*
Timothy Hurley
Principal

Accepted by:

William Dockman
Vice President, Finance
W.R. Grace & Co.

By: *William Dockman*
Title: V.P. Finance
Date: October 1, 2007

William Dockman
W.R. Grace & Co.
September 27, 2007

# APPENDIX A: GENERAL BUSINESS TERMS

1. Services.

a) The services to be provided by Deloitte FAS will be performed under the Standards for Consulting Services of the American Institute of Certified Public Accountants. It is understood and agreed that Deloitte FAS' services hereunder may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, the Company. In connection with Deloitte FAS' services hereunder, Deloitte FAS shall be entitled to rely on all decisions and approvals of the Company.

b) The services hereunder may include, for purposes of gathering information, access to the work of other public accountants or to financial statements or financial information reported on by other public accountants; however, access is not for the purpose of affirming or evaluating the auditing procedures or related professional standards used by such other public accountants.

c) The Company acknowledges that draft or tentative reports, findings, conclusions or advice that are provided to Company, whether written or oral, may be subject to further revision by Deloitte FAS.

2. Payment of Invoices. Subject to any applicable Bankruptcy Court orders, rules or procedures, properly submitted invoices upon which payment is not received within thirty (30) days of the invoice date shall accrue a late charge of the lesser of (i) 1½% per month or (ii) the highest rate allowable by law, in each case compounded monthly to the extent allowable by law. Without limiting its rights or remedies, Deloitte FAS shall have the right to halt or terminate its services entirely if payment is not received within thirty (30) days of the invoice date. The Company shall be responsible for all taxes imposed on the Services or on the transaction, other than Deloitte FAS' income taxes imposed on a net basis or by employment withholding, and other than taxes imposed on Deloitte FAS' property.

3. Term. Unless terminated sooner in accordance with its terms, this Engagement shall terminate on the completion of Deloitte FAS' services hereunder. On the termination of this Engagement, Company will compensate Deloitte FAS under the terms of the engagement letter to which these terms are attached (the "Engagement Letter") for services performed and expenses incurred through the effective date of termination.

4. Deloitte FAS Technology, Property and Working Papers.

a) Deloitte FAS Technology. Deloitte FAS has created, acquired or otherwise has rights in, and may, in connection with the performance of services hereunder, employ, provide, modify, create, acquire or otherwise obtain rights in, various concepts, ideas, methods, methodologies, procedures, processes, know-how, and techniques (including, without limitation, function, process, system and data models); templates; generalized features of the structure, sequence and organization of software, user interfaces and screen designs; general purpose consulting and software tools, utilities and routines; and logic, coherence and methods of operation of systems (collectively, the "Deloitte FAS Technology").

b) License of Deloitte FAS Technology. To the extent that any Deloitte FAS Technology is contained in any of the deliverables, Deloitte FAS hereby grants the Company, upon full and final payment to Deloitte FAS hereunder, a royalty-free, fully paid-up, worldwide, non-exclusive license to use such Deloitte FAS Technology in connection with such deliverables. To the extent that any Deloitte FAS Technology provided to the Company hereunder is a product (to the extent it constitutes merchandise within the meaning of section 471 of the Internal Revenue Code), such Deloitte FAS Technology is licensed to the Company by Deloitte FAS as an agent for Deloitte FAS Products Company LLC on the terms and conditions herein. The assignment and license grant in this paragraph 4(b) do not apply to any Deloitte FAS Technology (including any modifications or enhancements thereto or derivative works based thereon) that is subject to a separate license agreement between the Company and a third party, including without limitation, Deloitte FAS Products Company LLC.

c) Deloitte FAS Property. To the extent that Deloitte FAS utilizes any of its property (including, without limitation, the Deloitte FAS Technology or any hardware or software of Deloitte FAS) in connection with the performance of services hereunder, Deloitte FAS shall retain its ownership interest in such property and, except for the license expressly granted in the preceding sub-paragraph, the Company shall not acquire any right or interest in such property.

d) Working Papers and Other Materials. The working papers and other materials created by Deloitte FAS during this Engagement are the property of Deloitte FAS. The Company understands that Deloitte FAS does not retain working papers indefinitely.

