IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., *et al.*, | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Proposed Objection Date: October 23, 2007 @ 12:00 p.m.** |
| | ) | **Proposed Hearing Date: October 25, 2007 @ 2:00 p.m.** |

### OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS' OPPOSITION TO GRACE'S MOTION FOR RELIEF FROM THE OCTOBER 31ST DISCOVERY CUT-OFF DATE FOR DEPOSING CERTAIN LAWYERS NAMED AS FACT WITNESSES

Here we go again. Asking for an emergency hearing, Grace now asserts that it needs "relief" from this Court's discovery deadlines for the Asbestos PI Estimation Hearing for the third time, this time for the ostensible reason that it needs additional time to gather documents and prepare for the depositions of five witnesses out of the dozens of fact and expert witnesses who have been or will be deposed in this case. The five witnesses are three asbestos personal injury plaintiffs' lawyers - Theodore Goldberg, Peter Kraus, and John Cooney; an insurance lawyer - Robert Horkovich; and an experienced asbestos personal injury defense counsel -- Stephen Snyder. *See* Grace's Expedited Motion for Relief from the October 31st Discovery Cut-Off Date for Deposing Certain Lawyers Named As Fact Witnesses. The problem with Grace's emergency need for relief and more time is that three of the five fact witnesses (Messrs. Kraus, Goldberg and Snyder) were specifically identified to Grace by the Official Committee of Asbestos Personal Injury Claimants ("ACC") as witnesses who "are ***likely*** to be called as witnesses at the estimation hearing" in a pleading filed almost two years ago. See Official Committee of Asbestos Personal Injury Claimants' Preliminary Designations of the Non-Expert Witnesses That It Intends to Call at the Asbestos PI Estimation Hearing, filed February 3, 2006,

attached as Exhibit 1. The fourth, Mr. Cooney, is also a plaintiffs' lawyer who is a substitute for another plaintiffs' lawyer listed in 2006 by the ACC, and Mr. Horkovich, the insurance lawyer, was listed if his testimony becomes necessary to authenticate a single document or to testify about Grace's efforts to collect insurance proceeds. Moreover, the idea that the ACC would likely call as witnesses at the Estimation Hearing lawyers who defended or prosecuted asbestos personal injury claims has been known to Grace and its counsel for years.

Grace also asks this Court to order the ACC to provide Grace with "specific descriptions of the subject matter of the witnesses' expected testimony" as well as the documents that might be used with each witness. Of course, there is no Federal Rule of Civil Procedure that requires a party to provide an opposing party several months before trial with a narrative description of fact witness testimony and the documents they might be shown during their testimony at trial. Indeed, even if such unprecedented discovery were permitted under the Rules (which it is not), how would the ACC respond when it has not yet determined the exact topics the fact witnesses will be asked about in their testimony?

Finally, the idea that the ACC or the plaintiffs' lawyers have somehow caused a subject matter waiver of the individual plaintiffs' lawyers' clients' applicable privileges is specious. Beginning on day one of this bankruptcy proceeding, Grace asserted that "the tort system was broken" and that it settled cases without regard to its potential liability, thus placing directly at issue Grace's internal evaluation of cases, litigation strategy and the reasons it settled most cases rather than trying them and entitling the ACC (and the Future Claimants Representative "FCR") to discovery concerning these matters. Neither the ACC, the FCR nor the plaintiffs' lawyers have ever made statements placing at issue the plaintiffs' lawyers' internal evaluations of cases

or reasons for settlement, or done anything else to waive applicable privileges.[1] There are many areas of relevant testimony that can be elicited from a lawyer without disclosing privileged or work product communications – what the lawyers were told by Grace, what they told Grace in open court or in settlement communications, what evidence they obtained and provided to Grace during the discovery process – all are examples of areas of testimony that are clearly not privileged. And, of course, Grace personnel and Grace's own files are the ready sources for this material. The fact that plaintiffs' lawyers have and will raise their clients' applicable privileges in response to blunderbuss document subpoenas from Grace that on their face seek materials that are clearly privileged does not preclude Grace from examining them in deposition about non-privileged matters, which is all the ACC would be able to elicit from the lawyers in any event.

