IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Related Docket No: 9315, 14597,** |
| | ) | **14898, 14965, 16754, 16755, 17059** |

**DEBTORS' REPLY TO ANDERSON MEMORIAL HOSPITAL'S SUPPLEMENTAL POST-HEARING MEMORANDUM RE: CANADIAN STATUTE OF LIMITATIONS**

The Canadian Claimants do not dispute that the application of Canada's ultimate and normal limitation periods to their asbestos property damage claims is a question of law. They attempt, however, to manufacture an issue of fact by urging the Court to apply a legal standard that has *never* been adopted by any Canadian court. When the proper Canadian legal standards are applied, it is undisputed that the Canadian Claimants' claims are time-barred.

**I.      There Is No Canadian Authority For The Adoption Of The Limitation Trigger Urged By The Canadian Claimants.**

The Canadian Claimants recognize that *Privest* is the *only* Canadian case that has considered the appropriate limitation trigger with respect to an asbestos property damage claim. The Canadian Claimants further concede, as they must, that *Privest* adopted an installation trigger as a matter of law. Several Canadian courts have followed *Privest* on this issue. It is undisputed that the Canadian Claimants' claims are time-barred under this well-recognized legal standard.

The Canadian Claimants' response to *Privest* is that they think it is wrong. Rather than follow the legal rulings adopted by Canadian courts on this issue, the Canadian Claimants would have this Court apply a new rule of law — one that has never been recognized by any Canadian court.

Specifically, relying on *Winnipeg Condo*, the Canadian Claimants seem to assert that both the Canadian ultimate and normal limitation periods should run from the date when asbestos created a "real and substantial" danger in the building.[1] *Winnipeg Condo*, however, is not a limitations period case. In fact, a claim for pure economic loss from an allegedly defective product in a building was not even recognized in Canada prior to *Winnipeg Condo*. The *Winnipeg Condo* court did not address the appropriate limitation trigger for the pure economic loss claim that it first adopted.

The *Privest* court did. The court in *Privest* specifically analyzed the appropriate limitation trigger in a *Winnipeg Condo*-type case alleging negligence for pure economic loss in connection with Grace's asbestos-containing fireproofing product. The court recognized that, because the damages in a pure economic loss case are for the cost to remove the asbestos, all of the elements for accrual of the claim are in place upon installation. *Privest*, [1995] 10 W.W.R. 385 (B.C.S.C.). The cause of action, accordingly, arises upon installation for limitations purposes as a matter of law. *Id.* **No Canadian court has held otherwise.**[2]

While the *Privest* court adopted an installation trigger with respect to British Columbia's normal limitation period, subsequent British Columbia cases have extended this ruling to

---

[1] Anderson Memorial Hospital's Supplemental Post-Hearing Memorandum Re: Canadian Statute of Limitations (the "Canadian Claimants' Supplemental Brief") implicitly recognizes that existing Canadian law does not support this position. *See, e.g.,* Canadian Claimants' Supplemental Brief at 2-4 (relying on "developing Canadian case law" that has not produced "a definitive holding" and noting that *Winnipeg Condo* merely "lends instruction" to the issue). The Canadian Claimants' Supplemental Brief fails to cite a single case that has adopted the "real and substantial danger" trigger that they press upon the Court. That is because there is none. The only "authority" for this position is Professor John C. Irvine, the purported expert retained by Speights & Runyan on behalf of the Canadian Claimants. Professor Irvine admitted his limited expertise in this area and candidly testified that he was not hired by Speights & Runyan to tell the Court what Canadian law is, but simply to "raise issues" for the Court's consideration. *See* Debtors' Supplemental Submission in Support of Their Canadian Summary Judgment Motion [Docket No 16755] ("Debtors' Supplemental Submission") at 3.

