## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

STATE OF NEW YORK    )
                                    )  ss:
COUNTY OF NEW YORK  )

### TWENTY-SECOND SUPPLEMENTAL AFFIDAVIT OF DISINTERESTEDNESS UNDER 11 U.S.C. § 327(A) AND FED. R. BANKR. P. 2014

Theodore L. Freedman, being duly sworn, deposes and says:

1. I am a partner in the firm of Kirkland & Ellis LLP ("K&E"), Citigroup Center, 153 East 53rd Street, New York, New York 10022. I am authorized to make this affidavit on K&E's behalf.

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

2. On April 2, 2001 (the "Petition Date"), each of the above-captioned debtors and debtors in possession (the "Debtors") filed a voluntary petition (collectively, the "Cases") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, et. seq. ("Chapter 11").

3. On April 2, 2001, K&E filed an application to be retained as Debtors' counsel in the Cases (the "Application"). By this Court's order, dated May 3, 2001, the Debtors were authorized to retain K&E as their counsel, effective as of the Petition Date, with regard to the filing and prosecution of the Cases and all related matters. K&E has filed the following affidavits in support of the Application:

- Affidavit of James H.M. Sprayregen in Support of Application for Order Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) Authorizing the Employment and Retention of Kirkland & Ellis as Attorneys for the Debtors and Debtors in Possession, filed April 2, 2001 (the "Original Affidavit");

- First Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed April 17, 2001 (the "First Supplement");

- Second Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed May 2, 2001 (the "Second Supplement");

- Third Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed July 25, 2001 (the "Third Supplement");

- Fourth Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed September 13, 2001 (the "Fourth Supplement");

- Fifth Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed October 24, 2001 (the "Fifth Supplement");

- Sixth Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed November 13, 2001 (the "Sixth Supplement");

- Seventh Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed April 11, 2002 (the Seventh Supplement");

- Eighth Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed May 23, 2002 (the "Eighth Supplement");

- Ninth Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed July 19, 2002 (the "Ninth Supplement");

- Tenth Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr P. 2014, filed September 18, 2002 (the "Tenth Supplement");

- Eleventh Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed March 11, 2003 (the "Eleventh Supplement");

- Twelfth Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014 filed September 20, 2004, and the Amendment to the Twelfth Supplement, filed December 2, 2004, (the "Twelfth Supplement");

- Thirteenth Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed February 10, 2005 (the "Thirteenth Supplement");

- Fourteenth Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed June 14, 2005 (the "Fourteenth Supplement");

- Fifteenth Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed December 12, 2005 (the "Fifteenth Supplement";

- Sixteenth Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed March 20, 2006 (the "Sixteenth Supplement";

- Seventeenth Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed April 17, 2006 (the "Seventeenth Supplement";

- Eighteenth Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed May 22, 2006 (the "Eighteenth Supplement";

- Nineteenth Supplemental Affidavit of James H.M. Sprayregen Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed June 23, 2006 (the "Nineteenth Supplement"); and

- Twentieth Supplemental Affidavit of Disinterestedness Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed October 23, 2006 (the "Twentieth Supplement"); and,

- Twenty-First Supplemental Affidavit of Disinterestedness Under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014, filed April 9, 2007 (the "Twenty-First Supplement,"), and together with the Original Affidavit, the First Supplement, the Second Supplement, the Third Supplement, the Fourth Supplement, the Fifth Supplement, the Sixth Supplement, the Seventh Supplement, the Eighth Supplement, the Ninth Supplement, the Tenth Supplement, the Eleventh Supplement, the Twelfth Supplement and Amendment to Twelfth Supplement, the Thirteenth Supplement, the Fourteenth Supplement, the Fifteenth Supplement, the Sixteenth Supplement, the Seventeenth Supplement, the Eighteenth Supplement, the Nineteenth Supplement, and the Twentieth Supplement, the "Prior Affidavits").

4.  I submit this Twenty-Second Supplemental Affidavit (the "Twenty-Second Supplement") to provide additional disclosure required under Fed. R. Bankr. P. 2014(a) and Fed. R. Bankr. P. 2016(b). Unless otherwise stated in this Twenty-Second Supplement, I have personal knowledge of the facts set forth herein.

