# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO.**, *et al.* | ) | **Case No. 01-1139 (JKF)** |
| | ) | |
| **Debtors.** | ) | (Jointly Administered) |

## PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS AND THE FUTURE CLAIMANTS' REPRESENTATIVE FOR W. R. GRACE & CO., ET AL. DATED AS OF NOVEMBER 5, 2007

Elihu Inselbuch
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, NY 10152-3500
Telephone: (212) 319-7125

Peter Van N. Lockwood
Ronald Reinsel
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, NW
Washington, DC 20005
Telephone: (202) 862-5000

Marla R. Eskin (#2989)
Mark T. Hurford (#3299)
CAMPBELL & LEVINE, LLC
800 King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 426-1900

*Counsel for the Official Committee of*
*Asbestos Personal Injury Claimants*

Roger Frankel
Richard H. Wyron
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, NW
Washington, DC 20005-1706
Telephone: (202) 339-8400

John C. Phillips, Jr. (#110)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
Telephone: (302) 655-4200

*Counsel for David T. Austern,*
*Future Claimants' Representative*

# TABLE OF CONTENTS

**Page**

ARTICLE 1    DEFINITIONS, CONSTRUCTION OF TERMS, EXHIBITS  AND ANCILLARY DOCUMENTS .......................................................................... 3

1.1    DEFINED TERMS ............................................................ 3

1.2    OTHER TERMS/INTERPRETATION ............................................... 3

1.3    THE PLAN DOCUMENTS ....................................................... 3

1.4    ANCILLARY DOCUMENTS ...................................................... 3

ARTICLE 2    PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS ............................................ 4

2.1    UNCLASSIFIED CLAIMS ...................................................... 4

2.2    PAYMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS ........... 4

2.3    PRIORITY TAX CLAIMS ...................................................... 4

2.4    OTHER UNCLASSIFIED CLAIMS ................................................ 5

ARTICLE 3    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS .......................................................... 5

3.1    SUMMARY .................................................................. 5

    3.1.1    Class 1. Priority Claims ............................................ 6

    3.1.2    Class 2. Secured Claims ............................................. 6

    3.1.3    Class 3. Unsecured Pass-Through Employee Related Claims ................. 7

    3.1.4    Class 4. Workers' Compensation Claims ................................ 7

    3.1.5    Class 5. Intercompany Claims ........................................ 8

    3.1.6    Class 6. Asbestos PI Claims ......................................... 8

    3.1.7    Class 7. ZAI Claims ................................................. 9

    3.1.8    Class 8. Asbestos PD Claims ......................................... 10

    3.1.9    Class 9. General Unsecured Claims ................................... 11

    3.1.10   Class 10. Environmental Claims ...................................... 12

    3.1.11   Class 11. Equity Interests in the Parent ............................ 14

    3.1.12   Class 12. Equity Interests in the Debtors other than the Parent ............... 14

ARTICLE 4    MODIFICATION OR WITHDRAWAL OF THIS PLAN ............................ 15

4.1    MODIFICATION OF THIS PLAN; AMENDMENT OF PLAN DOCUMENTS ........................................................... 15

    4.1.1    Modification of this Plan ........................................... 15

**TABLE OF CONTENTS**
(continued)

|  |  |  |  |  |
|---|---|---|---|---|
|  | 4.1.2 | Amendment of Plan Documents | 15 |
| 4.2 | WITHDRAWAL OF THIS PLAN | 15 |
|  | 4.2.1 | Right to Withdraw this Plan | 15 |
|  | 4.2.2 | Effect of Withdrawal | 15 |
| ARTICLE 5 | PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS AND ASBESTOS CLAIMS GENERALLY | 15 |
| 5.1 | OBJECTION TO CLAIMS (OTHER THAN ASBESTOS PI CLAIMS); PROSECUTION OF DISPUTED CLAIMS | 15 |
| 5.2 | DISTRIBUTION ON ACCOUNT OF DISPUTED CLAIMS | 16 |
| 5.3 | RESOLUTION OF ASBESTOS PI CLAIMS | 16 |
| ARTICLE 6 | ACCEPTANCE OR REJECTION OF THIS PLAN | 16 |
| 6.1 | IMPAIRED CLASSES TO VOTE | 16 |
| 6.2 | ACCEPTANCE BY IMPAIRED CLASSES OF CLAIMS | 16 |
| 6.3 | PRESUMED ACCEPTANCE OF THIS PLAN | 16 |
| 6.4 | NONCONSENSUAL CONFIRMATION | 17 |
|  | 6.4.1 | Cramdown | 17 |
|  | 6.4.2 | General Reservation of Rights | 17 |
| ARTICLE 7 | IMPLEMENTATION OF THIS PLAN | 17 |
| 7.1 | CORPORATE GOVERNANCE | 17 |
|  | 7.1.1 | Amendment of Certificate of Incorporation of the Parent | 17 |
|  | 7.1.2 | Amendment of By-Laws of the Parent | 17 |
|  | 7.1.3 | D&O and Fiduciary Liability Tail Coverage Policies | 17 |
| 7.2 | THE ASBESTOS TRUST | 18 |
|  | 7.2.1 | Creation of the Asbestos Trust | 18 |
|  | 7.2.2 | Funding of the Asbestos Trust | 18 |
|  | 7.2.3 | Transfer of Assets into the Asbestos Trust | 18 |
|  | 7.2.4 | Transfer of Claims and Demands to the Asbestos Trust | 18 |
|  | 7.2.5 | Trust Causes of Action | 19 |
|  | 7.2.6 | Appointment and Termination of Trustees | 19 |
|  | 7.2.7 | Creation and Termination of the TAC | 19 |
|  | 7.2.8 | Cooperation Agreement | 19 |

# TABLE OF CONTENTS
## (continued)

|  |  | 7.2.9 | Institution and Maintenance of Legal and other Proceedings | 20 |
| 7.3 |  | PAYMENTS AND DISTRIBUTIONS UNDER THIS PLAN | | 20 |
|  |  | 7.3.1 | Asbestos Trust Payments and Plan Distributions | 20 |
|  |  | 7.3.2 | Timing of Plan Distributions | 20 |
| 7.4 |  | DELIVERY OF DISTRIBUTIONS AND UNDELIVERABLE OR UNCLAIMED DISTRIBUTIONS. | | 20 |
|  |  | 7.4.1 | Delivery by the Reorganized Debtors of Distributions in General | 20 |
|  |  | 7.4.2 | Undeliverable Distributions by the Reorganized Debtors | 21 |
| 7.5 |  | PAYMENTS UNDER THIS PLAN | | 21 |
|  |  | 7.5.1 | Manner of Cash Payments under this Plan | 21 |
|  |  | 7.5.2 | Valuation of Stock Payments under this Plan | 21 |
|  |  | 7.5.3 | Fractional Payments under this Plan | 21 |
| 7.6 |  | OCCURRENCE OF THE CONFIRMATION DATE | | 21 |
|  |  | 7.6.1 | Findings of Fact and/or Conclusions of Law | 21 |
|  |  | 7.6.2 | Orders of this Court | 24 |
| 7.7 |  | CONDITIONS TO OCCURRENCE OF THE EFFECTIVE DATE | | 25 |
| 7.8 |  | MANAGEMENT OF THE REORGANIZED DEBTORS | | 26 |
| 7.9 |  | CORPORATE ACTION | | 27 |
| 7.10 |  | EFFECTUATING DOCUMENTS AND FURTHER TRANSACTIONS | | 27 |
| 7.11 |  | ALLOCATION OF PLAN DISTRIBUTIONS BETWEEN PRINCIPAL AND INTEREST | | 27 |
| 7.12 |  | NO SUCCESSOR LIABILITY | | 27 |
| 7.13 |  | DEEMED CONSOLIDATION OF THE DEBTORS FOR PLAN PURPOSES ONLY | | 28 |
| 7.14 |  | INSURANCE NEUTRALITY PROVISIONS. | | 28 |
| ARTICLE 8 |  | INJUNCTIONS, RELEASES & DISCHARGE | | 29 |
| 8.1 |  | DISCHARGE | | 29 |
|  |  | 8.1.1 | Discharge of the Debtors and Related Discharge Injunction | 29 |
|  |  | 8.1.2 | Discharge of Liabilities to Holders of Asbestos PI Claims | 30 |
|  |  | 8.1.3 | Disallowed Claims and Disallowed Equity Interests | 30 |
|  |  | 8.1.4 | Non-Dischargeable ERISA Liability | 30 |

**TABLE OF CONTENTS**
(continued)

| | | | | |
|---|---|---|---|---|
| 8.2 | | THE ASBESTOS CHANNELING INJUNCTION | | 30 |
| | 8.2.1 | Injunction | | 31 |
| | 8.2.2 | Reservations from Asbestos Channeling Injunction | | 32 |
| 8.3 | | ASBESTOS INSURANCE ENTITY INJUNCTION(S) | | 32 |
| | 8.3.1 | Injunctions | | 32 |
| | 8.3.2 | Injunction | | 36 |
| 8.4 | | ASBESTOS PD/SUCCESSOR CLAIMS INJUNCTION. | | 37 |
| | 8.4.1 | Injunction | | 37 |
| | 8.4.2 | Reservations from the Asbestos PD/Successor Claims Injunction | | 38 |
| 8.5 | | INJUNCTIONS AND RELEASES RELATED TO THE SEALED AIR INDEMNIFIED PARTIES AND FRESENIUS INDEMNIFIED PARTIES | | 38 |
| 8.6 | | TERM OF CERTAIN INJUNCTIONS AND AUTOMATIC STAY | | 39 |
| | 8.6.1 | Injunctions and/or Automatic Stays in Existence Immediately prior to Confirmation | | 39 |
| | 8.6.2 | Injunctions Provided for in this Plan | | 39 |
| 8.7 | | ADDITIONAL RELEASES AND INDEMNIFICATION | | 39 |
| | 8.7.1 | Release of Sealed Air Indemnified Parties | | 39 |
| | 8.7.2 | Release of Fresenius Indemnified Parties | | 40 |
| | 8.7.3 | Settlement Agreement | | 40 |
| | 8.7.4 | Effect of the Fresenius Settlement Agreement, the Fresenius Settlement Order, and the Sealed Air Settlement Agreement | | 40 |
| | 8.7.5 | Release of Avoidance Actions. | | 40 |
| ARTICLE 9 | | EXECUTORY CONTRACTS, UNEXPIRED LEASES, GUARANTIES, AND INDEMNITY AGREEMENT | | 41 |
| 9.1 | | ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | | 41 |
| 9.2 | | LETTERS OF CREDIT, SURETY BONDS, GUARANTIES, AND CERTAIN INDEMNITY AGREEMENTS | | 42 |
| 9.3 | | COMPENSATION AND BENEFIT PROGRAM | | 43 |
| ARTICLE 10 | | RETENTION OF JURISDICTION | | 43 |
| 10.1 | | PLAN DOCUMENTS | | 43 |
| 10.2 | | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | | 44 |

# TABLE OF CONTENTS
(continued)

Page

10.3 DISPUTED CLAIMS ALLOWANCE/DISALLOWANCE ............................... 44

10.4 ENFORCEMENT/MODIFICATION OF THIS PLAN ...................... 44

10.5 COMPENSATION OF PROFESSIONALS ........................................ 45

10.6 SETTLEMENTS ................................................................................ 45

10.7 TAXES .............................................................................................. 45

10.8 SPECIFIC PURPOSES ..................................................................... 45

10.9 INSURANCE MATTERS .................................................................. 45

ARTICLE 11    MISCELLANEOUS PROVISIONS ................................. 45

11.1 AUTHORITY OF THE DEBTORS ................................................... 45

11.2 PAYMENT OF STATUTORY FEES ................................................ 46

11.3 RETAINED CAUSES OF ACTION .................................................. 46

    11.3.1 Maintenance of Causes of Action ............................................. 46

    11.3.2 Preservation of All Causes of Action not Expressly Settled or Released ......................................................................................... 46

11.4 THIRD-PARTY AGREEMENTS ....................................................... 47

11.5 REQUIREMENTS OF THE FRESENIUS SETTLEMENT AGREEMENT .................................................................................. 47

11.6 REQUIREMENTS OF THE SEALED AIR SETTLEMENT AGREEMENT .................................................................................. 47

11.7 DISSOLUTION OF THE UNSECURED CREDITORS' COMMITTEE, THE ASBESTOS PI COMMITTEE, THE ASBESTOS PD COMMITTEE AND THE EQUITY COMMITTEE; CONTINUED RETENTION OF THE FUTURE CLAIMANTS' REPRESENTATIVE ......................................... 47

11.8 EXCULPATION .............................................................................. 48

11.9 TITLE TO ASSETS; DISCHARGE OF LIABILITIES ..................... 49

11.10 NOTICES ......................................................................................... 49

11.11 HEADINGS ...................................................................................... 52

11.12 GOVERNING LAW .......................................................................... 52

11.13 FILING OF ADDITIONAL DOCUMENTS ...................................... 52

11.14 COMPLIANCE WITH TAX REQUIREMENTS ............................... 52

11.15 EXEMPTION FROM TRANSFER TAXES ....................................... 52

11.16 FURTHER ASSURANCES ............................................................... 53

**TABLE OF CONTENTS**
(continued)

**Page**

11.17   FURTHER AUTHORIZATIONS ........................................................................ 53

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO., et al.,[1]** | ) | **Case No. 01-1139 (JKF)** |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

## PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS AND THE FUTURE CLAIMANTS' REPRESENTATIVE FOR W. R. GRACE & CO., ET AL. DATED AS OF NOVEMBER 5, 2007

**THIS PLAN PROVIDES, AMONG OTHER THINGS, FOR THE ISSUANCE OF INJUNCTIONS THAT RESULT IN THE CHANNELING OF ALL ASBESTOS PERSONAL INJURY CLAIMS OF W.R. GRACE & CO. AND THE ASBESTOS PROTECTED PARTIES (AS DEFINED HEREIN) INTO A TRUST AS MORE FULLY DESCRIBED HEREIN.**

This Plan is not an offer with respect to any securities or a solicitation of acceptances of this Plan; any such offer or solicitation will only be made in compliance with applicable law, including applicable provisions of securities laws and the Bankruptcy Code. This Plan has not been filed with or reviewed by the Securities and Exchange Commission or any securities regulatory authority of any state under the Securities Act of 1933, as amended, or under any state securities or "blue sky" laws. This Plan has not been approved or disapproved by any court or

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

the Securities and Exchange Commission.    Any representation to the contrary is a criminal offense.

Elihu Inselbuch
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, NY 10152-3500
Telephone:  (212) 319-7125

Peter Van N. Lockwood
Ronald Reinsel
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, NW
Washington, DC 20005
Telephone:  (202) 862-5000

Marla R. Eskin (#2989)
Mark T. Hurford (#3299)
CAMPBELL & LEVINE, LLC
800 King Street, Suite 300
Wilmington, DE 19801
Telephone:  (302) 426-1900

*Counsel for the Official Committee of
Asbestos Personal Injury Claimants*

Roger Frankel
Richard H. Wyron
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, NW
Washington, DC  20005-1706
Telephone:  (202) 339-8400

John C. Phillips, Jr. (#110)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
Telephone: (302) 655-4200

*Counsel for David T. Austern,
Future Claimants' Representative*

The Official Committee of Asbestos Personal Injury Claimants and the Future Claimants' Representative hereby jointly propose the following Plan of Reorganization pursuant to the provisions of chapter 11 of title 11 of the United States Code for W.R. Grace & Co. and the above-captioned debtors and debtors in possession.  Reference is made to the Disclosure Statement distributed contemporaneously herewith for, among other things, a discussion of the history, businesses, properties, and results of operations of W.R. Grace & Co. and the above-captioned debtors and debtors in possession, and risks associated with this Plan.

