## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **W. R. GRACE & CO., *et al.*,**[1] | ) | **Case No. 01-1139 (JKF)** |
| | ) | |
| Debtors. | ) | **(Jointly Administered)** |

## GLOSSARY OF TERMS USED IN PLAN DOCUMENTS

### I.    Definitions

Terms defined in this Section I apply to the Plan, the Disclosure Statement and the other Plan Documents (unless specifically provided otherwise in any such Plan Document).

1.    **"1998 Tax Sharing Agreement"** means the Tax Sharing Agreement by and among W.R. Grace & Co., W.R. Grace & Co.-Conn, and Sealed Air Corporation, dated as of March 30, 1998.

2.    **"Adjusted PI Claim Amount"** shall mean the result of (i) the Estimated PI Amount minus (ii) if and only if Total Distributable Value is less than the Aggregate Principal Claims Amount, the amount by which the Aggregate Principal Claims Amount exceeds Total Distributable Value.

3.    **"Administrative Expense Claim"** shall mean: (i) any Claim constituting a cost or expense of administration in the Chapter 11 Cases, on or after the Petition Date but

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

prior to the Effective Date, under Bankruptcy Code §§ 503(b), 507(a)(1), 507(b) or 1114(e)(2), including: (a) any actual and necessary costs and expenses of preserving the estates of the Debtors, (b) any actual and necessary costs and expenses of operating the businesses of the Debtors, (c) any indebtedness or obligation incurred or assumed by the Debtors (including any executory contracts of the Debtors assumed pursuant to Bankruptcy Code § 365 by order of the Bankruptcy Court or the Plan) in connection with the conduct of their businesses or for the acquisition or lease of property or the rendition of services, and (d) any allowed compensation or reimbursement of expenses awarded or allowed under Bankruptcy Code §§ 330(a), 331 or 503, and (ii) any fees or charges assessed against the estates of the Debtors under 28 U.S.C. § 1930.

4.    **"Affiliate"** shall mean as to any specified Entity: (i) any other Entity that, directly or indirectly through one or more intermediaries or otherwise, controls, is controlled by, or is under common control with, the specified Entity, and (ii) any Entity that is an "affiliate" (within the meaning of Bankruptcy Code § 101(2)) of the specified Entity. As used in clause (i) of this definition, "control" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of an Entity (whether through ownership of Capital Stock of that Entity, by contract, or otherwise).

5.    **"Aggregate Claims Amount"** shall mean the sum of the Aggregate Principal Claims Amount <u>plus</u> all post-petition interest payable in respect thereof as determined by the Bankruptcy Court.

6.    **"Aggregate Principal Claims Amount"** shall mean the sum of:

(i)    the Estimated PI Amount;

(ii)    the sum of (a) the aggregate Allowed Amounts of all Allowed Asbestos PD Claims to be paid on the Effective Date pursuant to the Plan and (b) the Estimated PD Amount;

(iii)    the aggregate Allowed Amounts of all Allowed General Unsecured Claims to be paid on the Effective Date pursuant to the Plan; and

(iv)    the sum of (a) the aggregate Allowed Amounts of all Allowed Environmental Claims to be paid on the Effective Date pursuant to the Plan and (b) the Estimated Environmental Amount.

7.    **"Allowed"** shall mean:

(a)    With respect to Asbestos PD Claims, in such amount as is (i) resolved by agreement of the Claimant which is approved by a Final Order of the Bankruptcy Court (including any agreement entered into as a result of mediation) prior to the Effective Date, (ii) determined by Final Order of the Bankruptcy Court, (iii) to the extent permissible under Section 3.1.8 of the Plan, resolved pursuant to state law or (iv) resolved by agreement of the Claimant and the applicable Reorganized Debtor(s) after the Effective Date;

(b)    With respect to any Plan Claim other than an Administrative Expense Claim, ZAI Claim or Asbestos Claim, as to which a proof of claim was Filed within the applicable period of limitation fixed in accordance with Bankruptcy Rule 3003(c)(3) by the Court, (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, or (ii) as to which an objection to the allowance thereof has been interposed within such time as is set by the Bankruptcy Court pursuant to the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, such Plan Claim to the extent that such objection has been (A) overruled in whole or in part by a Final Order of the Bankruptcy Court, or (B) resolved by agreement of the Claimant which is approved by a Final Order of the Bankruptcy Court, or (C) determined by Final Order in the Chapter 11 Cases;

(c)    With respect to any Plan Claim other than an Administrative Expense Claim, ZAI Claim or Asbestos Claim, as to which no proof of claim was Filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, such Plan Claim to the extent that it has been listed by the Debtors in their Schedules as liquidated in amount and not disputed or contingent and not otherwise subject to an objection Filed within such time as is set by the Bankruptcy Court pursuant to the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court;

(d)    With respect to any Unresolved Environmental Claim after the Effective Date, (i) determined by Final Order of the Bankruptcy Court or (ii) resolved by agreement of the Claimant and the applicable Reorganized Debtor(s);

(e)    With respect to any Equity Interest in Parent, any Equity Interest registered in the stock register maintained by or on behalf of the Debtors as of the Confirmation Date but only if and to the extent Equity Interests in Parent are entitled to a Distribution pursuant to Section 3.1.11 of the Plan; and

(f)    With respect to any Plan Claim that is asserted to constitute an Administrative Expense Claim:

    (i)    that represents a Claim of a Professional to the extent it is allowed in whole or in part by a Final Order of the Bankruptcy Court; or

    (ii)    other than with respect to a Claim of a Professional, (X) a claim to the extent that the Debtors or the Reorganized Debtors determine it to constitute an Administrative Expense Claim, or (Y) a claim to the extent it is allowed in whole or in part by a Final Order of the Bankruptcy Court and only to the extent that such allowed portion is deemed, pursuant to a Final Order of the Bankruptcy Court, to constitute a cost or expense of administration under Bankruptcy Code §§ 503 or 1114.

8.      **"Allowed Amount"** shall mean the dollar amount of an Allowed Plan Claim (other than an Asbestos PI Claim) (excluding, to the extent determined by the Bankruptcy Court pursuant to Section 3.1 of the Plan to be payable thereon, post-petition interest, if any).

9.      **"Articles of Incorporation"** shall mean Certificate of Incorporation.

10.     **"Asbestos Channeling Injunction"** shall mean the order(s) entered or affirmed by the District Court, in accordance with and pursuant to Bankruptcy Code § 524(g), permanently and forever staying, restraining, and enjoining any Entity from taking any action against any Asbestos Protected Party (except as may be specifically provided in such order(s)) for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos PI Claims, all of which shall be channeled to the Asbestos Trust for resolution as set forth in the TDP (other than actions brought to enforce any right or obligation under the Plan or any agreement or instrument between the Debtors or the Reorganized Debtors, on the one hand, and the Asbestos Trust, on the other hand, entered into pursuant to the Plan). The Asbestos Channeling Injunction is further described in Section 8.2 of the Plan.

11.     **"Asbestos Claims"** shall mean all Asbestos PI Claims and Asbestos PD Claims.

12.     **"Asbestos Insurance Action"** shall mean any claim, cause of action, or right of any Debtor or Reorganized Debtor, as the case may be, against any Asbestos Insurance Entity, arising from or based on: (i) any such Asbestos Insurance Entity's failure to provide coverage, pay or agree to pay a claim under an Asbestos Insurance Policy; (ii) the refusal of any such Asbestos Insurance Entity to compromise or settle any Asbestos Claim or ZAI Claim under or pursuant to any Asbestos Insurance Policy; or (iii) the interpretation or enforcement of the terms of any Asbestos Insurance Policy with respect to any Asbestos Claim or ZAI Claim.

13.     **"Asbestos Insurance Agreement"** shall mean the Asbestos Insurance Agreement pursuant to which the Asbestos PI Insurance Rights are transferred (if at all) to the Asbestos Trust under the Plan, substantially in the form included as Exhibit 13 in the Exhibit Book.

14.     **"Asbestos Insurance Entity"** shall mean any Entity, including any insurance company, broker, or guaranty association, that has issued, or that has actual or potential liability, duties or obligations with respect to, any Asbestos Insurance Policy.

15.     **"Asbestos Insurance Entity Injunction(s)"** shall mean the injunction(s) described in Section 8.3 of the Plan.

