# Exhibit B

## Matter 51 - Daramic NOR

During this Ninth Application Period, the Firm assisted the Debtor in matters related to the Debtor's efforts to address a release at its former Daramic facility located at its property located in Acton, Massachusetts. Although this property is part of the federal Superfund site known as the Grace Acton Site, the specific release being addressed under this matter was discrete and separate from the issues that caused the property to be listed as a Superfund Site. State and federal agencies thus agreed that this discrete spill from Grace's Daramic operations could be addressed under the supervision of the Massachusetts Department of Environmental Protection ("MassDEP"), pursuant to the Massachusetts Contingency Plan ("MCP"), rather than as part of the federal Superfund cleanup.

Nonetheless, the presence of the Daramic site within the federal Superfund site creates a need for coordination of the two cleanups. In particular, the Daramic cleanup will likely include recording of a notice on the property deed concerning the presence of residual contamination. This deed notice will have to be coordinated with the imposition of institutional controls, including potentially deed notices, on the overall Grace Acton property in connection with the federal Superfund cleanup. During the Ninth Application Period, the Firm advised the Debtor concerning the deed notice, as well as the preparation of the final reports documenting the performance of the cleanup with respect to the Daramic spill.

This work is complex and requires an in-depth knowledge of the history of the Debtor's cleanup of the Grace Acton Site, the facts of the Daramic spill, and the intersection of the federal and state regulatory regimes. The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate, because the legal analysis provided is critical to allowing the Debtor to close out its obligations with respect to the Daramic release.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $510.00 | 7.6 | $ 3,876.00 |
| Jacob N. Polatin | Partner | Real Estate | $510.00 | 1.9 | $   969.00 |
| TOTAL | | | | 9.5 | $ 4,845.00 |

## Matter 88 - Acton Site OU3

During this Ninth Application Period, the Firm assisted the Debtor in matters related to the federal Superfund site known as the Grace Acton Site. On September 30, 2005, the federal Environmental Protection Agency issued the Record of Decision, or ROD, for the cleanup of the so-called Operable Unit 3 (OU-3) at the Site. The ROD identified a remedy for the Site, which EPA will expect the Debtor to implement pursuant to the terms of a consent decree entered into between the Debtor and the United States in 1980.

Although the ROD states the general outline of the remedy, substantial work is required to determine what flexibility the Debtor may have in implementing the remedy. The next step in

this process was the issuance by EPA of a scope of work (SOW), to be performed by the Debtor, to implement the remedy described in the ROD. Following issuance of the SOW, and during the Ninth Application Period, the Firm worked with the Debtor and its environmental consultants in preparing specific work plans in order to comply with and implement the SOW, and in order to make implementation of the remedy as cost-effective as possible. The Firm also provided the Debtor with advice regarding the legal requirements that EPA may impose with respect to the discharge of treated groundwater.

This work is complex and requires an in-depth knowledge of the history of the Debtor's cleanup of the Grace Acton Site, the terms of the 1980 Consent Decree, and the relevant provisions of federal and state Superfund laws. The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate, because the legal analysis provided is critical to cost-effective compliance with the Debtor's obligations under the federal Superfund law and the 1980 Consent Decree.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $510.00 | 3.8 | $ 1,938.00 |
| | | | | | |
| TOTAL | | | | 3.8 | $ 1,938.00 |

## Matter 101 - Bankruptcy Matters

This matter covers preparation of monthly and interim fee applications, as well as the Firm's efforts to obtain Court cost authorization for the Firm to serve as special environmental counsel to Debtor. Foley Hoag's ordinary practice is to exercise billing discretion prior to submitting invoices, and it has done so with respect to each of the invoices it submitted during the Interim Period. To date, none of the interested parties objected to payment on account of any portion of any of those invoices, although they were entitled to do so.

The Firm's application-preparation fee is reasonable in light of the nature and magnitude of the effort involved. For each of those matters, as required by the Local Rules, the Firm submitted detailed billing summaries, and its attorneys prepared narrative descriptions of the work performed.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $510.00 | 1.0 | $    510.00 |
| Adam P. Kahn | Partner | Environmental | $500.00 | 0.7 | $    350.00 |
| Elizabeth A. Rice | Paralegal | Bankruptcy | $190.00 | 0.8 | $    152.00 |
| Elizabeth A. Rice | Paralegal | Bankruptcy | $210.00 | 2.2 | $    462.00 |
| | | | | | |
| TOTAL | | | | 4.7 | $ 1,474.00 |

### Matter 102 - Blackburn and Union Privileges Superfund Site, Walpole, Mass

During this Ninth Application Period, the Firm assisted the Debtor in matters related to the federal Superfund site known as the Blackburn and Union Privileges Superfund Site, in Walpole, Massachusetts. The site has been in industrial use for several hundred years. From approximately 1915 to 1935, it was operated by Multibestos Company, which manufactured products containing asbestos. The stock of Multibestos was purchased by Dewey & Almy in or about 1930. The Debtor purchased the stock of Dewey & Almy in 1954.

The Debtor and other potentially responsible parties have been working with EPA and MassDEP since 1988. In 1992 and 1993, the Debtor performed a cleanup at the Site with respect to asbestos, though other contamination remained. The Site was added to the federal National Priorities List in 1994. the Debtor received a Notice of Potential Liability from EPA in 1998 and a "Special Notice of Responsibility" in 1999. Also in 1999, the Debtor entered into an administrative order with EPA and the Kendall Company, another potentially responsible party. In the order, the Debtor and Kendall each agreed to pay 50% of the costs for performance of the Remedial Investigation / Feasibility Study ("RI/FS") for the Site. After the Debtor filed for reorganization, the Kendall Company continued the RI/FS work without financial participation from the Debtor.

In 2006, EPA announced that it was revisiting the potential risks posed by the presence of asbestos as the Site, including areas with concentrations of asbestos greater than 0.25%, even though the original cleanup was based on a concentration of 1%. EPA has recently indicated that there may be several additional areas of the Site that require remediation for asbestos.

The Firm has assisted the Debtor in analyzing its continuing potential liability for the presence of asbestos, its obligations under agreements entered into prior to the filing for reorganization, and how this Site should be addressed in the contact of broader negotiations with EPA over multiple sites. During this period, the Firm also assisted the Debtor by providing legal review of the technical documents being prepared in connection with the assessment and remedy of the Site, particularly as such documents may affect the allocation of responsibility for cleanup costs between the Debtor and Kendall.

This work is complex and requires an in-depth knowledge of the Superfund law, and applicable regulations governing the cleanup of asbestos. The Firm's efforts on these matters have benefited and will benefit the Debtor's bankruptcy estate, because the legal analysis provided is critical to an effective response to EPA's potential request that more cleanup be performed with respect to asbestos.

| Name of Professional Person | Position | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth D. Jaffe | Partner | Environmental | $510.00 | 13.0 | $ 6,630.00 |
|  |  |  |  |  |  |
| TOTAL |  |  |  | 13.0 | $ 6,630.00 |