## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| **Debtors.** | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FEE APPLICATION OF REED SMITH LLP
## FOR THE TWENTY-FIFTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Interim Fee Application of Reed Smith LLP for the Twenty-Fifth Interim Period.

## BACKGROUND

1.    Reed Smith LLP ("Reed Smith") was retained as special asbestos products liability defense counsel to the Debtors.  In the Application, Reed Smith seeks approval of fees totaling $1,326,314.50 and costs totaling $196,640.15  for its services from April 1, 2007, through June 30, 2007.

2.    In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2006, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330, Issued

January 30, 1996, (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served on Reed Smith an initial report based on our review, and received a response from Reed Smith, portions of which response are quoted herein.

### DISCUSSION

3.      In our initial report, we noted that throughout the application period, various Reed Smith professionals spent a total of 43.9 hours[1] and $7,800.50 on seemingly clerical tasks.  The entries are provided below.

| 04/13/07 | CEC | 3.60 | Assist S. Ament with hearing prep and with compilation of exhibit binders for Product ID hearing. |
| 04/02/07 | SAA | 3.00 | .............; compile and organize replies to summary judgment motions (1.0);.......... |
| 04/02/07 | MED | 3.20 | Compile material needed in preparation of summary judgment hearing (2.4); prepare for and meet with L. Flatley regarding Hearing binders and material used for the Dr. Frank and Dr. Anderson deposition to be compiled and organized for storage (.8). |
| 04/13/07 | SAA | 13.20 | .............; begin preparing hearing binders per Judge Fitzgerald's request (8.0). |
| 04/13/07 | REA | 8.50 | ..............; continue to review claims files, documents for hearing, prepared binders (6.0). |
| 04/14/07 | SAA | 5.00 | Finalize hearing binders and courier seven binders to Judge Fitzgerald per request (4.0);................ |
| 04/17/07 | SAA | 5.10 | .........; create hearing binders for trial (1.50). |

---

[1] Time for this entry was located in the following project categories - (i) Hearings and (ii) Claims Analysis Objection Resolution & Estimation (Asbestos).

| 04/18/07 | SAA | 7.10 | ...........; continue preparation of supplemental hearing binder re: product ID trial and hand deliver to Judge Fitzgerald (1.10);............. |
|---|---|---|---|
| 04/19/07 | SAA | 9.00 | ...........; prepare additional hearing binders and hand deliver to Judge Fitzgerald per request (1.0);........... |
| 04/21/07 | SAA | 2.50 | Continue preparing updated hearing binders for product ID trial (2.30);................ |
| 04/26/07 | MED | 5.70 | Prepare working binder of material needed in preparation of Dr. Hammar's deposition per C. Gatewood's request (4.2);........ |
| 05/08/07 | SAA | 3.40 | ...........; prepare hearing binders (1.0); hand deliver same to Judge Fitzgerald's chambers (.20); prepare hearing binders for counsel (.50). |
| 05/09/07 | SAA | 4.20 | ...........; update hearing binders re: same (.50);.......... |
| 05/10/07 | AKK | 2.70 | Preparation of articles of Dr. Lemen and index of same. |
| 05/21/07 | SAA | 4.20 | ............; review and update hearing binders received from Pachulski re: same (.50);......; hand deliver agenda and hearing binders to Judge Fitzgerald (.10);........... |
| 05/23/07 | SAA | 1.60 | Update agenda and hearing binders (.50);.........; hand deliver updated hearing binders to Judge Fitzgerald per request (.10). |
| 05/24/07 | SAA | 3.40 | ...........; prepare hearing binders for team and opposing counsel (.90);............. |
| 05/25/07 | SAA | 1.50 | .........; e-mails and telephone calls re: amended agenda and updated hearing binders (.50). |
| 05/29/07 | SAA | 3.20 | ............; update binders re: hearing and provide to team (.40); hand deliver updates to Judge Fitzgerald (.10);........ |

This firm has, in other cases for which it has been Auditor, been consistent in recommending that clerical tasks be billed at no more than $80.00 per hour. In re Busy Beaver Bldg. Centers, Inc., 19 F.3d 833, 855 n.34 (3rd Cir. 1994), the Court stated that "the statute [11 U.S.C. 330] plainly specifies

that the type of service performed by a paralegal (including whether it is clerical) affects the rate of compensation, not compensability vel non." Busy Beaver at 849.  While it may be argued that the cited tasks are not strictly clerical, we would maintain that most of the tasks (review of files, preparation of hearing binders, delivery of those binders ) are ministerial, or, at least could have been accomplished by professionals billing at much lower rates.  On the issue of adjusting rates downward for certain tasks, the Third Circuit seems fond, in the bankruptcy context, of quoting its opinion in Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir. 1983)that "[r]outine tasks, if performed by senior partners in large firms, should not be billed at their usual rates.  A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn."  See Zolfo, Cooper & Co.v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 260 (3rd Cir. 1995).  While we realize that these timekeepers are not presented as senior partners nor billed as such, we believe the spirit of the Court's opinion would still apply in this instance.  In keeping with those opinions, we asked the firm to examine the cited entries and to show why time for these tasks should be billed at normal rates.  Reed Smith's response is provided as Response Exhibit 1.  We appreciate the response, and offer no objection to these fees.

4.     We noted five conferences or meetings attended by multiple professionals.  (See Exhibit A.)  We asked Reed Smith to examine the exhibit and in each instance explain the need for each professional's presence and the particular area of expertise each brought to the meeting.  The firm's response is provided as Response Exhibit 2.  We appreciate the response, and offer no objection to these fees.

5.     We noted that on June 7, 2007, LDW spent 1.70 hours for a total fee of $306.00 on travel.  The entry is provided below.

