# EXHIBIT 17

**INTRODUCTION**

    A.    David Weill, M.D. - Background Information

My name is David Weill, and I am the Medical Director of the Lung and Heart – Lung Transplant Program at Stanford University Medical Center. I am also an Associate Professor in the Division of Pulmonary and Critical Care Medicine at Stanford and am Board Certified in Pulmonary and Critical Care Medicine and a National Institute for Occupational Safety and Health (NIOSH) – certified B Reader, which is a demonstration of proficiency in the interpretation of pneumoconiosis – related chest radiographs. In addition to my own practice specializing in end-stage lung diseases, I have been a visiting professor at the National Institute for Occupational Medicine and Poison Control in Beijing, China. I have also had the opportunity to testify before the United States Senate Judiciary Committee and the Texas State Legislature regarding legislation addressing the handling of asbestos and silica claims.

    B.    Goals of the Report

This report will discuss the following areas:

- A rebuttal to the PI expert reports. I had the opportunity to review the expert reports filed on behalf of the PI Committee in the W.R. Grace Bankruptcy proceeding. I reviewed the following reports:

1) Report of Dr. Laura Welch

2) Report of Dr. Arthur Frank

3) Report of Dr. Samuel Hammar

4) Report of Dr. Richard Lemen

5) Report of Dr. Alan Whitehouse

6) Report of Dr. William Longo

For spirometry, only 10/150 (6.7%) of the Claimant's tests met ATS criteria. Only 83 (55.3%) had the required 3 volume vs. time or 3 flow vs. volume tests (both were not required), and, of those, only 13 (8.7%) complied with the graph size requirement. Only 76 (50.6%) had the required 2 of 3 repeatable FEV1 and FVC values, but repeatability does not assure test validity.

For lung volumes, only the FRC was evaluated, but only 103 (68.7%) of the Claimant's tests included at least 1 FRC measurement, and only 10 (6.7%) had 2 repeatable FRC values.

For DLCO, only 106 (70.7%) Claimants had at least 1 test, 35 (23.3%) had 2 repeatable tests, but only 17 (11.3%) met all repeatability, tracing, volume and timing criteria.

Forty (26.6%) had post- bronchodilator tests.

None (0%) of the Claimants had tests that complied with all testing criteria for spirometry, FRC and DLCO. Only 52 (34.7%) had at least 3 spirometric tracings along with 1 FRC and 1 DLCO value, irrespective of compliance with qualitative or quantitative criteria.

There were only 6 tests conducted prior to 1995, and the earliest was 1987, but all of these failed both the earlier 1979 and 1987 spirometer standards,

38

and they also failed the earlier 1987 DLCO standard. The FRC standard published in 2005 is much more comprehensive than the evaluation conducted above that only required 2 repeatable (within 10%) values. Repeatability has been a requirement of volumetric measurements of lung function since the first ATS standards were published in 1979. Therefore, none of the PFT tests submitted by the 69 Law Firms on behalf of the 150 Claimants, evaluated above, passed all ATS standards, irrespective of when the tests were conducted.

II.    Discussion

This ATS standards discussed above were developed to provide both comprehensive and accurate pulmonary function test results. However, of the random sample of pulmonary function tests, evaluated for the 150 Claimants and submitted by all 69 Law Firms, all 150 (100%) failed to comply with all ATS testing criteria, and 98 (65%) failed to include all the tests recommended by the ATS for the evaluation of asbestos-related disease. It should be noted that there were many aspects of the testing standards that could not be evaluated, including equipment accuracy and calibration, technician training, and adherence to recommended testing procedures, all of which are part of these same ATS standards.

III.   Conclusion

It is my opinion that the random sample of the PFT tests, that were evaluated for 150 Claimants, are representative of the PFT tests submitted for all 1,197 Claimants by all 69 Law Firms. These tests:

(1) Do not comply with ATS criteria,

(2) Cannot be used in support of the submitted claim, since they represent inaccurate and incomplete tests, and

(3) They make it difficult, if not impossible, to carefully "discriminate among the effects due to asbestosis, chronic obstructive disease, and restrictive changes due to obesity," as is recommended by ATS.

*[Signature: David Weill]*

David Weill, M.D.