# EXHIBIT 29

```
      2006.01.12 Deposition of Andrew Harron.txt
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
CHAPTER 11
CASE NO. 01-1139 (JKF)

---------------------------------------------- x
In Re:
W.R. GRACE & CO., et al,
Debtors.
---------------------------------------------- x

DEPOSITION OF: DR. ANDREW HARRON
January 12, 2006, 12:00 p.m.
Videotaped deposition of Dr. Andrew
Harron, taken by Debtors, pursuant to
Subpoena, at the Law Offices of Stone &
Associates, L.L.C, 415 W. Washington Street,
Suite 107, Waukegan, Illinois, before Joan M.
Burke, a Certified Shorthand Reporter of the
State of Illinois.


  APPEARANCES:
     MS. AMANDA C. BASTA
     Kirkland & Ellis, LLP
     655 Fifteenth Street, N.W.
     Washington, D.C. 20005
         appeared on behalf of the Debtor,
         W.R. Grace Co.;
     MS. MARY MARGARET RATLIFF and
     MR. AARON VICK
     Forman, Perry, Watkins, Krutz & Tardy, LLP
     200 South Lamar Street, Suite 100
     Jackson, Mississippi 39201,
         appeared on behalf of the Debtor,
         W.R. Grace Co.
     MR. JED STONE
     Stone & Associates, LLC
     415 West Washington Street, Suite 107
     Waukegan, Illinois 60085
         appeared on behalf of the deponent.
  ALSO PRESENT:
     MR. BRUCE WITTY, Videographer
     Legal Video Services, Inc.
                         INDEX
WITNESS:                                          PAGE
Dr. Andrew Harron, D.O.
  Examination by Ms. Basta..................... 007

                       EXHIBITS
NUMBER:           DESCRIPTION                     PAGE
Exhibit 1,  Subpoena to Appear for Deposition.. 010
Exhibit 2,  Notice of Rescheduled Deposition... 010
Exhibit 3,  N&M Inc. Transaction List-Andy
            Harron, M.D........................ 035
Exhibit 4,  N&M Inc. Transaction List-Andrew
            Harron............................. 035
Exhibit 5,  American Thoracic Society Documents-
            Diagnosis and Initial Management of
            Nonmalignant Diseases Related to
            Asbestos........................... 039
Exhibit 6,  Guidelines for the Use of the ILO
            Classification of Radiographs of
                         Page 1
```

                    2006.01.12 Deposition of Andrew Harron.txt
related disease?
     A.   Fifth Amendment.
          MS. BASTA:   6.
               (Document marked as requested.)
BY MS. BASTA:
     Q.   Dr. Harron, I've just marked for you
what's been marked as A. Harron Exhibit 6 is the
International Labor Organization Classification
or Guidelines for the use -- strike that.
               Dr. Harron, I've just handed you
what's been marked as A. Harron Exhibit 6.  It is
the Guidelines for the use of the I.L.O.
International Classification of Radiographs of
Pneumoconioses, Revised Edition, 2000.  Do you
recognize this document?
     A.   Fifth Amendment.
     Q.   Are you familiar with the I.L.O.
Guidelines for the Classification of Radiographs
of Pneumoconioses?
     A.   Fifth Amendment.
     Q.   Do you agree national I.L.O. Guidelines
should be followed in interpreting a chest x-ray
if a B-read is going to be used to diagnose an
asbestos-related disease?
     A.   Fifth Amendment.
     Q.   Are you familiar with the requirements
that a B-read be replicated by two and preferably
three independent readers?
     A.   Fifth Amendment.
     Q.   In connection with the diagnosis that
you made for litigation, have you followed the
I.L.O. requirement that a B-read be replicated by
two and preferably three independent readers?
          MR. STONE:   Excuse me.  Are we talking
about alleged B-reads in cases that your client
settled more than five years ago based upon a B-
read?  Is that -- What are we talking about here?
These are done deals.  Is there some current B-
read that's involved in litigation that Dr.
Harron and I don't know about or are we talking
about stuff that your client settled five years
ago after having gone through the litigation
 process, after having had your client's doctors
and lawyers look at the work of physicians who
had read x-rays?  I mean how is it that we today
get presented with 2000 edition guidelines and
ask him questions about it?
          MS. BASTA:   Mr. Stone --
          MR. STONE:   We object.
          MS. BASTA:   Again I'm going to object to
the soliloquy on the record and I'm -- right now
I'm asking Dr. Harron about his general
diagnostic practices.  When I ask him about Grace
claimants, I'm going to ask him about any
diagnosis that he has ever made of any Grace
claimant current or past or future.
          MR. STONE:   If there are such.  You may
answer.
          THE WITNESS:   Fifth Amendment.
BY MS. BASTA:
     Q.   In connection with your diagnosis of
individuals with asbestos-related disease in
connection with litigation, you have not adhered
                              Page 15

