# EXHIBIT 36

5/5/2007 Lucas, Phillip

```
 1              IN THE UNITED STATES BANKRUPTCY COURT
                    FOR THE DISTRICT OF DELAWARE
 2
 3
          IN RE:                          CHAPTER 11
 4
          W.R. GRACE & CO., et al.,       CASE NO. 01-1139
 5                                        (JFK) (Jointly
                                          Administered)
 6                        DEBTORS.
 7
 8
 9
10
                      VIDEOTAPED DEPOSITION OF
11                      PHILLIP H. LUCAS, M.D.
12
         TAKEN AT THE INSTANCE OF W.R. GRACE & COMPANY
13                       AT THE OFFICES OF
              FORMAN, PERRY WATKINS, KRUTZ & TARDY
14                     JACKSON, MISSISSIPPI,
                    ON SATURDAY, MAY 5, 2007,
15           BEGINNING AT APPROXIMATELY 10:00 A.M.
16
17
18
                      APPEARANCES NOTED WITHIN
19
20
21
22
                          BETHANY CAMMACK
23                 CERTIFIED SHORTHAND REPORTER
                     MISSISSIPPI CSR NO. 1526
24                    KELLER COURT REPORTING
                       POST OFFICE BOX 1142
25             RIDGELAND, MISSISSIPPI   39158
```

1

5/5/2007 Lucas, Phillip

1   Another method would be to negotiate a fixed rate
2   for all of the films, positive or negative. And I
3   would let them choose which method they would
4   prefer.
5       Q.   What would the fixed rate be?
6       A.   It would depend. It would vary. Usually
7   $70.
8       Q.   And was there -- in the instances where
9   you didn't have a fixed rate, how would you charge
10  for a positive versus a negative?
11      A.   Well, positive and negative both got an
12  interpretation. That's $35. The positive cases
13  had the ILO form filled out. Most of time. Some
14  of the attorneys didn't want the ILO form. So
15  positive or negative would be the same, 35.
16      Q.   And if someone requested -- if one of the
17  attorneys requested an ILO form, what would that
18  cost?
19      A.   35.
20      Q.   So for a positive with the ILO form, you
21  would charge $70?
22      A.   Correct.
23      Q.   And for a negative you would charge 35?
24      A.   Correct.
25      Q.   So you would charge more for a positive

70

```
 1   B-read in these instances than a negative B-read?
 2              MS. BRONSON:  Objection.  Asked and
 3   answered.
 4   BY MR. BIANCA:
 5       Q.   Did you answer?
 6       A.   Oh, I'm sorry.  Yes.  In that system, the
 7   35, 35 system, yes, positives would be charged more
 8   than the negative.
 9       Q.   Okay.  Would you agree that any of the --
10   any B-read report by you is not a diagnosis?
11       A.   Not a diagnosis of what?
12       Q.   Of, for instance, if you found -- if you
13   state in your report that your findings were
14   consistent with asbestosis, that would not be a
15   diagnosis of asbestosis, would it?
16       A.   No.
17       Q.   And what would it be?
18       A.   It would be an indication that if that
19   individual had adequate exposure, had the adequate
20   latency period, then that could be asbestosis.
21   Could be something else too.
22       Q.   So your B-read reports are not diagnoses
23   of anything, are they?
24       A.   Not diagnosis of asbestosis.  One --
25   obviously, if I say there's something there, and
```

71