# EXHIBIT 46

```
                 UNITED STATES BANKRUPTCY COURT
                      DISTRICT OF DELAWARE


IN RE:                          . Case No. 01-10578(JKF)
                                .
                                .
 FEDERAL MOGUL GLOBAL, INC.,    . USX Tower - 54th Floor
                                . 600 Grant Street
                                . Pittsburgh, PA 15219
           Debtor.              .
                                . June 20, 2007
. . . . . . . . . . . . . . . . . 9:03 a.m.


                      TRANSCRIPT OF HEARING
              BEFORE HONORABLE JUDITH K. FITZGERALD
              UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:            Pachulski, Stang, Ziehl, Young,
                            Jones & Weintraub, P.C.
                           By:  JAMES E. O'NEILL, ESQ.
                           919 North Market Street
                           17th Floor
                           P.O. Box 8705
                           Wilmington, DE  19899

                           Sidley Austin Brown & Wood, LLP
                           By:  KEVIN LANTRY, ESQ.
                                GUY S. NEAL, ESQ.
                                JESSICA KNOWLES, ESQ.
                                JAMES CONLAN, ESQ.
                                KENNETH P. KANSA, ESQ.
                           Bank One Plaza
                           10 South Dearborn Street
                           Chicago, IL 60607

  Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
```

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-Mail:  jjcourt@optonline.net

(609) 586-2311    Fax No.  (609) 587-3599

1  to the standing argument, and Mr. Coleman is offered as your
2  witness on that score, that he ought to be heard by this Court.
3  So, that's my preliminary view.
4         There is obviously some bias with respect to the fact
5  that CNA is his largest client.  And the Court does have to
6  factor that into the weight to be afforded his testimony.  I
7  think everybody considers that.
8         MR. CHRISTIAN:  That's perfectly appropriate.
9         THE COURT:  And I believe that in fact all of the
10 other aspects that have come out in cross examination and on
11 direct, such as the fact that his -- that CNA is his largest
12 client, are factors that this Court can consider with respect
13 to the weight.  That's my preliminary view.
14        I am going to take a look at the cases.  I am still
15 concerned about the methodology issue.  I truly am concerned
16 about the methodology.
17        MR. CHRISTIAN:  Right.
18        THE COURT:  I agree that Mr. Coleman has recited,
19 both on the stand and in his declaration, the process that he
20 went through, but I'm not sure that that is the type of
21 methodology that _Daubert_ and _Cumo Tire_ expect can be
22 replicated.  And that is the reliability standard that both
23 _Daubert_ and its subsequent progeny talk about.  The want to see
24 something that someone else could duplicate.
25        The type of analysis that Mr. Coleman provided to

1  this Court can't be replicated, because everything he talked
2  about is what he's done in his mind.  Yes, he's looked at
3  medical criteria, but it's in his mind.  Yes, he's done an
4  exposure analysis, but it's in his mind.  Yes, he's looked at
5  the Manville statistics, and there are printed statistics.  So,
6  someone else can look at those statistics, but how he's
7  factored that into this analysis is in his mind.
8        There is not a process that can be replicated in any
9  sense.  And yes, he has experience, but that experience, to the
10 extent that it weighs into this analysis that he has provided
11 to the Court, is not either capable of replication.  Does he
12 have specialized knowledge?  Yes, he does seem to have
13 specialized knowledge, and I need to take a look at the cases
14 to see how those two factors, his specialized knowledge on the
15 one hand, but the fact that nothing he's testified to can be
16 replicated on the other, can be balanced.
17       MR. CHRISTIAN:  Your Honor, and all I'd say to that
18 point, because I think Your Honor has grasped one of the issues
19 that are -- is presented by this motion to strike very clearly.
20 We believe the Cumo Tire says the kind of analysis of peer
21 review and replication that you're talking about is
22 inapplicable to this kind of experiential and knowledge-based
23 testimony.
24       As Your Honor observed, he clearly has the knowledge
25 and experience.  And I would say this as well.  I think it can

1  TDP's, no experience with trusts, and in fact, that he had not
2  used any comparison with any other trusts to find out what that
3  data would have been for insurance companies in the past or in
4  the present dealing with whether or not there in fact were
5  economic losses to insurance companies from dealing with any
6  other trusts or TDP's period.  So, I have no data upon which he
7  made his comparison.
8       The, I believe, Oddi case talks about the fact that
9  an intuitive inquiry is simply not sufficient for an expert to
10 make an -- to proffer an opinion, that the expert has to set
11 forth some information specifically about the data that has
12 been used and that something more than a haphazard intuitive
13 inquiry is required.
14      Here that's essentially what we have.  Not that Mr.
15 Coleman's approach is haphazard.  He certainly had a principled
16 approach to what he did, but that principled approach is not
17 based on anything that can be stated of record.  We don't know
18 what data he looked at.
19      There are -- because he's looking at an economic
20 injury -- things that could have been done and stated to
21 actually assess what an economic analysis would be.  People can
22 forecast economic losses.  He did not attempt to do that.  He
23 simply said that the range of loss would be between the tens
24 and hundreds of millions of dollars without attempting to
25 analyze in any way whether there was a specific economic

1  injury.  And as a result there is simply no data on which the
2  Court can assess the reliability of what he did.
3         His opinions are nothing more than his subjective
4  beliefs.  They are unsupported evaluation, and his conclusions
5  were not generated by a reliability methodology.  As a result,
6  I find that they -- that his opinion must be stricken and he is
7  not, I think, qualified in this instance to offer an expert
8  opinion on the subject matter for which he was called.
9         So, the motion is granted.
10         MR. ALVAREZ:  Your Honor, Fred Alvarez from Mumick
11  and Leek.  Before we go on, just as a housekeeping matter.
12         THE COURT:  Yes, sir.
13         MR. ALVAREZ:  We have one of our experts who
14  unfortunately is only available today.  I've approached Mr.
15  Neal to talk about whether we can go out of order.  Apparently
16  their side's not interested in doing that.  He has -- Justice
17  Stein is the expert, Your Honor.  He had a mediation yesterday
18  where he was the mediator.  He's tied up tomorrow.  He's only
19  available today.
20         I think we're not going to finish tomorrow,
21  unfortunately.  If that's the case, we can bring him back when
22  we resume, but I just don't want his unavailability to preclude
23  him from coming back later.
24         THE COURT:  All right, is there a reason we can't
25  take Justice Stein out of order?