## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                    Chapter 11

**W.R. Grace & Co., <u>et</u> <u>al.</u>**              Case No. 01-01139 (JKF)

Debtors.                      Jointly Administered

**TWENTY-SIXTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK
& LAVAN LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD
<u>FROM JULY 1, 2007 THROUGH SEPTEMBER 30, 2007</u>**

| | |
|---|---|
| Name of Applicant | **Stroock & Stroock & Lavan LLP** |
| Authorized to Provide Professional Services to: | **Official Committee of Unsecured Creditors** |
| Date of Retention: | **April 12, 2001** |
| Period for which compensation and reimbursement is sought | **July 1, 2007 – September 30, 2007** |
| Amount of Compensation sought as actual, reasonable and necessary: | **$510,043.50** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | **$10,433.15** |
| Fees and Expenses of the Asbestos Issues Expert: | **$418,269.08** (for the period July 1, 2007 – August 31, 2007 only) |

This is an: ☒ interim  ☐ final application

This is the twenty-sixth quarterly application filed.

**Attachment A**

## Monthly Interim Fee Applications

| Date Filed | Period Covered | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| May 30, 2001 D.I.339 | 4/12/01-4/30/01 | $138,926.00 | $1,975.13 | $111,140.80 | $1,975.13 |
| July 2, 2001 D.I.613 | 5/1/01 – 5/31/01 | $139,928.75 | $6,884.73 | $111,943.00 | $6,884.73 |
| July 30, 2001 D.I.772 | 6/1/01 – 6/30/01 | $91,019.00 | $10,458.14 | $72,815.20 | $10,458.14 |
| September 5, 2001 D.I.889 | 7/1/01-7/31/01 | $92,308.00 | $5,144.37 | $73,846.40 | $5,144.37 |
| October 2, 2001 D.I.983 | 8/1/01 8/31/01 | $53,873.50 | $3,069.88 | $43,098.80 | $3,069.88 |
| October 31, 2001 D.I.1058 | 9/1/01 – 9/30/01 | $58,742.00 | $6,801.32 | $46,993.60 | $6,801.32 |
| November 26, 2001 D.I.1239 | 10/1/01 – 10/31/01 | $101,069.00 | $3,562.09 | $80,855.20 | $3,562.09 |
| January 8, 2002 D.I.1470 | 11/1/01 – 11/30/01 | $136,368.50 | $8,847.34 | $109,094.80 | $8,847.34 |
| February 1, 2002 D.I.1608 | 12/01/01 – 12/31/01 | $92,064.50 | $9,471.47 | $73,651.60 | $9,471.47 |
| March 14, 2002 D.I.1812 | 01/01/02 – 01/31/02 | $100,231.50 | $14,675.58 | $80,185.20 | $14,675.58 |
| April 22, 2002 D.I.1951 | 02/01/02 – 02/28/02 | $88,974.50 | $16,863.97 | $71,179.60 | $16,863.97 |
| May 8, 2002 D.I.2029 | 03/01/02 – 03/31/02 | $77,964.25 | $1,190.44 | $62,371.40 | $1,190.44 |
| June 3, 2002 D.I.2156 | 04/01/02-04/30/02 | $97,251.50 | $1,816.40 (Stroock) $9,772.37 (Chambers) | $77,801.20 | $11,588.86 |

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| July 2, 2002 D.I.2324 | 05/01/02 – 05/31/02 | $74,910.75 | $2,9154.43 (Stroock) $43,190.69 (Chambers) | $59,928.60 | $46,105.12 |
| August 5, 2002 D.I.2495 | 06/01/02 – 06/30/02 | $73,096.75 | $2,054.05 (Stroock) $114,666.72 (Chambers) | $58,477.4011 | $116,720.77 |
| September 20, 2002 D.I.2720 | 07/01/02 – 07/31/02 | $90,903.27 | $1,250.79 (Stroock) $11,996.25 (Chambers) | $72,722.61 | $13,274.04 |
| October 29, 2002 D.I.2898 | 08/01/02 – 08/31/02 | $93,151.25 | $11,539.51 (Stroock) $5,046.70 (Chambers) | $74,521.00 | $16,586.21 |
| November 14, 2002 D.I.2981 | 09/01/02 – 09/30/02 | $96,613.25 | $15,567.77 (Stroock) $771.50 (Chambers) | $77,290.60 | $16,339.27 |
| December 10, 2002 D.I.3129 | 10/1/02 – 10/31/02 | $68,404.00 | $2,956.54 (Stroock) $1,780.75 (Chambers) | $54,723.20 | $4,737.29 |
| January 28, 2003 D.I.3286 | 11/1/02 – 11/30/02 | $75,345.50 | $8,712.16 (Stroock) | $60,276.40 | $8,712.16 |
| February 7, 2003 D.I.3349 | 12/1/02 – 12/31/02 | $27,683.50 | $13,332.14 (Stroock) | $22,146.80 | $13,332.14 |
| March 26, 2003 D.I.3552 | 1/1/03 – 1/31/03 | $88,139.00 | $1,210.11 (Stroock) | $70,511.20 | $1,210.11 |
| April 7, 2003 D.I.3626 | 2/1/03 – 2/28/03 | $76,313.00 | $2,022.78 (Stroock) $1,077.80 (Chambers) | $61,050.40 | $3,100.58 |
| April 29, 2003 D.I.3718 | 3/1/03 – 3/31/03 | $60,163.50 | $6,191.15 (Stroock) | $48,130.80 | $6,191.15 |
| June 2, 2003 D.I. 3850 | 4/1/03 – 4/30/03 | $60,269.00 | $814.02 (Stroock) $2,043.00 (Chambers) | $48,215.20 | $2,857.02 |
| July 1, 2003 D.I. 3983 | 5/1/03 – 5/31/03 | $111,990.50 | $691.84 (Stroock) $3,830.50 (Chambers) | $89,592.40 | $10,522.34 |
| August 5, 2003 D.I. 4152 | 6/1/03 – 6/30/03 | $43,824.00 | $1,220.42 (Stroock) $61,755.00 (Chambers) | $35,059.20 | $62,975.42 |
| September 4, 2003 D.I. 4381 | 7/1/03 – 7/31/03 | $79,090.50 | $2,301.33 (Stroock) $14,274.25 (Chambers) | $63,272.40 | $16,575.58 |

