THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Objection Deadline: January 11, 2008 |
| | ) | Hearing Date: January 28, 2008 at 1:00 p.m. |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING
SETTLEMENT AGREEMENT RESOLVING THE UNITED STATES' PROOFS OF
CLAIM REGARDING CERTAIN ENVIRONMENTAL MATTERS**

The Debtors respectfully move this Court (the "Motion") for the entry of an order approving the Settlement Agreement Resolving the United States' Proofs of Claim for Certain Environmental Matters (the "Settlement Agreement", a copy of which is attached as Exhibit A hereto), pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019, and in support thereof, state the following:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for this Motion are section 105 of the Bankruptcy Code and Fed. R. Bankr. P. 9019.

## Background and Proofs of Claim

3. On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

4. On or about March 28, 2003, the United States[2] on behalf of the Environmental Protection Agency, the United States Department of Agriculture Forest Services, and the Army Corps of Engineers, filed its proofs of claim numbered 9634 and 9635 (the "Proofs of Claim") relating to the obligations and liabilities of Grace arising from environmental contamination at numerous sites around the country.

5. Proof of Claim No. 9634 seeks cost recovery and injunctive relief in connection with environmental remedial liability at 32 sites and at unspecified future sites. The Debtor-owned sites named in Claim No. 9634 include both closed and operating facilities. The non-Debtor-owned sites named in Claim No. 9634 consist primarily of multi-party Superfund sites at which Grace has varying degrees of involvement. The United States claims that it is entitled to

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Settlement Agreement.

administrative expense priority for the cost of post-petition response actions on Debtor-owned facilities, but that for pre-petition costs, its claim is a general unsecured claim.[3]

### Settlement

6. To avoid protracted litigation and resolve their liability in connection with the sites, the Debtors and the United States have agreed to a settlement as outlined in the attached Settlement Agreement.

7. The Settlement Agreement resolves the Proofs of Claim for liabilities at 35 sites for a total of $44.1 million. These costs are divided between administrative claims of $2.3 million for certain post-petition costs at Debtor-owned sites (the "Environmental Administrative Claims") and general unsecured claims of $41.8 million (the "Environmental General Unsecured Claims").

8. The Settlement Agreement calls for $672,574.42 of the Environmental Administrative Claims to be paid within 30 days of Court approval of the Settlement Agreement (the "Paid Environmental Administrative Claims"). The balance of the Environmental Administrative Claims (the "Remaining Environmental Administrative Claims") and all of the Environmental General Unsecured Claims will be paid pursuant to confirmation of a chapter 11 plan. Claims relating to three (3) sites, (Curtis Bay FUSRAP in Baltimore, Maryland; Blackburn & Union Privileges in Walpole, Massachusetts; and Libby in Montana) are being resolved by separate negotiations.

9. Interest, if applicable, on the allowed Environmental General Unsecured Claims begins to accrue for each such claim on dates specified in the Settlement Agreement, which are generally based on the date when the parties reached agreement as to the claim amount. Interest

---

[3] Proof of Claim No. 9635 seeks cost recovery and injunctive relief in connection with the EPA's response actions in Libby, Montana and but for certain specified exceptions is anticipated to be resolved pursuant to a separate agreement.

on these claims will be paid, only if permitted by and in the same manner as all other general unsecured claims under the Debtors' confirmed chapter 11 plan.

10. Claims for 29 non-Debtor owned sites are addressed and liquidated in the Settlement Agreement and are referred to as the Liquidated Sites. For each Liquidated Site, the Debtors have negotiated a settlement amount for pre- and post-petition costs that will resolve all liability to EPA and to other potentially responsible parties ("PRPs"). For some sites, the payments of the corresponding allowed portion of the claim upon confirmation of a chapter 11 plan will be made to the PRPs; for others, to the EPA. These amounts are set out in the Settlement Agreement.

11. In order to resolve how the bankruptcy cases will affect claims on other sites that may arise in the future in connection with environmental contamination, the Settlement Agreement provides that Additional Sites, as defined therein, will be treated in the same manner that they would be absent the bankruptcy, but will be general unsecured claims under the confirmed chapter 11 plan in whatever percentage the plan provides for dividends to general unsecured claims.

12. The Settlement Agreement also acknowledges that for seven (7) of the sites, proofs of claim have also been filed by non-governmental parties and the Agreement provides a mechanism for these proofs of claim to be resolved simultaneously.

