UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                         . Case Nos. 00-22876-JKF
                               .           01-01139-JKF
 PITTSBURGH CORNING CORP.,     .           01-10578-JKF
 W.R. GRACE, FEDERAL MOGUL,    .           02-20198-JKF
 NORTH AMERICAN REFRACTORIES   .           02-12687-JKF
 CO., ACandS, INC., GLOBAL     .           02-21626-JKF
 INDUSTRIAL TECHNOLOGIES, and .            04-11300-JKF
 THE FLINKOTE COMPANY,         .
                               . 5414 USX Tower Building
            Debtors.           . Pittsburgh, PA  15222
                               .
                               . December 11, 2007
. . . . . . . . . . . . . . . . 1:35 p.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For Pittsburgh Corning:        Reed Smith, LLP
                               By:  DAVID ZIEGLER, ESQ.
                                    JAMES RESTIVO, ESQ.
                               435 Sixth Avenue
                               Pittsburgh, PA  15219

For the Pittsburgh Unsecured   Leech Tishman Fuscaldo & Lampl
Trade Committee:               By:  CRYSTAL THORNTON, ESQ.
                               1800 Frick Building
                               Pittsburgh, PA  15219

Audio Operator:                Lynn Wallace & Cathy Younker

Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

APPEARANCES (Cont'd.):

For ACC:                        Campbell & Levine
                                By:   DAVID SALZMAN, ESQ.
                                      PHILIP MILCH, ESQ.
                                        (telephonic appearance)
                                1700 Grant Building
                                310 Grant Street
                                Pittsburgh, PA  15219

                                Caplin & Drysdale, Chartered
                                By:   PETER VAN N. LOCKWOOD, ESQ.
                                One Thomas Circle, N.W.
                                Washington, DC  20005
                                (telephonic appearance)

Insurance Counsel to ACC:       Anderson Kill & Olick, P.C.
                                By:   ROBERT M. HORKOVICH, ESQ.
                                1251 Avenue of the Americas
                                New York, NY  10020
                                (telephonic appearance)

For Certain PCC Cancer          Montgomery, McCracken, Walker
Claimants:                       & Rhoads, LLP
                                By:   NATALIE D. RAMSEY, ESQ.
                                      NOEL C. BURNHAM, ESQ.
                                123 South Broad Street
                                Philadelphia, PA  19109
                                (telephonic appearances)

For Corning, Inc.:              Thorp Reed & Armstrong, LLP
                                By:   KIMBERLY L. WAKIM, ESQ.
                                      ELENE M. MORAN, ESQ.
                                One Oxford Centre
                                301 Grant Street
                                14th Floor
                                Pittsburgh, PA  15219

                                Ward Norris Heller & Reidy LLP
                                By:   CHERYL A. HELLER, ESQ.
                                      THOMAS D'ANTONIO, ESQ.
                                300 State Street
                                Rochester, New York 14614

For PPG Industries:             Kirkpatrick & Lockhart, LLP
                                By:   DAVID F. McGONIGLE, ESQ.
                                      DAVID MURDOCH, ESQ.
                                Henry W. Oliver Building
                                535 Smithfield Street
                                Pittsburgh, PA 15228

APPEARANCES (Cont'd.):

For North Star:                  Skadden, Arps, Slate, Meagher
                                  & Flom, LLP
                                 By:  MICHAEL J. BALCH, ESQ.
                                 Four Times Square
                                 New York, NY  10036
                                 (telephonic appearance)

For Transport Insurance &        Lindabury, McCormick & Estabrook
Agricultural Insurance:          By:  JAY LAVROFF, ESQ.
                                 53 Cardinal Drive, P.O. Box 2369
                                 Westfield, New Jersey 07091
                                 (telephonic appearance)

For Reaud, Morgan & Quinn:       Stutzman, Bromberg, Esserman,
                                  & Plifka, PC
                                 By:  DAVID J. PARSONS, ESQ.
                                      SANDER L. ESSERMAN, ESQ.
                                       (telephonic appearance)
                                 2323 Bryan Street
                                 Suite 2200
                                 Dallas, TX  75201

For Allstate Insurance Co.:      Rivkin Radler LLP
                                 By:  MICHAEL BUCKLEY, ESQ.
                                 EAB Plaza (Long Island)
                                 Uniondale, NY  11556
                                 (telephonic appearance)

For Mt. McKinley:                Litchfield Cavo
                                 By:  DENNIS DOLAN, ESQ.
                                 Suite 200
                                 303 West Madison Street
                                 Chicago, IL  60606
                                 (telephonic appearance)

For Continental Insurance        Carroll, Burdick & McDonough LLP
Company:                         By:  GRETCHEN RAMOS, ESQ.
                                 44 Montgomery Street
                                 Suite 400
                                 San Francisco, CA  94104
                                 (telephonic appearance)

APPEARANCES (Cont'd.):

For Certain Underwriters at        Duane Morris LLP
Lloyds, London and Certain         By:  JEFF D. KAHANE, ESQ.
London Market Insurers:            633 West 5th Street
                                   Suite 4600
                                   Los Angeles, CA  90071
                                   (telephonic appearance)


For Future Claimants:              Young Conaway Stargatt & Taylor,
                                    LLP
                                   By:  EDWIN J. HARRON, ESQ.
                                   The Brandywine Building
                                   1000 West Street
                                   17th Floor
                                   P.O. Box 391
                                   Wilmington, DE  19899
                                   (telephonic appearance)


For Everest Insurance:             McClain, Maney & Patchin
                                   By:  DAVID P. McCLAIN, ESQ.
                                   South Tower
                                   Pennzoil Place
                                   711 Louisiana
                                   Suite 3100
                                   Houston, TX  77002
                                   (telephonic appearance)


For Futures Asbestos Claims        Meyer, Unkovic & Scott LLP
Representative:                    By:  JOEL M. HELMRICH, ESQ.
                                   1300 Oliver Building
                                   535 Smithfield Street
                                   Pittsburgh, PA  15222


For Employers Insurance            Dorsey & Whitney, LLP
of WAUSAU:                         By:  JORDAN I. BRACKETT, ESQ.
                                   250 Park Avenue
                                   New York, NY  10177
                                   (telephonic appearance)


For Lumbermens Mutual              Drinker Biddle & Reath LLP
Casualty Co. and Seaton:           By:   MICHAEL F. BROWN, ESQ.
                                         JEFFREY BOERGER, ESQ.
                                   One Logan Square
                                   18th & Cherry Streets
                                   Philadelphia, PA  19103
                                   (telephonic appearances)

APPEARANCES (Cont'd.):

| | |
|---|---|
| For Evanston Insurance Co.<br>& Associated International: | Traub Eglin Lieberman Straus<br>By:   ROBERT P. SIEGEL, ESQ.<br>Mid-Westchester Executive Park<br>7 Skyline Drive<br>Hawthorne, NY  10532<br>(telephonic appearance) |
| For Certain Underwriters of<br>Lloyds London & London<br>Market Insurers: | Tucker Arensberg, P.C.<br>By:   BEVERLY WEISS MANNE, ESQ.<br>1500 One PPG Place<br>Pittsburgh, PA  15222 |
| For Berkshire Hathaway: | Graham, Curtin & Sheridan<br>By: ROBERT W. MAURIELLO, JR.,ESQ.<br>Four Headquarters Plaza<br>P.O. Box 1991<br>Morristown, NJ  07962<br>(telephonic appearance) |
| For Future Representatives: | Young Conaway Stargatt & Taylor,<br> LLP<br>By:   SHARON M. ZIEG, ESQ.<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>P.O. Box 391<br>Wilmington, DE  19899<br>(telephonic appearance) |
| For ACE Insurers: | White and Williams LLP<br>By:   MICHAEL OLSAN, ESQ.<br>1800 One Liberty Place<br>Philadelphia, PA  19103<br>(telephonic appearance) |
| For Travelers Casualty &<br>Surety Co. | Debevoise & Plimpton, LLP<br>By:   ROBERT D. GOODMAN, ESQ.<br>     STEPHEN VACCARO, ESQ.<br>     MARSHA YEE, ESQ.<br>919 Third Avenue<br>New York, NY  10022<br>(telephonic appearances)<br><br>LEONARD BIERINGER<br>(telephonic appearance) |
| For Federal-Mogul Global,<br>Inc. & The Flinkote Co.: | Sidley Austin<br>By:   KEVIN LANTRY, ESQ.<br>555 West Fifth Street<br>Los Angeles, CA  90013<br>(telephonic appearance) |

APPEARANCES (Cont'd.):

For Pittsburgh Corning:          Pittsburgh Corning
                                 By:  JOSEPH NESE
                                 (telephonic appearance)

For Federal-Mogul Global,        Pachulski, Stang, Ziehl, Young,
Inc., W.R. Grace & Co.,           Jones & Weintraub, P.C.
& The Flinkote Company:          By:  JAMES E. O'NEILL, ESQ.
                                 919 North Market Street
                                 17th Floor
                                 P.O. Box 8705
                                 Wilmington, DE  19899
                                 (telephonic appearance)

For Asbestos Claimants:          Hartley & O'Brien
                                 By:  J. MICHAEL PRASCIK, ESQ.
                                 The Wagener Building
                                 2001 Main Street, Suite 600
                                 Wheeling, WV  26003-2855
                                 (telephonic appearance)

For Royal Alliance et al.:       Wilson Elser Moskowitz Edelman
                                  & Dicker LLP
                                 By:  CARL J. PERNICONE, ESQ.
                                 150 East 42nd Street
                                 New York, NY  10017
                                 (telephonic appearance)

For W.R. Grace & Co., Inc.:      W.R. Grace & Co., Inc.
                                 By:  WILLIAM SPARKS
                                 (telephonic appearance)

For Official Committee of        Duane Morris LLP
Unsecured Creditors:             By:  MICHAEL R. LASTOWSKI, ESQ.
                                 1100 North Market Street
                                 Suite 1200
                                 Wilmington, DE 19801
                                 (telephonic appearance)

For W.R. Grace & Co.:            Kirkland & Ellis, LLP
                                 By:  JANET S. BAER, ESQ.
                                 Aon Center
                                 200 East Randolph Drive
                                 Chicago, IL  60601
                                 (telephonic appearance)

APPEARANCES (Cont'd.):

```
For Official Committee of      Campbell & Levine, LLC
Asbestos Personal Injury       By:  MARK T. HURFORD, ESQ.
Claimants:                     800 N. King Street
                               Suite 300
                               Wilmington, DE  19801
                               (telephonic appearance)


                               Caplin & Drysdale, Chartered
                               By:  JAMES WEHNER, ESQ.
                               One Thomas Circle, N.W.
                               Washington, DC  20005
                               (telephonic appearance)

For Official Committee of      Stroock & Stroock & Lavan, LLP
Unsecured Creditors:           By:  ARLENE G. KRIEGER, ESQ.
                               180 Maiden Lane
                               New York, NY  10038
                               (telephonic appearance)

For David T. Austern, The      Phillips, Goldman & Spence, P.A.
Future Claimants Rep:          By:  JOHN C. PHILLIPS, JR., ESQ.
                               1200 North Broom Street
                               Wilmington, DE  19806
                               (telephonic appearance)

For Cooper Industries:         Orrick, Herrington & Sutcliffe,
                                 LLP
                               By:  KATHERINE S. THOMAS, ESQ.
                               Washington Harbour
                               3050 K Street, N.W.
                               Washington, DC  20007
                               (telephonic appearance)

For Murray Capital Mgt.:       Murray Capital Management
                               By:  MARTI MURRAY
                               (telephonic appearance)

For Official Committee of      Ferry, Joseph & Pearce, P.A.
Asbestos Property Damage        By:  Theodore J. TACCONELLI, ESQ.
Claimants:                     824 Market Street
                               Suite 904
                               P.O. Box 1351
                               Wilmington, DE  19899
                               (telephonic appearance)
```

APPEARANCES (Cont'd.):

For the U.S. Trustee:            Office of the U.S. Trustee
                                 By: RICHARD L. SCHEPACARTER, ESQ.
                                 J. Caleb Boggs Federal Building
                                 844 King Street
                                 Suite 2313
                                 Lockbox 35
                                 Wilmington, DE  19801
                                 (telephonic appearance)

For Official Committee of        The Bayard Firm
Unsecured Creditors:             By:  CHARLENE D. DAVIS, ESQ.
                                 222 Delaware Avenue
                                 Suite 900
                                 P.O. Box 25130
                                 Wilmington, DE  19899
                                 (telephonic appearance)

For U.S. Trustee Department:     Office of the U.S. Trustee
                                 By:  DAVID M. KLAUDER, ESQ.
                                 601 Walnut Street
                                 Room 950W
                                 Philadelphia, PA  19106
                                 (telephonic appearance)

For Dow Jones News Wires:        Dow Jones News Wires
                                 By:  PEG BRICKLEY
                                 (telephonic appearance)

For Employers Insurance          Hamilton, Altman, Canale & Dillon
Co. of Wausau:                   By:  AMY SPECKTOR, ESQ.
                                 4600 East West Highway, Suite 201
                                 Bethesda, MD  20814
                                 (telephonic appearance)

For AcandS, Inc.:                Pachulski, Stang, Ziehl, Young,
                                  Jones & Weintraub, P.C.
                                 By:  CURTIS A. HEHN, ESQ.
                                     LAURA DAVIS JONES, ESQ.
                                 919 North Market Street
                                 17th Floor
                                 P.O. Box 8705
                                 Wilmington, DE  19899
                                 (telephonic appearances)

APPEARANCES (Cont'd.):

```
For Imperial Tobacco Canada     Kirkland & Ellis, LLP
Limited:                        By:  DAVID M. BERNICK, ESQ.
                                     ADAM PAUL, ESQ.
                                Aon Center
                                200 East Randolph Drive
                                Chicago, IL  60601
                                (telephonic appearances)

                                Kirkland & Ellis, LLP
                                By:  THEODORE L. FREEDMAN, ESQ.
                                Citigroup Center
                                153 East 53rd Street
                                New York, NY  10022
                                (telephonic appearance)

                                King & Spalding
                                By:  MARK MALONEY, ESQ.
                                     JAMES A. PARDO, JR., ESQ.
                                     FELTON E. PARRISH, ESQ.
                                1180 Peachtree Street
                                Atlanta, GA  30309
                                (telephonic appearances)

                                Morris, James, Hitchens &
                                 Williams, LLP
                                By:  STEPHEN M. MILLER, ESQ.
                                PNC Bank Center
                                222 Delaware Avenue
                                10th Floor
                                P.O. Box 2306
                                Wilmington, DE  19899
                                (telephonic appearance)
```

1          THE COURT:  The matter of Pittsburgh Corning

2    Corporation, 00-22876.  The participants I have listed by phone

3    Robert Mauriello, Gretchen Ramos, Sharon Zeig, Robert

4    Horkovich, David Salzman, Jay Lavroff, Edwin Harron, Phillip

5    Milch, Peter Lockwood, Michael Balch, Michael Buckley, Jeffrey

6    Boerger, Jordan Brackett, Noel Burnham, Sander Esserman, Cheryl

7    Heller, Michael Olsan, Robert Goodman, Robert Siegel, Kevin

8    Lantry, Joseph Nese, James O'Neill, Michael Brown, Leonard

9    Bieringer, David McClain, Natalie Ramsey, Michael Prascik,

10   David Parsons, Stephen Vaccaro, Dennis Dolan, Carl Pernicone,

11   William Sparks, James O'Neill, Michael Lastowski, Janet Baer,

12   David Parsons, Mark Hurford -- I know I'm repeating names

13   because of the various cases that are being heard together with

14   Pittsburgh Corning today.  I apologize.  I should've read the

15   cases.

16          I'm into W.R. Grace now.  David Parsons, Mark

17   Hurford, Peter Lockwood, James Wehner, Arlene Krieger, Sander

18   Esserman, John C. Phillips, Michael Brown, Marty Murray,

19   Katherine Thomas.

20          Now into Federal Mogul.  Theodore Tacconelli, Richard

21   Schepacarter, James O'Neill, Charlene Davis, David Klauder,

22   Kevin Lantry, Peg Brickley, Amy Specktor, Jeffrey Kahane,

23   Katherine Thomas.

24          AcandS.  Marsha Yee, Curtis Hehn, Laura Davis Jones.

25          North American Refractories.  Phillip Milch, Peter

1 Lockwood, David Salzman.

2          Global Industrial Technologies.  Phillip Milch, Peter

3 Lockwood, David Salzman.

4          The Flinkote Company.  James O'Neill, David Bernick,

5 Theodore Freedman, Mark Maloney, Adam Paul, James Pardo, Felton

6 Parrish, Stephen Miller, and Kevin Lantry.

7          And I'll take entries in court.

8          MR. RESTIVO:  James Restivo and David Ziegler for the

9 debtor.

10          MR. HELMRICH:  Good afternoon, Your Honor.  Joel

11 Helmrich for Lawrence Fitzpatrick.

12          MR. SALZMAN:  Good afternoon, Your Honor.  David

13 Salzman for the ACC.

14          MS. WAKIM:  Good afternoon, Your Honor.  Kimberly

15 Wakim, Elane Maran, Cheryl Heller, and Thomas D'Antonio for

16 Corning, Incorporated.

17          MR. McGONIGLE:  Good afternoon, Your Honor.  David

18 McGonigle and David Murdoch for PPG Industries.

19          MS. THORNTON-ILLAR:  Good afternoon, Your Honor.

20 Crystal Thornton-Illar on behalf of Pittsburgh Corning

21 Unsecured Trade Committee.

22          MR. PARSONS:  Good afternoon, Your Honor.  David

23 Parsons actually in the courtroom not on the telephone for

24 Reaud Morgan.

25          MS. MANNE:  Good afternoon, Your Honor.  Beverly

**J&J COURT TRANSCRIBERS, INC.**

1  Weiss Manne for Certain Underwriters at Lloyds London and

2  Certain London Market Insurers.

3          THE COURT:  Mr. Restivo.

4          MR. RESTIVO:  Good afternoon, Your Honor.  We have an

5  agenda for today's omnibus hearing.  I believe there's only two

6  active matters on it.  I was told in the hallway by the

7  bankruptcy practitioners that the case you just finished was

8  kind of messy, so I will start by saying happy holidays, Your

9  Honor.

10         THE COURT:  Thank you.  Same to you.

11         MR. RESTIVO:  We're going to start with Number 6,

12 Your Honor, because there's a lot of people on the phone who

13 probably have interest only in Number 6 and not in anything

14 else.  Number 6 is a motion relating to Tercini (phonetic)

15 Consulting, and I understand that the debtor's status report is

16 going to be given by Janet Baer, who I believe is on the

17 telephone line.

18         THE COURT:  All right.  Thank you.  Ms. Baer.

19         MS. BAER:  Good afternoon, Your Honor.  Janet Baer on

20 behalf of W.R. Grace.  Your Honor, just to remind you of sort

21 of where we are, several months ago probably a little bit

22 hesitantly you entered an order appointing an examiner in the

23 W.R. Grace case and I believe a couple of the other Delaware

24 cases to investigate the Tercini situation.  The debtors were

25 all very concerned that good money would be spent going after

**J&J COURT TRANSCRIBERS, INC.**

1  bad and wanted to make sure that the Examiner was given strict

2  guidelines on what to do, and there were discussions about how

3  it would be paid for.

4          Your Honor very wisely ordered that the U.S. Trustee

5  and the various debtors have a series of telephone conferences

6  to discuss how we would do this, the mechanics and the like and

7  set today as a report back on where we are with the thought I

8  think that at this point we would know what the Examiner was

9  going to do and who the Examiner would be.  Since that time

10 there have been some significant changes.  The most significant

11 of which is that the Tercini estate filed a Chapter 11 case in

12 Connecticut a couple of weeks ago.  That we believe changed the

13 scenario quite a bit, and the first thing that came up in our

14 weekly call with the U.S. Trustee is what impact will this have

15 on the Examiner that Your Honor ordered in our case and others,

16 and what things have changed as a result?

17         The U.S. Trustee's initial concern I think was the

18 automatic stay and whether or not the automatic stay would

19 block the Examiner that you had ordered from going forward.

20 From the debtor's perspective, our concerns were not just the

21 automatic stay, which we agreed was an issue, but whether or

22 not it made sense to go forward with an examiner in these cases

23 versus getting the Tercini estate involved and having an

24 examiner or perhaps the Chapter 11 Trustee appointed in the

25 Tercini case who could, in fact, run this investigation, do it

1  on behalf of the estate at the estate's expense, and

2  investigate what happened in all of the various cases, not only

3  the Delaware cases but the Pittsburgh cases and the New Jersey

4  cases.

5       We discussed this with the U.S. Trustee.  The U.S.

6  Trustee took our thoughts under advisement.  Subsequently, we

7  discussed it further, and at that point the debtors had had

8  separate discussions among themselves and decided that they

9  thought that they best way, the most efficient way, and the

10 most cost effective way to proceed would, in fact, be to move

11 for the appointment of a Chapter 11 Trustee or perhaps an

12 examiner in the Tercini estate in Connecticut.

13      The U.S. Trustee took our recommendation under

14 advisement and then advised us about a week ago that it was not

15 going to follow that course of action.  That instead the U.S.

16 Trustee was going to, number one, file a motion to convert the

17 Tercini case to a Chapter 7 case.  And this, by the way, Your

18 Honor, is the Delaware U.S. Trustee in conjunction with and

19 jointly with the Connecticut U.S. Trustee's Office.  And,

20 secondly, that they were going to move them to lift the stay in

21 the Tercini estate, so that the Examiner Your Honor appointed

22 here and in the other debtor cases could still go forward and

23 do the investigation.

24      Again, the debtors jointly here suggested to the U.S.

25 Trustee we did not think that was a wise course of action.  It

1   didn't make any sense to us for a number of reasons.  Number

2   one, we were very concerned that if a case is converted to a

3   Chapter 7, none of us debtors will have any say in who the

4   Chapter 7 Trustee might be who would presumably be the one to

5   perhaps do some of this investigating.  As Your Honor I'm sure

6   is aware, Chapter 7 trustees generally speaking are not large

7   firms.  They're not -- they're often times sole practitioners.

8   They're not individuals who have the resources or the time

9   frankly to do the kind of investigation that may be appropriate

10  here.

11          Secondly, because all of these joint debtors are sort

12  of on both sides of the equation, being owed, we believe, money

13  by the Tercini estate but also potentially owing the Tercini

14  estate, and these are the sorts of things that have to go into

15  the investigation.  We probably would not have any input into

16  who the Trustee would be in the Chapter 7 converted case, and

17  that caused us great concern.

18          Thirdly, Your Honor, we didn't think it made any

19  sense at this point to lift the automatic stay, so that the

20  Examiner in our case, the Grace case, and the other cases would

21  still go forward at the debtors' expenses here when we have the

22  Tercini estate, which is the logical place for a trustee or

23  examiner to go forward with the investigation.  The Tercini

24  estate does have significant funds in the bank, and it seems

25  appropriate that the Tercini estate would, in fact, be the one

1 to fund this investigation.

2        In addition, Your Honor, it dealt with some of the

3 jurisdictional issues that I think were actually raised in one

4 of the Pittsburgh cases with respect to appointing an examiner,

5 and those are the 1104 issues with respect to whether an

6 examiner can be appointed at the debtors' expense when the

7 investigation is of a third party, namely, the Tercini estate.

8        Under all of these circumstances, Your Honor, we did

9 not believe that the route that the U.S. Trustee chose here,

10 the Chapter 7 conversion and then the lifting of the stay, was

11 the appropriate route to get done what needed to be done.  And,

12 Your Honor, what we would ask for and we would suggest is that

13 Your Honor effectively defer anything moving forward here with

14 respect to the Examiner in these cases to give us the

15 opportunity to address the Court in Connecticut as to whether

16 or not a Chapter 11 Trustee should be appointed in the Tercini

17 case there or alternatively a Chapter 11 Examiner to conduct

18 the investigation in that estate rather than moving forward

19 with respect to the order Your Honor's entered and appointing

20 an examiner in these cases.

21        The U.S. Trustee indicated to us in our last call

22 that they would take our request under advisement, would look

23 forward to the papers that we would file in Connecticut, and

24 then decide what position they would take with respect to what

25 we are trying to do.  But that is --

1             THE COURT:  All right.

2             MS. BAER:  That is currently where we stand, Your

3   Honor, and there's only one other thing I wanted to bring to

4   your attention.  And that is that in the course of the Tercini

5   situation and the investigation, the Tercini estate itself paid

6   a significant amount of money to the Heller Ehrman firm to do

7   an investigation itself.  We have not received a copy of that

8   report.  None of the debtors have been able to get access to

9   it.  We understand that there were confidentiality issues in

10  New Jersey that had to be resolved.  We understand that the New

11  Jersey resolved that the document is not confidential.  It's

12  not privileged, but the U.S. Trustee has not shared it with any

13  of the debtors here.  And one of the other things that we would

14  seek Your Honor's help and guidance on would be access to that

15  report from the U.S. Trustee here in these cases who does, in

16  fact, have the report and should be able to be ordered to turn

17  it over to these debtors to aid in the investigation that's

18  going to be done on our behalf.

19             THE COURT:  All right.  U.S. Trustee.

20             MR. KLAUDER:  David Klauder for the United States

21  Trustee.  Let me just give you some background here.  We filed

22  in the Tercini bankruptcy, which was filed on November 14th --

23  we filed two motions, as Ms. Baer indicated.  Those were filed

24  on December 3rd.  They were a motion to convert the case to a

25  Chapter 7 and a motion for relief from stay as it related to

1  the Examiner proceedings and the asbestos cases.  Those motions

2  were filed with expedited relief requests.  And just so Your

3  Honor knows, hearing dates have not been set on those, and

4  we're attempting -- we just filed another request to have those

5  motions put on for hearing, and we're attempting to get that

6  done as quickly as possible and get those motions on and be

7  heard as quickly as possible.

8          Also, yesterday a 341 meeting was conducted in the

9  case, and we think some information came out from that meeting

10 that will support our motion to convert.  I believe that

11 meeting was continued.  There was some testimony, but it was

12 continued until January.  So that's the procedural aspect of

13 this as far as the Tercini bankruptcy case goes.

14         I want to stress that we are the only party that had

15 filed any papers in that Tercini bankruptcy case, and we moved

16 fairly quickly to take some enforcement action.  The conversion

17 motion is very detailed, and it goes beyond just the issues of

18 an examiner and these various asbestos cases.  It has various

19 allegations of the way they -- the company has operated and why

20 we believe it's appropriate that it should be a liquidation at

21 the Chapter 7.

22         It should be noted, Your Honor, that this is not a

23 reorganization case, and I don't think anyone would disagree

24 with that including the debtor up there in Connecticut.  There

25 is no business to reorganize, and, in fact, the debtors have

1   filed a Chapter 11 plan, which they've called a Chapter 11 plan

2   of reorganization, but it's really a liquidating plan.  There's

3   a disclosure statement to be heard in early January, so there

4   is that issue as well.

5          As far as the relief from stay issue, it -- we had

6   determined that it was the -- it was a prudent course of action

7   to ask for relief from stay.  Your Honor has orders directing

8   us to appoint examiners.  We were in a position where we had to

9   continue to follow those orders and do something to go with

10  Your Honor's direction there, and through some research that we

11  did we determined that the best course of action was to seek an

12  immediate order for relief from stay relating to that issue up

13  in the Connecticut case.

14         The parties have expressed to us, and I agree with

15  Ms. Baer, that they have expressed to us their position that

16  the Examiner proceeding should not go forward down in the

17  Delaware, Pittsburgh, and New Jersey cases, and we understand

18  that, but nothing's been filed in front of Your Honor to vacate

19  that order directing us to appoint an examiner.  So we're still

20  trying to abide by that order, and that's why we're going down

21  that road.

22         Finally, Your Honor, with regard to the Heller Ehrman

23  report, I think there's some confusion here, and I want to make

24  sure that our position is clear.  The Heller Ehrman report --

25  the Tercini firm, prior to bankruptcy, turned that over to us

1 under a confidentiality and settlement discussion issue, and

2 when parties attempted to get that from the Tercini firm, they

3 indicated that they would not because of privilege and

4 confidentiality issues.  That issue was litigated in the G-1

5 case in front of Judge Gambardella, and Judge Gambardella

6 issued an oral decision that said that the report should be

7 turned over subject to the Tercini firm, the debtors up there,

8 and I believe the Asbestos Creditors Committee, because they

9 have privilege issues as well working out the language of an

10 order that would make everyone happy, and there were no longer

11 any privilege and confidentiality issues.

12         There has not been a written order that Judge

13 Gambardella has entered into.  We will abide by that order once

14 it is entered into and all the parties have resolved their

15 differences.  We have -- we're not trying to keep this from

16 people.  We're here just being very cautious here, because of

17 positions that parties have taken with regard to the turnover

18 of that report.  So I want to make sure that that issue is

19 clear as well.

20         THE COURT:  All right.  Well, frankly, I'm not sure

21 what I can do with respect to the appointment of the Examiner.

22 I've got an order out there.  Nobody's asked me to vacate it,

23 so I mean at this point in time I guess it's out there.  It

24 seems to me that having that issue go forward in Connecticut is

25 the right place to have it go forward.  There is now a case

1  that's pending before a very competent bankruptcy judge who's

2  been around the block I think as long as I have.  I think we

3  were in baby judge school together or close to it, and as a

4  result, I think he quite well understands the need for an

5  examiner in cases as well as any bankruptcy judge.  So if he

6  thinks that an examiner needs to be appointed in the Tercini

7  case or a trustee does, I think he very well could understand

8  why this might be a significant issue to all of the debtors in

9  all of these asbestos cases where they may be some need for a

10 report to be prepared.

11      So I'm a little bit sympathetic to the fact that if

12 there's -- and as I understand it -- and this is from reading

13 news reports, so I don't know how verifiable that is.  But, as

14 I understand it, the plan that was filed says that it's going

15 to a 100 percent plan for unsecured creditors, and  all the

16 creditors in the case, as I understand it, are unsecured.  So

17 you need a report somewhere in that case that's going to

18 explain what the liabilities of the estate are.  And, clearly,

19 at this point in time these claims have to be adjudicated

20 somewhere.

21      So why isn't this an action that's appropriate to be

22 heard in the Connecticut process somewhere where -- you know, I

23 don't know how the estates are going to file their various

24 claims when they don't have any way of knowing what Tercini did

25 by way of over billing.  You know, somebody has to take a look

1 at that.  That's the reason I think that the Delaware, New

2 York, and Pennsylvania and New Jersey courts all were willing

3 to appoint an examiner.  But one thing that's clear, if it's

4 done in the Tercini case, you don't have to worry about having

5 more than one, because there won't be an issue about the

6 conflicts we're facing in these other cases.  So why shouldn't

7 it be done there?

8         MR. KLAUDER:  Your Honor, David Klauder again.  I'm

9 not sure if that question is directed at me, and I just want to

10 say that very well may be the case and maybe today is somewhat

11 premature, because there are no papers filed by any of the

12 debtors in that Connecticut case asking for either a Chapter 11

13 Trustee or Examiner or the like.  The only papers filed are

14 ours dealing with the conversion and the relief from stay.  So

15 it's somewhat premature really to comment and take a position

16 on that until that issue becomes ripe in front of the

17 Connecticut judge.

18         THE COURT:  Well, I agree with that.  I mean if there

19 are no papers filed, it's certainly never going to come up

20 before him, and my order stands.  You know, an examiner needs

21 to be appointed somewhere, so if you're not going to take the

22 issue up anywhere else, I still think we need an examiner.  So

23 my order stands.  And I agree with you, Mr. Klauder, you need -

24 - I think you need to have relief from stay to make sure that

25 an examiner -- I'm not sure that you need relief from stay to

**J&J COURT TRANSCRIBERS, INC.**

1 appoint an examiner, but I think the examiner needs relief from

2 stay before he can do anything that's going to be adverse to

3 the estate.

4        And just to be clear, that -- you know, to make sure

5 you're not in violation, you probably want to get it done early

6 on.  So at some point you need to approach the Connecticut

7 court no matter what, and if this is the appropriate time,

8 that's fine, but I'm really not sure why the whole shooting

9 match doesn't belong up there, quite frankly.

10        MS. BAER:  Your Honor, Janet Baer on behalf of W.R.

11 Grace.  Again, it is our intention, Your Honor, very shortly,

12 to, in fact, file papers in the Connecticut court asking for

13 the appointment of a Chapter 11 Trustee in that case rather

14 than the conversion to the Chapter 7 and the lift stay at this

15 time.  We think that's the way to solve the problem.  Today is

16 the status before Your Honor, and we simply wanted you to know

17 that that is what we intend to do.

18        We have hired counsel to do so, and we would like to

19 and want to explain why we don't want to move forward and

20 haven't worked with the Trustee to outline the duties and who

21 would be an examiner in the Delaware cases, for example,

22 because we think that the right answer is that this should be a

23 trustee appointed in Connecticut to take charge of the entire

24 matter.

25        THE COURT:  Well, I think the appropriate resolution

1 for today is for me to keep you on the status report schedule

2 that I gave you before, because if you do file motions in the

3 Connecticut case, and the Court there takes jurisdiction over

4 that issue, or a trustee is appointed, whatever the resolution

5 is there, so that the issue is properly before that court, then

6 I don't think you're going to need two examiners in different

7 cases or a trustee and an examiner.  Probably one's going to do

8 it.  But I think all of you can advise me what you think about

9 that issue once you know what the resolution is in Connecticut.

10 I just don't see any need to pursue this issue until you've got

11 everything in I guess one place there to know what the

12 resolution is before the judge in Connecticut.

13         So why don't you go there, litigate whatever you're

14 going to litigate, and then come back and tell me what the

15 answer is?  If you think you still need my assistance for some

16 reason, or this order is still in effect that appoints the

17 Examiner -- and I'm not going to vacate it until I know that

18 either a Chapter 11 Trustee or an Examiner or something has

19 been done in Connecticut to make sure that these issues get

20 looked at, because I am of the firm belief that these issues do

21 have to be looked at.  So I'm going to keep this order in place

22 until I'm sure that there's some appropriate resolution, and I

23 think that may be the way to go.  You can put this back on the

24 reporting agenda and let me know what the outcome is, and if

25 Judge Schiff takes the case over there, then maybe you don't

1  need this order any longer, and it can be vacated.  And if you

2  do still need this relief, we can discuss it then.

3          MS. BAER:  Your Honor, that makes perfect sense to

4  us.

5          MR. KLAUDER:  Your Honor, David Klauder.  That's fine

6  with us, and we can do it again on the Pittsburgh omnibus dates

7  for January I guess.  That would be fine with me.

8          THE COURT:  Does anybody object to that?

9                  (No verbal response)

10         THE COURT:  Okay.  It's --

11         MR. LANTRY:  Your Honor, this is Kevin Lantry on

12  behalf of the Federal Mogul and Flinkote debtors.  We don't

13  object at all.  Jan Baer has articulated our joint position.

14  All I would want to reemphasize was in speaking with our

15  counsel in Connecticut, they had just flagged the issue that

16  Judge Schiff up there might be hesitant if he was in any way

17  conflicting with your order about the examiners.  It might be

18  deferential to what you had done, and I think you have now made

19  it clear enough, so that if he decides that his jurisdiction is

20  the right place to do this, he doesn't need to feel like he's

21  at odds with what you have ordered, and I think you have

22  provided that to us.

23         THE COURT:  I would never try to be at odds with

24  Judge Schiff, so I hope he will take that and do whatever he

25  thinks is appropriate in his cases.  That's certainly within

1  his jurisdictional power, and I really do think this is an

2  issue that belongs in his court first.  So why don't you go

3  there and see what happens and let me know?  And if you still

4  think that there's a live issue for me to adjudicate, tell me,

5  and, otherwise, this order can be done away with at the

6  appropriate time.  But I'm not going to do anything with it

7  until you come back to me and tell me that you don't need this

8  relief any longer.

9          MR. LANTRY:  Thank you, Your Honor.

10          THE COURT:  Mr. Salzman.

11          MR. SALZMAN:  Your Honor, if I may, we have no

12  objection to the protocol that's been described, but on behalf

13  of the ACCs in the various cases where the Caplan and Drysdale

14  and my firm are involved, just to address I don't believe the

15  Court is going to take up the issue of the Heller Ehrman report

16  today either, but I just want to preserve for the record that

17  we reserve the right to seek to do a privilege review of those

18  documents before they are released to any other parties.  We

19  have never seen the report, and we don't know what it contains.

20          THE COURT:  Well, I understand that's the case, but

21  again, it -- I don't know whether that's going to be before me

22  or not, Mr. Salzman.  Your comments are noted.

23          MR. SALZMAN:  Thank you, Your Honor.

24          THE COURT:  All right.  Anything else with respect to

25  this?

1           MR. ZIEGLER:  Your Honor, my -- I would ask that

2    perhaps you could -- you don't want to vacate the order that

3    you've already entered in these cases directing the appointment

4    of an examiner, but perhaps you could stay that until at least

5    we have another status conference, so that the U.S. Trustee

6    doesn't feel like they have to proceed with appointing an

7    examiner in the interim here.

8           THE COURT:  Oh, I thought I did.  Yes, to the extent

9    that it's not clear, I am staying that order, and I'm putting

10   it back on the January omnibus only for a status report, so you

11   can let me know what, if anything, has happened in the

12   Connecticut case --

13          MR. ZIEGLER:  That's fine, Your Honor.

14          THE COURT:  -- and -- okay, and then we'll take it up

15   again in January.

16          MR. ZIEGLER:  For everyone's information, the January

17   omnibus is January 10th at 9:00.

18          MR. KLAUDER:  Your Honor, David Klauder again.  I

19   just want to be clear on this.  We are -- we do have our relief

20   from stay motion, and we are intending on proceeding with that,

21   and I don't want to cause any misapprehension there.

22          THE COURT:  No, Mr. Klauder, I didn't intend to stay

23   your relief from stay.  What I meant was I directed the U.S.

24   Trustee's Office to appoint an examiner.  I am staying my order

25   directing that you actually pick an examiner until after you

                    **J&J COURT TRANSCRIBERS, INC.**

1  get through your relief from stay motion and the other parties

2  have an opportunity to do whatever they're going to do in front

3  of Judge Schiff with respect to a motion to appoint a Chapter

4  11 Trustee, or if you're pursuing your motion to convert, or --

5         MR. KLAUDER:  Okay.

6         THE COURT:  -- somebody's going to file a motion for

7  an examiner.  All I want is regular status reports pending

8  further order from this Court.

9         MR. KLAUDER:  Very well.

10         THE COURT:  Okay.  Anybody unclear?

11                   (No verbal response)

12         THE COURT:  Okay.

13         MR. ZIEGLER:  Your Honor, just for more clarity.  You

14  had directed us before to have weekly conferences -- conference

15  calls with the U.S. Trustee.  Are we to continue those?

16         THE COURT:  Well, I don't know.  They may not be such

17  a bad idea, so that you know what's going on in the Connecticut

18  case.  What do you think?

19         MR. ZIEGLER:  That's fine, Your Honor.

20         MR. KLAUDER:  Your Honor, I don't mind -- David

21  Klauder again.  I don't mind having those.  The last one or two

22  has become kind of a -- just a quick -- there hasn't been much

23  discussion on those, and there might actually be another issue

24  with that, and I'm not sure if we want to get into that right

25  now.  But the -- again, the last one or two just became us

**J&J COURT TRANSCRIBERS, INC.**

1  indicating what was going on in the Connecticut case, which I

2  think anyone can check the docket and find that out.  I mean

3  I'm not sure what the utility of those at this point is until

4  substantive things are done up in Connecticut where the Court

5  has some hearings and issues some rulings and so forth.

6          THE COURT:  Well, it's up to you.  I'm staying the

7  effect of this order.  Why don't I do this?  Why don't I order

8  you to have a status report the week before the January 10th

9  hearing, so that if there is some dispute, you folks can raise

10 it with each other and at least get a clear picture of what's

11 going to happen before me?  So whatever the date would've been

12 for the status conference, the week of January -- the week of

13 -- wait until I find my calendar here.  Well, it's actually the

14 week of December 30th.  Have your report -- have your meeting

15 the week of December 30th, preparatory to the January 10th

16 status conference.

17         MR. KLAUDER:  Okay.  Okay.  And I take it we can

18 coordinate that amongst ourselves?

19         THE COURT:  Yes, sir.

20         MR. KLAUDER:  Okay.  That's fine.  I'll go ahead and

21 get everyone's e-mail and get together an appropriate date and

22 time and so forth for that.

23         THE COURT:  All right.  Thank you.  Okay.  Anything

24 else on this one?

25                   (No verbal response)

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  All right.  Thank you.  Anyone who is not

2     interested in the rest of the Pittsburgh Corning agenda is free

3     to leave, disconnect, whatever.  Thank you.

4          MR. RESTIVO:  Your Honor, last item --

5          THE COURT:  Maybe you'll want to wait just a second,

6     Mr. Restivo.

7          MR. RESTIVO:  The last item for today is Item Number

8     5, and I'll introduce that by referring the Court to adjourned

9     Items 3 and 4.  Item 3 is a motion of the tort victims

10    represented by Provost Umphrey to modify or dissolve the

11    injunction restraining litigation against PPG.  That motion is

12    continued and will be addressed at the January 10 omnibus.

13         Item Number 4 is a motion of the tort victims

14    represented by Reaud Morgan to modify or dissolve the

15    injunction against PPG for Pyrocal claims.  That motion is also

16    going to be addressed at the January 10 omnibus hearing.

17         That brings us to Item Number 5, which is a motion of

18    tort victims represented by Reaud, Morgan, and Quinn to

19    dissolve the injunction as it is -- as it affects Corning.  The

20    debtor's position is in the papers we filed, Your Honor,

21    supporting the objection of Corning to that motion, but it does

22    appear to the debtor that, because the effect of the injunction

23    as to Reaud Morgan and as to Provost Umphrey claimants, at

24    least as it relates to PPG, is going to be argued on January

25    10.  It makes sense to the debtor that we not bifurcate this

**J&J COURT TRANSCRIBERS, INC.**

1 and deal with the effect of the injunction together.  So the

2 debtor's suggestion is that this should be moved also to

3 January 10, so that the whole argument can be dealt with at one

4 time.

5          It is also my personal sense, Your Honor, that if any

6 discussions are going on -- and I have no direct knowledge

7 whether they are or they aren't going on -- to bifurcate this

8 issue would be counterproductive, and, therefore, the debtor's

9 suggestion is this ought to be addressed, all three motions

10 together, on January 10th.

11          THE COURT:  All right.  Thank you.

12          MR. PARSONS:  Good afternoon, Your Honor.

13          THE COURT:  Good afternoon.

14          MR. PARSONS:  Sandy Esserman sends his apologies.

15 He'd love to be here but had a prior engagement which gives me

16 the great pleasure of coming to Pittsburgh for the first time.

17          THE COURT:  Well, you can tell him that apparently

18 he's not the only one who brings nice weather with him, Mr.

19 Parsons.

20          MR. PARSONS:  I do try my best to live up to his

21 example.

22          THE COURT:  Thank you.

23          MR. PARSONS:  The reason that we took the Reaud

24 Morgan, PPG, and the Provost Umphrey motion off the agenda

25 happily was they haven't been kicking around for quite so long,

1 but the Reaud Morgan motion against Corning was filed a year

2 ago, and we had arguments on this last January that didn't

3 really result in any conclusions.  Your order denying

4 confirmation had just come out.  The parties are still

5 digesting that, and it's been nothing for such a long time, and

6 there have been no meaningful discussions going on approaching

7 a consensual resolution, and we're sitting here looking at

8 claimants who have been stayed from prosecuting personal injury

9 claims against a non-debtor for non-derivative liability.

10 That's the liability of that non-debtor that isn't connected

11 with Pittsburgh Corning itself.  And another year has gone by,

12 and we really would like to press for a ruling as soon as

13 possible on that.

14          It's our position that these claims are going to end

15 up back in the tort system anyway.  At the end of the day Your

16 Honor's already ruled that these can't be channeled to the

17 trust -- the core liability of Corning, and we don't see the

18 mileage in allowing this to persist any longer.  But this has

19 been ripe for resolution.  We've been happy to continue this

20 month to month in the hope of grabbing some attempts to resolve

21 consensually, but nothing has been forthcoming.  And that in

22 the event that we do decide to continue this further, we would

23 really urge that Your Honor direct the parties to meet and talk

24 and have some meaningful negotiations, because this has just

25 been persisting with very little going on towards approaching a

**J&J COURT TRANSCRIBERS, INC.**

1  resolution.

2        Your Honor's been fully briefed on the matter.  I'm

3  not proposing to rake it over the coals.  It's been argued

4  before you before.  We would just urge that the time is right

5  for a resolution of this.  And if Your Honor's inclined to pass

6  this to the next hearing to deal with with the others, if you

7  could please order that the parties get together and try and

8  resolve this and report back at the next hearing, because this

9  has been around for a year, and I don't want to press that

10  issue too long, but that's another year on top of the six

11  already.

12        THE COURT:  Well, the reason it's been around that

13  long is, because I've had this motion for reconsideration

14  pending nearly that long, and, frankly, I have been -- it's

15  just a very difficult case.  It was a difficult case the first

16  time through, and it hasn't gotten any easier on

17  reconsideration, and that's the reality.  So I have been trying

18  to come to grips with the issues in a different format.  All I

19  can tell you is that I gave what I hope were final comments

20  back to my law clerk.  The problem -- and I'm hoping to get the

21  opinion out by the end of the year.

22        Frankly, I don't think I'm going to make that because

23  of mandatory leave issues that the federal government imposes

24  on its staff, and my staff has been working very, very many

25  overtime hours as a result of problems we had with the NARCO

1 opinion that were technical issues.  Nothing to do with the

2 opinion but the computer issues and then the Federal Mogul

3 cases issues.  And so I'm stuck with the fact that I have to

4 give the leave issues.  I can't do anything about it.  And so

5 I'm -- I just don't know whether it's going to happen, but it

6 will be out shortly.  And I'm telling you, folks, if you're

7 going to resolve these issues, now is the time to do it,

8 because shortly after the year end, if not before the year end,

9 it's going to be too late.

10       So a word to the wise, I think settlement discussions

11 may very well be something that all of you wish to engage in.

12 And will I order them?  I mean I can order settlement

13 discussions.  I don't know whether parties actually engage in

14 settlement discussions if the Court orders them, because, you

15 know, you can pay lip service to things.  I will encourage them

16 with every bone in my body.  I am hereby encouraging you to

17 engage in settlement discussions.  I think you would be well

18 served by coming to some resolution very promptly.  That's the

19 best I can tell you on this record.

20       MR. PARSONS:  That will do just fine, Your Honor.

21 Thank you very much.

22       THE COURT:  In terms of a continuance, I think a

23 continuance -- frankly, probably until February rather than

24 January makes the most sense because of what I've just put on

25 this record.  I think if I put it off until January, I'll have

1  you back here.  I hope that I will have the opinion out by

2  then, but even if I do, you may still be in a position of

3  having had what happened last January, which is you'll have

4  just had an opinion.  You may not have had a chance to digest

5  it.

6          MR. PARSONS:  We quite understand, and we understand

7  Your Honor's constraints and the heavy caseload and the

8  difficulty of the issues, so we'll take note, and I'll go back

9  to Reaud Morgan and tell them to re-urge settlement

10 discussions, and I hope counsel for Corning will do the same.

11         THE COURT:  And, frankly, I think the PPG issues also

12 ought to be put off until February rather than January for the

13 same reasons.

14         MR. PARSONS:  That's fine for us, Your Honor.

15         THE COURT:  If -- PGG's counsel agree?  Yes?

16         MR. McGONIGLE:  Yes.

17         THE COURT:  All right.  Mr. Ziegler, just put all

18 three of those matters on to February.  I really don't think

19 there's much percentage in putting them in January.

20         MR. ZIEGLER:  We'll do that, Your Honor.

21         THE COURT:  All right.  Thank you.

22         MR. PARSONS:  Thank you, Your Honor.

23         MR. RESTIVO:  I believe, Your Honor, that concludes

24 the agenda.

25         THE COURT:  Anybody have anything else?

**J&J COURT TRANSCRIBERS, INC.**

1                    (No verbal response)

2          THE COURT:  Okay.  Happy holidays, everyone.  We're

3 adjourned.

4          UNIDENTIFIED ATTORNEY:  Happy holidays, Your Honor.

5          UNIDENTIFIED ATTORNEY:  Happy holidays.

6          THE COURT:  Nothing in NARCO and GIT.  Correct?

7          MR. PARSONS:  No.

8          THE COURT:  I took care of those.

9          MR. PARSONS:  No, Your Honor.

10          THE COURT:  All right.  Thank you.

11                    *  *  *  *  *

12                    **CERTIFICATION**

13          I, PATRICIA C. REPKO, court approved transcriber,

14 certify that the foregoing is a correct transcript from the

15 official electronic sound recording of the proceedings in the

16 above-entitled matter to the best of my ability.

17

18 /s/ Patricia C. Repko              Date:  December 18, 2007
19 PATRICIA C. REPKO
20 J&J COURT TRANSCRIBERS, INC.


                    **J&J COURT TRANSCRIBERS, INC.**