# EXHIBIT A

**EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al. | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**AFFIDAVIT OF EDMOND LANDRY IN SUPPORT OF THE DEBTORS' SECOND APPLICATION REQUESTING THE APPROVAL OF AN ORDER AUTHORIZING THE EXPANSION OF THE SCOPE OF SERVICES TO BE PROVIDED BY DELOITTE & TOUCHE LLP TO THE DEBTORS TO INCLUDE CERTAIN ENTERPRISE RISK MANAGEMENT SERVICES AND CRISIS MANAGEMENT PLANNING SERVICES**

Edmund Landry being duly sworn, deposes and says:

1. I am a Partner in the firm of Deloitte & Touche LLP ("Deloitte & Touche"), which has an office located at 200 Berkeley Street, Boston, Massachusetts, 02116. I make this affidavit (this "Affidavit") of my personal knowledge based upon inquiries made by myself or on my behalf in support of the Debtor's second application (the "Second Application") for entry of an order authorizing the further expansion of the scope of services to be provided by Deloitte & Touche LLP ("Deloitte & Touche") to the Debtors to include certain Enterprise Risk Management Services and Crisis Management Planning Services.[1]

2. The statements set forth in this Affidavit are based upon my personal knowledge, upon information and belief, and upon client matter records kept in the ordinary course of business that were reviewed by me or other personnel of Deloitte & Touche or its affiliates.

---

[1] Terms not defined herein shall have the meaning ascribed to them in the Second Application.

3. The initial Deloitte & Touche Retention Application seeking authority to employ and retain Deloitte & Touche as customs services providers, and tax and compensation advisors to the Debtors *nunc pro tunc* to February 4, 2003 was filed by the Debtors on April 25, 2003. The Deloitte & Touche Retention Affidavit was filed in support of the Deloitte & Touche Retention Application. The order approving the Deloitte & Touche Retention Application was signed by the Court on June 17, 2003.

4. On July 19, 2004, the Court entered an order authorizing the first expansion of the scope of services permitted to be provided by Deloitte & Touche to the Debtors under such application to include certain lease consulting services.

5. Following the retention of Deloitte & Touche in these Chapter 11 cases, Deloitte & Touche implemented a reorganization of some of its business units. Consistent with this reorganization:

- Deloitte Consulting sought to be retained as compensation advisors and to provide certain lease consulting services to the Debtors in these Chapter 11 cases. On September 27, 2004 the Court entered an order approving the retention of Deloitte Consulting *nunc pro tunc* to July 1, 2004; and

- Deloitte Tax sought to be retained as tax services providers to the Debtors in these Chapter 11 cases. On December 21, 2004, the Court entered and order approving the retention of Deloitte Tax *nunc pro tunc* to August 22, 2004; and

- Deloitte FAS recently sought to be retained to provide certain due diligence services to the Debtors. On November 26, 2007 the court entered an order approving the retention of Deloitte FAS *nunc pro tunc* to October 1, 2007.

6. By the Second Application, the Debtors are requesting the entry of an order authorizing them to further expand the scope of the retention of Deloitte & Touche during these Chapter 11 cases to include the provision of (a) Enterprise Risk Management Services as more fully described in the Second Application and the Risk Management Services Engagement

Letter, and (b) Crisis Management Planning Services as more fully described in the Second Application, and the Crisis Management Planning Services Engagement Letter (collectively referred to herein as the "Expanded Scope Services"). At the Debtors' request, Deloitte & Touche began the provision of the Expanded Scope Services on or about June of 2007.

7. Except as set forth herein or on schedules attached hereto, to my knowledge based on reasonable inquiry, Deloitte & Touche and the partners/principals and directors of Deloitte & Touche that are anticipated to provide the services for which Deloitte & Touche is retained in these Chapter 11 cases (the "Deloitte & Touche Engagement Partners/Principals/Directors"), (a) do not hold or represent any interest adverse to the Debtors and their estates and (b) have no connection to the Debtors, the Debtors' significant creditors, other known significant parties-in-interest in these Chapter 11 cases, or to the attorneys and accountants that are known to us to be assisting the Debtors or various committees, except as described below or on the disclosure schedule attached hereto as <u>Attachment A</u>. As such, I believe Deloitte & Touche and the Deloitte & Touche Engagement Partners/Principals/Directors are disinterested as such term is defined pursuant to Section 101(14) of the Bankruptcy Code.

8. In order to update and supplement the disclosures set forth in the Deloitte & Touche Retention Affidavit, as described below, Deloitte & Touche has undertaken a search to determine, and to disclose, whether it or its affiliates, including Deloitte Consulting, Deloitte Tax and Deloitte FAS, is or has been employed by or has other relationships with any of the Debtors or their affiliates, subsidiaries, directors or officers, or any of the Debtors' significant creditors, equity security holders, professionals or other entities with significant relationships with the Debtors identified on a suggested schedule provided to Deloitte & Touche.

9. Deloitte & Touche and its affiliates have or may have provided professional services to, currently provide or may currently provide professional services to, and may in the future provide professional services in matters unrelated to these Chapter 11 cases to certain of the Debtors' creditors, other parties-in-interest, or to attorneys and accountants that are known to us to be assisting the Debtors or various committees. Additionally, certain of these creditors, parties-in-interest, attorneys or accountants have or may have provided goods or services to, currently provide or may currently provide goods or services to, and may in the future provide goods or services to, Deloitte & Touche or its affiliates and the Deloitte & Touche Engagement Partners/Principals/ Directors in matters unrelated to these Chapter 11 cases.

10. To check upon and disclose possible relationships with parties-in-interest in these Chapter 11 cases, Deloitte & Touche researched its client databases and performed reasonable due diligence to determine whether it or its affiliates had any relationships with any of the Debtors or their affiliates, subsidiaries, directors or officers, or any of the Debtors' significant creditors, equity security holders, professionals or other such entities with significant relationships with the Debtors.

11. A suggested list of these parties-in-interest was provided to Deloitte & Touche by counsel to the Debtors.

12. From the internal research, Deloitte & Touche has determined that certain relationships should be disclosed, as follows:

(a) Law firms identified on <u>Attachment A</u>, including: Kramer Levin Naftalis & Frankel LLP; Latham & Watkins, LLP; and Kirkland & Ellis LLP have provided, currently provide and may in the future provide legal services to Deloitte & Touche or its affiliates in matters unrelated to these Chapter 11 cases, and/or Deloitte & Touche and/or its affiliates have provided, currently provide, and may in the future provide services to such firms.

(b) Certain financial institutions and/or their respective affiliates listed on Attachment A, including: Bank of America, Barclays Bank PLC; CitiGroup; JP Morgan Partners; and Wachovia Corporation are lenders to an affiliate of Deloitte & Touche. Deloitte & Touche is a guarantor of such affiliate indebtedness. Additionally, the foregoing financial institutions and/or their respective affiliates listed on Attachment A have financed a portion of the capital and capital loan requirements of various partners and principals, respectively, of Deloitte & Touche and those of its affiliates.

(c) Certain parties-in-interest in these Chapter 11 cases may be a party to various litigation matters, unrelated to these Chapter 11 cases, in which Deloitte & Touche and/or one or more of its affiliates are also a party. In certain of these unrelated litigation matters, Deloitte & Touche and/or its affiliate(s) may be co-defendants with, may represent clients related to, or clients with a commonality of interest with various parties interest in these Chapter 11 cases. In other unrelated litigation matters, Deloitte & Touche and/or its affiliates may be adverse to or may represent clients with an interest adverse to various parties in interest in these Chapter 11 cases.

(d) Deloitte & Touche and/or one or more of its affiliates have in the past, may currently and likely will in the future provide professional services to various parties-in-interest in these Chapter 11 cases and/or their customers and clients, in connection with matters unrelated to these Chapter 11 cases. Together with the relationships described 6(a) – 6(d), above, these relationships have been summarized in Attachment A hereto.

(e) Deloitte FAS provides financial advisory services to the Pension Benefit Guaranty Corporation (the "PBGC"). The Debtors and their pension plans are not the subject of these services to the PBGC.

13. To the best of my knowledge, information and belief, with respect to Deloitte & Touche's last fiscal year, the revenues from the services provided to the parties listed on Attachment A hereto each represent less than 1% of the combined net service revenues of Deloitte & Touche and its affiliates for such fiscal year end.

14. Furthermore, after reasonable inquiry, I do not believe there is any connection between the personnel of Deloitte & Touche and its affiliates who are anticipated to provide services to the Debtors and the United States Bankruptcy Judge presiding in these Chapter 11 cases, the United States Trustee for Region 3, the Assistant United States Trustee for the District of Delaware, and the attorney therefor assigned to these Chapter 11 cases.

15. Despite the efforts described above to identify and disclose Deloitte & Touche's connections with the parties-in-interest, because Deloitte & Touche is a nationwide firm with thousands of personnel, and because the Debtors are a large enterprise, Deloitte & Touche is unable to state with certainty that every client relationship or other connection has been disclosed.  In this regard, if Deloitte & Touche discovers additional information that it determines requires disclosure, it will file a supplemental disclosure with the Court promptly.

16. Deloitte & Touche personnel have considerable experience in providing clients, both in and out of bankruptcy, with the services similar in nature to the Expanded Scope Services it anticipates providing to the Debtors in these Chapter 11 cases.  In particular, personnel of Deloitte & Touche routinely assist clients by providing various enterprise risk and crisis planning management services, similar to the Expanded Scope Services described in the Second Application.

17. As a result of the services provided to the Debtors in these Chapter 11 cases by Deloitte Consulting, Deloitte Tax and Deloitte FAS, Deloitte and Touche has considerable institutional knowledge of the Debtors at is disposal.

18. Because of (a) the experience and knowledge of the personnel of Deloitte & Touche and its affiliates in providing services of the nature for which its expanded scope of retention is sought under the Second Application, and (b) the familiarity of such personnel with the Debtors' business and affairs, Deloitte & Touche believes that it is well-qualified to provide the Expanded Scope Services to the Debtors in these Chapter 11 cases in an efficient and cost-effective manner.

19. Subject to the Court's approval and pursuant to the terms and conditions of the Expanded Scope Services Engagement Letters, the Debtors propose to compensate Deloitte &

Touche at its customary hourly rates for services rendered, plus reimbursement of actual, necessary expenses incurred by Deloitte & Touche. Deloitte & Touche seeks to be retained pursuant to the Second Application at the following hourly rate ranges by personnel classification:

| **Personnel Classification** | **Hourly Billing Rates** |
|---|---|
| Partner, Principal, or Director | $355 to $710 |
| Senior Manager | $330 to $650 |
| Manager | $275 to $550 |
| Senior Staff | $195 to $465 |

The hourly billing rates set forth above reflect, among other things, differences in experience levels within classifications, geographic differentials and differences between types of services being provided. In the normal course of business, Deloitte & Touche revises its regular hourly billing rates to reflect changes in responsibilities, increased experience, and increased costs of doing business. Accordingly, Deloitte & Touche requests that it be permitted to revise the aforementioned rates to the hourly billing rates that will be in effect from time to time. Changes in regular hourly billing rates will be noted by Deloitte & Touche on the invoices for the first time period in which the revised rates became effective.

20. The professional fees charged for Deloitte & Touche's services are calculated from the actual hours expended in providing the services multiplied by the regular hourly billing rates for the specific personnel involved. In addition, reasonable expenses, including travel, report production, delivery services, and other expenses incurred in providing the services, will be included in the total amount billed. Deloitte & Touche will maintain reasonably detailed records of any costs and expenses incurred in connection with its provision of the Expanded Scope Services.

21. Because the Expanded Scope Services involve the performance of tasks that may readily be grouped into discrete categories, the Debtors have requested relief on behalf of Deloitte & Touche from the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules, and any applicable orders of this Court, requiring Deloitte & Touche to provide daily activity descriptions of its personnel providing the Expanded Scope Services as part of its monthly fees statements, or interim or final fee applications in these Chapter 11 cases. Instead, the Debtors have sought approval of the Court hereunder for Deloitte & Touche to provide daily time records of its personnel providing the Expanded Scope Services reflecting the number of hours devoted by such personnel to the discrete categories of tasks comprising the Expanded Scope Services as part of such monthly fees statements, and interim and final fee applications.

22. Except as set forth above, Deloitte & Touche will seek compensation and reimbursement of expenses for the provision of the Expanded Scope Services in accordance with the applicable provisions of Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules, and any applicable orders of the Court.

23. All payments rendered pursuant to Deloitte & Touche's retention by the Debtors will be submitted for approval to the Court and will be based upon the filing by Deloitte & Touche of appropriate interim, if applicable, and final applications for allowance of compensation and reimbursement of expenses.

24. Deloitte & Touche will also file separate monthly and interim fee applications in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules and any applicable orders of the Court

for compensation and expense reimbursement in connection with any services rendered to the Debtors by Deloitte & Touche in these Chapter 11 cases on or after such date.

By:_____
      Edmond Landry
      Partner

Sworn to and subscribed before me
this \_\_ day of December, 2007.

_____
Notary Public

## ATTACHMENT A

Parties-in-Interest for whom Deloitte & Touche LLP or its affiliates has provided or is currently providing services in matters unrelated to these chapter 11 cases or with whom such entities have other relationships including banking relationships.
.

### *Parties in Interest*

ABN Amro
Aetna
AIG Global Investments
Bayard Capital Partners Pty Ltd
Bishopsgate Premier Finance PLC
Boston Old Colony Insurance Company
CAN Insurance Companies
Cambridge Public Health Commission (Massachusetts)
Citadel Investment Group LLC
Citicorp General Insurance Ltd
Citicorp International Life Insurance Company Ltd
Citigroup Insurance and Investment Trust
Citigroup Mortgage Securities
Continental Casualty Company
Continental Divide Insurance Company
Continental Insurance Company
Credit Lyonnais USA Limited
Credit Lyonnais Securities (USA) ltd.
GC Management Company
GCI Management AG
GTECH Holdings Corporation
Gteko KK
Gteko Ltd
Grace Venture Partners, LP
Hartford Investment Company Complex
Hartford Investment Financial Services Company
Hartford Life Insurance Company
HSBC AM Obligations Europe Fund
Ichibanya Company Limited
Kramer Levin Naftalis & Frankel LLP
Latham & Watkins, LLP
National Financial Services (Fidelity)
JP Morgan Smaller Companies Investment Trust PLC
Morgan Stanley & Company Inc.
Northern Trust Investment Company Complex
Northern Funds

Princeton University
Republic Insurance Company
Royal Globe Insurance
Seneca Meadows, Inc.
American Mortgage Network
Bank of America
Bank of New York Co., Inc.
Bank of New York Mellon Corporation
Bank of Nova Scotia
Barclays Bank PLC
Chase Insurance Life and Annuity
Citicorp Venture Capital
CitiGroup
Commerzbank AG
Credit Suisse First Boston
Geico
HSBC Holdings PLC
JP Morgan Partners
Kennametal Inc.
Kirkland & Ellis LLP
LaSalle Bank Corporation
Protective Life Corporation
ScotiaBank & Trust (Cayman) Ltd
St. Paul Travelers Companies
SunAmerica
Swiss Reinsurance Company
The Travelers Companies, Inc.
Variable Annuity Life Insurance Company
Vodafone PLC
Verizon Communications
Verizon Wireless
Wachovia Corporation
Westcorp
WFS Financial
Yasuda Fire Bahama Limited