# EXHIBIT 1

# Expert Report of Elizabeth Anderson, Ph.D.

In re W.R. Grace & Co., *et al.*

October 3, 2006

This four-step process is now often referred to as the "risk paradigm," and is widely accepted and applied by governmental authorities throughout the world. . EPA's Integrated Risk Assessment System's glossary defines risk assessment as:

> "The evaluation of scientific information on the hazardous properties of environmental agents (hazard characterization), the dose-response relationship (dose-response assessment), and the extent of human exposure to those agents (exposure assessment). The product of the risk assessment is a statement regarding the probability that populations or individuals so exposed will be harmed and to what degree (risk characterization)." (EPA 2006)

A causal relationship between specific exposure circumstances and disease can be demonstrated with reasonable scientific certainty only through well-conducted epidemiological studies that rely on substantially similar exposure data. Thus, the merit of a claim can be assessed by first identifying such exposure factors as the concentration, frequency and duration of the alleged exposure and other relevant factors such as the fiber type and dimensions. Second, one must turn to epidemiological studies that resemble these exposure conditions and show that a causal association exists between exposure and disease. The risk assessment paradigm provides a framework for evaluation of claims which involve exposures that are non-negligible. The fact that asbestos fibers can potentially cause disease is not a sufficient basis in itself for concluding that a specific exposure substantially contributed to a specific disease; the determination is best made on a case-by-case basis for each claimant by following the risk assessment framework. In the following sections, I discuss the reasons for this conclusion.

**Hazard Identification**

In risk assessment, hazard identification answers the first qualitative question: how likely is the event to occur? In this case, we apply this concept to a claimants submission by considering two sequential threshold questions: does the claimant have an asbestos related disease; and if so, was the claimant potentially subject to an asbestos exposure from a W.R. Grace product?

smaller cumulative exposures. He states that a similar level could be used for lung cancer. For asbestosis, he notes that this disease is rarely observed below a cumulative exposure of about 25 f/ml-yr.

There is no reliable epidemiologic evidence to date to confirm effects at low dose exposures (below 15 or 25 f/ml-yr). Consequently for claimants who do not have evidence to support exposures in the higher dose range for which there is epidemiologic evidence, there is far less certainty that their exposure to W.R. Grace product-related asbestos was a substantial contributing factor to their disease. The more their alleged exposure levels depart from the range of observation, the greater this uncertainty becomes. Further, it should be required that claimants also provide exposure information regarding asbestos exposures from sources unrelated to W.R. Grace products for comparative evaluation.

It is clear then that the nature of the dose-response relationship for asbestos plays an important role in establishing whether an exposure is a significant contributing factor to the validity of a claim. The relationship between dose and effect must be known, the distinction between scientific knowledge and public protective inferences and policy decisions understood, and the individual's exposure circumstances be defined (e.g., duration, frequency, and concentration).

**Exposure Assessment**

Exposure assessment is a process which seeks to define the dose a human receives under particular circumstances. The basic requirements for an exposure assessment for the inhalation of asbestos fibers are: the concentrations in the breathing zone during an exposure event (exposure intensity), how often the event occurred (frequency), for how long (duration), and age at the time of exposure. Consequently, it is not sufficient to simply show proximity to a W.R. Grace product. Rather it is necessary to show that that there is sufficient exposure taking into account concentration, duration, and frequency, to support a claim that the exposure to asbestos in a W.R. Grace product is a substantial contributing factor for the health claim.

Two W.R. Grace products that are known to have contained asbestos are a fireproofing spray-on material composed of vermiculite with added chrysotile asbestos (branded as Monokote) and vermiculite attic insulation (Zonolite). I am aware of the existence of historical industrial hygiene reports and exposure simulation studies for these products. For Monokote application, I have identified five such data sources and these are listed in Appendix B after my general references. My attached 2003 report on vermiculite attic insulation provides a discussion and references to the studies and simulations involving Zonolite. The data from these and other similar sources could provide exposure concentration data that may be relevant to the allegations in the questionnaire responses. I reserve the right to review and evaluate these and any other potentially relevant sources of exposure data for W.R. Grace products if asked to do so.

Since claimants may have been exposed to asbestos from sources unrelated to W.R. Grace products, it is critical to characterize those exposures in an unbiased manner consistent with the assessment of exposure from W.R. Grace products. Clearly if a claimant has a mixed exposure history, the relative levels of exposure will be an important consideration in determining the attribution of his or her disease to the exposure involving W.R. Grace products. In addition, because the different exposures may involve different asbestos varieties which may have different potencies relative to one another, as discussed above, the comparison of the exposures should also account for these differences.

In cases where the exposure history includes multiple sources, including exposure to asbestos from both W.R. Grace products and other sources, the pertinent question becomes: In light of the claimant's exposure to asbestos unrelated to W.R. Grace products, can the exposure to W.R. Grace product related asbestos be considered a substantial contributing factor in the development of the claimant's disease?

**Risk Characterization**

Risk characterization integrates dose response and exposure information to reach a conclusion about the risk posed to an individual under the specific circumstances being considered. The

assessment as the disease could be related to exposure to asbestos not associated with W.R. Grace, or the disease could be idiopathic (i.e., from natural causes). The next step is to evaluate whether the claimant engaged in an activity that could have resulted in a non-negligible exposure to asbestos associated with a W.R. Grace product. This step can be used to screen out claimants who clearly were not exposed to significant levels of asbestos from W.R. Grace products.

2. **Exposure Assessment:** For claimants who were plausibly exposed to asbestos associated with W.R. Grace products, an exposure assessment that includes considerations of concentration, duration, frequency and the nature and type of fibers involved, is necessary to make informed judgments about the merits of a claim. Information about the claimant's exposure from sources such as his or her occupational history may be combined with literature data on asbestos exposures associated with that activity to estimate a lifetime exposure to asbestos associated with W.R. Grace products or operations. Exposures not associated with W.R. Grace products must also be estimated.

3. **Dose-Response and Risk Characterization:** The most appropriate epidemiological data and associated dose-response relationship should be determined for each claim. The exposure information collected in the previous step can then be used to estimate potential risks. Whether a claimant's exposure exceeds a lifetime exposure known to be associated with asbestos disease will be a critical consideration in this stage.

The risk assessment paradigm I discuss above can provide information to respond to the question I posed earlier: *Can the alleged exposure to asbestos in a W.R. Grace product be characterized as a substantial contributing factor to claimant's medical condition?* Claimants who can provide sufficient information can be evaluated according to the framework I have outlined in this report. If this information is not provided, then it is not possible, within the bounds of scientific certainty, to determine that the alleged asbestos exposure from a W.R. Grace product is a substantial contributing factor to the alleged asbestos-related disease. If asked, I may produce a separate report concerning the application of the scientific principles I have outlined in this report to the estimation of the number and value of current and future claims against W.R. Grace.

VA10519 BOTO 10/06 EA01                                                                                                                  12