# EXHIBIT 2

SUPPLEMENTAL REPORT

The Scientific Credibility of Personal Injury Claims Related to Alleged Exposure to W.R. Grace Asbestos-Containing Products

Elizabeth L. Anderson, Ph.D., A.T.S. Fellow

June 11, 2007

_____  June 11, 2007
Elizabeth L. Anderson                Date

**Table 3**
**Temporal Overlap with Fireproofing Installation**
**for Construction Sites with Fireproofing (Preliminary)**

| Trade | Overlap* |
|---|---|
| Structural Steel | 35% |
| Concrete | 37% |
| Electrical | 14% |
| Mechanical | 19% |
| Plumbing | 20% |
| Fire Protection (Overhead Sprinklers) | 30% |
| Masonry | 20% |
| Drywall (Framer) | 31% |
| Misc. Metal | 39% |
| Elevators | 37% |

\* Value = sum of days present at site(s) while fireproofing installed / sum of days at site(s)

As indicated in Table 3, the fraction of time for D and E claimants overlapping with fireproofing, on average across all sites, ranges from 14% to 39%. Accordingly, for these job nature categories and for the product type "Vermiculite & Chrysotile/Sprayed (construction)", in this analysis I have assumed the highest value of 39% to account for the daily exposure frequency. Thus for the D and E claimants exposed incidentally to fireproofing activities, it is assumed that 39% of their time was spent in activities that could result in exposure to asbestos from fireproofing products; this assessment also assumes, conservatively, that all fireproofing products were Grace products. For all other combinations of job nature and product type, it is assumed that during the maximum exposure period, not only did all sites involve the use of Grace products, but also that the exposure was continuous. In other words, the frequency of working at sites with Grace products was 100% and the exposure occurred for 8 hours per day, 5 days per week, and 50 weeks per year. Table 4 presents my estimates of the preliminary maximum cumulative exposures for job nature categories A though E and all product types. I intend to refine these estimates by considering more realistic exposure scenarios and data provided by the claimants in their responses to the PIQ.

**Table 4**
**Screening Level Maximum Asbestos Cumulative Exposures (f/ml.yrs)**
**by Category of Exposure and Product Type (Preliminary)**

| Product Type/Job Nature Category | Preliminary Maximum Cumulative Exposure (f/ml.yrs) | | | | |
|---|---|---|---|---|---|
| | A | B | C | D | E |
| Vermiculite | | | | | |
| Used Dry (construction) | NA | NA | 1.5 | 0.41 | 0.50 |
| Used Dry (post-construction) | NA | 2.1 | NA | 0.045 | 1.1 |
| Mixed Dry | 1.5 | NA | 0.00 | 0.093 | 0.0031 |
| Mixed Wet & Sprayed | 0.65 | NI | 0.41 | 0.22 | 0.67 |
| Mixed Wet & Troweled | 1.6 | NI | 0.18 | 0.14 | 0.18 |
| Vermiculite & Chrysotile | | | | | |
| Sprayed (construction) | < 21 | NI | < 24 | < 0.58 | < 1.3 |
| Troweled | << 24 | NI | << 28 | << 1.7 | << 3.8 |
| Brushed/Painted | NA | NI | << 21 | << 1.3 | << 2.8 |
| Chrysotile | | | | | |
| Sprayed | << 14 | NI | << 16 | << 1.0 | << 2.3 |
| Troweled | << 8.6 | NI | << 9.9 | << 0.61 | << 1.4 |
| Brushed/Painted | NA | NI | << 16 | << 1.0 | << 2.3 |
| Combined (post-construction) | NA | < 1.2 | NA | << 0.090 | < 0.090 |

'NA', Not applicable; see Dr. Lees' report

'NI', No information; see Dr. Lees' report

'<' and '<<', Actual values less than value shown; see Dr. Lees' report

The values presented in Table 4 do not incorporate any consideration of the degree to which individuals in any of the categories would work on sites that did not involve Grace products. Furthermore, the values do not account for the fact that claimants in the D and E categories would have in all likelihood worked at sites other than those which involved installation, removal or cutting of Grace products. Accounting for this relevant and important factor (exposure frequency) in a more realistic manner will significantly reduce the values shown in the table. For example, if Grace products were present at 1 out of every 10 sites, the values in Table 4 would be reduced by a factor of 10. In this preliminary analysis, for all product types I have applied the conservative assumption that each and every day claimants worked at sites

f/ml.yrs benchmark if one were to assume that individuals in the E category were exposed to these Grace products for 50% of their time, every work day for 17 years (as opposed to every day for 34 years which is assumed in the value in Table 4), a value which in my opinion is still an implausibly high exposure frequency.

Although the table shows that some of the conservatively derived exposures in categories B, D or E exceed background, as I have indicated and as Dr. Moolgavkar discussed in his expert report, that in itself does not establish the existence of a causal association between exposure and disease. Although the other benchmarks do not establish the existence of a causal association between exposure and disease, those benchmarks can be used to identify exposure allegations that do not have a clear scientifically supportable causal link to asbestos disease.

None of the values in columns B, D or E exceed the benchmarks of 15 f/ml.yrs or 25 f/ml.yrs, the level above which an affirmative statement can be made of the existence of a causal relationship between exposure and risk, and the lowest level at which asbestosis can occur. The values are orders-of magnitude less than the 100 f/ml.yrs benchmark that indicates the lowest level of cumulative exposure that would produce a relative risk of 2 for lung cancer. For the mesothelioma relative risk of 2 benchmark, only one value (category E for product type "troweled-on" chrysotile and vermiculite) may exceed the 3.2 f/ml.yrs benchmark that is based upon EPA's potency that does not distinguish between chrysotile and amphibole fibers. Even this value, however, will likely not exceed this benchmark because it is conservatively derived by assuming continuous exposure for 34 years and also because Dr. Lees has indicated the concentration is much lower than the value presented. Furthermore, all the values are clearly below the doubling doses for chrysotile and Libby amphibole of 79.0 and 8.9 f/ml.yrs, respectively, as discussed by Dr. Moolgavkar.

Based on these observations, I conclude that it is scientifically implausible that disease in exposure categories B, D, or E can be attributed to exposure to any Grace asbestos-containing product. As demonstrated above, claimants reporting that their exposure was solely in

categories B, D, or E have not had sufficient cumulative exposures that can cause disease. Furthermore, these exposures have not been demonstrated scientifically to contribute to the risk of disease, even when added to other significant exposures. Therefore, I conclude that these claims do not have merit and therefore should not be considered further.

For some of the claims in exposure categories A and C, the screening level cumulative exposures shown in Table 4 exceed some benchmarks. These claims should be assessed further to determine the extent to which a Grace asbestos-containing product was the cause of the claimant's disease. This assessment will rely, among other things, upon the claimant's occupational history as declared in the PIQ response. If, for example, a claimant worked for a number of years as an insulator or shipyard worker, occupations with a high level of exposure to asbestos and high incidence of asbestos-related disease, it certainly raises the possibility that the claimant's disease was caused in large part or entirely by asbestos exposures during that work experience. I referred above to Dr. Moolgavkar's discussion of methods for estimating the probability that the Grace-related exposure caused the disease.

D. Conclusions

- The validity of claims should be judged on the basis of established scientific fact.

- I have used a number of benchmarks for considering whether claims are credible. These benchmarks of exposure are based upon, in the case of a PEL, an 8-hour TWA concentration level and for the others, on cumulative working-lifetime exposures.

- From airborne measurements made under a variety of circumstances and preliminary and conservative assumptions regarding frequency and duration of exposure, it is possible to infer the cumulative asbestos exposures experienced by claimants, depending upon, among other things, the exposure category indicated in the questionnaires they submitted.