# EXHIBIT 7

# Estimation of the Number and Value of Pending and Future Asbestos-Related Personal Injury Claims: W.R. Grace

Prepared for WR Grace
By B. Thomas Florence, Ph.D.
ARPC
June 18, 2007

Table 4-2
Number of Historical Pending Claims That Filed a POC by Disease
After Allocation of Unknown Diseases[4]

| Pending Claims | Meso-thelioma | Lung Cancer | All Other Cancers | Non-malig-nancies | Total |
|---|---|---|---|---|---|
| Have a POC | 2,412 | 5,505 | 2,106 | 74,453 | 84,476 |

Table 4-3 shows the total number of historical pending claims with both a POC and a PIQ. Only 74,154 of the historical pending claims that matched to a POC also matched to a PIQ (55,075 definite matches, 899 probable matches and 18,180 possible matches). At least 39,494 (35%) of the 113,648 historical pending claims do not have a POC and a PIQ and another 18,180 historical pending claims may not have a POC with a PIQ because they are only possible matches.

Table 4-3
Number of Historical Pending Claims That Match POCs with PIQs

| Historical Disposition Type | 1) Have a POC Match | | | | | 2) No POC Match | Total Number of Historical Pending Claims |
|---|---|---|---|---|---|---|---|
| | 1) PIQ Definite Match | 2) PIQ Probable Match | 3) PIQ Possible Match | Total Matches | 4) PIQ No Possible Match | | |
| Pending | 55,075 | 899 | 18,180 | 74,154 | 10,322 | 29,172 | 113,648 |

Table 4-4 categorizes the 74,154 historical pending claims that filed a POC and a PIQ by disease:

Table 4-4
Number of Pending Claims That Filed a POC and a PIQ by Disease
After Allocation of Unknown Diseases

| Pending Claims | Meso-thelioma | Lung Cancer | All Other Cancers | Non-malig-nancies | Total |
|---|---|---|---|---|---|
| Have a POC and PIQ | 2,122 | 4,893 | 1,905 | 65,233 | 74,154 |

ARPC's estimates were based on analyses that only excluded pending historical claims for which there was no possible POC match.

*4.2.2 Historical Pending Claims That Met the Minimum Exposure Criteria*

ARPC was asked to assume that only historical pending claimants whose claims also met the following criteria would be able to sustain their burden of proof that their claims against Grace are valid, and therefore, their claims should be valued as part of the estimation process:

- Claimants must have exposure to a Grace asbestos-containing product as the result of the following "Nature of Exposure"[5]:

---

[4] Method for allocation of unknown diseases is described in Appendix F.

8

- o personally mixing Grace asbestos-containing products
- o personally installing Grace asbestos-containing products

To determine if the claims met the exposure criteria, the PIQ specifically asked each pending claimant to characterize the claimant's "Nature of Exposure" as one of the descriptions shown above or as being in the proximity of Grace products. Only 13% of the claimants who submitted PIQs responded to this question. Based on the Celotex Trust review of a sample of attachments submitted with the PIQs, 71% of the PIQ claims in the sample had information regarding nature of exposure[6].

Using data from the PIQ attachment sample, ARPC calculated the number of historical pending claims that met the assumed criteria of sufficient exposure to Grace asbestos-containing products (and also filed a POC). If claimants did not respond to the "Nature of Exposure" question either on the questionnaire or the attachments to the questionnaire, ARPC had no data to calculate how many, if any, of the claimants who did not respond had claims that met the criteria. ARPC analyzed the PIQ attachment sample in two ways. One method calculates the number of historical pending claims that met the criteria based on the claims that provided data that they met the nature of exposure criteria. The second method calculates the number of historical pending claims that met the assumed criteria and assumes that claimants who did not provide nature of exposure data either on or with the PIQs met the criteria in the same proportion as those who provided the data.

**Table 4-5**
**Number of Historical Pending Claimants That Met the Exposure Criteria**
**Based on the PIQ Attachment Sample**

| Pending Claims | Meso-thelioma | Lung Cancer | All Other Cancers | Non-malig-nancies | Total |
|---|---|---|---|---|---|
| Based on claims providing exposure data | 323 | 477 | 368 | 11,161 | 12,330 |
| Based on claims providing exposure data and assuming the same proportion for those not providing data | 813 | 848 | 472 | 19,261 | 21,394 |

---

[5] See June 11, 200 report of Elizabeth Anderson: The Scientific Credibility of Personal Injury Claims Related to Alleged Exposure to W. R. Grace Asbestos Containing Products – Supplemental Report.

[6] Due to the varied formats of the exposure records submitted for the PIQ sample claims and because the claimants often did not specifically identify exposure to a Grace asbestos containing product, it was decided to have Celotex Trust reviewers code any type of information concerning the nature of the claimant's asbestos exposure instead of requiring Celotex Trust reviewers to discern whether or not each exposure was linked to a Grace asbestos containing product.

*4.2.3 Minimum Causation Criteria for Lung Cancer Claims*

The assumed minimum causation criteria for Lung Cancer historical pending claims are based on the following criteria:

1. Diagnosis of asbestosis based on the B-Reader report of a reliable B-Reader
2. Reproducible ILO score of 1/0 or greater

To determine whether the claimants met these assumed criteria, Dr. Daniel Henry developed a claimant x-ray study. The x-ray study performed by Dr. Henry was based on a Court order requiring each claimant alleging asbestos-related Lung Cancer as evidenced by radiographic evidence to submit a certified copy of the x-ray showing such evidence or certify that the x-ray was held by a third party or destroyed. Of the 4,764 Lung Cancer claimants subject to the Court order, 2,421 claimants (51%) neither submitted a certified copy of an x-ray nor certified that the x-ray was held by a third-party or destroyed.

ARPC was asked to make the assumption that absent receipt of certified copies of x-rays such evidence would not be available for the estimation trial. Therefore, ARPC included in its analyses only those claimants that provided certified copies of x-rays.

In addition, the x-ray study found that the requirement of reproducibility (at least two independent doctors reading the x-ray as having an ILO of 1/0 or greater) was met by only a small number of the Lung Cancer claimants in the sample (restricted to claimants with a POC that match to a historical pending claim). Based on the results of this study concerning both noncompliance and reproducibility of an ILO of 1/0 or greater, Table 4-6 provides the number of historical pending Lung Cancer claims that met these criteria:

**Table 4-6.**
**Number of Lung Cancer Claims with A Reproducible ILO of 1/0 or Greater**
**Based on X-ray Study**

| Pending Claims | Lung Cancer |
|---|---|
| Number of pending claims with reproducible ILO of 1/0 or greater | 344 |

Because this sample had no corresponding review of exposure information, ARPC did not examine the combined impact of the causation criteria and the exposure criteria. Absent additional data, ARPC did not know how many, if any, of these claimants met the exposure criteria. Further review of these claims is underway. Pending completion of this review, for the purpose of this estimation, ARPC considered that the Lung Cancer claimants that have a reproducible ILO score also met the exposure criteria. Final numbers will be included after the additional review is completed.

10

### *5.3 Methods for Estimating Other Cancer and Nonmalignant Claims*

Two general methods were used to estimate Other Cancer and Nonmalignant claims. One method used the lung cancer claims as an "index series" to determine the ratio of the number of Other Cancer and Nonmalignant claims in the forecast database to the total number of Lung Cancer claims in the forecast database. The other method used regression models to estimate the natural logarithm of the annual filing rate for the valid Other Cancer and Nonmalignant claims as a linear function of the natural logarithm of the annual filing rate for valid Lung Cancer claims.

### *5.4 Estimation of The Number of Future Claims*

The table in this section represents the median forecast of future claims. The median forecast is based on 32 individual forecasts—the product of two methods for calculating the number of claimants that would be able to meet the evidentiary criteria, two alternative mesothelioma and lung cancer forecast methods (Nicholson and Peto), four calibration periods (1996-2000, 1997-2000, 1998-2000 and 1999-2000), and two methods for estimating the other cancers and nonmalignancies (ratio and regression). The calibration period refers to the historical period of time that is used as the basis for the forecast. A calibration period is selected to be that historical period that is expected to be most reflective of future events. The range of calibration periods: 1996-2000, 1997-2000, 1998-2000, and 1999-2000, was selected so as to include sufficient years such that the influence of any single anomalous year would be mitigated. These calibration periods were also selected as being current with the last full year of data prior to the bankruptcy.

The median of the forecasts of the number of future claims based on claims providing data, based on claims providing data and assuming the same proportion for claims not providing data, and the median of all these forecasts are presented in the Table 5-3.

**Table 5-3**
**Estimated Number of Future Claims That Will Be Able to Meet the Evidentiary Criteria**

| Median | Meso-thelioma | Lung Cancer | All Other Cancers | Severe Asbestosis | Asbestosis | Unimpaired Asbestosis | Total |
|---|---|---|---|---|---|---|---|
| Based on claims providing medical and exposure data | 2,381 | 2,271 | 234 | 583 | 14,920 | 21,158 | 41,546 |
| Based on claims providing medical and exposure data and assuming same proportion for those not providing data | 6,153 | 2,269 | 340 | 1,074 | 27,500 | 38,997 | 76,332 |
| Median of all 32 scenarios | 3,716 | 2,270 | 277 | 778 | 19,926 | 28,257 | 55,225 |

### *5.5 Present Value of Indemnity for Estimated Future Claims*

#### *5.5.1 Nominal Estimated Indemnity*

The following table presents the nominal value of the median future claim estimates using the estimated claim values described in Section 4.4. A 2.5% annual inflation rate was applied to