# EXHIBIT 8

# Estimation of the Number and Value of Pending and Future Asbestos-Related Personal Injury Claims: W.R. Grace

# Supplemental Report

Prepared for WR Grace

By B. Thomas Florence, Ph.D.

ARPC

September 25, 2007

*1.2 Current*

ARPC has now been asked to estimate the Grace pending and future asbestos personal injury claim liability under a specific set of assumptions. These assumptions are based on the premise that only claimants whose claims met the following criteria would be able to sustain their burden of proof that their claims against Grace are valid, and therefore, their claims should be valued as part of the estimation process:

1. A Proof of Claim ("POC")
2. Minimum exposure criteria:
    - Nature of exposure to Grace asbestos containing products must be one of the following types (as described in Part 3 of the Personal Injury Questionnaire ("PIQ")):
        - a worker who personally mixed Grace asbestos-containing products
        - a worker who personally installed Grace asbestos-containing products
3. Minimum causation criteria for Lung Cancer claims of:
    - Diagnosis of asbestosis based on the B-Reader report of a reliable B-Reader
    - Reproducible ILO score of 1/0 or greater
4. Minimum medical criteria for Other Cancer claims of:
    - Diagnosis of Laryngeal Cancer
5. Minimum medical criteria for all Nonmalignant claims of:
    - Diagnosis of asbestosis or diffuse pleural thickening based on the B-Reader report of a reliable B-Reader
    - ILO score of 1/0 or greater for asbestosis
6. Minimum impairment criteria for Severe Asbestosis claims of:
    - Diagnosis of asbestosis based on the B-Reader report of a reliable B-Reader
    - ILO score of 2/1 or greater and
    - Pulmonary Function Test ("PFT") results of TLC <65% of predicted or (FVC<65% of predicted and FEV1/FVC ratio >=65%) complying with American Thoracic Society ("ATS") standards
7. Minimum impairment criteria for Asbestosis claims of:
    - Diagnosis of asbestosis or diffuse pleural thickening based on the B-Reader report of a reliable B-Reader
    - ILO score of 1/0 or greater for asbestosis and
    - PFT results of TLC <80% of predicted or (FVC<80% of predicted and FEV1/FVC ratio >=65%) complying with ATS standards

In a typical asbestos bankruptcy estimation, the information necessary for determining which claims would meet these criteria would not be available. However, in this case the Court approved the use of a Personal Injury Questionnaire ("PIQ") for the purpose of gathering demographic, medical and exposure information concerning all claims pending against Grace at the time of the bankruptcy ("pending claims"). The Court also required all pending claimants to file a timely Proof of Claim ("POC") or the claim would be forever barred from being filed against a Trust in the future. The data gleaned from these two requirements allowed for the estimation of valid Grace claims based on the above criteria.

2

sparseness of data, etc.), ARPC created four levels of matches: Definite Matches, Probable Matches, Possible Matches, and No Possible Matches (see Appendix E for more information on the types of matches and the matching process).

As can be seen in the table below, only 83,767 of the 112,690 historical pending claims submitted a POC[4] (62,977 definite matches, 1,419 probable matches and 19,371 possible matches). At least 28,923 (26%) of the 112,690 historical pending claims do not have a POC and another 19,371 historical pending claims may not have a POC because they are only possible matches.

Table 4-1
Number of Historical Pending Claims That Match to POCs[5]

| Historical Disposition Type | 1) POC Definite Match | 2) POC Probable Match | 3) POC Possible Match | Total Matches | 4) POC No Possible Match | Total Number of Historical Claims |
|---|---|---|---|---|---|---|
| Pending | 62,977 | 1,419 | 19,371 | 83,767 | 28,923 | 112,690 |

Table 4-2 categorizes the 83,767 historical claims that filed a POC by disease:

Table 4-2
Number of Historical Pending Claims That Filed a POC by Disease
After Allocation of Unknown Diseases[6]

| Pending Claims | Meso-thelioma | Lung Cancer | All Other Cancers | Non-malig-nancies | Total |
|---|---|---|---|---|---|
| Have a POC | 2,426 | 5,510 | 2,110 | 73,721 | 83,767 |

Table 4-3 shows the total number of historical pending claims with both a POC and a PIQ. Only 73,743 of the historical pending claims that matched to a POC also matched to a PIQ (54,183 definite matches, 891 probable matches and 18,274 possible matches). At least 39,342 (35%) of the 112,690 historical pending claims do not have a POC and a PIQ and another 18,274 historical pending claims may not have a POC with a PIQ because they are only possible matches.

Table 4-3
Number of Historical Pending Claims That Match POCs with PIQs

| Historical Disposition Type | 1) Have a POC Match | | | | | 2) No POC Match | Total Number of Historical Pending Claims |
| | 1) PIQ Definite Match | 2) PIQ Probable Match | 3) PIQ Possible Match | Total Matches | 4) PIQ No Possible Match | | |
|---|---|---|---|---|---|---|---|
| Pending | 54,183 | 891 | 18,274 | 73,348 | 10,419 | 28,923 | 112,690 |

---

[4] All analyses of historical claims exclude 5,063 claims with either a diagnosis date or date filed that is post-bankruptcy.

[5] Totals are lower than in the June 18, 2006 report because of additional withdrawn claims from three law firms and additional duplicates identified.

[6] Method for allocation of unknown diseases is described in Appendix F.

8

Table 4-4 categorizes the 73,348 historical pending claims that filed a POC and a PIQ by disease:

**Table 4-4**
**Number of Pending Claims That Filed a POC and a PIQ by Disease**
**After Allocation of Unknown Diseases**

| Pending Claims | Meso-thelioma | Lung Cancer | All Other Cancers | Non-malig-nancies | Total |
|---|---|---|---|---|---|
| Have a POC and PIQ | 2,130 | 4,887 | 1,904 | 64,428 | 73,348 |

ARPC's estimates were based on analyses that excluded only pending historical claims for which there was no possible POC match.

*4.2.2 Historical Pending Claims That Met the Minimum Exposure Criteria*

ARPC was asked to assume that only historical pending claimants whose claims also met the following criteria would be able to sustain their burden of proof that their claims against Grace are valid, and therefore, their claims should be valued as part of the estimation process:

- Claimants must have exposure to a Grace asbestos-containing product as the result of the following "Nature of Exposure"[7]:
    o  personally mixing Grace asbestos-containing products
    o  personally installing Grace asbestos-containing products

To determine if the claims met the exposure criteria, the PIQ specifically asked each pending claimant to characterize the claimant's "Nature of Exposure" as one of the descriptions shown above or as being in the proximity of Grace products. Only 13% of the claimants who submitted PIQs responded to this question. Based on the expert review of the exposure information, 65% of mesothelioma claims did not have sufficient information to determine "nature of exposure". Similarly, 41% of Lung Cancer claims, 45% of Other Cancer claims, and 53% of Nonmalignant claims did not have sufficient exposure information.[8]

Using data from the expert review of the exposure information, ARPC calculated the number of historical pending claims that met the assumed criteria of sufficient exposure to Grace asbestos-containing products (and also filed a POC). If claimants did not respond to the "nature of

---

[7] See June 11, 2000 report of Elizabeth Anderson: The Scientific Credibility of Personal Injury Claims Related to Alleged Exposure to W. R. Grace Asbestos Containing Products – Supplemental Report.

[8] Based on the Celotex Trust review of a sample of attachments submitted with the PIQs, 71% of the PIQ claims in the sample had information regarding nature of exposure. Due to the varied formats of the exposure records submitted for the PIQ sample claims and because the claimants often did not specifically identify exposure to a Grace asbestos containing product, it was decided to have Celotex Trust reviewers code any type of information concerning the nature of the claimant's asbestos exposure instead of requiring Celotex Trust reviewers to discern whether or not each exposure was linked to a Grace asbestos containing product.

exposure" question either on the questionnaire or the attachments to the questionnaire, ARPC had no data to calculate how many, if any, of the claimants who did not respond had claims that met the criteria. ARPC analyzed the nature of exposure in two ways. One method calculates the number of historical pending claims that met the criteria based on the claims that provided data that they met the nature of exposure criteria. The second method calculates the number of historical pending claims that met the assumed criteria and assumes that claimants who did not provide nature of exposure data either on or with the PIQs met the criteria in the same proportion as those who provided the data.[9]

**Table 4-5**
**Number of Historical Pending Claimants That Met the Exposure Criteria**
**Based on the Expert Review of Exposure Information**[10]

| Pending Claims | Meso-thelioma | Lung Cancer | All Other Cancers | Non-malig-nancies | Total |
|---|---|---|---|---|---|
| Based on Claims Providing Exposure Data | 156 | 356 | 259 | 10,185 | 10,956 |
| Based on Claims Providing Exposure Data and Assuming the Same Proportion For Those Not Providing Data | 463 | 918 | 656 | 21,805 | 23,843 |

*4.2.3  Minimum Causation Criteria for Lung Cancer Claims*

The assumed minimum causation criteria for Lung Cancer historical pending claims were based on the following:

1. Diagnosis of asbestosis based on the B-Reader report of a reliable B-Reader
2. Reproducible ILO score of 1/0 or greater

To determine whether the claimants met these assumed criteria, Dr. Daniel Henry developed a claimant x-ray study. The x-ray study performed by Dr. Henry was based on a Court order requiring each claimant alleging asbestos-related Lung Cancer as evidenced by radiographic evidence to submit a certified copy of the x-ray showing such evidence or certify that the x-ray was held by a third party or destroyed. Of the 4,764 Lung Cancer claimants subject to the Court order, 2,421 claimants (51%) neither submitted a certified copy of an x-ray nor certified that the x-ray was held by a third-party or destroyed.

ARPC was asked to make the assumption that absent receipt of certified copies of x-rays such evidence would not be available for the estimation trial. Therefore, ARPC included in its analyses only those claimants that provided certified copies of x-rays.

---

[9] Appendix G shows the estimated percentage of missing data for pending and resolved claims.
[10] The expert review of exposure information for Lung Cancer, Other Cancer, and Nonmalignant claims was based only on claims that passed the medical criteria for those diseases.

In addition, the x-ray study found that the requirement of reproducibility (at least two independent doctors reading the x-ray as having an ILO of 1/0 or greater) was met by only a small number of the Lung Cancer claimants in the sample (restricted to claimants with a POC that match to a historical pending claim). Based on the results of this study concerning both noncompliance and reproducibility of an ILO of 1/0 or greater, Table 4-6 provides the number of historical pending Lung Cancer claims that met these criteria and met the exposure criteria (based on the expert review of exposure information):

**Table 4-6.**
**Number of Historical Pending Lung Cancer Claimants Who Met the Medical Criteria of A Reproducible ILO of 1/0 or Greater**
**Based on X-ray Study and Met the Exposure Criteria and Filed a POC**

| Pending Claims | Lung Cancer |
|---|---|
| Based on Claims Providing Exposure Data | 23 |
| Based on Claims Providing Exposure Data and Assuming the Same Proportion For Those Not Providing Data | 59 |

*4.2.4  Minimum Medical Criteria for the Other Cancer Claims*

The assumed minimum medical criterion for Other Cancer claims is a diagnosis of Laryngeal Cancer[11]. Using data from the PIQ attachment sample, ARPC calculated the number of historical pending Other Cancer claims that met the assumed medical criteria (and also filed a POC and met the minimum exposure criteria described in Section 4.2.2). If claimants did not specify the type of Other Cancer alleged in either the questionnaire or the attachments to the questionnaire, ARPC had no data to calculate how many, if any, of the claimants who did not respond had claims that met the criteria. ARPC analyzed the PIQ attachment sample in two ways. One method calculates the number of historical pending Other Cancer claims that met the criteria based on the claims that provided the required information and filed a POC. The second method calculates the number of historical pending Other Cancer claims that met the criteria based on claims providing the required data and assuming that claimants who did not provide the required data met the criteria in the same proportion as those who did provide the data.

Table 4-7 provides the number of historical pending Other Cancer claimants who met both the medical criteria and the exposure criteria (based on the expert review of exposure information) and filed a POC.

---

[11] See June 11, 2007 report of Dr. David Weill.

**Table 4-7**
**Number of Historical Pending Other Cancer Claimants That Met the Medical and Exposure Criteria and Filed a POC**

| Pending Claims | Other Cancer |
|---|---|
| Based on claims providing medical and exposure data | 33 |
| Based on claims providing medical and exposure data and assuming same proportion for those not providing data | 105 |

*4.2.5 Minimum Medical Criteria for the Nonmalignant Claims*

The assumed minimum medical criteria for Nonmalignant claims were based on the following criteria:
1. Diagnosis of asbestosis or diffuse pleural thickening based on a B-reader report of a reliable B-reader
2. ILO score of 1/0 or greater for asbestosis

For purposes of calculating which claims met the criteria of a reliable B-reader, ARPC was asked to assume that a group of B-Readers do not satisfy the evidentiary standard of reliability[12], and a claimant alleging a Nonmalignant disease using only one of these B-Readers had not met the burden of proof that the claim is valid.[13]

To determine if the claims met the reliable doctor criteria and other medical criteria, the PIQ specifically asked each pending claimant to answer medical questions. Many of the claimants did not fill out the information on the questionnaire but stated "See attached" or "Objection". The Celotex Trust reviewed a sample of attachments to capture additional medical data attached to the PIQ.

Using data from the PIQ attachment sample, ARPC calculated the number of historical pending Nonmalignant claims that met the assumed medical criteria (and also filed a POC and met the minimum exposure criteria described in Section 4.2.2). If claimants did not specify an ILO score and the name of a B-reader, ARPC had no data to calculate how many, if any, of the claimants who did not respond had claims that met the criteria. ARPC analyzed the PIQ attachment sample

---

[12] These doctors are discussed in the June 11, 2007 report of Dr. Haber: Diagnostic Practices in a Litigation Context: Screening Companies and the Doctors They Employed.

[13] See Appendix H for a list of the non-qualified doctors. Some claimants provided information from multiple B-readers. In these instances, a single B-reader, and the reading, was selected. If a B-reader who is not in Appendix H made a reading that qualified a claimant as having asbestosis or diffuse pleural thickening by the assumed criteria, then that B-reader was selected for purposes of analysis for that claimant. If more than one reader for a given claimant was not in Appendix H, then the B-reader with the most severe reading was selected for purposes of analysis.

12

in two ways. One method calculates the number of historical Nonmalignant claims that met the criteria based on the claims that provided the required information. The second method calculated the number of historical pending Nonmalignant claims that met the criteria based on claims providing the required data and assuming that claimants who did not provide the required data met the criteria in the same proportion as those who did provide the data.

Table 4-8 provides the number of historical pending Nonmalignant claims that met the medical criteria and exposure criteria (based on the expert review) and filed a POC.

**Table 4-8**
**Number of Historical Pending Nonmalignant Claimants That Met the Medical and Exposure Criteria and Filed a POC**

| Pending Claims | Nonmalignants |
|---|---|
| Based on claims providing medical and exposure data | 2,725 |
| Based on claims providing medical and exposure data and assuming same proportion for those not providing data | 8,174 |

*4.2.6    Allocation of Nonmalignant Claims Among Severe Asbestosis, Asbestosis, and Unimpaired Asbestosis Claims*

In addition, ARPC was asked to categorize Nonmalignant claims into three categories based on assumed medical criteria: Severe Asbestosis, Asbestosis, and Unimpaired Asbestosis. The assumed criteria are:

    Severe Asbestosis:
- Diagnosis of asbestosis based on the B-Reader report of a reliable B-Reader
- ILO score of 2/1 or greater and
- TLC <65% of predicted or (FVC<65% of predicted and FEV1/FVC ratio >=65%) complying with ATS standards

    Asbestosis:
- Diagnosis of asbestosis or diffuse pleural thickening based on the B-Reader report of a reliable B-Reader
- ILO score of 1/0 or greater for asbestosis
- TLC <80% of predicted or (FVC<80% of predicted and FEV1/FVC ratio >=65%) complying with ATS standards

    Unimpaired Asbestosis:
- Diagnosis of asbestosis or diffuse pleural thickening based on the B-Reader report of a reliable B-Reader
- ILO score of 1/0 or greater for asbestosis

To examine the issue of PFTs complying with ATS standards for the purpose of identifying claimants that met the criteria of Severe Asbestosis and Asbestosis, Dr. David Weill conducted a study that consisted of a random sample of 150 Nonmalignant claims that alleged PFT evidence of impairment on their PIQs. Doctors reviewed the PFT results based on ATS criteria.[14] The conclusion of the sample analysis was that none of the 150 PIQs sampled complied with all of the ATS standards and only 20 complied with the ATS standards for either FVC or TLC (regardless of whether the test showed impairment).

The following table shows the number of Nonmalignant claims that met the assumed medical and exposure criteria by type of nonmalignancy using the PIQ attachment sample and the ATS standards study. If claimants did not specify an ILO score, the name of a B-reader, and/or the necessary PFT results, ARPC had no data to calculate how many, if any, of the claimants who did not respond had claims that met the criteria. ARPC analyzed the PIQ attachment sample in two ways: (1) based on claims providing data and (2) based on claims providing data and assuming the same proportion for those not providing data. Table 4-9 provides the breakout of historical pending Nonmalignant claims:

**Table 4-9**
**Breakout of Nonmalignant Categories Based on the PIQ Attachment Sample**

| Pending Claims | Severe Asbestosis | Asbestosis | Unimpaired Asbestosis |
|---|---|---|---|
| Based on claims providing medical and exposure data | 7 | 160 | 2,557 |
| Based on claims providing medical and exposure data and assuming same proportion for those not providing data | 22 | 480 | 7,672 |

*4.3 The Number of Pending Claims That Met the Assumed Criteria*

Table 4-10 and Table 4-11 below show the number of historical pending claims by disease that ARPC estimated met the assumed criteria using the two methods described earlier in this section:

**Table 4-10**
**Summary of Estimated Pending Claims That Met the Criteria**
**Based on Claims Providing Data**

| Pending Claims | Meso-thelioma | Lung Cancer | All Other Cancers | Severe Asbestosis | Asbestosis | Unimpaired Asbestosis | Total |
|---|---|---|---|---|---|---|---|
| 1) Have a POC | 2,426 | 5,510 | 2,110 | 73,721 | | | 83,767 |
| 2) Meet Exposure Criteria and #1 | 156 | 356 | 259 | 10,185 | | | 10,956 |
| 3) Meet Medical Criteria and #2 | | 23 | 33 | 2,725 | | | |
| 4) Nonmalignancy Allocation of #3 | | | | 7 | 160 | 2,557 | |
| Overall | 156 | 23 | 33 | 7 | 160 | 2,557 | 2,938 |

---

[14] Based on 1994 Spirometry Standards, the ATS ERS-2005 Lung Volume Standards, and the ATS 1995 DLCO Standards.

14

Table 4-11
Summary of Estimated Pending Claims That Met the Criteria
Based on Claims Providing Data and Assuming the Same Proportion for Claims Not Providing Data

| Pending Claims | Meso-thelioma | Lung Cancer | All Other Cancers | Severe Asbestosis | Asbestosis | Unimpaired Asbestosis | Total |
|---|---|---|---|---|---|---|---|
| 1) Have a POC | 2,426 | 5,510 | 2,110 | 73,721 | | | 83,767 |
| 2) Meet Exposure Criteria and #1 | 463 | 918 | 656 | 21,805 | | | 23,843 |
| 3) Meet Medical Criteria and #2 | | 59 | 105 | 8,174 | | | |
| 4) Nonmalignancy Allocation of #3 | | | | 22 | 480 | 7,672 | |
| Overall | 463 | 59 | 105 | 22 | 480 | 7,672 | 8,802 |

*4.4 Computation of Average Settlement Amounts*

ARPC calculated settlement averages to value the pending claims.

*4.4.1 Value of Mesothelioma Claims*

To value the estimated pending Mesothelioma claims, ARPC analyzed Grace's historical settlement data.

Because ARPC estimated pending claims that met the assumed evidentiary criteria, ARPC first examined the settled Mesothelioma claims in the Closed Claim sample that met the same criteria (of the ones that provided the necessary information based on the expert review of exposure information). ARPC applied an average inflation value of 2.5% per year to bring all settlement averages to 2001 dollars. The range from April 1999 to April 2001 was selected as being most recent and therefore most reflective of future events, without overweighting any single time period. Table 4-12 illustrates the results of this exercise:

Table 4-12.
Settlement Average for Claims in the Closed Claim Sample
Claims Closed From April 1999 to April 2001

| | Met Criteria | Did not Meet Criteria | Insufficient Exposure Information | Overall Average |
|---|---|---|---|---|
| Settlement Average | $155,240 | $127,450 | $92,649 | $96,531 |
| Count | 6 | 12 | 258 | 285 |

The averages increase steadily from those claims having insufficient exposure information to those having exposure information but not meeting the criteria to the highest average for those that met the criteria. However, the differences in the averages for those that met the criteria and those that did not are not statistically significant. Although it is not statistically apparent that claims were historically paid a higher amount on average based on the validity of Grace exposure, ARPC used the higher average for those claims that met the exposure criteria to value the pending and future claims.

15

**Table 4-15**
**Estimated Value of Pending Claims That Met the Evidentiary Criteria (millions)**

| Pending Claims | Meso-thelioma | Lung Cancer | Other Cancer | Severe Asbestosis | Asbestosis | Unimpaired Asbestosis | Total |
|---|---|---|---|---|---|---|---|
| Based on claims providing medical and exposure data | $24 | $1 | $1 | $0 | $2 | $12 | $41 |
| Based on claims providing medical and exposure data and assuming same proportion for those not providing data | $72 | $3 | $2 | $1 | $6 | $37 | $121 |
| Overall Median | $48 | $2 | $2 | $1 | $4 | $25 | $81 |

The estimated value of the pending claims that met the evidentiary criteria ranges from $41 million to $121 million with a median value of $81 million.

## 5.0 Future Claims Estimation

### *5.1 Historical Pending and Closed Claims That Met the Criteria*

ARPC was also tasked with forecasting the number of future claims. Grace asked ARPC to assume that only the claimants whose claims met specific criteria will be able to sustain their burden of proof that the claims against Grace are valid and therefore compensable. Since a forecast of future claims that will meet the evidentiary criteria is based on both historical pending and closed claims that met the criteria, ARPC calculated the number of historical closed claims that met the assumed criteria, in addition to the number of historical pending claims that met the assumed criteria.

Table 5-1 and Table 5-2 show the estimated number of historical pending and closed claims that met the assumed criteria by disease and year served/filed assuming that the historical closed claims would meet the criteria in the same proportion as the historical pending claims. Table 5-1 is based on claims providing exposure and medical data and Table 5-2 is based on claims providing exposure and medical data and assuming the same proportions for those not providing data. These numbers of claims were used as the foundation for the estimation of future asbestos claims against Grace that are assumed will be able to meet the evidentiary criteria.

Table 5-1
Number of Estimated Pending and Closed Claims That Met the Criteria
Based on Claims Providing Data

| Year Served | Meso-thelioma | Lung Cancer | All Other Cancers | Nonmalig-nancies | Total |
|---|---|---|---|---|---|
| 1996 | 39 | 7 | 6 | 1,033 | 1,085 |
| 1997 | 36 | 6 | 5 | 782 | 829 |
| 1998 | 41 | 5 | 7 | 856 | 909 |
| 1999 | 42 | 6 | 7 | 873 | 928 |
| 2000 | 73 | 8 | 10 | 1,310 | 1,401 |
| 2001 | 24 | 3 | 4 | 559 | 591 |
| Total | 255 | 36 | 39 | 5,413 | 5,743 |

Table 5-2
Number of Estimated Pending and Closed Claims That Met the Criteria
Based on Claims Providing Data and Assuming the Same Proportion for Claims Not Providing Data

| Year Served | Meso-thelioma | Lung Cancer | All Other Cancers | Nonmalig-nancies | Total |
|---|---|---|---|---|---|
| 1996 | 118 | 19 | 20 | 3,098 | 3,255 |
| 1997 | 107 | 15 | 16 | 2,347 | 2,485 |
| 1998 | 115 | 13 | 20 | 2,567 | 2,716 |
| 1999 | 127 | 16 | 22 | 2,618 | 2,783 |
| 2000 | 212 | 21 | 31 | 3,930 | 4,194 |
| 2001 | 65 | 9 | 12 | 1,066 | 1,152 |
| Total | 745 | 92 | 122 | 15,626 | 16,585 |

To implement the forecast methods described in the next section of this report, ARPC analyzed the filing trends by year of diagnosis. Appendix I describes the imputation of missing diagnosis years and the adjustments for claims diagnosed after the filing year.

*5.2 Forecast of Incidence of Mesothelioma and Lung Cancer*

Two different methods were used to estimate the number of future claims that will be able to meet the assumed evidentiary criteria against Grace for Mesothelioma and Lung Cancer—one based upon the work of Nicholson, Perkel, and Selikoff (1982) and the other based upon the work of Peto, Henderson, and Pike (1981). These methods are described in Appendix J.

*5.3 Methods for Estimating Other Cancer and Nonmalignant Claims*

Two general methods were used to estimate Other Cancer and Nonmalignant claims. One method used the lung cancer claims as an "index series" to determine the ratio of the number of Other Cancer and Nonmalignant claims in the forecast database to the total number of Lung Cancer claims in the forecast database. The other method used regression models to estimate the natural logarithm of the annual filing rate for the valid Other Cancer and Nonmalignant claims as a linear function of the natural logarithm of the annual filing rate for valid Lung Cancer claims.

### *5.4 Estimation of the Number of Future Claims*

The table in this section represents the median forecast of future claims. The median forecast is based on 32 individual forecasts—the product of two methods for calculating the number of claims that would be able to meet the evidentiary criteria, two alternative mesothelioma and lung cancer forecast methods (Nicholson and Peto), four calibration periods (1996-2000, 1997-2000, 1998-2000 and 1999-2000), and two methods for estimating the other cancers and nonmalignancies (ratio and regression). The calibration period refers to the historical period of time that is used as the basis for the forecast. A calibration period is selected to be that historical period that is expected to be most reflective of future events. The range of calibration periods: 1996-2000, 1997-2000, 1998-2000, and 1999-2000, was selected so as to include sufficient years such that the influence of any single anomalous year would be mitigated. These calibration periods were also selected as being current with the last full year of data prior to the bankruptcy.

The median of the forecasts of the number of future claims based on claims providing data, based on claims providing data and assuming the same proportion for claims not providing data, and the median of all these forecasts are presented in the Table 5-3.

**Table 5-3**
**Estimated Number of Future Claims That Will Be Able to Meet the Evidentiary Criteria**

| Median | Meso-thelioma | Lung Cancer | All Other Cancers | Severe Asbestosis | Asbestosis | Unimpaired Asbestosis | Total |
|---|---|---|---|---|---|---|---|
| Based on claims providing medical and exposure data | 1,196 | 153 | 186 | 61 | 1,329 | 21,226 | 24,150 |
| Based on claims providing medical and exposure data and assuming same proportion for those not providing data | 3,499 | 392 | 570 | 181 | 3,947 | 63,041 | 71,629 |
| Median of all 32 scenarios | 2,025 | 256 | 335 | 109 | 2,383 | 38,058 | 43,166 |

### *5.5 Present Value of Indemnity for Estimated Future Claims*

#### *5.5.1 Nominal Estimated Indemnity*

The following table presents the nominal value of the median future claim estimates using the estimated claim values described in Section 4.4. A 2.5% annual inflation rate was applied to settlement values through 2007 and then a 1.0% inflation rate was used to reflect a 2.5% annual

19

## 7.0 Conclusion

ARPC was asked to estimate the Grace number and value of pending and future asbestos personal injury claims under the assumption that only claimants whose claims met the required criteria will be able to sustain their burden of proof that their claims against Grace are valid, and therefore, their claims should be valued as part of the estimation process.

ARPC estimated 32 forecasts based on various combinations of assumptions concerning which historical claims met the imposed criteria. As of April 2001, ARPC estimated the net present value of pending and future claims using a discount rate of 5.11%, an inflation rate of 2.5%, and a claim value deflation rate of 1.5% (reflecting lower claim valuations due to the aging of the claimant population) to be within a range from $200 million to $989 million through 2049. The median of this range is $468 million.

## Appendix G:  Percent of Missing Data for Pending and Resolved Claims

ARPC compared the information provided in the resolved and pending claims to determine whether resolved claims provided more or less information than the pending claims for certain criteria. Grace asked ARPC to assume that only the claims that met certain criteria are valid. ARPC compared the information provided for those criteria in the resolved and pending claims.

ARPC's analysis was based on a review of the resolved claims (Closed Claims sample) and the pending claims (PIQ Attachment sample). ARPC examined the information provided in the Closed Claims sample and both on the PIQ and the attachments for the criteria of nature of exposure, ILO scores, and PFT scores.

Table G-1 provides the results of this analysis.

**Table G-1**
**Missing Data for Resolved and Pending Claims**

| Percent of Missing Data | Mesothelioma | Lung Cancer | Nonmalignants | |
|---|---|---|---|---|
| | Nature of Grace Exposure | ILO Score | ILO Score | PFT Scores |
| Resolved Claims (Closed Claim Sample) | 91% | 61% | 27% | 67% |
| Pending Claims (PIQ Attachment Sample) | 66% | 45% | 26% | 36% |

G - 1