# EXHIBIT 25

**INTRODUCTION**

    A.    David Weill, M.D. - Background Information

My name is David Weill, and I am the Medical Director of the Lung and Heart – Lung Transplant Program at Stanford University Medical Center. I am also an Associate Professor in the Division of Pulmonary and Critical Care Medicine at Stanford and am Board Certified in Pulmonary and Critical Care Medicine and a National Institute for Occupational Safety and Health (NIOSH) – certified B Reader, which is a demonstration of proficiency in the interpretation of pneumoconiosis – related chest radiographs. In addition to my own practice specializing in end-stage lung diseases, I have been a visiting professor at the National Institute for Occupational Medicine and Poison Control in Beijing, China. I have also had the opportunity to testify before the United States Senate Judiciary Committee and the Texas State Legislature regarding legislation addressing the handling of asbestos and silica claims.

    B.    Goals of the Report

This report will discuss the following areas:

- A rebuttal to the PI expert reports. I had the opportunity to review the expert reports filed on behalf of the PI Committee in the W.R. Grace Bankruptcy proceeding. I reviewed the following reports:

1) Report of Dr. Laura Welch

2) Report of Dr. Arthur Frank

3) Report of Dr. Samuel Hammar

4) Report of Dr. Richard Lemen

5) Report of Dr. Alan Whitehouse

6) Report of Dr. William Longo

1

The proper performance and interpretation of pulmonary function tests can be found in various ATS publications (e.g. Official Statement of the American Thoracic Society, "Lung Function Testing: Selection of Reference Values and Interpretative Strategies," 144 American Review of Respiratory Disease 1202-1218 (1991); Official Statement of the American Thoracic Society, "Standardization of Spirometry: 1994 Update," Am J Resp Crit Care Med 152: 1107-1136 (1995); Official Statement of the American Thoracic Society, "Single-breath Carbon Monoxide Diffusing Capacity (transfer factor): Recommendations for a Standard Technique - 1995 Update," Am J Respir Crit Care Med 152:285-298 (1995). It is critically important that these tests be performed and interpreted correctly if one is to rely upon their results for impairment determinations. If the tests are not valid and reproducible, there exists the potential to assign impairment to someone who would not be considered impaired if the tests were performed properly.

Spirometry

Spirometry is the most commonly administered component of the pulmonary function testing. Spirometry measures air flow, which is expressed as volume exhaled per unit of time. In doing so, spirometry is able to distinguish among people who have no impairment and those who have either a restrictive or an obstructive lung disease. The most important spirometric measurements are the forced vital capacity (FVC), forced expiratory volume in the fist second (FEV-1), and the FEV-1/FVC ratio. Forced vital capacity is the total volume of air that is expired on a maximal exhalation effort by the patient. FEV-1 is the volume

of air expired in the first second of the FVC maneuver. In patients with obstructive lung disease, such as emphysema, the FEV-1/FVC ratio is reduced. Conversely, in those patients with restrictive disorders, such as asbestosis, the FEV-1/FVC ratio is increased. While other lung diseases can cause either an obstructive or restrictive impairment, spirometry allows one to put diseases into one of these two broad categories.

The ATS has promulgated certain criteria for administering and interpreting spirometry tests, such as:

1. There should be an obvious end of exhalation, demonstrated by a plateau for at least one second after an exhalation time of at least 6 seconds.

2. Because this determination requires the PFT interpreter to examine the actual efforts made by the worker in graphic form, the ATS requires that the spirometry graphs be of sufficient size in order that someone interpreting the exam can discern whether there is testing artifact, such as coughing, sneezing, or delay in exhalation. Furthermore, there should be at least three acceptable graphs performed.

3. In order to be sure that the tests are reproducible, the largest and second largest FEV-1 and FVC must be within 0.15 liters of each other.

These spirometry criteria, upon which impairment criteria are based, are often not met in the litigation setting and therefore do not allow confidence about their interpretation.

<u>Diffusing Capacity</u>

In addition to spirometry standards, the ATS also has criteria for the determination of the diffusing capacity. The diffusing capacity test (DLCO) is

32

performed separately from spirometry and is a measurement of gas exchange capability of the lung. Specifically, DLCO measures the ability of the gas exchange membrane to diffuse carbon monoxide. This test will provide information about the ability of the lung to absorb oxygen. In diseases that impair oxygenation, such as emphysema and a variety of interstitial lung diseases, the DLCO will be reduced. As is the case with the spirometry values, failure to perform the DLCO test properly leads to unreliable test results that cannot be relied upon when making impairment judgments. Even if a claimant's DLCO is less than the lower limit of normal, however, his pulmonary function test still cannot be used to demonstrate Class 2 or higher impairment if it fails to comply with the following requirements set forth in the ATS DLCO, AMA 5th Edition.

The following describes the technical factors involved with the performance of the DLCO that may reduce the reliability of the DLCO measurement:

1. Inspired Volume is not 90% of the largest previously measured vital capacity.

The ATS DLCO requires that an individual's inspired volume be at least 90% of the largest previously measured vital capacity. This criterion relates to the degree to which the patient adequately performed the test.

2. Washout volume is inside the dead space.

The ATS DLCO requires that the washout volume be outside the dead space: "If a continuous gas analyzer system is used, computerized or manual inspection of the expired CO and tracer gas curves may be used to adjust washout volume to assure dead space clearance." ATS DLCO at 2190. An

33

individual plaintiff's pulmonary function test would fail this requirement if the washout volume is inside the dead space on all trials of the DLCO test.

3. There are not two acceptable DLCO trials.

The ATS DLCO requires two acceptable DLCO trials. An individual would not meet this criterion if there are no acceptable trials during which the inspired volume is not at least 90% of the largest previously measured vital capacity and the washout volume is inside the dead space.

I reviewed the depositions of Drs. Schonfeld, Graziano, and Segarra. With regard to the discussion of the technical aspects of performing pulmonary function tests, there is some confusion in the doctors' comments about the details of the ATS criteria for lung function testing. In addition, there are specific examples of claimants who do not meet ATS criteria based on examination of their test but in whom Dr. Schonfeld originally stated that there was compliance with ATS criteria. The ATS criteria are technical in nature, and there are examples throughout my examination of the claimant PFT from the CARD and Klock and Whitehouse clinic samples that I was given of failures to meet these criteria. In fact, only a small percentage did meet ATS criteria. One of the most common ATS criteria omitted was the lack of 3 available tracings. There was usually only one tracing. I will now summarize the important parts of the ATS criteria for PFTs.

### B. REVIEW OF SAMPLE OF PFTS FROM QUESTIONNAIRES

I was asked to review the pulmonary function tests (PFTs) that were submitted for 1,197 Claimants, by 69 Law Firms, as part of the medical records

34

provided in support of their claim. These Claimants are listed in Appendix A (Claimants with PFTs by Law Firms).

An initial qualitative review of the submitted PFT tests indicated that many did not appear to comply with the American Thoracic Society (ATS) pulmonary function testing criteria that have been published since 1979. In addition, the pulmonary function tests that were submitted often did not include measurements of lung volumes or carbon monoxide diffusing capacity (DLCO) and thus did not comply with the official ATS statements published in 1986 and 2004 for the diagnosis of asbestos-related diseases. These standards recommend that testing include spirometry, all lung volumes, and the carbon monoxide diffusing capacity.

In order to quantify the completeness and compliance of the submitted PFT tests, a test sample was selected and evaluated with respect to the above-mentioned official standards and statements of American Thoracic Society. The sample was randomly selected to represent 10% of the submitted Claimants, based on the number of Claimants submitted by each Law Firm. In addition, at least 1 Claimant was also selected from Law Firms where a 10% sample was too small to otherwise contribute a single Claimant. This resulted in a total random sample of 150 Claimants from all 69 Law Firms.

This report focuses on the compliance of these 150 Claimant's tests with the established ATS pulmonary function tests criteria that are provided in

35

and they also failed the earlier 1987 DLCO standard. The FRC standard published in 2005 is much more comprehensive than the evaluation conducted above that only required 2 repeatable (within 10%) values. Repeatability has been a requirement of volumetric measurements of lung function since the first ATS standards were published in 1979. Therefore, none of the PFT tests submitted by the 69 Law Firms on behalf of the 150 Claimants, evaluated above, passed all ATS standards, irrespective of when the tests were conducted.

II.   Discussion

This ATS standards discussed above were developed to provide both comprehensive and accurate pulmonary function test results. However, of the random sample of pulmonary function tests, evaluated for the 150 Claimants and submitted by all 69 Law Firms, all 150 (100%) failed to comply with all ATS testing criteria, and 98 (65%) failed to include all the tests recommended by the ATS for the evaluation of asbestos-related disease. It should be noted that there were many aspects of the testing standards that could not be evaluated, including equipment accuracy and calibration, technician training, and adherence to recommended testing procedures, all of which are part of these same ATS standards.

III.   Conclusion

It is my opinion that the random sample of the PFT tests, that were evaluated for 150 Claimants, are representative of the PFT tests submitted for all 1,197 Claimants by all 69 Law Firms. These tests:

(1) Do not comply with ATS criteria,

(2) Cannot be used in support of the submitted claim, since they represent inaccurate and incomplete tests, and

(3) They make it difficult, if not impossible, to carefully "discriminate among the effects due to asbestosis, chronic obstructive disease, and restrictive changes due to obesity," as is recommended by ATS.

*David Weill*

David Weill, M.D.