# EXHIBIT 28

Page 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

----------------------------------------

CHAPTER 11

IN RE:

W.R. GRACE & CO., et al.,

    Debtors.

Case No. 01-1139 (JFK)

----------------------------------------

HIGHLY CONFIDENTIAL - ATTYS' EYES ONLY

DEPOSITION OF:

Dr. Thomas Florence

Tuesday, October 30, 2007

Washington, D.C.

Lead:  Nathan Finch, Esquire

Firm:  Caplin & Drysdale Chartered

FINAL COPY

JANE ROSE REPORTING 1-800-825-3341

US District Court - Delaware          FINAL - ATTORNEYS' EYES ONLY
Chapter 11 - W.R. Grace               Thomas Florence - October 30, 2007

Page 30

1      are provided to us by the client.

2          **Q     And in those cases you are not**

3      **providing your expert opinion as to what**

4      **the liability they face in the tort system**

5      **would be.  But you are applying your**

6      **opinion as to what their liability would be**

7      **using the assumptions they gave you,**

8      **correct?**

9          MR. LEIBENSTEIN:  Objection.

10     It mischaracterizes the testimony.

11         A     We are normally giving an

12     opinion of what the liability would be,

13     either the liability -- of what are the

14     dollar terms or claim terms under the

15     assumptions that were provided to us.

16         **Q     Have you ever testified --**

17     **strike that.**

18         **Why do you look -- why do you**

19     **rely on the company's historical experience**

20     **in the tort system for making an estimate**

21     **of what its liability would be in the tort**

22     **system?**

HIGHLY CONFIDENTIAL          JANE ROSE REPORTING
                                      1-800-825-3341  janerosereporting.com

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - ATTORNEYS' EYES ONLY
Thomas Florence -  October 30, 2007

Page 60

1     **Q     Did you agree or disagree with**
2     **any of the critique that Professor Stallard**
3     **made of your work?**
4          MR. LEIBENSTEIN:  The answer to
5       that has to be yes.
6     **Q     Did you disagree with any of**
7     **the critiques that Professor Stallard made**
8     **of your work?**
9      A     Generally, I disagreed with the
10    critique.
11    **Q     All right.  We will take and**
12    **review that in more detail in a minute.**
13         **Is it correct that, in your**
14    **analysis for this case, for the purposes of**
15    **the pending unresolved claims, you assumed**
16    **that, unless there was evidence submitted**
17    **by the claimant in response to the**
18    **questionnaire process that demonstrated**
19    **that the claim met Grace's criteria, that**
20    **the claim would be invalid?**
21     A     No.
22    **Q     What assumption did you make in**

HIGHLY CONFIDENTIAL

JANE ROSE REPORTING
1-800-825-3341  janerosereporting.com

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - ATTORNEYS' EYES ONLY
Thomas Florence -  October 30, 2007

Page 61

1    **that regard?**

2        A    Well, generally, we calculated

3    these criteria two ways.  One was the

4    estimate of the number of pending claims

5    that met the criteria as a function of the

6    number that filed the POC.

7           And then we estimated the

8    number of claims that met the criteria of

9    the ones that provided sufficient

10   information to judge the criteria.  And we

11   then applied that rate to the claims that

12   filed the POC.

13          So we assumed that, where there

14   was sufficient information to make a

15   judgment, that the rate at which people met

16   these criteria would apply to all people

17   that filed the POC.

18       Q    So turning to page eight in

19   your September report, the universe of

20   claims, pending claims that you are using

21   for your estimates, is 73,348 pending

22   claims; is that right?

HIGHLY CONFIDENTIAL

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - ATTORNEYS' EYES ONLY
Thomas Florence - October 30, 2007

Page 115

1    met the criteria.

2          And I think what table 4-12

3    does is kind of shows that, illustrates the

4    average, and those with insufficient

5    information, those did not meet, and those

6    that met.

7        **Q    Okay.  But the values you use**

8    **in your forecast are based on the six that**

9    **met the criteria, correct?**

10       A    Right, with the understanding

11   that the criteria didn't seem to be what

12   was driving the value.  We saw no

13   significant difference between these --

14   statistically significant difference, other

15   than there was an upward trend.

16       **Q    But it wasn't a statistically**

17   **significant trend, correct?**

18       A    Correct.

19       **Q    All right.  You reviewed -- or**

20   **who did the closed claim review?**

21       A    I'm sorry.  What?

22       **Q    Who had reviewed the sample --**

US District Court - Delaware          FINAL - ATTORNEYS' EYES ONLY
Chapter 11 - W.R. Grace               Thomas Florence -  October 30, 2007

Page 159

1       discovery of information to which it would

2       otherwise have had access."

3            Do you see that, Dr. Florence?

4            MR. LEIBENSTEIN:  I want to

5       object to the extent you read it

6       wrong.

7            MR. FINCH:  It is what it is.

8       Q     Does that in any way influence

9       your view as to whether or not the

10      information submitted pursuant to the

11      questionnaires is reliable for purposes of

12      estimates of whether or not claimants could

13      meet Grace's assumed exposure and medical

14      criteria?

15      A     No.

16      Q     Why not?

17      A     Well, presumably, there is, for

18      example, when you look at the medical

19      information, the medical information is

20      likely to -- at least from what we have

21      seen, there is a substantial lag between

22      the time a case is diagnosed and the tests

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - ATTORNEYS' EYES ONLY
Thomas Florence - October 30, 2007

Page 160

1    are done, until the time that the case is

2    filed.

3           So I would assume that there is

4    not much development of medical information

5    during that period, which doesn't say that

6    there wouldn't be, or couldn't possibly be.

7           But I can't imagine that you

8    have substantial changes in the medical

9    information.

10      **Q    Well, let's stop right there.**

11          MR. LEIBENSTEIN:  Let him

12      finish his answer.

13          MR. FINCH:  Okay.

14      A    In terms of exposure

15      information, as I understand it, the

16      issues, the questions -- the questions on

17      the questionnaire and the PIQ basically ask

18      for occupation and industry, and time

19      period of when exposed.

20          And it seems to me that is kind

21      of a work history.  So I'm not sure.  I

22      guess it's possible that a work history

HIGHLY CONFIDENTIAL

US District Court - Delaware          FINAL - ATTORNEYS' EYES ONLY
Chapter 11 - W.R. Grace              Thomas Florence -  October 30, 2007

Page 161

1       wasn't taken of a person initially; but

2       given that if it's available, if there is a

3       work history available, it seems like that

4       is -- the work history is a work history.

5       So --

6          Q    Do you have any --

7             MR. LEIBENSTEIN:  Wait.

8          A    I am having trouble

9       understanding the impact of this on the

10      information.

11         Q    Okay.  Do you have any

12      understanding as to whether the work

13      history provided by the claimant is all of

14      the information that is available as to

15      whether or not he was exposed to Grace's

16      asbestos-containing products at a

17      particular place or a particular time, or

18      are there sources of information beyond the

19      claimant's work history that are relevant

20      to that topic?

21            MR. LEIBENSTEIN:  Objection.

22         You were asking before about with

HIGHLY CONFIDENTIAL                    JANE ROSE REPORTING
                                  1-800-825-3341  janerosereporting.com

US District Court - Delaware          FINAL - ATTORNEYS' EYES ONLY
Chapter 11 - W.R. Grace                Thomas Florence - October 30, 2007

Page 194

1          switched to Dr. Nicholson with claims.

2          **Q     Do you recall that**

3     **Dr. Nicholson used his methodology to**

4     **project claims in the Fiber Board class**

5     **action proceeding, Dr. Florence?**

6          A     I wasn't involved in the Fiber

7     Board class action proceeding.

8          **Q     The Nicholson approach for**

9     **projecting claims, could you describe that?**

10         A     Sure.  The Nicholson approach

11    looks at the -- based on employment records

12    and records about average exposures in

13    certain industries, estimates the size of

14    the exposed population to asbestos at

15    various dose levels, and over time, and

16    from that estimates the incidence of

17    mesothelioma that will arise as a result of

18    that exposure, using an epidemiological

19    method, such as the OSHA model.

20         **Q     After enough time has elapsed,**

21    **you can compare -- the reason it's called a**

22    **Nicholson model is it began with the 1982**

HIGHLY CONFIDENTIAL                    JANE ROSE REPORTING
                                   1-800-825-3341  janerosereporting.com

US District Court - Delaware        FINAL - ATTORNEYS' EYES ONLY
Chapter 11 - W.R. Grace              Thomas Florence - October 30, 2007

Page 195

1      paper by Nicholson, Perkel and Selikoff

2      which projected the future incidence of

3      mesothelioma in the United States of

4      America, correct?

5          A    That's correct.  I think it was

6      first published --

7          Q    First published in 1982 based

8      on projected mesothelioma incidence going

9      1980 into the future, correct?

10         A    Correct.

11         Q    And then after a sufficient

12     period of time is elapsed, you can compare

13     the actual data in terms of SEER estimates

14     of mesothelioma incidence in the

15     United States to the projections performed

16     by Nicholson and the other people at Mount

17     Sinai, correct?

18         MR. LEIBENSTEIN:  Objection.

19     Vague.

20         A    The question again?

21         (Reporter read back pending

22     question.)

HIGHLY CONFIDENTIAL              JANE ROSE REPORTING
                          1-800-825-3341  janerosereporting.com

US District Court - Delaware          FINAL - ATTORNEYS' EYES ONLY
Chapter 11 - W.R. Grace              Thomas Florence - October 30, 2007

Page 196

1          A    You can.  You can compare

2    incidence in the United States with his

3    forecasts.

4          Q    And the KPMG variant is

5    updating the Bureau of Labor statistics

6    information, using the same 1986 OSHA dose

7    response curves, to do an updated forecast

8    of mesothelioma incidence; is that correct?

9          A    That's correct.

10         Q    Okay.  And that was work

11    performed by your partner or your colleague

12    or whatever he is, Tom Vasquez, in 1991?

13         A    That's correct.

14         Q    You rely on that 1991

15    variability of the Nicholson projected

16    incidence of mesothelioma for the purposes

17    of projecting asbestos claims against

18    asbestos defendants and trusts?

19         MR. LEIBENSTEIN:  Objection.

20    Mischaracterizes the record.

21         A    We used the output of that

22    model as an indicant of the incidence of

HIGHLY CONFIDENTIAL              JANE ROSE REPORTING
                              1-800-825-3341  janerosereporting.com

US District Court - Delaware          FINAL - ATTORNEYS' EYES ONLY
Chapter 11 - W.R. Grace               Thomas Florence -  October 30, 2007

Page 212

1          to object to the prefatory comments.

2              **Q    You can answer the question.**

3              MR. LEIBENSTEIN:  Although I

4      have no reason to dispute how you

5      always thought about it.

6          A    In general, the Pito model

7      looks at the claims of interest for a

8      defendant; and, in our case, in the Grace

9      case, it was the claims that met the

10     criteria.

11             And it says how big does the

12     population have to be of exposed parties to

13     generate this group of claims.

14             **Q    Okay.**

15         A    Using -- under the assumption

16     that the OSHA models are correct.

17             **Q    Okay.  So what you do is you**

18     **take the claims that arise from**

19     **mesothelioma and lung cancer in the**

20     **calibration period and run them through the**

21     **dose response models to estimate the size**

22     **of the exposed population which could lead**

HIGHLY CONFIDENTIAL                JANE ROSE REPORTING
                              1-800-825-3341  janerosereporting.com

Page 213

1    **to that number of claims in the calibration**

2    **period; is that correct?**

3         MR. LEIBENSTEIN:  As a general

4      matter.

5         A    Correct, as -- generally,

6      that's right.

7         **Q    Okay.  And then you take the**

8    **assumed exposed population and age it**

9    **forward year by year, correct?**

10        A    You take that assumed

11     population, and estimate by, again, the

12     OSHA models the number of cases that would

13     result out of that population of

14     mesothelioma and lung cancer, and the

15     number of people that would die of other

16     cases, and for each year.  So that

17     population diminishes as it goes forward.

18        **Q    So there is an assumed exposed**

19    **population, and then you roll that**

20    **population forward using the OSHA -- 1986**

21    **OSHA dose response equations to predict how**

22    **many of that population will die of**

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - ATTORNEYS' EYES ONLY
Thomas Florence -  October 30, 2007

Page 230

1    **how would you have estimated Grace's**

2    **liability?**

3         MR. LEIBENSTEIN:  Objection.

4      Incomplete hypothetical.

5         **Q    You may answer.**

6         A    Well, it's probably a function

7    of what the situation was, I guess.  Maybe

8    if you can be more specific.

9         **Q    Well, in 2003, if Grace had**

10    **come to you and said, "Dr. Florence, please**

11    **estimate the amount of our asbestos**

12    **liability," how would you have done it?**

13         MR. LEIBENSTEIN:  Objection.

14      It doesn't answer the witness's

15      question.

16         A    I would have asked them under

17    what assumptions.  That's a question that I

18    routinely would ask the client.

19         **Q    If the answer for Grace at that**

20    **time was, "Under the assumption that the**

21    **bankruptcy court will want to know what our**

22    **asbestos liability would be if we had**

Page 264

1    bankruptcy.  And since I'm not sure what

2    "disallowance" in bankruptcy is, my

3    estimate -- I don't -- it doesn't allow for

4    disallowance claims in bankruptcy.  Or it

5    if it does, I don't know it.

6        **Q    That's fair enough.  You have,**

7    **however, excluded certain claims from the**

8    **base from which you provide your forecast.**

9    **We talked about that this morning, namely**

10    **claims that don't meet the criteria.**

11        A    Right.

12        **Q    Okay.  Does the -- I will use**

13    **the word "exclusion" --**

14        A    Not completely claims that

15    don't meet the criteria.  I mean, some

16    claims, we assume, will meet the criteria.

17    I mean, there are -- the two, what we

18    talked about this morning, these kind of

19    two estimates, so there is kind of this --

20    there is the one estimate, the high end

21    estimate, which says that we are making an

22    assumption that they will meet the

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - ATTORNEYS' EYES ONLY
Thomas Florence - October 30, 2007

Page 265

1    criteria, even though there is no

2    information that has been provided that

3    would allow us to make that assessment.

4        Q    Now, the exposure criteria that

5    you used or were asked to use, would you

6    agree that those criteria reject claimants

7    who responded that they personally removed

8    or cut asbestos-containing -- Grace

9    asbestos-containing products?

10        MR. LEIBENSTEIN:  Objection.

11    Mischaracterizes the report.

12        Q    I will show you an exhibit that

13    will put this in context.  Exhibit 14,

14    Dr. Florence, if you could turn to page 11

15    of Exhibit 14.

16        A    What is the Bates number on

17    that?

18        Q    It would be 2-200018, part

19    five, exposure to non-Grace -- no,

20    actually, let me go back one page, page

21    nine, Bates dash 16, part three, "direct

22    exposure to Grace asbestos-containing

HIGHLY CONFIDENTIAL

US District Court - Delaware          FINAL - ATTORNEYS' EYES ONLY
Chapter 11 - W.R. Grace              Thomas Florence -  October 30, 2007

Page 291

1          Q     Correct.  Now, you agree that

2     the proof of claim hurdle does not exist

3     for the resolution of open cases in the

4     tort system with solvent defendants?

5              MR. PASQUALE:  Objection to the

6        form.

7          A     Not completely.  I don't agree

8     with that.

9          Q     Is proof of claim screen --

10             MR. LEIBENSTEIN:  Wait.

11         Q     I am sorry.  I thought he was

12    done.

13         A     The importance of the proof of

14    claim criteria is, as I understand, the

15    court basically said:  "You file the proof

16    of claim or you don't get paid."

17             There is a certain portion of

18    claims, at least in my experience, that are

19    filed, with all defendants, that are either

20    withdrawn or not prosecuted.

21             So the importance of the proof

22    of claim criteria is, at least from where I

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - ATTORNEYS' EYES ONLY
Thomas Florence - October 30, 2007

Page 292

1    stand, is we were trying to start with a

2    base of claims that are claims that would

3    be filed, not withdrawn and prosecuted, in

4    other words, claims that would come

5    forward, meet these criteria, and one of

6    the criteria being it was a claim that

7    would be pursued, so in that sense.

8        Q    I think you may have been asked

9    this this morning.  If you were, I

10   apologize for repeating the question:

11        Does a proof of claim

12   requirement exist for future claimants?

13        MR. LEIBENSTEIN:  Objection.

14    Asked and answered.

15        A    Not strictly a proof of claim

16   requirement.  A proof of claim requirement

17   in the sense that I'm speaking of it, that

18   it's -- it's based on -- since the future

19   is based on these pending claims and per

20   the current claims, I am only forecasting

21   those claims that would be not withdrawn,

22   and pursued, prosecuted.

HIGHLY CONFIDENTIAL

US District Court - Delaware          FINAL - ATTORNEYS' EYES ONLY
Chapter 11 - W.R. Grace               Thomas Florence - October 30, 2007

Page 297

1     know?

2        A    As far as I know, it's not in

3     the report, no.

4        Q    Are you aware of any asbestos

5     personal injury claim that W.R. Grace

6     settled prepetition under the specified

7     assumptions or specified criteria, or, in

8     other words, using the specified criteria

9     as a prerequisite to payment settlement?

10       A    I really haven't done that

11    analysis.

12       Q    But you have looked -- in

13    computing the average settlement amounts,

14    you have looked at six mesothelioma claims

15    that met the criteria, correct?

16       A    Correct.

17       Q    And you have used those six

18    claims to make further forecasts, correct?

19       A    You are talking about table

20    4-12?

21       Q    Yes.

22       A    We certainly used those six to

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - ATTORNEYS' EYES ONLY
Thomas Florence - October 30, 2007

Page 298

1    estimate what the value was of the people

2    that met the criteria.

3        And, you know, when we were

4    faced with trying to value these claims and

5    trying to determine what a reasonable value

6    of the claims were, we were faced with

7    which of these values in this table are

8    representative or reasonably representative

9    of what the claim would be paid, either --

10   both today and then inflated in the future.

11       And I think we said -- here, we

12   actually tested to see if there was any

13   statistical significance in the difference

14   between these values.

15       And one approach would have

16   been to assign the overall average of the

17   $96,000, which probably, given there was no

18   statistically -- is no statistically

19   significant difference between these, would

20   have been a reasonable approach.

21       We took the "med" criteria

22   dollar amount only because we had some data

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - ATTORNEYS' EYES ONLY
Thomas Florence - October 30, 2007

Page 299

1    on how many claims met that criteria. And

2    there seemed to be some monotonic

3    relationship between the criteria and how

4    closely you can -- came to meeting the

5    criteria and value.

6           But there was -- there was --

7    there was little to suggest historically

8    that these criteria made much difference in

9    the value in the claim.

10          I mean, again, we are looking

11   at this. It seems to -- there is a kind of

12   a natural progression depending upon

13   whether you have not enough information or

14   you didn't -- did not meet the criteria,

15   whether you met the criteria.

16          But, you know, statistically,

17   there is really no difference in these.

18          So Mr. Finch was asking me

19   questions about this, and, yes, there are

20   six claims that met the criteria. But it

21   would have been just as reasonable to take

22   the overall average, as the 155,000. I

US District Court - Delaware          FINAL - ATTORNEYS' EYES ONLY
Chapter 11 - W.R. Grace                Thomas Florence -  October 30, 2007

Page 300

1       don't think there was anything -- anything

2       magic about the 155,000 that was selected,

3       at least from our analysis of the historic

4       claims.

5           Q     Do you have an opinion

6       whether -- if the six mesothelioma claims

7       in your forecast were settled under the

8       specified assumption as criteria for

9       settlement, whether the settlement amounts

10      would have been different?

11          A     I have no way of knowing.  I

12      would say I think, probably.  Maybe the way

13      to answer that is it didn't seem to make

14      any difference whether -- statistically,

15      whether the criteria were met or not met

16      with regard to settlement value.

17            So it probably wouldn't have

18      made a difference.  I mean, it probably

19      wouldn't have made a difference.

20          Q     And you have assumed, for

21      purposes of valuing future claims, that

22      there would be no difference in the average

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - ATTORNEYS' EYES ONLY
Thomas Florence -  October 30, 2007

Page 301

1     **settlement value, correct?**

2          MR. LEIBENSTEIN:  Objection.  I

3     don't know what the "no difference"

4     refers to.

5          **Q    There would be no difference --**

6     **you have assumed for purposes of valuing**

7     **future claims that the average settlement**

8     **value for the six mesothelioma claims in**

9     **your sample would have been no different**

10    **had Grace settled those cases using the**

11    **specified assumptions as prerequisite**

12    **criteria?**

13         A    And what I am really saying is

14    that, had Grace settled those cases with

15    the requisite criteria, there is probably

16    no reason to assume that the average of

17    those cases, whether they be 6 or 100,

18    would differ from the overall average of

19    $96,000.

20         **Q    There is no reason to assume**

21    **that a claimant who could demonstrate that**

22    **he personally mixed or personally installed**