# EXHIBIT 34

```
 1
 2         IN THE UNITED STATES DISTRICT COURT
 3            FOR THE DISTRICT OF DELAWARE
 4    ------------------------------x
 5    In re:
 6    W.R. GRACE & CO., et al.,      Chapter 11
 7             Debtors.       through 01-1200
 8    ------------------------------x
 9    OFFICIAL COMMITTEE OFASBESTOS PERSONAL INJURY
10    CLAIMANTS, et al.,
11             Plaintiffs,
12         against         Adv. No. 02-2210
13    SEALED AIR CORPORATIONand CRYOVAC, INC.,
14             Defendants.
15    ------------------------------x
16    OFFICIAL COMMITTEE OF
17    ASBESTOS PERSONAL INJURYCLAIMANTS, et al.,
18             Plaintiffs,
19         against         Adv. No. 02-2211
20    FRESENIUS MEDICAL CARE,
21    HOLDINGS, INC., et al.,
22             Defendants.
23    ------------------------------x    MARK A. PETERSON
24             September 9, 2002
25    Reported by: Steven Neil Cohen, RPRJob No. 139256
```

```
 1
 2                        APPEARANCES
 3    KIRKLAND & ELLIS
 4    200 East Randolph DriveChicago, Illinois 60601
 5       Attorneys for W.R. GraceBY:  DAVID M. BERNICK, ESQ.
Case No.s601-1139
 7    CAPLIN & DRYSDALE, CHARTEREDOne Thomas Circle, NW
 8    Suite 1100Washington, D.C. 20005
 9       Attorneys for PlaintiffsBY: TREVOR W. SWETT, ESQ.
10
11    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLPFour Times Square
12    New York, New York 10036-6522   Attorneys for Sealed Air Corporation and
13       Cryovac, Inc.BY: BERT L. WOLFF, ESQ.
14
15    ALSO PRESENT: Charles E. Bates
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2
 3              September 9, 2002
 4              8:31 a.m.
 5
 6         Deposition of MARK A. PETERSON, taken
 7    by Debtors, pursuant to notice at the offices
 8    of Skadden, Arps, Slate, Meagher & Flom, LLP,
 9    Four Times Square, New York, New York, before
10    Steven Neil Cohen, a Registered Professional
11    Reporter and Notary Public of the State of New
12    York.
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2
 3         IT IS HEREBY STIPULATED AND AGREED, by and
 4    between counsel for the respective parties
 5    hereto, that the sealing and filing of the
 6    within deposition be waived; that such
 7    deposition may be signed and sworn to before
 8    any officer authorized to administer an oath;
 9    that all objections, except as to form are
10    reserved to the time of trial.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 169**

2  during that period of time isn't it true that
3  the trend for mesothelioma is absolutely flat?
4     A.   The period of when to when?
5     Q.   1995 to 1999.
6     A.   That is not a meaningful selection of
7  years.
8     Q.   For a five-year period of time
9  mesothelioma claims are flat?
10    A.   The number of mesothelioma claims
11 using the observed transition matrix for those
12 five years -- let me look at it.
13         The numbers are all in the 600s.
14 That is not a meaningful set of years because
15 of the acceleration that occurred in 1995 and
16 because of the moratorium that was applicable
17 to the Grace claims in 1997 and 1998 and 1999.
18         You have to use your judgment in
19 picking these. I knew facts about -- I had
20 facts about W.R. Grace's litigation experience
21 that told me that their experience of claims
22 receipt were being suppressed substantially in
23 the late 1990s because of agreements they
24 reached with law firms to not file claims.
25         When you have something like that you

**Page 170**

2  must take that into account. That is part of
3  the judgment that you asked me about that you
4  must exercise.
5     MR. WOLFF:  Move to strike as
6  unresponsive.
7  BY MR. BERNICK:
8     Q.   You are looking for a trend, right?
9  That is what you are looking for?
10    A.   I am looking to see if a trend had
11 occurred in the past for this defendant given
12 what I know about factors that affect the
13 claims that have happened year by year.
14    Q.   Let's take a look at this more
15 specifically. Your base period already picks
16 up the spike and the effect of the
17 acceleration. It also picks up part of the
18 moratorium period of time, right? Your base
19 period picks that up?
20    A.   It doesn't pick up a spike in the
21 acceleration because it has both sides of it.
22 It washes the acceleration out.
23    Q.   Whatever the affects are the base
24 period includes the Georgine spike and the base
25 period includes a significant portion of the

**Page 171**

2  moratorium years, right?
3     A.   Yes. The base period has moratorium
4  years. Even within the base period I was using
5  claims which were being suppressed by the
6  moratorium, yes.
7     Q.   They were also being increased by the
8  acceleration from Georgine which you also have
9  said had the effect of increasing beyond
10 acceleration for subsequent years, correct?
11    A.   That is a compound question. Let me
12 answer each part.
13         The first part is no -- yes, it had
14 the acceleration in 1995 but it also had the
15 reduced claiming in 1996 and 1997 because of
16 the 1995 acceleration so that washed out, those
17 balanced out. That is why you want to use
18 those years.
19         The overall increase in the claiming
20 rate in 1995 is one of the reasons that the
21 claims would continue to be higher. That is a
22 permanent effect, not a temporary effect.
23    Q.   All of that is picked up by your base
24 period, right?
25    A.   The base period selects what is the

**Page 172**

2  level of claiming at the time just prior to
3  when I am forecasting future claims.
4     Q.   It includes the effect of the spike,
5  whatever it was, it includes the effect of the
6  permanent increase in claims, whatever it was,
7  and it includes some of the effects of the
8  moratorium, it includes all of those things?
9         MR. SWETT:  Objection to form.
10        THE WITNESS:  Yes, all those plus it
11 includes the years when claims were borrowed
12 from to create the 1995 acceleration.
13 BY MR. BERNICK:
14    Q.   What you are trying to ascertain is
15 whether the future trend is going to be higher
16 than all of those factors that existed from
17 1995 through 1998 or the same or lower, right,
18 that is what you are trying to figure out?
19    A.   Yes.
20    Q.   Isn't it true that when it comes to
21 determining whether there is a trend one of the
22 things that you could do is to see is there a
23 trend, even within your base period, within
24 this period of time are claims going up, are
25 they coming down, are they remaining the same?