# EXHIBIT 39

```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE


IN RE:                              .   Chapter 11
                                    .
W.R. GRACE & CO., et al.,           .   Case No. 01-01139(JKF)
                                    .   Jointly Administered
          Debtors.                  .
                                    .   June 27, 2005 (12:12 p.m.)
                                    .   Wilmington


                      TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JUDITH K. FITZGERALD
                 UNITED STATES BANKRUPTCY COURT JUDGE
```

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1   business. I mean, obviously, they have their plan on file.
2   They can continue to push for their plan. As Mr. Frankel
3   pointed out, when we reach the end of the day, their plan --
4   Well, maybe people can dispute whether or not their asbestos
5   liabilities will exceed 1.7 billion, but assuming it
6   surpasses that, which we certainly believe it will easily,
7   their plan goes nowhere. If we can file another plan or we
8   can reach some other agreement to litigate this case so that
9   it's not six years old when we're finally getting estimations
10  --
11           THE COURT: I've heard the argument. I want an
12  answer from somebody to the issue, the financial issue.
13  That's what I'm concerned about at the moment. What will the
14  consequence, if there is a termination of exclusivity, be on
15  the debtors' business side of things and the financial
16  issues, not on the rest of this. That's what I'm concerned
17  with.
18           MR. BERNICK: I don't know that anyone really here
19  in court today really is sufficiently informed to address
20  that. I know that I'm not on behalf of the debtor, and know
21  that the debtor does not have representatives here that are
22  capable of doing that. We would be happy to inform the
23  Court, make a submission to the Court with respect to that
24  particular issue, but I would like, Your Honor, just briefly
25  to address some of the points and then maybe make a proposal


1  about going forward in light of Your Honor's question, if I
2  could, and I'm not going to respond to all the different
3  points that have been made. The fact of the matter is that
4  there's a lot of discussion about the playing field and
5  whether it's level or not. The principal obstacles to
6  settlement are not a question of determination or resolve.
7  They're not a question of management approach. They're not
8  even necessarily a question of the approach of these
9  committees. The principal obstacles to settlement, I
10 participated in some of the discussions and in a lot of the
11 internal discussions about where it's going, and I've also
12 resolved other cases. The obstacles are facts. They're
13 basic facts. People have a very different sense of what it
14 is that they're entitled to. Your Honor gets a flavor with
15 respect to the traditional property claims on how different
16 the perspectives are of the debtor versus Mr. Speights. Your
17 Honor has a perspective from the ZAI claims and how different
18 the perspectives are of the litigants with respect to those
19 claims. When it comes to personal injury, in a sense that's
20 the most difficult problem because it's the most complex one,
21 and there are also more procedural areas to resolving those
22 claims because they're personal injury claims. But let me
23 point out a couple basic public facts that ought to give Your
24 Honor a flavor. Right now, Grace's stock is trading at
25 values that are higher than they've been before. Grace's

1  Your Honor be driven by those as factors rather than
2  artificially setting a date at this time because otherwise
3  people will gain the date. It happens every time.
4      THE COURT: I've ordered you to get together next
5  week. I want you to see whether or not next week you can
6  come up with an agreed upon schedule for the property damage
7  on the one side and for the personal injury on the other.
8  That includes a claim form which can be produced. I will
9  approve a claim form of some sort. I'm not saying what sort,
10 but I will, folks, approve a claim form because it may be
11 useful to all parties in the estimation, and I will consider
12 it appropriate discovery. Rather than taking depositions of
13 400,000 personal injury plaintiffs, we're going to do it
14 through claim forms. So, it will be approved. Now, you
15 folks can get together and see if you can agree on the
16 information. I don't expect a 20-page claim form, Mr.
17 Bernick. That will be outrageous. It will not be necessary.
18 But some basic information, yes. I think the debtor and all
19 the other parties will benefit from it. So your task, next
20 week, all of you, I'm not speaking just to Mr. Bernick,
21 everyone is to get together in a face-to-face meeting for
22 however long it takes. Take your toothbrushes to see whether
23 or not you can get case management orders that are agreed on
24 for both the property side and the personal injury side.
25 There is no need to piggyback those two orders. They can be

1       THE COURT: I said nothing about a bar date. I
2  said a claim form. And the reason for the form is that the
3  debtor's view as to how an estimation hearing is going to
4  take place and the rest of the world's view is very
5  different. I want to see what comes out of the claim forms.
6  The debtor has the right to discovery to know what the
7  current claims are, and that will be a much better basis for
8  estimation of current claims and possibly future claims then
9  anything else. So, let's get it done. Let's find out what
10 the claims are, what people say they have by way of claims.
11 That number may turn out to be some astronomical number which
12 is meaningless, but it may also, if counsel does their job
13 right, be a legitimate basis for figuring out what the claims
14 are.
15      MR. HURFORD: Your Honor, that was the same track
16 that was taken in USG and Judge Wolin decided was not
17 fruitful.
18      THE COURT: I don't care what the other judges have
19 decided. This is this case, this is how we're going to do
20 it. So, go work on a claim form that you can live with,
21 folks, you're going to get one. If you can't work on one
22 that you can live, I'm going to do it, and you know a whole
23 lot more about it than I do.
24      MR. HURFORD: I understand, Your Honor, but this
25 exact issue is pending briefing. The debtors' motion for