# EXHIBIT 40

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          . Case No.  01-1139 (JFK)
                                .
                                .
  W.R. GRACE & CO.,             . Courtroom A, 54th Floor
                                . U.S. Steel Tower
                                . Pittsburgh, PA
                     Debtor.    .
                                . July 19, 2005
. . . . . . . . . . . . . . . . . 8:42 a.m.

TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:            Pachulski, Stang, Ziehl, Jones &
                            Weintraub, P.C.
                            By:  DAVID CARICKHOFF, ESQ.
                            919 North Market Street, 16th Fl.
                            Wilmington, Delaware  19899

                            Kirkland & Ellis LLP
                            By:  DAVID BERNICK, ESQ.
                                 MICHELLE H. BROWDY, ESQ.
                                 JANET BAER, ESQ.
                                 BARBARA HARDING, ESQ.
                            200 East Randolph Drive
                            Chicago, Illinois  60601

Audio Operator:             Cathy Younker

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

174

1  information that they're asking for in the questionnaire would

2  be relevant.  But if what they're litigating is what they're

3  aggregate present and future liability and the future liability

4  is likely to consist of, you know --

5           THE COURT:  But at this --

6           MR. LOCKWOOD:  -- 75 or 80 percent of the total,

7  getting detailed specific plaintiff-only information from the

8  plaintiffs --

9           THE COURT:  But it may be relevant.  It may, and I'm

10  -- I'll give you one scenario at the moment.  Let's say that in

11  a particular -- at a particular job site -- that is a large job

12  site, just for hypothesis purposes.  Obviously, this has

13  nothing to do with any specific case.  Let's assume that there

14  are 5,000 workers from a particular job site who file claims

15  against Grace, and somehow all 5,000 of those people know that

16  they were exposed at a particular time in a particular place to

17  a Manville product, but none of them know that they were

18  exposed at a particular time or a particular time or a

19  particular place to a Grace product, I mean I think you can

20  extrapolate from that that there will be a percentage of people

21  in the future who will file claims that will not identify a

22  Grace product but will identify somebody else's product, and

23  that may be relevant evidence as to whether those future claims

24  will, in fact, be allowed by a trust, which then tells you that

25  there are numbers of claims that will come in that will be

**J&J COURT TRANSCRIBERS, INC.**

 1 | disallowed -- again, in my, you know, perfect analysis, and,
 2 | therefore, the Trust funding doesn't have to include those
 3 | claims.  That's the whole purpose.  It's just to get to a
 4 | bottom line.

 5 | MR. BERNICK:  If I can raise just a point of process,
 6 | we're now past the amount of time that I took, and I know that
 7 | Mr. Lockwood was very cautious and said that he wouldn't take
 8 | anymore time.  He couldn't say that he wouldn't take more time
 9 | than I do.  I know that Mr. Frankel is also anxious to address
10 | the Court.  I know that folks are interested in talking about
11 | exclusivity, and if we run into your 4:00 call --

12 | THE COURT:  It's five I believe.

13 | MR. BERNICK:  Okay.  In any event, I really think
14 | that it would be good to know what it is that Your Honor really
15 | intends to cover today and maybe hear from other people,
16 | because all this is is just a rehash of what's in the briefs.

17 | THE COURT:  Yes.  Look, my --

18 | MR. LOCKWOOD:  Your Honor, I --

19 | THE COURT:  My bottom line position is I think a
20 | questionnaire, to the extent that the debtor or the other
21 | parties want to do discovery is fine.  I've said that before.
22 | You could do it by interrogatories.  You can do it by
23 | questionnaires.  There is really not much difference.  Exactly
24 | what use this information will be to extrapolating the evidence
25 | to predict the numbers of future claims and at what disease

**J&J COURT TRANSCRIBERS, INC.**

1   remember, the interrogatory imposes and obligation on the
2   lawyer to make reasonable inquiry.  That's what the rules say,
3   so you can't --

4              THE COURT:  But you're not --

5              MR. BERNICK:  You can't --

6              THE COURT:  But this isn't litigation of the
7   individual claim.  It is not a total parallel.

8              MR. BERNICK:  Well, but here's where I'm going, Your
9   Honor.  Is that when it comes to burden, we are not talking
10  about burden on an individual claimant.  We're talking about
11  burden on the lawyers who represent them and have the
12  obligation to satisfy any and all discovery requests.

13             THE COURT:  Well, Mr. Bernick, if the lawyer already
14  has that information in file, then I agree with you.  If the
15  lawyer doesn't have it, then the lawyer's going to have to get
16  in touch with the claimant.

17             MR. BERNICK:  Yes.

18             THE COURT:  And it will be a burden on the asbestos
19  plaintiff, but so would filing a proof of claim and attaching
20  any documentation that would be necessary --

21             MR. BERNICK:  All that I want to avoid, Your Honor,
22  is somehow that this is really an extraordinary imposition on
23  the claimant.  It's not.  It's an imposition on the law firm.
24  And number two, the law firms are not going to sit there and
25  hide behind the claimant say, well, gee, my claimant doesn't

1 evaluate what the readings are and whether they're supporting

2 for purposes of figuring out how many claims in the future are

3 going to have those readings.  So that's allowed.

4      MR. FINCH:  Your Honor, should the debtor be ordered

5 to pay the cost of getting that?

6      THE COURT:  No, I don't think so.  It seems to me if

7 the claimant is filing a claim against Grace in a State Court

8 suit, which is what most of these things are, based on a

9 pulmonary function test, they're going to have to produce it at

10 some point.  They can produce it now.  They won't have to

11 produce it again for the Trust.  They're going to have to

12 produce it then anyway, and it will be their responsibility to

13 produce it for the Trust not the Trust's.

14      MR. LOCKWOOD:  I mean supposing the plaintiffs'

15 position is that they don't have to have a pulmonary function

16 test in order --

17      THE COURT:  Then they won't have one.

18      MR. LOCKWOOD:  -- to prove the validity of their

19 claim?  Shouldn't they at least have the option not to pay a

20 clinic to --

21      THE COURT:  If they have had a pulmonary function

22 test, and their answer to the question is yes, I did, then I

23 want a copy of the document attached.  They're going to have to

24 attach it for the Trust.  It would be their expense anyway, and

25 I've already said we're going to not make them redo this for

J&J COURT TRANSCRIBERS, INC.

1        THE COURT:  No, I don't think people have to go out
2  to generate something that they don't already have.  But again,
3  as I said, if they attach it now, they don't have to attach it
4  later.  If it's something they're going to need to prove their
5  claim later, it would be better for them to do it now, so they
6  don't have to do it through this process later.

7        MR. LOCKWOOD:  That may be, Your Honor, but the word
8  must doesn't give them any discretion.

9        MR. BERNICK:  It's you or your counsel.  All we want
10  is what they would have to do in an ordinary case if they were
11  prosecuting a claim.  They would be obliged to get the medical
12  information.  I believe Your Honor had already ruled on this
13  about --

14        THE COURT:  Well, you've already said on the medical
15  information, but this is going beyond the medical.  It seems to
16  me, Mr. Bernick, that it would be fair to simply say that you
17  or your counsel have, take out the reasonably can obtain, and
18  make this a continuing duty.  If something else comes up, then
19  they have to produce it.

20        MR. BERNICK:  Every one of these people is going to
21  tell us, oh, we don't have it at our office.  It's at the
22  doctor's office, and we can't possibly get it.  That's exactly
23  what they're going to say.

24        THE COURT:  Well, it seems to me that if it's the
25  doctor's office, the doctor is the agent of the patient in this

**J&J COURT TRANSCRIBERS, INC.**

1 instance just like the attorney is.  That's clearly within the
2 patient's custody or control if not custody.
3          MR. BERNICK:  We'll make this easier.  We'll focus it
4 on the diagnosis and on exposure to Grace products.  This is
5 broader.  It's goes exposure to asbestos-containing products.
6          THE COURT:  All right.
7          MR. BERNICK:  And I think --
8          MR. LOCKWOOD:  Your Honor, this --
9          MR. BERNICK:  -- it's very reasonable.
10          MR. LOCKWOOD:  This or otherwise relate to, I mean
11 it's one thing to ask for the document that the plaintiff wants
12 to tender as supporting his claim --
13          MR. BERNICK:  The rest.
14          MR. LOCKWOOD:  -- the or otherwise relate to, I don't
15 even know what that means.  I mean that's incredibly broad.
16          MR. BERNICK:  That's what it means in any discovery
17 case.  This is -- the relate to operative term is standard in
18 any discovery process, so that we're not simply talking about
19 what the claimant would like to refer to, but we're talking
20 about the other things that relate to the --
21          MR. LOCKWOOD:  Again, we're talking about this is as
22 though it was an individual claims allowance.  I mean this is
23 an estimation.  It's supposed to be streamlined.
24          THE COURT:  It is.
25          MR. LOCKWOOD:  What's streamlined about asking for
          **J&J COURT TRANSCRIBERS, INC.**

Case 01-01139-AMC  Doc 17698-19  Filed 12/21/07  Page 9 of 11

232

1  anything that might relate?  I mean the word --

2         THE COURT:  Folks, I've made a ruling.

3         MR. LOCKWOOD:  -- relate is unbelievably.  Everything

4  relates to everything else, Your Honor.  I object.  When I get

5  those kind of discovery requests, I always object to the term

6  relate to.

7         THE COURT:  Well, then they can object to it if

8  that's what they want to do.

9         MR. LOCKWOOD:  I get sustained regularly, because

10 it's too broad and vague and undefined.

11        THE COURT:  But the standard is going to be whatever

12 they need to get through the Trust process that they can put in

13 this now they don't have to do again.  That should be a big

14 incentive, and on top of that they'll get their claim treated

15 first.  That should be a big incentive for them to go out and

16 get whatever documents that support this claim, so they don't

17 have to --

18        MR. LOCKWOOD:  I agree with that, Your Honor, but

19 again --

20        THE COURT:  -- do it again.

21        MR. LOCKWOOD:  -- this uses the word must.

22        THE COURT:  It says --

23        MR. LOCKWOOD:  It says the questionnaire must be

24 accompanied by it.  It doesn't say the questionnaire may be

25 accompanied by it.

**J&J COURT TRANSCRIBERS, INC.**

1 that support or contradict or negative, but otherwise relates

2 to -- I mean something relate --

3          MR. BERNICK:  I'll be happy to do support or

4 contradict.

5          THE COURT:  Fine.

6          MR. LOCKWOOD:  That's acceptable.

7          MR. BERNICK:  And conflict with.  Support or conflict

8 with.

9          THE COURT:  Fine.

10          MR. COHN:  Your Honor, once again, this is Dan Cohn

11 on the telephone.

12          THE COURT:  Yes.

13          MR. COHN:  I think that the addition of the word or

14 doctor does not reflect the reality of the type of relationship

15 that people have with doctors.  They're not like lawyers where

16 it is reasonable to expect that whatever the lawyer has in his

17 file is owned by the patient, and the patient has the ability

18 to produce.

19          THE COURT:  Mr. Cohn, I've never seen a doctor yet

20 who upon reasonable request and the copying fee doesn't produce

21 a copy of the medical documents.  So the plaintiff can get it,

22 period, end of story.  It's the plaintiff's information that's

23 significant.

24          MR. FINCH:  Your Honor, on the exposure documents,

25 any time I see a request it says any and all documents.  Some

 1 | position in which through some combination of the committee and
 2 | the plaintiffs they're going to wind up having to litigate
 3 | against his experts who are going to say there's no product
 4 | I.D. here, because the plaintiff didn't produce product I.D. --
 5 |           THE COURT:  The Committee has discovery rights.
 6 |           MR. LOCKWOOD:  -- and in a regular case the response
 7 | to that is that the plaintiff would not only be able to produce
 8 | their -- whatever evidence he already had, but he also would be
 9 | able to get evidence from the defendant.
10 |           THE COURT:  You have discovery rights.  If you want
11 | evidence from the defendants, take them.
12 |           MR. LOCKWOOD:  So that means -- and the question is
13 | how do we do that?  Does that mean that the Committee --
14 |           THE COURT:  Not through this questionnaire.  This is
15 | the debtor's.
16 |           MR. LOCKWOOD:  I understand, but I'm trying --
17 |           THE COURT:  Okay.
18 |           MR. LOCKWOOD:  Does the Committee have to act on
19 | behalf of the individual claimants who don't have product I.D.
20 | to seek discovery from the debtor that could substantiate the
21 | plaintiff's claims, or did the plaintiffs' lawyers individually
22 | have --
23 |           THE COURT:  Mr. Lockwood, you're positing things
24 | we've spent the whole day talking about.  You've already said
25 | you don't want to be the liaison for discovery matters.

**J&J COURT TRANSCRIBERS, INC.**