# EXHIBIT 49

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | **Chapter 11** |
| **USG CORPORATION,** | : | |
| a Delaware corporation, et al., | : | **Jointly Administered** |
| | : | **Case No. 01-2094 (JKF)** |
| Debtors. | : | |
| | : | |
| | : | |
| **USG CORPORATION, et al.,** | : | |
| | : | |
| Movant | : | |
| | : | |
| v. | : | |
| | : | **Civil Action No. 04-1559 (JFC)** |
| **OFFICIAL COMMITTEE OF** | : | **Civil Action No. 04-1560 (JFC)** |
| **ASBESTOS PERSONAL INJURY** | : | |
| **CLAIMANTS, et al.,** | : | |
| | : | |
| Respondents. | : | |

### ORDER RE: PERSONAL INJURY CLAIM ESTIMATION

| | |
|---|---|
| COOLEY GODWARD LLP | RICHARDS, LAYTON, & FINGER, P.A. |
| Stephen C. Neal (CA 170085) | Daniel J. DeFranceschi (DE No. 2732) |
| Scott D. Devereaux (CA 146050) | Paul N. Heath (DE No. 3704) |
| Five Palo Alto Square | One Rodney Square |
| 3000 El Camino Real | P.O. Box 551 |
| Palo Alto, CA 94306 | Wilmington, Delaware 19899 |
| Tel: (650) 843-5000 | Tel: (302) 651-7700 |

JONES DAY
David G. Heiman (OH 0038271)
Brad B. Erens (IL 6206864)
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Tel: (216) 586-3939

*Counsel for Debtors*

*Date filed:  10/21/05*
*Case #04-1559 Dkt #61*
*Case #04-1560 Dkt #67*

On June 13, September 20 and October 6, 2005, this Court held duly noticed hearings regarding discovery issues in this matter, including the Motion for Approval of the Debtors' Sampling Plan and Claimant Questionnaire and the discovery schedule for the estimation of Debtors' asbestos personal injury liabilities (the Estimation).[1]  Having fully considered the arguments set forth by any party, in filings or during the hearings, the Court hereby orders that:

1.      Debtors will serve the claimant questionnaire attached hereto as Exhibit A (the "Questionnaire") on a sample of 2000 personal injury claimants no later than October 20, 2005.

2.      Before serving the Questionnaire, the parties will execute the confidentiality agreement governing the sample claimant discovery attached hereto as Exhibit B.  This agreement governs the permissible use and disclosure of the sample claimants', and other persons', social security numbers, the information about the sample claimants that the parties will obtain from the United States Social Security Administration, and the sample claimants' medical information.

3.      The sampled claimants must complete and return their Questionnaires, including all requested documentation, to RUST Consulting, Inc. ("RUST"), the Debtors' claims processing agent.  Any Questionnaire post-marked for return mailing on or before January 9, 2006, will be deemed timely.

4.      RUST will scan and electronically distribute the Questionnaires, including any documents submitted with the Questionnaires, to counsel for the parties on or before

---

[1] The Debtors are the following 11 entities:  USG Corporation, United States Gypsum Company, USG Interiors, Inc., USG Interiors International, Inc., L&W Supply Corporation, Beadex Manufacturing LLC, B-R Pipeline Company, La Mirada Products Co., Inc., USG Industries, Inc., USG Pipeline Company and Stocking Specialists, Inc.

January 24, 2006.[2] Original radiographic evaluations, such as x-rays or CT scans, will be retained by RUST and made available for inspection by the parties or their experts on reasonable terms.

5.    Additionally, RUST will organize the information contained in the Questionnaires into a searchable database, and will provide that database to the parties on or before February 23, 2006.

6.    On or before November 7, 2005, the parties will disclose those individuals with percipient knowledge as to topics for which the parties intend to offer evidence in their case-in-chief. The parties will also indicate as part of their disclosure the five individuals most likely to serve as fact witnesses in the Estimation.

It is further ordered that fact discovery in this matter will close on June 30, 2006, subject to the Court granting an extension of that date based on the motion of any party. On July 7, 2006, the parties will exchange fully-updated lists of the experts they intend to call as witnesses in their case-in-chief during the Estimation. The Court will hold a hearing in Pittsburgh, Pennsylvania at 2:00 pm on July 18, 2006 to address the appropriate schedule for expert discovery.

IT IS SO ORDERED.


Date: October 17 , 2005

/s/ Joy Flowers Conti

Digitally signed by /s/ Joy Flowers Conti
DN: CN = /s/ Joy Flowers Conti, C = US
Date: 2005.10.21 14:35:08 -04'00'

The Honorable Joy Flowers Conti
District Court Judge, District of Delaware

---

[2] The parties' counsel to whom the Questionnaires and attached documents will be distributed are counsel for Debtors, the Official Committee of Asbestos Personal Injury Claimants, the Future Claimants' Representative, the Official Committee of Asbestos Property Damage Claimants, the Official Committee of Unsecured Creditors, and the Statutory Committee of Equity Security Holders.

**EXHIBIT A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | **Chapter 11** |
| **USG CORPORATION,** | : | |
| a Delaware corporation, et al., | : | **Jointly Administered** |
| | : | **Case No. 01-2094 (JKF)** |
| Debtors. | : | |
| _____ | : | |
| **USG CORPORATION, et al.,** | : | |
| | : | |
| Movant | : | |
| | : | |
| v. | : | |
| | : | |
| **OFFICIAL COMMITTEE OF ASBESTOS PERSONAL** | : | **Civil Action No. 04-1559 (JFC)** |
| **INJURY CLAIMANTS, OFFICIAL COMMITTEE OF** | : | **Civil Action No. 04-1560 (JFC)** |
| **UNSECURED CREDITORS, OFFICIAL** | : | |
| **COMMITTEE OF ASBESTOS PROPERTY** | : | |
| **DAMAGE CLAIMANTS AND LEGAL** | : | |
| **REPRESENTATIVE FOR FUTURE CLAIMANTS,** | : | |
| | : | |
| Respondents. | : | |

---

## DEBTORS' STANDARD QUESTIONNAIRE TO
## SELECT PERSONAL INJURY ASBESTOS CLAIMANTS

| | | |
|---|---|---|
| COOLEY GODWARD LLP | RICHARDS, LAYTON, & FINGER, P.A. | JONES DAY |
| Stephen C. Neal (CA 170085) | Daniel J. DeFranceschi (DE No. 2732) | David G. Heiman (OH 0038271) |
| Scott D. Devereaux (CA 146050) | Paul N. Heath (DE No. 3704) | Brad B. Erens (IL 6206864) |
| 3000 El Camino Real | P.O. Box 551 | North Point |
| Five Palo Alto Square | One Rodney Square | 901 Lakeside Avenue |
| Palo Alto, CA 94306 | Wilmington, Delaware 19899 | Cleveland, Ohio 44114-1190 |
| Tel: (650) 843-5000 | Tel: (302) 651-7700 | Tel: (216) 586-3939 |

*Counsel for Debtors*

---

Answer separately and truthfully in writing each of the questions in this Questionnaire in accordance with the Questionnaire's Definitions and Instructions. Read the entire Questionnaire carefully <u>before completing it</u>. Your completed Questionnaire and all attachments must be post-marked for return mailing to Rust Consulting, Inc. on or before January 9, 2006. Make sure that you and your attorney, if you have one, sign the last page of the Questionnaire under oath. Completion of this Questionnaire is mandatory under Federal Rules of Civil Procedure, Rules 26 and 33, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7026 and 7033.

*Date filed:  10/24/05*
*Docket #:  61 & 67*

## DEFINITIONS

The words in CAPITALS in the Questionnaire are defined as follows:

1.  The INJURED PARTY is the person who allegedly has or had a medical condition caused by asbestos exposure, including but not limited to MESOTHELIOMA, LUNG CANCER, OTHER CANCER, PLEURAL PLAQUES, DIFFUSE PLEURAL THICKENING, ASBESTOSIS, or other non-malignant asbestos-related condition.

2.  The PERSONAL REPRESENTATIVE OF THE INJURED PARTY is the person or entity that is filing the claim on behalf of the INJURED PARTY if the INJURED PARTY is legally incompetent or deceased. This person or entity may be, for example, the INJURED PARTY's legal guardian, executor, or administrator. This person or entity is not the attorney representing the INJURED PARTY or the attorney representing the PERSONAL REPRESENTATIVE OF THE INJURED PARTY.

3.  The CLAIMANT is either the INJURED PARTY or, if the INJURED PARTY is legally incompetent or deceased, the PERSONAL REPRESENTATIVE OF THE INJURED PARTY.

4.  DEBTORS are any or all of the following corporations: USG Corporation, United States Gypsum Company, USG Interiors, Inc., USG Interiors International, Inc., L&W Supply Corporation, Beadex Manufacturing, LLC, B-R Pipeline Company, La Mirada Products Co., Inc., USG Industries, Inc., USG Pipeline Company, and Stocking Specialists, Inc.

5.  US GYPSUM is United States Gypsum Company. For a description of the businesses of US GYPSUM and other DEBTORS and a listing of the types of products they manufactured or sold that may have contained asbestos, see Appendix B to this Questionnaire.

6.  PLEURAL PLAQUES is a non-malignant, circumscribed or localized area of fibrous material appearing in the lining of the lung or the chest wall.

7.  DIFFUSE PLEURAL THICKENING is a diffuse (as opposed to circumscribed or localized) area of fibrosis appearing in the lining of the lung or the chest wall.

8.  ASBESTOSIS is diffuse fibrosis (or scarring) on both lungs caused by the inhalation of asbestos fibers.

9.  LUNG CANCER is a malignant tumor of the lungs.

10.  MESOTHELIOMA is a malignant tumor of the pleura, which is the thin membrane or lining surrounding the lung (pleural mesothelioma). It may also be a malignant tumor of the lining of the abdominal cavity (peritoneal mesothelioma).

11.  OTHER CANCER is any cancer other than LUNG CANCER or MESOTHELIOMA and includes but is not limited to colon cancer, laryngeal (voicebox) cancer, esophageal cancer, pharyngeal (throat) cancer, stomach cancer, breast cancer, ovarian cancer, liver cancer, brain cancer, lymphoma (cancer of the lymph nodes (or tissues)), and prostate cancer.

12.  FORCED VITAL CAPACITY (FVC) describes the total amount of air that can be forcibly and quickly exhaled after inhaling as much air as possible.

13.  FORCED EXPIRATORY VOLUME ($FEV_1$) describes the volume of air that can be forced from the lungs in one second of effort.

14.  TOTAL LUNG CAPACITY (TLC) represents the total amount of air that can be taken into the lungs, including the air that cannot be exhaled.

15.  DIFFUSION CAPACITY (DLCO or $D_{co}$) measures the exchange of oxygen from the air to the blood stream.

| | INSTRUCTIONS |
|---|---|

1. Read carefully the entire Questionnaire and the Definitions and Instructions <u>before completing the Questionnaire</u>. It is important to read the entire Questionnaire at least once <u>before completing it</u> because you may need to copy some sections prior to filling them out so that you can submit multiple copies of the sections. See Instruction No. 4, below.

2. Type or print your answers to each question neatly and legibly using black or blue ink. Use capital letters and avoid contact with the edge of the character boxes. Mark check boxes with an "X" (example at right). ☒ Do not use a felt-tip pen, do not write outside the boxes or blocks, and do not bend or fold the pages of the Questionnaire. Do not distribute this Questionnaire to others for their completion because each Questionnaire has a unique identifying barcode and number for each INJURED PARTY.

3. Be complete, accurate, and truthful in your answers to the questions asked. This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your claim. The penalty for knowingly and fraudulently making a false statement under penalty of perjury is a fine of up to $500,000 or imprisonment for up to five years, or both.

4. If you cannot fit all information in any particular section or page, make a copy of that page <u>before filling it out</u> and add the necessary information to the copied page(s). Attach as many additional pages as needed.

5. If the INJURED PARTY is deceased, submit a copy of the death certificate with the Questionnaire. If this Questionnaire is being filed by the PERSONAL REPRESENTATIVE OF THE INJURED PARTY, submit with the Questionnaire written evidence of your authority to act on behalf of the INJURED PARTY.

6. Submit with the Questionnaire copies of the following medical documents:

   A.  If in Part 2 you state that the INJURED PARTY has been diagnosed with MESOTHELIOMA, submit a copy of a narrative statement from a diagnosing physician that shows the alleged diagnosis.

   B.  If in Part 2 you state that the INJURED PARTY has been diagnosed with LUNG CANCER or OTHER CANCER, or with PLEURAL PLAQUES, DIFFUSE PLEURAL THICKENING, ASBESTOSIS, or any other non-malignant asbestos-related condition, submit:
   
   i.   An original of the INJURED PARTY's most recent radiographic evaluation, such as an x-ray or CT scan, taken before the filing of the INJURED PARTY's claim;
   
   ii.  Copies of any and all medical reports and records that were relied upon for, or that conflict with, the alleged diagnosis, including but not limited to:
   - Physical exam results;
   - Pathology reports;
   - Diagnostic tests or reports;
   - Laboratory tests;
   - Letters or other written statements from a doctor or medical clinic;
   - Pulmonary function test (PFT) reports, including:
     - Spirogram tracings;
     - FORCED VITAL CAPACITY (FVC);
     - FORCED EXPIRATORY VOLUME (FEV1);
     - TOTAL LUNG CAPACITY (TLC);
     - DIFFUSION CAPACITY (DLCO or $D_{co}$); and
   
   iii. Copies of any and all written statements by a doctor or medical clinic regarding the cause or potential cause of the alleged diagnosis.

   If in Part 2 you allege multiple diagnoses, submit copies of all medical documents required for each and every diagnosis that you allege. DEBTORS will reimburse your reasonable expenses incurred in copying the medical documents that you submit. See Instruction No. 10, below.

7. If the INJURED PARTY or the PERSONAL REPRESENTATIVE OF THE INJURED PARTY responded to interrogatories or was deposed in a lawsuit filed by or on behalf of the INJURED PARTY for asbestos-related personal injury, submit with the Questionnaire copies of any and all such interrogatory responses and depositions. If a written claim, including but not limited to a proof of claim form, was submitted by or on behalf of the INJURED PARTY for asbestos-related personal injury in another bankruptcy case or against a trust established pursuant to a plan of reorganization or liquidation in another bankruptcy case, submit with the Questionnaire copies of any and all such written claims. See Part 8 of the Questionnaire.

   If the INJURED PARTY was exposed to asbestos through another party (the "Source Individual"), and if the Source Individual responded to interrogatories or was deposed in a lawsuit filed by or on behalf of the Source Individual for asbestos-related personal injury, submit with the Questionnaire copies of any and all such interrogatory responses and depositions. If a written claim, including but not limited to a proof of claim form, was submitted on behalf of the Source Individual for asbestos-related personal injury in another bankruptcy case or against a trust established pursuant to a plan of reorganization or liquidation in another bankruptcy case, submit with the Questionnaire copies of any and all such written claims. See Part 9 of the Questionnaire.

DEBTORS will reimburse your reasonable expenses incurred in copying the interrogatory responses, depositions, and written claims that you submit. See Instruction No. 10, below.

8.  If in Part 4 you identify a co-worker or other person upon whom you rely for your belief that the INJURED PARTY was exposed to an asbestos-containing product of US GYPSUM or another DEBTOR, and if that co-worker or other person was deposed in any asbestos-related personal injury action, submit with the Questionnaire copies of any and all such depositions. See Part 4 of the Questionnaire. DEBTORS will reimburse your reasonable expenses incurred in copying the depositions that you submit. See Instruction No. 10, below.

9.  In Parts 4-7 of the Questionnaire, you are asked to provide Standard Occupational Classification Codes and Standard Industrial Classification Codes. For a list of these codes, refer to Appendices C and D, respectively, to the Questionnaire.

10. Instead of originals, you may submit copies of any and all documents that the Questionnaire requires with the exception of radiographic evaluations, such as x-rays or CT scans. You must submit the originals of these evaluations.

    DEBTORS will reimburse your reasonable expenses incurred in copying documents that you submit. In Part 10, indicate the documents for which you seek reimbursement and the total amount of the reimbursement you seek. Attach to this Questionnaire a receipt that shows the copy costs you incurred.

    Upon request, DEBTORS may have access to the original of any document that you submit. Original documents and radiographic evaluations provided to DEBTORS will be returned within a reasonable time after their professionals and experts have reviewed the documents or evaluations.

11. Make sure that the INJURED PARTY or the PERSONAL REPRESENTATIVE OF THE INJURED PARTY completes and signs the Authorization for Release of Earnings Information and Employment Records From the Social Security Administration contained in Appendix A. You do not need to complete the Request for Social Security Earnings Information Form (Form SSA-7050-F4) that is included in Appendix A with the Authorization. This form is only for your reference. You need only complete and return the Authorization on the first page of Appendix A.

    A confidentiality agreement entered in this case provides that the following information may be disclosed only to persons involved in the case, that it will be held in strict confidence by persons who receive it, and that it will be used only for purposes related to the case: (1) social security numbers collected in the Questionnaire or its supporting documentation; (2) all records regarding the INJURED PARTY that DEBTORS receive from the Social Security Administration pursuant to the Authorization in Appendix A ("SSA Documents"); (3) information contained in the SSA Documents when disclosed in conjunction with the INJURED PARTY's name, address, or social security number; and (4) medical records or medical information collected with or in the Questionnaire when disclosed in conjunction with the INJURED PARTY's name, address, or social security number.

12. If you have questions concerning this Questionnaire or want to request additional copies of it, your attorney may call the toll-free automated helpline of Rust Consulting, Inc. The helpline may be reached at 1-800-611-9738. Rust Consulting cannot provide legal advice.

13. If you prefer to input your responses to the Questionnaire on a computer, you must call Rust Consulting's toll-free automated helpline at 1-800-611-9738 to obtain a copy of the Questionnaire as a writable Portable Document Format (PDF) document. Once you have entered all responses into the PDF document, you must print the document and have the CLAIMANT and the CLAIMANT's attorney, if any, sign the certification in Part 10 of the Questionnaire. Return to Rust Consulting the printed and signed Questionnaire along with all supporting documentation as directed in Instruction No. 14, below. Alternatively, you may convert the printed and signed Questionnaire to a PDF document and return it to Rust Consulting on a CD-ROM as long as: (1) the conversion does not alter the structure or visual presentation of the Questionnaire in any way, including the unique identifying barcode and number at the bottom of each page of the Questionnaire; and (2) the CD-ROM is labeled with the INJURED PARTY's name, date of birth, and a fully intact, machine-readable copy of the INJURED PARTY's unique identifying barcode and number. You may also submit any and all of the required supporting documentation as PDF documents on a CD-ROM as long as the CD-ROM complies with this label requirement. Do not submit radiographic evaluations, such as x-rays or CT Scans, on a CD-ROM. However, do label such evaluations with the INJURED PARTY's name, date of birth, and a fully intact, machine-readable copy of the INJURED PARTY's unique identifying barcode and number.

14. Make sure that the CLAIMANT and the attorney of the CLAIMANT, if any, signs the Questionnaire in Part 10. Submit your completed Questionnaire and all supporting documentation to the following address:

| If by mail: | If by hand or overnight delivery: |
|---|---|
| Rust Consulting, Inc. | Rust Consulting, Inc. |
| P.O. Box 1797 | 201 S. Lyndale Ave. |
| Faribault, MN 55021-1797 | Faribault, MN 55021 |

Your completed Questionnaire and all supporting documentation must be post-marked for return mailing to Rust Consulting, Inc. on or before January 9, 2006. Do not send your Questionnaire to DEBTORS or DEBTORS' counsel.

## PART 1: IDENTIFYING INFORMATION

Provide identifying information regarding the INJURED PARTY, the PERSONAL REPRESENTATIVE OF THE INJURED PARTY, and the CLAIMANT's attorney, if any.

**A.    INJURED PARTY** – the person who allegedly has or had a medical condition caused by asbestos exposure.

1.    **Full Name:**

Last

First                    MI

2.    **Other Names Used:**
      **(including maiden name)**

Last

First                    MI

3.    **Social Security Number:** ☐☐☐ – ☐☐ – ☐☐☐☐ *

      *    **A confidentiality agreement limits disclosure and use of this social security number to persons involved in this case for purposes related to the case.**

4.    **Gender:**        Male ☐    Female ☐

5.    **Date of Birth:**    ☐☐ / ☐☐ / ☐☐☐☐
                           Month    Day    Year

6.    **The Injured Party is:**    Living ☐    Deceased ☐    **(If deceased, enclose the death certificate.)**

      a.    **If deceased, date of death:**    ☐☐ / ☐☐ / ☐☐☐☐
                                               Month    Day    Year

      b.    **If deceased, was death asbestos-related?**    Yes ☐    No ☐

7.    **If the INJURED PARTY is living, provide that person's mailing address:**

Street/P.O. Box

City                    State        Zip

**PART 1: IDENTIFYING INFORMATION (Continued)**

B.  PERSONAL REPRESENTATIVE OF THE INJURED PARTY (**not** filing attorney) – If the INJURED PARTY is legally incompetent or deceased, and has a PERSONAL REPRESENTATIVE other than, or in addition to, his/her attorney, provide the following information for the PERSONAL REPRESENTATIVE submitting the claim. **(Enclose written evidence of your authority to act on behalf of the INJURED PARTY.)**

   1.  **Name of PERSONAL REPRESENTATIVE:**

               Last

               First                MI

   2.  **Relationship to INJURED PARTY:**
       **The PERSONAL REPRESENTATIVE is the INJURED PARTY's:**

               (Guardian, Administrator, Brother, etc.)

   3.  **PERSONAL REPRESENTATIVE's mailing address:**

               Street/P.O. Box

               City             State        Zip

C.  **Attorney** – If the CLAIMANT is represented by an attorney, provide the following information.

   1.  **Attorney Name:**

               Last

               First                MI

   2.  **Email Contact Information:**

   3.  **Name of Law Firm:**

               (Print full name)

   4.  **Firm Address:**

               Street/P.O. Box

               City             State        Zip

   5.  **Phone Number:**  (   )   –

       **Fax Number:**  (   )   –

## PART 2:  ASBESTOS-RELATED AND OTHER INJURIES

Provide information about the INJURED PARTY's asbestos-related personal injury.

1.  Has the INJURED PARTY been diagnosed with cancer?     Yes ☐   No ☐

2.  If "Yes," identify the type of cancer that was diagnosed for the INJURED PARTY and the date of diagnosis.  Refer to the definitions of LUNG CANCER, MESOTHELIOMA, and OTHER CANCER on page 1 of this Questionnaire.

LUNG CANCER ☐          Date of Diagnosis: ☐☐ / ☐☐☐☐
                                          Month      Year

MESOTHELIOMA ☐         Date of Diagnosis: ☐☐ / ☐☐☐☐
                                          Month      Year

OTHER CANCER ☐         Date of Diagnosis: ☐☐ / ☐☐☐☐
                                          Month      Year

If OTHER CANCER, identify what type.

[ ]

3.  a.  Has the doctor who made the diagnosis of cancer stated that
        the cancer in question was caused by asbestos exposure?      Yes ☐   No ☐

    b.  Has any doctor stated that the cancer in question was caused
        by asbestos exposure or that asbestos exposure was a
        substantial contributing factor in the cause of the disease?   Yes ☐   No ☐

4.  Has the INJURED PARTY been diagnosed with a non-malignant
    asbestos-related condition?                                      Yes ☐   No ☐

5.  If "Yes," identify the type of non-malignant asbestos-related condition that was diagnosed for the INJURED PARTY and the date of diagnosis.  Refer to the definitions of PLEURAL PLAQUES, DIFFUSE PLEURAL THICKENING, and ASBESTOSIS on page 1 of this Questionnaire.

PLEURAL PLAQUES ☐           Date of Diagnosis: ☐☐ / ☐☐☐☐
                                              Month      Year

DIFFUSE PLEURAL THICKENING ☐  Date of Diagnosis: ☐☐ / ☐☐☐☐
                                              Month      Year

ASBESTOSIS ☐                Date of Diagnosis: ☐☐ / ☐☐☐☐
                                              Month      Year

Other Non-Malignant
Asbestos-Related Condition ☐  Date of Diagnosis: ☐☐ / ☐☐☐☐
                                              Month      Year

If Other Non-Malignant Asbestos-Related Condition, identify what type.

[ ]

**PART 2: ASBESTOS-RELATED AND OTHER INJURIES (Continued)**

6.  a.  Has the doctor who made the diagnosis of non-malignant asbestos-related condition stated that the condition in question was caused by asbestos exposure?     Yes ☐  No ☐

    b.  Has any doctor stated that the non-maglignant asbestos-related condition in question was caused by asbestos exposure or that asbestos exposure was a substantial contributing factor in the cause of the condition?     Yes ☐  No ☐

7.  a.  Has the INJURED PARTY taken a pulmonary function test (PFT)?     Yes ☐  No ☐  Do Not Know ☐

    b.  If "Yes," provide all of the following information regarding the INJURED PARTY's **most recent** pulmonary function test (PFT) results.

    FORCED VITAL CAPACITY (FVC):

    Test Date: ☐☐ / ☐☐ / ☐☐☐☐     Result: ☐ . ☐☐ L     % of Predicted: ☐☐☐ %
          Month    Day    Year

    FORCED EXPIRATORY VOLUME (FEV$_1$):

    Test Date: ☐☐ / ☐☐ / ☐☐☐☐     Result: ☐ . ☐☐ L     % of Predicted: ☐☐☐ %
          Month    Day    Year

    TOTAL LUNG CAPACITY (TLC):

    Test Date: ☐☐ / ☐☐ / ☐☐☐☐     Result: ☐ . ☐☐ L     % of Predicted: ☐☐☐ %
          Month    Day    Year

    DIFFUSION CAPACITY (DLCO or D$_{co}$):

    Test Date: ☐☐ / ☐☐ / ☐☐☐☐     Result: ☐ . ☐☐ L     % of Predicted: ☐☐☐ %
          Month    Day    Year

8.  a.  Has the INJURED PARTY had an ILO reading of a chest x-ray?     Yes ☐  No ☐  Do Not Know ☐

    b.  If "Yes," provide information regarding the INJURED PARTY's **most recent** ILO x-ray reading.

    Reading Date: ☐☐ / ☐☐ / ☐☐☐☐     Results: ☐ / ☐
            Month    Day    Year

9.  a.  Has the INJURED PARTY been diagnosed with any other lung condition?     Yes ☐  No ☐

    Another lung condition includes but is not limited to:
    (i)   chronic obstructive pulmonary disease (including emphysema and chronic bronchitis),
    (ii)  asthma,
    (iii) pneumonia,
    (iv)  interstitial lung disease (idiopathic pulmonary fibrosis),
    (v)   silicosis,
    (vi)  effusion (fluid around the lung (pleural cavity)), and
    (vii) congestive heart failure (fluid in the lung) (lung edema).

    b.  If "Yes," identify the other lung condition.

    ☐

10. If in Part 2, Question 2, you allege that the INJURED PARTY has been diagnosed with MESOTHELIOMA, complete this question. Otherwise, continue to Question 11.

    Attach to this Questionnaire a copy of a narrative statement from a diagnosing physician that shows the alleged MESOTHELIOMA diagnosis, and provide the following information regarding the diagnosing physician.

    a.  Doctor's Name: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐
                                       Last

    ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐    ☐
                                      First            MI

    b.  Doctor's Address: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐
                                       Street/P.O. Box

    ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐    ☐☐    ☐☐☐☐☐
                  City                  State     Zip

**PART 2:  ASBESTOS-RELATED AND OTHER INJURIES (Continued)**

11. If in Part 2, Question 2, you allege that the Injured Party has been diagnosed with Lung Cancer or Other Cancer, complete this question. Otherwise, continue to Question 12.

Attach to this Questionnaire copies of all medical documents identified in Instruction 6, subsection B. See page 2 of the Questionnaire.

Provide the following information regarding the Injured Party's doctor(s). If you allege that the Injured Party has been diagnosed with both Lung Cancer and Other Cancer, or with more than one type of Other Cancer, copy this section and complete it for each alleged diagnosis.

A.  For the doctor who made the alleged diagnosis of Lung Cancer or Other Cancer:

   a.  Doctor's Name:

   Last

   First                                                                                MI

   b.  Doctor's Address:

   Street/P.O. Box

   City                                                              State          Zip

   c.  Doctor's Diagnosis:  ☐ Lung Cancer  ☐ Other Cancer, Identify what type:

B.  For the doctor, if any, who issued the _most recent_ pathology report regarding the alleged diagnosis:

   a.  Doctor's Name:

   Last

   First                                                                                MI

   b.  Doctor's Address:

   Street/P.O. Box

   City                                                              State          Zip

12. If in Part 2, Question 2, you allege that the Injured Party has been diagnosed with Pleural Plaques, Diffuse Pleural Thickening, Asbestosis, or another non-malignant asbestos-related condition, complete this question. Otherwise, continue to Part 3.

Attach to this Questionnaire copies of all medical documents identified in Instruction 6, subsection B. See page 2 of the Questionnaire.

Provide the following information regarding the Injured Party's doctor(s). If you allege that the Injured Party has been diagnosed with more than one non-malignant asbestos-related condition, copy this section and complete it for each alleged diagnosis.

A.  For the doctor who made the alleged diagnosis of Pleural Plaques, Diffuse Pleural Thickening, Asbestosis, or another non-malignant asbestos-related condition:

   a.  Doctor's Name:

   Last

   First                                                                                MI

   b.  Doctor's Address:

   Street/P.O. Box

   City                                                              State          Zip

   c.  Doctor's Diagnosis:

   ☐ Pleural Plaques        ☐ Diffuse Pleural Thickening        ☐ Asbestosis

   ☐ Other Non-Malignant Asbestos-Related Condition, Specify:

## PART 2: ASBESTOS-RELATED AND OTHER INJURIES (Continued)

**B. For the doctor, if any, who issued the most recent pathology report regarding the alleged diagnosis:**

a. **Doctor's Name:**

Last

First                                    MI

b. **Doctor's Address:**

Street/P.O. Box

City                                State            Zip

**C. For the doctor, if any, who issued the most recent ILO x-ray reading of the INJURED PARTY:**

a. **Doctor's Name:**

Last

First                                    MI

b. **Doctor's Address:**

Street/P.O. Box

City                                State            Zip

**D. For the doctor, if any, who took the most recent pulmonary function test (PFT) of the INJURED PARTY:**

a. **Doctor's Name:**

Last

First                                    MI

b. **Doctor's Address:**

Street/P.O. Box

City                                State            Zip

**E. For the doctor, if any, who most recently treated the INJURED PARTY for the alleged diagnosis:**

a. **Doctor's Name:**

Last

First                                    MI

b. **Doctor's Address:**

Street/P.O. Box

City                                State            Zip

## PART 3: SMOKING HISTORY OF THE INJURED PARTY

If in Part 2, you allege that the INJURED PARTY has been diagnosed with MESOTHELIOMA, continue to Part 4. Otherwise, complete this Part.

1. **Has the INJURED PARTY ever smoked cigarettes, cigars, or pipes?**    Yes ☐    No ☐

   Mark the box(es) that apply and provide the information requested.

|  | Age When First Started Smoking | Date, If Any, When Completely Stopped Smoking | Average Daily Usage |
|---|---|---|---|
| Cigarettes: ☐ | ☐ Age Started | ☐ / ☐ ☐ Month   Year | Packs per Day: ☐ . ☐ * (#) |
| Cigars: ☐ | ☐ Age Started | ☐ / ☐ ☐ Month   Year | Cigars per Day: ☐ . ☐ * (#) |
| Pipes: ☐ | ☐ Age Started | ☐ / ☐ ☐ Month   Year | Pipes per Day: ☐ . ☐ * (#) |

2. **Has the INJURED PARTY ever used chewing tobacco or snuff?**    Yes ☐    No ☐

   Mark the box(es) that apply and provide the information requested.

|  | Age When First Started Using | Date, If Any, When Completely Stopped Using | Average Daily Usage |
|---|---|---|---|
| Chewing Tobacco: ☐ | ☐ Age Started | ☐ / ☐ ☐ Month   Year | Number of Times per Day: ☐ . ☐ * (#) |
| Snuff: ☐ | ☐ Age Started | ☐ / ☐ ☐ Month   Year | Number of Times per Day: ☐ . ☐ * (#) |

* Indicate fractional amounts as appropriate, e.g., three and one-half would be entered as 3.5.

---

**PART 4: OCCUPATIONAL EXPOSURE TO PRODUCTS OF UNITED STATES GYPSUM COMPANY OR ANY OTHER DEBTOR**

---

Provide information about the INJURED PARTY's occupational exposure to asbestos-containing products that were manufactured or sold by US GYPSUM or any other DEBTOR. In Appendix B to the Questionnaire, you will find a description of the businesses of US GYPSUM and other DEBTORS and a listing of the types of products they manufactured or sold that may have contained asbestos.

1. Did the INJURED PARTY have occupational exposure to an asbestos-containing product manufactured or sold by US GYPSUM or another DEBTOR?        Yes ☐    No ☐

   If "Yes," complete the remainder of this Part as instructed.

   If "No," continue to Part 5.

2. Did the INJURED PARTY have occupational exposure to more than one asbestos-containing product manufactured or sold by US GYPSUM or another DEBTOR?        Yes ☐    No ☐

   If "Yes," copy this Part and complete the Part for each product.

3. Product Exposed To: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐
   (one product per page)

   Brand Name: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

   Manufacturer of Product: ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

   What is the basis for your belief that the exposure was to a DEBTOR's product and not to another manufacturer's?

   ☐ Personal Recollection    ☐ Other, Specify: _____

   If you rely on a co-worker of the INJURED PARTY or on another person for your belief that the INJURED PARTY was exposed to a DEBTOR's product, provide that person's name:

   ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐
   Last

   ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐    ☐
   First                                                        MI

   If you rely on a co-worker or other person, has this person been deposed in any asbestos-related personal injury action?        Yes ☐    No ☐

   If the co-worker or other person has been deposed, attach to this Questionnaire a copy of any and all such depositions.

4. Was the INJURED PARTY exposed to the product in more than one occupation? (Use the Standard Occupational Classification Codes listed in Appendix C.)        Yes ☐    No ☐

   If "Yes," copy this Part and complete the Part for each occupation.

5. Occupation during exposure:
   (Use the Standard Occupational Classification Codes listed in Appendix C.)    ☐☐    Specify if "Other": _____

6. Industry during exposure:
   (Use the Standard Industrial Classification Codes listed in Appendix D.)    ☐☐    Specify if "Other": _____

**PART 4:  OCCUPATIONAL EXPOSURE TO PRODUCTS OF UNITED STATES GYPSUM COMPANY
OR ANY OF THE DEBTORS (Continued)**

7.  Provide the date range and frequency of product exposure in the occupation and industry listed in Questions 5 and 6.
If exposure was not continuous in the listed occupation and industry, provide all separate date ranges and frequencies
of exposure.  Start with the first date range of exposure and finish with the last date range of exposure.  If there are
more than four date ranges of exposure, copy this section before completing it and attach additional pages.

For each date range of exposure, describe the exposure type as A, B, C, or D as follows:

The INJURED PARTY was:

(A)  a worker who personally worked with the product identified in Question 3 of this Part;
(B)  a worker in a room where other workers were personally working with the product identified in Question 3 of this
Part;
(C)  a worker on a floor where other workers were personally working with the product identified in Question 3 of this
Part; or
(D)  a worker at a site where other workers were personally working with the product identified in Question 3 of this
Part.

Choose the category that best describes the INJURED PARTY's type of exposure and choose only one category. The best
category is the INJURED PARTY's most typical or most usual form of exposure during the date range at issue.

Estimate the frequency of exposure as the average number of man-days per month and hours per man-day that the
INJURED PARTY was exposed during the listed date range. If you are unable to do so, then estimate the aggregate
number of man-days of exposure during the date range. One man-day of exposure equals eight hours of exposure.

| Date Range of Exposure: | Exposure Type: | Frequency of Exposure During this Date Range: |
|---|---|---|
| From: [ ][ ] / [ ][ ][ ][ ]<br>Month       Year<br><br>To: [ ][ ] / [ ][ ][ ][ ]<br>Month       Year | Indicate A, B, C or D<br>per Instructions above.<br><br>[ ] | Estimate either:<br>Regular Exposure:     OR     Aggregate Exposure:<br><br>[ ][ ] Man-Day(s) per Month<br>and<br>[ ][ ] Hour(s) per Man-Day    [ ][ ][ ] Total Man-Day(s) per<br>Instructions above |
| From: [ ][ ] / [ ][ ][ ][ ]<br>Month       Year<br><br>To: [ ][ ] / [ ][ ][ ][ ]<br>Month       Year | Indicate A, B, C or D<br>per Instructions above.<br><br>[ ] | Estimate either:<br>Regular Exposure:     OR     Aggregate Exposure:<br><br>[ ][ ] Man-Day(s) per Month<br>and<br>[ ][ ] Hour(s) per Man-Day    [ ][ ][ ] Total Man-Day(s) per<br>Instructions above |
| From: [ ][ ] / [ ][ ][ ][ ]<br>Month       Year<br><br>To: [ ][ ] / [ ][ ][ ][ ]<br>Month       Year | Indicate A, B, C or D<br>per Instructions above.<br><br>[ ] | Estimate either:<br>Regular Exposure:     OR     Aggregate Exposure:<br><br>[ ][ ] Man-Day(s) per Month<br>and<br>[ ][ ] Hour(s) per Man-Day    [ ][ ][ ] Total Man-Day(s) per<br>Instructions above |
| From: [ ][ ] / [ ][ ][ ][ ]<br>Month       Year<br><br>To: [ ][ ] / [ ][ ][ ][ ]<br>Month       Year | Indicate A, B, C or D<br>per Instructions above.<br><br>[ ] | Estimate either:<br>Regular Exposure:     OR     Aggregate Exposure:<br><br>[ ][ ] Man-Day(s) per Month<br>and<br>[ ][ ] Hour(s) per Man-Day    [ ][ ][ ] Total Man-Day(s) per<br>Instructions above |

8.   Describe the INJURED PARTY's job duties:  (attach additional pages if needed)

[                                                                                                    ]

9.   Describe how the product identified in Question 3 of this Part was used at the site(s):  (attach additional pages if needed)

[                                                                                                    ]

10.  If the exposure(s) listed in response to the above questions was/were at a construction site, estimate the percentage
of time such exposure(s) occurred at residential and commercial sites:

Residential: [ ][ ][ ]  %   Commercial: [ ][ ][ ]  %   **= 100 %**

**PART 5:  OCCUPATIONAL EXPOSURE TO OTHER ASBESTOS-CONTAINING PRODUCTS**

Provide information about the INJURED PARTY's occupational exposure to asbestos-containing products that were not manufactured or sold by US GYPSUM or another DEBTOR.

1.  Did the INJURED PARTY have occupational exposure to an asbestos-containing product that was not manufactured or sold by US GYPSUM or another DEBTOR?     Yes ☐    No ☐

    If "Yes," complete the remainder of this Part as instructed.

    If "No," continue to Part 6.

2.  Did the INJURED PARTY have occupational exposure to more than one asbestos-containing product that was not manufactured or sold by US GYPSUM or another DEBTOR?     Yes ☐    No ☐

    If "Yes," copy this Part and complete the Part for each product.

3.  **Product Exposed To:**
    (one product per page)

    **Brand Name:**

    **Manufacturer of Product:**

4.  Was the INJURED PARTY exposed to the product in more than one occupation?  (Use the Standard Occupational Classification Codes listed in Appendix C.)     Yes ☐    No ☐

    If "Yes," copy this Part and complete the Part for each occupation.

5.  Occupation during exposure:
    (Use the Standard Occupational Classification Codes listed in Appendix C.)     Specify if "Other":

    If the INJURED PARTY was exposed to the Product in more than one occupation, copy this Part and complete the Part for each occupation.

6.  Industry during exposure:
    (Use the Standard Industrial Classification Codes listed in Appendix D.)     Specify if "Other":

**PART 5:  OCCUPATIONAL EXPOSURE TO OTHER ASBESTOS-CONTAINING PRODUCTS (Continued)**

7. Provide the date range and frequency of product exposure in the occupation and industry listed in Questions 5 and 6. If exposure was not continuous in the listed occupation and industry, provide all separate date ranges and frequencies of exposure.  Start with the first date range of exposure and finish with the last date range of exposure.  If there are more than four date ranges of exposure, copy this section before completing it and attach additional pages.

   For each date range of exposure, describe the exposure type as A, B, C, or D as follows:

   The Injured Party was:

   (A)  a worker who personally worked with the product identified in Question 3 of this Part;
   (B)  a worker in a room where other workers were personally working with the product identified in Question 3 of this Part;
   (C)  a worker on a floor where other workers were personally working with the product identified in Question 3 of this Part; or
   (D)  a worker at a site where other workers were personally working with the product identified in Question 3 of this Part.

   Choose the category that best describes the Injured Party's type of exposure and choose only one category. The best category is the Injured Party's most typical or most usual form of exposure during the date range at issue.

   Estimate the frequency of exposure as the average number of man-days per month and hours per man-day that the Injured Party was exposed during the listed date range. If you are unable to do so, then estimate the aggregate number of man-days of exposure during the date range. One man-day of exposure equals eight hours of exposure.

| Date Range of Exposure: | Exposure Type: | Frequency of Exposure During this Date Range: |
|---|---|---|
| From: ☐☐ / ☐☐☐☐ <br> Month   Year <br> To: ☐☐ / ☐☐☐☐ <br> Month   Year | Indicate A, B, C or D per Instructions above. ☐ | Estimate either: <br> Regular Exposure: **OR** Aggregate Exposure: <br> ☐☐ Man-Day(s) per Month <br> and <br> ☐☐ Hour(s) per Man-Day   ☐☐☐ Total Man-Day(s) per Instructions above |
| Date Range of Exposure: <br> From: ☐☐ / ☐☐☐☐ <br> Month   Year <br> To: ☐☐ / ☐☐☐☐ <br> Month   Year | Exposure Type: <br> Indicate A, B, C or D per Instructions above. ☐ | Frequency of Exposure During this Date Range: <br> Estimate either: <br> Regular Exposure: **OR** Aggregate Exposure: <br> ☐☐ Man-Day(s) per Month <br> and <br> ☐☐ Hour(s) per Man-Day   ☐☐☐ Total Man-Day(s) per Instructions above |
| Date Range of Exposure: <br> From: ☐☐ / ☐☐☐☐ <br> Month   Year <br> To: ☐☐ / ☐☐☐☐ <br> Month   Year | Exposure Type: <br> Indicate A, B, C or D per Instructions above. ☐ | Frequency of Exposure During this Date Range: <br> Estimate either: <br> Regular Exposure: **OR** Aggregate Exposure: <br> ☐☐ Man-Day(s) per Month <br> and <br> ☐☐ Hour(s) per Man-Day   ☐☐☐ Total Man-Day(s) per Instructions above |
| Date Range of Exposure: <br> From: ☐☐ / ☐☐☐☐ <br> Month   Year <br> To: ☐☐ / ☐☐☐☐ <br> Month   Year | Exposure Type: <br> Indicate A, B, C or D per Instructions above. ☐ | Frequency of Exposure During this Date Range: <br> Estimate either: <br> Regular Exposure: **OR** Aggregate Exposure: <br> ☐☐ Man-Day(s) per Month <br> and <br> ☐☐ Hour(s) per Man-Day   ☐☐☐ Total Man-Day(s) per Instructions above |

8. Describe the Injured Party's job duties:  (attach additional pages if needed)

   [                                                                        ]

9. Describe how the product identified in Question 3 of this Part was used at the site(s):  (attach additional pages if needed)

   [                                                                        ]

10. If the exposure(s) listed in response to the above questions was/were at a construction site, estimate the percentage of time such exposure(s) occurred at residential and commercial sites:

   Residential: ☐☐☐ %   Commercial: ☐☐☐ %   **= 100 %**

## PART 6:  OCCUPATIONAL HISTORY

Provide the complete occupational history of the Iɴᴊᴜʀᴇᴅ Pᴀʀᴛʏ in chronological order, starting with the Iɴᴊᴜʀᴇᴅ Pᴀʀᴛʏ's earliest employer.  Include all jobs in which the Iɴᴊᴜʀᴇᴅ Pᴀʀᴛʏ worked at least a month, including any summer jobs, and conclude with any current employment. For Occupation Codes, use the Standard Occupational Classification Codes listed in Appendix C.  For Industry Codes, use the Standard Industrial Classification Codes listed in Appendix D.  If the Iɴᴊᴜʀᴇᴅ Pᴀʀᴛʏ has had more jobs than can fit on this page, copy the page before filling it out as many times as needed and complete the additional pages.

**1.  Employer Name:**

**Employer Address:**

Street

City          State          Zip

**Dates Worked:**

From:  [  ] / [  ]  To:  [  ] / [  ]
Month    Year        Month    Year

**Occupation Code:**  [  ]  **Specify if "Other":**

**Industry Code:**  [  ]  **Specify if "Other":**

**2.  Employer Name:**

**Employer Address:**

Street

City          State          Zip

**Dates Worked:**

From:  [  ] / [  ]  To:  [  ] / [  ]
Month    Year        Month    Year

**Occupation Code:**  [  ]  **Specify if "Other":**

**Industry Code:**  [  ]  **Specify if "Other":**

**3.  Employer Name:**

**Employer Address:**

Street

City          State          Zip

**Dates Worked:**

From:  [  ] / [  ]  To:  [  ] / [  ]
Month    Year        Month    Year

**Occupation Code:**  [  ]  **Specify if "Other":**

**Industry Code:**  [  ]  **Specify if "Other":**

## PART 7:  OTHER EXPOSURE TO ASBESTOS

1.  a.  Was the Injured Party exposed to asbestos outside the Injured Party's occupation?

Yes ☐  No ☐

b.  Was the Injured Party exposed to asbestos through another person (the "Source Individual")?

Yes ☐  No ☐

**If you checked "Yes" to either Question 1(a) or Question 1(b), answer Questions 2 through 4.  If you checked "Yes" to Question 1(b), additionally answer Questions 5 through 14.**

2.  Was the Injured Party exposed to more than one asbestos-containing product outside the Injured Party's occupation or through a Source Individual?   Yes ☐  No ☐

**If "Yes," copy this Part and complete the Part for each product.**

3.  Product Exposed To:

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

**(either directly or through Source Individual)**

Brand Name:

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

Manufacturer of Product:

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

What is the basis for your belief that the exposure was to a Debtor's product and not to another manufacturer's?

☐ Personal Recollection  ☐ Other, Specify: _____

If you rely on another person for your belief that the Injured Party was exposed to a Debtor's product, provide that person's name:

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

Last

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐  ☐

First                                                                                      MI

If you rely on another person, has this person been deposed in any asbestos-related personal injury action?   Yes ☐  No ☐

**If the other person has been deposed, attach to this Questionnaire a copy of any and all such depositions.**

**PART 7:  OTHER EXPOSURE TO ASBESTOS (Continued)**

4.  Provide the date range and frequency of the INJURED PARTY's product exposure (either direct or through the Source Individual).  If exposure was not continuous, provide all separate date ranges and frequencies of exposure.  Start with the first date range of exposure and finish with the last date range of exposure.  If there are more than four date ranges of exposure, copy this section before completing it and attach additional pages.

Estimate the frequency of exposure as the average number of **man-days per month** and **hours per man-day** that the INJURED PARTY was exposed during the listed date range.  If you are unable to do so, then estimate the aggregate number of man-days of exposure during the date range. One man-day of exposure equals eight hours of exposure.

**Date Range of Exposure:**

From: [  ] [  ] / [  ] [  ] [  ] [  ]
     Month     Year

To: [  ] [  ] / [  ] [  ] [  ] [  ]
     Month     Year

**Frequency of Exposure During this Date Range:**
Estimate either:

Regular Exposure:    **OR**    Aggregate Exposure:

[  ] Man-Day(s) per Month
and
[  ] Hour(s) per Man-Day

[  ] [  ] [  ] Total Man-Day(s) per Instructions above

---

**Date Range of Exposure:**

From: [  ] [  ] / [  ] [  ] [  ] [  ]
     Month     Year

To: [  ] [  ] / [  ] [  ] [  ] [  ]
     Month     Year

**Frequency of Exposure During this Date Range:**
Estimate either:

Regular Exposure:    **OR**    Aggregate Exposure:

[  ] Man-Day(s) per Month
and
[  ] Hour(s) per Man-Day

[  ] [  ] [  ] Total Man-Day(s) per Instructions above

---

**Date Range of Exposure:**

From: [  ] [  ] / [  ] [  ] [  ] [  ]
     Month     Year

To: [  ] [  ] / [  ] [  ] [  ] [  ]
     Month     Year

**Frequency of Exposure During this Date Range:**
Estimate either:

Regular Exposure:    **OR**    Aggregate Exposure:

[  ] Man-Day(s) per Month
and
[  ] Hour(s) per Man-Day

[  ] [  ] [  ] Total Man-Day(s) per Instructions above

---

**Date Range of Exposure:**

From: [  ] [  ] / [  ] [  ] [  ] [  ]
     Month     Year

To: [  ] [  ] / [  ] [  ] [  ] [  ]
     Month     Year

**Frequency of Exposure During this Date Range:**
Estimate either:

Regular Exposure:    **OR**    Aggregate Exposure:

[  ] Man-Day(s) per Month
and
[  ] Hour(s) per Man-Day

[  ] [  ] [  ] Total Man-Day(s) per Instructions above

---

5.  Source Individual's Name (if you checked "Yes" to Question 1(b)):

[  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ]
                          Last

[  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ]  [  ]
                       First              MI

6.  Was the Source Individual exposed to the product in more than one occupation? (Use the Standard Occupational Classification Codes listed in Appendix C.)     Yes [  ]  No [  ]

If "Yes," copy this Part and complete the Part for each occupation.

7.  Source Individual's occupation during exposure: (Use Standard Occupational Classification Codes listed in Appendix C.)  [  ][  ][  ]  Specify if "Other": [  ]

8.  Source Individual's industry during exposure: (Use the Standard Industrial Classification Codes listed in Appendix D.)  [  ][  ][  ]  Specify if "Other": [  ]

**PART 7:  OTHER EXPOSURE TO ASBESTOS (Continued)**

9.  Provide the date range and frequency of the Source Individual's product exposure in the occupation and industry listed in Questions 7 and 8.  If the Source Individual's exposure was not continuous in the listed occupation and industry, provide all separate date ranges and frequencies of exposure.  Start with the first date range of exposure and finish with the last date range of exposure.  If there are more than four date ranges of exposure, copy this section before completing it and attach additional pages.

For each date range of exposure, describe the exposure type as A, B, C, or D as follows:

The Source Individual was:

   (A)  a worker who personally worked with the product identified in Question 3 of this Part;
   (B)  a worker in a room where other workers were personally working with the product identified in Question 3 of this Part;
   (C)  a worker on a floor where other workers were personally working with the product identified in Question 3 of this Part; OR
   (D)  a worker at a site where other workers were personally working with the product identified in Question 3 of this Part.

Choose the category that best describes the Source Individual's type of exposure and choose only one category.  The best category is the Source Individual's most typical or most usual form of exposure during the date range at issue.

Estimate the frequency of exposure as the average number of man-days per month and hours per man-day that the Source Individual was exposed during the listed date range.  If you are unable to do so, then estimate the aggregate number of man-days of exposure during the date range.  One man-day of exposure equals eight hours of exposure.

| Date Range of Exposure: | Exposure Type: Indicate A, B, C or D per Instructions above. | Frequency of Exposure During this Date Range: Estimate either: |
|---|---|---|
| From: ☐☐ / ☐☐☐☐ <br> Month    Year <br> To: ☐☐ / ☐☐☐☐ <br> Month    Year | ☐ | Regular Exposure:   OR   Aggregate Exposure: <br> ☐☐ Man-Day(s) per Month <br> and <br> ☐☐ Hour(s) per Man-Day <br> ☐☐☐ Total Man-Day(s) per Instructions above |
| Date Range of Exposure: <br> From: ☐☐ / ☐☐☐☐ <br> Month    Year <br> To: ☐☐ / ☐☐☐☐ <br> Month    Year | Exposure Type: Indicate A, B, C or D per Instructions above. <br> ☐ | Frequency of Exposure During this Date Range: Estimate either: <br> Regular Exposure:   OR   Aggregate Exposure: <br> ☐☐ Man-Day(s) per Month <br> and <br> ☐☐ Hour(s) per Man-Day <br> ☐☐☐ Total Man-Day(s) per Instructions above |
| Date Range of Exposure: <br> From: ☐☐ / ☐☐☐☐ <br> Month    Year <br> To: ☐☐ / ☐☐☐☐ <br> Month    Year | Exposure Type: Indicate A, B, C or D per Instructions above. <br> ☐ | Frequency of Exposure During this Date Range: Estimate either: <br> Regular Exposure:   OR   Aggregate Exposure: <br> ☐☐ Man-Day(s) per Month <br> and <br> ☐☐ Hour(s) per Man-Day <br> ☐☐☐ Total Man-Day(s) per Instructions above |
| Date Range of Exposure: <br> From: ☐☐ / ☐☐☐☐ <br> Month    Year <br> To: ☐☐ / ☐☐☐☐ <br> Month    Year | Exposure Type: Indicate A, B, C or D per Instructions above. <br> ☐ | Frequency of Exposure During this Date Range: Estimate either: <br> Regular Exposure:   OR   Aggregate Exposure: <br> ☐☐ Man-Day(s) per Month <br> and <br> ☐☐ Hour(s) per Man-Day <br> ☐☐☐ Total Man-Day(s) per Instructions above |

10.  Source Individual's Social Security Number:  ☐☐☐ - ☐☐ - ☐☐☐☐ *

   *    A confidentiality agreement limits disclosure and use of this social security number to persons involved in this case for purposes related to the case.

11.  Source Individual's Gender:        Male ☐    Female ☐

12.  Source Individual's Date of Birth:  ☐☐ / ☐☐ / ☐☐☐☐

## PART 7:  OTHER EXPOSURE TO ASBESTOS (Continued)

**13. If the Source Individual is living, provide that person's mailing address:**

Street/P.O. Box

City                                                            State                     Zip

**14. Source Individual's Relationship to INJURED PARTY:**

The INJURED PARTY is the Source Individual's:

(Spouse, Son, Daughter, etc.)