| PART 8:  THE INJURED PARTY'S LAWSUITS AND BANKRUPTCY CLAIMS |
|---|

**A.  LAWSUITS**

1.  Has a lawsuit been filed by or on behalf of the INJURED PARTY for an asbestos-related personal injury?

    Yes ☐   No ☐

    If "Yes," complete the remainder of Part 8.A as instructed.  If "No," continue to Part 8.B.

2.  Has more than one lawsuit been filed by or on behalf of the INJURED PARTY for an asbestos-related personal injury?

    Yes ☐   No ☐

    If "Yes," copy Part 8.A and complete the Part for each lawsuit filed.

3.  Case Caption:

    ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

4.  Case Number:

    ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

5.  Court Name:

    ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

6.  Case Filing Date: ☐☐ / ☐☐ / ☐☐☐☐
    Month    Day       Year

7.  Did the INJURED PARTY or the PERSONAL REPRESENTATIVE OF THE INJURED PARTY respond to any interrogatories in this lawsuit?

    Yes ☐   No ☐

    If "Yes," attach to this Questionnaire a copy of any and all such interrogatory responses.

8.  Were the INJURED PARTY or the PERSONAL REPRESENTATIVE OF THE INJURED PARTY deposed in this lawsuit?

    Yes ☐   No ☐

    If "Yes," attach to this Questionnaire a copy of any and all such depositions.

9.  a.  Was the lawsuit dismissed?                                    Yes ☐   No ☐

    b.  If "Yes," the basis for dismissal:

    ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

10. a.  Has a judgment or verdict been entered in this lawsuit?       Yes ☐   No ☐

    b.  If "Yes," against what defendant(s) and in what amount(s)?  If against more than five defendants, copy this question before completing it and complete it for all defendants against whom a judgement or verdict was entered.

| Defendant | Amount |
|---|---|
| ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐ | $ ☐☐☐☐☐☐☐☐ . ☐☐ |
| ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐ | $ ☐☐☐☐☐☐☐☐ . ☐☐ |
| ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐ | $ ☐☐☐☐☐☐☐☐ . ☐☐ |
| ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐ | $ ☐☐☐☐☐☐☐☐ . ☐☐ |
| ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐ | $ ☐☐☐☐☐☐☐☐ . ☐☐ |

**PART 8:  THE INJURED PARTY'S LAWSUITS AND BANKRUPTCY CLAIMS (Continued)**

**A.  LAWSUITS (Continued)**

11. a.   Was a settlement agreement reached in this lawsuit?              Yes ☐   No ☐

   b.   If "Yes," were any settlement agreement(s) subject to a binding
        confidentiality agreement?                                        Yes ☐   No ☐

   c.   If "Yes," for each settlement agreement that was the subject of a binding confidentiality agreement, provide the
        total number of defendant(s) who settled the lawsuit pursuant to the agreement, the aggregate settlement amount
        for the agreement, the lowest amount paid by a defendant under the agreement, and the highest amount paid by
        a defendant under the agreement. If there is more than one settlement agreement for the lawsuit, copy this
        question before completing it and attach additional pages.

   Total Number of              Aggregate Settlement   $ ⬚⬚⬚⬚⬚⬚⬚ . ⬚⬚
   Settling Defendant(s): ⬚⬚    Amount:

   $ ⬚⬚⬚⬚⬚⬚⬚ . ⬚⬚                              $ ⬚⬚⬚⬚⬚⬚⬚ . ⬚⬚
   Highest Settlement Amount                      Lowest Settlement Amount

   d.   If "No," or if some defendants settled the lawsuit without a confidentiality agreement, then identify the defendant(s)
        who settled the lawsuit without a confidentiality agreement and in what amount(s). If with more than five
        defendants, copy this question before completing it and complete it for all defendants.

   ⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚       $ ⬚⬚⬚⬚⬚⬚ . ⬚⬚
            Defendant                                      Amount

   ⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚       $ ⬚⬚⬚⬚⬚⬚ . ⬚⬚
            Defendant                                      Amount

   ⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚       $ ⬚⬚⬚⬚⬚⬚ . ⬚⬚
            Defendant                                      Amount

   ⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚       $ ⬚⬚⬚⬚⬚⬚ . ⬚⬚
            Defendant                                      Amount

   ⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚       $ ⬚⬚⬚⬚⬚⬚ . ⬚⬚
            Defendant                                      Amount

   e.   If a settlement agreement was reached with US Gypsum or another Debtor, have any settlement amounts been paid?

   Yes ☐   No ☐

   f.   If "Yes," by what Debtor(s) and in what amount(s)?  If by more than two Debtors, copy this question before
        completing it and complete it for all Debtors who paid a settlement amount.

   ⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚       $ ⬚⬚⬚⬚⬚⬚ . ⬚⬚
            Debtor                                         Amount

   ⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚⬚       $ ⬚⬚⬚⬚⬚⬚ . ⬚⬚
            Debtor                                         Amount

**PART 8:  THE INJURED PARTY'S LAWSUITS AND BANKRUPTCY CLAIMS (Continued)**

**B.  BANKRUPTCY CLAIMS**

1.  Has a claim been submitted by or on behalf of the Injured Party for an asbestos-related personal injury in another bankruptcy case ("Other Bankruptcy") or against a trust established pursuant to a plan of reorganization or liquidation in another bankruptcy case ("Bankruptcy Trust")?

    Yes ☐   No ☐

    If "Yes," complete the remainder of Part 8.B as instructed.

    If "No," continue to Part 9.

2.  Has more than one bankruptcy claim been filed by or on behalf of     Yes ☐   No ☐
    the Injured Party for an asbestos-related personal injury?

    If "Yes," copy Part 8.B and complete the Part for each bankruptcy claim filed.

3.  Other Bankruptcy or Bankruptcy Trust in which the claim was submitted:

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

4.  Date the claim was submitted:  [ ][ ] / [ ][ ] / [ ][ ][ ][ ]
                                    Month    Day     Year

5.  Description of the claim:

    [_____]

6.  Did the Injured Party or the Personal Representative of the Injured Party submit any written claim, including but not limited to a proof of claim form, in the Other Bankruptcy or against the Bankruptcy Trust?

    Yes ☐   No ☐

    If "Yes," attach to this Questionnaire a copy of any and all such written claims.

7.  a.  Was the claim paid?

        Yes ☐   No ☐

    b.  If "Yes," the payment amount:

        $ [ ][ ][ ][ ][ ][ ][ ] . [ ][ ]

8.  a.  Was the claim dismissed or otherwise disallowed or not honored?

        Yes ☐   No ☐

    b.  If "Yes," the basis for disallowance:

        [_____]

**PART 9:  THE SOURCE INDIVIDUAL'S LAWSUITS AND BANKRUPTCY CLAIMS**

**A. LAWSUITS**

If you answered "Yes" to Question 1(b) in Part 7 regarding the INJURED PARTY's exposure to asbestos through a Source Individual, complete this Part as instructed.

If you answered "No," continue to Part 10.

1.  **Has a lawsuit been filed by or on behalf of the Source Individual for an asbestos-related personal injury?**

    Yes [ ]    No [ ]

    If "Yes," complete the remainder of Part 9.A as instructed.

    If "No," continue to Part 9.B.

2.  **Has more than one lawsuit been filed by or on behalf of the Source Individual for an asbestos-related personal injury?**

    Yes [ ]    No [ ]

    If "Yes," copy Part 9.A and complete the Part for each lawsuit filed.

3.  **Case Caption:**

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

4.  **Case Number:**

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

5.  **Court Name:**

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

6.  **Case Filing Date:** [ ][ ] / [ ][ ] / [ ][ ][ ][ ]
                        Month    Day    Year

7.  **Did the Source Individual respond to any interrogatories in this lawsuit?**    Yes [ ]    No [ ]
    If "Yes," attach to this Questionnaire a copy of any and all such interrogatory responses.

8.  **Was the Source Individual deposed in this lawsuit?**    Yes [ ]    No [ ]
    If "Yes," attach to this Questionnaire a copy of any and all such depositions.

9.  a.  **Was the lawsuit dismissed?**    Yes [ ]    No [ ]
    b.  **If "Yes," the basis for dismissal:**

    [                                                                                          ]

10. a.  **Has a judgment or verdict been entered in this lawsuit?**    Yes [ ]    No [ ]
    b.  **If "Yes," against what defendant(s) and in what amount(s)?   If against more than five defendants, copy this question before completing it and complete it for all defendants against whom a judgement or verdict was entered.**

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ] **$** [ ][ ][ ][ ][ ][ ][ ][ ] . [ ][ ]
                 Defendant                              Amount

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ] **$** [ ][ ][ ][ ][ ][ ][ ][ ] . [ ][ ]
                 Defendant                              Amount

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ] **$** [ ][ ][ ][ ][ ][ ][ ][ ] . [ ][ ]
                 Defendant                              Amount

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ] **$** [ ][ ][ ][ ][ ][ ][ ][ ] . [ ][ ]
                 Defendant                              Amount

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ] **$** [ ][ ][ ][ ][ ][ ][ ][ ] . [ ][ ]
                 Defendant                              Amount

**PART 9:  THE SOURCE INDIVIDUAL'S LAWSUITS AND BANKRUPTCY CLAIMS (Continued)**

**A. LAWSUITS (Continued)**

11. a.  Was a settlement agreement reached in this lawsuit?     Yes ☐  No ☐

b.  If "Yes," were any settlement agreement(s) subject to a binding confidentiality agreement?     Yes ☐  No ☐

c.  If "Yes," for each settlement agreement that was the subject of a binding confidentiality agreement, provide the total number of defendant(s) who settled the lawsuit pursuant to the agreement, the aggregate settlement amount for the agreement, the lowest amount paid by a defendant under the agreement, and the highest amount paid by a defendant under the agreement. If there is more than one settlement agreement for the lawsuit, copy this question before completing it and attach additional pages.

Total Number of Settling Defendant(s): ☐☐          Aggregate Settlement Amount: $ ☐☐☐☐☐☐☐ . ☐☐

$ ☐☐☐☐☐☐ . ☐☐          $ ☐☐☐☐☐☐☐ . ☐☐
Highest Settlement Amount                    Lowest Settlement Amount

d.  If "No," or if some defendants settled the lawsuit without a confidentiality agreement, then identify the defendant(s) who settled the lawsuit without a confidentiality agreement and in what amount(s). If with more than five defendants, copy this question before completing it and complete it for all defendants.

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐ . ☐☐
Defendant                                    Amount

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐ . ☐☐
Defendant                                    Amount

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐ . ☐☐
Defendant                                    Amount

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐ . ☐☐
Defendant                                    Amount

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐ . ☐☐
Defendant                                    Amount

e.  If a settlement agreement was reached with US Gypsum or another Debtor, have any settlement amounts been paid?

Yes ☐  No ☐

f.  If "Yes," by what Debtor(s) and in what amount(s)?  If by more than two Debtors, copy this question before completing it and complete it for all Debtors who paid a settlement amount.

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐ . ☐☐
Debtor                                       Amount

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐          $ ☐☐☐☐☐☐ . ☐☐
Debtor                                       Amount

**PART 9:  THE SOURCE INDIVIDUAL'S LAWSUITS AND BANKRUPTCY CLAIMS (Continued)**

**B.  BANKRUPTCY CLAIMS**

1. Has a claim been submitted by or on behalf of the Source Individual for an asbestos-related personal injury in another bankruptcy case ("Other Bankruptcy") or against a trust established pursuant to a plan of reorganization or liquidation in another bankruptcy case ("Bankruptcy Trust")?

   Yes ☐  No ☐

   If "Yes," complete the remainder of Part 9.B as instructed.

   If "No," continue to Part 10.

2. Has more than one bankruptcy claim been filed by or on behalf of the Source Individual for an asbestos-related personal injury?

   Yes ☐  No ☐

3. Other Bankruptcy or Bankruptcy Trust in which the claim was submitted:

   [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

4. Date the claim was submitted:  [ ][ ] / [ ][ ] / [ ][ ][ ][ ]
   Month    Day    Year

5. Description of the claim: [                    ]

6. Did the Source Individual submit any written claim, including but not limited to a proof of claim form, in the Other Bankruptcy or against the Bankruptcy Trust?

   Yes ☐  No ☐

   If "Yes," attach to this Questionnaire a copy of any and all such written claims.

7. a. Was the claim paid?

   Yes ☐  No ☐

   b. If "Yes," the payment amount:

   $ [ ][ ][ ][ ][ ][ ][ ][ ] . [ ][ ]

8. a. Was the claim dismissed or otherwise disallowed or not honored?

   Yes ☐  No ☐

   b. If "Yes," the basis for disallowance:

   [                    ]

**PART 10: CERTIFICATION THAT INFORMATION IS TRUE AND COMPLETE**

Make sure that this Questionnaire is certified as true and complete by the CLAIMANT and by any attorney that the CLAIMANT has. Both the CLAIMANT (either the INJURED PARTY or the PERSONAL REPRESENTATIVE OF THE INJURED PARTY) and any attorney for the CLAIMANT must sign below.

1.  Use the checklist below to indicate which document(s) you are submitting with this Questionnaire and which you seek reimbursement for. DEBTORS will reimburse your reasonable expenses incurred in copying documents that you submit. Attach to this Questionnaire a receipt that shows the copy costs you incurred.

☐   Medical reports or records regarding a diagnosis alleged in Part 2     ☐   Copy costs sought

☐   Responses to interrogatories in lawsuits indicated in Parts 8 or 9     ☐   Copy costs sought

☐   Radiographic evaluations, such as x-rays or CT scans     ☐   Originals attached as required

☐   Depositions in lawsuits indicated in Parts 4, 8, or 9     ☐   Copy costs sought

☐   Pulmonary function test (PFT) reports, including spirogram tracings, FORCED VITAL CAPACITY (FVC), FORCED EXPIRATORY VOLUME (FEV₁), TOTAL LUNG CAPACITY (TLC), and DIFFUSION CAPACITY (DLCO OR D$_{CO}$)     ☐   Copy costs sought

☐   Written claims, including proof of claim forms, in another bankruptcy or against a bankruptcy trust indicated in Parts 8 or 9     ☐   Copy costs sought

☐   Written evidence of the authority of the PERSONAL REPRESENTATIVE OF THE INJURED PARTY to act on behalf of the INJURED PARTY (if this Questionnaire is submitted by the PERSONAL REPRESENTATIVE)     ☐   Copy costs sought

☐   Death certificate (if the INJURED PARTY is deceased)     ☐   Copy costs sought

Total amount of copy costs sought:     $ ☐☐☐ . ☐☐
**Amount**

☐   A receipt showing copy costs is attached.

2.  Complete and sign the Authorization for Release of Earnings Information and Employment Records From the Social Security Administration contained in Appendix A.

A confidentiality agreement entered in this case limits disclosure and use of the records and information received from the Social Security Administration pursuant to the Authorization. See Instruction No. 11 on page 3.

☐   The executed release is attached.

3.  I have reviewed the information submitted on this Questionnaire and all supporting documents submitted with it. I declare, under penalty of perjury, that, to the best of my knowledge, the information submitted is accurate and complete.

☐☐ / ☐☐ / ☐☐☐☐     _____
Month   Day   Year     (Signature of CLAIMANT)

☐☐ / ☐☐ / ☐☐☐☐     _____
Month   Day   Year     (Signature of CLAIMANT's attorney, if any)

Review your Questionnaire to ensure that it is true and complete and that you have attached all supporting documentation. This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your claim. The penalty for knowingly and fraudulently making a false statement under penalty of perjury is a fine of up to $500,000 or imprisonment for up to five years, or both.

**APPENDIX A**

**AUTHORIZATION FOR RELEASE OF EARNINGS INFORMATION AND EMPLOYMENT RECORDS FROM THE SOCIAL SECURITY ADMINISTRATION**

AUTHORIZATION:

I hereby authorize the Social Security Administration to furnish to the law firm of Cooley Godward LLP, its partners, employees and agents ("Cooley Godward"), any and all earnings information and employment records ("SSA Employment Records") pertaining to:

Name:

Other Name(s) Used (Including Maiden Name):

Social Security Number          Date of Birth

I hereby further authorize Cooley Godward to prepare and sign a Request for Social Security Earnings Information (Form SSA-7050-F4) on my behalf in order to permit Cooley Godward to request my SSA Employment Records from the Social Security Administration. I acknowledge that I was provided with a blank copy of a Request for Social Security Earnings Information form (Form SSA-7050-F4) for my reference.

AUTHORIZED PERSONS AND ENTITIES:

This release authorizes Cooley Godward to obtain, receive and use my SSA Employment Records in connection with the litigation entitled *In re USG Corporation*, United States District Court for the District of Delaware, Case Nos. 01-02094 (JKF), 04-1559 (JFC) and 04-1560 (JFC) ("USG Litigation").

A confidentiality agreement entered into by the parties in the USG Litigation provides that the following information may be disclosed only to persons involved in the case, that it will be held in strict in confidence by persons who receive it, and that it will be used only for purposes related to the case: (1) my social security number; (2) my SSA Employment Records; and (3) information contained in my SSA Employment Records when disclosed in conjunction with my name, address, or social security number.

DURATION:

This authorization shall become effective immediately and shall expire upon final resolution of the USG Litigation identified above.

SIGNATURE:

Signature          Date

If the Authorization is signed by a Personal Representative of the individual, a description of such representative's authority to act for the individual.

Form Approved
OMB No. 0960-0525

# REQUEST FOR SOCIAL SECURITY EARNINGS INFORMATION

\*Use This Form If You Need

**1. Certified/Non-Certified Detailed Earnings Information**

Includes periods of employment or self-employment and the names and addresses of employers.

**OR**

**2. Certified Yearly Totals of Earnings**

Includes total earnings for each year but does not include the names and addresses of employers.

---

**DO NOT USE THIS FORM FOR:**

**Non-certified yearly totals of earnings**

This service is free to the public.

These totals can be obtained by calling 1-800-772-1213 to receive Form SSA-7004, Request for Earnings and Benefit Estimate Statement.

---

**PRIVACY ACT NOTICE:** We are authorized to collect this information under section 205 of the Social Security Act, and the Federal Records Act of 1950 (64 Stat. 583). It is needed so we can identify your records and prepare the statement you request. You do not have to furnish the information, but failure to do so may prevent your request from being processed.

**PAPERWORK REDUCTION ACT:** This information collection meets the clearance requirements of 44 U.S.C. §3507, as amended by Section 2 of the Paperwork Reduction Act of 1995. You are not required to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take you about 11 minutes to read the instructions, gather the necessary facts, and answer the questions.

## INFORMATION ABOUT YOUR REQUEST

- **How Do I Get This Information?**

  You need to complete the attached form to tell us what information you want.

- **Can I Get This Information For Someone Else?**

  Yes, if you have their written permission. For more information, see page 3.

- **Who Can Sign On Behalf Of The Individual?**

  The parent of a minor child, or the legal guardian of an individual who has been declared legally incompetent, may sign if he/she is acting on behalf of the individual.

- **Is There A Fee For This Information?**

  **1. Certified/Non-Certified Detailed Earnings Information**

  Yes, we usually charge a fee for detailed information. In most cases, this information is used for purposes NOT directly related to Social Security such as for a private pension plan or personal injury suit. The fee chart on page 3 gives the amount of the charge.

  Sometimes, there is no charge for detailed information. If you have reason to believe your earnings are not correct (for example, you have previously received earnings information from us

and it does not agree with your records), we will supply you with more detail for the period in question. Occasionally, earnings amounts are wrong because an employer did not correctly report earnings or earnings are credited to the wrong person. In situations like these, we will send you detailed information, at no charge, so we can correct your record.

Be sure to show the year(s) involved on the request form and explain why you need the information. If you do not tell us why you need the information, we will charge a fee.

We will certify the detailed earnings information for an additional fee of $15.00. Certification is usually not necessary unless you plan to use the information in court.

**2. Certified Yearly Total of Earnings**

Yes, there is a fee of $15 to certify yearly totals of earnings. Cetification is usually not necessary unless you plan to use the information in court.

**3. Method of Payment**

Enclose a check or money order for the entire fee required. Payment can also be made by credit card. To do so, complete page 4 of this form and return it with your request form.

---

## REQUEST FOR SOCIAL SECURITY EARNINGS INFORMATION

1. From whose record do you need the earnings information?

   Print the Name, Social Security Number (SSN), and date of birth below.

   Name _____

   Social Security Number _____

   Other Name(s) Used (Include Maiden Name) _____

   Date of Birth (Mo/Day/Yr) _____

2. What kind of information do you need?

   ☐ **Detailed Earnings Information** (If you check this block, tell us below why you need this information.)

   For the period(s)/year(s): _____

   _____

   ☐ **Certified Total Earnings For Each Year.** (Check this box only if you want the information certified. Otherwise, call 1-800-772-1213 to request Form SSA-7004, Request for Earnings and Benefit Estimate Statement)

   For the year(s): _____

3. If you owe us a fee for this detailed earnings information, enter the amount due using the chart on page 3 · · · · · · · · · · · · · · · · · · · · · · · · · A. $ _____

   Do you want us to certify the information?          ☐ Yes    ☐ No

   If yes, enter $15.00 · · · · · · · · · · · · · · · · · · · · · · · · · · · B. $ _____

   ADD the amounts on lines A and B, and enter the TOTAL amount · · · · · · · · · · · · · · · · · · · · · · · · C. $ _____

   • You can pay by CREDIT CARD by completing and returning the form on page 4, or
   • Send your CHECK or MONEY ORDER for the amount on line C with the request and make check or money order payble to "Social Security Administration"
   • DO NOT SEND CASH.

4. I am the individual to whom the record pertains (or a person who is authorized to sign on behalf of that individual). I understand that any false representation to knowingly and willfully obtain information from Social Security records is punishable by a fine of not more than $5,000 or one year in prison.

   SIGN your name here
   (Do not print)  > _____          Date _____

   Daytime Phone Number _____
   (Area Code)  (Telephone Number)

5. Tell us where you want the information sent. (Please print)

   Name _____    Address _____

   City, State & Zip Code _____

6. Mail Completed Form(s) To:          Exception: If using private contractor (e.g., FedEx) to mail form(s), use:

   Social Security Administration
   Division of Earnings Record Operations
   P.O. Box 33003
   Baltimore Maryland 21290-3003

   Social Security Administration
   Division of Earnings Record Operations
   300 N. Greene St.
   Baltimore Maryland 21290-0300

Form **SSA-7050-F4** (1-2004) EF (01-2004)                    2

## REQUEST FOR SOCIAL SECURITY EARNINGS INFORMATION

How Much Do I Have to Pay For Detailed Earnings?

1. Count the number of years for which you need detailed earnings information. Be sure to add in both the first and last year requested. However, do not add in the current calendar year since this information is not yet available.

2. Use the chart below to determine the correct fee.

| Number of Years Requested | Fee | Number of Years Requested | Fee | Number of Years Requested | Fee |
|---|---|---|---|---|---|
| 1 | $15.00 | 15 | $43.75 | 28 | $64.50 |
| 2 | 17.50 | 16 | 45.50 | 29 | 66.00 |
| 3 | 20.00 | 17 | 47.25 | 30 | 67.50 |
| 4 | 22.50 | 18 | 49.00 | 31 | 68.75 |
| 5 | 25.00 | 19 | 50.75 | 32 | 70.00 |
| 6 | 27.00 | 20 | 52.50 | 33 | 71.25 |
| 7 | 29.00 | 21 | 54.00 | 34 | 72.50 |
| 8 | 31.00 | 22 | 55.50 | 35 | 73.75 |
| 9 | 33.00 | 23 | 57.00 | 36 | 75.00 |
| 10 | 35.00 | 24 | 58.50 | 37 | 76.25 |
| 11 | 36.75 | 25 | 60.00 | 38 | 77.50 |
| 12 | 38.50 | 26 | 61.50 | 39 | 78.75 |
| 13 | 40.25 | 27 | 63.00 | 40 | 80.00 |
| 14 | 42.00 | | | | |

*For Reference Only Do Not Fill*

---

**For Requests Over 40 Years, Please Add 1 Dollar for Each Additional Year.**

---

- **Whose Earnings Can Be Requested**

  1. **Your Earnings**

     You can request earnings information from your own record by completing the attached form; we need your handwritten signature. If you sign with an "X", your mark must be witnessed by two disinterested persons who must sign their name and address.

  2. **Someone Else's Earnings**

     You can request earnings information from the record of someone else if that person tells us in writing to give the information to you. This writing or "authorization" must be presented to us within 60 days of the date it was signed by that person.

  3. **A Deceased Person's Earnings**

     You can request earnings information from the record of a deceased person if you are the legal representative of the estate, a survivor (that is, the spouse, parent, child, divorced spouse of divorced parent), or an individual with a material interest (example-financial) who is an heir at law, next of kin, beneficiary under the will or donee of property of the decedent.

     Proof of death must be included with your request. Proof of appointment as representative or proof of your relationship to the deceased must also be included.

---

## YOU CAN MAKE YOUR PAYMENT BY CREDIT CARD

As a convenience, we offer you the option to make your payment by credit card. However, regular credit card rules will apply. You may also pay by check or money order.

Please fill in all the information below and return this form along with your request to:

Social Security Administration
Division of Earnings Record Operations
P.O. Box 33003
Baltimore Maryland 21290-3003

**Exception:**
If using private contractor (e.g., FedEx) to mail form(s), use:

Social Security Administration
Division of Earnings Record Operations
300 N. Greene St.
Baltimore Maryland 21290-0300

### Note: Please read Paperwork/Privacy Act Notice

| CHECK ONE | ☐ Visa    ☐ American |
|---|---|
| | ☐ MasterCard    ☐ Discover    ☐ Diners Card |

Credit Card Holder's Name
(Enter the name from the credit card)
_____ First Name, Middle Initial, Last Name

Credit Card Holder's Address
_____ Number & Street
_____ City, State, & Zip Code

Daytime Telephone Number
_____ Area Code    Telephone Number

Credit Card Number
_____

Credit Card Expiration Date
_____ Month    Year

Amount Charged
_____

Credit Card Holder's Signature
_____

*For Reference Only*
*Do Not Fill Out*

| DO NOT WRITE IN THIS SPACE OFFICE USE ONLY | Authorization |
|---|---|
| | Name                                    Date |
| | Remittance Control # |

### PRIVACY ACT NOTICE

The Social Security Administration (SSA) has authority to collect the information requested on this form under section 205 of the Social Security Act. Giving us this information is voluntary. You do not have to do it. We will need this information only if you choose to make payment by credit card. You do not need to fill out this form if you choose another means of payment (for example, by check or money order).

If you choose the credit card payment option, we will provide the information you give us to the banks handling your credit card account and SSA's account. We may also provide this information to another person or government agency to comply with federal laws requiring the release of information from our records. You can find these and other routine uses of information provided to SSA listed in the Federal Register. If you want more information about this, you may call or write any Social Security Office.

Form **SSA-7050-F4** (1-2004) EF (1-2004)                4

# APPENDIX B
## COMPANY HISTORY ABOUT PRODUCTS CONTAINING ASBESTOS

**United States Gypsum Company** is a subsidiary of USG Corporation. United States Gypsum Company was formed in 1901 and is in the business of manufacturing and selling building products. Some of the building products manufactured and sold by United States Gypsum Company from 1920 through 1978 contained asbestos. Products that may have contained asbestos during this period include some wall and ceiling plasters, spray fireproofing, fire-rated ceiling tiles, decorative textures, joint compound, and industrial insulation. Most of these products did not contain asbestos at all times from 1920 through 1978. No product contained asbestos as part of the product formulation after 1978.

A list of trade names of products manufactured by United States Gypsum Company during the period from 1920 through 1978 that may have contained asbestos includes, but may not be limited to, the following:

A-B Tex Texture Paint
ACOUSTONE 120 Ceiling Tiles
ACOUSTONE 180 Ceiling Tiles
AUDICOTE Acoustical Plaster
Aggregated Spray Finish, White
CHINA GLAZE Siding
Column Fire Board
Concrete Ceiling Texture
DURABOND Joint Compound
Exterior Texture Wallboard Finish
Fire Door Coreboard
Hi-LITE Acoustical Plaster
IMPERIAL "QT" (Spray) Texture Finish
KEMIDOL Joint Compound
K-FAC 19 Block Insulation
K-FAC Block Insulation
MAYFAIR Shake Siding
Multi-Purpose Texture Finish
ORIENTAL Exterior Finish Stucco
ORIENTAL Interior Finish
PAC-TEX Texture Paint
PERF-A-TAPE Joint Compound
PYROBAR Mortar Mix
USG "QT" Simulated Acoustical Spray Texture
Ready-Mixed Imperial "QT" Simulated Acoustical
Spray Texture
RED TOP Acoustical Plaster
RED TOP BONDCRETE Plaster-Basecoat
RED TOP Cover Coat Finish Plaster

RED TOP Firecode D Plaster
RED TOP Firecode "V" Plaster
RED TOP Gypsum Plaster
RED TOP Patching Plaster
RED TOP Sanded Wall Plaster
RED TOP Strucolite Plaster
RED TOP Trowel Finish
RED TOP Wood Fiber Plaster
REGENCY Shingles
SABINITE Acoustical Plaster
SHEETROCK Radiant Heat Filler-Machine Application
SHEETROCK Radiant Heat Simulated Acoustical Texture
Simulated Acoustical Spray Texture/Finish
Special Texture Paint
SPRAYDON Powercote
SPRAYDON Standard A
SPRAYDON Standard G
STRUCTOLITE Plaster
Superhard Spray Texture Finish
SUPERTITE Roofing Products
TEXOLITE Block Filler
TEXOLITE Dry Fill
TEXOLITE Drywall Surfacer
TEXTONE Texture Finish
THERMALUX Radiant Heating Panels
USG Joint Compound
Wainscoat Trowel Finish Plaster

United States Gypsum Company also manufactured other products in the following generic categories that may have contained asbestos:

Adhesives
Asbestos Board
Asbestos Paper
Insulating Cement

Joint Compound
Pipecovering
Roofing Products
Cement Siding Shingles

**USG Corporation** was formed in 1985 and is the parent company of various debtors in this chapter 11 proceeding. USG Corporation has never manufactured or sold any building products. Various subsidiaries of USG Corporation manufactured or sold building products that contained asbestos at various times in the past.

**L&W Supply Company,** a subsidiary of USG Corporation, is a distributor of building materials manufactured by United States Gypsum Company and other companies. L&W Supply Company was created in 1971 as a subsidiary of United States Gypsum Company and, since 1985, has been a subsidiary of USG Corporation. In the 1970s, some of the products distributed by L&W Supply Corporation, primarily joint compound and roofing materials, contained asbestos. Since its formation in 1971, L&W Supply Company distribution centers have operated under different business names in different locations. A list of these business names is available on the USG claims website at http://www.usgclaims.com/LandWbusiness_names.asp.

**Beadex Manufacturing, LLC,** a subsidiary of United States Gypsum Company, manufactured and sold joint compound containing asbestos from 1963 through 1978. Distribution of products that contained asbestos is believed to have been limited to Washington, Oregon, Idaho, Alaska, and possibly Colorado.

**USG Interiors, Inc.,** a subsidiary of USG Corporation, was formed in 1986. USG Interiors has manufactured mineral fiber ceiling tiles and suspension systems, mineral fiber insulation, access floors, and wall partition systems. None of the products manufactured or sold by USG Interiors contained asbestos as part of the product formulation.

# APPENDIX C
## STANDARD OCCUPATIONAL CLASSIFICATION CODES[1]

### Healthcare Practitioners and Technical Occupations

1. Dentists, General

### Protective Service Occupations

2. Fire Fighters

### Building and Grounds Cleaning and Maintenance Occupations

3. Janitors and Cleaners, Except Maids and Housekeeping Cleaners

### Construction and Extraction Occupations

4. Asbestos Removal Workers[2]
5. Boilermakers
6. Brickmasons and Blockmasons
7. Carpenters
8. Carpet Installers
9. Cement Masons and Concrete Finishers
10. Construction and Building Inspectors
11. Construction Laborers
12. Continuous Mining Machine Operators
13. Drywall and Ceiling Tile Installers
14. Drywall Finishers (Tapers)
15. Electricians
16. Elevator Installer & Repairers
17. First-Line Supervisors/Managers of Construction Trades and Extraction Workers
18. Floor Layers, Except Carpet, Wood, and Hard Tiles
19. Floor Sanders and Finishers
20. Glaziers
21. Hazardous Materials Removal Workers
22. Helpers – Brickmasons, Blockmasons, Stonemasons, and Tile and Marble Setters
23. Helpers – Electricians
24. Helpers – Extraction Workers
25. Helpers – Painters, Paperhangers, Plasterers, and Stucco Masons
26. Helpers – Pipelayers, Plumbers, Pipefitters, and Steamfitters
27. Insulation Workers
28. Mine Cutting and Channeling Machine Operators
29. Miner 1[2]
30. Operating Engineers and Other Construction Equipment Operators
31. Painters, Construction and Maintenance
32. Paperhangers
33. Pipelayers
34. Plasterers and Stucco Masons
35. Plumbers, Pipefitters, and Steamfitters
36. Rail-Track Laying and Maintenance Equipment Operators
37. Reinforcing Iron and Rebar Workers
38. Rock Splitters, Quarry
39. Roof Bolters, Mining
40. Roofers
41. Service Unit Operators, Oil, Gas, and Mining
42. Sheet Metal Workers
43. Stonemasons
44. Structural Iron and Steel Workers
45. Terrazzo Workers and Finishers
46. Tile and Marble Setters

### Installation, Maintenance, and Repair Occupations

47. Automotive Service Technicians and Mechanics
48. Boiler House Mechanics[2]
49. Bus and Truck Mechanics and Diesel Engine Specialists
50. Control Valve Installers and Repairers, Except Mechanical Door
51. Electrical and Electronics Repairers, Powerhouse, Substation, and Relay
52. Fabric Menders, Except Garment
53. Heating, Air Conditioning, and Refrigeration Mechanics and Installers
54. Industrial Machinery Mechanics
55. Maintenance and Repair Workers, General
56. Maintenance Workers, Machinery

57. Millwrights
58. Mobile Heavy Equipment Mechanics, Except Engines
59. Motorcycle Mechanics
60. Rail Car Repairers
61. Refractory Materials Repairers, Except Brickmasons
62. Riggers
63. Valve Repairers[2]

### Production Occupations

64. Cabinetmakers and Bench Carpenters
65. Chemical Equipment Operators and Tenders
66. Coating, Painting, and Spraying Machine Setters, Operators, and Tenders
67. Crushing, Grinding and Polishing Machine Setters, Operators and Tenders
68. Cutters and Trimmers, Hand
69. Cutting, Punching, and Press Machine Setters, Operators, and Tenders, Metal and Plastic
70. Dental Laboratory Technician
71. Engine and Other Machine Assemblers
72. Foundry Mold and Coremakers
73. Gas Plant Operators
74. Lay-Out Workers, Metal and Plastic
75. Machinists
76. Metal-Refining Furnace Operators and Tenders
77. Mixing and Blending Machine Setters, Operators, and Tenders
78. Molders, Shapers, and Casters, Except Metal and Plastic
79. Painting, Coating and Decorative Worker
80. Petroleum Pump System Operators, Refinery Operators, and Gaugers
81. Pourers and Casters, Metal
82. Power Plant Operators
83. Prepress Technicians and Workers
84. Printing Machine Operators
85. Sawing Machine Setters, Operators, and Tenders, Wood
86. Stationary Engineers and Boiler Operators
87. Structural Metal Fabricators and Fitters
88. Textile Cutting Machine Setters, Operators and Tenders
89. Textile Knitting and Weaving Machine Setters, Operators and Tenders
90. Textile Winding, Twisting, and Drawing Out Machine Setters, Operators, and Tenders
91. Tool and Die Makers
92. Welders, Cutters, Solderers, and Brazers
93. Welder, Production Line[2]
94. Welding, Soldering, and Brazing Machine Setters, Operators and Tenders

### Transportation and Material Moving Occupations

95. Cleaners of Vehicles and Equipment
96. Conveyor Operators and Tenders
97. Crane and Tower Operators
98. Excavating and Loading Machine and Dragline Operators
99. Industrial Truck and Tractor Operators
100. Laborers and Freight, Stock, and Material Movers, Hand
101. Loading Machine Operators, Underground Mining
102. Locomotive Engineers
103. Locomotive Firers
104. Pump Operators, Except Wellhead Pumpers
105. Rail Yard Engineers, Dinkey Operators, and Hostlers
106. Railroad Conductors and Yardmasters
107. Railroad Car Inspectors[2]
108. Sailors and Marine Oilers
109. Ship Engineers
110. Shuttle Car Operators
111. Tank Car, Truck, and Ship Loaders
112. Transportation Inspectors
113. Truck Drivers, Heavy and Tractor Trailer
114. Truck, Drivers, Light or Delivery Service

115. **Other (please specify)**

---

[1] Codes are based on U.S. Department of Labor, Bureau of Labor Statistics, List of Standard Occupation Classifieds, found at http://stats.bls.gov/oes/1999/oes_stru.htm unless otherwise indicated.

[2] Codes are based on U.S. Department of Labor, Dictionary of Occupational Titles, Fourth Edition, Revised 1991 found at http://www.oalj.dol.gov/public/dot/refrnc/dotalpha.htm with definitions at http://www.oalj.dol.gov/libdot.htm#definitions.

# APPENDIX D
## STANDARD INDUSTRY CLASSIFICATION CODES[3]

A.    Agriculture, Forestry & Fishing

B.1    Mining & Milling (asbestos)
B.2    Mining & Milling (non-asbestos)

C.    Construction

D.1    Manufacturing – Asbestos Containing Products
D.2    Manufacturing – Boilers
D.3    Manufacturing – Chemicals
D.4    Manufacturing – Insulation (asbestos containing)
D.5    Manufacturing – Insulation (non-asbestos containing)
D.6    Manufacturing – Petroleum Refining and Related Industries
D.7    Manufacturing – Plastic Products
D.8    Manufacturing – Rubber
D.9    Manufacturing – Textiles (asbestos containing)
D.10   Manufacturing – Textiles (non-asbestos containing)
D.11   Manufacturing – Transportation Equipment (other than shipbuilding or shipbreaking)
D.12   Manufacturing – Transportation Equipment (shipbuilding or shipbreaking)
D.13   Manufacturing – Other (please specify product)

E.1    Transportation – Electric, Gas, and Sanitary Services
E.2    Transportation – Railroad
E.3    Transportation – Water
E.4    Transportation – Other (please specify)

F.    Wholesale Trade

G.    Retail Trade

H.    Finance, Insurance, and Real Estate

I.1    Services – Automotive Repair
I.2    Services – Miscellaneous Repair
I.3    Services – Other (please specify)

J.    Public Administration

K.    Military (Non-Navy)

L.    Navy

M.    Other (please specify)

---

[3] Codes are based on OSHA, U.S. Department of Labor, Standard Industry Classifications, Division Structure, at http://www.osha.gov/oshstats/sicser.html.

||< <  ||||||||||| # > > ||| - <<SEQ>>
<<NAME>>
<<ADDRESS1>>
<<ADDRESS2>>
<<CITY STATE ZIP>>
<<COUNTRY>>

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | **Chapter 11** |
| **USG CORPORATION,** | : | |
| a Delaware corporation, et al., | : | **Jointly Administered** |
| | : | **Case No. 01-2094 (JKF)** |
| Debtors. | : | |
| | : | |
| ——————————————— | : | |
| **USG CORPORATION, et al.,** | : | |
| | : | |
| Movant | : | |
| | : | |
| v. | : | |
| | : | |
| **OFFICIAL COMMITTEE OF** | : | **Civil Action No. 04-1559 (JFC)** |
| **ASBESTOS PERSONAL INJURY** | : | **Civil Action No. 04-1560 (JFC)** |
| **CLAIMANTS, et al.,** | : | |
| | : | |
| Respondents. | : | |

## STIPULATED AGREEMENT AND PROTECTIVE ORDER REGARDING CONFIDENTIALITY OF CERTAIN CLAIMANT INFORMATION

| | |
|---|---|
| COOLEY GODWARD LLP | RICHARDS, LAYTON, & FINGER, P.A. |
| Stephen C. Neal (CA 170085) | Daniel J. DeFranceschi (DE No. 2732) |
| Scott D. Devereaux (CA 146050) | Paul Heath (DE No. 3704) |
| Five Palo Alto Square | One Rodney Square |
| 3000 El Camino Real | P.O. Box 551 |
| Palo Alto, CA 94306 | Wilmington, Delaware 19899 |
| Tel: (650) 843-5000 | Tel: (302) 651-7700 |

JONES DAY
David G. Heiman (OH 0038271)
Brad B. Erens (IL 6206864)
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Tel: (216) 586-3939

*Counsel for Debtors*

*Date filed: 10/24/05*
*Docket #: 62 & 67*

This Agreement is entered into this 18th day of October, 2005, by, between and among USG CORPORATION, a Delaware Corporation, UNITED STATES GYPSUM COMPANY, a Delaware Corporation, USG INTERIORS, INC., a Delaware Corporation, USG INTERIORS INTERNATIONAL, INC., an Ohio Corporation, L&W SUPPLY CORPORATION, a Delaware Corporation, BEADEX MANUFACTURING, LLC, a Delaware Corporation, B-R PIPELINE COMPANY, a Delaware Corporation, LA MIRADA PRODUCTS CO., INC., an Ohio Corporation, USG INDUSTRIES, INC., a Delaware Corporation, USG PIPELINE COMPANY, a Delaware Corporation, and STOCKING SPECIALISTS, INC., a Delaware Corporation (collectively "Debtors"), the Official Committee of Unsecured Creditors (the "Unsecured Committee") and the Statutory Committee of Equity Security Holders (the "Equity Committee"), Dean Trafelet as the Court-appointed representative of future asbestos claimants (the "Futures Representative") in the Debtors' Chapter 11 cases, the Official Committee of Asbestos Personal Injury Claimants (the "ACC"), and the Official Committee of Asbestos Property Damage Claimants (the "PD Committee") (all collectively the "Parties"), Cooley Godward LLP (Debtors' counsel), Kaye Scholer LLP (the Futures Representative's counsel), Caplin & Drysdale, Chartered (the ACC's counsel), Bilzin Sumberg Baena Price & Axelrod LLP (the PD Committee's counsel), Weil, Gotshal & Manges LLP (the Equity Committee's counsel), and Stroock & Stroock & Lavan LLP (the Unsecured Committee's counsel).

WHEREAS, the Court has approved a discovery questionnaire to be served upon a sample of Debtors' asbestos personal injury claimants (the "Sample Claimants") that will require the Sample Claimants to disclose their own, and potentially other persons', social security numbers and certain other personal information, and to make that information available

1

NDF

to all the above-referenced parties to review in connection with the estimation of Debtors' asbestos personal injury liabilities (the "Estimation"); and

WHEREAS, the Parties desire to establish confidentiality arrangements in connection with the Sample Claimant discovery; and

WHEREAS, the Parties wish to expedite the production of such information and to implement procedures to assure protection of confidential material included in the Sample Claimant discovery, and to facilitate the prompt resolution over disputes concerning confidentiality;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, the Parties agree as follows:

1.      Definitions as used in this Agreement.

(a)      "Person" means any natural person or legal entity of any kind or nature and includes the person and the person's parents, subsidiaries, affiliates, heirs, owners, shareholders, partners, directors, officers, employees, representatives, agents, successors and assigns.

(b)      "Document" or "Documents" means all written, recorded, electronic, digitized, computerized or graphic material, produced in connection with the Sample Claimant discovery.

(c)      "Protected Information" means: (1) any social security numbers collected in the Sample Claimant discovery, (2) any documents pertaining to the Sample Claimants that any party receives from the United States Social Security Administration (the "SSA Documents"), (3) any information contained in the SSA Documents when disclosed in conjunction with a Sample Claimant's name, address, or social security number, and (4) any medical records or medical information collected in the Sample Claimant discovery when disclosed in conjunction with a Sample Claimant's name, address, or social security number.

2

NDF

2.     Non-Disclosure of the Protected Information.

The Parties agree that the Protected Information contained in the Sample Claimant discovery, may not be disclosed to any Person or used in any manner except as provided herein.

3.     Permissible Use and Disclosures.

(a)     The Protected Information may be used and disclosed only in connection with the Estimation.

(b)     The Protected Information may be disclosed only to:

(i)     the partners, associates, secretaries, legal assistants, and any person in the regular employ of counsel for any Party (including, without limitation, counsel to the Futures Representative, the ACC, the Debtors, the Equity Committee, the PD Committee, and the Unsecured Committee) and to the attorneys acting on behalf of the members of the Parties in their capacity as official representatives of such members, to the extent reasonably necessary to render professional services in connection with the Estimation; and

(ii)     court officials involved in the Estimation (including court reporters and persons operating video equipment at depositions);

(iii)     any person designated by the Court in the interest of justice upon such terms as the Court may deem proper;

(iv)     witnesses at deposition or trial, or in the preparation of witnesses, and their counsel in connection with the Estimation;

(v)     outside consultants or experts, and their employees and support personnel, engaged by any Party or its counsel for the purpose of assisting in the Estimation;

(vi)     third-party contractors engaged in one or more aspects of copying, organizing, filing, coding, converting, storing, or retrieving data or designing programs for

3

NDF

handling data connected with the Estimation, including the performance of such duties in relation to a computerized litigation support system;

    (vii)  any other person agreed to in writing by Parties.

  (c)  However, before disclosure of any Protected Information is made to any natural person or entity described in subparagraphs 3(b)(iv)–(vii) such person -- or in the case of an entity, a duly authorized representative of such entity who shall be personally responsible for the entity's compliance with this Agreement -- shall sign an undertaking in the form attached as Exhibit A to this Agreement certifying:

    (i)  that the signatory has read, understands, and will abide by the terms of this Agreement;

    (ii)  that the signatory will not disclose the Protected Information contained therein, to any person not authorized by this Agreement to receive, disclose or use the Protected Information and will not use the Protected Information except as permitted under this Agreement; and

    (iii)  that the signatory consents to the jurisdiction of the United States District Court for the District of Delaware, for any action to enforce the provisions of such undertaking, and consents to injunctive and legal relief to enforce the terms of this Agreement and the undertakings set forth in this Agreement; and

  (d)  The undertakings obtained pursuant to this subparagraph shall be binding on any person associated with the signatory, and such signatory shall take appropriate measures to advise all such persons that they are bound by the terms of this Agreement and of their obligations under it concerning the confidentiality and protection of the Protected Information and the proper use and handling thereof.

4

NDF

(e)    The undertakings obtained pursuant to this subparagraph shall be deemed work product, and the person who obtains them shall retain them during the course of the Estimation, however, that such undertakings shall be subject to production in any action or proceeding to enforce the terms of this Agreement or to recover for any breach of this Agreement.

4.    <u>Protected Information in Depositions and Interviews.</u>

(a)    Notwithstanding anything in this Agreement to the contrary, a deponent or interviewee may during the deposition or interview in connection with the Estimation, be shown, and examined about the Protected Information if the provisions of paragraph 3 are complied with.

(b)    Persons, including Parties, deponents and interviewees may, within ten (10) calendar days after receiving a transcript or written or recorded recapitulation of a deposition or interview, designate pages (and exhibits thereto) as confidential and subject to this Agreement to the extent they contain Protected Information (as defined above).  Such Protected Information may be designated only by marking the portions of the pages that are confidential and inserting on such pages the legend: "CONFIDENTIAL."  Until the expiration of the 10-day period during which designations may be made, the entire deposition will be treated as Protected Information subject to this Agreement.  If a designation is made, confidential portions and exhibits, if filed, shall be filed under seal pursuant to paragraph 5, separate from the portions and exhibits not so marked and all copies shall be treated as covered by this Agreement.  If any depositions or interviews are videotaped, those portions of the videotape corresponding to portions of the deposition transcript or written or recorded recapitulation designated as confidential shall be afforded the same status.

NDF

5.      Filings Containing or Revealing the Protected Information.  Any filing containing or revealing the Protected Information shall be filed separately under seal in an envelope marked with the title (or a general description) of its contents and the legend:  "Filed Under Seal Pursuant to Agreement Regarding Confidentiality of Claimant Social Security Information."  If filed under seal, the filing shall remain under seal unless otherwise ordered by the Court.  In such a case, the Party making the filing may, at its election, file a publicly redacted version of such filing, omitting the part thereof that reveals the detailed contents of the Protected Information.

6.      Protected Information at Estimation Hearings.  The Protected Information may be offered in evidence at any Court Estimation hearing pursuant to the terms of paragraph 5 or such other procedure as may be ordered by the Court.

7.      Client Consultation.  Nothing in this Agreement shall prevent or otherwise restrict counsel from rendering advice to their clients and, in the course thereof, relying on counsel's examination of the Protected Information or their examination by experts, consultants, and others assisting counsel in the Estimation; provided, however, that in rendering such advice and otherwise communicating with such client, counsel shall not make any disclosure of the Protected Information so designated except as otherwise provided in paragraph 3.

8.      Further Requests for Production.  If, at any time, any of the Protected Information in the possession, custody or control of any Party are subpoenaed or requested by any court, administrative agency, legislative body or other person or entity, the person to whom the subpoena or request is directed shall refuse any request or, with respect to a subpoena or court, administrative or legislative order, provide written notice to the Parties as promptly as practicable for the purpose of allowing Parties the opportunity to timely oppose the subpoena or order before responding or disclosing any Protected Information.

NDF

9.    <u>Miscellaneous</u>.  By executing this Agreement, no Party hereto shall be deemed to have waived its right to assert that any particular Document should or should not be accorded confidential treatment.  The Parties intend that this Agreement shall be consistent with the Federal Rules of Bankruptcy and Civil Procedure, and that any challenge to it shall be governed by those rules and applicable law in the United States District Court for the District of Delaware.

10.    <u>Termination</u>.  The provisions of this Agreement shall continue to be binding after final termination of the Estimation.  Within ninety (90) calendar days after final conclusion of all aspects of the Estimation, including any appeals, any person who received the Protected Information must certify in writing that the receiving person has destroyed the Protected Information and the portions of all other materials, including copies containing Protected Information.  This requirement shall not apply to counsel's copies of pleadings and exhibits filed under seal with the Court nor to counsel's file copies of papers prepared in connection with the Estimation (*e.g.*, pleadings, transcripts, interview or document summaries, internal memoranda, communications with experts and witnesses, court papers, and other papers prepared or served in the Estimation).

11.    <u>Responsibility of Attorneys</u>.  Counsel for all Parties each acknowledge that they are responsible, severally and not jointly, for employing reasonable measures to control, consistent with this Agreement, duplication of, access to, and distribution of copies of the Protected Information.

12.    <u>Additional Parties</u>.  Notwithstanding the initial recitation of parties to this Agreement, this Agreement shall be effective as between each of the Parties, individually, when each such Party executes a copy of the Agreement and sends copies of such executed Agreement to each of the other Parties.  This Agreement shall not be binding upon any of the named Parties

NDF

who do not execute it. The failure of any party to execute this Agreement shall have no impact on the ability of any other Party to gain access to the Sample Claimant discovery, provided such other Party executes the Agreement as provided herein.

13.    _Severability._ To the extent any provision of this Agreement is illegal or otherwise unenforceable, that shall not affect the enforceability of the remaining terms of this Agreement.


COOLEY GODWARD LLP
STEPHEN C. NEAL (CA 170085)
GORDON C. ATKINSON (CA 122401)
SCOTT D. DEVEREAUX (CA 146050)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155

Dated: October 17, 2005          By: _____

On behalf of Cooley Godward LLP and as Counsel for Plaintiffs USG Corporation, USG Interiors, Inc., USG Interiors International, Inc., L&W Supply Corporation, Beadex Manufacturing, LLC, B-R Pipeline Company, La Mirada Products Co., Inc., USG Industries, Inc., USG Pipeline Company and Stocking Specialists, Inc.

8

KAYE SCHOLER LLP
Michael J. Crames
Jane W. Parver
Andrew A. Kress
Edmund M. Emrich
425 Park Avenue
New York, NY 10022-3598
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

Dated: October ____, 2005

By:_____

On behalf of Kaye Scholer LLP and as Counsel
for Dean M. Trafelet, Future Representative


CAPLIN & DRYSDALE, CHARTERED
Walter B. Slocombe
Nathan D. Finch
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone: (202) 862-5000

Dated: October 17, 2005

By:_____

On behalf of Caplin & Drysdale, Chartered and
as Counsel for the Official Committee of
Asbestos Personal Injury Claimants

9

KAYE SCHOLER LLP
Michael J. Crames
Jane W. Parver
Andrew A. Kress
Edmund M. Emrich
425 Park Avenue
New York, NY 10022-3598
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

Dated: October 17, 2005          By: _____

On behalf of Kaye Scholer LLP and as Counsel
for Dean M. Trafelet, Future Representative


CAPLIN & DRYSDALE, CHARTERED
Walter B. Slocombe
Nathan D. Finch
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone: (202) 862-5000

Dated: October _____, 2005          By: _____

On behalf of Caplin & Drysdale, Chartered and
as Counsel for the Official Committee of
Asbestos Personal Injury Claimants

9

BILZIN SUMBERG BAENA
PRICE & AXELROD LLP
Scott L. Baena
(Admitted Pro Hac Vice)
William K. Hill
(Pro Hac Vice Admission Pending)
Nathan G. Mancuso
(Pro Hac Vice Admission Pending)
Wachovia Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL  33131
Telephone:  (305) 374-7580

Dated: October _____, 2005

By:_____

On behalf of Bilzin Sumberg Baena Price &
Axelrod LLP and as Counsel for the Official
Committee of Asbestos Property Damage
Claimants


STROOCK & STROOCK & LAVAN LLP
Lewis Kruger
Kenneth Pasquale
Denise K. Wildes
180 Maiden Lane
New York, NY  10038-4982
Telephone:  (212) 806-5400
Facsimile:  (212) 806-6006

Dated: October _18_, 2005

By:_____

On behalf of Stroock & Stroock & Lavan LLP
and as Counsel for the Official Committee of
Unsecured Creditors of USG Corporation, et al.

10

BILZIN SUMBERG BAENA
PRICE & AXELROD LLP
Scott L. Baena
(Admitted Pro Hac Vice)
Jay M. Sakalo
(Admitted Pro Hac Vice)
Wachovia Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131
Telephone: (305) 374-7580

By: _____

Dated: October ____, 2005

On behalf of Bilzin Sumberg Baena Price &
Axelrod LLP and as Counsel for the Official
Committee of Asbestos Property Damage
Claimants

STROOCK & STROOCK & LAVAN LLP
Lewis Kruger
Kenneth Pasquale
Denise K. Wildes
180 Maiden Lane
New York, NY 10038-4982
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

Dated: October ____, 2005

By: _____

On behalf of Stroock & Stroock & Lavan LLP
and as Counsel for the Official Committee of
Unsecured Creditors of USG Corporation, et al.

WEIL, GOTSHAL & MANGES LLP
David A. Hickerson
1501 K Street, Suite 100
Washington, D.C. 20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

Dated: October 18, 2005

By: _D. J Hickerson_

On behalf of Weil, Gotshal & Manges LLP and
as Counsel for the Statutory Committee of
Equity Security Holders

**IT IS SO ORDERED.**

Dated: October 21, 2005

    nunc pro tunc  October 20, 2005

The Honorable Joy Flowers Conti
United States District Court Judge

**EXHIBIT A**

**ACCESS STATEMENT**

As an individual and on behalf of _____, I may be given access to certain confidential or proprietary information of claimants in the Bankruptcy proceeding of *In re USG Corporation, et al.*, No. 01-2094 (Bankr. D. Del. 2001) and *In re USG Corporation, et al.*, Nos. 04-1559 & 1560 (D. Del. 2004).

In connection therewith and in consideration of further performing my duties to _____, I have read the attached confidentiality agreement dated as of October _____, 2005 (the "Confidentiality Agreement"), understand the conditions and obligations of confidentiality, and the other provisions described therein, and hereby accept and agree to be bound by them under the Confidentiality Agreement.

I will not disclose any Protected Information, as defined in the Confidentiality Agreement, to any person not authorized by the Confidentiality Agreement to receive, disclose or use such discovery or Protected Information.

I will not use the Protected Information except as permitted under the Confidentiality Agreement.

I consent to the jurisdiction of the United States Bankruptcy Court for the District of Delaware for any action to enforce the terms of the Confidentiality Agreement and this Access Statement.

**ACCEPTED AND AGREED TO:**

By:      _____

Name:    _____
Title:   _____
Company: _____
Address: _____

Relationship to Recipient:

*(e.g., Employee/Officer/Director, Outside Consultant, Accountant, Attorney, Advisor)*

Witnessed by: _____
Name:         _____
Title:        _____