# EXHIBIT 52

IN THE UNITED STATES BANKRUPTCY COURT
FOR DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ( | |
| | ( | |
| W.R. GRACE & CO., et al., | ( | Bankruptcy No. 01-01139 (JKF) |
| | ( | Jointly Administered |
| | ( | |
| Debtor(s) | ( | Chapter 11 |
| | ( | |
| | ( | Related to Doc. Nos. 4007, 4009, 4012, 4018, 4022, |
| | ( | 4028, 4173, 4175, 4202, 4204, 4205, 4206, 4291, |
| | ( | and 4294. |
| | ( | |

**MEMORANDUM OPINION**[1]

The matters before the court are the opposing Motions for Summary Judgment[2] of the Debtors, W.R. Grace & Company ("Grace"), and a group of property damage claimants, Zonolite Attic Insulation Claimants ("ZAI Claimants"), and the ZAI Claimants' Motion for Partial Summary Judgment[3] regarding the threshold issue of what science demonstrates with regard to whether or not the presence of ZAI[4] in the home creates an unreasonable risk of harm. The court has consolidated the actions of the ZAI Claimants pursuant to Fed.R.Civ.P. 42(a) for

---

[1] The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

[2] Doc. Nos. 4009 and 4018.

[3] Doc. No. 4007 and Corrected Zonolite Attic Insulation Claimants' Memorandum in Support of Motion for Partial Summary Judgment, Doc. No. 4028.

[4] ZAI is a brand of vermiculite attic insulation ("VAI"). Where applicable, the use of the terminology "VAI", "vermiculite attic insulation", or "vermiculite insulation" refers to all brands (within which ZAI is included). "ZAI" only refers to Grace's product, Zonolite Attic Insulation.

-1-

*on Scientific Evidence* at 336. Instead, causation can be proven through probabilistic means from epidemiological data which is based on the strength of the association, the strengths and weaknesses of the studies' design and implementation, and an assessment of the studies' fit with other scientific knowledge. *Reference Manual on Scientific Evidence* at 337.

The strength of an association is measured in terms of relative risk, odds ratio, or attributable risk. Relative Risk (RR) is defined as the incidence rate in the exposed divided by the incidence rate in the unexposed. *Id.* at 348, 349. Incidence rate is used to express the risk that, within a specified period of time, a member of the relevant population will develop the disease. *Id.* A risk of 1.0 means that the risk of disease to individuals exposed to an agent is the same as that to unexposed individuals. *Id.* Grace argues that Claimants must establish a 2.0 relative risk for ZAI, which would imply a 50 percent likelihood that an exposed individual's disease was caused by the agent. This is especially true in this case where all experts agree that low levels of exposure do not cause a risk to health.[87] Generally, the greater the relative risk the easier it is to infer causation. *Id.* at 348, 349. Smoking studies have shown that smokers are ten times more likely (RR 10.0) then nonsmokers to have lung cancer. A substantial number of courts have accepted RR of 2.0 in epidemiological studies to show causation as it corresponds to the burden of proof to a preponderance of the evidence; *i.e.*, requiring the finder of fact to find that what is sought to be proved is more likely true than not true. *See DeLuca v. Merrell Dow Pharms., Inc.*, 911 F.2d 941, 958-59 (3d Cir. 1990); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1320 (9th Cir.), *cert denied*, 516 U.S. 869 (1995). However, some courts have allowed slightly lower rates (*e.g.*, 1.75 or 1.5) when other factors such as genetics combine

---

[87] *See* note 53, *supra*.

to raise the risk to 2.0. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 758-59 (3d Cir. 1994), *cert. denied sub nom. General Elec. Co. v. Ingram*, 513 U.S. 1190 (1995). We have no such evidence on this record and no reason to lower the rate below 2.0. Therefore, we accept Grace's position that Claimants must establish causation by a 2.0 relative risk rate. Claimants have not met that burden of proof.

There are two types of epidemiological studies: experimental and observational. *Reference Manual on Scientific Evidence* at 338-47. Experimental studies include randomized trials and clinical trials and are considered the gold standard for determining the relationship between an agent and a disease. *Id.* In these studies, the subjects are randomly assigned either to a group exposed to the agent in question or to another group exposed to a placebo. *Id.* Generally, experimental studies are used on agents suspected to be helpful, such as new drugs or medical treatments. Therefore, the majority of epidemiological studies are observational, where a group of individuals already exposed to an agent of interest is compared to another group not exposed.

An epidemiological study establishing a relationship between ZAI and asbestos related disease would be extremely useful in demonstrating an unreasonable risk of harm. However, neither party has introduced such a study or even a study involving similar vermiculite products or similar asbestos exposure levels. The evidence most similar to this case was examined in the ATSDR Libby study introduced by Grace,[88] which included ZAI and other vermiculite sources of asbestos exposure. The project resulted from various requests to declare a public health

---

[88] Agency for Toxic Substances and Disease Registry, Year 2000 Medical Testing of Individuals Potentially Exposed to Asbestiform Minerals Associated with Vermiculite in Libby, Montana: A Report to the Community (August 23, 2001). Doc. No. 4011, Exh. A.

-34-