# EXHIBIT 62

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                              :
                                                    :    Chapter 11
W.R. GRACE & CO., et al.,                           :
                                                    :    Case No. 01-1139 (JKF)
Debtors                                             :
                                                    :    Jointly Administered
                                                    :
_____/

## DECLARATION OF P. J. ERIC STALLARD

I, P. J. Eric Stallard, under penalty of perjury declare as follows:

1. I am a Research Professor in the Department of Sociology and Associate Director of the Center for Population Health and Aging at Duke University.

2. I am a Fellow of the Conference of Consulting Actuaries, an Associate of the Society of Actuaries, and a Member of the American Academy of Actuaries, where I have served on the Board of Directors. I am also Chairperson of the Academy's Federal Long-Term Care Task Force, and I serve on the Academy's Health Practice Council, Social Insurance Committee, State Health Committee, and State LTC Task Force. During 2006–2007, I served on the Social Security Advisory Board's 2007 Technical Panel on Assumptions and Methods.

3. Currently, I am Senior Investigator on two research projects from the U.S. National Institutes of Health/National Institute on Aging covering the areas of health, disability, LTC, and mortality. In addition, I serve as Principal Investigator on two LTC research grants, one from the Veterans Health Administration and the other from Wyeth Pharmaceuticals. Previously, I served as Principal Investigator on LTC research grants from the Society of

15.     The most striking result in this graph is the huge difference between the exposure levels of the diseased population compared to the at-risk population. For example, whereas only *1.5%* of the at-risk population exceeded the OSHA PEL value of 0.1 f/cc, *33.9%* of the diseased population exceeded that same value. Indeed the median value for the diseased population was 0.0482 f/cc, more than *24 times higher* than the median value for the at-risk population.

16.     To further explore the implications of violations of Principle 2, I redrew Figure 1 with the x-axis extended on the right to 1.5 f/cc and displayed the results in Figure 2. One can see from Figure 2 that 10% of the diseased population had exposure levels greater than or equal to 0.42 f/cc and 2.9% had exposure levels greater than or equal to 1.0 f/cc.



**Figure 2 – Right-Cumulative Distribution of Annual Exposure Levels in the At-Risk and Diseased Populations Assuming that the Mean Exposure is 0.01 f/cc in the At-Risk Population**

17.     Significantly, these exposure levels were achieved in *just one year*. Figure 3 displays the same results under the assumption that the at-risk population consisted of persons

who continued to work in the same job under constant exposure levels over an entire 45-year career, as Dr. Anderson assumed in her report. For this calculation, I multiplied each annual exposure level in Figure 2 by 45 (years) to produce the corresponding cumulative exposure level in Figure 3.[5]

**Figure 3 – Right-Cumulative Distribution of Cumulative Exposure Levels After 45 Years in the At-Risk and Diseased Populations Assuming that the Mean Annual Exposure is 0.01 f/cc in the At-Risk Population**

[Graph showing Percentage with Exposure Greater Than or Equal to the Indicated Amount (y-axis, 0% to 100%) vs. Cumulative Exposure Level (f/cc-yr) (x-axis, 0.0 to 67.4), with two curves: Diseased Population and At-Risk Population]

18.    Figure 3 shows that 10% of the diseased population diagnosed at 45 years and beyond would have exposure levels greater than or equal to 19.0 f/cc-yr and 2.9% would have exposure levels greater than or equal to 45.0 f/cc-yr. Indeed, 44.2% of the diseased population diagnosed at 45 years and beyond would have exposure levels greater than or equal to Dr.

---

[5] Comparison of the values in row 2 column B of Table 1 with row 3 column B of Table 4 of Dr. Anderson's July 31, 2007 report shows that the conversion from annual exposure levels to cumulative lifetime exposures uses a multiplier of 45 (years), consistent with Dr. Anderson's assumption that the maximum working lifetime is 45 years.

7

23.  The inadequacies of his supplemental report are documented in Figure 4 with plots of the actual settlement amounts for the 6 mesothelioma claims used in his analysis, along with horizontal lines showing mean value and the upper and lower bounds of the 95% confidence interval for the mean value.



Figure 4 – Settlement Amounts for Mesothelioma Claims that Meet Grace's Evidentiary Criteria

24.  The 6 values range from $9,981 to $446,516, with a mean of $155,240. The highest value is 44.7 times the lowest value, and 2.88 times the mean. The 95% confidence interval for the mean ranges from $25,173 to $285,306. The upper bound is 11.3 times the lower bound, and 1.84 times the mean. Because of Dr. Florence's assumption that all other disease costs are proportional to the mesothelioma costs, these uncertainty factors apply to all historical average settlement amounts estimated by him, making his entire set of cost estimates extraordinarily unreliable.

9