# EXHIBIT 110



60 AMJUR TRIALS 73                                                                          Page 1

60 Am. Jur. Trials 73

American Jurisprudence Trials
Database updated November 2007

**Asbestos Injury Litigation**

Daniel J. Penofsky[FN*]

**ARTICLE OUTLINE**

I Background
    A In General
        § 1 Introduction
        § 2 "Friable" asbestos
        § 3 "One fiber" phobia and the abatement debate
        § 4 Scope of article
        § 5 Model trial fact pattern
    B Hazards Attending Asbestos Exposure
        § 6 Nature and types of asbestos
        § 7 Nature and types of asbestos—Types of asbestos fibers
        § 8 Nature and types of asbestos—Toxicity of fibers; Amphibole Hypothesis
        § 9 Commercial and industrial uses of asbestos
        § 9.5 Early studies of exposure risks
        § 10 Mechanisms of exposure
        § 11 Exposure in the home
        § 12 Exposure in the office
        § 13 Exposure at school
        § 14 Occupations—Checklist
        § 15 Products—Checklist
        § 16 Products—Cigarette filters
        § 17 Measurement of exposure; OSHA standards
        § 18 Measurement of exposure; OSHA standards—Phase-contrast microscopy
        § 19 Measurement of exposure; OSHA standards—Transmission electron microscopy
        § 20 Respiratory response to fibers
        § 21 Diseases resulting from exposure; benign pleural thickening, plaques and effusion
        § 22 Diseases resulting from exposure; benign pleural thickening, plaques and effusion—Asbestosis
        § 23 Diseases resulting from exposure; benign pleural thickening, plaques and effusion—Mesothelioma
        § 24 Diseases resulting from exposure; benign pleural thickening, plaques and effusion—Lung cancer

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

60 Am. Jur. Trials 73

resulting from the intentional misconduct consists of aggravation of an initial work-related injury.

In denying the writ of mandamus, the court said that in the instant case the plaintiff alleged that the defendant fraudulently concealed from him and from doctors retained to treat him, as well as from the state, that he was suffering from a disease caused by ingestion of asbestos, thereby preventing him from receiving treatment for the disease and inducing him to continue to work under hazardous conditions. These allegations are sufficient to state a cause of action for aggravation of the disease, as distinct from the hazards of the employment which caused him to contract the disease. Accordingly, the plaintiff could pursue such an action and the workers' compensation bar was inapplicable.

The court noted that although the plaintiff filed an application for workers' compensation and may receive an award in that proceeding, double recovery may be prevented by allowing the employer a set off in the event the plaintiff is awarded compensation for the aggravation of his injury in that proceeding and in the instant case as well.

### C. Issues of Causation

#### § 41. Causation in asbestos-injury cases; generally

**[Cumulative Supplement]**
Since immediate, recognizable trauma is non-existent in the asbestos-injury case, establishing causation—in terms of demonstrating that an asbestos-related injury (disease) would not have occurred "but for" defendant's conduct or inaction—can be a vexatious problem.[FN43] Time is the culprit. Exposure to asbestos fibers typically occurs over a lengthy period of time, and asbestos-related injury manifests itself only after a long latency period. It is not at all unusual in such cases for plaintiff to have been exposed to a variety of asbestos-containing products, produced by a number of different manufacturers, while the plaintiff has been employed at different job sites and inhaling caustic asbestos fibers at each. Consequently, it may be difficult if not impossible to identify the offending defendant and the offending product, or to measure the magnitude of fiber exposure. Further, there may be a concurrent cause of an asbestos-related disease, most often cigarette smoking, which, as discussed below, produces a known synergistic effect in the plaintiff who has also been exposed to asbestos fibers.[FN44]

This being said, it is a source of some reassurance that proof of causation is readily accomplished in asbestos-injury trials conducted in state and federal courts across the country. How is it done? The secret is compartmentalization. Causation in the asbestos-injury case is not as simple as $X = Y$, where X consists of asbestos fibers and Y equals an asbestos-related disease. "Causation" is actually comprised of a number of different components, each of which must be identified and proven independently at trial. These components may be delineated as follows:
I. Proof Of Risk
    1. Identification of defendant.[FN45]
    2. Identification of asbestos-containing product.[FN46]
    3. Demonstrating plaintiff's exposure to asbestos-containing product.[FN47]
    4. Establishing the duration of exposure.[FN48]
II. Proof of Medical Causation
    1. Proof that exposure "can cause" an asbestos-related disease such as that suffered by plaintiff.[FN49]
    2. Proof that exposure "did cause" the asbestos-related disease suffered by plaintiff.[FN50]
    3. Proof that a contributing cause such as smoking was not the "sole cause" of plaintiff's asbestos-related disease.[FN51]

#### CUMULATIVE SUPPLEMENT

**Cases:**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

60 Am. Jur. Trials 73

**Sole and contributing causes:** Special interrogatory asking jury whether it found "that [worker's] lung cancer was caused, in whole or in part, by exposure to fibers from [defendant's] asbestos products used at [worker's plant]" was in proper form; when the interrogatory was read together with instructions that a proximate cause "need not be the only cause, nor the last or nearest cause," and that "[m]ore than one person may be to blame for causing an injury," a rational jury would have understood that exposure to defendant's product did not have to be the sole cause of worker's lung cancer for the interrogatory to be answered affirmatively. S.H.A. 735 ILCS 5/2-1108. Johnson v. Owens-Corning Fiberglas Corp., 313 Ill. App. 3d 230, 246 Ill. Dec. 232, 729 N.E.2d 883 (3d Dist. 2000), appeal denied (Ill. Oct. 4, 2000); West's Key Number Digest, Trial ☞365.1(3).

Trial court did not abuse its discretion by refusing to give proximate cause instruction requested by manufacturer of asbestos-containing products, which combined pattern jury instruction with portions of language from Supreme Court opinion establishing test for causation in asbestos cases; inclusion of language from test, without explanation of terms "frequently," "proximity," and "regularity," did not lead to proximate cause and could lead to further confusion, and manufacturer was not precluded from arguing that exposure to its asbestos was not sufficiently frequent, regular, or proximate to cause injury. Spain v. Owens Corning Fiberglass Corp., 304 Ill. App. 3d 356, 237 Ill. Dec. 898, 710 N.E.2d 528 (4th Dist. 1999), appeal denied (Ill. Oct. 6, 1999); West's Key Number Digest, Products Liability ☞96.1.

**Remediation activities:** Contractor, which had supplied asbestos products, and which was also hired by employer to remove and abate workplace asbestos, was not liable, in wrongful death action based upon employee's bystander exposure to asbestos, absent any evidence that employee was exposed to any asbestos products supplied by contractor, where employee was exposed to asbestos as result of contractor's abatement efforts on single brief occasion and such exposure was medically insufficient to establish causation. (Per Murray, J., with two Judges concurring in part.) Zimko v. American Cyanamid, 905 So. 2d 465 (La. Ct. App. 4th Cir. 2005); West's Key Number Digest, Negligence ☞1205(7).

Evidence that multiple exposures over time to multiple manufacturers' and distributors' asbestos products combined to create an increased risk of worker's mesothelioma was sufficient to show causation under "substantial factor" standard, without further showing of worker's proximity or regularity of exposure to particular manufacturer's products, where there was competent evidence that even minor exposure to asbestos can cause mesothelioma. Purcell v. Asbestos Corp., Ltd., 153 Or. App. 415, 959 P.2d 89 (1998), adhered to in part on reh'g, 1998 WL 420383 (Or. Ct. App. 1998).

**[Top of Section]**

**[END OF SUPPLEMENT]**

**§ 42. Causation in asbestos-injury cases; generally—Identification of defendant and product**

**[Cumulative Supplement]**

A threshold requirement of the toxic tort action for asbestos-related injury is the identification of the injury causing product and its manufacturer, coupled with proof of exposure, once a plaintiff establishes that the defendant's asbestos-containing product was used at the job site at the same time plaintiff was employed there.[FN52] The failure of the plaintiff to adduce sufficient evidence to show that injuries were caused by exposure to a specific asbestos-containing product manufactured by the defendant will result in the granting of a motion for summary judgment against the plaintiff.[FN53]

Proof of identification of the asbestos-containing product and its manufacturer is generally satisfied through the anecdotal testimony of the plaintiff and/or co-workers that they recall seeing, using, and being exposed to the defendant's product during the identical weeks, months, or years that the plaintiff worked at the job site.

*Logos and testimonial affirmation*
Recognition of a defendant's product is often based upon a personal viewing of defendant's unique logo,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

60 Am. Jur. Trials 73

*"Reba Rudkin" case*

The issue raised in the Reba Rudkin case was whether an employee is barred by the workers' compensation laws from bringing an action against his or her employer for fraud and conspiracy in knowingly ordering the employee to work in an unsafe environment, concealing the risk, and, after the employee has contracted an industrial disease, deliberately failing to notify the state, the employee, or doctors retained to treat him, of the disease and its connection with the employment, thereby aggravating the consequences of the disease.

The employee, Reba Rudkin, the real party in interest, brought an action for fraudulent misrepresentation against the defendant employer, which had been his employer for 29 years. The defendant was engaged in mining, milling, manufacturing, and packaging asbestos. The plaintiff worked in its Pittsburgh, California, plant from 1946, and as a result of his continuous exposure to asbestos dust, he developed lung cancer.

The facts adduced at trial revealed that the defendant corporation knew since 1924 that long term exposure to asbestos or the ingestion of that substance was dangerous to health, yet it concealed this knowledge from plaintiff, and advised him that it was safe to work in close proximity to asbestos. It failed to provide him with adequate protective devices and did not operate the plant in accordance with state and federal regulations governing dust levels.

In addition, the doctors who were retained by the defendant to examine the plaintiff were unqualified, and the defendant did not provide them with adequate information regarding the risk of asbestos exposure. It failed to advise these doctors of the development of pulmonary disease in the plaintiff or of the fact that the disease was the result of the working conditions at the plant, although it knew that his illness was caused by exposure to asbestos. Finally, the defendant willfully failed to file a First Report of Occupational Injury or Illness with the State of California regarding the plaintiff's injury, as required by law. Had this been done, and if the danger from asbestos had been revealed, the plaintiff would have been protected. Each of these acts and omissions was done falsely and fraudulently by the defendant with intent to induce the plaintiff to continue to work in a dangerous environment. The plaintiff was ignorant of the risks involved, and would not have continued to work in such an environment if he had known the facts.

The defendant filed an answer alleging that the action was barred by the applicable workers' compensation provisions. It requested that the trial court take judicial notice of an earlier application filed by the plaintiff seeking workers' compensation benefits for disability caused by "exposure to asbestos." The trial court denied the defendant's motion for judgment on the pleading based on the bar, and the defendant brought a writ of mandamus seeking to set aside that order.

In assessing the propriety of the writ, the appeals court said initially that the workers' compensation system balances the advantage to the employer of immunity from liability at law against the detriment of relatively swift and certain compensation payments. Conversely, while the employee receives expeditious compensation, the employee surrenders the right to a potentially larger recovery in a common law action for the negligence or willful misconduct of the employer.

Under some exceptional circumstances an employer is not free from liability at law for his or her intentional acts, even if the resulting injuries to employees are compensable under workers' compensation. The court said that if the complaint alleged only that the plaintiff contracted lung cancer because the defendant knew and concealed from him that his health was endangered by asbestos in the work environment, failed to supply adequate protective devices to prevent disease, and violated governmental regulations relating to dust levels at the plant, the plaintiff's only remedy would be to prosecute his claim under the workers' compensation law. Yet where the employer is charged with intentional misconduct which goes beyond the failure to assure that the tools or substances used by the employee or the physical environment of a workplace are safe, some cases have held that an employer may be subject to common law liability. Indeed, the court recognized a trend toward allowing an action at law for injuries suffered in the employment if the employer acts deliberately for the purpose of injuring the employee or if the harm

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 61

emblem, or trademark affixed to the asbestos-containing product during the time period in question. For example, in the following cases, compliance with the requirement of identification of defendant and its asbestos-containing product was based upon recognition by the plaintiff and/or a co-worker of the defendant's logo affixed to the product:
- Picture of eagle over words "Eagle-Picher" affixed to bags of asbestos-containing cement.[FN54]
- Word "FLEXITALLIC" embossed on gaskets.[FN55]
- Words "Gold Bond" on label affixed to asbestos cement flatsheet.[FN56]
- Words "Gold Bond Wood Fibred Plaster" affixed to bags of asbestos-containing plaster.[FN57]
- Word "Kaylo" affixed to asbestos-containing insulation materials.[FN58]
- Words "Pabco" and "Caltemp" affixed to boxes of asbestos block insulation.[FN59]
- Word "Stic-tite" affixed to bags of asbestos-containing cement.[FN60]
- Word "EHRET" affixed to containers of asbestos pipecovering material.[FN61]

A "one-two punch" tactic effectively employed in asbestos-injury cases to establish identity of the defendant and its asbestos-containing product is to have the plaintiff and/or co-worker identify the logo of the manufacturer on the product, coupled with an admission by the defendant upon interrogatories, deposition, or at trial that it manufactured the product in question, as in the following case illustrations:
- Words "Super 66" printed on bags of asbestos-containing cement/motor mix, coupled with defendant's admission on interrogatories that it manufactured the product.[FN62]
- Word "PABCO" printed on boxes of asbestos block insulation, coupled with trial admission by defendant that it manufactured the product.[FN63]
- Words "Kaylo" and "ASBESTOS" printed on boxes of asbestos-containing pipe covering, coupled with trial admission by defendant that it manufactured the product.[FN64]
- Word "FLEXITALLIC" embossed on asbestos-containing gaskets, coupled with defendant's admission at another trial that it did manufacture the asbestos-containing gaskets.[FN65]
- Word "Kaylo" affixed to boxes of asbestos insulation material, coupled with defendant's admission on interrogatories that it had shipped Kaylo to a number of job sites at which plaintiff claimed exposure.[FN66]

Sometimes identification of a defendant and its asbestos-containing product can be satisfied through recognition of the defendant's logo as testified to by the plaintiff, coupled with the testimony of the plaintiff's former employer. For example, in one recent case, identification of the defendant and the asbestos-containing product was satisfied where the plaintiff testified that he saw the word "Calidria" imprinted on bags of raw asbestos used by him at his job site, and this was coupled with the affidavit and trial testimony of the former president of the company where plaintiff was employed that he was responsible for purchasing raw "Calidria" chrysotile asbestos fiber for the company, and that the company purchased such products from the defendant beginning in 1970, two years before the plaintiff left the company.[FN67]

Where neither the plaintiff or a co-worker is able to specifically identify the defendant through a logo, admissions made by the defendant upon interrogatories, deposition, or trial testimony that it manufactured the product in question may be enough to satisfy the identification requirement. Where proof of identification of the manufacturer of the product is unavailable through anecdotal evidence supplied by the plaintiff or a co-worker, or admissions furnished by the defendant or some other party, however, it has generally been held that liability of the manufacturer cannot be based upon theories of market share,[FN68] enterprise,[FN69] or alternative liability theories.[FN70]

### Multiple defendants and products
Where an asbestos worker over the years has been exposed to the effects of asbestos fibers produced by multiple asbestos-containing products, the problem in establishing causation on the part of each of the manufacturers of these products was succinctly articulated by the court in Kochan v. Owens-Corning Fiberglas Corp.:[FN71]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

60 Am. Jur. Trials 73

Our courts recognize that it is impossible to determine whether a specific exposure or even several exposures to a particular asbestos product caused or contributed to the cause of the injury. On the other hand, it is equally impossible to find that a specific exposure or several exposures did not cause or contribute to the injury. Proof of causation is further complicated by the extended time period of more than 25 years for the asbestos injury to manifest itself. Because of these difficulties in proof of causation in asbestos cases, our supreme court adopted the "frequency, regularity and proximity" test.

Pursuant to this test, as to any named defendant,[FN72] it is incumbent upon plaintiff to demonstrate by a preponderance of the evidence that exposure to each named defendant's asbestos-containing product was a substantial factor in causing or bringing about the alleged injury.[FN73]

It is not, however, incumbent upon a plaintiff to name each and every conceivable defendant and asbestos-containing product which may have caused injury.[FN74] Nor is it proper for a defendant to attempt to prove by collateral evidence[FN75] that the plaintiff was exposed to other asbestos-containing products manufactured by companies other than the named defendant(s), which may arguably have been equally or even more responsible in bringing about plaintiff's asbestos-related disease. In considering such an issue, the court in Lipke v. Celotex Corp.[FN76] ruled that there can be more than one proximate cause of an injury and stated:

In such a situation, one guilty of negligence cannot avoid responsibility merely because another person is guilty of negligence contributing to the same injury… Where such guilt exists, it is no defense that some other person or thing contributed to bringing about the result for which damages were claimed. Either or both parties are liable for all damages sustained. Thus, the fact that plaintiff used a variety of asbestos products does not relieve defendant of liability for his injuries. Evidence of such exposure is not relevant.[FN77]

According to the Lipke court, allowing a defendant to present evidence of a plaintiff's exposures to other products whose manufacturers are not defendants in the trial would only confuse the jury, with a possible result that a defendant could be unjustly relieved of liability. The purpose for which the evidence is offered is not inconsequential, for the intended effect is to shift blame to another manufacturer.

## CUMULATIVE SUPPLEMENT

### Cases:

**Concert-of-action theory:** Worker injured by exposure to asbestos did not state cause of action for fraud, premised on concert of action in making false representations, against company that sold its asbestos business to another company that made the product that the worker was first exposed to, seven years after the sale; worker acknowledged that product made by original company did not cause his injuries, and did not allege any facts that original company continued to encourage and advise the other company to make false representations about product after the sale to that company. Cadlo v. Owens-Illinois, Inc., 125 Cal. App. 4th 513, 23 Cal. Rptr. 3d 1, Prod. Liab. Rep. (CCH) P 17244 (1st Dist. 2004), as modified, (Dec. 30, 2004); West's Key Number Digest, Products Liability ⊂═62.

**Market-share liability:** Trial court properly refused to apply theory of market share liability to asbestos manufacturer in action which was based on exposure to various forms of asbestos; plaintiffs' expert witness stated he was unable to compute manufacturer's share of the national friction products market during the relevant time period, plaintiff conceded he had no evidence substantiating exposure to any of manufacturer's asbestos products, and plaintiff was able to identify two other manufacturers to whose friction asbestos brake products he was exposed. Ferris v. Gatke Corp., 107 Cal. App. 4th 1211, 132 Cal. Rptr. 2d 819, Prod. Liab. Rep. (CCH) ¶16554

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

60 Am. Jur. Trials 73

(1st Dist. 2003), review denied, (July 9, 2003); West's Key Number Digest, Products Liability ⬡➞62.

Evidence that manufacturer's plastic cement might have been used once on a construction project at hospital was insufficient to establish that plumber employed at hospital for 24 years was exposed to asbestos-containing products made by manufacturer, thus precluding a finding in wrongful death action that manufacturer's products caused plumber's death from asbestos-related cancer, especially in view of evidence that delivery of plastic cement in question likely occurred after manufacturer had ceased making asbestos-containing plastic cement in that state. McGonnell v. Kaiser Gypsum Co., Inc., 98 Cal. App. 4th 1098, 120 Cal. Rptr. 2d 23 (1st Dist. 2002); West's Key Number Digest, Products Liability ⬡➞83.

Expert declaration in which industrial hygienist opined that it was more likely than not that asbestos-containing products made by two particular manufacturers were used at hospital in the 1970s, and that plumber who was employed there was exposed to them, was insufficient to create triable issue of fact as to whether such exposure occurred, for purposes of opposing manufacturers' summary judgment motion in wrongful death action by plumber's survivors, where declaration contained little explanation or reasoning for its conclusions. West's Ann.Cal.C.C.P. § 437c. McGonnell v. Kaiser Gypsum Co., Inc., 98 Cal. App. 4th 1098, 120 Cal. Rptr. 2d 23 (1st Dist. 2002); West's Key Number Digest, Judgment ⬡➞185.1(4).

Judgment entered on jury verdict finding manufacturer of Kaylo, asbestos-containing insulation, 100-percent responsible for former Navy metalworker's mesothelioma was affirmed on manufacturer's appeal brought on grounds of insufficient evidence. Metalworker's chief exposure to asbestos dust had occurred over about 6 months in 1960, when, as part of overhaul of ship, he was required to remove asbestos-containing insulation from ship's pipes. Plaintiff had also been exposed later to small amounts of asbestos dust from pipefitter's shop across alley from his work area. At trial, experts testified that exposure on ship had been sufficient to cause disease by itself. Testimony from former Navy insulator showed that large amounts of Kaylo block insulation were used on boilers and high-temperature piping of ships such as one to which plaintiff had been assigned. Applying consumer expectation test, court ruled that plaintiff had presented sufficient evidence to establish that Kaylo was defective product; insulators had assumed that product was harmless and had used it without special precautions, and product thus did not meet minimum safety assumptions of its ordinary consumers. Evidence that Kaylo was sole legal cause of plaintiff's mesothelioma was also sufficient; testimony showed that Kaylo was probably insulation used on ship plaintiff had helped overhaul, and that exposure was only one identified as sufficient to cause his illness. Finally, because manufacturer had not attempted to introduce evidence that Navy was responsible for his illness for any purpose other than that of showing that Navy's behavior was superseding cause of plaintiff's injuries, for which purpose it was barred from presenting evidence of Navy's negligence, manufacturer had waived any claim it may have had to reduce its damages in proportion to Navy's asserted fault. Sparks v. Owens-Illinois, Inc. (1995, 1st Dist) 32 Cal App 4th 461, 38 Cal Rptr 2d 739, ops combined at (Cal App 1st Dist) 95 CDOS 1207, 95 Daily Journal DAR 2117 and review den (Apr 13, 1995).

Standard for establishing product identity in asbestos cases in which plaintiff developed lung cancer applied to case in which decedent developed mesothelioma, a cancer of lung's inner lining that could be caused by inhaling small amounts of asbestos, and thus decedent's estate was required to present either direct evidence that decedent inhaled asbestos fibers shed by manufacturer's product or that decedent worked on regular basis in physical proximity with product. Wilson v. A.P. Green Industries, Inc., 2002 PA Super 294, 807 A.2d 922 (Pa. Super. Ct. 2002); West's Key Number Digest, Products Liability ⬡➞83.

Evidence that plaintiff worked with asbestos products for eight years at naval shipyard, cut asbestos packing for application to valve stems, remained in area during clean-up when air got somewhat dusty, and that last name in manufacturer's corporate name appeared on packages of materials, raised fact issue for jury as to whether plaintiff was exposed to manufacturer's products. Andaloro v. Armstrong World Industries, Inc., 2002 PA Super 112, 799 A.2d 71 (Pa. Super. Ct. 2002); West's Key Number Digest, Products Liability ⬡➞88.

**[Top of Section]**

**[END OF SUPPLEMENT]**

**§ 43. Causation in asbestos-injury cases; generally—Exposure to product; frequency, regularity, proximity**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

60 Am. Jur. Trials 73

authority; employer provided laundry service for its employees' dirty work clothes, which employee and wife alleged created strong inference that it was aware of risk of employees bringing home asbestos-contaminated clothing, and authority documents revealing discussions of dangers of airborne asbestos to area surrounding one of work sites where employees were assigned to work raised issue as to authority's contemporaneous knowledge of risk of off-premises exposure to bystanders. In re New York City Asbestos Litigation, 14 A.D.3d 112, 786 N.Y.S.2d 26 (1st Dep't 2004), rev'd, 2005 WL 2777559 (N.Y. 2005); West's Key Number Digest, Judgment☞185.3(21).

Employer did not owe duty of care to spouse of employee, with regard to spouse's second-hand exposure to asbestos from laundering her husband's work clothes which became laden with asbestos from handling insulation for steam pipes in building, although alleged purpose of Occupational Safety and Health Administration (OSHA) regulations regarding asbestos was to prevent spread of asbestos to third parties; spouse was not member of OSHA's protected class and OSHA did not expand common law rights of spouse who otherwise did not have negligence claim against employer. Occupational Safety and Health Act of 1970, § 4(b)(4), 29 U.S.C.A. § 653(b)(4); 29 C.F.R. §§ 1910.1001(h), 1926.1101(i)(2). In re Eighth Judicial Dist. Asbestos Litigation, 12 Misc. 3d 936, 815 N.Y.S.2d 815, 210 Ed. Law Rep. 390 (Sup 2006); West's Key Number Digest, Negligence ☞1025.

**[Top of Section]**

**[END OF SUPPLEMENT]**

### § 44. Causation in asbestos-injury cases; generally—Medical causation

**[Cumulative Supplement]**
The plaintiff must introduce direct expert medical testimony that exposure to a defendant's asbestos-containing product was the cause of his or her asbestos-related disease.[FN4] Stated somewhat differently, it is incumbent upon plaintiff to produce expert medical testimony showing that "but for" exposure to defendant's asbestos-containing product, he or she would not have contracted an asbestos-related disease.[FN5] This cause-and-effect requirement is sometimes referred to as "medical causation." It is separate and distinct from the exposure aspects of causation.[FN6] It is also distinct from the requirements of proof that both the defendant and the defendant's product be specifically identified.[FN7]

*"APE" Analysis*
Scientists traditionally elucidate the issue of medical causation by employing the following nomenclature:
**Agent Effect Pathogenesis**

In the asbestos-injury case, the Agent, or what the body is exposed to, is asbestos fibers or dust. Pathogenesis refers to the way in which the agent (asbestos fibers) makes or causes the asbestos-related disease as a result of the respiratory response to asbestos fibers following exposure.[FN8] Effect is the resulting asbestos-related disease.[FN9]

*"Can Cause"/"Did Cause"*
The way in which the preceding concepts are simplified and explained to a jury hearing an asbestos-injury case is to have a medical expert affirmatively respond first to the seminal question of whether the toxic agent (asbestos fibers) "can cause" the asbestos-related disease suffered by the plaintiff. Although this may seem needlessly arduous and circuitous, it is absolutely necessary.[FN10] If the available scientific evidence (for example, case studies, laboratory studies, epidemiological studies) does not support an opinion that the toxic agent can cause the plaintiff's type of disease, then it would be logically impossible for an expert witness to conclude that it did so in the plaintiff's case.[FN11] Accordingly, the questions of the medical expert and answers initially proceeds along the following lines:
Q.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

60 Am. Jur. Trials 73

>    Do you have an opinion based upon a reasonable degree of medical certainty that exposure to asbestos fibers *can cause* (the asbestos-related injury) suffered by plaintiff?

A.

>    I do.

Q.

>    And what is that opinion?

A.

>    It can cause that type of injury.

Q.

>    What is the basis for your opinion?

A.

>    (The witness proceeds to offer the clinical case study, laboratory study, and epidemiological evidence in support of a causal association between exposure to asbestos fibers and the particular asbestos-related disease suffered by the plaintiff.)

Once the "can cause" evidence has been dispensed with, the "did cause" evidence is presented. The expert is asked whether the exposure to asbestos fibers in the instant case did, in fact, cause the asbestos-related injury suffered by the plaintiff.[FN12] Once the expert responds in the affirmative, the basis for the expert's opinion is requested. This "did cause" evidence typically consists of the following:
• Plaintiff's occupational and asbestos-exposure history
• Results of physical examination
• Results of pathology slide studies
• Results of diagnostic blood tests
• Results of diagnostic lung capacity tests
• Presence of asbestos fibers in affected tissue
• Results of diagnostic X-rays

Of all the "did cause" evidence to be presented, courts have resoundingly found the presence of asbestos fibers in affected tissue to be especially persuasive on the issue of medical causation.[FN13]

Proof of the "did cause" aspect of causation is sometimes facilitated by the fact that exposure to asbestos fibers can result in a so-called "signature disease," such as mesothelioma. In such a case, the plaintiff's medical expert would testify that exposure to asbestos fibers is the only known cause of mesothelioma.[FN14]

Although it is not required that a plaintiff prove the asbestos fiber levels in the dust that was inhaled[FN15] and this may often be an impossibility owing to the passage of time, a plaintiff's proof of medical causation can only benefit by some documentation of the level or quantity of his or her asbestos exposure. A plaintiff's medical experts would then be in a position to testify that inhalation or ingestion of that quantity would be consistent with causation of a particular asbestos-related disease. In at least one case, establishing the levels of asbestos exposure was accomplished by way of a stipulation from the defendant.[FN16] However, counsel should be wary of such concessions since ultimately they may pave the way for a defense argument that:
1. Exposure to the defendant's product was insufficient to cause plaintiff's injury; or
2. The defendant's product contained such a low level of asbestos fiber that it could not have been the cause of plaintiff's injury.

Ultimately, such a defense argument can be countered with the testimony of the plaintiff's medical experts that exposure to any quantity of asbestos fiber or dust is potentially dangerous.

**CUMULATIVE SUPPLEMENT**

**Cases:**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

60 Am. Jur. Trials 73

Automobile manufacturer's asbestos-containing brake and clutch products were not substantial contributing factors with respect to plaintiff's mesothelioma, although plaintiff worked at garage on manufacturer's vehicles, as vehicles did not contain original brake and clutch parts, co-workers could not identify manufacturer or supplier of replacement parts, and there was no evidence that manufacturer had contract with garage to supply replacement parts; manufacturer occupied only 15% of replacement parts market, there was testimony that it was common for mechanics to use different replacement parts, and language in vehicle instruction book to use manufacturer's parts was nothing more than marketing message. Ford Motor Co. v. Wood, 119 Md. App. 1, 703 A.2d 1315 (1998).

**[Top of Section]**

**[END OF SUPPLEMENT]**

**§ 45. Causation in asbestos-injury cases; generally—Smoking as concurrent cause**

**[Cumulative Supplement]**
In many cases of occupational exposure to asbestos fibers, the plaintiff who sustains an asbestos-related disease is also a smoker. It has been demonstrated that smoking and exposure to asbestos fibers have a synergistic effect on the body.[FN17] The question arises whether smoking, which contributes to or aggravates an individual's asbestos-related disease[FN18] by delaying or impeding treatment, constitutes a bar to recovery. In courts which have considered this issue, unless smoking is the sole cause of the injury (in which case dismissal is warranted), it is treated as a "concurrent cause" and recovery is permitted, however, defendants have successfully contended that the amount of damages recoverable by injured parties who smoke should be reduced based upon their comparative negligence.[FN19]

In courts which have considered the issue of comparative negligence, factors deemed appropriate for evidentiary elucidation include (1) the plaintiff's smoking and medical history; (2) expert testimony regarding the effects of smoking and asbestos exposure on plaintiff's condition; and (3) failure of plaintiff to follow medical advice and stop smoking.[FN20]

**CUMULATIVE SUPPLEMENT**

**Cases:**

Under *Daubert* analysis, expert would be permitted to testify on the relationship between the conduct of tobacco companies and claimant smoking patterns, disease causation and resulting injury to claimants, based on proposed model purporting to demonstrate that claimants exposed to asbestos would have quit smoking earlier if they had not been mislead by fraud perpetrated by tobacco companies. Fed.Rules Evid.Rule 702. Falise v. American Tobacco Co., 258 F. Supp. 2d 63 (E.D. N.Y. 2000); West's Key Number Digest, Evidence ⟶555.10.

Asbestos supplier was prejudiced, in toxic exposure case by cement plant worker resulting in award of $37,240 in economic damages, by improper refusal of instruction that supplier was only liable for medical monitoring that was different from or in addition to that already required because of worker's smoking history and tuberculosis; while supplier's counsel was permitted to make that argument to jury without objection at that time, worker's counsel subsequently argued in rebuttal that supplier's theory was "irrelevant," not approved by any instruction, and therefore outside applicable law. Gutierrez v. Cassiar Min. Corp., 64 Cal. App. 4th 148, 75 Cal. Rptr. 2d 132 (1st Dist. 1998).

**Asbestos manufacturers vs Tobacco manufacturers:** Producer of asbestos materials that sought to recover from tobacco companies for its payment of damage awards to claimants with injuries caused, at least in part, by smoking did not suffer a direct injury, and thus asbestos producer's claims against tobacco companies for fraud, unjust enrichment, and violation of state antitrust laws were barred by doctrine of proximate cause. Owens Corning

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.