UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          . Case No. 01-1139(JKF)
                                .
                                .
W.R. GRACE & CO.,               . 5414 USX Tower Building
                                . Pittsburgh, PA  15222
                                .
                Debtor.  .
                                . December 17, 2007
. . . . . . . . . . . . . . . . . 2:08 p.m.


TRANSCRIPT OF HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE


<u>APPEARANCES</u>:

For the Debtor:                 Reed Smith, LLP
                                By:  JAMES J. RESTIVO, JR., ESQ.
                                     TRACI REA, ESQ.
                                435 Sixth Avenue
                                Pittsburgh, PA  15219


For Property Damage             Speights & Runyan
Claimants:                      By:  DANIEL A. SPEIGHTS, ESQ.
                                200 Jackson Avenue East
                                Hampton, SC  29924


Audio Operator:                 Cathy Younker


Proceedings recorded by electronic sound recording, transcript
          produced by transcription service.
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

<u>TELEPHONIC APPEARANCES</u>:

```
For the Debtor:              Kirkland & Ellis, LLP
                             By:  JANET BAER, ESQ.
                                  DAVID M. BERNICK, P.C., ESQ.
                                  LORI SINANYAN, ESQ.
                                  THEODORE FREEDMAN, ESQ.
                                  AMANDA BASTA, ESQ.
                                  BARBARA HARDING, ESQ.
                                  DAVID MENDELSON, ESQ.
                                  ELLEN AHERN, ESQ.
                             Aon Center
                             200 East Randolph Drive
                             Chicago, IL  60601


For the Debtor:              Pachulski, Stang, Ziehl, Young,
                              Jones & Weintraub, P.C.
                             By:  JAMES E. O'NEILL, ESQ.
                             919 North Market Street
                             17th Floor
                             P.O. Box 8705
                             Wilmington, DE  19899


For Dies & Hile PD Claimants: Pryor Cashman Sherman & Flynn LLP
                             By:  RICHARD LEVY, JR., ESQ.
                             410 Park Avenue
                             New York, NY  10022


For David T. Austern,        Orrick Harrington & Sutcliffe
Future Claimants Rep:        By:  DEBRA FELDER, ESQ.
                                  ROGER FRANKEL, ESQ.
                                  RAYMOND MULLADY, ESQ.
                                  RICHARD H. WYRON, ESQ.
                                  JOHN ANSBRO, ESQ.
                             3050 K Street, NW
                             Washington, DC  20007


For Asbestos Creditors'      Caplin & Drysdale, Chartered
                             By:  NATHAN D. FINCH, ESQ.
                                  PETER LOCKWOOD, ESQ.
                                  RITA TOBIN, ESQ.
                                  WALTER SLOCOMBE, ESQ.
                             One Thomas Circle, NW
                             Washington, DC  20005

                             Campbell & Levine, LLC
                             By:  MARK T. HURFORD, ESQ.
                             800 N. King Street
                             Suite 300
                             Wilmington, DE  19801
```

<u>TELEPHONIC APPEARANCES (Cont'd.)</u>:

| | |
|---|---|
| For Official Committee of<br>Property Damage Claimants: | Bilzin Sumberg Baena Price<br> & Axelrod LLP<br>By:  JAY M. SAKALO, ESQ.<br>Wachovia Financial Center<br>200 South Biscayne Boulevard<br>Suite 2500<br>Miami, FL  33131 |
| For Reaud, Morgan & Quinn<br>and ELG: | Stutzman, Bromberg, Esserman,<br> & Plifka, PC<br>By:  SANDER L. ESSERMAN, ESQ.<br>     VAN J. HOOKER, ESQ.<br>     DAVID J. PARSONS, ESQ.<br>2323 Bryan Street, Suite 2200<br>Dallas, TX  75201 |
| For Ad Hoc Committee<br>of Equity Security-Holders: | Weil, Gotshal & Manges, LLP<br>By:  M. JARRAD WRIGHT, ESQ.<br>     DAVID HICKERSON, ESQ.<br>1300 Eye Street, NW, Suite 900<br>Washington, DC 20005 |
| For the Official Committee<br>of Asbestos Property<br>Damage Claimants: | The Scott Law Group<br>By:  DARRELL SCOTT, ESQ.<br>2712 Middleburg Dr.<br>P. O. Box 2665<br>Columbia, SC 29206 |
| For National Union Fire<br>Company: | Zeichner Ellman & Krause LLP<br>By:  MICHAEL S. DAVIS, ESQ.<br>     ROBERT GUTTMAN, ESQ.<br>575 Lexington Avenue<br>New York, NY  10022 |

TELEPHONIC APPEARANCES (Cont'd.):

| | |
|---|---|
| For Official Committee of Asbestos Property Damage Claimants: | Ferry, Joseph & Pearce, P.A. By:  THEODORE J. TACCONELLI, ESQ. 824 Market Street Suite 904 P.O. Box 1351 Wilmington, DE  19899 |
| | Dies & Hile, LLP By:  MARTIN DIES, ESQ. 1009 W. Green Avenue Orange, TX  77630 |
| For Future Claimants: | Phillips, Goldman & Spence, P.A. By:  JOHN C. PHILLIPS, JR., ESQ. 1200 North Broom Street Wilmington, DE  19806 |
| For the State of Montana: | Womble Carlyle Sandridge & Rice By:  FRANCIS A. MONACO, JR., ESQ. 222 Delaware Avenue Wilmington, DE  19801 |
| For Grace Certain Cancer Claimants: | Montgomery, McCracken, Walker   & Rhoads, LLP By:  NOEL C. BURNHAM, ESQ. 300 Delaware Avenue, Suite 750 Wilmington, DE  19801-1607 |
| | Montgomery, McCracken, Walker   & Rhoads, LLP By:  NATALIE D. RAMSEY, ESQ. 123 South Broad Street Philadelphia, PA  19109 |
| U.S. Trustee: | U.S. Trustee Department By:  DAVID KLAUDER 844 King Street Suite 2313 Lockbox 35 Wilmington, DE 19801 |

TELEPHONIC APPEARANCES (Cont'd.):

```
For PD Claimants:              Richardson Patrick Westbrook
                                 & Brickman, LLC
                               By:  EDWARD WESTBROOK, ESQ.
                               1037 Chuck Dawley Blvd., Bldg. A
                               Mount Pleasant, SC  29464

Official Committee of          Duane Morris, LLP
Unsecured Creditors:           By:  MICHAEL R. LASTOWSKI, ESQ.
                               1100 North Market St., Suite 1200
                               Wilmington, DE  19801-1246

For London Market Companies:   Mendes & Mount, LLP
                               By:  ALEXANDER MUELLER, ESQ.
                               750 Seventh Avenue
                               New York, NY  10019-6829

For Asbestos Property Damage   The Brandi Law Firm
                               By:  TERENCE D. EDWARDS, ESQ.
                               44 Montgomery Street, Ste. 1050
                               San Francisco, CA  94104

For Ford Marrin Esposito       Ford Marrin Esposito Witmeyer
Witmeyer & Gleser, LLP:          & Gleser, LLP
                               By:  SHAYNE SPENCER, ESQ.
                               Ford Marrin Esposito Witmeyer
                               Wall Street Plaza
                               New York, NY  10005

For Barren & Budd et al:       Law Offices of Daniel K. Hogan
                               By:  DANIEL K. HOGAN, ESQ.
                               1701 Shallcross Avenue
                               Suite C
                               Wilmington, DE  19806

For Christopher M. Candon:     Cohn Whitesell & Goldberg, LLP
                               By:  CHRISTOPHER M. CANDON, ESQ.
                               101 Arch Street
                               Boston, MA  02110

For David T. Austern, The      Piper Jaffray & Co.
Future Claimants Rep.:         By:  JASON SALGANICK
                                    JONATHAN BROWNSTEIN
```

TELEPHONIC APPEARANCES (Cont'd.):

| | |
|---|---|
| For Official Committee of<br>Asbestos Property Damage<br>Claimants: | Anderson Kill & Olick, P.C.<br>By:  ROBERT M. HORKOVICH, ESQ.<br>1251 Avenue of the Americas<br>New York, NY  10020 |
| For Travelers Indemnity<br>Insurance Co.: | Simpson, Thacher & Bartlett, LLP<br>By:  SUNG CHOI, ESQ.<br>25 Lexington Avenue<br>New York, NY  10017 |
| For Share Holder for W.R.<br>Grace & Co.: | Tocqueville Asset Management<br>By:  PETER SHAWN |
| For Citadel Investment Group: | Citadel Investment Group<br>By:  BEAU HARBOUR<br>        (telephonic appearance) |
| For Scotts Company:<br> LLP | Vorys, Sater, Seymour and Pease<br>By:  TIFFANY STRELOW COBB, ESQ.<br>52 East Gay Street<br>P.O. Box 1008<br>Columbus, OH  43216 |
| For Dune Capital Management: | Dune Capital Management<br>By:  GUY BARON |
| For BNSF Railway Company: | Pepper Hamilton, LLP<br>By:  ANNE MARIE AARONSON, ESQ.<br>3000 Two Logan Square<br>18th & Arch Streets<br>Philadelphia, PA  19103 |
| For One Beacon America<br>Insurance Company: | Drinker Biddle & Reath LLP<br>By:  DAVID P. PRIMACK, ESQ.<br>1100 N. Market Street<br>Suite 1000<br>Wilmington, DE 19801 |
| For Fireman's Fund<br>Insurance Company: | Stevens & Lee<br>By:  DAVID R. BEANE, ESQ.<br>111 North Sixth Street<br>P.O. Box 679<br>Reading, PA  19603 |

<u>TELEPHONIC APPEARANCES (Cont'd.)</u>:

For Federal Insurance Co.:     Cozen O'Connor
                               By:  JEFFREY R. WAXMAN, ESQ.
                               Chase Manhattan Centre
                               1201 North Market Street
                               Suite 1400
                               Wilmington, DE  19801

For State of California:       Hahn & Hessen LLP
                               By:  CHRISTINA J. KANG, ESQ.
                               488 Madison Avenue
                               14th and 15th Floor
                               New York, NY  10022

For Official Committee of      LECG, LLC
of Asbestos Property           By:  ELIZABETH DEVINE
Claimants:

For City of Abarnsville:       Motley Rice, LLC
                               By:  FREDERICK J. JEKEL, ESQ.
                               28 Bridgeside Blvd.
                               Mt. Pleasant, SC  29464

For Murray Capital             Murray Capital Management
Management:                    By:  MARTI MURRAY

For Allstate:                  Cuyler Burk, LLP
                               By:  ANDREW K. CRAIG, ESQ.
                               Parsippany Corporate Center
                               Four Century Drive
                               Parsippany, NJ  07054

For W.R. Grace & Co.:          W.R. Grace & Co.
                               By:  WILLIAM SPARKS

For Official Committee of      Kramer, Levin, Naftalis &
Equity Security Holders:        Frankel, LLP
                               By:  DOUGLAS H. MANNAL, ESQ.
                                    PHILIP BENTLEY, ESQ.
                                    PEGGY FARBER, ESQ.
                               919 Third Avenue
                               New York, NY  10022

For Citadel Investment         Citadel Investment Group
Group:                         By:  BEAU HARBOUR

| | |
|---|---|
| For Ad Hoc Committee of<br>Security Holders: | Dewey & LeBoeuf, LLP<br>By:  JUDY G. LIU, ESQ.<br>125 W. 55th Street<br>New York, NY  10019-5389 |
| For W.R. Grace & Co.: | W.R. Grace & Co.<br>By:  JOHN PORT |
| For CNA: | Goodwin & Procter, LLP<br>By:  DANIEL M. GLOSBAND, ESQ.<br>Exchange Place<br>Boston, MA  02109 |
| For Certain Asbestos<br>Claimants: | Simmons Cooper, LLC<br>By:  ROBERT W. PHILLIPS, ESQ.<br>707 Berkshire Boulevard<br>East Alton, IL  62024 |
| For Seaton: | Drinker Biddle & Reath LLP<br>By:  ANDREA L. D'AMBRA, ESQ.<br>One Logan Square<br>18th & Cherry Streets<br>Philadelphia, PA  19103 |
| For Vinson & Elkins: | Vinson & Elkins<br>By:  ARI BERMAN, ESQ.<br>666 Fifth Avenue, 26th Floor<br>New York, NY  10103-0040 |
| For Litigation Resolution<br>Group: | Litigation Resolution Group<br>By:  PETER KELSO |
| For Warren H. Smith, Fee<br>Auditor: | Warren H. Smith & Associates, PC<br>By:  WARREN H. SMITH |

1                THE CLERK:  All rise.

2                THE COURT:  Good afternoon.

3                ALL:  Good afternoon, Your Honor.

4                THE COURT:  This is the matter of W.R. Grace,

5    Bankruptcy Number 01-1139.  The participants by phone, Peter

6    Lockwood, Frederick Jekel, Richard Levy, Edward Westbrook, John

7    Ansbro, Marti Murray, Jarrad Wright, David Hickerson, Robert

8    Horkovich, Theodore Tacconelli, Andrew Craig, Alex Mueller,

9    Christina Kang, Peter Shawn, Michael Lastowski, William Sparks,

10   Jonathan Brownstein, Daniel Hogan, Jason Salganick, Sung Choi,

11   Catherine Chen, Raymond Mullady, Debra Felder, Lori Sinanyan,

12   James O'Neill, Douglas Mannal, Beau Harbour, Arlene Krieger,

13   David Klauder, Christopher Candon, Sander Esserman, Theodore

14   Freedman, Janet Baer, David Primack, Jay Sakalo, Natalie

15   Ramsey, Noel Burnham, Judy Liu, Mark Hurford, Phillip Bentley,

16   Guy Baron, Peggy Farber, John Port, Rita Tobin, Elizabeth

17   Devine, Barbara Harding, Nathan Finch, Darrell Scott, Anne

18   Marie Aaronson, Richard Wyron, Terence Edwards, Jeff Waxman

19   David Beane, Van Hooker, David Parsons, Robert Phillips,

20   Francis Monaco, Daniel Glosband, Roger Frankel, Andrew D'Ambra,

21   Martin Dies, Walter Slocombe, Shayne Spencer, Michael Davis,

22   Robert Guttman, Tiffany Cobb, Ellen Ahern, David Bernick, Ari

23   Berman, John Phillips, David Mendelson, Peter Kelso, Warren

24   Smith, and Daniel Speights.  But I see Mr. Speights in the

25   courtroom.

1          There is no one in Delaware that I can see.  Is there

2    anybody who's not visible on the video?

3                      (No verbal response)

4          THE COURT:  Okay.  There's no one in Delaware.  I'll

5    take entries in court, please.

6          MR. RESTIVO:  James Restivo and Traci Rea for the

7    debtor.

8          MR. SPEIGHTS:  Dan Speights for Allegheny Center and

9    for Anderson Hospital.

10         THE COURT:  Mr. Speights, I'm glad you're here,

11   because I have a question to ask, but I'm a little confused.

12   I'm working on the Anderson Memorial class certification, and I

13   just want to be sure I have that claims issue correct.  The

14   claims in Anderson Memorial that you're trying to get into the

15   Anderson class certification, the number that you currently

16   represent as reflected in that motion, there were 78 claims,

17   one of which was the South Carolina building, and then there

18   were 77 other claims.  Those are not the 71 that were involved

19   in the lack of authority claims or the California claims or any

20   other claims.  Is that correct?  They're unique to that motion?

21         MR. SPEIGHTS:  That's correct.  You're absolutely

22   correct.  I know what you're asking.  You're correct.  Those

23   matters, which were appealed at the District Court, which ruled

24   several days ago and affirmed Your Honor, will probably be

25   appealed to the Third Circuit, are not involved in what was

1 briefed to you.  They would be -- however, if the Third Circuit

2 decides to disagree with Your Honor, they would be part of the

3 definition of Anderson.

4          THE COURT:  That's okay though.  I mean if they're --

5 if those claims have to get added to Anderson that's all right.

6 I'm just concerned about what happens if they're already part

7 of that motion.  They're not part of the Anderson motion --

8          MR. SPEIGHTS:  Well, technically, Your Honor --

9          THE COURT:  -- right now.

10          MR. SPEIGHTS:  -- when the motion was filed in 2005,

11 they were part of it, but you have, of course, dismissed those

12 claims, and they were not discussed when we argued it out of

13 the fold, Your Honor.

14          THE COURT:  Okay.  I guess the issue -- the issue I

15 guess is this.  I think the issue is this.  I can decide the

16 Anderson Memorial issue.  If the Circuit decides that I'm wrong

17 on the 71 claims, then one of two things will happen.  If

18 Anderson's certified and the Circuit says put the 71 in, then

19 they go in.  If Anderson's not certified, and I'm wrong on

20 Anderson and I'm wrong on the 71 claims, then we deal with all

21 that issue later anyway.  If Anderson's not certified, and the

22 Circuit says I'm wrong on the 71, then we deal with the 71

23 claims anyhow.  So I think the answer is I can go forward with

24 Anderson and get an opinion out on Anderson regardless.  That's

25 what I'm trying to get to.  I want to make sure that I'm not

1  somehow or other barred from issuing an opinion on Anderson,

2  and I think I'm not.

3          MR. SPEIGHTS:  I don't -- if I could just answer your

4  question, and Mr. Bernick can then -- I'm sure he has something

5  to say, but if I can -- just so our record's clear, I don't

6  think there is a bar from you dealing with Anderson, but to

7  carry the thought one inch further from where you had gone,

8  there is another alternative as well down the road is the Third

9  Circuit -- of course, if you certify Anderson, it moots the

10 appeal, in my view.  At least I would come back and say you've

11 certified Anderson.  They should be in here.  Anderson had

12 authority to file class proof of claim.  We'll argue about

13 that.  I'm sure Mr. Bernick will have some arguments.

14          In the alternative, if the Third Circuit affirms Your

15 Honor, we still would be coming in here and asking you on

16 behalf of some or all of those claimants to allow late-filed

17 claims.  So it's like so much in this bankruptcy.  Things just

18 keep going, and I don't want to leave you the misimpression

19 that the resolution that the Third Circuit will finally resolve

20 -- we call them 71.  I think there are actually 41 that are on

21 appeal.

22          THE COURT:  Okay, but the -- but from your point of

23 view, I'm not somehow or other stayed from issuing the opinion

24 on Anderson that I'm hoping to get out hopefully by not too

25 long after the 1st of the year.

1          MR. SPEIGHTS:  I agree with that, Your Honor.  I may

2  at the end of the day address something else about Anderson,

3  but I agree with Your Honor that you're not stayed.

4          THE COURT:  Okay.  Yes, Mr. Bernick?

5          MR. BERNICK:  Well, Your Honor, I think on that

6  narrow issue that's correct.  I mean the pendency of that

7  appeal will affect the issue that's being appealed.  Whatever

8  the ramifications are of that appeal or Your Honor's

9  determination with respect to class certification presumably

10  will be resolved or addressed with the Court depending upon

11  what you do with class certification.  But I think that if the

12  narrow issue is is Your Honor precluded from passing on the

13  class certification issue by reason of the pendency of those

14  issues with respect to those claims, I would agree that it's

15  not stayed.

16          THE COURT:  Okay.  That's fine.  I just want to make

17  sure that I'm not spinning wheels after all this time when I

18  finally am getting to that issue.  I don't want to have an

19  opinion that comes out only to find out that I didn't have the

20  ability to issue it in the first place, so good.  Mr. Restivo,

21  I'll turn to the agenda.  I'm sorry for sidetracking it, but

22  since I was just working on that as we came in, I thought I

23  better get some clarity for that.

24          MR. RESTIVO:  I believe ---

25          MS. BAER:  Your Honor --

14

1            MR. RESTIVO:  -- Ms. Baer will handle that

2    telephonically, Your Honor.

3            THE COURT:  All right.  Thank you.  Ms. Baer.

4            MS. BAER:  Yes, Your Honor.  It's actually going to

5    go very quickly to a certain point.  Matters numbers 1 through

6    7 and matter 9, Your Honor, you have already entered orders on

7    all of those matters, either continuing them in the case of one

8    or two, and then the rest of them entering orders which resolve

9    the matter.  So the first contested matter on the agenda, Your

10   Honor, for this afternoon is matter Number 8, which is Mr.

11   Restivo's motion with respect to Allegheny Center.

12           THE COURT:  Mr. Restivo.

13           MR. RESTIVO:  Your Honor, Item Number 8 on the agenda

14   deals with our motion to expunge Claims 11036 and 11037 dealing

15   with Allegheny Center 1 and 2 as being duplicative of the pro

16   se Allegheny Center Associates claim, which this Court has

17   already expunged on statute of limitations grounds.  The

18   expunged claim, Your Honor, carried the Number 9778.  In that

19   claim the claimant verified that it had removed asbestos in the

20   1980s, almost a dozen years prior to the filing of this

21   bankruptcy.

22           I need to put our current motion in a little

23   historical perspective.  The Court may recall that going back

24   to the fall of last year I advised the Court and the parties

25   that we would be filing summary judgment motions based upon

1   undisputed facts in verified claim forms that we believe would

2   establish either lack of product identification or a claim

3   being barred by the relevant statute of limitations or statute

4   of repose.  We reviewed the over 600 remaining claims at that

5   time to identify those with undisputed facts that would lend

6   themselves to summary judgment motions.

7          And, as the Court is very well aware, we filed

8   motions on hundreds of cases emanating from California, Canada,

9   New York, Arkansas, and a handful of other states.  Those

10  motions, Your Honor, were fully briefed, and almost all of

11  them, but not all of them, were argued before Your Honor on

12  April 9, 2007.  One of those motions, Your Honor, was a motion

13  to disallow and expunge 16 claims as being time barred.  That

14  motion was filed on February 16, 2007.  That motion was served

15  upon, among others, Allegheny Center Associates at 1 and 2

16  Allegheny Center, and upon Daniel A. Speights of the Speights

17  and Runyan law firm.  And the basis for that motion, as it

18  related to Claim Number 9778 was that Allegheny Center

19  Associates itself admitted in its claim form that asbestos had

20  been removed from the buildings at issue in the 1980s.

21         At the argument on April 9, 2007 my partner, Ms. Rea,

22  as reported on Page 192 of the transcript of that hearing,

23  advised the Court that there were two claimants named in our

24  motion that had not responded to the motion, and one of those

25  was Allegheny Center Associates Claim Number 9778.  And Your

1  Honor at that time, as noted at Page 193 of the transcript

2  asked, "All right.  Is anyone present representing Allegheny

3  Center Associates?"  Sitting at the property damage claimants'

4  counsel table at that time were Mr. Speights and his partners

5  Alan Runyan and Marion Ferry.  There was no response, and this

6  Court said again at Page 193, "There is no response, so I'm

7  expunging this claim as barred by the statute of limitations."

8        Moving forward, Your Honor, to more recent times, at

9  one of the property damage status reports that I gave the Court

10 using my magnetic board, I made reference to a category called

11 remaining cases where there was about 16 to 18 to 20 remaining

12 cases.  I advised the Court that some of those were really not

13 before the Court, one of this was Solo, and that we were going

14 to take a look at the rest to see what their status was.  And,

15 in fact, we did that, Your Honor.  We discovered that Claims

16 11036 and 11037 filed by Speights and Runyan for, respectively,

17 2 Allegheny Center and 1 Allegheny Center, turns out to have

18 covered the same buildings as Claim Number 9778, which was

19 filed by Allegheny Associates itself.

20        Now, Your Honor, we had not filed summary judgment

21 motions on Claims 11036 and 11037, because contrary to the

22 claim form filed by Allegheny Center Associates itself in which

23 they answered Question 10 on renovations by admitting, "1980s

24 asbestos removal," Speights and Runyan answered that same

25 question for Claims 11036 and 11037 by stating, "Multiple

1 renovations over various years."  Obviously, that response

2 successfully avoided any summary judgment motion by us since

3 Speights and Runyan carefully avoiding -- avoided disclosing

4 the date of any asbestos abatements or indeed even the fact of

5 an asbestos abatement.

6          So more recently, Your Honor, when we reviewed the

7 claim files for the 16 or so remaining claims on our status

8 report board, we discovered that these two claims covered the

9 same buildings as expunged Claim Number 9778.  On October 11 I

10 called Mr. Speights.  I told him what we had discovered, and I

11 asked him to withdraw those claims as duplicates.  I had Ms.

12 Rea send him a draft motion that we were prepared to file.  He

13 asked us to hold off filing the motion until he had a chance to

14 visit the property and talk to his clients, which he planned to

15 do around a scheduled omnibus in Pittsburgh at that time, and

16 so we did hold off.

17          Thereafter, having heard nothing from Mr. Speights

18 after the date when we understood he was going to visit the

19 property and talk to his clients, we filed our motion to

20 expunge these two claims as duplicative of Claim Number 9778

21 and on the independent grounds of the statute of limitations.

22 Now, Speights and Runyan opposed our motion.  First, they

23 allege or suggest that we may have sent our original motion to

24 Allegheny Center at the wrong address, because while we had the

25 correct address for Allegheny Center, we did not include the

1  words Mall Office on the mailing.  Significantly, their papers

2  do not state that their clients did not receive the motion, and

3  there's no affidavit stating that Allegheny Center didn't

4  receive the motion, nonetheless, one reason that motion is

5  being opposed is, because it didn't have the words Mall Office

6  in the address.

7            In any event, Your Honor, Speights and Runyan itself

8  received that motion, and they were in court when the motion

9  was presented.  And when the Court asked whether anyone

10  representing Allegheny Center Associates was present, they

11  stood silent, and our motion was granted.

12            Secondly, Your Honor, they oppose our motion on the

13  grounds that we did not raise an objection that these claims

14  were duplicate claims.  That we plead guilty to that charge,

15  Your Honor.  We did not know they were duplicate claims.  In

16  collating over 600 property damage claims, we simply did not

17  realize that Claim Number 9778 with undisputed facts lending

18  itself to a statute of limitations motion involved the same

19  buildings as Claims 11036 and 11037 filed by Speights and

20  Runyan.  Now we know it, and now we filed a motion to expunge

21  it.  And I would note that apparently Speights and Runyan

22  themselves did not know it, because they were in court when the

23  Court asked does anyone here represent Allegheny Center, and

24  they stood silent.

25            Third, Your Honor, they say that we cannot move to

**J&J COURT TRANSCRIBERS, INC.**

1  expunge the claims now, because we were required to list all

2  substantive objections in a single objection.  And the simple

3  answer to that, you know, is if Speights and Runyan had fully

4  and completely answered Question 10 on the claim form the way

5  Allegheny Center Associates', it's client, did and disclosed

6  asbestos removal in the 1980s, Grace could've raised a

7  substantive objection, and we could've moved for summary

8  judgment.  Having elected to give less than a full and complete

9  response to Question 10, we don't believe Speights and Runyan

10 is in a position to say we should have known we had a

11 substantive objection.

12        Lately, Your Honor, Speights and Runyan suggest that

13 we cannot file this motion, because we are guilty of a comedy

14 of errors in not discovering early -- earlier that this was a

15 duplicate claim.  And again, Your Honor, the easiest answer to

16 that is apparently Speights and Runyan themselves didn't know

17 they represented this claim when they received our papers,

18 responded on behalf of some claims, and not these, and when

19 they were sitting in the Court and the Court asked does anyone

20 here represent Allegheny Center.

21        Mr. Speights' opposition finally suggests, Your

22 Honor, that if the Court is inclined to rule on our motion that

23 the Court should set down a briefing schedule, Your Honor, we

24 believe it has been briefed.  We filed our motion.  Speights

25 and Runyan have filed a full response.  It's a relatively

1  simple matter, and the debtor's suggestion, Your Honor, is that

2  it doesn't need any further briefing.  What we need is for the

3  Court to tell us to set this down for argument at the January

4  omnibus, which I believe is January 28th, and we will find out

5  where we stand on that, and the Court will rule.

6          THE COURT:  Mr. Speights.

7          MR. SPEIGHTS:  Well, obviously, Your Honor, we're not

8  here at an evidentiary hearing, and I do take the position, and

9  rather strongly, that we should not be here at all first,

10 because it's too late, and secondly, because Mr. Restivo has

11 not teed up the matter in the proper way.  But I must say at

12 the outset that I think the record is clear, but I want to make

13 sure it's absolutely clear that when Ms. Rea was here objecting

14 to this claim that Your Honor expunged, neither she nor Mr.

15 Restivo nor anybody at W.R. Grace had any idea that it was the

16 same building or buildings as those which we represented.  They

17 did not serve us with papers intending for us to file some

18 response as a lawyer for this claim.  We didn't file that

19 claim.  And they were surprised later on, a year or two later

20 on, to discover that there might be a duplicate claim here, and

21 they brought it to our attention.  We didn't know it was a

22 duplicate claim, and it's just merely by being in a courtroom

23 when the word Allegheny is mentioned, perhaps Allegheny

24 Associates, and not 1 Allegheny or whatever, is enough to give

25 notice and dismiss the claim.  I'm a little taken aback by such

1  a concept, especially because they admit that they didn't

2  believe that we were the lawyers for this claim that Your Honor

3  dismissed.

4         The other matter I think needs to be clear before I

5  start on what I planned to say, Speights and Runyan didn't

6  avoid a summary judgment motion by whatever it put in the claim

7  form.  The problem with Grace's position, one of the many

8  problems, which I'll address in a minute, is that they did not

9  object on statute of limitations grounds to the two allegation

10  claims that we filed, and I don't think there's anything in the

11  record to suggest that they didn't object because of the way we

12  answered that question in that situation and in many other

13  situations.  But, in addition, Your Honor, Mr. Restivo has not

14  addressed the fact that there was significant discovery with

15  respect to our claims and supplementation with documents and

16  whatever happened with this claim.

17         Let me get back on track, because I think today's

18  question is very simple.  Today's question is is Grace entitled

19  to go farther with this, and if they are, then we do have to

20  schedule another hearing, and I'm not sure January's the

21  appropriate time, because I don't know that we need evidence,

22  but I certainly -- live testimony, but I certainly think that

23  we have to have affidavits, etcetera, in the record, because

24  there are many factual issues floating around here if we need

25  to get to.

1        The bottom line though, Your Honor, is that you

2   issued at Grace's request, before Mr. Restivo was the PD Chief,

3   an order granting a waiver of the local rule, and you did so at

4   Grace's urging, so that they could put all their objections in

5   one pleading, and you sort of read the riot act to him.  Okay,

6   this is what you want.  I'm going to give it to you, despite

7   Mr. Baena kicking and screaming over here on the other side of

8   the room, but you need to put them all in there, because we're

9   not going back and do this over and over and over again.  And

10  they did not object to my two claims, which are subject to the

11  hearing today, on statute of limitations grounds.  And coming

12  in here merely with some motion is not the appropriate piece of

13  paper.

14        If they feel -- I think it's too late.  It's two

15  years too late.  The fact that they discovered on their fifth

16  mining exercise of discrepancy on claims here a few months ago,

17  I'm sure if they'll look again a month from now, they'll find

18  something else that makes them say, oops, we could've done

19  this.  But regardless of whether they can be allowed to raise

20  this, they need to raise it by an objection to my claims.

21  They're not objected to now on statute of limitations grounds,

22  nor are they objected to on duplicate grounds.  And if they

23  want to raise it, that's what they need to do.  They need to

24  file a motion to amend the objection, and then we'll come in

25  here and argue about whether they can, in fact, show some good

1  cause to amend their objection in light of everything that went

2  on back when we argued two years ago, and Mr. Baena argued the

3  waiver of the local rule.

4          We went through this back in the spring with respect

5  to some other objections on product I.D. which they missed, and

6  Your Honor ruled very clearly that, you know, you can't come

7  along later on with a possible exception, and Your Honor gave

8  it then.  They have the burden to come in here and say we now

9  want to object to these two high rise buildings in Pittsburgh's

10 claims that you filed, and then we'll argue whether they meet

11 that task.  And I --

12         The second thing, Your Honor, is that we've been

13 here, done this before.  In January, 2006 we argued a bunch of

14 motions before Your Honor on authority, and if he -- the

15 authority issued to bid, except for the 7141 issue, in January,

16 but at that time, if Your Honor recalls, Grace was sort of

17 messed upon its numbers.  They were saying there's so many

18 claims, and I said no, there are really so many claims, and we

19 found out there were all sorts of duplicate issues floating

20 around, and you directed us to get together and figure out this

21 duplicate problem, and we did so.  And we worked with Kirkland

22 and Ellis and filed a proposed order, which Your Honor executed

23 some time in March of 2006 dealing with the duplicate problem.

24         So not only did they not object to begin with, they

25 didn't catch the so-called duplicate problem back in 2006 when

Case 01-01139-AMC   Doc 17743   Filed 01/03/08   Page 24 of 70

1 they had the opportunity.  So for those grounds alone, Your

2 Honor, I don't think we need to go down this road again.  If we

3 do, we'll be back and forth, back and forth, just like we were

4 on the alter amend or something else, because these matters

5 have a way of never ending.

6         If Your Honor wants to discuss the merits, however,

7 let me say just several things.  First of all, there is nothing

8 about the claim itself that if somebody came in here and

9 objected and wanted a default would've resulted in a dismissal

10 on the statute of limitations.  They would've made their

11 motion.  There would've been a brief by the other side, and the

12 fact that they removed some asbestos somewhere perhaps on

13 December 31, 1980 would not have resolved the statute of

14 limitations issue, because, Your Honor, first of all, the very

15 same claim form that they rely on does not say it was Grace's

16 product.  It does not say it was Grace's product.  And

17 secondly, and perhaps most importantly, later on in the same

18 claim form --

19         And this was not a Speights and Runyan claim form.

20 You'll remember, Your Honor, they raised Cain, because I had

21 2003 in my claim forms of when we first knew it was a Grace

22 product.  Well, this client, apparently on its own with no

23 input from us, also put 2003 as being the honest answer of when

24 they first knew it was a Grace product.  So to come along and

25 say, well, clearly, we're entitled to summary judgment on the

1  merits, because they removed some material, maybe not Grace in

2  the late 1980s does not resolve the statute of limitations

3  problem.  So on the merits itself they would not have, I don't

4  believe, succeeded, and certainly would not have succeeded,

5  Your Honor, without briefing an oral argument and perhaps

6  evidence, which Your Honor would've taken as you are on all

7  those other claims that are before you on statute of

8  limitations.

9        But, Your Honor, even that argument on the merits I

10  don't believe they have shown -- and I believe it's their

11  burden to show that they gave notice to the person who filed

12  the claim -- the person who filed that claim whose name is

13  illegible on the claim form -- it's about as bad as my

14  signature -- have a specific office where he was located in the

15  Allegheny building.  And yet Grace, which has always fought me

16  on the idea of giving notice to building owners by sending a

17  notice to the building itself, did not send the notice of the

18  hearing -- did not send the piece of paper that would have led

19  them to appear to the address the person put down on that claim

20  form.  So there is a real issue if we have to get there.

21        Again, I don't think we need to get there.  I think

22  this is just one -- they didn't see it as a duplicate.  We

23  didn't see it as a duplicate, you know, and in the greater

24  context, they missed it.  But, in any event, I believe if we

25  have to go down the road to another hearing, there's a clear

1  issue here of whether they actually served.

2          And, lastly, Your Honor, and something that somebody

3  just emailed me the other day, there is some evidence that

4  somebody did, another lawyer not Speights and Runyan, file a

5  response as to that claim to the objection that was made by

6  Kirkland and Ellis back in 2005.  Specifically, Your Honor --

7  and I apologize.  I don't have the docket number, but I can get

8  it within -- before this hearing is over.  There is a pleading

9  filed, response of Allegheny Center Associates to debtor's 15th

10 omnibus objection substantive to asbestos property damage

11 claims, and that was filed by a Thomas J. L-e-a-n-s-e and Brian

12 D. H-u-b-e-n, attorneys for Allegheny Center Associates out of

13 Los Angeles on October 24th, 2005.  And attached to that is an

14 e-mail from on of those lawyers to Kirkland and Ellis dated

15 December 17, 2003 discussing something about I believe the

16 product I.D., etcetera on that matter.

17         In any event, Your Honor, there's a very real

18 question.  I haven't talked to these people.  I don't know who

19 they are, this law firm, but apparently there is a pleading --

20 maybe Mr. Restivo knows about it, and maybe somebody from

21 Kirkland knows about it -- that was filed, but my only point

22 today is they didn't give notice to this law firm.  They didn't

23 tell us that this was our claim, because they didn't know it

24 was, and they didn't give notice to the person who signed it.

25 They gave notice just to the building.

1       So for those reasons, Your Honor, I don't think we

2  need to go far with this.  I think they did not file their

3  objection in time, and if they really want to pursue it, once

4  they look at all the facts including this Los Angeles

5  situation, I think it's appropriate they file a motion to amend

6  their objection to our two claims which have been litigated

7  subject to discovery and a moving forward through the process.

8  Thank you, Your Honor.

9       MR. RESTIVO:  Your Honor, I wonder whether Mr.

10  Speights is representing as an officer of the court that, in

11  fact, Allegheny Center did not receive our motion.  If that's

12  his representation, I have one response.  If, in fact, they

13  received it, even though we didn't have the words Mall Office

14  on it, then I have a different response.

15       MR. SPEIGHTS:  And, if I could lean over that far,

16  I'm not making a factual representation one way or the other,

17  Your Honor.  I really don't want to be in the position of being

18  a witness.  It's not an evidentiary hearing, and I don't want

19  to be in the position of saying what I know and don't know, but

20  I'm prepared if we need to get to the facts to put the facts

21  out on the table.  And to my knowledge, the person did not, but

22  I'm not going to represent anything about -- I mean I would be

23  standing here and telling Your Honor that there was a question

24  of whether we got it if I knew, in fact, we got it.  I don't

25  know that.  But I don't know all the facts about this.  I just

1 got this e-mail -- I think it came on Friday -- showing me this

2 thing about Los Angeles, which I don't -- I don't understand.

3 And again my point is if we need to go down this road, if we

4 open this door, and we're going to do all this, I'm sure Mr.

5 Restivo -- like we do in the other claims, we will argue

6 between now and January what the facts are, etcetera, etcetera.

7 My point is a technical one but a basic one.  We shouldn't be

8 here.

9          MR. RESTIVO:  Your Honor, I was not involved when the

10 Court directed Mr. Speights and K&E to discuss duplicate

11 claims.  I take Mr. Speights at his word.  If he is correct,

12 then he had an obligation to identify that these were duplicate

13 claims.  I understand in good faith he didn't understand that,

14 and I guess I understand in good faith K&E didn't understand

15 it.  But this Court has expunged the claim involving 1

16 Allegheny Center and 2 Allegheny Center.  I don't think there's

17 any dispute by Mr. Speights that his claims involve the same

18 buildings, so we have moved to expunge them as duplicate.

19          If he wants to make his arguments as he has done in

20 his papers, fair enough.  Again, our position is we filed our

21 motion.  We think it has good basis.  He's responded.  Give us

22 an argument date at the January omnibus, and then the Court can

23 determine whether we're allowed to file.  If we are, then it's

24 a valid motion, that it's the same building, whatever the Court

25 needs to determine, and we'll know whether or not these two

1  buildings, which are duplicative of the claim already

2  dismissed, are still in play or off our board.

3       THE COURT:  Okay.  I'm not -- I think I'm missing a

4  little bit of the point.  If the claim -- if the underlying

5  claim already filed by the building owner has been expunged,

6  and that was a while back, it's a final order.  It's not been

7  appealed.  I haven't got any motion for reconsideration or to

8  move to open for any kind of lack of service or fraud or

9  anything.  I don't have a -- I don't have anything that the

10 building owner has brought forward telling me that that order

11 was somehow improper, and I inquired in the courtroom, largely

12 because the building's right down the street.  So, you know,

13 when the building's in your own backyard, people send their

14 lawyers here.  So I tend to ask that question anyway, but in

15 this case I was really somewhat shocked that there wasn't

16 somebody from our own backyard representing a building, but

17 there hadn't been, as far as I can recall, a response on the

18 record at that time.  At least I don't remember being aware of

19 it, if I was aware of it.  I don't have a recollection of that.

20      I do have a recollection of having asked whether

21 there was anyone present for Allegheny Center in the courtroom,

22 and there wasn't, and there was no response.  So that claim's

23 been expunged.  Once the claim's expunged, the claim's

24 expunged.  I don't see how you resurrect it by simply filing a

25 new claim.

1          MR. SPEIGHTS:  And, Your Honor, that's actually --

2          THE COURT:  So regardless of all the niceties, I'm

3   lost on -- I guess I'm lost as to how the new claim has any

4   validity, and maybe that's an argument we need to get to later.

5   But just be -- when one claim's expunged, you know, you don't

6   breath new life into it just by refiling it and putting a new

7   number on it.

8          MR. SPEIGHTS:  I'm going to address that exact

9   question.  Let me say that nobody on my side knew anything

10  about what was going on that day, too.  If we had recognized

11  that our client -- and Mr. Restivo says we were all sitting at

12  the table.  He must have a wonderful memory.  I don't know

13  where we were sitting, whether we were discussing something or

14  talking or what, but no question they didn't know it was

15  duplicate at the time, and no question that we didn't hear our

16  client's name being called and to register within our system of

17  knowledge.

18          But let me go to your question.  And I think you -- I

19  think it's -- it goes directly to this.  It goes to so what.

20  So what if that other claim was dismissed?  So what if they did

21  get notice?  Okay?  Our first line is I shouldn't be here.

22  Second line is so what.  If they did get this piece of paper

23  and somebody said, well, that's being handled by somebody at

24  Speights and Runyan, etcetera, what does the fact that that

25  claim being dismissed -- how do they take that and connect it

1  to my two claims, which were filed before the bar date and say

2  it -- as a result of that being dismissed, these two need to be

3  dismissed.  I don't think they make the legal jump, which we

4  can argue in January when they try to say, well, somehow that's

5  res judicata.  The fact that a duplicate claim is dismissed

6  does not make it -- and it was not on the merits.  It was never

7  argued on the merits.  It was just a duplicate claim.  The fact

8  that it was dismissed does not make this res judicata as these

9  two anymore than the dismissal of other duplicate claims make

10 it so.

11       THE COURT:  But it wasn't dismissed, because it was a

12 duplicate claim.  If it were dismissed, because it was a

13 duplicate claim -- if the motion had been, you know, I've got

14 three claims, 9778 that's duplicative of -- I've forgotten the

15 number -- 10336 and 10337, so take your pick, and let's either

16 go with 9778 or let's go with the otehr two, but we can't go

17 with both of them, I would agree with you.  At that point in

18 time all we're doing is getting the docket winnowed down to the

19 point where we're looking at the same building, so that we're

20 not looking at duplicate claims.  But that's not what the basis

21 for that expunction was.  That was expunged, because based on

22 the record that was before me at that time, there was

23 uncontroverted evidence that the asbestos removal was outside

24 the statute of limitations.  That was the reason alleged in the

25 complaint.  Nobody objected to it.  That is -- the building

1  owner -- the client didn't object to it, and the claim went

2  away.  It disappeared.  I don't see how once that claim goes

3  away you resurrect it by filing a new claim and putting a new

4  number on it.

5      MR. SPEIGHTS:  But we -- we weren't resurrecting it.

6  We already had our claims.  They were filed.  They were filed

7  with 24/48 hours of each other.

8      THE COURT:  Okay, but -- all right.  I didn't mean

9  that it was filed after the bar date.  I wasn't attempting to

10 make a bar date issue.

11     MR. SPEIGHTS:  I'm not even sure which was one was

12 filed first, but I think ours were filed a day or two after the

13 -- this particular one was filed, and I think it goes to, Your

14 Honor, as you said, it was not opposed.  In effect it was a

15 default.  It was never, you know, an argument on -- it was

16 never a piece of paper arguing to you why the statute of

17 limitations wasn't run.  It was never --

18     THE COURT:  But in Pennsylvania that's a judgment on

19 the merits.  I mean that's the equivalent of a judgment on the

20 merits.

21     MR. SPEIGHTS:  And, Your Honor, I think that's -- if

22 you are going -- if you're going to allow them to object to our

23 claims on the new ground, then that would be argued at January

24 as to whether or not that's res judicata, among other things

25 that would be argued at that time.  I just don't see how you

1  can -- they haven't objected to statute of limitations on these

2  claims.

3          THE COURT:  No, they're saying -- as I understand the

4  argument from the debtor's perspective, I think it's pretty

5  simple.  What they're saying is 9778 was a claim filed on a

6  certain date within the bar date, and the only problem with the

7  claim is that on its face it shows that it's outside the

8  statute of limitations.  They -- no one was here to oppose the

9  fact that the timing of the claim itself -- the underlying

10 facts was outside the statute of limitations, so the claim got

11 expunged.

12          Now it turns out that there are these two other

13 claims that effect -- that are based on the same events, based

14 on the same building, that apparently no one realized related

15 to the same building, or I guess everybody would've been in

16 here, you know, talking about it at the time.  And maybe at

17 that point in time what would've happened is one of them

18 would've gone away based on duplication, because, certainly,

19 we're not going to deal with two duplicate claims, and maybe at

20 that point we also would've looked at the statute of

21 limitations.  I don't know.

22          But the reality is that claim was unopposed, so that

23 claim's gone away based on statute of limitations grounds.  And

24 now what the debtor's saying is we've already expunged the one

25 based on statute of limitations grounds.  That's the final and

1 unappealable order.  You can't now say that that same building

2 that has already essentially admitted that it has no claim

3 against this estate, because it didn't oppose the statute of

4 limitations argument, can come back in here now and say that it

5 does have a claim, because it's already admitted that its claim

6 was outside the statute, and you can't have it both ways.  It's

7 -- if it's outside the statute, it is.  It doesn't get

8 resurrected just because two claims were filed, one of which

9 was outside the statute, and the other which, according to the

10 debtor's view, wasn't clear at the time.

11          MR. SPEIGHTS:  I understand that's your argument, and

12 my argument before we get to the merits of it is that by the --

13 on the one hand while nobody appeared and contested the

14 dismissal of that claim, on the other hand the state of the

15 record as to these claims is that there is no objection on

16 statute of limitations grounds.  Now --

17          THE COURT:  No, they're saying --

18          MR. SPEIGHTS:  -- they are trying to explain it away

19 on that, but I think it's incumbent upon them to file a motion

20 to explain away and amend their objection, because I don't

21 think -- I think they are stuck with the fact --

22          THE COURT:  Why?  They've already shown --

23          MR. SPEIGHTS:  -- that they did not object on statute

24 of limitations grounds --

25          THE COURT:  But they did object.

1          MR. SPEIGHTS:  -- as an affirmative defense.  They

2 didn't object, and it's too late for them to object.

3          THE COURT:  Why?  You don't have to prove the same --

4 the statute more than once.  I think the issue is that had

5 anybody known that this was a duplicative claim at the time,

6 then we wouldn't be piecemealing this.  Apparently, that's

7 everybody's mistake not just the debtor.  Everybody's mistake

8 in not recognizing that the same buildings were involved.  So

9 normally we would've done the gate keeping objections first and

10 gotten rid of the duplicative claim first and then worried

11 about the statute.  It's just that in this instance we got the

12 substantive ruling first, because it didn't -- no one knew that

13 there was a duplicative claim.

14          So we got the substantive ruling that says this claim

15 is barred by the statute, and now we've got duplicative claims

16 out there, but that's what they are.  They're duplicative of an

17 expunged claim.  So I don't see how you breath life into an

18 expunged claim.

19          MR. SPEIGHTS:  And how -- I could just keep going

20 back, but I'm going to say two things.  The first thing I'm

21 going to say is, Your Honor, because my two claims are alive,

22 they have not objected on statute of limitations grounds.  And

23 number two I want to say I look forward to arguing this to you

24 in January.

25          THE COURT:  Okay.  I think that's probably the right

1 thing to say, because I don't -- I don't understand that the

2 debtor has to reprove on the same building the same statute of

3 limitations grounds.  It's already met that burden with respect

4 to the first claim, and the issue is is this a duplicative

5 claim.  If it's duplicative, I think it's -- it has to be

6 expunged, because the underlying claim filed by your client has

7 already gone away.  And I don't mean this in any negative way,

8 Mr. Speights, but the agent's authority is only as great as the

9 client's.  In this instance the client has already conceded

10 that the statute of limitations bars the claim, so --

11       MR. SPEIGHTS:  After Grace conceded that there was no

12 statute of limitations, waiving it, which is an affirmative

13 defense, they're -- they're failure to raise the statute of

14 limitations in the objection occurred long before the client

15 failed to appear on the other claim.  I guess -- I mean we keep

16 going back and forth on that, and I'm climbing uphill on that

17 one, and I'm going to think about it between now and January.

18 And I've got other arguments to, and we've got a whole -- you

19 know, apparently facts to argue to Your Honor --

20       THE COURT:  All right.

21       MR. SPEIGHTS:  -- at the time as well.

22       THE COURT:  Okay.  I think that's the -- I think the

23 best thing to do is get to the argument, but the troubling part

24 to me is I think this one just simply got in the process

25 backwards and had a -- and so it's confusing for that reason.

1  But I just don't know how you resurrect an expunged claim if,

2  in fact, this is really duplicative.  It seems to me that once

3  it's expunged, it's expunged for all purposes.  And the fact

4  that it may be duplicative doesn't resurrect the underlying

5  claim, because the underlying claim has already been expunged.

6  So that's the issue that I have to posit to you, Mr. Speights.

7  I'm sure you'll have your own to raise, but that's the one I

8  need to hear about.

9         MR. SPEIGHTS:  And I appreciate knowing that up

10  front, Your Honor.  I do have a couple of housecleaning matters

11  about PD.  I'm the only one left, but I would suggest -- Mr.

12  Restivo is local.  I don't want to keep everybody else waiting

13  on the phone, but I do want to take up just a couple of matters

14  with Your Honor, since I'm up here today on PD.

15         THE COURT:  All right.  Let me find out is -- Ms.

16  Baer, is there anything other than this left on the agenda?

17         MS. BAER:  Your Honor, there are a few matters with

18  respect to PI estimation.  A couple of miscellaneous things

19  have come up.  I know Mr. Finch has one.  I have one to

20  address, and I think Mr. Bernick has something to address, too.

21         THE COURT:  All right.  Well, let's finish the

22  agenda, and then I'll turn back to Mr. Speights' issue on

23  property damage then.

24         MS. BAER:  Your Honor, the next matter on the agenda

25  -- actually, it's agenda Number 10 -- was ZAI, and I just want

1  to note there that the parties have agreed that matter will be

2  continued until January.

3       THE COURT:  Okay.  If that's just going to be a

4  status report based on the fact that this claim is going to be

5  argued -- Number 8 is going to be argued in January, I would

6  suggest maybe that the ZAI be put over until February, if it's

7  just going to be the status report again.

8       MS. BAER:  As far as I know, Your Honor.  Mr. Restivo

9  could correct me if I'm wrong, but I believe that it would be a

10  status report.

11       MR. RESTIVO:  We can do that in February.  That's

12  fine.

13       THE COURT:  All right.  Thank you.

14       MS. BAER:  Your Honor, that takes us to the last

15  matter on the agenda, which is a status on PI estimation

16  matters, and a few little things have come up that I think we

17  wanted to address.  Very simple procedural ones, because I have

18  the microphone, first, Your Honor.

19       In filing our Daubert briefs and now preparing the

20  responses and going forward with replies and the like, we do

21  have confidential information that has been -- arisen from time

22  to time, and procedurally the Delaware rules generally call for

23  the filing of a motion to ask that confidential information be

24  filed under seal.  But the CMO that you entered, Your Honor,

25  indicates very clearly on it that when confidential information

1  is raised, it should be filed under seal, and procedurally, we

2  would just like to ask the Court for direction or an indication

3  that it is not necessary for each of the parties to file

4  separate motions every time they're filing these pleadings but

5  can simply file the confidential pleadings under seal.

6          THE COURT:  They can be filed under seal provided

7  that the appropriate designations in compliance with that case

8  management order are maintained, and that appropriate paper

9  copies are sent to me here in Pittsburgh without the need for a

10  motion.

11          MS. BAER:  Thank you, Your Honor.  I think simplifies

12  it.  People don't have to give you even more paper.

13          Your Honor, I know that Mr. Finch wanted to take up

14  an issue with respect to filing and submitting exhibits.

15          THE COURT:  Mr. Finch.

16          MR. FINCH:   Yes, Your Honor.  This is Nathan Finch

17  for the Asbestos Claimants Committee.  Under the terms of the

18  Court's case management order, which has been clarified by

19  exchange with chambers, the parties are to provide copies of

20  the trial exhibits to the Court.  Under the existing schedule

21  that's supposed to happen on December 21st.

22          What is likely to be -- the exhibits lists that are

23  going to be filed on December 21st and exhibits that are going

24  to be exchanged on December 21st between the parties are

25  basically anything that the parties think they might use in

1  their case in chief, which had been my experience in sort of

2  large document cases is actually far more exhibits that

3  ultimately ever get offered, and many of the exhibits may or

4  may not be admissible.  And so rather than sending Your Honor

5  -- you know, each party sending Your Honor -- I mean basically

6  (indiscernible) are going to file a combined exhibit list, but

7  it's got close to 1,000 documents on it.

8          I assume that the other parties, even the debtor, may

9  have something close to that.  Rather than sending you all

10  those exhibits on the day before Christmas, what I would

11  suggest is, first of all, on January 4th we object on

12  authenticity grounds to any exhibits.  There may not be very

13  many authenticity objections, but it may well be that the

14  number of exhibits that actually get offered into evidence that

15  the parties ask the Court to consider would be a smaller subset

16  of what we put on our respective exhibits lists.

17          And so -- and what we'll -- you know, whatever Your

18  Honor's preference is, obviously, we will abide by that, but I

19  guess my request would be that the exhibits be provided to the

20  Court at the time they are offered and they're asked for the

21  Court to consider them.  So if there is a witness, for example,

22  through whom one would sponsor a bunch of exhibits at the time

23  the witness takes the stand, you would hand the Court a

24  notebook with the exhibits that would go with that witness.

25          If it's just going to be a bunch of business records

1  put into evidence of whatever day, Mr. Bernick or Mr. Mullady

2  or I want to put in the documents, we would submit the copies

3  of the exhibits.  Then if there are any evidentiary issues that

4  go along with them, they would either be worked out in advance,

5  or we would have -- you know, when the exhibit is offered, if

6  there's some kind of objection that's not an authenticity

7  objection, you could take it up there.

8          THE COURT:  Well, the problem with giving me exhibits

9  on day of trial is that, number one, they're generally not pre-

10 marked.  Number two, nobody else has seen them.  Number three,

11 it delays the trial substantially while everybody goes about

12 marking exhibits, taking a look at them, and figuring out their

13 objection.

14         MR. FINCH:  No, I think --

15         THE COURT:  The reason I want the exhibits in advance

16 is, because I expect you to exchange them.  I expect you to

17 mark any objections to each others exhibits that you have.  I

18 expect that if you have authenticity objections, you're going

19 to know that, so that you can bring a witness, so that you --

20 the authenticity issues can hopefully be resolved, otherwise,

21 you know, I don't expect the trial to be going forward and

22 suddenly somebody has an authenticity objection.  The whole

23 reason for exchanging exhibits in advance is to know what

24 objections the exhibits will draw.  If somebody does not have

25 an objection to an exhibit, then I expect you ought to be able

1  to use it as an uncontested exhibit without any problem.

2          MR. FINCH:  I think -- Your Honor, I think you

3  misunderstood what I was suggesting.  The parties would still

4  exchange the exhibits on December 21st and file lists with the

5  court on December 21st.  We just wouldn't actually provide the

6  -- and all of the exhibits would be pre-marked.  I mean they

7  would be pre-marked at the time they are exchanged.  You know,

8  it would be ACC slash FCR Exhibit 1 through whatever it is, and

9  it would be debtor's Exhibit 1 to whatever it is.  All of the

10 marking, at least our case in chief exhibits, would be done by

11 December the 21st.  The exhibits would be exchanged on December

12 the 21st.  The parties would have until January the 4th under

13 the existing CMO to object on authenticity grounds, and they

14 will be that there aren't many objections at all.  And then

15 what I'm suggesting, Your Honor, is rather than you get, you

16 know, on December 21st 1,000 exhibits, once the parties have

17 gone through the objections slash authenticity objections, then

18 at the time let's say Mr. Bernick puts on a witness, and he's

19 going to be offering ten documents through that witness, he

20 would provide the Court with the copies of the exhibits.  Then

21 everybody in the courtroom would already have those ten

22 exhibits already pre-marked, because they would have been on

23 Mr. Bernick's pretrial exhibit list.

24          MR. BERNICK:  The only thing that we're really

25 thinking about, Your Honor -- this is Nate's suggestion, but I

1  didn't have a problem with it, and indeed I thought it was a

2  good idea, is just to avoid Your Honor receiving, you know, God

3  knows how many, 15 different binders of documents, most of

4  which will probably never be used.  The parties would still go

5  forward and do exactly as contemplated by the order, so we

6  shouldn't have any delay to the trial, but Your Honor would be

7  furnished the exhibits on a more timely basis.  I would also

8  add that you probably in connection with the motions will have

9  seen a lot of this material anyhow, so I don't think it should

10  -- I hope it wouldn't impair Your Honor's ability to become

11  educated about the case.  It's really just a question of

12  whether you want to receive a whole passel of notebooks, and

13  then if you wanted to get an exhibit at the time that it's

14  used, you know, you're literally going to have to go and figure

15  out which binder it's in of many, and I think it would just

16  more cumbersome.  We thought this would be easier for the Court

17  rather than more difficult.

18          THE COURT:  Well --

19          MR. FINCH:  And what I would envision, Your Honor, is

20  at the time say I put a witness on the stand, I would hand up a

21  exhibit notebook of whatever I would use with that witness

22  already pre-marked, and that way instead of Your Honor having

23  to sort of fish through 15 or 20 binders of exhibits -- and it

24  may well be that the witness is using Exhibits 1, 2, 106, 114,

25  and 212.  Rather than having five notebooks in front of you,

**J&J COURT TRANSCRIBERS, INC.**

1   you've got one little notebook with the five exhibits that I

2   would use with that witness, but the parties would already have

3   exchanged all their exhibits.  Everybody would have copies of

4   the exhibits.  I would give, you know, Mr. Bernick, obviously,

5   a copy of the witness notebook I'm using with this witness.

6   The Court would get a copy.  Other parties would get a -- other

7   parties in interest would get a copy.  And it wouldn't slow

8   down the trial at all.  It would just save you and frankly save

9   the trees the burden of having, you know, a couple thousand

10  exhibits land on your desk on Friday or Monday the 24th when

11  the number of exhibits that actually get offered into evidence

12  may be smaller than that.

13          THE COURT:  Okay.  Well, I don't have a problem

14  getting the exhibits as the witnesses are on the stand provided

15  that you're not going to give me so many that I can't actually

16  take a look at them as the trial goes on.  I guess that's the

17  problem.  If there's something that's a very lengthy exhibit

18  that I really do need to take a look at while the witness is

19  testifying, if I don't have a chance to see it in advance,

20  then, you know, at some point in time I have to take a look at

21  the things.  So --

22          MR. BERNICK:  Yes, I think we can deal with that.  I

23  mean that's actually a good -- that's a good thing for us to

24  figure out the answer to.  It may even be that the best answer

25  to that is for whoever it is that's tendering the exhibits to

1  flag the lengthy exhibits, that particular part of it that is

2  going to be of note.

3          MR. FINCH:  Which pages.

4          MR. BERNICK:  Yes, which pages may be used.

5          MR. FINCH:  I mean it -- my experience is often times

6  you may have a 200-page exhibit, but you only call the witness'

7  or the Court's attention to three pages of it or even one

8  paragraph out of it, which is you have to put the whole thing

9  in under the rules of completeness.

10          MR. BERNICK:  Your Honor, the other thing, I guess we

11 have to -- I was going to say maybe Your Honor would think

12 about it, but it is coming up to being the date.  The other

13 possibility is if Your Honor wants to think about it further,

14 that at least we wouldn't turn those notebooks in on the 21st

15 or 24th.  If Your Honor then feels that no, I really -- you

16 really want it, we can do it at any point prior to the trial.

17          THE COURT:  Well, I think it's probably going to work

18 all right the way you've proposed, because if I go back to

19 Federal-Mogul, I had all the exhibits in advance, and I did

20 look at the exhibits in advance of trial.  But the reality is

21 is that as each witness was on the stand, they were presenting

22 notebooks with the slimmed down version of what the witnesses

23 needed to see anyway, because the binders were pretty

24 cumbersome, and that is very helpful.  It is helpful to have

25 the documents in a binder with the witnesses' whatever you're

1  going to use.  You know, if there was a declaration and you

2  want to refer to it, the declaration or affidavit or whatever

3  it is that you're going to refer to along with all the

4  exhibits, so that it is clear what exhibits were referred to --

5  which exhibits each witness referred to.  So I think we'll try

6  it this way.  If it turns out after the couple of days that I

7  think I'm too far behind the eight ball, then I'll ask you to

8  change the process.

9           MR. BERNICK:  Okay.  Fine.

10          MR. FINCH:  Okay.  Thank you, Your Honor.  We

11  appreciate that.  The only other matter I had -- it's not

12  really a -- it's just to apprise the Court oddly enough Mr.

13  Bernick was correct that the <u>Daubert</u> briefs have really framed

14  pretty much all the issues that the parties may address.  I

15  didn't know that when I was last before Your Honor, because I

16  hadn't seen his briefs yet.  But now after seeing his briefs

17  and our briefs and now having seen drafts of our response to

18  his <u>Daubert</u> briefs, I think frankly in almost all of the legal

19  issues that we'll be facing, Your Honor, that might have in a

20  trial brief are going to be framed by the <u>Daubert</u> briefs.

21          And so what I'm telling Your Honor is it's very, very

22  likely that the ACC and the FCR will not be filing a trial

23  brief.  We would only do so if there's some issue that just

24  doesn't fit into the <u>Daubert</u> briefs that we think is amenable

25  to a trial brief given that you're going to get the witness

1  disclosure document which lists who all the witnesses are and a

2  brief description of what they're going to say other than the

3  plaintiff lawyers and Mr. Schneider, which will be a more

4  detailed description of what they're going to say.  It's our

5  present intention not to file a trial brief.

6          THE COURT:  Okay.  Well, that will be helpful.  Less

7  paper at this point frankly will be better.  You've got most of

8  my Christmas holidays taken up with the rest of the expert

9  reports and the briefs as it is, so anything that you can do to

10 slim down the workload will be appreciated.

11         MR. BERNICK:  The same thing true of the FCR?  Are

12 you guys going to be filing a trial brief?

13         MR. ANSBRO:  This is John Ansbro for the FCR.  We're

14 in accord with what Mr. Finch has laid out.  Probably not.

15         MR. BERNICK:  Okay.  Your Honor, I have one matter.

16 I don't know, Nate, did you have anything to raise?

17         MR. FINCH:  No, that's all from me, Your Honor.

18         MR. BERNICK:  I have one matter that's a substantive

19 matter, and it's one of importance, and I'll just flag it by

20 way of an item for the status conference.  We're going to file

21 an expedited motion to deal with it.  But among all the

22 materials that were submitted in the <u>Daubert</u> brief that was

23 filed by the ACC/FCR may even just be the AC -- well, I guess

24 Mr. Stahler (phonetic), so it must be the FCR.

25         There was a ten-page affidavit from one of their

1  experts, and he lays out in those ten pages a whole series of

2  calculations and a new model -- a new mathematical model for

3  dealing with certain aspects of our reports.  We don't have --

4  at least to my knowledge we don't have the backup for all the

5  calculation, and, obviously, we've not deposed Mr. -- Dr.

6  Stahler about this, but the report that he's responding to in

7  his affidavit that was submitted in connection with their

8  response -- with their brief on Daubert and not before that,

9  this report responds to a report that one of our experts filed

10 months ago on July 31.

11        So we have a fairly fundamental issue of, you know,

12 what I'll call the last word problem.  We are not going to be

13 in a position to be able to respond to this affidavit within

14 the very tight time frame set for the response briefs on

15 Daubert, and we just can't do it, nor do we believe that we

16 should really have to.  So we're going to be filing a motion

17 that seeks to preclude use of this affidavit or any other new

18 work that is done after the final date for the -- all the

19 different expert reports, supplemental and the like, and

20 certainly after the dates of any depositions that are involved,

21 because we just -- we're just dealing with whole new material.

22        We'd like to file that on an expedited basis, get it

23 heard on an expedited basis.  If Your Honor were to determine

24 that our motion is not well taken and they can do new work,

25 then we will then have to do the new work that's associated

1  with this and respond to it out of time sequence for the

2  Daubert briefs that are now before the Court.

3          So I wanted to flag that, and we -- I think we'll be

4  able to file our brief perhaps as earlier as tomorrow and then

5  see if there's some way that we can have an expedited response

6  date and then, if necessary, a telephonic hearing.  This is a

7  matter of enormous importance.  If we're going to have work to

8  continue throughout this trial or indeed even right now, I

9  don't know how we're going to get the litigation done, and I

10  certainly know that the boundaries of the case for purposes of

11  any resolution discussions will also remain undefined.  So this

12  is a very important matter.  You know, it sometimes happens in

13  cases, but I think it really has to be resolved.

14          MR. ANSBRO:  Your Honor, it's John Ansbro for the

15  FCR.  In response, while I haven't studied Dr. Stahler's

16  affidavit, we consider it was entirely appropriate to put in

17  what Mr. Bernick has described as a new model.  I'm not

18  familiar to speak right now that there is any new model been

19  presented in that work, but we'll look to see what Grace has in

20  its brief, which I understand I guess will be here tomorrow.

21          MR. BERNICK:  Yes, it actually refers to -- it's

22  Paragraph 14, or to assess the implications of what he

23  considers to be violations in Dr. Anderson's July 31 report.

24  He says, "I created a mathematical model of the process under

25  which members of the at risk populations to come to disease

1  following the standard assumptions," dah, dah, dah, dah.  And

2  so he's -- it is a newly created model.  It's got all kinds of

3  graphs, new calculations.  It goes to the whole population of

4  the case.  I mean this is going to be a major, major deal.

5  Irregardless of whether or what its scope is, the fact of the

6  matter is it's new, and we shouldn't be dealing with it.  So I

7  appreciate that counsel had the opportunity to look at it, but

8  I really do think that what I'm really asking for on this call,

9  Your Honor, is to set an expedited schedule for briefing and

10 hearing on this, so that we can simply get it resolved and move

11 on with the case.

12        THE COURT:  Okay.  Well, are you trying to get this

13 done before trial starts in January --

14        MR. BERNICK:  Oh --

15        THE COURT:  -- or some time --

16        MR. BERNICK:  -- absolutely.  This is even in

17 connection with -- this affidavit itself presents <u>Daubert</u>

18 issues -- fundamental <u>Daubert</u> issues.  The guy is a

19 statistician.  He's not a toxicologist, not an epidemiologist.

20 He's a brand new model.  I mean, you know, on experience, when

21 the statisticians that do new models, they are extremely labor

22 intensive.  That's why we had the estimation modelers be on a

23 separate and later track, because their stuff is so complex.

24 Now, this is a major, major deal, and it affects our ability to

25 respond to their motion which uses this document.  It affects

1 the scope of the trial.

2       I mean Stahler had now become -- before he was a

3 witness that dealt with the tail end of their own models

4 expected claim curve.  He is now a guy who is doing his own

5 calculation that attempts to take our approach and then say due

6 to statistical errors, the real answer is Z.  It's a major

7 step.  It affects the entirety of the at risk population on the

8 basis of which the futures claimants representative is doing

9 the estimate.  So major stuff.  We've got to get this stuff

10 resolved absolutely right away.

11       I can't afford -- I don't know how to have this issue

12 remain out there, and I think it's a fairly straightforward

13 question, which is what are people -- contained what I think is

14 pretty clear in the pretrial order, which is that you've got to

15 do any supplemental or rebuttal expert reports by a certain

16 date.  This is a rebuttal report essentially to a July report.

17 It should've been submitted long ago.  Whether this can now be,

18 you know, put into the process long after the fact and on the

19 eve of trial, and I think we just got to get it resolved.

20       MR. FINCH:  Your Honor, what it is is support for our

21 motion, and what I think you're hearing from Mr. Bernick is

22 that all that Dr. Stahler has done here is not so much a

23 rebuttal report that needed to be filed.  What we have done is

24 point out the deficiencies in Dr. Anderson's and several of

25 Grace's other experts' analyses.  It is done in support of a

1  Daubert motion, the purpose of which is to demonstrate that the

2  motion -- that the reports put in by various of the industrial

3  hygienists are not reliable.

4         MR. BERNICK:  Well, that might make it easier.  If

5  the sole purpose of this is to raise the Daubert issue, then I

6  think we still have to move promptly.  But if the sole purpose

7  is to raise the Daubert issue, and we are not going to hear,

8  see, smell, touch, or feel any aspect of this work during the

9  course of the trial, that certainly refines the issue.  I still

10 object to it.  I still think it's incorrect.  We will still

11 have to respond to it, but if this is not affecting the scope

12 of the trial, we're not going to see this any, way, shape, or

13 form, then it's certainly a narrower issue.  I don't -- my read

14 of this was that they intended to also use this at trial.

15        MR. FINCH:  Yes, and I'm not going to say right now

16 that we would not intend to.

17        MR. BERNICK:  Well, then that's part -- my surmise

18 was not that unreasonable.  So we're prepared to file our

19 motion tomorrow, Your Honor.

20        THE COURT:  Well, look, you folks need to have a meet

21 and confer.  It seems to me that this is going to be the

22 equivalent of a discovery motion.  You need to meet and confer

23 and see if you can't get a stipulation as to what the

24 appropriate use, if any, of this report is going to be first.

25 Number -- that's number one.

1         Number two.  My last hearings before the holiday are

2  going to be on Thursday, so whatever you're going to tee up,

3  the hearing has to be Thursday.  And right now I have an

4  extraordinarily full calendar, and I really do mean

5  extraordinarily full.  So I will make some time late Thursday

6  afternoon, but that's when we're going to have to do this.

7         MR. BERNICK:  Well, I'm even prepared to have --

8  well, we'll file -- we may be able to file our brief by this

9  evening, and they can file the response by Wednesday.

10         MR. FINCH:  Your Honor, your point regarding meet and

11  confer is well taken.  This call is the first  I've heard of

12  it, and I believe it's the first anyone on my team will have

13  heard of this issue, notwithstanding that we file our motion --

14  or our Daubert briefs a couple of weeks ago.

15         MR. BERNICK:  But you filed the brief actually a week

16  ago on Saturday.  It was voluminous.  We received voluminous

17  materials.  We are very, you know, diligently working on our

18  response.  The fact that this comes so naiant to the holidays

19  is part of the problem.  This is just totally out of order.

20         MR. FINCH:  I don't agree with that, and I'd just

21  like to get with my team, Your Honor.  I don't know that we can

22  get an opposition in within 24 hours of receiving what I

23  anticipate will be a fairly complicated brief.

24         MR. BERNICK:  It will be a very, very simple brief.

25  Very simple.

1        THE COURT:  Well, folks, the hearing's going to be on

2   Thursday.  So that's what I'm telling you.  The argument on

3   whatever it is, you're filing is going to be Thursday.  So I

4   strongly suggest that your meet and confer should be by

5   telephone as soon as today's hearing is over.  Mr. Bernick,

6   you're going to have to file your brief tomorrow morning at the

7   very latest, and I'm going to have to get a response filed by,

8   I don't know, 4:00 on Wednesday I guess, so that I have a

9   chance to read it, because Thursday I'm going to be in court

10  all day.  I'll give you a time now.  Just a minute.

11                        (Pause)

12       MR. FINCH:  Your Honor, just before you do that may I

13  ask is it possible that this got teed up for December 27 or 28.

14       MR. BERNICK:  I'm going to be -- I've got hearings in

15  San Francisco on the 28th.  I'm sorry for the interruption

16  here.  I've got hearings on the -- it's just -- it's way too

17  late for us to use for purposes of this briefing -- we can't

18  wait that long.

19       THE COURT:  I cannot do it that week at all.  The

20  only day that I can do it between now and after January is the

21  20th.  We're going to do it on the 20th in the afternoon, so I

22  will give you a time.

23       MR. FINCH:  I have a question for Mr. Bernick.  Is

24  this -- are you -- is this motion mean that you're not going to

25  be filing a response to any of the --

1          MR. BERNICK:  No.  No.

2          MR. FINCH:  -- <u>Daubert</u> briefs?

3          MR. BERNICK:  No.  No, I wouldn't.

4          MR. FINCH:  I mean the ACC raised a lot of <u>Daubert</u>

5  arguments -- the FCR unrelated to Mr. Stahler.

6          MR. BERNICK:  I would not say that.  No, I'm not -- I

7  think that would be improper.  We just -- we can't respond to

8  this.

9          MR. FINCH:  To this one particular piece.

10          MR. BERNICK:  To this one particular piece, and --

11          MR. FINCH:  Then basically the motion is saying, Your

12  Honor, you shouldn't consider this particular piece of the

13  FCR's <u>Daubert</u> motion that relates to what Mr. Stahler did in

14  his affidavit, but the debtor is going to be filing responses

15  to the ACC's <u>Daubert</u> motion and the rest of the FCR's <u>Daubert</u>

16  motion that doesn't rely on any particular piece.

17          THE COURT:  Please, whoever has the phone, turn it

18  off.

19          MR. BERNICK:  Yes, that's me, unfortunately, Your

20  Honor.  I'm sorry.  I -- hang on.

21          UNIDENTIFIED SPEAKER:  Hello.

22          MR. BERNICK:  Yes, I'm here.  Our piece, Nate, would

23  simply say it shouldn't be considered for any purpose.  To the

24  extent it's considered as part of <u>Daubert</u>, we might be able to

25  deal with it just as a <u>Daubert</u> issue.

1          THE COURT:  Okay, folks.  You're going to have your

2  meet and confer by phone when this hearing is over, so you can

3  discuss what the motion will say.  Mr. Bernick, I want the

4  motion filed and your brief by noon tomorrow.  I want the

5  response filed by 4:00 p.m. on Wednesday.  The argument will be

6  on Thursday at 2:30 p.m.

7          MR. BERNICK:  Okay.

8          THE COURT:  We'll do it by phone, so Mona, can you

9  notify Court Call?

10          MONA:  Okay.

11          MR. BERNICK:  And, John, if you want to call me on my

12  cell phone right after this, we can talk.  I'll send an e-mail.

13  I don't know if I have yours.  I'll send this e-mail to Ray

14  with the -- no, Nate knows my cell phone number.

15          MR. FINCH:  No, I don't.

16          MR. BERNICK:  Three one two nine two seven six four

17  two zero.

18          MR. FINCH:  I had your old cell phone number two

19  iterations ago, David.

20          MR. BERNICK:  Oh, well, it shows how old the case is.

21          MR. FINCH:  That's probably from Babcock days.  Three

22  one two nine two seven six four two zero.

23          MR. BERNICK:  Right.  I'm sorry to take up your time

24  with that administrative aspect, Your Honor, but we will be on

25  the call at 2:30.

1          THE COURT:  Okay.

2          MR. BERNICK:  And I don't think -- Jan, do we -- does

3 the debtor have anything else?

4          MS. BAER:  No, that's it.  And I think then there's a

5 matter with Mr. Restivo and Mr. Speights again.

6          MR. BERNICK:  All right.

7          THE COURT:  Okay.  Does anybody -- before I turn back

8 to the property damage issues, are there any other personal

9 injury matters?

10               (No verbal response)

11          THE COURT:  Okay, then I'll speak with you again on

12 Thursday at 2:30 eastern time.  All right, Mr. Speights,

13 continuing with your property damage issue, sir.  Anybody who's

14 not interested in property damage is free to disconnect.  Mr.

15 Speights.

16          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

17          MR. SPEIGHTS:  Thank you, Your Honor.  I would

18 appreciate your -- I do appreciate your letting me speak just

19 very briefly, Your Honor, because it's a long trip up and a

20 long trip home, and I've got five minutes with the Court and

21 Mr. Restivo, and I would like to ask, first of all, just as a

22 general question where are we going from here.  And I'm not

23 here to whine about where we've been.  I'm not here to complain

24 about anything.  I'm not even here to try to go down history

25 lane and say this happened or that happened, but last night

1  when I came in, I -- to the hotel across the street, there were

2  all the Mogul lawyers, and we chatted a few minutes, and I

3  couldn't help but think that several years ago when I first met

4  you, I was dealing with U.S. Mineral and Owens-Corning and

5  Armstrong and U.S. Gypsum and Federal-Mogul, and for better or

6  worse we worked our way through all of those.

7            And then there was Grace, and I understand what's

8  pending before Your Honor.  There's a lot pending before Your

9  Honor, all of which I believe belongs to me and the State of

10 California, and Your Honor will rule when you rule.  You said

11 you were working on Anderson today.  What concerns me though is

12 that I don't even believe Mr. Bernick in his wildest dreams

13 would think he's going to win every issue that's teed up before

14 Your Honor, and I think that there is a lot more to be done

15 that is going to consume us over a period probably of years

16 just on property damage claims, and I would like to at least

17 pause and make sure I understand where we're going, and at the

18 end, three minutes from now, suggest one alternative to try to

19 make some sense out of this.

20           Part of the problem is, Your Honor, whenever you rule

21 -- and it's not just you when the Court rules, but especially

22 in this type of litigation we keep going on and on.  For

23 example, the appeal I mentioned to you, which would go to the

24 Third Circuit in which I mentioned to you will without question

25 come back.  These are clients of mine who signed up for me to

1  represent them albeit after March 31, and they will come before

2  you and ask for a late filing date, and we'll be going -- one

3  of us again will be appealing you back to the District Court,

4  etcetera, etcetera.  At the same time on Anderson itself Your

5  Honor will rule on that, and every issue certainly has been

6  argued, but in -- I thought of it when you mentioned it today

7  that, well, can you go ahead and rule.  Yes, Your Honor, you

8  can go ahead and rule on that, but whichever way you rule there

9  will be issues arising or percolating from the Anderson ruling.

10         For example, let's take it favorable news first.

11  Let's assume you certify a class, and the question is who's in

12  the class.  A question we've debated a lot over the last two or

13  three years, and a question that I really would want to present

14  to you because of my realization that although the debtor had

15  in 2001 as a part of its CMO and the segregated CMO that it

16  gave you and its segregated PI, a specific provision in the bar

17  date notice that said no class proof of claims, and that

18  everybody should be notified that you cannot rely on a class

19  proof of claim.  All of a sudden the week before you signed the

20  bar order, that disappeared from the bar date notice, and Your

21  Honor did not rule that way, which I -- and I'm not trying to

22  argue the merits -- think raises a lot of questions about if

23  you ruled as a class, Your Honor, what does it include, and if

24  you rule that there's not a class about those people who did

25  not get notice, that they could not rely on the class.  Enough

1  said on that.

2          Then we get Your Honor to the issues that have been

3  around from the first that I assume around, and maybe Mr.

4  Restivo can clarify it.  I see him staring at me askance as I

5  raise issues.  But the issues of constructive notice and

6  hazard, those were earmarked early on as two matters that we

7  would be trying in this case, and even though you were

8  skeptical about constructive notice, I spent a lot of time

9  since we settled Mogul reading Grace transcripts.  But even

10  though he was skeptical about it, the debtors paid one

11  architect over $4 million as an expert on that issue, and we

12  didn't pay anything like that.  I hired our own expert.  Are we

13  going down the constructive notice litigation path?

14          I don't know whether that's the debtor's intention or

15  not, and maybe we can't resolve that today, but I'd like to

16  kind of see what's behind door number three.  And then we've

17  got the whole hazard issue that Your Honor has stayed pending

18  ruling, which is fine.  I mean we can postpone it forever as

19  far as I'm concerned, but we've taken a lot of discovery on

20  that.  Experts have been hired.  Are we really going to have a

21  hazard trial?

22          Superimposed upon on that is the -- what was said at

23  the time of the split agreement, the 85/15 agreement where Mr.

24  Bernick argued strenuously that you couldn't approve something,

25  because if the claims are not valid, it would violate public

1  policy, well, now the debtor settled all these claims of

2  everybody but Dan Speights in California, and does that mean

3  they're conceding hazard now?  That they're conceding the

4  validity of that?  Are we going to still do that?  Are they

5  conceding constructive notice?

6          I don't know where the debtor is, and I don't know if

7  they're thinking about where we're going, but I certainly would

8  like to either today or in January for us to have some idea

9  where we're going, because the idea that all of a sudden Your

10 Honor's going to rule on the matters pending and property

11 damage is going away, and Mr. Speights is going back to the

12 warmer climate is simply not going to happen.  So I raise that

13 all, because I suggest to Your Honor that what you've done in

14 other cases has worked extremely well, and I would ask that you

15 consider doing it in this case.

16         We can go on with litigating.  I'm not here to beg

17 for a stay of litigation, but for whatever reason I think it's

18 been evidenced in hearings before you.  And I'll tell you we

19 are nicer to each other before you sometimes than we are when

20 we're not before you.  W.R. Grace and Speights and Runyan do

21 not communicate very well.  They have now settled with

22 everybody but Speights and Runyan in California, and I can't

23 imagine out of my 200 claims I don't have one valid claim.  And

24 I can't imagine that out of my 200 I don't have one that is not

25 going to make it.

1          In the past you have been -- you have appointed a

2 mediator to try to resolve differences, and I think at some

3 point -- and, frankly, I think it's now rather than later, but

4 at some point before we take all of your time and all of my

5 time and all of the District Court's time, that at least we

6 ought to sit down in a room with a good mediator and see if

7 there's any possibility.  And I say that knowing maybe that's a

8 sign of weakness.  It's a sign of sanity I hope, because I

9 don't want to wake up a year from now and say why didn't we

10 suggest it.

11          And we happen to have a perfect candidate.  I'm not

12 -- I don't have to have one particular mediator, and normally,

13 I like the other side to pick the mediator, but I would be

14 perfectly happy if the Court could appoint Professor McGovern

15 who mediated the same issues with basically the same claims in

16 the Mogul case and has been previously involved in this case

17 and mediated PD disputes for years.  He was a personal friend

18 of Mr. Bernick's.  I don't know, but if it's not Professor

19 McGovern, somebody else.  He just affords us an opportunity to

20 do it quickly, because he's already up on the issues and what

21 forum would come from while we're going along on this

22 litigation path seeing if there's somebody out there that could

23 talk to both Speights and Runyan and the debtor.  So I would

24 respectfully ask that Your Honor consider the possibility of

25 appointing a mediator.  Thank you, Your Honor.

1          MR. RESTIVO:  Your Honor, a lot of what Mr. Speights

2   just said I like, Your Honor, and hearing for the first time,

3   and I would like the opportunity to consult with my client and

4   react.  I do think that, for whatever reason, Mr. Speights and

5   I do have good lines of communication, so it will not be hard

6   for me to talk to my client and pick up the phone and tell him

7   how we react to this.  I will also talk to my client about

8   constructive notice and hazard.

9          Clearly, our approach -- and this is not by way of an

10  answer to Mr. Speights or even a suggestion to the Judge.

11  Clearly, our approach for good or for bad has been to chop away

12  at what started out as 627 I think property damage claims to

13  try to find -- separate the good from the bad.  Obviously, a

14  resolution of those claims helped.  The summary judgment

15  motions helped.  I believe, Your Honor, there's about 177 cases

16  left.  I believe that the majority -- maybe the vast majority

17  of those are sub judicia before Your Honor.  Depending upon how

18  the Court rules, at least in my own mind -- and I haven't

19  talked to my client about it.

20         If after those rulings we are all left with 20 or 30

21  cases, there's at least a question in my mind whether or not a

22  subsequent trial on hazard or subsequent trial on constructive

23  notice.  Whether the contest if worth the candle, you know, at

24  that point, you know, my granddaughter could probably estimate

25  it, and we quit worrying about it.  But I haven't talked to my

1    client about that, and a lot of that will depend upon how the

2    Court rules.  And so I think Mr. Speights is raising in good

3    faith some interesting issues.  I would like the opportunity

4    get some instructions from my client.  I will then talk to Mr.

5    Speights, and I don't have a problem with having a general

6    discussion or report or status report in January after Mr.

7    Speights and I have those discussions.

8         MR. SPEIGHTS:  I'm happy to talk to Mr. Restivo at

9    any time, and I'm sure we can communicate well, and I hope that

10   his client will be interested, and I would hope that Your Honor

11   upon reflection would encourage us to do so, and that we

12   wouldn't even have to wait until January.  My view of it is,

13   for what it's worth, it's probably better to mediate when

14   there's uncertainty out there as opposed to waiting until all

15   the rulings.

16        But leaving that aside, my concern is Your Honor

17   rules, and then I've got all these appeals -- either defending

18   Grace's appeals or handling my own appeals.  That doesn't end

19   it.  If Your Honor ruling would end it, that would be one

20   thing, but it won't, and there are all kind of branches --

21        THE COURT:  I mean you could confess that I'm right,

22   folks, you know, and not have to appeal.

23        MR. SPEIGHTS:  And -- and -- Your Honor, you've taken

24   me aback.  Hopefully, you'll ask the same thing of Grace.

25        THE COURT:  Yes, absolutely.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. SPEIGHTS:  But, you know, look at the altered and

2    amend motion.  We have had five hearings on those three claims.

3    Look at their state today.  We come back -- and it's going to

4    be back.  And I'm not being critical of the Court, and I'm not

5    even being critical of Grace on this.  That's the nature of

6    litigation.  We're litigating claims in bankruptcy, and this is

7    going on forever.  So that's the reason I suggested it.

8          But the main reason is to say that I also know now --

9    and I think it's an important point -- that Grace has even

10   settled a claim that Your Honor has thrown out.  Mr. Restivo

11   will correct me if I'm wrong, but I believe in the Prudential

12   inventory of claims settled there's at least one building, and

13   maybe more, and I have a criticism of this.  I think you can

14   settle what you settle.  So no longer is there this barrier

15   that Mr. Bernick was talking about in my mind about valid,

16   unvalid, or whatever.  I would like to proceed while they're

17   under advisement and see what we can do with them.

18          MR. RESTIVO:  I think, Mr. Speights, about the only

19   thing I can really agree with you on is that you should go back

20   to a warmer climate.  We can talk about the Prudential claim

21   when we talk.  I don't know whether that claim got any money or

22   not.  I understand what you're talking about.  My view is not

23   dissimilar that a debtor ought to be able under business

24   judgment, you know, to settle what needs to be settled taking

25   into account, you know, cost -- whatever you take into account.

1 Let's you and I talk, and we'll give a report to the Judge at

2 the next omnibus, and you and I don't have to wait until near

3 the next omnibus.  We can talk.  My schedule is kind of like

4 Her Honor's schedule.  We can talk early January, because I'm

5 going to be -- after Thursday, I'm going to, you know, do the

6 holidays.

7          MR. SPEIGHTS:  I like the holidays, too, but if your

8 client wants to do it, I'm prepared to mediate the first week

9 in January.

10          THE COURT:  Okay.  It seems to me that if the debtor

11 could start knocking these pieces down one at a time, we would

12 probably get a little bit closer to plan confirmation than this

13 case is right now, and it needs to get toward plan

14 confirmation.  So the concept of mediation I think is a good

15 one, and if -- and Mr. Speights has had some success with

16 mediation in the other cases.  A number of his claims have been

17 settled in one way or another through mediation, sometimes

18 otherwise, but through a mediator's services.

19          So I think if you folks can agree to go to mediation,

20 that would be great.  I will be happy to have a status report

21 in January.  If you can get to mediation beforehand, I think

22 that's fine.  I would like to order you to mediation, quite

23 frankly.  I really would like to order you there, but I'm a

24 little hesitant to do it based on the fact that I have done

25 that already in these cases several times, and, you know, it

1   seems as though -- it's like the asymptotic line.  You always

2   get almost to the point where the line ends or begins, however

3   you want to think about it, but you never quite get there.  And

4   so I'm just a little hesitant to require good money to be spend

5   after bad, and that's what I sometimes wonder what is happening

6   in this case.

7           This case is quite frustrating I think from

8   everybody's perspective.  Mine most of all, because I had the

9   bad judgment to think that this might be one of the cases that

10  would actually get out of this bankruptcy process early on,

11  and, obviously, that was a big mistake on my part, and I don't

12  seem to be able to figure out where the pieces are that can

13  make it get unbridled somehow.  So if this is one of those

14  places that could knock down one of the pegs and might start

15  the domino chain falling, more power to you.  So I think a

16  mediation is a great idea.

17          If you've got someone both sides can talk to, fine.

18  If you need an order from me to appoint a mediator, I'm happy

19  to do it.  If Mr. McGovern is still willing to be involved in

20  this case, he would be fine if the parties agree.  If not,

21  then, you know, there are lots of people out there I think who

22  can assist.  I am sure Mr. McGovern has a handle on the

23  asbestos property damage claims and what's happened in other

24  cases, because I know he's done the mediation in other cases.

25  But that doesn't mean he's necessarily willing to do it in this

1 one.

2      MR. RESTIVO:  Again, Your Honor, I'd like the

3 opportunity to talk to my client about the fact of mediation,

4 and I would like to talk to my client about some possible

5 mediators.  As the Court knows, in a very complicated matter,

6 non-asbestos, the Court was able to get some time for us from

7 Judge Agresti who did a marvelous job.  I'd like to -- I'm not

8 suggesting him right now, but I think there are a number of

9 people in addition to Professor McGovern, and we may want the

10 Court's imprimatur on some of those people, and so I would just

11 say let me talk to my clients.  I will then talk to Mr.

12 Speights.  If we can agree on someone, fine.  I may have some

13 suggestions for him to look into, and at some point we may be

14 asking the Court to use its good offices.  I just need a little

15 bit of time to think about what's being raised today.

16      THE COURT:  All right.  That's fine.  Fair enough.

17 If you, you know, can't do it before the next status

18 conference, then I think talking about it at that point is a

19 good idea, and maybe you can at least have some mediators in

20 mind by then, if nothing else, because I do think this might be

21 an opportunity for both sides to try to come to some

22 resolution.  This is still the largest property damage claims

23 that are left, and so if the debtor could get this resolved

24 short of some litigation and endless appeals by whoever is

25 going to take them, that would certainly be helpful I think for

1  the debtor and maybe allow the debtor to concentrate on some

2  other factors.  You still need to work out the rest of the ZAI

3  issues.  And I know I've said to postpone them until February,

4  but nonetheless, there still are some significant issues there,

5  and I do want a status report in February.  I mean I'm

6  expecting to hear what's going on on that score.  I know I'm

7  the tie up on the other property damage issues, and I'll get to

8  them as I can, but nonetheless, that should not be stopping the

9  ZAI issues from going forward, because they do need to get teed

10  up again, too.

11       MR. RESTIVO:  They do, Your Honor, and we will tee

12  them up in February.

13       THE COURT:  All right, and so I think if that can --

14  if this piece can get put together, maybe that will give you

15  some incentive on ZAI, and then we can get to the guts of the

16  personal injury matter, and maybe this case actually could look

17  at the possibility of exiting, which everyone would probably

18  enjoy at some point.  Okay, folks, thanks.

19       MR. SPEIGHTS:  Thank you, Your Honor.

20       THE COURT:  Happy Holidays.  We're adjourned.

21       MR. RESTIVO:  Happy Holidays.

22       MR. SPEIGHTS:  Happy Holidays, Your Honor.

23                    * * * * *

24

25

70

## <u>CERTIFICATION</u>

I, PATRICIA C. REPKO, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter to the best of my ability.


<u>/s/ Patricia C. Repko</u>          Date:  December 26, 2007
PATRICIA C. REPKO
J&J COURT TRANSCRIBERS, INC.


**J&J COURT TRANSCRIBERS, INC.**