UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                              .
                                    .
  PITTSBURGH CORNING CORP.,         . Case No. 00-22876 (JKF)
                                    .
  FEDERAL-MOGUL GLOBAL, INC.,       . Case No. 01-10578 (JKF)
                                    .
  W.R. GRACE & CO.,                 . Case No. 01-1139  (JKF)
                                    .
  ACandS                           . Case No. 02-12687 (JKF)
                                    .
  THE FLINTKOTE CO./                . Case No. 04-11300 (JKF)
  FLINTKOTE MINES                   .
                                    .
                        Debtors.    . 5414 USX Tower Building
                                    . Pittsburgh, PA 15222
                                    .
                                    . January 10, 2008
. . . . . . . . . . . . . . . . . . . 9:19 a.m.

TRANSCRIPT OF OMNIBUS HEARING
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:           Reed Smith
                           By:  JAMES J. RESTIVO, JR., ESQ.
                                DAVID ZIEGLER, ESQ.
                                435 Sixth Avenue
                                Pittsburgh, PA  15219


Audio Operator:            Cathy Younker



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

**APPEARANCES (Cont'd):**


For Owens Corning:
Thorp Reed & Armstrong, LLP
By:  ELENE M. MORAN, ESQ.
     KIMBERLY WAKIM, ESQ.
One Oxford Centre
301 Grant Street
14th Floor
Pittsburgh, PA  15219


For Official Committee of
Asbestos Personal Injury
Claimants:
Campbell & Levine, LLC
By:  PHILIP MILCH, ESQ.
     DAVID SALZMAN, ESQ.
1700 Grant Building
Pittsburgh, PA  15219


For Official Committee of
Asbestos Personal Injury
Claimants:
Caplin and Drysdale
By:  PETER VAN N. LOCKWOOD, ESQ.
One Thomas Circle, N.W.
Washington, DC  20005


For the Asbestos Committee:
Campbell & Levine, LLC
By:  MARK HURFORD, ESQ.
Chase Manhattan Centre
1201 N. Market St., 15th Floor
Wilmington, Delaware 19801


For Futures Rep.:
Young Conaway Stargatt & Taylor
By:  EDWIN HARRON, ESQ.
     MARIBETH L. MINELLA, ESQ.
1000 West Street, 17th Floor
Wilmington, DE  19801

Meyer, Unkovic and Scott
By:  JOEL M. HELMRICH, ESQ.
1300 Oliver Building
Pittsburgh, PA  15222-2304

**APPEARANCES (Cont'd):**

| | |
|---|---|
| For Reaud, Morgan and Quinn, Motley Rice, Provost Umphrey and and Bagett, McCaill, Burgess, Watson and Gaughan: | Stutzman, Bromberg, Esserman and Plifka<br>By:  SANDER L. ESSERMAN, ESQ.<br>        DAVID J. PARSONS, ESQ.<br>2323 Bryan Street, Suite 2200<br>Dallas, TX  75201 |
| For Official Committee of Unsecured Trade Creditors: | Leech Tishman Fuscaldo & Lampl<br>By:  CRYSTAL THORNTON-ILLAR ESQ.<br>1800 Frick Building<br>Pittsburgh, PA  15219 |
| For Interested Party: | Latham & Watkins<br>By:  KATHERINE MAYER, ESQ.<br>505 Montgomery St., Suite 2000<br>San Francisco, CA  94111 |
| For Certain Underwriters of Lloyd's London: | Duane Morris, LLP<br>By:  JEFFREY D. KAHANE, ESQ.<br>633 West Fifth Street, Ste. 4600<br>Los Angeles, CA  90071 |
| For Royal Indemnity and Global Indemnity: | Wilson Elser Moskowitz Edelman & Dicker, LLP<br>By:  CARL PERNICONE, ESQ.<br>3 Gannett Drive<br>White Plains, NY  10604 |
| For the Creditors Committee: | Morris, Nichols, Arsht & Tunnell<br>By:  WILLIAM SUDELL, ESQ.<br>1201 N. Market Street<br>Wilmington, Delaware  19801 |
| For the U.S. Trustee: | Office of the U.S. Trustee<br>By:  DAVID M. KLAUDER, ESQ.<br>601 Walnut Street<br>Room 950W<br>Philadelphia, PA  19106 |

**APPEARANCES (Cont'd):**

For PPG:                          Kirkpatrick & Lockhart, LLP
                                 By: DAVID A. MURDOCH, ESQ.
                                     DAVID F. McGONIGLE, ESQ.
                                 Henry W. Oliver Building
                                 535 Smithfield Street
                                 Pittsburgh, PA 15228

1          THE COURT:  Good morning, please be seated.  This is

2    the matter of Pittsburgh Corning Corporation, bankruptcy number

3    00-22876, and a number of other cases.  The participants I have

4    listed by phone, James Wehner, Peter Janofski, Jordon Bracket,

5    Mark Herford, Michael Olsen, Robert Siegal, James Dennis, Janet

6    Baer, Sandra Esserman, David Parsons, Web Aarons, Mary Martin,

7    Jeffrey Berger, Gary Nelson, Michael Balch, Philip Milch,

8    Jeffrey Kahane, Michael Brown, Dennis Dolan, Natalie Ramsey,

9    Steve Vocarro, Mel Burnham, Robert Goodman, Leonard Bellinger,

10   Sheryl Heller, Michael Buckley, Joseph Niece, Michael Barrocks,

11   Arlene Krieger, Peter Lockwood and Edwin Herron.

12          I'll take entries in Court, please.  Good morning.

13          MR. RESTIVO:  Good morning and Happy New Year, Your

14   Honor.

15          THE COURT:  Thank you.  Same to you.

16          MR. RESTIVO:  Jim Restivo and David Ziegler for the

17   debtor.

18          MS. THORTON-Illa:  Crystal Thorton-Illa on behalf of

19   the Official Committee of Unsecured Trade Creditors.

20          MR. HELMRICH:  Good morning, Your Honor.  Joel

21   Helmrich on behalf of Lawrence Fitzpatrick, the future claims

22   representative.

23          MR. SALZMAN:  Good morning, Your Honor.  David

24   Salzman on behalf of the ACC.

25          MR. MURDOCH:  Good morning, Your Honor.  David

1  Murdoch, David McGonigle and Mike Nelson on behalf of PPG

2  Industries Inc.

3  　　　　MS. WAKIM:  Good morning, Your Honor.  Kimberly Wakim

4  and Elena Moran on behalf of Corning Inc. with Sheryl Heller on

5  the phone on behalf of Corning Inc.

6  　　　　MR. SHINER:  Good morning, Your Honor, Michael Shiner

7  for certain underwriters at Lloyds of London and certain London

8  marketing insurers.

9  　　　　THE COURT:  Mr. Restivo.

10 　　　　MR. RESTIVO:  Your Honor, we have a notice of agenda

11 on matters for this omnibus hearing.  The first five matters

12 are either adjourned, continued or withdrawn.  Mr. Ziegler will

13 deal with Item Number 6 relating to the appointment of an

14 examiner.  Thereafter, Your Honor, the plan proponents and

15 supporters want to give the Court what may be a somewhat

16 positive status report.  We think we ought to deal with the

17 Turcini matter first because there are some people on the phone

18 or interested on that.

19 　　　　THE COURT:  All right.  Mr. Ziegler.

20 　　　　MR. ZIEGLER:  Your Honor, I don't know if there is

21 anyone on the phone that has more direct knowledge than I do.

22 I saw a new order indicating that Judge Schiff has directed the

23 U.S. Trustee for Connecticut to appoint a Chapter 11 examiner

24 in the LTC case which I think, we would think would eliminate

25 the need to have an examiner appointed in the various asbestos

1   debtor cases.  I don't know if anyone on the phone who has, as

2   I said, more direct knowledge of what happened there.  But I

3   would like them to speak up if they do.

4           MR. KLAUDER:  Your Honor, this is David Klauder for

5   United States Trustee, if I may be heard on that issue.

6           THE COURT:  Yes, sir.

7           MR. KLAUDER:  I wasn't announced on the court call

8   list but I did sign up through them.

9           THE COURT:  Okay.

10          MR. KLAUDER:  What happened on Tuesday, if Your Honor

11  recalls, we had a number of matters in front of Judge Schiff

12  in that Turcini case that we scheduled for Tuesday.  Those

13  included the U.S. Trustee's motion to convert the case, our

14  motion for relief from stay and a number of asbestos debtors

15  who are creditors in that case filed a motion to appoint a

16  Chapter 11 trustee.

17          Judge Schiff was not willing to hear those on

18  Tuesday, somewhat not surprisingly.  He indicated that he would

19  set up all the matters for evidentiary hearing and enter a

20  pretrial order.  Subsequently to that, the parties began to

21  talk outside of Court.  And all the parties including the

22  Turcini debtor agreed that there should be the appointment of

23  an examiner in that case.  And the examiner would conduct an

24  investigation that would include what was contemplated in the

25  cases in front of Your Honor.

**J&J COURT TRANSCRIBERS, INC.**

1          My understanding is -- well I know that that order

2    has not been entered.  I just checked the docket recently.  My

3    understanding is that the parties are still working out the

4    language of that order, but it should be presented to the judge

5    shortly.  And it is the belief of the parties that the Court

6    will sign that order.

7          So that is what is happening up in Connecticut.  With

8    regard to the orders that are in front of Your Honor, our

9    position would be to kind of keep the status quo.  Your Honor

10   has been clear that those orders, the examiner orders, are

11   stayed.  We understand that and we are not acting on those.  We

12   do believe that once the examiner order is entered up in

13   Connecticut and we appoint an examiner up in Connecticut, it

14   will take care of the orders in front of Your Honor.

15         But at this point, we would say keep those orders in

16   place, maybe have another, you know, schedule another 30 day

17   status conference type thing and hopefully things will

18   completely resolve themselves in Connecticut in that time.

19         THE COURT:  All right.  That sounds fine.  When is

20   the next hearing in this case, Mr. Ziegler?

21         MR. ZIEGLER:  I was afraid you were going to ask

22   that, Your Honor.  Normally I have it in my book but since we

23   didn't have a binder this month, I don't have that schedule

24   with me.

25         THE COURT:  February 15th?  How is February 15th?

1            MR. KLAUDER:  David Klauder.  That is fine, Your

2    Honor.  I do have one question though.  I'm not sure if Your

3    Honor -- we took the position at the last hearing that no one

4    had filed a motion to vacate the orders.  I don't know how Your

5    Honor feels about that, if motions should be filed in that

6    regard or how you want to deal with that issue.  If everybody

7    agrees or if it seems appropriate that the order should be

8    vacated or what have you.

9            THE COURT:  Well, I think if all I'm doing is staying

10   them until February 15th, why don't we deal with it then?

11   Let's find out for sure that an order has in fact been entered

12   in the Connecticut cases that appoints an examiner and that it

13   includes the scope that your office has been asking for in

14   these cases to make sure that the examiner is, in fact, going

15   to basically exercise the same type of responsibility to ferret

16   out what happened in the Turcini series of cases.  And if, in

17   fact, it does include that scope I think my order probably is

18   moot.

19            I don't mind vacating it on my own without some party

20   asking me for it, for that to happen if, in fact, there is no

21   point to my order being carried out.  So why don't we just

22   address it then.  If there is still some need for it, then you

23   can advise me of what your position is at that time Mr.

24   Klauder.  But as long as I'm just keeping them stayed, I don't

25   see why I need any further pleadings by anybody.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. KLAUDER:  Okay.  I'm sorry it was February 15th.

2  Did you say the time of that hearing?

3          THE COURT:  What time, Ms. Wakim?

4          MS. WAKIM:  One o'clock.

5          THE COURT:  February 15th at one o'clock eastern.

6  And again everyone can call in obviously so all by court call.

7  Ms. Baer, are you on the phone?

8          MS. BAER:  Yes, Your Honor, I am.

9          THE COURT:  Okay, I have a question about Grace while

10 we're on the phone.  Is anything going on on Tuesday this

11 coming week in Grace?

12         MS. BAER:  No.  Tuesday is an off day.  The parties

13 were not available to have -- certain parties were not

14 available to have trial that day.  So we have Monday and

15 Wednesday but Tuesday is an off day.

16         THE COURT:  All right.  I just wanted to confirm that

17 so that we can -- I just have a technical issue so that's fine.

18 I just wanted to verify that that was the case.  Thank you.

19         MS. BAER:  Your Honor, just so you know, we also when

20 we sent out our final agenda of the hearing, we noted that on

21 the final agenda so that there was no confusion with court call

22 and the parties.

23         THE COURT:  Yes, I noted that on the agenda but my

24 court security staff was just asking and I just wanted to

25 verify.  So I said I would ask and since I saw your name on the

1 list, I rather than placing another call I just thought I'd

2 ask.  So thank you and I appreciate the information.

3        Okay, anybody have anything further with respect to

4 Item 6 then?  All right, it's continued to February 15th at one

5 and anyone who is only interested in that item is free to

6 disconnect or leave.  Thank you.

7        UNIDENTIFIED SPEAKER:  Thank you.

8        THE COURT:  Mr. Restivo.

9        MR. RESTIVO:  Your Honor, the plan proponents and

10 supporters have asked Mr. McGonigle to give a status report to

11 the Court on behalf of the group and then on behalf of the

12 debtor, a general status report to the Court and then on behalf

13 of the debtor I'm going to give a specific response.

14        THE COURT:  All right.  Mr. McGonigle.  Good morning.

15        MR. MCGONIGLE:  Good morning, Your Honor.  In view of

16 the Court's comments at the December 10, 2007 omnibus hearing

17 regarding the status of the Court's work on the various motions

18 for reconsideration which are listed on today's hearing agenda

19 at Item Number 2, the parties believe that a status report is

20 in order.  Making this report I'm speaking on behalf of all the

21 plan proponents and supporters.  In sum, the plan proponents

22 and supporters are pleased to report substantial progress for

23 the third amended plan of reorganization.  Various parties in

24 interest have been working on revised plan documents and the

25 parties anticipate further progress along those lines in the

12

1  coming weeks.

2          We anticipate that the third amended plan would be

3  responsive to concerns raised in Your Honor's December 21, 2006

4  confirmation opinion.  In view of the progress we have made,

5  Your Honor, the plan proponents and supporters believe that it

6  would be unnecessary for the Court to proceed further with its

7  opinions on the motions for reconsideration.

8          We anticipate that the third amended plan if filed as

9  contemplated by the parties will address the issues Your Honor

10  has been considering.  Accordingly, we request that Your Honor

11  continue the motions for reconsideration through the February

12  15th omnibus.  And that Your Honor require a status report from

13  the parties regarding progress on a third amended plan at that

14  hearing.

15          Thank you, Your Honor, for your consideration of this

16  request.  We believe that submission of a third amended plan if

17  finally approved by the parties would be a favorable

18  development for all constituencies in this case.  We urge Your

19  Honor to act favorably upon the parties' suggestion.  Thank

20  you.

21          THE COURT:  My staff may kill me if I grant this

22  request at this time.  I may not be here February 15th at this

23  point in time.

24          MR. MCGONIGLE:  Your Honor referred to the Court's

25  security staff.  Perhaps it can put them on detail to protect

1 you.

2          THE COURT:  Maybe I better press the button right

3 now.  Okay, Mr. Restivo.

4          MR. RESTIVO:  Your Honor, as I believe the Court well

5 knows the debtor is 100 percent supportive of the concept of a

6 third amended plan of reorganization that takes care of any

7 issues that have been raised.  We are fully supportive of the

8 idea that at the present time a ruling by the Court on the

9 motion for reconsideration would not be helpful because the

10 parties appear to be making good progress and don't need an

11 external event to mess up their thinking.

12          However, Your Honor, as the Court knows supporting

13 parties include 40 to 50 supporting insurers and there have

14 been discussions by various parties with those insurers, all of

15 which is necessary.  There has been work on revised plan

16 documents supporting Mr. McGonigle.  The debtor, while being

17 fully supportive of this process needs to see those documents

18 now so that we can weigh in, make sure everything is correct,

19 identify any issues and therefore we would like the Court to

20 urge, encourage or order that the debtor be given copies of any

21 revised plan documents that have been shared.  It's just

22 thought, it's a process of where one of 45 insurers in

23 mediation can stand up and say wait a second, this is mediation

24 and everything is confidential.

25          We think, we understand, this has gone far enough

1  that there are now revised plan documents in circulation.  We

2  just think it would be more helpful for the process that the

3  major plan proponent, mainly the debtor, see these documents

4  now and identify if there are any issues that need to be dealt

5  with so this can move quickly.

6        THE COURT:  Okay, is there some objection to the

7  debtor seeing revised plan documents at this time?

8        MR. MCGONIGLE:  Your Honor, David McGonigle.  I'm now

9  speaking for PPG.  What I had -- the report I had given to Your

10 Honor was on behalf of all the plan proponents and supporters.

11 Your Honor, I'm not aware of any objection in that regard.  We

12 are moving very much in real time on this process.  We fully

13 understand the importance of the debtors receiving and

14 commenting upon and offering input on the various planning

15 documents as has happened on the first amended plan and the

16 second amended plan and the original plan.  It is fully our

17 intent.

18       We are working hard.  In fact we have a call today at

19 1:00 p.m. with the mediator and all the various insurers on the

20 PPG side at which I intend to raise the issue and request for

21 the promptest possible forwarding of all the documents that

22 we've been working on to the debtor and the other parties in

23 interest.

24       As Your Honor will no doubt understand the plan

25 process and the negotiation process in our side involves a

1  number of sensitive issues with respect to all the various

2  parties involved, insurers, probably traded companies, various

3  parties in interest that are trying to work toward a consensual

4  plan and do so while the negotiations are still subject to

5  final approval by their various managements.  We will endeavor

6  to have the documents in the debtor's hand at the earliest

7  possible moment.  I am not aware at this point in time whether

8  there are objections or not because the request is something

9  that we just discussed this morning in the courtroom before

10 this hearing, Your Honor.

11        So we are supportive of the debtor's view of

12 receiving the documents as soon as possible.  I'm just not in

13 the position right now to predict precisely when that approval

14 will happen, although of course it will happen Your Honor.

15        THE COURT:  Well --

16        MR. LOCKWOOD:  Your Honor, this is Peter Lockwood.

17        THE COURT:  Yes, Mr. Lockwood, just a second.  We're

18 having that sound problem again.  Cathy, do you know what to do

19 about that?  Is that what happened this morning earlier?

20        MS. YOUNKER:  That's what happened earlier.

21        THE COURT:  Now it's happening again?  Mr. Lockwood,

22 you are not on a speaker phone are you?

23        MR. LOCKWOOD:  No, I'm not Your Honor.

24        THE COURT:  Okay, just a second.  I'm sorry.  I'm

25 going to have to cal the system staff.  I don't know why we're

1  having this problem repetitiously again.  Just one minute.

2              (Judge speaking with system staff)

3            MR. LOCKWOOD:  Is that better?

4            THE COURT:  Okay, yes, Mr. Lockwood.  Go ahead,

5  please.

6            MR. LOCKWOOD:  Your Honor, I have a brief remark

7  which is that Mr. Restivo I think is making an assumption not

8  warranted by the fact which is that there are plan documents

9  available to be distributed to the debtor.  The fact of the

10 matter is that the parties who are directly affected by the

11 proposed changes in the third amended plan which in fact really

12 other than the desire to get it confirmed don't directly relate

13 to the debtor at all, have been having discussions among

14 themselves about term.  But to date there have been no

15 documents circulated among the ACC, the FCR, PPG and Corning.

16 And, therefore, there is really nothing that I'm aware of that

17 can be given to the debtor.

18           Certainly the debtors will have an opportunity to

19 comment on plan documents before anybody starts submitting them

20 to the Court or anything else.  And I agree with Mr. McGonigle

21 which is at this moment and time I haven't, for example, seen

22 the first piece of paper beyond some term sheet type of

23 documentation.  There's really nothing to circulate to the

24 debtor.  Nobody is trying to, you know, keep the debtor out of

25 the loop here.

1          MR. RESTIVO:  Might I respond, Your Honor to Mr.

2    Lockwood's comments?

3          THE COURT:  Yes, sir.

4          MR. RESTIVO:  As I understood Mr. McGonigle's

5    comments, I believe that there have been documents circulated

6    vis a vis some of the insurance issues, at least on the PPG

7    side, possibly on the Corning side.  With respect to those

8    insurance issues the debtor has claims of hundreds of millions

9    of dollars of insurance with the same insurers.  And the debtor

10   has been part of the mediation and thus is covered by the

11   mediation privilege.

12          So independent of whether there has been any sharing

13   of documents with the ACC which I'm sure we will see in

14   appropriate times, to the extent there is changes and what the

15   debtor was doing with respect to those claims of insurance.

16   From the current plan to the third amended plan, obviously the

17   debtor on behalf of the estate needs to know what that is and

18   needs to determine if there is any issues or anything we need

19   to talk about.

20          So Mr. Lockwood, to the extent nothing has been

21   shared with the ACC as to financial terms or there is no pieces

22   of paper, fair enough.  We can't say that.  My sense is that

23   with respect to insurance and insurance policies covering this

24   debtor I believe there have been documents been exchanged and I

25   think it's now time for the debtor to see them.

1          MS. HELLER: Your Honor, this is Sheryl Heller.  May I

2   be heard?

3          THE COURT:  Just a minute Ms. Heller.  Roy.

4               (Discussion with system support)

5          THE COURT:  Go ahead, Ms. Heller.

6          MS. HELLER:  Your Honor, on Corning's behalf I just

7   want to make it clear to the Court and to the debtor that

8   Corning has received no documents as of yet.  It's my

9   understanding that the documents that are being worked on are

10  being worked on in the context of the PPG mediation.  So with

11  respect to any insurance issues, Corning is not privy to any

12  documents as of yet.

13         THE COURT:  Okay.  I think the issue is making sure

14  that the debtor gets prompt notice regardless of who is working

15  on what.  Because unless you folks are trying to do a plan that

16  circumvents the debtor, and I don't understand that anybody at

17  this point is trying to do that, then the debtor obviously has

18  to be involved in the plan.

19         So prompt is the good word.  And timely is another

20  good word.  So prompt and timely disclosure to the debtor so

21  that the debtor has a fair opportunity to get involved in the

22  process and that's not just to be involved at the end of the

23  process, but to make sure that there is a meaningful

24  opportunity to be involved.

25         So Mr. McGonigle, you've got a phone call this

1  afternoon.  To the best of your ability, if you can get

2  agreement to share those documents with the debtor, you know,

3  forthwith I think would be another good term to be used.  And

4  to the extent that Corning doesn't have them yet if there are

5  changes in the Corning documents, if and when they are produced

6  they should also be shared as soon as they are available with

7  the debtor.  And likewise when financial terms are involved if

8  there are any changes they also ought to be shared with all of

9  the constituents who are plan proponents.

10      I don't know how you are going to be a plan proponent

11  without sharing the documents and signing up to plan proponent.

12      MR. MCGONIGLE:  Your Honor, if I may.  It's a bit, I

13  suppose as if no good deed goes unpunished.  If I may from

14  PPG's perspective explain what we were doing.  As I mentioned,

15  we are moving very much in real time.  And substantial progress

16  has been made.  In an effort to save all parties unnecessary

17  work to try to move the process along, we've had our people

18  burning late hours, working feverishly to produce things to

19  share with everybody.  So our effort was not to hide anything

20  from the debtor, hide anything from Corning, hide anything from

21  ACC, hide anything from the FCR.

22      Our effort was to decide somebody needed to take a

23  first stab at carrying the laboring war on this for all the

24  constituencies.  We've been doing that, Your Honor, obviously

25  towards the goal of at the very earliest possible moments

26  consistent with our mediation confidentiality requirements of

27  sharing those documents around with the group.

1          And Your Honor we will, of course, at the very

2    earliest possible moment share those documents.  I would say

3    that Mr. Geronemus has done a fantastic job on this mediation

4    throughout its period of helping us sequence when certain

5    things should happen to whom, with whom, and when.  And so Your

6    Honor I would urge that we defer to his judgment and to the

7    judgment of the carriers, but I will commit to ask to produce

8    those documents at the very earliest possible moment.

9          THE COURT:  All right.  Mr. Restivo I hope for now

10   that's good enough.  This Court is obviously going to be here

11   for the rest next of my life involved in the Grace trial so if

12   you need something, you know my phone number and probably my

13   smiling face here in the courtroom.  So you can get me.  To the

14   extent that you've got some issue that needs to be -- that you

15   need ruling on.  If there is a need for that.

16         MR. MCGONIGLE:  We hope to keep you smiling, Your

17   Honor.

18         MR. RESTIVO: I'm assuming Mr. McGonigle will share on

19   his call this afternoon what the Court said in terms of prompt,

20   timely, expeditious so that they can take that into account in

21   answering your request.

22         MR. MCGONIGLE:  I will share that and I believe

23   almost every participant on that one o'clock call is probably

24   on the phone right now.  Thank you, Your Honor.

25         THE COURT:  Okay.  Item 2 is continued to February 15

26   for status conference and the Court will not issue an opinion

27   on the motions for reconsideration pending that hearing.

21

1          MR. MCGONIGLE:  For the plan proponents and

2  supporters, Your Honor, thank you.

3          MR. RESTIVO: I believe that is all we have, Your

4  Honor.

5          THE COURT:  All right.  Anything else?  Any other

6  matters to address today?  Okay, we're adjourned.  Thank you.

7  Thank Mr. Geronemus.  We're adjourned, thank you.

8                * * * * *

## CERTIFICATION

I, LYNN SCHMITZ, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter to the best of my ability.

/s/ Lynn Schmitz              Date:  January 16, 2008
LYNN SCHMITZ
J&J COURT TRANSCRIBERS, INC.