THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Objection Deadline: February 8, 2008 at 4p.m.** |
| | ) | **Hearing Date: February 25, 2008, at 1 p.m.** |

**DEBTORS' MOTION FOR AN ORDER AUTHORIZING
THE REMEDIUM CLOSING AGREEMENT WITH THE IRS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") in

the above-captioned chapter 11 cases, by their undersigned counsel, respectfully move this Court

(the "Motion") for entry of an order authorizing the Debtors to perform  their obligations under

the Closing Agreement on Final Determination Covering Specific Matters (IRS Form 906-C)

dated February __, 2008 (the "Closing Agreement"), between W. R. Grace & Co. and

Subsidiaries[2], on its own behalf and as common parent of W. R. Grace & Co. and Subsidiaries

Consolidated Group, and the Commissioner of the Internal Revenue Service ("IRS").  A copy of

---

[1]     The Debtors consist of the following 62 entities:  W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2]     Terms not defined herein shall have the meaning ascribed to them in the Closing Agreement.

the Closing Agreement is attached hereto as Exhibit A. Under the Closing Agreement, the

Debtors will be allowed a capital loss in the amount of $32,150,000 arising from the Transaction

(as defined below) in lieu of the $128,600,000 capital loss that it originally claimed on its 1999

federal income tax return. The Debtors thus would retain 25% of the original capital loss and the

remaining 75% of that capital loss would be disallowed. In support of this Motion, the Debtors

respectfully state as follows:

**JURISDICTION**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this

Motion is proper under 28 U.S.C. § 1408.

2.      The statutory predicates for this Motion are sections 105 and 363 of the

Bankruptcy Code and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure.

**BACKGROUND**

3.      On April 2, 2001 (the "Petition Date"), the Debtors filed their voluntary petitions

for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These

Chapter 11 Cases have been consolidated for administrative purposes only, and, pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their

businesses and manage their properties as debtors in possession.

4.      In 1999, the Debtors and de maximis, Inc. ("de maximis"), an independent

environmental project management company with specialized experience in construction project

and superfund site management, formed a special purpose environmental management joint

venture called Remedium Group, Inc. ("Remedium"), also a Debtor. The objective was to

centralize, manage and, to the extent possible, minimize environmental expenditures associated

2

with certain environmental remediation sites that were no longer part of the core business operations of the Debtors ("Legacy Liabilities").

5.      The formation of Remedium involved a number of related transactions (collectively, the "Transaction"), the federal income tax consequences of which have been challenged by the IRS.

6.      The major elements of the Transaction were as follows:

(a)      The recapitalization of a wholly owned subsidiary of W. R. Grace & Co. (renamed Remedium) to create two classes of common stock, 10,000 shares of Class A held by W. R. Grace & Co. and 1,223 shares of Class B held by W. R. Grace & Co.-Conn. ("Grace-Conn.");

(b)      Grace-Conn's transfer to Remedium of certain of the Legacy Liabilities;

(c)      The assignment by Grace-Conn. to Remedium of a partial interest in a promissory note of Grace International Holdings, Inc., one of the Debtors, in order to fund the remediation of the Legacy Liabilities. Grace-Conn. also transferred certain employees, property and equipment to Remedium; and

(d)      The sale by Grace-Conn. of the 1,223 shares of Class B common stock to de maximis.

7.      The sale of the Class B common stock to de maximis resulted in a capital loss of $128.6 million, which the Debtors reported on their 1999 federal income tax return.

8.      On September 16, 2004, the IRS issued a Notice of Proposed Adjustment proposing to disallow the $128.6 million capital loss on various technical statutory grounds and asserting that the Transaction lacked economic substance.

9.      On May 5, 2006, the IRS issued a 30-day letter and on May 25, 2006 the Debtors filed a protest with the IRS.

10.     In the protest, the Debtors asserted that the Transaction satisfied all of the technical statutory requirements of the Internal Revenue Code and that the Transaction could not be disregarded as an economic sham because the Transaction was anticipated to and did create a

substantial profit[3] and legitimate economic consequences for the Debtors and de maximis; and was entered into for a valid business purpose.

11.     Proofs of claim nos. 15283 and 15284 (the "Claims") were filed in the Chapter 11 cases with respect to the IRS' proposed $128.6 million disallowance.

12.     As a result of negotiations between the parties, the parties entered into the Closing Agreement for which the Debtors now seek approval.

## TERMS AND CONDITIONS OF THE CLOSING AGREEMENT

13.     The Closing Agreement provides as follows:

(a)     The Debtors will be allowed a capital loss in the amount of $32,150,000 arising from the Transaction in lieu of the $128,600,000 capital loss that they originally claimed on their 1999 federal income tax return. The Debtors thus will retain 25% of the original capital loss and the remaining 75% of that capital loss will be disallowed.

(b)     The amount disallowed is not recoverable as a deduction, loss, basis, or in any other manner at any time.

(c)     The Closing Agreement is final and conclusive except:

(i)     the matter it relates to may be reopened in the event of fraud, malfeasance, or misrepresentation of material fact; and

(ii)     it is subject to the Internal Revenue Code sections that expressly provide that effect be given to their provisions (including any stated exception for Code section 7122) notwithstanding any other law or rule of law.

---

[3]     Through December 31, 2006, and as a result of the joint venture, the Debtors have experienced a significant increase in profits through reduced expenditures (approximately $20 million in total projected savings and approximately $26 million in net present value savings). In addition, de maximis has been an active participant in Remedium adding substantial value, employees have been retained, and employee morale has improved in recognition of the accomplishments of the Remedium joint venture.

DOCS_DE:134353.1

14.     The order approving this Motion will provide that the Claims are disallowed and expunged for all purposes.

## RELIEF REQUESTED

15.     By this Motion, the Debtors seek an order approving the Closing Agreement, and authorizing the Debtors to perform their obligations under the Closing Agreement.

## BASIS FOR RELIEF

**A.      The Closing Agreement is a good settlement.**

16.     The Debtors bring this Motion under sections 105(a) and 363(b)(1) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code "permits the court to issue any order that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. §105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. §363(b)(1).

17.     This Court has statutory authority to authorize and approve the Debtors' entry into the Closing Agreement pursuant to sections 105 and 363(b)(1) of the Bankruptcy Code.  A settlement of claims and causes of action by a debtor in possession constitutes a use of property of the estate.  See Northview Motors, Inc. v. Chrysler Motors Corp., No. 98-3387, 1999 U.S. App. LEXIS 13403, at *11 (3d Cir. 1999).  If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code.  See id.

18.     Bankruptcy Rule 9019 provides that, after notice and a hearing, a court may approve a proposed settlement or compromise.  The decision whether to accept or reject a compromise lies within the sound discretion of the court.  See In re Resorts Int'l, Inc., 145 B.R.

412, 451 (Bankr. D. N.J. 1990); In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (Bankr. E.D. Pa. 1986).

19.    In reviewing this Motion, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." In re Martin, 91 F.3d 389, 393 (3d Cir. 1996). This requires court consideration of the following criteria: "(1) the probability of success in litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id.

20.    Approval of the Debtors' entry into the Closing Agreement is in the best interests of the Debtors and their estates, for the following reasons.

(a)    The structure the Debtors implemented in the Transaction was similar to that adopted by other companies and the losses of those companies have already been the subject of tax litigation both in the United States Court of Appeals for the Federal Circuit (Coltec Indus., Inc. v. United States, 454 F.3d 1340 (Fed. Cir. 2006)) and the United States Court of Appeals for the Fourth Circuit (Black & Decker Corp. v. United States, 436 F.3d 431 (4th Cir. 2006)). Although the taxpayers in those cases won at the District Court level, the Court of Appeals reversed (and in the case of Black & Decker, remanded).

(b)    Although the Debtors believe that their case is superior to those that have been litigated and the facts supporting the Debtors' case are substantially different from the cases already litigated, the Debtors wish to settle this tax controversy under the terms set forth above for several reasons, as outlined herein:

6

DOCS_DE:134353.1

(i)     Although the <u>Coltec</u> and <u>Black & Decker</u> tax cases are not binding precedents in the Debtors' situation, they are currently the only decided cases dealing with the kind of structure that was used in the Transaction, and they demonstrate what Debtors' counsel believes to be an increasingly difficult litigation environment for the taxpayer.

(ii)    The issues involved in the Claims are complicated and fact intensive due to the number of sites Remedium administers across the country. Litigating this issue would therefore be very time-consuming and expensive.

(iii)   By Order entered on October 30, 2007 (Docket No. 17216), this Court entered an Order Authorizing the Optimization Plan which will among other things, establish a tax efficient global structure to support U.S. cash requirements. A key component of this Optimization Plan is a determination of the amount of the Debtors' net operating losses ("NOLs") relating to this issue, which are an asset of the Debtors' estate. The Closing Agreement resolves uncertainty with respect to the amount of the NOLs.

(iv)    It is the Debtors' understanding that the settlement contained in the Closing Agreement is more favorable to the taxpayer than settlements reached by other taxpayers with similar tax controversies.

21.     When expense, inconvenience and delay are compounded with an unfavorable litigation environment, it is the belief of the Debtors that the interest of the creditors and the estate does not lie in litigating the matters covered by the Closing Agreement.

B.      **Relief Under Bankruptcy Rule 6004(h) is Appropriate.**

22.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." The Debtors request that the Order be effective immediately by providing that the 10-day stay under Bankruptcy Rule 6004(h) is waived.

23.     The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 10-day

7

stay period, Collier suggests that the 10-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy 15th Ed. Rev., ¶ 6064.09 (L. King, 15th rev. ed. 1988). Furthermore, Collier provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. Id.

24.     The parties to the Closing Agreement desire to enter into the Closing Agreement immediately upon Bankruptcy Court approval. Accordingly, the Debtors hereby request that the Court waive the 10-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, (iv) counsel to the Future Claimants' Representative, (v) counsel to the IRS, and (vi) those parties that requested papers under Fed. R. Bankr. P. 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

8

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing the Debtors to perform their obligations under the Closing Agreement, (ii) disallowing and expunging the Claims (as defined herein) and (iii) granting such other and further relief as the Court deems just and proper.

Dated: January 18, 2008

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Lori Sinanyan
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession

9