IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Re: Docket No. 17788**

**Objection Deadline: January 29, 2008 at 4:00 p.m.**
**Hearing Date:        TBD**

## DEBTORS' OPPOSITION TO APPLICATION OF FUTURE CLAIMANTS' REPRESENTATIVE FOR AUTHORIZATION TO EMPLOY SPECIAL ASBESTOS PROPERTY DAMAGE SETTLEMENT COUNSEL NUNC PRO TUNC TO JANUARY 4, 2008

The fundamental premise of the FCR's Motion -- that the FCR needs "special asbestos property damage counsel" in order to resolve Asbestos PD claims and thereby make confirmation of the FCR's and ACC's proposed plan proceed more smoothly -- is ludicrous. The Debtors have an extraordinary track record with respect to PD claims in this case, having reduced the number of pending claims from over 4,000 filed as of the Bar Date to 178 pending contested claims as of this date. Virtually all of the remaining contested PD claims are the subject of dispositive motions that are currently under advisement with this Court. The Debtors have demonstrated that they are highly capable of resolving PD claims and of all of the various contested matters in these cases, this may be the most clear cut example of success as well as the complete absence of the need for assistance from "special counsel." For this reason, appointing "special asbestos property damage counsel" for the FCR would serve no useful purpose and would be a complete waste of the estate's resources.

Further, as Grace's counsel noted at the November 26, 2007 omnibus hearing, the plan of reorganization proposed by the FCR and the ACC in early November 2007 represents a step backward, rather than forward, with respect to development of a negotiated, consensual plan

of reorganization.  11/26/07 Tr. at 118.  For the FCR to seek to retain special counsel in the

context of this non-consensual, highly flawed proposed plan makes no sense.  The Debtors

therefore oppose the FCR's Application.

**Background**

A.    **History of Asbestos PD Claims in Grace's Bankruptcy Proceedings.**

        1.    The history and success of Grace's active litigation and resolution of

Asbestos PD claims in these bankruptcy cases over the past five years is well known to the

Court.  Grace has been highly successful in resolving PD claims.  That success is briefly

described herein.

        2.    As a result of the March 31, 2003 Bar Date, more than 4,000 Asbestos PD

Claims were filed.  In 2005, the Debtors filed omnibus non-substantive and substantive

objections to essentially all of these claims.  The non-substantive objections included objections

to claims that had been superceded or were duplicates and objections to a large number of claims

that lacked authority from the claimants at the time the claims were filed.  The merits objections

covered *inter alia* adequacy of product identification, statutes of limitation and proof of hazard.

        3.    In late 2005, various claimants responded to these objections.  Most of the

non-evidentiary objections were heard and adjudicated during property damage claims hearings

conducted by the Bankruptcy Court in January 2006.  As a result of that objection process and

the January hearings, approximately 150 PD Claims were disallowed, withdrawn or reclassified.

        4.    As a result of motions filed by the Debtors, in mid and late 2006 and early

2007 this Court disallowed and expunged approximately 375 additional Asbestos PD Claims,

including Minnesota stigma claims, certain claims for buildings located in the state of Georgia,

and certain claims for which the claimants' counsel did not obtain claimants' signatures.

5.    In August 2006, with 656 PD claims remaining to be adjudicated, this Court directed the Debtors and the PD Claimants to negotiate a case management order establishing a process for adjudicating certain issues applicable to many of the PD claims. Pursuant to this Case Management Order (approved by the Court in August 2006 and amended in October 2006), summary judgment motions regarding the Debtors' substantive objections relating to product identification, statute of limitations and properties located in Libby, Montana were filed on February 16, 2007 and were argued before this Court on April 9, 2007 and September 10, 2007. Thus far, as a result of these motions, the Court has disallowed and expunged another approximately 60 PD claims. [Dkt. Nos. 13120; 13406; 14592-14600; 14602]

6.    Several of the summary judgment motions filed in February 2007 were mooted by Asbestos PD claims settlements approved by this Court in the autumn of 2007.    The Court has not ruled on pending dispositive motions regarding claims subject to the statutes of limitations for California, Canada and New York and certain claims in other states subject to Delaware's statute of limitations.

7.    On April 17, 2007, the Bankruptcy Court disallowed and expunged 44 claims filed by the Speights & Runyan firm without authority from the claimants. [Dkt. No. 15209] On December 6, 2007, the District Court affirmed. [Dkt. Nos. 17572-17573]

8.    In April, 2007, the Bankruptcy Court held a hearing to adjudicate product identification objections to 19 claims and disallowed and expunged 3 claims. [Dkt. No. 15296]

9.    Between April and December 2007, the Debtors entered into settlements with 287 PD claimants for a total of approximately $82 million and the Bankruptcy Court approved these settlements. [Dkt. Nos. 16103; 16104; 16369; 16689; 17184-17186; 17193-17211; 17433-17441; and 17642] No appeals were filed.

10.     As a result of all of these withdrawals, reclassifications, rulings and settlements, as shown on the pyramid chart attached hereto as Exhibit A, there are now only 178 active PD Claims -- 55 for buildings located in Canada and 136 for buildings located in the United States.

**B.     Current Status of Speights & Runyan Asbestos PD Claims.**

11.     The Speights & Runyan firm originally filed 2,976 claims. Of these almost three thousand claims, only 160 remain:  105 claims for buildings in the United States and 55 claims for buildings in Canada.  Simply put, the Debtors have been highly successful in resolving S&R's claims through motion practice which has resulted in court rulings disallowing claims and withdrawals of claims for more than 2,800 S&R claims.

12.     The vast majority of the remaining S&R claims are subject to pending dispositive motions.  145 of the 160 remaining S&R claims are subject to pending motions to disallow and expunge:

- 54 of the 55 Canadian claims are subject to the Debtors' pending Motion for an Order Disallowing and Expunging Time-Barred Canadian Asbestos Property Damage Claims [Dkt. 14597, filed 2/16/07];

- 82 of the 105 U.S. claims are subject to the Debtors' pending Motion for an Order Disallowing and Expunging California Asbestos Property Damage Claims Barred by the Statute of Limitations  [Dkt. 14594, filed 2/16/07];

- 4 of the 105 U.S. claims are subject to the Debtors' pending Motion for an Order Disallowing and Expunging New York Asbestos Property Damage Claims barred by the Statute of Limitations [Dkt. 13701, filed 11/17/06];

- 3 of the 105 U.S. claims are subject to the Debtors' pending Motion for an Order Disallowing and Expunging Sixteen (16) Time-Barred Asbestos Property Damage Claims [Dkt. 14598, filed 2/16/07]; and

- 2 of the 105 U.S. claims are subject to the Debtors' pending Motion to Disallow Claims and Expunge the Allegheny Center Duplicate Claims.  [Dkt. 17328, filed 11/9/07]

13.     In addition, Speights & Runyan's Motion for Class Certification on behalf of Anderson Memorial Hospital has been fully argued and briefed. This Court has indicated that it anticipates issuing a ruling shortly.

C.     **Hanly Conroy Role in Federal-Mogul Bankruptcy.**

14.     The FCR's Application states that one of Hanly Conroy's qualifications to serve as "special asbestos property damage settlement counsel" is that Hanly Conroy was retained by the Debtors in Federal-Mogul's chapter 11 cases as special asbestos litigation counsel. Application ¶ 12.

15.     While Hanly Conroy may have experience with respect to PD claims generally and Speights & Runyan claims in particular, it is significant that Hanly Conroy was retained by the *debtors* in Federal-Mogul's proceedings to assist in their claims adjudication, not a creditor constituency or the FCR. Here, in Grace's chapter 11 cases, the Debtors already have experienced, sophisticated counsel who have successfully handled and obtained the disallowance or withdrawal of the overwhelming majority of the PD claims.

16.     Further, a review of the Speights & Runyan PD claims Federal Mogul ultimately agreed to allow in its case, shows that most of the claims that S&R filed in both the Federal-Mogul and Grace cases and that were allowed as part of the Federal-Mogul settlement have been disallowed or are currently subject to motions for summary judgment. The chart attached as Exhibit B demonstrates this.

## ARGUMENT

### I.    The Debtors Have Successfully Resolved Thousands of Asbestos PD Claims in These Bankruptcy Cases.

17.    As demonstrated by the Debtors' PD claims history set forth above, Grace has been highly successful in adjudicating and settling thousands of PD claims.

18.    On this record, the Debtors have every expectation of continuing to resolve the remaining Speights & Runyan PD claims through the pending motions. Resolution of the pending dispositive motions with respect to the California and Canadian claims would, in the Debtors' view, put the parties much closer to an overall resolution of S&R's claims.

19.    Likewise, resolution of the Anderson Memorial class certification motion by this Court -- even if appeals are pursued -- should assist Grace and S&R in working towards consensual resolution of the remaining claims.

### II.    None of the Expressed Purposes for the Special Asbestos PD Counsel are Needed At This Time.

20.    The FCR's Motion identifies four specific types of "support" that the Hanly Conroy firm would provide to the FCR. None of them are needed at this time:

(a)    *"Advice in formulating and implementing a settlement strategy for resolving Asbestos PD claims":*

The Debtors already have a strategy for resolving the remaining Asbestos PD claims: Seek rulings on as many of the pending motions as possible and discuss with Speights & Runyan the true value of any remaining claims. In addition, the Debtors already have experienced counsel handling the PD claims and Debtors' counsel has been litigating and settling asbestos property damage claims for over 18 years.

(b)    *"Advice with respect to the Debtors' on-going Asbestos PD Claims litigation":*

It is difficult to understand what "advice" could be possibly be needed when dispositive motions with respect to the vast majority of the remaining claims have been fully briefed and argued.

> (c)    *"Advice with respect to the FCR / ACC Plan as it relates to Asbestos PD Claims":*

As discussed above, from the Debtors' perspective, the FCR / ACC Plan is a non-starter and thus retaining additional counsel to provide "advice" with respect to that Plan makes no sense; and

> (d)    *"Advice with respect to the review and estimation of Asbestos PD Claims":*

This category is particularly confusing to the Debtors. The Debtors have strong concerns about yet another law firm "reviewing" the Speights & Runyan PD claims. Moreover, no "estimation" of the remaining PD Claims is taking place at present and may not be needed if the Court rules on the pending motions before the parties are engaged in confirmation proceedings. And, if such an estimation would ever take place, the Debtors have highly competent counsel to represent the estate in such litigation. The Debtors see no reason why the FCR's present counsel, who is representing him in the PI Estimation Proceedings, would not be equally competent to represent the FCR's interests in any such PD Estimation proceedings. Such estimation proceedings, given the number of claims remaining and the types of issues that are likely to be raised would be a "walk in the park" as compared to the PI Estimation Proceedings.

## III.    <u>Hanly Conroy's Work in Federal-Mogul Does Not Support Its Retention Here.</u>

21.    Hanly Conroy was retained by the debtors in Federal-Mogul. Here, the Debtors already have experienced counsel handling PD claims at Reed Smith LLP and Kirkland & Ellis LLP.

22.    The Debtors understand that Hanly Conroy litigated various matters relating to PD claims in Federal-Mogul's proceedings. Here, however, the FCR seeks to retain Hanly Conroy not to litigate claims but principally to provide advice with respect to settlement issues. Yet, it is far from obvious that Hanly Conroy played any meaningful role in settling the Speights & Runyan claims in Federal-Mogul.

23.    In fact, the Debtors understand that the PD claims were subject to mediation in the Federal Mogul case and that mediation led to the ultimate allowance of far more claims then actually remain pending in Grace's case. Federal-Mogul's Motion to Approve the settlement specifically states that the Debtors and Unsecured Creditors, with the mediator's supervision, negotiated the settlement agreement with Speights & Runyan. *Federal-Mogul*, Dkt. No. 11648 ¶ 20. And, the Debtors and Speights & Runyan have now been directed to mediate.

24.    Further, a review of the S&R PD claims that Federal Mogul ultimately agreed to allow in its case, shows that virtually all of the same claims filed in the Grace cases have been disallowed or are currently subject to motions for summary judgment. *See* Exhibit B. Grace fails to see how Hanly Conroy's assistance in Federal Mogul with respect to claims that have been disallowed or are subject to dispositive motions in the Grace cases supports hiring them here. No assistance is needed to agree to the allowance of meritless claims.

25.    Hanly Conroy's chief contribution to the settlement of Speights & Runyan's claims in Federal-Mogul appears to have been submission of a June 4, 2007 Declaration, a copy of which is attached hereto at Exhibit C. The declaration describes categories of PD claims and ranges of values for those categories. The declaration was submitted *after* Federal Mogul and Speights & Runyan had negotiated a settlement and submitted it to this Court for approval on February 26, 2007 (*Federal-Mogul* Dkt. No. 11648) and provides the debtors' view of why the settlement amount was appropriate.

26.     Here, Grace and its counsel are more than capable of providing the same type of information, either to the Court at the appropriate time, or to the FCR and his counsel in connection with serious negotiations of a consensual plan. Indeed, Grace has already provided to the FCR's counsel information regarding S&R's PD claims and Grace's defenses. No additional 'special' asbestos property damage claims counsel is needed for these purposes.

27.     In addition, the Debtors and Speights & Runyan have exchanged offers and demands on three specific buildings (the three hospitals that have been the subject of recent motion practice) without the need for any input from special counsel for the FCR.

## IV.     Appointing Special Litigation Counsel Would be a Waste of the Estate's Resources.

28.     Appointing special litigation counsel to assist regarding PD Claims in these cases at this time would be a complete waste of the estate's resources. The PD claims litigation in these cases is among the most mature and the most successful body of litigation that has been pursued by the Debtors in these cases.

29.     While the Order appointing the FCR contemplated the employment of professionals under sections 327 and 1103 of the Bankruptcy Code to assist the FCR, the FCR has had competent counsel since his appointment. That counsel has presumably followed all of the progress made with respect to PD claims and has reviewed the pleadings that have been filed. Further, these chapter 11 cases have been pending for over 6.5 years. The FCR and his counsel have been participating in these cases since May 2004, over 3.5 years. Appointing new counsel to get involved in these cases at this late stage would be a very costly venture. Indeed, the time to "get up to speed alone" would be weeks or months of work. And, this expenditure of time and costs is completely unnecessary given the current status of the PD claims.

30.     Further, the FCR argues that *nunc pro tunc* approval to January 4, 2008 is needed with respect to his Application. Specifically, he states: "In order to avoid delaying any

potential resolution of the Asbestos PD Claims, the FCR asked Hanly Conroy to begin work on January 4, 2008." Application at ¶ 26. Frankly, this is outrageous. *Nunc pro tunc* approval is extraordinary relief, granted only in circumstances where there is a need for immediate relief and the applicant would have been harmed if services were delayed pending court approval. The Third Circuit specifically permits the granting of *nunc pro tunc* approval only under extraordinary circumstances. *See In re Arkansas Co.*, 78 F.2d 645, 650 (3d Cir. 1986) (holding that bankruptcy court may grant retroactive approval only if it finds, after a hearing, that it would have granted prior approval after determining that the applicant was disinterested, did not have an adverse interest, and that the services performed were necessary under the circumstances); *see also F/S Airlease, Inc. v. Simon (In re F/S Airlease II, Inc.)*, 844 F.2d 99, 106 (3d Cir. 1988) (prior approval ensures that the appropriateness of the professional's retention is resolved prior to its performance of services).

31.      Although the Court has discretion to grant *nunc pro tunc* approval, in determining whether the particular circumstances presented are so extraordinary as to warrant retroactive approval, one of the factors the bankruptcy court must consider is whether the applicant was under time pressure to begin providing services without prior approval. *Id.* In this case, the FCR has not stated any time pressures justifying the initiation of Hanly Conroy's services before obtaining approval for that firm's retention.

32.      There is no appropriate justification for the FCR to have asked Hanly Conroy to perform serves prior to the Court permitting the firm's retention. On January 4, 2008, the FCR/ACC chapter 11 Plan was pending but neither a disclosure statement nor any of the other exhibits contemplated by the Plan had been filed, and no action had been taken to move forward with confirmation of that Plan. At the same time, all of the parties in the case were preparing for the PI Estimation hearing, which commenced on January 14, 2008.

33.     While certain constituencies may have been involved in informal settlement discussions, that is nothing new to this case and those discussions were not to the point of seriousness whereby new special counsel for already mature Asbestos PD claims litigation was needed to help move the ball to the finish line. Indeed, PD claims are not the reason these chapter 11 cases have not reached the confirmation stage. It is the pending PI claims and the need to estimate their liability for purposes of confirming a plan that has made confirmation, absent consensus with the PI constituency, impossible.

34.     Further, to the extent that the FCR believed it was appropriate to ask Hanly Conroy to begin performing services because it did not believe the Debtors would object, that is an inappropriate reason to now seek *nunc pro tunc* approval. The FCR indicates in its Application that "The FCR has previously advised both the Debtors and the Speights & Runyan firm of his intentions" to seek to employ special counsel and "[b]oth parties, while not committing themselves in any way and reserving all rights, expressed a willingness to cooperate with the FCR." Application ¶ 10.

35.     With all due respect, the FCR's statement is misleading. The FCR did indeed mention to Grace's Assistant General Counsel responsible for supervising PD Litigation that he may seek to employ special counsel. That was the extent of the "discussion." For the FCR to expect that the Debtors would not object to both his employment of special counsel and his request for employment *nunc pro tunc*, is a tremendous mistake on the FCR's part. The Debtors object to the appointment of special counsel in all respects, object to appointment *nunc pro tunc* and suggest that to the extent special counsel has already performed services for the FCR, the FCR did so without Court authority and must himself be responsible for the payment the fees of special counsel and may not charge the Debtors' estates for such unauthorized fees.

## Conclusion

WHEREFORE, the Debtors respectfully request that the Court deny the FCR's

Application for Authorization to Employ Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP

as Special Asbestos Property Damage Settlement Counsel and deny any *nunc pro tunc* relief

necessary to compensate such counsel or reimburse the FCR for any fees that the FCR may have

incurred from counsel.

Dated:  January 29, 2008

KIRKLAND & ELLIS LLP
David M. Bernick
Janet S. Baer
Lisa G. Esayian
200 East Randolph Drive
Chicago, Illinois 60601
Telephone:  (312) 861-2000
Facsimile:  (312) 861-2200

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and Debtors in
Possession