**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., <u>et al.</u>, | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

## DEBTORS' MEMORANDUM IN SUPPORT OF THE ADMISSIBILITY OF W.R. GRACE ASBESTOS PERSONAL INJURY QUESTIONNAIRES

This Court should admit into evidence all W.R. Grace Asbestos Personal Injury Questionnaires (the "PIQs") completed by pre-petition asbestos personal injury claimants as part of the estimation, including all attachments thereto. Contrary to the ACC's arguments (1/23/08 Trial Tr. at 18-19), the PIQs are not hearsay with respect to the estimation. Rather, three simple, irrefutable propositions establish that the PIQs and their attachments are plain-vanilla party admissions:

- the estimation proceeding is not separate from the underling bankruptcy case;

- the claimants are parties to the bankruptcy case; and

- the PIQs were discovery served on the claimants as parties to the bankruptcy case and in connection with the estimation.

As admissions of party-opponents, the PIQs and their attachments are, by definition, not hearsay.

## I.     The Estimation is Not Separate from the Bankruptcy Case.

Disputes litigated in a bankruptcy case are divided into "adversary proceedings" and "contested matters." *See In re Indian Palms Assoc., Ltd.*, 61 F.3d 197, 204 (3d Cir. 1995); *In re 995 Fifth Ave. Assoc.*, L.P., 157 B.R. 942, 949 (S.D.N.Y. 1993). An adversary proceeding requires the filing of a complaint commencing a new case separate from the underlying bankruptcy case. *See* Fed. R. Bank. P. 7003 (incorporating Fed. R. Civ. P., which provides that "[a] civil action is commenced by filing a complaint with the court").

In contrast to an adversary proceeding, contested matters are commenced by motions and are part of the underlying bankruptcy case. *See* Fed. R. Bankr. P. 9014. It is for this reason that courts consistently hold that the record in a contested matter can include the entire case file of the underlying bankruptcy case. *See, e.g., Indian Palms,* 61 F.3d at 204-05 (holding that, unlike adversary proceedings, the relevant record for a contested matter includes the underlying bankruptcy case file); *In re Federal-Mogul Global, Inc.,* 330 B.R. 133, 139 (D. Del. 2005) ("Furthermore, the estimation was a contested matter under Fed. R. Bankr. P. 9014. As such the Court takes judicial notice of the entire docket in the bankruptcy cases.") (citing *Indian Palms,* 61 F.3d 197).

Claims estimation is a contested matter under Bankruptcy Rule 9014; it is not included among the ten types of disputes designated as adversary proceedings in Bankruptcy Rule 7001. As a contested matter, the estimation is not a separate proceeding, ***but part of the underlying bankruptcy case.*** This is evident from the fact that there is no separate estimation case number. Every pleading, hearing, or order regarding the estimation has been -- and continues to be -- under the main bankruptcy case, Case No. 01-1139. Indeed, counsel to the ACC has admitted that the estimation "is a contested matter within the bankruptcy case." 1/23/08 Trial Tr. at 30.

## II.    The Claimants are Parties to the Bankruptcy Case.

Without question, every claimant who has filed a proof of claim is a party to Grace's bankruptcy. *See* 1/23/08 Trial Tr. at 31 ("[T]he claimants are clearly parties to the bankruptcy here, there's no doubt about that."). Also, as this Court recognized, numerous Rule 2019 statements have been filed by counsel for the purpose of representing multiple claimants in the bankruptcy case. *See* 1/21/05 Hr'g Tr. at 120 ("Not to mention, at this point, that I have a gazillion 2019 statements, so that the debtor ought to have access to information as to who the tort claims are that have been -- that are likely to file against it."). As explained above, the

2

bankruptcy and the estimation are not separate proceedings. Accordingly, the claimants are parties to the estimation because they are parties to the bankruptcy case.

Since this case first went down the estimation path, the claimants have been recognized as parties to the estimation. At the January 21, 2005 hearing, this Court ordered the parties to negotiate case management orders for the estimation of asbestos claims. At that hearing and various times thereafter, the Court went out of its way to invite and allow the participation of individual claimants and their counsel in matters regarding the estimation. *See* 1/21/05 Hr'g Tr. at 140 ("I do need to make sure . . . that counsel for all of the present claimants understands that this estimation process is going forward, so if they want to submit that kind of questionnaire and have their own client's medical information included in it, they have the opportunity to do that, because they will be bound by the outcome of the estimation hearing."). Many claimants' counsel have taken advantage of that opportunity.

The ACC now appears to argue that although the claimants are parties to the underlying bankruptcy case, they are not parties to the estimation ("apples") because this Court cannot try ("oranges") a personal injury case under 28 U.S.C. § 157(b)(2) (although it can adjudicate a personal injury claim). *See* 1/23/08 Trial Tr. at 30-31. There is no basis for this proposition in the Bankruptcy Code, the Bankruptcy Rules, or the Judicial Code. *First*, the ACC's argument relies upon the incorrect assumption that the bankruptcy case and the estimation are separate cases. As demonstrated above, they are not. If the Bankruptcy Rules intended the claims estimation process to be separate from the underlying bankruptcy case, then claims estimation would have been listed as an adversary proceeding under Rule 7001. That is not the case. *Second*, the portion of Section 157(b)(2)(B) upon which the ACC relies only states that the allowance or disallowance of personal injury claims is not a core proceeding. That section has

3

no bearing on whether personal injury claimants are parties to a particular contested matter or the bankruptcy case in general.

      ***Finally***, although the claimants certainly would be parties to a proceeding allowing or disallowing their claims, that does not mean that they are ***not*** parties to the estimation or other proceedings in the bankruptcy case. For instance, the claimants would undoubtedly be parties in the plan confirmation process establishing a Section 524(g) trust for their claims (whether the claimants are an impaired class entitled to vote on a plan is a different issue). The claimants are entitled to notice of the confirmation process, they have a right to object to the disclosure statement and plan confirmation, and have a right to be heard at the confirmation hearing. *See* Fed. R. Bankr. P. 2002. Yet, that process would not be a claim allowance/disallowance process.

## III.    The PIQs Were Party Discovery

      The estimation is a contested matter within the bankruptcy case, the purpose of which is to determine the value, in the aggregate, of pending and future asbestos personal injury claims. To accomplish this task, the Court permitted Grace to conduct discovery as to the basis for the current claims. *See* 6/27/05 Hr'g Tr. at 90 ("The debtor has the right to discovery to know what the current claims are, and that will be a much better basis for estimation of current claims and possibly future claims [than] anything else."). The PIQs were designed for that purpose -- they are a hybrid form of discovery, part fact interrogatory, part contention interrogatory, part document request, and part deposition by written question. *See id.* at 80 ("Rather than taking depositions of 400,000 personal injury claimants, we're going to do it through claim forms."); 7/19/05 Hr'g Tr. at 175 ("You could do it by interrogatories. You can do it by questionnaires. There is really not much difference."). The PIQs were party discovery because the claimants are parties to the bankruptcy and, accordingly, the estimation (regardless of whether they assert their right to actively participate in the process).

All involved, including the Court and the claimants themselves, have acted with the understanding that the PIQs are party discovery. For example, in approving the PIQ process, the Court did not require Grace to observe Rule 45 non-party subpoena process in serving the PIQs. *See* 8/29/05 Case Management Order for the Estimation of Asbestos Personal Injury Liabilities at 2-3 (requiring service of PIQs via "direct U.S. mail."). Nor did the ACC or FCR, both of which were actively involved in the PIQ approval process, ask the Court to require Rule 45 process to be observed. When the issue of the claimants' role in the estimation was questioned by the ACC, the Court expressly recognized that the claimants were not merely disinterested bystanders to the estimation, stating:

> With respect to the questionnaires, I think that's the problem. There is an allegation that [the Claimants] are, in quotes, "third-party witnesses." I don't see them as third-party witnesses.

6/19/06 Hr'g Tr. at 50. Tellingly, *no claimants* refused to respond to the PIQs on the grounds that service was defective for lack of Rule 45 process.

The Court was explicit about the importance of the claimants' active participation in the PIQ and estimation process, and that they would be bound by the resulting estimate:

> I do need to make sure...that counsel for all of the present claimants understands that this estimation is process going forward, so if they want to submit that kind of questionnaire and have their own client's medical information included in it, they will have the opportunity to do that, because *they will be bound by the outcome of the estimation hearing*.

1/21/05 Hr'g Tr. at 140 (emphasis added). The Court made equally clear that the PIQ must be completed by all who completed an asbestos personal injury proof of claim. *See* 8/24/06 Notice of Bar Dates at 3 ("All holders of Non-Settled Pre-Petition Asbestos PI Claims must file both the Asbestos PI Proof of Claim form and the Questionnaire."); *see also* 8/29/05 Hr'g Tr. at 136 ("[T]o the extent that the debtor doesn't get discovery and somebody wants to testify or do discovery, I may bar that claim from doing it for not participating in discovery. So there may be

5

prejudice. There may be consequences, and it is incorrect to say that there will be no consequences."); PIQ at i ("failure to timely return the Questionnaire as completely and accurately as possible may result in sanctions and/or other relief available under applicable federal rules.").

## IV.    The PIQ Responses Are Admissions of A Party Opponent.

The PIQs are party discovery issued in the estimation. *See* PIQ at i ("This Questionnaire is an official document approved by the Court in connection with estimating Grace's asbestos-related personal injury and wrongful death claims as a whole."). Because the claimants were parties for purposes of ordering the discovery in connection with the estimation, they must also be parties for purposes of using that discovery in the estimation. It is black letter law that admissions by party-opponents are not hearsay. *See* Fed. R. Evid. 801(d)(2) (an out-of-court statement by a party opponent offered for its truth is ***not hearsay*** if it is an admission "offered against a party and is (A) the party's own statement, in either an individual or representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth").[1]

Discovery responses, including answers to interrogatories, when offered against the responding party, constitute admissions by a party-opponent and are admissible as non-hearsay. *See, e.g., United States v. Bedford Assoc.*, 713 F.2d 895, 905 (2d Cir.1983) (statements in answers to interrogatories are admissions admissible against the party that made them under Fed. R. Evid. 801(d)(2)(A)); *Barnes v. Owens-Corning Fiberglass Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) (party's own statement offered against party is not hearsay). Here, the PIQs were formal

---

[1]    The Bankruptcy Rules make clear that the estimation process is governed by the Federal Rules of Evidence and the Federal Rules of Civil Procedure. *See* Fed. R. Bankr. P. 9017 ("The Federal Rules of Evidence . . . apply in cases under the Code."); Fed. R. Bankr. P. 9014 (providing that certain of the procedural rules applicable to adversary proceedings in Part VII of the Bankruptcy Rules, which largely incorporate the Federal Rules of Civil Procedure, are directly applicable in contested matters).

discovery ordered of the claimants in the estimation, and, thus, the claimants' responses are admissions within the meaning of Rule 801(d)(2). *See* 8/21/06 Hr'g Tr. at 162 ("So, folks get it filled out and get it returned.  It's now no longer just the debtor's mechanism for asking for something for estimation. ***It's now a formal discovery***.") (emphasis added).

Further, any attachments included by the claimants to their PIQs are also admissible as non-hearsay. *See In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 300-301 (3d Cir. 1983), *rev'd in part on other grounds, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (documents referenced in lieu of answering interrogatories were admissible as party admissions under Rule 801(d)(2)(B)); *Waring v. C.I.R.*, 412 F.2d 800 (3d Cir. 1969) (asset valuation attached to tax return was an admission that could be used by IRS as evidence in action against taxpayer); *In re Basin Res. Corp.*, 182 B.R. 489, 493 (Bank. N.D. Tex. 1995) (statements in district court complaint attached to proof of claim were admissions by claimant); *In re Shurley*, 163 B.R. 286 (Bank. W.D. Tex. 1993) (valuations assigned to items in insurance policy attachments constitute admissions of the debtors as to the value of the items and were admissible under Rule 801(d)(2)).

As outlined herein, the PIQs and the attachments are admissions of party-opponents and, thus, are not hearsay.  These admissions also posses a unique level of trustworthiness.  The information in the PIQ was provided by claimants and signed under penalty of perjury by the claimants.  *See* PIQ at 14 ("I swear, **under penalty of perjury**, that, to the best of my knowledge, all of the foregoing information contained in this Questionnaire is true, accurate, and complete.") (emphasis in original).  The claimants' attorneys had to sign a parallel affirmation. *See id.* ("I swear that, to the best of my knowledge, all of the information contained in this Questionnaire is true, accurate, and complete.").

7

## CONCLUSION

For the reasons set forth above, this Court should admit into evidence all PIQs and their attachments.

February 4, 2008

Respectfully submitted,

KIRKLAND & ELLIS LLP

/s/ David M. Bernick, P.C.
David M. Bernick, P.C.
Janet S. Baer
Salvatore F. Bianca
200 East Randolph Drive
Chicago, IL  60601
Telephone:  (312) 861-2000
Facsimile:  (312) 861-2200

-and-

PACHULSKI STANG ZIEHL & JONES LLP

/s/ James E. O'Neill
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, DE  19801
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

*Co-Counsel for the Debtors and Debtors in Possession*