# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                        .    Case No.  01-1139 (JKF)
                              .
W.R. GRACE & CO.,             .
et al.,                       .    USX Tower – 54th Floor
                              .    600 Grant Street
                              .    Pittsburgh, PA 15219
               Debtors.  .
                              .    January 23, 2008
. . . . . . . . . . . . ..    8:38 a.m.

TRANSCRIPT OF TRIAL
BEFORE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:          Kirkland & Ellis, LLP
                          By:  DAVID BERNICK, ESQ.
                               BARBARA HARDING, ESQ.
                               SALVATORE BIANCA, ESQ.
                               HENRY THOMPSON, ESQ.
                               SCOTT McMILLAN, ESQ.
                               ELLEN AHERN, ESQ.
                          200 East Randolph Drive
                          Chicago, IL  60601

For the Asbestos
Creditors Committee:      Caplin & Drysdale, Chartered
                          By:  NATHAN FINCH, ESQ.
                               ADAM VAN GRACK, ESQ.
                          One Thomas Circle, NW
                          Washington, D.C.  20005

Audio Operator:           Cathy Younker

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609)586-2311      Fax No. (609) 587-3599**

1  GX0172 which is Dr. Lucas' B-read of Mr. Gonzalin (phonetic).

2          MR. FINCH:  No objection to 172.

3          THE COURT:  One second.  It's admitted.

4          MS. HARDING:  The last exhibit, Your Honor, is

5  GX0007.000943-000 which is the complete PIQ associated with

6  Exhibit 16 discussed in the deposition of Dr. Lucas.

7          MR. FINCH:  We do object to that one.  May I approach

8  the podium, Your Honor?

9          THE COURT:  Yes.

10          MR. FINCH:  To state the basis.

11          THE COURT:  May I see where this is first?  This is

12  the last exhibit in the binder, the one that starts final cover

13  sheet?

14          MS. HARDING:  Yes, Your Honor.

15          THE COURT:  Okay, yes, Mr. Finch?

16          MR. FINCH:  It's 0009430.  There's a few other

17  documents in my binder, Ms. Harding, you're not intending to

18  offer those Exhibits 166 and 167?

19          MS. HARDING:  That's right.  We're just -- just the

20  ones I've listed.

21          MR. FINCH:  Okay.  As to Exhibit 7 a bunch of zeros,

22  9430, this is a personal injury questionnaire.  We have two

23  bases for this objection.  The first is a relevance objection,

24  the same objection that we made yesterday.  We think, under the

25  governing law, the questionnaires are irrelevant to the

1 question of what was Grace's liability for costs it would incur

2 to resolve claims in the tort system.

3          The second objection is based on the fact that other

4 than the piece of the exhibit, which is what Dr. Lucas did

5 which he described in his testimony, everything else in here is

6 hearsay.

7          THE COURT:  All right, one second.

8                         (Pause)

9          THE COURT:  All right, and why is this not hearsay?

10          MS. HARDING:  Your Honor, the first reason we're

11 seeking to admit them, they are admissions of claimants in this

12 case --

13          THE COURT:  Yes.

14          MS. HARDING:  -- their medical records, their

15 statements about their medical condition.  And they should be

16 admitted because they are their admissions.

17          THE COURT:  They aren't at issue in this case.  The

18 claimants are not defendants in this action.  This is an

19 estimation proceeding.

20          MS. HARDING:  But their medical conditions are at

21 issue in the estimation.  Additionally, they are -- the medical

22 information -- the medical documents attached to the

23 questionnaire are -- should be admissible under the business

24 records exception.

25          THE COURT:  These are not --

1          MS. HARDING:  And they're also --

2          THE COURT:  I understood it though, not Dr. Lucas'

3 medical records.

4          MS. HARDING:  No, the medical record that was

5 discussed in the deposition is indeed Dr. Lucas' B-read of the

6 patient.

7          THE COURT:  Yes, and that part I think is admissible.

8 He's testified --

9          MR. FINCH:  I didn't object to the one piece of paper

10 that was Dr. Lucas'.

11          THE COURT:  Correct.

12          MR. FINCH:  What I objected to, Your Honor, is the

13 rest of the questionnaire.  What I objected to, Your Honor, was

14 the rest of the questionnaire and the other documents attached

15 to it as to which -- the document's attached to it, there's no

16 foundation, business records of anybody.  And the questionnaire

17 is hearsay.

18          And may I respond to the --

19          THE COURT:  She's not finished yet.

20          MR. FINCH:  Sure.  Okay, fine.

21          MS. HARDING:  No, I mean, it's the -- the PIQ is a

22 discovery response, Your Honor.

23          THE COURT:  Yes, of a person who's not here.  I mean

24 it's a discovery response of a claimant, not of the ACC and not

25 of the FCR.

1          MS. HARDING:  Well --

2          UNIDENTIFIED ATTORNEY:  Barb?

3          MS. HARDING:  Hold on one second.

4          UNIDENTIFIED ATTORNEY:  Okay.

5          MS. HARDING:  Excuse me one second, I want to confer

6  with counsel.

7                    (Off the record discussion)

8          MS. HARDING:  Your Honor, I think as we've discussed

9  before with the Court, the claimants in this case are parties.

10  They have filed proof of claim forms.  And they are parties to

11  the case -- to the estimation.  We've -- they're under the

12  control of the ACC.  They represent them.  If we don't --

13          THE COURT:  They clearly don't represent the parties

14  here.

15          MS. HARDING:  Well --

16          THE COURT:  The parties -- the individual claimants

17  are not parties to the estimation.  Some of their information

18  is clearly relevant and it is the kind of information that

19  experts may use in the course of their work in terms of

20  estimating the liability.  But, that doesn't mean that the

21  substantive work itself is admissible as a document upon which

22  this Court has any basis to admit the substantive evidence.

23  Just because the expert relies on it, doesn't mean that the

24  document itself is admissible.  It's hearsay.  Those parties --

25  these claimants are not parties to the estimation.  Their

1  information is clearly relevant to what your experts wish to

2  do, but that doesn't mean that the information itself is not

3  hearsay.  It is.

4       The experts are entitled to rely upon hearsay.  The

5  rules clearly provide for that.  And your witnesses have been

6  quite clear about the fact that medical information is clearly

7  of the nature that they would consider in the course of their

8  duties.  But that doesn't mean that the information itself

9  isn't hearsay, it is, except for the findings that Dr. Lucas

10  himself has made.  That clearly is a business record of Dr.

11  Lucas', and it is admissible.

12       So, Dr. Lucas' -- that one page that he identified,

13  that document is admissible and will be admitted.  But I don't

14  see how the rest of the questionnaire itself is admissible.

15       MS. HARDING:  Your Honor -- well --

16       MR. FINCH:  Your Honor, what about the one counsel

17  per --

18       THE COURT:  I'm going to ignore it for now, Mr.

19  Finch.  Mr. Bernick, if you want to take a shot at this.

20       MR. BERNICK:  Yes, I understand.

21       THE COURT:  I'll give you a chance and I'll ignore

22  the one counsel rule for this purpose.

23       MR. BERNICK:  I understand where I think Your Honor

24  is going.  And obviously, the thrust of what I take Your Honor

25  to be saying is the PIQ information witness, what happened

1 yesterday and the like, is appropriate material for an expert

2 to rely on --

3          THE COURT:  Yes.

4          MR. BERNICK:  -- but doesn't have to come in

5 independently.  And I appreciate that and I appreciate the fact

6 that we will be able to have the expert testimony come in from

7 that point of view.

8          But there are many aspects of the case where I think

9 it's going to be important to have the underlying information

10 be a matter of record.  And I'm concerned that the -- if the

11 -- while it seems at this point that it may be that the

12 entirety of the case is expert opinion, I do believe that the

13 claimants -- the ACC itself will be proffering testimony indeed

14 through their own experts who they seek to make fact witnesses

15 regarding the underlying facts that pertain to these claims.

16          In this particular case, I don't --

17          THE COURT:  Why won't that be hearsay?

18          MR. BERNICK:  Yes, it may well be.

19          THE COURT:  What's sauce for the goose is sauce for

20 the gander.

21          MR. BERNICK:  I understand that.  And what I -- but

22 I'm loathe to follow the path of least resistance and embrace

23 the fact that it may be least resistance also for the other

24 side under a circumstance where I think it's relatively clear

25 that this is not hearsay.

1            And I say that for two reasons.  (1) I don't believe

2    that there is a separate case called the estimation case.

3    There is a proceeding in a trial called the estimation

4    proceeding and trial.  The case is the bankruptcy case.

5            THE COURT:  Well, sure.

6            MR. BERNICK:  And these individuals are parties to

7    the bankruptcy case.  They have made claims in the bankruptcy

8    case.  Their counsel have filed 29 team statements appearing on

9    their behalf in the bankruptcy case.  These are pleadings in

10   the bankruptcy case.  They are all of them signed by the

11   claimants.  I don't think it gets much better that they are

12   parties to the case.  They may not be parties to this

13   proceeding, but they are part --

14           THE COURT:  But you have to make them parties to the

15   proceeding, otherwise there's no due process right that

16   attaches.

17           MR. BERNICK:  I don't -- the rule --

18           THE COURT:  This is not an objection to claim

19   process.  If you want them to be a party to a proceeding,

20   you've got to join them in some fashion to a proceeding.

21           MR. BERNICK:  I don't believe that the rules have

22   anything to do with the distinction between different kinds of

23   proceedings within a case.  If you are a party to the

24   bankruptcy case, you are a party for purposes of the rule on

25   admissions.  These people are parties.  It may be that they're

1  represented by the ACC and the FCR, but we're dealing very,

2  very strictly with the rule of evidence.

3        And the rule of evidence says, it's hearsay unless

4  it's a statement by a party.  There's no distinction within

5  that exception -- actually, it's not even an exception to the

6  hearsay rule, it is non-hearsay under the Federal Rules of

7  Evidence if it's a statement made by a party.  There's not a

8  distinction made under the Federal Rules of Evidence between a

9  party who participates in one proceeding as part of a case and

10 a party who does not participate.

11       Indeed, I think it's even conceivable that if the

12 claimants had wanted to, they've made the election not to

13 participate in this process, and they're represent -- their

14 interests are represented by the ACC and FCR.  But I would

15 under -- I would imagine that if any claimant actually wanted

16 to participate in this case through counsel to express whatever

17 view they wanted as they have throughout the process, think of

18 all of the times the claimants' counsel have come before this

19 Court in connection with a discovery that was directly relevant

20 to and part of this estimation proceeding.

21       THE COURT:  Sure.  There is no doubt that if they

22 chose to be here, the Court would permit them to be here.  I'll

23 take a brief from all parties on this issue.  I'll reserve

24 ruling.

25       MR. BERNICK:  Okay.

1           THE COURT:  And this is what I'll do.  To the extent

2   that it is somehow necessary until I get these briefs for

3   somebody to make reference to these documents, I'll permit it

4   subject to a motion to strike.  This isn't a jury trial.  I can

5   certainly discount this evidence later.  It's not the first

6   time I will have seen these PIQs in the case anyway.  So, I'm

7   certain that I can put it aside if I need to.  So, I'll let you

8   make use of it.  But I want briefs on this issue --

9           MR. BERNICK:  That's fine.

10          THE COURT:  -- because the Federal Rule of Evidence

11  in this instance does not really fit exactly with the type of

12  proceeding that we've got going.

13          MR. BERNICK:  And I appreciate that.  And that's

14  fine.  And I think that that's fine.  The only other two things

15  I'll just say and I'll sit down, so we can get on with things,

16  is that there was no objection made to this PIQ until like last

17  night.  And I do remember very vividly and this is one of the

18  reasons that I wanted to stand up -- before we actually

19  embarked upon this trial, there was a lot of discussion about

20  how -- what would be involved in getting documents into

21  evidence.  And it was very, very clear that we were not going

22  to have a situation where at the last minute objections would

23  be made, would then require that we go out and take somebody's

24  deposition or take evidence.

25          THE COURT:  That's true.

1           MR. BERNICK:  So, we have gone through this entire

2  process.  And now we face a technical object that could be

3  resolved if we actually had to by going out and taking the

4  depositions of these doctors and actually going through the

5  business records exception, et cetera, et cetera.  Or for that

6  matter, taking the depositions of the claimants because the

7  claimants could be deposed and they could be then asked to

8  verify what they submitted discovery on.

9           Instead, we get an objection that's made less than 12

10 hours before the appearance of this information.  And it's an

11 objection that is a technical objection that could easily be

12 cured, and we can't cure it.  And the last point is

13          THE COURT:  I'll give you time to cure it if that's

14 the necessary issue.

15          MR. BERNICK:  I hope it's not.  Now, then the last

16 thing --

17          THE COURT:  If it's a last minute objection --

18          MR. BERNICK:  Because the other people that would be

19 able to do it are the law firms.  And of course we went down

20 that road.

21          The last point is that -- as Ms. Harding indicated

22 -- that in the case of this last witness, there are literally

23 hundreds and indeed thousands of PIQs that identify these

24 people.  In the case of Mr. Lucas, it's probably over 400

25 times.  He was listed as the diagnosing, not presumptive or not

1  -- the diagnosing doctor.  We want to be able to offer in a

2  very simple summary.  Under 1006 that says, here's all the

3  times the PIQ said that.

4          I don't want to have to deal with, well, can a

5  summary be -- come in if it's a summary of information that's

6  not independently admissible but is information that would be

7  usable by an expert under 702, 703.  Can you have a 1006

8  summary of evidence that's usable by an expert?

9          THE COURT:  Yes.

10          MR. BERNICK:  I hope so, but that's part of -- it's

11  kind of what I'm thinking about is that I'm very reluctant to

12  say we're it's so clear, it shouldn't be independently

13  admissible because it will come in through an expert.  If we

14  can work that out, maybe that would also help this out.  I

15  don't want to --

16          THE COURT:  That one, I don't have any issue about

17  because I've had to rule on that issue before many years ago.

18  And I'm relatively sure that the case law will support the fact

19  that if the expert can use it, you can use the summary.  This

20  witness was very clear that he himself is not a diagnosing

21  physician.  And if somebody is treating him that way, it seems

22  to me that the PIQs or other information that list him as

23  diagnosing physician can be summarized to show that somebody

24  thinks he's a diagnosing physician when he himself is (a) not

25  forming a patient relationship from his point of view, and (b)

1  is not using himself as a diagnosing physician.  And it doesn't

2  seem to me that it's inappropriate to use a summary for that

3  purpose.

4              MR. BERNICK:  Okay.  I appreciate that.  And we will

5  be happy to submit a brief.  I don't know, would Your Honor

6  like to have simultaneous briefs on the issue?

7              THE COURT:  Yes, I think simultaneous briefs are

8  fine.

9              MR. BERNICK:  Ten days or --

10             THE COURT:  Or Mr. Finch -- it's Mr. Finch's

11 objection.

12             MR. FINCH:  Sure.

13             THE COURT:  If you want him to go first, he has to go

14 first.

15             MR. FINCH:  Ten days from -- ten days from today.

16             MR. BERNICK:  Ten days from today.

17             THE COURT:  That's fine.

18             MR. FINCH:  Simultaneous briefs of ten pages.

19             MR. BERNICK:  Well, I hope it's not 10 or 15 pages.

20             THE COURT:  I doubt they're going to find that many

21 cases.  Ten pages ought to be fine.

22             MR. BERNICK:  That's right.

23             MR. FINCH:  I understand that.  But can I respond

24 briefly about something Mr. Bernick said?

25             THE COURT:  Yes.

1          MR. FINCH:  Under the case management order that is

2    in place, January 4th, 2007 was the deadline for all parties

3    filing authenticity objections to exhibits and stipulations

4    regarding the admissibility of exhibits.  This wasn't an

5    authenticity objection.  This was a hearsay objection.  There

6    is no deadline in the CMO to identify hearsay objections.

7    And --

8          THE COURT:  Well, you've got one now.

9          MR. FINCH:  Absolutely.

10          THE COURT:  And it's ten days from now.

11          MR. FINCH:  I understand that.  But the second point

12    relating to the parties' issue.  This is a contested matter

13    within the bankruptcy case.  When your Court entered the order

14    scheduling the hearing, you said this was core proceeding

15    pursuant to 28 U.S.C 157(b)(2).

16          28 U.S.C 157(b)(2) makes clear that a core proceeding

17    includes but is not limited to the allowance or disallowance of

18    claims against the estate or exemptions of property of the

19    estate and estimation of claims or interest for the purposes of

20    confirming a plan under Chapter 11, 12, or 13 of Title 11, but

21    not the liquidation or estimation of contingent or unliquidated

22    personal injury tort or wrongful death claims against the

23    estate for purposes of distribution in a case under Title 11.

24          The individual circumstance -- the individual

25    claimants are not parties to a proceeding that would allow or

1    disallow their individual claims.

2             THE COURT:  Right.

3             MR. FINCH:  Therefore, I don't they're parties within

4    this contested proceeding in this bankruptcy within the meaning

5    of the Federal Rules of Evidence.  If there was a contested

6    proceeding involving John Smith -- claimant Smith, Mr. Bernick

7    would have to file an objection to claimant Smith's claims.

8    And that would tee off a whole level of procedural rights that

9    that claim won't have the right to do, including discovery from

10   Grace.  They would set a schedule in the district court to

11   identify experts for trial.  And you would get a trial in front

12   of a jury.  That's our basic position, Your Honor.

13            THE COURT:  Well, I think I agree with that basic

14   position.  That's why I'm going to have you give me briefs on

15   that issue and on whether or not these PIQs are hearsay within

16   the meaning of the Federal Rules of Evidence or whether or not

17   because the claimants are clearly parties to the bankruptcy

18   here, there's no doubt about that, that automatically makes

19   them parties to every proceeding regarding a plan confirmation

20   that they somehow or other deal with a claim that they may hold

21   in that bankruptcy.  I don't think that's the way it's going to

22   come out, but it may.

23            MR. FINCH:  Or for purposes solely of the question of

24   the usability of their statements as evidence.

25            THE COURT:  Exactly.  Yes.  Just for purposes of

1 whether or not these statements are admissions against their

2 interest as the debtor is classifying this statement at the

3 moment.  That's the purpose, yes.

4      MR. FINCH:  Okay.  We will file a brief.  I'm not

5 sure whether ten days from today on a weekend.

6      UNIDENTIFIED ATTORNEY:  It's a Saturday.

7      MR. FINCH:  It does.  So, what's the next day?

8      UNIDENTIFIED ATTORNEY:  Friday, February 1.

9      THE COURT:  Today is the 23rd, so --

10      MR. FINCH:  Monday the 4th, would that be acceptable,

11 Your Honor?

12      THE COURT:  Yes, that's fine because --

13      MS. HARDING:  It's fine.

14      THE COURT:  -- I mean, this issue is probably not

15 going to -- I think it -- we have until the end of this trial

16 until we need to know the result of this, although it would

17 probably be better to get it resolved before then if possible.

18 So, if --

19      MR. FINCH:  Thank you, Your Honor.  May we take a

20 short recess now for --

21      THE COURT:  Yes, but I would like one -- to make one

22 statement before we start this.  I think this process is going

23 to be helpful, but frankly, folks, that was an hour and a half

24 of testimony that could have been 45 minutes.  There was an

25 awful lot of duplication.  I know you probably think that I'm

1      MS. HARDING:  The first one is GX-0413, the contract

2  referred to by Dr. Levine.

3      MR. FINCH:  No objection, Your Honor.

4      THE COURT:  It's admitted.

5      MS. HARDING:  GX-0007.3048870, which is the composite

6  of the sample of PIQ's where claimants have indicated on the

7  questionnaire itself that Dr. Levine is the diagnosing doctor.

8      MR. FINCH:  We objection on relevance ground as to

9  questionnaire evidence and on hearsay grounds to the extent

10  that the questionnaires have materials that are not business

11  records of Dr. Levine.  The same objection we basically raised

12  to the questionnaire this morning, that we're going to brief,

13  Your Honor.

14      MS. HARDING:  And just one response, Your Honor.

15  With respect to, obviously, the first two questions of

16  relevance which is the one that we discussed yesterday, which I

17  think we've got kind of a standing ruling on that, but you may

18  revisit it later.  With respect to the question with respect to

19  the admissibility of the PIQ's themselves we're going to brief,

20  I won't respond to that now.

21      But I do think as a separate grounds for introduction

22  of this composite sample of questionnaires where claimants in

23  this matter have indicated that Dr. Levine is their diagnosing

24  doctor, it's not being offered, obviously, for the truth of the

25  matter that Dr. Levine actually diagnosed them with asbestosis,

1  it's being offered for the purpose of demonstrating quite the

2  opposite.

3         THE COURT:  Okay.  So, the limitation on this offer

4  is simply to show that there is a composite exhibit in which

5  claimants have identified Dr. Levine as a diagnosing doctor,

6  although his testimony is that he is not and has never been a

7  diagnosing doctor for purposes of the W.R. Grace case.

8         MS. HARDING:  What I would say, Your Honor, is that

9  that's one -- that's one of the reasons we're seeking it, and

10 for that purpose I think it's admissible.  I'm not abandoning

11 the other reasons why we think the questionnaires are

12 admissible.

13        MR. FINCH:  Your Honor, I think they're still

14 offering it for the truth.  If a questionnaire written by John

15 Smith asks a question, who is your diagnosing doctor and John

16 Smith writes Dr. Levine, they're offering it to prove the truth

17 that claimant John Smith said Dr. Levine was his diagnosing

18 doctor.  That's offered for the truth, that's hearsay.

19        THE COURT:  Right.

20        MS. HARDING:  Well --

21        THE COURT:  Well, I think that's offered at this

22 point to show that Dr. Levine's testimony is that he isn't a

23 diagnosing doctor, but the evidence in the case that's being

24 submitted in support of the claims, that Grace is contending

25 are not claims that it should have to reconcile in or outside

1  the tort system because the diagnosing doctors listed by the

2  claimants are, in fact, not the diagnosing doctors because the

3  claimants say they're Dr. Levine.  And in fact, Dr. Levine is

4  saying he's not their diagnosing doctor.  So, the issue is

5  whether or not for purposes of counting claims, these claims

6  can be counted and it's highly relevant to that purpose, but

7  it's not relevant, that I can see at the moment, for any

8  purpose other than that, but it is relevant for that purpose

9  and it's also not hearsay for that purpose because in that

10 sense it is an admission against interest because this is, in

11 this instance, a claim that the Debtor has to reconcile to

12 determine whether or not it is a claim that the Debtor has to

13 pay for estimation purposes.

14        So, at this point in time, in the Debtor's theory of

15 the case, it seems to me that that piece of information is

16 relevant and this is the means by which the Debtor can go about

17 proving that piece of evidence on the Debtor's theory of the

18 case.  So, I think it's relevant and it's admissible and I

19 believe it's in a statement against the claimant who assets

20 that the claimant has a claim to be counted as a valid claim

21 that the Debtor would have to pay in a tort system, which is

22 the ACC's theory of the case at this point in time and it's the

23 ACC that's the party.  So, I think in this instance that

24 information is all relevant.

25        MR. FINCH:  Your Honor, it still doesn't cure the

1 hearsay objection.  I don't think that the claimants are

2 parties, I think this is part of what we should be briefing to

3 Your Honor.

4           THE COURT:  Okay.  You can add that to the brief

5 issue, but I think in this instance this one probably survives,

6 it's for a different purpose.  But in any event, I'll take this

7 one also advisement.  I don't see any other purpose for the

8 proffer right now, but this, so Ms. Harding what other purposes

9 to this proffer are there?

10           MS. HARDING:  Your Honor, the purpose for which -- I

11 mean the purpose you identified is obviously one of the

12 purposes, but the other purpose is actually, this is an

13 estimation proceeding and we are having to estimate the

14 liability for claims.  And we think that the submission of

15 information to this Court by claimants that has been

16 demonstrated to not be -- to be false, or at least there's an

17 indicia of inaccuracy with respect at least to the information

18 provided to the Court in the questionnaires is information that

19 should be taken into consideration, in the Court's estimation

20 of Grace's liability in this case.

21           THE COURT:  Because somebody lists a doctor who gave

22 them a B-read as a treating physician, I'm supposed to

23 determine that the rest of the information is false?

24           MS. HARDING:  Well, Your Honor, it's just one piece

25 of evidence in a large, broader case that's going to be built

1 over time with pieces of evidence over time and I think it's a

2 relevant fact for the Court to consider in that process.

3          THE COURT:  I agree.  It would go to the weight, but

4 in this instance, these are not the lawyers filling out these

5 claim forms, at least the one I just happened to open to, as

6 part of this exhibit to see what the exhibit was.  This is a

7 person, who is filling out this form, and although the doctor

8 can undoubtedly not be a treating physician and understand what

9 that is, this is a claimant filling out this particular form.

10 So, yes, it may go to the weight, but just because somebody

11 puts down somebody's name as a treating physician and gets a

12 B-read and it's not a treating, I don't know that you're going

13 to get an inference from me that says that everything is false

14 because they list a doctor as a treating physician and he's

15 not.  That's going kind of far, Ms. Harding.

16          MS. HARDING:  I'm not asking for that at this time,

17 Your Honor.

18          THE COURT:  Okay.

19          MS. HARDING:  It's just one piece of evidence.

20          THE COURT:  Just so you know.  That's going a little

21 far.

22          MS. HARDING:  I understand.

23          THE COURT:  Okay.  And let me make a note, please, so

24 I know that I have to look at this one in conjunction with the

25 brief, so give me one second, please.

1        Okay.  As I said, I will take this one, this

2  submission under advisement and see what happens when I get the

3  briefs.  Okay, next?

4        MS. HARDING:  Okay.  Thank you, Your Honor. I only

5  thing I did want to note is that if you look through the rest

6  of the composite exhibit you will see that they aren't all --

7  that there are law firms that were involved in the process of

8  submitting the claims.

9        THE COURT:  Yes, I understand that that's the case,

10  from having looked at some other of the PIQ's in other

11  instances, but the particular one that I happened to turn to

12  happened to be from a claimant.

13        MS. HARDING:  I understand, Your Honor.  The Debtors

14  move to submit GX-0408.

15        THE COURT:  And it is what?

16        MR. FINCH:  This is -- we have an objection on

17  relevant grounds.  It's a piece of a questionnaire, there's no

18  hearsay objection to this, however, because it's a medical

19  treatment record from Dr. Levine.

20        MS. HARDING:  I think it's the general relevance

21  objection discussed yesterday.

22        THE COURT:  Excuse me one second here.  0408, it's

23  marked as no objection.

24        MR. FINCH:  That was no authenticity objection, Your

25  Honor.  The --