# EXHIBIT 3

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Objection Deadline: December 3, 2004
Hearing Date: December 20, 2004 at Noon (Pittsburgh, PA)

## DEBTORS' MOTION FOR ENTRY OF AN ORDER SEEKING THE ESTIMATION OF ASBESTOS CLAIMS AND CERTAIN RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors" or "Grace") file this motion (the "Estimation Motion") seeking (a) entry of an order determining estimates of the aggregate amounts needed to fund[2] the Asbestos Trust to enable the Asbestos Trust to pay in full all Allowed Asbestos Claims and Asbestos Trust Expenses, as and when they

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

[2] It is contemplated that the Asbestos Trust will be funded 31 days following the Effective Date.

become due (the "Estimation Order"), and (b) entry of an order establishing a schedule and procedures for carrying out the requested estimations (the "Estimation Procedures Order").[3]

### Introduction

1. Since the first day these Chapter 11 Cases were filed in April 2001, and as reflected in our June 21, 2004 Status Report to the District Court, the central task in these Chapter 11 Cases has always been to define the Debtors' true liability to Asbestos Claimants. A scientifically unexplainable and unexpected surge in claims in 2000 made it impossible for the Debtors to continue to manage their asbestos caseload without bankruptcy protection. For years before then, however, an impossibly high volume of claims filings forced Grace, like many other asbestos defendants, to settle tens of thousands of claims with no ability to weed out non-meritorious claims or cases for which no liability could ever be established.

2. Promptly after the filing of these Chapter 11 Cases, we proposed in June 2001 to determine Grace's asbestos liability early, using traditional FRCP 42 common issue litigation before plan confirmation.[4] The District Court never considered the matter.

3. As promised in our June 21, 2004 Status Report, and recognizing this Court's desire to proceed quickly to plan confirmation, today the Debtors propose an alternative protocol which calls for an estimation of the Debtors' liability *pre-confirmation*, with common issues litigation to follow *post-confirmation*. We are prepared to pursue either approach.

4. Implementation of the estimation procedures detailed in this Estimation Motion would in fact facilitate either approach. As detailed herein, these estimation procedures can be used to determine the feasibility of the Plan and to cap Grace's liability for all classes of Asbestos Claims other than the Asbestos PI-AO Claims detailed in the Plan. Alternatively, the

---

[3] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the "Glossary of Terms Used in Plan Documents" (the "Glossary") filed simultaneously herewith.

[4] On June 27, 2001, the Debtors filed their "Motion for Entry of Case Management Order, Establishment of Bar Date, Approval of Proof of Claim Forms & Approval of Notice Program" (Docket # 536), referred to herein as the "Original CMO Motion."

2

form and will detail their proposed ZAI Notice Program promptly after the ZAI Science Trial phase is concluded.

93.     Following the ZAI Claim bar date, the Debtors will submit within two months an expert report estimating their liability, if any, to the present and future ZAI Claimants. The Debtors will be prepared to try this estimation issue promptly after the completion of the depositions of the estimation experts. Depending on the timing of this Court's summary judgment decision and the scheduling of any ZAI Science Trial, the Debtors expect that the ZAI estimation can be completed within approximately eight months to one year.

(iv)    **Determination of the Asbestos Trust Expenses Fund.**

94.     In order to assure that expenses of the Asbestos Trust shall be paid in full as, or as soon as practicable after, they become due, the Debtors ask the Court to establish the amount of the Asbestos Trust Expenses Fund. This Asbestos Trust Expenses Fund is the estimated aggregate dollar value amount by which the Asbestos Trust must be funded in order to assure that the Asbestos Trust shall be able to pay all Asbestos Trust Expenses in full as, or as soon as practicable after, they become due. This estimate will be addressed in the experts' reports and will be based on, among other things, the information gathered from the Asbestos PI Claim Materials, the number of Asbestos Claims, and estimates of certain fixed costs of the Asbestos Trust, such as insurance, and administration of the Asbestos Trust. Again, one of the conditions precedent to confirmation of the Debtors' Plan is that the Asbestos Trust Expenses Fund shall constitute the maximum amount that the Reorganized Debtors shall have to pay on account of all expenses of the Asbestos Trust.

### Notice

95.     Notice of this Estimation Motion and the accompanying Memorandum has been given to: (i) the Office of the United States Trustee, (ii) counsel to the debtor-in-possession lenders, (iii) counsel to the agent for the Debtors' pre-petition lenders, (iv) counsel to all official committees appointed by the United States Trustee, and (v) all those parties that requested

service and notice of papers in accordance with Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

### No Prior Request

96. No prior motion for the relief requested herein has been made to this or any other Court.

### Conclusion

97. The Debtors request that this Court establish procedures for the identification and estimation of certain pre-petition Asbestos Claims against the Debtors' estates, and for the determination of the aggregate amount needed to fund the Asbestos Trust such that all Allowed Asbestos Claims and Asbestos Trust Expenses may be paid in full by the Asbestos Trust as and when they come due. By establishing such an estimation process, the Debtors will finally be able to advance toward a resolution of their asbestos-related Claims and an effective confirmation of a chapter 11 plan.

WHEREFORE, the Debtors respectfully request that the Court establish a schedule and procedures for carrying out the requested estimations to determine the aggregate amounts needed to fund the Asbestos Trust to enable the Asbestos Trust to pay in full all Allowed Asbestos Claims and Asbestos Trust Expenses, as and when they become due. Specifically, the Debtors request that this Court enter the Estimation Order, substantially in the form of that which is annexed to the Estimation Motion as <u>Exhibit A</u>, that (i) sets the Asbestos PI Pre-petition Litigation Bar Date and Questionnaire Return Date; (ii) approves the proposed form and manner of notice of the Asbestos PI Pre-petition Litigation Bar Date and Questionnaire Return Date; (iii) approves the form, distribution and use of the Asbestos PI Claim Materials; (iv) establishes an estimation expert discovery schedule that provides for a reasonable time for the Debtors' and other interested parties' experts to conduct discovery and prepare Rule 26 expert reports; and (v) schedules an evidentiary hearing at the conclusion of which this Court will determine estimates of the aggregate amounts needed to fund the Asbestos Trust to enable the Asbestos Trust to pay