IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 01-01139 (JKF) |
| W.R. GRACE & CO., *et. al.*, | ) | Jointly Administered |
| | ) | **Related Dkt. Nos.  17824, 17825, 17836,** |
| Debtors. | ) | **17838, 17846** |
| | ) | **Hearing Date:  February 25, 2008 at 1 pm** |

FUTURE CLAIMANTS' REPRESENTATIVE'S SUPPLEMENTAL
OPPOSITION TO GRACE'S MOTION TO STRIKE AS "UNTIMELY"
PROFESSOR ERIC STALLARD'S REPLY DECLARATION,
<u>AND FOR SANCTIONS</u>

**I.     <u>INTRODUCTION</u>**

The FCR's Opposition, filed on January 14, 2008, demonstrated that Grace's

motion seeking to strike the reply declaration of the FCR's expert, Professor Eric

Stallard, is a tempest in a teapot that is completely devoid of merit. (Dkt. No. 17824.)

The FCR explained that Grace's motion seeks to deprive the Court of the benefit of

expert analysis concerning one of the most important issues in this case—whether there is

any scientific basis for Grace's exclusion of thousands of future claims simply because

the average worker in one of Grace's very broad job categories has an asbestos exposure

less than certain exposure "benchmarks" devised by Grace's experts.

The issues raised in both of Professor Stallard's declarations in support of the

FCR's *Daubert* motion have now been presented in open court.  Professor Stallard's

declarations establish that as a matter of science, it is not appropriate to assign to

*individual* workers a cumulative lifetime asbestos exposure that is equal to the average

lifetime asbestos exposure for all workers within Grace's defined occupational

categories. The reason is straightforward—not all jobs in Grace's broad job categories are the same, and every worker in one of the broad categories does not have an independently random chance of doing every job in the job category. As Professor Stallard explains, this invalid assumption underlies Grace's exclusion of large numbers of current claims, and by extrapolation, thousands of future claims. Grace, through its expert Dr. Elizabeth Anderson, attempts to defend the assumption as consistent with accepted occupational and environmental "risk assessment" methodology.

Grace's motion offers no credible reason why this important debate should be foreclosed from consideration in connection with the FCR's *Daubert* motion. The Stallard declaration at issue comports fully with the letter and spirit of the parties' December 19, 2007 Stipulation, and with this Court's *Daubert* motion practice under the CMO. Nothing in the stipulation prohibits the FCR from submitting a declaration from Professor Stallard that replies to the points raised in Dr. Anderson's declaration in opposition to the FCR's *Daubert* motion. On the contrary, the FCR's right to do so is set forth in the CMO and controlling law. It would be error for the Court to disallow the FCR from submitting the type of expert reply affidavit that is not barred by the Stipulation and is routinely received by courts in *Daubert* proceedings.

We reiterate that Grace's real purpose here is to prevent this Court from reading Professor Stallard's cogent, line-by-line expert explication of: (i) why Dr. Anderson's declaration strays beyond her expertise and into his, and (ii) why the theories and opinions in the Anderson declaration are fundamentally flawed and unreliable. In light of Professor Stallard's Reply (and the FCR's and ACC's opening *Daubert* papers) there can be no real dispute that Dr. Anderson's overall opinions are unscientific and unreliable.

***That*** is Grace's real problem, and it explains why Grace is so desperate to keep Professor

Stallard's Reply to Dr. Anderson away from this Court and out of the record in this case.

## II.    **PERTINENT BACKGROUND**

### A.    **Dr. Anderson's Post-Report Disclosures About Her Analysis**

At her November 2, 2007 deposition, Grace's risk assessment expert, Dr.

Elizabeth Anderson, articulated for the first time in this case certain details about the

assumptions and theories that underlie the analysis in her expert report.  This included her

theory that each individual worker's cumulative lifetime exposure to asbestos is equal to

or less than the average of the daily exposures of all workers multiplied over a number of

years. *See e.g.* Transcript of November 2, 2007 deposition of Dr. Elizabeth Anderson,

excerpts attached hereto as Exhibit 1 at 249:15-22 ("I think these eight-hour averages are

very representative of exposure across the universe of these individuals.").  In essence,

Dr. Anderson is asserting that one can make a valid projection about *each* individual in a

broad job category based on an average of all workers in that category.

### B.    **The FCR's *Daubert* Motion and the Parties' Stipulation**

In support of his *Daubert* motion the FCR submitted the Declaration of Professor

P.J. Eric Stallard, dated December 7, 2007 ("Stallard Declaration," annexed hereto as

Exhibit 2).  In this declaration, Professor Stallard opined that Dr. Anderson's assumptions

and conclusions relating to individual workers' average exposures are "unscientific,

unreliable, erroneous and highly misleading."  (Stallard Decl., Ex. 2, at ¶ 8.)  Moreover,

Professor Stallard illustrated the impact of Dr. Anderson's faulty assumptions with a

projection based on the data collected by another Grace expert, Dr. Peter Lees.  (Stallard

Decl., Ex. 2, at ¶¶ 12-18.)

Grace objected on the grounds that the Stallard Declaration was a new, untimely

expert report and moved to strike. (Dkt. No. 17815.) On December 19, 2007 the parties

agreed to the Stipulation whereby Grace withdrew its motion, and the parties agreed in

pertinent part that (i) the Stallard Declaration "can be used by the FCR and ACC for

Daubert purposes only" and (ii) Grace "may file a responsive declaration to the Stallard

Declaration from Dr. Anderson for *Daubert* purposes only." ("Stipulation," annexed

hereto as Exhibit 3, at ¶¶ 4, 5, 7)

### C.    Dr. Anderson's Declaration in Opposition to *Daubert* Motion

Dr. Anderson's Declaration in Opposition ("Anderson Opposition" annexed

hereto as Exhibit 4) takes issue with Professor Stallard's qualifications and responds to

points he raised in support of the FCR's *Daubert* motion.  In doing so, Dr. Anderson's

Opposition discloses for the first time still more details about her assumptions and

theories that underlie the analysis in her original reports.  The main thrust of Dr.

Anderson's declaration is that she believes it is appropriate to assign to individual

workers a cumulative lifetime asbestos exposure that is equal to the average daily

asbestos exposure for all workers within the same occupational category multiplied out

over a number of years.  She bases that belief on the assumption that each day a worker's

asbestos exposure is a perfectly random selection of the full range of observed asbestos

exposures that could occur across the broad range of jobs within that worker's

occupational category. (Anderson Opp., Ex. 4, at ¶ 7).  Relying on this "independence

assumption," Dr. Anderson completes a hypothetical computation  showing that a

random draw of potential daily exposures over 45 years will always converge towards the

mean—which she claims justifies her use of her calculated average exposures.

(Anderson Opp., Ex. 4, at ¶ 9.)

**D.**    **Professor Stallard's Reply Declaration Specifically Addresses the Anderson's Opposition**

Pursuant to the responsive pleading procedures under the CMO, and in keeping with Rule 104 and applicable precedent, the FCR submitted the Stallard Reply declaration on January 7, 2008 ("Stallard Reply," annexed hereto as Exhibit 5). The Stallard Reply consists of a specific, paragraph-by-paragraph response to the Anderson Opposition. (*See e.g.* Stallard Reply, Ex. 5, at ¶ 12 ("I will respond on a point-by-point basis to Dr. Anderson's *Declaration* dated January 3, 2007.")). Specifically, Professor Stallard criticizes Dr. Anderson's independence assumption and demonstrates why it is neither scientifically valid or consistent with accepted scientific practice. *(See id.,* Ex. 5, at ¶¶ 28-38).

Professor Stallard's Reply introduces no new analysis, but simply addresses the fundamental flaw in the Anderson Opposition: nothing suggests that the daily asbestos exposures to an individual worker is a random function of the whole range of observed exposures among all workers in the same broad job category. (*See id.*) Professor Stallard explains that individual work habits, typical job environment, and specific job types within an occupational category factor into an individual's daily exposure, making it more likely that given individuals may consistently trend towards one side or the other of the distribution of daily exposures. (*Id.*, Ex. 5, ¶ 37.) Professor Stallard explains that this invalidates Dr. Anderson's assumption that the mean exposure is always achieved after repeated exposures. *(See id.,* Ex. 5, at ¶¶ 28-38).

**E.**    **Grace Expert Joseph Rodrick's Trial Testimony**

The foundation of Professor Stallard's Reply critique to Dr. Anderson's Opposition is already in the trial record. Grace's risk assessment expert, Dr. Joseph

Rodricks, testified on January 16, 2008, that in order to assess disease causation in an individual, it is necessary to look at that specific individual's exposure. (Transcript of Estimation Hearing, dated January 16, 2008, Dkt. No. 17862, excerpts annexed hereto as Exhibit 6, at 237:15-18.) Further, Dr. Rodricks agreed that (i) workers performing the same job may have varying exposures to a toxin, which may result in variability in cumulative exposure among individuals and (ii) workers performing different jobs should be assessed separately. He testified as follows:

> Q: Each individual, individuals in a group can have different exposures to a tox[in]. Correct?
>
> A: There will be variability. Yes. Well, a group, when you say a group, let's say who are all doing one kind of job exposed to a chemical, there will be some variability on any given day, right.
>
> Q: Right. And also there could be some variability cumulatively over the course of a year if they were doing different jobs, isn't that right?
>
> A: If their jobs were – quite different jobs with the same chemical, let's say?
>
> Q: Yes.
>
> A: Sure. Yes. *So, we'd want to classify, if there were different jobs, you'd probably want to look at them separately.*
>
> *        *        *
>
> Q: . . . But the individuals in that group, an individual in that group could have a cumulative exposure, in other words a long term exposure over the course of a year that differed from the average exposure of that group, over the course of a year.
>
> A: *You can't deny that, sure.*

(Transcript of Estimation Hearing, dated January 16, 2008, Ex. 6, at 241:6-244:2

(colloquy omitted, emphasis added).)  Finally, Dr. Rodricks agreed that this exposure

variability would have an effect on the long-term average exposure:

> Q:  But, it wouldn't balance out to the average over the
> long term if the individual[s] in the group were doing
> different jobs within that job category, would they?
>
> A:  Well, that's a different matter, *yes*.

(*Id*, Ex. 6,. at 250:10-13 (emphasis added).)  This testimony is consistent with Professor

Stallard's analysis and conclusions in his Reply declaration that Dr. Anderson's contrary

assumptions are unscientific and unreliable.[1]  (Stallard Reply, Ex. 5, at ¶ 28-38.)

## III.    ARGUMENT

### A.      The Court Should Deny the Motion

The motion should be denied for two basic reasons.  First, the FCR's submission

of the Stallard Reply does not violate the letter of the parties' Stipulation.  On the

contrary, its submission is completely consistent with the CMO and applicable law.

Second, submission of the Stallard Reply comports fully with the "spirit" of the

Stipulation.

#### 1.      The Stallard Reply In No Way Violates the Stipulation

Grace's after-the-fact argument that the purpose of the Stipulation was to "cut off

any further discovery" is incorrect.  The purpose of the Stipulation was to limit the

opening Stallard Declaration and Dr. Anderson's Opposition to the *Daubert* proceedings.

Yet, in any event, the Stipulation makes no mention of the FCR's right to file a

reply, which is expressly provided by the CMO and applicable law.  The CMO dictates

---

[1]      Elsewhere in the FCR's cross-examination of Dr. Rodricks, in response to an objection by Grace,
counsel for the FCR explained to the Court other questions relating to the use of averages to determine
disease causation in individuals, counsel for the FCR advised the Court that these are key questions in this
trial.  (*See* Ex. 6 at 250:20-251:13).  The Court advised that "If that is the case, you may establish it in your
case."  (Ex. 6 at 251:14-15.).

the three-step process of initial motion, responsive pleading and reply. (CMO dated Dec. 5, 2007, Dkt. No. 17550, annexed hereto as Exhibit 7). The Stipulation does not, and does not purport to preclude the FCR from having Professor Stallard review and reply to Dr. Anderson's Opposition. Indeed, not only is Professor Stallard's Reply entirely appropriate, it is particularly necessary here because Dr. Anderson's Opposition discloses details of her work for the first time in this case. The Stallard Reply appropriately responds directly, paragraph-by-paragraph and point-by-point to the Anderson Opposition. Far from an untimely new expert report, as Grace suggests, the Stallard Reply was submitted as the final step in the three-step responsive pleading process for *Daubert* motions. (*Id.*)

Furthermore, Grace's argument that the Stallard Reply should be stricken because expert discovery is closed is unavailing. On this point the Third Circuit's ruling in *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717 (3d. Cir. 1994) is instructive. In *Paoli*, after expert disclosure and expert discovery had concluded, a party submitted affidavits from previously undisclosed experts in support of its *Daubert* motion. 35 F.3d at 738. In reliance on those expert affidavits, the trial court granted the proponent's *Daubert* motion and excluded the respondent's testimony from trial. *Id.* at 739. The Third Circuit affirmed the *Daubert* ruling, finding that although the "new set of experts" submitting affidavits was not identified prior to the expert discovery deadline, it was nonetheless appropriate for the trial court to consider their opinions. *Id.* at 738-39.

In so ruling, the Third Circuit observed that "during a pre-trial admissibility hearing, a 'trial court may consider, inter alia, offers of proof, affidavits, stipulations...'" *Id.* at 739 n.4 (*citing United States v. Downing*, 753 F.2d 1224, 1241 (3d Cir. 1985)).

The Third Circuit has also recognized that there is "no bright-line rule that all expert opinions must be preliminarily stated in an expert's report. *See Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404 (3d Cir. 2006). Finally, it is axiomatic that the "Rules of Evidence embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) (district court's exclusion of plaintiff's expert was error). That is precisely what the Stallard Reply does. It assists this Court to see the shortcomings in Dr. Anderson's opinions and to appreciate that core assumptions underlying Grace's entire estimation theory are flawed.

### 2.    The Stallard Reply Comports with the Spirit of the Stipulation

Grace's argument that submission of the Stallard Reply somehow violates the purpose or "spirit" of the Stipulation is wrong. Indeed, the Stallard Reply complies fully with the spirit of the Stipulation because the Reply was offered for *Daubert* purposes, and is specifically addressed to points raised in Dr. Anderson's *Daubert* Opposition.

Contrary to Grace's arguments, Professor Stallard adds no new material. He addresses and rebuts Dr. Anderson's Opposition point-by-point, paragraph-by-paragraph, and methodically demonstrates that Dr. Anderson's expert testimony is unreliable. Most importantly, Stallard's Reply necessarily responds to material on which Dr. Anderson critically relies in reaching her ultimate conclusions, but which she discloses for the first time in her post-report deposition and her Opposition. Having filed Dr. Anderson's Opposition, it is in keeping with the CMO motion procedures, the Stipulation, and fair play that the FCR be entitled to reply with its own expert's critique.

IV.    **THERE ARE NO GROUNDS FOR SANCTIONS**

Grace calls for sanctions under Federal Rule of Civil Procedure 16(f), which contemplates sanctions for failure to obey a scheduling order or failure to appear at a pretrial conference, "unless the judge finds that the noncompliance was substantially justified[.]" Fed. R. Civ. Pro. 16(f). This request is misplaced and should be denied for several reasons.

First, the FCR submitted the Stallard Reply pursuant to the letter and the spirit of the parties' Stipulation, as well as the *Daubert* motion procedures in the CMO.

Second, there is no discovery order involved here, much less a violation of a discovery order.

Finally, even where there is a violation of a scheduling order, courts impose sanctions in only the most egregious of circumstances. *See In re Kramer*, 317 B.R. 297, 299 (Bankr. W.D. Pa. 2004) (declining to impose "draconian" sanction under 16(b) for Debtor's failure to appear entirely at trial); *Gibson v. Nat'l R.R. Passenger Corp.*, 176 F.R.D. 190, 193 (E.D. Pa. 1997) (imposing 16(b) sanctions for "flagrant disregard" of scheduling orders, including repeatedly ignoring deadlines and making misrepresentation to the court which it relied on in ruling on motions). Sanctions are imposed only "if [the parties] fail to participate in good faith." *Newton v. A. C. & S., Inc.*, 918 F.2d. 1121, 1126 (3d Cir. 1990). No such egregious circumstances exist here. The FCR's good faith reply to the Anderson Opposition is far from the type of violation as to which courts impose sanctions. Indeed, given that the Stallard Reply was the first opportunity for the FCR to respond to the new disclosures made by Dr. Anderson after her expert report was submitted, even if some violation occurred (which none did) any such "noncompliance was substantially justified." Fed. R. Civ. Pro. 16(f).

**V.    CONCLUSION**

For the reasons and upon the authorities set forth above, the Court should deny

Grace's motion in its entirety.

Dated: February 8, 2008                              Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP
*/s/ Raymond G. Mullady, Jr.*
Roger Frankel
Richard Wyron
Raymond G. Mullady, Jr.
1152 15th Street, N.W.
Washington, D.C. 20005
(202) 339-8400

John Ansbro
666 Fifth Avenue
New York, NY 10103
(212) 506-5000

- and -

PHILLIPS, GOLDMAN & SPENCE, P.A.
John C. Phillips, Jr. (#110)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200

*Co-Counsel to David T. Austern,*
*Future Claimants' Representative*

11