# **<u>EXHIBIT 1</u>**

US District Court - Delaware                FINAL - November 2, 2007
Chapter 11 - W.R. Grace                     Elizabeth Anderson, Ph.D.

Page 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
-------------------------------
CHAPTER 11
IN RE:
W.R. GRACE & CO., et al.,

      Debtors.
Case No. 01-1139(JFK)
Jointly Administered
-------------------------------
DEPOSITION OF
Elizabeth L. Anderson, Ph.D.
November 2, 2007
Washington, D.C.
Lead: Walter B. Slocombe, Esquire
Firm: Caplin & Drysdale, Chartered

FINAL COPY
JANE ROSE REPORTING  1-800-825-3341

US District Court - Delaware                    FINAL - November 2, 2007
Chapter 11 - W.R. Grace                          Elizabeth Anderson, Ph.D.

Page 2

A P P E A R A N C E S

ON BEHALF OF W.R. GRACE:
  BARBARA MACK HARDING, ESQUIRE
  Kirkland & Ellis
  655 Fifteenth Street, N.W.
  Washington, D.C.  20005
  (202) 879-5081
  bharding@kirkland.com

ON BEHALF OF THE ASBESTOS CLAIMANTS COMMITTEE:
  WALTER B. SLOCOMBE, ESQUIRE
  JAMES P. WEHNER, ESQUIRE
  ADAM L. VanGRACK, ESQUIRE
  Caplin & Drysdale, Chartered
  One Thomas Circle, N.W.
  Suite 1100
  Washington, D.C.  20005
  (202) 862-5000
  wbs@capdale.com

US District Court - Delaware  FINAL - November 2, 2007
Chapter 11 - W.R. Grace  Elizabeth Anderson, Ph.D.

Page 3

A P P E A R A N C E S (continued)

ON BEHALF OF THE PROPERTY DAMAGE COMMITTEE:
 MATTHEW I. KRAMER, ESQUIRE
 Bilzin Sumberg
 200 South Biscayne Boulevard
 Suite 2500
 Miami, Florida  33131-5340
 (305) 350-7246

ON BEHALF OF THE FUTURE CLAIMANTS:
 GARRET G. RASMUSSEN, ESQUIRE
 CHRIS O'CONNELL, ESQUIRE
 Orrick, Herrington & Sutcliffe LLP
 Columbia Center
 1512 15th Street, N.W.
 Washington, D.C.  20005-1706
 (202) 339-8481
 grasmussen@orrick.com

US District Court - Delaware          FINAL - November 2, 2007
Chapter 11 - W.R. Grace                Elizabeth Anderson, Ph.D.

Page 4

A P P E A R A N C E S (continued)

ON BEHALF OF THE EQUITY COMMITTEE:
    JESSICA J. GLASS, ESQUIRE (via phone)
    GREGORY AARON HOROWITZ, ESQUIRE (via phone)
    Kramer Levin Naftalis & Frankel LLP
    1177 Avenue of the Americas
    New York, New York  10036
    (212) 715-9100
    jglass@kramerlevin.com


ON BEHALF OF THE UNSECURED CREDITORS:
    KENNETH PASQUALE, ESQUIRE (via phone)
    Stroock & Stroock & Lavan
    180 Maiden Lane
    New York, New York  10038-9982
    (212) 806-5562
    kpasquale@stroock.com


ALSO PRESENT:
    DAVID SMITH, Paralegal - Caplin & Drysdale
    P.J. ERIC STALLARD, ASA, MAAA - Duke

US District Court - Delaware  FINAL - November 2, 2007
Chapter 11 - W.R. Grace  Elizabeth Anderson, Ph.D.

Page 5

I N D E X
DEPOSITION OF ELIZABETH L. ANDERSON
NOVEMBER 2, 2007

| EXAMINATION BY: | PAGE |
|---|---|
| MR. SLOCOMBE | 7 |
| | 311 |
| MR. RASMUSSEN | 233 |

| EXHIBITS MARKED | PAGE |
|---|---|
| Number1 | 6 |
| Number2 | 6 |
| Number3 | 6 |
| Number4 | 91 |
| Number4 (re-marked) | 92 |
| Number5 | 154 |
| Number6 | 173 |
| Number7 | 195 |
| Number8 | 227 |
| Number9 | 234 |
| Number10 | 290 |
| Number11 | 321 |
| Number12 | 321 |

US District Court - Delaware  FINAL - November 2, 2007
Chapter 11 - W.R. Grace  Elizabeth Anderson, Ph.D.

Page 6

1           P R O C E E D I N G S
2              - - - - -
3        (Anderson Deposition Exhibit Numbers 1,
4   2 and 3 were marked for identification.)
5              - - - - -
6   Whereupon --
7          ELIZABETH L. ANDERSON, Ph.D.
8   a witness, called for examination, having been
9   first duly sworn, was examined and testified as
10  follows:
11       MR. SLOCOMBE:  Let's get all -- my name
12  is Walter Slocombe from Caplin & Drysdale,
13  representing the asbestos claimants committee.
14       Let's go around the room here first and
15  get everybody who is in the room and then we'll
16  get the people who are on the phone.
17       MR. WEHNER:  Jim Wehner from
18  Caplin & Drysdale, also for the ACC.
19       MR. KRAMER:  Matt Kramer,
20  Bilzin Sumberg, on behalf of the property damage
21  committee.
22       MR. RASMUSSEN:  I'm Garret Rasmussen
23  for the future claimants from Orrick Herrington.
24       MR. STALLARD:  I'm Eric Stallard.  I'm
25  a consultant to Orrick Herrington.

US District Court - Delaware
Chapter 11 - W.R. Grace

FINAL - November 2, 2007
Elizabeth Anderson, Ph.D.

Page 246

1   periods, durations of exposure, the 45 years
2   that the product that was on the market or the
3   life of the product.
4         And so I think that this is not a
5   fruitful discussion.
6         I mean, that's -- you have people
7   averaging -- their exposures are going to
8   average over these long durations, and so that's
9   just not a correct portrayal.
10     **Q.  Is it your testimony that all workers'**
11  **exposure converged to the same identical mean**
12  **value over the course of years?**
13        MS. HARDING:  Object to form, and it
14  mischaracterizes testimony.
15        THE WITNESS:  I've said I think this is
16  a reasonable representation of the exposure over
17  long durations.
18        BY MR. RASMUSSEN:
19     **Q.  For an individual?**
20     A.  For anyone in these categories, because
21  the data converge.  And this is the way data
22  sets are handled routinely across all of EPA's
23  guidance, for air, for Superfund sites, for
24  everything.
25     Q.  Is the convergence monotonic?

US District Court - Delaware   FINAL - November 2, 2007
Chapter 11 - W.R. Grace   Elizabeth Anderson, Ph.D.

Page 247

1          MS. HARDING:  Object to form.
2          THE WITNESS:  I have answered this
3  question as far as I am capable of answering
4  it.
5          BY MR. RASMUSSEN:
6      **Q.  So you're refusing to answer that**
7  **question?**
8      A.  No.  I've already answered it.
9      **Q.  And what's the answer?**
10     A.  I've said --
11         MS. HARDING:  Hold on.
12         Objection.  Argumentative.
13         I think the doctor said at the very
14  outset of this line of questioning that she
15  didn't have the expertise to answer your
16  individual questions.  She's tried I think
17  gallantly to answer them, and you keep pressing
18  on issues about which she's trying to answer,
19  and I think it's argumentative and I'm going to
20  object to the continued line of questioning if
21  you're going to keep going there.
22         MR. RASMUSSEN:  Please read back the
23  question, and we'll see how argumentative it
24  was.
25         (The record was read as follows:)

US District Court - Delaware  
Chapter 11 - W.R. Grace

FINAL - November 2, 2007  
Elizabeth Anderson, Ph.D.

Page 248

1   "QUESTION: And what's the answer?"
2   MS. HARDING: No. The one before that.
3   (The record was read as follows:)
4   "QUESTION: Is the convergence
5   monotonic?"
6   BY MR. RASMUSSEN:
7   **Q. Have you answered that question before,**
8   **Mrs. Anderson?**
9   A. I don't know what you mean, "is the
10   convergence monotonic."
11   MS. HARDING: And object to form.
12   By what convergence?
13   BY MR. RASMUSSEN:
14   **Q. Didn't you just testify there would be**
15   **a convergence toward the mean over time?**
16   A. I've already testified, I've already
17   described that, one, in any environmental data
18   set, whether it's personal monitoring data,
19   whether it's stationary source air data,
20   whether it's data taken from soil on a grid
21   that's been laid out for purposes of trying to
22   define what's in soil, whether it's taken from
23   water, we see wide variations and we see them
24   routinely.
25   If you're taking air data, some days

US District Court - Delaware  FINAL - November 2, 2007
Chapter 11 - W.R. Grace  Elizabeth Anderson, Ph.D.

Page 249

1   the wind blows one way, another way.  There are
2   different activities going on.
3          And so what you want to capture over a
4   long period of time for exposures that are very
5   important to lifetime exposure circumstances is
6   a fair characterization of all of this
7   difference that you observe in the data sets.
8          I've said, number two, that EPA has
9   guidelines and practices that are documented for
10  dealing with this.  It's expected.  This isn't
11  unusual.  It's expected.  What these guidelines
12  drive toward is a way of describing the best
13  characteristics of the data set for long-term
14  exposures.
15         Number three, what we've done is we've
16  applied those long-term -- these concentrations
17  to long-term durations that are the longest that
18  could possibly exist, either 45 years of
19  employment or the full lifetime of the product.
20  Therefore, I think these eight-hour averages are
21  very representative of exposure across the
22  universe of these individuals.
23         I don't think that any individual for
24  45 years is going to be exposed to one of the
25  highest data points in this data set, and I

US District Court - Delaware  FINAL - November 2, 2007
Chapter 11 - W.R. Grace  Elizabeth Anderson, Ph.D.

Page 250

1   think that's unreasonable.  It doesn't fit any
2   of the work that's been done on dealing with
3   data sets.
4          And finally, I have said I am not going
5   to dissect Dr. Lees' data set because I haven't
6   dealt with it.  He has, and those questions
7   should be directed to him.
8          And I think I can't answer it any more
9   fully and I'm not refusing to answer.  That's
10  the only answer I can give you and that's a very
11  full answer.
12      **Q.  It's possible to calculate the mean**
13  **height of all basketball players -- all**
14  **professional basketball players in the NBA,**
15  **isn't it?**
16          MS. HARDING:  Object to form.
17          THE WITNESS:  I would think that might
18  be -- it depends who's in the population and
19  who's out if you define a population of anyone.
20  We can calculate our mean height -- average
21  height of the population in this room.
22          I mean, you can calculate the mean of
23  anything if you define the population correctly.
24          BY MR. RASMUSSEN:
25      **Q.  The average height of all NBA**