THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Objection Deadline: February 29, 2008** |
| | ) | **Hearing Date: March 17, 2008 at 1 p.m.** |

**DEBTORS' MOTION FOR AN ORDER EXTENDING THE TERM OF THE CREDIT AGREEMENT WITH ADVANCED REFINING TECHNOLOGIES LLC**

The Debtors respectfully move this Court (the "Motion") for entry of an order authorizing the Debtors to amend the ART Credit Agreement (as defined herein) between W. R. Grace & Co.-Conn., one of the Debtors ("Grace"), and Advanced Refining Technologies LLC ("ART") to extend its termination date to March 1, 2010. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this Motion is proper under 28 U.S.C. § 1408.

2. The statutory predicates for this Motion are sections 105 and 363(b) of the Bankruptcy Code and Rule 9019 the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

3. Effective March 1, 2001, Grace and Chevron Products Company, a division of Chevron U.S.A. Inc ("Chevron USA"), formed ART, a Delaware limited liability company. ART develops, manufactures and sells hydroprocessing catalysts, which are used in the petroleum refining industry for the removal of certain impurities from petroleum feedstock. Grace owns a 55% interest in ART and Chevron USA owns a 45% interest. ART is governed by the Limited Liability Company Agreement dated as of March 1, 2001 (as amended, the "Operating Agreement"), between Grace and Chevron USA.

4. In connection with the formation of ART, Grace and Chevron Capital Corporation, an affiliate of Chevron USA ("Chevron Capital"), entered into separate credit agreements with ART (as amended, the "ART Credit Agreements") under which they provided ART with an aggregate of $20 million of revolving credit in proportion to their ownership of ART: $11 million from Grace, and $9 million from Chevron Capital. The ART Credit Agreements were subsequently increased to a total of $45 million ($24.75 million from Grace and $20.25 million from Chevron Capital), and their terms extended to March 1, 2008. The amendments to the ART Credit Agreement between Grace and ART was authorized pursuant to

orders entered by the Court on January 22, 2004 [Docket No. 4965] and March 24, 2006 [Docket No. 12119].

5. Other than the credit amounts, the two ART Credit Agreements are substantially identical. The Operating Agreement provides that loans under the ART Credit Agreements aggregating $2,000,000 or integral multiples thereof will be lent 55% by Grace and 45% by Chevron Capital. For administrative convenience, loans in lesser amounts are made exclusively by Grace until their balance reaches $2,000,000.

6. For the reasons explained below, Grace and Chevron Capital propose to amend the ART Credit Agreements to extend their terms to March 1, 2010.

7. The purpose of the 2006 amendment of the ART Credit Agreements was to provide financing arrangements so that excess cash from operations could be used to pay dividends to Grace and Chevron and to fund ART growth, and not be tied up to fund periodic "spikes" in working capital. ART has paid dividends of $34.7 million to Grace and Chevron during 2006 and 2007. ART currently has unpaid dividends of $59.0 million that will either be distributed to Grace and Chevron in 2008 or will be used for strategic investments to support the growth of the joint venture. In 2008 and thereafter, ART expects to continue experiencing spikes in working capital requirements and therefore to continue to require the existing lines of credit, particularly if excess cash is used for dividends or to further grow the ART joint venture.

8. The hydroprocessing business involves large orders that in some cases require several months of production time. Over the next few years, ART expects new refinery projects and other transactions that will require initial orders of several million pounds of catalyst. The long production time on these orders will require temporary buildup of inventory. It is for situations like this that the working capital lines will be needed.

**RELIEF REQUESTED**

9. By this Motion, the Debtors seek an order authorizing the Debtors to amend Grace's ART Credit Agreement to extend its term to March 1, 2010.

**BASIS FOR RELIEF**

10. Section 105(a) of the Bankruptcy Code permits the court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title..." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trusee, after notice and a hearing, may use, sell, or lease, other than in the ordinary court of business property of the estate." 11 U.S.C. §363(b)(1).

11. A court has the statutory authority to authorize a debtor to use property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also Fulton State Bank v. Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by "some articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

12. Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of

business. See Lionel Corp., 722 F.2d at 1070-71. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992). The business judgment rule has significance in chapter 11 cases as it shields a debtor's management from judicial second-guessing. See Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 615-16 (Bankr. S.D. N.Y. 1986) ("[T]he Code favors the continued operations of a business by a debtor and a presumption of reasonableness attaches to debtor's management decisions."). A party in interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." Montgomery Ward, 242 B.R. at 155.

13. Courts have applied four factors in determining whether a sound business justification exists: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. See Lionel Corp., 722 F.2d at 1071 (setting forth the "sound business purpose" test); Abbotts Dairies, 788 F.2d at 145-47 (implicitly adopting the articulated business justification test of the Lionel standard and adding the "good faith" requirement); Delaware & Hudson, 124 B.R. at 176 (adopting Lionel in this district). As demonstrated below, amending Grace's ART Credit Agreement to extend Grace's credit commitment to its ART joint venture for an additional two years satisfies each of these factors and is in the best interests of the Debtors.

14. *Sound Business Reasons.* The hydroprocessing catalyst business involves large orders that in some cases require several months of production time. Over the next few years,

ART expects new refinery projects and other transactions that will require initial orders of several million pounds of catalyst. The production time on orders of this magnitude will require temporary build up of inventory, and that inventory must be financed either from ART's cash reserves or from lines of credit.

15. Grace and Chevron have examined the alternatives and concluded that it is more cost-effective to continue the existing lines of credit than to tie up cash in ART continuously in order to be prepared to meet financing needs when they occur. When the financing needs are not pressing, ART's positive cash flow will be distributed as dividends to Grace and Chevron for other uses or used for growth by internal expansion, acquisitions or other strategic initiatives. Then, if ART requires additional financing, it is available under the extended ART Credit Agreements. ART has paid dividends of $34.7 million to Grace and Chevron during 2006 and 2007.

16. *Fair and Reasonable Consideration.* Grace believes that the continuation of the lines of credit will provide the most cost-effective means of managing its investment in the ART joint venture.

17. *Good Faith.* The Debtors have negotiated the extension of the ART Credit Agreement at arm's length and in good faith. The Debtors also believe that the terms of the proposed transaction are fair to and in the best interests of the Debtors.

18. *Adequate and Sufficient Notice.* In satisfaction of the requirements of Rule 2002 of the Bankruptcy Rules, the Debtors intend to serve copies of this Motion to all parties as provided herein.

19. In light of the foregoing, the Debtors have determined in their business judgment that the extension of Grace's ART Credit Agreement is fair and reasonable. The Debtors believe that the proposed transaction is in the best interest of their estates, grounded in sound business judgment and satisfies the "sound business judgment" test for the use of assets outside the ordinary course of business under Section 363(b) of the Bankruptcy Code.

## NOTICE

Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the debtor in possession lenders, (iii) counsel to each official committee appointed by the United States Trustee, (iv) counsel to the Future Claimants' Representative, and (v) those parties that requested papers under Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter an order (a) authorizing the Debtors to amend Grace's ART Credit Agreement to extend its term to March 1, 2010, and (b) granting such other and further relief as the Court deems just and proper.

Dated: February 11, 2008

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Lori Sinanyan
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

_____
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
Telephone: 302-652-4100
Facsimile: 302-652-4400

Co-Counsel for the Debtors and Debtors in Possession