IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-01139 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Objection Deadline: February 29, 2008 at 4:00 p.m.** |

**Hearing Date: March 17, 2008 at 1:00 p.m. (Pittsburgh, PA)**

## MOTION OF DEBTORS FOR AUTHORITY TO FURTHER EXTEND AND MODIFY DEBTOR-IN-POSSESSION FINANCING

The Debtors request entry of an order authorizing them to enter into Amendment No. 6 to their *Post-Petition Loan and Security Agreement* dated April 1, 2001(as heretofore amended and modified, the "DIP Facility"), between Bank of America, N.A. ("BofA") and the other lenders (collectively, the "Postpetition Lenders"), BofA as agent (the "Agent") for itself and the other Postpetition Lenders, and the Debtors. The amendment (a) extends to April 1, 2010, the termination date of the DIP Facility, which currently expires on April 1, 2008; (b) makes technical modifications of certain of the covenants and other provisions of the DIP

---

[1] The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co. Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., GC Limited Partners I, Inc., (f/k/a Grace Cocoa Limited Partners I, Inc.), GC Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc. GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation., W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (F/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

Facility; and (c) authorizes payment of certain fees to the Agent and Postpetition Lenders in connection therewith.  In support of the Motion, the Debtors respectfully state as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G) and (O).

2.      The statutory predicates for the relief requested herein are sections 363(b) and 364 of the Bankruptcy Code.

## Background

3.      On the petition date in these cases, the Debtors filed a motion requesting authority to obtain debtor-in-possession financing of an aggregate principal amount of up to $250,000,000 as provided in the DIP Facility.

4.      On May 3, 2001, the Court entered an order approving the DIP Facility (the "Final DIP Order") [Docket No. 192].

5.      *First DIP Amendment*.  In February 2003, the Debtors negotiated an amendment of the DIP Facility (the "First DIP Amendment") to provide, among other things, for (a) an extension of the termination date through the earlier of (i) the Debtors' emergence from bankruptcy or (ii) April 1, 2006; (b) modification of certain fees payable to the Agent and the Postpetition Lenders; and (c) modification of certain of the financial and other covenants and provisions contained in the DIP Facility [Dockets Nos. 3365 and 3439].  The Debtors submitted the *Affidavit of Robert M. Tarola* in further support of their motion to authorize the First DIP Amendment [Attachment #3 to Docket No. 3365].  On March 14, 2003, the Court entered an

2

order authorizing and approving the First DIP Amendment [Docket No. 3512] (the "First Amended DIP Order").

6.      **_Second DIP Amendment_**. In August 2003, the Debtors entered into a second amendment to the DIP Facility which contained non-material modifications to certain covenants, representations and warranties of the DIP Facility. This amendment did not require notice or Court approval.

7.      **_Third DIP Amendment_**. In December 2003, the Debtors negotiated a third amendment to the DIP Facility in order to increase the amount that the Debtors could lend to Advanced Refining Technologies LLC, a joint venture between Grace and Chevron (the "Third DIP Amendment"). On January 22, 2004, the Court entered an order authorizing and approving the Third DIP Amendment [Docket No. 4965].

8.      **_Fourth DIP Amendment_**. In March 2006, the Debtors entered into a fourth amendment to the DIP Facility which provided, among other things, for: (a) an extension of its termination date through the earlier of (i) the Debtors' emergence from bankruptcy or (ii) April 1, 2008; (b) the payment of certain upfront fees to the Agent and the Postpetition Lenders; and (c) a modification of certain of the covenants and other provisions contained in the DIP Facility to reduce the Debtors' reporting requirements and increase financial flexibility (the "Fourth DIP Amendment"). On March 24, 2006, the Court entered an order authorizing and approving the Fourth DIP Amendment [Docket No. 11851].

9.      **_Fifth DIP Amendment_**. In July 2006, the Debtors entered into a fifth amendment to the DIP Facility which contained non-material modifications to certain covenants and other provisions of the DIP Facility. This amendment did not require notice or Court approval.

K&E 12411019.8

10.    *__Sixth DIP Amendment__*.  The DIP Facility is currently scheduled to expire on April 1, 2008.  The Debtors therefore wish to enter into a sixth amendment to the DIP Facility (the "Sixth DIP Amendment") that, among other things, will (a) extend the termination date of the DIP Facility to the earlier of (i) the Debtors' emergence from bankruptcy or (ii) April 1, 2010; (b) provide for the payment of certain upfront fees to the Agent and the Postpetition Lenders (the "Amendment Fees");[2] and (c) make largely technical modifications of certain of the covenants and other provisions of the DIP Facility.[3]

11.    The Sixth DIP Amendment is intended to ensure the Debtors' continued financial flexibility and a stable financial environment while the Debtors work to conclude their chapter 11 cases.  The extended DIP Facility will (a) continue to support general trade initiatives, as well as risk management and capital investment initiatives; (b) provide liquidity protection in the face of significant economic uncertainty; (c) support strategic business initiatives that are in the best interest of the Debtors and their stakeholders; and (d) manage significant contingencies related to the Debtors' past and present operations.  Specific liquidity contingencies include: (a) the likelihood of significant contributions to U.S. qualified pension plans to satisfy the funding requirements of ERISA; (b) possible settlements of environmental, tax and other disputes as may be proposed by the Debtors and approved for funding by the Court and creditors in advance of a confirmed plan of reorganization; and (c) attorneys' fees and expenses in connection with such disputes, including civil and criminal litigation in Montana and New Jersey.

---

[2]    Based on current market conditions, the Debtors estimate the fees at $2,012,500.00.  The final amount of the fees will depend on market conditions at the time of the final commitments by the Postpetition Lenders.

[3]    The summary of the terms of the Sixth DIP Amendment contained in this Motion is qualified in its entirety by the reference to the Sixth DIP Amendment, and any conflict between this Motion and the Sixth DIP Amendment itself shall be resolved in favor of the Sixth DIP Amendment as set forth in Exhibit A annexed hereto and made a part hereof.

K&E 12411019.8

12.     After analyzing their options for continuing their post-petition financing and reviewing recent comparable transactions in the capital markets, the Debtors have determined that the most cost-effective approach would be to seek a further extension of the DIP Facility instead of seeking a replacement post-petition financing facility.  The Debtors expect that ongoing fees and interest rates will be at or below comparable market rates.  Additionally, by extending the DIP Facility, the Debtors will avoid the substantial expenses attendant with negotiating a new credit agreement with a new agent and lenders.

## Relief Requested

13.     By this Motion, the Debtors seek authority pursuant to sections 363(b) and 364 of the Bankruptcy Code to enter into the Sixth DIP Amendment in the form attached hereto as Exhibit A, in order to: (a) extend the termination date of the DIP Facility through the earlier of (i) the Debtors' emergence from bankruptcy or (ii) April 1, 2010; (b)  modify certain covenants and other provisions contained in the DIP Facility; and (c) pay the Amendment Fees to the Agent and Postpetition Lenders.

### *The Sixth DIP Amendment Is Proper Under Section 364.*

14.     Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code :

> (i)     The debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code, i.e., by allowing a lender only an administrative claim;
>
> (ii)    The credit transaction is necessary to preserve the assets of the estate; and
>
> (iii)   The terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender.

In re Ames Dep't Stores, Inc., 115 B.R. 34, 37-39 (Bankr. S.D. N.Y. 1990).

15.     As provided in the Sixth DIP Amendment, the Debtors propose to extend their financing under the DIP Facility.  The Sixth DIP Amendment is in furtherance of the Debtors'

K&E 12411019.8

continued performance under the DIP Facility and the Postpetition Lenders continue to require the protections set forth in the Final DIP Order and the First Amended DIP Order, including those provided under section 364(e) of the Bankruptcy Code. This Court previously found that the Debtors had established the need for the DIP Facility pursuant to section 364 when it entered the Final DIP Order and the First Amended Final Order [Docket Nos. 192 and 3512] as well as when it approved the Fourth DIP Amendment. Because the Sixth DIP Amendment is merely a continuation of the financing previously approved, this Court's findings should continue to apply.

16.     The Debtors have negotiated the Sixth DIP Amendment with the Agent at arm's length and in "good faith" (as that term is defined in section 364(e) of the Bankruptcy Code), with all parties represented by experienced counsel. Entry of an order authorizing the Sixth DIP Amendment will eliminate potential disruption of the Debtors' businesses and operations that would otherwise result from termination of the existing DIP Facility. An extension of the DIP Facility thus is critical to avoid immediate and irreparable harm to, and is in the best interests of the Debtors' estates.

### *The Payment of the Amendment Fees Is Proper Use of Estate Property Under 363(b).*

17.     Paying fees to extend the maturity of debtor-in-possession financing is common among large chapter 11 cases. See, e.g., In re Delphi Corporation, et al., Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Nov. 16, 2007) (delay in exiting bankruptcy due to deteriorating commercial credit markets; secured lenders required extension fees and increase in applicable interest rates); and In re Tower Automotive, Inc., et al., Case No. 05-10578 (ALG) (Bankr. S.D.N.Y. Jan. 31, 2007) (delay in exiting bankruptcy due to deteriorating domestic automobile manufacturing output; secured lenders required extension fees and increase in applicable interest

6

rates); see also In re Global Home Products, Inc., Case No. 06-10340 (KG) (Bankr. D. Del.
October 30, 2006); In re Dura Automotive Systems, Inc., Case No. 06-11202 (KJC) (Bankr. D.
Del. June 28, 2007); In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. March 5,
2007).

18.     Pursuant to section 363(b) of the Bankruptcy Code, bankruptcy courts have
generally approved the use, sale or lease of estate property out of the ordinary course of business
where there exists a sound business justification for the proposed transaction. See, e.g., Myers v.
Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances,
courts defer to a trustee's judgment concerning use of property under § 363(b) when there is a
legitimate business justification); Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel
Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983) (acknowledging the use of the "articulated business
justification" for the use of property under § 363).

19.     A debtor has the burden of establishing that a valid business purpose exists for the
use of estate property in a manner that is not in the ordinary course of business. See In re Lionel
Corp., 722 F.2d at 1071. Once a debtor articulates a valid business justification, however, it is
presumed that "in making a business decision the directors of a corporation acted on an informed
basis, in good faith and in the honest belief that the action was in the best interests of the
company." In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith
v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule therefore shields a
debtor's management from judicial second-guessing. A court should approve a debtor's business
decision unless that decision is a product of bad faith or gross abuse of discretion. See id.; see
also Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir.
1985), cert. denied, 475 U.S. 1057 (1986).

K&E 12411019.8

20.    The payment of the Amendment Fees are supported by sound business justifications because such payment is necessary to secure the Sixth DIP Amendment and the extension of the DIP Facility.  While the Debtors have operated in chapter 11 for a substantial period of time, they have continued to grow their business and increase profitability while working through the substantial issues that have faced them due to their asbestos-related litigation.  The Debtors have made substantial progress resolving non-asbestos claims, asbestos property damage claims and environmental claims.  They are currently in the middle of a trial to establish the extent of their liability for asbestos personal injury claims so that they may ultimately fund the appropriate trust for payment of such claims and emerge from chapter 11.

21.    Termination of the DIP Facility would impair this progress and require additional and more costly charges to obtain postpetition financing.  The Sixth DIP Amendment provides the Debtors with additional "breathing room" to complete their reorganization.  In addition, the Debtors require a liquidity facility for maintenance of existing, and issuance of additional, letters of credit in the ordinary course of the Debtors' business, including trade-related performance bonds, support for commodity and foreign currency risk management instruments, and support of other insurance, environmental and general trade and corporate related matters.

22.    Because of the greater certainty of a binding credit commitment, and because the interest rates and costs of maintaining the DIP Facility and the available terms are, in the Debtors' view, favorable when compared with recent comparable capital markets transactions, the Debtors concluded that maintaining the DIP Facility at its current level is more prudent and cost-effective.  Decreasing the facility size or the facility itself at this juncture would create significant uncertainty as to the ability of the Debtors to manage the contingencies and fund the initiatives described above.  Moreover, the Debtors would face the risk of less favorable terms

8

and more adverse market conditions if they had to go into the credit markets in the future for additional financing.

23.     The Amendment Fees reflect current conditions in the credit market and are fair and reasonable.  They were negotiated by the Debtors, the Agent and Postpetition Lenders at arms-length, and are customary and appropriate in light of the substantial benefits received by the Debtors' estates, and are the best terms available to the Debtors in view of the facts and circumstances of these chapter 11 cases.  Further, the Debtors believe that similar financing is not available because negotiations with potential replacement DIP lenders would not be cost-effective.  Indeed, the amount of the Amendment Fees could easily be eclipsed by the costs associated with negotiating and implementing new postpetition financing.

24.     Because the relief requested herein is an appropriate exercise of the Debtors' business judgment and will inure to the benefit of the Debtors' estates, this Court should approve the Sixth DIP Amendment and authorize the Debtors to pay the Amendment Fees.

***Request for Alternative Immediate Interim Relief***

25.     In the event that the Court is unable to enter an order approving the Sixth DIP Amendment at the omnibus hearing on March 17, 2008, or otherwise prior to the April 1, 2008 expiration of the DIP Facility, the Debtors have requested, and the Agent has agreed to provide a sixty (60) day extension of the DIP Facility through and including May 31, 2008 (the "Interim Extension").[4]

26.     As of January 31, 2008, approximately $58.5 million in letters of credit issued pursuant to the DIP Facility (the "Outstanding LOCs") remain outstanding.  It is essential that

---

[4]     The Agent's agreement to provide the Interim Extension is subject to the approval of the Lenders.

9

K&E 12411019.8

the Debtors receive an immediate extension of the DIP Facility to ensure the preservation of the Outstanding LOCs. The Outstanding LOCs have been provided by the Postpetition Lenders in connection with (a) numerous trade-related performance obligations, (b) certain insurance matters and (c) certain environmental financial assurance requirements, and are integral to the operation of the Debtors' businesses.

27.    If the DIP Facility were to terminate, the Debtors would have great difficulty in continuing to provide letters of credit required by vendors, customers, insurers and regulatory authorities. The Interim Extension has been negotiated in an effort to avoid the disruption of the Debtors' business operations which would result from the need to cash collateralize the Outstanding LOCs and the additional required letters of credit if the Sixth DIP Amendment is not approved prior to April 1, 2008.

28.    The terms of the Interim Extension are identical to the terms of the current DIP Facility with the exception of the change of the termination date to May 31, 2008. The Debtors have agreed to pay BofA a fee of not more than $100,000.00 for the Interim Extension. If Court approval of the Sixth DIP Amendment cannot be obtained by April 1, 2008, the Interim Extension would be the least disruptive means of maintaining the stability of the Debtors' business pending such Court approval.

<u>Notice</u>

29.    Notice of this Motion has been given to:    (a) the United States Trustee, (b) counsel to the debtor in possession lenders, (c) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (d) counsel to each official committee appointed by the United States Trustee; (e) counsel to the Future Claimants Representative; and (f) all those

K&E 12411019.8

parties that requested service and notice of papers in accordance with Fed.R.Bankr.P. 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court (a) enter an order approving the Sixth DIP Amendment containing the modifications to the DIP Facility set out in the Sixth DIP Amendment; or, in the alternative, if the Court is unable to enter an order approving the Sixth DIP Amendment prior to April 1, 2008, enter an order approving the Interim Extension; and (b) grant such other and further relief as is just and proper.

Dated: February 11, 2008

Respectfully submitted,

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P. O. Box 8705
Wilmington, DE  19899-8705
(302) 652-4100

Co-Counsel for the Debtors and
Debtors in Possession

11

K&E 12411019.8