IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| W.R. GRACE & CO., et al., | § | Jointly Administered |
| | § | Case No. 01-01139 (JKF) |
| Debtors. | § | |
| | § | |

## FEE AUDITOR'S FINAL REPORT REGARDING
## FEE APPLICATION OF REED SMITH LLP
## FOR THE TWENTY-SIXTH INTERIM PERIOD

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the Fee Application of Reed Smith LLP for the Twenty-Sixth Interim Period (the "Application").

### BACKGROUND

1. Reed Smith LLP ("Reed Smith") was retained as special asbestos products liability defense counsel to the Debtors. In the Application, Reed Smith seeks approval of fees totaling $1,174,226.00 and expenses totaling $105,794.21 for its services from July 1, 2007 through September 30, 2007 (the "Application Period").

2. In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2006, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under

11 U.S.C. §330, Issued January 30, 1996 (the "U.S. Trustee Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals. We served an initial report on Reed Smith, and received a response from Reed Smith, portions of which response are quoted herein.

## DISCUSSION

3. In our initial report, we noted the following incomplete time entry on the August 2007 monthly invoice, specifically on Invoice Number 1600158, Page 4:

08/06/07     Aten     3.50

Thus, we asked Reed Smith to provide the fee detail for this time entry. Reed Smith responded as follows:

> In Paragraph 3 of the Initial Report, the Fee Auditor noted that a 3.50 hour time entry with no task explanation was listed for Rebecca E. Aten on August 6, 2007. This was the result of a clerical error by Reed Smith; the entry should not have appeared in the Fee Application. As such, Reed Smith will not contest a $1032.50 reduction in its fees for the 26th Interim period.

We appreciate Reed Smith's response and recommend a reduction of $1,032.50 in fees.

4. In our initial report, we noted that on August 29, 2007, Timekeepers Restivo ($635), Flatley ($575), Rea ($400), and Ament ($145) attended an omnibus hearing. The total time spent, including preparation, was 12.40 hours, for total fees of $6,326.50. The time entries are as follows:

| Date | Timekeeper | Hours | Fees | Description |
|---|---|---|---|---|
| 08/29/07 | Restivo | 3.00 | 1,905.00 | Participate in omnibus hearing |
| 08/28/07 | Rea | 1.70 | 680.00 | Preparation for Omnibus Hearing (1.7);.............. |
| 08/29/07 | Ament | 1.20 | 174.00 | ..........; prepare for and attend portion of hearing |

|          |         |       |          | (1.20).                                                                       |
|----------|---------|-------|----------|-------------------------------------------------------------------------------|
| 08/29/07 | Flatley | 1.50  | 862.50   | ..........; attendance at Omnibus hearing and follow-up (1.5).                |
| 08/29/07 | Rea     | 2.00  | 800.00   | Attend omnibus hearing (1.5); preparation for omnibus hearing (0.5);............ |
| 08/29/07 | Restivo | 3.00  | 1,905.00 | Prepare for Omnibus Hearing (2.0); meeting with client and co-counsel (1.0);............... |
|          |         | 12.40 | $6,326.50 |                                                                              |

Paragraph II.D.5. of the U.S. Trustee Guidelines provides: "If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." Thus, we asked Reed Smith to explain why it was necessary for three Reed Smith attorneys and one paralegal to attend the hearing. Reed Smith provided a response which we have included as Response Exhibit "A." We accept Reed Smith's response and have no objection to these fees.

5. In our initial report, we noted the following hotel charges for which more information was needed:

| 620.86   | 08/27/07 | Lodging – Vendor: Douglas E. Cameron Trip to Chicago for expert deposition for client W.R. Grace 8/21-8/23/07 – Two nights stay at W. Hotel, Chicago City Center (including state and city room taxes). |
| 1,219.80 | 09/24/07 | Lodging – Vendor: Lawrence E. Flatley Attend depositions 9/17-9/19/07 – Two nights' stay at PHI Four Seasons Hotel for witness meetings in PHI (no other hotel vacancies in downtown area) – including room charge, state and local room taxes. |

It appears to us that one can ordinarily obtain more than satisfactory lodging in Chicago and Philadelphia for $250.00 per night, plus taxes. Thus, we asked Reed Smith for additional

information concerning these charges.  Reed Smith responded as follows:

>In Paragraph 5 of the Initial Report, the Fee Auditor noted that Douglas E. Cameron incurred a $620.86 hotel bill during a stay in Chicago from August 21 to August 23, 2007.  The Fee Auditor asked for additional information about that charge.
>
>The itemized detail for this hotel charge is as follows:  room charge, $269.00 per night; state tax, $32.01 per night; city tax, $9.42 per night, for a total of $310.43 per night.  Although Reed Smith understands the Fee Auditor's position on the costs of satisfactory lodging in Chicago, Reed Smith believes that these charges are well within the scope of reasonableness, and are relatively close to the Fee Auditor's own guidelines.  Reed Smith also notes that while less expensive accommodations can also often be found further away from the center of cities, using such accommodations often would result in higher transportation charges to move from those hotels to the sites of meetings and hearings where, as here, those meetings or hearings took place in the city center.
>
>The Fee Auditor also notes in Paragraph 5 of the Initial Report that Mr. Flatley incurred a $1,219.80 hotel bill during a stay in Philadelphia from September 17 to September 19, 2007.  The Fee Auditor asks for additional information about that charge, and also for information on what other hotels were checked.
>
>The itemized detail for this hotel charge is as follows:  room charge, $535.00 per night; state room tax, $37.45 per night; local room tax, $37.45 per night, for a total of $609.90 per night.
>
>With respect to what other hotels Mr. Flatley checked before booking accommodations in the Four Seasons, Mr. Flatley's assistant, Janet Pierson, reports that she worked with the firm's travel agent and another legal assistant in Reed Smith's Philadelphia office to find a room within the cost guidelines suggested by the Fee Auditor.  They contacted many of the hotels in the Philadelphia downtown area -- including the Union League, the Marriott-Market Street, the Courtyard Marriott, the Westin Philadelphia, the Ritz-Carlton, the Warwick, the Latham, the Sofitel and the Loews Philadelphia -- and learned that none of them had any vacancies during the September 17-19 period, due to several conventions taking place at that time (including conventions by the Council of Supply Chain Management Professionals, the Institute for International Research, and the Association of Zoos and Aquariums).  The only hotel that had any rooms available

> in Philadelphia during this time was the Four Seasons, at the $535 per night rate.[1] As such, Reed Smith believes it made every reasonable attempt to minimize this lodging charge and to stay within the Fee Auditor's guidelines, and having been frustrated due to circumstances beyond its control, Reed Smith believes that this charge is not unreasonable and should be reimbursed in full.

Because of the extenuating circumstances noted by Reed Smith, we accept its response concerning the $1,219.80 hotel charge. With respect to the $620.86 hotel charge (or $538.00 for two nights' stay in Chicago), we recommend a reduction of $38.00 in expenses.

6. In our initial report, we noted the following air fare charge for which more information was needed:

   692.80        09/24/07        Air Travel Expense – Vendor: Lawrence E. Flatley
                                 Attend depositions 9/17-9/19/07 – Airfare for trip to
                                 PHL

In response to our inquiry, Reed Smith provided the following information concerning this charge:

> Mr. Flatley's air fare charge was for a round-trip ticket for non-stop flights from Pittsburgh to Philadelphia (on September 17, 2007) and from Philadelphia to Pittsburgh (on September 19, 2007). Both flights were with US Airways, and both were in economy (coach) class. The ticket fee was $668.80, with a service fee of $24.00, for a total fare of $692.80.

We accept Reed Smith's response and have no objection to this expense.

7. In our initial report, we noted the following meal expense which, without more information,

---

[1] On September 13, 2007 -- prior to Mr. Flatley's stay in Philadelphia, but after the hotel reservations had been made -- Andrew J. Muha of Reed Smith sent an e-mail to Steve Bossay of Warren H. Smith & Associates, P.C. in which a substantially identical explanation was given of the situation, and asking for guidance as to whether the full hotel expense would be reimbursable. In response (on the same day), Mr. Bossay suggested that Reed Smith provide this explanation in response to the Fee Auditor's Initial Report on the 26th Interim Fee Application, and noted his appreciation for Reed Smith's inquiry and for its efforts to stay within the guidelines imposed by the Fee Auditor. A copy of this e-mail exchange can be forwarded to the Fee Auditor upon its request.

appeared excessive:

| | | |
|---|---|---|
| 227.93 | 09/04/07 | Meal Expense – Lunch for 4 witnesses, 2 attorneys and support during witness preparation meeting in PHL 8/7/07 |

It appears to us the one can dine satisfactorily for $25 for lunch. Thus, we asked Reed Smith to provide additional information to support the charge. Reed Smith responded as follows:

> A total of ten (10) persons participated in parts of the meeting and attended the lunch portion of the August 7, 2007 meeting: four witnesses, two Reed Smith attorneys, two attorneys from Kirkland & Ellis LLP, one paralegal and one secretary.

We accept Reed Smith's response and have no objection to this expense.

8.  In our initial report, we noted the following charges for outside professionals:

| | | |
|---|---|---|
| 08/29/07 | 8,902.52 | Consulting Fees – Vendor: Environ Int'l Corporation - Doc Review/Dr. Rodricks' preparation for deposition - Expert consultant fees for work on personal injury claims against W.R. Grace for July, 2007 |
| 09/26/07 | 17,478.65 | Consulting Fees – Vendor: Environ Int'l Corporation - Doc Review/ Dr. Rodricks' preparation for deposition - Expert consultant fees for work on personal injury claims against W.R. Grace for August, 2007. |
| 10/29/07 | 36,519.74 | Consulting Fees – Vendor: Environ Int'l Corporation - Continued review of Dr. Rodricks' upcoming deposition - Expert consultant fees for work on personal injury claims against W.R. Grace for September, 2007 |

Thus, we asked Reed Smith to provide us with copies of the itemized invoices for each charge. Reed Smith provided us with the invoices, which we reviewed, and responded as follows:

> By way of further explanation, Environ's involvement in this case has come as a result of the work of Dr. Joe Rodricks, one of Environ's principals who was retained on Grace's behalf to provide analysis and testimony in a number of the matters currently pending in Grace's bankruptcy case. Dr. Rodricks is a risk assessor with expertise on appropriate corporate risk management practices and on the use of risk assessment tools to answer questions relating to causation. He was the second

witness to testify on W.R. Grace's behalf at the personal injury claim estimation proceedings that began in January.

During the late summer and early fall months of 2007, Dr. Rodricks finished working on his assessment of Grace's historical corporate risk management practices in anticipation of needed rebuttal testimony in response to the charges leveled against Grace by claimants' experts, Drs. Lemen, Castleman and Frank. Additionally, during this time, Dr. Rodricks prepared for a deposition in the Grace matter, and worked at developing his presentation to the Bankruptcy Court on how the core risk assessment framework can (and should) be used to answer questions of causation in the legal context - the very same framework applied by Grace's other experts (Drs. Moolgavkar, Anderson, and Lees) to Grace-specific exposure and health claims. As reflected in the invoices, Dr. Rodricks periodically obtained assistance from employees at various levels of the Environ organization, all of whom helped him to prepare for the various tasks assigned to him as part of Grace's bankruptcy litigation.

We accept Reed Smith's response and have no objection to these expenses.

## CONCLUSION

In summary, we recommend approval of $1,173,193.50 in fees ($1,174,226.00 minus $1,032.50) and $105,756.21 in expenses ($105,794.21 minus $38.00) for Reed Smith's services for the Application Period.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**

By: _____
    Warren H. Smith
    Texas State Bar No. 18757050

325 N. St. Paul, Suite 1275
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

**FEE AUDITOR**

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing document has been served by First Class United States mail to the attached service list on this 21st day of February, 2008.

_____
Warren H. Smith

## SERVICE LIST
<u>Notice Parties</u>

**The Applicant**
Kurt F. Gwynne
REED SMITH LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801

James J. Restivo, Jr.
Lawrence E. Flatley
Douglas E. Cameron
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
Wilmington, DE 19801

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
375 Park Avenue, 35th Floor
New York, NY 10152-3500

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE 19801

**Official Committee of Equity Holders**
Gary M. Becker
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

Teresa K.D. Currier, Esq.
Buchanan Ingersoll & Rooney
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
844 King Street, Lockbox 35, Room 2207
Wilmington, DE 19801

<u>**FEE AUDITOR'S FINAL REPORT**</u> - Page 9
wrg FR Reed Smith 26th 7-9.07.wpd

**RESPONSE EXHIBIT "A"**

2.      In Paragraph 4 of the Initial Report, the Fee Auditor noted that four Reed Smith professionals spent a total of 12.40 hours, for total fees of $6,326.50, attending an omnibus hearing on August 29, 2007. The Fee Auditor asked Reed Smith to explain the need for multiple attendees at this hearing.

3.      As Reed Smith has periodically explained to the Fee Auditor in the past, throughout Reed Smith's representation of Grace (both before and after Grace's bankruptcy filing), primary responsibility for specific subject areas and segments of the cases that Reed Smith has handled for Grace has been divided among Reed Smith professionals. Primary responsibility for specific subject areas and case segments have been divided among attorneys James J. Restivo, Jr., Lawrence E. Flatley and other Reed Smith attorneys for dealing with, among other things, responsibility over medical issues and experts, industrial hygiene issues and experts, microscopy issues and experts, regulatory issues and experts, Grace's historical documents and witnesses, document production and discovery issues, case-specific claims and facts, and damages.

4.      From almost the outset of this bankruptcy case, Reed Smith has had responsibility for litigating all of the Zonolite Attic Insulation ("ZAI") claims asserted against Grace; while the Bankruptcy Court granted partial summary judgment to Grace in a "ZAI Science Trial," the proceedings regarding those claims have not yet been fully resolved. More recently, Reed Smith has been given responsibility for handling the asbestos-related property damage claims that have been asserted against Grace in this bankruptcy proceeding. These property damage claims were asserted by claimants from a variety of jurisdictions in this country, as well as by claimants in Canada. While some of these property damage claims have been adjudicated through summary judgment motions argued in early- and mid-2007, others remain unresolved.

5.      In staffing both the ZAI Science Trial matters and the property damage matters, Reed Smith has applied the same type of division of responsibility that it used in its pre-bankruptcy representation of Grace. This division of responsibility was designed to avoid -- and has avoided -- duplication of effort, and was also intended to allocate direct responsibility for results. Thus, the occasional attendance of multiple Reed Smith professionals at certain meetings, hearings or conference calls during Grace's bankruptcy has often been necessary when the event in question covers topics within the areas of primary responsibility of more than one Reed Smith professional.

6.      So it was with respect to the August 29, 2007 omnibus hearing. Among the items scheduled for the hearing was a status report on the property damage claims litigation. Among the issues that were eligible for discussion during the report were several aspects of the property damage litigation that cut across Reed Smith's division of responsibility for that matter:

- First, the general details of progress and scheduling, which are normally handled by Mr. Restivo, who has primary responsibility for coordinating Reed Smith's overall work on

Case 01-01139-AMC    Doc 18091    Filed 02/21/08    Page 11 of 11

these claims.

C       Second, the status of certain claims asserted by claimants in California, including the State of California itself and Pacific Freeholds, both alleged owners of properties containing Grace asbestos-containing materials. Mr. Flatley has primary responsibility for these matters, and attended the hearing in order to respond to any issues raised by the Bankruptcy Court or any other party about them. (Importantly, because nothing in relation to these claims came up during Mr. Restivo's overall status report, Mr. Flatley stayed for only part of the hearing, leaving after the status report had ended.)

C       Third, a discovery dispute over the conduct of an expert witness deposition that was scheduled to proceed in Canada at the same time as the omnibus hearing, but which had been delayed due to objections by claimant's counsel who was taking the deposition. Mr. Restivo made and argued an oral motion to have the deposition proceed. Traci S. Rea, Mr. Restivo's partner, maintained constant phone contact with Grace's counsel (and the claimants' counsel) at that deposition prior to the hearing, to try to understand the issues raised by claimant's counsel over why the deposition should not proceed. She then attended the hearing to assist Mr. Restivo in arguing the motion, since she had the best grasp of the facts of the situation. Insofar as this discovery dispute was unforeseen, and insofar as the motion was made on an emergency basis, Mr. Restivo felt it best to have Ms. Rea's assistance during his argument. (Ms. Rea also has primary responsibility for certain property damage claims, and was prepared to report to the Court on those claims if any issues arose as to them.) Nevertheless, Ms. Rea stayed for only a portion of the hearing, departing at the end of the status report and the argument on the discovery dispute.

7.      Sharon A. Ament, a Reed Smith paralegal, also attended part of the August 29, 2007 Omnibus Hearing. Generally, when the Court conducts hearings in this case in Pittsburgh, Ms. Ament provides paraprofessional assistance to both the Reed Smith attorneys participating in the hearing and to Grace's bankruptcy counsel, Kirkland & Ellis LLP. Among Ms. Ament's duties during these hearings are to help the attorneys set up their materials in the courtroom, assist in organizing and managing documents and other materials and aids used during in-court presentations, and assistance with the courtroom's technical equipment. Ms. Ament provided these services to the Reed Smith and Kirkland & Ellis, LLP attorneys at the August 29, 2007 hearing, and stayed for only part of the hearing -- leaving after her duties had been completed.