THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al.,[1] | ) | Case No. 01-1139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Objection Deadline: TBD** |
| | ) | **Hearing Date: TBD** |

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING LIABILITY TRANSFER AGREEMENT FOR CERTAIN ENVIRONMENTAL LIABILITIES AND PROPERTIES

The Debtors respectfully move this Court (the "Motion") for the entry of an order authorizing a liability transfer of certain environmental liabilities and properties as outlined in the attached Agreement (as defined below), pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and granting the Debtors authority to consummate the transactions contemplated in the Agreement.    In support of the Motion, the Debtors respectfully state as follows:

---

[1]    The Debtors consist of the following 62 entities: W. R. Grace & Co. (f/k/a Grace Specialty Chemicals, Inc.), W. R. Grace & Co.-Conn., A-1 Bit & Tool Co., Inc., Alewife Boston Ltd., Alewife Land Corporation, Amicon, Inc., CB Biomedical, Inc. (f/k/a Circe Biomedical, Inc.), CCHP, Inc., Coalgrace, Inc., Coalgrace II, Inc., Creative Food 'N Fun Company, Darex Puerto Rico, Inc., Del Taco Restaurants, Inc., Dewey and Almy, LLC (f/k/a Dewey and Almy Company), Ecarg, Inc., Five Alewife Boston Ltd., G C Limited Partners I, Inc. (f/k/a Grace Cocoa Limited Partners I, Inc.), G C Management, Inc. (f/k/a Grace Cocoa Management, Inc.), GEC Management Corporation, GN Holdings, Inc., GPC Thomasville Corp., Gloucester New Communities Company, Inc., Grace A-B Inc., Grace A-B II Inc., Grace Chemical Company of Cuba, Grace Culinary Systems, Inc., Grace Drilling Company, Grace Energy Corporation, Grace Environmental, Inc., Grace Europe, Inc., Grace H-G Inc., Grace H-G II Inc., Grace Hotel Services Corporation, Grace International Holdings, Inc. (f/k/a Dearborn International Holdings, Inc.), Grace Offshore Company, Grace PAR Corporation, Grace Petroleum Libya Incorporated, Grace Tarpon Investors, Inc., Grace Ventures Corp., Grace Washington, Inc., W. R. Grace Capital Corporation, W. R. Grace Land Corporation, Gracoal, Inc., Gracoal II, Inc., Guanica-Caribe Land Development Corporation, Hanover Square Corporation, Homco International, Inc., Kootenai Development Company, L B Realty, Inc., Litigation Management, Inc. (f/k/a GHSC Holding, Inc., Grace JVH, Inc., Asbestos Management, Inc.), Monolith Enterprises, Incorporated, Monroe Street, Inc., MRA Holdings Corp. (f/k/a Nestor-BNA Holdings Corporation), MRA Intermedco, Inc. (f/k/a Nestor-BNA, Inc.), MRA Staffing Systems, Inc. (f/k/a British Nursing Association, Inc.), Remedium Group, Inc. (f/k/a Environmental Liability Management, Inc., E&C Liquidating Corp., Emerson & Cuming, Inc.), Southern Oil, Resin & Fiberglass, Inc., Water Street Corporation, Axial Basin Ranch Company, CC Partners (f/k/a Cross Country Staffing), Hayden-Gulch West Coal Company, H-G Coal Company.

## Jurisdiction

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for this Motion are sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3.     The Debtors own certain former industrial properties that are not in active use and that carry certain remedial obligations and liabilities arising from environmental contamination. By this Motion, the Debtors seek to enter into an agreement to dispose of ten such properties, namely those located in:  Charleston, SC; Owensboro, KY; Guanica, Puerto Rico; Woburn, MA; Waterloo, NY; Atlanta, GA; Memphis, TN; Fort Pierce, FL; Joplin, MO; and Travelers Rest, SC (collectively, the "Properties"). The Properties range in size from 5 to 180 acres with varying degrees of environmental contamination.

4.     In order to remove such liabilities from the Debtors' estates and establish a clean slate for moving forward, the Debtors have worked to identify an entity that is prepared and suitably qualified to take on the liabilities associated with the Properties.

5.     The Debtors began an extensive search and evaluation process in September 2006. Ten national environmental liability transfer companies were contacted and asked to provide statements of interest; responses were received from seven. The Debtors interviewed six of the interested candidates and requested a bid for the Properties. Only four bids were received in January 2007. After review and analysis, the Debtors invited three of the companies to participate in an additional interview for further discussion and clarification concerning

components of the bids.  Only two companies participated in the interview process which took place in late February and early March, 2007.

6.    After this extensive process, in March 2007, the Debtors selected Environmental Liability Transfer, Inc. (ELT) as the preferred partner for this transaction based on cost, financial viability, and expertise in similar environmental liability transfer projects.  The parties entered into a non-binding letter of intent in May 2007, since which time each of the parties has been conducting due diligence investigations and negotiating the terms of a final liability transfer agreement.  The Debtors conducted an extensive due diligence of ELT, including its financial wherewithal to assume the liabilities associated with the Properties.[2]    Additionally, ELT conducted extensive due diligence regarding the environmental conditions at the Properties to be transferred.

7.    On February 22, 2008, the Debtors, ELT, and ELT's parent company, Commercial Development Corporation (CDC)[3] (collectively, the "Parties") entered into the liability transfer agreement (the "Agreement") attached hereto as Exhibit A that is the subject of this Motion.

### The Agreement

8.    The significant terms of the Agreement, which the Parties have entered into and which is expressly subject to this Court's approval, are as follows:[4]

---

[2]    Indeed, the Debtors filed an application to retain Deloitte Financial Advisory Services LLP ("Deloitte FAS"), which application the Court approved on November 26, 2007, so that Deloitte FAS could provide services to the Debtors relating to a due diligence investigation in connection with the Transferee Parties and the disposition and settlement of certain environmental liabilities associated with the Properties.

[3]    ELT is beneficially owned by two individuals.  ELT and CDC collectively oversee the development and operation of each affiliate.

[4]    The summary of the terms of the Agreement set forth herein is provided solely for the convenience of the Court and parties in interest.  Nothing in this Motion is intended to modify or otherwise alter the terms of the Agreement.  To the extent there is any conflict between the summary set forth herein and the Agreement, the Agreement shall govern.  A diagram of the terms of the Agreement is also included as Exhibit B hereto.

a. Assumption of Environmental Liabilities and Title Transfer: The Agreement provides that the Debtors will transfer all of the environmental liabilities associated with the Properties to be held in perpetuity by ELT or its affiliates (collectively, the "Transferee Parties"). To effect this transfer, the Debtors will transfer ownership of the properties to the Transferee Parties. Under the Agreement, all of the Debtors' environmental remedial liabilities at the Properties (including all environmental issues known, unknown, above grade, at grade, below grade, onsite, and/or offsite whether the contamination occurred in the past, present, or future) and Pollution Legal Liabilities[5] will be transferred to Transferee Parties in perpetuity.

b. Transaction Price: The Agreement calls for $2.5 million to be paid by ELT to the Debtors upon closing. Additionally, 40% of the sale proceeds from the sale of any of the Properties (except for Charleston, South Carolina which is treated as described below) shall be allocated to the Debtors such that the total consideration received by the Debtors for the Properties equals $4.359 million.

c. Trust: The Agreement also calls for the establishment of a trust (the "Trust") to secure performance of ELT's obligations under the Agreement. ELT shall be obligated to make an initial transfer to the Trust in the amount of $2.5 million within 180 days of effective date of the Agreement. Additionally, a portion of the sale proceeds from the sale of any of the Properties (except for Charleston, South Carolina which is treated as described below) shall be

---

[5] Terms not defined herein shall have the meaning ascribed to them in the Agreement.

allocated to the Trust (as specified in the Agreement) such that deposits to the Trust will total $11 million. Use of the funds in the Trust will be governed by the terms of the Trust Agreement which provides for distribution of funds to reimburse expenditures or Clean-Up Costs and premiums for Pollution Legal Liability.

d. <u>Proceeds from sale of Charleston, South Carolina</u>: The sale proceeds from the sale of the Charleston, South Carolina Property shall be allocated as follows: (i) if the Transferee Parties elect to use $2.5 million from the sale proceeds of Charleston, South Carolina to fund the Trust, the next $500,000 (or portion thereof) in sale proceeds shall be allocated as follows: 40% to the Debtors, 35% to the Trust, and 25% to the Transferee Parties, or (ii) the Transferee Parties will allocate $3 million of the sale proceeds (or less if the sale is for less than $3 million) as follows: 40% to the Debtors, 35% to the Trust, and 25% to the Transferee Parties. Sale proceeds in excess of $3 million shall be shared equally between the Debtors and the Transferee Parties with no requirement than any of these monies be deposited into the Trust.

e. <u>Mortgages</u>: At Closing, Transferee Parties will grant mortgages on three properties -- Atlanta, GA; Fort Pierce, FL; and Woburn, MA. If proceeds of sales are allocated as provided for in the Agreement, the Debtors shall release the mortgages, upon request by ELT, at the time of sale by ELT of the respective Properties.

f. <u>Right of Reentry</u>: Pursuant to the terms of Agreement, the Debtors retain a right of re-entry onto the Properties under certain specified circumstances

such as the failure of the Transferee Parties to perform remedial work or the use of property in violation of deed restrictions.

g. <u>Assignment of Licenses, Permits and Contracts</u>:  Pursuant to the terms of the Agreement, the Debtors agree to transfer and assign to the Transferee Parties all of their interests in any permits, licenses and contracts related to the use, operation, maintenance and/or clean-up of the Properties.

h. <u>Releases</u>:  The Transferee Parties, for themselves and certain other specified parties, completely and irrevocably release and forever discharge the Debtors and their affiliates from any and all past, current, future and contingent Costs of any and every kind and nature, whether currently known or unknown, excepting only the Excluded Matters and the obligations of the Debtors under the Agreement.

i. <u>Indemnification</u>:    The Transferee Parties jointly and severally shall be responsible for, and shall indemnify, the Debtors and their affiliates from and against any and all Costs, excepting only the Excluded Matters.

**Relief Requested**

9.    By this Motion, the Debtors respectfully seek the entry of an order, pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, (i) approving the Debtors' execution of the Agreement and Trust Agreement; (ii) granting the Debtors authority to consummate the transactions contemplated in the Agreement; and (iii) granting such other relief as may be appropriate.

**Basis for Relief**

**Sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a)**

10.     This Court has the statutory authority to authorize and approve the Agreement, pursuant to Bankruptcy Code sections 105(a) and 363(b) and Bankruptcy Rule 9019.

11.     Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

12.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. §363(b)(1). This Court may authorize the Debtors to use or sell property of the estates pursuant to section 363(b)(1) of the Bankruptcy Code if such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175 (D. Del. 1991); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-50 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also In re Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by some "articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

13.     Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. Pro. 9019(a). Settlements and compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.

<u>Anderson</u>, 390 U.S. 414, 424 (1968) (citations omitted). Indeed, compromises are favored in bankruptcy since they minimize litigation and expedite the administration of a bankruptcy case. <u>See</u> <u>In re Martin</u>, 91 F.3d at 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy, 9019.03[1] (15th ed. 1993)); <u>see also In re Key3Media Group, Inc.</u>, 2006 WL 2842462, at *3 (D. Del. 2006).

14.    Before approving a settlement under Bankruptcy Rule 9019, however, a court must determine that the proposed settlement is in the best interests of the debtor's estate. <u>See</u> <u>Martin</u>, 91 F.3d at 394; <u>In re Marvel Entm't Group, Inc.</u>, 222 B.R. 243, 249 (D. Del. 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted). To reach this determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. <u>See</u> <u>Martin</u>, 91 F.3d at 393. Settlements should be rejected only if they fall "below the lowest point in the range of reasonableness." <u>Cosoff v. Rodman</u> (<u>In re W.T. Grant Co.</u>), 699 F.2d 599, 608 (2d Cir. 1983).

15.    The standard by which courts should evaluate the reasonableness of a proposed compromise and settlement is well established. This standard includes consideration of the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." <u>Martin</u>, 91 F.3d at 393; <u>see also</u> <u>In re Nutraquest, Inc.</u>, 434 F.3d 639, 644-45 (3d Cir. 2006).

16.    It is also well-settled that a proposed settlement need not be the best result that the debtor could have achieved, but only must fall "within the reasonable range of litigation possibilities." <u>Key3Media Group</u>, 2006 WL 2842462, at *3; <u>In re World Health Alternatives, Inc.</u>, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (<u>citing</u> <u>In re Penn Cent. Transp. Co.</u>, 596 F.2d

1102, 1114 (3d Cir. 1979)).    Under this test, a proponent must simply demonstrate that a proposed settlement does not fall "below the lowest point in the range of reasonableness." World Health Alternatives, 344 B.R. at 296 (citations omitted); see also In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986).

### Application of Standards for Approval of a Settlement to the Facts of This Case

17.    The Debtors have determined that entry into the Agreement is in the best interests of the Debtors and their estates and serves a public interest.    The Agreement was the product of a rigorous negotiation process and is fair and reasonable.

18.    The Agreement cost-effectively resolves significant environmental liabilities of the Debtor.    This Court's approval of the Agreement will eliminate over $12.5 million in environmental liabilities of the Debtors in perpetuity and transfer ownership of the Properties. Furthermore, this Agreement allows the Debtors to avoid potential additional or increased obligations.    It will minimize the potential for any future claim concerning the Debtors' responsibility for remediation or other environmental liability with respect to the Properties.

19.    Finally, approval of the Agreement benefits the public.    Approval of the Agreement will support the remediation of the Properties.    The Agreement provides assurance to the creditors that environmental liabilities associated with the Properties are or will be fully addressed and therefore serves the public interest.

20.    Any result other than this Agreement would not comprehensively resolve the Debtors' liabilities, would likely be more costly and not as efficient, and would take several months if not years to negotiate.

21.    For the above reasons, the Debtors believe that the Agreement represents a reasonable approach to eliminating liability and thus supports the goals of reorganization. Therefore, the Court should approve the Agreement.

## Conclusion

22.     The Agreement is fair and equitable and in the best interests of the Debtors, their estates, and their creditors, and also in the public interest.  In addition, the Debtors reasonably believe that the relief requested in this Motion will aid in the expeditious resolution of these Chapter 11 Cases.  Accordingly, the Debtors have demonstrated a sound business justification and public interest for the execution and consummation of the Agreement.

## Notice

23.     Notice of this Motion has been given to:  (i) the office of the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to The Chase Manhattan Bank as agent for the Debtors' prepetition lenders, (iv) counsel to each of the official committees appointed in these Chapter 11 Cases, (v) counsel to the Future Claimants' Representative; (vi) those parties that requested service and notice of papers in accordance with Fed. R. Bankr. P. 2002; (vii) counsel to the United States; (viii) counsel to the City of Charleston, South Carolina, and (ix) ELT and CDC.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

24.     In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

25.     No prior motion or application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached as Exhibit C hereto, (i) approving the Debtors' execution of the Agreement attached as Exhibit A hereto; (ii) approving the Debtors' execution of the Trust Agreement; (iii) authorizing the Debtors to consummate the transactions contemplated thereby, and (iv) granting such other relief as may be just or proper.

Dated: February 22, 2008

KIRKLAND & ELLIS LLP
David M. Bernick, P.C.
Janet S. Baer
Lori Sinanyan
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

and

PACHULSKI STANG ZIEHL & JONES LLP


Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(302) 652-4100

Co-Counsel for the Debtors and Debtors in Possession