FOLIO CIENTO TREINTA Y OCHO                    (138)

4

West by lands segregated from this parcel. The geometrical description is as follows: Starting from Point number one (#1), which is a point of fencing on the Southeast corner of the parcel, South eighty-eight (88) degrees ten (10) minutes eight (8) seconds West, nineteen point eight hundred nine (19.809) meters, bounded by land of Puerto Rico Ports Authority to Point number two (#2), from this point North fifty-six (56) degrees eighteen (18) minutes fourteen (14) seconds West thirteen point eight hundred three (13.803) meters following the same boundary line to Point B, from this point North nineteen (19) degrees forty-seven (47) minutes fifty-five (55) seconds East and a distance of one point forty-seven (1.470) meters to Point number sixty-two (62), from this point North, nineteen (19) degrees, thirty (30) minutes thirty-two (32) seconds East and a distance of thirty-three point five hundred thirty-seven (33.537) meters to Point number sixty-one (61), form this point North, nineteen (19) degrees, thirty-six (36) minutes, fifty-eight (58) seconds East and a distance of ninety-one point five hundred thirty-five (91.535) meters to Point sixty (60), from this point North five (5) degrees forty-six (46) minutes fourteen (14) seconds East and a distance of nine point fifty-once (9.51) meters to Point fifty-nine (59), from this point North twenty-five (25) degrees, forty-seven (47) minutes fifty (50) seconds West and a distance of three point two hundred three (3.203) meters to Point number fifty-eight (58), from this point South sixty-six (66) degrees, thirty-eight (38) minutes five (5) seconds East and a distance of twenty-one point seventy-six (21.76) meters to Point number fifty-six (56), form this point, South thirteen (13) degrees, eighteen (18) minutes thirty-six (36) seconds West and a distance of one hundred thirty point seventy-seven (133.77) meters to Point number one (#1), which was the starting point of this description." ---------------------

-----The aforementioned is the description after

effecting a segregation pursuant to Deed of

Protocolization of Deed of Segregation, Number One

(1) executed on April twenty-three (23), nineteen

hundred ninety-nine (1999) before Notary Vanessa

Aymerich Conde.  The Main Parcel is recorded in

the Registry at page sixty-six (66) of volume

twenty-nine (29) of Guánica, property number four

hundred twenty-eight (428), first inscription. --

-----The Main Parcel was acquired by Seller

pursuant to Deed Number eighteen (18) executed on

July twenty-three (23), nineteen hundred ninety-



ROBERTO J. TORRES ANTOMM...

ABOGADO-NOTARIO

FOLIO CIENTO TREINTA Y NUEVE                (139)

5

four (1994) before Notary Salvador Casellas Toro, a certified copy of which is pending recordation in the Registry at entry 363 of volume 486 of the Book of Daily Entries of Guánica. ----------------

---SECOND:   <u>Liens and Encumbrances</u>.   The Main Parcel is subject to the following liens and encumbrances of record. --------------------------

-----(a)   The parcel from which parcels One (1) and Two (2) above described were segregated is encumbered with right-of-way easements, an aqueduct easement and another right-of-way easement for a railroad in favor of a parcel of two hundred and forty-seven cuerdas and sixty-two hundredths of a cuerda (247.62), but according to the Deed of Sale, these easements do not in fact physically encumber, nor affect the Main Parcel.

-----(b)   By its origin, the parcel identified above with number Two (2) is encumbered by an easement constituted by deed number twenty-four (24) executed on the twenty-second (22nd) day of July, nineteen hundred and fifty-five (1955) before Notary Public Antonio Riera, for the maintenance and conservation in perpetuity of an irrigation canal. -----------------------------

-----(c) By itself, the Main Parcel is subject to an easement in favor of the Puerto Rico Water Resources Authority, now the Puerto Rico Electric Power Authority, recorded in the Registry at page sixty-five (65) of volume twenty-nine (29) of Guánica. -----------------------------------------

-----(d)  By itself, the Main Parcel is subject to a right-of-way easement in favor of property number four thousand seven hundred eight (4,708)



ROBERTO J. TORRES ANTOMMATTEI

ABOGADO-NOTARIO

FOLIO CIENTO CUARENTA                                    (140)

6

constituted pursuant to deed number five (5) executed on the eighth (8th) day of May, nineteen hundred and eighty-nine (1989) before Notary Public Julio V. Rodríguez Vilá, recorded in the Registry at page twenty-two (22) of volume seventy-eight (78) of Guánica. ------------------
-----(e) By itself, the Main Parcel is subject to a right of way easement in favor of the Puerto Rico Electric Power Authority, constituted pursuant to Constitution of Easement Document which is pending recordation in the Registry at entry 293 of volume 620 of the Book of Daily Entries of Guánica. ----------------------------

-------------RECTIFICATION OF AREA ------------
---THIRD: That the Main Parcel was subject to a survey by the Land surveyor, Hector A. Cruz Sánchez, license number seven one eight two (7182) and with the previous notice to all adjacent owners, the parcel identified above as Rustic number Three turn out with a measure of one point one thousand four hundred ninety-six (1.1496) cuerdas. Attached to the first certified copy of this Deed is a Survey Certificate ("Certificación de Mensura") from the land surveyor Hector A. Cruz Sánchez, dated April 10th, 2003 subscribed under affidavit number 3905 before the undersigned attorney. ----------------------------------------
---FOURTH: Pursuant to the Survey Prepared by such land surveyor, the correct measurement of the area such parcel is as follows: -----------------
---THREE: RUSTIC: Parcel of land located in the Carenero Ward of the Municipality of Guánica,



ROBERTO TORRES ANTOMMATTE

ABOGADO-NOTARIO

FOLIO CIENTO CUARENTA Y UNO          (141)

7

Puerto Rico, with an area of one point one thousand four hundred ninety-six (1.1496) cuerda, equivalent ,to four thousand five hundred twenty three point one eight zero eight (4,523.1808) square meters, and bounded on the North by a road leading to State Highway number three hundred thirty-three (#333), on the South by lands of Puerto Rico Ports Authority, on the East by State Highway number three hundred thirty-three (#333), kilometer one (1), hectometer nine (9), and on the West by lands segregated from this parcel. The geometrical description is as follows: Starting from Point number one (#1), which is a point of fencing on the Southeast corner of the parcel, South eighty-eight (88) degrees ten (10) minutes eight (8) seconds West, nineteen point eight hundred nine (19.809) meters, bounded by land of Puerto Rico Ports Authority to Point number two (#2), from this point North fifty-six (56) degrees eighteen (18) minutes fourteen (14) seconds West thirteen point eight hundred three (13.803) meters following the same boundary line to Point B, from this point North nineteen (19) degrees forty-seven (47) minutes fifty-five (55) seconds East and a distance of one point forty-seven (1.470) meters to Point number sixty-two (62), from this point North, nineteen (19) degrees, thirty (30) minutes thirty-two (32) seconds East and a distance of thirty-three point five hundred thirty-seven (33.537) meters to Point number sixty-one (61), form this point North, nineteen (19) degrees, thirty-six (36) minutes, fifty-eight (58) seconds East and a distance of ninety-one point five hundred thirty-five (91.535) meters to Point sixty (60), from this point North five (5) degrees forty-six (46) minutes fourteen (14) seconds East and a distance of nine point fifty-once (9.51) meters to Point fifty-nine (59), from this point North twenty-five (25) degrees, forty-seven (47) minutes fifty (50) seconds West and a distance of three point two hundred three (3.203) meters to Point number fifty-eight (58), from this point South sixty-six (66) degrees, thirty-eight (38) minutes five (5) seconds East and a distance of twenty-one point seventy-six (21.76) meters to Point number fifty-six (56), from this point, South thirteen (13) degrees, eighteen (18) minutes thirty-six (36) seconds West and a distance of one hundred thirty point seventy-seven (133.77) meters to Point number one (#1), which was the starting point of this description." ----------------------

---FIFTH: The explanation for such difference in measure is the lack of precision of the instruments used in the original survey and measure of the parcel. --------------------------

---SIXTH: The description of the Main Parcel after the rectification of area of the parcel identified above as Rustic number Three shall be

ROBERTO J. TORRES ANTOMMATTEI

ABOGADO-NOTARIO

FOLIO CIENTO CUARENTA Y DOS                    (142)

8

as follows: -----------------------------------

----"RUSTIC: Parcel of land located in the Carenero Ward of Guánica, Puerto Rico, consisting of one hundred and eight point three six eight four (108.3684) cuerdas, equivalent to four hundred twenty-five thousand nine hundred and thirty point six eight five two (425,930.6852) square meters; composed of three (3) parcels physically separated from each other, except that number one (#1) and number two (#2) are connected by an aqueduct servitude and these parcels shall be utilized for the development of an industry with a common administration center and interdependent of each other, and they are described separately as follows: -----------------------------------

---ONE: RUSTIC: Parcel of land located in the Carenero ward of the municipality of Guánica, Puerto Rico, consisting of one hundred six point two one eight eight (106.2188) cuerdas, equivalent to four hundred seventeen thousand four hundred eighty-five point two seven six three (417,485.2763) square meters.  Bounded on the North, by the main parcel from which it is segregated belonging to the Land Authority of Puerto Rico and in part by that portion of the main parcel which is the parcel of two (2) cuerdas three hundred eighty-eight (388) hundredths of a cuerda, to be sold by the Land Authority to the Puerto Rico Industrial Development company; on the South and East, with land of the Insular Forest Reservation of the Commonwealth of Puerto Rico, Puerto Rico Electric Power Authority and a parcel segregated from this parcel owned by Guánica-Caribe Land Development Corporation; and on the West, with state Highway number three hundred thirty-three (#333). --------------------------



ROBERTO J. TORRES ANTOMMATTEI

ABOGADO-NOTARIO

---TWO: RUSTIC: Parcel of land located in the Carenero ward of the municipality of Guánica, Puerto Rico, with a surface area of one (1) cuerda, equivalent to thirty-nine (39) miliareas, bounded on the North, South, East and west, by land of the main parcel from which it is segregated belonging to the Land Authority of Puerto Rico.  The main irrigation canal which forms part of the irrigation system of the main parcel from which this parcel is segregated crosses this parcel.  The geometric description of this parcel of land is as follows: starting from Point number one (#1), a market on the Northeast corner of the parcel, South forty-five (45) degrees, nineteen (19) minutes East, sixty-two point sixty-nine (62.69) meters bounded by land of the Land Authority of Puerto Rico to Point number two (#2); a marker on the Southeast corner of the parcel; from here South forty-four (44) degrees forty-one (41) minutes East sixty-two (62) meters sixty-nine (69) centimeters bounded by land of the Land Authority of Puerto Rico to point number three (#3), marker on the Southwest corner of the parcel; from here North forty-five (45) degrees, nineteen (19) minutes west sixty-two point sixty-nine (62.69) meters bounded by land of the Land Authority of Puerto Rico to Point number four

FOLIO CIENTO CUARENTA Y TRES                                    (143)

9

(#4), a marker on the Northwest corner of the
parcel, from here North forty-four (44) degrees,
forty-one (41) minutes East sixty-two point sixty-
nine (62.69) meters bounded by the twelve point
zero zero (12.00) meters wide road belonging to
the Central Guánica to Point number one (#1) which
was the starting point of this description. -----

---THREE: RUSTIC: Parcel of land located in the
Carenero ward of the municipality of Guánica,
Puerto Rico, with an area of one point one
thousand four hundred ninety-six (1.1496) cuerda,
equivalent to four thousand five hundred twenty
three point one eight zero eight (4,523.1808)
square meters, and bounded on the North by a road
leading to state Highway number three hundred
thirty-three (#333), on the South by lands of
Puerto Rico Ports Authority, on the East by State
Highway number three hundred thirty-three (#333),
kilometer one (1), hectometer nine (9), and on the
west by lands segregated from this parcel.  The
geometrical description is as follows: starting
from Point number one (#1) , which is a point of
fencing on the Southeast corner of the parcel,
South eighty-eight (88) degrees ten (10) minutes
eight (8) seconds west, nineteen point eight
hundred nine (19.809) meters, bounded by land of
Puerto Rico Ports Authority to Point number two
(#2), from this point North fifty-six (56) degrees
eighteen (18) minutes fourteen (14) seconds West
thirteen point eight hundred three (13.803) meters
following the same boundary line to Point B, from
this point North nineteen (19) degrees forty-seven
(47) minutes fifty-five (55) seconds East and a
distance of one point forty-seven (1.470) meters
to Point number sixty-two (62), from this point
North, nineteen (19) degrees, thirty (30) minutes
thirty-two (32) seconds East and a distance of
thirty-three point five hundred thirty-seven
(33.537) meters to Point number sixty-one (61),
from this point North, nineteen (19) degrees,
thirty-six (36) minutes, fifty-eight (58) seconds
East and a distance of ninety-one point five
hundred thirty-five (91.535) meters to Point sixty
(60), from this point North five (5) degrees
forty-six (46) minutes fourteen (14) seconds East
and a distance of nine point fifty-one (9.51)
meters to Point fifty-nine (59), from this point
North twenty-five (25) degrees, forty-seven (47)
minutes fifty (50) seconds west and a distance of
three point two hundred three (3.203) meters to
Point number fifty-eight (58), from this point
South sixty-six (66) degrees, thirty-eight (38)
minutes five (5) seconds East and a distance of
twenty-one point seventy-six (21.76) meters to
Point number fifty-six (56), from this point,
South thirteen (13) degrees, eighteen (18) minutes
thirty-six (36) seconds west and a distance of one
hundred thirty point seventy-seven (133.77) meters
to Point number one (#1), which was the starting
point of this description. ----------------------

------------------SEGREGATION ------------------

---SEVENTH: Segregation. In accordance with (i)



ROBERTO J. TORRES ANTOMMATTEI

ABOGADO-NOTARIO

FOLIO CIENTO CUARENTA Y CUATRO          (144)

10

the    segregation    permits    (hereinafter    the
"Permits") issued by the Regulations and Permits
Administration (hereinafter "ARPE") on July fist
(1st), two thousand two (2002), and July tenth
(10th), two thousand two (2002), in Cases Numbers
Zero Two LS Seven dash Zero Zero Zero Zero Zero
dash Zero One Eight Two Nine (02LS7-00000-01829),
and Zero Two LS Seven dash Zero Zero Zero Zero
Zero dash Zero Two Seven One Seven (02LS7-00000-
02717), respectively, certified copies of which
will be attached to the first certified copy of
this Deed, and (ii) the Inscription Plans prepared
and certified by Hector A. Cruz Sánchez (the
"Inscription Plans") and approved by ARPE on July
first (1st), two thousand two (2002) and July tenth
(10th), two thousand two (2002), which will be
attached to the first certified copy of this Deed,
Seller hereby segregates from the Main Parcel the
following    parcels    of    land    (hereinafter
collectively    referred    to    as    the    "Property")
described as follows: --------------------------



---PARCEL A: RUSTIC: Parcel of land located in
the Carenero Ward of the Municipality of Guánica,
Puerto Rico, with a surface area of 3,930.3956
square meters equivalent to one (1) cuerda,
bounded on the North, South, East and West, by
land of the main parcel from which it is
segregated belonging to the Land Authority of
Puerto Rico. --------------------------------------

---Parcel One (1): RUSTIC: Parcel of land
located in the Carenero Ward of the Municipality
of Guánica, Puerto Rico, with an area of 3374.2398
square meters equivalent to eight thousand five
hundred eighty five (8,585) ten thousandths of a
cuerda, and bounded on the North by Parcel for
Public Use "B", on the South by lands of Ochoa
Fertilizer, on the East by Parcel for Public Use
"A", and on the West by a street leading to lands
of Ochoa Fertilizer. -------------------------------

---Parcel For Public Use "A": RUSTIC: Parcel of
land to be dedicated by Purchase for public use
located in the Carenero Ward of the Municipality

FOLIO CIENTO CUARENTA Y CINCO                    (145)

11

of Guánica, Puerto Rico, with an area of 1145.4280 square meters equivalent to two thousand nine hundred (2,900) ten thousandths of a cuerda, and bounded on the North by a road leading to state Highway number three hundred thirty three (333), on the South by lands of the Puerto Rico Ports Authority on the East by State Highway number three hundred thirty three (#333) and on the West by the Parcel One (1) segregated from the Main Parcel. ----------------------------------------

---Parcel for Public Use "B": RUSTIC: Parcel of land to be dedicated by Purchaser for public use located in the Carenero Ward of the Municipality of Guánica, Puerto Rico, with an area of 3.513 square meters equivalent to one (1) ten thousandths of a cuerda, bounded on the North by a road leading to State Highway three hundred thirty three (333), on the South by Parcel of land One (1) segregated from the Main Parcel; on the East by state highway number three hundred thirty three (333), and on the West by a street and lands segregated from the Main Parcel. -----------------

---A true and correct geometric description of the Property appears on the Inscription Plans. -------

---The remnant of the Main Parcel after the segregation of the Property (hereinafter the "Remnant Parcel") is described as follows: -------

----RUSTIC: Parcel of land located in the Carenero Ward of the municipality of Guánica, Puerto Rico, consisting of one hundred six point two one eight (106.2188) cuerdas, equivalent to four hundred seventeen thousand four hundred eighty-five point two seven six three (417,485.2763) square meters. Bounded on the North, by the main parcel from which it is segregated belonging to the Land Authority of Puerto Rico and in part by that portion of the main parcel which is the parcel of two (2) cuerdas three hundred eighty-eight (388) hundredths of a cuerda, to be sold by the Land Authority to the Puerto Rico Industrial Development company; on the South and East, with land of the Insular Forest Reservation of the Commonwealth of Puerto Rico, Puerto Rico Electric Power Authority and a parcel segregated from this parcel owned by Guánica-Caribe Land Development Corporation; and on the West, with state Highway number three hundred thirty-three (#333). ----------------------------

--------------PURCHASE AND SALE---------------

---EIGHTH:  Sale of the Property. ----------------

-----The Seller hereby sells to the Purchaser, and the Purchaser hereby purchases from the Seller, the Property, together with all of its rights,



ROBERTO J. TORRES ANTOMMATTEI

ABOGADO-NOTARIO

FOLIO CIENTO CUARENTA Y SEIS                                      (146)

12

easements, improvements, structures, buildings and
appurtenances without any limitation whatsoever,
for the purchase price of TWENTY-FIVE THOUSAND
DOLLARS ($25,000.00) (the "Purchase Price") which
has been paid by the Purchaser to the Seller prior
to the date hereof and receipt of which is hereby
acknowledged by the Seller.  The Purchase Price is
apportioned among the Property as follows:  Parcel
A, the amount of Twelve Thousand Five Hundred
($12,500.00), and Parcel One (1), the amount of
Twelve Thousand Three Hundred ($12,300.00). Parcel
for Public Use "A" and Parcel for Public use "B",
one hundred (100) each. --------------------------
---NINTH;  Condition of the Property.  Prior to
the execution of this Deed, the Purchaser has had
the opportunity to conduct the inspections in
connection with the Property that Purchaser has
deemed necessary or convenient.  Therefore, the
Purchaser hereby takes and accepts the Property
"as-is", without reliance on any representations,
warranties or guarantees, either express or
implied, of Seller or its employees or agents, in
connection with the Property, including, without
limitation, as to the condition (including
environmental condition), area zoning, state of
repair, fitness, suitability or adequacy for a
particular use or compliance with laws,
regulations and ordinances.----------------------
---Purchaser knowingly waives any and all rights
it may have with respect to apparent, hidden, or
latent defects related to the Property and
releases Seller from any and all obligations and
liabilities that Seller may have with respect to



FOLIO CIENTO CUARENTA Y SIETE                                (147)

13

all such apparent, hidden or latent defects. ----
----------DEDICATION TO PUBLIC USE------------
---TENTH: Dedication to Public Use. As required
under the Permit, Purchaser hereby dedicates
Parcel for Public Use "A" and Parcel for Public
Use "B" to public use.   Purchaser agrees to
execute any and all documents necessary or
appropriate to effect such dedication, including,
without limitation, if required by the Registry of
Property, deeds of conveyance with the appropriate
governmental authority having jurisdiction over
such parcels.------------------------------------
----------CONSTITUTION OF EASEMENTS-------------
---ELEVENTH:   The Ochoa Easement.    In
consideration for the purchase Price, Seller
hereby constitutes a real easement ("servidumbre
predial") upon the Remnant Parcel, as servient
tenement (predio sirviente), in favor of Parcel A
and Parcel One (1) ("collectively the Ochoa
Property"), as dominant tenement ("predio
dominante"), such easement to run with and
constitute a lien on the Remnant Parcel for the
following uses and in accordance with the
following terms and conditions: ------------------
-----One.  The easement (the "Ochoa Easement")
shall give the owner or owners of the Ochoa
Property for itself (themselves) and its (their)
respective employees, agents, guests, invitees,
successors, assignees and transferees the right to
keep the Water Tank (as hereinafter defined) and
the part of the Water Pipelines (as hereinafter
defined) which are located on the Remnant Parcel
at their present location on the Remnant Parcel



ROBERTO J. TORRES ANTON··
ABOGADO-NOTARIO

FOLIO CIENTO CUARENTA Y OCHO                    (148)

14

and to have access through the PREPA Easement
Parcel (as hereinafter·defined) to provide for the
maintenance and repair of the Water Pipelines and
the Water Tank. ---------------------------------
-----Two.   The Water Tank as used herein, shall
mean that certain water tank owned by Purchaser
located on the Remnant Parcel. The portion of the
Remnant Parcel where the Water Tank is located is
more particularly identified in the Plan for Right
of Way Easement, Access Road and Water Pipeline
prepared by Rafael Olivencia Llanova (the "Water
Tank Easement Plans") a copy of which is attached
hereto. ------------------------------------------
-----Three.   The Water Pipelines as used herein,
shall. mean those  certain  water  pipelines
identified in the Water Tank Easement Plans
attached hereto, which are owned by Purchaser and
are located on the Ochoa Property, ·the Remnant
Parcel and other properties. The portion of the
Remnant Parcel where the Water Pipelines are
located is the tract of land having an area of six
thousand nine hundred and sixty-four point eight
two (6,964.882) square meters, which is more
particularly described in the Water Tank Easement
Plans. -------------------------------------------
-----Four.   The PREPA Easement Parcel as used
herein, shall mean that certain road located on
the Remnant Parcel, covering a portion of the
Remnant Parcel consisting of a tract of land
having an area of one thousand eight hundred
ninety-four point five three one (1,894.531)
square meters, which is more particulary described
in the Water Tank Easement Plans. ----------------



ROBERTO-L-TORRES ANTOMMATTE.

ABOGADO-NOTARIO

FOLIO CIENTO CUARENTA Y NUEVE                    (149)

15

-----Five.  The owner of the Remnant Parcel may,
at its sole cost and expense, make connections to
the Water Pipelines and/or the Water Tank and use
water therefrom for any lawful purpose, subject to
the availability of said water after the Purchaser
has met its reasonable water requirements in
connection with its business.  The owner of the
Ochoa Property shall not be liable to the owner of
the Remnant Parcel in the event there is
insufficient water, after meeting the former's
reasonable water requirements in connection with
its business, to meet the water requirements of
the owner of the Remnant Parcel.  Before the owner
of the Remnant Parcel commences using water
pursuant to the GCL Easement, as hereinafter
defined, the owners of the Ochoa Property and of
the Remnant Parcel shall each install at their own
expense, and thereafter maintain and monitor at
their own expense, water meters that will measure
the amount of water used by each that was
extracted from the wells located on Parcel A.  The
owner of the Remnant Parcel shall reimburse the
owner of the Ochoa Property for such water
consumption at the same rate per gallon, if any,
that the owner of the Ochoa Property is required
to pay to the Natural Resources Department for the
extraction of water from the wells located at the
Ochoa Property.  The owner of the Ochoa Property
shall be responsible for maintaining the Water
Pumps (as hereinafter defined), the Water
Pipelines and the Water Tank at its own cost and
expense, except that the owner of the Remnant
Parcel shall reimburse the owner of the Ochoa

ROBERTO J. TORRES ANTONNA

ABOGADO-NOTARIO

FOLIO CIENTO CINCUENTA                                    (150)

16

Property within thirty (30) days after receipt of written request, for the increased cost ("incremental cost") of maintaining the Water Pumps, Water Pipelines and Water Tank resulting from the use by the owner of the Remnant Parcel of same. The incremental cost shall be determined by reference to a baseline, consisting of the total cost of maintaining the Water Pumps, Water Pipelines and Water Tank for the Twelve (12) month period immediately preceding the use of water for the first time by the owner of the Remnant Parcel pursuant hereto and the GCL Easement. ------------ -----Six. For the sole purpose of recordation in the Registry, the parties hereto attribute a value of ONE THOUSAND DOLLARS ($1,000.00) to the Ochoa Easement. --------------------------------------- ---TWELVETH: _The GCL Easement_. In consideration for the transfer of the Parcel "A" described above, Purchaser hereby constitutes a real easement ("_servidumbre predial_") upon the Parcel "A", as servient tenement (_predio sirviente_), in favor of the Remnant Parcel, as dominant tenement ("_predio dominante_"), such easement to run with and constitute a lien on Parcel "A" for the following uses and in accordance with the following terms and conditions: ------------------ -----One. The easement (the "GCL Easement") shall give the owner or owners of the Remnant Parcel for itself (themselves) and its (their) respective employees, agents, guests, invitees, successors, assignees and transferees the right to have access across the Parcel "A" to the Water Pumps (as hereinafter defined) and the Water Pipelines



ROBERTO J. TORRES ANTO...

ABOGADO-NOTARIO

FOLIO CIENTO CINCUENTA Y UNO (151)

17

located on Parcel "A" to operate the Water Pumps located on Parcel "A" and to provide water to the Remnant Parcel, all subject to the provisions set forth in Section Five of Article Eleven hereof. ------Two. The Water Pumps as used herein, shall mean those certain water pumps owned by Purchaser located on Parcel "A" and any replacements thereto. --------------------------------------

-----Three. The portion of the property where the Water Pumps and Water Pipelines are located is described and particularly identified in the Plans prepared and certified by Hector A. Cruz Sánchez and approved by ARPE on April Seventh (7th), 2003, a copy of which is attached to the first certified copy of this Deed. ------------------------------

-----Four. For the sole purpose of recordation in the Registry the parties hereto attribute a value of one thousand ($1,000.00) dollars to the GCL Easement. --------------------------------------

---THIRTEENTH: Taxes. On and after the date hereof, as long as the Municipal Revenue Collection Center ("CRIM") continues to send only one tax bill covering both the Property and the Remnant Parcel, Purchaser shall pay to Seller, within ten (10) days after receipt of Seller's demand therefore, twelve percent (12%) of the property taxes and other taxed and assessments levied against the Main Parcel. After CRIM starts sending a separate tax bill for the Ochoa Property, Purchaser shall be responsible for the direct payment of property taxes and all other taxes and assessments levied against the Ochoa Property. --------------------------------------



ROBERTO J. TORRES ANTOMMATTE

ABOGADO-NOTARIO

FOLIO CIENTO CINCUENTA Y DOS                    (152)

18

--------------------MISCELLANEOUS----------------

---FOURTEENTH: <u>Expenses</u>. The Notarial Tariff for this deed and the cost of all internal revenue stamps required to be canceled on the original and the first certified copy of this Deed and all fees for its recordation in the Registry shall be shared equally between Seller and Purchaser. -----

---FIFTEENTH: <u>Successors</u>. The provisions of this Deed shall be binding upon and inure to the benefit of the parties and their legal representatives, heirs, administrators, executors, successors and assigns. ------------------------

---SIXTEENTH: <u>Further Assurances</u>. The parties hereto agree to execute and deliver any and all other instruments and documents and do any and all other acts and things as may be necessary or expedient to more fully effectuate the agreements contained in this Deed and carry on the business contemplated hereunder and to record the transactions effected herein in the Registry. ----

---SEVENTEENTH: <u>Parties' Consent</u>. The parties hereto, for themselves and their successors and assigns, hereby accept and consent to the constitution and recordation of the Ochoa Easement and the GCL Easement to the fullest extent required or permitted by law. --------------------

---EIGHTENTH: <u>Petition to the Registrar</u>. The parties to this Deed respectfully request that the Honorable Registrar of Property (i) take notice of the rectification of measurement, (ii) record the segregation of the Property in the Registry as four separate and independent parcels, (iii) record the transfer of the Property by Seller to



ROBERTO J. TORRES ANTOMMATTI.

ABOGADO-NOTARIO

FOLIO CIENTO CINCUENTA Y TRES                    (153)

19

Purchaser, (iv) record the dedication to public use of Parcel for Public Use "A" and Parcel for Public use "B", (v) record the Ochoa Easement as a real easement ("servidumbre predial") upon the Remnant Parcel in favor of the Ochoa Property, (vi) place a marginal notation on the page where the Ochoa Property is recorded indicating the existence of the Ochoa Easement, (vii) record the GCL Easement as a real easement ("servidumbre predial") upon the Ochoa Property in favor of the Remnant Parcel and (vii) place a marginal notation on the page where the Remnant Parcel is recorded indicating the existence of the GCL Easement. ----

-------ACCEPTANCE, WARNINGS AND EXECUTION--------

---The appearing parties fully ratify and confirm the statements contained herein, and find this Deed drafted to their entire satisfaction, having I, the Notary, made to the appearing parties the necessary legal warnings concerning the execution of this Deed. -----------------------------------

---I, the Notary, hereby certify that this Deed was read by the persons appearing herein; that I advised them of their right to have witnesses present at the execution hereof, which right they waived; that I advised them of the legal effect of this Deed; that they acknowledged that they understood the contents of this Deed and such legal effect; and that thereupon they signed this Deed before me and affixed their initials to each and every page hereof. --------------------------

--------------------------------------------------

--------------------------------------------------

--------------------------------------------------



ROBERTO J. TORRES ANTOMMATTE

ABOGADO-NOTARIO

FOLIO CIENTO CINCUENTA Y CUATRO                                    (154)

20

---I, the Notary, do hereby certify as to everything stated or contained in this instrument. I, the Notary, ATTEST AND GIVE FAITH. -----------

----FIRMADO:    JOSE  LUIS  NIETO  MINGO,  en representación de GUANICA CARIBE LAND DEVELOPMENT CORPORATION;  y  RAFAEL  PALMER  ARRACHE,  en representación de OCHOA FERTILIZER CO., INC. ----

----FIRMADO, RUBRICADO, SIGNADO Y SELLADO: ------ ROBERTO JOSE TORRES ANTOMMATTEI. ----------------

---~-Hay cancelado en su original los correspon- dientes sellos de Rentas Internas y el Impuesto Notarial. -----------------------------------

----CERTIFICO que es copia fiel y exacta de su original obrante en mi Protocolo de Instrumentos Públicos del corriente año al que me remito.  Y a petición de Don José Luis Nieto Mingo, expido primera copia de la presente escritura, la cual consta de veinte (20) folios, dejando anotada dicha expedición en San Juan, Puerto Rico, en el día de hoy, veinte (20) de noviembre de dos mil tres (2003). -----------------------------------







**GUANICA, PUERTO RICO**

**Schedule B – Section 2**

2.    Standard Exceptions:

   a.    The lien of all taxes, assessments and governmental charges and levies, including all taxes, liens and assessments not yet assessed.

   e.    Utility easements, including easements in favor of the Commonwealth of Puerto Rico, the Puerto Rico Electric Power Authority, the Puerto Rico Aqueduct Authority, and the Municipality of Guayama.

3.    Other exceptions:

   a.    Easement in favor of the Commonwealth of Puerto Rico, assigned to the Puerto Rico Electric Power Authority, as per Resolution dated July 22, 1970 issued in Condemnation Proceedings in Case No. E-61-1081 and E-61-1084, recorded at folio 65, volume 29 of Guánica.

   b.    Right of way easement in favor of Parcel number 4708, constituted pursuant to deed number 5 dated May 8, 1989 before Notary Julio V. Rodríguez Vilá.

   c.    Easement, constituted pursuant to deed number 24 dated November 20, 2003 before Notary Roberto José Torres Antonmattei.

   d.    Discrepancy in area of approximately 4.3412 cuerdas for purposes of property taxes.

**Liability Transfer Project**
**List of Orders and Permits for Transfer to ELT**

## Guanica, Puerto Rico

| Site Name and Location | State Road 333 Guanica, PR |
|---|---|
| Name of Order/Type of Permit | None |
| ID Number | |
| Expiration Date | |
| Regulatory Information | |
| Notice Requirements | |

## EXHIBIT B-5 - Joplin, MO

Current Owner of Site:  W. R. Grace & Co. - Conn.

Legal Description of Property:  See Title Commitment, Schedule A

Buildings and Improvements; Equipment and Personal Property:
  1)  Groundwater Monitoring Wells

Schedule of Permitted Title Exceptions:    See Title Commitment, Schedule B (Excerpt)

Deed Restrictions:    See Title Commitment, Schedule B (Excerpt)

Assignable Contracts: (Subject to discussions with ELT)
  1)  Feb 2003 Master Services Agreement - The Forrester Group

Access Agreements:
  1)  7/29/03 Missouri & Northern Arkansas Railroad Company, Inc.

Schedule of Orders and Permits:   Attached

Monetary Liens:  None

Right of First Refusal or Option to Purchase:  None

Violations of Law; Pending or Threatened Litigation or Eminent Domain:  None

Encroachments and Other Survey Matters:
  1)  Boundary overlap noted on survey (approximately one acre) between Grace
      and adjacent property owner (Expert Management, Inc.) has existed since
      before 1918.  Chicago Title unable to insure overlapping area.

**JOPLIN, MO**

Issued By:
**Chicago Title Insurance Company**                                                    Schedule A

1. Effective Date:  July 9, 2007 at 8:00 am                          Order No:   020072997
2. Policy or Policies to be issued:
   a. OWNER'S POLICY 1:  ALTA OWNER'S POLICY (6/17/06)           to be determined
      Proposed Insured:                                          Charge:
      TO BE DETERMINED


      OWNER'S POLICY 2:
      Proposed Insured:                                          Charge:


   b. LOAN POLICY 1:   ALTA LOAN POLICY (6/17/06)                to be determined
      Proposed Insured:                                          Charge:
      TO BE DETERMINED


      LOAN POLICY 2:
      Proposed Insured:                                          Charge:


3. The estate or interest in the land described or referred to in this Commitment is:
   Fee Simple

4. Title to the above estate or interest in the land is at the Effective Date vested in:
   W. R. Grace & Co. - Conn.


5. The land referred to in this Commitment is described as follows:
                          SEE ATTACHED


This Commitment is valid only if Schedule B is attached.

OSCA  6/06  KMS       RC       RC       09/25/07    RC                          ALTA Commitment - 2006

JOPLIN, MO

Issued By:
**Chicago Title Insurance Company**

Schedule A (continued)

Order No: | 020072997

5. THE LAND REFERRED TO IN THIS COMMITMENT IS DESCRIBED AS FOLLOWS (continued):

A tract of land in the North half of the fractional Section 2, Township 27 North, Range 32 West, Jasper County, Missouri, being more particularly described as follows:

Commencing at an iron pin found at the NW corner of Section 2, Township 27 North, Range 32 West, Jasper County, Missouri; thence North 88 degrees 52 minutes 43 seconds East, 1309.54 feet along the North line of Section 2; thence South 00 degrees 23 minutes 28 seconds East, 30.00 feet to a 5/8 inch iron pin set on the North right of way line of a county road at the point of beginning; thence South 00 degrees 23 minutes 28 seconds East, 2526.90 feet to a 5/8 inch iron pin set on the East/West half section line of said section 2; thence North 89 degrees 15 minutes 56 seconds East 2639.57 feet to a 1/2 inch iron pin found at the Southeast corner of the Southeast corner of the West half of Lot One in the Northeast Quarter of Fractional Section 2; thence North 00 degrees 18 minutes 37 seconds West; 1114.44 feet along the East line of the West half of Lot One in the Northeast Quarter of Fractional Section 2 to a 1 1/4 rod; thence North 88 degrees 54 minutes 07 seconds East, 208.71 feet to a set 5/8 inch iron pin; thence North 00 degrees 12 minutes 11 seconds West, 208.71 feet to a found 1/2 inch iron pin on the South line of Lot 2 in the Northeast Quarter of Fractional Section 2; thence North 89 degrees 17 minutes 41 seconds East, 416.80 feet along the South line of said Lot 2 to a set 5/8 inch iron pin; thence North 00 degrees 39 minutes 58 seconds West, 626.19 feet to a set 5/8 inch iron pin; thence North 88 degrees 52 minutes 43 seconds East, 652.94 feet to a 5/8 inch iron pin set on the West right of way line of State Highway "AA"; thence 385.73 feet along the West right of way line of State Highway "AA" on a curve to the left with a radius of 1869.86 feet, a central angle of 11 degrees 49 minutes 09 seconds and a long chord distance of 385.04 feet on a bearing of North 04 degrees 13 minutes 21 seconds West to a set 5/8 inch iron pin; thence South 88 degrees 52 minutes 43 seconds West, 115.60 feet to a set 5/8 inch iron pin; thence South 00 degrees 26 minutes 44 seconds East, 9.00 feet to a set 5/8 inch iron pin; thence South 88 degrees 52 minutes 43 seconds West, 348.00 feet to a set 5/8 inch iron pin; thence North 00 degrees 26 minutes 44 seconds West, 9.00 feet to a set 5/8 inch iron pin; thence South 88 degrees 52 minutes 43 seconds West, 143.33 feet to a set 5/8 inch iron pin; thence North 00 degrees 23 minutes 21 seconds West, 214.00 feet to a 5/8 inch iron pin sest on the South right of way line of a county road; thence South 88 degrees 52 minutes 43 seconds West, 438.00 feet along said right of way to a set 5/8 inch iron pin; thence South 00 degrees 23 minutes 21 seconds East, 596.33 feet to a set 5/8 inch iron pin; thence South 89 degrees 01 minutes 12 seconds West, 194.72 feet to a set 5/8 inch iron pin; thence North 00 degrees 19 minutes 40 seconds West, 595.86 feet to a 5/8 inch iron pin set on the South right of way line of a county road; thence South 88 degrees 52 minutes 43 seconds West, 2652.73 feet along said right of way to the point of beginning, EXCEPT the Missouri Pacific Railroad right of way, and EXCEPT commencing at an iron pin found at the Northwest corner of said Section 2, thence North 88 degrees 52 minutes 43 seconds East, 3921.89 feet along the North line of Section 2, thence South 01 degrees 07 minutes 17 seconds East, 30.00 feet to an iron pin set on the South right of way line of a county road and true point of beginning, thence North 88 degrees 52 minutes 43 seconds East, 40.00 feet along said right of way to an iron pin found at the Northeast corner of the tract, thence South 00 degrees 19 minutes 40 seconds East, 595.86 feet to an iron pin found at the Southeast corner of the tract, thence South 89 degrees 01 minutes 12 seconds West, 40.00 feet to an iron pin set at the Southwest corner of the tract, thence North 00 degrees 19 minutes 40 seconds West, 595.76 feet to the point of beginning.

This Commitment is valid only if Schedule B is attached.

ALTA Commitment - 2006

**JOPLIN, MO**

Issued By:
**Chicago Title Insurance Company**                                                    Schedule B

Order No: | 020072997

SCHEDULE B

EXCEPTIONS

8.  General and special taxes and assessments as hereafter listed, if any (all amounts shown being exclusive of interest, penalties and costs):

9.  The lien of city, state, and county taxes for the year 2007, due November 1, 2007, delinquent January 1, 2008.

10.  FOR YOUR INFORMATION:

City, State, and County Taxes;
Year:              2006
Amount:          $155.18, Paid.
Tax ID No.:      2-200008-0

11.  Agreement with the Empire District Electric Company in Book 369 at Page 498.

12.  Agreement with the Empire District Electric Company in Book 369 at Page 499.

13.  Agreement with the Empire District Electric Company in Book 369 at Page 500.

14.  Agreement with the Empire District Electric Company in Book 369 at Page 501.

15.  Agreement with the Empire District Electric Company in Book 369 at Page 503.

16.  Agreement with the Empire District Electric Company in Book 369 at Page 552.

JOPLIN, MO

Issued By:
**Chicago Title Insurance Company**                                    Schedule B (continued)

Order No: | 020072997

17.  Right of way Deed to the Fort Scott Central Railway Company in Book 107 at Page 451.

18.  Right of way grant to Cities Service Gas Company filed as Document No. 21119.

19.  Right of way grant to Cities Service Gas Company filed as Document No. 21121.

20.  Right of way grant to Cities Service Gas Company filed as Document No. 21123.

21.  Right of way grant to Cities Service Gas Company filed as Document No. 863.

22.  Right of way to the County of Jasper filed in Book 454 at Page 381.

23.  Right of way to the County of Jasper filed as Document No. 12686.

24.  Right of way to the County of Jasper filed in Book 770 at Page 617.

25.  Right of way to the County of Jasper filed in Book 770 at Page 621.

26.  Right of way to the County of Jasper filed in Book 770 at Page 629.

27.  Right of way to the County of Jasper filed in Book 770 at Page 633.

28.  Right of way to the County of Jasper filed in Book 770 at Page 635.

29.  Right of way to the County of Jasper filed in Book 770 at Page 637.

30.  Right of way to State of Missouri for the use of The State Highway Commission of Missouri filed in Book 772 at Page 201.

31.  Easement to the Empire District Electric Company filed in Book 784 at Page 173.

32.  Easement to the Empire District Electric Company filed in Book 784 at Page 389.

33.  Easement to the Empire District Electric Company filed in Book 940 at Page 464.

34.  Easement to the Empire District Electric Company filed in Book 940 at Page 467.

35.  Easement to the Empire District Electric Company filed in Book 940 at Page 468.

36.  Easement for Water Pipe to Jasper County Water Supply District #3 filed in Book 1930 at Page 2286.

37.  Rights of the public, State of Missouri, County of Jasper and the Municipality in and to that part of the North and East sides of the premises in question taken or used for road purposes.

**Liability Transfer Project**
**List of Orders and Permits for Transfer to ELT**

## Joplin, MO - Gypsum Stacks

| | |
|---|---|
| Site Name and Location | Highway AA and Newman Road<br>Joplin, MO |
| Name of Order/Type of Permit | Settlement Agreement with Missouri Department of Natural Resources |
| ID Number | Not Applicable |
| Expiration Date | Monitoring Plan obligations will cease "upon the request of Grace...and on the approval of (MDNR)" |
| Regulatory Information | Missouri Department of Natural Resources<br>Mr. Paul Dickerson<br>205 Jefferson Street, 9th Floor<br>Jefferson City, MO  65101<br>573-751-7624 |
| Notice Requirements | None |

## EXHIBIT B-6 - Memphis, TN

Current Owner of Site:  W. R. Grace & Co. - Conn.

Legal Description of Property:  See Title Commitment, Schedule A

Buildings and Improvements; Equipment and Personal Property:
   1) Groundwater Monitoring Wells

Schedule of Permitted Title Exceptions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Deed Restrictions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Assignable Contracts: (Subject to discussions with ELT)
   1) 9/14/92 Wilder Farming Lease; 12/26/95 Amendment
   2) 6/24/97 Settlement and Indemnity Agreement - Richard C. and Donna M. Rowe;
      6/30/03 Amendment
   3) 8/1/05 Global Master Services Agreement - URS Corporation

Access Agreements:
   1) 12/1/89 E. I. DuPont Specialty Chemicals
   2) 1/17/90 Richard and Donna Rowe
   3) 2/6/92 Estate of Dr. and Mrs. Breen Bland
   4) 9/14/92 Wilder Farms (access rights under Farm Lease)
   5) 8/18/98 Timminco Properties, Inc.

Schedule of Orders and Permits:  Attached

Monetary Liens:  Declining Balance Letter of Credit with Wachovia (value as of
12/31/07 was $340,000; value changes to $300,000 on 7/1/08.)

Right of First Refusal or Option to Purchase:  None

Rent:  Check in the amount of $4,000 (received on 11/28/07) from Wilder Farms was
      for 2007 rent and for the credit of Grace.  Rent payments are defined in a 1992
      Farming Lease between Grace and Wilder Farms.

Violations of Law; Pending or Threatened Litigation or Eminent Domain:  None

Memphis, TN

# Chicago Title Insurance Company

P.O. Box 45023, Jacksonville, Florida 32232-5023
(877)862-9111    FAX (904)564-1602

## Schedule A

File No.:    2108185                                    Commitment No.: 2108185
Loan No.:

1.  Effective Date:    October 19, 2007 at 8:00 AM

2.  Policy or Policies to be issued:

                                                                Amount
                                                        $ TO BE DETERMINED

    (a)  _X_  Owner's Policy        ( ALTA Own. Policy (6-17-06) )
         Proposed Insured:
         a qualified purchaser, to be determined

    (b)  ____ Loan Policy            ( )
         Proposed Insured:

3.  The estate or interest in the land described or referred to in this Commitment is Fee Simple.

4.  Title to the Fee Simple estate or interest in the land is at the Effective Date vested in:
    W. R. Grace & Co.-Conn, a Connecticut corporation

5.  The land referred to in the Commitment is described as follows:

    Land situated in Shelby County, Tennessee.

Being the property described in Warranty Deeds of record under Book No. 5879, Page 358 and
Book No. 5879, Page 362, less and except the property described in Warranty Deed under
Instrument No. AK 3581.

Alta Commitment – 2006                          (2108185.PFD/2108185/10)

PROPERTY DESCRIPTION

BEING A SURVEY OF PART OF THE W.R. GRACE & CO. — CONN. PROPERTY AS RECORDED IN BOOK 5879, PAGE 362 AT THE SHELBY COUNTY REGISTER'S OFFICE, LOCATED IN SHELBY COUNTY, TENNESSEE AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF THE ARCADIAN FERTILIZER, L.P. PROPERTY (INSTRUMENT CV—2812), SAID POINT ALSO LIES ON THE EAST LINE OF OLD MILLINGTON ROAD (60.00 FOOT WIDE PUBLIC RIGHT—OF— WAY), SAID POINT BEING S19°51'16"W A DISTANCE OF 113.13 FEET FROM A FOUND IRON PIN AT AN ANGLE POINT ON THE WEST LINE OF THE SAID ARCADIAN FERTILIZER, L.P. PROPERTY, SAID POINT OF BEGINNING HAVING A TENNESSEE STATE PLANE COORDINATE OF (N 368278.4240 — E 784168.7474); THENCE S80°11'43"E ALONG A SOUTH LINE OF THE SAID ARCADIAN FERTILIZER, L.P. PROPERTY A DISTANCE OF 634.47 FEET TO A FOUND ION PIN; THENCE N57°00'54"E AND CONTINUING ALONG A SOUTH LINE OF THE SAID ARCADIAN FERTILIZER, L.P. PROPERTY A DISTANCE OF 1004.02 FEET TO A POINT; THENCE S80°44'39"E AND CONTINUING ALONG A SOUTH LINE OF THE SAID ARCADIAN FERTILIZER, L.P. PROPERTY A DISTANCE OF 121.09 FEET TO A POINT; THENCE S9°37'18"W AND CONTINUING ALONG A SOUTH LINE OF THE SAID ARCADIAN FERTILIZER, L.P. PROPERTY A DISTANCE OF 642.67 FEET TO A POINT; THENCE S78°55'12"E AND CONTINUING ALONG A SOUTH LINE OF THE SAID ARCADIAN FERTILIZER, L.P. PROPERTY A DISTANCE OF 113.25 FEET TO A POINT FOUND IRON PIN; THENCE N10°53'01"E AND CONTINUING ALONG A SOUTH LINE OF THE SAID ARCADIAN FERTILIZER, L.P. PROPERTY A DISTANCE OF 51.53 FEET TO A FOUND IRON PIN; THENCE S80°12'56"E AND CONTINUING ALONG A SOUTH LINE OF THE SAID ARCADIAN FERTILIZER, L.P. PROPERTY A DISTANCE OF 834.69 FEET TO A FOUND IRON PIN AT THE SOUTHEAST CORNER OF THE SAID ARCADIAN FERTILIZER, L.P. PROPERTY; THENCE N8°10'34"E ALONG A EAST LINE OF THE SAID ARCADIAN FERTILIZER, L.P. PROPERTY A DISTANCE OF 869.06 FEET TO A FOUND IRON PIN; THENCE S80°53'50"E ALONG A EAST LINE OF THE SAID ARCADIAN FERTILIZER, L.P. PROPERTY A DISTANCE OF 114.47 FEET TO A POINT; THENCE N6°54'31"E ALONG A EAST LINE OF THE SAID ARCADIAN FERTILIZER, L.P. PROPERTY A DISTANCE OF 1069.08 FEET TO THE NORTHEAST CORNER OF THE SAID ARCADIAN FERTILIZER, L.P. PROPERTY (N 369854.3035 — E 786956.8820), SAID POINT LIES ON THE SOUTH LINE OF THE ANNA E. HAYES PROPERTY (PROBATE COURT BOOK 212, PAGE 330); THENCE S81°16'39"E ALONG THE SOUTH LINE OF THE SAID HAYES PROPERTY AND ALONG THE SOUTH LINE OF THE MEMPHIS INTERNATIONAL MOTORSPORTS PARK, INC. PROPERTY (INSTRUMENT Y8— 5194) A DISTANCE OF 2610.19 FEET TO FOUND CONCRETE MONUMENT (N 369458.4672 — E 789536.8870); THENCE S10°22'47"W A DISTANCE OF 165.50 FEET TO A FOUND IRON PIN ON THE NORTHWEST RIGHT—OF—WAY LINE OF THE ILLINOIS CENTRAL RAILROAD (100.00 FEET NORTHWEST OF THE CENTERLINE OF THE EASTERN MOST TRACK); THENCE S49°34'00"W ALONG THE NORTHWEST RIGHT—OF—WAY LINE OF THE ILLINOIS CENTRAL RAILROAD A DISTANCE OF 1499.12 FEET TO A FOUND IRON PIN; THENCE N40°26'00"W A DISTANCE OF 50.00 FEET TO A POINT ON THE NORTHWEST RIGHT—OF—WAY LINE OF THE ILLINOIS CENTRAL RAILROAD (150.00 FEET NORTHWEST OF SAID CENTERLINE); THENCE S49°34'00"W ALONG THE NORTHWEST RIGHT—OF—WAY LINE OF THE ILLINOIS CENTRAL RAILROAD A DISTANCE OF 975.41 FEET TO A POINT; THENCE S79°56'02"E A DISTANCE OF 64.80 FEET TO A POINT ON THE NORTHWEST RIGHT—OF—WAY LINE OF THE ILLINOIS CENTRAL RAILROAD (100.00 FEET NORTHWEST OF SAID CENTERLINE); THENCE S49°34'00"W ALONG THE NORTHWEST RIGHT—OF—WAY LINE OF THE ILLINOIS CENTRAL RAILROAD A DISTANCE OF 1548.26 FEET TO A FOUND IRON PIN; THENCE S40°26'00"E A DISTANCE OF 17.50 FEET TO A POINT ON THE NORTHWEST RIGHT—OF—WAY LINE OF THE ILLINOIS CENTRAL RAILROAD (82.50 FEET NORTHWEST OF SAID CENTERLINE); THENCE S49°34'00"W ALONG THE NORTHWEST RIGHT—OF—WAY LINE OF THE ILLINOIS CENTRAL RAILROAD A DISTANCE OF 60.00 FEET TO A POINT (N 366661.1447 — E 786442.1264), SAID POINT BEING THE NORTHEAST CORNER OF THE RICHARD C. ROWE AND DONNA M. ROWE PROPERTY (INSTRUMENT AZ—6686); THENCE N79°57'40"W ALONG THE NORTH LINE OF THE SAID ROWE PROPERTY A DISTANCE OF 2598.79 FEET TO THE NORTHWEST CORNER OF THE SAID ROWE PROPERTY, SAID POINT ALSO LIES ON THE EAST LINE OF SAID OLD MILLINGTON ROAD (N 367114.1513 — E 783883.1253); THENCE N1°02'16"E ALONG THE EAST LINE OF OLD MILLINGTON ROAD A DISTANCE OF 265.47 FEET TO A FOUND IRON PIN AT A POINT OF CURVATURE; THENCE CONTINUING ALONG THE EAST LINE OF OLD MILLINGTON ROAD ALONG A 770.00 FOOT RADIUS CURVE TO THE RIGHT AN ARC DISTANCE OF 252.88 FEET (CHORD N10°26'46"E 251.74 FEET) TO A FOUND IRON PIN AT THE POINT OF TANGENCY; THENCE N19°51'16"E AND CONTINUING ALONG THE EAST LINE OF OLD MILLINGTON ROAD A DISTANCE OF 692.43 FEET TO THE POINT OF BEGINNING AND CONTAINING 7,917,431 SQUARE FEET, OR 181.759 ACRES.

**MEMPHIS, TN**

**SCHEDULE B - SECTION II**
**EXCEPTIONS**

File No.: 2108185                                          Commitment No.: 2108185 REVISION 2

Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the company:

6.   Taxes based on a change in the classification of the insured Land (Roll Back Taxes) pursuant to T.C.A. Section 67-5-1001 et seq., as evidenced by Application for Approval of Land as Agricultural Land of record under Instrument No. CW 8658, in the Register's Office of Shelby County, Tennessee.

7.   Notice of Hazardous Substance Site of record under Instrument No. BB 7190, being amended by Supplemental Notice of Hazardous Substance Site of record at Instrument No. BK 2720, both recordings in the aforesaid Register's Office.

9.   150 foot transmission line easement granted to MLG&W, dated April 11, 1951, recorded in Book 2774, Page 347, in the aforesaid Register's Office, located across the central portion of the property as shown on survey by The Reaves Firm Incorporated, dated October 8, 2007, Job No. 07-0436 (said survey).

10.  150 foot electric transmission line easement granted to MLG&W, dated April 11, 1951, recorded in Book 2774, Page 349, in the aforesaid Register's Office, located across the central portion of the property, as shown on said survey.

11.  150 foot transmission line easement granted to MLG&W, dated May 7, 1951, recorded in Book 2786, Page 198, in the aforesaid Register's Office, located as shown on said survey.

12.  Four foot easement granted to MLG&W, dated December 29, 1951, recorded in Book 2877, Page 165, in the aforesaid Register's Office, located on the southeast property line as shown on said survey.

13.  Five foot utility easement granted to MLG&W, dated November 9, 1954, recorded in Book 3391, Page 82, in the aforesaid Register's Office, located along part of the north property line as shown on said survey.

14.  50 foot easement granted to MLG&W, dated July 14, 1960, recorded in Book 4391, Page 240, in the aforesaid Register's Office, located across the central portion of the property as shown on said survey.

15.  Three anchor guy easements granted to MLG&W, dated December 26, 1961, recorded in Book 4633, Page 287, in the aforesaid Register's Office, located on the southeast property line as shown on said survey.

18.  Utility easement granted to MLG&W, dated June 8, 1964, recorded in Book 5412, Page 175, in the aforesaid Register's Office, located along the south property line as shown on said survey.

### SCHEDULE B - SECTION II
### EXCEPTIONS
(Continued)

File No.: 2108185

Commitment No.:  2108185 REVISION 2

19. 39 foot easement granted to Illinois Central Railroad Company, dated October 5, 1965, recorded in Book 5931, Page 365, in the aforesaid Register's Office, located across the northerly portion of the property as shown on said survey.

21. Fifteen foot utility easement granted to MLG&W, dated April 2, 1979, recorded at Instrument No. P3 8459, in the aforesaid Register's Office, on the southeast corner of the property as shown on said survey.

22. Ten foot easement granted to MLG&W, dated April 18, 1979, recorded at Instrument No. P7 1363, in the aforesaid Register's Office, located across the central portion of the property as shown on said survey.

23. Easements granted to Western Branch Holding Co., dated April 28, 1988, recorded at Instrument No. AK 3582, in the aforesaid Register's Office, shown on said survey as follows:

    a) Twenty foot private sewer and utility easement along part of the southeast property line and across the southwesterly portion of the property;
    b) Ten foot private gas line easement across the southwesterly portion of the property;
    c) Thirty foot private access easement across the least northerly portion of the property;
    d) Ten foot private sewer easement cross the least northerly portion of the property;
    e) 250 foot private railroad easement across the most northerly portion of the property; and
    f) Forty foot private railroad easement across the most northwesterly portion of the property.

24. Forty foot private railroad easement granted to Western Branch Holdoing Co., dated April 28, 1988, recorded at Instrument No. AK 3581, in the aforesaid Register's Office, located across the most northwesterly portion of the property as shown on said survey.

Liability Transfer Project
List of Orders and Permits for Transfer to ELT

## Memphis, TN

| Site Name and Location | 5750 Old Millington Road
Memphis, TN |
| --- | --- |
| Name of Order/Type of Permit | Consent Order and Agreement under Tennessee Voluntary Cleanup, Oversight, and Assistance Program |
| ID Number | 79-536 |
| Expiration Date | Not Applicable |
| Regulatory Information | Tennessee Department of Environment and Conservation
Division of Superfund
Voluntary Cleanup, Oversight, and Assistance Program
Mr. Andy Shivas
401 Church Street, 4th Floor
Nashville, TN 37243-1538
615-532-0912 |
| Notice Requirements | None |

## EXHIBIT B-7 - Owensboro, KY

Current Owner of Site:  W. R. Grace & Co. - Conn.

Legal Description of Property:  See Title Commitment, Schedule A

Buildings and Improvements; Equipment and Personal Property:
1) Groundwater Monitoring Wells
2) Wastewater Treatment Ponds and Fire Reservoirs
3) Aerators in Wastewater Treatment Lagoon

Schedule of Permitted Title Exceptions:    See Title Commitment, Schedule B, Section 2 (Excerpt)

Deed Restrictions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Assignable Contracts: (Subject to discussions with ELT)
1) 8/1/05 Global Master Services Agreement - URS Corporation
2) Owensboro Specialty Polymers - 99-year lease beginning September 14, 2005
   (Lessee purchased all equipment; Grace retained ownership of land.)

Access Agreements:
1) 4/21/97 Daramic
2) 4/12/95 Fibermark (fka Endura)
3) 9/14/05 Owensboro Specialty Polymers (access rights under ground lease)

Schedule of Orders and Permits:   Attached

Monetary Liens:  None

Right of First Refusal or Option to Purchase:  Owensboro Specialty Polymers (OSP) has the right to purchase leased premises; Landlord must notify OSP in writing of any bona fide offer to purchase leased premises; Tenant has 30 days to notify Landlord if Tenant desires to purchase leased premises (page 24, paragraph 41).  Per Grace Real Estate, OSP has no interest in purchasing the property.  Letter of understanding between Grace and OSP pending as of 2/21/08.

Rent:  Grace received pre-paid rent of $4,000.00 from OSP for the entire 99-year lease term in September 2005.

Violations of Law; Pending or Threatened Litigation or Eminent Domain:  None

OWENSBORO, KY

# CHICAGO TITLE INSURANCE COMPANY
9510 Ormsby Station Road, Suite 103, Louisville, KY 40223
(502)585-5135   FAX (502)584-3619

## SCHEDULE A

File No.:    510495
Loan No.:

Commitment No.:  510495

1. Effective Date:    July 25, 2007 at 08:00 AM

2. Policy or Policies to be issued:

   Amount

   (a) __X__ Owner's Policy        ( ALTA 2006 Owners Policy )
       Proposed Insured:
       TO BE DETERMINED

   (b) _____ Loan Policy         ( ALTA 2006 Loan Policy  )
       Proposed Insured:

3. The estate or interest in the land described or referred to in this Commitment is Fee Simple.

4. Title to the Fee Simple estate or interest in the land is at the Effective Date vested in:

   Lot 2 and Lot 5:  W. R. Grace & Co., a Connecticut corporation (now known as W.R. Grace & Co.-Conn.)
   Lot 1:  W.R. Grace & Co.-Conn., a Connecticut corporation

5. The land referred to in the Commitment is described as follows:
   Located in Daviess County, Kentucky and being more particularly described of Exhbiit A attached hereto.

ALTA Commitment - 2006

(510495.PFD/510495/8)

**OWENSBORO, KY**

# EXHIBIT A

Located in Daviess County, Kentucky:

Being all of Lot 1, Lot 2 and Lot 5 as shown on Minor Subdivision Plat for W.R. Grace recorded November 28, 1994 in Plat Book 23, pages 335 and 336 in the office of the Clerk of Daviess County, Kentucky;

TOGETHER WITH non-exclusive easements appurtenant to the above described land as more particularly described and set forth in the following instruments:

1. Reciprocal Easement Agreement between W.R. Grace & Co.-Conn. and Specialty Paperboard/Endura, Inc. recorded in Deed Book 638, page 277, said records;
2. Multiple Easement Agreement between Specialty Paperboard/Endura, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 638, page 304, re-recorded in Deed Book 641, page 257, said records;
3. Multiple Easement Agreement between Specialty Paperboard/Endura, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 638, page 323, re-recorded in Deed Book 641, page 277, said records;
4. Multiple Easement Agreement between Polypore Group, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 643, page 224, said records; and
5. Multiple Easement Agreement between Polypore Group, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 643, page 239, said records.

Lot 2 and Lot 5:  Being the remainder of property conveyed to W.R. Grace & Co., by Deed dated April 18, 1958, recorded in Deed Book 274, page 203, LESS AND EXCEPT conveyances in Deed Book 281, page 640; Deed Book 340, page 191; Deed Book 413, page 301; Deed Book 619, page 528; Deed Book 623, page 860; Deed Book 638, page 273; and Deed Book 643, page 219, in the office of the Clerk of Daviess County, Kentucky;

Lot 1: Being the same parcel of land conveyed to W.R. Grace & Co.-Conn., by Deed dated July 20, 2000, recorded in Deed Book 722, page 745, said records.

OWENSBORO, KY

# EXHIBIT A

Located in Daviess County, Kentucky:

Being all of Lot 1, Lot 2 and Lot 5 as shown on Minor Subdivision Plat for W.R. Grace recorded November 28, 1994 in Plat Book 23, pages 335 and 336 in the office of the Clerk of Daviess County, Kentucky;

TOGETHER WITH non-exclusive easements appurtenant to the above described land as more particularly described and set forth in the following instruments:

1. Reciprocal Easement Agreement between W.R. Grace & Co.-Conn. and Specialty Paperboard/Endura, Inc. recorded in Deed Book 638, page 277, said records;
2. Multiple Easement Agreement between Specialty Paperboard/Endura, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 638, page 304, re-recorded in Deed Book 641, page 257, said records;
3. Multiple Easement Agreement between Specialty Paperboard/Endura, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 638, page 323, re-recorded in Deed Book 641, page 277, said records;
4. Multiple Easement Agreement between Polypore Group, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 643, page 224, said records; and
5. Multiple Easement Agreement between Polypore Group, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 643, page 239, said records.

Lot 2 and Lot 5:  Being the remainder of property conveyed to W.R. Grace & Co., by Deed dated April 18, 1958, recorded in Deed Book 274, page 203, LESS AND EXCEPT conveyances in Deed Book 281, page 640; Deed Book 340, page 191; Deed Book 413, page 301; Deed Book 619, page 528; Deed Book 623, page 860; Deed Book 638, page 273; and Deed Book 643, page 219, in the office of the Clerk of Daviess County, Kentucky;

Lot 1: Being the same parcel of land conveyed to W.R. Grace & Co.-Conn., by Deed dated July 20, 2000, recorded in Deed Book 722, page 745, said records.

RECORD BOUNDARY DESCRIPTION
PER D.B. 722, PG. 745;
P.B. 21, PG. 307 AND 308

**OWENSBORO, KY**

TRACT 1 - 9.109 ACRES MORE OR LESS

Being a 9.109 acre, more or less, tract located within the bounds of a 142.94 acre, more or less, tract conveyed to WR Grace & Company, a Connecticut corporation, by Owensboro-Daviess County Industrial Foundation, Inc., a Kentucky corporation, by deed dated April 18, 1958, and of record in Deed Book 274, Page 203 and said tract recorded in Plat Book 21, Page 307 and 308 all in the Office of the County Court Clerk of Daviess County, Kentucky and more particularly described as follows:

BEGINNING at a 5/8-inch rebar with LS Cap 2566 being North 24 degrees 15 minutes East along the North right-of-way line of US Highway 60 a distance of 1764.41 feet and North 66 degrees 01 minutes 23 seconds West a distance of 1388.3 feet from the SE corner of the WR Grace 142.94fi acre tract as recorded in Deed Book 274, Page 203 (at the North right-of-way line of US Highway 60) on the common line of WR Grace and Owensboro Sand and Gravel Company as recorded in Deed Book 467, Page 254-259; thence North 66 degrees 01 minutes 23 seconds West a distance of 494.33 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence South 25 degrees 29 minutes 26 seconds West a distance of 139.68 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence, North 64 degrees 25 minutes 06 seconds West a distance of 261.80 feet (measured) to a 5/8-inch rebar with LS Cap 2566 at the top of the bank of the Ohio River; thence, continuing North 64 degrees 25 minutes 06 seconds West a distance of 155.00 feet(calculated) to the low water mark of the Ohio River as referenced in Deed Book 274, Page 203; thence, North 24 degrees 30 minutes 00 seconds East along the low water mark of the Ohio River as referenced in Deed Book 274, Page 203 a distance of 495.73 feet; thence, South 63 degrees 15 minutes 44 seconds East a distance of 108.00 feet (calculated) to a 5/8-inch rebar with LS Cap 2566 being at the top of the bank of the Ohio River; thence, continuing South 63 degrees 15 minutes 44 seconds East a distance of 356.73 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence, North 25 degrees 17 minutes 05 seconds East a distance of 188.91 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence, South 61 degrees 51 minutes 18 seconds East a distance of 10.92 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence, South 26 degrees 19 minutes 22 seconds West a distance of 187.62 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence, South 64 degrees 18 minutes 51 seconds East a distance of 210.14 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence, North 26 degrees 40 minutes 14 seconds East a distance of 106.68 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence, South 64 degrees 50 minutes 44 seconds East a distance of 185.92 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence, South 01 degrees 14 minutes 52 seconds West a distance of 96.93 feet (measured) to a 5/8-inch rebar with LS Cap 2566; thence, South 25 degrees 22 minutes 14 seconds West a distance of 353.03 feet (measured) to THE PLACE OF BEGINNING containing 9.109 acres more or less.

**OWENSBORO, KY**

RECORD BOUNDARY DESCRIPTION
PER P.B. 23, PG. 335 AND 336

LOT 2 - 8.72 ACRES

More or less located within the bounds of a 142.92 acre tract, more or less, conveyed to WR
Grace & Company, a Connecticut Corporation, by Owensboro-Daviess County Industrial
Foundation, Inc., a Kentucky Corp., by deed dated April 18, 1958 and/or recorded in Deed Book
274, Page 203 as recorded in the Office of the County Court Clerk of Daviess County, Kentucky
and being more particularly described as follows:

Beginning at a 5/8-inch rebar with LS Cap 2566 being North 24 degrees 15 minutes 00 seconds
East along the north right-of-way line of US Highway 60 as conveyed in Deed Book 340, Page
191 a distance of 1,067.91 feet and North 64 degrees 12 minutes 15 seconds West a distance of
411.14 feet from the SE corner of the WR Grace's 142.94ñ acre tract as recorded in Deed Book
274, Page 203 (at the north right-of-way line of US Highway 60 on the common line of WR
Grace and Owensboro Sand and Gravel Company as recorded in Deed Book 467, Pages 254-
259) being common to the SW corner of Tract 3 as recorded in minor subdivision Plat Book 23,
Page 170-171; thence, North 27 degrees 57 minutes 06 seconds East and along the common line
of said Tract 3 a distance of 1,071.87 feet to a point in Parcel 10D as recorded in Deed Book
623, Page 860 and at a point of a temporary right-of-way as recorded in Deed Book 276, Page 6;
thence, South 64 degrees 10 minutes 56 seconds East along said right-of-way and easement a
distance of 298.90 feet to a point on the north Kentucky DOT right-of-way line as recorded in
Deed Book 623, Page 860; thence, South 25 degrees 46 minutes 26 seconds West (measured)
and South 28 degrees 27 minutes 53 seconds West (record) a distance of 10.90 feet along said
Kentucky DOT right-of-way line; thence, South 64 degrees 13 minutes 34 seconds East
(measured) a distance of 15.00 feet along said Kentucky DOT right-of-way line; thence, South
23 degrees 17 minutes 04 seconds West (measured) and South 25 degrees 58 minutes 31 seconds
West (record) a distance of 230.22 feet (record and measured) along Kentucky DOT right-of-
way line; thence, South 23 degrees 19 minutes 12 seconds West (record and measured) and South 26
degrees 00 minutes 39 seconds West (record) a distance of 350.32 feet (record and measured)
along said Kentucky DOT right-of-way line; thence, South 25 degrees 46 minutes 26 seconds
West (measured) and South 28 degrees 27 minutes 53 seconds West (record) a distance of
100.00 feet (record and measured) along said Kentucky DOT right-of-way line; thence, South 23
degrees 29 minutes 00 seconds West (measured) and South 26 degrees 10 minutes 27 seconds
West (record) a distance of 250.20 feet (record and measured) along said Kentucky DOT right-
of-way line; thence, South 25 degrees 46 minutes 26 seconds West (measured) and South 28
degrees 27 minutes 53 seconds West (record) a distance of 130.01 feet along said Kentucky DOT
right-of-way line to a point at the NE corner of a 51.49 acre tract; thence, North 64 degrees
12 minutes 15 seconds West a distance of 389.74 feet along the north line of a 51.49 acre
tract to the PLACE OF BEGINNING containing 8.72 acres more or less.

RECORD BOUNDARY DESCRIPTION
PER P.B. 23, PG. 335 AND 336

**OWENSBORO, KY**

LOT 5 - 54.33 ACRES

Being a 54.33 acre tract more or less located within the bounds of a 142.92 acre tract, more or less, conveyed to WR Grace & Company, a Connecticut corporation, by Owensboro-Daviess County Industrial Foundation, Inc., a Kentucky corp., by Deed dated April 18, 1958 and/or recorded in Deed Book 274, Page 203 as recorded in the office of the County Court Clerk of Daviess County, Kentucky and being more particularly described as follows:

Commencing at a 5/8-inch rebar with LS Cap 2566 being North 24 degrees 15 minutes 00 seconds East along the north right-of-way line of US Highway 60 as conveyed in Deed Book 340, Page 191 a distance of 1,067.91 feet and North 64 degrees 12 minutes 15 seconds West a distance of 411.14 feet from the SE corner of the WR Grace's 142.94ñ acre tract as recorded in Deed Book 274, Page 203 (at the north right-of-way line of US Highway 60 on the common line of WR Grace and Owensboro Sand and Gravel Company as recorded in Minor Subdivision Plat Book 254-259) being common to the SE corner of Tract 3 as recorded in Minor Subdivision Plat Book 23, Page 170-171; thence, North 27 degrees 57 minutes 06 seconds East along the easterly line of said Lot Number 3 a distance of 1,071.67 feet; thence, South 64 degrees 10 minutes 55 seconds East a distance of 298.90 feet to a point on the northeasterly right-of-way line of Kentucky DOT right-of-way line as recorded in Deed Book 623, Page 860; thence, North 25 degrees 46 minutes 26 seconds East continuing along said Kentucky DOT right-of-way line a distance of 82.00 feet to the PLACE OF BEGINNING; thence, North 71 degrees 08 minutes 14 seconds West and along the common line of Lot 4 a distance of 181.63 feet; thence, North 64 degrees 29 minutes 59 seconds West a distance of 630.06 feet along the common line of said Lot 4 to a point on a curve being concave to the southwest through a central angle of 94 degrees 31 minutes 02 seconds with a radius of 58.49 feet through a chord bearing of North 72 degrees 37 minutes 57 seconds West with a chord distance of 85.91 feet with a arc length of 96.49 feet along the common line of said Lot 4; thence, North 64 degrees 58 minutes 58 seconds West a distance of 349.63 feet along the common line of said Lot 4 to a curve being concave to the southwest with a central angle of 45 degrees 07 minutes 26 seconds with a radius of 78.11 feet through a chord bearing of North 87 degrees 32 minutes 41 seconds West with a chord distance of 59.94 feet along the common line of said Lot 4; thence, South 65 degrees 44 minutes 51 seconds West a distance of 70.41 feet to a point on the common line of Lot 1 as recorded in Plat Book 21, Page 307-308; thence, North 01 degrees 14 minutes 52 seconds East a distance of 68.97 feet along the common line of said Lot 1 to a 5/8-inch rebar with LS Cap 2566; thence, North 64 degrees 50 minutes 44 seconds West a distance of 185.92 feet along the common line of said Lot 1 to a 5/8-inch rebar with LS Cap 2566; thence, South 26 degrees 40 minutes 14 seconds West a distance of 106.68 feet along the common line of said Lot 1 to a 5/8-inch rebar with LS Cap 2566; thence, North 64 degrees 18 minutes 51 seconds West a distance of 210.14 feet along the common line of said Lot 1 to a 5/8-inch rebar with LS Cap 2566; thence, North 26 degrees 19 minutes 22 seconds East a distance of 187.62 feet along the common line of said Lot 1 to a 5/8-inch rebar with LS Cap 2566; thence, North 61 degrees 51 minutes 18 seconds West a distance of 10.92 feet along the common line of said Lot 1 to a 5/8-inch rebar with LS Cap 2566; thence, South 25 degrees 17 minutes 05 seconds West a distance of 188.91 feet along the common line of said Lot 1 to a 5/8-inch rebar with LS Cap 2566; thence, North 63 degrees 15 minutes 44 seconds West a distance of 356.73 feet along the common line of said Lot 1 to a 5/8-inch rebar with LS Cap 2566; thence, continuing North 63 degrees 15 minutes 44 seconds West a distance of 106.00 feet more or less along the common line of said Lot 1 to the low water mark on the Ohio River; thence, leaving said common line of Lot 1, North 25 degrees 49 minutes 18 seconds East along the low water mark of the Ohio River a distance of 415.62 feet; thence, North 20 degrees 05 minutes 00 seconds East along the low water mark of the Ohio River a distance of 753.00 feet; thence, North 21 degrees 45 minutes 00 seconds East along the low water mark of the Ohio River a distance of 272.74 feet to its point of intersection with the extended centerline of Yellow Creek; thence, North 85 degrees 46 minutes 28 seconds East a distance of 325.94 feet along the meanderings of Yellow Creek; thence, South 70 degrees 03 minutes 14 seconds East a distance of 114.10 feet along the meanderings of Yellow Creek; thence, South 35 degrees 24 minutes 35 seconds East a distance of 80.47 feet along the meanderings of Yellow Creek; thence, South 02 degrees 55 minutes 40 seconds West a distance of 242.83 feet along the meanderings of Yellow Creek; thence, South 24 degrees 57 minutes 05 seconds East a distance of 198.02 feet along the meanderings of Yellow creek; thence, South 53 degrees 07 minutes 13 seconds East a distance of 161.62 feet along the meanderings of Yellow Creek; thence, South 72 degrees 22 minutes 17 seconds East a distance of 389.77 feet along the meanderings of Yellow Creek; thence, South 00 degrees 26 minutes 49 seconds West a distance of 97.73 feet along the meanderings of Yellow Creek; thence, South 40 degrees 30 minutes 00 seconds East a distance of 110.00 feet; thence South 78 degrees 10 minutes 54 seconds East a distance of 269.53 feet along the meanderings of Yellow Creek; thence, South 35 degrees 17 minutes 41 seconds East a distance of 77.14 feet along the meanderings of Yellow Creek; thence, South 16 degrees 27 minutes 00 seconds East a distance of 189.27 feet along the meanderings of Yellow Creek; thence, South 30 degrees 00 minutes 00 seconds West a distance of 98.00 feet along the meanderings of Yellow Creek; thence, South 50 degrees 27 minutes 01 seconds West a distance of 187.31 feet along the meanderings of Yellow Creek; thence, South 23 degrees 39 minutes 44 seconds West a distance of 66.62 feet along the meanderings of Yellow Creek; thence, South 33 degrees 50 minutes 32 seconds East a distance of 150.39 feet along the meanderings of Yellow Creek; thence, South 22 degrees 50 minutes 35 seconds East a distance of 92.18 feet; thence, South 06 degrees 45 minutes 06 seconds East a distance of 72.08 feet along the meanderings of Yellow Creek; thence, South 66 degrees 27 minutes 37 seconds East a distance of 162.44 feet along the meanderings of Yellow Creek; thence North 67 degrees 50 minutes 28 seconds East a distance of 244.36 feet along the meanderings of Yellow Creek to a point on the northeasterly right-of-way of Kentucky DOT right-of-way line; thence, South 25 degrees 24 minutes 13 seconds West (measured) and South 28 degrees 05 minutes 44 seconds West (record) a distance of 175.83 feet (measured); thence, South 25 degrees 40 minutes 55 seconds West (measured) and South 28 degrees 22 minutes 26 seconds West (record) along said Kentucky DOT right-of-way line a distance of 72.33 feet; thence, South 25 degrees 46 minutes 26 seconds West (measured) and South 28 degrees 27 minutes 53 seconds West (record) a distance of 254.28 feet (measured) to the PLACE OF BEGINNING containing 54.33 acres more or less.

OWENSBORO, KY

**SCHEDULE B - SECTION II**
**EXCEPTIONS**

File No.: 510495

Commitment No.: 510495

3.    Subject to the rights of the United States of America, State of Kentucky, the municipality and the Public, in and to any portion of the Land lying within the bed of the Ohio River.

4.    Exception of sand and gravel lying between the low water mark and the thread (middle) of the Ohio River adjacent to the insured Land, as contained in deeds recorded in Deed Book 274, pages 200 and 203, said records.

5.    Right of way and easement for public road to Daviess County, Kentucky recorded in Deed Book 276, page 6, said records.

6.    Easement to Kentucky Utilities Company recorded in Deed Book 278, page 1, said records.

7.    Easement to Louisville, Henderson and St. Louis Railway Company for spur track right of way recorded in Deed Book 278, page 271, said records.

8.    Easements and/or control of access contained in deeds to the Commonwealth of Kentucky for the use and benefit of the Department of Highways recorded in Deed Book 281, page 640; Deed Book 340, page 191; and Deed Book 623, page 860, said records.

9.    Warranty Deeds of Flowage Easements to The United States of America recorded in Deed Book 379, pages 449 and 454, said records.

10.   Right of way to East Daviess County Water Association, Inc. recorded in Deed Book 413, page 305, said records.

11.   Conditions, stipulations, restrictions, easements or other matters shown on:
      (a) approved Minor Subdivision Plat recorded December 11, 1992 in Plat Book 21, pages 307 and 308;
      (b) approved Minor Subdivision Plat recorded June 13, 1994 in Plat Book 23, pages 170 and 171;
      (c) approved minor Subdivision Plat recorded November 28, 1994 in Plat Book 23, pages 335 and 336.

12.   Pipe Rack Line Easement between Hampshire Chemical Corp. and W.R. Grace & Co.-Conn. recorded in Deed Book 619, page 560, said records (burden on Lot 1 for the benefit of Lots 5 and 2 and other property).

(510495.PFD/510495/7)

OWENSBORO, KY

SCHEDULE B - SECTION II
EXCEPTIONS
(Continued)

File No.:  510495

Commitment No.:  510495

13.  Fire Water Line Easement between Hampshire Chemical Corp. and W.R. Grace & Co.-Conn. recorded in Deed Book 619, page 573, said records (burden on Lot 1 for the benefit of Lots 5 and 2 and other property).

14.  Electric Line Easement between Hampshire Chemical Corp. and W.R. Grace & Co.-Conn. recorded in Deed Book 619, page 586, said records (burden on Lot 1 for the benefit of Lots 5 and 2 and other property).

15.  Storm Sewer Line Easement between Hampshire Chemical Corp. and W.R. Grace & Co.-Conn. recorded in Deed Book 619, page 598, said records (burden on Lot 1 for the benefit of Lots 5 and 2 and other property).

16.  Water Line Easement between Hampshire Chemical Corp. and W.R. Grace & Co.-Conn. recorded in Deed Book 619, page 610, said records (burden on Lot 1 for the benefit of Lots 5 and 2 and other property).

17.  Reciprocal Easement Agreement between Hampshire Chemical Corp. and W.R. Grace & Co.-Conn. recorded in Deed Book 619, page 533, said records.

18.  Right of way to Western Kentucky Gas Company recorded in Deed Book 637, page 68, said records.

19.  Easement Agreement to Big Rivers Electric Corporation recorded in Deed Book 637, page 402, said records.

20.  Reciprocal Easement Agreement between W.R. Grace & Co.-Conn. and Specialty Paperboard/Endura, Inc. recorded in Deed Book 638, page 277, said records, and terms and conditions and rights of others in and to appurtenant easements described therein.

21.  Multiple Easement Agreement between Specialty Paperboard/Endura, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 638, page 304, re-recorded in Deed Book 641, page 257, said records, and terms and conditions and rights of others in and to appurtenant easements described therein.

22.  Multiple Easement Agreement between Specialty Paperboard/Endura, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 638, page 323, re-recorded in Deed Book 641, page 277, said records, and terms and conditions and rights of others in and to appurtenant easements described therein.

23.  Multiple Easement Agreement between W. R. Grace & Co.-Conn. and Specialty Paperboard/Endura, Inc. recorded in Deed Book 638, page 356, re-recorded in Deed Book 641, page 303, said records.

24.  Multiple Easement Agreement between W. R. Grace & Co.-Conn. and Specialty Paperboard/Endura, Inc. recorded in Deed Book 638, page 383, re-recorded in Deed Book 641, page 334, said records.

25.  Easement Agreement between Hampshire Chemical Corp. and W.R. Grace & Co.-Conn. recorded in Deed Book 643, page 201, said records (burden on Lot 1 for the benefit of Lots 5 and 2 and other property).

26.  Non-Exclusive Easements to Bellsouth Telecommunications recorded in Deed Book 643, pages 336 and 344, said records.

27.  Non-Exclusive Right of way Permit to Western Kentucky Gas Company recorded in Deed Book 643, page 352, said records.

continued

ALTA Commitment - 2006

(510495.PFD/510495/10)

OWENSBORO, KY

**SCHEDULE B - SECTION II**
**EXCEPTIONS**
(Continued)

File No.: 510495

Commitment No.: 510495

28.  Multiple Easement Agreement between Polypore Group, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 643, page 224, said records, and terms and conditions and rights of others in and to appurtenant easements described therein.

29.  Multiple Easement Agreement between Polypore Group, Inc. and W. R. Grace & Co.-Conn. recorded in Deed Book 643, page 239, said records, and terms and conditions and rights of others in and to appurtenant easements described therein.

30.  Multiple Easement Agreement between W. R. Grace & Co.-Conn. and Polypore Group, Inc. recorded in Deed Book 643, page 259, said records.

31.  Multiple Easement Agreement between W. R. Grace & Co.-Conn. and Polypore Group, Inc. recorded in Deed Book 643, page 303, said records.

32.  Certificate of Land Use Restriction recorded in Misc. Book 152, page 930, said records.

33.  Declaration of Restrictions recorded in Deed Book 800, page 800, said records.

34.  Rights of riparian owners in and to the free and unobstructed flow of the water of Yellow Creek.

35.  State, County, and School taxes for the year 2007 and subsequent years, not yet due and payable.

NOTE:
SHOWN FOR INFORMATION ONLY:
TAX INFORMATION

Lot 5 and Lot 2 (combined): Tax parcel 72-61
2006 State, County and School taxes, amount due $1,648.20, PAID.
Assessed Value:  $184,300

Lot 1:  Tax parcel #72-64
2006 State, County and School taxes, amount due $11,570.87, PAID
Assessed value:  $1,260,300

** 2001 taxes delinquent; face amount $2,640.33, now due in the total amount of $6,299.83

NOTE:  2002 Tangible taxes also delinquent in the total amount of $4,150.l44

**END OF SCHEDULE B - SECTION II**

Liability Transfer Project
List of Orders and Permits for Transfer to ELT

## Owensboro, KY

| Site Name and Location | 5513 US Highway 60 East Owensboro, KY | 5513 US Highway 60 East Owensboro, KY |
|---|---|---|
| Name of Order/Type of Permit | Declaration of Restrictions, Book 800, Page 800 | Operations and Maintenance (O&M) Plan (Chapter 3 of Corrective Action Plan Implementation Report as approved by KEPPC August 14, 2006) |
| ID Number | Not Applicable | Not Applicable |
| Expiration Date | Not Applicable | Not Applicable |
| Regulatory Information | Kentucky Environmental and Public Protection Cabinet Manager Superfund Branch 14 Reilly Road Frankfort, KY  40601 502-564-6716 | Kentucky Environmental and Public Protection Manager Superfund Branch 14 Reilly Road Frankfort, KY  40601 502-564-6716 |
| Notice Requirements | The Owner shall provide written notice to the Cabinet at least fifteen (15) calendar days prior to sale, assignment, or lease of the Property or any portion thereof, setting forth the name, address, and telephone number of the anticipated new owner, assignee, or lessee. | The Owner shall provide written notice to the Cabinet at least fifteen (15) calendar days prior to sale, assignment, or lease of the Property or any portion thereof, setting forth the name, address, and telephone number of the anticipated new owner, assignee, or lessee. |

## EXHIBIT B-8 - Travelers Rest, SC

Current Owner of Site: W. R. Grace & Co. - Conn.

Legal Description of Property: See Title Commitment, Schedule A

Buildings and Improvements; Equipment and Personal Property:
1) Groundwater Monitoring Wells
2) Miscellaneous scrap office furniture
3) Miscellaneous scrap manufacturing equipment

Schedule of Permitted Title Exceptions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Deed Restrictions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Assignable Contracts:   (Subject to discussions with ELT)      None

Access Agreements:      None

Schedule of Orders and Permits:   Attached

Tenancy:   Grace will occupy a portion of the Travelers Rest facility through 3/31/08.

Monetary Liens:  None

Right of First Refusal or Option to Purchase:  None

Violations of Law; Pending or Threatened Litigation or Eminent Domain:  None

**TRAVELERS REST, SC**

**A.L.T.A. COMMITMENT**
**CHICAGO TITLE INSURANCE COMPANY**
**3700 Forest Drive, Suite 201, Columbia, SC  29204**
**Issued by: Babb & Brown, 505 West Butler Road, Greenville, SC 29607**
**SCHEDULE A**

Office File Number 07-1131

Commitment Number

07-1131

1.    Effective Date:  07/17/07 at 08:00 AM

2.    Policy or Policies to be issued:                                        Amount

      a.  ALTA OWNER'S POLICY, Form ALTA Own. Policy (10/17/92)        $TBD
         Proposed Insured:

         W.R. Grace & Co. - Conn.

      b.  ALTA LOAN POLICY, Form (6-17-06)                             $TBD
         Proposed Insured:

         TBD

3.    The estate or interest in the land described or referred to in this Commitment is fee simple.

4.    Title to the fee simple estate or interest in the land is at the Effective Date vested in:

      W.R. Grace & Co. - Conn.

5.    The Land referred to in this Commitment is described as follows:

Parcel 1 -
All that certain piece, parcel or tract of land lying and being in the State of South Carolina, County of Greenville, Paris Mountain Township, and containing 5.46 acres, more or less, and being the identical tract of land conveyed to Universal Zonolite Insulation Company by deed of Edgar B. League dated August 3, 1946, said deed having been recorded on 08/07/1946 in the ROD Office for Greenville County in Deed Book 297 at Page 59.

Parcel 2 -
All that certain piece, parcel or tract of land lying and being in the State of South Carolina, County of Greenville, Paris Mountain Township, and containing 1.46 acres, more or less, and being the identical tract of land conveyed to Zonolite Company by deed of Edgar B. League dated 03/18/1949, said deed having been recorded on 03/18/1949 in the ROD Office for Greenville County in Deed Book 376 at Page 1.

Parcel 3 -
All that certain piece, parcel or tract of land lying and being in the State of South Carolina, County of Greenville, Paris Mountain Township, and containing 5.65 acres, more or less, and being the identical tract of land conveyed to Zonolite Company by deed of Edgar B. League dated 01/04/1950, said deed having been recorded on 01/28/1950 in the ROD Office for Greenville County in Deed Book 401 at Page 257.

F. 1895

**TRAVELERS REST, SC**

Parcel 4 -

All that certain piece, parcel or tract of land lying and being in the State of South Carolina, County of Greenville, Paris Mountain Township, and containing 36.05 acres, more or less, and being the identical tract of land conveyed to Zonolite Company by deed of Edgar B. League dated 12/31/1951, said deed having been recorded on 12/31/1951 in the ROD Office for Greenville County in Deed Book 448 at Page 180.

Parcel 5 -

All that certain piece, parcel or tract of land lying and being in the State of South Carolina, County of Greenville, Paris Mountain Township, and containing 3.70 acres, more or less, and being the identical tract of land conveyed to Zonolite Company by deed of WG Addis dated 06/19/1950, and having been recorded on 06/27/1950 in the ROD Office for Greenville County in Deed Book 412 at Page 318.

Parcel 6 -

All that certain piece, parcel or tract of land lying and being in the State of South Carolina, County of Greenville, Paris Mountain Township, and containing 0.30 acres, more or less, and being the identical tract of land conveyed to Universal Zonolite Insulation Company by deed of FS Moody dated 08/1946 and having been recorded on 09/16/1946 in the ROD Office for Greenville County in Deed Book 299 at Page 93.

Tax Map # 0474000100200

Less however,

All that certain piece, parcel or tract of land, situate, lying and being in the State of South Carolina, County of Greenville, lying along the southerly edge of the Roe Ford Road - S.C. Highway S-88, containing 9.112 acres, according to plat of survey entitled "Survey for Furman University", prepared by C.O. Riddle Surveying Co., Inc. dated 5/26/00 and recorded in the Office of the Register of Deeds for Greenville County in Plat Book 48-M at Page 34. Reference is hereby made to said plat for a metes and bounds description thereof.

Portion of Tax Map #0474000100200

F. 1895

**TRAVELERS REST, SC**

PROPERTY DESCRIPTION
TRACT A

All that certain piece, parcel or tract of land lying and being situate in the State of South Carolina, County of Greenville, near Travelers Rest and being described more particularly below to wit:

Beginning at a nail (found) being located approximately 179' from the intersection with Roe Ford Road, said nail also being located on the southernmost right of way of White Horse Road (a.k.a. U.S. Highway 25), thence along said right-of-way N 34 17 58 E for 992.60 feet to a 1/2" rebar (set), thence N 55 41 47 W for 5.00 feet to a 1/2" rebar (set), thence N 34 18 13 E for 280.00 feet to a 1/2" rebar (set), thence S 55 41 47 E for 5.00 feet to a 1/2" rebar (set), thence N 34 18 13 E for 264.37 feet to a 1/2" rebar (set), thence leaving said right-of-way and continuing along a joint property line with Randolph R. Mathena S 09 56 41 E for 534.83 feet to a 1/2" rebar (set), thence N 81 33 19 E for 324.54 feet to a 2" open top iron pin (found), thence N 43 16 03 E for 218.80 feet to a 1/2" rebar (set), thence leaving said joint property line and continuing along a joint property line with Lyla Addis Haggard, Et Al S 52 39 07 E for 514.98 feet to a 2" open top iron pin (found), thence leaving said joint property line and continuing along a joint property line with Howard B. Addis, Et Al S 18 33 45 W for 357.98 feet to a 2" open top iron pin (found), thence S 48 29 23 E for 361.59 feet to a 3/4" crimp top iron pin (found) being located on the northernmost right-of-way of Roe Ford Road, thence along said right-of-way S 80 47 35 W for 906.81 feet to a 1/2" rebar (set), thence S 80 45 44 W for 789.10 feet to a 1/2" rebar (set), thence along a curve to the right having a length of 65.11 feet, a radius of 750.96 feet and a chord bearing and distance of S 81 57 02 W for 65.09 feet to a 1/2" rebar (set), thence leaving said right-of-way and continuing along a joint property line with Furman University N 39 54 57 W for 71.18 feet to a concrete monument (found), thence N 51 34 35 W for 270.07 feet to a nail (found) being the point of beginning.  Said tract contains 34.686 acres.

PROPERTY DESCRIPTION
TRACT B

All that certain piece, parcel or tract of land lying and being situate in the State of South Carolina, County of Greenville, near Travelers Rest and being described more particularly below to wit:

Beginning at a 5/8" rebar (found) being located approximately 1278 feet from the intersection with White Horse Road (a.k.a. U.S. Highway 25) said rebar also being located on the southernmost right-of-way of Roe Ford Road, thence along said right-of-way N 80 47 35 E for 984.94 feet to a 5/8" rebar (set), thence leaving said right-of-way and continuing along a joint property line with Furman University Foundation I S 66 22 15 E for 23.04 feet to a concrete monument (found), thence leaving said joint property line and continuing along a joint property line with Edgefield Subdivision S 43 13 58 W for 495.77 feet to a 5/8" rebar (set), thence S 36 03 35 W for 363.69 feet to a 5/8" rebar (set), thence leaving said joint property line and continuing along a joint property line with Furman University S 84 00 00 W for 436.38 feet (passing through a 2" open top iron pin (found) at 414.13 feet) to a 5/8" rebar (set), thence leaving said joint property line and continuing along a joint property line with Furman University Foundation I N 03 36 32 E for 171.24 feet to a 5/8" rebar (set), thence N 02 19 42 E for 100.27 feet to a 5/8" rebar (bent) (found), thence N 04 10 42 W for 282.14 feet to a 5/8" rebar (found) being the point of beginning. Said tract contains 9.050 acres.

**TRAVELERS REST, SC**

### A.L.T.A. COMMITMENT
### CHICAGO TITLE INSURANCE COMPANY
### SCHEDULE B - Section 2

Commitment Number 07-1131

Exceptions

7. Taxes and assessments for the year 2007, and subsequent years, which are a lien but are not yet due and payable.

8. Affidavit of Name Change dated 2/21/89 recorded in the ROD Office for Greenville County in Book 1353 at Page 548.

10. General Warranty Deed from W.R. Grace & Co. - Conn. to The Furman University Foundation, Inc. dated 05/18/04 recorded in the ROD Office for Greenville County in Deed Book 2089 at Page 1065 and re-recorded 06/16/04 in the ROD Office for Greenville County in Deed Book 2093 at Page 1044.

11. Right of Way for Roads located on property as shown on plat.

12. Right of Way for G&N Railroad as shown on plat.

14. Riparian rights incident to the premises.

15. Rights of upper and lower riparian owners in and to the waters of creeks or branches crossing or adjoining the property, and the natural flow thereof, free from diminution or pollution.

Liability Transfer Project
List of Orders and Permits for Transfer to ELT

## Travelers Rest, SC

| Site Name and Location | 830 SC Highway 25 Bypass<br>Travelers Rest, SC |
|---|---|
| Name of Order/Type of Permit | Land Application Permit |
| ID Number | ND0082309 |
| Expiration Date | September 30, 2012 |
| Regulatory Information | SC Department of Health and Environmental Control<br>Southeast District<br>Industrial, Agricultural, and Storm Water Permitting Division<br>Bureau of Water<br>2600 Bull Street<br>Columbia, SC 29201<br>803-898-4300 |
| Notice Requirements | Part II.L.3:  Permit is not transferable except after written notice to SCDHEC/Bureau of Water/NPDES Administration.  The current permittee must notify SCDHEC at least 30 days in advance of the proposed transfer date.<br>The notice must include a written agreement between the existing and new permittees containing a specific date for transfer of permit responsibility, coverage, and liability between them.<br>Permits are non-transferable except with prior consent of SCDHEC.  This is considered a minor modification and does not require public notice. |

## EXHIBIT B-9 - Waterloo, NY (Brewer Road Landfill)

Current Owner of Site:  W. R. Grace & Co. - Conn.

Legal Description of Property:  See Title Commitment, Schedule A

Buildings and Improvements; Equipment and Personal Property:
    1)  20,000 gallon leachate storage tank
    2)  leachate collection system (pump station and associated piping)
    3)  groundwater monitoring wells

Schedule of Permitted Title Exceptions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Deed Restrictions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Assignable Contracts: (Subject to discussions with ELT)
    1)  9/14/93 Engineering Services Agreement - O'Brien & Gere

Access Agreements:     None

Schedule of Orders and Permits:   Attached

Monetary Liens:  None

Right of First Refusal or Option to Purchase:  None

Violations of Law; Pending or Threatened Litigation or Eminent Domain:
    1)  Cost recovery litigation related to W. R. Grace & Co. - Conn. v. Zotos International, Inc.

**WATERLOO, NY**

---

*Issued By:*
**TICOR TITLE INSURANCE COMPANY**                                      Schedule A

---

REV1                                                          No: | 5507-25077

Effective Date:    August 1, 2007    *REV1*

1. Policy or Policies to be Issued:

   OWNER'S POLICY:        ALTA OWNER'S POLICY (6/17/06)              $  *(TO BE DETERMINED)*
   Proposed Insured:
   TBA


   LOAN POLICY:
   Proposed Insured:
   N/A


2. The estate or Interest in the land described or referred to herein and which is covered by this Commitment is a
   FEE SIMPLE

   and at the Effective Date of this Commitment is vested in:
                              (SEE NEXT PAGE)


3. The land referred to in this Commitment is described as follows:

   Address:       Brewer Road
   Town:          Waterloo
   County:        Seneca
   State:         NY

   Tax Account No.: 18-1-72

   *(Legal Description Continued on Attached Page)*

---

*Issued By:*
**TICOR TITLE INSURANCE COMPANY**                    **Schedule A**  (cont'd)

No: | 5507-25077

2.  The estate or interest in the land described in this Commitment is, at the Effective Date, vested in (cont'd):

W.R. Grace & Co. - Conn

- by -

1)  Warranty Deed made by Evans Chemetics, Inc. to W.R. Grace & Co. dated December 28, 1978 and recorded in the Seneca County Clerk's Office January 8, 1979 in Liber 381 of Deeds at page 256.

2)  Note:  W.R. Grace & Co. was merged into W.R. Grace & Co. - Conn by plan of merger dated May 25, 1988 and filed in the State of Connecticut on May 25, 1988.

WATERLOO, NY

---

*Issued By:*
**TICOR TITLE INSURANCE COMPANY**                    Schedule A  (cont'd)

No:    5507-25077

The land referred to in this Commitment is described as follows:

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Waterloo, County of Seneca, State of New York, being part of Lot 81 of the old Township of Junius, described as follows:

Beginning at a point in the apparent centerline of Brewer Road at the southwest corner of lands owned by Julius and Emilie Jahns and running thence South 82 degrees 51 minutes East along the fence line a distance of 631.3 feet to an iron pipe; thence North 6 degrees 33 minutes East a distance of 272.2 feet to an iron pipe; thence North 83 degrees 31 minutes 15 seconds West a distance of 759.2 feet to a point in the apparent centerline of Brewer Road; thence South 21 degrees 53 minutes 30 seconds West along the apparent    .
centerline of Brewer Road a distance of 272.2 feet to the point of beginning and containing 4.868 acres of land.

**WATERLOO, NY**

---

Issued By:

**TICOR TITLE INSURANCE COMPANY**                    Schedule B, Section 2

No:    | 5507-25077

### EXCEPTIONS

H   1.  Any facts that would be disclosed by an accurate survey or inspection of the land.

I   2.  The exact acreage of the premises is not insured.

J   3.  Subject to Declaration of Covenants and Restrictions recorded November 3, 1988 in Liber 447 of Deeds at page 48.

K   4.  The Easement granted to Empire Gas & Electric Company and recorded in Liber 162 of Deeds at page 161 on September 17, 1930.

L   5.  The Easement granted to New York State Electric & Gas Corporation and recorded in Liber 508 of Deeds at page 259 on September 10, 1993.

Liability Transfer Project
List of Orders and Permits for Transfer to ELT

## Waterloo, NY - Brewer Road Landfill

| Site Name and Location | Brewer Road<br>Waterloo, NY | Brewer Road<br>Waterloo, NY |
|---|---|---|
| Name of Order/Type of Permit | New York State Order on Consent | City of Auburn Wastewater Discharge Permit |
| ID Number | #B8-0033-8407 | 2006-07 |
| Expiration Date | Not Applicable | June 5, 2009 |
| Regulatory Information | New York State Department of Environmental Conservation<br>Region 8<br>Charlotte Theobald<br>6274 East Avon-Lima Road<br>Avon, NY 14414<br>585-226-5354 | Department of Municipal Utilities<br>Bruce Ross<br>Memorial City Hall<br>24 South Street<br>Auburn, NY 13021-3832<br>315-255-4180 |
| Notice Requirements | XXXII. If Respondent proposes to convey the whole or any part of its ownership in the Site, Respondent shall, not less than 30 days prior to consummation of such proposed conveyance, notify the Department in writing of the identity of the transferee and of the nature and date of the proposed conveyance.<br><br>In advance of such proposed conveyance, Respondent shall notify the transferee in writing, with a copy to the Department, of the applicability of this Order. | 10. Limitation on Permit Transfer - Wastewater discharge permits are issued to a specific User for a specific operation and are not assignable to another User or transferable to any other location without the prior written approval of the City.<br><br>Sale by a User shall obligate the purchaser to seek prior written approval of the City for continued discharge to the POTW. |

## EXHIBIT B-10 - Woburn, MA

Current Owner of Site:  W. R. Grace & Co. - Conn.

Legal Description of Property:  See Title Commitment, Schedule A

Buildings and Improvements; Equipment and Personal Property:
   1)  Groundwater recovery and monitoring wells and small building which houses
       the groundwater pump-and-treat system

Schedule of Permitted Title Exceptions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Deed Restrictions:   See Title Commitment, Schedule B, Section 2 (Excerpt)

Assignable Contracts: (Subject to discussions with ELT)
   1)  5/31/05 Master Services Agreement - GeoTrans, Inc.
   2)  7/14/06 Master Services Agreement - Groundwater and Environmental Services, Inc.

Access Agreements:  None

Schedule of Orders and Permits:   Attached

Monetary Liens:  None

Right of First Refusal or Option to Purchase:  None

Violations of Law; Pending or Threatened Litigation or Eminent Domain:
   1)  Lawsuit captioned W. R. Grace & Co. - Conn. v. Cummings Properties, LLC,
       Civil Action No. MISC 317002, regarding Cummings claim that it has acquired
       portion of Grace-owned property by adverse possession.  Lawsuit dismissed
       without prejudice in October 2007.  Tolling Agreement signed 10/17/07 provides
       that either Grace or Cummings may re-institute lawsuit in future.

**WOBURN, MA**

Issued By:

| CHICAGO TITLE INSURANCE COMPANY | Schedule A |
|---|---|

## COMMITMENT FOR TITLE INSURANCE

No: 2751-25235

Effective Date:    July 23, 2007

1. Policy or Policies to be issued:

   OWNER'S POLICY:    ALTA OWNER'S (10-17-92)                    $ (TO BE DETERMINED)
   Proposed Insured:

   LOAN POLICY:
   Proposed Insured:
   N/A

2. The estate or interest in the land described or referred to herein and which is covered by this Commitment is a FEE SIMPLE

   and at the Effective Date of this Commitment is vested in:
   W.R. Grace & Co.- Conn., a Connecticut Corporation

3. The land referred to in this Commitment is known as:

   | | |
   |---|---|
   | Address: | 369 Washington Street |
   | City/Town: | Woburn |
   | County: | Middlesex |
   | State: | MA |
   | Lot No.: | ~ |
   | Subdivision: | ~ |

   *(Legal Description Continued on Attached Page)*

ACA 6/96          SHS                                    SAS   08/10/07   10:09:09

**WOBURN, MA**

Issued By:
**CHICAGO TITLE INSURANCE COMPANY**                    Schedule A    (cont'd)

COMMITMENT FOR TITLE INSURANCE                    No:    2751-25235
ALTA Standard Form (1966)

The land referred to in this Commitment is described as follows:

A certain parcel of land with the buildings and partially completed buildings thereon situated in Woburn, in said County of Middlesex, being shown on plan entitled "Plan of Land, Woburn, Mass." dated May 11, 1957, by Harry R. Feldman, Inc., engineers, recorded withtheh Middlesex South District Registry of Deeds, Book 8957, Page 65, and being further bounded and describing as shown on said planas follows:

WESTERLY              by said Washington Street, by three bounds totaling five hun dred sixty-eight and 36/100 (568.36) feet;

NORTHERLY             by land now or formerly of Carlson, one thousand forty-six and 75/100 (1046.74) feet;

NORTHEASTERLY         by land of owners unknown, two hundred thirty-two (232) feet;

SOUTHEASTERLY         by land of owners unknown, two hundred eighty-six and 97/100 (286.97) feet;

NORTHEASTERLY         by land of owners unknown, one hundred two (102) feet, said line being through the center line of a brook; and

SOUTHERLY             by land now or formerly of Anderson, by two bounds totaling nine hundred and eighty-three and 10/100 (983.10) feet.

EXCEPTING from the foregoing, the following parcel as conveyed to William S. Cummings by Deed recorded with said Registry of Deeds in Book 12113, Page 232:

Traingular parcel of land in Woburn, Middlesx County, Massachusetts, bounded and described as follows:

EASTERLY              by land of William S. Cummings and Joyce M. Cummings one hundred two (102.00) feet, N 23° 35' 33" W;

SOUTHWESTERLY         one hundred twenty-eight and 32/100 (128.32) feet, S 87° 37' 58" E;

SOUTHWESTERLY         eight and 24/100 (8.24) feet S 87° 59' 29" E; and

NORTHWESTERLY         one hundred twenty-nine and 88/100 (129.88) feet, by land of W. R. Grace & Co.

the foregoing parcel is a portion of land of Grantor in Woburn, Middlesex south, Massachusetts shown on an

ACA3 6/86            SHS                                SAS    08/10/07    10:09:09

**WOBURN, MA**

*Issued By:*

**CHICAGO TITLE INSURANCE COMPANY**                    **Schedule A**  (cont'd)

---

**COMMITMENT FOR TITLE INSURANCE**
ALTA Standard Form (1966)                    **No:**    2751-25235

The land referred to in this Commitment is described as follows:

unrecorded plan of land on Washington St. in Woburn, Mass., dated August 24, 1971, surveyed for William S. Cummings, Dana F. Perkins & Sons, Inc., Civil Engineers and Surveyors, Reading, Mass. and marked on said plan "parcel to be acquired from W. R. Grace & Co."

NOTE: As hereinafter used "recorded" shall mean "recorded with the Middlesex South District Registry of Deeds."

ACA3 6/86          SNS                    SAS    08/10/07    10:09:09

**WOBURN, MA**

*Issued By:*

**CHICAGO TITLE INSURANCE COMPANY**                              Schedule B, Section 2

COMMITMENT FOR TITLE INSURANCE                    No:    | 2751-25235 |

## EXCEPTIONS

P   9.   Taking of the Massachusetts Dpeartment of Public Works dated December 126, 1986 and recorded in Bopok 17762, Page 391.

Q   10.  Taking by the Massachusetts Department of Public Works dated December 16, 1986 and recorded in Book 17762, Page 401.

R   11.  Taking by the Massachusetts Department of Public Works dated May 24, 2989 and recorded in Book 19879, Page 356.

S   12.  Terms and provisions of a Joint Easement Agreement between Anderson Estates, Inc. and W.R. Grace company and New England Telephone and Telegraph Company, dated June 4, 1992 and recorded in Book 22105, Page 493.

U   13.  Rights of others in and to the uninterrupted flow of the brook as referred to in the description sheet annexed.

T        NOTE: While specifically excluded from coverage hereunder, the records at the Middlesex South District Registry of Deeds reveal the following matters:

         a. Order of Conditions under Massachsuetts Wetlands Protection Act issued to Cannonie Environmental Services, Corp., (DEP File No. 348-261) and recorded in Book 21966, Page 509, as affected by a Certificate of Compliance recorded in Book 29411, Page 190.

         b. Order of Conditions under Massachusetts Department of Environmental Protection , (DEP File No. 348-590) and recorded in Book 46339, Page 82.

Liability Transfer Project
List of Orders and Permits for Transfer to ELT

## Woburn, MA

| Site Name and Location | 369 Washington Street<br>Woburn, MA | 369 Washington Street<br>Woburn, MA |
|---|---|---|
| Name of Order/Type of Permit | Consent Decree | Consent Decree |
| ID Number | 91-11807MA | I-90-1035 |
| Expiration Date | Not Applicable | Not Applicable. Order applied to pilot test work already completed. However, Grace is required to provide a copy of the order to any subsequent owners or successors before ownership rights are transferred. |
| Regulatory Information | USEPA Region 1<br>Joseph Lemay<br>Remedial Project Manager<br>10 Congress Street<br>Mail Code HBO<br>Boston, MA 02203-0001<br>617-918-1323<br><br>Massachusetts Department of Environmental Protection**<br>Jennifer McWeeney<br>Project Manager<br>One Winter Street, 7th Floor<br>Boston, MA  02108<br>617-292-5530<br><br>**Note: Site is considered adequately regulated under MCP; however, any correspondence with USEPA regarding the Consent Decree should be copied to MassDEP. | USEPA Region 1<br>Joseph Lemay<br>Remedial Project Manager<br>10 Congress Street<br>Mail Code HBO<br>Boston, MA 02203-0001<br>617-918-1323<br><br>Massachusetts Department of Environmental Protection**<br>Jennifer McWeeney<br>Project Manager<br>One Winter Street, 7th Floor<br>Boston, MA  02108<br>617-292-5530<br><br>**Note: Site is considered adequately regulated under MCP; however, any correspondence with USEPA regarding the Consent Decree should be copied to MassDEP. |
| Notice Requirements | V. General Provisions 6c:  Any Settling Defendant that owns an interest in property included in the Site and any Successor-in-Title shall within thirty (30) days prior to conveyance of such interest, give written notice of this Consent Decree to the grantee and written notice of the proposed conveyance, including name and address of the grantee, and the date on which notice of the Consent Decree was given to the grantee.  In the event of any such conveyance, the Settling Defendant's obligations under this Consent Decree shall continue to be met by the Settling Defendant and, subject to approval by the United States, in consultation with the Commonwealth, by the grantee. | V. General Provisions 6c:  Any Settling Defendant that owns an interest in property included in the Site and any Successor-in-Title shall within thirty (30) days prior to conveyance of such interest, give written notice of this Consent Decree to the grantee and written notice of the proposed conveyance, including name and address of the grantee, and the date on which notice of the Consent Decree was given to the grantee.  In the event of any such conveyance, the Settling Defendant's obligations under this Consent Decree shall continue to be met by the Settling Defendant and, subject to approval by the United States, in consultation with the Commonwealth, by the grantee. |