06-2099-bk
In re Johns-Manville Corporation, Debtor

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2007

(Argued: November 16, 2007                              Decided: February 15, 2008)

Docket Nos. 06-2099-bk (L), 06-2103-bk (con), 06-2105-bk (con), 06-2118-bk (con),
06-2186-bk (con)

————————

IN RE: JOHNS-MANVILLE CORPORATION, DEBTOR

————————

JOHNS-MANVILLE CORPORATION, MANVILLE CORPORATION, MANVILLE INTERNATIONAL
CORPORATION, MANVILLE EXPORT CORPORATION, JOHNS-MANVILLE INTERNATIONAL
CORPORATION, MANVILLE SALES CORPORATION F/K/A JOHNS-MANVILLE SALES CORPORATION,
SUCCESSOR BY MERGER TO MANVILLE BUILDINGS MATERIALS CORPORATION, MANVILLE
PRODUCTS CORPORATION AND MANVILLE SERVICE CORPORATION, MANVILLE INTERNATIONAL
CANADA, INC., MANVILLE CANADA, INC., MANVILLE INVESTMENT CORPORATION, MANVILLE
PROPERTIES CORPORATION, ALLAN-DEANE CORPORATION, KEN-CARYL RANCH CORPORATION,
JOHNS-MANVILLE IDAHO INC., MANVILLE CANADA SERVICE INC., SUNBELT CONTRACTORS INC.,

*Debtors,*

TRAVELERS CASUALTY AND SURETY COMPANY, TRAVELERS PROPERTY CASUALTY CORP.,
TRAVELERS INDEMNITY COMPANY, COMMON LAW SETTLEMENT COUNSEL, STATUTORY
SETTLEMENT COUNSEL, HAWAII SETTLEMENT COUNSEL,

*Movants-Appellees,*

—v.—

1

CHUBB INDEMNITY INSURANCE COMPANY, ASBESTOS PERSONAL INJURY PLAINTIFFS, CASCINO ASBESTOS CLAIMANTS, PEARLIE BAILEY, SHIRLEY MELVIN, GENERAL LEE COLE, ROBERT ALVIN GRIFFIN, VERNON WARNELL, LEE FLETCHER ANTHONY,

*Objectors-Appellants.*

———————

Before:

CALABRESI, SOTOMAYOR, and WESLEY, *Circuit Judges.*

Appeals from an order of the United States District Court for the Southern District of New York (Koeltl, *J.*), entered on March 28, 2006, affirming in part and vacating in part the August 17, 2004 Findings of Fact and Conclusions of Law by the United States Bankruptcy Court, Southern District of New York (Lifland, *J.*), regarding Travelers' motions for approval of certain settlement agreements and for entry of a Clarifying Order.

REVERSED.

———————

SANDER L. ESSERMAN (Cliff I. Taylor, *on the brief*), Stutzman, Bromberg, Esserman & Plifka, PC, Dallas, TX (Douglas T. Tabachnik, Law Offices of Douglas T. Tabachnik, Manalapan, NJ, *on the brief*) *for Objector-Appellant Asbestos Personal Injury Plaintiffs.*

JACOB C. COHN (William P. Shelley, *on the brief*), Cozen O'Connor, Philadelphia, PA, *for Objector-Appellant Chubb Indemnity Insurance Company.*

JASON R. SEARCY, (Joshua P. Searcy, *on the brief*), Jason R. Searcy, P.C., Longview, TX, *for Objector-Appellant Cascino Asbestos Claimants.*

BARRY R. OSTRAGER (Andrew T. Frankel, *on the brief*), Simpson Thatcher & Bartlett, LLP, New York, NY (Robert J. Pfister, Simpson Thatcher & Bartlett, LLP, Los Angeles, CA, *on the brief*), *for Movants-Appellees Travelers Casualty and Surety Company, Travelers Property Casualty Corp., and Travelers Indemnity Company.*

RONALD BARLIANT (Kenneth S. Ulrich, Kathryn A. Pamenter, *on the brief*), Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL (Karen A. Giannelli, Gibbons, Del Deo, Dolan, Griffinger & Vecchione,

PC, Newark, NJ, *on the brief*), *for Movant-Appellee Common Law Settlement Counsel.*

MATTHEW GLUCK (Kent A. Bronson, *on the brief*), Milberg Weiss, LLP, New York, NY, *for Movant-Appellee Statutory Direct Action Plaintiffs and the Hawaii Plaintiffs.*

———————

WESLEY, *Circuit Judge:*

Chubb Indemnity Insurance Company, Asbestos Personal Injury Plaintiffs,[1] and Cascino Asbestos Claimants[2] ("Appellants") appeal from an order of the District Court for the Southern District of New York (Koeltl, *J.*) affirming in significant part and vacating in part the Findings of Fact and Conclusions of Law entered by the bankruptcy court (Lifland, *J.*) regarding Travelers'[3] motions for approval of certain settlement agreements and for entry of a Clarifying Order in connection with the Chapter 11 proceeding of the Johns-Manville Corporation ("Manville"). The bankruptcy court granted Travelers' motion to approve settlements with three separate

———————

[1] The Asbestos Plaintiffs are six asbestos claimants: Shirley Melvin for the Estate of Joyce Myers, Pearlie Bailey for the estate of James Bailey, Lee Fletcher Anthony, General Lee Cole, Robert Alvin Griffin and Vernon Warnell. Ms. Melvin, Ms. Bailey and Mr. Warnell are clients of Provost & Umphrey, L.L.P., which represents approximately 10,000 claimants affected by the Common Law Settlement agreement, further discussed *infra*. Mr. Anthony, Mr. Cole and Mr. Griffin are clients of Reaud, Morgan & Quinn and Environmental Litigation Group, P.C., which jointly represents 8,300 claimants affected by the Common Law Settlement Agreement.

[2] The Cascino Asbestos Claimants are Common Law asbestos claimants in Illinois, Wisconsin, Indiana, and Texas represented by Michael P. Cascino.

[3] "Travelers" is defined as: The Travelers Indemnity Company, Travelers Casualty and Surety Company, Travelers Property Casualty Corp., Citigroup Inc., The Travelers Insurance Company, Travelers Life and Annuity Company, and each of their respective direct or indirect parents, subsidiaries, and sister companies, as well as each of their respective predecessors, successors, assigns, officers, and directors.

3

1    classes of "Direct Action"[4] plaintiffs and, in conjunction with the settlements, issued an order

2    clarifying that all Direct Action claims against Travelers were barred by the original 1986

3    injunction that issued as part of Manville's reorganization plan.  Appellants, who were not party

4    to the settlements, argue that the bankruptcy court erred by interpreting its prior order to enjoin

5    suits brought against Travelers that allege independent misconduct by Travelers during its tenure

6    as Manville's primary insurer.  Appellants insist that the bankruptcy court was without subject

7    matter jurisdiction to enjoin claims against Travelers that are not limited by the terms and scope

8    of the insurance coverage Travelers provided Manville, do not seek recovery from Manville's

9    insurance proceeds, and allege independent misconduct by Travelers.  We conclude that the

10   bankruptcy court erred insofar as it enjoined suits that, as a matter of state law, are predicated

11   upon an independent duty owed by Travelers to the Appellants, that do not claim against the *res*

12   of the Manville estate, and that seek damages in excess of and unrelated to Manville's insurance

13   policy proceeds.  The order of the District Court is VACATED and the case REMANDED for

14   further proceedings consistent with this opinion.

15

16                              **Background**

17        This case concerns the outer reaches of a bankruptcy court's jurisdiction.  Manville was,

18   by most sources, "the largest manufacturer of asbestos-containing products and the largest

---

[4]A "direct action" is defined as "[a] lawsuit by a person claiming against an insured but
suing the insurer directly instead of pursuing compensation indirectly through the insured."
BLACK'S LAW DICTIONARY 472 (7th ed. 1999).  Because this term was used in the proceedings
below, we use it here in the interest of clarity.  However, as discussed *infra*, many of the suits in
the instant case do not constitute true "direct action" claims.

4

1    supplier of [raw] asbestos in the United States" from the 1920s until the 1970s. *In re Joint E. &*

2    *S. Dist. Asbestos Litig.*, 129 B.R. 710, 742 (E.D.N.Y. & Bankr. S.D.N.Y. 1991), *vacated on*

3    *other grounds*, 982 F.2d 721 (2d Cir. 1992), *modified on reh'g*, 993 F.2d 7 (2d Cir. 1993).  In its

4    heyday, Manville sold raw asbestos to manufacturers of asbestos-based products in 58 countries

5    and distributed its own asbestos-based products "across the entire spectrum of industries and

6    employment categories subject to asbestos exposure."  (Findings of Fact and Conclusions of Law

7    Regarding Travelers Motions for Approval of Certain Settlement Agreements and for Entry of a

8    Clarifying Order, dated Aug. 17, 2004 (Docket No. 3750), 2004 WL 1876046 (cited herein as

9    "FOF" or "COL") at ¶ 3, 2004 WL 1876046, at *3, *aff'd in part, vacated in part by In re Johns-*

10    *Manville Corp.*, 340 B.R. 49 (S.D.N.Y. 2006).  As a result of studies linking asbestos with

11    respiratory disease, Manville became the target of a growing number of products liability

12    lawsuits in the 1960s and 1970s.  *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 639 (2d Cir.

13    1988).  Buckling under the weight of its asbestos liability, Manville filed for Chapter 11

14    protection on August 26, 1982.[5]  *Id.*

15        The bankruptcy filing was without precedent, largely due to the nature of liability

16    Manville faced:  a person exposed to Manville asbestos might not develop an identifiable injury

17    for decades.[6]  *Id.*; *see also* (FOF ¶ 52; 2004 WL 1876046, at *14).  The bankruptcy court

---

[5]At the time Manville filed its Chapter 11 petition it was a defendant in more than 12,500 asbestos-related suits. *Kane*, 843 F.2d at 639.

[6] As stated by the bankruptcy court:

> The ultimate challenge of these Chapter 11 cases was to formulate a plan of reorganization for the Debtors which would provide for payment to holders of present or known asbestos . . . claims . . . and

1  (Lifland, *J.*),[7] cognizant that Manville's insurance policies were the bankruptcy estate's most

2  valuable asset, realized that the value of those policies to the estate was uncertain because

3  Manville was engaged in extensive litigation with its insurance carriers regarding the scope and

4  limits of its policies. (FOF ¶¶ 53-54; 2004 WL 1876046, at *14). To avoid the uncertainty of

5  the insurance litigation and to fund its plan of reorganization, Manville sought to settle its

6  insurance claims. *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 90 (2d Cir. 1988);

7  (FOF ¶ 53; 2004 WL 1876046, at *14). Ultimately, Manville settled with its insurers for

8  approximately $770 million.[8] *MacArthur*, 837 F.2d at 90.

9  Travelers, Manville's primary insurer from 1947 through 1976, paid nearly $80 million

10  into the bankruptcy estate (in addition to the $20 million already paid in litigation expenses on

11  behalf of Manville) in exchange for a "full and final release of Manville-related claims." (FOF

---

those persons who have not yet manifested an injury but who would
manifest symptoms of asbestos-related illnesses at some future time
. . . . Through it all, this court, this Debtor, and the parties in interest
have had to address societal, legal and economic issues on a scale
heretofore unknown to Title 11 proceedings.

*In re Johns-Manville Corp.*, 97 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) (citing *In re Johns-Manville Corp.*, 68 B.R. 618, 624-25 (Bankr. S.D.N.Y. 1986), *aff'd* 78 B.R. 407 (S.D.N.Y. 1987), *aff'd* 843 F.2d 636 (2d Cir. 1988) (internal quotation marks omitted)); *see also Kane*, 843 F.2d at 638, 639 (describing Manville as "one of the nation's most significant Chapter 11 bankruptcy proceedings" and noting that "[a] significant characteristic of . . . asbestos-related diseases is their unusually long latency period. An individual might not become ill from an asbestos-related disease until as long as forty years after initial exposure"). *Id.*

[7]Judge Lifland has honorably presided over the Manville proceedings since their inception.

[8]Further insurance settlements increased the funding substantially to in excess of $850 million.

6

1    ¶¶ 12, 58; 2004 WL 1876046, at *5, 15); *see also In re Johns-Manville Corp.*, 33 B.R. 254, 260-

2    61 (Bankr. S.D.N.Y. 1983).  Travelers' settlement, like those of the other Manville insurers, was

3    predicated upon the bankruptcy court issuing an injunction that barred suits against Manville's

4    insurers – including Travelers – and directed litigation by potential claimants instead against the

5    Manville Personal Injury Settlement Trust ("Manville Trust").  (FOF ¶¶ 58, 61; 2004 WL

6    1876046, at *15).  The injunction, embodied in the 1986 Confirmation Order (the "Confirmation

7    Order") and the 1986 Insurance Settlement Order (the "Insurance Settlement Order"), channeled

8    to the Manville Trust any and all claims that were based upon, arose out of, or related to

9    Manville's liability insurance policies.  (FOF ¶¶ 61-64; 2004 WL 1876046, at *15-16).

10         The Confirmation Order simultaneously enjoins "all persons" from commencing any

11   action against any of the Settling Insurance Companies "for the purpose of, directly or indirectly,

12   collecting, recovering or receiving payment of, on or with respect to any Claim . . . or Other

13   Asbestos Obligation . . . ."  (Order Confirming Debtors' Second Amended and Restated Plan of

14   Reorganization, dated Dec. 22, 1986 at 25, ¶ 29).  The bankruptcy court would note during this

15   litigation that its "repeated use of the terms 'arising out of' and 'related to' were not gratuitous or

16   superfluous; they were meant to provide the broadest protection possible to facilitate global

17   finality for Travelers as a necessary condition for it to make a significant contribution to the

18   Manville estate."[9]  (COL ¶ 23; 2004 WL 1876046, at *31).

19         Undeterred by the 1986 orders, various groups of plaintiffs subsequently filed Direct

---

[9]The bankruptcy court's 1986 orders were previously affirmed by this Court in *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d at 94.  In 1994, Congress amended the Bankruptcy Code to codify the Manville Injunction.  *See* 11 U.S.C. § 524(g); *see also In re Johns-Manville Corp.*, 340 B.R. 49, 63 n.7 (S.D.N.Y. 2006).

1    Action lawsuits against Travelers and other insurers in several states under a variety of legal

2    theories. (FOF ¶ 70; 2004 WL 1876046, at *17). These lawsuits fall into two broad categories:

3    those based on statutory regulation of insurance practices (the "statutory claims") and those

4    based on common law theories (the "common law claims"). (FOF ¶ 72; 2004 WL 1876046, at

5    *17). The statutory claims aim to assert the rights of individuals who are dissatisfied with the

6    settlements they received after negotiating with Travelers acting on behalf of Manville, or who

7    declined to file personal injury suits against Manville because Travelers allegedly suppressed

8    information about asbestos hazards and intentionally propagated an allegedly-fraudulent "state of

9    the art" defense to frustrate the claimants' rights.[10] (FOF ¶ 73, 78; 2004 WL 1876046, at *18).

10    These plaintiffs allege that Travelers acquired knowledge about the dangers of asbestos through

11    early asbestosis claims from as far back as the 1950s, "recognized the potential for future

12    escalation of asbestos litigation and . . . influence[d] Manville's purported failure to disclose

13    knowledge about asbestos hazards." (FOF ¶ 76; 2004 WL 1876046, at *18). Plaintiffs contend

14    that Travelers' actions amount to a conspiracy in violation of state laws prohibiting unfair

15    insurance trade and settlement practices. (FOF ¶ 74; 2004 WL 1876046, at *18). The common

16    law claimants assert that Travelers violated alleged duties to disclose certain asbestos-related

17    information it learned from Manville during Travelers' long tenure as Manville's primary

---

[10]The "state of the art" defense is essentially an ability-to-foresee defense. The defense theory is that, at the time of a given asbestos exposure, there was no medical or scientific knowledge of a hazard from asbestos-containing products and, accordingly, there was no duty to warn the users of such products. Whatever its merits generally, this defense is, in any event, unavailing if the defendant had knowledge of a hazard associated with its asbestos-containing products and nevertheless failed to warn users. *See* Complaint in *Wise v. Travelers Indem. Co.*, No. 01-C-599 (W. Va. Cir. Ct., Berkeley County, Oct. 25, 2001) (Docket No. 3415, Ex. L), at ¶¶ 180-201.

1    insurer.  (FOF ¶ 82; 2004 WL 1876046, at *19).  Many of these theories of liability have not

2    been accepted by any court.  (FOF ¶ 81; 2004 WL 1876046, at *19).

3        The bankruptcy court found the factual predicate of the common law claims to be

4    virtually identical to the predicate of the statutory actions:  Travelers acquired knowledge

5    regarding the dangers of asbestos in the 1950s, recognized the potential for future escalation of

6    asbestos litigation, and influenced Manville's purported failure to disclose its knowledge of

7    asbestos hazards.  (FOF ¶ 88; 2004 WL 1876046, at *20).  For example, the *Gilchrist* plaintiffs

8    allege that Travelers negligently performed inspections, conspired to deprive plaintiffs of

9    information relating to the risks of asbestos exposure, and misrepresented and suppressed

10   information regarding asbestos.  (FOF ¶ 82; 2004 WL 1876046, at *19).

11       In response to the growing number of Direct Action lawsuits, on June 19, 2002, Travelers

12   moved the bankruptcy court to enjoin twenty-six independent actions pending in Louisiana,

13   Massachusetts, Texas, and West Virginia state courts pursuant to the 1986 orders.[11]  After

14   holding a series of hearings on the motion, the bankruptcy court referred the matter to mediation

15   and appointed the Honorable Mario M. Cuomo, former Governor of the State of New York, as

16   mediator.[12]  Three classes of plaintiffs thereafter settled with Travelers:  the "Statutory Direct

---

[11]Among these claims were two class actions, a consolidated case in West Virginia involving thousands of plaintiffs, and several individual actions.  Of the 4,230 named plaintiffs in the lawsuits for whom information was obtained, at least 4,079 (over 96%) of them had already filed claims against the Manville Trust.  Travelers subsequently filed with the bankruptcy court on January 22, 2003 and June 19, 2003 in an effort to enjoin other Direct Action Lawsuits pending in Texas and Ohio.

[12]The efforts of Governor Cuomo in this matter should not be overlooked.  The Governor's considerable skill as a mediator is apparent from the record; his dedication to this matter is to be commended.

1    Action Plaintiffs," the "Hawaii Plaintiffs," and the "Common Law Plaintiffs" (collectively, the

2    "Plaintiff Appellees").[13]  (FOF ¶¶ 93-105; 2004 WL 1876046, at *21-23).  The settlements,

3    which totaled almost $500 million, were conditioned upon the entry of an order by the

4    bankruptcy court clarifying that the Direct Action lawsuits are, and have always been, prohibited

5    by the 1986 orders.  (FOF ¶¶ 100, 104; 2004 WL 1876046, at *22-23).  The bankruptcy court

6    summarized:  "Travelers has contended throughout this proceeding that the Direct Action Claims

7    are barred by the Court's prior orders . . . .  Nonetheless, under the auspices of the Mediator,

8    Travelers reached a series of landmark settlement agreements that will provide nearly a half

9    billion dollars in additional compensation for asbestos victims."  (FOF ¶ 93; 2004 WL 1876046,

10   at *21).  Both the Statutory Direct Action Settlement and the Common Law Direct Action

11   Settlement require "plaintiffs who participate in the settlement fund to provide releases to

12   Travelers, which would release Travelers from further liability separate and apart from the . . .

13   direct actions or from the protection provided under [the bankruptcy court's] injunctions."  (FOF

14   ¶¶ 99, 103; 2004 WL 1876046, at *22-23).

15         On August 17, 2004, the bankruptcy court approved the settlement agreements and

16   entered a "Clarifying Order" specifying that the Direct Action lawsuits against Travelers were

17   barred by the 1986 orders.[14]  (Order Approving Settlement of the Statutory, Hawaii and Common

---

[13]Because we decide this case on other grounds, facts relating to the reasonableness of the settlements and Appellants' technical objections to the settlements are omitted.

[14]The Clarifying Order contained a judgment reduction provision that reduced the judgment obtained in Direct Action Suits against any objecting insurer by the greater of either (a) the amount that the relevant plaintiff received in the settlement, or (b) the amount that the non-settling insurer would have been entitled to obtain from Travelers in contribution or indemnity, had Travelers been party to the litigation.  Clarifying Order at 8, ¶ 14.

10

1    Law Direct Actions and Clarifying Confirmation Order, Including Insurance Settlement Order

2    and Channeling Injunction, dated Aug. 17, 2004 (Docket No. 3751) ("Clarifying Order") at ¶¶ 6-

3    8, 10).

4          After engaging in extensive fact-finding regarding Manville and its relationship with

5    Travelers, (FOF ¶¶ 1-49; 2004 WL 1876046, at *2-13), the bankruptcy court determined that

6    "Travelers learned virtually everything it knew about asbestos from its relationship with

7    Manville." (FOF ¶ 50; 2004 WL 1876046, at *13). The court noted that while the Direct Action

8    plaintiffs argued that their injuries were separate and independent from those incurred from

9    asbestos exposure, each had experienced personal injury from some form of asbestos exposure.

10   Because "the gravamen of [the] Direct Action Claims were acts or omissions by Travelers

11   arising from or relating to Travelers' insurance relationship with Manville, . . . claims against

12   Travelers based on such actions or omissions necessarily 'arise out of' and 'related to' the

13   Policies." (COL ¶ 25; 2004 WL 1876046, at *32).

14         The court invoked our earlier decision in *MacArthur Co. v. Johns-Manville Corp.*, 837

15   F.2d at 93-94, in which we determined that the 1986 orders were jurisdictionally sound as they

16   sought to protect a valuable asset of the bankruptcy estate – Manville's insurance contracts – and

17   concluded that "the Second Circuit has already considered and rejected a claim that the

18   provisions in the Confirmation Order and the Insurance Settlement Order . . . exceeded this

19   Court's jurisdiction." (COL ¶ 9; 2004 WL 1876046, at *28). In the bankruptcy court's view, the

20   Direct Actions violated the 1986 orders, as would future actions of the same variety. (COL ¶ 19;

21   2004 WL 1876046, at *30). The district court affirmed the bankruptcy court's findings of fact

11

1    and conclusions of law in substantial part.[15]  *In re Johns-Manville Corp.*, 340 B.R. 49, 72-73

2    (S.D.N.Y. 2006).  The court labeled the Direct Action Claims as "creatively pleaded attempts to

3    collect *indirectly* against the Manville insurance policies" and concluded that "barring these

4    claims was a proper exercise of jurisdiction." *Id.* at 64 (citing COL ¶¶ 25-32; 2004 WL

5    1876046, at *32-33) (emphasis added).  The district court recognized that there were

6    jurisdictional limits on the scope of the injunction protecting Travelers from future direct

7    actions: "[T]he Bankruptcy court has no jurisdiction to bar a suit alleging tortious conduct by

8    Travelers on behalf of a non-Manville insured, conduct that is unrelated to Manville and not

9    based on any knowledge of asbestos gained from Manville, and that did not involve Manville

10   asbestos or asbestos products." *Id.* at 65.  These appeals followed.

11

12                                        **Discussion**

13            Although several of the parties raise ancillary issues, the current controversy is primarily

14   a question of jurisdiction.  Appellants argue that the bankruptcy court was without jurisdiction to

15   enjoin third-party non-debtor suits against Travelers.[16]  They insist that the bankruptcy court

16   failed to properly distinguish between (a) claims that seek to recover directly from Travelers for

17   Travelers' separate acts and (b) true Direct Action suits that seek to recover from an insurer

---

[15]The district court vacated the portion of the bankruptcy court's Findings and Clarifying Order relating to the so-called "gate-keeping" provision installed by the bankruptcy court. *In re Johns-Manville Corp.*, 340 B.R. at 65-66.  As written, the "gate-keeping" provision required plaintiffs bringing "asbestos-related direct actions against Travelers" to file for and obtain the bankruptcy court's approval before proceeding.  *Id.* at 66 n.12.

[16]Although Appellants specifically contest the bankruptcy court's jurisdiction to enjoin the common law claims, we consider the bankruptcy court's jurisdiction to enjoin both the statutory and common law claims to the extent that they are indistinguishable.

1    contractually obligated to indemnify Manville for its misconduct.[17]  Appellees, on the other

2    hand, are of the view that the bankruptcy court was merely enforcing its prior order.  They are

3    quick to point out that we have previously upheld the jurisdictional basis for that order's

4    prohibition of an earlier set of policy-related claims.  *See MacArthur*, 837 F.3d at 92-93.

5         It is undisputed that the bankruptcy court had continuing jurisdiction to interpret and

6    enforce its own 1986 orders.  *See In re Johns-Manville Corp.*, 340 B.R. at 59 (citing COL ¶ 8,

7    2004 WL 1876046, at *28); *see also In re Petrie Retail, Inc.*, 304 F.3d 223, 230 (2d Cir. 2002);

8    Confirmation Order ¶ 28.  And, as mentioned earlier, this Court has already considered and

9    rejected a jurisdictional challenge to the 1986 orders.  *See MacArthur*, 837 F.2d at 91-93; *Kane*,

10    843 F.2d at 643 n.4 (citing *MacArthur*).  But while there is no doubt that the bankruptcy court

11    had jurisdiction to clarify its prior orders, that clarification cannot be used as a predicate to

12    enjoin claims over which it had no jurisdiction.  Thus, the bedrock jurisdictional issue in this

---

[17]Chubb Indemnity Insurance Company raises separate subject matter jurisdiction arguments and more generalized objections couched in due process.  Because we decide this case on other grounds, we do not specifically address Chubb's claims.  We do note, however, that the indemnity or contribution rights of Chubb and other insurers against Travelers do not significantly differ from the statutory and common law claims discussed herein.  Although these contribution and indemnity claims are brought by insurers that were named in statutory and common law actions, their claims, like the underlying statutory and common law actions, are beyond the bankruptcy court's jurisdiction.  *Cf. In re Johns-Manville Corp.*, 340 B.R. at 65 n.10 ("It also follows that because the Bankruptcy Court had jurisdiction to enjoin the Direct Action Suits, it had jurisdiction to enjoin the claims by other insurers against Travelers for contribution or indemnity.").  The district court determined that claims for contribution and indemnity were properly enjoined to "provide[] protection from other insurance companies who sought to hold Travelers liable indirectly for the damages that it could not be held directly liable to the individual claimants." *Id.* at 61.  The fact that Chubb's contribution and indemnity rights are even at issue is indicative of the non-derivative liability that these claims allege:  instead of stepping into the shoes of Manville or its vendors to recover some of Manville's insurance coverage, these plaintiffs allege that the insurance industry as a whole had a duty to warn the general public about the dangers of asbestos.  (FOF ¶¶ 80-92; 2004 WL 1876046, at *19-21).

13

1    case requires a determination as to whether the bankruptcy court had jurisdiction over the

2    disputed statutory and common law claims.  A careful review of the district court's endorsement

3    of the bankruptcy court's analysis is in order.

4         The district court began its jurisdictional inquiry by considering whether the Direct

5    Action suits and any related contribution and indemnification claims were covered by the 1986

6    orders. *In re Johns-Manville Corp.*, 340 B.R. at 59-61.  After determining that a plain reading of

7    the Insurance Settlement Order would include the Direct Action claims, the court noted that the

8    bankruptcy court's intentional use of broad language in the 1986 orders was meant to provide

9    Travelers with "global finality . . . as a necessary condition for it to make a significant

10   contribution to the Manville estate." *Id.* at 60 (quoting COL ¶ 23; 2004 WL 1876046, at *31).

11   The district court affirmed the bankruptcy court's interpretation of its 1986 orders as covering

12   the Direct Action suits, finding it "reasonable to interpret the 1986 Orders as giving Travelers

13   such broad protection against Direct Action Suits to induce it to contribute funds to the Manville

14   Trust, which was key to the confirmation of the Manville [Bankruptcy] Plan." *Id.* at 61.

15        Having determined that the 1986 orders covered the suits at issue, the district court next

16   considered whether the 1986 order themselves were a proper exercise of jurisdiction over non-

17   debtors. *Id.*  Relying on *MacArthur* and a Fifth Circuit case that considered the application of the

18   1986 orders to Direct Action claims filed against Travelers in Louisiana, *In re Davis*, 730 F.2d

19   176, 183-84 (5th Cir. 1984) (per curiam), the court concluded that "the Bankruptcy Court had

20   jurisdiction over Travelers' insurance policies, and could act to protect them from dissipation by

21   direct action claims." *In re Johns-Manville Corp.*, 340 B.R. at 63.  Without considering the

14

1    possibility of variations among these state law based claims, the court opined that "[s]uits that

2    seek direct recovery authorized by state statutes from Travelers' insurance policies would reduce

3    the estate's recovery from those policies, thus affecting the 'property of the estate.'" *Id*. Thus,

4    the district court concluded that the bankruptcy court "had subject matter jurisdiction to enjoin

5    these types of direct action claims." *Id*.

6         The court found congressional support for its conclusion in legislation that explicitly

7    authorizes bankruptcy court "injunctions barring derivative claims against third party insurers."

8    *Id*. (citing 11 U.S.C. § 524(g)).  The court explained that 11 U.S.C. § 524(g), added to the

9    Bankruptcy Code by the Bankruptcy Reform Act of 1994, was modeled on the Manville

10   injunction. *See* H.R. Rep. 103-835, at 41 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3349.[18]

11   The district court viewed the statute as a congressional indication "that the Bankruptcy Court's

12   subject matter jurisdiction extend[s] to claims against third party insurers arising from their

13   insurance relationship with the debtor tortfeasor." *In re Johns-Manville Corp.*, 340 B.R. at 63.

14        The district court, like the bankruptcy court, determined that the Direct Action suits seek

---

[18]Section 524(g)(4)(A)(ii) provides:

> [A]n injunction may bar any action directed against a third party who
> is identifiable from the terms of such injunction (by name or as part
> of an identifiable group) and is alleged to be directly or indirectly
> liable for the conduct of, claims against, or demands on the debtor to
> the extent such alleged liability of such third party arises by reason
> of . . . (III) the third party's provision of insurance to the debtor or a
> related party.

1    *indirect* recovery from the proceeds of the insurance policies as a result of personal injuries

2    caused by Manville products. *Id.* at 67. To support its conclusion, the district court relied on the

3    bankruptcy court's factual determinations that the "gravamen of these suits is that Travelers

4    learned of asbestos risks from its [policy-based] defense of Manville in asbestos-related claims,

5    and failed to disclose or otherwise suppressed this knowledge" and that "essentially all potential

6    asbestos claimants – including all plaintiffs with Direct Action Claims – have been exposed to

7    Manville asbestos." *Id.* at 63-64 (citing FOF ¶¶ 11, 73-88; 2004 WL 1876046, at *5, 18-20).

8         In our view, the jurisdictional analysis by the lower courts falls short for several reasons.

9    In *MacArthur*, a Manville asbestos distributor ("MacArthur") sought a judicial declaration of

10   coinsured status under "vendor endorsements" contained in Manville's policies. *MacArthur*, 837

11   F.2d at 90. This Court concluded that the 1986 orders prohibited MacArthur from calling on the

12   endorsement for coverage after being sued for asbestos injuries caused by Manville products. *Id.*

13   at 92-93. MacArthur insisted that its "vendor endorsement" claims were independent contractual

14   claims against the non-debtor insurance companies that were therefore not within the

15   jurisdictional reach of the 1986 orders. *Id.* at 92. We rejected that view, reasoning that the 1986

16   orders precluded suits against a significant asset of the bankruptcy estate – Manville's insurance

17   policies[19] – and that MacArthur's coverage claim clearly affected that asset:

18

19              The [vendor] endorsements are limited by the product liability limits
20              of the underlying Manville policies and are otherwise subject to all

---

[19]Title 28 U.S.C. § 1334(e)(1) grants "[t]he district court in which a case under title 11 is commenced . . . exclusive jurisdiction . . . (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."

1    of the terms of the underlying policies.  [Plaintiff's] rights as an
2    insured vendor are completely derivative of Manville's rights as the
3    primary insured. . . .  [Plaintiff] seek[s] to collect out of the proceeds
4    of Manville's insurance policies on the basis of Manville's
5    conduct. . . .  [P]laintiff['s] claims are inseparable from Manville's
6    own insurance coverage and are consequently well within the
7    Bankruptcy Court's jurisdiction over Manville's assets.

11    *Id.* at 92-93 (citation omitted).  MacArthur's claim for defense and indemnification from the

12    carrier would have reduced the amount of insurance available to satisfy claims against Manville.

13    *Id.* at 92.  Thus, MacArthur's claim for coverage was barred by the injunction and MacArthur

14    was left to make a claim against the Manville Trust. *Id.* at 93-94.

15            The Fifth Circuit applied a similar analysis in *In re Davis*, 730 F.2d at 184.  In *Davis*, 279

16    asbestos workers sued Travelers under a Louisiana statute that afforded injured persons "a right

17    of direct action against the insurer within the terms and limits of the policy [that] may be brought

18    against the insurer alone, or against both the insured and insurer jointly and in solido."  La. Rev.

19    Stat. § 22:655 (1984).  The Louisiana direct action statute "does not create an independent cause

20    of action against the insurer, it merely grants a procedural right of action against the insurer

21    where the plaintiff has a substantive cause of action against the insured." *Descant v. Adm'rs of*

22    *Tulane Educ. Fund*, 639 So. 2d 246, 249 (La. 1994); *see also Cacamo v. Liberty Mut. Fire Ins.*

23    *Co.*, 764 So. 2d 41, 43 (La. 2000).  While the workers' cases were pending, Johns-Manville filed

24    its bankruptcy petition, triggering the provisions of an automatic stay. *In re Davis*, 730 F.2d at

25    178.  The Fifth Circuit refused to vacate the stay for primarily the same reasons as those

26    expressed by this Court in *MacArthur*.  The Court noted that the bankruptcy court had the

27    authority to "enjoin litigants from pursuing actions pending in other courts that threaten the

17

1    integrity of a bankrupt's estate" and that the insurance coverage served as a "bulwark against

2    erosion of the estate." *Id.* at 184, 185.

3           The claims at issue in *MacArthur* and *Davis* differ significantly from the statutory and

4    common law claims at issue here.  Travelers candidly admits that both the statutory and common

5    law claims seek damages from Travelers that are *unrelated* to the policy proceeds, quite unlike

6    the claims in *MacArthur* and *Davis* where plaintiffs sought indemnification or compensation for

7    the tortious wrongs of Manville to be paid out of the proceeds of Manville's insurance policies,

8    *see MacArthur*, 837 F.2d at 92; *Davis*, 730 F.2d at 178.  Moreover, the claims at issue here do

9    not seek to collect on the basis of Manville's conduct.  *Cf. MacArthur*, 837 F.2d at 92-93

10   ("[P]arties . . . seek to collect . . . on the basis of Manville's conduct.").  Instead, the Plaintiffs

11   seek to recover directly from Travelers, a non-debtor insurer, for its own alleged misconduct.

12   (FOF ¶¶ 73-87; 2004 WL 1876046, at *18-20).  Plaintiffs neither seek to recover insurance

13   proceeds nor rely on the insurance policies for recovery.

14          The courts below appeared to view the jurisdictional inquiry as a factual one:  if the

15   direct actions "arose out of" or are "related to" the Manville-Travelers relationship, then the

16   court had jurisdiction.  But the factual determination was only half of the equation.  The nature

17   and extent of Travelers' duty to the Direct Action plaintiffs is a function of state law.  Neither

18   court looked to the laws of the states where the claims arose to determine if indeed Travelers did

19   have an independent legal duty in its dealing with plaintiffs, notwithstanding the factual

20   background in which the duty arose.

21          For example, one group of statutory plaintiffs seeks "[d]amages for aggravation,

22   inconvenience and frustration" based on Travelers' alleged violations of West Virginia's Unfair

18

1    Trade Practices Act. *See* W. Va. Code § 33-11-4(9); Complaint in *Wise v. Travelers Indem. Co.*,

2    No. 01-C-599 (W. Va. Cir. Ct., Berkeley County, Oct. 25, 2001) (Docket No. 3415, Ex. L), at

3    95. Although the West Virginia Unfair Trade Practices Act "itself does not provide for damages

4    for a violation of its provisions," the Supreme Court of Appeals of West Virginia has "identified

5    the type of damages recoverable under the Act as including attorney's fees and even punitive

6    damages." *Wilt v. State Auto. Mut. Ins. Co.*, 506 S.E.2d 608, 609 n.4, 610 (W. Va. 1998).[20]

7    Moreover, it is clear under West Virginia law that settlement of the underlying tort case against

8    the tortfeasor does not preclude a separate and independent recovery against the tortfeasor's

9    insurer arising out of its alleged bad faith insurance practices. *See Poling v. Motorists Mut. Ins.*

10    *Co.*, 450 S.E.2d 635, 636-37 (W. Va. 1994) (answering a certified question and determining that

11    a cause of action for insurance bad faith under W. Va. Code § 33-11-4(9) is not precluded by the

12    settlement of the underlying tort case against the tortfeasor). Thus, it is evident that Plaintiffs'

13    Direct Action claims constitute independent tort actions.[21]

_____

[20]The Clarifying Order also enjoins a number of actions filed in Massachusetts. Under Massachusetts law, a plaintiff may recover compensatory and punitive damages against an insurer under the Massachusetts Unfair Settlement Practices Act after settling with the underlying tortfeasor. *See Dattilo v. Arbella Mut. Ins. Co.*, No. 024510E, 2007 WL 1417870, at *1, 5-6 (Mass. Super. Ct. May 3, 2007) (citing *Columbia Chiropractic Group, Inc., v. Trust Ins. Co.*, 430 Mass. 60, 63 (1999) (attorney's fees incurred as a result of an insurer's wrongful failure to settle in violation of the Massachusetts unfair settlement practices act may be awarded as Mass. Gen. Law Chap. 93A damages and such amount may be subject to punitive damages)); *see also* Complaint in *Gilchrist v. Am. Standard, Inc.*, No. 03-508628 (Ohio Ct. Com. Pl.), at 1-13, 101 (plaintiffs seek compensatory and punitive damages in relation to their common law claims for, *inter alia*, negligence, strict liability, and breach of express warranty).

[21]The parties have indicated that no court that has accepted the common law theories asserted in this case. *See* Brief of the State of Texas as Amicus Curiae, *In re St. Paul Fire & Marine Ins. Co.*, No. 01-06-00165-CV, 2006 WL 1403983, at *8 (Tex. Ct. App., filed Apr. 24, 2006) (citing *Bugg v. Am. Standard, Inc.*, No. 84829, 2005 WL 1245043 (Ohio Ct. App. May 26, 2005) (dismissing common law action for failure to state a claim); *Bope v. A.W. Chesterton Co.*,

19

1          The importance of how a state defines these types of claims cannot be overlooked.  For

2    example, as noted above, the claims involving Louisiana law are premised on a statute that

3    provides a direct action against an insurer when the insured is insolvent.  The recovery is against

4    the policy and is thus limited to the coverage of the policy.  *See* La. Rev. Stat. § 22:655(B)(1)(a)-

5    (b).  These were the type of claims in play in *Davis* and, in our view, *Davis* was correctly

6    decided.  To the extent the Clarifying Order limits claims based on that Louisiana statute the

7    order is on sound jurisdictional ground.

8          However, the vast majority of the instant claims more closely resemble those at issue in

9    *Matter of Zale Corp.*, 62 F.3d 746 (5th Cir. 1995).  In *Zale*, the creditors' committee in Zale

10   Corporation's ("Zale") bankruptcy planned to initiate tort and contract claims against Zale's

11   officers and directors.  *Id.* at 749-50.  Cigna Insurance Company ("CIGNA") had issued Zale an

12   insurance policy that provided primary coverage for Zale's officers and directors.  *Id.*  The

13   National Union Fire Insurance Company ("NUFIC") had issued Zale an excess directors and

14   officers liability policy, which provided coverage in excess of CIGNA's primary policy limits.

15   *Id.* at 749 n.1.  Eventually, various parties to the Zale bankruptcy filed a motion in the

16   bankruptcy court seeking approval of a settlement agreement between Zale and CIGNA whereby

17   certain Zale officers and directors would agree to a $32 million judgment to be satisfied solely

18   out of insurance proceeds.  *Id.* at 749.  The bankruptcy court approved the settlement agreement,

19   which included an injunction barring NUFIC from suing CIGNA for its actions relating to the

---

No. 85215, 2005 WL 2562913 (Ohio Ct. App. Oct. 13, 2005) (same); *In re Civil Action-Welding Rod*, No. 531703 *et al.*, 2006 WL 397951 (Ohio Ct. Com. Pl. Feb. 15, 2006) (same)).  We note, however, that the states' unwillingness to recognize these actions does not vest a federal court with jurisdiction to enjoin all such future claims.

1    settlement. *Id.* at 749-50.  NUFIC challenged the injunction, insisting that its bad faith tort

2    claims against CIGNA did not "relate to" the bankruptcy for jurisdictional purposes because the

3    claims were not property of the estate and had no effect on the estate.  *Id.* at 755; *see* 28 U.S.C. §

4    1334(b) ("[T]he district courts shall have original but not exclusive jurisdiction of all civil

5    proceedings arising under title 11, or arising in or *related to* cases under title 11." (emphasis

6    added)).

7              The Fifth Circuit first observed that:

8

9              Those cases in which courts have upheld "related to" jurisdiction
10             over third-party actions do so because the subject of the third-party
11             dispute is property of the estate, or because the dispute over the asset
12             would have an effect on the estate.  Conversely, courts have held that
13             a third-party action does not create "related to" jurisdiction when the
14             asset in question is not property of the estate and the dispute has no
15             effect on the estate.  Shared facts between the third-party action and
16             a debtor-creditor conflict do not in and of themselves suffice to make
17             the third-party action "related to" the bankruptcy. . . .  [T]he district
18             court's desire to "foster and encourage and then preserve settlement
19             in federal court" does not in and of itself confer jurisdiction.
20
21

22   *Zale*, 62 F.3d at 753-54 (internal citations and footnotes omitted).  The issue before the court was

23   "not whether the bankruptcy court had jurisdiction over the settlement and CIGNA, but whether

24   the bankruptcy court had jurisdiction over an attempt to enjoin actions between . . . NUFIC and

25   CIGNA."  *Id.* at 755.  The Fifth Circuit concluded that NUFIC's bad faith tort claims were

26   beyond the jurisdictional reach of the bankruptcy court.

27

28             Because CIGNA, [the directors], and NUFIC are not debtors and

21

1  because the property at issue–the bad faith claims–is not property of
2  the estate, the bankruptcy court would have no jurisdiction over the
3  tort claims . . . .  Moreover, the tort claims do not implicate an
4  independent obligation of Zale in favor of CIGNA. . . .  For these
5  reasons, the settlement cannot provide the basis for jurisdiction over
6  the bad faith claims.  Accordingly, CIGNA and Zale's attempt to
7  establish jurisdiction fails, and the bankruptcy court had no
8  jurisdiction over . . . NUFIC's tort actions against CIGNA.

12 *Id.* at 756-57 (internal citations and footnotes omitted).  The Fifth Circuit thus vacated the

13 approval of the settlement between Zale and CIGNA. *Id.* at 766.

14        The fact that our case involves a clarification of the bankruptcy court's prior order does

15 not alter the jurisdictional predicate necessary to enjoin third-party non-debtor claims.[22]  Here, as

16 in *Zale,* Plaintiffs seek to recover directly from a debtor's insurer for the insurer's own

17 independent wrongdoing.  (FOF ¶¶ 73-87; 2004 WL 1876046, at *18-20).  Plaintiffs aim to

18 pursue the assets of Travelers.  They raise no claim against Manville's insurance coverage.  They

19 make no claim against an asset of the bankruptcy estate, nor do their actions affect the estate.

20 The bankruptcy court had no jurisdiction to enjoin the Direct Action claims against Travelers.[23]

─────────────────

[22]The ancillary jurisdiction courts possess to enforce their own orders "is itself limited by the jurisdictional limits of the order sought to be enforced." *In re Fairchild Aircraft Corp.*, 184 B.R. 910, 916 (Bankr. W.D. Tex. 1995) (citing *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 163 (7th Cir. 1994); *Matter of Mooney Aircraft, Inc.*, 730 F.2d 367, 374-75 (5th Cir. 1984)), *vacated on other grounds*, 220 B.R. 909 (Bankr. W.D. Tex. 1998).

[23]*See also In re Elsinore Shore Assocs.*, 91 B.R. 238, 253-54 (Bankr. D. N.J. 1988) (rejecting debtors' proposed Chapter 11 reorganization plan that improperly called for creditors to release their claims against third-party nondebtors):

    [The debtor] contends that if a bankruptcy court has the power to
    enjoin suits against nondebtor third parties, as in [*MacArthur*], it has
    the power to order the release of claims.  Such an interpretation and

22

1

2                                              **II**

3          The district court emphasized the bankruptcy court's declaration that its "repeated use of

4   the term[s] 'arising out of' and 'related to' [was] not gratuitous or superfluous; they were meant

5   to provide . . . global finality for Travelers . . . ." *In re Johns-Manville Corp.*, 340 B.R. at 60.

6   But global finality is only as "global" as the bankruptcy court's jurisdiction.  A court's ability to

7   provide finality to a third-party is defined by its jurisdiction, not its good intentions.  We have

8   previously recognized that "a nondebtor release is a device that lends itself to abuse.  By it, a

9   nondebtor can shield itself from liability to third parties.  In form, it is a release; in effect, it may

10  operate as a bankruptcy discharge arranged without a filing and without the safeguards of the

11  Code." *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005).  In finding it

12  reasonable to broadly interpret the 1986 orders to enjoin the statutory and common law actions,

13  the district court relied on the bankruptcy court's conclusion of law that "insurers would not

14  contribute funds [to the Manville Trust] without receiving assurances that any liabilities arising

---

> extension of the Second Circuit's holding is inappropriate.  The
> bankruptcy court in [*MacArthur*] was dealing with claims against
> property of the estate . . . which are subject to the court's jurisdiction.
> . . . To extend the holding in [*MacArthur*] to this situation is based
> on neither law or logic.  This court may properly invoke its
> jurisdiction over creditors of [the debtor] when these creditors'
> actions may effect property of the estate.  However, for this court to
> delve into the rights of these creditors against third parties not before
> this court is an over-extension of this court's jurisdiction.

*Id.* at 253-54 (internal citations omitted).

23

1    from or relating to their insurance relationships with Manville would be fully and finally

2    resolved." *In re Johns-Manville Corp.*, 340 B.R. at 61 (citing COL ¶ 20; 2004 WL 1876046, at

3    *30) (alteration in original).  It is, however, "precisely this conditioning of financial participation

4    by non-debtors on releases that is subject to the sort of abuse foreseen" in *Metromedia. In re*

5    *Karta Corp.*, 342 B.R. 45, 55 (S.D.N.Y. 2006).  Although the bankruptcy court had jurisdiction

6    and authority to enter the 1986 orders barring claims "based upon, arising out of or related to the

7    Policies," (Insurance Settlement Order at 165, ¶ 23.1), it erred by subsequently interpreting those

8    terms without reference to the court's jurisdictional limits.

9          It was inappropriate for the bankruptcy court to enjoin claims brought against a third-

10    party non-debtor solely on the basis of that third-party's financial contribution to a debtor's

11    estate.  If that were possible

12

> 13    a debtor could create subject matter jurisdiction over any non-debtor
> 14    third-party by structuring a plan in such a way that it depended upon
> 15    third-party contributions.  As we have made clear, subject matter
> 16    jurisdiction cannot be conferred by consent of the parties.  Where a
> 17    court lacks subject matter jurisdiction over a dispute, the parties
> 18    cannot create it by agreement even in a plan of reorganization.

19
20

21    *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 228 (3d Cir. 2004) (citation and quotation marks

22    omitted).

23          Instead, a bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims

24    that directly affect the *res* of the bankruptcy estate.  In *MacArthur* we recognized that conclusion

25    as the decisional pivot for both *MacArthur* and *Davis*.  "[I]n both instances, third parties seek to

1  collect out of the *proceeds* of Manville's insurance policies on the basis of Manville's conduct. . . .

2  [P]laintiffs' claims are inseparable from Manville's own insurance coverage and are consequently

3  well within the Bankruptcy Court's jurisdiction over Manville's assets." *MacArthur*, 837 F.2d at

4  92-93 (emphasis added).

5       The district court made particular note of the bankruptcy court's extensive factual findings

6  regarding Manville's dominating presence in the asbestos industry, (FOF ¶¶ 1-11; 2004 WL

7  1876046, at *1-5), and its thirty-year involvement with Travelers, (FOF ¶¶ 12-50; 2004 WL

8  1876046, at *5-13). *In re Johns-Manville Corp.*, 340 B.R. at 64. The court embraced the

9  bankruptcy court's factual findings that "Travelers learned virtually everything it knew about

10  asbestos from its relationship with Manville" and that "the Direct Action Claims against Travelers

11  'inescapably' relate to its insurance relationship with Manville." *Id.* (quoting (FOF ¶¶ 49-50; 2004

12  WL 1876046, at *13)). There is no doubt that these findings by the bankruptcy court document

13  the *factual* origins of Travelers' alleged malfeasance. The factual findings are, however, only part

14  of the liability equation. What remained was a legal determination: did Travelers owe a duty to

15  the Direct Action Plaintiffs independent of its contractual obligations to indemnify those injured

16  by the tortious conduct of Manville? If such a duty exists, then the fact that it arises from a

17  common nucleus of operative facts involving Travelers and Manville (*e.g.*, the Manville /

18  Travelers insurance relationship) is of little significance from a jurisdictional standpoint. As noted

19  above, drawing the duty line is a function of state and not federal law. *See, e.g., Hamilton v.*

20  *Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232-40 (2001).

21       There is little doubt that, in a literal sense, the instant claims against Travelers "arise out

22  of" its provision of insurance coverage to Manville. The bankruptcy court's extensive factual

1    findings regarding Manville's all-encompassing presence in the asbestos industry and its extensive

2    relationship with Travelers support this notion. (FOF ¶¶ 1-50; 2004 WL 1876046, at *1-13).

3    However, the 1986 orders must be read to conform with the bankruptcy court's jurisdiction over

4    the *res* of the Manville estate.[24] Interpreting the orders otherwise risks federal bankruptcy courts

5    "displac[ing] state courts for large categories of disputes in which some[one] . . . may be

6    bankrupt." *Matter of Zale Corp.*, 62 F.3d at 755 (quoting *In re Kubly*, 818 F.2d 643, 645 (7th Cir.

7    1987)) (second alteration in original).

8        Section 524(g), enacted in response to the bankruptcy court's actions in earlier proceedings

9    in this case, must be interpreted in the same manner. The legislation provides a unique form of

10   supplemental injunctive relief for an insolvent debtor confronting the particularized problems and

11   complexities associated with asbestos liability. *See, e.g.,* H.R. Rep. 103-835, at 40, *as reprinted in*

12   1994 U.S.C.C.A.N. 3340, 3348; *see also In re Combustion Eng'g, Inc.*, 391 F.3d at 234. Section

13   524(g) mandates the channeling of related claims to a personal injury trust, thereby relieving the

14   debtor of the uncertainty of future asbestos liabilities and helping to achieve the purpose of

15   Chapter 11 by facilitating the reorganization and rehabilitation of the debtor as an economically

16   viable entity. *Id.* Section 524(g)(4)(A)(ii)(III) provides:

17

---

[24]A bankruptcy court is clearly without power to enjoin all claims that literally "arise out of" the insurance policies that Manville purchased from Travelers. Suppose, for example, that a plaintiff sued Travelers for suppressing information about the dangers of asbestos in relation to a policy it issued to another asbestos manufacturer. Although the knowledge that Travelers failed to disclose may have "arisen out of" its relationship with Manville, allowing a bankruptcy court to bar such claims because they literally "arise out of" that relationship would embody the abuse foreseen by this Court in *Metromedia*, 416 F.3d at 142.

26

> Notwithstanding the provisions of section 524(e),[25] such an
> injunction
>      may bar any action directed against a third party who is
> identifiable from the terms of such injunction (by name or as part of
> an identifiable group) and is alleged to be *directly or indirectly liable*
> *for the conduct of, claims against, or demands on the debtor to the*
> *extent such alleged liability of such third parties arises by reason of*
> . . . (III) the third party's provision of insurance to the debtor . . . .

*Id.* (emphasis added).

The application of a § 524 injunction is limited to "situations where a channeling injunction may enjoin actions against third parties to those where a third party has derivative liability for the claims against the debtor." *In re Combustion Eng'g, Inc.*, 391 F.3d at 234. The Third Circuit has noted that § 524(g)(4)(A)(ii) is consistent with the purposes underlying § 524(g):

> The channeling injunction issued in the Johns-Manville bankruptcy,
> after which § 524(g) was modeled, *see* 140 Cong. Rec. H10752,
> H10765 (1994) . . . was limited to third-party actions against non-
> debtors in which the liability alleged was derivative of the debtor.
> *See MacArthur Co. v. Johns-Manville*, 837 F.2d 92-93 (2d Cir. 1988)
> (explaining that the channeling injunction applied only to third
> parties [who] seek to collect out of the proceeds of Manville's
> insurance policies on the basis of Manville's conduct).

*Id.* at 235 n.47 (citations and internal quotation marks omitted). As discussed above, the claims at issue here, unlike those in *Davis* and *MacArthur*, are not derivative of Manville's liability, but rather seek to recover directly from Travelers for its own alleged misconduct. While Congress

---

[25]Title 11 U.S.C. § 524(e) provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."

1   enacted § 524(g) to reflect the injunction / channeling mechanism that the Manville bankruptcy

2   court developed in response to various derivative claims, the provision was not intended to reach

3   non-derivative claims.  Because the claims here are non-derivative and have no effect on the *res*,

4   they are outside the limits of § 524(g).

5

6                                                 **Conclusion**

7           In our view, the district court lacked subject matter jurisdiction to enjoin claims against

8   Travelers that were predicated, as a matter of state law, on Travelers' own alleged misconduct

9   and were unrelated to Manville's insurance policy proceeds and the *res* of the Manville estate.

10  The irony in all of this is that while the Direct Actions, with one categorical exception, involve a

11  claim of an independent duty on the part of Travelers, they have met with almost universal failure

12  in the state courts.  Thus, while the bankruptcy court's order sought to achieve one-stop relief for

13  Travelers that could be seen as well deserved, it seems to us there is not one but many

14  courthouses where the legitimacy of these actions must be tested.  The bankruptcy court's desire

15  to facilitate global finality for Travelers may not be used as a jurisdictional bootstrap when no

16  jurisdiction otherwise exists.  The order of the district court is VACATED and the case

17  REMANDED for the bankruptcy court to examine whether, in light of this opinion, it had

18  jurisdiction to enjoin any of the instant claims.[26]

19

_____

[26]Travelers asserts that if any portion of the bankruptcy court's clarifying order is vacated
then all of the relevant settlements will terminate.  We offer no opinion on this matter and leave
it to the parties, with the aid of the bankruptcy court, to determine the status of their settlements.

28