## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 01-01139 (JKF) |
| W.R. GRACE & CO., *et al.*, | ) | (Jointly Administered) |
| | ) | |
| | ) | **Objection Deadline: April 4, 2008 @ 4:00 P.M.** |
| Debtors. | ) | **Hearing Date: April 21, 2008 @ 1:00 P.M.** |
| | ) | |
| | ) | **Re: Docket Nos. 15209, 15210, 15421** |

### SPEIGHTS & RUNYAN'S MOTION
### FOR EXTENSION OF TIME FOR THREE
### CLAIMANTS TO FILE A MEMORANDUM REGARDING
### MOTION TO ALTER OR AMEND THE COURT'S ORDER
### AND MEMORANDUM OPINION DISALLOWING AND EXPUNGING
### 71 CLAIMS ENTERED ON APRIL 17, 2007 AS DIRECTED BY THE COURT
### AT THE NOVEMBER 26, 2007 AND JANUARY 25, 2008 OMNIBUS HEARINGS

Pending before the Court is an April 27, 2007 Motion to Alter or Amend the Court's Order and Memorandum Opinion Disallowing and Expunging 71 Claims Entered on April 17, 2007 ("Motion"). The Motion was filed by Speights & Runyan ("S&R") on behalf of three claimants: Bayshore Community Hospital (Claim No. 6901), Children's Hospital of Pittsburgh (Claim No. 10962), and Jameson Memorial Hospital (Claim No. 14410) (collectively "Three Claimants"). The claims at issue ("Three Claims") are the last property damage claims before this Court which are subject to the September 1, 2005 Thirteenth Omnibus Objection, in which the Debtors ("Grace") challenged S&R's authority. Consequently, the Three Claims are also the last property damage claims being handled by Grace's bankruptcy counsel, Kirkland & Ellis ("K&E"), as opposed to its special asbestos property damage counsel, Reed Smith.

On August 29, 2007, this Court entered an Order regarding the Motion in which it found that documents submitted by S&R "are copies of signed authorizations which indicate that they

were faxed to Speights prior to the bar date."[1]  The Court recognized, however, that K&E had

alleged that these documents were "unreliable" and in one instance "particularly suspect."[2]  The

Court directed the parties to file documentary evidence regarding authorizations for the Three

Claims, and then to meet and confer "in an effort to settle this dispute."[3]  The Court also set a

status conference on November 26, 2007, "to address the need for further proceedings, if any."[4]

Later that same day, near the conclusion of the August omnibus hearing, K&E (Mr.

Bernick) made an oral Motion to Alter or Amend the Order by adding another issue – whether or

not S&R had failed to comply with this Court's September 23, 2005 Order – "because I think

that to a certain extent it's been under the radar so far," and it was not part of the reliability issue

Grace raised.[5]  In response, the Court first explained its Order as follows:

> THE COURT: My understanding from taking a look at the
> transcripts was that everyone, I thought including the debtor and
> Mr. Speights and the Court, agreed that the thing to do was to look
> at the issue of ratification first because if all of the claims were
> ratified then whether or not there was express written authorization
> before the bar date was irrelevant. Because if it came after and you
> could ratify, then having it before or after didn't make any sense
> and it didn't make any difference . . . And so I didn't look at the
> claims for which Mr. Speights may have had written authorization
> before the bar date because I didn't need to if, in fact, they were
> ratified after. . . . And so -- and so it simply didn't come up. All
> right. So then I issued the order because after doing the research I
> don't think I can find that you can ratify after the fact. But that left
> open these three claims which according to some other transcript
> Mr. Speights contends that he had proof in court that day but didn't
> offer it because we never got to that issue that he had the express
> written authorization before the bar date, but didn't offer it because
> we didn't get there because we were looking at ratification rather
> than authorization.   I'm not going to prohibit somebody from

---

[1]Docket 16673 at 2.

[2]Id.

[3]Id. at 4.

[4]Id. at 5.

[5]Hearing (August 29, 2007) at 110-111.

attempting to prove or proving, in fact, that there was authorization
to produce a claim when I never gave that opportunity at a hearing.
And so I'm -- I am going back to the January hearing and looking
at the authorization. Then what happened, as I understood the
transcripts after the fact, at whatever hearing after that -- and I
apologize, I don't have the transcripts here so I don't know the
dates -- Mr. Speights had a document that showed in his view that
there was written authorization but the debtor in looking at it said,
wait a minute, this isn't the same document you produced before.
And the debtor said there is some reliability problem. Well I don't
know the answer to the reliability problem so now I'm faced with
two fact -- two fact issues; one, was there written authorization
before the bar date and; two, if so, what -- is it reliable? Is it the
same information that was produced, I thought, to the debtor? So
that's what I'm looking at.[6]

Nevertheless, after Mr. Bernick continued to argue, the Court granted Grace's oral

motion and filed an Amended Order on September 6, 2007, in which it added this issue to its

earlier Order.[7] While in one sense, the new issue is essentially a legal one, in a broader sense, it

brings back to the table the 2005 authority debate which consumed the parties and the Court and

which, in the absence of a settlement, S&R must address in the context of these Three Claims,

which are not bound by decisions as to other S&R claims.[8]

In its Amended Order, the Court repeated its directive that the parties meet and confer "in

an effort to settle this dispute," and confirmed a status conference to be held on November 26,

2007.

Subsequently, Grace made no effort to meet and confer. S&R finally wrote Grace, but

did not receive a response before the day of the hearing, November 26, 2007, when after arriving

in Philadelphia as the hearing began, he receive a 10:22 a.m. e-mail from a lawyer at K&E as

---

[6]Hearing (August 29, 2007) at 113-115 (interruptions omitted).

[7]Docket 16759.

[8]For example, for reasons discussed on many occasions, S&R did not appeal this Court's decision to dismiss claims
where the sole authority was based on the filing of the Anderson putative class, but these Three Claimants would
need to have their day in Court on that issue because without question they provided written authority to S&R.

follows: "David Bernick is available today at noon for a meet and confer re the Bayshore, Children's Hospital, and Jameson claims. Please let me know if you are available. (I sent a message earlier this morning, but I don't think it went through.")."[9]

The Court conducted the scheduled status conference on November 26, 2007. After hearing from counsel, the Court told the parties that, "To the extent that there can be some settlement proposal, quite frankly, I really think these three, if it's at all possible, ought to be settled, and that "as to these three claims, some settlement effort really might be advisable."[10] The Court then said it would provide the parties "time to attempt to settle these matters, to try to file some motion to approve a settlement in time for the January omnibus," and if "settlement fails," then the parties would brief the issues so that the matter could be heard at the February 2008 omnibus hearing.[11]    At that time, by consent, February 15, 2008 was set for S&R's brief and February 22, 2008 for Grace's brief, with a hearing scheduled on February 25, 2008.[12]

Despite the Court's instructions, K&E again made no effort to settle the Three Claims. Almost seven weeks after the November hearing, however, K&E sent S&R an e-mail suggesting a meet and confer on the Three Claims.[13]    Counsel then spoke on January 15, 2008, but K&E did not want to discuss anything other than the sequencing of the arguments on the two issues. K&E specifically refused to talk settlement, even expressing ignorance of what the Court had directed.

Subsequently, during a discussion with Reed Smith (Mr. Restivo) regarding mediation (which the Court encouraged Grace and S&R to undertake at the December omnibus hearing), Mr. Speights pointed out that Grace was still obligated to discuss settlement of the Three Claims.

---

[9]TAB A.

[10]Hearing (November 26, 2007) at 133-134.

[11]Id. at 136-137.

[12]Id. at 136-137.

[13]TAB B.

Mr. Restivo, who was understandably unfamiliar with the matter, checked with Grace and reported back that he had been assigned responsibility of negotiating the Three Claims with Mr. Speights, separate and apart from all other claims. In addition, in this or a subsequent conversation, Mr. Restivo reported that Grace would concede the first issue – the authenticity or reliability of the documents dated before the Bar Date – the issue that had consumed the Court and the parties for almost two years with countless briefs and arguments (in other words, after Reed Smith took over the negotiations, Grace abandoned K&E's argument to the effect that S&R had a printing press creating authorizations).

Mr. Speights then made demands for all three claims. On Wednesday, January 23, 2008, Mr. Restivo responded and, after emphasizing that Grace would negotiate one, two, or three claims, made specific individual offers for all three. The following day, Thursday, January 24, 2008, Mr. Speights countered (focusing on one claim as a starting point), and the next day, Friday, January 25, 2008, Mr. Restivo responded with another offer. Later that day, Mr. Speights responded with a new offer. For the first time in almost seven years, S&R and Grace's outside counsel were actually engaged in a real settlement process, albeit for only Three Claims.

The following Monday, January 28, 2008, the Court conducted a omnibus hearing, during which time Mr. Restivo provided a status report on the Three Claims as follows:

> MR. RESTIVO:    Your Honor, item Number 8 is a status conference on the Speights' motion to alter or amend the Court's opinion. With respect to that, one thing the Court suggested, or directed, was that there be some effort to see whether these three claims could be settled. **Mr. Speights and I have exchanged offers and demands, and we are still in discussions, and so both sides have complied with that direction.**
>
> Secondly, Your Honor, I hope this simplifies this a little bit, at the last argument there really were two issues -- one, whether or not the authority was authentic and then, secondly, the legal issue of whether or not notice of authority was given consistent with the Court's September 23 order. In discussions with Mr. Speights, I have advised him that we will waive our authenticity objection and

ask the Court to rule solely on the issue of the legal question, and he is already obligated to file his brief on that issue by February 15. Grace is obligated to reply by February 22nd. And so that argument at the February omnibus will now be limited to what was called "the legal issue" the last time this was discussed in court.

THE COURT: All right. Well, are you done with your settlement negotiations or are you still talking? Because if you're still talking, it seems to me that what we ought to do is simply push that one till March too to give you further opportunity to discuss the matter, because I don't see any point to having Mr. Speights come here both in February and March. We might as well put both of his matters on at the same time, if, in fact, you're still discussing the situation.

MR. RESTIVO: **Your Honor, Mr. Speights talked to me on Friday and gave me a new demand, so the ball is in my court and I need to get back to him**. My strong view is if these cases can be resolved, they ought to be able to be resolved by the February omnibus, and if they can't be resolved it's not going to matter how long we take, and so I think it would be productive to the discussions we're having that each of us are looking at an argument date. If they're going to go away, I think they'll go away by then, and if they're not going to go away the argument moving to March isn't going to make any difference.

\* \* \*

MR. SPEIGHTS: . . . I agree with Mr. Restivo that if we are going to be able to resolve these claims we should be able to resolve them by February. I can't represent to you that we'd need more time to resolve three simple claims, but I do appreciate Your Honor thinking of me, trying to save me a trip having to travel twice on these matters. So, obviously I would prefer it being in March just for personal convenience, but if we have to go forward in February I'll make two trips.

THE COURT: Well, it's -- from my point of view, Mr. Speights, it doesn't make any sense to have you here February 26th and then three weeks later on March 17th. It just doesn't make sense to do that, especially when I know that February 26th is already going to be a pretty full day. So, why don't I do this. If you want to keep the briefing schedule the same, if that assists in pushing you to settlement, that's fine. If you want to push the briefing schedule on -- back a week, that's all it would do literally, is push it back one week each -- for each of you, then that's okay too. You can let me know which you prefer now, but I think the argument should be on

the March 17th date. I just don't see any point to having you come twice.

MR. SPEIGHTS: Thank you, Your Honor.

THE COURT: So, give me the dates that you prefer folks.

MR. RESTIVO: I think we ought to keep the current briefing schedule because we've known that's been the briefing schedule since the last omnibus, and then we'll simply argue this on March 17 instead of February 25.[14]

At that point, the parties were on track to continue their negotiations on the Three Claims with S&R's brief due on February 15, 2008 (later extended by consent to February 25, 2008 because of a personal matter), with the understanding that the Court would hear arguments at the March omnibus if they could not reach an accord. When Mr. Restivo finished, however, Mr. Speights brought up an unrelated issue which Mr. Restivo did not mention in his report: the status of the mediation of all S&R's claims, which the Court had encouraged at the December hearing, which Grace had refused to undertake unless S&R met certain preconditions. During this discussion, in which both Mr. Restivo and Mr. Bernick resisted mediation, Mr. Restivo twice urged the Court to let it first go forward with negotiations on the Three Claims in lieu of or prior to any mediation:

MR. RESTIVO: . . . It may be that Mr. Speights and I on the three cases subject to his motion to alter will develop some rapport and trust in each other. I would like to think if we could move one, two or three of those cases, we could talk about other cases, then if we don't get anywhere maybe mediation, but, at this point, mediation seems premature and doomed to failure.[15]

* * *

MR. RESTIVO: It would seem to me, Your Honor, that we ought to give an opportunity to one-on-one discussions on three little cases. I appreciate three little cases isn't the whole panoply of what Mr. Speights has, but we have three identifiable cases. We at

---

[14]Hearing (January 28, 2008) 31-35 (emphasis supplied).

[15]Id. at 38.

least have exchanged offers and demands. We may be able to
resolve it. We may not be able to resolve it. I'm concerned that if
we can't move three little cases, we're going to make things worse
by trying to get a mediator to resolve the rest. And so my
suggestion would be let Mr. Speights and I first see if we can make
some progress and reach some success on three cases. We know
what's involved. We know where they are. We know the square
footage. We know the defenses. We know the claim. And if we
can't make progress on three where we know everything, both
sides ought to take that into account as to whether or not going into
a mediation makes any sense at the present time.[16]

The Court flatly and unambiguously rejected this suggestion and told Grace to proceed to

negotiate the Three Claims **and** ordered it to mediate the balance of the claims.

> THE COURT: Well, all right. My suggestion is the following.
> Yes, **I think you should make some progress on the three
> claims. They really are unique** in the sense that the issues that
> you're facing are totally different from the issues, especially on the
> 16 to 19 as to which there is no current court proceeding in any
> event. So, I don't see why any rulings, anything that's sub judice at
> the moment, should affect the rulings on the -- or a mediation on
> the 16 to 19. **Those should be following a totally different track**
> because there is nothing currently happening with respect to those.
>
> **As to the ones that are currently before me, I've already
> suggested -- you know, mediation has a salutary benefit in that
> if you settle there are no appeals.** It terminates whatever
> litigation is going to going to go on and on and on and on and on
> and on in this case forever until perhaps my granddaughter will be
> the judge who has to continue this, and your grandchildren will be
> the parties who will still be litigating. So, you know, at a point in
> time, folks, some finite end would be desirable on everybody's
> part. Why don't you go to mediation and see if, in fact, a mediator
> can't help you get a resolution to some of this so that this company
> that hopefully has a business reorganization purpose in mind can
> get back to its core business and out of this asbestos litigation
> track. So, please, let's move in that direction.
>
> Most of the issues that have come before this Court in the past year
> and a half have not been business-related issues for the most part.
> They're all tied up in this asbestos litigation. This company needs
> to get out of bankruptcy, so let's start doing the things that take it to
> get out of bankruptcy, back into the business world, pay the people

---

[16]Id. at 45-46.

who need to get paid and go about its business and off of the asbestos track. One way to start that process is to see if you can settle the claims. So, go to mediation, and it's no longer a request. **It's an order. Get to mediation.**[17]

Following the January hearing, Mr. Restivo and Mr. Speights talked on number of occasions about potential mediators, ultimately exchanging lists of five each. At the same time, Mr. Speights waited on Grace's response on the Three Claims (as noted above, Mr. Restivo told the Court the ball was in his Court). When he finally asked about the status of that matter, however, Mr. Restivo reported that Grace would just fold the Three Claims into the mediation process. Grace would not budge from that position despite Mr. Speights' urging that the Court wanted the parties to deal with the Three Claims separately.

Clearly Grace's refusal to discuss the Three Claims except as part of an overall mediation is not what the Court had in mind when it told the parties to discuss settlement a month before mediation was even discussed. As is clear from the November transcript, and as the Court reiterated in January, the Court wanted the parties to explore settlement before exhausting additional time and energy into a seemingly never-ended process involving three "unique" claims. For that reason, the Court told the parties to proceed down both tracks. However, if Grace is right – that the Three Claims should be considered with everything else in the still unscheduled mediation – then Grace should not be permitted to undermine the Court's repeated directives that the parties explore settlement before continuing with the litigation of these claims.

In summary, it has been six months since the Court first directed the parties to discuss settlement of the Three Claims. Only after Mr. Speights repeatedly raised the issue, did Grace begin to negotiate over a three day period right before January hearing, when it knew Mr. Speights would raise the issue with the Court. Despite telling the Court that "both sides had

---

[17]Id. at 47-48 (emphasis supplied).

complied" with the Court's directive "to see whether these claims could be settled," and that

"Mr. Speights talked to me on Friday and gave me a new demand, so the ball is in my court and I

need to get back to him," as soon as this Court ordered mediation of all S&R claims, Grace used

this decision as an excuse to cancel negotiations that it had resisted for months, despite the fact

that the Court specifically told Grace that the Three Claims were unique and should be separately

negotiated.  Regardless, because of the Court's desire for the parties to fully explore settlement

of the Three Claims before expending more time and effort litigating these claims, all briefing

and argument should be suspended pending settlement discussions either as a part of or separate

from the still unscheduled mediation.  Grace should not be permitted to frustrate the Court's

clear directive.

DATED: February 25, 2008

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:      (302) 654-0248
Facsimile:       (302) 654-0728
E-mail:            loizides@loizides.com

- and -

Daniel A. Speights (SC Fed. ID No. 4252)
Marion C. Fairey, Jr. (SC Fed. ID No. 6101)
SPEIGHTS & RUNYAN
200 Jackson Avenue East
P.O. Box 685
Hampton, SC 29924
Telephone:      (803) 943-4444
Facsimile:       (803) 943-4599

## SUMMARY OF EXHIBITS (i.e., "TABS")

A.    Email from Michael Dierkes to Dan Speights dated 11/26/07 re "Meet and Confer re Three Claims"

B.    Email from Janet Baer to Dan Speights dated 1/11/08 re "Meet and Confer re 3 Late Authority Claims"