**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **W.R. GRACE & CO., et al.,** | § | **Jointly Administered** |
| | § | **Case No. 01-01139 (JKF)** |
| **Debtors.** | § | |
| | § | |

**FEE AUDITOR'S FINAL REPORT REGARDING**
**FEE APPLICATION OF KIRKLAND & ELLIS LLP**
**FOR THE TWENTY-SIXTH INTERIM PERIOD**

This is the final report of Warren H. Smith & Associates, P.C., acting in its capacity as fee auditor in the above-captioned bankruptcy proceedings, regarding the <u>Fee Application of Kirkland & Ellis LLP for the Twenty-Sixth Interim Period</u>.

**BACKGROUND**

1.      Kirkland & Ellis LLP ("K&E") was retained as counsel to the Debtors.  In the Application, K&E seeks approval of fees totaling $6,025,266.00 and expenses totaling $6,648,308.35 for its services from July 1, 2007 through September 30, 2007 (the "Application Period").

2.      In conducting this audit and reaching the conclusions and recommendations contained herein, we reviewed in detail the Application in its entirety, including each of the time and expense entries included in the exhibits to the Application, for compliance with 11 U.S.C. § 330, Local Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Amended Effective February 1, 2001, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330,

Issued January 30, 1996 (the "Guidelines"), as well as for consistency with precedent established in the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.  We served an initial report on K&E, and received a response from K&E, portions of which response are quoted herein.

## DISCUSSION

3.     In our initial report, we noted that a number of K&E paralegals performed work which appeared to be of a clerical nature.  The total time spent was 273.60 hours for total fees of $42,622.50.  The time entries are listed on Exhibit "A" and are divided according to professional on Exhibit "A1."  On the issue of adjusting rates downward, we find persuasive the opinion expressed by the Honorable Judith K. Fitzgerald in *In re USG Corporation*, Case No. 01-2094 (JKF), Transcript of Proceedings, August 29, 2005, pp. 49-52, wherein the Court opined that $160.00 per hour for file maintenance, even if performed electronically, was too high, and that $60.00 to $100.00 per hour for this service was more appropriate.[1]   We have been consistent in recommending that clerical tasks be billed at no more than $80.00 per hour. Thus, we asked K&E to explain why this time should not be compensated at a reduced hourly rate.  K&E provided a response which we have included as Response Exhibit "A."   K&E has subdivided its response according to the paraprofessional performing the work in question, so in the interest of clarity, we will follow that pattern as well.

    a.     **Bianca Portillo.**  We note that Ms. Portillo prefaces many of her time entries

---

[1]Nevertheless, the Court agreed to allow the applicant to present evidence in support of its $160.00 hourly rate at a later date. *See* Transcript, *supra,* at p. 52.

with the phrase "review, analyze and organize".[2]  K&E's response stresses the importance

of Ms. Portillo's work in reviewing, analyzing and organizing the documents which come

into K&E's possession, and we certainly do not dispute that.  In fact, we took no issue with

most of the time billed by Ms. Portillo in reviewing, analyzing and organizing documents.

It was only when it appeared from the time entry that Ms. Portillo filed documents or entered

documents into the electronic file database, did we take issue with charging her full hourly

rate for this service.    All filing requires some degree of review, analysis, and

organization–otherwise someone with no legal knowledge whatsoever could perform the

task.   And we are not contending that this filing should be performed without compensation,

particularly in cases as complex as these.[3]  But it appears to us that time spent by a paralegal

---

[2]It is difficult to evaluate the type of activity which is taking place in Ms. Portillo's time entries because of her frequent use of the phrase "review, analyze and organize"–often multiple times within the same time entry.  Following is a typical example of one of Ms. Portillo's time entries for the period in question:

| 7/5/2007 | Bianca Portillo   7.00 | Search dockets, review and analyze requested materials re National Union Fire Insurance Company (.6); **review, analyze, organize** and enter correspondence into the central files database (1.9); **review, analyze and organize** pleadings for central files (1.20); **review, analyze and organize** pleading materials for incorporation into pleadings database (3.3). |

We assume that the use of the phrase "review, analyze and organize" was implemented in response to one of our inquiries on this issue involving the Eighteenth, Nineteenth, or Twentieth Interim Periods.  Nevertheless, such frequent use of this phraseology makes more difficult the meaningful review of the tasks being performed.

[3]As stated by the court in *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 855 n.34 (3rd Cir. 1994):  "The statute [11 U.S.C. § 330] plainly specifies that the type of service performed by a paralegal (including whether it is clerical) affects the rate of compensation, not compensability vel non."

in these types of activities should not be compensated as highly as, for example, drafting of pleadings, notices, and orders, participating in client meetings, or document production. There is authority in this district for adjusting rates downward for routine tasks. "Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates. A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3rd Cir. 1983). We think the same can be said of routine tasks performed by paralegals. Thus, for the 90.60 hours of Ms. Portillo's time that we have noted on Exhibit "A1," we recommend compensation at $80 per hour, and a corresponding reduction of $5,889.00 in fees.

      **b.**     <u>**Dan Rooney, Emily Malloy and Karla Sanchez.**</u>  We do not dispute the fact that these paraprofessionals were assigned tasks that required a high degree of legal skill; and in fact, we took issue with only a small number of time entries for these individuals–those time entries which clearly involved the updating of files. We accept K&E's response with respect to the time entries of Timekeepers Rooney and Malloy. These time entries, totaling $420.50 in fees, are listed on Exhibit "A1." K&E has explained in its response the high degree of involvement of Timekeeper Rooney and Timekeeper Malloy with expert submissions and document production, and thus it appears to us that their work in updating expert witness and third-party discovery files was simply part and parcel of these larger responsibilities. Thus, we have no objection to the fees billed by Timekeepers Rooney and Malloy. According to K&E, Timekeeper Sanchez was also involved with expert submissions and document production. Therefore, we have excluded from our earlier calculations all of Timekeeper Sanchez's time entries which pertain to the updating of files

on doctors, screening companies, and third party discovery.  We have no objection to these time entries totaling $1,470.00, and they are noted in bold print on Exhibit "A1" in the worksheet for Timekeeper Sanchez.  However, the remaining time entries which we noted for Timekeeper Sanchez pertain to the updating of pleading files, correspondence files, and billing files.  For these time entries, an hourly rate of $80.00 appears to us to be more appropriate.  Thus, for the remaining 40.50 hours of Timekeeper Sanchez's time noted on Exhibit "A1," we recommend a reduction of $2,430.00 in fees.

      c.     **<u>Stephanie Rein</u>**.  K&E advised that one of Timekeeper Rein's responsibilities during the Application Period was to maintain the PI estimation "war room."  As such, K&E has explained that Timekeeper Rein was tasked with compiling documents for document review and production, compiling documents pertaining to expert witness reliance, and reviewing and organizing materials relating to plaintiff law firm discovery.  We called into question Timekeeper Rein's time entries which stated, "review, analyze, organize and file materials."  K&E advised that "(t)hese were not materials she was just placing into files but rather voluminous materials she was reviewing to assist in the production of such materials, or the use of such materials for expert reports, depositions or trial exhibits."  Timekeeper Rein's time entries are deficient in that they do not explain the types of materials with which she was working.  Nevertheless, when we read her time entries in conjunction with her other time entries from that period, as well as K&E's response, it appears to us that the tasks she was performing were not clerical, but more in the nature of document review.  Thus, we accept K&E's response with respect to Timekeeper Rein, and we have no objection to these fees.

    **d.**    **Alicja Patela.**  We understand K&E's response that Timekeeper Patela was tasked with "understanding and keeping track of documents, pleadings, correspondence, work product, research and the like," as well as with locating relevant materials which were used by the PI attorney teams on a daily basis.  We also understand from K&E's response that Timekeeper Patela's review and organization of these documents was key to making sure they were stored in the appropriate file or database.  Nevertheless, as stated previously, all filing requires some degree of review and organization.  We were careful to include in our inquiry only those time entries of Timekeeper Patela which clearly involved the filing of pleadings and correspondence.  It appears to us that the work performed by Timekeeper Patela in the time entries we noted, while no doubt important, still constitutes filing and should, therefore, be compensated at a lower rate than Timekeeper Patela's other work.  Thus, for the 24.40 hours billed by Timekeeper Patela in the time entries noted on Exhibit "A1," we recommend a reduction of $1,464.00 in fees.

    **e.**    **Terrell Stansbury.**  K&E advised that Timekeeper Stansbury is responsible "for assisting with trial preparation and the development of work product such as preparing defense exhibit lists and witness cross examination files."  K&E also stated that the time entries we have noted for "updating case files" "do not reflect simple filing of documents, but instead the collection and organization of documents in support of attorney work product and trial preparation."  The time entries we have noted for Timekeeper Stansbury are deficient standing alone, but when read in conjunction with Timekeeper Stansbury's other time entries during this period, as well as K&E's response, it appears to us that the tasks she was performing were not clerical, but were more in the nature of compiling documents for

trial preparation and in support of attorney work product.  Thus, we have no objection to these fees.

       **f.**     **Charles Tyler.**  K&E has responded that it has no objection to a reduction of Timekeeper Tyler's time to $80.00 per hour.  We appreciate K&E's response and recommend a reduction of $52.50 in fees.

Thus, for all issues under this paragraph, we recommend a reduction of $9,835.50 in fees.

       4.     In our initial report, we noted several instances in which multiple K&E professionals attended the same hearing or conference.  (See Exhibit "B.")  Paragraph II.D.5. of the U.S. Trustee Guidelines provides: "If more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees."  Thus, for each hearing and conference listed, we asked K&E to explain why it was necessary for each K&E professional and paraprofessional to be in attendance.  K&E provided a response which we have included as Response Exhibit "B."  We accept K&E's response with respect to all of the hearings and conferences listed, with the exception of the July 23, 2007 Omnibus Hearing, at which 11 K&E attorneys were present, and the August 29, 2007 Omnibus Hearing, at which six K&E attorneys and one K&E paralegal were present.

       **a.**     **July 23, 2007 Omnibus Hearing.**  It does not appear to us that K&E's response establishes the necessity of the telephonic appearance by attorneys, Amanda Basta and Ellen Ahern.  According to the response, Timekeepers Basta and Ahern, along with Timekeepers Korin Ewing and Renee Smith, are all members of the PI Estimation litigation team and were present to support David Bernick on the PI expert and Interrogatory issues.  Timekeepers Ewing and Smith attended the hearing in person, while Timekeepers Basta and

Ahern attended telephonically "in the event their back up help was needed during the hearing and also so that they could immediately act upon the matters that were resolved at the hearing." It appears to us that David Bernick already had sufficient support on these issues from Timekeepers Ewing and Smith, without having two additional attorneys standing by to assist. Thus, we recommend disallowance of the hearing time of Timekeepers Basta and Ahern, for a reduction of $3,575.00 in fees.

        **b.**      **August 29, 2007 Omnibus Hearing.** It does not appear to us that K&E's response establishes the necessity of Timekeeper Ahern's telephonic attendance at the hearing. The response indicates that Timekeepers Basta and Ahern attended the hearing in order to support David Bernick on PI Estimation and Trust Discovery Issues and that Timekeeper Harding also attended the hearing in order to support David Bernick on PI Estimation issues. We understand Timekeeper Basta's presence at the hearing, as the response states that she assisted David Bernick and prepared demonstratives that were revised up to the moment of the hearing. But it is unclear from the response why David Bernick required the telephonic assistance of both Timekeeper Ahern and Timekeeper Harding, particularly since Timekeeper Harding is described elsewhere in the response as "the litigation partner in charge of PI Estimation" and "the PI Litigation team quarterback." Thus, we recommend disallowance of Timekeeper Ahern's hearing time, for a reduction of $2,180.00 in fees.

Thus, for all issues under this paragraph, we recommend a reduction of $5,755.00 in fees.

      5.      In our initial report, we noted the following meal expense for which more information was needed:

| 6/26/2007 | 400.00 | Laurence Urgenson, Working Group Meal/E&E & Others, Washington, DC, 06/26/07 (Client Conference) |

In response to our inquiry, K&E provided the following information concerning this charge:

> This meal expense was for dinner for eight individuals: L. Urgenson (K&E Attorney), T. Mace (K&E Attorney), P. Farrell (K&E Attorney), W. Lancaster (K&E Attorney), A. Sheldon (Client), A. Calfo (Co-Counsel), David Sinrich (Vendor) and Diane Sinrich (Vendor).  Thus, the per-person meal expense was $50.00, which complies with the recommended per-person dinner ceiling expense; therefore, this expense was properly charged to the estate.

We accept K&E's response and have no objection to this expense.

## CONCLUSION

In summary, we recommend approval of $6,009,675.50 in fees ($6,025,266.00 minus $15,590.50) and $6,648,308.35 in expenses for K&E's services for the Application Period.

Respectfully submitted,

**WARREN H. SMITH & ASSOCIATES, P.C.**


By:_____
        Warren H. Smith
        Texas State Bar No. 18757050

Republic Center
325 N. St. Paul, Suite 1275
Dallas, Texas  75201
214-698-3868
214-722-0081 (fax)
whsmith@whsmithlaw.com

        **FEE AUDITOR**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served by First Class United States mail to the attached service list on this 26th day of February, 2008.


_____
        Warren H. Smith

# SERVICE LIST
## Notice Parties

**The Applicant**
Janet S. Baer
David M. Bernick, P.C.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

jbaer@kirkland.com

**The Debtors**
David B. Siegel, Esq.
Sr. V.P. and Gen. Counsel
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

**Counsel for the Debtors**
James H.M. Sprayregen, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Laura Davis Jones, Esq.
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705

**Counsel for the Official Committee of Unsecured Creditors**
Lewis Kruger, Esq
Stroock & Stroock & Lavan
180 Maiden Lane
New York, NY 10038-4982

Michael R. Lastowski, Esq.
Duane Morris & Heckscher
1100 N. Market Street, Suite 1200
Wilmington, De 19801-1246

**Counsel to the Official Committee of Property Damage Claimants**
Scott L. Baena, Esq
Bilzin, Sumberg, Dunn, Baena, Price & Axelrod
First Union Financial Center
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131

Michael B. Joseph, Esq.
Ferry & Joseph, P.A.
824 Market Street, Suite 904
Wilmington, DE 19801

**Counsel to the Official Committee of Personal Injury Claimants**
Elihu Inselbuch, Esq.
Caplin & Drysdale
375 Park Avenue, 35th Floor
New York, NY 10152-3500

Marla R. Eskin
Campbell & Levine, LLC
Suite 300
800 N. King Street
Wilmington, DE  19801

**Official Committee of Equity Holders**
Gary M. Becker
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

Teresa K.D. Currier, Esq.
Buchanan Ingersoll & Rooney
1000 West Street, Suite 1410
Wilmington, DE 19801

**United States Trustee**
Office of the United States Trustee
844 King Street, Lockbox 35, Room 2207
Wilmington, DE 19801

**EXHIBIT "A"**

**EXHIBIT "A1"**

*(See Excel Spreadsheets)*

## EXHIBIT "B"

a.    We note that on July 5, 2007, Timekeepers Bernick ($870), Baer ($755), Esayian ($570), Dierkes ($485), and Rosenberg ($200) attended the Anderson Memorial class certification hearing.  The total time spent was 159.40 hours for total fees of $73,563.50.  The time entries are as follows:

| | | | | |
|---|---|---|---|---|
| 7/1/2007 | Michael A Rosenberg | 8.00 | 1,600.00 | Prepare for Anderson Memorial class certification hearing. |
| 7/1/2007 | Samuel Blatnick | 5.00 | 2,175.00 | Review and analyze materials and prepare exhibits and other materials for 7/5/07 Anderson Memorial hearing. |
| 7/1/2007 | Lisa G Esayian | 6.00 | 3,420.00 | Work on Anderson Memorial legal issues and exhibit list for class certification hearing (5.5); confer with S. Blatnick and M. Rosenberg re same (.5). |
| 7/2/2007 | Michael A Rosenberg | 14.80 | 2,960.00 | Prepare for Anderson Memorial class certification hearing. |
| 7/2/2007 | Samuel Blatnick | 9.00 | 3,915.00 | Research and review materials and prepare for Anderson Memorial hearing. |
| 7/2/2007 | David M Bernick, P.C. | 3.00 | 2,610.00 | Conduct telephone conference with client re ZAI hearing preparation (2.0); conduct telephone conference with T. Freedman re same (.8); prepare for Anderson Memorial argument (3.0). |
| 7/3/2007 | Michael A Rosenberg | 9.00 | 1,800.00 | Prepare for Anderson Memorial class certification hearing. |
| 7/3/2007 | Samuel Blatnick | 10.00 | 4,350.00 | Research for and prepare materials for 7/5/07 Anderson Memorial hearing. |
| 7/3/2007 | David M Bernick, P.C. | 4.00 | 3,480.00 | Prepare for hearing. |
| 7/4/2007 | Michael A Rosenberg | 12.50 | 2,500.00 | Prepare for Anderson Memorial class |

| | | | | |
|---|---|---|---|---|
| | | | | certification argument. |
| 7/4/2007 | Samuel Blatnick | 7.80 | 3,393.00 | Prepare for 7/5/07 class certification hearing. |
| 7/4/2007 | David M Bernick, P.C. | 8.00 | 6,960.00 | Prepare for hearing on Anderson Memorial. |
| 7/4/2007 | Lisa G Esayian | 6.00 | 3,420.00 | Prepare for Anderson class certification hearing (5.5); confer with D. Bernick re same (.5). |
| 7/5/2007 | Janet S Baer | 3.00 | 2,265.00 | Participate telephonically in Anderson Memorial class claim hearing (3.0);........ |
| 7/5/2007 | Michael Dierkes | 3.00 | 1,455.00 | Attend Anderson Memorial class certification hearing telephonically (3.0);... |
| 7/5/2007 | Michael A Rosenberg | 9.50 | 1,900.00 | Prepare for Anderson Memorial class certification hearing (6.5); attend hearing re same (3.0). |
| 7/5/2007 | David M Bernick, P.C. | 13.00 | 11,310.00 | Prepare for and attend Anderson Memorial hearing. |
| 7/5/2007 | Lisa G Esayian | 11.50 | 6,555.00 | Confer with D. Bernick to prepare for Anderson class certification hearing and analyze and organize additional materials for same (2.0); participate in Anderson class certification hearing (9.5). |
| 7/5/2007 | Samuel Blatnick | 8.80 | 3,828.00 | Attend class certification hearing. |
| 7/4/2007 | Samuel Blatnick | 2.00 | 870.00 | Travel from Chicago, IL to Pittsburgh, PA (billed at half time). |
| 7/4/2007 | Lisa G Esayian | 1.50 | 855.00 | Travel to Pittsburgh, PA for Anderson Memorial class certification hearing (billed at half time). |
| 7/5/2007 | Samuel Blatnick | 2.50 | 1,087.50 | Travel from Pittsburgh, PA to Chicago, IL (billed at half time). |

| | | | | |
|---|---|---|---|---|
| 7/5/2007 | Lisa G Esayian | 1.50 | 855.00 | Travel to Chicago, IL from hearing (billed at half time). |
| | | 159.40 | $73,563.50 | |

 

b.       We note that on July 23, 2007, 11 K&E attorneys[4] attended an omnibus hearing. The total time spent, including preparation and non-working travel, was 117.50 hours for total fees of $74,048.00. The time entries are as follows:

| | | | | |
|---|---|---|---|---|
| 7/15/2007 | David M Bernick, P.C. | 4.00 | 3,480.00 | .......;  prepare  for omnibus and RMQ hearing (4.0). |
| 7/16/2007 | David M Bernick, P.C. | 1.00 | 870.00 | ........; prepare for omnibus hearing (1.0);... |
| 7/19/2007 | Samuel Blatnick | 3.00 | 1,305.00 | Prepare for hearing. |
| 7/19/2007 | David M Bernick, P.C. | 3.00 | 2,610.00 | ....; prepare for exclusivity hearing (3.0);... |
| 7/20/2007 | Korin K Ewing | 5.60 | 2,716.00 | ..........; prepare for omnibus hearing (4.0); participate in team conference re ongoing discovery efforts and preparation for omnibus hearing (1.6). |
| 7/20/2007 | Janet S Baer | 1.20 | 906.00 | Confer with Grace team re preparation for 7/23 hearing (.7); review and prepare materials re same (.5). |
| 7/20/2007 | Samuel Blatnick | 0.30 | 130.50 | Attend Grace conference re 7/23/07 hearing. |
| 7/22/2007 | David M Bernick, P.C. | 7.00 | 6,090.00 | Prepare for hearing. |

---

[4]The hourly rates of these timekeepers are as follows: Bernick - $870; Baer - $755; Boll - $575; Esayian - $570; Sinanyan - $560; Smith - $550; Harding - $550; Ahern - $545; Ewing - $485; Basta - $465; and Blatnick - $435.

| 7/23/2007 | Samuel Blatnick | 5.00 | 2,175.00 | Research for and draft memorandum for 7/23/07 hearing (1.5); participate telephonically in omnibus hearing (5.0);... |
|---|---|---|---|---|
| 7/23/2007 | Amanda C Basta | 3.00 | 1,395.00 | ......; attend omnibus hearing telephonically (3.0). |
| 7/23/2007 | Ellen T Ahern | 4.50 | 2,452.50 | ......; confer and correspondence with D. Rooney re hearing preparation materials (.5); participate by telephone in hearing on non-party discovery issues (4.0);.............. |
| 7/23/2007 | Lisa G Esayian | 2.00 | 1,140.00 | Participate in portion of omnibus hearing re property damage claims issues (2.0);.... |
| 7/23/2007 | Renee D Smith | 8.00 | 4,400.00 | Prepare for hearing on law firm discovery issues and attend same. |
| 7/23/2007 | Barbara M Harding | 5.30 | 2,915.00 | Review documents and review and respond to correspondence re hearing preparation (2.8);............; telephonically participate in omnibus hearing (2.5). |
| 7/23/2007 | Korin K Ewing | 11.40 | 5,529.00 | Prepare for and attend omnibus hearing. |
| 7/23/2007 | Janet S Baer | 9.00 | 6,795.00 | Review materials in preparation for 7/23 hearing (2.0); confer re same and follow up with review and preparation of materials (2.0); attend and conduct portions of 7/23 hearing (5.0). |
| 7/23/2007 | Lori Sinanyan | 9.30 | 5,208.00 | Review NJ motion for late claim, Debtors' objection, NJ response and relevant case law and prepare for hearing on same (3.5); review Project Gemini sale motion, sale order and research re break-up fees and prepare for sale hearing (2.0); attend and argue sale motion and NJ motion at omnibus hearing (3.8). |
| 7/23/2007 | David M Bernick, P.C. | 12.00 | 10,440.00 | Prepare for and attend omnibus hearing. |
| 7/21/2007 | Lori Sinanyan | 2.20 | 1,232.00 | Review Project Gemini APA, schedules, |

|  |  |  |  | sale motion, UST objection and bid procedures case law in preparation for sale hearing. |
|---|---|---|---|---|
| 7/22/2007 | Deanna D Boll | 3.50 | 2,012.50 | Prepare for Grace 7/23 hearing. |
| 7/23/2007 | Deanna D Boll | 1.70 | 977.50 | Attend Grace hearing telephonically (1.7);.... |
| 7/22/2007 | Lori Sinanyan | 4.10 | 2,296.00 | Travel to omnibus hearing (billed at half time). |
| 7/23/2007 | Janet S Baer | 3.20 | 2,416.00 | Travel to Wilmington, DE for 7/23 hearing (1.2) (billed at half time); travel from Wilmington, DE to Albany, NY after same (2.0) (billed at half time). |
| 7/23/2007 | Lori Sinanyan | 4.70 | 2,632.00 | Travel back to Los Angeles from Grace omnibus hearing, including flight delay (billed at half time). |
| 7/23/2007 | Renee D Smith | 3.50 | 1,925.00 | Travel to and from Wilmington, DE to attend hearing on law-firm discovery issues (billed at half time). |
|  |  | 117.50 | $74,048.00 | |

c.    We note that on August 2, 2007, Timekeepers Baer ($755), Harding ($550), McMillin ($550), Ahern ($545), Stansbury ($465), Zoldan ($435), and Fitzsimmons ($225) attended a conference. The total time spent, including non-working travel, was 29.30 hours for total fees of $15,302.00. The time entries are as follows:

| 8/2/2007 | Janet S Baer | 1.50 | 1,132.50 | Participate in PI conference re discovery/expert report issues (1.5);....... |
|---|---|---|---|---|
| 8/2/2007 | Brian T Stansbury | 1.20 | 558.00 | Confer with experts, E. Ahern, T. Fitzsimmons, E. Zoldan, B. Harding and S. |

|  |  |  |  | McMillin re estimation analysis (1.2);... |
|---|---|---|---|---|
| 8/2/2007 | Timothy J Fitzsimmons | 4.00 | 900.00 | Participate in conference re expert reports and asbestos disease (4.0);............. |
| 8/2/2007 | Evan C Zoldan | 3.80 | 1,653.00 | Confer with B. Harding and S. McMillin re further expert work for rebuttal report. |
| 8/2/2007 | Ellen T Ahern | 8.00 | 4,360.00 | Review and analyze defense expert reports (3.0); participate in expert conference re potential estimation experts (5.0). |
| 8/2/2007 | Barbara M Harding | 2.50 | 1,375.00 | ..........; prepare for conference with consultants re estimation analysis (1.0); confer with consultants, S. McMillin, T. Fitzsimmons, B. Stansbury, E. Zoldan and E. Ahern re same (1.5);............. |
| 8/2/2007 | Scott A McMillin | 3.00 | 1,650.00 | .........; prepare for and attend conference with experts re estimation issues (3.0);............ |
| 8/2/2007 | Janet S Baer | 2.00 | 1,510.00 | Travel to Washington, DC for PI team conference re status, strategy and discovery (billed at half time). |
| 8/2/2007 | Scott A McMillin | 0.70 | 385.00 | Travel to Washington, DC for conferences with experts (billed at half time). |
| 8/3/2007 | Janet S Baer | 1.70 | 1,283.50 | Travel from Washington, DC to Chicago, IL after PI strategy conference (billed at half time). |
| 8/3/2007 | Scott A McMillin | 0.90 | 495.00 | Return travel from conferences in Washington, DC (billed at half time). |
|  |  | 29.30 | $15,302.00 |  |

d.      We note that on August 13, 2007, 10 K&E timekeepers[5] attended a conference.  The total time spent, including preparation and non-working travel, was 102.20 hours for total fees of $35,856.50.  The time entries are as follows:

| | | | | |
|---|---|---|---|---|
| 8/13/2007 | Salvatore F Bianca | 8.00 | 3,720.00 | Confer with team re expert strategy and depositions. |
| 8/13/2007 | Daniel T Rooney | 11.00 | 2,475.00 | Confer with team and experts re trial strategy (7.7); prepare re same (3.3). |
| 8/13/2007 | Brian T Stansbury | 7.50 | 1,425.00 | .....; confer with experts, B. Harding, D. Rooney, S. McMillin, E. Ahern, S. Bianca, T. Fitzsimmons and J. Hughes re expert depositions (7.5);............. |
| 8/13/2007 | Matthew E Nirider | 8.80 | 2,772.00 | Confer with B. Harding, S. McMillin, E. Ahern, S. Bianca, A. Klapper, B. Stansbury, D. Rooney, T. Fitzsimmons, T. Langenkamp and expert re expert depositions. |
| 8/13/2007 | Timothy J Fitzsimmons | 7.00 | 1,575.00 | .........; participate in team conference re expert depositions (7.0). |
| 8/13/2007 | Emily Malloy | 9.00 | 1,260.00 | Attend conference in Washington, DC with Grace team. |
| 8/13/2007 | Ellen T Ahern | 11.20 | 6,104.00 | Prepare for and participate in conferences in Washington, DC re expert strategy and depositions (11.2);............... |
| 8/13/2007 | Travis J Langenkamp | 7.50 | 1,837.50 | Confer with expert re deposition preparation and scheduling issues. |
| 8/13/2007 | Barbara M Harding | 9.80 | 5,390.00 | Review documents and prepare outline re deposition preparation conference (2.8); confer with deposition preparation team, consultants and client re same (7.0);............. |

[5]The hourly rates of these timekeepers are as follows: Harding - $550; McMillin - $550; Ahern - $545; Bianca - $465; Nirider - $315; Langenkamp - $245; Fitzsimmons - $225; Rooney - $225; Stansbury - $190; and Malloy - $140.

| Date | Timekeeper | Hours | Amount | Description |
|---|---|---|---|---|
| 8/13/2007 | Scott A McMillin | 8.80 | 4,840.00 | Prepare for and participate in team conference re expert case (8.8);............. |
| 8/12/2007 | Emily Malloy | 3.30 | 462.00 | Travel to Washington, DC for conference (billed at half time). |
| 8/13/2007 | Salvatore F Bianca | 1.50 | 697.50 | Travel to Washington, DC for conference re expert issues (billed at half time). |
| 8/13/2007 | Matthew E Nirider | 1.60 | 504.00 | Travel to Washington D.C. for conference re expert issues (billed at half time). |
| 8/13/2007 | Emily Malloy | 1.50 | 210.00 | Return travel from Washington, DC to Chicago, IL (billed at half time). |
| 8/13/2007 | Scott A McMillin | 1.00 | 550.00 | Travel to Washington, DC for conferences re preparation of expert case (billed at half time). |
| 8/14/2007 | Salvatore F Bianca | 1.50 | 697.50 | Return travel to Chicago, IL from conferences in Washington, DC re expert issues (billed at half time). |
| 8/14/2007 | Matthew E Nirider | 1.80 | 567.00 | Return travel from team conference in Washington DC (billed at half time). |
| 8/14/2007 | Scott A McMillin | 1.40 | 770.00 | Return travel from team conference in Washington, DC (billed at half time). |
|  |  | 102.20 | $35,856.50 |  |

e.    We note that on August 14, 2007, eight K&E timekeepers[6] attended a conference. The total time spent, including preparation, was 59.20 hours for total fees of $24,584.50. The time entries are as follows:

---

[6]The hourly rates of these timekeepers are as follows: McMillin - $550; Harding - $550; Ahern - $545; Bianca - $465; Stansbury - $465; Nirider - $315; Fitzsimmons - $225; and Rooney - $225.

| | | | | |
|---|---|---|---|---|
| 8/14/2007 | Salvatore F Bianca | 6.00 | 2,790.00 | Prepare for and attend conference re expert strategy and depositions. |
| 8/14/2007 | Daniel T Rooney | 7.90 | 1,777.50 | Confer with attorney team re expert strategy (7.9);....... |
| 8/14/2007 | Brian T Stansbury | 7.20 | 3,348.00 | Confer with experts, D. Rooney, T. Fitzsimmons, B. Harding, E. Ahern, S. McMillin and A. Klapper re expert depositions. |
| 8/14/2007 | Matthew E Nirider | 7.70 | 2,425.50 | Confer with B. Harding, S. McMillin, E. Ahern, S. Bianca, A. Klapper, B. Stansbury, D. Rooney, T. Fitzsimmons, T. Langenkamp and expert re expert depositions. |
| 8/14/2007 | Timothy J Fitzsimmons | 7.50 | 1,687.50 | Confer re expert depositions (7.0); review correspondence re asbestos disease (.5). |
| 8/14/2007 | Ellen T Ahern | 7.80 | 4,251.00 | ..........; confer with experts in Washington, DC re expert strategy and expert depositions (7.8). |
| 8/14/2007 | Barbara M Harding | 8.30 | 4,565.00 | Prepare for expert deposition strategy conference and draft agenda re same (1.3); confer with consultants, client and expert deposition team re preparation for depositions (7.0). |
| 8/14/2007 | Scott A McMillin | 6.80 | 3,740.00 | Confer with team re preparing for expert depositions (6.8);.............. |
| | | 59.20 | $24,584.50 | |

     f.     We note that on August 29, 2007, Timekeepers Bernick ($870), Baer ($755), Harding ($550), Ahern ($545), Basta ($465), Blatnick ($435), and Rosenberg ($200) attended an omnibus hearing.  The total time spent, including preparation and non-working travel, was 80.50 hours, for

total fees of $48,109.00.  The time entries are as follows:

| | | | | |
|---|---|---|---|---|
| 8/28/2007 | Amanda C Basta | 1.00 | 465.00 | ...........; prepare for omnibus hearing (1.0). |
| 8/28/2007 | David M Bernick, P.C. | 5.50 | 4,785.00 | Prepare for hearing (3.7); confer with team re same (1.8). |
| 8/28/2007 | Barbara M Harding | 0.40 | 220.00 | ..........; confer with client re omnibus hearing preparation (.4);........... |
| 8/29/2007 | Barbara M Harding | 5.10 | 2,805.00 | Review   and prepare documents and correspondence re omnibus hearing preparation (1.5); confer with A. Basta re same (.4); review and respond to correspondence re discovery and expert preparation (1.2); telephonic appearance at omnibus hearing (2.0);.............. |
| 8/22/2007 | David M Bernick, P.C. | 0.80 | 696.00 | Prepare for omnibus hearing. |
| 8/24/2007 | Janet S Baer | 2.40 | 1,812.00 | Review  materials  in preparation for 8/29 hearing and confer with Grace team re preparation for same (1.4); participate in Grace team conference re August 29 hearing preparation and outstanding PI estimation issues (1.0). |
| 8/24/2007 | David M Bernick, P.C. | 1.50 | 1,305.00 | Prepare for omnibus hearing. |
| 8/26/2007 | David M Bernick, P.C. | 1.80 | 1,566.00 | Prepare for hearing. |
| 8/27/2007 | Michael A Rosenberg | 6.00 | 1,200.00 | Prepare for August 29 hearing. |
| 8/27/2007 | David M Bernick, P.C. | 4.00 | 3,480.00 | Review materials and confer re preparation for hearing. |
| 8/28/2007 | Michael A Rosenberg | 3.00 | 600.00 | Prepare for August 29 hearing. |
| 8/28/2007 | Barbara M Harding | 2.50 | 1,375.00 | Review and prepare documents and correspondence re omnibus hearing preparation. |
| 8/29/2007 | Janet S Baer | 6.50 | 4,907.50 | Review materials in preparation for August 29 |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  |  | hearing on numerous issues (3.0); confer re same (.5); attend and conduct portions of August 29 omnibus hearing (3.0). |
| 8/29/2007 | Michael A Rosenberg | 7.50 | 1,500.00 | Prepare for hearing (4.0); attend court re same (3.5). |
| 8/29/2007 | Samuel Blatnick | 2.00 | 870.00 | Participate telephonically in hearing. |
| 8/29/2007 | Amanda C Basta | 6.00 | 2,790.00 | Prepare for and attend omnibus hearing. |
| 8/29/2007 | Ellen T Ahern | 4.00 | 2,180.00 | Participate in omnibus hearing telephonically. |
| 8/29/2007 | David M Bernick, P.C. | 12.00 | 10,440.00 | Prepare for omnibus hearing (8.0); attend omnibus hearing (4.0). |
| 8/28/2007 | Amanda C Basta | 1.50 | 697.50 | Travel to Pittsburgh, PA for omnibus hearing (billed at half time). |
| 8/29/2007 | Janet S Baer | 4.00 | 3,020.00 | Travel to and from Pittsburgh, PA for August omnibus hearing (billed at half time). |
| 8/29/2007 | Amanda C Basta | 3.00 | 1,395.00 | Return from omnibus hearing in Pittsburgh, PA (billed at half time). |
|  |  | 80.50 | $48,109.00 |  |

g.      We note that on August 9, 2007, Timekeepers Urgenson ($795), Lancaster ($675), McMillin ($550), Ahern ($545), Mace ($435), and Farrell ($315) attended a conference. The total time spent, including non-working travel, was 41.80 hours for total fees of $22,894.50. The time entries are as follows:

|  |  |  |  |  |
|---|---|---|---|---|
| 8/9/2007 | Scott A McMillin | 4.30 | 2,365.00 | Travel to and from Washington, DC, for criminal team conference (billed at half time) |
| 8/9/2007 | Tyler D Mace | 8.50 | 3,697.50 | Confer with K&E team and jury consultant re |

|  |  |  |  | case themes (8.2); confer with client re potential witness (.3). |
|---|---|---|---|---|
| 8/9/2007 | Peter A Farrell | 5.30 | 1,669.50 | .............; confer with A. Sheldon, D. Sinrich, L. Urgenson, W. Lancaster and T. Mace re same (5.3). |
| 8/9/2007 | Ellen T Ahern | 7.00 | 3,815.00 | Prepare for and participate in conference with L. Urgenson re criminal case issue and expert strategy. |
| 8/9/2007 | Walter R Lancaster | 7.50 | 5,062.50 | Prepare for and attend joint defense conference (7.5);.............. |
| 8/9/2007 | Scott A McMillin | 4.20 | 2,310.00 | Prepare for and participate in criminal strategy conference (4.2);........... |
| 8/9/2007 | Laurence A Urgenson | 5.00 | 3,975.00 | ........; confer with jury consultants re same (5.0). |
|  |  | 41.80 | $22,894.50 |  |

h.      We note that on September 24, 2007, Timekeepers Freedman ($810), Baer ($755), Sinanyan ($560), Ahern ($545), and Basta ($465) attended an omnibus hearing. The total time spent, including non-working travel, was 18.80 hours for total fees of $12,964.00. The time entries are as follows:

| 9/24/2007 | Amanda C Basta | 2.50 | 1,162.50 | .........; attend omnibus hearing telephonically (2.5);..... |
|---|---|---|---|---|
| 9/21/2007 | Janet S Baer | 2.00 | 1,510.00 | Confer with A. Basta re status of pending matters for hearing and related issues (.3); review and assemble materials for 9/24 hearing (1.5); confer re Court appearances for 9/24 hearing (.2). |
| 9/24/2007 | Janet S Baer | 4.60 | 3,473.00 | Review  Forman Perry response on fee |

| | | | | |
|---|---|---|---|---|
| | | | | application and examiner's report in preparation for hearing (.8); confer with W. Sparks and M. Croft re same (.3); review materials and confer with W. Sparks and J. O'Neill in preparation for omnibus hearing (2.0); attend September omnibus hearing (1.5). |
| 9/24/2007 | Lori Sinanyan | 1.00 | 560.00 | Telephonically attend omnibus hearing. |
| 9/24/2007 | Ellen T Ahern | 2.00 | 1,090.00 | Participate telephonically in omnibus hearing. |
| 9/24/2007 | Theodore L Freedman | 2.00 | 1,620.00 | Attend omnibus telephonically hearing. |
| 9/24/2007 | Janet S Baer | 3.20 | 2,416.00 | Travel to Wilmington, DE for September omnibus hearing (1.7) (billed at half time); travel from Wilmington, DE to Washington DC for deposition preparation (1.5) (billed at half time). |
| 9/25/2007 | Janet S Baer | 1.50 | 1,132.50 | Travel from Washington, DC to New York, NY for creditor committee conference (billed at half time). |
| | | 18.80 | 12,964.00 | |

## RESPONSE EXHIBIT "A"

Paraprofessional Time Entries (¶ 3)

You have raised issues about a number of K & E legal assistants performing work which you state "appears to be of clerical nature" and you recommend billing that time at no more than $80.00 per hour.  You specifically point to Judge Fitzgerald's comments in USG that "file maintenance, even if performed electronically, was too high, and that $60.00 to $100.00 per hour for this service was more appropriate."  None of the time you have questioned, however, was simple "file maintenance" and K &E submits, as outlined below, that the fees billed for the tasks performed were appropriate.

The issue you raise about  time that appears to be "clerical" in nature, is not new to this case. In fact, in your initial final report with respect to the 19th Quarterly Interim Fee Application and with respect to your final report on the 4th Quarterly Interim Fee Application you raised similar issues. We thought these issues had been resolved to the satisfaction of all parties and are surprised that the issue has arisen again.

As we have explained previously, K & E uses legal assistants, project assistants and case assistants (paraprofessionals) when necessary to perform a wide range of tasks that are vital to K & E attorneys' effective representation of Grace in these chapter 11 cases.  As discussed by K & E in the Prior Responses, the tasks that we assign to paraprofessionals are not ministerial in nature. Ministerial tasks are performed by secretaries and their services are part of the overhead of the firm. The tasks that are assigned to paraprofessionals are those that cannot be performed by secretaries or other clerical personnel untrained either as to these relatively complex tasks or as to these chapter 11 cases in particular.  If K & E paraprofessionals had not accomplished these tasks, attorneys would have had to perform them, which would result in far higher bills.

During the time period covered by the Initial Report, the primary focus of the Grace case was the expert discovery phase of the PI Estimation.  This phase was especially heavy with respect to document review, organization, production, preparation for depositions and preparation of expert reports. Original expert reports for the trial were due on June 18, 2007 and the rebuttal reports were due on September 25, 2007.  In additional, non estimation supplemental reports were due on July 31, 2007.  At the same time, document discovery and production was ongoing and documents in Grace's and K & E's possession were being identified for trial exhibits.  Ultimately approximately 45 expert and non-expert reports were prepared by Grace, 42 reports were prepared by the PI Committee, the FCR and others, 17 rebuttal reports were prepared, 46 depositions were taken and 1594 documents were designated as potential trial exhibits.  Essentially all of the paraprofessionals played a role in the preparation of these reports, production of documents, review of documents for exhibits or preparation for depositions.

With that background in mind, I will address the role each of the paraprofessionals whose time you have questioned played in the process:

**Bianca Portillo**.  The vast majority of the time questioned was that of Bianca Portillo. Bianca is a project assistant that works with the Restructuring Group.  Bianca essentially works for me as I am the lead Restructuring Partner on the Grace case.  Bianca (along with Deborah Bibbs) is in charge of all of the Bankruptcy documents in the case.  This means she is responsible for understanding and keeping track of now almost 7 years of documents, pleadings, correspondence, work product, research and the like.  She is constantly tasked with locating relevant material for the preparation of pleadings, legal memoranda, correspondence and other Bankruptcy related material that are used by the attorney teams.  Likewise on a daily basis she is responsible for reviewing the stacks of pleadings, correspondence and other related materials that are generated on the case and making sure that those materials are maintained in the proper place for easy review and retrieval. The majority of the descriptions questioned read "review, analyze, organize and enter correspondence into central files database and update central files."  While this description may make the tasks seem ministerial, it is far from that.  The "review and analyze" part of this job is significant and key to making sure that the materials are "organized" appropriately and then ultimately stored in the appropriate file or data base for easy assess and retrieval.  This work could not be done by a secretary or file clerk.  As it is, K & E attempts to keep the costs down for this work by assigning it primarily to a project assistant like Bianca who is one of the most junior of the K & E paraprofessionals at a billing rate of $145.00 an hour.

**Dan Rooney, Emily Malloy and Karla Sanchez.**  This group of paraprofessionals are the Chicago Litigation PI paraprofessional team.  Dan Rooney is a senior legal assistant on the Grace PI team and is responsible for supervising all paraprofessional time in Chicago.  This is a huge undertaking as Dan and his team support all of the Chicago PI Litigation attorney team including David Bernick, Ellen Ahern, Scott McMillin, Andy Running, Sal Bianca, Sam Blatnick, Tim Duffy, Peter Wozniak and John Donley, among others.  Dan and his team also coordinate with and essentially work as one with the Washington DC PI Litigation team.

During the time period covered by the Initial Report, Karla and Emily assisted Dan in the preparation of reliance materials for 2 different expert submissions, one on July 31, 2007 (where a total of 26 reports were submitted by all parties) and one on September 25, 2007 (where a total of 17 reports were submitted by all parties).  They were all involved in reviewing the expert reports and gathering the reliance documents that needed to be produced to the committees.  They were also asked to set up and code databases of this relevant material as well as for the reliance materials produced by the committees.  They assisted in preparing the first round of expert witness files for both our experts and those of the ACC/FCR during the relevant time period.  This was in preparation for the expert depositions that started in September and continued into December.  They constantly reviewed expert reliance materials in our case as well as past litigation to locate materials relevant to very specific attorney requests.  They assisted in the preparation of deposition files for fact witnesses that took place during the relevant time period as well.

Both Karla and Emily also reviewed Sealed Air files during this time period in order to determine what materials had been produced during that litigation and what may be subject to production in this litigation.  During this time period they all also reviewed exposure information

contained in the Rust Consulting PIQ database in order to find inconsistencies in representations made by counsel for certain law firms. This project consisted of reviewing thousands of pages of PIQ attachments in order to determine if, as counsel stated, the attachments reflected any exposure to Grace product. Thereafter they charted all of this work for attorney review and use in pleadings, at depositions and in the preparation of expert and non expert reports.

The one time entry specifically questioned for Dan contained the description "reviewing, analyzing and updating our third party discovery files." In retrospect the description should have been more detailed and explicit. As outlined above, this was not a ministerial task but a very careful and time consuming analysis. Likewise, while the descriptions from Emily and Karla were again too general and state things like "review and update of pleading files" or "review and update correspondence files" or "review and update of witness files" "review" and "update" does not mean just looking at a document's title and then placing it in a file. The pleadings, correspondence and documents being reviewed and organized were the materials outlined above that related to the discovery phase of the PI Estimation and its review and analysis was a key element of the discovery process.

**Stephanie Rein.** During the time period covered by the Initial Report, Stephanie Rein was one of the key members of the Washington DC Litigation Paraprofessional PI Estimation team. She was responsible for supporting the DC portion of the PI team, namely Barbara Harding, David Mendelson, Brian Stansbury and Amanda Basta, among others. Among her responsibilities were the maintaining of the PI Estimation "war room" which was assembled in DC for the PI Estimation. As indicated above, during the time frame covered by the Initial Report, the PI team was in the center of the discovery phase of the PI Estimation litigation. Stephanie was responsible for compiling materials for document review and production, compiling materials for expert witness reliance materials and reviewing and organizing materials relating to plaintiff law firm discovery. In this respect, Stephanie's work was similar to that of the Chicago team outlined above but on different sets of documents for different experts and third parties. Again, while Stephanie's entries stated "review, analyze, organize and file materials" the emphasis should be on "review and analyze." These were not materials she was just placing into files but rather voluminous materials she was reviewing to assist in the production of such materials or the use of such materials for expert reports, depositions or trial exhibits.

**Alicja Patela.** During the time covered by the Interim Report, Alicja was a case assistant in the Washington DC office working with the PI Litigation team. She was responsible for understanding and keeping track of documents, pleadings, correspondence, work product, research and the like. She was constantly tasked with locating relevant material for the preparation of pleadings, legal memoranda, correspondence and other PI Litigation related material that were used by the PI attorney teams on a daily basis. Likewise on a daily basis she was responsible for reviewing the stacks of pleadings, correspondence and other related materials that were generated on the case with respect to the PI Estimation and making sure that those materials were maintained in the proper place for easy review and retrieval. The majority of the descriptions questioned read "review and update" or "organize and update" pleadings, correspondence, files etc. While these

descriptions may make the tasks seem ministerial, they were far from that.  The "review" and "organize" part of this job was significant and key to making sure that the materials were appropriately reviewed by the correct parties  and ultimately stored in the appropriate file or data base for easy assess and retrieval.  This work could not be done by a secretary or file clerk.  As it was, K & E attempted to keep the costs down for this work by assigning it primarily to a case assistant like Alicja who was one of the most junior of the K & E paraprofessionals at a billing rate of $140.00 an hour.

**Terrell Stansbury.**  Terrell is the main legal assistant on the Libby Criminal team.  In that respect, she is responsible for assisting with trial preparation and the development of work product such as preparing defense exhibit lists and witness cross examination files.  During the time period covered by the Initial Report, the Criminal team was preparing materials for certain appeals that were pending with the 9th circuit as well as continuing to prepare the ultimate defense for Grace when the appeals are over and the trial proceeds.  The few entries of Terrell for "update case files" do not reflect simple filing of documents but instead the collection and organization of documents in support of attorney work product and trial preparation.

**Charles Tyler.**  Charles Tyler was a summer case assistant in the Washington DC office who worked on the Grace case assisting the paraprofessional with various projects as needed. You have addressed 1.5 hours of his time in the Initial Report.  As he was a temporary employee and I do not have any more detail from him on this entry, K & E does not object to a reduction of this time to the recommended $80.00 per hour.

**RESPONSE EXHIBIT "B"**

Attendance at Conferences and Hearings (¶ 4)

The Initial Report requests greater explanation concerning multiple professionals' attendance at, and preparation for, four conferences and four hearings. The following lettered paragraphs explain the topic(s) of each conference or hearing and the need for each professional's participation therein. As has been explained before, it is not K&E's routine practice to have multiple K&E attorneys at conferences and hearings. When multiple professionals participated in a conference or hearing, they did so because: (a) K&E made the conscious decision that it was more advantageous to have multiple professionals participate, rather than relying on information to "flow down" after the conference or hearing had concluded, (b) a particular professional's input was required for certain portions of the conference and, when possible, the professional only attended the relevant portions of the conference or hearing at issue, and/or (c) that individual brought particular expertise and issue preparation to the conference or hearing, and so his/her presence was critical.

Multiple professionals' participation/attendance at certain conferences and hearings has been particularly important in these Chapter 11 cases, because of the multiple proceedings pending in multiple forums, all of which are ultimately connected to these Chapter 11 cases. It is critical that, for example, members of the criminal defense team meet regularly and coordinate with the PI Estimation team, as many of the matters addressed in the defense of the criminal indictment will relate directly to the allowance and viability of certain PI claims. In addition, discovery ongoing in the PI estimation tracks certain discovery from the criminal case and coordination of efforts among the two teams has been necessary. Likewise, it is vital to have the Bankruptcy professionals meet on occasion with the PI Estimation litigation team to make sure that the litigation approaches being pursued are consistent with the Bankruptcy Code and ultimate goals of the Bankruptcy cases. Further, since almost all of the hearings address more than one aspect of these cases, it is more advantageous to the Debtors and efficient for preparation purposes if the professional presenting certain matters at the hearing has been intimately involved in those matters.

This reasoning will be further explained below, in the context of each individual questioned conference and hearing.

(a)    July 5, 2007 hearing (Interim Report, Exhibit B, Item 1)

Bernick/Baer/Esayian/Dierkes/Blatnick/Rosenberg.

The July 5, 2007 hearing was a special hearing set for argument on Speights & Runyan's request for class certification and the allowance of a class proof of claim for certain asbestos property damage claimants. The time at issue was for both the preparation for the hearing and for attendance at the hearing. David Bernick was the lead lawyer at the hearing and his preparation was in the

context of taking the lead at the hearing.[7]  Lisa Esayian is the litigation partner in charge of PD claims. Lisa was responsible for the ultimate preparation of all pleadings on the matter and general strategy.  She also was responsible for preparing David Bernick for the hearing, supervising the preparation of exhibits and other materials for the hearing and assisting David at the hearing.  Sam Blatnick and Michael Dierkes are the litigation associates who are responsible for PD matters in the case.  Sam was primarily responsible for all of the legal research and initial drafting of all of the pleadings and other materials prepared with respect to the Anderson Memorial class matter.  Mike assisted in certain aspects and was primarily responsible for other Speights & Runyan related matters.  Sam's attendance at the hearing was vital to assist David and Lisa.  Mike attended the hearing telephonically in order to assist on issues related more generally to Speights & Runyan.  Michael Rosenberg is the legal assistant responsible for PD claims.  Mike assisted the lawyers in preparing demonstratives for the hearing and assembling materials in preparation for the hearing.  Likewise Mike's attendance at the hearing was necessary to provide the lawyers with assistance with documents, claims files, pleadings and the demonstrative materials which he prepared and which were revised up to the actual hearing.  Finally, my presence at the hearing telephonically was necessary to address certain issues that arose in the matter with respect to the PD Bar Date, Notice and certain issues that had been addressed by the Bankruptcy Court previously for which I was responsible specially related to the potential class claimants.

    (b)    July 23, 2007 omnibus hearing (Interim Report, Exhibit B, Item 2)

    Bernick/Baer/Boll/Esayian/Sinanyan/Smith/Harding/Ahern/Ewing/Basta/Blatnick

    The July 23, 2007 Omnibus hearing was an extremely long and significant hearing which first and foremost involved the Debtors' request for another extension of its exclusive period to file its chapter 11 plan.  This was a hotly contested and sensitive matter.  The legal research and pleadings on exclusivity were primarily prepared by Deanna Boll and me and we also prepared materials for the hearing itself.  My attendance at the hearing was necessary to aid with this issue as well as to address the regular bankruptcy claims and business matters outlined below that were on the hearing agenda.  Deanna attending telephonically that portion of the hearing that dealt with exclusivity to back up David Bernick who argued the motion.

    David Bernick's role was both to prepare for and address the most significant issues at the hearing, namely exclusivity, certain issues re PI experts for the PI Estimation, issues regarding the need for claimant lawfirms to respond to interrogatories for the PI Estimation and status on the PI Estimation discovery and hearing preparation.  Barbara Harding, the senior litigation Partner in charge of the PI Estimation assisted in the preparation of certain materials for the status report on PI Estimation and attended telephonically the portion of the hearing that addressed PI Estimation issues and PI discovery issues in order to aid the team at the hearing and address matters that came

---

[7] I note that on 7/2/07 David's time entries included 2 hours with respect to preparation for a separate hearing on ZAI (Zonolite Attic Insulation) claims and a telephone conference of .8 hours relating to the ZAI matters.

out of the hearing.

Korin Ewing, Amanda Basta, Renee Smith and Ellen Ahern are all members of the PI Estimation litigation team. They were responsible for two significant aspects of the discovery process, lawyer and third party discovery and compliance with the Personal Injury Questionnaires. Their assistance was needed to prepare for the hearing on the PI expert and Interrogatory issues outlined above. They prepared materials for the hearing and provided support for David Bernick at the hearing. Korin and Renee attended the hearing in person and worked with David to prepare presentation materials for the hearing up to the moment we walked into Court. Amanda and Ellen attended the hearing telephonically in the event their back up help was needed during the hearing and also so that they could immediately act upon the matters that were resolved at the hearing.

Sam Blatnick and Lisa Esayian were responsible for the PD matters that were addressed at the hearing. They prepared materials summarizing the outstanding matters on the agenda relating to several Speights & Runyan issues and worked with David Bernick to prepare him for the presentation on same. Sam and Lisa attended telephonically only that portion of the hearing relating to PD matters and were available as back up to David during the hearing.

Lori Sinanyan is a Restructuring partner who worked with me on two significant matters on the hearing agenda: opposition to the New Jersey's Department of Environmental Protection's Motion to file a late proof of claim for $30 million and Grace's motion to sell its Washcoat business. Lori prepared the pleadings with respect to these two matters under my supervision, prepared for the arguments on the two matters and then attended the hearing to argue the two matters.

(c)    August 2, 2007 conference (Interim Report, Exhibit A, Item 3)

Baer/Harding/McMillin/Ahern/Stansbury/Zoldan/Fitzimmons

The August 2, 2007 conference was an all day conference of the PI Litigation team in Washington DC. As indicated above, during this time period, we were in the middle of discovery for the PI Estimation, including taking depositions and preparing expert reports. The Estimation reports we filed consisted of an analysis that was premised on several other expert reports as building blocks. Different members of the PI team were responsible for different building blocks. As a result, it was vital to have the entire team meet from time to time to make sure that each member of the team was coordinating with each other member so that the ultimate analysis being put together was correct.

My attendance at the meeting was necessary as ultimately this case is a Bankruptcy case and it was vital for me to understand the direction the litigation team was taking and to make sure that direction was consistent with the Bankruptcy Code. As indicated previously, Barbara Harding is the Litigation partner in charge of the PI Estimation and David Bernick's quarterback on the expert side of the case. She was vital to this meeting to provide overall context and direction for the work. Scott McMillin and Brian Stansbury, with assistance from Evan Zoldan and Tim Fitzimmons were

responsible for the X Ray review and analysis of Mesothelioma claims submitted to Grace and the epidemiology that was associated with that analysis. Their presence was vital to report on the progress of that review, progress of the expert analysis and to discuss how that piece related to the overall estimation puzzle. Ellen Ahern, as outlined above, was one of the Litigation partners in charge of third party and doctor discovery, which discovery was another of the building blocks used by the estimation experts to review Grace claims in order to evaluate their value and project the expected value of future claims.

(d)   August 13, 2007 conference (Interim Report, Exhibit B, Item 4)

Harding/McMillin/Ahern/Bianca/Nirider/Langenkamp/Fitzsimmons/Rooney/
Stansbury/ Molloy

This conference, also in Washington DC with the PI Litigation team was day one of a two day conference specifically held for the purpose of deposition preparation. Pursuant to the Case Management Order for the Estimation Trial, all non expert depositions were to be completed by October 31, 2007 and all Expert depositions by November 15. We had to both prepare for taking depositions of the ACC and FCR witnesses and also prepare to defend our own witnesses. This two day conference was to prepare for both. And, as indicated above, since the way that Grace's Estimation is built is upon the opinions of many expert witnesses and non experts, it was necessary to have the full team get together for much of the preparation of the basic case theories and objectives so that when individual work was done, it was consistent with the big picture. These sessions were also unique in that the Grace clients were present. Prior to the chapter 11 case, Grace had litigated PI cases for years. As a result, the Grace clients had a significant amount of experience with both taking and defending depositions of experts and non experts on many of the issues that were expected to arise during the depositions, thus making these meetings vital to download that vast amount of information and expertise.

As outlined above, Barbara Harding is the PI Litigation team quarterback so her participation was vital to guide this meeting. Brian Stansbury, Ellen Ahern, and Scott McMillin all had their particular areas of expertise as outlined above. Dan Rooney and Emily Malloy provided the paraprofessional support to this team and significant expertise on the documents and exhibits, along with Travis Langenkamp who is the paraprofessional in charge of the DC PI Litigation team. Sal Bianca is a litigation associate from Chicago who is responsible for Grace's product ID witnesses. His expertise was vital as product ID witnesses were being deposed and in order to prepare for the depositions of ACC/FCR witnesses on the issues. Finally, Matt Nirider is another litigation associate who is a member of the PI Estimation team and responsible for lending support on various expert witness issues. Thus his assistance and participation at the meetings was necessary to contribute on various issues affecting the depositions.

(e)   August 14, 2007 conference (Interim Report, Exhibit A, Item 5)

McMillin/Harding/Ahern/Bianca/Stansbury/Nirider/Fitzsimmons/Rooney

This was the second day of the conferences to prepare for depositions discussed above. However, on this second day, actual consultants and witnesses were present and various members of the team broke up into separate conferences with the witnesses and consultants to prepare for specific depositions. The time entries questioned were not for one big team conference but instead were for several separate conferences with several different witnesses, consultants and clients. The K & E attorneys and paraprofessionals participating and their roles were essentially as outlined above.

(f)     August 29, 2007 omnibus hearing (Interim Report, Exhibit A, Item 6)

Bernick/Baer/Harding/Ahern/Basta/Blatnick/Rosenberg

David Bernick and I conducted the August 29 Omnibus hearing. My participation and preparation was necessary in order to address Bankruptcy related claims issues and certain other business issues, including the Debtors' request for approval of its yearly Long Term Incentive Plan. David Bernick conducted the PI and PD portions of the hearing. Specifically, he prepared for and addressed issues regarding Trust Discovery, PI Estimation status and Speights & Runyan's motion for reconsideration of the Court's Order disallowing 71 PD claims.

Amanda Basta and Ellen Ahern were responsible for the Trust Discovery Issues and certain related PI Estimation issues. They prepared materials for the hearing and prepared David Bernick for his presentation on the issues at the hearing. Amanda attended the hearing in person to provide David assistance and prepared demonstratives that were revised up to the moment we walked into Court. Ellen attended the hearing telephonically to lend assistance and be immediately available for follow up from the Court's rulings. Barbara Harding assisted in the preparation of materials for the PI Estimation status at the hearing and participated telephonically in the hearing to lend support on these issues.

Sam Blatnick and Michael Rosenberg prepared materials for David Bernick with respect to the PD portions of the hearing. Michael also attended the hearing in person to lend paraprofessional help on all matters that were pending during the hearing and to aid with demonstratives and documents during the hearing. Sam Blatnick attended telephonically that portion of the hearing pertaining to PD matters in order to aid the presentation and be available for follow up.

(g)     August 9, 2007 conference (Interim Report, Exhibit A, Item 7)

Urgenson/Lancaster/McMillin/Ahern/Mace/Farrell

This conference was with the criminal team relating to the criminal matter pending in Montana. The need for the conference was to meet with the team's jury consultant to discuss case themes and confer with the client re potential witnesses and expert strategy. As previously reported, Larry Urgenson is the lead Litigation partner on the matter and his participation was necessary to lead the meeting. Tyler Mace is the lead Litigation associate on the team and his participation was

necessary as he manages the day to day activities of the discovery and other trial preparation matters. Scott McMillin and Ellen Ahern are members of both the criminal team and the PI Estimation team and are responsible for certain areas of expert testimony that will relate to both cases. Their participation at the meeting was vital to assure that we are not taking inconsistent positions in the two matters and that strategies we develop in one matter will translate well to the other. Peter Farrell and Walter Lancaster are members of the criminal team who are responsible for certain areas of discovery and expert work and their participation was necessary to address those areas.

(h)    September 24, 2007 conference (Interim Report, Exhibit A, Item 8)

Freedman/Baer/Sinanyan/Ahern/Basta

This time relates to the September Omnibus hearing. My preparation and attendance at the Omnibus hearing was necessary as I am the Restructuring Partner in charge of the Bankruptcy aspects of the case. At this particular hearing, several non estimation matters were pending such as settlements of claims with BP Products and Continental Casualty. I also had to prepare for and address a matter relating to the US Trustees' motion to appoint an examiner with respect to potential fraud committed by a former financial consultant to the ACC. I also handled several issues regarding certain of the Debtors' Ordinary Course Professionals. Lori Sinanyan is the Restructuring partner in charge of non asbestos claims litigation. Her participation was telephonic and limited to the time necessary to address those issues.

As indicated previously, Amanda Basta and Ellen Ahern are responsible for the PI Estimation discovery related to lawyers and third parties. Matters with respect to such discovery and continuing issues with the same were addressed at the hearing necessitating preparation for and attendance telephonically at the hearing by Ellen and Amanda.

Finally, Ted Freedman is the senior Restructuring attorney at the firm. Ted has vast experience in the area of asbestos matters, being among other things, the lead Restructuring partner on the Babcock & Wilcox case and the Combustion Engineering case. Ted is now responsible in the Grace case for the complex legal issues involving section 524(g) of the Bankruptcy code and related Bankruptcy issues facing Grace in its Estimation and ultimate Plan confirmation. Ted's participation telephonically in the hearing was necessary to provide assistance on the PI Estimation issues that arose at the hearing.