5. Indemnification; Limitation on Damages and Actions

a) The Company agrees that Deloitte FAS, its subcontractors and their respective personnel shall not be liable to the Company for any claims, liabilities, or expenses relating to this Engagement for an aggregate amount in excess of the fees paid by the Company to Deloitte FAS pursuant to this Engagement, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of Deloitte FAS or its subcontractors. In no event shall Deloitte FAS, its subcontractors or their respective personnel be liable for consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense relating to this Engagement.

b) The Company shall indemnify and hold harmless Deloitte FAS, its subcontractors and their respective personnel from all claims, liabilities, and expenses relating to this Engagement, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of Deloitte FAS or its subcontractors.

c) In circumstances where all or any portion of the foregoing provisions of this Paragraph are finally judicially determined to be unavailable, the aggregate liability of Deloitte FAS, its subcontractors and their respective personnel for any claims, liabilities, or expenses relating to this Engagement shall not exceed an amount which is proportional to the relative fault that Deloitte FAS' conduct bears to all other conduct giving rise to such claims, liabilities, or expenses.

d) No action relating to this Engagement may be brought by any party more than one year after the cause of action has accrued, except for an action for non-payment.

e) The provisions of this Paragraph shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence or defamation), or otherwise.

William Dockman
W.R. Grace & Co.
September 27, 2007

6. **Cooperation.** The Company shall cooperate with Deloitte FAS in the performance by Deloitte FAS of its services hereunder, including, without limitation, providing Deloitte FAS with reasonable facilities and timely access to data, information and personnel of the Company. The Company shall be responsible for the performance of its respective personnel and agents. Deloitte FAS' performance of the services hereunder is dependent upon the Company providing Deloitte FAS with such information and assistance as Deloitte FAS may reasonably require from time to time. The Company shall be responsible for ensuring that all information Deloitte FAS may reasonably require is provided on a timely basis and is accurate and complete.

7. **Force Majeure.** Deloitte FAS shall not be liable for any delays or non-performance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the Company (including, without limitation, entities or individuals under its control, or any of its officers, directors, employees, other personnel and agents), acts or omissions or the failure to cooperate by any third party, the death, disability, severance of association or similar event with respect to any of Deloitte FAS' personnel (whether or not identified in the Engagement Letter), fire or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

8. **Independent Contractor.** Nothing contained in these terms shall alter in any way the duties imposed by law on Deloitte FAS in respect of the services to be provided by Deloitte FAS under this engagement. It is understood and agreed that Deloitte FAS is an independent contractor and that Deloitte FAS is not, and will not be considered to be, an agent, partner, or representative of the Company. The Engagement is expressly conditioned on Company's agreement not to use the fact of our current or previous engagement by opposing counsel or their clients in other matters as a means of enhancing or diminishing Deloitte FAS' credibility in conjunction with any appearance before a trier of fact.

9. **Confidentiality.** To the extent that, in connection with this Engagement, Deloitte FAS comes into possession of any proprietary or confidential information of the Company, Deloitte FAS will not disclose such information to any third party without the Company's consent. The Company hereby consents to Deloitte FAS disclosing such information (a) to subcontractors, whether or not located within or outside of the United States that are providing services in connection with this Engagement and that have agreed to be bound by confidentiality obligations similar to those in Paragraph 9, (b) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with litigation pertaining hereto, or (b) to the extent such information (i) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by Deloitte FAS in breach hereof, (ii) is disclosed by or on behalf of the Company to a third party without substantially the same restrictions as set forth herein, (iii) becomes available to Deloitte FAS on a nonconfidential basis from a source other than the Company which Deloitte FAS believes is not prohibited from disclosing such information to Deloitte FAS by obligation to the Company, (iv) is known by Deloitte FAS prior to its receipt from or on behalf of the Company without any obligation of confidentiality with respect thereto, or (v) is developed by Deloitte FAS independently of any disclosures made by or on behalf of the Company to Deloitte FAS of such information.

10. **Professional and Regulatory Actions** Without limiting any other right to terminate this Engagement that Deloitte FAS may have under the Engagement Letter, these terms or law, Deloitte FAS may terminate this Engagement upon written notice to the Company if it determines that (a) a governmental, regulatory, or professional entity (including, without limitation, the American Institute of Certified Public Accountants, the Public Company Accounting Oversight Board, or the Securities and Exchange Commission), or an entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation, or decision, the result of which would render Deloitte FAS' performance of any part of the Engagement illegal or otherwise unlawful or in conflict with independence or professional rules applicable to Deloitte FAS or its affiliates, or (b) circumstances change (including, without limitation, changes in ownership of the Company or any of its affiliates) such that Deloitte FAS' performance of any part of the engagement would be illegal or otherwise unlawful or in conflict with independence or professional rules applicable to Deloitte FAS or its affiliates. Upon termination of the engagement, the Company will compensate Deloitte FAS under the terms of the Engagement Letter for the services performed and expenses incurred through the effective date of termination.

11. **Survival and Interpretation.** The agreements and undertakings of the Company contained in the Engagement Letter, together with the provisions of these terms, shall survive the expiration or termination of this Engagement. In the event of any conflict, ambiguity, or inconsistency between these terms and the Engagement Letter, these terms shall govern and control. For purposes of these terms, "Deloitte FAS" shall mean Deloitte Financial Advisory Services LLP and Deloitte FAS Products Company LLC, one of its subsidiaries. The Company acknowledges and agrees that no affiliated or related entity of Deloitte FAS, whether or not acting as a subcontractor, shall have any liability hereunder to the Company or any other person and the Company will not bring any action against any such affiliated or related entity in connection with this Engagement. Without limiting the foregoing, affiliated and related entities of Deloitte FAS are intended third-party beneficiaries of these terms, including, without limitation, the limitation on liability and indemnification provisions of paragraph 5, and the agreements and undertakings of the Company contained in the Engagement Letter. Any affiliated or related entity of Deloitte FAS may in its own right enforce such terms, agreements and undertakings. The provisions of paragraphs 5, 11, 13, and 15 hereof shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise.

12. **Assignment and Subcontracting.** Except as provided below, none of the parties may assign, transfer or delegate any of its rights or obligations hereunder (including, without limitation, interests or claims relating to this Engagement) without the prior written consent of the other parties. Deloitte FAS may, without the consent of the Company, assign or subcontract its rights and obligations hereunder to (a) any affiliate or related entity whether located within or outside of the United States or (b) any entity that acquires all or a substantial part of the assets or business of Deloitte FAS. In addition, the Company hereby consents to the use by Deloitte FAS of non-affiliated or non-related entity subcontractors, which may be located outside of the United States, as a subcontractor in connection with this engagement. Services performed hereunder by Deloitte FAS' subcontractors shall be invoiced on the same basis as services performed by Deloitte FAS personnel, unless otherwise stated.

13. **Waiver of Jury Trial.** DELOITTE FAS AND THE COMPANY HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER IN CONTRACT, STATUTE, TORT (SUCH AS NEGLIGENCE), OR OTHERWISE) RELATING TO THIS ENGAGEMENT.

14. **Entire Agreement, Amendment and Notices.** These terms and the Engagement Letter, including exhibits, constitute the entire agreement between Deloitte FAS and the Company with respect to this Engagement, supersede all other oral and written representations, understandings or agreements relating to this Engagement, and may not be amended except by written agreement signed by the parties. All notices hereunder shall be (i) in writing, (ii) delivered to the representatives of Deloitte FAS and the Company at the respective addresses first set forth above unless changed by any party by notice to the other parties, and (iii) effective upon receipt.

William Dockman
W.R. Grace & Co.
September 27, 2007

15. **Governing Law, Jurisdiction and Severability.** These terms, the Engagement Letter, including exhibits, and all matters relating to this Engagement (whether in contract, statute, tort (such as negligence or defamation), or otherwise), shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof subject to any applicable bankruptcy laws). If any provision of these terms or the Engagement Letter is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.