For these reasons, and as described in greater detail below, Grace's motion must be denied in its entirety.

**BACKGROUND**

This is the third time Grace has sought extensions of the deadlines for the Estimation Hearing, all of which requests were over the objection of the ACC and FCR. This Court originally entered a Case Management Order for the Estimation of Asbestos Liabilities in August 2005. After mediation failed to result in a consensual plan of reorganization in the first part of 2006, the Court established a revised schedule for discovery and a trial date for the Estimation Hearing beginning in June 2007. See July 24, 2006 Case Management Order for the Estimation of Asbestos of Asbestos Liabilities [Docket # 12858]. In February 2007, Grace requested, and

---

[1] Even if they had done so, which they have not, neither the ACC nor the FCR are the agents of the individual claimants or the law firms that represent them, and cannot bind individual creditors for purposes relating to the adjudication or discovery. It is well settled that a creditors committee is not the agent of its constituents, and it cannot bind them. *See* COLLIER ON BANKRUPTCY ¶ 1103.05 [1][d][i] (15th ed. 2002); *In re Kensington International,* 368 F.3d 289, 315 (3d Cir. 2004).

received, an extension of the Estimation Hearing deadlines over the opposition of the ACC and FCR. The Court agreed to this extension "over [its] own objection" and entered a revised Case Management Order moving the trial from June to September. See April 2, 2007 Case Management Order for the Estimation of Asbestos of Asbestos Liabilities [Docket # 15078]. In May 2007, Grace once again requested another extension of the discovery deadlines, again over the objection of the ACC and FCR. The Court granted Grace's request, and entered yet another Case Management Order, which pushed out the discovery deadlines to October 31, 2007. See June 1, 2007 Newly Amended Case Management Order for the Estimation of Asbestos of Asbestos Liabilities [Docket # 15923]. On June 22, 2007, this Court entered an Order establishing the current trial dates for the Estimation Hearing, and on August 2, 2007 this Court entered the Third Newly Amended Case Management Order for the Estimation of Asbestos Personal Injury Liabilities [Docket # 16468] which contains the deadlines currently in effect. The Third Newly Amended Case Management Order also included a new deadline – September 24, 2007 – for the final designation of fact witnesses.

Pursuant to the Court's original Case Management Order for the Estimation of PI Asbestos Liabilities, the parties to the Estimation Hearing (i.e. Grace and the official committees) were ordered to provide, by December 22, 2005 "preliminary designations of the non-expert witnesses each intends to call at the Asbestos PI Estimation Hearing." August 29, 2005 Order at Paragraph 7 (attached as Exhibit 2). The PI CMO further provided that subsequent to December 22, 2005, the parties could substitute or add non-expert witnesses "for good cause shown." This provision was not an "identify all witnesses with knowledge" provision but rather a specific directive to identify those individuals who would likely be called as fact witnesses early in process, so as to focus the parties' efforts in discovery on the relevant

witnesses.

On February 3, **_2006_**,[2] Grace and the ACC duly exchanged their initial designations of fact witnesses.  See Debtors' Preliminary Non-Expert Witness Disclosure for Asbestos PI Estimation, attached as Exhibit 3; Official Committee of Asbestos Personal Injury Claimants' Preliminary Designations of the Non-Expert Witnesses That It Intends to Call at the Asbestos PI Estimation Hearing attached as Exhibit 1.  In its pleading, the ACC "identifie[d] the following, prior to the close of discovery, as witnesses _**likely**_ to be called by the ACC as non-expert witnesses at the Asbestos PI Estimation Hearing."  Exhibit 1 (emphasis added).  Among others, the ACC identified lawyers Theodore Goldberg, Mark Meyer and Peter Kraus, who represent asbestos plaintiffs, and Stephen Snyder, who has represented various asbestos defendants over the past 25 years.[3]

Grace also identified numerous fact witnesses.  For example, it listed as witnesses Messrs. James Cintani and Thomas Egan, who are historical Grace employees with some knowledge of the types of asbestos-containing products it manufactured and sold.  Grace also listed as witnesses Jay Hughes and David Siegel, in house lawyers who, along with former general counsel Robert Beber, to a greater or lesser degree were responsible for Grace's decision making and claims resolution criteria in asbestos litigation.

From the outset of this case, Grace has filed pleadings or made statements in open court asserting that "the tort system was broken" and that its past claims settlement and resolution should be disregarded as a basis for estimating its asbestos liability because Grace's bankruptcy lawyers now say that it settled cases for reasons having nothing to do with the potential liability

---

[2]    The deadline was extended from December 2005 to February 2006 by agreement.
[3]    Mr. Snyder was also designated as a retained expert by the ACC, and he has provided Grace with two expert witness reports (filed in October 2006 and September 2007) that discuss his proposed areas of testimony in great detail.  Mr. Snyder has also produced to Grace all of the documents on which he relied in forming his opinions in this matter.

it faced. Rather, Grace asks this Court to depart from the governing case law of *Armstrong*, *Owens Corning*, and *Federal Mogul*, which mandate that an asbestos debtor's historical settlement history must form the basis of any estimate of liability, and instead assume that Grace should only pay claims that Grace's experts would agree meet its various "liability filters."[4] Given that it was highly likely that assertions would be made at the Estimation Hearing by Mr. Hughes or other Grace lawyers that its past settlements were made without any regard for potential liability, the ACC and FCR set out very early in the discovery process to obtain documents relating to Grace's internal evaluation of cases to test the accuracy of its assertions that it settled cases without factoring in the potential liability it faced. As the Court will undoubtedly recall, this lead to a Motion to Compel argued December 5, 2006 which during the hearing the Debtor agreed to resolve by producing from its in-house counsel files documents relating to the reasons why it settled cases. See December 21, 2006 Stipulation and Order (attached as Exhibit 4).

Grace produced these documents in February 2007 (which proved to be both highly illuminating and contradictory to Grace's current assertions that it settled cases without regard to the liability it faced). After receiving the documents, the ACC and FCR moved promptly to depose Mr. Hughes and Mr. Beber in February 2007, and, following an additional motion to compel, Mr. Siegel in May 2007. The depositions were conducted without having in advance a "narrative description of the witnesses' testimony" from Grace, or a list of documents that it might use with them at the Estimation Hearing.

In October *2006*, the ACC also served Grace with an expert witness report from Stephen Snyder. In that report he describes in great detail the actions of plaintiff and defense counsel in

---

[4] It is ironic that, after all of its protestations that settlement history is irrelevant to measure its liability, Grace's estimation expert, B. Thomas Florence, values the claims that survive Grace's so-called liability filters by reference to historical settlement values.

asbestos litigation based on his over 20 years as a participant in that litigation. See Expert Witness Report from Stephen Snyder dated September 15, 2006 (excerpt of the report is attached as Exhibit 5). Mr. Snyder has also provided a rebuttal to Grace's estimation expert reports in September 2007 which provided even more detail about his expected testimony, and has produced to Grace all the documents he relied upon in forming his opinions for either report.

The ACC also served Grace with expert witness reports from Dr. Mark Peterson, a Harvard trained lawyer, social scientist, and trustee of the Manville and Fuller Austin trusts, who has studied asbestos litigation for over 25 years and who has been repeatedly recognized by courts as an expert in asbestos liability valuation matters. As with Mr. Snyder, the ACC has provided Grace with all of the documents relied upon by Dr. Peterson in forming his opinions in this matter.

On September 6, 2007 – two weeks earlier than it was required to do under the PI CMO, the FCR served Grace with a rebuttal expert witness report from Marshall Shapo, a law professor at Northwestern who has studied tort litigation for almost 40 years. Dr. Shapo rebuts the assertions of one of Grace's experts, Frederick Dunbar, concerning the extent to which changes in tort law since the petition date would have impacted Grace's liability had it remained in the tort system. Dr. Shapo provided Grace with all of the documents on which his report was based when it was served.

Beginning in August 2007, the parties have diligently worked to schedule the more than 40 depositions that had to occur between late August and the November discovery cutoff. By mid-September, Grace had agreed (or so the ACC and FCR thought) on dates for the depositions of all of each sides' expert witnesses – including Mark Peterson (November 1), Stephen Snyder (November 6) and Marshall Shapo (November 18). Expert and fact witness depositions have

proceeded at a furious pace, with depositions scheduled to occur almost every day (and on some days two per day) between now and the November 15 expert discovery cutoff.

After the latest designations of fact witnesses were exchanged on September 24, the ACC contacted third party fact witnesses Ted Goldberg, John Cooney and Peter Kraus, and confirmed with Grace that they were available to be deposed on October 16, November 9 and November 15 respectively. Grace initially indicated that these dates were acceptable but then, rather than going forward with the depositions on the dates these witnesses were available, Grace canceled them and filed the instant motion. Apparently, Grace now seeks to postpone the deposition of expert witness Stephen Snyder as well.

**ARGUMENT**

1.  **There is No Cause to Extend the Pretrial Deadlines; Grace Has Had Ample Time to Conduct Discovery**

As discussed above, this is now the third time Grace has sought to move the deadlines (and consequent trial date) for the Estimation Hearing. Under the operative schedule, discovery ends in mid-November, with ***Daubert*** briefs due November 30 and final pretrial binders due December 27. Any slippage in the discovery deadline will inevitably push those dates back into January, thus imperiling the entire first month of the trial.

Grace's asserted need for more time to obtain documents to prepare for the upcoming depositions is simply not credible. Grace has had more than two years to conduct discovery for the Estimation Hearing, has known the identity of the vast majority of the witnesses who will be called by the ACC and FCR for almost that long, has served voluminous discovery on both asbestos claimants and their lawyers, and yet only now does it claim that it needs more time and "additional documents" to conduct these depositions. The Court should reject Grace's belated request. We set forth below a discussion, witness by witness, of the reasons why there is no

cause to alter the Court's pretrial deadlines or otherwise delay these depositions.

**Steve Snyder**: Steve Snyder is a retained expert whose expertise is in defending asbestos personal injury cases and is derived in large part from his experience in representing numerous asbestos defendants over the past 25 years. He has supplied Grace with detailed expert witness reports and the documents on which he relied in forming his opinions. Under the Federal Rules of Civil Procedure, the only documents Grace is entitled to obtain from an expert are the documents he or she relied upon in forming their opinions in this matter. The fact that Mr. Snyder is also a percipient witness with personal knowledge of how asbestos litigation is conducted based on his role as a defense counsel in that litigation for the past 20 years is not new and was also the subject of his expert witness report filed over a year ago in October 2006. His (and Dr. Peterson's) discussion of such issues in their respective reports no more entitles Grace to more time to seek additional discovery than the fact that Grace's expert, Frederick Dunbar, has cited claims data from several defendants still in the tort system, would entitle the ACC or the FCR to ask for more time to subpoena the files of those other companies.

**Robert Horkovich**: Mr. Horkovich is insurance counsel for the ACC who was listed for two purposes (1) to authenticate a single document and (2) to testify concerning Grace's efforts to obtain insurance proceeds from various insurers, based on his understanding of documents provided to him by Grace and statements and deposition testimony of Jeffrey Posner, Grace's outside insurance consultant. The ACC is still reviewing materials produced to it by Grace and has not yet determined whether it will need Mr. Horkovich's testimony at the Hearing.

**Ted Goldberg, Peter Kraus, and John Cooney:**

As noted above, the fact that Messrs. Goldberg and Kraus would be called as fact witnesses has been known to Grace for almost two years. (Mr. Cooney was substituted for Mr.

Meyer in a decision that was made in September 2007 after a further review of Mr. Hughes' deposition testimony). In general, these lawyer fact witnesses are being called by the ACC and FCR to testify about their public dealings with Grace in settlement negotiations, discovery and trials, primarily in rebuttal to Grace's direct case. The ACC and FCR have no greater right than Grace to invade the lawyers' clients' privileges, and will not ask the lawyers to answer any questions that would invade a privilege or the work product doctrine, or about their internal reasons why they settled cases with Grace. In contrast, the statements Grace made to plaintiffs' lawyers in the course of settling or trying cases, and the criteria Grace required the cases to meet, implicate no privileged testimony and are highly relevant to the estimation hearing.

Grace's argument that the ACC and FCR, by obtaining internal Grace documents pursuant to a stipulated order following a motion to compel, have somehow effected a subject matter waiver of the plaintiffs' lawyers' clients applicable privileges, thus entitled Grace to additional document discovery, is simply incorrect, as we discuss in Section 2 below. Grace has had over two years to gather whatever additional documents it thinks it needs from plaintiffs' lawyers or their clients; to argue now that the entire schedule needs to be pushed back because it does not have every document it wants is simply astounding.

2. **The ACC and FCR Have Not Thwarted Grace's Discovery, Nor Has There Been Any Privilege Waiver By the Claimants**

Grace claims that because the ACC and FCR sought (and obtained) Grace's privileged documents concerning its internal evaluation of cases that Grace should be permitted to invade the asbestos claimants' privileges. Grace also asserts that the ACC and FCR have somehow thwarted its discovery. Neither assertion has merit.

First, as noted above, Grace asserted from day one in this case that "the tort system was broken" and that it settled cases without regard to its potential liability, thus placing directly at

issue Grace's internal evaluation of cases, litigation strategy and the reasons it settled most cases rather than trying them. This, in our view, entitled the ACC and FCR to discovery concerning these matters, and Grace resolved a pending motion to compel by voluntarily producing documents that covered such subject areas. Neither the ACC, the FCR nor the plaintiffs' lawyers have ever made statements placing at issue the plaintiffs' lawyers' internal evaluations of cases or reasons for settlement. The fact that one party to litigation places at issue its privileged communications does not mean that the other parties to the litigation (much less third party witnesses) automatically are also deemed to waive applicable privileges. The asbestos plaintiffs and their counsel have made very clear from the outset that they are not waiving any privileges, and have not put at issue their privileged communications in the way Grace has.

Moreover, the ACC and FCR have never suggested that Grace was not entitled to depose the fact witnesses listed by the ACC or FCR. When Grace sought to indiscriminately depose 21 plaintiffs' law firms, the ACC and FCR did object, on the ground that taking that number of depositions would go far beyond the ten permitted under the rules, would place an undue burden on counsel for the ACC and FCR, and noting that Grace would likely use the exercise to delve into matters which the plaintiffs' lawyers would assert are clearly protected by applicable privileges, thus leading to additional motions practice. As an alternative to the burden and cost of depositions, Grace served the asbestos plaintiffs' law firms with incredibly comprehensive interrogatories, which the law firms duly answered. At no time did the ACC or FCR ever assert that Grace was not entitled to depose the individual lawyers listed as fact witnesses by the ACC.

The fact that a lawyer is listed as a third party witness does not mean that the lawyer thereby waives his clients' privileges as Grace asserts in its stated need for additional document discovery. There are many areas of relevant testimony that can be elicited from a lawyer without

disclosing privileged or work product communications – what criteria Grace told the plaintiffs they had to meet to be paid a settlement, what evidence was identified and used in trials involving Grace, what materials were supplied to Grace during discovery and when in the discovery/trial preparation process such evidence is and was typically available, are all areas of testimony that clearly do not invade any privileges. This Court will recall from its experience in other cases that on many occasions lawyers have testified (either voluntarily or under compulsion of a subpoena) about facts such as what criteria an asbestos defendant required plaintiffs to meet to settle asbestos cases and the nature of the allegations the plaintiffs made in their lawsuits (e.g. Dianne Schumacher in *Federal Mogul*, David Ellis in *Pittsburgh Corning*), or even the meaning of various plan of reorganization provisions (e.g. Peter Lockwood in both *Federal Mogul* and *Pittsburgh Corning*), without any suggestion that such testimony meant that the lawyers' clients had waived their applicable privileges.

The plaintiffs' lawyers have made it abundantly clear that they will not answer questions that invade their clients' privileges, regardless of who asks them. The proper solution for Grace's asserted "dilemma" is not to postpone the depositions or move the Estimation Hearing deadlines. Instead, the matter can be taken up as an issue at trial, on a question by question basis. If a question is posed which would elicit information which Grace believes it was foreclosed from pursuing in discovery by the ACC and FCR, the Court can refuse to allow such testimony if Grace can demonstrate that the FCR or ACC somehow prevented it from taking discovery on that topic.

**3.    Grace Is Not Entitled to a Narrative Description of Fact Witness Testimony**

Grace also asks this Court to order the ACC to provide Grace with "specific descriptions

of the subject matter of the witnesses' expected testimony, including particular cases, discussions and related documents." There is nothing in the Federal Rules of Civil Procedure that would require such a detailed disclosure, and Grace has not provided any similarly detailed disclosure for the fact witnesses it has said it will call.

Moreover, beyond the general descriptions provided above, neither the ACC nor the FCR have determined what topics the testimony of these witnesses will cover. Grace has filed a motion asking the Court to estimate its total liability for pending and future asbestos personal injury claims; the ACC and FCR are the respondents to that motion. In contested matters brought on by motion, the Movant (i.e. Grace) presents its case first; the Respondents (ACC and FCR) will then present their case. The testimony of Messrs. Kraus, Goldberg, Cooney, and Horkovich is likely in large part to be a rebuttal of Grace's case and until that case is presented counsel really does not know exactly what specific questions will be asked of the fact witnesses. Mr. Snyder is a retained expert, and his testimony is in large part already in Grace's hands in the form of his two expert witness reports.

With respect to documents, the ACC and FCR will provide Grace with their trial exhibit lists and the trial exhibits that they will use at the Estimation Hearing in December, as contemplated by the Court's Case Management Order. At this juncture, the only documents we can foresee that have any relevance to the plaintiffs' lawyer fact witness testimony are documents Grace already has, such as (1) the settlement agreements between these plaintiffs' lawyers' clients and Grace, (2) evidence or materials submitted to Grace in the course of years of discovery or settlement discussions or (3) the exhibits or evidence provided to Grace during the course of or at the start of trials in which Grace was a defendant. However, the ACC and FCR are also still reviewing the voluminous materials produced in the case by Grace and its experts,

and have not yet selected the final list of exhibits that will be used in their case in chief.

Grace complains about the volume of documents it has to review to prepare for the depositions of these witnesses; it conveniently fails to mention that it was Grace that produced millions of pages of documents in discovery and Grace that required claimants to provide it with millions of pages of Questionnaires and their attachments. The ACC and FCR have the same problem with the large volume of documents that Grace does in deciding which documents are necessary to cross-examine witnesses. Simply put, the ACC and FCR are still early in the process of trial preparation and have not yet winnowed down the universe of potential trial exhibits (almost all of which will come from Grace's own files or the materials already produced by the various experts) into the final list of trial exhibits, and are unlikely to be able to do so until the deadline for exchanging trial exhibits in December.

## **CONCLUSION**

Grace's Motion should be denied in its entirety.

Dated: October 23, 2007                    Respectfully submitted,

                                            CAMPBELL & LEVINE, LLC

                                            /s/ Mark T. Hurford
                                            Marla Rosoff Eskin (DE No. 2989)
                                            Mark T. Hurford (DE No. 3299)
                                            800 N. King Street
                                            Suite 300
                                            Wilmington, DE  19801
                                            Tel: (302) 426–1900
                                            Fax: (302) 426-9947

                                            CAPLIN & DRYSDALE, CHARTERED
                                            Elihu Inselbuch
                                            375 Park Avenue, 35th Floor

New York, NY  10152
Tel: (212) 319–7125
Fax: (212) 644-6755

Peter Van N. Lockwood
Nathan D. Finch
Walter B. Slocombe
One Thomas Circle, NW
Washington, DC  20005
Tel: (202) 862–5000
Fax: (202) 429-3301

*Counsel to the Official Committee of Asbestos Personal Injury Claimants*