[2] In fact, several Canadian courts have adopted and applied *Privest's* holding on this issue. *Emms v. Prince George (City)*, [1999] B.C.J. No. 1627, *aff'd* [2004] B.C.J. No. 396, 2001 BCCA 120; *410727 B.C. Ltd. v. Dayhu Investments, Ltd.*, (2004) 241 D.L.R. (4th) 467, 2004 BCCA 379, *rev'ing* [2003] B.C.J. No. 1878; 2003 BCSC 1142, *leave to appeal to the Supreme Court of Canada dismissed*, (2003), 334 N.R. 194, 219 B.C.A.C. 320; *Armstrong v. West Vancouver (District)*, [2003] B.C.J. No. 303 (B.C.C.A) (Q.L.); *accord* App. Tab C, Mew Dep. at 17; *see also* App. Tab A, Mew Rpt. at 4, 15.

ultimate limitation periods. *See Dayhu*, [2004] 2004 BCCA 379; *Armstrong*, [2003] B.C.J. No. 303 (B.C.C.A) (Q.L.). Given the purpose, legislative history and language of the ultimate limitation statutes in British Columbia, Alberta and Manitoba and the governing case law, the trigger for those ultimate limitation periods can be nothing other than installation. *See* Debtors' Supplemental Submission [Docket No. 16755] at 3-12. The Canadian Claimants make no attempt to reconcile their proposed "real and substantial danger" trigger with existing Canadian ultimate limitation law. That is because they cannot.

Instead, they attempt to avoid the implications of *Privest* and its progeny with respect to ultimate limitation periods by reference to selective and incomplete language in the British Columbia Law Reform Commission's Report on the Ultimate Limitations Period: Limitations Act Section 8 (the "B.C. Report"). While the B.C. Report predates both *Privest* and *Winnipeg Condo*, it supports rather than refutes application of an installation trigger.

The Canadian Claimants' Supplemental Brief selectively quotes the B.C. Report, omitting the following relevant language:

> In a few exceptional cases, allowing time to run from the act or omission of the defendant could result in the denial of recovery before damage even occurred. *As objectionable as it may seem from the viewpoint of legal theory to bar a cause of action before it comes into being, the advantages of certainty as to the commencement of the ultimate limitation period outweigh the disadvantage of barring a small number of inchoate claims.*
>
> The Commission recommends that:
>
> 3.   *(1) Where an action is based on an act, omission or breach of a legal duty, the ultimate limitation period should run from the date of the act, omission or breach.*
>
>    (2) Where an action is based on a series of related acts, omissions or breaches of duty or a course of conduct, the ultimate limitation period should run from the last of the acts, omissions or breaches of duty or the end of the course of conduct.

B.C. Report at 25 (emphasis supplied). Even without the guidance of *Privest* in the context of a *Winnipeg Condo* claim, the B.C. Report calls for application of an installation trigger where, as

here, the claims are only recognized under Canadian law as negligence claims based on a breach of a legal duty.

The Canadian Claimants attempt to dodge this conclusion by asserting that Grace had a continuing duty to warn and that the limitation periods therefore start anew every day, presumably forever. As explained by Mr. Mew, under *Winnipeg Condo*, asbestos property damage claims are only cognizable as negligence claims for pure economic loss and, regardless of the label attached to them, the limitation periods begin to run upon installation. *See* Mew Aff. at ¶¶ 9-13; *see also Privest,* [1995] 10 W.W.R. 385 (B.C.S.C.) (applying an installation trigger to even the duty to warn claims under the normal limitation period).[3]

Specifically, under *Winnipeg Condo*, the Canadian Claimants' claims are based solely on Grace's alleged negligence in providing an asbestos-containing product. *See* Debtors' Supplement Submission at 10. Canadian law is clear that the limitation periods on these types of *Winnipeg Condo* claims run from the last act of the defendant, *i.e.* the installation of the product. The Canadian Claimants can point to no authority to the contrary. Under this legal standard, the Canadian Claimants' claims are time-barred.

## II. Fraudulent Concealment Does Not Apply To The Canadian Claimants' Claims.

Unable to avoid an installation trigger under Canadian law, the Canadian Claimants desperately (and belatedly) seek to invoke the concept of fraudulent concealment to resurrect their time-barred claims. What the Canadian Claimants fail to recognize, however, is that the doctrine of fraudulent concealment is unavailable to them as a matter of Canadian law.

---

[3] Even in a duty to warn case, the Canadian limitations periods would not start anew for all time as the Canadian Claimants have suggested. *See Day v. Central Okanagan (Regional District)*, [2000] B.C.J. No. 1417 (B.C.S.C.). This theory is not only devoid of any support in Canadian law, but also, if applied, would eviscerate the intent and purpose of Canadian ultimate limitations periods. The Court should not countenance such an absurd result.

As set forth in Mr. Mew's Report, in order to establish fraudulent concealment in Canada, the Canadian Claimants must prove a special or fiduciary relationship between the parties. *See* App. Tab A to Debtors' Supplemental Submission, Mew Rept. at 14-15; *see also Huet v. Lynch,* (2000), 255 A.R. 359 (Alta. C.A.); *Buell v. CIBC Wood Gundy Securities Inc.,* [1998] O.J. No. 2861 (Ont. Gen. Div.) (Q.L.). The Canadian Claimants have not, and cannot, come forth with any evidence of a special relationship with Grace sufficient to invoke Canadian principles of fraudulent concealment. For this reason, fraudulent concealment plays no role in the analysis and Debtors are entitled have the time-barred Canadian claims expunged.[4]

### III. The Canadian Claimants' Purported Lack Of Knowledge Of Grace's Identity Cannot Salvage Their Stale Claims.

The Canadian Claimants continue to cling to their assertions that, prior to 2003, they did not know the identity of Grace as the manufacturer of the asbestos-containing products that were alleged installed their buildings decades ago. ***As an initial matter, discoverability principles do not apply to Canadian ultimate limitation periods.*** *See* Debtors' Supplemental Submission at 4, App. Tab A, Mew Rept. at 4, 8, 10; App. Tab E, Irvine Dep. I at 204, 220.

Even with respect to normal limitation periods, however, the Canadian Claimants' reliance on these assertions is misplaced because it wholly ignores their burden of proof on this issue. Under Canadian law, the Canadian Claimants must prove that they *could not* have known of Grace's identity within the normal limitation periods. *See* Debtors' Supplemental Submission at 12-15. The Canadian Claimants have not and cannot meet this burden. *Id.* Debtors are accordingly entitled to summary judgment as a matter of law.

---

[4] Even if the Canadian Claimants could invoke the doctrine of fraudulent concealment under Canadian law – which they cannot – the documents submitted by the Canadian Claimants to support that theory are legally insufficient. There is no evidence that these documents were provided to anyone in Canada, let alone to the Canadian Claimants. *See generally* Canadian Claimants Supplemental Brief at 11-15 (discussing purported evidence of fraudulent concealment in terms of activities "throughout the country", *i.e.*, in the United States). With no evidence of reliance, the Canadian Claimants cannot prove that Grace fraudulently concealed anything.

## CONCLUSION

For the foregoing reasons and the reasons more fully set forth in Debtors' Supplemental Submission, Debtors request that the Court grant Debtors' Motion and expunge the Canadian Claimants' time-barred claims.

Dated:  October 26, 2007

REED SMITH LLP
James J. Restivo, Jr. (Bar No. 10113)
Lawrence E. Flatley (Bar No. 21871)
Douglas E. Cameron (Bar No. 41644)
Traci S. Rea (Bar No. 76258)
435 Sixth Avenue
Pittsburgh, PA  15219
Telephone:  (412) 288-3131
Facsimile:  (412) 288-3063

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Lisa Esayian
Michael Dierkes
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

By: _____
Co-Counsel for the Debtors and
Debtors in Possession