5.  None of the additional representations described herein are materially adverse to the interests of the Debtors' estates.

6.  As stated in the Prior Affidavits, K&E continues to learn of parties who have or may have had relationships to the Debtors. Thereafter, as is reasonably practicable, K&E will file additional supplemental affidavits as required by Fed. R. Bankr. P. 2014(a) as K&E learns of such parties and K&E conducts a conflicts search of such parties.

### Additional Disclosures

7.  Additional parties that were identified and searched in K&E's electronic database of clients and entities with other connections to K&E are listed on **Exhibit A** to this Twenty-Second Supplemental Affidavit.

K&E 11989232.7

8. **Exhibit B**[2] lists the client connections found as a result of K&E's conflicts searches of the entities listed on **Exhibit A**.

9. In addition, **Exhibit B** includes the client connections found as a result of an updated conflicts search of parties previously searched.

10. Based on the conflicts search conducted to date and described herein, to the best of my knowledge, neither K&E nor any partner, of counsel or associate thereof have any connection with the Debtors, their creditors or any other parties in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee, except as disclosed or otherwise described below, in the Prior Affidavits or in the Application.

## Specific Disclosures

11. As disclosed below and on the attached exhibits, K&E represents certain of the Debtors' creditors, equity security holders, customers and/or other parties in interest in matters unrelated to the Debtors and the Cases. None of the representations described herein or in **Exhibit B** are materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders thereof.

12. As disclosed on **Exhibit B**, K&E currently represents the law firm of Kramer Levin Naftalis & Frankel LLP ("Kramer Levin"). Kramer Levin is counsel to the Official

---

[2] On **Exhibit B**, the term "current client" means a client for whom time was posted in the 12 months before the date of this Twenty-Second Supplemental Affidavit. On **Exhibit B**, the term "former client" means a client for whom time was posted between 36 and 12 months before the date of this Twenty-Second Supplemental Affidavit. On **Exhibit B**, the term "closed client" means a client for whom time was posted in the 36 months before the date of this Twenty-Second Supplemental Affidavit, but the client representation has been closed. As a general matter, K&E discloses connections with former clients or closed clients for whom time was posted in the last 36 months, but does not disclose connections if time was billed more than 36 months before the date of this Twenty-Second Supplemental Affidavit.

5

Committee of Equity Holders. K&E's representation of Kramer Levin concerns matters unrelated to the Debtors and the Cases.

13. As disclosed on **Exhibit B**, K&E currently represents the parent company of Avenue Capital Group, Avenue Capital Management II, L.P, and certain affiliates. Avenue Capital Group is a significant equity holder of the Debtors. K&E's representation of Avenue Capital Management II, L.P. and certain affiliates concerns matters unrelated to the Debtors and the Cases.

14. As disclosed on **Exhibit B**, K&E represents an affiliate of Nomura, Nomura International, plc. Nomura is a customer of the Debtors. K&E's representation of Nomura International, plc concerns matters unrelated to the Debtors and the Cases.

15. With the exception of (a) General Motors Corporation, and its various subsidiaries and affiliates (collectively, "General Motors"), (b) Morgan Stanley and its various subsidiaries (collectively, "Morgan Stanley"), (c) BP, plc and its various subsidiaries (collectively, "BP"). and Dow Chemical Company and its various subsidiaries and affiliates (collectively, "Dow Chemical"), no client listed on **Exhibit B** or on the Prior Affidavits represents more than 1% of K&E's fee receipts for the twelve-month period ending September 30, 2007.[3]

16. Additionally, certain current and former partners of K&E invest in mutual funds, individual equities and other securities and make any other number of investments personally. Likewise, certain current and former partners of K&E may voluntarily choose to invest in certain

---

[3] For the twelve-month period ending September 30, 2007, (a) General Motors represented 1.8% of K&E's fee receipts; (b) Morgan Stanley represented 1.97 % of K&E's fee receipts; (c) BP represented 1.68% of K&E's fee receipts, and (d) Dow Chemical represented 1.16% of K&E's fee receipts.

blind-pool investment funds. These blind-pool investment funds fall into two categories: "private equity fund" investments, where the investment pool invests capital in certain private equity funds that are K&E clients; and "direct" investment funds, where the investment pool invests directly in equity or debt of certain portfolio companies of K&E private equity clients. These blind-pool investment funds are organized as limited partnerships that are managed by certain K&E partners who are also limited partners. Such blind-pool investment funds are not managed or otherwise controlled by K&E. Moreover, once the money is invested by such blind-pool investment fund, the investment generally is not controlled by the limited partnership that manages the applicable blind-pool investment fund, other than the right to withdraw from the investment in accordance with governing rules. Participation in blind-pool investment funds is wholly voluntary, and not all current and former partners of K&E participate. Generally, investments in blind-pool investment funds have, historically, not exceeded a 1% stake involving any company's debt or equity.

17. Since February 1, 2007, K&E has abided by the policies articulated in **Exhibit C** regarding client-reimbursable expenses and other charges. In the event of a conflict of such policies with any guidelines or rules promulgated by the United States Trustee of the Court, the rules or guidelines of the United States Trustee or the Court shall govern.

## Disclosure of K&E Employee Connections

18. Albert Cho, a corporate associate, started working in K&E's New York office on March 5, 2007. Before joining K&E, Mr. Cho worked as an associate at Dewey Ballantine LLP, and represented GE Asset Management in a private equity & fund formation-related matter adverse to a confidential party. From March 2004 to October 2005, Albert worked as an associate at Willkie Farr & Gallagher LLP, and represented: 1) Credit Suisse Funds and Credit Suisse Asset Management, drafting and reviewing SEC filings for a mutual fund complex, 2)

K&E 11989232.7

Deutsche Asset Management in a mutual fund-related matter, 3) Citigroup Asset Management in a mutual fund-related matter. From 1999 to March 2004, Albert worked as an associate at Pillsbury Winthrop Shaw Pittman LLP (f/k/a Shaw Pittman LLP), and represented HSBC USA in a private equity and fund formation-related matter adverse to HSBC Bank PLC. GE Asset Management, Credit Suisse, Deutsche Asset Management, Citigroup Asset Management and HSBC or certain of their affiliates, are adverse parties and creditors, the parent of a creditor, a claims objectee or a movant in these Cases. Out of an abundance of caution, K&E has instituted formal screening procedures to screen Mr. Cho from any contact with K&E's representation of the Debtors.

19.    Kyra Sanin, a corporate associate, started working in K&E's San Francisco office on April 9, 2007. Before joining K&E, Ms. Sanin worked both as a summer associate (from May 2005 to August 2005), at Linklaters, and worked on that firm's representation of Lloyd's of London in litigation brought by individuals or their estates against it as reinsurer of a company or companies in bankruptcy that manufactured asbestos products. Lloyd's Underwriters is an adverse party and creditor in these Cases. Although her work at Linklaters did not involve the Debtors, out of an abundance of caution, K&E has instituted formal screening procedures to screen Ms. Sanin from any contact with K&E's representation of the Debtors.

20.    Mark Holscher, a litigation partner, started working in K&E's Los Angeles office on April 12, 2007. Before joining K&E, Mr. Holscher worked as a partner at O'Melveny & Myers LLP, and while at O'Melveny & Myers LLP, he represented Jack Wolter, a former vice president of W. R. Grace and Co.-Conn., in the matter of *United States of America v. W.R. Grace, et al.*, CR-05-7-M-DWM in the District of Montana. K&E has instituted formal

screening procedures to screen Mr. Holscher from any contact with K&E's representation of the Debtors.

21.  Maura M. Klugman, a summer associate, started working in K&E's New York office on May 14, 2007. Prior to coming K&E, Ms. Klugman worked as an intern (from May 2006 to August 2006) in the Economic Crime Unit and Drug Unit of the United States Attorney's Office for the District of Massachusetts. The United States Attorney's Office is an adverse party in the Cases. Although her work at the United States Attorney's Office did not involve the Debtors, out of an abundance of caution, K&E has instituted formal screening procedures to screen Ms. Klugman from any contact with K&E's representation of the Debtors.

22.  Christopher Ryan Lubeck, a summer associate, started working in K&E's San Francisco office on May 14, 2007. Prior to coming to K&E, Mr. Lubeck worked as a summer extern (from May 2006 to August 2006) in the Office of Regional Counsel, Region 5 of the United States Environmental Protection Agency ("EPA"). The EPA is an adverse party in these Cases. Although his work at the EPA did not involve the Debtors, out of an abundance of caution, K&E has instituted formal screening procedures to screen Mr. Lubeck from any contact with K&E's representation of the Debtors.

23.  Christopher M. Lawless, a summer associate, started working in K&E's Los Angeles office on May 21, 2007. Prior to coming to K&E, Mr. Lawless worked as a law clerk (from May 2006 to May 2007) at Girardi & Keese, and worked on that firm's representation of Karen Janice Johnson and other individuals in a toxic tort-related matter adverse to Atlantic Richfield Company, Chevron Texaco, and other parties. Karen Janice Johnson is an adverse party and claims objectee in these Cases. Out of an abundance of caution, K&E has instituted

formal screening procedures to screen Mr. Lawless from any contact with K&E's representation of the Debtors.

24.  Catherine Peshkin, a restructuring associate, started working in K&E's New York office on May 22, 2007. Before joining K&E, Ms. Peshkin worked as a summer associate (from May to August 2002) and then as an associate (from September 2003 to January 2007) at Weil, Gotshal & Manges LLP, and worked on that firm's representation of: 1) Citigroup, preparing a research memo concerning a restructuring matter, 2) Prudential Insurance Company of America in a corporate matter involving a leveraged lease, 3) Enron North America, Inc. in non-case specific litigation projects involving restructuring, 4) General Electric Capital Corporation as post petition lender to Delta Air Lines, Inc., 5) Credit Suisse, Cayman Branch (as agent for Owens Corning Bank lenders) adverse to the Official Committee of Unsecured Creditors of Owens Corning, the Official Committee of Asbestos Claimants, the Unofficial Committee of Select Asbestos Claimants, and others, in bankruptcy-related litigation, 6) Armstrong World Industries doing transactional work, 7) JP Morgan & Chase, proofreading a financing agreement in a matter that is closed, 8) PG&E Corporation in a bankruptcy-related matter adverse to the California Public Utilities Commission, where its subsidiary PG&E Company is the debtor and where the Official Committee of Unsecured Creditors of PG&E Company is an interested party, 9) Genesis Health Ventures, Inc. in non-case specific litigation projects involving restructuring, and 10) Grief, Inc., summarizing corporate data involving a capital markets transaction. Citigroup, Inc., The Prudential Insurance Company of America, Enron Energy Services, Inc., Enron Metals & Commodity Limited, General Electric Capital Corporation, Credit Suisse Group, Armstrong World Industries Inc, JP Morgan Chase & Company, PG&E Company, Genesis Healthcare Corporation and Greif Inc, and certain of their affiliates, are adverse parties and

K&E 11989232.7

creditors, the parent of a creditor, a claims objectee or a movant in these Cases. Additionally, Weil Gotshall & Manges LLP represents the Ad Hoc Committee of Equity Security Holders in these Cases. Although her work at Weil Gotshall & Manges LLP did not involve the Debtors, out of an abundance of caution, K&E has instituted formal screening procedures to screen Ms. Peshkin from any contact with K&E's representation of the Debtors.

25. Shane P. Early is a temporary law clerk who started working in K&E's London office on October 31, 2007. From January 2004 to August 2005, Mr. Early worked as a paralegal in the office of Joseph D. Early Jr. Attorney at Law, and worked on the representation of the Massachusetts Bay Transportation Authority (the "MBTA") in litigation adverse to undisclosed property owners involving eminent domain. The MBTA is an adverse party and claims objectee in these Cases. Out of an abundance of caution, K&E has instituted formal screening procedures to screen Mr. Early from any contact with K&E's representation of the Debtors.

K&E 11989232.7

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _Oct. 31_, 2007

*/s/ Theodore L. Freedman*
Theodore L. Freedman
Kirkland & Ellis LLP
153 E. 53rd Street
New York, New York 10022
Telephone: (212) 446-4934
Facsimile: (212) 446-4900

Subscribed and sworn to before me this 31st day of October, 2007.
_____
Notary Public
My Commission Expires:

PATRICIA ANN SCHWARTZ
NOTARY PUBLIC, State of New York
No. 01SC4877236
Qualified in Suffolk County
Commission Expires Nov. 24, 2010