## ARTICLE 1
## DEFINITIONS, CONSTRUCTION OF TERMS, EXHIBITS
## AND ANCILLARY DOCUMENTS

### 1.1   DEFINED TERMS

All capitalized terms used herein shall have the respective meanings specified herein or in Section I of the Glossary of Terms Used in Plan Documents included as Exhibit 1.1 in the Exhibit Book, unless the context otherwise requires.

### 1.2   OTHER TERMS/INTERPRETATION

The provisions of Section II of the Glossary of Terms Used in Plan Documents included as Exhibit 1.1 in the Exhibit Book apply herein (unless specifically provided otherwise herein).

### 1.3   THE PLAN DOCUMENTS

The Plan Documents, once Filed, shall also be available for review in the office of the clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court. Holders of Plan Claims and Equity Interests may also obtain a copy of the Plan Documents following their Filing with the clerk of the Court by contacting counsel for the FCR by a written request sent to:

ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, NW
Washington, DC  20005-1706
Attention:  Mary Wallace
Telephone:  (202) 339-8400

### 1.4   ANCILLARY DOCUMENTS

Each of the Plan Documents is an integral part of this Plan and is hereby incorporated by reference and made a part of this Plan.

# ARTICLE 2
## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

**2.1    UNCLASSIFIED CLAIMS**

In accordance with Bankruptcy Code § 1123(a)(1), Administrative Expense Claims and Priority Tax Claims are not classified and are excluded from the Classes set forth in Article 3 of this Plan. Reinstated General Unsecured Claims and Reinstated Environmental Claims also are not classified and are excluded from the Classes set forth in Article 3 of this Plan.

**2.2    PAYMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS**

Subject to the provisions of Bankruptcy Code §§ 330(a), 331, and 503, each Holder of an Allowed Administrative Expense Claim shall be paid the Allowed Amount of its Administrative Expense Claim either (i) in full, in Cash, by the Reorganized Debtors, on the Effective Date or as soon as practicable thereafter, or (ii) upon such other less favorable terms as may be mutually agreed upon between the Holder of an Allowed Administrative Expense Claim and the Reorganized Debtors or otherwise established pursuant to an order of the Bankruptcy Court; *provided* that (A) Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors in Possession on or after the Petition Date or assumed by the Debtors in Possession pursuant to this Plan or an order of the Bankruptcy Court shall be paid by the Reorganized Debtors in accordance with the terms and conditions of the particular transactions and any agreements relating thereto or any order of the Bankruptcy Court and (B) Allowed Administrative Expense Claims of Professionals shall be paid pursuant to an order of the Bankruptcy Court.

All final applications for compensation of Professionals for services rendered and for reimbursement of expenses incurred on or before the Confirmation Date, and any other request for compensation by any Entity for making a substantial contribution (as described in Bankruptcy Code § 503(b)(3)(D)) in the Chapter 11 Cases (except only for Claims under 28 U.S.C. § 1930 and for fees incurred by the clerk's office), shall be Filed no later than ninety (90) days after the Effective Date.  Any Professional or Entity with a Claim for payment of such an Administrative Expense Claim that does not File an application for payment of such Claim or expenses by the deadline set forth herein shall be forever barred from asserting such Claim and shall receive no Distribution under this Plan or otherwise on account of such Claim. Compensation of Professionals for services rendered and for reimbursement of expenses incurred after the Confirmation Date shall be paid by the Debtors in accordance with any such Professional's invoice(s) for the same without any action or order of the Court.

**2.3    PRIORITY TAX CLAIMS**

Each Holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Priority Tax Claim, at the option of the Reorganized Debtors, either (i) in full, in Cash, by the Reorganized Debtors, on the Effective Date or as soon as practicable thereafter, or (ii) upon such other terms as may be agreed upon by the Holder of an Allowed Priority Tax Claim and

approved by the Bankruptcy Court, or (iii) in equal quarterly Cash payments commencing on the Initial Distribution Date and, thereafter, on each Quarterly Tax Distribution Date in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at 3.5% per annum, over a period not exceeding six (6) years after the date of assessment of such Allowed Priority Tax Claim, or upon such other terms (including such other rate of interest) determined by the Bankruptcy Court, which will provide the Holder of such Allowed Priority Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim; *provided, however*, that each Holder of a Priority Tax Claim which by operation of the Fresenius Settlement Agreement is an obligation for Fresenius Indemnified Taxes promptly shall be paid in full in Cash as such Fresenius Indemnified Taxes become due and payable.

## 2.4    OTHER UNCLASSIFIED CLAIMS

(a)    The Claims identified in Exhibit 2.4(a) in the Exhibit Book (the **"Reinstated General Unsecured Claims"**) shall be reinstated and the Plan shall leave unaltered the legal, equitable, and contractual rights to which each such Reinstated General Unsecured Claim entitles the Holder of such Reinstated General Unsecured Claim.

(b)    The Claims identified in Exhibit 2.4(b) in the Exhibit Book (the **"Reinstated Environmental Claims"**) shall be reinstated and the Plan shall leave unaltered the legal, equitable, and contractual rights to which each such Reinstated Environmental Claim entitles the Holder of such Reinstated Environmental Claim.  Environmental Claims may be categorized as Reinstated Environmental Claims by the Debtors or the Plan Proponents up until five (5) days after approval of the Disclosure Statement by the Bankruptcy Court and Exhibit 2.4(b) in the Exhibit Book shall be amended accordingly.


# ARTICLE 3
## CLASSIFICATION AND TREATMENT
## OF CLAIMS AND EQUITY INTERESTS


## 3.1    SUMMARY

Claims and Equity Interests are classified for all purposes, including voting, confirmation, and Distribution pursuant to this Plan and pursuant to Bankruptcy Code §§ 1122 and 1123(a)(1), as follows:

|  | **CLASSIFICATION** | **IMPAIRMENT AND VOTING** |
|---|---|---|
| Class 1 | Priority Claims | Unimpaired -- deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 2 | Secured Claims | Unimpaired -- deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 3 | Unsecured Pass-Through Employee Related Claims | Unimpaired -- deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 4 | Workers' Compensation Claims | Unimpaired -- deemed to have voted to accept the |

| | | Plan; no separate vote being solicited. |
|---|---|---|
| Class 5 | Intercompany Claims | Unimpaired -- deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 6 | Asbestos PI Claims | Impaired -- vote being solicited. |
| Class 7 | ZAI Claims | Unimpaired -- deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 8 | Asbestos PD Claims | Impaired -- vote being solicited. |
| Class 9 | General Unsecured Claims | Impaired -- vote being solicited. |
| Class 10 | Environmental Claims | Impaired -- vote being solicited. |
| Class 11 | Equity Interests in the Parent | Impaired -- deemed to have rejected the Plan; no separate vote being solicited. |
| Class 12 | Equity Interests in Debtors Other than the Parent | Unimpaired -- deemed to have voted to accept the Plan; no separate vote being solicited. |

### 3.1.1   Class 1.        Priority Claims

(a)        Classification

Class 1 consists of all Priority Claims against the Debtors.

(b)        Treatment

Each Holder of an Allowed Priority Claim shall be paid the Allowed Amount of its Allowed Priority Claim either (i) in full, in Cash, on the later of (A) the Effective Date or as soon as practicable thereafter or (B) the date such Priority Claim becomes an Allowed Priority Claim, or as soon as practicable thereafter, or (ii) upon such other terms as may be agreed upon by the Holder of an Allowed Priority Claim and approved by the Bankruptcy Court.

(c)        Impairment and Voting

Class 1 is unimpaired.   The Holders of the Allowed Priority Claims in Class 1 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 3.1.2   Class 2.        Secured Claims

(a)        Classification

Class 2 consists of all Secured Claims against the Debtors.

(b)        Treatment

Each Holder of an Allowed Secured Claim shall be paid the Allowed Amount of its Allowed Secured Claim at the option of the Reorganized Debtors, either (i) in full, in Cash, on the later of (A) the Effective Date or as soon as practicable thereafter or (B) the date such Secured Claim becomes an Allowed Secured Claim, or as soon as practicable thereafter; (ii)

upon such other terms as may be agreed upon by the Holder of an Allowed Secured Claim and approved by the Bankruptcy Court; (iii) by the surrender to the Holder or Holders of any Allowed Secured Claim of the property securing such Secured Claim; or (iv) notwithstanding any contractual provision or applicable law that entitles the Holder of a Secured Claim to demand or receive payment thereof prior to the stated maturity from and after the occurrence of a default, by reinstatement in accordance with Bankruptcy Code § 1124(2)(A)(D).

(c)     Impairment and Voting

Class 2 is unimpaired. The Holders of the Allowed Secured Claims in Class 2 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 3.1.3   Class 3.       Unsecured Pass-Through Employee Related Claims

(a)     Classification

Class 3 consists of all Unsecured Pass-Through Employee Related Claims.

(b)     Treatment

This Plan leaves unaltered the legal, equitable, and contractual rights to which each such Unsecured Pass-Through Employee Related Claim entitles the Holder of such Unsecured Pass-Through Employee Related Claim.

(c)     Impairment and Voting

Class 3 is unimpaired. The Holders of the Unsecured Pass-Through Employee Related Claims in Class 3 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 3.1.4   Class 4.       Workers' Compensation Claims

(a)     Classification

Class 4 consists of all Workers' Compensation Claims against the Debtors.

(b)     Treatment

This Plan leaves unaltered the legal, equitable, and contractual rights to which each such Workers' Compensation Claim entitles the Holder of such Workers' Compensation Claim.

(c)     Impairment and Voting

Class 4 is unimpaired.  The Holders of the Workers' Compensation Claims in Class 4 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 3.1.5   Class 5.        Intercompany Claims

(a)      <u>Classification</u>

Class 5 consists of all Intercompany Claims.

(b)      <u>Treatment</u>

This Plan leaves unaltered the legal, equitable, and contractual rights to which each such Intercompany Claim entitles the Holder of such Intercompany Claim.

(c)      <u>Impairment and Voting</u>

Class 5 is unimpaired.  The Holders of Intercompany Claims in Class 5 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 3.1.6   Class 6.        Asbestos PI Claims

(a)      <u>Classification</u>

Class 6 consists of all Asbestos PI Claims against the Debtors.

(b)      <u>Treatment</u>

(i)      All Class 6 Asbestos PI Claims shall be resolved in accordance with the terms, provisions, and procedures of the Asbestos Trust Agreement and the TDP.

(ii)      All Class 6 Asbestos PI Claims shall be paid by the Asbestos Trust solely out of the Asbestos Trust Assets as and to the extent provided in the TDP.  The Asbestos Trust Assets that will be transferred to the Asbestos Trust on the Effective Date are as follows:

(A)      the Sealed Air Payment;

(B)      all Asbestos PI Insurance Rights; *provided however* that if the Asbestos PI Insurance Rights Value is more than $500 million, then such Asbestos PI Insurance Rights shall not be transferred to the Asbestos Trust but shall remain with the Reorganized Debtors;

(C)      Cash in an amount equal to (I) the Distributable Cash Percentage <u>multiplied by</u> (II) the Estimated PI Amount, which amount of Cash will be reduced by the Sealed Air Payment Amount, but in no event will the amount pursuant to this clause (C) be less than zero; and

(D)    a number of shares of Parent Common Stock having an aggregate value equal to the result obtained from (I) the Adjusted PI Claim Amount minus (II) the sum of the Sealed Air Payment Amount, the Asbestos PI Insurance Rights Value (provided that Asbestos PI Insurance Rights are transferred to the Asbestos Trust pursuant to Section 3.1.6(b)(ii)(B)) and the amount of Cash payable under clause (C) of this Section 3.1.6(b)(ii).

(iii)    If Total Distributable Value is greater than the Aggregate Principal Claims Amount, then the Asbestos Trust shall receive, for each Asbestos PI Claim that the Bankruptcy Court has determined is entitled to the payment of post-petition interest, a number of shares of Parent Common Stock having an aggregate value equal to (A) the Interest Allocation Percentage multiplied by (B) the amount of post-petition interest, calculated based on the interest rate determined by the Bankruptcy Court to apply to such Asbestos PI Claim, accruing from the Petition Date to the Effective Date; *provided however* that notwithstanding the foregoing the Plan Proponents may cause the Reorganized Debtors to pay any or all of such post-petition interest in Cash if and to the extent funds are available. A Holder of an Asbestos PI Claim shall receive post-petition interest only to the extent the same is paid to the Asbestos Trust pursuant to this Section 3.1.6(b)(iii) and such interest is otherwise payable to such Holder under the TDP.

(iv)    Notwithstanding the foregoing, each Holder of a Pre-Petition Asbestos PI Litigation Claim who failed to file an Asbestos PI Proof of Claim Form before the applicable Asbestos PI Pre-petition Litigation Bar Date in accordance with the August Bar Date Order is forever barred, estopped and enjoined from asserting such Pre-Petition Asbestos PI Litigation Claim against any of the Debtors, the Reorganized Debtors or the Asbestos Trust or receiving any distribution from any of the Debtors, the Reorganized Debtors or the Asbestos Trust in respect of such Pre-Petition Asbestos PI Litigation Claim.

(c)    Asbestos Channeling Injunction

The sole recourse of the Holder of an Asbestos PI Claim on account of such Asbestos PI Claim shall be to the Asbestos Trust pursuant to the provisions of the Asbestos Channeling Injunction, the Asbestos Trust Agreement, and the TDP.

(d)    Impairment and Voting

Class 6 is impaired.  The Plan Proponents are soliciting the votes of Holders of the Asbestos PI Claims in Class 6 to accept or reject this Plan in the manner and to the extent provided in the Confirmation Procedures Order.

### 3.1.7  Class 7.    ZAI Claims

(a)    Classification

Class 7 consists of all ZAI Claims against the Debtors.

(b)    Treatment

This Plan leaves unaltered the legal, equitable, and contractual rights to which each such ZAI Claim entitles the Holder of such ZAI Claim.

(c)    Impairment and Voting

Class 7 is unimpaired.  The Holders of ZAI Claims in Class 7 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 3.1.8    Class 8.        Asbestos PD Claims

(a)    Classification

Class 8 consists of all Asbestos PD Claims against the Debtors.

(b)    Treatment

(i)    (A)    On the Effective Date, each Holder of an Asbestos PD Claim that is Allowed as of the Effective Date shall be paid the Allowed Amount of its Allowed Asbestos PD Claim in Cash and Parent Common Stock as follows:

(I)    Cash in an amount equal to (x) the Distributable Cash Percentage multiplied by (y) the Allowed Amount of such Allowed Asbestos PD Claim; and

(II)    a number of shares of Parent Common Stock having an aggregate value equal to (x) the Allowed Amount of such Allowed Asbestos PD Claim minus (y) the amount of Cash payable under clause (I) of this Section 3.1.8(b)(i)(A).

(B)    Asbestos PD Claims that are unresolved prior to the commencement of the Confirmation Hearing (such Asbestos PD Claims, identified in Exhibit 3.1.8 in the Exhibit Book, are referred to as the "**Unresolved Asbestos PD Claims**") shall undergo mediation, and the Debtors or the Reorganized Debtors (as applicable) and each Holder of an Unresolved Asbestos PD Claim shall participate in such mediation with a mediator appointed by the Bankruptcy Court.   Any such Unresolved Asbestos PD Claim that is resolved pursuant to such mediation prior to the Effective Date shall no longer be treated as an Unresolved Asbestos PD Claim but shall be treated as an Allowed Asbestos PD Claim and paid in accordance with Section 3.1.8(b)(i)(A) above on the Effective Date.  If the mediator determines in accordance with any applicable Court rulings that any Unresolved Asbestos PD Claim is unable to be resolved through mediation, then the Holder thereof may have such Unresolved Asbestos PD Claim either (i) determined by the Bankruptcy Court or (ii) if the Bankruptcy Court has not ruled substantively with respect to such Asbestos PD Claim prior to date such determination is sought, determined in accordance with state law in state court; *provided however* that such Holder may resolve such Asbestos PD Claim by agreement with the Reorganized Debtors at any time prior to such determination.  On the Effective Date, the Reorganized Debtors shall establish a reserve from which Unresolved Asbestos PD Claims shall be paid if and to the extent Allowed (the "**PD Reserve**") consisting of Cash in an amount equal to the Distributable Cash Percentage multiplied

by the Estimated PD Amount and a number of shares of Parent Common Stock having a value equal to the Estimated PD Amount minus the amount of Cash transferred to the PD Reserve in accordance with this sentence. Each Holder of an Unresolved Asbestos PD Claim that is Allowed after the Effective Date shall be paid on the applicable Claims Distribution Date the Allowed Amount of its Allowed Asbestos PD Claim in Cash and Parent Common Stock from the PD Reserve as follows:

> (I)    Cash in an amount equal to (x) the Distributable Cash Percentage multiplied by (y) the Allowed Amount of such Allowed Asbestos PD Claim; and

> (II)    a number of shares of Parent Common Stock having an aggregate value equal to (x) the Allowed Amount of such Allowed Asbestos PD Claim minus (y) the amount of Cash payable under clause (I) of this Section 3.1.8(b)(i)(B);

*provided however* that if the PD Reserve does not have sufficient assets to pay all Allowed Amounts of Unresolved Asbestos PD Claims that are Allowed after the Effective Date, the Reorganized Debtors shall remain obligated to pay any Allowed Amounts not funded from the PD Reserve. Once all Unresolved Asbestos PD Claims have been resolved and, if and to the extent entitled to payment, paid in accordance herewith, any assets remaining in the PD Reserve shall become vested in, and shall be transferred and delivered to, the Reorganized Debtors free and clear of any Encumbrance.

(ii)    If Total Distributable Value is greater than the Aggregate Principal Claims Amount, then each Holder of an Asbestos PD Claim that the Bankruptcy Court has determined is entitled to the payment of post-petition interest shall receive, as payment for such post-petition interest, a number of shares of Parent Common Stock having an aggregate value equal to (A) the Interest Allocation Percentage multiplied by (B) the amount of post-petition interest, calculated based on the interest rate determined by the Bankruptcy Court to apply to such Holder's Asbestos PD Claim, accruing from the Petition Date to the Effective Date; *provided however* that notwithstanding the foregoing the Plan Proponents may cause the Reorganized Debtors to pay any or all of such post-petition interest in Cash if and to the extent funds are available.

(c)    Impairment and Voting

Class 8 is impaired. The Plan Proponents are soliciting the votes of Holders of the Asbestos PD Claims in Class 8 to accept or reject this Plan in the manner and to the extent provided in the Confirmation Procedures Order.

### 3.1.9   Class 9.    General Unsecured Claims

(a)    Classification

Class 9 consists of all General Unsecured Claims against the Debtors.

(b)    Treatment

(i)    On the Effective Date, each Holder of an Allowed General Unsecured Claim shall be paid the Allowed Amount of its Allowed General Unsecured Claim in Cash and Parent Common Stock as follows:

(I)    Cash in an amount equal to (x) the Distributable Cash Percentage multiplied by (y) the Allowed Amount of such Allowed General Unsecured Claim; and

(II)    a number of shares of Parent Common Stock having an aggregate value equal to (x) the Allowed Amount of such Allowed General Unsecured Claim minus (y) the amount of Cash payable under clause (I) of this Section 3.1.9(b)(i).

(ii)    If Total Distributable Value is greater than the Aggregate Principal Claims Amount, then each Holder of a General Unsecured Claim that the Bankruptcy Court has determined is entitled to the payment of post-petition interest shall receive, as payment for such post-petition interest, a number of shares of Parent Common Stock having an aggregate value equal to (A) the Interest Allocation Percentage multiplied by (B) the amount of post-petition interest, calculated based on the interest rate determined by the Bankruptcy Court to apply to such Holder's General Unsecured Claim, accruing from the Petition Date to the Effective Date; *provided however* that notwithstanding the foregoing the Plan Proponents may cause the Reorganized Debtors to pay any or all of such post-petition interest in Cash if and to the extent funds are available.

(c)    Impairment and Voting

Class 9 is impaired.  The Plan Proponents are soliciting the votes of Holders of the General Unsecured Claims in Class 9 to accept or reject this Plan in the manner and to the extent provided in the Confirmation Procedures Order.

### 3.1.10  Class 10.    Environmental Claims

(a)    Classification

Class 10 consists of all Environmental Claims against the Debtors.

(b)    Treatment

(i)    (A)    On the Effective Date, each Holder of an Environmental Claim that is Allowed as of the Effective Date shall be paid the Allowed Amount of its Allowed Environmental Claim in Cash and Parent Common Stock as follows:

(I)    Cash in an amount equal to (x) the Distributable Cash Percentage multiplied by (y) the Allowed Amount of such Allowed Environmental Claim; and

(II)    a number of shares of Parent Common Stock having an aggregate value equal to (x) the Allowed Amount of such Allowed Environmental Claim minus (y) the amount of Cash payable under clause (I) of this Section 3.1.10(b)(i)(A); and

(B)    Environmental Claims that are unresolved as of the Effective Date (the "**Unresolved Environmental Claims**") shall be determined by the Bankruptcy Court; *provided however* that such Holder may resolve such Environmental Claim by agreement with the Reorganized Debtors at any time prior to such determination.   On the Effective Date, the Reorganized Debtors shall establish a reserve from which Unresolved Environmental Claims shall be paid if and to the extent Allowed (the "**EC Reserve**") consisting of Cash in an amount equal to the Distributable Cash Percentage multiplied by the Estimated Environmental Amount and a number of shares of Parent Common Stock having a value equal to the Estimated Environmental Amount minus the amount of Cash transferred to the EC Reserve in accordance with this sentence.  Each Holder of an Unresolved Environmental Claim that is Allowed after the Effective Date shall be paid on the applicable Claims Distribution Date the Allowed Amount of its Allowed Environmental Claim in Cash and Parent Common Stock from the EC Reserve as follows:

(I)    Cash in an amount equal to (x) the Distributable Cash Percentage multiplied by (y) the Allowed Amount of such Allowed Environmental Claim; and

(II)    a number of shares of Parent Common Stock having an aggregate value equal to (x) the Allowed Amount of such Allowed Environmental Claim minus (y) the amount of Cash payable under clause (I) of this Section 3.1.10(b)(i)(B);

*provided however* that if the EC Reserve does not have sufficient assets to pay all Allowed Amounts of Unresolved Environmental Claims that are Allowed after the Effective Date, the Reorganized Debtors shall remain obligated to pay any Allowed Amounts not funded from the EC Reserve.  Once all Unresolved Environmental Claims have been resolved and, if and to the extent entitled to payment, paid in accordance herewith, any assets remaining in the EC Reserve shall become vested in, and shall be transferred and delivered to, the Reorganized Debtors free and clear of any Encumbrance.

(ii)    If Total Distributable Value is greater than the Aggregate Principal Claims Amount, then each Holder of an Environmental Claim that the Bankruptcy Court has determined is entitled to the payment of post-petition interest shall receive, as payment for such post-petition interest, a number of shares of Parent Common Stock having an aggregate value equal to (A) the Interest Allocation Percentage multiplied by (B) the amount of post-petition interest, calculated based on the interest rate determined by the Bankruptcy Court to apply to such Holder's Environmental Claim, accruing from the Petition Date to the Effective Date; *provided however* that notwithstanding the foregoing the Plan Proponents may cause the Reorganized Debtors to pay any or all of such post-petition interest in Cash if and to the extent funds are available.

(c)    <u>Impairment and Voting</u>

Class 10 is impaired.  The Plan Proponents are soliciting the votes of Holders of the Environmental Claims in Class 10 to accept or reject this Plan in the manner and to the extent provided in the Confirmation Procedures Order.

### 3.1.11  Class 11.       Equity Interests in the Parent

(a)       Classification

Class 11 consists of Equity Interests in the Parent.

(b)       Treatment

On the Effective Date, Class 11 Equity Interests in the Parent shall be cancelled.  Holders of Class 11 Equity Interests in the Parent shall receive no distribution under the Plan; *provided however* that if Total Distributable Value is greater than the Aggregate Claims Amount then, on the Effective Date, each of the Holders of Class 11 Equity Interests in the Parent that are holders of record as of the date that is thirty (30) days prior to the Effective Date shall receive its Pro Rata Portion of a number of shares of Parent Common Stock having an aggregate value equal to the result of (i) Equity Value <u>minus</u> (ii) the aggregate value attributed to the shares of Parent Common Stock to be issued pursuant to Sections 3.1.6, 3.1.8, 3.1.9 and 3.1.10 (including all shares to be issued and reserved in the PD Reserve and the EC Reserve, respectively).

(c)       Impairment and Voting

Class 11 is impaired.  The Holders of the Allowed Equity Interests in the Parent in Class 11 are deemed to have rejected this Plan in accordance with the provision of Section 1126(g) of the Bankruptcy Code and, accordingly, their separate vote will not be solicited.

### 3.1.12  Class 12.       Equity Interests in the Debtors other than the Parent

(a)       Classification

Class 12 consists of Equity Interests in the Debtors other than the Parent.

(b)       Treatment

This Plan leaves unaltered the legal, equitable, and contractual rights to which each such Equity Interest in the Debtors other than the Parent entitles the Holder of such Equity Interest.

(c)       Impairment and Voting

Class 12 is unimpaired.  The Holders of the Equity Interests in the Debtors other than the Parent in Class 12 are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

## ARTICLE 4
## MODIFICATION OR WITHDRAWAL OF THIS PLAN

**4.1     MODIFICATION OF THIS PLAN; AMENDMENT OF PLAN DOCUMENTS**

### 4.1.1    Modification of this Plan

The Plan Proponents, acting jointly, may alter, amend, or modify this Plan, or any other Plan Document, under Bankruptcy Code § 1127(a) at any time prior to the Confirmation Date so long as this Plan, as modified, meets the requirements of Bankruptcy Code §§ 1122 and 1123. Except as set forth in Section 4.1.2 below, after the Confirmation Date, and prior to the Effective Date, the Plan Proponents, acting jointly, may alter, amend, or modify this Plan in accordance with Bankruptcy Code § 1127(b).

### 4.1.2    Amendment of Plan Documents

From and after the Effective Date, the authority to amend, modify, or supplement the Plan Documents shall be as provided in this Plan or such documents.

**4.2     WITHDRAWAL OF THIS PLAN**

### 4.2.1    Right to Withdraw this Plan

This Plan may be withdrawn by the Plan Proponents, acting jointly, prior to the Confirmation Date.

### 4.2.2    Effect of Withdrawal

If this Plan is withdrawn prior to the Confirmation Date, this Plan shall be deemed null and void. In such event, nothing contained herein or in any of the Plan Documents shall be deemed to constitute a waiver or release of any claims or defenses of, or an admission or statement against interest by, either of the Plan Proponents or any other Entity or to prejudice in any manner the rights of either of the Plan Proponents or any Entity in any further proceedings involving the Debtors.

## ARTICLE 5
## PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS
## AND ASBESTOS CLAIMS GENERALLY

**5.1     OBJECTION TO CLAIMS (OTHER THAN ASBESTOS PI CLAIMS);
PROSECUTION OF DISPUTED CLAIMS**

Subject to the treatment provisions of this Plan, the Debtors or Reorganized Debtors, as applicable, and the Plan Proponents may object to the allowance of any Plan Claims (other than

Asbestos PI Claims) Filed with the Bankruptcy Court or to be otherwise resolved pursuant to any provisions of this Plan with respect to which they dispute liability, in whole or in part. Subject to the treatment provisions of this Plan, the Debtors' and the Plan Proponents' pending objections to any Plan Claims not channeled to and assumed by the Asbestos Trust shall be transferred to the Reorganized Debtors on the Effective Date for final resolution.

After the Effective Date, all objections that are Filed and prosecuted by the Reorganized Debtors as provided herein may be: (i) compromised and settled in accordance with the business judgment of the Reorganized Debtors without approval of the Bankruptcy Court or (ii) litigated to Final Order by the Reorganized Debtors. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by the Reorganized Debtors to Plan Claims (other than Asbestos PI Claims) shall be served and Filed no later than thirty (30) days after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court. Such further order may be obtained by the Reorganized Debtors without a hearing or notice.

To the extent that the Bankruptcy Court enters an alternative dispute resolution order which contemplates that an order shall survive confirmation of this Plan, such order shall be controlling.

**5.2   DISTRIBUTION ON ACCOUNT OF DISPUTED CLAIMS**

Notwithstanding Section 5.1 hereof, a Distribution shall be made to the Holder of a Disputed Claim only when, and to the extent that, such Disputed Claim becomes Allowed and pursuant to the appropriate provisions of this Plan covering the class of which such Disputed Claim is a part. No Distribution shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof in the manner prescribed by Section 5.1 hereof.

**5.3   RESOLUTION OF ASBESTOS PI CLAIMS**

Asbestos PI Claims shall be resolved in accordance with the Asbestos Trust Agreement and the TDP.

**ARTICLE 6**
**ACCEPTANCE OR REJECTION OF THIS PLAN**

**6.1   IMPAIRED CLASSES TO VOTE**

Each Holder of a Plan Claim or Equity Interest in an impaired Class is entitled to vote to accept or reject this Plan to the extent and in the manner provided herein or in the Confirmation Procedures Order.

**6.2   ACCEPTANCE BY IMPAIRED CLASSES OF CLAIMS**

Acceptance of this Plan by any impaired Class of Plan Claims shall be determined in accordance with the Confirmation Procedures Order and the Bankruptcy Code.

**6.3   PRESUMED ACCEPTANCE OF THIS PLAN**

Classes 1, 2, 3, 4, 5, 7 and 12 of Plan Claims and Equity Interests in Debtors other than the Parent are unimpaired.  Under Bankruptcy Code § 1126(f), the Holders of Plan Claims and Equity Interests in such Classes are conclusively presumed to have voted to accept this Plan.

## 6.4    NONCONSENSUAL CONFIRMATION

### 6.4.1    Cramdown

With respect to impaired Equity Interests in the Parent that are deemed to have failed to accept this Plan, and with respect to any impaired Class of  Plan Claims, including Classes created pursuant to amendments to this Plan, that fails to accept this Plan in accordance with Bankruptcy Code §§ 1126 and 1129(a), the Plan Proponents request, to the extent consistent with applicable law, that the Court confirm this Plan in accordance with Bankruptcy Code § 1129(b) with respect to such non-accepting Class of Equity Interests and such non-accepting Class of Plan Claims (if any), and this Plan constitutes a motion for such relief.

### 6.4.2    General Reservation of Rights

Should this Plan fail to be accepted by the requisite number and amount of the Holders of Plan Claims and Equity Interests required to satisfy Bankruptcy Code §§ 524(g) and 1129, then, notwithstanding any other provision of this Plan to the contrary, the Plan Proponents reserve the right to amend this Plan.

## ARTICLE 7
## IMPLEMENTATION OF THIS PLAN

## 7.1    CORPORATE GOVERNANCE

### 7.1.1    Amendment of Certificate of Incorporation of the Parent

The Certificate of Incorporation of Reorganized Parent shall, as of the Effective Date, be amended in its entirety to read substantially in the form set forth in Exhibit 7.1.1(a) in the Exhibit Book, and the By-Laws of Reorganized Parent shall be amended in their entirety to read substantially in the form set forth in Exhibit 7.1.1(b) in the Exhibit Book.  Consistent with, but only to the extent required by, Section 1123(a)(6) of the Bankruptcy Code, the amended Certificate of Incorporation of Reorganized Parent shall, among other things, prohibit the issuance of non-voting equity securities.

### 7.1.2    Amendment of By-Laws of the Parent

The By-Laws of the Parent shall be amended as of the Effective Date to read in their entirety substantially in the form set forth in Exhibit 7.1.2 in the Exhibit Book to, among other things, effectuate the provisions of this Plan.

### 7.1.3    D&O and Fiduciary Liability Tail Coverage Policies

The Reorganized Debtors shall obtain reasonable tail coverage under both (i) a directors and officers' insurance policy and (ii) a fiduciary liability coverage insurance policy for the current and former directors, officers, and employees of the Debtors.

## 7.2    THE ASBESTOS TRUST

### 7.2.1    Creation of the Asbestos Trust

Upon the entry of the Confirmation Order, effective as of the Effective Date, the Asbestos Trust shall be created in accordance with the Plan Documents.  The Asbestos Trust shall be a "qualified settlement fund" for federal income tax purposes within the meaning of regulations issued pursuant to Section 468B of the IRC.

The purpose of the Asbestos Trust shall be to, among other things: (i) assume the liabilities of the Debtors with respect to all Asbestos PI Claims (whether now existing or arising at any time hereafter); (ii) process, liquidate, pay and satisfy all Asbestos PI Claims in accordance, as applicable, with this Plan, the Asbestos Trust Agreement and the TDP and in such a way that provides reasonable assurance that the Asbestos Trust will value, and be in a position to pay, present and future Asbestos PI Claims and to otherwise comply with Bankruptcy Code § 524(g)(2)(B)(i); (iii) preserve, hold, manage, and maximize the assets of the Asbestos Trust for use in paying and satisfying Asbestos PI Claims entitled to payment; and (iv) otherwise carry out the provisions of the Asbestos Trust Agreement and any other agreements into which the Trustees have entered or will enter in connection with this Plan.

### 7.2.2    Funding of the Asbestos Trust

Effective on the Effective Date, subject to the conditions set forth in the Sealed Air Settlement Agreement, Cryovac, Inc. shall fund the Sealed Air Payment into the Asbestos Trust in accordance with this Plan and the provisions of the Sealed Air Settlement Agreement. Effective on the Effective Date, the Parent shall transfer or cause the transfer of the remainder of the Asbestos Trust Assets into the Asbestos Trust in accordance with this Plan.

### 7.2.3    Transfer of Assets into the Asbestos Trust

Upon the transfer of the Asbestos Trust Assets into the Asbestos Trust, such Asbestos Trust Assets shall be vested in the Asbestos Trust, free and clear of all claims, Equity Interests, Encumbrances and other interests of any Entity (except for such restrictions as may be imposed by applicable securities laws or pursuant to the Sealed Air Settlement Agreement).

### 7.2.4    Transfer of Claims and Demands to the Asbestos Trust

On the Effective Date, without any further action of any Entity, all liabilities, obligations, and responsibilities of any Asbestos Protected Party with respect to all Asbestos PI Claims shall be channeled to and assumed by the Asbestos Trust whether or not (A) subject to and except as provided in Section 3.1.6(b)(iv), a proof of claim based on such Asbestos PI Claim was Filed or deemed Filed under Bankruptcy Code § 501, (B) such claim is or was Allowed under Bankruptcy Code § 502, (C) such claim was listed on the Schedules of a Debtor, or (D) the

Holder of such Asbestos PI Claim voted on or accepted this Plan. This Section 7.2.4 is intended to further effect the Asbestos Channeling Injunction, the Asbestos Insurance Entity Injunction(s), and the Discharge described in Section 8.1 of this Plan. This Section 7.2.4 is not intended to, and it shall not, serve as a waiver of any defense to any claim the Debtors, the Asbestos Trust or any other Asbestos Protected Party would otherwise have.

### 7.2.5   Trust Causes of Action

Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, except as otherwise provided in the Plan, the Asbestos Trust shall retain and have the exclusive right to enforce against any Entity any and all of the Trust Causes of Action, with the proceeds of the recoveries of any such actions to be deposited in the Asbestos Trust; *provided, however,* that nothing herein shall alter, amend or modify the Asbestos Channeling Injunction and the Asbestos Insurance Entity Injunction(s).

### 7.2.6   Appointment and Termination of Trustees

The three initial Trustees of the Asbestos Trust shall be the persons identified in the Asbestos Trust Agreement. All successor Trustees shall be appointed in accordance with the terms of the Asbestos Trust Agreement. Upon termination of the Asbestos Trust, the Trustees' employment shall be deemed terminated and the Trustees shall be released and discharged of and from all further authority, duties, responsibilities and obligations relating to or arising from or in connection with the Chapter 11 Cases.

### 7.2.7   Creation and Termination of the TAC

The Trust Advisory Committee shall be established pursuant to the Asbestos Trust Agreement. The TAC shall have three members and shall have the functions, duties and rights provided in the Asbestos Trust Agreement. On or before the Confirmation Date, the three initial members of the TAC shall be selected by the Asbestos PI Committee. Upon termination of the Asbestos Trust, the TAC shall be deemed dissolved and the TAC shall be released and discharged of and from all further authority, duties, responsibilities and obligations relating to or arising from or in connection with the Chapter 11 Cases.

### 7.2.8   Cooperation Agreement

On the Effective Date, the Reorganized Debtors and the Asbestos Trust shall enter into a cooperation agreement pursuant to which: (a) provided that the Asbestos PI Insurance Rights are transferred to the Asbestos Trust pursuant to Section 3.1.6(b)(ii)(B), the Reorganized Debtors shall be required to cooperate with the Asbestos Trust to maximize recoveries and collection under the Asbestos PI Insurance Rights assigned to the Asbestos Trust pursuant to the Asbestos Insurance Agreement, and (b) the Reorganized Debtors shall provide to the Asbestos Trust the books and records of the Debtors and the Reorganized Debtors that pertain to Asbestos PI Claims.

The Plan Proponents shall File the draft of the cooperation agreement prior to the Effective Date and shall seek an order from the Court that the providing of books and records under such cooperation agreement shall not result in the destruction, impairment or waiver of any applicable privileges pertaining to such books and records.

### 7.2.9    Institution and Maintenance of Legal and other Proceedings

As of the Effective Date, without any further action of any Entity, the Asbestos Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Asbestos Trust, including the Trust Causes of Action.

## 7.3    PAYMENTS AND DISTRIBUTIONS UNDER THIS PLAN

### 7.3.1    Asbestos Trust Payments and Plan Distributions

Payments to Holders of Asbestos PI Claims shall be made by the Asbestos Trust in accordance with the Asbestos Trust Agreement and the TDP.  All Distributions or payments required or permitted to be made under this Plan (other than to Professionals) shall be made by the Reorganized Debtors in accordance with the treatment specified for each such Holder as specified herein (unless otherwise ordered by the Bankruptcy Court).  Distributions to be made on the Effective Date, the Initial Distribution Date or the Quarterly Tax Distribution Date shall be deemed actually made on such distribution date if made either (i) on the Effective Date, the Initial Distribution Date or the Quarterly Distribution Date or (ii) as soon as practicable thereafter.  Except as otherwise provided herein, Professionals shall be paid pursuant to the order of the Bankruptcy Court.

### 7.3.2    Timing of Plan Distributions

Whenever any Distribution to be made under this Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without the accrual of any additional interest (if interest is accruing pursuant to this Plan), on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

## 7.4    DELIVERY OF DISTRIBUTIONS AND UNDELIVERABLE OR UNCLAIMED DISTRIBUTIONS.

### 7.4.1    Delivery by the Reorganized Debtors of Distributions in General

Payments by the Asbestos Trust to Holders of Asbestos PI Claims shall be made in accordance with the Asbestos Trust Agreement and the TDP.  All other Distributions to Holders of Allowed Claims shall be made at the address of the Holder of such Allowed Claim as set forth on the Schedules, unless superseded by a new address set forth (i) on a proof of claim Filed by a Holder of an Allowed Claim, (ii) in another writing notifying the Reorganized Debtors of a change of address prior to the date of Distribution, or (iii) in a request for payment of an Administrative Expense Claim.

### 7.4.2    Undeliverable Distributions by the Reorganized Debtors

Any Cash, assets, and other properties to be distributed by the Reorganized Debtors under this Plan to Holders of Plan Claims, other than Asbestos PI Claims, that remain unclaimed (including by an Entity's failure to negotiate a check issued to such Entity) or otherwise not deliverable to the Entity entitled thereto before the later of (i) one year after Distribution or (ii) one-hundred twenty (120) calendar days after an order allowing such Entity's Plan Claim becomes a Final Order, shall become vested in, and shall be transferred and delivered to, the Reorganized Debtors.  In such event, such Entity's Plan Claim shall no longer be deemed to be Allowed or payable by the Reorganized Debtors, and such Entity shall be deemed to have waived its rights to such payments or Distributions under this Plan pursuant to Bankruptcy Code § 1143, shall have no further Claim in respect of such Distribution, and shall not participate in any further Distributions under this Plan with respect to such Claim.

## 7.5    PAYMENTS UNDER THIS PLAN

### 7.5.1    Manner of Cash Payments under this Plan

Unless the Entity receiving a Distribution or payment agrees otherwise, any such Distribution or payment to be made by the Reorganized Debtors or the Asbestos Trust in Cash shall be made, at the election of the Reorganized Debtors or the Asbestos Trust, as applicable, by check drawn on a domestic bank or by wire transfer from a domestic bank.

### 7.5.2    Valuation of Stock Payments under this Plan

The value of Parent Common Stock to be issued pursuant to Section 3.1 on the Effective Date (including all shares to be issued and reserved in the PD Reserve and the EC Reserve, respectively), and the value of Parent Common Stock to be distributed from the PD Reserve or the EC Reserve on a Claims Distribution Date, shall be determined based on the per share value obtained by dividing Equity Value as of the Confirmation Date by the total number of shares of Parent Common Stock to be issued on the Effective Date (including all shares to be issued and reserved in the PD Reserve and the EC Reserve, respectively).

### 7.5.3    Fractional Payments under this Plan

Notwithstanding any other provision of this Plan, payments of fractions of dollars or of fractional shares shall not be made.  Whenever, under this Plan, any payment of a fraction of a dollar or a fractional share of Parent Common Stock would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar or nearest whole share of Parent Common Stock, as applicable, (up or down), with half dollars or half shares being rounded up.

## 7.6    OCCURRENCE OF THE CONFIRMATION DATE

### 7.6.1    Findings of Fact and/or Conclusions of Law

The Court shall have made the following findings of fact and/or conclusions of law, among others, substantially to the effect as follows, in connection with the confirmation of this Plan, each of which shall be expressly set forth in the Confirmation Order:

(a)     The Plan satisfies all applicable sections of the Bankruptcy Code, including Bankruptcy Code § 524(g);

(b)     Claimants in Class 6 have voted for acceptance under the Plan in the requisite numbers and amounts required by Bankruptcy Code §§ 524(g), 1126 and 1129;

(c)     As of the Petition Date, the Debtors have been named as defendants in personal injury, wrongful death, or property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;

(d)     On the Effective Date, the Asbestos Trust shall assume the liabilities of the Debtors with respect to all Asbestos PI Claims;

(e)     The Asbestos Trust is to be funded in part by securities of the Parent and by the obligations of the Reorganized Parent to make future payments;

(f)     On the Effective Date, the Asbestos Trust shall own the majority of the voting shares of the Reorganized Parent;

(g)     The Asbestos Trust is to use the Asbestos Trust Assets to pay Asbestos PI Claims;

(h)     The Debtors are likely to be subject to substantial Demands for payment arising out of the same or similar conduct or events that gave rise to the Asbestos PI Claims, which Demands are addressed by the Asbestos Channeling Injunction and the Asbestos Insurance Entity Injunction;

(i)     The actual amounts, numbers, and timing of Demands cannot be determined;

(j)     Pursuit of Demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with the Asbestos PI Claims and Demands;

(k)     The terms of the Asbestos Channeling Injunction, the Asbestos Insurance Entity Injunction and the Asbestos PD/Successor Claims Injunction, including any provisions barring actions against third parties, are set out in the Plan in accordance with the requirements of Bankruptcy Rule 3016(c) and are adequately described in the Disclosure Statement;

(l)     Pursuant to Court orders or otherwise, the Asbestos Trust shall operate through mechanisms such as structured, periodic, or supplemental

payments, matrices, or periodic review of estimates of the numbers and values of Asbestos PI Claims or Demands, or other comparable mechanisms that provide reasonable assurance that the Asbestos Trust shall value, and be in a position to pay, Asbestos PI Claims or Demands that involve similar claims in substantially the same manner;

(m)   The FCR has been appointed by the Bankruptcy Court as part of the proceedings leading to the issuance of the Asbestos Channeling Injunction and the Asbestos Insurance Entity Injunction for the purpose of, among other things, protecting the rights of Entities that might subsequently assert Demands of the kind that are addressed in the Asbestos Channeling Injunction and the Asbestos Insurance Entity Injunction and transferred to the Asbestos Trust;

(n)   In light of the benefits provided, or to be provided, to the Asbestos Trust by, or on behalf of, each Asbestos Protected Party, the Asbestos Channeling Injunction is fair and equitable with respect to the Entities that might subsequently assert Demands against any Asbestos Protected Party;

(o)   The Asbestos Channeling Injunction, the Asbestos Insurance Entity Injunction and the Asbestos PD/Successor Claims Injunction are to be implemented in connection with the Plan and the Plan Documents;

(p)   The Asbestos Channeling Injunction and the Asbestos PD/Successor Claims Injunction are essential to the Plan and the Debtors' reorganization efforts;

(q)   An identity of interests exists among the Debtors and the Asbestos Protected Parties such that an Asbestos PI Claim asserted against any of the Asbestos Protected Parties gives rise to a Claim against the Debtors, including by the operation of the law of indemnity and/or contribution;

(r)   The Sealed Air Payment to the Asbestos Trust, together with the other Asbestos Trust Assets to be transferred to the Asbestos Trust pursuant to the Plan, constitute both (i) substantial assets of the Plan and the reorganization, and (ii) a fair, reasonable, and equitable settlement of all Asbestos PI Claims asserted against any Asbestos Protected Party;

(s)   As of the Effective Date, the Reorganized Debtors have the ability to pay and satisfy in the ordinary course of business their respective obligations and liabilities, including all Fresenius Indemnified Taxes and all obligations set forth in the Fresenius Settlement Agreement and the Sealed Air Settlement Agreement;

(t)   Upon the transfer of the Sealed Air Common Stock to the Asbestos Trust, the Trustees shall represent and warrant and agree (on behalf of the Asbestos Trust) with Sealed Air, that the Asbestos Trust is acquiring the Sealed Air Common Stock for its own account for investment and not with

a view toward distribution in a manner which would violate the Securities Act and the Asbestos Trust and its transferees will comply with all filing and other reporting obligations under all applicable laws which shall be applicable to such Asbestos Trust with respect to the Sealed Air Common Stock.

(u)     Upon confirmation, each of the Sealed Air Settlement Agreement, the Sealed Air Settlement Order, the Fresenius Settlement Agreement and the Fresenius Settlement Order shall be in full force and effect.

(v)     The Bankruptcy Court shall have found that the Estimated PI Amount is not less than Four billion dollars ($4,000,000,000).

(w)     The Court has entered the Confirmation Order granting the Asbestos Channeling Injunction, the Asbestos Insurance Entity Injunction and the Asbestos PD/Successor Claims Injunction to take effect as of the Effective Date.

(x)     Subject to Section 7.6.1(y) below, the duties and obligations of the Asbestos Insurance Entities under the Asbestos Insurance Policies and Asbestos Insurance Settlement Agreements are not diminished, reduced or eliminated by (1) the discharge of the obligations and liabilities of the Debtors and the Reorganized Debtors for and in respect of all Asbestos PI Claims or (2) the assumption by the Asbestos Trust of responsibility and liability for all Asbestos PI Claims.

(y)     As of the Effective Date, and provided that the Asbestos PI Insurance Rights are transferred to the Asbestos Trust pursuant to Section 3.1.6(b)(ii)(B), the Asbestos Insurance Agreement shall be a valid and binding obligation of each the parties thereto, shall be in full force and effect and shall be enforceable in accordance with its terms, in each case notwithstanding any anti-assignment provision in or incorporated into any Asbestos Insurance Policy and applicable state law.

(z)     All Asbestos PI Claims shall be channeled to the Asbestos Trust.

(aa)    All Asbestos PI Claims shall be resolved by the Asbestos Trust.

    This Plan shall not be confirmed and the Confirmation Order shall not be entered until and unless each of the foregoing conditions to confirmation is either satisfied or waived by each of the Plan Proponents, and by Sealed Air and Fresenius with respect to the conditions set forth in Section 7.6.1(r) and 7.6.1(s) above, and by Sealed Air with respect to the condition set forth in Section 7.6.1(t) above.

### 7.6.2   Orders of this Court

(a)     The Confirmation Order shall be in form and substance acceptable to each of the Plan Proponents.

(b)     The Confirmation Order shall be consistent with the requirements of the Sealed Air Settlement Agreement, the Sealed Air Settlement Order, the Fresenius Settlement Agreement and the Fresenius Settlement Order.

(c)     The Bankruptcy Court shall have entered order in form and substance acceptable to the Plan Proponents setting forth its finding that the Estimated PI Amount is at least Four Billion Dollars ($4,000,000,000).

This Plan shall not be confirmed and the Confirmation Order shall not be entered until and unless each of the foregoing conditions to confirmation is either satisfied or waived by each of the Plan Proponents, and by Sealed Air and Fresenius with respect to the condition set forth in Section 7.6.2(b) above.

## 7.7    CONDITIONS TO OCCURRENCE OF THE EFFECTIVE DATE

The "effective date of the plan," as used in Bankruptcy Code § 1129, shall not occur, and this Plan shall be of no force and effect, until the Effective Date.  The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent:

(a)     The Confirmation Order shall have been issued and shall have become a Final Order; *provided* that, at the option of the Plan Proponents, acting jointly, the Effective Date may occur at a point in time when the Confirmation Order is not a Final Order unless the effectiveness of the Confirmation Order has been stayed or vacated, in which case, at the option of the Plan Proponents, acting jointly, the Effective Date may be the first Business Day immediately following the expiration or other termination of any stay of effectiveness of the Confirmation Order.

(b)     The District Court shall have entered or affirmed an order(s) entering the Asbestos Channeling Injunction and such order(s) shall have become Final Orders.

(c)     The District Court shall have entered or affirmed an order(s) approving this Plan and all the Plan Documents and such order(s) shall have become Final Orders.

(d)     The Asbestos Channeling Injunction, the Asbestos Insurance Entity Injunction and the Asbestos PD/Successor Claims Injunction shall be in full force and effect.

(e)     The Plan Documents, including the Sealed Air Settlement Agreement, necessary or appropriate to implement this Plan shall have been (i) executed, in a form acceptable to each of the Plan Proponents, (ii)

delivered by Sealed Air and, where applicable, (iii) filed with the appropriate governmental or supervisory authorities.

(f)     The Certificate of Incorporation or Articles of Incorporation, as applicable, of each of the Debtors, as amended in accordance with this Plan, shall be in full force and effect.

(g)     The Exit Financing, in an amount and on such terms satisfactory to each of the Plan Proponents, shall be in full force and effect and available immediately upon the occurrence of the Effective Date and after all necessary parties have executed the documentation relating thereto.

(h)     The Debtors or the Plan Proponents shall have obtained either (i) a private letter ruling establishing that the Asbestos Trust is a "qualified settlement fund" pursuant to Section 468B of the IRC, or (ii) an opinion of counsel regarding the tax classification of the Asbestos Trust satisfactory to each of the Plan Proponents.

(i)     Each of the Sealed Air Settlement Agreement, the Sealed Air Settlement Order, the Fresenius Settlement Agreement and the Fresenius Settlement Order shall be in full force and effect.

(j)     The Court shall have found that the Debtors' aggregate liability for all existing and future Asbestos PI Claims and Demands shall be at least Four Billion Dollars ($4,000,000,000) pursuant to an order that has become a Final Order.

The Effective Date shall not occur unless and until each of the foregoing conditions is either satisfied or waived by each of the Plan Proponents. Notice of the occurrence of the Effective Date reflecting that the foregoing conditions have been satisfied or waived shall: (i) be signed by each of the Plan Proponents and each other Entity whose consent is required pursuant to this Plan, (ii) state the date of the Effective Date; and (iii) be Filed with the Bankruptcy Court by counsel to a Plan Proponent.  No waiver shall be effective unless it complies with the requirements of this provision.

## 7.8    MANAGEMENT OF THE REORGANIZED DEBTORS

(a)     After the Confirmation Date and prior to the Effective Date, the Debtors will cooperate in full with the Plan Proponents, as and when requested by the Plan Proponents, to insure a smooth transition from management of the Debtors to management of the Reorganized Debtors and the continued operation of the Debtors in the ordinary course, consistent with past practices or the reasonable requests of the Plan Proponents.

(b)     On and after the Effective Date, the business and affairs of the Reorganized Debtors will be managed by their respective Boards of Directors or equivalent thereof.  Upon the Effective Date, the Board of Directors of the Reorganized Parent shall be composed of at least five (5) directors.  The Plan Proponents, acting jointly, shall specify in Exhibit 7.8 in the Exhibit

Book the directors of the Reorganized Parent and the other Debtors that will take office on the Effective Date.

## 7.9    CORPORATE ACTION

On the Effective Date, the approval and effectiveness of matters provided under this Plan involving the corporate structure of the Reorganized Debtors or corporate action by the Reorganized Debtors shall be deemed to have occurred and to have been authorized, and shall be in effect from and after the Effective Date without requiring further action under applicable law, regulation, order, or rule, including any action by the stockholders or directors of the Debtors, the Debtors in Possession, or the Reorganized Debtors.

## 7.10    EFFECTUATING DOCUMENTS AND FURTHER TRANSACTIONS

Each of the officers of the Debtors and the Reorganized Debtors is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Debtors and the Reorganized Debtors, to effectuate and further evidence the terms and conditions of this Plan, the transactions contemplated by this Plan, and any securities issued pursuant to this Plan.

## 7.11    ALLOCATION OF PLAN DISTRIBUTIONS BETWEEN PRINCIPAL AND INTEREST

To the extent that any Allowed Plan Claim entitled to a Distribution under this Plan consists of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated first to the principal amount of the Plan Claim and then, to the extent the Distribution exceeds the principal amount of the Plan Claim, to the accrued but unpaid interest.

## 7.12    NO SUCCESSOR LIABILITY

Except as otherwise expressly provided in this Plan, the Debtors, the Reorganized Debtors, the Asbestos PI Committee, the Asbestos PD Committee, the FCR, and the Asbestos Protected Parties will not, pursuant to this Plan or otherwise, assume, agree to perform, pay, or indemnify creditors or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any of the Debtors' past or present Affiliates, as such liabilities or obligations may relate to or arise out of the operations of or assets of the Debtors or any of the Debtors' past or present Affiliates or any of their respective successors, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Confirmation Date.  Neither the Asbestos Protected Parties, the Reorganized Debtors, nor the Asbestos Trust is, or shall be, a successor to the Debtors or any of the Debtors' past or present Affiliates by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character, except that the Reorganized Debtors and the Asbestos Trust shall assume the obligations specified in this Plan and the Confirmation Order.

Except as otherwise expressly provided in this Plan, effective automatically on the Effective Date, the Asbestos Protected Parties and their respective Representatives shall be unconditionally, irrevocably and fully released from any and all Asbestos PI Claims, other claims and causes of action, including claims and causes of action arising under Chapter 5 of the Bankruptcy Code or similar claims or causes of action arising under state or any other law, including, if applicable, claims in the nature of fraudulent transfer, successor liability, corporate veil piercing, or alter ego-type claims, as a consequence of transactions, events, or circumstances involving or affecting the Debtors (or any of their predecessors) or any of their respective businesses or operations that occurred or existed prior to the Effective Date.

## 7.13    DEEMED CONSOLIDATION OF THE DEBTORS FOR PLAN PURPOSES ONLY

Subject to the occurrence of the Effective Date, the Debtors shall be deemed consolidated under this Plan for Plan purposes only. Each and every Claim Filed or to be Filed against any of the Debtors shall be deemed Filed against the deemed consolidated Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Debtors.

Such deemed consolidation, however, shall not (other than for purposes related to funding Distributions under this Plan and as set forth above in this Section 7.13) affect: (i) the legal and organizational structure of the Debtors; (ii) any Encumbrances that are required to be maintained under this Plan (A) in connection with executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed, (B) pursuant to this Plan, or (C) in connection with any Exit Financing; (iii) the Sealed Air Settlement Agreement; and (iv) the Fresenius Settlement Agreement.

Notwithstanding anything contained in this Plan to the contrary, the deemed consolidation of the Debtors shall not have any effect on any of the Plan Claims being reinstated and left unimpaired under this Plan, and the legal, equitable, and contractual rights to which the Holders of any such Plan Claims are entitled shall be left unaltered by this Plan.

## 7.14    INSURANCE NEUTRALITY PROVISIONS.

Notwithstanding anything to the contrary in the Confirmation Order, the Plan or any of the Plan Documents:

        (a)    nothing in the Confirmation Order, the Plan or any of the Plan Documents (including any other provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of impairing any Asbestos Insurance Entity's legal, equitable or contractual rights, if any, in any respect;

        (b)    the rights of Asbestos Insurance Entities shall be determined under the Asbestos Insurance Policies or Asbestos Insurance Settlement Agreements, as applicable; and

        (c)    nothing in the Plan or the Plan Documents shall affect or limit, or be construed as affecting or limiting, the protection afforded to any Resolved Asbestos Insurance

Company or any Settled Asbestos Insurance Company by the Asbestos Channeling Injunction, the Asbestos PD/Successor Claims Injunction, and/or the Asbestos Insurance Entity Injunction;

*provided however* that (i) notwithstanding the foregoing, this Section 7.14 is not intended nor shall it be construed to preclude otherwise applicable principles of res judicata or collateral estoppel from being applied against any Asbestos Insurance Entity with respect to any issue that is actually litigated by such Asbestos Insurance Entity as part of their objections, if any, to Confirmation of the Plan or as part of any contested matter or adversary proceeding filed by such Asbestos Insurance Entity in conjunction with or related to Confirmation of the Plan (and Plan objections that are withdrawn prior to the conclusion of the Confirmation Hearing shall be deemed not to have been actually litigated) and (ii) notwithstanding the provisions of this Section 7.14, Asbestos Insurance Entities shall be bound by the Court's findings and conclusions with respect to whether, under the Bankruptcy Code, the assignment or transfer of rights under the Asbestos Insurance Agreement is valid and enforceable against each Asbestos Insurance Entity notwithstanding any anti-assignment provision in or incorporated into any Asbestos Insurance Policy and applicable state law, and therefore Asbestos Insurance Entities shall be entitled to litigate that issue in connection with Confirmation.

## ARTICLE 8
## INJUNCTIONS, RELEASES & DISCHARGE

## 8.1    DISCHARGE

### 8.1.1    Discharge of the Debtors and Related Discharge Injunction

The rights afforded in this Plan and the treatment of all Claims, Plan Claims, Demands and Equity Interests herein shall be in exchange for and shall discharge all Claims, Plan Claims, Demands and Equity Interests of any nature whatsoever, including any interest accrued thereon from and after the Petition Date, against the Debtors and the Debtors in Possession, or their assets, properties, or interests in property. Except as otherwise provided herein, on the Effective Date, all Claims, Plan Claims, Demands against, and Equity Interests in the Debtors and the Debtors in Possession shall be discharged. The Reorganized Debtors shall not be responsible for any obligations of the Debtors or the Debtors in Possession except those expressly assumed by the Reorganized Debtors pursuant to this Plan. All Entities shall be precluded and forever barred from asserting against the Debtors and the Reorganized Debtors, or their assets, properties, or interests in property any other or further Claims, Plan Claims or Demands based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date, except as expressly provided in this Plan.

With respect to any debts discharged by operation of law under Bankruptcy Code §§ 524(a) and 1141, the discharge of the Debtors operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the Debtor, whether or not the discharge

of such debt is waived; *provided, however*, that the obligations of the Reorganized Debtors under this Plan are not so discharged.

### 8.1.2    Discharge of Liabilities to Holders of Asbestos PI Claims

The transfer to, vesting in, and assumption by the Asbestos Trust of the Asbestos Trust Assets as contemplated by this Plan, among other things, shall discharge the Debtors, the Reorganized Debtors and their Representatives for and in respect of all Asbestos PI Claims, subject to the reservations listed in Section 8.3 herein.  On the Effective Date, the Asbestos Trust shall assume the liabilities of the Debtors with respect to all Asbestos PI Claims and shall pay Asbestos PI Claims entitled to payment in accordance with the Asbestos Trust Agreement and the TDP.

### 8.1.3    Disallowed Claims and Disallowed Equity Interests

On and after the Effective Date, the Debtors, the Reorganized Debtors and their Representatives shall be fully and finally discharged of any liability or obligation on a Disallowed Claim or Disallowed Equity Interest, and any order creating a Disallowed Claim that is not a Final Order as of the Effective Date solely because of an Entity's right to move for reconsideration of such order pursuant to Bankruptcy Code § 502 or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date.    The Confirmation Order, except as otherwise provided herein, or unless the Court orders otherwise, shall constitute an order disallowing all Plan Claims (other than Asbestos PI Claims) to the extent such Plan Claims are not allowable under any provision of Bankruptcy Code § 502, including time-barred Claims, and Claims for unmatured interest.

### 8.1.4    Non-Dischargeable ERISA Liability

The Parent is a controlled group member within the meaning of 29 U.S.C. § 1301(a)(14) and may also be a contributing sponsor of one or more ongoing, defined benefit pension plans to which Title IV of the ERISA applies (the "**Pension Plans**").  Nothing contained in this Plan, Confirmation Order, the Bankruptcy Code (including Bankruptcy Code § 1141), or any other document Filed in the Chapter 11 Cases shall be construed to discharge, release or relieve the Debtors, or any other party, in any capacity, from any liability or responsibility to the Pension Benefit Guaranty Corporation ("**PBGC**") with respect to the Pension Plans under any law, governmental policy, or regulatory provision.  The PBGC shall not be enjoined or precluded from enforcing such liability or responsibility, as a result of any of the provisions of this Plan (including those provisions providing for exculpation, satisfaction, release and discharge of Claims), the Confirmation Order, the Bankruptcy Code (including Bankruptcy Code § 1141), or any other document Filed in the Chapter 11 Cases.  Notwithstanding the foregoing, neither the PBGC nor any other Entity shall assert any liability or responsibility with respect to the Pension Plans under any law, governmental policy or regulatory provisions against, and such liability or responsibility shall not attach to, the Asbestos Trust or any of the Asbestos Trust Assets.

## 8.2    THE ASBESTOS CHANNELING INJUNCTION

In order to supplement, where necessary, the injunctive effect of the discharge provided by Bankruptcy Code §§ 1141, 524(a) and 105 and as described in this Article 8, and pursuant to the exercise of the equitable jurisdiction and power of the Court under Bankruptcy Code § 524(g), the Confirmation Order shall provide for issuance of the Asbestos Channeling Injunction to take effect as of the Effective Date.

**8.2.1**   Injunction

On and after the Effective Date, the sole recourse of the Holder of an Asbestos PI Claim or a Successor Claim arising out of or based on any Asbestos PI Claim on account thereof shall be to the Asbestos Trust pursuant to the provisions of the Asbestos Channeling Injunction and the TDP and such Holder shall have no right whatsoever at any time to assert its Asbestos PI Claim or Successor Claim arising out of or based on any Asbestos PI Claim against the Debtors, Reorganized Debtors, any other Asbestos Protected Party, or any property or interest (including any Distributions made pursuant to this Plan) in property of the Debtors, the Reorganized Debtors, or any other Asbestos Protected Party.  Without limiting the foregoing, from and after the Effective Date, the Asbestos Channeling Injunction shall apply to all present and future Holders of Asbestos PI Claims or Successor Claims arising out of or based on any Asbestos PI Claim, and all such Holders permanently shall be stayed, restrained, and enjoined from taking any of the following actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos PI Claims or Successor Claims arising out of or based on any Asbestos PI Claims other than from the Asbestos Trust in accordance with the Asbestos Channeling Injunction and pursuant to the Asbestos Trust Agreement and the TDP, including:

(a)   commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(b)   enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(c)   creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(d)   setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party; and

(e)     proceeding in any other manner with regard to any matter that is subject to resolution pursuant to the Asbestos Trust, except in conformity and compliance with the Asbestos Trust Agreement and the TDP.

**8.2.2**   Reservations from Asbestos Channeling Injunction

Notwithstanding anything to the contrary above, the Asbestos Channeling Injunction shall not enjoin:

(a)     the rights of Entities to the treatment accorded them under this Plan, including the rights of Entities with Asbestos PI Claims to assert such Asbestos PI Claims in accordance with the TDP;

(b)     the rights of Entities to assert any claim, debt, obligation or liability for payment of expenses of the Asbestos Trust solely against the Asbestos Trust or the Asbestos Trust Assets;

(c)     to the extent permitted by the Asbestos Insurance Entity Injunction, the rights of any of the Asbestos Trust, the Reorganized Debtors or the Non-Debtor Affiliates, as the case may be, to prosecute any cause of action or to assert any Claim, Demand, debt, obligation, or liability for payment against any Entity, including any Asbestos Insurance Entity, based on or arising from the Asbestos Insurance Rights; and

(d)     to the extent permitted by the Asbestos Insurance Entity Injunction, the rights of any of the Asbestos Trust, the Reorganized Debtors or the Non-Debtor Affiliates, as the case may be, to receive any settlement, award, payment of cash or other property of any kind whatsoever from any Entity, including any Asbestos Insurance Entity in satisfaction of any Asbestos Insurance Rights.

Except as otherwise expressly provided in this Plan, the Sealed Air Settlement Agreement, or the Fresenius Settlement Agreement, nothing contained in this Plan shall constitute or be deemed a waiver of any claim, right, or cause of action that the Debtors, the Reorganized Debtors, or the Asbestos Trust may have against any Entity in connection with or arising out of or based on any Asbestos PI Claim.

**8.3     ASBESTOS INSURANCE ENTITY INJUNCTION(S)**

Pursuant to the exercise of the equitable jurisdiction and power of the Court under Bankruptcy Code § 105(a), the Confirmation Order shall provide for issuance of the Asbestos Insurance Entity Injunction(s) to take effect as of the Effective Date.

**8.3.1   Injunctions**

If the Asbestos PI Insurance Rights are transferred to the Asbestos Trust pursuant to Section 3.1.6(b)(ii)(B), then the Confirmation Order shall provide for the following injunctions:

### 8.3.1.1    Injunction for the Benefit of the Asbestos Trust

(a)     All Entities that have held or asserted, that hold or assert, or that may in the future hold or assert, any claim, demand, or cause of action against any Asbestos Insurance Entity, based upon, arising out of, or in any way connected with any Asbestos PI Claim or Demand or any Asbestos PI Insurance Rights, whenever and wherever arisen or asserted (including all claims in the nature of or sounding in tort, or under contract, warranty, or any other theory of law, equity, or admiralty) shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such claim, demand, or cause of action, including:

(i)     commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding in any forum) against or affecting any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity;

(ii)     enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity;

(iii)     creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity;

(iv)     setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity; and

(v)     proceeding in any other manner with regard to any matter that is subject to resolution pursuant to the Asbestos Trust, except in conformity and compliance with the Asbestos Trust Agreement, the TDP, and the appropriate Asbestos Insurance Settlement Agreements.

(b)     The Asbestos Trust shall have the sole and exclusive authority at any time to terminate, reduce or limit the scope of, the Asbestos Insurance Entity Injunction issued pursuant to Section 8.3.1.1 as it may apply to any Asbestos Insurance Entity upon express written notice to that Asbestos Insurance Entity; and

(c)     The Asbestos Insurance Entity Injunction is not issued for the benefit of any Asbestos Insurance Entity, and no Asbestos Insurance Entity is or may become a third-party beneficiary of the Asbestos Insurance Entity Injunction.

### 8.3.1.2     Reservations from the Injunction for the Benefit of the Asbestos Trust

Notwithstanding anything to the contrary above, the Asbestos Insurance Entity Injunction issued pursuant to Section 8.3.1.1 shall not enjoin:

(a)     the rights of any Entity to the treatment accorded it under this Plan;

(b)     the rights of the Asbestos Trust or, to the extent provided in the Asbestos Insurance Agreement, any of the Reorganized Debtors or the Non-Debtor Affiliates pursuant to the Asbestos Insurance Agreement, as the case may be, to prosecute any cause of action or to assert any claim, demand, debt, obligation, or liability for payment against any Entity, including any Asbestos Insurance Entity, based on or arising from the Asbestos PI Insurance Rights for the Asbestos Trust's benefit; and

(c)     the rights of the Asbestos Trust or, to the extent provided in the Asbestos Insurance Agreement, any of the Reorganized Debtors or the Non-Debtor Affiliates pursuant to the Asbestos Insurance Agreement, as the case may be, to receive any settlement, award, payment of Cash or other property of any kind whatsoever from any Entity, including any Asbestos Insurance Entity, in satisfaction of any Asbestos PI Insurance Rights that the Asbestos Trust or any of the Debtors, the Reorganized Debtors or the Non-Debtor Affiliates pursuant to the Asbestos Insurance Agreement, as the case may be, may have against any of the foregoing.

### 8.3.1.3     Injunction For the Benefit of the Reorganized Debtors

(a)     All Entities that have held or asserted, that hold or assert, or that may in the future hold or assert, any claim, demand, or cause of action against any Asbestos Insurance Entity, based upon, arising out of, or in any way connected with any Claim (other than an Asbestos PI Claim) or any Asbestos Insurance Rights (other than Asbestos PI Insurance Rights), whenever and wherever arisen or asserted (including all claims in the nature of or sounding in tort, or under contract, warranty, or any other theory of law, equity, or admiralty) shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such claim, demand, or cause of action, including:

(i)     commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding in any forum)

against or affecting any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity;

(ii)    enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity;

(iii)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity; and

(iv)    setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity.

(b)    The Reorganized Debtors shall have the sole and exclusive authority at any time to terminate, reduce or limit the scope of, the Asbestos Insurance Entity Injunction issued pursuant to Section 8.3.1.3 as it may apply to any Asbestos Insurance Entity upon express written notice to that Asbestos Insurance Entity; and

(c)    The Asbestos Insurance Entity Injunction is not issued for the benefit of any Asbestos Insurance Entity, and no Asbestos Insurance Entity is or may become a third-party beneficiary of the Asbestos Insurance Entity Injunction.

### 8.3.1.4    Reservations from the Injunction for the Benefit of the Reorganized Debtors

Notwithstanding anything to the contrary above, the Asbestos Insurance Entity Injunction issued pursuant to Section 8.3.1.3 shall not enjoin:

(a)    the rights of any Entity to the treatment accorded it under this Plan;

(b)    the rights of the Reorganized Debtors or the Non-Debtor Affiliates to prosecute any cause of action or to assert any claim, demand, debt, obligation, or liability for payment against any Entity, including any Asbestos Insurance Entity, based on or arising from the Asbestos Insurance Rights (other than the Asbestos PI Insurance Rights); and

(c)    the rights of any of the Reorganized Debtors or the Non-Debtor Affiliates to receive any settlement, award, payment of Cash or other property of any kind whatsoever from any Entity, including any Asbestos Insurance

Entity, in satisfaction of any Asbestos Insurance Rights (other than Asbestos PI Insurance Rights) may have against any of the foregoing.

### 8.3.2    Injunction

If the Asbestos PI Insurance Rights are not transferred to the Asbestos Trust pursuant to Section 3.1.6(b)(ii)(B), then the Confirmation Order shall provide for the following injunction:

#### 8.3.2.1    Injunction for the Benefit of the Reorganized Debtors

(a)    All Entities that have held or asserted, that hold or assert, or that may in the future hold or assert, any claim, demand, or cause of action against any Asbestos Insurance Entity, based upon, arising out of, or in any way connected with any Claim or any Asbestos Insurance Rights, whenever and wherever arisen or asserted (including all claims in the nature of or sounding in tort, or under contract, warranty, or any other theory of law, equity, or admiralty) shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such claim, demand, or cause of action, including:

(i)    commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding in any forum) against or affecting any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity;

(ii)    enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity;

(iii)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity; and

(iv)    setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Insurance Entity, or any property or interest in property of any Asbestos Insurance Entity.

(b)    The Reorganized Debtors shall have the sole and exclusive authority at any time to terminate, reduce or limit the scope of, the Asbestos Insurance Entity Injunction issued pursuant to Section 8.3.2.1 as it may apply to any Asbestos Insurance Entity upon express written notice to that Asbestos Insurance Entity; and

(c)     The Asbestos Insurance Entity Injunction is not issued for the benefit of any Asbestos Insurance Entity, and no Asbestos Insurance Entity is or may become a third-party beneficiary of the Asbestos Insurance Entity Injunction.

### 8.3.2.2    Reservations from the Injunction for the Benefit of the Reorganized Debtors

Notwithstanding anything to the contrary above, the Asbestos Insurance Entity Injunction issued pursuant to Section 8.3.2.1 shall not enjoin:

(a)     the rights of any Entity to the treatment accorded it under this Plan;

(b)     the rights of the Reorganized Debtors or the Non-Debtor Affiliates to prosecute any cause of action or to assert any claim, demand, debt, obligation, or liability for payment against any Entity, including any Asbestos Insurance Entity, based on or arising from the Asbestos Insurance Rights; and

(c)     the rights of any of the Reorganized Debtors or the Non-Debtor Affiliates to receive any settlement, award, payment of Cash or other property of any kind whatsoever from any Entity, including any Asbestos Insurance Entity, in satisfaction of any Asbestos Insurance Rights may have against any of the foregoing.

## 8.4    ASBESTOS PD/SUCCESSOR CLAIMS INJUNCTION.

Pursuant to the exercise of the equitable jurisdiction and power of the Court under Bankruptcy Code § 105(a), the Confirmation Order shall provide for issuance of the Asbestos PD/Successor Claims Injunction to take effect as of the Effective Date.

### 8.4.1    Injunction

(a)     All Entities that have held or asserted, that hold or assert, or that may in the future hold or assert any Asbestos PD Claim or Successor Claim (other than Successor Claims arising out of or based on any Asbestos PI Claim) against any Asbestos Protected Party shall be enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery on account of such Asbestos PD Claim or Successor Claim, including:

(i)     commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(ii)     enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Entity released under any provision of this Plan, or any property or interest in property of any such released Entity;

(iii)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Entity released under any provision of this Plan, or any property or interest in property of any such released Entity; and

(iv)     setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Entity released under any provision of this Plan, or any property or interest in property of any such released Entity.

### 8.4.2    Reservations from the Asbestos PD/Successor Claims Injunction

Notwithstanding anything to the contrary above, the Asbestos PD/Successor Claims Injunction shall not enjoin:

(a)     the rights of any Entity to the treatment accorded it under this Plan;

(b)     to the extent permitted by the Asbestos Insurance Entity Injunction(s), the rights of any of the Reorganized Debtors or the Non-Debtor Affiliates, as the case may be, to prosecute any cause of action or to assert any Claim, Demand, debt, obligation, or liability for payment against any Entity, including any Asbestos Insurance Entity, based on or arising from the Asbestos Insurance Rights for the Debtors', Reorganized Debtors' or the Non-Debtor Affiliates' benefit; and

(c)     to the extent permitted by the Asbestos Insurance Entity Injunction(s), the rights of any of the Reorganized Debtors or the Non-Debtor Affiliates, as the case may be, to receive any settlement, award, payment of cash or other property of any kind whatsoever from any Entity, including any Asbestos Insurance Entity in satisfaction of any Asbestos Insurance Rights that any of the Reorganized Debtors or the Non-Debtor Affiliates, as the case may be, may have against any of the foregoing.

## 8.5    INJUNCTIONS AND RELEASES RELATED TO THE SEALED AIR INDEMNIFIED PARTIES AND FRESENIUS INDEMNIFIED PARTIES

As required by the Sealed Air Settlement Agreement, the Sealed Air Settlement Order, the Fresenius Settlement Agreement, and the Fresenius Settlement Order, the injunctions and releases outlined in this Plan, including the Asbestos Channeling Injunction and the Asbestos PD/Successor Claims Injunction, and provided under Bankruptcy Code §§ 524(g) and 105(a), respectively, shall absolutely and unequivocally extend to and protect the Sealed Air Indemnified

Parties and the Fresenius Indemnified Parties.

## 8.6    TERM OF CERTAIN INJUNCTIONS AND AUTOMATIC STAY

### 8.6.1    Injunctions and/or Automatic Stays in Existence Immediately prior to Confirmation

All of the injunctions and/or automatic stays provided for in or in connection with the Chapter 11 Cases, whether pursuant to Bankruptcy Code §§ 105, 362, or any other provision of the Bankruptcy Code or other applicable law, in existence immediately prior to the Confirmation Date shall remain in full force and effect until the injunctions set forth in this Plan become effective, and thereafter if so provided by this Plan or the Confirmation Order.  In addition, on and after the Confirmation Date, the Reorganized Debtors or the Plan Proponents, acting jointly, may seek such further orders as they may deem necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

### 8.6.2    Injunctions Provided for in this Plan

Each of the injunctions provided for in this Plan shall become effective on the Effective Date and shall continue in effect at all times thereafter unless otherwise provided by this Plan. Notwithstanding anything to the contrary contained in this Plan, all actions in the nature of those to be enjoined by such injunctions shall be enjoined during the period between the Confirmation Date and the Effective Date.

## 8.7    ADDITIONAL RELEASES AND INDEMNIFICATION

### 8.7.1    Release of Sealed Air Indemnified Parties

Upon receipt of the Sealed Air Payment (i) the Debtors, the Asbestos PD Committee and the Asbestos PI Committee shall execute and deliver the Release (as defined in the  Sealed   Air Settlement Agreement); (ii) the Government Plaintiff (as defined in the Sealed Air Settlement Agreement) shall execute and deliver the Government Release (as defined in the   Sealed    Air Settlement Agreement); and (iii) the Asbestos PI Committee and the Asbestos PD Committee shall deliver the Fresenius Release (as defined in the Sealed Air Settlement Agreement), all as provided for in the Sealed Air Settlement Agreement.  In addition, each of the Non-Debtor Affiliates shall irrevocably release, acquit, and forever discharge the Sealed Air Indemnified Parties from any and all Asbestos Claims and any and all claims, on the basis of, arising from, or attributable to (in whole or in part, directly or indirectly) the Fresenius Transaction that have accrued or been asserted or that hereafter might accrue or be asserted against the Sealed Air Indemnified Parties, and that each Non-Debtor Affiliate shall not institute, participate in, maintain, maintain a right to or assert against the Sealed Air Indemnified Parties, either directly or indirectly, on its own behalf, derivatively, or on behalf of any other person any and all Asbestos Claims, and any and all claims on the basis of, arising from, or attributable to (in whole or in part, directly or indirectly) the Fresenius Transaction.

The Debtors and the Reorganized Debtors shall defend, indemnify, and hold harmless each of the Sealed Air Indemnified Parties as provided in, and to the extent set forth, in the Sealed Air Settlement Agreement.

### 8.7.2   Release of Fresenius Indemnified Parties

Upon receipt of the Fresenius Payment, the Debtors, the Reorganized Debtors, the Asbestos PI Committee and the Asbestos PD Committee will fully, finally and forever release, relinquish and discharge each and every Fresenius Indemnified Party from any and all Grace-Related Claims that the Debtors, the Reorganized Debtors, the Asbestos PI Committee or the Asbestos PD Committee have asserted or could have asserted in the Bankruptcy Court or any other forum against any of the Fresenius Indemnified Parties and the release that is attached as Appendix B to the Fresenius Settlement Agreement shall become effective.  Upon receipt of the Fresenius Payment, in addition to the more limited duties of indemnification by the Debtors to the Fresenius Indemnified Parties under Article III of the Fresenius Settlement Agreement, the Debtors and the Reorganized Debtors shall indemnify, defend and hold harmless the Fresenius Indemnified Parties as provided in and to the extent set forth in the Fresenius Settlement Agreement.

### 8.7.3   Settlement Agreement

The Confirmation Order shall constitute an order authorizing the assumption by each of the Debtors of the 1998 Tax Sharing Agreement.

### 8.7.4   Effect of the Fresenius Settlement Agreement, the Fresenius Settlement Order, and the Sealed Air Settlement Agreement.

Notwithstanding anything to the contrary in this Plan, any of the Plan Documents, or the Confirmation Order, nothing in this Plan, any of the Plan Documents or the Confirmation Order (including any other provisions that purports to be preemptory or supervening) shall in any way operate to, or have the effect of, impairing or limiting the legal, equitable or contractual rights or obligations of the Sealed Air Indemnified Parties, the Fresenius Indemnified Parties or the Debtors, the Reorganized Debtors, the other Estate Parties, and the Non-Debtor Affiliates, respectively, pursuant to the Sealed Air Settlement Agreement, the Sealed Air Settlement Order, the Fresenius Settlement Agreement or the Fresenius Settlement Order, as applicable, each of which is expressly made a part of this Plan and incorporated in this Plan by reference.

### 8.7.5   Release of Avoidance Actions.

Effective as of the Effective Date, the Debtors and the Reorganized Debtors fully, finally and forever release, relinquish and discharge each and every claim, cause of action, or right of the Debtors, the Reorganized Debtors or any of them, arising under the Bankruptcy Code, including any avoidance or recovery actions under sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or under any similar state statutes, which seek recovery of or with respect to any payment by, or transfer of any interest in property of, by any of the Debtors

or the Debtors in Possession on account of an Asbestos PI Claim or any claim that would have constituted an Asbestos PI Claim had such payment or transfer not been made.

**ARTICLE 9**
**EXECUTORY CONTRACTS, UNEXPIRED LEASES,**
**GUARANTIES, AND INDEMNITY AGREEMENT**

**9.1     ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Except for (i) executory contracts and unexpired leases that the Debtors or the Plan Proponents reject prior to the Effective Date or designate (on a list set forth in Exhibit 9.1 in the Exhibit Book) as being subject to rejection in connection with the Effective Date and (ii) agreements, to the extent executory, providing for indemnification of third parties for Asbestos Claims, all executory contracts and unexpired leases, including all Asbestos Insurance Policies to the extent executory and the 1998 Tax Sharing Agreement, not previously assumed by the Debtors pursuant to Bankruptcy Code § 365 shall be deemed to have been assumed by the Reorganized Debtors on the Effective Date, and this Plan shall constitute a motion to assume such executory contracts and unexpired leases as of the Effective Date.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of such assumptions pursuant to Bankruptcy Code § 365(a) and a finding by the  Court  that  each such assumption is in the best interests of the Debtors, their estates, and all parties in interest in the Chapter 11 Cases.

The Debtors and the Plan Proponents shall have the right until thirty (30) days prior to the Confirmation Date to modify the list of rejected contracts included in Exhibit 9.1 in the Exhibit Book to add executory contracts or leases (but not the 1998 Tax Sharing Agreement) or remove executory contracts or leases, *provided* that the Debtors shall file a notice with the Bankruptcy Court and serve each affected party with such notice.  Notwithstanding the foregoing, such affected parties shall not be entitled to any Administrative Expense Claim for any executory contracts or leases added to the list of rejected contracts and will only be entitled to a Claim for rejection damages.

Pursuant to the terms of the March 2003 Bar Date Order and Bankruptcy Rule 3002(c)(4), and except as otherwise ordered by the Bankruptcy Court, a proof of claim for each Claim arising from the rejection of an executory contract or unexpired lease pursuant to this Plan or otherwise shall be Filed with the Bankruptcy Court not later than twenty (20) days after the date of service of notice of rejection as described in the paragraph immediately above.  Any Claims not Filed within such applicable time period shall be forever barred from assertion.  All Allowed Claims for damages arising from the rejection of an executory contract or unexpired lease shall be included in Class 9 and shall be treated in accordance with Article 3 herein.

With respect to each executory contract or unexpired lease assumed by the Reorganized Debtors, unless otherwise determined by the Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, any defaults of the Debtors with respect to such assumed executory contracts or leases existing as of the Effective Date shall be cured in the ordinary course of the Reorganized Debtors' business promptly after any such default becomes

known to the Reorganized Debtors and, if the cure amount is disputed, such cure amount shall be established pursuant to applicable law, and the assumed executory contracts or leases shall be binding upon and enforceable upon the parties thereto, subject to any rights and defenses existing thereunder. Subject to the occurrence of the Effective Date, upon payment of such cure amount, all defaults of the Debtors existing as of the Confirmation Date with respect to such executory contract or unexpired lease shall be deemed cured.

To the extent executory, all agreements providing for indemnification of third parties for Asbestos Claims shall be deemed rejected by operation of entry of the Confirmation Order unless expressly identified and assumed pursuant to an order of the Bankruptcy Court.

Executory contracts and unexpired leases previously assumed by the Debtors during the case pursuant to Bankruptcy Code § 365 shall be governed by and subject to the provisions of the order of the Court authorizing the assumption thereof.

## 9.2   LETTERS OF CREDIT, SURETY BONDS, GUARANTIES, AND CERTAIN INDEMNITY AGREEMENTS

Unless otherwise designated by the Plan Proponents, acting jointly, in Exhibit 9.2 in the Exhibit Book, agreed to in writing by the affected parties, or modified by order of the Court, the Debtors' obligations under letters of credit, surety bonds, guaranties (which for purposes of this Section 9.2 include contingent liabilities arising in connection with assigned executory contracts and unexpired leases), or written indemnity agreements with respect to letters of credit, surety bonds or guaranties existing as of the Effective Date shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed under this Plan. The Debtors' obligations under such letters of credit, surety bonds, guaranties, and indemnity agreements shall be deemed assumed pursuant to Bankruptcy Code § 365(a), survive entry of the Confirmation Order and occurrence of the Effective Date, remain unaffected thereby (except as provided in this Section 9.2), and not be discharged in accordance with Bankruptcy Code § 1141.

Each of the Debtors and the Plan Proponents have the right until thirty (30) days prior to the Confirmation Date to modify the list included in Exhibit 9.2 in the Exhibit Book to add or remove letters of credit, surety bonds, guaranties, or indemnity agreements with respect to letters of credit, surety bonds or guaranties existing as of the Effective Date, *provided* that the Debtors or the Plan Proponents, as the case may be, shall file a notice with the Bankruptcy Court and serve each affected party with such notice.

Pursuant to the terms of the March 2003 Bar Date Order and Bankruptcy Rule 3002(c)(4), and except as otherwise ordered by the Bankruptcy Court, a proof of claim for each Claim arising from the rejection of a: (i) letter of credit, (ii) surety bond, (iii) guaranty, or (iv) written indemnity agreement with respect to a letter of credit, surety bond or guaranty existing as of the Effective Date shall be Filed with the Bankruptcy Court not later than twenty (20) days after the date of service of notice of rejection as described in the paragraph immediately above. Any Claims not Filed within such applicable time period shall be forever barred from assertion. All Allowed Claims for damages arising from the rejection of a letter of credit, surety bond, guaranty, or written indemnity agreement with respect to a letter of credit, surety bond or

guaranty existing as of the Effective Date shall be included in Class 9 and shall be treated in accordance with Article 3 herein.

The Reorganized Debtors shall have the right to cure any defaults existing as of the Effective Date under any such letters of credit, surety bonds, guaranties, or written indemnity agreements with respect to letters of credit, surety bonds, or guaranties existing as of the Effective Date promptly after any such default becomes known to the Debtors or Reorganized Debtors and, if disputed, established pursuant to applicable law. All letters of credit, surety bonds, guaranties, or written indemnity agreements with respect to letters of credit, surety bonds or guaranties existing as of the Effective Date shall be deemed reinstated on the Effective Date notwithstanding any default therein by the Debtors, any delay in the cure thereof by the Debtors, or the Filing or existence of the Chapter 11 Cases, or any action taken in connection therewith, and shall be binding upon, and enforceable against, all parties thereto, subject to any rights and defenses existing thereunder. All undrawn or partially drawn letters of credit, including letters of credit outstanding under the Debtors' pre-petition credit facilities, will be replaced as soon as practicable with new or replacement letters of credit under a new facility.

Nothing in Article 9, however, shall (i) constitute a reinstatement, continuation or assumption of any warranty provision, guaranty or any other contractual or other obligation, Demand or Plan Claim by the Reorganized Debtors to the extent that the Plan Claim, Demand or obligation constitutes an Asbestos PI Claim, or (ii) limit, restrict or otherwise impair the releases afforded to the Sealed Air Indemnified Parties and the Fresenius Indemnified Parties that are granted elsewhere in this Plan or Plan Documents.

## 9.3    COMPENSATION AND BENEFIT PROGRAM

Unless otherwise agreed to by the affected parties, or modified by order of the Court, all of the Debtors' obligations under employment and severance contracts and policies, and all compensation and benefit plans, policies, and programs shall be treated as though they are executory contracts that are deemed assumed under this Plan (other than any of the foregoing related to Equity Interests in the Parent which are subject to the treatment provided elsewhere in this Plan).

**ARTICLE 10**
**RETENTION OF JURISDICTION**

Pursuant to Bankruptcy Code §§ 105(a) and 1142, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (i) arising under the Bankruptcy Code, (ii) arising in or related to the Chapter 11 Cases or this Plan, or (iii) that relates to the following, provided that the District Court shall retain jurisdiction for such matters to which the automatic reference to the Bankruptcy Court has been withdrawn:

## 10.1    PLAN DOCUMENTS

To interpret, enforce, and administer the terms of the Plan Documents and all annexes and exhibits thereto;

## 10.2    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

To hear and determine any and all motions or applications for the assumption and/or assignment or rejection of (i) executory contracts, (ii) unexpired leases, (iii) letters of credit, (iv) surety bonds, (v) guaranties (which for purposes of this Section 10.2 include contingent liabilities arising in connection with assigned executory contracts and unexpired leases), or (vi) written indemnity agreements with respect to letters of credit, surety bonds or guaranties existing as of the Effective Date to which the Debtors are parties or with respect to which the Debtors may be liable that are pending on the Confirmation Date and to review and determine all Claims resulting from the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date.

## 10.3    DISPUTED CLAIMS ALLOWANCE/DISALLOWANCE

To hear and determine any objections to: (i) the allowance of Plan Claims (other than Asbestos PI Claims), including any objections to the classification of any Claim; (ii) to allow or disallow any Disputed Claim in whole or in part; and (iii) to allow or disallow any disputed Asbestos PD Claim;

## 10.4    ENFORCEMENT/MODIFICATION OF THIS PLAN

(a)    To issue such orders in aid of execution of this Plan to the extent authorized or contemplated by Bankruptcy Code § 1142;

(b)    To consider and approve any modifications of this Plan or Plan Documents, remedy any defect or omission, or reconcile any inconsistency in any order of the Court, including the Confirmation Order;

(c)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan Documents or their interpretation, implementation, enforcement, or consummation;

(d)    To hear and determine all objections to the termination of the Asbestos Trust;

(e)    To determine such other matters that may be set forth in, or that may arise in connection with, this Plan, the Confirmation Order, the Asbestos Channeling Injunction, the Asbestos Insurance Entity Injunction, the Asbestos PD/Successor Claims Injunction, or the Asbestos Trust Agreement;

(f)    To hear and determine any proceeding that involves the validity, application, construction, enforceability, or modification of the Asbestos Channeling Injunction, the Asbestos Insurance Entity Injunction, or the Asbestos PD/Successor Claims Injunction;

(g)     To enter an order or final decree closing the Chapter 11 Cases;

(h)     To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of all orders entered by the Court in the Chapter 11 Cases;

(i)     To enter such orders as are necessary to implement and enforce the injunctions described herein; and

(j)     To enter orders authorizing immaterial modifications to this Plan which are necessary to comply with Section 468B of the IRC.

## 10.5    COMPENSATION OF PROFESSIONALS

To hear and determine all applications for allowance of compensation and reimbursement of expenses of Professionals under Bankruptcy Code §§ 327, 328, 329, 330, 331 and 363 and any other fees and expenses authorized to be paid or reimbursed under this Plan;

## 10.6    SETTLEMENTS

To the extent that Court approval is required, to consider and act on the compromise and settlement of any Plan Claim or cause of action by or against the Debtors' or Reorganized Debtors' estates or the Asbestos Trust;

## 10.7    TAXES

To hear and determine matters concerning state, local, and federal taxes (including the amount of net operating loss carryforwards), fines, penalties, or additions to taxes for which the Debtors or Debtors in Possession may be liable, directly or indirectly, in accordance with Bankruptcy Code §§ 346, 505, and 1146;

## 10.8    SPECIFIC PURPOSES

To hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order; and

## 10.9    INSURANCE MATTERS

To hear and determine matters concerning the Asbestos Insurance Policies; *provided* that the Court shall have nonexclusive jurisdiction over such matters.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

## 11.1    AUTHORITY OF THE DEBTORS

On the Confirmation Date, the Debtors shall be directed and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to (i) implement effectively the provisions of this Plan and the creation of the Asbestos Trust and to cooperate with the Plan Proponents as provided herein and with respect to matters related to the Plan generally.

## 11.2    PAYMENT OF STATUTORY FEES

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Court at the hearing on confirmation of this Plan, shall be paid by the Debtors on or before the Effective Date.

## 11.3    RETAINED CAUSES OF ACTION

### 11.3.1  Maintenance of Causes of Action

Nothing in this Section 11.3 of this Plan shall be deemed to be a transfer by the Debtors and the Reorganized Debtors of any Claims, causes of action, or defenses relating to assumed executory contracts or otherwise which are required by the Reorganized Debtors to conduct their businesses in the ordinary course subsequent to the Effective Date.  Moreover, except as otherwise expressly contemplated by this Plan, the Sealed Air Settlement Agreement, the Fresenius Settlement Agreement or other Plan Documents, and except for the Trust Causes of Action, from and after the Effective Date, the Reorganized Debtors shall have and retain any and all rights to commence and pursue any and all claims, causes of action, including the Retained Causes of Action, or defenses against any parties, including holders of Asbestos PD Claims, holders of ZAI Claims, other Claimants and Holders of Equity Interests, whether such causes of action accrued before or after the Petition Date.

The Reorganized Debtors shall retain and may exclusively enforce any and all such claims, rights or causes of action, including Retained Causes of Action, and commence, pursue and settle the causes of action in accordance with this Plan. The Reorganized Debtors shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, and causes of action, including Retained Causes of Action, without the consent or approval of any third party and without any further order of the Court.

### 11.3.2  Preservation of All Causes of Action not Expressly Settled or Released

Unless a claim or cause of action against a Claimant or other Entity is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order, the Debtors expressly reserve such claim or Retained Cause of Action (including any unknown causes of action) for later adjudication by the Reorganized Debtors and Trust Causes of Action for later adjudication by the Asbestos Trust.  Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such claims or Retained Causes of Action upon or after the Confirmation Date or Effective Date of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except where such claims or Retained Causes of Action

have been released in this Plan or other Final Order. In addition, the Debtors, the Reorganized Debtors, and the successor entities under this Plan expressly reserve the right to pursue or adopt any claim alleged in any lawsuit in which the Debtors are defendants or an interested party, against any Entity, including the plaintiffs or co-defendants in such lawsuits.

Any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that such obligation, transfer, or transaction may be reviewed by the Debtors or the Reorganized Debtors, and may, if appropriate, be the subject of an action after the Effective Date, whether or not (i) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases; (ii) such Claimant's proof of claim has been objected to; (iii) such Claimant's Claim was included in the Debtors' Schedules; or (iv) such Claimant's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as a Disputed Claim, a Contingent Claim, or an Unliquidated Claim.

## 11.4    THIRD-PARTY AGREEMENTS

The Distributions to the various Classes of Plan Claims hereunder will not affect the right of any Entity to levy, garnish, attach, or employ any other legal process with respect to such Distributions by reason of any claimed subordination rights or otherwise. All of such rights and any agreements relating thereto will remain in full force and effect.

## 11.5    REQUIREMENTS OF THE FRESENIUS SETTLEMENT AGREEMENT

Each of the provisions to be included in the Plan to satisfy the preconditions to the payment of the Fresenius Payment set forth in the Fresenius Settlement Agreement and the other requirements of the Fresenius Settlement Agreement, to the extent not already included herein or waived pursuant to the terms of the Fresenius Settlement Agreement, shall be included in Exhibit 11.5 in the Exhibit Book and are hereby expressly incorporated herein by reference and made a part hereof as if the same were fully set forth in this Plan.

## 11.6    REQUIREMENTS OF THE SEALED AIR SETTLEMENT AGREEMENT

Each of the provisions to be included in the Plan to satisfy the preconditions to the payment of the Sealed Air Payment set forth in the Sealed Air Settlement Agreement and the other requirements of the Sealed Air Settlement Agreement, to the extent not already included herein or waived pursuant to the terms of the Sealed Air Settlement Agreement, shall be included in Exhibit 11.6 in the Exhibit Book and are hereby expressly incorporated herein by reference and made a part hereof as if the same were fully set forth in this Plan

## 11.7    DISSOLUTION OF THE UNSECURED CREDITORS' COMMITTEE, THE ASBESTOS PI COMMITTEE, THE ASBESTOS PD COMMITTEE AND THE EQUITY COMMITTEE; CONTINUED RETENTION OF THE FUTURE CLAIMANTS' REPRESENTATIVE

The Debtors shall pay the reasonable fees and expenses incurred by the Asbestos PI Committee, the Asbestos PD Committee, the Unsecured Creditors' Committee, the Equity Committee and the Future Claimants' Representative through the Effective Date in accordance with the fee and expense procedures promulgated during the Chapter 11 Cases. On the Effective Date, except as set forth below, the Asbestos PI Committee, the Asbestos PD Committee, the Unsecured Creditors' Committee and the Equity Committee shall thereupon be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to or arising from or in connection with the Chapter 11 Cases, and those committees shall be deemed dissolved. After the Effective Date, the rights, duties and responsibilities of the Future Claimants' Representative shall be as set forth in the Trust Agreement.

Notwithstanding the foregoing, if the Effective Date occurs prior to the entry of a Final Order with respect to final fee applications of Professionals retained by order of the Bankruptcy Court during the Chapter 11 Cases, the Unsecured Creditors' Committee, the Asbestos PI Committee, the Asbestos PD Committee, and the Equity Committee may, at their option, continue to serve until a Final Order is entered with respect to such proceedings. Further, after the Effective Date, the Asbestos PI Committee and the Future Claimants' Representative shall continue in existence and have standing and capacity to (i) object to any proposed modification of the Plan, (ii) object to or defend the Administrative Expense Claims of Professionals employed by or on behalf of the Debtors or their estates, (iii) participate in any appeals of the Confirmation Order (if applicable), (iv) participate as a party in interest in any proceeding involving Section 524(g) of the Bankruptcy Code, (v) prepare and prosecute applications for the payment of fees and reimbursement of expenses, (vi) participate as a party in interest in any proceeding relating to the Asbestos Trust, and (vii) commence or continue any adversary proceeding, claim objection or other proceeding as expressly provided for in the Plan. The Reorganized Debtors shall pay the reasonable fees and expenses incurred by the Asbestos PI Committee and the Future Claimants' Representative relating to any post-Effective Date activities authorized hereunder.

## 11.8    EXCULPATION

None of the Reorganized Debtors, the Debtors, the Non-Debtor Affiliates, the Sealed Air Indemnified Parties, the Fresenius Indemnified Parties, the Trustees of the Asbestos Trust, the Asbestos Trust Advisory Committee, the Asbestos PI Committee, the Asbestos PD Committee, the Unsecured Creditors' Committee, the Equity Committee, the FCR, or any of their respective Representatives are to have or incur any liability to any Entity for any act or omission in connection with or arising out of the negotiation of this Plan or the settlement provided in the Sealed Air Settlement Agreement and the Fresenius Settlement Agreement, the pursuit of confirmation of this Plan, the consummation of this Plan or the settlement provided in the Sealed Air Settlement Agreement or Fresenius Settlement Agreement, or the administration of this Plan or the property to be distributed under this Plan so long as, in each case such action, or failure to act, did not constitute gross negligence or willful misconduct. In all respects, they will be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence or willful misconduct. This section is not intended to preclude a governmental entity from enforcing its police and regulatory powers.

**11.9    TITLE TO ASSETS; DISCHARGE OF LIABILITIES**

Upon the transfer of the Sealed Air Payment into the Asbestos Trust, and the transfer of the other Asbestos Trust Assets into the Asbestos Trust, each such transfer shall be vested in the Asbestos Trust free and clear of all claims, Equity Interests, Encumbrances, and other interests of any Entity.  Except as otherwise provided in this Plan and in accordance with Bankruptcy Code § 1123(b)(3), on the Effective Date, title to all of the Debtors' assets and properties and interests in property, including the Retained Causes of Action, shall vest in the Reorganized Debtors free and clear of all claims, Equity Interests, Encumbrances, and other interests, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtors.

**11.10   NOTICES**

Any notices, statements, requests, and demands required or permitted to be provided under this Plan, in order to be effective, must be: (i) in writing (including by facsimile transmission), and unless otherwise expressly provided herein, shall be deemed to have been duly given or made (A) if personally delivered or if delivered by facsimile or courier service, when actually received by the Entity to whom notice is sent, (B) if deposited with the United States Postal Service (but only when actually received), at the close of business on the third business day following the day when placed in the mail, postage prepaid, certified or registered with return receipt requested, or (C) one (1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid) (but only when actually received) and (ii) addressed to the appropriate Entity or Entities to whom such notice, statement, request or demand is directed (and, if required, its counsel), at the address of such Entity or Entities set forth below (or at such other address as such Entity may designate from time to time by written notice to all other Entities listed below in accordance with this Section 11.10):

**If to the Debtors:**              W.R. Grace & Co.
                                    7500 Grace Drive
                                    Columbia, MD  21044
                                    Attn: Secretary
                                    Telephone:    (410) 531-4000
                                    Facsimile:    (410) 531-4545

**With a copy to:**                 Kirkland & Ellis LLP
                                    777 South Figueroa Street, 37th Floor
                                    Los Angeles, CA  90017
                                    Attn:  Bennett L. Spiegel/Lori Sinanyan
                                    Telephone     (213) 680-8400
                                    Facsimile:    (213) 680-8500

                                    and

                                    Kirkland & Ellis LLP
                                    200 East Randolph Drive
                                    Chicago, IL  60601

Attn: David Bernick
Telephone       (312) 861-2000
Facsimile:      (312) 861-2200

and

Pachulski, Stang, Ziehl, Young, Jones &
    Weintraub P.C.
919 North Market Street, 16th Floor
P.O. Box 8705
Attn: Laura Davis Jones/David W. Carickhoff,
Jr.
Wilmington, Delaware 19899-8705 (Courier
19801)
Telephone :     (302) 652-4100
Facsimile:      (302) 652-4400

**If to the Asbestos PI Committee:**    Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC  20005
Attn: Peter Lockwood
    Ronald Reinsel
Telephone:      (202) 862-5000
Facsimile:      (202) 862-3301

Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152
Attn: Elihu Inselbuch
Telephone:      (212) 319-7125
Facsimile:      (212) 644-6755

**If to the Asbestos PD Committee:**    Bilzin Sumberg Baena Price & Axelrod LLP
200 South Biscayne Blvd., Suite 2500
Miami, FL  33131-5340
Attn: Scott L. Baena/Jay M. Sakalo/Mindy A.
Mora
Telephone:      (305) 374-7580
Facsimile:      (305) 374-7593

**If to the Future Claimants' Representative:**    David T. Austern
3110 Fairview Park Drive
Suite 200
Falls Church VA 22042-0683
Telephone:      (703) 205-0835
Facsimile:      (703) 205-6249

| | |
|---|---|
| **With a copy to:** | Orrick, Herrington & Sutcliffe LLP<br>1152 15th Street, N.W.<br>Washington, D.C. 20005-1706<br>Attention:  Roger Frankel<br>Telephone: (202) 339-8400 |
| **If to the Unsecured Creditors' Committee:** | Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, NY  10038-4982<br>Attn:  Lewis Kruger/Arlene Krieger/Kenneth Pasquale<br>Telephone:     (212) 806-5400<br>Facsimile:       (212) 806-6006 |
| **If to Sealed Air:** | Sealed Air Corporation<br>Park 80 East<br>Saddlebrook, NJ  07663<br>Attn:  Mary A. Coventry<br>Telephone:     (201) 791-7600<br>Facsimile:       (201) 703-4205 |
| **With a copy to:** | Skadden, Arps, Slate, Meagher & Flom LLP<br>Four Times Square<br>New York, NY  10036<br>Attn:  Jan Baker/Shmuel Vasser<br>Telephone:     (212) 735-3000<br>Facsimile:       (212) 735-2000 |
| **If to Fresenius:** | Fresenius Medical Care North America<br>Corporate Headquarters<br>Corporate Law Department<br>95 Hayden Avenue<br>Lexington, MA  02420-9192<br>Attn:  General Counsel<br>Telephone:     (781) 402-9000<br>Facsimile:       (781) 402-9700 |
| **With a copy to:** | McDermott, Will & Emery<br>227 W. Monroe, Suite 4400<br>Chicago, IL  60606<br>Attn:  David S. Rosenbloom<br>Telephone:     (312) 372-2000<br>Facsimile:       (312) 984-7700 |
| **If to the Equity Committee:** | Kramer Levin Naftalis & Frankel LLP |

919 Third Avenue
New York, NY 10022
Attn: Phillip Bentley
Telephone:    (212) 715-9100
Facsimile:    (212) 715-8000

## 11.11  HEADINGS

The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the construction of the provisions of this Plan.

## 11.12  GOVERNING LAW

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Delaware, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

## 11.13  FILING OF ADDITIONAL DOCUMENTS

On or before the Effective Date, Asbestos PI Committee and the FCR shall File, and if required by the Plan or the Confirmation Order, the Debtors, the Asbestos PD Committee, the Equity Committee, and the Unsecured Creditors' Committee (as the case may be) shall File, with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

## 11.14  COMPLIANCE WITH TAX REQUIREMENTS

In connection with this Plan, the Debtors, the Reorganized Debtors, and the Asbestos Trust will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all Distributions hereunder or under any Plan Document shall be subject to such withholding and reporting requirements, if any. Notwithstanding any other provision of this Plan, each Entity receiving a Distribution pursuant to this Plan, or any other Plan Document, will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income tax and other obligations, on account of that Distribution.

## 11.15  EXEMPTION FROM TRANSFER TAXES

Pursuant to Bankruptcy Code § 1146(c), the issuance, transfer, or exchange of notes or equity securities under this Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan shall be exempt from all taxes as provided in Bankruptcy Code § 1146(c).

## 11.16  FURTHER ASSURANCES

The Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, the Asbestos Indemnified Parties, the Asbestos Insurance Entities, the Asbestos Trust, and all Holders of Plan Claims receiving Distributions under this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other action consistent with the terms of this Plan as may be necessary to effectuate the provisions and intent of this Plan, with each such Entity to bear its own costs incurred in connection therewith.

## 11.17  FURTHER AUTHORIZATIONS

The Plan Proponents, and, after the Effective Date, the Reorganized Debtors or the Asbestos Trust, if and to the extent necessary, may seek such orders, judgments, injunctions, and rulings that any of them deem necessary to carry out further the intentions and purposes of, and to give full effect to the provisions of, this Plan, with each such Entity to bear its own costs in connection therewith.

Respectfully submitted,

**OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS**

By:  _____
Name:  Peter Van N. Lockwood
Title:   Counsel to the Asbestos PI Committee

**FUTURE CLAIMANTS' REPRESENTATIVE**

By:  _____
Name: David T. Austern by counsel

## 11.16  FURTHER ASSURANCES

The Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, the Asbestos Indemnified Parties, the Asbestos Insurance Entities, the Asbestos Trust, and all Holders of Plan Claims receiving Distributions under this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other action consistent with the terms of this Plan as may be necessary to effectuate the provisions and intent of this Plan, with each such Entity to bear its own costs incurred in connection therewith.

## 11.17  FURTHER AUTHORIZATIONS

The Plan Proponents, and, after the Effective Date, the Reorganized Debtors or the Asbestos Trust, if and to the extent necessary, may seek such orders, judgments, injunctions, and rulings that any of them deem necessary to carry out further the intentions and purposes of, and to give full effect to the provisions of, this Plan, with each such Entity to bear its own costs in connection therewith.

Respectfully submitted,

**OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS**

By: _____
Name:  Peter Van N. Lockwood
Title:  Counsel to the Asbestos PI Committee

**FUTURE CLAIMANTS' REPRESENTATIVE**

By: _____
Name: David T. Austern by counsel