16.     **"Asbestos Insurance Policy"** shall mean any insurance policy, whether known or unknown, including the policies listed on the schedule included as Exhibit 16 in the Exhibit Book, that actually or potentially provides insurance coverage for any Asbestos Claim or ZAI Claim; *provided* that an Asbestos Insurance Policy shall not include any rights or obligations under any insurance policy or settlement agreement

to which any of the Debtors are a party insofar as the insurance policy or settlement agreement provides coverage for Workers' Compensation Claims.

17.    **"Asbestos Insurance Rights"** shall mean any and all rights, titles, privileges, interests, claims, demands or entitlements to any proceeds, payments, initial or supplemental dividends, scheme payments, supplemental scheme payments, causes of action, and choses in action with respect to Asbestos Claims or ZAI Claims covered by any of the Asbestos Insurance Policies and/or the Asbestos Insurance Settlement Agreements, whether now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, including:

(a)    any and all rights to pursue or receive payments with respect to Asbestos Claims or ZAI Claims under any Asbestos Insurance Policy or any Asbestos Insurance Settlement Agreement, whether for liability, defense, or otherwise;

(b)    any and all rights to pursue or receive payments with respect to Asbestos Claims or ZAI Claims covered by any Asbestos Insurance Policy and/or any Asbestos Insurance Settlement Agreement that was entered into by any domestic or foreign insolvent insurance company, whether in receivership, liquidation, rehabilitation, run-off, scheme of arrangement, or any other form of proceeding; and

(c)    any and all rights to pursue or receive payments with respect to Asbestos Claims or ZAI Claims covered by any Asbestos Insurance Policy and/or any Asbestos Insurance Settlement Agreement from any insurance guaranty association of a Governmental Unit;

*provided* that Asbestos Insurance Rights shall not include any rights or obligations under any insurance policy or settlement agreement to which any of the Debtors are a party insofar as the insurance policy or settlement agreement provides coverage for Workers' Compensation Claims.

18.    **"Asbestos Insurance Settlement Agreement"** shall mean any settlement agreement between or among any of the Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, or any of them or their predecessors, and a Resolved Asbestos Insurance Company or a Settled Asbestos Insurance Company involving any Asbestos Claim, ZAI Claim or any Asbestos Insurance Action.

19.    **"Asbestos Medical Monitoring Claim"** shall mean: (i) a Claim or Demand, including (x) all related claims, debts, obligations, liabilities or remedies for compensatory (including general, special, and consequential damages) and punitive damages, and (y) all cross-claims, contribution claims, subrogation claims, reimbursement claims or indemnity claims, or (ii) any present or future debt, liability, or obligation of any other Asbestos Protected Party (in the case of clause (i) or (ii) of this definition, whether or not such Claim, Demand, remedy, debt, liability, or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; whether or not the facts of or legal bases therefor are known or unknown; and whether in the

nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement or indemnity, or any other theory of law, equity, or admiralty), in each case for, based on, or arising out of, resulting from, or attributable to, directly or indirectly:

(a) personal injuries or damages by or on behalf of those who have not, as of the Petition Date, suffered any personal injury but who are alleging that:

(i) the Debtors (or any of their respective past or present Affiliates, any of the predecessors of any of the Debtors or any of their respective past or present Affiliates, or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable) wrongfully caused them to be significantly exposed to hazardous asbestos fibers,

(ii) this exposure significantly increased the Claimant's risk of contracting a serious latent disease,

(iii) medical monitoring could reasonably be expected to result in early detection of the onset and mitigation of the severity of such disease, and

(iv) because of this exposure it is necessary for the Claimant to be examined by a physician or receive medical testing more often that he or she otherwise would.

Asbestos Medical Monitoring Claims are included within the Class of Asbestos PI Claims.

20. **"Asbestos PD Claim"** shall mean a Claim, including (i) all related claims, debts, obligations, liabilities or remedies for compensatory (including general, special, and consequential damages) and punitive damages, (ii) all cross-claims, contribution claims, subrogation claims, reimbursement claims or indemnity claims, and (iii) all debts, liabilities, or obligations of one or more of the Debtors (whether or not such Claim, remedy, debt, liability, or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; whether or not the facts of or legal bases therefor are known or unknown; and whether in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement or indemnity, or any other theory of law, equity, or admiralty):

(a) arising directly from acts or omissions of one or more of the Debtors (or any of their respective past or present Affiliates, any of the predecessors of any of the Debtors or any of their respective past or present Affiliates, or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable); and

(b) for, based on, or arising out of, resulting from, or attributable to, directly or indirectly, the cost of removal, abatement, diminution of property value, environmental damage, or economic loss caused or allegedly caused:

(i) by asbestos in products or materials manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present Affiliates, any of the predecessors of any of the Debtors or any of their respective past or present Affiliates, or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable); or

(ii) from vermiculite mined, milled, or processed by the Debtors (or any of their respective past or present Affiliates, any of the predecessors of any of the Debtors or any of their respective past or present Affiliates, or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable).

Notwithstanding the foregoing or anything else to the contrary, ZAI Claims are not included within the Class of Asbestos PD Claims and shall not constitute Asbestos PD Claims for purposes of the Plan and the other Plan Documents.

21.    **"Asbestos PD Claimant"** shall mean the Holder of an Asbestos PD Claim.

22.    **"Asbestos PD Committee"** shall mean the Official Committee of Asbestos Property Damage Claimants appointed in the Chapter 11 Cases.

23.    **"Asbestos PD Insurance Rights Value"** shall mean the estimated value of the Asbestos Insurance Rights other than the Asbestos PI Insurance Rights.

24.    **"Asbestos PD/Successor Claims Injunction"** shall mean the injunction described in Section 8.4 of the Plan.

25.    **"Asbestos Personal Injury Claim"** shall mean an Asbestos PI Claim.

26.    **"Asbestos PI Claim"** shall mean: (i) a Claim or Demand, including (x) all related claims, debts, obligations, liabilities or remedies for compensatory (including general, special, and consequential damages) and punitive damages, and (y) all cross-claims, contribution claims, subrogation claims, reimbursement claims or indemnity claims, or (ii) any  present or future debt, liability, or obligation of any other Asbestos Protected Party (in the case of clause (i) or (ii) of this definition, whether or not such Claim, Demand, remedy, debt, liability, or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; whether or not the facts of or legal bases therefor are known or unknown; and whether in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement or indemnity, or any other theory of law, equity, or admiralty), in each case for, based on, or arising out of, resulting from, or attributable to, directly or indirectly:

(a)    death, wrongful death, personal or bodily injury (whether physical, emotional, or otherwise), sickness, disease, loss of consortium, survivorship, medical monitoring, or other personal injuries or other damages caused, or allegedly

caused, and arising or allegedly arising, from acts or omissions of one or more of the Debtors (or any of their respective past or present Affiliates, any of the predecessors of any of the Debtors or any of their respective past or present Affiliates, or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable); and

(b)    exposure to:

(i)    any products or materials containing asbestos that were manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present Affiliates, or any of the predecessors of any of the Debtors or any of their respective past or present Affiliates, or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable); or

(ii)    vermiculite mined, milled or processed by the Debtors (or any of their respective past or present Affiliates, any of the predecessors of any of the Debtors or any of their respective past or present Affiliates, or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable).

Notwithstanding the foregoing or anything else to the contrary, Workers' Compensation Claims are not included within the Class of Asbestos PI Claims and shall not constitute Asbestos PI Claims for purposes of the Plan and the other Plan Documents.

27.    **"Asbestos PI Claimant"** shall mean the Holder of an Asbestos PI Claim.

28.    **"Asbestos PI Committee"** shall mean the Official Committee of Asbestos Personal Injury Claimants appointed in the Chapter 11 Cases.

29.    **"Asbestos PI Insurance Rights"** shall mean Asbestos Insurance Rights other than Asbestos Insurance Rights solely available for the payment of ZAI Claims and/or Asbestos PD Claims.

30.    **"Asbestos PI Insurance Rights Value"** shall mean the estimated value of the Asbestos PI Insurance Rights set forth in the Estimation Materials or as otherwise determined by the Bankruptcy Court.

31.    **"Asbestos PI Pre-petition Litigation Bar Date"** shall mean the applicable date that the Court established by the August Bar Date Order as the last day for Filing a specified type of Pre-Petition Asbestos PI Litigation Claim.

32.    **"Asbestos PI Proof of Claim Form"** shall mean the proof of claim form that each Holder of a Pre-Petition Asbestos PI Litigation Claim was required to file pursuant to the terms of the August Bar Date Order.

33.    **"Asbestos Property Damage Claim"** shall mean an Asbestos PD Claim.

34.    **"Asbestos Protected Party"** shall mean any of the following parties:

(a)    the Debtors;

(b)    the Reorganized Debtors;

(c)    the Non-Debtor Affiliates;

(d)    the Resolved Asbestos Insurance Companies;

(f)    the Sealed Air Indemnified Parties;

(g)    the Fresenius Indemnified Parties;

(h)    any Entity that, pursuant to the Plan or otherwise on or after the Effective Date, becomes a direct or indirect transferee of, or successor to, any of the Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, the Sealed Air Indemnified Parties, or the Fresenius Indemnified Parties, or any of their respective assets (but only to the extent that any liability is asserted to exist as a result of its becoming such a transferee or successor);

(i)    any Entity that, pursuant to the Plan or otherwise on or after the Effective Date, makes a loan to any of the Reorganized Debtors, the Non-Debtor Affiliates, the Asbestos Trust, or to a successor to, or transferee of any of the respective assets of, the Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, or the Asbestos Trust (but only to the extent that any liability is asserted to exist as a result of its becoming such a lender or to the extent any Encumbrance of assets made in connection with such a loan is sought to be invalidated, upset or impaired in whole or in part as a result of its being such a lender);

(j)    each of the respective present and future Affiliates of each of the Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, the Sealed Air Indemnified Parties, the Fresenius Indemnified Parties, the Resolved Asbestos Insurance Companies and the Settled Asbestos Insurance Companies (but only to the extent that any liability is asserted to exist as a result of its becoming such an Affiliate);

(k)    the Settled Asbestos Insurance Companies; or

(l)    each of the respective Representatives of each of the Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, the Sealed Air Indemnified Parties, the Fresenius Indemnified Parties, the Resolved Asbestos Insurance Companies, and the Settled Asbestos Insurance Companies.

35.    **"Asbestos-Related Claims"** means any and all SA Claims, Debts or Damages based on or arising from, in whole or in part, directly or indirectly: (i) Asbestos Claims or ZAI Claims or (ii) Successor Claims based on or arising from, in whole or in part, directly or indirectly, the Cryovac Transaction.

36. **"Asbestos Trust"** shall mean the WRG Asbestos Trust, a Delaware statutory trust, established in accordance with the Asbestos Trust Agreement.

37. **"Asbestos Trust Agreement"** shall mean the agreement, effective as of the Effective Date, substantially in the form included as Exhibit 37 in the Exhibit Book, to be entered into by and among the Debtors, the Future Claimants' Representative, the TAC and the Trustees in connection with the formation of the Asbestos Trust.

38. **"Asbestos Trust Assets"** shall mean the Sealed Air Payment, Parent Common Stock, Asbestos PI Insurance Rights (if any) and Cash to be transferred to the Asbestos Trust pursuant to Section 3.1.6 of the Plan, the Trust Causes of Action, and, following the transfer or vesting of the foregoing to or in the Asbestos Trust, any proceeds thereof and earnings and income thereon.

39. **"August Bar Date Order"** mean the Court's Order As To All Pre-Petition Asbestos PI Litigation Claims, Including Settled Claims, (I) Establishing Bar Dates; (II) Approving Proof of Claim Form; and (III) Approving Notice of Pre-Petition Asbestos Personal-Injury Claims Bar Date, dated August 21, 2006, as clarified by the Court's Stipulated Order Clarifying the Order as to All Pre-Petition Asbestos PI Litigation Claims, Including Settled Claims, (I) Establishing Bar Dates; (II) Approving Proof of Claim Form; and (III) Approving Notice of Pre-Petition Asbestos Personal-Injury Claims Bar Date, dated September 25, 2006, which established the Asbestos PI Pre-petition Litigation Bar Date.

40. **"Ballot"** shall mean the form or forms distributed to certain Holders of Plan Claims by which such parties may indicate acceptance or rejection of the Plan.

41. **"Bankruptcy Code"** shall mean title 11 of the United States Code, as set forth in §§ 101 et seq., and applicable portions of titles 18 and 28 of the United States Code.

42. **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Delaware.

43. **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Chapter 11 Cases, including the Local Rules of the Bankruptcy Court.

44. **"Board of Directors"** shall mean the Board of Directors of any of the Debtors, or any of the Reorganized Debtors, as the case may be, as it may exist from time to time.

45. **"Business Day"** shall mean any day other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)) in the United States of America.

46. **"By-Laws"** shall mean the by-laws of any of the specified Debtors, as amended as of the Effective Date or thereafter.

47. **"Capital Stock"** shall mean, with respect to: (i) any corporation, any share, or any depositary receipt or other certificate representing any share, of equity interest in that

corporation; and (ii) any other Entity, any share, membership, or percentage interest, unit of participation, or other equivalent (however designated) in or of equity interest in that Entity.

48. **"Cash"** shall mean lawful currency of the United States of America and equivalents thereof.

49. **"Certificate of Incorporation"** shall mean the Certificate or Articles of Incorporation or equivalent document of any of the Debtors, as applicable, as amended as of the Effective Date or thereafter.

50. **"Chapter 11 Cases"** shall mean the cases commenced by the Filing, on the Petition Date, by the Debtors of voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

51. **"Claim"** shall mean a claim (as defined in Bankruptcy Code § 101(5)) against a Debtor including any right to: (i) payment from any of the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

52. **"Claimant"** shall mean the Holder of a Plan Claim.

53. **"Claims Distribution Date"** shall mean, when used with respect to a Plan Claim that is an Unresolved Asbestos PD Claim or an Unresolved Environmental Claim as of the Effective Date, the first Business Day of the next calendar quarter after the date upon which such Plan Claim becomes Allowed, unless such Plan Claim becomes Allowed within fifteen (15) Business Days before the first Business Day of such next calendar quarter, in which case the Claims Distribution Date shall be the first Business Day of the next succeeding calendar quarter.

54. **"Class"** shall mean a group of Plan Claims or Equity Interests classified by the Plan pursuant to Bankruptcy Code § 1122(a)(l).

55. **"Common Parent"** shall mean the common parent, as defined in Treasury Regulation Section 1.1502-77, of those corporations that joined, or hereafter join in filing a Consolidated Tax Return under Section 1501 of the IRC, and the Treasury Regulations thereunder, or a Consolidated Tax Return under comparable provisions of FSA Tax law or other jurisdictions (domestic or foreign).

56. **"Confirmation Date"** shall mean the date the clerk of the Court enters on the docket the Confirmation Order.

57. **"Confirmation Hearing"** shall mean the hearing that the Court conducts to consider confirmation of the Plan pursuant to Bankruptcy Code § 1129, as such hearing may be adjourned or continued from time to time.

58. **"Confirmation Order"** shall mean the order(s) entered by the Court on the Confirmation Date confirming the Plan.

59. **"Confirmation Procedures Order"** shall mean the order(s) of the Bankruptcy Court (i) approving procedures relating to the solicitation and tabulation of votes with respect to the Plan; and (ii) providing or establishing the basis for calculating the amount of any Plan Claim for voting purposes.

60. **"Consolidated Tax Return"** shall mean (i) a federal consolidated income Tax Return, within the meaning of Section 1501 of the IRC and the Treasury Regulations under Section 1502 of the IRC, and (ii) any combined, joint, consolidated or other Tax Return respecting FSA Taxes under the laws of any jurisdiction (domestic or foreign).

61. **"Contingent Claim"** shall mean any Plan Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened, or been triggered, as of the date on which such Plan Claim is sought to be estimated or an objection to such Plan Claim is Filed, whether or not such event is within the actual or presumed contemplation of the Holder of such Plan Claim and whether or not a relationship between the Holder of such Plan Claim and a Debtor now or hereafter exists or previously existed.

62. **"Court"** shall mean either the Bankruptcy Court or the District Court, as appropriate.

63. **"Cryovac Transaction"** means the transfers of assets, the distribution of stock, the merger, and all predecessor, related, and ancillary transactions, agreements, transfers, and distributions relating to the transactions described in, referred to, or contemplated by Form S-4 Registration Statement filed by W.R. Grace & Co. with the SEC under the Securities Act, on or about February 13, 1998, SEC File No. 333-46281, including all attachments, exhibits, and schedules thereto.

64. **"Damages"** means any and all potential elements of recovery or relief, including, without limitation, those that are known, unknown, certain, uncertain, anticipated, or unanticipated, that have been, could have been, may be, or could be alleged or asserted now or in the future against the Sealed Air Indemnified Parties, whether alleged, unalleged, asserted, or unasserted by Plaintiffs or by any other Entity under any legal, regulatory, administrative, or equitable theory against the Sealed Air Indemnified Parties, and includes, without limitation, equitable relief, declaratory relief, actual damages (whether for successor liability, fraudulent transfer, fraudulent conveyance, alter ego liability, agency liability, property damage, environmental liability, Tax liability, economic loss, loss of profits, medical expenses, medical monitoring, personal injury, loss of consortium, wrongful death, survivorship, or compensatory, proximate, consequential, general, incidental, or special damages, or any other liability, loss, or injury), statutory or treble, or multiple or penal or punitive or exemplary damages, attorneys' fees, interest, expenses, and costs of court.

65. **"Debtor in Possession"** or **"Debtors in Possession"** shall mean one or more of the Debtors, each in its capacity as a debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

66.    "**Debtors**" or "**Grace**" shall mean, collectively, W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

67.    "**Debts**" means any liability or obligation arising from, based on, or attributable to any SA Claim.

68.    "**Demand**" shall mean a present or future demand for payment against a Debtor that (i) was not a Claim in the Chapter 11 Cases prior to the Effective Date; (ii) arises out of the same or similar conduct or events that gave rise to the Claims addressed by the Asbestos Channeling Injunction; and (iii) pursuant to the Plan, shall be dealt with by the Asbestos Trust.

69.    "**Disallowed**" shall mean, with respect to a Plan Claim (other than an Asbestos PI Claim) or Equity Interest, disallowed in its entirety by a Final Order of the Bankruptcy Court, District Court, or another court of competent jurisdiction.

70.    "**Disclosure Statement**" shall mean the disclosure statement relating to the Plan, including all exhibits, appendices and schedules thereto, approved by order of the Bankruptcy Court in connection with the Plan pursuant to Bankruptcy Code § 1125, together with any amendments and supplements thereto.

71.    "**Disputed Claim**" shall mean a Plan Claim (other than an Asbestos PI Claim) that is neither Allowed nor Disallowed.

72. **"Distributable Cash Percentage"** shall mean the result obtained from (i) the sum of (a) Excess Distributable Cash and (b) the Sealed Air Payment Amount <u>divided by</u> (ii) the Aggregate Principal Claims Amount.

73. **"Distribution"** shall mean the payment, distribution, or assignment under the Plan by the Reorganized Debtors of property or interests in property to: (i) any Holder of an Allowed Plan Claim (other than an Asbestos PI Claim) or Allowed Equity Interest; or (ii) the Asbestos Trust.

74. **"District Court"** shall mean the United States District Court for the District of Delaware.

75. **"EC Reserve"** shall have the meaning set forth in Section 3.1.10(b)(i)(B) of the Plan.

76. **"Effective Date"** shall mean the first Business Day after the date on which all of the conditions precedent to the effectiveness of the Plan specified in Section 7.7 thereof shall have been satisfied or waived or, if a stay of the Confirmation Order is in effect on such date, the first Business Day after the expiration, dissolution, or lifting of such stay.

77. **"Encumbrance"** shall mean with respect to any property or asset (whether real or personal, tangible or intangible), any mortgage, lien, pledge, charge, security interest, assignment as collateral, or encumbrance of any kind or nature in respect of such property or asset (including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction) to secure payment of a debt or performance of an obligation.

78. **"Enterprise Value"** means the enterprise value of the Debtors on a consolidated basis set forth in the Estimation Materials or as otherwise determined by the Bankruptcy Court.

79. **"Entity"** shall mean any person, individual, corporation, limited liability company, firm, partnership, association, joint stock company, joint venture, estate, trust, business trust, unincorporated organization, any other entity, the United States Trustee or any Governmental Unit or any political subdivision thereof.

80. **"Environmental Claim"** shall mean any environmental Claim in the Chapter 11 Cases other than environmental Claims that constitute Administrative Expense Claims or Reinstated Environmental Claims.

81. **"Equity Committee"** shall mean the Official Committee of Equity Security Holders appointed in the Chapter 11 Cases.

82. **"Equity Interest"** shall mean any interest in any of the Debtors pursuant to an "equity security" within the meaning of Bankruptcy Code § 101(16).

83.    **"Equity Value"** shall mean the result of (i) the sum of the Enterprise Value plus the Asbestos PD Insurance Rights Value plus, if the Asbestos PI Insurance Rights Value is greater than $500 million, such Asbestos PI Insurance Rights Value, minus (ii) the sum of the Reducing Liabilities plus the aggregate amount of Exit Financing proceeds drawn in connection with consummation of the Plan plus (iii) Cash on hand after all distributions are made pursuant to the Plan in excess of the total amount of Cash to be used or reasonably required to be reserved for the ongoing operation of the Debtors and the Reorganized Debtors, in the case of this clause (iii) as set forth in the Estimation Materials or otherwise determined by the Bankruptcy Court.

84.    **"ERISA"** shall mean the Employee Retirement Income Security Act of 1974 and any regulations issued pursuant thereto, as amended from time to time.

85.    **"Estate Parties"** shall mean each of the Debtors, the estate of each Debtor, the post-confirmation estate of each Debtor, each of the reorganized Debtors, and any trustee that may be appointed in any of the Debtors' cases under the Bankruptcy Code.

86.    **"Estimated Environmental Amount"** shall mean the amount set forth in the Estimation Materials as the estimate of the Debtors' aggregate liability for all Unresolved Environmental Claims or such other amount as is determined by the Bankruptcy Court, excluding, to the extent applicable, post-petition interest.

87.    **"Estimated PD Amount"** shall mean the estimate of the Debtors' aggregate liability for all Unresolved Asbestos PD Claims, which shall be the amount, if any, set forth in the Estimation Materials or such amount or other amount, as the case may be, as is determined by the Bankruptcy Court, excluding, to the extent applicable, post-petition interest.

88.    **"Estimated PI Amount"** shall mean the amount determined by the Court to be the estimate of all existing and future Asbestos PI Claims and Demands, excluding, to the extent applicable, post-petition interest.

89.    **"Estimation Materials"** shall mean the estimation materials prepared by the Plan Proponents' financial advisors included as Exhibit 89 in the Exhibit Book.

90.    **"Excess Cash"** shall mean the (i) the total amount of Cash on hand of the Debtors as of the Confirmation Date (including the Fresenius Payment regardless of whether the same has been paid as of such date and the net proceeds of the Exit Financing to be drawn in connection with consummation of the Plan regardless of whether the same has been drawn as of such date, but excluding all Cash included in the Sealed Air Payment) minus (ii) the total amount of Cash to be used or reasonably required to be reserved for the ongoing operation of the Debtors and the Reorganized Debtors, in the case of this clause (ii) as set forth in the Estimation Materials or otherwise determined by the Bankruptcy Court.

91.    **"Excess Distributable Cash"** shall mean the result of (i) Excess Cash minus (ii) the total amount of Cash to be used or reasonably required to be reserved for payments to be made under the Plan in respect of Administrative Expense Claims, Priority Tax

Claims, and Priority Claims in the case of this clause (ii) set forth in the Estimation Materials or otherwise determined by the Bankruptcy Court.

92.  **"Exhibit Book"** shall mean the exhibits to the Disclosure Statement, the Plan, and/or the other Plan Documents, as amended, supplemented, or modified from time to time.

93.  **"Exit Financing"** shall mean such financing agreement(s) or commitment(s) as the Debtors may enter into to provide the Reorganized Debtors with appropriate credit availability.

94.  "**FCR**" shall mean the Future Claimants' Representative.

95.  "**File**" or **"Filed"** or **"Filing"** shall mean file, filed or filing with the Court in the Chapter 11 Cases, as the case may be.

96.  **"Final Order"** shall mean an order as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing by all Entities possessing such right, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or from which reargument or rehearing was sought or certiorari has been denied, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided* that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a Final Order.

97.  **"Financial Information"** shall mean the historical financial information included as, or incorporated by reference into, Exhibit 97 in the Exhibit Book entitled "W. R. Grace & Co. and Subsidiaries, Historical Financial Information."

98.  **"FMCH"** shall mean Fresenius Medical Care Holdings, Inc. (taxpayer identification number 13-3461988).

99.  **"FMCH Group"** shall mean that group of corporations, immediately after December 31, 1996, that were members of the affiliated group of corporations of which FMCH (taxpayer identification number 13-3461988) was and on the date of the Fresenius Settlement Agreement continued to be the Common Parent.

100. **"Fresenius"** shall mean FMCH and NMC.

101. **"Fresenius Indemnified Parties"** shall mean Fresenius and each of their respective present and former subsidiaries, parents, affiliates, officers, directors, employees, partners, trustees, shareholders, beneficiaries, agents, attorneys, predecessors, successors, and assigns, including Fresenius Medical Care AG and Fresenius AG, but not including the Estate Parties and Sealed Air.

102. **"Fresenius Indemnified Taxes"** shall mean all FSA Taxes for or attributable to Tax Periods ending on or before December 31, 1996 other than NMC Indemnified Taxes.

103. **"Fresenius Payment"** shall mean the $115,000,000 consideration to be paid by Fresenius to the Debtors pursuant to the terms of, and subject to the conditions set forth in, the Fresenius Settlement Agreement.

104. **"Fresenius Settlement Agreement"** shall mean that certain settlement agreement and release of claims dated February 6, 2003 by and among the Parent, Grace-Conn, Fresenius, the Asbestos PI Committee, and the Asbestos PD Committee, included as Exhibit 104 in the Exhibit Book, as such agreement may be amended from time to time.

105. **"Fresenius Settlement Order"** shall mean the Order Authorizing, Approving and Implementing Settlement Agreement By and Among Plaintiffs, the Official Committee of Asbestos Property Damage Claimants And the Official Committee of Asbestos Personal Injury Claimants, the Debtors, And Defendants Fresenius Medical Holdings, Inc. and National Medical Care, Inc., entered by the District Court on June 25, 2003, included as part of Exhibit 104 in the Exhibit Book.

106. **"Fresenius Transaction"** means the transfer of assets, the distributions of stock, and the merger and all predecessor related and ancillary transactions, agreements, transfers, and distributions relating to the transactions described in, referred to, or contemplated by Form S-4 Registration Statement filed by W.R. Grace & Co. with the SEC under the Securities Act, on or about August 2, 1996, SEC File No. 333-09497, including all attachments, exhibits and schedules thereto.

107. **"FSA Taxes"** shall mean all forms of taxation, whenever created or imposed, and whether of the United States or elsewhere, and whether imposed by a local, municipal, governmental, state, foreign, federation or other body, and without limiting the generality of the foregoing, shall include income (including alternative minimum), sales, use, *ad valorem*, gross receipts, license, value added, franchise, transfer, recording, withholding, payroll, employment, excise, occupation, unemployment insurance, social security, business license, business organization, stamp, environmental, premium and property taxes, together with any related interest, penalties and additions to any such tax, or additional amounts imposed by any taxing authority (domestic or foreign) upon the FMCH Group, the New Grace Group, the Grace New York Group, the Sealed Air/Grace Group or any of their respective members or divisions or branches.

108. **"Future Claimants' Representative"** shall mean David T. Austern (or any court-appointed successor), appointed as the legal representative for future asbestos-related personal injury Claimants in the Chapter 11 Cases for the purpose of protecting the interests of persons that may subsequently assert Demands channeled to the Asbestos Trust.

109. **"General Unsecured Claim"** shall mean any Claim in the Chapter 11 Cases that is not an Administrative Expense Claim, Priority Tax Claim, Reinstated General Unsecured Claim, Reinstated Environmental Claim, Priority Claim, Secured Claim,

Unsecured Pass-Through Employee Related Claim, Workers' Compensation Claim, Intercompany Claim, Asbestos PI Claim, ZAI Claim, Asbestos PD Claim or Environmental Claim.

110. **"Glossary"** shall mean this Glossary of Terms Used for the Plan Documents, as the same may be modified from time to time.

111. **"Governmental Unit"** shall mean any domestic, foreign, provincial, federal, state, local or municipal (a) government, or (b) governmental agency, commission, department, bureau, ministry or other governmental entity, or (c) any other governmental unit (as defined in Bankruptcy Code § 101(27)).

112. **"Grace"** shall mean the Debtors.

113. **"Grace-Conn"** shall mean W. R. Grace & Co.-Conn., one of the Debtors in these Chapter 11 Cases.

114. **"Grace New York"** shall mean W.R. Grace & Co., a New York corporation, now known as FMCH (taxpayer identification number 13-3461988).

115. **"Grace New York Group"** shall mean that group of corporations, including Grace-Conn and Sealed Air, that were members through September 29, 1996 or December 31, 1996, as applicable, of the affiliated group of corporations within the meaning of Section 1504 of the IRC, and the Treasury Regulations thereunder, of which Grace New York was the Common Parent, including, with respect to FSA Taxes of other jurisdictions (domestic or foreign), that group of corporations which included Grace New York or one or more of the members of the Grace New York Group with respect to a Consolidated Tax Return.

116. **"Grace-Related Claim"** shall mean, collectively, all claims (including unknown claims), demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, direct or indirect, whether concealed or hidden, from the beginning of time up to and including the date on which the Fresenius Payment is made to the Asbestos Trust, asserted or that might have been asserted (including claims for fraudulent conveyance, successor liability, piercing of the corporate veil, negligence, gross negligence, professional negligence, breach of duty of care, breach of loyalty, breach of duty of candor, fraud, breach of fiduciary duty, mismanagement, corporate waste, breach of contract, negligent misrepresentation, contribution, indemnification, any other common law or equitable claims, and violations of any state or federal statutes, rules or regulations), which are either Asbestos Claims or ZAI Claims or that are based upon or arise out of the NMC Transaction, or the conduct or operations of any business or operations of Grace Conn and its parents or subsidiaries at any time (other than the NMC Business) under environmental law, but not including any claims based on or arising out of the conduct or operations of the NMC Business or any act or omission of the Fresenius Indemnified Parties in connection with the operation of the NMC Business.

117. **"Holder"** shall mean any Entity holding any Plan Claim or Equity Interest and, with respect to a vote on the Plan, shall mean the beneficial holders on the Voting Record

Date or any authorized signatory who has completed and executed a Ballot or on whose behalf a Master Ballot has been properly completed and executed.

118. **"Initial Distribution Date"** shall mean: (i) a date within the first sixty (60) days after the Effective Date selected by the Reorganized Debtors, or (ii) such later date as the Bankruptcy Court may establish, upon request by the Reorganized Debtors, for cause shown.

119. **"Intercompany Claim"** shall mean: (a) any Claim that arose prior to the Effective Date by: (i) any Debtor against any other Debtor, or (ii) a Non-Debtor Affiliate against any Debtor; or (b) any claim that arose prior to the Effective Date by any Debtor against any Non-Debtor Affiliate.

120. **"Interest Allocation Percentage"** shall mean the result of (A) Total Distributable Value <u>minus</u> Aggregate Principal Claims Amount <u>divided by</u> (B) the aggregate amount of all post-petition interest determined by the Bankruptcy Court in accordance with applicable law to be payable in respect of Asbestos PI Claims, Asbestos PD Claims, General Unsecured Claims, and Environmental Claims, respectively; *provided however* that if the result of the foregoing is greater than 1, the Interest Allocation Percentage shall be 1.

121. **"IRC"** shall mean the Internal Revenue Code of 1986, as amended, and any applicable regulations (including temporary and proposed regulations) promulgated thereunder by the United States Treasury Department.

122. **"IRS"** shall mean the United States Internal Revenue Service.

123. **"March 2003 Bar Date"** shall mean March 31, 2003, the last day for Filing a proof of claim relating to pre-petition (i) Asbestos PD Claims, (ii) non-Asbestos Claims (including all governmental claims, and all derivative asbestos claims and asbestos-related claims for contribution, indemnity, reimbursement or subrogation), and (iii) Asbestos Medical Monitoring Claims.

124. **"March 2003 Bar Date Order"** shall mean the Court's order, dated April 22, 2002, which established the March 2003 Bar Date.

125. **"Master Ballot"** shall mean a Ballot, which is cast by a representative, on behalf of a Holder or Holders of Asbestos Claims or ZAI Claims, pursuant to the terms and guidelines established in the Plan Documents and/or the Confirmation Procedures Order.

126. **"Monokote-3"** or **"MK-3"** shall mean a fireproofing product used on steel structural components to prevent or delay the steel from collapsing in the event of a building fire.

127. **"New Grace"** shall mean W.R. Grace & Co., f/k/a Grace Specialty Chemicals, Inc. (taxpayer identification number 65-0773649).

128. **"New Grace Group"** shall mean that group of corporations, including Grace-Conn (taxpayer identification number 13-5114230) that were, or hereafter become,

members of that affiliated group of corporations under Section 1504 of the IRC, and the Treasury Regulations thereunder, that joined, or hereafter join, in filing a Consolidated Tax Return of which New Grace, or any successor to New Grace, including any reorganized Debtor successor to New Grace, was or is the Common Parent.

129.    **"NMC"** shall mean National Medical Care, Inc. (taxpayer identification number 04-2835488).

130.    **"NMC Business"** shall mean all of the worldwide healthcare business and operations conducted by NMC and the direct and indirect subsidiaries of NMC at any time, whether prior to or after September 29, 1996.

131.    **"NMC Indemnified Taxes"** shall mean all Taxes of or attributable to any Tax Period arising from Tax Items relating to the NMC Business conducted by a member of the FMCH Group (net of benefits from Tax Items relating to the NMC Business from one or more Tax Periods not previously paid to, or applied for the benefit of, any member of the FMCH Group) which have not previously been paid to (i) one of the Estate Parties, (ii) Grace New York prior to the NMC Transaction, or (iii) the applicable tax authority, by any member of the FMCH Group.

132.    **"NMC Transaction"** shall mean the series of transactions that became effective on September 27 – 30, 1996, whereby, *inter alia*, NMC distributed approximately $2.3 billion in cash and assumed debt to Grace-Conn; (ii) Grace-Conn distributed 100% of the common shares of NMC stock to Grace-New York; (iii) Grace New York contributed 100% of the common shares of Grace-Conn stock to Sealed Air Corporation; (iv) Grace New York distributed 100% of the common shares of Sealed Air Corporation stock to its shareholders; and (v) Grace New York merged with a subsidiary of Fresenius Medical Care AG, all of which are more fully described in that certain Distribution Agreement dated as of February 4, 1996, among Grace New York, Grace-Conn and Fresenius AG, and that certain Contribution Agreement dated as of February 4, 1996, among Fresenius AG, Sterilpharma GmbH and Grace-Conn.

133.    **"Non-Debtor Affiliate"** shall mean each of the Entities designated as such in Exhibit 133 in the Exhibit Book.

134.    **"Non-Settling Asbestos Insurance Company"** shall mean any Asbestos Insurance Entity that is not a Resolved Asbestos Insurance Company or a Settled Asbestos Insurance Company.

135.    **"Parent"** shall mean W. R. Grace & Co., a Delaware corporation, the first named Debtor in the caption of the Chapter 11 Cases and ultimate parent holding company of all of the other Debtors and Non-Debtor Affiliates.

136.    **"Parent Common Stock"** shall mean the common stock, par value $0.01 per share, of the Parent or, if after the Effective Date, of the Reorganized Parent.

137.    **"PBGC"** shall have the meaning set forth in Section 8.1.4 of the Plan.

138.   **"PD Reserve"** shall have the meaning set forth in Section 3.1.8(b)(i)(B) of the Plan.

139.   **"Pension Plans"** shall have the meaning set forth in Section 8.1.4 of the Plan.

140.   **"Petition Date"** shall mean April 2, 2001, the date on which the Debtors Filed their petitions for relief commencing the Chapter 11 Cases.

141.   **"Plaintiffs"** means the Asbestos PI Committee and the Asbestos PD Committee, suing on behalf of the Chapter 11 Bankruptcy Estate of W.R. Grace & Co.

142.   **"Plan**" shall mean the Plan of Reorganization under Chapter 11 of the Bankruptcy Code of the Official Committee of Asbestos Personal Injury Claimants and the Future Claimants' Representative for W.R. Grace & Co., *et al.* dated as of November 5, 2007, either in its present form or as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules to the foregoing, as the same may be in effect from time to time.

143.   **"Plan Claims"** mean, collectively, Administrative Expense Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured Pass-Through Employee Related Claims, Workers' Compensation Claims, Intercompany Claims, Asbestos PI Claims, ZAI Claims, Asbestos PD Claims, General Unsecured Claims and Environmental Claims.

144.   **"Plan Documents"** shall mean the Plan, the Exhibit Book, the Disclosure Statement, the Glossary, and all exhibits in the Exhibit Book, either in their present form or as each may be amended, supplemented, or otherwise modified from time to time.

145.   **"Plan Proponents"** means, collectively, the Asbestos PI Committee and the FCR.

146.   **"Pre-Petition A**sbestos PI Litigation Claim" shall have the meaning set forth in the August Bar Date Order.

147.   **"Priority Claim"** shall mean any Claim (other than an Administrative Expense Claim or Priority Tax Claim) to the extent such Claim is entitled to priority in right of payment under Bankruptcy Code § 507.

148.   **"Priority Tax Claim"** shall mean a Claim that is of a kind specified in Bankruptcy Code §§ 502(i) or 507(a)(8).

149.   **"Professional"** shall mean an Entity (i) employed pursuant to a Final Order in accordance with Bankruptcy Code §§ 327, 328, 363, 524(g)(4)(B)(i) and/or 1103 and to be compensated for services pursuant to Bankruptcy Code §§ 327, 328, 329, 330 and 331, or (ii) for which compensation and reimbursement have been allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b)(4).

150.   **"Pro Rata Portion"** shall mean the proportion that the Allowed Amount of an Allowed Equity Interest in a specified Class bears to the aggregate amount of  all Allowed Amounts for all Equity Interests in such Class.

151.    **"QSF"** shall mean a qualified settlement fund as defined by Treasury Regulation Section 1.468B-1 et seq.

152.    **"Quarterly Tax Distribution Date"** shall mean the first Business Day of each calendar quarter following the Initial Distribution Date; *provided* that the first Quarterly Tax Distribution Date following the Initial Distribution Date shall be no less than ninety (90) days following such Initial Distribution Date.

153.    **"Reducing Liabilities"** shall mean the sum of (i) the Reinstated Environmental Claims, (ii) the Reinstated General Unsecured Claims, and (iii) the Administrative Claims, Priority Claims, Priority Tax Claims, Unsecured Pass-Through Employee Related Claims and ZAI Claims, in each case in the respective aggregate amounts (including all Allowed Amounts and/or all estimated amounts) set forth in the Estimation Materials or, with respect to estimated amounts, in such other amounts as are determined by the Bankruptcy Court.

154.    **"Reinstated Environmental Claims"** shall have the meaning set forth in Section 2.4(b) of the Plan.

155.    **"Reinstated General Unsecured Claims"** shall have the meaning set forth in Section 2.4(a) of the Plan.

156.    **"Reorganized Debtor," "Reorganized Debtors"** or **"Reorganized Grace"** shall mean the Debtor(s) from and after the Effective Date.

157.    **"Reorganized Parent"** shall mean the Parent from and after the Effective Date.

158.    **"Representatives"** shall mean, with respect to any Entity, the past and present directors, officers, employees, accountants (including independent registered public accountants), advisors, attorneys, consultants, or other agents of that Entity, or any other representatives or professionals of that Entity or of any of those directors, officers, employees, accountants (including independent registered public accountants), advisors, attorneys, consultants, or other agents.

159.    **"Resolved Asbestos Insurance Company"** shall mean each of the Asbestos Insurance Entities that has entered into an Asbestos Insurance Settlement Agreement pursuant to which such Asbestos Insurance Entity has fully performed all of its obligations that have arisen or that ever might arise under such Asbestos Insurance Settlement Agreement; *provided* that (i) each such Asbestos Insurance Entity is listed by the Plan Proponents, acting jointly, in Exhibit 159 in the Exhibit Book but only with respect to the portion of the Asbestos Insurance Policy (scheduled immediately therewith in Exhibit 159 in the Exhibit Book) that is affected by any such Asbestos Insurance Settlement Agreement and (ii) the Asbestos Insurance Settlement Agreement entered into by such Asbestos Insurance Entity is determined by the Court and/or the Plan Proponents to be sufficient to justify treating such Asbestos Insurance Company as an Asbestos Protected Party.

160.    **"Retained Causes of Action"** shall mean the actual and potential causes of action that the Reorganized Debtors shall retain under the Plan, on and after the Effective Date,

on behalf of the Debtors, to commence and pursue, as appropriate, in any court or other tribunal including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases, whether such causes of action accrued before or after the Petition Date and whether such causes of action are known or unknown as of any date of determination, including the actions listed in Exhibit 160 included in the Exhibit Book.

161.   **"SA Claims"** means any and all claims, whether direct, indirect, derivative or otherwise, including, without limitation, 'claim' as the term is defined in section 101(5) of the Bankruptcy Code (except that a right to an equitable remedy shall also be considered a claim whether or not the breach gives rise to a right of payment), remedies, or causes of actions, liability, Debts, or Damages, known or unknown, now existing or hereafter arising, that have been, could have been, may be, or could be alleged or asserted now or in the future by any Entity against the Debtors, their predecessors, successors, assigns, or any current or former Affiliate of any of the foregoing, or the Sealed Air Indemnified Parties, of whatsoever kind or nature, whether alleged or asserted or not, whether founded in law, equity, admiralty, tort, contract, statute, or otherwise, and includes, without limitation, demands, liability, suits, judgments, and all legal or equitable theories of recovery whether arising under the common law or any statute, ordinance, or regulation.   Without limiting the generality of the foregoing, SA Claims shall include any and all claims, causes of action, Debts, or Damages under or attributable to:  (i) chapter 5 of the Bankruptcy Code; (ii) successor liability, piercing the corporate veil, alter ego liability, agency liability, transferee liability, or other similar claims or causes of action seeking to hold an Entity liable for the debts or obligations of another Entity; (iii) chapter 176 of title 28 of the United States Code or any other similar statutes; (iv) any debtor-creditor, fraudulent transfer or fraudulent conveyance statutes; or (v) any other similar claims or causes of action (all such SA Claims, causes of action, Debts, or Damages under or attributable to (i) through (v), collectively, the **"SA Successor Claims"**).

162.   **"SA Debtors"** means the Debtors, each of their estates, any trustee or examiner that may be appointed in any of the Debtors' cases under the Bankruptcy Code, and the reorganized Debtors and includes, without limitation, any new corporation or other entity to which the stock or the assets of any of the Debtors or any combination thereof, are transferred pursuant to the Plan (other than the Asbestos Trust, or an unrelated third-party that has purchased assets from a Debtor pursuant to section 363 of the Bankruptcy Code).

163.   **"SA Non-Debtor Affiliates"** means the Affiliates of the SA Debtors that are not debtors or debtors in possession under the Bankruptcy Code.

164.   **"SA Successor Claims"** shall have the meaning set forth in the definition of SA Claims.

165.   **"Schedules"** shall mean the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors in Possession with the Bankruptcy Court, as required by Bankruptcy Code § 521 and the Bankruptcy Rules, as such schedules and statements may be amended by the Debtors in Possession from time to time in accordance with Bankruptcy Rule 1007.

166. **"Sealed Air"** shall mean Sealed Air Corporation and Cryovac, Inc.

167. **"Sealed Air Common Stock"** shall mean the voting common stock, par value of $0.10 per share, of Sealed Air.

168. **"Sealed Air/Grace Group"** shall mean the group of corporations, including but not limited to Cryovac, Inc., that were from on or about September 29, 1996, or hereafter become, members of the affiliated group of corporations under Section 1504 of the IRC, and the Treasury Regulations thereunder, that joined, or hereafter join, in filing a Consolidated Tax Return of which Sealed Air Corporation, or any successor to Sealed Air Corporation, was or is the Common Parent.

169. **"Sealed Air Indemnified Parties"** shall mean Sealed Air Corporation, Cryovac, Inc. and all of their parent corporations, subsidiary corporations, joint ventures, Affiliates, and sister corporations, and any and all of their past, present and future agents, servants, officers, directors, employees, successors, assigns, heirs, executors, administrators, legal representatives, beneficiaries, insurers (but solely to the extent of coverage procured by Sealed Air Corporation (after March 31, 1998) or Cryovac, Inc. (after such date) of any liabilities of Sealed Air Corporation or Cryovac, Inc. for Asbestos-Related Claims), or any of them, including any Entity acting on behalf of or at the direction of any them, but specifically excluding (i) the Debtors, (ii) all Non-Debtor Affiliates, (iii) Fresenius (to the extent of any and all SA Claims, Damages or Debts arising out of the Fresenius Transaction, and (iv) any and all insurers of the SA Debtors or the SA Non-Debtor Affiliates to the extent that they have provided coverage for Asbestos-Related Claims now or hereafter asserted or which could have been asserted at any time against the SA Debtors or the SA Non-Debtor Affiliates.

170. **"Sealed Air Payment"** shall mean the payment delivered, on the Effective Date, by Cryovac, Inc. to the Asbestos Trust pursuant to the terms of, and subject to the conditions set forth in, the Sealed Air Settlement Agreement. The Sealed Air Payment shall consist of: (i) five hundred twelve million five hundred thousand dollars ($512,500,000) in Cash, plus interest thereon from December 21, 2002 until the Effective Date, at a rate of 5.5% per annum compounded annually and (ii) eighteen million (18,000,000) shares of Sealed Air Common Stock (as adjusted for a two-for-one stock split on March 16, 2007, and subject to further adjustment as provided in the Sealed Air Settlement Agreement).

171. **"Sealed Air Payment Amount"** shall mean the aggregate dollar amount of the Sealed Air Payment calculated as of the Effective Date. For purposes of determining such aggregate dollar amount, the amount attributable to the Sealed Air Common Stock included in the Sealed Air Payment shall be determined by multiplying the number of shares of such Sealed Air Common Stock by an amount per share equal to the average of the closing prices on The New York Stock Exchange for the trading days within the thirty (30) calendar days immediately preceding the Effective Date.

172. **"Sealed Air Settlement Agreement"** shall mean that certain agreement, included as Exhibit 172 in the Exhibit Book, dated November 10, 2003 and Filed with the

Bankruptcy Court on November 26, 2003, as amended to address the Debtors' objections thereto, or otherwise.

173. **"Sealed Air Settlement Order"** shall mean the Order Approving, Authorizing, and Implementing Settlement Agreement By and Among the Plaintiffs, Sealed Air Corporation and Cryovac, Inc. entered by the Bankruptcy Court on June 27, 2005, included as part of Exhibit 172 in the Exhibit Book.

174. **"SEC"** shall mean the United States Securities and Exchange Commission.

175. **"Secured Claim"** shall mean a Claim that is: (i) secured by a lien (as such term is defined in Bankruptcy Code § 101(37)) on property in which the Debtors have an interest, which lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order, or (ii) entitled to setoff under Bankruptcy Code § 553, to the extent of (A) the value of the Claimant's interest in the Debtor's interest in such property or (B) the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code § 506(a).

176. **"Securities Act"** shall mean the Securities Act of 1933, as amended.

177. **"Settled Asbestos Insurance Company"** shall mean any Asbestos Insurance Entity (other than a Resolved Asbestos Insurance Company) that has entered into an Asbestos Insurance Settlement Agreement as of the Effective Date, pursuant to which such Asbestos Insurance Entity must still perform its obligations under such Asbestos Insurance Settlement Agreement; *provided* that (i) each such Asbestos Insurance Entity is listed by the Plan Proponents, acting jointly, in Exhibit 177 in the Exhibit Book but only with respect to any Asbestos Insurance Policy scheduled immediately therewith and (ii) the Asbestos Insurance Settlement Agreement entered into by such Asbestos Insurance Entity is determined by the Court and/or the Plan Proponents to be sufficient to justify treating such Asbestos Insurance Company as an Asbestos Protected Party.

178. **"Successor Claims"** shall mean any of the SA Successor Claims and/or the Grace-Related Claims.

179. **"TAC"** shall mean the Trust Advisory Committee.

180. **"Tax"** or **"Taxes"** means all taxes, customs, duties, levies, fees, tariffs, imports, deficiencies, or other charges or assessments of any kind whatsoever, including all net income, gross income, capital gains, gross receipt, property, franchise, sales, use, excise, withholding, payroll, employment, social security, worker's compensation, unemployment, occupation, severance, capital stock, ad valorem, value added, transfer, gains, profits, net worth, asset, transaction, business consumption or other taxes, and any interest, penalties, fines, additions to tax or additional amounts with respect thereto, imposed by any governmental authority (whether domestic or foreign).

181. **"Tax Item"** shall mean any item of income, gain, loss, deduction, credit, provisions for reserves, recapture of credit, net operating loss, net capital loss, tax credit, sales,

revenues, property or asset values, capital or any other item which increases or decreases FSA Taxes paid or payable, including an adjustment under Code Section 481 (or comparable provisions of the FSA Tax law of any other jurisdiction (domestic or foreign)) resulting from a change in accounting method, the allowance or disallowance in whole or in part of, or assessment with respect to, a tentative allowance of refund claimed on Form 1139, the allowance or disallowance in whole or in part of a net operating loss, net capital loss or tax credit claimed on a Tax Return, an amended Tax Return or claim for refund, or an adjustment attributable to a quick refund of overpayment of estimated tax.

182. **"Tax Period"** shall mean any period for, or with respect to, which a Tax Return is or has been filed, is required to be filed or may be filed.

183. **"Tax Return"** shall mean any return, filing, questionnaire, information return or other document required or permitted to be filed, including requests for extensions of time, filings made with estimated tax payments, claims for refund, Forms 1139 and amended returns, that has been, or hereafter may, be filed for any Tax Period with any tax authority (whether domestic or foreign) in connection with any FSA Tax (whether or not a payment is required to be made, or an overpayment, refund, or credit may be allowed, with respect to such filing).

184. **"TDP"** shall mean the Trust Distribution Procedures.

185. **"Total Distributable Value"** shall mean the result obtained from (A) the sum of (i) the Enterprise Value, (ii) Excess Cash, (iii) the Sealed Air Payment Amount, (iv) the Asbestos PI Insurance Rights Value, and (v) the Asbestos PD Insurance Rights Value minus (B) the sum of (i) the principal amount drawn under the Exit Financing plus (ii) the Reducing Liabilities.

186. **"Trust Advisory Committee"** shall mean the Trust Advisory Committee established pursuant to the terms of the Plan and having the powers, duties and obligations set forth in the Asbestos Trust Agreement.

187. **"Trust Causes of Action"** shall mean any and all of the actions, claims, rights, defenses, counterclaims, suits and causes of action of the Debtors, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction attributable to: (a) all defenses to any Asbestos PI Claim, (b) with respect to any Asbestos PI Claim, all rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted, and (c) subject to the provisions of the Plan, any other claims or rights with respect to Asbestos PI Claims that the Debtors would have had under applicable law if the Chapter 11 Cases had not occurred and the holder of such Asbestos PI Claim had asserted it by initiating civil litigation against any such Debtor. Notwithstanding the foregoing, Asbestos Trust Assets and Trust Causes of Action shall not include any claim, cause of action, or right of the Debtors or any of them, under the laws of any jurisdiction, for reimbursement, indemnity, contribution, breach of contract or otherwise arising from or based on any

payments made by the Debtors on account of Asbestos PI Claims prior to the Petition Date.

188. **"Trust Distribution Procedures"** shall mean the procedures, in the form included as Exhibit 188 in the Exhibit Book, as to be implemented by the Trustees pursuant to the terms and conditions of the Plan and the Asbestos Trust Agreement, to liquidate, determine, and pay (if entitled to payment) Asbestos PI Claims as and to the extent set forth in such procedures.

189. "**Trustee**" shall mean any individual confirmed by the Court to serve as a trustee of the Asbestos Trust, pursuant to the terms of the Plan, the Confirmation Order and the Asbestos Trust Agreement, or who subsequently may be appointed pursuant to the terms of the Asbestos Trust Agreement.

190. **"United States Trustee"** shall mean the Office of the United States Trustee for the District of Delaware.

191. "**Unliquidated Claim**" shall mean: (i) any Plan Claim (other than an Asbestos PI Claim), the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be fixed, or (ii) any Plan Claim (other than an Asbestos PI Claim) for which no Allowed Amount has been determined.

192. **"Unresolved Asbestos PD Claims"** shall have the meaning set forth in Section 3.1.8(b)(i)(B) of the Plan.

193. **"Unresolved Environmental Claims"** shall have the meaning set forth in Section 3.1.10(b)(i)(B) of the Plan.

194. **"Unsecured Creditors' Committee"** shall mean the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Chapter 11 Cases pursuant to Bankruptcy Code § 1102.

195. **"Unsecured Pass-Through Employee Related Claims"** shall mean all Claims (including accrued but unpaid pension Claims from the Petition Date) for compensation and benefits related to the Debtors' employment of their current and former employees. Workers' Compensation Claims are not included within the Class of Unsecured Pass-Through Employee Related Claims.

196. **"Voting Agent"** shall mean _____, the party to whom all Ballots and/or Master Ballots should be submitted.

197. **"Voting Deadline"** shall mean, 4:00 P.M. Eastern Time on _____, which is the deadline by which anyone seeking to cast a Ballot or Master Ballot must submit such Ballot and/or Master Ballot, so that it is received by the Voting Agent.

198. **"Voting Record Date"** shall mean two (2) Business Days after the entry of an order by the Bankruptcy Court approving the Disclosure Statement.

199.    **"Workers' Compensation Claims"** shall mean any Claim: (i) for benefits under a state-mandated workers' compensation system, which a past, present, or future employee of the Debtors or their predecessors is receiving, or may in the future have a right to receive and/or (ii) for reimbursement brought by any insurance company or state agency as a result of payments made to or for the benefit of such employees under such a system and fees and expenses incurred under any insurance policies or laws or regulations covering such employee claims.

200.    **"WRG Asbestos Trust"** shall mean the Asbestos Trust.

201.    **"ZAI"** shall mean Zonolite Attic Insulation, which is a loose-fill, non-roll vermiculite product primarily used in home attic insulation, that may contain naturally occurring asbestos.

202.    **"ZAI Claims"** shall mean a Claim, including (i) all related claims, debts, obligations, liabilities or remedies for compensatory (including general, special, and consequential damages) and punitive damages, (ii) all cross-claims, contribution claims, subrogation claims, reimbursement claims or indemnity claims, and (iii) all debts, liabilities, or obligations of one or more of the Debtors (whether or not such Claim, remedy, debt, liability, or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; whether or not the facts of or legal bases therefor are known or unknown; and whether in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement or indemnity, or any other theory of law, equity, or admiralty), for, based on, or arising out of, resulting from, or attributable to, directly or indirectly property damage, including the cost of removal, abatement, or diminution in the value thereof, or environmental damage or economic loss caused or allegedly caused, by the ZAI sold, manufactured, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors (or any of their respective past or present Affiliates, or any of the predecessors of any of the Debtors or any of their respective past or present Affiliates, or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable).  ZAI Claims are not included within the Class of Asbestos PD Claims.

## II.    Other Terms/Interpretation Applicable to all Plan Documents

The provisions of this Section II apply to all Plan Documents (unless specifically provided otherwise in any such Plan Document).

(a)     Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the other genders.

(b)     Any reference in a Plan Document to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular

terms and conditions shall mean that such document shall be substantially in such form or substantially on such terms and conditions.

(c)     Any reference in a Plan Document to an existing document or exhibit in the Exhibit Book filed or to be filed shall mean the document or exhibit as it may have been or may be amended, modified or supplemented.

(d)     Any reference to an Entity as a Holder of a Claim or Plan Claim shall include that Entity's successors, assigns and affiliates.

(f)     The words "herein," "hereof," "hereto," "hereunder," and others of similar import when used in a Plan Document refer to such Plan Document as a whole and not to any particular section, subsection, or clause contained in such Plan Document.

(g)     The word "including" (and, with correlative meaning, the forms of the word "include") shall mean including, without limiting the generality of any description preceding that word; and the words "shall" and "will" are used interchangeably and have the same meaning.

(h)     All references to dollars are to United States dollars.

(i)     An initially capitalized term used herein that is not defined herein shall have the meaning ascribed to such term, if any, in the Bankruptcy Code, unless the context shall otherwise require.

(j)     The descriptive headings contained in Plan Documents are included for convenience of reference only and are not intended to be a part of and shall not affect in any way the meaning or interpretation of Plan Documents.

(k)     All references in Plan Documents to sections, articles, and exhibits are references to sections, articles and exhibits of or to Plan Documents unless otherwise specified.

(l)     In computing any period of time prescribed or allowed by a Plan Document, the provisions of Bankruptcy Rule 9006(a) shall apply.

(m)     The rules of construction set forth in Bankruptcy Code § 102 shall apply.