06/07/07     LDW   1.70          Travel to and from property site and provide update regarding

same.

Non-working travel is to be billed at 50% of normal rates.  We asked Reed Smith to explain why the entry should not be reduced by 50%.  Reed Smith responded as follows:

> In Paragraph 5 of the Initial Report, the Fee Auditor noted that on June 7, 2007, paralegal Lynn D. Williams ("LDW") spent 1.70 hours for a total fee of $306.00 on a task that appears to have included non-working travel time, and asked why the entire entry should not be charged at the one-half hourly rate for non-working travel. The entry actually consists of three parts:  (i) non-working travel time spent driving to the property site (.7 hours); (ii) non-working travel time spent driving from the property site to the Reed Smith office (.5 hours); and (iii) time spent doing substantive client work -- reviewing and evaluating the property and reporting these findings to her assigning attorney (.5 hours).  As such, 1.2 hours should have been billed at the non-working travel rate of $90 per hour, one half of Ms. Williams' rate, and the rest billed at Ms. Williams' full rate of $180 per hour -- for a total charge of $198.00.  Reed Smith therefore will not contest a reduction of $108.00 to correct this erroneously entered item.

We appreciate the response and thus recommend a reduction of $108.00 in fees.

## CONCLUSION

6.    Thus we recommend approval of fees totaling $1,326,205.50 ($1,326,314.50 minus $108.00) and costs totaling $196,640.15  for Reed Smith's services from April 1, 2007, through June 30, 2007.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By:_____
           Warren H. Smith
           Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1270
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**


**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document has been served First Class United States mail to the attached service list on this 4th day of December, 2007.


_____
           Warren H. Smith

## SERVICE LIST
Notice Parties

**The Applicant**
Richard Keuler, Esq.
Reed Smith LLP
1201 Market Street, Ste. 1500
Wilmington, DE 19801

Douglas Cameron
Reed Smith LLP
P. O. Box 2009
Pittsburgh, PA 15230-2009

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski, Stang, Ziehl, Young & Jones, P.C.
919 North Market Street, Suite 1600
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
375 Park Avenue
New York, NY 10152-3500

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**
Gary M. Becker
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

Teresa K.D. Currier, Esq.
Buchanan Ingersoll
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
844 King Street, Suite 2311
Wilmington, DE 19801

<u>Exhibit A</u>

1.  On April 9, 2007, five firm members (four Partners and one Paralegal) attended a pre-trial hearing/status conference.  The total time spent including any preparation time was 176.60 hours for a total fee of $90,124.00.

| | | | |
|---|---|---|---|
| 03/29/07 | JJR | 3.00 | Expungement of five California claims and preparation for discovery/trial. |
| 04/02/07 | DEC | 8.90 | ...........; review materials relating to summary judgment argument (1.10). |
| 04/02/07 | LEF | 5.90 | ............; beginning preparation for 4/9/07 oral argument on summary judgment motions (1.6);............. |
| 04/02/07 | TSR | 2.30 | Attention to trial preparation. |
| 04/03/07 | SAA | 0.50 | Meet with T. Rea re: orders to be submitted at 4/9/07 hearing (.10); prepare orders for J. Restivo per request (.40). |
| 04/03/07 | DEC | 9.40 | ...........; review materials for summary judgment argument (1.10);.............. |
| 04/03/07 | LEF | 4.70 | Analysis of proof issues for statute of limitations hearing (1.6); meet with R. Aten regarding proof issues (1.0);......... |
| 04/03/07 | TSR | 8.30 | Trial preparation |
| 04/03/07 | JJR | 3.00 | Prepare for oral argument. |
| 04/04/07 | SAA | 1.00 | Review and organize pleadings for 4/9/07 hearing and provide to D. Cameron and J. Restivo. |
| 04/04/07 | LEF | 7.60 | ............; preparation for summary judgment oral argument (6.1);.......... |
| 04/04/07 | TSR | 4.60 | Trial preparation. |
| 04/04/07 | JJR | 3.50 | Prepare for arguments and status conference. |
| 04/05/07 | DEC | 7.50 | ...........; review materials for summary judgment arguments (2.2);................ |

| 04/05/07 | LEF | 10.30 | ..........; preparation for oral arguments on 4/9/07 (9.9). |
| 04/05/07 | TSR | 7.40 | Attention to summary judgment motions and argument. |
| 04/05/07 | JJR | 6.00 | Prepare summary judgment arguments and pre-trial conference. |
| 04/06/07 | DEC | 8.90 | .........; prepare for summary judgment arguments (4.5);.......... |
| 04/06/07 | LEF | 9.90 | ..........; preparation for 4/9/07 arguments on summary judgment motions (9.3). |
| 04/06/07 | TSR | 8.20 | Preparation for summary judgment argument. |
| 04/07/07 | DEC | 8.70 | Prepare for summary judgment and motion to strike arguments. |
| 04/07/07 | LEF | 5.40 | Preparation for 4/9/07 oral argument on summary judgment motions. |
| 04/07/07 | JJR | 2.50 | Prepare for Summary Judgment Argument and pre-trial conference. |
| 04/08/07 | DEC | 6.70 | Prepare for summary judgment argument (5.00); review and revise objection to motion to strike (0.90); prepare for argument regarding same (0.80). |
| 04/08/07 | LEF | 3.20 | Reviewing outlines in preparation for 4/9/07 oral argument (2.0); further preparation for summary judgment arguments by reviewing outlines of arguments (1.2). |
| 04/08/07 | TSR | 4.70 | Preparation for summary judgment argument. |
| 04/08/07 | JJR | 3.00 | Prepare for oral argument and work on opening statement. |
| 04/09/07 | SAA | 11.00 | .........; prepare for and attend hearing to assist J. Restivo and D. Cameron (10.0);.............. |
| 04/09/07 | DEC | 12.40 | Prepare for (2.5) and attend summary judgment arguments and status conference (8.9);............ |

| | | | |
|---|---|---|---|
| 04/09/07 | LEF | 12.30 | Preparation for summary judgment arguments (2.5); attend summary judgment arguments at bankruptcy court (8.5);........... |
| 04/09/07 | TSR | 11.80 | Prepare for, participate in and follow-up on summary judgment argument. |
| 04/09/07 | JJR | 12.00 | Preparation for and participation in summary judgment/pre-trial hearing on Property Damage Claims, and follow-up on same in post-hearing meetings. |

    2.  On April 23 - 25, 2007, six firm members (four Partners, one Associate and one Paralegal) attended a trial.  The total time spent including any preparation time was 446.80 hours for a total fee of $219,715.50.

| | | | |
|---|---|---|---|
| 04/02/07 | SAA | 8.30 | ..........; conference with L. Flatley re preparation for hearings (.5). |
| 04/03/07 | REA | 7.50 | Conference call with L. Flatley re: hearing preparation (1.2);............ |
| 04/09/07 | REA | 6.50 | ..........; review claims files in preparation for hearing (1.3). |
| 04/10/07 | REA | 9.20 | Team meeting (1.8);.........; conference with L. Flatley reviewing files and preparing for hearing (.8);.........; review claims forms in preparation for hearing (2.8). |
| 04/10/07 | DEC | 9.20 | Prepare for (1.10) and attend Grace team meeting regarding court deadlines and strategy session for product ID hearings (1.60);............ |
| 04/10/07 | LEF | 8.90 | .........; preparation for team meeting (1.2); team meeting regarding follow-up for product ID trial and follow-up on meeting (1.7); preparation for product ID trial (3.6); meet with R. Aten regarding buildings being identified (0.7). |
| 04/10/07 | TSR | 8.40 | Trial preparation. |
| 04/10/07 | JJR | 7.80 | Planning meeting (1.7);..........; begin preparing for P. D. claims trial scheduled for April 23 - 25 (4.7). |
| 04/11/07 | SAA | 3.20 | ........; begin compiling exhibits per J. Restivo request (2.0);.............. |

| 04/11/07 | REA | 6.80 | Review claims forms in preparation of hearing (3.4);............. |
| 04/11/07 | DEC | 8.60 | Attention to Product ID hearing exhibits (2.80);........; attention to Product ID trial brief (1.10); multiple calls regarding trial preparation (0.90); attention to list of claims for hearing and multiple e-mails regarding same (1.80);.............. |
| 04/11/07 | LEF | 10.50 | ........; begin preparation for fact witness meetings and testimony for product identification hearing (7.3);........... |
| 04/11/07 | TSR | 3.60 | Trial preparation |
| 04/11/07 | JJR | 4.00 | Trial preparation. |
| 04/12/07 | SAA | 6.00 | Continue assisting team with PD claim issues and compiling exhibits (4.0);...........; begin drafting exhibit list of D. Cameron (1.0). |
| 04/12/07 | REA | 5.50 | Review claims files in preparation for Product ID hearing (3.4);............... |
| 04/12/07 | DEC | 10.30 | Preparation, review and revisions to witness list, witness disclosures, trial brief, list of claims for trial (5.90); review exhibits for use with expert witness (1.70); multiple calls and e-mails regarding same (0.60); multiple e-mails with client and Grace team regarding product ID trial (1.40); meet with J. Restivo regarding same (0.70). |
| 04/12/07 | TSR | 6.70 | Trial preparation |
| 04/12/07 | JJR | 6.00 | Trial preparation |
| 04/13/07 | DEC | 14.40 | Continued preparation review and revisions to product ID hearing order of claims to be adjudicated, exhibit list, witness disclosure, witness list, and trial brief for filing (10.50); multiple e-mails regarding same (1.20); meet with J. Restivo regarding same (0.80); telephone call with R. Finke and expert regarding same (0.60); meet with S. Ament regarding same (0.70);.............. |
| 04/13/07 | TSR | 0.50 | Preparation for trial. |

| 04/13/07 | JJR | 4.60 | Prepare to file materials for product identification hearing. |
| 04/14/07 | DEC | 3.10 | Review indices and materials for court binders (0.9);.......... |
| 04/14/07 | LEF | 4.20 | Review documents in preparation for witness meetings and 4/23 hearing (3.5);............ |
| 04/15/07 | DEC | 4.30 | Review materials for product ID hearing preparation (1.5);.......... |
| 04/16/07 | REA | 7.80 | ........; conference with L. Flatley re: witness preparation for 4/23 hearing (.7);..........; miscellaneous actions re: preparation for hearing (1.9). |
| 04/16/07 | DEC | 8.90 | Prepare for (0.80) and attend team strategy meeting (1.40); review Canadian claim materials for product ID objections and hearing preparation (3.10);............. |
| 04/16/07 | LEF | 10.60 | Hearing preparation (0.80);.......; preparation for 4/23-4/25 hearing on product ID (2.2); team meeting and follow-up on it (1.2); hearing and 4/17 witness meetings (5.8). |
| 04/16/07 | TSR | 6.10 | Trial preparation |
| 04/16/07 | JJR | 6.50 | Trial preparation |
| 04/17/07 | SAA | 5.10 | .............; begin compiling objections to exhibits and declarations for hearing binders (1.0);.......... |
| 04/17/07 | DEC | 10.70 | Additional trial preparation work regarding product ID issues (3.10); review deposition transcript of D. Pinchin regarding product ID issues for cross and motion (1.80); review claimants' supplemental filings (1.10); review documents for objections (0.90); multiple product ID issues (1.20); review risk assessment issues and calls with counsel (2.10);attention to direct exam outline (0.50). |
| 04/17/07 | LEF | 12.10 | Preparation for witness meetings on trip to Philadelphia, including reviewing claimants' trial briefs (2.80); meetings with W. Sparks and fact witnesses in Philadelphia (7.00); follow up on meetings and numerous e-mails and calls on various issues (2.30). |

| 04/17/07 | TSR | 6.30 | Trial preparation |
| 04/17/07 | JJR | 9.00 | Trial preparation work. |
| 04/18/07 | REA | 4.50 | ........; miscellaneous items re preparation for product ID hearing (1.2). |
| 04/18/07 | DEC | 8.50 | Trial preparation for product ID hearing (7.7);........... |
| 04/18/07 | LEF | 9.50 | Revisions to witness outlines for 4/23 hearing (2.10); meeting in Philadelphia with W. Sparks and fact witnesses (5.00); e-mails and calls re: plans for 4/20 pretrial conference (1.20); preparation for 4/23 hearing (1.2). |
| 04/18/07 | TSR | 7.20 | Trial preparation |
| 04/18/07 | JJR | 9.60 | Trial preparation work. |
| 04/19/07 | SAA | 9.00 | ..........; assist team with trial preparation (5.50);.........; begin compiling exhibits for hearing binder relating to remaining claims to be tried (1.0). |
| 04/19/07 | REA | 5.20 | Continue to prepare for product ID hearing. |
| 04/19/07 | DEC | 9.90 | ..........; multiple meetings with J. Restivo and T. Rea regarding product ID issues (1.2); trial preparation for 4/23-25/07 hearing (3.9);.................... |
| 04/19/07 | LEF | 12.50 | Review various case materials after Philadelphia trip (.50);.........; follow-up with R. Aten and others re: trial preparation (.70); preparing witness outlines and exhibits for 4/23 hearing (6.80). |
| 04/19/07 | TSR | 8.70 | Trail preparation. |
| 04/19/07 | JJR | 9.50 | ..........; trial preparation (3.5). |
| 04/20/07 | SAA | 7.00 | Continue assisting team with trial preparation (5.50); continue compiling exhibits for hearing binders re: remaining claims to be tried (1.0);.............. |
| 04/20/07 | REA | 6.80 | Continue to prepare for product ID hearing |

| | | | |
|---|---|---|---|
| 04/20/07 | DEC | 12.10 | Prepare for (1.3) and meet with expert witness regarding preparation for hearing (2.7); multiple calls and e-mails with claimants' counsel regarding open issues for hearing (1.2); trial preparation (3.8); meet with J. Restivo, T. Rea, and L. Flatley on various issues regarding trial preparation (1.9); telephone call with R. Finke regarding same (0.4);.......... |
| 04/20/07 | LEF | 11.10 | Preparation for 4/23 hearing (1.40); meeting with J. Restivo and D. Cameron and follow up (.80); preparation for 4/23 hearing including witness outline exhibits preparation, etc. (8.90). |
| 04/20/07 | TSR | 6.40 | Trial preparation |
| 04/20/07 | JJR | 9.00 | Trial preparation, including meeting with Dr. Lee and telephone call with R. Beber |
| 04/21/07 | DEC | 3.90 | Trial preparation for 4/23 hearing (2.70); telephone call with J. Restivo regarding same (0.30); e-mails regarding same (0.90). |
| 04/21/07 | LEF | 3.20 | Preparation for 4/23 hearing, including outline for oral argument and outline for possible fact witness cross-examination. |
| 04/21/07 | JJR | 3.30 | Trial preparation, including meeting with R. Lee |
| 04/22/07 | REA | 5.60 | Preparation for product ID trial. |
| 04/22/07 | DEC | 5.50 | Trial preparation (3.2); prepare for and meet with expert witness (0.8); meet with J. Restivo regarding same (0.6);.......... |
| 04/22/07 | LEF | 7.80 | ..........; review and revise witness outline and argument outline (2.80); meeting with W. Sparks, R. Aten and witnesses (3.50); revising witness outlines and organizing (1.10). |
| 04/23/07 | SAA | 9.50 | Continue assisting team with preparation for product ID trial (2.50); attend trial and assist team (7.0). |

| 04/23/07 | REA | 9.00 | Preparation for trial (1.8); attendance at product ID trial before Judge Fitzgerald (7.2) |
| 04/23/07 | DEC | 13.70 | Prepare for (2.3) and attend product ID trial (8.1); meet with Grace team following hearing (0.9); prepare for day two of hearing (2.4). |
| 04/23/07 | LEF | 12.20 | Preparation for T. Egan testimony and argument about it (2.20); with T. Egan and W. Sparks re: testimony (.20); at court for hearing before Judge Fitzgerald (3.50); with T. Egan and W. Sparks during lunch break (1.00); at court for hearing before Judge Fitzgerald (4.20); team meeting and catching up (.80); call with A. Kearse and follow-up (.30). |
| 04/23/07 | TSR | 10.90 | Product identification trial. |
| 04/23/07 | JJR | 10.50 | Prepare for, attend and follow-up on issues for property damage trial. |
| 04/24/07 | REA | 8.00 | Continue assisting team with trial preparation (3.0); attend trial and assist team in court (5.0). |
| 04/24/07 | LEF | 8.10 | Prepare for hearing (.90); attending hearing before Judge Fitzgerald at bankruptcy court (5.50); follow-up on hearing, including team meeting and reorganizing (1.70). |
| 04/24/07 | TSR | 8.80 | Attend product identification hearing and follow-up |
| 04/24/07 | JJR | 10.00 | Prepare for, attend and follow-up on issues for property damage trial |
| 04/25/07 | SAA | 3.40 | Continue assisting team with trial preparation (2.0);.......... |
| 04/25/07 | DEC | 5.30 | Prepare for (0.9) and attend argument relating to product ID objections (1.2);.................. |
| 04/25/07 | JJR | 7.00 | Preparation for and argument re: waiver (5.0);............. |

3. On April 19, 2007, DEC, LEF and JJR (all Partners) attended a pre-trial conference. The total time spent including any preparation time was 10.00 hours for a total fee of $6,040.50.

| 04/19/07 | DEC | 9.90 | Prepare for (0.8) and attend pretrial conference (1.1);........ |

| | | | |
|---|---|---|---|
| 04/19/07 | LEF | 12.50 | ...........; preparation for pretrial conference (1.40);.........; at pretrial conference and follow-up on it (1.70);............. |
| 04/19/07 | JJR | 9.50 | Prepare for and attend Status Conference (5.0);............. |

    4.  On May 30, 2007, four firm members (three Partners and one Legal Assistant) attended a hearing.  The total time spent including any preparation time was 68.90 hours[2] for a total fee of $39,259.50.

| | | | |
|---|---|---|---|
| 05/25/07 | DEC | 0.80 | Attention to agenda and binders for 5/30 hearing. |
| 05/26/07 | DEC | 1.00 | Review materials in preparation for hearing. |
| 05/29/07 | DEC | 0.90 | E-mails regarding hearing and agenda issues (0.3); review revised agendas (0.2); review binders (0.4). |
| 05/16/07 | JJR | 4.80 | Trial preparation. |
| 05/21/07 | JJR | 1.00 | Strategy meeting. |
| 05/22/07 | JJR | 5.40 | Prepare for 5/30 hearing and P.D. trials (4.5);............. |
| 05/23/07 | JJR | 6.00 | .............; prepare for 5/30 Hearing and subsequent trials (3.5). |
| 05/24/07 | DEC | 6.40 | ...........; prepare for (0.8) and meet with J. Restivo regarding Motion for Leave to Amend argument preparation (0.9);.........; attention to statute of limitations trial issues (0.9). |
| 05/24/07 | JJR | 3.00 | Prepare oral argument (2.1); meeting with D. Cameron (0.3);................. |
| 05/25/07 | SAA | 1.50 | Assist team re: 5/30/07 hearing preparation (.50); e-mails and telephone calls re: same (.50):............ |
| 05/25/07 | DEC | 4.60 | .............; review materials for 5/30 argument (1.2). |
| 05/25/07 | JJR | 1.50 | Argument planning. |

---

[2] Time for this entry was located in the following project categories - (i) Hearings and (ii) Claim Analysis Objection Resolution & Estimation (Asbestos).

| 05/27/07 | DEC | 1.00 | Attention to statute of limitations trial issues. |
|---|---|---|---|
| 05/28/07 | DEC | 4.10 | Review and revise outline for 5/30 oral argument (1.4); review Pinchin testimony and prepare summaries of testimony regarding same (1.3); attention to statute of limitations issues (0.8); attention to expert report issues (0.6). |
| 05/29/07 | DEC | 6.60 | Prepare for (0.8) and attend meeting with trial team regarding hearing preparation and trial/strategy issues (1.1);...........; meet with J. Restivo regarding 5/30 argument (0.9); review deposition testimony and claims files regarding same (1.8); prepare for and participate in call regarding statute of limitations trial preparation (0.9);........... |
| 05/29/07 | LEF | 6.10 | Review expert report and analysis of statute of limitations trial issues (2.6); team meeting and follow-up (1.0); preparation for conference call regarding statute of limitations issues (0.8); conference call regarding statute of limitations trial issues and follow-up (1.7). |
| 05/29/07 | JJR | 4.50 | Planning meeting (1.5); meeting with D. Cameron (1.0); prepare for Hearing (2.0). |
| 05/30/07 | SAA | 3.80 | Assist team with hearing preparation (1.0); attend beginning portion of hearing and assist team (2.50);........... |
| 05/320/07 | DEC | 8.20 | Prepare for (0.9) and attend hearing on Motion to Amend (5.0);........... |
| 05/30/07 | LEF | 8.50 | .................; review materials on Pacific Freeholds case (0.9); attending hearing at court on waiver and scheduling issues and follow-up with R. Finke, J. Restivo, D. Cameron and T. Rea (6.2);................. |
| 05/30/07 | JJR | 6.00 | Prepare for and P.D. Hearing. |

5. On May 25, 2007, four firm members (two Partners and two Associates) participated in a conference call. The total time spent including any preparation time was 7.00 hours for a total fee of $3,009.00.

| 05/25/07 | REA | 4.60 | Call with L. Flatley, D. Biderman el al. re: Pacific Freeholds (1.8);.......... |
|---|---|---|---|
| 05/25/07 | DEC | 4.60 | Prepare for (0.8) and participate in conference call with counsel and client regarding Pacific Freehold's statute of limitations trial (1.1);.......... |
| 05/25/07 | LEF | 4.50 | ..............; preparation for conference call (0.3); conference call regarding preparation for 6/26 statute of limitations hearing and short follow-up on it (1.5);........... |
| 05/25/07 | DDR | 3.10 | Phone conference with L. Flatley, R. Aten, and client re case strategy (1.50);.............. |

Response Exhibit 1

To provide a proper context for this response, it is important to note that all of the items in the Initial Report relate to Reed Smith's work as lead counsel with respect to the adjudication of the Debtors' objections to the asbestos property damage claims filed against them in this bankruptcy proceeding. On October 13, 2006, the Bankruptcy Court entered a scheduling order that established a schedule for the adjudication of those objections. See Amended Order Setting Various Deadlines Regarding Objections to Asbestos Property Damage Claims [Doc. No. 13406] (the "CMO"). Pursuant to the CMO, Debtors objections were scheduled to be adjudicated in three hearings, all in Pittsburgh: (i) a "dust methodology" hearing on January 29-31, 2007; (ii) a hearing on product identification, limitations periods and "Libby issue" objections on April 23-25, 2007; and (iii) a "lack of hazard" objections hearing on May 30-31, 2007. Each of these three phases had its own schedule that included deadlines for the filing of expert reports and rebuttal reports, fact and expert depositions, pretrial conferences, exhibit exchanges, pretrial motions and trial briefs, and also included schedules for the submission of summary judgment motions. At the time the CMO was entered, there were over 650 pending asbestos property damage claims.

Pursuant to the CMO, summary judgment motions on the product identification, limitations period and "Libby issue" objections were due to be filed on February 16, 2007, with responses due on March 19, 2007, replies due on March 23, 2007, and oral argument on April 9, 2007 in Pittsburgh. The trial on these objections was scheduled to take place on April 23-25, 2007. On or before February 16, 2007, multiple motions for summary judgment were filed (the Debtors filed ten (10), and one claimant filed one). As a result of ongoing settlement negotiations, a couple of the motions were continued past the April 9, 2007 argument date while these negotiations continued.

However, there were eight (8) motions for summary judgment scheduled for argument on April 9, 2007.  Those motions, which are set forth on Exhibit A hereto, addressed 298 of the more than 650 then-pending asbestos-property damage claims.

II.    **Questions Regarding "Seemingly Clerical Tasks" by Reed Smith Professionals**

In Paragraph 3 of the Initial Report, the Fee Auditor noted a number of time entries in which various Reed Smith professionals spent a total of 43.9 hours, for a total fee of $7,800.50, on "seemingly clerical tasks," and inquired why these tasks should not be billed at a clerical rate of no more than $80.00 per hour.  The preparation of hearing binders and binders of materials for use by attorneys at depositions involve more than simple "clerical tasks," however.  Rather, it requires a familiarity with the Court's requirements for hearing binders -- both as to form and substance -- and a familiarity with the matters at issue in a particular hearing, or with the matters that are the subject of the particular deposition.

With respect to preparation of hearing binders, the entries of paralegal Sharon A. Ament ("SAA") reflect her work reviewing and analyzing documents to be included within binders as instructed by lawyers and pursuant to the direction of the Court and its staff.  These hearing binders are assembled chiefly at the instruction of the Bankruptcy Court, and the Debtors understand that the Court relies heavily on these binders to prepare for hearings and as a resource for assistance during the hearings themselves.  It is solely the responsibility of the Debtors, and not of any other party, to prepare these binders for the Court, although all documents relevant to the issues on the hearing agenda (whether submitted by the Debtors or other parties) are required to be in those binders.

The magnitude of this task is sometimes monumental.  A good example is the work

performed for the April 23-25 hearing on product identification objections. Ms. Ament and other paralegals had to access and download documents from PACER, review them to determine proper order and to ensure that all appropriate attachments were included in the binders, and create indices to make the binders navigable. Ms. Ament and her colleagues ultimately produced two sets of hearing binders for the Court, each consisting of seven (7) approximately 300 page volumes. Additionally, Ms. Ament and her colleagues had to prepare binder sets for the Reed Smith attorneys who would be arguing the claims before the Court -- requiring the paraprofessionals to personalize the binders according to the attorneys' areas of argument. All of the foregoing tasks required the use of paraprofessional judgment and skill (and often required consultation with and guidance from Reed Smith attorneys) in order to prepare precise and correct hearing binders for the Court and for the Reed Smith attorneys; these tasks cannot be deemed simply as "clerical tasks."

It is also important to note that throughout the course of this work, Ms. Ament used the help of legal secretaries and other clerical assistants (whose work and/or overtime is charged below the recommended $80 per hour clerical rate, or not billed at all) to perform actual clerical tasks, such as making copies, typing the indices, preparing the tab separators, and three-hole punching the papers being put in the binders. This strategy minimized the cost involved in producing these binders, and freed Ms. Ament's time so that she could focus on the substantive paraprofessional, non-clerical tasks that were presented by this assignment.

The time entry listed in Paragraph 3 of the Initial Report for associate Rebecca E. Aten ("REA") ("Continue to review claims files, documents for hearing, prepared binders") reflects Ms. Aten's review of materials that were contained in the claimants' claim files and contained in the binders that had been prepared for use at trial, not for time involved in preparing said binders. Ms.

Aten was one of the attorneys responsible for assisting in the pre-trial preparation of parts of the April 23-25 trial and her work involved substantive review and analysis of documents for said trial preparation.  It was not a clerical task.

The time entries listed in Paragraph 3 of the Initial Report for paralegal Maria E. DiChiera ("MED") reflects her review and analysis of documents to be used by attorneys at depositions and hearings.  Again, this involves a review and analysis of the documents per attorney instruction and is not simply the clerical task of placing those documents in a binder.  For example, Ms. DiChiera has assisted attorneys on depositions of medical doctors and one of the tasks Ms. DiChiera performed was reviewing medical articles for possible use as deposition and hearing exhibits.

<u>Response Exhibit 2</u>

In Paragraph 4 of the Initial Report, the Fee Auditor noted five conferences or meetings attended by multiple Reed Smith professionals, and asked for an explanation as to "the need for each professional's presence and the particular area of expertise brought to the meeting."

As a preliminary matter, the Fee Auditor is likely well aware by now that throughout Reed Smith's representation of the Debtors (both before and after the Debtors' bankruptcy filing), primary responsibility for specific subject areas and segments of the cases that Reed Smith has handled for the Debtors has been divided among Reed Smith professionals. Primary responsibility for specific subject areas and case segments have been divided among attorneys James J. Restivo, Jr. ("JJR"), Lawrence E. Flatley ("LEF"), and Douglas E. Cameron ("DEC") for dealing with, among other things, responsibility over medical issues and experts, industrial hygiene issues and experts, microscopy issues and experts, regulatory issues and experts, Grace's historical documents and witnesses, document production and discovery issues, case-specific claims and facts, and damages.

This division of primary responsibility was designed to avoid (and has avoided) duplication of effort, and was also intended to allocate direct responsibility for results. Because this division of responsibility worked very well for over ten years, it was carried over to Reed Smith's retention as the Debtors' Special Asbestos Product Liability Defense Counsel. The attendance of multiple Reed Smith professionals at certain meetings, hearings or conference calls during the Debtors' bankruptcy has often been necessary when the event in question covers topics within the areas of primary responsibility of more than one Reed Smith professional. So it was with the events noted in Paragraph 4 of the Initial Report:

1.    ***"On April 9, 2007, five members (four Partners and one Paralegal) attended a pretrial hearing/status conference.  The total time spent, including any preparation time, was 176.60 hours, for a total fee of $90,124.00."***

As noted above, the April 9, 2007 hearing was far more than a "pretrial hearing/status conference," and the preparation for that hearing was extensive.  While the Court did conduct a status conference for the April 23-25 trial after oral argument on the motions for summary judgment, April 9 was the day scheduled for the parties to argue eight (8) motions for summary judgment, addressing 298 of the more than 650 then pending asbestos property damage claims.  Each timekeeper in attendance at that hearing had a significant role in the briefing, preparation for and argument of the summary judgment motions and their presence at the hearing was necessary.  Mr. Restivo was the lead attorney for Reed Smith and was responsible for the overall "roadmap" of the summary judgment motions, and had specific responsibility for the preparation of the motion and argument relating to lack of product ID (see No. 2 on Exhibit A).  Mr. Flatley was responsible for the preparation and argument of multiple motions for summary judgment impacting 110 California claims (See Nos. 6 and 7 on Exhibit A).  Traci S. Rea ("TSR") was responsible for the preparation and argument of two motions for summary judgment relating to 27 claims in various jurisdictions (See Nos. 4 and 8 on Exhibit A).  Mr. Cameron was responsible for the preparation and argument of two motions for summary judgment relating to the 52 Libby claims and 88 Canadian claims (See Nos. 1 and 5 on Exhibit A).  Ms. Ament provided the paralegal support for all of these four attorneys' efforts, which included the review, analysis and compilation of hundreds of exhibits that were subsequently provided in binders per Court Order.  It should also be noted that in addition to two lawyers representing the Asbestos PD Claimants' Committee at the hearing, there were seven claimants' counsel who argued these motions.

After the conclusion of oral argument on these eight (8) motions, the Court conducted the status conference for the April 23-25, 2007 trial referenced below.  At that conference, the Court addressed the pretrial schedule for the upcoming trial -- a pretrial schedule and trial in which those same four attorneys and paralegal would have significant involvement, making their presence at the status conference at the end of the hearing necessary.  On April 11, 2007, the Court entered its Modified Amended Scheduling Order for Adjudication of Asbestos PD Claims [Doc. No. 15156] for the April 23-25, 2007 trial.

2.      *"On April 23-25, 2007, six members (four partners, one associate and one paralegal) attended a trial.  The total time spent, including preparation time, was 446.80 hours, for a total fee of $219,715.50."*

The April 23-25, 2007 hearing originally was scheduled to be the trial of Debtors' product identification, limitations period and "Libby issue" objections to the asbestos property damage claims.  However, at the April 9, 2007 conference following the argument on summary judgment motions, it was determined that, given the number of claims and trial time needed for product identification issues and the fact that many of the statute of limitations issues were addressed in the motions for summary judgment, the three-day hearing would involve only Debtors' product identification objections to claims to be identified by the Debtor.  As such, a very aggressive pretrial schedule was entered at the April 9 hearing that required the parties ***over the next two weeks*** to file a list of claims that would be at issue in the hearing and then exchange witness lists, witness disclosures (or affidavits and/or declarations), exhibit lists, all pre-marked exhibits, objections to witnesses and exhibits, deposition designations/counter-designations and trial briefs.

Eighty-five (85) claims appeared on the original list of claims to be tried, and the parties

prepared extensive pretrial filings accordingly.  Significant effort was required by all parties to meet

the Court's aggressive pretrial deadlines.  Because this trial involved 85 claims that each were

confronted by multiple product identification issues, witnesses and exhibits, each of the six Reed

Smith professionals identified had significant involvement in and responsibility for some aspect of

the pre-trial preparation and filings required by the CMO.  Mr. Cameron was primarily responsible

for many of the pretrial filings and had worked extensively with the experts during the preparation

of expert reports and related expert discovery.  Messrs. Restivo and Cameron were responsible for

the technical experts and related witness disclosures and exhibits.  Mr. Flatley and Ms. Aten were

responsible for the historical fact witnesses, including their disclosures, and related exhibits.

Ms. Rea assisted with the review and analysis of the voluminous exhibits provided by claimants'

counsel (including preparation of objections thereto) and was primarily responsible for drafting the

Debtors' trial brief and analysis of legal issues.  Again, Ms. Ament provided all of the paralegal

support for these five lawyers.  This was no small task, because (as mentioned in Part II of this

response) Ms. Ament was charged with the compilation of pretrial materials for ***all parties***, not just

the Debtor, to meet the expedited time deadlines.

Each of the timekeepers also had parallel responsibility for, and participated in, aspects of the

product identification hearing that took place from April 23-25, 2007.  Mr. Restivo presented the

opening and closing statements, presented Grace's expert witness on direct examination, and cross-

examined the fact witnesses offered by the State of California.  Mr. Cameron worked extensively

in the preparation of Grace's expert witness and related trial exhibits, cross-examined the expert

witness offered by the State of California, and argued objections to related exhibits.  Mr. Flatley

prepared and presented on direct examination the Grace fact witnesses and argued objections to the

exhibits presented by counsel for one of the claimants.  Ms. Rea argued the objections to exhibits offered by other claimants' counsel and was responsible for other legal issues raised in the trial brief. Ms. Aten assisted Mr. Flatley with respect to fact witness preparation and exhibit objections for presentation at trial.  Ms. Ament provided the paralegal support for all aspects of this trial.  It should also be noted that beside the two lawyers for the Asbestos Property Damage Claimants Committee who appeared at the trial, claimants were represented at trial by four additional lawyers.

3.    ***"On April 19, 2007, Messrs. Cameron, Flatley and Restivo (all Partners) attended a pre-trial conference.  The total time spent, including any preparation time, was 10.00 hours, for a total fee of $6,040.00."***

This was the final pre-trial conference for the April 23-25, 2007 hearing referenced above.  As noted above, Messrs. Restivo, Flatley and Cameron -- as has been the case in representing Grace over the past 18 years -- each had responsibilities for different aspects of the trial to be conducted and, thus, it was necessary for their participation in the pretrial conference (in which six lawyers participated for the claimants).

4.    ***"On May 30, 2007, four Firm members (three Partners and one Legal Assistant) attended a hearing.  The total time spent, including any preparation time, was 68.90 hours, for a total fee of $39,259.50."***

This hearing related to Debtors' Motion to Amend Certain Objections.  However, this issue first arose in connection with a motion filed by the Speights & Runyan firm in mid-April in connection with the April 23-25, 2007 product identification trial discussed above.  As a result of that motion, certain Speights & Runyan claims that had been scheduled to be part of the April 23-25, 2007 trial were deferred.  Several motions and responses were filed over the next month, and hearings conducted, in an attempt to address and resolve the issue of whether the Debtors were

permitted to raise certain objections to certain Speights & Runyan claims.

However, the issue was not resolved at any of these hearings, and the Court set a briefing schedule and a May 30, 2007 date for the final hearing on that issue. That hearing took place in Pittsburgh. All four timekeepers in attendance at the May 30 hearing (who were from Pittsburgh) had significant involvement with the preparation of the motion and related filings, because the motion involved claims for which each timekeeper had some responsibility. Mr. Restivo was lead counsel for the argument; he negotiated various aspects of this issue with claimants' counsel, and had argued at several of the prior hearings addressing these issues. Mr. Cameron had primary responsibility for the objections to the Canadian claims that were at issue. He worked extensively on the motion and supporting materials, had appeared and argued the issue at one of the prior hearings and was prepared to address certain aspects of the issue if raised by the Court. Mr. Flatley had primary responsibility for the objections to the United States' claims and was prepared to address specific issues if raised by the Court. Again, Ms. Ament provided all of the paralegal support for these matters.

Given the involvement of all four timekeepers in the motion, it was necessary for all of them to be present. It should be noted that Ms. Ament assisted in the preparation and only attended the portion of the hearing where her presence was needed. In addition, Speights & Runyan had one attorney appear in person, and another participated by telephone. The Asbestos Property Damage Claimants Committee had two lawyers participate by telephone. Counsel for the other claimants also participated by telephone.

5.     *"On May 25, 2007, four Firm members (two Partners and two Associates) participated in a conference call. The total time spent, including preparation time, was 7.00 hours, for a total fee of $3,009.00."*

This conference call involved a strategy discussion between the Reed Smith lawyers responsible for adjudicating the Debtors' objections to the Pacific Freeholds claim and the Debtor's California counsel, who worked on the claim prior to the bankruptcy, to address the preparation for a hearing on the adjudication of the statute of limitations objections for the Pacific Freeholds claim. At the time of the conference call, it was anticipated that the hearing on the Pacific Freeholds claim would be one month later, on June 26, 2007, and that significant preparation work was needed immediately.

The four timekeepers who participated each had responsibility for various aspects of the upcoming hearing and related pre-trial preparation.  Mr. Flatley was primarily responsible for adjudicating the objections to this California claim.  Mr. Cameron was involved because he had primary responsibility for, and worked extensively with, the expert witness who would be involved in the hearing.  Ms. Aten and Ms. Rawls were providing assistance to Mr. Flatley in the review and analysis of hundreds of claimant documents and prior deposition testimony for use in the hearing.

In sum, for each of the hearings or conferences identified in Paragraph 4 of the Initial Report, the presence of multiple Reed Smith professionals was not only necessary, but also was the most efficient way to deal with the issues presented during the various hearings or conferences.  Far from constituting situations in which there was any "overlap" in responsibility or activity, each of these instances simply posed a multifaceted task which was confronted by the Reed Smith professionals in the manner that Reed Smith traditionally has employed during its representation of the Debtors, which manner has been acknowledged and approved many times by the Fee Auditor.