2006.01.12 Deposition of Andrew Harron.txt
to the I.L.O. requirement that a B-read be replicated by two and preferably three independent B-readers; is that correct?
    A.  Fifth Amendment.
    Q.  The I.L.O. has other standards pertaining to the interpretation of a chest x-ray; is that correct?
    A.  Fifth Amendment.
    Q.  Do you follow all of the I.L.O. standards when interpreting chest x-rays?
    A.  Fifth Amendment.
    Q.  The I.L.O. Guidelines require that a B-reader make a determination based on a scale. Are you aware of that requirement?
    A.  Fifth Amendment.
    Q.  Now, are you aware that the scale is good, acceptable with no technical defect likely to impair classification of the radiograph for pneumoconioses, acceptable with some technical defect but still adequate for classification purposes, and unacceptable for -- and the final category is unacceptable for classification purposes?
        MR. STONE:  Excuse me. Objection to the form of the question. Are you asking a question as to whether or not a physician looking at an x-ray of a worker who was exposed to asbestos in the workplace had or did not have exposure to asbestos in the workplace?
        MS. BASTA:  I am asking --
        MR. STONE:  Is that your question?
        MS. BASTA:  My question, which I will repeat for the doctor, is whether or not he is aware that in the I.L.O. Guidelines for performing a B-read, that B-reads are supposed to be read on a scale. And I'm asking him if he is aware that the scale has four categories --
        MR. STONE:  For what purposes is the x-ray to be read on the scale? What's the purpose of the -- of the B-reader's reading of that x-ray on a scale?
        MS. BASTA:  The purpose of -- I'm asking whether or not he is -- I'm asking whether or not he is -- whether or not he follows and is aware of the International Labor Organization's requirements when one is reading a radiograph for classification of pneumoconioses if he is aware that there is a scale and if he aware -- which he took the Fifth Amendment on, and my current pending question which I would like the doctor to answer or to assert his Fifth Amendment privilege as he will, whether or not he is aware that the scale that the I.L.O. has set forth is a four-part scale. And that scale is good, acceptable with no technical defect likely to impair classification of the radiograph for pneumoconioses, acceptable with some technical defect but still adequate for classification for purposes, and unacceptable for classification purposes.
        MR. STONE:  I'm going to object to the form of the question for the reasons I've suggested but, Doctor, you can provide your

Page 16

2006.01.12 Deposition of Andrew Harron.txt

       MR. STONE:  Excuse me.  I've got to object to that question because it assumes that there is some kind of conspiracy that's never been alleged let alone proven, let alone proffered, let alone met any kind of threshold. I mean that's an improper question.  You should know better.  You may answer it.
       THE WITNESS:  Fifth Amendment.
BY MS. BASTA:
    Q.  Doctor, you knew that N&M negotiated set fees for positive diagnosis for asbestosis and that a certain amount of positive diagnoses were guaranteed by N&M to plaintiffs law firms, didn't you?
    A.  Fifth Amendment.
    Q.  And you knew that N&M was manipulating pulmonary function tests to elevate claimants inherently, didn't you?
    A.  Fifth Amendment.
    Q.  And, Doctor, you performed B-reads for N&M in order to hide the initial B-reads that were performed by another doctor, in many cases your father?
    A.  Fifth Amendment.
    Q.  Dr. Harron, we've gone through a number of questions today and you have -- you have taken the Fifth Amendment.  If I asked you any more questions about your relationships with law firms, will you continue to take the Fifth Amendment?
    A.  Fifth Amendment.
    Q.  If I ask you any more questions about your relationships with screening companies, will you continue to take the Fifth Amendment?
    A.  Fifth Amendment.
    Q.  If I ask you any more questions with respect to your compensation by law firms and screening companies for your asbestos diagnosis and screening, will you continue to take the Fifth Amendment?
       MR. STONE:  The law is quite clear that there is no blanket Fifth Amendment or exercising of a blanket Fifth Amendment.  You have the right to propound as many questions as you can within a seven-hour time limit and Dr. Harron has the right to exercise Constitutional privilege.  And so your question if you would, would you, is really a meaningless question to which I object. If we could have answered that question, we would have answered that question at 12:07 and we'd all be done with this deposition.  Your question is meaningless and therefore I object to it.  Don't answer it.
BY MS. BASTA:
    Q.  Dr. Harron, if I ask you any other questions today will you continue to assert your Fifth Amendment privilege not to answer?
       MR. STONE:  Same objection.  It's a meaningless question.  Don't answer it.
       MS. BASTA:  Then I'm going to suspend the deposition and we intend to file a motion to compel Dr. Harron's appearance at a future deposition due to counsel's refusal to allow