2

| | | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|---|
| September 30, 2003 D.I. 4512 | 8/1/03 – 8/31/03 | $69,927.00 | $1,164.19 (Stroock) $12,488.94 (Chambers) | | $55,941.60 | $13,653.13 |
| October 29, 2003 D.I. 4625 | 9/1/03 – 9/30/03 | $69,409.50 | $1,076.94 (Stroock) $10,102.00 (Chambers) | | $55,527.60 | $11,178.94 |
| December 19, 2003 D.I. 4843 | 10/1/03 – 10/31/03 | $96,980.50 | $3,800.45 (Stroock) $42,881.50 (Chambers) | | $77,584.40 | $46,681.95 |
| January 23, 2004 D.I. 4976 | 11/1/03 – 11/30/03 | $66,428.50 | $1,225.38 (Stroock) $30,463.00 (Navigant f/k/a Chambers) | | $53,142.80 | $31,688.38 |
| February 4, 2004 D.I. 5056 | 12/1/03 – 12/31/03 | $52,321.50 | $924.99 (Stroock) $27,005.00 (Navigant f/k/a Chambers) | | $41,857.20 | $27,929.99 |
| March 17, 2004 D.I. 5309 | 1/1/04 – 1/31/04 | $65,980.50 | $1,917.93 (Stroock) $47,654.57 (Navigant f/k/a Chambers) | | $52,784.40 | $49,572.50 |
| April 6, 2004 D.I. 5406 | 2/1/04 – 2/29/04 | $90,421.50 | $3,636.48 (Stroock) $35,492.50 (Navigant f/k/a Chambers) | | $72,337.20 | $39,128.98 |
| April 28, 2004 D.I. | 3/1/04 – 3/31/04 | $103,524.00 | $5,567.34 (Stroock) | | $82,819.20 | $5,567.34 |
| June 14, 2004 D.I. 5803 | 4/1/04 – 4/30/04 | $99,136.00 | $3,518.96 (Stroock) $1,515.00 (Navigant February) $49,667.00 (Navigant March) $80,307.11 (Navigant April) | | $79,308.80 | $135,008.07 |
| July 2, 2004 D.I. 5917 | 5/1/04 – 5/31/04 | $134,324.50 | $2,409.97 (Stroock) $78,360.05 (Navigant May) | | $107,459.60 | $80,770.02 |
| August 2, 2004 D.I. 6105 | 6/1/04 – 6/31/04 | $120,501.00 | $1,831.49 (Stroock) $62,625.00 (Navigant June) | | $96,400.80 | $64,456.49 |
| September 9, 2004 D.I. 6341 | 7/1/04 – 7/31/04 | $72,394.00 | $3,461.84 (Stroock) $40,427.50 (Navigant July) | | $57,915.20 | $43,889.34 |

3

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| September 23, 2004 D.I. 6444 | 8/1/04 – 8/31/04 | $70,457.00 | $1,764.40 (Stroock) | $56,365.60 | $1,764.40 |
| October 14, 2004 D.I 6625 | 9/1/04 – 9/30/04 | $83,903.50 | $1,535.61 (Stroock) $27,142.00 (Navigant August) | $67,122.80 | $28,677.61 |
| December 3, 2004 D.I. 7086 | 10/1/04 – 10/31/04 | $200,155.50 | $1,368.18 (Stroock) $ 24,659.00 (Navigant September) | $160,124.40 | $26,027.18 |
| January 7, 2005 D.I. 7481 | 11/1/04 – 11/30/04 | $218,608.50 | $14,019.09 (Stroock) $25,102.80 (Navigant October) $27,972.34 (Navigant November) | $174,886.80 | $67,094.23 |
| February 2, 2005 D.I. 7667 | 12/1/04 – 12/31/04 | $235,503.70 | $10,442.92 (Stroock) $62,687.97 (Navigant December) | $188,402.96 | $73,130.89 |
| March 15, 2005 D.I. 8026 | 1/1/05 – 1/31/05 | $187,168.00 | $4,411.55 (Stroock) $15,686.00 (Navigant January) | $149,734.40 | $20,097.55 |
| April 1, 2005 D.I. 8155 | 2/1/05 – 2/28/05 | $108,180.25 | $8,102.85 (Stroock) $18,303.37 (Navigant February) | $86,544.20 | $26,406.22 |
| April 29, 2005 D.I. 8305 | 3/1/05~ – 3/31/05 | $56,941.25 | $287.23 (Stroock) $6,114.86 (Navigant March) | $45,553.00 | $6,402.09 |
| June 6, 2005 D.I. 8562 | 4/1/05- 4/30/05 | $127,695.00 | $3,531.45 (Stroock) $20,129.06 (Navigant April) | $102,156.00 | $23,660.51 |
| June 28, 2005 D.I. 8704 | 5/1/05- 5/31/05 | $98,569.00 | $4,871.74 (Stroock) | $78,855.20 | $858.21 |
| August 3, 2005 D.I. 9135 | 6/1/05- 6/30/05 | $114,903.75 | $4,871.74 (Stroock) $34,075.28 (Navigant June) | $91,923.00 | $38,947.02 |
| September 8, 2005 D.I. 9356 | 7/1/05 – 7/31/05 | $117,780.75 | $2,088.44 (Stroock) $2,211.00 (Navigant) | $94,224.60 | $4,299.44 |

4

|  |  | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| October 4, 2005<br>D.I. 9565 | 8/1/05 –<br>8/31/05 | $106,796.25 | $5,046.99 (Stroock)<br>$18,550.00 (Navigant) | $85,437.00 | $23,596.99 |
| November 1, 2005<br>D.I. 10951 | 9/1/05 –<br>9/30/05 | $67,697.50 | $1,399.68 (Stroock)<br>$11,197.50 (Navigant) | $54,158.00 | $12,597.18 |
| November 29, 2005<br>D.I. 11202 | 10/1/05 –<br>10/31/05 | $98,216.75 | $1,611.30 (Stroock)<br>$11,582.50 (Navigant) | $78,573.40 | $13,193.80 |
| January 9, 2006<br>D.I. 11507 | 11/1/05 –<br>11/30/05 | $104,348.00 | $2,847.45 (Stroock)<br>$71,598.50 (Navigant) | $83,478.40 | $74,445.95 |
| January 30, 2006<br>D.I. 11655 | 12/1/05 –<br>12/31/05 | $96,855.00 | $1,379.53 (Stroock)<br>$20,317.49 (Navigant) | $77,484.00 | 21,697.02 |
| March 1, 2006<br>D.I. 11921 | 1/1/06 –<br>1/31/06 | $73.383.00 | $1,810.85 (Stroock)<br>$14,124.01 (Navigant) | $58.706.40 | $15,934.86 |
| March 28, 2006<br>D.I. 12134 | 2/1/06 –<br>2/28/06 | $105,083.75 | $1,434.62 (Stroock)<br>$25,971.70 (Navigant) | $84.067.00 | $27,406.32 |
| May 2, 2006<br>D.I. 12354 | 3/1/06 –<br>3/31/06 | $145,189.50 | $2,512.81 (Stroock)<br>$25,838.37 (Navigant) | $116,151.60 | $28,351.18 |
| May 31, 2006    DI.<br>12558 | 4/1/2006 –<br>4/30/2006 | $116,817.00 | $2,141.42 (Stroock)<br>$7,425.00 (Navigant) | $93,453.60 | $9,566.42 |
| July 6, 2006<br>D.I. 12748 | 5/1/2006 –<br>5/31/2006 | $121,304.50 | $1,838.71 (Stroock)<br>$17,493.75 (Navigant) | $97,043.60 | $19,332.46 |
| August 1, 2006<br>D.I. 12899 | 6/1/2006 –<br>6/30/2006 | $94,856.50 | $1,869.66 (Stroock)<br>$38,548.75 (Navigant) | $75,885.20 | $40,418.41 |
| August 30, 2006<br>D.I. 13117 | 7/1/2006 –<br>7/31/2006 | $97,397.25 | $496.76 (Stroock)<br>$30,280.00 (Navigant) | $77,917.80 | $30,776.76 |
| October 2, 2006<br>D.I. 13336 | 8/1/2006 –<br>8/31/2006 | $131,856.25 | $98.34 (Stroock)<br>$98,317.50 (Navigant) | $105,485.00 | $98,415.84 |
| November 2, 2006<br>D.I. 13559 | 9/1/2006 –<br>9/30/2006 | $150,960.00 | $4,147.01 (Stroock)<br>$91,179.11 (Navigant) | $120,768.00 | $95,326.12 |
| November 29, 2006<br>D.I. 13838 | 10/1/06 –<br>10/31/06 | $196,223.50 | $915.14 (Stroock)<br>$147,374.20 (Navigant) | $156,978.89 | $148,289.34 |

5

| | | Payment Requested | | Payment Approved | |
|---|---|---|---|---|---|
| January 12, 2007 D.I. 14292 | 11/1/06 – 11/30/06 | $188,638.00 | $3,370.16 (Stroock) $133,438.70 (Navigant) | $150,910.40 | $136,808.86 |
| January 29, 2007 D.I. 14415 | 12/1/06 – 12/31/06 | $99,832.00 | $5,752.89 (Stroock) $55,245.22 (Navigant) | $79,865.60 | $60,998.11 |
| March 8, 2007 D.I. 14810 | 1/1/07 – 1/31/07 | $77,582.00 | $962.06 (Stroock) $90,474.74 (Navigant) | $62,065.60 | $91,436.80 |
| April 10, 2007 D.I. 15132 | 2/1/07 – 2/28/07 | $119,140.50 | $3,092.88 (Stroock) $77,301.25 (Navigant) | $95,312.40 | $80,394.13 |
| May 1, 2007 D.I. 15457 | 3/1/07 – 3/31/07 | $135,228.00 | $6,635.25 (Stroock) $104,674.53 (Navigant) | $108,182.40 | $111,309.78 |
| June 22, 2007 D.I. 16136 | 4/1/07 – 4/30/07 | $177,646.00 | $815.81 (Stroock) $173,437.45 (Navigant) | $142,116.80 | $174,253.26 |
| July 17, 2007 D.I. 16309 | 5/1/07 – 5/31/07 | $205,937.25 | $6,405.01 (Stroock) $162,431.03 (Navigant) | $164,749.80 | $168,836.04 |
| August 10, 2007 D.I. 16528 | 6/1/07 – 6/30/07 | $225,650.50 | $5,929.97 (Stroock) $200,294.81 (Navigant) | $180,520.40 | $206,224.78 |
| September 14, 2007 D.I. 16822 | 7/1/07 – 7/31/07 | $157,268.50 | $4,021.65 (Stroock) $208,116.54 (Navigant) | $125,814.80 | $212,138.19 |
| October 1, 2007 D.I. 16959 | 8/1/07 – 8/31/07 | $145,866.50 | $3,354.61 (Stroock) $210,152.54 (Navigant) | $116,693.20 | $213,507.15 |
| November 16, 2007 D.I. 17394 | 9/1/07 – 9/30/07 | $206,908.50 | $3,056.89 (Stroock) | $165,526.80 | $3,056.89 |

6

**Quarterly Fee Applications**

| Date Filed | Period Covered | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| July 30, 2001 D.I.770 (First) | 4/12/01- 6/30/01 | $369,873.75 | $19,318.00 | $369,873.75 | $19,318.75 |
| November 1, 2002 D.I.1068 (Second) | 7/1/01 – 9/31/01 | $204,923.50 | $15,015.57 | $204,923.50 | $15,015.57 |
| February 8, 2002 D.I.1658 (Third) | 10/1/01 – 12/31/01 | $329,842.00 | $21,880.90 $9,918.43[*] | $329,842.00 | $21,880.90 (Stroock) $9,918.43 (Chambers) |
| May 16, 2002 D.I.2064 (Fourth) | 01/01/02 – 03/31/02 | $267,170.20 | $6,149.76 $36,352.60* | $266,865.70 | $6,144.85 (Stroock) $22,002.76 (Chambers) |
| August 16, 2002 D.I.2557 (Fifth) | 04/01/02 – 06/30/02 | $245,259.00 | $6,784.97 $167,629.78* | $245,259.00 | $6,784.97 (Stroock) $167,629.78 (Chambers |
| November 18, 2002 D.I.3045 (Sixth) | 07/01/02 – 09/30/02 | $280,471.77 | $28,358.07 $17,814.45* | $224,534.21[1] | $28,358.07 (Stroock)[1] $17,814,45 (Chambers)[1] |
| March 25, 2003 D.I.3549 (Seventh) | 10/01/02 – 12/31/03 | $171,108.00 | $25,000.84 $1,780.75* | $136,886.40[2] | $25,000.84 (Stroock)[2] $1,780.75 (Chambers)[2] |

---

[*]   These amounts relate to the Committee's Asbestos Issues Expert.

[1]   Court Order dated March 14, 2003 approved fees in the amount of $276,535.77 and expenses in the amount of $45,477.52.

[2]   Court Order dated July 28, 2003 approved fees in the amount of $171,108.00 and expenses in the amount of $26,412.62.

7

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 20, 2003<br>D.I. 3815<br>(Eighth) | 1/1/03 –<br>3/31/03 | $224,358.50 | $9,424.04<br>$1,077.80* | $224,615.50[3] | $9,424.04<br>(Stroock)[3]<br>$1,077.80<br>(Chambers)[3] |
| August 29, 2003<br>D.I. 4357<br>(Ninth) | 4/1/03 –<br>6/30/03 | $215,903.50 | $2,726.28<br>$67,628.50* | $215,903.50[4] | $2,726.28<br>(Stroock)[4]<br>$67,628.50<br>(Chambers)[4] |
| December 5, 2003<br>D.I. 4778<br>(Tenth) | 7/1/03 –<br>9/30/03 | $218,222.00 | $4,339.46<br>$36,865.19* | $218,222.00[5] | $4,339.46<br>(Stroock)[5]<br>$36,865.19<br>(Chambers)[5] |
| March 2, 2004<br>D.I. 5212<br>(Eleventh) | 10/1/03 –<br>12/31/03 | $215,718.50 | $5,950.82<br>$100,349.50* | $215,718.50[6] | $5,922.67<br>(Stroock)[6]<br>$100,349.50<br>(Chambers)[6] |
| May 18, 2004<br>D.I. 5597<br>(Twelfth) | 1/1/04 –<br>3/31/04 | $254,857.00 | $9,965.36<br>$83,147.07* | $254,857.00[7] | $9,965.36<br>(Stroock)[7]<br>$83,147.07<br>(Navigant)[7] |
| August 26, 2004<br>D.I. 6269<br>(Thirteenth) | 4/1/04 –<br>6/30/04 | $353,629.50 | $7,760.42<br>$272,474.16* | $353,629.50[8] | $7,760.42<br>(Stroock)[8]<br>$272,474.16<br>(Navigant)[8] |

---

[3]   Court Order dated September 22, 2003 approved fees in the amount of $224,033.50 and expenses in the amount of $10,410.22.

[4]   Amended Court Order dated December 23, 2003 approved fees in the amount of $215,903.50 and expenses in the amount of $70,354.78.

[5]   Court Order dated April 26, 2004 approved fees in the amount of $218,222.00 and expenses in the amount of $41,204.65.

[6]   Court Order dated June 16, 2004 approved fees in the amount of $215,718.50 and expenses in the amount of $106,272.17.

[7]   Court Order dated September 27, 2004 approved fees in the amount of $254,857.00 and expenses in the amount of $93,011.96.

[8]   Court Order dated January 25, 2005 approved fees in the amount of $353,629.50 and expenses in the amount of $280,234.58.

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| November 10, 2004 D.I. 6871 (Fourteenth) | 7/1/04 – 9/30/04 | $226,702.50 | $6,705.08 $67,569.50* | $226,702.50[9] | $6,705.08 (Stroock)[9] $67,569.50 (Navigant)[9] |
| February 22, 2005 D.I. 7851 (Fifteenth) | 10/1/04 – 12/31/04 | $653,133.20 | $25,830.19 $140,422.11* | $648,355.70[10] | $25,830.19 (Stroock)[10] $140,422.11 (Navigant)[10] |
| May 16, 2005 D.I. 8468 (Sixteenth) | 1/1/05- 3/31/05 | $352,289.50 | $12,746.23 $40,104.23* | $349,644.00 | $12,746.23 (Stroock)[11] $40,104.23 (Navigant) |
| August 19, 2005 D.I. 9225 (Seventeenth) | 4/1/-5 – 6/30/05 | $340,821.25 | $9,261.40 $54,204.34* | $340,096.25[12] | $9,261.40 (Stroock) $54,204.34 (Navigant) |
| November 18, 2005 D.I. 11118 (Eighteenth) | 7/1/05 – 9/30/05 | $291,843.50 | $8,534.71 $31,958.50* | $291,843.50[13] | $8,534.71 (Stroock) $31,958.50 (Navigant) |
| February 15, 2006 D.I. 11798 (Nineteenth) | 10/1/05 – 12/31/05 | $299,419.75 | $5,838.28 $103,498.49* | $299,419.75[14] | $5,838.69 (Stroock $103,498.49 (Navigant) |

---

[9]  Court Order dated March 22, 2005 approved fees in the amount of $226,702.50 and expenses in the amount of $74,274.58.

[10]  Court Order dated June 29, 2005 approved fees in the amount of $648,335.70 and expenses in the amount of $166,252.30.

[11]  Court Order dated September 27, 2005 approved fees in the amount of $349,644.00 and expenses in the amount of $52,850.46.

[12]  Court Order dated December 19, 2005 approved fees in the amount of $340,096.25 and expenses in the amount of $63,465.74.

[13]  Court Order dated March 24, 2006 approved fees in the amount of $291,843.50 and expenses in the amount of $40,493.21.

[14]  Court Order dated June 16, 2006 approved fees in the amount of $299,419.75 and expenses in the amount of $109,337.18.

NY 71084846v2

| | | Payment Requested | | Order Approving Amount of: | |
|---|---|---|---|---|---|
| May 26, 2006 D.I. 12533 (Twentieth) | 1/1/2006 – 3/31/2006 | $323,566.25 | $5,758.28 $65,934.98* | $323,451.25[15] | $5,758.28 (Stroock) $64,810.58 (Navigant) |
| August 17, 2006 D.I. 13006 (Twenty-First) | 4/1/2006 – 6/30/2006 | $332,978.00 | $5,849.79 $63,467.50* | $332,978.00[16] | $5,849.70 (Stroock) $63,467.50 (Navigant) |
| November 29, 2006 D.I. 13835 (Twenty-Second) | 7/1/2006 – 9/30/2006 | $380,213.50 | $4,742.11 $219,776.61* | $380,213.50[17] | $4,742.11 (Stroock) $219,776.61 (Navigant) |
| March 1, 2007 D.I. 14717 (Twenty-Third) | 10/1/2007 – 12/31/07 | $484,693.50 | $10,038.19 $336,058.12* | $484,693.50[18] | $10,038.19 (Stroock) $336,058.12 (Navigant) |
| June 4, 2007 D.I. 15949 (Twenty-Fourth) | 1/1/07 - 3/31/07 | $331,950.50 | $10,690.15 $272,450.52* | $331,950.50[19] | $10,690.15 (Stroock) $272,450.52 (Navigant) |
| August 30, 2007 D.I. 16710 (Twenty-Fifth) | 4/1/2007 - 6/30/2007 | $609,233.75 | $13,150.79 $536,163.29* | | |

---

[15] Court Order dated September 25, 2006 approved fees in the amount of $323,451.25 and expenses in the amount of $71,130.16.

[16] Court Order dated December 18, 2006 approved fees in the amount of $332,978.00 and expenses in the amount of $69,317.29.

[17] Court Order dated May 3, 2007 approved fees in the amount of $380,213.50 and expenses in the amount of $224,518.72.

[18] Court Order dated June 20, 2007 approved fees in the amount of $484,693.50 and expenses in the amount of $346,096.31.

[19] Court Order dated September 24, 2007 approved fees in the amount of $331,950.50 and expenses in the amount of $283,140.67.

10

**WR GRACE & CO**

**ATTACHMENT B**

**JULY 1, 2007 - SEPTEMBER 30, 2007**

| | Hours | Rate | Amount | No. of Years in Position |
|---|---|---|---|---|
| **Partners** | | | | |
| DiBernardo, Ian G. | 2.3 | $ 660 | $ 1,518.00 | 2 |
| Greenberg, Mayer | 1.1 | 760 | 836.00 | 9 |
| Kruger, Lewis | 57.5 | 828 | 47,601.00 | 37 |
| Pasquale, Kenneth | 146.0 | 688 | 100,440.00 | 8 |
| Speiser, Mark A. | 1.6 | 815 | 1,304.00 | 20 |
| | | | | |
| **Associates** | | | | |
| Arnett, Jennifer | 8.3 | 465 | 3,859.50 | 1 |
| Cutler, Ilana | 18.9 | 335 | 6,331.50 | 1 |
| Eichler, Mark | 8.6 | 605 | 5,203.00 | 9 |
| Krieger, Arlene G. | 470.2 | 605 | 284,471.00 | 21 |
| Melendres, Linda M. | 5.9 | 260 | 1,534.00 | N/A |
| Wildes, Denise K. | 0.6 | 605 | 363.00 | 18 |
| | | | | |
| **Paraprofessionals** | | | | |
| Holzberg, Ethel H. | 82.7 | 255 | 21,088.50 | 35 |
| Magzamen, Michael S. | 0.9 | 255 | 229.50 | 5 |
| Palacios, Gino D. | 10.9 | 225 | 2,452.50 | 2 |
| Berg, Madelaine | 7.8 | 605 | 4,719.00 | 17 |
| Cromwell, Marlon E. | 2.6 | 215 | 559.00 | N/A |
| Lollie, Toya | 2.0 | 165 | 330.00 | 2 |
| Mohamed, David | 163.6 | 165 | 26,994.00 | 17 |
| Rodriguez, Peter J. | 2.0 | 105 | 210.00 | 2 |
| | | | | |
| **Sub Total** | 993.5 | | **$516,572.50** | |
| **Less 50% Travel** | (8.6) | | (6,529.00) | |
| **Total** | 984.9 | | 510,043.50 | |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **W. R. GRACE & CO., et al.**[1] | ) | **Case No. 01-01139 (JKF)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## TWENTY-SIXTH QUARTERLY FEE APPLICATION OF STROOCK & STROOCK & LAVAN LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF W. R. GRACE & CO., et al., FOR INTERIM COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED <u>DURING THE PERIOD FROM JULY 1, 2007 THROUGH SEPTEMBER 30, 2007</u>

Stroock & Stroock & Lavan LLP ("Stroock" or "Applicant"), counsel to the Official

Committee of Unsecured Creditors (the "Committee") of W. R. Grace & Co. ("Grace") and its

sixty-one domestic subsidiaries and affiliates that are debtors and debtors-in-possession (the

"Debtors") in this Court, for its application pursuant to 11 U.S.C. §§ 330 and 331 and in

accordance with the Administrative Fee Order (defined below) for interim allowance of

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings. Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, and H-G Coal Company.

compensation for services rendered and for reimbursement of expenses incurred in connection therewith, respectfully represents as follows:

## INTRODUCTION

1.       By this application (the "Application"), Stroock seeks (i) an interim allowance of compensation for the professional services rendered by Stroock as counsel for the Committee for the period from July 1, 2007 through September 30, 2007 (the "Compensation Period") in the aggregate amount of $510,043.50 representing 723.2 hours of professional services and 270.3 hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Stroock during the Compensation Period in connection with the rendition of such professional services and paraprofessional services in the aggregate amount of $10,433.15, as well as the fees and expenses of the asbestos issues expert employed by the Committee pursuant to the Court's June 22, 2001 Order Authorizing the Retention of Experts (the "Asbestos Issues Expert") in respect of services rendered in the months of July and August of 2007 in the aggregate amount of $418,269.08.

2.       Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 330 and 331 and Federal Rules of Bankruptcy Procedure 2002(a) and 2016.

## BACKGROUND

3.       On April 2, 2001 (the "Petition Date"), each of the Debtors filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code and has continued in the management and operation of their businesses and property pursuant to §§ 1107 and 1108 of the

2

Bankruptcy Code. Pursuant to an order of the Court, the Debtors' chapter 11 cases have been procedurally consolidated and are being jointly administered.

4.     The Debtors operate a worldwide specialty chemicals and materials business and employ approximately 3860 full and part-time employees. On a consolidated basis, for the fiscal year 2000, Grace reported a net loss of $89.7 million[2] from $1.59 billion in net revenues. The Debtors' bankruptcy filings report that in fiscal year 2000, on a consolidated basis, Grace's sales are generated approximately 50% by the Debtors and 50% by the Debtors' non-debtor subsidiaries and affiliates.

5.     On April 12, 2001, the United States Trustee formed the Committee. During the first meeting of the Committee on April 12, 2001, the Committee duly selected Stroock as its counsel to represent the Committee in all matters during the pendency of the Debtors' Chapter 11 cases. The Committee thereafter approved the retention of Duane, Morris & Heckscher LLP (n/k/a Duane Morris LLP) ("DM&H") as its local Delaware counsel. On December 3, 2003, a second amended notice of appointment of the Committee was filed by the United States Trustee. On July 10, 2006, a third amended notice of appointment of the Committee was filed by the United States Trustee.

6.     The United States Trustee also appointed two separate official committees to represent the interests of claimants asserting asbestos-related personal injury claims (the "ACC") and asbestos-related property damage claims (the "PD Committee") against the Debtors (collectively, the "Asbestos Claim Committees"). On June 18, 2001, the United States Trustee

---

[2]  The Debtors' pleadings further reported that this net loss resulted in part from a $294.0 million asbestos-related charge to earnings recorded in the fourth quarter of 2000.

appointed an official committee to represent the interests of equity security holders of the Debtors (the "Equity Committee").

7.      By order dated May 24, 2004, the Court authorized the appointment of a legal representative for future asbestos claimants (the "Futures Representative").

8.      By application dated May 1, 2001, Stroock sought Court approval for its retention as counsel to the Committee nunc pro tunc to April 12, 2001. The Court signed an order approving Stroock's retention as counsel to the Committee on May 30, 2001.

9.      This is the twenty-sixth quarterly interim application Stroock has filed with the Court for an allowance of compensation and reimbursement of expenses for services rendered to the Committee. This Application is submitted pursuant to the terms of the Administrative Order Under §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, approved by the Court on May 3, 2001 as amended by order dated April 19, 2002 (collectively, the "Administrative Fee Order").

10.     In accordance with the procedures established by the Administrative Fee Order, Stroock had, at the time of filing this Application, received payment from the Debtors for 80% of the fees and 100% of Stroock's expenses requested, and not objected to, in the July 2007 and August 2007 fee statements encompassed within this Compensation Period. Stroock has not yet received payment for the fees and expenses requested in the September 2007 fee statement for which a certificate of no objection has been filed. In addition, Stroock has received payment from the Debtors representing the fees and expenses of Navigant Consulting, Inc. ("Navigant"), formerly known as Chambers Associates, the Asbestos Issues Expert for the Committee, for the

4

months of July 2007 and August 2007 in the aggregate amount of $418,269.08.[3]  Applicant has received no other payments and no promises for payment from any source for services rendered in connection with these cases for the months encompassing this Compensation Period other than as immediately set forth above.  There is no agreement or understanding between the Applicant and any other person (other than members of Stroock) for the sharing of compensation to be received for the services rendered in these cases.

11.    As stated in the Affidavit of Kenneth Pasquale, Esq. annexed hereto as Exhibit "A," all of the services for which interim compensation is sought herein were rendered for and on behalf of the Committee solely in connection with these cases.

### SUMMARY OF SERVICES RENDERED

12.    Since being retained by the Committee, Stroock has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtors' estates.  The variety and complexity of these cases and the need to act or respond on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by personnel from several legal disciplines, on an as-needed basis, including in certain instances, working into the evening and on weekends.

13.    Stroock maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the Committee.  Such time records were made contemporaneously with the rendition of services by the person rendering such services and in the ordinary course of Stroock's practice, and are presented in compliance

---

[3]  The fees and expenses of the Asbestos Issues Expert for the month of September 2007 has been submitted as part of Stroock's October 2007 fee statement.

with Delaware Local Rule 2016-2(d) amended effective as of February 1, 2006. A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Compensation Period is annexed hereto as Exhibit "B". In addition, Exhibit "C" hereto contains a summary of the hours expended by each of the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

14.     Stroock also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are also available for inspection. A schedule of the categories of expenses and amounts for which payment is requested is annexed hereto as Exhibit "D".

15.     Stroock respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

16.     The following summary of the services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit "B". Rather, it is merely an attempt to highlight certain of these areas in which services were rendered to the Committee, as well as to identify some of the problems and issues to which Stroock was required to direct its attention.

6

### Claim Analysis Objection, Resolution & Estimation (Asbestos) -- Category 0003

17.     As reflected in prior compensation applications, in mid-November 2004, the

Debtors filed a reorganization plan and numerous related pleadings including their motion

seeking the estimation of asbestos claims and the establishment of a schedule and procedures for

carrying out the estimations (the "Estimation Motion"), and their motion to establish post-

confirmation litigation protocols for liquidating asbestos claims (the "Case Management

Motion").

18.     During prior compensation periods, the Court approved a form of case

management order to govern the pre-confirmation estimation of asbestos personal injury claims

(the "PI CMO") and the related form of questionnaire (the "Questionnaire") to be used by

asbestos personal injury claimants who had commenced pre-petition litigation against the

Debtors (the "PI Pre-Petition Litigation Claimants") and two case management orders for

property damage claims the ("PD CMOs"); one to govern the Debtors' claims objection process

and the other to govern the pre-confirmation estimation of property damage claims ("PD

Claims").  July 12, 2006 was the deadline set for PI Pre-Petition Litigation Claimants to return

completed Questionnaires.  November 15, 2006 was the deadline set for PI-Pre-Petition

Litigation Claimants to file proofs of claim.

19.     During this Compensation Period, the Court entered several amended case

management orders (the "Amended PI CMOs") establishing pre-trial dates and deadlines and

trial dates to govern the estimation of asbestos personal injury claims (the "PI Estimation").

Given the pre-trial schedule established by the Amended PI CMOs, substantial services were

rendered in this category in this Compensation Period.  Stroock prepared for and attended nine

7

depositions, attended to PI Estimation issues and PI expert issues, participated in a number of estimation-related discussions with Navigant, the Committee's Asbestos Issues Expert and, in a number of conference calls and meet and confers with representatives for all parties addressing discovery and expert-related issues, attended to expert rebuttal reports filed on issues other than valuation and to expert reports, supplemental reports, and expert rebuttal reports filed on the issue of valuation and related back-up and reliance materials, and attended to testimony from recent expert and fact witness depositions.

20.    In addition, during this Compensation Period, Stroock attended to numerous PI Estimation and related discovery matters including (i) the Debtors' motions to compel certain post-confirmation asbestos trusts to produce documents, the oppositions and responses filed thereto, and the related motions seeking approval for protective orders and stipulations governing such discovery and (ii) the Debtors' renewed request to obtain discovery from 21 of the law firms (the "Law Firms") representing PI Pre-Petition Litigation Claimants and related matters. In connection with the resolution of the Debtors' initial request to take discovery from the Law Firms, the Debtors agreed to proceed at that time to obtain discovery from only four of the Law Firms and those Firms agreed to respond to a limited number of written interrogatories. The parties agreed to the form of written interrogatories (the "Interrogatories"), and the Court entered an order dated July 10, 2007, providing that the Law Firms' responses to the Interrogatories would not waive such counsels' attorney-client or work product privileges (the "July 10 Order"). During this Compensation Period, the Debtors filed a further pleading that, among other things, sought Court authorization pursuant to the July 10 Order to serve the Interrogatories on the other Law Firms. The July 10 Order, however, only provided for the Law Firms' responses to be used and disclosed to the Debtors and required all pleadings referring to those responses to be filed

8

under seal.  As a consequence, the Committee and its professionals were not being provided with access to the same information and use of that information as other parties to the PI Estimation. Accordingly, during this Compensation Period, Stroock, on behalf of the Committee, prepared and filed a motion seeking to have the Court amend the July 10 Order to ensure that all discovery produced by the Law Firms be provided to, and be able to be used by, all parties to the PI Estimation.  Stroock discussed this motion and the proposed form of amended order with representatives for the Law Firms, proposed and considered other forms of orders amending or supplementing the July 10 Order and ultimately reached agreement with the Law Firms on a form of supplement to the July 10 Order and related confidentiality rider.

21.     Also during this Compensation Period, the Court entered an amended scheduling order with respect to the adjudication of certain asbestos property damage claims (the "Amended PD CMO").  During this Compensation Period, Stroock reviewed the trial briefs, exhibits and related pleadings filed by the Debtors and the Motley Rice firm with respect to the evidentiary hearings scheduled to take place during the period on the Debtors' statute of limitations' objections to certain claims represented by the Motley Rice firm.  In addition, during this Compensation Period, Stroock attended to other PD Claims-related matters, including (i) preparing for and attending the hearing on Anderson Memorial Hospital's motion for class certification and attending to the post-hearing briefs filed by the parties, (ii) preparing for and attending the hearing on the Debtors' objections to certain Canadian claims on the grounds of the running of the applicable statutes of limitations and/or statutes of repose, and (iii) the proposed settlements of the PD Claims asserted by (a) the City of Philadelphia, (b) Prudential Insurance Company and (c) the claimants represented by the Dies & Hile firm.  Stroock has expended 376.4 hours on this category for a fee of $228,841.50.

9

**Sales/Uses and Leases (Section 363) – Category 0009**

22.    As reported in the prior compensation application, the Debtors filed a motion

seeking approval to sell their Washcoat business.  During this Compensation Period, Stroock

reviewed certain of the schedules and ancillary agreements to the Asset Purchase Agreement,

raised and discussed issues of concern with Debtors' counsel and provided comments on the

proposed form of order approving the sale to Debtors' counsel.  Stroock has expended 9.6 hours

on this category for a fee of $5,985.50.

**Business Operations -- Category 0013**

23.    During this Compensation Period, Stroock attended to Capstone's report on the

Debtors' second quarter 2007 operations and discussed that report and the Debtors' proposed tax

optimization plan and other matters with Capstone.  Stroock has expended 3.8 hours on this

category for a fee of $2,299.00.

**Case Administration -- Category 0014**

24.    As reported in prior monthly compensation applications, these chapter 11 cases

were reassigned to District Court Judge Alfred Wolin in November 2001 and referred to

Bankruptcy Court Judge Judith Fitzgerald, and then reassigned to District Court Judge Ronald L.

Buckwalter following Judge Wolin's recusal from these cases.

25.    During this Compensation Period, Stroock continued to closely monitor the items

on the Court's general chapter 11 docket for these cases, as well as those dockets relating to each

of the pending adversary proceedings and appeals, to ensure that the Committee was fully

informed about all pending motions, adversary proceedings and appeals and that Stroock would

be ready to timely respond on behalf of the Committee, as might be applicable.  Stroock

10

continued to engage the Debtors' counsel and Capstone on an on-going basis with respect to pending matters and information requests. Also, during this Compensation Period, Stroock discussed with Debtors' counsel and then attended to the US Trustee's motion to appoint an examiner in this and certain other cases to investigate the billing practices of L. Tersigni Consulting. Stroock has expended 191.8 hours on this category for a fee of $39,198.00.

## Claims Analysis, Objection and Resolution (Non-Asbestos) -- Category 0015

26.    As reported in the prior compensation application, the New Jersey Department of Environmental Protection ("NJDEP") filed a motion for leave to file a late proof of claim in an amount in excess of $30.0 million. During this Compensation Period, Stroock, in response to this motion, continued to review applicable case law and discuss this matter with Debtors' counsel, and ultimately filed a joinder to the Debtors' objection to the motion. Stroock subsequently reviewed NJDEP's reply. After the Court entered an order denying NJDEP's motion, Stroock attended to NJDEP's appeal of the order and its related statement of issues and designation of items to be included in the appellate record.

27.    In addition, during this Compensation Period, the Debtors filed pleadings seeking approval for two inter-related stipulations; one with BP Products North America and the other with Continental Casualty Company. The Debtors also sought approval for several stipulations addressing certain pending claims. Stroock reviewed each of the proposed settlements and stipulations and all related documentation and discussed these matters with Debtors' counsel raising questions where necessary. Stroock has expended 24.8 hours on this category for a fee of $15,147.00.

## Committee, Creditors' Noteholders' or Equity Holders' -- Category 0017

28.     During this Compensation Period, Stroock communicated with the members of the full Committee through numerous memoranda, telephone and conference calls.  In order to keep the Committee fully informed of all of the pending matters in these cases, and thus enable the Committee to take informed positions on those issues, Stroock reviewed and summarized the motions, other pleadings and notices filed by the Debtors and other parties in interest in these cases and the objections and responses filed, raised issues the Committee should be aware of, made recommendations to the Committee concerning appropriate actions to be taken with regard to the pleadings and communicated with members of the Committee regarding the positions to be taken.  In addition, Stroock engaged counsel and other representatives for the Debtors, and other parties and movants, as applicable, with the Committee's questions, concerns and comments, negotiated whenever and to the extent possible consensual resolutions of outstanding issues and acceptable forms of proposed orders, stipulations and settlement agreements and advised the Committee of the Court's hearings and rulings.

29.     In addition, during this Compensation Period, Stroock prepared memoranda to the Committee discussing the hearings held before Judge Fitzgerald and the rulings issued by the Court and addressing the many pleadings and other materials considered by the Court, including (i) the Debtors' motion to further extend their exclusive periods, the objections filed thereto, and the impact of the Court's ruling thereon, (ii) the Debtors' proposed settlements of numerous PD Claims, (iii) the Debtors' pleadings seeking approval for the interrelated settlements with BP Products North America and Continental Casualty Company, (iv) the Court's ruling on the NJDEP's motion for leave to file a substantial late claim, and the appeal taken by the NJDEP.

12

Further during this Compensation Period, Stroock continued to discuss with the Committee and Navigant, various PI Estimation and plan-related matters.

30.     Further during this Compensation Period, the Committee had an in person meeting with representatives for the Debtors to discuss, among other matters, the Debtors' recent and projected financial performance, several settlements of environmental claims and transactions involving certain sites under discussion, and plan and estimation-related matters. Stroock communicated with the Debtors, their financial advisors and the Committee through numerous memoranda on this meeting and its agenda, and reviewed all materials relevant for the meeting.  Also during this Compensation Period, Stroock and the Debtors' representatives engaged in a number of conference calls during which pending motions, Court hearings and upcoming matters were discussed, as were various PI Estimation-related issues.

31.     Through its correspondence and communication with the Committee, Stroock has assisted the Committee in fulfilling its statutory duties to make informed decisions and express the Committee's views regarding the issues which arise in these cases, to support the establishment of appropriate processes for the estimation or adjudication, as applicable, of the Debtors' asbestos liabilities, and participate in the estimation proceedings and in the preparation of a plan providing appropriate treatment for the creditors represented by the Committee. Stroock has expended 91.2 hours on this category for a fee of $60,403.00.

### Fee Application, Applicant -- Category 0018

32.     During this Compensation Period, Stroock prepared its fee statements for the months of May 2007, June 2007, July 2007, and August 2007 and related notices, affidavits of service and certifications of no objection where applicable.  Stroock also prepared its Twenty-

Fifth Quarterly Fee Application covering the period from April 1, 2007 through June 30, 2007 (the "prior compensation application"), including a narrative section summarizing the services rendered during that period by Stroock and numerous fee and expense schedules, as required by the Administrative Fee Order entered by the Court. Stroock has expended 88.4 hours on this category for a fee of $32,296.00.

### Creditor Inquiries -- Category 0019

33.    During this Compensation Period, Stroock responded to inquiries from unsecured creditors with respect to the status of these cases, the impact of the Court's ruling terminating the Debtors' exclusive periods, the upcoming estimation of asbestos liabilities and related plan issues, and the results of and matters addressed during the hearings held during this Compensation Period. Stroock has expended 3.6 hours on this category for a fee of $2,586.50.

### Fee Application, Others -- Category 0020

34.    During this Compensation Period, Stroock prepared notices, affidavits of service and certifications with respect to Capstone's monthly fee statements for the months of May 2007 and June 2007 and with respect to Capstone's Thirteenth Quarterly Fee Application. Stroock also attended to fee applications of other professionals retained in these cases, the objections filed to the Forman & Perry application filed by the United States Trustee and the ACC, to final reports issued by the Fee Auditor and the Debtors' motion seeking to increase the ordinary course professionals cap. Stroock has expended 22.2 hours on this category for a fee of $11,099.00.

14

### Employee Benefits, Pension -- Category 0021

35.     During this Compensation Period, the Debtors filed a motion seeking authorization to implement a long term incentive compensation plan for key employees for the three year period 2007 to 2009.  Stroock reviewed Debtors' motion and Capstone's memorandum to the Committee on this matter.  Stroock has expended 2.2 hours on this category for the fee of $1,331.00.

### Environmental Matters/Regulations/Litigation -- Category 0022

36.     As reflected elsewhere in this Application, during this Compensation Period, the Debtors sought approval for the sale of their Washcoat business and began to discuss with the Committee certain settlements of environmental claims and transactions involving sites with environmental issues that were under discussion.  Services in this category relate to Stroock's attention to (i) the environmental assessment reports prepared in connection with the Washcoat sale and (ii) documentation and other materials provided by Debtors' representatives to Stroock and the Committee in advance of the Committee's meeting with the Debtors' representatives during this Compensation Period.  Stroock has expended 21.3 hours on this category for fee of $13,012.50.

### Investigations -- Category 0031

37.     During this Compensation Period, Stroock attended to the opinion issued by the Ninth Circuit Court of Appeals in the appeal filed by the United States Government to certain of Judge Molloy's pre-trial rulings in the Libby-related criminal action against the Debtors in the State of Montana.  Stroock has expended 1.4 hours on this category for fee of $916.00.

**Travel – Non Working -- Category 0035**

38.     Stroock's fees in this category during this Compensation Period relate to Stroock attorneys traveling (i) to and from Wilmington, DE for the omnibus hearing before Judge Fitzgerald on July 23, 2007, (ii) to Pittsburgh, PA for the personal injury discovery-related hearing before Judge Fitzgerald on August 1, 2007 and (iii) to and from Wilmington, DE to use the video hook up of the omnibus hearing before Judge Fitzgerald on August 29, 2007 in Pittsburgh, PA.  Stroock has expended 17.3 hours on this category for a fee of $13,058.00 for which Stroock is seeking payment in the amount of $6,529.00.

**Plan and Disclosure Statement -- Category 0036**

39.     As reported in prior compensation applications, Judge Fitzgerald issued an order (the "Exclusivity Extension Order") extending the Debtors' exclusive period to file a plan through the July 24, 2007 omnibus hearing, and an appeal was taken by the Asbestos Claim Committees and the Futures Representative to the Court's Order.  Subsequently, the appellants' appealed to the Third Circuit from the District Court's Memorandum and Order affirming the Court's Exclusivity Extension Order and filed a motion with the Court of Appeals seeking expedited consideration of the appeal, which the Third Circuit denied just prior to the end of the prior compensation period.  In addition, as reported in the prior compensation application, the Debtors filed a motion seeking to further extend their exclusive periods until after the PI Estimation hearing ("Debtors' Renewed Exclusivity Motion").

40.     During this Compensation Period, Stroock attended to the brief filed by appellants, the ACC, the PD Committee and the Futures Representative to the Exclusivity Extension Order.  In addition, Stroock attended to the objections filed by the ACC and FCR jointly and by the United States Trustee to Debtors' Renewed Exclusivity Motion, the Debtors'

16

reply thereto, discussed these matters with the Committee in advance of the July 23, 2007

hearing to consider the motion, and after the Court issued its ruling terminating the Debtors'

exclusive periods. Further during this Compensation Period, Stroock continued to attend to plan-

related materials and issues, and analyses prepared by Capstone. Stroock expended 55.0 hours

on this category for a fee of $34,852.50.

### Hearings -- Category 0037

41.     During this Compensation Period, Judge Fitzgerald held three omnibus hearings,

and four additional hearings in Pittsburgh, PA, which hearings addressed, among other matters,

the Debtors' Renewed Exclusivity Motion and the oppositions thereto, the NJDEP's motion to

file a late proof of claim, the Washcoat business sale and other typical chapter 11 case matters, as

well as numerous PI Estimation and PD Claims litigation-related matters and issues. Stroock

reviewed each of the agenda notices and all relevant pleadings, orders, stipulations, pre-trial

motions and briefs and other documentation in advance of these hearings and participated in a

number of conference calls and pre-trial hearings discussing these matters, as applicable.

Stroock prepared for and attended the hearings, and advocated the Committee's positions, as

appropriate. After the hearings, Stroock, as reflected elsewhere in this Application, prepared

memoranda informing the Committee of the arguments made at, and the results of, the hearings.

Stroock expended 62.5 hours on this category for a fee of $41,963.00.

### Employment Applications - Others – Category 0040

42.     During this Compensation Period, several retention-related applications were filed

including the ACC's motion seeking to retain as its financial advisor Charter Oak Financial

Consultants, an entity then recently formed by several former employees of L. Tersigni

Consulting. Stroock reviewed the motions and responses filed, including the US Trustee's

17

motion for an examiner to investigate the Tersigni firm's alleged improper billing practices. Stroock expended 3.5 hours on this category for a fee of $2,221.00.

### Tax Issues – Category 0047

43.    During this Compensation Period, the Debtors filed a motion seeking authorization to undertake certain transactions, including ones involving certain of the Debtors' foreign subsidiaries, in order to preserve the value of the Debtors' NOLs and establish a structure for tax efficient chapter 11 emergence financing (the "Tax Optimization Plan"). Stroock reviewed the motion, participated in several conference calls with the Debtors' in-house tax personnel and other representatives on this proposed program, reviewed all documentation and materials provided to it, and worked with Capstone to prepare a memorandum for the Committee discussing this matter. Stroock expended 18.5 hours on this category for a fee of $11,363.00.

### FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

44.    The factors to be considered in awarding attorneys fees have been enumerated in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547 F.2d 573, cert. denied, 431 U.S. 904; these standards have been adopted by most courts. Stroock respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

>    The Time and Labor Required. The professional services rendered by Stroock on behalf of the Committee have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the complex issues encountered by the Committee with skill and dispatch. Occasionally,

Stroock has been required to perform these services under significant time constraints requiring work late into the evening and on weekends. The services rendered by Stroock were performed efficiently, effectively and economically.

The Novelty and Difficulty of Questions. Novel and complex issues have already arisen in the course of these Chapter 11 cases, and it can be anticipated that other such issues will be encountered. In this case, as in many others in which the firm is involved, Stroock's effective advocacy and creative approach have helped clarify and resolve such issues and will continue to prove beneficial.

The Skill Requisite to Perform the Legal Services Properly. Stroock believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Stroock's practice, and its creative approach to the resolution of issues, are and will continue to contribute to the maximization of the distributions to the Debtors' unsecured creditors.

The Preclusion of Other Employment by Applicant Due to Acceptance of the Case. Due to the size of Stroock's insolvency department, Stroock's representation of the Committee has not precluded its acceptance of new clients. However, the volume of the matters needing attention on a continuing basis has required several of the attorneys to commit significant portions of their time to these cases.

19

The Customary Fee.  The fee sought herein is based upon Stroock's normal hourly rates for services of this kind.  Stroock respectfully submits that the fee sought herein is not unusual given the magnitude and complexity of these cases and the time expended in attending to the representation of the Committee, and is commensurate with fees Stroock has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

Whether the Fee is Fixed or Contingent.  Pursuant to §§ 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed under § 1103 of the Code are contingent pending final approval by this Court, and are subject to adjustment dependent upon the services rendered and the results obtained.

Time Limitations Imposed by Client or Other Circumstances.  As already indicated, Stroock has attended to the various issues arising in these cases. Occasionally, Stroock has had to perform those services under significant time constraints requiring attorneys assigned to these cases to work evenings and on weekends.

The Amount Involved and Results Obtained.  Through the efforts of Stroock, the Committee has been an active participant in these Chapter 11 cases from the very first days of its formation, and its assistance, as well as constructive criticism, has greatly contributed to the efficient administration of these cases.

The Experience, Reputation and Ability of the Attorneys.  Stroock has one of the largest and most sophisticated insolvency practices in the nation and has played a major role in numerous cases of national import including: Acme Metals, Inc., Hillsborough Holdings Corporation, Laclede Steel Company, Gulf States Steel, Inc. of Alabama, The LTV Corporation, Wheeling-Pittsburgh Steel Corporation, Allis-Chalmers Corporation, The Charter Company, Federated Department Stores, G. Heileman Brewing Company, Inc., Burlington Motor Holdings, Inc., Metallurg, Inc., Forstmann & Company, Inc., Barneys, Inc., Fruehauf Trailer Corporation, Levitz Furniture Incorporated, The Columbia Gas System, Inc., JWP, Inc., Flushing Hospital and Medical Center, Planet Hollywood International, Anchor Glass Container Corporation, Beloit Corporation in the Harnischfeger Industries Chapter 11 Cases, RSL COM U.S.A. Inc, USG Corporation, Formica Corp. Galey & Lord, Inc. and DESA Holdings. Stroock's experience enables it to perform the services described herein competently and expeditiously.  In addition to its expertise in the area of corporate reorganization, Stroock has already frequently called upon the expertise of its partners and associates in the litigation, ERISA, tax, environmental and intellectual property law areas to perform the wide ranging scope of the legal work necessitated by these cases.

The "Undesirability" of the Case.  These cases are not undesirable, but as already indicated, have required a significant commitment of time from several of the attorneys assigned hereto.

21

<u>Nature and Length of Professional Relationship</u>. As described above, Stroock has been actively rendering services on behalf of the Committee as necessary and appropriate from April 12, 2001 through to the present.

## ALLOWANCE OF COMPENSATION

45.    The professional services rendered by Stroock required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited the Debtors' unsecured creditor body as a whole and the Debtors' estates.

46.    With respect to the level of compensation, § 330 of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person (including attorneys for a creditors' committee): "Reasonable compensation for actual necessary services rendered by [such] . . . professional person. 11 U.S.C. § 330. Section 330 further states that the court should take into consideration, <u>inter alia</u>, the nature, extent, and value of services performed, as well as the cost of comparable services other than in a case under this title. <u>Id.</u> The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

47.    The total time spent by Stroock attorneys and paraprofessionals during the Compensation Period for which Stroock seeks payment was 993.5 hours. Such services have a

22

fair market value of $510,043.50. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

48.     As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit "C" are summaries of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.

49.     In addition, Stroock incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $10,433.15 for which Stroock respectfully requests reimbursement in full. The disbursements and expenses have been incurred in accordance with Stroock's normal practice of charging clients for expenses clearly related to and required by particular matters. Such expenses were sometimes incurred to enable Stroock to devote time beyond normal office hours to matters, which imposed extraordinary time demands. Stroock has endeavored to minimize these expenses to the fullest extent possible. Attached hereto as Exhibit "D" is a summary chart reflecting each category of disbursement for which Stroock seeks reimbursement.

50.     Stroock's billing rates do not include charges for photocopying, telephone and telecopier toll charges, computerized research, travel expenses, "working meals", secretarial overtime, postage and certain other office services, because the needs of each client for such services differ. Stroock believes that it is fairest to charge each client only for the services actually used in performing services for it. Stroock has endeavored to minimize these expenses to the fullest extent possible.

23

51.     Stroock charges $.10 per page for in-house photocopying services, with respect to computerized research services Stroock charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions. Stroock does not charge for incoming facsimiles.

52.     Further, in accordance with the Court's June 22, 2001 Order Authorizing the Retention of Experts, this Application seeks payment in the aggregate amount of $418,269.08, for the fees and expenses of Navigant for the extensive PI Estimation-related services rendered on behalf of the Committee in the months of July 2007 and August 2007.

53.     No agreement or understanding exists between Stroock and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

54.     Stroock has reviewed the requirements set forth in Delaware Local Rule 2016-2, entitled "Motion for Compensation and Reimbursement of Expenses," and believes that this application for interim compensation and reimbursement of expenses is fully in compliance with the rules set forth therein.

55.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period other than as set forth herein.

**WHEREFORE**, Stroock respectfully requests, pursuant to the Administrative Fee Order and the Court's June 22, 2001 Order Authorizing the Retention of Experts:

the allowance of compensation for professional services rendered to the Committee during the period from July 1, 2007 through and including September 30, 2007 in the amount of $510,043.50;

24

the reimbursement of Stroock's out-of-pocket expenses incurred in connection

with the rendering of such services during the period from July 1, 2007 through

and including September 30, 2007 in the amount of $10,433.15;

the payment of the fees and expenses of the Asbestos Issues Expert employed by

the Committee for the months of July and August 2007 in the aggregate amount

of $418,269.08;

authorizing and directing the Debtors to pay to Stroock each of the amounts set

forth in (a) (b) and (c) of this WHEREFORE clause (to the extent not already paid

pursuant to the Administrative Fee Order); and

granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      December 12, 2007

                    STROOCK & STROOCK & LAVAN LLP

                    Lewis Kruger
                    Kenneth Pasquale
                    Members of the Firm
                    180 Maiden Lane
                    New York, New York 10038-4982
                    (212) 806-5400

                    Co-Counsel for the Official Committee of
                    Unsecured Creditors of W. R. Grace & Co., et al.

25