13. Pursuant to the Settlement Agreement, the Debtors agree to continue performance of environmental response actions at Debtor owned-sites where they are already obligated to do so pursuant to existing orders or consent agreements.

**Relief Requested**

14. By this Motion, the Debtors respectfully seek the entry of an order, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Debtors' execution of the Settlement Agreement; (ii) allowing the claims in the sums provided for therein; (iii) granting the Debtors authority to make the payment to the United States of the Paid Environmental Administrative Claims as set forth in the Settlement Agreement; and (iii) granting such other relief as may be appropriate.

**Basis for Relief**

**Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019(a)**

15. Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. Pro. 9019(a).

16. Courts generally favor minimizing litigation and expediting the administration of a bankruptcy case. See Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); see also In re Key3Media Group, Inc., 2006 WL 2842462, at *3 (D. Del. 2006). Settlements and compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)). Indeed, compromises are favored in bankruptcy. Martin, 91 F.3d at 393.

17. Before approving a settlement under Bankruptcy Rule 9019, however, a court must determine that the proposed settlement is in the best interests of the debtor's estate. See id. at 394; In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) ("The ultimate

inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'"). To reach this determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. See Martin, 91 F.3d at 393.

18. The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id. at 393; see also In re Nutraquest, Inc., 434 F.3d 639 (3d Cir. 2006).

19. It is also well-settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." Key3Media Group, 2006 WL 2842462, at *3; In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)). Under this test, a proponent must simply demonstrate that a proposed settlement does not fall "below the lowest point in the range of reasonableness." World Health Alternatives, 344 B.R. at 1114 (citations omitted).

### Application of Standards for Approval of a Settlement to the Facts of This Case

20. The Debtors have determined that entry into the Settlement Agreement is in the best interests of the Debtors and their estates and serves a public interest. The Settlement Agreement was the product of a rigorous negotiation process, is fair and reasonable, and is within the reasonable range of litigation possibilities.

21. The Settlement Agreement prevents the incurrence of significant transaction costs and cost-effectively resolves significant environmental liabilities of the Debtor. The court's

approval of the Settlement Agreement will resolve the United States' Proofs of Claim without forcing litigation. Allowing the settlement to proceed will eliminate claims for over $700 million against the Debtors' estates for the amount of only $44.1 million.

22. Furthermore, this settlement allows the Debtors to avoid potential additional or increased obligations. The settlement will preclude any future claim concerning the Debtors' responsibility regarding remediation or other liability with respect to the Liquidated Sites and will constitute a final resolution of the Debtors' liability relating thereto. Under the Settlement Agreement, the Debtors will receive contribution protection and a covenant not to sue from the United States.

23. Finally, approval of the settlement benefits the public. Approval of the settlement will support the remediation of the sites. The settlement provides assurance to the creditors that environmental liabilities associated with the sites are fully addressed. Clearly, the resolution of environmental claims at the Liquidated Sites and support for the remediation of Sites serve the public interest.

24. For the above reasons, the Debtors believe that the Settlement Agreement represents a reasonable settlement of the United States' Proofs of Claim and the Court should approve the Settlement Agreement.

## Conclusion

25. The proposed Settlement Agreement is fair and equitable and in the best interests of the Debtors, their estates, and their creditors, and also in the public interest. In addition, the Debtors reasonably believe that the relief requested in this Motion will aid in the expeditious resolution of these Chapter 11 Cases. Accordingly, the Debtors have demonstrated a sound

business justification and public interest for the execution and consummation of the Settlement Agreement.

## Notice

26. Notice of this Motion has been given to: (i) the office of the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to each of the official committees appointed in these Chapter 11 Cases, (v) counsel to the Future Claimants' Representative; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; and (vii) counsel to the United States. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

27. No prior motion or application for the relief requested herein has been made to this or any other court.

28. The Debtors respectfully request that the hearing on this motion not be held until the United States informs the Court of any public comment on the Settlement Agreement and of the United States' responses to these comments, consistent with paragraph 37 of the Settlement Agreement.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached as <u>Exhibit B</u> hereto, (i) approving the Debtors' execution of the Settlement Agreement attached as <u>Exhibit A</u> hereto, (ii) authorizing the Debtors to consummate the transactions contemplated thereby, and (iii) granting such other relief as may be just or proper.

Dated: December 19, 2007

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Andrea L. Frost (née Andrea L. Johnson)
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(302) 652-4100
(302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession